IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                  No. 15-cr-4268 KG

ANGEL DELEON,
**JOE GALLEGOS,**
**EDWARD TROUP,**
LEONARD LUJAN,
BILLY GARCIA,
**EUGENE MARTINEZ,**
**ALLEN PATTERSON,**
**CHRISTOPHER CHAVEZ,**
**JAVIER ALONSO,**
**ARTURO ARNULFO GARCIA,**
BENJAMIN CLARK,
RUBEN HERNANDEZ,
**JERRY ARMENTA,**
**JERRY MONTOYA,**
MARIO RODRIGUEZ,
**TIMOTHY MARTINEZ,**
**MAURICIO VARELA,**
**DANIEL SANCHEZ,**
GERALD ARCHULETA,
**CONRAD VILLEGAS,**
**ANTHONY RAY BACA,**
**ROBERT MARTINEZ,**
ROY MARTINEZ, and
**CHRISTOPHER GARCIA,**

    Defendants.

DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER CONCERNING ALL
DEFENDANTS' PROFESSIONAL VISITS AND CORRESPONDENCE

Defendants Joe Gallegos, Edward Troup, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Jerry Armenta, Jerry Montoya, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Robert Martinez and Christopher Garcia jointly move the Court,

pursuant to the Fourth, Fifth, Sixth and Eighth Amendments to the United States Constitution, Fed. R. Crim. P. 16(d)(1), and the Court's inherent supervisory power, to enter a protective order directing the detention facilities, jails or prisons housing the defendants and the United States Marshal Service not to disseminate information regarding legal visits with the defendants, including the identity and capacity of any member of a defendant's legal team and the dates or types of their visits, and not to open, copy, read or disseminate legal correspondence, discovery materials and defense work product, including but not limited to reports of witness interviews, reports of experts, legal pleadings and declarations, case law, notes and other case-related writings.  Defendants also ask the Court to prohibit the members of the prosecution team from collecting this information or documentation.  Members of a defendant's legal team include attorneys, paralegals, investigators, and experts.  Attached as Exhibit 1 is a table with the names of each represented defendant, the names of their respective counsel, and the current location for each defendant.

## DISCUSSION

**A. The Government's Collection of Information Regarding the Defendants' Legal Visits and Correspondence Violates the Defendants' Sixth Amendment Right to the Assistance of Counsel.**

The Sixth Amendment to the United States Constitution guarantees the right not just to the assistance of counsel, but to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984); *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing."  *United States v. Cronic*, 466 U.S. 648, 656 (1984).  A

defendant's right to effective counsel is violated when the government "interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Strickland*, 466 U.S. at 686.

Nineteen of the named defendants in this case are charged with capital offenses and the indictment includes the findings necessary for the government to pursue the death penalty. [Doc. 2.] In the context of capital cases, the Sixth Amendment requires defense counsel to conduct a thorough investigation into any potential mitigation evidence that may be presented in the penalty phase. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *see also Rompilla v. Beard*, 545 U.S. 374 (2005); *Williams v. Taylor*, 529 U.S. 362, 393 (2000). This places a burden on defense counsel to retain specialized experts to prepare adequately for the penalty phase and to ensure that such experts are given sufficient and appropriate information on which to base their opinions. *See Caro v. Woodford*, 280 F.3d 1247, 1254 (9th Cir. 2002); *Wallace v. Stewart*, 184 F.3d 1112, 1116 (9th Cir. 1999); *Bean v. Calderon*, 163 F.3d 1073, 1079-80 (9th Cir. 1998).

