1                    IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF NEW MEXICO

3

4     UNITED STATES OF AMERICA,

              Plaintiff,
5
          vs.                      CRIMINAL NO. 15-4268 KG
6
      ANGEL DeLEON, et al.,
7
              Defendants.
8
                                   and
9
      UNITED STATES OF AMERICA,
10
              Plaintiff,
11
          vs.                      CRIMINAL NO. 15-4269 KG
12
      MAURICIO VARELA, et al.,
13
              Defendants.
14

15                      TRANSCRIPT OF STATUS CONFERENCE

16              BEFORE THE HONORABLE KENNETH J. GONZALES

17               MONDAY, DECEMBER 14, 2015; 1:37 P.M.

18                   LAS CRUCES, NEW MEXICO 88001

19

20

21    REPORTED BY:  Danna Schutte Everett, CRR, RPR, RMR, CCR 139
                     United States Court Reporter
22                   100 N. Church Street, Las Cruces, NM  88001
                     Phone:  (575) 528-1656  Fax:  (575) 528-1645
23                   dannadawn@comcast.net

24
          Proceedings recorded by mechanical stenography;
25    transcript produced by computer.

```
 1   FOR THE UNITED STATES:

 2       UNITED STATES ATTORNEY'S OFFICE
         555 South Telshor, Suite 300
 3       Las Cruces, New Mexico  88011
         BY:  MS. MARIA YSABEL ARMIJO
 4            MR. RANDY M. CASTELLANO

 5   FOR THE DEFENDANT JOE GALLEGOS:

 6       NO ATTORNEY APPEARANCE

 7   FOR THE DEFENDANT EDWARD TROUP:

 8       THE HARBOUR LAW FIRM, PC
         Post Office Box 13268
 9       El Paso, Texas  79913
         BY:  MS. CORI ANN HARBOUR-VALDEZ
10
     FOR THE DEFENDANT LEONARD LUJAN:
11
         MR. RUSSELL DEAN CLARK
12       Post Office Box 576, Suite 4
         Las Cruces, New Mexico  88004
13
     FOR THE DEFENDANT BILLY GARCIA:
14
         MR. MARIO CARREON
15       2000 W. Las Cruces Avenue, Suite B
         Las Cruces, New Mexico  88005
16
     FOR THE DEFENDANT EUGENE MARTINEZ:
17
         MR. CARLOS IBARRA
18       304 N. San Pedro
         Las Cruces, New Mexico  88001
19
     FOR THE DEFENDANT ALLEN PATTERSON:
20
         MR. JEFFREY C. LAHANN
21       Post Office Box 16682
         Las Cruces, New Mexico  88004
22
     FOR THE DEFENDANT CHRISTOPHER CHAVEZ:
23
         MR. ORLANDO MONDRAGON
24       1028 Rio Grande
         El Paso, Texas  79902
25
```

```
 1   FOR THE DEFENDANT JAVIER ALONSO:

 2        MR. NOEL ORQUIZ
          Post Office Box 971
 3        Deming, New Mexico  88031

 4   FOR THE DEFENDANT ARTURO ARNULFO GARCIA:

 5        NO ATTORNEY APPEARANCE

 6   FOR THE DEFENDANT BENJAMIN CLARK:

 7        STEPHEN E. HOSFORD, P.C.
          Post Office Box 420
 8        Arrey, New Mexico  87930
          BY:  MR. STEPHEN E. HOSFORD
 9
     FOR THE DEFENDANT RUBEN HERNANDEZ:
10
          MR. PEDRO PINEDA
11        Post Office Box 13447
          Las Cruces, New Mexico  88013
12
     FOR THE DEFENDANT JERRY ARMENTA:
13
          MITCHELL LAW OFFICE
14        Post Office Box 2460
          Ruidoso, New Mexico  88345
15        BY:  MR. GARY MITCHELL

16   FOR THE DEFENDANT JERRY MONTOYA:

17        McGRAW & STRICKLAND
          165 West Lucero Avenue
18        Las Cruces, New Mexico  88005
          BY:  MS. MARGARET STRICKLAND
19
     FOR THE DEFENDANT MARIO RODRIGUEZ:
20
          LAW OFFICE OF SANTIAGO D. HERNANDEZ
21        1219 E. Missouri
          El Paso, Texas  79902
22        BY:  MR. SANTIAGO DAVID HERNANDEZ

23   FOR THE DEFENDANT TIMOTHY MARTINEZ:

24        MR. STEVEN LORENZO ALMANZA
          Post Office Box 1660
25        Las Cruces, New Mexico  88004
```

4

```
1    FOR THE DEFENDANT MAURICIO VARELA:

2         MS. MARY STILLINGER
          4911 Alameda Avenue
3         El Paso, Texas  79905

4    FOR THE DEFENDANT DANIEL SANCHEZ:

5         MR. RICHARD JEWEKS
          701 N. Saint Vrain Street
6         El Paso, Texas  79902

7    FOR THE DEFENDANT GERALD ARCHULETA:

8         NO ATTORNEY APPEARANCE

9    FOR THE DEFENDANT CONRAD VILLEGAS:

10        CROW LAW FIRM
          400 N. Pennsylvania Avenue
11        Suite 1150
          Roswell, New Mexico  88201
12        BY:  MR. B.J. CROW

13   FOR THE DEFENDANT ANTHONY RAY BACA:

14        MR. CESAR PIERCE-VARELA
          1690 N. Main Street
15        Post Office Box 8557
          Las Cruces, New Mexico  88006
16
     FOR THE DEFENDANT ROBERT MARTINEZ:
17
          McELHINNEY LAW FIRM, LLC
18        Post Office 1945
          Las Cruces, New Mexico  88004
19        BY:  MR. CHARLES J. McELHINNEY

20   FOR THE DEFENDANT ROY PAUL MARTINEZ:

21        MS. MARCIA J. MILNER
          Post Office Box 1450
22        Las Cruces, New Mexico  88001

23

24

25
```

