```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW MEXICO
 2
   UNITED STATES OF AMERICA,
 3
             Plaintiff,
 4
        vs.                     CRIMINAL NO. 15-4268 KG
 5
   ANGEL DeLEON, et al.,
 6
             Defendants.
 7
                                and
 8
 9 UNITED STATES OF AMERICA,

10           Plaintiff,

11      vs.                     CRIMINAL NO. 15-4275 KG

12 CHRISTOPHER GARCIA,

13           Defendant.

14    TRANSCRIPT OF SHOW CAUSE HEARING AND MOTIONS HEARING

15         BEFORE THE HONORABLE KENNETH J. GONZALES

16         TUESDAY, MARCH 22, 2016; 1:25 P.M.

17             LAS CRUCES, NEW MEXICO 88001

18

19 REPORTED BY:  Danna Schutte Everett, CRR, RPR, RMR, CCR 139
                 United States Court Reporter
20               100 N. Church Street, Las Cruces, NM  88001
                 Phone:  (575) 528-1656  Fax:  (575) 528-1645
21               dannadawn@comcast.net

22

23

24
        Proceedings recorded by mechanical stenography;
25 transcript produced by computer.
```

```
 1
     FOR THE UNITED STATES:
 2
         UNITED STATES ATTORNEY'S OFFICE
 3       555 South Telshor, Suite 300
         Las Cruces, New Mexico  88011
 4       BY:  MS. MARIA YSABEL ARMIJO

 5   FOR THE DEFENDANT EUGENE MARTINEZ:

 6       GORENCE & OLIVEROS, PC
         1305 Tijeras, Northwest
 7       Albuquerque, New Mexico  87102
         BY:  MR. ROBERT GORENCE
 8           and
         KILMER, LANE & NEWMAN, LLP
 9       1543 Champa Street, Suite 400
         Denver, Colorado  80202
10       BY:  MR. DAVID A. LANE, Telephonically

11   FOR THE DEFENDANT CHRISTOPHER GARCIA:

12       LAW OFFICE OF AMY SIRIGNANO, PC
         5901J Wyoming Boulevard, Northeast, #250
13       Albuquerque, New Mexico  87109
         BY:  MS. AMY SIRIGNANO
14

15   Also Present:  Mr. Bryan Acee, FBI
                    Mr. Mark Myers, Case Agent
16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Okay.  Good afternoon, everyone.  Please
2   be seated.
3          Okay.  We are on the record in open court in United
4   States versus Eugene Martinez.  That's 15-CR-4268.  And that
5   also includes United States versus Christopher Garcia, same
6   cause number, in addition, 15-CR-4275.
7          Ms. Maria Armijo is here for the United States.
8          Good afternoon, Ms. Armijo.
9          MS. ARMIJO:  Good afternoon, Your Honor.
10         THE COURT:  All right.  And representing Mr. Martinez
11  is Mr. Robert Gorence.
12         MR. GORENCE:  Good afternoon, Your Honor.
13         THE COURT:  Good afternoon to you, Mr. Gorence.
14         MR. GORENCE:  And Mr. David Lane is on the line.
15         THE COURT:  Yes.  Okay.  And I have also Ms. Amy
16  Sirignano, who appears on behalf of Mr. Garcia.
17         All right.  Mr. Garcia, you may sit down, sir.
18         And I also see Mr. Martinez is here.  And Mr. David
19  Lane is on the telephone.
20         Can you hear me sufficiently, Mr. Lane?
21         MR. LANE:  I can, Your Honor, yes.
22         THE COURT:  Okay.  Good afternoon to you, sir.
23         MR. LANE:  Good afternoon, Your Honor.
24         THE COURT:  Okay.  I had called this matter by order
25  to show cause relating to whether counsel, Mr. Gorence, would

 1   remain on the case in light of his prior representation of

 2   Mr. Garcia, and while that order was pending, the United States

 3   filed a motion seeking recusal -- or disqualification, rather,

 4   of Mr. Gorence, and that is document 306.  I set the matter for

 5   a hearing, and during the course of that hearing I heard from

 6   Mr. Gorence and Ms. Armijo as well as Ms. Sirignano, and, of

 7   course, allowed Mr. Gorence to file a written pleading on

 8   behalf of Mr. Martinez, addressing -- in part responding to the

 9   Government's motion and addressing my order to show cause.

10            So that brings us to this hearing today, where I will

11   hear from Mr. Gorence to the extent you'd like to add anything.

12            MR. GORENCE:  Yes, Your Honor.

13            THE COURT:  Okay.

14            MR. GORENCE:  You have the benefit of document 319

15   that I filed in response to the Government's sealed motion

16   seeking disqualification.  My position is really set forth in

17   this response.

18            I first believe I do not have a conflict of interest

19   to begin with, and that really flows from what happened when I

20   was first asked to accept an appointment for Mr. Martinez.  I

21   had seen the Indictment, I had received a call from

22   Mr. Garcia's mother the day that he was arrested, and I

23   indicated that I would not be representing him -- they could

24   not retain me in a case of this complexity and it wasn't going

25   to work out.  So I knew Mr. Garcia was a defendant joined with

1    Mr. Martinez.

2          Prior to accepting appointment, as I told you during

3    our telephonic hearing, I did check the rules of professional

4    conduct and did research, consulted with two other lawyers to

5    make sure -- and I should say, not even the lawyers in my

6    firm -- outside counsel to ascertain that my undertaking this

7    matter on behalf of Mr. Martinez was conflict-free.

8          And as I've posited, I mean, it's very clear from the

9    model Rules of Professional Conduct at Rule 1.9(a), I do not

10   have a conflict in this matter when -- and I can read it:  "A

11   lawyer who has formally represented a client in a matter shall

12   not thereafter represent another person in the same or

13   substantially related matter in which that person's interests,"

14   that would be Mr. Martinez, "are materially adverse to the

15   interests of the former client unless" the former client gives

16   informed consent.

17          Well, and there's guidance on what is a -- if you

18   look at the restatement of the law governing lawyers, what

19   actually is a matter that is substantially related.  And as

20   I've set forth in my response, representing Mr. Garcia in a

21   2006 matter involving a felon-in-possession does not relate to

22   these allegations whatsoever.  They're not related matters.

23          The only thing that could be construed to be related

24   is this potential -- or I should say, as alleged in the

25   Indictment, joint membership in a criminal enterprise.  That's

1    the allegation.

2           All I can tell you, Your Honor, is that, given my

3    representation of Mr. Garcia being at least in 2006, I no

4    longer have a hard copy of that file.  My practice is they're

5    all shredded at the five-year mark.  I now back them up,

6    including discovery.  I mean, they're all scanned.  I didn't do

7    that back then.

8           I have no information about Mr. Chris Garcia's case,

9    but I can tell you that when I was provided with the sentencing

10   memorandum, that one of the arguments made by then-A.U.S.A.,

11   now United States Magistrate Judge Greg Fouratt, that there was

12   an allegation in the sentencing memorandum that Mr. Garcia was

13   a member of a prison gang.

14          Now, I can tell you -- and again, I don't have a

15   sentencing transcript before Judge Parker, but there was no --

16   on my recollection, there was no discovery whatsoever of that

17   in the felon-in-possession case.  I objected at the time of the

18   sentencing that the person that they were going to call or did

19   call I couldn't cross-examine because there were no documents

20   that were ever produced that substantiated that, and it's my

21   recollection that Judge Parker then discounted that, said he

22   wasn't going to consider that allegation.  I heard it as an

23   allegation.  I never saw any proof.  Having said that, I don't

24   believe a conflict exists.

25          Number two, under the scenario of the Government in

1   their sealed pleading, the idea of theoretically if Mr. Garcia

2   were to testify and I were to cross-examine him, I still -- and

3   as we've argued, there's nothing in my representation that

4   could be used to his detriment or to my current client,

5   Mr. Martinez's detriment.  But if that theoretical conflict

6   exists, Mr. Lane is completely conflict-free and could handle

7   that cross-examination.

8           Finally, on the waiver question, Your Honor, and I

9   want Mr. Lane to follow-up on this, obviously, if a conflict

10  doesn't exist, there's no waiver.  If it does, it can be waived

11  if Mr. Garcia waives -- I mean, I think he has an interest --

12  as well as Mr. Eugene Martinez.

13          Your Honor, on this part, I disclosed on my very

14  first attorney visit with Mr. Martinez that I had represented

15  Mr. Garcia.  I told him, "I don't think that's an issue."  He

16  represented to me that he wanted me as his lawyer, along with

17  Mr. Lane, but now I'm not arguing to the Court that that's a

18  knowing waiver when Mr. Lane and I have said we have grounds to

19  believe that Mr. Eugene Martinez has a competency issue yet to

20  be resolved by the Court.

21          So my argument would be for the Court to make a

22  finding that there is no conflict.

23          Next, if there is, Mr. Lane -- if there's a

24  theoretical conflict, Mr. Lane would cross-examine Mr. Garcia

25  if he chose to testify.

