IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

       vs.                          No. 15-CR-4268-JB

ANGEL DELEON,
JOE GALLEGOS,
EDWARD TROUP,
LEONARD LUJAN,
BILLY GARCIA,
EUGENE MARTINEZ,
ALLEN PATTERSON,
CHRISTOPHER CHAVEZ,
JAVIER ALONSO,
ARTURO ARNULFO GARCIA,
BENJAMIN CLARK,
RUBEN HERNANDEZ,
JERRY ARMENTA,
JERRY MONTOYA,
MARIO RODRIGUEZ,
TIMOTHY MARTINEZ,
MAURICIO VARELA,
DANIEL SANCHEZ,
GERALD ARCHULETA,
CONRAD VILLEGAS,
ANTHONY RAY BACA,
ROBERT MARTINEZ,
ROY MARTINEZ,
CHRISTOPHER GARCIA,
CARLOS HERRERA,
RUDY PEREZ,
ANDREW GALLEGOS,
SANTOS GONZALEZ,
PAUL RIVERA, and
SHAUNA GUTIERREZ,

       Defendants.

**DEFENDANTS' OPPOSED JOINT MOTION FOR RECONSIDERATION OF
THE PROTECTIVE ORDER**

Defendants Joe Gallegos, Edward Troup, Billy Garcia, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Jerry Montoya, Timothy Martinez, Daniel Sanchez, Gerald Archuleta, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Rudy Perez, Carlos Herrera, and Santos Gonzales jointly move for this Court to reconsider the Protective Order (Doc. 313) limiting the defendant's ability to possess and review certain discovery materials produced by the government in this case.

There is ample reason for this Court to reconsider the Protective Order previously issued by the Honorable Kenneth Gonzales.  (Doc. 313)(the "Order").  Procedurally, the Order was issued after a hearing held outside the presence of the defendants and over their objection, and, at the time, Judge Gonzales had a potential conflict of interest based on his position as the United States Attorney for the District of New Mexico during the time that crimes charged in this indictment were investigated by federal law enforcement authorities.  Moreover, on April 21, 2016, the grand jury returned a superseding indictment adding additional defendants, many of whom are death eligible, who were not party to this case when the Order was entered.  This includes Defendants Rudy Perez, Carlos Herrera, Andrew Gallegos, Santos Gonzales, Paul Rivera and Shauna Gutierrez. These defendants are entitled to a full and fair opportunity to be heard regarding the Order.

The Order is also overbroad and not supported by the requisite showing of good cause.  Moreover, it is proving to be unworkable as demonstrated by the government's classification of benign discovery materials as Confidential Material without conferring with counsel about the need to protect the materials or applying to the Court for an order designating the materials as Confidential Material.  Accordingly, the defendants move the

Court, pursuant to the Fifth, Sixth, and Eighth Amendments to the United States Constitution, Fed. R. Crim. P. 16(d)(1), and the Court's inherent supervisory power, to reconsider the protective order and to modify the protective order to permit the defendants to possess all discovery on their tablet computers.

Undersigned counsel sought the position of all counsel of record as to this Motion and the relief requested herein.[1] The government opposes the relief requested herein. Leonard Lujan, through counsel, opposes the relief requested herein. Ruben Hernandez, through counsel, indicates he does not join the Motion. Defendants Eugene Martinez, Roy Paul Martinez, Benjamin Clark, and Paul Rivera, through their respective counsel, take no position. Undersigned counsel sought the position of Defendants Allen Patterson, Mauricio Varela, Robert Martinez and Andrew Gallegos, but has not received a response as of the filing of this Motion.

## I.    BACKGROUND AND INTRODUCTION

In this case, the 24 original defendants were charged by Indictment with violations of 18 U.S.C. §1959(a)(1)(5)(6) and 18 U.S.C. §2 (Violent Crimes in Aid of Racketeering). (Doc. 2). At least 19 of the original defendants were charged with capital eligible offenses and face the possibility of the death penalty under 18 U.S.C. § 3591 et. seq. The original Indictment contains special findings required for the imposition of the death penalty.

