I, Amy E. Jacks, declare and state as follows:

1. I have been appointed as learned counsel for defendant Daniel Sanchez in the above captioned case.

2. I am aware of the Protective Order issued in this case (Doc. 313). The terms of that Protective Order authorized the government to designate certain discovery materials as "Confidential Material." Confidential Material is defined to be: (1) any defendant's post arrest statement; (2) statements by eyewitnesses, cooperating witnesses, and confidential government sources regarding the crimes charged in these cases; and (3) photographs and/or audio/video recordings that would identify such persons or the content of the statement in (1) or (2) above. Pursuant to the terms of the Protective Order, copies of Confidential Material were not to be provided to the defendants or put on the tablets that were to be provided to the defendants.

3. I have received the first and second production of discovery materials in this case. The materials are broken down into folders for confidential and non-confidential materials.

4. I have reviewed discovery relating to the charged conspiracy and homicide of J.M. charged in Counts 4 and 5 of the indictment.

5. Many of the discovery materials designated by the government as Confidential Material does not fit the Protective Order's definition of Confidential Material and/or does not appear to have any need to be designated as Confidential Material.

6. The discovery improperly classified as Confidential Material is summarized as follows:

    a. Pages 1591-1631 are a redacted report authored by the New Mexico State Police ("NMSP") and identified as Supplemental Report #2. This report describes law enforcement's response to the crime scene, provides crime scene information, summarizes the content of crime scene video, and records statements and observations of corrections officers, medical personnel investigators and inmates, none of whom , according to the report's author, provided information "relevant to the homicide." Attachments to the document include crime scene diagrams and logs, property reports and waiver of rights forms.

    b. Pages 1674-1608 are a redacted version of NMSP Supplemental Report #5. The report contains law enforcement's observations of the crime scene and documents law enforcement's response. Only one page of the report contains material potentially falling within the

        Protective Order's definition of Confidential Material. This page contains a summary of statements from two inmates who may possibly be or become government cooperators. This material could be easily redacted from the report.

   c. Pages 2135-2137 contain a memo from the New Mexico Department of Corrections Swing Shift Supervisor to the Chief of Security describing the correctional officer and prison staff response to the homicide. It does not reference cooperators or contain summaries of any cooperator statements.

   d. Pages 2138-2140 are handwritten notes of correctional officers and prison staff regarding their observations of the incident.

   e. Pages 2141-2142 consist of a report of the Department of Corrections Security Threat Intelligence Unit regarding interviews with inmates, none of whom provided any substantive information.

   f. Page 2143 is a memo of a correctional officer documenting conversations with seven (7) inmates none of whom knew anything.

   g. Pages 2157-2158 contain New Mexico Department of Corrections memo entitled "Critical Incident Debriefing." The memo describes the incident and the reaction of corrections staff. It does not contain any information concerning confidential informants.

   h. The production also includes recordings of interviews with the following inmates on March 8, 2014, none of whom professed to know anything about the homicide: Daniel Sanchez, Jerry Armenta, Michael Jason Wright, and Mario Rodriguez.

   i. The production also includes a recording of a March 10, 2014 interview with inmate Michael Hernandez during which he says he knows nothing about the homicide.

   j. The government has also designated the prison videos of the assault on J.M. as Confidential Material. These videos do not have sound and show the movement of individuals within the unit at or around the time of the alleged assault.

7. The only materials in this production designated by the government as Confidential Material that fit within the Protective Order's definition of Confidential Material are as follows:

   a. Pages 2249-2253 which is an FBI 302 documenting an interview with an inmate who is attempting to cooperate.

      b. Recordings of interviews with five (5) inmates that are potential cooperating witnesses.

8. The government has not contacted me to discuss the need to designate additional materials as Confidential Material as ordered in Protective Order (Doc. 313) ¶ 5. Nor am I aware of any additional government filing seeking to include additional materials in the category of Confidential Material.

9. On April 17, 2016 I contacted the Coordinating Discovery Attorney ("CDA") to inquire about the status of the tablet computers that are to be given to the defendants. On April 18, 2016, the CDA informed me that the tablets are scheduled to ship to the New Mexico Department of Corrections ("NMDC"). NMDC will then "lock the tablets down" and provide them to the CDA to load the discovery materials. The CDA estimated that the defendants will receive the tablets containing the discovery materials in late May, 2016.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _____ day of April, 2016 at Los Angeles, California.

                                              /s/ *Amy E. Jacks*
                                              Amy E. Jacks