I, Cori A. Harbour-Valdez, declare and state as follows:

1. I have been appointed as counsel for defendant Edward Troup in the above captioned case.

2. I am aware of the Protective Order issued in this case (Doc. 313).  The terms of that Protective Order authorized the government to designate certain discovery materials as "Confidential Material."   Confidential Material is defined to be: (1) any defendant's post arrest statement; (2) statements by eyewitnesses, cooperating witnesses, and confidential government sources regarding the crimes charged in these cases; and (3) photographs and/or audio/video recordings that would identify such persons or the content of the statement in (1) or (2) above.  Pursuant to the terms of the Protective Order, copies of Confidential Material were not to be provided to the defendants or put on the tablets that were to be provided to the defendants.

3. I have received the first and second production of discovery materials in this case.  The materials are broken down into folders for confidential and non-confidential materials.

4. I have reviewed discovery relating to the alleged homicide of F.S. charged in Count 3 of the indictment.

5. Many of the discovery materials designated by the government as Confidential Material do not fit the Protective Order's definition of Confidential Material and/or do not appear to have any need to be designated as Confidential Material.

6. For the homicide of F.S. 171 pages of material has been marked as non-confidential and 127 pages have been marked as confidential.

7. The discovery improperly classified as Confidential Material is summarized as follows:

   a. Pages 1285-1287 are a redacted report authored by the New Mexico State Police ("NMSP") and identified as Incident Report.  This report documents the investigating officer's initial involvement in the investigation and the reason he believed it was not an unattended death. The victim's personal information is appropriately redacted.

   b. Pages 1442-1451 are the incident reports from various New Mexico Corrections Department Staff Members documenting their roles and actions taken during the investigation. The document does not contain information regarding confidential informants.

c.  Pages 1452-1471 are handwritten notes of the inmate interviews in which the vast majority either refused to answer questions and/or claimed no knowledge. While some of these individuals are, or may become, government cooperators, nothing in these pages indicates anyone is cooperating or providing any information about anyone else.

d.  Pages 1472-1474 are the typed notes from four of the inmate interviews referenced above. While some of these individuals are, or may become, government cooperators, nothing in these pages indicates anyone is cooperating or providing any information about anyone else.

e.  Pages 1476-1479 are the New Mexico Corrections Department Shift Supervisor's Serious Incident Report Form. The document describes the correctional officers and prison staff response to the homicide.  It does not reference cooperators or contain summaries of any cooperator statements.

f.  Pages 1483-1490 are the New Mexico Corrections Department Inmate Misconduct Reports. These reports describe the reporting employee's findings based on his investigation. It does not reference from whom he obtained the information, thus no cooperators are specifically identified.

g.  Pages 1507-1510 are the Disciplinary Placement Form, New Mexico Corrections Department Disciplinary Officer's Investigation Report, Findings and Recommendation, and New Mexico Corrections Department Inmate Conduct Report for Kyle Dwyer. Nothing in these documents identifies any cooperators or provides any cooperators' statements.

h.  Pages 1511-1512 are the Disciplinary Officer's request for an extension of time to complete the investigation into Kyle Dwyer's misconduct and another copy of New Mexico Corrections Department Inmate Conduct Report for Kyle Dwyer. Nothing in these documents identifies any cooperators or provides any cooperators' statements.

i.  Pages 1513-1517 contain two almost identical memos from the New Mexico Department of Corrections Day Shift Commander to the Chief of Security detailing the chain of events of June 17, 2007. Nothing in these documents identifies any cooperators or provides any cooperators' statements.

j.  Pages 1521-1522 contain a memo from an STIU Officer to the STIU Coordinator and documents a phone call between and inmate and a

recently paroled inmate. Nothing in the call transcript identifies any cooperators or provides any cooperators' statements.

k.   Pages 1539-1543 contain letters from inmates. Nothing in the letters identifies any cooperators or provides any cooperators' statements.

l.   Pages 1555-1560 include a memorandum from STIU Elint Officer to the STIU Administrator documenting a letter from an inmate to another inmate. Nothing in the letter identifies any cooperators or provides any cooperators' statements.

m.   Page 1561 is an FBI 302 dated January 11, 2012, documenting an interview with STIU Coordinator Adam Vigil. Nothing in the report identifies any cooperators or provides any cooperators' statements.

8.   The only materials in this production designated by the government as Confidential Material that fit within the Protective Order's definition of Confidential Material are as follows:

a.   Pages 1358-1360 are a report identified as NMSP Supplement #3. This report documents interviews with inmates believed to have been involved and who are, or may become, government cooperators. The inmates' names can easily be redacted from the report.

b.   Pages 1518-1520 contain a memo from the STIU Coordinator to the STIU Administrator documenting the inmate interviews. They are heavily redacted and thus the names of the interviewees are not disclosed.

c.   Pages 1523-1537 contain the Security Threat Intelligence Unit Memorandum regarding the investigation. The names of the interviewees are not disclosed.

d.   Page 1538 is a memorandum from the Deputy Warden to the STIU Administrator which documents the interview of a cooperator. The cooperator's name is redacted.

e.   Pages 1544-1550 contain the handwritten declaration from a cooperator and a memorandum from STIU Manager to the STIU Administrator transcribing the handwritten letter. The cooperator's name is redacted.

f.   Pages 1551-1554 contain an FBI 302 dated February 2, 2012, documenting an interview with an inmate, whose name is not redacted, in which he describes what he witnessed in 2007.

g.  Pages 1562-1582 contain FBI 302s regarding interviews of two Confidential Human Sources and two cooperators.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 18th day of April, 2016 at El Paso, Texas.


*/s/ Cori A. Harbour-Valdez*
Cori A. Harbour-Valdez