**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                         No. 2:15-CR-4268-26-JB

RUDY PEREZ,

        Defendant.

**JOINT MOTION FOR DISCLOSURE
AND PRODUCTION OF CONFIDENTIAL INFORMANT**

Defendant, Rudy Perez, by counsel, The Law Office of Ryan J. Villa, by Ryan J. Villa, pursuant to Fed R. Crim. 12(b)(1), *Giglio v. United States*, 405 U.S. 150 (1972); and *Roviaro v. United States*, 353 U.S. 53 (1957) moves the Court for an order requiring the United States to disclose the identity of a confidential informant and all information concerning the use of this informant during the investigation and prosecution of Mr. Perez's case, including but not limited to, the informant's name, addresses, statements given in this proceeding and others, criminal history, past cooperation as an informant, and any consideration, such as promises, inducements, or payments, extended to and/or received by this informant.  Mr. Perez is joined in this motion by Defendants Edward Troup, Daniel Sanchez, Jerry Montoya, Anthony Ray Baca, Andrew Gallegos and Carlos Herrera.

**BACKGROUND**

Mr. Perez is a co-defendant in perhaps the single largest and most complicated criminal prosecution in this district's history.  He is charged in Counts 6 and 7, along with co-defendants Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Anthony Ray Baca, Mauricio Varela, Daniel Sanchez, and Carlos Herrera. *See* Superseding Indictment [Doc. 368].  The counts

allege these defendants conspired to and did murder Javier Molina on March 7, 2014.  At the time, all defendants were inmates in the custody of the New Mexico Department of Corrections (DOC). Defendants and Javier Molina are alleged to be members of the Syndicato Nuevo Mexico (SNM). At the time of Mr. Molina's death, he and many of the defendants were inmates at DOC's Southern New Mexico Correctional Facility (SNMCF).  Mr. Molina was killed in pod 1A-B, a pod where many of the defendants, including Mr. Perez, were housed at the time. On this date, Mr. Perez, was still recovering from a bowel obstruction that led to multiple surgeries and an extended hospitalization.  Due to this and pre-existing leg injuries, he required the assistance of a wheeled walker to ambulate. While Mr. Perez was inside his locked cell in the downstairs portion of 1A-B pod, Mr. Molina was allegedly killed in his cell, which was in the upstairs portion of the pod.

Shortly after Mr. Molina's death, law enforcement recovered several shanks, from trash cans and shower drains, which the Government alleges were used in the killing.  In reviewing the massive discovery in this case,[1] the defense has found only one document that contains information suggesting Mr. Perez assisted in killing Mr. Molina. *See* FBI Confidential Human Source Reporting, dated 2/11/16, *attached as* **Exhibit 1.**  Specifically, this document details an informant's allegations that Mr. Perez "provided his walker to make shanks that were used in the murder." *Id*.  A number of other informants have provided information on Molina's killing; however, this informant is the only one to accuse Mr. Perez of being involved.  There is no other evidence tying Mr. Perez to this alleged crime.  Indeed, upon review of the government's massive discovery, it appears that the United States is relying on a single unnamed confidential informant in the prosecution of Mr. Perez. *See* **Exhibit 1.**

---

[1] *See* Joint Motion to Vacate March 2017 Trial [Doc. 676] at 3-4 (discussing the quantity of discovery produced to date, including approximately 40,784 pages and 412 hours of audio and video recordings).

Along with implicating Mr. Perez, this report describes the informant's efforts to purchase heroin from another alleged SNM member's mother. In a separate piece of discovery, an FBI search warrant affidavit describes an informant's similar attempt to buy heroin, also notably, from an alleged SNM member's mother. Because of this similarity, it is believed that the same informant implicating Mr. Perez was utilized by the FBI during the investigation that led to SNM December indictments.  *See* Excerpt- FBI Affidavit in Support of Search Warrants, dated 4/25/16, *attached as* **Exhibit 2.**

