IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                           Nos.   2:15-CR-04268-JB
                                                        2:16-CR-01613-JB

ANTHONY RAY BACA, et al.

    *Defendant*.

### ANTHONY RAY BACA'S OPPOSITION TO PROPOSED RESTRICTIONS ON HIS PARTICIPATION AND INCLUSION IN COURT PROCEEDINGS[1]

Defendant Anthony Ray Baca objects to the proposed restrictions on his participation in courtroom proceedings and to communications between defendants when court is not in session, as well as to the Court's proposed delegation to the United States Marshal Service (USMS) the authority to exclude him, or any other defendant, from court proceedings. Implementation of the proposed restrictions as outlined in the Court's letter dated November 23, 2016 would violate Mr. Baca's rights under the First, Fifth, and Sixth Amendments to the United States Constitution as they are without any factual justification. The USMS's request to impose such unprecedented restrictions on Mr. Baca's participation in court proceedings, as well as his interactions with his co-defendants and their counsel, are based on rank speculation, and therefore are not justified at all. [Doc. 774 at 2 (claiming restrictions are necessary because communications between Mr.

---

[1] Given the lack of time to respond to the Court's letter, undersigned counsel has not had the ability to secure the position of all counsel. Counsel understands that Daniel Sanchez and Jerry Montoya join in Mr. Baca's opposition. It is the request of Jerry Montoya's counsel that the proposed restrictions not be addressed until his counsel is present in the Courtroom. The position of the United States is not known, but its opposition is presumed.

Baca and his co-defendants "*may* contain coded messages that are nefarious in nature" and "*may* contain information that is unknown to most lay persons," including "*possible* communications about security procedures" and "communications that *may* cause harm to others") (emphasis added)]. There is no evidence whatsoever that Mr. Baca has sent his co-defendants coded messages during past hearings or that he has attempted to communicate with his co-defendants about court security procedures. Accordingly, Mr. Baca requests that the Court reject the three proposed restrictions outlined in the USMS's *ex-parte* email to the Court.

### FACTUAL BACKGROUND

On November 23, 2016, the Court outlined three new courtroom restrictions that the USMS seeks to implement. Those restrictions are based solely on allegations that the defendants in this case belong to the SNM prison gang and that Mr. Baca is the purported leader of that gang.[2] First, the USMS desires to single out Mr. Baca by erecting a physical barrier around Mr. Baca and his attorneys such that they will be unable to see or communicate with co-defendants and their counsel during court proceedings.[3] [Doc. 774 at 2.] The purported purpose of this physical barrier is to "limit any/all surreptitious communications that can present a danger to all patrons in attendance." [*Id*.] Notably absent from the USMS's email is any allegation that Mr.

---

[2] Mr. Baca disputes this characterization and there is a wealth of evidence contradicting it. As the United States knows, Mr. Baca has spent years in solitary confinement due to death threats made against him, threats that the New Mexico Department of Corrections allegedly associated with the SNM prison gang.

[3] The USMS's restrictions would limit Mr. Baca's ability to see and communicate with his co-defendants. As counsel will be sitting beside Mr. Baca, his counsel's ability to see and communicate with counsel for co-defendants also will be restricted if they are to be seated in a way to communicate with Mr. Baca. Client communication, of course, is the hallmark of effective assistance of counsel.

Baca has ever engaged in "surreptitious communications" presenting a danger to anyone during past hearings. Without such evidence, the Court should not seriously entertain the USMS's request.

Second, the USMS seeks to limit communications between defendants not only while court is in session, but also during breaks. [*Id*.] Without disclosing the content of any communications between defendants during breaks in previous court proceedings, the USMS concludes that such communications are "unnecessary" and will some how threaten the "integrity of the judicial process." [*Id*.] Again, there have been no allegations that any defendants have ever communicated in a way that has, or potentially would, threaten the integrity of the judicial process during prior hearings in this case. It should not be lost upon the Court that the USMS has had an overwhelming presence in the Courtroom, coupled with security cameras throughout the Courtroom and the Courthouse, and not a single incidence of such conduct has been produced for the defendants or the Court to consider.

