```
 1                IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF NEW MEXICO

 3     UNITED STATES OF AMERICA,

 4          Plaintiff,

 5          VS.                         CR. NO. 15-4268 JB

 6     ANGEL DELEON, et al.,

 7          Defendants.

 8


 9          Transcript of Motion Proceedings before
       The Honorable James O. Browning, United States
10     District Judge, Albuquerque, Bernalillo County,
       New Mexico, commencing on November 29, 2016.
11

12     For the Government:  Ms. Maria Armijo; Mr. Matthew
       Beck; Mr. Randy Castellano
13
       For the Defendants:  Mr. Brock Benjamin; Ms. Cori
14     Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
       Mr. Robert Cooper; Mr. Dean Clark; Mr. Doug Couleur;
15     Mr. James Lahann; Mr. Orlando Mondragon; Mr. Noel
       Orquiz; Mr. Scott Davidson; Mr. Pedro Pineda; Mr.
16     Gary Mitchell; Mr. Larry Hammond; Mr. Santiago
       Hernandez; Steven Almanza; Ms. Mary Stillinger; Mr.
17     Richard Jewkes; Mr. B. J. Crow; Mr. Marc Lowry; Ms.
       Theresa Duncan; Ms. Amy Sirignano; Mr. Christopher
18     Adams; Mr. Michael Davis; Mr. Ryan Villa; Ms. Justine
       Fox-Young; Mr. Donovan Roberts; Ms. Erlinda Johnson;
19     Ms. Angela Arellanes; Mr. Wayne Baker

20
       For the Defendants (Via telephone):  Ms. Margaret
21     Strickland; Mr. Keith Romero; Mr. Nathan Chambers

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Good morning everyone.  I
 2   appreciate everyone making themselves available to me
 3   this morning.
 4              All right.  The Court will call United
 5   States of America versus Angel DeLeon, Criminal
 6   Matter No. 15-CR-4268 JB.
 7              If counsel will enter their appearances for
 8   the Government.
 9              MS. ARMIJO:  Good morning.  Your Honor.
10   Maria Armijo, Randy Castellano, and Matthew Beck on
11   behalf of the United States.
12              THE COURT:  All right.  Ms. Armijo, Mr.
13   Castellano, Mr. Beck, good morning to you.
14              So Mr. DeLeon is still a fugitive, so we'll
15   start with Defendant Joe Lawrence Gallegos.
16              MR. BENJAMIN:  Good morning, Your Honor.
17   Brock Benjamin on behalf of Mr. Gallegos.
18              THE COURT:  Mr. Benjamin, good morning to
19   you.  Mr. Gallegos, good morning to you.
20              THE DEFENDANT:  Good morning.
21              THE COURT:  And for Defendant Edward Troup.
22              MS. HARBOUR-VALDEZ:  Good morning, Your
23   Honor, Cori Harbour-Valdez and Pat Burke on behalf of
24   Mr. Troup.
25              THE COURT:  All right.  Ms. Harbour-Valdez,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Burke, Mr. Troup, good morning to you.
 2              And for Defendant Leonard Lujan?
 3              MR. CLARK:  Good morning, Your Honor.  Dean
 4    Clark on behalf of Mr. Lujan.
 5              THE COURT:  Mr. Clark, Mr. Lujan, good
 6    morning to you.
 7              And for Defendant Billy Garcia?
 8              MR. COOPER:  Good morning, Your Honor.  Bob
 9    Cooper and Jim Castle on behalf of Billy Garcia.
10              THE COURT:  All right.  Mr. Cooper, Mr.
11    Castle, Mr. Garcia, good morning to you.
12              THE DEFENDANT:  Good morning.
13              THE COURT:  And for Defendant Eugene
14    Martinez?
15              MR. COULEUR:  Your Honor, Doug Couleur for
16    Eugene Martinez.
17              THE COURT:  Mr. Couleur, Mr. Martinez, good
18    morning to you.
19              And for Defendant Allen Patterson?
20              MR. LAHANN:  Good morning, Your Honor.
21    Jack Lahann on behalf of Mr. Patterson.
22              THE COURT:  Mr. Lahann, Mr. Patterson, good
23    morning to you.
24              THE DEFENDANT:  Good morning, Your Honor.
25              THE COURT:  And for Defendant Christopher
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

4

```
1    Chavez?
2             MR. MONDRAGON:  Good morning, Your Honor.
3    Orlando Mondragon on behalf of Mr. Chavez.
4             THE COURT:  Mr. Mondragon, Mr. Chavez, good
5    morning to you.
6             And for Defendant Javier Alonso?
7             MR. ORQUIZ:  Good morning, Your Honor.
8    Noel Orquiz for Javier Alonso.
9             THE COURT:  Mr. Orquiz, Mr. Alonso, good
10   morning to you.  And is Mr. Chambers here yet?  He's
11   going to appear a little bit later by telephone?
12            MR. ORQUIZ:  Yes, sir, he had a court
13   hearing in Denver this morning, and he will call in
14   as soon as he is able.
15            THE COURT:  All right.
16            And for Defendant Arturo Arnulfo Garcia?
17            MR. DAVIDSON:  Your Honor, Scott Davidson
18   sitting in for Billy Blackburn for Mr. Garcia.
19            THE COURT:  All right.  Mr. Davidson,
20   Mr. Garcia, good morning to you.  Mr. Garcia, Billy
21   Blackburn is your normal attorney -- well, I don't
22   know if we should call Billy "normal," but he's your
23   usual attorney; right?
24            THE DEFENDANT:  He is.
25            THE COURT:  And you consent to Mr. Davidson
```



```
 1    being your attorney today?

 2              THE DEFENDANT:  Yeah, that's fine.

 3              THE COURT:  All right.  And for Defendant

 4    Ruben Hernandez?

 5              MR. PINEDA:  Good morning, Your Honor.

 6    Pedro Pineda on behalf of Mr. Hernandez.

 7              THE COURT:  Mr. Pineda, Mr. Hernandez, good

 8    morning to you.

 9              And for Defendant Jerry Armenta?

10              MR. MITCHELL:  Good morning, Your Honor.

11    Gary Mitchell on behalf of Mr. Armenta, who also

12    appears.

13              THE COURT:  Mr. Mitchell, Mr. Armenta, good

14    morning to you.

15              THE DEFENDANT:  Good morning.

16              THE COURT:  And let's get counsel that are

17    here in the courtroom for Defendant Jerry Montoya.

18              MR. HAMMOND:  Good morning, Your Honor.

19    Larry Hammond on behalf of Mr. Montoya, who is here

20    with me to my left.  And my co-counsel, Margaret

21    Strickland, I believe, is on the telephone.

22              THE COURT:  All right.  Mr. Hammond, Mr.

23    Montoya -- Ms. Strickland, are you there?

24              MS. STRICKLAND:  I am, Your Honor.

25              THE COURT:  Good morning to you,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Ms. Strickland.
 2            MS. STRICKLAND:  Good morning, Your Honor.
 3            THE COURT:  And for Defendant Mario
 4    Rodriguez?
 5            MR. HERNANDEZ:  Good morning, Your Honor.
 6    Santiago Hernandez on behalf of Mr. Rodriguez.
 7            THE COURT:  Mr. Hernandez, Mr. Rodriguez,
 8    good morning to you.
 9            THE DEFENDANT:  Good morning, Your Honor.
10            THE COURT:  And for Defendant Timothy
11    Martinez?
12            MR. ALMANZA:  Good morning, Your Honor,
13    Steve Almanza on behalf of Timothy Martinez.
14            THE COURT:  All right.  Mr. Almanza, Mr.
15    Timothy Martinez, good morning to you.
16            THE DEFENDANT:  Good morning.
17            THE COURT:  And for Defendant Mauricio
18    Varela?
19            MS. STILLINGER:  Good morning, Your Honor.
20    Mary Stillinger for Mr. Varela.
21            THE COURT:  All right.  Ms. Stillinger and
22    Mr. Varela, good morning to you.
23            And for Defendant Daniel Sanchez?
24            MR. JEWKES:  Good morning, Your Honor.
25    Richard Jewkes, representing Daniel Sanchez, who is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   present before the Court and ready to proceed.
 2            THE COURT:  All right.  Mr. Jewkes, Mr.
 3   Sanchez, good morning to you.
 4            For Defendant Conrad Villegas?
 5            MR. CROW:  Good morning, Your Honor.  B.J.
 6   Crow for Mr. Villegas, who is present.
 7            THE COURT:  Mr. Crow, Mr. Villegas, good
 8   morning to you.
 9            THE DEFENDANT:  Good morning.
10            THE COURT:  And for Defendant Anthony Ray
11   Baca?
12            MR. LOWRY:  Good morning, Your Honor.  Marc
13   Lowry and Theresa Duncan on behalf of Anthony Ray
14   Baca, who is present in the courtroom.
15            THE COURT:  All right.  Mr. Lowry, Ms.
16   Duncan, Mr. Baca, good morning to you.
17            THE DEFENDANT:  Good morning, Your Honor.
18            THE COURT:  And for Defendant Christopher
19   Garcia?
20            MS. SIRIGNANO:  Good morning, Your Honor.
21   Amy Sirignano and Christopher Adams on behalf of
22   Christopher Garcia.
23            THE COURT:  All right.  Ms. Sirignano, Mr.
24   Adams, Mr. Garcia, good morning to you.
25            And for Defendant Carlos Herrera?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. DAVIS:  Good morning, Judge.  Michael
 2   Davis on behalf of Mr. Herrera.
 3            THE COURT:  Mr. Davis, Mr. Herrera, good
 4   morning to you.
 5            And for Defendant Rudy Perez?
 6            MR. VALLE:  Good morning, Your Honor.  Ryan
 7   Villa on behalf of Mr. Perez, along with my
 8   co-counsel, Justine Fox-Young, for Mr. Perez.
 9            THE COURT:  All right.  Mr. Villa, Ms.
10   Fox-Young, Mr. Perez, good morning to you.
11            And for Defendant Andrew Gallegos?
12            MR. ROBERTS:  Good morning, Judge.  Donovan
13   Roberts on behalf of Mr. Gallegos.
14            THE COURT:  All right.  Mr. Roberts, Mr.
15   Gallegos, good morning to you.
16            And for Defendant Santos Gonzalez?
17            MS. JOHNSON:  Good morning, Your Honor.
18   Erlinda Johnson on behalf Santos Gonzalez.
19            THE COURT:  All right.  Ms. Johnson, Mr.
20   Gonzalez, good morning to you.
21            And I believe -- for Defendant Paul Rivera,
22   believe you're on the phone, Mr. Romero?
23            MR. ROMERO:  Correct, Judge.  Keith Romero
24   on behalf of Paul Rivera.
25            THE COURT:  Are you able to head back here?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. ROMERO:  I'm making my way back, Judge.
 2    I'm close to an hour out.
 3            THE COURT:  All right.  Mr. Romero, good
 4    morning to you.  Mr. Rivera, good morning to you.
 5    Where is Mr. Rivera here?  Okay.  There we are.  All
 6    right.  Good morning to you, Mr. Rivera.  We'll get
 7    him here as soon as we can.
 8            And for Defendant Shauna Gutierrez?
 9            MS. ARELLANES:  Angela Arellanes for Ms.
10    Gutierrez, who appears in person.
11            THE COURT:  Ms. Arellanes, Ms. Gutierrez,
12    good morning to you.
13            THE DEFENDANT:  Good morning.
14            THE COURT:  All right.  The United States
15    has filed a motion for me to call the other case so
16    we can have a status conference at the same time.
17    Anybody have any objection to that?  All right.  So I
18    will call for purposes of the status conference with
19    this case United States of America versus Mauricio
20    Varela, Criminal Matter 15-4269, and I believe the
21    only defendant that's not already in the case is
22    Defendant David Calbert.
23            MR. BAKER:  Good morning, Your Honor.
24    Wayne Baker on behalf of Mr. Calbert.
25            THE COURT:  All right.  Mr. Baker, good
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    morning to you.  Mr. Calbert, good morning to you.
 2              THE DEFENDANT:  Good morning.
 3              THE COURT:  All right.  I think that's
 4    everybody.  Anybody else need to make an appearance
 5    that I didn't get a name?  All right.
 6              All right.  I guess the first thing we
 7    should take up is the motion that Mr. Baca had filed,
 8    that many of you joined -- or some of you had
 9    joined -- in this case.  Mr. Baca filed it in a
10    number of cases.  As you know, yesterday in what we
11    call the Baca case, the 12, 13 defendant case, we had
12    a fairly lively lengthy discussion of that.  I don't
13    want to cut it off here, but I think Mr. Lowry has
14    explained to you that I'm going to try to put
15    together an opinion and order on what kind of
16    restrictions the marshals have requested, and try to
17    get that to you before I see you again, whenever that
18    may be.
19              In the meantime, I think Mr. Baca has given
20    me his assurance that he'll not try to communicate
21    with any of the defendants, co-defendants in this
22    case.  And I, as you can see, have not put any sort
23    of barrier, restriction -- I forgot what it was
24    called, but -- partition; partition, that's the
25    word -- partition, so he can see everything.  And the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   agreement was that there wouldn't be any
 2   communication among the co-defendants in the
 3   courtroom.  So this being a judicial proceeding,
 4   everybody would agree to that.  Counsel are not
 5   restricted from talking to other counsel.  We ask you
 6   to communicate through those -- through the counsel,
 7   at least here in the courtroom.  But those are -- the
 8   agreement we worked out until we -- until I could
 9   review the submissions that were made.  Some of them
10   were coming in in this case, I think last night and
11   this morning.  And so I'll try to put a petition -- I
12   mean an order and an opinion together on that.
13            Does anybody else want to say anything
14   about that?  I know that some people made some
15   submissions.  We had a fairly full and robust
16   argument yesterday.  We took some evidence, which
17   I'll consider, and probably making some findings of
18   fact.
19            All right.  The next thing I'd like to take
20   up is again -- yes, Mr. Hammond?
21            MR. HAMMOND:  Excuse me, your Honor.  I had
22   my bad hand up.
23            THE COURT:  All right.  That's all right.
24            MR. HAMMOND:  On behalf of Mr. Montoya, of
25   course, neither my co-counsel, Ms. Strickland, nor I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    were present yesterday.

2         I am unaware of any basis or any prior

3    conduct in the hearings where we've been in

4    attendance that have been in any way disruptive or in

5    any way interfere with the judicial process.  And I

6    often find, in the course of a long proceeding -- and

7    we're going to have some long ones here -- that

8    communication between all of us becomes part of just

9    surviving in a long case.  And there may be lots of

10   unforeseen circumstances that would cause us to wish

11   to communicate.

12        I have a personal rule that I don't

13   communicate with other people's clients, and I think

14   that's appropriate.  But certainly, the kind of

15   normal communication that one would typically expect

16   in a courtroom, I believe has happened, and ought to

17   happen.  I know of no basis for thinking that either

18   the decorum of the Court or the public safety will be

19   affected.

20        And, Judge, let me say one more word on a

21   personal basis on behalf of my client.  I'm sure the

22   Court is not aware of this, but five weeks ago my

23   client was pulled out of Torrance involuntarily by

24   the United States Marshals.  He was not told why he

25   was being pulled out.  He wasn't told where he was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

13

```
1    going.  He has been put now in a separate facility in
2    Santa Fe, where he has had no communication with any
3    of the people with whom he had daily communications
4    for months and months and months.  He still has not
5    been told why he was moved and why he's been
6    isolated.  He is certainly not a cooperator with the
7    Government.  I know of no basis for him to be
8    segregated.
9            But I think in his case personally, having
10   not seen any of his colleagues for now five weeks,
11   it's perfectly natural -- and I don't know if he
12   feels this way or not, so I'm just speaking on behalf
13   of myself -- I think it's perfectly natural to think
14   that he may want to communicate with people with whom
15   he spent a great deal of time over the last year.
16           So, on behalf of Mr. Montoya, I would ask
17   that the Court reconsider the order, at least in
18   those times when the Court is not in session.
19           THE COURT:  Well, I understand, but I am
20   going to rule consistently across the two cases until
21   I put an order together.  And I'll take your comments
22   into account while I put the opinion together.  And
23   maybe at the next hearing it will be different.  But
24   at least for today, we're going to operate under
25   those rules in both cases.  And I think I'm going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    be in another related case tomorrow.  So we'll keep
 2    those in place until I can get -- think about it in a
 3    fuller way, the concern of the marshals is that -- as
 4    we went into yesterday -- is that they're
 5    communicating about things beside just greetings.
 6    And I'll have to give that some thought.
 7              Let me get on the record that the Bonito is
 8    our overflow courtroom.  So I'm looking at a screen
 9    here that is showing the bench in the Bonita
10    courtroom, and I assume they're seeing me in the
11    courtroom.  So that's what they are seeing.  So we do
12    have that, if we need more family members and things
13    of that nature.
14              All right.  Anyone else want to speak on
15    the restriction issue before we move onto the motions
16    for today?
17              MR. CASTELLANO:  Yes, Your Honor, Jim
18    Castle.
19              THE COURT:  Mr. Castle.
20              MR. CASTLE:  To the extent the Court is
21    relying upon testimony in a separate proceeding and
22    statements by counsel in a separate proceeding, we'd
23    ask that that transcript be made part of this record.
24    If the Court is going to rely upon it in its
25    decision, which it sounds like the Court is.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  That would be fine.  I don't
 2    know what you mean by "made part of this record."
 3    Mr. Baca's motion was filed in three cases, so I'll
 4    issue an opinion in the three cases.  It will
 5    probably have a caption of all three cases on it, and
 6    I'll be citing to that.  But I guess you can get the
 7    transcript out of the other case, if you want it.
 8    But I'll be relying on it.
 9              Anybody else?
10              All right.  Let me take up an issue --
11    again, Mr. Baca filed a joint unopposed motion for
12    disclosure of grand jury and petit jury data to
13    enable him to inspect and photocopy data and
14    procedures used in the selection of the grand and
15    petit juries in the Las Cruces Division of the
16    District of New Mexico.  It's unopposed, but we
17    didn't have the position of all parties.  So just so
18    that -- before we launch into this, does anybody have
19    any opposition to Mr. Baca's motion?  All right.  Not
20    hearing any, then I will grant that motion.  And I
21    think we talked about it yesterday.  I think Mr. Baca
22    is going to -- his counsel are going to work with the
23    United States to put together an order, which will be
24    submitted to me and I'll sign it.
25              All right.  I guess the first motion, then,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   to take up is the joint motion to vacate the March

2   2017 trial setting, impose a discovery schedule

3   order, and then a request for a hearing.  Yesterday

4   what we did is we got the concurrence of all of the

5   counsel in the Baca case, we got their agreement to

6   move their trial, which I think was the sticking

7   point for the motion in this case.  So they have

8   agreed that if we will try their case in 2017,

9   they're agreeable to moving it.  So we set a trial

10  date of November 2 -- November 6, 2017, so we're

11  hoping that we will be able to live up to the

12  commitment that we made to that group of defendants

13  and parties, but particularly the defendants, some of

14  whom were interested in either moving to sever or

15  accelerating their Speedy Trial Act rights.  But they

16  were all in agreement they would consent to the

17  movement of that.

18          So with that, I'm wondering if there is any

19  remaining issues with this motion, or whether we're

20  prepared to grant this motion, and then set a new

21  trial date.

22          Mr. Villa, I think this is largely your

23  product.  If you want to speak and tell me if there

24  is any more issues, or if there are issues, what they

25  are.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. VILLA:  Thank you, Your Honor.
2              THE COURT:  Mr. Villa?
3              MR. VILLA:  I think that, you know, if the
4   Government is not opposed to moving our trial date
5   then I won't spend a whole lot of time on why it
6   should be moved.
7              I can alert the Court to a few things,
8   since September of 2016, and that the tablet issue,
9   which concerns me in terms of when to set the trial
10  date.  So I don't -- I can't speak for all of the
11  defendants, but I know that Mr. Perez was supposed to
12  receive his tablet Wednesday, according to a letter I
13  received from Mr. Aoki, and has not received it.  So
14  I think perhaps that's the starting point to
15  determine when can we schedule this thing; the fact
16  that Mr. Perez, and I think a lot of other defendants
17  in this case, don't have their discovery yet.
18              Now, certainly, it doesn't mean we haven't
19  been talking about the case and that sort of thing.
20  But I think they need, in the first instance, to have
21  their discovery and review it.
22              THE COURT:  Have you been in touch with Mr.
23  Aoki and found out what the problem is?
24              MR. VILLA:  I have not, Your Honor.  The
25  letter I received, I want to say Monday last week,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    indicated he would have it Wednesday.  And today was
2    the first opportunity I had to ask Mr. Perez.
3              THE COURT:  Is Wednesday being tomorrow?
4              MR. VILLA:  Wednesday of last week, the day
5    prior to Thanksgiving.  And so today was the first
6    chance I had to ask Mr. Perez if he has received it,
7    and he has not.  And I believe the other defendants
8    who are also housed in Torrance County have not
9    received them, with the exception, perhaps, of Mr.
10   Gallegos, because of his severance.
11             So I think there is an issue there.  I know
12   part of the reason the tablets have not been provided
13   is there continues to be discovery production that
14   needs to be uploaded and that sort of thing.  And I
15   think that's -- sort of the other issue is the United
16   States is continuing to produce discovery.  And it's
17   unclear whether this is new material or has just been
18   obtained, or it's material that perhaps should have
19   been produced in the summer, when the Court ordered
20   it.  I can't speak to that.  And I can't speak to
21   when --
22             THE COURT:  My sense is that this new
23   material is sort of -- we're getting down to the
24   dregs.  It's not voluminous; it's just new materials
25   that are being found?  Is that your impression?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. VILLA:  Yeah, I get that sense.  And
2    some of it is in response to some of the hearings
3    we've had, which we appreciate the Government
4    producing that in response to these Court's orders.
5    But it also seems to be happening fairly regularly,
6    these new productions.  You know, sometimes every
7    week, sometimes every couple of weeks, the new
8    material is provided.  And it's provided directly to
9    counsel.  So there is not the issue with us getting
10   the discovery from Mr. Aoki.  But there is the issue
11   of our clients not having the opportunity to really
12   sit down and review it on their own, which I think is
13   critical to preparing for trial, and critical to the
14   other issue that I want to raise with the Court,
15   which is the scheduling order.
16             Because I think being able to review that
17   discovery on their own, the clients individually, and
18   then sit down with us and talk about what are the
19   steps we need to take, in order to do the
20   investigation we need to do and obtain, for instance,
21   discovery that we need to produce as part of our
22   obligation for reciprocal discovery, the motions we
23   need to file, and that sort of thing, all gets bogged
24   down because of the lack of our clients having their
25   discovery, and being able to review it on their own,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    reflect on it, without counsel there.  You know, as

2    you can imagine, when we're there with our clients,

3    there is a lot of other things we're talking about.

4    And they don't necessarily have the time to sit and

5    review the discovery, which is, for Mr. Perez, the

6    only opportunity he ever has is when myself or

7    Ms. Fox-Young or another one of our staff are there

8    with him to review discovery.

9              And I know the Court entered a scheduling

10   order with the March trial date in mind.  And I

11   assumed, hopefully correctly, that those dates would

12   change along with whatever our new trial date is.

13   There was a proposed scheduling order submitted via

14   the email, the defendants had spent a great deal of

15   time putting together, and has quite a bit more in

16   terms of dates and anticipating hearings and things

17   like that, that I would ask the Court to reconsider

18   imposing.  And that scheduling order had deadlines

19   that weren't a specific date.

20              So, for instance, it would be that the

21   first was a Government's discovery deadline, 240 days

22   before trial.  The Government's expert witness

23   notices, and some discovery motions 220 days before

24   trial.  So it wasn't set to a particular date.  It

25   was set to whenever the Court would set the trial.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              I don't know that there is necessarily
 2    agreement among all the defendants about --
 3              THE COURT:  But that was the defendant's
 4    order, wasn't it?
 5              MR. VILLA:  No.  The proposed scheduling
 6    order there was agreement.  What I'm saying now is I
 7    don't know that there is agreement about when to move
 8    the trial date.  I imagine the Court has in mind when
 9    it wants to do it, basically.
10              THE COURT:  Well, I feel some commitment to
11    the folks yesterday.  I mean, some of those guys
12    consented, so they wanted to help y'all out by moving
13    their trial.  But they wanted to get it done.  So I
14    want to get it done before November 6, so that I can
15    start that trial.
16              MR. VILLA:  So you're saying you want to
17    schedule this trial before November of 2017?
18              THE COURT:  Right.
19              MR. VILLA:  Okay.  And I don't know, as
20    Mr. Perez is charged in Counts 6 and 7 along with
21    eight others -- I can't speak for all of them, I can
22    speak for Mr. Perez -- that I think that's plausible.
23    And I'm assuming some things like severance and other
24    issues are going to sort out when others involved in
25    this indictment may have their trial.  But I can't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    speak for everybody in terms of whether they prefer

2    trial before November or after.  I know that there

3    are some that would rather have their trial after

4    November 2017.  And I think there is good reasons, in

5    addition to what I've already stated.  It doesn't

6    involve our Counts 6 and 7.  That count was --

7    occurred in 2014.  There was a -- essentially, on the

8    eve of a state trial, when the indictment came.  And

9    so I think our case might be a little more teed up,

10   if you will, for trial.  But some of the other counts

11   are -- date back to 2001 -- would involve

12   significantly more investigation and work.

13           And so I don't speak for everybody when I

14   say that a trial prior to November 2017 might be okay

15   for Counts 6 and 7.  But I do think that I would ask

16   the Court to impose the proposed scheduling order

17   that defendants submitted, or some variation of that,

18   depending on when the Court actually does set the

19   case for trial.  Or if the Court wants to stay with

20   the scheduling order that it imposed for the March

21   trial date, that we move those dates accordingly,

22   depending on when it sets the trial.

23           So if you set the trial in the summer of

24   2017, that would be moving it, say, four months.

25   Then we would need to move the other dates another

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    three or four months.  And there are some other dates
2    that I think we've all thought of that may need to be
3    added.  I'm not sure we can resolve that today.  We
4    can potentially do that down the road.
5             But those are my concerns, Your Honor.
6             THE COURT:  All right.  Thank you, Mr.
7    Villa.
8             I probably need to hear from the Government
9    here.  But anyone else want to say anything?
10   Mr. Hammond?
11            MR. HAMMOND:  Your Honor, two points.  One,
12   on the tablet question you asked about, I did contact
13   Mr. Aoki's office yesterday, and they advised me that
14   as to a large number of tablets, including my
15   client's, Mr. Montoya, the tablets had not yet come
16   back from the Department of Corrections.  We've been
17   told that they were expected any day, but have not
18   yet been received.  When they are received, Mr.
19   Aoki's staff says they can load the remaining
20   discovery that they now have on the tablets, and send
21   them back.  How long that will take really depends,
22   first of all, on when the tablets are actually
23   delivered.  And, as of yesterday, they had not been.
24   I would expect that, at the very best, if we had the
25   tablets in Seattle now, we might have them loaded and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

24

```
1    sent out to the defendants sometime in the next

2    couple of weeks.  But we've had numerous delays here.

3    And my recommendation is that we not start the

4    scheduling order deadline until we, in fact, have

5    those tablets back, and the Government has said that

6    it's through making its discovery.

