**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

        Plaintiff,

**vs.**                                                    No. 2:15-cr-04268-JB

**ANGEL DELEON, et al.,**

        Defendants.

**JOINT MOTION TO SEVER DEFENDANTS CHARGED WITH OFFENSES IN
COUNTS 6 AND 7**

Defendants Jerry Montoya, Timothy Martinez, Anthony Ray Baca, Mauricio Varela, Daniel Sanchez, Carlos Herrera and Rudy Perez (referred to herein as the "2014 Defendants") by their respective counsel, move this Court to sever their trial of counts 6 and 7, which are clearly separable and independent, from trial on the remaining counts of the superseding indictment pursuant to Federal Rules of Criminal Procedure 8(a) and (b), and Rule 14, the Fifth Amendment to the United States Constitution and the authorities cited herein.

**INTRODUCTION**

Defendants Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Anthony Ray Baca, Mauricio Varela, Daniel Sanchez, Carlos Herrera and Rudy Perez (2014 Defendants) are charged in the 15-count superseding indictment in Counts 6 and 7 with conspiracy to commit murder and murder of Javier Molina. *See* Superseding Indictment at 20-26. [Doc. 368]. Counts 6 and 7 accuse these nine Defendants of conspiring to and murdering Javier Molina on March 7, 2014, respectively, in the Southern New Mexico Correctional Facility (SNMCF). Defendants request that this Court sever the trial of Counts 6 and 7 from the other counts in the superseding indictment. With the exception of Defendant Baca, none of the defendants charged in Counts 6

and 7 are charged in any other count of the superseding indictment.  *See* **Exhibit 1** (Chart of charges in the superseding indictment) and **Exhibit 2**, Counts grouping.  Defendant Baca is also charged in counts 8, 9 and 10. *See id.*  The offenses alleged in the other counts of the indictment were not only committed by different defendants, but many occurred in different locations, some as many as 13 years prior to the alleged Molina murder.  *See id.*

In support of this Motion, Defendants advance three main arguments: (1) Counts 6 and 7 were improperly joined under Rule 8(a), as they do not share a sufficient nexus with the other charges to permit joinder; (2) the 2014 Defendants were improperly joined under Rule 8(b), as they are not alleged to have participated in the same act or transaction or in the same series of acts or transactions that constitute crimes as the 21 other defendants; and (3) should the Court find joinder proper under Rule 8(a) and Rule 8(b), severance is still required under Rule 14 and the Fifth Amendment because a joint trial of the 2014 Defendants for Counts 6 and 7 alongside the 21 other defendants and the 13 other counts in the superseding indictment will deprive the 2014 Defendants of their right to a fair trial.

The Court need not perform the normal balancing analysis under Rule 14, which requires the Court to weigh the concerns of prejudice against judicial economy, as both interests strongly favor severance. This is because, in this case, a joint trial on all counts would be substantially longer and logistically impractical given the number of defendants charged and given that the allegations and evidence thereof spans decades.

## BACKGROUND

The 24 original defendants in this case were charged by indictment with violations of 18 U.S.C. §1959(a)(1)(5)(6) and 18 U.S.C. §2 (Violent Crimes in Aid of Racketeering or VICAR). *See* Indictment [Doc. 2].  At least 19 of the original defendants were charged with capital eligible

offenses and faced the possibility of the death penalty under 18 U.S.C. § 3591 et. seq. The original indictment contains special findings required for the imposition of the death penalty.  The Court declared the case complex on January 7, 2016.  *See* Order [Doc. 211]. On April 21, 2016, the government unsealed a superseding indictment in this case which alleges additional crimes and adds additional defendants. *See* Superseding Indictment [Doc. 368].  The government also revealed a new indictment in related case no. 16-cr-1613 JB in which some, but not all, of the defendants in the above-captioned matter, are charged with additional criminal acts.  Both indictments allege defendants are members of the Syndicato Nuevo Mexico (SNM), a prison gang, and further allege that defendants engaged in racketeering and committed violent crimes in aid thereof.

As the Court is aware, there are 30 defendants charged in the superseding indictment in this matter, under a total of 15 counts.  All but one count alleges violent crimes in aid of racketeering pursuant to 18 U.S.C. § 1959.  These VICAR allegations date back to the early 1980s. Not including Counts 6 and 7, the indictment alleges the murder of four different victims and conspiracy to murder four different victims, three of whom are different from the four alleged murder victims.  This includes the very high profile alleged conspiracies to murder the Secretary of Corrections, Greg Mercantel, and the head of the New Mexico Department of Corrections (DOC) Security Threat Intelligence Unit (STIU), Dwayne Santiestevan.  *See* Counts 9 and 10. The indictment also alleges assaults and/or attempt to commit murder of two victims along with two gun charges against Defendant Garcia.

Of the nine 2014 Defendants charged in Counts 6 and 7, only one – Defendant Baca, is charged in any other counts. Due to the distinct nature of the other charges not included in Counts 6 and 7, including their location and dates of incident; the quantity of evidence as to each of these; the different defendants charged; and other factors discussed herein, the 2014 Defendants move

this Court to sever the trial of Counts 6 and 7 from the remainder of the counts in the superseding indictment.

**Count 1: Murder of F.C.**

This count is alleged against Defendants Angel Deleon, Joe Lawrence Gallegos, Edward Troup, Leonard Lujan, and Billy Garcia. None of these Defendants are accused in Counts 6 and 7. Count 1 alleges these Defendants murdered F.C. on March 26, 2001, in Dona Ana County. This occurred 13 years before the alleged murder to which the 2014 Defendants stand accused.

**Count 2: Murder of R.G.**

This count is alleged against Defendants Leonard Lujan, Billy Garcia, Eugene Martinez and Christopher Chavez. None of these Defendants are accused in Counts 6 and 7. Count 2 alleges these Defendants murdered R.G. in Dona Ana County on March 26, 2001, the same date as the alleged murder in Count 1, also 13 years prior to the 2014 Defendants' charges.

**Count 3: Murder of F.S.**

This count is alleged against Defendants Javier Alonso, Edward Troup, Arturo Garcia, Benjamin Clark and Ruben Hernandez. None of these Defendants are accused in Counts 6 and 7. Count 3 alleges these Defendants murdered F.S. on June 17, 2007, in Dona Ana County. This alleged murder occurred seven years prior to the crimes alleged in Counts 6 and 7.

