IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                  No. 2:15-cr-04268-21-JB

ANTHONY RAY BACA,

    Defendants.

### DEFENDANT ANTHONY RAY BACA'S SUPPLEMENTAL BRIEF REGARDING TIMING OF DISCLOSURE OF THE IDENTITY OF CONFIDENTIAL INFORMANT

Defendant Anthony Ray Baca respectfully submits this supplemental brief on the issue of when the Court should compel the government to disclose to him and his counsel the identity of the confidential informant whose statements are summarized in FBI Confidential Human Source Reporting (February 11, 2016), Bates No. *U.S. v. DeLeon, et. al.* 3308-3309, and who is the subject of the Joint Motion for Disclosure and Production of Confidential Informant (Dkt. No. 698). As discussed in more detail below, because this informant very likely has information that exculpates Mr. Baca and Mr. Baca may seek to call him as a witness, Mr. Baca is entitled to immediate disclosure of the informant's identity.

### FACTUAL AND PROCEDURAL BACKGROUND

Along with co-defendants Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Daniel Sanchez, Carlos Herrera, and Rudy Perez, Defendant Anthony Ray Baca is charged with conspiring to murder and murdering Javier Molina in March 2014. [Dkt. 368 at 20-26.] Mr. Baca and his co-defendants are alleged to have committed these crimes "as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the

purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity," contrary to 18 U.S.C. § 1959(a).  [*Id.*]

The essential allegations underlying these charges are as follows.  On March 7, 2014, Mr. Molina was stabbed to death while an inmate at the Southern New Mexico Correctional Facility (SNMCF) in Las Cruces, New Mexico.  It is undisputed that Defendant Jerry Armenta stabbed Mr. Molina with a shank, and Mr. Armenta recently pleaded guilty to conspiracy and murder in aid of racketeering in relation to the killing.  [Dkt. 802.]  The government alleges that Mr. Molina was killed in retaliation for his cooperation with law enforcement, and that Mr. Baca authorized or "green-lighted" the killing.  More specifically, the government alleges that, while incarcerated at the Penitentiary of New Mexico in Santa Fe, Mr. Baca gave paperwork confirming Mr. Molina's cooperation with law enforcement to Mauricio Varela.  Mr. Varela allegedly brought the paperwork to Las Cruces when he was transferred to SNMCF.  The government alleges that Mr. Varela showed this paperwork to SNM members at SNMCF and Mr. Molina was killed as a result.  The government also alleges that the shank (or shanks) used in the killing came from a walker used by Defendant Rudy Perez.  Less than 24 hours elapsed between the time Mr. Varela arrived at SNMCF and the killing of Mr. Molina.

On September 22, 2016, Mr. Baca and several of his co-defendants filed a Joint Motion for Disclosure and Production of Confidential Informant, in which they sought disclosure of the identity of a confidential informant who allegedly told authorities that Mr. Perez "assisted in the killing of Javier MOLINA; PEREZ provided his walker to make shanks that were used in the murder."  [Dkt. 698-1 at 2.]  On October 17, 2016, the government filed its response to the motion, noting that it had agreed to disclose the identity of the informant to Mr. Perez and his

counsel pursuant to a protective order, but objecting to disclosure to the remaining defendants on the grounds they had failed to provide a factual basis sufficient to justify disclosure. [Dkt. 741.] On November 7, 2016, four of the remaining defendants, including Mr. Baca, filed a joint reply, in which they provided additional facts in support of their requests for disclosure. [Dkt. 762.]

This Court held a hearing on the motion on November 29, 2016. During the hearing, each of the defendants seeking disclosure made supplemental arguments in support of their requests. After hearing Mr. Baca's arguments and those of the government, the Court stated that it was inclined to order the government to disclose the identity of the confidential informant to Mr. Baca and his counsel. [Trans. 11/29/16 Hrg. at 178.] The Court did not make a final ruling, however, because it wanted to address an issue the government raised regarding the timing of the disclosure in light of the government's representation that it intends to call the confidential informant as a witness at trial. [*Id*. at 92.]

The government argued at the hearing that the *Roviaro*[1] analysis applies only to non-testifying informants and disclosure of testifying informants is controlled solely by the rules governing disclosure of witnesses generally; thus, it was not required to disclose the informant's identity until the deadline for disclosing *Jencks* material pursuant to 18 U.S.C. § 3500.[2] Mr. Baca respectfully submits this supplemental brief in response to this argument.

---

[1] *Roviaro v. United States*, 353 U.S. 53 (1957).

