IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Criminal Action No. 15-CR-4268-JB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

**EDWARD TROUP**,
**JAVIER ALONSO,**
**DANIEL SANCHEZ,**
**ANTHONY RAY BACA**,
**CHRISTOPHER GARCIA**,
**CARLOS HERRERA**,
**RUDY PEREZ**,
**ANDREW GALLEGOS**, and
**SANTOS GONZALEZ**,
          Defendants.

---

### OPPOSED MOTION TO COMPEL DISCLOSURE OF BENJAMIN CLARK'S PLEA AGREEMENT AND RELATED DOCUMENTS

---

COME NOW, Defendants Edward Troup, Javier Alonso, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, and Santos Gonzalez by and through counsel, and move this Honorable Court to order the government to disclose Defendant Benjamin Clark's Plea Agreement and related documents.  As grounds, the defendants state:

Counsel have learned that the defendant Benjamin ("Cyclone") Clark has entered into a plea agreement with the government.  The plea agreement, and other related documents, have not been made available to the defendants.

1

There is no legitimate reason to withhold the plea agreement from the remaining defendants or to seal it with the Court, and it should be made available to the public and the defendants immediately.

## BACKGROUND

Benjamin Clark was charged in Count 3 of the original and superseding Indictments with having been involved in the killing of F.S. at the Southern New Mexico Correctional Facility (SNMCF) near Las Cruces on or about June 17, 2007.  The government has alleged that, in 2007, Benjamin Clark had a leadership role in the *Syndicato de Nuevo* Mexico (SNM).

On June 14, 2007, F.S. arrived at the SNMCF.  F.S. was placed in Cell #113 on the 1st floor of the Blue pod of Unit 1A at the SNMCF.  He was a known Informant.  In June 2007, the Blue pod of Unit 1A at the SNMCF was considered an SNM pod.  NMCD officials had decided to house inmates suspected of being SNM members together in the same pod.  On June 16, 2007, there were approximately 11 inmates housed on the first floor of the Blue pod, all of whom were suspected of being SNM members.

Because F.S. was a SNM gang member, but also a known informant, he should not have been housed in a pod with other SNM members.  This was understood by NMCD officials.[1]

---

[1] There is a handwritten notation by SNMCF staff on a Unit Passdown log dated 06/16/07 that "Swing-shift advises to keep an eye on B 113 Sanchez, just came out of orientation and may have trouble in the pod."  (*U.S. v. Deleon* disc p. 1432.)

Prior to the F.S. homicide, on June 14, 2007 (the same day F.S. arrived at SNMCF), officials of the New Mexico Corrections Department (NMCD) transferred Clark out of the Blue pod and moved him to segregation at the SNMCF (*U.S. v. Deleon, et. al.* disc p. 1577, Clark FD-302).  NMCD officials claim to have intercepted a written communication from Benjamin Clark to Arturo Arnulfo Garcia which stated, *inter alia*: "Send me message by the code if you want someone gone."[2]  This letter was intercepted by STIU on June 14, 2007.  After F.S. was killed, NMCD officials began administrative proceedings against Benjamin ("Cyclone") Clark, and other people.

According to information provided in discovery, Mr. Clark began making statements to the government about his involvement in SNM activities some time ago. The NMCD, understanding that Mr. Clark is a known informant, has isolated him from other alleged SNM members by housing him initially at the Northwestern New Mexico Correctional Facility (NWNMCF) in Grants, New Mexico in January, 2016 and now at the Penitentiary of New Mexico (PNM) in Santa Fe, New Mexico in Level VI. [3]

When the Court conducts motions hearings, such as the hearings held on June 2, 2016, October 4, 2016, and November 29, 2016, known informants have been isolated from other defendants by placing them in the jury box, perhaps to facilitate security precautions.  For example, Clark was present in Court in the jury box on June 2 and October 4.  Mr. Clark was not present at the hearing on November 29, 2016.  This Court

---

[2] This written communication was provided at *U.S. vs. Deleon* disc. p. 1539-1540.

