IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CRIMINAL NO.   15-4268 JB |
| vs. | ) |
| | ) |
| **JERRY MONTOYA, a.k.a. "Boxer,"** | ) |
| **TIMOTHY MARTINEZ, a.k.a. "Red,"** | ) |
| **ANTHONY RAY BACA, a.k.a. "Pup,"** | ) |
| **MAURICIO VARELA, a.k.a. "Archie,"** | ) |
| **a.k.a. "Hog Nuts," DANIEL SANCHEZ,** | ) |
| **a.k.a. "Dan Dan," CARLOS HERRERA,** | ) |
| **a.k.a. "Lazy," and RUDY PEREZ, a.k.a.** | ) |
| **"Ru Dog,"** | ) |
| | ) |
| Defendants. | ) |

## UNITED STATES' RESPONSE IN OPPOSITION TO THE JOINT MOTION TO SEVER DEFENDANTS CHARGED WITH OFFENSES IN COUNTS 6 AND 7 [807]

Defendants' contention in the Joint Motion to Sever Defendants Charged in Counts 6 and

7 of the Superseding Indictment [807] ("Motion to Sever") that Counts 6 and 7 are improperly

joined under Rule 8(a) is mistaken, because "Rule 8(a) . . . does not apply in cases where more

than one defendant is joined in the same indictment." *United States v. Eagleton*, 417 F.2d 11, 14

(10th Cir. 1969). Defendants' second contention that they are improperly joined under Rule 8(b)

also fails to find support in the law or the facts, because courts construe Rule 8(b) generally to

allow for joint trials where the charges overlap factually, and because the different defendants in

the different counts are all based on SNM's criminal activities is particularly logical here, given

that the SNM operates as a gang within the New Mexico prison system where the incarcerated

leaders cannot move freely and thus use separate SNM members or associates to carry on the SNM

enterprise's business -- murders, assaults and assaults with deadly weapons. Finally, given the

reality that SNM's operations necessarily require that different leaders and members located within and without the different prisons still carry on the SNM's criminal enterprise, and because the nature of the charges require that the United States prove as an element that the SNM is a racketeering enterprise, neither Rule 14 nor the United States Constitution require or support severance of Counts 6 and 7.

Counts 6 and 7 relate to an SNM-sanctioned murder and conspiracy to murder a purported cooperator at the SNMCF. The SNM's criminal operations as a prison gang operating throughout New Mexico require that the SNM necessarily have different leaders at the different prisons who sanction hits on certain individuals to be taken out by members and associates in the same location as the victim and the leader(s) who ordered the hits. Thus, Counts 6 and 7, and the Defendants (other than Baca), as SNM members who carried out the SNM enterprise's criminal activities by murdering J.M., properly are joined in the Superseding Indictment [368] and properly should be tried alongside the other SNM leaders and members charged with similar violent crimes in aid of racketeering. The Court should therefore deny the Defendants' Motion to Sever.

## **BACKGROUND**

Defendants, Jerry Montoya, a.k.a. "Boxer," Timothy Martinez, a.k.a. "Red," Anthony Ray Baca, a.k.a. "Pup," Mauricio Varela, a.k.a. "Archie," a.k.a. "Hog Nuts," Daniel Sanchez, a.k.a. "Dan Dan," Carlos Herrera, a.k.a. "Lazy," and Rudy Perez, a.k.a. "Ru Dog" ("Defendants"), are charged by Superseding Indictment with Violent Crimes in Aid of Racketeering ("VICAR"), namely conspiracy to commit murder, and murder of J.M. in violation of 18 U.S.C. Sections 1959(a)(1) and (a)(5). Superseding Indictment at 20-21. The grand jury charged:

1. Defendants were members/prospects/associates of the Syndicato de Nuevo Mexico (SNM) gang, a criminal organization whose members/prospects/associates engaged in

acts of violence and other criminal activities, including murder, kidnapping, attempted murder, conspiracy to manufacture/distribute narcotics, and firearms trafficking. *Id.* at 2-3.

2. SNM was formed after the February 1980 prison riots at the Penitentiary of New Mexico, and has continued as a criminal enterprise within the New Mexico penal system, and outside of that system, for almost 40 years, bolstering as many as 500 members, and currently consisting of approximately 250. *Id.* at 3.

3. The gang, including its leadership, membership, prospects, and associates, constitutes an "enterprise" as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. *Id.*

4. The enterprise constitutes an ongoing organization whose members/prospects/associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. *Id.*

5. In addition to fighting for control over numerous illegal activities and using violence and terror for the purpose of enriching themselves, the SNM gang also engages in violence simply to assert its gang identity, to claim or protect its territory, to challenge or respond to challenges, to retaliate against a rival gang or member, to gain notoriety and show its superiority over others, and to send messages to others that it was strong, powerful and not to be provoked. *Id.* at 4.

6. Members of the SNM gang are expected to seek out and beat, stab, or shoot rival gang members. Similarly, members of the SNM gang are expected to confront and attack

any suspected law enforcement informants, cooperating witnesses, homosexuals, or sex offenders. *Id.* at 5.

