IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO.   15-4268 JB |
| | ) | |
| **ANDREW GALLEGOS, a/k/a "Smiley,"** | ) | |
| **JOE LAWRENCE GALLEGOS,** | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO THE OPPOSED MOTION TO SEVER COUNTS 4 AND 5 [868]

Defendants' contention that Counts 4 and 5 of the Superseding Indictment [868] ("Motion to Sever") are improperly joined under Rule 8(b) fails, because (1) conspiracy to commit other offenses charged in the Superseding Indictment is not a requirement for joinder; (2) the United States offers a sufficient legal and factual basis for the Court to determine that Defendants participated in the affairs of the Syndicato de Nuevo Mexico Gang ("SNM") through the commission of the alleged racketeering offenses; and (3) the United States establishes Defendants were members of the SNM functioning to achieve a "common purpose."  Defendants' second contention that severance of Counts 4 and 5 should be severed under Rule 14 fails, because (1) Defendants fail to show any prejudice arising from antagonistic defenses; (2) Defendants fail to show joinder will prejudice Defendants' Fifth and Sixth Amendment rights, or prevent the jury from making a reliable judgment about Defendants' guilt or innocence; and (3) severance does not serve the best interests of the Court or jury. The Court should therefore deny Defendants' Motion to Sever.

## BACKGROUND

On November 12, 2012, the Veguita Fire Department responded to a vehicle fire in Socorro County, New Mexico. Upon arrival, fire department personnel discovered the burned corpse of A.B. lying in a fetal position with both hands bound in handcuffs behind the back and a gunshot wound to the head. A.B. was a known drug dealer and drug supplier to Syndicato de Nuevo Mexico Gang ("SNM") members Joe Lawrence and Andrew Gallegos ("Defendants"). During the course of the investigation, various witnesses placed A.B.'s last known whereabouts at the Defendants' home where witnesses say Defendants shot A.B. in the head, and disposed of his body at the site where he was located. Prior to the murder, Joe Lawrence Gallegos became aware that A.B. had disrespected him and was talking negatively about him in the community. As members of the SNM, Defendants were expected to preserve and protect the reputation of the SNM through any means necessary, including murder.

Defendants are charged by Superseding Indictment [Doc. 368] in Count 4—conspiracy to murder, in violation of 18 U.S.C. Sections 1959(a)(5), and Count 5—murder, in violation of 18 U.S.C. Section 1959(a)(1). The grand jury charged:

1.  Defendants are members/prospects/associates of the SNM, a criminal organization whose members/prospects/associates engage in acts of violence and other criminal activities including murder, kidnapping, conspiracy to manufacture/distribute narcotics, and firearms trafficking. Superseding Indictment at 2.

2.  SNM, including its leadership, membership, prospects, and associates, constitutes an enterprise as defined in Title 18, U.S.C. Section 1959(b)(2). *Id.* at 3.

3.  SNM members are expected to remain loyal to the SNM and work to further the goals of the SNM inside and outside the prison environment. *Id.* at 4.

2

4.   The purposes of the SNM include: preserving, protecting, promoting, and enhancing the reputation of its members and associates through criminal acts such as intimidation, violence, threats of violence, assaults, and murder. *Id.* at 7.

5.   Members who fail to show loyalty to the gang are disciplined in various ways, including murder and assault. *Id.*at 4.

Defendants are among 20 co-Defendants[1] presently pending trial for Violent Crimes in Aid of Racketeering ("VICAR"). They seek severance under Federal Rule of Criminal Procedure 14(a).

## RELEVANT LAW

Federal Rule of Criminal Procedure 8(b) is the primary procedural vehicle for joinder of defendants in an indictment. Rule 8(b) provides:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). "[T]he test for proper joinder is a common thread to each of the defendants which may be established by common evidence as to various counts." *United States v. Caldwell*, 560 F.3d, 1202, 1212 (10th Cir. 2009) (citing *United States v. Rogers*, 921 F.2d 975, 984 (10th Cir. 1990)). Rule 8 is construed broadly "to allow liberal joinder to enhance the efficiency of the judicial system." *Id.* (citing *United States v. Morales*, 108 F.3d 1213, 1219 (10th Cir. 1997)).

A defendant may seek relief from proper joinder if joinder results in prejudice to the defendant. *Zafiro v. United States*, 506 U.S. 534, 538 (1993). Federal Rule of Criminal Procedure 14(a) provides:

---

[1] Of the 29 Defendants charged by Superseding Indictment with VICAR offenses, nine (9) Defendants have pled guilty.

