IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,      )
                                )
            Plaintiff,      )   CRIMINAL NO. 15-4268 JB
                                )               16-1613 JB
     vs.                 )
                                )
**ANGEL DELEON, et al.,**       )
**ANTHONY RAY BACA, et al.,**   )
                                )
          Defendants.    )

### THE UNITED STATES' SUPPLEMENTAL BRIEF REGARDING TIMING OF DISCLOSURE OF *GIGLIO* IMPEACHMENT EVIDENCE

At the Omnibus Motions hearing in these matters on May 9-11, 2017, the Court ordered the United States to disclose, under *Giglio v. United* States, 405 U.S. 150 (1972), impeachment evidence immediately. The Court concluded that timing of disclosure under *Giglio* is identical to that for *Brady v. Maryland*, 373 U.S. 83 (1963). But the Supreme Court of the United States in *United States v. Ruiz*, 536 U.S. 622, 629 (2002) and the United States Court of Appeals for the Tenth Circuit in its decisions applying *Ruiz* support the United States' position that Constitutional concerns differ in relation to the timing of disclosure of *Giglio* impeachment evidence and disclosure of *Brady* exculpatory materials.

The United States raised this difference with the Court at the May 2017 hearings and noted that it would submit additional briefing regarding the timing of *Giglio* material disclosures. The Supreme Court and Tenth Circuit authorities, decisions from this Federal District and from this Court, and the particular circumstances of this prosecution of the SNM counsel the Court to delay requiring the United States to disclose *Giglio* impeachment evidence until 14 days before each trial.

## <u>AUTHORITIES AND ARGUMENT</u>

This Court recognized that the Supreme Court held that the Constitution does not require "'preguilty plea disclosure of impeachment information.'" *United States v. DeLeon*, No. CR 15-4268 JB, Mem'm Opinion and Order [Doc. 907] at 60 (D.N.M. Feb. 8, 2017) (Browning, J.) ("MOO") (quoting *United States v. Ruiz*, 536 U.S. 622, 629 (2002) ("We must decide whether the Constitution requires the preguilty plea disclosure of impeachment information. We conclude that it does not.")). The Supreme Court reached this conclusion based on the notion that "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is voluntary." *Ruiz*, 536 U.S. at 629 (emphasis in original). *See* MOO at 60 (quoting the same).

The United States Court of Appeals for the Tenth Circuit pointed out that the Supreme Court in *Ruiz* "explained that impeachment evidence differs from exculpatory evidence in that it is not 'critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant.'" *United States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005) (unpublished) (quoting *Ruiz*, 536 U.S. at 630). In *Ohiri*, the Tenth Circuit reversed the district court's denial of the § 2255 motion, because the defendant alleged that the United States withheld *Brady*-type exculpatory evidence before he pleaded guilty. *See id.* ("[T]he evidence withheld by the prosecution in this case is alleged to be exculpatory, and not just impeachment, evidence."). In reversing the district court, the Tenth Circuit's distinction of the facts from those in *Ruiz* suggest that the timing of disclosure of *Giglio* impeachment evidence and *Brady* exculpatory evidence differs in that *Brady* exculpatory evidence must be disclosed earlier than *Giglio* evidence:

> By holding in *Ruiz* that the government committed no due process violation by requiring a defendant to waive her right to impeachment evidence before indictment in order to accept a fast-track plea, the Supreme Court did not imply that the government may avoid the consequence of a *Brady* violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession.

*Ohiri*, 133 F. App'x at 562.

And this Court has recognized the Tenth Circuit's distinction in its treatment of *Brady* exculpatory evidence and *Giglio* impeachment evidence. *See* MOO at 61-62 ("The Tenth Circuit has held, however, that *United States v. Ruiz* does not apply to exculpatory evidence, but rather applies only to impeachment evidence . . . ."); *United States v. Baca*, No. CR 16-1613 JB, 2016 WL 6404772, at *27 (D.N.M. Oct. 20, 2016) (Browning, J.) (same).

The United States District Court for the District of New Mexico has recognized that the distinction between timing of disclosure of *Giglio* impeachment evidence and *Brady* exculpatory evidence finds support on two recognized grounds: (i) the use to which such information will be put; and (ii) the safety concerns of government witnesses.

