1                 IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF NEW MEXICO

3     UNITED STATES OF AMERICA,

4          Plaintiff,

5          VS.                        CR. NO. 15-4268 JB
                                              15-4269 JB
6     ANGEL DELEON, et al.,                   15-4275 JB
                                              16-1613 JB
7          Defendants.

8

9          Transcript of Motion Proceedings before
      The Honorable James O. Browning, United States
10    District Judge, Albuquerque, Bernalillo County,
      New Mexico, commencing on May 9, 2017.

11

12    For the Government:  Ms. Maria Armijo; Mr. Randy
      Castellano; Mr. Matthew Beck

13

      For the Defendants:  Mr. Brock Benjamin; Mr. Richard
14    Sindel; Ms. Cori Harbour-Valdez; Mr. Patrick Burke;
      Mr. Jim Castle; Mr. Robert Cooper; Mr. Roberto
15    Albertorio; Mr. Orlando Mondragon; Mr. Noel Orquiz;
      Mr. Nathan Chambers; Mr. Ben Wilson; Mr. Santiago
16    Hernandez; Mr. Steven Potolsky; Mr. Richard Jewkes;
      Ms. Amy Jacks; Mr. Josh Spencer; Mr. B. J. Crow; Mr.
17    Marc Lowry; Ms. Theresa Duncan; Ms. Amy Sirignano;
      Mr. Christopher Adams; Mr. Michael Davis; Mr. Ryan
18    Villa; Ms. Justine Fox-Young; Mr. Donovan Roberts;
      Ms. Erlinda Johnson; Ms. Angela Arellanes; Mr. Samuel
19    Winder; Mr. Wayne Baker; Ms. Callie Dixon; Mr. Don
      Kochersberger; Ms. Susan Burgess-Farrell; Mr. Diego
20    Esquibel; Mr. Marc Grano; Mr. Ahmad Assed; Mr.
      Gregory Acton; Ms. Marcia Morrissey

21

22    For the Defendants (Via telephone):  Ms. Carey
      Bhalla

23

24

25


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Good morning everyone.  I

2    appreciate everyone making themselves available to me

3    this morning.

4          All right.  For the DeLeon defendants,

5    welcome.  This is the first time you've been in this

6    courtroom.  So we will probably try the cases in

7    here.  So it's good to be at numbers that we can

8    begin to fit in here.  And as y'all know, you're not

9    in black boxes today.  So I hope that's appreciated.

10   And I think it's partly -- you can thank the marshals

11   for that.  They feel like you've been pretty good.

12   And I appreciate that, and they do, too.  And I hope

13   that will make it more comfortable for you over the

14   next three days.  So let's keep working together,

15   okay?

16         All right.  Let me call the case today, and

17   I'm going to call all four cases together, and that

18   way, the counsel only need to enter their appearances

19   once.  So I'll start with United States of America

20   versus Angel DeLeon, Criminal Matter No. 15-4268 JB;

21   United States of America versus Mauricio Varela,

22   Criminal Matter No. 15-4269 JB; United States of

23   America versus Christopher Garcia, Criminal Matter

24   No. 15-4275 JB; and United States of America versus

25   Anthony Ray Baca, Criminal Matter No. 16-1613 JB.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                 So let's start with the Government.  Do you
 2     wish to enter appearances?
 3                 MS. ARMIJO:  Good morning, Your Honor.
 4     Maria Armijo, Randy Castellano, and Matthew Beck on
 5     behalf of the United States.
 6                 THE COURT:  Ms. Armijo, Mr. Castellano, Mr.
 7     Beck, good morning to you.
 8                 And let's start -- get my list here.  All
 9     right.  Let's start with Defendant Joe Lawrence
10     Gallegos.
11                 MR. BENJAMIN:  Good morning, Your Honor.
12     Brock Benjamin and Mr. Richard Sindel on behalf of
13     Mr. Gallegos.
14                 THE COURT:  Mr. Benjamin, Mr. Sindel, Mr.
15     Gallegos, good morning to you.
16                 THE DEFENDANT:  Good morning.
17                 THE COURT:  And for Defendant Edward Troup?
18                 MS. HARBOUR-VALDEZ:  Good morning, Your
19     Honor.  Cori Harbour-Valdez and Patrick Burke on
20     behalf of Edward Troup.
21                 THE COURT:  All right.  Ms. Harbour-Valdez,
22     Mr. Burke, and Mr. Troup, good morning to you.
23                 THE DEFENDANT:  Good morning, sir.
24                 THE COURT:  And for Defendant Billy Garcia?
25                 MR. COOPER:  Good morning, Your Honor.  Bob
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Cooper and Jim Castle on behalf of Billy Garcia.
 2            THE COURT:  Mr. Cooper, Mr. Castle,
 3   Mr. Garcia, good morning to you.
 4            THE DEFENDANT:  Good morning.
 5            THE COURT:  And standing in for -- well,
 6   present for Defendant Allen Patterson?
 7            MR. ALBERTORIO:  Good morning, Your Honor.
 8   Roberto Albertorio, standing in for Mr. Lahann
 9   representing Mr. Patterson, who is present.
10            THE COURT:  Mr. Albertorio, good morning to
11   you.  Mr. Patterson, good morning to you.
12   Mr. Patterson, you understand that Mr. Albertorio is
13   standing in for Mr. Lahann?
14            THE DEFENDANT:  Yes, sir.
15            THE COURT:  Is that okay with you?
16            THE DEFENDANT:  Yes, Your Honor.
17            THE COURT:  Thank you, Mr. Patterson.
18            All right.  And for Defendant Christopher
19   Chavez?
20            MR. MONDRAGON:  Good morning, Your Honor.
21   Orlando Mondragon on behalf of Christopher Chavez.
22            THE COURT:  Mr. Mondragon, Mr. Chavez, good
23   morning to you.
24            And for Defendant Javier Alonso?
25            MR. ORQUIZ:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Noel Orquiz and Nathan Chambers.  We're here on

 2   behalf of Javier Alonso.

 3            THE COURT:  All right.  Mr. Orquiz, Mr.

 4   Chambers, and Mr. Alonso, good morning to you.

 5            All right.  And for Defendant Arturo

 6   Arnulfo Garcia?

 7            MR. WILSON:  Good morning, Your Honor.  Ben

 8   Wilson, standing in for Billy Blackburn, on behalf of

 9   Mr. Garcia.

10            THE COURT:  All right.  Mr. Wilson, good

11   morning to you.  And Mr. Garcia, good morning to you.

12            THE DEFENDANT:  Good morning.

13            THE COURT:  And Mr. Garcia, you understand

14   that Mr. Wilson is standing in for Billy Blackburn

15   and Scott Davidson?

16            THE DEFENDANT:  Yes.

17            THE COURT:  And that's all right with you?

18            THE DEFENDANT:  That's fine.

19            THE COURT:  All right.  Thank you,

20   Mr. Garcia, Mr. Wilson.

21            All right.  And Defendant Mario Rodriguez?

22            MR. HERNANDEZ:  Good morning, Your Honor.

23   Santiago Hernandez and Steve Potolsky on behalf of

24   Mr. Rodriguez.

25            THE COURT:  All right.  Mr. Hernandez,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Mr. Potolsky, good morning to you.  And Mr.

2   Rodriguez, good morning to you.

3           THE DEFENDANT:  Good morning, Your Honor.

4           THE COURT:  All right.  And for Defendant

5   Mauricio Varela?

6           MR. SPENCER:  Good morning, Your Honor.

7   Josh Spencer, standing in for Joe Spencer and Mary

8   Stillinger, on behalf of Mauricio Varela.

9           THE COURT:  All right.  Mr. Spencer, good

10   morning to you.  Mr. Varela, good morning to you.

11           THE DEFENDANT:  Good morning.

12           THE COURT:  And Mr. Varela, you understand

13   that Josh Spencer is standing in for Joe Spencer and

14   Margaret Strickland (sic).

15           THE DEFENDANT:  Yes.

16           THE COURT:  That's all right with you, Mr.

17   Varela?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  And for Defendant Daniel

20   Sanchez?

21           MR. JEWKES:  Good morning, Your Honor.  Amy

22   Jacks and Richard Jewkes representing Daniel Sanchez,

23   present before the Court and ready to proceed.

24           THE COURT:  All right.  Mr. Jewkes, good

25   morning to you.  Ms. Jacks, good morning to you.  Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Sanchez, good morning to you.

 2            All right.  And for Defendant Conrad

 3    Villegas?

 4            MR. CROW:  Good morning, Your Honor.  B.J.

 5    Crow for Mr. Villegas, who is present.

 6            THE COURT:  All right.  Mr. Crow, Mr.

 7    Villegas, good morning to you.

 8            MR. CROW:  Good morning, Your Honor.

 9            THE COURT:  And for Defendant Anthony Ray

10    Baca?

11            MR. LOWRY:  Good morning, Your Honor.  Marc

12    Lowry and Theresa Duncan on behalf of Anthony Ray

13    Baca, who is present in the courtroom, Your Honor.

14            THE COURT:  All right.  Mr. Lowry, Ms.

15    Duncan, and Mr. Baca, good morning to you.

16            THE DEFENDANT:  Good morning, Your Honor.

17            THE COURT:  And for Defendant Christopher

18    Garcia?

19            MS. SIRIGNANO:  Good morning, Your Honor.

20    Amy Sirignano and Christopher Adams on behalf of

21    Christopher Garcia.

22            THE COURT:  All right.  Ms. Sirignano,

23    Mr. Adams, Mr. Garcia, good morning to you.

24            And let's see, for Defendant Carlos

25    Herrera.  I may have a telephone -- there we are.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. DAVIS:  Good morning, Judge.  Michael
 2    Davis and Carey Bhalla on behalf of Mr. Herrera.  Ms.
 3    Bhalla is appearing telephonically.
 4              THE COURT:  All right.  Mr. Davis.  Ms.
 5    Bhalla, are you there?
 6              MS. BHALLA:  Sorry, Your Honor.  Yes, I'm
 7    here.
 8              THE COURT:  All right.  That mute button
 9    gets us from time to time.
10              MS. BHALLA:  Exactly.
11              THE COURT:  All right.  Good morning to
12    you.  Mr. Herrera, good morning to you.
13              All right.  And for Defendant Rudy Perez?
14              MR. VILLA:  Good morning, Your Honor.  Ryan
15    Villa and Justine Fox-Young on behalf of Mr. Perez,
16    who is present.
17              THE COURT:  All right.  Mr. Villa, Ms.
18    Fox-Young, Mr. Perez, good morning to you.
19              THE DEFENDANT:  Good morning.
20              THE COURT:  And for the Defendant Andrew
21    Gallegos?
22              MR. ROBERTS:  Good morning, Your Honor.
23    Donovan Roberts on behalf of Andrew Gallegos, who is
24    present.
25              THE COURT:  All right.  Mr. Roberts, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Gallegos, good morning to you.
 2              THE DEFENDANT:  Good morning.
 3              THE COURT:  For Defendant Santos Gonzalez?
 4              MS. JOHNSON:  Good morning, Your Honor.
 5    Erlinda Johnson on behalf of Santos Gonzalez, who is
 6    present before the Court.
 7              THE COURT:  All right.  Ms. Johnson, Mr.
 8    Gonzalez, good morning to you.
 9              And for Defendant Shauna Gutierrez?
10              MS. ARELLANES:  Angela Arellanes, appearing
11    for Shauna Gutierrez, who appears in person.
12              THE COURT:  All right.  Ms. Arellanes, Ms.
13    Gutierrez, good morning to you.
14              And for Defendant Brandy Rodriguez?
15              MR. WINDER:  Good morning, Your Honor.
16    Samuel Winder on behalf of Brandy Rodriguez, standing
17    in on behalf of Alfred Creecy.
18              THE COURT:  All right.  Mr. Winder, good
19    morning to you.  And Ms. Rodriguez, good morning to
20    you.  And Ms. Rodriguez you, understand Mr. Winder is
21    standing in for Alfred Creecy?
22              THE DEFENDANT:  Yes, Your Honor.
23              THE COURT:  And that's all right with you?
24              THE DEFENDANT:  Yes, Your Honor.
25              THE COURT:  Thank you, Ms. Rodriguez.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

```
 1              Let me see.  All right.  And for Defendant
 2    David Calbert?
 3              MR. BAKER:  Good morning, Your Honor.
 4    Wayne Baker on behalf of David Calbert, who is
 5    present.
 6              THE COURT:  All right.  Mr. Baker, good
 7    morning to you.  Mr. Calbert, good morning to you.
 8              All right.  And for Defendant Sergio Loya
 9    Rodriguez?
10              MS. DIXON:  Good morning, Your Honor.
11    Callie Dixon for Mr. Rodriguez, standing in on behalf
12    of Donald Kochersberger.
13              THE COURT:  All right.  Ms. Dixon, good
14    morning to you.  Mr. Rodriguez, good morning to you.
15    Do you understand that Ms. Dixon is standing in for
16    Mr. Kochersberger?
17              THE DEFENDANT:  Yes.
18              THE COURT:  And that's all right with you
19    today?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Thank you, Mr. Rodriguez.
22              And for Defendant Manuel Benito?
23              MS. BURGESS:  Your Honor, Susan
24    Burgess-Farrell, here on behalf of Barry Porter on
25    behalf of Mr. Benito.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Ms. Burgess, good
 2   morning to you.  And Mr. Benito, you understand that
 3   Ms. Burgess is standing in for Mr. Porter?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  And that's all right with you?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  Okay.  Thank you, Mr. Benito.
 8              And for Defendant Vincent Garduno?
 9              MR. ESQUIBEL:  Good morning, Your Honor.
10   Diego Esquibel on behalf of Vincent Garduno, my
11   client, who is to my right.
12              THE COURT:  All right.  Mr. Esquibel, good
13   morning to you.  Mr. Garduno, good morning to you.
14              And for Defendant Mandel Lon Parker?
15              MR. GRANO:  Good morning, Your Honor.  Marc
16   Grano on behalf of Mandel Lon Parker.
17              THE COURT:  All right.  Mr. Grano, good
18   morning to you.  Mr. Parker, good morning to you.
19              THE DEFENDANT:  Good morning.
20              THE COURT:  And for Defendant Daniel
21   Archuleta?
22              MR. ASSED:  Good morning, Your Honor.
23   Ahmad Assed.  I represent Daniel Archuleta.
24              THE COURT:  All right.  Mr. Assed, Mr.
25   Archuleta, good morning to you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And for Defendant Anthony Cordova?
 2              MR. ACTON:  Good morning, Your Honor.
 3   Gregory Acton and Marcia Morrissey on behalf of
 4   Anthony Cordova, who is present.
 5              THE COURT:  All right.  Mr. Cordova, Mr.
 6   Acton, Ms. Morrissey, good morning for you.
 7              Did I miss anybody?  Anybody here that I
 8   didn't call to recognize?  All right.
 9              Let me talk to you a little bit.  I'm going
10   to -- I have about a 51-page opinion started.  It's
11   going to be a little longer -- it's not going to be
12   one of my longest -- but it's in progress.  I didn't
13   get it out.
14              As y'all know, we were getting ready for
15   Mr. Garcia, Christopher Garcia's trial.  And so I've
16   been hearing motions in that and getting opinions out
17   in that.  I hope those are of some guidance to us in
18   this case as well.  But I wasn't able to turn quick
19   enough to get the opinion out on the motion to sever
20   that we heard in February.  But I'm going to give you
21   kind of the guts of that opinion.  I'm not going to
22   give all the background.  Y'all were here for it, and
23   that sort of thing.
24              But let me -- because I think it will set
25   the stage for much of what we're going to be doing
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    over the next three days -- I'm going to grant in
2    part and deny in part the motion to sever.
3             At the February 7, 2017 hearing, the United
4    States agreed -- and I want to be careful, because I
5    don't want to misstate the United States' position --
6    but they agreed that a joint trial with 20 or more
7    defendants would be practically untenable.  Mr.
8    Castellano was the one that I was questioning at the
9    time.  And although it's not a concession, the nature
10   of the United States' agreement was as follows:
11            The Court asked:  "Mr. Castellano, let me
12   ask you a few questions.  Would you agree that it's
13   going to be extremely difficult and probably not a
14   good idea to try a case with 20 defendants?
15            "MR. CASTELLANO:   It may be difficult,
16   Your Honor.  It's not unprecedented.  Even one of the
17   cases cited by the defense, I think, had 23
18   defendants who were not severed.  But I do agree that
19   there could be some logistical problems.
20            "THE COURT:   If we were in agreement on
21   that, that we probably shouldn't be barreling toward
22   a trial with 20 defendants, what's the solution from
23   your standpoint?"
24            Mr. Castellano, said:  "Well, the solution
25   is really how to cut up the pie."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          The Court then requested, if everybody will

2    recall, the United States and the defendants present

3    the Court with different options -- I think that was

4    over the lunch hour -- regarding its determination

5    whether -- their determination -- whether the

6    severance of the superseding indictment in some

7    manner would be proper.  The Court, if you'll recall,

8    thought it might be a little early at that time to

9    grant motions to sever.  There was some movement

10   within the case that I was trying to get some feel

11   for.  And so I initially adopted a "wait and see

12   approach" regarding severance.  But today, we're

13   faced with a July 10, 2017 trial date.  Come

14   tomorrow, we're going to be about two months out from

15   it, and 19 defendant who are still in the case.  So

16   I'm talking about the DeLeon case.  The Court also

17   notes that various other defendants have, to date,

18   moved against the superseding indictment alleging

19   misjoinder under Rule 8 of the Federal Rules of

20   Criminal Procedure, and the prejudicial joinder under

21   Rule 14 of the Federal Rules of Criminal Procedure.

22   And some defendants have also asserted their Speedy

23   Trial Act rights.

24          The superseding indictment charges a total

25   of 30 defendants with 15 counts of various assault,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   conspiracy to murder, murder, and firearms

2   violations, which the United States further alleges

3   are violent crimes in aid of the SNM racketeering

4   conspiracy.  The defendants named in the superseding

5   indictment are not all charged with the same counts

6   or substantive offenses, causing some defendants to

7   face a variable level of criminal exposure in

8   comparison to his or her co-defendants.  The

9   superseding indictment allegations also span a large

10  period of time, with the first alleged murders

11  occurring in 2001.  After considering the superseding

12  indictment, the motion to sever, as well as some of

13  the other defendants' motions related to severance of

14  the superseding indictment, the Court concludes that

15  a joint trial of all 19 defendants would be

16  inappropriate at this time.  The unique complexity of

17  this multi-count superseding indictment, as it now

18  stands, would in the words of Rule 8 render it

19  difficult, if not impossible, for the Court to

20  adequately charge a jury as to the applicable law

21  with respect to each defendant and for the jury to

22  apply the law intelligently in reaching verdicts on

23  the many charges involved.  Further, although Rule 8

24  of the Federal Rules of Criminal Procedure exists to,

25  quote, "enhance the efficiency of the judicial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   system," and although "joint trials conserve state

2   funds, diminish inconvenience to witnesses and public

3   authorities," the Court is convinced that a joint

4   trial for the superseding indictment's charges would

5   in fact not facilitate any of those principles.

6   Accordingly, acting under its authority under Rule 14

7   of the Federal Rules of Criminal Procedure, the Court

8   will sever the superseding indictment at this time in

9   accordance with the United States' proffer at the

10   February 7, 2017, hearing: Count 6 through 12 will be

11   severed from Counts 1 through 5, and 13 through 15 --

12   16.

13           The Court thus grants in part and denies in

14   part the motion to sever.  So the Court's going to

15   sever Counts 6 through 12 from Counts 1 through 5,

16   and 13 through 16.  So it's a grant in part and deny

17   in part of motion to sever.

18           Let's recall what the motion to sever

19   advanced.  It had three main arguments.  The first

20   that Counts 6 and 7 were improperly joined under Rule

21   8(a), as they do not share a sufficient nexus with

22   the other charges to permit joinder; two, that 2014

23   defendants were improperly joined under Rule 8(b), as

24   they are not alleged to have participated in the same

25   act or transaction or in the same series of acts or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    transactions that constitute crimes as the 21 other

2    defendants; and three, should the Court find joinder

3    proper under Rule 8(a) and Rule 8(b), severance is

4    still required under Rule 14 and the Fifth Amendment

5    because a joint trial of the 2014 defendants for

6    Counts 6 and 7 alongside the other 21 defendants and

7    the 13 other counts in the superseding indictment

8    will deprive the 2014 defendants of their right to a

9    fair trial.  That's on page 2 of the motion.

10          Rule 8 provides the standards for joinder

11   of offenses and defendants in criminal cases, (a),

12   "Joinder of Offenses.  The indictment or information

13   may charge a defendant in separate counts with two or

14   more offenses if the offenses charged -- whether

15   felonies or misdemeanors or both -- are of the same

16   or similar character, or are based on the same act or

17   transaction, or are connected with or constitute

18   parts of a common scheme or plan."

19          Then (b) deals with "Joinder of Defendants.

20   The indictment or information may charge two or more

21   defendants if they are alleged to have participated

22   in the same act or transaction, or in the same series

23   of acts or transactions, constituting an offense or

24   offenses.  The defendants may be charged in one or

25   more counts together or separately.  All defendants

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                        Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   need not be charged in each count."

2            Courts construe this rule "broadly" -- and

3   I'm quoting from the Tenth Circuit -- "to allow

4   liberal joinder to enhance the efficiency of the

5   judicial system."  That's United States v. Bagby from

6   the Tenth Circuit.  This approach recognizes that,

7   quote, "joint trials 'conserve state funds, diminish

8   inconvenience to witnesses and public authorities,

9   and avoid delays in bringing those accused of crime

10  to trial.'"  That's United States v. Jones from the

11  Tenth Circuit, but it's quoting United States v. Lane

12  from the Supreme Court in 1986.  "Joint trials of

13  defendants who are indicted together are preferred

14  because 'they promote efficiency and serve the

15  interests of justice by avoiding the scandal and

16  inequity of inconsistent verdicts.'"  That's United

17  States v. Hall from the Tenth Circuit in 2007, but

18  it's quoting Zafiro from the United States Supreme

19  Court in 1993.

20            The Court can, first, summarily conclude

21  that there was not misjoinder of defendants or

22  offenses in this case.  Because the charged offenses

23  are alleged to be violent in aid of racketeering

24  activity, the joined offenses are, quote, "connected

25  with or constitute parts of a common scheme or plan"

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    under Rule 8.  Similarly, Rule 8(b) authorizes

2    joinder of individual defendants in this case,

3    because the defendants, quote, "are alleged to have

4    participated in the same act or transactions

5    constituting an offense or offenses," namely violent

6    crimes in aid of a racketeering enterprise.  That's

7    from Rule 8(b).

8            And the Second Circuit in United States v.

9    Weisman said, if predicate acts could properly be

10   considered part of a "pattern of racketeering

11   activity," we see no reason why they could not

12   similarly constitute part of a "series of acts or

13   transactions constituting an offense" within the

14   meaning of Rule 8(b).  Indeed, a construction of 8(b)

15   that required a closer relationship between

16   transactions than that necessary to establish a

17   "pattern of racketeering activity" under RICO might

18   possibly prohibit joinder in circumstances where

19   Congress clearly envisioned a single trial.  The

20   Court, thus, cannot soundly conclude that the

21   superseding indictment, making VICAR allegations,

22   misjoined either the defendants or their charged

23   offenses.  And I draw comfort from that from the

24   Tenth Circuit case in 2009 of United States v.

25   Caldwell, which required a common thread amongst

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    defendants and offenses to warrant joinder.

2           Even if separate counts or defendants are

3    appropriately joined under Rule 8, where that

4    joinder, quote, "appears to prejudice a defendant or

5    the government," a "court may order separate trials

6    of counts, sever the defendants' trials, or provide

7    any other relief that justice requires."  That is,

8    Rule 14 provides a safety valve for the highly

9    technical and inclusive analysis under Rule 8.  In

10   consideration of Rule 14 severance, the Court has in

11   the past used a three-part test that I outlined in

12   the Gould case -- Mr. Davis is familiar with that --

13   to provide -- to guide its analysis.  First, it must

14   determine whether the defenses presented are so

15   antagonistic that they are mutually exclusive.

16   Second, because mutually antagonistic defenses are

17   not prejudicial per se, a defendant must further show

18   a serious risk that a joint trial would compromise a

19   specific trial right or prevent the jury from making

20   a reliable judgment about guilt or innocence.  And,

21   third, if the first two factors are met, the trial

22   court exercises its discretion and weighs the

23   prejudice to a particular defendant caused by joinder

24   against the obviously important considerations of

25   economy and expedition in judicial administration.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    Those are my standards, but I'm discussing United
 2    States v. Pursley from the Tenth Circuit, a 2007
 3    case, when I arrived at those.  In consideration of
 4    Rule 14, however, the Court has almost unlimited
 5    discretion to determine whether sufficient prejudice
 6    exists to warrant severance.  That's getting that
 7    from the Opper case from the Supreme Court in 1954.
 8    To that point -- and I'm relying largely on Chief
 9    Judge Weinstein's opinion here, where he analyzes the
10    Second Circuit.  He suggested that a defendant "must
11    meet the heavy burden of showing that a joint trial
12    would result in substantial prejudice amounting to a
13    miscarriage of justice."  Here's what he said in
14    United States v. Gallo:  He said, Among the factors
15    the court must consider in determining whether the
16    prejudice of a joint trial rises to the level of a
17    "miscarriage of justice" are the following:  The
18    number of defendants and the number of counts; the
19    complexity of the indictment; the estimated length of
20    the trial; disparities in the amount or type of proof
21    offered against the defendants; disparities in the
22    degree of involvement by defendants in the overall
23    scheme; possible conflict between various defense
24    theories or trial strategies; and especially,
25    prejudice from evidence admitted only against
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    co-defendants but which is inadmissible or excluded

 2    as to a particular defendant."  He noted that "There

 3    are no precise tests applicable to one or a

 4    combination of these factors that can provide a

 5    foolproof resolution under Rule 14."  He then said

 6    the Court must determine whether the jury would be

 7    "reasonably able" to consider the evidence as to each

 8    defendant separately, independent of the evidence

 9    against his or her coconspirators.  Often relied upon

10    is the standard formulated by Judge Weinfeld in

11    United States v. Kahaner, a 1962 case that said the

12    ultimate question is whether, under all the

13    circumstances of the particular case, as a practical

14    matter, it is in the capacity of the jurors to follow

15    the court's admonitory instructions and accordingly

16    to collate and appraise the independent evidence

17    against each defendant solely upon that defendant's

18    own acts, statements, and conduct.  In sum, can the

19    jury keep separate the evidence that is relevant to

20    each defendant and render a fair and impartial

21    verdict as to him?

22            Here, the Court concludes that numerous

23    logistical and mechanical factors suggest that the

24    jury's compartmentalization of the evidence during a

25    joint trial of the 19 defendants might prove to be

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    very difficult or unlikely, and the Court will

2    accordingly sever the superseding indictment.

3            The Court is convinced that a joint trial

4    of 19 defendants at this time could prevent the jury

5    from making a reliable judgment.  The Supreme Court

6    said in Zafiro, when many defendants are tried

7    together in a complex case and they have markedly

8    different degrees of culpability, the risk of

9    prejudice that a joint trial would compromise a

10   specific trial right of one of the defendants or

11   prevent the jury from making a reliable judgment

12   about guilt or innocence is heightened.

13           In United States v. Hack, the Tenth Circuit

14   said, "Neither a mere allegation that defendant would

15   have a better chance of acquittal in a separate

16   trial, nor a complaint of the 'spillover effect' from

17   the evidence that was overwhelming or more damaging

18   against the co-defendant than that against the moving

19   party is sufficient to warrant severance.'"  The risk

20   that a joint trial of defendants at this time will

21   prevent the jury from making a reliable judgment is

22   heightened here, where the superseding indictments

23   charges reflects the fact that the co-defendants have

24   "markedly different degrees of culpability," as the

25   Supreme Court said in Zafiro.  There is a possibility

SANTA FE OFFICE                                                         MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                     1-800-669-9492
                     BEAN                                  e-mail: info@litsupport.com
                     & ASSOCIATES, Inc.
                     PROFESSIONAL COURT
                     REPORTING SERVICE

1   that in a trial of this magnitude, the jury would

2   lump all the defendants together and potentially

3   think of them as a unit, rather than as individuals.

4   Severing the superseding indictment will lessen this

5   risk to an acceptable level by lessening the burden

6   on the jury to compartmentalize the evidence.  As

7   Judge Henderson said back in 1960, in a case that's

8   often quoted in this area, United States v. Moreton:

9   The complex involvement of the various defendants and

10  the multiplicity of charges contained in the

11  defendant would render it difficult, if not

12  impossible, for the court to adequately charge a jury

13  as to the applicable law with respect to each

14  defendant, and for the jury to apply that law

15  intelligently in reaching verdicts on the many

16  charges involved.

17          Compounding the potential ability of the

18  jury to make a relevant judgment for these defendants

19  is the impact that the superseding indictment's

20  complexity will have on judicial resources, given the

21  superseding indictment's inherent logistical and

22  mechanical issues as they relate to a 19-defendant

23  megatrial.  It is primarily for those mechanical and

24  logistical problems which the Court will sever the

25  superseding indictment into what it considers will be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   two smaller trials of less than 10 defendants each.
 2   At present time, the Court has retained nearly all
 3   the lawyers on the capable CJA panel, the complex
 4   panel here in New Mexico, to work for defendants in
 5   this case.  Judge Lamerth on the D.C. Circuit said in
 6   2001, "First, there is hardship on the administrative
 7   structure of the Court, the absence of any 'one
 8   juror, one defendant, one defense attorney, one
 9   prosecutor 'can thwart the progress of the trial.'"
10   If scheduling hearings for all of these defendants to
11   hear pretrial motions is an indicator, the logistical
12   burden of scheduling and facilitating one large trial
13   will be difficult.  The defendants, further, are
14   scattered at facilities across New Mexico, the fifth
15   largest state in the country, which burdens the
16   United States Marshals and other law enforcement
17   involved in prisoner transport.  The Court can
18   envision a scenario in a joint trial of all the
19   defendants where there would be routine delays or
20   postponements just as a result of the logistics.
21   Such delays and postponements, the Court assumes
22   would likely have a negative impact on the jury's
23   task in this case.  Further, the Court has agreed to
24   try this case in Las Cruces, New Mexico inside of a
25   courtroom which is smaller than the courtroom in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    which the Court has held its hearings in Albuquerque.

2    At the pretrial hearings, the Court has been so

3    burdened by the amount of defendants that the

4    defendants have been seated everywhere in the

5    courtroom -- and this has included the jury box,

6    counsel tables, gallery, and even the corner off to

7    the right side of the Court's bench.  And the courts

8    have looked at this and have discussed the capacity

9    and physical limitations of a courthouse in regard to

10   a megatrial for multiple defendants.

11           Indeed, the defendants make an argument

12   which appeals to this problem in a supplemental

13   pleading, which suggests that, "although traditional

14   Rule 8 and Rule 14 considerations are certainly

15   always applicable, cases have been severed in which

16   there is no mention of prejudice to the prosecution

17   or the defendants."  The support for such severance,

18   according to the supplemental pleading, comes from

19   the Court's inherent authority to manage its caseload

20   and to sever in the interests of efficient

21   administration of justice and judicial economy.  Some

22   courts have held -- I'm not basing my opinion on

23   this -- but "Courts have held the inherent authority

24   to manage their docket by severing large groups of

25   defendants into more manageable groups" is basis

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    enough for the Court to do what it's doing today.
 2              Generally, holding a joint trial would
 3    certainly be more convenient for the Court.  It's the
 4    genesis of Rule 8.  The potential prejudice, however,
 5    outweighs this consideration on the facts of this
 6    case as it is presently situated.  The Court,
 7    accordingly, concludes that the interests underlying
 8    its Rule 14 authority counsel severance of the
 9    superseding indictment in some fashion given the
10    logistical and mechanical impossibilities of a
11    19-defendant megatrial.  The United States has
12    suggested two distinct trials, in which the
13    defendants are tried only once for the counts in
14    which they are named.  The Court has reviewed the
15    United States' suggestion, and agrees that their
16    proffered method of severance of the superseding
17    indictment will reduce the potential for prejudice
18    leading the court to conclude that severance of some
19    type under Rule 14 is appropriate.  The Court also
20    notes that in light of the superseding indictment,
21    Count 16 will fit neatly into its calculations
22    regarding severance of the superseding indictment.
23              The breakdown will be as follows: The Court
24    will sever Counts 1 through 5 and 13 through 16 of
25    the superseding indictment for one trial, and include
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    in that grouping the second superseding indictment's
2    additional defendant, Ms. Rodriguez, as well as Count
3    16.  That severed trial would then involve the
4    prosecution of 11 defendants, none of whom are named
5    in Counts 6 through 12.  At the February 7, 2017,
6    hearing, the United States indicated that it
7    anticipated plea deals would lessen the number of
8    defendants to as few as six defendants in that
9    grouping.  In the Court's own estimation it
10   anticipates the number of defendants will fall from
11   11 to 9 by the time of trial.  By severing Counts 1
12   through 5 and 13 through 16 from Counts 6 through 12,
13   the Counts 6 through 12 grouping would involve the
14   prosecution of eight defendants, none of whom are
15   named in Counts 1 through 5 or 13 through 16.  At the
16   February 17, 2017, hearing the United States
17   indicated that it anticipated plea deals would lessen
18   the number of defendants to as few as seven
19   defendants in that grouping.  In the Court's own
20   estimation, it anticipates the number of defendants
21   will fall from eight to five by the time of trial.
22           The Court is thus left with two trial
23   groupings of what it anticipates will be less than 10
24   defendants each.  We talked about this -- I asked
25   Mr. Potolsky to give me a real cite for this.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    didn't uncover in my research any hard and fast
 2    bright line rule.  But the Court's confident that
 3    severing the 19 defendants into two trials of less
 4    than 10 will yield the most effective and manageable
 5    path.  I did a survey which I'll put in the opinion
 6    of cases:  A 2016 case, United States v. Bundy,
 7    severing the indictment charging 17 defendants into
 8    three groups of less than 10 defendants, United
 9    States v. Gray, severing the indictment charging 17
10    defendants in two groups of less than 10 defendants,
11    United States versus Andrews from the Northern
12    District of Illinois considering a 19-defendant
13    indictment, and ordering severance into three groups
14    of less than 10 defendants, Gallo, which we've talked
15    about, considered a 16-defendant indictment severing
16    into five groups with less than 10 defendants.
17            There are some cases that clearly go the
18    other way.  As the United States has pointed out,
19    Cervone, a Second Circuit case, they found jury
20    instructions were sufficient to avoid prejudice in a
21    RICO case charging 18 defendants with numerous
22    racketeering offenses.  The Second Circuit in 1992,
23    in the DiNome case, found careful instructions by the
24    trial judge, an outline of the elements of the
25    offenses charged, numerous requests for feedback and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   length of deliberations reinforced the Court's
 2   conclusion that the jury comprehended a RICO case
 3   involving nine defendants charged with numerous
 4   racketeering offenses.
 5           Therefore, having reviewed and considered
 6   all the relevant pleadings and briefing in connection
 7   with the motion to sever, the Court concludes, the
 8   most logical, efficient, and manageable way to try
 9   this case is to sever the charges in the superseding
10   indictment in this fashion.  By severing Counts 6
11   through 12 from 1 through 5 and 13 through 16, the
12   Court is able to significantly lessen the burden of
13   this complex case on the District of New Mexico, as
14   well as elevate the ability of the jury to make a
15   reliable judgment for defendants.  And in light of
16   the case's expanse and complexity.
17           All right.  Ms. Wild has worked with some
18   of the counsel to come up with a batting order for
19   the hearing today.  So I suggest we go to what I
20   understand to be motion number 1, which is the
21   defendants' motion to continue.  Let me make a few
22   comments, and then I'll hear what anybody would like
23   to say on this motion.  Given the opposition by some
24   of the defendants to it, now given the fact that I've
25   severed the case, now that at least some defendants
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    are going to get a little bit more time just from the
2    mechanics of that being severed, I guess I am not
3    inclined to grant this motion.
4              I can see, however, some circumstances
5    where, now that I have severed the case, perhaps you
6    can work out something with the defendants who are
7    insisting on their Speedy Trial Act rights, and
8    trying to get this thing to trial.  Perhaps you'd be
9    able to work something out with them.  If you can't,
10   though, I'm not inclined to keep this case off the
11   trial docket, but keep it moving.  And if the parties
12   can satisfy the people that are wanting to move this
13   thing forward, then you can reapproach me, and
14   perhaps I'll be receptive to moving the trial off.
15   But at the present time I'm not inclined to grant it,
16   as long as we've got some defendants who are, for
17   their own particular reasons, trying to keep the
18   trial on its present course.
19             All right.  Who is going to speak in
20   support of the defendants' motion to continue?  Do
21   y'all have a champion for this?  All right.  Mr.
22   Villa, are you the champion?
23             MR. VILLA:  Your Honor, it's Mr. Benjamin's
24   motion, but I believe if I could have just 30
25   seconds.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  Take all the time you need.
 2              MR. DAVIS:  Judge, Michael Davis.  One of
 3   the issues that we'd like to have some idea -- and
 4   obviously, it's the Government's prerogative of which
 5   of these two trials go first -- it would be helpful
 6   to have some idea in discussions about the
 7   continuances, which they will choose to go forward
 8   first on.  So I'm not sure what their posture is on
 9   that.  But I thought I'd bring that to the Court's
10   attention.
11              THE COURT:  Mr. Villa is over talking to
12   Mr. Beck.  Mr. Castellano, you've been the one that's
13   been most involved in the severance motion.  Do you
14   want to state your position on that or have thoughts?
15              MR. CASTELLANO:  Yes, Your Honor.
16              THE COURT:  Mr. Castellano.
17              MR. CASTELLANO:  I'm willing to make a
18   proposal at this time.  I know that the defense is
19   asking for a break to discuss it further.  So they
20   may want to have a break after I make my
21   recommendation.
22              My understanding is that in Count 6 through
23   12, the only person opposing the continuance of the
24   trial is Rudy Perez.
25              THE COURT:  Right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  My understanding is now
 2     that he's willing to acquiesce and agree to the
 3     continuance out of that group.  That means what I'll
 4     call the Gallegos groups, which is Counts 1 through 5
 5     and 13 through 16, have one defendant who is opposed
 6     to continuance and is requesting a Speedy Trial.
 7     That's Santos Gonzalez.  So my recommendation would
 8     be the July 10th setting would be the Gallegos group,
 9     Counts 1 through 5 and Counts 13 through 16.
10              THE COURT:  Which are the oldest alleged
11     crimes.  Chronologically, it somewhat fits as well.
12              MR. CASTELLANO:  That's correct, Your
13     Honor.
14              THE COURT:  All right.
15              MR. CASTELLANO:  And there is one person in
16     that group demanding Speedy Trial.  So it would make
17     sense to try that first.  And I think the defense
18     wants a moment to confer.  But that's our
19     recommendation.
20              THE COURT:  All right.
21              MR. ADAMS:  Your Honor, I couldn't hear
22     that.  Could he repeat his --
23              THE COURT:  Well, what his recommendation
24     is, because we got -- in each group we've got
25     somebody that opposes a continuance.  But what I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    understand, and we'll have Mr. Villa and Ms.

2    Fox-Young here in a moment tell us, that I think now

3    they are willing -- Mr. Perez is willing to drop his

4    opposition to the continuance.  So that means that

5    the second group will be continued.  And the first

6    group, which is also the older alleged crimes, would

7    be the first one up for July 10th.

8              Is that fairly stated, Mr. Castellano?

9              MR. ADAMS:  Again, that's older group being

10   Counts 1 through 5 and 13 through 15?

11             THE COURT:  Correct.  So 6 through 12,

12   which is the one that Mr. Villa is involved in; then

13   he would -- that would come later.  He's willing now

14   to agree with a motion to continue.

15             Mr. Villa, do you want to speak on that?

16   Is that your position?

17             MR. VILLA:  That is, Your Honor.  And if

18   you saw our response, we sort of had a halfhearted

19   opposition.  But part of it was --

20             THE COURT:  You're never halfhearted.  I've

21   never seen that.

22             MR. VILLA:  Part of it was the need to have

23   a ruling on severance.  And now that we've got it, I

24   conferred with the Government, and given the work we

25   still need to do -- and I won't address that at

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492



```
 1   length, because Ms. Fox-Young will when we address
 2   our motion to compel -- we're okay with a
 3   continuance.  And so I would leave it to the other
 4   half, 1 through 5 and 13 through 15 to fight out what
 5   they need to do.
 6                THE COURT:  All right.  Thank you, Mr.
 7   Villa.
 8                All right.  I'm going to hear from
 9   everybody.  But let me go ahead and get this much
10   accomplished.  Since we now have no opposition to the
11   continuance of the 6 through 12 trial, I will put the
12   burden on -- who should I put the burden on?  Let's
13   see, Mr. Benjamin, are you in the second group?
14                MR. BENJAMIN:  I am in the Gallegos group,
15   Your Honor, and I'm the author of the motion.  But I
16   would -- based upon the Court's indications and
17   leaning, I'd like to have a couple minutes to
18   reformulate an argument, and talk to Ms. Johnson.
19                THE COURT:  When you say "Gallegos group,"
20   you're talking about --
21                MR. BENJAMIN:  One through 5 and 13 through
22   16.
23                THE COURT:  Let me then put the burden on
24   you, Mr. Castellano.  Why don't the Government
25   prepare the order on the motion to continue the trial
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   for Counts 6 through 12; run it past all the
 2   defendants, let's get their agreement on the form.
 3   But it looks like we have agreement on that much.
 4   And while I have declared this case complex, I do
 5   think that it ought to be bulked up as much as
 6   possible for Toombs and Hernandez-Mejia, so that it
 7   withstands any sort of review down the road.
 8              All right.  Take the time you need.  I'll
 9   just sit here.  So you just relax, just take the time
10   you need.
11              MR. CROW:  Your Honor, in Counts 6 through
12   12, would the Court be moving the deadlines as well?
13              THE COURT:  We're going to probably talk
14   about that.
15              MR. CROW:  Okay.  Thank you.
16              THE COURT:  All right.  Let me see if we
17   can get kind of back to order here.  Let me make a
18   few announcements.  If y'all are still talking, you
19   can continue to talk.  One is that I will now, in
20   light of severing the trial, I would appreciate if
21   the Government and the defendants that are involved
22   in both those trials try, during the course of the
23   time we have, to give us some realistic estimates of
24   how long each one of those trials are going to last.
25   As you know, we put these things a bit on a runway.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
1    And so I'll need to start allocating and carve out
2    time to make sure that we leave enough time for them
3    to get tried.
4            Somebody left outside of the courtroom some
5    keys, car keys, and a cellphone.  They were to a
6    Lexus.  I was tempted, but -- I had them returned
7    down to the front door, so they're now down at the
8    front door.  So if you're missing keys to a Lexis or
9    a cellphone -- a lot of us would claim those.  But
10   anyway, they're down at the front entrance now.  So
11   you have to pick them up at a break.
12           All right.  Mr. Benjamin, I'll give you the
13   floor.  If you wanted to yield the floor, I'll let
14   you do it, but it's your motion on the first count.
15   So I'll let you be the conductor, the air traffic
16   controller here.
17           MR. BENJAMIN:  Your Honor, I appreciate
18   that.  I think Mr. Villa wants a little bit of time,
19   and then while we were in the hallway, I think what
20   would be best is if the Court would indulge us, if
21   Ms. Johnson --
22           THE COURT:  All right.  So you want to go
23   first?
24           MR. VILLA:  Just real quick, before you get
25   too far in the weeds on 1 through 5 and 13 through
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   16, the Government and the defendants on 6 through 12

2   have agreed to the continuance as the Court has

3   indicated.  We've also agreed that the scheduling

4   order that's currently in place can be continued.

5   And we will -- once we get a trial estimate, which

6   we've actually been talking about, and figure out

7   what's going to happen with the other trials, and get

8   a sense from the Court when our case may be

9   rescheduled, we'd like to then submit a new

10  scheduling order that the parties can work together

11  on and submit to the Court.

12          THE COURT:  Okay.  If you can't just

13  immediately agree on a new schedule -- and I

14  understand that -- let's at least get the motion --

15  or the motion, order in place, so the order in place

16  continuing your trial.

17          MR. VILLA:  Yes, Your Honor.

18          THE COURT:  So even if it's going to take a

19  while to hammer out the other stuff, let's get that

20  in place, so we have the record good and tight.

21          MR. VILLA:  We'll just put language in that

22  order saying the scheduling order will be

23  forthcoming.

24          THE COURT:  All right.  Thank you, Mr.

25  Villa.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              All right.  Mr. Benjamin, do you want to
2    let Ms. Johnson talk?
3              MR. BENJAMIN:  Yes, Your Honor.
4              THE COURT:  All right.  Ms. Johnson.
5              MS. JOHNSON:  Your Honor, on behalf of Mr.
6    Santos Gonzalez, we are the only defendants who are
7    opposed to the July 10th trial continuance.  Prior to
8    the Court taking the bench after the break, we had
9    conferred with counsel for the Government.  They did
10   not indicate a position.  But here's what we would
11   propose:  Because, initially, when the Court was
12   issuing its tentative ruling, we thought that the
13   Court had indicated that you would be severing this
14   case into three groups, Counts 13 through 16, Counts
15   1 through 5, and Counts 6 through 12.
16             Your Honor, I would like to ask the Court
17   for some indulgence in renewing our motion to sever.
18   And we would respectfully ask that the Court sever
19   Counts 13 through 16 from Counts 1 through 5.  And we
20   would ask that the Court allow Counts 13 through 16
21   to proceed to trial in July.  We're ready for trial.
22   We're ready to go in July.  Some of the attorneys for
23   Counts 1 through 5 are not ready.
24             And, Your Honor, would the Court indulge
25   just some brief argument on a renewed motion to sever
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Counts 13 through 16 from Counts 1 through 5?
 2              THE COURT:  You may.
 3              MS. JOHNSON:  Thank you.
 4              THE COURT:  As you can tell, one of the
 5    reasons I took some time is because I have thought
 6    long and hard about that.  If you saw all the charts
 7    and graphs and things that will probably find their
 8    way into the opinion, you'll see that I gave this a
 9    lot of consideration.  But you're free, if you want
10    to go ahead and make your position.
11              MS. JOHNSON:  And I appreciate that, Your
12    Honor.  The problem, respectfully, with grouping
13    Counts 13 through 16 with Count 1 through 5 is that
14    what you have is you have evidence that's going to
15    come in in Counts 1 through 5 that would otherwise
16    not be admissible in Counts 13 through 16.
17              And here's what's more important, Your
18    Honor:  Is that when you look at the dates of the
19    incidents, for example, Count 1, Mr. Gonzales was 11
20    years old when Count 1 occurred.  Counts 1 through 5
21    involved homicides in a prison setting, validated SNM
22    members.  Mr. Santos Gonzalez is neither an SNM
23    member nor an associate.  And that's our position.
24    More importantly, Your Honor, I'm going to put this
25    up.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  But you understand -- and this
 2      is something I'll say -- I can't assume anybody's
 3      case, you know.  I know what your argument is, but I
 4      can't assume the Government's case.  I can't assume
 5      your case.  When I'm making these decisions, I just
 6      have to assume they're disputed, right?
 7              MS. JOHNSON:  True, Your Honor.  And I
 8      understand the Court's look at a facial challenge to
 9      the indictment.  However, I would look -- I would
10      point the Court to the jury instruction.  Now, this
11      is the Ninth Circuit, because we don't have one in
12      the Tenth Circuit, but pretty much these are the
13      elements that the Government needs to prove, is that,
14      number one, that at the time the offense was
15      committed, that an enterprise affecting interstate
16      commerce existed.  And the problem with going to
17      trial on Counts 1 through 5 with Counts 13 through 16
18      is that Counts 13 through 16 -- or excuse me, 14
19      through 16 -- post-date the original wave of
20      indictments in this case.
21              Now, essentially, the SNM was dismantled in
22      December of 2015.  So you have Counts 14 through 16
23      occurring in February of 2016.  So you have
24      evidence -- or if you look at the indictment itself
25      since you're limited to the facial -- to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  information in the indictment -- the SNM was

2  allegedly started sometime in the 1980s.  You have

3  incidents or crimes occurring in 2001, 2007; as

4  charged in Counts 1 through 5, 2012.  These all

5  predate the effective dismantling of the SNM with the

6  first wave of indictments in December of 2015.

7          So then we get February of 2016, when, by

8  the Government's even own admission, the SNM had been

9  essentially dismantled.  So then what you're going to

10  have is this prejudicial evidence from Counts 1

11  through 5, when the SNM was allegedly still active

12  and had not yet been dismantled.  And that's going to

13  spill over and prejudice the defendants in Counts 14

14  through 16, because these counts occurred after the

15  SNM had been dismantled.  And that is obvious and

16  evident from the face of the indictment.

17          And, secondly, Your Honor, the Government

18  needs to prove that the enterprise, at the time that

19  the incident occurred, was engaging in racketeering

20  activity.

21          So I would submit to the Court, Your Honor,

22  that the evidence that would be admitted in Counts 1

23  through 5 would result in substantial prejudice as to

24  Mr. Gonzalez, because effectively, there was no SNM,

25  or it had been dismantled by the Government by

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   December of 2015.

 2           So I would respectfully submit, Your Honor,

 3   that actually Counts 14 through 16 should be tried

 4   separately because of this very dangerous issue that

 5   you're going to have.  The Government wants Counts 1

 6   through 5 tried with Counts 14 through 16 because 14

 7   through 16 suffer from tremendous fatal deficiencies.

 8   One of those, as I mentioned, again, is that there

 9   was no enterprise.

10           Your Honor, I would also respectfully

11   submit to the Court, Your Honor, that the evidence

12   again -- and I would cite to United States v. Burke,

13   which is an Eastern District of New York opinion,

14   where Mr. Ruggiero was tried separately, was granted

15   a separate trial from the other co-defendant, as he

16   was charged with a limited -- with offenses that were

17   limited in scope and time.

18           And that's what you have in Counts 14

19   through 16 is an incident that occurred one day,

20   about 15 years after the offenses charged in Counts 1

21   and 2.

22           So another issue, Your Honor, that is

23   created, and it's actually -- and the Court cited to

24   the Gallo opinion, which provides a very thorough

25   analysis and guidance in determining when the Court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    should grant the severance in these types of cases,

2    when you have evidence of a pattern of racketeering

3    activity -- obviously, the Government still has to

4    prove evidence of the enterprise -- well, when you

5    sever a defendant, they're somewhat limited on the

6    evidence of the predicate acts and the pattern of

7    racketeering activity that would be admitted, for

8    example, in Counts 13 through 16 versus Counts 1

9    through 5, your Honor.

10         And more importantly, Mr. Gonzalez will not

11   waive his right to a Speedy Trial, his Sixth

12   Amendment right, his fundamental right.  And he

13   insists on going to trial.  And it would be unfair

14   for the defendants in Counts 1 through 5 to force

15   them to go to trial, because then you're going to

16   have ineffective assistance of counsel being raised

17   in those counts by those attorneys, because they

18   simply are not ready.  And I understand because,

19   obviously, those counts are far more complex.  They

20   involve homicides, they involve validated members of

21   SNM, allegedly.  And they involve homicides that

22   occurred allegedly in a prison setting; whereas, in

23   Counts 13, 14, 15, and 16 -- more specifically 14

24   through 16, you have most of the defendants in those

25   counts are not validated SNM members.  And, in fact,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   that's in the face of the indictment.  And so -- and
 2   you have dates that post-date the -- as I said
 3   numerous times -- the dismantling of the SNM.
 4           So, Your Honor, with those arguments I
 5   would respectfully request that the Court sever
 6   counts -- I would submit 14 through 16, but if the
 7   Court would like to do 13 through 16, we could try 13
 8   through 16 in July, and sever us from Counts 1
 9   through 5.  For the additional reasons that I set
10   forth in my motion, and based on the Burke opinion,
11   and the Gallo opinion.  And if you note in Gallo,
12   Your Honor, some of those defendants were actually
13   tried by themselves.  There were, I believe, three
14   groups of three --
15           THE COURT:  And I thought that split it up
16   a little too much.  That was my concern about the way
17   Judge Weinstein did in that case, it split it up too
18   much.
19           MS. JOHNSON:  Your Honor, but I would
20   respectfully submit that the evidence or what is
21   before the Court here actually necessitates severing
22   Counts 13 through 16, primarily because you're going
23   to have introduction of evidence from 2001, 2012,
24   2007 -- when the SNM had not been dismantled -- which
25   would not be admissible in Counts 13 through 16.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              So I would, on behalf of Mr. Gonzalez, Your
 2   Honor, ask that the Court sever those 13 through 16,
 3   and --
 4              THE COURT:  Well, I guess on those issues I
 5   think the Government is going to have to decide.
 6   They're going to have to make professional
 7   calculations as to whether their evidence is going to
 8   come in, but -- I mean, I think it's premature for me
 9   to decide what evidence is coming in and not.
10              I know a lot of people argued Bruton
11   problems and things like that, but the Government --
12   I got Bruton opinions out there; they can see what I
13   do with Bruton -- they got to make a calculation and
14   make -- on these sort of decisions they've got to
15   make a calculation whether they'll get their evidence
16   in.  But I think it's a little early for me to say
17   this is in and that's out.
18              MS. JOHNSON:  That is true, Your Honor.
19   But I think that just looking at the face of the
20   indictment itself, when you look at the counts and
21   the -- some of the factual allegations in Counts 1
22   through 5, they're highly inflammatory, as compared
23   to the allegations in Counts 13 through 16, which
24   would then, as pointed out in Gallo, would create a
25   danger of undue prejudice to the defendants in Counts
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   13 through 16.

2        Your Honor, we also have Bruton issues,

3   which I will raise when the time is proper in Counts

4   13 through 16.

5        But right now, what I'm asking the Court to

6   reconsider is severing Counts 1 through 5 from Counts

7   13 through 16, and letting 13 through 16 go to trial

8   in July.  We're ready.  It will be a short trial.

9   The evidence of the enterprise would take maybe a

10  couple of days, at most, and it would be condensed,

11  as opposed to the evidence that would come in as to

12  the enterprise in Counts 1 through 5.

13        Does the Court have any additional

14  questions?

15        THE COURT:  Well, let me hear what other

16  people have to say, then I may have some.  Thank you,

17  Ms. Johnson.

18        MS. JOHNSON:  Thank you, Your Honor.

19        THE COURT:  Any other defendants want to

20  speak -- I guess, before we go to the full-blown

21  motion to continue, anybody want to speak on this

22  motion to sever that Ms. Johnson is renewing?

23        MR. BENJAMIN:  Yes, Your Honor.

24        THE COURT:  I guess it's in the nature of a

25  motion to reconsider the ruling that I've made this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   morning.

 2          All right.  Mr. Benjamin.

 3          MR. BENJAMIN:  Thank you, Your Honor.

 4          And I'll break up the argument and deal

 5   with -- solely with what Ms. Johnson dealt with,

 6   which is the severance.

 7          If the Court looks at just the face of the

 8   indictment, Count 13 is an assault on JG.

 9          Count 14 is conspiracy to murder JG.

10          Count 15 is assault, essentially, of JG.

11          Count 16 is the only count in there that

12   doesn't mention JG by his initials.  But that deals

13   with JG.

14          This is a very limited in time and scope

15   set of allegations that all involve, essentially, the

16   same individuals.  And so I would request that the

17   Court reconsider its position on severance, because I

18   think these are two very, very, very distinct

19   groupings:  1 through 5 and 13 through 16.  Mr.

20   Gallegos would -- and I've spoken with him, Your

21   Honor -- consent to being tried twice.  He is the

22   only person who will be in that position if the Court

23   does sever this into two distinct groups.  But the

24   benefit to not only Mr. Gallegos, but to the other

25   defendants is a mix, because 13 through 16 -- the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Court said something right now that -- I tried a
 2    quadruple homicide in the Western District Texas in
 3    October, Your Honor -- different prosecutors,
 4    different district -- the Court, when we started that
 5    trial told the Government to use its professional
 6    judgment, and the Court used the same phrase -- I
 7    kind of got a chill in my back, Your Honor -- the
 8    professional calculation, we're relying on them to
 9    make a decision as to what to admit and what not to
10    admit.
11              THE COURT:  No, that's not what I'm saying
12    at all.  I'm saying that, right now, they -- they're
13    over here opposing continuances, agreeing to
14    continuances, opposing severances, agreeing to
15    certain things.  Y'all are making some arguments like
16    Bruton arguments.  Ms. Johnson did say this evidence
17    is inadmissible.  I can't make those fine tooth to
18    determine -- this is not a motion in limine.  So when
19    they're making their positions over here, and they're
20    taking their positions, they've got to make a
21    decision for themselves -- not for the Court, for
22    themselves -- as to whether they can get evidence in.
23    So that's all I'm doing.  I'm kind of -- it's a
24    warning to them, not to you.  It's a warning to them
25    that, if they're going to sit here and oppose
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    severances and things like that, they better think
2    about their evidence.  I can't make a determination
3    at this point whether certain evidence is going to be
4    admissible or not.  So they're not going to determine
5    the evidence in the case.  I am.  But they've got to
6    make professional judgments as they oppose motions to
7    sever.  Is that clearer?
8              MR. BENJAMIN:  No, it's very clear, Your
9    Honor.  And that wasn't necessarily -- and I
10   apologize -- where I was going with that.  But on the
11   face of the indictment -- not to belabor the point,
12   Your Honor -- it is a very, I believe, clear and
13   concise way to sever that.  And so we think that that
14   would limit any prejudice to the other defendants.
15   And Mr. Gallegos then would be the sole individual
16   who would be tried twice, Your Honor.
17             THE COURT:  Okay.
18             MR. BENJAMIN:  And Your Honor, I would just
19   request time to come back up.
20             THE COURT:  Sure.  We'll let you come back
21   up on the motion to continue.
22             All right.  Mr. Cooper.
23             MR. COOPER:  Thank you, Judge.
24             THE COURT:  Mr. Cooper.
25             MR. COOPER:  Judge, when we came into the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    courtroom this morning, we were prepared to argue a

2    motion, the motion to continue.  At that point in

3    time, there were 19 defendants set for trial.  It had

4    not been severed, all 19 of us were together.  I'm

5    standing here to argue in support of Ms. Johnson's

6    motion for severance.  Because if you deny that

7    motion for severance, what I think effectively

8    happens is that we place Santos Gonzalez's right to a

9    speedy trial -- we elevate that above the right for a

10   fair trial to all of the Counts 1 through 5

11   defendants.  Those are the oldest cases, Your Honor.

12           I represent Billy Garcia.  Billy is charged

13   in Counts 1 and 2.  Those counts occurred in 2001.

14   It's incredibly more difficult to investigate a 2001

15   murder than it is a 2007, 2012, or the incidents that

16   occurred just a couple of years ago.

17           So I think, if it's not severed, then what

18   I think what we are telling all of the other

19   defendants, the Billy Garcias, the Allen Pattersons,

20   the Edward Troups, who are charged in Counts 1 and 2,

21   that their right to a fair trial is less important

22   than Santos Gonzalez's right to a speedy trial.  And

23   I think that I would suggest that a severance carving

24   him out with 13 through 16 would be a good

25   resolution.  That would protect my client's right to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    a fair trial.

2         Judge, we are not anywhere close to being

3    ready.  We filed on April the 6th a motion to compel

4    discovery on behalf of Troup and Garcia.  In that

5    case, we cited how we had made specific discovery

6    requests back in May of 2016; again September 8th of

7    2016, September 30th, we filed a status report

8    talking about the motion for specific discovery.  We

9    had a hearing in October, and in that hearing, the

10   Court directed the Government to give us the

11   discovery that we were asking for.  We still don't

12   have it.  And all of those items are delineated in

13   our motion to compel discovery on behalf of Troup and

14   Garcia.

15        Some of the things that we're asking them

16   to give us are STIU files that we believe that are

17   incomplete.  We have requested, Your Honor, through

18   IPRA that the Department of Corrections give us these

19   documents, documents that we know exist, documents

20   that we've seen in other cases, documents that we

21   know are in the Department of Corrections, and

22   probably in the Government's possession.

23        Judge, our response from Department of

24   Corrections tells us they've got -- they're going to

25   need five months to produce that stuff.  Five months.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   And we're not getting it.  So I think we're not going
 2   to be ready on the July 10th setting.
 3          So I think the only way to save that time,
 4   Judge, is to sever the Santos Gonzalez matter, give
 5   him his right to a Speedy Trial.  Joe Gallegos is
 6   willing to go; he's the only guy that's in the 1
 7   through 5 and the 13 through 16.  He's willing to be
 8   tried separately and willing to go in July.
 9          So for all of those reasons, and probably a
10   lot of reasons that I have failed to identify, failed
11   to give to the Court, Your Honor, I would ask that
12   you grant that motion, and that we not be forced to
13   go to trial on Counts 1 through 5 in July, because we
14   are just not ready.
15          Additionally, we have retained Dr.
16   Lieberman from the University of Nevada.  And we have
17   not prepared to subpoena him to court today to
18   testify on behalf of our motion to sever.  And we
19   think that our motion to sever is probably as good as
20   any motion that you've seen.  And we would like the
21   opportunity also to argue that down the road.
22          But, Judge, I would support Ms. Johnson in
23   her effort to get 13 through 16 severed.  Thank you.
24          THE COURT:  All right.  Thank you, Mr.
25   Cooper.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              If you want to speak on the motion to
 2    sever -- I know Mr. Cooper began to go on his motion
 3    to continue.  I'm going to hold that for a little
 4    bit.  Are you going to speak on the motion to sever,
 5    this renewed motion that Ms. Johnson or motion to
 6    reconsider?
 7              MR. BURKE:  Yes, Your Honor.
 8              THE COURT:  Okay.
 9              MR. BURKE:  And many of my comments are
10    echos of what Mr. Cooper just said.  I did want to
11    point out with regard to Professor Lieberman, it's
12    pretty obvious to me that you read his declaration,
13    but we would like to present his testimony, and we
14    have not made a complete record on our motion to
15    sever, and we're surprised at that.  And I want the
16    Court to know --
17              THE COURT:  You're surprised at what?
18              MR. BURKE:  It seems as though you've ruled
19    on severance without giving us an opportunity to
20    argue our motion and to present testimony, which we
21    made it clear we intended to do.  And I want the
22    Court to know it's not for lack of diligence.  For
23    one prior hearing, he had plane reservations, and we
24    had gone through the CJA procedures, and then it
25    became apparent that there was not going to be time
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    for him to testify, so we called that off.
 2              THE COURT:  I'll keep an open mind on your
 3    motion to sever when we get to it.  It's teed up
 4    later today, but I do need to rule on the one that
 5    was before me, and I have ruled on that.  And so I'll
 6    keep an open mind on it.
 7              MR. BURKE:  Okay.  And you'll give us an
 8    opportunity to speak again.
 9              THE COURT:  Sure.
10              MR. BURKE:  Thank you, Your Honor.
11              THE COURT:  You bet, Mr. Burke.  Thank you.
12              All right.  Anybody else want to speak on
13    the -- Ms. Wild is reminding me, though, that that
14    motion -- your motion to sever is not teed up.  And I
15    think the reason is because y'all didn't want it teed
16    up for this set of hearings.  So you know that,
17    right?
18              MR. BURKE:  Well, Your Honor, we were
19    attempting to address all the logistical issues that
20    we had.
21              THE COURT:  I know, but this is one thing
22    I'm going to probably be talking about is -- a lot of
23    the briefing from the defendants is all these motions
24    aren't ruled on.  And then, when I have a hearing,
25    everybody pulls their motions off these hearings.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BURKE:  Your Honor, if we had been told
 2     that you were focused on severance, we would have had
 3     Professor Lieberman here and ask him to testify, and
 4     ask the Court to take up that issue.
 5              THE COURT:  Well, I guess I don't think
 6     it's a surprise that I'm ruling on a motion to sever
 7     I heard in February.  I told you I was going to sit
 8     on it a little bit to try to get a better feel for
 9     it.  But -- well, that's my thoughts.
10              MR. BURKE:  Not only that, Your Honor.
11     It's very helpful to know where the Court is going
12     with severance.
13              THE COURT:  Sure.
14              MR. BURKE:  It's not as though that's
15     unappreciated.  We needed some guidance.
16              THE COURT:  That's the reason I took some
17     time to explain my reasoning on it.  Thank you, Mr.
18     Burke.
19              All right.  Anybody else want to speak on
20     Ms. Johnson's -- I'm going to call it a motion to
21     reconsider, I guess, what I have done?  Anybody else
22     want to speak on the defendants' side?
23              All right.  Mr. Castellano, do you want to
24     take up Ms. Johnson's request?  Do you want to go
25     with a small trial in July and -- you had made -- you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    had joined this motion to continue.  What's your
 2    thoughts?
 3              MR. CASTELLANO:  We would request to keep
 4    the trial together at this time, Your Honor.
 5              Everyone points to the face of the
 6    indictment, indicating that these are discrete acts.
 7    But if you look at the face of the indictment, what
 8    it establishes is one of the elements that we would
 9    have to prove at trial, and that's the ongoing nature
10    of the enterprise.  If you have an association of
11    fact enterprise, there is a requirement to show the
12    ongoing nature of the enterprise.
13              So if the SNM started in approximately
14    1980, and exists until today, that's evidence we
15    would have to prove.  I disagree with Ms. Johnson
16    that arresting and imprisoning members of the SNM
17    dismantles the organization.  I mean, this case is a
18    perfect example of that.  We have a number of murders
19    that occurred in prison.  So I think a number of
20    defendants in this case would disagree with the fact
21    that the SNM is now at an end.
22              So arresting and imprisoning members of the
23    SNM does not dismantle the enterprise.  There is an
24    SNM in the state system, and there is also a SNM in
25    the federal system.  So this doesn't put an end to
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    anything at this point.

2              THE COURT:  And you're prepared to prove

3    that at trial, that it's a continuing, ongoing

4    operation through the later counts?

5              MR. CASTELLANO:  That's correct, Your

6    Honor.  I mean, we've had people since this time who

7    have been charged separately who are SNM members.  So

8    the activity has been ongoing, even after the events

9    of this indictment.

10             So what we're going to have -- as I said to

11   the Court before, really, how many times do you want

12   to hear the same evidence or see the same defendants?

13   And I agree with the Court's ruling.  I mean, we all

14   know --

15             THE COURT:  Well, I hope that I've

16   exhibited my patience is fairly long.  I'll hear

17   stuff over and over, if that's what it takes to do

18   justice.  So I don't think I'm the one that's mainly

19   at issue here.  I think it's really me trying to

20   serve the parties in this case and trying to make

21   sure that we do justice there.

22             MR. CASTELLANO:  I understand, Your Honor.

23   And still, in terms of judicial economy, two trials

24   is better than three.  It is the same evidence.

25   People have mentioned Bruton.  And I've also

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    mentioned before the Cook and Smalls cases.  So any
 2    statement these individuals made to each other --
 3              THE COURT:  You've eyeballed the evidence
 4    that Ms. Johnson has talked about on her Bruton
 5    issue?  Usually, I can solve Bruton problems with
 6    scissors and tape and a copy machine, and things like
 7    that.  I mean, we usually can work around it to make
 8    sure that it's fair to the co-defendants.  You've
 9    stared at this evidence that she's concerned about,
10    and think we can -- not think, but feel like we can
11    avoid the Bruton problems?
12              MR. CASTELLANO:  I believe we can, Your
13    Honor.  And I think we have addressed that in our
14    brief.  Some of the statements are statements --
15              THE COURT:  Some of the discussion by both
16    the defendants and the Government was probably too
17    general for me to make an independent determination
18    as to whether it was going to solve the Bruton
19    problem.  It seems it was a little early for me to
20    probably make that determination.
21              MR. CASTELLANO:  I agree, Your Honor.  And
22    I think that any statements made on the date of the
23    crime between co-defendants, if we have somebody to
24    come forward and testify at trial, those statements
25    will all come in under the Cook and Smalls cases out
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                              1-800-669-9492
                                                  e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    of New Mexico.  So those are not Bruton statements.

2    So if somebody comes in and tells the jury what each

3    of the members of the conspiracy said on that date,

4    those are coming in against all members.  So those

5    fall outside of Bruton.

6            Obviously, post-arrest statements are what

7    the Court will be looking at, eventually, and I think

8    we can deal with that.  So as I said earlier, we do

9    have 2001 murders.

10           THE COURT:  But you understand I probably

11   am not in a position to make a ruling on that.  I'm

12   just going to have to leave it to you that if you're

13   going to oppose a severance you think you can get the

14   evidence in and won't be surprised if do I something

15   different?

16           MR. CASTELLANO:  We understand that we do

17   so at our own peril, Your Honor.  We get that.

18           So the oldest murders are 2001 murders.

19   But after that, Count 3 is as recent as 2007; Counts

20   4 and 5 are 2012, and Counts 13 through 16 are in

21   2015 and 2016.  So most of them are more recent, and

22   most of them -- actually, all of those, as I said

23   earlier, show the ongoing nature of the enterprise.

24           What the defense wants to do is give the

25   jury something that's limited in scope, and just say

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    this is really what it's about.  But it doesn't

2    matter what age Santos Gonzalez was when the first

3    murder happened.  It only matters whether or not we

4    can prove our case against him at the time he's

5    charged, and we think that we can.  So the fact that

6    this is ongoing in nature is what's reflected on the

7    face of the indictment.  It's not the opposite.

8              THE COURT:  Say that again.

9              MR. CASTELLANO:  This is ongoing.  And the

10   defense has said:  Look at the face of the indictment

11   and that tells you that it's not.  But what I'm

12   saying is it shows just the opposite of that.  That,

13   from 2001 to 2016, we're establishing, or will

14   establish criminal activity and racketeering activity

15   on behalf of the SNM Gang.

16             So at this point, I would ask that the

17   Court keep them together.

18             THE COURT:  All right.  So where are you

19   now on -- let me leave it at that, because I've

20   separated out the motion to continue.  So you're just

21   arguing on Ms. Johnson's.  That's appropriate.

22   Anything else then, Mr. Castellano?

23             MR. CASTELLANO:  That's correct.  No, Your

24   Honor.

25             THE COURT:  All right.  Thank you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Castellano.

2              MS. JOHNSON:  May I respond?

3              THE COURT:  Yes, you can.  Let me see if

4    any of the other defendants want to say anything on

5    the motion to sever before I give Ms. Johnson the

6    last word.

7              All right.  Ms. Johnson.

8              MS. JOHNSON:  Thank you, Your Honor.

9              Your Honor, first I'd like to address the

10   Bruton issue.  I have Exhibits A and B that I'd like

11   to tender to the Court.  These are reports of the

12   statements provided by co-defendants Brandy Rodriguez

13   and Shauna Gutierrez.  And these are not

14   co-conspirator statements, these are post-arrest

15   statements that do raise a Bruton problem.

16             May I tender those to the Court, Your

17   Honor?

18             THE COURT:  You may.

19             It sounds like the Government is willing to

20   run the risk that you may be right on this Bruton

21   problem, and I may keep this evidence out, and they

22   still want to try the cases together, rather than

23   separately.

24             MS. JOHNSON:  Your Honor, I would submit to

25   the Court that Exhibits A and B show that clearly Ms.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Gutierrez made statements, post-arrest statements,
 2    that implicate Mr. Gonzalez.  Essentially, her
 3    statements put Mr. Gonzalez at the scene of a crime.
 4    Those are clearly inculpatory statements that raise a
 5    Bruton issue, if we're tried with Ms. Gutierrez.
 6    Ms. Rodriguez also implicated Mr. Gonzalez.  Not just
 7    what one co-defendant said during the alleged
 8    commission of the crime, but simply you have these
 9    defendants making post-arrest statements to the
10    Government about what each co-defendant allegedly
11    did.
12             And, Your Honor, I would submit to the
13    Court that simply redacting, cutting out Mr.
14    Gonzalez' name is going to -- is not going to cure
15    the problem.
16             THE COURT:  It may not.  And I'm not making
17    any ruling on that.  So I understand.
18             MS. JOHNSON:  And just to --
19             THE COURT:  Let's say these got kicked out,
20    let's say these things got kicked out.  Is there
21    still evidence against your client?
22             MS. JOHNSON:  Well, if those statements
23    were -- it would be very, very thin, I would submit
24    to the Court.
25             THE COURT:  So isn't that a good
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    development for you?

2              MS. JOHNSON:  It is.

3              THE COURT:  So how much prejudice can you

4    really show by me denying your motion to sever?

5              MS. JOHNSON:  Well, Your Honor, then we're

6    still going to trial with the co-defendants who made

7    those statements.  And then, if the Court kicks them

8    out, so now we are -- the Government is going to try

9    to introduce those statements against each one of

10   those defendants.

11             But I want to go back, Your Honor, to

12   Counts 1 and 2, for example.  Those homicides or that

13   homicide occurred in 2001.  And when you look at HJ,

14   Inc. versus Northwestern Bell, which is at 492 U.S.

15   229, at page 239, one of the requirements that the

16   Government has to prove is that the racketeering --

17   now, that's a RICO case -- but that the racketeering

18   predicates -- because they still have to prove the

19   enterprise -- that these predicates are related.

20             So the issue -- this goes back to the issue

21   addressed in Gallo, that introduction of evidence

22   from 2001 is going to result in undue prejudice to

23   Mr. Gonzalez, because you have a homicide that

24   occurred in a prison setting 15 years earlier.

25             There is a question, even on the face of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  the indictment that that is not related to the

2  incidents alleged in Counts 13, 14, 15, and 16.

3       So again, Your Honor, I would strenuously

4  request that the Court grant Mr. Gonzalez' severance.

5  The Court has done it.  Mr. Andrew Gallegos, the

6  other Andrew Gallegos who appeared before the Court

7  pretty early on, you severed him.  They were ready

8  for trial.

9       THE COURT:  But that didn't work out too

10  well, did it?

11       MS. JOHNSON:  I don't know what happened to

12  him.

13       THE COURT:  Well, I mean, they said they

14  were ready to go to trial, and all that.  And it

15  didn't happen.

16       MS. JOHNSON:  Well --

17       THE COURT:  So that was -- you know, that

18  was -- you know, there was all these assurances that

19  they were ready to go to trial; that they were just

20  on the eve of trial when this got indicted.  And it

21  hasn't turned out that well.  So I guess, if I'm

22  going on experience from there, I guess I'm not

23  pleased with that one.

24       MS. JOHNSON:  I understand, Your Honor.

25  But I would submit to the Court -- I've been before

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



1-800-669-9492
PROFESSIONAL COURT                    e-mail: info@litsupport.com
REPORTING SERVICE

```
 1    this Court since this Court took the bench; I've been
 2    practicing in federal court exclusively for 17 years.
 3    I would submit to the Court that when I tell you I'm
 4    ready for trial --
 5               THE COURT:  Oh, I know.
 6               MS. JOHNSON:  -- I will be ready for trial.
 7               THE COURT:  I trust you.
 8               MS. JOHNSON:  So, Your Honor, we would
 9    again renew our motion to sever.
10               THE COURT:  Thank you, Ms. Johnson.
11               Well, I've certainly thought about Ms.
12    Johnson's opposition to the motion to continue, and
13    the reasons for it.  And have thought long and hard
14    about the motion to sever that I expected her to
15    renew today.  I wanted to get a feel for what people
16    had to say after I made the order of severance that I
17    did.  I wanted to see if the Government, after I
18    severed this way, what their position would be.  But
19    I am not seeing the -- once I sever down, and really
20    focus what I think is one of the main things, is when
21    I turn to this jury and start instructing this jury,
22    whether they can compartmentalize the evidence.  And
23    I think on Ms. Johnson's client that they can.  They
24    can compartmentalize.  I think it's going to be
25    reduced.  I know there is going to be some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    evidentiary issues; I don't minimize those in any

2    way, and we're going to have to work through those.

3    But I think, as far as giving Ms. Johnson, her

4    client, a fair trial, I think I have gone a long ways

5    toward doing that.  And so I'm not inclined to grant

6    the motion to reconsider, the renewed motion to

7    sever.

8            Down the road, if it pops up and the

9    Government starts looking at its evidence and wants

10   to rethink it, we can certainly look at it at that

11   time.  But I think at the present time severance has

12   been granted is going to solve a lot of the problems

13   for Ms. Johnson and Mr. Gonzalez.  And so I'm not

14   inclined to grant it.

15           All right.  Mr. Benjamin, if you now want

16   to argue your motion to continue.

17           MR. BENJAMIN:  Thank you, Your Honor.

18           Your Honor, Mr. Gallegos filed a motion to

19   continue the trial setting for July 10th's date.  And

20   I think that at this point in time we definitely

21   would reurge that, Your Honor.  There is multiple

22   things that put us in the position we are today,

23   where for Counts 1 through 5 specifically, Mr.

24   Gallegos, and others who have joined this motion, are

25   not ready for trial.  As I put in the motion, this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   case is regarding Counts 1 and 5 is in the initial
 2   motions practice stage, Your Honor.  We're still
 3   hearing motions to disclose CIs.  We have a motion to
 4   dismiss that the Court has set on this set of
 5   hearings.  But, depending on what happens on that,
 6   there is going to be a lot of further litigation
 7   regarding that, Your Honor.  There are outstanding
 8   motions to suppress and other evidentiary issues.
 9             This has been brought on by the
10   Government's actions in this case, Your Honor.  The
11   Government has been producing rolling discovery.
12   That rolling discovery is what led to Document 1023,
13   the motion to dismiss or produce the Grand Jury
14   transcripts in relations to the charges that form the
15   basis for Counts 4 and 5.  And that's specifically
16   because in Document 1580, produced approximately
17   April of 2016, they made the allegation that was then
18   reiterated in a later 4473 document, that then was
19   retracted by the Government after the second
20   superseding indictment.  And so their actions are
21   what has put us in this position.
22             Not only that, but, Your Honor, there is a
23   second superseding, as the Court's aware, that added
24   a brand-new defendant to this cause, Brandy
25   Rodriguez.  They've now also filed -- that's set for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   this hearing -- a motion to determine conflict of
 2   counsel who, to the best of my understanding, Your
 3   Honor, the Government has been aware of what's been
 4   going on.
 5           They then -- and I believe we'll talk about
 6   this -- have seized the tablets.  So now, we have a
 7   limited amount of time between May, and as the Court
 8   noted, tomorrow is essentially 60 days from the
 9   proposed trial setting.
10           Mr. Gallegos does not have the ability to
11   review any further discovery effectively, or very
12   quickly.  Because, as the Court will recall, one of
13   the things that we talked about initially with this
14   case, and that led to the tablets was Otero, where
15   Mr. Gallegos is detained, has one meeting room where
16   you can meet with your client and conduct a contact
17   visit.  That meeting room, Your Honor, is essentially
18   reserved ahead of time and used.  There is five
19   defendants from this case there.  There is other
20   defendants that I personally have at that facility,
21   out of the District of New Mexico and the District of
22   Texas, that we use that contact visit room.  And so
23   there is not even a practical way to review what will
24   inevitably be the large discovery dump that comes
25   before the trial.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              The Court has resolved, I believe, the
 2    majority, and has noticed that the Government's
 3    position initially in opposing this continuance was
 4    not on moving a trial, any trial.  It was simply
 5    everybody has to agree or everybody gets punished.
 6    That, essentially, takes me back to the United States
 7    Army when I was in, Your Honor.
 8              But that isn't where we're at.  We have
 9    Counts 1 through 5, where we were still diligently
10    working, filing motions that are to be heard.  And I
11    appreciate the Court setting something that was just
12    filed on Counts 4 and 5, so that we may hear that,
13    the motion to dismiss.
14              But there are fluid arguments that are
15    being made by the Government in different filings and
16    its responses.  And so at this time, I can tell this
17    Court that I do not have a handle on Counts 1 through
18    5.  The evidence and the allegation is still fluid
19    and not set.  And I do not believe it's prepared for
20    trial, Your Honor.
21              THE COURT:  All right.  Thank you, Mr.
22    Benjamin.
23              MR. BENJAMIN:  Thank you, Your Honor.
24              THE COURT:  Mr. Castle.
25              MR. CASTLE:  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           The Court earlier, in speaking to Mr.
 2   Burke, had mentioned that certain motions were set
 3   for hearing and certain ones weren't.  I've got to
 4   tell the Court kind of the reasoning behind some of
 5   the staging of the motions.
 6           THE COURT:  And I'm not critical of that.
 7   I understand that.  But, on the other hand, then the
 8   defendants use it against me, saying, Well, you know,
 9   you've got all these motions to rule on.  So that's
10   what I'm sort of saying.  I've got to kind of protect
11   my record here, too.  I understand why with this
12   group y'all have to talk and juggle things around.
13   But at the same time, there are requests that some
14   motions not be heard.
15           MR. CASTLE:  The reason I bring it up, Your
16   Honor, though, is for the longest time, the Counts 6
17   and 7 defendants said they were ready to go to trial.
18    And their motions for informants got set early, got
19   resolved early.  The Count 1 and 2 people, knowing
20   that, were willing to basically take a backseat so
21   that they could litigate their motions.  And now
22   today -- in fact, that's what we believed up until
23   today -- that that was kind of the situation.
24           And now, because of an agreement of 6
25   through 12 defendants with the prosecution,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   essentially, the 1 through 5 and the 13 through 16
 2   defendants are being told to go earlier.  We're the
 3   sacrificial lambs because of an agreement between the
 4   Government on 6 through 12.
 5           We are having -- so, for example, our CI
 6   motions haven't been litigated, even though in our CI
 7   motion the Government has already agreed that they
 8   needed to turn over one of the identities of one of
 9   the informants, they still haven't done that.  So our
10   litigation is behind the 6 and 7 litigation.
11           Now, I understand the 8 through 12
12   defendants never requested to go early, and -- but
13   some of their litigation has already been done
14   concerning informants, et cetera.
15           THE COURT:  Say that again.
16           MR. CASTLE:  Some of the 8 through 12
17   defendants have had their litigation done.  I think
18   Mr. Sanchez' confidential informant was argued a
19   couple months ago.
20           So these are real problems.  And I don't
21   want to pit our defendants against the other
22   defendants, but it kind of feels that that's what's
23   happening here.  And I apologize for pointing out the
24   elephant in the room, to some extent.  But that's
25   what -- I can tell the Court that when we took our
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   break, the 1 through 5 and 13 through 16 defendants
 2   felt like an agreement had been made without our
 3   input.
 4           THE COURT:  But is that bad?  I mean, you
 5   know, there is a lot of competing interests, and
 6   people -- you know, I've got all sorts of cases where
 7   defendants -- and sometimes there are plaintiffs in
 8   civil cases, you know, they just can't come to an
 9   agreement, and something happens, which is -- you
10   know, I came in here and made a ruling, then that
11   forces other people to sort of reassess where they
12   are.
13           MR. CASTLE:  Well, it's not bad.  But I'm
14   just telling the Court what our position is.  The
15   agreement was made before our position was known.
16           I can tell the Court it's very difficult to
17   investigate a case that happened 15 years ago.  And
18   the Government is having difficulty giving us
19   materials from that time period.  For example, the
20   DNA testing that was done, that's still out there.
21   They said:  We're going to make our best effort to
22   try to get you the underlying data concerning the DNA
23   testing.  But they haven't gotten to it.  And
24   probably because they're trying to track down
25   materials that were stored in a state facility 15
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

```
 1   years ago.
 2            In my experience, homicides that happened
 3   in the last one or two years before a trial are a lot
 4   easier to investigate than an old case.
 5            And so these are the interests that we're
 6   asking the Court to take into consideration.  We
 7   have -- we were the first defendants to request
 8   discovery on Counts 1 and 2.  It's still yet to be
 9   produced to a large extent.  We've been diligent in
10   seeking those materials, yet we don't have them.
11            And so I would suggest that the Court
12   consider continuing the trial.  I know we're not
13   going to get severed from the other defendants in
14   Counts 3 through 5 and 13 through 16.  But the need
15   for a continuance for our set of defendants is great.
16   Just in addition to the amount of litigation we still
17   have to do, it's just impossible to get all the
18   investigation done by July.  And I think we'll be
19   back in here -- if the Court sets it for July, that
20   we'll be back in here with information that we need
21   to put on the record, but out of the presence of the
22   prosecution, which would establish our difficulties
23   in investigating this case and why we need additional
24   time.
25            THE COURT:  All right.  Anything else,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Castle?

 2              MR. CASTLE:  No, Your Honor.

 3              THE COURT:  Thank you, Mr. Castle.

 4              Let me do this:  I need to let Ms. Bean

 5    rest her fingers.  I won't cut anybody off.  I'll

 6    hear what you have to say on the motion to continue.

 7    But let's take a break and let Ms. Bean rest her

 8    fingers.  We'll be in recess about 15 minutes.

 9              (The Court stood in recess.)

10              THE COURT:  All right.  Everybody be

11    seated.  K'Aun reminds me that I sent everybody into

12    a tither by saying that this is where we'd be trying

13    the DeLeon case.  I'm wrong, and I apologize for

14    that.  We are trying it in Las Cruces.  I think I

15    corrected myself when I was giving my opinion,

16    because I was pointing out that I was going to have a

17    smaller courtroom down there than we've been working

18    with.  We'll probably be doing a lot in here over the

19    next couple of months.

20              All right.  Mr. Burke, I think you were

21    going to --

22              MR. DAVIS:  Judge, before Mr. Burke takes

23    the podium, may I make a brief comment based on --

24              THE COURT:  Well, if Mr. Burke wants to

25    give you leave?  He does.  Mr. Davis.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. DAVIS:  Thank you, Judge.  Michael

2    Davis on behalf of Carlos Herrera.

3          THE COURT:  Mr. Davis.

4          MR. DAVIS:  Judge, I just wanted to comment

5    on something that Mr. Castle said.  I know the jaws

6    of eight collective teams dropped when he made the

7    comment that somehow there was some sort of agreement

8    with the Government that the Counts 6 through 12

9    people were going to go first in the case.  I'm not

10   sure where Mr. Castle gets that.  But there has never

11   been any -- any communication between the Government

12   and the Counts 6 and 7 attorneys regarding which case

13   would go first.

14          I would just note that that has always been

15   the Government's prerogative, who goes first.  That's

16   their choice on who they prosecute.  And any

17   indication that somehow the Count 6 through 12 counts

18   are somehow less complicated than the 1 through 5,

19   and other counts, frankly, I just don't buy that.  I

20   may not be as smart as Mr. Castle.  But the case is

21   just as difficult for all of us.

22          THE COURT:  And you noticed I'd tried to

23   avoid characterizing it.  Because I don't have a

24   feel.  And, you know, rarely do I ever say that case

25   is easy and that one is hard.  That's just --

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                           1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                    e-mail: info@litsupport.com

```
 1            MR. DAVIS:  I just wanted to clarify that
 2   in any sense that Mr. Castle was speaking for all of
 3   us.  I will reiterate what Mr. Cooper said:  When we
 4   came here this morning, this was a motion to continue
 5   on all the defendants in the case before the Court
 6   raised the severance issue which threw the monkey
 7   wrench into what we were going to say this morning,
 8   but --
 9            THE COURT:  Well, you got half the motion
10   granted.
11            MR. DAVIS:  Yes, Judge.  Anyway, I just
12   wanted to clarify that.
13            THE COURT:  All right.  Thank you, Mr.
14   Davis.
15            Mr. Burke.
16            MR. BURKE:  Thank you, Your Honor.  My
17   comments are made based on the assumption that the
18   Gallegos group is sort of set.  I know you're going
19   to give us an opportunity to be heard further on
20   that, and that we're in the lead now, so to speak.
21   And I have no other comments about that.
22            But as to our group, Your Honor, it seems
23   to me that all of the defendants in the Gallegos
24   group, except one, are not only not ready for trial,
25   we've announced to the Court that we're not ready for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    trial.
2            The Government's concern, perhaps
3    legitimate, is they don't want, through circumstance,
4    trials to keep being broken up so that we end up
5    having more trials than they hope.  And the Court has
6    expressed itself with regard to how the Court
7    believes that it should be divided up.  But it seems
8    to me the very clear remedy, so that our clients, Mr.
9    Troup, and our co-defendants, get a fair trial when
10   we are ready for trial, is to kick over the Joe
11   Gallegos group.  And the impediment seems to be the
12   speedy trial rights for Santos Gonzalez.  However,
13   the clock is not running on Santos Gonzalez, so that
14   should not be an impediment.  And to the extent that
15   there may be a constitutional right for a Speedy
16   Trial on Mr. Santos Gonzalez' part, that must give
17   way to the other defendants in the Joe Gonzalez (sic)
18   group's constitutional right to a fair trial.  And I
19   don't believe that the Government would be objecting
20   as long as the Joe Gallegos group moves together.
21           So that is my request, Your Honor.  Thank
22   you.
23           THE COURT:  Say that again.  I don't
24   believe -- what were you trying to say at the very
25   end there?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BURKE:  I'm sorry, Your Honor.  What I
 2    was saying at the end is that the remedy, it seems to
 3    me, it's fairly clear that if the Joe Gallegos group
 4    is to move together, stay together -- which seems to
 5    be where this is headed -- that it needs to stay
 6    together later on, and the continuance be granted.
 7    And that the dilemma for the Court is you need to
 8    make -- I'm asking you to make some findings
 9    regarding Santos Gonzalez, that his speedy trial
10    rights, to the extent that they exist at all, because
11    the clock is not running on him, must give way --
12    must give way -- to the rights of the other
13    defendants to get a fair trial.
14            THE COURT:  All right.  Thank you, Mr.
15    Burke.
16            MR. BURKE:  Thank you.
17            THE COURT:  All right.  I know all the
18    defendants want a continuance, so you don't need to
19    stand just to tell me that.  But does anybody else
20    want to speak on the motion to continue from the
21    defendants' side?
22            All right.  Mr. Chambers.
23            MR. CHAMBERS:  I'd just refer the Court to
24    18 United States Code 3161(h)(6), as it relates to
25    Mr. Gonzalez, his being adjoined with other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    defendants and the impact that has on his speedy

2    trial rights.

3              THE COURT:  All right.  Thank you,

4    Mr. Chambers.

5              MR. CHAMBERS:  Also, I don't want my

6    silence to be construed as acquiesce.  I also am not

7    prepared for trial.

8              THE COURT:  All right.  I'll assume that.

9    That's what was in the motion.  So if you feel like

10   you need to say that -- don't feel like you have to

11   say that, because I'm assuming that.

12             Mr. Cooper.

13             MR. COOPER:  Judge, the other thing that --

14   I think you asked Mr. Burke to come back up to the

15   podium to talk about the last bit of his discussion.

16   What he did say is the Government has no objection to

17   a continuance, provided all of the Gallegos

18   defendants are continued, including Santos Gonzalez.

19   So I think he didn't reiterate that portion of it.

20   So the Government would have no objection to a

21   continuance from that July setting, is my

22   understanding, having talked to them during the

23   break, as long as all of the Joe Gallegos defendants

24   are continued.

25             Thank you.



SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                      1-800-669-9492
                                                              e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1           THE COURT:  All right.  Thank you, Mr.

2     Cooper.

3           Ms. Johnson.

4           MS. JOHNSON:  Your Honor, I just want to

5     make sure.  This is Erlinda Johnson.  I want to make

6     sure that Mr. Gonzalez' record is very clear.  And I

7     appreciate the other defendants' position, Your

8     Honor.  And there is also a danger, Your Honor, in

9     compromising Mr. Gonzalez' right, constitutional

10    right, to a speedy trial.

11          And as Tenth Circuit stated in United

12    States v. Hall, that if there is a risk of

13    compromising a constitutional right of a defendant --

14    again, Your Honor, I know you've already ruled on

15    this -- sever Mr. Gonzalez out by himself, and let

16    him go to trial by himself in July.  And that way,

17    the defendants in Counts 1 through 5, and those

18    defendants who are not ready to proceed to trial in

19    July have plenty of time.  Because there is a concern

20    that if Mr. Gonzalez is going to trial with

21    defendants whose attorneys are not ready, that may

22    also result in a problem and prejudice to Mr.

23    Gonzalez, and not to mention those defendants.  But I

24    would submit to the Court, Your Honor, again, Mr.

25    Gonzalez strenuously asserts his constitutional right

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                         (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492
                                                                                    1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    to a speedy trial.  And we're ready.  This is,
 2    essentially, a very brief trial as to Counts 14
 3    through 16.
 4              THE COURT:  Thank you, Ms. Johnson.
 5              Any other defendants want to speak on the
 6    motion to continue?
 7              All right.  Mr. Castellano, are you going
 8    to argue this motion?
 9              MR. CASTELLANO:  Yes, sir.
10              THE COURT:  You still want the motion to
11    continue?
12              MR. CASTELLANO:  Your Honor, Mr. Burke and
13    Mr. Cooper accurately stated our position.  If the
14    group can move together, we would agree to some more
15    time.  The problem is there is a tension here between
16    Mr. Gonzalez' speedy trial rights and the rest of the
17    group's speedy trial -- or well, constitutional
18    rights.  I agree with everyone that, as it is, as it
19    pertains to the statutory speedy trial issue, we
20    don't have a problem because we have pending motions,
21    we're not even on the clock right now.
22              But the constitutional issue is the issue
23    that is really driving things here.  So the question
24    is whether or not the Court would be willing to move
25    Mr. Gonzalez to a later date to keep him with the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   group.  And if so, we would not oppose a continuance

2   to give the defendants more time.  But if it's going

3   to result in a severance -- it's basically a de facto

4   severance -- to keep him at the July 10th setting, we

5   just don't want to have that many trials.  It's not

6   economically feasible.  It doesn't result in judicial

7   economy.  And we've already stated our position as it

8   relates to the severance.

9          Now, looking at the motion to continue,

10  itself, I think today and this week a number of the

11  reasons for the continuance will disappear.  So I

12  think, regardless of the trial date, we'll be moving

13  forward at a faster pace.

14         One of the issues listed in the motion to

15  continue was the fact that the severance motion had

16  not been decided yet.  But that's been decided, so

17  everyone knows kind of where they are in terms of

18  order of trials.

19         The next -- one of the other ones was

20  budgeting, and people not knowing how long the trials

21  would be, in order to submit their budgets.  I think

22  we can sort that out as well.

23         And one of the other reasons was that the

24  CI motions have not been decided.  But I think we're

25  going to have some concessions today or this week

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that will largely take care of the CI issues.  So I
 2    think, when it comes to the confidential informants,
 3    we're going to move past that pretty quickly this
 4    week, in terms of what will be disclosed.  I think,
 5    with the exception -- as far as we know right now,
 6    with the exception of one person, we're likely to
 7    disclose the CIs, at a minimum, to counsel, for their
 8    eyes only.  And then we'll have to make some
 9    decisions about what they can and can't discuss with
10    their clients, or if they petition the Court to be
11    able to make those discussions.  But we'll discuss
12    that when it gets to the CI motions.  That's just a
13    preview.
14            So I think that -- and I think, when it
15    comes to discovery, we'll be moving along there as
16    well, possibly.  So I think a lot of the reasons --
17            THE COURT:  You hear it, too, because
18    you're in the courtroom with me, but there is just
19    this constant refrain that the defendants are not
20    getting the information either that I've ordered;
21    they're requesting, it's been promised.  I know we're
22    going to take these motions one at a time, but do you
23    have a general response that might go to the motion
24    to continue here?
25            MR. CASTELLANO:  I do have some response.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Without looking at each of the individual motions, I
 2    know the DNA evidence has been requested.  We have
 3    submitted a request to the lab, and the lab is
 4    working on the DNA evidence.  I've not received any
 5    indication at this point that they would not be able
 6    to produce some or all of what's been requested.
 7            One of the requests, we have already
 8    disclosed DNA for one of the counts -- I forget which
 9    one -- but there has been a second request.  We've
10    also forwarded that to the lab.  And they seem like
11    they've been willing to accommodate.  And they'll let
12    us know if they can't.
13            We've responded to some of the discovery
14    motions.  On some, we just disagree about what the
15    Court has ordered.  One of them refers to the STIU
16    files.  Some of the files are thick and some are
17    thin.  And as far as I know, we've disclosed them as
18    they were, with the exception of the redactions that
19    were in the files.
20            THE COURT:  So there is a confusion about
21    my order?
22            MR. CASTELLANO:  Yes.  In terms of -- one
23    example is the pen packs.  So, for example, we went
24    back to look at the Court's order, and what we stated
25    in court.  And one of the issues was whether or not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   we had to submit pen packs on all the people

2   requested.  And I think our response in court was --

3   it was Mr. Beck -- indicated that we had agreed to

4   disclose a number of people, including I think

5   defendants and victims, but there are other people we

6   had not agreed to disclose.  And that the defense, if

7   they made a request, and there was a pen pack in

8   existence at the time, that we would disclose that.

9   But if there wasn't, then the defense would either

10  pay the copying -- pay the fees for copying the pages

11  as requested.  So we went back and looked at the

12  transcript.  And that's been part of our response.

13  So that's where I think there is some disagreement in

14  terms of what's believed we need to disclose and what

15  we actually have to disclose.

16          THE COURT:  Okay.

17          MR. CASTELLANO:  As I stated, if the Court

18  is willing to move Mr. Gonzalez with the rest of the

19  group, at least for some time -- I know under his

20  constitutional speedy trial time a complex case buys

21  you more time before you have to go to trial.  And,

22  of course, there are other factors for speedy trial.

23  But if we can keep the case together longer, we don't

24  oppose at least some sort of continuance that keeps

25  us well within the constitutional range.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.
 2              MR. CASTELLANO:  Other than that, we feel
 3    like we would have to try the case in July, and keep
 4    everybody together.
 5              THE COURT:  Well, if I tell everybody in
 6    the room we're going to try this case on July 10, are
 7    you going to be ready?  Is the Government going to be
 8    ready?
 9              MR. CASTELLANO:  Yes.  It will be
10    difficult, but we'll be ready.
11              THE COURT:  All right.  Thank you, Mr.
12    Castellano.
13              Mr. Benjamin, anybody else want to say
14    anything?  Give you the last word on the motion to
15    continue.
16              MR. BENJAMIN:  Thank you, Your Honor, but I
17    believe I've made all the arguments.
18              THE COURT:  All right.  Anybody else?
19              All right.  Well, I'm going to deny,
20    without prejudice, the motion to continue.  I had a
21    case a few years ago; defendant was sitting up there
22    where Mr. Alonso was sitting, and he said -- it
23    wasn't as big a case, but it had a lot of defendants
24    in this room; probably a 19, 20-defendant case.  He
25    said, "I don't know anybody in this room.  I want my
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    trial."  And I'm not criticizing the Government.  The

2    Government said, Oh, you know, he's just as involved

3    as everybody else.  And it turned out that the

4    Government's interpretation of some coded language

5    was very incorrect.  And he kept saying he wanted a

6    speedy trial.  And if I had not recognized that, and

7    made everybody say, Well, let's put the Government to

8    their proof, then I don't know how long that man

9    would have stayed under charges.

10           And so, like I said, I'm trying not to

11   judge this case in any way on its merits.  So when

12   Ms. Johnson stands up and says Mr. Gonzalez is not

13   part of the SNM Gang, I'm not in a position to say

14   one way or another.  But it concerns me that I need

15   to get her case to a trial.

16           I'm not inclined to give a de facto

17   severance for the reasons I've already stated.  So

18   I'm going to deny the request.  If y'all want to

19   continue to talk and try to address some of the

20   concerns that Ms. Johnson has brought on behalf of

21   Mr. Gonzalez, then we can certainly relook at this

22   down the road.  But I think at the present time I

23   need to take her concerns of getting her client to

24   trial and demonstrate his innocence of these charges,

25   I think seems to me paramount to the concerns about

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                                              Albuquerque, NM 87102
(505) 989-4949                                                                          (505) 843-9494
FAX (505) 843-9492                                                                 FAX (505) 843-9492
                                                                                          1-800-669-9492
**BEAN & ASSOCIATES**, Inc.                                        e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    getting this case ready for trial.  So I'll deny the
 2    motion without prejudice, if we need to renew it down
 3    the road.
 4              All right.  Let me get my documents in
 5    order so we can take up the next motion.  All right.
 6    This is the ex parte opposed motion -- I'm not quite
 7    sure what to do with all that -- for emergency
 8    hearing and expedited discovery regarding the
 9    clients' and families' safety.  And I think the next
10    motion is probably about the same, sealed opposed
11    motion for emergency hearing and expedited discovery
12    regarding clients and family safety.
13              I suggest we take these together.  But let
14    me just say this:  I mean, I say this lightly.  I'm
15    having a little hard time taking these two motions
16    seriously, because I don't know what you want me to
17    do.  I really just don't know what the defendants
18    want me to do.  So, you know, I mean, there are
19    certain things a federal court can do.  It can
20    resolve disputes and things like that.  But I really
21    just don't know if this is really much of a
22    justiciable controversy and what I can do about it.
23    So, you know, I'll certainly listen.  I'll be
24    patient.  But I guess I'm skeptical I can do
25    anything.  I can't solve all the problems.  I mean,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    if we've got one set of defendants wanting to do harm
 2    to another set of defendants, then I don't know what
 3    to do about that.  I don't know of anything I can do
 4    about that.  The marshals, I think, have kept
 5    everybody safe for months after months, so they're
 6    doing their job.  I just don't know what needs to be
 7    done and can be done.
 8            Ms. Sirignano, it's your motion, if you or
 9    Mr. Adams want to argue in support of it.
10            MS. SIRIGNANO:  Your Honor, I'm going to
11    defer to Team Troup, who has worked up argument on
12    this motion.
13            THE COURT:  Okay.  Mr. Burke.
14            MR. BURKE:  Your Honor, I think the primary
15    reason that team Troup joined this motion is we
16    needed information.  It's true that the specific
17    relief that we requested is amorphous, but we needed
18    information, because we had this rather alarming
19    document sent over to us, and we didn't really
20    understand the full scope of it.
21            And I think it would be helpful for the
22    Court to hear the testimony of FBI Agent Acee
23    regarding this, because I think it fleshes out the
24    facts a bit, and then I think we can all be at ease a
25    little bit actually.  But that was --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  But is that really what a court
 2    does, make everybody at ease?
 3              MR. BURKE:  Well, we needed to ask somebody
 4    for discovery.
 5              THE COURT:  Why do you need discovery?
 6    Does it have anything to do with this case?
 7              MR. BURKE:  Because my client was
 8    threatened with death.
 9              THE COURT:  And how does that relate to
10    this case?  Tell me how that relates to what a
11    federal court does with this case?
12              MR. BURKE:  Well, I think actually the
13    prosecution acted responsibly by giving us this
14    information.  But we needed to then get more
15    information.  For example, Your Honor --
16              THE COURT:  Is this, though, the mechanism?
17    Where we're having a hearing on getting ready for a
18    trial, is this the mechanism by which we do that?
19              MR. BURKE:  We thought so, Judge.
20              THE COURT:  I didn't see a single case
21    cited in any of the briefing.  So what basis do you
22    have for saying this is an appropriate forum for
23    dealing with that?
24              MR. BURKE:  Well, all of these defendants
25    are under your custody and control, in effect, Your
```

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                             Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                             FAX (505) 843-9492
                                               1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1    Honor.  And you have supervisory power over how --

2              THE COURT:  I didn't see any cases cited on

3    that.

4              I noticed that y'all read my opinion in Mr.

5    Villa's case, where I went through carefully where I

6    thought my powers were and where they weren't.  But

7    do you really have any cases that say just what you

8    say you just said?

9              MR. BURKE:  I think you're talking about

10   the Folse opinion, which we did read, and it was read

11   in conjunction with the tablets, Your Honor.  And

12   there, we cited paragraph 37, which talks about the

13   Court's ability to exercise some control when it

14   relates to the defense of the case.  And I believe

15   that the safety of the clients are --

16             THE COURT:  Well, but that's a pretty broad

17   statement.  If you're just saying that anything

18   that's having to do with the safety of the defendants

19   relates to their ability to get good representation.

20   I guess I think that's too tenuous.

21             MR. BURKE:  Is the Court not interested in

22   getting the information fleshed out regarding the hit

23   list?  Because I believe it actually is some

24   clarification and comfort that might allow us to move

25   forward with peace of mind.  And I know the next



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   question is:  Is the Court supposed to give peace of

 2   mind?  But I thought it might be helpful to all of

 3   us.  Because it was a matter of some concern, Your

 4   Honor, and we went to you, because you're the judge.

 5             THE COURT:  Isn't it a little bit just

 6   ancient history now.

 7             MR. BURKE:  I believe that's what Agent

 8   Acee would tell us.

 9             THE COURT:  Well, but how about you, Mr.

10   Burke?  Isn't it just ancient history, just another

11   blip in this case?

12             MR. BURKE:  It's not totally ancient

13   history.

14             THE COURT:  What would we use the

15   information for?

16             MR. BURKE:  If, for example, this

17   information was a hit list crafted by a Government

18   informant, and it turns out to be false information,

19   that's Brady material.  That is exculpatory because

20   it reflects on the lack of credibility of a person

21   who is providing information to the FBI.  That would

22   be relevant.  It would be exculpatory.

23             THE COURT:  All right.  Anything else you

24   wanted to say on your motion, Mr. Burke?

25             MR. BURKE:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  All right.  Thank you, Mr.
 2     Burke.
 3                Who else?  Anyone else want to speak on
 4     these motions, Mr. Davis?
 5                MR. DAVIS:  Thank you, Judge.
 6                I know I did a joinder.  Let me give you a
 7     little bit of history so the Court will understand, I
 8     think, why I joined in the concerns I think that the
 9     defendants have about the hit list.  When the hit
10     list first was provided to defense counsel, Mr.
11     Herrera's name was not on that list, so it didn't
12     really pertain to us.
13                THE COURT:  And I'm not minimizing why
14     people would be concerned about it.
15                MR. DAVIS:  Yes.
16                THE COURT:  I get that.  Nobody wants to be
17     on a hit list.
18                MR. DAVIS:  Well, it's not so much that.
19     It's the Government's use of a document that at some
20     point they realize was false, and yet there is some
21     indication that they were using it to try to convince
22     witnesses in the case or pressure witnesses in the
23     case that, in fact, they should cooperate with the
24     Government.  There has been a general feeling among
25     the defense team that the Government has utilized
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    their resources to pressure witnesses.
 2              THE COURT:  Let me ask you what your
 3    thoughts are.  I mean, I've got a little bit of a
 4    schizophrenic view from the defendants.  Some thought
 5    that the Government acted responsibly by sending the
 6    list.  Other people were highly critical of the way
 7    the Government has done the list.  What's your
 8    thoughts?
 9              MR. DAVIS:  Well, my thought is I
10    appreciate them sending the list.  And I commend them
11    for sending the list.
12              THE COURT:  You'd rather have it than not
13    have it.
14              MR. DAVIS:  My problem is the way they used
15    the list.  They were taking that list and showing it,
16    for example, to my client's mother saying, "Your son
17    authored this list," when they knew he had not
18    authored the list, and that somehow she should now
19    cooperate with the Government.
20              THE COURT:  Here's my problem.  I think
21    this was playing a little bit into what I was talking
22    about with Mr. Burke.  They get to do an
23    investigation.  And we know the Government does some
24    investigations, and they don't always tell the truth,
25    right?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            MR. DAVIS:  The Government doesn't tell the
2   truth in their investigations?
3            THE COURT:  Sometimes.  I've sat here long
4   enough to see the agent will say that is not a
5   correct statement.  So sometimes they do that, right?
6            MR. DAVIS:  Well, I don't think they're
7   supposed to deliberately lie and provide false
8   information.
9            THE COURT:  Really?  Okay.
10           MR. DAVIS:  I'm not saying that they don't.
11  But I'm saying that they're not supposed to.
12           THE COURT:  Well, where is that written?
13           MR. DAVIS:  I don't know.  That's maybe
14  just the way I was brought up.  I just didn't think
15  the Government was supposed to do that.
16           THE COURT:  Maybe you're right, given the
17  lights just went out.  That's a signal for me.
18           MR. DAVIS:  I should probably sit down, I
19  guess, Judge.  But I think that's the gravamen of our
20  position, that was clear that Mr. Herrera never
21  authored this document.  And it became apparent from
22  the Government, informal discussions with the
23  Government, that they were asserting that he was the
24  author of this ridiculous hit list that's got his
25  mother and his brother on there.  And it was evident
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   early on from their investigation that he did not
 2   author this, and yet they were presenting it to
 3   witnesses indicating that he had tried to pressure
 4   witnesses.  And we believe that is just a pattern of
 5   things that the Government has done to pressure
 6   witnesses, defendants, otherwise divide the defense
 7   team in the case, things of that nature.  So that's
 8   why I raised the issue, Judge.  Thank you.
 9            THE COURT:  I understand.  Thank you, Mr.
10   Davis.
11            Anyone else?  All right.  Who is going to
12   respond?  Ms. Armijo -- oh, we've got somebody in the
13   back there.
14            THE COURT:  All right.  Mr. Esquibel?
15            MR. ESQUIBEL:  Thank you, Your Honor.
16            On behalf of Mr. Garduno, part of the
17   reason why we joined this is that this information
18   becomes worthy of us investigating further, and
19   needing for our investigation, as there has been
20   other instances in discovery -- there is two phone
21   calls back in September of 2015, where information
22   was given to Special Agent Acee about my client being
23   on a hit list.
24            Now, for our purposes, I think this is
25   important as part of our defense to understand what
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    they do with this information once they get it.
 2              In one of the September calls, there is
 3    conversation, I guess you could say, between the CI
 4    and Special Agent Acee.  In another one, it's brought
 5    up, and then dismissed by Special Agent Acee.  Where
 6    this becomes important to us is how they investigate
 7    and how they handle the investigation of these
 8    things.  Why is it that some of this information gets
 9    investigated, and why is it that others is ignored:
10    And we have this information where what the
11    Government does --
12              THE COURT:  But you understand that the
13    Government gets to do that.  That's just their
14    discretion.  They get to investigate this and not
15    investigate that, right?
16              MR. ESQUIBEL:  And that's understood.  And
17    then we get the ability to call them on their
18    lackluster --
19              THE COURT:  Really?
20              MR. ESQUIBEL:  I think at trial that
21    becomes our ability to do that.  Because if they're
22    claiming that these individuals are dangerous or that
23    this is something that is so important that it has to
24    be brought before this Court, and then they don't
25    investigate, we need the ability to call them out on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

99

```
 1    that and dig deeper into it.
 2              And when we have these things, what happens
 3    is that the Government gets this information from an
 4    informant, and then they go forward, and you don't
 5    know if a month from now these are going to turn into
 6    more charges.
 7              And I'll give the Court the example --
 8              THE COURT:  I will bet you we're not going
 9    to get more charges in this case, right?
10              MR. ESQUIBEL:  1613?
11              THE COURT:  DeLeon.  They may come up with
12    another case, right?  But as far as this case, I bet
13    it's frozen.
14              MR. ESQUIBEL:  I wouldn't put anything past
15    the Government, Your Honor.
16              THE COURT:  Well, you and I got to make
17    good bets, right?  We've got to figure out -- use our
18    brains as to what's going to happen.  Probably in
19    this case there is not going to be any more charges.
20              MR. ESQUIBEL:  We would hope not, Your
21    Honor.  But everybody loves a long shot, so --
22              THE COURT:  You don't want more charges,
23    right?
24              MR. ESQUIBEL:  No, Your Honor.  But what we
25    want to do is protect from when there are CIs who
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    come forward and make a statement, and then every

2    other defendant is somehow harmed by it, such as the

3    tablet issue that we're going to have later, such as

4    new overt acts that were lodged against Mr. Garduno.

5    And on top of that, finding out when we actually need

6    to be concerned with the safety of our own clients,

7    when the Government may not be.

8             And those are all things that we need to

9    investigate, and we need to look into further.  And I

10   think that a little leeway to be able to question and

11   delve into these issues should be allowed in these

12   situations.  They're unprecedented, we understand

13   that.  And there's nothing there.  But sometimes you

14   have to go against that to try to figure out what's

15   best for the persons -- our defendants and their

16   safety.

17            THE COURT:  All right.  Thank you, Mr.

18   Esquibel.

19            Anyone else?  Any of the other defendants

20   want to speak on this?

21            All right.  Ms. Armijo, do you want to put

22   Mr. Acee up here and let him put everybody's mind at

23   peace?

24            MS. ARMIJO:  No, Your Honor.  We don't feel

25   that that's necessary in this case, because I think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   the Court is correct.  There is no judicial

 2   controversy in this case.  There is no basis for any

 3   relief.  And we have --

 4            THE COURT:  Let me ask you:  Have you

 5   thought through the suggestion that there may be some

 6   Brady here -- material -- that there may be something

 7   that they could use against these CIs or something

 8   like that?  Because you know the evidence.  Have you

 9   put your foot in the shoes of these defendants and

10   see if there is any way they could use this?

11            MS. ARMIJO:  Well, it's not a Government

12   CHS in this case, so --

13            THE COURT:  No.  But if you've got some

14   information that's just -- that's Brady material,

15   however it could be used by the defendants, have you

16   thought about that?

17            MS. ARMIJO:  I have.  And we can think

18   about it a little bit more, but the situation was one

19   that we got information, and we notified -- whenever

20   we get this information, we notify the US Marshal

21   Service so they're aware of it.  And there was an

22   investigation that was immediately launched into it.

23   There was additional investigative steps, which we

24   would not like to disclose for the reason that, in

25   the future, if there are these types of threats, we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    don't want people in this room to know what
 2    investigative steps we took.
 3            But the FBI investigated it, and they
 4    determined that it was not a valid threat.  And they
 5    did notify people as necessary on the outside.  The
 6    people that were on the list that are in this room.
 7    The US Marshal's Office obviously takes care of them.
 8    But we determined that it was not a valid threat.  We
 9    have informed people that.  They've been provided
10    with the list itself in our response.
11            THE COURT:  What do you think -- tell me
12    what you think the present situation is.  Without
13    revealing any sort of investigative details or
14    things, tell me what you think of this list now.
15    What's your thoughts about it?
16            MS. ARMIJO:  This list, we think it was
17    fake.  We think that it's not a Government CHS in
18    this investigation.  But it was somebody that was,
19    for whatever reason --
20            THE COURT:  Help me a little bit.  When you
21    use the word "Government CHS," what's a Government
22    CHS versus a nongovernment?
23            MS. ARMIJO:  What I mean is it's not a CHS
24    in this case, in the SNM case.
25            THE COURT:  Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. ARMIJO:  It was somebody that wanted to
 2    be a CHS for the United States, and providing
 3    information, but it was not somebody that we have
 4    involved in this case.
 5              THE COURT:  So what you think it was is
 6    somebody who wanted to get some benefit from
 7    approaching the Government with a hit list, and so
 8    they made this list up?
 9              MS. ARMIJO:  Yes.
10              THE COURT:  Okay.  And it's not one of the
11    current CHSs?
12              MS. ARMIJO:  No.
13              THE COURT:  Okay.
14              MS. ARMIJO:  No, it's not.  And so the FBI
15    used special techniques to investigate it, and
16    determined that it was not a valid hit list.  And so
17    I think that it's just -- as to Mr. --
18              THE COURT:  So it's rearview mirror for
19    you?
20              MS. ARMIJO:  It is.  And I think it's just
21    a fishing expedition for them to try and get Agent
22    Acee on the stand to try and find out information.
23    And we just don't need to go there at this point.
24              THE COURT:  If he got on the stand, is that
25    basically what he would say as well?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. ARMIJO:  Yes.
 2              THE COURT:  You're making a proffer as to
 3    what he would say?
 4              MS. ARMIJO:  Yes, Your Honor.
 5              THE COURT:  Anything else you can say that
 6    would give comfort to these defendants and their
 7    families about this hit list?
 8              MS. ARMIJO:  It's not a valid hit list.
 9    And the FBI investigated it fully.
10              THE COURT:  And it took you a while to
11    figure that out?
12              MS. ARMIJO:  Well, I don't know about "a
13    while."  When we got the information, we --
14              THE COURT:  When you sent it over, you
15    probably didn't know?
16              MS. ARMIJO:  When we sent it over, we were
17    notifying them, but we were still in the
18    investigative stage.  I believe that at the time I
19    filed my response, I indicate there that we were
20    doubting its authenticity.  And after filing my
21    response to their motion, we pretty much don't
22    believe it's a valid list.  But even in my response I
23    indicate that.  And the actual list itself was
24    provided.
25              THE COURT:  Okay.  All right.  Anything
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    else on these two motions?

2              MS. ARMIJO:  No, Your Honor.

3              THE COURT:  All right.  Thank you, Ms.

4    Armijo.

5              Mr. Burke, what else?  What do you want to

6    do?  I know you'd like to get Mr. Acee up here,

7    and -- but what else do you really need?

8              MR. BURKE:  No.  Actually, Your Honor, I

9    very much appreciate your question and answer with

10   the prosecutor.  It was interesting that she

11   acknowledged that people will make things up in order

12   to get favors.  That's the kind of thing that we look

13   for with CHSs.  And I understand the distinction that

14   this particular CHS, the Government doesn't intend to

15   use, or is now saying it's not a Government CHS.

16   That's an important and helpful clarification for us.

17   And it was also important to learn that when --

18             THE COURT:  It kind of reduces the chance

19   that we've got any Brady material here, doesn't it?

20             MR. BURKE:  It does.  But I will say -- and

21   I understand the Court's position very well.  What

22   are you supposed to do?  But it would have been nice

23   to have this information on March 23, as opposed to

24   May.

25             THE COURT:  Well, if I understand what
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   they're saying, they're saying they just didn't know
 2   right that moment when they sent it over.  They were
 3   still doing their investigation.  I don't know.  It's
 4   hard to figure out what to do when you have got one
 5   of these things floating around.
 6             MR. BURKE:  Things would have sped up if
 7   Your Honor was involved.
 8             THE COURT:  I understand.
 9             MR. BURKE:  Thank you, Your Honor.
10             THE COURT:  All right.  Thank you, Mr.
11   Burke.
12             All right.  Unless anybody has anything
13   else they want to say on either one of these motions,
14   the Garcia motion or -- I think Garcia filed it in
15   all the cases -- and I'm going to deny those motions.
16             All right.  Let's talk about the tablets.
17   We'll do this in the context of Mr. Perez' motion.
18   But let me make a few comments.  Last week in
19   Mr. Garcia's case, I think the Government has
20   indicated -- and probably everybody knows this --
21   indicated they don't think the tablets are a workable
22   system anymore.  So I'll let the Government put it in
23   their own words, but I think that was basically what
24   they were saying.
25             So what do we do?  Well, I encouraged the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   Government at that time, before we got together

 2   today, to approach the facilities to see if we could

 3   start storing large amounts of information at the

 4   facilities.  So we'll see what they've learned.  But

 5   it seems to me we've just got to do it old school.

 6   The tablets predate me.  That was an agreement -- and

 7   I've read the transcript, so I do think I'm fair in

 8   saying it was an agreement -- between the defendants

 9   and the Government to use these tablets to try to

10   address some concerns.

11          I think that a lot of concerns about the

12   CIs, some of the confidential information is

13   beginning to wane as we go on.  My experience in this

14   case is that people know a tremendous amount about

15   who the people are, who the CIs are.  There is not a

16   whole lot of secrets left.

17          And so I'm inclined to push the parties,

18   just to figure out how to get these documents in the

19   facilities and the defendants can review them.

20          But I'm open to suggestions, if people have

21   got a better way to do it.  But it seems like the

22   tablets are not a workable solution anymore.  You

23   know, I know that not all the guys in here or

24   defendants in here were responsible for the problem

25   with the tablets that caused the marshals and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   prison system to get concerned about these floating
 2   around.  But come on, guys, you've got to help me out
 3   here.  I'm trying to get these materials into your
 4   facilities.  You did something that Dell hadn't even
 5   figured out how to do.  So help me out with this.
 6           All right.  Mr. Villa, those are my
 7   thoughts.  Just got to go old school here.  But I'm
 8   open to suggestions.
 9           MR. VILLA:  And, Your Honor, with all due
10   respect, I think the person/persons you need to be
11   speaking to aren't in the room today.  Because the
12   person that figured this out or caused this issue was
13   one of the confidential sources, confidential
14   cooperators.
15           THE COURT:  You may be right, but I don't
16   know.
17           MR. VILLA:  Well, I think that was the
18   reason the Court put in place the protective order,
19   which set out very clearly --
20           THE COURT:  Well, when I redid what Judge
21   Gonzales did, I can tell you I wasn't thinking of
22   this at all.
23           MR. VILLA:  And, Your Honor, I understand
24   that.  But my point is that there has to be some
25   individualized suspicion here.  There has to be some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    issue --

 2             THE COURT:  Well, here's the problem is, I

 3    think you're blaming it all on this table over here

 4    or on the Court.  The problem is I don't think the

 5    parties that are in -- the people that are making

 6    this decision about the tablets are really people I

 7    can tell them to do anything about it.  It's the

 8    marshals and the Corrections Department.

 9             MR. VILLA:  And, Your Honor, I'm not --

10             THE COURT:  So, I mean, you know, I don't

11    think that I can tell the Corrections Department and

12    the marshals to make individualized determinations.

13    They've got to run their facilities and do their job.

14    And so I guess I'm not sure how -- that may be a

15    great idea to have individualized determinations, but

16    I don't think it's an option for us.

17             MR. VILLA:  Well, Your Honor, I'm not sure

18    there is a better solution, whether we go old school

19    with paper or laptops or computers.  I mean,

20    regardless of the situation, if some cooperating

21    witness or any one of these defendants, as far as I

22    know have all complied with the Court's orders, does

23    something, does that mean that everybody loses their

24    paper, everybody loses their computer?  I mean,

25    that's the issue that --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Well, if I've got the marshals
 2   and I got the prison system saying they're not going
 3   to allow these tablets in -- and I think that's the
 4   situation.
 5              MR. VILLA:  I don't think that is, Your
 6   Honor.  And I may be wrong, I may be missing some
 7   information.
 8              THE COURT:  And I don't think this is Ms.
 9   Armijo over here telling us that she's got any
10   control over this.  If she does, then maybe you're
11   right.  But assume with me for a second she doesn't.
12   The people sitting over at this table cannot tell the
13   marshals and the prison systems, the detention
14   centers, what to do.
15              Now, tell me what we do.  Just humor me,
16   and assume that's the situation.
17              MR. VILLA:  Well, Your Honor, there has to
18   be some give.  I mean, let's say the marshals and the
19   detention center say:  They can't have anything in
20   here, period, and we don't care what the Court or
21   anybody else has to say about that.
22              So you have to take that argument to its
23   logical conclusion, whether it's laptops, tablets, or
24   paper, if the detention center says:  You can't bring
25   it in here, sorry; then we need to know that.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Because I was never under the impression, from what's

2    been filed, at least in DeLeon -- I don't have the

3    information on the other cases -- that that is the

4    issue.  The issue is these tablets, which we were

5    told were going to be secured may not be secured, and

6    we need to think about a solution.  But why the

7    tablets were seized, whose call it is to let the

8    tablets back in, none of that information has ever

9    been -- have I ever been privy to.

10            My understanding was that based on the

11   notice that was filed by the Government, which

12   basically indicated that a cooperating witness

13   figured out a way around the Wi-Fi issue, that the

14   tablets were all seized.  Not that the tablets that

15   any of our clients had had actually done the same

16   thing; that they had actually taken them and gotten

17   their way around the Wi-Fi issue, just that it is a

18   possibility.

19            And now we're hearing that it's a

20   possibility that Dell, or Microsoft, no one else can

21   address.  But that's a separate issue of when and

22   under what circumstances is it appropriate to seize

23   tablets or paper or laptops, and whose call is that,

24   right?

25            So the way I've looked at this issue is one

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    person figured out a loophole, and therefore, they

2    seized all the tablets.  And the way I read the

3    protective order is an individual's tablet has to

4    have some indicia of violating a protective order,

5    has contraband, is broken, is being used improperly,

6    before that particular tablet can be seized.  And

7    that's going to be an issue in the future no matter

8    what we decide, whether we decide it's paper or it's

9    computers, or what it is.  We need to have a

10   understanding about when the Government can do that.

11           THE COURT:  Well, I think probably we all

12   need to write a protective order that actually is

13   effective against third parties.  I mean, we can come

14   up with a protective order that binds the Government,

15   that the Court says it will enforce, the defendants

16   agree to.  But the problem is we don't -- we have

17   limited control over prisons and detention facilities

18   and the US Marshal.  That's where I think we're

19   running into some issues.

20           MR. VILLA:  That's right.  And I may be

21   missing a big chunk of information.  But, for

22   instance, Mr. Perez goes to the Torrance County

23   Detention Facility.  Here in the courtroom today is

24   Harlan Anderson, the head of the Security Threat

25   Group for Torrance County.  And I've asked him, you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    know, by way of proffer:  He says there is Wi-Fi at
 2    the facility, but it's secured.  There is no
 3    unsecured Wi-Fi.  So if any one of these --
 4            THE COURT:  Here's the problem that they
 5    told me last week with Mr. Garcia is:  It doesn't
 6    matter whether there is Wi-Fi.  Somebody can throw a
 7    phone over, it can be near a place; that's what
 8    they're telling me.  So that's the reason that the
 9    marshals and the prison system are doing this.  I
10    mean, I agree with you, they don't have Wi-Fi there.
11    But the problem is that, once they have a device that
12    can be used, that that's a problem.  I mean, that's
13    the reason they don't let cellphones in.  Even though
14    they don't have Wi-Fi, they can still get a hot spot
15    on a phone and transmit.  So the problem is -- I read
16    all that about, you know, there is not Wi-Fi, and I
17    understand that, and agree with that.  But that's --
18    the problem is that we all know there can be hot
19    spots created by all sorts of things.  And that's the
20    reason they're doing what they're doing.
21            MR. VILLA:  Well, and the same cellular
22    devices that would create a hot spot could just be
23    used by anybody in the facility to send messages,
24    take a picture of the discovery, send it to whoever
25    they need to.  It doesn't fix the problem, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Honor.  There is no way to keep a detention center

2    cellphone free.  It's sort of an endless struggle

3    that they have.

4            So whatever our solution is, let's say we

5    switch to paper, we switch to laptops -- and I've

6    used laptops with my clients at Torrance County

7    Detention Facility before, without having to go

8    through the court -- but whatever the solution is, if

9    a cooperating witness and Mr. Acee have an afternoon

10   together, and they have figured out a way that they

11   could smuggle in a phone and take a picture of some

12   really important discovery, or some discovery that

13   names a cooperating witness, and send that to, you

14   know, everybody that they can, because they have a

15   cellphone, and you can basically broadcast it to the

16   whole world, does that mean we lose all our paper?

17           THE COURT:  Well, but you understand -- I

18   mean, this was one of the issues that we had in

19   Garcia last week is -- they've got rules against

20   having cellphones in the cells.  And I think there is

21   laws and regulations on that.  So they do prohibit

22   those.

23           MR. VILLA:  But those same rules defeat the

24   argument that these tablets can hook on to one of

25   those cellphones that would be illegal and then be

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                   1-800-669-9492
PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

```
 1  able to transmit.
 2          THE COURT:  I guess I'm missing the point.
 3  If they don't allow cellphones -- I mean, I can't
 4  make a rule based upon somebody illegally having a
 5  phone, can I?
 6          MR. VILLA:  No.  And I think that's my
 7  point.
 8          THE COURT:  So I guess I'm not tracking
 9  here.
10          MR. VILLA:  Well, my point is:  If you have
11  a tablet, and you don't have unsecured Wi-Fi, which
12  might be available at Sandoval County because of the
13  nearby businesses, the only other way to get Wi-Fi
14  would be to hack the password that the facility uses,
15  or have a device, which would be a cellphone, that
16  would create a hot spot.  And the facility has
17  rules -- I'm sure they have rules related to the
18  security of their Wi-Fi.  And, as the Court points
19  out, they have rules prohibiting cellphones.  So the
20  tablets, as long as the facility is doing its job
21  enforcing their rules -- which we assume they are --
22  are not going to be able to be used for Wi-Fi.  The
23  other piece of that, so they can't hookup to a phone,
24  because the phone would be illegal, and they can't
25  get into the Wi-Fi because would be illegal.  And we,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    as defense counsel and the correction officers and

2    others, can -- there is a way they can keep an eye on

3    that, monitor that, without blowing up this whole

4    deal that we've all worked so hard to get in place.

5             And, you know, I think my understanding is,

6    if someone uses one of these tablets and gets around

7    the security procedures, that it essentially deletes

8    all of the discovery.  So if one of the defendants

9    who has an interest in viewing their discovery --

10   unlike perhaps a cooperating witness -- decides I'm

11   going to figure this thing out, and I'm going to get

12   capability to connect to Wi-Fi or to a hot spot,

13   they're going to lose all their discovery so they're

14   doing themselves a disservice.

15             THE COURT:  So if I understand what you're

16   saying is it's just not a big problem, right?

17             MR. VILLA:  That's my position, that we can

18   give these back to the defendants.  And certainly --

19             THE COURT:  So you want to make it work;

20   you want the tablets back and continue the tablet

21   system?

22             MR. VILLA:  I want that, Your Honor.  And I

23   think that a big issue with paper, or whatever we do

24   if we blow up the tablet system, is the audio, and to

25   a lesser extent video, that we have in the discovery.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    There is, just for Mr. Perez alone, dozens of audio

2    recordings that he needs to listen to.  We've learned

3    this morning that we'll be tried alongside the counts

4    related to Gregg Marcantel.  And there are thousands

5    of audio recordings there that I think Mr. Perez, if

6    he's going to sit through that trial, is entitled to

7    listen to along with all the other defendants.  There

8    has got to be a mechanism for that.  And whatever we

9    use, if it's a laptop, a tablet, some device, and if

10   there is some way that it could connect to some

11   illegal cellphone, we're going to be in this same

12   box, the way I see it.

13           I think you give the tablets back.  You

14   keep the procedures in place so that defense counsel,

15   the corrections officers, the facilities can do what

16   they need to do to make sure that the systems have

17   not been compromised, and we march on.

18           Because I don't know where you're going to

19   put 100,000 pages of discovery per defendant.  I

20   don't know where you're going to put --

21           THE COURT:  Is it 100?  I thought it was

22   50.  Is it 100?

23           MR. VILLA:  Well, I may be overstating

24   that, Your Honor.  I don't have the current figures

25   at my fingertips.  But let's assume it's 50,000.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    These cells won't fit 50,000 boxes of discovery.  And

2    each defendant would be entitled to that.  And then

3    they need to listen to their audio recordings, video

4    recordings.  There are photographs and other digital

5    media that they're entitled to review as part of the

6    discovery.

7          You know, I read this weekend in the Wall

8    Street Journal that El Chapo has a laptop, all right?

9    So, I mean, if the Government can figure that out, I

10   think they could figure out this case.  You know, I

11   mean, I know that there are -- the other remedies

12   that are out there are going to take a long time.

13         My memory of one of the delays of the

14   tablets was the Department of Corrections had them

15   and were trying to disable these security features.

16   They did that.  And it's my understanding there is

17   essentially a check-in place.  You get around the

18   security feature, you lose all your discovery; not to

19   mention it's going -- your tablet is now going to be

20   subject to seizure.  If Mr. Perez decides to do that,

21   then maybe he isn't entitled to his discovery.  But

22   until he does that it shouldn't be taken away,

23   especially on the basis that the Government has

24   stated in the notice of cause.  You know, if you want

25   defense counsel to routinely check it and report to

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    the Court that the tablets have not been overwritten,

2    that the discovery is all still there, you know,

3    maybe we can add an extra layer of protection, amend

4    the protective order in some small fashion.  I mean,

5    we're all officers of the court.

6             You know, it's not like our clients are

7    going to be put back into jail if they decide to do

8    this.  They're just going to lose their right to

9    discovery, and that's going to be their problem.  But

10   I don't think we need to go nuclear on this.

11            THE COURT:  All right.  I know that some

12   other folks joined this motion.  But do you have a

13   sense?  Is that where all the defendants are?  They

14   just want the laptop back and go back to where we

15   are?  I didn't have as good a feeling from when I was

16   talking to Mr. Garcia last week that that was

17   necessarily where he was.  It may be.

18            MR. VILLA:  And I'm not certain.  I think

19   there was some sense that the return of the tablets,

20   that the ship had sailed.  And, frankly, I just

21   wasn't willing to give up on that.  So I'm not sure

22   where the rest of my colleagues are.  But I certainly

23   think that they -- you know, we signed on for the

24   tablets.  I'm sure that they would agree that that's

25   an easier option, especially those that may be going

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to trial sooner rather than later, than trying to
 2    think of something new.  But I guess I'll let them
 3    speak.
 4              THE COURT:  All right.  I may have
 5    questions for you a little bit later, Mr. Villa.  But
 6    I think that's it.  Thank you, Mr. Villa.
 7              Ms. Sirignano.
 8              MS. SIRIGNANO:  Thank you, Your Honor.
 9              Your Honor, while I don't disagree with my
10    colleague, Mr. Villa, we just need to get this
11    discovery back in the hands of our clients.  And I
12    think a proposal from the Government this morning was
13    to have a computer, possibly a laptop with a hard
14    drive, in each facility, so they're able to access
15    the discovery.
16              My proposal would be -- and I talked to Mr.
17    Lowry about it -- that each client, instead of using
18    CJA funds to copy 50,000 or more pages of documents,
19    that CJA funds be used to purchase a laptop computer
20    for each client, that the marshals and the Department
21    of Corrections and the warden of each facility --
22              THE COURT:  We probably aren't going to
23    purchase, the federal government, laptops.
24              MS. SIRIGNANO:  So --
25              THE COURT:  So what's the next proposal?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        MS. SIRIGNANO:  Well, I guess if CJA funds

2   can't be used, then I'm willing to shell out $300 or

3   $400 myself to get the discovery back in my client's

4   hands, Your Honor.  To me, it would seem that it

5   would be -- we would incur more funds copying 50,000

6   pages of discovery in hard form, and they wouldn't

7   have access to it all at once, as each facility, as

8   you know, has restrictions on how many pages each

9   client can have at each time.  And so my proposal

10  would be to allow the client to have a laptop that

11  has no Wi-Fi capability whatsoever, and get this

12  discovery back to our clients right away.

13        Thank you.

14        THE COURT:  Well, I just -- I mean, I can

15  check, but I just don't think it's probably going to

16  be realistic for the federal government to buy 30 or

17  40 laptops.  I just -- I can't see that.  But I don't

18  mind checking on it.

19        Mr. Lowry.  So I think I'm going to have to

20  have another proposal from the defendants as to what

21  they want to do.

22        MR. LOWRY:  Your Honor, I just wanted to

23  clarify, and I join both my colleagues.  My client,

24  Mr. Baca, has had nothing to do with this data

25  breach, security breach, whatsoever.  And in fact, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

122

```
1    think this issue, frankly, dovetails with the motion
2    to continue, in the sense that our clients have a due
3    process right to review the discovery in this case.
4    And my client has really only had a functional tablet
5    for about four to five months.  And now that's been
6    stripped away from him.
7             And, you know, there is quite a high
8    utility in our clients having the discovery in this
9    case.  As we all know, it's an exceedingly complex
10   case.  And we rely mightily on our clients to help us
11   sift through this material.
12            I'm going to second Ms. Sirignano's
13   comment.  If I can't get the Government to compromise
14   to what I think is a just and reasonable solution in
15   a laptop, I would certainly expend my firm's own
16   funds.  And what I want to do here -- and I've looked
17   into this during these conversations -- is,
18   unfortunately, what you need is a bit of a jalopy
19   laptop, one that doesn't have Wi-Fi capability, one
20   that doesn't have an internet camera, one that
21   doesn't have the features that the Government is
22   concerned about individuals using or accessing in
23   facilities.
24            And I don't doubt the sincerity of that
25   concern.  But what I'm trying to do is work a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   solution here.  And the solution really isn't going
 2   to be:  Give our clients five to ten banker's boxes
 3   of material in their cell.  I mean, the facilities
 4   aren't going to agree to that.  But I think, if we
 5   have a jalopy laptop, with a stand-alone hard drive,
 6   we could be right back where we were.
 7            And I hear the Court's concerns, "I can't
 8   order the facilities to do this.  I don't want to
 9   order the marshals to do this."  But both the
10   facilities and the marshals have already demonstrated
11   a willingness to allow devices in the cells.  Their
12   only concern is internet capability and the
13   photography capability.  And if defense teams work a
14   solution that eliminates that threat 100 percent from
15   this device, I don't see why that isn't a viable
16   solution.
17            THE COURT:  Well, but -- those are all sort
18   of reasonable things, but have you sat down with the
19   marshals and sat down with the Corrections
20   Department, and say:  Can we do this for our clients?
21            MR. LOWRY:  I'm happy to do that, Your
22   Honor.  In fact, I'm glad you brought that up.
23   Because when the U.S. Attorneys filed their statement
24   of cause for why these laptops were seized, they sent
25   out an email to the various defendants saying:  We'd
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    love to sit down with you and examine your client's

 2    laptop.  And I responded immediately.  And I said,

 3    "Fine, let's do that this afternoon.

 4             "Oh, wait, we didn't mean today.

 5             "Let's do it tomorrow morning.

 6             "Well, we can't really do it tomorrow

 7    morning.

 8             "Well, let's do it next week."

 9             And I still haven't received my invitation

10    to come in and talk to the United States or the

11    marshals.

12             So it's not that I haven't tried, Your

13    Honor.  I'm more than happy to continue that

14    conversation with the appropriate entities and

15    authorities.  But I want to emphasize -- emphatically

16    so -- that my client, Mr. Baca, hasn't ever tampered

17    with his tablet.  We were willing to prove that to

18    the United States.  They declined the offer.

19             And I agree with Mr. Villa that it's a

20    fundamental disservice and a violation of due process

21    to deprive my client of his right to review the

22    evidence that's going to be used against him at

23    trial.  And this is, again, problematic in the sense

24    that this is just going to cause us to need -- and

25    require more time to prepare for the inevitable

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    trial.  Your Honor, we'll work with all the
2    appropriate authorities to resolve this in a way that
3    secures the facilities and everyone involved.  But I
4    think that can be done.  And I would urge the Court
5    to consider that to be done with electronic gear, if
6    not the tablets themselves, and my understanding is
7    the tablets, unfortunately, are getting ready to
8    outlive their utility because the memory is going to
9    be stripped probably in the next round of discovery
10   or two, so we're going to have to move to an
11   alternative device anyhow.
12           THE COURT:  Yeah, it seems to me that these
13   tablets -- there is a host of reasons -- you're
14   giving some more.  But I think that's the reason the
15   tablets have sort of -- a lot of people have sized it
16   up.  So I'm a little surprised by Mr. Villa wanting
17   the tablets back, given that other people are telling
18   me that it's not going to work anyway.
19           MR. LOWRY:  Well, I think it's a stopgap,
20   Your Honor.  I mean, it's very important for the
21   clients to have the material.  I know my client
22   reviews his material on a daily basis.  And it's
23   important for him to have this, to work with his
24   counsel in preparing for trial in this matter.  So I
25   don't think it's unreasonable to say:  If we can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    demonstrate that our clients haven't violated the
2    protective order -- and I don't disagree with what
3    Mr. Villa said -- if we can set up a periodic review
4    with a local jail authority or a representative from
5    the U.S. Attorney's Office -- I mean, I think some of
6    my colleagues would bristle at that thought.  But my
7    position is it's more important for Mr. Baca to have
8    access to the discovery so we can work
9    collaboratively on his defense.  And the denial of
10   that is working a fundamental injustice to this case.
11   And this is an ongoing problem.
12           So I think we've done this in this district
13   before.  I've had a terrorism case out of Canada that
14   somehow I had a Canadian here at the RCC, who was in
15   US Marshal custody who had a laptop, and had external
16   hard drives.  So I have firsthand experience.  This
17   isn't an overwhelming or debilitating problem.  This
18   can be fixed.  And we've done that here in this
19   district.  And there is no real impediments to
20   effectuating a solution that I described with a
21   laptop and an external hard drive, Your Honor.
22           THE COURT:  All right.  Thank you,
23   Mr. Lowry.
24           Mr. Benjamin.
25           MR. BENJAMIN:  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Your Honor -- and I would like to direct
 2    the Court to the point that I have a laptop at Otero
 3    in another individual's custody right now that he is
 4    using at that facility.  And so I know personally
 5    that Otero will accommodate the issues.
 6              THE COURT:  So, if that's the case, why
 7    aren't y'all individually taking care of this
 8    problem?
 9              MR. BENJAMIN:  Your Honor, I would direct
10    the Court to what I would refer to the
11    heavy-handedness of the Government's response in this
12    matter.  The protective order specifically directs
13    that an individual -- a guard is how it's
14    referenced -- can review -- can ask to have the
15    tablet logged on, and done.  However, the tablet has
16    been seized and taken out of our possession.  So
17    that's why I'm here, along with Mr. Villa, asking the
18    Court to request the return of this.  The tablet is
19    no different than any other media that could be used
20    and abused.  And to simply decide that it's a tablet,
21    it's new, it's different, and therefore, it's used
22    and abused incorrectly, I don't think is fair; and,
23    two, causes a lot of concern with the Court's denial
24    of essentially our motion to continue, and less than
25    60 days to go to trial.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           So, Your Honor, there is software out

2    there.  Fortress software is a $60 piece of software

3    that can be loaded on a laptop.  I take issue with

4    the representation that Dell and Microsoft were

5    contacted, but yet there has been nothing put forth

6    to say that, other than simply:  I've been told that

7    they did this.  This is just a very heavy-handed

8    response to interfere with my client's ability to

9    review his discovery, is how it feels from our point

10   of view, Your Honor.

11          And so I think that this possibility that

12   cooperators who, I don't know why they still have

13   their information, as opposed to defendants who are

14   prepping for trial, have been ordered to trial, that

15   their risk use of this use of Wi-Fi outweighs the

16   prejudice the defendant has to the right that he has

17   to review the discovery.  Especially when all three

18   people before me, Your Honor, have articulated what I

19   would urge the Court.

20          There has been nothing to show that Mr.

21   Gallegos did anything, committed any of this.  This

22   was a cooperator in the presence, and I believe in

23   conjunction with Agent Acee, that is what is driving

24   this whole --

25          THE COURT:  Well, we'll find out in a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    minute.  But I think, unless I got the wrong
 2    impression of the hearing last week, Mr. Acee is the
 3    messenger.  He's not the person that's doing this.
 4              MR. BENJAMIN:  My belief is he was the
 5    individual in the facility with the cellphone that
 6    provides the opportunity and basis for this, Your
 7    Honor.
 8              But more specifically, there is nobody that
 9    has --
10              THE COURT:  I'm sorry?  What --
11              MR. BENJAMIN:  I would --
12              THE COURT:  You'll have to spin that out
13    more than --
14              MR. BENJAMIN:  Your Honor, he's a federal
15    agent.  I believe he took his phone into the
16    facility.  So there was a phone in that facility as
17    well, and Sandoval is a different facility that has
18    the ability to connect to Wi-Fi.  And so the only
19    evidence we have is that this occurred with Agent
20    Acee, I believe, is how it was demonstrated.  We have
21    no evidence that any of the individuals sitting at
22    these tables were the people that did this.  And
23    so --
24              THE COURT:  I'm still -- I don't mean to be
25    dense, but tell me what you're accusing Mr. Acee of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   doing.
 2            MR. BENJAMIN:  Your Honor, it's very --
 3            THE COURT:  Spin it out.
 4            MR. BENJAMIN:  Your Honor, he's with a
 5   cooperator, he was there, and a tablet was used to
 6   communicate.  And I think that, based upon the
 7   Government's emails that the tablet issue is dead,
 8   and they're just changing this, I am very suspicious
 9   of the fact that, based upon things that have
10   specifically happened with Mr. Gallegos, statements
11   that were made, statements that he's being prosecuted
12   for, and statements that have been retracted, that
13   this is simply a concern for security.  That's not
14   how it feels from our point of view, Your Honor.
15            THE COURT:  Okay.
16            MR. BENJAMIN:  So we would join Mr. Villa
17   and ask for the return of the tablet.  I think there
18   are easy things that can be fashioned.
19            Thank you, Your Honor.
20            THE COURT:  All right.  Thank you, Mr.
21   Benjamin.
22            MS. MORRISSEY:  Your Honor, if I may -- and
23   I will be brief -- I think one of the problems we're
24   running into here is that we don't know what the
25   marshal service and what the Department of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1   Corrections are concerned about.  We -- this filtered
 2   down to us through the Government, who basically
 3   filed this statement of cause, and told us the
 4   tablets had been seized.
 5            So, first, we need to know, you know, what
 6   are the facilities' concerns, and how can we address
 7   them?  And we really can't do that.
 8            The second thing is, I still don't
 9   understand why we can't get a jalopy computer and
10   flash drives.  It seems to me that that would serve
11   the purpose of letting these individuals have
12   information about their case.  It's a tremendous
13   amount --
14            THE COURT:  Well, I'm hearing a couple of
15   different things.  One is that a request that CJA
16   funds pay for these computers; that's one thing.  And
17   then the second one is that the facilities will allow
18   certain laptops in.  So those are two different
19   things.  And I'm skeptical that CJA is going to buy
20   50 laptops.  But if the facility is willing to
21   allow -- I'm not sure I know what a jalopy laptop
22   is -- but if they'll allow a laptop in, you know,
23   that may be a solution.
24            MS. MORRISSEY:  And, Your Honor, I
25   reiterate the comments that were made that I'm
```



SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                          1-800-669-9492
                                                              e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   willing to provide my client with a laptop myself so

 2   that he can get his discovery back.

 3         Thank you.

 4         THE COURT:  Thank you, Ms. Morrissey.

 5         MS. ARELLANES:  Your Honor, may I?

 6         THE COURT:  Yes.  Ms. Arellanes.

 7         MS. ARELLANES:  Judge, the problem with the

 8   paper discovery is that other inmates will have

 9   access to the information and may abuse that

10   information.

11         THE COURT:  Here's what I'm hearing, is

12   that they're showing they'll get on the laptop, and

13   they'll say, Okay, here is SNM Document 357; they'll

14   walk over to the cell and say, Hey, Mr. Garcia, go

15   look at Document 357.  How, from a security

16   standpoint, is that helping anything?

17         MS. ARELLANES:  Well, Judge, the problem is

18   that some of the defendants, inmates --

19         THE COURT:  Seems like we've got a very

20   elaborate, cumbersome system in place to avoid paper.

21   But the reality is the information is being shared

22   among the defendants anyway.

23         MS. ARELLANES:  Well -- and that may be

24   fine.  But other people that are not involved in the

25   case will have access to the paper, such as my

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   client's cellmate.  And she may very well be working
 2   for the Government.  So --
 3           THE COURT:  Here's the problem I'm having:
 4   I mean, half the time the defendants are wanting
 5   information in the prison so they can review it.  And
 6   then I've got you saying:  We don't want any paper.
 7   I mean, I can't, probably, make everybody happy here.
 8           MS. ARELLANES:  No, Your Honor.  But at the
 9   very least, the tablet is a much more secure method
10   in which to transmit information rather than paper,
11   because paper can float around.  And that was the
12   Government's concern to begin with.
13           THE COURT:  I think they're about to give
14   up on that concern.
15           MS. ARELLANES:  Well, then they have to
16   live with the consequences.
17           THE COURT:  Which are?
18           MS. ARELLANES:  Could be varied.  Could be
19   varied.
20           THE COURT:  Which are?  Give me one or two.
21           MS. ARELLANES:  Well, you know, if the
22   paper discovery ends up in the wrong hands, then
23   other people can be endangered.
24           THE COURT:  But the problem is, if they're
25   just saying, Go look at page 357, it's a monumental
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  form over substance, isn't it?

 2          MS. ARELLANES:  Judge, the discussion among

 3  defendants is fine.  But the discussion among people

 4  that are not defendants is not fine.  They have --

 5  there is a privilege here that's being violated.

 6  There is an attorney-client privilege that's being

 7  violated.  And so that's the concern there.

 8          THE COURT:  How is the attorney-client

 9  privilege being violated?

10          MS. ARELLANES:  Well, because the attorney

11  is providing information to the client.  Somehow,

12  other people that are not involved in the case are

13  gaining access to that information by way of paper.

14  You know, if a cellmate that's not in my client's

15  case -- she has a cellmate that's not even related in

16  this case, is not involved in this case -- but she

17  would have access to that information.  So that would

18  pose a problem.

19          THE COURT:  Okay.  All right.  Thank you,

20  Ms. Arellanes.

21          Anyone else?

22          MR. DAVIS:  Judge, I'll try to be brief.

23  Michael Davis on behalf of Mr. Herrera.  Judge, to

24  begin with, in Otero, it's my understanding the

25  tablets never leave the tablet room.  In other words,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    the inmates go to where the tablet is.  They review

2    the tablet for the time they're allotted, and then

3    it's returned to the tablet room.  So they don't take

4    it to their cell with them to share.

5           The other thing that's important to note,

6    Judge, frankly, this is the first time I've been in a

7    case where they've done this, and I think it's been a

8    fantastic use of the discovery, particularly in my

9    peculiar situation, is that Mr. Herrera is housed in

10   Otero.  I don't get a chance to see him to go over

11   the discovery nearly enough.  It's of tremendous

12   value to our case to be able to have him go through

13   all this discovery, so when I go meet with him we

14   have meaningful meetings, because he's had a chance

15   to review many of the items that either I haven't

16   gotten to or I didn't understand.  So the tablet

17   thing has really been beneficial.

18          I haven't discussed this issue with Mr.

19   Castellano or Ms. Armijo or Mr. Beck concerning the

20   problem that's happened with the tablets.  I can tell

21   you that Mr. Herrera, like Mr. Baca, knows nothing

22   about what happened here.  While we were talking

23   about Wi-Fi, he leaned over and asked me what was

24   Wi-Fi.  He's very unsophisticated in the use of the

25   tablet.  He's had to learn how to use them.  He's

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1    been in prison for a long time.
 2              So he certainly wasn't involved in any of
 3    this, yet he's being asked to pay the price for this.
 4    We also would like the tablets back, or something
 5    like we've been using with tablets, whether it's new
 6    or different computers, or some sort of external
 7    drive to embolden the tablet some way.
 8              So that's what our position is.  I
 9    understand that it's been very useful at this point.
10    We've been very frustrated by the fact that we
11    couldn't get the laptops back.
12              I also note, too, that when Ms. Armijo
13    indicated this issue had arisen, I also contacted her
14    immediately, and we had made arrangements to meet
15    with the US Marshal Service in Otero.  They couldn't
16    do that, so we talked about doing it up here while
17    we're in the four days of this hearing, to do the fix
18    but I guess in the meantime, they've decided the fix
19    isn't possible.
20              So I apologize for talking so fast,
21    Jennifer.
22              But anyway, that's our stance on that,
23    Judge.
24              THE COURT:  All right.  Thank you,
25    Mr. Davis.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            Anyone else?
 2            MS. JACKS:  Your Honor, I have a few
 3    comments.
 4            THE COURT:  Ms. Jacks.
 5            MS. JACKS:  Just as some background
 6    information, because the issue of the tablets was
 7    originally addressed in front of Judge Gonzales, and
 8    I just wanted to fill you in, I guess, on some --
 9            THE COURT:  I did read the transcript.
10            MS. JACKS:  And you said that, and I had
11    heard that.  It was the Government that suggested the
12    use of the tablets.
13            THE COURT:  I saw that.
14            MS. JACKS:  And it was the Government and
15    the New Mexico Department of Corrections that decided
16    what electronic devices would be provided, and
17    obtained those electronic devices, and then
18    supposedly configured them so that the discovery
19    would be placed on them.
20            THE COURT:  Right.
21            MS. JACKS:  So the Government was in full
22    control of the type of device that was inserted into
23    the custodial facility.
24            THE COURT:  Well, I don't disagree with
25    that, but I've got to move forward.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. JACKS:  Right.  But if they did it --

2     and why they picked the tablets that they did, I

3     don't know; why they picked a tablet that had Wi-Fi

4     capability, I don't know.

5          THE COURT:  I don't think anybody knew.

6     Nobody knew that this had Wi-Fi capability.  I mean,

7     not even -- what I'm being told -- I've got to rely

8     on what I'm being told -- not even the manufacturer

9     knew that.  So we've got to move forward.

10          MS. JACKS:  Right.  And I would like to

11     move forward.  And I guess what I would suggest, in

12     following up on some comments by Mr. Benjamin, and

13     just also in personal experience, I've worked on

14     numerous cases where defendants were provided laptops

15     that did not have Wi-Fi or camera capabilities.  And

16     those worked in custodial facilities in Los Angeles

17     and many other places as well.

18          So I don't know -- I mean, I guess what I'm

19     thinking is I would think that the Government -- the

20     onus should be on the Government to contact whoever

21     it is they originally contacted and find out what

22     kind of laptop or other electronic device is

23     available that could go into the facility.  Clearly,

24     there are.  Clearly there are.  And I think that

25     would probably be a smarter way to proceed than have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    each defendant individually come up with something

2    that they bought at Frye's or Best Buy, or whatever.

3            THE COURT:  Here's the problem is, I can't

4    tell the Department of Corrections to go buy laptops

5    for everybody.

6            MS. JACKS:  Well, I hear that.  And I think

7    we've arranged it in Los Angeles through CJA funding.

8            But let me just go back, because I did a

9    little back-of-the-envelope calculation.  If there is

10   50,000 pages of discovery -- and paper discovery

11   doesn't account for the most important discovery in

12   the case, which are recordings, and the idea of

13   putting paper discovery back into the facilities

14   doesn't solve the problem for the defendants, in

15   terms of listening to the hours and hours of secretly

16   recorded conversations done by government cooperators

17   in the custodial facilities.  But let's just start

18   with 50,000 pages.  50,000 pages; if you assume 2500

19   pages fit in a box, that's 20 boxes of paper

20   discovery per defendant.  And how they organize it,

21   God only knows, or how those boxes are left, so that

22   they have their discovery left in the manner that

23   they've reviewed it, and doesn't get mixed up, or

24   reviewed by other inmates, I don't know how the

25   facilities can deal with that.  Assuming a cheap rate

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                        1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                    e-mail: info@litsupport.com

```
 1    of copying at ten cents a page, that's at least
 2    $5,000 per defendant to make the paper copies, which
 3    doesn't even begin to cover the most important
 4    discovery in the case.  I mean, for $5,000, the
 5    defendants could have Mac Airbooks, with money to
 6    spare.  I think there is a way around this.
 7            THE COURT:  But you understand, you're
 8    working with the Government here.  I mean, it doesn't
 9    always make an economical decision.  It sometimes has
10    to comply with rules.  If you've got some rules and
11    regulations in CJA that says I can pay for laptops or
12    tablets or something, I'd be delighted to look at it.
13    I don't know of any, sitting right here right this
14    minute, so -- but I appreciate the economics of it.
15    But it may be that it's not something that
16    necessarily economics are going to prevail.
17            MS. JACKS:  I just wanted to give the Court
18    some figures for the economics of it.
19            THE COURT:  I understand.  I already --
20            MS. JACKS:  The suggestion --
21            THE COURT:  Ms. Sirignano did it last week
22    for me.  So I'm pretty familiar with the economics.
23            MS. JACKS:  Just, in my experience, the way
24    we've obtained electronic devices for defendants is
25    by completing a CJA authorization requesting the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    funds to purchase that, and submitting the estimated
 2    costs, and that's been approved and paid for by CJA.
 3    And I think there is a stipulation at the end that
 4    the computers go into the possession of the Federal
 5    Public Defender at the conclusion of the case, after
 6    they're wiped of discovery.
 7              THE COURT:  All right.  Like I said, if you
 8    can educate me on what CJA can do, I'll certainly
 9    listen to that.  But I'm sitting here, right this
10    minute, I'm not familiar with that.
11              Mr. Acton?
12              MR. ACTON:  Good afternoon, Your Honor.
13    Gregory Acton on behalf of Anthony Cordova.
14              THE COURT:  Mr. Acton.
15              MR. ACTON:  There wouldn't be 50,000 pages
16    of discovery if it weren't for modern technology.  So
17    I think it's only fair that modern technology be used
18    to review that discovery.  It wouldn't be there
19    without that technology in the first place.
20              The part that I'm still unsettled about all
21    of this -- and maybe it was gone into in more detail
22    in Mr. Chris Garcia's hearing earlier -- but what I
23    haven't really heard is anything from -- via proffer
24    or what have you from, say, a computer expert of some
25    kind saying that these tablets cannot be physically
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    disabled.  Maybe I just missed that.  But I remember

2    the day when, if you had a computer, you actually had

3    to have a card in it that would enable it to talk to

4    an internet connection, or have any kind of cellphone

5    connection.  And I don't know if that's all been --

6    now, it's on the motherboard, maybe it's in the CPU,

7    whatever.  But I have not yet heard anybody say

8    authoritatively that it can't be physically disabled.

9              THE COURT:  I mean, we haven't heard from

10   the Government.  But I think probably we're going to

11   have to assume -- we're going to have to assume it

12   doesn't matter.  If the prison system is not going to

13   allow this tablet in there, period, for whatever

14   reason -- maybe they don't like the color of it --

15   I've got a problem and I've got to solve it.  Now, we

16   can spend a lot of time doing history and learn

17   everything there is to know about tablets.  But we

18   can move forward.

19             MR. ACTON:  Well, at this point, Your

20   Honor, if we were able to determine that there was an

21   alternative, I guess what I would ask is the Court is

22   not going to enter an order, or anything at this

23   point, that would be inconsistent with us being able

24   to address this at a point where we are able to

25   discover that, yes, these tablets could be disabled,

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                    1-800-669-9492

**BEAN
&ASSOCIATES**, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                                     e-mail: info@litsupport.com

```
 1   or something similar to, you know, the way the
 2   tablets were provided in the first place -- I'm
 3   hearing that the tablets may be reaching their limit
 4   anyway, and there needs to be some kind of
 5   replacement.  But I would hope that the Court would
 6   leave open that possibility that whatever the form
 7   the Court order, or decision is going to take, that
 8   it would allow us to continue with that, if we can
 9   find, talking to an computer expert, that there is
10   some way to physically disable either the tablet
11   they've got, or something of equal or comparable
12   expense, something that you could confirm that this
13   is not just a software hack, but that it's physically
14   disabled, and that's easily confirmed, that it
15   doesn't have the physical capabilities.
16            So I just wanted to make sure that was
17   considered by the Court.
18            THE COURT:  All right.  Thank you,
19   Mr. Acton.
20            Anybody else?  Mr. Lowry?
21            MR. LOWRY:  Your Honor, just briefly.  Your
22   Honor, I heard the Court -- and pardon me for
23   characterizing this as frustration over this issue,
24   but --
25            THE COURT:  I'll try to sound less
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   frustrated.
 2             MR. LOWRY:  But we're equally frustrated,
 3   Your Honor.
 4             You had asked why haven't we been working
 5   on a solution before this.  And frankly, I just
 6   wanted to bring it to the Court's attention, we were
 7   under the impression, based on the email from the
 8   Government that, after the inspection, at least the
 9   tablets would have the opportunity to move back to
10   our clients.  That was -- I think, whether that was
11   the intended idea --
12             THE COURT:  I haven't gotten that
13   impression from the Government.
14             MR. LOWRY:  What I'm suggesting, Your
15   Honor, is we didn't -- the royal "we," collective
16   "we" of the defense team didn't have the
17   understanding that these tablets were never going to
18   be returned until late Friday.  And we haven't really
19   had the opportunity to work with our colleagues on
20   the other side of this or the marshal service or our
21   individual institutions to really develop a solution,
22   Your Honor.  I would like the opportunity to do that,
23   in a way that meets everyone's needs.  I just wanted
24   to bring that to your attention.
25             THE COURT:  Okay.  Thank you, Mr. Lowry.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Anyone else from the defendants?

 2              All right.  Ms. Armijo, let me ask you a

 3    few questions.  Let me make sure I understand,

 4    because I've been up here saying it's not your table;

 5    that this is being driven by the Marshal Service and

 6    by the corrections facilities.  Am I correct, or is

 7    this something that Mr. Acee or somebody else has

 8    decided -- at your table has decided these tablets

 9    should be taken from the defendants?

10              MS. ARMIJO:  We did not make the decision

11    to take the tablets from the defendants.  We have an

12    email that we referred to last week in the hearing,

13    that when the issue came up -- and obviously, it's

14    not surprising that cooperators would tell us this,

15    because they're cooperating with the Government.  We

16    could have some of these defendants who are more

17    computer savvy that have figured this out, but

18    they're not going to be telling the Government this.

19              And I really take issue with what Mr.

20    Benjamin said, and blaming Mr. Acee, and in creating

21    it, and saying that we are creating this issue.

22              THE COURT:  Well, let me clear the air,

23    though.  Did Mr. Acee have any decision-making over

24    the tablets being removed?

25              MS. ARMIJO:  No.  The tablets were removed.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    What happened was that we were told by CHSs that this
 2    was possible.  We really didn't believe it to be
 3    possible.  And at two separate times, to prove their
 4    point, CHSs emailed Special Agent Acee when he was
 5    not at the facility.  So there was absolutely no way
 6    that he could have provided the hot spot, the Wi-Fi
 7    for this to happen, to come up with some grand scheme
 8    for defendants to take their tablets back and to pull
 9    it.
10           THE COURT:  So who made the decision to
11    pull the tablets?
12           MS. ARMIJO:  The decision to pull the
13    tablets was made by the US Marshal Service.  We
14    informed the US Marshal Service -- I can tell you it
15    was during the week -- and I have the email -- it was
16    during the week of April 17.  Mr. Beck and I were in
17    trial in Las Cruces.  Mr. Castellano was handling
18    this issue.  And we informed the US Marshal's Office
19    that the tablets had internet capability with certain
20    maneuvers that were done.  The US Marshal's Office
21    expressed concern about that, and indicated that they
22    wanted to pull it -- all the tablets.  Mr. Castellano
23    emailed them back and said, We need to make certain
24    that we do this in accordance with the protective
25    order.  Here is the protective order.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Regardless of that the US Marshals, for
 2    safety concerns obviously, and other concerns, pulled
 3    all their tablets.  We did tell them there was a
 4    protective order.  We did email them the protective
 5    order.  But they made the decision to pull all of the
 6    tablets.  And I don't think it takes rocket science
 7    to figure out why the tablets were pulled.  If
 8    somebody has in their possession, even if they didn't
 9    figure it out, clearly, by today, they will figure it
10    out; they'll have access to things that they
11    shouldn't:  Communications to the outside,
12    pornographic material, things that are not allowed.
13              And the idea that, well, we didn't do any
14    harm, and they can come and check -- so we checked
15    the tablet on a Tuesday; they then make the necessary
16    arrangements -- and let's just say we have tablet
17    checks every Wednesday.  They could very easily
18    between that break the code, do what needs to be
19    done -- I don't want be specific about it here in
20    open court -- do what needs be done, and have a whole
21    week, even if it's just -- and all it takes is just
22    one email.
23              THE COURT:  But aren't they going to
24    destroy all the evidence on the computer?
25              MS. ARMIJO:  They would.  They would
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    destroy all the evidence.  But our concern is not
2    them destroying the evidence.  Our concern -- well,
3    the US Marshal's concern is them having things that
4    would be considered contraband.
5              THE COURT:  I understand that.
6              I need to give Ms. Bean a break, and we all
7    need to get fed.  Let me suggest this:  During the
8    break -- and you need to eat, too, so I'm not trying
9    to shorten your lunch -- talk to the marshals.  We've
10   sat here and listened this morning to the fact
11   that -- as far as I can tell, none of the people that
12   are in this room are the ones that maybe did what
13   we're concerned about.  If the defendants knew that
14   they were going to lose all their discovery, and
15   everybody is going to quickly know that they're the
16   person that is doing this, and so then we're dealing
17   with maybe just a handful, if any, of the defendants,
18   could the marshals live with that?  I mean, anything
19   we put in place is going to have some risks.  But if
20   we could get the tablets back in their hands,
21   understanding that we're going to check them, and if
22   they do it, they're going to lose it, and then we're
23   going to have to figure out what that person is going
24   to do.  Check and see if the marshals could live with
25   something along those lines of getting the tablets
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    back in their hands.  Don't answer now.  I'd like for
2    you to talk to the marshals, and see if they could
3    live with that.
4              Deputy US Marshal Royce Namoca is present
5    in the back.  So you can talk to him.  And give me an
6    answer after lunch.  It seems to me I can reduce a
7    lot of problems by just getting these tablets back
8    in, buying us some time.  And then, if there is a
9    long-term solution, I'm welcome to hear it.  But I'm
10   interested in a Band-Aid here for a short period of
11   time, to see if we can put in a long-term solution.
12             All right.  We'll be in recess for an hour.
13   Nobody is going to start without you, so finish your
14   sandwiches.  See you in about an hour.
15             (The Court stood in recess.)
16             THE COURT:  All right.  We'll go back on
17   the record.  Looks like we've got everybody here.
18             Ms. Bean told me that some folks were warm
19   back there.  I know it was a little warm this
20   morning.  If you want to take off your jackets --
21   this probably applies to the lawyers -- you can take
22   off your jackets and things.  So don't feel like you
23   have to stay in those.
24             All right.  Ms. Armijo, you were arguing on
25   the tablets.  And you were going to also give me some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1    information.
 2              MS. ARMIJO:  Yes, Your Honor.  Over the
 3    lunch hour, I conferred with the US Marshals.
 4              THE COURT:  Hold on, Ms. Wild is reminding
 5    me I need to -- Mr. Kochersberger -- I think I'll do
 6    it blanket -- but Mr. Kochersberger, you're here now,
 7    so you want to enter your appearance?
 8              MR. KOCHERSBERGER:  Don Kochersberger on
 9    behalf of Sergio Rodriguez.
10              THE COURT:  All right.  Mr. Kochersberger,
11    good afternoon to you.
12              Are there any new attorneys present other
13    than Mr. Kochersberger?
14              All right.  Mr. Baker, I think you wanted
15    to leave after we got through with this tablet issue.
16              MR. BAKER:  That's correct, Your Honor.
17              THE COURT:  I'll leave it to you.  I mean,
18    you know how these hearings are.  Issues come up that
19    might impact you or your client.  I can't think of
20    anything that is going to come up.  But you know how
21    they are kind of a rolling thing, people start
22    raising stuff.  So I leave it to you as to whether
23    you think that any of the items that are set -- so
24    I'll just leave it to you.  I'd love to have you
25    stay.
```

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BAKER:  Thank you, Your Honor.  My
 2    understanding is that the rest of the week, there
 3    will not be items that pertain to my client.
 4            THE COURT:  Yeah, I talked to Ms. Wild
 5    about it, and I'm not sure I see it either.  But
 6    you're welcome to stay.  I'll pay for it.  Or you can
 7    leave, and I think probably you're in good shape.
 8            MR. BAKER:  I'm concerned about my client
 9    being transported.  I don't believe there is any need
10    to transport him for the next few days.
11            THE COURT:  He won't be.  Thank you, Mr.
12    Baker.
13            Ms. Armijo.
14            MS. ARMIJO:  Your Honor, over the lunch
15    hour I conferred with the US Marshal Service, and
16    given that the tablets cannot be fixed, they will not
17    allow the tablets to go back into the facilities.
18            THE COURT:  Let me ask you this -- I hate
19    to put it in such blunt terms, but if I order the
20    marshals to return the tablets immediately, will they
21    comply?
22            MS. ARMIJO:  Well, I think that they -- and
23    maybe we should hear from them as to the concerns,
24    Your Honor.  Because there is concerns with -- as
25    they put it, as a law enforcement officer, you have a
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                               1-800-669-9492
PROFESSIONAL COURT                          e-mail: info@litsupport.com
REPORTING SERVICE


BEAN & ASSOCIATES, Inc.

```
 1    device in which somebody could plan their escape,
 2    they could send out a hit.  It's safety, not just of
 3    other inmates, but of the Court, of other people.
 4    There is a lot of issues for the tablets.
 5            But they're not opposed to the, quote,
 6    "jalopy laptop," if the defense wants to provide
 7    that, as long as Corrections Department IT person
 8    indicates that, in fact, they cannot have internet.
 9    And the problem with the tablets is the Microsoft
10    operating system that's on it.  And the tablets are
11    actually very nice, as opposed to a simple laptop.
12    They were very expensive.
13            And I just wanted to put on the record,
14    Your Honor, I know you are aware of the reasons why
15    we got the tablets.  But many of the counsel here
16    were not present for that hearing.  And the United
17    States agreed to it.  The United States initially was
18    opposed to paper going back in.  And Judge Gonzales
19    was concerned about defendants not having discovery.
20    And we did this as a safety concern, for witnesses'
21    protection, for CHS statements.  And so it was a
22    compromise, but Corrections Department agreed to pay
23    for the tablets because of the safety concerns.
24            Well, those safety concerns are gone.  As
25    you heard before, last week, gang members have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    adapted to the use of the tablets.  And so the whole

2    reason for having the tablets is gone, and now they

3    are a huge security risk to have in there.  The

4    United States is not opposed to having paper go back.

5    I keep hearing 50,000.  But I'm certain we're not at

6    50,000 pages.

7              So my understanding is that the facilities

8    will allow them to take back paper.  I had also

9    talked about the facilities having one computer

10   maybe, with just a simple hard drive that could be

11   used.  But all the reasons that I'm hearing that they

12   need it -- for instance, they're saying, you know,

13   it's an issue about money.  Well, my understanding

14   is, for these tablets to be updated -- and this was

15   coming from Mr. Aoki -- when these tablets were being

16   updated, it was very costly each time they were sent

17   out, just the postage alone.  And so I think that as

18   far as monetary costs, it isn't an issue as far as

19   having paper go back in be the issue.

20             I know people were saying that Torrance --

21   Mr. Villa was talking about having a hot spot, and

22   that they're secure lines.  Unfortunately, these days

23   there are correction officers, and other people who

24   are employed at correction facilities who can be

25   compromised, who could give out the password.  You

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                          1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   could have someone, as the Court pointed out, in the
 2   parking lot at a certain time with a hot spot.  So
 3   there is just really no safe way to have these
 4   tablets work to ensure that they cannot get Wi-Fi at
 5   this point.
 6            And, Your Honor, I do again take issue with
 7   Mr. Benjamin's statements as to Special Agent Acee.
 8   And as an officer of the court, he should have a good
 9   faith basis for making such bold accusations that
10   Special Agent Acee provided a hot spot, and basically
11   cooked this whole thing up.  So I would like to know
12   what the good faith basis was for that statement.
13            So, Your Honor, we are willing to go back
14   to the old-fashioned method, the paper method.  The
15   Court can explore having computers that don't have
16   Wi-Fi for general use among the defendants.  Or if
17   the Court is inclined to, but obviously New Mexico
18   Corrections will assist in making it safe, but will
19   not be providing a computer for the inmates to use
20   anymore, since the whole safety reason is out the
21   window.
22            THE COURT:  Well, I guess I'm -- I mean, I
23   guess I'm concerned that we can't point to anybody in
24   this room that did anything wrong.
25            MS. ARMIJO:  Well, we can't, because we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    haven't examined them all.  And the reason we haven't

2    examined them all is because I sent out an email.  I

3    did have requests from a few attorneys, and there

4    were a few examinations.  But then I started getting

5    emails from people saying, Well, we will only agree

6    to it if there is anything on it, and you can't use

7    it in the future, and you can't look at it.  They

8    started putting all these limitations on it.  And I'm

9    afraid that would also happen in the future, where,

10   if there is a set time -- and maybe we should let the

11   US Marshal's Office speak as to that, because now

12   this is -- obviously, all these inmates know that

13   this can be done.  And so even, if it isn't -- and

14   I'm not saying that it is, I'm saying we don't know

15   that these people -- because the tablets have not

16   been looked at.  Only a few have.

17            But I think the Court should consider the

18   US Marshal Service's concerns about this and

19   Corrections' concerns.

20            THE COURT:  Well, put on your agent, and

21   let me hear it.  Because I guess I'm beginning to be

22   concerned about how much of a problem this is.  But

23   it's creating a big problem.  It's creating a

24   representation of effective representation here.  So

25   I'm beginning to think that we're creating a problem

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    rather than solving a problem.  So if you want to

 2    call your witness, put him on the stand to testify.

 3              MS. SIRIGNANO:  Your Honor, during the

 4    break, a number of defense attorneys also spoke to

 5    Mr. Namoca, if you want to hear what the defense is

 6    willing to proffer, or would you rather him just take

 7    the stand?

 8              THE COURT:  Let's just let Ms. Armijo put

 9    him on the stand.

10              MS. SIRIGNANO:  Thank you, Your Honor.

11              THE COURT:  Ms. Armijo.  Mr. Namoca, if

12    you'll raise your right hand, before you're seated,

13    Ms. Wild will swear you in.

14              THE CLERK:  Please be with seated.  State

15    your full name for the record.

16              THE WITNESS:  Royce Namoca.

17              THE COURT:  Mr. Namoca, Ms. Armijo.

18              MS. ARMIJO:  Thank you, Your Honor.

19                      ROYCE NAMOCA,

20        after having been first duly sworn under oath,

21        was questioned and testified as follows:

22                    DIRECT EXAMINATION

23    BY MS. ARMIJO:

24        Q.   Mr. Namoca, how are you employed?

25        A.   I am a Supervisor Deputy US Marshal with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the US Marshal Service.
 2         Q.   And is it fair to say that you are kind of
 3    the point person with the US Marshal Service in
 4    reference to these cases?
 5         A.   Overall prisoner protection, yes, ma'am.
 6         Q.   Now -- and were you made aware of a
 7    situation regarding the tablets and possible internet
 8    capabilities?
 9         A.   Yes.
10         Q.   And after you were made aware of that, what
11    decision did you make?
12         A.   I pulled the tablets.
13         Q.   And why did you pull the tablets?
14         A.   I mean, our policies are pretty specific.
15    Any contraband -- I won't say contraband, but device
16    that can be used to aid in escape or commit an
17    assault cannot be given to a pretrial inmate.  It's
18    broad, but it's specific.
19         Q.   All right.  And so what are your concerns
20    with a tablet that could have internet access as far
21    as -- you mentioned escape and assaults?
22         A.   Yes, ma'am.
23         Q.   And how -- what sort of things would you
24    envision?
25         A.   I mean, it's as simple as just overwriting
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the tablet, creating an internet source, if you have

2    a Wi-Fi source of some sort, and just communicating

3    with the public.  I mean, it's just that simple.

4        Q.   And are those concerns heightened in a case

5    such as this?

6        A.   I agree, yes.

7        Q.   Are they?

8        A.   Yes, they are.

9        Q.   And how so?

10       A.   It's a large conspiracy.  Let's call it

11   what it is.  Some of the defendant have large

12   criminal histories.  And that's just information we

13   receive from the prosecution team, and what we know

14   from NMCD.

15       Q.   And is your office willing to work with --

16   if the defense provides some sort of electronic

17   device that does not have capabilities for internet,

18   are you willing to allow those into the facility for

19   the defendants to use?

20       A.   Of course.  All of our contract facilities

21   already have that in place.

22       Q.   So there are other mechanisms for them to

23   review discovery other than having paper?

24       A.   Yes, ma'am.

25            MS. ARMIJO:  I have no further questions.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Thank you, Ms.
2     Armijo.
3              We probably don't need everybody
4     questioning.  But Ms. Sirignano, do you want to ask
5     any questions and elicit the testimony that you
6     wanted to proffer?
7              MS. SIRIGNANO:  May it please the Court?
8              THE COURT:  Ms. Sirignano.
9                       CROSS-EXAMINATION
10    BY MS. SIRIGNANO:
11       Q.    Deputy Namoca, did you speak with defense
12    counsel during the recess here at lunch about the
13    tablets and the laptops possibly going into the
14    facilities?
15       A.    Yes.
16       Q.    And that was approximately four of us: me,
17    Mr. Benjamin, Mr. Esquibel, and Mr. Lowry; correct?
18       A.    Correct.
19       Q.    Okay.  And so, when asked about the actual
20    tablets and whether the Court could order the United
21    States Marshal Service to allow those tablets that
22    were provided by the Government back in the
23    facilities, what did you advise us?
24       A.    We would note our objection to it, because
25    of the security risks.  Basically, it's my job.  But
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    I would have to seek other counsel as well.  But if a
 2    court order was written, I don't know, I would have
 3    to go ask my management, to be honest.
 4         Q.   So if the Judge were to order you, the
 5    Marshal Service, to put those tablets back in the
 6    facilities, you would seek counsel from the Marshal
 7    Service?  But of course, the Marshal Service would
 8    obey an order from this Court?
 9         A.   Based on my experience, more than likely,
10    yes.
11         Q.   More than likely, yes?
12         A.   Based on my experience, yes.
13         Q.   Okay.  And if that was a solution for the
14    short term, you would allow defense counsel to bring
15    laptops in once they were reviewed and approved by
16    the New Mexico Department of Corrections' IT unit?
17         A.   I'll have to seek counsel from my
18    management, to include our headquarters components.
19    But it could be -- if it's written in the court
20    order, I would seek to what to do basically.
21         Q.   Regarding the tablets that were currently
22    removed?
23         A.   Yes.  Or to include additional IT equipment
24    that could be introduced to the jail.
25              MS. SIRIGNANO:  Thank you.  No further
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    questions.
2              THE COURT:  Thank you, Ms. Sirignano.
3              Ms. Johnson.
4              MS. JOHNSON:  May I, Your Honor?
5              THE COURT:  You may.
6                    CROSS-EXAMINATION
7    BY MS. JOHNSON:
8         Q.   Good afternoon, Deputy Marshal Namoca.
9              Now, when were you notified by the
10   Government?  Or who were you notified by?  The FBI?
11        A.   I don't know if it's either the FBI or the
12   prosecution team.
13        Q.   And what were you told?
14        A.   I cannot recall exactly, other than the
15   fact that a CHS was able to compromise a tablet.
16        Q.   And this informant was housed at Sandoval
17   County Detention Center, right?
18        A.   Yes.
19        Q.   And none of these other defendants in the
20   courtroom today are housed at Sandoval County
21   Detention Center; correct?
22        A.   Correct.
23        Q.   And what you were told is that an informant
24   accessed the Internet on his tablet?
25        A.   Correct.
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   And then your testimony on direct

2    examination was that you made the decision to pull

3    the tablets of all these other defendants, right?

4        A.   Correct.

5        Q.   But your decision was made after you

6    consulted with the prosecutors, right?

7        A.   Correct.

8        Q.   And, in fact, they suggested to you that

9    you pull the tablets?

10       A.   No, they didn't suggest it.

11       Q.   But they discussed it?

12       A.   They offered information that would lead me

13   to pull the tablets, yes.

14       Q.   And it wasn't just your decision entirely;

15   that was made after you consulted with the

16   prosecutors, right?

17       A.   Correct.

18       Q.   And you didn't consult with any of the

19   other defense attorneys in this room?

20       A.   I did not.

21       Q.   And, in fact, you didn't notify any defense

22   attorneys in this room that you were planning to pull

23   the tablets?

24       A.   I did not.

25       Q.   You have no evidence that any of these

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                         1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

```
 1    defendants in this room accessed the internet on
 2    their tablets?
 3         A.    None.
 4         Q.    And you have no evidence that an internet
 5    connection could be established at Torrance County
 6    Detention Center?
 7         A.    I didn't check.
 8         Q.    Otero County Detention Center?
 9         A.    Nope.
10         Q.    Santa Fe County Detention Center?
11         A.    Nope.
12         Q.    And, in fact, your decision, or what you're
13    telling the Court about these security concerns is
14    just an overall concern, but not specific to each one
15    of these defendants?
16         A.    Yes.
17         Q.    It is specific?
18         A.    No.  It's an overall concern.
19         Q.    But not specific to each one of these
20    defendants?
21         A.    Not specific, no.
22         Q.    So if these tablets, for each one of these
23    defendants in this room were checked, and you made
24    sure that at each one of these facilities where these
25    defendants are being housed there is no internet
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   access, would you feel comfortable returning those
 2   tablets?
 3        A.   Once I seek counsel from other parties in
 4   my agency, I will be open to it, yes, ma'am.
 5             MS. JOHNSON:  I have no further questions.
 6   Thank you.
 7             THE COURT:  Thank you, Ms. Johnson.
 8             Maybe one more.  Mr. Villa.
 9                  CROSS-EXAMINATION
10   BY MR. VILLA:
11        Q.   Good afternoon, Deputy.  If there were a
12   mechanism in place so that you could check the tablet
13   or a corrections officer at the various facilities
14   could check the tablet to determine if it had been
15   bypassed, would that make you more comfortable with
16   having the tablets in the facilities?
17        A.   The current tablets?
18        Q.   Yes.
19        A.   It wouldn't make me more comfortable, no,
20   sir.
21        Q.   Well, the tablets, as I understand it, if
22   they're bypassed, can then access a hot spot or Wi-Fi
23   connection; correct?
24        A.   Yes.
25        Q.   If they're not bypassed, they cannot?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    Yes.

2        Q.    That's your understanding, too?

3        A.    Yes.

4        Q.    So if there were a mechanism in place that

5    this Court could order to help us determine if a

6    tablet had been bypassed, and to allow the facilities

7    to look at a tablet under certain conditions to see

8    if it had been bypassed, would that not help allay

9    some of your security concerns?

10        A.    It would help.  But like I said to Ms.

11    Sirignano and Ms. Johnson, I would have to seek other

12    things, too.  I would have to talk to other

13    counterparts in my agency.

14        Q.    Sure.  You have devices, do you not, to

15    determine if a particular facility has Wi-Fi?

16        A.    My own equipment, sure.

17        Q.    You could get on your phone right here and

18    check and see what the Wi-Fi networks are, right?

19        A.    Yes, of course.

20        Q.    And the folks at the facilities, could do

21    that, too?

22        A.    They could.

23        Q.    And if their security measures in doing

24    that right now weren't adequate, you could help them,

25    make them better able to detect these Wi-Fi networks?

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

166

```
 1        A.   I don't know off the top of my head, but
 2   I'll have to talk to some of other partners that are
 3   more familiar with that type of thing.
 4             MR. VILLA:  That's all I have.
 5             THE COURT:  Thank you, Mr. Villa.
 6             All right.  Ms. Armijo, anything else you
 7   want from Mr. Namoca?
 8                    REDIRECT EXAMINATION
 9   BY MR. ARMIJO:
10        Q.   Do you have a way of preventing, at either
11   Torrance or Otero or any of the other facilities that
12   were listed just now, from having someone park
13   outside with a hot spot, which would then give people
14   inside ability to connect to the Wi-Fi?
15        A.   To my knowledge, no.
16        Q.   And are you able to prevent corrections
17   officers from being compromised in bringing in either
18   a hot spot phone, or in providing the password of a
19   secure facility?
20        A.   No.
21        Q.   Are there ways for people who are in those
22   facilities being -- specifically, let's just talk
23   about Torrance and Otero County -- are there ways for
24   people then -- now, specifically -- using either hot
25   spots from other people to get internet access?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          MS. JACKS:  Objection, calls for
 2    speculation.
 3          THE COURT:  Well, we're predicting the
 4    future.  So there is a certain amount of speculation.
 5    I need to hear it.  Overruled.
 6      A.    Would you repeat the question, ma'am?
 7    Sorry about that.
 8      Q.    I said is there a way for people in those
 9    facilities, then, to get access -- people being
10    inmates -- to get access to Wi-Fi?
11      A.    There is.
12      Q.    And does that cause concern for you?
13      A.    Of course.  That's my job.
14      Q.    And also, even with -- I'm going to give
15    you an example -- if you had weekly checks of
16    tablets, does that still cause you concern, given
17    that at any point a tablet could be compromised?
18      A.    Yes.
19      Q.    And explain that to the Court.
20      A.    Well, I mean, there are gaps in periods of
21    times when the tablet is not checked.  It just takes
22    one instance to compromise the tablet, and you have
23    access.  It's as simple as that.
24      Q.    And would that -- even if -- let's just,
25    hypothetically speaking, if somebody in Torrance

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492
                                                          e-mail: info@litsupport.com



```
 1    County compromised theirs in Otero County, could they
 2    then communicate with each other?
 3         A.    That's a possibility, from what I know.
 4              MS. ARMIJO:  I have no further questions.
 5              THE COURT:  I thank you, Ms. Armijo.
 6              Mr. Namoca, thank you.  I appreciate your
 7    testimony.  You may step down.
 8              All right.  Do you have any further
 9    argument, Ms. Armijo?
10              MS. ARMIJO:  No, not unless the Court
11    has -- no, I just wanted to be able to give the US
12    Marshal's side of it, and the security concerns.
13              THE COURT:  All right.  Thank you, Ms.
14    Armijo.
15              Anyone else on the defendants?  I'll give
16    you the last word on the motion, Mr. Villa.
17              Mr. Esquibel?
18              MR. ESQUIBEL:  Thank you, Your Honor.  Your
19    Honor, the problem that we have here is that, again,
20    we have a protection order that we set out, and we
21    have actually a system that was set up for checks and
22    balances.  The system -- in order to get access to
23    the wireless system, the individual, as has been
24    talked about, has to wipe their system clean.
25              Okay.  Your Honor, I received a degree in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    management information systems, was a computer

2    programmer for three years.  I've worked at several

3    companies.  And the things that they're talking about

4    doing are a little bit sophisticated.  I think 60

5    percent of the attorneys here have said, "I don't

6    even know how to do that."  And we have to remember

7    that there is a good portion of our clients who have

8    been in custody for so long that this is their first

9    experience with a computer.  So we're having to have

10   all these moons aligned in order to have this done.

11          Now, there is no 100 percent perfect system

12   for anything.  And I don't think anyone is ever going

13   to disagree.  But what we have is a system where, if

14   they're diligently checked once a day, twice a day,

15   to look, it's not like the person can wipe their

16   computer, get on the internet, then get all their

17   discovery back.  The second that they wipe their

18   system and set it back to factory default, everything

19   is lost.  And it's very easy to check.  And it

20   doesn't require an invasive procedure or anything big

21   to be done.

22          None of us have had the opportunity to talk

23   to New Mexico Corrections IT department, but I find

24   it completely dumbfounding that a company would

25   create a piece of hardware, like a motherboard, that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    would have a wireless card integrated in it, so that
2    it was part of a motherboard.  That's an object that
3    you create, because they fall apart, to be able to
4    pop in and pop out.  I was sent the specs for this
5    machine from Russ Aoki's office.  It clearly showed
6    that there was an addition of a wireless card there.
7            If we can't get that done, the problem that
8    we have is we have a July date that's moving quickly,
9    a lot faster than several of these co-defendants
10   would like, and they have no access to discovery.
11   The tablets, again, might be an imperfect solution.
12   But it's a solution that balances the needs of our
13   clients, and in this case we need to not forget about
14   that.
15           I very seriously doubt that if that goes
16   away, that they're going to be provided with paper
17   discovery within 24, 48 hours.
18           And the thought that they're going to put
19   one machine in each facility for anywhere from four
20   to more people to have to share, I don't believe that
21   they're going to let them review the discovery in a
22   group.  That means that everybody is going to be
23   limited.  So we're, therefore, limiting their
24   discovery.
25           As far as the amount of paperwork, I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    doubt that there is less than actual 50,000 unique

2    pages.  But the problem is that it has been --

3    they've been duplicated in different cases, and we

4    don't know which is the same document in all of them.

5    And we'll never know.

6            Your Honor, the clients need these tablets.

7    They're their lifelines.  And I don't think that

8    there is going to be anyone here who is going to

9    sacrifice having access to their discovery to get on

10   Facebook and update their status, or email people, or

11   plot and scheme to get something done.  And if they

12   are going to plot and scheme, it's going to take

13   quite a bit of work to have somebody drive to the

14   facility, set up a hot spot.  Things like that can be

15   detected.  Anybody can pull up their phone and look

16   at what are the wireless signals around, and what can

17   be jumped on.  These guys are going to have to

18   coordinate with other facilities to be on at the

19   exact same time.  And quite frankly, it's not simple

20   to get some of this stuff done, and it's especially

21   not simple for users who are not sophisticated.

22           We'd like the opportunity to check with

23   Corrections, and see if there is a workaround.  I

24   don't know if Corrections now is saying that they're

25   just going to take their tablets and go home.  If

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that's the case, then our clients don't have

 2    discovery.  It's going to take us, even best case

 3    scenario, 30 days to get a machine put together, a

 4    very basic machine put together, to get back in our

 5    clients' hands.  But the reason why the technology

 6    for them is so important is that there is so much

 7    discovery that having the technology allows them to

 8    do searching, basic searching, so that they can go in

 9    and type in their own name and get all the pieces of

10    paper that come up with their name, just as a

11    starting point.  And then they can go back and forth.

12           All of these facilities are going to limit

13    the amount of paperwork.  They're not going to be

14    easily able to go between different discovery and

15    different things.

16           And as also has been stated, we also need a

17    way for them to watch the videos and listen to the

18    phone calls.  A lot of the CI materials that we have

19    are from the contraband cellphone and wiretaps that

20    have gone there.

21           Your Honor, we would just ask that, as the

22    US Marshals have stated that the Court does have the

23    ability in this case to ask that they be given back.

24           And I think that this is much like the

25    sheet that covered Mr. Baca early on, I think that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    there is a level of maturity and ability to act right
2    that we can have, especially since all of this comes
3    from people that are working with the Government who
4    do these acts and are ruining everything.
5              THE COURT:  All right.  Thank you, Mr.
6    Esquibel.
7              Anyone else want to say anything?  Ms.
8    Johnson.
9              MS. JOHNSON:  Your Honor, I just wanted to
10   clarify a point that was raised during the redirect
11   of Mr. Namoca.  Your Honor, each one of these
12   facilities -- something that was not raised in my
13   cross because I didn't anticipate that coming up in
14   my redirect -- but every one of these facilities has
15   a patrol unit that patrols the parking lot.  So if a
16   car is parked -- and I don't know if the gentleman
17   from Torrance County has left -- but if a car is
18   parked in the parking lot for a period of time, and
19   the person is not an attorney, or the person is not
20   leaving, they are approached and asked to leave the
21   grounds.  So someone can't just go park outside, park
22   outside a facility, and establish a hot spot.  They
23   will promptly be spotted and asked to leave.  So that
24   is an issue that I wanted to make sure the Court is
25   aware of, that this is not just something that can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   happen.

 2              THE COURT:  All right.  Thank you, Ms.

 3   Johnson.

 4              Anyone else?

 5              MR. LOWRY:  Your Honor, just briefly.

 6              THE COURT:  Mr. Lowry.

 7              MR. LOWRY:  When Ms. Armijo first sent the

 8   email inviting us to go inspect the tablets, like I

 9   said earlier, we immediately took her up on that, but

10   we've never had the opportunity.

11              As part of that email, we asked that any

12   tablet that was known to be compromised be preserved

13   for evidence in this matter.  And I just wanted to

14   put that on the record, Your Honor, that all the

15   compromised tablets that we know of, that are in the

16   possession of confidential human sources of

17   information in the Government's employ, be preserved

18   so we can -- at some point in the future, you have a

19   motion to compel access to electronic devices by Mr.

20   Baca's team.  And we'd like to get access to those

21   devices as well, so we could see precisely how these

22   confidential sources used, and perhaps abused, the

23   devices in terms -- to get contraband.  The

24   Government made the comment that they could download

25   pornography, or what have you, from the internet.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              I stand firm in my offer to have Mr. Baca's
 2     tablet inspected and returned.  We're confident that
 3     there has been no misuse.  We'd like to get that back
 4     to him.  But our concern is that the Government
 5     informants were the ones misusing and abusing and
 6     downloading contraband.  And the defense teams are
 7     entitled to know that, Your Honor.  So we'd ask that
 8     they be preserved.
 9              THE COURT:  All right.  Thank you, Mr.
10     Lowry.
11              Anyone else?
12              MR. BENJAMIN:  Your Honor, I just want to
13     simply state that my representations on the record
14     are by the reading of the statement of cause,
15     Document 1107.  That's where I obtained my belief.
16              THE COURT:  All right.  Thank you, Mr.
17     Benjamin.
18              All right.  Anyone else?
19              Well, the marshals are just doing their
20     job.  And I think we can all thank the marshals for
21     their hard work in this case.  They have worked
22     extremely hard, and tried to keep everybody safe in
23     the prisons, in travel, here in the courtroom.  So I
24     think we owe a lot of appreciation for the way that
25     they've worked hard to try to balance a lot of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

17

1    things.

2            I do think under my opinion in Folse, which

3    I issued in response to a motion that Mr. Vigil

4    filed, this is an area in which I do think I retain

5    jurisdiction and the power, because it goes to the

6    interference of effective assistance of counsel.  I

7    think I have the power and the duty to ensure that

8    counsel are effectively representing their clients.

9            I think we've worked hard on the protective

10   order.  We've worked on these tablets.  We've worked

11   hard to create a system that works.  And I'm

12   reluctant to crater the system unless I feel that

13   it's necessary.  I think this may be an ongoing

14   discussion.  I know it's going to be an ongoing

15   discussion because of what I'm going to say.  But I

16   am going to grant the motion for the immediate return

17   of the tablets.  I don't think I have anything in the

18   short term that is going to fill it in.  So the

19   tablets will be returned immediately.

20           What I'll also order is that within three

21   days, which will basically be by the end of the week,

22   I need to have in my hand what modifications to the

23   protective order we need to put in place to reduce

24   the anxiety of the marshals to these tablets being in

25   the facility.  If there is some daily check, some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    more frequent check, something that can be done to
 2    reduce their concern, I'm probably game for it.  So I
 3    think defendants, as you get the request from the
 4    Government, be mindful that I'm going to probably,
 5    given that I'm putting the tablets back in the
 6    defendants' hands, I'm going to be receptive to the
 7    Government having some ability to check these things
 8    to make sure that there is nothing going on.
 9            So I'll give them three days to do it.  If
10    you want to respond to what they have, but I want to
11    put in some protocols.  So be charitable to the
12    Government when you get their list of things, that
13    they're working with the marshals to try to reduce
14    anywhere anxiety about them going in.
15            Long-term, I'm receptive to something more
16    than -- you know, something different.  If we want to
17    go the laptop route, that's fine.  I can check with
18    CJA and see if I can do more, I'm fine there.  If we
19    want to go a different direction, I'm receptive to
20    that.  But I think I've got to get something in place
21    immediately to keep this case on-track, keep the
22    defendants being represented effectively, and ensure
23    that, you know, that we're giving the defendants
24    access to the materials they need.
25            I don't need a gap in this.  And so I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    about the only way to prevent the gap is to get the
 2    tablets back in their hands.
 3           To the defendants themselves -- and I would
 4    ask every counsel to talk to their defendant about
 5    it -- help us out, guys.  I mean, you know, you've
 6    sat here and listened to a lot of stuff.  And it may
 7    have made you interested in doing something.  Don't
 8    do it.  Because if you didn't catch everything,
 9    you're going to lose all your data.  I mean, you're
10    going to be caught promptly.  So you're going to lose
11    all your data, and we're going to know who loses it.
12    And so work with us.  We're trying to get you the
13    documents in your hands.  So don't use these things
14    for anything else.  Just use them for looking at the
15    documents that are on there.  Because if you're not,
16    it's going to be a rather stupid thing, because
17    you're going to lose all your data, and my sympathy
18    level is going to go way down for you, as far as
19    trying to make sure that you get these materials.  I
20    may move more slowly in making sure you get
21    documents, and move on to more pressing matters if
22    you're going to sit there and do that.  So counsel,
23    talk to your defendants.  And defendants, don't do
24    it.  It may sound interesting, it may sound fun, but
25    don't do it.  It's not going to help anybody, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    it's not going to especially help you.

 2              All right.

 3              MS. ARMIJO:  Your Honor?

 4              THE COURT:  Ms. Armijo.

 5              MS. ARMIJO:  Before the return of them, can

 6    we make arrangements to have the inspection done

 7    since they'll be inspected anyway?

 8              THE COURT:  How quickly can that be done?

 9              MS. ARMIJO:  I believe the tablets are here

10    in this building.

11              THE MARSHAL:  Here, and in Las Cruces.

12              MS. ARMIJO:  Here, and in Las Cruces.

13              THE COURT:  Anybody have objection to the

14    marshals checking them to see if they've been

15    tampered with in any way?

16              MR. BENJAMIN:  Your Honor, if we might just

17    structure it so we can go downstairs at the end of

18    the hearing, and just run through it, just counsel

19    with a marshal present, would be my request.

20              THE COURT:  Would that work for you?

21              MS. ARMIJO:  I believe that they would need

22    to know the password, is that correct?  They would

23    need to know their password.  Their attorney --

24              THE COURT:  What if the defendant gave

25    their counsel the password and then they went down
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   and all of them look at it before they leave?  Would
 2   that be okay?
 3              THE MARSHAL:  I'll bring them up here, Your
 4   Honor.
 5              THE COURT:  Okay, that's fine.  SO they're
 6   going to bring them up here.  Get your password from
 7   your client.  Then you can come over there and look
 8   during a break, or something like that.  That way, it
 9   won't interfere with them getting the defendants out.
10              Ms. Harbour-Valdez?
11              MS. HARBOUR-VALDEZ:  Your Honor, for those
12   of us who have already passed inspection, would our
13   clients' tablets be returned today?  I think Ms.
14   Armijo is shaking her head yes.
15              MS. ARMIJO:  Yes.
16              THE COURT:  So if they've already been
17   cleared, you'll get them back today.
18              MR. VALDEZ:  Thank you.
19              THE COURT:  All right.  Let me get my
20   papers here, and we'll go to the next issue.
21              All right.  The next issue that I have is
22   Ms. Johnson, an issue that I guess we've kind of
23   talked about already.  But it's your formal motion, I
24   think, to -- for severance.  I think that's the next
25   one up.  Is there anything more to be said on it?
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                 1-800-669-9492
                                                          e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1          MR. LOWRY:  Your Honor, I have one
 2   housekeeping matter.
 3          THE COURT:  If Ms. Johnson wants to yield
 4   the floor, she can.
 5          MS. JOHNSON:  No problem.
 6          MR. LOWRY:  On the request to preserve --
 7   I'm a little concerned that a confidential human
 8   source is going to abuse their privileges, get their
 9   tablets back and be able to continue to tinker with
10   the data that's on there.  Can we have some kind of
11   ruling on the preservation request?
12          THE COURT:  I don't get the request.  Are
13   you basically roundabout asking that cooperating
14   witnesses not get tablets?
15          MR. LOWRY:  The ones that abused their
16   tablet privileges, yes, Your Honor.
17          THE COURT:  Well, I'm denying that request.
18          All right.  Ms. Johnson.
19          MS. JOHNSON:  I'm sorry, Your Honor.  You
20   wanted for me to reargue my motion to sever?
21          THE COURT:  Oh, I'm not excited about that.
22   But I just -- you know, you did have a formal motion.
23   You raised it earlier.  Can we just consider
24   everything you argued to have been argued, and I've
25   denied the motion?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. JOHNSON:  Well, Your Honor, there is

2     still the Bruton issue.  I've argued that.  So I'd

3     ask that the Court take it under advisement at this

4     time, because we do raise the Bruton issue, and there

5     are some very serious Bruton concerns.

6          And Your Honor, with all due respect, I

7     understand the Court has denied the motion to sever.

8     But I'd like to point out something, Your Honor, that

9     the Court basically denied the defendants in Counts 1

10    through 5 their motion to continue, which puts Mr.

11    Gonzalez in a very tenuous situation, because you

12    have defense counsel and their clients, essentially,

13    all looking at Mr. Gonzalez, and in some form putting

14    pressure on Mr. Gonzalez to cede his right to -- his

15    constitutional and speedy trial right.

16          THE COURT:  I'm rather confident you're not

17    going to bend to any pressure here.

18          MS. JOHNSON:  I won't, Your Honor.  My

19    concern is my client, in that he has asserted his

20    right.  And that, obviously, in a case of this nature

21    you have one defendant who is strenuously asserting

22    his right to a speedy trial, and you have defendants

23    whose attorneys have said, "I'm not ready for trial."

24    So what happens once they leave this courtroom is a

25    concern that I have, Your Honor.  And Mr. Gonzalez

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    insists on his right to a speedy trial.
 2              So I, once again, would ask -- respectfully
 3    ask that the Court reconsider it, and perhaps grant
 4    the motion to continue as to Counts 1 through 5, and
 5    let us go to trial on Counts 13 through 16.
 6              And as to the motion to sever, Your Honor,
 7    I think I've argued it, unless the Court wants me to
 8    continue arguing -- I'm happy to do that -- but I
 9    would ask that the Court not completely deny it,
10    because we do have the Bruton issue.
11              THE COURT:  All right.  Thank you, Ms.
12    Johnson.
13              Any other defendant on that issue?
14              Mr. Castellano, you've been charged with
15    severances.  Anything else you want to say on that
16    issue?
17              MR. CASTELLANO:  Just a question.  What
18    kind of pressure does she fear for her client,
19    because -- something coercive from the other
20    defendants?  Is it something else?  I just want to
21    get clarification on that.
22              THE COURT:  Well, if she wants to tell
23    us -- Ms. Johnson?
24              MS. JOHNSON:  I'm sorry.  I didn't hear Mr.
25    Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Well, he wonders what kind of
 2    pressure you're going to feel, that you're talking
 3    about.  Are you worried about something physical or
 4    are you worried about something else.
 5            MS. JOHNSON:  No, Your Honor, not physical.
 6    But just a pressure for Mr. Gonzalez to, essentially,
 7    waive his right to a speedy trial, and to agree --
 8    because we are standing firm that we are going to
 9    trial.  We are prepared to go to trial in July.  But,
10    obviously, we have concerns that pressures may be
11    exerted.  I don't have anything specific right now.
12            But I do know that counsel for Mr. Garcia,
13    one of his attorneys has prepaid tickets to Europe
14    with his family in July.  So I'm very sorry.
15    Perhaps, Mr. Cooper will try the case alone.
16            But that's a concern, Your Honor, that I
17    think could be alleviated if the Court were to just
18    allow Counts 13 through 16 to go in July.
19            THE COURT:  All right.  Thank you, Ms.
20    Johnson.
21            Anything else, Mr. Castellano?
22            MR. CASTELLANO:  No, Your Honor.
23            THE COURT:  All right.  Well, I'm going to
24    deny the motion.  I may take a look at the Bruton
25    issue so I can give you, basically, kind of a motion
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    in limine, if I've got the tools to do that.  But,
 2    for the reasons stated this morning, I'm going to
 3    deny the motion.
 4            All right.  The next motion that we go to
 5    is the motions we were arguing, I think, back in
 6    February, when we were conducting the hearing.  So I
 7    think that's Mr. Sanchez' -- let's see, is it
 8    Sanchez'?  Okay, yes.  So I think it's Mr. Sanchez'
 9    motion to compel the Government to reveal IDs of CIs.
10            I had heard something that sounded like
11    y'all were ready to -- y'all had an agreement on
12    these; is that correct?  Is this something that you
13    need to come up here, Ms. Fox-Young, to --
14            MS. FOX-YOUNG:  Your Honor, I think we'd
15    just like to put our agreement on the record.
16            THE COURT:  All right.  Then why don't you
17    come up, and maybe you and Mr. Beck can put it on the
18    record together.  Could y'all slow down and maybe
19    then tell me specifically as to which motions, so
20    that I make sure that we're taking care of motions.
21    I know y'all are dealing with particular CIs, but I'm
22    sort of dealing with motions.  So help me out there.
23            MR. BECK:  Yeah.  And I'll go ahead and
24    start, since I can barely read my own writing, and I
25    don't expect Ms. Fox-Young to read it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          But I think the motions that we're
2     discussing here -- and I will read the DeLeon
3     document numbers -- are Document No. 815, that's Mr.
4     Sanchez' motion; 817, Mr. Christopher Garcia's
5     motion; 829, which is Mr. Baca's motion; 872, which
6     is Mr. Alonso's motion; 869, which are Messrs. Troup
7     and Billy Garcia's motion.
8          And so the agreement that the United States
9     and the defendant have come to is sort of -- now,
10    Your Honor is pretty familiar with these protective
11    orders -- it will be -- we will disclose to the
12    defendants in their respective cases, to all of the
13    defendants, the CIs' identities, subject to an
14    attorney's eyes only, and attorney's staff,
15    obviously, protective order.
16         As the Court ordered in February, if that
17    is -- if that doesn't work for a defendant, certainly
18    we're not cutting off their ability to come to the
19    court and ask for disclosure of those identities from
20    the Court to their client.  So if they feel they need
21    to disclose those names to their clients, we're
22    allowing them -- we're not foreclosing their ability
23    to come to you and ask for that.  And we've also said
24    that we'll hear those requests, too, if they want to
25    come to us before they come to the Court.

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                     1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1            THE COURT:  Now, does this motion just
 2   cover Ms. Fox-Young's motion, or this is all of them?
 3            MR. BECK:  All of them, right.
 4            THE COURT:  All right.
 5            MR. BECK:  We've also agreed that there are
 6   a certain number of -- I think Ms. Duncan called them
 7   known informants -- and I think she has a specific
 8   list of known informants.  And so these, as the Court
 9   has seen in other cases, are informants that,
10   basically, everyone knows who they are.
11            THE COURT:  Pretty much everybody but me.
12            MR. BECK:  Right.  Everybody but you,
13   that's right.  You know some of them now.
14            With regard to those, as opposed to
15   delineating a list, I think what's most reasonable --
16   and I'll certainly let the defense attorneys disagree
17   with me, if they disagree -- I think what's most
18   reasonable is just to hold them to their obligations
19   under this order; that if they knew who those people
20   were before we disclosed the identities, they can
21   continue to discuss those identities with their
22   clients.  If they learn it from this, from this
23   disclosure, then those identities are subject to the
24   protective order.  And so we're not asking to -- for
25   all the attorneys to come to us and tell us who they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    know, or come up with a separate order.  We're just
 2    willing to take them at their word that they're going
 3    to abide by the protective order.
 4              The known CIs also include defendants who
 5    have pled guilty.  So they would be able to discuss
 6    those former defendants who have pled guilty in these
 7    cases with their clients as well.
 8              The last part of this is that we've
 9    asked -- to save, I think, a couple forests, we've
10    asked that the --
11              THE COURT:  A couple of what?
12              MR. BECK:  Forests.
13              THE COURT:  Okay.
14              MR. BECK:  We've asked the defendants to
15    withdraw their motions as opposed to asking the Court
16    to rule on them.  And we, the United States, have
17    agreed that if a problem comes up we certainly won't
18    hold them to those withdrawals.  If a problem comes
19    up, and they feel they need refile them, or withdraw
20    their withdrawal, however the Court wants to go about
21    that, that the United States won't stand in their way
22    in doing that.  So I think those are the United
23    States' agreements.  And if I missed something or I
24    misstated something, I think I'll be corrected here
25    shortly.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            THE COURT:  All right.  Thank you, Mr.

 2   Beck.

 3            Ms. Fox-Young, anything there you disagree

 4   with, Mr. Beck put on the record?

 5            MS. FOX-YOUNG:  No, Your Honor.  Just to

 6   supplement, Mr. Beck informed the Court that the

 7   defendants -- and I won't speak for all counsel, but

 8   we reserve the right to litigate the issue as to

 9   whether our clients have access to the identities of

10   the informants who do not fall into the category of

11   known informants, as Mr. Beck described.  And I think

12   Mr. Beck said that.

13            He did not address -- and I don't think we

14   have agreement as to the time period in which these

15   identities will be disclosed.  I'd suggest that --

16   the Government has approached us, and they're ready

17   to make this disclosure.  It would be reasonable that

18   the Court order the disclosure be made within 10 days

19   or two weeks, something in that sort of timeframe.  I

20   don't know if the Government objects to that

21   timeline.

22            And lastly, I think we could determine that

23   the motions and the joinders would be moot upon

24   disclosure, but as the Government indicates, could be

25   reraised if we have an issue down the road.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Instead of you just withdrawing
2    the motion?
3              MS. FOX-YOUNG:  Whatever the Court's
4    preference would be.  I suppose we could withdraw and
5    refile or just -- you know, the Court can order --
6              THE COURT:  If there is a problem, then
7    pinpoint the problem down the road?
8              MS. FOX-YOUNG:  Yes, Judge.
9              THE COURT:  All right.  Let me ask
10   Mr. Beck, anything that Ms. Fox-Young just said that
11   you have any problem with?
12             MR. BECK:  Not at all.  Your Honor.  And I
13   think that was largely the agreement.  I think in
14   Mr. Garcia's stand-alone case we agreed to disclose
15   one business day after the entry of the protective
16   order.  As I said to a number of counsel here, that
17   disclosure was less robust than this one will be.  So
18   I don't know we can make that.  But we will agree
19   now -- so the Court doesn't have to order, we will
20   agree to disclose the identities of these informants
21   within 10 days -- I think that's the shorter end of
22   what was proposed -- within 10 days of the entry of
23   the protective order.  And I will get a protective
24   order to circulate within this group before the end
25   of these hearings this week.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          THE COURT:  All right.  Can you live with

 2    that, Ms. Fox-Young?

 3          MS. FOX-YOUNG:  Yes, Your Honor.

 4          THE COURT:  All right.  If I could put my

 5    gloss on it.  Let's have the motions withdrawn, and

 6    everybody understand they're being withdrawn without

 7    prejudice, so that if they need to be refiled, or

 8    probably refiled in some repackaged way, pointing out

 9    what the current problem is.  Ms. Fox-Young, can you

10    live with that?

11          MS. FOX-YOUNG:  Yes, Your Honor.

12          THE COURT:  Mr. Beck?

13          MR. BECK:  Yes, Your Honor.

14          THE COURT:  Okay.  Mr. Castle?

15          MR. CASTLE:  Your Honor, I take a slightly

16    different approach to it.  I think, if the Government

17    is agreeing to do this, then the Court can order it.

18    The problem is, if we withdraw our motions, and the

19    Government agrees to do it, and then, for whatever

20    reason, can't comply, we have to refile everything

21    and we have to relitigate whether we're entitled to

22    it.

23          If they're conceding we're entitled to it,

24    then I don't see -- and it wouldn't take a forest.

25    All it would take is a one-page document saying the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Government is conceding it, and therefore, the motion

 2   is granted.

 3          The reason I'm concerned about this is, in

 4   the past, we have filed motions, and then the Court's

 5   ordered, and we still are in a position where we

 6   haven't received it, we'll be able to file a motion

 7   for sanctions with Your Honor.  But if there is no

 8   order granting these motions, then we're back to

 9   square one, where we have to go through the whole

10   process of showing why we needed these informants, et

11   cetera.

12          In addition, in our reply to one of our

13   confidential informants, they indicated that the

14   person was deceased.  And we -- in our reply, we

15   indicated the Government needed to inform us when

16   that person died, so that we could analyze it for

17   whether it is grounds for a delay in indictment

18   motion.  So I don't know if the Government is willing

19   to agree to provide that information to us.  But we

20   would ask for that addition.

21          THE COURT:  Well, I guess if the Government

22   is giving you the material, I'm not sure why you're

23   forcing everybody to argue motions that they're

24   giving, and me writing an opinion to determine

25   whether you're entitled to it or not.  If they're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    giving you the information, seems like a lot of

 2    wasted effort.

 3            MR. CASTLE:  No.  I think they're agreeing

 4    that they should produce it.  That means that, you

 5    know, I don't think we have to argue it.

 6            THE COURT:  I think they're agreeing to

 7    produce it.  So I'm not inclined to issue any order.

 8    I'm not inclined to write an opinion giving you the

 9    stuff.  If there is a problem, you can come back to

10    me.

11            MR. CASTLE:  Okay.  Then, with regard to

12    the one informant that had died, can we have an order

13    for the Government to let us know when that person

14    died so we can make the appropriate motion?

15            THE COURT:  Do you have any problem with

16    that, Mr. Beck?

17            MR. BECK:  You don't need to order that,

18    Judge.  If we have that information, we're happy to

19    supply it.

20            THE COURT:  All right.  Thank you,

21    Mr. Castle.

22            Mr. Adams?

23            MR. ADAMS:  Yes, sir.  Judge, I just wanted

24    to make sure the record was clear on our motion.  It

25    was listed as 817, which is correct, in the 4268
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    case.  It was number 146 in the 4275 indictment, and

2    number 286 in the 1613 indictment.

3           And my only question of clarification is,

4    for the 4275, we received a list of some of the

5    documents as to who the sources were.  And I assume

6    we'll also be receiving the unredacted copies of the

7    discovery at some time in the near future?

8           MR. BECK:  No, Your Honor.  And this goes

9    to -- I mean -- so there are certain things that we

10   redacted because they are PII.  There are also

11   certain things that we redacted because they are ways

12   and means of investigation.  So we won't be taking

13   away those redactions, because they certainly would

14   be telling about the way certain law enforcement

15   agencies conduct confidential informants, which I

16   don't think falls within Roviaro, or Brady or Giglio.

17          So I will distinguish that, I think if

18   there are certain documents that, perhaps, defendants

19   want a birth date or something unredacted, we redact

20   those, or addresses, PII, certain things like that,

21   we might consider that.

22          But the disclosure in this case would be

23   the identities.  And so to give a little background

24   to the Court and for all defendants, since everyone

25   will be receiving this:  The way that we put together

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the disclosure in Mr. Adams and Ms. Sirignano,

2    Mr. Garcia's drug trial case, is we put a letter

3    together with the CIs' identity, and then the Bates

4    numbers of reports where that CI is the CI in those

5    reports.

6              So it's probably more than -- well, I don't

7    know if it's more than they're asking for -- but they

8    get a lot of information.  I don't think that they

9    need -- and I don't think it's proper to disclose

10   information that would reveal certain methods and

11   means of law enforcement.

12             THE COURT:  All right.  Mr. Adams?

13             MR. ADAMS:  We'll take what they --

14   pursuant to the agreement that people entered into,

15   we'll take the list and see where that leads us.  But

16   our motion, Your Honor, had been to reveal the source

17   and to unredact the materials.  So I anticipate that

18   we'll be back at least on some of these matters soon.

19   If the Government looks at some of them, it may be

20   that they can agree to do that.  If not, we'll be

21   here with all 17 motions.

22             THE COURT:  Well, and I've ruled on this

23   several times.  And I'm not going to force the

24   Government to just unredact stuff for everybody's

25   interest.  You've got to make a Brady showing.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    They've got to look at it.  If they're redacting

2    material, they've got to look and see if it falls

3    within Brady, Giglio, Rule 16.

4             But, you know, some of this stuff, like

5    Social Security numbers and addresses of places, and

6    stuff like that, I've cautioned everybody about.  I'm

7    not going to probably require the Government to

8    disclose that stuff.

9             So, if you come back, come back with a real

10   rifle shot, rather than just a shotgun wanting

11   everything unredacted, because you're probably not

12   going to win that.

13            MR. ADAMS:  Yes, sir.  Thank you.

14            THE COURT:  All right.  Other than

15   Mr. Castle, it looks like everybody has got an

16   agreement.  Anybody --

17            MS. JACKS:  As usual, I'm a cog in the

18   wheel.  Amy Jacks on behalf of Mr. Sanchez.

19            Here's my concern, and I was just

20   discussing with Mr. Beck -- the first I heard of this

21   agreement was at 1:12 this afternoon.

22            I think there is an issue with agreeing to

23   never identify or discuss the identity of an

24   informant with our clients.  I think it's really a

25   two-fold problem.  One, I think it creates a

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                             Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                             FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    potential wall or problem just in client relations,

2    where we know things that we aren't permitted to

3    discuss with our clients.

4           But the other thing is, in order to perform

5    the job of a defense lawyer competently, one of the

6    things I'm supposed to do is discuss the witnesses

7    with Mr. Sanchez, and find out what he knows about

8    them, who they are, what sort of things they've been

9    involved in, various areas that should be pursued

10   with respect to investigation.  And so I'm reluctant

11   to agree to something where I'm never -- there is no

12   mechanism for me to ever discuss the identity of that

13   person.

14          THE COURT:  You've got two choices:  We can

15   take up your motion and you can argue them, and I can

16   decide whether they're going to be disclosed at all,

17   or you can take the offer.  What do you want?

18          MS. JACKS:  What I don't want to do is be

19   precluded from disclosing them or arguing about

20   disclosing them.

21          THE COURT:  I think Mr. Beck said you can

22   come back to him, and we'll take them one at a time.

23   I guess, if I were in your shoes, I'd take the

24   information I have, you probably already know anyway,

25   and see if you need to come back.  And if you come

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    back, and Mr. Beck doesn't agree, you can come back

 2    to me.

 3              MS. JACKS:  And --

 4              THE COURT:  Otherwise, we take the motion

 5    up, and I'll decide whether you're going to get any

 6    disclosures this afternoon.

 7              MS. JACKS:  If we do agree -- and I want to

 8    have a chance to discuss that with my client -- we

 9    wouldn't be seen as waiving the argument that he is

10    entitled to know their identity at some point.

11              THE COURT:  I think Mr. Beck has made that

12    clear this afternoon, that you're not waiving that

13    argument.

14              MS. JACKS:  Well, I have one other point,

15    which is, in other situations like this, I think just

16    the fact that this person might be a witness for or

17    against my client permits me to discuss that with him

18    at some point.  So I'm not quite sure what additional

19    showing would need to be made.  It's unclear to me.

20    And I'm not sure there is any case law on it.  The

21    fact is that the defendants possess information the

22    lawyers don't about the bias, motive, and other

23    interests of the witnesses that will be potentially

24    testifying.

25              THE COURT:  I'm not sure what you want me
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   to do with that.

2         MS. JACKS:  Well, what I'd like is if as

3   part of this agreement, that we are entitled to

4   discuss the identity of these informants with our

5   clients at a date prior to trial.

6         THE COURT:  If you want that, we better

7   take up your motions.  It doesn't sound like you're

8   part of the agreement.

9         MS. JACKS:  Well, the agreement was

10  published at 1:12 this afternoon, Your Honor.  I was

11  actually walking back from --

12         THE COURT:  It's called court.  We're

13  having a motion hearing.  What do you want,

14  Ms. Jacks?  Do you want to be part of the agreement

15  or do you want to take up your --

16         MS. JACKS:  What I'd like is an opportunity

17  to discuss it with my client.  What I don't want to

18  cause is a problem between myself and Mr. Sanchez.

19         THE COURT:  Well, we're having a hearing.

20  Do you want me to take up your motion?

21         MS. JACKS:  I think, in terms of my motion,

22  my part of it, I think I fully argued it and sat down

23  as of the last court hearing.  We were in other

24  people's joinders, I think.

25         THE COURT:  All right.  Other than

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Ms. Jacks and Mr. Castle, anybody else have a problem
 2   with the agreement, as has been outlined by Mr. Beck
 3   and Ms. Fox-Young?  Let me see if anybody else -- Mr.
 4   Castle, it's not directed at you right at the present
 5   time.
 6            All right.  So I'm going to then understand
 7   that the motions that have been directed by all the
 8   defendants, except Ms. Jacks and Mr. Castle, are
 9   going to be withdrawn.  That will be 817, 829, 869 --
10            THE CLERK:  Not 869.
11            THE COURT:  Not 869.  Let's see, 817, 829,
12   and 872.  815 and 869 are the alive ones.  So 817,
13   829, 872 will be withdrawn pursuant to the agreement
14   that we have.  What's alive is 815, 869, which is
15   Sanchez and Garcia respectively.  Anyone else?
16            All right.  So that's what I understand the
17   agreement to be.
18            Mr. Castle?
19            MR. CASTLE:  Yes, Your Honor.  I thought
20   the Court had talked me out of it up there, but --
21   and I thought I, at that point, said okay.  But if
22   not, we'd prefer to have the agreement as outlined by
23   the Government than to go through the hearing.
24            THE COURT:  All right.  So Mr. Castle joins
25   the agreement, and his motion will be withdrawn.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   He'll get the information.  If he needs to come back,

2   he will.  What number is that?

3            THE CLERK:  869.

4            THE COURT:  That's 869.  All right.

5            MS. JACKS:  And, Your Honor, I've had an

6   opportunity to discuss things with Mr. Sanchez, and

7   we will agree to withdraw 815 pursuant to the

8   agreement.

9            THE COURT:  All right.  So 815 will be

10  withdrawn as well.  And that will be 10 days, then,

11  from today, the identities will be disclosed.  If

12  people want more redactions, they want more

13  information, they want to use it differently, they

14  can -- those are withdrawn, but they're not withdrawn

15  with any prejudice.  They're free to renew those.

16           All right.  So I'm looking at my number 11

17  on the batting order, which I think is a sealed

18  motion to compel Rule 16 and Brady materials in order

19  to preserve law enforcement notes.  And, Mr. Villa,

20  Ms. Fox-Young, I believe these are your motions.  I

21  think the next two of them are as well.  So if you

22  want to argue them in different order you may.

23           MS. FOX-YOUNG:  Thank you, Your Honor.

24  We'd like to first argue the motion to compel, and

25  then follow with the motion to seal, unless the Court

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    has an objection.

2              THE COURT:  All right.  Go ahead.

3              MS. FOX-YOUNG:  Okay.  Document 1037, which

4    is our sealed motion to compel, asks for a number of

5    categories of information.

6              I'll just tell the Court to begin, a number

7    of these items pertain directly to the voluntariness

8    of statements that Mr. Perez is alleged to have made.

9    Of course, as the Court knows, the voluntariness of

10   those statements is always an issue at trial,

11   under -- we cited Dickerson versus United States.

12             In addition -- and we haven't yet filed

13   it -- but we intend to file, as we've briefed, a

14   motion to suppress involuntary statements by our

15   client.  And on that basis we ask for additional

16   information pertaining to the circumstances

17   surrounding these statements.  We cite Rogers --

18   well, we will cite Rogers versus Richmond in our

19   motion to suppress.

20             As the Court knows, the prosecution has the

21   burden at a hearing on a motion to suppress to

22   provide the Court with a preponderance of evidence

23   that the statement is voluntary.  And so just as a

24   backdrop, so the Court understands, that is a context

25   for a number of our requests.  So under -- pursuant

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
1    to Rule 16 and Brady and its progeny, we ask for
2    first, any and all written and/or recorded statements
3    made by Defendants Montoya, Armenta, and Martinez.
4    These three defendants made at least -- each of them
5    was interviewed, or proffered statements more than
6    once in the immediate aftermath of the alleged murder
7    of Javier Molina, much closer in time to any recent
8    statements that they may have made.
9            And as we briefed, none of these
10   defendants' prior statements to law enforcement
11   mentioned Rudy Perez in any way.  They don't mention
12   his involvement in the murder or conspiracy to murder
13   Javier Molina.
14           And these defendants all made statements in
15   2014.  The murder is alleged to have occurred in
16   March 2014.  And so we asked for the recent
17   statements that we believe these defendants made as
18   part of their cooperation with the Government.
19           The Government points out that in our
20   initial request we made a broad request for any and
21   all statements made by these defendants.  In our
22   reply we note that we confined this request to
23   statements made with respect to the murder of Javier
24   Molina, with respect to Counts 6 and 7.  And the
25   Court should know that the prior statements that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   these defendants have made, produced in discovery,

2   with regard to Mr. Perez, are entirely consistent

3   with our client's contention that he did not conspire

4   to murder Mr. Molina by allowing pieces of his walker

5   to be taken for the murder.  And so there simply is

6   no other evidence from these defendants that

7   Mr. Perez conspired and participated in that murder.

8   Mr. Perez was in his cell at the time Molina died,

9   and he was not a hands-on participant.

10           So we ask for those statements.  I think

11  they're clearly exculpatory and should be turned over

12  immediately.  And we cite Sommers; the prosecution

13  has an affirmative duty to disclose exculpatory

14  evidence on those.

15           The second category --

16           THE COURT:  Well, let's take these one

17  category at a time --

18           MS. FOX-YOUNG:  Sure.

19           THE COURT:  -- and maybe I can sort of get

20  my mind around each one of these categories.

21  Anything else you want to say on this first category?

22  What you're calling the "first category," it's your

23  paragraph 2 in your motion; correct?

24           MS. FOX-YOUNG:  In our motion, it is 1-A,

25  beginning on page 9, and continuing to page 11.  I

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    guess, Your Honor, I'd just add that these materials

2    are clearly in the custody and control of the

3    Government.  We think that they're likely to uncover

4    further admissible evidence, to help prepare our

5    witnesses, to inform our trial strategy, and to

6    assist in impeaching these witnesses, and in

7    rebuttal.  And we'd cite Case versus Hatch, Tenth

8    Circuit case from 2013.  I think this clearly meets

9    the materiality standard with respect to these

10   statements.  We really require them in order to

11   properly investigate the case in advance of trial,

12   for additional witness interviews, investigation, and

13   other -- obtaining other information from sources

14   prior to trial.

15             THE COURT:  All right.  Thank you, Ms.

16   Fox-Young.  I know you had some people join you in

17   this motion.  Anyone else want to speak on -- I guess

18   we're talking about the written and recorded

19   statements of Montoya, Martinez, Armenta.  Anyone

20   else?

21             All right.  Let me have the Government

22   respond.  Let me see if I can take these in bites, so

23   I can get a handle on it.  Mr. Beck, are you arguing

24   this motion?

25             MR. BECK:  It sounds like it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  I assume there are some written

2    and recorded statements of these three individuals

3    that have not been produced?

4          MR. BECK:  Yes, Your Honor.  And those are

5    being withheld as Jencks materials, now that they are

6    Government witnesses in this case.

7          The United States understands that there

8    may be materials that may be Brady or Giglio,

9    depending on what is said in these, and the United

10   States is reviewing those.

11         THE COURT:  So you're going to take a

12   Jencks, Giglio, and Rule 16 review, and if you see

13   any Brady, Giglio, Rule 16, you'll produce that

14   immediately, and then the rest of it is Jencks

15   material, and you'll produce -- what's the date now

16   for this trial?

17         MR. BECK:  The date for this trial, I don't

18   know has been set.  This is the trial that now is the

19   second half of the severance order.

20         THE COURT:  I didn't ask that question very

21   well.  But when are you going to disclose the Jencks

22   material before the trial?

23         MR. BECK:  I think the Brady material -- I

24   think our discovery obligations and disclosure

25   obligations for Brady and Rule 16 are ongoing.

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                    1-800-669-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                   e-mail: info@litsupport.com

```
 1              THE COURT:  Right.  But you had indicated
 2     that y'all were going to do Jencks at a certain
 3     period, I thought, before trial.  Is my memory off?
 4              MR. BECK:  No, I think that's right.  I
 5     don't have that in front of me.  With the different
 6     trials that we have going here, two months?
 7              MS. ARMIJO:  Two weeks.
 8              THE COURT:  Two weeks before trial would be
 9     your Jencks disclosure.
10              MR. BECK:  Right.  So these statements from
11     Montoya, Armenta, and Martinez that were taken after
12     they agreed to plead guilty, in conversations with
13     the Government after this had taken place, are Jencks
14     statements, now that they are witnesses in this case.
15     The United States understands, of course, that for
16     certain information provided by these folks that will
17     be Brady and Giglio material, and that we will have
18     to disclose pursuant to that.  And we are reviewing
19     those, we'll review those, and disclose them.
20              And I think Ms. Fox-Young is correct, that
21     given the statements before these defendants pleaded
22     guilty, that may make more material Brady-Giglio than
23     would otherwise be.
24              So I'm sure that's an insufficient answer
25     for her without timing here.  But the United States
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    understands where she's coming from, and is reviewing

 2    and will review closely this material and disclose

 3    it.

 4              THE COURT:  All right.  Thank you, Mr.

 5    Beck.

 6              That sounds like all you're entitled to.

 7    Do you think you're entitled to more?  I know you'd

 8    like more.  But do you think you're entitled to more?

 9              MS. FOX-YOUNG:  Your Honor, I think we're

10    entitled to all the Brady and Giglio that these

11    statements contain.

12              First, I'd just like to point out that a

13    member of the prosecution team, at least one, was

14    present for all of these statements.  So I'm not sure

15    what extensive review would need to be made.  At the

16    time of the statements, the Government was made aware

17    of their content.  So I think the production should

18    be immediate or near immediate.

19              But, secondly -- I'm sorry, Your Honor, did

20    you have a question?

21              THE COURT:  Well, you know how that goes.

22    I mean, they probably have an FBI agent preparing a

23    302, and they've got to read the 302, and then make a

24    line-by-line determination as to whether it's

25    produced now or it's Jencks material.  So that can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   take a little time.

2          MS. FOX-YOUNG:  I understand that can take

3   a little time.  We're several weeks out.  I think we

4   may be at least six weeks out.  So I don't know what

5   further delay would be justified.

6          Secondly --

7          THE COURT:  Let me ask Mr. Beck:  Can we

8   put a deadline on when you'll complete your Brady,

9   Giglio, and Rule 16 review, to decide which, maybe,

10  category this goes into?

11         MR. BECK:  Sure.  There is a lot of

12  statements here.  I understand we've got to review

13  that.  So I would say 30 days would be sort of the

14  short end, but we could get it done by then, which I

15  think would be June 9, if we're looking at today.

16         THE COURT:  What do you think about that,

17  Ms. Fox-Young?

18         MS. FOX-YOUNG:  We'd like it as soon as

19  possible.  But I understand the Government is working

20  on it, if the Court is comfortable with that

21  timeline.

22         But I would say, backing up, I think we're

23  entitled to the statements in their entirety.  And

24  here is why:  As Mr. Beck has acknowledged -- and

25  we've briefed and argued the prior statements of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    these defendants are exculpatory to Mr. Perez.  And

2    so the recent statements made in the context of their

3    cooperation, contemporaneous with their pleas, are

4    either consistent and also exculpatory, or clearly

5    impeachment.  Clearly, Giglio material, because

6    they're given in exchange for favorable treatment.

7    And think we're entitled to the statements in their

8    entirety on that basis.  Not merely to a review,

9    which of course, the Government should be doing as a

10   matter of course on all of this material for Brady

11   and Giglio.

12             I would also like to address the Jencks

13   deadline, but I think that's a separate issue.

14             THE COURT:  Let me ask Mr. Beck:  Do you

15   see a flaw in what Ms. Fox-Young is saying?  I mean,

16   that sounds -- if I was about to undertake your task,

17   I would think, with those eyes, that makes some sense

18   to me.  Do you see any flaw in it?

19             MR. BECK:  Well, I think there is

20   additional information.  And that would be that there

21   appeared to be statements from these defendants out

22   there that the United States doesn't have.  So I

23   think we've talked about, a number of times, their

24   reciprocal discovery in this case, which I think the

25   deadline has now passed.  We haven't been provided
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   reciprocal from all defendants.  We have been

 2   provided reciprocal discovery from some.  And I think

 3   Ms. Fox-Young and Mr. Villa are included in that;

 4   they have provided us with reciprocal discovery.  So

 5   for those statements we don't have, obviously, we

 6   can't compare those with the newer statements.

 7           Now, turning to what, I think, she's

 8   getting at, that the entire statements may be Giglio,

 9   I think she has a valid point there.  I think courts

10   also distinguished disclosure obligations in terms of

11   timing.  And I think this Court has distinguished

12   disclosure obligations in terms of timing between

13   Brady and Giglio.  Brady comes earlier.  Giglio must

14   be before the defendant pleas.  So I certainly see

15   what she's getting at.

16           And you asked me to answer a question, and

17   like any good attorney, I deflected.

18           THE COURT:  Well, you'll look at these

19   documents with --

20           MR. BECK:  I see her point.

21           THE COURT:  Because now you've had the

22   benefit of defense counsel saying how they're going

23   to use this.  And I'm not quickly coming to -- I

24   don't quickly see a flaw.  So take a careful look at

25   them with their arguments in mind.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              All right.  Did you want to address the
 2   Jencks?  Do you want to tackle that one, or have we
 3   already beaten that up enough over the last few
 4   months?
 5              MS. FOX-YOUNG:  I think we have thoroughly
 6   covered and beaten that dead horse.  And I think we
 7   can address that in the context of our --
 8              THE COURT:  Some dead horses need beating.
 9              MS. FOX-YOUNG:  In the context of our
10   scheduling order, although I would say that I think
11   that in this case an earlier Jencks deadline is
12   warranted.  But we can discuss that separately.
13              So on this category, we'd ask the Court,
14   particularly based upon Mr. Beck's recent assertions,
15   not just to ask the Government to do a review, but to
16   disclose the statements.  If there are statements by
17   these defendants that have nothing to do with the
18   Molina case, with Counts 6 and 7, we're not asking
19   for those.  But I think Brady -- I think even the
20   Government concedes that they constitute Brady and
21   Giglio material.  I don't know what the Government
22   cites, and I'm not aware of this Court's rulings
23   about Giglio being producible later --
24              THE COURT:  I don't think he's drawing a
25   distinction there.  Right, Mr. Beck?  You're going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    to --
 2            MR. BECK:  No, Your Honor, I think there is
 3    a distinction between the timing of disclosure of
 4    Brady and Giglio material.
 5            THE COURT:  From Jencks?
 6            MR. BECK:  No, from each other.  I think
 7    this Court has looked at it in many opinions.  I
 8    think the Tenth Circuit and the Supreme Court have
 9    looked at it in Giglio, which is impeachment
10    material, they have said basically equates to Brady,
11    in terms of whether it may materially alter the
12    outcome of the case.  So, substantively, they have
13    said -- and "they" being this Court, the Supreme
14    Court, the Tenth Circuit -- have held that
15    impeachment material may materially alter the
16    outcome.  And so it is on the level with Brady.  But
17    they have made a distinction in terms of the timing
18    of disclosure, and they have said that Giglio
19    information must be disclosed before the defendant,
20    basically, can plead guilty.  The courts have held
21    that that comes right up to the morning of trial.
22    And I don't think we're holding this stuff for the
23    morning of trial.
24            But I do think that there is a difference,
25    in terms of when you must disclose exculpatory
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    material under Brady, and when you must disclose

2    impeachment material under Giglio.  Those two things

3    are different.

4                THE COURT:  Well, if I have said that in

5    the past, I certainly don't mind being reminded of

6    it.  So if you have a cite to my opinions, or

7    something where I've said in the past, you may well

8    be right.

9                MR. BECK:  I'm not sure you put it in my

10   words, which are great.  But I think that Your Honor

11   has cited to the Supreme Court decision, as I was

12   looking at it last week.  And I will find whichever

13   of Your Honor's opinions --

14               THE COURT:  Let's do this, because it's not

15   coming to my mind for me:  For the present time I'm

16   not drawing a distinction between Giglio and Brady

17   for timing purposes.  I'll make that ruling subject

18   to reconsidering, if I've written on this and made a

19   distinction in the past.  I certainly have made

20   distinctions between Brady, Giglio, Rule 16, and

21   Jencks.  But I don't recall making a distinction

22   between Giglio and Brady.  So I'll make that ruling,

23   but it will be subject to the maybe revisiting, if

24   I'm reminded that I've made an informed decision in

25   the past otherwise.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          MS. FOX-YOUNG:  Okay.  Your Honor, just to
 2    clarify, is the ruling that the statements are to be
 3    produced, or that they are to be reviewed?
 4          THE COURT:  They're to be reviewed.  If you
 5    can live with the June 9th date, they'll need to
 6    produce all Brady, Giglio, Rule 16 material.  They
 7    need to be reviewed with the eyes of the arguments
 8    that you made and then the Jencks material be
 9    produced 14 days before trial.
10          MS. FOX-YOUNG:  Okay.  Thank you.
11          THE COURT:  So there may be some statements
12    that, you know, they make a statement that they don't
13    fall within Brady or Giglio or Rule 16, and so they
14    don't have to immediately disclose them.  And if they
15    don't, then it comes to you two weeks before trial.
16          MS. FOX-YOUNG:  All right.  Thank you, Your
17    Honor.
18          Is the Court looking at the clock?
19          THE COURT:  We can keep going.
20          MS. FOX-YOUNG:  Okay.  We'll move to the
21    second category of materials, which begins on page
22    11, Subsection B.  And that's plea addenda for the
23    same defendants:  Defendants Montoya, Armenta, and
24    Martinez have each pled guilty to Counts 6 and 7, and
25    their plea agreements -- not the addenda to those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    plea agreements -- but the plea agreements have been
 2    made public.  And, Your Honor, we argue that -- and I
 3    think it's pretty clear that the plea addenda for
 4    these defendants contain something with regard to the
 5    benefits that each these cooperators expect to
 6    receive in exchange for subsequent testimony.  And
 7    this really is classic impeachment material.
 8              So pursuant to Brady, and also pursuant to
 9    Rule 11 of the Federal Rules, we cite United States
10    v. Roybal -- which is your case from 2014 -- the
11    addenda should be turned over.  "Rule 11(c)(2)
12    provides very clearly that parties must disclose the
13    plea agreement in open court when the plea is
14    offered, unless the court for good cause allows the
15    parties to disclose the plea agreement in camera."
16    We have reviewed the public recorded -- the
17    recordings of the public portions of these
18    defendants' pleas, and there was no good cause
19    finding, there were no findings whatsoever by the
20    magistrates who took these pleas.  The Government did
21    not provide any basis for good cause to refrain from
22    disclosing the addenda, or to allow them to disclose
23    the addenda in camera.  And there is some allowance
24    under the rule and the case law that that may be
25    done.  But Rule 11(e)(2) is very clear that all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    material terms or material details or elements of
 2    agreements must be disclosed.
 3              THE COURT:  So you don't know if there is
 4    an addenda?  You're just saying, if they exist, you
 5    want them turned over?
 6              MS. FOX-YOUNG:  Well, Your Honor, I don't
 7    know 100 percent, although addenda are referenced in
 8    the pleas.  The written pleas could be boilerplate
 9    language, but I don't think it is.  And based upon
10    the hearings that were conducted, it's clear that
11    there were some portion of the plea hearings that was
12    done at the bench.  And we believe the subject of the
13    plea addenda was discussed there.  And so for all
14    those reasons, we think we're clearly entitled to the
15    addenda.
16              Additionally -- and the Court has made
17    reference to the First Amendment right to access
18    documents, materials, portions of the case, and
19    portions of documents, in this case in a prior
20    hearing, which we cite from June 2, 2016.  When the
21    Court deals with the issue of filing documents under
22    seal, and the encourages the parties not to file
23    documents under seal without a basis, the Court there
24    is really dealing with the First Amendment right that
25    we see in Copley, In Re:  Copley Press, Inc. from the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    Ninth Circuit 2008, which we cite, which says, "The
 2    public has a First Amendment right to access the
 3    cooperation addendum in that case to a plea
 4    agreement," finding that the district court did not
 5    abuse its discretion in unsealing those portions of
 6    documents, describing cooperation.
 7             We also cite the D.C. District, Washington
 8    Post versus Robinson, where the Court vacated orders
 9    sealing a plea agreement of a criminal defendant who
10    cooperated in the prosecution of Mayor Barry, for
11    cocaine possession, and saying the same thing:
12    "Under the First Amendment, plea agreements are
13    presumptively open to the public and the press."
14             We cite U.S. versus McVeigh:  "Sealed
15    orders are really to be narrowly tailored to the
16    compelling fair trial interests at stake."  And other
17    cases.  I won't go through everything.
18             For all those reasons, pursuant to Brady,
19    Rule 11, and the First Amendment, we don't think the
20    requisite findings have been made by this Court or by
21    a magistrate to seal these materials and to prevent
22    Mr. Perez from accessing them.  And we think the
23    Court should order them disclosed.
24             THE COURT:  Well, I can disclose I don't
25    think I've taken a single plea in this case.  So, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    know, I can sort of indicate that I haven't ordered
2    it.  So if anything is being ordered, it's being done
3    at the magistrate judge level.
4              MS. FOX-YOUNG:  Yes, Your Honor.  When I
5    said "the court," I meant broadly.
6              THE COURT:  I know.  I know, but I just
7    wanted to indicate that -- so when I'm asking
8    questions here, it's because I don't know what
9    exists, because I haven't sealed anything.
10             MS. FOX-YOUNG:  So it's our position that
11   Mr. Perez' right to a fair trial is impaired, the
12   withholding of these addenda, for these reasons.
13             THE COURT:  All right.  Anybody else want
14   to speak on that before I hear from Mr. Beck?
15             Mr. Beck, let me ask questions here.  If
16   you don't want to answer, we can figure out what to
17   do.  But the first question:  Are there addenda to
18   the plea agreements?
19             MR. BECK:  I'm thinking about how to answer
20   this.  I think it depends on how Your Honor, and I
21   guess the rules committee -- which we'll never
22   know -- defined "plea agreement."  Because I think
23   there are different ways.  I think there can be a
24   written plea agreement.  And in some of these cases
25   there certainly are addenda.  But in some of these
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    cases the addenda was entered after the plea
2    agreement was entered by the defendant, but it was
3    contemplated at the time.  So I guess, without making
4    too fine a distinction, the answer would be yes.
5              THE COURT:  All right.  And are those filed
6    under seal?
7              MR. BECK:  They are not filed at all.  I
8    believe -- I don't have a plea agreement in front of
9    me -- but I'm sure everyone else in this room is much
10   more familiar with the plea agreements than I am --
11   in this district than I am.  But I believe the plea
12   agreement refers to the plea agreement in any
13   addenda.  It doesn't say that the addenda --
14             THE COURT:  That's just standard plea
15   language; correct?
16             MR. BECK:  That's my understanding.
17             THE COURT:  Well, let me --
18             MR. BECK:  So I guess I don't see any
19   requirement that a good cause finding needs to be
20   made on the record specifically.  I do -- I have read
21   the comments to the rules.  And I don't have them in
22   front of me, but I believe there is a rules committee
23   comment that says that the good cause findings can be
24   made on the record or in camera on a case-by-case
25   basis.  And that's -- so that's not a quotation, but
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   memory serves me, that's sort of --
 2            THE COURT:  Well, without arguing whether
 3   these were properly sealed, or if they were never
 4   filed -- I guess if they're never filed -- I'll come
 5   back to some questions I have on that -- but would
 6   you agree that they're Brady material, or at least
 7   Giglio material?
 8            MR. BECK:  If I were sitting in Ms.
 9   Fox-Young's shoes, I would want to impeach the
10   witness with it.
11            THE COURT:  So regardless of how we got
12   here, do you have any problem with me ordering the
13   production of the addenda to plea agreements?
14            MR. BECK:  Yes, I do.  But I can see that
15   you probably would have legal grounds to find that
16   they are Giglio.  And as you're ordering us to
17   produce Giglio, you'd likely conclude that we produce
18   those as Giglio.
19            THE COURT:  Yeah, it seems to me this is
20   sort of classic impeachment material.  What did you
21   get from the Government to sit here and testify?  So
22   I think it's got be turned over.  I'll take a look at
23   your -- anything you want to say on timing.  It seems
24   to me it's probably --
25            MR. BECK:  I think you and Ms. Fox-Young
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   are right.  I think it is impeachment material and it

2   is Giglio.

3           THE COURT:  We don't need to tackle this

4   issue today, but it gives me a little concern to find

5   out that there are continuing agreements after a plea

6   is taken.

7           MR. BECK:  No.  I hear what you're saying,

8   and I misspoke about that, because I agree --

9   because, obviously, like I said, everyone in here is

10  more familiar with plea hearings than I am, but --

11  maybe not everyone, but most -- they ask:  Are there

12  any other agreements that you have before you enter

13  this plea.  And I misspoke, that I think in one or

14  two cases it was signed immediately after.  But it

15  was part -- and that's why I said it is -- the plea

16  agreements have addenda, because it is part of the

17  agreement.  So the parties contemplate that.

18          THE COURT:  Okay.  Well, just give some

19  thought that, if you have some defendants who are

20  entering into additional agreements afterwards --

21          MR. BECK:  Well -- and that's what I'm

22  saying I misspoke about is -- and why I said it

23  depends on what the Court and the rules committee are

24  referring to as a plea agreement, and I think that's

25  a distinction we made in contract law.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1          What I'm saying is is that the addenda are

2    part of the plea agreements.  It may have been signed

3    after the plea hearing, but all the parties entered

4    into the addenda with the plea agreement, even if it

5    wasn't -- and we're not talking days or months or

6    weeks or minutes.  We're talking, like, immediately

7    afterwards.  So that's what I'm saying, is that --

8          THE COURT:  Well, let's do this:  We don't

9    need to get into it much today.  But you may want to

10   go back and look at those with the defendants.

11   Because most of my experience has been that, when I

12   take a plea, you know, they're sitting at the podium,

13   and they're signing it right there, or confirming

14   it's their signature, and it's a very formalistic

15   thing.  If there is agreements afterwards, just give

16   some thought whether they need to be repled, so that

17   the defendant goes through a colloquy with the

18   magistrate judge or the judge to make sure that they

19   know what they're giving up, and what they're -- what

20   the agreements are.  It gives me a little bit of

21   concern if there is stuff going on afterwards.

22          MR. BECK:  That's why I was trying to clear

23   it up with Your Honor.  I understand what Your Honor

24   is getting at.  And it doesn't cause me any concern

25   about the plea colloquy and those --

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                              1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

```
 1              THE COURT:  Covered what was in the
 2    addendum?
 3              MR. BECK:  I understand what Your Honor is
 4    getting at.
 5              THE COURT:  Okay.  So it sounds like you're
 6    going to get these right.  At the moment you're going
 7    to get them with the Brady material.  That's subject
 8    to looking at something where I may have said that
 9    Giglio and Brady could be split up as far as timing.
10              But, Ms. Duncan, did you have something you
11    wanted to say on this issue?
12              MS. DUNCAN:  Your Honor, just briefly.
13              This is a matter of judicial economy.  I
14    understand that the defendants -- many of the
15    defendants who have entered into guilty pleas so far
16    will be testifying at trial against various
17    defendants, and at least one other defendant who will
18    be testifying against Mr. Baca.  So given the
19    acknowledgment that these addenda are Giglio
20    material, we'd just ask that the Court's order
21    encompass all the addenda for the defendants who have
22    pled so far in this case.
23              THE COURT:  Any objection to making this
24    ruling for all the defendants, Mr. Beck?
25              MR. BECK:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  So it will include all

2    defendants.

3          Ms. Fox-Young?

4          MS. FOX-YOUNG:  Your Honor, not to belabor

5    the point at all, but I wonder if the Court might

6    order a slightly earlier disclosure -- since there is

7    no review that needs be done -- earlier than June 9.

8    I understand there is a review of the statements,

9    potential redactions.  But here, the Government has

10   all the addenda.  It seems to me they could be

11   disclosed within a matter of a couple of days.

12         THE COURT:  Can we -- do you want to -- do

13   you got an earlier date on this one, Mr. Beck?

14         MR. BECK:  Hold on.  I've got four voices

15   in my head, and only one of them is external right

16   now.  I think we need 30 days on this as well.  And

17   I'm not sure if that's what the Court was asking.  I

18   think 30 days is -- we just moved offices in Las

19   Cruces.  Our servers and files and things have been

20   moved around.  So we know in which files these

21   documents are.  We may not know where the files are.

22   And so I think we need 30 days to disclose these.

23   But I will represent to the Court that if we locate

24   them earlier, and we can get them out within 30 days,

25   we will.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                     1-800-669-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1        THE COURT:  Well, I think on this, this is

2    pretty mechanical.  Just take all the people that

3    have pled and pull up the addendum.  Let's try to get

4    these -- I'll put 14 days, so two weeks from today.

5    So let's try to get these expedited, because I

6    think -- I can't think of much that would need to be

7    reviewed on these.  So I'll set a deadline of 14 days

8    on those.

9        Ms. Fox-Young, I need to give Ms. Bean a

10   break.  So why don't we take our afternoon break.

11   We'll be in recess for about 15 minutes.

12        (The Court stood in recess.)

13        THE COURT:  Like I say, if y'all want to

14   keep your jackets off, that's fine with me.

15        All right.  Ms. Fox-Young, you had the

16   floor.  Do you want to continue?  Do you want to

17   yield to Ms. Johnson?  Or did you want to go ahead?

18        MS. FOX-YOUNG:  Certainly, Your Honor.

19        MS. JOHNSON:  Thank you, Your Honor.  And I

20   appreciate the Court's indulgence.  Erlinda Johnson

21   on behalf of Santos Gonzalez.

22        Your Honor, I just wanted to make it clear,

23   put something on the record about something I said

24   earlier regarding the motion to sever and the motion

25   to continue.  When I made a statement that I was

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                            e-mail: info@litsupport.com

```
1    concerned about pressure being exerted on my client,
2    I want to make it clear -- and my client would like
3    for me to make it clear -- that no one has exerted
4    any pressure on him whatsoever.  He has not
5    experienced that.  Neither have I.  That was just a
6    concern that I had in terms of the Court putting us
7    in somewhat of a difficult situation.
8              I also made a comment about --
9              THE COURT:  Me putting you in a difficult
10   position?
11             MS. JOHNSON:  I also made a comment about
12   Mr. Castle having prepaid tickets.  I stand
13   corrected.  They were not for July; they're for June.
14   Because I was concerned that he would have to miss
15   his family vacation.
16             But my client wanted me to make sure that
17   it was on the record that he doesn't feel pressure.
18   No one has pressured him.
19             THE COURT:  All right.  Thank you, Ms.
20   Johnson.
21             (A discussion was held off the record.)
22             THE COURT:  All right.  Ms. Fox-Young.
23             MS. FOX-YOUNG:  Okay, Your Honor.  I
24   understand the Court has ordered the Government to
25   disclose all plea addenda, sealed or unfiled, any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    plea addenda that exists within 14 days.  And I just
2    wanted to clarify, I assume that the Court's ruling
3    covers the 1613 case, the 4268 case, the 4269 case --
4    and I don't know the case number, but Richard
5    Gallegos' case -- given that any addenda that exist
6    for any defendants cooperating in those cases would
7    apply to -- or pertain to, and be Giglio for all the
8    defendants present today.  And so I just wanted to
9    clarify whether that's the Court's order, and also
10   ask that the obligation to disclose the addenda be
11   ongoing and immediate, if any others are entered into
12   going forward.
13            THE COURT:  I think that makes sense.  Do
14   you want to be heard on that, Mr. Beck?
15            MR. BECK:  Well, I mean, I think the way
16   that this came up is, if there is a certain defendant
17   we're using in 1613 only, his -- as they are all
18   "him" at this point, although they may be a "she" at
19   some point -- his or her addendum is only impeachment
20   information for defendants in 1613.  So the
21   defendants in 4268, 4269, and 4275 aren't entitled to
22   that person's addendum as impeachment information,
23   because it's not impeachment information in their
24   trial.
25            THE COURT:  Well, that wasn't your point,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    was it?  But it's a good point.  But the point I
 2    think Ms. Fox-Young was raising -- correct me if I'm
 3    wrong -- is that this needs to be a ruling across the
 4    four cases, and it needs to be prospective.  But I
 5    think Mr. Beck is making a separate argument and
 6    saying he should only have to disclose the addendum
 7    to his co-defendants -- to the co-defendants.  I
 8    guess I think that may make some sense as well.
 9              MS. FOX-YOUNG:  The Court is correct as to
10    what my point was.  But we also argue that the
11    addenda should be disclosed across the cases.
12    Because, while the Government has to prove up
13    different elements in the RICO case than in the VICAR
14    case, there is cooperation across the cases.  And so,
15    if you look at the pleas -- and I don't have any to
16    cite specifically to the Court, but I could pull
17    them -- in each case there is discussion of the
18    existence of the SNM, proving up the racketeering
19    conspiracy.  And so, generally, it applies to all the
20    defendants.
21              Now, there are certainly -- with respect to
22    Montoya, Armenta, and Martinez, for instance, there
23    are specific statements that go directly to Counts 6
24    and 7, and that's Giglio.  But it's still Giglio --
25    all these addenda contain Giglio as to all the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    defendants, given the common elements across the
2    cases.  So definitely, Judge, we think the order
3    should apply to all cases, but that they should be
4    disclosed across the cases to all counsel.
5              THE COURT:  I guess I'm not seeing that.
6    That seems kind of broad.  I guess, for the present
7    time, I'm just ordering the production to the
8    defendants in the case, so it will just be the
9    co-defendants.  But I'm having a hard time seeing --
10   I mean, to a certain degree -- I mean, it depends on
11   which case they're going to be called in before it's
12   useful Giglio material.  If they're never called,
13   it's not very useful.  It's hard for me to sort of
14   figure out why they would be called in a different
15   case.
16             MS. FOX-YOUNG:  Your Honor, I'll give you
17   an example, and I just discussed it with Mr. Beck
18   during the break.  I asked if the Government would
19   oppose, in Richard Gallegos' case, that his addenda
20   be disclosed.  And he told me:  It doesn't pertain to
21   4268, but it pertains to 1613.  So without going
22   through each one and making -- and I don't know if
23   that's entirely true, if it may pertain to 4268.  But
24   there certainly is a cross-pollination.  There is
25   certainly -- these cooperators are cooperating
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    against defendants without regard to what indictment
 2    they're charged in.  And so, I mean, if the Court
 3    wants to order the Government to review the
 4    addenda -- I mean, initially, to make the disclosure
 5    to all co-defendants in each case, but I think the
 6    Court should also order the Government to review the
 7    addenda for Giglio as to defendants in other cases.
 8    Because, certainly, there are cases where they
 9    clearly contain Giglio material for defendants in
10    other cases.
11              THE COURT:  Well, that probably needs to be
12    done.  So you may win the war here -- or the battle,
13    Mr. Beck, but you may end up having to do a lot of
14    work to keep from producing it to certain people.
15    But I do think, if you're not going to produce them
16    across the board, you're probably going to have to do
17    a Brady, Giglio, Rule 16 review to see if it needs to
18    be produced anyway.
19              MR. BECK:  I think that's right.  And I
20    mean, it's impeachment information.  If you're going
21    to impeach that person because they're a witness at
22    trial.  So if they're not a witness at trial, they're
23    not going to be impeached.
24              It's not a whole lot of work, because the
25    addenda aren't -- it's not a huge amount of work,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   compared to everything else in this case.  So --
 2              THE COURT:  Well, I'll let you preserve
 3   your position of not having to produce it to anybody
 4   but co-defendants.  But then, for the defendants in
 5   the other cases you're probably going to need to put
 6   on your Brady and Giglio and Rule 16 glasses, and see
 7   if they need to be produced for other reasons.
 8              MS. FOX-YOUNG:  Your Honor, I'll yield to
 9   Ms. Harbour-Valdez.
10              THE COURT:  All right.
11              MS. HARBOUR-VALDEZ:  Your Honor, I have a
12   specific example in our case.  Frederico Munoz was
13   indicted in 1613, but his factual basis of his plea
14   agreement specifically mentions Edward Troup, and I
15   believe Javier Alonso.  So we would request that his
16   at least be released to the 4268 defendants.
17              THE COURT:  Any thoughts on that, Mr. Beck?
18              MR. BECK:  I mean, the same thought.  If
19   it's impeachment material in the 4268 case, then it's
20   Giglio and will be disclosed to them.  And if it's
21   not, then it won't.
22              THE COURT:  Well, I think I'll just leave
23   the ruling where it is.  He's heard your argument, so
24   he can take that into account when he does his Brady
25   review, Giglio review.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Somebody else was trying to stand up.  I
 2   don't know if you -- all right.  Maybe it's been
 3   addressed.
 4          Ms. Sirignano.
 5          MS. SIRIGNANO:  Judge, my only addition to
 6   that would be that the Government has to prove the
 7   enterprise across both of these cases:  4268, 4269,
 8   and 1613.  And many of these recent pleas in the
 9   factual basis of the plea includes statements
10   regarding the enterprise.  And we're not sure if the
11   addenda have any other statements which would also --
12   that they'd be relying on to prove the ongoing
13   enterprise or the conspiracy.  The introductory
14   paragraphs in both indictments are identical.  And so
15   we would ask that if there is anyone that has pleaded
16   thus far that will be used to prove the enterprise in
17   these cases that their addenda get turned over to
18   everybody.
19          THE COURT:  All right.  Be listening to
20   these, Mr. Beck.  You're hearing defense counsel make
21   some pretty good arguments.
22          MR. BECK:  I understand that argument, Your
23   Honor.
24          THE COURT:  All right.  Ms. Fox-Young.
25          MS. FOX-YOUNG:  Okay, Your Honor, the next
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    category of materials is on page 14, Subsection C.

2    We ask for FBI 302s and law enforcement notes,

3    specifically pertaining to Defendants Montoya,

4    Armenta, and Martinez.  I won't belabor the point for

5    the Court.  I've already argued that early statements

6    were exculpatory to Mr. Perez, and I think the

7    Government has conceded that later statements will

8    either be Brady or Giglio, some combination.  So for

9    the same reasons we ask for any FBI 302s and/or law

10   enforcement notes pertaining to the interviews and

11   debriefs which have been given.  Those debriefs were

12   given just prior, we believe, to entry of these

13   defendants' pleas.  And we want notes and 302s

14   pertinent to those debriefs, and debriefs given at

15   any other time.

16           Although rule -- the Government knows, I

17   think, that Rule 16 generally prohibits the

18   disclosure of reports, memoranda, or other internal

19   government documents, this Court has already noted in

20   prior rulings that --

21           THE COURT:  I guess I'm having a hard time.

22   The first category that you -- that we went through,

23   how is it different from this one?

24           MS. FOX-YOUNG:  These, Your Honor -- rather

25   than being the exact -- the actual statements.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Oh, the written or recordings.
 2    These are the 302s?
 3              MS. FOX-YOUNG:  These are the Government's
 4    302s, and/or any notes made by agents, which would
 5    reflect, of course, not only the statements, but
 6    impressions of those statements, and --
 7              THE COURT:  Can we just make my other
 8    ruling applicable to 302s and any notes?
 9              MS. FOX-YOUNG:  Yes, Your Honor, that's
10    what we ask the Court to do.
11              THE COURT:  Any objection to that, Mr.
12    Beck?
13              MR. BECK:  Well, I think the notes are
14    Jencks.  I think the Court has held that a number of
15    times.  I think the 302s -- I think they're Jencks
16    also, but I understand the Court's position, and I
17    think it's right, that they may also be, in this
18    case, Giglio material.
19              THE COURT:  Yeah, as long as you're
20    reviewing them for Brady, but let's just put that in
21    the same ruling that we did with the written and
22    recordings of --
23              MR. BECK:  No objection to that, Your
24    Honor.
25              MS. FOX-YOUNG:  And the second subpart,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Your Honor, we also ask for preservation of all rough
2    interview notes made by law enforcement agents during
3    interviews of any pretrial witnesses in the
4    investigation of this case.  So given the Court's
5    ruling, I suppose the Government may produce some
6    notes and not produce others.  We cite the Lujan case
7    from 2008, where Judge Brack granted that motion for
8    preservation of notes, and ordered the Government
9    review of the notes, and said that they might be
10   subject to disclosure later.
11          I know the Government concedes that some
12   notes may contain Brady or Giglio, and they argue
13   some others may have impeachment value that's not
14   evident until trial.  That was exactly the case in
15   Lujan, which is why the Court ordered them preserved.
16   And we'd like the Court to do that in this case.
17          THE COURT:  Any objection to that?  All
18   right.  So no objection, I'll so order.
19          MS. FOX-YOUNG:  Okay, Your Honor, so we
20   move to our request for production of all recorded
21   materials tagged into evidence in this case, and
22   accessed by an expert to the original recorded
23   materials.
24          As the Court knows, because the Court
25   ordered that -- the evidence view happened on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    December 2nd of last year for those counsel involved
 2    in Counts 6 and 7.  That evidence viewing did happen
 3    in Las Cruces, and we were permitted to review the
 4    items that are listed on Exhibit 2 to our motion,
 5    which is an evidence inventory.  Among those items
 6    were several discs, and I'd listed the numbers in
 7    this motion.  We were not permitted to view what was
 8    on those discs.  They're CDs that were labeled with
 9    evidence numbers.  We don't know what's on them.  So
10    we've asked the Government by letter, March 20th of
11    this year, to provide those materials, or give us
12    Bates numbers if they have already been provided.
13            And I talked to Ms. Armijo a little bit
14    over the break.  I think the Government is trying to
15    verify whether or not that evidence has actually been
16    produced to the defendants.  And I haven't had an
17    answer on that yet.  So maybe we take that subpart
18    first.
19            THE COURT:  Okay.  Before I hear from you,
20    Ms. Armijo, let me make sure I understand.  So you
21    went down there -- I remember the trip, because I set
22    some conditions and those sort of things for it.  And
23    you saw these materials?
24            MS. FOX-YOUNG:  We did.  There are maybe
25    100 items in evidence.  I'm not looking at my --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Like the shanks and that sort
 2    of thing?
 3              MS. FOX-YOUNG:  Yeah, we saw all the
 4    physical evidence.  Among the evidence that had been
 5    tagged in were CDs.  There was no denotation on the
 6    CDs as to what digital material they contained.  We
 7    were not permitted to pop those CDs into a computer
 8    or other device to see what's on them.  We just want
 9    that evidence produced to us.  And we don't know if
10    it has been.  And so we list it here.
11              THE COURT:  All right.
12              MS. ARMIJO:  Your Honor, I have emailed the
13    case agent to see.  We were not at that viewing, so
14    it's kind of hard for us to know what it is.  But I
15    can tell you that we met with the case agent from the
16    State Police months ago when Ms. Strickland was
17    raising a bunch of issues, and we went over his
18    personal file, which had everything in it.  So I'm
19    assuming it is, but I will double-check.  And if it
20    is not, we will disclose it.  But since we weren't
21    there, I don't know what it was.  But we will
22    disclose it, if it hasn't been disclosed.  I'm
23    assuming it has been, since we already did a check
24    and had him bring his file and literally go over
25    everything that we had with what was in his file.
```



SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                       1-800-669-9492

BEAN & ASSOCIATES, Inc.                          e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  Okay.  So this was a particular
 2   guard, or whose file is this?
 3              MS. ARMIJO:  Well, the case was
 4   investigated by New Mexico State Police.
 5              THE COURT:  Okay.
 6              MS. ARMIJO:  And the New Mexico State
 7   Police case agent brought over his file several
 8   months ago, and we sat down and went over what we had
 9   with what he had.  And we made copies of anything
10   that he had that we didn't have.  And we disclosed
11   that.
12              These items were things that were at the
13   viewing that we were not present at.  I have emailed
14   him to ask him if, in fact, we, the US Attorney's
15   Office have it.  If we don't, then I will certainly
16   provide it to them.
17              THE COURT:  In your production, did you
18   produce some CDs that he had?
19              MS. ARMIJO:  Yes.
20              THE COURT:  Okay.  Does that representation
21   satisfy you, Ms. Fox-Young?
22              MS. FOX-YOUNG:  Well, I just think the
23   Court could really shortcut this.  We've identified
24   precisely the CDs that are tagged into evidence, that
25   we haven't been able to see.  All the Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    needs to do is burn them and provide us with copies.
 2    This has been going on for some time.  We saw this
 3    evidence on December 2nd of last year.  We've sent a
 4    letter to the Government.  I think, if the Court will
 5    just order the Government to produce copies of these,
 6    we'll be done.
 7              THE COURT:  How many CDs are we talking
 8    about?
 9              MS. FOX-YOUNG:  About 10.
10              THE COURT:  Well, do you want to go that
11    way, or do you want to see if you already produced
12    them?
13              MS. ARMIJO:  I would prefer that we see if
14    we've already produced them, so the next time we
15    don't hear about 10 more CDs that are duplicates of
16    others.  Because this is how we keep on getting more
17    and more duplicates of other things.  It's just
18    producing more and more discovery to be downloaded.
19              THE COURT:  Well, any objection to me
20    setting a deadline, say, respond within 10 days to
21    this request, this letter?
22              MS. ARMIJO:  If it has not been disclosed,
23    New Mexico State has to give it to us, and that may
24    cause a delay.  I will get a response within 10 days,
25    whether or not we believe we have.  It's just a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    matter of them getting it to us.
 2              THE COURT:  All right.  Let's try to do
 3    this:  Let's get a written response within 10 days.
 4    Then let's try to have the documents in the
 5    defendants' hands, if they don't already have them,
 6    within 14.
 7              MS. FOX-YOUNG:  And I would just ask,
 8    Judge, because these are materials tagged into
 9    evidence -- this isn't just any category of
10    discovery -- if the Government comes back and says,
11    We've produced this, I think the defense should be
12    provided with Bates numbers as to where it is.
13    Because discovery is really voluminous.  These are
14    items in evidence.  We went to participate in an
15    evidence view.  We wanted to see what was on there,
16    and we couldn't.  So I think either production should
17    be made, or information about prior production
18    saying, This has been produced as Bates numbers X to
19    Z, would be sufficient.
20              THE COURT:  Agreeable with that, Ms.
21    Armijo?
22              MR. BECK:  That's fine.
23              THE COURT:  All right.  Okay.  Ms.
24    Fox-Young.
25              MS. FOX-YOUNG:  Okay, Your Honor, we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    further request that the Court order the Government
2    to permit our expert to examine the original audio
3    and video recordings in evidence, as well as the
4    recording devices that were used to generate the
5    recordings.  And this is a request that's going to be
6    broader -- and it comes up again in our motion --
7    broader than just with respect to these items in
8    evidence.  I think you'll also hear Mr. Baca has a
9    motion to compel which raises this.
10          And so, you know, it's our position, Your
11   Honor, that our expert -- and we attach a declaration
12   from Mr. Ray Carrillo as to why we need to have
13   access to original audio and visual recordings.  This
14   is no different than an ordinary dope case, where the
15   Court, upon defendant's motion, the Court would allow
16   defendant to have his or her own expert test
17   materials.  It's a pretty routine process.  And, you
18   know, it comes down to the defense's ability to
19   review and examine the evidence against the
20   defendants, and it goes to our fair trial right.
21          So we're asking that Mr. Carrillo, with
22   respect to this subcategory, be permitted to examine
23   the recording devices that were used to generate
24   these recordings.  Mr. Carrillo's declaration -- I'll
25   address this with more specificity when we get to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    some other recordings -- but Mr. Carrillo's

2    declaration provides the Court with a substantive

3    basis for why it's necessary that an independent --

4    that our defense expert be permitted to review them.

5    So in this subpart I'm only talking about the

6    evidence that the Court has already ordered be

7    disclosed.  We want access to the original audio and

8    visual recordings, not just copies.

9              THE COURT:  Let me make sure I understand

10   the request.  You're wanting him to look at the

11   recording equipment?

12             MS. FOX-YOUNG:  The original recordings

13   and/or the recording equipment.  The Government, I

14   think, will say that there is no such thing as an

15   original recording, because these are all digital

16   files that just get cut from a recording device.  In

17   that case, this isn't like the old days, where you

18   get a tape that looks like an old movie reel that you

19   can examine.  You need to examine the equipment to

20   determine whether the copy that you have is complete,

21   has not been altered, has not been edited, has not

22   been stopped during the recording process.  For all

23   these reasons, and so that's why we asked for access

24   to the original recordings, should they exist, and

25   the recording equipment.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1         And we have no objection to having somebody
2    there to preserve chain of custody.  We don't want to
3    in any way interfere with chain of custody.  That's
4    routinely done, like I said, in dope cases.  But we
5    need Mr. Carrillo to have access to those materials.
6         THE COURT:  All right.  Mr. Beck, are you
7    responding on this one?
8         MR. BECK:  Yes, Your Honor.  So I heard
9    this is no different than dope cases.  And this is
10   vastly different than dope cases.  The recording
11   devices are methods and means of law enforcement.
12   And I don't think there is any basis.  But if there
13   was, the DOJ and the FBI would want to be heard on
14   this issue.
15        Setting that aside, if we come in and play
16   these tapes, what's required is that they're
17   authenticated.  And we know that requirement.  We'll
18   authenticate them, we have witnesses who will testify
19   that that's what they heard.  They're the ones who
20   made the recordings.  So there is no basis for
21   testing or physically examining the recording
22   devices.
23        The recordings themselves, I think Ms.
24   Fox-Young is correct, they're just digital recording
25   and a digital recorder, as far as I know.  So the

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1    defense team has access to those, and they can give

 2    them to their experts.

 3              But in terms of, if we're looking at Rule

 4    16, and we're looking at material that may be that --

 5    may find -- I don't have the language in front of

 6    me -- but, basically, may lead to evidence in the

 7    case, there is nothing here that will lead to

 8    evidence by letting them look at these recording

 9    devices.

10              And, again, to the extent that there may

11    be, the FBI and DOJ would certainly want to be heard

12    on this issue.  And I don't mean us as DOJ; I mean

13    the big people.

14              So you have questions for me, I'm happy to

15    answer them.

16              THE COURT:  All right.  Thank you, Mr.

17    Beck.

18              I guess I do think this probably falls into

19    sort of just general sort of discovery, a bit of

20    fishing to see if anything turns up.  It doesn't seem

21    like there is any evidence that there is problem

22    here.  So I'd be inclined to deny this.

23              MS. FOX-YOUNG:  Your Honor, I think it's

24    best if we take it up down the road in number 3,

25    which is coming up, because we do have some specific

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    findings.  And I think with respect to this
 2    subcategory, you know, I can defer to the Court
 3    there, but I'd like to take it up in a few minutes.
 4              THE COURT:  Did you want to say something,
 5    Ms. Duncan, or do you want to take it up a little bit
 6    later?
 7              MS. DUNCAN:  Thank you, Your Honor.  We
 8    have asked for the same thing in our recently filed
 9    motion to compel.  So I think we can maybe argue on
10    number 3 of Ms. Fox-Young's motion to add detail as
11    to why we need access to those recording devices.
12              THE COURT:  Okay.
13              MS. FOX-YOUNG:  Thank you, Your Honor.
14              THE COURT:  Ms. Fox-Young.
15              MS. FOX-YOUNG:  The request for
16    confirmation that the Government has no additional
17    physical evidence over and above the evidence which
18    is inventoried on exhibit -- I believe it's Exhibit 2
19    to our motion, the evidence inventory from state
20    police.  And I have spoken to the Government to try
21    to streamline this process over the break.  In their
22    response, the Government says that they are making
23    inquiries to see if there is any physical evidence
24    that the defendants in Counts 6 and 7 were not
25    permitted to view, or have not been made aware of.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   And I don't think they have an answer yet.  And so
 2   we're still waiting for an answer.  So I think that
 3   request still stands.
 4          Secondly, in this category, we asked for
 5   permission to handle the physical evidence in Counts
 6   6 and 7.
 7          THE COURT:  Why don't we take up the first
 8   part first.  Then we'll come back to the second
 9   request.
10          Mr. Beck?  Ms. Armijo, are you arguing this
11   one?
12          MS. ARMIJO:  Your Honor, I have sent out,
13   and I will verify and let them know if there is
14   anything they didn't see.  Again, since we weren't
15   there, I don't know what they saw or not, or if there
16   is anything else on the sheet.  So I will check into
17   that.  I have checked into it, but I'm just waiting
18   for confirmation, and trying to figure out what they
19   saw and what they didn't.  Because I don't want to
20   make promises since we weren't there.
21          THE COURT:  All right.  What I propose to
22   do on this one, if this would be acceptable:  Within
23   10 days, if you do not receive a response, that it
24   will be deemed that the Government has represented
25   that all the evidence they have is on the inventory
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    list.  Does that work for you?

 2              MS. FOX-YOUNG:  Yes, Your Honor.

 3              MS. ARMIJO:  And just so that we're clear,

 4    all the evidence from the crime scene -- I mean, we

 5    may have other recordings and things that were

 6    post-investigation.  But I believe this deals with

 7    the inventory list from the crime scene with New

 8    Mexico State Police.

 9              THE COURT:  All right.

10              MS. ARMIJO:  That's the specific request.

11              THE COURT:  Can you live with that gloss?

12              MS. FOX-YOUNG:  I think so, Your Honor.

13    Let me just confer real briefly with my co-counsel.

14              THE COURT:  Certainly.

15              MS. FOX-YOUNG:  Your Honor, I think we can

16    live with that, so long as only outstanding physical

17    evidence would be in the category of recordings.  I

18    mean, we set up an evidence view last year in order

19    to view the physical evidence.  We're trying to, you

20    know, litigate this case, and proceed along the

21    Court's deadlines.  So we really need to know if

22    there is any other physical evidence.  We understand

23    that post-incident there continue to be recordings

24    made.  But if the Court will limit the Government, as

25    the Court described, with the caveat that there may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    be recordings, that's something I can live with.
 2                 THE COURT:  Can you live with that, Ms.
 3    Armijo?
 4                 MS. ARMIJO:  The thing that I can think of
 5    it is, what if we have somebody involved in this case
 6    that's able to come up with the photograph -- not of
 7    the murder itself, but something that is of a
 8    relationship between Mr. Perez and SNM, and says,
 9    yes, we were good friends -- I'm just using this as a
10    an example -- and so that would be physical evidence,
11    it would be a photograph that we didn't have, because
12    it's not from the crime scene, it's not a recording.
13    So I'm not trying to be vague.  But I don't want to
14    cut off the possibility that there might be something
15    out there.  I don't believe there is anything out
16    there.  I believe it's all recordings and the crime
17    scene.  So we will give her an answer as to that.
18    And certainly, if anything else crops up, we would
19    certainly alert them.
20                 THE COURT:  All right.  I think I'll just
21    make a ruling:  In 10 days, if you don't receive,
22    then it's that.  If something pops up that's not in
23    the Government's possession, and they get hold of it,
24    then we'll deal with it at that time.  I'm not
25    excluding any evidence at this point.  So if the
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                            1-800-669-9492
                                                    e-mail: info@litsupport.com



```
1    Government -- it comes into their hands afterwards,
2    then we can deal with that.  That often happens
3    before trial, somebody thinks of something they have
4    somewhere else.  So we'll certainly allow for that.
5    But I think within 10 days, we'll either have a
6    letter from the Government or treat it as a
7    representation, with the gloss that you put on it,
8    Ms. Fox-Young.
9             So the next thing is you want to now ask to
10   relook at that evidence?  Or what is the second
11   portion of your request?
12            MS. FOX-YOUNG:  The second portion of our
13   request is we've asked the Government for permission
14   for -- permission to handle the physical evidence.
15   It's our understanding that some other defendants --
16   for the Court's information some other counsel at
17   evidence viewing have been permitted to handle the
18   physical evidence.  We need to do that as part of our
19   investigation.  The Government responded to us by
20   saying, you know, we need to know exactly what
21   evidence you want to handle and why.  We say that's
22   work product.
23            If the Court wants to take that up, we're
24   happy to provide the Court with this information.
25   But we don't think we should be required to provide
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    it to the Government.  But we can provide the Court

2    with a particular list of exactly what we want to

3    look at.

4              Again, we have no objection to a records

5    custodian being present, somebody to maintain chain

6    of custody.  And, you know, this is done fairly

7    routinely in other kinds of cases where there is an

8    examination or testing of evidence.  We should be

9    permitted to do more than just look at it.

10             THE COURT:  Ms. Armijo.

11             MS. ARMIJO:  Your Honor, and the problem is

12   that the Government and the case agents aren't there,

13   so you have somebody that doesn't know anything about

14   the case.  And if you have something like a piece of

15   clothing that has a lot of blood, what are they going

16   to do to it?  How do they want to handle it?  Do they

17   want to open it up?  Are they going to contaminate

18   it?  What if we want to do further testing?  What if

19   we arrest somebody else and do it?  So I'm just

20   concerned with what the evidence item is.  If there

21   is something that there probably won't be any further

22   testing on, then probably we wouldn't have an

23   objection.  But if it's something that's very

24   fragile, or could be tested, or toxic, then we might

25   have an issue with it.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Let's do this:  Let me grant
 2     the defendants' request.  You can have somebody
 3     there, and I'll give that person veto power.  So if
 4     they say, No, you can't touch that, that's -- we're
 5     going to retest that, or it's got blood on it,
 6     they'll be able to veto it.  And then you can bring
 7     it back to me.  If the review goes on without a
 8     hitch, we'll just keep moving.  But that will give
 9     you the veto power.  But it will keep it moving.  And
10     chances are most of it you'll get to see and touch,
11     and maybe all of it.
12              MS. FOX-YOUNG:  Your Honor, as we asked in
13     our previous evidence view, we'd ask that that person
14     or persons not be members of the prosecution team.  I
15     mean, these are state police detectives and agents
16     who handle evidence all the time.  The Government
17     can, I think, accomplish protecting chain of custody
18     and preserving the evidence properly without having
19     somebody on the prosecution team there.
20              THE COURT:  I think you can put somebody
21     that's a state police evidence person in there,
22     somebody that knows how to handle evidence.  But it
23     shouldn't be somebody that's going to be a witness in
24     the case, and not part of your team.  But you can put
25     somebody in there that's knowledgeable.  You don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have to put an ignorant person in there.  You can put
 2    somebody in there that knows what they're doing, and
 3    say, "Don't touch that."
 4              MS. FOX-YOUNG:  Judge, we prefer not to
 5    have an ignorant person.
 6              THE COURT:  A what?
 7              MS. FOX-YOUNG:  We'd prefer not to have an
 8    ignorant person.
 9              THE COURT:  It's always good, isn't it?
10              All right.  Ms. Fox-Young.
11              MS. FOX-YOUNG:  All right.  Your Honor, the
12    next category:  We asked for locations where the
13    recordings produced in discovery, entitled, "Audio of
14    body recording of CHS and R. Perez."  And I list a
15    number through another number that were recorded.
16    There are a number of recordings.  And, Your Honor,
17    we're getting into categories of evidence that, as I
18    indicated in the beginning of the argument, go to the
19    voluntariness of Mr. Perez' statements, which is
20    always an issue at trial, and go directly to evidence
21    that is material -- will be material to our arguments
22    in our motion to suppress, go directly to the
23    voluntariness of these statements, and the
24    circumstances surrounding these statements.
25              So first, we ask for the location where
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    they were made.  And the reason for that, as we note

2    in our brief, is that we believe these recordings

3    were made while Rudy Perez was at PNM Level 6.  As

4    the Court knows, this is the highest level of

5    segregation in the New Mexico Department of

6    Corrections.  Without giving it a particular moniker,

7    it's essentially solitary confinement.  Mr. Perez was

8    held there without any disciplinary process or

9    hearing for months.  And his health was severely

10   compromised during that time.

11          And so, Your Honor.  We're going to argue

12   that the Government really fostered these conditions

13   for a number of reasons, in a number of ways, and

14   took advantage of these conditions, placing an

15   informant next to Mr. Perez to question him about the

16   circumstances surrounding the Molina murder.  And

17   that is how we believe these recordings were

18   generated.  And so the location where they were made,

19   if, in fact, they were made in solitary confinement,

20   will be critical to this Court's determination as to

21   whether they were made voluntarily, and in

22   considering whether or not they should be suppressed.

23          Beyond that, Your Honor, it will be

24   critical, if the statements are not suppressed, to a

25   jury's determination as to whether they were made

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    voluntarily.  So this is absolutely material.  And we

2    need to know this in order to proceed on whatever the

3    Court's timeline will be for substantive motions in

4    the 4268 case, because it goes directly to issues

5    surrounding suppression.

6              THE COURT:  When you say "location," are

7    you talking about where the wire was?  What are we

8    talking about?

9              MS. FOX-YOUNG:  It's hard to know without

10   knowing precisely the location.  But presuming these

11   recordings were made in PNM Level 6, we want to know

12   which cells in PNM Level 6 they were made in.  Not

13   location of the wire on the person's body, but where

14   our client was, and where the recording was made at

15   the time.

16             THE COURT:  When you say "where the

17   recording was made," are you talking about where the

18   recording device was located?

19             MS. FOX-YOUNG:  We don't need to know where

20   the device was located and in that way compromise any

21   government investigated tools or tactics.  We need to

22   know where our client was.

23             THE COURT:  Is that really what you need is

24   just to know what cell he was in?

25             MS. FOX-YOUNG:  And you'll see, Your Honor,

SANTA FE OFFICE                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                      Albuquerque, NM 87102
(505) 989-4949                                                                                    (505) 843-9494
FAX (505) 843-9492                                                                         FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1    as we go through these, we ask that the Court order

2    the Government to produce a number of -- sort of a

3    wide variety of information surrounding the

4    circumstances of these recordings.  But, yes, we need

5    to know if he was in Level 6, if he was in solitary

6    confinement at the time that the Government planted

7    an informant next to him.  And that is because -- and

8    we get to this in later briefing -- the Court, I'm

9    sure, is familiar with the Fulminante case that talks

10   about exclusion -- a Supreme Court case, 499 U.S.

11   279, says -- essentially, boiling it down, that

12   statements to cooperators can be suppressed under

13   certain circumstances.

14            We need to know what the circumstances

15   were.  If Mr. Perez was sitting in an open pod, you

16   know, in a camp somewhere, it would be a different

17   circumstance for the Court to consider, than if he's

18   in solitary confinement, and has been in solitary

19   confinement for some time, when the Government places

20   an informant next to him and does a series of other

21   things to effectuate making these alleged statements

22   or generating, extracting these statements.

23            And so I say the location would be the

24   facility, and the location within the facility, and

25   the cell.

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.  So the facility, and the
 2    location within the facility of the cell.
 3              MS. FOX-YOUNG:  And the cell where the
 4    informant was located.
 5              THE COURT:  So they're recording
 6    conversations -- I mean, I haven't heard these tapes.
 7    These are two gentleman talking to each other; is
 8    that what -- and they're recording it?
 9              MS. FOX-YOUNG:  Yes, Your Honor.
10              THE COURT:  All right.  Mr. Beck, are you
11    going to respond on this?
12              MR. BECK:  Yeah.  Again, it's getting well
13    beyond the scope of criminal discovery.  So I'm
14    looking at Rule 16 here, and I'm trying to even
15    figure out where there is an obligation to disclose
16    locations of recordings and locations in cells.  It's
17    pretty clear -- when you disclose documents and
18    objects, reports, examinations and tests, it's clear
19    what's required.  And that doesn't fall in there.
20              So I understand that it would be nice to
21    have this information.  They can ask their client
22    where he was.  The criminal rules don't require us to
23    provide that.  And so the Court shouldn't either.
24              And the fact is -- I mean, we can talk
25    about how they want to use this down the road for
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    motions to suppress, and they can investigate, and
 2    they can find those things out, and get the facts
 3    from their client and from elsewhere, and use those
 4    for a motion to suppress.  But that's distinct from
 5    the Government's obligation to present materials,
 6    documents, objects under Rule 16, which is not here.
 7            And, I mean, they can argue about the
 8    voluntariness and the way the Government set that up.
 9    But Mr. Perez wasn't even on the radar until we got
10    these recordings back, and he admitted the thing.  We
11    didn't even know who he was, so --
12            THE COURT:  Are these recordings that
13    you're going to use at the trial?
14            MR. BECK:  We may.  We may just have the
15    informant testify.  But we may use them.  My
16    understanding -- I've listened to them -- is they're
17    not extremely clear.  I don't think anyone states
18    that.  But we may use them.
19            THE COURT:  So you would use them with the
20    informant?  The informant would testify and
21    authenticate the recording?
22            MR. BECK:  Well, I think the recording has
23    to be authenticated.  If it's going to be used in our
24    case-in-chief, it has to be authenticated.  So --
25            THE COURT:  So who would authenticate it is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the informant?

2         MR. BECK:  I can't really think of who else

3    would.

4         THE COURT:  And is that person going to

5    know the information that Ms. Fox-Young is asking

6    about?  They certainly would know where they were,

7    right?

8         MR. BECK:  I don't know.  I would assume

9    so.  I mean, from what I've witnessed and what I've

10   seen in this case, these gentleman have very, very

11   good memories of where they were and when they were

12   there.  So my expectation would be that he would

13   remember those things.  But I don't know.

14        THE COURT:  Does the Government keep a log

15   similar -- that has the information that the

16   defendants are seeking?  I mean, is that the way they

17   do it:  Say this person was here, this person was

18   there at this particular time?

19        MR. BECK:  I don't know.

20        THE COURT:  I've read lots of transcripts,

21   and I'm not sure I've seen --

22        MR. BECK:  I don't think I have either.

23        THE COURT:  -- that document.

24        Right, Ms. Fox-Young?  I mean, it seems to

25   me that we may be requiring the Government to go

SANTA FE OFFICE                                                                MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                       FAX (505) 843-9492
                                                                                      1-800-669-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

260

```
1    invent a document.  It's kind of like an
2    interrogatory.  You're asking them -- you send over
3    an interrogatory asking for some information, but I'm
4    not sure that they're required to produce something
5    that doesn't exist.
6               MS. FOX-YOUNG:  Well, I think, Your Honor,
7    there has to be something that exists that shows
8    where Mr. Perez was in PNM Level 6 at the time of the
9    recordings.  And I think the Court was going right to
10   the heart of the issue under Rule 16.
11              I mean, I can give the Court more to sink
12   its teeth into with regard to why this material is
13   material to us.  You know, we don't know what day the
14   recordings were made.  And so our client can't tell
15   us precisely where he was, to the extent that he
16   would remember.
17              THE COURT:  I thought most of the
18   recordings have a date.
19              MS. FOX-YOUNG:  No, that's redacted from
20   the transcripts.  We don't know the date.  I mean,
21   the Court could order the Government to disclose the
22   date.
23              Beyond that, we want the jury to see these
24   cells.  We want the jury to understand.  And in
25   preparing for a trial, we need to understand what the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    conditions were like for our client in solitary

2    confinement at the time that these statements were

3    allegedly made.

4              The Government knows this.  I understand

5    that the Court is not inclined to order the

6    Government to produce a document that doesn't exist.

7    But we're just asking the Government to confirm

8    whether or not our client was in solitary confinement

9    at the time they put an informant next to him.

10             THE COURT:  But aren't you going to get

11   that information at the suppression hearing, when

12   they put the informant on, to introduce the tape?

13             MS. FOX-YOUNG:  Yes, Your Honor.  If the

14   Court grants us a hearing, we will get that

15   information then.  Of course, we can't -- between now

16   and that time, we can't investigate any further what

17   these circumstances were precisely.

18             And so, you know, under Graham -- we cite

19   United States v. Graham in our description of what is

20   producible, needs to be produced under Rule 16.  I

21   mean, clearly this information plays an important

22   role in uncovering other admissible evidence with

23   respect to Mr. Perez, and what he was going through

24   at that time.  If we can confirm where he was, then

25   we know what the -- we know something more about the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   circumstances surrounding these statements -- will

 2   help us in witness preparation for a hearing on a

 3   motion to suppress, and potentially assist in

 4   impeachment or rebuttal.  All we need show, Your

 5   Honor, is that this information could alter the

 6   quantum of proof in Mr. Perez' favor.

 7          And so given -- you know, given these

 8   issues surrounding suppression, you know, we think

 9   it's easy for the Government to tell us where the

10   recordings were made and when they were made.

11          THE COURT:  Why are you redacting out the

12   dates?

13          MR. BECK:  I don't know.  I can't think of

14   a transcript in which the date is redacted.  If there

15   is one, I'm happy to look at it.  I don't know that

16   we do that.

17          THE COURT:  All right.  If there is

18   redacted date, would you be willing to produce the

19   date?

20          MR. BECK:  Yes.

21          THE COURT:  Okay.  I think I'm going to

22   leave it there.  If you get the dates, talk to your

23   client.  We'll probably have a suppression hearing.

24   They've got to put somebody on the stand.  You're

25   probably going to get all the information, rather

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    than having them prepare a document or prepare a

 2    letter, or something like that, that requires them to

 3    go get the information.  So I think I'll just leave

 4    it there.  So that, I'll deny.

 5              MS. FOX-YOUNG:  Okay.  Your Honor, may I

 6    make one additional point on that?

 7              THE COURT:  You may.

 8              MS. FOX-YOUNG:  We think it's very

 9    important for the Court also, in making a

10    determination about voluntariness of these

11    statements, the Court needs to know what the cells

12    looked like, what the layout was, what sort of

13    deprivations existed, if, in fact, Mr. Perez was in

14    Level 6.  And we won't be able to work any of that up

15    prior to filing a motion to suppress or prior to a

16    suppression hearing, if we don't know where the

17    recordings were made.  We won't be able to do that

18    additional investigation, and the Court will not have

19    the benefit of that information.

20              THE COURT:  Well, but why not?  I mean,

21    Mr. Perez can give you the -- where he was at.  He

22    may not know that day he was in that cell.  But you

23    can show me a picture or video or something from

24    that, can't you?

25              MS. FOX-YOUNG:  Okay, Your Honor.  I'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  move on.  I understand the Court's ruling.

2          The next category -- I didn't know, Your

3  Honor, if -- I guess we're not yet to what Ms. Duncan

4  wants to argue on.

5          The next category, we asked for any and all

6  transcripts of the recordings.  The Government -- I

7  talked to Ms. Armijo during the break -- the

8  Government submits that, I believe, eight recordings

9  were actually produced after the -- close to the time

10 of the filing of this motion.  And I think that it's

11 the Government's representation that that is all the

12 recordings.  If the Government will say that on the

13 record, and in fact, all of the transcripts have been

14 produced, then we don't need to argue this.

15          THE COURT:  Ms. Armijo?

16          MS. ARMIJO:  Your Honor, I believe we have

17 disclosed all of the recordings.  And we disclosed

18 the transcripts that we have.  There is eight.  I

19 will confirm there are no other outstanding

20 transcripts that are coming in.  And I'm not

21 representing that we have disclosed -- that we have

22 transcribed every call.  But I believe this motion

23 said that we have not disclosed any transcripts, and

24 I showed her that, in fact, that we have disclosed

25 eight transcripts on March 10, which is 21 days

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492
                     BEAN                                  e-mail: info@litsupport.com
                     & ASSOCIATES, Inc.
                     PROFESSIONAL COURT
                     REPORTING SERVICE

1   before this motion was filed.  So I will verify and

2   get back and provide, within ten days, what is

3   outstanding.  But I don't believe we have anything

4   outstanding, Your Honor.

5              THE COURT:  All right.  Does that work for

6   you, Ms. Fox-Young?

7              MS. FOX-YOUNG:  Yes, Your Honor, it does.

8              THE COURT:  Ms. Fox-Young.

9              MS. FOX-YOUNG:  Okay, the next category

10  consists of all complete recordings; if, in fact, any

11  were edited.  And I'm talking about these recordings

12  made of Mr. Perez at -- what the Government says was

13  in sometime in February of 2016.  The Government has

14  represented that the recordings have not been edited

15  in any way.  We have some questions about that.

16             And this, Your Honor, is where our -- the

17  declaration from our expert, which is attached to the

18  motion as Exhibit 3 -- it's a declaration of Raymond

19  Carrillo.  Mr. Carrillo is a certified forensic

20  technician.  He has over 16 years of experience

21  looking at tape transfers and duplications, this sort

22  of data.

23             In his review of the audio recordings -- he

24  reviewed 11 of the audio recordings referenced here.

25  Subsequent to his review, he determined that these

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    recordings are all different sizes and lengths.  He

2    seamed them together into a timeline to determine

3    whether they were cleanly cut into segments, or if

4    they were actually the product of a recorder that had

5    been stopped or paused, whether the informant was

6    stopping the recording, and continuing with

7    conversation that was not recorded, and, therefore,

8    produced.

9            It's his finding that segments were not

10   cleanly cut, indicating that there may have been

11   stopping or pausing.  He finds that there is a

12   possible loss of information between recorded

13   segments, meaning there is information that was not

14   picked up.  Essentially, statements of Mr. Perez, or

15   of the informant that was not recorded and was not

16   produced.

17           But in order to make any kind of definitive

18   determination about whether that happened, for,

19   instance, he's got to examine the original

20   recordings -- which the Government says don't

21   exist -- and the recording equipment used to make

22   them, to find out if there is a loss of information.

23           And his declaration details -- unless the

24   Court wants me to, I won't get into all the technical

25   details about file length and differences in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    resolution.  But that is part of the basis for this
 2    request.
 3              And so, again, because the content of the
 4    original unedited recordings, and the content of what
 5    might not be on the recordings, if the informant was
 6    selectively recording material, taking material out
 7    of context, is highly relevant to this Court's
 8    determination about the voluntariness of any
 9    statements that are heard on the recordings.
10              And so, in order for us to prepare,
11    investigate, and do any kind of critical analysis of
12    this discovery and this evidence, we have to have
13    access either to the original recordings, and/or to
14    the recording equipment itself.  And as I said, this
15    is an issue the Court's going to have to deal with.
16    We have a lot of recordings in this case.
17              And the analysis may be different with
18    respect to different recordings.  Here, we posit it
19    goes directly to the voluntariness of these
20    statements and the circumstances surrounding the
21    statements.
22              Because our client says, "He said things
23    before and after," and he was enticed, or he was
24    threatened, or he was coerced in some way.  We can't
25    investigate that with respect to what the Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    recorded without that access.

 2              THE COURT:  But is he saying that?

 3              MS. FOX-YOUNG:  Well, at suppression, we're

 4    going to argue that these were coerced statements;

 5    that they weren't voluntary, under Fulminante and a

 6    number of other cases.

 7              And the way that he was recorded, and what

 8    was not recorded goes directly to the Court's

 9    analysis there.  I mean, if the informant is turning

10    the reporting device off, because there is

11    exculpatory information, or because he is taking time

12    to coerce Mr. Perez into saying something, you know,

13    we're entitled to investigate that under Rule 16,

14    under Brady, and it goes directly to suppression.

15              THE COURT:  But I guess I don't understand

16    how the equipment or the original tape would help you

17    there.  If he's not turning it on, then that's a

18    different problem, isn't it?

19              MS. FOX-YOUNG:  Well, that's one thing that

20    could -- that our expert in his declaration, which is

21    Document 1037-3, says he -- access to the original

22    equipment will allow him to investigate.  And so that

23    is one possible, and maybe actually likely aspect or

24    characteristic of these recordings; that there is

25    evidence that an expert can determine the recordings

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    were -- this is not one seamless recording of a

2    conversation, you know, that went on for a period of

3    30 minutes.  It is selective.  It has been edited,

4    and/or the recorder has been stopped.  And there are

5    reasons for that, and those reasons go to our

6    arguments at suppression.

7            So I'm just not pulling this out of thin

8    air, Judge.  We have Mr. Carrillo saying in this

9    declaration precisely why he needs access to the

10   original files, in order to make a determination

11   about that.  And, you know, we're entitled to put an

12   expert on to say, "This recording was stopped.  This

13   recording is not complete."  What happened in the

14   interval when the recorder was turned off?

15           THE COURT:  Can't he do that already?  I

16   mean, if that's what he's saying in his declaration,

17   don't you have everything you're going to get?  I

18   mean, just because it was turned on, turned off, we

19   always are left to wonder what occurred before and

20   what occurred afterwards.  Isn't your expert able to

21   say that now, as well as after reviewing the

22   equipment?

23           MS. FOX-YOUNG:  Your Honor, what he can

24   only, to some degree, speculate about at this point,

25   without access to the recording equipment, is whether

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    or not it was done.  It's his declaration that, if he
2    is able to review the equipment and the originals, he
3    can say whether or not this was one continuous
4    conversation --
5              THE COURT:  We know it wasn't, right?  We
6    just know it's not.
7              MS. FOX-YOUNG:  That appears to be the
8    case.  But what we can't tell is whether there was
9    information lost between the segments, or whether it
10   was momentary.  I mean, without gaining that access,
11   we don't know precisely what will be discovered.  But
12   we know that there is reasons -- it's not as if this
13   is one seamless recording, and I'd be standing before
14   the Court saying, you know, we just would like to see
15   the recording device, because, you know, we think
16   maybe there is some possibility it was stopped.
17             We have an expert saying there may be
18   information loss.  And I can't say, without reviewing
19   the equipment, whether or not there is.  But there
20   are indicators that there is information loss, which
21   goes to the arguments I've already proffered.
22             THE COURT:  All right.  Thank you, Ms.
23   Fox-Young.
24             The Government?
25             MR. BECK:  Your Honor, I think this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   falls --
 2                THE COURT:  This is the one where Ms.
 3   Duncan wanted to be heard on it.  So why don't --
 4   before you respond, why don't I hear what she has to
 5   say.  Ms. Duncan?
 6                MS. DUNCAN:  Thank you, Your Honor.
 7                Your Honor, we made the same request in our
 8   motion to compel, which is Document 1053.  And we
 9   adopt all of Mr. Perez' arguments.  But I also wanted
10   to make some points that are specific to Mr. Baca.
11   So, like Mr. Perez, Mr. Baca was recorded at PNM
12   Level 6 by an informant in this case.  There is a lot
13   of recordings.  And these recordings stop -- they
14   start and they stop mid conversation.  The way that
15   the recordings are started and stopped is misleading.
16   And we believe -- have reason to believe that
17   exculpatory information has been excluded.  We're
18   very concerned, because with respect to Counts 9 and
19   10, the Government's evidence is really these
20   recordings.  So whether they're a fair and accurate
21   representation of the conversations is critical to
22   the jury's determination of innocence or guilt at
23   trial.
24                So what we are asking for is to review
25   these recorders, to have an expert review these
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    recorders to determine, is the way in which these

2    recordings were made, the starting and the stopping,

3    was that a decision by the recorder, so the

4    informant?  Was it a malfunction?  Is there some

5    other, you know, thing going on with the recorder

6    that would cause the segments to create these

7    segments that have been disclosed in discovery?  Were

8    they edited?  Is there evidence that a recording was

9    being made, it was then deleted, restarted, that sort

10   of thing?

11           Because from the conversations, there are

12   few recordings that really start at the very

13   beginning of the conversation.  And with the

14   informant who is most relevant to Mr. Baca, he's not

15   only recording with one of these devices, but he also

16   had a cellphone.  And so sometimes these recordings

17   are picking up a cellphone, they're picking up

18   conversations between cells.  And it's just unclear

19   if these recordings are accurate.  So what you'll

20   have happen is like there is some sort of

21   conversation going on, the recording suddenly starts,

22   and then you'll have this informant summarizing his

23   understanding, or what he would like the Government

24   to believe happened before the recording comes on.

25   And because of the way that it's recorded, sometimes

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    you can't hear the other side.  So you can't hear Mr.
 2    Baca, you can only hear the informant.
 3            So looking at the recording devices is
 4    necessary for us to impeach this person who is going
 5    to testify at trial, to the extent that he says that
 6    these are fair and accurate, or that he wasn't in
 7    control of how they're being recorded or how they're
 8    being disclosed.
 9            So this is really important evidence for
10    Mr. Baca, particularly, as to Count 9 and 10.
11            THE COURT:  All right.  Thank you, Ms.
12    Duncan.
13            Mr. Beck?
14            MR. BECK:  Again, Your Honor, I think this
15    goes beyond what the rules or any other authority
16    provides the United States must disclose.  And what I
17    get from the declaration of Mr. Carrillo, and from
18    argument of counsel, is they want to know if these
19    were turned off and on, or if they're one recording.
20            They're not one recording.  And then, I
21    guess, he says that "further assess whether there was
22    a loss of information between segments."  And, yes,
23    there was a loss of information between segments,
24    because there was no recording.
25            And so then you go -- I mean, that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    information they can explore on cross-examination
 2    with the authenticating witness, is why did you stop
 3    recording, or why did the recorder stop recording?
 4    Or if you leave out -- I mean, that's all fair
 5    argument and fair cross-examination.  But it doesn't
 6    lead to any need to see these recording devices and
 7    see whether there is an on or an off switch.
 8              THE COURT:  How is this done?  How are
 9    these recordings done?  You said it's done digitally,
10    so it's not put on a disc immediately.  It's just put
11    on the recording machine, and then you go in and you
12    download it onto a CD?  Is that the way it's done?
13              MR. BECK:  I mean, I'm by no means an
14    expert.  But, yes, it records a digital file.  Then
15    the digital file is at some point downloaded, and it
16    appears here in MP3 format.
17              THE COURT:  Can the Government make this
18    representation:  Can it make the representation that
19    everything that is on the machine is on the CD that's
20    been produced to the defendant?
21              MR. BECK:  Well, I think we can make the
22    representation -- I'm hearing, yes.  I think maybe
23    the more accurate representation would be
24    everything -- I mean --
25              (The Government conferred.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          MR. BECK:  Yes.  Everything on the recorder

 2     is downloaded and went out, so, yes.

 3          THE COURT:  So the Government is able to

 4     represent that there has been no editing?

 5          MR. BECK:  No.  So I believe that we

 6     produce enhanced recordings, but also produced the

 7     original of the recordings that we've enhanced.

 8          THE COURT:  So you gave them an enhanced

 9     and an original?

10          MR. BECK:  Right.

11          THE COURT:  But there has been no editing?

12     You can assure the Court that nothing has been cut

13     out in any way?

14          MR. BECK:  Right.  Not by the Government.

15          THE COURT:  They got everything that's on

16     the machine?

17          MR. BECK:  Right.

18          THE COURT:  All right.  Ms. Fox-Young?

19          MS. FOX-YOUNG:  Well, Your Honor, I think

20     it's one thing for Mr. Beck to proffer to the Court

21     that everything that was recorded has been downloaded

22     and produced.  But without having our own expert

23     review the recording equipment and the recordings, we

24     can't tell.  And Mr. Beck has told the Court he

25     doesn't personally do this.  This is exactly why you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have an expert in a situation like this.  It's sort
 2    of involved technical work.  And I just -- I don't
 3    think that it's sufficient for the Government to say:
 4    We promise we have produced everything and it's not
 5    edited.  So that's the first point.
 6              The second point is, as I've already argued
 7    to the Court, we need to know more, and can tell more
 8    from the recording equipment itself about, exactly as
 9    Ms. Duncan argued, whether the recorder, whether the
10    informant was controlling the recorder, turning it on
11    and off; whether the informant was making a
12    determination about when to start it, and, therefore,
13    what was left out.  And that all goes to the
14    voluntariness of Mr. Perez' statements.
15              So the Government -- I mean, I appreciate
16    the Government confirming that everything has been
17    produced.  But it still doesn't answer those
18    questions, which we need to investigate in order to
19    properly cross-examine whoever authenticates these
20    recordings at a suppression hearing or at trial.
21              THE COURT:  Do you want to say -- have a
22    final word on this, Ms. Duncan?
23              MS. DUNCAN:  Yes, Your Honor.  I have a few
24    points.
25              THE COURT:  Ms. Duncan.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MS. DUNCAN:  Your Honor, we're not arguing

2     sort of the bad faith of the Government, that they

3     failed to download the recordings from the devices.

4           THE COURT:  Well, it's worse, isn't it?  I

5     mean, you're saying they doctored the tape, isn't it?

6           MS. DUNCAN:  I don't know.  I actually --

7     my inquiry is targeted much more at the confidential

8     informant.  But at this point, I just need more

9     information.

10          THE COURT:  The CI is not going to record

11    the material.  He's just the person that's at the

12    other end that they're recording the conversation;

13    correct?

14          MS. DUNCAN:  No, I believe that the CI had

15    control over the recorder, and so was hitting the

16    button, or stopping the button, I think.  And my

17    concern is -- so, one, I just want to know, is that

18    true?  So the recordings that I have, are they all

19    the recordings, and was it the CI's decision to start

20    conversations mid conversation, and to create

21    recordings that I think are inaccurate, and don't

22    fairly reflect the content of the conversation.  But

23    without looking at the devices, I can't know that.

24          And there are a couple of reasons why I'm

25    concerned about just accepting the Government's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    representations without having an expert look at the
2    device.  One is that there have been other electronic
3    devices, like cellphones, where the Government has
4    downloaded the information, but we haven't gotten all
5    of the information off the cellphones.  And so now
6    the Government has agreed that we can look at them.
7    So I can't tell the Court what exactly is missing.
8    But I should be able to, once we've been able to look
9    at those cellphones.
10            Secondly, in discovery -- and this is Bates
11   No. 21822.  It's a 302 that's talking about a dispute
12   between two informants of whether or not a
13   conversation ever took place.  And Agent Acee went
14   back to look at the recordings that they had
15   retrieved from one of the informants, and it wasn't
16   there.  And what the report says, "In an effort to
17   track down the recording, Agent Acee conducted a
18   review of redacted file, and spoke with Special Agent
19   Brusuelas.  No recording was located in the source's
20   file, although the source said that he had recorded
21   this conversation.  Agent Brusuelas recalled that the
22   CHS had been equipped with a covert recording device,
23   and had been tasked with recording SNM members.
24   Agent Brusuelas subsequently collected the recording
25   device from the source.  However, the device failed

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to record conversations.  And the agent thought the

 2    device had malfunctioned or been damaged."

 3              So one of the reasons why we're asking for

 4    access to these devices is our expert can make an

 5    independent determination of whether, in fact, these

 6    devices had malfunctioned or been damaged; whether,

 7    in fact, when the Government downloaded recordings

 8    from these devices, those downloads were complete.

 9              So that is why we're asking.  Because these

10    conversations are so critical to the Government's

11    cases against Mr. Baca and against Mr. Perez, it's

12    important that we have access to the recording

13    devices to make these kind of factual determinations,

14    which will be relevant not only for motions to

15    suppress, but also in the jury determining the

16    credibility of the Government's witnesses.

17              THE COURT:  Mr. Beck, can you answer this

18    question?  I mean, is the picture that Ms. Duncan has

19    given me is that the informant is, like, in the cell

20    next door, and he's got a recording device, and he's

21    turning it on and off?  Is that what's going on?  Or

22    is this more like the wiretaps that I'm used to

23    seeing, where you've got people at an undisclosed

24    location listening to a device?

25              MR. BECK:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  It's both?
 2              MR. BECK:  No, you asked whether I can
 3    answer that question.
 4              THE COURT:  Oh, okay.  Will you?
 5              MR. BECK:  I will.  It's the former.  It's
 6    a device with an on and an off switch.
 7              THE COURT:  Okay.  So everything that the
 8    informant -- so the informant could be cutting things
 9    off early and starting it later.  But everything that
10    you got, you've produced?
11              MR. BECK:  I agree with the second part of
12    that.  I guess the first part --
13              THE COURT:  Don't you have everything you
14    need?
15              MS. DUNCAN:  Your Honor, without looking --
16    having an expert look at the recording devices, I
17    just don't know.  I don't know the method by which
18    the Government downloaded recordings off the
19    recorder.  So I don't know if they've captured
20    everything.  We have evidence that at least one
21    recording device may have malfunctioned.  But we
22    can't know for sure unless we have someone whose
23    specialty in that area, can look at it and say, yes,
24    in fact, there are no recordings here.  It could be
25    that there are recordings out there that more fully
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    reflect the conversations between Mr. Baca and this

2    informant.  And we should have them so that we can

3    give a jury that full and fair representation of

4    those conversations, rather than a partial.

5           THE COURT:  I think you're going to give

6    them a pretty good picture.  I think I better leave

7    the recording devices with the Government.  And I

8    think, with Mr. Carrillo and your arguments, you're

9    going to give a pretty good picture of what's going.

10           All right.  Ms. Fox-Young?

11           MS. FOX-YOUNG:  Your Honor, we next asked

12   for the identity of this informant's law enforcement

13   handler or other agents who dealt directly with him.

14   And as noted in our motion, several defendants have

15   identified the individual as Billy Cordova, based

16   upon his voice on the recordings.  We asked the

17   Government for the identity of the handler, and

18   anyone else who dealt directly.  And the Government

19   responded that Mr. Acee dealt with him.

20           But what the Government will not tell us is

21   who dealt with Mr. Cordova directly at the time of

22   the recordings.  This is, for all the reasons that

23   I've already mentioned with regard to Mr. Perez'

24   statements, and whether or not they're voluntary,

25   this is pretty critical to us.  And that is because

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    it's clear that Mr. Cordova was working with law

2    enforcement.  It's clear that he was provided, as the

3    Government has just informed the Court, with a

4    recorder, which he could turn on and off.  It's clear

5    that -- to us -- that he was placed, we think, next

6    to Mr. Perez, at a time when Mr. Perez was in

7    solitary confinement, and in very poor physical

8    health, and had been in solitary confinement for a

9    number of months.

10            So, Your Honor, we're entitled to know who

11   was coaching, training, prepping, and directing Mr.

12   Cordova at the time of these recordings.

13            We also request that any law enforcement

14   notes made prior to, during the course of, or after

15   the recordings, which are related to these

16   recordings --

17            THE COURT:  Let me ask you this:  Let's say

18   the answer is Bryan Acee.  What do you do with that?

19            MS. FOX-YOUNG:  Well, we prepare for

20   suppression, knowing that Mr. Acee was directing Mr.

21   Cordova to do these things.  There may be somebody

22   else entirely who orchestrated --

23            THE COURT:  But I guess I'm trying to think

24   of why does it matter if it's Mr. Acee, or if it's

25   somebody that flew out of Washington to coach

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Cordova.  What does it matter to the suppression

2    motion?

3            MS. FOX-YOUNG:  Because we want to talk to

4    that person, and we want the Court to hear from that

5    person as to exactly what the Government's

6    involvement was.

7            THE COURT:  But I bet they're just going to

8    tell you no.  They're not going to talk to you,

9    right?

10           MS. FOX-YOUNG:  I don't know.  We're very

11   persuasive, Your Honor.  I don't know.  But we're

12   entitled to investigate it.  And we're entitled to

13   subpoena witnesses.  We're entitled to work up our

14   case, not just with regard to suppression, but at

15   trial, in terms of the voluntariness.  It may not be

16   Mr. Acee at all who was coaching Mr. Cordova in the

17   hours prior to these recordings, and during these

18   recordings.  Maybe somebody else entirely.  Maybe

19   somebody who works for the Department of Corrections.

20   And we don't know.  But we're entitled to know.

21           THE COURT:  What does it get you?  I mean,

22   if you know an informant is being coached, what does

23   it give you to find out about the coach?

24           MS. FOX-YOUNG:  Well, under Fulminante, we

25   can -- a defendant can get statements suppressed,

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                 (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                              1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

```
 1    conceivably, if they were made by a cooperator -- and
 2    I'm paraphrasing -- working in concert with the
 3    Government, if they were coerced statements.  We need
 4    to understand the Government's involvement, and I --
 5              THE COURT:  He could be standing there in a
 6    prison cell with a wire or a recording device, we
 7    probably did make that assumption, right?
 8              MS. FOX-YOUNG:  Well, Your Honor, yes, we
 9    can.  Somebody gave Mr. Cordova questions to ask.
10    Somebody prepped Mr. Cordova as to exactly what
11    Mr. Perez had been through.
12              THE COURT:  That's what I'm getting at:  We
13    know all that.
14              MS. FOX-YOUNG:  Well, we don't know
15    because --
16              THE COURT:  Why do we care about the
17    identity of that person?
18              MS. FOX-YOUNG:  So that we can further
19    investigate what coaching was done, what prepping was
20    done, so we can subpoena that person.
21              THE COURT:  What if I assume in your
22    suppression motion that every question that was asked
23    was coached?
24              MS. FOX-YOUNG:  Well, that goes to
25    coercion.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Doesn't that get pretty close
2     to anything you would need?
3          MS. FOX-YOUNG:  Well, I think the Court
4     would have further questions under Fulminante as to
5     what that coaching consisted of, and, you know,
6     precisely what the Government's involvement was in
7     coercing statements.  If there were threats made,
8     whether those threats came from the Government; you
9     know, through an informant.  So --
10          THE COURT:  You've listened to these.  Are
11     there threats made?  During the conversations is the
12     cooperator threatening Mr. Perez?
13          MS. FOX-YOUNG:  Your Honor, we'll argue
14     that the conditions -- altogether yes, because of the
15     number of factors, these statements were coerced.  As
16     Mr. Beck has told the Court, it is hard to hear and
17     decipher everything on these recordings.  And that's
18     a process that we're still going through.  We think
19     that there are portions of conversations that weren't
20     recorded.  And that's also evidence that we hope to
21     have come in.  But to this point -- to this request,
22     exactly what the Government did in handling Mr.
23     Cordova, basically using him as a government agent to
24     extract statements, goes directly to the question of
25     the voluntariness of those statements.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1          And so, what would we do if we knew who it
2   was?  We would do background on that person.  We
3   would find out what other involvement they had.  We
4   would investigate and subpoena other witnesses.  We
5   would figure out if this is a pattern that's happened
6   in this case, where the Government is coaching and
7   prepping folks, using -- I mean, there are a number
8   of things that we would do.
9          THE COURT:  Well, you're probably going to
10  have Mr. Cordova to question at some point, right?
11         MS. FOX-YOUNG:  Yes.  And the decision of
12  whether or not he is going to testify, you know,
13  under Graham, hinges, to some extent, on this kind of
14  information.  And that's -- you know, he is entitled
15  to this material information to make an educated
16  decision about whether or not he wants to take the
17  stand.  And, you know, we've got to work up that
18  portion of the case.
19         THE COURT:  You're talking about Mr. Perez
20  or are you talking about Mr. Cordova?
21         MS. FOX-YOUNG:  Mr. Perez.  Yeah, Mr.
22  Cordova has other considerations.
23         THE COURT:  You're going to probably have
24  Mr. Cordova; you can just ask him, right?
25         MS. FOX-YOUNG:  Who his handler was?  And

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                              1-800-669-9492
                                                    e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   at that the point, we won't be able to subpoena that

2   person.  If it's not Mr. Acee, we won't be able to go

3   through the Touhy regs process.  I mean, that all

4   needs to be done upfront, not during the course of a

5   suppression hearing.  And it needs to be investigated

6   so that we can properly brief the issue for the

7   Court.

8            THE COURT:  All right.  Anything else on

9   that issue, Ms. Fox-Young?

10           MS. FOX-YOUNG:  We also request -- and this

11  is parallel to --

12           THE COURT:  I was going to let the

13  Government respond.  Do you have anything else on

14  that request about the identity of the handler?

15           MS. FOX-YOUNG:  No, Your Honor.

16           THE COURT:  Okay.  Mr. Beck?

17           MR. BECK:  Your Honor, a couple of things.

18  First of all, I just want to remind everyone, I know

19  that we're talking about Mr. Cordova in this sealed

20  document that effectively is now unsealed.  But he

21  was the subject of a protective order until we

22  disclosed it at the last set of hearings.  So we'll

23  remind everyone that if there is a confidential

24  source, that you might refer to them as a

25  confidential source.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                      1-800-669-9492
                                                            e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              Getting to the substance of this request,
 2   as I think Ms. Fox-Young indicated at sort of the
 3   beginning of her argument, is that the United States
 4   told her that the handler was Bryan Acee.  So,
 5   effectively, that part is gone.  I think that's more
 6   than she is entitled to -- excuse me, than Mr. Perez
 7   is entitled to under Rule 16, or any other authority.
 8   So this, I think, like the location, is just a
 9   fishing expedition, and asking the Government to
10   produce things that it doesn't have.  And I don't see
11   that under Rule 16.
12              THE COURT:  Nobody else was a handler?  It
13   was just Mr. Acee?
14              MR. BECK:  Well, I'm not sure.  I mean, I'm
15   not sure that's true.  Mr. Acee was a handler, I
16   guess, as that term goes.  But I guess, if we're
17   talking about big H or little h.  I mean, other
18   agents interacted with Mr. Cordova.
19              THE COURT:  All right.  Anything else, Ms.
20   Fox-Young?
21              MS. FOX-YOUNG:  Very briefly, Your Honor.
22              You know, if the Government is intimating
23   that we're somehow in violation of the protective
24   order, I just want to remind the Court that several
25   defendants identified Mr. Cordova on these
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    recordings.  And we proffered that in our briefing.

2            Separately, and the Court will hear our

3    motion to unseal this pleading -- and I won't argue

4    that now -- but we've absolutely abided by the letter

5    of any orders entered by this Court.

6            And no, Your Honor, I don't have any

7    further argument on that substantive point.

8            THE COURT:  Well, I think I'm going to not

9    grant that request.  It seems to me that it just

10   doesn't give any information that's going to be

11   useful or helpful.  I think the point that can be

12   made can be made with the evidence that already has

13   been produced, or that will be produced.  So I'm not

14   going to require the Government to disclose further

15   handlers.

16           All right.  Ms. Fox-Young, what do you

17   think about calling it a day?

18           MS. FOX-YOUNG:  Well, Your Honor, I think

19   in 90 seconds we might be able to wrap up just the

20   very last part of this subsection.  But if the Court

21   wants to call it a day, we can do it tomorrow.

22           THE COURT:  Well, we're going to have to be

23   here tomorrow.

24           So why don't we go ahead and call it a day.

25   I'll see y'all at 8:30 in the morning.  I appreciate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    everybody's hard work.  Be safe in your travels.  See

2    y'all tomorrow.

3                (The Court stood in recess.)

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

<pre>
1                       C-E-R-T-I-F-I-C-A-T-E

2


3   UNITED STATES OF AMERICA

4   DISTRICT OF NEW MEXICO

5


6


7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8   Official Court Reporter for the State of New Mexico,

9   do hereby certify that the foregoing pages constitute

10  a true transcript of proceedings had before the said

11  Court, held in the District of New Mexico, in the

12  matter therein stated.

13        In testimony whereof, I have hereunto set my

14  hand on May 18, 2017.

15


16


17


18  _____

19  Jennifer Bean, FAPR, RMR-RDR-CCR
    Certified Realtime Reporter
    United States Court Reporter
20  NM CCR #94
    333 Lomas, Northwest
21  Albuquerque, New Mexico 87102
    Phone:   (505) 348-2283
22  Fax:     (505) 843-9492

23


24


25
</pre>

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com