1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                        CR. NO. 15-4268 JB
                                          15-4269 JB
6    ANGEL DELEON, et al.,

7         Defendants.

8

9                    VOLUME 2

10
          Transcript of Motion Proceedings before
11   The Honorable James O. Browning, United States
     District Judge, Albuquerque, Bernalillo County,
12   New Mexico, commencing on May 10, 2017.

13
     For the Government:  Ms. Maria Armijo; Mr. Randy
14   Castellano; Mr. Matthew Beck

15   For the Defendants:  Mr. Brock Benjamin; Mr. Richard
     Sindel; Ms. Cori Harbour-Valdez; Mr. Patrick Burke;
16   Mr. Jim Castle; Mr. Robert Cooper; Mr. Roberto
     Albertorio; Mr. Orlando Mondragon; Mr. Noel Orquiz;
17   Mr. Nathan Chambers; Mr. Ben Wilson; Mr. Santiago
     Hernandez; Mr. Steven Potolsky; Mr. Richard Jewkes;
18   Ms. Amy Jacks; Mr. Josh Spencer; Mr. B. J. Crow; Mr.
     Marc Lowry; Ms. Theresa Duncan; Ms. Amy Sirignano;
19   Mr. Christopher Adams; Mr. Michael Davis; Ms. Justine
     Fox-Young; Mr. Donovan Roberts; Ms. Erlinda Johnson;
20   Ms. Angela Arellanes; Mr. Samuel Winder; Mr. Wayne
     Baker; Ms. Callie Dixon; Mr. Don Kochersberger; Ms.
21   Susan Burgess-Farrell; Mr. Diego Esquibel; Mr. Marc
     Grano; Mr. Ahmad Assed; Mr. Gregory Acton; Ms. Marcia
22   Morrissey

23
     For the Defendants (Via telephone):  Ms. Carey Bhalla
24

25



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

2

```
 1              THE COURT:  Good morning everyone.
 2              All right.  We're going to switch out
 3    seating charts here.  All right.  I think I'll do
 4    some things to move things along by substraction.  So
 5    this morning we're convening everything, continuing
 6    the hearing we had yesterday, except we're not
 7    convening 15-4269, so that case will not be called,
 8    and that loses a few people.  I understand Mr. Villa
 9    is not here yet -- not present yet, but he'll be here
10    later today.  So we have -- Justine Fox-Young will be
11    back there for Mr. Villa.
12              Ms. Sirignano is not here yet, so Mr.
13    Adams, you're here in place?
14              MR. ADAMS:  Yes, sir.
15              THE COURT:  Mr. Davidson, you're here for
16    Mr. Garcia?
17              MR. DAVIDSON:  Yes, Your Honor.
18              THE COURT:  All right.  Good morning to
19    you, Mr. Davidson.
20              Anything else?
21              THE CLERK:  No, sir.
22              THE COURT:  Ms. Fox-Young, you had 90
23    seconds, right?  Amazing what a night's sleep will
24    do, right?
25              MS. FOX-YOUNG:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Ms. Fox-Young.
 2              MS. FOX-YOUNG:  Yes, Your Honor.  I figured
 3    that we were almost done with this category of
 4    materials on page 20, which is item 4.  And we have
 5    asked the Government for any handwritten and typed
 6    notes of any law enforcement handlers.  Yesterday,
 7    the Government informed the Court and had informed us
 8    that Mr. Acee was one of the law enforcement handlers
 9    who worked with Mr. Cordova, and so his notes would
10    be included in that request.  We also asked that
11    those notes be accurately preserved and maintained
12    until trial.  If the Court doesn't find today that
13    they ought to be turned over, we think that their
14    relevance and materiality might be later determined
15    at trial, and wanted to make sure they're preserved
16    for that purpose.
17              THE COURT:  Any problem with the
18    preservation issue, Mr. Beck?
19              MR. BECK:  No, Your Honor.
20              THE COURT:  So let's preserve them.  I
21    guess my thoughts are that probably you need to look
22    at them for Brady and Giglio and Rule 16 information.
23    But those would -- if there is nothing there, I
24    wouldn't be inclined to produce them.  But your
25    thoughts?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BECK:  I think Your Honor has

2    maintained a consistent position in the past, and in

3    this case, that that's the status of the notes is --

4    they're Jencks unless they're Brady, Giglio, Rule 16.

5    So the United States is aware of those holdings of

6    the Court in the past, and will comply with those

7    rulings.

8          THE COURT:  We know Mr. Acee is going to

9    testify, so I guess these might be Jencks materials.

10   But at some point they probably will be produced.  Do

11   you agree with that?

12         MR. BECK:  I agree.

13         THE COURT:  So you'll get them 14 days

14   before, unless there is some Brady or Giglio, Rule 16

15   information.  Can you live with that, Ms. Fox-Young?

16   And you'll get -- of course, they'll be preserved.

17         MS. FOX-YOUNG:  I definitely can, Your

18   Honor.  Will the Court also order that that review

19   and disclosure of Brady, Giglio, and Rule 16 happen

20   in, say, 14 days?

21         THE COURT:  Can you do that, Mr. Beck?

22         MR. BECK:  Well, Your Honor -- and this

23   gets back to what we were discussing yesterday.  I

24   think -- respectfully, I think that Giglio should not

25   be produced yet.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  I did look at this yesterday.
 2   And I can't find anything that I have written that's
 3   drawn a distinction between Brady and Giglio.  But
 4   again, if you have something, I'm quite willing to be
 5   educated on it.
 6              MR. BECK:  Yes, Your Honor.  And I intend
 7   to produce some supplemental briefing on that.  I've
 8   looked at Your Honor's decisions.  And while you
 9   haven't -- the Court specifically hasn't drawn that
10   distinction.  The Court's quoted from Tenth Circuit
11   decisions -- I'm trying to think -- Johnson, an
12   unpublished decision.  And then there is another
13   Tenth Circuit unpublished decision that follows the
14   Court's quotation from Johnson.  It starts with an O,
15   and the name is escaping me now.  I can find it for
16   the Court later.  The Court has quoted Tenth Circuit
17   opinions that have drawn that distinction.  And as I
18   said, I intend to -- the United States intends to
19   file some supplemental briefing on that.
20              But I understand the Court's ruling
21   yesterday that, for the time being, we're required to
22   disclose those.  So I'd ask the Court to look at
23   those Tenth Circuit decisions.  In the meantime, I'll
24   file some supplemental briefing.
25              THE COURT:  All right.  Well, for the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    present time, why don't we shoot for 14 days to have

 2    your review done?

 3              MR. BECK:  Understood, Your Honor.

 4              THE COURT:  Then, if I need to change

 5    course -- I think we're getting together again next

 6    week, so that will give us time to change course, if

 7    we need to.  But let's plan on that.

 8              What else, Ms. Fox-Young?

 9              MS. FOX-YOUNG:  Your Honor -- and numbered

10    them 5 on page 20, continuing into the next page, we

11    asked for any documentation and/or correspondence of

12    any kind between the FBI or other law enforcement

13    with NMDOC officials, to include STIU, or anybody

14    else, regarding Billy Cordova possessing contraband

15    items, including recording devices or phones.

16              And the Court got a little bit of a sense

17    yesterday of some of the context for this request,

18    understanding that Mr. Cordova and other informants

19    used in this case have been supplied with hand-held

20    devices, hand-held recorders.  Ms. Duncan talked

21    about cellphones that, apparently contrary to NMDOC

22    rules and the regulations, have been in some way

23    brought into facilities and used in the investigation

24    of counts in this case.  So we ask for the

25    aforementioned materials -- we think that they're
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    highly material.  They pertain directly to the
 2    voluntariness of Mr. Perez' alleged statements, the
 3    nature of the recording devices and the way the
 4    recordings were made.  And they're also --
 5    potentially they go to -- I think likely -- very
 6    likely -- go to impeaching Mr. Cordova, if he, in
 7    fact, in some way violated NMDOC rules in bringing in
 8    a recording device.  So we ask for that whole
 9    category of documentation, of correspondence, on Mr.
10    Cordova's contraband during this period.
11            THE COURT:  Well, we had a similar issue
12    last week with Chris Garcia and the phone, and that
13    situation.  And I think I pretty much denied the
14    request there.  I guess I'm just having a hard time
15    seeing, you know, how you would use that information.
16    It seems to me it's a recorder, it's not a phone.  So
17    the regs and statutes that relate to that -- and even
18    if they do, that's a violation of state law -- I
19    guess I'm having a hard time figuring out why we'd be
20    concerned about it in federal court.
21            Your thoughts on that?
22            MS. FOX-YOUNG:  Well, I mean, beginning
23    with the phone, if the Court concedes that there
24    would be a violation to having a phone inside, and it
25    would be classified as contraband --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  If I understood the testimony

2     last week as far as the phone, the warden of the

3     prison pretty much has carte blanche discretion to

4     allow a phone into the facility.  So I guess I'm

5     having a hard time figuring out what difference it

6     makes how it got there.  If you want to argue at

7     trial that it shouldn't have been there, then I guess

8     you can.

9          MS. FOX-YOUNG:  Well, Your Honor,

10    respectfully, I think the Government would submit, if

11    the warden had let the item in, there wouldn't be any

12    correspondence about contraband in Mr. Cordova's

13    possession.  So, in that case, there wouldn't be any

14    material to turn over.  But if Mr. Cordova did

15    possess contraband, and there is documented evidence

16    of that, and there is correspondence about it, I

17    think we're entitled to it.

18          THE COURT:  Why?  Tell me why, though.

19          MS. FOX-YOUNG:  Because it's impeachment as

20    to how he got it in.  I mean, perhaps the Government

21    provided him with the phone.  And, yes, we'll learn

22    that upon cross-examination any number of times.  But

23    perhaps the Government didn't provide him with a

24    phone.  Perhaps he was otherwise recording

25    conversations, and himself smuggled the phone in.  I

SANTA FE OFFICE                                                                           MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                  Albuquerque, NM 87102
(505) 989-4949                                                                                (505) 843-9494
FAX (505) 843-9492                                                                    FAX (505) 843-9492
                                                                                             1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                                                   e-mail: info@litsupport.com

```
 1   mean, it certainly has been known to happen.  If that
 2   didn't happen, you know, there probably isn't
 3   correspondence about contraband.
 4            THE COURT:  All right.  Mr. Beck, are you
 5   handling this portion?
 6            MR. BECK:  I am, Your Honor.
 7            I guess it sounds like this request is
 8   broader than I read it.  I also read this -- as the
 9   issues we discussed and litigated in the Garcia
10   case -- to the extent that there is contraband, I
11   guess, correspondence or reports or documentation
12   regarding contraband, I guess that would be -- I
13   guess that would be produced as Giglio in his NMCD
14   file, or Giglio, whenever that comes about.
15            I think Your Honor is correct, that in the
16   Garcia case it was determined because law enforcement
17   provided those phones, the warden authorized it, that
18   they weren't contraband under the statute.  So I
19   think that holds true in this case.
20            Certainly, cross-examination will bring
21   that out.  But I think Your Honor's leanings and
22   tending to deny this request is correct.
23            THE COURT:  I'll take a look at the
24   materials for Giglio and Brady material.  I'm sitting
25   here trying to put my feet in the shoes of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   defense lawyers.  And I'm just having a hard time
 2   figuring out how that would be helpful.  But you're
 3   looking at the materials, so you take a look at them.
 4   And I'd like to have an attorney look at them, stare
 5   at them, and see if they see any Brady, Giglio, or
 6   Rule 16, anything that's helpful to the other side.
 7              Anything else on that, Ms. Fox-Young?
 8              MS. FOX-YOUNG:  Your Honor, will you also
 9   order that review happen in 14 days?
10              MR. BECK:  No objection to that, Your
11   Honor.
12              THE COURT:  All right.  So ordered.
13              MS. FOX-YOUNG:  Your Honor, the last
14   category that we'll address with the Court is on page
15   21 of our motion.  We asked for Mr. Cordova's pen
16   pack and STIU file.  We are, the defense believes,
17   entitled to know, as I've already said, the manner by
18   which Mr. Cordova may have obtained any materials he
19   used in eliciting recorded statements.  And that
20   information, among other information, may be gleaned
21   from his pen pack and his STIU file.
22              It's also -- as I think the Court has
23   become very familiar with the contents of pen packs
24   and STIU files, based upon prior argument and prior
25   orders -- it is sort of classic impeachment material.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Any disciplinary matters involving Mr. Cordova, his

2    past felonies, would exist in the pen pack.  But the

3    STIU file will contain, you know, records of any

4    discipline.  He continues to remain in custody.  And

5    certainly, you know, during the period that he was

6    recording -- allegedly recording Mr. Perez -- we're

7    entitled to know if he was committing infractions, if

8    he was getting in trouble, if he was bringing in --

9                THE COURT:  I think Mr. Beck may be about

10   to make a concession.  Mr. Beck?

11               MR. BECK:  Yeah, your Honor, I think this

12   falls into the category that we've discussed, the

13   14-day Giglio review.  And if Your Honor is ordering

14   us to disclose it, we'll disclose it.  I think Ms.

15   Fox-Young is right.

16               THE COURT:  Well, here's the thing, I think

17   it's going to be chockful of stuff that, if he's

18   going to be called as a witness, that they're

19   probably going to get.

20               MR. BECK:  Right.

21               THE COURT:  So do you want to fight over

22   the file, or do you want to go through and do a

23   Giglio and Brady review, before you just turn over

24   the file?

25               MR. BECK:  I guess, in Your Honor's wisdom,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  we'll just turn it over.

 2            THE COURT:  Okay.

 3            MS. FOX-YOUNG:  Your Honor, is that both

 4  the pen pack and the STIU file?

 5            MR. BECK:  It is, Your Honor.

 6            MS. FOX-YOUNG:  And is that a 14-day

 7  disclosure?

 8            MR. BECK:  Fourteen days is fine.

 9            MS. FOX-YOUNG:  Okay.  And the final item

10  is on page 22.  We've come to an agreement.  The

11  Government is going to permit us to access Southern

12  and PNM Level 6, including the locations where Mr.

13  Perez was housed at PNM Level 6.  And we'll go ahead

14  and get that set up with the Government.

15            THE COURT:  Is that correct, Mr. Beck?

16            MR. BECK:  That's correct, Your Honor.

17  We're coordinating that presently.

18            THE COURT:  All right.  Anything else, Ms.

19  Fox-Young?

20            MS. FOX-YOUNG:  Your Honor, I can take up

21  the next motion quickly, if the Court would like to

22  take it up, the motion to unseal?

23            THE COURT:  Okay.  Let me make sure I get

24  the right ones here.

25            MR. DAVIS:  Michael Davis on behalf of
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    Carlos Herrera.  I had filed a joinder.  There is one
 2    specific item of discovery that I was going to
 3    address the Court on.
 4              THE COURT:  This is in the motion to compel
 5    that we just argued?
 6              MR. DAVIS:  Yes, sir, it's in 1037.
 7              THE COURT:  All right.
 8              MR. DAVIS:  I apologize.  If I could just
 9    have a few minutes.
10              THE COURT:  All right.  Go ahead.
11              MR. DAVIS:  Thank you, Judge.  Just, by way
12    of background, if the Court recalls, Mr. Herrera has
13    been charged in Counts 6 and 7, as being involved in
14    the murder of Javier Molina.  It's also clear that he
15    was not in the same pod where Mr. Molina was
16    murdered.  And it appears that he's clearly not
17    directly involved in the murder.  It appears to be
18    the Government's theory -- basically two-fold -- one
19    is that he holds some sort of a leadership capacity
20    in SNM; and two, that based on that, he somehow gave
21    a nod or somehow sanctioned what was to be done with
22    Mr. Molina.
23              And, in the course of this, there is Billy
24    Cordova recordings involving Mr. Herrera as well,
25    that were done at PNM South.  And so we joined in all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN
&ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    the arguments that Ms. Fox-Young and Ms. Duncan

2    raised yesterday.  We don't have any additional

3    argument with regard to all of those issues except

4    for a couple.

5            First off, I think there are recordings --

6    Billy Cordova recordings -- with Mr. Herrera that

7    there may be transcripts of that we haven't received.

8    I may be wrong about that.  I haven't discussed that

9    specifically with the Government.  But our review, I

10   feel there are some transcripts that we haven't

11   received, and we ask those to be provided.

12           The next thing, Judge --

13           THE COURT:  Don't we take them one at a

14   time here.  And --

15           MR. BECK:  Obviously, Ms. Armijo can speak

16   to this better than I, but I'll try my best.  If

17   there are transcripts, I think we produced them.  If

18   not, we'll produce them.  And there may be some that

19   don't have transcripts.  But we don't object to that

20   request.

21           THE COURT:  All right.  Does that satisfy

22   you on that, Mr. Davis?

23           MR. DAVIS:  Yes, Judge.

24           Judge, the other thing -- and this is very

25   brief -- is that when we were at the November 29

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    hearing, this issue came up as to how Mr. Herrera was

2    involved in this.  And Ms. Armijo said there is a

3    audio recording where Mr. Herrera is purported to

4    have admitted to his involvement in the murder, some

5    sort of a confession, I would say they intend to

6    use -- I guess in one of the Billy Cordova recordings

7    or some other recording.  We have repeatedly asked

8    the Government to provide us a copy of that.  We have

9    reviewed all the audio recordings concerning Mr.

10   Herrera, and we cannot find any such statement.  And

11   we have asked the Government to provide that to us.

12   It would be Rule 16.  Obviously, it's crucial to our

13   case.  And so we'd ask the Court to order the

14   Government to provide that, if it, in fact, exists.

15            THE COURT:  Well, my impression from that

16   conversation -- and correct me if I'm wrong -- is

17   that maybe Ms. Armijo backtracked a little from her

18   characterization of it.  She did say -- or I thought

19   she confirmed that the transcript and the recording

20   that she was characterizing as a concession, or

21   confession, had been produced; confirmed that, and

22   there was no more to be produced.Is my memory off,

23   Mr. Beck?

24            MR. BECK:  That's right, Your Honor.

25            THE COURT:  So you have it.  I think it was

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    the heat of argument.  And she characterized it, but

2    there is no more to be produced; is that correct?

3              MR. BECK:  That's right, Your Honor.  And I

4    think what Mr. Davis is asking is for us to point him

5    specifically to the recording.  And I don't have a

6    problem working with him to do that.

7              THE COURT:  Okay.  So he'll tell you which

8    recording they're characterizing.  But you have it.

9              MR. DAVIS:  Just to clarify, I don't think

10   that's what she said.  I'm sorry I don't have the

11   transcript in front of me.  Because I remember a

12   similar allegation was made by the Government

13   concerning Mr. Baca.  And I remember Mr. Lowry and I

14   both were surprised to hear this, because we weren't

15   aware of any of these recordings where a confession

16   was made.  Obviously, that's a fairly crucial piece

17   of evidence.I sent emails to the Government.  They

18   were going to look for it.  At some point, and

19   provide it to me.  And I've never seen it.I certainly

20   have no problem continuing to work with them on that.

21   But I want to alert the Court that they did make the

22   reference.  But we haven't seen it.  We don't believe

23   it exists.

24             THE COURT:  Maybe by the next hearing next

25   week, could you just send a letter -- email -- to

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Davis telling him which transcript or recording
 2    Ms. Armijo was referring to?
 3              MR. BECK:  I said I would, Your Honor, and
 4    I will.
 5              MR. DAVIS:  Thanks, Judge.
 6              THE COURT:  Thank you, Mr. Davis.
 7              All right.  Ms. Fox-Young.  Let me get
 8    organized here, but can you come back up to the
 9    podium.  Let me get my materials.Ms. Jacks,
10    Mr. Jewkes, y'all had joined that series of motions
11    as well.  Do y'all have anything else on that before
12    we move on?
13              MS. JACKS:  We don't have anything
14    additional.  Thank you.
15              THE COURT:  All right.  Thank you, Ms.
16    Jacks.
17              So you want to unseal the motions we just
18    argued; is that correct, Ms. Fox-Young?
19              MS. FOX-YOUNG:  That's correct, Your Honor.
20              THE COURT:  And the reason for that is?
21              MS. FOX-YOUNG:  The first general reason is
22    that, as this Court has noted there is a general
23    presumption against filing pleadings sealed.
24    Additionally, we believe that any cooperating witness
25    discussed in the motion -- and I think --
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                       1-800-669-9492
                                           e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1            THE COURT:  Let me ask this:  Y'all didn't
2     file a response.  Do you oppose this motion?
3            MR. BECK:  Your Honor, I just -- what I
4     have -- and I think what the Government has an issue
5     with is that we come in yesterday, and we talk for
6     hours and hours about how we have to have everything
7     on tablets so there is no paper in the facilities.
8     The reason for that is cooperator statements.  And
9     then we talked about how all the defendants want the
10    tablets so there is no paper in the facilities for
11    cooperator statements.  And then now, we want
12    unsealed documents that refer to cooperator
13    statements.
14            So it seems to me we're talking out of the
15    both sides of our mouths.  So we'd appreciate it if
16    they were consistent on that.
17            Since we've already talked about the
18    informant in this case, we don't oppose unsealing it,
19    because, effectively, it's there, it's unsealed.  So,
20    to answer Your Honor's question, no, I just think
21    that everyone should remain aware of what's going on
22    in this case, and the threats out there and the
23    dangers out there.  And I know everyone is.  Just --
24    the inconsistency troubles me.So to answer Your
25    Honor's question, we don't oppose it.  And you may
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    grant the motion.
 2           THE COURT:  All right.  So I will grant
 3    that motion.You know, in a case like this, it's hard
 4    to be consistent.  And sometimes we don't -- we're
 5    just not going to be able to -- we're
 6    across-the-board trying to make lots of
 7    individualized decisions.  And some of them are going
 8    to look a little inconsistent at times.  But some of
 9    the material is out in the public; some of it's not.
10    And we'll try to be careful with everybody.  But I'll
11    grant that motion.
12           MS. FOX-YOUNG:  Your Honor, I mean, this is
13    going to come up again and again.  But, generally,
14    it's our position that if witnesses are going to be
15    testifying at trial, we should be able to file public
16    motions and conduct public hearings with regard to
17    any argument.And so it's been a practice in the
18    case -- I think because there is a protective order
19    in place, a lot of counsel are filing motions sealed
20    where there is any mention of the discovery, where
21    there is any mention of any witnesses.  And I just --
22    I think that's contrary to some of the Court's
23    earlier directives; that the presumption should be
24    that the documents be filed unsealed.  Obviously, if
25    there is a protective order specifically in place
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    addressing a particular CS, you know, that material

 2    needs to be filed sealed, unless there is some other

 3    way that the information is public.

 4              But I just wanted to bring that to the

 5    Court's attention, because we're filing a lot of

 6    documents sealed, and then we have to file our

 7    joinder sealed.  And then we come in here and have a

 8    public hearing.

 9              THE COURT:  Well, we'll just have to take

10    them one at a time.  I mean, there may come a time

11    when not a whole lot, as we barrel toward -- and get

12    into the trial.  But a lot of it is not going to be

13    sealed.  But I think we're just going to have to take

14    these issues one at a time.  There may be things the

15    Government knows and needs to protect.  And we put in

16    place a method.  It's working.  It's cumbersome to

17    some degree.  But I think we're working.

18              Do you want to say anything on that, Mr.

19    Beck?

20              MR. BECK:  I do, Your Honor.  That

21    presumption case law says it's overcome when there is

22    an interest in getting the witnesses to testify at

23    trial.  And that's the case here.  We have these

24    cooperators, witnesses, whatever you want to call

25    them, protected so that they may testify at trial.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   And I think there is a great concern, and it

2   overcomes the presumption in this case.

3           And so I would ask -- not necessarily the

4   Court -- but I'd ask everyone in this room that when

5   we're talking about sealed documents, if we seek to

6   unseal them, that we do that before we talk about the

7   motions.  Instead of like this case, where we talked

8   about the sealed document, and outed a cooperator

9   who, granted, has been outed before, whether it be

10  incidentally.  But going forward, I would ask that we

11  talk about motions to unseal before we talk about the

12  sealed documents.

13          THE COURT:  All right.  I'll try to be more

14  careful on that, too.  Sometimes, like Ms. Fox-Young

15  says, everything is sort of sealed, but nobody is

16  sensitive about it.  So help me out, if we're about

17  to argue something, raise my attention.  And I'll try

18  to be more careful about that as well.

19          MS. FOX-YOUNG:  Thank you, Your Honor.

20          THE COURT:  All right.  Anything else, Ms.

21  Fox-Young?

22          MS. FOX-YOUNG:  No, Your Honor.

23          THE COURT:  All right.  Thank you, Ms.

24  Fox-Young.

25          All right.  I think that what's next up is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Gonzales' motion for a bill of particulars.  Ms.
 2    Johnson.  Who is going to be arguing this for the
 3    Government?  Mr. Castellano, why don't y'all come up
 4    here with Ms. Johnson, why don't y'all just come up
 5    here together.  And I'll certainly hear anything
 6    anybody wants to say on this motion.  But let me ask
 7    a few questions here at the beginning.  You got your
 8    materials, Mr. Castellano?
 9              MR. CASTELLANO:  Yes, Your Honor.
10              THE COURT:  All right.  It seemed to me the
11    only specific question I could glean from your
12    materials that you wanted to know is when Mr.
13    Gonzalez joined the SNM Gang, when the Government
14    contends that he joined the SNM Gang.  You may have
15    more.  But let's start with that one.  That is one of
16    the ones that you wanted; correct?
17              MS. JOHNSON:  That is, Your Honor.  And
18    more importantly, obviously, as the Court is aware,
19    one of the elements pursuant to 18 USC 1959 that the
20    Government has to prove is that the defendant had, or
21    was seeking a position in the enterprise.  Another
22    element is that the defendant's general purpose in
23    committing the crime of violence was to maintain or
24    increase his position in the enterprise, or was in
25    consideration for the receipt of anything of value.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          That is actually the crux.  And I made -- I

 2   think I articulated it better in my reply.  I have

 3   gone through the discovery.  My investigator has gone

 4   through the discovery.  And as the Court knows, it's

 5   voluminous.  There is absolutely no evidence that we

 6   could find that would point to us that Mr. Gonzalez

 7   engaged or participated in this crime of violence in

 8   order to maintain or increase his position in the

 9   enterprise.  That's a key element, Your Honor.

10          And the Court in U.S. versus Aispuro, which

11   is the case that I, along with other counsel in this

12   courtroom, had before this Court, ordered the

13   Government to provide --

14          THE COURT:  Well, let's -- I read the

15   briefing, and y'all are pretty good about pointing

16   out my cases.

17          Let's just take the first question first.

18   Mr. Castellano, do you have any more specific

19   information that you'd be able to give as far as the

20   date that Mr. Gonzalez joined the SNM Gang?

21          MR. CASTELLANO:  I don't have a specific

22   date, Your Honor.  What I can tell the Court is my

23   understanding is that he's an 18th Street Gang

24   member.  There are a few other SNM members who are

25    from the 18th Street Gang.  And that's a feeder gang

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1   for the SNM.  So, as an 18th Street member, he could

 2   either be a member or an associate of SNM Gang.

