IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  15-cr-4268-JB

UNITED STATES OF AMERICA,

Plaintiff,

v.

ANGEL DELEON,
**JOE GALLEGOS**,
**EDWARD TROUP**,
**BILLY GARCIA**,
**ALLEN PATTERSON**,
**CHRISTOPHER CHAVEZ**,
**JAVIER ALONSO**,
**ARTURO ARNULFO GARCIA**,
**MARIO RODRIGUEZ**,
**MAURICIO VARELA**,
**DANIEL SANCHEZ**,
**CONRAD VILLEGAS**,
**ANTHONY RAY BACA**,
**CHRISTOPHER GARCIA**,
**CARLOS HERRERA**,
**RUDY PEREZ**,
**ANDREW GALLEGOS**,
SANTOS GONZALEZ,
**SHAUNA GUTIERREZ**, AND
**BRANDY RODRIGUEZ**.
              Defendants.

_____

**MOTION FOR TIMELY DISCOVERY OF *GIGLIO*
MATERIALS**

_____

Defendants Joe Gallegos, Edward Troup, Billy Garcia, Allen

Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez, and Brandy Rodriguez,  pursuant to Fed.R.Crim.P 16, *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), move this Court to enter an order directing the Government to forthwith make inquiry and disclose in a timely fashion all of the information described below:

The defense requests disclosure of all materials and information pertaining to any witness or informant the government intends to present at trial that is within its possession as outlined below.  Although the defense believes there is ample case law which would require such disclosure there is not universal agreement as to what constitutes discoverable materials.  It is with that uncertainty that this motion is filed.

In addition, the specificity of a defendant's request for *Brady* materials is a factor the court considers in the postconviction context. *United States v. Bagley,* 473 U.S. 667, 683, 105 S. Ct. 3375, 3384 (1985*)*. As such, the defense specifically requests the below listed categories of materials regarding the informant and lay witnesses.

This request extends to individuals who cooperated during the investigation of this case, any indicted codefendants who have made agreements with the government and any individual whose statements the government intends on offering as an exception or exclusion to the hearsay rule. This request extends to those materials in the custody and control of the prosecutors and members of their staff and any others who have participated in the investigation and evaluation of the above-entitled case and who either report to or with reference to this particular case, have reported to the Government, or the existence of which is known or by the exercise of due diligence could be made known to the above-described persons. See, e.g., United States Attorneys' Manual, §9-5.001 ("It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all members of the prosecution team. Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant), and Memorandum for Department Prosecutors, January 4, 2010, from Deputy Attorney General David W. Ogden, Guidance for Prosecutors Regarding Criminal Discovery ("prosecutors are encouraged to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes").

The United States Supreme Court recognizes the serious questions of credibility informers pose. See, e.g., *On Lee v. United States,* 343 U.S. 747, 757, 72 S. Ct. 967, 973 (1952)("The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility"). Jurors suspect informants' motives from the moment they hear about them in a case, and they frequently disregard their testimony altogether as highly untrustworthy and unreliable. *Ferrara v. United States*, 384 F. Supp. 2d 384, 427 (D. Mass. 2005)("It is well-known that the testimony of cooperating witnesses is inherently suspect and often not credited by juries because the witnesses are criminals with obvious incentives to lie to help themselves"). As Ninth Circuit [Senior] Judge Stephen Trott, a former United States Attorney and Assistant Attorney General in charge of the Criminal Division of the Department of Justice, has written:

> Criminals are likely to say and do almost anything to get what they want, especially when what they want is to get out of trouble with the law.
> …
> Jurors suspect their motives from the moment they hear about them in a case, and they frequently disregard their testimony altogether as highly untrustworthy and unreliable, openly expressing disgust with the prosecution for making deals with such "scum."

S. Trott, *Words of Warning for Prosecutors Using Criminals As Witnesses*, 47 Hastings L.J. 1381, 1383, 1385 (1996); *Ferrara v. United States*, 384 F. Supp. 2d at 427 (D. Mass. 2005).

