IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CRIMINAL NO.   15-4268 JB |
| | ) |
| ANGEL DELEON, et al., | ) |
| | ) |
| Defendants. | ) |

**THE UNITED STATES' RESPONSE TO DEFENDANTS' MOTION FOR TIMELY DISCOVERY OF *GIGLIO* MATERIALS [Doc. 1163]**

At the Omnibus Motions hearing in these matters on May 9-11, 2017, the Court ordered the United States to disclose, under *Giglio v. United* States, 405 U.S. 150 (1972), impeachment evidence immediately. The Court concluded that timing of disclosure under *Giglio* is identical to that for *Brady v. Maryland*, 373 U.S. 83 (1963). At the Motions Hearing on May 19, 2017, the Court noted the distinction between *Giglio* materials and statements under Jencks, of which he did not require early production.

Given those rulings, the United States does not oppose many of Defendants' requests, as they request information that the United States concedes may be properly considered *Giglio* materials. The United States opposes, however, Defendants' request for confidential competency and mental illness records, as those materials are protected from the United States' access and it, thus, cannot produce them. The United States will not produce the last known address of its witnesses, as that information does not come within *Gilgio* materials. The United States does not have materials responsive to many of Defendants' requests, as explained below. Otherwise, the United States doesn't oppose the Defendants' Motion for Timely Discovery of *Giglio* Materials [Doc. 1163] ("Motion").

## **LEGAL AUTHORITIES**

This Court recognized that the Supreme Court held that the Constitution does not require "'preguilty plea disclosure of impeachment information.'" *United States v. DeLeon*, No. CR 15-4268 JB, Mem'm Opinion and Order [Doc. 907] at 60 (D.N.M. Feb. 8, 2017) (Browning, J.) ("MOO") (quoting *United States v. Ruiz*, 536 U.S. 622, 629 (2002) ("We must decide whether the Constitution requires the preguilty plea disclosure of impeachment information. We conclude that it does not.")). The Supreme Court reached this conclusion, because "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is voluntary." *Ruiz*, 536 U.S. at 629 (emphasis in original). *See* MOO at 60 (quoting the same).

The United States Court of Appeals for the Tenth Circuit pointed out that the Supreme Court in *Ruiz* "explained that impeachment evidence differs from exculpatory evidence in that it is not 'critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant.'" *United States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005) (unpublished) (quoting *Ruiz*, 536 U.S. at 630). In *Ohiri*, the Tenth Circuit reversed the district court's denial of the § 2255 motion, because the defendant alleged that the United States withheld *Brady*-type exculpatory evidence before he pleaded guilty. *See id.* ("[T]he evidence withheld by the prosecution in this case is alleged to be exculpatory, and not just impeachment, evidence."). In reversing the district court, the Tenth Circuit's distinction of the facts from those in *Ruiz* suggest that the timing of disclosure of *Giglio* impeachment evidence and *Brady* exculpatory evidence differs in that *Brady* exculpatory evidence must be disclosed earlier than *Giglio* evidence:

> By holding in *Ruiz* that the government committed no due process violation by requiring a defendant to waive her right to impeachment evidence before indictment in order to accept a fast-track plea, the Supreme Court did not imply

> that the government may avoid the consequence of a *Brady* violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession.

*Ohiri*, 133 F. App'x at 562.

And this Court has recognized the Tenth Circuit's distinction in its treatment of *Brady* exculpatory evidence and *Giglio* impeachment evidence. *See* MOO at 61-62 ("The Tenth Circuit has held, however, that *United States v. Ruiz* does not apply to exculpatory evidence, but rather applies only to impeachment evidence . . . ."); *United States v. Baca*, No. CR 16-1613 JB, 2016 WL 6404772, at *27 (D.N.M. Oct. 20, 2016) (Browning, J.) (same).

The United States District Court for the District of New Mexico has recognized that the distinction between timing of disclosure of *Giglio* impeachment evidence and *Brady* exculpatory evidence finds support on two recognized grounds: (i) the use to which such information will be put; and (ii) the safety concerns of government witnesses.

