IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL NO. 15-4268 JB |
| ) | |
| vs. ) | |
| ) | |
| **ANGEL DELEON, et al.,** ) | |
| ) | |
| Defendants. ) | |

**UNITED STATES' RESPONSE TO DEFENDANT DANIEL SANCHEZ'S MOTION TO COMPEL SPECIFIC DISCOVERY [1253]**

Defendant Daniel Sanchez's Motion to Compel Specific Discovery [Doc. 1253] ("Motion to Compel") requests disclosure of twelve (12) categories of discovery, which the United States has already produced, will produce, or is not required to produce under Federal Rule of Criminal Procedure 16, Jencks, *Giglio*, or *Brady*. Defendant's first request is for materials related to the disciplinary hearings conducted in reference to the Molina murder. Defendant's second request is for an inspection of a transport vehicle and trailer similar to the one used to transport inmates from PNM to SNMCF on March 6, 2014. Defendant's third request is for audio and/or video recordings and/or photographs depicting visitations for cooperators who were the subject of NMCD disciplinary investigations, as well as additional statements regarding the visitations. Defendant's fourth request is for identification of visiting areas utilized in Defendant's third request and the ability to photograph those areas, as well as surveillance cameras and images and the location of areas designated for use by corrections officers to monitor the inmate visitations. Defendant's fifth request is for photographs, digital, video or other visual content from cellular telephones used by government informants and/or cooperators. Defendant's sixth request is for video and other recordings from the scene of the Molina murder on March 7, 2014. Defendant's seventh request

is for a diagram of SNMCF pods depicting the location of video and other recording devices as they existed on March 7, 2014, as well as maintenance records for the devices. Defendant's eighth request is for discovery related to Lupe Urquizo's alleged obstruction of correctional officers and/or assault on inmate G.C. on December 29, 2016. Defendant's ninth request is for the results of examinations of cooperating witnesses' discovery tablets that were alleged to have been tampered with or misused. Defendant's tenth request is for access to ELSUR devices for the purpose of examining the metadata stored on them. Defendant's eleventh request is for discovery related to the transfer of inmates Lupe Urquizo, Mauricio Varela, and Raynaldo Enriquez to the SNMCF on March 6, 2014. Defendant's twelfth request is for documents containing personal identifying information for Herman Gonzales.

The United States will coordinate with the STIU and FBI prior to the hearing to determine whether these materials exist and disclose what has not been disclosed. The United States will coordinate with the New Mexico Department of Corrections ("NMCD") prior to the hearing, and will disclose requested materials to the extent they are discoverable. The United States respectfully requests the Court deny Defendant's Motion to Compel to the extent the United States has not agreed to disclosure.

## **RELEVANT LAW**

### A.  Law regarding discovery under Federal Rule of Criminal Procedure 16

Federal Rule of Criminal Procedure 16 is the primary procedural vehicle for discovery in criminal cases. Under the rule, a defendant is entitled to discovery of *his own* oral statements made "in response to interrogation by a person the defendant *knew was a government agent* if the government intends to use the statement at trial." Fed. R. Crim. P. 16(a)(1)(A) (emphasis added). A defendant is also entitled to discovery of *his own* written or recorded statements if the statement

is "within the government's possession, custody, or control" and the "defendant made the statement in response to interrogation by a person the defendant knew was a government agent." Fed. R. Crim. P. 16(a)(1)(b) (emphasis added). Further, "upon a defendant's request, the government must permit the defendant to inspect" documents and other tangible objects that are "within the government's possession, custody, or control" and that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E).

Although the language of Rule 16 is permissive, the scope of discovery under the rule is governed by certain limitations. For example, this Court has repeatedly emphasized that rule 16 does not permit criminal defendants to "embark on a 'broad or blind fishing expedition among documents possessed by the government.'" *United States v. Badonie*, No. CR 03-2062 JB, 2005 WL 2312482, at \*2 (D.N.M. 2005) (Browning, J.) (quoting *Jencks v. United States*, 353 U.S. 657, 667 (1957)). *See also United States v. Roybal*, 46 F. Supp. 3d 1127, 1145 (D.N.M. 2014); *United States v. Rodella*, 2015 U.S. Dist. LEXIS 20704, at \*41 (D.N.M. 2015); *United States v. Burton*, 81 F. Supp. 3d 1229, at 1244 (D.N.M. 2015). Instead, "[a] defendant must make a prima facie showing of materiality before he is entitled to obtain requested discovery," and "[n]either a general description of the information sought nor conclusory allegations of materiality suffice." *United States v. Lujan*, 530 F. Supp. 2d 1224, 1234 (D.N.M. 2008) (Brack, J.) (quoting *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir.1990)). This Court has also held that "rule 16 'does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.'" *Badonie*, 2005 WL 2312482, at \*2 (quoting Fed. R. Crim. P. 16(a)(2)). General requests and requests for materials that do not "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting

impeachment or rebuttal" are similarly not subject to disclosure under the rule. *Lujan*, 530 F. Supp. 2d at 1234 (citing *Mandel*, 914 F. Supp. 2d at 1219; *United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003)).

