IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

         Plaintiff,                                    Criminal No.  15-cr-4268-JB

v.


ANGEL DELEON, *et al.*,

         Defendants.

---

**RESPONSE IN OPPOSITION TO THE GOVERNMENT'S NOTICE OF AND MOTION
IN LIMINE TO ADMIT GANG EXPERT TESTIMONY (DOC. 1299) AND REQUEST
FOR HEARING PURSUANT TO *DAUBERT* AND *KUMHO TIRE***

---

Defendant Rudy Perez hereby objects to the Government's Notice of and Motion In

Limine to Admit Gang Expert Testimony (Doc. 1299) on the grounds that the Government's

notice is deficient pursuant to Federal Rule of Criminal Procedure 16, that the Government has

not met its burden to show either that the proposed witnesses are qualified to deliver the

proposed opinions or that the proposed testimony is reliable and that it will assist the trier of fact.

Mr. Perez requests an evidentiary hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals*,

*Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 142 (1999). Mr.

Perez reserves his right to supplement this motion if and when the Government supplements its

gang expert disclosure to include statements as to what the proposed experts' opinions consist of,

the bases and reasons for each of these opinions, the witnesses' methodologies in arriving at these opinions, and the detailed qualifications of the witnesses.[1]

Mr. Perez is joined in this Response by Defendants Anthony Baca, Daniel Sanchez, Carlos Herrera, Christopher Garcia, Billy Garcia, Edward Troup, Joe Gallegos, Allen Patterson, Christopher Chavez, Arturo Garcia, Mario Rodriguez, Andrew Gallegos, and Shauna Gutierrez. All other counsel for co-Defendants have been contacted and have indicated they do not oppose this Response. As grounds in support of this Response, Mr. Perez states as follows:

## I.      Applicable Law

"Since the Supreme Court of the United States decided *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[, 509 U.S. 579 (1993)], trial courts have had the responsibility to make certain that proffered experts will assist the jury in understanding the evidence and in determining the factual issues it must decide." *United States v. Gutierrez–Castro*, 805 F.Supp.2d 1218, 1224 (D.N.M.2011) (Browning, J.). "*Daubert* [] requires a court to scrutinize the proffered expert's reasoning to determine if that reasoning is sound." *Id.* The district court "must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact before, permitting a jury to assess such testimony." <u>*United States v. Rodriguez–Felix,* 450 F.3d 1117, 1122 (10th Cir. 2006)</u>. The Tenth Circuit has articulated that this gate-keeping process has two parts:

> In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *See* <u>Fed.R.Evid. 702</u>. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert.*

---

[1] By separate motion, Defendants challenge the Government's Expert Notice under Rule 16 as deficient in these areas. *See* Doc. 1345. Defendants already challenged the Government's Amended Expert Notice for non-compliance with Rule 16. *See* Docs. 1242,1255, 1277.

*United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (citing *Daubert*, 509 U.S. 579).

"Reliability questions may concern the expert's data, method, or his application of the method to the data." *Nacchio*, 555 F.3d at 1241 *(citing* Mitchell v. Gencorp Inc., 165 F.3d 778, 782 (10th Cir.1999); Fed.R.Evid. 702). The burden is on the party offering the expert to "show that the method employed by the expert . . . is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements." *Id.* "[A]ny step that renders the expert's analysis unreliable . . . renders the expert's testimony inadmissible." *Id.* In exercising its gatekeeping role, "generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Id.*

Of course *Kumho Tire* expanded the *Daubert* inquiry to cover expert testimony that is not purely scientific, stating that "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 142 (1999). The *Kumho Tire* Court emphasized "the importance of Daubert's gatekeeping requirement," explaining that "[t]he objective of that requirement . . . is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." 526 U.S. at 152.

