```
 1            IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF NEW MEXICO

 3   UNITED STATES OF AMERICA,

 4        Plaintiff,

 5   VS.                         CR. NO. 15-4268 JB

 6   ANGEL DELEON, et al.,

 7        Defendants.

 8

 9        Transcript of Motion Proceedings before
     The Honorable James O. Browning, United States
10   District Judge, Las Cruces, Dona County,
     New Mexico, commencing on November 8, 2017.
11

12   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck
13

14

15   For the Defendants: Mr. Brock Benjamin, Ms. Cori
     Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
16   Mr. Robert Cooper; Mr. James Lahann; Mr. Orlando
     Mondragon; Mr. John Granberg; Mr. Billy Blackburn;
17   Ms. Amy Jacks; Mr. Richard Jewkes; Mr. Marc Lowry;
     Ms. Amy Sirignano; Mr. Michael Davis; Ms. Carey
18   Bhalla; Mr. Ryan Villa; Mr. Donovan Roberts; Ms.
     Angela Arellanes; Mr. Jerry Walz
19
     For Defendant Martinez:  Ms. Marcia Milner
20
     For the Defendants (Via telephone):  Ms. Justine
21   Fox-Young; Mr. Christopher Adams

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    (The Court went on the record at 10:59 a.m.
      Defendant Christopher Chavez was not present the
 2    morning session.)

 3              THE COURT:  Good morning everyone.  I

 4    appreciate everyone making themselves available to me

 5    this morning.

 6              All right.  The Court will call United

 7    States of America versus Angel DeLeon, et al.,

 8    Criminal Matter No. 15-4268.

 9              If I could get entries of appearance for

10    the Government.

11              MS. ARMIJO:  Good morning, Your Honor.

12    Maria Armijo, Randy Castellano, and Matthew Beck on

13    behalf of the Government.

14              THE COURT:  All right.  Ms. Armijo, Mr.

15    Castellano, Mr. Beck, good morning to you.

16              And let's go to Defendant Joe Lawrence

17    Gallegos.

18              MR. BENJAMIN:  Good morning, Your Honor.

19    Brock Benjamin on behalf of Mr. Gallegos.

20              THE COURT:  All right.  Mr. Benjamin, Mr.

21    Gallegos, good morning to you.

22              And for Defendant Edward Troup.

23              MS. HARBOUR-VALDEZ:  Good morning, Your

24    Honor.  Cori Harbour-Valdez and Pat Burke on behalf

25    of Edward Troup.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Ms. Harbour-Valdez,
 2    Mr. Burke, Mr. Troup, good morning to you.
 3              THE DEFENDANT:  Good morning.
 4              THE COURT:  And for Defendant Billy Garcia.
 5              MR. COOPER:  Good morning, Your Honor.  Bob
 6    Cooper and Jim Castle on behalf of Mr. Garcia, who is
 7    present today.
 8              THE COURT:  All right.  Mr. Cooper, Mr.
 9    Castle, Mr. Garcia, good morning to you.
10              THE DEFENDANT:  Good morning, Your Honor.
11              THE COURT:  And for Defendant Allen
12    Patterson.
13              MR. LAHANN:  Good morning, Your Honor.
14    Jeff Lahann on behalf of Mr. Patterson.
15              THE COURT:  Mr. Lahann, good morning to
16    you.  Mr. Patterson, morning to you.
17              THE DEFENDANT:  Good morning, Your Honor.
18              THE COURT:  All right.  We don't have
19    Mr. Chavez yet, but he's en route.  He's still a
20    couple of -- an hour and a half out.  But I
21    understand that counsel are going to waive his
22    appearance, and we're going to try to dance around
23    and do motions that maybe don't require his
24    appearance.
25              MR. MONDRAGON:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Orlando Mondragon and John Granberg on behalf of Mr.
 2   Chavez.  We have no objection having the hearing
 3   without his presence.
 4              THE COURT:  Okay.  Well, the rules of
 5   engagement are that if you get to a place where it's
 6   getting to the heart of your case, and you'd like for
 7   him to be here then tell me, and we'll stop and
 8   reconfigure.  We've got a lot of work here to do.  So
 9   I want you to feel comfortable, and want Mr. Chavez
10   to feel comfortable about what's going on here.
11   We'll try to make the most of this time.
12              All right.  Mr. Mondragon, Mr. Granberg,
13   good morning to you.
14              All right.  Let's go to Defendant Arturo
15   Arnulfo Garcia.
16              MR. BLACKBURN:  Good morning, Your Honor.
17   Billy Blackburn on behalf of Mr. Arturo Garcia, who
18   is present.
19              THE COURT:  Mr. Blackburn, good morning to
20   you.  Mr. Garcia, good morning to you.
21              THE DEFENDANT:  Good morning.
22              THE COURT:  And for Defendant Daniel
23   Sanchez.
24              MR. JEWKES:  Good morning, Your Honor.  Amy
25   Jacks, Richard Jewkes representing Daniel Sanchez,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    who is present before the Court.
 2              THE COURT:  All right.  Mr. Jewkes,
 3    Ms. Jacks, and Mr. Sanchez, good morning to you.
 4              THE DEFENDANT:  Good morning.
 5              THE COURT:  And for Defendant Anthony Ray
 6    Baca.
 7              MR. LOWRY:  Good morning, Your Honor.  Marc
 8    Lowry on behalf of Anthony Ray Baca, who is present
 9    in the courtroom.
10              THE COURT:  All right.  Mr. Lowry, Mr.
11    Baca, good morning to you.
12              THE DEFENDANT:  Good morning, Your Honor.
13              MR. LOWRY:  Your Honor, I'd like to excuse
14    Ms. Duncan.  She had an emergency court hearing in
15    Albuquerque, so she will not be here today or
16    tomorrow.
17              THE COURT:  All right.  I understood that
18    she wasn't going to be present.
19              All right.  For Christopher Garcia?
20              MS. SIRIGNANO:  Good morning, Your Honor.
21    Amy Sirignano, and Christopher Adams appearing by
22    telephone, and Cynthia Gilbert, and Michelle Gallegos
23    on behalf of Christopher Garcia.
24              THE COURT:  All right.  Ms. Sirignano,
25    Ms. Gilbert, Ms. Gallegos -- Mr. Adams, are you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   there, Mr. Adams?
 2              MR. ADAMS:  I am, Your Honor.
 3              THE COURT:  All right.  Good morning to
 4   y'all.  Mr. Garcia, good morning to you.
 5              And for Defendant Carlos Herrera?
 6              MR. DAVIS:  Michael Davis and Carey Bhalla
 7   on behalf of Mr. Herrera.  Also present is our
 8   paralegal, Sonya Salazar.
 9              THE COURT:  All right.  Mr. Davis, Ms.
10   Bhalla, Ms. Salazar, and Mr. Herrera, good morning.
11              And for Defendant Rudy Perez.
12              MR. VILLA:  Your Honor, good morning.  Ryan
13   Villa on behalf of Rudy Perez, who is present.  My
14   co-counsel, Justine Fox-Young, is with us on the
15   phone.
16              THE COURT:  All right.  Are you there, Ms.
17   Fox-Young?
18              MS. FOX-YOUNG:  Yes.  Good morning, Your
19   Honor.
20              THE COURT:  How is that new baby doing?
21              MS. FOX-YOUNG:  He's doing great.  Thank
22   you.
23              THE COURT:  All right.  Are you doing okay?
24              MS. FOX-YOUNG:  Doing great.
25              THE COURT:  All right.  Mr. Villa, Ms.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Fox-Young, good morning to you.  Mr. Perez, good
 2   morning to you.
 3           THE DEFENDANT:  Good morning.
 4           THE COURT:  And for Defendant Andrew
 5   Gallegos.
 6           MR. ROBERTS:  Good morning, Judge.  Donovan
 7   Roberts on behalf of Andrew Gallegos.
 8           THE COURT:  All right.  Mr. Roberts, good
 9   morning to you.  And Mr. Gallegos, good morning to
10   you.
11           THE DEFENDANT:  Good morning.
12           THE COURT:  And for Defendant Shauna
13   Gutierrez.
14           MS. ARELLANES:  Angela Arellanes with Ms.
15   Gutierrez, who appears in person.
16           THE COURT:  All right.  Ms. Arellanes, good
17   morning to you.  Ms. Gutierrez, good morning to you.
18           THE DEFENDANT:  Good morning.
19           THE COURT:  And for Defendant Brandy
20   Rodriguez.
21           MR. WALZ:  Good morning, Your Honor.  Jerry
22   Walz on behalf of Brandy Rodriguez, and she's
23   present, Your Honor.
24           THE COURT:  All right.  Mr. Walz, good
25   morning to you.  Ms. Rodriguez, good morning for you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE DEFENDANT:  Good morning.
2              THE COURT:  All right.  Well, we've got a
3     number of motions -- I think I had 21 when I came
4     down here, and I've managed to get through most of
5     them except right at the tail end.  It's a two-day
6     hearing.  I didn't quite get done.  I was in court
7     till about 4:00 or so yesterday afternoon, so I was
8     up there for a while.  I certainly can take them
9     seriatim, and take them in the order that -- I think
10     there has been some discussions between y'all and
11     Ms. Wild about the order of them.  I can take them in
12     that order.  If, on the other hand, I think they're
13     mostly -- they're all defendants' motions, unless I'm
14     missing something.  So I certainly am willing to be
15     educated in a different way than how they're sort of
16     teed up.
17              But without any objection it seemed to me
18     that maybe the thing we ought to do is -- and maybe I
19     ought to get your appearance at this time,
20     Ms. Milner.  I think you're here for Mr. Martinez; is
21     that correct?
22              MS. MILNER:  Marcia Milner for Mr. Roy Paul
23     Martinez.
24              THE COURT:  All right.  Ms. Milner, good
25     morning to you.  And Mr. Martinez, good morning to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   you.

 2             THE DEFENDANT:  Good morning.

 3             THE COURT:  Do you want to take that motion

 4   up first, so we can get you in and out of here?

 5             MS. MILNER:  Mr. Davis --

 6             THE COURT:  Unless anybody thinks

 7   otherwise, why don't we skip to that one.  I think

 8   that's kind of number 2 on my docket.  If you'll give

 9   me a chance.  And Mr. Davis -- I think it's -- no,

10   it's the Government's motion.  This is the

11   Government's motion.  So I'll pull that out.  And let

12   me -- let me make a few comments and make sure you

13   know where I am or what I know on this.

14             What I understand the situation to be is

15   that the Government wants Mr. Davis off the case.

16   Now, y'all may feel a little softer about it than

17   your briefing about it, but at least your briefing

18   is, they want him off the case.

19             And I understand, Mr. Davis, that

20   Mr. Martinez is not consenting to you staying on this

21   case and waiving any conflict.  It looks to me like

22   it's an actual conflict.  Now, you can try to

23   persuade me it's potential, but it looks to me like

24   it's an actual.  And we're sitting right here in the

25   same courtroom.  That was always William Bennett

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Williams' Rule on Conflicts, if you're in the same

2    room, then probably it's an actual conflict.  So it

3    seems to me we're probably there.  And if you don't

4    have a defendant that's going to waive, I'm not sure

5    I can force it down.  I think I can take a waiver of

6    an actual conflict.  I have done a little bit of

7    research, and it looks like I can take a waiver of an

8    actual conflict.  But I'm not so certain I do a cram

9    down of an attorney over an objection.  So I'm

10   concerned.  I'll put that it way.  I'll be

11   open-minded, but those are my thoughts.

12          So, Ms. Armijo, if you wish to speak in

13   support of it.  Let me make sure I've got a yellow

14   pad.  I may have walked out of my -- I think I had a

15   white pad on the desk, if you could just bring it to

16   me.

17          Are you a little softer than your motion?

18          MS. ARMIJO:  Well, I wish I were softer

19   than the motion, but I think that it is a true issue

20   in this case.

21          THE COURT:  Tell me what you're concerned

22   about.  You think Mr. Davis is going to end up

23   being -- cross-examining Mr. Martinez; is that your

24   worst fear?

25          MS. ARMIJO:  Well, looking at Document

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1      1164-1, he says, "It is my intent to cross-examine

2      all Government witnesses, including Mr. Martinez, to

3      the best of my ability in a manner best suited to Mr.

4      Herrera's defense."  And that is a sworn affidavit by

5      him.  So I believe I do have to go with the idea that

6      he will, in fact, cross-examine Mr. Martinez.

7                THE COURT:  It looks to me like that would

8      fall into the category of an actual conflict, not

9      just a potential conflict; right?

10               MS. ARMIJO:  I agree, Your Honor.  And I

11     think that what's important is -- especially

12     important in this case -- is the fact that he

13     represented Mr. Martinez on an SNM murder.

14               Mr. Martinez will be testifying in the

15     trial that Mr. Herrera is set to be tried, the first

16     group, the Javier Molina murder and the other

17     conspiracy murders.  He will be testifying in that

18     case.  He will be talking about the SNM.  He will be

19     talking about the racketeering activities, et cetera.

20     And as part of that, he will be talking about murders

21     that he committed.  Specifically, he killed a person

22     with the last name of Cavalier, at the Metropolitan

23     Detention Center.

24               THE COURT:  Is that the one that Mr. Davis

25     represented him on?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MS. ARMIJO:  Yes.  That's the one that's
2      the true issue.  He actually represented him on two,
3      I learned this morning.  He represented him on two
4      murder cases.  One of them Mr. Davis got off on
5      because he had a conflict.  Mr. Martinez was charged
6      with killing a police officer.
7              THE COURT:  Mr. Davis got off that case?
8              MS. ARMIJO:  Because he had a conflict,
9      yes.  So apparently Mr. -- and Ms. Milner can give
10     more specifics, because I just found out about this
11     one this morning.  We based our conflict based upon
12     the J & C in his Cavalier murder case.  But I learned
13     this morning that he represented Mr. Martinez on two
14     murder cases.  One of the murder cases he got off on
15     because, I believe, shortly before trial, one of the
16     witnesses was a former client of Mr. Davis'.
17             Then he went on to represent him in the
18     other murder case, which is the case that I was
19     telling you about, which will be testified about.
20     And there is another person, the co-defendant that
21     was charged in this case, that has some involvement
22     in that murder as well.  He's not one of these
23     gentlemen here today.  But one of the co-defendants
24     that may be -- well, is expected to testify as well,
25     was involved in that murder.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          So we have Mr. Martinez testifying about

2     this murder, talking about it with -- talking about

3     other people involved, other SNM gang members.  And

4     he will also be testifying that Carlos Herrera is an

5     SNM gang member that he knows.  So those are things

6     that he will be testifying about.

7          I'm sure that the defense team, Herrera

8     defense team, may question him about how he knows

9     Carlos Herrera, how he knows he's a gang member.  I'm

10    sure they'll test that, you know, to the best of

11    their ability cross-examine him on all of his

12    testimony regarding the gang, the enterprise, the

13    racketeering activities, about the previous murders

14    that he committed, which Mike Davis was involved in

15    two of them; one that he already got off on because

16    of the conflict.

17          And so it does go to the heart of the

18    matter.  I anticipate Mr. Davis will come up here and

19    say, Well, Your Honor, I take back number 13, that I

20    don't cross-examine Mr. Martinez.  And that will take

21    care of it.  And maybe I'll firewall myself off this.

22          But here's -- but where does it stop?  The

23    reason that I mentioned that there will be another

24    witness involved in that murder that he represented

25    him on testify, is that does that mean, then, that

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Davis does not cross-examine -- it's Gerald

2    Archuleta -- Gerald Archuleta, because Mr. Martinez

3    will be testifying about him?  Do we take him off of

4    that and firewall him off of that?  What about

5    closing arguments, when he wants to talk about the

6    veracity of Mr. Martinez' testimony, then does that

7    mean he isn't allowed to argue that.

8              The fact that he indicates he doesn't

9    really have an independent recollection of

10   communications with Mr. Martinez, what if in the

11   middle of his testimony things start to resonate, he

12   starts to remember, oh, yeah -- because, again, it

13   was an SNM hit.  The victim was strangled.  And for

14   the very reasons that we have motives of the murders

15   in this case.

16             So I just don't know that -- I do think

17   it's an actual conflict, and I don't know that it's

18   such that we can separate him and cure the problem.

19             And Mr. Martinez has told me through his

20   attorney that he is not willing to waive the

21   conflict.  One of his concerns is that Mr. Davis

22   knows how to push his buttons.  And so he feels --

23             THE COURT:  I'd like explore that a little

24   bit.

25             MS. ARMIJO:  Yes.  And I'm sure that was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   what was communicated to me by his attorney, that
 2   Mr. Davis and he did have a close relationship.  He
 3   knew how to push his buttons, and so it would impact
 4   him being cross-examined by him.
 5              THE COURT:  All right.  So you want him
 6   off?
 7              MS. ARMIJO:  I don't want him off.  I
 8   believe the law calls for him to be off.
 9              THE COURT:  All right.  Okay.  Thank you,
10   Ms. Armijo.
11              MS. ARMIJO:  Thank you.
12              THE COURT:  All right.  Mr. Davis, did you
13   know you pushed his buttons, huh?  Do you do that
14   with all your clients?
15              MR. DAVIS:  Well, I can tell you this:  I
16   like to think I have a close relationship with all of
17   my clients, and I get to know them well.
18   Unfortunately, once 17 years passes, I have very
19   little, if any, recollection, which is the case here.
20              THE COURT:  You don't want to admit that in
21   open court, that you're getting older and can't
22   remember.
23              MR. DAVIS:  I don't think --
24              THE COURT:  That's not good for your career
25   here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. DAVIS:  I don't think I could deny the
 2    gray hair, and I look at some of my colleagues --
 3              THE COURT:  Let me tell the marshals
 4    something real quick.  We're going to take our break
 5    at 12:30.  So if you want to plan for the defendants
 6    to eat around there, it will be 12:30.
 7              Go ahead, Mr. Davis.
 8              MR. DAVIS:  In any event, Judge, first off,
 9    I take issue with the Court's position.  There is no
10    actual conflict.  An actual conflict --
11              THE COURT:  Tell me, if this is not an
12    actual conflict, what an actual conflict is.
13              MR. DAVIS:  An actual conflict would be, is
14    if I represented a witness in the case in another
15    separate legal matter, and in the course of that
16    legal matter that I would receive some confidences
17    that somehow I could use to benefit Mr. Herrera.
18              THE COURT:  But isn't that the fear, is
19    that, whether you remember it or not, you have some
20    information that, if your memory gets refreshed or
21    something like that, that you could use against Mr.
22    Martinez, if he takes the stand?
23              MR. DAVIS:  Well, first off, that's not an
24    actual conflict.  That would be a potential conflict.
25    And so it's our position that there is no actual
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

17

1    conflict.  So the only thing we're arguing about is

2    whether there is a potential conflict.  Now --

3              THE COURT:  Here's the problem:  Even if

4    it's a potential conflict, isn't it going to come at

5    a point that I -- I'm going to get to a point where

6    if you're actually cross examining Mr. Martinez, I --

7    boy, I'm going to be in a hard spot to rectify

8    situations at that point.

9              MR. DAVIS:  Well, Judge, the only way that

10   that would be an issue is if I had client confidences

11   with Mr. Martinez that I was going to somehow use

12   against him in my cross-examination.

13             What I'm telling the Court, and with

14   everything Ms. Armijo just told you, everything I

15   know about Mr. Archuleta today is all in the public

16   record.  And the case law is very clear on this.  If

17   a person has knowledge of things that are in public

18   record, that doesn't rise to the level of a conflict.

19             I have no recollection of my conversations

20   with Mr. Martinez.

21             THE COURT:  But that's not -- I mean, I've

22   been in your position before, I couldn't remember if

23   I represented somebody, or much about the case, but

24   with all due respect, isn't that just irrelevant?  I

25   mean, there is nothing in the cases that say we're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    going to ask the attorney whether they remember the

 2    client or remember the matter, and determine a

 3    conflict.  That's not a relevant issue, is it?

 4            MR. DAVIS:  Well, what is a relevant issue

 5    is that Mr. Herrera has a right to his choice of

 6    counsel, and he's chosen me.

 7            THE COURT:  Well, we're all CJA lawyers

 8    here.  So there is not much choice.

 9            MR. DAVIS:  Right.  But he wants me as his

10    lawyer.

11            THE COURT:  Well, that's great.  You're a

12    good lawyer.

13            MR. DAVIS:  Right.  And so he has a right

14    to have me.  And the presumption is that it's the

15    Government that has to show that --

16            THE COURT:  I'm not seeing a right here.

17    Where are you getting that right?

18            MR. DAVIS:  Well, Judge, I'm reading from

19    Weed versus U.S., and it says --

20            THE COURT:  Well, if he wants to retain you

21    or something, we've got a different issue.  But as

22    long as it's CJA, and we're trying to avoid problems

23    on appeal in a 2255, it's kind of my problem, isn't

24    it?

25            MR. DAVIS:  Well, I don't want to quibble
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   with the Court over his choice of counsel, whether it

2   relates to being retained or CJA.  I'm not being

3   forced upon him.  I think he would stand up and tell

4   you he wants me to represent him.

5           But it's our position that, in fact, this

6   is not an actual conflict.  It's only a potential

7   conflict.  And in order to be a potential conflict,

8   the law is clear that you have to establish that two

9   things -- one of two things -- one is that it comes

10  from the same transaction, which this isn't the same

11  transaction.  This is a murder that occurred over 17

12  years ago.

13          THE COURT:  But isn't it going to be a

14  predicate act here?

15          MR. DAVIS:  Well, Judge, the law is also

16  clear that the fact that there is some superficial

17  resemblance to the case at matter does not rise to

18  the level of a conflict.  And that's what we have

19  here.  There is a lot of stuff about what I have

20  previously represented.  And frankly, you're going to

21  find, I think, with a lot of my colleagues that have

22  been in practice for at least the 35 years that I've

23  been, and others have been here longer, this

24  routinely comes up, where we'll end up representing

25  somebody who may have been a witness in a case many

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    years ago, in a case that we may have had.  And this

2    happens quite frequently.  And so long as we're not

3    revealing client confidences --

4            THE COURT:  I've certainly had those

5    issues.  I've been down here in Las Cruces and been

6    in this room and taken waivers.  But don't we have a

7    problem here that makes it very difficult, given that

8    Mr. Martinez won't waive it?

9            MR. DAVIS:  Well, he wouldn't waive if a

10   conflict existed, but there is no conflict.  That's

11   why I'm trying to get to the point, Judge, there is

12   conflict, there is no actual conflict because we

13   don't have the situation --

14           THE COURT:  But even if it's a potential

15   conflict, he's not going to waive it.

16           MR. DAVIS:  But in a potential conflict you

17   have to show this:  You have to show it was in the

18   same transaction or that it was substantially

19   related.  And the case law being substantially

20   related -- because it's clearly not the same

21   transaction -- is clear.  And I'm reading from the

22   disciplinary commentary to Rule 16-109C, quote,

23   "Matters are substantially related for purposes of

24   this rule if they involve the same transaction or

25   legal dispute."  And again superficial resemblance

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    doesn't amount to this.  "Or if there is otherwise a
 2    substantial risk that confidential factual
 3    information, as would normally have been obtained in
 4    a prior representation would materially advance the
 5    client's position in a subsequent manner."
 6              And what I'm categorically saying is I
 7    don't have any such confidential information.  So
 8    this whole idea of a conflict is a fabrication.  It
 9    simply doesn't exist, Judge.  I don't have any
10    confidences, knowledge of my representation of Mr.
11    Martinez.
12              In fact, Ms. Armijo brought to my attention
13    apparently -- and I vaguely remember this case where
14    I represented him on, and I believe it was about the
15    same time, and I was representing him on this murder
16    with Mr. Cavalier, that -- that I apparently
17    represented him on this other case.  And in that case
18    I had an actual conflict, because I was in the
19    process of representing -- his probation officer, I
20    learned, was going to be a witness in the case.  And
21    so I had to get off.  That's an actual conflict that
22    I, in fact, had.
23              THE COURT:  Are you standing?
24              MS. MILNER:  Ms. Armijo wanted to talk to
25    me, but I guess she changed her mind.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1          THE COURT:  Do you need to talk?

 2          MS. ARMIJO:  No, Your Honor, it's okay.

 3          THE COURT:  All right.  Go ahead,

 4   Mr. Davis.

 5          MR. DAVIS:  So that's my position.  I don't

 6   have any conflict.

 7          Now, if the Court takes a different

 8   position, although I disagree, and I've made my

 9   record here, I think, this morning.  But as the Court

10   knows, I have co-counsel in the case, Ms. Bhalla.

11   And Ms. Bhalla, the courts are very clear on this as

12   well, if you have co-counsel who doesn't have the

13   conflict, that she can be allowed to do the

14   cross-examination on Mr. Martinez.  And I tell you

15   for the record I would object to that.  Now, it could

16   be Ms. Bhalla and I have decided how we're going to

17   handle the witnesses in this case.  I can tell that

18   categorically, Judge, and perhaps as our decision

19   from trial strategy we would want her to do the

20   cross-examination of Mr. Martinez anyway.  But I

21   don't want my hand forced to do that.  I think I

22   should have the ability to make that decision, and we

23   should make that decision together.

24          But if the Court is concerned, you can

25   obviate any concern of a conflict by simply allowing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   her to conduct the cross-examination.

 2            And that's our position.

 3            THE COURT:  All right.  Thank you,

 4   Mr. Davis.

 5            MR. DAVIS:  Thank you, Judge.

 6            THE COURT:  Ms. Milner, do you want to

 7   speak on this?

 8            MS. MILNER:  Beg your pardon?

 9            THE COURT:  Do you want to speak on this?

10            MS. MILNER:  No, Your Honor.

11            THE COURT:  I've got a few questions.  Why

12   don't you come up to the podium, okay?

13            MS. MILNER:  Do you want my client here as

14   well?

15            THE COURT:  No, let's just you and I talk

16   here.  Seriously, what do we mean here by Mr. Davis

17   pushes his buttons?  What is the conflict?

18            MS. MILNER:  I guess, during the course of

19   their relationship -- I mean, they were difficult

20   cases, I'm sure that there were issues.  But Mr.

21   Martinez made it very clear to me, once he realized

22   that Mr. Davis was on the case, that he had concerns

23   that based on their relationship, Mr. Davis would

24   know how to push his button, without disclosing what

25   those actual issues were.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  Okay.
 2                MS. MILNER:  And he's not prepared to
 3     waive.  He does not want to be crossed by Mr. Davis.
 4                THE COURT:  Well, you've been representing
 5     Mr. Martinez in this case.  You're also an officer of
 6     the court.  Are you concerned about Mr. Davis being
 7     on this case?
 8                MS. MILNER:  Yes, Your Honor, I am.
 9                THE COURT:  All right.  Anything else you
10     or Mr. Martinez wants to tell the Court about this
11     motion?  Anything else, Mr. Martinez?
12                THE DEFENDANT:  No, sir.
13                THE COURT:  All right.  I want to make sure
14     I have your views.  So if you want to tell me, or if
15     you want to tell Ms. Milner and she tell me.
16     Anything else?  Okay.
17                All right.  Anything else, Ms. Milner?
18                MS. MILNER:  No.  Thank you.
19                THE COURT:  All right.  Thank you, Ms.
20     Milner.
21                All right.  Ms. Armijo, I'll give you the
22     final word on this.
23                MS. ARMIJO:  A couple of things, Your
24     Honor.  Substantially related:  The murder in this
25     case is not the only element the United States has to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    prove.  It's a VICAR --
 2              THE COURT:  The what's not the only
 3    element?
 4              MS. ARMIJO:  The murder.  So it is a
 5    violent crime in aid of racketeering.  We have to
 6    prove that there was an enterprise, in this case the
 7    SNM.  We have to prove our interstate commerce.  We
 8    have to prove racketeering activity, the murder, and
 9    the motive in the case.
10              And I'm just going to give the Court an
11    example of how -- why Mr. Davis' representation is
12    important.  He says that, you know, it was just a
13    murder case.  But in that case, as I indicated
14    before, it was an SNM hit.  But if I am recalling --
15    there could be something that Mr. Martinez told
16    Mr. Davis back during that representation.  For
17    instance, he could have said:  It isn't an SNM hit,
18    it was a personal beef.  I just wanted to kill this
19    guy.  So I'm taking the rap for anybody involved.
20    Nobody else was involved.  I'm pleading guilty.  And
21    this was not gang related.
22              And I don't know if that conversation took
23    place.  But let's say for argument's purposes it did
24    take place.  And now Mr. Martinez is taking the
25    stand, now that he is cooperating, and he's going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    say that this was an SNM hit, and he's going to name
2    other people that committed the crime with him, that
3    were co-conspirators.  And Mr. Davis then could say,
4    You know what, he told me something different.  He
5    told me that it wasn't an SNM hit.  And that's where
6    the issue comes up.
7         There were two other attorneys that were
8    removed in this case, early on, before Your Honor
9    took over the case, in which the conflict wasn't
10   nearly as obvious in this case.  So it shouldn't be a
11   surprise, certainly, to anybody on this case.
12   Although I think that was probably before Mr. Davis
13   got on.  I know that other counsel know about the
14   issue.  So it shouldn't certainly be a surprise that
15   this is an issue and that we needed to bring it up.
16        THE COURT:  Well, I will not rule on it
17   today, Mr. Davis.  I will take it under advisement.
18   I will -- at the end of tomorrow, I will be asking
19   people for a batting order.  Maybe this is the first
20   thing that goes in the batting order.  And I'll take
21   a hard look at what you've said.  I don't know the
22   rules on actual and potential conflicts well enough
23   to make an informed decision.  So I will -- I'll get
24   you an opinion on it.  But my inclination is you
25   better get your house in order for a change of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   counsel.  But I'll give it a hard look.
 2              MR. DAVIS:  Can I be heard, please?
 3              THE COURT:  You may.
 4              MR. DAVIS:  Judge, let me restate.  I have
 5   no recollection of --
 6              THE COURT:  But I guess I just don't think
 7   that's relevant.  Now, you may find a case that says
 8   that a lawyer's memory is important on this issue.
 9   But I don't know of one.
10              MR. DAVIS:  Judge, what's relevant is
11   client confidences.  And what I'm telling the Court,
12   that's the whole issue of conflict of interest.
13              THE COURT:  But if he's been talking to you
14   and he remembers the confidences, then kind of --
15   it's irrelevant whether you remember them or not.
16              MR. DAVIS:  It's not relevant whether the
17   client remembers stuff.  It's whether the attorney,
18   who is potentially --
19              THE COURT:  But it's his interests that are
20   at stake.  If he's sitting there thinking, I bet old
21   Mr. Davis remembers that, I told him that --
22              MR. DAVIS:  But what I'm telling you is, I
23   don't remember anything.  And the things that Ms.
24   Armijo has told you about SNM, those are in the
25   police reports.  That was in the discovery.  That's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    public record that all the attorneys have, that
 2    they're going to use to cross-examine Mr. Martinez
 3    on.
 4              THE COURT:  Well, when you get back to
 5    Albuquerque, you shoot me any cases that tell me that
 6    a lawyer's memory is relevant to this issue.  If you
 7    find them, I'll take a look at them.
 8              MR. DAVIS:  It's not the lawyer's memory,
 9    Judge, it's the fact that I don't have any client
10    confidences that I recall.  There were none there.
11              THE COURT:  If you've got a case that says
12    that, I'll take a look at it.
13              MR. DAVIS:  The cases say -- are all about
14    conflicts exist if you're going to reveal client
15    confidences.  What I'm telling the Court is I don't
16    have any client confidences to reveal.
17              THE COURT:  And I'm sure there have been
18    attorneys that have thought the same.  If you can
19    find a case that says that's relevant, I'll take a
20    hard look at it.
21              MR. DAVIS:  Thank you, Judge.
22              THE COURT:  Thank you, Mr. Davis.
23              MS. ARMIJO:  Your Honor?
24              THE COURT:  Yes.
25              MS. ARMIJO:  Along those lines, there is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    another potential conflict that the parties are aware

2    of, and I spoke to both parties today, and I can

3    explain it to the Court.  We did not file a notice,

4    but I wanted the Court to at least be aware of it,

5    because I know that Mr. Blackburn is a very difficult

6    person to get ahold of.

7              THE COURT:  Get along with or get ahold of?

8              MR. BLACKBURN:  Both.

9              MS. ARMIJO:  And I believe that, from what

10   he told me this morning, Mr. Blackburn represented

11   Mr. Daniel Sanchez in a habeas corpus -- is that

12   right -- matter in which I think he was retained by

13   Mr. Sanchez' brother, Ron Sanchez.  And so I don't

14   know the nature of it.  I don't know if it is

15   something that would be SNM related or anything else.

16   So I'm at a loss.  That's why we didn't file a

17   motion.  I did email him several times to try and get

18   clarification.  Because Mr. Jewkes is actually the

19   one that brought it to our attention.

20             I was told this morning that I know -- I

21   believe Mr. Garcia waived something.  But I can't

22   provide the Court with more information.  I don't

23   know if Mr. Sanchez is going to waive any potential

24   conflict.  And I don't even know the nature of the

25   habeas corpus.  But we are -- Mr. Garcia's trial is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

```
 1    set to be in the latter part of it, but I think that
 2    this is something that we do need to at least address
 3    for the record.  I think the representation was for
 4    four years; is that correct?
 5              MR. BLACKBURN:  A little more than that.
 6              MS. ARMIJO:  So I think this is an issue
 7    that -- I'm at a loss since I don't know what it is,
 8    and I would ask that maybe Mr. Blackburn file
 9    something with the Court, at least that we could
10    figure out if there is an actual or potential
11    conflict, and if it is waive-able.  And that is why I
12    haven't filed anything, Your Honor.
13              THE COURT:  Well, do you want to speak to
14    that, Mr. Blackburn?
15              MR. BLACKBURN:  Sure, Your Honor.  Your
16    Honor, and I discussed this with the Government.  I
17    think, at the first or second arraignment I spoke
18    with Mr. Castellano when we were here, because Gary
19    Mitchell was involved in the case.  So, yes, I
20    represented Mr. Sanchez and his brother, Ronald
21    Sanchez, as it relates to a habeas from a murder case
22    that was in Los Lunas, New Mexico, that dealt with a
23    fight at a bar.  I did not represent -- this was I
24    think either 1990 or 1989.  I can't remember the date
25    of the case.  I did not represent him at the trial.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   He was represented by Ben Gonzalez, and Reggie

 2   Storment was appointed to represent him.

 3            On appeal, the appeal was handled by Gary

 4   Mitchell.  They retained Gary Mitchell to do the

 5   appeal to the New Mexico Supreme Court.  At the New

 6   Mexico Supreme Court they lost, and then they came to

 7   see me about a habeas, both of Sanchezes.  Now, I

 8   represented them on the habeas.

