**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

                                        **Plaintiff,**

        **vs.**                                        **No. 2:15-cr-04268-JB**

**ANGEL DELEON, et al.,**

                                        **Defendants.**


**MOTION IN LIMINE TO EXCLUDE STATEMENT OF COOPERATING**
**GOVERNMENT WITNESSES**

        Defendant Rudy Perez, by counsel, Ryan J. Villa and Justine Fox-Young, joined in this

Motion by all Defendants, hereby moves the Court, pursuant to Rule 802 and Rule 403 of the

Federal Rules of Evidence, and *Williamson v. United States*, 512 U.S. 594 (1994) for an order

excluding hearsay statements offered by Timothy Martinez and Jerry Montoya implicating Mr.

Rudy Perez in the conspiracy to murder and murder of Javier Molina on March 7, 2014.

**BACKGROUND**

        The factual and procedural background of this case generally is set forth in detail in this

Court's Memorandum Opinion and Order, pp. 3-13, filed June 30, 2017 [Doc. 1204].  This motion

concerns hearsay statements offered by Mr. Perez's co-defendants, turned government witnesses,

Timothy Martinez and Jerry Montoya.  According recent testimony at the James hearing conducted

November 27-29, 2017, it is believed Timothy Martinez will testify that co-defendant Daniel

Sanchez told him that "Sanchez had obtained [the shanks] from 'fat ass' the nickname Sanchez

used for Rudy Perez." Martinez is expected to testify that Sanchez told him that Mr. Perez gave

Sanchez pieces of metal from his walker to be made into shanks, because according to Martinez,

Sanchez said "What else is fat ass gonna do?" A supposed reference to Mr. Perez's physical

limitations due to his size and heath conditions. Jerry Montoya is expected to testify that Mario Rodriguez provided him a shank to use to kill Javier Molina.  Montoya is expected to testify that when Rodriguez did so, he inexplicably volunteered that the shank came from Mr. Perez's walker.

This information was testified to by Agent Acee during the recent James hearing that took place November 27 through November 30, 2017.  The James hearing has yet to be concluded.  A transcript has not yet been prepared.  Mr. Perez submits that these statements as they pertain to him do not qualify as statements of a co-conspirator because they do not meet the second and third elements required for such statements.  To admit out-of-court statements by co-conspirators as non-hearsay pursuant to rule 801(d)(2)(E), the United States must demonstrate by a preponderance of the evidence that: (i) a conspiracy existed; (ii) the declarant and the defendant were members of that conspiracy; and (iii) the statements that the United States seeks to admit were made during the course and in furtherance of the conspiracy.  *See United States v. Sinclair*, 109 F.3d 1527, 1533 (10th Cir. 1997); *United States v. Johnson*, 911 F.2d 1394, 1403 (10th Cir. 1990).  Mr. Perez submits the United States cannot establish that he was a member of the conspiracy to kill Javier Molina or that these statements by Daniel Sanchez or Mario Rodriguez, the declarants, were in furtherance of the conspiracy.

The Tenth Circuit has also held that statements are not in furtherance of the conspiracy if they are "mere narratives," that is "statements relating to past events, even those connected with the operation of the conspiracy, where the statement serves no immediate or future conspiratorial purpose.  *See United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir.), *cert. denied*, 488 U.S. 923 (1988); *United States v. Roberts*, 14 F.3d 502, 514-515 (10th Cir.1993). *See also United States v. Foster*, 711 F.2d 871, 880 (9th Cir.1983), *cert. denied*, 465 U.S. 1103 (1984) (noting that "mere narrative declarations" made without the intent to induce assistance for the conspiracy do not fall

within the "strict requirements" of Rule 801); *United States v. Darwich*, 337 F.3d 645, 657-658 (6th Cir.2003) (statements by the defendant's nephews about the amount of marijuana they had packaged the previous evening were casual conversation and not made "in furtherance" of the conspiracy); *United States v. Cornett*, 195 F.3d 776, 782-784 (5th Cir.1999) (finding prejudicial error in admission of statements implicating defendant made regarding "such diverse issues as the bowling prowess of certain friends and relatives, the appearance of some of the patrons at the bowling alley, the merits of certain designer outfits and the respective talents of certain exotic dancers"); *United States v. Mitchell*, 31 F.3d 628, 632 (8th Cir.1994) (holding that a statement that "simply informs a listener" of speaker's criminal acts does not satisfy the in-furtherance requirement); *United States v. Urbanik*, 801 F.2d 692, 698-99 (4th Cir.1986) (finding prejudicial error in admission of statement identifying defendant as a marijuana connection, which was "merely a casual aside"). "A declarant's statement explaining the current status of the conspiracy is 'in furtherance' of that conspiracy only if the addressee is also a co-conspirator." *See United States v. Weaver*, 507 F.3d 178, 185–186 (3d Cir. 2007).

