IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO.   15-4268 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| ANGEL DELEON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**UNITED STATES' MOTION *IN LIMINE* TO PRECLUDE SOLICITING TESTIMONY ABOUT SENSITIVE GOVERNMENT RECORDING DEVICES OR PROGRAMS**

At trial, the United States intends to introduce evidence derived from audio recordings between the Defendants and FBI confidential human sources (CHSs). The United States asserts the law enforcement sensitive qualified evidentiary privilege, and respectfully requests that this Court preclude the defense from cross-examining or in any other manner soliciting testimony in the presence of the jury the following information: (1) technical specifications of the audio recording devices, to include methods of installation, concealment and location of devices; and (2) training of government witnesses that would reveal sensitive government programs or sources and methods. The law supports the exclusion of this type of evidence to protect national security interests.

**BACKGROUND**

The United States began the investigation into the SNM prison gang that led to this prosecution on or about March of 2015. Because the SNM prison gang operates primarily within the confines of the prison, and because of the difficult nature of penetrating this criminal organization, the FBI used CHSs to record incriminating conversations with the Defendants. In that process, the FBI provided the CHSs with covert electronic audio recording devices. The

United States provided to Defendants the information from those recording devices, including the recordings and metadata.

The United States intends to play these recordings at trial during the examinations of the CHSs who recorded the Defendants' statements. These CHSs will not, however, testify about the technical specifications of the recording devices, or the concealment and location of such devices.

## BACKGROUND ON THE LAW ENFORCEMENT SENSITIVE QUALIFIED EVIDENTIARY PRIVILEGE

The Supreme Court in *Roviaro v. United States*, recognized an "informer's privilege" that protects the identity of government informants and allows the government to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.  The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.  *Roviaro*, 353 U.S. 53, 59 (1957).

Courts have since extended the qualified privilege in *Roviaro* to cover other investigative techniques, including traditional and electronic surveillance. For example, in *United States v. Green*, the D.C. Circuit upheld the privilege over the defendant's request to learn the location of an observation post used in a drug investigation:

> Just as the disclosure of an informer's identity may destroy his future usefulness in criminal investigations, the identification of a hidden observation post will likely destroy the future value of that location for police surveillance. The revelation of a surveillance location might also threaten the safety of police officers using the observation post, or lead to adversity for cooperative owners or occupants of the building. Finally, the assurance of nondisclosure of a surveillance location may be necessary to encourage property owners or occupants to allow the police to make such use of their property.

*United States v. Green*, 670 F.2d 1148, 1155-1158 (D.C. Cir. 1981).

2

Courts have held that given "the public interest in effective law enforcement," the FBI may assert a qualified privilege to protect sensitive law enforcement techniques and procedures from disclosure. *Roviaro*, 353 U.S. at 59. *See also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 62-64 (1st Cir. 2007). With respect to electronic surveillance equipment, the 11th Circuit has held that the privilege applies, if information about the equipment is provided to defendants and the public, and it will "educate criminals regarding how to protect themselves against police surveillance. Electronic surveillance is an important tool of law enforcement, and its effectiveness should not be unnecessarily compromised. Disclosure of such information will also educate persons on how to employ such techniques themselves, in violation of Title III." *United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir.), *cert. denied*, 479 U.S. 854 (1986).

Even where some aspects of a protected technique are known to the public, "there is no principle . . . that requires an agency to release all details concerning these and similar techniques simply because some aspects of them are known to the public." *Barnard v. U.S. Dep't of Homeland Security*, 598 F.Supp.2d 1, 23 (D.D.C. 2009). *See also Piper v. Dep't of Justice*, 294 F.Supp.2d 16, 31 (D.D.C. 2003) (in FOIA case, court accepted arguments that disclosure of the identity of an electronic device used for monitoring purposes would reduce its effectiveness and allow for individuals being investigated by the FBI to take countermeasures to circumvent the technique).