Allowing the government to collect information regarding the Defendants' legal visits, correspondence and case-related documents would compromise defense counsel's ability to provide effective assistance because it would force counsel to choose between maintaining the confidentiality of the defense strategies and conducting the investigation mandated by the Constitution. The government, through this unjustified practice, would have the ability to focus on defense strategies, potentially calling its own expert or engaging in its own investigation to exploit it at the trial and/or penalty phase. The government has no right to such an advantage, and

without the benefit of information regarding legal visits and correspondence, it would not be privy to such information. *See State v. Mingo*, 77 N.J. 576, 392 A.2d 590, 592 (1978) (defense counsel cannot exercise the "full investigative latitude" required to ensure a defendant receives effective assistance if he must "risk a potentially crippling revelation" to the prosecution); *State v. Doe*, 161 N.J. Super. 187, 189-90; 391 A.2d 542 (1978) (notification of prosecutor every time confined defendant had need for a visit from an expert would have "chilling effect on the conduct of effective and complete defense investigations").

Allowing the government to access information regarding legal visits, correspondence and work product also erodes the attorney-client relationship, further impairing counsel's ability to provide effective representation. Where a meeting between a client and an expert or disclosure of defense-related materials to the client can result in the government anticipating the defense case, this naturally chills the free and open discussion between the client, counsel, and any agents of counsel with whom the client meets.

### B. Due Process Requires that the Defendants' Contacts with Members of His Legal Team—Including Experts—Be Confidential.

In *Ake v. Oklahoma*, 470 U.S. 68, 83-84 (1985), the Supreme Court held that an indigent defendant whose mental state is at issue has a due process right to the assistance of a psychiatric expert in evaluating, preparing, and presenting the defense both at trial and the sentencing phase. Moreover, since motions for expert funding set forth defense work-product, strategies, and theories, such motions for experts should be made ex parte and may be sealed. *Id*. The logical thread is that the government shall not be untimely and prematurely privy to defense experts – a practice that is

undermined by the government's ability to obtain information regarding legal visits and correspondence.

Allowing the government to access such information also violates the due process guarantee of fundamental fairness in that it results in disclosure of information without any reciprocal benefit to the defense.  Consequently, the government is able to gain a substantial and unwarranted tactical advantage by learning the identity of defense experts and, derivatively, defense strategies, whereas the defense has no comparable access to the government's strategies.

Collection of this information relating to the Defendants' visitors further raises equal protection concerns.  The government is only able to access the Defendants' visitor information because they are incarcerated.  If the Defendants were out of custody, the government would not be able to learn the identity of any experts or other members of the defense team with whom they met.  Thus, the Defendants are being penalized unfairly because of their status as prisoners.  While there is a rational basis for the prison to collect this information, there is no rational basis to justify its dissemination to the government, especially when such dissemination impacts the Defendants' other constitutional rights.  *See State v. Doe*, 161 N.J. Super. 187, 188, 391 A.2d 542 (ruling that policy of requiring defense counsel to notify the prosecutor that defendant was to be visited by an expert was improper; no rational basis existed for the police to treat defendants in custody differently from defendants out of custody); *see also Ake*, 470 U.S. at 76-77 (referencing equal protection concepts as to indigent defendants in its due process analysis regarding the right to independent psychiatric assistance).

**C. Government Access to the Identity of the Defendants' Visitors Violates the Attorney Work-Product Doctrine.**

In *United States v. Nobles*, 422 U.S. 225, 238 (1975), the Supreme Court explained the importance of the attorney work product doctrine in criminal cases:

> Although the work-product doctrine most frequently as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.

Although the Court noted that "at its core," the doctrine "shelters the mental processes of the attorney," the Court also recognized that the doctrine "is an intensely practical one" that recognizes the reality that attorneys must often rely on the assistance of other investigators and agents in preparing for trial.

The selection by the defense of expert witnesses to consult with the incarcerated Defendants is precisely the type of mental process which the work-product doctrine is designed to shelter. Disclosure of the identity of those experts the defense concludes should be retained to meet with individual Defendants alerts the government to theories and strategies counsel deem worthy of exploration, much like an inexperienced boxer who telegraphs his punches to a seasoned opponent. The doctrine should be applied most favorably to a defendant where the government seeks the death penalty.