1    FOR THE DEFENDANT CHRISTOPHER GARCIA:

2        ROTHSTEIN, DONATELLI, HUGHES, DAHLSTROM &
             SCHOENBURG, LLP
3        500 Fourth Street, Northwest, Suite 40
         Albuquerque, New Mexico  87102
4        BY:  MR. MARC M. LOWRY

5    FOR THE DEFENDANT DAVID CALBERT:

6        THE ROMERO LAW FIRM, PA
         1001 Fifth Street, Northwest
7        Albuquerque, New Mexico  87102
         BY:  MR. ROMAN R. ROMERO

8

9    DEFENDANTS NOT PRESENT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE COURT:  Okay.  Good afternoon, everyone.  Please
 2   be seated.
 3              Okay.  We are on the record in open court for a
 4   status conference in United States versus De Leon, et al.  This
 5   is 15-CR-4268.
 6              I see Ms. Armijo and Mr. Castellano are here for the
 7   United States.  Good afternoon.
 8              MS. ARMIJO:  Good afternoon.
 9              MR. CASTELLANO:  Good afternoon.
10              THE COURT:  All right.  The other side of the
11   courtroom may a take a little more time to acknowledge.  Let me
12   just go down my list.  Let me just start from the beginning.
13              I know we have Mr. De Leon, who was charged.  He's
14   currently not present, of course, has not been arraigned.
15              So I have Joe Gallegos.  He is represented by Brock
16   Benjamin.  Mr. Benjamin contacted my chambers last week to let
17   me know that he was in Colorado, and so he was not going to be
18   able to be present this afternoon, so because of the fairly
19   short notice that I had given all of you, I excused
20   Mr. Benjamin from being here.
21              Next we have on behalf of Edward Troup Cori Ann
22   Harbour-Valdez.  Good afternoon to you.
23              MS. HARBOUR-VALDEZ:  Good afternoon, Your Honor.
24              THE COURT:  Leonard Lujan, who is represented by
25   Russell Dean Clark.
```

1          MR. CLARK:  Good afternoon, Your Honor.

2          THE COURT:  Good afternoon, sir.

3          Billy Garcia is represented by Mario Carreon.

4          MR. CARREON:  Good afternoon, Judge.

5          THE COURT:  Good afternoon, Mr. Carreon.

6          Eugene Martinez.  That's -- Counsel is Mr. Carlos

7     Ibarra.

8          MR. IBARRA:  Good afternoon, Your Honor.

9          THE COURT:  Yes, sir.  Good afternoon.

10          Mr. Allen Patterson is represented by Jeff Lahann.

11          MR. LAHANN:  Good afternoon, Your Honor.

12          THE COURT:  Good afternoon.

13          Christopher Garcia is represented by Orlando

14     Mondragon.

15          MR. MONDRAGON:  It's Christopher Chavez.

16          THE COURT:  I'm sorry.  Christopher Chavez is

17     represented by Mr. Orlando Mondragon.

18          Javier Alonso is represented by Noel Orquiz.

19          MR. ORQUIZ:  Good afternoon, Your Honor.

20          THE COURT:  Goo afternoon, Mr. Orquiz.

21          Jumping ahead.  Mr. Benjamin Clark is represented by

22     Mr. Stephen Hosford.

23          MR. HOSFORD:  Good afternoon, Your Honor.

24          THE COURT:  Good afternoon, Mr. Hosford.

25          Ruben Hernandez is represented by Pedro Pineda.

 1            MR. PINEDA:  Good afternoon, Your Honor.

 2            THE COURT:  Yes, sir.

 3        Jerry Armenta is represented by Gary Mitchell.

 4   Mr. Mitchell contacted my chambers just a short time ago.  He

 5   left the courthouse in Socorro about 12:15, and so I think he

 6   may be on his way.  I had somebody from my chambers reach out

 7   to him just so he could take the foot off the gas pedal.

 8            And I'll just ask Ms. Harbour if you can reach out to

 9   Mr. Mitchell and just catch him up on anything that you believe

10   he should know.

11            MS. HARBOUR-VALDEZ:  Yes, Your Honor, I'd be happy

12   to.

13            THE COURT:  Okay.  Jerry Montoya is represented by

14   Margaret Strickland.

15            MS. STRICKLAND:  Good afternoon, Your Honor.

16            THE COURT:  Okay.  Good afternoon, Ms. Strickland.

17        Mario Rodriguez is represented by Santiago Hernandez.

18        MR. HERNANDEZ:  Good afternoon.

19            THE COURT:  Good afternoon, sir.

20        Timothy Martinez is represented by Steve Almanza.

21        MR. ALMANZA:  Good afternoon, Your Honor.

22            THE COURT:  Yes, sir.

23        Mauricio Varela is represented by Mary Stillinger.

24            MS. STILLINGER:  Good afternoon, Your Honor.

25            Mr. Almanza was going to stand in for me because I

1    was running late, but...

2              THE COURT:  I understand.  Glad you got here safely.

3              And Daniel Sanchez is represented by Mr. Richard

4    Jewkes.

5              MR. JEWKES:  Good afternoon, Your Honor.

6              THE COURT:  Good afternoon, sir.

7              Conrad Villegas is represented by Mr. B.J. Crow.

8              MR. CROW:  Good afternoon, Your Honor.

9              THE COURT:  Good afternoon, Mr. Crow.

10             Anthony Ray Baca is represented by Cesar

11   Pierce-Varela.

12             MR. PIERCE-VARELA:  Good afternoon, Your Honor.

13             THE COURT:  Robert Martinez is represented by Charles

14   McElhinney.

15             MR. McELHINNEY:  Good afternoon, Your Honor.

16             THE COURT:  Good afternoon, Mr. McElhinney.

17             Roy Paul Martinez is represented by Marcia Milner.

18             MS. MILNER:  Good afternoon, Your Honor.

19             THE COURT:  Good afternoon, Ms. Milner.

20             And Christopher Garcia is represented by Mr. Marc

21   Lowry.

22             MR. LOWRY:  Good afternoon, Your Honor.

23             THE COURT:  Good afternoon, Mr. Lowry.

24             I know Mr. Donatelli and Mr. McCue are here, as well.

25             MR. McCUE:  Good afternoon, Your Honor.