```
 1              And, finally, Your Honor, if we get to waiver
 2    questions, I'm going to be asking the Court that you withhold
 3    that until -- until and if Mr. Eugene Martinez is ruled
 4    competent where he could undergo that.
 5              Lastly, if he's not competent to proceed, Your Honor,
 6    I've given a lot of thought to this and I know I've spoken at
 7    length with Mr. Martinez's -- well, both with him in my visits
 8    with him and with his wife, as well -- I understand that there
 9    is a desire that I continue on this, and particularly if he's
10    found incompetent.  I have litigated extensively before Judge
11    Johnson a case involving multiple competency hearings, multiple
12    hearings having to do with an attempt at restoration.  This got
13    briefed up to the Tenth Circuit on another issue, and when he
14    was found incompetent, I then have experience in defending
15    allegations of a civil commitment based on future
16    dangerousness.
17              Not many people, I don't -- in New Mexico, I don't
18    think have that experience that could theoretically ripen into
19    the needs of Mr. Eugene Martinez here.
20              THE COURT:  They rarely get that far, do they?
21              MR. GORENCE:  What's that, Your Honor?
22              THE COURT:  They rarely get that far, do they?
23              MR. GORENCE:  They rarely do.  And it's a very
24    special -- and I'm not -- I'm sure Mr. Lane does, as well, and
25    at that point, obviously, the Government would not be seeking a
```

1    sentence of death if he's incompetent.

2            But, I'm just saying, that case in front of Judge

3    Johnson, it was also a C.J.A. case, that young man was a Native

4    American.  Those proceedings lasted approximately two years.

5    He underwent three different evaluations, and I know that he

6    spent substantial time in various -- I mean, actually, that's

7    why I knew him, he was sent to Springfield, Devon,

8    Massachusetts, and Butner, and we had multiple hearings dealing

9    with an attempt at restoration, and ultimately a hearing on,

10   you know, an attempt by the Government to civilly commit him

11   for an indefinite period of time.

12           And all I'm saying is that it's by virtue of that,

13   that I believe Mr. Martinez's wife has said, "We want you to

14   continue."  And if Mr. Martinez is -- Again, I'm not in a

15   position to say what his wishes are, because I don't believe he

16   has the capacity to do that.

17           If you have any other questions factually, Your

18   Honor, I'd be happy to address them.  I do think Mr. Lane -- I

19   would like him to address the Court, as well.  We've discussed

20   this, obviously, in anticipation of this hearing.

21           THE COURT:  One question.  You had identified at

22   least the potential, and you raised this with Mr. Martinez at

23   an early stage after you were appointed?

24           MR. GORENCE:  After I was appointed, my very -- my

25   very first contact with him --

 1          THE COURT:  Okay.

 2          MR. GORENCE:  -- in custody I told him that I had

 3    previously -- and actually, all I did was pulled a docket sheet

 4    so I could tell him what the dates were and when the case

 5    ended.

 6          THE COURT:  Okay.

 7          MR. GORENCE:  And I didn't go over the model rule

 8    with Mr. Martinez, but I had at that point, as I said,

 9    consulted my partner, the other lawyer in my firm, and two

10    other prominent attorneys, including one who had served on our

11    State Supreme Court, and we talked about things, and that was

12    the basis for my going forward.

13          THE COURT:  Okay.  And I didn't mention -- I did get

14    your response, Mr. Gorence, that's document 319, and I will

15    say, probably somewhat redundantly, that since this arose, or

16    maybe it was shortly before I issued my order to show cause, I

17    did find sufficient reason to believe that Mr. Martinez was

18    incompetent such that he should be committed to the custody of

19    the Attorney General for a period of four months under the

20    statute for treatment toward competence.  So I just wanted to

21    make that clarification.

22          So Mr. Martinez is here only because he just has not

23    been transported to the Bureau of Prisons at this point.  But

24    we did make arrangements that he would not be transported so

25    that he would being here, understanding that at least at this

1   point he remains, presumably, incompetent to stand trial and to

2   proceed.

3          MR. GORENCE:  Yes.  And I understand that, Your

4   Honor.  But I guess there is an issue that I talked about with

5   Ms. Armijo at the conclusion of the order -- your order

6   regarding discovery and when we addressed competency --

7          THE COURT:  Right.

8          MR. GORENCE:  -- and you made the finding.  It was my

9   understanding, and I think it's Ms. Armijo's, that this first

10  evaluation is to determine competency and that the Court has a

11  substantial basis to order that, much like Mr. Lane and I did

12  by virtue of a competency evaluation that was performed

13  slightly more than two years ago --

14         THE COURT:  Right.

15         MR. GORENCE:  -- in a finding by a state court judge.

16  If it's -- If you're making a finding he is incompetent and

17  this four-month period of time is for restoration, I'm not sure

18  if we have to modify the order.  I'll let Ms. Armijo -- That's

19  actually not part of this first hearing, Your Honor, and we can

20  deal with that later.

21         THE COURT:  Let's park that for the time being.  In

22  the meantime, Mr. Lane, I'll hear from you, sir.  This is the

23  Government's response, but I'm sort of proceeding because this

24  was the Court's order to show cause, giving Mr. Gorence and

25  Mr. Lane first opportunity to make argument.

1          Mr. Lane.

2          MR. LANE:  Thank you very much, Your Honor.  My

3    position is very much like Mr. Gorence's position, and that is

4    that it is a theoretical conflict, and as such I don't know

5    that there's an actual conflict.  The law is fairly clear on

6    this point.  I think Mr. Gorence briefed it pretty well.

7          My only position on all of this is, nothing

8    Mr. Martinez has said in the past should be relevant in any

9    way, shape or form to this Court's decision.  The fact that

10   Mr. Martinez has indicated a desire to have Mr. Gorence on the

11   case is nice and gives you a warm feeling inside, but it's not

12   legally relevant while the issue of competency is pending.

13         And as Mr. Gorence said, if this Court does find a

14   conflict, that is a waivable conflict, but it's only waivable

15   by competent defendants, and both defendants have to be

16   competent in order to waive it.  So at this moment, if there is

17   a conflict, there can be no waiver by Mr. Martinez, because

18   he's not competent to execute a waiver.

19         Other than that, Your Honor, I stand by what

20   Mr. Gorence said.  I think it's a hypothetical, theoretical

21   conflict, but the actuality of it is such that I have no

22   conflict, and I think Mr. Gorence having no real recollection

23   of Mr. Garcia's case and having no files to rely on or look at,

24   I think it's merely a theoretical conflict.

25         THE COURT:  Mr. Lane, so suppose that we would

1    exercise that option and allow you and Mr. Gorence to remain on

2    the case and you would be the one conducting any

3    cross-examination that you both deem necessary and appropriate

4    on behalf of your client.  How would you reconcile or, I guess

5    stated another way, how would you arm yourself for

6    cross-examination in order --

7              MR. LANE:  Your Honor, I would arm myself for

8    cross-examination by looking at all the records in discovery

9    that the Government has provided me with.  You know, it's

10   pretty straightforward.  Impeaching someone with felony

11   convictions -- And the Government will be providing us with

12   everybody's criminal history if they have not already done so.

13   I think they may have already done so.

14             You know, and any kind of investigation that I would

15   undertake independent of discovery would be also independent of

16   Mr. Gorence, and I would simply have an investigator go out and

17   do a full investigation of the codefendant and fill me in on

18   anything he discovered.

19             THE COURT:  So --

20             MR. LANE:  It would be a normal investigation done

21   independently of Mr. Gorence.

22             THE COURT:  Yes.  Okay.  That's -- I can see how that

23   would at least be your first step.  Though, would you agree,

24   though, to be completely or at least sufficiently effective in

25   representing Mr. Martinez, could you speak to the duty you

1    would have to pursue any additional avenues or sources of

2    information in order to arm yourself completely for

3    cross-examination, including consulting with co-counsel?

4            MR. LANE:  Well, the way I view this, I have an

5    absolute duty to represent Mr. Martinez to the best of my

6    ability, to do as much investigating as I possibly can, but in

7    36 years of practicing law, I don't recall ever talking to the

8    former criminal defense attorney representing someone who I was

9    going to be impeaching on the witness stand and asking that

10   person for information about their former client, because I

11   would expect every lawyer in America to give me the same

12   response, and that would be, "That's attorney-client privilege,

13   I'm not talking to you about my former client."  So I've never

14   approached another lawyer about that, nor would I independently

15   approach Mr. Gorence about his prior representations, because I

16   know I would get that same answer.

17           So I would use independent sources to investigate his

18   former client, and I would not talk to Mr. Gorence about, you

19   know, any aspect of his prior representation.

20           THE COURT:  Okay.  So that would be in a scenario

21   where you would just consult with -- that you would not feel a

22   need to consult with prior defense counsel.  But this case is

23   unique and this circumstances is somewhat different in that

24   prior defense counsel would happen to be your current

25   co-counsel, both of you owing a duty to represent Mr. Martinez