---

[1] As will be set forth more fully in defendants' Motion for Expedited Briefing as to Joint Motion for Reconsideration of the Protective Order and Request for Hearing on June 2, 2016, Defendants request expedited briefing on this motion in order that it may be heard at the previously-scheduled conference set for June 2, 2016. The government and all other counsel of record were provided advance notice of this Motion and received a copy of the same prior to filing.

Recently, on April 21, 2016, the government unsealed a superseding indictment in this case which alleges additional crimes and adds additional defendants.  (Doc. 368).  The government also revealed a new indictment in related case no. 16 CR 1613 JB in which some, but not all, of the defendants in the above-captioned matter are charged with additional criminal acts.

As discussed below, a Protective Order was entered by the Honorable Kenneth Gonzales prior to the addition of these new defendants.  None of the defendants were permitted to be present when the proposed Protective Order was discussed, and many counsel were ordered to only appear telephonically.  Moreover, none of the newly added defendants were parties to this litigation at the time, and thus they never had an opportunity to be heard, even through counsel.

### A.    Entry of Overly Expansive Protective Order

On January 29, 2016, the government provided most, but not all, of the defense attorneys with a proposed motion and protective order.  The proposed protective order sought to prevent the defendants from possessing paper copies of *any* discovery materials.

The defense collectively informed the government there were specific concerns as to the proposed order, in that it was overbroad and, if adopted, would place severe burdens on the defendants, defense counsel, the custody facilities in which the defendants are housed and the legal visits are conducted, and the Court.  Thus, on February 4, 2016, the defense presented an alternative proposed protective order to the government.  The defense proposal would have defined a subset of the expected discovery as "confidential material" which the defendants would not possess in paper format: defendants' post-

arrest statements; statements by eyewitnesses; cooperating defendants; and confidential government sources regarding the defendants, as well as photographs, audio/video recordings that would identify such persons, which, if shared, could jeopardize the safety and security of the defendants or other individuals.

The parties did not agree fully on an uncontested stipulated proposed protective order.  Thus, on February 5, 2016, the government filed its sealed motion for protective order.  (Doc. 260).  The government also provided the Court its proposed protective order as well as a copy of the last settlement proposal for a protective order the defense submitted in an effort to reach a compromise on the issue.   A hearing on the government's motion was initially scheduled for February 8, 2016, but this first setting was vacated in order to provide the defense with an opportunity to respond.  (Docs. 276, 279).

While providing the defense an opportunity to respond, on February 8, 2016, the Court also requested the government to supplement its motion, "by specifying the kinds of information or categories of information it seeks to protect by order of the Court." (Doc. 279).  Pursuant to the Court's directive, on February 12, 2016, the government reiterated it sought a protective order to prevent the defendants from possessing *any* discovery materials.  (Doc. 280).  In support, the government alleged that: in the past, members of the Syndicato de Nuevo Mexico ("SNM") have threatened gang members who have cooperated with law enforcement based on discovery paperwork; that the motive for some of the murders alleged in the Indictment is the decedents' cooperation with law enforcement; and that one of the defendants was intercepted issuing telephonic

threats to cooperators and/or their family members.[1]  In this same filing, the government referenced approximately 5,000 pages of discovery materials in different categories, including cooperating witness interviews (2.c.); investigative reports (2.a.); witness interviews (2.b.); evidence logs (2.d.); scientific reports including forensic reports, medical records, fingerprint reports (3. a-e); recordings of telephone calls and undercover events (4); transcripts of the recordings (5); text messages (6); reports of experts (7); diagrams (8) and expert opinions, and curriculum vitae (9).

On February 17, 2016, the defendants filed a Joint Opposition to the government's motion for a protective order outlining the defense objections.  (Doc. 281).  In said Joint Opposition, defendants noted that denial of access to certain discovery as proposed by the government would hinder their constitutional right to counsel and due process, particularly within the confines of a capital prosecution with the ultimate penalty of death at stake.  (Doc. 281, pp. 7-9).  Defendants also highlighted logistical issues that would result if defendants did not have access to discovery without the presence of counsel and the associated burden on counsel and custodial facilities.  (Doc. 281, pp. 9-10).