On September 17, 2015, Jerry Armenta, a co-defendant and cooperating witness, was interviewed by FBI agents regarding his involvement in SNM and Mr. Molina's murder. *See* FBI Report on Jerry Armenta Interview, dated 9/18/15, *attached as* **Exhibit 3.**  During this interview, Mr. Armenta names at least a dozen individuals involved in SNM-related crimes including the Javier Molina killing. Among those named by Mr. Armenta are: Benjamin Clark, Edward Troup, Daniel Sanchez, Jesse Sosa, Anthony Ray Baca, Lupe Urquizo, Mauricio "Archie" Varela, Timothy Martinez, Mario Rodriguez, Jerry Montoya, Robert Martinez and Roy Martinez. *See* **Ex. 3**. Mr. Perez, however, is noticeably absent from Mr. Armenta's "tell-all" list.[2]

Critically, there can be no dispute that Mr. Perez was not a "hands on" participant in the killing of Mr. Molina.  Video evidence makes clear that there were four individuals who could have physically assaulted Mr. Molina.  Two are seen going into his cell and leaving shortly thereafter and then another two different individuals go in and purportedly stab him.  Mr. Armenta, identifies himself as one of these individuals.  Mr. Molina is then seen running out of the cell and is pursued by Mr. Armenta and anther individual who appear to continue to attack Mr. Molina as

---

[2] In referring to the law enforcement interview with Mr. Armenta, counsel is in no way conceding the credibility of his statements.  Indeed, there exists many grounds on which to impeach Mr. Armenta's credibility.

he flees. Of the three that are not Mr. Armenta, none match Mr. Perez's description and Mr. Armenta identifies these three as other than Mr. Perez. Thus, Mr. Perez's only involvement, if any, is allegedly providing his walker to make shanks. The only source for this is the unidentified informant identified in **Exhibit 1**. The vague statement made by the informant regarding Mr. Perez's role offers little insight into the basis of the informant's knowledge, making his identity critical.

It is unknown if the informant will claim he obtained this knowledge directly from Mr. Perez or other individuals. Mr. Perez and his co-defendants charged in Mr. Molina's killing are also charged with conspiracy to kill Mr. Molina. It is quite possible the informant may have participated in any alleged planning or conspiracy to kill Mr. Molina or was an eyewitness to Mr. Molina's killing. Like the United States' other informant, co-defendant Armenta, it is also possible this informant was one of the hands on killers of Mr. Molina. Therefore, this informant will provide key testimony for the prosecution, and he possesses information that would benefit Mr. Perez's defense. Specifically, the informant's claims regarding how other defendants or uncharged co-conspirators came to possess parts of Mr. Perez's walker and whether Mr. Perez voluntarily agreed to provide his walker for parts, rendering him unable to ambulate, are highly relevant to Mr. Perez's defense. If the informant claims Mr. Perez knowingly agreed to do this for the purpose of killing Mr. Molina, it is critical to know how he obtained this knowledge, in order to properly challenge these allegations. This cannot be accomplished without knowing the informant's identity and other information that would reveal any motives he might have to lie. Mr. Perez, by counsel, requested the United States reveal the identity of this informant. The United States, by counsel, stated it would not. *See* Email thread between Villa and Armijo, *attached as* **Exhibit 4**. In this case, the Court should require the United States to disclose the informant's identity because

Mr. Perez's right to prepare for his defense outweighs the government's interest in keeping the informant's identity confidential.

## INFORMATION SOUGHT

Mr. Perez requests the disclosure of the following information pertaining to this informant:

1. Full name and occupation;

2. Whether the informer was a citizen or police informer;

3. What consideration, if any, he received or will receive for cooperation and/or testimony. *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Mayer*, 556 F.2d 245 (5th Cir. 1977);

4. Training and experience with drug trafficking and gang activity both in and outside the prison system;

5. Narcotic or controlled substance history and habit. *United States v. Fowler*, 465 F.2d 4664 (D.C. Cir 1976); *United States v. Smith*, 692 F.2d 658, 661 (10th Cir. 1983) (normally the trial court runs a substantial risk of causing prejudice to a fair trial when it fails to instruct the jury concerning the inherent unreliability of an addict's testimony);

6. Psychiatric history. *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983); *United States v. Partin*, 493 F.2d 750, 762-764 (5th Cir. 1074);

7. Criminal history, including probation and parole status. *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980);

8. Any and all statements, in addition to the agent reports, that are material to this case and which should be disclosed to the defense; and

9. Identification of any prior testimony; and all details or disclosure or reports regarding any prior investigations. *United States v. Cutler*, 806 F.2d 933 (9th Cir. 1986).