Third, the USMS informs the Court that it will remove from the courtroom any defendant who communicates with co-defendants after the USMS warns him not to or otherwise refuses to comply with orders from the USMS. [*Id*.] It appears that the USMS intends to remove defendants from hearings if they communicate with one another during breaks in Court proceedings, regardless of the content of those communications. It is not at all clear that the USMS will seek the Court's approval before excluding a defendant from court proceedings, although "a warning will be given to the court" before the USMS does so. [*Id*.]

## DISCUSSION

The courtroom restrictions the USMS recommends, and which the Court proposes to follow, are unfair, oppressive, and violate Mr. Baca's rights to due process of law, a fair trial, the

presumption of innocence, the effective assistance of counsel, as well as his First Amendment Rights. The USMS has not pointed to a single specific instance of conduct that would justify such unprecedented restrictions on a defendant's right to participate in criminal proceedings. Mr. Baca objects not only to the USMS's proposed procedures, but also to the *ex parte* manner in which they were communicated to the Court so as to deprive Mr. Baca of the opportunity to oppose them.[4] The three safety restrictions described by the USMS are utterly devoid of any due process protections, and are reminiscent of the arbitrary justice dispensed by the English Star Chamber that the United States long ago rejected. *Ullmann v. United States*, 350 U.S. 422, 428 (1956) (observing that the historical abuses of the Star Chamber in England gave rise to the creation of the Fifth Amendment protections in the United States, and noting that having "had much experience with a tendency in human nature to abuse power, the Founders sought to close the doors against like future abuses by law-enforcing agencies"). As the USMS has not offered any real justification to adopt these draconian restrictions on Mr. Baca's ability to communicate during court hearings, the Court should summarily reject them.

I. **ERECTING A PHYSICAL BARRIER BETWEEN MR. BACA, HIS COUNSEL, AND THE CO-DEFENDANTS AND THEIR COUNSEL IS UNNECESSARY AND WOULD VIOLATE MR. BACA'S FIRST AMENDMENT RIGHTS, HIS RIGHT TO DUE PROCESS OF LAW, HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, AS WELL AS HIS PRESUMPTION OF INNOCENCE.**

The USMS's proposal to erect a physical barrier between Mr. Baca, his counsel, and the co-defendants and their co-counsel is unprecedented, unconstitutional, and unnecessary. Undersigned counsel has been unable to find a single case in which a court has authorized such an oppressive restriction, which is aimed at stigmatizing Mr. Baca and eroding his dignity as a

---

[4] As the Court understands, the USMS made their request in an *ex parte* manner. Obviously, the USMS—an agency of the Department of Justice represented by the U.S. Attorneys' Office in this case—did not intend to provide defendants a fair opportunity to contest the proposed procedures.

human being.  Erecting such a barrier would not only block Mr. Baca from observing his co-defendants and their counsel, it also would prevent his counsel from observing the Courtroom as a whole and from communicating with other counsel.  More critically, it would send an unwarranted message to the public that the Court believes Mr. Baca is a dangerous individual who must be isolated from everyone for the public's safety.  Given the abject lack of evidence that Mr. Baca has engaged in any misconduct during previous court proceedings, such a restriction is entirely unnecessary.

Mr. Baca has constitutional rights to due process of law, a fair trial, the effective assistance of counsel, the presumption of innocence, as well as First Amendment rights to a public trial.  *See* U.S. Const. amend. V (stating that no person shall "be deprived of life, liberty, or property, without due process of law"); U.S. Const. amend. VI (guaranteeing that in "all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial" and to have the effective assistance of counsel"); *Coffin v. United States*, 156 U.S. 432, 453 (1895) (holding that the "principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law"); U.S. Const. amend. I (safeguarding the "freedom of speech, and the right of the people peaceably to assemble").  The restrictions the USMS proposes would vitiate all of these important rights.

### A. *The First and Sixth Amendments protect the public's right to visibly observe Mr. Baca inside the Courtroom, as well as Mr. Baca's right to be so observed.*

The right to a public trial under the First and Sixth Amendment extends to pretrial proceedings.  *Waller v. Georgia*, 467 U.S. 39, 46 (1984).  As noted in *Waller*:

> there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public. The central aim of a criminal

5

>   proceeding must be to try the accused fairly, and our cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant.

*Id*. (internal punctuation and quotations omitted).