7           Several lawyers here worked together to

8    draft the scheduling order that Mr. Villa mentioned.

9    And we started it with the idea that we could

10   accomplish most of the things that need to be

11   accomplished in eight months, in 240 days, which I

12   think is also about the same time schedule that the

13   1613 people had suggested.  But that begins with the

14   date that the Government concludes its discovery,

15   and, presumably, our clients have it so that they can

16   review it.

17           So our suggestion would be, at the least,

18   that we not set a date until we know that the

19   discovery has been loaded and received by the

20   clients, and that we then impose a scheduling order

21   that works from that 240-day period backwards.  And I

22   think, if all of those things happened, we probably

23   could accommodate a trial that might appear -- that

24   might occur before the 1613 trial.  There are a lot

25   of moving parts in that.  But I think at least that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    a decent starting point.

2              THE COURT:  All right.  Thank you, Mr.

3    Hammond.

4              Anyone else?  Mr. Davis?

5              MR. DAVIS:  Thank you, Judge.

6              Michael Davis on behalf of Carlos Herrera.

7    Judge, I typically proceed in a hearing like this

8    with the notion that you can't put a foot in a shut

9    mouth.  But I feel like I should at least alert the

10   Court to some concerns I have with a trial setting in

11   this matter within the next year involving Carlos

12   Herrera.

13             As the Court may know, I was -- Mr. Herrera

14   was brought in late in 4268, and I've been on the

15   case for about five-and-a-half months now.  He just

16   got his tablet last week.  So an attempt to go

17   through the discovery has been extremely difficult

18   and cumbersome for us, primarily because he is not in

19   the Sandoval County Detention Center, which is 15

20   minutes from my office; he is in the Otero County

21   prison facility, which is 300 miles from my office.

22   So it's difficult for me to get down there to see him

23   more often than two times a month.  When I go to see

24   him, those meetings are difficult.  Because Mr.

25   Herrera has been in prison for 17 years; as a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    consequence, he has a wealth of information regarding

2    most of what has been alleged in the indictment.  And

3    there are literally hundreds of players with a

4    variety of nicknames that make it difficult to follow

5    some train of thought with regard to developing a

6    defense in this case.

7            Additionally, with regard to Mr. Herrera

8    he's charged in Counts 6 and 7, the same counts with

9    Mr. Villa's client, Mr. Perez, involving the death of

10   Javier Molina.  It's also clear that Mr. Herrera was

11   not directly involved in the death of Javier Molina,

12   because he was in an adjoining cell block, A pod.

13           So we've been trying to put together the

14   Government's evidence against Mr. Herrera.  And it's

15   extremely difficult when we don't have access to our

16   client like we normally would.  He was initially at

17   Torrance, when we first got in the case, and shortly

18   after the first hearing we had in the case, in June,

19   he was transferred in Otero County.  And I'm

20   perfectly willing to go and visit him.  But I wanted

21   to alert the Court to sort of the unique situation we

22   face with Mr. Herrera.  I can tell you that, since he

23   got his tablet, I haven't had a chance to meet with

24   him.  I hope to go down and see him next week, to

25   start going through stuff.  He's sat here next to me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   and immediately started going off and giving me lots

2   of information, because it's the first chance he's

3   had to at least start going through the tablet.

4           So that process, at least with regard to

5   Mr. Herrera, is going to take considerable time for

6   us to go through everything.

7           So I just ask the Court to appreciate the

8   logistics of the discovery issue in the case.  It's

9   not just the wealth of the discovery; it's not just

10  the issues that Mr. Hammond raised.  It's a matter of

11  the practical ability to meet and confer with our

12  clients, and then follow up with information he gives

13  us to my investigative team, my co-counsel, so we can

14  follow up with that, and hopefully, prepare a good,

15  adequate defense for him.

16          So I just wanted to alert the Court to

17  those matters.

18          THE COURT:  All right.  Thank you, Mr.

19  Davis.

20          Anyone else before I hear from the

21  Government?

22          Mr. Castle?

23          MR. CASTLE:  Yes, Your Honor.  Just so -- I

24  think the Court is contemplating very clearly that

25  4268 trial ought to proceed after 1613.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            THE COURT:  Well, that's what I want to
2    talk to the Government about.  I guess everybody --
3    it's always been set before the other one.  Yesterday
4    we were working under that assumption.  But, you
5    know, I guess I need to explore that assumption.  But
6    I think you're right.  I think everybody has been
7    working under that assumption.
8            MR. CASTLE:  And I wanted to give the Court
9    some thoughts in regards to that.  1613 has 12
10   defendants; I believe there is 4 counts.  Obviously,
11   there is numerous overt acts that are charged.  This,
12   4268, has over twice the number of defendants.  The
13   amount of discovery is also double what it is in
14   1613.
15            In the last month and a half since we were
16   last here, the DeLeon case, the 4268 case, received
17   10,227 pages of new discovery, and 99 additional
18   audiotapes.  In the Baca case, they received 1/5 of
19   that new discovery, in page numbers.
20            The case against these defendants in this
21   particular indictment is extremely complex, and I
22   think that's been described before.  But we're going
23   to have numerous issues concerning admissibility of
24   co-conspirator statements, disclosure of informants.
25   For example, I think I told the Court last time that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    there was at least 376 separately identified sources

2    of information, or informants, whatever you want to

3    call it, some type of non-law enforcement providers

4    of information.  The vast majority, over 90 percent

5    of those individuals have not been identified.

6           Just to file motions to disclose those

7    informants would take reams and reams of paper.  And

8    I believe that my analysis is that almost all of

9    these individuals provide exculpatory information, at

10   least with regard to one or more of the defendants.

11   For example, there will be people that will

12   describe -- who are members of the SNM organization,

13   and they won't mention three or four of the

14   defendants or more in this indictment.  In my

15   opinion, that would be exculpatory with regards to

16   those three or four defendants.

17           So the amount of litigation that has to

18   take place between now and when we proceed to trial,

19   I think, is going to be enormous.  And I think we've

20   only seen the tip of the iceberg on it.  And because

21   this case has so many defendants and so many -- what

22   I believe would be subconspiracies, different overt

23   acts, different distinct criminal episodes, we're

24   going to have -- basically, this is the tip of the

25   iceberg in litigation.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1         And so I think -- well, at least our
2    opinion is that we're not going to be prepared to
3    proceed in this calendar year.  It would be nice to
4    do so, but I don't believe that's realistic.  Now, if
5    the cases were severed, there might be individuals
6    that could proceed to trial earlier than that, such
7    as Mr. Villa suggested with regard to his client.
8         But for our client, for example, we have to
9    investigate two homicides that happened 15 years ago.
10   And right now we're not being provided with the
11   identities of witnesses and things of that nature,
12   because the Government is relying upon the Jencks
13   Act, and not disclosing that.  That makes our job
14   much more difficult.
15        I can tell the Court the last disclosure
16   that we received is on November 14 of this year.  My
17   review of the disclosure to date -- I believe there
18   is more to come, because what was promised to the
19   parties and the Court previously has not all been
20   disclosed.  And I'm not blaming them.  They,
21   obviously, took on a large production agreement when
22   we were last here.  It's just, I think that we're
23   going to see more and more materials.  And until -- I
24   join Mr. Hammond, until we see what all those
25   materials are, it might be premature to decide on a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   date.

 2            THE COURT:  All right.  Thank you, Mr.

 3   Castle.

 4            MS. HARBOUR-VALDEZ:  Your Honor, I just

 5   received an email from Mr. Aoki on the status of the

 6   tablets, if you'd like me to update the Court.

 7            THE COURT:  You may.

 8            MS. HARBOUR-VALDEZ:  Mr. Aoki says that 15

 9   defendants currently have their tablets at their

10   facilities.  His office received six reconfigured

11   tablets back from the Department of Corrections

12   yesterday.  Five of those have been loaded with

13   discovery and are being shipped out today; the

14   facilities should receive them on Friday.  One of

15   them had an error message pop up when they tried to

16   copy the discovery on it, so it was shipped back to

17   the Department of Corrections.  The Corrections

18   Department still has 17 other tablets they are

19   reconfiguring.  They are continuing to send them to

20   Mr. Aoki on a rolling basis, six at a time.

21            So that's the status now.  I don't know why

22   the rolling basis.  Maybe the Department of

23   Corrections could answer the Court's questions on

24   that.

25            THE COURT:  All right.  Thank you, Ms.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Harbour-Valdez.
2              All right.  Anything before we hear from
3    the Government?
4              MR. LOWRY:  Your Honor, briefly.
5              THE COURT:  Mr. Lowry?
6              MR. LOWRY:  Your Honor, I'd like to echo
7    the comments that my colleagues have made today,
8    especially Mr. Hammond and Mr. Davis' points.  One, I
9    don't think -- well, I know that the Government
10   hasn't finished producing Rule 16 discovery to date.
11             During yesterday's hearing, you heard the
12   Government testify about intercepted jailhouse calls
13   with my client, and although I think a single call
14   has been produced, obviously those would all be
15   statements of my client that have yet to be produced,
16   along with other categories of evidence that I'll go
17   over with the Government later.  But my concern is
18   equivalent with Mr. Hammond's, that we really haven't
19   finished the initial disclosures from the Government.
20   And like Mr. Davis, my client is in Las Cruces; he's
21   3 hours away from my office.  And even when we get
22   there, we're put in a multipurpose room, where we
23   have to vacate that room for magistrate court
24   hearings every day.  So it makes for a very choppy
25   visit.  And it's complicated and lengthy to make that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    happen.  And we try to make that happen with

2    regularity, but it's just going to take a lot of time

3    to digest the material.

4            Complicating that is my client has probably

5    had his tablet in the past for -- I think I'm being

6    generous when I would suggest 30 days.  But as you

7    can imagine, my client has been incarcerated for a

8    number of years, and his familiarity with technology

9    is very minimal.  And given that, he inadvertently

10   started deleting the discovery off of the tablet, and

11   frankly, got so concerned that he would lose all of

12   it, he quit using the tablet until we could get down

13   and instruct him.  And we're waiting for the tablet

14   to get back to him, and that hasn't happened.

15           And so I would share my colleagues'

16   concerns that, given the volume of material we need

17   to go through, it's just going to take an inordinate

18   amount of time to do that.  And I'm concerned that,

19   as Mr. Castle said, the next calendar year may not be

20   sufficient to complete the review of discovery, and

21   then the accompanying litigation that's going to be

22   precipitated out of that review.

23           Thank you, Your Honor.

24           THE COURT:  All right.  Thank you, Mr.

25   Lowry.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Anyone else from the defendants before we
 2   hear from the Government?
 3          All right.  Ms. Armijo?
 4          MS. ARMIJO:  Your Honor, we had agreed to
 5   the continuance in this case that Mr. Villa
 6   presented, if the other case, the Baca case, was
 7   continued, and that's why we had agreed to the
 8   continuance of the Baca case and we had agreed to the
 9   continuance in this case.  And our understanding was
10   at the time they were just asking that it be
11   continued to next summer, 2017.
12          Hearing now that they don't want to try
13   this case until the year 2018, or that they want Baca
14   to replace the DeLeon matter is, frankly, quite
15   surprising.  The Baca case, although it has fewer
16   defendants, it has three overlapping defendants; it
17   has 240 overt acts.  It has several murders that we
18   have charged in this case as predicate overt acts in
19   that case, which we will need to prove along with
20   numerous other incidents.
21          So by no means is the RICO/Baca case a walk
22   in the park in comparison to this case.  So -- it was
23   indicted several months afterward.  And our position
24   is that this case should go before the Baca case.
25   With the exception of -- we could talk about what we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   refer to as the 4269, the PNM case.  It has -- four
 2   defendants are here.  It occurred in Santa Fe.  I
 3   guess I would like to know what the positions are of
 4   the attorneys of that case.  Mr. Calbert is here for
 5   the first time.  I would like a trial date set in
 6   that case as well.
 7           As far as the rolling discovery, as you
 8   know from the last Court hearing that we had, we had
 9   defense motions where they requested STIU files; they
10   requested recordings, STIU files -- and what was
11   other bulk -- there was very specific things that
12   they had requested, that we had agreed to go ahead
13   and give, and that was the bulk of that discovery,
14   and we've been working very hard on it.
15           As the Court indicated, the vast majority
16   of the discovery is out, but discovery is going to
17   keep going on.  We're not going to hold on anything.
18   If it's Brady materials, we have to disclose it right
19   away.  We are continuing to serve search warrants in
20   this case.  Yesterday we served a search warrant on
21   one of the defendants that was in court.  Obviously,
22   we're going to disclose that.  We anticipate serving
23   another search warrant on a defendant that was in
24   court yesterday.  We have other people -- we are
25   continuing to investigate this.  We're continuing to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    monitor jail calls.  So discovery will be on an
 2    ongoing, rolling basis as we get things.  But the
 3    vast majority -- Mr. -- I'm trying to see if I have
 4    the date -- I know that the calls that were referred
 5    to yesterday in the hearing regarding Mr. Baca have
 6    long ago been disclosed.  I will get that date and
 7    provide it to him a little bit later.
 8              But we have disclosed all of those items.
 9    We've disclosed thousands of pages.  So discovery is
10    going to keep happening.  The issue as far as the
11    discovery order, the discovery, when we were last
12    here, I believe Ms. Sirignano had said that she was
13    going to get with the United States that day and
14    provide what the defense had wanted.  I never heard
15    from her at all on that issue.
16              So the United States provided, as the Court
17    had required, on the deadline discovery orders that
18    we had worked out with Ms. Duncan as far as dates and
19    what was needed.  Obviously, Ms. Duncan could not get
20    approval from the defense.  But that is -- what the
21    United States submitted was something that we had
22    been working with a representative from the defense.
23              Their discovery order says the
24    Government -- from the Government's deadline 240
25    days.  It's just not workable.  That's eight months.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    That's even past July of next year, if I'm correct,

2    or just about -- to start the scheduling order.

3           So -- oh, that was the majority thing they

4    had wanted at the last court hearings.  I'm sorry, I

5    was having a blank.  They had wanted all the old FBI

6    files, for us to go through.  And that was done.  The

7    FBI came down to Las Cruces, and we went through

8    banker boxes.  And so a lot of old files were

9    produced at their request.  We don't think they were

10   relevant, we don't think that they were necessary.

11   But based on the Court's ruling and our agreement, we

12   went ahead and did that, and that's the vast majority

13   of the discovery that was also sent recently.

14           So we would request that the Court set a

15   trial date; that it is as we had initially discussed,

16   next summer; that we can change the dates to reflect

17   that new date on the discovery order that's already

18   in place.  In this case, which has a defense deadline

19   for reciprocal discovery.  And the defense should

20   know that discovery is going to be ongoing, as we get

21   things, or as they make requests.  There is another

22   motion today -- well, I think a couple motions

23   today -- regarding discovery.  So that is where we

24   stand, Your Honor.

25           I cannot speak to the tablets, because that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    is something that we're left out of.  Today I'm
2    hearing for the first time that there are issues
3    again.  So we're not involved with Mr. Aoki, and how
4    the discovery has gone, or anything else.  I know
5    that we were involved a little bit with regard to Mr.
6    Gallegos -- or Mr. Garcia, I should say -- in regard
7    to his tablet, given that he had had a trial date
8    that was November 30 at the time.  But other than
9    that, the United States has kept out of it.  So we
10   really don't have anything to say as far as that.
11            THE COURT:  The number the people keep
12   giving me, there has been about 40,000 documents
13   produced.  Is there going to be any more production
14   by the Government of anything, say more than 1,000
15   pages, other than what may be ordered or required in
16   the future, or on an ongoing basis?  I'm not talking
17   about telephone calls, future search warrants.  But
18   do you plan any sort of large document production?
19   And I'm defining it myself as 1,000; it might be
20   something else.  But do you expect to have any other
21   large document drops?
22            MS. ARMIJO:  No.  What I would anticipate
23   is things that we have from these motions, jail
24   calls, continuing search warrants, or interviews.
25   And I mean, if the defense wants us to hold off on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    things, which I don't think they do, we can certainly
 2    hold off for big drops.  But basically, now, as we
 3    get things, we're disclosing them.
 4            And one other point about the discovery.
 5    To say that the Baca discovery is far less is really
 6    not true.  Because a lot of the discovery in Baca was
 7    already disclosed in DeLeon, because we have a lot of
 8    the overt acts that are charged in DeLeon that are
 9    charged in Baca.  So, as this Court knows, discovery
10    in all the cases, including Mr. Garcia's case,
11    including in the PNM case, the 4269, it's going to
12    all parties here.  And so just because one case
13    number has significantly more doesn't mean it's not
14    related to the others, especially given the
15    racketeering nature of the case.
16            THE COURT:  How long do you think this
17    trial is going to take?
18            MS. ARMIJO:  Well, it depends on severance
19    and other issues.  But I would assume, probably when
20    we sort things out -- and I would anticipate some
21    people pleading guilty -- I would say two months.
22            THE COURT:  So you're basically requesting
23    a trial no later than starting in September?
24            MS. ARMIJO:  Correct.  And what I had been
25    anticipating was July, since we had vacated the July.
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 820-6349                                     FAX (505) 843-9492
                                                              1-800-669-9492
                                               e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    But yes, that is correct.

2              THE COURT:  So this is just fill-in for the

3    Baca case?

4              MS. ARMIJO:  That was my initial

5    understanding, when we had originally talked is that

6    they had wanted to bump them.  And that's why I

7    brought up the issue yesterday.  Certainly, we can

8    start in August.  But we want to build in a little

9    bit of time, because I don't know, but the

10   Government -- three attorneys here are also in the

11   Baca case.

12             THE COURT:  All right.  Anything else, Ms.

13   Armijo?

14             MS. ARMIJO:  No.

15             THE COURT:  How about from the defendants?

16   Anything else anybody want to say on this?

17             All right.  Mr. Villa?

18             MR. VILLA:  Your Honor, I perhaps should

19   have mentioned this when I was first up here, but

20   just by way of example with respect to the discovery

21   that I'm more familiar with, the Javier Molina

22   murder.  On October 18, 2016, the Government produced

23   to Mr. Aoki, which then later gets produced to us, a

24   number of documents, maybe 100 documents or so, that

25   I would classify as something that I think the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Government would have had in their possession prior
 2   to the indictment in this case, or at least the
 3   superseding indictment in this case, which brought in
 4   Mr. Perez and some of the others.  And so, for
 5   instance, there were 15, 16 audio and body recordings
 6   of -- allegedly of Mr. Herrera and Mr. Perez, my
 7   client, recorded by a confidential human source.  And
 8   based on the other discovery that I've reviewed, and
 9   what can be heard from some of these recordings, I
10   believe that this information was in the Government's
11   possession before they indicted my client, and
12   perhaps one of the reasons why they indicted my
13   client.
14            And I can't speak for why it wasn't
15   produced prior to October 18, 2016.  But I guess
16   that's the concern I have is, you know, what else is
17   out there?  When are we going to get it?  And I think
18   that was part of the reason why we requested at the
19   time we filed the motion and discovery scheduling
20   order.  You know, I think, if you piece this case by
21   the different counts, we might be able to have a more
22   reasonable idea, for instance, when the discovery is
23   going to be due, or when we can try the case.  And
24   that depended on severance and that sort of thing.
25            But there never really was an agreement, at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   least on my part when I filed the motion, that this
 2   case's trial would be contingent on 1610's trial.
 3   That was what Ms. Armijo conveyed to me that she
 4   wanted, was essentially an agreement that, if 1610
 5   moved, we would move.  And that agreement was not
 6   something we were willing to do.  And that's attached
 7   in an email in my motion; essentially, we weren't
 8   going to make our continuance contingent upon theirs.
 9            That's all I have, Your Honor.
10            THE COURT:  All right.  Thank you, Mr.
11   Villa.
12            Ms. Sirignano?
13            MS. SIRIGNANO:  Your Honor.  Just briefly.
14   I presented the Government with an 18-page discovery
15   letter in Mr. Garcia's cases, both in 15-CR-4275,
16   15-CR-4268, and 16-CR-1613.  And the Government did
17   state today that they're producing discovery in all
18   three cases, and that we all have it.  And this
19   herein lies the -- by and large the biggest problem
20   that all of us are having, is the way that the
21   Government is putting these productions together.
22   Because, as the Government has stated, some of these
23   cases are predicate acts for the RICO case in 1613.
24   So it's not evident from their productions and their
25   discovery letters which documents go for each count
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    in, say, 4275 or 4268, and they also apply to the

2    overt acts in 1613.

3           And so it's not that Mr. Aoki or the

4    Department of Corrections has any control over it.

5    It's the way that this is all being produced and

6    commingled that is requiring us, as counsel, to go

7    through this with the clients, and make sure that we

8    have all the evidence relevant to each count, each

9    predicate act, and of course each overt act in the

10   indictment.

11          Also, I just want to briefly say that I

12   don't think I'm the only one that believes that this

13   tablet situation isn't working.  Clearly, Your Honor,

14   it's not.  This was a requirement from the

15   Government, back before Judge Gonzales early on in

16   this case, based on their theory of safety, and the

17   co-defendants passing information among each other.

18   Their solution was to have these tablets.  There was

19   delay in obtaining the tablets.  There was delay in

20   the 1613 people receiving their tablets, based on

21   budgetary constraints.  We were told July of this

22   year; then August.  Here we are in November.  For the

23   Government to stand up and say, Hey, we don't have

24   any control over this, this is Mr. Aoki and the

25   Department of Corrections, it just seems a little bit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

44

```
1    concerning to us that we're having to make hard
2    copies of things that we get from the November
3    productions, going to the jails, spend the time,
4    allow our clients to look at the new production, and
5    then they're still waiting and waiting for tablets.
6              Your Honor, I don't know what the solution
7    is here.  This was something the Government wanted to
8    assuage any safety concerns.  Then their argument
9    recently was that the clients are sharing tablets
10   with each other.  There is nothing in the protective
11   order that says that they can't show their colleagues
12   or their co-defendants their tablets.  There is
13   nothing wrong with that.  They're sitting around
14   waiting for discovery.  And so I would just like to
15   propose -- have the Government come up with a
16   solution, since this tablet thing is completely
17   delaying the whole process here.  Thank you.
18             THE COURT:  Thank you, Ms. Sirignano.
19             Anyone else from the defendants?  All
20   right.  Well -- Mr. Davis?
21             MR. DAVIS:  Just trying to be brief.  I
22   forgot to mention, because of the protection order
23   when I go down to visit Mr. Herrera, I can't give him
24   a stack of documents and say, Review these, and when
25   I come back in two weeks, we can go through it.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    can't do that.  So I have to -- and my investigative

2    team -- take documents down there and try and make

3    sense of allegations that are made in certain of

4    those documents.  It's just very cumbersome.

5    Obviously, it's daunting.  It's an exhausting

6    experience.  It's difficult to spend more than four

7    or five hours doing this at one time.  So,

8    logistically, it's just difficult, and it's very

9    difficult.

10           Additionally, I want the Court to know that

11   this discussion we've been having about volume of the

12   discovery and the problems, that's just the stuff

13   that we get from the Government.

14           Once, in the course of this case, the

15   investigators for all the defendants in this case, we

16   learn who the CIs are, who they may be, we're going

17   to be asking for Rule 17 subpoenas, doing our own

18   investigation, acquiring our own documents.  It's

19   going to take time to obtain those materials, get

20   them back, figure out how we want to use those

21   documents.  They may be offense reports, they may be

22   court transcripts, there may be witness testimony,

23   there may be witnesses involved in the cases that the

24   CIs were involved in that we may want to interview

25   and call as witnesses.  That's going to take a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   tremendous amount of time.

 2            So it's not just a matter of getting the

 3   discovery in a usable manner from the Government.

 4   And I appreciate Mr. Castellano and Ms. Armijo's

 5   situation with regard to the volume of the case.  But

 6   I just alert the Court to these matters and I ask the

 7   Court to take that into account when you're

 8   considering scheduling a trial next year in this

 9   case.  I just don't believe that that's going to be

10   possible for the defendants in the case to properly

11   prepare the case.

12            THE COURT:  All right.  Thank you, Mr.

13   Davis.

14            Anyone else?

15            Well, I do think the Government's consent

16   here to move this trial is premised on the fact that

17   we're sliding Baca back, and DeLeon is going to move

18   forward and sort of take its place.  So I think we

19   had that much of agreement.  And I realize people

20   want different things, and I may have to deal with

21   that down the road.  But I'm not inclined to put this

22   in orbit and not set a trial date.  I'm not inclined

23   to undo the scheduling order that we had so much

24   difficulty getting in place.

25            So I'm going to set the trial July 10th.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   All the problems that you're telling me, I realize
 2   are out there.  I'm reading them.  I'm hearing about
 3   them.  Not just in this case, but the others.
 4   Everybody will have to work extremely hard to make it
 5   take place.  And if we get to the point where it
 6   can't take place, we'll deal with it at that point.
 7   But I do think that we need to stick with the
 8   schedule that we hammered out in this case, hammered
 9   out in Baca, and take the agreement that we have, and
10   see if we can try to move this case along.
11           Did you have other deadlines that you
12   wanted to try to impose, or are you comfortable with
13   the scheduling order that we have?  Do we need
14   anything else, Ms. Armijo?
15           MS. ARMIJO:  Your Honor, I would just
16   request that -- and the United States will submit
17   that same scheduling order that you have, but with --
18   to reflect the new dates on it.  The defense deadline
19   has come and gone as far as defense disclosure.  We
20   haven't received anything.  We know there is stuff
21   out there, at least in the Molina case, because as
22   has already been indicated, that's on the eve of
23   trial.  And we know they've done interviews.  And we
24   believe that there should be -- well, we know from --
25   counsel in previous hearings have said that they had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   documents that we didn't have, and yet, we didn't
 2   receive anything.  So we would just -- we'll provide
 3   the Court with a new scheduling order with the dates,
 4   but the same substance.
 5            Your Honor, as far as 4269, does the Court
 6   want to set that trial as well?  I don't think we've
 7   heard from those attorneys as to when they would want
 8   a trial date in that case.
 9            THE COURT:  All right.  Well, what are you
10   thinking?  How long is that trial going to last?
11            MS. ARMIJO:  Your Honor, that trial is only
12   two incidents that occurred up at PNM.  One of the
13   defendants has already pled, so it's basically -- I
14   should say three defendants remaining in that case.
15   I don't think that case would take longer than two
16   weeks, possibly even less.
17            THE COURT:  All right.  Given the schedule
18   that we now have, when are you proposing that we set
19   that trial?
20            MS. ARMIJO:  If we start this one July,
21   maybe set the other one the beginning of October.
22            THE COURT:  All right.  Let me hear from
23   the defendants in that case.  Mr. Calbert, let me
24   hear from you -- Ms. Stillinger, if you want to go
25   ahead.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BAKER:  Your Honor, the October date is
 2      fine.  I just echo some of the concerns.  My client
 3      has only had his tablet for a few weeks at most,
 4      maybe a month.  And absent his ability to look at
 5      discovery, I just reserve the right to raise this
 6      objection.  It affects his ability to go forward.
 7      Otherwise, October is fine.  We can set it for a firm
 8      date.  We're good to go.
 9              THE COURT:  All right.  Ms. Stillinger?
10              MS. STILLINGER:  Your Honor, Mary
11      Stillinger for Mr. Varela.  And I think October would
12      work fine, assuming that the July date is when we go
13      on the 4268.  I would echo some of the concerns
14      previously raised about whether it would actually go
15      then.  But I would like to have, I guess, agreement
16      on the order that 69 would go after 68, so we know.
17      I think the Government agrees with that.  And that's
18      the order we would like it in, so we know what we are
19      preparing for first.  And I think that distance
20      between the trials would be appropriate.
21              THE COURT:  All right.  Anyone else in --
22      I'm calling the Varela case?  All right.  October 2,
23      set it for October 2.
24              Did you have anything else you need on
25      that, Ms. Armijo --
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                     (505) 843-9494
FAX (505) 820-6349                                                                 FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MS. ARMIJO:  No, Your Honor.
 2              THE COURT:  -- on status conference portion
 3     of the Varela case?
 4              MS. ARMIJO:  No, Your Honor.
 5              THE COURT:  Okay.
 6              Let me address a little bit more
 7     Mr. Hammond's comments about -- and I know it was
 8     joined in by Mr. Castle and others -- I think to try
 9     and set a trial date only when we get done with
10     discovery in a case like this, or almost any case, is
11     just not realistic.  There is going to be -- you
12     know, if I just got United States v. John Doe,
13     oftentimes on Friday, I'm dealing with -- before the
14     Monday trial -- I'm dealing with new discovery
15     issues, discovery issues at almost every pretrial
16     conference.  It's just part of litigation and getting
17     ready for trial.  And so I think to push it back
18     until all discovery is done, we are going to have --
19     looks like search warrants continuing; it looks like
20     we'll always have telephone calls at the jail.  It's
21     just never going to probably end.  So I think to wait
22     to that point to set trial dates, it's not realistic.
23     And it's not what we do in other cases, so I'm not
24     inclined to do it here.
25              Obviously, if the Government starts
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    dropping on 40,000 documents -- but my sense is that

2    they are pretty much done, other than what I may

3    order them to do in addition to what they've done.

4    They've obviously made some decisions with

5    redactions, CIs, and things like that, that are going

6    to be litigated.  And so they may have to get some

7    more information along those lines, but that the big

8    bulk of stuff is out there.  So it's on that basis

9    that I'm setting these deadlines.

10           All right.  Did you want to say something

11   else, Mr. Villa?

12           MR. VILLA:  Please, Your Honor.

13           THE COURT:  Mr. Villa?

14           MR. VILLA:  Thank you, Your Honor.

15           I just want to address the scheduling

16   order.  I respect the Court's decision with respect

17   to the July trial date, and I understand it.  But the

18   scheduling order that was entered it -- this is

19   Document 759, November 4, 2016 -- I understand the

20   Court wants to stick with that, given the problems we

21   had in agreeing.  But what I would ask the Court --

22           THE COURT:  It always helps to agree,

23   because if you wait for the Judge to decide stuff --

24           MR. VILLA:  So what I would ask the Court

25   to do is, this scheduling order has deadlines

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                         (505) 843-9494
FAX (505) 820-6349                                                              FAX (505) 843-9492
                                                                                       1-800-669-9492
                                                                            e-mail: info@litsupport.com



```
 1   anticipating a March trial date.  And so all I'd ask
 2   that the Court do at this juncture is to move those
 3   dates --
 4              THE COURT:  I think Ms. Armijo says she's
 5   going to send you an order.
 6              MR. VILLA:  Okay.  So I just wanted to
 7   clarify that; that all of the dates in the scheduling
 8   order would be moved?
 9              THE COURT:  Well, they're not moved right
10   now.  So if you have reciprocal obligations, they're
11   still in place.
12              MR. VILLA:  Well -- and that's the concern
13   I have.  We can oblige with our reciprocal
14   obligations -- I didn't say that right -- but, for
15   instance, the current scheduling order, December 5,
16   2016, has a scientific expert witness notice as to
17   reports.
18              THE COURT:  Well, I encourage you to get
19   together pretty quickly and try to give me some new
20   dates.
21              MR. VILLA:  What I'm asking, Your Honor, is
22   we would just move those, the same way we move the
23   trial four months.
24              THE COURT:  Get with them and move them.
25              MR. VILLA:  Is that something you want us
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to do?  You don't want to resolve that today?