**Counts 4 and 5: Conspiracy to Murder A.B. and Murder of A.B.**

These counts are alleged against Defendant Joe Lawrence Gallegos and Andrew Gallegos, neither of whom is charged in Counts 6 and 7. These counts allege the Gallegos's conspired to and did murder A.B. on November 12, 2012, in Socorro and Valencia counties. These alleged crimes occurred two years prior to the crimes alleged in Counts 6 and 7, over 100 miles away, and by different individuals.

4

**Counts 6 and 7: Conspiracy to Murder J.M. and Murder of J.M.**

These are the counts the 2014 Defendants now seek to sever.  Defendants are accused of conspiring to and murdering Javier Molina at the SNMCF on March 7, 2014.  Although the basis for the charges against all the 2014 Defendants is not precisely clear, it is believed the government's theory of the case is, in part, that Defendant Baca ordered Mr. Molina to be killed because he was alleged to have cooperated with law enforcement.  Defendants Sanchez and Varela, as alleged intermediate leaders of the SNM, are alleged to have given the go-ahead for the killing and given orders to help execute it.  Defendant Herrera also allegedly sanctioned the killing.  Defendant Perez is accused of providing his walker to make a shank or shanks for the killing.  Defendants Rodriguez and Martinez are accused of going into Molina's cell and choking him until he was unconscious and Defendant Armenta and Defendant Montoya are alleged to have then gone into the cell and stabbed Molina multiple times, which ultimately led to his death.  All the 2014 Defendants are alleged to be members of the SNM.

On March 28, 2014, the State of New Mexico, by the Third Judicial District Attorney's Office in Las Cruces, obtained indictments against Defendants Jerry Armenta, Jerry Montoya and Mario Rodriguez, for the murder of Molina, along with several other related charges.  The case was to proceed to trial on November 16, 2015, however, the trial was vacated on November 2, 2015, and on November 23, 2015, the State filed a Nolle Prosequi for all three defendants indicating the dismissal was at the "behest of the United States Attorney's Office…which will be pursuing federal charges."  Just eight days later the first indictment in this cause was filed against these three defendants as well as Defendants Martinez, Baca, Varela and Sanchez.  *See* Indictment [Doc. 2].  Mr. Perez and Mr. Herrera were not included in these counts until the superseding indictment was obtained.  *See* Superseding Indictment [Doc. 368].  The other counts in the

superseding indictment, unlike Counts 6 and 7, did not have a parallel state prosecution. Defendant Jerry Armenta has entered a plea of guilty to both counts. *See* Plea Agreement [Doc. 802]. All other Defendants are pending trial.

**Count 8: Conspiracy to Assault J.R.**

This count is alleged against Defendants Anthony Ray Baca, Gerald Archuleta, and Conrad Villegas. Defendant Baca is the only defendant who is also charged in Counts 6 and 7. Defendant Archuleta has entered a plea agreement to this charge. *See* Plea Agreement [Doc. 586]. Defendant Villegas is not charged in any other counts in this case. In his Plea Agreement, Defendant Archuleta states that in 2003 he had a falling out with J.R., who is also alleged to be an SNM member. *Id.* at 4. As a result, Defendant Archuleta states he put a "green light" on J.R., which is common slang for ordering the murder of a person. *Id.* Because of Archuleta's green light, J.R. was shot in 2003, but survived, and then was assaulted in 2015 in SNMCF for the same reason. *Id.* at 4-5. Defendant Archuleta implicates Defendant Baca as sanctioning the green light, but does not implicate any of the other 2014 Defendants, and there is no information in the discovery to indicate any others were involved.

**Counts 9 and 10: Conspiracy to Murder D.S. and Conspiracy to Murder G.M.**

Counts 9 and 10 are both alleged conspiracies to murder Dwayne Santistevan, the head of DOC's STIU and former Secretary of Corrections Greg Marcantel. Defendants Anthony Baca, Roy Martinez and Robert Martinez, are charged in both counts. Defendant Roy Martinez has entered a plea to both counts. *See* Plea Agreement [Doc. 686]. In his plea, Mr. Martinez claims he conspired with Defendants Baca, Robert Martinez, and others, to kill Marcantel and Santistevan. Other than Defendant Baca, Martinez does not identify any of the other defendants in Counts 6 and 7 as being involved.   Defendant Chris Garcia is charged in Count 10. As with Count 8,

Defendant Baca is the only defendant from the 2014 Defendants charged in these counts.  There is no evidence the other defendants in these charges were involved in Counts 6 and 7.  There is also no evidence any of the 2014 Defendants, save Defendant Baca, were involved in either of these two counts.

**Counts 11 and 12: Felon in Possession of a Firearm and 924(c) against Defendant Garcia**

Both of these counts are against only Defendant Garcia, who is alleged to have committed them on November 29, 2015, in Bernalillo County.  These crimes allegedly occurred outside of prison, and there is no information to believe any of the 2014 Defendants were involved in these crimes.  Defendant Garcia is not one of the 2014 Defendants.

**Counts 13, 14 and 15: Assault against J.G., Conspiracy to Murder J.G., Attempted Murder of J.G.**

Count 13 is charged against only Defendant Joe Lawrence Gallegos and is alleged to have occurred on March 17, 2015, in Valencia County.  Defendant Joe Gallegos is not a 2014 Defendant.  Counts 14 and 15 are alleged against Joe Gallegos, Santos Gonzales, Paul Rivera, Shauna Gutierrez.  These crimes are alleged to have occurred in Otero and Valencia County in February 2016.  None of these defendants are 2014 Defendants, and there is no connection to these crimes by any of the 2014 Defendants, except for the alleged SNM membership of all.

## ARGUMENT

Joinder in criminal cases is governed by Rule 8, and severance, Rule 14 of the Federal Rules of Criminal Procedure as well as the Fifth Amendment.  Under Rule 8(a) the joinder of offenses is appropriate only when the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed.R.Crim.P. 8(a).  While Rule 8(a) "is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system," *United States v. Janus Indus.*, 48 F.3d 1548, 1557

(10th Cir. 1995), joinder is only proper where at least one of the Rule 8(a) conditions are met, and "those conditions, although phrased in general terms, are not infinitely elastic." *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996).  Rule 8(b) applies to the joinder of defendants in a criminal trial. *Zafiro v. United States*, 506 U.S. 534, 535 (1993).  Under Rule 8(b), joinder of defendants is proper only where the defendants "are alleged to have participated in the same act or transactions, or in the same series of acts or transactions constituting a crime." Fed.R.Crim.P. 8(b).