[2] In making this argument, the government incorporated by reference a pleading it filed in *United States v. Baca*, 16cr1613. [*United States v. Baca*, 15-cr-1613 JB, Dkt. 255.]

Although the government referred to the Jencks Act in arguing *Roviaro* is not applicable to testifying informants, Jencks is inapplicable because, at least at this point, Mr. Baca is not seeking disclosure of additional statements the confidential informant may have made. He is only seeking disclosure of the informant's identity, information that the government previously shared with co-defendant Rudy Perez.

## DISCUSSION

The defendants' joint motion for disclosure of the confidential informant's identity sets forth the standard this Court must apply in deciding whether to order disclosure of an informant's identity prior to trial. [Dkt. 698 at 6-7.] Mr. Baca respectfully incorporates that discussion here. As the Court previously indicated it was inclined to order disclosure of the informant's identity to Mr. Baca and his counsel, Mr. Baca does not argue that point in this pleading.[3] Rather, this supplemental brief focuses on the timing of that disclosure.

The disclosure of a confidential informant's identity involves "balancing the public interest in protecting the flow of information [to law enforcement] against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro v. United States*, 353 U.S. 53, 62 (1957). Once the Court determines that disclosure of the identity of a confidential informant is appropriate, the defense must have the opportunity to interview the witness in order to determine whether to call him at trial, irrespective of whether the United States plans to do so. *Roviaro* provides that the "desirability of calling [the informant] as a witness, *or at least interviewing the informant in advance of trial*, is a matter for the accused, rather than the government, to decide." *Id.* at 64 (emphasis added).

In deciding whether and when to compel disclosure of a confidential informant's identity, the Court must balance the interests and rights of both the defense and the United States and

---

[3] At the hearing, the Court invited the government to submit a supplemental brief identifying evidence that undermined Mr. Baca's showing that he is entitled to disclosure of the confidential informant's identity. [Trans. 11/29/16 Hrg. at 133.] The government has not submitted additional evidence to date, and Mr. Baca reserves his right to respond should it do so in the future.

make timing decisions accordingly. *United States v. Phillips*, 854 F.2d 273, 277 (7th Cir. 1988) ("When a criminal defendant seeks access to confidential informant files, we rely particularly heavily on the sound discretion of the trial judge to protect the rights of the accused as well as the government."). The government argues, however, that the *Roviaro* balancing test applies only when the government does not call the informant as a witness at trial. [Trans. 11/29/16 Hrg. at 93-94.] *See also United States v. Baca*, 16cr1613, Dkt. 255 at 5-6. The government asserts that when it states an intent to call the informant as a witness, the rules governing the disclosure of witnesses generally, rather than *Roviaro*, govern disclosure of the informant's identity. [*Id*.] Thus, even if this Court determines that Mr. Baca is entitled to disclosure of the informant's identity under the *Roviaro* analysis, the government's position is that the Court cannot order disclosure of his identity prior to trial so long as the government states an intention to call the informant as a witness. The government is wrong.

Neither the Supreme Court nor the Tenth Circuit has ever held that the *Roviaro* analysis applies only to non-testifying informants. Indeed, the better reasoned decisions from other circuits have held that *Roviaro* trumps the witness disclosure rules. Mr. Baca is not asking the Court to order the government to disclose the witnesses it intends to call at trial, but rather to identify a particular person with knowledge that may assist in his defense. As this Court has tentatively found, he is entitled to that information because it is relevant and helpful to his defense. *See also Roviaro*, 353 U.S. at 60-61 ("Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.").

The general rule that a criminal defendant has no constitutional right to the production of the names of potential government witnesses "is clearly not applicable to informants." *United*

*States v. Norton*, 504 F.2d 342, 343 n. 1 (8th Cir. 1974) (citing *Roviaro*); *see also United States v. Barnes*, 486 F.2d 776, 778 (8th Cir. 1973). "The exception posited by the government has no basis in *Roviaro*, which drew no distinction between testifying and non-testifying informants." *Norton*, 504 F.2d at 343 n. 1; *but see United States v. Glover*, 583 F.Supp.2d 5, 12 (D. D.C. 2008) (court inclined to agree with government that *Roviaro* applies only to non-testifying experts), citing *United States v. Casseus*, 282 F.3d 253, 257 (3d Cir. 2002). In the present case, because the confidential informant appears to have information that is exculpatory as to Mr. Baca, it is critical that his counsel have an opportunity to interview the informant in advance of trial to determine whether to call him as a witness—regardless of whether the government intends to call him as well. *See generally United States v. Saa*, 859 F.2d 1067, 1074 (2d Cir. 1988) ("From this language [in *Roviaro*], as well as from the practical reality that a witness with a special relationship with the Government is not truly 'available' to the defense merely because he is physically available to be called, stems the right under *Roviaro* to information about an informant not merely so that the defense can call the informant to testify, but so that it can seek to interview him first.") (internal citation omitted); *see also United States v. Ferguson*, 498 F.2d 1001, 1011-12 (D.C. Cir. 1974) (Bazelon, C.J. dissenting) ("*Roviaro*, itself, however, specifically identifies still a third reason for pretrial disclosure that the majority ignores: The desirability of calling (the informant) as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide. The Supreme Court's use of the disjunctive 'or' indicates that the defendant has the right to interview an informant irrespective of whether he intends to call him as a witness. Indeed, as this court recognized in *United States v. DeCoster*, 487 F.2d 1197 (C.A.D.C. 1973), unless counsel interviews a witness he obviously is unable to make an informed decision as to whether to call him to testify.")