[3] Oddly, the NMCD took this precaution with regard to Mr. Clark, but they did not do so with regard to F.S.

has made it clear that any defendant who has not entered a guilty plea must attend all such hearings.  Because Mr. Clark did not attend the November 29 hearing, the logical conclusion is that he had entered a guilty plea.

The government has heretofore reached plea agreements with some, but not all, of its informants.  For example, the government has reached plea agreements with Gerald ("Styx") Archuleta,[4] Frederico ("Playboy") Munoz,[5] Jerry ("Creeper") Armenta,[6] Roy Paul ("Shadow") Martinez,[7] Robert ("Baby Rob") Martinez,[8] and now, it appears, Benjamin ("Cyclone") Clark.  The plea agreements of these other defendants are on file with the Court and are publicly available.  The defendants are not privy to how or when the government finally decides to culminate plea agreement with their informants.  But it is generally known who the informants are and it's just a matter of time before agreements are reached with most, or all, of them.

During the *habeas* proceedings arising out of the F.S. homicide, Clark consistently denied being involved in the killing of F.S.  Clark also made a statement to government

---

[4] This recognized leader of the SNM agreed to a 3 year sentence on June 16, 2016. (Doc. 586)

[5] This recognized leader of the SNM entered into his Plea Agreement on September 22, 2016, Case No. 16-cr-1613 (Doc. 229).

[6] Jerry Armenta entered his Plea Agreement on December 13, 2016.  (Doc. 802)

[7] This recognized leader of the SNM entered into his Plea Agreement on September 15, 2016.  (Doc. 686)

[8] This recognized leader of the SNM entered into his Plea Agreement on September 22, 2016. (Doc. 716)

4

agents on December 3, 2015.  During that statement, Clark again denied any culpability for the killing of F.S.  (*US v. Deleon* disc. pps. 1574-1578, Clark FD-302)

To enter his plea agreement, Clark had to agree to facts written up by government prosecutors.  Those facts, as written up by the government prosecutors, will almost certainly be different than Clark's previous statements denying involvement in the killing of F.S.  Otherwise, Clark would not have received a plea bargain.

The other defendants are entitled to know what version of events Mr. Clark has agreed to in order to get his plea bargain.  And the defendants are entitled to know what promises and inducements were made to Mr. Clark to persuade him to change his story.  Additionally, the defendants need to be able to investigate any change in Mr. Clark's story.  As discussed, *infra*, it is one thing for the government to wait until shortly before trial to disclose a plea agreement that may be used only for bias impeachment of a cooperating defendant.  It is quite another for the government to wait to reveal a change in factual assertions by a cooperating defendant, which requires thorough investigation by the defense.

## ARGUMENT

### I.  Mr. Troup and the defendants have a Fifth Amendment due process right under *Brady* and its progeny to information favorable to their defense.

Evidence in the government's possession that is material to either the guilt or punishment of the defendant must be disclosed to the defense in a timely manner or it is a denial of the defendant's constitutional right to due process.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also United States v. Gomez*, 191 F.3d 1214 (10th Cir. 1999). *Brady* material includes impeachment material.  *United States v. Bagley*, 473 U.S. 667,

676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972) (failure to disclose plea

agreement violated *Brady*).  Likewise, evidence that will "play an important role in

uncovering admissible evidence, assisting witness preparation, corroborating defense

testimony, or aiding impeachment" is considered material and must also be provided.

*United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (citations omitted).

It is crucial that any disclosures be made at a time early enough to allow the

defense to investigate, follow up, and make use of the information in a meaningful

manner.  As the Second Circuit has observed:

> The limited *Brady* material disclosed . . . could have led to specific
> exculpatory information only if the defense undertook further investigation.
> When such a disclosure is first made on the eve of trial, or when trial is
> under way, the opportunity to use it may be impaired.  The defense may be
> unable to divert resources from other initiatives and obligations that are or
> may seem more pressing.  And the defense may be unable to assimilate
> the information into its case.