7. Members who fail to show continued loyalty to the gang are disciplined in various ways, to include murder and assaults. *Id.*

The Defendants are among 30 members of the SNM charged with 15 Counts in this matter.

## RELEVANT LAW

Federal Rule of Criminal Procedure 8 is the procedural vehicle for joinder of offenses and defendants in a criminal proceeding. Rule 8 provides:

> **(a) Joinder of Offenses.** The indictment or information may charge *a defendant* in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

> **(b) Joinder of Defendants.** The indictment or information *may charge 2 or more defendants* if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8 (emphasis added). Most United States Circuit Courts of Appeals, including the Tenth Circuit, held that in cases involving multiple defendants, the propriety of joinder of offenses is tested by Rule 8(b). *See United States v. Eagleton*, 417 F.2d 11, 14 (10th Cir. 1969) ("Rule 8(a) . . . does not apply in cases where more than one defendant is joined in the same indictment. Such joinder [of offenses] is governed by Rule 8(b)."). *See also* 1A Wright et al., *Fed. Practice & Procedure: Criminal* § 143 (4th ed.) ('The conventional wisdom is that [Rule 8(a)] applies only to the prosecution of a single defendant; if more than one defendant is involved, Rule 8(b) states the test for joinder."); *United States v. Mann*, 701 F.3d 274, 289 (8th Cir. 2012) ("Where an indictment joins defendants as well as offenses, the propriety of the joinder of offenses is governed by Rule

8(b), rather than Rule 8(a)."); *United States v. Walker*, 657 F.3d 160, 169 (3d Cir. 2011) ("Rule 8(a) applies only to prosecutions involving a single defendant, and [,] in a multi-defendant case such as this, the tests for joinder of counts and defendants is merged in Rule 8(b).").

Parties may seek relief from joinder, even when proper, if joinder results in prejudice to a defendant or the Government. Federal Rule of Criminal Procedure 14(a) provides, in relevant part:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). Critically, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *United States v. Zafiro*, 506 U.S. 534, 538–39 (1993). Because severance is a matter of judicial discretion and not a matter of right, a defendant bears a "heavy burden of showing real prejudice to his case." *United States v. Gould*, No. CR 03-2274 JB, 2007 WL 1302587, at *1 (D.N.M. Apr. 6, 2007) (Browning, J.) (citing *United States v. Hall* 473 F.3d 1301, 1302 (10th Cir. 2007)).

## ARGUMENTS AND AUTHORITIES

### I.   CHALLENGE TO JOINDER OF OFFENSES UNDER RULE 8(A) IS IMPROPER

Defendants claim Counts 6 and 7 were improperly joined under Federal Rule of Criminal Procedure 8(a). *See* Motion to Sever at 10. Defendants' motion under Rule 8(a) is improper; accordingly, Defendants are not entitled to relief.

Federal Rule of Criminal Procedure 8 describes two tests for joinder. *See United States v. Papadakis*, 510 F.2d 287, 299–300 (2d Cir. 1975); *Cupo v. United States*, 359 F.2d 990, 922 (D.D.C. 1996); *King v. United States*, 355 F.2d 700, 703-04 (1st Cir. 1966). Rule 8(a) specifically provides that "a single defendant" may be charged with two or more offenses "if the offenses

charged are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 8(b) provides that "two or more defendants" may be charged "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).

In *United States v. Riebold*, the Tenth Circuit held that "Rule 8(a) . . . does not apply in cases where more than one defendant is joined in the same indictment. Such joinder [of offenses] is government by Rule 8(b)." 557 F.2d at 707 (quoting *Eagleston*, 417 F.2d at 14). The same distinction was made in *United States v. Caldwell*, where the Tenth Circuit held that joinder of offenses among multiple defendants was appropriate under Rule 8(b) where a "number of common threads and much common evidence connecting offenses charged in the indictment" existed. 560 F.3d at 1212. As the Court has pointed out in the past, "as a district court, the Court must faithfully apply controlling Supreme Court and Tenth Circuit precedent." *United States v. Courtney*, 960 F. Supp. 2d 1152, 1179 (D.N.M. 2013) (Browning, J.). Clearly, Rule 8(a) does not apply to joinder of offenses involving multiple defendants.

Because Defendants' entire joinder-of-offenses challenge relies on a rule not applicable here, Defendants are not entitled to relief. The Court should therefore dismiss Defendants' Motion to Sever on these grounds.

## II.   CHALLENGE TO JOINDER OF DEFENDANTS UNDER RULE 8(B) FAILS

Defendants offer two arguments in support of their claim of improper joinder of defendants in the Superseding Indictment: (1) the United States has not alleged that Defendants participated in the same series of acts or transactions with the other defendants charged, and (2) the crimes

alleged in Counts 6 and 7 are not connected to the other defendants. *See* Motion to Sever at 13-15. Both of these claims lack a sound basis in the law and in the facts.