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). To justify relief under Rule 14, a defendant bears a "heavy burden of showing real prejudice to his case." *United States v. Gould*, No. CR 03-2274 JB, 2007 WL 1302587, at *1 (D.N.M. Apr. 6, 2007) (Browning, J.) (citing *United States v. Hall*, 473 F.3d 1301, 1302 (10th Cir. 2007)). A defendant must show that the prejudice is "of a type against which the court is unable to afford protection." *United States v. Lujan*, 529 F. Supp. 2d 1315, 1326 (D.N.M. 2007) (Brack, J.) (citing *United States v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989)). Critically, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538–39. Because the risk of prejudice varies with the facts in each case, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* at 539 (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

## ANALYSIS

### I.  Joinder of Defendants is proper under Rule 8(b)

Defendants offer three contentions in support of their claim that joinder is improper: (1) there is no allegation that Defendants "conspired and agreed with each other to commit" other crimes alleged in the indictment, Motion to Sever at 10; (2) the crimes alleged in Counts 4 and 5 "are discrete and not connected to any of the other defendants," *Id.*; and (3) joinder of Defendants under a "common purpose" standard will "create a slippery slope that would permit the Government to join 'almost anyone' under the current indictment." *Id.* Defendants' claims fail to find support in law or the facts.

**A. Conspiracy to commit other offenses charged in the Superseding Indictment is not a requirement for joinder under Rule 8(b)**

Defendants contends that joinder is improper because there is no allegation that Defendants "'conspired and agreed with each other to commit' the *other* alleged crimes in the indictment." Motion to Sever at 10 (emphasis added). Defendants rely on the assumption that a "transactional nexus" between Defendants exists only when Defendants are "alleged to have participated in any of the other counts." Motion to Sever at 10. This view of joinder is negated by a plain reading of Federal Rule of Criminal Procedure 8(b).

Rule 8(b) permits joinder of two or more Defendants "if [defendants] are alleged to have *participated* in the same act or transaction, or same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b) (emphasis added). Despite Defendants' contentions, the Rule does not condition joinder upon whether a defendant *conspired* with other defendants to commit other offenses charged in the indictment, *United States v. Grey Bear*, 863 F.2d 572, 585 (8th Cir. 1988), nor does the Rule require that a defendant be charged with *other* offenses in the indictment. *Caldwell*, 560 F.3d at 1212. Critically, Defendants' legal citations offer no support for their contentions. *See* Motion to Sever at 9-10.

Defendants' claims are further diminished by the Rule 8(b) provision stating that, "[a]ll defendants need not be charged in each count." Fed. R. Crim. P. 8(b). Numerous United States Courts of Appeals have found joinder proper even where defendants are *not* alleged to have participated in every act charged in the indictment. *See United States v. Kelley*, 461 F.3d 817, 830 (6th Cir. 2006) (holding joinder proper where both defendants "participated in at least one act in the series of acts that constituted the offenses"); *United States v. Weisman*, 624 F.2d 1118, 1129 (2nd Cir. 1980) (permitting joinder where Defendants participated in "some but not all counts of the indictment"); *United States v. Jones*, 880 F.2d 55, 62 (8th Cir. 1989) ("it is not necessary that

every defendant have participated in or be charged with each offense."). *See also* 1A Charles Alan Wright et al., *Federal Practice and Procedure*, § 144 n.37 (4th ed. 2015) ("Not all of the defendants charged as conspirators need to be charged on all of the substantive counts . . . ."). To the extent Defendants complain that there is "no evidence that the [Defendants] and other defendants participated in a series of acts or transactions" related the SNM VICAR conspiracy, Defendants' own argument is negated by additional charges brought against Defendants in Counts 4 and 5, and additional charges against defendant Joe Gallegos in Counts 1, 13, 14 and 15. *See* Superseding Indictment at 9-31.

Indeed, "the test for a proper joinder is a common thread to each of the defendants which may be established by common evidence as to various counts." *Caldwell*, 560 F.3d at 1212. Here, Defendants' offenses clearly share a "common thread" with each of the co-Defendants' alleged offenses.

First, Defendants are among 20 Defendants[2] charged with VICAR offenses committed on behalf of the SNM. Section 1959 makes it a crime to commit any of a list of violent crimes, including murder and conspiracy to murder, in return for anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of joining, remaining with, or increasing a position in such an enterprise. *See* 18 U.S.C. Section 1959(a). Second, the United States alleges that the SNM gang is a criminal enterprise within the meaning of RICO and VICAR, and that Defendants are members of the gang. Superseding Indictment 18-19. The grand jury found probable cause supports those allegations. Defendants' alleged conduct is therefore part and parcel of the SNM's reputation for violence, comprising exactly the type of conduct that has enabled the

---

[2] Of the 29 Defendants charged by Superseding Indictment with VICAR offenses, nine (9) Defendants have pled guilty.

SNM to continue its racketeering enterprise for over 36 years. Based on these criminal allegations

and the body of "common evidence as to various counts" charged in the Superseding indictment,

*Caldwell*, 560 F.3d at 1212, a sufficient basis exists for the Court to determine proper joinder of

Defendants under Rule 8(b). Accordingly, Defendants' Motion to Sever should be denied on these

grounds.