The Honorable Robert C. Brack, United States District Judge for the District of New Mexico, pointed out that both of these grounds play into "[t]he precise time at which *Brady* or *Giglio* evidence must be disclosed." *United States v. Lujan*, 530 F. Supp. 2d 1224, 1255 (D.N.M. 2008) (Brack, J.). In relation to the use to which the information will be put, Judge Brack explained that the necessary investigation for *Brady* exculpatory evidence provides the rationale for disclosure of such exculpatory information "well before pure *Giglio* impeachment evidence, which usually does not require substantial time to prepare for its effective use at trial." *Id.* (citing *United States v. Beckford*, 962 F. Supp. 780, 788-89 (E.D. Va. 1997)). Second, in relation to the safety concerns of government witnesses that inheres in disclosure of *Giglio* impeachment

evidence, Judge Brack recognized that "[d]isclosure of *Giglio* material often identifies the witnesses to whom the material relates, and therefore, the court must take into account the risk to witnesses in early disclosure of *Giglio* evidence." *Id.* at 1256. *See also Beckford*, 962 F. Supp. at 794 ("[P]remature, *wholesale* disclosure of witness statements, even those containing exculpatory or impeachment information, would vitiate an important function of the *Jencks* Act - - the protection of Government witness from influence, threats, harassment, and physical harm." (citing, among others, *United States v. Presser*, 844 F. 2d 1275, 1285 (6th Cir. 1988); *United States v. Thevis*, 84 F.R.D. 47, 53 (N.D. Ga. 1979); *United States v. Stroop*, 121 F.R.D. 269, 275 (E.D.N.C. 1988))).

The Court indicated that it is inclined to agree with the Honorable Richard Paul Matsch, then-Chief United States District Judge for the District of Colorado, who concluded in *United States v. McVeigh*, 923 F. Supp. 1310, 1315-16 (D. Colo. 1996), that "*Brady* obligations are not altered or modified by the fact that the information is contained in witness statements or grand jury testimony." But Judge Matsch reached his conclusion in that case almost 20 years before the Supreme Court in *Ruiz* distinguished the required preguilty plea disclosure of *Brady* information from the required later disclosure of *Giglio* impeachment information based on the concept that "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is voluntary." *Ruiz*, 536 U.S. at 629. Likewise, Judge Matsch didn't have the Tenth Circuit's decision in *Ohiri*, in which "[t]he Tenth Circuit . . . held . . . that *United States v. Ruiz* does not apply to exculpatory evidence, but rather applies only to impeachment evidence . . . ." MOO at 61-62.

Judge Matsch also wasn't presented in *McVeigh* with the circumstances in these SNM cases, that present the prosecution of an ongoing criminal enterprise that operates by murdering

4

and assaulting persons not in good stead with the SNM, including persons believed to be

cooperating with law enforcement. *Cf., e.g.*, Second Superseding Indictment Counts 13-16, at

16-18.

"It is an open question in this circuit, and there is a conflict among the circuits, as to the

timing of disclosure of witness statements subject to the Jencks Act that also meet the *Brady*

criteria." *Lujan*, 530 F. Supp. 2d at 1256 (citing *McVeigh*, 923 F. Supp. at 1414 n.11, 1416). The

United States Court of Appeals for the D.C. Circuit, faced with the same question, concluded

that a balancing approach was the proper analysis for disclosure's timing:

> [A]pplication of a strict rule in this area would inevitably produce some situations
> in which late disclosure would emasculate the effects of Brady or other situations
> in which premature disclosure would unnecessarily encourage those dangers that
> militate against extensive discovery in criminal cases, e.g. potential for
> manufacture of defense evidence or bribing of witnesses. Courts can do little
> more in determining the proper timing for disclosure than balance in each case the
> potential dangers of early discovery against the need that Brady purports to serve
> of avoiding wrongful convictions.

*United States v. Pollack*, 534 F.2d 964, 973-74 (D.C. Cir. 1976). That balancing approach

is effectively the same approach that Judge Brack endorsed in *Lujan*. That balancing

approach is consistent with this Court's recognition that the Tenth Circuit held that the

required timing of disclosure of *Brady* exculpatory evidence precedes that of *Giglio*

impeachment information. And that approach is the approach that the Court should take

in these SNM cases.