 3            THE COURT:  Do you have any particular

 4   documents that you would point to that give Ms.

 5   Johnson that information?

 6            MR. CASTELLANO:  I don't know if I do, Your

 7   Honor.  I wasn't ready to address that question this

 8   morning, since it was just strictly the bill of

 9   particulars.  So it may be in a debrief report or

10   something else.  But right offhand, I'm not aware of

11   that.

12            THE COURT:  Ms. Johnson, address your

13   question to me, but what question would you want the

14   Government to answer; given that you're not going to

15   get a whole lot more from them, maybe a document or

16   Bates number, what else would you want?

17            MS. JOHNSON:  With regard to this

18   particular element, Your Honor?

19            THE COURT:  Well, if you're done with that

20   element, you're free to move on to another element.

21            MS. JOHNSON:  And I appreciate that, Your

22   Honor.  I'm sure the Court will be seeing a motion in

23   limine on this issue, because I think we're doing a

24   lot of speculation here in terms of what the

25   Government's position is, and a lot of conclusions

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    being drawn.  But we'll address that in a motion in
 2    limine.
 3              THE COURT:  Okay.  What's your next -- what
 4    would be your next question that you would want with
 5    a bill of particulars?
 6              MS. JOHNSON:  Your Honor, it's the other
 7    element that I addressed.  And that is --
 8              THE COURT:  What did Mr. Gonzalez get out
 9    of being in the gang or committing the crime?
10              MS. JOHNSON:  Committing the crime, Your
11    Honor.  And specifically I cited to U.S. versus
12    Jones, which set out nicely the elements required
13    under 18 USC 1959.  One is that the defendant had, or
14    was seeking a position in the enterprise.  And the
15    other element is that -- and they're somewhat
16    intertwined -- that the defendant's general purpose
17    in committing the crime of violence was to maintain
18    or increase his position in the enterprise.  Or he
19    was in consideration for the receipt of anything of
20    value.
21              And it's not sufficient for the Government
22    to get up here, Your Honor, and say -- just as they
23    did now -- well, he's an 18th Streeter, and by
24    conclusion, it's a feeder gang to SNM.  There is
25    absolutely no evidence that shows that, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    None whatsoever.And then also I expect them to say,
 2    Well, he was acting at the behest, allegedly, of Joe
 3    Gallegos, and therefore, he was seeking a position in
 4    the enterprise, or to maintain a position.  There is
 5    no evidence.  Absolutely none whatsoever.
 6              THE COURT:  Well, I do think it's helpful
 7    to know exactly what their theory is with Mr.
 8    Gonzalez.
 9              Mr. Castellano, Ms. Johnson sounds like she
10    knows what your theory is.  But do you want to
11    elaborate as to what your theory is against Mr.
12    Gonzalez?
13              MR. CASTELLANO:  Not really, Your Honor.
14    The case law on bill of particulars states that the
15    Government does not have to give its theory, and that
16    the bill of particulars isn't a fishing expedition.
17    But the Government's theory --
18              THE COURT:  I'm trying to decide whether
19    it's worth ordering the Government to be more
20    particular here.  So I guess I'd like to hear your
21    theory against Mr. Gonzalez.
22              MR. CASTELLANO:  Well, I'll note my
23    objection for the record, Your Honor.  The case law
24    says that's not the purpose of a bill of particulars.
25    But to answer your question, not only does it count
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to violate the statute, it also counts to be an aider

2    and abettor, in violation of the statute.  So he

3    could have aided and abetted any of these people to

4    violate the VICAR statute.  One of the documents Ms.

5    Johnson gave yesterday has a statement indicating

6    that Gutierrez, Shauna Gutierrez told Brandy

7    Rodriguez, Rivera, and Gonzalez to get over to the

8    house and take care of Gomez.  And the other

9    statements indicate that there was concern that

10   Gomez, the victim, was going to be a witness against

11   Joe Gallegos.  And so that is one of the allegations

12   in the indictment, is that -- witness intimidation is

13   one of the things that the racketeering activity

14   covers.

15         THE COURT:  Is that primarily what your

16   case is of Mr. Gonzalez, is witness intimidation?

17         MR. CASTELLANO:  Yes.  Part -- there is in

18   the second superseding indictment a count of witness

19   tampering, which is Count 16.

20         THE COURT:  So that's mostly what Gonzalez

21   is in for?

22         MR. CASTELLANO:  Yes.  And as a gang

23   member, that would be one of the things you do is you

24   take care of snitches.  And so that is something that

25   is expected of you by membership in an organization.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Is it this one witness, though,
 2    that is going to be the proof at trial?  The case
 3    against him, this one witness that's --
 4              MR. CASTELLANO:  At this point, we have the
 5    victim and one cooperating defendant.
 6              THE COURT:  Okay.  And the victim is the
 7    one witness; so that's the case against Mr. Gonzalez?
 8              MR. CASTELLANO:  No.  The cooperating
 9    witness -- so there is the victim and a cooperating
10    witness.  So there are two.
11              THE COURT:  You're going to allege that --
12    you're going to argue that he intimidated both of
13    them?
14              MR. CASTELLANO:  No.  The victim will tell
15    us what happened to him, and the cooperating witness
16    will tell us the reasons behind the assault.
17              THE COURT:  But the case against Mr.
18    Gonzalez is that he intimidated one witness?  You
19    have two witnesses to testify about that?
20              MR. CASTELLANO:  That's correct.
21              THE COURT:  And you know the name of the
22    victim?
23              MS. JOHNSON:  Yes, Your Honor.
24              THE COURT:  And you know the name of the
25    cooperator.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. JOHNSON:  Yes, Your Honor.  And I think
2    that what we're doing -- this is sort of a
3    tautological argument.  I don't believe that -- we
4    know what the evidence is; that this individual was
5    beaten.  But, obviously, the Government needs to
6    prove the additional elements that I think are
7    deficient.  And I can't find any evidence in the
8    discovery.
9          And I wanted -- if I may, Your Honor --
10          THE COURT:  How, then, would a bill of
11   particulars help you?  I mean, if you're prepared to
12   punch holes in the Government's case because they
13   don't have witnesses -- and one of the things that
14   these cases -- my cases have pointed is, you know, I
15   look at the evidence that's been produced.  I mean,
16   sometimes these bill of particulars come early in a
17   case, where a defendant is really scrambling to
18   figure out what the charges are.  But in this case,
19   it may not be a robust case from your viewpoint, but
20   that's it.  I'm wondering what a bill of particulars
21   would do to help you.
22          MS. JOHNSON:  Well, Your Honor, as the
23   Court pointed out, under United States v. Ivy, which
24   is the Tenth Circuit opinion at 83 F.3d 1266, at page
25   1281, "A defendant is entitled to the theory of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Government's case," as the Court just queried the

 2    Government.  So the issue is not whether --

 3            THE COURT:  It seems to make sense.  It may

 4    not have any support in the evidence, but I mean,

 5    it's a coherent theory.

 6            MS. JOHNSON:  And I understand, Your Honor.

 7            But what we're doing here -- what the

 8    Government is doing is they're leaping to

 9    conclusions.

10            And I want to just give the Court a little

11    bit of a preview of how the Government, and

12    particularly the investigators in this particular

13    case, leaped to conclusions without evidence.

14            And this goes back to my first request on

15    the association or membership of Mr. Gonzalez in the

16    SNM.  So in United States v. Ramon Phillip Baca,

17    which was a case before Judge Herrera, Mr. Baca was

18    charged in a stand-alone drug case, he pled, was

19    sentenced, and was on his way to BOP with a

20    designation as an associate of SNM, which he has

21    never been.  And so I asked the Government counsel in

22    that case to please remove that designation because

23    it was not supported.  That attorney contacted Agent

24    Acee, who then responded, and I was provided with a

25    copy of the response.  And his conclusion as to why

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Baca was an associate of the SNM was that because
 2    one of his uncles was a founding father of the SNM.
 3    By that familial association, Mr. Baca was then an
 4    associate of the SNM for life.
 5            Your Honor, I'm concerned here we're going
 6    to have issues of the Government leaping to
 7    conclusions, unfounded conclusions, about membership,
 8    more importantly association in the SNM by
 9    Mr. Gonzalez.  And I think that the Court needs to
10    hold the Government's feet to the fire, and have them
11    produce evidence of how Mr. Gonzalez is an associate
12    of the SNM; when this happened; what evidence
13    supports this association.  And then, with regard to
14    the other element that he committed this offense to
15    maintain a position, the fact that he committed the
16    offense, he could have had a beef with Mr. Gomez,
17    because he's a child molester.  But not because he
18    was doing it in order to assist the SNM.  So again,
19    this goes back to my argument, Your Honor.  His
20    participation in this offense, beating Mr. Gomez,
21    doesn't get the Government a 1959 conviction.  And I
22    think that their indictment tracks the statutory
23    language.
24            And we have volumes of discovery, thousands
25    of -- tens of thousands of pages of discovery.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   I'd ask that the Court order the Government to narrow
 2   that and tell the defense in this case the theory of
 3   the Government's case as to -- particularly as to
 4   those two elements -- without these unfounded
 5   conclusions by an agent in this case.
 6               THE COURT:  All right.  Thank you, Ms.
 7   Johnson.
 8               Mr. Castellano.
 9               MR. CASTELLANO:  Well, Your Honor, she's
10   talking about the strength of the Government's case
11   in her opinion.  That's really her closing argument.
12   That's not the basis of a bill of particulars.  And
13   she's announced she's ready for trial.  What she's
14   telling the Court is that she's not ready for trial.
15   And that's a different topic altogether.
16               So I think, once again, this is not the
17   subject of a bill of particulars.  She has plenty of
18   discovery.  The case law says that the indictment, if
19   it tracks the language of the statute, informs the
20   victim -- or the defendant of what the charges are,
21   when they occurred, where they occurred.  And it's
22   supplemented by discovery, and that's sufficient, and
23   that defeats the motion for a bill of particulars.
24               MS. JOHNSON:  Your Honor, the whole purpose
25   of the bill of particulars was to --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1             THE COURT:  Were you done, Mr. Castellano?
2             MR. CASTELLANO:  Yes, I'm done, Your Honor.
3             THE COURT:  All right.  Ms. Johnson.
4             MS. JOHNSON:  I apologize.
5             Your Honor, the whole purpose of the bill
6    of particulars is to avoid surprise at trial.  So if
7    that's all they have, well, okay, that's all they
8    have.  But, Your Honor, they are deficient in the
9    elements and in the evidence, and according to the
10   case law which the Court cited in -- and did a very
11   thorough analysis in US versus Aispuro, we're
12   required to know what facts support these legal
13   elements.  And that's why, Your Honor, I think it's
14   important to order the Government to provide the
15   defense a bill of particulars, particularly on those
16   two requisite elements.
17           THE COURT:  All right.  Thank you, Ms.
18   Johnson.
19           Well, I don't want the defendant surprised.
20   But I guess I would take, from your representations,
21   Mr. Castellano, every document that you got related
22   to Mr. Gonzalez, what you're going to use to prove
23   the case, is in the possession of Ms. Johnson?
24           MR. CASTELLANO:  I believe so, possibly
25   with the exception of Jencks statements, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  But you've looked at those?
 2   There is no Brady, Giglio, or anything material
 3   there, so there is nothing that you made a
 4   determination is going to be helpful to her?
 5          MR. CASTELLANO:  I don't believe so, Your
 6   Honor.  But I will review those again.
 7          THE COURT:  Well, I'm not inclined to grant
 8   a bill of particulars.  You've got a ton of
 9   documents.  I think you and I have a good feel as to
10   what the case against Mr. Gonzalez is.  I think we
11   know what the holes are.  The Government has got to
12   know its strengths.  There is not much more I can do.
13   it's not a civil case where I can have a summary
14   judgment or is a motion to dismiss.
15          So I'm not going to grant a bill of
16   particulars.  I think in this case people have a
17   pretty good idea what they're going to trial on.  So
18   I'm going to deny the motion.
19          MS. JOHNSON:  Thank you, Your Honor.
20          THE COURT:  Thank you, Ms. Johnson.  All
21   right.  Ms. Johnson, I think the next one is yours as
22   well.  It's the amended motion for an order to compel
23   specific discovery.  If you want to take that up.
24          MS. JOHNSON:  Motion to sever, Your Honor?
25          THE COURT:  No, this is the amended
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   motion -- you want to argue that again, huh?  You're
 2   beating the dead horse, aren't you?
 3             MS. JOHNSON:  You said we could still
 4   continue to beat it.
 5             THE COURT:  Do you want to argue the
 6   amended motion for an order compelling specific
 7   discovery?
 8             MS. JOHNSON:  Yes, Your Honor.  I believe
 9   that the items are limited and addressed in the
10   reply, because we have since received some of the
11   items that were addressed in the motion to compel.
12             So what we're down to, Your Honor, the
13   first one is the disclosure of DNA and fingerprint
14   evidence from a machete that was seized by officers.
15             So, in this particular case, Your Honor, on
16   February 26, 2016, as the Court is aware from the
17   allegations, Jose Gomez was beaten at the home of a
18   woman by the name of Charlene Parker Johnson.  And
19   the allegations are that -- well, they vary here --
20   that the reason for the beating was at the behest of
21   Joe Gallegos, according to the Government's evidence,
22   or the Government's position, I should say.  So then,
23   according to Mr. Gomez' -- one of his numerous or
24   varying versions of the events was that he was hit on
25   the head with a machete by Mr. Gonzalez, and then by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   another object by Mr. Rivera.  Mr. Gomez managed to

2   run away.  And a few days later he claims that he was

3   chased by some individuals in a van.  And Valencia

4   County Sheriff's Deputies responded to the call, and

5   a van was eventually located, and a machete was

6   allegedly found in the van.  The machete was

7   processed for DNA and fingerprint evidence.  I expect

8   the Government will try to introduce that machete,

9   and try to argue that that was the machete that was

10  used in the beating of Mr. Gomez.

11          The report from Valencia County Sheriff's

12  Department indicates that, as I said, the machete was

13  processed for DNA and fingerprints.

14          The FBI actually responded very quickly,

15  and interviewed Mr. Gomez, and essentially took over

16  the investigation.  Your Honor, what we are asking

17  are for the results of the DNA testing and the

18  fingerprint evidence, because we are 100 percent

19  confident Mr. Gonzalez' DNA, nor his fingerprints,

20  will be found on the machete.  And we would submit to

21  the Court -- and this is not just speculative; I'm

22  100 percent confident that his DNA and fingerprint

23  evidence will not be on that machete.  So this is

24  clearly Brady evidence.

25          The Government's position is that, Well,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                   e-mail: info@litsupport.com

1    we're washing our hands of it.  It's in state

2    custody.  It's not our duty to have these things

3    tested.  Your Honor, because they've adopted this

4    case -- they're working with state officials; this is

5    a joint investigation with state officials -- the

6    Government is required, and now the duty is imposed

7    on the Government to provide this evidence.  I would

8    ask that the Court order the Government to provide

9    this DNA evidence and this fingerprint evidence to

10   the defense, obviously, forthwith.

11          The other item that we are requesting --

12          THE COURT:  Why don't we take them one at a

13   time.

14          All right.  Ms. Armijo.

15          MS. ARMIJO:  Your Honor, we have requested

16   that -- although it may have been processed for DNA,

17   it wasn't submitted for DNA analysis.  We made that

18   request of the state some time ago, and we are

19   checking to see if the results are back in.  We

20   certainly will turn them over once we do.  But we

21   made that request of the state.  But she's probably

22   right.  We don't think that this is the machete that

23   was used.  So while she stands there and says "100

24   percent," and believes we're going to say it's the

25   machete, we're not going to say it's the machete.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                           1-800-669-9492



```
1              THE COURT:  You don't have the machete?
2    You're not planning to introduce it at the present
3    time?
4              MS. ARMIJO:  We don't believe that that's
5    the machete that was used.
6              THE COURT:  So you're not planning to
7    introduce that one?
8              MS. ARMIJO:  No.  Unless something comes
9    back that we don't -- but we don't believe it's the
10   machete.  We have made the request for the DNA.  When
11   we get the response back from Valencia County, we
12   will certainly inform defense counsel of where they
13   are with that.  But we're not saying that's the
14   machete.
15             THE COURT:  You may not want to mess with
16   that machete.
17             MS. JOHNSON:  All right.  Well, then --
18             THE COURT:  Leave that alone.
19             MS. JOHNSON:  -- that answers that, Your
20   Honor.So in order to avoid a motion in limine, is if
21   the Government agreeing that they will not be
22   introducing any evidence of this machete in this van?
23             THE COURT:  I think we have a
24   representation at the present time you don't intend
25   to do that; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. ARMIJO:  We don't plan to say this

2    machete was used in it, yes.  Unless there is some

3    other relevance to it, which I can't think of right

4    now.  But certainly if it becomes an issue, we would

5    inform defense counsel.

6          THE COURT:  Okay.

7          MS. JOHNSON:  That answers that then.

8    Thank you.

9          The next item, Your Honor, is written

10   statements to the FBI by Brandy Rodriguez and Paul

11   Rivera.  Now, while I understand that the Court can

12   order the Government to provide this Jencks material

13   now, the Court can encourage the Government to

14   perhaps release them, or provide them, disclose them

15   early, earlier than just right before trial.  But

16   more importantly, Your Honor, I would submit to the

17   Court that these statements contain Brady information

18   as to Mr. Gonzalez, particularly as to some of these

19   elements that the Government is required to prove.

20   I'd ask that the Court direct the Government to

21   carefully inspect these for Brady impeachment

22   material, and order them to disclose them to the

23   defense if they contain that information.

24          MS. ARMIJO:  We believe this is Jencks.

25   And, as the Court has ordered us to do in other

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                   (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492

 

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    things, we will review it for Brady material, and if
 2    there is any Brady material, it will be disclosed to
 3    her.  But we'll do another review of it, Your Honor.
 4              THE COURT:  All right.  Does that satisfy
 5    that?
 6              MS. JOHNSON:  Yes, Your Honor.  May we have
 7    that within 14 days?
 8              THE COURT:  We've been using that.  Is that
 9    okay with you, Ms. Armijo?
10              MS. ARMIJO:  Yes, Your Honor.
11              THE COURT:  All right.  So we'll do that
12    review within 14 days.
13              MS. JOHNSON:  And, Your Honor, I think the
14    last item, because the Government has disclosed a lot
15    of the items that I had originally listed in the
16    motion to compel, is the -- we were provided with a
17    copy of the Valencia County Sheriff's Department's
18    report of the investigation of the incident.  But the
19    Government provided a redacted copy.  And we simply
20    are asking for --
21              THE COURT:  Do you have it?
22              MS. JOHNSON:  I don't, Your Honor.  But I
23    can get it.
24              THE COURT:  Why don't you want grab it, and
25    let me see how redacted it is.  Because I've not been
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1   requiring just wholesale redactions.  But let's see
 2   how much it's redacted.
 3            MS. JOHNSON:  Your Honor, counsel for the
 4   Government doesn't have it readily available.
 5   They've asked if I could put some of the stuff on the
 6   visualizer.
 7            THE COURT:  Okay.
 8            MS. JOHNSON:  So it's not heavily redacted.
 9   But I'm going to show you some of the portions that
10   are.  So it begins on Bates No. 5726 U.S. versus
11   DeLeon.  So, for example, in order for us to do our
12   due diligence and investigate the case, the
13   Government has redacted addresses, dates of birth,
14   Social Security numbers.  I don't like to rely on the
15   Government.  I like to do my own investigation of the
16   evidence that is provided, Your Honor.  And this is
17   fundamental.  This is key.
18            Tracking down some of these folks --
19   obviously, we know Mr. Rivera is in custody.
20   Ms. Brandy Rodriguez is here.  But, for example,
21   Mr. Gomez.  Mr. Gomez, his date of birth, his Social
22   Security number.  I suspect that he has a very
23   extensive criminal history.  And we have a right to
24   do our own investigation.
25            Also, on page 5750, the attachments, we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    don't -- some of these are redacted.  We don't know

2    why they're redacted, whether or not these were

3    provided.  And this is just -- the content -- looks

4    like it's a table of contents for the supplementary

5    report by the detective.

6              THE COURT:  You think they're what?

7              MS. JOHNSON:  This is the table of contents

8    to the supplementary report by the detective.

9    They're redacted here, so some of the content has

10   been redacted.  So I don't know what was removed,

11   why?  I think it's important for the defense to

12   know -- to have it an unredacted.  If they're

13   concerned about my client having an unredacted, we

14   can agree to have an unredacted copy just for

15   attorney and the investigators in the case.  Because

16   the key here is making sure that I do my due

17   diligence and investigate these allegations fully.

18             For example, here, Your Honor, something as

19   simple as -- this is page 5751 -- that deputies were

20   then dispatched to -- I think we have a right to know

21   where they were dispatched to, so that we could go

22   investigate the scene, talk to any potential

23   witnesses there, what they observed, what they heard.

24             So, again, this is just an example of here

25   on page 5752, the address, presumably, of where this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   allegedly took place, again was redacted.  So some

 2   information that would assist the defense in doing

 3   their due diligence and investigating these

 4   allegations has been redacted, Your Honor.  So we're

 5   asking that the Court order the Government to

 6   disclose an unredacted copy of the supplementary

 7   report.

 8           THE COURT:  What would you think about

 9   disclosing an unredacted one just for attorneys' eyes

10   only, so that if Ms. Johnson wants to try to make

11   sure she's got the right people in her investigation

12   she could have it?  Would you have any problem with

13   that?

14           MS. ARMIJO:  Well, the problem is, then

15   every single one of these persons is going to make

16   that request.  And while it may be easy for one

17   defendant with a certain amount of discovery -- and

18   may I see that discovery?  It does contain much of

19   what has been disclosed is.  I mean, look at this

20   one, for example.  I mean, clearly, address, date of

21   birth, Social Security number.  And the address is

22   obviously for purposes of safety issues, but also

23   personal information, and all of that.  And so, if

24   there is something specific -- I mean, she obviously

25   knows the address of where this occurred.  And if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   there are certain addresses that she wants, we can

2   work with her.  But I don't think we should get into

3   the business of agreeing to wholesale unredacted

4   copies.  And I'm referring to Bates stamp 5754.

5   Again, it has information, because it's probably

6   their dates of birth.  And so here's another one.  It

7   says, "date of birth."  Everything else is on there.

8   And so I can provide the copy.  It appears to be

9   address, date of birth, Social Security numbers, and

10  addresses only that were redacted from this.  If

11  there is specific addresses that she wants, I don't

12  mind that separately.  But I don't think we should go

13  down the road of just redisclosing thousands and

14  thousands of pages, especially if they can get into

15  the wrong hands accidentally.

16          THE COURT:  Well, I'm not going to make any

17  blanket order on this, but this particular one, given

18  that it's a particular discrete incident, I'll order

19  the Government to produce an unredacted copy of that.

20  That will be for attorneys' eyes only.

21          MS. JOHNSON:  And my investigator, Your

22  Honor?

23          THE COURT:  Your investigator, but caution

24  your investigator not to share it with anyone, so

25  that you can make sure that you can link up people

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   accurately on there.
 2              MS. JOHNSON:  Thank you, Your Honor.
 3              MS. ARMIJO:  And for the record, given that
 4   she has specific -- can we get the Bates stamp
 5   numbers of which ones she wants?
 6              MS. JOHNSON:  It is the entire
 7   supplementary report, Your Honor that was prepared by
 8   the Valencia County Sheriff's Department.  And that
 9   specifically begins at page -- if I may just have a
10   moment -- well, this whole section, Your Honor, just
11   begins at 5726, and it goes through 5798.  It's for
12   this incident.  And those are all the requests that I
13   have, Your Honor, at this time.
14              THE COURT:  All right.  Thank you, Ms.
15   Johnson.
16              All right.  Give me a second here to get my
17   documents organized.
18              All right.  Mr. Chambers?  Mr. Orquiz?  Mr.
19   Benjamin?
20              MR. BENJAMIN:  Your Honor, if I may.
21              THE COURT:  Mr. Benjamin.
22              MR. BENJAMIN:  We joined that motion, and
23   we just would request, for purposes on the record,
24   that we be included in the disclosure for the report
25   and the other items that were requested.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

```
 1            THE COURT:  Remind me of the circumstances
 2   of why you would need that unredacted report.
 3   Refresh my memory about the allegations against --
 4            MR. BENJAMIN:  Your Honor, I represent Joe
 5   Gallegos, who is the one that -- the Government is
 6   alleging that the actions were done at his behest,
 7   and in order to quote/unquote tamper with that
 8   witness.  So all those allegations --
 9            THE COURT:  He's the one that ordered it,
10   right?
11            MR. BENJAMIN:  Correct, Your Honor.  But
12   it's the same request, essentially, to investigate
13   and be able to --
14            THE COURT:  I'm going to deny that request
15   to you.
16            MR. BENJAMIN:  Understood, Your Honor.
17            THE COURT:  All right.
18            MS. ARELLANES:  Your Honor, may I address
19   the Court?
20            THE COURT:  You may.
21            MS. ARELLANES:  Your Honor, we joined in
22   that motion.  Although a lot of that information is
23   in the STIU files that we have, like the date of
24   birth and Social Security number, but I would like to
25   have a disclosure of that as well, as it pertains to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Shauna Gutierrez.

2            THE COURT:  Refresh my memory as to Ms.

3    Gutierrez' involvement in that.  Was she present?

4            MS. ARELLANES:  She was not present at the

5    time of the assault.  However, according to what the

6    Government has alleged, and what they said this

7    morning, is that Shauna told the group of three

8    people that went over to assault JG, Jose Gomez,

9    where he was staying at.  And so I have received the

10   discovery.  I have gone over the Valencia County

11   Sheriff's Department report.  And, you know, it does

12   pertain to her.

13           THE COURT:  Well, it pertains to her, but

14   again, she wasn't there.  So I'm going to deny the

15   request.

16           MS. ARELLANES:  Okay.  Thank you, Judge.

17           THE COURT:  All right.  Mr. Orquiz, it's

18   your motion, or Mr. Chambers?  Okay, Mr. Chambers.

19   There you are.  All right.

20           MR. CHAMBERS:  Good morning, Your Honor.

21           THE COURT:  Mr. Chambers, how are you

22   today?

23           MR. CHAMBERS:  I'm well, thank you.

24           We're going to make this really easy for

25   you, Your Honor.  I've been in discussions with Mr.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Beck, and there were three items that we were

2   requesting.

3          The first was an internal affairs

4   investigation.  Mr. Beck has advised me that they

5   have reached out to the New Mexico Department of

6   Corrections to try to get that internal affairs

7   investigation.  And if they are able to obtain it,

8   they will produce it.

9          The second item had to do with STIU files

10  for some alternate suspects.  And Mr. Beck has

11  advised me that those will be produced within 14

12  days.And the last item was some information that we

13  needed that was relevant to DNA testing.  And Mr.