As Judge Trott explains, "[t]his willingness to do anything includes not only truthfully spilling the beans on friends and relatives, but also lying, committing perjury, manufacturing evidence, soliciting others to corroborate their lies with more lies, and double-crossing anyone with whom they come into contact, including - and especially - the prosecutor. *Words of Warning for Prosecutors Using Criminals as Witnesses*, 47 Hastings L.J. 1381, 1383 (emphasis added). See also, Bennett L. Gershman, *Witness Coaching by Prosecutors*, 23 CARDOZO L. REV. 829, 847 (2002)("The cooperating witness is probably the most dangerous prosecution witness of all. No other witness has such an extraordinary incentive to lie. Furthermore, no other witness has the capacity to manipulate, mislead, and deceive his investigative and prosecutorial handlers …").

The Supreme Court therefore allows defendants broad latitude to probe informants' credibility by cross-examination and counsel submission of the credibility issue to the jury with careful instructions. *Banks v. Dretke*, 540 U.S. 668, 701-702 (U.S. 2004), *United States v. Halbert*, 668 F.2d 489,

496 (10th Cir. Kan. 1982). Indeed, the Tenth Circuit's Criminal Pattern Jury

Instructions (2017), 1.14 provides that:

> You must examine and weigh an informant's testimony with
> greater care than the testimony of an ordinary witness. You
> must determine whether the informant's testimony has been
> affected by self-interest, by an agreement he has with the
> government, by his own interest in the outcome of the case, or
> by prejudice against the defendant.

The information requested is as follows:

1.    NAME AND LAST KNOWN ADDRESS

The defense seeks the last known address of any witness.[1] See, *United*

*States v. Napue*, 834 F.2d 1311 (7th Cir. 1987); *United States v. Tucker*, 716

F.2d 576 (9th Cir. 1983) (failure to interview government witness ineffective

assistance of counsel); *United States v. Cook*, 608 F.2d 1175, 1181 (9th Cir.

1979) (defense has equal right to talk to witnesses); *United States v. Cadet*,

727 F.2d 1453, 1469 (9th Cir. 1984); *Kines v. Butterworth*, 669 F.2d 6 (1st

Cir. 1981)("[t]he equal right of the prosecution and the defense in criminal

proceedings to interview witnesses before trial is clearly recognized by the

courts").

---

[1] For the purpose of this motion the term "witness" refers to any non-law
enforcement individual who the prosecution intends on calling as a witness at trial or
whose statement they are seeking to admit under an exclusion or exception to the hearsay
rule.

Part of the government's claims in this case are that many of the defendants have confided details of the crimes to their fellow inmates. Just as the government interviewed inmates that lived with the defendants to obtain information, the defendants wish to interview the inmates who live with the government's witnesses. If the government claims that the witness is under protection, the government should make a showing to the Court why counsel cannot be trusted with the address.

2.    GUILTY VERDICTS, JUVENILE AND ADJUDICATION OR OTHER BAD ACTS.

This request includes but is not limited to relevant docket numbers and the jurisdiction of pending or past cases. F.R.E. 609. Discovery extends to production of "rap sheets", *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980); *United States v. Leichtfuss*, 331 F.Supp. 723, 736 (N.D. Ill. 1971); see, *United States v. Alvarez-Lopez*, 559 F.2d 1155 (9th Cir. 1977), and includes evidence that a prospective witness is under investigation by federal, state or local authorities for criminal conduct.  *United States v. Chitty*, 760 F.2d 425, 428 (2nd Cir. 1985). F.R.E. 608(b), in some instances, allows cross-examination of witnesses as to specific instances of misconduct, even though such behavior did not result in a felony conviction or arrest.  Acts which involve deceit, fraud or false statements, or impeaches the witness' truthfulness, or shows motive, intent, knowledge, common

7

scheme or plan etc., are subject to disclosure. *United States v. Beltran-Garcia*, 338 Fed. Appx. 765, 770 (10th Cir. 2009) ("Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness."); see also, *United States v. Huerta-Rodriguez*, No. CR 09-3206 JB, 2010 U.S. Dist. LEXIS 91589, at *21 (D.N.M. Aug. 12, 2010).