The Honorable Robert C. Brack, United States District Judge for the District of New Mexico, pointed out that both of these grounds play into "[t]he precise time at which *Brady* or *Giglio* evidence must be disclosed." *United States v. Lujan*, 530 F. Supp. 2d 1224, 1255 (D.N.M. 2008) (Brack, J.). In relation to the use to which the information will be put, Judge Brack explained that the necessary investigation for *Brady* exculpatory evidence provides the rationale for disclosure of such exculpatory information "well before pure *Giglio* impeachment evidence, which usually does not require substantial time to prepare for its effective use at trial." *Id.* (citing *United States v. Beckford*, 962 F. Supp. 780, 788-89 (E.D. Va. 1997)). Second, in relation to the safety concerns of government witnesses that inheres in disclosure of *Giglio* impeachment evidence, Judge Brack recognized that "[d]isclosure of *Giglio* material often identifies the witnesses to whom the material relates, and therefore, the court must take into account the risk to

witnesses in early disclosure of *Giglio* evidence." *Id.* at 1256. *See also Beckford*, 962 F. Supp. at 794 ("[P]remature, *wholesale* disclosure of witness statements, even those containing exculpatory or impeachment information, would vitiate an important function of the *Jencks* Act -- the protection of Government witness from influence, threats, harassment, and physical harm." (citing, among others, *United States v. Presser*, 844 F. 2d 1275, 1285 (6th Cir. 1988); *United States v. Thevis*, 84 F.R.D. 47, 53 (N.D. Ga. 1979); *United States v. Stroop*, 121 F.R.D. 269, 275 (E.D.N.C. 1988))).

"It is an open question in this circuit, and there is a conflict among the circuits, as to the timing of disclosure of witness statements subject to the Jencks Act that also meet the *Brady* criteria." *Lujan*, 530 F. Supp. 2d at 1256 (citing *McVeigh*, 923 F. Supp. at 1414 n.11, 1416). The United States Court of Appeals for the D.C. Circuit, faced with the same question, concluded that a balancing approach was the proper analysis for disclosure's timing:

> [A]pplication of a strict rule in this area would inevitably produce some situations in which late disclosure would emasculate the effects of *Brady* or other situations in which premature disclosure would unnecessarily encourage those dangers that militate against extensive discovery in criminal cases, e.g. potential for manufacture of defense evidence or bribing of witnesses. Courts can do little more in determining the proper timing for disclosure than balance in each case the potential dangers of early discovery against the need that *Brady* purports to serve of avoiding wrongful convictions.

*United States v. Pollack*, 534 F.2d 964, 973-74 (D.C. Cir. 1976). That balancing approach is effectively the same approach that Judge Brack endorsed in *Lujan*. That balancing approach is consistent with this Court's recognition that the Tenth Circuit held that the required timing of disclosure of *Brady* exculpatory evidence precedes that of *Giglio* impeachment information.

Finally, this Court has many times recognized that the United States' obligation to produce discovery -- whether it be rule 16, *Brady*, or *Giglio* information -- only extends to

information within "the United States' Possession." *United States v. DeLeon*, No. CR 15-4268 JB, Mem'm Opinion and Order [Doc. 907], 2017 WL 2271430, at *30 (D.N.M. Feb. 8, 2017) (Browning, J.). *See id.* ("'It is well settled that there is no affirmative duty upon the government to take action to discover information which it does not possess.'" (quoting *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991)).

## ANALYSIS

1. NAME AND LAST KNOWN ADDRESS (Motion ¶ 1 at 6)

The United States will not produce "the last known address of any witness." While the United States concedes that, in certain circumstances, the "'failure to interview government witness [constitute[s] ineffective of counsel,'" Motion at 6 (quoting *United States v. Tucker*, 716 F.2d 576 (9th Cir. 1983)), witnesses' addresses are not *Giglio* materials, and Defendants do not cite to a case that so holds. Defendants often locate and are able to interview witnesses in criminal cases, and are not provided witnesses' last known addresses in those instances.

2. GUILTY VERDICTS, JUVENILE AND [sic] ADJUDICATION OR OTHER BAD ACTS (Motion ¶ 2 at 7)

The United States agrees to produce to Defendants summaries of its witnesses' NCIC reports.[1]

3. CONSIDERATION (Motion ¶ 3, at 8)

---

[1] The trial for the first group of Defendants in No. CR 15-4268 is set for July 10, which is why the Court ordered immediate production of *Giglio* materials on May 9. But the Defendants recently filed a motion to continue (Doc. 1182), which moves to continue the trial to 2018. So, in relation to all of these responses, the United States may identify additional witnesses whom it does not currently intend to call at this case's trial.

The United States agrees to produce *Giglio* materials that reflect consideration paid to its witnesses to the extent that they're in the United States' possession.[2]

4. BIAS, MOTIVE OR INTEREST (Motion ¶ 4, at 10)

The United States agrees to produce *Giglio* materials that reflect its witnesses' bias, interest, or motive, to the extent that they're in the United States' possession.

5. THREATS (Motion ¶ 5, at 12)

The United States does not know of any responsive documents in the United States' possession.