## B. Law regarding disclosures under *Brady* and *Giglio*

Aside from the criminal procedural rules, the United States is also subject to disclosure obligations under the Due Process clause of the United States Constitution. Due Process requires disclosure of any evidence the United States has in its possession that is "material" to the guilt or punishment of a criminal defendant, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), or that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory. *Giglio v. United States*, 405 U.S. 150 (1972). Numerous courts, including this one, have found the United States' duty does not grant a criminal defendant unfettered access to Government documents based on the mere probability of some benefit to the defendant. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987); *Smith v. Sec. Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995); *United States v. Baca*, No. CR 16-1613 JB, 2016 WL 6404772, at *24 (D.N.M. Oct. 20, 2016) (Browning, J.). Indeed, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of trial does not establish 'materiality' in the constitutional sense." *United States v. Hykes*, No. CR 15-4299 JB, 2016 WL 1730125, at *6 (D.N.M. Apr. 11, 2016) (Browning, J.) (quoting *United States v. Fleming*, 19 F.3d 1325, 1331 (10th Cir. 1994)). The Supreme Court explained, "the touchstone of materiality" under *Brady* "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514, U.S. 419, 438 (1995). Because "the individual prosecutor has a duty to learn of any favorable evidence known to others

4

acting on the government's behalf in the case," *id.* at 437-438, "[t]he court should rely on the government's representations of its compliance with *Brady* unless the defendant shows cause to question them and the materiality of the evidence sought." *Lujan*, 530 F. Supp. 2d at 1256 (citing *United States v. McVeigh,* 923 F. Supp. 1310, 1314 (D. Colo. 1996)).

**C. Law regarding disclosure under Jencks**

In addition to its Constitutional disclosure obligations, Title 18 U.S.C. § 3500 ("Jencks"), requires the United States to produce statements made by a government witness or prospective government witness (other than the defendant), *after* that witness testifies at trial. Although "[t]he district court may not require the government to produce Jencks material relating to one of its witnesses until after the witness has testified," "some courts have ordered early disclosure." *Lujan*, 530 F. Supp. 2d at 1254-55 (quoting *United States v. Lewis*, 35 F.3d 148, 151 (4th Cir. 1994)). In such instances, early disclosure has been considered a "salutary practice" typically arising in cases where the parties seek to avoid interruptions, and where the government has consented to the early disclosure. *Id.* at 1255 (citing *United States v. Beckford*, 962 F. Supp. 780, 795 (E.D. Va. 1997)).

## ANALYSIS

**A. Request for materials related to the disciplinary hearings conducted in reference to the Molina murder**

Defendant's first request seeks discovery of any and all disciplinary hearing recordings conducted in reference to the Javier Molina murder; copies of witness statements presented to the hearing officer; confidential information presented by or to any hearing officer; copies of motions presented to the hearing officer; and copies of questions submitted to the hearing officer by the subjects or their legal representatives.  The United States will confer with representatives from the NMCD and disclose the materials it receives in response to this request.  Confidential materials may be disclosed pursuant to a protective order.

5

**B. Request to inspect and photograph a transport vehicle and trailer similar to those used to transport inmates from PNM to SNMCF on March 6, 2014.**

Defendant's second request involves sensitive information related to the safe transportation of prisoners in the NMCD system. However, NMCD officials believe they have located the vehicle used to transport the prisoners in question on March 6, 2014, and will make it available for inspection since it is no longer a vehicle used to transport prisoners. Prison officials will also attempt to find a similar trailer to the one that was used on that occasion for inspection by the defense.

**C. Request for audio and/or video recordings depicting visitations for inmates Billy Cordova, Javier Rubio, Benjamin Clark, Jerry Armenta, and/or any other government informant or cooperating witness subject to NMCD disciplinary misconduct investigations, as well as statements regarding those visits.**

The United States has disclosed reports related to these incidents. The videos of the visitations will be available for review at the United States Attorney's Office.

**D. Identification of the "visiting areas" utilized by informants and/or cooperators listed in (C) above, as well as access and the ability to photograph the visiting areas and surveillance cameras in the vicinity of those areas, and the location of corrections officers charged with monitoring the visiting areas.**

Defense counsel will be permitted to view the visiting areas utilized by the informants and/or cooperators. NMCD officials have stated that monitoring of the visitation areas was conducted from a separate area and not in "real time." Counsel may view the monitors, but only to the extent the monitors do not reveal other sensitive areas or activities taking place at the facility.

**E. Request for any and all photographs, and digital, video, or other visual content from cellular telephones provided to any government informant and/or cooperator.**

The United States disclosed these materials on March 25, 2016 and June 16, 2017. There are two images that were retrieved from Eric Duran's phone which will be disclosed to the discovery coordinator in the next round of disclosures. There was no "phone dump" of Mario

Montoya's phone based on the damaged condition of the phone when the FBI retrieved it from him.