In order to meet its burden to demonstrate that the proposed testimony is admissible as expert testimony, the Government must provide the Court "sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Roach*, 582 F.3d 1192, 1206 (10th Cir. 2009) (citing *Goebel v.*

*Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087-88 (10th Cir. 2000) (Although "the gatekeeper inquiry under Rule 702 is ultimately a flexible determination, . . . a district court, when faced with a party's objection, must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper.")). "[B]efore admitting expert testimony, the district court is required to make specific, on-the-record findings that the testimony is reliable under *Daubert*." *Id.* at 1207 (citing *Goebel*, 215 F.3d at 1088) ("[W]e specifically hold that a district court, when faced with a party's objection, must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper.")

**II.     The Government's Notice is Deficient Under Rule 16 and Designates Testimony the Admission of Which Would Be Contrary to the Sixth Amendment**

As a threshold matter, Mr. Perez notes that the Government's notice is deficient pursuant to the Federal Rules of Criminal Procedure and the United States Constitution. The Government seeks to call three individuals, Ronald Martin, Chris Cupit, and Sergio Sapien of the New Mexico Corrections Department ("NMCD") Security Threat Intelligence Unit, to testify as "gang experts" at trial. *See* United States' Notice of, and Motion in Limine to Admit Gang Expert Witnesses' Testimony (Doc. 1299).

Rule 16 of the Federal Rules of Criminal Procedure provides that the United States "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed.R.Crim.P. 16(a)(1)(G). The Government sets forth only one opinion that these witnesses would render at trial, "that the SNM is a prison (gang) and its criminal acts lead them to opine that the SNM is, in their opinion, an enterprise."  Doc. 1299 at 11. Separate pleadings address the deficiencies of the notice pursuant to Rule 16 with respect to this proffered opinion and the Government's proposed testimony summarizing background facts, *see* Doc.

1345, and pursuant to the Sixth Amendment and based on other evidentiary grounds, *see* Doc. 1337.[2] Mr. Perez incorporates the arguments in those pleadings here and on those bases requests that the Court deny the Government's motion to admit testimony from these witnesses as gang expert testimony, or in the alternative, limit any such testimony as required by Rule 16, the Sixth Amendment and *Daubert*.

### III.   The Government Has Not Met Its Burden to Show that the Witnesses are Qualified to Testify as Experts With Regard to Topics Related to the SNM

In its notice, the Government fails to puts forth a basis on which the Court may make a finding that the witnesses have any specialized knowledge about the SNM that would endow them with the expertise to testify on related topics, nor has it even provided the defense with the *curricula vitae* for its proposed experts. Instead, the Government's notice essentially states that the three proposed experts should be qualified to opine on the issues in this case by virtue of the nature of their employment with the NMCD. For instance, the Government posits that Sergeant Martin's job requires him to "collaborate with other law enforcement authorities, conduct drug trafficking investigations inside and outside of security facilities, gather intelligence, make risk and security threat assessments, and conduct internal security investigations for certification on the California Sureno prison gang for the New Mexico Corrections Department" Doc. 1299 at 7. The mere fact that Sergeant Martin's job description includes conducting drug trafficking investigations and performing threat assessments does not imbue him with any specialized knowledge worthy of an expert designation regarding the SNM. The Government's reference to

---

[2] Mr. Perez objects to the sufficiency of the Government's Rule 16 disclosure but challenges the Government's disclosure and objects to the Government's motion *in limine* to admit the witnesses' testimony more broadly under *Daubert*. *See, e.g. Nacchio*, 555 F.3d at 1242 (upholding the district court's exclusion of defendant's expert testimony, where the government first challenged the testimony under Rule 16)

Sergeant Martin's work conducting "internal security investigations for certification on the California Sureno prison gang" (notably not the SNM) does not translate into the requisite experience to opine on general matters pertaining to prison gangs or to matters involving the SNM.