 9            THE COURT:  What was the nature of the

10   habeas?

11            MR. BLACKBURN:  The nature of the habeas

12   was ineffective assistance of counsel in that the --

13   there were two issues, basically two main issues.

14   The case is in front of Judge Pope, and he

15   transferred the case from Los Lunas to Belen due to

16   some pretrial publicity.  The victim's advocate for

17   the District Attorney's Office in Los Lunas, when

18   they went to trial in Grants, the sister of the

19   victim's advocate that had been with the family for

20   the victims in Los Lunas, ended up being on the jury

21   panel, and was not stricken by the defense lawyers,

22   even though they were aware of that particular

23   situation.

24            THE COURT:  I didn't pick juries in Los

25   Lunas without local counsel.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                MR. BLACKBURN:  The case is in Grants.
 2                THE COURT:  Oh, okay.
 3                MR. BLACKBURN:  So the case goes to Grants.
 4                THE COURT:  I didn't pick one in Grants
 5      either.
 6                MR. BLACKBURN:  Okay.  So anyway --
 7                THE COURT:  There was always a cousin on
 8      the jury.
 9                MR. BLACKBURN:  Well, in particular, it was
10      the sister of the victim's advocate.  So, anyway --
11      and it wasn't like they ran out of challenges.  They
12      only used eight of their challenges on a murder case.
13                Anyway, that was one of the issues.  There
14      was another issue about preparation as it relates to
15      an expert.  That was the issue.  Judge Pope was the
16      judge in the case.  And based upon the pleading
17      itself, and the fact that Judge Pope was the --
18      because you go back in state cases in front of that
19      judge, at the time he granted the habeas for an
20      evidentiary hearing.
21                One of the reasons why the case took so
22      long was there was a few issues involving Judge Pope
23      that we don't need to go into on the record here.
24                THE COURT:  That would be fun.
25                MR. BLACKBURN:  Well, do you want to know
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the time that he --
 2              THE COURT:  No, no.
 3              MR. BLACKBURN:   No.  But there was -- so
 4    eventually, after he took a 30- or 60-day hiatus,
 5    when he came back, he was requested, I think, by the
 6    Supreme Court to get rid of some of his cases.   And
 7    the first case he got rid of was this case.
 8              And the case then went to Judge Davis out
 9    in Sandoval County, who was not happy about that,
10    because obviously, it makes a difference when you're
11    the judge that heard the case.   And this was back in
12    the days where everything was done on tapes.   So
13    Judge Davis was not going to go back and listen to a
14    week's worth of testimony, and requested that we
15    transcribe those tapes.
16              And it took about six months to get that
17    done, because the District Attorney's Office wanted
18    to use Judge Camille Martinez' court reporter to do
19    it.   So this was sort of something she did after
20    hours, because she could do it for a minimal amount.
21    And that took forever.   By the time that was done,
22    the Sanchezes decided to hire somebody else, because
23    there was a family member that was a lawyer, who
24    could do this.   And I did not proceed any further.
25              The case went to an evidentiary hearing.   I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    had nothing to with the evidentiary hearing.  I
 2    turned everything over to another lawyer who did the
 3    evidentiary hearing.  And that this was basically it.
 4             We raised this -- I know that Mr. Mitchell
 5    and I talked to the Government briefly at one of the
 6    first hearings about that.  So that's what the case
 7    is about.
 8             I had talked to Mr. Jewkes, I think that
 9    particular day when I came down here -- I think it
10    was Mr. Garcia's initial arraignment, in 2016, in
11    January 2016.  Because he wasn't arraigned with the
12    rest of the people.  He was out of custody for a
13    number of years before he was brought in on this
14    case.  He was arrested in Denver.  And it took them
15    like 45 days to get him down here.
16             So that was basically it.  I've explained
17    all the circumstances to my client, Mr. Garcia.  And
18    he has had no objection to me going forward.  This
19    has been vetted back and forth with Mr. Sanchez'
20    lawyers, and they know the circumstances.  And it was
21    my understanding from the beginning that they had no
22    objection to me --
23             THE COURT:  And you're in the April trial
24    and Mr. Sanchez is in the January trial?
25             MR. BLACKBURN:  Yes, Your Honor.  So if the
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   Court needs to know any more, or --
 2            THE COURT:  Well, let me ask Ms. Armijo --
 3   direct your questions to me -- but is there anything
 4   else you want to know from Mr. Blackburn about that
 5   case?  Did that give you enough information?
 6            Mr. Davis, look at all that memory.  And
 7   Mr. Blackburn could keep going.
 8            MR. DAVIS:  I just remembered I forgot to
 9   make my record on something.  So I'd like to be
10   heard.
11            THE COURT:  Okay.  I'll give you a chance.
12            MS. ARMIJO:  And, Your Honor, I think that
13   the fact that it is -- that incident is not part of
14   the SNM; it's not an SNM-related activity.  So I
15   don't think that it would be necessarily relevant.
16   They are in two different trials, so I don't
17   anticipate -- if Mr. Sanchez took the stand for Mr.
18   Blackburn to cross-examine him.  So I don't believe
19   it's an actual conflict.  If anything, it's a
20   potential, and our position would be that, you know,
21   quite possibly to save the record for future
22   purposes.  If there is a waiver by both parties, then
23   that should take care of the issue.
24            THE COURT:  Okay.  Thank you, Ms. Armijo.
25            Mr. Jewkes -- why don't I get this one
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    taken care of, and I'll come back to you, Mr. Davis.
 2    Mr. Jewkes, do you have any thoughts on this?  Did
 3    you talk to Mr. Sanchez about it?
 4              MR. JEWKES:  No, Your Honor.  We were
 5    unaware that it was coming up today.  We will.
 6              THE COURT:  All right.  Do you know all
 7    that?  Was that new to you, or did you have knowledge
 8    of it?
 9              MR. JEWKES:  Yes.  What Mr. Blackburn just
10    explained to the Court is something that he explained
11    to me.  I'm not sure if Ms. Jacks -- no, it was the
12    first arraignment.  Yes, that's pretty much the way
13    it went down.
14              THE COURT:  Okay.  So you're going to talk
15    to -- you're getting a request here from Ms. Armijo
16    to get a waiver.  You haven't had a chance to talk to
17    Mr. Sanchez about that yet?
18              MR. JEWKES:  No, Your Honor.  We will --
19              THE COURT:  Okay.
20              MR. JEWKES:  -- in short order.
21              THE COURT:  All right.  Thank you,
22    Mr. Jewkes.
23              Anything else on that, Ms. Armijo?
24              MS. ARMIJO:  No, Your Honor.  The person I
25    spoke to was Ms. Jacks this morning about it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Anything else you
 2    want to say on that, Mr. Blackburn?
 3              MR. BLACKBURN:  No, Your Honor.
 4              THE COURT:  All right.  So I'll just wait.
 5    And why don't I let you drive things, Ms. Armijo.
 6    Since you're wanting the waiver, why don't you get
 7    back with Ms. Wild, and tell her what you want and
 8    when you want it.  And then, if everybody is on
 9    board, we'll do a colloquy.  If not, then we'll see
10    what the problem is at that time.
11              All right.  Mr. Davis.
12              MR. DAVIS:  Thank you, Judge.  Judge, I
13    just want to perfect my record with regard to having
14    my second counsel do the cross-examination on Mr.
15    Martinez.  That really solves any conflict issue.
16    The case law is very clear on that.  It's in my
17    response and set forth all the case law.  I can tell
18    you that -- whether you want to take testimony from
19    Ms. Bhalla, but I can tell you that we have not
20    discussed anything regarding Roy Martinez, other than
21    what's set forth in my response and my affidavit,
22    which I've stated here clearly I just don't remember
23    anything about him.
24              Despite Mr. Blackburn's good memory, I
25    don't have his memory.  And I don't think he's had my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    caseload over the last 17 years, or so.
 2              THE COURT:  Oh, oh, oh.
 3              MR. DAVIS:  My caseload is much higher than
 4    his.  I've had a state public defender contract for
 5    the last 20 years, and it keeps me pretty busy, so --
 6    and Mr. Martinez' case did not go to trial.  They
 7    were both state cases where I received all the
 8    discovery, including Grand Jury transcripts.  We did
 9    interview witnesses.  And most of my contact was with
10    witnesses.  The district attorney on the case is
11    dead.  It's just -- the case is just buried to me.
12              But I ask the Court to really consider
13    that.
14              THE COURT:  I will.
15              MR. DAVIS:  Even if you find that I can't
16    do anything, I should be able to stay on the case,
17    Judge.  Mr. Herrera is entitled to the continuity of
18    counsel.  And Ms. Bhalla can adequately cross-examine
19    Mr. Martinez instead of me.
20              THE COURT:  Well, I'm not eager to knock
21    you off, Mr. Davis.
22              MR. DAVIS:  I would hope not, Judge.
23              THE COURT:  I'll take a hard look at it.
24              MR. DAVIS:  Thank you.
25              THE COURT:  All right.  Let me get a little
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   organized here.  If nobody has anything better, why
 2   don't we talk about maybe the motion for extension of
 3   time to provide expert witnesses and notices and
 4   reports that Mr. Baca filed.  Do you want to take
 5   that on?
 6             MR. LOWRY:  Your Honor, I think we've
 7   discussed that with the Government.  That's a moot
 8   point.  We've all been satisfied.
 9             THE COURT:  All right.  Can you do this for
10   me, to help me clean up my docket:  Can you file a
11   notice -- you don't need to file another motion, just
12   file a notice withdrawing this motion.
13             MR. LOWRY:  Absolutely, Your Honor.
14             THE COURT:  Is that agreeable to you, Ms.
15   Armijo?
16             MS. ARMIJO:  Yes, Your Honor, it is.
17             THE COURT:  Anybody have an objection to
18   that?  All right.  Just file a notice, and we'll put
19   that aside then.
20             MS. MILNER:  Your Honor?
21             THE COURT:  Yes, Ms. Milner.  Do you want
22   to be excused?
23             MS. MILNER:  Yes, Your Honor.
24             THE COURT:  All right.  Any objection to
25   Ms. Milner being excused, and probably Mr. Martinez
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    being excused?  All right.  Hearing none, Ms. Milner,

2    thank you for your assistance.  Mr. Martinez, have a

3    good day.

4              (Ms. Milner and Mr. Martinez left the

5    courtroom.)

6              THE COURT:  All right.  So let's take up

7    then the motion for timely discovery of Giglio

8    materials.  This will be Document 1163.

9              Let me speak a little bit about discovery.

10   And I've got great respect for all the counsel in the

11   room, so what I'm about to say is not meant to

12   criticize anyone.  But we've got to get real.  We're

13   getting into that wingspan of a trial here.  So we've

14   got to get very real.

15             We've got Mr. Garcia very close, Chris

16   Garcia is very close to trial on the drug thing.  I

17   went through about 20 motions to get ready -- I think

18   it was 21 -- which is the exact number I have teed up

19   today to get ready for that trial -- 20 today, 21

20   then.  And I'm not being critical here.  Mr. Garcia,

21   I don't think won any of the motions.  A lot of what

22   I'm seeing are overlaps from that preparation for

23   that trial in this trial.  Now, part of the reason he

24   didn't prevail there is because I didn't think that

25   material was relevant to that case.  But it might be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   relevant here, so I'm going to keep a very open mind.

2          But at the same time, putting Mr. Garcia

3   aside, Chris Garcia, a lot of you defense lawyers are

4   joining in on those motions.  That's fine, you can do

5   that.  But you can get buried behind that train.  And

6   that's all we can do here is do Mr. Chris Garcia's

7   motions.  I can do that, two days here, three days at

8   Thanksgiving, most of the month of December, most of

9   the month of January.  So I'm not criticizing anybody

10  and what their strategy is.

11          But if you want Mr. Chris Garcia to run the

12  show, that's your call.  If you want to get your

13  stuff ahead of that you're going to need to speak up

14  and tell me that you want your stuff first.

15  Otherwise, I'm just going to take them in order.

16          Now, let's talk a little bit about

17  discovery.  I think you know that I try to give

18  people their day in court, and I've tried to be

19  patient and tried to plow through this discovery.

20  Ultimately, however, I have to depend upon the United

21  States to do their job, to provide Brady, Giglio, and

22  Rule 16 information to you.

23          Now, Mr. Garcia can file a 45-page motion

24  to compel, and we can go through all those things.

25  But ultimately, it's that table over there that's got

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    to do its job to produce the information under Brady,

2    Giglio, and Rule 16, to get it in your hands to try

3    the case.

4              Now, we can prod, we can push, we can bring

5    things to their attention.  But 45 pages, I don't get

6    that, guys, in a civil case.  You know, they don't do

7    that anymore.  So a criminal case in which you're

8    sitting there dictating every possible document you

9    can possibly think of, like it's a civil case, you

10   know you're not going to get that.  You've got to

11   make the showing under those cases that you're going

12   to get it.  Otherwise, we're relying on them.

13             So I'll be patient.  I will listen.  But I

14   think we know where a lot of that is going.  And I

15   say that only because you folks that are behind

16   Mr. Garcia, you may have more important issues than

17   all those motions to compel that Mr. Garcia is

18   preparing and filing.  If you don't, if you want to

19   sit here and listen to Mr. Garcia advocate for

20   documents multiple times, we'll do it.  But the rest

21   of you are going to have to decide if that's in your

22   best interests.  And if it is, I take your word for

23   it.  We'll just take all of Mr. Garcia's motions and

24   plow through them.  But if it's not, you need to

25   speak up.  You need to tell me, Judge, we've got some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   more important issues here.  We've got motions to
 2   suppress.  We've got things that need to get us ready
 3   for trial.  Because the reality is, if we run out of
 4   time on all the motions that Mr. Garcia is going to
 5   file, they're going to be deemed denied, and we're
 6   going to go to trial.  And we're going to all rely
 7   upon the Government having done work under Brady,
 8   Giglio, and Rule 16.  If they didn't do their job,
 9   we'll find out about it, and people will be in
10   trouble.
11            So I hope that was of some help.  I don't
12   mean to be critical.  Everybody has got to do their
13   job, and I'm not questioning it.  But just take that
14   as an observer here, a somewhat interested observer,
15   and how we're going to get this thing ready for
16   trial.
17            All right.  Mr. Castle, were you going to
18   make -- argue on this motion?
19            MR. CASTLE:  Yes, Your Honor.
20            THE COURT:  Mr. Castle.
21            MR. CASTLE:  Before I do, the Court had
22   just made some comments.
23            THE COURT:  Sure.  I'd love your feedback.
24            MR. CASTLE:  Would the Court appreciate it
25   if the defense would discuss amongst each other and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    try to give the Court a proposal -- of course, with

2    the Government -- a proposal of what we think are the

3    motions that should be heard, and in what order to

4    the extent we can, with our schedules and things of

5    that nature?

6             THE COURT:  Well, I'm not dictating it.

7    But you might -- if what I said prompts some way to

8    help you get ready for trial, you know, I don't want

9    to get form over substance.  If there is issues -- if

10   there is issues you want to talk about, let's talk

11   about issues, let's pull them out, and don't get

12   trapped in the motions.

13            Tell me what -- you know, tell me what is

14   concerning you as you get ready for trial that you

15   don't think the Government has done.  I think it

16   would be better to pull some key issues out.  And

17   some of that stuff, I mean, boy, I -- some of that

18   stuff that I read in that 45-page motion, quite

19   frankly, I don't know what it is.  I mean, I think

20   people are being very creative.  But it looked a

21   whole lot a civil RFP than it did anything I'm

22   familiar with seeing here in court.  And we're all

23   experienced in this room.  I just sometimes wonder

24   if, is anybody else doing that in any other case?

25            MS. HARBOUR-VALDEZ:  Your Honor, I'm sorry

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   to interrupt, but --

2           THE COURT:  Let me say one thing here.  To

3   just respond specifically to Mr. Castle's point.

4   Ms. Wild worked very hard with some of the counsel to

5   get a batting order here.  So if you do that, it may

6   conflict with some of the stuff that she and counsel

7   have been doing over the last few days.  We put some

8   dates out there.  And this is me, so -- but I'm going

9   to probably -- at this point we're not going to --

10  we'll work with counsel to try to make sure motions

11  are heard in a good order.

12          But you're going to have to start being

13  here.  You know, these dates are going to become

14  inflexible, and you're just going to have to tell

15  other judges and courts that you've got to be there.

16  We're within that sort of wingspan.  So just be

17  careful.  I'm not trying to be inflexible.  But at

18  the same time it's my job to keep this thing on a

19  track to get it to trial.

20          Now, Mr. Castle, Ms. Harbour-Valdez wanted

21  to say something.  Do you want to yield the floor?

22  All right.

23          MS. HARBOUR-VALDEZ:  Your Honor, I just

24  wanted to know which motion you were referring to.

25  Because on my list we're talking about 1163 right

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    now; correct?  You're making reference to another
 2    motion?
 3              THE COURT:  The 45-pager.
 4              MS. HARBOUR-VALDEZ:  Yes.  I wasn't sure.
 5              THE COURT:  Yeah.  But a lot of people
 6    signed on to it.  And I know who wrote it, but a lot
 7    of people signed on to it.  So I thought I needed to
 8    give some general comments.  And y'all can dissuade
 9    me.  I mean, maybe I'm wrong.
10              MS. SIRIGNANO:  Your Honor, may I be heard?
11              THE COURT:  Well, let me let Mr. Castle
12    decide what we're going to do here.  It's his motion.
13    If he wants to argue it, he can.  If he wants to
14    yield the floor, he can as well.
15              MR. CASTLE:  I'm the person from out of
16    state, so I'm going to yield the floor to the
17    representative of the great State of New Mexico.
18              THE COURT:  Okay.  Ms. Sirignano.
19              MS. SIRIGNANO:  Thank you, Judge.
20              THE COURT:  You can get up here close.  I'm
21    not going to bite you.
22              MS. SIRIGNANO:  Oh, I know that, Judge.
23    We've been doing this too long.
24              For everybody's reference, that's Doc 1267.
25    And I'm happy to pare that down, Judge, that's no
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    problem.  And I appreciate the comment on my

2    creativity, and my firm's.

3              THE COURT:  Okay.

4              MS. SIRIGNANO:  And for the record, I'm

5    happy to yield the floor to anyone after this.  We

6    can take this at the bitter end.  And any other

7    co-defendant can go before me.  You did state

8    Ms. Wild, Ms. Harbour-Valdez, and I did literally

9    spend two or three days trying to get this line-up

10   teed up.  And so if there is anyone unhappy about the

11   order of that, Mr. Garcia is happy to go last.  And

12   if, perhaps, we got a response from the Government on

13   these motions, then maybe we'd be able to pare it

14   down, the length of it, and the seriousness of it.

15             And, as you know, the Government is

16   responsible for its own obligations under Brady, Rule

17   16, Giglio, and Jencks.  It's just that we are all

18   suffering from discovery issues right now, leading up

19   into January.  And so that was my intent.  And what I

20   can do is withdraw this document and pare it down, if

21   you'd like, Judge, and get it heard in early

22   December.  That's no problem.

23             THE COURT:  Well, you don't worry about

24   what I think or want.  You've got to represent

25   Mr. Garcia.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. SIRIGNANO:  Indeed.
 2              THE COURT:  And I'll trust you to do the
 3    best job you can for him.  Let's hold that.
 4              MS. SIRIGNANO:  And I'll yield the floor to
 5    anybody.
 6              THE COURT:  Okay.  Let's let Mr. Castle --
 7    and it's his motion, if -- like I said, most of these
 8    are defendants' motions, so if y'all want to juggle
 9    them and bring issues, I'm game.
10              MS. SIRIGNANO:  Thank you, Judge.
11              THE COURT:  Thank you, Ms. Sirignano.
12              MR. CASTLE:  Your Honor, 1163 is titled
13    motion for timely discovery of Giglio material.  So
14    there is two issues:  The timeliness issue and
15    specific areas of Giglio materials.  And I'd like to
16    take those in kind of reverse order.
17              THE COURT:  Okay.  Why don't we do this:
18    Why don't we take issues, and then, as I've done in
19    the past, after we get through an issue, let me go
20    ahead and hear from the Government, so we can take
21    this a bite at a time.  Does that work for you, Mr.
22    Castle?
23              MR. CASTLE:  That sounds good.
24              THE COURT:  All right.  Thank you, Mr.
25    Castle.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          MR. CASTLE:  Your Honor, there were a
2    couple of issues the Government didn't respond to,
3    and so I don't know whether they're in disagreement.
4    And so --
5          THE COURT:  Why don't you list them out,
6    let's see what they say.
7          MR. CASTLE:  The first one was that we had
8    indicated that Giglio obligations extend to, quote,
9    "any individual whose statements the Government
10   intends on offering as an exception or exclusion to
11   the hearsay rule."  I believe --
12         THE COURT:  Help me think through what
13   you're trying to say there.  What is your concern?
14         MR. CASTLE:  Well, I think the Government
15   is going to take a pretty wide view of what is a
16   co-conspirator statement, for example, because they
17   take a wide view of what the SNM is.  And we have the
18   right under Federal Rule of Evidence 806 to impeach
19   the credibility of any declarant.  And so, if they're
20   offering that, their Giglio obligations should extend
21   to those declarants, whether they call them as a
22   witness or whether they don't.  And, in fact, I would
23   argue their need to give us Giglio materials to
24   people that we don't get to cross-examine at all is
25   probably greater.  So they didn't address that.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   don't know if they're objecting to that.  But that is

 2   our request.  And I can give the Court a little more

 3   argument if they're going to object.

 4           THE COURT:  Well, give me a little bit more

 5   explanation as to what the issue -- tell me the kind

 6   of witness that you're thinking of.  A witness in a

 7   document that is saying something about a defendant,

 8   and you want to impeach that person; is that what

 9   you're thinking of?

10           MR. CASTLE:  Yeah.  They could call one of

11   the informant witnesses.  And he says:  I was having

12   a discussion with another SNM member, who relayed to

13   me that -- the following.  And so, all of a sudden,

14   we have this other individual, and the Government

15   says, Well, you know, maybe establish a foundation

16   where they say:  Was this in a discussion of how the

17   SNM should operate in furtherance of the SNM

18   conspiracy?  The informant witness says:  Yes, it

19   was.  We were talking about SNM business, and he told

20   me the following.

21           And so, at that point, we have the right

22   to -- whoever that declarant is, if they've got five

23   felonies, and you know -- or perhaps they're not even

24   a member of the SNM.  There might be things that we

25   would impeach that person with if they testified at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    trial.  But they're not there.  And so we need to
 2    have that material to bring in under 806.
 3            THE COURT:  What if they got cumulative
 4    evidence that a number of people are saying the same
 5    thing?  So they are not going to show a witness --
 6    they're not going to bring a witness; they're not
 7    going to bring a document; there is not going to be
 8    any reference to another person, do you still --
 9    because that person has knowledge, you think you're
10    entitled to Giglio material?
11            MR. CASTLE:  Well, I think we are, because
12    the determination of whether that's going to help the
13    jury is a matter of weight.  And whether the Court
14    makes a finding of it's redundant, and also requires
15    the prosecution to know whether all that other
16    information is going to come in in their assessment
17    of Giglio.  And I think it's almost impossible to
18    tell how the Court is going to rule, whether this is
19    cumulative or things of that nature.  And so the
20    better rule is, if you're going to bring a hearsay
21    statement in --
22            THE COURT:  Well, I agree with you.  Don't
23    bring the hearsay statement in of that witness.  You
24    would agree with me that you don't need the Giglio
25    material for that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  I would.
 2              THE COURT:  If they decide we've got 10
 3    witnesses who will say it, but we're not bringing the
 4    tenth in?
 5              MR. CASTLE:  Right, I agree.
 6              THE COURT:  All right.  Well, let me pause
 7    there.  Mr. Castellano, Mr. Beck, are you going to
 8    handle these?  Where are you drawing the line?
 9              MR. BECK:  I'm handling this one.  I agree
10    with both you and Mr. Castle.  I think the rules
11    provide that you can impeach a hearsay declarant.  So
12    if it's impeachment, it falls under Giglio.  But I
13    agree with you that if there is cumulative statements
14    all saying the same thing --
15              THE COURT:  And you're not going to bring
16    in the statement, and you're not going to bring that
17    witness, so the jury will never know that there was a
18    person there whose credibility needed to be
19    determined.  That's where you're drawing the line?
20              MR. BECK:  Right, right.  If --
21              THE COURT:  Are you drawing it any tighter
22    than that?
23              MR. BECK:  No.  You put it better than I
24    could.
25              THE COURT:  Well, I don't know about that,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    but -- all right.  Can you live with that line then?
 2              MR. CASTLE:  Absolutely, Your Honor.
 3              THE COURT:  All right.  And Mr. Beck, any
 4    other guidance on that?
 5              MR. BECK:  No.  I agree with the Court.
 6              THE COURT:  Let me ask this:  Is that what
 7    you needed is the line, or do you need any sort of
 8    rulings on any particular witnesses or statements?
 9              MR. CASTLE:  No, Your Honor.  All we
10    requested was Giglio on witnesses who are going to
11    testify, or declarants whose statements are going to
12    come in at trial.
13              THE COURT:  All right.  Let's go to the
14    next issue, if that -- let me ask this, since a
15    number of people joined your motion, anybody else
16    want to say anything on that issue?  Giglio?  Mr.
17    Lowry?
18              MR. LOWRY:  Your Honor, if I may real
19    quickly.
20              THE COURT:  Yeah.  You've got to come up to
21    the mic.  Ms. Bean can't hear you.
22              MR. LOWRY:  I don't really have much to add
23    to that.  But the concern I have on behalf of Mr.
24    Baca is I think the problem we're going to run into
25    is the one we've been confronting.  And I think it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    frustrating.  The production of discovery is the
 2    Government is going to say, Well, we don't know who
 3    that tenth person is going to be yet.
 4              THE COURT:  Yeah.
 5              MR. LOWRY:  So we don't have the obligation
 6    to disclose.
 7              THE COURT:  I assume that's going to come
 8    up a little bit somewhere; right?
 9              MR. LOWRY:  Yeah.  And I think that's
10    really the nub of the issue.  So I would beg to
11    differ slightly from Mr. Castle's position.  I don't
12    disagree with the sentiments of my learned
13    colleagues, that that might not be relevant or
14    admissible if they're not going to call that person.
15    But my concern is that's going to be a roadblock to
16    the disclosure.
17              And the Court is well aware of this.  As
18    you said, we're within the wingspan of trial.  And
19    we're already getting enormous document dumps, and
20    electronic data dumps.  And this is going to compound
21    that problem immensely if we wait for the Government
22    to fine-tune their prosecution.
23              And I don't think, with all due respect to
24    the Government's obligation -- and I know that this
25    is something they're wrestling with -- but I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    see the harm in overdisclosing, and let them figure
2    our their tenth person that they're not going to call
3    later, so the defense teams can begin their
4    preparation in utilizing that material now to
5    complete their investigations.  As this Court's well
6    aware, we're all running out of time, and we have to
7    create our task list of what's important and what's
8    not.
9            And for some of us in particular counts,
10   this case is all about confidential informant
11   testimony.  If there is no tangible evidence, it's
12   going to be a circumstantial case.  And this kind of
13   impeachment material is critical to the defense, Your
14   Honor.  So that's my concern.
15           THE COURT:  All right.  I think, though,
16   the line we've drawn is unassailable.  What you're
17   saying is it's going to create problems, but you
18   probably --
19           MR. LOWRY:  Yes, Your Honor.
20           THE COURT:  -- know me as well.  I'm not
21   going to force the Government to do disclosures that
22   they're not required to disclose.  And I think that
23   this would be getting into the area of forcing them
24   to do something that they're not required to do.
25           MR. LOWRY:  I would think --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1            THE COURT:  I'd rather work with the
 2    problem than start ordering the Government to do
 3    something that I don't really have the power to do.
 4            MR. LOWRY:  Well, I understand that, Your
 5    Honor.  But I think there are some witnesses that are
 6    indisputable that are going to be called.  And I
 7    don't see the harm in producing that material now,
 8    instead of waiting until the 11th hour.  And I'm
 9    thinking about Eric Duran, who is one of the key
10    witnesses in this whole Molina case, the Marcantel
11    case.  They can't move their case forward without
12    Mr. Duran.
13            THE COURT:  Yeah.
14            MR. LOWRY:  And to sit on the Brady and
15    Giglio information that's relevant to Mr. Duran is --
16    under the notion that they don't know whether they're
17    going to call him or not is a little disingenuous, I
18    hate to say.
19            THE COURT:  All right.  Well, let's hold
20    that thought.  I know that's an issue, and we'll come
21    back to it.  The Government can be thinking about it.
22    But let's get the legal principles out, and then
23    we'll deal with some of the individual stuff as we go
24    along.
25            Mr. Castle.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1            MR. CASTLE:  The only thing I neglected to
2   tell the Court was we heard at previous hearings that
3   the Government intends to offer statements of
4   co-defendants that were against their interests
5   against other co-defendants.  We obviously need to
6   impeach those individuals under 806.  And so I
7   believe the same Giglio obligation would apply.
8            We heard, I think in another motion -- I
9   don't know which one -- I think Rudy Perez' team
10  asked for their prior bad acts.  And the Government
11  is saying:  We don't want to give those out.  Well,
12  that would be Giglio, if his statements were going to
13  be used against my client, for example.
14            So I think the same obligation goes towards
15  the defendants.  Whatever Giglio information they
16  have against a defendant, if they're going to --
17  there is a chance they're going to use that statement
18  against another defendant, they have a Giglio
19  obligation.
20            THE COURT:  That seems to make sense to me.
21  Do you agree with it, Mr. Beck?
22            MR. BECK:  Yes, Your Honor.
23            THE COURT:  Okay.  Anything else you need
24  on that issue?
25            MR. CASTLE:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            THE COURT:  All right.  Anybody else want

2    to speak on that?