Mr. Perez will pursue this argument at the conclusion of the James hearing.  This motion seeks a ruling by the Court that the out-of-court statements of Mr. Sanchez and Mr. Rodriguez that it is expected Mr. Martinez and Mr. Montoya will testify about do not meet any other exception and constitute inadmissible hearsay as to Mr. Perez.  Therefore, these statements must be excluded at trial.  Although the statement of Mr. Sanchez may be admissible as against him as a statement of a party opponent, given the low probative value of the statement, it is outweighed by the danger of unfair prejudice to Mr. Perez and Defendants Baca, Garcia and Herrera, and should be excluded under Rule 403.

**ARGUMENT**

The United States may seek to admit the statement of Mr. Sanchez through the testimony of Mr. Martinez, and the statement of Mr. Rodriguez, through the testimony of Mr. Montoya, as statements against penal interest. *See* Fed.R.Evid 804(b)(3). Hearsay is admissible under Rule 804(b)(3) even if the declarant is unavailable as a witness. Fed.R.Evid. 804(b). Mr. Sanchez is a co-defendant and cannot be compelled to testify because he has the privilege against self-incrimination. Thus, he is unavailable. *See* Rule 804(a)(1). Mr. Rodriguez is expected to testify, as he is now cooperating, and thus he is not unavailable. Accordingly, the testimony of Mr. Montoya about what Mr. Rodriguez told him must be excluded.

As to Mr. Sanchez's statements, they do not meet the penal interest definition as interpreted by our Supreme Court. Rule 804(b)(3) defines a statement against penal interest as: "A statement which… at the time of its making… so far tended to subject the declarant to… criminal liability… that reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Id*. "Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512 U.S. 594 (1994). The circumstantial guarantee of reliability for this hearsay exception is based on the assumption that people will not make statements implicating themselves criminally unless the statements they are making are actually true. *Id.*

The Supreme Court jurisprudence maintains that "the most faithful reading of Rule 804(b)(3) is that it does not allow for non-self-inculpatory statements, even if they are made in a broader narrative that is generally self-inculpatory." *Williamson*, 512 U.S. at 600. And "whether a statement is self-inculpatory … can only be determined by view it in context." *Id*. at 603. Thus, for statement to be admissible under Rule 804(b)(3) the statement must be *sufficiently* against the

4

declarant's interests. *Smalls*, 605 F.3d 765, 782 (10th Cir. 2010).   To determine whether a statement is sufficiently against the declarant's interest the court must consider the "contextual wording of the statement itself" along with "the circumstances under which it was made." *Id*.

In *Williamson*, the Supreme Court construed the meaning of "statement" within Rule 804(b)(3) to "cover only those declarations or remarks within the confession that are individually self-inculpatory" thus rejecting the view that "an entire narrative, including non-self-inculpatory parts may be admissible if is in the aggregate self-inculpatory." 512 U.S. at 601, 114 S. Ct. 2431. Although the Court noted that conspiracy cases may provide the best example of a "truly self-inculpatory" statement admissible under Rule 804(b)(3) against third persons being tried as co-conspirators, the Court also warned that the "district court may not just assume for the purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of fuller confession and [that] this is especially true when the statement implicates someone else." *Id*. at 600-03. "Whether a statement is in fact against interest must be determine from the circumstances of each case." *Id*. at 601. 114 S. Ct. 2436 (quoting Fed.R.Evid. 804(b)(3) committee note). For the district court to determine "whether a statement was sufficiently against the declarant's penal interest, as the Rule objectively defines that phrase" the court must consider the contextual wording of the statement and the surrounding circumstances under which it was made. *Smalls*, 605 at 782.