The law enforcement sensitive evidentiary privilege is "grounded in well-established doctrine and is widely recognized by the federal courts." *In re The City of New York*, 607 F.3d 923, 941 n. 18 (2d Cir. 2010). The privilege is designed, *inter alia*, to prevent disclosure of law enforcement techniques and procedures that once revealed, could risk future circumvention of the law or compromise of the technique. *See generally, id*. at 944. *See also United States v.*

*Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (stating that the "law enforcement investigative privilege is based primarily on the harm to law enforcement efforts which might arise from public disclosure of investigatory files") (internal quotation marks and ellipsis omitted); *Tuite v. Henry*, 181 F.R.D. 175, 176-77 (D.D.C. July 31, 1998) (unpublished), *aff'd,* 203 F.3d 53 (D.C. Cir. 1999) ("The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. [It] serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations."); *United States v. Van Horn*, 789 F.2d 1492, 1507-1508 (11th Cir.), *cert. denied*, 479 U.S. 854 (1986) (finding the existence of a qualified government privilege not to disclose sensitive investigative techniques); *Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997); *In re Dep't of Investigation*, 856 F.2d 481, 483-84 (2d Cir. 1988) (stating that the law enforcement privilege exists and prevents the "disclosure of law enforcement techniques and procedures, [preserves] the confidentiality of sources, [protects] witnesses and law enforcement personnel, [safeguards] the privacy of individuals involved in an investigation, and otherwise [prevents] interference with an investigation"); *United States v. Harley*, 682 F.2d 1018, 1020-21 (D.C. Cir. 1982); *United States v. Green*, 670 F.2d 1148 (D.C. Cir. 1981).

Technical specifications to include the installation, concealment and location of audio recording devices installed in the defendant's apartment are covered by the "law enforcement sensitive" qualified evidentiary privilege. *See In re U.S. Dep't of Homeland Sec.,* 459 F.3d 565, 569-71 (5th Cir. 2006) (finding that "in today's times the compelled production of government documents could impact highly sensitive matters relating to national security. Therefore, the

reasons for recognizing the law enforcement privilege are even more compelling now than when [prior cases in the 5th Circuit] were decided."); *Tuite v. Henry*, 181 F.D.R. 175, 176-77 (D.D.C. July 31, 1998) (unpublished), *aff'd,* 203 F.3d 53 (D.C. Cir. 1999).

In *United States v. Van Horn*, the Eleventh Circuit specifically recognized that the privilege applies to electronic surveillance devices and upheld the privilege over the defendant's request to learn the type and placement of microphones in a co-defendant's office. *See* 789 F.2d 1492, 1507-08 (11th Cir. 1986).   As referred to above, the law enforcement privilege prevents disclosure, preserves the confidentiality of sources, protects law enforcement, maintains the privacy of individuals, and prevents interference with an investigation." *In re Dep't of Investigation*, 856 F.2d 481, 483-84 (2d Cir. 1988);  *United States v. Winner*, 641 F.2d 825, 831 (10th Cir.1981) (stating the "law enforcement investigative privilege is based primarily on the harm to law enforcement efforts which might arise from public disclosure of investigatory files") (internal quotation marks and ellipsis omitted); *see also United States v. Harley*, 682 F.2d 1018, 1020-21 (D.C. Cir. 1982); *United States v. Green*, 670 F.2d 1148 (D.C.Cir. 1981).

## **APPLICATION OF THE LAW ENFORCEMENT SENSITIVE QUALIFIED EVIDENTIARY PRIVILEGE**

The law enforcement privilege is a qualified, not absolute privilege, and therefore, there are circumstances in which information subject to the privilege must nevertheless be disclosed. *In re The City of New York*, 607 F.3d at 940.  The Second Circuit has analyzed, in depth, the actual procedure that should be followed by a court in determining whether the privilege bars disclosure. *Id*. at 948-49.

As a threshold matter, the party asserting the law enforcement privilege bears the burden of demonstrating that the material the government seeks to protect is the type of material that the

law enforcement privilege is intended to protect – in this case, information pertaining to law enforcement techniques and procedures, as well as information that would seriously impair the ability of a law enforcement agency to conduct future investigations. *Id*. at 948.