Similarly, allowing the government to access defendants' legal correspondence, discovery materials and defense work product, including but not limited to reports of witness interviews, reports of experts, legal pleadings and

6

declarations, case law, notes and other case-related writings would violate the attorney-client privilege and work product doctrine.

**D. The Government's Collection of Information Regarding Legal Visitations Circumvents Various Protections under Federal Law Designed to Protect the Confidentiality of Defense Experts.**

Defense counsel were appointed to represent the Defendants in this case under the Criminal Justice Act, 18 U.S.C. § 3006A. The Act specifically authorizes defense counsel for an indigent defendant to request the appointment of expert witnesses without disclosing the nature of that request to the government:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services.

The Act calls for an ex parte application to protect the defense from premature disclosure to the prosecution of defense strategy. H.R. Rep. No. 864, 1964 U.S. Code Cong. & Admin. News, p. 2990 (1964); *Marshall v. United States*, 423 F.2d 1315, 1318 (10th Cir. 1970); *see also* 18 U.S.C. § 3599(f) (providing that in a capital case, upon a "proper showing . . . concerning the need for confidentiality," a defendant's attorneys may seek consideration of an expert request ex parte).

Rule 16 of the Federal Rules of Criminal Procedure restricts the government's right to discovery regarding defense experts and investigation and similarly prohibits the government from prematurely learning the identity and purpose of the same:

(b) Defendant's Disclosure.

    (1) Information Subject to Disclosure. …

> (C) Expert witnesses.--The defendant must, at the government's request, give to the government a written summary of **any testimony that the defendant intends to use** under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if—
>
>> (i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or
>>
>> (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.
>
> This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.
>
> (2) Information Not Subject to Disclosure. **Except for scientific or medical reports, Rule 16(b)(1) does not authorize discovery or inspection of:**
>
>> (A) reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense; or
>>
>> (B) a statement made to the defendant, or the defendant's attorney or agent, by:
>>
>>> (i) the defendant;
>>>
>>> (ii) a government or defense witness; or
>>>
>>> (iii) a prospective government or defense witness.

Fed. R. Crim. P. 16(b)(1)(C) and (b)(2) (emphasis added). Thus, under Rule 16, the defense does not have to provide any information to the government regarding its retention of non-testifying defense experts. Furthermore, the rule does not authorize discovery of reports, memoranda or other documents made by members of the defense team during the defense investigation. An order barring the government from accessing information regarding the Defendants' legal visits, correspondence and

case-related documents is necessary to protect against disclosure of information to which the government is not entitled.

Fed. R. Crim. P. 12.2 strictly controls the timing for the defense's disclosure of expert testimony regarding the defendant's mental condition that is to be introduced in the penalty phase of a capital case. Pursuant to Rule 12.2(b), a defendant "must" give notice before trial if he "intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of punishment in a capital case . . . ." The rule provides that the defense must only provide such notice by the deadline for filing pretrial motions or at any later time set by the court. *Id*. If the defendant provides such notice, "the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." Rule 12.2(c)(1)(B).

The purpose of the rule is to allow the government to develop rebuttal evidence fairly and efficiently. *United States v. Sampson*, 335 F.Supp.2d 166, 242 (D. Mass 2004). "However, the need for meaningful notice must be balanced against the special considerations present when a capital defendant intends to use his mental condition at the sentencing phase only." *Id*. at 243. Allowing the government to use the results of a defendant's mental examination, or any information derived from it, for purposes other than rebuttal at sentencing, would violate the defendant's right against self-incrimination. *Id*. Furthermore, "the defendant's Sixth Amendment right to the effective assistance of counsel could be compromised if defense counsel was required to reveal his strategy or to disclose materials he provided to his experts." *Id*. (citations omitted).