```
 1              THE COURT:  Good afternoon, gentlemen.
 2              MR. DONATELLI:  Good afternoon.
 3              THE COURT:  Now, we have a companion case of sorts,
 4    and that is also set for a status conference for this
 5    afternoon, and that is United States versus Varela, et al.
 6    15-CR-4269.  Ms. Armijo and Mr. Castellano are here for that,
 7    as well.
 8              And Ms. Stillinger's here on behalf of Mr. Varela.
 9              MS. STILLINGER:  Yes, Your Honor.
10              THE COURT:  David Calbert is represented by Mr. Roman
11    Romero.
12              MR. ROMERO:  Good afternoon, Your Honor.
13              THE COURT:  Good afternoon, Mr. Romero.
14              Robert Martinez is represented here again by
15    Mr. McElhinney.  Sir.
16              And Mr. Mario Rodriguez is represented by Santiago
17    Hernandez.
18              MR. HERNANDEZ:  Yes, sir.  Present.
19              THE COURT:  Okay.  For purposes of the status
20    conference, I just thought we'd consolidate these two cases and
21    go through the list of items on my list as well as take up any
22    matters that we should take up while we're all under the same
23    roof.
24              There are some matters that I want to take up with
25    defense counsel, and so after we get done with the status
```

1   conference I will ask you to remain in the courtroom after I

2   dismiss the prosecutors.

3          Okay.  So, Ms. Armijo, at this point in time, I'm

4   going to turn to you and ask you, first, whether I should

5   expect, and counsel should expect, any motions from the United

6   States in the next week to two weeks or even three weeks.  Let

7   me give an example of a motion I'm talking about, a motion, for

8   example, to declare the case complex.

9          MS. ARMIJO:  Yes, Your Honor.  Yes, Your Honor.  I

10  know that Mr. Castellano and I have spoken to various defense

11  counsel, probably not all, we haven't started a group e-mail

12  yet, but we would be seeking to declare the case as complex.

13         THE COURT:  Okay.  Both cases?

14         MS. ARMIJO:  Both cases.

15         THE COURT:  Okay.  There is one -- There's a third

16  case, and that relates to Mr. Christopher Garcia, and that is,

17  I believe, 15-CR-4275, if I'm correct.  Can you tell me whether

18  that should also be consolidated into this status conference?

19  That's maybe something Mr. Lowry may want to know.

20         MS. ARMIJO:  It's factually distinct because it

21  involved an undercover drug buy, but that whole operation --

22  There were a series of operations up in Albuquerque that are

23  related to this investigation, just that the enterprise was

24  conducting drug trafficking, and that's one of the examples.

25  And so that case is related as far as it is an example of the

1   enterprise conducting drug trafficking.  So in that sense it

2   is, and I'm sure probably that Mr. Garcia would prefer that

3   that case, right or wrong, go with the other case, as well, but

4   we have not spoken to him.

5            But it is somewhat -- Even though it's not charged as

6   a RICO or VICAR, it is part of the enterprise drug-trafficking

7   activity.

8            THE COURT:  Okay.  So if you do file a motion to

9   declare the case complex, would that be included within the

10  scope of your motion?

11           MS. ARMIJO:  Yes, Your Honor, as long as there's no

12  opposition.

13           THE COURT:  Okay.  All right.  Now, with the motion

14  to declare the case complex, I don't -- at this point I could

15  give counsel a chance to tell me what their initial thoughts

16  about that are.  But would you be tendering a proposed

17  scheduling order along with that motion?

18           MS. ARMIJO:  Yes, Your Honor.

19           THE COURT:  Okay.  And how soon do you anticipate

20  doing that?

21           MS. ARMIJO:  With the holidays coming up and getting

22  with all of counsel to agree upon it, I would anticipate doing

23  it within the next two to three weeks, just given the fact that

24  it may be difficult to coordinate with everybody's schedules as

25  far as the scheduling.  Although we could file the motion

```
1   for -- to declare the case complex, but just getting the

2   scheduling order may take a few weeks.