```
 1   effectively.  So can you speak to that?
 2          MR. LANE:  Well, yes.  I mean, I think part of having
 3   two lawyers on a case is -- there is a division of labor, and
 4   the division of labor frequently includes dividing a case up
 5   into penalty phase versus guilty/innocence phase.  And the two
 6   lawyers, while they are, in fact, on the team together,
 7   frequently work independently of one another putting together
 8   their perspectives and their specific parts of the case.
 9          So, because, you know, doing a routine investigation
10   on a codefendant who may testify against my client and
11   preparing a cross-examination is generally not the kind of
12   thing that is so complex and difficult that I would need to
13   consult with co-counsel before I undertook an investigation of
14   this person's character, background, history, criminal record,
15   things of that nature.  That is something that defense
16   attorneys routinely do, and I feel that with 36 years of
17   experience doing federal death-penalty cases and criminal
18   defense generally, I really -- I could handle that without
19   necessarily talking to Mr. Gorence about how to go about
20   preparing a case for cross-examining a codefendant.
21          THE COURT:  All right.  Thank you, Mr. Lane.
22          Ms. Sirignano.
23          MS. SIRIGNANO:  Yes, Your Honor.
24          THE COURT:  Where is your client on this issue?
25          MS. SIRIGNANO:  Mr. Garcia has advised me that he's
```