On March 3, 2016, the Court held a hearing at which the parties presented argument as to the government's Motion for a Protective Order.  (A transcript of the March 3, 2016, hearing is attached hereto as Exhibit 1 for the Court's convenience).  Over defense objection, the defendants were not permitted to attend the March 3, 2016, hearing.  The Court also limited the presence of defense counsel such that all attorneys outside of a 100 mile radius of the courthouse were required to appear telephonically.

---

[1] The government did not provide the source(s) of this information, nor were the representations presented in declarations filed under oath pursuant to penalty of perjury.

Ironically, at the time they were excluded from attending the March 3, 2016, hearing, the vast majority of the defendants that wished to participate therein were held in custody within that same 100 mile radius.  (Most defendants were housed within approximately 40 minutes of travel from the courthouse – closer than most facilities housing federal detainees for cases pending in Albuquerque).

Furthermore, shortly before the March 3, 2016, hearing, the Court granted a request from the government unsealing the hearing.  Thus, while victim's families, the general public, the press, and other individuals were permitted to attend the hearing in-person, the attendance of many of the stakeholders was either limited (defense counsel) or outright denied (defendants themselves).

At the March 3, 2016, hearing, the government argued the defendants should not be allowed to possess any discovery because, it alleged, discovery paperwork was utilized by SNM gang members to substantiate an individual's cooperation with law enforcement, potentially resulting in violence being directed towards that individual.  (Tr. 3/3/2016 at p. 42:15-21; 44:9-15).  Once it appeared the Court was disinclined to prohibit the defendants from possessing any discovery, the government, for the first time, raised the possibility of providing discovery to the defendants in electronic form on tablet computers each defendant could individually access in their respective custodial settings. (Tr. 3/3/2016 at p. 49:11-17).  The government acknowledged that using this method "wouldn't create the paper trail we are so desperately worried about."  (Tr. 3/3/2016 at p. 50:6-7).

Despite the government's acknowledgment that its concerns related to proposed confidential materials would be obviated by electronic dissemination, the final Protective

Order maintained the omission of certain "Confidential Materials" from the tablet computers provided to the defendants.  (Doc. 313, ¶3).  Those discovery items defendants were prohibited from retaining, even electronically, included: (1) any defendant's post-arrest statement; (2) statements by eyewitnesses, cooperating witnesses, and confidential government sources regarding the crimes charged; and (3) photographs and/or audio/video recordings that would identify such persons or the content of the statements in (1) or (2).  (Doc. 313, p. 1).

### B.     Presumed Recusal of the Honorable Kenneth Gonzales

During a status conference held before the Honorable Kenneth Gonzales on December 14, 2015, the defense collectively raised the issue of a potential conflict of interest which may have required the recusal of Judge Gonzales.  Specifically, the defense sought reassurance that Judge Gonzales's service at the United States Attorney's Office, either as an Assistant United States Attorney or as the United States Attorney, did not overlap with any of the investigation related to this matter.  At that time, the Government assured the defense and Judge Gonzales that all investigation into this matter began after Judge Gonzales's appointment to the bench.  As a result, Judge Gonzales remained as presiding judicial officer.

In March 2016, counsel for some defendants again raised the issue of a potential conflict of interest in the Honorable Kenneth Gonzales presiding over this case. Specifically, counsel questioned whether or not it was appropriate for Judge Gonzales to preside in this matter given his term of service at the United States Attorney's Office as an Assistant United States Attorney and the United States Attorney.  As a result, the government was directed to conduct an internal inquiry to determine whether or not

Judge Gonzales had any involvement in any matters associated with these defendants or this investigation.