**ARGUMENT**

This Court has authority to order the United States to identify the informant implicating Mr. Perez. *See United States v. Garrison,* 147 F. Supp. 3d 1173, 1179 (D. Colo. 2015) (discussing the inherent authority of the federal judiciary in criminal prosecutions to compel discovery); *United States v. Nobles*, 422 U.S. 225, 231, 95 S.Ct.2160 (1975) ("Decisions of the Court… have recognized the federal judiciary's inherent power to require the prosecution to produce the previously recorded statements of its witnesses so that the defense may get the full benefit of cross-examination, and the truth-finding process may be enhanced").   While the government has the privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers…" the privilege is not absolute, and must give way when "the disclosure of an informer's identity… is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro v. United States*, 353 U.S. 53 at 59-61 (1957). Accordingly, disclosure may be required when the confidential source is a "participant in and a material witness to" the alleged crime. *Id*. at 65. Three broad categories of cases involving CIs exist:

> At one extreme are the cases where the informant is a mere tipster, and disclosure is not required. At the other extreme are cases such as *Roviaro* itself where the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial. In addition, there are cases where there is a slight possibility a defendant might benefit from disclosure, but the government has demonstrated a compelling need to protect its informant.

*United States v. Rivas*, 26 F. Supp. 3d 1082, 1120 (D.N.M. 2014) (quoting *United States v. Moralez,* 908 F.2d at 568 (citations omitted).   Mr. Perez submits the informant in this case may have played a crucial role in the alleged criminal transaction based on the allegations he is making, requiring disclosure of his identity.

"As a general rule…the government must identify an informant who" assists the government in "obtaining evidence of crimes and whose testimony might be relevant to the defense." *United States v. Williams*, 488 F.2d 788, 790 (10th Cir. 1973); *Roviaro v. United States*, 353 U.S. 53 (1957); *United States v. Martinez*, 487 F.2d 973 (10th Cir. 1973); *Garcia v. United States,* 373 F.2d 806 (10th Cir. 1967). "The Tenth Circuit's take on this analysis is well-known." *United States v. Padilla*, No CR 09-3598 JB, 2010 WL 4337819, at * 7 (D.N.M. Sept. 3, 2010) (Browning, J.).  When a confidential source plays an active role in the government's investigation, the court must consider: "(1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors." *Id*. at 62. In short, this analysis requires this Court to balance "the public's interest in protecting the flow of information against the individual's right to prepare his defense." *United States v. Mendoza-Salgado*, 964 F.2d 993, 1000 (10th Cir. 1992) (quoting *Roviaro* at 62 internal quotations omitted).

### MR. PEREZ'S RIGHT TO PREPARE HIS DEFENSE OUTWEIGHS THE UNITED STATES' INTEREST IN KEEPING THE INFORMANT'S IDENTITY CONFIDENTIAL

Because the government has not disclosed the identity of the informant used in its investigation, Mr. Perez is being deprived of his right to adequately prepare his defense. To date, Mr. Perez is only named in 18 of the tens of thousands of discovery documents. Out of these 18, his name most commonly appears on a list of inmates who were housed in the same pod as Mr. Molina and who law enforcement attempted to interview after his killing. The informant's statement in the CHS Report is the *only* evidence within the discovery that purports to tie Mr. Perez to Mr. Molina's murder. *See* **Ex. 1**, CHS Rpt. at 2. In this report, the informant alleges that Mr. Perez assisted in the crime by "provid[ing] his walker to make shanks that were used in the murder." *Id*.