Our Courts have noted that not only the public, but the accused as well, has a right to demand public participation in the judicial process. The guarantee to the presence of the public at hearings "has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution." *In re Oliver*, 333 U.S. 257, 270 (1948). By fostering citizen participation in the criminal process, "the public may see [the defendant] is fairly dealt with and not unjustly condemned." 333 U.S. at 271 n. 25. "Our cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant." *Gannett Co. v. DePasquale,* 443 U.S. 368, 380 (1979). That right demands that the public be allowed to attend pre-trial proceedings to ensure that the defendant is treated in a fair and impartial manner. As observed in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980):

>   It is not crucial whether we describe this right to attend criminal trials to hear, see, and communicate observations concerning them as a "right of access," or a "right to gather information," for we have recognized that "without some protection for seeking out the news, freedom of the press could be eviscerated." The explicit, guaranteed rights to speak and to publish concerning what takes place at a trial would lose much meaning if access to observe the trial could, as it was here, be foreclosed arbitrarily.

(Internal punctuation and citations omitted.) In that vein, Mr. Baca has a right to be seen by the public, just as the public has a right to see Mr. Baca, so that all concerned can ensure that Mr. Baca is being treated fairly, and that he has not been the subject of violence or abuse while held in pre-trial detention.

The effect of placing Mr. Baca inside a partition, so that he can only be seen by the Judge, but not his co-defendants, their attorneys, or the public, is the functional equivalent of

6

removing the public from Mr. Baca's proceeding.  If the restrictions proposed by the USMS are implemented, the public will be prevented from seeing Mr. Baca, observing his conduct, and reporting on his courtroom behavior.  It also prevents the public, including family members and the press, from observing Mr. Baca to know that he is not being mistreated in any way.  Placing a partition around Mr. Baca eliminates Mr. Baca's ability to be seen by the press, his family and loved ones, in order to alleviate any concern that vigilante justice may be at play.  As noted in *Richmond Newspapers, Inc.,* a salutary effect of the public proceedings is to ensure "that justice may not be done in a corner nor in any covert manner."  448 U.S. at 567 (quoting The 1677 Concessions and Agreements of West New Jersey).   Of course, the publicity surrounding the proceedings is for "the benefit of the accused" so "that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions."  *Waller*, 467 U.S. at 46.

      The Court could implement the USMS's proposed restrictions only under very narrow circumstances, none of which are present here.  As held by the Supreme Court, the

> presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Id*. at 45.

      Neither the Court's November 23, 2016 letter, nor the email from the USMS proposing the new security restrictions, can satisfy the high bar that this legal standard demands.  The USMS's desire to implement these restrictions is based on unfounded paranoia and rank speculation, neither of which can satisfy this test.  To invoke these procedures without an

7

appropriate fact finding proceeding that justifies their imposition would violate Mr. Baca's due process rights.

> **B.    *The Court would violate Mr. Baca's due process rights by invoking the security restrictions proposed by the USMS without engaging in the essential notice, discovery, and fact finding required to implement those measures.***

The Fifth Amendment to the constitution of the United States prohibits the government from depriving Mr. Baca of any life, liberty, or property interest without providing him with due process of law.  "'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the Clause must be satisfied." *Goss v. Lopez*, 419 U.S. 565, 574 (1975) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).  The minimum standards of due process were set forth in *Goss*.  In that case, which involved a high school student's temporary suspension from school, the Court observed that "due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 U.S. at 581.

It is telling that in the context of this case, a case far more serious than the school suspension addressed in *Goss*, not even the modest due process standard addressed there has been satisfied.  Mr. Baca denies having made any surreptitious or nefarious communications during any courtroom proceeding.  At this juncture, the burden is on the USMS to provide tangible evidence to support their security restrictions.  Even then, given the weighty interests at stake, Mr. Baca demands an opportunity to obtain discovery to defend against the USMS's yet-to-be-seen evidence before the Court holds a hearing to make the factual findings necessary to implement those restrictions.  The reality of this case is that the Court has had multiple hearings

with Mr. Baca without the need to impose such measures.  Due process demands that the USMS produce more than their unfounded speculation in order for Mr. Baca to fairly defend himself against these rank allegations.