 2           THE COURT:  Well, you know, the problem is

 3   that everybody leaves here and they promise me a lot

 4   of stuff, and I never get things.  So it seems like

 5   you've got a deadline, maybe I'll get some stuff.

 6           MR. VILLA:  No, I understand that, Your

 7   Honor.  I'm just thinking that, given the concerns

 8   that we've raised with discovery, just giving us the

 9   notice -- I mean, for instance, if we move everything

10   by four months, we're under an obligation; we know

11   what it is now, and we can stick to that.  And that

12   is consistent with the same continuance that the

13   Court is granting for the trial date.

14           THE COURT:  Well, does the Government want

15   to just move everything four months?

16           MS. ARMIJO:  We can.  We can do that.  I

17   don't have a calendar right now, so I don't know if

18   moving something four months, if you go by the date,

19   will be on a Sunday or not.  But other than that,

20   yes, that's fine.  I was going to have my paralegal

21   start working on it immediately.

22           THE COURT:  Is everybody in agreement with

23   that?  Everybody move it four months?

24           MR. VILLA:  We can live with that, Your

25   Honor, on behalf of Mr. Perez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  So we're going to
 2   start moving them four months.  Everything that's in
 3   November, I guess will be due -- December, January,
 4   February -- March.  So the reciprocal discovery will
 5   be due on March 18, which is a Saturday, so we'll
 6   make it March 20.  The December dates will be April.
 7   The scientific expert will be April 5th.  The
 8   responses to Rule 16 discovery will be April 19.  The
 9   responses to scientific expert witness notice we will
10   now move into May -- will be May 3rd, which is a
11   Wednesday.  The Rule 12 pretrial motions, Daubert
12   motions, the Government's notice of gang experts will
13   be May 9th, which is a Tuesday.  The responses to
14   pretrial and Daubert motions, defendants' notice of
15   gang experts, notices of defenses pursuant to Rules
16   12.1 and 12.3, will be March 23, which is a Tuesday.
17              Now, we're moving into June.  The responses
18   to notices of defenses, motions in limine, Federal
19   Rule of Evidence 404(b) notices, jury instructions
20   proposed voir dire will be June 6, which is a
21   Tuesday.  Responses to motions in limine, objections
22   to jury instructions, and proposed voir dire will be
23   now June 21, which is a Wednesday.  And we have now
24   the jury selection and jury trial set for July 10th.
25              (A discussion was held off the record.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.  Ms. Wild is telling me I
 2   gave a March date, when it should have been a May
 3   date, I think.  So the date for the responses to
 4   pretrial and Daubert motions will be March --
 5              THE CLERK:  May.
 6              THE COURT:  -- May 23 -- I keep trying to
 7   make that March -- so May 23, 2016.  And Ms. Wild
 8   will prepare an order and she will enter it.
 9              All right.  Anything else on that, Mr.
10   Villa?
11              MR. VILLA:  No, Your Honor.  Thank you.
12              THE COURT:  Anything else we need to do on
13   that, Ms. Armijo?
14              MS. ARMIJO:  No, Your Honor.  Thank you.
15              THE COURT:  All right.  What time of day is
16   it here?  That clock is hard to read.
17              All right.  Let's go -- we can go two
18   things.  We can go to the easy thing, which I think
19   is this prison visit that we got, which I don't think
20   will take too long.  Or we can start plunging in -- I
21   want to take a break in about 20 minutes -- we can
22   start plunging into the joint motion for disclosure
23   and production of the CI, which I think is going to
24   be a little bit more complicated issue.
25              Let's see.  Mr. Villa, are these both your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    motions?
 2              MR. VILLA:  Actually, Ms. Fox-Young will
 3    argue those, Your Honor.
 4              THE COURT:  But are they both your motions?
 5              MR. VILLA:  Yes, Your Honor.
 6              THE COURT:  Which one do you want to argue
 7    first then?
 8              MR. VILLA:  I think we can handle the
 9    prison visit.  The CI motion, we have agreed to
10    resolve that --
11              THE COURT:  I understand that; that's the
12    reason I think it's a little more complicated with
13    the others.
14              Well, let's take up the -- let's go ahead
15    and get started with the CI motion, unless you want
16    to do the other one.  Do you want to do the other one
17    first?
18              MR. VILLA:  I think that makes sense.
19              THE COURT:  All right.  Well, let me say
20    this on the visit:  If this were being done -- let's
21    say you had a stack of documents over at your
22    offices, and you wanted somebody to come over and
23    look at them, sometimes it's normal to have somebody
24    set in there, and maybe look at it, you know, make
25    sure nothing is stolen.  Although, among counsel, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    know, I used to trust the people that I was working

2    with, so I'd give them privacy as they went through

3    documents and things.  I can understand a little bit,

4    sometimes if it's a private corporation, and you're

5    going out and you're looking at something, you've got

6    a little bit of -- you may not want a plaintiff's

7    lawyer rummaging around your offices and talking to

8    employees and things like that, so you figure out

9    some way to sort of escort people out there.  But I

10   think in the particular circumstance of this, where

11   we may have a large number of defense lawyers there,

12   they are going to probably be discussing this with

13   each other.  They're going to be probably saying, Mr.

14   Villa, have you looked over here?  And if the

15   Government lawyers are there, I think it's going to

16   inhibit their ability to do the things they need to

17   do at a site visit.

18          So I don't think any of you have found any

19   cases that fit this into a box.  But I see that the

20   visit is going to be inhibited, and not what the

21   defendant's need and what they probably will do, if

22   they've got the Government's attorney standing there

23   watching them do the inspection.  And so I think

24   there are work thoughts, their work product will be

25   disclosed, or that it will not take place.  It will

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   not be robust.  I don't think the defense lawyers are
 2   going to steal anything or take anything.  And there
 3   will be plenty of people there to make sure they
 4   behave in a prison setting.  So I'm inclined to grant
 5   their motion.  And the Government has access to the
 6   facility all the time.  And I just think for the
 7   robustness of the defendants' site visit, it should
 8   just be them that are present.
 9               All right.  Ms. Fox-Young, if you wish to
10   speak on behalf of your motion.
11               MS. FOX-YOUNG:  Thanks, Your Honor.
12               Justine Fox-Young on behalf of Mr. Perez.
13   I won't go into great detail on the legal arguments
14   unless the Court has a particular question.  And we
15   did file a reply late last night, and I apologize --
16               THE COURT:  Yeah, I got started on it, but
17   I didn't get quite done with it.  But I did start it
18   this morning.
19               MS. FOX-YOUNG:  I know the Court is very
20   efficient, and it was only a few hours ago.  If there
21   are any specific questions related to the reply, I'm
22   happy to go through those.
23               I do want to clarify for the Court that we
24   are scheduled, not only to visit Southern New Mexico
25   Correctional Facility, but also to view all the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    evidence in this case, all the tangible physical

2    evidence.

3            At the last hearing I think it was somewhat

4    unclear, first, as to where all that evidence is

5    located.  And I would like to just put on the record

6    that we think -- and if there is an issue, we think

7    the Court should order it -- but we think we're

8    entitled to view all the evidence related to all the

9    counts, given it is a VICAR case, and given all the

10   allegations in this case, we've received all

11   discovery.  Although, this viewing is only set up for

12   the defendants in Count 6 and 7, relating to the

13   Molina murder.

14           We also at Southern New Mexico Correctional

15   Facility think we ought to be entitled, and would

16   like to schedule visits of both pods, A pod and B

17   pod, upstairs and downstairs, the control room, the

18   wheelchair program, and the pod where defendants were

19   moved subsequent to the murder.

20           And so, if the Court has further questions,

21   given that we are going to be viewing evidence, in

22   addition to visiting the facility, I can go through

23   those.  But, you know, as we say in the briefing, we

24   don't object to the presence of agents necessary to

25   maintain chain of custody, or to maintain security.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    But we feel strongly that those individuals should
2    not be members of the prosecution team.
3            And given the Government's response, which
4    was filed on Friday, we'd like the Court to order
5    that any information that is disclosed in the setting
6    at the facility or at the evidence viewing, any
7    information that is obtained by agents or COs, not be
8    forwarded to the prosecution team.  And there are
9    easy measures that the Government takes.  I note in
10   our reply that in recent weeks the Government has
11   served warrants using a filter agent or filter
12   agents.  The Government knows how to employ taint
13   teams.  The Government knows how to impose firewalls.
14   But we think that the Court ought to order that any
15   discussions, any work product -- and we think that
16   everything that we say, produce, develop, record, any
17   processes that we employ on Friday, are work product,
18   and we don't want that information disclosed to the
19   prosecution team.
20           THE COURT:  All right.  Anything else,
21   Ms. Fox-Young?
22           All right.  Anyone else want to speak on
23   this motion?  Mr. Davis?
24           MR. DAVIS:  Judge, just briefly.  One thing
25   that wasn't mentioned by Ms. Fox-Young was we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    anticipate videotaping certain areas of that facility

2    for use at trial.  And so we ask the Court to give us

3    permission to do that as well.

4              THE COURT:  All right.  Anyone else?

5              All right.  Mr. Castellano, are you going

6    to speak on this motion?

7              MR. CASTELLANO:  Yes, Your Honor.

8              THE COURT:  Mr. Castellano.

9              MR. CASTELLANO:  Thank you, Your Honor.

10             May it please the Court.

11             THE COURT:  Mr. Castellano.

12             MR. CASTELLANO:  I guess, Your Honor, I

13   would start out with the question to the Court, in

14   terms of how many times has this -- a request like

15   this been made to the Court, and how many times has

16   the Court granted such a request?  I've been doing

17   this for 19 years, Ms. Armijo for a little bit

18   longer.  We have never run into the situation.  She's

19   done this in capital cases, and it's just never been

20   a problem.  So has the Court run into this before?

21   And has the Court granted this motion before?

22             THE COURT:  I couldn't tell you.  If you

23   don't see it in any of my opinions or anything -- it

24   could have come up like requests come up in a hearing

25   like this, and I might have done it.  But probably a

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 820-6349                                FAX (505) 843-9492
                                                      1-800-669-9492
                        BEAN & ASSOCIATES, Inc.
                     PROFESSIONAL COURT
                        REPORTING SERVICE        e-mail: info@litsupport.com

1    better request to ask Ms. Wild.  Anything come up

2    like this?  She's saying probably not in the criminal

3    context, but we've had some similar stuff like this

4    in civil cases.  I do my own discovery in the civil

5    cases, so I may have had something like it more in

6    the civil context.

7              MR. CASTELLANO:  And I ask that question

8    for a reason.  Because -- it probably has not come up

9    because it is not an issue.  And I understand the

10   defense not wanting us to look over their shoulder,

11   and we're not interested in looking over their

12   shoulder.  But as a practical matter, each of these

13   teams represents one defendant.  We're prosecuting

14   40-plus defendants, and have our own cases on the

15   side.  So when an opportunity comes like this for us

16   to view the evidence -- it's true that at any given

17   time we can go and look at evidence, but it's just

18   not practical for us as well.  So, if the evidence is

19   going to be at a certain place at a certain time,

20   it's a better time for us to be there, just as a

21   practical matter for us to look at it.

22              I've already looked at evidence with a

23   couple counsel in this case, Ms. Sirignano, and

24   Ms. Harbour-Valdez on a smaller scale.  There was no

25   problem there.  If counsel needs to step back for a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    few minutes to discuss the matters, that's fine.  If

2    they need us to step back and discuss the matters,

3    that's fine.  But like I said, it just doesn't come

4    up, because it's just never a problem.  And I would

5    invite counsel to talk about times when that's been a

6    problem for them to view the Government's evidence in

7    a case like this.

8            The best quote in the abstract the defense

9    has is they want to see the evidence, free from the

10   roving eye of the prosecutor or the court.  And

11   that's from the Reagan case.  But in that case, it's

12   a completely different context, because in the Reagan

13   case, that quote is related to a shiv that was

14   provided to the defense team, so they had their own

15   secure facility to look at classified information.

16   And we would agree in those circumstances, defense

17   should have its own area to review its own discovery.

18   In this case, reviewing the Government's discovery,

19   not their own.

20           So, as the Court noted, there just aren't

21   any cases on point because this typically is not an

22   issue.

23           The other issue -- well, there are a couple

24   other additional issues.  One is that, as the Court

25   knows, the presence of a third party vitiates any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    issues related to privilege.  So the defense is
 2    inviting third parties in who are law enforcement,
 3    but at the same time still wanting the advantage of
 4    the privilege.  And it's just not practical.
 5          And the reply indicates that we would be
 6    actively seeking the information from the agents.
 7    But what we said it would, nonetheless, increase the
 8    likelihood that we would obtain the information.
 9    Obviously, the defense in court has argued to this
10    Court that the Corrections Department and State
11    Police and other agencies are so tied into this case
12    with the Government that basically they are members
13    of the team.
14          So they can't get away from that at this
15    point by saying, Well, we're going to let members of
16    their team, if you buy the argument, sit in on our
17    evidence viewing, but at the same time, we don't want
18    them to talk about what we talked about.  It's just
19    not practical.
20          The other issue is --
21          THE COURT:  Don't we kind of do that all
22    the time?  When I've got an attorney that's being
23    fired by a defendant, the U.S. Attorney's Office
24    steps out, but the marshals stay in here.  I mean,
25    there is nothing that can be done about that.  At the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    same time with the prison, it's not going to be an
 2    empty prison.  So people are going to have to be
 3    there to -- when I've gone to prisons and things,
 4    they -- there is people with me, and then there is,
 5    obviously, the prison going about its business.  But
 6    we still sort of protect that sort of communication
 7    between the defendant and the court and their
 8    attorneys, even though there is third parties here.
 9             MR. CASTELLANO:  I agree.  And if there are
10    issues, the additional personnel become witnesses.
11    And practically speaking, this happens every day
12    we're in court.  When counsel are speaking to their
13    clients, the Government is in the room.  We don't try
14    to eavesdrop on their conversations.  But we are at
15    the same place at the same time conducting business.
16    They have their private conversations, and we don't
17    interrupt them.
18             The other issue is that we're going to have
19    multiple defense teams there discussing the case.  So
20    there are two explanations:  One, if you have teams
21    there doing their own thing, they're invading the
22    privacy of the other team when they discuss the case.
23    The other reality of the situation is that there is
24    probably a joint defense agreement, where they're
25    agreeing to do this.  And that raises the issue of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    whether or not the Court is willing to look at the
 2    joint defense agreement, to make sure there are no
 3    issues when things like this come up.  Otherwise, the
 4    presence of each of these defense team interferes
 5    with the confidentiality of any other team.
 6              THE COURT:  All right.
 7              MR. CASTELLANO:  That's it, Your Honor.
 8    Otherwise, it's just not practical, because we need
 9    to look at the evidence also, and we don't have that
10    many hours in the day either.
11              THE COURT:  Let me ask -- before you go,
12    Mr. Castellano, let me ask Ms. Fox-Young, how long do
13    you think this tour is going to take?
14              MS. FOX-YOUNG:  Your Honor, physically the
15    tour of Southern, the evidence viewing, or
16    everything?
17              THE COURT:  Well, I guess I don't know what
18    "everything" is.  I thought this was primarily
19    viewing of the prison.  What else are you going to be
20    looking at while you're there?
21              MS. FOX-YOUNG:  Your Honor, we'll be
22    viewing the physical evidence collected in the case.
23    I can't tell the Court how many pieces of evidence,
24    the volume that exists, because we have not --
25    although we've asked for some time for this
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   opportunity, we have not physically viewed it.  I
 2   could speculate, but I think it's going to take the
 3   better part of the day to do all this.  I will note
 4   that with respect to the last point, some defense
 5   counsel --
 6            THE COURT:  Well, let me let Mr. Castellano
 7   finish, then I'll let you.
 8            Do you have anything?  I guess what I was
 9   thinking, Mr. Castellano is, if it's important to
10   view it at about the same time, it seems like, if
11   they're going to be there on the 2nd, or whatever day
12   it is, could you just arrange with the prison to be
13   there the next day?
14            MR. CASTELLANO:  I think what we're having
15   is two things going on that day.  One is an evidence
16   viewing in Las Cruces.  The defense has also
17   requested the opportunity to see the facilities at
18   Southern.  So there are actually two moving parts.
19            THE COURT:  Where is the evidence viewing
20   taking place then?  What are we talking about?  The
21   shanks and that sort of stuff?
22            MR. CASTELLANO:  Right, probably the State
23   Police Office.  And then there is a visit to
24   Southern.  Now, this is a request to view the
25   evidence from Counts 6 and 7.  I heard additional
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    requests this morning that weren't made before, so

2    we're going to have to sort through that probably on

3    another occasion.

4             The other issue is we will need to know

5    the -- have a request from defense counsel where they

6    want to visit at the Corrections Department.  Now, my

7    understanding is the Corrections Department has

8    agreed to these things, but they just need to know

9    where people will be in the facility and when.

10            THE COURT:  All right.  Thank you, Mr.

11   Castellano.

12            MR. CASTELLANO:  Thank you, Your Honor.

13            THE COURT:  Ms. Fox-Young?

14            MS. FOX-YOUNG:  Thank you, Your Honor.

15            I did list the areas of the facility that

16   defendants, defense counsel, and their teams would

17   like to visit.  And I can go through that again, if

18   the Government needs.  Those are both A pod and B

19   pod, both upstairs and downstairs, the control room,

20   the wheelchair program, and the pod or pods where

21   defendants were moved after Molina died.

22            And, Your Honor, I'll just go briefly

23   through the points that the Government raises.  I

24   don't want to belabor this, and I know the Court has

25   other motions to address.  We acknowledge that this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    is an unusual request, but this is also an unusual

2    case.  The Government has charged in a particular

3    manner.  We've gone over and over the complexity of

4    the case and the volume of the evidence.  We do

5    request to see all of the physical evidence.

6    Although, we're charged in Counts 6 and 7, and at

7    least one of the defendants charged in Counts 6 and 7

8    also charged in other counts.  We think we're

9    entitled to see all of the physical evidence, not

10   just what the Government thinks is related to Counts

11   6 and 7.  And that is partly because there are ties

12   between CIs.  There are ties all across the various

13   enumerated counts in this case.

14            Secondly, I think the Court has already

15   addressed the practicality of the defense conducting

16   any sort of reasonable and productive viewing in the

17   presence of the prosecution.  And it simply is not

18   practical to do it with them there.  In the reply, I

19   addressed the Government's argument that defendants

20   waive the work product privilege.  I think it's very

21   clear -- and I cite this Court's ruling in EEOC

22   versus Roswell Radio, from 2007, in which the Court

23   notes that, without deciding the point, even

24   selective disclosure of work product wouldn't trigger

25   subject matter waiver.  I don't think there is

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 820-6349                                                              FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    anything to the argument that we would be waiving,
 2    particularly if the individuals present are not on
 3    the prosecution team.  The fact that they have some
 4    sort of law enforcement credentials doesn't change
 5    that.
 6              Without providing the Court all the
 7    citations, we don't only cite Reagan, we cite
 8    Hickman, we cite the recent DOJ case that addresses
 9    whether or not the Blue Book is subject to production
10    under FOIA.  The D.C. Circuit found that it is not,
11    because it constitutes work product.  The Government
12    also cites that case.  I think it really favors the
13    defense in terms of the broadness of the doctrine.
14    This Court has considered this doctrine in numerous
15    civil cases and criminal cases, and we go through a
16    number of those.
17              And finally, I just reiterate our request
18    that because of the increased likelihood that the
19    prosecution team could gain access to defendants'
20    work product, just based upon the way the evidence is
21    held, the custody of the evidence, and the location
22    at Southern, we ask that the Court order that that
23    information not be disclosed.  And as has already
24    been mentioned, that would include any video of
25    defense counsel and their teams, sign-in sheets, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    other records of the visit.

2           And finally -- I think other counsel may

3    want to address this -- other counsel have requested

4    that defendants go one by one to view the evidence,

5    and the Government has declined.  And so that is why

6    we are proceeding this way.  We tried to work this

7    out without the Court's involvement.  However, the

8    Government's arguments with respect to defense

9    privilege, potential joint defense arguments are, you

10   know, this is not the context in which the Government

11   simply has no standing to raise them, and we argue

12   there is no waiver.

13          Thank you, Your Honor.

14          THE COURT:  All right.  Thank you,

15   Ms. Fox-Young.

16          Any other defendants?  Mr. Castle?

17          MR. CASTLE:  Yes, Your Honor.

18          Although this motion only deals with Counts

19   7 and 8, it's our understanding that the Court's

20   order is probably going to be the order that will

21   relate to any other evidence viewings.

22          I could tell the Court that the attempts to

23   look at the physical evidence in this case has a

24   tortured history.  On behalf of the Count 1 and 2

25   defendants, we began in April to try to obtain an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   opportunity to look at the physical evidence in this

2   case.  We asked, on behalf of Mr. Garcia, for a

3   confidential viewing of the physical evidence, so

4   that we could do it on our own without the other

5   defendants.  That was denied by Ms. Armijo on April

6   27.  She indicated that she was requiring it to be a

7   joint viewing with all defense counsel for defendants

8   indicted in Counts 1 and 2, and that that was for the

9   convenience of the Government.  We specifically

10  objected to that.  But in an attempt to try to reach

11  agreement, rather than litigate this issue, we've

12  agreed to a joint viewing.

13          But if the Government's position is going

14  to be that, by doing so, we're waiving the work

15  product privilege, we're asking for an individual

16  viewing.  They can't have it both ways.  They can't

17  insist on a condition that then ends up resulting in

18  a waiver of work product privilege.  And so they can

19  either try to work with us and agree to allow us a

20  confidential viewing where our work product

21  privileges are intact, or they can do individual

22  viewings.

23          In addition, the reason this has probably

24  not litigated before Your Honor is because of the

25  unusual request here is that the Government be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    watching what we're doing.  That's the unusual part.
 2    Normally, the way evidence viewing happens is defense
 3    counsel is allowed to do confidential viewing.  This
 4    is the first time I've ever heard of this.  And so --
 5    and finally, the argument that because law
 6    enforcement might be present, that's only a
 7    requirement for security purposes.  It's no different
 8    than when we talk to our clients in a room where one
 9    of the marshals is present, the attorney-client
10    privilege still extends.  Just because there is a
11    marshal there for security purposes, does not mean
12    you're waiving your attorney client privilege.
13            THE COURT:  All right.  Thank you, Mr.
14    Castle.
15            Mr. Lowry?
16            MR. LOWRY:  Your Honor, only briefly.  I
17    wanted to backstop Ms. Fox-Young's fine work.
18            I did want to point out one thing, and a
19    follow-up on Mr. Castle's comments.  If the
20    Government wants to argue that there is a waiver
21    because other law enforcement officials will be in
22    the pods that we'll visit, the alternative to that is
23    to have the Court order the whole pod vacated, and
24    you know, we can cover up the cameras and seal the
25    room.  But that's frankly not practical, and that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    why we're trying to make this accommodation.  And I
2    think the Court has the authority, even if there is
3    an allegation that there would be waiver under
4    Federal Rule of Evidence 502(d), that the controlling
5    effective order of this Court that any, even alleged
6    waiver has taken place, that that isn't a waiver.
7              So in other words, what Ms. Fox-Young said,
8    I think, is actually well-founded; that this Court
9    should order that there is no waiver just because
10   other individuals or law enforcement officers may be
11   present; that that doesn't vitiate any work product
12   privilege or attorney-client privilege that would
13   exist.  We're trying to make this a reasonable and
14   practical accommodation to everyone involved.  And
15   it's, frankly, insensitive that that would be held
16   against us, Your Honor.
17             THE COURT:  All right.  Thank you, Mr.
18   Lowry.
19             Anyone else?
20             All right.  I will grant the joint motion
21   to exclude the prosecution team from the December 2,
22   2016, evidence viewing.  The prosecution team should
23   not go in the next day or any other time and try to
24   elicit information about what the defense lawyers did
25   while they were there.  And if they are approached by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    anyone with the Corrections Department or the State

2    Police -- if that's where the viewing of the other

3    evidence takes place -- with information, they should

4    not take that information without, A, consulting with

5    coordinating counsel, and seeing if it can be worked

6    out.  And if it's not in the nature of something that

7    can be worked out, then don't take it without

8    approaching the Court and trying to approach with as

9    much information for everyone to know about it as

10   possible.  But those will be the contours of the

11   visit.