Even if two or more offenses or defendants are properly joined under Rule 8(a) or (b), joinder is also subject to scrutiny under Rule 14. While the purpose of joinder is to "promote economy and efficiency and to avoid a multiplicity of trials," these objectives must be achieved "without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 131 n. 6 (1968); *Zafiro*, 506 U.S. at 540. Accordingly, Rule 14(a) provides for relief from prejudicial joinder, allowing that "[i]f the joinder of offenses or defendants in an indictment…or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed.R.Crim.P. 14(a); *Zafiro*, 506 U.S. at 537. Under Rule 14, the determination of the risk of prejudice and the decision whether to grant a motion to sever is soundly within the discretion of the trial court.  *Zafiro*, 506 U.S. at 541; *United States v. Haworth*, 168 F.R.D. 658 (D.N.M. 1996)

In determining whether to grant a motion to sever under Rule 14, the Court must weigh the potential prejudice to the defendant against the considerations of judicial economy and efficiency. *Zafiro*, 506 U.S. at 537; *United States v. Dirden*, 38 F.3d 1131, 1140 (10th Cir. 1994). "Even where the requirements of Rule 8(a) are met, however, Federal Rule of Criminal Procedure 14(a) permits the trial court to conduct separate trials if the joinder of separate offense appears to prejudice the

defendant or the government." *United States v. Olsen*, 519 F.3d 1096, 1102 (10th Cir. 2008) (*internal quotation omitted*). The Tenth Circuit has held that "[p]rejudicial joinder occurs under Rule 14 when an individual's right to a fair trial is threatened or actually deprived." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997). Because "[t]he risk of prejudice will vary with the facts of each case," determining whether severance is required is up to the discretion of the district court. *Zafiro*, 506 U.S. at 539. *See also Haworth*, 168 F.R.D. at 659 (granting motion to sever in light of likely prejudice to the moving defendants given the risk of juror confusion and "the circus like atmosphere inherent in a joint trial of this nature" and finding that severance would also facilitate judicial economy).

In this case, severance of the trial on counts 6 and 7 is required because: (1) the counts were improperly joined, as they do not have a sufficient nexus with the other 13 offenses to permit joinder under Rule 8(a); (2) the 2014 Defendants were improperly joined with the other defendants under Rule 8(b) because they were not alleged to have participated in the same act or transaction or in the same series of acts or transactions that constitute crimes as the other 21 defendants; and (3) finally, even if this Court finds joinder of the defendants or offenses proper under Rule 8, the introduction of evidence of the other 13 unrelated crimes purportedly committed by other SNM members and co-defendants will deprive the 2014 Defendants of their rights to a fair trial such that severance must be granted under Rule 14. In addition to protecting the Defendants' right to a fair trial, judicial efficiency and economy further support severance, as a trial of all 24 Defendants on all 15 counts would last considerably longer and would be logistically impractical because all defendants and their counsel may not even fit in the courtroom during the trial. These logistical limitations alone implicate the Defendants' right to confront witnesses, be present at all critical stages of the trial and to have a public trial under the Sixth Amendment.

## I.   Counts 6 and 7 Were Improperly Joined Under Rule 8(a) and Must be Severed From the Remaining Counts.

Under Rule 8(a), offenses may be joined only when the offenses are (1) of the same or similar character, (2) based on the same act or transaction, or (3) constitute parts of a common scheme or plan.  Fed.R.Crim.P. 8(a).  The "language in Rule 8(a) is a rather clear directive to compare the offenses charged for categorical, not evidentiary, similarities. […] Simply put, if offenses are of like class, […] the requisites of proper joinder should be satisfied so far as Rule 8(a) is concerned."  *United States v. Coleman*, 22 F.3d 126, 133 (7th Cir. 1994).

Crimes are of similar character when they are "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness."  *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980) (quoting Webster's New International Dictionary (2d ed.)).  In essence, charges may be joined under this provision of Rule 8(a) only when they are of the same type.  *See United States v. Rodgers*, 732 F.2d 625, 629 (8th Cir. 1984).

As a matter of law, the firearms charges, Counts 11 and 12, against Defendant Garcia, are not "of the same or similar character" as murder and conspiracy to commit murder for purposes of Rule 8(a).  The firearms charges in Counts 11 and 12 are in an entirely different category and class than Counts 6 and 7 and must be severed for this reason alone. *Compare* 18 U.S.C. § 1959(a) (conspiracy and murder in furtherance of racketeering) *with*, 18 U.S.C. § 924(c) (use of a firearm in furtherance of a violent crime) *and* 18 U.S.C. § 922(g) (felon-in-possession of a firearm). Further, no evidence suggests that these firearms charges are part of the same act or transaction as Counts 6 and 7.  In fact, the events resulting in Counts 11 and 12 occurred over 18 months *after* the alleged murder of Mr. Molina.  *See Johnson v. United States*, 356 F.2d 680, 682 (8th Cir. 1966) (explaining the joinder of offenses is appropriate when the counts refer to the same type of offenses and occur "over a relatively short period of time").

Since the firearms charges contained in Counts 11 and 12 are not of the same or similar character as the conspiracy to commit murder and murder charges in Counts 6 and 7, and because there is no evidence that Counts 11 and 12 are based on the same act or transaction as Counts 6 and 7, the government can only attempt to argue that the charges reflect a common scheme or plan under the third prong of Rule 8(a). There are limits, however, to how broadly a Court can construe a common scheme or plan.  Under Rule 8(a), offenses are part of a common scheme or plan when the alleged offenses are similar, carried out in the same manner, and are alleged to have occurred over a relatively short period of time.  *United States v. Jordan*, 602 F.2d 171, 172 (8th Cir. 1979). Here, all the government can claim is that the defendants are alleged members of the SNM and have been indicted with VICAR offenses.  While the government can claim that the purpose of the offenses as well as the means and methods of the SNM constitute racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), there is no RICO exception to Rule 8 and the government should not be allowed to rely on allegations of RICO conspiracy to draw every alleged crime of every alleged SNM member under the mantel of a common scheme or plan for purposes of Rule 8(a). *See Randazzo*, 80 F.3d at 627 (reiterating that although generally phrased, Rule 8(a) "conditions … are not infinitely elastic.") *See also United States v. Guiliano,* 644 F.2d 85, 89 (2d Cir. 1981) ("One of the hazards of a RICO count is that when the Government is unable to sustain a conviction under this statute, it will have to face the claim that the prejudicial effect of tarring a defendant with the label of 'racketeer' tainted the conviction on an otherwise valid count.").