(internal citation omitted).  Under the *Roviaro* balancing test, Mr. Baca is entitled to disclosure of the confidential informant's identity now so that he may locate and attempt to interview the informant.  Delaying disclosure of the informant's identity until trial would deny Mr. Baca his right to prepare a defense.

Many of the cases the prosecution cites in support of its argument that *Roviaro* does not apply to an informant the government may call as a witness found only that the lack of timely disclosure of the informant's identity was not error under the particular circumstances of those cases, including the fact the informant was called to testify at trial. [*United States v. Baca*, 16cr1613, Dkt. 255 at 5-6.]  See, e.g., *United States v. Tejeda*, 974 F.2d 210, 217 (1st Cir. 1992) (no error where defense failed to show that his need for identity of informant overcame the public interest in encouraging the flow of information to law enforcement and the informant's private interest in his own safety; ultimately witness's identity was disclosed prior to trial, the government called him as a witness, and the defense failed to ask for further relief following disclosure); *Casseus*, 282 F.3d at 257 (defendants allowed to interview eyewitnesses before trial and eyewitnesses testified).  Cases holding after the fact that the informant's production and availability for cross-examination at trial cured any prejudice from the failure to disclose the informant's identity before trial "do not stand for the proposition that the government may withhold names of participating informants so long as it intends to call them at trial." *Norton*, 504 F.2d at 343 n. 1.

> Nor do they stand as an invitation to trial courts to routinely deny defendants access to the names and addresses of informants prior to trial on the theory that the error may be cured by making the informant available at trial. A finding of no prejudice in a particular case ought never be construed as an invitation to deliberate error in the future.

*Id.*

As noted above, neither the Supreme Court nor the Tenth Circuit has decided the issues before this Court.[4] At the November 29, 2016, hearing and in its briefing in Case No. 16cr1613, however, the government asserted that, in *United States v. Lujan*, 530 F. Supp. 2d 1224 (D. N.M. 2008), Judge Brack "agreed that there is differentiation between testifying witnesses and confidential informants who will not testify. And that *Roviaro* and that calculus applies only when it's a CHS that will not testify at trial." [Trans. 11/29/16 Hrg. at 94; *see also United States v. Baca*, 16cr1613, Dkt. 255 at 5.] This is not a fair characterization of Judge Brack's ruling. In that case, the defense filed a motion for disclosure of information "concerning the Government's witnesses, informants, confidential sources, etc." *Lujan*, 530 F. Supp. 2d at 1260. The request included both testifying and non-testifying informants. *Id*. In response to the motion, the government asserted that there was "no one involved in [the] case who provided information on a confidential basis who would be considered an informant or source." *Id*. The government further asserted that it had previously disclosed the identity of two informants who it intended to call as witnesses at trial. *Id*. It then claimed privilege as to any non-testifying confidential informants. *Id*. Thus, the only issues before Judge Brack were (1) whether the defense was entitled to disclosure of the government's witness list prior to trial, and (2) whether the

---

[4] In *United States v. Pennick*, 500 F.2d 184 (1974), the Tenth Circuit held that a trial court did not err in denying a defendant's motion for early disclosure of the government's witnesses, including its informant witness. In reaching this holding, the court first found that the defendant had no statutory right to a list of the government's witnesses generally, or informants specifically. *Id*. at 186. Secondly, the court found that the trial court had correctly applied the *Roviaro* analysis in deciding not to order disclosure of the informant's identity before trial. *Id*. at 187 ("In the instant case the trial court applied the 'balancing test' referred to in *Roviaro* and took into consideration the various factors mentioned in that case, and then in the exercise of its discretion refused to require the Government to reveal the identity of its informer who all knew was to testify upon trial."). In contrast to Mr. Baca's case, the trial court and the Tenth Circuit in *Pennick* found that the informant's testimony was not helpful to the defendant. *Id*. Thus, the court did not decide the timing issue before this Court.

government was required to disclose to the defense any non-testifying confidential informants. *Id*. at 1261-62.