*Leka v. Portuondo*, 257 F.3d 89, 101 (2d Cir. 2001), *cited with approval in United States*

*v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009) ("As the Second Circuit noted in *Leka v.*

*Portuondo* . . . the belated disclosure of *Brady* material 'tend[s] to throw existing

strategies and [trial] preparation into disarray.'  It becomes 'difficult [to] assimilate new

information, however favorable, when a trial already has been prepared on the basis of

the best opportunities and choices then available.'" (alterations in original)).

In *Bagley*, both the Supreme Court and the government recognized the need of

the defense to conduct adequate investigation and formulate strategy based on the

*complete* disclosure of favorable material:

> The Government notes that an incomplete response to a specific request
> not only deprives the defense of certain evidence, but also has the effect of

representing to the defense that the evidence does not exist.  In reliance on
this misleading representation, the defense might abandon lines of
independent investigation, defenses, or trial strategies that it otherwise
would have pursued.

We agree that the prosecutor's failure to respond fully to a Brady request
may impair the adversary process in this manner.  And the more
specifically the defense requests certain evidence, thus putting the
prosecutor on notice of its value, the more reasonable it is for the defense
to assume from the nondisclosure that the evidence does not exist, and to
make pretrial and trial decisions on the basis of this assumption.

473 U.S. at 682-83.

In *United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998), the

Tenth Circuit held that information subject to disclosure under *Giglio* must be disclosed in

a timely manner just as any other Brady information:

Impeachment, as well as exculpatory evidence falls within the rule,
articulated in *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10
L.Ed.2d 215 (1963), that suppression of material information favorable to
the accused violates due process.

. . .

The documents relating to Mr. Bonillo-Esqueda's involvement in an earlier
drug transaction constituted impeachment evidence that the prosecution
should have disclosed in a timely manner.  Mr. Bonillo-Esqueda was an
alleged co-conspirator.  He was thus a material witness whose credibility,
or lack thereof, played a critical role in the determination of Mr. Gonzalez-
Montoya's guilt or innocence.  *See Giglio*, 405 U.S. at 154, 92 S.Ct. 763[.]

161 F.3d at 649 (internal record citation omitted); *see also Smith v. Sec'y of New Mexico*

*Dept. of Corr.*, 50 F.3d 801, 825 (10th Cir. 1995) ("In this regard, it is worth noting that

because impeachment is integral to a defendant's constitutional right to cross-

examination, there exists no pat distinction between impeachment and exculpatory

evidence under *Brady*.  This is especially true [w]here a witness' credibility is material to

the question of guilt." (internal quotes, internal citations omitted)); *see also id.* at 826

(holding that "[i]mpeachment evidence merits the same constitutional treatment as exculpatory evidence" (quoting *United States v. Abello-Silva*, 948 F.2d 1168, 1179 (10th Cir.1991)).  Indeed, trial counsel can be deemed constitutionally ineffective for failing to investigate the court file of an informant.  *See Hash v. Johnson*, 845 F. Supp. 2d 711, 739-40 (W.D. Va. 2012) (vacating state death sentence due, in part, to counsel's failure to investigate federal court file of informant).

The government is in possession of information favorable to Mr. Troup and the defendants.  It appears that Mr. Clark has reached a plea agreement with the government and that such plea agreement requires him to cooperate against Mr. Troup and the remaining defendants.  Furthermore, it seems that, contrary to Mr. Clark's prior declarations, he now claims to have been involved in the murder of F.S.  It appears that Mr. Clark is also offering newly inculpatory information about Mr. Troup and the other defendants—but Mr. Troup and the other defendants' counsel have no idea what this information is.

This is not a scenario where providing the plea agreement in time to make use of it during cross-examination will suffice.  *Cf. Burke*, 571 F.3d at 1056-57.  Here, the exculpatory or impeaching aspect of the plea agreement lies not merely in the benefits being provided to Mr. Clark but in the changes in facts from Mr. Clark's repeated protestations of innocence to whatever he has now said to receive his deal.  If Mr. Clark is now claiming more knowledge of F.S.'s death than he did previously, defense counsel need time to investigate.  This is especially so if he is now offering information inculpating Mr. Troup and other defendants.  Any such investigation will surely entail

8

tracking down and talking to witnesses, many of whom may be at first reluctant to speak.