## A.  The United States explicitly alleges Defendants participated in the same predicate acts as the other Defendants

The United States charges Defendants with being known participants in activities unlawful under the RICO Act. As the Superseding Indictment alleges, Defendants are members of the SNM, a criminal enterprise, and, at the behest of the gang, have participated in predicate racketeering acts, namely, conspiracy to murder and murder. *See* Superseding Indictment at 6-9. The Superseding Indictment characterizes the Defendants' collective conduct as "Violent Crimes in Aid of Racketeering" pursuant to 18 U.S.C. §§ 1959(a)(1) and (a)(5). *See id.* Furthermore, Defendants charged in Counts 6 and 7 are among 29 named Defendants charged with violations of VICAR as a result of acts committed on behalf of the SNM gang. *See id.* Accordingly, the United States explicitly alleges that Defendants participated in the same series of predicate offenses as the other Defendants, all in violation of § 1959.

Defendants' Motion to Sever also suggests that joinder was improper because "there is no allegation that the 2014 Defendants . . . 'conspired and agreed with each other to commit' the other crimes alleged in the indictment." *See* Motion to Sever at 14.  Defendants claim that joinder of defendants is proper only where defendants conspire and agree with each other to commit other charged offenses. *See id.* This claim lacks a sound basis in the law and in fact for two reasons.

First, the Supreme Court unanimously held that, to be found guilty of a conspiracy to commit a RICO violation, a defendant need not personally commit or agree to commit two predicate acts of racketeering. *See United States v. Salinas*, 522 U.S. 52, 64 (1997) ("The RICO conspiracy statute, §1962(d), broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the Government to

prove each conspirator agreed that he would be the one to commit two predicate acts."). Second, Federal Rule of Criminal Procedure 8(b) permits joinder of defendants in a single indictment where the defendants *participated* in the same series of acts or transactions constituting an offense. The rule does not condition joinder upon whether the defendants *conspired* with each defendant to commit the offenses. Fed. R. Crim. Pro. 8(b). Accordingly, these claims should be dismissed.

## B.  The United States provided evidence demonstrating that the crimes alleged are connected to the other defendants

Defendants' contention that joinder is not proper because none of the Defendants, except Defendant Baca, charged in Counts 6 and 7 are charged in any other offenses, *see* Motion to Sever at 14, cannot logically be correct because it circumvents the essential framework of the RICO Act and VICAR statute. If it were true that such defendants cannot be charged together, this would preclude multi-defendant RICO trials. That simply cannot be true.

The phrase "same series of acts or transactions" in rule 8(b) "is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Hopkinson*, 631 F.2d 665, 668 (10th Cir. 1980). As this Court recognized, "'[j]oint trials of defendants who are indicted together are preferred because they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Gould*, No. CR 03-2274 JB, Mem'm Opinion & Order, 2007 WL 1302587, at *1 (D.N.M. Apr. 6, 2007) (Browning, J.) (quoting *United States v. Hall*, 473 F.3d 1295, 1301-02 (10th Cir. 2007)). Courts "'apply a commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (quoting *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007)).

Given this broad construction of rule 8(b), courts conclude that a conspiracy count, while not necessary, is certainly sufficient to make proper joinder of all defendants charged in that conspiracy, regardless whether each defendant is charged in each count or with each substantive act. *See, e.g.*, *United States v. Hill*, 786 F.3d 1254, 1272 (10th Cir. 2015) ("Although the Indictment in this case charged six different robberies alleged to have been committed by different defendants over a more than two-year period, it also alleged that the defendants conspired and agreed with each other to commit all six of the robberies. Given the broad construction we afford Rule 8 and our preference for liberal joinder, this was sufficient to permit joinder."), *cert. denied*, 136 S. Ct. 377 (2015). *See also* 1A Wright et al., *supra*, § 144 ("All courts agree that a conspiracy count normally provides a sufficient allegation that the defendants engaged in the same series of acts or transactions, making joinder permissible . . . . Not all of the defendants charged as conspirators need be charged on all substantive counts . . . .").

The logic behind joinder as proper in conspiracy cases applies equally "where there is a charge of an ongoing racketeering or other criminal enterprise," such as in a RICO case. *Id. See, e.g.*, *United States v. Carson*, 455 F.3d 366, 373 (D.C. Cir. 2006) ("The indictment alleged that all of the[] counts were overt acts in furtherance of the narcotics conspiracy and predicate acts in furtherance of the RICO conspiracy. This provided the necessary link to satisfy Rule 8(b).").