**B.  Joinder of Defendants in a RICO conspiracy is proper where Defendants' conduct constitutes predicate racketeering acts**

Based on the forgoing analysis, Defendants' second contention that joinder is improper

because "the crimes alleged in Counts 4 and 5 . . . are discrete and not connected to any of the

other Defendants" also fails.  Under RICO, the requirements of Rule 8(b) are satisfied when each

defendant *participated in the affairs of the same enterprise* through the commission of the alleged

predicate racketeering acts. *See*, *e.g.*, *United States v. Irizarry*, 341 F.3d 273, 287-90 (3d Cir. 2003)

(finding joinder of offenses for multiple defendants merges under Fed. R. Crim. P. 8(b), and, for

purposes of joinder under the rule, a RICO conspiracy charge provides the required link); *United

States v. Friedman*, 854 F.2d 535 (2nd Cir. 1988) (the presence of a substantive RICO count and

of a RICO conspiracy further broadens the government's power to charge multiple defendants

together); *United States v. Richardson*, 167 F.3d 621, 625 (D.C. Cir. 1999) ("In this case, the RICO

and RICO conspiracy counts functioned as the 'connective tissue' . . .  that allowed joinder of all

fifteen incidents and all three defendants in a single trial."); *United States v. Boylan*, 898 F.2d 230,

245 (1st Cir. 1990) (so long as there is reasonable basis for the allegations, charging a RICO

conspiracy normally supplies the basis for joinder of multiple defendants at a single proceeding

where all are accused of participating in the conspiracy); *United States v. Caporale*, 806 F.2d 1487,

1510 (11th Cir. 1986) (Joinder of co-defendants in a count charging a single RICO conspiracy

violation is permissible, even if different defendants are charged with different acts of racketeering, if the racketeering acts are in furtherance of the overarching RICO conspiracy charge).

As is the case under RICO, the requirements for joinder of defendants under VICAR may be satisfied by establishing the existence of an enterprise, and that the defendants' charged crimes related to the affairs of the same enterprise. *See, e.g.*, *Matta-Ballesteros*, 71 F.3d at 770-71 (finding joinder proper where co-defendants' charges related to one another); *United States v. Darden*, 70 F.3d 1507, 1526-27 (8th Cir. 1995) (finding joinder proper where the indictment sufficiently alleged that the joined defendants and counts were factually interrelated). Rule 8(b) also permits joinder even when a defendant is not charged with the same offense. *See United States v. Vasquez-Velasco*, 15 F.3d 833, 844 (9th Cir. 1994) (joinder of offenses is proper where there is a logical relationship between the acts or transactions giving rise to the offense).

The United States charged Defendants with participating in the affairs of the SNM enterprise through the commission of the alleged predicate racketeering acts. As the Superseding Indictment alleges, Defendants are members of the SNM, a criminal enterprise, and, at the behest of the gang, have participated in predicate racketeering acts, namely, conspiracy to murder and murder, to assert and preserve the reputation of the SNM. *See* Superseding Indictment at 18-19. The Superseding Indictment characterizes the Defendants' collective conduct as "Violent Crimes in Aid of Racketeering" pursuant to 18 U.S.C. §§ 1959(a)(1) and (a)(5). *See id.* Accordingly, Defendants cannot escape joinder by claiming that their offenses are "not connected to any of the other defendants," when the co-Defendants' alleged acts fulfill the essential expectations of the SNM VICAR conspiracy. Defendants' Motion to Sever should therefore be denied on these grounds.

**C.  Defendants' assertions against the VICAR statute itself are unfounded**

In a final effort to challenge joinder under Rule 8(b), Defendants turn their assertions against the VICAR statute itself. Defendants contend that the United States *should not* be allowed to join Defendants under a "common purpose" standard. Motion to Sever at 10-11. Defendants claim that doing so will "create a slippery slope that would permit the Government to join 'almost anyone' under the current indictment. *Id.* This view is without merit and unsupported by the law or facts.

In *Boyle v. United States*, the Supreme Court held: the United States is *required* to establish a RICO association-in-fact "enterprise" by proving "(1) an ongoing organization with a framework, formal or informal, for carrying out its objectives, and (2) that association members functioned as a continuing unit to achieve a *common purpose*." 556 U.S. 938 (2009) (emphasis added). Applying the principles announced in *Boyle*, the Tenth Circuit held, "not only must members of the group only (sic.) share a common purpose, there also must be evidence of "interpersonal relationship" aimed at effecting that purpose . . . ." *United States v. Hutchinson*, 573 F.3d 1011, 1021–22 (10th Cir. 2009) (Gorsuch, J.). The United States is allowed to prove all of these essential elements effectively, *Old Chief v. United States*, 519 U.S. 172, 189 (1997), and does so by producing direct and circumstantial evidence of Defendants' alleged conduct. *United States v. Kamahele*, 748 F.3d 984, 1003 (10th Cir. 2014). Clearly, the United States *should* be allowed to join Defendants under the "common purpose" standard, because it has been required to do so by the Supreme Court.