The specific circumstances in this litigation present a situation in which disclosure of

*Giglio* impeachment information will disclose the identities of government witnesses, which

automatically puts those witnesses' lives in imminent danger. This reality, the Supreme Court

and other Federal Courts recognize, is one of the main purposes underlying the late disclosure of

5

Jencks materials for which the Jencks Act provides. The Court should therefore not require the United States to produce immediately *Giglio* impeachment evidence, but should delay production until 14 days before trial.

Delaying production of the *Giglio* impeachment evidence (but not Brady/actual innocence evidence) will strike a balance between the Defendants' constitutional right to impeachment evidence under *Brady*. As Judge Brack and other courts recognize, these impeachment evidence -- as opposed to exculpatory materials -- are basically useful once they're obtained by the defense. Of course, the prosecution does not know exactly how the defense will use any impeachment information disclosed to them. On the other hand, one can apply logic to reasonably determine what cross examination might occur. *See, e.g.*, the following appellate court's evaluation of what the defense's impeachment might have been in *United States v. Jordan*, 316 F.3d 1215, 1257 n.90 (11th Cir. 2003): "Implicit in the court's decision to strike Fields' testimony is the notion that the Government's failure to disclose the allegedly impeaching materials - Dupuis' internal communications and his grand jury testimony, and the notes and summaries made by those who interviewed Fields before he appeared before the grand jury - deprived counsel of *Giglio* impeaching material so late in the game that counsel could not prepare to cross-examine Fields effectively.. . . [T]he only way in which defense counsel could have used the materials would be to ask Fields whether, at a given point in time, he told Dupuis (or the other persons who interviewed him) this or that. If Fields denied telling Dupuis this or that, the defense could call Dupuis as a witness and attempt to elicit the inconsistent (and presumably impeaching) statement." The United States respectfully requests the Court to note that, even though the *Jordan* case did not involve issues of when the potentially impeaching information was disclosed, it is an example of a commonsense approach to determining what

6

impeachment might follow once disclosure has occurred, and the legal impact thereof. Using that approach here, one can be confident that it is reasonable to determine that, if and when the defense is advised of the amount of money paid to particular confidential informants, the defense can look at the amount of money paid to those confidential informants, and simply read those numbers back during cross-examination. Similarly, the defense can look at the NCIC summary report for the United States' witnesses, and quickly derive from that report a list of potential cross-examination questions to attack those witnesses' credibility. Or, the defense can read over a plea agreement or plea agreement addendum and very quickly be prepared to impeach the witness with the fact that the witness is testifying because the witness made a deal with the government. Likewise, the defense can look at an FBI 302 that contains a former co-Defendant's statement in connection with his guilty plea, and easily show where that statement differs from other statements made by that now-cooperating former co-defendant. *See United States v. Shifflett, 798 F.Supp. 354, 355-56 (W.D. Va. 1992)*. Approaching the timing of *Giglio* disclosure in this fashion is consistent with the Supreme Court's and Tenth Circuit's emphasis on the essential role of *Giglio* impeachment information in a *fair trial*, as distinct from *Brady* exculpatory information, which must be disclosed earlier to obtain a voluntary and knowing plea or, if the matter is tried, to use that exculpatory/actual innocence information to ensure a fair trial.

Consistent with the above, the United States respectfully requests that the Court order that the United States disclose *Giglio* impeachment information 14 days before trial.

## **CONCLUSION**

United States Supreme Court precedent, Tenth Circuit precedent, and precedent from this District and this Court support differentiating and delaying the timing of disclosure of *Giglio*

7

impeachment evidence from that of *Brady* exculpatory evidence. The circumstances of these SNM cases also support differentiating and delaying the *Giglio* disclosure. The United States respectfully requests that this Court delay such productions in these cases until 14 days before each trial.

Respectfully submitted,

JAMES D. TIERNEY
Acting United States Attorney

***Electronically filed on 5/18/17***
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
555 S. Telshor Blvd., Suite 300
Las Cruces, NM   88011
(575) 522-2304

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

/s/_____
MATTHEW M. BECK
Assistant United States Attorney