14  Beck informs me this morning that they contacted the

15  lab technician who was responsible for the DNA

16  testing, and attempted to get the information that I

17  was requesting.  Apparently, the lab technician has

18  sent the documentation that was responsive to our

19  request to the United States Attorney, and the United

20  States Attorney will produce that.

21          THE COURT:  These are state lab

22  technicians?

23          MR. CHAMBERS:  Yes.  Mr. Beck was not sure

24  if it was going to answer all the questions I had

25  about DNA, but they would give us what they had.  So,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    I guess, where that leaves us is -- and Mr. Beck
 2    thought all of this could be accomplished within 14
 3    days.  I believe I'm accurately stating the
 4    Government's position, which makes me very nervous to
 5    be stating the Government's position, but if that all
 6    is accomplished within 14 days, we're done.  And if
 7    the production that we receive is somehow deficient
 8    or lacking, then I'll come back and see you.
 9              THE COURT:  All right.  Is that all --
10              MR. BECK:  That's all accurate, Your Honor.
11              THE COURT:  That's correctly stated?
12              MR. BECK:  Right.
13              THE COURT:  Anything else you need, Mr.
14    Chambers?
15              MR. CHAMBERS:  Yes, severance.  No.
16              THE COURT:  Severance.  Okay.  That keeps
17    coming back up, doesn't it?
18              All right.  Ms. Harbour-Valdez, did you
19    have something on that motion?
20              MS. HARBOUR-VALDEZ:  Yes, Your Honor.
21              For the record, we joined that motion on
22    the behalf of Edward Troup, and we spoke with the
23    Government this morning, and we'd just like to be
24    included in those disclosures.
25              THE COURT:  All right.  Are you agreeable
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to that, Mr. Beck?
 2             MR. BECK:  Yes, Your Honor.
 3             THE COURT:  All right.  So included.  All
 4    right.  Give me a second here to -- all right.
 5             Mr. Benjamin, I think this is your motion
 6    on the motion to compel Government disclosure of
 7    Grand Jury transcripts.  If you wish to --
 8             MR. SINDEL:  He stepped out for a moment.
 9             THE COURT:  Well, then he just loses,
10    right?
11             MR. SINDEL:  He wanted to --
12             THE COURT:  Do you want to wait, or do you
13    want to take it up?
14             MR. SINDEL:  I'd prefer to wait.
15             THE COURT:  All right.  So we're now
16    getting into the motions that were put on last night.
17    Ms. Wild has sent out the notice so that these are
18    noticed up now.  So why don't we take up the first
19    one, which is 893.  So this is Mr. Alonso's motion to
20    sever Count 3, and to sever the trials of Mr. Troup
21    and Mr. Alonso.
22             So, Mr. Chambers, if you want to argue
23    those motions.
24             MR. CHAMBERS:  Yes, Your Honor.  Thank you.
25             THE COURT:  Because these are coming in
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    kind of late for me, I did the best I could last

2    night, this morning, trying to read these new ones

3    that are being placed on.  But you may have to

4    educate me more than normal, because I'm a little

5    less prepared for these because we're doing them so

6    quickly.

7                    MR. CHAMBERS:  Well, I'm happy to do that.

8                    And, Your Honor, first of all, I want to

9    address why this motion was not originally -- we did

10   not request it originally to be heard this week.  And

11   it wasn't because we were trying to avoid it or

12   trying to put it off.  But as we looked at the

13   calendar, and we looked at the motions that still

14   needed to be litigated, and based upon the time that

15   was invested on the motions for disclosure of the

16   confidential informants in February, it was our view

17   that litigating the CI motions was probably going to

18   take almost three days.  And we thought it more

19   important to do those CI motions than the severance

20   motions.  It was just a judgment that we made.  It

21   wasn't that we were trying to avoid it.  But when the

22   CI motions went away so quickly yesterday, we

23   discovered we had some time.  So we asked this to be

24   moved on.

25                    And I know that that was Mr. Burke's

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   position also with regard to his motions for
 2   severance.  It wasn't that Mr. Troup was trying to
 3   avoid litigating the severance motions, it was just
 4   that we thought time would be taken up with the CI
 5   motions.
 6           Your Honor, I heard you yesterday.  And I
 7   try to pay attention when you talk and when you
 8   write.  And, you know, the severance motion has
 9   largely been decided, it appears.  And I understand
10   that you even said that some dead horses deserve to
11   be beat.  And this is one that does, but I'm not
12   going to do it.  I think that the severance issue is
13   going to continue to come up.  But I'm not going to
14   waste your time today arguing things that you've
15   already read and thought about and ruled on.  But
16   there is a portion of the severance motion that has
17   not been specifically addressed, and I would like to
18   talk about it just briefly.  And it may be that the
19   argument I'm going to make is something that you
20   intend to address at a later time.  It has to do with
21   Bruton.  I heard Your Honor yesterday say that, in
22   your experience, that most Bruton issues can be cured
23   with some scissors and Wite-Out.
24           THE COURT:  Well, let me say it a little
25   bit differently.  I have had success -- I can't speak
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   for the entire body of law whether every Bruton
2   problem can be solved that way.  But you just work
3   hard at it.
4            MR. CHAMBERS:  Right.
5            THE COURT:  And generally, my experience
6   has been that I've been able to solve the problem.
7   If you can't solve it, the evidence doesn't come in.
8   I mean, it's real clear.
9            MR. CHAMBERS:  Yeah.
10           THE COURT:  That's the reason I warned the
11  Government that, you know, they've got to start
12  staring at this stuff.  This is pretty serious.  My
13  experience has been, though, that we usually can
14  massage the thing.  But I can't speak for the body of
15  Bruton issues out there.
16           MR. CHAMBERS:  Well, my experience is
17  similar to Your Honor's.  I think that -- I don't
18  want to put a percentage on it, but many Bruton
19  issues can be resolved with proper redactions.  And
20  the Government even acknowledges as much in their
21  response.It's a little more dicey in this case than
22  in some other cases.  Frequently, the Bruton issue
23  involves, perhaps, a written statement of a
24  co-defendant, which can be edited, consistent with
25  Richardson versus Martin, and Gray, as long as you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    follow the rules, it can be edited properly.  It's a

2    little trickier, though, when you're dealing here

3    with informants, confidential informants, who will

4    probably just be testifying as to what someone told

5    them.  They are -- you are -- they're relying on the

6    informant to make the necessary redaction.  And

7    that's scary.

8           THE COURT:  Well, we have to be extremely

9    careful, yeah.  Yeah, I mean, that's --

10          MR. CHAMBERS:  But, you know, the fact that

11   these Bruton issues arise --

12          THE COURT:  I guess what I tend to do in

13   those situations is, you just have to have the

14   prosecutor lead the witness.  And everybody has got

15   to just live with that; say, Is this what was said?

16   You know, to get it out.  And they have to get with

17   their witness and say:  There is going to be a

18   segment here where the answers are yes, no.  Do

19   not -- don't free-wheel here.

20          MR. CHAMBERS:  Right.  Well, the fact that

21   these Bruton issues arise in the context of

22   statements made to Government informants leads me,

23   then, to another part of the discussion.  And that is

24   the Government takes the position the statements made

25   to Government informants are beyond the reach of

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
1    Bruton.  And they take the position that Bruton only

2    applies to statements made to law enforcement

3    officers.

4              THE COURT:  I'm not sure I see that

5    distinction.  So maybe I can be educated on it, but I

6    have not thought Bruton drew that distinction.

7    That's a Crawford-type issue.  That's not really a

8    Bruton-type issue.  So I'm not sure I draw that

9    distinction.

10             MR. CHAMBERS:  Well, you're very wise then.

11             You're right, Bruton doesn't draw that

12   distinction.  Bruton makes no distinction whatsoever

13   between statements to law enforcement officers or to

14   civilians, and it also makes no distinction between

15   statements made --

16             THE COURT:  Maybe what they're getting

17   into -- and I thought about this earlier -- is there

18   may be a hearsay problem with, you know, the

19   statements in the first place.  But that's an initial

20   problem, rather than a Bruton problem.  You've always

21   got a hearsay problem when you've got a Bruton

22   problem.  But those are two different issues.

23             MR. CHAMBERS:  I agree.

24             THE COURT:  So maybe what they're

25   anticipating and they're arguing the Bruton context,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is they're arguing as to why it overcomes the hearsay
 2    statement.  And I hadn't thought one through.  But
 3    that may be what they're anticipating, that it
 4    doesn't have a Crawford issue.
 5              MR. CHAMBERS:  Well, you know, the whole
 6    issue of the continued --
 7              THE COURT:  I mean, I guess that's one of
 8    the things we're going to have to determine is
 9    whether these cooperators, these statements that the
10    cooperators are picking up, are those Crawford
11    problems, hearsay problems?  Those are two different
12    issues.
13              MR. CHAMBERS:  Yes.
14              THE COURT:  But, you know, are these
15    cooperators so enmeshed in law enforcement's work
16    that they were gathering statements that could be
17    anticipated as being brought to trial and to the
18    attention of the Court.
19              MR. CHAMBERS:  Well, Your Honor is
20    absolutely correct that Crawford created, in some
21    people's minds, issues as to the continued vitality
22    of Bruton.  And I have -- I wrote a response about
23    that, and discussed at length the history of Bruton
24    and the history of Crawford, and the history of
25    confrontation going back to the first century.  But,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   you know, Crawford -- the Government takes the view

2   that Crawford essentially gutted Bruton.  And that

3   the only thing that Bruton is concerned with are

4   formal statements to law enforcement.  And that's

5   based upon the reading of Crawford.

6           But there are a couple of important things

7   to note about Crawford and Bruton.  First of all,

8   Crawford was certainly a Sixth Amendment

9   confrontation clause case.  But that's not all it

10  was.  Crawford does not rest solely on the

11  confrontation clause.  It also has due process.  And

12  the Bruton court specifically relied on Jackson v.

13  Denno.  And Jackson v. Denno was a due process case.

14          So the constitutional underpinnings of

15  Bruton are not solely the confrontation clause, or is

16  not solely the confrontation clause.  It's also due

17  process.  So, to the extent that Crawford -- which is

18  a confrontation clause -- impacted the foundations of

19  Bruton, it didn't touch the due process foundations

20  of Bruton.

21          Furthermore, Your Honor, Your Honor

22  accurately observed that Bruton doesn't draw a

23  distinction between statements to law enforcement or

24  civilians, or statements made during formal

25  interviews or during casual conversations.  It simply

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   doesn't draw that distinction.  And what's important
 2   is to remember the history of Bruton -- Bruton was
 3   decided two years after Rule 14 was amended.  And
 4   I've quoted the advisory committee notes to Rule 14,
 5   which also draws no distinction between statements to
 6   law enforcement and statements to anybody else.
 7   There is no distinctions drawn in Rule 14.
 8             I will tell Your Honor I was troubled by
 9   one aspect of the Government's response.  And that
10   was on page 11, where they say -- and I quote,
11   "However, if a co-defendant's statements are made
12   unwittingly to a Government informant, those
13   statements are considered nontestimonial, and are
14   accordingly beyond the scope of Bruton."  And then
15   they cite United States v. Smalls, and they say,
16   "Quoting Davis versus Washington."
17             Your Honor, that -- I want to be as
18   charitable as I can here, but that's simply not the
19   truth.  Davis versus Washington says no such thing.
20   Davis versus Washington -- the only cite to Davis
21   versus Washington is in Justice Thomas' dissent.  It
22   doesn't say what the Government says it is citing it
23   for.  And maybe it was just an error.  But that's not
24   an accurate -- that is not an accurate statement of
25   the law.  And it made me mad.  I've calmed down now,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    though.  I got it off my chest so I feel better.

2          And the other thing about -- you know,

3    Davis versus Washington specifically cites cases that

4    deal with statements to non-law enforcement.  And,

5    indeed, the United States Supreme Court, as recently

6    as last year, in a case called Ohio versus --

7    somebody -- it's in my papers.  It's Ohio v. Clark.

8    The Court there specifically said that "at least some

9    statements made to individuals who are not law

10   enforcement could come within the confrontation

11   clause."

12         So here's the problem with my argument,

13   Your Honor, and it's one that maybe you can fix soon.

14   It's the Tenth Circuit.  You know, this opinion of

15   theirs in Smalls, it supports the Government's

16   argument.  But I have argued why I think Smalls is

17   wrongly decided.  But, of course, I understand that

18   you're obliged to follow it, even if it's wrong.

19   But Smalls leaves undisturbed Rule 14 and the Court's

20   discretion under Rule 14 to take appropriate remedial

21   steps.

22         And I think it's -- when you consider the

23   Government's argument, and indeed the Tenth Circuit's

24   interpretation of Bruton and Crawford, the results of

25   adopting that particular interpretation are stunning.