Prior bad acts of witnesses of which the Government is aware clearly implicates the Government's disclosure obligations under *Giglio*. *United States v. Lujan*, 530 F. Supp. 2d 1224, 1249 (D.N.M. 2008)

3.   CONSIDERATION

Promises of consideration whether express or implied, including leniency, favorable treatment or recommendations with respect to any pending or potential criminal, civil, tax court, administrative or other matter, or payments of money, fee or rewards to the witness must be disclosed. *United States v. Reid*, No. 91-5140, 1992 U.S. App. LEXIS 11525, at *13 (10th Cir. May 12, 1992) (*citing A Prosecutor's Duty to Disclose Promises of Favorable Treatment Made to Witnesses for the Prosecution*, 94 Harv. L. Rev. 887, 891 (1981)); *United States v. Shaffer*, 789 F.2d 682 (9th Cir. 1986); *United States v. Gerard*, 491 F.2d 1300 (9th Cir. 1974); *United States*

*v. Pope*, 529 F.2d 112 (9th Cir. 1976).  This includes advice concerning any

contemplated prosecution, or possible plea bargain, even if no bargain was

made.  *Brown v. Dugger*, 831 F.2d 1547, 1558 (11th Cir. 1986)(evidence

that witness sought plea bargain is to be disclosed, even if no deal struck);

*Haber v. Wainwright*, 756 F.2d 1520, 1524 (11th Cir. 1985); *Greene v.*

*Wainwright*, 634 F.2d 272, 276 (5th Cir. Jan. 1981) ("Whether or not such a

deal existed is not crucial.").

The defense is also seeking disclosure of promises or other

inducement to cooperate and testify against the defendant.  The duty to

disclose such information is an affirmative one. *Giglio v. United States*, 405

U.S. 150 (1972). The obligation to disclose information covered by the

*Brady* and *Giglio* rules exists without regard to whether that information has

been recorded in tangible form. *United States v. Rodriguez*, 496 F.3d 221,

226 (2d Cir. 2007). Thus, promises or inducements that were only made

orally must also be disclosed.

The prosecution must exercise due diligence to determine what

consideration its witnesses have received or expect to receive and to disclose

this information. This includes the total compensation or benefits paid to or

expected by each witness and the source thereof; see, e.g., *Banks v. Dretke*,

540 U.S. 668, 697-98, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004); *United*

*States v. Leja*, 568 F.2d 493 (6th Cir. 1977); *United States v. Partin*, 493 F.2d 750, 757-60 (5th Cir. 1974), *cert. denied*, 434 U.S. 903 (1977); any beneficial treatment in tax, e.g. 21 U.S.C. Sec. 7122 and 7623, or administrative matters, e.g., *United States v. Wolfson*, 437 F.2d 862, 874-75 (2d Cir. 1970); any business assistance, e.g., *Azbill v. Pogue*, 534 F.2d 195 (9th Cir. 1976); grants of immunity, e.g. *United States v. Dillard*, 419 F.Supp. 1000 (N.D. Ill. 1976); relief from forfeiture, e.g., *United States v. Parness*, 408 F.Supp. 440, 444-45 (S.D.N.Y. 1975); placement in protective custody, e.g. *United States v. Librach*, 520 F.2d 550 (9th Cir. 1975), cert. denied, 429 U.S. 939 (1976); special treatment while in custody, e.g, *Chavis v. North Carolina*, 637 F.2d 213, 225-26 (4th Cir. 1980); benefits associated with witness' status as an informer, e.g. *United States v. Disston*, 582 F.2d 1108 (7th Cir. 1978); *United States v. Mele*, 462 F.2d 918 (2d Cir. 1972).

4.    BIAS, MOTIVE OR INTEREST

The prosecution must disclose known sources of a witness's bias, motive or interest.  *Douglas v. Workman*, 560 F.3d 1156, 1172-73 (10th Cir. 2009)("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [State's] witnesses by showing bias and interest.'")(quoting *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985));

*Pennsylvania v. Ritchie*, 480 U. S. 39 (1987); *United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988). The constitutional right to cross-examination of one's accusers for such bias and motive would be hollow indeed if the Government possesses such  information concerning its own witnesses and does not disclose it.  *Davis v. Alaska*, 415 U.S. 308, 315 (1974); *United States v. Ray*, 731 F.2d 1361, 1364 (9th Cir. 1984); *Chipman v. Mercer*, 628 F.2d 528 (9th Cir. 1980); *Patterson v. McCarthy*, 581 F.2d 220 (9th Cir. 1978).  This includes information of any or ongoing investigations in which any witness was or is involved as an informant, confidential or otherwise, witness or provider of information. *United States v. Shaffer*, 789 F.2d 682, 689 (9th Cir. 1986).