6. PRIOR TESTIMONY (Motion ¶ 6, at 14)

The United States agrees to identify the existence of the occasions of its witnesses' prior testimony "so defendant can order transcripts of testimony for use in cross-examination, or investigate sources or extrinsic impeachment." Motion at 14. In accordance with the Jencks Act, however, the United States will not disclose early the grand jury transcripts from these proceedings.

7. INTERNAL LAW ENFORCEMENT FILES (Motion ¶ 7, at 14)

The United States agrees to produce agents' notes that constitute *Giglio* materials. If the United States becomes aware of impeaching information contained in law enforcement files within the United States' possession, then the United States will either produce those materials, or consult with the Court. *See* Motion at 20-21 (discussing ex parte consultations with courts in relation to certain *Giglio* issues).

8. COMPETENCY AND MENTAL ILLNESS (Motion ¶ 8, at 15)

---

[2] Under the law-of-the-case doctrine, the United States recognizes that NMCD's possession is also within the United States' possession.

Competency and mental illness records are protected from the United States' access and the United States, therefore, cannot produce them. *See United States v. Lujan*, 530 F. Supp. 2d 1224, 1259-60 (D.N.M. 2008) (Brack, J.) ("The government does not have the duty to search mental records of its witnesses when it has no reason to believe that they would contain impeachment evidence and when the records are not readily accessible.") (citing *East v. Scott*, 55 F.3d 996, 1003 (5th Cir. 1995); *United States v. DiPaolo*, 804 F.2d 225, 230 (2d Cir. 1986); *United States v. Riley*, 657 F.2d 1377, 1386 (8th Cir. 1981)). The Honorable Robert C. Brack, United States District Judge for the District of New Mexico, recognized a witness's mental health could lead to impeachment evidence, and, thus, "if the government has knowledge of such evidence, it should disclose that fact to the defense." *Id.* at 1260. The United States is aware of such materials for one witness who is a former co-Defendant and who underwent a competency hearing in this matter. Otherwise, the United States is unaware of such materials. The Court should therefore deny this request to the extent that it seeks such materials for other than the former co-Defendant witness. *See Lujan*, 530 F. Supp. 2d at 1259-60.

9. FALSE OR INCONSISTENT STATEMENTS (Motion ¶ 9, at 16)

The United States agrees to produce *Giglio* materials that constitute its witnesses' false or inconsistent statements, or reputation for dishonesty, to the extent that they're in the United States' possession.

10. POLYGRAPH TESTS (Motion ¶ 10, at 17)

The United States does have any materials responsive to this request for "[o]ral and written results of any polygraph test administered to any witness whether by the prosecution or the F.B.I. for the witness protection program." Motion at 17-18.

11. PRIOR INFORMANT ACTIVITY (Motion ¶ 11, at 18)

The United States agrees to produce *Giglio* materials that reflect prior informant activities of its witnesses' to the extent that they're in the United States' possession.

12. PRIOR PLACEMENT RECORDS (Motion ¶ 12, at 19)

A witness's prior placement records is not *Giglio* materials. If the record reflects information inconsistent with a witness's anticipated testimony, it may be. But the Defendants have not provided any basis on which such a determination may be made presently.

13. OTHER (Motion ¶ 13, at 19-20)

a) The United States agrees to produce *Giglio* materials in its possession that reflect "[a]ll records of complaints lodged by or on behalf of the witness while incarcerated and records indicating any disciplinary action, placement in security cell or isolation, belief that the witness might be a security risk and or transfers and the reasons therefore while incarcerated." Motion ¶13(a), at 19.

b) The United States does not have any materials responsive to this request.

c) The United States does not have any materials responsive to this request.[3]

d) The United States does not have any materials responsive to this request

e) The United States does not have any materials responsive to this request.

f) The United States agrees to produce *Giglio* materials in its possession that reflect "[i]nformation regarding instances of use of controlled substances" of its witnesses." Motion ¶13(f), at 20.

g) The United States does not have any materials responsive to this request.

h) The United States does not have any materials responsive to this request.

---

[3] To the extent that Defendants may contend they're responsive, under the Court's previous order, the United States disclosed the addenda to witnesses' plea agreements.

## **CONCLUSION**

For the foregoing reasons, the United States should grant in part and deny in part the Defendants' Motion.

Respectfully submitted,

JAMES D. TIERNEY
Acting United States Attorney

*Electronically filed on 6/7/17*
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM 88001
(575) 522-2304

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record on this date.

/s/
MATTHEW M. BECK
Assistant United States Attorney