**F. Request for complete and unredacted copies of recordings from the scene of the Molina murder on March 7, 2014.**

The United States has disclosed the requested information. However, out of an abundance of caution, the United States has made an additional request of the NMCD for this information and will disclose additional materials that have not already been disclosed.

**G. Request for a diagram of SNMCF Unit 1A blue and yellow pods depicting the location of recording devices as they existed on March 7, 2014 and maintenance records for the devices from January 1, 2014 through March 10, 2014.**

It is unclear whether this information exists. The NMCD has agreed to disclose these materials to the United States to the extent they exist for disclosure to the defense, subject to the Court's protective order.

**H. Request for reports and other discovery related to inmate Lupe Urquizo's alleged obstruction of correctional officers and/or assault on inmate G.C. on December 29, 2016.**

The United States agrees to disclose the materials it receives from the NMCD related to this event.

**I. Request for results of the government's examination of the tablets of cooperating witnesses and/or government informants suspected to be involved in efforts to misuse the tablets.**

The United States has received permission from some of the cooperators for an inspection of their tablets and is waiting for the positions of the remaining cooperators. The United States will make an assessment of the nature and scope of any misuse of the tablets and make disclosures consistent with its *Brady* and *Giglio* obligations at the appropriate time following the inspections.

**J. Request for access to ELSUR devices for the purpose of examining the metadata stored on them.**

The metadata from these devices was disclosed on June 16, 2017. The United States objects to the disclosure of the devices themselves because this request fails to find support under the law enforcement privilege and constitutes an impermissible fishing expedition. "The 'law enforcement privilege' is the overarching name given to a bundle of privileges that relate to preserving the confidentiality of a law enforcement investigation." *Mohammed v. Holder*, 2014 U.S. Dist. LEXIS 35297, at *12-13 (D. Colo. Mar. 17, 2014) (citing *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010)). "Materials that reveal: (i) law enforcement techniques and procedures; (ii) would undermine the confidentiality of sources; (iii) information that would endanger law enforcement personnel, witnesses, or the privacy of individuals involved in an investigation; or (iv) information that would otherwise interfere with an investigation, may all be subject to the privilege." *Id.* To invoke the privilege, the government must show that disclosure "could reasonably be expected" to interfere with enforcement proceedings. *National Union Fire Ins. Co. v. FDIC*, 1995 U.S. LEXIS 3110, at *10 (D. Kan. Mar. 7, 1995). "An excellent example in this case is information relating to the means by which a recording device is secured on an informant." *Morrissey v. City of New York*, 1997 U.S. Dist. LEXIS 2660, *12-13 (S.D.N.Y. Mar. 12, 1997).

The dangerous consequences of Defendant's request for disclosure are far reaching. If the Government discloses the recording devices used to capture conversations like those between the defendants and any confidential informants, other defendants will become alert to law enforcement practices and techniques rendering the benefit of any of these techniques useless in this and other investigations. Moreover, disclosure of the means and methods of recorded conversations with confidential informants would create an irreversible chilling effect for future cooperators.

Defendant should not be permitted to embark on a fishing expedition of the Government's means and methods of investigation to search for any evidence that could conceivably benefit Defendant. This Court has foreclosed such requests, holding: the Constitution "does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government,'" and a "defendant's mere allegation that the requested information might be material does not entitle him to an unsupervised search of the government's files." *See Rodella*, 2015 U.S. Dist. LEXIS 20704, at *65-66 (citing *United States v. Mayes*, 917 F.3d 457, 461 (10th Cir. 1990)). Finally, the devices are proprietary. The FBI would likely send a representative to argue against disclosure or examination of the devices should the Court seriously consider this request.

This issue was previously briefed and argued to the Court. The United States continues to object to the examination of the ELSUR devices by the defense. In the absence of any claim that the recordings do not fairly and accurately represent the statements made to a confidential informant or informants, Defendant should not be permitted to embark on a fishing expedition of the Government's means and methods of investigation to search for any evidence that could conceivably benefit Defendant. Accordingly, the Court should deny Defendant's request.

**K. Request for property inventory lists for PNM and SNMCF and receipts for confiscated property completed on or about March 6, 2014 for inmates Lupe Urquizo, Mauricio Varela, and Raynaldo Enriquez.**

The requested items were the subject of an IPRA request to the NMCD. The NMCD turned over to the defense the materials it had in its possession and that were responsive to the request. Those items will be redisclosed to the discovery coordinator for disclosure to the rest of the defendants.

**L. Request for a document containing personal identifying information for former NMCD employee Herman Gonzales**

9

According to NMCD officials, Mr. Gonzales is still employed by the department. The NMCD will inquire if he is interested in being interviewed by the defense. If so, efforts will be made to connect him with the defense.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court deny Defendant Daniel Sanchez's Motion to Compel Specific Discovery to the extent the United States opposes disclosure.

Respectfully submitted,

JAMES D. TIERNEY
Acting United States Attorney

*Electronically filed on 10/3/17*
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM  88001
(575) 522-2304

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record on this date.

         /s/
RANDY M. CASTELLANO
Assistant United States Attorney