The Government employs the same circular reasoning with respect to Investigator Cupit, stating that he "is a recognized authority on the topic of prison security threat groups," and therefore has the necessary experience to qualify him as an expert on the SNM. *Id.* at 8. The fact that the NMCD, which this Court has found is part of the prosecution team in this case, recognizes Mr. Martin and Mr. Cupit as "authorities" on the investigation, assessments and classification that the Government has performed in the lead up to this case does not qualify them as experts. The Government makes no proffer that any of these three individuals are, for instance, national experts, presumably because there is no basis for such a proffer. *See United States v. Rodriguez*, 125 F.Supp.3d 1216, 1249 (D.N.M. 2015) ("The expert—testimony rules are not an invitation to the United States to turn the jury trial into the same type of proceeding [as the grand jury], wherein a single expert-whose expertise is really just in the case at hand—can serve as proof of the prosecution's entire case."). The same is true of Captain Sapien, whose proffered expertise the Government also hinges on its own assessment that he is an authority, by virtue of his years training other NMCD employees and his past experience conducting threat assessments for the NMCD. *Id.* at 8-9. The Government provides no information as to the duration or depth of the investigation and review, if any, that these witnesses may have conducted regarding the SNM.

### IV. The Government Has Not Met Its Burden to Show that the Witnesses' Proffered Testimony Is Based On Reliable Methods and Principles

As noted above, the Government has not provided a basis on which the Court may

properly find that these witnesses have the requisite specific knowledge and experience pertaining to the SNM to make the proffered testimony reliable. *See, e.g., United States v. Norwood*, 16 F.Supp.3d 848, 862 (E.D. Mich. 2014) (proposed testimony of FBI agent on organization and operation of neighborhood-based street gangs was unreliable and irrelevant and therefore inadmissible where his "lack of familiarity with the particular gang or locale at issue in th[e] case ma[de] his opinions unreliable to be placed before the jury.) *Compare United States v. Kamahele*, 748 F.3d 984 (10th Cir. 2014) (expert had years of experience with the subject gang, the Tongan Crips, and testified as to Tongan culture). As this Court has previously noted:

> It is easy for an experience-based expert witness to pass off suspicion, speculation, and intuition as real expertise . . . . To prevent this danger, the district court must vigilantly apply the rule 702 reliability standard to each opinion or assertion to which the defendant objects and, again, ensure that facts outside of the case at hand back the witness' expertise.

*Rodriguez*, 125 F.Supp.3d at 1250. (internal citations omitted)

The Government provides no methodology whatsoever to demonstrate how its witnesses might arrive at the opinion that the SNM is "an enterprise" or at various conclusions regarding "[t]he specific membership and affiliation of the Defendants and the Victims in SNM." Doc. 1299, p.1-2, 11. This gives the Court absolutely no basis on which to find that any such opinions or conclusions are supported by legitimate bases, and the Court should therefore exclude this proffered testimony. *See Rodriguez,* 125 F.Supp.3d at 1250 ("an expert's obligation to show his or her work by establishing legitimate bases for the testimony may be higher when the expertise is of an experiential nature . . . "); *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir. 2004) (en banc) ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.")

The Government further identifies several broad areas of testimony it would elicit from these witnesses at trial, including: threat group sanctions, both general to various gangs and specific to the SNM; descriptions of weapons used in custody; SNM rules and requirements for participation in SNM sanctioned crimes; symbols, words and numbers identified with the SNM; territory of the SNM; various purposes of the "SNM Gang Enterprise;" and various alleged means and methods of the SNM. Having identified these areas, however, the Government provides no information in its notice as to the source of this information, nor does it indicate that the proffered experts have corroborated the information in any way.

As is apparent from the discovery and the Government's recent disclosures with respect to the statements of numerous informants, the Government gleaned this information from statements made by inmates, many of whom are acting as confidential informants who stand to receive benefits from the Government in exchange for these statements. Because the proffered expert testimony would only parrot this otherwise uncorroborated information from potential fact witnesses, it doesn't bear the requisite indicia of reliability to make it admissible. *See United States v. Vann*, 776 F.3d at 758  (alteration in original) (citations omitted) (explaining that the *Kamahele* court upheld the officer's testimony as an expert because he (1) "relied on multiple sources," (2) "based his expert testimony on years of experience," and (3) provided specific "insights into the distinctive traits" of his area of expertise.)