3            All right.  Mr. Castle.

4            MR. CASTLE:  The second area is what does

5    the obligation extend to?  The Government, in their

6    motion, conceded their obligation to obtain Giglio

7    materials that are in their possession and in the

8    possession of the New Mexico Department of

9    Corrections.

10           In a motion that we filed, 1183, which is

11   not scheduled this week, we set forth evidence,

12   fairly significant evidence, that the Joint Task

13   Force, the two New Mexico Joint Task Forces were

14   involved in the investigation into at least the 2001

15   murders, and probably the other murders in this case

16   throughout the time of this indictment.  And so I

17   believe that the obligation extends to the Joint Task

18   Force; obviously FBI, any federal agency that has

19   assisted the Government in this case, including the

20   United States Marshal's Office, and also the New

21   Mexico Department of Corrections.

22           And I don't know if they object to that, so

23   I won't make any further argument unless that's

24   necessary.

25           THE COURT:  It would seem to that if you've

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    got a federal person in a Joint Task Force, it

2    probably extends that far.  I mean, if the State

3    Police is doing their thing, I don't think it extends

4    that far.  If you've got Bernalillo County.  But if

5    you got it as part of a task force, it would seem to

6    me, then, that the duty extends.  And we've already

7    talked about the corrections department.  What do you

8    think about that line?

9              MR. BECK:  Well, two things.  Number one,

10   this isn't the motion that we're discussing now, so I

11   didn't brief that portion of it.  I have some

12   thoughts on it.  But I worry about the parade of

13   horribles if we just start going down motions that

14   we're not talking about at this point.

15             Secondly, to address the point that we're

16   not talking about in this motion, I think Your Honor

17   is right, that when we're talking about task force

18   officers involved in this investigation, the SNM,

19   these cases, that would be NMCD, which Your Honor has

20   already ruled; we acknowledge we have custody and

21   control over their records, and we've been proceeding

22   that way.

23             Now, again, we're getting into other

24   motions.  But my anticipation of that argument is

25   going to be that a 2001 task force may have been

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    comprised of different agents.  And the federal
2    government may have been more closely aligned with
3    different state agencies than it is at this point.
4    So we may not have the same relationship.  So, at
5    this point, in 2017, the case law would reflect
6    differently upon our ability to get custody or
7    control over those records than maybe it would have
8    in 2001.
9              So I anticipate that will be the argument.
10   And I think that's a proper argument.
11             THE COURT:  Understanding that problem, can
12   you do it this way, so that the defendants know
13   exactly where the problems are and not.  I'm not sure
14   they can do anything about it.  But at least -- I'm
15   thinking somewhat protection for you in any 2255, as
16   well as just they know the problem.  If it's current
17   task force, or it's task forces that were involved in
18   the prosecution -- in the development of this case,
19   then if you had federal government officials
20   involved, you then have to produce those materials,
21   and we'll assume that you're doing that.
22             If, on the other hand, it is task forces
23   that go back to 2001 and 2002, if because of your
24   working relationships with, you know, say, Bernalillo
25   County Sheriff's Department, you can't get those
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    documents, and so they are not in your possession,
 2    custody, or control in the sense you can pick up a
 3    phone and get them --
 4              MR. BECK:  Right.
 5              THE COURT:  -- you'll send a letter to
 6    defense counsel telling them:  I don't have those.
 7    We tried, and we do not have that.  We don't have the
 8    control aspect on that document.  That way, they know
 9    the problem.  And I think it might protect you down
10    the road with a 2255.  What would you think about a
11    procedure like that?
12              MR. BECK:  I think that's how we've been
13    proceeding.  And I think it makes sense logically if
14    you look at the case law.  If we have task force
15    agents from NMCD, which we do, then those task force
16    agents can go back to NMCD, and we have that flow of
17    information.
18              If we don't have task force agents from New
19    Mexico State Police or Dona Ana Sheriff's Department
20    or Bernalillo County Sheriff's Department, we don't
21    have that the flow of information, so logically, it's
22    not in our custody and control.  And I think that's
23    what we're saying, is that in 2001, there may have
24    been task force agents from NMSP, DASO, that we don't
25    have any longer contacts on.  So that's my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    distinction.  I think we're in the same place, and

2    I'm happy to convey that to defense counsel.

3              THE COURT:  And you can tell them on these:

4    I don't have control, these I do?

5              MR. BECK:  Yes, Your Honor.

6              THE COURT:  Can you live with that line,

7    Mr. Castle?

8              MR. CASTLE:  I can live with that line.

9              The one thing I would note is this was in a

10   motion, so it wasn't something from another motion.

11   But I think it's a good line to draw, because of

12   this.  The case law says that we cannot subpoena

13   documents that are within the control of the

14   Government.  And so, if we subpoena something, and we

15   get the answer, well, you're denied -- and I give the

16   Court an example of that -- we've requested materials

17   under IPRA from the New Mexico Department of

18   Corrections for phone calls that informers have made

19   while they're in custody.  And we've been told by the

20   New Mexico Department of Corrections that they don't

21   have them anymore.  They gave them to the US

22   Government.  We've asked the US Government for them,

23   and they said they don't have them, the New Mexico

24   Department of Corrections has them.  That's an agency

25   that everyone's agrees is under the prosecution.  We

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   can't really --
 2               THE COURT:  I'm not sure they agree.  But
 3   they fought it hard.
 4               MR. CASTLE:  That's the law of the case at
 5   least.
 6               So I think it's a starting point, because
 7   then we can know what we can do with subpoenas, and
 8   what we cannot do, and we have to rely upon the
 9   Government, and looking at 2255 if they didn't.  But
10   I think that's a starting point that we can live
11   with.
12               THE COURT:  Everybody comfortable with
13   that, as where we're going to draw the line on that
14   material?
15               All right.  Next issue, Mr. Castle.
16               MR. CASTLE:  Well, the only thing I would
17   ask is that they inform us fairly soon.  And I don't
18   know if a suggested date by which they would inform
19   us, but it won't do us any good if it's the day
20   before trial.
21               THE COURT:  Mr. Beck, can you propose a
22   date by which you'll send this letter?
23               MR. BECK:  Well, I don't know what I'm
24   responding to.  So if I get inquiries -- if I get a
25   letter from Mr. Castle or an email, easily an email,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   that says:  Can you get documents from these
 2   agencies, I can respond back to that.  But I think
 3   there is just a class of which I might not be
 4   responding to if I don't have some kind of inquiry
 5   from him which agencies he's looking at.
 6              THE COURT:  All right.  Are you agreeable
 7   to sending a letter, Mr. Castle?
 8              MR. CASTLE:  Yes, I can state right now.
 9   It's what's said in the U.S. Attorney's Manual, which
10   is "federal, state, and local law enforcement
11   officers and other government officials that
12   participated in the investigation and prosecution of
13   the criminal case against the defendant."  That's
14   what their manual says they're supposed to collect
15   and give to us.  I can put it in a letter, but it's
16   right there.  It's in our motion.  We put it in our
17   motion saying:  Here's what we want.  That's as good
18   as a letter.
19              THE COURT:  I read the manual.  You know
20   I'm not going to enforce the manual.  What do you
21   need, Mr. Beck?  Tell Mr. Castle what you're needing
22   that you're not hearing today.
23              MR. BECK:  Well, I think we're talking
24   about two different things.  If he and I can talk
25   afterwards, and he can just tell me who he's looking
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   for.
 2              THE COURT:  Go ahead over there, Mr.
 3   Castle.  Y'all talk right now.
 4              MR. CASTLE:  Judge, we're going to give him
 5   a list.
 6              THE COURT:  All right.  And then, Mr. Beck,
 7   you're going to get a list today.  How long would you
 8   propose to take to respond to that list?
 9              MR. BECK:  Considering we're working
10   through the week here, probably Tuesday.
11              THE COURT:  All right.  Can you live with
12   that, Mr. Castle?
13              MR. CASTLE:  Yes, Your Honor.  And what I
14   agreed with him was that I would give him a list
15   today.  I don't know about all the counsel that
16   joined in this motion.  I think that we can say that
17   two weeks from whenever a particular counsel provides
18   their list to the Government.
19              THE COURT:  Can you live with that, Mr.
20   Beck?
21              MR. BECK:  Two weeks from when we're
22   provided a list?  Yes.  And so I'm clear on this,
23   because I think we're -- we may have some issues at
24   our table -- we're just asking for a list of who we
25   think is in our custody and control, which of these
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    agencies; not actual, like, Giglio information?
 2              THE COURT:  No, this is -- you can correct
 3    me if I'm wrong -- what you'll be indicating is on
 4    this task force, this list, on this item, we are
 5    accepting our role as having possession, custody, and
 6    control, because we had federal officers involved.
 7    And on other task forces or joint efforts, because of
 8    the passage of time and whatever your relationship
 9    with those law enforcement agencies are, you do not
10    have possession, custody, and control in the sense
11    that you can't pick up the phone and order that
12    state, local agency to provide documents to you.  Did
13    I state it correctly?
14              MR. CASTLE:  Yes, sir.
15              THE COURT:  Can you live with that?
16              MR. BECK:  And we will --
17              THE COURT:  So we're not talking about
18    specific Giglio material.  We're sort of just setting
19    the parameters here, so that we know what you got and
20    accepting responsibility for.  They know what you've
21    got and accepting responsibility for.  And then we'll
22    maybe fight over the consequences of that another
23    day.
24              All right.  Live with that, Mr. Castle?
25              MR. CASTLE:  Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  Live with that, Mr. Beck?

 2                MR. BECK:  Yes, Your Honor.

 3                THE COURT:  Anyone else?  Ms. Sirignano?

 4                MS. SIRIGNANO:  Yes, Your Honor.  I just

 5      want to make sure the order covers all joined

 6      defendants as well.  We'll be providing our request

 7      to Mr. Castle or to the Government independently.

 8                THE COURT:  And these rules of engagement

 9      apply to everybody in the room, Mr. Beck?

10                MR. BECK:  Yes, Your Honor.

11                THE COURT:  All right.  Does that do it for

12      you, Ms. Sirignano?

13                MS. SIRIGNANO:  Yes, Your Honor.

14                THE COURT:  All right.  Anyone else?

15                All right.  Next issue, Mr. Castle?

16                MR. CASTLE:  These are not general

17      considerations.  These are specific requests.  I can

18      tell the Court that my review of the Government's

19      responses is they've agreed to -- either agreed to or

20      say that certain categories do not exist.  So I'm

21      only going to address two areas that I believe we're

22      still asserting, other than the ones that they've

23      conceded.

24                THE COURT:  All right.

25                MR. CASTLE:  The first is competency or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   mental illness.  The Government cited a case from

2   Judge Brack, which says that if they're aware of such

3   materials for their witnesses, they then have an

4   obligation to provide that.  And they indicate that

5   for one defendant they're aware of such materials.

6   For that one defendant --

7           THE COURT:  Do we know the defendant?

8           MR. CASTLE:  Yes, Eugene Martinez.

9           THE COURT:  And do we know where the

10  documents are located?

11          MR. CASTLE:  No, because we have not been

12  provided them.

13          THE COURT:  Okay.  Let me ask you this:  Is

14  this still you, Mr. Beck?

15          MR. BECK:  I think in some ways it is, and

16  some ways it's not.  I think Giglio area it is.  I

17  think Eugene Martinez it's not.

18          THE COURT:  Do you know where the documents

19  are?  You must know some information about them.

20          MR. BECK:  That's the portion that's not.

21  That's Mr. Castellano.

22          THE COURT:  Okay.  Mr. Castellano?

23          MR. CASTELLANO:  Regarding Mr. Martinez, I

24  think our basic response for Eugene Martinez, is a

25  lot of documents are actually what we considered the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Court's documents, because there was competency

 2    evaluation.  So a lot of those documents -- what we

 3    had suggested was the Court conduct an in camera

 4    review to see what the Court believed was Brady,

 5    Giglio.  And we agree there are probably materials in

 6    those documents and in those materials which the

 7    defense is entitled to.

 8            The Court wrote a 69-page opinion which is

 9    on the docket.  I think it has probably just about

10    everything the defense needs.  I mean, they can look

11    at that and see if they need more.

12            But we can't release the competency

13    evaluation to the defense.  And so our position is

14    the Court has those documents.  Those are the Court's

15    documents.  And that was the Court's determination.

16    And so what we'd asked -- what was a review of those

17    documents.  And then, what I would recommend with

18    regard to those documents is the Court -- and if the

19    Court wants counsel to chime in, the Court can make a

20    determination about what should or shouldn't be

21    disclosed from those documents.

22            And I would ask possibly that Eugene

23    Martinez' attorney have the opportunity to review

24    those to see if there is any objection that he may

25    have to the disclosure.  But I think he will also

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  agree that there are materials in there which the

 2  defense is entitled to.  And we don't dispute that.

 3            THE COURT:  Well, my memory is a little

 4  fuzzy on exactly what the psychological reports said.

 5  But I bet I can tell you what they say.  There is

 6  going to be a long list of documents that the

 7  psychiatrist or psychologist reviewed at the

 8  beginning of that report, right?  And then they gave

 9  me the report.

10            Here's the problem:  Where do we want to

11  cut it off?  Is what you really want is those two

12  reports?  Because all that background stuff, I don't

13  have.  And chances are -- wasn't it a Buttner -- it

14  was a Buttner review, wasn't it?  We had a local

15  review, and then we had a Buttner review.  It was

16  two-step, wasn't it?

17            MR. CASTELLANO:  That's correct, Your

18  Honor.  It was a facility in Los Angeles, rather than

19  Buttner.  But basically --

20            THE COURT:  Right, yeah, it was LA.  Yeah.

21  Was it Terminal Island?  Long Beach?  It wasn't in a

22  federal facility.  Was it at Metropolitan?

23            MR. CASTELLANO:  It was Metropolitan

24  Detention Center.  So your document is Doc 1118.  The

25  Court has made findings of fact.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  And I've unsealed that?
 2              MR. CASTELLANO:  Yes.  There is initially a
 3   sealed document.  You gave the parties an opportunity
 4   to seek redaction as necessary.  And then the Court
 5   placed it on the docket.  So if -- and the other
 6   thing we were concerned about is whether or not the
 7   defense is entitled to all of his records, or whether
 8   what's more relevant are the facts from the records
 9   that they need for purposes of impeachment.
10              THE COURT:  Well, I'm sure Mr. Castle knows
11   this, and probably everybody in the room, but just so
12   we're on the same wavelength, when I get a report, I
13   don't typically get the backup information.  I'm
14   going to get the report from the psychologist, local;
15   and then, when I get it from the BOP, it's going to
16   be a report.  It's lengthy.  That's the reason it
17   took a while to put that together because it's
18   lengthy, and there is a lot of information in there.
19   But I don't have the backups.
20              So the questions is, are you comfortable,
21   if we can limit the universe to the two psychological
22   reports, then it seems to me -- if that's what you
23   want, then it seems to me, given that Ms. Milner
24   didn't ask for a lot of -- or any redaction, she may
25   not care whether I give you the two reports.  We
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    could put them in a confidentiality order.  It can be
 2    attorneys' eyes only, or something like that, to
 3    protect Mr. Martinez' privacy as much as possible.
 4    But it may be that we just contact her during the
 5    lunch hour, and see if she'd have any problem with us
 6    doing that.
 7              Now, if you're wanting all the backup
 8    stuff, it seems to me that, you know, certainly the
 9    local expert is not going to be under the
10    Government's possession, custody, or control.  And
11    I'm not even really sure that you could impute all
12    the medical records over at the BOP to the Government
13    because of HIPAA, and those sort of things.  So you
14    might have to do a subpoena on those if you want to
15    get the hard records.
16              What are you thinking?  Do you think those
17    two reports would be enough?
18              MR. CASTLE:  I don't.
19              THE COURT:  You don't?
20              MR. CASTLE:  I'd like to agree, because it
21    makes it easy.  But --
22              THE COURT:  Would you agree with me that
23    probably the local psychologist that we used to do
24    the initial evaluation is not going to be in the
25    possession -- the Government's possession, custody,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and control?
 2              MR. CASTLE:  Well, I don't know who hired
 3    that individual.
 4              THE COURT:  Well, it was probably
 5    technically me, in the sense that I get a CJA request
 6    to hire, and probably I defer to Ms. Milner's
 7    suggestion of who it was.  And then I sent them out.
 8              MR. CASTLE:  Yeah, I believe that would be
 9    a defense expert.
10              THE COURT:  Okay.
11              MR. CASTLE:  Whenever they waived, and
12    provided to the Court and to the prosecution, that
13    would be in the possession of the Government that
14    they would have to turn over.
15              THE COURT:  So if we get Ms. Milner to
16    agree on the report, you'd have the name -- I'm
17    sorry, Mr. Couleur -- yeah, I'm getting my Martinezes
18    confused here.  Get Mr. Couleur to agree, because he
19    didn't have any objections to the memorandum opinion,
20    if he would agree, you'd have that name.  And then,
21    if you want to subpoena it, you could.
22              MR. CASTLE:  Yes, Your Honor.
23              THE COURT:  What about the BOP, though?  It
24    seems to me a little bit hard to say the U.S.
25    Attorney's office has possession, custody, and
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    control over Mr. Martinez' medical records at the

 2    BOP.

 3              MR. CASTLE:  Well, I'm somewhat arguing in

 4    a vacuum, because I don't know if the Government

 5    requested the evaluation by BOP.  And if they did,

 6    then I believe it would be under their umbrella.  But

 7    it's the Government's obligation.  And so we all know

 8    that the materials that were sent there, there is no

 9    confidentiality anymore because the defendant waived

10    it by providing them outside.

11              THE COURT:  Well, but there is really no --

12    I don't know, when you say documents sent there, who

13    are you thinking of?  Me or the Government or Mr.

14    Couleur?

15              MR. CASTLE:  Normally, in the competency

16    evaluation, the parties will send to the evaluator

17    materials they think are relevant.  My guess is Mr.

18    Couleur sent materials, because he was raising

19    competency, that supported a finding of incompetency.

20    The Government would have turned over some discovery:

21    I don't care about that, it's material we already

22    have; that they may have sent over, so the evaluator

23    can make some kind of an intelligent decision about.

24    What I'm basically talking about is materials that

25    Mr. Couleur sent over, likely.  So at that point

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

**BEAN**
**& ASSOCIATES**, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1   there is no waiver.  It's in the possession of a
2   governmental agency.
3             I can tell the Court what the problem is
4   going to be, if the burden is on us, we're going to
5   have to file a subpoena.  We're going to have to do a
6   Touhy letter.  We're going to have to litigate this
7   out.  We're going to bring in individuals.  But why
8   are we doing all that, when frankly, there is no
9   privacy right anymore.  He waived it.  He raised
10  competency as something that he thought he needed to
11  do to try to protect himself and avoid answering the
12  charges here.  But we believe that that is their
13  obligation.
14            THE COURT:  Let me ask this, Mr.
15  Castellano, could everybody live with this?  Rather
16  than requiring you to go get those materials, if what
17  we really need here is a court order, would everybody
18  agree to a stipulated court order?  Are y'all not
19  opposed to a court order?  And we put it on the BOP
20  to produce whatever it is.  Because we know -- I
21  think we're all in agreement it's going to contain
22  some material.  The question is who's -- if we have
23  to -- somebody has to go through that, it's going to
24  take a tremendous amount of time.  What would you
25  think about that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. CASTELLANO:  For the most part, I

2    agree, Your Honor.  The problem is that I don't

3    believe Eugene Martinez waived all confidentiality.

4          THE COURT:  Well, I'm not saying he does.

5    I think probably what we need to do is get hold of

6    Mr. Couleur and say, Would you be willing to just

7    stand down, not fight on this, allow the two reports

8    that the Court got to be given to the defendants, so

9    we can put it into some confidentiality order or

10   something like that.  If he says no, then I agree

11   with you, we're probably back to a little bit square

12   one on this.  But if we get Mr. Couleur to play a

13   little ball with us on this, and everybody just stand

14   down and issue an order to the BOP, and let's see

15   what we get, could you live with that?

16         MR. CASTELLANO:  I think so, Your Honor.

17   And like I said, I agree there are materials in there

18   to which they're entitled.  I just don't agree that

19   they're entitled to all of the materials.  And I

20   think, if I remember correctly, there is a report

21   from MDC, and then the defense wanted its own expert

22   to evaluate --

23         THE COURT:  I believe that it was Dr. Cave,

24   but I could be wrong on that.

25         MR. CASTELLANO:  It might be in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    memorandum opinion and order.  But there is a second
 2    opinion by the defense expert.  Is it Dr. Westfried?
 3              THE COURT:  Is that the first one?
 4              MR. CASTELLANO:  Dr. Westfried was the
 5    defense expert.  And so that was -- Dr. Johnson
 6    was --
 7              THE COURT:  The first time?
 8              MR. CASTELLANO:  Dr. Johnson was from MDC,
 9    and Dr. Westfried was the defense expert.
10              THE COURT:  So there were two
11    psychologists?
12              MR. CASTELLANO:  Yes, I believe that's
13    correct.
14              THE COURT:  Yeah, okay.  Well, since I used
15    those so extensively in the opinion, it may not be
16    that Mr. Couleur cares about those.  We can get those
17    rather quickly in the defendants' hands.
18              Stopping right there, would that be okay
19    with you?
20              MR. CASTELLANO:  What I would ask is that
21    Mr. Couleur be given a chance to review the materials
22    and make objections.
23              THE COURT:  Okay.
24              MR. CASTELLANO:  Because I know there are
25    materials he probably won't want to disclose, they're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    probably embarrassing to his client and not relevant.
 2              THE COURT:  All right.  And then I can take
 3    a look at those redactions and see if I think there
 4    is any Brady or Giglio, Rule 16 material, and then go
 5    from there.
 6              MR. CASTELLANO:  Yes, sir.  We would be
 7    fine with that procedure.
 8              THE COURT:  And then could you live, then,
 9    with the -- if the defendants want to pursue these
10    documents, we do it the same way; that they come
11    maybe to the courthouse, Mr. Couleur look through
12    them before they're turned over to the defendants?
13              MR. CASTELLANO:  Yes.
14              THE COURT:  Okay.  Mr. Castle, what I
15    suggest is maybe some of y'all on the team call Mr.
16    Couleur -- and let's maybe even while we're here in
17    Las Cruces, see if we can get hold of him, see if he
18    can live with that.  If he can't live with it, then
19    we'll be down here, and we can talk about the next
20    options.  Could you live with that?
21              MR. CASTLE:  That sounds fine, Your Honor.
22              THE COURT:  All right.  Anybody have a
23    problem with that?  All right.  So that's tentative.
24    We'll see what Mr. Couleur says.  If he plays ball,
25    then that will solve that problem.  If he won't, then
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    we'll regroup sometime while we're down here.

 2            MR. CASTLE:  And at that time we'll also

 3    discuss the underlying facts that might have been

 4    shipped off to Buttner; is that right?

 5            THE COURT:  Well, I'm assuming -- if

 6    Mr. Couleur will give you what he shipped.

 7            MR. CASTLE:  Yes, then that would be fine.

 8            THE COURT:  That would solve problems.  And

 9    tell him we can probably work with attorneys' eyes

10    only, we can do confidentiality, things like that.

11    But I'm assuming that if he doesn't say that, then we

12    get a court order, and then, you know, we'll have to

13    deal with Buttner and see if they'll just produce it.

14    And he may want that for his protection, too.  I

15    don't know.

16            MR. CASTELLANO:  And I'm fairly certain the

17    materials we would have sent would have been the

18    discovery materials.  I will double check that.  I

19    expect any other confidential materials would have

20    come from Mr. Couleur.

21            THE COURT:  Well, educate me a little bit.

22    Sometimes on those competency, do y'all send

23    materials out to the BOP?

24            MR. CASTELLANO:  Yes.  From time to time,

25    Your Honor, what they'll ask is for basic reports

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    regarding the incident, so they can ask the person
 2    being subjected to testing.  So they will ask for
 3    copies of the indictment and copies of the discovery.
 4    And we send those over.
 5              THE COURT:  Okay.  Well, I didn't know
 6    that, so that's good to know.
 7              All right.  Anything else on that issue?
 8              MR. CASTLE:  Yes, Your Honor.  The
 9    Government said they were only aware of two different
10    individuals --
11              THE COURT:  Let's do this, if we're going
12    to have a couple more individuals, why don't we take
13    them up after lunch.  Would that work for you?
14              MR. CASTLE:  Okay.  And I'll share that
15    with the Government again and see if it resolves some
16    of those.
17              THE COURT:  Okay.  All right.  Let's shoot
18    for about an hour.  I'm going to leave the building.
19    I'm going to take a walk.  So let's shoot for an
20    hour.  Nobody is going to start without anybody.  But
21    let's shoot for being back here about 1:30.  All
22    right.  See you then.
23              (The lunch recess was held.)
24              THE COURT:  Las Cruces has a new barbecue
25    place across the street there.  I guess we don't need
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to all show up at one time, but I recommend it.  I
 2   think Mr. Jewkes tried it, so you can ask his
 3   thoughts on it.
 4           All right.  Mr. Castle, if you want to
 5   resume -- and I think where we were is you were going
 6   to bring up a couple more folks that we needed to
 7   think about the medical records on.
 8           Hold on just a second.
 9           MR. LOWRY:  Judge, can I take up one quick
10   housekeeping matter?
11           THE COURT:  Is that all right, Mr. Castle?
12           MR. CASTLE:  Sure.
13           THE COURT:  All right.  Go ahead, Mr.
14   Lowry.
15           MR. LOWRY:  Your Honor, I don't want to
16   belabor this.
17           At the very beginning of this case, Your
18   Honor had instructed and frankly admonished the
19   defendants about their behavior in the courtroom.
20   And there seemed to be, over the course of the
21   proceedings, some type of agreement that as long as
22   their courtroom behavior was top-notch, that over
23   time the courtroom security issues perhaps could get
24   more relaxed.  And I couldn't help but notice this
25   morning everybody is back in the black boxes.  And I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    was wondering if the Court could address this.  And

 2    so if there is anything we can talk about --

 3              THE COURT:  Yeah.  Yeah, the guys are

 4    misbehaving.

 5              MR. LOWRY:  Okay.

 6              THE COURT:  You know, I told you, I said,

 7    if you want to -- we'll work with you.  But you're

 8    misbehaving.

 9              MR. LOWRY:  Is there anything in

10    particular?

11              THE COURT:  Don't bring stuff to the

12    courthouse.  Talk to your clients.  Don't bring stuff

13    to the courthouse.

14              MR. LOWRY:  Okay.

15              THE COURT:  Okay.  You tell them.  You tell

16    them not to do that.