The statements by declarant Daniel Sanchez to Timothy Martinez allegedly implicating Mr. Perez are not sufficiently against Mr. Sanchez's interest as to be admissible at trial under Fed.R.Evid. 804(b)(3).  The statements by Mr. Sanchez are not like those at issue in *United States v. Smalls*.  In *Smalls,* the Tenth Circuit reversed and remanded the district court's pretrial ruling excluding the audio recording of Small's accomplice, Cook. 605 F.3d.786. The FBI was investigating the murder of an inmate at the county detention center when Cook began telling his

cellmate he was partly responsibility for the killing. *Id*. at 768. Unbeknownst to the Cook, his cellmate was assisting in the murder investigation and wearing a recording device provided by the FBI. *Id*. at 768. Cook confessed to his role in the murder and implicated Smalls and a third individual. *Id*. Not only was the confession captured with the recording device but prison officials who were privy to the plan to record Cook's confession surreptitiously observed Cook and his cellmate talking and described their encounter as an amiable conversation between friends. *Id*. at 772. Based on the recorded confession, Cook, Smalls, and the third individual, were indicted in connection with the murder. *Id*. at 767.

Smalls and Cook were tried separately. *Id*. Prior to Small's trial, the Government sought an order admitting the recorded jailhouse confession against Smalls as "nontestimonial hearsay offered to prove the truth of the matter asserted but admissible under Fed.R.Evid. 804(b)(3) as a statement against Cook's interest." *Smalls,* 605 F.3d.at 772. The district court denied the motion. *Id*. at 773. On appeal, the Tenth Circuit remanded, holding that the district court abused its discretion by excluding the confession. *Id*. at 767. The circuit court explained that the threshold question regarding the admissibility of the jailhouse confession at Small's trial was whether the statements were sufficiently against Cook's interest. *Id*. at 782. To determine whether the statements were sufficiently against Cook's interest, the court looked to the "contextual wording of the statement itself" and the "circumstances under which it was made." *Id*. The court explained that "comments as to how precisely … the murder occurred are undoubtedly against Cook's penal interest and, coupled with the circumstances of their making, trustworthy to the extent required by Rule 804(b)(3). And that makes them *sufficiently* against Cook's penal interests" thus "rendering them admissible under Rule 804(b)(3)." *Id*. at 785-86 (emphasis in the original).

Here, Mr. Sanchez's statements about the source of the shanks being from Mr. Perez's walker are not sufficiently against his interest to meet the hearsay exception.  The source of the shanks had no effect on whether and how the murder of Molina was going to occur.  Although the case at hand and *Smalls* share many factually similarities, the trustworthiness of statements at issue, however, could not be more distinct. In *Smalls*, Cook's jailhouse confession was not only recorded but also observed by prison officials. By contrast, in this case there is no recording of Daniel Sanchez's supposed statement to Timothy Martinez and no independent observation of the encounter to verify that it even took place. Here, the only evidence that Daniel Sanchez ever made these statements is from Timothy Martinez – the man who confessed to choking-out his "best friend" so he could not defend himself as he was being stabbed to death –

and who has given multiple and contradicting accounts of the Molina murder.

Although the statements are not admissible against Mr. Perez or co-Defendants Baca, Garica, and Herrera under the hearsay rules, they may be admissible against Mr. Sanchez as a statement of a party opponent.  However, given the minimal probative value, the Court should exclude them under Rule 403.  The district court has "considerable discretion in performing the Rule 403 balancing test." *Tan*, 254 F.3d at 1211 (10th Cir.). In this case, the trustworthiness of Mr. Martinez's testimony is suspect as discussed above.  Further, the danger of unfair prejudice to Mr. Perez in admitting the statements substantially outweighs any probative value the statements may have against Mr. Sanchez.  Despite an appropriate limiting instruction, the jury may use the statement against Mr. Perez, or his other co-Defendants as substantive evidence of guilt.

It is assumed the Government opposes this motion as it presented these statements at the James hearing indicating its intent to introduce them as evidence at trial.

Respectfully submitted,
THE LAW OFFICE OF RYAN J. VILLA

*/s/ Ryan J. Villa*
Ryan J. Villa
2501 Rio Grande Blvd. NW Ste. A
Albuquerque, NM 87104
(505) 639-5709
(505) 433-5812 facsimile
ryan@rjvlawfirm.com

AND

JUSTINE FOX-YOUNG, P.C.

*/s/ Justine Fox-Young*
Justine Fox-Young
1903 Wyoming Blvd. NE, Suite B
Albuquerque, NM 87112
(505) 796-8268
justine@foxyounglaw.com

*Attorneys for Rudy Perez*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2017, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/*Ryan J. Villa*
RYAN J. VILLA