Once the party asserting the privilege successfully shows that the law enforcement privilege applies, "there ought to be a pretty strong presumption against lifting the privilege." *Id*. at 945 (quoting *Dellwood Farms v. Cargill, Inc.,* 128 F.3d 1122, 1125 (7th Cir. 1997)). The court must balance the public interest in non-disclosure against the need of a particular litigant for access to the privileged information. *Id.* at 948, (*quoting In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988) (*see also Dellwood Farms*, 128 F.3d at 1125) (holding that the actual determination of the existence of the law enforcement sensitive privilege is a "particularistic and judgmental task" that involves balancing the "need of the litigant who is seeking privileged investigative materials . . . against the harm to the government if the privilege is lifted. . . .")) To rebut the presumption against lifting the privilege, the party seeking disclosure must show (1) that its request is "non-frivolous and brought in good faith," (2) that "the information sought is [not] available through other discovery or from other sources," and (3) that there is a "compelling need" for the information relevant to the party's case. *In re City of New York,* 607 F.3d at 948, *quoting Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F. 2d 1336, 1343 (D.C. Cir. 1984). (Other relevant criteria courts have used in determining whether the party seeking disclosure has rebutted the privilege with respect to investigative equipment, often called the *Frankenhauser* criteria, includes: whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; whether the investigation has been completed; whether the information sought is available through other discovery or from other sources; and the importance of the

information sought to the plaintiff's case. *See Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973), *Tuite v. Henry*, 181 F.R.D. 175 (D.D.C. 1998), *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988)).

Even if the party seeking disclosure successfully rebuts (by a showing of, among other things, a "compelling need"), the court must then weigh the public interest in non-disclosure against the need of the litigant for access to the privileged information before ultimately deciding whether disclosure is required. *In re City of New York*, 607 F.3d at 945.

To assess both the applicability of the privilege and the need for the materials, the court must ordinarily review the materials in question or hold an evidentiary hearing in chambers. Frequently, because filing documents under seal may inadequately protect particularly sensitive information, the court may, in the exercise of its informed discretion and on the basis of the circumstances presented, require that the party possessing the materials appear *ex parte* in chambers to submit the materials for in camera review by the judge. *Id.* at 948-49. (An appropriately general docket entry memorializing any *ex parte* proceedings can be entered in the public records of the district court so long as it does not compromise the interests of the party holding the confidential information, or the public. *Id.* at 949 n. 25); *In re U.S. Department of Homeland Security*, 459 F.3d at 571 (instructing the district court to review the information for which the law enforcement sensitive privilege is being asserted in camera to evaluate whether the privilege applies.)

If the court determines that the law enforcement privilege is not sufficient to protect disclosure of the materials at issue, the materials must be disclosed. *In re The City of New York*, 607 F.3d at 949. However, to minimize the effects of disclosure, the court can restrict the manner in which the documents are provided through the issuance of a protective order. *See*

7

Fed. R. Civ. P. 26(c)(1)(G).   The Second Circuit suggested that where release is directed, the documents should be available only on an "attorneys' eyes only" basis or requiring that the documents-and other submissions that reference them-be filed under seal.  *In re The City of New York*, 607 F.3d at 949.

The court will essentially consider the defendant's "need [for] the evidence to conduct his defense and [whether] there are . . . adequate alternative means of getting at the same point. The degree of the handicap [to the defendant] must then be weighed by the trial judge against the policies underlying the privilege." *United States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982); *see also United States v. Cintolo*, 818 F.2d 980, 1002 (1st Cir. 1987) (reviewing "whether the [defendant] demonstrate[s] an authentic 'necessity,' given the circumstances, to overbear the qualified privilege"); *United States v. Foster*, 986 F.2d 541, 543-45 (D.C. Cir. 1993) (balancing defendant's need for information against importance of government's interest in avoiding disclosure).

## **ARGUMENT**

The material in this case that the United States is seeking to protect is of the type that the law enforcement privilege envisioned -- information pertaining to law enforcement techniques and procedures, as well as information that would seriously impair the ability of a law enforcement agency to conduct future investigations.

The recordings exist. And the Defendants challenged their admissibility through motions to suppress and other pretrial litigation, which is the proper avenue to do so. *See* Fed. R. Crim. P. 12(b)(3)(C) and (d) ("The court must decide every pretrial motion"); Fed. R. Evid. 104(a) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court"). Once properly authenticated, therefore, the recordings are admissible.