Rule 12.2 addresses these concerns by providing that the results and reports of any examination conducted by government experts under Rule 12.2(c)(1) must be sealed and cannot be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms his intent to offer during sentencing proceedings expert evidence on mental condition. Fed. R. Crim. P. 12.2(c)(2). Only after the results and reports of the government's examination are disclosed to the defense must the defendant disclose any results and reports of any examination on mental condition conducted by a defense expert regarding which the defense actually intends to introduce expert evidence. Fed. R. Crim. P. 12.2(c)(3).

Thus, per Rule 12.2, a defendant in a capital case is not required to provide any notice regarding mental health experts until the deadline for filing pretrial motions at the earliest. Even then, the rule safeguards defense strategies by restricting the government's access to the defendant's mental health expert's materials or reports until after the government turns over its own similar materials and the defense confirms that it will present the mental health evidence.

Allowing the government to obtain information regarding legal visits and correspondence thwarts these federal provisions that protect the right of the defense to consult confidentially with experts without disclosing their identity unless they are to be called as witnesses at trial. It allows the government to obtain insights into the defense that are specifically prohibited under federal law and renders the safeguards in these various provisions meaningless.

**E. Conference**

Counsel for the United States, Maria Armijo, stated she opposes this motion.

## CONCLUSION

For the foregoing reasons, Defendants Joe Gallegos, Edward Troup, Eugene Martinez, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Jerry Armenta, Jerry Montoya, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Robert Martinez and Christopher Garcia respectfully ask the Court to enter a protective order directing the detention facilities, jails or prisons housing the Defendants and the United States Marshal Service not to disseminate information regarding legal visits with the defendants, including the identity and capacity of any member of a defendant's legal team and the dates or types of their visits, and not to open, copy, read or disseminate legal correspondence, discovery materials and defense work product, including but not limited to reports of witness interviews, reports of experts, legal pleadings and declarations, case law, notes and other case-related writings. Defendants also ask the Court to prohibit the members of the prosecution team from collecting this information or documentation.

A proposed order will be forwarded to the Court.

Respectfully submitted,

*/s/ Patrick Burke*
Patrick Burke
Cori Harbour-Valdez
Attorneys for Edward Troup (3)

*/s/ David Lane*
David Lane
Robert Gorence
Attorneys for Eugene Martinez (6)

*/s/ Jeffrey Lahann*
Jeffrey Lahann
Phillip Linder
Attorneys for Allen Patterson (7)

*/s/ Orlando Mondragon*
Orlando Mondragon
Attorney for Christopher Chavez (8)

*/s/ Nathan Chambers*
Nathan Chambers
Noel Orquiz
Attorneys for Javier Alonso (9)

*/s/ Billy Blackburn*
Billy Blackburn
Attorney for Arturo Garcia (10)

*/s/ Gary Mitchell*
Gary Mitchell
Attorney for Jerry Armenta (13)

*/s/ Larry Hammond*
Larry Hammond
Margaret Strickland
Attorneys for Jerry Montoya (14)

*/s/ Jacqueline K. Walsh*
Jacqueline K. Walsh
Steven Almanza
Attorneys for Timothy Martinez (16)

*/s/ David Lindsey*
David Lindsey
Mary Stillinger
Attorneys for Mauricio Varela (17)

*/s/ Amy E. Jacks*
Amy E. Jacks
Richard Jewkes
Attorneys for Daniel Sanchez (18)

*/s/ B.J. Crow*
B.J. Crow
Attorney for Conrad Villegas (20)

<u>/s/ Theresa Duncan</u>
Theresa Duncan
Marc M. Lowry
Attorneys for Anthony Ray Baca (21)

<u>/s/ Charles J. McElhinney</u>
Charles J. McElhinney
Attorney for Robert Martinez (22)

<u>/s/ Amy Sirignano</u>
Amy Sirignano
Attorney for Christopher Garcia (24)

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2016, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

<u>/s/ Theresa M. Duncan</u>
Theresa M. Duncan