3            THE COURT:  Okay.  I'll hear from counsel.

4            Now, in terms of discovery, is that already being

5   done in terms of just turning over -- Where are you on

6   discovery, I guess my question is?

7            MS. ARMIJO:  We have not given any discovery yet.  We

8   have voluminous discovery that we will begin to disclose, and I

9   believe our plan is to disclose everything to everyone, which

10  would make it -- which would be quite voluminous.  I would

11  imagine we could start getting discovery out sometime next

12  week, if we just start doing it in batches.  If defense counsel

13  would prefer a more organized method, maybe that's something we

14  can work on with them, as well, as opposed to just getting it

15  in bits and pieces.

16           THE COURT:  Okay.  Can you give counsel and even the

17  Court a rough idea of what you have in mind?  Is there

18  electronic discovery involved in this disclosure?

19           MS. ARMIJO:  There will be hard copies of old reports

20  going back to 2000 for the earlier crimes, which would involve

21  police reports.  We have some -- For some of these incidents we

22  have video footage, we have -- There were -- There was a

23  telephone order, so we do have telephone recordings that we

24  would be disclosing, as well, that involve some of these

25  defendants, again, that would show -- that would go to the
```

1    other defendants as to enterprise.  So we have everything from

2    recordings, telephone calls to reports.  Obviously, experts as

3    far as OMI, autopsy reports, photographs from some of the

4    autopsies and things like that.  So it's a variety of evidence.

5              THE COURT:  Okay.  Your scheduling order will include

6    a deadline for all of that discovery to be turned over?

7              MS. ARMIJO:  Yes.

8              THE COURT:  And have you given any thought as to what

9    that deadline might be even at this point?

10             MS. ARMIJO:  I have not, Your Honor.  I have not.

11   Since we just indicted this case, we didn't know -- we were

12   successful in picking up 23 out of 25.  We still have one of

13   the persons that won't come until the 23rd -- or 22nd, I

14   believe, is when he's scheduled to be here.  That's

15   Mr. Archuleta.  He's scheduled to arrive in Las Cruces for his

16   court appearance on the 22nd.

17             And then we still have one fugitive that they're

18   actively pursuing, Mr. DeLeon.  I don't know that we'll be

19   successful.  He's probably in Mexico.  But there is a pretty

20   good chance that we could possibly pick up Arturo Garcia.

21   They're actively seeking his whereabouts, and he is believed to

22   be in the United States.

23             But I have -- We certainly will be able to provide,

24   obviously, in the scheduling order as much discovery as

25   possible at least initially.  I believe that discovery will be

1    ongoing, as well.

2                THE COURT:  Beyond the -- Beyond the deadline that

3    you're going to set?

4                MS. ARMIJO:  If there are -- If there are any

5    superseding Indictments or added people, yes.

6                THE COURT:  Okay.  Well, I'll leave that scheduling

7    order to you.  Two to three weeks, I'll just ask that that be

8    done as soon as you can and that that be -- if you can work

9    with defense counsel to determine if -- to get their input and

10   propose to the Court as soon as possible, that would be

11   preferred, I'm sure, for everyone concerned.  So we'll look for

12   that.  If you can have that to me -- I want to be fair to you

13   and I want to be fair to defense counsel, because they're going

14   to want to know what the outlook is probably as soon as

15   possible, so on the outside three weeks, but certainly endeavor

16   to get that in to me just even before that.

17               I'm going to ask for some input from defense counsel

18   before, obviously, we wrap up.

19               There is an outstanding motion to delay appointment

20   of learned counsel, and I have a response from one attorney,

21   that is from Ms. Stillinger, who filed it on -- excuse me --

22   Ms. Strickland, who filed it on behalf of Jerry Montoya.

23               What can you tell us about that, Ms. Armijo?

24   Mr. Castellano?

25               MR. CASTELLANO:  Your Honor, the -- I think the

1  statute is pretty clear as Ms. Strickland pointed out.  It's 18

2  U.S.C. Section 3005.  And it says the Court shall promptly,

3  upon the defense request, assign two counsel, including one who

4  is learned counsel.  What we've sought to do is merely push

5  back that deadline, but I think, given the statute, what it

6  says, upon request, the Court shall appoint counsel.  So I

7  think if there's anyone -- any of the attorneys today who is

8  seeking appointment of learned counsel, I'm not sure that's

9  discretionary.  I think the Court probably has to do that by

10  statute.

11      The only thing that we have requested was that -- and

12  to counsel as well as the Court -- that we push back that

13  deadline.  We're going to try to get an expedited review of

14  this case in D.C. and have a decision within 45 days.  Based on

15  that expedited review, we're also at this point not seeking any

16  mitigation evidence from the defense.

17      So the best I can say is, as far as Ms. Strickland is

18  concerned, and anyone else, we've -- the statute is clear.  If