```
1    prepared to waive any conflict at this time.
2                THE COURT:  Okay.  Okay.  All right.
3                MR. LANE:  I didn't hear that, Your Honor.  I'm
4    sorry.
5                MS. SIRIGNANO:  Oh, I'm sorry.  Mr. Garcia's advised
6    me that he's prepared to waive.
7                MR. LANE:  I still can't hear.
8                MS. SIRIGNANO:  If there is a conflict, he's prepared
9    to waive it.
10               Thank you.  Oh, thank you.  It's green now.
11               Mr. Garcia will waive any conflict at this time.
12               THE COURT:  Okay.  All right.  Let me hear from
13   Ms. Armijo.
14               MS. ARMIJO:  Your Honor, I think this case is a
15   little bit different from other cases as far as evaluating
16   whether or not there is a conflict, and it's not necessarily
17   our position that there is an actual conflict now, but there is
18   certainly a potential conflict, and as provided in the case
19   law, it's one that the courts should consider whether or not
20   waivers may be obtained, and even if people -- the defendants
21   want to waive it, it's not certain that the Court would
22   necessarily have to accept those waivers.
23               Now, the reason I say this case is different, because
24   this is a racketeering case, and they are joined in the same
25   criminal organization as alleged.  And hypothetically -- And I
```

1   think I need to speak to a couple different things there.

2           If this were to go to trial and Mr. Martinez and

3   Mr. Garcia were to take this case to trial, one of the

4   racketeering activities that we would probably seek to show in

5   talking about SNM would be Mr. Garcia's activities in regard to

6   distribution of drugs.  And to that extent he is charged in

7   another case which is pending before the Court, and I have it

8   as Exhibit Number 3, part of the transcripts, and we would be

9   playing these transcripts, and right there in the transcript

10  Mr. Garcia refers to Bob Gorence is his attorney.

11          Now, based upon what it sounds like, he could be

12  referring to him as his previous attorney, but that's also

13  important, because Mr. Gorence represented him not only for a

14  felon-in-possession case, but also for a trafficking case,

15  which, again, we would be arguing that those were racketeering

16  activities, especially the drug conviction way back when.

17          We also have an instance which we know by court

18  records that Mr. Gorence cross-examined a correctional officer

19  on the issue of Mr. Garcia being an SNM member.  Now,

20  Mr. Gorence's claim of "I didn't receive any paperwork or

21  anything else," it still is hard to believe that he would

22  conduct a cross-examination without talking to his client about

23  SNM and any ties to the SNM, given that he effectively,

24  obviously, cross-examined an expert in this area.

25          Now, another thing for the Court to consider -- So,

1   if that were to go to trial, we would have the jury listening

2   to Mr. Garcia's undercover tape talking about Bob Gorence and

3   Bob Gorence sitting at counsel table with another defendant.

4        Another thing that's important to realize is that I

5   think in -- I don't think this is any surprise to Mr. Garcia,

6   in fact, I know that I've told his attorney this, but we are

7   seeking further charges on him which include

8   felon-in-possession charges, which, obviously, his priors come

9   into play.  Again, Mr. Gorence representing him on his two most

10  recent priors.  No telling if he is going to -- if that were to

11  proceed to trial, if he were to agree that he is a felon or if

12  we would have to prove them up, which is not uncommon.  I had

13  to prove up priors in my last felon-in-possession trial.

14       Another thing for the Court to consider is that what

15  he is referring to, the prior that Mr. Gorence represented him

16  on was a felon-in-possession case, and when he was arrested --

17  and this would have been discovery that Mr. Gorence had -- he

18  indicated that he had a firearm because he was protecting

19  himself because he was shot at, he was the victim of a

20  shooting.  Now, that relates to the transcript, Exhibit

21  Number 3, where he talks about that shooting, and he talks

22  about the person that shot him, whose name is Shane Dix, and

23  that's on page 869, is what it's labeled as, Government's

24  Exhibit 3.

25       And the reason that is important is because

1  Mr. Garcia is the suspect in this homicide, and the United

2  States is actively looking at possibly charging Mr. Garcia in

3  that case.  He is a very strong -- Mr. Dix is dead now, and

4  Mr. Garcia is the -- is a suspect in that murder.

5        So I say all that because it is all relevant to SNM.

6  It is something that even if he wasn't charged we would be

7  seeking to have him brought in.  It's something that was

8  relevant and very -- at the time that Mr. Gorence was

9  representing him, because he was carrying a gun, by his own

10  admissions, because he was shot at, and the person that shot at

11  him is later killed.

12        THE COURT:  Just for context of Exhibit 3, which you

13  just referenced, in which Mr. Dix is mentioned --

14        MS. ARMIJO:  Yes.

15        THE COURT:  -- when was that recording?

16        MS. ARMIJO:  It is U.S. versus Christopher Garcia,

17  and it's 869, is the Bates stamp, and what I have attached is

18  what -- actually, it was disclosed on Friday.  Mr. Aoki has it.

19        THE COURT:  When was the phone call recorded?

20        MS. ARMIJO:  The phone call was recorded during the

21  undercover operations, which -- I don't have the drug case with

22  me.  It would have been in -- That was during a

23  person-to-person buy that was -- that was captured by

24  recordings that is charged in his other case, and I believe the

25  dates -- I'm sorry, I don't have that file in front of me, but