Thereafter, on March 25, 2016, Judge Gonzales provided counsel with a letter recalling participation in a meeting in which "prison gangs in New Mexico, including SNM" were the topic of discussion.  (Doc. 338).  (The foundational underpinnings of this matter are allegations of a prison gang (SNM) and its activities within the New Mexico penal system).  Within days after the March 25, 2016, letter was filed, this case was reassigned to the Honorable James O. Browning on March 30, 2016.  (Doc. 351).  On April 1, 2012, the government filed a Notice, in which it indicated potential involvement of Judge Gonzales in a related investigation in 2009 when Judge Gonzales was an Assistant United States Attorney.  (Doc. 358).  The government apparently ceased its inquiry after the re-assignment of this matter to Judge Browning.[2]

Based on the circumstances, it appears Judge Gonzales was recused from this matter as the result of a conflict of interest related to his service at the United States Attorney's Office.  Any such conflict was pre-existing at the time the Protective Order was entered.

### C.    Difficulties Under Current Protective Order

#### 1.    *The government's over-use of "Confidential Material" designation*

The government began producing discovery to the Coordinating Discovery Attorney ("CDA') in late March, and in early April 2016, the CDA provided the materials to all defense counsel.  The government provided discovery divided into two categories: general discovery and Confidential Material.  As evidenced by the attached

---

[2] Defendants assert the need for this inquiry has not been alleviated or otherwise mooted by the re-assignment of this matter and intend to address the specific issue separately.

Declarations of Counsel, attached as Exhibits 2 through 4, the Confidential Material contained in the government's production included many items that did not comport with the definition of "Confidential Material" in the Protective Order.

If the government wished to exclude additional material from the tablets as "Confidential Material", the Protective Order required it to confer with the defendants. In that situation, if the parties were unable to reach an agreement, the government was directed to file a written application with the Court requesting modification to the "Confidential Material" designation contained within the Protective Order.  (Doc. 313, p. 3, ¶5).   The government designated law enforcement incident reports, crime scene diagrams, statements from correctional officers, interviews of medical personnel, evidence collection logs and reports, autopsy findings, photographic logs, inmate misconduct reports, disciplinary logs, correctional department memoranda, and even PowerPoint presentations as "Confidential Materials", thereby preventing defendants from viewing them outside the immediate presence of counsel.

Hundreds of pages of materials were improperly designated as "Confidential Materials" in this initial discovery production.  Unfortunately, although none of these materials fall within the definition of "Confidential Material" as defined in the Protective Order, the government neither conferred with defense counsel regarding the increased categorization, nor applied for court approval of the same.

Counsel for defendants have requested these materials be reclassified as general discovery, but the government has been unresponsive thereto.  Accordingly, if the current protective order remains in place, defendants anticipate cumbersome litigation over the appropriate level of classification of particular materials as "Confidential."   Such

litigation can reasonably be expected to repeat as a result of inevitable future discovery disclosures. The drain on judicial, defense, government, and CJA resources required by such litigation is otherwise unnecessary if defendants are permitted access to all discovery in electronic, non-passable form.

### 2.   Delay in production of tablets

In the meantime, general discovery materials were supposed to have been available on tablet computers and distributed to the defendants by April 4, 2016. As of the filing of this Motion, defendants have not received the tablet computers, although counsel is informed by the CDA they should be available soon. (Jacks Declaration, Ex. 2, ¶9). For the newly added defendants, production of tablets is expected to require additional time.

It is unknown at this time whether or not tablets will ultimately prove to be a satisfactory method of providing defendants with discovery. Regardless, during a crucial period of this capital litigation, defendants have remained largely without access to discovery concerning the allegations against them, thereby hindering their ability to assist counsel in formulating a complete defense.

### 3.   Increase demand on CJA funding

Until tablets are available to all defendants, counsel continues to be required to utilize valuable attorney-client time, and with it extensive CJA resources, simply being present while defendants review *all* discovery. Even thereafter, counsel will need to be present if a defendant is to review the most important discovery materials (and more if the government continues to over-classify materials as "Confidential Materials" in violation of the Protective Order). This unnecessarily increases the attorney hours

required to provide appropriate assistance of counsel in multiple ways.  First, counsel's required presence means CJA funds will be expended not just for counsel's time reviewing discovery, but doubly for defendants' time as well.  Moreover, additional client visits will be required because defendants will need time to ponder the discovery materials they view in counsel's presence before being able to meaningfully discuss the same with counsel.  In fact, it may take several counsel-supported "viewings" before any particular defendant is in a position to meaningfully discuss the discovery with their counsel.  Under the circumstances, if defendants are not permitted access to discovery to review, focus on, and consider fully without the pressure of limiting meaningful access to their own counsel, CJA funding will be unnecessarily expended in significant sums.