Outside of this limited information, the United States has failed to provide any other statements or evidence linking Mr. Perez to Mr. Molina's killing or demonstrating Mr. Perez's involvement in a conspiracy. The defense, therefore, reasonably believes that this informant will be a key witness for the government's case against Mr. Perez. As this informant's allegation appears to be the sole evidence against Mr. Perez in this case, his interest in preparing his defense outweighs the government's interests in keeping the informant's identity confidential. *See United States v. Rivas*, 26 F. Supp. 3d 1082, 1114 (D.N.M. 2014) ("The Court has required the United States to disclose a CI's identity where the CI 'was integrally involved in the criminal transaction[,] ... observed the criminal transaction[,] and was not a mere bystander.'") (quoting *United States v. Aguilar,* 2010 WL 2977708, at *5 (D.N.M. June 28, 2010)).

The Tenth Circuit requires disclosure when the information sought by the defendant may be relevant to his defense and justice would be best served. *United States v. Holmes*, 487 F. Supp. 2d 1206, 1211 (D. Kan. 2007), *aff'd, United States v. Holmes*, 311 Fed. Appx. 156 (10th Cir. 2009). Alternatively, when the informant's testimony would be cumulative or where the informant did not participate in the alleged crime, disclosure is not required. *Id.*  Instructive to Mr. Perez's request is *United States v. Martinez,* where the Tenth Circuit held that the district court erred in refusing the defendant's motions to disclose an informant's identity. 87 F.2d 973, 977 (10th Cir. 1973). In *Martinez*, the defendant was charged with multiple counts of unlawful possession and intent to distribute controlled substances. *Id*. 974. The informant accompanied an undercover law enforcement officer to the home of Mr. Martinez's co-defendant where the undercover agent purchased heroin from the co-defendant. *Id*.   At trial, the undercover officer testified that Mr. Martinez was present and implicated Mr. Martinez in the transaction. *Id*. The officer's testimony formed the basis of the government's prosecution against Mr. Martinez. *Id*. Mr. Martinez's and his

co-defendant's testimony directly contradicted the officer's statements in that, although Mr. Martinez agreed he was at the co-defendant's home on the day of the transaction, he was not present or even aware of the heroin sale. *Id.*

The court held the informant's identity should have been disclosed because the informant was a participant, as well as an eyewitness who was "present at the very time and place where the crime… occurred." *Id.* at 975. The court noted that the informant's testimony took on "additional importance in view of the fact that" the testimony from law enforcement was in direct conflict with the defendant's testimony. *Id.*

Likewise, in *United States v. Moralez*, the Tenth Circuit held that the district court abused its discretion in denying the defendant's motion to disclose the identity of the informant. 908 F.2d 565, 569 (10th Cir. 1990). There, the court determined the district court based the denial on an insufficient record and remanded the case for an *in camera* hearing to determine the informant's level of involvement. *Id.* In *Moralez*, the defendant and two co-defendants were charged and convicted of marijuana possession and multiple related counts. *Id.* at 567. After law enforcement received information from a confidential informant that one of the co-defendants was dealing marijuana, officers began watching the co-defendant's service station and caught him distributing marijuana to a car parked nearby. *Id.* Upon entering the station, law enforcement found nearly two hundred pounds of marijuana scattered throughout the building and arrested Mr. Moralez and his other co-defendant. *Id.*

While the Tenth Circuit was not satisfied with the record before it, it nevertheless emphasized that Mr. Moralez "clearly stated how the informant's testimony was essential to [his] defense" and necessary to address critical issues like who owned the marijuana and whether Mr. Moralez was involved in the illegal marijuana operation. *Id.* 568. The informant's testimony would

support Mr. Moralez's argument that he was "in the wrong place at the wrong time." *Id*.  The Court also noted that the confidential informant's testimony would not be cumulative because it would "provide a different perspective" than the testimony of Moralez's co-defendants who had "motives for implicating Moralez." *Id*.