### C. The procedures suggested by the USMS would thwart Mr. Baca's effective assistance of counsel.

The Sixth Amendment to the constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to have the Assistance of Counsel for his defense."  The right to counsel encompasses a guarantee to the right to *the effective assistance* of counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984).  As part of the right to effective assistance of counsel, the Sixth Amendment guarantees a defendant the right to confer with counsel in the courtroom about the broad array of unfolding matters, often requiring immediate responses that are relevant to the defendant's stake in his defense and the outcome of his trial. *Geders v. United States*, 425 U.S. 80, 88 (1976).  Except when the defendant is testifying or during brief recesses in that testimony, the defendant enjoys an absolute "right to unrestricted access to his lawyer for advice on a variety of trial-related matters." *Perry v. Leeke*, 488 U.S. 272, 284 (1989).  The defendant's ability to communicate with counsel in court remains "one of the defendant's primary advantages of being present at the trial." *Illinois v. Allen*, 397 U.S. 337 (1970).  Actual or constructive denial of the effective assistance of counsel throughout the court proceedings is reversible error, and prejudice need not be shown by the defendant.  *Perry*, 488 U.S. at 280.

In order to provide effective assistance of counsel during court proceedings, counsel must be seated next to Mr. Baca so that they can confer with him.  By necessity, this means that counsel would have to be within the physical barrier the USMS proposes to place around Mr. Baca.  During previous court proceedings, counsel for the various co-defendants have worked

together to present arguments and issues to the Court, a process that requires counsel to communicate with one other inside the courtroom. The restrictions the USMS proposes would prevent Mr. Baca's counsel from participating in such communications unless they sit separately from Mr. Baca, which they ethically cannot and will not do. Thus, the restrictions the USMS propose would deny Mr. Baca the effective assistance of counsel to which he is constitutionally entitled. It would do so based on nothing more than speculation stemming from his alleged role as a leader of the SNM, an allegation that has not yet been substantiated (or any evidence presented) and for which Mr. Baca maintains a presumption of innocence.

>    D.  *The procedures proposed by the USMS would adversely affect the publicity surrounding this case, and undermine the presumption of innocence that Mr. Baca enjoys as well as the Court's obligation to treat Mr. Baca with dignity.*

This case has generated a great deal of publicity. It also has been a focal point for a television series, Behind Bars: Rookie Years, on the A&E channel. Indeed, the finale for Season 2 of that program, which aired November 10, 2016, focused on the arrest of alleged SNM members in this case.[5] Local television news programs and newspapers have covered all of the court proceedings thus far. *See, e.g.*, Scott Sandlin, "17 In Gang Case May Face Death Penalty," Abq. Journal (Dec. 10, 2015);[6] Carlos Andres Lopez, "Sweeping Charges Filed Against Prison Gang Members," Las Cruces Sun-News (April 28, 2016);[7] Nancy Laflin, "SNM Gang in Court," KOAT TV News, June 2, 2016;[8] Carlos Andres Lopez, "Gang leader pleads guilty to conspiring

---

[5] Available at http://www.aetv.com/shows/behind-bars-rookie-year/season-2/episode-12.

[6] Available at https://www.abqjournal.com/688716/17-in-gang-case-may-face-death-penalty.html.

[7] Available at http://www.lcsun-news.com/story/news/crime/2016/04/28/sweeping-charges-filed-against-prison-gang-members/83683256/.

[8] Available at http://www.koat.com/article/snm-gang-in-court/4497243.

10

to murder prison officials," Abq. Journal (Sept. 16, 2016);[9] Carlos Andres Lopez, "Gang leader pleads guilty to conspiring to murder prison officials," Las Cruces Sun (Sept. 15, 2016).[10] Physically separating Mr. Baca and his counsel from the rest of the courtroom during a public court proceeding—a procedure that is unprecedented in this district—is likely to be heavily reported in a manner that is highly prejudicial to Mr. Baca. The public—including potential jurors—can draw but one conclusion from this procedure: that the Court has decided Mr. Baca is so dangerous that he must be physically isolated from all other courtroom participants. Such a conclusion destroys the presumption of innocence and any chance Mr. Baca has to a fair trial. *Cf. Deck v. Missouri*, 544 U.S. 622, 630 (2005) ("Visible shackling undermines the presumption of innocence and the related fairness of the fact-finding process. It suggests to the jury that the justice system itself sees a 'need to separate a defendant from the community at large.'") (quoting *Holbrook v. Flynn*, 475 U.S. 560, 569 (1986)). The prejudice to Mr. Baca is apparent and there is no justification for imposing it.