12            If the Government wishes to challenge, down

13   the road, the fact that there is not work product

14   here, they can raise that down the road in the

15   specific context of the information that they're

16   trying to get ahold of, or saying that's been waived,

17   rather than us trying to decide that today in a

18   vacuum, in a theoretical sense, I think I am trying

19   to preserve the defendants' ability to talk while

20   they're there, and do what they need and can do

21   there.  So I'd be inclined to continue to protect it

22   down the road, whether it fits neatly into some

23   recognized privilege or protection, or just my

24   ability to control the discovery in this case.

25            As far as all the other requests that are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    being made, until there is a problem, I'm not going

2    to start ordering people to do things, particularly

3    people that aren't here.  So it seems like y'all have

4    been able to work out a lot of issues with this

5    visit.  And so if there is problems, y'all can

6    re-approach.

7              But at the present time, I'm a little

8    reluctant to start ordering Corrections to do things,

9    and I not know what I'm ordering, and the impact it

10   might have in the prison facility.  So I'm not

11   inclined to start doing that off the cuff today.

12             Let's take a break.  If you have something

13   else you want to say on this -- this was the easy

14   issue, so if you have more things to say on the easy

15   issue, but I've got to give Ms. Bean a break.  So

16   we'll take it up afterwards.  All right.  We'll be in

17   recess for about 15 minutes.

18             (The Court stood in recess.)

19             THE COURT:  All right.  Ms. Fox-Young, do

20   you have something further you wanted to say?

21             MS. FOX-YOUNG:  No.  Thank you, Your Honor.

22             THE COURT:  All right.  I wasn't trying to

23   scare you off.

24             MS. FOX-YOUNG:  Thank you, Judge.  We

25   resolved our outstanding issues.  I think we're all

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 820-6349                                    FAX (505) 843-9492
                                                          1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                e-mail: info@litsupport.com

1   set for Friday.  Thank you.

2           THE COURT:  All right.  Ms. Armijo?

3           MS. ARMIJO:  Your Honor, one thing that we

4   did talk about, right now we have two sets of

5   viewings set for Counts 1 and 2, and then the Molina

6   murders.  And just so that we're clear, then we have

7   point persons assigned to each of those that will be

8   reaching out to anybody.  And if anybody from the

9   other counts wants to attend those, then they're

10  welcome to.  We're not going to restrict it to, you

11  know, the defense teams in those counts, but -- and

12  so, as we go through the different murder teams, so

13  to speak, we will open it up to everybody, and have

14  one point person.  I think that's what we decided

15  over the break.  And I know Ms. Strickland is going

16  to be the one for the one that's coming up.

17          THE COURT:  Okay.  All right.  Mr. Cooper?

18          MR. COOPER:  Thank you, Judge.  I'm the

19  point person for the December of 15 viewing of the

20  evidence and the site at SNM, Counts 1 and 2.  If

21  anybody wants to come to the SNM site viewing, they

22  need to send me their name and date of birth, so I

23  can forward it on to Ms. Armijo.  And we're going to

24  do the December 15 under the same terms and the

25  conditions you set for Mr. Villa's tour.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Thank you, Mr. Cooper.
2              MR. COOPER:  Thank you, Judge.
3              THE COURT:  Anything else on that?
4              All right.  Well, let's turn to CIs.  Let
5    me make a few comments.  As we know from the hearings
6    we've been together in, a lot of these have dealt
7    with procedural issues, scheduling, discovery, and
8    things like that.  But now we're moving into a new
9    phase that requires me to make very fact-intensive
10   determinations as to who gets this information, if
11   anybody.
12             You guys know a lot more about this case
13   than I do, and particularly the facts of your counts
14   and the alleged murders, and who was involved.  I
15   work hard, I try to read everything, so I try to be
16   as prepared as I can.  But I'm just not as familiar
17   with these names, events, and things like that as you
18   are.  So, as we move into this phase, don't feel like
19   you're going to insult me if you repeat names and
20   repeat incidents and stories.  You need to educate
21   me.  That's the only way I can make an informed
22   decision on this.  So I encourage you to educate me
23   about the facts, because that's what I'm going to
24   need to make these determinations.
25             All right.  Mr. Villa, I know you filed the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    motion.  It looks like maybe you got your issue
 2    resolved, or you're a long way down the pike.  Why
 3    don't you tell me exactly where you are, or what you
 4    want to tell me, and if you have any remaining
 5    issues, what they are.
 6              MR. VILLA:  Thank you, Your Honor.
 7              THE COURT:  Mr. Villa?
 8              MR. VILLA:  Today we don't have any
 9    remaining issues that we're going to ask of the
10    Court.  So we filed our motion; the Government agreed
11    to disclose to us, and us alone, under the conditions
12    of the protective order that you signed, the name of
13    the informant and the informant's attorney.  They
14    have done that.
15              Should the Court grant any of the other
16    requests today, we may come back to you to modify the
17    protective order; for instance, to allow us to
18    communicate with our co-counsel about those things,
19    share information.
20              THE COURT:  Let me just ask:  That
21    protective order is public?
22              MR. VILLA:  Your Honor, I believe it was
23    filed publicly --
24              THE COURT:  Can you remind me, then, the
25    terms of the protective order?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. VILLA:  Sure, Your Honor.  The
 2    protective order --
 3              THE COURT:  It's attorneys' eyes only?
 4              MR. VILLA:  As attorneys, we were allowed
 5    to tell Mr. Perez who it is.  He's not to disclose it
 6    to anyone.  And we can disclose it to our
 7    investigator, defense team, and that sort of thing,
 8    but we cannot disclose it to anybody else.  So we
 9    have not done that.
10              But I do think, if the Court were to grant
11    it as to some of the other co-defendants, if the
12    Government was not agreeable, we may come back and
13    ask for permission to modify that protective order,
14    or -- we certainly reserve our right to seek other
15    information about the informant as we conduct our
16    investigation.
17              One of the things that we agreed with the
18    Government -- so I'm not asking for any of that
19    today -- we had asked for a number of things about
20    this informant.  And we agreed to, essentially,
21    withdraw those requests in exchange for the
22    information.  But we may come back to the Court at a
23    later date, depending on what our investigation
24    uncovers.  But for today's purposes, for Mr. Perez,
25    we are satisfied.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Okay.  Thank you, Mr. Villa.
2              All right.  Who, then, do we want to take
3     up first?  Who is the person, then, that we need to
4     take up first?  Is it Mr. Troup that's going to
5     have -- be the first person?
6              MS. HARBOUR-VALDEZ:  Your Honor, I'm happy
7     to go first.
8              THE COURT:  All right.
9              MS. HARBOUR-VALDEZ:  Your Honor, as I
10    stated in the reply, the source at issue here makes
11    just a couple of statements that relate to Mr. Troup.
12    I think --
13             THE COURT:  What would be best for me to
14    have -- would it be to have Mr. Villa's redacted
15    material in front of me, so I can see the statements
16    that you're going to be referencing?
17             MS. HARBOUR-VALDEZ:  That might be helpful,
18    Your Honor.
19             THE COURT:  All right.  So I have it in
20    front of me.  And do you have it in front of you?
21             MS. HARBOUR-VALDEZ:  I can shortly, yes.
22             THE COURT:  All right.  So then there is
23    CM/ECF numbers at the top.  If you want to take me to
24    those; give me the docket number and then the CM/ECF.
25             MS. HARBOUR-VALDEZ:  Sure.  It's Docket No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   698-1, and it would be page 2 of 2, to which I'm
2   referring.
3            THE COURT:  Okay.  Hold on just a second.
4   Let me do some thinking here, to get myself -- all
5   right.  So I have that in front of me.  And you were
6   about to tell me there are two statements in here
7   that reference Mr. Troup?
8            MS. HARBOUR-VALDEZ:  Yes, that would be in
9   paragraph 6, Your Honor.
10           THE COURT:  I'm going to see if I can find
11  a highlighter here.  All right.  It's --
12           MS. HARBOUR-VALDEZ:  Paragraph 6.  It
13  starts with, "The Rascon brothers."
14           THE COURT:  All right.  I got it.
15           MS. HARBOUR-VALDEZ:  So this CI -- first of
16  all, I'm going to go with the second sentence that
17  talks about the paperwork that was delivered.
18           THE COURT:  And can you -- if you know, can
19  you educate me about what that term means?
20           MS. HARBOUR-VALDEZ:  Yes, Your Honor.  It's
21  been known throughout the discovery that there were
22  documents confirming that the victim, FS, was a known
23  informant.  The discovery produced thus far
24  indicates --
25           THE COURT:  Is it known to everybody who FS
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    is?

2              MS. HARBOUR-VALDEZ:  Yes.  I just didn't

3    know if the Court wanted me to use the names.

4              THE COURT:  I would appreciate it.  I'm

5    going to have to get into this.

6              MS. HARBOUR-VALDEZ:  It's Freddie Sanchez.

7              So the discovery that's been disclosed thus

8    far indicates that it was known among everyone that

9    he was an informant, and that these documents, this

10   paperwork, had been circulated among the inmates at

11   Southern New Mexico Correctional Facility.

12             THE COURT:  And this paperwork like a plea

13   agreement, or what are we talking about?

14             MS. HARBOUR-VALDEZ:  We don't know --

15             THE COURT:  You don't know what paperwork

16   is --

17             MS. HARBOUR-VALDEZ:  The discovery

18   indicates that that paperwork was somehow destroyed.

19             THE COURT:  Okay, but it was something that

20   indicated that --

21             MS. HARBOUR-VALDEZ:  That he had cooperated

22   in some previous matter.

23             THE COURT:  Mr. Sanchez was a cooperator?

24             MS. HARBOUR-VALDEZ:  Correct.

25             So this CI is the first one who indicates

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 820-6349                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    that someone by the name of "Cheech" delivered that

2    paperwork to Southern New Mexico.

3           The discovery that's been produced to date

4    indicates that there was a gentleman named Kyle

5    Dwyer, who was housed there at Southern with everyone

6    else -- did not use the name or the alias "Cheech" --

7    actually admitted to being the individual who

8    delivered the paperwork from PNM in Santa Fe down to

9    Southern New Mexico.  And in fact, Mr. Dwyer received

10   a misconduct report for his activities related to

11   that.

12          Unfortunately, Mr. Dwyer is deceased.  So

13   we obviously cannot interview him.  We cannot find

14   out if that is, in fact, true.  We've done some

15   additional investigation on that.  It appears that

16   Mr. Dwyer -- and this is not in my reply -- but Mr.

17   Dwyer may have, in fact, won a disciplinary appeal on

18   that very issue.  We are looking for that information

19   now.

20          THE COURT:  So the disciplinary issue of

21   having circulated this paperwork?

22          MS. HARBOUR-VALDEZ:  Correct.

23          THE COURT:  That was a violation of prison

24   regulations?

25          MS. HARBOUR-VALDEZ:  Correct.  But it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    appears that he may have appealed that, and won,

2    based on insufficient evidence.  We are investigating

3    that now.  It's not something that's been produced in

4    the discovery to date.

5            THE COURT:  So he admitted to it, and then

6    he was also, then, sort of prosecuted by the prison

7    and -- but then they -- you think that they lost?

8            MS. HARBOUR-VALDEZ:  Correct.  I don't have

9    anything to provide to the Court yet, because we are

10   still investigating that.  That is just on

11   information and belief at this point.

12           So, if in fact, Mr. Dwyer was exonerated,

13   perhaps someone named Cheech is responsible.  We

14   would very much like to know who Cheech is.  And I

15   haven't found that moniker elsewhere in the

16   discovery.  If this individual was either in one of

17   the units, or knows who Cheech is, or was at PNM at

18   the time and knows about the paperwork, we would love

19   to know.  I mean, that's one of the reasons we need

20   to know who this person is.  He's provided an

21   alternate suspect, who perhaps had a hand in this

22   incident.  So we certainly feel like --

23           THE COURT:  When you say "alternate

24   suspect," what are you referring to?

25           MS. HARBOUR-VALDEZ:  Well, in a conspiracy,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Your Honor, assuming that Mr. Dwyer was still alive,

2    and lost his administrative appeal, I assume that he

3    would have been indicted in this case as a

4    co-conspirator for providing paperwork that then led

5    to the homicide in this case.

6              THE COURT:  When I read "Huero" Troup,

7    that's your client?

8              MS. HARBOUR-VALDEZ:  That's my client,

9    correct.

10             THE COURT:  And what is the Government

11   accusing your client of doing?

12             MS. HARBOUR-VALDEZ:  Of participating in

13   the homicide.

14             THE COURT:  All right.  Tell me about the

15   homicide.

16             MS. HARBOUR-VALDEZ:  My version, or what --

17             THE COURT:  I'll take either one, or both

18   of them.  Let me have both of them.  Give me the

19   Government's and then give me --

20             MS. HARBOUR-VALDEZ:  The Government alleges

21   that a number of individuals, including Mr. Troup,

22   murdered Mr. Sanchez, after this paperwork was

23   circulated in the pod.

24             THE COURT:  Is there any more details to

25   it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



1          MS. HARBOUR-VALDEZ:  There was DNA

2    evidence; my client was exonerated by that DNA

3    evidence.

4          There are a number of cooperating

5    defendants, we believe, who have given varying

6    statements.

7          But, again, this source is the only one who

8    has mentioned this person, Cheech, as being a

9    participant somehow in this conspiracy.  That's why

10   we're interested in finding out who he is, what he

11   knows, how he knew Cheech had paperwork.  Because, I

12   mean, he's a player in the conspiracy, clearly, if he

13   brought paperwork down.

14          THE COURT:  Tell me what you do with that?

15   I mean, I guess --

16          MS. HARBOUR-VALDEZ:  We're going to

17   interview Cheech.

18          THE COURT:  -- you're going to have to

19   connect the dots for me here.

20          MS. HARBOUR-VALDEZ:  We're going to

21   interview Cheech, once we know who he is.  But more

22   importantly, we're going to interview this source,

23   and find out how did he know who Cheech was?  How did

24   he know Cheech had paperwork?  And more importantly,

25   getting to the other sentence that talks about the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Rascon brothers, these are two unindicted -- perhaps

2    they're co-conspirators.  How did he know that the

3    Rascon brothers were in bad standing?  How did he

4    know the Rascon brothers were taking too long to

5    carry out the hit?  Why are the Rascon brothers not

6    indicted?  Was this person in the cell?  Was he in

7    one of the pods?  Was he at PNM?  I mean, there are a

8    lot of questions we have.  But without knowing who he

9    is, we can't investigate what his role was, and

10   whether he was a witness, whether he learned this

11   secondhand.  It puts us at a huge disadvantage.

12           And this is just one CI, Your Honor.  As

13   Mr. Castle mentioned earlier, we're talking about

14   370-something sources in this case.  And it really

15   makes our job very difficult to investigate, when

16   we're chasing rabbit trails, trying to figure out who

17   these people are, and whether we can go and interview

18   them.

19           THE COURT:  Well, I just ask for sufficient

20   bread for today.  So let's just take this one here.

21           MS. HARBOUR-VALDEZ:  Okay.  Exactly.  We're

22   starting small.

23           THE COURT:  If you knew who Cheech was, and

24   if you knew who this confidential human source was,

25   and you hit the jackpot of getting information from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    him, what would that be?

2              MS. HARBOUR-VALDEZ:  It could be

3    exculpatory.

4              THE COURT:  Tell me how.  Tell me, in your

5    wildest dreams, what it would be?

6              MS. HARBOUR-VALDEZ:  Perhaps the Rascon

7    brothers are more responsible than what we have been

8    led to believe.  Perhaps they are cooperating with

9    the Government.  That would be nice to know, if they

10   were -- we know they were there, we know they were on

11   the bottom tier, with a number of other individuals,

12   who were indicted.  I think it leads to some

13   alternate suspects that could provide exculpatory

14   evidence for Mr. Troup.

15             We'd also like to explore, if in fact they

16   are cooperating, what kind of deals did they get?

17   How could we impeach them if they were called to

18   testify?  I know some of that is going to come later,

19   closer to trial.  But I think now we've got at least

20   one person that's not been previously mentioned in

21   discovery, this Cheech individual.  It's someone

22   completely different than what we have learned,

23   through the discovery produced was actually -- who

24   was actually punished for bringing paperwork.  It

25   also could lead to who, in fact, provided the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    paperwork from PNM.  Is there another person who was
2    the shot-caller that we're unaware of?
3             You're asking me to speculate.  I mean,
4    that's really all we can do at this point.
5             THE COURT:  If you were told who Cheech
6    was, tell me then why you would need the CHS?
7             MS. HARBOUR-VALDEZ:  Well, I'd like to know
8    how he knows that Cheech was the one that had the
9    paperwork.  Who gave to it Cheech?  Was he at PNM?
10   Did he witness this?  Did he see the paperwork?
11   Because, like I said, we haven't seen the paperwork.
12   We just have read through the discovery that
13   paperwork was circulated, but apparently, it was
14   destroyed.  Was this CHS at Southern?  Was this CHS
15   at PNM?  Is he someone that was --
16            THE COURT:  And this murder of Sanchez took
17   place where?
18            MS. HARBOUR-VALDEZ:  2007, at Southern New
19   Mexico.
20            THE COURT:  All right.  Anything else you
21   want to tell me in support of your motion?
22            MS. HARBOUR-VALDEZ:  Well, I think it's
23   relevant and helpful to the defense.  I've tried to
24   articulate that this morning with as much speculation
25   as I can.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          I think that the CI may have played a
2    crucial role, if in fact he was at one of the two
3    facilities when either the hit was ordered or the hit
4    was carried out.  He could have been an eyewitness.
5    We don't know.  And he's clearly assisting the
6    Government in obtaining the evidence.  If they intend
7    to call him, I know, at some point we need to learn
8    his identity, but we'd like to learn it ahead of time
9    to start doing a little bit of investigation.
10         Like I said, it's just one of a number of
11   CIs that we're trying to identify, to start doing a
12   thorough defense investigation.  And the longer we
13   delay this, Your Honor, the more our jobs are being
14   hampered.  And I don't want to be in front of you in
15   March, April, May of next year arguing these same
16   things because we're trying to get ready for a July
17   trial date.
18         THE COURT:  All right.  Thank you,
19   Ms. Harbour-Valdez.
20         MS. HARBOUR-VALDEZ:  Thank you.
21         THE COURT:  Now, I don't want to jump into
22   all the other defendants telling me why they need
23   this information.  That's not the question I'm
24   asking.
25         Does anybody else want to help

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Ms. Harbour-Valdez?  Anybody had a thought there,
 2    they want to say this is the reason I want to give
 3    this information to Ms. Harbour-Valdez and Mr. Troup?
 4              All right.  Mr. Beck?
 5              Basic question:  I assume you know who the
 6    CHS is; right?
 7              MR. BECK:  We do, Your Honor.
 8              THE COURT:  Because you've given it to Mr.
 9    Villa.
10              MR. BECK:  That's right.
11              THE COURT:  Are you going to call the CHS
12    as a witness in your trial?
13              MR. BECK:  At this time, we intend to, Your
14    Honor.
15              THE COURT:  So this is a Jencks person?
16              MR. BECK:  That's right.
17              THE COURT:  Do you know who Cheech is?
18              MR. BECK:  I do not.
19              THE COURT:  Have you ever asked the CHS who
20    Cheech is?
21              MR. BECK:  We've not.
22              And so, Your Honor, I think you're getting
23    to one part of the analysis we have to look at with
24    CIs, is whether it's a testifying witness, or whether
25    it's a CHS.  And if it's a CHS, a nontestifying
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1   witness, then we go through the Roviaro calculus.
 2            If it's a testifying witness, that puts it
 3   under Jencks, and we're talking about -- as
 4   Ms. Valdez -- excuse me --
 5            THE COURT:  Is there a case that says that?
 6            MR. BECK:  Yes.
 7            THE COURT:  Is there a case that says I
 8   don't do the CI analysis if you're telling me that
 9   he's going to be -- he or she is going to be a
10   testifying witness -- that I have to defer on the
11   Jencks side; I can't do the CI analysis?
12            MR. BECK:  So, Your Honor, I will refer the
13   Court to -- and again, this kind of came up
14   happenstance, because the reply was really what led
15   to there being actual evidence that we should
16   disclose the CHS.  So since there is no surreply,
17   much of this information, in terms of distinguishing
18   these, is found in our response to the Gallegos
19   motion in the Baca matter.  So that is Document No.
20   255 in Case No. Criminal 16-1613 JB.  And so, in that
21   case --
22            THE COURT:  Not the factual material, but
23   just the law?
24            MR. BECK:  Just the law in that case.
25            THE COURT:  Okay.  Remind me -- I read it,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    of course, but remind me of what the law is.
2              MR. BECK:  So there is --
3              THE COURT:  Let me see if I can pull that
4    up.  Let's see, it's Document 255.  Okay.
5              MR. BECK:  So at page 5 of that, we quote
6    from United States against Glover, which is found at
7    583 F.Supp. Reporter 2d -- starts at page 5; and the
8    cite is to page 12.  And this is from the District of
9    Columbia District Court in 2008.  And it says,
10   Roviaro and its progeny regarding the disclosure of
11   confidential informants -- the quotation starts here:
12   "apply only when the informant does not testify at
13   trial."  That's the end of that quote.  It's quoting
14   a Third Circuit decision from 2002.
15             Also, this District, Judge Brack has
16   addressed this issue, in United States against Lujan.
17   It starts at 530 F.Supp. 2d, page 1224.  And Judge
18   Brack also agreed that there is differentiation
19   between testifying witnesses and confidential
20   informants who will not testify.  And that Roviaro
21   and that calculus applies only when it's a CHS that
22   will not testify at trial.
23             THE COURT:  Did the defendants, either in
24   Baca or this case, have they discussed this legal
25   point?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


1         MR. BECK:  Not in the briefing, as far as

2    I've seen, no.  So what happened was the briefing --

3    the brief in chief by Mr. Villa provided the law.

4    And then the reply provided additional facts why this

5    particular CHS may have information that would

6    require disclosure under Roviaro.

7         THE COURT:  They just did a CI analysis?

8         MR. BECK:  That's right, Your Honor.

9         THE COURT:  Well, stand right there.  But,

10   Ms. Harbour-Valdez, do you, from a legal standpoint,

11   have something that is different than what Mr. Beck

12   is presenting?

13        MS. HARBOUR-VALDEZ:  Your Honor, I don't

14   disagree with his analysis, and that's what we

15   adopted from Mr. Villa's motion.  So we adopt --

16        THE COURT:  Well, but what I remember, from

17   reading everything in Baca, and then reading Mr.

18   Villa's briefing is this point of what is -- what

19   goes first, whether you do the CI analysis, or you do

20   a Jencks, is the defendants haven't spoken on that

21   point.  So do you agree with Mr. Beck, the

22   Government's analysis of that, which is Brack's

23   position?

24        MS. HARBOUR-VALDEZ:  Not necessarily.

25   Because if he was -- and we don't know this -- if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   this informant was a participant and a material
 2   witness, we think that we've met the burden to have
 3   his identity released.
 4              THE COURT:  But do you have any law that
 5   says, no, if it's a testifying witness, then you've
 6   got to run it through the Jencks hurdles?
 7              MS. HARBOUR-VALDEZ:  I don't have any
 8   evidence.
 9              THE COURT:  All right.  Anybody on the
10   defense side?  Mr. Hammond?  Do you have anything?  I
11   mean, is that the way -- do you disagree with the
12   Government?  Have anything --
13              MR. HAMMOND:  Your Honor, I do.  And can
14   the court reporter hear me?
15              THE COURT:  I think she can.  Can you hear,
16   Ms. Bean?  Go ahead.
17              MR. HAMMOND:  We have not briefed in our
18   separate response, on behalf of Mr. Montoya, this
19   particular point.  It wasn't raised in the briefing
20   in this cycle.  And frankly, I wasn't aware of what
21   had been filed in the Baca case.  But I believe that
22   the law is not black and white on this.  I believe
23   that the law is that, even with a testifying CI, if
24   there are reasons presented why the identity of the
25   CI needs to be known now for investigative purposes,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and preparation purposes of -- particularly, if the
 2    CI may himself have been a participant in the crime,
 3    I believe that courts have ordered that CI
 4    information be produced well in advance of the Jencks
 5    deadlines.
 6              THE COURT:  Okay.  All right.  I'll let the
 7    defendants rebut Mr. Beck here.  And I'll give you a
 8    chance to rebut him, Ms. Harbour-Valdez.  But let me
 9    not chop up Mr. Beck's arguments too much.
10              Mr. Beck?
11              MR. BECK:  And, Your Honor, as I pointed
12    out here, these are district court decisions.  There
13    is a First Circuit decision -- again, this is in our
14    brief -- there is a First Circuit decision from 1992
15    that suggests the same thing.  So --
16              THE COURT:  You said the D.C. Circuit
17    relied upon a Third Circuit?
18              MR. BECK:  The District Court from D.C.,
19    right, relied upon a Third Circuit.  And then there
20    is a First Circuit decision from 1992, United States
21    v. Tejeda, 974 F.2d 210.  The quote is from 217.  And
22    it says, "The disclosure requirement in Roviaro was
23    predicated on the failure of the prosecution to make
24    either the informant or the informant's identity
25    available to the defense in a case where the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   informant was never called as a witness."  And so,
 2   again, I'm not saying that -- I mean, I'm not going
 3   to stand here and tell you that the Tenth Circuit
 4   spoke on this; that the Supreme Court has spoken on
 5   this.  I'm not going to --
 6             THE COURT:  Tell me, though -- I think this
 7   is what Mr. Hammond was getting at -- say that's the
 8   law; say there is a bunch of district courts that
 9   have done that.  What is the rationale for that?
10   What would be the rationale for saying that if this
11   is going to be a testifying witness, we're going to
12   run them through Jencks and never do the CI analysis?
13             MR. BECK:  I think the analysis is the same
14   as with all the Government's witnesses, is that with
15   this confidential human source, CI --
16             THE COURT:  You're going to know it at some
17   point.
18             MR. BECK:  You're going to know it at some
19   point.
20             THE COURT:  You've got to wait your time.
21             MR. BECK:  And you're going to know more
22   than you might otherwise, just having the CI's
23   identity.  You're going to get all the Jencks
24   materials, as opposed to just the CI's identity.  I
25   mean, again, in that brief we talked about the timing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third St NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    of when you would disclose the CHS.  And it seems as
 2    if -- again there is no set in stone; the Court's
 3    going --
 4              THE COURT:  I mean, that's what we're
 5    battling over, maybe to some degree, is when are you
 6    going to disclose these CIs?  They're going to say
 7    that there is 360 of them.  You dump them two weeks
 8    before trial, it's just going to send everything into
 9    turmoil as far as them getting ready for trial.
10              MR. BECK:  Right.  Yeah, I understand.
11              THE COURT:  Do you have a response to that?
12              MR. BECK:  I do.  I don't anticipate that
13    the United States will call 360 CIs.  I don't.  I can
14    say that there are not 360 CIs.  I will say that this
15    CI, as I said, will be testifying at trial.
16              THE COURT:  Let's say you have a CI right
17    now that you think will be testifying at trial.
18    Something happens, and you decide not to call that
19    person.  Then my ability to do sort of a Rule 16 CI
20    analysis earlier in the case to help them prepare for
21    trial, the defendants prepare for trial, is gone.
22              MR. BECK:  Right.
23              THE COURT:  What do you do with that?
24              MR. BECK:  I thought about that.  I
25    appreciate that it puts the Court and the defendants
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    in an awkward position when we're saying this.  And I

2    think --

3              THE COURT:  Is there anything -- I'm sorry.

4    I should get your answer before I ask another

5    question.