To be sure, the remaining 11 counts are either the same type of offense—murder or conspiracy to commit murder—or are similar in character—assault or attempted murder.  With regard to these charges, perhaps the government could satisfy the first prong of Rule 8(a).  There is no evidence, however, that Counts 6 and 7 are based on the same acts or transactions as these

other charges.  In fact, the crimes alleged in Counts 1 and 2 occurred over a decade before the allegations resulting in Counts 6 and 7. Thus, while many of these other offenses are the same character of offense as Counts 6 and 7, because of the differences in time, location and offenders the "same act or transaction" provision of Rule 8(a) cannot be met here. *Cf. United States v. Riebold,* 557 F.2d 697, 707 (10th Cir. 1977) (holding that joinder is proper "[w]here the evidence overlaps and the offenses are similar… and the operable events occurred within a relatively short span of time").

Turning to the last provision of Rule 8(a), the 11 other murder, conspiracy and assault charges do not constitute parts of a common scheme or plan.  In the Tenth Circuit, the test for joinder is whether there is a common thread. *United States v. Caldwell*, 560 F.3d 1202, 1212 (10th Cir. 2009); *quoting United States v. Rogers*, 921 F.2d 975, 984 (10th Cir.1990) (*internal quotations omitted*). In this case, there are simply no common threads between Counts 6 and 7 and the other counts, and the only commonality shared by all defendants is their alleged involvement with the SNM.

Under the RICO statute it is a crime for individuals to participate in a pattern of racketeering as part of an enterprise that includes any "group of persons associated together for a common purpose in engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981). While proof a "common purpose" is sufficient to bring a group of people under RICO, Rule 8(a) and the Tenth Circuit require that the offenses share a commonality that goes beyond merely the goals or purpose of the group. Here, the government will likely argue that these crimes were all committed by SNM members to further SNM goals and thus demonstrate a common scheme or plan. This argument fails, however, because the government cannot simply use the

umbrella of RICO to join every alleged SNM crime by simply stating that the offense shared a common purpose. The plain language of Rule 8(a) and the Tenth Circuit's test requires more.

Therefore, because Counts 6 and 7 are improperly joined under Rule 8(a), these counts must be severed and tried separately.

## II.   The 2014 Defendants Were Improperly Joined Under Rule 8(b) With the Other 21 Defendants and Their Trial On Counts 6 and 7 Should Therefore Be Severed.

Rule 8(b) governs the joinder of defendants and provides in part that "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.P. 8(b). The test for determining whether joinder is proper is whether the defendants are alleged to have participated in the same crime or series of crimes. *See United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978).

Joinder under Rule 8(b) is improper unless the 2014 Defendants are alleged to have "participated in the same acts or transactions constituting an offense or offenses or in the same series of acts or transactions" that constitute crimes as the other defendants. Fed.R.Crim.P. 8(b). "It is not enough," however, "that the defendants are involved in an offense of the same or similar character; there must exist a transactional nexus . . . . before joinder of defendants in a multiple-defendant trial is proper." *United States v. Jimenez*, 513 F.3d 62, 82–83 (3d Cir.2008).

In *Zafiro*, the Supreme Court stated that joinder under Rule 8(b) "serve[s] the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  506 U.S. at 537.  This possibility of scandal and inequity, however, is not a risk in this case.  In cases where other defendants' charges are based on the same alleged crime and similar evidence or stem from the same conduct, as was the case in *Zafiro*, the court's concern with inequality and inconsistency is understandable.  In *Zafiro*, four defendants were arrested together in an apartment with more than

70 pounds of cocaine and other drugs. *Id.* at 535-36. All four defendants were charged and convicted of conspiring to possess illegal drugs, and the Court affirmed the denial of defendants' motions to sever.  *Id.* at 541.

In *United States v. Hill*, the Tenth Circuit affirmed the district court's denial of a motion to sever where multiple co-defendants and members of the Tulsa, Oklahoma Hoover Crips were tried and convicted of conspiracy to commit bank robbery. 786 F.3d 1254, 1258 (10th Cir. 2015), *cert. denied, Hill v. United States,* 136 S. Ct. 377 (2015). Co-defendant Dejuan Hill's motion to sever was denied because the court reasoned that "[a]lthough the Indictment… charged six different robberies alleged to have been committed by different defendants over a more than two-year period, it also alleged that the defendants had conspired and agreed with each other to commit all six of the robberies. *Id.* at 1272.

Unlike the defendants in *Zafiro* and *Hill*, here, there is no allegation that the 2014 Defendants, and the other defendants, with the exception of Defendant Baca where noted, "conspired and agreed with each other to commit" the other crimes alleged in the indictment.  In short, there is no evidence that the crimes alleged in Counts 6 and 7 were part of a series of acts or transactions.  Even in the most favorable light, the indictment alleges that, out of the nine 2014 Defendants, only Defendant Baca participated in any of the other counts. Further, there is no evidence of a transactional nexus between the 2014 Defendants and any of the other defendants or other counts. There is no evidence that the any of the other 2014 Defendants and other defendants participated in a series of acts or transactions despite the fact that the government has actively investigated these defendants for more than two and half years with the help of cooperating witnesses, confidential informants, and call and mail monitoring.

Further, since the crimes alleged in Counts 6 and 7 only involve the 2014 Defendants, the *Zafiro* court's concerns for equality and consistence do not exist. Because the charges against the 2014 Defendants are discrete and not connected to any of the other defendants, a separate trial would not lead to potential inconsistent verdicts with regard to the 2014 Defendants and the other 20 defendants. Since the crimes alleged in Counts 6 and 7 are not connected to the other defendants and because 2014 Defendants are not alleged to have participated in the same act or transaction or in the same series of acts or transactions with the other defendants, joinder of the 2014 Defendants is improper under Rule 8(b). Accordingly, these Defendants trial should be severed.