With respect to the first issue, the prosecution did not raise, and Judge Brack did not consider, the issue before this Court: whether a defendant who has met his burden under *Roviaro* is entitled to the pretrial disclosure of the identity of a confidential informant who the government may call as a witness at trial. Rather, the issue was simply whether the defendants were entitled to disclosure of a list of the government's trial witnesses and, if so, when must the government disclose that list. *Id*. at 1261. With respect to the issue of non-testifying informants, Judge Brack found the defendants' request moot based on the government's representation that it had previously disclosed the only two people it would consider to be cooperating individuals. *Id*. at 1263. Judge Brack also found that the defendants had not "demonstrated the need for any informant's testimony with any particularity." *Id*. In this case, by contrast, the Court has preliminarily found that Mr. Baca has demonstrated his need for the identity of the confidential informant who gave the statements summarized in Dkt. 698-1.

Mr. Baca seeks to discover the name of a confidential informant who potentially has information that may exculpate him. He seeks to discover this information regardless of whether the government may call the informant as a witness. In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. In addition to its duty to disclose favorable evidence that could be used at trial, the prosecution also has a duty to disclose any favorable evidence that could be used "in obtaining further evidence." *Giles v. Maryland*, 386 U.S. 66, 74 (1967). The Tenth Circuit "strongly disapprove[s] of delayed disclosure of *Brady* materials."

*United States v. Warhrop*, 732 F.2d 775, 777 (10th Cir. 1984).  Due process requires that disclosure of potentially exculpatory information be made in time for a defendant to make use of any benefits of the evidence.  *Id*.  The same should be required for disclosure of a confidential informant's identity where, as here, a court has found such disclosure necessary for a defendant to adequately prepare his defense.

In deciding when to order the government to disclose the identity of the informant to Mr. Baca and his counsel, this Court should consider the same *Roviaro* factors that led it to preliminarily conclude Mr. Baca is entitled to the disclosure.  This informant has potentially exculpatory information as to Mr. Baca and he and his counsel need time to locate the informant, attempt to interview him and conduct related investigation.  As this Court is aware, when the defense puts on exculpatory evidence the jury does not automatically accept it as truth. The defense needs to investigate and corroborate the evidence so the jury can determine whether it is reliable. That investigation is often time consuming and, at this point, trial is only six months away.

Any concerns the government or the informant may have regarding the informant's safety would be answered by ordering disclosure pursuant to a protective order similar to the one entered with respect to Rudy Perez.  [Dkt. 748.]  As discussed at the November 29, 2016, hearing, Mr. Baca has no objection to the entry of a similar protective order, although he requests that it be modified to allow his counsel to communicate with counsel for Rudy Perez regarding the informant.  [Trans. 11/291/6 Hrg. at 180-181.]  The government indicated at the hearing that it does not oppose this request.

**CONCLUSION**

For the foregoing reasons and those stated in the Joint Motion for Disclosure and Production of Confidential Informant (Dkt. No. 698), Joint Reply to Government's Response to Joint Motion for Disclosure and Production of Confidential Informant (Doc. 762), and at the November 29, 2016, hearing, Defendant Anthony Ray Baca respectfully asks the Court to order the government to immediately disclose to him the identity of the informant whose statements are memorialized in the FBI Confidential Human Source Reporting (February 11, 2016), Bates No. *U.S. v. DeLeon, et. al.* 3308-3309.

> Respectfully submitted,
>
> /s/ Theresa M. Duncan
> Theresa M. Duncan
> Theresa M. Duncan, Esq.
> 515 Granite NW
> Albuquerque, NM 87102
> 505-842-5196
> teri@duncanearnest.com
>
> ROTHSTEIN, DONATELLI, HUGHES,
>   DAHLSTROM, SCHOENBURG & BIENVENU, LLP
>
> /s/ Marc M. Lowry
> MARC M. LOWRY
> 500 Fourth Street NW, Suite 400
> Albuquerque, NM  87102
> (505) 243-1443
> mlowry@rothsteinlaw.com
>
> *Attorneys for Anthony Ray Baca*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of January 2017, I filed the foregoing pleading electronically through the CM/ECF system, which caused counsel for Plaintiff and Defendants to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

<u>/s/ Theresa M. Duncan</u>
Theresa M. Duncan