Thus, as the Tenth Circuit has recognized, *Brady* requires the timely disclosure of Mr.

Clark's plea agreement and any related documents:

> It is not hard to imagine the many circumstances in which the belated revelation of *Brady* material might meaningfully alter a defendant's choices before and during trial: how to apportion time and resources to various theories when investigating the case, whether the defendant should testify, whether to focus the jury's attention on this or that defense, and so on.  To force the defendant to bear these costs without recourse would offend the notion of fair trial that underlies the *Brady* principle.

*Burke*, 571 F.3d at 1054; *see also id.* (citing *United States v. Devin,* 918 F.2d 280, 290

(1st Cir.1990), for the proposition that a *Brady* violation would occur if delayed disclosure

altered defense strategy and timely disclosure would likely have resulted in a more

effective strategy).

## II.  Mr. Troup and the defendants, as well as the public have a First Amendment right to access any plea agreement entered by Mr. Clark.

This Court has previously recognized that there is a press and public interest in

this case and First Amendment rights to access documents in the case.  (Tr. 6/2/16, p.

64, lines 18-21 ("[W]e have press here today, and so there is First Amendment rights to

pretrial proceedings.  And so I don't want to limit their ability to get to documents and

look at them if they want to.").)  Accordingly, if any plea agreement and related

documents for Mr. Clark have been filed with the Court, the Court should order them

unsealed and grant public access to them.

The Supreme Court has not decided whether there is a First Amendment right to

public access to court documents, and neither has the Tenth Circuit.  *United States v.*

*Pickard*, 733 F.3d 1297, 1302 n.4 (10th Cir. 2013); *United States v. Gonzales*, 150 F.3d

1246, 1256 (10th Cir. 1998); *United States v. McVeigh*, 119 F.3d 806, 812 (10th Cir.
1997) (assuming without deciding that First-Amendment test of *Press–Enterprise Co. v.
Superior Court*, 478 U.S. 1 (1986) (*Press–Enterprise II*), and *Press–Enterprise Co. v.
Superior Court*, 464 U.S. 501 (1984) (*Press–Enterprise I*), applied). *But cf. Lanphere &
Urbaniak v. State of Colo.*, 21 F.3d 1508, 1512 (10th Cir. 1994) (holding that First
Amendment did not grant a right of access for a law firm's commercially motivated
request for names and telephone numbers of persons charged with traffic offenses).

As *McVeigh* recognized, "A number of circuits have concluded, however, that the
logic of *Press–Enterprise II* extends to at least some categories of court documents and
records, such that the First Amendment balancing test there articulated should be
applied before such qualifying documents and records can be sealed." 119 F.3d at 811.
The *McVeigh* court specifically cited the D.C. Circuit's holding that that there is a right of
public access to plea agreements. *Id.* (citing *Washington Post v. Robinson*, 935 F.2d
282, 287 (D.C. Cir.1991)). Other circuits have held likewise. *See*, *e.g.*, *United States v.
DeJournett*, 817 F.3d 479, 485 (6th Cir. 2016); *Oregonian Pub. Co. v. U.S. Dist. Court for
Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990); *United States v. Haller*, 837 F.2d
84, 86 (2d Cir. 1988); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir.1986) (right
of access under first amendment; district court required to comply with procedural and
substantive requirements for denying right of access to plea and sentencing hearings
and documents filed in connection with those hearings).