Under RICO, the requirements of Rule 8(b) are satisfied when each defendant *participated in the affairs of the same enterprise* through the commission of the alleged predicate racketeering acts. *See*, *e.g.*, *United States v. Irizarry*, 341 F.3d 273, 287-90 (3d Cir. 2003) (finding joinder of offenses for multiple defendants merges under Fed. R. Crim. P. 8(b), and, for purposes of joinder under the rule, a RICO conspiracy charge provides the required link); *United States v. Friedman*, 854 F.2d 535 (2nd Cir. 1988) (the presence of a substantive RICO count and of a RICO conspiracy

9

further broadens the government's power to charge multiple defendants together); *United States v. Richardson*, 167 F.3d 621, 625 (D.C. Cir. 1999) ("In this case, the RICO and RICO conspiracy counts functioned as the 'connective tissue' . . .  that allowed joinder of all fifteen incidents and all three defendants in a single trial."); *United States v. Boylan*, 898 F.2d 230, 245 (1st Cir. 1990) (so long as there is reasonable basis for the allegations, charging a RICO conspiracy normally supplies the basis for joinder of multiple defendants at a single proceeding where all are accused of participating in the conspiracy); *United States v. Caporale*, 806 F.2d 1487, 1510 (11th Cir. 1986) (Joinder of co-defendants in a count charging a single RICO conspiracy violation is permissible, even if different defendants are charged with different acts of racketeering, if the racketeering acts are in furtherance of the overarching RICO conspiracy charge).

As is the case under RICO, the requirements for joinder of defendants under VICAR may be satisfied by establishing the existence of an enterprise, and that the defendants' charged crimes related to the affairs of the same enterprise. *See, e.g.*, *Matta-Ballesteros*, 71 F.3d at 770-71 (finding joinder proper where co-defendants' charges related to one another); *United States v. Darden*, 70 F.3d 1507, 1526-27 (8th Cir. 1995) (finding joinder proper where the indictment sufficiently alleged that the joined defendants and counts were factually interrelated). Rule 8(b) also permits joinder even when a defendant is not charged with the same offense. *See United States v. Vasquez-Velasco*, 15 F.3d 833, 844 (9th Cir. 1994) (joinder of offenses is proper where there is a logical relationship between the acts or transactions giving rise to the offense).

The United States alleges that the SNM gang is a criminal enterprise within the meaning of RICO and VICAR, that Defendants are members of the gang. The grand jury found probable cause supports those allegations. The Defendants are charged in Counts 6 and 7 with predicate racketeering offenses—conspiracy to murder, and murder—relating to the affairs of the SNM

enterprise. Given the abundance of case law pertaining to joinder of defendants in RICO and VICAR cases, joinder of Defendants in Counts 6 and 7 is clearly proper under Rule 8(b), and Defendants' Motion to Sever should be dismissed.

## III.   RULE 14 DOES NOT SUPPORT SEVERANCE OF DEFENDANTS

Defendants contend that Counts 6 and 7 should be severed under Federal Rule of Criminal Procedure 14 because a joint trial of all defendants is impractical, and evidence against other defendants charged in the Superseding Indictment will prejudice the Defendants charged in these counts. Defendants' contentions are speculative at best. But, even if taken as true, the nature of the VICAR charges in Counts 6 and 7 means that severance would do little if anything to satisfy Defendants' complaint.

The Defendants' assert that the Tenth Circuit adopted a three-step inquiry to determine whether a motion to sever based on a claim of prejudice to the defendant may be granted under Rule 14:

> First, [the court] must determine whether the defenses presented are so antagonistic that they are mutually exclusive. Second, because mutually antagonistic defenses are not prejudicial per se, a defendant must further show a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. Third, if the first two factors are met, the trial court exercises its discretion and weighs the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration.

*See* Motion to Sever at 15-16 (citing *United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007)).

## A.  Defendants fail to satisfy the first prong of severance inquiry

Defendants assert that before the Court may grant a motion to sever based on prejudice, the Court must determine whether the defenses presented are so antagonistic that they are mutually exclusive. *See id.*

Defenses are mutually antagonistic if "the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Linn*, 31 F.3d 987, 992 (10th Cir. 1994) (citing *United States v. Swingler*, 758 F.2d 477, 495 (10th Cir. 1985)). "To sustain a claim of error under this theory, a defendant must make a factual demonstration, not an abstract allegation[.]" *United States v. Smith*, 788 F.2d 663, 668 (10th Cir. 1986).

Defendants claim that "there can be no doubt there will be antagonistic defenses." Motion to Sever at 21. In support of this claim, Defendants anticipate other Defendants will likely deny their association with the SNM, or deny involvement in the alleged crimes. *See id.* This fails to explain how these denials are antagonistic thus, Defendants' characterization of these antagonistic defenses falls short of the type of prejudice Rule 14 inquiry requires to support severance.

Here, Defendants do not state the nature of their defenses or in what respect their defenses are irreconcilable to the other defendants. Defendants merely contend that denial of the crimes is antagonistic. *See Smith*, 788 F.2d at 668 (mere claims of conflicting defense theories are inadequate for showing actual prejudice which requires a granting of separate trials); *United States v. Oakie*, 12 F.3d 1436, 1441 (8th Cir. 1993) (defendants are "required to show that the conflict between the defense is so prejudicial that the differences are "actually irreconcilable").