Moreover, Defendants offer no legal or factual basis to support their claim that joinder under the "common purpose" standard will give the United States "free range to join almost any gang-related crime into a single indictment and trial," or that the United States has joined any

"member or wannabe member of the SNM." Motion to Sever at 11. *See United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir. 1985) ("So viewed, Rule 8(b) codifies the long-standing practice of trying conspirators together but does not open the door to mass trials—does not, for example, allow all tax evaders whose last names begin with 'V' to be tried together, or all tax evaders who have the same zip code, or use the same accountant."); *United States v. Riebold*, 557 F.2d 697 (10th Cir. 1977) (joinder of offenses is proper if they are of the same character, but the court must grant severance where defendants and offenses are totally unconnected). Although Defendants warn of potential abuses of Rule 8(b), Defendants do not contend that any have occurred here. Accordingly, Defendants' offer no basis for the Court to determine that joinder is improper on these grounds. Defendants Motion to Sever should therefore be denied.

## II.  Defendants fail to show any legal or factual basis for severance under Rule 14

Defendants contend that even if the Court finds that joinder is proper, severance is still required under Rule 14, "because a joint trial of two Defendants for Counts 4 and 5 alongside 28 [now 18] other defendants and the 13 other counts in the superseding indictment will deprive [Defendants] of their right to a fair trial . . . ." Motion to Sever at 2. Defendants offer three arguments in support of their claim: (1) joinder of Defendants will result in defenses "so antagonistic as to be mutually exclusive," Motion to Sever at 17; (2) joinder of Defendants will prejudice Defendants' constitutional rights, Motion to Sever at 20, 21; and (3) joinder of Defendants is outweighed by considerations for judicial economy. Motion to Sever at 16, 20-21. Defendants' fail to show any legal or factual basis for severance under Rule 14.

## A.  Defendants fail to show prejudice arising from antagonistic defenses

A defendant may seek relief from joinder if joinder results in prejudice to the defendant. Fed. R. Crim. P. 14(a). Because "prejudice always exists when more than one defendant or offense

10

are tried together," *United States v. Candelario-Santa*, 834 F.3d 8, 23 (1st Cir. 2016), a defendant

must show that the prejudice is "of a type against which the court is unable to afford protection."

*United States v. Lujan*, 529 F. Supp. 2d 1315, 1326 (D.N.M. 2007) (Brack, J.) (citing *United States*

*v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989)). To determine whether a motion to sever based on

prejudice should be granted, Defendants contend that the Court must conduct a three-step inquiry:

> First, the Court must determine whether the defenses presented are so antagonistic
> that they are mutually exclusive. Second, a defendant must further show a serious
> risk that a joint trial would compromise a specific trial right or prevent the jury from
> making a reliable judgment about guilt or innocence. Finally, a trial court exercises
> its discretion and weighs prejudice to a particular defendant caused by joinder
> against the obviously important considerations of economy and expedition in
> judicial administration.

Motion to Sever at 11-12 (citing *United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007)

(internal quotations omitted)).

In support of the first prong, Defendants cite the number of individuals charged in the

Superseding Indictment as evidence that joinder will result in prejudice arising from antagonistic

defenses. This claim is unsupported by both the law and the facts.

Defendants claim in no uncertain terms by stating that, "it is unclear at this point whether

the 30 defendants' defenses are so antagonistic as to be mutually exclusive." Motion to Sever at

17. Although Defendants admit that they presently suffer no prejudice from antagonistic defenses,

Defendants contend, "[g]iven the number of defendants" "there can be no doubt that there will be

antagonistic defenses." *Id.* Defendants' broad claims of prejudice fail for several reasons.

First, Defendants frequently conflate the number of *actual* Defendants proceeding with

trial in this case. For example, Defendants offer a variety of estimates ranging from 24 Defendants,

Motion to Sever at 2; 21 Defendants, Motion to Sever at 9; 22 Defendants, Motion to Sever at 16;

30 Defendants, Motion to Sever at 16, 17; and 30-60 Defendants, Motion to Sever at 17. The reality of joinder in this case is much smaller than Defendants would like the Court to believe.

Presently, nine Defendants have pled guilty to various VICAR charges in the Superseding Indictment.[3] Other Defendants will likely follow suit. With only 20 Defendants proceeding to trial on three separate statutes, eleven will be tried for violations of 18 U.S.C. Section 1959(a)(5)— conspiracy to murder, and seventeen will be tried for violations under 18 U.S.C. Section 1959(a)(1)—murder. By virtue of the number of Defendants who have already pled in this case, and those who will likely plead in the coming months, the risk of prejudice arising from antagonistic defenses is diminished. But even if these co-Defendants raise antagonistic defenses at trial, Defendants fail to assert any legal or factual basis for severance on this ground.