SANTA FE OFFICE                                                                              MAIN OFFICE
119 East Marcy, Suite 110                                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                   Albuquerque, NM 87102
(505) 989-4949                                                                                  (505) 843-9494
FAX (505) 843-9492                                                                      FAX (505) 843-9492
                                                                                              1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                    e-mail: info@litsupport.com

```
 1    If you -- if Smalls is the law, and if the Tenth
 2    Circuit's reading of Crawford and Bruton is correct,
 3    then it is possible for a defendant to be convicted
 4    entirely through unconfronted hearsay.  It's possible
 5    under the Government's argument.  I'll give you an
 6    example, Your Honor.  Imagine this:  Imagine that
 7    three people get arrested for murder --
 8              THE COURT:  Well, before you run it through
 9    the Crawford, though, and even an expanded Crawford
10    and Bruton, you still have to go through, first, the
11    hurdle of the hearsay, right?  I mean, if it's
12    blocked by the hearsay rules, it's not coming in.
13              MR. CHAMBERS:  That's correct.
14              THE COURT:  You've got to run it through
15    that first.  So when you say that they would be
16    convicted entirely on hearsay, well, that's not
17    possible, right?
18              MR. CHAMBERS:  Oh, it is under Smalls.
19              THE COURT:  Well, but it's dealing with the
20    Crawford problem, not the hearsay problem, right?
21              MR. CHAMBERS:  Smalls said that a statement
22    made by a co-defendant to an informant is admissible
23    against a co-defendant because it's nontestimonial.
24    And imagine what that means, Your Honor.  Just --
25              THE COURT:  But it has to satisfy some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    hearsay exception or be nonhearsay before we even get

2    to the constitutional issue.

3              MR. CHAMBERS:  Well, the hearsay exception

4    that would be relied upon is statement against penal

5    interests, which would apply to the declarant, but

6    not the co-defendant.

7              THE COURT:  Right.

8              MR. CHAMBERS:  But Smalls doesn't say that.

9    Smalls says it's coming in against everybody.  And

10   that's frightening.  Because you could be -- a

11   defendant could be convicted based entirely on

12   unconfronted hearsay.  And here's how, Your Honor.

13   You've got three guys who get arrested for murder.

14   And they get placed in separate cells.  And they all

15   talk to their cellmate.  And during those

16   conversations, they implicate a fourth person.  Under

17   Smalls, and under the Government's interpretation of

18   Crawford and Bruton, that fourth person could be

19   convicted based on the testimony of the three

20   cellmates, based on the testimony of people who know

21   nothing at all about the case except what a

22   co-defendant told them.  That fourth person could be

23   convicted without any ability to cross-examine a

24   witness who has personal knowledge of the defendant's

25   own conduct.  That's what Smalls says.  And that is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    scary.  That -- but that's what Smalls says, and

2    that's what the Government is arguing.

3            And we're going to have to rustle with

4    these Bruton issues at some point.  And maybe I'm

5    jumping the gun here.

6            THE COURT:  Well, do you think that the

7    briefing that is supplied is robust enough for me to

8    make those rulings at this point?  Or is it just -- I

9    mean, my impression was that it was more general, and

10   that everybody was flagging this as a reason why I

11   should sever.  But it wasn't robust in the sense,

12   like I would see with a motion in limine, where I

13   really have got to sit down and decide whether

14   evidence is coming in or not.

15           What's your thoughts about the state of the

16   record?

17           MR. CHAMBERS:  Well, I have attached as

18   exhibits to the original motion, which was 893, the

19   reports that deal with the statements that I believe

20   implicate Bruton.  And I don't presume to tell Your

21   Honor what sort of evidence you feel comfortable

22   ruling on.  If Your Honor believes that you need to

23   actually hear from the informants to testify what the

24   declarant said, then I suppose we can do that.

25           THE COURT:  No, I don't think that's



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    probably necessary, that it has to be that.  But I do
 2    have to exactly know -- I've got to know what the
 3    statements are precisely.  There can't be any fudging
 4    on it.  Because, like I said, if we're cutting and
 5    pasting and redacting and leading, it's got to be
 6    pinpoint.  And then I've got to know what the
 7    Government is relying on with the two-step process,
 8    and maybe even three-step here, to get the evidence
 9    in.  So I'm not sure I need the witness, as long as
10    there is precision about the statement that's coming
11    in.  Does that make sense?
12              MR. CHAMBERS:  Yes, absolutely.  And I have
13    provided --
14              THE COURT:  I think I got that.
15              MR. CHAMBERS:  If you rule in my favor, you
16    got what you need.
17              THE COURT:  You're wanting a severance
18    here.  I thought we were talking about motions in
19    limine.
20              MR. CHAMBERS:  No.  I told you everything I
21    know about it.
22              THE COURT:  Help me out with the
23    Government's response.  You think it's robust enough
24    for me to make the hearsay Crawford and the Bruton
25    issue?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                MR. CHAMBERS:  I think it's robustly wrong.
 2     But I think that their position is not unclear.
 3                THE COURT:  But you think it's full?
 4                MR. CHAMBERS:  Yes.
 5                THE COURT:  All right.  What else,
 6     Mr. Chambers?
 7                MR. CHAMBERS:  That's it.  Thank you.
 8                THE COURT:  All right.  Thank you,
 9     Mr. Chambers.
10                I know this is Mr. Chambers' motion to
11     sever.  Any other defendant have anything they want
12     to say on this issue?
13                All right, Mr. Castle.  You like talking
14     about Bruton and Crawford?  It juices you up?
15                MR. CASTLE:  Just a couple of comments.
16                THE COURT:  Mr. Castle.
17                MR. CASTLE:  When Mr. Chambers was talking,
18     he talked about the concept that there was perhaps a
19     due process layer to the analysis the Court needs to
20     undertake.  And if we read Bruton, and we read Lee
21     versus Illinois, and Lilly, at the basis of all of
22     those decisions -- even though they're in
23     confrontation clause terms -- they're really talking
24     about the reliability and the fairness involved in
25     the introduction of certain categories of statements.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   And in Lee and in Lilly, and prior to Crawford, these

 2   statements were historically considered unreliable;

 3   that is, statements by informants in jailhouses.

 4            Now, when the Smalls decision was

 5   undertaken, it was in 2000, I believe.  Since 2000,

 6   the United States Supreme Court has actually veered

 7   in its decision, and suggested perhaps there is a due

 8   process concept here that we need to look at.  I

 9   would point to the Melendez-Diaz versus Massachusetts

10   case, in 2009, 129 Supreme Court 2527.  And in that

11   decision the Supreme Court stated that the Sixth

12   Amendment contemplates two classes of witnesses:

13   Those against the defendant and those in favor.  The

14   prosecution must produce the former.  The defendant

15   may call the latter.  There is not a third category

16   of witnesses helpful to the prosecution, but somehow

17   immune from confrontation.  So the Supreme Court is

18   saying that what the prosecution's position that

19   there is a category of witnesses against the

20   defendant that do not need to be confronted,

21   Melendez-Diaz rejected that.

22            It's interesting that they also quoted --

23   we're talking about Thomas' -- it's actually

24   concurrence in part and dissent in part in the Davis

25   decision -- but his concurrence specifically stated

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    that "the confrontation clause also reaches and

2    prohibits prosecutorial use of technically informal

3    statements when used by the prosecution to evade the

4    confrontation clause."

5            Now, what I'm suggesting -- and obviously,

6    I'm not arguing Mr. Chambers' motion -- but I think

7    since -- what's on the table here, essentially, is

8    some ideas about whether -- how the Court should deal

9    with what were traditionally considered Bruton

10   statements, is that the Court would need to

11   undertake, not just a hearsay analysis and a strict

12   confrontation clause analysis, but also a due process

13   analysis.  And there is analogous situations where

14   the Court does that:  Voluntariness of statements,

15   identifications made at a crime scene, the

16   admissibility of expert testimony in areas that have

17   not been -- that are novel.  In all these instances,

18   the Court undertakes its due process role to make

19   sure that unreliable evidence doesn't come before the

20   jury.

21           And so all I'm suggesting here is that the

22   Supreme Court seems to be moving this direction, away

23   from the Smalls' strict analysis that was probably,

24   because it was close in time after Crawford, and

25   that -- and I don't think Smalls -- I haven't read it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   in a while -- says that there isn't a due process

2   layer that needs be reviewed.

3          And so I think the suggestion might have

4   been by Mr. Chambers that the Court might need to

5   take a look at these statements is a good one,

6   because perhaps within the statements the Court can

7   see its reliability.

8          Now, I understand that sounds a lot like

9   Ohio versus Roberts, the old standard.  But there

10  seems to be retraction or a movement back away from

11  the simple concept:  Is it testimonial or not?  And I

12  can't read Melendez-Diaz in any other way than when

13  they say that the confrontation right applies to

14  statements against a defendant.

15          THE COURT:  All right.  Thank you, Mr.

16  Castle.

17          MR. CASTLE:  Did the Court need a pin cite

18  on that?

19          THE COURT:  Yeah, go ahead and give it.

20          MR. CASTLE:  I have the Supreme Court

21  Reporter, 129 Supreme Court, at page 2534.

22          THE COURT:  Thank you, Mr. Castle.

23          Anyone else want to speak on the motion to

24  sever?  Ms. Johnson?

25          MS. JOHNSON:  No, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  You were just
 2    getting up.
 3              All right.  Who is tackling these from the
 4    Government's side?  Mr. Castellano?
 5              MR. CASTELLANO:  Yes, sir.  Your Honor,
 6    Mr. Chambers is upset that we're relying on the
 7    Smalls case.  But the Smalls case is the law of the
 8    circuit, and he acknowledges as much in his reply to
 9    our response.  So the real question is whether or not
10    the Court is willing to overturn Tenth Circuit
11    precedent --
12              THE COURT:  I'm not.
13              MR. CASTELLANO:  -- by not following
14    Smalls.
15              THE COURT:  I'm not.  I'll faithfully
16    follow Tenth Circuit precedent.  I would like to
17    know, though -- I haven't thought this through -- do
18    you see anything that -- in the Supreme Court law
19    since Smalls, because it's getting a little bit down
20    the pike -- that would call into question what the
21    Tenth Circuit did in Smalls?
22              MR. CASTELLANO:  I haven't, Your Honor.
23    I'll do another look, in case we need do supplemental
24    briefing, but --
25              THE COURT:  Because when the Tenth Circuit
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    first came out with their interpretation of Crawford,
 2    they didn't quite nail it, and they had to backtrack
 3    from that with subsequent Tenth Circuit opinions, is
 4    my impression.
 5              MR. CASTELLANO:  Right.  Smalls is a 2010
 6    case, so it's not very recent, but it's not at all
 7    old.  And what it says is -- well, let's focus on the
 8    statements at issue here for starters.
 9              Okay.  So this is page 11 of our response.
10    And it states that Troup, "Defendant Troup confessed
11    to being" -- when I say confessed, it's not to law
12    enforcement, it's to another inmate -- "Troup
13    confessed to being a part of two murders in which two
14    people were strangled to death at the Southern New
15    Mexico Correctional Facility at Las Cruces, New
16    Mexico.  Troup stated that during one of the murders
17    he held FS's legs while the defendant" -- that's
18    Mr. Alonso -- "strangled him to death with a
19    drawstring from a laundry bag."
20              The next is, "Troup bragged about being a
21    part of the murder of FS as well, and told the
22    confidential informant that defendant, also from
23    Roswell, was ordered to kill FS."
24              The other statement was, "In 2007, Edward
25    Troup admitted to the CHS that he and defendant had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    killed FS."

2           So you can see why it's of concern to

3    Mr. Alonso.  Because when you make statements to

4    someone in prison like this, it's nontestimonial,

5    meaning you don't expect this statement to show up in

6    court some day, like you would a confession to law

7    enforcement.

8           THE COURT:  Help me out a little bit with

9    the people he's talking to.  These are not people

10   that are mic'd up, wired, being paid, anything like

11   that?

12          MR. CASTELLANO:  That's correct.  At the

13   time, they were not cooperating with anybody.  It was

14   talk amongst gang members.  So at that time they had

15   no incentives, they were not being paid, nothing of

16   the sort.  So, once again, there was no expectation

17   that these admissions would come in to court someday.

18   So, once they're nontestimonial, they're outside of

19   Crawford.  So we're not talking about Crawford.

20   We're not even talking about Bruton.

21          Now, we argue --

22          THE COURT:  That's the leap I'm struggling

23   with.  Tell me why we're not talking about Bruton.

24          MR. CASTELLANO:  Because Bruton refers to

25   "the right to the confrontation where accomplice's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    confession was made to an government agent, and

2    introduced at a joint trial."  So that is a

3    testimonial.

4              THE COURT:  That's certainly the factual

5    situation of Bruton, but can you limit the language

6    of Bruton to that?

7              MR. CASTELLANO:  Not to our facts.  Because

8    this is a statement against interests that falls

9    under Rule 804.  It's an exception to hearsay.

10   Statements against interests are inherently reliable

11   traditionally because those are statements you don't

12   make unless they're believed to be true.  Well, they

13   fall outside of hearsay.  They fall outside of

14   Bruton, because once again, we're not talking about

15   testimonial statements here.  We're talking about

16   nontestimonial.

17             THE COURT:  Maybe I'm losing something.

18   But do we even get into it being a statement against

19   interests if it's a statement of the defendant?

20             MR. CASTELLANO:  Well, Smalls --

21             THE COURT:  So the hearsay statement is

22   easily satisfied if you have the witness who heard it

23   of the defendant on the stand, right?

24             MR. CASTELLANO:  Right.  The witness who --

25             THE COURT:  But that doesn't get us -- that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    doesn't solve the Bruton problem, right?

2              MR. CASTELLANO:  I don't think we're in

3    Bruton, Your Honor.  Because those are testimonial

4    statements, traditionally testimonial statements,

5    because they're given to law enforcement.  And once

6    we give statements to law enforcement, we expect them

7    to show up in court against you.  So it's testimonial

8    in that way.

9              Under these circumstances, Smalls tells us

10   that if I murder somebody with Ms. Armijo, and I tell

11   Mr. Beck about it, the statement comes in against

12   both myself and Ms. Armijo.  That's what Smalls tells

13   us.  That is the law of the circuit as it stands now.

14             And as I stated earlier, in his response,

15   Mr. Chambers --

16             THE COURT:  Well, you may be right.  I'm

17   struggling with squaring that with Bruton, though.

18   But you may be right as far as Smalls.

19             MR. CASTELLANO:  In his reply, he says he

20   understands that Smalls operates as binding precedent

21   upon the Court.  So what he's asking the Court is to

22   operate around Smalls and around Tenth Circuit

23   precedent.  We're merely asking the Court to follow

24   that precedent.

25             And in the Smalls case, what happened was,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    it was a jail setting.  One -- Cook and Smalls and

 2    another one --

 3              THE COURT:  I tell you what, I want to hear

 4    this, but I've got to give Ms. Bean a break.

 5              MR. CASTELLANO:  Sure, Your Honor.

 6              THE COURT:  Why don't we take our morning

 7    break, 15 minutes.  Then we'll come back in.  I want

 8    to be educated on this.

 9              (The Court stood in recess from 10:34 to

10    11:05.)

11              THE COURT:  All right.  Mr. Castellano.

12              Let me -- come on up, but let me make some

13    comments about this distinction -- Mr. Beck has been

14    raising about the timing.  I did have a chance to

15    review -- it was the Johnson case, right, Johnson,

16    which is the unpublished opinion that I think you

17    brought to my attention.  I had a chance to consider

18    it during the lunch hour.  That's an unpublished

19    opinion by the Tenth Circuit.  It is an appeal which

20    is trying to avoid the waiver, the appeal waiver.

21    And they're saying that they didn't get Giglio

22    material.  All I think that stands for is that you

23    don't have to have everything before you plea.  I

24    think that was a 2010 case.

25              I think the Supreme Court has now come out
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   with a subsequent case since then, that says the same
 2   thing as far as Brady.  But that's pleas.  We're
 3   getting ready for trial.  So I think that's a
 4   different situation, so it's not persuasive to me.
 5            I forget the judge, but he was a very good
 6   district judge that the Tenth Circuit selected to try
 7   the McVeigh case, when they recused all the judges in
 8   Oklahoma.  And he has an opinion in the McVeigh case
 9   that says the timing for Giglio and Brady should be
10   the same.  I think his reasoning is persuasive.  You
11   can certainly find district court cases that delay or
12   circuits that have affirmed the delay of Giglio and
13   Brady material.  And, you know, depending upon --
14   probably a case this large, we're going to have some
15   stuff pop up later on, so I'll have to deal with that
16   one issue at a time.
17            So I don't think it maybe raises
18   constitutional dimensions, but do I think from a case
19   management standpoint, we're now within 60 days of
20   trial, I feel pretty comfortable putting the Brady
21   and the Giglio disclosures on the same track.
22            MR. BECK:  I will say, Your Honor, that I
23   have found in the last while a plethora of those
24   district court decisions that disagree, just like
25   you're saying.  I think the Tenth Circuit's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    decision -- I was just looking over it -- in Ohiri
 2    supports that as well.
 3              THE COURT:  What is it?
 4              MR. BECK:  I will say this Court has
 5    said -- and it followed Your Honor's citations to
 6    Johnson, and sort of the legal regarding section.  I
 7    will say that this Court has said a number of times:
 8    There is no obligation to produce Giglio information
 9    before a suppression hearing.  And I would remind the
10    Court that there are still upcoming deadlines for
11    motions to suppress in all of these trials.  So we
12    haven't reached the deadlines to file motions to
13    suppress, let alone to have hearings on motions to
14    suppress.And so where Your Honor has said that there
15    is no obligation to produce Giglio, impeachment
16    information, as opposed to Brady, exculpatory
17    information, before a hearing on a motion to
18    suppress, I think that supports delaying the Giglio
19    production at this point.
20              THE COURT:  I'd be glad to look at these
21    opinions one at a time.  But I will bet you that they
22    are circumstances in which I'm not doing what I'm
23    doing here.  They are, instead, situations where
24    people are trying to do discovery for the suppression
25    hearing.  And I'm making some issue there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           Here, I am making rulings getting ready for

2     trial.  If we were just sitting here, and I had Mr.

3     Benjamin wanting evidence for a suppression hearing,

4     I might be saying, you know, No, you don't get that

5     just for a suppression hearing.  But here, we're

6     getting ready for trial.  So I think I've got to -- I

7     think I've got to -- I think what I'm doing is

8     consistent with what I've said in the past.

9           But if you want to present me with some

10    cases and say this is not what I've done in the past,

11    I'll be glad to look at them.  So far, I've not been

12    able to see an inconsistency in what I'm doing today

13    and what I've done in the past.  But I certainly

14    don't mind being educated on it.

15          All right.  Mr. Castellano, if you want to

16    educate me on the Smalls case.  Looking at it during

17    the break, boy, I'm having trouble squaring that with

18    Bruton.

19          MR. CASTELLANO:  And I think I may be able

20    to explain that from Smalls here in a moment.  I'll

21    tell you first about Smalls.  So Smalls involved

22    three defendants:  Cook, Smalls, and Melgar-Diaz in

23    the Dona Ana County Detention Center.  There was

24    gentleman named Gantz, who became known to them as a

25    cooperator with the Government.  The three, Cook,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Smalls, and Melgar-Diaz murdered Gantz in the jail.
2   Subsequent to that, before it was discovered, Cook
3   made admissions to an informant -- a person not known
4   to him as an informant, and I'm not sure was even
5   cooperating with the Government at the time -- until
6   the admissions were taken.  So Cook made admissions
7   to the informant.  The informant then informed law
8   enforcement of the situation.  They eventually went
9   back with a recorder and the informant took
10  additional statements from Mr. Cook.
11          And in Smalls, what happened was the
12  statements all became admissible against Cook,
13  Smalls, and Melgar-Diaz, when Cook told the informant
14  that he had murdered Gantz with the other two
15  gentlemen.  And which is a similar situation here.
16          So regarding what you were asking about,
17  part of what's in the Smalls case says the text of
18  the confrontation clause reflects its focus on the
19  testimonial hearsay.  It applies to witnesses against
20  the accused.  In other words, those who bear
21  testimony," citing to Webster's American Dictionary.
22  "Testimony, in turn, is typically a solemn
23  declaration or affirmation made for the purpose of
24  establishing or proving some fact.  An accuser who
25  makes a formal statement to government officers bears

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    testimony in a sense that a person who makes a casual

2    remark to an acquaintance does not."

3            The other thing I want to point out to the

4    Court is there is some question about our briefing in

5    our discussion of Davis v. Washington.  So I found it

6    from the opinion itself.  And in there it says,

7    "Because Cook's statement is nontestimonial,

8    regardless of which the foregoing definitions we

9    apply, in Davis, the court expressed the view that

10   statements made unwittingly to a government informant

11   or statements from one prisoner to another are

12   clearly nontestimonial," citing to Davis, which is

13   what we cited in our brief.  So we didn't say Davis

14   said that.  The Smalls-Cook said that Davis said

15   that.  So that's going back a ways.

16           THE COURT:  That is Smalls that you're

17   putting up here?

18           MR. CASTELLANO:  Yes, that's Smalls.  And

19   because I just pulled it off the internet, I don't

20   have page cites, unfortunately, Your Honor.  But that

21   is the Smalls case, and that is what's reflected in

22   our brief.  So once again, we didn't say that.  The

23   Smalls court said that.

24           THE COURT:  Who wrote Smalls, and who was

25   the panel on Smalls?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  Let me see if I can find
 2   it.
 3              So while I'm finding that, the difference
 4   here is that Bruton involved testimonial statements,
 5   and therefore, the confrontation clause.  Smalls
 6   involves nontestimonial statements that fall outside
 7   of the confrontation clause.  And because it's a
 8   statement against interests, it also falls outside of
 9   hearsay.  So that's one of the distinctions.
10              The panel in that case, Your Honor, were
11   Judges Kelly, Baldock, and Holmes.
12              THE COURT:  And who wrote it?
13              MR. CASTELLANO:  Let's see.
14              MR. CHAMBERS:  Baldock.
15              THE COURT:  All right.
16              MR. CASTELLANO:  So we're in the same
17   situation.  It's a virtually identical situation to
18   the Smalls case.  Here, it's a jailhouse or prison
19   setting, with admissions made from one prisoner to
20   another prisoner, who we expect to testify in court.
21              THE COURT:  And again -- I know I'm
22   repeating myself -- this is not a person that was
23   paid at the time, or anything like that?  Somebody
24   came forward and said:  "Here's some evidence"?
25              MR. CASTELLANO:  That's correct.  Only once
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   this case was initiated did the statements come

2   forward.  So at that time there was -- there is no

3   motivation, and the statement was certainly given in

4   a context where it was not expected to be seen in

5   court at any time.So unless there is something else

6   following Smalls, the circuit says that these

7   statements will come in, not only against Mr. Troup,

8   but Mr. Alonso.

9           THE COURT:  Okay.  Anything else you want

10  to say on the motion?  We kind of really bore down on

11  the Bruton issue.  But anything else you want to say?

12          MR. CASTELLANO:  Your Honor, I think, as

13  Mr. Chambers conceded, I think you've ruled on the

14  severance motion.  So the only thing really

15  outstanding was the statements.

16          THE COURT:  All right.  Thank you, Mr.

17  Castellano.

18          Let me before you start -- stay right

19  there.  Anybody else want to speak on this issue

20  before I let Mr. Chambers have the last word?

21          All right.  Mr. Chambers.

22          MR. CHAMBERS:  First of all, Your Honor, it

23  was Judge Matsch, who I'm sure would be gratified to

24  hear of your high regard for him.  He was the trial

25  Judge on McVeigh.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  That's right, he was, yes.
 2              I don't think they selected him out of a
 3      hat, do you?
 4              MR. CHAMBERS:  I don't think so.  I think
 5      the fix was in.
 6              Your Honor observed after the break that
 7      you were having a difficult time squaring Smalls with
 8      Bruton.  And you're not alone, as evidenced by Judge
 9      Kelly's vigorous dissent in Smalls.  I will try not
10      to just get up here and read the briefs back to you.
11              THE COURT:  But, in fairness, Judge Kelly
12      has had one of the broadest views of Crawford since
13      it came down, right?  He issued an opinion fairly
14      quickly after Crawford, and the Tenth Circuit hasn't
15      been able to hold up that robust view of Crawford.
16      It's been cut back some, hasn't it?
17              MR. CHAMBERS:  Well, in terms of Judge
18      Kelly's view of Crawford, and whether it's expansive,
19      although I generally don't believe that being
20      informed is a prerequisite to me expressing an
21      opinion, I don't have enough -- I don't know what
22      Judge Kelly's view is on Crawford.  So I don't have
23      an opinion on that.
24              The Government first argues -- just
25      categorically they state, as if it's a matter of
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                             1-800-669-9492
                                                        e-mail: info@litsupport.com



1    settled law, that Bruton does not apply to

2    nontestimonial statements.  And that is a matter that

3    remains a matter of dispute, Your Honor.  The Supreme

4    Court has certainly never ruled that.  Those who

5    would use Crawford to gut Bruton seize upon this

6    language in Whorton versus Bockting, which I've cited

7    to the Court.  And there was some language by the

8    Court in Whorton versus Bockting that suggests that

9    Bruton doesn't apply to nontestimonial hearsay.  But

10   that is -- was not a ruling.  The issue in Whorton

11   versus Bockting was a very narrow issue.  It had to

12   deal with whether Crawford had retroactive

13   application under the rules of Teague versus Lane.

14   And so that's only issue in Whorton versus Bockting.

15        But people have taken this language in

16   Whorton versus Bokting and taken it completely out of

17   its context and started stating as a matter of

18   established law that Bruton doesn't apply to

19   nontestimonial hearsay.  And the Supreme Court has

20   never said that.  They never said it in Bruton.

21   They've never overruled Bruton.  So it's a stretch.

22        Furthermore, Your Honor, the Government

23   argues today the statements against interests are

24   inherently reliable.  Well, the Supreme Court

25   disagrees with them.  On that, they have ruled.  In

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492
                                                                   e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Crawford, the Court said, and I quote, "The text of

2    the Sixth Amendment" --

3              THE COURT:  This is Scalia's opinion in

4    Crawford, right?

5              MR. CHAMBERS:  Correct.  "The text of the

6    Sixth Amendment does not suggest any open-ended

7    exceptions from the confrontation requirement to be

8    developed by the courts.  Rather, the right to be

9    confronted with a witness against him is most

10   naturally read as a reference to the right of

11   confrontation at common law, admitting only those

12   exceptions established at the time of the founding."

13   That's Crawford page 54.

14             The Court went on to say, "Accomplice

15   confessions that inculpate a criminal defendant is

16   not within a firmly rooted exception to the hearsay

17   rule," citing Lilly versus Virginia.  So if a

18   statement against penal interests is not within a

19   firmly routed exception to a hearsay rule, it

20   necessarily could not have been an exception that

21   existed at the time of the founding.

22             I'd also -- you know, when you're thinking

23   about whether a statement against penal interests is

24   inherently reliable, it might be as to the person who

25   is inculpating himself.  But there is certainly no

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    reliability as -- when he inculpates other people.

2           And the United States Supreme Court has

3    made that recognition as well in a case that I cited

4    in my reply, the Williamson case, where the Court

5    said, and I quote, "In our view, the most faithful

6    reading of 804(b)(3)" -- statements against penal

7    interests -- "is that it does not allow admission of

8    non-self-inculpatory statements, even if they are

9    made within the broader narrative that is generally

10   self-inculpatory.  The district court may not just

11   assume for purposes of 804(b)(3) that a statement is

12   self-inculpatory because it is part of a fuller

13   confession.  And this is especially true when the

14   statement implicates someone else," end quote.

15          And, Your Honor, you know, this is a real

16   cool issue.  It's fascinating.  But the fact of the

17   matter is, no matter what you do with Crawford, no

18   matter what you do with Bruton, no matter what you do

19   with Smalls, no matter how you slice that

20   constitutional pie, it doesn't change one fact.  Rule

21   14 still exists.  Smalls, Crawford did not touch Rule

22   14.  And Rule 14 gives you the discretion to --

23   here's what Rule 14 says:  "If the joinder of

24   offenses or defendants in an indictment, an

25   information, or a consolidation for trial appears to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   prejudice a defendant or the Government, the court
2   may order separate trials of the counts, sever the
3   defendants' trials, or provide any other relief that
4   justice requires."
5          You have discretion.  That discretion is
6   untouched by Smalls, by Crawford, by anything else.
7   You have the discretion to make this fair.  And in
8   making that -- in exercising your discretion, your
9   discretion should be informed by things such as Rule
10  403.  And the unfair prejudice that comes to people
11  like Mr. Alonso, if the Government gets its wish to
12  put in Troup's statements, just without any
13  limitation.So, if you have questions, I'll fake an
14  answer.
15         THE COURT:  I don't believe I do.  Thank
16  you, Mr. Chambers.
17         MR. CHAMBERS:  Thank you.
18         THE COURT:  Well, I'm not going to grant
19  the motion to sever at this time.  Obviously, I'm
20  going to have to continue to monitor this case and
21  the evidence that's coming in.  And I'm going to have
22  to probably start making some rulings.  So maybe I'll
23  use this motion to drill down a little bit more on
24  the Smalls and Bruton and Crawford issues to give
25  some guidance in this case.  I am inclined to think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    that, given the law that we have here in the Tenth

2    Circuit, that we don't -- this is not a -- this is

3    not a sound basis for declining, or for granting the

4    motion to sever.

5          It does concern me a little bit, letting in

6    some statements that, even though the Tenth Circuit

7    may be allowing at the present time, letting them

8    come in, and down the road they -- the landscape may

9    change on us, and decisions that I make now, based

10    upon Tenth Circuit law, may change because of the

11    Supreme Court's changing character.  But we all have

12    to deal with that.

13          And so I still think the decision to keep

14    Count 3 in the case, and keep Alonso and Troup,

15    remains sound.  But I'm still going to continue to

16    take hard looks at this to make sure that everybody

17    gets a fair trial.

18          Mr. Castellano.

19          MR. CASTELLANO:  Your Honor, as you're

20    considering this issue, I'd also point the Court to

21    the 2014 Smalls decision.  It's the decision that

22    came out post-trial, post-conviction.  Related to a

23    discussion of prior consistent statements it says

24    that "Smalls also argues that for a prior consistent

25    statement to be admissible under the confrontation

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   clause, it must meet pre-Crawford standards of
 2   reliability.  But the confrontation clause has no
 3   application to nontestimonial statements, and,
 4   therefore, permits their admission, even if they lack
 5   indicia of liability," citing to Whorton v. Bockting,
 6   B-O-C-K-T-I-N-G, U.S. Supreme Court 2007.  And also
 7   the Smalls case.
 8             The only question --
 9             THE COURT:  I don't think there is any
10   disagreement on that, right?  I mean, the
11   confrontation clause has no application to
12   nontestimonial statements.  I'm not trying to butt up
13   against that.  But I am trying to -- I mean, as
14   Mr. Chambers put it, we are talking about Troup's
15   statements, right?
16             MR. CHAMBERS:  Yeah.
17             THE COURT:  So that's the problem that I'm
18   having is Troup's statements.
19             MR. CASTELLANO:  That's correct, Your
20   Honor.  We intend to admit Troup's statements against
21   both him and Mr. Alonso.  There is no doubt that
22   that's what we want to do.
23             THE COURT:  Well, I'll have to give that
24   some hard look.  I mean, it may just be that Smalls
25   is as broad as what you're relying on, but it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    concerns me some.
 2              MR. CHAMBERS:  Your Honor, I would just
 3    add, if I could --
 4              THE COURT:  You may.
 5              Thank you, Mr. Castellano.
 6              MR. CHAMBERS:  Yeah, the law is what it is.
 7    Crawford says what it says that -- about whether the
 8    confrontation clause applies to nontestimonial
 9    hearsay.  But that doesn't answer the question.
10              And as I pointed out in my --
11              THE COURT:  It doesn't answer your
12    severance question?
13              MR. CHAMBERS:  It also doesn't answer the
14    question about the limits of that, about the borders
15    of the confrontation clause.  Because the Crawford
16    court specifically declined to define what was
17    testimonial and what was nontestimonial.
18              And furthermore --
19              THE COURT:  Sure.  I think Scalia
20    explicitly --
21              MR. CHAMBERS:  Explicitly.
22              THE COURT:  -- gave that to the lower
23    courts to develop.
24              MR. CHAMBERS:  And in cases since Crawford,
25    such as Davis versus Washington, and Hammond, which
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   were companion cases, the court has provided scant --
 2   they haven't helped much in defining what is
 3   testimonial and what is nontestimonial.
 4            THE COURT:  Well, it certainly seems to me
 5   that this would fall safely into the nontestimonial,
 6   wouldn't it?
 7            MR. CHAMBERS:  No, I don't think so, Your
 8   Honor.
 9            THE COURT:  I mean, this one doesn't seem
10   to me on the edges, as much as some other scenarios
11   I've seen.
12            MR. CHAMBERS:  I believe it's testimonial.
13   And my position is derived from a reading of both
14   Davis versus Washington, and Hammond versus -- was it
15   Indiana?  I can't remember.  But Davis and Hammond.
16   And the distinction that the court drew in Davis and
17   Hammond was a statement is nontestimonial if it is
18   made in the context of an ongoing emergency.  It is
19   testimonial if it is describing past events.
20            THE COURT:  That's more where you come up
21   on the scene, and you're sorting out -- the police
22   are there, but you can still have some nontestimonial
23   statements with police around.  You can't draw a
24   bright line and say, just because the cops are there,
25   it's testimonial.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1              MR. CHAMBERS:  That's right.  And that's

 2    Davis.

 3              THE COURT:  But if you're in a prison cell,

 4    and you've got a guy talking to another prisoner,

 5    seems to me that's pretty classic nontestimonial.

 6              MR. CHAMBERS:  I disagree, respectfully.

 7    And I wrote why in -- I don't know my reply number.

 8              THE COURT:  Give it to me again.

 9              MR. CHAMBERS:  1038, maybe 1036.

10              THE COURT:  Summarize it again for me.

11              MR. CHAMBERS:  Okay.  In Davis versus

12    Washington, and in Hammond -- they're both domestic

13    violence cases -- and in Davis versus Hammond (sic),

14    cops talked to the victim of a domestic violence

15    incident.  In Davis, the hearsay statements were made

16    by a domestic dispute victim to a 9/11 operator in

17    the context of an "ongoing emergency," that's

18    according to Davis.  The Court found that statements

19    in Davis were made during an ongoing emergency in

20    which the declarant was speaking about events as they

21    were actually happening, rather than describing past

22    events.  Davis page, 827.  Accordingly, the Davis

23    Court held that the statements were nontestimonial.

24              In Hammond, the statements were also made

25    by the victim of a domestic dispute.  But unlike

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Davis, not in the context of an ongoing emergency,

2    but rather, as an investigation into, quote, "what

3    happened."  In Hammond, although the statements at

4    issue were made within minutes of the crime, the

5    court found that there was no ongoing emergency, and

6    the declarant was describing what happened instead of

7    what was happening.  Hence, the statements were

8    testimonial.

9              Well, here, the statements that are at

10   issue here are not describing a current -- events as

11   they are happening.  They are describing what

12   happened.  And, therefore, under the Davis-Hammond --

13   I don't even want to call it a definition, but --

14             THE COURT:  I think those are unique.  I'm

15   probably not going to buy that distinction.  Because,

16   otherwise, anytime you have somebody giving

17   historical facts, you're saying that that's

18   testimonial.  And that seems to me -- I think you've

19   got to still have the presence of the cops.  That's

20   what's making Hammond and Davis so important is that

21   you've got law enforcement, and it's almost -- it's

22   almost the excited utterance exception to the

23   Crawford Rule, that if you're in the middle of the

24   fray, and people are saying what they're saying,

25   they're not going to toss that evidence out.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              But if you've got -- I mean, take it out of
 2      the jail, take it out of our case.
 3              MR. CHAMBERS:  Okay.
 4              THE COURT:  You've got somebody that, you
 5      know, is just talking on the phone to somebody else,
 6      and say, "I killed that person," and they're talking
 7      to their cousin, and they said they killed somebody.
 8      And, you know, how would that not be nontestimonial?
 9              MR. CHAMBERS:  Well, the Davis court
10      actually specifically cites cases, Your Honor.  And
11      I'm looking for them in my brief.  One of them is an
12      ancient case.  You'll probably have to dust off, wipe
13      the dust off this book if you want to read the
14      opinion.  It's found at 1 Leach 199, a case, King
15      versus Brasier, 1799.  But Davis cites it.  The
16      United States Supreme Court relied on it.  I'll leave
17      for another day my opinion about whether the United
18      States Supreme Court should be relying on
19      international authority.  But they did here.  And
20      there, it was not a statement to a cop.  It was not.
21      And that was in 1799.
22              And in 2015, they reached the same
23      conclusion in Ohio versus Clark, where they
24      specifically said, "at least some statements to
25      individuals who are not law enforcement, but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    conceivably raise confrontation concerns, we decline

2    to adopt a categorical rule excluding them from Sixth

3    Amendment's reach."

4           THE COURT:  Well, I think that's true.  I

5    mean, that's what I keep asking Mr. Castellano.  Who

6    is this cooperator?  Tell me about him.  I mean, you

7    know, is this a person that, you know, that is being

8    paid by law enforcement?  Yeah.  Or something like

9    that.  So I agree with that statement.  You can't

10   just say, Well, it was another prisoner.  Wait, tell

11   me about that prisoner.

12          So I agree, but I think to just make it a

13   functional test:  Was it past history or was it

14   current events is sweeping too broadly.  I think

15   you'd gut the testimony on nontestimonial

16   distinctions that have been developed since Crawford.

17   So I'm probably not going to go that direction.

18          MR. CHAMBERS:  Which is why I didn't say

19   that Davis and Hammond defined testimonial, because I

20   don't think it does define it.  I think it provides

21   some guidance, though.  That's about the best I can

22   do.

23          THE COURT:  All right.  I'll take a hard

24   look at it.  Thank you, Mr. Chambers.

25          All right.  So I'm going to deny that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    motion, but I may use it as a vehicle to start
 2    sketching out how we're going to handle some of these
 3    statements that are going to be used against multiple
 4    defendants.
 5            Hold on, we skipped Mr. Benjamin, so I'm
 6    going to have to work here to get my stuff back in
 7    order one second.
 8            All right.  Mr. Benjamin, do you want to
 9    talk about the Grand Jury transcripts?
10            MR. BENJAMIN:  Yes, Your Honor.  Thank you.
11            THE COURT:  Mr. Benjamin.
12            MR. BENJAMIN:  I apologize, Your Honor.  I
13    stepped out earlier thinking I had 30 seconds.  And
14    Mr. Chambers was much shorter than I believed he
15    would have been.
16            THE COURT:  That's fine.
17            MR. BENJAMIN:  Your Honor, before I begin,
18    I need to make sure that, I guess, the motion is
19    clear.  It should be construed as only requesting
20    transcripts for Counts 4 and 5, which are the counts
21    that relate to a 2012 alleged murder of Adrian Burns,
22    by Joe Gallegos and his brother, Andrew Gallegos.  So
23    it's not a request for any and all transcripts.  It's
24    a request for transcripts relating specifically to
25    Counts 4 and 5.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          And I think the reason that those

2     transcripts are important is because, as cited in the

3     motion, Douglas Oil directed that there are three

4     factors looked at when considering release of Grand

5     Jury transcripts.  The first one is avoiding a

6     possible injustice.Your Honor, this is a state murder

7     trial -- this was a state murder allegation.  In its

8     elements it does not meet anything resembling a VICAR

9     murder, unless there is something to bring it under

10    the umbrella of the federal district court.  And so I

11    think that's an extremely prejudicial jurisdictional

12    requirement.  Because in doing so, bringing it into a

13    VICAR charge, as the Court's well aware, the

14    evidence, the arguments, and everything that will be

15    used to charge the individual and prosecute that

16    individual for that murder become vastly more broad

17    than they would have otherwise.

18          THE COURT:  The evidence coming in?

19          MR. BENJAMIN:  Yes, Your Honor, excessively

20    so.

21          And so the second argument is that

22    disclosure need outweighs the greater need for

23    secrecy.  Grand Jury transcripts are usually secret.

24    And does Mr. Gallegos' need for the information that

25    he's being prosecuted for outweigh that?  I would

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   argue, yes.

 2           And lastly, and this is why I made that

 3   requirement that, I guess, was inaccurately made in

 4   the motion, Your Honor.  It's tailored, it's a

 5   tailored request, specifically for the testimony

 6   relating to Counts 4 and 5.

 7           Now, I think the majority of what I have is

 8   based upon some documents that were produced in

 9   discovery, that when they were produced and when I

10   understood that they were valid, negated this

11   argument.  But now that there has been a retraction

12   of those documents -- and the first document was a

13   document Bates stamped 1580, that was produced June

14   17, 2016; it was dated December 9, 2015.  That

15   document was again disclosed under a different Bates

16   stamp.  It's the identical document, but it's Bates

17   stamped 4472, disclosed July 1, 2016, and dated June

18   6, 2016, essentially seven months later.  But it's

19   the identical statement, Your Honor, that I cite in

20   the motion and attached as an exhibit.

21           It says that Roy Martinez talked about Joe

22   Gallegos killing Adrian Burns on a wire, which would

23   bring it, arguably, under the umbrella of federal

24   jurisdiction for a VICAR prosecution.  This was done

25   for that reason, was the allegation.  However, that
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                        Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492
                                                                                        1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                              e-mail: info@litsupport.com

1    was retracted in a document Bates stamped 21822, on

2    March 9, 2017.  And that document was dated,

3    though -- and I think this is important --

4    essentially, almost three weeks earlier, on February

5    14, 2017.

6              THE COURT:  Now, how are you using the word

7    "retracted"?

8              MR. BENJAMIN:  That document that was

9    produced states that this was a misunderstanding,

10   miscommunication or "mis" something in the notes

11   taken by Special Agent Acee, when he was interviewing

12   the cooperator that had told him that.

13             Essentially --

14             THE COURT:  So you've got a 302, and it

15   says one thing, and then you get another 302, or an

16   amended 302 saying, no, that's not what was said?

17             MR. BENJAMIN:  Yes, Your Honor.  But the

18   reason I gave the specific dates and Bates numbers is

19   because there is a document that's produced, the same

20   document is again produced seven months later.  And

21   then approximately eight months after that, but

22   produced on the same day of the second superseding

23   indictment, is the document that says:  What you have

24   in your possession is inaccurate, is not correct for

25   one reason or another.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Is it getting better for you or
 2    worse?
 3              MR. BENJAMIN:  Much better, Your Honor.
 4    Because that takes away any claim of what I
 5    understood any basis for a state murder being
 6    prosecuted in this courthouse is.
 7              And so that brings us to where we are, Your
 8    Honor.  There is nothing that has been produced that
 9    would support the idea that this murder was committed
10    in furtherance of a VICAR or to support a VICAR
11    prosecution.
12              Now, Document 933, which is the response by
13    the United States Government to Andrew Gallegos'
14    motion to sever includes three very conclusory
15    statements.  And those statements are found first on
16    page 2; that the murder was conducted because Joe
17    Gallegos was being disrespected in the community by
18    Adrian Burns.  And that's page 2 of Document 933,
19    Your Honor.
20              The next statement is page 15 of document
21    933; that sufficient evidence exists to prove the
22    conspiracy to murder Adrian Burns.
23              And the third statement that's put in there
24    is that on page 19, Gallegos -- Joe Gallegos,
25    specifically -- did -- conducted the murder to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    advance his pecuniary interest in the SNM Gang.

2            All of those, but most specifically the

3    sufficient evidence exists to prove the conspiracy

4    boggles me, because there is no evidence that I am

5    aware of to show that there is any evidence to

6    support the claim of federal jurisdiction, now that

7    the wire statement or the wire conversation, whatever

8    you may call it, was retracted.

9            And so this becomes, I think, very

10   troubling, because -- and while the determination of

11   no probable cause by a State of New Mexico

12   magistrate, in December of 2012, about this murder

13   doesn't bind this Court or anything, it's

14   illustrative of the type of evidence that exists to

15   prove that this murder, A, occurred; and, B, more

16   importantly, because of where we are, occurred, and

17   is subject to prosecution in federal court.

18           The Court stated something earlier when it

19   was talking to Ms. Johnson regarding the bill of

20   particulars that she had alleged there.  And I think

21   it's fair to say that for Counts 13 through 16, I do

22   have a good feel of what the evidence is, and what

23   the evidence -- how the Government will do that.  But

24   I can tell this Court that I do not have any feel of

25   what the evidence is or how the Government's theory

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    regarding Counts 4 and 5 makes this subject to

2    federal prosecution.

3            And so, Your Honor, I would argue that the

4    presentation to the Grand Jury meets Mr. Gallegos'

5    need to review what was presented to the Grand Jury,

6    avoids a possible injustice, is much greater a need

7    for disclosure than the secrecy, and it is very

8    tailored.  It's tailored regarding Counts 4 and 5.

9            And even if Special Agent Acee didn't

10   testify about the statement on the wire and that

11   retraction of that statement, which, as I said, the

12   retraction was -- the 302 for that retraction was

13   done three weeks prior to the second superseding

14   indictment being received -- even assuming those

15   arguments are facts, there is nothing that takes this

16   into the realm of federal jurisdiction that I am

17   aware of that has been produced in the discovery

18   regarding Counts 4 and 5, or, even more broadly, Your

19   Honor, that has been produced.

20           And so we're asking that the Court order

21   the Government to produce the transcripts for Counts

22   4 and 5, Your Honor, from the -- and I would assume

23   it's the original superseding indictment.  And if

24   there are different ones for the second superseding

25   indictment, Your Honor.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Now, you did not file a reply
 2    to the Government's response, right?
 3              MR. BENJAMIN:  Correct, Your Honor.
 4              THE COURT:  And your motion was broader,
 5    right?  It still wanted the Grand Jury indictments,
 6    and all the -- the Grand Jury transcripts on all the
 7    counts against Mr. Gallegos?
 8              MR. BENJAMIN:  The motion doesn't limit it.
 9    My intent from the beginning -- I apologize to the
10    Court and to the Government -- my intent was to limit
11    it to Counts 4 and 5.
12              THE COURT:  All right.  Thank you, Mr.
13    Benjamin.
14              Ms. Armijo.
15              MS. ARMIJO:  Your Honor, I think that, in
16    looking at his motion, it was our belief that he was
17    indicating that the basis for his relief was that he
18    believed there was false -- erroneous, false, or
19    missing information, specifically referring to Counts
20    4 and 5.  And the information about -- the
21    misinformation about, quote, "the wire."  And in
22    talking to him before -- I think it was during the
23    break, or before this was being heard -- he thought
24    that Special Agent Acee testified at the Grand Jury.
25    Special Agent Acee did not testify as to this --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   these counts in the Grand Jury.  And that information
 2   about the wire was not presented to the Grand Jury at
 3   any point in time.  The Grand Jury made their
 4   determination based upon facts that were presented to
 5   them entirely about the whole investigation.
 6            So our position is that this is Jencks.
 7   And if he is having a concern that we are not able to
 8   meet our elements -- he did file a bill of
 9   particulars last night.  Maybe that's more
10   appropriate for that motion.  But it's certainly
11   not -- the correct avenue for him to seek this
12   information is not for the release of Grand Jury
13   transcripts.  So we are opposed based on that.
14            Maybe, again, this could be more
15   appropriate for the bill of particulars, but
16   certainly not at this point.  Or a motion for a
17   directed verdict.  I think it would be his benefit if
18   he feels this is just a state case, obviously.  But
19   he doesn't deserve the Grand Jury transcripts just
20   because he feels that our case is weak, as far as
21   this being a VICAR count.
22            THE COURT:  Let me make sure I understand.
23   So you did not have any live viva voce evidence on
24   these two counts?
25            MS. ARMIJO:  What do you mean?  As far
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    as --
 2               THE COURT:  You didn't have a witness?
 3               MS. ARMIJO:  Who testified before the Grand
 4    Jury?
 5               THE COURT:  Right, on these two counts.
 6               MS. ARMIJO:  We did.  It was Mark Myers.
 7    We did not have a cooperator testify, no.
 8               THE COURT:  Okay.  So all you've got on --
 9    as far as live testimony at the Grand Jury was Myers?
10               MS. ARMIJO:  Yes.
11               THE COURT:  On these two counts?
12               MS. ARMIJO:  Yes, as far as the first one.
13    And I don't believe in the second superseding
14    indictment we talked about this at all, or in the --
15    yes, this was discussed in the first superseding
16    indictment.  And nothing about the wire or anything
17    else was --
18               THE COURT:  Is Myers going to testify in
19    this case on these two counts?
20               MS. ARMIJO:  Probably not.  I say that
21    because unless -- I am thinking off the top of my
22    head, I'm saying probably not as to these two counts,
23    because this case was initially investigated by the
24    state, so there would be a lot of state witnesses.
25    And then the federal interests came in.  But I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    think that -- off the top of my head, I don't see him
 2    as that, unless there was a witness that he
 3    interviewed; then he would have to come in and talk
 4    about, but --
 5              THE COURT:  But he's going to testify?
 6              MS. ARMIJO:  He's going to testify.  But
 7    we're talking about these two counts in particular.
 8              THE COURT:  And you're going to produce
 9    these transcripts 14 days before trial as part of
10    your Jencks production?
11              MS. ARMIJO:  Yes, Your Honor.  We have said
12    that we would produce Jencks 14 days before trial.
13              THE COURT:  And that's probably going to
14    sweep in a lot of the Grand Jury transcripts, right?
15              MS. ARMIJO:  Yes.  And that's why we're
16    doing it 14 days, as opposed to just three days or
17    one day, or before the witness takes the stand.
18              THE COURT:  And, usually, there is not a
19    lot of Giglio and Brady material in Grand Jury
20    transcripts.  But has anybody looked at Myers'
21    testimony for that purpose?
22              MS. ARMIJO:  For the purpose of if he
23    mentioned the wire or anything?  I read over it this
24    morning --
25              THE COURT:  Just Brady, Giglio, Rule 16,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    anything helpful there?

2           MS. ARMIJO:  I will reread it for those

3    purposes.  I reread it for the purpose of this fact.

4    This information was relied upon.  And I spoke to him

5    about that.  But I will reread it for that purpose.

6    It isn't very lengthy.  And, certainly, if there is

7    anything that we feel is Brady, we will then disclose

8    it to Mr. Gallegos' attorneys.

9           THE COURT:  What is your argument -- when

10   Mr. Benjamin talks about, and I'm not sure, maybe, I

11   fully appreciate what he's saying -- that I guess

12   this is -- I'll put it in my words, and see -- this

13   is just a state law murder rather than being a VICAR,

14   these Counts 4 and 5, there is no evidence linking

15   his client to the federal crimes here?  Is there

16   something you can point out outside of the Grand Jury

17   transcripts that you're going to be relying on?

18          MS. ARMIJO:  Well, I think he has the

19   general idea of it.  He just thinks -- he's just

20   critical of the information.  When he talks about --

21   and I don't have it in front of me -- he referred to

22   a response, Document 933, that I do not have in front

23   of me.  But it's the general proposition that the SNM

24   is a criminal enterprise; it is engaged in

25   racketeering activities, which would include drug

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492

**BEAN
&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    activities.  Mr. Gallegos was on the street at the
 2    time, was involved in drug activities.  And there
 3    was -- the victim in this case and he, obviously,
 4    were not getting along, for lack of better words, and
 5    the victim was eventually killed.
 6              And we do have statements from people
 7    that -- and I don't have it in front of me to say
 8    what was disclosed -- but we certainly have people --
 9    statements that were obtained during the FBI
10    investigation, that were at the Gallegos residence
11    and with the Gallegoses after the murder that could
12    talk about it, in addition to various statements of
13    people related to the victim.  And this is in
14    addition to the state investigation.
15              So the general theory, though, Your
16    Honor -- I think he understands it -- is that it's
17    Mr. Gallegos' relationship with the SNM, his position
18    with the SNM.  He's obviously charged in two
19    different murders for the SNM in this case.
20              THE COURT:  All right.  Anything else, Ms.
21    Armijo?
22              MS. ARMIJO:  No, Your Honor.
23              THE COURT:  All right.  Thank you, Ms.
24    Armijo.
25              Let me ask:  Any co-defendants want to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    comment on this motion in any way?

2              All right.  Mr. Benjamin.

3              MR. BENJAMIN:  Your Honor, I can state that

4    I don't have any idea what this is.  There are three

5    statements in a response to Andrew Gallegos' motion

6    to sever, but I -- and I've asked other counsel if

7    they have seen any statements regarding a -- just

8    broadly, actions being taken because of somebody,

9    specifically Adrian Burns, disrespecting Joe Gallegos

10   in the community, and how that would tie into the

11   SNM.  I am not aware of -- once again, out of the

12   Document 933, page 15 -- any evidence, as opposed to

13   sufficient evidence, to prove the conspiracy to kill

14   Adrian Burns.

15             THE COURT:  But how is the Grand Jury

16   testimony going to help anyway?  You now know, if you

17   didn't know already, that it's Myers.  It sounds like

18   it's very brief.  It doesn't sound like there is

19   anything exculpatory or helpful to you on that side,

20   which is often the case with Grand Jury testimony.

21   It's not a very fruitful area for the defendant?  How

22   does it help you?

23             MR. BENJAMIN:  Your Honor, because Mr.

24   Myers, Agent Myers, would have gone in, and would

25   have presumably told them:  The brothers got together

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   and they killed Adrian Burns, and this is why they
 2   did it.  However, if that is what he explained to
 3   them, there is no federal jurisdiction for Counts 4
 4   and 5.
 5            THE COURT:  Well, but don't we just have
 6   that problem, period?  We don't need the Grand Jury
 7   transcripts.  It's a problem, right?
 8            MR. BENJAMIN:  It is a problem, Your Honor.
 9   But there has been approximately 50,000 pages of
10   documents produced, and there are the sheriff's
11   office investigative reports that were produced in
12   this matter that -- there's cooperator statements,
13   statements that are redacted, there are a lot of
14   other things.  But there is nothing in relation to
15   Counts 4 and 5.
16            And, more specifically, there is nothing
17   that comes anywhere close to what, or comes at all
18   within what the Government has put in Document 933
19   that would support that.
20            THE COURT:  But I guess that's what -- how,
21   then, is the transcript of Myers' testimony going to
22   help you?  You're going to get it eventually.  How is
23   it going to help you now?
24            MR. BENJAMIN:  Well, Your Honor, first off,
25   I think that it allows me to understand who or how
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Joe was disrespected in the community, or considered

2    himself disrespected in the community, and the other

3    federal jurisdictional elements that had to have been

4    presented to the Grand Jury in order to return an

5    indictment.  Because that has to be in there.

6    Otherwise, there wouldn't have been an indictment.

7    Essentially, my position, I think, Your Honor is, but

8    for that jurisdictional evidence, that I don't know

9    what it is, there could not have been an indictment.

10            THE COURT:  All right.  Anything else on

11   this, Mr. Benjamin?

12            MR. BENJAMIN:  Your Honor, I would request

13   that, should the Court deny this request to produce

14   the Grand Jury testimony, if the Court would consider

15   reviewing that in chambers -- I'm sorry, not in

16   chambers -- in camera.

17            THE COURT:  All right.  What do you think

18   about that request, Ms. Armijo?

19            MS. ARMIJO:  Well, again, I don't want to

20   go down that road.  And what is the purpose of the

21   Court reviewing it?  If it's just that -- I mean, the

22   entire Grand Jury presentation -- because it was done

23   up in parts -- is different segments, so the Court

24   would look at that and say, Well, I'm not sure what

25   the whole Grand Jury -- then you're looking at the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    whole Grand Jury transcript.  Again, I think that his

2    issue with not being able to -- he's filed a motion

3    for a bill of particulars, and then maybe that's

4    where we deal with this whole issue.  I don't think

5    that this is the correct avenue.  I will review the

6    Grand Jury transcripts for Brady as to these counts,

7    and if we feel that there is anything there that is

8    Brady, we will certainly disclose it to Mr. Benjamin.

9              THE COURT:  Well, do this:  Just the

10   portion of Myers' testimony that links this to

11   federal jurisdiction, send me that.

12             MS. ARMIJO:  Okay.  But I don't know --

13             THE COURT:  If it doesn't exist, then that

14   will tell me something.  But --

15             MS. ARMIJO:  And I don't know that Myers

16   specifically said here is the federal link.  I think

17   that the Grand Jury heard testimony from a variety of

18   witnesses, including information about the SNM and

19   how they work, so -- and took everything in totality.

20   So I don't know.

21             THE COURT:  Well, let me assume, then, that

22   Myers didn't say anything about it.  The Grand Jury

23   was just supposed to draw an inference that, when the

24   defendant -- that I guess anytime the defendant did

25   something, that that was in furtherance of the SNM