See also, *United States v. Bontkowski*, 49 F.Supp.2d 1075 (N.D.Ill. 1999)("…the government is ordered to produce … any known bias or prejudice of witnesses towards [the defendant]"), U*nited States v. Owens*, 933 F.Supp. 76 (D.Mass. 1996)("All documents which tend to show the bias, prejudice, personal interest of any government witness to testify in favor of the government or against any defendant, and any documents which tend to show a special relationship of the witness or hostility of the witness either to any other government witness or to any of the defendants in a trial").

5.    THREATS

Any threats expressed or implied, direct or indirect, whether coercively made or directed against any witness in the form of criminal prosecutions, investigations, or potential prosecutions pending.  If during plea agreement discussions with a cooperating witness, *Brady* material is revealed, the prosecution must disclose it. *United States v. Dupuy*, 760 F.2d 1492 (9th Cir. 1975).  A defendant is entitled to be advised of any matter which might cause a witness to color his testimony in favor of the Government out of fear or interest is self-preservation. See, e.g., *United States v. Sutton*, 542 F.2d 1239 (4th Cir. 1976) (error not to disclose threat by F.B.I. agent to prosecute witness which was intended to induce witness' cooperation); *Barnard v. United States*, 342 F.2d 309, 314-17 (9th Cir. 1975)(error to preclude full exposure of events surrounding the bringing of an additional charge); *United States v. Bontkowski*, 49 F.Supp.2d 1075 (N.D.Ill. 1999)("…the government is ordered to produce … consequences of not testifying communicated to witnesses"), *United States v. Sutton*, 542 F.2d 1239, 1242 (4th Cir.1976)("no difference between concealment of a promise of leniency and concealment of a threat to prosecute"), *United States v. Chit*ty, 760 F.2d 425 (2nd Cir.1985) ("Not disclosed to defense counsel, however, was the fact that [the witness] had been notified that he

was the target of an investigation by the United States Attorney's office. The information that [he] had been told that he was under investigation was discloseable pursuant to *Brady* [and] *Giglio*, … [as] it provided a motive to testify favorably to the Government, and the fact was known to the prosecutor's office"), *United States v. Cody*, 722 F.2d 1052 (2nd Cir. 1983)(where "[o]ne of the agents began to argue with [the witness] and apparently lost his temper saying that if [the witness] did not follow instructions he would throw [him] out the window or inform [the defendant] that [he] was an informant …. it would have been better for the government to disclose the threats since they did bear upon [the witness'] credibility").

Evidence of a witness's wrongdoing, even though not amounting to a felony conviction or involving elements of moral turpitude or bad character, may nonetheless be introduced when relevant to show the bias or self-interest of the witness.  See, e.g. *Huerta-Rodriguez,* supra; *United States v. Alvarez-Lopez*, 559 F.2d 1155 (9th Cir. 1977); *Green v. Wainwright*, 634 F.2d 272 (5th Cir 1981). This request includes information concerning the witness' vulnerability to prosecution, parole or probation revocation, or other sanction.  In *United States v. Bonanno*, 430 F.2d 1060 (2d Cir. 1970), cert. denied, 400 U.S. 964 (1971), the court condemned the Government's failure to disclose an outstanding indictment against a witness since the