Additionally, because the Government does not articulate any intermediate steps through which its proffered expert witnesses have applied a particular methodology or methodologies based on any specialized knowledge, the Court cannot make a finding that the proffered testimony is reliable. Instead, the Government seeks to put on a large amount of factual evidence in the form of expert opinions without really applying any methodology or specialized

knowledge at all. This substitution of expert opinion in place of factual evidence is clearly impermissible under *Daubert*. "When the Government skips the intermediate steps and proceeds directly from internal expertise to trial, and when those officer experts come to court and simply disgorge their factual knowledge to the jury, the experts are no longer aiding the jury in its factfinding; they are instructing the jury on the existence of the facts needed to satisfy the elements of the charged offense." *United States v. Mejia*, 545 F.3d 179, 190 (2d Cir. 2008).

### V.   The Proffered Testimony Constitutes Improper Profile Evidence and Its Admission Would Violate Federal Rule of Evidence 704

The Court should further exclude any testimony from any of these witnesses that an individual defendant has a gang affiliation, as such testimony would constitute improper profile evidence that would serve as substantive evidence of guilt. *See United States v. McDonald*, 933 F.2d 1519, 1521 (10th Cir. 1991) (defining profile evidence as "a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity.")

Additionally, Rule 704(b) specifically precludes an expert witness from stating "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed. R. Evid. 704(b). *See also United States v. Richard*, 969 F.2d 849, 852 (10th Cir. 1992); *United States v. Matera*, 489 F.3d 115, 121 (2d Cir. 2007) (finding no abuse of discretion where the district court limited a gang expert's testimony to general information about the composition and structure of organized crime families rather than specific information about the membership or rank of the defendants). Furthermore, by instructing the jury that one or more elements of the charged offenses have been satisfied, the expert would contravene the Tenth Circuit's holding that expert witnesses may not

usurp the jury's fact-finding role in determining which version of events is more credible. *See United States v. Adams*, 271 F.3d 1236, 1245-46 (10th Cir. 2001).

## VI. The Proposed Testimony Will Not Assist the Jury and Would Be Substantially More Prejudicial Than Probative

The Government offers a general description of the narrative testimony that it intends to elicit from its three correctional officer witnesses. In summary, the Government intends to elicit testimony that the SNM is a powerful and violent prison gang, which formed in the early 1980s at the Penitentiary of New Mexico after a prison riot (and describing the deaths and serious injuries as a result of the riot), and the subsequent expansion of the SNM and a litany of facts describing historical bad acts of the SNM. This testimony would not assist the jury and would be substantially more prejudicial than probative under Federal Rule of Evidence 403.

"Rule 702 . . . dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. Muldrow*, 19 F.3d 1332, 1338 (10th Cir. 1994). *See United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir.1994) ("A district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror.") "When an expert's bailiwick is only internal expertise of the investigation at hand and the expert does no more than disgorge . . . factual knowledge to the jury, the expert is no longer aiding the jury in its factfinding but is instructing the jury on the existence of the facts needed to satisfy the elements of the charged offense." *United States v. Garcia*, 793 F.3d 1194, 1213 (10th Cir. 2015)(internal quotation omitted). The inquiry as to whether expert testimony may assist the jury goes primarily to relevance because testimony that does not relate to a disputed issue is not relevant and cannot assist the trier of fact as required by Rule 702. *See Daubert*, 509 U.S. at 591-92.

The vast majority of the proposed narrative testimony is entirely without relevance to this prosecution. For instance, the Government has not explained how the lengthy narrative details regarding "the history, culture, codes of conduct, methods of operation and communication, and behaviors of the SNM" would bear on the existence or non-existence of an enterprise in this case. Narrative testimony, like that proffered in the Government's notice, that can be offered by fact witnesses without the added imprimatur of expert testimony is well within the grasp of ordinary jurors. That is, the "activities" or specific crimes committed by members of the SNM can easily be understood by jurors through fact witnesses with first-hand knowledge, without the need for an expert opinion on the ultimate issue of whether a crime was committed. *See, e.g., United States v. McGee,* 408 F.3d 966, 978 (7th Cir. 2005) (affirming rejection of defendant's proposed gang expert in part because substance of testimony was not "beyond the ken of the average juror").