17              MR. LOWRY:  I believe you, Your Honor.  And

18    I've talked to the marshals.

19              THE COURT:  I'm talking to contraband.

20              MR. LOWRY:  Your Honor, I agree.  I've

21    talked to them, and as far as I know my client --

22              THE COURT:  Don't bring stuff here.

23              MR. LOWRY:  Okay.

24              THE COURT:  Now, if I can get an assurance

25    people are going to behave and not bring contraband
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to the courthouse, we'll talk about it.  But we're

 2    going to go back to the old days if they're going to

 3    misbehave.

 4              MR. LOWRY:  Understood.  Are we talking

 5    drugs?

 6              THE COURT:  Shanks.  Razor blades.  Don't

 7    bring them to the courthouse.

 8              MR. LOWRY:  Understood.

 9              THE COURT:  Not here; not in Albuquerque.

10              MR. LOWRY:  Nowhere.  No.

11              THE COURT:  And the reason is, you know,

12    I'm okay.  People are going to protect me, they're

13    going to protect the staff.  I'm worried about you

14    guys in the room.  I'm worried about your clients.

15              MR. LOWRY:  Understood.

16              THE COURT:  We know what's going on here.

17    And I don't want anybody hurt.  So I'm watching out

18    for you guys, you know.  I know some of you are

19    the -- you know, there is the huntees and the

20    hunters, I know that.  But we don't need that.  We

21    don't need that in a federal courthouse.  We want

22    everybody to be safe.  So when you come to the

23    courthouse, we want everybody to be safe.

24              MR. LOWRY:  I appreciate that.

25              THE COURT:  So you talk to them.  Everybody
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    talk to their client.  If we can make it a little
 2    more comfortable, I'd love to do it.  But right now,
 3    I'm feeling that -- like we got some folks here that
 4    are in danger.
 5              MR. LOWRY:  Okay.
 6              THE COURT:  So let's work together.  And
 7    we'll try to work together.
 8              MR. LOWRY:  Okay, Your Honor.  Thanks.
 9              THE COURT:  All right.
10              MS. JACKS:  May I just ask a question, Your
11    Honor?
12              THE COURT:  Sure.  I may not answer it, but
13    you can ask it.  You remember that old rule?  Don't
14    ever ask a judge a question because it embarrasses
15    him or her.
16              MS. JACKS:  If you're able to say, was
17    there something brought to the courthouse today,
18    or --
19              THE COURT:  I don't know about today.  I
20    don't know about today.
21              MS. JACKS:  Okay, thank you.
22              THE COURT:  But it's happened.
23              Mr. Blackburn, are you going to ask me
24    another question?
25              MR. BLACKBURN:  Sure.  If you'll answer it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  I answered that one, didn't I?
 2                MR. BLACKBURN:  Yeah, can you out the team
 3     that's doing that so we can come talk to you?
 4                THE COURT:  No, I probably can't do that.
 5                MR. BLACKBURN:  I mean, because as you say,
 6     there is the hunters and the huntees.
 7                THE COURT:  Yeah.
 8                MR. BLACKBURN:  You know, and that's not
 9     fair to all of us.  It's one sweeping agenda.
10                THE COURT:  Well, you know, I can't keep
11     track of everything.
12                MR. BLACKBURN:  I understand.
13                THE COURT:  And to be honest, I probably
14     couldn't tell you the names.  If I sat here for a few
15     minutes -- I can remember one, I can remember one.
16     But I can't remember them all.  So why don't you talk
17     to the Government, why don't you talk to the
18     marshals.  If that helps you --
19                MR. BLACKBURN:  I mean, most definitely we
20     will do that, because if there is a problem, I think
21     it's because of -- it's for all of us to address
22     because it's affecting all of us.  So if there is one
23     person, I would like to out them.
24                THE COURT:  Well, I think I've demonstrated
25     that we worked with you when everybody is behaving.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   Now, I don't know if it's because we're getting
2   closer to trial or what, but we've got to get back to
3   that, if we're going to make it work.
4              MR. BLACKBURN:  Okay.  Well, I'll talk --
5              THE COURT:  I don't like people being
6   uncomfortable just to be uncomfortable.  That's not
7   my --
8              MR. BLACKBURN:  Well, we were speaking
9   about this, like, this morning they brought my client
10  by himself, when everybody else comes together from
11  Otero, which makes it look like that he has been
12  outed doing something that -- maybe he's talking to
13  somebody or something, and that causes issues itself.
14             THE COURT:  I don't minimize the problem.
15  And I fully understand what you're saying.  But
16  that's below the level I get involved in.
17             MR. BLACKBURN:  Okay.
18             THE COURT:  So you'll have to talk to the
19  U.S. attorneys and marshals about that.  Because I
20  just can't micromanage everybody getting here.
21             MR. BLACKBURN:  No, I understand.  And if
22  they are not willing to talk to us, do we get to come
23  back and talk to you?
24             THE COURT:  You can come back.  The
25  courthouse door is never closed, especially to you,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Mr. Blackburn.

 2              MR. BLACKBURN:  Thank you, Judge.

 3              MR. CASTLE:  Will you remember that?

 4              MR. BLACKBURN:  I won't forget it.

 5              THE COURT:  You won't forget it.

 6              Let's see, Ms. Fox-Young, are you on the

 7   phone?

 8              MS. FOX-YOUNG:  I am, Your Honor.

 9              THE COURT:  And let's see, Mr. Adams, are

10   you on the phone?  Mr. Adams?

11              MR. ADAMS:  I am, Your Honor.

12              THE COURT:  All right.  Good afternoon to

13   you.

14              Mr. Castle.

15              MR. CASTLE:  Your Honor, over the break, we

16   resolved a couple of things, or at least agreed to

17   shelve some of them.  There were two other

18   individuals that we believed there was evidence in

19   the discovery that indicated they had mental health

20   issues other than Mr. Martinez.

21              I can tell the Court with regard to Mr.

22   Martinez -- we've contacted his attorney -- his

23   attorney is going to discuss things with Mr. Martinez

24   and get back to us, and we'll inform the Court.

25              THE COURT:  Did he give you any sort of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   time frame?  Is that something we can wrap up down

 2   here?  Mr. Cooper?

 3           MR. COOPER:  His client is in Lovington,

 4   he's in Santa Fe.  He asked if there was a time

 5   crunch.  I said, Absolutely there is.  And he said,

 6   Let me see what I can do.  But beyond that, I don't

 7   have any --

 8           THE COURT:  What's he doing in Lovington?

 9           MR. COOPER:  I don't know.

10           THE COURT:  At the Hobbs facility, okay.

11           All right.  Thank you, Mr. Cooper.

12           MR. COOPER:  Thank you.

13           THE COURT:  Mr. Castle.

14           MR. CASTLE:  There is another individual,

15   Leonard Lujan, the Court has heard about.  The

16   discovery indicates that he was on all kinds of

17   medicines for antipsychotic, bipolar medicines,

18   things like that.  The Government is going to contact

19   his lawyer, Mr. Clark -- who was here earlier, but

20   he's not here now -- and we're going to try to see

21   what we can resolve before we use the Court for any

22   assistance.

23           THE COURT:  Okay.

24           MS. ARMIJO:  Mr. Clark will be here at

25   3:15.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.
 2              MS. ARMIJO:  Maybe if there is a break or
 3     something, you can meet with him.
 4              MR. CASTLE:  Then the third individual
 5     is --
 6              THE COURT:  If we come back to this, y'all
 7     may need to refresh my memory on Lujan.
 8              MR. CASTLE:  I will.
 9              And the third individual is an individual
10     by the name of Jimmy Ray Gordon.  The Government
11     indicates they're not going to call him as a witness
12     so I don't believe they have an obligation under
13     Giglio, unless of course his statements are going to
14     come in.  But I don't believe they're offering that.
15              With that, there was one other general
16     issue -- oh, actually there are two other matters.
17     One is we'd asked for prior placement records.  I
18     think we've come to an agreement on that.  Now, what
19     our concern was, they indicate that three individuals
20     other than Mr. Lujan, who they said participated in
21     the crime with our client, but three individuals who
22     say:  On some unknown date in the last 15 years was
23     housed with our client, and our client confessed to
24     them his involvement.  They can't identify the dates
25     that happened.  And so they're going to give us the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  placement records for those individuals, so we can

2  compare them to our client's placement records to see

3  if it's even possible that that conversation

4  happened.  And so I don't think there needs to be any

5  court orders in that regard, because they're agreeing

6  to that.

7          The other issue I looked at over the lunch

8  hour was, when we had asked for Giglio materials, we

9  asked for evidence of illegal drug use of their

10 witnesses.  The Government did not respond to that.

11 I'm not sure they disagree with that.  But before I

12 make argument about that, perhaps the Court can

13 inquire.

14         THE COURT:  All right.  So this is probably

15 going to be -- let me see if I can state what the

16 request is -- that if the Government knows or has

17 some document or some witness, 302, something like

18 that, that indicates that the witness has used drugs

19 in the past, you'd like some ruling on that whether

20 it's going to be a Giglio?

21         MR. CASTLE:  Yes, Your Honor.  They've done

22 some of that, for example, in the crime base that

23 we're dealing with, in 2001 --

24         THE COURT:  You're just trying to confirm

25 across the board they're treating illegal drug use as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  a Giglio issue?

2         MR. CASTLE:  Right, because a lot of them

3  were using heroin at the time they were apparently

4  observing things.

5         THE COURT:  Mr. Beck, is that what you're

6  doing?

7         MR. BECK:  Yeah.  I think to the extent

8  that the Government knows about that, it would be in

9  the defendants' disciplinary reports, which have been

10  produced and will be produced in the next disclosure.

11         THE COURT:  But as far as -- when you're

12  doing your Giglio and Brady review, you're treating

13  illegal drug use as a Giglio issue?

14         MR. BECK:  Yes.

15         THE COURT:  Okay.  Is that all you need on

16  that?

17         MR. CASTLE:  That's all I need on that,

18  Your Honor.

19         THE COURT:  Anybody else?  Resolve that?

20         All right.  Mr. Castle.

21         MR. CASTLE:  The final issue is one that's

22  probably the most concerning for us is timing.  When

23  we filed our motion, the Giglio motion, it was filed

24  in May of 2017.  And the Government's response, they

25  filed it on June 7, 2017.  And in that response they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    indicated that they would, quote -- well, "disclose,"

2    quote, "impeachment evidence immediately."  They

3    haven't.  What we've gotten on all the people that we

4    know are going to be witnesses is their criminal

5    history and their plea agreements, with some minor

6    exceptions.  We haven't gotten Giglio material.  And

7    their most recent responses to the motion to compel

8    said they're not going to give us that until they

9    finally decide on witnesses two weeks prior to trial.

10           Now, the irony in that is earlier this

11   morning the Government moved to remove an attorney in

12   the case because they said that Arturo -- not Arturo,

13   but --

14           THE COURT:  Martinez.

15           MR. CASTLE:  Roy Paul Martinez was going to

16   be a witness in the case.  So they were going to the

17   extreme length to try and remove an attorney for one

18   of the defendants here, yet they haven't turned over

19   Giglio material concerning Mr. Martinez.

20           I'm using that as an example to tell the

21   Court that, look, they've made some decisions.  And

22   I'd be shocked if they hadn't.  They were within two

23   or three weeks of trial last summer.  And to say that

24   they haven't made any decisions on what witnesses

25   they're going to call, I think is disingenuous.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Sure, there are couple.  I mean, maybe the answer is

2    that's the tenth person that might confirm something,

3    and they have marginal use.  But for most of our

4    clients, we can identify who the chief witnesses of

5    the Government are.

6              THE COURT:  Well, let me -- and, you know,

7    the Government can speak for itself on this issue --

8    but is the somewhat dwindling number a factor in

9    probably the Government deciding who they're going to

10   call and not call at trial?

11             MR. CASTLE:  I think it isn't.  Because

12   they --

13             THE COURT:  Is not?

14             MR. CASTLE:  Is not.  Because they've

15   retained defendants on almost every crime base.

16             THE COURT:  They've done what?

17             MR. CASTLE:  They've retained at least some

18   defendants on each crime base.  I can't say with

19   100%, but I know that counsel one and two, for

20   example, have a number of defendants.

21             THE COURT:  Well, give me the solution.

22   What do you see the solution as being?

23             MR. CASTLE:  Well, I think the Court had

24   already provided a solution, which indicated that the

25   prosecution was to review its files and produce

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                 1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

```
 1   Giglio materials by June 9 to --
 2              THE COURT:  Well, they disagreed with that
 3   ruling, but they also are living by it.  And I mean,
 4   they disagree that the timing on Giglio material is
 5   the same as Brady material, but they acknowledge that
 6   that's my ruling, and they'll live with it.  But tell
 7   me from a practical standpoint how we now sort of
 8   implement that to get you what you need?
 9              MR. CASTLE:  Well, Your Honor, with all due
10   respect, I think they told the Court in their
11   responses that they're not going to live with it.
12   They're not going to do it until two weeks prior to
13   trial, even though the Court ordered it previously.
14              So we're here at an impasse.  And what I
15   suggest is anything that's in their possession right
16   now that they haven't turned over needs to be turned
17   over within a week.  There is no reason to hold it
18   back, other than a strategic tool to try to put
19   defense at a disadvantage.  That wasn't the design of
20   Jencks, for example.  And this Court already
21   indicated Giglio and Brady trump Jencks.  So I would
22   say that within a week they should produce that
23   material.  And then within a reasonable period --
24              THE COURT:  Well, I'm treating Brady and
25   the Giglio differently than I'm treating Jencks.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  Yes.  Brady-Giglio --
 2              THE COURT:  I won't say "trump," but we're
 3   not going to talk about Trump.  We're not going to
 4   talk about Trump, we're going to talk about the law
 5   here, right?  But they run alongside each other,
 6   right?
 7              (Defendant Christopher Chavez entered the
 8   courtroom.)
 9              THE COURT:  Mr. Christopher Chavez just
10   walked into the courtroom.  Mr. Chavez, good
11   afternoon to you.  We missed you.
12              THE DEFENDANT:  Good afternoon.
13              THE COURT:  All right.  And your attorneys
14   said it was all right to proceed without you.  We
15   tried to take some motions that didn't involve you.
16   That's okay?
17              THE DEFENDANT:  That's fine.
18              THE COURT:  All right.  Good to see you.
19   Glad you're here.
20              THE DEFENDANT:  Good to see you.
21              MR. CASTLE:  I won't say trump, but I would
22   say there is a huge difference, following along with
23   humor.
24              THE COURT:  Okay.  I got it.
25              MR. CASTLE:  So what do we do now when the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Court has already ordered it and they haven't

2    produced it?  One of the defendants, I believe --

3    well, maybe with one exception -- didn't ask for

4    sanctions.  We asked to come back here and let's give

5    it another try, to try to get them to get the

6    materials to us.  So what I am suggesting is

7    everything they've already collected within a week,

8    and two weeks to collect the remaining, with

9    obviously an option that they in good faith, and

10   still haven't been able to obtain it, they could

11   indicate so.

12            I would ask for a certificate of

13   compliance, because the history of this case -- and

14   it's unfortunate, I don't want to cast aspersions --

15   but the history of this case is this Court has

16   ordered production of things, and they don't get

17   produced many times, when they have been ordered to

18   have been produced.  We've had motions to compel on

19   the table that clearly set forth that the Court

20   ordered this back in June, and those motions to

21   compel have been standing here for a month or two,

22   and still we don't have it.

23            And so, you know, I don't think -- and I'm

24   not counting on the Court, if I violate the orders of

25   the Court that the Court is going to look very fondly

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    on that, and I'm sure I'll pay a sanction.  I'm not

2    asking for a sanction.  I don't believe almost all

3    the defendants are.  We're just asking for

4    production.  And I think they do need to indicate

5    that they've complied, and give us a timeframe.  If

6    they want it outside two weeks, they need to tell us.

7    So I cannot reiterate enough that their plan was two

8    weeks prior to trial.  That's going to be

9    insufficient for us to make real use of it.  I mean,

10   there are materials where we need to follow up, find

11   witnesses, some of the witnesses might be Government

12   witnesses, where you have to file a Touhy affidavit.

13   It's a huge burden.

14          The bottom line is this has been litigated.

15   The law of the case is they were supposed to produce

16   it.  They haven't.  So now we're here.

17          And I believe some other defendants want to

18   address this issue, because I think it underlies all

19   the motions to compel.  But I don't know what else to

20   tell the Court.

21          THE COURT:  Well, I don't want to cut

22   anybody off.  But why don't I hear -- let me talk to

23   the Government a little bit, and then I'll hear from

24   other people.  But let me sort of hear what the

25   Government is thinking on this.  Mr. Beck?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BECK:  So I think -- I mean, I think

2     there is some misunderstandings here.  And it's

3     probably everyone's fault.  In terms of Giglio

4     information, we understand the Court's ruling.  And

5     as the Court said, we don't agree with it, but we're

6     abiding by it.  There has been numerous productions

7     of jail calls, disciplinary history, classification

8     records, pen packs, STIU files, jail calls.  There

9     has been numerous productions, and those are still

10    ongoing.

11          I mean, the jail calls alone for Eric Duran

12    I believe so far are at 5.6 gigabytes.  And those are

13    coming out.  So that production is huge.

14          I think what the defendants are really

15    latching onto here is, like, the payments to these

16    cooperating defendants, and these haven't been turned

17    over.

18          And as Court acknowledged, our trial

19    strategy is different today than it was in June, in

20    terms of who we're anticipating we'll call as

21    witnesses.  Some cooperating defendants who we

22    intended to call as witnesses are not looking so

23    appealing to call as witnesses after a few incidents

24    that we've discussed here in court.  Some others who

25    have recently made the decision to come onboard are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    looking more appealing.  So that is in flux.  And

2    until -- I think the United States' position is that

3    until we decide who we're going to call as witnesses,

4    certain information is not Giglio.  So I think we've

5    been consistent on that.

6            In terms of payments, we take the same

7    position.  But that being said, we're just going to

8    turn it over to what we paid these co-defendants,

9    because people know that they were here sitting with

10   them months ago, and now they're not.  So we're not

11   protecting their identities.  And in the interest of

12   just being done with these arguments, we're turning

13   that stuff over.  We're not conceding that it's

14   Jencks or Brady because we don't know whether we're

15   going to call these people.  But as I said, I think

16   that's what the thrust of the case is that we haven't

17   turned over these payments or cooperator agreements,

18   which don't exist.  You know, things like that.

19           So I think there is a fundamental

20   misunderstanding of information that we have,

21   information that falls under Giglio, in terms of our

22   current posture for this case, and what we've turned

23   over.

24           So I hope I've answered the Court's

25   question, that some of this stuff is lengthy in terms

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    of -- Eric Duran, for example, we've been talking a

 2    lot about him.  We don't know that we're going to

 3    call him at this point.  We may.  That being said, as

 4    I said, his jail calls alone are 5.6 gigabytes.  We

 5    turned over his disciplinary report, 277 pages.  His

 6    classification records, 330 pages.

 7            This next round of discovery coming from

 8    the discovery coordinator will have 122 pages of his

 9    visitation records, his pen pack, his STIU file, a

10    phone dump from his cellphones.  So that we're not --

11    I just want everyone in this room to be aware that we

12    understand the Court's order; that we're abiding by

13    it.

14            And I think their view of our trial

15    strategy is different than ours.  And it is in flux

16    to some extent.

17            So I don't know if the Court has any more

18    questions.

19            THE COURT:  Well, I want to hear from

20    everybody.  But let me begin to work with an idea.

21    Y'all may all shoot it down, but let's see if there

22    is something here we can work with.

23            Normally, I wouldn't start getting witness

24    lists until the pretrial conference.  And I don't

25    know when the pretrial conference is set here -- it's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    not been set.  But what if I just set a deadline for
 2    witness lists.  And the witness list that the
 3    Government gives to the defendants is the one that
 4    the Giglio responsibilities are immediate.  And that
 5    will -- I'm not saying it's due today, but we set a
 6    time -- because at some point, we're going to have to
 7    have a witness list -- let's set it.  Leave
 8    everything else for the pretrial conference, but set
 9    it.  And then that would give those people you're
10    responsible for the production of Giglio and Brady
11    material -- people not on the list -- and it will
12    force you to sort of maybe front-end load this
13    discussion some.  And you can be generous.  But you
14    know that if you keep them on the list, you're going
15    to be responsible for it.
16              How would the Government react to that?
17              MR. BECK:  I have two thoughts on that.
18    The first is that we have a witness list disclosure
19    deadline in the current scheduling order by the
20    Court.
21              THE COURT:  When is it?
22              MR. BECK:  January 19 is when the witness
23    lists are due.
24              THE COURT:  Well, what if we moved it up
25    some.  And you can revise it --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BECK:  Right, understood.

2              THE COURT:  You can revise it to knock some

3    people off.  But it's going to put a little bit of

4    teeth into my ruling that the Giglio material is due

5    immediately.

6              MR. BECK:  Right.  So I think it's January

7    12, which I believe is 17 days before trial, it

8    sounds like; 17 days, a little more than two weeks.

9    And again, I'm thinking that -- I think that's fine,

10   and I understand the Court's position.  I think the

11   defendants are primarily concerned with cooperator

12   testimony.  And I think that, with the information

13   that I just described to the Court, that we're

14   turning over -- that we have turned over in the

15   past -- excuse me, and that we're turning over now,

16   including payments to cooperators --

17             THE COURT:  If I just left you alone, when

18   do you think you'd have all that material to the

19   defendants?

20             MR. BECK:  I mean, honestly, I'll listen to

21   my co-counsel here, but I think they're largely

22   getting all of it now, aside from Jencks statements.

23   The Court separated Jencks.  And I mean Jencks

24   statements in the Court's -- what I think is proper

25   under the law view of Jencks statements, which means
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  that we've taken a broad, inclusive approach to

2  Giglio and Brady in this case, looking at what we may

3  have at one point considered Jencks statements in the

4  context of statements that these now cooperating

5  defendants have provided to law enforcement in the

6  past, that may be inconsistent with what they

7  provided to the United States in proffer statements

8  or debrief statements that we may have otherwise held

9  back as Jencks.

10          So I think largely -- I think it would be

11  much ado about nothing if we do impose this new

12  witness list deadline.

13          THE COURT:  Well, if you are saying that if

14  you haven't turned over -- and I'll give it a big

15  category, the compensation or the payments to the

16  cooperators, if that's sort of the last big bundle of

17  stuff that hasn't been turned over, what would be

18  your deadline, if I left you alone, to getting that

19  into the defendants' hands?  If you're guessing right

20  this is what this is all about, when do you think you

21  could have that bundle of discovery into the

22  defendants' --

23          MR. BECK:  As I said earlier, we are

24  turning that over in this next round of discovery.

25  We don't agree that it's Jencks, but we'd rather just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    get it out there to stop arguing about it.

2            THE COURT:  When is that going to be turned

3    over?

4            MR. BECK:  I assume it will probably go to

5    the discovery coordinator in two weeks.  And I don't

6    know the dissemination on the tablets, but I think

7    it's rather quick.

8            THE COURT:  Well, then -- and this is what

9    I was thinking when I was saying moving up the

10   list -- we're not very far apart -- I was thinking

11   about the end of business on the 22nd, which is that

12   week is when I'm going to be back down here.  So that

13   will give you a couple of weeks, solidify your

14   witness lists, get whatever is out there.  If you do

15   it in advance, we can use a little bit of that time

16   when I'm down here to talk about where we are.  And

17   if not, if it is by the end of business on that

18   Wednesday, we'll kick it back in when I'm back down

19   here the first week of December.

20           MR. BECK:  The only --

21           THE COURT:  Tell me what you see is the

22   problems from the Government's standpoint if I do

23   that.  That would formalize it rather than -- what I

24   think the defendants are concerned about is, if I

25   don't put some deadlines on this thing, they're just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   never going to get it.  So that would formalize it,

 2   but it sounds like it's about on your schedule

 3   anyway.

 4            MR. BECK:  Right.  I understand the Court's

 5   position with that.  So there are two different sort

 6   of trial dates in this.  So if the Court is inclined

 7   to do that, I guess that would be about two months

 8   before the trial.

 9            THE COURT:  Pretty close.

10            MR. BECK:  If the Court's anticipating

11   setting that deadline, we would ask that there be two

12   different deadlines for the two different trials.  So

13   the April trial, then, would be moved out two months

14   for that witness list.

15            The second thing I would ask the Court is

16   that I can't think of anybody offhand, but there may

17   be a situation in which -- there may be a situation

18   in which we anticipate a Government informant

19   testifying who may not be outted, who may not -- and,

20   as I said, I can't think of anyone, so there may be

21   some name or names that we would need to provide to

22   defense counsel, attorneys' eyes only at this point.

23   As I said, I can't think of anyone.  But if the

24   defense would agree to that, then I think maybe we

25   could come to an agreement that the Court's deadline
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    for the witness list.

2            THE COURT:  Okay.  The rough framework is

3    doable then?

4            MR. BECK:  And since this is with the

5    understanding that it would be something that we

6    could amend in the future, we'd ask that if the Court

7    imposes this deadline it's agreed to, that it be

8    mutual.

9            THE COURT:  I would look favorably upon

10   deletions.  I would look a little bit more askance at

11   additions, given what we're trying to do here.

12           MR. BECK:  Understood.

13           THE COURT:  Okay.  Thank you, Mr. Beck.

14           Mr. Castle.  Let me have you back up here.

15   I know other people want to talk.  But I want to talk

16   to you a little bit and see if there is a framework

17   here that we can maybe work with, put in place.  What

18   do you think?

19           MR. CASTLE:  Well, I think the defense

20   needs it sooner than that.  I mean, that's why we

21   asked for it last year.

22           THE COURT:  Well, it sounds like you're

23   largely going to get it sooner.  I mean, you're going

24   to get this document production pretty quickly.  But

25   I'm putting in some deadlines now that it can't go

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                     1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE                                      e-mail: info@litsupport.com

 1   beyond that.

 2           MR. CASTLE:  The reason I have hesitancy,

 3   Your Honor, is the Government has disclosed to us,

 4   against Mr. Billy Garcia, the identities of five

 5   people, essentially, that can provide evidence

 6   against him.

 7           Now, they told the Court just now that

 8   they've given massive amounts on the major witnesses.

 9   For all but one of those witnesses we haven't

10   received any of the categories of evidence that they

11   said they've already given us; phone calls, STIU

12   files, the criminal history, any of that, for all but

13   one.  We have it for Mr. Lujan.  That's it.

14           So normally -- it's fine if we agree and we

15   can rely upon their assurances that they will

16   produce.  But they've now given assurances that

17   they've produced things that they haven't produced.

18   So I'm concerned about that.  And that's why I think

19   we should build in more time so that when we get

20   this, and we look and see we didn't get everything,

21   we have some time to be able to come back to the

22   Court and litigate it.  I think 30 days prior to

23   trial, unfortunately there is going to be a lot of

24   litigation.  I know the Court has indicated, for

25   example, that with regards to statements issues that



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   that's going to be the subject of more targeted

2   litigation once we know statements are going to be

3   issued.  There is going to be other matters that

4   everyone needs to be doing in that last 30 days.

5           So I can understand why the Court is going

6   the direction it's going.  But I can tell the Court

7   that they haven't been complying so far.  As a

8   defense attorney and the history of this case, I'm

9   not willing to rely on their assurances at this

10  point.  It's a sad statement to say.

11          But I mean, they're relying, for example,

12  on a man by the name of Ray Molina.  I've gotten two

13  statements from -- Mr. Molina statements.  That's it.

14  Not a criminal history.  Nothing.

15          On September 13th of this year -- I tried

16  do this informally first -- on September 13th of this

17  year, I asked for Mr. Lujan's and Frederico Munoz'

18  phone calls while they were in the Bureau of Prisons.

19  Nothing so far at all, at all.  I don't know, maybe

20  that's the next up.  But that's been the problem.

21          And I know the Court is probably tired of

22  hearing lawyers complain about discovery.  I can

23  imagine.  But this case is almost two years old.

24  They've had plenty of time to collect all this

25  information.  And so the only reason to delay any of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    it is to try to get a tactical advantage.  And I
 2    don't think that is the purpose of any of these rules
 3    that we're relying on, either the Jencks Act, the
 4    statute, is to give them a tactical advantage.  The
 5    advantage that the Jencks acts talks about is to
 6    protect witnesses.  We know these witnesses.  We know
 7    the identities of every one of them.  So to withhold
 8    their Giglio material is not to protect these
 9    individuals.  A protective order would take care of
10    that.  It is to prejudice the defendants and their
11    preparation for the case.  I want to make no mistake.
12    That's the goal.
13            And we're enlisting the Court's help in any
14    way it feels comfortable to help us so that we could
15    have a fair trial in that regard.
16            And we're not talking an ordinary case.
17    We're talking cases which my client not only has to
18    defend against the people who say he may have
19    confessed some unknown date in the past, he's got to
20    defend against the entire VICAR criminal enterprise.
21    You know, we may not choose to at some point, but
22    we're required to at least review that, and then
23    defend against it.  So we're not just talking about
24    five people that may be relevant to my client.  It's
25    really all their witnesses are relevant to my client.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And so that's the problem we're here for.
 2    And I haven't yet once heard them say why, why delay
 3    is necessary, other than perhaps maybe we haven't
 4    decided our final witness list.  But I don't think
 5    the Court is concerned with that.  But I think the
 6    real reason is:  Let's hold it back so we can get an
 7    advantage and the defense can't use it in time, to
 8    effectively use it at trial.  And I don't think
 9    that's a proper purpose.
10              THE COURT:  Mr. Beck, if I move this back
11    to the Friday before, say 5:00 on the 17th, and then
12    you get your documents out that you indicated that
13    you were going to produce in two weeks, you get it
14    out by the end of business on the 17th, so then we've
15    got those three days when I'm back down here to start
16    taking up problems, could you live with the end of
17    business on the 17th?
18              MR. BECK:  Are you asking about the witness
19    list or the production, or both?
20              THE COURT:  Yeah, instead of you delaying
21    your production till two full weeks, have it done by
22    the 17th.  And then you also give the witness list by
23    the end of business on the 17th, so then we can use
24    some of the next week to discuss and see where we
25    are.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1          MR. BECK:  So to answer Your Honor's

2    question, I think we can do that.

3          I want to note that I take extreme issue,

4    as I have the whole time in this case with what

5    they're classifying Giglio, in terms of phone calls,

6    and pen pack information.  I mean, this is stuff that

7    we've agreed to turn over to them without conceding

8    that there is impeachment materials.  And if they

9    search through these 5.6 gigabytes and find something

10   they want to impeach someone with, I wouldn't be

11   surprised.  But I'm just saying that I take issue

12   with them saying we're delaying this for tactical

13   reasons, when there is 5.6 gigabytes of information

14   that are not in the United States' possession.  It's

15   not like when someone makes a phone call, we're

16   sitting on the other end with a recording device

17   waiting to hand it over to someone and use it in our

18   back pocket.

19         So I understand Mr. Castle's position.  I

20   understand his frustration.  The United States is

21   frustrated that we have to get this stuff, too.  And

22   we know it's our burden to do so in some cases.  But

23   I take issue with that.

24         So, yes, to get back to your position, I'm

25   out of town next week, so it won't be my burden to

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                            1-800-669-9492
                                              e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    get it out, so I'm saying yes, we can, because I

2    don't have to deal with it.

3            THE COURT:  Nothing like throwing

4    co-counsel under the bus, is there?

5            MR. BECK:  No, it's the people who are much

6    more important on that stuff than my co-counsel.

7            THE COURT:  All right.  Mr. Castellano.

8            MR. CASTELLANO:  Your Honor, as Mr. Beck

9    alluded to, there are two trial dates that we're

10   dealing with currently.  One is January 2 and April.

11   So one point is whether or not, in order to expedite

12   the disclosures we can have a deadline for the

13   January trial, which is what the Court is asking,

14   which is November 17, and a second deadline for the

15   April trial, otherwise -- then we have five

16   defendants in January, and I believe nine defendants

17   currently set for April.

18           And the other question is reciprocal.  So

19   once the witness lists and things of that nature are

20   due by the Government, so I would expect the same

21   from the defense.

22           THE COURT:  All right.  Let me open this up

23   a little bit.  Let me tell you what the proposal is

24   as I'm thinking of it.  It would be that the

25   Government is going to do the document production

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that they said they would do in two weeks, they'll do
 2   it by 5:00 on the 17th.  And that will give us a
 3   fighting chance of maybe having some of that material
 4   in the defendants' hands so we can talk about
 5   problems, if any, the following week.  They would
 6   also give a good faith best statement of their
 7   witnesses, with the inclination being overinclusive
 8   rather than being underinclusive.  I would not be
 9   pleased, and I don't think the defendants would be if
10   they were adding names after that point, since the
11   whole purpose of this is to try to set some deadline
12   to get Giglio material.
13          I'm not ruling at this point what's Giglio
14   and what's not Giglio.  I'm simply trying to
15   facilitate getting the material in.  And we'll talk
16   about Giglio, what is in and out of the box as we go
17   through the next two days.
18          We would then set another date for the
19   April trial, on February 5, for them to give you the
20   same list for the April 9 trial.  That's the proposal
21   on the table.  I'm leaning toward it.
22          Let's see, who wanted to speak?  Ms.
23   Sirignano, did you want to speak earlier on this?
24          MS. SIRIGNANO:  I did, Your Honor.
25          THE COURT:  What do you think about the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   proposed?
 2            MR. CASTLE:  Just wanted to interrupt.  I
 3   thought the Court was talking about January 17, when
 4   I was up to the podium last.
 5            THE COURT:  I'm talking about November 17.
 6            MR. CASTLE:  I wanted the Court to know
 7   that's what I thought we were talking about.
 8            THE COURT:  You like it better.
 9            MR. CASTLE:  If I sounded a little strident
10   than I should have.
11            THE COURT:  You're pretty controlled.  If
12   that's strident, I'll take that any day.
13            MS. SIRIGNANO:  Your Honor, just for the
14   record, and I do like --
15            THE COURT:  Let me ask Mr. Castle, could
16   you live with that, though?  You like the proposal
17   now?
18            MR. CASTLE:  Yes.
19            MS. SIRIGNANO:  I guess I will start out
20   that way.  The proposal is fine.  I'm not in the
21   second wave, I'm in the first wave, Judge.
22            THE COURT:  I know.
23            MS. SIRIGNANO:  And so, all along, though,
24   however, I'd just like to make it very clear that the
25   deadlines in the scheduling order have been for both
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    waves.  So we've been held to that standard.
 2              THE COURT:  There is, there is.  I realize
 3    that, that we have been sticking with it.  But we're
 4    only varying this primarily to get documents, I
 5    think -- correct me if I'm wrong, Mr. Beck -- the
 6    idea of having a separate deadline, I think Mr.
 7    Castellano was making this point, it will facilitate
 8    people in the first trial getting things quicker,
 9    right?  You're not dealing with 15 people, you're
10    dealing with six.
11              MR. BECK:  That's right, Your Honor.
12              THE COURT:  So I would think from your
13    standpoint that would be a plus.
14              MS. SIRIGNANO:  Yes, Your Honor, I agree.
15    So, in that regard, I don't have any issue.  I just
16    was pointing out that --
17              THE COURT:  It is.  And I'm staring at the
18    fourth scheduling order.  I'm not suggesting we make
19    any big changes.  It was just trying to address Mr.
20    Castle's point of the Government is trying to decide
21    what their witness list is.  And I thought, well,
22    okay, let's have an early production of witness
23    lists, and see if that can bring my prior rulings --
24    give it a deadline.
25              MS. SIRIGNANO:  Thank you, Judge.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1           The only other thing that I wanted to say
2    was that I had filed, with a number of joined
3    defendants, Document 1329, which was not teed up
4    today.  It was teed up -- it's the order to show
5    cause.  And I just raise it.  The Government
6    responded in Document 1401.  This was the order that
7    the Court made in the May 9 and 10 hearings.  Mr.
8    Castle was talking about June.  But this was your
9    order from May, May 9th and 10th.
10          And so there is a number of items there
11   regarding specifically Giglio and Brady and Rule 16
12   that were not addressed in the Government's response.
13          So I'm happy to stay this until another
14   time when the Court is prepared to address this and
15   the Government is prepared.  But I just wanted to let
16   you know that there are some things from May 9th and
17   10th of 2017, which the Court had already ordered
18   that have not yet been produced, nor addressed by the
19   Government in its response.
20          THE COURT:  Well, two things.  One is, as
21   you can tell -- and these are discussions that I
22   think Ms. Wild has had with some of y'all -- the
23   proposed plan has 1329 being in the December 18, 19
24   period.  But I don't mind using the next two days to
25   take issues and start trying to give some calls, so I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    can give you maximum guidance when we leave here.

 2    And if then y'all want to move up, you can talk to

 3    Ms. Wild a little bit about that.

 4              Am I making a mistake here?

 5              (A discussion was held off the record.)

 6              THE COURT:  Well, let me just say this to

 7    everybody.  It would seem to me, if I'm down here and

 8    I can give them guidance on issues, it would be

 9    better if I gave them the guidance they want.

10              You don't like that?

11              (A discussion was held off the record.)

12              THE COURT:  Well, let's play it by ear.

13    Maybe I need to be more disciplined, and take them by

14    motions.  But I was earlier encouraging us to try to

15    do form over -- substance over form.  And that meant

16    maybe not taking motions.  Maybe what we can do to

17    help keep this docket clear is, if I gut out a motion

18    with a bunch of rulings --

19              MS. SIRIGNANO:  Yes.

20              THE COURT:  -- maybe we can all say, Judge,

21    you took care of all that, and we can either withdraw

22    it or just indicate that we've taken care of that.

23              MS. SIRIGNANO:  Indeed, Judge.  Because I'm

24    requesting Giglio in my discovery motion.  And I'm

25    sure there are others that have addressed Giglio, in

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                              1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                         e-mail: info@litsupport.com

 1    Mr. Perez', Mr. Sanchez', Mr. Herrera's motions that

 2    if it's ruled upon once, I don't know why we'd have

 3    to revisit it.

 4              THE COURT:  Okay.  Well, just keep that in

 5    mind, everybody, if we can help the Court.  And if we

 6    gut out a motion, because they've taken issues, help

 7    us out, and maybe we can pull some of those off or

 8    withdraw them or deem them ruled on in some way.

 9              MS. SIRIGNANO:  Thank you, Your Honor.

10              THE COURT:  All right.  Thank you, Ms.

11    Sirignano.

12              Anybody else want to say anything about the

13    proposal on the table?

14              MR. LOWRY:  If I may.

15              THE COURT:  Mr. Lowry.

16              MR. LOWRY:  Your Honor, I agree with the

17    Court's proposal.  I like that, the substance of it,

18    gutting out motions.  I have a stand-alone

19    Brady-Giglio motion I think your ruling just

20    neutralized completely.

21              Your Honor, I just want to make sure I

22    understand the scope of the disclosure correctly.

23    Because in my thinking, when we were talking about

24    Brady and Giglio information, in terms of the

25    benefits, it's not just the payments, per se, cash

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    payments, but all kinds of other incentives or
 2    inducements provided to cooperating individuals:
 3    Lump sum meritorious awards, you know, fixing traffic
 4    tickets, fixing arrest warrants, favoritism given to
 5    people, to their families, to their loved ones.
 6             THE COURT:  Well, I'll say this:  I read
 7    your list, and -- I think it was your list where you
 8    listed that out -- as a general matter, I think I
 9    agree that is Giglio material.  Did you have any
10    disagreement with that list?  I think it was in Mr.
11    Lowry's motion, Mr. Beck.  Did you have any
12    disagreement that that was probably a rather
13    detailed, but good list of what --
14             MR. BECK:  Benefits provided to spouses
15    and --
16             THE COURT:  Right, right.
17             Now, when you say you're going to produce
18    the compensation, are you thinking it's going to
19    include such an extended list here, or are you
20    thinking that you're probably just producing the
21    cash?
22             MR. BECK:  I'll look through it.  I know
23    we're producing cash that's paid to their commissary
24    accounts and cash that's paid to them.  I can't say
25    for certain as I stand here, because I haven't looked
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    through it all, whether that's included.  But I

 2    understand Mr. Lowry's point.

 3              THE COURT:  At some point you would agree

 4    that that has to be produced, but it may not be in

 5    this bundle that you're trying to get together by the

 6    17th?

 7              MR. BECK:  Right.

 8              THE COURT:  All right.  So if we have an

 9    agreement -- and now you get the witness list, so the

10    witness list begins to put pressure on the

11    Government, because I've already had a ruling it's

12    immediate with Brady material.

13              MR. LOWRY:  Understood, Your Honor.  I just

14    wanted to --

15              THE COURT:  Pretty good shape?

16              MR. LOWRY:  Absolutely.

17              THE COURT:  Okay.  All right.

18              MR. LOWRY:  Thank you.

19              THE COURT:  Anything else, Mr. Lowry?

20              MR. LOWRY:  No, Your Honor.

21              THE COURT:  Anybody else?  Mr. Burke?

22              MR. BURKE:  Thank you, Your Honor.

23              Forgive me for being a bit greedy, but I

24    like the compromise a lot.  When you said a list of

25    witnesses, it was music to my ears, because it drives

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                       (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

1   so many things.

2           What I am asking for on behalf of my

3   client, who is charged in Counts 1 and 3, those are

4   historic homicides going back to 2001 and 2007.

5   Those cases have no physical evidence to speak of.

6   Those are cases that are based entirely on informants

7   that the Government intends to use.  I am wondering,

8   and I am asking and requesting that our list of

9   witnesses also be pegged to November 17.  Not the

10  Giglio or Brady materials.  And then that will enable

11  us during the two or three months, while you're tied

12  up with Group 1, to be doing some of our due

13  diligence, so that we can work for our client if we

14  have that list.

15          And I would say to Your Honor that these

16  three prosecutors are very bright, and they could

17  tell you if they stood up here to a 90 percent

18  certainty exactly who those witnesses would be,

19  because they're historic figures going back talking

20  about what they believe happened in 2001 and 2007.

21          So that is my request, that as to the list

22  of witnesses for the early counts that we be given

23  that on November 17, skipping the Giglio and Brady

24  material until after the trial of Group 1.

25          THE COURT:  So you say give a witness list,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    but not -- but delay the production of Brady and
 2    Giglio material?
 3              MR. BURKE:  Yeah.  The names, but not the
 4    stuff.  And with the flexibility that you've talked
 5    about, you know, understanding that they may hear
 6    something in the trial of Group 1, where they're
 7    going to want to add somebody, or they're going to
 8    want to take somebody off.  So it's a good faith list
 9    that we can work with while Group 1 is forging ahead
10    to trial.
11              THE COURT:  Thank you, Mr. Burke.
12              MR. BURKE:  Thank you.
13              THE COURT:  Well, what I understand is the
14    offer on the table, you might be interested in it.
15    Mr. Castellano was talking about the two month -- we
16    were kind of pegging it to two months.  But what is
17    also being offered is you don't have to mess with
18    their Brady and Giglio material until after the
19    trial.  I don't know how everybody else is going to
20    feel about that, but if everybody was to buy into
21    that -- if you sit down, you might want the
22    trade-off, if you spend a little bit of time putting
23    a witness list together for them that then -- and
24    then -- but you can delay the -- your November 17th
25    date until after the first trial, that might be
```