At that point, the only question is what weight the jury should give to the evidence. The technical specifications of the audio recording devices is not probative of the weight that the jury should give to recordings; the recordings exist in the form and quality that they do. So too, the precise concealments or locations of the audio recording devices is not probative of the weight that the jury should give to the recordings; an incriminating admission is an incriminating admission regardless where the recording device was concealed. Finally, for the same reason, the sensitive training given to the CHSs is not probative of the weight that the jury should give to the recordings.

Granted, there is probative value in eliciting certain information from CHS-witnesses that may be used to impeach their testimony, and help frame the weight that the jury may give to the evidence. The United States is not asking the Court to prohibit Defendants from eliciting this relevant and admissible testimony. For example, certainly it is probative of the weight the jury should give to the recordings to ask the CHS-witness whether the CHS had the ability to turn on and off the audio recording devices. And, if so, to ask whether the CHS did turn on and off the devices. The United States does not object to the Defendants asking these questions. But, if the CHS-witness could turn on and off the device, it is not probative of the weight of the evidence to ask the CHS-witness *how* the CHS may have turned on or off the devices. But beyond questions about the operation of the the audio recording devices, the specifications of, concealment of, or their training on how to operate the audio recording devices is not probative of the weight the jury should give to the evidence. The specifications of, concealment of, or their training on how to operate the audio recording devices, likewise, does not make more or less likely any fact of consequence that the jury will have to consider in determining the action. *See* Fed. R. Evid. 401. The Court should therefore exclude any such evidence as irrelevant. *See id.*; Fed. R. Evid. 402.

Beyond the irrelevant nature of such evidence or testimony, disclosing the precise concealments and locations of the audio recording devices and the specifications of such devices unnecessarily compromises the sources and methods used and the future deployment of these investigative tools.  For example, with specific knowledge of the technique used or the concealments, a criminal defendant, or other bad actors observing the trial, could defeat the purpose of the recording system.

The same is true if the Court were to allow the United States' CHS witnesses to be forced to testify about sensitive training that does not relate to their testimony. Testimony related to sensitive training programs could lead to disclosure of sensitive law enforcement programs or even classified material.

Disclosure of methods used by the FBI to install or secret these audio recording devices could also cause unnecessary harm to future investigations where similar techniques may be used.  The public's knowledge of such tradecraft and personnel could enable individuals to employ measures to evade such law enforcement actions.

These possibilities present an unacceptable risk, and squarely demonstrate how disclosure of the information discussed herein "would be contrary to the public interest in the effective functioning of law enforcement," and it would compromise "the integrity of an enforcement technique" used, which is the hallmark of the evidentiary privilege.  *Henry*, 181 F.R.D. at 176-77. Any compromise of the law enforcement sensitive information discussed herein will have a detrimental impact on the national security of the United States.

Moreover, the public interest in nondisclosure significantly outweighs defendant's need for the information at trial. The FBI has always asserted that its sources and methods, to include electronic surveillance capabilities and equipment are law-enforcement sensitive.  In addition,

FBI policy dictates that the devices themselves are not to be compromised through court proceedings.  The probative value of any evidence elicited by the defense concerning technical specifications of audio recording devices, specific training of government witnesses on sources and methods, tradecraft of entering and exiting defendant's residences during physical searches or installation of audio devices, and the identity and role of other non-testifying witnesses during collection activities, in light of the security interests in this case, is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and wasting time. *See* Fed. R. Evid. 403.

Furthermore, any contention that the collected evidence was obtained illegally will be resolved by the Court when it decides other pending related motions.

If the court requires further information or explanation on any matter contained within this motion, the government requests that the court hold an *ex parte* hearing so that the government may have the opportunity to provide further explanation regarding sensitive and/or classified matters.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court instruct the defense and any defense witnesses not to mention, refer to, interrogate concerning, or attempt to convey to the jury in any manner, either directly or indirectly, any of the matters set out in this motion without first obtaining permission from the Court outside the presence and hearing of the jury.  The United States further requests the Court to instruct the defense to warn and caution each and every one of the defense witnesses to follow strictly these instructions.

Respectfully submitted,

JAMES D. TIERNEY
Acting United States Attorney

***Electronically filed on 12/1/17***
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
200 N Church St.
Las Cruces, NM  88001
(575) 522-2304

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

/s/
MATTHEW M. BECK
Assistant United States Attorney

12