19  they request it, then learned counsel shall be appointed by

20  statute.  Although I think that we had sought to delay that

21  process, but, obviously, that will be up to defense counsel.

22      THE COURT:  Okay.  All right.  Ms. Strickland.

23      MS. STRICKLAND:  Well, it sounds like, then, the

24  Government is not opposed to the Court promptly appointing

25  learned counsel.  If the Court's going to do that, I don't have

1    any additional argument.

2              THE COURT:  And do I have to wait for a formal

3    request, Mr. Castellano?  Because it seems as though -- My

4    reading of the statute is like yours, which is there's not a

5    lot of wiggle room, if any, but so long as these folks are

6    charged with death-eligible charges, that learned counsel

7    should be appointed at the commencement of the proceedings,

8    which I think I'm maybe paraphrasing that, but I took that to

9    mean as soon as they're charged or arraigned, and they've been

10   arraigned, at least substantially all of them have.

11             MR. CASTELLANO:  That's correct.  They're eligible

12   upon the charge.  The statute says "shall promptly upon the

13   defendant's request."  So really the question is at this point

14   whether defense counsel is requesting learned counsel.  If not,

15   I don't think the Court's required to appoint learned counsel.

16   So I guess it would be up to each of the 17 to decide today or

17   in the near future whether or not they want learned counsel

18   now.  If not, they can wait for the decision, hopefully within

19   45 days, which is our goal.

20             THE COURT:  Okay.

21             MS. STRICKLAND:  And I requested it at arraignment,

22   and then I believe I also requested it in my response.

23             THE COURT:  Okay.  Okay.  So I think what I'm

24   interested in hearing now is, of those of you who represent

25   clients who are charged with a capital offense, who is

1  requesting assistance from -- with learned counsel?  So I would

2  just go down the list, and you can show me.

3           MS. HARBOUR-VALDEZ:  Your Honor, on behalf of

4  Mr. Benjamin for Mr. Gallegos --

5           THE COURT:  Yeah.

6           MS. HARBOUR-VALDEZ:  -- he instructed me that he

7  would not request death -- learned counsel until the case had

8  been death certified, so he was delaying that request.

9           THE COURT:  Okay.  All right.

10          MS. HARBOUR-VALDEZ:  On behalf of Edward Troup, whom

11  I represent, I would do the same.  I will wait until the case

12  has been certified.

13          THE COURT:  All right.  That is Mr. Benjamin,

14  Ms. Harbour-Valdez.

15          Mr. Clark.

16          MR. CLARK:  Your Honor, likewise.  I would ask the

17  Court to allow us to wait until the case is certified before

18  requesting counsel.

19          THE COURT:  Okay.  Mr. Carreon.

20          MR. CARREON:  Your Honor, I request to withdraw based

21  on a conflict, Judge, so I think it would be better to wait

22  until the Court decides on that issue and the new counsel is

23  appointed before we make that decision.

24          THE COURT:  Okay.  Mr. Ibarra.

25          MR. IBARRA:  Your Honor, I would also ask that

1    learned counsel be appointed upon certification.  We will wait

2    until then.

3         THE COURT:  Okay.  Let me just ask, who would not

4    prefer to wait for learned counsel?

5         Okay.  Ms. Stillinger.

6         MS. STILLINGER:  Your Honor, I don't think I'm

7    prepared to say right now this moment, but -- but I know I have

8    had a death-eligible case before, just a couple of years ago in

9    El Paso, and one of the things we did, I had learned counsel

10   who was somebody who had practiced more in the state court but

11   had death-penalties cases.  One of the things we actually did,

12   we actually traveled to Washington, we appeared before the

13   committee that was making the determination.

14        So I guess I'd like to talk to Mr. Castellano and

15   Ms. Armijo to find out the process, because it seems to me that

16   that's where learned counsel might help most, is to try to put

17   the brakes on it being certified as a death-penalty case.  But

18   I guess -- So I'm not requesting it today, because I want -- I

19   mean, if we don't think it's going to go there, then we don't

20   need to take that step, but I can certainly notify the Court if

21   I think I need learned counsel.

22        THE COURT:  And, Mr. Pierce.

23        MR. PIERCE-VARELA:  On behalf of Anthony Baca, we're

24   requesting learned counsel.

25        THE COURT:  All right.  Ms. Armijo, did you want to

1   add to that?

2           MS. ARMIJO:  No, Your Honor.  Although we cannot talk

3   in great detail about the process that it goes through, there

4   is a point in time in some cases that are not expedited that

5   the defense is allowed to come forward and provide information;

6   however, at this point in time, we do not -- we are not

7   requesting that, and that's why we're not requesting

8   mitigation.  Should, obviously, things in the process go

9   differently, then, obviously, we would be the first ones to

10  notify defense counsel that they need to be appointed learned

11  counsel for that process, but that is why Mr. Castellano

12  indicated that we are not seeking mitigation, because -- at

13  this point, because we are in that expedited-process point.

14          THE COURT:  I understand.  Okay.  So -- But so far,