```
 1   are captured in his Indictment.  So it would have been in the

 2   fall of 2015 --

 3             THE COURT:  Okay.

 4             MS. ARMIJO:  -- is the date of that.  So we have that

 5   issue, as well.

 6             Now, as for the learned counsel and having two

 7   attorneys, as the Court knows, the United States is -- has

 8   already indicated that this has gone past committee, that no

 9   mitigation was requested.  I don't know if the Court has

10   decided yet if the Attorney General signs off on a no-seek if

11   all of the people that were previously death-eligible, if they

12   will still have learned counsel, because at that point they

13   will not be death-eligible.

14             THE COURT:  I haven't made that decision.

15             MS. ARMIJO:  Certainly, should the Court make that

16   decision and should learned counsel no longer be involved in

17   the case, that still leaves us with Mr. Martinez having just

18   one attorney, potentially Mr. Gorence, and so that issue of

19   Mr. Gorence being able to be fire-walled, so to speak, would go

20   away.

21             So, as we indicated previously, we saw this as an

22   issue the day that the Court order came out.  That same

23   afternoon, Mr. Castellano and I made a call to Mr. Gorence in

24   an attempt to prevent him from talking to Mr. Martinez, and he

25   indicated at that time that he felt he did not have a conflict,
```

1  but we have always been aware of this situation.

2            THE COURT:  Well, Ms. Sirignano.

3            Thank you, Ms. Armijo.

4            MS. SIRIGNANO:  Thank you, Your Honor.  Just briefly.

5            I understand what the Government is arguing, but I

6  don't have any discovery about that.  Everything that she

7  talked about today regarding page 869, Government's Exhibit 3,

8  my client's been in custody since the beginning of December,

9  and I have 48 pages of discovery.  I have a discovery letter

10 that went up to defense expert counsel, but that's all I have.

11 I have nothing related to Shane Dix, I have nothing related to

12 his prior representation by Mr. Gorence, I have nothing related

13 to his alleged SNM membership or -- and I was told this morning

14 that Indictment was possibly going to be superseded with

15 felon-in-possession charges.

16           So our position is, is I don't even have an

17 opportunity to respond to these factual allegations at this

18 point because I don't have any discovery.

19           THE COURT:  Well, let me -- Did you -- Do you have

20 the United States's sealed ex parte motion document 306?

21           MS. SIRIGNANO:  I do.  I got it -- That's all I have,

22 is the two pages here, which was taken out of context, in that

23 entire conversation.

24           THE COURT:  Okay.  Well, I could tell you, for

25 purposes of this hearing, this is all I'm considering.  I'm not

1    considering anything that perhaps may be in discovery.

2              As to the question that is now before me, which is

3    whether there is a conflict, either actual or potential, such

4    that counsel should remain or should not remain on the case,

5    that's the limited scope of this hearing.  So, as far as

6    hearing any argument based on additional discovery, from my

7    view, I don't see that altogether necessary, as long as you

8    have what is before me, which is attached to document 306.

9              MS. SIRIGNANO:  Yes.  And my point, Your Honor, was,

10   is that what the Government just argued about Mr. Dix, being

11   under investigation for the homicide of Mr. Dix, his prior

12   record, Mr. Gorence's representation --

13             THE COURT:  Okay.

14             MS. SIRIGNANO:  -- especially the Dix homicide and

15   additional charges, that's not contained in this ex parte

16   motion.  And I just want to put that on the record and bring

17   that to the Court's attention.

18             THE COURT:  Okay.

19             MS. SIRIGNANO:  Thank you, Your Honor.

20             THE COURT:  All right.

21             MR. GORENCE:  I just have to rebut, Your Honor, three

22   points.

23             THE COURT:  Sure.

24             MR. GORENCE:  One, the idea that if a sentence of

25   death is ultimately not being sought by the Government, I can

1    most assuredly tell you that if Mr. Eugene Martinez is found

2    competent with his IQ of 51 having been tested previously, but

3    assuming he is, there will be a request that Mr. Lane continue

4    as co- -- or I continue as co-counsel, he's still learned

5    counsel, even though death isn't being sought, for the reason

6    that this will be a very challenging defense, carrying

7    mandatory life imprisonment for someone as severely mentally

8    handicapped as Mr. Martinez.

9          If anything, if the Government -- or if the Court

10   sees fit, Mr. Lane -- I could be the one discharged after the

11   Government, assuming Attorney General Lynch certifies that the

12   case isn't -- That's always a possibility, as well.  That

13   handles that, and the Court could certainly do that.

14         I think, as I said, but this is a case that,

15   uniquely, would require -- or I would suggest the Court would

16   permit two lawyers with someone as -- even if he crosses the

17   competency hurdle, someone who's severely mentally handicapped

18   as Mr. Martinez.

19         Number two, Exhibit 2 on the Government's sealed

20   pleading on 306 --

21         THE COURT:  Yes.

22         MR. GORENCE:  -- and again, I had suggested and I

23   thought they were going to obtain a transcript before Judge

24   Parker.  I didn't see fit to order it.  I thought they would.

25   The minute sheet, Your Honor, and it says specifically they

1  called a corrections officer from Central New Mexico

2  Correctional Facility.  He testified about gangs in the prison.