### C.     Defendant's Request for Reconsideration of Protective Order

As discussed in more detail below, the background set forth herein indicates that reconsideration of the protective order is appropriate because the order was entered by a conflicted judicial officer, six new defendants did not have the opportunity to be heard on the order and good cause otherwise exists to do so.  A more appropriate approach to dissemination of discovery in this matter, one which alleviates the government's purported safety concerns,[3] is to include *all* discovery in electronic format on the tablets to be provided to the defendants.

## II.     GOOD CAUSE EXISTS TO RECONSIDER THE TERMS OF THE PROTECTIVE ORDER

The Federal Rules of Criminal Procedure do not expressly recognize a motion to reconsider, *United States v. Harmon*, 871 F.Supp.2d 1125, 1143 (D.N.M. 2012), but

---

[3] It is difficult not to question the authenticity of the government's alleged safety concerns given that the government already released non-protected discovery concerning cooperation from certain individuals, and even included an allegation of cooperation of an identified individual within the Superseding Indictment.

parties in criminal cases are nonetheless free to seek reconsideration of orders. *See e.g. United States v. Randall*, 666 F.3d 1238 (10th Cir. 2011)(finding motions to reconsider appropriate in criminal prosecutions although no specific provision of the Federal Rules of Criminal Procedure authorize such motions)  District courts retain considerable discretion in ruling on motions to reconsider, *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997), and this discretion thus extends into the criminal context.  Harmon, 871 F.Supp.2d at 1143 (citing *United States v. Wiseman*, 172 F.3d 1196, 1207-8 (10th Cir. 1999))In exercising discretion as to motions to reconsider within a criminal case, courts ordinarily apply the same standards as those used in a civil case. *Harmon*, 871 F.Supp.2d at 1143 (citing cases establishing that standards for relief under Fed.R.Civ.P. 59(e) may apply to motions to reconsider in criminal cases).  The standards set forth within Fed.R.Civ.P. 59(e) provide a basis for this Court to reconsider the Protective Order at this time.

Under Fed.R.Civ.P. 59(e), a motion to reconsider is warranted when: (1) there has been a change in the controlling law; (2) there is newly discovered evidence which was previously unavailable; or (3) it is necessary to correct clear error or prevent manifest injustice. *Id.* (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  Reconsideration of the Protective Order in this matter is appropriate due to newly discovered evidence and the need to correct clear error and/or prevent manifest injustice.  Specifically, the following factors support reconsideration: (A) the defendants were excluded from the proceedings in which the need for and terms of the Order were debated; (B) recent disclosures have created the appearance that the judicial officer issuing the Order was conflicted based on his prior involvement in

prosecuting the SNM as the United States Attorney for the District of New Mexico;
(C) there was clear error in ordering materials omitted from the defendants' tablet
computers based on the government's arguments relating to paper discovery; (D) the
government's subsequent categorization of Confidential Materials has been overbroad
and the government has not followed the procedures mandated in the Order; and (E)
six new defendants did not have an opportunity to be heard prior to entry of the Order.

**A. Protective Order was Issued After a Hearing From Which the Defendants
Were Improperly Excluded.**

Prior to the March 3, 2016, hearing at which the Court considered issues related to
the government's request for a protective order, the defense collectively objected to
proceeding outside the presence of defendants themselves.  (Doc. 281, pp. 11-13).  (This
objection was reiterated during the hearing itself, when it was noted that entry of a
protective order requires both legal and factual determinations).  Although defendants
were excluded on March 3, 2016, and certain defense counsel were precluded from
attending in-person, the proceedings were otherwise open to the public for personal
attendance.