In Mr. Perez's case, the defense has the burden to "explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence." *United States v. D'Armond*, 65 F. Supp. 2d 1189, 1198–99 (D. Kan. 1999) (quoting 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 510[06] (1991)).  Here, the testimony the informant would provide that is critical to guilt or innocence is how he obtained information that Mr. Perez allegedly provided his walker to make shanks.  Does he allege he witnessed Mr. Perez provide his walker?  Where was he?  Who else was present?  How does he know the walker pieces were to be used as shanks?  How did he know the shanks were used to kill Mr. Molina? How did he know Mr. Perez knew that?  Was he told anything by Mr. Perez?  How was he told?  Was he told by another?  If so, who?  Was the informant a member of SNM?  Did he participate in or was he an eyewitness to the conspiracy to kill, and the killing of, Mr. Molina?  The identity of the confidential informant would likely answer many of these questions or would reveal his possible bases of knowledge, which would then allow Mr. Perez to investigate the informant's veracity and ability to perceive.

Knowing his identity and basis of knowledge, like in *Moralez*, will permit Mr. Perez to prepare for and defend against the informant's inevitable testimony to critical issues such as: whether Mr. Perez was involved in the plot to murder Mr. Molina; if Mr. Perez willingly provided his walker with the intended purpose of assisting in the crime; who took possession of the walker; and who made the shanks.

Because the confidential informant is the only source implicating Mr. Perez, his testimony is significant and would not be cumulative. Also like *Moralez*, Mr. Perez has many co-defendants who may think that they will benefit from falsely implicating him in the crime. The importance of identifying the confidential informant in this case, therefore, is doubly important. First, because it will reveal whether the confidential informant is one of Mr. Perez's co-defendants who has a motive to assist the United States in getting as many SNM convictions as possible. And second, because, if the confidential informant is not a co-defendant, his testimony may provide information to contradict the testimony of any co-defendants who may choose to testify against Mr. Perez in hopes of obtaining a deal for cooperating. "[T]he CI may be in a unique position to amplify or contradict the testimony of [other] witnesses" who may testify that it was Mr. Perez instead of others who provided materials to be used to kill Mr. Molina. *United States v. Aranda-Diaz*, 2013 WL 4446793 at 12 (Browning, J.) (quoting *Roviaro*, 353 U.S. at 64) (internal quotation omitted). The confidential informant's testimony may resolve a direct conflict with the United States' theory and the testimony of Mr. Perez should he choose to testify that he was not involved in the conspiracy to murder Mr. Molina. Given these circumstances, "it is not at all clear that the informant cannot aid [Mr. Perez's] defense," and the Government should therefore be required to disclose the informant's identity to Mr. Perez and his counsel. *Id.* at 13.

If Mr. Perez is found guilty of the murder charge, he faces a mandatory life sentence. *See* 18 U.S.C. § 1959(a)(1). As this Court has properly recognized, "steep [sentences] … weigh in favor of requiring the United States to disclose the CI's identity." *United States v. Rivas*, 26 F. Supp. 3d 1082, 1117 (D.N.M. 2014). Short of the death penalty, Mr. Perez faces the steepest criminal sentence available in the American justice system. The risk of such a highly punitive sentence taken along with the relevant testimony that the defense anticipates the informant will

provide, weigh in favor of requiring the United States to disclose the identity of the confidential informant.

In *Rivas*, this Court refused to order the United States to disclose the identity of a confidential informant after the defendant pleaded guilty to distributing narcotics. *Id.* at 1116. The defense sought disclosure of the informant's identity because the defendant already believed he knew who the informant was and that once named the informant could support the defendant's claim of imperfect entrapment and request for a variance in the defendant's sentence. *Id.* at 1089, 1103. The defense argued that revealing the confidential informant's identity was necessary to "properly represent the defendant at sentencing, jeopardizing [the defendant's] right to due process and effective assistance of counsel" during the sentencing phase. *Id.* at 1094. This Court considered the following *Roviaro* factors to determine whether Rivas could show that disclosing the informant's identity outweighed the public's interest in keeping it confidential: "(1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors." *Id.* at 1113. The Court found that the first two factors favored disclosure, but the last two favored keeping the informant's identity confidential.