Finally, the USMS's proposed restrictions offend the principle that "judges must seek to maintain a judicial process that is a dignified process. The courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment." *Deck*, 544 U.S. at 631. Physically isolating a criminal defendant and his counsel from other defendants and their counsel as well as the

---

[9] Available at https://www.abqjournal.com/846525/gang-leader-pleads-guilty-to-conspiring-to-murder-prison-officials.html.

[10] Available at http://www.lcsun-news.com/story/news/crime/2016/09/15/gang-leader-pleads-guilty-conspiring-murder-prison-officials/90433640/.

public—particularly in the absence of any evidentiary basis for finding such isolation to be necessary—is disrespectful of Mr. Baca, jettisons his presumption of innocence in the minds of the public and potential jurors, and is offensive to the dignity of the Court and the judicial process. As Your Honor instructed the defendants, including Mr. Baca, on June 2, 2016:

> [L]et's build some trust with each other that we can do this together. . . . If we can build up confidence that we can do these things, and get through them, and everybody can do them, maybe we can start, you know, making more accommodations.

Transcript, June 2, 2016 Motion Hearing, p. 51. Mr. Baca has worked hard to earn the Court's trust, and to maintain the dignity of these judicial proceedings so Mr. Baca can be present during these hearings without the restrictions suggested by the USMS. Having worked to gain the Court's trust and uphold the dignity and decorum of the judiciary, these are not the kind of accommodations that Mr. Baca, or apparently the Court, had in mind on June 2, 2016. Mr. Baca requests that they be rejected.

### II. PROHIBITING DEFENDANTS FROM SPEAKING TO ONE ANOTHER DURING BREAKS IN THE COURT PROCEEDINGS IS NOT JUSTIFIED UNDER THE CIRCUMSTANCES.

The USMS also proposes to prevent the defendants, including Mr. Baca, from communicating with one another during breaks in the court proceedings. [Doc. 774 at 2.] The USMS deems such conversation "unnecessary" and somehow a threat to the integrity of the judicial process. [*Id.*] The USMS offers no explanation or support for these conclusions, and undersigned counsel has not observed any inappropriate communications between defendants at previous hearings. Furthermore, the Court has not entered a "no contact" order in this case and many of the defendants are housed with other defendants in the same cellblock and thus communicate with each other on a daily basis. Without evidentiary support for the request to restrict defendants' communications, or at least some articulable standard for how the USMS

proposes to deem such communication as "unnecessary," barring the defendants from communicating with one another when court is not in session is unfounded, and, once again, violates their due process rights to engage in protected First Amendment speech.

### III. CRIMINAL DEFENDANTS HAVE A RIGHT TO PARTICIPATE IN COURT PROCEEDINGS IN THEIR CASES AND MAY BE EXCLUDED FROM THOSE PROCEEDINGS ONLY UPON ORDER OF THE COURT, NOT THE UNILATERAL DISCRETION OF THE USMS, AND ONLY IF THEIR CONDUCT DISRUPTS THOSE PROCEEDINGS.

The USMS seeks unilateral authority to exclude Mr. Baca, as well as any other defendant, from the legal proceedings involving their criminal defense. The USMS seeks to exercise this authority to punish a defendant for communicating with any co-defendant when court is not in session if they deem it "unnecessary." The USMS provides not a clue as to how it will deem any communication unnecessary, leaving the defendants to speculate about the scope of their First Amendment right to free speech; a right that is particularly acute here as these individuals have the right to communicate about their respective views on the court proceedings and issues presented therein. The USMS's proposal ignores the defendants' constitutional rights to be present during court proceedings and the fundamental principle that the Court alone, not law enforcement, has the authority to exclude a defendant from court proceedings and, even then, only in extremely limited circumstances.

A criminal "defendant has a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge,'" and "'[t]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)). *See also United States v. Gonzalez*, 596 F.3d 1228, 1244 (10th Cir. 2010);

13

Fed. R. Crim. P. 43. A defendant can lose his right to be present in court "if, after he has been warned *by the judge* that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v Allen*, 397 U.S. 337, 343 (1970) (emphasis added); *see also* Fed. R. Crim. P. 43(c)(1)(C) (a defendant waives his right to be present during court proceedings "when *the court* warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom") (emphasis added). The right to be present in court is so critical that, even if lost, it may "be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Allen,* 397 U.S. at 343.