6              MR. BECK:  I think it's fair, and it's

7    reasonable that when the Court sees these motions to

8    disclose CI, that we go through, at one point, the

9    analysis, and the Court makes a call, both on this

10   decision -- because as far as I can find in the

11   Court's decisions -- and I've looked, you haven't

12   addressed this issue, as I said Judge Brack did -- we

13   make a call on that point of law.  We make a call on

14   the timing.  And then I think it may be still

15   appropriate to go through also the other side of the

16   equation, which is whether disclosure would be

17   required, that is a CHS.  And then that puts the

18   Court in a position to rule, saying this is a

19   testifying witness.  What if the Government decides

20   it's not going to call it, it's going to have to

21   disclose this CHS at the time that the Court is

22   required in other motions?  And I know that that

23   creates extra work for the Court, perhaps.  Although,

24   if the Court's going to do that work anyway, it means

25   that these hearings won't be short-circuited because

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 820-6349                                               FAX (505) 843-9492
                                                                       1-800-669-9492
                                                             e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    I say this person is going to testify.

2            THE COURT:  So you would say that I go

3    ahead and make the determination as to whether the CI

4    should be disclosed, and then -- but they wouldn't be

5    disclosed immediately, because you're planning to

6    call them at trial -- but if it's -- for some reason

7    you're going to not call that witness, something

8    happens in the case, then you would immediately

9    disclose that, if I had ordered it?  Is that what

10   you're thinking or saying?

11           MR. BECK:  I'm saying I think that would be

12   the most fair to the defendants.  If I'm sitting

13   here, as the Government, obviously I don't -- I

14   mean -- but I'm saying I think that would be the best

15   course for the Court to take.  And I wish I could say

16   that we have our -- you know, but the Court has much

17   more experience with trials than I do, and we know

18   that sometimes witnesses, when it's on the eve of

19   trial, decide not to testify, and sometimes

20   additional ones that haven't, agree to testify.

21           So I'm saying that, when I gave this some

22   thought, because I anticipated this would be a

23   problem for the Court and the defense, that I think

24   the best course is to make that finding, and order

25   that decision that this person is going to be a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    testifying witness, so this person will be disclosed

2    with Jencks.  But if it comes to the point that this

3    person is not a witness, or the Government -- you

4    know, I mean, it comes to the point where this person

5    is not a witness, I find that this person is a CHS

6    who participated, who should be disclosed under

7    Roviaro, and I'm ordering that, if the Government

8    does not call this person, they must be disclosed as

9    a CHS, I think that's probably -- and I think that's

10   the most reasonable and the most fair analysis for

11   the Court to take.

12           THE COURT:  Okay.  Well, talk to me, then,

13   about this CHS, and why you shouldn't disclose it to

14   Mr. Troup?

15           MR. BECK:  I think, if the Court looks at

16   the paragraph that we focused in on, paragraph 6,

17   that -- the second sentence, that "Weno and Huero

18   Troup saw the Rascon brothers were taking too

19   long" -- I guess it was, sorry, before that.  The

20   Rascon brothers were in bad standing with the SNM,

21   were ordered to kill Freddie Sanchez; the paperwork

22   on Sanchez was delivered by Cheech.  So Troup's

23   position is that Cheech has not been mentioned

24   before, is delivering paperwork, and that this would

25   help identify Cheech, if they could interview this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    person.

2              But the test, under Roviaro, is whether the

3    information would be helpful to the -- or, excuse

4    me -- so the test under Roviaro, as this Court

5    articulated in United States against Rivas and in

6    Aguilar, quoting United States v. Sinclair is, "The

7    Court must consider the particular circumstances of

8    the case, including the crime charged, the possible

9    defenses, and the significance of the informer's

10   testimony."

11             And here, when we look at that in Troup's

12   position, if we find out that Cheech was the person

13   who delivered this, and not Mr. Dwyer, then certainly

14   that's helpful and exculpatory to Mr. Dwyer.  But not

15   towards Troup.  Because the information, as it

16   relates to Troup, is the same; that Troup killed

17   Freddie Sanchez.

18             And so while it may be -- while the CHS may

19   be required to be disclosed under Roviaro for Mr.

20   Dwyer, if he were here, it is not significant

21   testimony as it relates to Mr. Troup.  Certainly, I'm

22   not going to say that finding out who Cheech is would

23   not be helpful to her client, would not be helpful to

24   Mr. Troup.  But that's not the analysis.  That has no

25   salience in the Court's analysis.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Why don't you achieve the
2    purposes of protecting the CHS by going a long ways
3    of just asking the CHS who Cheech is, and providing
4    that information?
5              MR. BECK:  I think that we can provide that
6    information, I think --
7              THE COURT:  Would you be willing to?
8              MR. BECK:  Yeah.  Yeah, I don't see why
9    not.
10             THE COURT:  I guess it seems to me that
11   that would be the first step to sort of doing
12   discovery here, because Cheech seems to be the person
13   that may be more helpful than the CHS.
14             MR. BECK:  Right.  I agree.  And we're
15   willing to do that, as we've done with Mr. Perez.
16   We're willing to work through some of these issues.
17             So I will represent to the Court that we
18   can tell Ms. Harbour-Valdez who Cheech is.
19             THE COURT:  All right.  Mr. Beck, anything
20   further on the Troup request for this CH?
21             MR. BECK:  I mean, if the Court has any
22   specific questions --
23             THE COURT:  Well, do you want to tell me
24   your version of what occurred here?
25             MR. BECK:  Our --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  The murder.
 2                MR. BECK:  Our version is that paperwork
 3    was passed that indicated that Freddie Sanchez had
 4    given information to law enforcement.  And again, I
 5    think sometimes we get misled with the term of
 6    "informant," versus "cooperator," versus "CHS,"
 7    versus "cooperating witness."  And I think we should
 8    be careful in distinguishing those terms.
 9                THE COURT:  And I'm trying.
10                MR. BECK:  And I appreciate that.
11                So, at some point, there was paperwork --
12    which can be a range of things; it can be J and S
13    paperwork, or whatever it may be -- but it was passed
14    to two people.  And then, we believe that, as I've
15    said, the Rascon brothers were ordered to hit Freddie
16    Sanchez, and that Troup was one of the people who did
17    it at Southern New Mexico Corrections Facility.
18                THE COURT:  And you think he was actually
19    one of the people that killed Mr. Sanchez?
20                MR. BECK:  Yes.
21                THE COURT:  Physically?
22                MR. BECK:  Right.
23                THE COURT:  All right.  What else, Mr.
24    Beck?
25                MR. BECK:  I guess, as I said, that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    probably the strongest argument as it relates to Mr.

2    Troup.  And I guess we'll keep going.

3              THE COURT:  All right.  Is that

4    Mr. Chambers coming on the line?

5              MR. CHAMBERS:  It is, thank you.

6              THE COURT:  All right.  Welcome,

7    Mr. Chambers.

8              All right.  Anything else, Mr. Beck?

9              MR. BECK:  Not at this time, Your Honor.

10             THE COURT:  All right.  Thank you, Mr.

11   Beck.

12             Let's see, Ms. Harbour-Valdez, let me ask

13   your co-defendants here, anybody want to say anything

14   on this request of Mr. Troup for the identity of this

15   CHS?  Did you have your hand up, your good hand,

16   Mr. Hammond?

17             MR. HAMMOND:  Yes, Your Honor.  We aren't

18   involved in the counts that he was just talking

19   about.

20             THE COURT:  Right.

21             MR. HAMMOND:  We are involved in Mr.

22   Villa's count, and at some point we'd like to be

23   heard.

24             THE COURT:  Oh, yeah, I'm going to give it.

25   I'm just trying to focus on Troup's request here.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Anybody else?

2          All right.  Ms. Harbour-Valdez?

3          MS. HARBOUR-VALDEZ:  Your Honor, first, I

4    would ask why it was given to Mr. Villa, via

5    protective order, if Jencks governs?  I think there

6    was a different analysis applied there.

7          THE COURT:  Well, I mean, I know the

8    defendants are concerned about consistency and

9    inconsistency in what they're doing over here.  They

10   are the Government.  They can disclose everything.

11   And if we think about it, I mean, it could be

12   nefarious; it could be just strategy -- it could

13   be -- we all waive -- as we go through litigation, we

14   waive work product, otherwise we couldn't have a

15   trial; right?

16          So eventually we waive work product.

17   They're waiving it at different times.  And we all do

18   that, so --

19          MS. HARBOUR-VALDEZ:  All right.  Well, in

20   reading --

21          THE COURT:  -- we'll have to live with that

22   inconsistency, if there is one.

23          MS. HARBOUR-VALDEZ:  Okay.  In reading this

24   Court's Aguilar opinion, I think what we still need

25   to focus on here is that, obviously, the CHS is going

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to testify.  What we're trying to determine is

2    whether he was, in fact, a witness or a participant;

3    whether he was one of the people in this pod at

4    Southern, or was in the pod at PNM, from which the

5    paperwork allegedly -- and the hit allegedly derived.

6             So if he was, in fact, an active -- played

7    an active role, I think the Court has to employ the

8    balancing test that you talk about in the Aguilar

9    opinion.  And that's based on Roviaro.  And I think

10   that we've made that showing here today; that not

11   just the identity of Cheech.  I mean, that would be

12   great, if we could have the identity of Cheech,

13   certainly that's a starting point.  But I'm also

14   still interested in learning the identity of the CHS,

15   to find out if he was, in fact, there; if he was an

16   active participant.

17            THE COURT:  But once you get Cheech,

18   though, isn't the CHS like everybody else on the

19   planet?  I mean, we'd all like to know who was there;

20   right?  What makes you think any more than anybody

21   else on the planet that he was there?  It's just

22   speculation, isn't it?

23            MS. HARBOUR-VALDEZ:  That's all we have at

24   this point, unfortunately.  But if we were able to

25   identify him and interview him, I'm sure he knows

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   more than what he's provided in this one little

2   statement.

3            And the difference, I think, between a CI

4   and other Jencks witnesses is identity.  I mean, we

5   know who the victim is here, but we don't know the

6   identity of the CI.  If he was -- like I said, if he

7   was a witness, I think if the Court employs the

8   balancing test, obviously, the nature of the crime

9   charged and the resulting penalties, I think, we get

10  the first prong.

11           His testimony is going to be significant.

12  I mean, he names my client as one of the people

13  responsible for Mr. Sanchez' death.  How does he know

14  that?  Did he witness it?  Was he -- I mean --

15           THE COURT:  All right.  Anything else?

16           MS. HARBOUR-VALDEZ:  No, Your Honor.  Thank

17  you.

18           THE COURT:  All right.  Well, I'm not going

19  to order the production of the CHS at the present

20  time.  I'm first going to determine whether the CI

21  analysis is obviated if, in fact, the person is going

22  to be a testifying witness.

23           I will take the Government's suggestion up,

24  and I will determine the CI issue.  So I will make

25  the determination.

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 820-6349                                                     FAX (505) 843-9492
                                                                              1-800-669-9492
                                                                      e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1          Right at the moment, I'm going to require
 2   the Government to go ahead and give you Cheech.  And
 3   maybe you'll be able to, after you talk to Cheech,
 4   figure out who he is; maybe you'll be able to bulk up
 5   your request.  And you can send me a letter or
 6   something.  If you've figured out more information,
 7   just tell me:  Okay, now, that I know Cheech -- and
 8   if you were able to talk to Cheech, maybe you can
 9   bulk up your request.
10          Right at the moment, it seems to me the
11   CHS, as far as Troup, may be a little bit on the
12   periphery of just somebody that -- you know,
13   obviously, everybody would like to know who is there.
14   But if I start saying I'm going to disclose every CI
15   to see if they were there, I think I've just pretty
16   much required every CI to be disclosed.  So I think
17   it's got to be higher than that.
18          So right at the moment, I'm inclined to
19   leave this one on the Jencks disclosure list, but
20   maybe you can bulk it up with what you get with
21   Cheech.  And I'll think about it.  I'm not making a
22   final final here, because I don't have to because of
23   this Jencks issue.
24          MS. HARBOUR-VALDEZ:  May we also submit
25   additional briefing on the CI analysis, if we're able

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   to find anything?

2          THE COURT:  Yeah, obviously, you can send

3   that to me.  And we can talk a little bit about how

4   we want to get that done.  But I probably need some

5   help there.  I want to think that through.  It looks

6   like some thoughtful judges have made their rulings

7   on it.  But I want to give it some thought, too,

8   before I just adopt somebody else's analysis.

9          MS. HARBOUR-VALDEZ:  Okay.  Thank you, Your

10  Honor.

11         THE COURT:  All right.  Thank you,

12  Ms. Harbour-Valdez.

13         All right.  Shall we, then, go to Daniel

14  Sanchez?  I think he also is making this request.

15  Mr. Jewkes?

16         Let me ask Ms. Wild, do we have different

17  colors here?  This is not my courtroom, so all the

18  usual stuff I have is not here.  I'm going to see if

19  I can get a different color.  I've got yellow, I need

20  a different color.

21         Mr. Jewkes?

22         MR. JEWKES:  Your Honor, I'll be very

23  brief.  We did join in on the request.  But at this

24  point, I have nothing specific to add as to what's

25  been said by Ms. Harbour-Valdez and Mr. Hammond.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

e-mail: info@litsupport.com

1          THE COURT:  What is your interest in this

2    CHS?  What's your involvement?

3          MR. JEWKES:  Well, we have an interest in a

4    different CHS.

5          THE COURT:  Not this one.

6          MR. JEWKES:  Not this one.  Counts 6 and 7

7    in 15-CR-4268, with regard to allegations that

8    paperwork came down from the PNM, Penitentiary of New

9    Mexico, to Southern New Mexico, regarding Javier

10   Molina.

11         THE COURT:  Okay.  Let's separate -- I'll

12   come back to the Molina murder in a moment.  So let

13   me deal with Mr. Sanchez.  So I take it from that,

14   Mr. Jewkes, you don't need anything on this CHS?

15         MR. JEWKES:  That's correct, Your Honor.

16         THE COURT:  All right.  Let's see.  Mr.

17   Lowry, Mr. Baca -- so I'll use the pink highlighter

18   on you, Mr. Lowry.

19         MR. LOWRY:  Thanks.  I'm not afraid of

20   pink, Your Honor.  Neither is the NFL, apparently.

21         Your Honor, I'm going to deviate from the

22   briefing a little bit on the argument we made for the

23   disclosure of this particular CHS.

24         If you look -- Mr. Perez was able to get

25   the identity of the CI because this particular CHS

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 820-6349                                    FAX (505) 843-9492
                                                            1-800-669-9492
                                               e-mail: info@litsupport.com



1    had alleged that -- if I'm looking at 698-1, on the
2    discovery disclosure, it says, "Rudy Perez, a/k/a
3    Rude Dog assisted in the killing of Javier Molina.
4    Perez provided his walker to make shanks that were
5    used in the murder."
6            And here's why that's critical in terms of
7    Mr. Baca's case.  And I'm going to back up and give
8    you the Government's theory, as you had asked
9    previous defense counsel.  The Government's theory is
10   this:  Mr. Baca is housed in Level 6 at PNM in Santa
11   Fe.  And that somehow, yet undisclosed to the
12   defense, Mr. Baca was able to issue paperwork that
13   went from Level 6 to Level 5 at PNM, and then was
14   couriered from Level 5 of PNM down to Southern in
15   order to give the authority to murder Mr. Molina.
16           And according to the discovery, and what we
17   know about Molina, the Government's allegations of
18   the Molina murder, that paperwork arrived on a
19   Friday, and Mr. Molina was killed -- well, the
20   paperwork arrived on a Thursday; it didn't get into
21   the hands of the people in Mr. Molina's pod until
22   Friday, and then Mr. Molina was allegedly killed
23   based on the paperwork.
24           But what this confidential human source
25   indicates is something entirely different, is that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

```
 1    there was a plot to kill Mr. Molina some time before
 2    the paperwork ever arrived, was in the equation, or
 3    anything.
 4              THE COURT:  Now, how do you get that out of
 5    here?
 6              MR. LOWRY:  Because it says, "Perez
 7    provided his walker to make shanks that were used in
 8    the murder."
 9              THE COURT:  Okay.
10              MR. LOWRY:  And I don't think that's
11    something that could have happened instantaneously,
12    even on a good day, with the ingenuity of the best of
13    criminal intent, within the confines of the
14    Department of Corrections.
15              So what this statement indicates to me is
16    that this murder was some time in planning, and that
17    it took a considerable amount of time to manufacture
18    the weapons that were used in the Molina murder.  And
19    that the Molina murder couldn't have happened, as the
20    Government has alleged, based on this mythical
21    paperwork.
22              THE COURT:  I'm not an expert on shanks,
23    but it doesn't seem to me that it would take that
24    long to get a piece of that metal out of a walker and
25    use it as a shank.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            MR. LOWRY:  But I think if you look at the

2     shanks that were prepared, that were disclosed in

3     discovery --

4            THE COURT:  You've seen them?

5            MR. LOWRY:  There are photographs of them.

6     And these are metal rods that have been sharpened,

7     shaven into lethal weapons.  And it would take some

8     considerable amount of time, given the limited amount

9     of tools available within the Department of

10    Corrections, to manufacture something of that nature.

11           THE COURT:  All right.  Go back over it

12    then.  Tell me the timeline again, how long it would

13    have taken to make that.

14           MR. LOWRY:  Well, Your Honor, I don't

15    have -- at this sitting, I don't have a prison expert

16    or, you know --

17           THE COURT:  No, I just meant what you told

18    me earlier.  You told me that the paperwork didn't

19    get there until such and such.

20           MR. LOWRY:  The Government's theory, as I

21    understand it, is that there were couriers that

22    brought the paperwork down from Santa Fe to Las

23    Cruces; that the paperwork arrived in the possession

24    of two individuals on a Thursday.  And just given the

25    nature of prison life, that paperwork was apparently

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 820-6349                                                 FAX (505) 843-9492
                                                                   1-800-669-9492
                    BEAN                                            e-mail: info@litsupport.com
                    & ASSOCIATES, Inc.
                    PROFESSIONAL COURT
                    REPORTING SERVICE

1    in their property, and they didn't receive that

2    property until Friday, approximately during the lunch

3    hour, or just after.  And that, just after the lunch

4    hour, when this paperwork became available to the

5    individuals who couriered it down, that paperwork --

6    allegedly in the Government's view -- was transferred

7    from one pod to another pod, and then reviewed by the

8    people in that pod who, according to the Government's

9    theory as to Mr. Baca, then murdered Mr. Molina based

10   on this paperwork.

11              THE COURT:  So 24 hours to make a shank?

12              MR. LOWRY:  Well, that's what -- if this --

13              THE COURT:  And there is nothing that

14   indicates that they weren't making shanks before

15   this; right?

16              MR. LOWRY:  No.  But if you read this, as

17   the CHS conveyed it to the Government, he provided

18   his walker to make the shanks that were used in the

19   murder.  So it indicates, I think, as Mr. Villa

20   successfully argued, that if this is just random, and

21   that Mr. Perez just gave his walker over to make

22   shanks just for the general use within the prison

23   pod, then Mr. Perez has -- is not a part of this

24   conspiracy.  Because, unless he provided his walker

25   for a specific purpose for this specific murder, then



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Mr. Perez has no involvement in this conspiracy, and

2    should be dismissed.

3              But, from my understanding, this CHS is

4    trying to insinuate that Mr. Perez was part of the

5    conspiracy and gave his walker to his co-conspirators

6    for a specific purpose, and that would be to

7    effectuate the death of Mr. Molina.

8              Otherwise, Mr. Perez should be dismissed.

9              THE COURT:  All right.  Anything else, Mr.

10   Lowry?

11             MR. LOWRY:  No -- so I think this CHS would

12   be exculpatory as to Mr. Baca, given that, if the CHS

13   is correct, then this murder didn't happen based on

14   any paperwork.  And in fact, as we set forth in the

15   briefing, we don't think this paperwork ever existed.

16   This paperwork is a fiction based on other people

17   that had a motive to create it, you know, to divest

18   themselves from culpability in this case.

19             THE COURT:  All right.  Thank you, Mr.

20   Lowry.

21             Anybody want to help Mr. Lowry out?  Can

22   you think of any argument that would be useful to him

23   in asking for Mr. Baca's defense?

24             Mr. Hammond, you've got your hand up?

25             MR. HAMMOND:  Maybe I can save the Court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    some time.  We are in the same count with Mr. Baca.

2    The story that Mr. Lowry recounted is a story that,

3    in one version of the Government's case, results in a

4    shank being in the hands of our client, and that

5    shank being used to carry out this killing.  We have

6    seen discovery in this case that says that the shank

7    or shanks came from the walker.  We have seen other

8    discovery that says that the shank or shanks did not

9    come from the walker.

10              For us, we think it's as important for our

11   client -- who is alleged to have been directly

12   involved in the homicide -- to know exactly what

13   Mr. Perez is finding out; who is this CI, and what

14   information does he have that would suggest that in

15   some way that there had been a coordinated plot or

16   plan to kill Mr. Molina?

17              The only evidence we have, other than from

18   a cooperating defendant, is that this homicide was

19   not an ordered hit from on high, but was a result of

20   a beef between two inmates.  That would be very

21   important in this case.

22              And as far as I can tell, other than the

23   one cooperating defendant, who is sitting here to my

24   right, there is no other witness that we have been

25   told about who would say that there was a plan or a

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 820-6349                                     FAX (505) 843-9492
                                                          1-800-669-9492
                                                    e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    plot.  And so for us, in the defense of our client,

2    we very much need to know, just as Mr. Perez needs to

3    know, who is saying that these shank or shanks were

4    part of a coordinated plot?

5            THE COURT:  Now, Mr. Montoya is accused of

6    actually physically killing Mr. Molina; right?  So

7    he's different than Mr. Baca here; right?

8            MR. HAMMOND:  The Government's claim is

9    that Mr. Armenta and Mr. Molina apparently both had

10   shanks and joined in the killing.

11           THE COURT:  So what are they excusing Mr.

12   Montoya of doing?

13           MR. HAMMOND:  I'm sorry, Mr. Armenta and

14   Mr. Montoya, both having shanks.

15           We also, Your Honor, are very interested in

16   knowing whether this man is, in fact, an eyewitness.

17   We have found no other eyewitness who confirms the

18   account given.

19           THE COURT:  But again, doesn't that put you

20   then in the same position that I was talking to

21   Ms. Harbour-Valdez about?  If everybody is going to

22   be -- if we're going to disclose all CIs, just

23   because we want to find out if they're witnesses,

24   I've lowered the standard, I think, to you get every

25   CI, but you'd also get it of everybody?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. HAMMOND:  Well, I would hope that the
2     reason that the Government concluded that it would be
3     wise to turn over the identity of the CI to Mr. Perez
4     is the same reason why good counsel, I think, has
5     suggested that the person actually accused of
6     stabbing the victim should have that same
7     information.
8              THE COURT:  Well, I guess, you know, the
9     Government can speak for itself, if it wants to.  But
10    I would think with Mr. Perez, if I understand his
11    situation, this is the only point -- I guess he's
12    mentioned 18 times, if I recall, in the 40,000
13    pages -- and this is the only thing that is in any
14    way inculpatory of him.  And this is it.  If this guy
15    is believed, then Mr. Perez was part of the murder.
16    If he's not to be believed, I don't guess there is
17    any other evidence against Mr. Perez.  Whereas, it
18    seems that that's a different situation.  I probably
19    would have, if the motion would have persisted,
20    required the CI to be made available to Mr. Villa.
21             But it seems to me that you're kind of in
22    the same position that Ms. Harbour-Valdez' client is
23    in, Mr. Troup, as far as just wanting to know whether
24    he's -- this CHS saw this murder.
25             MR. HAMMOND:  Well, I don't think that it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     just whether he saw the murder.

2            Maybe it would be helpful to back up for a

3     moment, and recall that this is the case that was

4     prepared to go to trial in state court in the fall of

5     2014.  At that time, this witness was unheard of.

6     The only testimony that the State of New Mexico was

7     prepared to offer was the testimony from Mr. Armenta.

8            But we then had that dismissed, and the

9     federal indictment brought.  And then, months later,

10    we had Mr. Perez and Mr. Herrera added to the case.

11    They were added, I think from the Government's

12    standpoint, for a reason.  Without being able to show

13    that the shank or shanks were themselves part of the

14    planned and coordinated assault, this is just another

15    prison homicide.

16            And so, for the same reason that it was

17    important to the Government to amend its indictment,

18    we think it's important to us, at least for the

19    defendant who is accused of having been involved in

20    the stabbing, to know who it is that says that the

21    shanks were provided for this purpose.

22            THE COURT:  All right.  Thank you,

23    Mr. Hammond.  I'll let -- Mr. Hammond is beginning to

24    argue his interests in trying to get this CHS.  I'm

25    still focusing on Mr. Baca's.  So does anybody else

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 820-6349                                             FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
1    want to say anything on Mr. Baca, Mr. Lowry's request
2    for this?  Because I see the -- to me, the
3    differences between Montoya and Mr. Baca may be
4    material.  Let me see if anybody has anything else
5    they want to say on your request.  Then, if you want
6    to say something more -- all right, Mr. Lowry.
7              Mr. Castle wants to say something.
8              MR. CASTLE:  Judge, I'll just talk real
9    loud this time.
10             The problem here is a problem that's going
11   to reoccur with all these CIs.  And that is that the
12   Government's reports are often devoid of any
13   information as to whether the confidential source has
14   personal knowledge of that which is being reported.
15   So there is no way to determine whether they're an
16   eye and ear witness to a particular thing that
17   they're recounting, whether they're a hearsay
18   witness.  And so that's a recurring problem.
19             And so one of the solutions to the
20   problem -- and I just offer this -- is that the
21   Government is probably aware, based upon their
22   interviews with these witnesses, whether they are, in
23   fact, percipient witnesses, or whether they're just a
24   witness that is going to give overall background
25   about the SNM, for example.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              So what all these attorneys seem to be
 2     getting at is, we don't know whether this is a
 3     percipient witness under 613, Federal Rule 613, or
 4     whether it's not.  And, instead of us all guessing,
 5     and finding out perhaps at the last minute, right
 6     before trial, that they were a percipient witness,
 7     they were aware of exculpatory information, or they
 8     heard it through the grapevine, the Government could
 9     disclose to the defense who are the percipient
10     witnesses here in these materials.  It would cut down
11     on the number of motions to disclose confidential
12     informants considerably.
13              And I just offer that to the Court.
14              THE COURT:  All right.  Thank you,
15     Mr. Castle.
16              Anyone else helping Mr. Lowry, here, his
17     request?  All right.  Mr. Lowry?
18              MR. LOWRY:  Your Honor, just before the
19     Government responds, I want to follow up with a point
20     that Mr. Hammond made, that I think is deserving of
21     some acknowledgment.
22              As we said in our brief, I think one of the
23     most important -- another important factor to
24     consider, when the Court is deciding to disclose this
25     confidential human source's identity, is the fact
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    that in the disclosure in 698-1, this individual
2    makes the statement that, had this indictment not
3    happened when it did, that Mr. Baca was going to
4    resurrect the SNM and restore it to its former glory.
5              It's not clear from the report, but the
6    intimation is, in my view, that this -- as
7    Mr. Hammond pointed out -- that this CHS is trying to
8    intimate that the Molina murder was part of a broader
9    SNM predicate act, if you will.  And if -- I think
10   the CHS is really saying that it isn't, because this
11   murder was in the plans for a long time before this
12   never-to-be-seen paperwork arrived, then Mr. Hammond
13   is absolutely correct, that this is nothing more than
14   a beef between two inmates that had nothing to do
15   with the SNM.
16             THE COURT:  All right.  Thank you, Mr.
17   Lowry.
18             All right.  Mr. Beck.
19             Put aside Mr. Hammond's interests in this
20   for a second.  Let's just focus on Mr. Baca's request
21   for the present time.
22             MR. BECK:  Sure.  I think what I heard is
23   something about Mr. Baca passing paperwork that made
24   its way down to SNM CF.
25             THE COURT:  Why don't you tell me your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    theory, tell me the Government's theory of Mr. Baca's
 2    role in the Molina murder.  Did you disagree with Mr.
 3    Lowry's characterization of your case against Mr.
 4    Baca?
 5              MR. LOWRY:  I mean, I guess a little bit.
 6    I'm not sure I followed it entirely, and that may
 7    have been my fault.  I think what's important here --
 8    what's most important -- is to, again, go through the
 9    Roviaro analysis, and look what this CHS may offer to
10    Mr. Baca.  I think that's what the Court looks at in
11    this.  And from what I heard, it could offer
12    paperwork -- that Mr. Baca passed that paperwork.
13    But I don't see that --
14              THE COURT:  Well, maybe I'm missing
15    something here.  But this paragraph as to Molina
16    doesn't talk about paperwork --
17              MR. BECK:  Right.
18              THE COURT:  -- so the CHS is not -- he's
19    not offering anything, at least in this document,
20    that talks about paperwork.  Now, that might have
21    been part of the Freddie Sanchez, but not here?
22              MR. BECK:  Exactly.
23              THE COURT:  Now, certainly, Mr. Lowry
24    talked about that was your theory against Mr. Baca.
25              MR. BECK:  Right.  And it is.  I mean, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     is the United States' theory.

2             THE COURT:  But there is nothing here that

3     indicates the CHS knows anything about that?

4             MR. BECK:  Right.

5             THE COURT:  But isn't Mr. Lowry's point --

6     what I hear him arguing, at least most forcefully to

7     me, is that -- let's read this sentence probably the

8     way that's most favorable for your case against

9     Mr. Perez.  And that is that this walker was

10    specifically manufactured or changed into a tool to

11    murder Mr. Molina.  This was a special order.  You

12    know, we're going to take this walker and kill Mr.

13    Molina.  Why isn't this information fairly important

14    as to Mr. Baca that that simply couldn't have been

15    done in the time frame that the Government's theory

16    is proposing; Mr. Baca couldn't have done that?

17            MR. BECK:  Well, I think -- I mean, I think

18    it goes to the importance of -- the significance of

19    the informant's testimony at that point, in balancing

20    the equation.  Because I don't think that --

21            THE COURT:  Let me spin it out a little bit

22    to see if I can maybe make it important.  If your

23    case against Mr. Perez is intact, then doesn't that

24    maybe hurt your case against Mr. Baca, because the

25    timing becomes a pretty important issue there?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BECK:  Not necessarily.

2          THE COURT:  Not necessarily, but I mean, it

3   could; right?

4          MR. BECK:  Right.  I think it could.  I

5   mean, I think also --

6          THE COURT:  I mean, I'm not an expert in

7   shanks, but --

8          MR. BECK:  Well -- and I'm not either.  But

9   I think if you had shanks lying around --

10          THE COURT:  But that's what I'm saying:

11  You can't assume that right now, because the reason

12  that -- your case against Mr. Perez is that it's a

13  special order:  Take this walker and kill Mr. Molina.

14          MR. BECK:  Right.  And so, if we assume

15  that --

16          THE COURT:  It's not just lying around.

17          MR. BECK:  I guess, if we assumed that --

18  so I guess there is two points.  First off, if we

19  assumed that, I don't know what this CHS would offer

20  that others wouldn't.  Because I don't think that

21  there is anything in here that indicates he saw the

22  shanks being made, or anything of that nature.

23          Also, the United States' case is that the

24  Molina murder was outstanding for a number of years.

25  It's not as if there was paperwork passed on one day

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    and it happened the next day.  That's not what we are

2    contending here.  So I understand the hypothetical.

3    That's not the case that the U.S. is presenting.

4          And I'm going to step back and say that --

5    I guess the second point here was that this was all

6    related to -- and that this CHS may have information

7    about Baca's grand plan to reinvent SNM.

8          Well, as you heard the testimony yesterday,

9    there are multiple sources from which that

10   information is coming.  So it's not -- so this CHS's

11   information on that is not significant.  There is

12   also a recording of Baca himself who says that that's

13   been provided.  So this CHS saying that wouldn't

14   offer anything more significant than Mr. Baca's

15   recorded testimony.

16         So, again, I think that's what the Court

17   has to look at:  Is what is the significance of this

18   CHS's testimony?  And we're not getting it there.

19         Let me go back for a second and say that --

20   I think the Court was starting to accept the argument

21   that Mr. Perez got the information because there was

22   some Roviaro analysis.  We didn't litigate that

23   issue.  And Mr. Perez got the information because the

24   United States agreed to give it to him, give it to

25   his counsel.  So we don't agree that even Mr. Perez
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   would have been entitled to his CHS information under

2   the Roviaro analysis.  So maybe we should be careful

3   in distinguishing that, too.

4              THE COURT:  I know.  But I mean, I prepared

5   for this hearing, so I had to make a tentative

6   decision as to what I was going to do on that.

7              All right.  Anything else, Mr. Beck?

8              MR. BECK:  Not unless you have any

9   questions for me.

10             THE COURT:  Thank you, Mr. Beck.

11             Before I let Mr. Lowry have the last word,

12  anybody else?  Any other defendants want to comment

13  on Mr. Baca's request?

14             All right.  Mr. Lowry?

15             MR. LOWRY:  Your Honor, I really don't have

16  anything else to add to the analysis.

17             THE COURT:  All right.  Thank you, Mr.

18  Lowry.

19             Well, because this is -- I'm going to have

20  to review this in connection with the Jencks, I'm not

21  going to order the production to Mr. Baca at this

22  time.  I'll study the legal issue, and see if this

23  requires any CI analysis.  But if it does require CI

24  analysis, I'm going to think about it a little

25  further.  But I'm inclined to order the production

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 820-6349                                                 FAX (505) 843-9492
                                                                   1-800-669-9492
                     BEAN                                          e-mail: info@litsupport.com
                     & ASSOCIATES, Inc.
                     PROFESSIONAL COURT
                     REPORTING SERVICE