III.    **Alternatively, Counts 6 and 7 should be severed under Rule 14, as the evidence of other murders, assaults, and conspiracy by SNM members will severely prejudice the 2014 Defendants, and a joint trial of all defendants on all counts is impractical.**

While the federal system favors a single trial for defendants who are indicted together, *see Zafiro*, 506 U.S. 537, "[t]he Federal Rules envision, however, that circumstances may arise where joint trials would be inappropriate and, indeed, harmful to the accused's constitutional rights." *United States v. Neha*, 2005 WL 3663695, at *2 (Browning, J.) (D.N.M. Sept. 13, 2005), *aff'd, United States v. Neha*, 301 Fed. Appx. 811 (10th Cir. 2008). Therefore, a three-step inquiry is necessary to determine whether the Court should grant a motion to sever. *United States v. Gould*, 2007 WL 1302587, at *2 (Browning, J.) (D.N.M. Apr. 6, 2007). First, the Court "must determine whether the defenses presented are so antagonistic that they are mutually exclusive." *United States v. Pursley,* 474 F.3d 757, 765 (10th Cir.2007) (*internal quotations and citations omitted*). Second, "a defendant must further show a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. Finally, "the trial court exercises its discretion and weighs the prejudice to a particular defendant caused

by joinder against the obviously important considerations of economy and expedition in judicial administration." *Id.*

In *United States v. Hardwell,* the Tenth Circuit held that joinder under Rule 8(b) was proper when six co-defendants were all charged with conspiracy, money laundering, and possession of cocaine with intent to distribute. 80 F.3d 1471 (10th Cir. 1996), *on reh'g in part, United States v. Hardwell,* 88 F.3d 897 (10th Cir. 1996). The Tenth Circuit explained that severance was not necessary, in part, because the "conspiracy was to commit a single offense; there were only six defendants, all charged with the [one] conspiracy" and there was not a great disparity in culpability among the defendants. *Id.* at 1487. Relying on *Zafiro,* the Tenth Circuit also concluded that the limiting instruction given by the trial court was sufficient to cure any potential prejudice under Rule 14. *Hardwell*, 80 F.3d at 1487. In reaching this decision, the court directly contrasted *Hardwell,* in which the trial court found that a severance was not warranted, with *United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987), a RICO case where a severance was granted, that is substantially more complex than *Hardwell,* and remarkably similar to the case at hand.

In *Gallo*, the District Court granted the defendants' motion for severance under Rule 14 and separated a 22-count RICO indictment charging 16 defendants into 7 separate trials. *Id.* at 748-61. The 22 count indictment charged the defendants, alleged members and associates of the Gambino Crime Family, with RICO and a multitude of "substantive" offenses that took place over the course of two decades and were related to an alleged criminal enterprise. *Id.* at 738. Although the court determined that the defendants were properly joined under Rule 8(b), it held that severance was required under Rule 14 after considering the prejudice resulting from: (1) the complexity of the indictment; (2) the disproportionality of evidence; (3) whether there is an antagonism of defense strategies and theories; (4) whether there is evidence only admissible as to

some defendants; (5) the potential inadequacy of limiting instructions; and (6) the balancing requirements of Rule 14 including the deleterious effect of prolonged complex cases, and whether granting a severance saves time. *Id*. at 749-58.

The *Gallo* court determined that indictment was sufficiently complex given that the case was a RICO conspiracy and that jury would have to "apply the highly technical and counter-intuitive RICO conspiracy elements to a great range of disparate and predicate conspiracies and events . . ." some occurring nearly 20 years apart. *Id*. at 749-750.  The court noted that "[m]uch of the relevant evidence would have to be stored in the jury's collective mind for many months – and a good deal of it introduced only as to certain defendants or certain charges." *Id.* at 750. The court went on to note the risk of prejudice caused by disproportionality of the evidence, stating that "[t]he difficulties of complex, multifarious cases, as this are compounded for those defendants whom only a small portion of the evidence is relevant." *Id*. "The prejudice concomitant with the case's complexity" the court noted "is 'particularly injurious' to defendants charged in a small portion of the counts and who are implicated by only bits and pieces of evidence" because the jury is subjected to months and months of trial "dealing with dozens of incidents of criminal misconduct that does not involve those minor defendants in anyway. *Id.* (citing *United State v. Branker*, 395 F.2d 881, 882, (2d. Cir. 1968) (*internal quotations omitted*)).  With regard to the prejudice caused by an antagonism of defense strategies and theories, the court noted that while a simple showing of some antagonism was insufficient, prejudice rising to the level requiring severance occurs when the "jury must *necessarily* disbelieve the testimony offered on behalf of one defendant in order to believe the core testimony offered on behalf of another." *Id.* at 751 (*quoting United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir.1981)) (*internal quotations omitted*)).

With regard to the prejudice created in joint trials when evidence is admissible only as to some defendants but not others, the *Gallo* court explained the likelihood of frequent instances in which "evidence admitted against one defendant would also be relevant as to another under Rule 401, but would be excluded as to the latter under Rule 403 in a separate trial of that defendant alone because its probative value would be outweighed by the danger of unfair prejudice." *Id.* at 752. On this front, the court concluded that it would be "wholly unreasonable for a jury to perform the intellectual feat in a joint trial of using such proof against some defendants and ignoring it as to others." *Id.* (internal quotation omitted). The court explained that, because the indictment charged a central RICO conspiracy, numerous other conspiracies in the substantive counts and the predicates acts and potential uncharged conspiracies, the result would be "conspiracies within conspiracies, and conspiracies to conceal other conspiracies, conspiracies which are discrete and finite, and those which are amorphous and indefinite, involving conspirators joining and leaving the conspiracy at various times." *Id.* at 751. Meaning that in such a complex trial, "[a]dmissibility decisions will often depend on having faith in the jury's ability to heed extraordinarily intricate limiting instructions" which "[o]ver the course of several months … would virtually be impossible without the aid of a computer" given the number of the co-defendants and counts. *Id.* at 752.