The *McVeigh* court enunciated the test for First-Amendment access:

In determining whether a particular type of document is included within the
First Amendment right of access, courts engage in a two-pronged inquiry in

which they ask: (1) whether the document is one which has historically been open to inspection by the press and the public; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise II*, 478 U.S. at 8, 106 S.Ct. at 2740.  This two-part inquiry is referred to as the test of "experience and logic." *Press–Enterprise II*, 478 U.S. at 9, 106 S.Ct. at 2740.  If the qualified First Amendment right of access is found to apply to the documents under the "experience and logic" test, the district court may then seal the documents only if "closure is essential to preserve higher values and is necessary to serve that interest." *Press-Enterprise I*, 464 U.S. at 510, 104 S.Ct. at 824.

119 F.3d at 812-13.

Courts applying this test have consistently held that plea agreements are exactly the kind of document for which the First Amendment guarantees access.  In *DeJournett*, the Sixth Circuit held that "plea agreements are the quintessential judicial record, entitled to the protection of the First Amendment right to public access of judicial record."  817 F.3d at 485.  The D.C. Circuit likewise held "that plea agreements have traditionally been open to the public, and public access to them enhances both the basic fairness of the criminal [proceeding] and the appearance of fairness so essential to public confidence in the system." *Robinson*, 935 F.2d at 288 (quotation marks omitted, alteration in original); *see also Oregonian*, 920 F.2d at 1466 (holding "that the press and public have a qualified right of access to plea agreements and related documents under the [F]irst [A]mendment").

The undersigned urges this Court to follow these other courts and hold that the First Amendment guarantees a right of access to Mr. Clark's plea agreement and related documents.  If such documents have been filed with the Court—or when they are filed— the Court should order them unsealed and grant public access.

### III. Even if there is no right to the plea documents under the First Amendment, the common law guarantees access to it.

The Tenth Circuit has recognized a common-law right of access to pretrial judicial records: "Courts have long recognized a common-law right of access to judicial records. Although this right is not absolute, there is a strong presumption in favor of public access[.]" *Pickard*, 733 F.3d at 1302. To justify sealing Clark's plea agreement and related documents, the *government* must demonstrate a "sufficiently significant interest that will justify continuing to override the presumption of public access" to these records. *Id.* at 1303. There is no burden on Mr. Troup and the other defendants to show why the plea agreement should be unsealed. *Id.* (reversing order denying criminal defendants' motion to unseal confidential informant files where district court wrongly put the burden on defendants to justify unsealing and remaking for further determination); *see also United States v. Apperson*, 642 Fed. App'x. 892, 901-02 (10th Cir. 2016) (reversing and remanding district court order on remand from *Pickard* and discussing the "fact-specific" analysis that must be undertaken).

Here, the government cannot justify keeping Mr. Clark's plea agreement secret. First, Mr. Clark's identity is well known. Second, the fact that he has entered a plea agreement and is assisting the government is understood. As the Tenth Circuit recognized in *Pickard*, "[t]he fact that some of the sealed information has already been made public suggests that much of the information in the DEA records could be unsealed." 733 F.3d at 1305. Third, Mr. Clark's security is being attended to by the government. At this juncture, the only purpose being served by sealing Clark's plea agreement is depriving Mr. Troup, the other defendants, and the public of information.

12

Counsel understand that the NMCD has a duty to protect Mr. Clark.  However, disclosing or unsealing his plea agreement will not create any increased danger for Mr. Clark.  It has been known for some time that Mr. Clark was an informant—and the government has made that readily apparent by segregating him both during his daily life and when he came to court.

The NMCD knows how to protect informants when it chooses to do so.  Similarly, the United States Bureau of Prisons (BOP) knows how to protect federal prisoners, who are informants, when it chooses to do so.  For example, the BOP maintains separate facilities for informants so they are not housed in general population with other inmates who might try to harm them.

Furthermore, the government has previously provided many reports by inmates that inculpate other defendants.  The discovery is replete with disclosures by inmates who are in prison.  Additionally, it is important to note that there is a protective order in place.  The government can certainly ask that any plea-related documents for Mr. Clark be subject to that order.  What the government may not do is unilaterally decide to keep documents secret from selected defendants and the public.