In reality, as Defendants admit, "it is unclear at this point whether the 30 defendants' defenses are so antagonistic as to be mutually exclusive." Motion to Sever at 21. The Rule 14 inquiry requires the Court to find not only that the defenses are antagonistic, but that they are "mutually exclusive." *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989) (antagonistic defenses are mutually exclusive when the defendant demonstrates that the acceptance of one party's defense would tend to preclude the acquittal of the other, or that the guilt of one defendant tends to establish the innocence of the other (citing *Smith*, 788 F.2d at 668)). Defendants fail to

provide any basis at this point on which the Court may determine that joinder of defendants or offenses would result in the type of prejudice that Rule 14 requires to warrant severance. Accordingly, the Court should deny Defendants' Motion to Sever.

**B.  Defendants fail to satisfy the second prong of severance inquiry**

Defendants contend that, in a motion to sever inquiry, the Court must next determine whether relief is available based on a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. *See* Motion to Sever at 15 (citing *Pursley,* 474 F.3d at 765). The United States responds to Defendants' arguments under this prong in the order in which they appear in Defendants' Motion to Sever.

*i.   No serious risk that a joint trial will prevent the jury from making a reliable judgment about guilt or innocence*

Defendants contend that joinder of Counts 6 and 7 with the "other alleged murders, conspiracy to commit murder, assaults and firearms charges," would result in the "prejudicial effect" of allowing the jury to infer guilt by creating an atmosphere of criminal propensity. Motion to Sever at 22. This argument amounts to nothing more than a "garden variety" claim of prejudice. *United States v. Candelario-Santa*, 834 F.3d 8, 23 (1st Cir. 2016). "Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Gould*, 2007 WL 1302587, at *2 (internal quotation marks and citations omitted) (quoting *Zafiro*, 506 U.S. at 540; *United States v. Pursley*, 474 F.3d 757, 766 (10th Cir. 2007)).

Prejudice "always exists when more than one defendant or offense are tried together." *Id.* Standing alone, prejudice "does not warrant a new trial." *Candelario-Santa*, 834 F.3d at 23.  To justify severance of co-defendants, the movant must at least show that he will suffer "specific and compelling prejudice against which the court is unable to afford protection, and that this prejudice would result in an unfair trial." *United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1988)

(quoting *United States v. Toro*, 840 F.2d 1221, 1238 (5th Cir. 1985)); *United States v. Nersesian,* 824 F.2d 1294, 1303 (2d Cir. 1987) (prejudice must be so substantial as to amount to a "miscarriage of justice" (quoting *United States v. Bari,* 750 F.2d 1169, 1177 (2d Cir.1984)). But even where a defendant may show such specific and compelling prejudice, both the Supreme Court and the Tenth Circuit routinely have rejected defendants' complaints of prejudicial spillover effect where limiting instructions may minimize the risk of undue prejudice. *See Zafiro*, 506 U.S. at 539 (limiting instructions often will suffice to cure any risk of prejudice); *United States v. Lane*, 883 F.2d 1484 (10th Cir. 1989) ("As a general rule, we presume that juries follow [limiting] instructions."); *United States v. Jones*, 530 F.3d 1292 (10th Cir. 2008) (mere allegations that evidence against one defendant would have a "spillover effect" against another defendant does not demonstrate prejudice (internal quotations omitted)). Because Defendants rely on assertions of prejudice generally, and do not point out specific and compelling prejudice, Defendants fail to uphold their burden of showing that the jury would be prevented from making a reliable judgment about guilt or innocence. *See Smith*, 788 F.2d at 668.

Defendants add that, because of the "complexity and magnitude" of this case, limiting instructions would be unworkable at trial. *See* Motion to Sever at 22. But, this argument is contrary to the Supreme Court's and Tenth Circuit's direction regarding use of limiting instructions.

In support of their claim that a jury would not be able distinguish the evidence in a case of this size, Defendants go to great lengths to attempt to analogize the present case to *United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987). The comparison, however, is inapposite.

In *Gallo*, the court found severance was proper where the indictment dealt with a RICO conspiracy against the Gambino family organized crime syndicate. The indictment alleged nine areas of illegal activity, including murder, extortion, robbery, labor racketeering, loansharking,

gambling, obstruction of justice, bribery, and interstate travel in aid of racketeering; seventy-two predicate acts and of forty-six separate specified alleged offenses, representing the violation of eleven different sections of the state and federal criminal codes; nine separate allegations of illegal collections; and consisted of at least 25 separable "schemes," "operations," or courses of conduct. 668 F. Supp. at 738–39. In its decision to grant relief under Rule 14, the *Gallo* court found the complexity of this case was "particularly injurious to defendants charged in a small portion of the counts and who are implicated by only bits and pieces of evidence." *Id.* at 749-50 (citing *United States v. Branker*, 395 F.2d 881, 882 (2d. Cir. 1968)).