In *United States v. Linn*, the Tenth Circuit observed that, "[m]utually antagonistic defenses are not prejudicial *per se.*" 31 F.3d 987, 992 (10th Cir. 1994) (quoting *Zafiro*, 506 U.S. at 539).  In order for the Court to grant a motion to sever based on prejudice arising from antagonistic defenses, "the conflict between codefendants' defenses must be such that 'the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.'" *Id.* (quoting *United States v. Swingler*, 758 F.2d 477, 495 (10th Cir. 1985)).

---

[3] Benjamin Clark pled guilty to Count 3 (Murder) on November 15, 2016; Ruben Hernandez pled guilty to Count 3 (Murder) on February 1, 2017; Jerry Armenta pled guilty to Count 6 (Conspiracy to Murder) and Count 7 (Murder) on December 13, 2016; Jerry Montoya pled guilty to Count 6 (conspiracy to murder) and Count 7 (murder) on January 26, 2017; Timothy Martinez pled guilty to Count 6 (conspiracy to murder) and Count 7 (murder) on January 26, 2017; Gerald Archuleta pled guilty to Count 8 (conspiracy to commit assault resulting in serious bodily injury) on June 16, 2016; Robert Martinez pled guilty to Count 9 (conspiracy to murder) and Count 10 (murder) on September 22, 2016; Roy Paul Martinez pled guilty to Count 9 (conspiracy to murder) and Count 10 (conspiracy to murder) on September 15, 2016; and Paul Rivera pled guilty to Count 14 (conspiracy to murder) and Count 15 (attempted murder, assault with a dangerous weapon resulting in serious bodily injury) on February 1, 2017.

Here, Defendants fail to establish any prejudice whatsoever resulting from antagonistic defenses. Because Defendants offer no theory of defense of their own, Defendants point to two antagonistic theories that *might* arise in the course of trial: (1) "many defendants may argue they were not or are not SNM members," and (2) "[o]ther defendants will likely argue the alleged crimes were not done in furtherance of the SNM." Motion to Sever at 17. These arguments are analogous to the defendants' claim of antagonistic defenses in *Linn*. The Tenth Circuit held: denial of guilt by one party while accusing another is "not so contradictory that the jury must have necessarily disbelieved one to believe another." *Linn*, 31 F.3d at 992. This type of claim "amounts to no more than finger pointing," and affords no basis for severance on these grounds. *Id.*

Significantly, *Linn* affirmed the Supreme Court's instruction on antagonistic defenses, and held: even where prejudice is shown, Rule 14 does not require severance where limiting instructions will suffice to cure any risk of prejudice. *Id.* Defendants do not contend that limiting instructions offer an insufficient safeguard against prejudice arising from antagonistic defenses. Moreover, Defendants do not provide any explanation as to how the jury in this case might be confused or misled by Defendants' anticipated defenses—that is, Defendants have not asserted any theory of defense at all. The Court, therefore, should not resort to the "drastic" measure of severing Defendants' trial. *Zafiro*, 506 U.S. at 539.

Because Defendants offer no basis for the Court to determine that severance should be granted due to prejudice from antagonistic defenses, the Court should deny Defendants' Motion to Sever on these grounds.

## B. Defendants fail to show joinder will prejudice specific trial rights or prevent the jury from making a reliable judgement about guilt or innocence

Defendants contend that, in a motion to sever inquiry, the Court must next determine whether relief is available based on a serious risk that a joint trial would compromise a specific

trial right or prevent the jury from making a reliable judgment about guilt or innocence. *See* Motion to Sever at 11 (citing *Pursley,* 474 F.3d at 765). The United States responds to Defendants' arguments under this prong in the order in which they appear in Defendants' Motion to Sever.

  i.   *No serious risk that a joint trial will prevent the jury from making a reliable judgment about guilt or innocence*

Defendants contend that joinder of Counts 4 and 5 will result in: (1) a disproportionate body of evidence "in relation to the 30 [now 20] defendants charged" and "inevitable prejudice to peripheral defendants," Motion to Sever at 16; (2) an "extreme risk" of guilt by association based upon "the mere sight of 30-60 defendants and their lawyers sitting in a courtroom," Motion to Sever at 17; and (3) "prejudicial effect" from evidence admitted against co-Defendants rendering the jury "virtually incapable of reaching a reliable conclusion about each defendant's guilt or innocence." Motion to Sever at 18. Defendants claims are unsupported by the law or facts.

As the United States has already established, Defendants seek to enlarge the scope of trial by repeating inaccurate estimates of the number of actual Defendants in this case. Not only are these claims—and their subsequent basis for prejudice—without merit, the Court already noted at the hearing on February 7, 2017 that it is inclined to sever this case into groups of 10 or less Defendants. So, Defendants have already effectively been provided the relief they seek.

To the extent that a jury will be incapable of reaching a reliable conclusion about each defendants' guilt or innocence, Defendants rely heavily on *United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987). The comparison, however, is inapt.