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Gang's interests; would that be fair?  That's the

2    case before the Grand Jury?

3                MS. ARMIJO:  And could you repeat it again,

4    Your Honor?

5                THE COURT:  Well, that Myers did not offer

6    any specific testimony as to what Gallegos did or did

7    not do on behalf of the SNM.  It didn't link this

8    crime up with the SNM.  It was just that there was a

9    lot of testimony about:  Here's how the SNM Gang

10   operates.  And then we got around to, then, linking,

11   with Myers' testimony, Gallegos to the crime?  Is

12   that fair?  Is that a good picture?

13               MS. ARMIJO:  That's fair.  And I can

14   certainly reread it to see if there were.  But I know

15   I was present for the Grand Jury, and I don't believe

16   I said to Myers:  And what is the federal link to

17   this?  But it was a rather lengthy presentation with

18   what the SNM is, and --

19               THE COURT:  But you also -- I know that he

20   probably isn't talking about federal jurisdiction

21   before the Grand Jury.  But is there testimony by

22   Myers in which you ask him, and he says, Hey, this

23   is -- here's the reason we did this crime, or here's

24   the reason we committed what would otherwise be a

25   state act, and we did it because of the SNM Gang?  Or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   was the Grand Jury just supposed to infer that from

2   the prior testimony about how gangs operate; this

3   must have been a gang crime?

4           MS. ARMIJO:  I can reread it and let the

5   Court know.

6           THE COURT:  But you think it's the way I'm

7   describing it?

8           MS. ARMIJO:  I think it is.  But I think

9   that there was obviously more.  But I'd have to sit

10  down and read it again.  It's not that long, Your

11  Honor.  What I can say is that we do have a

12  cooperator who will say that Adrian Burns

13  disrespected Joe Gallegos; that Andrew Gallegos stole

14  drugs from Adrian Burns; that Burns was their

15  supplier, and took the theft to the public, which

16  then shamed the Gallegos brothers.  And shaming an

17  SNM member is not a good thing to do as far as their

18  reputation.

19          And so we do have specific cooperators that

20  will talk specifically about it.  It's not just a

21  generalized, Oh, this is a drug case; oh, this is

22  that.  We have specific cooperators that will talk

23  specifically about this.

24          THE COURT:  But as far as the Grand Jury

25  testimony, that's not something that was presented to

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                         1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

 1    the Grand Jury?  You've got additional evidence?

 2              MS. ARMIJO:  I think that was something

 3    that came out after -- this cooperator we spoke to

 4    after.  So I know -- I'm pretty certain that this

 5    specific information was not in the Grand Jury

 6    transcript.  But I will review the Grand Jury

 7    transcript to see what else is there, as far as the

 8    Court's questions about that.  But, again, I think

 9    that that's probably more for the bill of

10    particulars.

11              THE COURT:  So I'm going to assume, for

12    purposes of this motion, that the picture I'm getting

13    is the Grand Jury was given some robust -- sort of

14    like the indictment itself -- some robust description

15    of how the gang operates, which we know what the

16    indictment says.  And then there was -- given that

17    there doesn't seem to be anything specific, it's just

18    information as to Myers saying, Well, they committed

19    this crime, and so the jury inferred that it was a

20    gang-related crime, rather than some personal dispute

21    between the two.If that's the case, I think you and I

22    can assume -- and for purposes -- given without the

23    transcript -- that there is nothing there that's

24    going to give you any more information than what the

25    documents are going to give you.

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                      1-800-669-9492
                                               e-mail: info@litsupport.com



1          MR. BENJAMIN:  Except, Your Honor, if that

2     information is not there, it is Exhibit A to my

3     motion to dismiss.

4          THE COURT:  Well, I think you and I can

5     assume that.  We have to assume that it's not there.

6     So you can file your motion and say, "It's not

7     there."

8          MR. BENJAMIN:  But, Your Honor, that would

9     then lead to my basis for the claim, which is false

10    and misleading information.  Because there has to be

11    evidence on every element of -- and I apologize, Your

12    Honor, but I guess I'm not understanding.  I can't

13    assume that in a motion to dismiss, I don't think.

14         THE COURT:  Well, I think that's what the

15    Government is telling us.

16         MR. BENJAMIN:  Okay.

17         THE COURT:  So I think you can assume it.

18    If, all of a sudden, they produce a Grand Jury

19    transcript that does have Myers saying to the jury

20    that this is the reason it's not just a state law

21    crime, it's a federal crime, is because he was doing

22    this on behalf of the SNM, you've got a little

23    more.But you still don't have what I think you're

24    looking for, is that robust sort of evidence of the

25    United States going to the Grand Jury and saying, By

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1    the way, these guys were in a squabble.  They didn't

2    like each other anyway.  They were fighting over

3    women, cars, something, and it had nothing to do with

4    the SNM Gang.  But we're going to tell you that --

5    here's the evidence.  That's not what happened.

6             MR. BENJAMIN:  Thank you, Your Honor.

7             THE COURT:  It didn't.  I mean, if we see

8    the pages, and all of a sudden down the road --

9    you're going to see them at some point, you're going

10   to see it as far as Jencks production, and that's

11   something different, then we'll have to deal with it

12   then.  But I think you and I have enough experience

13   reading Grand Jury transcripts to know they're not

14   always presenting every possible theory from the

15   defendant's standpoint.

16            MR. BENJAMIN:  Yes, Your Honor.  But I

17   would -- the concern that I have here is,

18   essentially, at this point in time what I'm

19   understanding is I have two weeks to understand and

20   develop a defense to something that is a state case,

21   that I don't believe has any federal jurisdiction,

22   which concerns me from a time point of view.

23            THE COURT:  Yeah.  Well, I think you've got

24   all the discovery.  You've seen the Government's

25   cards, as far as evidence.  It doesn't sound like

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    you're going to get much more evidence out of the
2    Grand Jury.  So I'll deny the request.
3              MR. BENJAMIN:  Thank you, Your Honor.
4              THE COURT:  You'll see them down the road.
5    So if there is problems with them, we'll have to deal
6    with them then.
7              MR. BENJAMIN:  Thank you, Your Honor.
8              THE COURT:  Thank you, Mr. Benjamin.
9              All right.  What I have next is
10   Mr. Garcia's and Mr. Troup's motion for -- the
11   Government's motion for notice as to Garcia and
12   Troup, 404(b), 405, 406, 608, and res gestae
13   evidence.
14             So you don't like this evidence?
15             MR. CASTLE:  I don't like any of it that's
16   against my client.
17             THE COURT:  Well, there is some out in the
18   world you like, right?
19             MR. CASTLE:  Good character evidence, I
20   would appreciate.
21             THE COURT:  Talk to me a little bit about
22   the evidence.  Make sure I understand fully what the
23   Government wants to use against you.
24             MR. CASTLE:  Well, I think that's the
25   problem.  I don't know.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          And just as a prelude, a number of

2     defendants joined in this motion, so --

3          THE COURT:  You know, I don't have any

4     joinders on that.  That may be true, but I don't

5     really have -- I mean, all I have is the Government's

6     motion.

7          MR. CASTLE:  Well, I indicated in the

8     motion who was joining in that.  So I probably should

9     have said it was Defendant Troup, Garcia's, and the

10    various other defendants that joined.  But I think in

11    the concluding paragraph I indicated which defendants

12    joined.

13         THE COURT:  Yeah.  I mean, I've got --

14    okay.  I've got Troup.  So I've got -- so y'all are

15    joining this, right?  But is anybody else joining it?

16         MS. HARBOUR-VALDEZ:  Yes, paragraph 10

17    lists all the other parties who joined.

18         MR. MONDRAGON:  Your Honor, I believe Mr.

19    Benjamin joined it, and we joined it.

20         THE COURT:  Yeah, it looks like there is

21    more.  I see paragraph 10.

22         MR. CASTLE:  That was my fault, Your Honor.

23    I should have highlighted that in the beginning.  The

24    problem is that when we circulate these motions, it's

25    done on behalf of two defendants.  Then we hear --

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                         (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1           THE COURT:  No, that's fine.  Don't worry
 2    about it.
 3           MR. CASTLE:  Your Honor, in this notice, we
 4    requested -- or in this motion we requested notice of
 5    various types of acts of the defendant, uncharged
 6    acts, which the Government intends to offer.  And
 7    we've described those as either character evidence or
 8    res gestae evidence.
 9           In the Government's response, Document
10    1102, they describe that as, essentially, evidence of
11    uncharged racketeering activity engaged in by the
12    defendants.  And I think it really doesn't matter how
13    we characterize it.  The due process requires
14    notice.Now, the Government has indicated the evidence
15    they'll present ordinarily would be -- well, in this
16    case it's going to be prior crimes or bad acts of the
17    defendants that are -- form their pattern of
18    racketeering activity.
19           But let's take a look at the indictment, if
20    we can.  Because the indictment is where I think we
21    start.  I mean, the Court's initial question was:
22    What are we talking about?  And I said, I can't
23    answer that, because I don't know what they're
24    offering.  That's because the indictment starts off
25    by essentially alleging that all these defendants are
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    members of the SNM; that's a specific allegation.

2    Then they say that the SNM Gang committed all kinds

3    of horrible crimes, including murder, robbery,

4    obstruction of justice, tampering with witnesses, et

5    cetera, and says that members or associates did these

6    things.

7          I'm not talking about the actual Counts, 1

8    through 16.  I'm talking about uncharged activity.

9    And then they go throughout the indictment basically

10   saying that various defendants committed one or more

11   of these things:  Murder, robbery, obstruction of

12   justice, et cetera.

13          So what we have here is a situation where

14   the defense doesn't know what this uncharged conduct

15   is.  The prosecution is indicating it's part of their

16   allegations in this case, it's part of their proof of

17   the allegations.

18          THE COURT:  You filed this motion.  Where

19   did you get the idea they had this?  Is this

20   correspondence?  Discussions with them?  How did you

21   get the idea that they had it?  You're asking for a

22   notice that they didn't give you.  Most of the time,

23   when I get a notice of 404(b) evidence, it's pretty

24   specific.  It tees it up, whether the defendant wants

25   to try to exclude it or not exclude it.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    sometimes the Government knows it's going to be a

2    fight, and they just move on 404(b) notice to admit

3    the evidence.  How did you come to the understanding

4    there is this ball of noncharged conduct that you're

5    going to have to deal with?

6              MR. CASTLE:  Well, I got the idea based

7    upon two sources -- well, actually three reasons.

8    The discovery is replete with various allegations of

9    things our clients did.

10             THE COURT:  There is just a lot out there.

11             MR. CASTLE:  Right, there is a lot out

12   there.

13             Second of all, the nature of the indictment

14   is so broad that it really looks like the net is

15   being cast broadly.  And the third thing is that

16   because this is a VICAR prosecution -- oftentimes, in

17   VICAR or RICO prosecutions, the prosecution likes to

18   put in a lot more evidence of acts that constitute

19   the pattern, more than what's been specifically

20   indicted.  And so --

21             THE COURT:  So you're afraid they're going

22   to bring the dump truck to trial, and just, anything

23   bad, unload against you?

24             MR. CASTLE:  Yes, and their response

25   actually confirmed my suspicions.  Their reply said

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   that's what they intend to do.  And they think they
 2   can do it, because it shows a pattern of racketeering
 3   activity.
 4           So now, it's more than one -- well, I'll
 5   use an analogy using a different kind of animal, a
 6   catfish.  But there is more than one way to skin a
 7   cat.  And I could have filed this as a motion for a
 8   bill of particulars.  I could have asked for the
 9   indictment to be dismissed.  We asked for notice.  I
10   think they all go to the concept of due process.
11           I would cite the Court to a case that I
12   didn't cite in the motion I filed, U.S. versus
13   Davidoff, a Second Circuit decision, 1988, 845 F.2d
14   1151.  And that case dealt with the RICO prosecution.
15   And in that case, the defense skinned their cat in a
16   different way by filing a motion for bill of
17   particulars.  What they were asking for was they
18   wanted to know if any uncharged acts of their clients
19   were going to be introduced at trial.  And if so,
20   they wanted notice of that so they could defend
21   against that.  Because they were fearful that de
22   facto clients would actually be convicted by a jury
23   mainly because of the uncharged misconduct in acts,
24   not the charged conduct.
25           And the Second Circuit indicated -- they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    were talking about the principles of bill of
2    particulars in that case -- they said that "these
3    principles must be applied with some care when the
4    Government charges criminal offenses under statutes
5    as broad as RICO.  With the wide latitude accorded
6    the prosecution to frame a charge that the defendant
7    has 'conspired' to promote the affairs of an
8    'enterprise' through a 'pattern of racketeering
9    activity' comes an obligation to particularize the
10   nature of the charge to a degree that might not be
11   necessary in the prosecution of crimes of more
12   limited scope."
13          They then went on to indicate that the
14   indictment in the Davidoff case only put the
15   defendants on notice to defend against the actual
16   predicate acts that were charged.  They then went on
17   to say that at trial, "Davidoff was then confronted
18   with evidence of other crimes that were not charged."
19   And they said that that was violative of due process,
20   and reversed the conviction of Davidoff.
21          Now, why does this become important?  I
22   want to give you an example.  One of the allegations
23   here is that the SNM, and some of the defendants --
24   we don't know who they are, because they haven't
25   identified them in the indictment -- engaged in some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    narcotics trafficking that had some kind of a role in
 2    the SNM organization.  And I think that's going to --
 3              THE COURT:  The Chris Garcia case.
 4              MR. CASTLE:  Right.  And that's going to be
 5    probably their link to the interstate commerce.  But
 6    that aside, they have broad allegations -- we don't
 7    know who they're talking about.
 8              Now, it might have been that -- I'll use my
 9    client, I'll pick on him -- their evidence is that
10    Billy Garcia made a drug deal with some other person
11    in prison.  If we don't know about that in advance,
12    and it turns out that that had nothing to do with the
13    SNM, it's just sprung on us at trial, the jury is
14    going to hear evidence.  We're going to have to stop
15    the trial.  We're going to have to do a hearing on
16    whether this is admissible evidence.  And everything
17    is going to come to a grinding halt in trial.
18              That's why I believe the framers of the
19    rules, with regard to 404(b) specifically, required
20    advance notice so that litigation can settle whether
21    that's admissible or not.
22              I can tell the Court, when I looked at
23    discovery, the discovery doesn't say often -- it's
24    some old report from 2001, 2003, something of that
25    nature -- where they're getting intelligence
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    information on the SNM, and they'll get information
 2    about particular defendants.  And then, essentially,
 3    they ask them:  Well, what has this person ever done?
 4    They say -- well, you don't know whether they've
 5    heard it, or whether they haven't, whether they
 6    actually were a percipient witness.  And they'll say,
 7    Well, here is the laundry list of bad things that guy
 8    did.  They don't necessarily link it to the SNM.
 9    They just basically say:  Because he's an SNM member,
10    he did all these things, and that's the information
11    they're going to provide.  And I think that's what's
12    going to happen when we get the 302s and the Jencks
13    Act material.  We're going to be stopping this trial
14    constantly because there is going to be objections
15    that this witness isn't necessarily a percipient
16    witness, doesn't have personal knowledge, that it's
17    not properly evidence of the racketeering activity,
18    that it's really 404(b) evidence, and we need to
19    analyze all the factors that we have to analyze in
20    404(b).  And we're going to have stoppages constantly
21    through the trial.  And it's going to chop everything
22    up.
23           It's interesting, what I think the
24    Government's position is -- and I think they can
25    describe it to the Court here in a minute -- but what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    they're saying is that we have a right to know bad
 2    acts under 404(b) that are outside of the indictment.
 3    But what they're saying is we don't have a right to
 4    notice of the bad acts that they are really saying
 5    are within the indictment, that are part of the
 6    pattern of racketeering activity of the defendants.
 7            And that, to me, is illogical.  I mean, due
 8    process at its base requires a defendant to know what
 9    crimes he's being accused of which are being a part
10    of the indictment and a part of the prosecution.  And
11    their argument actually, in my opinion, helps us
12    more.  Because if these are acts, these uncharged
13    acts, are actually part of their pattern of
14    racketeering activity, as alleged in the indictment,
15    then the need to give notice to the defense is even
16    higher than if it was mere 404(b) evidence, or other
17    character evidence that often comes up in the trial.
18            So, for the purposes of this argument, I'd
19    actually adopt their position, and say, okay, it's
20    all going to be that evidence, and they're indicating
21    that's all they're offering; they're not offering
22    404(b), or other kinds of character evidence, they're
23    offering it all as evidence that they're going to put
24    on, specific acts of the defendants, that will
25    demonstrate a pattern of racketeering activity.  We
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    adopt that, I think the need for notice is greater.

2    And I don't think it's hard for them to produce this.

3               I would note to the Court that what the

4    Court might be thinking about is, Well, is the Jencks

5    Act disclosures that we're going to get in discovery

6    sufficient to put us on notice?  The Davidoff case

7    said, No, it's not.  And I think in this case it's

8    even greater.  Why?  Because the amount of material

9    we have is vast.  I mean, if I'm not put on notice

10   for the next two weeks, I'm going to go through

11   discovery, and find every single thing they said

12   about Mr. Garcia, and file a 404(b) motion to exclude

13   it.  Because I won't know whether they're going to

14   exclude it or not.  That seems to be an incredible

15   waste, to define acts that they're going to put on

16   that these defendants did.  I'm not asking for all

17   the evidence that they're going to put on concerning

18   the SNM and pattern of racketeering.  I'm talking

19   about what these defendants --

20               THE COURT:  You would like a list of --

21   saying:  Here is what we're going to say bad about

22   your client?

23               MR. CASTLE:  Right.  These are the crimes

24   we're saying your client committed, so we can defend

25   against them.  And those crimes are going to be part
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    of our proof that we're going to put on for the jury
 2    as a pattern of racketeering activity.
 3              THE COURT:  All right.  Anything else, Mr.
 4    Castle?
 5              MR. CASTLE:  No, Your Honor.
 6              THE COURT:  Thank you, Mr. Castle.
 7              Anyone else want to speak on this motion?
 8    Ms. Johnson?
 9              MS. JOHNSON:  Thank you, Your Honor.
10              THE COURT:  Are you one of the ones that
11    joined it?
12              MS. JOHNSON:  Yes, we did.
13              THE COURT:  Ms. Johnson.  I was going to
14    let you speak anyway, but I just wondered.
15              MS. JOHNSON:  Thank you, Your Honor.
16              We did join the motion.  In the same vein,
17    Your Honor, in addition to the arguments propounded
18    by Mr. Castle, I would also note for the Court that
19    our motions in limine deadline is June 6.  So, in
20    order for us to avoid peppering the Court and
21    opposing counsel with just vague motions in limine to
22    exclude certain evidence, we need to have a specific
23    list.  Because, obviously, we're going to be filing
24    motions under Rule 403 to exclude certain evidence.
25              And, as the Court is aware, one of the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    elements that the Government has to prove for these

2    VICAR counts is that, not only that there was an

3    enterprise, but that the enterprise engaged in a

4    pattern of racketeering activity.

5         So, obviously, in -- we anticipate in

6    support of their burden to prove pattern of

7    racketeering activity, they have to introduce

8    evidence, presumably, of some of these bad acts, of

9    these -- what, in a RICO, regular RICO case, would be

10   predicate acts.  And so the defense has to have

11   enough time to review these, and determine whether or

12   not we need to file a motion to exclude, a motion in

13   limine to exclude.

14        As the Court I'm sure is aware, that

15   pursuant to HJ, Inc. versus Northwestern Bell

16   Telecommunications Company, which is a U.S. Supreme

17   Court decision from 1989, 492 U.S. 229, the pattern

18   of racketeering activity needs to be related.  So we

19   can't just have a slew of bad acts, and have the

20   Government try to introduce evidence of these bad

21   acts in support of their pattern.

22        So, in order to expedite matters, in order

23   to save judicial resources, and save time, and not

24   have to file some vague motion in limine to exclude

25   just 403 -- evidence under 403, I would respectfully

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    request the Court order the Government to provide the

2    defense with a list of these bad acts that they

3    intend to introduce in support of their pattern of

4    racketeering activity.  Because what's alleged in the

5    indictment is very vague, it's general.  The counts

6    are VICAR counts.  They may say, Well, that is --

7    those are the -- those acts are what form the pattern

8    of racketeering activity.  I would respectfully

9    submit to the Court that that's different.  They're

10   actually alleging those as substantive violent crimes

11   in aid of racketeering.  And they need to prove the

12   pattern.

13         So I would ask that the Court order the

14   Government to disclose this information.

15         Thank you, Your Honor.

16         THE COURT:  All right.  Thank you, Ms.

17   Johnson.

18         Anyone else want to speak on it?

19         All right.  Mr. Beck, are you going to

20   handle this?

21         MR. BECK:  So I think it's important to

22   distinguish VICAR from RICO.  In VICAR, the United

23   States is not required to prove that there was a

24   pattern of racketeering activity.  The only element

25   that the United States is required to prove in

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                            1-800-669-9492
PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

BEAN
& ASSOCIATES, Inc.

1    connection with racketeering activity is that the

2    charged enterprise engaged in racketeering

3    activity.So in talking about all these other bad

4    acts, the statute limits that.  And if we look at

5    Section 1961, subpart 1, it defines racketeering

6    activity clearly.  And so that activity, which the

7    statute defines as racketeering activity, is the only

8    information that we may bring in to prove that

9    element, which would then be res gestae.

10              I think that the way that the indictment is

11   charged, and the breadth of VICAR and RICO in

12   defining racketeering activity does -- indeed, I

13   agree with Mr. Castle -- render a lot of what may

14   otherwise be 404(b) evidence, prior bad acts.

15   Instead, res gestae of the crime, because it gives

16   the background of how the United States proves the

17   element that the enterprise engaged in racketeering

18   activity.

19              So I think that other contexts, certainly

20   what the defense is asking for, may be properly

21   subject to Rule 404(b).  In this case, it is not.

22   Granted -- I mean, of course, the United States

23   understands that this Court still must determine that

24   it's admissible under Rule 403, as that's understood.

25   But the rules require the United States to provide a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    list of Rule 404(b) activity it intends to present

2    against the defendant.

3            THE COURT:  Well, the problem is that I've

4    got to sort of tee things up so that it's helpful to

5    me in making determinations that I can see are going

6    to come.

7            And Mr. Castle's point about, if we leave

8    all this dispute for trial, which is what I hear the

9    suggestion is, is we're going to take the position

10   none of this is 404(b).  We're going to take the

11   position it's all res gestae, and so we don't have to

12   give it any notice under Rule 404(b)(2)(A), then it

13   seems to me we're kicking the can down the road, and

14   we are going to make it more difficult to try the

15   case.Generally, we front-load this by pushing all

16   these issues to the motion in limine stage.  So that

17   we can have a robust debate, I can give more informed

18   rulings, and the Government doesn't have to deal with

19   the evidence maybe being excluded because of lack of

20   reasonable notice.  So my experience has been, with

21   the Government, is that the Government usually works

22   with everybody -- court, defendants -- to front-end

23   load the debate, so that we can tee these issues up.

24   It's not a matter of -- it's not a matter of forcing

25   the Government to give evidence.  Because they've got

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    the evidence.  They know everything that's bad in the
2    documents.  It's instead saying:  Here's the acts
3    we're going to prove.
4           How do you deal with just the practical
5    mechanics of what you're proposing, is that it's
6    going to delay the trial and take a lot of issues
7    that normally we deal with motion in limine and push
8    them to trial?  It seems like that's not a good way
9    to run the trial from anybody's standpoint.  And it
10   puts your evidence at risk of you guessed wrong, it
11   is 404(b), and not something that I consider to be
12   res gestae.
13          MR. BECK:  Well -- and I certainly
14   understand the Court's position.
15          THE COURT:  Why don't we do this:  Why
16   don't you think about that over lunch.  Think about
17   if you've got a proposal.  Because I'm not forcing
18   you to produce evidence.  I'm just saying, can you
19   list out for the defendant:  Here's where we're going
20   to come after you at, I'm thinking of a single
21   sentence.  And, that way, we can front-end load these
22   motions in limine.  Because it seems to me we're
23   better off getting that decided before trial.
24          All right.  Think about that over lunch.
25   See you in about an hour.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              (The lunch was held from 12:31 p.m. to 1:52
 2     p.m.)
 3              THE COURT:  All right.  I was trying to
 4     massage something from the Government.  Was I
 5     successful?
 6              MR. BECK:  You weren't.  I understand --
 7     you know, I mean, it's one foot or the other.  The
 8     rules are in place for a specific reason.  Evidence
 9     is either 404(b), or it's res gestae, or other
10     evidence.  Where it is 404(b), the rules require the
11     Government to provide notice.  Where it's not, there
12     isn't notice required.
13              And I understand Mr. Castle's arguments
14     that they're going to have to file a lot of motions
15     in limine.  But a lot of these defendants in here --
16     most defendants have a couple of counsel.  They've
17     reviewed discovery.  What we're going to be using is
18     in discovery.  And so I would assert that it's easier
19     for -- I'm not saying it's easy.  But they're at an
20     advantage in filing those motions.
21              THE COURT:  Why are they at an advantage?
22     You know what you're going to prove.  Why are they at
23     an advantage?
24              MR. BECK:  They have discovery.  They know
25     what refers to their clients.  They know the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    discovery for their clients.  And so, in preparing

2    for trial, they should be considering what evidence

3    they contend shouldn't be admitted.  And instead of

4    three Government attorneys, who now have tons and

5    tons of obligations to review other evidence and

6    prepare Brady, Giglio, Rule 16 reviews, as well as

7    our motions in limine, our pretrial motions,

8    preparing those for all of the defendants, the rules

9    place the burden on the defendant to come forth and

10   object to that evidence.  I think the motions in

11   limine are there for a reason.

12          Now, I anticipate that there will be

13   motions in limine.  There will be some 403 rulings,

14   and some disputes.  Whether it's res gestae or Rule

15   404(b), and I anticipate that there will be trial

16   briefing -- a trial brief -- that will lay out some

17   of these issues for the Court, so that if we get to

18   trial, and the Court's faced with an objection, the

19   Court will be educated on the issue from the trial

20   briefs.

21          So I'm not saying the United States is just

22   going to sit on its hands and wait till trial for the

23   Court and the United States to be bombarded with

24   this.  I think it's ripe for a bench brief for trial.

25   So I don't want to give the impression that we're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    just going to sit there, and trial is going to linger

2    on because of all these objections.  I think that all

3    counsel here will educate the Court in preparation

4    for that trial and those issues.

5              And I'll reiterate, I don't want us to lose

6    focus, that certainly not everything is, perhaps,

7    Rule 404(b); that the statute makes clear what is

8    racketeering activity.  And the United States has to

9    prove that the enterprise engaged in racketeering

10   activity.  So --

11             THE COURT:  Of the movants that are here in

12   paragraph 10 of their motion, the movants, how many

13   are in the first trial?  That's going to require me

14   to make too much thinking.

15             MR. BECK:  No, that's fine.

16             THE COURT:  People were raising their

17   hands, and that is going to require me to think.  It

18   looks like about three, four.  Don't raise your hands

19   twice.  If you're not in paragraph 10, don't raise

20   your hands.  How many of you are in paragraph 10?

21             MR. BECK:  It looks to me like there is,

22   four plus the movant.

23             THE COURT:  So it looks like there is five.

24             All right.  Anything else on this motion,

25   Mr. Beck?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  No, Your Honor.
 2              THE COURT:  All right.  Thank you, Mr.
 3    Beck.
 4              Mr. Castle is teed up to argue it.  Anybody
 5    else want to say anything before Mr. Castle gets the
 6    final word?
 7              All right.  Mr. Castle.
 8              MR. CASTLE:  I appreciate it.  I don't get
 9    the final word in my own home.  It's nice to have a
10    place where I get it.
11              THE COURT:  We all become litigators for
12    some reason.
13              MR. CASTLE:  That's true.
14              What the Government is arguing is that the
15    burden should be on the defense to file motions in
16    limine.  That would require two waves of them.  One
17    based upon the discovery we have, and then second of
18    all, one that's based upon the disclosures that will
19    happen two weeks before trial.  That would be two
20    different waves.  The first wave would be
21    overinclusive because we'll be moving in limine to
22    exclude evidence that the Government has no intention
23    of even offering.  So we're creating unnecessary work
24    for everyone involved.
25              And we have to remember that once, at least
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    on the briefing schedule that we have now, that takes
 2    a while to get everybody briefed.  I know the Court
 3    could probably condense that.
 4            But we're going to have a lot of work to do
 5    in the last two weeks before the trial.  The defense
 6    attorneys are going to be scrambling to investigate
 7    and analyze the disclosures that the Government is
 8    withholding until two weeks prior to trial.  That's
 9    obviously their right, and the Court has given them
10    that authority.  But I don't think that because they
11    created their own problems, because they've decided
12    not to disclose, that somehow that is a consideration
13    in deciding what's fair here.
14            I misspoke earlier when I said it was --
15    they had to prove pattern of racketeering activity;
16    they just have to prove racketeering activity.  I'm
17    not sure that's a distinction, really, with much
18    significance for this argument.
19            Once again, the logic is that is faulty,
20    that because it's essentially acts that they're going
21    to prove to prove an element of the offense, they
22    don't have to give notice to the defense.  That's --
23    I think I already argued it -- it's contrary to basic
24    notions of due process.
25            I don't know if the Court has any other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    questions.
 2            Oh, I did have one other comment.  I think
 3    there are cases in which the discovery and Jencks Act
 4    disclosures could be enough.  And the Davidoff case
 5    talks about a couple of cases where that was enough.
 6            But that's not the case here.  We're not
 7    talking about a illegal reentry, or, you know, a more
 8    simpler -- a bank robbery case that's in federal
 9    court, where it's pretty easy to figure out, okay,
10    they're going to bring in the prior two times the
11    person illegally entered the country or prior bank
12    robberies.Here, because the indictment talks about
13    everything from something as somewhat amorphous as
14    intimidation or tampering with witnesses, which can
15    mean almost anything in the context of a prison
16    setting, all the way to specific acts that they need
17    for a specific listing of what noncharged
18    racketeering acts our clients are being -- need to
19    meet at trial, I think is appropriate.
20            MS. JOHNSON:  Your Honor, may I add
21    something?
22            THE COURT:  Certainly.
23            MS. JOHNSON:  Your Honor, if you take Mr.
24    Beck's argument that they have to prove racketeering
25    activity, and that's defined in 18 USC is 1961, but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    if you look at the definition of racketeering

2    activity, it's extensive.  It includes, I would say,

3    probably more than 50 offenses that could be

4    introduced to support the element of racketeering

5    activity.

6              And so what you're going to have is the

7    defense filing motions in limine that may waste the

8    Court's time and the parties' time.  For example, had

9    I known, and had I had the courtesy of being told

10   that they weren't going to be introducing the

11   machete, I wouldn't have wasted the Court's time

12   asking for that information.So if we narrow down this

13   evidence, what acts are they going to introduce to

14   support the racketeering activity, it would narrow

15   the Court's focus, the parties' time.  We're

16   essentially 60 days out, eight weeks out from trial.

17   Our motions in limine are due June 6.

18             So I would respectfully ask that the Court

19   order the Government to provide the defense with a

20   list of these acts that they're going to introduce

21   that would comprise the racketeering activity.

22             THE COURT:  Thank you, Ms. Johnson.

23             Did you have anything else you wanted to

24   add, Mr. Castle?

25             MR. CASTLE:  Your Honor, the parties talked

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    about timing of disclosures.  But the parties did
2    discuss it during the lunch recess.  We did not come
3    to an agreement -- I know that might be shocking --
4    but we had asked for 30 days prior to the motion in
5    limine deadline.  Well, that was five days ago.  So
6    that's not going to work.
7            My suggestion -- I would be amenable to one
8    of two situations, or suggest at least two different
9    avenues.  In the Government's response, they
10   indicated that if the Court was going to order
11   disclosures, it should do that 30 days prior to
12   trial.  If the Court were to do that, what we would
13   ask is -- that's also the deadline for motions in
14   limine.  And we can't file a motion in limine on an
15   act that we just got notice of that day.  So we would
16   ask for two weeks after that to file motions in
17   limine based upon that listing.  Or, in the
18   alternative, which is a better alternative in our
19   opinion, is to order disclosure in 10 days, and then
20   we'd file our motions in limine 30 days prior to
21   trial as currently scheduled.
22           THE COURT:  All right.  Thank you, Mr.
23   Castle.
24           Well, here's what I -- at some point, I got
25   to think about my ability to manage this case.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    so I'm reluctant to kick the can down the road, and
2    to have a lot of issues in trial and trying to sort
3    it out there.  I think you're going to get a
4    better -- I hope you'll get a better judge, and
5    you'll get a better judge trial, if I front-end these
6    issues, rather than kick them down the road.
7           And so I understand the Government's
8    position that there is no 404(b) evidence in this
9    case, or it's very little.  But I'm reluctant to kick
10   that issue down the road and assume the Government's
11   case, knowing that I'm still going to have to decide
12   these issues; that these issues are going to have to
13   be raised.  But at the same time, I don't want to put
14   the Government -- they may be right, and I think I
15   can figure that out pretty quickly.
16          So here's what I'm going to do:  I'm going
17   to require the Government to -- we'll talk about what
18   this is going to look like, because I don't think it
19   needs to be much -- but I do think I need five
20   letters to the five movants that are in the first
21   case.  Let's do a test run here.  Let's see what this
22   looks like.  Maybe with a heavy dose of guidance in
23   those cases that will be enough to solve things.
24          I think we made a lot of progress with some
25   early CIs, me sorting out sort of the legal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    differences, and things like that.  So I would

2    propose this:  Let's not move the motion in limine

3    deadline.  The Government give five letters in ten

4    days.  Then the defendants get their motions in, make

5    them the best they can, based upon what it is.  This

6    is what I'm expecting, is just a letter.  We'll file

7    the letter.  And just list it out.  I mean, if you've

8    got a drug transaction, list it out.  If you've got,

9    you know, something else:  Guns, cellphones, whatever

10   sort of crime, wrong, or other sort of propensity

11   evidence.

12          I understand the Government's position, it

13   may be all res gestae.  I understand their position

14   that it may go to proving racketeering activity.  But

15   I'd like to have that list, and send it over.  Those

16   defendants file their motions in limine.  Let's get

17   after it.  And we'll sort it out.  And I think that

18   may give guidance to everybody else.  And that way,

19   you don't have to do it on everybody.  But we'll get

20   it started.  And if we get into a roll, then I think

21   it's clear.  If it looks like I'm having to make a

22   lot of individual determinations, then we may expand

23   the requirement.  But let's give that a try.

24          Mr. Castellano.

25          MR. CASTELLANO:  Your Honor, I just don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1   know if we're going to be able to make 10 days.  We

2   have a whole list of things the Court has already

3   ordered in this case in the next 10 to 14 days that

4   involves other discovery reviews.

5           The other issue that comes up is this may

6   force an early disclosure of Jencks material,

7   depending on what certain people say, and what that

8   evidence will be at trial.  So we're going to run

9   into some other issues there.

10          THE COURT:  Well, I don't think you have to

11  disclose any Jencks material.  I'm not requiring you

12  to.  But if you know that you've got -- if you know

13  in some of the Jencks material you know you've got a

14  bad act -- you don't have to disclose the sources of

15  it; I'm not requiring that sort of disclosure -- you

16  can just list it out.  And the defendant can take

17  that and say it should be out.  I mean, you've got

18  give them enough so they know what the incident is.

19  But you don't have to disclose any material with

20  this.  I'm not requiring you to sit down and Bates

21  stamp it and things like that.  Just give them a

22  sentence, but enough of a sentence so they know what

23  it is, so they can move on.  Ten days isn't perfect,

24  but it's only five -- I think I'm going to stick with

25  that to keep these deadlines in place.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492
                                                                                  1-800-669-9492
                                                                          e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              All right.  The Government didn't like it.
 2     You don't like it either, Ms. Harbour-Valdez?
 3              MS. HARBOUR-VALDEZ:  Your Honor, I'm happy
 4     with that.
 5              I just wanted to make a clarification.
 6     There were two movants on this motion; that was Billy
 7     Garcia and Edward Troup, and there were four others
 8     who joined, so there are six total:  Christopher
 9     Chavez, Joe Gallegos, Javier Alonso, and Santos
10     Gonzalez.
11              THE COURT:  All right.  So I'll make it
12     six.
13              All right.  Well, I've got to manage this
14     case.  And this is where I maybe have an interest.  I
15     think I can order it under the power of 404(b), that
16     it's got to be reasonable notice.  So I think, if
17     we're going to litigate this issue, I've got to
18     impose my own idea of what reasonable notice is.  So
19     I think that minimizes the burden to the Government,
20     and gets some of the issues teed up, so that we can
21     have a trial that can move along at a -- without
22     breaking up every few minutes to try to figure out
23     what the evidence is going to be.
24              So I'm granting that in part and denying it
25     in part, and some of it is without prejudice to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       renewing down the road.

2               All right.  Mr. Lowry, are you next?  Ms.

3       Duncan?

4               This one is labeled as a sealed motion.  Is

5       this going to be one of your motions, Mr. Beck?

6               MR. BECK:  Yes, Your Honor.

7               THE COURT:  All right.  Is there anything

8       here that we need to be sensitive about in talking --

9               MR. BECK:  I think the way that -- I think

10      the way I anticipate we're handling this will take

11      care of that.  I think Ms. Duncan and I --

12              THE COURT:  Y'all have agreed on it?

13              MR. BECK:  Yeah.

14              THE COURT:  Okay.  All right.  So

15      understanding it's sealed, and trying to be sensitive

16      to the Government's needs here, you want to state

17      your agreement, Ms. Duncan?

18              MS. DUNCAN:  Your Honor, why don't I --

19      yeah, I can start, and then Mr. Beck can correct me

20      if I'm wrong.

21              My understanding of our agreement -- we've

22      agreed on everything except for three of my requests.

23              On our request B, which is on page 11 of

24      our motion to compel, this is a list of documents

25      relevant to a particular confidential informant.  My

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    understanding is that the Government has agreed to

2    produce the records that we have requested with two

3    caveats.  One is that we had asked for medical and

4    psychological records for this particular informant.

5    And the Government cannot disclose that to the

6    defense without a court order.  So we'd be asking the

7    Court to order that, so it could be disclosed to us.

8              THE COURT:  All right.  Would y'all prepare

9    an agreed order?

10             MS. DUNCAN:  We would, Your Honor.

11             The second part of it is, we'd asked for

12   prison phone calls and visitor logs for this

13   particular informant from February 1, 2005, through

14   September 14, 2016.  The Government has agreed to

15   produce that, but they've asked that they be given 30

16   days to produce that part of our request, because

17   it's going to take some effort to put it together.

18   And we've agreed to that.  The rest of the request

19   would be within the 14-day deadline that the Court

20   had issued earlier.  But that particular part of the

21   request would be 30 days.

22             The next agreement -- and I'll just assume

23   that Mr. Beck will jump up.

24             THE COURT:  He jumped up, but he sat back

25   down.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            MR. BECK:  Yeah, I wasn't sure if she
2   wanted me to jump up.  And it's not a disagreement.
3   I think she just misstated the dates.  It was
4   February 2015, and I think she said 2005.  That's why
5   I sat back down.  It was pretty semantic.
6            MS. DUNCAN:  That's what I meant.
7            THE COURT:  All right.
8            MS. DUNCAN:  Our next request, which was
9   found on page -- actually there is three requests,
10  Your Honor, for three different confidential
11  informants.  It's our requests C through E, found on
12  pages 12 through 13 of our motion.  And it is my
13  understanding that the Government has agreed to
14  produce this information within 14 days, as it is
15  Giglio.
16            MR. BECK:  And that's subject to,
17  obviously, the Court's Giglio ruling.  We understand
18  how the ruling stands now.  And we both agree that if
19  that changes, then that changes.
20            THE COURT:  Okay.
21            MS. DUNCAN:  The next is request number F,
22  on page 13 of our motion.  And that was for
23  recordings of all phone calls involving Mr. Baca, and
24  also all recordings of video visits at the Dona Ana
25  County Detention Center.  I clarified with Mr. Beck
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that we're just asking for recordings that are in the
 2    Government's possession.  We're not asking them to go
 3    get evidence for us.  My understanding is the
 4    Government has agreed that it will produce any
 5    additional recordings of phone calls or video visits
 6    involving Mr. Baca.
 7            THE COURT:  Is that your understanding as
 8    well, Mr. Beck?
 9            MR. BECK:  Yes, Your Honor.  I'm sorry, I
10    was just jumping up if I disagreed.
11            THE COURT:  All right.
12            MS. DUNCAN:  The next request we have is
13    our request G, which is on page 14 of our motion.
14    And that was for any tangible evidence or materials
15    the Government collected during the searches of Mr.
16    Baca's person or his cells over the years, and all
17    documents related to the collection of that evidence
18    or material.  We have clarified with the Government,
19    we're just seeking documents that were collected
20    while Mr. Baca was incarcerated in the New Mexico
21    Department of Corrections.  And with that
22    clarification, I understand the Government has agreed
23    to this request.
24            THE COURT:  Is that correct, Mr. Beck?
25            MR. BECK:  Yes, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1           THE COURT:  All right.  On request number
2   I, which is on page 16, Mr. Baca -- we've been able
3   to get that information, so it's now moot, and so Mr.
4   Baca has withdrawn that request.
5           For request number J, which is SNM
6   recording.  There was disclosed in discovery a report
7   of an SNM yard recording allegedly between Mr. Baca
8   and Mauricio Varela.  It's my understanding that the
9   Government has agreed to reach out to the Department
10  of Corrections to find out if it exists.  And if it
11  does, to disclose that to us.
12          MR. BECK:  That's right, Your Honor.
13          THE COURT:  All right.
14          MS. DUNCAN:  Request number K, on page 17,
15  was a request for all documentation related to the
16  transfer of Mr. Baca from Southern New Mexico
17  Correctional Facility to PNM Level 6 in August 2013.
18          The next request is for the same thing,
19  with a transfer from the same facility to PNM Level 6
20  in 2011.  And the Government has agreed to disclose
21  that information to the extent that it already --
22  it's disclosed some information that's responsive to
23  these requests, Your Honor, but it's agreed to
24  disclose all information relative to these requests.
25          MR. BECK:  That's right, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.
 2              MS. DUNCAN:  So that would be K and L.  And
 3    I think that is the extent of our agreement.There are
 4    three things still outstanding.
 5              THE COURT:  All right.
 6              MS. DUNCAN:  I don't think we had an
 7    agreement -- the last one was on the recordings of
 8    Mr. Marcantel.  We're going to argue that.
 9              MR. BECK:  Right.
10              THE COURT:  All right.  Do you want to
11    argue it?
12              MS. DUNCAN:  So I'll start with our very
13    first request, Your Honor, which was on page 8 of our
14    motion.  And, Your Honor, this is the request that we
15    argued yesterday with respect to Mr. Perez' motion to
16    compel.  It's the recording devices that were used.
17    And I just -- I understand the Court has ruled, and I
18    just want to make a complete record --
19              THE COURT:  Certainly.
20              MS. DUNCAN:  -- on our request, because I
21    worry that I wasn't clear on what I was asking for,
22    and why I was asking for it.
23              What we're really seeking access to is the
24    metadata that are on the recording devices, data that
25    would show us whether -- not only whether the
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                        1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    recordings are the results of an informant turning it

2    on and off, or was a malfunction, but would also give

3    us information, such as the dates on which particular

4    recordings were made, and the time that those

5    recordings were made.

6              And that information is relevant to us,

7    Your Honor, because the way that the conversations

8    were recorded, they did start and stop in the middle

9    of conversations, and then they would resume.  So

10   knowing that the conversations covered one topic, but

11   there was a three-hour break in-between is relevant

12   for us to determine whether or not these recordings

13   are fair and accurate.  So if, for example, they

14   start talking about topic A; the informant turns off

15   the recorder, because he doesn't like what's being

16   said, kind of moves the conversation along, and turns

17   it back on a certain period later, that's exculpatory

18   and relevant to us in impeaching this particular

19   informant.  And it's disclosable under both Brady and

20   Giglio.  This is information that could be

21   exculpatory, but it certainly is relevant into the

22   impeachment, and it's covered by Rule 16(3)(1), which

23   allows examinations of items, where the items are

24   material to preparing the defense.  And so we would

25   ask that we be allowed to have access to those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    recording devices for those particular reasons.

2            THE COURT:  I guess I was thinking these

3    are little bitty recording devices, after the

4    description yesterday.  Do they actually generate

5    what I would think of in my civil discovery cases as

6    metadata?

7            MS. DUNCAN:  Your Honor, I don't know.  I

8    haven't seen the recording devices.  I assume that

9    they're sort of like -- I have a digital recorder

10   that I use sometimes for interviews.  And when you

11   look, the digital recorder does save metadata.  If

12   you look at the recording, it will show you the date

13   and the time of the recording, in addition to the

14   length of the recording.  So because I don't know

15   what recorders they used, I don't know if these

16   recording devices do the same thing.  But I assume

17   that they do.

18           THE COURT:  All right.  Anyone else, any of

19   the defendants, before I hear from Mr. Beck?

20           All right.  Mr. Beck, if you want to argue

21   on that.  Do you know if these machines generate

22   metadata?

23           MR. BECK:  I don't believe that they do.  I

24   think -- again, I want to be careful here -- but my

25   understanding is that they don't.  I think that,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    probably, the Court's idea is probably more realistic
 2    of what these devices are.
 3               THE COURT:  Would you be willing to check
 4    after the hearing, and send Ms. Duncan a letter
 5    saying yeah or nay?
 6               MR. BECK:  I will.
 7               THE COURT:  Copy me in as well.
 8               MR. BECK:  That's fine, Your Honor.
 9               THE COURT:  All right.  Anything else on
10    that, Ms. Duncan?
11               MS. DUNCAN:  No, Your Honor.
12               THE COURT:  All right.  Ms. Fox-Young wants
13    to, I think, help here.
14               MS. FOX-YOUNG:  Your Honor, we would just
15    make the same request, that the Government check with
16    respect to the devices that we discussed and argued
17    about yesterday that were used to record Mr. Perez.
18    Our expert, in his declaration he spells this out,
19    does think that there is metadata that would be
20    useful for all the reasons that Ms. Duncan described.
21    And we'd like the Government to make the same inquiry
22    with respect to that device or devices.
23               MR. BECK:  That's fine.
24               THE COURT:  All right.  Mr. Beck has agreed
25    to do that.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              All right.  Anything else, Ms. Duncan?

 2              MS. DUNCAN:  Not on that point, Your Honor.

 3              THE COURT:  All right.  So at the present

 4    time, I'm not going to order any production of the

 5    machine.  But if it doesn't produce metadata, then

 6    that probably brings that inquiry to a conclusion.

 7              All right.  Ms. Duncan.

 8              MS. DUNCAN:  Your Honor, actually in

 9    looking at my motion, I realize I skipped over some

10    categories of agreements that we had.

11              THE COURT:  All right.  Do you want to put

12    those on the record then?

13              MS. DUNCAN:  Please, on page 9, we'd ask --

14    as we discussed yesterday, several of the informants

15    used Government-provided cellphones to record

16    conversations with other defendants and other people,

17    and text messages.  And we'd asked for copies of all

18    text and photographs that were found on those

19    cellphones.

20              And speaking of Mr. Beck, the Government

21    has represented we have all the texts.  And at this

22    point, we don't have anything to challenge that, so

23    we accept the representation.

24              We do not have all the photographs.  So Mr.

25    Beck -- I think the agreement is that the Government
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    will produce whatever photographs are found on those
 2    phones.  Although there is a concern that the phones
 3    may no longer be in the Government's possession.  So
 4    I think Mr. Beck was going to look into that, whether
 5    these three cellphones were still in its possession
 6    and let us know.
 7              THE COURT:  All right.  Is that your
 8    agreement, Mr. Beck?
 9              MR. BECK:  Yes, Your Honor.
10              THE COURT:  All right.
11              MS. DUNCAN:  With respect to the three
12    cellphones, if they are still in the Government's
13    possession, my understanding is the Government has no
14    objection to us doing a physical review of those
15    cellphones, along with our expert.  And if they're
16    not in the Government's possession, we would
17    appreciate it if the Government would put that in
18    writing for us.
19              THE COURT:  Is that your agreement, Mr.
20    Beck?
21              MR. BECK:  Yeah, that's the agreement.
22              MS. DUNCAN:  Then there was one last
23    category.  There were three other categories of
24    information that we had asked for.  It was
25    documentation related to the use of the recording
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    devices.  We had asked for copies of logs or similar

2    materials documenting the use of those devices,

3    materials related to the instructions and monitoring

4    controls that were used by the FBI, Department of

5    Corrections or any agent of the United States

6    Government regarding the use of the cellphones by the

7    informants, cooperating witnesses, and logs or

8    reports of telephone calls between these cooperating

9    witnesses and members of law enforcement during the

10    period that they were -- the informants were

11    recording these conversations.

12            The Government has represented that none of

13    these materials exist; that the only sort of

14    instruction that were given were just verbal

15    admonishments by agents.  I accept that

16    representation, but I'd ask that, should the

17    Government discover that that was wrong, that these

18    materials do, in fact, exist, that it alert us to

19    that fact, so that we can bring it to the attention

20    of the Court, and if the Government is not willing to

21    produce it.

22            MR. BECK:  No objection.

23            THE COURT:  All right.  So ordered.

24            MS. DUNCAN:  Your Honor, the next category

25    we disagree on is our request number H, which is at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    page 15 of our motion.  And we have requested housing

 2    records for PNM Level 5 and PNM Level 6, from August

 3    1, 2013, through March 8, 2014, which shows the

 4    identity and location of all the inmates who were

 5    housed at those facilities.

 6            And we'd asked for this because the

 7    Government's allegation, as we understand it, against

 8    Mr. Baca in the Molina murder, is that Mr. Baca

 9    somehow arranged for paperwork showing that Mr.

10    Molina was an informant, to be transferred from PNM

11    Level 6 to PNM Level 5, and then that paperwork was

12    transferred from PNM Level 5 to Southern New Mexico

13    Correctional Facility, which is where Mr. Molina was

14    murdered.

15            In order to rebut that allegation, we need

16    these housing records, because what they would show

17    is that Mr. Baca was not housed near any of the

18    people who were being moved between these different

19    levels, between PNM Level 6 and PNM Level 5.  So that

20    the Government's theory doesn't hold water.  So we

21    picked this period of time because Mr. Baca was moved

22    to PNM Level 6 in August of 2013.  And then Mr.

23    Molina was murdered on -- I believe it was March 7.

24    So we're asking for the day after that murder.

25            THE COURT:  All right.  Mr. Beck?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          MR. BECK:  Your Honor, I think in their

2    reply the defendant responds that "the information

3    Mr. Baca seeks is necessary for him to establish his

4    location relative to others the Government alleges

5    were involved in the transfer of the paperwork at PNM

6    prior to the murder."

7          I think there is a more targeted way to do

8    that.  And that would be to identify certain persons

9    that they believe -- I think this kind of goes back

10   to the first discovery motion we ever talked about,

11   which was that they identify suspects, and give us

12   articulable facts about who those suspects are, we'd

13   provide them with the information.  I think that

14   would be a more targeted and proper request, as

15   opposed to this, which I view as a fishing

16   expedition.

17         So I think looking at all the housing

18   records from PNM Level 5 and Level 6 for almost an

19   entire year goes beyond what the criminal discovery

20   rules allow.  That's a fishing expedition.  I think,

21   if Mr. Baca can articulate certain persons he

22   believes are suspects, and request their housing

23   records, or perhaps request where they are in the

24   pod, in which pod, I think that may be a proper

25   request.  But I think this request is overbroad under

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the criminal discovery rules and Rule 16.
 2              THE COURT:  I would envision that, if you
 3    were to get what you're asking, it would be a long
 4    list of names, with some cells, and something like
 5    that.  It would be a lot of information.  That's a
 6    pretty broad period of time.  I would think, if
 7    you're going to raise the theory of somebody else did
 8    this, that you've probably got a list of suspects,
 9    right?
10              MS. DUNCAN:  Your Honor, our theory is not
11    that somebody else did this, our theory is this never
12    happened.  So, I mean, the Government has alleged
13    suspects in this case.  But that's not really what
14    we're looking at.  What we're looking at is it's not
15    possible.  What the Government has alleged isn't
16    possible.  And so the housing records would show
17    that.  They would show that -- you know, they would
18    show that Mr. Baca was never next to any of the
19    people that the Government is alleging moved
20    paperwork from PNM down to Southern.  But also that
21    the people who are next to Mr. Baca were never next
22    to the people who moved from PNM Level 6 down to
23    Southern.  So that's why it is a broad net, but it's
24    because this allegation is somewhat amorphous.
25              And what I don't want to happen is we make
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    this defense at trial, and the Government comes up
 2    with someone else who we weren't aware of and didn't
 3    know who to ask for, who it was PNM Level 6 or PNM
 4    Level 5 at the time.  So this just gives us a full
 5    picture of who was there.  And that will enable us to
 6    rebut this theory, which we believe is fundamentally
 7    untrue.
 8          THE COURT:  Well, if you were at trial
 9    today, and you wanted to make this argument to the
10    jury, how many examples would you want to go through
11    to show that this was impossible?
12          MS. DUNCAN:  I think we could summarize.
13    We could summarize where people -- it's hard for me
14    to answer that question without knowing what the
15    populations were like.  I think that the population
16    can be somewhat stable.  So it may be fairly easy for
17    us to summarize this information in a way that the
18    jury could understand.  But I think -- so this is
19    just knowing this whole period -- I mean, I think it
20    is a fairly easy request to fulfill.  The Department
21    of Corrections keep these records.  And it's really
22    up to the defense to distill it in a way that's
23    useful to us.  But it's critical evidence for Mr.
24    Baca, given that this is the Government's sole theory
25    of how he's somehow responsible for the Molina
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    murder.

2           THE COURT:  Well, I think it is an awfully

3    broad request.  Here's what I'm inclined to do:  Take

4    ten names that you think would be most likely in

5    play, and send them over.  And, Mr. Beck, you give

6    the information for those ten people, rather than --

7    I don't know how many are there.  And then, Mr. Beck,

8    if y'all decide you're going to throw in somebody

9    else, then I'll order the Government to disclose

10   that -- any additional names.  If you look at the

11   list, and you think you're going to advance other

12   people, then you'll need to disclose that name and

13   provide that information.  Otherwise, I think just

14   ten names, and I think you can make your point with

15   that.  And the Government can't surprise you with

16   another name at trial.

17           MR. BECK:  Understood.

18           THE COURT:  All right.

19           MS. DUNCAN:  I guess an alternative to that

20   request, Your Honor, then would be to ask for the

21   housing records for everyone, so from the same

22   period, August 1, 2013, until March 8, 2014, for the

23   pod at PNM North, where Mr. Baca himself was held,

24   which would tell us who was in that pod with him for

25   that certain period of time.

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                     1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                        e-mail: info@litsupport.com