pendency of the charge would have shown "possible motivation of the

witness to testify favorably for the Government." Id., at 1062.  See, also,

*United States v. Padgent,* 432 F.2d 701 (2d Cir. 1970).  See, also, *United*

*States v. Crumley*, 565 F.2d 945-50 (5th Cir. 1978); *United States v. Gerard*,

491 F.2d 1300, 1304 (9th Cir. 1974).

6.    PRIOR TESTIMONY

The existence and identification of each occasion on which a witness

has testified before any court, grand jury, or other tribunal body or made

other statements must be disclosed so defendant can order transcripts of

testimony for use in cross-examination, or investigate sources or extrinsic

impeachment.  C.R.E. 801 (d)(1) and 806.  If the Government has

information which may lead to proof of prior inconsistent statements or

other evidence helpful to defendant, fundamental fairness requires that it be

turned over to the defense without further delay. 18 U.S.C. § 3500(b);  see

also, *Davis v. Heyd*, 479 F.2d 446 (5th Cir. 1973); see also *United States v.*

*Glover*, CIVIL ACTION, No: 98-10059-01-JWL, 1998 U.S. Dist. LEXIS

14437, at *12 (D. Kan. Sep. 1, 1998).

7.    INTERNAL LAW ENFORCEMENT FILES

Any and all impeaching information contained in any federal and

local Government files (or computer information) maintained concerning the

witness. In *United States v. Morell*, 524 F.2d 550, 552-55 (2d Cir. 1975), the Court of Appeals held that the defense was entitled to impeachment information in the confidential file of an informant witness.  See also, *United States v. Ramirez*, No. 94-4191, 1995 U.S. App. LEXIS 29714, at *10 (10th Cir. Oct. 19, 1995) *United States v. Beekman*, 155 F.2d 580 (2d Cir. 1946).

8.     COMPETENCY AND MENTAL ILLNESS

Information which impeaches a witness' competency and his capacity and opportunity to observe, remember, recall and narrate as well as his character for veracity, partiality and evidence of "basic mental trouble" can not be suppressed and must be disclosed. *Wiman v. Powell*, 293 F.2d 605, 606 (5th Cir. 1961); *Powell v. Wiman*, 287 F.2d 275, 278-79 (5th Cir. 1961). See also *United States v. Robinson*, 583 F.3d 1265, 1274-75 (10th Cir. 2009) (Evidence that a confidential informant has suffered from auditory hallucinations and saw "things out through the window that are not really there" was relevant because it would have "provide[d] some significant help to the jury in its efforts to evaluate the [CI's] ability to perceive or to recall events or to testify accurately." Evidence of illegal drug use and the informant's mental condition are the basis of impeaching and exculpatory information and therefore subject to *Brady*.  *United States v. Robinson*, 583

F.3d 1265(10th Cir. Kan. 2009), *United States v. Ganadonegro*, 2012 U.S.
Dist. LEXIS 49799 (D.N.M. Apr. 4, 2012).

Any medical, psychological or psychiatric evidence tending to show
that any informant's ability to perceive, remember, communicate, or tell the
truth is impaired. See *United States v. Lindstrom*, 698 F.2d 1154, 1163-68
(11th Cir. 1983) (psychiatric records relevant to credibility); *Chavis,* supra,
637 F.2d at 224 (psychiatric records reflecting on the competency or
credibility of witness); *United States v. McFarland*, 371 F.2d 701, 705 (2nd
Cir.) (prior hospitalizations of witness for mental illness), cert. denied, 387
U.S. 906 (1966). *Powell v. Wiman*, 287 F.2d 275, 279 (5th Cir. 1961)
(same).

9.    FALSE OR INCONSISTENT STATEMENTS

False or erroneous statements, whether under oath or penalty of
perjury, or evidence that any witness does not have a good reputation in the
community for honesty are discoverable, see, *United States v. Strifler*, 851
F.2d 1197 (9th Cir. 1988), or any evidence of contradictory or inconsistent
statements with regard to this case or any statement showing of bias or
motive to fabricate. *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *United
States v. Hibler*, 463 F.2d 455 (9th Cir. 1972); *United States v. Minsky*, 963
F.2d 870, 874-77 (6th Cir. 1992)(error not to disclose witness's statement to

F.B.I. contradicted by third party); *Hudson v. Blackburn*, 601 F.2d 785, 789

(5th Cir. 1979) (statement of police officer refuting witness' statement that

he identified defendant at lineup); *United States v. Hibler*, 463 F.2d 455, 460

(9th Cir. 1972) (statement of police officer casting doubt on story of

witness); United States v. Owens, supra ("The government is required to

reveal any evidence that it has of prior bad acts which go to the reputation of

the witness for truth or veracity or any specific acts which point to the

witness having lied on other occasions"), *United States v. Strifler*, 851 F.2d

1197 (9th Cir. 1988)(witness' probation file, which contained "among other

things, probation reports showing a tendency in [the witness] to

'overcompensate' for actual or perceived problems; [and] …reports of

repeated instances of [the witness] lying to authorities …would have

provided a basis for impeaching [the witness]").