The areas of testimony delineated in the Government's notice may easily be covered with cooperating witnesses, who may certainly testify about their own personal participation in crimes which the Government can then argue amount to "racketeering activity." What the Government is not permitted to do is to elicit this narrative factual testimony from so-called expert witnesses in order to prop up the testimony of its other sources. "[E]xpert testimony cannot be used solely to bolster the credibility of the government's fact-witnesses by mirroring their version of events." *United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992).

Even if the Court finds that portions of the background narrative are relevant to the charges in the case, it is clear that such testimony also must be excluded on the grounds that it would be substantially more prejudicial than probative. "The 'aura of special reliability and trustworthiness surrounding expert testimony,' may give the witness 'unmerited credibility' and

'create[] a risk of prejudice 'because the jury may infer that the agent's opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial.'" *United States v. Sandoval*, 680 Fed. Appx. 713, 718 (10th Cir. 2017) (quoting *United States v. Dukagjini*, 326 F.3d 45, 53-54 (2d Cir. 2002) (citations omitted)). *See also United States v. Fosher*, 590 F.2d 381, 383 (1st Cir.1979) ("Quite apart from questions of limited relevance and reliability, . . . the proffered expert testimony would create a substantial danger of undue prejudice and confusion because of its aura of special reliability and trustworthiness.").

The Government's single proffered opinion testimony from these witnesses, that "the SNM is a prison [gang] and its criminal acts lead them to opine that the SNM is, in their opinion, an enterprise" would also be highly misleading to the jury and prejudicial to the Defendants. In a similar case involving allegations of racketeering, a federal district court in the Eastern District of Michigan reasoned as follows with respect to similar testimony:

> In this case, the jury will be required to decide whether a RICO enterprise exists. As the Government has apparently conflated the concept of a gang with the concept of a RICO enterprise, a similar muddling of the concepts of gang and RICO enterprise by the jury may occur if [FBI agent] Bornstein is permitted to testify. [This] testimony, although ostensibly about gangs, could be mistaken as establishing—without more—the existence of a RICO enterprise. In other words, the jury might easily conclude that the Government has met its burden of establishing the enterprise element simply by establishing that the Howard Boys are a gang.

*Norwood* 16 F.Supp.3d at 865. *See also United States v. Crosgrove,* 637 F.3d 646, 660–661 (6th Cir. 2011) (holding that the exclusion of defense expert-witness testimony due to confusion and potential to mislead the jury was proper under Rule 403).

**WHEREFORE**, for all of the above reasons, Mr. Perez and the joined defendants respectfully request that the Court deny the Government's motion *in limine* to admit the

testimony of the three individuals identified in the Government's motion and rather exclude these individuals from testifying at trial, as they are not qualified as experts in the proffered areas, and because their opinions are unreliable, irrelevant, and would be unhelpful to the jury. In the alternative, if the Court is not inclined to rule on the pleadings alone, Mr. Perez and the joined defendants request that the Court hold an evidentiary hearing pursuant to *Daubert* so that it may properly exercise its gatekeeping role and make specific, on-the-record findings with regard to the qualifications of these witnesses and the reliability of any proffered testimony.

Respectfully submitted,

THE LAW OFFICE OF RYAN J. VILLA

*/s/ Ryan J. Villa*
Ryan J. Villa
2501 Rio Grande Blvd. NW, Ste. A
Albuquerque, NM 87104
(505) 639-5709
(505) 433-5812 facsimile
ryan@rjvlawfirm.com

AND

JUSTINE FOX-YOUNG, P.C.

*/s/ Justine Fox-Young*
Justine Fox-Young
1903 Wyoming Blvd. NE, Ste B
Albuquerque, NM 87112
(505) 796-8268
justine@foxyounglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2017, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Justine Fox-Young*
Justine Fox-Young