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.                             1-800-669-9492
PROFESSIONAL COURT                    e-mail: info@litsupport.com
REPORTING SERVICE

```
1    something you're interested in.

2            MS. ARMIJO:  Your Honor, quite honestly, I

3    don't think we're interested, because when we're

4    going to be doing the disclosures that you request,

5    that they're requesting, we're going to be doing it

6    for everybody.

7            For instance, the jail calls, which despite

8    the allegation that they haven't received a lot of

9    things, we've already done a significant amount of

10   that back in 2016.  I won't go into that right now.

11   But we're going to be providing it for all of the

12   cooperators, for all.  For instance, jail calls have

13   been requested of several people.  We're going to go

14   back to -- I believe initially we said January

15   2015 -- but we're going back to January 2014, to

16   present, to any of these defendants that were in

17   custody -- that's all of them -- is my belief is what

18   we requested.  What we requested was people who are

19   in the New Mexico Corrections Department, all of

20   their calls from that date to present.

21           So they're going to get not only

22   cooperators or former co-defendants that are now

23   cooperators, but their own calls as well.  So we're

24   doing things in blankets that apply to everybody.

25   We're not agreeing to -- and we'll get to this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  later -- jail calls as to people in the U.S.

2  Marshal's custody, if we don't have it.  But what we

3  have we're giving to everybody.

4         So quite frankly, Your Honor, it would be

5  easier to do the November 17th -- what I'll refer to

6  as the first five defendants that are going, Javier

7  Molina murder, and then some murder conspiracies, it

8  would be easier to do that witness list, and then do

9  what we were planning on doing anyway, what Mr. Beck

10 was talking about, all the things that we were going

11 to be doing anyway.  Because I think that will take

12 care of what we've already been planning on doing.

13 And then later doing the witness list for the other

14 group.  Because the other group still has more

15 murders, and right now still has nine defendants.

16 And that would be more time consuming, and taking

17 away our ability to be reviewing all of the discovery

18 that we still have to do now by the 17th of November.

19        THE COURT:  Let me ask you -- and I'm not

20 trying to tell you over at this table how to answer,

21 but since Mr. Castellano brought it up earlier, to

22 address Mr. Burke's issue, I just pulled the February

23 5th date out based on two months.  Could you move up

24 a little bit that witness date?  We don't touch the

25 Brady-Giglio rulings or deadlines, but we just --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    could you move up your date a little bit to give them
2    a little bit earlier a witness list for that second
3    trial, so they could be working on it?
4              MR. CASTELLANO:  We're already going to be
5    in trial in the Molina murder case.  And so we'll be
6    trying the case and trying to get disclosure prepared
7    at the same time.  I don't think we can get -- we
8    already have a deadline that we've set for certain
9    things.  And of course, we'll abide by that.  But if
10   we add to that, it's going to be that much more
11   difficult.
12             THE COURT:  All right.  Let me listen a
13   little bit.  Ms. Sirignano?
14             MS. SIRIGNANO:  Judge, thank you.  We
15   received notice from Mr. Aoki, the discovery
16   attorney, that approximately 218 gigabytes of phone
17   calls are coming.  We presume that these are jail
18   calls.  We weren't told what kind of calls they were,
19   but that they were coming.  And that's a massive,
20   massive amount of phone calls.  I remember one of the
21   very first hearings that we had Mr. Baca's attorney,
22   Marc Lowry, asked the Government for his client's
23   jail calls.  And so this is something that's been
24   going on since the very beginning of the case.  The
25   defense has been diligent.  We have IPRA'd the
```

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                          1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                      e-mail: info@litsupport.com

 1   facilities, New Mexico Department of Corrections,

 2   asking for these phone calls.  And DOC's response is

 3   that they are in the custody of the Government; that

 4   the Department of Corrections is part of the

 5   prosecution's arm now, and they're not going to be

 6   giving us those phone calls.

 7            And so this is an issue, Judge, that could

 8   derail not only the fourth scheduling order --

 9            THE COURT:  I guess I'm lost.  If you're

10   about to get a large amount of phone calls, why is

11   the Department of Corrections still making any

12   decisions here?

13            MS. SIRIGNANO:  This was done earlier,

14   Judge, months ago, months ago.

15            THE COURT:  All right.  But you're about to

16   get them?

17            MS. SIRIGNANO:  Well, I don't know what

18   we're getting, Judge.

19            THE COURT:  I know.

20            MS. SIRIGNANO:  We were just told we were

21   getting 218 megabytes, which is a huge number of

22   calls, thousands.

23            THE COURT:  What's the problem?

24            MS. SIRIGNANO:  The problem is that we've

25   been asking for these for months and months and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   months and months.  And I do understand the

2   Government has the Molina trial that they're getting

3   ready for.  We've got the first wave that we're also

4   getting ready for.  But the pure number of phone

5   calls that have to be listened to, reviewed, Brady

6   determined, Giglio determined, Rule 16, Jencks, it's

7   just going to be impossible if we don't get these

8   calls earlier, both waves 1 and 2.

9            THE COURT:  It sounds like they're in

10  Aoki's hands?

11           MS. SIRIGNANO:  Not yet, Judge.  We were

12  told they were coming.  But I guess there was some

13  kind of difficulty with the external hard drive that

14  was provided to actually get these calls.

15           And so, Judge, just respectfully, we're

16  running out of time here, with the holidays, and

17  January is coming.  And I've had literally three

18  women, my staff, paralegals, listening -- no, four --

19  listening to phone calls from the Government's

20  discovery that we received, and then other relevant

21  phone calls.

22           And so I just want to alert the Court and

23  everybody, the longer this goes on, and the longer

24  the delay in actually obtaining these phone calls --

25  which of course we tried to get -- it's going to be a

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   very big burden on the defense, Judge.

 2            THE COURT:  Okay.  Thank you, Ms.

 3   Sirignano.

 4            MS. SIRIGNANO:  Thank you, Judge.

 5            THE COURT:  All right.  Mr. Villa?  I've

 6   never known you to creep to a microphone.

 7            MR. VILLA:  Usually run right up, Judge.

 8   But they put me up in the box today.

 9            THE COURT:  I thought you were coming out

10   of the exit door.

11            MR. VILLA:  I like the proposal that the

12   Court has submitted for Counts 6 through 12.  I don't

13   want to jump into the fray for the other counts.  But

14   I wanted to highlight one issue for the Court that is

15   a Giglio issue in my view, and something that the

16   Court has previously ruled upon for Mr. Perez.

17   Because in the Molina count, if you recall, the

18   initial folks, who are now some of them cooperating

19   co-defendants, had made statements that didn't

20   include Mr. Perez, didn't mention him, he wasn't

21   involved.  It just didn't come up.  The Court made a

22   ruling that the plea agreements, the debriefs, the

23   302s from the debriefs, the 5K agreements attached to

24   the plea was something that the Government had to

25   disclose.  And the Government did that.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          But recently, another co-defendant, Mario

2    Rodriguez, entered a plea.  I don't know whether it's

3    a cooperation plea.  But if I went to Vegas and put a

4    bet on it, I'd be betting that it is, based on how it

5    looks.

6          And we've asked the Government, along the

7    same lines, to disclose those same things as Giglio.

8    The Government disagrees that that's Giglio.  This

9    all happened very recently, so we haven't been able

10   to file motions.  But given our time crunch, I wanted

11   to highlight that.

12         THE COURT:  Now, I could be wrong -- and

13   you can correct me, and Mr. Beck can -- there was an

14   agreement to produce Mario Rodriguez' material, but

15   the Government preserved its position that it wasn't

16   Giglio material, but it's going to produce it to get

17   it in the hands.  So it was more of an agreement than

18   it was a ruling that it was Giglio.  Is my memory

19   off?

20         MR. CASTELLANO:  The agreement, Your Honor,

21   as to Mr. Rodriguez was something that is coming out

22   in the next round of discovery.  And those were the

23   disciplinary packets related to the Molina murder.

24   So the Corrections Department had its own

25   disciplinary hearings, and we disclosed those, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think, that day.  So that is what we were talking

2    about when it came to Mr. Rodriguez and his trial.

3              THE COURT:  But when you were doing it, you

4    weren't conceding that that was Giglio material, you

5    were just getting it into his hands, if I recall.

6              MR. CASTELLANO:  That's correct, Your

7    Honor.

8              THE COURT:  Do you recall it differently,

9    Mr. Villa?  I didn't think I made a ruling.  I

10   thought the Government sort of said, We're just going

11   to get it in your hands because of the time that we

12   were working.

13             MR. CASTELLANO:  Mr. Villa wasn't there.

14   That was Mr. Rodriguez' hearings only, so there were

15   no other defense counsel present.  I made that

16   representation to the Court that we did receive

17   those.  And we turned those over early to him because

18   his trial was set.

19             What Mr. Villa is asking for is the plea

20   agreement and any debrief reports, and any addenda to

21   the plea agreement.  We informed him the plea

22   agreement is already on the docket.  He has those.

23   The statement does list his client in the factual

24   basis.  So we know that it's not exculpatory as to

25   Mr. Perez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            The plea addendum hasn't been disclosed --
 2     will be -- it's the same thing as the other addenda,
 3     so that shouldn't be a surprise.
 4            The reports themselves will be Jencks.
 5            THE COURT:  The 302s will be Jencks?
 6            MR. CASTELLANO:  Yes.  And I'm not even
 7     sure those are finalized yet, they're so new.
 8            And the other distinction which was made in
 9     the email was that people like Mr. Montoya and Mr.
10     Armenta had previously made statements, so any more
11     recent statements could be contradictory to the prior
12     statements, and therefore, possibly Giglio.
13            Mr. Rodriguez is not in that position.  So
14     we don't have prior statements like the other
15     individuals did.  That's the concern that Mr. Villa
16     had was whether or not it's Giglio.  But I think at
17     this point it's strictly Jencks.
18            THE COURT:  What do you see as problems
19     there?
20            MR. VILLA:  Here's the problem, Judge, is
21     maybe they don't call Mario Rodriguez, or maybe they
22     don't call one of the other co-defendants.  But the
23     first round of statements made by the co-defendants,
24     that is now different from what they're saying once
25     they've entered cooperation agreements, is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    contradicting what -- part of what Mario Rodriguez

2    says in his debrief, because I've read the factual

3    basis in the plea agreement.  So that impeaches

4    either Mr. Mario Rodriguez, if he's going to testify,

5    or it impeaches the other cooperating co-defendants,

6    if they're going to testify.  What Mr. Rodriguez said

7    in his debrief will contradict what these other --

8    what we would predict testifying co-defendants are

9    going to say, because we know what they said in the

10   beginning, which did not mention Mr. Perez.  And so I

11   think that is impeachment.  That is Giglio.

12            THE COURT:  So I understand what you're

13   saying, we're focusing on the 302s, the debriefs,

14   after Mr. Rodriguez pled?

15            MR. VILLA:  Yes, Your Honor.

16            THE COURT:  All right.  And you're saying

17   that there is going to be statements in there that

18   you would then use to impeach another witness, right?

19            MR. VILLA:  Another cooperating

20   co-defendant.

21            THE COURT:  Another cooperating, because

22   they would be inconsistent.

23            MR. VILLA:  Inconsistent with some of the

24   statements the other cooperating co-defendants have

25   made.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  What's your thoughts -- if this
 2    is yours, Mr. Beck, what would your thoughts be about
 3    whether that's in or out of the Giglio box; that if
 4    you've got 302s, that you've got Mario Rodriguez
 5    giving statements that are inconsistent with
 6    statements that other people have made, other
 7    cooperating witnesses have made, that that's in the
 8    box or out of the box?  How are you treating that?
 9            Let me ask you this:  Would you be willing
10    to do this:  If the rest of the material -- would you
11    be willing to sit with the 302s, look at it with that
12    eye in mind, and instead of producing the entire
13    statement, you can hold that back for Jencks
14    material, but if there is a statement in there, in
15    which it is inconsistent with another cooperating
16    statement, you produce a redacted 302 that gives them
17    that statement.
18            MR. BECK:  Yeah, I mean I'd have to think
19    more about it, but I'm inclined to agree with both of
20    you that that's appropriate material, prior
21    inconsistent statement.  I don't know, I'd have to
22    think about the admissibility, if he's -- but I mean,
23    I see the Court's point.  And I agree to sit down and
24    think about it and look at Rodriguez --
25            THE COURT:  Could you live with that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. VILLA:  Just a couple of things.  I'd

2     like Mr. Beck to look at the precooperation

3     statements of these other cooperating co-defendants,

4     because those are the ones I'm thinking of.  You

5     know, they gave a statement to the State Police, or

6     whoever is investigating this homicide initially,

7     that X happened.  And now Mario Rodriguez' statement

8     in the 302 is contradicting X; it's Y.  That would be

9     the eye.  So not just --

10          THE COURT:  That's what I'm thinking.

11     You're just saying instead of just looking at the 302

12     that's been produced on Mario Rodriguez, have in his

13     lap the cooperating statements.  He rereads it, so he

14     can refresh his memory as to what's conflicting.

15          MR. VILLA:  Pre- and post-cooperation of

16     these other co-defendants.  Because they've changed

17     their stories pre-cooperation to post-cooperation.

18     So I just ask that he be looking at both of those,

19     because their post-cooperation statements are

20     probably going to be a lot similar to Mr. Rodriguez.

21     And if you just looked at post-, you'd say, well,

22     that doesn't contradict --

23          THE COURT:  So it conflicts with either

24     one.

25          MR. VILLA:  And I want Mr. Beck to do it

SANTA FE OFFICE                                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                               Albuquerque, NM 87102
(505) 989-4949                                                                                              (505) 843-9494
FAX (505) 843-9492                                                                                    FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1    next week while he's in trial.

 2              THE COURT:  Are you in trial next week?

 3              MR. BECK:  No, no, I've got training next

 4    week.  I'm in trial two weeks after.

 5              MR. VILLA:  That's when I want him to look

 6    at it.

 7              THE COURT:  Are you doing something fun

 8    next week?  You just said --

 9              MR. BECK:  I'm prepping for two trials

10    coming up in the next month, while I'm take basic

11    criminal discovery training at the NAC, so I will

12    learn the right way to do what we're arguing about

13    today.

14              Yeah, I understand.  I'll sit down and

15    think about it and read through the reports.

16              THE COURT:  Well, let's do this:  If you

17    want to come back and argue with me before we leave

18    town tomorrow, you can, but for the present time that

19    will be the ruling.

20              MR. VILLA:  And, Your Honor, I'm going to

21    go out on the ledge, you're probably not going to

22    like this, but getting back to the black boxes, I

23    don't know what happened.  I don't think you know

24    everything that's happened.  I know that a lot of

25    things happened after Mario Rodriguez's plea

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    agreement; things that lead me to believe that
2    perhaps information that he's providing, whether
3    accurate or not, has led to the reason why our
4    clients are in black boxes.  So I would just ask the
5    Court to look at that.
6              And we have the same issue with the
7    tablets.  It wasn't our clients that were messing
8    with the tablets, it was the cooperating witnesses.
9    And then all of our clients had to suffer to having
10   them taken away.  Because I don't know enough about
11   what happened, and that information hasn't been
12   provided to us, I do know that a lot happened
13   following his plea agreement.  And some rumor and
14   innuendo and hearsay and speculation around the
15   courthouse leads me to believe that something he said
16   is the reason why our clients are in the black boxes.
17             THE COURT:  Well, that's fair enough.
18   That's fair enough.  We'll all work together.  So
19   talk to the U.S. Attorneys, talk to the marshals, and
20   see if we can move forward on it.  But I understand
21   what you're saying.
22             All right.  Let me ask this -- I'm going to
23   push you a little bit, Mr. Castellano -- I'm still
24   trying to work with Mr. Burke's issue here.  Could
25   you give a witness list -- move it up a little bit
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to -- before you step into trial in the Molina case,

2    you give it to them by the end of business on the

3    26th?  That will give you two full months from now to

4    think about it.  You can be jotting it down.  But

5    give them the good faith list by the 26th.  Move it

6    up a little bit.  It gets it out of your hair, it's

7    not in the middle of your trial.  You can give it to

8    them earlier if you want.  But before you go into

9    trial, and then you're not messing around with it in

10   trial.

11            MR. CASTELLANO:  So we're talking strictly

12   about the witness list; is that correct, Your Honor?

13            THE COURT:  Yeah.

14            MR. CASTELLANO:  And I take it that's

15   reciprocal, both parties, both sides will be

16   providing witness lists overinclusive on that date?

17            THE COURT:  We've been talk primarily about

18   the Government, set some Giglio, but can we make it

19   reciprocal across the board, November 17th, and then

20   Mr. Burke, I don't know if this is helping you a

21   whole lot, but it's a nod in your direction.  Can we

22   make it reciprocal on both sides?

23            MS. HARBOUR-VALDEZ:  Your Honor, I think we

24   might need a couple of days after we receive their

25   list to decide who our witnesses might be.  Is that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    fair?

2              THE COURT:  How long do you want after you

3    get their list to put your list together?

4              MS. HARBOUR-VALDEZ:  A week.

5              THE COURT:  A week.  Could you live with

6    that, Mr. Castellano?  Mr. Beck?

7              MR. BECK:  Your Honor, I think something

8    needs to be taken into consideration here.  On the

9    front end, this is part of the same indictment.  So

10   what some folks refer to as the enterprise witnesses

11   or the enterprise stuff, they will already have a

12   witness list that talks about a lot of these

13   enterprise witnesses now four or five months before

14   trial.  For those keeping score, I'm not very good at

15   math.  So they'll already have that.

16             They're saying they know who our witnesses

17   are going to be.  Well, as I said, our witness list

18   has changed as people have dropped out.  And we

19   expect that to happen again in their case, that as we

20   start focusing on that trial, people will drop out.