15  nevertheless, still I have Ms. Strickland and Mr. Pierce who do

16  request learned counsel.  Anyone else?

17          MR. ORQUIZ:  Yes, Your Honor, on behalf of Mr. Alonso

18  I would request learned counsel, as well.

19          THE COURT:  And that was Mr. Noel Orquiz.

20          MR. ORQUIZ:  Yes, sir.

21          THE COURT:  Okay.  Anyone else?

22          Okay.  It may be fortunate for all of us to have

23  Mr. Donatelli and Mr. McCue in the courtroom even though

24  they're not representing any of the defendants who are charged

25  in either of these two cases.

1          But either one of you gentlemen, if you could perhaps

2     give us your perspective on appointment of learned counsel at

3     this point.  You see what my approach is at this particular

4     point, which is to a point where current counsel has requested

5     learned counsel.  What would -- Mr. McCue, what would you

6     contribute to that?

7          MR. McCUE:  Judge, it's -- it's always been the

8     practice in this district, and I think it comports with the

9     federal statutes, to appoint learned counsel until the case is

10    not a capital case.  That's the procedure that's been followed.

11         And the other statute which hasn't been mentioned

12    here today, but I think it's been cited to the Court, is 18

13    U.S.C. 3599, and it says, in every criminal action in which a

14    defendant is charged with a crime which may be punishable by

15    death, then there's a whole list of different services that

16    should be available to counsel.

17         THE COURT:  Mr. McCue, though, technically that's

18    true, but in some cases we don't, and I'll just give one

19    example.  Although clearly a different kind of case than what

20    we have in front of us today, is an individual charged with

21    transporting illegal aliens resulting in death.  Clearly a

22    capital case, but I've never seen where learned counsel has

23    been appointed in that particular kind of case.  So technically

24    you're right, but in reality learned counsel is not appointed.

25    This is on an expedited track before the Attorney General, went

 1   through the committee at DOJ.  So I'm just pointing that out as

 2   an exception to the general rule you just cited.

 3          MR. McCUE:  Yeah, that's correct, Your Honor.  Every

 4   case is different.  My last personal experience with this was a

 5   bank robbery case in Albuquerque where there were two women

 6   killed in a traffic accident, and I don't think that case

 7   necessarily had much of a chance of getting authorized, but the

 8   Court still appointed learned counsel who was in the case for

 9   four months and actually taught me a lot about how these cases

10   should be handled.

11          I think the first 30 days, 60 days, the first 90 days

12   in these cases can really be crucial.  And I think -- I don't

13   really -- I guess I don't really understand what the Government

14   is saying about mitigation, but mitigation more typically

15   should begin as early as possible in these cases.

16          So, the funding for C.J.A. comes out of the federal

17   defender, the defender services office, so it's not funding

18   that comes from the Court.  It's a separate appropriation.  But

19   that's what the money's for and that's what it should be used

20   for.

21          And these are very serious cases.  There are a number

22   of defendants who have multiple homicides.  As Ms. Stillinger

23   pointed out, if the committee does not authorize the fast

24   track, then they'll want a presentation from counsel, which

25   will need to include mitigation presentations.

1              And the thing about the fast-track process, Judge, as

2    I understand it is, it's -- fast is kind of a euphemism.  It

3    takes anywhere from two months to 15 months for people to get

4    word on these cases.  And Mr. Donatelli's in a better position

5    than I am to speak to the Court about that, but, as I said,

6    that time in these cases is really crucial, and I think that

7    the people that we have here that have been appointed are great

8    lawyers, but they're not qualified to do a death case, and I

9    think we have people in the country who are qualified, and I

10   think that the Court at this point should appoint learned

11   counsel.  That's my position.

12             THE COURT:  And by count there are about 17.

13             MR. McCUE:  I think 19.

14             THE COURT:  19?

15             MR. McCUE:  19 individuals with special findings.

16             THE COURT:  So notwithstanding current defense

17   counsel's position, you're suggesting that learned counsel be

18   appointed either way?  I mean, even --

19             MR. McCUE:  Yes, sir.

20             THE COURT:  -- if they at this point don't deem it

21   necessary?

22             MR. McCUE:  Yes, sir.

23             Judge, just one other matter, and I don't know that

24   I'm the best person to bring this up, but a lot of us have

25   noted that there were -- that the conduct that's alleged in

 1    these cases extends into the Court's time at the U.S.

 2    Attorney's Office, and so I wonder if this might not be the

 3    best time to establish on the record that this case did not

 4    arise while you were serving in the U.S. Attorney's Office.

 5              THE COURT:  Well, go ahead --

 6              MS. ARMIJO:   Your Honor --