3        My cross-examination, according to -- alleged

4  cross-examination, it started at 2:30, I requested to review

5  the records that Mr. Sedillo is referring to, if not this

6  testimony be stricken.  The Government states that they were

7  not going to produce those records, is what it says, in

8  essence, because they're not public records and contain highly

9  sensitive information.

10        It's my recollection, at that point, I didn't conduct

11  the cross-examination of that gentleman, because Judge Parker

12  said he wasn't taking it into effect.  So it's actually a

13  misrepresentation that I engaged in cross-examination of

14  someone about gang membership.

15        And then, finally, Your Honor, just even on their

16  line sheet from a call that ostensibly -- again, the Government

17  hasn't identified the date with particularity, but if it was

18  sometime in the fall of 2015, as you see on page 2 of 2, it

19  looks like -- I guess it's a back-handed compliment, because

20  Mr. Garcia says, talk to -- makes it look like he's referring

21  to me as a lawyer.  That's all it is.  He said, "talk

22  to...anybody, talk to Bob Gorence?  That's my attorney."  It's

23  not clear that it's -- I clearly didn't represent him in

24  November or anytime in the fall of 2015.  All this looks like

25  is someone saying, in a context of what I'm provided in the

1    line sheet, is Mr. Garcia making a -- in essence, a referral.

2    I don't see how that even if played for a jury constitutes -- I

3    mean, one, it could be -- my name could be stricken from

4    anything played.  That's an easy way to remedy that.  Or even

5    if it's played, I don't see how that creates any kind of a

6    conflict, if they listen to it.  It's just a referral from one

7    individual to someone who Mr. Garcia suggests needs a lawyer.

8    That's it.

9          And those are just my factual responses to what

10   Ms. Armijo said.

11         THE COURT:  Okay.  Thank you, Mr. Gorence.

12         It is helpful to know that Mr. Garcia is willing to

13   waive his right to conflict-free representation.  Obviously,

14   there's two sides to a waiver under these circumstances, and I

15   couldn't -- I could not even engage Mr. Martinez in a colloquy

16   because of where we currently are with him and the question as

17   to competence.

18         Let me just make some specific references here.

19   Under the Sixth Amendment of the Constitution, criminal

20   defendants have the right to effective assistance of counsel.

21   All right.  The Sixth Amendment does not guarantee that a

22   defendant will inexorably be represented by the lawyer whom he

23   prefers or that the defendant has the right to be represented

24   by an attorney laboring under a conflict of interest.  Here,

25   I'm citing United States versus Evanson, 584 F.3d 904.  That's

1    a 2009 Tenth Circuit case.

2              Now, even without regard to the motion from the

3    United States that was filed, the Court has an obligation to

4    pursue independently -- or an independent interest ensuring

5    that the criminal trials are conducted within appropriate

6    standards of the profession and that legal proceedings appear

7    fair to all who observe them.  A conflict can be either actual

8    or potential.  And Mr. Gorence and Mr. Lane have referred to

9    the theoretical aspects of the representation.  Here, I would

10   couch it more in terms of potential.

11             An actual conflict, as we all know, occurs when

12   counsel is actively representing conflicting interests which

13   have an adverse effect on specific aspects of counsel's

14   performance.  And there I'm citing the -- what should be very

15   familiar, Cuyler versus Sullivan, 446 U.S. 335 at 348.  If a

16   conflict turns out to be actual and severe, the Court must

17   disqualify the attorney even if the defendant is willing to

18   waive the conflict.

19             Now, when a potential conflict exists, the defendant

20   may waive the right to conflict-free counsel if he does so

21   knowingly and intelligently.  And here just citing United

22   States versus Perez, 325 F.3d 115, 125 through 126.  That's a

23   2003 Second Circuit case.

24             Even assuming a defendant validly waives a conflict,

25   the district court is still allowed substantial latitude in

1   refusing waivers of conflicts of interest.  And here I'm citing

2   United States versus Hunt, 62 F. Appendix 272, that's Tenth

3   Circuit, quoting Wheat versus United States, 486 United States

4   153.

5          Mr. Garcia, I'll reiterate, has agreed to waive his

6   conflict.  I cannot inquire or certainly accept any waiver that

7   Mr. Martinez would express because of the current posture and

8   the question as to his competence; however, even were I to

9   engage in a colloquy with Mr. Martinez, and even with

10   Mr. Garcia, given the circumstances in this case and the prior

11   state case where Mr. Gorence represented Mr. Garcia as well as

12   the prior federal case where Mr. Gorence represented

13   Mr. Garcia, I would not accept Mr. Martinez's waiver.

14          So, potential conflicts of interest can become actual

15   conflicts of interest later in the course of litigation and

16   certainly in the course of trial.  So a district court may

17   refuse a waiver when a potential conflict exists, which may or

18   may not burgeon into an actual conflict as the trial

19   progresses.  Here, I'm citing Wheat at 163.

20          In this particular case, I see potential conflict of

21   interest burgeoning into actual conflict in the following ways.

22   First, Mr. Gorence may not realize it even now or be able to

23   identify it now, but he may have information obtained from his

24   prior representation of Mr. Garcia that is relevant to