*1.*     *Violation of Fifth Amendment*

According to the Fifth Amendment, defendants are guaranteed the right to be
present at any proceeding critical to the outcome of the prosecution if his presence would
contribute to the overall fairness of the process.  *Kentucky v. Stincer*, 482 U.s. 730, 745
(1987); *Faretta v. California*, 422 U.s. 806, 819 n. 15 (1975).  This right is mirrored by
Rule 43 of the Federal Rules of Criminal Procedure, which specifically addresses
situations in which a defendant's presence may not be required, including for those

"conferences" or "hearings" involving "only a conference or hearing on a question of law." Fed.R.Crim.P. 43(b)(3).

At the March 3, 2016, hearing, the Court ruled that the defendants' presence was not required because the issues addressed in regards to the proposed protective order were only questions of law. This was a misinterpretation of the nature of the proceedings related to the protective order, which required resolution to legal *and* factual issues. *See Rohrbough v. Harris*, 549 F.3d 1313, 1316 (10th Cir. 2008).

Moreover, the issues addressed directly affect the defendants' ability to participate in their defense, to assist their counsel in formulating a full defense, and to meaningfully challenge the allegations against them. These are more than the ministerial concerns such as scheduling which courts have found may be conducted without the presence of the accused. *See e.g. United States v. Gagan*, 95 Fed.Appx. 941, 946 (10th Cir. 2004). Particularly in a capital case when defendants' lives are literally on the line, the issues addressed in the protective order take on great significance in the context of the overall fairness of the proceedings, both perceived and actual. Accordingly, it is appropriate to reconsider the protective order after a hearing in which defendants are permitted to participate.

2. *Violation of Sixth Amendment*

As defense counsel noted on March 3, 2016, their ability to provide constitutionally appropriate assistance to defendants at said hearing was unreasonably hampered both by the lack of defendants' presence, and their inability to confer with co-counsel given the Court's limitation on the presence of counsel in-person. The government made vague factual assertions in support of its proposed protective order,

and defendants, through counsel, were unable to adequately respond thereto due to the complete inability to communicate (or, in defendant's case, to even know allegations were being made against them). The situation left counsel at a debilitating and unfair disadvantage raising an impossibility of adequately representing defendants' interests.

As this Court is aware, only the most experienced and competent counsel are appropriate for appointment in capital cases. This simple fact highlights the extraordinary importance of the right to counsel in cases involving the potential of execution, an importance that suggests any hindrance thereon must be scrupulously guarded against. In this context, such important matters as a defendant's right of access to discovery material to the charges against him, and thereby his ability to effectively interact with and assist counsel in the formulation of his defense, both as to guilt/innocence and sentencing, should not be decided based upon a hearing conducted without the defendant. The circumstances of this case show it is appropriate for this Court to reconsider the protective order at this juncture.

### B. The Court Issuing the Protective Order Suffered from an Appearance of Conflict.

As set forth above, the defense placed the Court and the government on notice as to the potential conflict in Judge Gonzales presiding over this matter as early as December 14, 2015. After the issue was discussed, it does not appear that the government or Judge Gonzales undertook a full inquiry to examine the possibility of a conflict until several months later, after the entry of the protective order. Within days of beginning an appropriate inquiry, evidence supporting the defendants' concerns was uncovered by both Judge Gonzales and the government. It appears the inquiry immediately ceased and the case was transferred to the Honorable James O. Browning on

March 30, 2016. Defendants remain uncertain as to the full extent of Judge Gonzales's conflict.

Regardless, the subsequent removal of the case from Judge Gonzales provides an adequate basis for this Court to reexamine and reconsider the protective order. The concerns as to Judge Gonzales's conflict were present in December 2015 and were brought to the attention of the government and the Court. This raises grounds for potential reconsideration of the protective order entered after the concerns were raised but before the case was transferred from Judge Gonzales. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864-865 (1988); *Russell v. Lane,* 890 F.2d 947, 948 (7th Cir. 1989); *Moody v. Simmons*, 858 F.2d 137, 143 (3rd Cir. 1988).