On the first factor, the Court found that upper limits of the sentence weighed in favor of disclosing the informant's identity. *Id.* at 1117. The Court also found that "the need for Rivas to make his defense, including his argument for a variance, weighs in favor of requiring the United States to disclose the CI's identity." *Id* at 1120-21. However, with regard to the third factor, the Court concluded that because the informant could not testify regarding drug transactions he was not present for, his testimony would not be useful or significant regarding those transactions. *Id* at 1120-1121. With regard to other relevant factors, the Court determined that disclosure was not

warranted because Rivas believed he knew who the informant was and because the informant had received threats.

Unlike *Rivas,* Mr. Perez does not know who the informant may be. The government charged 30 individuals in the superseding indictment and has relied heavily on insider informants, many looking to "make a deal" during its sprawling investigation.  If the defense is correct that the CHS Reporting Document and the FBI search warrant affidavit reference the same confidential informant, then the informant was shot several times in February 2016. *See* **Ex. 1**, CHS Rpt. at 2; *see* **Exhibit 3.** If this is the case, the defense request that the Court conduct an in camera hearing to determine whether this shooting was related to the current SNM investigation and whether the confidential informant is presently in danger because of his status as a confidential informant. Both the CHS Reporting Document and the affidavit state that informant is a gang member, and it is possible that the February 2016 shooting was not related to his involvement in the present investigation but rather his involvement in gang activity. *Id.*

In addition to the informant's gang affiliation, his on-going involvement in criminal behavior makes his credibility highly questionable.   The CHS Reporting Document and the affidavit both state the informant sought out the mother of another SNM member to buy heroin. *Id*. The CHS Reporting document also states that the informant conspired with the SNM member's mother to smuggle Suboxone strips into prisons using mail. *See* **Ex. 1**, CHS Rpt. at 2. Further, whether this informant is a co-defendant who is being rewarded for cooperating with the government goes directly to his motivation for providing this statement and his credibility as a witness. *See e.g*. *U.S. v. Moralez*, 908 F.2d at 568.

Disclosing the informant's identity is essential to the fair adjudication of Mr. Perez's case and outweighs the government's interests in keeping it confidential. Learning the identity of the

informant at the earlier stage of discovery will be critical given this is the only witness who links Mr. Perez to the crime charged.  Mr. Perez will need sufficient time to weed through the massive amounts of discovery in this case to determine the informant's role and to conduct an investigation into the background of this informant to prepare for cross-examination and impeachment. *United States v. Ruiz,* 536 U.S. at 632, 122 S.Ct. 2450 (explaining that "impeachment information is special in relation to the *fairness of a trial*" not in determining voluntariness) (emphasis in original); *see United States v. Nobles*, 422 U.S. 225, 231, 95 S.Ct.2160 (1975).

## CONCLUSION

Mr. Perez respectfully requests that this Court order the United States to disclose the identity of the confidential informant implicating Mr. Perez and other information requested herein as it is essential to the fair adjudication and to a fair trial for Mr. Perez.

## CONSULTATION WITH OPPOSING COUNSEL

Counsel for Rudy Perez, Ryan J. Villa, sought the position of all counsel for all parties on this Motion.  Counsel for the United States, AUSA Maria Armijo, opposes this motion.  *See* **Ex. 4**.  Counsel for Defendants Anthony Ray Baca, Edward Troup, Daniel Sanchez, Jerry Montoya, Andrew Gallegos and Carlos Herrera have informed that their clients join in this Motion.  Counsel for all other Defendants, except where noted below, have indicated they do not oppose this motion. Counsel for Defendant Robert Martinez, C.J. McElhinney, indicates Mr. Martinez takes no position.  Counsel for Defendants Leonard Lujan, Eugene Martinez, Benjamin Clark, Ruben Hernandez, Jerry Armenta, Gerald Archuleta, Conrad Villegas, Roy Martinez, Paul Rivera, and Shauna Gutierrez did not respond.

Respectfully submitted,

*/s/ Ryan J. Villa*_____
Ryan J. Villa
Counsel for Rudy Perez
2501 Rio Grande Blvd. NW Ste. A
Albuquerque, NM 87104
(505) 639-5709
(505) 433-5812 (facsimile)
ryan@rjvlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2016, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/Ryan J. Villa*
RYAN J. VILLA