      The USMS seeks authorization not only to exclude defendants who actually disrupt court proceedings, but also to punish those who speak to their co-defendants when court is not in session. There is no precedent or authority for the USMS's request. A defendant can lose his right to be present during court proceedings only "if, *after he has been warned by the judge* that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court *that his trial cannot be carried on with him in the courtroom.*" *Id.* (emphasis added). Chatting with one's co-defendants during a recess in court proceedings does not in any way interfere with the integrity of the court proceedings. Clearly, if a defendant continues to talk with a co-defendant once court is in session and so disrupts the proceedings, the Court—not the USMS—retains the authority to warn and then exclude that defendant until he "is willing to conduct himself consistently with the

14

decorum and respect inherent in the concept of courts and judicial proceedings." *Id.*  The USMS's proposal blithely ignores the governing case law controlling this issue.

   IV.   **GIVEN THE IMPORTANCE OF THE RIGHTS JEOPARDIZED BY THE USMS'S PROPOSED COURTROOM RESTRICTIONS, LESS THAN ONE BUSINESS DAY IS SIMPLY NOT ENOUGH TIME TO ADEQUATELY BRIEF MR. BACA'S OBJECTIONS TO THOSE PROCEDURES. THUS, AT THE VERY LEAST, MR. BACA ASKS THE COURT TO REFRAIN FROM CONSIDERING THESE PROPOSED RESTRICTIONS UNTIL MR. BACA HAS BEEN FULLY INFORMED OF THE PURPORTED EVIDENCE THAT NEFARIOUS COMMUNICATIONS HAVE BEEN MADE, AN OPPORTUNITY FOR DISCOVERY ON WHATEVER EVIDENCE WILL BE PROVIDED, AND AN OPPORTUNITY TO FULLY BRIEF THE ISSUE AND TO PRESENT EVIDENCE DURING A PROPER EVIDENTIARY HEARING.**

The Court notified the parties of its intent to adopt the USMS's proposed restrictions on Mr. Baca's participation in court proceedings, and on the defendants' communications, at 2:15pm on November 23, 2016, the day before the Thanksgiving holiday.  The courthouse was closed Thanksgiving day and on Friday, November 25, 2016.  The next hearing in Case No. 16-cr-1613 is scheduled for Monday, November 28, 2016, at 1:30pm.  Thus, Mr. Baca had less than three business hours, and four combined holiday and weekend days to respond to the proposed restrictions before the next hearing.  As discussed above, what little is actually known about the proposal does not provide for adequate notice and opportunity to be heard on an issue of this magnitude, and fails to comply with the due process clause of the Fifth Amendment.  Hence, at the very least, Mr. Baca requests the Court to (1) refrain from implementing any of the proposed restrictions, (2) order the USMS to produce any evidence that it may have that would warrant the imposition of such restrictions, (3) provide Mr. Baca and his co-defendants a fair opportunity for discovery in order to meaningfully contest the actual evidence to be provided by the USMS, (4) fully and fairly brief the issues, and (5) at the appropriate time present evidence that these allegations are unfounded and that such restrictions would unconstitutionally impact their rights as guaranteed by the United States constitution.

**CONCLUSION**

For the foregoing reasons, Defendant Anthony Ray Baca respectfully requests that the Court reject the three proposed courtroom restrictions outlined in the USMS's *ex-parte* email to the Court.

Respectfully submitted,

ROTHSTEIN, DONATELLI, HUGHES,
  DAHLSTROM, SCHOENBURG & BIENVENU, LLP


_____
MARC M. LOWRY
500 Fourth Street NW, Suite 400
Albuquerque, NM  87102
(505) 243-1443
mlowry@rothsteinlaw.com


/s/ Theresa M. Duncan_____
Theresa M. Duncan
Theresa M. Duncan, Esq.
515 Granite NW
Albuquerque, NM 87102
505-842-5196
teri@duncanearnest.com

*Attorneys for Anthony Ray Baca*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 27th day of November, 2016, I filed the foregoing pleading electronically through the CM/ECF system, which caused counsel for Plaintiff and Defendants to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

_____
ROTHSTEIN, DONATELLI, HUGHES
DAHLSTROM, SCHOENBURG & BIENVENU, LLP