```
1    here because of this timing issue.

2              I realize that there may be strong

3    evidence against Mr. Baca from recordings that links

4    him to this murder.  But I need to figure out whether

5    that still undercuts this theory of:  Just because

6    the Government has got strong evidence linking him to

7    the murder, if that's his defense, it couldn't have

8    happened:  That this information got to him, and then

9    Mr. Perez made shanks out of his walker all within 24

10   hours.  It seems to me that that may be the only --

11   since this is the only source of this information to

12   either Mr. Perez or to Mr. Baca, I may need to

13   require its production if I do the CI analysis.

14              MR. LOWRY:  Your Honor, if I may?

15              THE COURT:  You may.

16              MR. LOWRY:  I just want to correct one

17   thing the Court said.  There are plenty of recordings

18   involving Mr. Baca.  But -- the Government could

19   correct me -- but I don't think there are any direct

20   recordings of him involved in the Molina murder, Your

21   Honor.

22              THE COURT:  Is that correct?

23              MR. BECK:  It's not correct.

24              THE COURT:  That's not correct?  You think

25   you have tapes that directly link --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BECK:  Tapes have been disclosed in
 2    which Mr. Baca admits his involvement in the Molina
 3    murder.
 4            THE COURT:  Okay.  And I'll have to see,
 5    you know, in a CI analysis, since that really hasn't
 6    been briefed, what you may want to do is you may --
 7    you know, I'm probably the only person in the room
 8    that doesn't have a tablet or this 40,000 pages of
 9    information.  So you may need to help me with that
10    point, what evidence you have; if you think that
11    vitiates your need to produce it.  Because you've got
12    strong evidence linking, does that undercut Mr.
13    Lowry's argument?
14            MR. BECK:  And also, as I said, Your Honor,
15    the United States' theory is that -- the evidence
16    that we've produced shows that the Molina hit was
17    outstanding.  So if it was a direct order, it wasn't
18    24 hours later that the shanks were produced and the
19    inmate stabbed.  I understand that that's Mr. Baca's
20    theory.  That's not the United States' theory.
21            THE COURT:  Your theory is not that there
22    was this paperwork that worked from PNM down to
23    Southern?
24            MR. BECK:  Not in one day.  That is the
25    theory that the paperwork came down from (sic)
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Southern.  But I think that is --

2              THE COURT:  From PNM?

3              MR. BECK:  Right.

4              THE COURT:  Came from PNM?

5              MR. BECK:  From PNM to Southern.  It worked

6    its way down.  And it may have been quick.  But the

7    hit on Molina was outstanding for years before he was

8    actually murdered.

9              THE COURT:  And if that's the Government's

10   theory, then why would you -- why, Mr. Lowry, would

11   you want it to be something else?  This short time

12   frame?  Where is that coming from?  I mean, you don't

13   have a theory -- I mean, you're the defense lawyer;

14   you don't have a theory of how your client murdered

15   this person, you have to respond to their theory.

16             MR. LOWRY:  Correct.  And their theory is

17   this homicide was instigated by paperwork that,

18   frankly, just doesn't exist.

19             THE COURT:  Well, okay.  But the reason I'm

20   leaning toward, or was five seconds ago leaning

21   toward granting your CI, was because of this time

22   frame.  But if their theory is that the order was

23   long ago, what is it that you would support that it

24   was a tighter time frame, and you need this to

25   establish that it physically couldn't have been done?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. LOWRY:  Well, then, Your Honor, I think
 2   the theory is that the Molina hit was years ago
 3   maybe -- I think Mr. Molina would have been dead
 4   years ago under the Government's theory of the case.
 5   It still doesn't vitiate the fact that what this CHS
 6   is saying is that these weapons were manufactured
 7   "Johnny on the spot" to murder Mr. Molina.  And that
 8   time line doesn't alter -- is not altered at all,
 9   because, even though they may have evidence that
10   somebody in some distant past wanted Mr. Molina dead,
11   according to the CHS, had no way to clairvoyantly
12   predict this paperwork would have arrived the next
13   day, and so they had to post-haste construct these
14   shanks for this specific murder.
15            THE COURT:  All right.  Well, you both know
16   what I'm thinking, and what I think is the critical
17   point here.  So if there is some particular discovery
18   that you want me to stare at before I make a final
19   decision on the CI analysis, then you probably know
20   what to get me.  Is that clear enough, Mr. Lowry?
21   You know what I'm thinking?
22            MR. LOWRY:  Yes, Your Honor, I do.
23            THE COURT:  And you know -- and I wouldn't
24   mind seeing -- if you think if -- this seems to be
25   news to Mr. Lowry, so he'd probably like to see it,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    too.  If you've got something specific, as far as

2    recordings or something that link Mr. Baca up to the

3    Molina hit orders, then I guess I'd like to see that.

4    Because, if I go into the analysis and think this

5    information is just cumulative, I would think that

6    would be part of CI analysis.

7            MR. BECK:  Right, Your Honor.  And that's

8    what I was saying.  I think we got confused because

9    we started off with your hypothetical.  That's what I

10   was trying to say is that that's not what the

11   Government -- and so, what I understand Your Honor to

12   say is that you'd like at least a little supplemental

13   briefing from Mr. Baca and from the Government with

14   evidentiary basis.

15           THE COURT:  Maybe evidence, the evidence.

16   Because it doesn't seem to me to make sense.  I mean,

17   Mr. Lowry -- he has no incentive to think up a theory

18   how Mr. Baca killed Mr. Molina.  So he's got to

19   respond to yours.  So it seems to me we just take

20   yours.  And then, if it's not helpful to Mr. Baca in

21   trying to defend against that theory -- I thought for

22   a second the time frame might be, and Mr. Perez'

23   involvement coming from this one CI.

24           All right.  So y'all understand?

25           All right.  Where are we on time?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Let's see, let's go to -- let's go another
 2      15 minutes.
 3              Let's see if we can squeeze in Carlos
 4      Herrera's request for this CHS's identity.
 5      Mr. Davis?
 6              MR. DAVIS:  Judge, Michael Davis.  I'll try
 7      and be brief.  Mr. Herrera is also charged in Counts
 8      6 and 7, the murder of Javier Molina.  Like Mr. Perez
 9      and like Mr. Baca, he was not directly involved in
10      the homicide.  And he was actually housed in a
11      connecting cell block called A pod.  The murder
12      occurs in B pod.  And so we have been trying to
13      determine the Government's theory concerning Mr.
14      Herrera's involvement in that murder.  We have the
15      documents and the discovery reviewed so far --
16              THE COURT:  Let me stop you right there.
17      Mr. Beck, are you going to take this?
18              MR. BECK:  Yes, Your Honor.
19              THE COURT:  Do you mind telling what you
20      think -- how you think that Mr. Herrera was involved
21      in the Molina murder, what's your theory?
22              MR. BECK:  Someone else might take the
23      factual part of this.
24              THE COURT:  Okay.  Ms. Armijo?
25              MS. ARMIJO:  Your Honor, Mr. Herrera was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    involved -- we have recordings and admissions from
2    him as to his involvement.  He basically sanctioned
3    the hit as well, and given it, but --
4              THE COURT:  Is he like an officer or a
5    higher up?  Or what does sanction mean?
6              MS. ARMIJO:  He had to approve it.
7              THE COURT:  And that's because he's higher
8    up in the organization?
9              MS. ARMIJO:  He was in a higher position
10   than the ones that actually did the murder.
11             THE COURT:  All right.  So you're not
12   alleging that Mr. Herrera was physically involved in
13   the killing?
14             MS. ARMIJO:  No.
15             THE COURT:  Did he shank, manufacturing or
16   paperwork, or anything like that?  All he did was
17   just say, Yeah, that's a good thing, let's kill
18   Molina?
19             MS. ARMIJO:  Approval, approval that was
20   necessary.  And we have -- and as far as the strength
21   of his case, we have already disclosed a recording
22   that he made which he details his involvement.
23             THE COURT:  Involvement, okay.  Is that
24   helpful?
25             MR. DAVIS:  Well, yeah, except for the fact
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that I've reviewed many of the recordings.  And I'm

2    probably as surprised as Mr. Lowry was that I don't

3    recall that -- any recording where he's admitted to

4    being involved in the Molina murder.  But having said

5    that, we did suspect that it was their theory that he

6    was somehow involved in giving a nod or some sort of

7    sanction.

8              THE COURT:  So it's approval; he's not

9    physically doing anything?

10             MR. DAVIS:  Right.  He's in another

11   completely different cell block, Judge.  And the

12   evidence would be from the main witness, Mr. Armenta,

13   who apparently receives information that he had seen

14   Carlos talking through a door that separates the two

15   cell blocks to another inmate.

16             But the curious thing about it, and the

17   reason why we're requesting disclosure of this

18   particular CI, is because if, in fact, Mr. Herrera

19   was a higher ranking member of SNM, that should have

20   been mentioned by the CI in this report.  Because,

21   not only does he have intimate knowledge of the

22   homicide, because of the shanks that were allegedly

23   provided by Mr. Perez, but he goes on to say about

24   how he knows -- this CI knows Mr. Herrera's mother.

25             Now, a search warrant was executed on Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

138

1    Herrera's mother back in March.  It appears that Mr.

2    Herrera's mother has been involved in drug activity

3    for many, many years; decades.  And apparently, they

4    allege, the Government alleges that during the course

5    of those years, that she and various family members

6    have been providing sources of heroin to the various

7    prison facilities.

8              And so, when I reviewed the discovery, what

9    I've reviewed is about 15 documents that make mention

10   of Ms. Herrera, and almost all of them relate to

11   family members, or involvement in this drug dealing.

12             There is no documents that were received

13   that anywhere classifies Mr. Herrera as a high

14   ranking SNM member, a leader or a shot caller, except

15   for one document where another CI -- perhaps this

16   one, we don't know -- alleges that he was running a

17   yellow pod, which we believe is basically A pod, the

18   pod that he was in.

19             So it's our position that, because of the

20   fact that there is so scant evidence in the discovery

21   provided regarding anything involving the Molina

22   murder with Mr. Herrera, there are discovery involved

23   implicating him and his particular involvement, or

24   his family's involvement, in drug dealing over the

25   years.  This spans over a 15 year period.  So some of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    the reports relate to things that happened in 2008.

 2            But over the years, his mother -- he's got

 3    brothers that are in the prison facility -- and so

 4    when a brother is mentioned, they'll say the brother

 5    of Carlos SNM member, Carlos Herrera; that's how his

 6    name has been popping up.  But nowhere have we

 7    identified anything that clearly acknowledges Mr.

 8    Herrera as some kind of a shot caller in A pod.

 9            So it's our position that, because this

10    particular CS notes that he has intimate knowledge of

11    what happened when the Molina murder -- but also

12    knows Mr. Herrera's mother -- knows that he's who he

13    is, and worked his mother, it makes sense, and only

14    follows that if he was giving information, which he

15    does in this report that you have in front of you --

16    he's giving a litany of information to the feds about

17    various people -- it certainly follows that when he's

18    talking about Carlos Herrera, he's going to say, Oh,

19    by the way, Mr. Herrera runs A pod.  Mr. Herrera was

20    the one who gave a nod, or somehow sanctioned the

21    killing of Mr. Molina.  And it's not mentioned there

22    in any way.

23            And so that fact alone tells us that's

24    exculpatory.  Because it's our position he's not a

25    shot caller.  That, in fact, he didn't sanction any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    homicide.  In fact, he wasn't involved at all in the
 2    murder.  He's a bystander.  He was aware of it when
 3    it occurred.  But he's not a shot caller in any way.
 4          And it's our position that that is
 5    exculpatory.  If we had the identity of that CS, we
 6    could obviously talk to that person, and, in fact,
 7    verify that Mr. Herrera is not who the Government
 8    thinks he is.  Otherwise, he would have said so in
 9    this report.  That's why we're requesting disclosure
10    in our motion.
11          Thanks, Judge.
12          THE COURT:  All right.  Thank you, Mr.
13    Davis.
14          Mr. Beck -- let me ask, anybody else want
15    to help Mr. Davis out, help him get this?
16          All right.  Mr. Beck?  Probably for my
17    record, I should have asked you this the first time
18    we do this.  Why does the Government not want to
19    disclose CHS to these people?
20          MR. BECK:  To protect the CHS's safety,
21    Your Honor.
22          THE COURT:  And tell me why you're
23    concerned about his safety.
24          MR. BECK:  The way the SNM operates is to
25    put out hits, or whatever you want to call it, hits;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    whether it's assaults or whether it's murders on SNM

2    members who give statements to law enforcement or

3    anything like that.  So the fact --

4              THE COURT:  So your reason is for his

5    physical safety?

6              MR. BECK:  That's right, Your Honor.

7    Physical safety.  The fact that this document that

8    we're looking at 698-1 exists puts him in harm's way

9    in this particular case.

10             THE COURT:  And Mr. Davis' particular

11   request on behalf of Mr. Herrera?

12             MR. BECK:  So what I think -- I mean, I

13   think Mr. Davis is asking to impeach by omission --

14   which is appropriate when you're at trial, to go

15   against this witness, or even if we're talking about

16   some hypothetical CI that it's not this person, and

17   to say in this report:  You mentioned his mother, but

18   you never mentioned him; you never say that he's a

19   captain, did you?  And you can do that.  But that

20   does not play into the calculus under Roviaro,

21   whether this informant has -- should be disclosed,

22   and has testimony that should be substantial help to

23   Mr. Herrera.  And there is nothing indicated on this

24   document that he does.  The fact that he didn't call

25   him a captain, while notable, is not going to provide

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

142

1    anything that hasn't been provided in the discovery.

2    And in fact, as we just saw it, it may already be

3    helpful to Mr. Herrera in the form that it exists

4    now.

5              When we're looking at the Roviaro analysis,

6    certainly, the fact that someone isn't mentioned

7    doesn't require counsel for disclosure of the CHS.  I

8    don't know if you have --

9              THE COURT:  I don't.  Thank you, Mr. Beck.

10             Anyone else want to speak before Mr. Davis

11   gets the last word on his request?

12             All right.  Mr. Davis?

13             MR. DAVIS:  Well, Judge, it may be

14   impeachment by omission, but it's real important

15   impeachment.  There is no evidence that he was

16   involved in the murder.  And their theory is that he

17   was --

18             THE COURT:  You may want to talk to them

19   after this to get the specific Bates number, whatever

20   they're looking at.

21             MR. DAVIS:  Could I borrow your pink

22   highlighter?

23             THE COURT:  You're welcome to it.  Doesn't

24   work very well.  It's a Government issued pink.  I

25   can't get much ink out of it.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. DAVIS:  I will do that, I will make

2    that call.

3           But aside from what they have said, I

4    haven't seen it; my defense team hasn't seen it.  I

5    wouldn't make these assertions, Mr. Lowry wouldn't

6    have made these assertions if we'd have seen this

7    information.  I wish I'd have been --

8           THE COURT:  I recall at a hearing that they

9    indicated that they were willing to match some --

10   correct me if I'm wrong -- if the defendants want

11   some specific matching of defendants to the evidence,

12   y'all were willing to do that.  Am I just imagining

13   that, or did y'all actually say that?

14          MS. ARMIJO:  Well, we said it in the Garcia

15   context, because it was the drug case.  And they were

16   saying that they were lost.  I don't know what Mr.

17   Aoki does with this evidence.  I know that when we

18   disclose it, despite what people say here, it is

19   listed out by the murders and everything else.  I

20   know that at the last hearing Ms. Strickland was

21   saying she didn't have anything disclosed to her.

22   And during that very hearing, as to the Molina case,

23   we got confirmation from Mr. Aoki that it had been

24   disclosed twice.  It was in the evidence.

25          THE COURT:  But I mean, I guess what I'm

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   sort of asking is, are Mr. Lowry and Mr. Davis free

2   to call you or Mr. Beck, and say:  You mentioned at

3   the hearing specific recordings that link us to the

4   Molina murder; and then, in Mr. Baca's case,

5   specifically to the Sanchez murder, can you point out

6   those recordings?  Would you be willing to link those

7   up for them?

8         MS. ARMIJO:  Your Honor, that's a slippery

9   slope.  Because in this case, we -- the whole point

10  of the discovery coordinator is that we would not be

11  fielding questions like this.  That, when they had

12  issues, they would go to --

13        THE COURT:  But this, to me, is not

14  asking -- you know, I'm not so interested in you

15  producing the material, but just -- I'm asking -- for

16  example, I'm asking Mr. Beck to tell -- to show me,

17  for example, what he thinks is strong evidence of Mr.

18  Baca's involvement in Mr. Sanchez' death.  He said he

19  would.  Same token, would he be able to do that if

20  Mr. Lowry called him and said, Hey, you mentioned

21  that, you're going to give it to the judge, can you

22  tell me?

23        MR. BECK:  Your Honor, no -- I mean, and I

24  say no because it's not an issue in front of the

25  Court.  We've been willing to work with defense

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 820-6349                                                              FAX (505) 843-9492
                                                                                    1-800-669-9492
                                                                           e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    counsel on many of these issues.  But we can't go to

2    the extent that we're fielding calls from defense

3    counsel telling them what the evidence is against

4    them.  They have the evidence disclosed.  They asked

5    for the 10,000 pages that we just disclosed from the

6    FBI files that we don't think is material, because

7    they asked for it, because we agreed to disclose it,

8    because Your Honor asked us to.

9              But we will not -- and I appreciate that

10   it's a hard position to be in, but if there is a

11   motion to disclose a CI, which there is here, and

12   they come forth with some basis that the CI should be

13   disclosed -- which they did -- we can rebut that with

14   evidence.  And then certainly, it ferrets it out.

15   And I appreciate that that puts a burden on the

16   Court.  It puts a burden on us.  And it may be easier

17   to field phone calls.  But we just can't go down that

18   slope.

19              I think in Ms. Strickland's case, she

20   pointed out to us, Here's eight recordings, I

21   listened to these.  They're not in it.  And we

22   looked.  A couple of them were, a couple of them

23   weren't.  And we've worked that out.

24              So I think my position in this has been

25   consistent that the United States will work with

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 820-6349                                          FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   attorneys when they come with some factual basis as

2   to what they need.  And I don't think we've changed

3   that position.  But when they come, and they ask for:

4   You said this at the hearing, where is the evidence

5   of this, we can't go down that road.  And we

6   certainly can't go down:  I'm looking for this

7   evidence, can you point me to it?  And so I just

8   don't think that's a point we're willing to give on.

9           THE COURT:  Well, let's stick to the issue.

10  I guess I've been around long enough that I remember

11  the days when this U.S. Attorney's Office would hand

12  you a book, and say, Here's the evidence against you,

13  and it was fairly clear as to what their theory

14  against you was.  But I can't tell the Government how

15  to prepare their case, but -- well, let's move on to

16  this issue, Mr. Davis.  We're not going to solve that

17  problem.

18          MR. DAVIS:  Judge -- and I have to say I

19  miss those days as well.  And it seems like I should

20  get one phone call to the Government, isn't asking

21  that much.

22          THE COURT:  Well, they didn't say they

23  wouldn't take your calls.