The use of such limiting instructions, the court noted, is "cited as a pivotal reason for denying severance in many cases." *Id.* The court, however, concluded that "the trial judge must be convinced that the jury . . . has a reasonable chance of understanding and acting upon instructions from the court," and that while the use of a limiting instructions cannot be "invariably rejected, neither should it be invariably accepted." *Id.* at 752 (*quoting United States v. Figueroa*, 618 F.2d 934, 943 (2d.Cir.1980) (*internal quotations omitted*)). Accordingly, the court reasoned, there will be "some contexts in which the risk that the jury will not, or cannot, follow instructions is so great,

and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton,* 391 U.S. at 135. The court found this issue extremely salient, concluding that the *Gallo* case was "far too extensive and intricate" to expect that a jury could "be expected to retain such precise discriminations weeks and months down the line, when they retire to deliberate on the basis of a warehouse of diverse evidence." *Gallo* at 753. Surely, although the accumulation may be slow and at times subtle, severe prejudice is stacked against the defendants over the course of such a trial.

Considering the balancing requirement of Rule 14, the court noted that "[t]rials in these 'monster' cases "create "an enormous burden on the courts, as well as on the defendants, the defense bar, juror, and even prosecutors." *Id.* at 754. *See generally* Paul Marcus, *Re-Evaluating Large Multiple-Defendant Criminal Prosecutions*, 11 Wm. & Mary Bill Rts. J. 67 (2002); Note, *No Easy Solutions to the Problem of Criminal Megatrials*, 66 Notre Dame L.Rev. 211 (1990) (highlighting the many complications created when trying 'megatrials'). The burden on the court itself includes the purely logistical nightmare of coordinating the "schedules of scores of persons for months on end." *Id*. at 754. For individual jury members, they are removed from the routine and comfort of their daily lives "for inordinate stretches of time" in which they "must sit stoically and silently for hours every day, day after day" adsorbing "vast quantities of information" and "perform the mental gymnastics" required by the court's limiting instructions resulting in a "process as whole" that is "undoubtedly draining, disorienting, exhausting and often demoralizing." *Id*. The court also noted the "severe disadvantages to the defendants as well," including the potential of being denied their choice of counsel and the prolonged periods of pretrial incarceration defendants face while they are supposedly presumed innocent. *Id.*

Lastly, the *Gallo* court doubted whether conducting a joint trial on all 16 counts charging 22 defendants would, in fact, save time. *Id*. at 756.  The court concluded that "the 'overall' trial time" was probably "diminished in [the *Gallo*] case by splitting up the trials" … because the trial would be "smoother and more concise . . . evidence in each case does not scatter about the various contours of the conspiracy . . . there are two or three defense counsel cross-examining and raising objections rather than one or two dozen . . . sidebars are much more infrequent . . . [and] continuances and adjournments are less common." *Id*. at 757. "More significantly" the court noted that "the later trials are certain to be shortened or even precluded by the earlier trials" because the prosecution will better understand the strengths and weaknesses of its case, and defendants will may be encouraged to accept plea offers. *Id*.

Like *Gallo*, this case deals with a complex RICO indictment spanning decades' worth of criminal allegations. This case involves separate, distinct alleged murder conspiracies that took place at different points in time, involved completely different alleged conspirators, and different alleged victims.  Exhibit 2, attached, groups the counts in this indictment that bear a relationship to each other and suggest a way this indictment could be severed into seven separate trials that would potentially avoid the problems identified in *Gallo*. Whether the Court severed in this manner, there is no doubt given the discrete nature of the alleged conspiracy and murder in Counts 6 and 7, compared with the other counts in the indictment, Counts 6 and 7 should be tried separately.  The 2014 Defendants who have joined this Motion have agreed to have the trial on this count proceed first in the upcoming July trial slot.

Also similar to *Gallo* is the disproportionality of the evidence in relation to the 30 defendants charged. A review of the discovery to date demonstrates that the government has revealed far more and far stronger evidence against some co-defendants, including audio-recorded

conversations and self-incriminating statements, than against others. Accordingly, "[i]nevitable prejudice to the peripheral defendants is caused by the slow but inexorable accumulation of evidence against the major players." *Gallo*, at 750 (*quoting United States v. Kelly*, 349 F.2d 720, 759 (2d Cir.1965) (reversing conviction because the trial court should have granted severance, where "some [of the evidence regarding the co-defendant's actions] rubbed off on [defendant] we cannot doubt.") (*internal quotations omitted*)).

Given the number of defendants and the fact that discovery is still being provided, it is unclear at this point whether the 30 defendants' defenses are so antagonistic as to be mutually exclusive. However, there can be no doubt there will be antagonistic defenses. For instance, many defendants may argue they were not or are not SNM members. Other defendants will likely argue the alleged crimes were not done in furtherance of the SNM. Defenses may be further developed as discovery and other litigation progress, but given the variation in time, location and defendants involved in the other alleged crimes not part of the 2014 Defendants, it is much more likely than not that mutually exclusive antagonistic defenses will risk causing prejudice to all defendants on trial. Guilt by association is at an extreme risk in this case. If the government can establish in some or all of the other counts that members of SNM carried out or attempted to carry out murders in furtherance of the SNM, and prove that some or all of the 2014 Defendants are members of the SNM, the mere fact that the instant defendants are members could unfairly prejudice the jury into believing they are guilty of the Molina murder.

What is undoubtedly clear is that much of the evidence related to the counts in which the 2014 Defendants are not charged is likely inadmissible in a case on Counts 6 and 7, and presenting it to the jury poses a serious risk that the 2014 Defendants' right to a fair trial will be compromised as the jury will be virtually incapable of reaching a reliable conclusion about each defendant's

guilt or innocence. Presentation of evidence on the multiple other alleged murders, conspiracy to commit murder, assaults and the firearms charges not contained in Counts 6 and 7 will subject the 2014 Defendants to undue prejudice by creating an atmosphere of criminal propensity.  In Counts 6 and 7, the 2014 Defendants are charged with conspiring to and murdering Javier Molina in furtherance of the racketeering activities of the SNM.  If the jury is permitted, however, to hear evidence of the other four alleged murders, four other conspiracies to commit murder, and other violent acts, this will essentially allow the government to introduce propensity evidence.  In other words, in hearing of the other offenses which the government will allege are similar to the Molina murder—that is, some of the victims were allegedly murdered for cooperating with law enforcement—there is a substantial risk that jurors will credit these other offenses improperly in determining each 2014 Defendant's guilt or innocence in regard to the Molina murder. As the Tenth Circuit has noted, "prejudice is more likely to occur when the offenses are of the exact same character."  *United States v. Price*, 265 F.3d 1097, 1105 (10th Cir. 2001).  This prejudicial effect threatens the 2014 Defendants right to a fair trial and weighs strongly in favor of severance.