**IV.  If the government has filed the plea agreement and related documents under seal, doing so suggests that the government continues to violate this Court's rules.**

The government's habit of unilaterally keeping documents secret has been the subject of previous motions in this case.  (*See* Defendants' Motion for Order Directing the United States to Comply with Court Rules and for Fundamental Due Process (Doc. 342), filed on March 28, 2016.)  At a hearing on June 2, 2016, the Court addressed the

government's persistent filing of documents under seal.  The Court agreed with the

defendants that there had been many documents filed under seal and not accessible to

the public in this case and that there was no valid reason for many of these documents

not to be public.  (Tr. 6/2/16, p. 64, lines 7-12.)  The Court ordered that all parties follow

the district's rules regarding filing documents.  (Tr. 6/2/16, p. 67, lines 3-11.)  The Court

was clear that it did not want an abuse of the practice of filing documents under seal:  "I

just ask everybody to -- including the Government -- to think hard whether this needs to

be sealed or not, and do it only if it's absolutely necessary."  (Tr. 6/2/16, p. 65, lines 6-9.)

It seems that the Local Rules may not have been followed in the sealing of Mr.

Clark's plea documents.  *See* D.N.M.LR-Cr 49.4.  That is not definitively known,

however, because apparently even the fact of the plea agreement has not been entered

into the Court's docket.

## Conclusion

The government is in possession of information that is beneficial to Mr. Troup and

the other defendants' defenses and is necessary for the adequate preparation of those

defenses.  But the government has not disclosed that information.  Since disclosure of

Mr. Clark's plea agreement and related documents would not expose him to any

additional danger, it appears that the government has chosen to hide the plea

documents, not out of concern for Mr. Clark, but in pursuit of an ongoing litigation

strategy of delaying disclosure of the statements of possible witnesses.  This

government strategy has plagued this litigation from the outset.  Robust, honest and

timely disclosures would have promoted efficiency in this litigation, at no increased risk or downside to the government.

## Consultation with Parties

The undersigned conferred with all other parties in this case via electronic mail prior to the filing of this motion.  As noted in the caption, Messrs. Javier Alonso, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos and Santos Gonzalez all join Edward Troup in this motion.

The undersigned have conferred with the prosecutors and counsel for Benjamin Clark.  They oppose this motion.

Counsel for Roy Paul Martinez takes no position on this motion.  Counsel for Eugene Martinez, due to the ongoing competency issue, do not take a position on this motion.

As of the filing of this motion the following parties:  Angel Deleon, Joe Gallegos, Leonard Lujan, Billy Garcia, Allen Patterson, Christopher Chavez, Arturo Arnulfo Garcia, Ruben Hernandez, Jerry Armenta, Jerry Montoya, Mario Rodriguez, Timothy Martinez, Mauricio Varela, Gerald Archuleta, Conrad Villegas, Robert Martinez, Paul Rivera and Shauna Gutierrez did not state a position regarding the motion.

WHEREFORE, Defendants Edward Troup, Javier Alonso, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, and Santos Gonzalez move this Honorable Court to order the immediate production of Benjamin Clark's plea agreement, as well as all statements made by Mr. Clark in

conjunction with the plea agreement, and all promises and inducements made by the government to Mr. Clark.

Respectfully submitted this 11th day of January, 2017.

*s/ Patrick J. Burke*
Patrick J. Burke
Patrick J. Burke, P.C.
303 16th Street, Suite 200
Denver, Colorado 80202
(303) 825-3050
(303) 825-2992 fax
Patrick-j-burke@msn.com
&
*s/ Cori Harbour-Valdez*
Cori Harbour-Valdez
The Harbour Law Firm, P.C.
P.O. Box 13268
El Paso, Texas 79913
(915) 544-7600
(915) 975-8036 fax
charbour@harbourlaw.net
*Attorneys for Edward Troup*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2017, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Jennifer J. Feldman*
Jennifer J. Feldman
Patrick J. Burke, P.C.
303 16th Street, Suite 200
Denver, Colorado 80202
(303) 825-3050
(303) 825-2992 fax