Defendants argue that "[t]his case involves separate, distinct alleged murder conspiracies that took place at different points in time involved completely different alleged conspirators and different alleged victims." Motion to Sever at 20. They also argue that, "[w]hat is undoubtedly clear is that much of the evidence related to the counts in which the 2014 Defendants are not charged is likely inadmissible in a case on Counts 6 and 7, and presenting it to the jury poses a serious risk . . . . [of] creating an atmosphere of criminal propensity." *Id.* at 21-22. These arguments may find some support if this were a generic (but large) drug-trafficking conspiracy to import more than one million pounds of marijuana. *See id.* at 24 (citing *United States v. Ellender*, 947 F.2d 748, 754 (5th Cir. 1991)). They may also find some support if this were a RICO conspiracy centered on a traditional organized crime family, in which there's one godfather with a select couple of enforcers who carry out the lion's share of the family's criminal activities. *See id.* at 16-23 (discussing *United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987)).

Certainly in cases of that nature, an individual or certain individuals who allegedly engaged in one crime only may have "a markedly different degree of capability," *Baca*, 2016 WL 6404772,

at *33, or may be "'conspirators joining and leaving the conspiracy at various times,'" Motion to Sever at 18 (quoting *Gallo*, 668 F. Supp. at 751).

But in the unique circumstances that the Superseding Indictment alleges, these murders, conspiracies to murder and other violent crimes that involve the various SNM member Defendants are *res gestae* of the SNM's racketeering "enterprise." Superseding Indictment at 3 (quoting 18 U.S.C. § 1959(b)(2)). Unlike a generic drug-trafficking conspiracy (even a large one), and unlike an organized crime family, the SNM's criminal enterprise operates within the confines of the New Mexico prison system, in which the leaders and the members are not at liberty to travel freely to perpetrate their crimes. *See* Superseding Indictment at 3-5. Also locked up in different prison facilities at different locations throughout New Mexico are the victims and targets of the SNM enterprise, including J.M. Thus, unlike the unconstrained criminals in a drug-trafficking conspiracy or an organized crime family, in this case, only SNM members within the particular prison at which the targeted victim resides may carry out the "hit." It is therefore logical, and unsurprising, that different SNM members are alleged to have carried out the SNM's crimes that took place at different locations where the different victims were housed.

Thus, it is part and parcel to all of the VICAR charges in this case that they "involved completely different alleged conspirators and different alleged victims." Motion to Sever at 20. And because these are VICAR charges, the Court should not take for granted that, to prove that each of these Defendant coconspirators is guilty of the VICAR crimes with which they're charged in Counts 6 and 7, the United States must prove that these crimes were committed for gaining value from the SNM "enterprise" or gaining entrance to, maintaining position in, or increasing position in the SNM "enterprise," which engaged in racketeering activity. *See* 18 U.S.C. § 1959; *Smith*, 413 F.3d at 1277 (10th Cir. 2005).

16

Despite Defendants' suggestion that juries are incapable of making "hyper-sensitive determinations after a month's long trial," Motion to Sever at 22, courts routinely have found that juries can *and do* follow jury instructions in complex RICO and VICAR cases, and that jury instructions are an effective mechanism for granting relief where prejudice may arise. *See*, *e.g.*, *United States v. Giampa*, 904 F. Supp. 235 (D.N.J. 1995) (finding no "spillover effect" where jury followed jury instructions to consider evidence against each defendant in a multi-defendant indictment alleging 51 counts of various RICO violations); *United States v. Cervone*, 907 F.2d 332 (2d Cir. 1990) (finding jury instructions were sufficient to avoid prejudice in a RICO case charging 18 defendants with numerous racketeering offenses); *United States v. DiNome*, 954 F.2d 839 (2d Cir. 1992) (finding careful instructions by the trial judge, an outline of the elements of the offenses charged, numerous requests for feedback, and the length of deliberations reinforced the court's conclusion that the jury comprehended a RICO case involving nine defendants charged with numerous racketeering offenses).

Moreover, this Court specifically has recognized that it is the "gatekeeper under the Rules of Evidence," and frequently uses limiting instructions to prevent the jury from using evidence for an improper purpose. *United States v. Ballou*, 59 F. Supp. 3d 1038, 1049 (D.N.M. 2014) (Browning, J.) (quoting *United States v. Jordan,* 485 F.3d 1214, 1218 (10th Cir. 2007)). *See, e.g.*, *United States v. Sandoval*, 410 F. Supp. 2d 1071 (D.N.M. 2005) (Browning, J.) ("the Court will give a limiting jury instruction concerning the evidence, minimizing the risk that the evidence will contribute to an improperly-based jury verdict."); *Bhandari v. VHA Sw. Cmty. Health Corp.*, 778 F. Supp. 2d 1155, 1172 (D.N.M. 2011) (Browning, J.) ("the Court does not believe that, with the proper limiting instructions, the jury will attribute evidence that Abalos challenged another physician to a fight to the Defendants' decision to terminate R. Bhandari."); *United States v.*

*Rodella*, No. CR 14-2783 JB, 2014 WL 6911573, at *18 (D.N.M. Sept. 21, 2014) (Browning, J.) ("Additionally, providing a limiting instruction, pursuant to rule 105, if requested by Rodella, will further rein in the jury and prevent it from using the evidence for an improper purpose.").