*Gallo* dealt with a RICO conspiracy centered on a traditional organized crime family, in which one godfather directed a select couple of enforcers to carry out the lion's share of the family's criminal activities. *Id.* The court contributed "the complexity and labrynthian nature of the charged conspiracy and of this case" to the distribution of defendants across the indictment:

thirteen defendants, and a "host of unindicted cohorts," were charged with racketeering conspiracy in Count One *alone*. *Id.* at 738-39. The remaining twenty-one counts charged fourteen of the defendants with various "substantive" offenses, all relating to the affairs of the alleged enterprise. *Id.* All in all, the offenses charged in *Gallo* spanned at least nine areas of illegal activity, seventy-two predicate racketeering acts consist[ing] of forty-six separate specified alleged offenses, the violation of eleven different sections of the state and federal criminal codes, and at least 25 separable "schemes," "operations," or courses of conduct. *Id.* In its decision to grant relief under Rule 14, *Gallo* found the complexity of this case was "particularly injurious to defendants charged in a small portion of the counts and who are implicated by only bits and pieces of evidence." *Id.* at 749-50 (citing *United States v. Branker*, 395 F.2d 881, 882 (2d. Cir. 1968)).

Unlike the RICO conspiracy in *Gallo*, the scope of SNM VICAR offenses and the distribution of defendants across the Superseding Indictment is narrow. Here, the majority of charges stem from violations of Section 1959. Moreover, no more than six Defendants will proceed on any one count in the indictment, with the largest number of Defendants charged in Counts 6 and 7, of which Defendants are not charged. Unlike the defendants in *Gallo*, Defendants are not charged in a small portion of the counts nor are they implicated by bits and pieces of evidence. In the unique circumstances that the Superseding Indictment alleges, Defendants' alleged offenses are *res gestae* of the SNM's racketeering "enterprise." As the Grand Jury charged, members of the SNM are expected to preserve, protect, and promote the reputation of the SNM through any means necessary, including murder. Superseding Indictment at 7. Sufficient evidence exists to prove Defendants murdered A.B. at the behest of the SNM.

Based on the actual scope of trial, Defendants offer no factual basis for the Court to determine that the jury will not have "a reasonable chance of understanding and acting upon

instructions from the court" in this case. Motion to Sever at 14 (quoting *Gallo*, 668 F. Supp. at 752). Indeed, courts routinely have found that juries can *and do* follow jury instructions in complex RICO and VICAR cases, and that jury instructions are an effective mechanism for granting relief where prejudice may arise. *See*, *e.g.*, *United States v. Giampa*, 904 F. Supp. 235 (D.N.J. 1995) (finding no "spillover effect" where jury followed jury instructions to consider evidence against each defendant in a multi-defendant indictment alleging 51 counts of various RICO violations); *United States v. Cervone*, 907 F.2d 332 (2d Cir. 1990) (finding jury instructions were sufficient to avoid prejudice in a RICO case charging 18 defendants with numerous racketeering offenses); *United States v. DiNome*, 954 F.2d 839 (2d Cir. 1992) (finding careful instructions by the trial judge, an outline of the elements of the offenses charged, numerous requests for feedback, and the length of deliberations reinforced the court's conclusion that the jury comprehended a RICO case involving nine defendants charged with numerous racketeering offenses).

Additionally, this Court specifically has recognized that it is the "gatekeeper under the Rules of Evidence," and frequently uses limiting instructions to prevent the jury from using evidence for an improper purpose. *United States v. Ballou*, 59 F. Supp. 3d 1038, 1049 (D.N.M. 2014) (Browning, J.) (quoting *United States v. Jordan,* 485 F.3d 1214, 1218 (10th Cir. 2007)). *See, e.g.*, *United States v. Sandoval*, 410 F. Supp. 2d 1071 (D.N.M. 2005) (Browning, J.) ("the Court will give a limiting jury instruction concerning the evidence, minimizing the risk that the evidence will contribute to an improperly-based jury verdict."); *Bhandari v. VHA Sw. Cmty. Health Corp.*, 778 F. Supp. 2d 1155, 1172 (D.N.M. 2011) (Browning, J.) ("the Court does not believe that, with the proper limiting instructions, the jury will attribute evidence that Abalos challenged another physician to a fight to the Defendants' decision to terminate R. Bhandari."); *United States v. Rodella*, No. CR 14-2783 JB, 2014 WL 6911573, at *18 (D.N.M. Sept. 21, 2014) (Browning,

J.) ("Additionally, providing a limiting instruction, pursuant to rule 105, if requested by Rodella, will further rein in the jury and prevent it from using the evidence for an improper purpose.").

Finally, to the extent that Defendants will suffer prejudice from evidence admitted against co-Defendants, both the Supreme Court and the Tenth Circuit routinely have rejected defendants' complaints of prejudicial spillover effect where limiting instructions may minimize the risk of undue prejudice. *See Zafiro*, 506 U.S. at 539 (limiting instructions often will suffice to cure any risk of prejudice); *United States v. Lane*, 883 F.2d 1484 (10th Cir. 1989) ("As a general rule, we presume that juries follow [limiting] instructions."); *United States v. Jones*, 530 F.3d 1292 (10th Cir. 2008) (mere allegations that evidence against one defendant would have a "spillover effect" against another defendant does not demonstrate prejudice (internal quotations omitted)).