```
 1              THE COURT:  Well, let's do what I
 2    suggested.  I'll deny it without prejudice.  Let's
 3    see what this gets you.  It seems to me that's a lot
 4    of information, and I think you can make your point
 5    that he just wasn't near anybody, with you selecting
 6    some key people and making your point.  And if
 7    they've got somebody else that they think you were --
 8    that was near Mr. Baca, then they need to tell you
 9    that name.  But he will give you ten, so that you can
10    say he wasn't near this person, wasn't near this
11    person, wasn't near this person.  And if they're
12    going to come in and say, Yeah, but he was here,
13    they've got to give you that information.
14              MS. DUNCAN:  Understood.
15              So we have one last request, Your Honor,
16    that's still in dispute.  And that is, in March 2014,
17    shortly after the murder of Javier Molina, Mr. Baca
18    and other defendants were moved out of state to
19    out-of-state prison facilities.  At the time of their
20    transfer, then Department of Corrections Secretary
21    Gregg Marcantel held some public speeches.  First, to
22    Mr. Baca, Mr. Mauricio Varela, and I believe
23    Mr. Daniel Sanchez.  And then to a bunch of other
24    inmates who the Government alleges are SNM members,
25    where Mr. Marcantel was lecturing about he perceived
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to be their conduct, and what his expectations were