Specifically included in this request are statements made by any

witness which contradicts a statement made by any other witness as such are

conflicting and can be used to cast doubt on the credibility of one or both

witnesses.

10.   POLYGRAPH TESTS

Oral and written results of any polygraph test administered to any

witness whether by the prosecution or the F.B.I. for the witness protection

program.  See, e.g.,*United States v. Bontkowski*, 49 F.Supp.2d 1075 (N.D.Ill. 1999)("…the government is ordered to produce … information regarding polygraph examinations of witnesses relating to their testimony"), *United States v. Patino*, 991 F.Supp. 1449 (1997)("[f]ailure to disclose material exculpatory or impeachment evidence contained in the narrative portion of [a] polygraph examination report is error").

Defendant also asks for evidence of any refusals by the witness to take a polygraph test.  *Carter v. Rafferty*, 826 F.2d 1299 (3rd Cir. 1987).

11.   PRIOR INFORMANT ACTIVITY

Evidence that a government informant had acted as an informant on prior occasions is material.  *United States v. Torres*, 569 F.3d 1277 (10th Cir. 2009).  The informant's history and pattern of criminal activity and misconduct serve to illustrate the methods normally employed by the informant to achieve his goals. Such evidence "might easily extend beyond that of mere impeachment."  See *United States v. Espinosa-Hernandez*, 918 F2d 911, 914 (11th Cir. 1990).

In *United States v. Brumel-Alvarez*, 991 F2d 1452, 1465 (9th Cir. 1992), the court held that the failure to disclose an internal DEA memorandum regarding the informant's conduct, which impeached the informant's credibility, was reversible error under *Brady*.

18

12.    PRIOR PLACEMENT RECORDS

For all inmate informants that either indicate they were a percipient witness or overheard admissions by any defendant, placement records must be produced so that the defense can determine whether or not the inmate informant was in a position to have perceived or overheard what they claim to have witnessed.

13.    OTHER

All information within the possession of the Government or in computer files to which the Government has access concerning:

(a)    All records of complaints lodged by or on behalf of the witness while incarcerated and records indicating any disciplinary action, placement in security cell or isolation, belief that the witness might be a security risk and or transfers and the reasons therefore while incarcerated;

(b)    Information and data provided and action thereon if the witness has applied for acceptance into any witness protection program.

(c)    Any reduction, modification in or special terms of sentence for the witness attributed to the witness' cooperation with the Government;

(d)    Any sentence, reduction or modification of sentence which does not conform to the law in existence at the time of the sentence

reduction, along with all information regarding unreported meeting between the sentencing, modifying judge and the Government or the witness;

(e)     Any and all correspondence or other communication between the sentencing, modifying or reducing judge and the Government and or witness regarding the sentence, modification or reduction;

(f)     Information regarding instances of use of controlled substances;

(g)     Any and all information that the witness has recanted their statement or indicated that they were not willing to testify consistent with the statement made inculpating a defendant; and

(h)     Any indication that a witness, after cooperating with the government, went back and cooperated with any defendant or target of the criminal investigation.


## CONSULTATION WITH THE COURT

Consultation with the judge is particularly appropriate when the Government has legitimate reasons for protecting the confidentiality of the material requested, for the trial judge can then weigh the Government's need for confidentiality against the defendant's need to use the material in order to obtain a fair trial. *United States v. Bocra*, 623 F.2d 281, 285 (3d Cir. 1980);

*United States v. Dupuy*, 760 F.2d 1492, 1501 (9th Cir. 1985); *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *United States v. Phillips*, 854 F.2d 273 (7th Cir. 1988)(court examined entire contents of FBI informant file to determine if government summary was accurate and complete); *Application of Storer Communications, Inc*, 828 F.2d 330 (6th Cir. 1987)(case remanded for in camera inspection of prosecutor's files); *United States v. Gaston*, 608 F.2d 607 (5th Cir. 1979) (FBI reports of interviews of government witnesses).