21   And that will happen sometime in the future.

22             So I think there is a different impetus and

23   a different rationale between making this first

24   witness list early, as opposed to the second witness

25   list even earlier, because they will have the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   majority of those witnesses, and we will not know who

2   our witnesses will be to testify to those, because we

3   haven't had an opportunity to try to work on that.

4           And so I think that where we're saying that

5   is a rationale in providing it earlier so we're

6   thinking about it in trial, I think the opposite is

7   true.  I think there is a rationale for doing it

8   after the trial, and we can sit down and really think

9   hard about who the witnesses will be for that.  And

10  they've already had notice for the majority of those

11  witnesses, because they're enterprise witnesses.

12          And so I don't want to go down this road

13  that -- let's just provide this witness list, because

14  I think the Court's well aware -- we briefed it in

15  the past in relation to this Giglio stuff -- there is

16  no obligation to present the witness list.  There is

17  no right for a defendant to have a witness list of

18  the Government's witnesses.

19          So I think we're sort of backing ourselves

20  into an agreement here that really doesn't make

21  sense, when they have these witnesses, the law

22  doesn't provide for it, and it will change

23  drastically.

24          And I worry about the Court's guidance that

25  we shouldn't be underinclusive in our witness list,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    because if we provide that before the Molina trial,

2    before we focus, before we even turn our attention to

3    the second trial, the witness list may not be worth

4    anyone's life.

5            And so it's putting a burden on our plate

6    for sure that I don't think we should be under, under

7    the law.  But I don't think it makes a lot of sense.

8            So I ask the Court to reconsider moving

9    this back further, and instead, to see how things

10   develop, to see what they're providing in our witness

11   list and our Giglio report here.  And if it becomes a

12   problem, then set it for a week or two after the

13   Molina trial, and we can work on a witness list.  We

14   can work on plea agreements.  We can provide stuff to

15   them.

16           Again, I think they're going to get most of

17   everything they want in this round of discovery.  So

18   I'm worried we're backing ourselves into the door,

19   and we're going to get ourselves in trouble with the

20   Court and the defendants for no reason at all.  And

21   so I think for this reason we should not move up this

22   second witness list that far.

23           THE COURT:  Okay.  Let me -- I agree with

24   some of what Mr. Beck is saying, but I don't agree

25   with his conclusion.  Let me tweak this just a little

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    bit, Mr. Burke, and see if this would work for you.
2    So I move up the list; I'm still inclined to move it
3    up so they have to give you a list before the trial.
4    Here's, though, the kicker.  If that trial goes away,
5    you come back to me and we'll relook at the due date
6    for the list.  Because if for some reason that first
7    trial goes away, then I'm focused, then, on April 9.
8    And you can come back in and say, Okay, Judge, they
9    don't have a trial on January 29 anymore.  Can you
10   start pushing the list and the Giglio and that stuff.
11   Could you live with that?
12          MR. BURKE:  Yes, I could, Your Honor.  That
13   makes sense.
14          THE COURT:  Okay.  All right.
15          MR. BURKE:  May I say one more thing about
16   witnesses?  And I'm not a prosecutor, so I don't know
17   how they're going to go about doing this.  But it
18   seems to me a logical approach.  And it's hard to
19   believe this wouldn't be an approach, is to focus on
20   the witnesses that they need for Counts 1 2, and 3,
21   and so forth.  Then if they have additional
22   overarching enterprise witnesses, then they get to
23   those.  "Styx" Archuleta, for example, might be
24   someone that fits into that.  But they don't begin
25   with the enterprise witnesses and say we just have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    this whole morass of witnesses.  You're going to be

2    organized and have witnesses designated to --

3            THE COURT:  Well, what you and I don't have

4    the advantage of is things are fluid --

5            MR. BURKE:  Yes, sir.

6            THE COURT:  -- you know, and I think I have

7    a little bit of sympathy, and can try to figure out

8    what they're doing over at that table.  If things are

9    fluid, they may be thinking of trials differently

10   than you are, representing one defendant.

11           MR. BURKE:  That's true, Your Honor.

12           THE COURT:  So let me do this:  Let me

13   stick with where we are.

14           So the Government is going to get this

15   production they talked about to Mr. Aoki by the end

16   of business on November 17; 5:00.  They will also

17   produce a good faith best estimate of what the

18   witnesses are going to be for the Molina trial on

19   January 29, and pushing everybody to make it

20   overinclusive, rather than underinclusive, so we're

21   not looking at additions that are going to cause

22   problems for us down the road.

23           The defendants will give a list of their

24   witnesses -- same admonitions -- seven days later, on

25   the Molina trial.  The Government will then produce

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                 (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    by the end of business on January 26, 5:00, a second
 2    list for the April 9 trial.  And the defendants will
 3    produce a witness list seven days later for that
 4    trial as well.
 5              Anything else anybody want to talk about on
 6    that issue?  All right.
 7              Mr. Castle, are we back to you?  Are we
 8    done with you?
 9              MR. CASTLE:  We rest.
10              THE COURT:  You rest.  Is there anything
11    else on your motion?  Can I move beyond your motion
12    then?
13              MR. CASTLE:  Yes, you can.
14              THE COURT:  All right.  Thank you, Mr.
15    Castle.
16              All right.  I'm going to get organized
17    slightly here, and then we will move on to the next
18    issue or next motion.
19              MR. VILLA:  Your Honor?
20              THE COURT:  Hold on just a second.  Let me
21    just get organized so you can disorganize me, okay.
22              Okay.  What I'm pulling up -- I'm not
23    ignoring you, Mr. Villa -- what I'm pulling up is
24    going to be Mr. Davis' motion on behalf of Mr.
25    Herrera, the Rule 16 motion to compel.  So Mr. Davis,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    you've got the floor.  Do you want to concede it to
 2    Mr. Villa?
 3              MR. DAVIS:  Judge, it's Ms. Bhalla.
 4              THE COURT:  Ms. Bhalla, are you going to
 5    argue this motion?
 6              MS. BHALLA:  Yes, Your Honor.  But Mr.
 7    Villa can go ahead.
 8              THE COURT:  All right.  Mr. Villa, you have
 9    the floor.
10              MR. VILLA:  Sorry, Judge.  As Government's
11    witness list will be due the 17th, ours seven days
12    later, that's the Friday after Thanksgiving.  And --
13              THE COURT:  Let's make it the Monday, 5:00
14    on the following Monday.  Ms. Armijo?
15              MS. ARMIJO:  Can we at least then have the
16    following Monday as well to have that weekend?
17              THE COURT:  Well, what I was hoping with
18    this is I would -- I could try to deal with as many
19    issues when I'm down here the next week as I could.
20              MS. ARMIJO:  And if for some reason that
21    schedule changes, we can revisit this?  For instance,
22    I know that several defense attorneys, although I
23    believe the United States will -- is available that
24    week, or at least part of us -- I think a lot of the
25    defense was going to be indicating they were not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    available.  So I would just ask that, if for any
 2    reason the Court is not going to have hearings that
 3    week, that --
 4            THE COURT:  All right.  Is everybody
 5    agreeable to that; that if this schedule doesn't
 6    work, then we allow the Government to have until the
 7    end of business on the 20th, at 5:00, if I'm not back
 8    down here on the 20th?  Not hearing any objection --
 9    but if we're going to be back down here, stick with
10    that 17th?
11            MS. ARMIJO:  Yes, Your Honor.
12            THE COURT:  All right.  Okay.
13            All right.  Ms. Bhalla.
14            MS. BHALLA:  Thank you, Your Honor.
15            Your Honor, I don't think there is a lot to
16    say on this.  I did speak with Ms. Armijo.  I think
17    that the Government is in agreement to produce the
18    materials that we've requested.  I think that given
19    the Court's ruling about Giglio materials being due,
20    I guess, on the 20th now.
21            THE COURT:  We're sticking with the 17th.
22    I want to be here on the 20th.
23            MS. BHALLA:  The 17th is good for me, too,
24    Your Honor.  So if the Government can agree that that
25    will go out in the next batch as well on the 17th, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   think that we'll be fine.
 2            MS. ARMIJO:  The problem is we're still
 3   awaiting -- we can't disclose -- and maybe there are
 4   a couple of different things that we've agreed to
 5   disclose.  Well, we've agreed to disclose all of
 6   this.  It's just a timing issue.
 7            One of the issues that we have is
 8   transcripts.  One third of them, what we sent out we
 9   have back.  But we don't have the other two-thirds.
10   If we have the other two-thirds, it will go out.  But
11   what we do have, we will give out.  So that's fine.
12            THE COURT:  Can you live with that?
13            MS. BHALLA:  I think so.  I mean, we
14   requested these recordings back in December of 2016,
15   so -- and I don't doubt that the Government has been
16   trying to get them to us.  But it just seems like
17   sooner rather than later would be helpful.
18            MS. ARMIJO:  The recordings, they have.
19   They have all the recordings.  What they don't have
20   are the transcripts.  And the transcripts just came
21   about within the last month as a result of this
22   motion.  So they have the recordings, they have
23   everything related to what is requested.
24            What they're asking for is -- we're going
25   above and beyond, and we are providing pinpoints just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to their team as to incriminating statements that we

2    believe Mr. Herrera made.  But I know that they have

3    recordings.  And I know the defendants have listened

4    to these recordings, given the debriefs that we've

5    had.  So we will turn over the transcripts when we

6    get them, and we'll turn over the ones that we

7    already have.

8              THE COURT:  When do you think these

9    transcripts are going to be available, do you know?

10             MS. ARMIJO:  I'm told that maybe within a

11   couple of weeks.  We made this original request when

12   the original motion was filed, which was mid

13   September.  And so I think they got one-third of them

14   done in about a month.  So --

15             THE COURT:  Are you producing them on a

16   rolling basis?

17             MS. ARMIJO:  We'll produce them on a

18   rolling basis.

19             THE COURT:  Do you know which ones

20   specifically you're wanting transcribed?  Could you

21   send a letter that Ms. Armijo could hand to the court

22   reporter and say:  Do these next?

23             MS. BHALLA:  Well, Your Honor, the

24   Government actually indicated to us the recordings

25   they believe contained statements against interests.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   We've listened to those, and haven't found that to be
 2   the case, which is why the Government, I believe, is
 3   ordering the transcripts of those particular
 4   recordings.  So I believe that we've already
 5   identified those and that they've identified those.
 6   So that's not going to be an issue in determining
 7   which ones need to be transcribed.
 8              THE COURT:  Well, if we're just waiting on
 9   the court reporter, can you live with that?
10              MS. BHALLA:  Yes.
11              THE COURT:  I mean, if we get there the
12   week of Thanksgiving, and you still don't have them,
13   then we can revisit this issue.  Would that work for
14   you?
15              MS. BHALLA:  Yes.  And as long as we get
16   the pinpoints on the rolling basis, and then I think
17   that the certification --
18              THE COURT:  Let me make sure I understand
19   what you mean by pinpoints.  Once a transcript is
20   produced, then they tell you where it is in the
21   transcript?
22              MS. BHALLA:  Yes, Your Honor.
23              THE COURT:  But they're not doing that, or
24   unable to do that with the recordings themselves.
25              MS. BHALLA:  That's my understanding.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Okay.
 2            Am I understanding things correctly?
 3            MS. ARMIJO:  Yes, Your Honor.  And just so
 4   we're clear, we are going to point out things that we
 5   think are good.  But if we're in trial, and we bring
 6   out something else that we think is good, and they
 7   object, it may just be because the evidence has
 8   changed.  So we've agreed to pinpoint for the Herrera
 9   team, so to speak, things that we feel at this point
10   are incriminating.  But we're not going to keep doing
11   their job for them, so to speak.  We're doing this as
12   a courtesy in providing this information for them.
13            THE COURT:  You look like you're pleased
14   with this courtesy.
15            MS. BHALLA:  I think it's --
16            THE COURT:  All right.  But you understand
17   the rules?  You can live with them?
18            MS. BHALLA:  I do, Your Honor.  I would say
19   that -- how many people have listened to the
20   recordings now on our team, one, two, three --
21            THE COURT:  Well, you don't have to agree.
22            MS. BHALLA:   No, I don't.
23            THE COURT:  I mean, there may be a
24   disagreement on whether it's incriminating or not.
25            MS. BHALLA:  That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  I probably can't resolve that.
 2    But I guess everybody is going to need to probably
 3    stare at them with a judge's eyes to see whether it's
 4    going to come into evidence as an admission against
 5    interest, or a statement against interest.  So
 6    everybody is going to have to, at some point, take
 7    probably their litigator's eyes off and start looking
 8    at it is this thing really going to get into
 9    evidence?
10              MS. BHALLA:  Thank you, Your Honor.  And
11    just for clarification, in terms of the certification
12    packet, do you anticipate that coming out on the 17th
13    as well?
14              MS. ARMIJO:  Yes.  It's already ready to
15    go.
16              MS. BHALLA:  Thank you, Your Honor.  That's
17    it.
18              THE COURT:  What is the certification
19    package?
20              MS. BHALLA:  The certification packet,
21    according to our expert, is a document that was
22    created, that lists the structure of SNM.  And so it
23    would address issues about who was in an authority
24    position and who was not, which is relevant to our
25    defense, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Who prepares this?
2              MS. BHALLA:  The Department of Corrections.
3    It would be through STIU, I believe, in that
4    classification process.
5              THE COURT:  Is this an historical document
6    or is this a document that they're preparing for
7    trial?
8              MS. BHALLA:  It's a historical document.
9    Now, it certainly could be something that's been
10   updated over time.  And I don't know the answer to
11   that.
12             THE COURT:  All right.  Okay.  Anything
13   else you need on your motion?
14             MS. BHALLA:  No, Your Honor.  Thank you.
15             THE COURT:  All right.  How about anybody
16   else?  I don't think there is a lot of people that
17   joined this motion, but is there anybody else that
18   has any issue that's related to it they want to bring
19   up?  Okay.  So we will move beyond what I'm calling
20   motion number 6.
21             And we're going to what I'm calling motion
22   number 7, which, Mr. Villa, is motion to compel Rule
23   16 and Brady material, if ordered, to preserve law
24   enforcement notes.  What else on this -- what other
25   issues or rulings do you need, given the response of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the Government on this one, Mr. Villa?  Take your
 2    time.  Take your time.
 3             MR. VILLA:  Your Honor, Ms. Armijo has
 4    offered to discuss with me some of our outstanding
 5    issues.  Maybe we can set this one aside and do it
 6    tomorrow or later today.  And she and I can discuss
 7    it during a break.
 8             MS. ARMIJO:  We can discuss it at the next
 9    break, Your Honor.  Because it would take care of
10    most everything and it would save court time.
11             THE COURT:  All right.
12             MR. VILLA:  While I have the floor, thank
13    you -- it doesn't have anything to do with this.  I
14    wanted to flag something for the Court.  I think
15    Ms. Wild is aware of it, and I apologize for filing
16    late, but it's Document 1408 that I filed Monday, a
17    motion for statewide jury pool and jury
18    questionnaire.  I don't expect the Court to have made
19    any decisions.  But do I understand, at least with
20    respect to the jury questionnaire, that the jury
21    division needs -- they're estimating eight weeks.
22             THE COURT:  Yeah.  We've got to move on
23    that pretty quick, if we're going to do something on
24    that.
25             MR. VILLA:  So the one thing I guess I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    could ask the Court to do, if you're inclined, is

 2    order the United States to respond in an expedited

 3    fashion, so that we can get this questionnaire

 4    hammered out.

 5              THE COURT:  Tell me what your motion

 6    requests.

 7              MR. VILLA:  So two things:  One is a

 8    statewide jury pool, which I guess we have to get

 9    decided, so we know who to send the jury

10    questionnaire to.

11              THE COURT:  Tell me why you want a

12    statewide jury pool?

13              MR. VILLA:  Well, I think there are a

14    number of issues, Your Honor.

15              THE COURT:  What does it get you?  As

16    defendants what do you want it for?

17              MR. VILLA:  Well, for Counts 6 through 12,

18    a number of the --

19              THE COURT:  You want more Sandia Lab people

20    over there in that jury?  Is that what you're

21    wanting?

22              MR. BLACKBURN:  Farmington.

23              THE COURT:  You want Farmington.

24              MR. VILLA:  Nortenos, Your Honor.

25              THE COURT:  We'll get you some oil guys
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    over there in the jury box.
 2              MR. VILLA:  I think there are a number of
 3    things that will help prevent venue-type issues and
 4    other prejudice, you know.  A large amount of press
 5    coverage.  The Molina incident occurred --
 6              THE COURT:  Let me ask you this:  I don't
 7    live down here in Las Cruces, but I don't think there
 8    has been any coverage down here about this, has
 9    there?
10              MS. HARBOUR-VALDEZ:  Yes.
11              THE COURT:  Has it been anything like The
12    Journal in the north?
13              MS. HARBOUR-VALDEZ:  Your Honor, my
14    understanding is that a lot of times the Las Cruces
15    Sun News picks up the Journal article and repeats it.
16    At least that's what I've found when --
17              THE COURT:  Well, I would guess, correct me
18    if I'm wrong, you've got a lot less coverage down
19    here than we have up there, just by location of
20    articles on the front page and stuff.
21              MR. VILLA:  Yeah, I don't -- I'm not
22    familiar with Las Cruces.
23              THE COURT:  I'll come back to you.
24              MR. VILLA:  I have to rely on --
25              THE COURT:  Well, just think about it.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   guess I --

2          MR. VILLA:  I think it's the cross-section,

3   Judge.  You get more than what you get from the

4   southern pool, and if you're in the northern pool,

5   you get more than you got from the northern pool.

6   The Sandia Lab folks, you know, we may or may not

7   want on our jury, but I think we need different

8   mindsets from different geographical locations.

9          The incidents that are going to be tried in

10  6 through 12 are one that, basically, I guess is

11  Santa Fe, because this is the alleged conspiracy to

12  put a hit out on the Secretary of Corrections.  And

13  then the Molina murder is down here in Las Cruces.

14  So I think, geographically, a statewide jury pool

15  would be more representative.

16          THE COURT:  Well, let me ask you, since I

17  haven't reviewed your motion, are all the defendants

18  on board?

19          MR. VILLA:  Yes.

20          THE COURT:  They all want a statewide jury?

21          MR. VILLA:  All 13, both trials.

22          THE COURT:  Now, these are lengthy trials.

23  I know you've got to represent your defendants, but

24  have you thought about jury convenience on this?

25  That's going to be a hardship if you decide to get

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   some people from Farmington.
2           MR. VILLA:  I have, Your Honor.  But, you
3   know, when you look at the two maps of the southern
4   division and the northern division, we're going to
5   get people that -- if we're just in the southern
6   division, are going to have to drive three or four
7   hours.  They're going to have to stay here.  I'm not
8   sure that a couple extra hours that it takes to come
9   down from Taos or Santa Fe or Angel Fire makes that
10  big of a difference, as opposed to the folks in
11  Lovington, Carlsbad, and Hobbs, that are going to
12  have to come here even if we're just in the southern
13  division.
14          THE COURT:  Okay.  And what was the second
15  point?
16          MR. VILLA:  It's the questionnaire, Your
17  Honor.  The Government -- we provided it to the
18  Government, and they initially said, "We object."
19          And we said, "Well" --
20          THE COURT:  Did you actually provide a
21  questionnaire?
22          MR. VILLA:  Yes.
23          THE COURT:  It's attached to the motion?
24          MR. VILLA:  It is.  And I think the
25  Government, you know, initially their feedback was:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    We object.  And we said, Well -- you know, and it's
2    too long.  There are questions we can change, stuff
3    we can cut out.  Maybe we can agree on this.
4              THE COURT:  Hold on a second.
5              (A discussion was held off the record.)
6              THE COURT:  Go ahead.
7              MR. VILLA:  Sure, Judge.  And the
8    Government said, Okay, we'll look at it with that
9    eye.  And then I think we just kind of ran out of
10   time.  So I filed a motion in a sense to press the
11   Government and the Court to get this issue resolved,
12   so if we can get a questionnaire issued in time to
13   have it back, you know, we'd need at least a week or
14   two to review it.
15             THE COURT:  Anybody else on the defense
16   side want to say anything about this issue?
17             MR. VILLA:  The one thing I'll add -- I
18   know you haven't seen it -- I did cite to the Court
19   some other decisions that you have made on this
20   issue.  And to the extent that that can help you --
21             THE COURT:  What did I say?
22             MR. VILLA:  Well, you gave the
23   questionnaire --
24             THE COURT:  Was it SEC?
25             MR. VILLA:  You know, I think that may have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    been one.  Rodella was another.  Vigil -- and in all

 2    the cases, I believe, you did grant the

 3    questionnaire.  And the statewide jury pool, it was a

 4    mixed bag.

 5             THE COURT:  When did I deny the statewide?

 6             MR. VILLA:  I believe in Vigil you denied

 7    it.

 8             THE COURT:  Well, I had to in that, because

 9    what happened on that is Gorence asked for the trial.

10    But the way our jury plan was written at the time --

11    no, he did not ask for a statewide.  What he did is

12    he asked --

13             THE CLERK:  Vigil was Bregman.

14             THE COURT:  You're talking about Rodella,

15    right?

16             MR. VILLA:  Well, I think it came up in

17    both.  But I think what Ms. Wild is reminding the

18    Court is that Vigil was Bregman, not Gorence.

19             THE COURT:  Right.  But Vigil, we did do a

20    statewide.

21             MR. VILLA:  So maybe I had them backwards.

22    I think in Rodella it was denied, and Vigil it was

23    granted.

24             THE COURT:  Here's what happened in

25    Rodella.  What Gorence wanted was he wanted --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   because I could not get the courthouse in Santa Fe,
 2   he wanted to have a Santa Fe venire, which I somewhat
 3   agreed with.  But then we looked at our jury plan,
 4   and the jury plan required that the venire come from
 5   the location where the trial was.  And remember back
 6   then, we had a Santa Fe venire, then we a central, we
 7   had three -- and then we had in the south.  I don't
 8   think he wanted a statewide venire, which is
 9   interesting.  You might give that some thought.  I
10   don't think he wanted a statewide venire.  He wanted
11   a Santa Fe venire.  And you can think of maybe the
12   reasons why.
13             MR. VILLA:  We'll take a Santa Fe one,
14   Judge.
15             THE COURT:  You'll take a Santa Fe one.
16             But here was the upshot of that is, when we
17   looked at the plan -- I made a pitch that no jurors
18   were coming from Santa Fe.  Because if you're having
19   a criminal trial, you almost had to do it in
20   Albuquerque.  And then, that meant that you couldn't
21   do the venire from there.  So we were not using,
22   really, the people up in Santa Fe, Taos, Raton.  So I
23   made a pitch to abolish that.  And so that's what we
24   did.  We abolished that, so now I've got a north and
25   south.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              So I don't think -- I think if I could have
 2     had an agreement on that, I probably could have done
 3     it.  But I think the Government objected.  And so our
 4     jury plan was such that it didn't give me the
 5     flexibility.  It gives me the flexibility now, so
 6     it's been rewritten to allow a statewide venire.  And
 7     then it abolished the north.  So I think what you're
 8     asking is permissible.  It's just a question of
 9     whether to do it or not.
10              Disagree?
11              THE CLERK:  No, I don't disagree.
12              THE COURT:  Anybody else want to comment on
13     that?  I want to hear from the Government, so you may
14     want to hear what the Government has to say.
15              MR. VILLA:  And, Your Honor --
16              THE COURT:  You're not remembering stuff
17     again, are you, like Mr. Blackburn?
18              MR. BLACKBURN:  It's yesterday, so I've got
19     to help him out.
20              MR. VILLA:  I had to sit through dinner
21     with him last night with all these memories.
22              MR. BLACKBURN:  Those were Mr. Cooper's
23     memories.
24              MR. COOPER:  That he would like to forget.
25              MR. VILLA:  Mr. Sorrell, Lincoln Sorrell,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   we visited with Lincoln yesterday when we were here,
 2   and he did say he'd be available to the Court if you
 3   had questions about some of these issues.
 4              THE COURT:  Okay.  Thank you, Mr. Villa.  I
 5   love Lincoln Sorrell, but it's probably better you
 6   stay with Ms. Wild here.  Don't end run her.  You
 7   know, it's probably not a good idea.  So I encourage
 8   you to keep your contact with Ms. Wild.  Don't try to
 9   end around.
10              I'll come back -- well, go ahead.
11              MS. SIRIGNANO:  Judge, the only thing that
12   I was going to say is that all the media coverage was
13   briefed in 4275, and we're happy to refile that
14   motion here in 4268.  That lists out all the articles
15   that Mr. Villa --
16              THE COURT:  I'm sorry.  Don't give me
17   numbers because I get confused.
18              MS. SIRIGNANO:  I'm sorry.  In Mr. Garcia's
19   drug case, the 15-CR-4275.
20              THE COURT:  Yeah.
21              MS. SIRIGNANO:  We filed a very extensive
22   motion, if you recall, with all of the media articles
23   that we had found up until that point.  There have
24   been subsequent articles.
25              And just as a reminder to the Court, the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   problem isn't The Journal or the Las Cruces paper.

2   There has actually been articles in the El Paso

3   paper.  But the television picks it up.  All the

4   major networks, both in Albuquerque, here, and as

5   well as social media.  I've seen significant media

6   coverage of this case over Facebook, Twitter, and the

7   other social media outlets that people look at.

8              THE COURT:  I'll ask you the same question

9   I'm asking Mr. Villa:  Let's assume all that is true,

10  I still think it's probably less down here than up

11  there.  Let's assume that's true.  How does doing a

12  statewide venire help you on that?

13             MS. SIRIGNANO:  I think it lessens the

14  exposure that the defense has to worry about.  And

15  why use the pool so we can cast the net broader, to

16  make sure that there isn't any juror poisoning from

17  all of the media articles.

18             THE COURT:  I'll get you some folks out of

19  Jal that don't know anything about this case.

20             All right.  Thank you, Ms. Sirignano.

21             MS. SIRIGNANO:  Thank you, Judge.

22             THE COURT:  The reason I want to go ahead

23  and discuss this a little bit -- I know the motion

24  just got filed -- is this is an extremely tight

25  schedule.  Ms. Wild is right now is seeing if we can
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    do this.  And if we do, what kind of deadlines we

2    have.  Let's take the first issue about a statewide

3    venire.  What's your thoughts on that?

4              MS. ARMIJO:  Your Honor, our thoughts are

5    we would agree with the Court's proposition that the

6    media coverage here has been far less than up north.

7    And if you remember, with the Chris Garcia case and

8    with that motion -- and not that we are inviting a

9    motion to be filed in this case -- but the majority

10   of those were all articles that occurred up north,

11   not down south here.

12             And the primary concern is juror

13   convenience.  Because if we are going Monday through

14   Friday, and we end at Friday, 5:00; and let's just

15   say we get somebody from Farmington, you know, that

16   isn't just a couple of added hours, that's a seven,

17   eight-hour drive I believe from down here.  Or even

18   for, say, we get somebody even further away.  When

19   we're down here -- I think Albuquerque is more

20   centralized than Las Cruces, per se.  But down here,

21   we may get people, if you pick some people from up

22   north, that would have a very difficult drive.  If

23   we're doing it in January, it snows up north.  I

24   mean, if they're going to be driving late at night

25   home, it's going to make it impossible for them to

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                1-800-669-9492
                                                       e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   have any type of home life, if they're picked up that
 2   far.  And it's just a hardship on them.  So that's
 3   primarily our reasons, Your Honor.
 4              THE COURT:  Well, those sound like good
 5   reasons to try it in Albuquerque.
 6              MS. ARMIJO:  Yeah, but I don't -- yes, but
 7   we would disagree with that.
 8              THE COURT:  All right.  Talk to me about
 9   the second issue, then, on the questionnaire.
10              MS. ARMIJO:  The questionnaire that was
11   provided, we think, for one, we think -- and I'm not
12   sure, I know probably not the learned counsel that's
13   from out of state has never had a trial with you, but
14   certainly probably some of the Albuquerque attorneys
15   have.  But those of us sitting at the Government
16   table have -- know that you do a very extensive voir
17   dire; you ask a lot of questions, you're very
18   thorough.  I think that the parties can propose voir
19   dire questions for the Court, and follow-up.  Because
20   we know that this group is not shy about asking
21   questions certainly.  And so the questionnaire, we
22   just oppose it, because it will be burdensome, one;
23   and two, what they have proposed is, I think -- it's
24   quite lengthy, and it's quite one-sided.  It goes
25   into -- and I can give the Court examples, but it has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    a lot of questions about gangs, about Corrections,

2    and knocking people off that would be conservative,

3    quite frankly, and not giving the other side of the

4    picture.  Not going into the people that the

5    Government --

6              THE COURT:  I thought that was your

7    picture.

8              MS. ARMIJO:  I'm sorry?

9              THE COURT:  I thought that was your

10   picture.

11             MS. ARMIJO:  That we want conservative?

12             THE COURT:  No, I thought you wanted --

13   this was gang members knocking people off.  I thought

14   that was --

15             MS. ARMIJO:  That is our picture.

16             THE COURT:  That is your picture.

17             MS. ARMIJO:  What I mean is that their

18   questionnaire is such that they will get a good

19   picture of people that they do not want on the jury

20   pool, on the jury itself; whereas, the one that they

21   proposed to us does not give the United States a fair

22   shake.

23             So if there is one, I think that there may

24   be a lot of work to come up with one in talking to --

25   well, I know that time is short.  So if the Court is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    inclined to give one, then we need to start working

2    on that right away.  But I just don't think -- this

3    isn't a death penalty case.  And for once, I will

4    agree with defense that death is different.  But this

5    is not death.  So we do not need a jury questionnaire

6    to figure out if the jury can decide a death penalty

7    case.  So we, quite frankly, are opposed to a jury

8    questionnaire.  And we are certainly opposed to the

9    one that they proposed to us.

10          THE COURT:  Let me ask a couple of

11   questions.  And this is going a little bit deeper

12   into the pretrial conference than we would normally

13   be doing at this point.  But I think I need to ask

14   these questions to get a better feel for what we're

15   looking at on the jury.  How many jurors is the

16   Government going to be requesting that we seat for

17   this trial?  In other words, how many alternates are

18   we going to have?

19          MS. ARMIJO:  I think we would need at least

20   four alternates, if not six.

21          THE COURT:  All right.  Anybody from the

22   defendants want to begin to put -- do you have a

23   different figure?  It would be closer to four?