 7              THE COURT:  -- Ms. Armijo.

 8              MS. ARMIJO:  -- as I had indicated to Mr. McCue, that

 9    when this investigation was assigned to me, it was opened up as

10    a brand-new investigation in the U.S. Attorney's Office, and an

11    FBI investigation, a brand-new one, was opened up on

12    March 31st, 2015.  And I have -- I have not investigated these

13    group of individuals prior to that, and it was a brand-new

14    cause number, name, investigation.

15              THE COURT:  Okay.

16              MR. McCUE:  Well, I think that resolves that, Judge.

17    My recollection of the date of your investiture is August 9th,

18    2013.

19              THE COURT:  Thank you, Mr. McCue.  It is the date.

20              Let me just say, so long as Mr. McCue brought it up,

21    there is one name that is familiar to me, and that is Mauricio

22    Varela.  That's Ms. Stillinger's client who's charged in both

23    cases, 4268 and 4269.  I did prosecute a Mauricio Archie Varela

24    and that was 2005 to 2006, maybe even into 2007.  That was

25    while I was still an Assistant U.S. Attorney.  That was the

1    father of the defendant who is now being charged –– or is now

2    charged in these two Indictments, and that's the information

3    that was relayed to me through my CRD.

4              And so I'm familiar that the senior, of course, had a

5    son and that at that time, that the father was being

6    prosecuted.  The son, I believe, was in the state penitentiary

7    system or Corrections Department.  So that's the overlap that I

8    see from my time in the U.S. Attorney's Office to both matters

9    that are now before me, Mr. McCue.

10             So no involvement that I know of, I could tell you,

11   between myself while either an assistant or the U.S. Attorney

12   as to the Mauricio Varela currently charged.

13             MR. McCUE:  Thank you, Judge.

14             THE COURT:  You're welcome.

15             MR. McCUE:  I'm just trying to save your 2016 for

16   you.

17             THE COURT:  Yes, sir.  I appreciate that.

18             All right.  Mr. Donatelli rises to the occasion.

19             MR. DONATELLI:  Your Honor, thank you for an

20   opportunity to address the Court.  I want to second everything

21   that Steve said and talk just very briefly about the fast-track

22   process.

23             I'm here as a member of the Federal Death Penalty

24   Resource Counsel Project, which has been assigned to assist

25   counsel in these cases.  And I think you're familiar with the

 1   role that I've served in other capital cases in this district.

 2            Recently, the Project did a study of the fast-track

 3   cases that had gone up to the capital case section pursuant to

 4   that provision in the protocol.  The average turnaround time

 5   was six months.  And I can give you a list of the cases with

 6   the dates if -- it's obviously information the justice

 7   department has.

 8            And the other problem is that frequently fast track

 9   no-seek recommendations are overruled.  And there's some

10   specifics of this case that I would like to bring to the

11   Court's attention in an ex parte session when you meet with

12   counsel, that indicate that some of the people really are at

13   risk of having even a no-seek overruled.

14            The reason that the statute -- And I would ask the

15   Court also to look at the capital case representation plan in

16   the district.  The reason that it -- that our plan requires

17   that counsel be appointed in a capital case at the earliest

18   possible time is because right now there are critical rights at

19   stake for the death-eligible clients; that is, that their

20   conduct right now could very well push them over the top on

21   authorization, and that's why competent learned counsel is

22   necessary to be appointed to advise the clients as to how the

23   death penalty process works, so that they understand why their

24   conduct at this point puts them at risk and may, despite the

25   good intentions of the United States Attorney's Office of

1  asking for a no-seek, there are things right now that they

2  could do that would affect that.

3          Similarly, if a case is authorized, as Mr. McCue

4  pointed out, there are -- may be matters of mitigation which

5  need to be preserved.  In my own case, the cases -- there were

6  two pre-indictment cases where the client's mother died before

7  the case went to trial.  Those are the kinds of things that

8  need to be investigated and pinned down to preserve their

9  rights.

10        (Gary Mitchell entered the courtroom.)

11        MR. DONATELLI:  And again -- And finally, Judge,

12  there are some specifics about some of these cases that I'd

13  like to talk to you about when you speak to the defense in an

14  ex parte session.

15        Do you have any questions about any of that?

16        THE COURT:  No.  Thank you, Mr. Donatelli.

17        MR. DONATELLI:  Thank you.

18        THE COURT:  So one more, Ms. Armijo.

19        MS. ARMIJO:  Well, Your Honor, I understand he's

20  saying "fast track."  We have been working -- Mr. Castellano

21  and I have been working with the capital case unit.  We have a

22  member of that unit assigned to this case who met with us in

23  November.  We've already gone over the case and have a plan of

24  action for it.

25        And I don't mean to -- Apples and oranges.  And he's