25   Mr. Martinez's case and could be quite helpful to

1    Mr. Martinez's case.

2              In the event that Mr. Garcia cooperates, and there's

3    no indication there whether that's even possible at this point,

4    but if in the event he decides to, Mr. Gorence, and even

5    Mr. Lane, I would say, could use the information that

6    Mr. Gorence obtained from the prior representation of

7    Mr. Garcia in order to effectively represent Mr. Martinez in

8    cross-examining Mr. Garcia at trial.

9              In addition, even if Mr. Garcia decides not to

10   cooperate, but if he chose to testify on his own behalf, which

11   certainly is his own right, Mr. Gorence or Mr. Lane could use,

12   nevertheless, the information obtained from prior

13   representation of Mr. Garcia in order to effectively represent

14   Mr. Martinez in cross-examining Mr. Garcia.

15             Still another example could be Mr. Garcia's -- excuse

16   me -- Mr. Gorence's continued representation of Mr. Martinez

17   could have a chilling effect on Mr. Garcia in that Mr. Garcia

18   will know more specifically, perhaps, than anyone, what

19   information Mr. Gorence may have gained from prior

20   representation, and still Mr. Gorence may use the information

21   from his prior representation of Mr. Garcia in conducting his

22   investigation, even in a pretrial context, to effectively

23   prepare and represent Mr. Martinez in this particular case.

24             It presents somewhat of a Catch-22 situation.  If

25   Mr. Martinez chooses to testify on his own behalf, Mr. Gorence

1   could potentially be restricted in his examination of

2   Mr. Martinez due to attorney-client obligations to Mr. Garcia,

3   or Mr. Gorence could assist Mr. Martinez, but then violate his

4   attorney-client obligations to Mr. Garcia.  These are all

5   potential.

6           I would agree somewhat with Mr. Gorence, that there

7   may not be an actual, I'll accept that at face value.  To the

8   extent that these are more than theoretical, these are within

9   the scope of what I think is potential to actually result in an

10  actual at the given time, which could be in a pretrial context

11  or even in a trial context.

12          It's an untenable situation that could very easily

13  result in a violation of Mr. Martinez's right to effective

14  assistance of counsel and to an unfair trial in violation of

15  due process.

16          Regardless of the waiver that Mr. Garcia has tendered

17  or even to the extent that Mr. Martinez was competent in order

18  to waive, I feel, Mr. Gorence, obligated to disqualify you from

19  representing Mr. Martinez in this particular case.

20          Let me add that Mr. Gorence accepted appointment in

21  this case because I called him.  There was a need to substitute

22  counsel for Mr. Martinez.  Mr. Gorence was available, and

23  although he has a very busy practice, he accepted

24  representation.  So let me say that I appreciate that he

25  stepped in to accept appointment at my request and his

 1  willingness to continue representing Mr. Martinez.

 2          Under the circumstances, however, Mr. Gorence, I will

 3  have to disqualify you from further representing Mr. Martinez.

 4          Speaking to Mr. Lane, I don't know at this point what

 5  the Attorney General's decision will be.  There is some

 6  expectation to what her decision will be.  What I decide with

 7  regard to whether you will remain on the case, we'll just have

 8  to cross that bridge when we get there.  In the meantime,

 9  though, I will be -- I'll be appointing new counsel, new C.J.A.

10  counsel to represent Mr. Martinez.

11          MR. LANE:  Would Your Honor, not necessarily right

12  now --

13          THE COURT:  Let me just say for the record -- Let me

14  just say for the record what I am relying on.

15          Obviously, I heard -- listened very carefully to

16  Mr. Gorence, to Ms. Sirignano, to Ms. Armijo.  I did have a

17  chance to review the record that's available from the prior

18  state case, which are attached to the Government's motion,

19  including the minutes that does reference cross-examination by

20  Mr. Gorence.  Now, I'll take notice that it was only at most 15

21  minutes, substantially part of that time was used to review

22  records that Mr. Gorence perhaps did not have available to him

23  at that particular time.

24          I would say, though, there is additional items on the

25  record from that federal case, and that was a sentencing

1   memorandum that was filed by the A.U.S.A.  Mr. Gorence is

2   correct, it was at that time Assistant U.S. Attorney Greg

3   Fouratt.  I'm looking at the docket number for that particular

4   item.

5           MS. ARMIJO:  Your Honor, it's in that -- it's

6   document 20 in 06-CR-1347, and it's also document 306-1 in the

7   case that we are before you.

8           THE COURT:  And I see document 19 in 06-CR-1347, a

9   sentencing memorandum by the U.S.A. in support of sentence at

10  high end of sentencing guideline range, which does reference

11  alleged gang activity that was tendered to Judge Parker for

12  purposes of sentencing.

13          So, there, I believe, is overlap, crossover, if you

14  will, between this case, which does include very serious

15  allegations relating to racketeering and alleged gang activity

16  and what arose in the previous federal case.

17          So those are my findings.  And I'll put that in an

18  order and get that entered in due course.

19          Anything else, Mr. Gorence?

20          MR. GORENCE:  No, Your Honor.

21          THE COURT:  Okay.  Thank you.

22          Ms. Sirignano.

23          MS. SIRIGNANO:  Your Honor, I was just wondering if

24  we could unseal these pleadings.  This was filed ex parte.  I

25  spoke with the Government, and they have no --