As set forth above, issues surrounding the protective order were not ministerial or simple "housekeeping" matters. To the contrary, they were important determinations that directly affected the extent to which defendants may participate in the formation of their defense and assist their counsel. The appearance that a potentially conflicted judicial officer made these key decisions could lead many to question the overall fairness of these proceedings at a time when the collective conscience demands the opposite – cases in which the defendants' lives are in the balance. Accordingly, it is appropriate for this Court to reconsider the protective order.

### C. The Government Failed to Show That Good Cause Existed for the Court to Impose a Protective Order that Omitted Certain Discovery from the Defendants' Tablet Computers.

Federal Rule of Criminal Procedure 16 (d)(1) gave the Court discretion to issue a protective order, but only upon a showing of good cause. Fed. R. Crim. P. 16. "Good cause" is defined as legally adequate or substantial grounds or reason to take a certain

action.  Black's Law Dictionary (2nd Edition).  As the party seeking the protective order, the government bore the burden of establishing good cause.  *United States v. Isa*, 413 F.2d 244, 248 (7th Cir. 1969).

All of the briefing and the majority of the argument regarding the issuance of the protective order sought by the government focused on the defendants' ability to possess paper copies of the discovery materials.  The crux of the government's argument was that possession of paper copies of materials such as cooperator statements by defendants could potentially be used to "prove" that an individual violated a code of ethics within the penal system, and that could then provide a basis for violence to be inflicted upon that individual.  Although required to do so in order to support entry of a protective order, the government presented no evidence to support these allegations.

Moreover, the government raised the possibility of providing tablet computers loaded with electronic versions of the discovery materials to the defendants in lieu of paper copies.  According to the government, providing discovery in this manner "wouldn't create the paper trail we are so desperately worried about."  (Tr. 3/3/2016 at p. 50:6-7).

After the government conceded that the electronic disbursement of discovery would alleviate their safety concerns, the Court nonetheless ordered "Confidential Materials" as defined in the Protective Order, (the same material the government indicated was only a concern if provided via paper copy), be omitted from the tablet computers.  No findings were made by the Court as to good cause to support this order.

As of this date, it remains unclear why the Court prohibited the defendants from possessing electronic copies of these materials, particularly given their ability to access

the information as long as a member of the defense team is present.  There does not appear to be any legitimate goal that is furthered by continuing to deny defendants access to these materials in an electronic format on the non-passable tablets.

### D. The Government has Expanded the Category of Confidential Materials without Following the Procedures Mandated by the Protective Order.

As evidenced by the declarations of counsel in Exhibits 2-4, the government has improperly expanded the materials designated as "Confidential Material" without conferring with defense counsel or seeking a modification of the Protective Order as required by the Order itself.  Moreover, the government has been unresponsive to the defendants' requests to comply with the protective order as entered.  The unresolved over-designation of discovery materials as "Confidential Material" directly impacts the ability of the defendants to review these materials, and thus hinders their ability to understand the charges against them and to fully assist in developing an appropriate defense thereto.

Pursuant to the Order, no "Confidential Material" will be placed on the defendants' Computers.  As a result, defense team members will have to spend time during client visits to review and re-review each page of Confidential Material with the defendants.  Even at a rate of 30 pages per hour, the government's designation of nearly 600 pages and several recorded interviews of what should be classified as general discovery as Confidential Material will add extensive hours of defense team time per defendant to already taxed and overburdened schedules.

Federal Rule of Criminal Procedure 16 (d) gives the Court substantial discretion to issue and modify orders regulating discovery and permits a Court to enter any order that is "just under the circumstances" where a party fails to comply with a Court's

discovery order.  FED. R. CRIM. P. 16 (d)(2)(D).  As the party who sought the protective order, the government bore the burden of establishing good cause.  *United States v. Isa*, 413 F.2d 244, 248 (7th Cir. 1969).