24          MR. DAVIS:  I'm not asking for everything.

25  I just want that one recording to be identified, if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    they have such a recording, which I assume they do.
2             But just to highlight, Judge, if their
3    theory is that he's a shot caller, that he's in upper
4    management or some kind of a -- in a leadership
5    position in SNM, and he was in that position on the
6    day that the murder occurred, then this confidential
7    human source would have identified him as such.  And
8    he didn't do so here.  And so we ask that, obviously,
9    that would be exculpatory, because it's our position
10   that he's not.  And that's why it wasn't disclosed
11   here.  He's not a leader.  He's not a shot caller.
12   And he doesn't run any pod.
13             Thank you.
14             THE COURT:  All right.  Thank you,
15   Mr. Davis.
16             Well, I probably am not going to start
17   disclosing CIs because of what's not in these case
18   reporting documents or CHS reporting documents.  I'm
19   a bit of a proponent of the dog doesn't bark theory
20   from time to time.  But it's probably got to be
21   stronger than that.  So I probably am not going to
22   make the Government disclose CHSs on what's not in
23   these reports without a stronger showing.
24             All right.  Well, I propose we go to lunch,
25   come back at 1:00.  Take your request on behalf of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

148

```
1    Mr. Montoya.  That would be a short lunch, wouldn't
2    it.  Let's shoot for 2:00, 2:05.  Obviously, nobody
3    is going to start without anybody.  And it takes a
4    while to get in and out.  So eat your meal.  We'll
5    come back and we'll get started around 2:05,
6    somewhere around there.  All right.  Appreciate your
7    hard work.  See you this afternoon.
8              (The Court stood in recess.)
9              THE COURT:  All right.  Mr. Romero, are you
10   on the phone?  Mr. Romero, do you have your mute
11   button on?
12             MR. ROMERO:  I am here, Judge.  My
13   apologies, I am here.
14             THE COURT:  Where are you, Mr. Romero?
15             MR. ROMERO:  I am in Moriarty, New Mexico.
16             THE COURT:  You told me this morning about
17   9:20 that you were an hour out.  Why are you not
18   here?
19             MR. ROMERO:  I'm having car trouble, sir.
20   My apologies.
21             THE COURT:  All right.  Mr. Hammond, do you
22   want to take up -- you've given me a preview of Mr.
23   Montoya's request.  Anything else you want to tell me
24   now that I'm focused on Mr. Montoya, rather than
25   still focusing on Mr. Lowry and Mr. Baca.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1         MR. HAMMOND:  Yes, Your Honor, and first,
2    my apology.  I didn't really realize that I was
3    taking things out of order.
4         THE COURT:  It's just my mind.  I've got to
5    focus on each one of these defendants one at a time,
6    so --
7         MR. HAMMOND:  Well, I think that with
8    respect to this particular disclosure on this CI, the
9    position we're in is very much like the one that Mr.
10   Baca's attorneys find themselves in.
11        Let me go back to something that the
12   Government said this morning, and see if we can get
13   some common understanding.  The understanding that
14   we've had, at least among the defendants who were
15   involved in the Molina counts, is very much like what
16   Mr. Lowry summarized this morning.
17        THE COURT:  That was your understanding;
18   when you heard him explain the Molina situation, you
19   thought it was sort of somebody like Mr. Baca, about
20   a week out before his death, Mr. Molina's death,
21   found out that there was cooperation, and it was a
22   pretty quick order to kill?
23        MR. HAMMOND:  I don't even think it was a
24   week, Your Honor.  I think what we have been told is
25   it was a matter of a day or two.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  What were you looking at or
 2   hearing or thinking to draw that conclusion rather
 3   than the one that the Government is saying today?
 4            MR. HAMMOND:  Well, that is the account
 5   that is contained, I think, in several 302s that
 6   we've been given.  But it also is consistent with the
 7   statements made by the Government's cooperating
 8   defendant, Mr. Armenta, who says that he was ordered
 9   to do this hit; that the order had come down on high;
10   that he had no opportunity to think about it or talk
11   about it; that it had to be done, and done right now.
12            THE COURT:  This is what Mr. Armenta had
13   said?
14            MR. HAMMOND:  Yes.
15            THE COURT:  And Mr. Armenta's role is that
16   he was physically involved in the killing?
17            MR. HAMMOND:  Mr. Armenta, from what we can
18   tell, was the principal and, we believe, only killer;
19   that is, that he shanked Mr. Molina in a room that
20   we're going to see on Friday, thanks to the Court.
21   And that he then came down the stairs, and that he
22   was again assaulted by Mr. Armenta.
23            THE COURT:  Say that again.  I missed it.
24            MR. HAMMOND:  So the account that we've
25   seen -- and it's in videos -- is that there was some
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 820-6349                                                             FAX (505) 843-9492
                          BEAN                                                  1-800-669-9492
                          &ASSOCIATES, Inc.                          e-mail: info@litsupport.com
                          PROFESSIONAL COURT
                          REPORTING SERVICE

1    kind of an altercation in a cell on the second floor;

2    that after that altercation, Mr. Molina came out.

3    You can see in the video that there is blood on his

4    chest.  He goes down the steps, both -- my client

5    happens to come down the steps, Mr. Armenta comes

6    down.  My client has a very brief fist-to-fist

7    encounter at the bottom, no shank.  And Mr. Armenta

8    comes down.  And you can't see exactly what's going

9    on in the corner, because the camera isn't there.

10   But the bottom line of this is that Mr. Molina is

11   shanked something like 40-something times.  And then

12   he dies there at the bottom of the steps.

13            Now, the account that we've been given is

14   that all of that was arranged essentially overnight;

15   that Mr. Baca had given some order; that there was

16   paperwork, the paperwork was brought down from Santa

17   Fe, just as Mr. Lowry summarized it this morning.

18   Somehow that paperwork had been passed between A pod

19   and B pod, and the instruction had been given to

20   carry out this hit right now.

21            THE COURT:  Is the story, though -- is what

22   the Government is saying today inconsistent with this

23   story, in the sense that Mr. Baca could have said two

24   years earlier, "Kill Mr. Molina," but then there was

25   some urgency, and they just got it done?

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                     (505) 843-9494
FAX (505) 820-6349                                 FAX (505) 843-9492
                                                   1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1          MR. HAMMOND:  Right, and that's a really

2    interesting question.  I think you and I are focused

3    on exactly what, to me, makes this shank, or shanks,

4    so interesting.  I would say it's not, in theory,

5    inconsistent that there had been some outstanding

6    order, an outstanding order for three years, that had

7    not been carried out, or at least in theory an order

8    could be given, Hey, carry out that hit.

9          But if that's the case, how do you explain

10   the shank or shanks?  How do you charge Mr. Perez

11   with having made shanks to be used in this killing

12   if, in fact, it is true that there was an order from

13   on high that was filled out immediately?

14         I'm not a shank expert, but I can tell you,

15   from having done a lot of prison cases, that it's

16   extremely unlikely that one can dismantle a

17   wheelchair, pull off the metal that allegedly is

18   needed, and turn it into a very sharpened weapon in a

19   matter of, essentially, no time.

20         THE COURT:  Okay.  Let's say you've drug me

21   back to where I was when I was talking about Mr. Baca

22   and Mr. Lowry.  How does that help Mr. Montoya,

23   though?

24         MR. HAMMOND:  Because we haven't asked

25   about our understanding of what happened.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Okay.  Tell me that.
 2            MR. HAMMOND:  Ours is that there was a
 3    beef, apparently between Mr. Armenta and Mr. Molina;
 4    that it was not something that came down on high.
 5    That it was the kind of thing that happens.  There
 6    are reasons -- and I won't go into them now -- but
 7    there are reasons why Mr. Armenta and Mr. Molina were
 8    not getting along.  And so something happened between
 9    those two men.  My client was there.  You can see on
10    the video, he was present for part of it.  But he was
11    not a participant.  There is no DNA on him, on our
12    client at all, of this bloody victim.  There is none
13    of our client's DNA on the victim.  And so we have
14    thought -- and have thought from the beginning, this
15    is not new information -- we thought that the
16    Government just got this wrong; that this was a beef
17    between two men, one of whom is dead, and the other
18    of whom chose to cooperate, and is now telling a
19    story which, with respect, I would say is false.
20            But the shank is a huge part of that story.
21    Where did the shank come from?  Who ordered it?  If
22    that shank was ordered from on high to be used, how
23    did they get that in a day?
24            And so now we have a second informant.
25    This is the first time we had heard that there was a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    second informant.

 2            THE COURT:  Wait.  Who is the second, who

 3    is the first?

 4            MR. HAMMOND:  He's the one that we're

 5    talking about now.  Mr. Armenta was the first.

 6            THE COURT:  Oh, okay.  All right.

 7            MR. HAMMOND:  And for a long time we

 8    believed he was the only one.

 9            THE COURT:  Okay.

10            MR. HAMMOND:  Now, we're told in this 302

11    that there was a second cooperator who told the story

12    about Mr. Perez.  And I think that's a critical link

13    in the Government's account of this hit having been

14    ordered by the gang.

15            THE COURT:  All right.  Well, help me a

16    little more with your client.  Neither your version

17    or, I guess, the Government's version is going to be

18    that Mr. Montoya had a shank?

19            MR. HAMMOND:  Well, I don't know what the

20    Government's version is.  I expect that the

21    Government will say that there was more than one

22    shank, which is why I say, "shank or shanks."

23            THE COURT:  But right now -- and maybe Mr.

24    Beck will get up, or whoever, and tell me that he's

25    going to link some shanks with Mr. Montoya.  But I'm
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    hearing a story that doesn't have anything to do with

2    the shanks and Mr. Montoya.  So tell me how Mr. Perez

3    is making shanks out of a walker, how that --

4    disclosing the CHS on this is going to help you in

5    any way.

6              MR. HAMMOND:  As far as we know, based upon

7    the discovery we've been given in this case -- and I,

8    like every other lawyer here, can't tell you that

9    I've looked at every piece of paper -- but on this

10   topic we've tried to be pretty careful.  And our

11   understanding of the evidence is to the extent that

12   there were shanks, they are now saying that these

13   shanks came from the wheelchair or walker or the

14   wheelchair program.  And now we have a witness who

15   says that that's the case.

16             THE COURT:  Okay.  Tell me how that would

17   help you with Mr. Montoya's defense.

18             MR. HAMMOND:  Well, because Mr. Montoya's

19   defense is that he was not a part of any plan at all;

20   that he was, as I said earlier, merely present.  And

21   yet now we're hearing that part of the plan was that

22   Mr. Perez would provide shanks.  And if there are

23   two, then apparently shanks both to Mr. Montoya and

24   Mr. Armenta to commit this crime.

25             THE COURT:  So you're asking for the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    identity of this confidential informant because
 2    you're saying that he can be a source of saying there
 3    was a plan, as opposed to there not being a plan;
 4    this just being a feud between Mr. Armenta and Mr.
 5    Molina.  Is that --
 6              MR. HAMMOND:  I don't know all the things,
 7    obviously --
 8              THE COURT:  Well, I know, but I mean --
 9              MR. HAMMOND:  -- he would say.
10              THE COURT:  -- that's what you're saying
11    this would help you establish is the absence of a
12    plan.
13              MR. HAMMOND:  Well, I think knowing that
14    there is some witness out there who says that there
15    was a direction that Mr. Perez create shanks to be
16    used in this homicide is very important to us.  That
17    will be important evidence to the Government at
18    trial.  It is one of the very few things that I've
19    heard that would link our client to that homicide.
20    If, in fact, the witness says:  I didn't know
21    anything about what was going to be done with these
22    shanks, I didn't get an order from somebody --
23              THE COURT:  Who would be saying this?
24              MR. HAMMOND:  Well, I don't know what the
25    CI is going to say, but -- all I have is one sentence
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 820-6349                                        FAX (505) 843-9492
                                                                    1-800-669-9492
                 BEAN                              e-mail: info@litsupport.com
                 & ASSOCIATES, Inc.
                 PROFESSIONAL COURT
                 REPORTING SERVICE

57

```
1    that we've read several times this morning.  I don't
2    know what he's really going to say.  But all I know
3    is that the story we have heard for -- now for
4    several months, is very inconsistent with the idea
5    that someone instructed Mr. Perez to make shanks to
6    be used in the Molina homicide.
7              THE COURT:  Okay.  Anything else, Mr.
8    Hammond?
9              MR. HAMMOND:  Well, you know, I was
10   concerned this morning about topics that I think you
11   believe are in the nature of what you would get with
12   Jencks material.  And I would like to know, was he
13   present?  I'd like to know what else he may think he
14   knows about this homicide.  We don't have any other
15   eyewitnesses, other than the defendants in this case.
16   So if there is somebody there, I'd like to know that.
17   But my primary concern is with what he has to say
18   about the shank or shanks.
19             THE COURT:  All right.  Thank you,
20   Mr. Hammond.
21             Any other defendants want to help
22   Mr. Hammond out, think of something they can think of
23   as to why this CHS would be important to Mr.
24   Montoya's defense?
25             All right.  Mr. Beck.  I've got to tell
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    you, when I've got two people like Mr. Hammond and

2    Mr. Lowry saying they thought all along that the

3    Government's case was that this was thought up in a

4    compressed period of time, you know, I guess I would

5    draw from that that there is something in the record

6    that would support that theory.

7         MR. BECK:  Sure.  I think, Your Honor, if

8    you look at Document 762, which is the reply brief,

9    page 6, as it goes to Mr. Herrera, in the first

10   paragraph it says, "To date, the only evidence that

11   tends to implicate Mr. Herrera comes from the

12   Government's main witness, Jerry 'Creeper' Armenta."

13   So I think --

14         THE COURT:  Which line are you looking at?

15   Right in the middle?

16         MR. BECK:  Right in the middle, right.

17         THE COURT:  Let me read it, now that I see

18   it.  Okay.

19         MR. BECK:  So I think, first of all, going

20   back.  As I said earlier, we need to be careful here.

21   Mr. Armenta is not a Government witness, he's not a

22   cooperator, he doesn't have an agreement with the

23   Government.  So I take issue with that assertion.

24         What I will say is that our theory of the

25   case is that Mr. Armenta, lower down in the SNM, as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Your Honor just pointed out to Mr. Hammond, receives

2    an order that says, "Kill Mr. Molina."  So, what I

3    can surmise is that Mr. Armenta's testimony that

4    everyone refers to -- but obviously isn't attached

5    here, because everyone knows who Mr. Armenta is, so

6    there is no need to disclose him as a CI; he is not a

7    CI -- is that he got the order to kill Mr. Molina,

8    and he and Mr. Montoya did so.  I'm sure that's what

9    it says.

10           So I think, if Mr. Hammond says you're

11   walking around kind of full circle with him, it's

12   more plausible, in fact, that the Government's theory

13   is correct; that there was a hit out on Mr. Molina

14   for a long time, and that maybe Mr. Armenta's account

15   fits in perfectly with that; that when he got the

16   order, he was a good soldier and he killed Mr.

17   Molina.  I think that's where this disconnect --

18           THE COURT:  How do you fit Mr. Perez, then,

19   in?

20           MR. BECK:  Mr. Perez supplied -- as I think

21   this sentence says in Document 698-1, Mr. Perez

22   provided the walker for the shanks to be made.  I

23   think that the shanks could have been made in an

24   hour.  But I think, when the shanks were made, by

25   whomever they were made, could have happened, months,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    years; I mean, it could have happened before

2    Mr. Armenta received the order to hit Mr. Molina.

3    So --

4                THE COURT:  Well, does your version or your

5    theory of the case involve papers?

6                MR. BECK:  Yes.

7                THE COURT:  That papers came from Mr. Baca

8    to the Southern facility?

9                MR. BECK:  Yes, Your Honor.

10               THE COURT:  Was it that week?

11               MR. BECK:  We do not believe it was that

12   week.

13               THE COURT:  You think it was long ago?

14               MR. BECK:  It was long before that.

15               THE COURT:  So what you're currently

16   planning to tell the jury is that a year or two

17   before this murder, Mr. Baca gave orders to have Mr.

18   Molina killed.  And then a foot soldier, Mr. Armenta,

19   just found out about it on Thursday, and killed him

20   on Friday?

21               MR. BECK:  Something to that effect, yes.

22   I mean, that's much more analogous to our theory than

23   the 48 hours.

24               THE COURT:  And Mr. Perez, was he working

25   on shanks for two years, one week, 24 hours?  How



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    does he fit into that picture?

2            MR. BECK:  I don't know offhand.  I don't

3    know if there is more --

4            MS. ARMIJO:  Your Honor, your version is a

5    simplified version.  There are other players.  Mr.

6    Sanchez is charged with this murder, Mr. Herrera.

7    There is a lot of players in this case that come into

8    play.  But our theory is basically that this hit had

9    been out on Mr. Molina for some time.  We have

10   Anthony Baca admitting to this on a recording, that

11   has been disclosed, about how this hit had been

12   carried out, and why it was necessary to carry it

13   out, and his involvement.  We have Mr. Herrera, who

14   his involvement was basically saying he wanted to

15   make sure and see the paperwork, to make sure that

16   the hit was a valid hit, because they wanted to

17   basically make sure it was righteous, so to speak.

18   And we have him on recording saying that.

19           THE COURT:  What is that supposed to mean?

20           MS. ARMIJO:  I'm saying righteous.  That

21   it's a validated hit; that it's not just a hit.  I

22   think one of them says that it's not a hit for

23   personal reasons; it's a hit for violation of SNM

24   protocol, which would be being an informant, as

25   opposed to having a personal beef with somebody.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   They wanted to make sure that this was the correct

 2   hit.

 3              Mr. Sanchez comes into play, and you can

 4   see him on the video, because out of the people that

 5   we're talking about that are there at Southern, he

 6   probably has the most highest rank.  He was in charge

 7   of that area.  We believe that Mr. Sanchez went and

 8   told Mr. Armenta and Mr. Montoya:  You're doing this

 9   hit.  You haven't put in your time, you haven't done

10   your bones for the SNM.  You guys are going to be

11   doing this.

12              There were three shanks that were actually

13   recovered; not one, not two, but three shanks during

14   this investigation afterwards.

15              I believe on the videotape Mr. Montoya is

16   seen assaulting him.  And despite Mr. Hammond's

17   rendition of it, I believe on the videotape, you can

18   actually see Mr. Montoya handing a shank over to

19   Mario Rodriguez, who then goes and hides the shanks.

20              So there is a lot more to the videotape.

21   We have videotape.  We have statements from Mr.

22   Montoya, Mr. Armenta.  After this incident we have

23   cooperators that occurred -- that have given

24   statements, obviously, like the one we have here,

25   that know about it.  And we have recordings from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



163

```
 1   three defendants to CHSs that were made, with them
 2   not knowing that they're talking to cooperators while
 3   they're incarcerated.  So there is many moving parts
 4   to this.  There is three shanks; there is videotapes.
 5   And this order had been outstanding for a long time.
 6              With the SNM, an order can be outstanding
 7   for a very long time.  Case in point:  Julian Romero,
 8   a victim in -- I don't know what count he is in
 9   actually, now -- but there is a defendant here that's
10   charged with his assault.  But that hit came out --
11   like, I think it was valid for over a decade.  They
12   tried to shoot him once, and that didn't work.  But
13   that hit was valid.  And the person that put that hit
14   out actually took a guilty plea and admitted that hit
15   was valid, it was outstanding for over a decade.  And
16   that's basically the way it works.
17              And we have this from numerous cooperators
18   as to, once a hit goes out, it's out.  The people who
19   actually do the hit, though, really want to make sure
20   that it's still good.  And that's probably what
21   happened in this case.
22              So, yes, we believe there is paperwork.  We
23   believe it happened some time ago.  Mr. Perez --
24   we're not saying Mr. Perez necessarily made the
25   shank.  What he admitted to was, basically, he wanted
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

164

1    to be involved in this, but his physical limitations

2    were such that the most he could provide was his

3    walker, which provided the metal to the shank.  And

4    if you see the walker, after the murder was

5    conducted, you have a walker with a missing piece of

6    metal.  And one of the shanks that was recovered fits

7    perfectly into that.  I mean, it's pretty obvious

8    where it came from.

9              In addition to that, there were two other

10   shanks that were recovered.

11             THE COURT:  All right.  That's a lot of

12   info.

13             MS. ARMIJO:  Sorry about that.

14             THE COURT:  Let's focus for a second.  It

15   didn't seem to me that you were running away from the

16   possibility that you may argue that Mr. Montoya

17   handled the shanks.

18             MS. ARMIJO:  Oh, absolutely.  We think he

19   handled the shank.  We think he's a shanker.  He and

20   Mr. Armenta both, it's our theory that they were the

21   two that were told to go and do this crime, to kill

22   him.  And they are seen assaulting.  Whether or not

23   you want to say -- whether he says, Oh, there was an

24   assault that occurred, I mean, they were both killing

25   Mr. Molina.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Well, I was pressing
2     Mr. Hammond a minute ago, saying, but I didn't see
3     how Mr. Montoya was linked to the shanks, given his
4     description of the video.  But if the Government is
5     not going to run away from the fact that he has a
6     link to the shanks, then respond to what I think Mr.
7     Lowry, but certainly Mr. Hammond, is now focused on
8     the fact that, well, they need to talk to this --
9     find out who this CHS is to find out where they got
10    these shanks that they're being accused of using on
11    Mr. Molina.
12             MR. BECK:  Well, I guess, Your Honor --
13             THE COURT:  I didn't mean to tell Mr. Beck
14    to answer.  You're welcome to answer it, too.
15             MS. ARMIJO:  That's fine.  I just wanted to
16    put -- I mean, as you know, Mr. Beck is newer to this
17    case -- and is familiar with it -- but I didn't want
18    to put him in a spot, given that there is many moving
19    parts.  And I didn't want to interrupt the argument.
20             THE COURT:  You're welcome to interrupt
21    from my standpoint.  Mr. Beck.
22             MR. BECK:  Mine, too, yeah.
23             Your Honor, so I guess this then goes back
24    to the analysis under Roviaro, and whether the
25    information that, I guess, Mr. Hammond thinks the CHS
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    may have is significant testimony.  And so, under one

2    version, Mr. Montoya doesn't have shanks.  And I

3    think you're right, under that version, then, the

4    significance of the testimony here that --

5              THE COURT:  If he just roughed him up at

6    the bottom of the stairs --

7              MR. BECK:  Then the shanks don't matter.

8              THE COURT:  But if the Government is

9    saying, yeah, he's a shankster -- is that the right

10   word?  Is that a real word?

11             MR. BECK:  I think it was shanker.  You

12   added an S.

13             THE COURT:  Shanker.  If they're agreeing

14   with Mr. Hammond that there may be -- that Mr.

15   Montoya may have had a shank, then --

16             MR. BECK:  So then it comes to, what are

17   the defenses?  And so, first of all, Mr. Hammond

18   argued that he was in the same position as Mr. Baca.

19   And I think Your Honor said that the importance of

20   the shanks to Mr. Baca relate to the time period,

21   because the evidence linking Mr. Baca to this is that

22   he sent paperwork to SNM CF.  That defense that he

23   didn't do that, there wasn't time to do that, doesn't

24   affect that Mr. Montoya had a shank and killed Mr.

25   Molina.  Regardless, where he got that shank,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   regardless who provided that shank, regardless
 2   whether it was -- came from Mr. Perez' walker, or it
 3   was one of the other two --
 4           THE COURT:  Well, I think I'm beginning to
 5   understand a little better what Mr. Hammond is
 6   saying.  Let me see if I can articulate it in my
 7   words; that, if this confidential informant is going
 8   to testify that Mr. Perez specially made this shank
 9   or these shanks from this walker in a very short
10   period of time, in a 24-hour period of time, that
11   couldn't have been done.  And right now that seems to
12   be one reading of what this confidential informant is
13   saying; that these shanks were made specifically to
14   be the murder weapons for Mr. Molina.
15           MR. BECK:  Right.  So I think there is two
16   parts to that.  The first is to go back and look at
17   what the CHS is saying, which is that Perez provided
18   his walker to make shanks that were used in the
19   murder.  So there is no time period here.  This CHS
20   does not testify that paperwork on Javier Molina --
21   excuse me, testify is wrong -- this CHS's testimony
22   doesn't talk about the paperwork going down for
23   Javier Molina.
24           THE COURT:  It doesn't.  But I mean, even
25   y'all are saying, the Government is saying that you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think that there was some paperwork.

2           MR. BECK:  That happened, right.  Now, what

3    we're saying is there are three shanks, and not

4    necessarily all of them came from Mr. Perez' walker.

5    And Mr. Montoya here didn't send the paperwork that

6    made the shanks, didn't send the paperwork that

7    resulted in the killing of Mr. Molina.

8           THE COURT:  Well, do you --

9           MR. BECK:  He did the killing.

10          THE COURT:  -- know that?  I mean, it seems

11   to me that we just don't know when from this, unless

12   you've got some independent knowledge as to when

13   Mr. Perez began to make these shanks.

14          MR. BECK:  Right.

15          THE COURT:  Do you have any other evidence

16   other than this statement?  I thought that was the

17   whole point of Mr. Villa's motion, is there is no

18   other evidence linking him to this crime other than

19   this half a sentence.

20          MR. BECK:  There is a recording of

21   Mr. Perez talking about giving his walker to make

22   shanks.  So there is a firsthand recording of

23   Mr. Perez saying he did that.

24          THE COURT:  Is it any more than this

25   statement, though?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BECK:  I think it is more than a
2     sentence that he provided.
3          THE COURT:  But I mean, is it more
4     information than that?  It doesn't help us with the
5     timing of it, whether this was done a year in advance
6     or six months or 24 hours?
7          MR. BECK:  Right.  It doesn't help with the
8     timing of that.  But, again, I think that may be
9     salient for Mr. Baca.  But when we're looking at Mr.
10    Montoya, he had a shank, and he stabbed Mr. Molina.
11    And so --
12         THE COURT:  Both of them are arguing that
13    that couldn't have happened.
14         MR. BECK:  I don't think they're arguing
15    that he couldn't have had a shank, which is what --
16         THE COURT:  Well, he couldn't have had the
17    shanks.
18         MR. BECK:  He couldn't have had the walker
19    shanks, right.  And so what I'm saying is, is that
20    may be helpful; that may be significant testimony for
21    Mr. Baca; that may be significant testimony for
22    Mr. Perez.  But that is not significant testimony for
23    Mr. Montoya, who is seen on a video stabbing, or what
24    we contend is the video showing him stabbing Mr.
25    Molina.  Certainly, the video shows that he assaulted

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Molina, as I think Mr. Hammond conceded.  We

2    contend that there is a shank.  And we contend the

3    video shows him giving the shank to Mr. Rodriguez.

4            So for him, the significance of Mr. Perez'

5    walker becoming a shank is not as significant to him

6    as it is to Mr. Baca.  I think it's important that we

7    distinguish between those two.  Because, again,

8    whether he had a shank or he didn't is significant to

9    Mr. Montoya.  But this CHS does not provide any

10   salient information whether Mr. Montoya had a shank

11   or he didn't.  That would be, I think, going back to

12   where I started this, I think that would be Mr.

13   Armenta's testimony, or statement, that's referred to

14   here, which they already have.

15           So now they have Mr. Armenta's, with regard

16   to the walker becoming a shank.  They have Mr. Perez'

17   recording where he talks about that.  So any benefit

18   of this CI's testimony would be cumulative to Mr.

19   Montoya and not helpful, when he is the one who did

20   the shanking, I think we're calling it.

21           THE COURT:  All right.  Anything else, Mr.

22   Beck?

23           MS. ARMIJO:  Your Honor, did you want more

24   information about what Mr. Perez said?  I believe

25   that was one of the questions that you had.  Or were

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   you satisfied?
 2           THE COURT:  No, you can tell me what more
 3   you know he said.
 4           MS. ARMIJO:  Mr. Perez had indicated that
 5   he supplied two pieces of his metal from his walker
 6   to be fashioned into shanks for use during the
 7   murder.  He indicated he even verified the murder
 8   with Daniel Sanchez, and that the weapons would be
 9   used for the murder.  Mr. Perez went on to talk about
10   why the murder occurred and why it was justified.  He
11   stated that he was proud to be assisting the SNM in
12   this matter.
13           THE COURT:  Somebody on the phone, we're
14   picking up some feedback.  I think y'all have been
15   using mute buttons during the day.  If you'll check
16   and make sure you get your mute button back on until
17   you're ready to talk.
18           All right.  Anything else, Ms. Armijo?
19           MS. ARMIJO:  No, Your Honor.
20           THE COURT:  Mr. Beck?
21           MR. BECK:  No, Your Honor.
22           THE COURT:  All right.  Thank you, Mr.
23   Beck.
24           Before I hear from Mr. Hammond, anybody
25   else want to say anything else?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. VILLA:  Your Honor, just briefly.  A
 2    lot of this is news to us, hearing about these --
 3              THE COURT:  I'm interested in that.  Tell
 4    me what's news to you.
 5              MR. VILLA:  Well, these very specific
 6    statements that Ms. Armijo just recited coming from a
 7    recording.  So I alluded to it this morning about
 8    some audio recordings that were disclosed.  The bulk
 9    of those are inaudible; you can't necessarily hear.
10    Sometimes it's hard to tell who is even being spoken
11    to.  You can generally tell who is wearing the body
12    recording, because their voice is louder.  But the
13    others that are talking to the individual wearing the
14    body recording are hard to discern.  We've had some
15    of those transcribed.  The transcriptionists have had
16    issues hearing that.
17              THE COURT:  So Ms. Armijo's two or three
18    sentences there that she thinks that she said
19    Mr. Perez is said to have said, you don't think you
20    have those?
21              MR. VILLA:  Well, and if I do, I can't hear
22    it.  And so perhaps it's the CHS informing Ms.
23    Armijo:  This is what he told me.  It's on that
24    recording, just go listen to it.  But we can't hear
25    it.  Which I think -- so my inquiry now because I
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 820-6349                                              FAX (505) 843-9492
                                                                   1-800-669-9492
                     BEAN                             e-mail: info@litsupport.com
                     & ASSOCIATES, Inc.
                     PROFESSIONAL COURT
                     REPORTING SERVICE