While the government is likely to suggest that limiting instructions would cure any potential prejudice, the near certainty that such instructions would not so cure the prejudice makes them unworkable in a trial of this complexity and magnitude. In a case this complex, a limiting instruction is more aspirational than a reality, and in a "judicial system, dedicated to truth and justice, such a lack of connection with reality is unacceptable." *Gallo*, 668 F. Supp. at 752.  Asking a jury to make hyper-specific determinations after a month's long trial about how and for what they may consider a piece of evidence is impractical and unnecessary given this request for severance. If the indictment dealt with fewer counts or fewer defendants, perhaps a limiting instruction might be appropriate.

In this case, however, if no severance is granted, the jury will hear about the other murders, conspiracies to commit murder (not of the same victims save one), a conspiracy to commit assault, assault, and an attempted murder plus the firearms charges, all allegedly in furtherance of the SNM. Simply hearing about this activity by alleged fellow gang members makes it unlikely the 2014 Defendants can get a fair shake with the jury, even if a limiting instruction is given and even if the defendants present viable defenses.

For some of the reasons delineated above, this Court recently granted a severance in a related indictment. *See United States v. Baca*, 2016 WL 6404772 (Oct. 20, 2016) (Browning, J.) (granting severance in part because a joint trial would prevent the jury from making a reliable judgment in a case where many defendants with varying degrees of culpability would be tried together) (citing *Zafiro v. United States*, 506 U.S. at 539). In *Baca*, with respect to Defendant Gallegos, the Court noted that the risk of prejudice was heightened given the co-Defendants' "markedly different degrees of culpability," *id.*, and noted that the Defendant Gallegos had a "markedly different degree of culpability" in part because "he was allegedly involved in a single incident." *Baca,* 2016 WL 6404772 at *31. Although the Court based its decision to sever that case on several other factors as well, there are clear parallels with this case, where the defendants in question (with the exception of Defendant Baca) are only alleged to have been involved with one incident and the related conspiracy.

In addition, as was the case in *Gallo*, severing the group of 2014 Defendants from the other co-defendants would best serve the interest of the Court and the jury.[1] First, this Court will benefit

---

[1] The undersigned counsel are aware of the Court's finding in *Baca*, that a joint trial in that case would "certainly be more convenient for the Court," *Baca,* 2016 WL 6404772 at *32, but argue that finding does not hold true in this case, given the sheer number of defendants in this indictment and the complexity of the allegations involving disparate and distinct conspiracies over a period of decades.

from having fewer schedules to attempt to accommodate and therefore greater flexibility in scheduling matters. Also, conducting separate trials may result in defendants named in the subsequent trial accepting plea offers, thus precluding the need for a trial altogether and increasing judicial efficiency.  Second, selecting a jury will be less difficult because it will be easier to find jury members who are available for the several weeks necessary to sit for the 2014 Defendants' trial rather than the several months required to try all remaining defendants for all 15 Counts. Additionally, the longer that the jury has to sit, the greater the risk that Defendants will be found guilty for convenience sake and the greater risk that jurors' decisions will be influenced by the national media attention that has followed this investigation and will likely continue into the trial.

Severance is also required under Rule 14 to avoid violating the 6th Amendment rights of the 2014 Defendants to be present at all critical stages of the trial, confront the witnesses against them and have a public trial. In *United States v. Ellender*, the Fifth Circuit concluded that "[t]he government's aspirations of conducting a megatrial were limited only by the physical bounds of courtroom walls" in upholding the district court's refusal to sever the trial of 23 co-defendants charged with conspiracy to import more than one million pounds of marijuana. 947 F.2d 748, 754 (5th Cir. 1991). In *Ellender*, a specially-modified courtroom in which bleachers and a "special intercom system of dubious efficacy" were installed to attempt to facilitate the three-month long trial. *Id.*

Even the largest of the federal courtrooms in the District of New Mexico, however, cannot adequately accommodate the trial, much less *voir dire*, if a severance is not granted. *See Gomez v. United States*, 490 U.S. 858, 873 (affirming that *voir dire* is a "critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present").  Unless the Court foresees a similar modification to the courtroom as that in *Ellender*, then in the likely event that

the courtroom is overfilled with defendants, counsel, and co-counsel, these defendants risk losing their constitutional right to confront witnesses against them.  *See* U.S. Const. Amend. VI ("[T]he accused shall enjoy the right ... to be confronted with the witnesses against him .... ");  *cf. Bruton v. United States*, 391 U.S. 123, 136–37 (1968) (holding that threats to a defendant's right to confront witnesses against him poses a "hazard [the Supreme Court] cannot ignore").   Depending on where they are seated, a particular defendant may not be able to see the jury or the witness, may be left out of important bench conferences (by counsel)[2] or other important stages of the trial. Additionally, these defendants risk losing their right to a public trial if they cannot be seated in the courtroom or if the courtroom is simply too full, as it has been in the past, to allow access to the public and the press.  *See Presley v. Georgia*, 558 U.S. 209, 215 (2010) (explaining that "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials").

### IV. Severance of Counts 6 and 7 is necessary to protect the 2014 Defendants' respective rights to a fair trial under the Fifth Amendment

Severance is discretionary up until the point that joinder of either defendants or offenses cause actual or threatened deprivation of a fair trial. *United States v. Butler*, 494 F.2d 1246, 1256 (10th Cir. 1974)). Misjoinder rises to the level of a constitutional violation when it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial. *United States v. Lane,* 474 U.S. 438, 446 (1986).  Under such conditions, "[t]he dangers for transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, are so great that no one really can say prejudice to substantial right has not taken place."  *Kotteakos v. United States*, 328 U.S. 750, 774 (1946).  "[A] criminal defendant has no constitutional right to

---

[2] As it stands now, with the remaining defendants, bench conferences would be impossible with the number of attorneys.  The jury would have to be excused just so all counsel could hear the arguments.

severance unless there is a strong showing of prejudice caused by the joint trial." *Cummings v. Evans*, 161 F.3d 610, 619 (10th Cir. 1998).  When improper joinder allows the government to introduce prejudicial evidence that would have been inadmissible had the charges been tried separately and/or when the prosecution joins defendants with grossly disparate charges, courts have recognized the high risk of prejudice that likely requires reversal. *See, e.g., Kotteakos*, 328 U.S. at 773-774 (reversing and holding that, the government was not authorized "to string together, for common trial, eight or more separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all"); *United States v. Mardian*, 546 F.2d 973 (D.C.Cir.1976) (reversing defendant's conviction, who was indicted on only one of several counts and alleged to have been involved in only 5 or 45 overt acts, based upon showing of likely prejudice from a joint trial wherein he had been tried with three of the principal members of the Watergate conspiracy); *United States v. Dockery,* 955 F.2d 50, 53 (D.C.Cir.1992); *United States v. Sampol,* 636 F.2d 621, 645–48 (D.C.Cir.1980) (vacating certain defendant's convictions where the district court failed to grant severance and noting the quantity and type of evidence against co-defendants is a vital consideration in evaluating severance).