Defendants have not provided any explanation as to how the jury in this case might be confused or misled by Defendants' anticipated defenses; the Court, therefore, should not resort to the "drastic" measure of severing Defendants' trial. *United States v. Ledbetter*, 137 F. Supp. 3d 1042, 1058 (S.D. Ohio 2015). Because Defendants offer an insufficient basis for the Court to determine whether a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence, the Court should dismiss Defendants' Motion to Sever.

*ii.  No serious risk that joinder will compromise Sixth Amendment trial right*

Defendants contend that joinder of Counts 6 and 7 places Defendants' Sixth Amendment right at risk by prohibiting Defendants from being present at all critical stages of the trial, confronting the witnesses against them, and having a public trial. Motion to Sever at 24-25. In support of these claims, Defendants assert: (1) voir dire would be impossible without making physical modifications to the courtroom; (2) depending on where Defendants are seated, Defendants will be excluded from important bench conferences with counsel; and (3) if the courtroom is too full, people will not be seated and the Defendants will risk losing their right to a public trial. These arguments are speculative and unpersuasive.

In *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1987), the Ninth Circuit held that, to show that prejudice is "of such a magnitude that the defendant was denied a fair trial," a party "must show [a] violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense,

denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant." The Ninth Circuit added: "Clearly, this is not an easy burden to meet." *Id.*

Although Defendants envision a courtroom "overfilled with defendants, counsel, and co-counsel," Motion to Sever at 25, Defendants fail to establish that joinder would deny Defendants the rights that the Sixth Amendment hold crucial such as, the Constitutional right to cross-examination, opportunity to present an individual defense, right to confront witnesses against them, right to counsel, or right to properly instruct the jury on the admissibility of evidence as to each defendant. The hearings have worked fine thus far, and there is no reason to believe that will change. The rights that Defendants assert may be infringed are not of the same magnitude. Because Defendants offer no sound basis for the Court to determine that a joint trial would compromise Defendants' specific trial rights, the Court should dismiss Defendants Motion to Sever.

### iii.   *No serious risk that joinder will compromise Fifth Amendment trial right*

Defendants also argue that severance is necessary to protect the Defendants' respective rights to a fair trial under the Fifth Amendment. Motion to Sever at 25. Defendants claim that joinder will prejudice their right to a fair trial because they have been charged with VICAR offenses alongside other Defendants charged with other crimes. *Id.* at 27-28. Defendants fail to specify how joinder would compromise their right to a fair trial. But, more than that, they fail to acknowledge that, given the nature of the VICAR charges in Counts 6 and 7, severance would not even cure the prejudice theory they contend may exist.

The essence of Defendants' claim is that Defendants' right to a fair trial will be prejudiced *by the possibility* that the issue of guilt of as to other defendants will be confused with the guilt of

the Defendants. Motion to Sever at 25-27.  Defendants' argument does not find support in Tenth Circuit precedent or otherwise.

Indeed, the Tenth Circuit has repeatedly held that complaints of the "spillover effect" from overwhelming or more damaging evidence against a co-defendant is insufficient to warrant severance. *See, e.g.*, *United States v. Pack*, 733 F.2d 261 (10th Cir. 1985); *United States v. Cardall*, 855 F.2d 656 (10th Cir. 1989); *United States v. Morales*, 108 F.3d 1213, 1219 (10th Cir. 1997). Accordingly, Defendants' contention that their Fifth Amendment trial right comes into play for severance lacks support in the facts and in the law.

Defendants also contend that "the complexity of a large multi co-defendant racketeering case almost demands severance" where the trial involves evidence of other charges. Motion to Sever at 28. Defendants rely heavily on *Butler* to argue that a fair trial would be impossible here if they are tried alongside their fellow SNM Defendants. But their entire argument for severance based on this purported prejudice is belied by what they admit -- but classify as a "wrinkle" with *Butler*'s application to this VICAR case -- that "the crimes charged in counts 6 and 7 are alleged to have been committed in aid of racketeering activity." Motion to Sever at 27. That the crimes charged in Counts 6 and 7 are VICAR crimes, as opposed to simple conspiracies to embezzle or convert government property, *see* Motion to Sever at 26 (citing *Butler*), is not a wrinkle; it is the reason that the charges in the Superseding Indictment are properly joined. And it is the reason that severance will not alleviate the purported prejudice on which Defendants rely for severance.

Unlike in *Butler* and the other cases on which Defendants rely in their prejudice argument, the United States here must prove not only that Defendants conspired to murder J.M. and murdered J.M., the United States must additionally prove that SNM is a criminal enterprise that engaged in racketeering activity, and that the Defendants conspired to and murdered J.M. to receive pecuniary

20

value from SNM or to gain entry to, or to maintain or increase position in, SNM. *See* 18 U.S.C. § 1959; *Smith*, 413 F.3d at 1277.