Because Defendants rely on assertions of prejudice generally, and do not point out specific and compelling prejudice, Defendants fail to uphold their burden of showing that the jury would be prevented from making a reliable judgment about guilt or innocence. *See United States v. Smith*, 788 F.2d 663, 668 (10th Cir. 1986). Accordingly, the Court should deny Defendants' Motion to Sever on these grounds.

ii.    *No serious risk that joinder will compromise Sixth Amendment trial rights*

Defendants contend that joinder of Counts 4 and 5 places Defendants' Sixth Amendment trial rights at risk. In support of this claim, Defendants assert: (1) voir dire and cross-examination would be impossible without making physical modifications to the courtroom; (2) depending on where Defendants are seated, Defendants will be excluded from important bench conferences with counsel; and (3) if the courtroom is too full, people will not be seated and the Defendants will risk losing their right to a public trial. These arguments are speculative and unpersuasive.

As previously established, Defendants' contention is based upon an inflated estimate of Defendants actually proceeding to trial. Given the number of Defendants who have pled, and those likely to plead, the number of actual Defendants at trial will not result in the type of environment Defendants predict. Accordingly, Defendants assertions are without merit.

Moreover,  in *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1987), the Ninth Circuit held that, to show that prejudice is "of such a magnitude that the defendant was denied a fair trial," a party "must show [a] violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant." The Ninth Circuit added: "Clearly, this is not an easy burden to meet." *Id.*

Although Defendants envision a courtroom overfilled with "30-60 defendants and their lawyers sitting in a courtroom," Motion to Sever at 17, Defendants fail to establish that joinder would *deny* Defendants the rights that the Sixth Amendment hold crucial such as, the Constitutional right to cross-examination, opportunity to present an individual defense, right to confront witnesses against them, right to counsel, or right to properly instruct the jury on the admissibility of evidence as to each defendant. The hearings have worked fine thus far, and there is no reason to believe that will change. The rights that Defendants assert may be infringed are not of the same magnitude. Because Defendants offer no sound basis for the Court to determine that a joint trial would compromise Defendants' specific trial rights, the Court should dismiss Defendants Motion to Sever on these grounds.

*iii.     No serious risk joinder will compromise Defendants' Fifth Amendment rights*

Defendants also contend that severance is necessary to protect the Defendants' respective rights to a fair trial under the Fifth Amendment. Motion to Sever at 23. Defendants assert that "the fact that the defendants have been charged with VICAR offenses cannot overcome [Defendants'] right to a fair trial." *Id.* at 27-28. Not only do Defendants fail to specify how joinder would compromise their right to a fair trial, they fail to acknowledge that, given the nature of the VICAR charges in Counts 4 and 5, severance would not cure the prejudice they contend may exist.

The essence of Defendants' claim is that "the complexity of a large multi co-defendant racketeering case almost demands severance . . . ." Motion to Sever at 23-24. Defendants rely heavily on *United States v. Butler*, 494 F.2d 1246 (10th Cir. 1974) to argue that a fair trial would be impossible here if they are tried alongside their fellow SNM Defendants. But their entire argument for severance based on this purported prejudice is belied by what they admit -- but classify as a "wrinkle" with *Butler*'s application to this VICAR case -- that "the crimes charged in counts 4 and 5 are alleged to have been committed in aid of racketeering activity." Motion to Sever at 23. That the crimes charged in Counts 4 and 5 are VICAR crimes, as opposed to simple conspiracies to embezzle or convert government property, *see* Motion to Sever at 26 (citing *Butler*), is not a wrinkle; it is the reason that the charges in the Superseding Indictment are properly joined. And it is the reason that severance will not alleviate the purported prejudice on which Defendants rely for severance.

Unlike in *Butler* and the other cases on which Defendants rely, the United States here must prove not only that Defendants conspired to murder A.B. and murdered A.B., the United States must additionally prove that SNM is a criminal enterprise that engaged in racketeering activity, and that the Defendants conspired to and murdered A.B. to receive pecuniary value from SNM or

to gain entry to, or to maintain or increase position in, SNM. *See* 18 U.S.C. § 1959; *United States v. Smith*, 413 F.3d 1253, 1277 (10th Cir. 2005).