2    going to be in the future.

3              It's our understanding that --

4              THE COURT:  These were prompted by what?

5              MS. DUNCAN:  The murder of Javier Molina in

6    March 2014.

7              It's our understanding that these speeches

8    were video recorded as part of the Behind Bars

9    television A&E television series.  So we've asked for

10   production of those, the videos of Mr. Marcantel's

11   meeting with Mr. Baca and other alleged members of

12   SNM at PNM.  And this is relevant as Giglio.  We

13   expect Mr. Marcantel to testify, the alleged victim

14   of -- I believe it is Count 9 of the indictment.

15             So it's information that's relevant to

16   impeach whatever testimony he may give at trial.

17   Because it's our understanding from other discovery

18   during these speeches, Mr. Marcantel made disparaging

19   remarks about Mr. Baca and others.

20             THE COURT:  Mr. Beck, your thoughts?

21             MR. BECK:  Well, I guess I don't see where

22   it's impeachment information.  It seems like it would

23   be statements by Mr. Marcantel.  If he is a witness

24   in the Government's case, I understand how that would

25   be Jencks material.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Is he likely to testify?
 2            MR. BECK:  I don't think we've made that
 3    decision.  But, I mean, we haven't ruled it out.  So
 4    I think, at this point, maybe 51 percent.  So it's
 5    pretty close.  But he may be a witness.
 6            THE COURT:  In favor of testifying?
 7            MR. BECK:  Right, yes.
 8            MS. DUNCAN:  And, Your Honor, if I could
 9    just respond briefly.
10            THE COURT:  Did you have anything else?
11            MR. BECK:  I don't think -- no, you weren't
12    cutting me off.  I think I was done.  I guess I'm
13    trying to put myself, in Your Honor's words, in the
14    shoes of the defense attorney.  And I think Ms.
15    Duncan may help us with that.  But I don't see how
16    disparaging remarks about a defendant and a prisoner
17    would be impeachment information.  I guess it depends
18    on your view of impeachment information.  But I think
19    that's the Government's position is, if he testifies,
20    it's Jencks.  If not -- and I think it's -- if it was
21    on an A&E show, it seems like it could be gathered
22    from our sources.  But I would trust that they've
23    probably explored that.
24            So I think that's all I have to say.  I
25    think you begged me to go on longer than not.  I'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    sit down.
 2              THE COURT:  All right.  Thank you, Mr.
 3    Beck.
 4              MS. DUNCAN:  Your Honor, it's classic
 5    impeachment information.  It's a Government witness
 6    who is making biased statements against defendants in
 7    this case.  It shows his bias and his animosity.
 8              THE COURT:  What if they don't call him?
 9    Then what is it?
10              MS. DUNCAN:  Your Honor, then I think it's
11    relevant, it's potentially relevant to impeach other
12    Government witnesses.  So Mr. Roy Martinez was
13    present during the second meeting with the larger
14    group, and made statements about his feelings about
15    what Mr. Marcantel had said.  So having those
16    recordings potentially is impeachment of Mr. Martinez
17    about his representations about what happened during
18    that conversation, and also his reaction to Mr.
19    Marcantel's comments.
20              THE COURT:  How many of these lectures or
21    speeches were there?
22              MS. DUNCAN:  There were two.  So there was
23    one that was with Mr. Baca and the other men who are
24    being transferred to out-of-state prisons.  And then
25    the second one was with a big group of people who
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    were being left behind.  And I believe they were on
2    the same day.  It was March -- I don't have the date
3    in here -- but it was March of 2014.
4              MR. BECK:  Your Honor, I don't want to cut
5    into Ms. Duncan.  So I think some people at the table
6    are hearing what she's asking for.  We don't believe
7    that recordings, audio or video, exist.  We don't
8    believe A&E had begun recording at that point in
9    time.  So it may short-circuit to just say that it's
10   the position of the United States that it's not in
11   the United States' possession, including NMCD.  If
12   that changes, I will let Ms. Duncan and the Court
13   know, and we can come back.
14             MS. DUNCAN:  Your Honor, just to add, I
15   think it's possible that it was recorded by a
16   Department of Corrections administration.  It's my
17   understanding that there were recorders present.  So
18   I assumed it was part of A&E, and that may have been
19   a mistake on my part.  But I think, even if A&E
20   hadn't started filming, that it's still possible this
21   exists.  So I'd ask the Government inquire of the
22   Department of Corrections whether or not the
23   administration recorded this as well.
24             THE COURT:  Sounds like you're willing to
25   do that, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BECK:  Yes, Your Honor.
2              THE COURT:  And you'll let Ms. Duncan know?
3              MR. BECK:  I will.
4              THE COURT:  If they exist, at the present
5     time, I'm not going to require their disclosure.  I
6     think that it will be Jencks material, would have to
7     be disclosed with Jencks material, if Marcantel
8     testifies.I will ask you, if they exist, Mr. Beck, to
9     review them for any Giglio-Brady material.  I'm like
10    you, I'm kind of hard pressed to see how they would,
11    just visualizing it.  But look at them yourself, and
12    make a Rule 16, Giglio, Brady review, and see if
13    there is anything there.
14             MR. BECK:  If they do exist, I'm happy to
15    talk with Ms. Duncan about that inquiry also.
16             THE COURT:  All right.
17             MS. DUNCAN:  Your Honor, I think that was
18    the last item of dispute.
19             THE COURT:  All right.  Thank you, Ms.
20    Duncan.
21             There was no reply to your motion, was
22    there, Ms. Duncan?
23             MS. DUNCAN:  Yes, Your Honor, there was.
24    It is --
25             THE COURT:  Yes, okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            All right.  Do you want to argue, Mr.
 2   Lowry, your -- Mr. Baca's motion for a bill of
 3   particulars?
 4            MR. LOWRY:  Yes, I do, Your Honor.  And I
 5   heard Your Honor's comments earlier today that you
 6   hadn't -- given the way these were put on the
 7   schedule, you might not have devoted the full
 8   attention you normally do to these, so I don't know
 9   if Your Honor has any questions or if it's helpful
10   for me to run through some of the underlying evidence
11   to tee this up for you.
12            THE COURT:  Why don't you go ahead.  I've
13   looked at them, but I haven't been able to study them
14   like I normally do.
15            MR. LOWRY:  You know, before we start doing
16   this, Your Honor, could Mr. Beck and I approach, or
17   whoever is going to handle -- and this was, Your
18   Honor, part of the agreement about discussing CIs.  I
19   don't want to discuss anybody unnecessarily, so I
20   would ask to approach.
21            THE COURT:  Okay.
22            (The following proceedings were held at the
23   bench at 2:40 p.m.)
24            MR. LOWRY:  Your Honor, there is a few
25   pieces of evidence in State Police reports that we'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    discuss.  Eric Duran, I believe -- again, these are
 2    my -- I strongly believe this -- they were disclosed
 3    on the motion itself.  But I have one that's going to
 4    deal with Sammy Gonzales.  I think was a state police
 5    report.  And they've been disclosed in evidence.  But
 6    I believe in the motion on confidential informants
 7    that the Government indicated they weren't going to
 8    use Sammy Gonzales in the case.  So I don't want to
 9    say his name unnecessarily.  And if the Government
10    has any qualms about it, I'm not going to say that.
11    But I just want to make sure I'm not stepping out of
12    the bounds here, Your Honor.
13              THE COURT:  Do you have any thoughts about
14    what you want, Mr. Castellano?
15              MR. CASTELLANO:  If these are the only two
16    he's discussing -- I mean, for purposes of this
17    argument, we could just call them CW1 or 2 or CI-1,
18    CI-2.
19              MR. LOWRY:  I'll just refer to everybody as
20    a confidential human source, Your Honor.
21              THE COURT:  So you want to call Duran CI-1
22    and call Gonzales the CI-2.
23              MR. LOWRY:  And there might be a Jerry
24    Montoya in there as well.  I'll just -- as I refer to
25    different CIs, I'll just start in serial numbers.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.
 2              MR. LOWRY:  Don't hold me to that
 3    particular list.  But I won't mention anybody by
 4    name.
 5              THE COURT:  I'm going to need to know to
 6    make an informed decision.  I don't know if y'all
 7    want to give me a sheet of paper afterwards.
 8              MR. LOWRY:  I'll work with Mr. Castellano
 9    and we'll do that.
10              THE COURT:  Give me a sheet of paper like
11    we did in Chris Garcia's last week, so I can take it
12    back.
13              MR. LOWRY:  I'm fine to do that.  Thank
14    you.
15              (The following proceedings were held in
16    open court at 2:42 p.m.)
17              THE COURT:  All right.  Mr. Lowry.
18              MR. LOWRY:  As Ms. Johnson pointed out,
19    this motion for bill of particulars deals with three
20    evidentiary items.  And the first one is really how
21    to define what evidence constitutes an enterprise
22    here.  And the reason we requested a motion for a
23    bill of particulars to identify this is to eliminate
24    undue surprise at trial, and really try to clarify,
25    with some certainty, what the Government's theory of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the case is, so we can prepare a defense as to the

2    enterprise element.