The defense, generally, opposes procedures in which they cannot participate.  However, authority does exist for such procedures.

If the government has a question concerning the need for disclosure or protection concerns such should be brought to the attention of the Court for resolution. See, Trott, *Words of Warning for Prosecutors Using Criminals as Witnesses*, 47 Hastings L.J. 1381, 1415-1416 ("If you have any doubt about a piece of evidence, that very doubt should cause you to seek a pretrial *Brady* ruling from the court, ex parte, in camera if possible."

Caution should be used in utilizing an *ex parte* showing regarding risks associated with disclosure.  For example, many of the defendants were living law abiding lives in the community at the time of the issuance of the initial indictment.  Claims that these defendants pose an ongoing risk should be the subject of an adversary hearing.

POSITION OF THE PARTIES

The motion is filed on behalf of defendants Joe Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher Chavez, Javier Alonso, Arturo Arnulfo Garcia, Mario Rodriguez, Mauricio Varela, Daniel Sanchez, Conrad Villegas, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, Rudy Perez, Andrew Gallegos, Shauna Gutierrez, and Brandy Rodriguez. Defendant Santos Gonzalez does not object.  The government objects.

WHEREFORE, the defense requests the Court order the government to comply with its discovery obligations, as outlined above, as soon as practicable with leave to file specific objections to the disclosure of specified materials on a showing of a need for a protective order.

Submitted this 24th day of May, 2017.

/s/ Jim Castle
Robert Cooper
Jim Castle
Attorneys for Billy Garcia (5)

/s/ Brock Benjamin
Brock Benjamin
Rick Sindel
Attorneys for Joe Gallegos

/s/ Cori Harbour-Valdez
Cori Harbour-Valdez
Pat Burke
Attorneys for Edward Troup

<u>/s/ Jeff Lahann</u>
Jeff Lahann
Attorney for Allen Patterson

<u>/s/ Orlando Mondragon</u>
Orlando Mondragon
John Granberg
Attorneys for Christopher Chavez

<u>/s/ Noel Orquiz</u>
Noel Orquiz
Nate Chambers
Attorneys for Javier Alonso

<u>/s/ Billy Blackburn</u>
Billy Blackburn
Scott Davidson
Attorneys for Arturo Arnulfo Garcia

<u>/s/ Santiago Hernandez</u>
Santiago Hernandez
Steven Potolsky
Attorneys for Mario Rodriguez

<u>/s/ Mary Stillinger</u>
Mary Stillinger
Joe Spencer
Attorneys for Mauricio Varela

<u>/s/ Richard Jewkes</u>
Richard Jewkes
Amy Jacks
Attorneys for Daniel Sanchez

<u>/s/ B.J. Crow</u>
B.J. Crow
Attorney for Conrad Villegas

<u>/s/ Marc Lowry</u>

Marc Lowry
Teri Duncan
Attorneys for Anthony Ray Baca

/s/ Amy Sirignano
Amy Sirignano
Chris Adams
Attorneys for Christopher Garcia

/s/ Michael Davis
Michael Davis
Carey Bhalla
Attorneys for Carlos Herrera

/s/ Ryan Villa
Ryan Villa
Justine Fox-Young
Attorneys for Rudy Perez

/s/ Donavon Roberts
Donavon Roberts
Attorney for Andrew Gallegos

/s/ Angela Arellanes
Angela Arellanes
Attorney for Shauna Gutierrez

/s/ Alfred Creecy
Alfred Creecy
Attorney for Brandy Rodriguez


## CERTIFICATE OF SERVICE

I hereby certify that on May, 2017, I presented the foregoing to the Clerk of
the Court for filing and uploading to the CM/ECF system which will send
notification of such filing to counsel of record.

/s/ James A. Castle