24   Closer to six?  So that we're looking at 18 in the

25   jury box, or 16 in the jury box?  We'll get chairs.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   We can handle that logistics.
 2              MR. BLACKBURN:  I would say six, Your
 3   Honor.
 4              THE COURT:  All right.  Well, let's plan on
 5   seating 18 for the jury then.
 6              I would have to have my memory refreshed,
 7   but how many peremptory challenges are the defendants
 8   going to get?
 9              MR. CASTLE:  Your Honor, we're entitled to
10   10, but the Rule of 24 allows to us request more, and
11   in fact, there is already a draft motion to request
12   additional peremptories.  That will be filed shortly.
13              THE COURT:  Well, maybe I didn't state the
14   question well.  I think you're entitled to 16
15   peremptory challenges.  So you're entitled to 16, but
16   is that for the five?
17              MS. ARMIJO:  Collectively.
18              THE COURT:  That's your question, right?
19   Would it be your position that the five get 16
20   peremptory challenges?
21              MS. ARMIJO:  Together?
22              THE COURT:  Yes.
23              MS. ARMIJO:  Yes.
24              THE COURT:  Any disagreement from the
25   defendants?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          All right.  So let's plan on then

2    defendants get 16 -- does that address your concern,

3    Mr. Castle?  Does 16 give you about what you were

4    shooting for?

5          MR. CASTLE:  Well, I apparently --

6          THE COURT:  You want to up the ante now?

7          MR. CASTLE:  The math got fuzzy for me, so

8    I'm not sure.

9          THE COURT:  Here's the deal.  Let me sort

10   of explain it.  It's a little bit more nuanced than

11   that.  The Government is going to get 10.  The

12   defendants are going to get 16 in total.  So the five

13   defendants are going to exercise 16 peremptory

14   challenges.

15         Here's the tricky part, and I'll have to

16   look at the statute, there is a statute on this.

17   After then we have the jurors -- after we have our

18   18th, at that point we know what our 12 are.  So

19   that's frozen.  So we know 1 through 12, who the

20   jurors are.  Then I give to each side -- and this is

21   where I don't know the math; I can't remember -- if I

22   were seating two alternates, then I would give the

23   defendants one peremptory challenge to exercise only

24   against the alternates, and I'd give the Government

25   one peremptory challenge only to be exercised against

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    the alternates.  You can waive it, whatever you want
 2    to do.
 3            With six alternates, my memory is that it
 4    goes.  It only goes to --
 5            (A discussion was held off the record.)
 6            MS. ARMIJO:  Your Honor?
 7            THE COURT:  Hold on just a second here.
 8            (A discussion was held off the record.)
 9            THE COURT:  Let me clean something up.  I'm
10    wrong.  It's only 10 peremptory challenges for the
11    defendant.  So you will have to move if it goes
12    beyond --
13            MS. ARMIJO:  16.
14            THE COURT:  16 together.  But I'm going to
15    look at the statute.  There is a statute on the
16    alternates I need to -- my memory is that it goes up
17    by one for every two.  So I think you're going to get
18    three extra peremptory challenges on each side to be
19    exercised against the alternates.  But we'll check
20    that.
21            All right.  Now, somebody was going to say
22    something, and I can't remember who was going to say
23    what.  But I'll go back to you, Ms. Armijo.
24            MS. ARMIJO:  Your Honor, I believe it is
25    Rule 24.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  It's a rule.

 2              MR. BLACKBURN:  It's a rule.

 3              MS. ARMIJO:  Rule 24(c)(4)(C).

 4              THE COURT:  What does it say?

 5              MS. ARMIJO:  It says three additional

 6   peremptory challenges are permitted when five or six

 7   alternates are impaneled.  So we'll get three each.

 8              THE COURT:  All right.  So everybody clear

 9   what we're going to do?  And then you've got a motion

10   for more peremptory challenges?

11              MR. CASTLE:  Yes, Your Honor.

12              THE COURT:  All right.  But we're going to

13   treat them as joint.  So what are you requesting,

14   Mr. Castle?  How many additional were you asking for?

15              MR. CASTLE:  Well, Your Honor, we floated

16   over a motion with that aspect blank to get the group

17   consensus.  And we haven't been able to get

18   consensus, just because everybody has been busy

19   getting prepared for this hearing.

20              THE COURT:  Do you have a range?

21              MR. CASTLE:  I think mine was, because of

22   the number of defendants, we were asking for ten

23   additional peremptories.  But of course, we've always

24   been -- well, we haven't -- horse trading goes on

25   west of the Mississippi, so I understand that there
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    might be a different position from the Government.

2           What I haven't done, Judge, is to see what

3    the courts have done locally in complex cases, to

4    see -- there are cases where they granted extra

5    peremptories, and I'm trying to get a feel for what

6    other courts have done.

7           THE COURT:  It's not going to be very

8    encouraging.  It's just hard to talk us into it, even

9    in the most complex cases, just because -- here's the

10   problem:  If you start passing out that many

11   peremptories, let's say we get 46, which would be

12   about a standard number for just a routine trial.

13   You get about 46 jurors in there.  I've got 16

14   peremptory challenges total.  Then I've got to add on

15   now three.  So I'm up to six.  So that gives me 22.

16   And then let's say I'm going with about -- what was

17   my last trial?  Maybe about 11 for cause challenges.

18   It's going to be higher on this.  It just makes it

19   hard for y'all, and for the Court, and for the

20   Government to try to do a voir dire.  It's just

21   tough.

22           And so, I know you'd like to have more

23   peremptory, but what you give up on the other side is

24   you've got a whole roomful of people you're trying to

25   deal with.  You know, it's always Juror No. 51 back

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    there that yaps up, and everybody knows they're not
2    going to be selected.  And they just chatter.  You
3    know, we've all been there, right?
4              So give it some thought.  I'm not saying
5    no.  But, you know, you get a little bit more with
6    the peremptories, but you also give up that sort of
7    intimacy you get with a smaller venire.  And I work
8    real hard to try to reduce the venire that you have
9    to a manageable level, so we have a good voir dire
10   without running out of jurors.  And I'll tell you
11   what, I've sweated it at times, but I've always
12   gotten a jury without maybe sacrificing a little bit
13   of intimacy.
14             So I don't know if that's any guidance.
15   I'm not saying no.  It sounds like y'all need to
16   think a little bit about what you're going to ask
17   for.
18             Mr. Castellano.
19             MR. CASTELLANO:  Your Honor, if we can
20   change topics back to the questionnaire itself.  I
21   think there are two issues.  One is should we have a
22   questionnaire, and two is what's going to be in that
23   questionnaire?  And what Ms. Armijo alluded to with
24   problems with a questionnaire are --
25             THE COURT:  Let's do this.  I am way over
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    with Ms. Bean.  I was having so much fun talking

 2    about selecting a jury that I just let the time get

 3    away.  Let me let you speak to us after the break.

 4    So we'll be in recess for about 15 minutes.

 5              (The Court stood in recess.)

 6              THE COURT:  All right.  Mr. Castellano.

 7    You were going to give me two reasons why we

 8    shouldn't do a questionnaire.

 9              MR. CASTELLANO:  Yes, Your Honor.  And I'm

10    only going to cover three questions from the

11    questionnaire.  I don't think we need to go over the

12    whole thing.  So this is page 18 of the

13    questionnaire, Question 87A.  "Would it matter to you

14    that becoming an informant was their only avenue to

15    avoid the full consequences of their actions?"

16    That's a loaded question, because any defendant in

17    this case has multiple ways of avoiding the

18    consequences, including going to trial, or motions

19    practice.  And cooperation is another one.  So I

20    think that's somewhat of a loaded question.

21              Question 88, once again referring to

22    informants, says, "How do you feel about the

23    truthfulness of that testimony," when they haven't

24    heard it yet.  So they're kind of loading that up by

25    saying they're going to be lenient, how do you feel
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    about it?  And the Court is already going to give an

2    instruction as it relates to cooperators.

3            The next on Question 90B says, "Will you

4    stand for the right of every juror to vote their

5    decision in the manner they feel is appropriate?"

6    That's not what the law says.  The jurors can vote in

7    a way they think is appropriate.  They have to vote

8    in conformance with the Court's instructions.  So not

9    only I don't think we should do it, but the question

10   is whether or not we're going to have any agreement

11   on questions especially such as that.  That's just

12   simply not what the Court is going to instruct them

13   to do.  They can't do what feels right to them.  They

14   have to follow the Court's instructions.  And this

15   instruction tells them that that's not necessary, or

16   at least suggests that.

17           So those are just three examples, Judge, of

18   why I think we're going to have problems with the

19   questionnaire.

20           THE COURT:  All right.  Thank you, Mr.

21   Castellano.

22           Well, let's do this:  The Government hasn't

23   had an opportunity to respond to that motion, so I'm

24   not going to rule definitively today.  I can tell you

25   that I am strongly inclined to allow a jury

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   questionnaire.  I'm less convinced that a statewide

 2   venire is going to help us with any problem that we

 3   have.  But if the defendants think it's important for

 4   the appearance of justice that you have a statewide

 5   venire, I'm willing to do that.  I want the

 6   defendants to feel like they've got a fair jury.  So

 7   it will be some juror inconvenience, but I'll trade

 8   off juror inconvenience of a few people to make sure

 9   the defendants feel like the jury is fair and

10   impartial to them.

11          The reality is, if I get some folks from

12   Hobbs, they're going to be traveling about five hours

13   over here anyway.  Not a lot different from coming

14   out of Bernalillo County, which is where most of --

15   probably your northern folks are going to come -- I'm

16   going to probably have a few from Farmington and

17   stuff.  But like I said, I'll trade off juror

18   inconvenience to make sure the defendants feel like

19   they've got a fair jury.

20          The jury questionnaire, I'm inclined to

21   allow one.  Again, I'll allow the Government to,

22   after they listen to me talk this afternoon, decide

23   they want to continue to oppose it, then we'll --

24   they can file their response.  I read most of the

25   defendants' motions during the break.  But if the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1   Government wants to oppose it, we'll pick it up on

2   the 20th, and resolve any issues and objections.

3          But if I'm going to have a questionnaire,

4   I've got to go ahead and move now.  So I'm going to

5   set some deadlines for some things to be done.  This

6   will be without prejudice to the Government.  If you

7   want to take another swipe at it on November 20th,

8   you can.

9          And while I'm setting some deadlines --

10  these are not in stone, because Ms. Wild is going to

11  have to walk out of here and talk to Mr. Sorrell and

12  see if they're doable, so she'll get back with you

13  and finalize these.  But while we're together let's

14  talk about the trial.  We're going to seat 18 jurors.

15  We're going to have, we just decided, 22 peremptory

16  challenges without prejudice to trying to increase

17  that number from the defendants.  But that puts us at

18  38 right there.

19         Let's see, I wrote it down, and then I

20  crossed it out.  I think Ms. Wild anticipates, with

21  18 jurors, that she thinks that for cause might be as

22  high as 30.  I'll have to think about that.  We're

23  moving awfully quick on this today.  But the longer I

24  serve, the more for cause challenges there seems to

25  be.  I don't know if it's just getting people --

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   harder to get people to sit on juries or what.  But
 2   let's work with her 30.  That's going to put us at
 3   68.  That's a lot of people to work with in the
 4   courtroom.  So here's what I propose, is I don't
 5   think I can probably, with 18 jurors, get mine out of
 6   my usual 45, 46 in Albuquerque.  So I propose to
 7   bring 60 into the courtroom.  Let's see if we can get
 8   our 18 out of that 60.  I'll leave another 60 in the
 9   jury assembly room -- actually, I'll leave another
10   80.
11             THE CLERK:  No, 140 down there.
12             (A discussion was held off the record.)
13             THE COURT:  So we'll have 60 minus 140,
14   will be 80.  So I'll have 80 in there, and then we
15   can think about this.  And we can do this in waves
16   and bring another 60 in; do our voir dire.  And if
17   necessary, bring another 20 in.  What I've done in
18   the past -- and I think it's only happened once that
19   I haven't gotten my jury out of that first batch --
20   maybe twice -- but maybe, we just bring up another 10
21   or something like that.  We can agree on it so nobody
22   gets an advantage at the time.  But we can agree on
23   it.  But I guess my thoughts would be, if we're
24   looking around at -- rather than bringing 60 in and
25   doing it all again, bring in five, 10, see what our
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   needs are at that point.  But to do the voir dire
2   again it sure goes quicker with five or 10 than it
3   does with the jury box.  And then add those to the 60
4   and start doing our peremptory challenges.  So that's
5   what I'm thinking of.
6          So we'll -- so the Government, if it wants
7   to say something, it needs to do it before the 20th.
8   We'll pick this back up.  And then I'll use the 20th
9   to resolve any issues or objections.
10         Here's what I propose as far as a
11  schedule -- and this is what Ms. Wild will be working
12  with Mr. Sorrell to see if we can finalize this --
13  the parties shall, by the end of business on November
14  22, 2017 -- I think that's Wednesday -- the parties
15  shall submit to the Court the final version in an
16  executable format, a cover letter from Jury -- so
17  that's the cover letter that will go from the Jury
18  Services, the jury technician, to accompany the
19  special questionnaire to give some detail about the
20  case.  So you'll need to agree, or attempt to agree
21  on a cover letter and then the questionnaire.  We'll
22  draft the cover letter, then y'all just work on the
23  questionnaire.
24         See if you can agree.  And if you can't
25  agree, then submit to me a questionnaire that shows
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   how much you agree.  And then I'll make the final
 2   decision on what goes out.  I don't think we're going
 3   to have time for argument on it, because I'm going to
 4   have to send those out on November 27, which is
 5   Monday.  So that's going to be over those holiday
 6   weekends.  So you get it to me by the end of business
 7   on the 22nd, and we're sending it out on the 27th.
 8   And so I'll just have to make some calls as to
 9   whether it's in and out.  If you want to send a
10   little brief, want to send a little letter making a
11   pitch as to why I should keep something in or take
12   something out, you can do that.  And I'll just make
13   the best call I can.  It goes out on the 27th.
14              These dates are horrible with the holidays.
15   But on December 27, the projected jurors are going to
16   have to return the special jury questionnaire, which
17   will mean -- I mean, literally these days are falling
18   on the 25th, so I'm bumping them over.  Then January
19   1st -- so I'll bump it over to the 2nd -- the VDQ,
20   which is that standard voir dire questionnaire that
21   you get, you're going to get, and the special jury
22   questionnaire, those will be available to counsel.
23              And then -- so we're into 2018 now.  On
24   January 15, 2018, by that point, the parties give the
25   Court an agreed for cause challenges due in writing.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    So try to agree as much as you can on the for cause
 2    challenges, and then send them to the Court.  And
 3    then the ones you can't agree on, tell me what they
 4    are and then I'll make the best call I can.
 5              MS. SIRIGNANO:  Judge, can you repeat them
 6    again, please?
 7              THE COURT:  Yeah, I'll repeat them.  Let me
 8    get through them first, and then I'll just repeat
 9    them all.
10              So I'll get a list on the 15th, the
11    parties' agreed for cause challenges due in writing.
12    And then the parties' disputed for cause challenges
13    due in writing.
14              I will then exercise for cause challenges
15    based upon the parties' for cause challenges.  I will
16    not excuse anybody for cause that nobody has
17    challenged.  So I'm not going to do -- I know some
18    judges do this, they go through it and make
19    independent cuts.  I'm not going to do that.  If
20    y'all don't put one on the table, I'm not going to
21    for cause it, because, otherwise, people will be mad
22    saying, why did the judge excuse that person?  I
23    wanted that person on the jury?  So I won't do that.
24              On January 22nd, that will be when you'll
25    get my ruling and order on the disputed for cause
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   challenges.  I'll issue it by that date.
 2            For prospective jurors calling in to
 3   determine if need to appear for selection:  The
 4   reason we're doing it that date, we're going to be a
 5   week out from trial, and so I need to tell the
 6   prospective jurors that are calling in whether they
 7   need to appear for selection.  So I'll make the
 8   ruling and the order.  And then we'll be telling
 9   simultaneously Jury Service that they can inform
10   those jurors that they don't have to -- they'll be
11   notified they don't have to appear, should they plan
12   to be present for the selection.
13            Then our jury trial is January 29, 2018.
14   I'll repeat the dates here in a minute.  But here's a
15   few thoughts.  I haven't studied this jury
16   questionnaire that you've -- at all -- Mr. Castellano
17   has pointed out more than I've read.  I tend to think
18   that, having done a number of jury questionnaires,
19   and y'all have done a lot -- they're a little bit
20   better if they're shorter rather than longer.  You
21   get some irate jurors.  Remember these people can end
22   up on your jury.  And they get a little irate if they
23   have to fill out the standard voir dire
24   questionnaire, the voir dire questionnaire sent by
25   the court -- remember there is one that you never
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   see, unless they don't fill these out.
 2            So by the time you get to the special
 3   questionnaire, it's the third questionnaire they
 4   filled out.  And then they come to court and you ask
 5   them more questions.  And they get a little irate.
 6   So I tend to think a little bit shorter rather than
 7   longer is better.  But I'll play ball with you,
 8   Counsel.  This is for your benefit.
 9            The other thing is:  Don't kill each other
10   over the questionnaires.  I tend to think that
11   sometimes we are critical of the other side's
12   questions.  And sometimes, if you just listen,
13   sometimes your opposing counsel can ask a really good
14   question.  All you're trying to get is the jurors to
15   talk and open up their thoughts.  And sometimes your
16   opposing counsel can ask a question that reveals a
17   lot that you're grateful that they got them to
18   talking.  So all I would say to you is be generous
19   with each other.  It's voir dire.  And see if you can
20   live with things rather than trying to hone them.
21            And the same way with the other side.  If
22   people are making suggestions, see if you can live
23   with those.  A lot of times a word or two tinkering
24   can satisfy the other side, and get you through it,
25   and get your question in, rather than risk me looking
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                 1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    at it and crossing the whole thing out.
 2              So those are just some words of advice.
 3              Do I have any other words of advice,
 4    Ms. Wild, that I usually give on questionnaires?
 5    That's about it.
 6              THE CLERK:  I don't think so.
 7              THE COURT:  All right.  So let me give you
 8    the dates again.  Motions filed, if the Government
 9    wants to file any response, it needs to do it before
10    the 20th, so I can look at it and be ready for the
11    20th.  We'll have a hearing on the 20th to resolve
12    any further issues or objections the Government might
13    have or the parties might have.
14              November 22nd, which will be that
15    Wednesday, you'll submit to the Court the final
16    version in an executable format.  We will prepare the
17    cover letter from the jury technician to accompany,
18    to give some detail about the case.
19              And on November 27, 2017, the SJQ, special
20    jury questionnaire, will be mailed out.
21              December 25 -- or 26, 2017, the prospective
22    jurors will return, by that date, the SJQ.
23              By January the 2nd, 2018, the VDQ and the
24    SJQ will be available to counsel.
25              January 15, 2018, the parties' agreed for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   cause challenges will be due in writing.  And the
 2   parties' disputed for cause challenges will be due in
 3   writing.
 4            And on January 22, 2018, I will issue a
 5   ruling and order on the disputed for cause
 6   challenges.  I will issue it that day, or by that
 7   day.  And then the jury selection, jury trial, will
 8   be January 29, 2018.  Again, that's subject to
 9   Lincoln Sorrell blessing it.  It's also subject to
10   the Government taking another shot at me.  And what
11   else anybody want to say about that?  Are you
12   comfortable with that, Mr. Castle?
13            MR. CASTLE:  Your Honor, I was talking to
14   the Government over the break.  And one concern we
15   have is, I think that we have, is pretrial publicity.
16   And we haven't briefed it, but there seems to be some
17   law that might encourage individual voir dire on
18   pretrial publicity.  Since there has been a
19   significant amount of it, what I'm proposing is the
20   Court consider, after the questionnaires and after
21   people have agreed on cause challenges, that if there
22   is some ambiguity as to whether certain individuals
23   that are left have been exposed to pretrial
24   publicity, that the Court consider doing that
25   individual voir dire, so as to protect, possibly,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    from poisoning the rest of the pool, either by

2    general voir dire questions that might go to that, or

3    discussions out in the hallway.  If we can identify

4    those people earlier and reduce the chances of

5    poisoning the whole venire.

6              THE COURT:  Well, let me break that down in

7    a couple of things.  One is, if we do individual voir

8    dire, I think we'll be here forever.  But I hear what

9    you're saying.

10             I will handle questions on:  Do you know

11   anything about this case?  And if somebody raises

12   their hand and think they know something about the

13   case, I will bring them to the bench.  We'll do a

14   sidebar.  And I will do all that questioning outside.

15   We'll fog everything so that they can't hear.  But

16   we'll do that at the bench.  I will not have jurors

17   telling us what they've read, because that would

18   defeat the purpose of it.  So does that address your

19   concern?

20             MR. CASTLE:  Yes, Your Honor.

21             THE COURT:  All right.  Anybody else on the

22   questionnaire?  On the venire?

23             All right.  Let's then move to --

24             MR. BLACKBURN:  Judge, before you move on,

25   may I address the Court?

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                           1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                          e-mail: info@litsupport.com

```
 1            THE COURT:  Certainly.
 2            MR. BLACKBURN:  I spoke to Mr. Castellano
 3    about this before the Court mentioned about a
 4    statewide questionnaire, when you were talking about
 5    jury convenience.  We were wondering about counsel
 6    convenience.  And I understand that the Court may
 7    have made some comments at one of the last hearings
 8    that didn't involve this group.  But I know the Court
 9    has a specific method of the number of days a week
10    that we will work, and whether we will, in big trials
11    like this, whether we will take Fridays off or
12    Mondays off for those issues.  And I know the Court
13    has made comments on other cases.  But I don't think
14    you've ever addressed this group, the 4268, or this
15    case, as to trial schedules, and whether we will
16    break early for those people who need to get out of
17    town.  My argument was going to be, if you don't want
18    to do a convenient statewide, to accommodate the
19    jurors who want to get home on a Friday afternoon,
20    after they've been here all week, you can always take
21    a Friday off, or something.
22            But I'm more looking now that we've passed
23    the juror convenience to lawyer convenience and staff
24    convenience.  So that we can start working on that.
25    So if the Court has that in mind, or your standard,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    if you could let us know what that is, so that we can
 2    start making arrangements for -- if we need to hire
 3    more people, or we need to hire people to drive us
 4    back on a Friday night, or something like that.  I
 5    don't know if Uber goes all the way back to
 6    Albuquerque.
 7              THE COURT:  Oh, you can pay anybody.  Kind
 8    of like Lloyd's of London.  They'll sell you a
 9    policy.  I don't know how much it would cost you, but
10    they'll sell you one.
11              MR. BLACKBURN:  Do you think Ms. Waters
12    would approve that on our budget?
13              THE COURT:  I don't know.  Y'all got as
14    about a good feel for that as I do.
15              Well, look, it's not going to be easy.
16    It's not going to be easy.  And I don't tend to like
17    to drag things out.  I will be slightly open minded.
18    But I will tell you what I'm inclined to do is:
19    Let's just get her done.  So we're not going to be
20    taking Fridays off.  We're not going to be quitting
21    early.  I think the best way to help the jurors get
22    it done, get them back up there.  If we drag it out,
23    it will just be more painful for us.  I don't know
24    about y'all, but about the third week of a month-long
25    trial, I always wished I'd gone into coaching or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    ministry, or something else.  But that third week

2    just seems like, wow, you just wish you'd have done

3    something else with your life.  So I'll keep an open

4    mind.  But I'd be inclined, let's just get it done.

5    So if that's any guidance to you in planning where we

6    are.

7                MR. BLACKBURN:  Does that include

8    Saturdays?

9                THE COURT:  No, we won't work Saturdays.

10   We won't work Saturdays or Sundays.  We'll try to

11   keep good hours.  We're dealing with a lot of people

12   here.  It's going to be reduced for the first trial,

13   and the second trial.  I hope we'll be able to move

14   it better, shorter breaks, get in here and get

15   started and stuff like that.  But we've had a lot of

16   things to consider with so many people.  But with a

17   smaller group, I think we can keep better hours and

18   just get it done.

19                All right.  Then I think that the next

20   motion we're up to is -- I hope I haven't gotten

21   everything out of the order.

22                THE CLERK:  We're not doing 7.

23                THE COURT:  What I'm showing as next -- and

24   correct me if I'm wrong -- is Mr. Perez' motion.  I

25   can't find the motion.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE CLERK:  We're tabling that.

 2              THE COURT:  We're tabling number 8?

 3              THE CLERK:  Number 7.

 4              THE COURT:  Did I think I did number 7?

 5              All right.  Mr. Villa, do you want talk to

 6    me about your Rule 16 and Brady motion?

 7              MR. VILLA:  Yes, Your Honor.  If you

 8    recall, before I took us into the world of statewide

 9    jury pools and jury questionnaires, we asked the

10    Court to put this aside so we could talk.  I have

11    spoken to Ms. Armijo, and she has agreed to turn over

12    the items that the Government was initially

13    resisting.  And I'll let her speak, I guess there is

14    a couple of caveats.  With respect to the first issue

15    in dispute, which was a map or a layout of Southern

16    New Mexico Correctional Facility, they're willing to

17    provide us something that -- an internal document

18    that Department of Corrections may have, subject to

19    what she hears back from them.  They have had some

20    security concerns.

21              I told her what I needed, which is

22    essentially just the buildings, and the names of each

23    building.  I don't need anything else.  So, depending

24    upon whether Department of Corrections says, We need

25    a court order, we'll come back to you on that.  The
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Government will also agree to give me -- if we can

2    come up with a Google Earth or Google Map picture

3    that has the buildings, one of their folks will

4    identify those.  So both of those things will be

5    coming our way.  Again, with the caveat that the

6    Department of Corrections might resist us, even on a

7    more trimmed down schematic, if you will.

8             The other thing that was at issue was more

9    identifying information about the confidential human

10   source.  BM are the initials.  The Government has

11   agreed to tell me where he is.  In fact, they already

12   have told me where he is.  And he has counsel, so I

13   can speak to counsel about trying to get his client

14   interviewed -- his or her client interviewed.  So I

15   think that settles that issue.

16            And the last issue, I'm not sure if there

17   was a dispute with the phone calls of the cooperating

18   witnesses.  So the Department of Corrections has

19   provided to the Government all of the phone calls of

20   the cooperating witnesses that they have in their

21   custody.  With respect to the United States Marshals,

22   there was some mentioned this morning by Ms. Armijo

23   that maybe there was going to be some resistance.

24   But it turns out that we're going to get all of the

25   phone calls of the cooperating informants that I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   identified in my motion -- and I mean, cooperating

2   defendants -- from Sandoval County Detention Center,

3   as well as Otero County, where our newest member,

4   Mario Rodriguez was.  And I think unless one of my

5   colleagues corrects me, that covers all of the phone

6   calls that we were after in this motion.

7            THE COURT:  All right.  Anybody else have

8   anything they want to say on this motion?

9            Ms. Armijo, did Mr. Villa correctly state

10  your and Mr. Villa's agreement?

11           MS. ARMIJO:  Yes.

12           THE COURT:  All right.  Anything else on

13  this motion?

14           MR. VILLA:  The only thing I would add is

15  the Government -- one of the things I mentioned in my

16  reply is even the things that the Government agreed

17  to provide, they have not.  The Government has

18  informed me that those are coming in this next batch

19  that's gone on to Mr. Aoki.  So we're expecting to

20  get it within a week or two.

21           THE COURT:  So these are coming in that

22  batch?

23           MS. ARMIJO:  Your Honor, they're already

24  all queued up.  We're just waiting for -- so the

25  calls, there was an initial hard drive we received,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   218 gigabytes.  And the FBI received another set.

2   And that was the ones that include the detention

3   facilities.  But several defendants have made

4   requests for NMCD calls, either through their IPRA

5   requests, or through us.  Those calls just went to

6   the -- got to the FBI-Albuquerque, and will be sent

7   down to us tomorrow.  I think they're being driven

8   here tomorrow.  So that's another hard drive.  We

9   have to get with Mr. Aoki and see if the hard drive

10  he sent to us is able to do that as well.  That's

11  going to be another, I understand, another 400

12  gigabytes calls.  So given all that, as long as there

13  are no hard drive issues, we should be able to get

14  those out with everything else.

15          THE COURT:  All right.  Does that work for

16  you then, Mr. Villa?

17          MR. VILLA:  That does work.  And maybe this

18  brings up the issue with respect to the tablets.  If

19  for some reason, given our time crunch, there isn't

20  enough room on the tablets, the tablets have recently

21  been modified to have more room.  What I would ask

22  the Government to do is to produce those to us.

23  Because if there is 400 calls -- forget how many

24  megabytes or gigabytes -- we have to start listening

25  to them.  And then we can figure out a solution so

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that our clients can listen to them.  But I don't
 2   want to see, Well, the tablets don't have room, so we
 3   can't turn them over to defense counsel.
 4            THE COURT:  How much extra storage did we
 5   add on those things when we did it?
 6            MS. HARBOUR-VALDEZ:  500 gigabytes.
 7            MR. VILLA:  Thank you.
 8            So maybe it's not an issue, but if it is,
 9   we can start listening to them in our offices to get
10   ready for trial, and figure out a solution for our
11   clients.  But, you know, there are some things that
12   we've asked for that we don't get, because it's got
13   to go to Seattle first, and get put on the tablet.
14   And now that we're running out of time, that's the
15   one concern I have.
16            THE COURT:  Well, let's -- go ahead, Ms.
17   Armijo.
18            MS. ARMIJO:  I don't know what he means by
19   having us do anything first.  When I spoke to Mr.
20   Aoki, he said that he can deal with it; that we send
21   them as we get it, and he can shrink them or do
22   whatever else he does.  And that would probably add
23   more time.  And the Court has given us a deadline on
24   some things.  So we're not going to be tinkering with
25   it.  We're just going to get it, copy it, and send it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   out.
 2           THE COURT:  Well, let's see if we have a
 3   problem.  If we have a problem, I'll be back down
 4   here right after the deadline to get that material to
 5   Mr. Aoki.  Let's see if we have a problem.  If we do,
 6   we'll raise that.
 7           MR. BLACKBURN:  Judge, we received a phone
 8   call, email from Mr. Aoki's office this afternoon, or
 9   just recently, asking us about recalling the tablets.
10   And it says that they were provided with 9,000 jail
11   calls, and it was going to take 218 gigabytes.  So
12   they're recalling the tablets.  But now I don't know
13   if there is going to -- so I just say that to the
14   Court, because it sounds like we're getting a few
15   more.
16           THE COURT:  Well, are these 218 part of the
17   400?
18           MS. ARMIJO:  No.  In addition to.  There is
19   218, and then there is 400.  Is that the correct
20   number?
21           THE COURT:  Why don't you get on the phone
22   with Mr. Aoki, they're an hour behind us here, and
23   see if -- y'all can tell him that he's going to get
24   more, is he going to be able to squeeze that down, or
25   is that --
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. SIRIGNANO:  Your Honor, he says the 500

2     gigabyte drives can be installed on the tablets.  And

3     that the 9,000 calls are approximately 218 gigabytes.

4     So they should fit on the upgraded drives.

5          THE COURT:  Okay.

6          MS. SIRIGNANO:  But Mr. Aoki is going to

7     need time to convert all these calls, including the

8     additional 400.  So there seems to be some extra

9     space on the drives.  But the delay will be receiving

10    the calls, converting the calls to a format that will

11    play on the tablets, then installing them, recalling

12    tablets, then installing them on the tablets, and

13    sending them back to the clients.

14         THE COURT:  Well, it sounds like the

15    Government is going to -- is in good shape to meet

16    the deadline.  So maybe we can squeeze a little time

17    out before.  Because they've got a deadline.  But

18    they're not waiting until the deadline.  They're

19    trying to get it done, maybe even today or tomorrow.

20    So maybe we're going to get -- find some time at the

21    front end rather than the back end that Mr. Aoki is

22    having to work with.  Do you see with I'm saying?

23         MS. SIRIGNANO:  Yes, Your Honor.  And we'll

24    talk with Mr. Aoki after the hearing.

25         THE COURT:  Yeah.  Tell him if there is

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                              1-800-669-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                            e-mail: info@litsupport.com

```
 1    something I can do, I'll try to make it happen.