```
 1    saying "fast track," which I understand.  But we're seeking

 2    expedited review, which the attorney working with us thinks

 3    that that is quite possible.  And I can tell you as a member

 4    for two -- two or three years I was a member of the Attorney

 5    General's capital case review reviewing these, and it was not

 6    uncommon to get cases to review on an expedited basis that the

 7    committee itself for their recommendation would turn around

 8    within a week time period.  I mean, obviously, there's more

 9    steps in the process, but not all cases that are fast track

10    take six months.  It is possible to do it much quicker.

11             THE COURT:  Okay.  Thank you, Ms. Armijo.

12             Let me take that under advisement.  I'll get a

13    decision out to you just as soon as possible.

14             Okay.  I know time is of the essence.

15             In the meantime, though, Mr. Pierce and

16    Ms. Strickland have both requested learned counsel.

17             MR. PIERCE-VARELA:  Yes, sir.

18             THE COURT:  Same, perhaps, unique features to their

19    case they're requiring that that is necessary.

20             I will note that Mr. Mitchell is here.

21             MR. MITCHELL:  Thank you, Your Honor.

22             THE COURT:  Yes, sir.  And he is here, as I said,

23    representing Mr. Jerry Armenta.

24             MR. ORQUIZ:  Your Honor --

25             THE COURT:  And Mr. Orquiz requested learned counsel,
```

1    as well.

2             MR. ORQUIZ:  Yes, sir, for Mr. Alonso.

3             THE COURT:  Excuse me.  So, as I said, I'll get to

4    that in short order.

5             Okay.  Maybe because we have 25 or so defendants

6    charged and at least as many attorneys on the case, I'm

7    thinking of it may be useful, helpful to everybody involved to

8    designate one attorney who can speak on behalf of the entire

9    group for -- And I realize that may not be necessary and maybe

10   even against the interests of your clients in some instances,

11   but to the extent that counsel can consider one of you speaking

12   on behalf of the entire group, I think that would be very

13   helpful.

14            The other thing I will ask that -- I have -- besides

15   the motions for learned counsel, I've received two other

16   motions.  One from Mr. Benjamin, and he has moved the Court to

17   seek authorization, he's seeking authorization for the use of

18   electronic devices at the detention facility wherein defendant

19   is detained.  Mr. Benjamin is not here.  I've seen this kind of

20   motion before in a different case, and what I know is counsel's

21   experience with one of the facilities that requires contact or

22   prohibits at times counsel from meeting with their client and

23   going over, reviewing certain electronic types of evidence that

24   has been turned over in discovery.

25            Since I have seen that motion and I have had

1  consultations with the Marshals Service before, my view is the

2  ready to that is, if any of counsel has problems with the jail

3  facility to do something like this, please contact the Marshals

4  Service.  I'm assured by the Marshals Service that it's really

5  an individual facility that is sort of pushing back on what

6  you're trying to do, but if you make contact with the Marshals

7  Service, the Marshals Service will ensure that you should not

8  have any trouble visiting with your client and reviewing

9  electronic discovery and perhaps other types of discovery as

10  necessary.

11          So, I'm going to hold that motion in abeyance.  If

12  you can relay that to Mr. Benjamin.

13          MS. HARBOUR-VALDEZ:  I will do that.

14          THE COURT:  But if you have problems with that kind

15  of representation, please let me know.  We'll see if we need to

16  do something else about it.

17          Now, I bring that motion up also as just an example

18  of where I will require counsel before filing a motion to

19  consult and confer with all counsel and to let me know in your

20  motion and to certify in your motion that you have contacted

21  other counsel and whether anyone has elected to join.

22          So what I want to know is, am I going to receive 25

23  of a similar motion?  Is there a way we can consolidate the

24  effort?  There may be good reason why counsel decides not to

25  join in the motion, and that's fine, but it would be helpful to

1  me to know who does join in and who doesn't, and that way I

2  understand the scope of my ruling.  And you should understand

3  the scope of my ruling.

4          Any questions about what I just put out?

5          Okay, Ms. Harbour.

6          MS. HARBOUR-VALDEZ:  No, Your Honor.

7          THE COURT:  Please let me know by show of hands, at

8  the least for now, if you need any clarification to what I just

9  said and whether you have any sort of objection at this point

10  to how that requirement will work.

11          Okay.  So here, too, we're trying to make it as --

12  easy is not the right word, but less difficult, I should say,

13  for all of us concerned.

14          All right.  So if you can do that, that will be

15  helpful.

16          All right.  I asked Ms. Armijo if there are any other

17  motions or any motions that the Court can expect for the next

18  two, three to even four weeks' time.

19          MS. ARMIJO:  No, Your Honor.

20          THE COURT:  Okay.

21          MS. ARMIJO:  Not that I can think of.

22          THE COURT:  All right.  Let me just ask defense

23  counsel if there is anything that you have in mind at this

24  particular time that I should expect.

25          All right, Mr. Ibarra.

1           MR. IBARRA:  Your Honor, with regards to Mr. Martinez

2    I think there might be a question as to his competency.  Look

3    at the Pretrial Services report.  I believe five of his

4    previous cases have been dismissed due to lack of competency.

5    We'd like to look into that a bit further.

6           THE COURT:  Okay.  Thank you, Mr. Ibarra.

7           Anything else?

8           Okay.  Then unless there is nothing else -- or unless

9    there is something else that I should take up at this

10   particular time, and it appears there is not, then we'll go

11   ahead and recess on this status conference.

12          Mr. Carreon, I know you have a motion that's pending.

13   We'll take that up after I dismiss --

14          MR. CARREON:  Okay.  Very well, Judge.

15          THE COURT:  -- Ms. Armijo and Mr. Castellano.

16          Is there anything else I should take up, Ms. Armijo?

17          MS. ARMIJO:  No, Your Honor.

18          THE COURT:  Okay.

19       (Court stood in recessed at 2:17 p.m.)

20

21

22

23

24

25

1                    C-E-R-T-I-F-I-C-A-T E

2   UNITED STATES OF AMERICA

3   DISTRICT OF NEW MEXICO

4

5       I, Danna Schutte Everett, RPR, CCR, CRR, Official

6   Court Reporter for the State of New Mexico, do hereby

7   certify that the foregoing pages constitute a true

8   transcript of proceedings had before the said Court held

9   in the city of Las Cruces, New Mexico, in the matter

10  therein stated.

11      In testimony whereof, I have hereunto set my hand on

12  this 11th day of March, 2016.

13

14                  _____

15                  DANNA SCHUTTE EVERETT
                    Registered Professional Reporter
16                  Registered Merit Reporter
                    Certified Realtime Reporter
17                  NM Certified Court Reporter #139
                    100 Church Street
18                  Las Cruces, New Mexico  88001
                    Phone:  (575) 528-1656
19                  Fax:  (575) 528-1656
                    dannadawn@comcast.net

20

21

22  December 14, 2015, USA vs. DeLeon and Garcia

23

24

25