```
 1              MR. LANE:  I can't hear, Your Honor.

 2              MS. SIRIGNANO:  Sorry, Mr. Lane.

 3              I was just wondering if we could unseal the

 4   pleadings.  I spoke with the Government.  They don't have any

 5   objection other than Exhibit 3, since it's considered

 6   confidential material pursuant to our protective order.

 7              THE COURT:  Ms. Armijo.

 8              MS. ARMIJO:  That is correct, Your Honor.  The reason

 9   we filed it sealed and ex parte was simply because of Exhibit

10   Number 3, and it is covered -- actually, it's been disclosed to

11   Mr. Aoki, but I don't know if the defense has received it yet,

12   but it is part of the confidential material.

13              THE COURT:  Okay.  So that motion to unseal is

14   granted with the exception of Exhibit 3 to the United States's

15   sealed ex parte motion.

16              MS. SIRIGNANO:  All the pleadings involving this

17   issue today, right, Your Honor?  Is that what you're ordering?

18              THE COURT:  Well, that would include the United

19   States's sealed ex parte motion and the response.  This was

20   filed by Mr. Gorence.

21              Any objection to unsealing that, Mr. Gorence?

22              MR. GORENCE:  Your Honor, I'm no longer on it.  I'll

23   defer that to Mr. Lane.

24              THE COURT:  Yes, sir.  Mr. Lane.

25              MR. LANE:  No objection, Your Honor.
```

```
1              THE COURT:  Okay.  And I think that about covers it.
2              MS. SIRIGNANO:  Thank you, Your Honor.
3              THE COURT:  All right.  You're welcome.
4              Okay.  Mr. Garcia, Mr. Martinez, we have an order
5    pending to transfer Mr. Martinez into the custody of the
6    Attorney General, and we'll reconvene at the next hearing.
7              Ms. Armijo.
8              MS. ARMIJO:  Your Honor, I believe that we still have
9    the issue from Bureau of Prisons.
10             THE COURT:  Ah, yes.
11             MS. ARMIJO:  And the issue is -- And I think that
12   before Mr. Gorence got off, he is correct, I think that the
13   parties understood him to be going to the Bureau of Prisons for
14   a determination of competency.  I don't think we agreed to him
15   being incompetent.  However, I think what was cited was the
16   four months to allow him to -- to restore him, but I think we
17   have the cart before the horse, so to speak, and so I
18   believe -- And I've reached out to Mr. Scott, but haven't been
19   able to talk to him, to see exactly what he needs.  But if you
20   allow me to, then I can talk to Mr. Lane about what we should
21   do to accomplish what we needed to, which is turn him over to
22   the Attorney General but for a determination of competency, not
23   for restoration.  And so if the -- if the Court would prefer, I
24   would engage Mr. Lane and also Mr. Scott to get that
25   accomplished and then present you with a new order.
```

```
1              THE COURT:  Okay, that would be fine.  I think he,
2    Mr. Scott -- Dr. Scott -- he's a lawyer for the Bureau of
3    Prisons, I think.
4              MS. ARMIJO:  Right.
5              THE COURT:  -- he identified, I think, the issue that
6    we discussed when we were first discussing Mr. Martinez's
7    competence, which was which comes first, the evaluation and the
8    treatment or the treatment, and so -- but in any event, I'll
9    give you a chance to consult with Mr. Lane --
10             MS. ARMIJO:  Okay.
11             THE COURT:  -- the attorney, and then if you would
12   submit to me a proposed order.  When do you think you can do
13   that?  I'd like to do that as soon as possible so we know where
14   Mr. Martinez is going to be.
15             MS. ARMIJO:  I just don't know Mr. Scott's schedule
16   to confer with him, so I would, at least with the Court's
17   permission, like a week, but we'll try and do it much sooner.
18             THE COURT:  Okay.  Why don't we try to -- Why don't
19   we get that in by close of business Friday?
20             MS. ARMIJO:  All right.  And, again --
21             MR. LANE:  Mr. Gorence has my cell phone number.  I
22   am not at my office, and so Mr. Gorence can give Ms. Armijo my
23   cell phone number and she can contact me that way and we can
24   discuss this.
25             THE COURT:  All right.  So we'll leave it at that.
```

1    I'll be looking for a proposed order no later than Friday.

2              MS. ARMIJO:  All right.  And I just want to point out

3    that Friday is Good Friday, and I still want to talk to

4    Mr. Scott just to make sure that we have it right, and I'm

5    assuming -- if I have problems reaching Mr. Scott, given that

6    it is -- potentially a lot of people are off because it is Holy

7    Week, and especially towards the end of the week, I'll inform

8    the Court, but we'll do our best to get it by the end of the

9    day Friday.

10             THE COURT:  Okay.  I just don't want to leave it

11   open-ended, so deadlines always help us get to where we need to

12   go.

13             Okay.  So that's what we'll do on that particular

14   matter.

15             All right.  So we'll be in recess and then I'll take

16   up the matter --

17             MR. LANE:  Your Honor, one last -- one last point,

18   and that is -- I just raise this because I have Your Honor's

19   ear at this moment.  I don't know how local local counsel has

20   to be, but would Your Honor entertain any suggestions from me

21   as to appointing another Colorado lawyer along with me to

22   represent Mr. Martinez --

23             THE COURT:  Well, send me --

24             MR. LANE:  -- a former Federal Public Defender who

25   has indicated that she's very experienced at death penalty, as

1  well, who has indicated to me that she would accept an

2  appointment if the Court is at all interested.

3          THE COURT:  Okay.  Send me your list of names,

4  Mr. Lane.  I think what we try to do is stay within the

5  district, but we've had to go down that list fairly

6  exhaustively, but we welcome any other suggestions you have.  I

7  can't guarantee that's what I'll do, but I'll welcome your

8  list.  Okay?

9          MR. LANE:  Sure.  I will do that, Your Honor.  Thank

10  you very much.

11          THE COURT:  You're welcome.  Have a good afternoon.

12          We'll be in recess.

13     (Court stood in recess at 2:27 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                        C-E-R-T-I-F-I-C-A-T E

2    UNITED STATES OF AMERICA

3    DISTRICT OF NEW MEXICO

4

5         I, Danna Schutte Everett, RPR, CCR, CRR, Official

6    Court Reporter for the State of New Mexico, do hereby

7    certify that the foregoing pages constitute a true

8    transcript of proceedings had before the said Court held

9    in the city of Las Cruces, New Mexico, in the matter

10   therein stated.

11        In testimony whereof, I have hereunto set my hand on

12   this 29th day of March, 2016.

13

14        _____
                 DANNA SCHUTTE EVERETT
15               Registered Professional Reporter
                 Registered Merit Reporter
16               Certified Realtime Reporter
                 NM Certified Court Reporter #139
17               100 Church Street
                 Las Cruces, New Mexico  88001
18               Phone:  (575) 528-1656
                 Fax:  (575) 528-1656
19               dannadawn@comcast.net

20

21

22   March 22, 2016, USA vs. DeLeon, et al.

23

24

25