In limiting defendants' access to discovery, the Court expressly defined the category of materials which were excluded from direct production to defendants and further ordered that "[t]he parties shall make all reasonable efforts to limit the volume of discovery materials designated as Confidential Material." (Order at ¶ 5).  Substantially ignoring the definition of Confidential Material and the procedural guidelines governing the designation of additional Confidential Material, the government has inappropriately designated hundreds of pages of general discovery as "Confidential Material" without conference with defendants or guidance from the Court.

The government's inability or unwillingness to conscientiously designate Confidential Material makes the current Order completely unworkable.  Rather than spend countless hours arguing over whether good cause exists to designate specific discovery material as Confidential Material, this Court should reconsider the original protective order and permit the defendants to view and listen to all of the discovery material on their Computers.[4]  Such an order would still preclude the defendants from possessing paper copies of any of the discovery materials, thereby continuing to alleviate any concerns raised by the government.

---

[4] This modification can be done simply by deleting all references to Confidential Material, including the definition of Confidential Material and the entirety of ¶ 5.

**E.  The Court should reconsider the Order because six new defendants, who are subject to the Order, did not have an opportunity to be heard prior to the Order's entry.**

Defendants Carlos Herrera, Rudy Perez, Andrew Gallegos, Santos Gonzales, Paul Rivera, and Shauna Gutierrez, Defendants 25 through 30, respectively, were not parties to this case when the Order was entered.  They became parties by way of the Superseding Indictment (Doc. 368) on April 21, 2016.  All are ostensibly subject to the Order, but none had an opportunity to be heard regarding the Order.  Holding these defendants to the requirements of the Order, without affording each a right to be heard, does not comport with due process. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal quotations and quoted authority omitted).  Accordingly, the Court should reconsider the Order as requested herein and permit the new defendants an opportunity to be heard.

**III.  <u>CONCLUSION</u>**

For the reasons stated herein, the Court should reconsider the Protective Order (Doc. 313) and modify it such that the defendants can view all of the discovery materials on their tablet computers.

Respectfully submitted,

*/s/ Brock Benjamin*
Brock Benjamin
Richard Sindel
Attorneys for Joe Gallegos (2)

*/s/ Patrick Burke*
Patrick Burke
Cori Harbour-Valdez
Attorneys for Edward Troup (3)

*/s/ James Castle*
James Castle
Robert Cooper
Attorneys for Billy Garcia (5)

*/s/ Orlando Mondragon*
Orlando Mondragon
Attorney for Christopher Chavez (8)

*/s/ Nathan Chambers*
Nathan Chambers
Noel Orquiz
Attorneys for Javier Alonso (9)

*/s/ Billy Blackburn*
Billy Blackburn
Attorney for Arturo Garcia (10)

*/s/ Larry Hammond*
Larry Hammond
Margaret Strickland
Attorneys for Jerry Montoya (14)

*/s/ Jacqueline  Walsh*
Jacqueline  Walsh
Steven Almanza
Attorneys for Timothy Martinez (16)

*/s/ Amy E. Jacks*
Amy E. Jacks
Richard Jewkes
Attorneys for Daniel Sanchez (18)

*/s/ George A. Harrison*
George A. Harrison
Attorney for Gerald Archuleta (19)

*/s/ B.J. Crow*
B.J. Crow
Attorney for Conrad Villegas (20)

*/s/ Theresa Duncan*
Theresa Duncan
Marc M. Lowry
Attorneys for Anthony Ray Baca (21)

_/s/ Amy Sirignano_
Amy Sirignano
Attorney for Christopher Garcia (24)

_/s/ Michael V. Davis_
Michael V. Daviz
Attorney for Carlos Herrera (25)

_/s/ Ryan J. Villa_
Ryan J. Villa
Attorney for Rudy Perez (27)

_/s/ Erlinda O. Johnson_
Erlinda O. Johnson
Attorney for Santos Gonzales (28)

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing pleading was emailed by CM/ECF to counsel of record this 23rd day of May, 2016.

_/s/ Billy R. Blackburn_
Billy R. Blackburn