```
 1    have agreed to not pursue our motion.  But my inquiry
 2    to Ms. Armijo or the Government would be, Can you
 3    tell us which particular recording it's on, so we can
 4    determine if it's actually been disclosed.
 5             THE COURT:  Well, it looked like she was
 6    reading something.
 7             MR. VILLA:  So I haven't read any reports
 8    where those words are uttered.  The only reports that
 9    I've read is the document you have in front of you,
10    which is Exhibit 1 to my motion.  I guess I'm just a
11    little concerned that there is information that
12    hasn't been produced, or I don't know what.  But I
13    think it gets to some of the issues Mr. Lowry raised
14    and Mr. Davis raised about these recordings that the
15    Government is alleging exist.  And all three of us
16    have not heard them, or don't recall listening to
17    anything that say those types of things.
18             THE COURT:  All right.  Thank you, Mr.
19    Villa.
20             Anyone else want to speak before
21    Mr. Hammond has the last word?
22             MR. LOWRY:  Your Honor, one last thing --
23    and I'll try to make it brief and I'll try to use
24    this microphone.
25             Your Honor, I just think, you know, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Government is in a position of wanting to have their
 2   cake and eat it too, although I never understood that
 3   quite well.  But if this hit was -- pardon me, let me
 4   get back here.
 5           What I just heard the Government recite in
 6   terms of evidence was something I heard for the first
 7   time, that this hit was a valid hit, and that it
 8   persisted for years, which strikes me as a bit odd
 9   then, that they needed paperwork to again revalidate
10   a valid hit.  I mean, if there was a valid hit on Mr.
11   Molina issued by the SNM, there would have been no
12   need to wait on paperwork.  So either the paperwork
13   was the valid hit, or there existed, I guess, a quasi
14   rumor previously.  It just strikes me as odd that, if
15   there is a valid hit, as the Government has
16   described, and these valid hits can persist for years
17   and years and years, that anyone would have required
18   paperwork to come down from Santa Fe.  I'm having
19   difficulty squaring the two.
20           THE COURT:  Well, hold on just a second,
21   because Mr. Beck did tell me that it's still part of
22   their theory that there was paperwork, maybe that
23   last week.  What -- can you expand at all and tell me
24   what does this paperwork -- how does it fit into your
25   picture?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BECK:  So, again, I don't think it's
2    inconsistent.  What happens is that there may be a
3    hit out.  And the way that the SNM operates is that
4    they have to have paperwork to validate a hit.  And
5    so, if someone were to say that there is a hit out on
6    Javier Molina, someone may say, I want to make sure
7    that's right, show me the paperwork.  And so those
8    two theories are not inconsistent.
9              MR. LOWRY:  But this comes back to the
10   essential question of this endeavor, which is the
11   timing of the manufacturing of the shank.
12             THE COURT:  Well, I think you may have me
13   persuaded on that.  You can talk me out of it.
14             MR. LOWRY:  No, no, no, I don't want to
15   talk you out of it.  I'm done.
16             THE COURT:  I'm working with Mr. Hammond,
17   here, and he didn't have me quite persuaded.
18             I didn't mean to cut you off.  All right.
19   Anybody else want to help Mr. Hammond?
20             MR. LOWRY:  No, Your Honor.  I know when to
21   say when.
22             THE COURT:  All right.  Mr. Hammond, I
23   guess I'm where Mr. Beck is, their theory is Mr.
24   Montoya had a shank; it doesn't matter where it came
25   from.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. HAMMOND:  That's very interesting.

2           And I know you care a lot about federal

3    jurisdiction.  You may wonder why this case started

4    out in state court as a homicide, and now is part of

5    a federal violence in aid of racketeering case.  If

6    this is just a homicide, even if the shank was

7    used -- and we contend that our client didn't have a

8    shank, and we'll argue about that at length some day.

9    But the Government cannot prevail in this Court

10   unless they can prove to the satisfaction of a jury

11   that this homicide was a violent act in aid of

12   racketeering, which means one of the critical

13   elements is that the perpetrators had to be acting to

14   advance or further or maintain their position in the

15   gang.

16           So, if this is just a homicide, like there

17   are many in every state prison in America, these

18   defendants will not be chargeable in this Court.  So

19   for them to say it doesn't matter where the shank

20   came from; of course it matters.  It matters a great

21   deal whether somebody ordered this, and whether our

22   client knew that it had been ordered.  And showing

23   that the shank was ordered and came from one of the

24   other defendants for a specific purpose would be a

25   critical element in their proof.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Well, that may be true, but how
2     does that help you for them to give you another nail
3     in their case against you?  I mean, it seems like --
4              MR. HAMMOND:  I think -- excuse me for
5     interrupting.
6              THE COURT:  That's all right.
7              MR. HAMMOND:  I think it's important that
8     we know whether the shank was or was not part of the
9     plan of racketeering activity.
10             If it turns out that Mr. Perez just made
11    shanks for there to be in the pod -- and frankly,
12    that wouldn't surprise me if there were shanks in
13    pods all across this state, I wouldn't be surprised
14    by that.  But there is a lot of difference between
15    having a shank in a pod and having a shank that is
16    there because someone says that the SNM ordered it to
17    be there, and to be used for a specific purpose.  And
18    that is what I understand -- at least a piece of that
19    is what this CI is going to say.  And I believe we
20    need to know that.
21             THE COURT:  All right.  Thank you, Mr.
22    Hammond.
23             Mr. Beck?
24             MR. BECK:  I mean, I guess I just reiterate
25    to the Court that, as the Court started out, it's an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

178

1   individual analysis.  So I think that may be

2   important to Mr. Perez.  But I think, when you're

3   looking at whether the CI's testimony is significant

4   to Mr. Montoya, where the shanks came from is not.

5   It's important that it was an SNM hit.  It's

6   important that there was paperwork.  It's important

7   that there were shanks.  But where that particular

8   shank came from may be significant under the Roviaro

9   analysis as to Mr. Perez, where it may not be to Mr.

10   Montoya.

11          THE COURT:  Anything further, Mr. Hammond?

12          MR. HAMMOND:  No, I think I've said enough.

13          THE COURT:  Well, I think that probably

14   Mr. Hammond and Mr. Beck have probably dragged me

15   back to where I was with Mr. Baca.  I'm inclined to

16   find that the CI should be disclosed.  We've got this

17   Jencks issue that I'm going to have to deal with as

18   far as timing.  But if I, in fact, order CI disclosed

19   at this time, then I'm inclined to think it should be

20   disclosed as to Mr. Baca.

21          I'm not convinced as to Mr. Montoya.  I

22   think that -- like I said originally, I think your

23   situation is more akin to Mr. Troup's back here.  If

24   I start lowering the bar to that level, that we just

25   want to know whether there is a scheme, or whether we



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    want to know who is present, probably I'd drop the
2    bar to a point where almost all these CIs will be
3    disclosed.  And I don't think that's probably what
4    the law requires.
5            So I'll give it some thought, but I'm not
6    inclined to grant Mr. Montoya's request.
7            All right.  Are we done with that CI?  Is
8    there anybody else that am I missing?  Anybody that
9    had a request in on that?
10           Mr. Beck?
11           MR. BECK:  I think so, Your Honor.
12           THE COURT:  You think there is other people
13   or you think we're done?
14           MR. BECK:  No, sorry.  I think we're done.
15           THE COURT:  You think we're done.  Okay.
16           Now, my understanding, like Mr. Jewkes and
17   some others were mentioning other CIs, but that's the
18   only thing that was briefed up for today was that one
19   CI.  I know tomorrow I think I'm back in with Mr.
20   Gallegos on his CIs.  So I've got those issues
21   tomorrow.  But am I missing anything, any other CIs
22   teed up?
23           All right.  Now, Mr. Gallegos had also
24   filed a motion.
25           MR. BECK:  Your Honor --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Yes.

2          MR. BECK:  If we're moving on, I do want to

3    put in one other point here before we move on.  And

4    that's that, if Your Honor does -- after reviewing

5    the hearing, and is inclined to grant disclosure of

6    the CI in Mr. Baca's case, regardless which way you

7    go on the witness, the United States would ask that

8    the Court impose a protective order, as Your Honor

9    did in Aguilar, that limits the disclosure to Mr.

10   Baca, to his counsel.  And I can probably look at it.

11   If you'd like me to put it on there, I think you got

12   it.

13          THE COURT:  I think I got it from Mr.

14   Villa.

15          MR. BECK:  You have it there also.

16          THE COURT:  I guess I'm inclined to do that

17   as a starting point for all these CIs:  Order

18   disclosed.  And then if, down the road, that's

19   unworkable for some reason, you can re-approach.  But

20   I think it's a good starting point, is to limit it to

21   that.  I think -- I actually thought the protective

22   order was pretty workable and pretty generous, given

23   what we're dealing with here.  I've seen more

24   restricted protective orders.

25          MR. LOWRY:  Your Honor, I've reviewed the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    protective order in Mr. Perez' case, and we have no

2    opposition.

3             THE COURT:  So I'll include that as part of

4    my order if I continue to go the direction with Mr.

5    Baca that I think I am.

6             MR. VILLA:  Your Honor, I apologize.  This

7    might be the right juncture to address, if the Court

8    does grant that whether the protective orders would

9    include us being able to communicate with Mr. Lowry

10   and Ms. Duncan, but nobody else?

11            THE COURT:  I guess I don't see any harm in

12   that.  Do you, Mr. Beck?

13            MR. BECK:  No, Your Honor.

14            THE COURT:  Okay.  So it will include that.

15   I guess, if you know a CI, however you got it, I

16   can't see any reason why those defendants -- those

17   defendants and those defense lawyers cannot talk to

18   each other about it.  Do you?

19            MR. BECK:  I see a lot of reasons.  But I

20   can't think of any that the law would support.  So --

21            THE COURT:  Well, that's all we're about,

22   isn't it?

23            Let me talk to Ms. Wild here just for a

24   second.

25            (A discussion was held off the record.)

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  The next thing I
 2   think we have is the motion that Mr. Gallegos filed
 3   in all three cases.  Now, he's been -- oh, okay, so
 4   remember that he filed in this case -- well, he filed
 5   it in the Baca case; he filed it in his own case, I
 6   guess, 1613.  And you joined -- Ms. Sirignano, Mr.
 7   Adams, you joined this motion to compel production of
 8   unredacted discovery and the identification of
 9   confidential informants.  So I guess that motion,
10   which Mr. Gallegos is out, the reply was filed in
11   this case.  So do you have either, A, unredacted --
12   or is there anything about your motion to compel
13   production of unredacted discovery you want to argue,
14   or is there anything about the identification of
15   confidential informants that you want to argue?
16              MR. ADAMS:  Your Honor, yesterday we
17   decided to do additional briefing on that motion for
18   you.  And we would just do that in both cases.
19              THE COURT:  In both cases, okay.
20              MR. ADAMS:  Yes.
21              THE COURT:  Okay.  So this one is the one
22   you're going to supplement?
23              MR. ADAMS:  Yes, sir.
24              THE COURT:  And help me out here, are you
25   going to supplement in this case?  Are you going to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    supplement in the Baca case?

2              MR. ADAMS:  In all three cases.

3              THE COURT:  In all three.  So just delay it

4    until --

5              MR. ADAMS:  No, sir, I think we saw which

6    way the wind seemed to be blowing yesterday.  We

7    thought it would be more prudent to make a more

8    particularized showing to the Court, so we'd have a

9    fighting chance to get what we're asking for.

10             THE COURT:  All right.  So you've kind of

11   got a taste of how I do these.

12             MR. ADAMS:  Yes, sir.

13             THE COURT:  So that gives you the level of

14   facts I think I need.

15             Let me talk to Ms. Wild here a second.

16             (A discussion was held off the record.)

17             THE COURT:  Well, this may apply to your

18   motion, but I'm going to tell the Government -- and

19   since Mr. Gallegos is not here, Mr. Ray, Mr. Evans

20   and Ms. Morrissey are not here -- if you'll pass this

21   on to them as soon as you can, because I know y'all

22   are going to have a set-down tomorrow.  But it goes

23   to everybody.  We're going to be discussing

24   redactions tomorrow.  And like the motion that was

25   filed, sort of a blanket attack on redactions, first,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I'd encourage everybody to sit down, the Government
2    and the defendants.  If you don't like some of the
3    redactions, sit down and try to work them out.  And
4    then bring the ones that you can't agree or live
5    with.  But I'm probably going to take them one at a
6    time.  I mean, I don't know how else to do it.  I've
7    just got to put the energy into it.  So think about
8    it.  Is it worth fighting over?  You know, do the
9    defendants really need Social Security numbers,
10   telephone numbers, personal IDs?  Those things are
11   commonly redacted.  Do you really need that sort of
12   information?  So think about, you know, what we're
13   fighting over.  If that's what you want to fight
14   over, I'll rule on it.
15            But I think the thing to pass on to Mr. Ray
16   and Mr. Evans and Ms. Morrissey before tomorrow's
17   hearing and before y'all, is that we're going to take
18   these one at a time.  I mean, I'm probably not going
19   to make blanket rulings on redactions or blanket
20   rulings on confidential informants.  So we're going
21   to have to take them one at a time, and everybody may
22   want to pick their battles carefully.
23            I think I'm done with what's on my platter.
24   So let me open it up a little bit while we're
25   together, and see if there are other things I can



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    help you with.  Let me start with the Government.

2    Ms. Armijo, Mr. Castellano, Mr. Beck, is there

3    anything else we need to discuss while we're

4    together?  Anything else I can do for you?

5              MS. ARMIJO:  Not as to the big group.  I

6    believe that one of the defendants has a motion

7    appealing her detention, and it hasn't been set yet.

8    But certainly we'd be -- and our time to respond has

9    not come, but we'd be willing to respond orally, and

10   have the hearing if the Court is available.  I'm sure

11   that that defendant would certainly like to have that

12   issue resolved.  It doesn't have to be before

13   everybody, though.

14             THE COURT:  Is that yours, Ms. Arellanes?

15             MS. ARELLANES:  It is, Your Honor.

16             THE COURT:  Do you want to do it today?  Do

17   you want to do it another day?

18             MS. ARELLANES:  I don't have the motion

19   with me at the moment.

20             THE COURT:  But you've got it memorized;

21   right?

22             MS. ARELLANES:  No.

23             THE COURT:  Do you want it today or another

24   day?

25             MS. ARELLANES:  Another day.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  All right.  We'll make it

2    another day.

3          What else from the Government?  Anything

4    else we need to discuss?  Anything else I can do for

5    you?

6          MS. ARMIJO:  That's all, Your Honor.

7          THE COURT:  How about the defendants, Mr.

8    Lowry?

9          MR. LOWRY:  Your Honor, just briefly.  I

10   mean, I know -- and I want to thank the Court,

11   because I know it takes a considerable amount of

12   effort to pull off these hearings.  This is just a

13   matter of housekeeping.  You know, I wanted to thank

14   the Court for holding this hearing, and I know the

15   Court did this on short notice.

16          I just want to propose -- and I haven't had

17   an opportunity to talk with my colleagues from the

18   United States -- but maybe going forward, if it

19   wouldn't be advantageous to start setting a date

20   aside, you know, in advance.  Or maybe we could have

21   like a monthly date the Court could easily vacate if

22   we didn't need it.  But I know that many people have

23   to travel from out of state, and the court calendars

24   for this many attorneys being what they are, it would

25   be nice to get some dates posted in the future, so

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   people can protect and preserve those dates.  I think
 2   we're going to enter a phase of this case where
 3   motions practice is going to start ramping up.  And I
 4   don't know how my colleagues feel.  But I think would
 5   it be wise if we could start securing dates, you
 6   know, a month or two out, just to facilitate getting
 7   everybody together in the same courtroom efficiently.
 8              THE COURT:  Let me ask Ms. Wild.  Let her
 9   come up here and talk to me just about the logistics
10   of that.
11              (A discussion was held off the record.)
12              THE COURT:  Mr. Romero, are you still
13   there?
14              MR. ROMERO:  Yes, sir.
15              THE COURT:  Okay.  We lost somebody else on
16   the line.
17              (A discussion was held off the record.)
18              THE COURT:  How would this work?  I'm a
19   little reluctant to -- you know, sometimes in these
20   complex cases, we'll have periodic status reports or
21   periodic status conferences, kind of run them out for
22   eternity, say every 60 days, or something like that.
23   I'm a little reluctant to do that in this case.  But
24   I am willing to try to work with everybody to set a
25   date right now that's a little bit -- that's just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    shortly before I go into a real string of long trials
2    that I really think are going to go at this point.
3    So would that be helpful?  Instead of saying let's do
4    one every 60 days, what if I set one out -- maybe set
5    one for January 18 at 8:30?  That would give
6    everybody plenty of time to get something set on
7    their calendar and travel vouchers.  Would that be
8    helpful?
9            MR. LOWRY:  Your Honor, it's really less of
10   a concern for Team Baca, because Ms. Duncan and I
11   both reside in Albuquerque.  So being here is really
12   not an issue.  But it was really addressed to my
13   colleagues.
14           THE COURT:  Does that address your concern?
15   Instead of saying every 60 days, because I'm not
16   sure -- I mean, this is an important case, but I've
17   got a lot of cases I'm trying to juggle.  And I can't
18   bring everything to a shutdown for this one case.  So
19   would that work?
20           How about from the Government standpoint?
21   This doesn't mean we don't get back together earlier.
22   There may be motions that get filed and we have to
23   get together earlier.  But it does get something on
24   the calendar that everybody can plan on.
25           MR. BECK:  I think that's fine, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    The only thing, I mean, that concerns me is that
2    there may be responses or replies or something.  But
3    I think we can all work together to try to get them
4    in beforehand, and just see what we could do with
5    this.  So I think it's a good idea.
6              We can even have it in Las Cruces, if you
7    want.
8              THE COURT:  Okay.  Well, you're kind of in
9    control of that.  I think we all owe the Government a
10   bit of thanks for humoring us or something by
11   allowing us to continue to do these up here.
12             How about from the defendants?  Is this
13   helpful?  Set a hearing on January 18, 2017; nobody
14   is barred from asking for one earlier, but it will
15   get something on and people can then kind of get
16   briefing done, knowing that that's going to be here.
17             Ms. Johnson?
18             MS. JOHNSON:  Your Honor, because I
19   anticipate filing some motions before January 18, I
20   would think that the Court may set my motion hearing.
21   But both Ms. Fox-Young and I have sentencing hearings
22   in the Western District Texas that day.  So we would
23   respectfully ask that the Court perhaps consider a
24   different day.
25             MS. STILLINGER:  Your Honor, Mary
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Stillinger for Mr. Varela.  I know I have an argument
 2    in the Tenth Circuit the day before.  And I'm
 3    actually not sure, I'm probably on the morning
 4    calendar.  But just with travel, I don't know if I
 5    would be able to be here on that day or not either.
 6              THE COURT:  Mr. Lowry?  This is why this
 7    doesn't work.
 8              MR. LOWRY:  That's fine, Your Honor.  It
 9    was just an idea.
10              THE COURT:  I don't know.  Maybe it's not
11    worth the effort.
12              MR. LOWRY:  I guess not.
13              THE COURT:  Let me see Mr. Adams first,
14    Mr. Hammond, then --
15              MR. ADAMS:  Thank you, Your Honor.  I was
16    going to further complicate matters.  I think it is a
17    wonderful idea to set dates far enough in advance
18    that we can have time to navigate the CJA travel
19    approved issues that we seem to run into.  I am -- I
20    have a jury selection in Federal Court in South
21    Carolina on the 18th.  So that also is not an
22    advantageous date for me.  But I applaud the effort,
23    and would love the 19th or the 20th, or if I have to
24    miss, I have to miss.  But I think it would be very
25    helpful going forward to have a series of dates well
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    in advance, so we can all keep pushing this case
 2    forward, since the trial is set for the summer.
 3              THE COURT:  I'll try one more date.  And if
 4    it doesn't work, then we're going to quit this.  How
 5    about February 7?
 6              MS. STILLINGER:  I'm sorry, Your Honor,
 7    I -- oh, no, no, no, I'm sorry.  Never mind, wrong
 8    day of the week.
 9              THE COURT:  All right.  Mr. Hammond, you
10    were going to speak?  Is that how bad the other date
11    was, or you got --
12              MR. HAMMOND:  No, no, I wasn't going to say
13    the other day was bad.  I'm going to thank the Court
14    and Mr. Lowry and the Government for the idea.
15              We will have, on behalf of Mr. Montoya, I
16    know we will have a couple more motions of our own
17    that we'd like to have argued.  February would be
18    preferable.  But if everybody agrees with the 7th of
19    February, we can agree to that.
20              THE COURT:  Ms. Sirignano?
21              MS. SIRIGNANO:  Judge, I'm in Santa Fe
22    before Judge Attrep.  As I said yesterday, I'll try
23    and get it moved.  If I'm the only one, then I'll --
24              THE COURT:  Just live with it.
25              MS. SIRIGNANO:  I'll live with it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  Okay.  Is that all right with
 2   the Government, February 7?
 3          MS. ARMIJO:  Yes, Your Honor.
 4          THE COURT:  Anybody else?
 5          All right.  We'll set it for February 7.
 6   We're going to set it for 8:30, and we're going to
 7   move it up just a little bit, just because it seems
 8   like every time we set these, we get started late.
 9   So we'll build in a little bit of late time, and see
10   if we can get them started a little bit on time.  So
11   February 7, at 8:30, 2017.
12          Ms. Stillinger?
13          MS. STILLINGER:  Your Honor, may I raise
14   one issue to the Court, which is that my client,
15   Mr. Varela, asked me if he might be able to be
16   excused from appearing at hearings when they're not
17   evidentiary.  I didn't ask for this hearing because I
18   understood that another defendant had made that
19   request and had been denied.  But I did want to make
20   that request on the record.  It's very uncomfortable
21   for him, Your Honor.  He gets up at 3:00 in the
22   morning from Otero, and is here all day long.  He's
23   shackled all day long.  So it's about -- well, more
24   than 12 hours of constant shackling.  It's very hard
25   on his wrists.  Last time, it was a couple of weeks
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

193

```
 1    before he had full feeling in his arms again.  It's
 2    just the nature -- I know, he's a little husky -- but
 3    that's just the nature of the handcuffs, I think
 4    they're not meant to be worn all day long like that.
 5    So I've asked him if he really means that, and he
 6    says he really would rather not come, and would
 7    rather hear about it from me later.  I wanted to
 8    bring it up while he's here, so if the Court needs to
 9    verify.
10             THE COURT:  Well, I think everybody needs
11    to be here.  These are very important hearings.
12    We're really shifting into facts.  These are not
13    purely legal issues.  These are fact-sensitive
14    matters.  And I just am very reluctant to be
15    discussing the facts in the detail we are without the
16    defendants present.  This is -- these aren't strictly
17    legal issues.  These are very fact-sensitive.  So I'm
18    going to deny that request.
19             MR. BENJAMIN:  Your Honor --
20             THE COURT:  Mr. Benjamin?
21             MR. BENJAMIN:  -- Mr. Gallegos is at Otero.
22    And if there was some way that the Court could deal
23    with essentially the 18-hour timeframe that they're
24    out of Otero in shackles, I think that would
25    accommodate most of our concerns, if not all of them.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Well, I'm all game for
 2    suggestions.  But I don't have any right at the
 3    moment.
 4            Mr. Jewkes?
 5            MR. JEWKES:  In that regard, Your Honor,
 6    might the Court and the Marshal Service reconsider
 7    with regard to these black boxes that go with the
 8    belly chains.  With belly chains, leg irons, they're
 9    pretty secure.
10            THE COURT:  I understand.  And y'all
11    remember that I sat up here for an hour and a half
12    with those blocks on, so that I'd know what it feels
13    like.  I'm not minimizing -- they're not very
14    comfortable.  But I also don't have any other
15    suggestions.  So I'm probably going to take the
16    guidance from the marshals on that.  If they continue
17    to think that's something that's necessary for
18    security, we'll just have to live with it.
19            What else?  Anything else we need to
20    discuss while we're together?  Anything else I can do
21    for you?  The defendants?  All right.  I've got some
22    opinions and orders to get out to you.  If I don't
23    see you before the holidays, have good holidays.  See
24    you in February, if we don't meet before.  I
25    appreciate everybody's hard work.   (Adjourned.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                     C-E-R-T-I-F-I-C-A-T-E

2

3     UNITED STATES OF AMERICA

4     DISTRICT OF NEW MEXICO

5

6

7          I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8     Official Court Reporter for the State of New Mexico,

9     do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on December 13, 2016.

15

16

17

18    _____

      Jennifer Bean, FAPR, RMR-RDR-CCR

19    Certified Realtime Reporter

      United States Court Reporter

20    NM CCR #94

      333 Lomas, Northwest

21    Albuquerque, New Mexico 87102

      Phone:   (505) 348-2283

22    Fax:     (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com