In *Butler*, which was not a RICO case but did contain a count naming all 23 defendants and charging conspiracy to convert government property, the Tenth Circuit addressed the improper joinder of multiple distinct conspiracies and the impossibility of a fair trial for some defendants under those conditions. Although the government alleged one general conspiracy, the Tenth Circuit found that the evidence supported the existence of no fewer than three.  *Butler*, 494 F.2d at 1255.  In its explanation of the resulting prejudice, the Tenth Circuit could just as easily have been detailing the nature of the indictment in this case, where different combinations of the 30

charged defendants are alleged to have been involved in a series of separate acts, some of them

separated by decades. The *Butler* court explained:

> The conspiracy count, which named all twenty-three defendants, alleged as dual
> purposes of the conspiracy the violations of both 18 U.S.C. §§ 641 and 1361 . . . .
> It is always difficult to evaluate evidence in a conspiracy case, and because of the
> secretive nature of the crime, the evidence is almost invariably circumstantial. As
> the Supreme Court has warned, however, caution must be taken that the conviction
> not be obtained by piling inference upon inference. . . . That admonition, we think,
> has special relevance in cases such as this, where many defendants, some of whom
> were not even acquainted, are charged on the basis of varying degrees of
> participation at various times. Guilt must be determined individually and not merely
> by association. Our review of the evidence must therefore be especially meticulous.

*Butler*, 494 F.2d at 1251-1252 (Internal quotation and citation omitted). The Tenth Circuit went

on to say:

> Twenty-three defendants were named in the indictment. Different combinations of
> these defendants were involved in nearly every transaction which figured in the
> trial. Many of the defendants did not know one another prior to trial. Some of the
> members of the 3d Mobile may have assisted Sergeant Greene in obtaining and
> converting Government property from R & M. It is impossible, however, upon the
> evidence presented at trial, to link any of them with the destruction of an electronic
> test unit by members of another organization located elsewhere on the base . . . .
> because Mr. Reinke may have shared mutual acquaintances with those who
> collaborated in the destruction of the unit, he was forced to acquit himself of their
> actions. One can only guess whether he was also forced to share their guilt. We can
> envision circumstances where what has been alleged as one conspiracy is disclosed
> at trial to be several repetitive conspiracies in which there is substantial identity of
> parties and method . . . . In such circumstances a curative instruction may well
> bridge the gap between pleading and proof. Such is not the case here. Mr. Reinke,
> whose participation was limited to his association with Sergeant Greene and the
> other members of the 3d Mobile, should have been tried only on the charges arising
> from that association. The possibility that the issue of his guilt was confused with
> the guilt of other defendants involved in unrelated transactions at different times
> and in different places is too great. His convictions must therefore be reversed, and
> the case is remanded for a new trial.

*Id.* at 1256-1257.

The *Butler* analysis applies here as well, the only further wrinkle being that the crimes

charged in counts 6 and 7 are alleged to have been committed in aid of racketeering activity.  Here,

the fact that the defendants have been charged with VICAR offenses cannot overcome the 2014 Defendants' right to a fair trial on the charges alleged against them. As the *Gallo* court determined, the complexity of a large multi co-defendant racketeering case almost demands severance at least "where the severed trials concern aspects of the enterprise which are clearly separable and independent," as is the case here. *Gallo*, 668 F.Supp. at 758. A joint trial involving evidence on a litany of other murders, charged in factually unrelated counts, would be so prejudicial to the 2014 Defendants as to severely impair their respective rights to a fair trial under the Fifth Amendment.

## CONSULTATION WITH COUNSEL

Undersigned counsel attempted to contact counsel for all parties in this matter. Counsel for the 2014 Defendants Jerry Montoya (by Larry Hammond), Daniel Sanchez (by Amy Jacks), Anthony Ray Baca (by Theresa Duncan), Mauricio Varela (by Mary Stillinger) and Timothy Martinez (by Steven Almanza) join in the Motion. Counsel for Defendants Joe Gallegos (by Brock Benjamin), Christopher Chavez (by Orlando Mondragon), Santos Gonzales (by Erlinda Johnson), Conrad Villegas (by B.J. Crowe) and Paul Rivera (by Keith Romero) do not oppose this Motion. Counsel for Defendants Eugene Martinez (by Douglas Couleur) and Leonard Lujan (by Dean Clark) take no position on this Motion. Counsel for the remaining Defendants did not respond regarding their position. Counsel for the United States, AUSA Maria Armijo, indicates the United States opposes this motion.

## CONCLUSION

A joint trial of Counts 6 and 7 alongside the other 13 charges is not permitted under Rule 8(a), or Rule 8(b) and if it were, it is not permitted under Rule 14 or under the Fifth Amendment, as the 2014 Defendants would be prejudiced by the presentation to the jury of similar offenses by other purported members of the SNM. As such, this Court should grant this motion to sever.

Respectfully submitted,
THE LAW OFFICE OF RYAN J. VILLA

*/s/ Ryan J. Villa*
Ryan J. Villa
2501 Rio Grande Blvd. NW Ste. A
Albuquerque, NM 87104
(505) 639-5709
(505) 433-5812 facsimile
ryan@rjvlawfirm.com

AND

*/s/ Justine Fox-Young*
Justine Fox-Young, P.C.
1903 Wyoming Blvd. NE, Suite B
Albuquerque, NM 87112
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Rudy Perez*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was sent via the Court's CM/ECF system on, this 23rd day of December, 2016, which caused counsel of record for all parties to receive a copy of this Motion electronically.

*/s/ Ryan J. Villa*
Ryan J. Villa