Now, Defendants complain throughout their Motion to Sever that the United States is somehow improperly using the VICAR statute to back-door evidence that is otherwise inadmissible, or to join Defendants or crimes that shouldn't really be joined together. Motion to Sever at 11. These complaints lack a sounds basis in the law and facts here for two paramount reasons. First, VICAR is a properly enacted statute that Congress saw fit to enact to prevent the exact activity alleged in the Superseding Indictment: violent crimes such as murders perpetrated by individuals who join in a racketeering enterprise such as SNM. Second, by charging this murder and conspiracy to murder as VICAR violations, the United States placed additional burdens on itself: to prove that the SNM is an enterprise, engages in racketeering activities, and that this murder and conspiracy to murder were committed by the Defendants to receive pecuniary value from SNM or to gain entry to, or to maintain or increase position in, SNM. To the extent that Defendants complain about the additional evidence that's admissible in a VICAR case such as this, they conveniently omit from their Motion to Sever that they receive a huge benefit: if the United States fails to prove any one of these additional elements beyond a reasonable doubt, they will be found not guilty of the VICAR crimes with which they're charged.

Because *Butler* does not support Defendants' contention that their Fifth Amendment trial right is prejudiced by joinder, Defendants are left with one final contention: Large multi-defendant racketeering cases virtually always impairs a defendant's right to a fair trial under the Fifth Amendment. *See* Motion to Sever at 28. This claim is particularly alarming, because it invites the Court to accept as a general proposition that joinder of offenses in RICO and VICAR cases necessarily imports unconstitutional prejudice. Accepting this premise entials that joinder in these

cases is almost never proper. That cannot be right. For this reason as well, Defendants fail to demonstrate that their specific Fifth Amendment trial right would be prejudiced by joinder in this case. Accordingly, the Court should deny Defendants' Motion to Sever.

## C. Defendants fail to satisfy the third prong of joinder inquiry.

Finally, as Defendants assert, only if the Court finds Defendants have satisfied the first two prongs of the severance analysis, then may the trial court exercise its discretion and weigh the prejudice to a particular defendant caused by joinder against the important considerations of economy and expedition in judicial administration. *See* Motion to Sever at 15-16.

Defendants claim that severance of Counts 6 and 7 "would best serve the interest of the Court and the jury" by (1) permitting the Court greater flexibility in scheduling matters; (2) facilitating jury selection for fewer defendants; and (3) relieving jury members of jury service for "inordinate stretches of time." Motion to Sever at 19. The benefits proposed by Defendants overlook the additional expense of time and judicial resources incurred by severance.

First, severance is not in the best interests of the Court, because it will require the court to undergo the same trial process at least twice. Defendants treat Counts 6 and 7 as unrelated to the charges brought against the other Defendants, ignoring the fact that these charges are part and parcel to the SNM's larger racketeering activities and enterprise. The United States is required to produce evidence to prove that Counts 6 and 7 were committed by Defendants who were members of the SNM, and that the alleged racketeering offenses were carried out by Defendants on behalf of the gang. The United States is allowed to prove all of these essential elements effectively. *See Old Chief v. United States*, 519 U.S. 172, 189 (1997) ("the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away . . . .").

Severance duplicates the Court's administration of trial matters such as scheduling, jury selection, and other evidentiary issues that the United States relies upon to prove the necessary

elements of the VICAR conspiracy. Judicial resources are instead better served by requiring one trial by one jury reviewing one body of evidence. *See Gould*, 2007 WL 1302587, at *1 ("Joint trials of defendants who are indicted together are preferred because they promote efficiency and serve the interests of justice . . . .").

Next, joinder of Defendants does not impose an unbearable weight on individual jury members. Defendants fashion a description of a hypothetical trial involving "30 defendants" lasting "months on end" and resulting "in a 'process as a whole' that is 'undoubtedly draining, disorienting, exhausting and often demoralizing'" to jurors. Motion to Sever at 19-21.  This is clearly not the case. Of the Defendants charged in the Superseding Indictment, as in most criminal cases, only a fraction will proceed to trial. Currently, five Defendants have pled guilty in this case. And, others will likely follow suit. However improbable it may be that all remaining Defendants proceed to trial, as pointed out earlier, juries are capable of handling complex litigation.  *See Baker*, 10 F.3d at 1374; *Ostrer*, 460 F. Supp. at 1388. Accordingly, the length of this trial will not be so long as to countervail the "'preference in the federal system for joint trials of defendants who are indicted together.'" *United States v. Baca*, No. CR 16-1613 JB, Mem'm Opinion & Order, at 43 (D.N.M. Oct. 20, 2016) (Browning, J.) (quoting *Zafiro*, 506 U.S. at 537).

## CONCLUSION

Based on the foregoing analysis, Defendants' Motion to Sever fails to satisfy the critical elements required for severance. Counts 6 and 7, and all Defendants, properly are joined under Rule 8. Given the VICAR violations alleged in Counts 6 and 7, Defendants do not establish that joinder of those counts or Defendants requires severance under Rule 14. The United States of America therefore respectfully requests that the Court deny in full Defendants' Motion to Sever Counts 6 and 7.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

***Electronically filed on 1/20/17***
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
555 S. Telshor Blvd., Suite 300
Las Cruces, NM  88011
(575) 522-2304

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record on this date.

/s/
MARIA Y. ARMIJO
Assistant United States Attorney