Now, Defendants complain throughout their Motion to Sever that the United States is somehow improperly using the VICAR statute to back-door evidence that is "likely inadmissible," Motion to Sever at 18, or to join Defendants or crimes that shouldn't really be joined together. Motion to Sever at 10-11. These complaints lack a sounds basis in law and fact here for two paramount reasons. First, VICAR is a properly enacted statute that Congress saw fit to enact to prevent the exact activity alleged in the Superseding Indictment: violent crimes such as murders perpetrated by individuals who join in a racketeering enterprise such as SNM. Second, by charging this murder and conspiracy to murder as VICAR violations, the United States placed additional burdens on itself: to prove that the SNM is an enterprise, engages in racketeering activities, and that this murder and conspiracy to murder were committed by the Defendants to receive pecuniary value from SNM or to gain entry to, or to maintain or increase position in, SNM. To the extent that Defendants complain about the additional evidence that's admissible in a VICAR case such as this, they conveniently omit from their Motion to Sever that they receive a huge benefit: if the United States fails to prove any one of these additional elements beyond a reasonable doubt, they will be found not guilty of the VICAR crimes with which they're charged.

Because *Butler* does not support Defendants' contention that their Fifth Amendment trial right is prejudiced by joinder, Defendants are left with one final contention: Large multi-defendant racketeering cases virtually always impair a defendant's right to a fair trial under the Fifth Amendment. *See* Motion to Sever at 24. This claim is particularly alarming, because it invites the Court to accept as a general proposition that joinder of offenses in RICO and VICAR cases necessarily imports unconstitutional prejudice. Accepting this premise entails that joinder in these

cases is almost never proper. That cannot be right. For this reason as well, Defendants fail to demonstrate that their specific Fifth Amendment trial right would be prejudiced by joinder in this case. Accordingly, the Court should deny Defendants' Motion to Sever.

## C. Severance does not best serve the interests of the Court or jury

Finally, as Defendants assert, only if the Court finds Defendants have satisfied the first two prongs of the severance analysis, then may the trial court exercise its discretion and weigh the prejudice to a particular defendant caused by joinder against the important considerations of economy and expedition in judicial administration. *See* Motion to Sever at 11-12.

Defendants claim that severance of Counts 4 and 5 "would best serve the interest of the Court and the jury" by (1) permitting the Court greater flexibility in scheduling matters; (2) facilitating jury selection for fewer defendants; and (3) relieving jury members of jury service for "inordinate stretches of time." Motion to Sever at 15. The benefits proposed by Defendants overlook the additional expense of time and judicial resources incurred by severance.

First, severance is not in the best interests of the Court, because it will require the court to undergo the same trial process on multiple occasions. Defendants treat Counts 4 and 5 as unrelated to the charges brought against the other Defendants, ignoring the fact that these charges are part and parcel of the SNM's larger racketeering activities and enterprise. The United States is required to produce evidence to prove that Counts 4 and 5 were committed by Defendants who were members or associates of the SNM, and that the alleged racketeering offenses were carried out by Defendants on behalf of the gang. *Boyle*, 556 U.S. at 938; *Old Chief*, 519 U.S. at 189.

Severance duplicates the Court's administration of trial matters such as scheduling, jury selection, and other evidentiary issues that the United States relies upon to prove the necessary elements of the VICAR conspiracy. Judicial resources are instead better served by requiring one

trial by one jury reviewing one body of evidence. *See United States v. Gould*, No. CR 03-2274 JB, 2007 WL 1302587, at *1 (D.N.M. Apr. 6, 2007) (Browning, J.) ("Joint trials of defendants who are indicted together are preferred because they promote efficiency and serve the interests of justice . . . .").

Next, joinder of Defendants does not impose an unbearable weight on individual jury members. Again, of the Defendants charged in the Superseding Indictment, as in most criminal cases, only a fraction will proceed to trial. However improbable it may be that all remaining Defendants proceed to trial, as pointed out earlier, juries are capable of handling complex litigation. Accordingly, the length of this trial will not be so long as to countervail the "'preference in the federal system for joint trials of defendants who are indicted together.'" *United States v. Baca*, No. CR 16-1613 JB, Mem'm Opinion & Order, at 43 (D.N.M. Oct. 20, 2016) (Browning, J.) (quoting *Zafiro*, 506 U.S. at 537).

## CONCLUSION

Defendants' Motion to Sever fails to offer a sufficient legal or factual basis to support their claim for severance of Counts 4 and 5 in this case. Regarding Defendants' claim that joinder is improper under Rule 8(b), Defendants provide no basis for the Court to determine that Defendants do not share a common thread with each of the co-Defendants charged in this case. Regarding Defendants' claim that severance should be granted, Defendants fail to uphold their burden of showing real prejudice on which the Court can afford relief. Accordingly, Defendants fail to satisfy their own severance inquiry. The United States respectfully requests the Court deny Defendants' Motion to Sever.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

***Electronically filed on 2/28/2017***
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
555 S. Telshor Blvd., Suite 300
Las Cruces, NM  88011
(575) 522-2304

I HEREBY CERTIFY that the foregoing
Response was served this 28th day of
February, 2017, by email to all counsel of
record in this matter.

/s/_____
MARIA Y. ARMIJO
Assistant United States Attorney

23