3              So this is just an example of a pattern

4    instruction for VICAR crimes.  And you can see that

5    the Government bears the burden of proving the

6    existence of an enterprise.  And, as we've talked

7    about -- and it came up throughout a number of

8    motions today, even the 404(b) motion -- that one of

9    the things that's concerned the defendants from the

10   start, and what I've briefed here, Your Honor, is it

11   appears that what the Government is attempting to do

12   is establish the existence of an enterprise by merely

13   showing a pattern of racketeering activity.

14             And if you look at the United States

15   Supreme Court opinions, and even circuit opinions,

16   the cases are very clear that in a limited number of

17   circumstances, that's permissible.  But in a case

18   like this, it's not.  And we cite the Tenth Circuit

19   opinion in U.S. v. King, and even the Boyle opinion

20   there is a footnote -- I believe, it's Footnote 4 in

21   the Boyle opinion, which really says, Look, if you're

22   dealing with different individuals at different times

23   and different places, it's not enough just to show a

24   pattern of racketeering activity; that you really

25   need to set -- prove the enterprise separate in

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                      1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                           e-mail: info@litsupport.com

1    existence from that pattern.

2              And that's been an ongoing struggle in this

3    case to try to identify how or what enterprise the

4    Government is particularly talking about.  And this

5    starts even in the second superseding indictment

6    itself.  There is just not much in terms of clarity.

7    And if you look at this page -- it's paragraph 2 --

8    it says, "The SNM" --

9              THE COURT:  This is the indictment you're

10   showing me?

11             MR. LOWRY:  Yes, it is, Your Honor.  This

12   is Document 949, at page 2.  And this is sort of what

13   we see in terms of the definition of an enterprise.

14   And, you know, these are sort of the elemental pieces

15   of the enterprise definition:  "An ongoing

16   organization that functions as a continuing unit with

17   a common purpose."  What's left out of here is an

18   additional requirement that's set out by the United

19   States Supreme Court in Boyle, is that there be

20   interpersonal relationships between the memberships

21   in any kind of criminal enterprise.

22             So what the indictment went on to say --

23             THE COURT:  That's certainly been added to

24   the conspiracy.  Is it added to this as well?

25             MR. LOWRY:  Well, the 4268 -- well, okay,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    when you say "conspiracy," Your Honor, do you mean

 2    the 1613 conspiracy?

 3              THE COURT:  That additional element that

 4    you were asking.  That's an element of conspiracy,

 5    but has it been added to this as well?

 6              MR. LOWRY:  Well, this is the elements for

 7    the definition of an enterprise.  And so, with every

 8    VICAR count in 4268, these are the defining elements

 9    that the Government would need to prove.

10              It didn't give me a great deal of

11    satisfaction, but as I researched this issue, I don't

12    think the Government even bears the burden of proving

13    the existence of an enterprise in 1613.  Because,

14    when you look at RICO conspiracy under 1962(d), it's

15    just whether the parties reached an agreement.  It

16    doesn't even -- as long as there is agreement that's

17    reached, the existence or not of an enterprise

18    doesn't matter.

19              So when we talk about the conspiracy, I

20    just want to make sure we're seeing eye to eye on

21    which conspiracy we're talking about.  We're talking

22    about a conspiracy to commit a VICAR count, yes,

23    these are the elements that the Government would need

24    to prove, but not necessarily for the 1613 case.

25              So what concerned me in this matter is the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    part of the indictment that simply says that the SNM

2    is operated under a panel or mesa -- Spanish for

3    table -- of leaders, who issued orders to subordinate

4    gang members.  That's the way, Your Honor, the

5    Government indicted this case.  And this is what

6    apparently the Grand Jury had in mind when they

7    arrived at these VICAR crimes.

8            And this is important because it dovetails

9    with a lot of arguments you heard earlier from Mr.

10   Benjamin that, you know, are we here with appropriate

11   jurisdiction to listen to a federal criminal case,

12   rather than a string of state homicides?  So in doing

13   so, the Government is saying, Well, all of these

14   crimes, these activities were done as part of the SNM

15   enterprise.

16           Now, what started giving me some pause and

17   some concern was looking at the evidence in this

18   case.  And what we found, Your Honor -- and this is

19   attached to the motion -- and this is DeLeon Bates

20   No. 2665 -- is, as early as 2008, FBI Special Agent

21   Karen Kraft says that there is really four distinct

22   organizations of the SNM.  And she refers to them as

23   The Founders, The All Stars, The Old Timers and The

24   Rejects.  And it doesn't really bear on this motion,

25   but she goes through and identifies the various

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                         (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1    individuals she thinks are associated with each

 2    distinct group.

 3             THE COURT:  I've read that memo.  Who is

 4    the author of it?

 5             MR. LOWRY:  It was FBI Special Agent Karen

 6    Kraft, Your Honor.  And I believe we'll see in later

 7    302s that she worked with the prosecution team, and,

 8    in fact, worked with other members -- well, I'm

 9    assuming -- I don't know about members currently, but

10    she was one of the initial FBI agents assigned to

11    this way back when they opened the serial number on

12    the SNM, which I believe, Your Honor, was in 2008.

13             Now, this particular document, I believe,

14    Your Honor, is based in part on an FBI 302, again is

15    attached at DeLeon 16194.  And this was an interview

16    with a retired gang investigator from the Bernalillo

17    County Sheriff's Office, Robert Martinez.  And Robert

18    Martinez -- then retired -- talked about the SNM

19    organization and how it came about.  But the crux of

20    this, at page 3 of that -- and this is 16196 -- says

21    that "The organization started falling apart because

22    some of the very young inmates were given the

23    opportunity to run the SNM at prison facilities."

24    And he goes on to say -- and I'll characterize

25    this -- but he basically draws a distinction from a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    generational standpoint, that the younger inmates

2    coming into the facility didn't heed or didn't really

3    live up to the creed, if you will, of what they

4    believe the SNM to be, as alleged by the Government.

5           And one of the things I wanted to say here

6    at the onset of this, Your Honor, I'm going to refer

7    to the Government's discovery.  Just to keep me from

8    saying "as alleged by the Government," if we can

9    assume that; I don't want to concede the existence of

10   an enterprise called "the SNM."  But that's what the

11   Government has alleged.  And as I refer to these, I

12   don't want my shorthand version of a reference to be

13   misconstrued as a concession that an enterprise known

14   as "the SNM" actually exists.

15          But what Mr. Martinez says is -- again,

16   that one of the things that happened is separate

17   organizations started branching out, one known as The

18   All Stars.  And The All Stars operated in a

19   completely different fashion.  And he starts

20   describing this; "that they would tolerate,

21   apparently, anyone to order random hits without going

22   through any kind of structure or leadership

23   channels."  And in Mr. Martinez' words, the lack of

24   recruiting standards for what he believed to be the

25   original SNM enterprise, as alleged by the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Government, was the beginning of the demise of the

2   SNM.  And realize that this is in 2008, when he's

3   saying that this organization that the Government

4   believes exists as SNM had been falling apart,

5   fracturing, disintegrating into various subgroups,

6   which the FBI then described in the first exhibit as

7   attached to the memo as The Founders, The All Stars,

8   The Old Timers, and The Rejects.

9           THE COURT:  Could I finish reading that?

10  I'm a little slow there.

11          MR. LOWRY:  Sure, Your Honor.  And this is

12  attached to -- and again --

13          THE COURT:  Okay.

14          MR. LOWRY:  As you can see, Your Honor,

15  part of Mr. Martinez' assessment of the generational

16  discrepancies between alleged memberships and

17  members, was that, in his view, the olders -- The

18  Founders, if you will, would never cooperate with the

19  Government; whereas, the new kids on the block, for

20  lack of a better term, would cooperate with the

21  Government rather than being sent back to prison.

22          So this just continues through the

23  discovery.  And again, this is Exhibit 3 attached to

24  the motion, and if you look at Bates No. 15418 in the

25  DeLeon.  And this is a confidential human source that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the Government has redacted -- we'll refer to this as

2    CHS-1, Your Honor -- recognizes the existence of

3    these individualized cliques.  And this informant

4    says, "Currently, each SNM clique is giving its own

5    instructions for issuing hits, which is putting some

6    members in very compromising situations.  For

7    example, Archuleta is currently in a compromising

8    position within the SNM, because he issued an order

9    to hit SNM member, only known as Junior, without

10   approval from other SNM leaders."

11            Why these are critical, Your Honor, is it

12   goes to show one of the things we've been struggling

13   with is there is really no structure in this

14   allegedly described enterprise.  It's an

15   association-in-fact enterprise.  And there is no

16   structure because it has devolved into various

17   factions, subgroups, however you want to characterize

18   it, but it's not an overarching continuing unit with

19   interpersonal relationships as federal law requires.

20            To just drive home this point, Your Honor,

21   this is, again, a piece of discovery under DeLeon,

22   Bates No. 12963.  And I'll refer to this exhibit as

23   CI-2, where CI-2 -- this is dated March 17, 2014, and

24   this was an interview done by the Corrections

25   Department, in the wake of the Javier Molina murder.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   And this particular CI, who the Government said

2   they're not going to call as a witness, tells the New

3   Mexico Corrections Department that he was getting

4   tired of this SNM politics because nobody knew what

5   was going on, and there is no structure and

6   leadership.  And this is from somebody we believe who

7   was in the genre, perhaps, of a founding member.

8           So what you see throughout the discovery,

9   Your Honor, is a lack of distinct structures, a lack

10  of any kind of ability for an organization that's

11  characterized as an enterprise to operate, much less

12  operate as a continuing, functioning unit.  And

13  that's critical.  And that's exactly why we need a

14  bill of particulars in this case, Your Honor.

15          This all came to a head on November 28 at

16  the hearing to cordon off Mr. Baca in the courtroom.

17  The FBI testified -- and it's set out in the brief,

18  and I can put that up on the Elmo, if you'd like --

19  but they really had no idea -- they were questioned

20  on this idea that there was a tabla running the

21  alleged SNM criminal enterprise, as set forth in the

22  indictment.  And what the testimony was, that they

23  didn't know there was a tabla in 2015.  And when I

24  asked if there was tabla in 2014, they didn't know.

25  And what eventually was conceded is over various

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   periods of time, throughout the history of the
 2   organization, efforts were made to create this tabla
 3   and place individuals on it.  And as far as the exact
 4   time periods -- I can't give you the dates -- but at
 5   certain points, based on our understanding, that
 6   tabla did exist.
 7            Well, that is, in my view, Your Honor, far
 8   too vague, far too amorphous, far too nebulous to
 9   constitute the discrete, the definite, and certain
10   information that Mr. Baca needs to defend himself
11   against the allegation that a criminal enterprise,
12   known as the SNM, existed under the definition -- the
13   legal definition of an enterprise, that requires --
14   as we set forth in the brief -- requires at least
15   three critical elements.  It requires interpersonal
16   relationships between the members of the enterprise.
17   It requires that those individuals share a common
18   interest.  And, critically, it requires that those
19   individuals function as a continuing unit over time.
20            And what we've seen in the small tip of the
21   iceberg of the discovery is that simply was not the
22   case.  That this was a fractured -- you know, I hate
23   to use allegedly fractured organization, if you will,
24   that was comprised of subgroups.
25            In the Government's reply they describe the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  leadership as fluid, based on the exhibits we

2  described.  And that's exactly the problem, that we

3  can't go to trial under a mercurial, fluid, amorphous

4  set of facts, not knowing how or what the Government

5  is going to do to prove the existence of an

6  enterprise.

7          This sort of goes to the point Mr. Benjamin

8  was making in his argument for disclosure of the

9  Grand Jury testimony, is he wants to know how his

10  client could have done this particular act as part of

11  the enterprise.  And he was saying, rightfully so,

12  that he was afraid of his client getting tainted with

13  other predicate acts that the SNM has done in front

14  of a jury, because that jury will look unfavorably

15  towards his client after hearing a lot of prejudicial

16  evidence.

17          Well, the flip-side of that also holds

18  true, Your Honor.  Hypothetically, if one would

19  concede being a member of the SNM, that individual

20  doesn't necessarily want to get prejudiced by Mr.

21  Gallegos' actions that have nothing to do with the

22  SNM.So there is a problem here.  And I think all of

23  the defendants need to know exactly what kind of

24  enterprise we're talking about, in terms of how it

25  functions.  And just to say, as apparently the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Government is saying, that there is a pattern of
2    racketeering activity is insufficient under the law.
3    And we cited in our reply brief -- I believe it's the
4    case of Bailey, which another district court judge
5    did the same thing -- it's Bailey, at 689 F.Supp.
6    1463 -- that the judge in that case ordered a bill of
7    particulars to describe how an association-in-fact
8    enterprise functioned to give the defense an
9    opportunity to fashion and marshal its evidence.
10             Your Honor, one of the reasons I jumped up
11   when Ms. Duncan was arguing the motion to compel,
12   Your Honor, was saying, Well, why doesn't the defense
13   send a list of ten names over to the Government, so
14   the Government can have some sense of, you know, what
15   names you might think could have been involved in the
16   couriering of information.  And the point I'm making
17   in my reply brief, Your Honor, at page 3, is this
18   really isn't a defense burden.  And other courts have
19   so stated.  And again, Mr. Baca bears the presumption
20   of innocence.  And on page 3 -- this is the United
21   States v. JM Huber Corp., at 179 F.Supp. 570, and the
22   court -- I'm going to quote the court, "Being
23   presumed to be innocent, it must be assumed that he
24   is ignorant of the facts on which the pleader founds
25   his charges.  It must never be forgotten that what is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   sought by a bill of particulars is not what actually
 2   happened but what the opponent claims happened."
 3          And that's exactly where we stand in this
 4   case.  It's not enough for us to surmise or
 5   conjecture or guess, in order to defend Mr. Baca.  We
 6   need to know with certainty in more of a definitive
 7   nature of what or how the Government intends to show
 8   an association-in-fact over the course of years.
 9          THE COURT:  Well, but that's what I think
10   is the difference.  I don't disagree with what you
11   read about a bill of particulars.  You want to know
12   what they're charging.  But then you shifted it
13   slightly when you said:  What we need to know with
14   certainty is how they're going to show it.  Those are
15   two different things.  And that's the problem I'm
16   having with some of the defendants' requests, is the
17   theory seems pretty clear to me.
18          I mean, I've had cases where I can't figure
19   out what the Government is alleging.  But that
20   doesn't seem to be the case here.  It seems to be
21   these are being used more as discovery tools, in
22   various forms.  We've done different motions.  So
23   when you shifted it; you read the statement, then
24   shifted it, that's the problem I'm having today.
25          MR. LOWRY:  If I shifted, Your Honor, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

184

```
 1    apologize.  It wasn't intended to be a shift.
 2            My problem is this:  The Government clearly
 3    in the indictment says the SNM is run by a tabla.
 4    And when you put a Government agent on the stand
 5    under oath and saying:
 6            Was there a tabla in 2015?
 7            They say, I don't know.
 8            Was there one in 2014?
 9            I don't know.
10    THE COURT:  Well, let's say they don't have
11    any evidence of a tabla.  What do I do with that with
12    a bill of particulars?
13            MR. LOWRY:  Well, if they don't have any
14    evidence -- this is a very interesting point, Your
15    Honor, because when Mr. Benjamin asked for his Grand
16    Jury transcript, which the Government said, Well,
17    what he needs to do is ask for a bill of particulars.
18    Well, I'm up here asking for a bill of particulars.
19    But what you're describing is, if there is none, I
20    want to look.
21            THE COURT:  Put the Government's arguments
22    aside.  How is a bill of particulars going to help
23    you with the tabla?  If they're going to have
24    witnesses come in and agree that, at certain points,
25    particularly late in this -- in what they've alleged
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    is a racketeering enterprise, they didn't have an
 2    organization that looked like it did earlier in its
 3    existence, what do we do with that as far as a bill
 4    of particulars are concerned?
 5              MR. LOWRY:  Well, Your Honor, this is the
 6    problem:  What tabla?  For what organization are we
 7    talking about?
 8              Now, I don't doubt that the Government is
 9    going to come in with a series of confidential human
10    sources that say, at a certain particular time, there
11    was a tabla that existed in this institution, and
12    here's who was on the tabla.  Frankly, I've never
13    seen any continuity between CHSs on who was on the
14    tabla.
15              But we'll set that aside.  What you're
16    asking me is this discovery motion, I'm saying no,
17    but what we need to know with some certainty is,
18    there is a tabla.  But my question and my problem
19    with defending Mr. Baca is this -- and this is why I
20    think the identities of the people on the tabla is
21    critical, Your Honor -- was this a tabla for, quote,
22    "the SNM," allegedly, or was this a tabla for -- as
23    the FBI recognized, is this a tabla for the original
24    founders?  Or this is a tabla for The All Stars?  Or
25    is this a tabla for The Old Timers?  Or is this a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    tabla for The Rejects?  And the reason this is
 2    important is one of the -- Mr. Martinez describes in
 3    his memo in his statement to the FBI is The All
 4    Stars, for instance, had a motto, and their motto
 5    was -- no, I don't believe it was Mr. Martinez, but
 6    it's one of the exhibits, Your Honor; I can go get
 7    it.  But one of the confidential human sources told
 8    the FBI and told the Government that the motto of The
 9    All Stars was:  "In with the new and out with the
10    old."  And The All Stars had a mission which was to
11    kill, frankly, and put hits out on all of the
12    original founding members in The Old Timers, so they
13    could eliminate competition.
14              And so when we are talking about was there
15    a tabla, this is the crux of the problem.  A tabla
16    for who?  A tabla for what?  And there is a
17    difference between a tabla, just like I pointed out
18    in the motion.  There is a difference between being a
19    senator in the United States Congress and a senator
20    in the New Mexico Legislature.  And that's the
21    problem we have with this whole tabla concept.
22              THE COURT:  But, see, that sounds to me
23    more like a closing argument than it does a bill of
24    particulars.  I mean, it just sounds like you figured
25    out what you're going to argue to the jury, and tell
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    them that:  There is no organization here.  Everyone

2    in this room is just an individual, and there was no

3    organization at all.

4              MR. LOWRY:  Well, that may be true, Your

5    Honor.  But then that begs the question of how the

6    Grand Jury came to indict this case.  And if the

7    Grand Jury was confused or mislead or just befuddled

8    about what SNM organization they were cuing up for

9    criminal federal prosecution, you know, I would

10   wonder -- and what I see happening here is, frankly,

11   that may be an argument one can make to the jury.

12   But that also might be an argument one would want to

13   make a directed verdict.And I think what's going to

14   happen here is there is going to be a huge mishmash

15   of confusion.  And in order for Mr. Baca to present

16   an effective defense, we need to be on this today,

17   not as the trial develops, unfolds before us.  I

18   don't think this is going to be the type of thing

19   that, one -- I mean, we're already hearing about a

20   number of, you know, Jencks productions.  I think Mr.

21   Castle pointed out, and the Court recognized how

22   crushing this motions practice is going to be on the

23   eve of trial, as we're given Jencks Acts and other

24   things.

25              And what I hear the Court suggesting is,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Well, you can develop that during the course of the

2    trial.  Well, that's -- you know, just defending Mr.

3    Baca at this trial is going to take an inordinate

4    amount of energy and time.  And I would rather have

5    that kind of investigation done before trial starts,

6    not during the middle of trial.

7            So I don't -- again, if you look at the

8    case law, and you look at other judges have done just

9    this, saying:  We think a bill of particulars is

10   appropriate when we're talking about an

11   association-in-fact, because, as the United States

12   Supreme Court said, just establishing a series of

13   predicate acts isn't sufficient.  And especially not

14   sufficient here when you have predicate acts that

15   span over the course of, you know, some 15, 16, 17

16   years that involve wildly different groupings of

17   individuals that, as far as I can tell, have nothing

18   to do with each other over time, with their

19   particular predicate act.

20           So I would rather get some clarity on this,

21   Your Honor.  And I don't think it's really fair to

22   the defense to say, Well, we're not bound to give you

23   clarity.  You can do just what we do.  We just guess.

24   We just think it's fluid.  And you've just got to

25   roll with it.  I mean, to say it's fluid begs the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    question of whether the enterprise exists.
 2              THE COURT:  Well, isn't the reality,
 3    though -- I mean, I'm not the judge of the facts, but
 4    I mean, it sure seems to me that, as the men aged,
 5    The Founders, the organization changed.  And that
 6    doesn't strike me as startling observation.  That's
 7    often what happens in churches, nonprofits, prison
 8    gangs; you know, they change over time, and the young
 9    bucks sometimes toss out the older guys.  It happens
10    at law firms.
11              MR. LOWRY:  Don't say that, Your Honor.
12              So I guess, you know, you call it fluid.  I
13    just call it a bit of an evolution in the
14    organization, which is not unexpected over time.
15              MR. LOWRY:  Taking that analogy, Your
16    Honor, I think what I'm trying to suggest, at some
17    times the young bucks just say, We're not going to
18    stay at this law firm, and branch out and start their
19    own law firm.  And that's my concern here.  It's not
20    that --
21              THE COURT:  But how do I address it with a
22    bill of particulars?  I mean, what do I tell the
23    Government to do?  If they're going to be very open
24    about the fact that the organization has changed; at
25    one time there was more rigid structure, or a more
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    identifiable structure, how do I -- what do I --
 2    that's their theory.
 3              MR. LOWRY:  That's their theory, Your
 4    Honor.  But I think it's not enough to have a theory.
 5    And I hope the Grand Jury had more than a theory.  I
 6    would hope the Grand Jury had some evidence to back
 7    that theory up.
 8              THE COURT:  Let's do this:  I don't want to
 9    cut you off, but I'm under pressure from a Chief
10    Judge, and probably more important, from Ms. Wild, as
11    we got a big event here tonight in this building.
12    Everybody -- well, I can't say everybody is invited,
13    but --
14              MR. LOWRY:  Mr. Baca would love to be
15    there, Your Honor.
16              THE COURT:  I don't have enough food for
17    everybody.  But certainly the lawyers are invited,
18    and they've been told about it.  But I've got to --
19    the Chief didn't want me to go this afternoon, but I
20    did go this afternoon, so I'm pushing it.
21              Let's break, be back at 8:30 tomorrow.
22    I'll let you continue to make your argument.
23              Think about, though, what I'm saying.  I'm
24    trying to -- you know, I understand.  When we're
25    going after -- if you don't want to listen to me, at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    least let Ms. Bean hear -- we've really got to focus

2    on what I can do with a bill of particulars.  I mean,

3    I hope that people have picked up I'm sensitive to

4    trying to get information, evidence into the

5    defendants' hands.  But I'm having a little hard time

6    with some of these tools, whether it be bill of

7    particulars, Grand Jury, or other things that are

8    seen more as maybe discovery devices.  So think about

9    what a bill of particulars -- how it really helps you

10   with the situation here.

11          Let me ask a question.  If I could get

12   everybody's attention for a second.  Do we need the

13   Baca people tomorrow?  Is there -- I'm sitting here

14   looking at Mr. Lowry's motion here, and then we've

15   got one more that's the -- Mr. Benjamin's motion on

16   behalf of Mr. Gallegos to sever.  So it seems to me

17   that we're getting really into DeLeon stuff, and I'm

18   not seeing the Baca stuff.  I don't want to exclude

19   people that want to be here.  But is there anybody in

20   the Baca case that can foresee how the discussions

21   that I'm having with Mr. Lowry, I'm going to have

22   with Mr. Benjamin tomorrow on the motion to sever,

23   how the Baca people need to be here, want to be here?

24   Is there anybody that feels like they need to be here

25   for constitutional purposes or any other purpose?  I

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

```
 1   don't want to cut you loose.

 2              THE COURT:  Mr. Assed?

 3              MR. ASSED:  On behalf of Mr. Archuleta, I'd

 4   like to be here, Judge.

 5              THE COURT:  All right.  Let's just leave

 6   everybody here.  I don't think it's going to be a

 7   long day.  So let's just leave everybody coming back.

 8              Let me ask y'all to begin to think, though,

 9   because I'm going to stay working on this case for a

10   while.  Sorry, Ms. Sirignano, Mr. Adams, Mr. Garcia,

11   I'm going to put yours aside.  I'm going to work on

12   this case.  So be thinking of giving me a batting

13   order.  If you thought that there were some things I

14   was either tentative about, you want me to take a

15   closer look at, give me a batting order what you want

16   me to work on, so that when I leave here, we all

17   leave tomorrow, I know exactly what I need to do and

18   need to work on to give you as much guidance as I can

19   for the trial.

20              All right.  Mr. Jewkes?

21              MR. JEWKES:  And, Your Honor, I presume

22   that we are still scheduled for next week?

23              THE COURT:  Yes, we are.

24              MR. JEWKES:  On the 19th, on DeLeon.

25              THE COURT:  Let's leave it scheduled, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    let's let Ms. Wild sort that out with you.  I know
2    there are still a lot of motions here that were not
3    teed up.  So let's leave that in place for the time
4    being.
5            Did you have something, Mr. Cooper?
6            MR. COOPER:  I was just trying to listen.
7            THE COURT:  Just trying to listen.  All
8    right.
9            Mr. Lowry?
10           MR. LOWRY:  Your Honor, one housekeeping
11   matter.  Because we attached discovery to the 4268
12   motion, my bill of particulars motion, we filed it
13   under seal, may we share that particular set of
14   briefing with -- just briefs -- with the individual
15   parties in 1613?
16           THE COURT:  1613 would be the Baca case?
17           MR. LOWRY:  Yes, Your Honor.
18           MR. BECK:  We don't oppose that, Your
19   Honor.
20           THE COURT:  Okay.  All right.  Anything
21   else from the Government we need to discuss before we
22   take our break?  Ms. Armijo?
23           MS. ARMIJO:  No, Your Honor.
24           THE COURT:  Any other defendants for
25   tonight?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          See you at 8:30, then, tomorrow.  Have a

2    good evening.  Appreciate your hard work.

3          (The Court stood in recess.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on May 19, 2017.

15

16

17

18        _____
          Jennifer Bean, FAPR, RMR-RDR-CCR
19        Certified Realtime Reporter
          United States Court Reporter
20        NM CCR #94
          333 Lomas, Northwest
21        Albuquerque, New Mexico 87102
          Phone:   (505) 348-2283
22        Fax:     (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com