 2              MS. SIRIGNANO:  Thank you, Judge.

 3              THE COURT:  All right.  Anything else, Mr.

 4    Villa?

 5              MR. VILLA:  No, Judge.

 6              THE COURT:  All right.  That takes care of

 7    everything in your motion?

 8              MR. VILLA:  It does.

 9              THE COURT:  All right.  So let's go to what

10    is teed up as motion number 8.  This is also your

11    motion.  Did I get everything out of order here?

12              THE CLERK:  1253 is the next one, Dan

13    Sanchez' motion to compel.

14              (A discussion was held off the record.)

15              THE COURT:  All right.  So we'll take up

16    Document 1253.  This is Defendant Daniel Sanchez'

17    motion to compel specific discovery.  Ms. Jacks.

18              MS. JACKS:  Good afternoon, Your Honor.

19              THE COURT:  What's left on this issue you

20    need rulings on?

21              MS. JACKS:  Not a lot.  And we can just go

22    right to it.  So number C was a request for the audio

23    visual recordings of the informants during contact

24    visits with girlfriends or wives, and other family

25    members.  And these are visits in which the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    informants engaged in sexual activity in front of

2    children over a period of several hours on multiple

3    different occasions.

4             The Government has agreed -- well,

5    obviously, this is relevant to the credibility of the

6    informants, and the benefits they received because of

7    their cooperation.  What the Government is saying is

8    those videos are only going to be available for

9    review at the U.S. Attorney's Office.

10            I think they should be provided to counsel

11   for review in their office.  These are videos that

12   we're going to want to take excerpts of for various

13   motions hearing, and perhaps trial exhibits for

14   cross-examining the informants.  And that can't be

15   done in the U.S. Attorney's Office.

16            And I guess the other thing is, just as a

17   logistical matter for me, and I think for others

18   here, we're not local.  And the amount of time that

19   it takes for such a review, is substantial.

20            THE COURT:  And these are, as you said,

21   obviously relevant because that would be a violation

22   of some prison privileges?

23            MS. JACKS:  Well, for sure.  And I think

24   also because, as a benefit of cooperation, these

25   informants, who are generally only permitted to visit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    for very limited periods of time, through a glass
 2    partition, using a phone, were allowed access to
 3    their family members in some sort of contact
 4    situation that was not monitored in real-time by
 5    prison staff.  And the visits, from what I can tell,
 6    went on for several hours.  That's clearly something
 7    that's unusual for inmates of this -- held in this
 8    type of custody.  And was clearly done after they
 9    agreed to cooperate with the Government.
10              THE COURT:  So your theory is that these
11    were additional rewards for cooperating?
12              MS. JACKS:  Yes.  And I also think it goes
13    to the informants' attitudes towards cooperating and
14    towards these proceedings.  I mean, they -- as a
15    benefit of their cooperation, they were able to get
16    contact visits, which many of them immediately
17    abused, by engaging in what I think is felonious
18    criminal activity in front of children, involving sex
19    offenses.
20              THE COURT:  Well, if they were married,
21    what's the felony?
22              MS. JACKS:  Well, I think, depending on the
23    age of the children, contributing to the delinquency
24    of a minor would be at least one that I can think of
25    with respect to engaging in intercourse in front of
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    children that aren't old enough to understand what

 2    that is.

 3              THE COURT:  Okay.

 4              MS. JACKS:  Indecent exposure might be

 5    another, depending on the situation.

 6              THE COURT:  All right.  Anything else,

 7    Ms. Jacks, on that issue?

 8              MS. JACKS:  On that particular request?

 9              THE COURT:  Anybody else?  I can't remember

10    on this if anybody joined your request on this one?

11    No, it was just y'all.  But does anybody else have

12    anything to say on that?  Mr. Lowry?

13              MR. LOWRY:  Your Honor -- and I just

14    briefly add to this, along with the benefits that

15    Ms. Jacks is talking about, another one that I was

16    mentioning earlier, in terms of the scope of Brady

17    and Giglio, there is a complete failure to report any

18    of this child abuse to CYFD, which would also be a

19    benefit that ran to the cooperating individuals in

20    this case.  Given that we have reason to believe,

21    based on the paper discovery that's been disclosed,

22    that there were fairly obvious sex acts going on in

23    front of very small children that went unpunished and

24    unreported.

25              THE COURT:  Okay.  Thank you, Mr. Lowry.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Ms. Bhalla, did you have anything?

2          MS. BHALLA:  I think Ms. Jacks can cover it

3   if she needs to.

4          THE COURT:  All right.  Anyone else want to

5   comment on this?

6          All right.  From the Government, are you

7   going to handle this, Mr. Castellano?

8          MR. CASTELLANO:  Yes, Your Honor.

9          So in terms of benefits, they were allowed

10  contact visits with their family.  They were not

11  allowed conjugal visits.  And so clearly that was a

12  problem with their conduct.

13          In terms of investigation, and CYFD,

14  actually all of these incidents were turned over to

15  New Mexico State Police.  We took a hands-off

16  approach to the investigation.  So New Mexico State

17  Police made its own decisions about charging or not

18  charging any of that conduct.

19          So we have made -- as the rules allow, we

20  have made available the video, the visitations to

21  defense counsel.  And the reason we didn't want to

22  put it out there, or put it on the tablets, is that

23  it does involve sexual activity.  One of the

24  incidents involves heavy petting over the clothing.

25  But there are other sexual acts on the videos.  So

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                           Albuquerque, NM 87102
(505) 989-4949                                       (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                     1-800-669-9492
                                              e-mail: info@litsupport.com



```
 1    what we wanted to prevent was that information being
 2    disclosed.  So we've agreed to make it available for
 3    viewing at the office.
 4              THE COURT:  All right.  So we're just
 5    fighting over where this is going to be produced?
 6              MR. CASTELLANO:  Yes, Your Honor, that's
 7    correct.
 8              THE COURT:  Okay.
 9              MR. CASTELLANO:  There is no doubt that it
10    will be produced, it's just the manner in which it
11    will be produced.
12              THE COURT:  All right.  Thank you, Mr.
13    Castellano.
14              Ms. Jacks, I'll give you the last word on
15    it.
16              MS. JACKS:  Well, Ms. Bhalla was just
17    reminding me that apparently there are drug exchanges
18    occurring upon the videos as well.  And my point is,
19    as the Court noted, we're in the final push towards
20    trial.  And so what I think an efficient use of
21    defense counsel and defense team time would be would
22    be to watch these videos, and arrange to make the
23    excerpts as we're watching them, that we feel might
24    be necessary for cross-examination of these
25    informants.  And that's not something that we can do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   in the U.S. Attorney's Office.

 2          THE COURT:  Well, let's say I say they

 3   should remain at the U.S. Attorney's Office rather

 4   than at the prison.  How would you, then, go about

 5   making your excerpts?  Telling the Government what

 6   you want excerpted, and them sending it to you?

 7          MS. JACKS:  I wouldn't want to do that,

 8   because I think that would reveal our strategy with

 9   respect to cross-examination.

10          I'm not asking, just so that it's clear,

11   that these videos go into the prison.  What I'm

12   asking is that these videos be released to the

13   various defense teams so that they can prepare their

14   cross-examination, as they deem appropriate, or their

15   examination of these informants during whatever

16   hearings this Court may hold on other issues such as

17   suppression.

18          THE COURT:  Well, did you give that some

19   thought, Mr. Castellano, of just making these

20   attorneys' eyes only, making a copy and sending it

21   just to counsel that want it?

22          MR. CASTELLANO:  May I have a moment, Your

23   Honor?

24          THE COURT:  You may.

25          MR. CASTELLANO:  Your Honor, the discussion

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   we're having -- let's say, for example, we put the
2   recordings on CDs or DVDs for the defense teams for
3   their eyes only.  The question then is whether any
4   redactions need to be made.  For example, at least
5   one of them has children in the room.  So would they
6   expect us to do that, or would they be willing to
7   redact any identities of children or anything else
8   for purposes of showing the video to anybody else?
9            THE COURT:  Would you be willing to redact
10  them?  If you're given a copy, redact it?
11           MS. JACKS:  Let me see if I understand.  I
12  think the issue is the identities of the children,
13  not the fact that there are children.  Because the
14  fact that there are children goes to the conduct of
15  the informants.
16           THE COURT:  If they don't want to get the
17  children in, if they just black out the face, would
18  that work for you?
19           MR. CASTELLANO:  We are talking about the
20  identities of the children, not the fact that
21  children are present.
22           THE COURT:  All right.
23           MS. JACKS:  I think that's reasonable.
24           THE COURT:  Could you do that?  All right.
25           MR. CASTELLANO:  And anything else that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   needs to be redacted.
 2            MS. JACKS:  I guess we would have to
 3   discuss that.  I haven't seen the videos, so I don't
 4   know --
 5            THE COURT:  What else are you thinking of?
 6            MR. CASTELLANO:  Well, sexual acts,
 7   including display of a penis, would be at least one
 8   of those.  So the question is what will be shown and
 9   to whom will it be shown?
10            THE COURT:  It seems to me you probably get
11   your full bang for the buck by just blacking out what
12   you're wanting there, right?  I mean -- and the jury
13   is going to know.  Do they need to see them having --
14   do we really need to see the penis?
15            MS. JACKS:  I haven't seen the videos.  And
16   I think it could possibly depend on the situation.
17   But I think what we could do is certainly try to use
18   our discretion.  And we're not here to offend
19   anybody.  We're here to show the degree of the
20   activity.  So I think we could use our discretion and
21   show them to the Government before we were to use
22   them.
23            THE COURT:  All right.  I'd be inclined to
24   go with the Government on that.  So I'll keep an open
25   mind, but if you can't work it out, bring it back up
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    with me.  But I think you made your point.  If
2    somebody wants to say what's there, you can have them
3    testify as to what's there.  But I'm not sure we need
4    to actually see that.
5            MS. JACKS:  I hear the Court's comments.
6            THE COURT:  Okay.  So you're going to do
7    the redactions.  The Government is going to give you
8    the videos, but you'll do your own redactions, be for
9    attorneys' eyes only.
10           MS. JACKS:  Okay.  And I'm understanding
11   that that's each defense team will be given access?
12           MR. CASTELLANO:  Yes, in the Molina case.
13           THE COURT:  Are these just Molina?  These
14   inmates just relevant to the Molina case?
15           MS. JACKS:  I don't think so.  But I think
16   that would a question for the Government to answer.
17           MS. SIRIGNANO:  Your Honor, I would object.
18   I believe that all defendants should get copies of
19   this.
20           THE COURT:  Let me, first of all, hear from
21   Mr. Castellano.  What would be the reason of limiting
22   it to the Molina homicide?
23           MR. CASTELLANO:  Well, this would be Giglio
24   as to those witnesses in the case, which currently is
25   the Molina murder trial.  And that would include

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Christopher Garcia.  He's part of that trial.  And if

2    they were called in another trial, then we would also

3    disclose that in the other case.

4            So, basically, when it becomes Giglio as to

5    any of those people being witnesses, we would

6    disclose that.

7            THE COURT:  Let me think this through.  We

8    a minute ago had a proposal on the table, that the

9    Government did not want, that would set a different

10   deadline for Giglio and Brady disclosures, because

11   it's doing this for everybody throughout.  I guess

12   I'm a little reluctant to now go back on this

13   particular production only making it available to the

14   Molina people.  So it seems to me that's

15   inconsistent.  I'd be inclined just to not start

16   picking and choosing.

17           MR. CASTELLANO:  We'll just disclose it to

18   everybody.  That's fine.  We don't need to argue.

19           THE COURT:  All right.  Anything else,

20   then, on that issue, Ms. Jacks?

21           MS. JACKS:  No.  That's taken care of.

22           THE COURT:  All right.

23           MS. JACKS:  If we can move to I, which --

24   this is a request -- if the Court may recall, there

25   were several Government cooperators who apparently

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                  e-mail: info@litsupport.com

1    performed some sort of reset on their tablets that

2    were provided to them pursuant to this Court --

3    pursuant to a court order -- and were able to access

4    the internet.  And this became a subject of

5    controversy earlier this year.  So at the time that

6    that happened, I think what we requested was we

7    wanted to know what informants manipulated their

8    tablets, what they did, and we wanted some sort of

9    history about whether they accessed the internet,

10   what they accessed, whether they accessed email, what

11   they accessed.

12          We haven't gotten anything as of this

13   point.  And I think originally the request from Ms.

14   Duncan was to have the tablets seized so that they

15   could be examined by experts for the defense to

16   determine that information for ourselves.

17          The Government's response is that they

18   received permission from some of the cooperators for

19   an inspection of their tablets, and is waiting for

20   the position of the remaining cooperators.

21          I have to say that the response blew my

22   mind.  They're waiting for permission from people who

23   violated this Court's order, abused the tablets and

24   accessed the internet, to get the tablet back?  It

25   seems to me that the tablet should have been seized

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1    when the person violated the court order.  I don't

2    understand why they got it back.

3            THE COURT:  Well, educate me a little bit

4    about what portion of the court order it violated.

5            MS. JACKS:  Well, I should pull the court

6    order out.  I don't have it before me.  But I thought

7    the tablets were to be used for viewing discovery.

8    And I think part of the court order was the

9    defendants were supposed to let their tablets be

10   examined to determine if there was contraband or if

11   they had somehow abused the tablets.  And it was my

12   understanding, and certainly it was explained to Mr.

13   Sanchez, that if he chose to abuse the tablet and it

14   was taken from him, that there is a chance he'd never

15   get it back.  And I think that's how we all

16   understood the deal with the tablets.

17           So I don't understand why Government

18   cooperators misused the tablets, accessed the

19   internet, they get them back before there is any sort

20   of examination made about what exactly they did.  And

21   now we're waiting their permission to see what

22   happened.

23           THE COURT:  Let me pull up the court order.

24   I think I handwrote this portion.  There was a

25   disagreement on how we were going to handle

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   government and security.  I guess given that -- to

2   the extent that these cooperators are defendants, and

3   I guess that's the definition of what we're using by

4   cooperator, it would seem to me that the same rules

5   apply.  They're still a defendant in this case.  They

6   may have pled, but I'm not sure that I can treat them

7   any differently than I can any other defendant.  So

8   let me look at what the court order said, and then

9   we'll figure out what --

10          MS. JACKS:  I think the way you treated the

11  defendants who are here was that their tablets were

12  submitted for examination to the United States

13  Marshal's Service, and returned to them once it was

14  confirmed that they hadn't abused the tablets.

15          Now, I don't know what happened with the

16  cooperators, since they did abuse the tablets, and

17  they got them back.

18          THE COURT:  Why don't we come back to this

19  one.  Let me print out that order and then let's take

20  a look at it and we'll go from there.

21          What else do you have, Ms. Jacks?

22          MS. JACKS:  I have, I think, two more.

23          J is the next one.  And I'm not the only

24  person -- I'm probably not the best person to be

25  arguing this request.  But this is a request for the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    access to the electronic surveillance devices that

 2    the Government provided to its cooperators so they

 3    could record jailhouse conversations with other

 4    inmates, including some of the defendants.

 5              And originally -- again, I think this came

 6    up at the hearing where Ms. Duncan made this

 7    request -- and I think it was originally represented

 8    that these electronic surveillance devices did not

 9    contain meta data.  Shortly after that hearing, I

10    think it was then the Government then changed their

11    position, and conceded that the devices, in fact, did

12    contain meta data.

13              But the United States continues to try to

14    keep the defense from accessing those devices and

15    examining the meta data, because they don't want --

16    they don't want the defendants to know what kind of

17    devices they are.

18              And I think, again, what we have -- and

19    this issue has been brought up by a variety of

20    motions.  I think it's addressed in Defendant Baca's

21    1264, their request number 9.  And I think it's also

22    the subject of some of the motions to suppress these

23    recorded conversations.  Because, if you listen to

24    the conversations, what you see is that the people,

25    the informants that are operating these electronic

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    surveillance devices are turning them on and off

2    during conversation as they see fit.  They're not

3    recording the entire conversation.  They're recording

4    bits and pieces that are then provided to the

5    Government.

6          What the analysis of the meta data on these

7    electronic surveillance devices would show is how

8    many times they were turned on and off; whether

9    things were deleted; whether things were edited.

10   That's the kind of information that's stored in the

11   device that needs to be examined by an expert in

12   order to make those determinations.

13         THE COURT:  Mr. Beck, I recall -- was it

14   you and I had this conversation at the hearing?

15         MR. BECK:  We did, Your Honor.

16         THE COURT:  And I think you at that time

17   didn't think that there was any meta data on there,

18   and so we decided there may not be an issue.  And you

19   were going to check it out.

20         MR. BECK:  Yes, that's right.  And we

21   checked it out.  I think we found out, either while

22   the hearing was still going on or later that week

23   that there was meta data.  I represented that to the

24   defense, and we disclosed the meta data on June 16.

25         THE COURT:  Oh, you disclosed the meta

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    data?

2            MS. JACKS:  What was disclosed is a report,

3    and it's a Government analysis of the recording

4    device.  It's my understanding -- and maybe someone

5    else who is more familiar with this issue can help me

6    out, but for the meta data to be disclosed, or for

7    the defense to make use of it in a meaningful way,

8    our expert needs to be able to examine the device.

9    We have reports of an examination conducted by the

10   FBI.  But that is not the same as the meta data, is

11   my understanding.

12           THE COURT:  Well, tell me what -- you know,

13   if you could get your hands on everything you wanted

14   on this, what is it that you're hoping it will tell

15   you?

16           MS. JACKS:  That the informants who were

17   trying to earn favors from the Government edited the

18   conversations so that they appeared to say things

19   that was not the true content of the conversation.

20           THE COURT:  Well, but are you going to be

21   able to tell from the meta data -- all it's going to

22   tell you is it was turned on and off during the

23   conversation?

24           MS. JACKS:  When it was turned on and off,

25   potentially for how long, whether segments of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

213

```
 1    conversation that were recorded were subsequently
 2    deleted before the device was downloaded by the
 3    Government.
 4              THE COURT:  Is the meta data that specific
 5    that it can tell you that it was turned off 13
 6    seconds in, stayed off five seconds, goes 13 more
 7    seconds, and then turned off five?  Is it going to be
 8    that specific?
 9              MS. JACKS:  It's my understanding that it
10    can be.  I don't know what the electronic
11    surveillance device is.  The Government won't tell
12    us.  But I certainly have seen experts produce that
13    kind of information from electronic recording
14    devices.
15              THE COURT:  Mr. Beck, are all the devices
16    the same?
17              MR. BECK:  Your Honor, I don't know.  And I
18    don't think that I could rightly tell you in open
19    court.  As we had this discussion in the summer, when
20    you ruled that you wouldn't allow the defendants to
21    inspect these devices -- which I think was proper --
22    I don't know about these devices.  We don't know
23    about these devices, because they are means and
24    methods that law enforcement uses in ongoing
25    investigations.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          So if we're going to get into this level of

2     depth, I'm not the right person.  I don't think

3     Ms. Jacks is the right person.  I think we're going

4     to have to call experts, and the FBI people from

5     Washington, D.C. fly down here and probably meet with

6     you in camera before we do this in open court.

7          So I think Your Honor's ruling there was

8     correct.  The FBI produced the meta data that was

9     asked for.  And frankly, I think that's where things

10    stand, unless we want to go down the road of bringing

11    in bigger guns to battle this out.

12          THE COURT:  I don't -- you can correct me

13    if I'm wrong, I don't think at the time that I left

14    the hearing I knew there was meta data on there.

15          MR. BECK:  I don't think --

16          THE COURT:  I think this round of briefing

17    is new to me.  And I think, quite frankly, we were

18    kicking the can down a little bit down the road.

19    Because if we found out there wasn't meta data, it

20    probably wasn't a big issue.  But now that there is

21    meta data, it's a little larger issue.

22          Here's what I would propose:  Check with

23    your people in Washington, see if you could live with

24    this.  If you can confirm that all the audio devices

25    are of one type, could you send a letter to one of

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   the counsel here -- and I'll let the defense counsel
 2   sort of pick who they think is the one that should
 3   work with the expert.  And then, if they have -- if
 4   they have the type of device -- and this would be for
 5   one attorney's eyes only and the expert, and would be
 6   subject to a confidentiality, if they knew that, can
 7   they then tell us if it's going to produce any
 8   reliable information?  In other words, if it's not
 9   going to be able to do what I'm saying it can do, or
10   suggesting it can do, that can tell you with
11   precision that there was a gap -- there was a
12   recording of 10 seconds or 10 minutes, and then there
13   was a gap of five minutes, and so we can look at a
14   transcript and we can say right here there was gap of
15   five minutes in between, then I guess I'm a little
16   bit hard pressed to think of how it could be useful
17   to the defendants.  If they have -- if they have that
18   information.  Then, if the meta data can be more
19   specific, then I guess it becomes a bigger issue.
20           MR. BECK:  I think I understand what Your
21   Honor is getting at.  And we certainly will see if we
22   can find a person to answer that question, and see if
23   they're willing to talk about that.  I think that's
24   probably as far as we could go with that, as I said,
25   without bringing in some other folks to help us out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Well, let's take it a step at a
 2      time.  I'm sensitive to the FBI's need to keep their
 3      techniques, things as confidential and possible.  But
 4      I'd like to find out if we're dealing with a real
 5      issue or a phantom issue.  I understand if it's a
 6      phantom issue, and if I can get that limited
 7      information into one counsel's hands and one expert's
 8      hands, and throw it under a confidentiality order,
 9      and they can then determine whether there is a bigger
10      issue here, then maybe we can just take it a step at
11      a time.
12              MR. BECK:  Sure.
13              THE COURT:  So I'm not denying it, but I'm
14      going to take it a step at a time.  I do think that I
15      do have to be careful here about disclosing
16      Government techniques.  This is the kind of thing
17      that has ramifications outside of this room.
18              MS. JACKS:  I think that makes sense.  And
19      I think we can work with that, Mr. Lowry?
20              MR. LOWRY:  May I be heard on this, Your
21      Honor?
22              THE COURT:  You may.
23              MR. LOWRY:  Because this overlaps with part
24      of our motion to compel.  The Court is wondering why
25      this is relevant, and I just want to put a quick fine
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   point on this.

 2           Your Honor, we believe one of the

 3   Government's key witnesses in this case will be Eric

 4   Duran.  In Eric Duran's first FBI 302 on February 19,

 5   2015, he put himself out as being at the epicenter of

 6   this so-called conspiracy to murder Gregg Marcantel.

 7   And over the course of the summer of 2015, he relayed

 8   to the FBI, that's documented in other 302s, that Mr.

 9   Baca was very eager and motivated to murder Gregg

10   Marcantel.  And that was based on, frankly, on other

11   chatter that other Government informants had put into

12   the ether in the New Mexico prison facility, when Mr.

13   Baca was not even present in the facilities.

14           The reason this is material and relevant to

15   Mr. Baca's case is because when he came back to the

16   Department of Corrections, October 22nd of 2015, the

17   Government had placed Eric Duran right in the cell

18   next to him.  And it was Eric Duran's prerogative and

19   mission to record Mr. Baca about this murder.  In the

20   very first recording Duran sets up with Mr. Baca, is

21   like, wouldn't it be a great idea to kill Gregg

22   Marcantel?  And the emphatic answer was no.  And it

23   was unequivocal.

24           So this whole idea that Mr. Baca had

25   concocted this plan to murder the Secretary of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Department of Corrections was a myth.  And what we

2    need to analyze the meta data take for is to

3    demonstrate quite clearly to this jury that after

4    being told that this was a bad idea, and one that he

5    wasn't motivated and engaged in and enthusiastic

6    about participating in, to demonstrate how long, and

7    the steps Mr. Duran had to take to convince Mr. Baca

8    to join this conspiracy.  And that's relevant and

9    material to his defense under the state defense of

10   entrapment.

11           So this is not a hypothetical issue.  This

12   is a very real issue for Mr. Baca.  And we need

13   access to this meta data, which is why Ms. Duncan

14   requested it back in May.

15           THE COURT:  Let's see if we can get you

16   information, so we can see whether you get the meta

17   data, it's going to tell you that.  If it's not, then

18   I probably am not going to force them to do any more.

19   But if I can put in your hands what kind of equipment

20   this is, so you can talk to your expert, then I'll

21   have a hard issue to decide at that point.

22           MR. LOWRY:  We have no problem with a

23   protective order, Your Honor, or limit it to a single

24   forensic expert to look at the material.  The goal

25   here is not to divulge, or you know, out FBI

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

```
 1   surveillance secrets.
 2              But on the flipside of that is this is
 3   relevant and material evidence to our defense.  And I
 4   believe, under Rule 16, we're entitled to that.
 5              THE COURT:  So you'd agree with me that if
 6   the meta data on this particular equipment doesn't do
 7   that for you, then it's not going to do a lot of good
 8   to start producing a lot of -- ordering the
 9   Government to do a lot more?
10              MR. LOWRY:  I wouldn't argue against that,
11   Your Honor.  I don't disagree with that.  I would
12   feel more comfortable to have our expert look at a
13   single device to make sure that that meta data isn't
14   there.  And pardon me for being paranoid, but you
15   know, I prefer to have our own independent set of
16   eyes on the device to see what is and isn't there.
17   But I don't disagree with you.  If there is nothing
18   tangible in terms of dates, times, you know, if we
19   can't assess time gaps, and you know, the lengths
20   of -- periods of time between recordings, yeah, I
21   think the issue of relevancy would fade to a certain
22   extent.  But I would prefer to have our own
23   independent expert look at that so we could have a
24   firm, solid assessment from a defense perspective
25   about what's available and what's not, and how we can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    effectively use that at trial.

2              THE COURT:  All right.  Thank you, Mr.

3    Lowry.

4              Ms. Sirignano?

5              MS. SIRIGNANO:  Your Honor, thank you.

6              I just wanted to point out that I have some

7    overlap as well in my Document 1270, my sealed Rule

8    16 motion, page 12, paragraph 7.  And the Court did

9    order defense and defense expert access to

10   Mr. Garcia's electronic materials and CART reports.

11   But the Government is not allowing our expert, that

12   the Court's approved, to look at Mr. Garcia's

13   electronic devices.  Part of that request also

14   includes the cellular telephones of Mr. Duran, Marvin

15   Montoya, and a few other Government cooperating

16   witnesses at this point.

17             And as Mr. Lowry stated, for the exact same

18   reason about the conspiracy involving his client,

19   it's the same cellphone that implicates my client,

20   Your Honor.  So we would request also that our expert

21   be given access, if there is information, to review

22   it, to make sure that there is nothing there that

23   could help our defense, or that there is something

24   there that could help our defense.

25             THE COURT:  Is there something different

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  than the sort of incremental step I'm taking that

2  would be different for Mr. Garcia?

3          MS. SIRIGNANO:  Well, Your Honor, I just am

4  receiving conflicting information.  Because in

5  Mr. Garcia's drug case we were told by the Warden of

6  PNM, that Eric Duran's cellphone was not taken away

7  from him by the FBI or the DOC until some later time

8  which the warden could not provide when he was on the

9  stand, and that the cellphone was taken during a

10  sweep of the facility.

11          So I don't even have confirmation yet from

12  the Government whether or not that cellphone actually

13  exists to do an independent examination by our

14  defense experts to see if that data is there.

15          So that would be the first step, Your

16  Honor.  And then, if there is meta data or any other

17  cellphone data, in terms of deleting text messages --

18  there were thousands of text messages -- we presume

19  that some were deleted -- between the informant and

20  Agent Acee.  And other on and off stops and starts of

21  the recording.  It's something that we'd like to have

22  our expert review independently, Your Honor.

23          THE COURT:  All right.  Let's do this:

24  We've kind of got two different issues on the table.

25          Let's come back and try to finalize what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    we're doing on the laptops or the tablets first in
 2    the morning.  I think I've got bring it to an end
 3    here for everybody to get out of here.  So that will
 4    be the first issue.
 5              If you can report anything, Mr. Beck, that
 6    would be great.  If you can't, we may just have to
 7    confirm this is what we're going to do.
 8              And then we'll take up the telephone with
 9    Mr. Garcia.  So that will be the second issue.  So be
10    thinking about that, Mr. Beck, as to where we are on
11    the phone.
12              Then, Ms. Jacks, I'll come back to you,
13    because it sounds like you've got one or two more
14    issues on your motion.
15              MS. JACKS:  Right.
16              THE COURT:  All right.  I appreciate
17    everybody's hard work.  Have a good evening.  We'll
18    start again at 9:00.  And y'all have a good evening.
19    See y'all tomorrow.
20              (The Court stood in recess.)
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1              C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on November 16, 2017.

15

16

17

18        _____
                    Jennifer Bean, FAPR, RMR-RDR-CCR
19                  Certified Realtime Reporter
                    United States Court Reporter
20                  NM CCR #94
                    333 Lomas, Northwest
21                  Albuquerque, New Mexico 87102
                    Phone:   (505) 348-2283
22                  Fax:     (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com