1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3     UNITED STATES OF AMERICA,

4          Plaintiff,

5          VS.                    CR. NO. 15-4268 JB

6     ANGEL DELEON, et al.,

7          Defendants.

8                      VOLUME 1

9          Transcript of Motion to Suppress Proceedings
      before The Honorable James O. Browning, United States
10    District Judge, Las Cruces, Dona County, New Mexico,
      commencing on December 11, 2017.

11

12    For the Government:  Mr. Randy Castellano; Mr.
      Matthew Beck
13
      For the Defendants:  Mr. Brock Benjamin; Ms. Cori
14    Harbour-Valdez; Mr. Robert Cooper; Mr. Jeff Lahann;
      Mr. John Granberg; Mr. Scott Davidson; Ms. Amy Jacks;
15    Mr. Richard Jewkes; Ms. Amy Sirignano; Mr.
      Christopher Adams; Mr. Marc Lowry; Ms. Theresa
16    Duncan; Ms. Carey Bhalla; Mr. William Maynard; Mr.
      Ryan Villa; Mr. Donovan Roberts; Ms. Lisa Torraco;
17    Ms. Angela Arellanes; Mr. Samuel Winder

18
      For the Defendants (Via telephone):  Mr. James
19    Castle; Ms. Fox-Young

20

21

22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Let's go on the
2     record.  Does anybody know anything about Angela
3     Arellanes?  Maybe that's her coming in.
4              There you are.  I was just asking about
5     you.
6              All right.  So it looks like everybody has
7     got an attorney.
8              And, Ms. Sirignano, I think you have your
9     expert, Tim Bryan, here today?
10             MS. SIRIGNANO:  Yes, Your Honor.  Good
11    afternoon.  This is Mr. Bryan here.
12             THE COURT:  All right.  And Ms. Fox-Young,
13    are you on the phone?
14             MS. FOX-YOUNG:  I am, Your Honor.  Good
15    afternoon.
16             THE COURT:  And you'll be joining us
17    shortly?
18             MS. FOX-YOUNG:  Yes.
19             THE COURT:  All right.  And you also have
20    Michelle Anderson coming a little later today?
21             MR. VILLA:  She's going to join me, Your
22    Honor.  Rochelle Anderson.
23             THE COURT:  Rochelle.  Is there any other
24    changes to counsel from Friday?
25             MR. BENJAMIN:  Brock Benjamin, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Mr. Benjamin, good afternoon to
 2   you.
 3              Ms. Sirignano?
 4              MS. SIRIGNANO:  Mr. Adams is on his way
 5   from the airport and will be here shortly.
 6              MR. DAVIDSON:  Mr. Blackburn will be
 7   joining us later on this afternoon or tomorrow
 8   morning.
 9              THE COURT:  Anyone have issues with
10   counsel?
11              MR. VILLA:  Your Honor, I think
12   Ms. Fox-Young intends to be here around 1:00, but she
13   will be on the phone.  I'm not sure exactly where
14   they are in transit.  I didn't want you to think she
15   was going to walk in.
16              THE COURT:  No, I knew it was later today
17   is what I've been told.
18              All right.  If I understand what we were
19   going to do, and that is we were going to take up the
20   recording device first thing this afternoon.  Is that
21   everybody's agreement?
22              MR. BECK:  That's right, Your Honor.
23              THE COURT:  Let me make a few comments
24   about that, then I'll hear what anybody wants to tell
25   me or argue.  I guess I was surprised by the quality,
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

4

```
 1    amount of material that was put into the motion.  I
 2    don't know if this is something that is stock around
 3    the country, this is an issue, or what.  But it did
 4    seem to me the Government was working pretty hard to
 5    protect these devices.  On the other hand, there was
 6    a lot of material disclosed in there.  And so I guess
 7    I have two reactions to it.  One, is there is so much
 8    material disclosed in there, what is the Government
 9    concerned about, because they've given so much
10    information?  What is that it they're trying to keep
11    secret?  And I guess, on the flip side, the
12    defendants now have so much information about these
13    recording devices, why do you need to see the ones
14    that the Government actually used here?  It seems to
15    me that the defendants have gotten a lot of
16    information here, and I'm not sure why they need to
17    actually see the devices that the Government has.
18            So -- and I know that Ms. Sirignano wanted
19    to respond to this motion.  That may make some sense,
20    given the effort the Government has put in to
21    protecting these devices.  I think I want to move
22    cautiously and deliberately on this, and not make any
23    sort of rash decisions.  If it really does implicate
24    national security, I think it's in all of us'
25    interests to be careful about forcing the disclosure
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of this.

2              So with those comments, Mr. Beck, it's your

3    motion to reconsider an oral -- I think my memory

4    is -- and you can correct me if I'm wrong -- you were

5    having some difficulty getting the FBI to respond

6    quickly and fully about these devices.  And so the

7    oral order was primarily to get somebody's attention,

8    and let's have an informed debate about it.  So it's

9    teed up as a motion to reconsider, but it's probably

10   really the first time we're looking at it in this

11   depth.

12             MR. BECK:  I think that's right, Your

13   Honor.  And I'll respond to a couple of the

14   preliminaries that the Court brought up.  The

15   Government's interest is in protecting the method of

16   how these devices are secreted in the prison or

17   hidden in the prison.  And primarily just dimensions

18   of the devices, the look of the devices.

19             THE COURT:  If you've disclosed the exact

20   model that you used here, can't they get information?

21             MR. BECK:  It's possible they can.  I don't

22   know what is out there in the public sphere.  They

23   cannot --

24             THE COURT:  So you're concerned about them

25   seeing the size of it, the actual size and shape?

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                          1-800-669-9492
                                                  e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6

```
 1            MR. BECK:  And being able to see the size
 2   and shape, number one, but also sort of the
 3   counterintelligence.  Now, it's my understanding that
 4   you can't just plug in this device with the USB cord,
 5   or like a lightning wire that we have for our
 6   iPhones, or something like that; that you need
 7   special hardware and software to do anything with
 8   these devices.  But that's what the Government's
 9   interested in protecting, as well as just how these
10   devices may look in person.  Aside from that, it's
11   being able to actually access the devices.
12            So ADS, the company that makes these, I
13   don't know whether there is information on the
14   internet of what a HAWK8 device looks like.
15            THE COURT:  Do they sell these to anybody
16   but the federal government?
17            MR. BECK:  They sell them -- and Special
18   Agent Williamson will have more details about where
19   they sell them.  They sell them to government.  I
20   believe they sell them to federal and local and
21   state.  But I'm not sure on that.  And I think they
22   sell them outside the United States to other
23   governments.  But it's a proprietary device, it's a
24   proprietary software.  You and I can't go to ADS and
25   try to purchase one of these.  They don't give the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    FBI their software, they don't give law enforcement

2    agents their software.  So they have protections in

3    place, the data integrity systems, for reasons that

4    may appear obvious, after reading the brief.

5              THE COURT:  So shape, and size, and then

6    the charging device, how they are charged?

7              MR. BECK:  It's not how they're charged.

8    It's how the data on the device is accessed and

9    downloaded.  So they're not charged.  They use

10   batteries, as becomes obvious when some of the data

11   is looked at, you see the batteries ran dead.  But

12   the way in which the data is downloaded.

13             THE COURT:  You attached some transcripts

14   of some hearings.  Has any judge or court ordered the

15   production of these, and have they been produced

16   elsewhere?

17             MR. BECK:  Speaking with the FBI

18   Operational Technology Division, the attorneys that I

19   spoke with could not say.  They had never experienced

20   a court ordering disclosure of these devices.  They

21   couldn't say for sure that it had never happened

22   before they'd been there.  But one of the attorneys,

23   I think, had been there 10 or 15 years.  So in the

24   last --

25             THE COURT:  They're not aware of anybody?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  That's right, Your Honor.
 2    That's right.
 3              And so we can either have response, or I
 4    can put Special Agent Williamson up on the stand, and
 5    he can go through some of these things.  I do think
 6    it's probably helpful to the defense at least -- and
 7    that's one of the reasons that the brief is as long
 8    it is, is that the Government is not trying to hide
 9    things.
10              THE COURT:  I'm not trying to insult you by
11    this, but was this something that was written in
12    Washington and sent out?
13              MR. BECK:  No.
14              THE COURT:  You wrote it.
15              MR. BECK:  Yes.  And I provided it to the
16    attorneys in Washington so that they could make sure
17    that this was publicly available information and okay
18    for public filing.  But, yeah, it was based on my
19    discussions with them.  And so what I was trying to
20    do here was disclose as much information as I could
21    for everyone in the room, so that everyone would see,
22    basically, they have everything that they may get,
23    other than by looking at the devices, which could be
24    used nefariously, if they're able to inspect these
25    devices.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And so what I was saying is I know that we
 2    have come up with issues in this case in which the
 3    metadata that's displayed through ADS's software, is
 4    not accurate in terms of real world.
 5              And I was willing to -- I thought it may be
 6    helpful for everyone to have Special Agent Williamson
 7    explain how that came about, and that that inaccurate
 8    metadata is actually the same data that was on the
 9    recorder when it recorded.
10              THE COURT:  All right.  So you are going to
11    put on Mr. Williamson?
12              MR. BECK:  I think so, Your Honor.
13              THE COURT:  All right.  Mr. Williamson, if
14    you'll come up and stand next to the witness box on
15    my right, your left, before you're seated, Ms.
16    Standridge will swear you in.
17                    HUGH S. WILLIAMSON,
18         after having been first duly sworn under oath,
19         was questioned and testified as follows:
20                    DIRECT EXAMINATION
21              THE CLERK:  Please be seated.  State your
22    full name, spelling it for the record.
23              THE WITNESS:  My name is Hugh S. Williamson
24    H-U-G-H, Hugh.  S as in Sam.  Williamson,
25    W-I-L-L-I-A-M-S-O-N.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Mr. Williamson.  Mr. Beck.
 2   BY MR. BECK:
 3        Q.    Special Agent Williamson, how are you
 4   employed?
 5        A.    I'm the Supervisory Special Agent at the
 6   FBI, assigned to the Operational Technology Division.
 7        Q.    And where are you located?
 8        A.    In the Audio Surveillance Unit at Quantico.
 9        Q.    What is your actual job title?
10        A.    I'm the Program Manager for the FBI's
11   Covert Body Recorder Program.
12        Q.    And what are your duties in that role?
13        A.    I supervise engineers, electronics
14   technicians, in the acquisition, testing, and
15   maintenance of body recorders used throughout the
16   FBI.
17        Q.    How long have you been the program manager?
18        A.    Since 2013.
19        Q.    What did you do before that?
20        A.    Prior to that, I was a Supervisory Special
21   Agent in the Operational Technology Division, working
22   coordination of technical support investigations.
23   And prior to that, at the Counterterrorism Division,
24   I was a supervisor for five years.
25        Q.    What kind of training and experience do you
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    have with what I'm going to call ADS devices?  ADS

2    being the company that manufactures these devices.

3         A.   Training provided by the FBI to tech agents

4    and to ETs in the use and maintenance of the devices,

5    and training through on-the-job training working with

6    the devices in the company.

7         Q.   Have you ever been qualified to give expert

8    testimony in a case before?

9         A.   Yes, sir.

10        Q.   And when was that?

11        A.   That was in the Peterson trial, and I

12   believe that was 2016.

13        Q.   Have you ever testified in court about ADS

14   devices before?

15        A.   Yes.

16        Q.   And do you remember the case that that was

17   in?

18        A.   That was in Cleveland, and I think that

19   was -- actually, that was 2015, the other was 2016 --

20   February 2015, a federal trial in Cleveland.

21        Q.   And other than those two trials, have you

22   ever provided in-court testimony?

23        A.   No, sir.

24        Q.   Generally, what is a body recorder?

25        A.   It's a small, solid state digital recorder,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    a little computer.  All it does is record audio.

2         Q.   Are you aware of what audio recording

3    devices were used in this case, which I'll call the

4    SNM case?

5         A.   I provided the makes and models of the ones

6    that were utilized, yes.

7         Q.   What are those devices?

8         A.   The ones I'm aware of was a HAWK8, and a

9    RAVEN2A are the ones specifically.  And then, I think

10   there may have been an EAGLE as well.

11        Q.   And who manufactures those three devices?

12        A.   They're manufactured by Adaptive Digital

13   Systems, ADS.

14        Q.   Can you tell us a little bit about the data

15   integrity systems between ADS and FBI that provide

16   the framework for these Bird devices, these ADS

17   devices?

18        A.   The FBI hired ADS to make a one-way

19   recorder, all it could do is record and download.  It

20   can't be tampered with by agents, or anyone else.

21   And in order to do that, the ADS manufacturer uses

22   proprietary software on the device to manage how it

23   functions, and an onboard device.  It uses cyclic

24   redundancy checks to make sure that the data it

25   collects has a CRC hash, as well as when it's

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492

                                                                   1-800-669-9492
BEAN & ASSOCIATES, Inc.                                            e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

 1    downloaded, it uses a SHA256 encryption algorithm to

 2    hash the final data.

 3         Q.    There was lot there to unpack.  We'll come

 4    back to a lot of it.

 5              What do you mean a one-way recording?

 6         A.    Basically, you turn it on; it energizes the

 7    microphone, which sends a signal to the transducer,

 8    to the chip that turns it into digital information.

 9    And it's recorded as you're recording on the device.

10    And when you turn it off, it stops doing that.

11         Q.    How does the person using the device turn

12    it off or on?

13         A.    It can be turned on or off manually, or it

14    can be programmed to be turned on and off using the

15    USBird software.

16         Q.    When you talked about the data and the

17    coding on the device, does the FBI have source code

18    or a way to access that code?

19         A.    No.  That is held by ADS.  And deliberately

20    so.  We don't want to know what it is.  We want to be

21    able to say that we have no access to the device;

22    can't control it, can't do anything to it except for

23    the propriety software that allows you certain

24    functions.

25         Q.    Now, the person using the device in the

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                        1-800-669-9492
                                                             e-mail: info@litsupport.com



1   real world, with the on and off switch, can they

2   manipulate the date on the device?

3       A.   They can only turn it on and turn it off.

4       Q.   Can they record over what's on the device?

5       A.   No.

6       Q.   Can they rewind it?

7       A.   No.

8       Q.   Does the device have a -- what I'll refer

9   to as a computer screen, some screen on it, where you

10  can see the data that's on there or the tracks, or

11  recording sessions?  Does the device have that

12  computer screen?

13      A.   No.

14      Q.   Now, explain to me -- explain to us all how

15  these different, what I'll refer to as recording

16  sessions come about.  How are they created?

17      A.   When the recorder is turned on, the

18  recorder begins collecting audio and putting it into

19  the device.  And it creates a session, an audio

20  session, and attaches -- as I said, the cyclic

21  redundancy checks are created as it's doing that in

22  that session.  And as long as that session -- as long

23  as it's turned on, it will continue to record.  If it

24  reaches a certain length, it will stop that session

25  and begin a new session of recording, in terms of it

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE
                                                   e-mail: info@litsupport.com

1   will be a new file.  It will still be recording, it

2   will be an unbroken recording in that regard.  But

3   you won't hear anything when you listen to it.  It

4   won't stop recording until it runs out of power or

5   you turn it off.

6          Q.   If it runs out of power to stop the

7   recording, versus the user turning off the device, is

8   there a way that we can know that looking back at

9   what was on the recorder?

10         A.   Yes.  When the recorder runs out of power,

11  the program on the recorder is designed to indicate

12  that it occurred, and it will gave you a flag.  And

13  it's on the Bird player as well that's provided with

14  the evidence, it gives the flag to indicate if that

15  happens.

16         Q.   And is that also true -- do we get a flag

17  when the device itself, I think, as you said, breaks

18  the recording into different sessions?

19         A.   Yes, there is a series of flags that ADS

20  has designed into it to indicate certain things that

21  occur on the recorder.  Not everything.  One of them

22  is a flag to indicate when the session has reached a

23  certain length and it breaks it up.  And it does that

24  so it can provide the right size to put on an

25  evidentiary disc.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   So it sounds like one way a session is
 2   created is the user turns the device on and then off
 3   again; is that true?
 4        A.   Yes.
 5        Q.   Another way is if the device splits the
 6   file because of its size; is that true?
 7        A.   That can happen, too, yes.
 8        Q.   And then a third way is that the device
 9   would run out of power?
10        A.   There is one where it's a low battery, or
11   power stops, is two different flags.
12        Q.   All right.  Is there another way in which a
13   recording session may be created?
14        A.   I don't understand the question.
15        Q.   Is there another -- beside those three, on
16   and off; the internal software, file size, and the
17   running out of power in some method, is there another
18   way in which a recording session may be created on
19   the device?
20        A.   Not that I'm aware of.
21        Q.   How is the information, the data on the
22   device taken off of the device?
23        A.   The data on the device is downloaded using
24   USBird software.  And it's proprietary software
25   that -- it's the only way you can see the device,
```


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    when you mount it to your computer, it's the only way

2    that you can see that it has recordings on it.  And

3    it allows you to download those recordings to an

4    evidentiary disc.

5        Q.   Who downloads the recordings onto the

6    evidentiary disc?

7        A.   In the FBI, depending on the division,

8    different personnel could do it.  It could be a case

9    agent.  It could be an evidentiary operations

10   technician.

11       Q.   Are you aware of how it works in the

12   Albuquerque office?

13       A.   My understanding in Albuquerque is that all

14   ELSUR is downloaded by ELSUR operations technicians.

15       Q.   I want to go a little bit more in-depth

16   about when the information is downloaded.  What's

17   your understanding of what is created on this

18   evidentiary disc when you download it, how that's

19   made?

20       A.   When the USBird software conducts a

21   download of evidence from the recorder, it takes all

22   of the recorded sessions, all the sessions that are

23   collected, and takes the metadata that's on the

24   recorder.  And there is another file called an IDS

25   file, which is used when you have a video recording,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    which was not used in this case.  And it creates a

2    SHA256 hash calculation for that -- those files.

3        Q.   What's a SHA256 hash creation?  I just

4    learned this this morning, so it may be helpful for

5    some.

6        A.   It's a secure hash algorithm that was

7    created by NSA, and was released through the federal

8    government to all industry in 2001.  It's the

9    National Institutes of Standards hash algorithm to

10   secure data, to show that something that was created,

11   the data that was on a computer or device that was

12   downloaded is the same as it was before.  It creates

13   a unique hash to the ones and zeros that make up

14   those files.

15       Q.   What happens if you're downloading from the

16   recording device, and you don't download all the data

17   onto the evidentiary disc?

18       A.   If you don't download all the data from the

19   recorder onto a disc, it's not considered evidence.

20   It has to be everything downloaded to be evidence.

21   That's the way it's designed.  You have to download

22   everything from the recorder onto an evidentiary

23   disc.  And if you don't do that, the device -- you

24   can't erase it.  And also, if you go to try and make

25   another recording, it won't let you make another

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   recording.

 2        Q.   What happens when all of the data is

 3   downloaded from the device onto the evidentiary disc?

 4        A.   In terms of the process, or --

 5        Q.   Yes.

 6        A.   The USBird software, as I said, it

 7   generates a SHA256 hash calculation.  And it checks

 8   it against the original, and then it burns it to a

 9   disc that is finalized.  And the disc itself being

10   finalized cannot be manipulated.  And it allows you

11   to go back, if you desire, if you need to, to erase

12   the recorder.  And you have to erase the recorder if

13   you want to use it again.

14        Q.   Now, the information on the recorder, if

15   you do erase the recorder after the evidentiary disc,

16   is that information stored anywhere else besides the

17   evidentiary disc?

18        A.   No.  And the way that ADS software works,

19   it writes ones and zeros all over the recorder's

20   short-term memory, or its flash memory, they call it.

21        Q.   Is that information, when you download it,

22   stored on an FBI hard drive as well as the disc?

23        A.   It can be copied and put onto something

24   else.  But the evidence is stored in an ELSUR

25   operations storage room.

SANTA FE OFFICE                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                            Albuquerque, NM 87102
(505) 989-4949                                                                                         (505) 843-9494
FAX (505) 843-9492                                                                                FAX (505) 843-9492
                                                                                                    1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                              e-mail: info@litsupport.com

1       Q.   The evidence -- are you referring to the

2  disc itself is stored in the ELSUR --

3       A.   The disc itself.

4       Q.   What I'm asking, the information that goes

5  on that evidentiary disc, is that stored in the cloud

6  or at FBI headquarters?

7       A.   In some cases, it is uploaded to certain

8  databases in other types of investigations; not -- to

9  my knowledge, it could also be put into other

10  databases used for language review, if you had a

11  language you needed to review evidence, a copy of it

12  could be put up there.  But it would be a copy of the

13  evidence.  It wouldn't be the original evidence.

14       Q.   Was there a backup of the evidentiary discs

15  in this case?

16       A.   I understand there are copies.  I have

17  several copies here.

18       Q.   Besides copies on CDs, is there a backup in

19  a computer or mainframe or cloud?

20       A.   There is not that I know of, not for this

21  case, no.

22       Q.   How can you ensure that the data that was

23  on your recording device is the same data that was

24  put on the evidentiary disc?

25       A.   Well, we know that the ADS software, using

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    proprietary software, creates a hash calculation.
 2    And it provides a text file, which is that hash
 3    calculation.  And that's part of the original
 4    evidence created at download.  And you can go back
 5    and you can run a SHA256 calculation against what you
 6    have in evidence, using an after-market SHA256
 7    calculator, and compare it to the hash calculation
 8    that was originally created with USBird software, is
 9    one method.
10        Q.   And did you do that to validate some of the
11    evidentiary discs in this case?
12        A.   I did.
13             MR. BECK:  At this time, Your Honor, I'd
14    like Special Agent Williamson to demonstrate how he
15    checked the evidentiary disc, what we're calling
16    D55 -- checked the metadata, with this third party
17    SHA256 software to ensure that what was downloaded
18    from the device is the same as what appears on the
19    evidentiary disc, which the defendants have.
20             THE COURT:  All right.  You may.
21             THE WITNESS:  Thank you, sir.
22        Q.   And just go ahead, and if you would,
23    Special Agent Williamson, narrate what you're doing
24    on your computer there for us in the courtroom.
25        A.   So first --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Let me ask Ms. Jacks, Ms.
 2     Sirignano, y'all have been the most interested in
 3     this.  If a couple of you want to come up closer and
 4     stand over here, you're welcome to do it.
 5              MS. JACKS:  Okay, thank you.  I thought we
 6     were going to see it on the screen.
 7              THE COURT:  Oh, we're going to see it on
 8     the screen.  Okay.
 9          A.   Okay.  First, to show -- this is the player
10     software.  It shows the sessions for D55, which is --
11          Q.   By the player software, you're referring to
12     what comes on these evidentiary discs entitled
13     player.exe; is that right?
14          A.   Yes.  I can show you that file.  Here is
15     that HAWK file here.  And these files here are all
16     files that are used to make the player work, dll
17     files, they have nothing to do with the evidence, it
18     just makes the player play what's on the evidence,
19     which is this file here, 1168.
20          Q.   Special Agent Williamson, I'm going to cut
21     you off right there.  So 1168, is that the serial
22     number of the device used in that case?
23          A.   Yes, that's the serial number for the HAWK8
24     that was used.  So on that file, there is 11 sessions
25     or 11 files represent 11 sessions, and the IDS file,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  which I mentioned is when you have a video recording

2  and you have to translate that video evidence so the

3  Windows machine can see video.  That was not used

4  here.  There is no video.  The RCD file which

5  contains the metadata.  And that RCD file, we can't

6  access it.  There is a proprietary hash that ADS puts

7  on that, so I can't go in there and manipulate that

8  RCD file.  But it is a hash calculation against all

9  these files.

10      Q.   Not unless you go in and manipulate that

11  file right there, .RCD, on our computer?

12      A.   No one can.  Only the vendor can go back

13  and look at it and tell you what's on there without

14  going through a USBird software.  It would only allow

15  certain information.

16          THE COURT:  Mr. Beck.  Let me make sure I

17  got everybody on the phone.  I know I had Ms.

18  Fox-Young.

19          Ms. Strickland, are you on the phone?  Is

20  there anybody besides Ms. Fox-Young on the phone?

21          MR. ADAMS:  Chris Adams, Your Honor.

22          THE COURT:  Okay.  Mr. Adams, but

23  Ms. Strickland is not on the phone?  Ms. Strickland,

24  if you're on the phone, do you have your mute button

25  on?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            All right.  Go ahead, Mr. Beck.
2       Q.   So these files that we're looking at here,
3   which start at 1168.001 and go through 1168.011, is
4   there any way to access those files without the ADS
5   proprietary software that you know of?
6       A.   No, sir, there is no way, because it's
7   locked down.  It only can be seen using their
8   proprietary software, and we don't have the source
9   code for that.
10      Q.   And are those the files that are on the
11  recording device before it's downloaded?
12      A.   All these files, 001 through 11, and then
13  the IDS and the RCD file, were on the HAWK recorder
14  before it was downloaded.  And then the text file was
15  created by the USBird software when it created the
16  SHA256 hash calculation.  And that text file, if I
17  opened it up, will show you the calculation numbers
18  for the 11 and the RCD and the IDS.
19      Q.   So these are the hash values -- these are
20  the hash values for each of those files?  Is that
21  what we're seeing here on this text file?
22      A.   Yes, sir.  And I'd have to go back and show
23  you the USBird verification to show you the
24  original -- how USBird does it.
25      Q.   All right.  I think earlier you said that
```



SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    you could check these hash files using a third-party

2    recorder -- or third-party software.

3         A.   Yes.  And so because SHA256 is a national

4    standard, international standard, it's open source to

5    everyone.  Anyone can use it, that algorithm is

6    available through third-party vendors.  And this is

7    one program that OTD-FBI purchased for our use in

8    this case.

9         Q.   And so at the top there I see in blue

10   writing of this third-party software, it says

11   http:\\www.quickhashgui.org, is that where you may be

12   able to download this software?

13        A.   Yes.  I think it's a free download.

14        Q.   So continue on to show us how verified.

15        A.   So this software, in particular, provides

16   an ability to check the hash calculation of an item

17   of evidence -- any file that's been hashed against a

18   variety of algorithms.  MD5 is one, SHA1.  And in

19   this case it's SHA256.  So select that algorithm to

20   be used.  And everyone has that algorithm.  It can be

21   obtained anywhere.  And then I select a directory.  I

22   don't want to save to it to a CSC so I took care of

23   that.

24        Q.   So to get to the screen we're looking at

25   that says "select directory," you clicked on the tab

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    at the top of the software that is file capital S; is

2    that right?

3         A.   Yes, sir, that tab file, capital S, allows

4    you to run the hash against multiple files.

5         Q.   How did you run the hash against the files

6    on this evidentiary disc?

7         A.   Using select directory, I found it on the

8    drive where the disc is, go to where the evidence is,

9    to copy evidences.  And there is the HAWK folder.

10   And there is the 1168 folder.  I select that folder.

11   And then quick hash will run everything on that

12   folder through a SHA256 algorithm and calculate a

13   value for each file.

14        Q.   And that 1168 file we saw there, that's the

15   file we just looked at that had 11268.001 through

16   1168.011?

17        A.   Correct.

18        Q.   Go ahead, press "okay" to run it through

19   that file.

20        A.   So your result for those files on 55, it

21   provides a -- open this up -- it provides a hash

22   value.  So that's the solution.  So look at 001, and

23   there is all those numbers and letters.  That's the

24   solution or the hash value that was created by

25   SHA256, when it ran that file, 001, all the ones and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    zeros in that file through the algorithm.  And I can
2    go back and I can compare that.
3         Q.   When you say "go back," now you're clicking
4    on the notepad icon at the bottom where you had the
5    .txt file open?
6         A.   Right.  And I'll show you where it came
7    from again.  This is from the original evidence, this
8    is what was created by the USBird software that is
9    from the ADS recorder.  This is a hash calculation
10   value created by USBird when it downloaded the
11   original evidence, is in this file, 1168 text --
12   .txt.  And this is it.  And I can take it and I can
13   compare it against the other files that I just
14   hashed.
15        An example, go to 001, and on the text file
16   from USBird from the ADS recorder, the first four
17   digits are 9DD9.  And if you look at 001 through the
18   quick hash, there is 9DD9.  You look at the last ends
19   FOCAA.  And look down here FOCAA on 001.  And the
20   same thing for all these files.  I did them last
21   night.  They match up.  It's a match.  I'm absolutely
22   certain these are identical files.
23        Q.   Thank you.  If you would, let's go back
24   into the player software.  So now we're looking at
25   the player software that comes on the disc, and there

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
1-800-669-9492
PROFESSIONAL COURT          e-mail: info@litsupport.com
REPORTING SERVICE

BEAN
&ASSOCIATES, Inc.

1   seems to be -- how many recording sessions are

2   reflected here?

3        A.   Eleven.

4        Q.   And how many of those recording sessions --

5   and you may have to think about this -- how many of

6   those recording sessions were created because the

7   person who had this device turned it on and then back

8   off again manually?

9        A.   Well, because I know one of them spanned

10  here, I'd have to go back and look at the date -- I'd

11  have to go back and look at the times.

12       Q.   When you say, "one of them spanned here" --

13       A.   Number 8 was definitely a recording that

14  was cut short, so it had to continue recording as

15  another session, because the device said:  I'm going

16  to chop this whole session into lengths that can be

17  put onto a disc.

18       Q.   And you know that how?

19       A.   Look at the date and time here on line 8,

20  that is a green flag, which is -- the green flag

21  comes from the flags here provided by ADS.  There is

22  a green flag, recording was split due to size limit.

23  So that's something that the recorder created during

24  the recording session.  And it was put in there as

25  part of the original session.  You look at the date

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                                       Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                       FAX (505) 843-9492
                                                                         1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                    e-mail: info@litsupport.com

```
 1   where it says ending 2/4/2016, the time of 19:52 and
 2   26 seconds.  Look at the next line, line 9.  It says
 3   the start time is 2/4/2016, 19:52 and 26 seconds.  So
 4   the start time and end time are the same, which tells
 5   me that it's a continuation of that same recording
 6   that was started at 19:30 on 2/4.  And those two
 7   there are one recording because then it ends at 19
 8   minutes 53 seconds.  And then there is the -- a new
 9   recording begins later.  They're not the same,
10   they're not connected.
11       Q.   Let me start looking at session 9 and 10 on
12   this 1168 disc.  Does it look to you like session 9
13   ends on February 4 at 19:53:13?
14       A.   Yes.
15       Q.   Then session 10 begins at 19:57:20; is that
16   right?
17       A.   Yes.
18       Q.   So that's approximately --
19       A.   Five minutes.
20       Q.   -- five minutes apart.  Does that indicate
21   to you -- does that establish that in 9 the device
22   was turned off, and then approximately five minutes
23   later, the user then clicked the on button to turn it
24   back on and begin the next session?
25       A.   If it was a manually turned on and off
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    recording, yes.

2         Q.    And if this was created with the HAWK8

3    device, is it a manually operated recording device?

4         A.    My understanding of the case it was used in

5    the manual mode, yes.

6         Q.    Now, did you look at another copy of an

7    evidentiary disc that we labeled ID56 in this case?

8         A.    Yes.

9         Q.    Would you put that into the player, please?

10        A.    There is the HAWK for 56.

11        Q.    And so this disc -- is your understanding

12   that the serial number of this recorder was 2373?

13        A.    Yes.

14        Q.    And how do we know that?

15        A.    Well, I can go back to USBird.

16        Q.    That's okay.  Do we know that because

17   that's the name of the file there?

18        A.    Yes, that's the name of the file there,

19   yes.

20        Q.    Go ahead and open back up the file there.

21   And please bring up the player.exe.  And what does

22   player.exe convey to us about the dates and times and

23   lengths of the recordings on this copy of the

24   evidentiary DVD?

25        A.    Well, knowing ADS recorders, and looking at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    this it says 12/30/1899, and the same start and end
 2    time, and length of zero, I know that what happened
 3    is the clock battery -- there is an onboard clock
 4    battery on the ADS recorder, that if it goes dead, it
 5    no longer generates a time or a date.  So there is
 6    negative input to the recorder for that information.
 7    So there is a default entry, which they call an epic
 8    time, date, and that's the 12/30/1899.  And then,
 9    because there is no clock running, then, when the
10    metadata is generating, it won't give duration of the
11    record.  It will record, it does record, and I can
12    verify this, that it was recording, recorded
13    sessions.  You can play them, you can hear them.
14         Q.   So if you would play for us recording
15    session number 1.  Just start the player.
16         A.   (Witness complies.)
17         Q.   So we heard that there is a recording there
18    in session number 1?
19         A.   Yes.
20         Q.   Do we know the length of that recording by
21    what you're seeing on the player?
22         A.   Down here, that number there is not
23    relevant to the recording.
24         Q.   So is that a:  No, we don't know?
25         A.   You'd have to sit and listen to it with a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   stopwatch.  And you could do that.  It would come to

 2   a known time, because --

 3        Q.   Looking at these sessions, can you tell

 4   which of these sessions was created by the person

 5   operating it clicking on or off the device?

 6        A.   Only because there is no flag showing.  Can

 7   I say, well --

 8        Q.   Sure.  So I think I was asking a yes or no

 9   question.

10        A.   Yes, I would say, without having that --

11   without listening to each individual one and seeing

12   if there is continuity, I can't from the player, no.

13        Q.   Okay.

14        A.   I can tell from the flag that something

15   occurred, though, that would indicate a connection,

16   recording.

17        Q.   It's my understanding, though, that if

18   there was something that happened besides turning on

19   and off the device, it would be reflected by a flag;

20   is that right?

21        A.   Certain things would be reflected.  The

22   loss of battery power.  And again, the flags, the

23   specific flags provided low battery, power fail, the

24   spanning due to size limit, and other ones that don't

25   appear here and don't apply.  The camera loss,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    because there was no camera used.  And then things

2    don't apply because we don't have GPS involved with

3    this device.  And then I don't see the yellow flag.

4         Q.   So, for instance, if we look at session 13,

5    what does that flag tell us?

6         A.   13 is a red flag, and red flag is a

7    recording with low battery, which is basically the

8    battery lost enough power to run the device, so it

9    stopped recording.

10        Q.   To your understanding, are there two

11   different batteries in this HAWK device?

12        A.   There are two batteries.  There is the

13   battery that runs the clock battery, which is like a

14   small watch cell size of battery.  And there is a

15   normal battery that it uses.  It has more power to

16   run the recorder.

17        Q.   And which one went out?

18        A.   The clock battery went bad.

19        Q.   All right.  Now, did you validate the hash

20   values?

21        A.   Yes.  Do you want me to do it with USBird

22   as well?

23        Q.   No.

24        A.   So I have the text from the file, and a

25   copy of the evidence it provides.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   I think what I'm asking is did you verify
2    the hash values of this disc?
3      A.   Yes, I did.
4      Q.   And in that verification, what did you
5    find?
6      A.   It was a match.  These are identical.
7      Q.   Does that mean that all of the data that
8    was on the recording device was downloaded to the
9    evidentiary DVD?
10      A.   Yes.  Based on the performance of USBird
11    verification and the confirmation with the quick
12    hash, this information is what was recorded by the
13    recorder and downloaded from the recorder.  It's
14    authentic evidence.
15      Q.   Does the player here on the disc help you
16    understand whether the data on the device matches up
17    with the data on the DVD?
18      A.   Yes.  The data on the device, during
19    recording, it creates a cyclic redundancy check,
20    which is basically a long division problem against
21    every certain block of information.  And it records
22    that with the original evidence, and it allows you to
23    go back and see if the solution comes out, if it's
24    been changed or not.  If it's been changed, you'll
25    have a failure, you won't have the same solution.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    And it's built into this computer, it's built into

2    every computer; pretty much every computer uses

3    something like is this to make sure that data is not

4    corrupted.

5              In this case, what's on the ADS recorder, a

6    cyclic redundancy check was created, and that was

7    provided with the evidence.  And the player looks at

8    that.  And if it doesn't solve correctly, it will

9    give you a "check some error."

10   Q.   So is it your understanding that if the

11   data on the device is the exact same as the data on

12   the evidentiary DVD after the download, that that's

13   why we can see what's on the player and listen to the

14   recording?

15   A.   It's the only way can you see this

16   evidence, on an ADS USBird player.

17   Q.   If they didn't match up --

18   A.   You'd have an error; you'd have a check

19   some error, and it wouldn't be able to play.

20   Q.   Did you also look at ID60, a disc that was

21   ID60?

22   A.   Yes.

23   Q.   Would you bring that up?

24   A.   So this is the disc on 60.  Again, the

25   serial number.  This is the player display.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    So with this DVD, is it possible that the

2    dates and times reflected for start and end for

3    session 1 may not be the exact real world dates and

4    times in which these recordings were made?

5      A.    Yes.   That's very possible.

6      Q.    How is that?

7      A.    The date and time can be assigned.   Because

8    we deploy these around the world in different time

9    zones, we require that the vendor give us an ability

10   to set a date and time on the device.   So prior to

11   deploying the device, the user, usually a tech user,

12   could be a case agent can, using the USBird software,

13   calibrate the date and time on the device with your

14   date and time clock on your computer.   And so it's

15   possible that someone did not correct the date and

16   time on the device, or set it deliberately to another

17   date and time.   There was nowhere -- we ship these to

18   different field offices, so it may have been on

19   eastern time, or a different time zone before it was

20   sent to Albuquerque and was never changed.

21     Q.    So it sounds like the dates and times could

22   be inaccurate based on not setting the device

23   correctly?

24     A.    For many reasons, it could be, yes.

25     Q.    Now, even if that's true, can you account

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

```
 1   for the time between recording session 1 and
 2   recording session 2?
 3        A.   I would say, from looking at recording
 4   session 1, that ends says 13:50, 13 minutes 50
 5   seconds on the 11th, purportedly.  And then the next
 6   session starts at 12:55 on the 12th.  They stopped
 7   the recorder, and they turned it back up on the next
 8   day.
 9        Q.   Why does this tell you that?
10        A.   Well, I'm looking at the date, 5/11 is when
11   it was ended, session 1, and then starts on 5/12.
12        Q.   And are those -- and this -- when I'm
13   looking there at recording session 2, and I see
14   12:55:44 is that hours, minutes, and seconds?
15        A.   My understanding that's minutes and
16   seconds.  I might have to go back and check.
17        Q.   Well --
18        A.   The way it's written.
19        Q.   Does it tell you anything -- if we're
20   looking at 12:55:44, we look at 12:57:20, and that's
21   a minute and 36 seconds length, displayed on the
22   player.  Does that help you?
23        A.   Yes, I'm sorry, it's minutes and seconds,
24   and then tenths of seconds.
25        Q.   I think that's wrong.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Okay.  I'm looking at 12:55:57.

 2        Q.    Yeah.  So I think the 55 and 57 --

 3        A.    I'm sorry.  Excuse me, it's -- yeah,

 4   minutes.  So 12 minutes 55 seconds, to -- excuse me

 5   55.44 to 57.20, yeah.

 6        Q.    Is that hours, minutes, and --

 7        A.    Hours, minutes, seconds, yes.

 8        Q.    Okay.  Thank you.  And so did you

 9   validate -- using the SHA256 algorithm, did you

10   validate the date on this evidentiary disc?

11        A.    I did.

12        Q.    And what did that process tell you?

13        A.    It was a match; that the hash calculation

14   for the evidentiary disc, when I ran it, compared it

15   to the hash calculation; with quick hash, they

16   matched.  It was an identical match.

17        Q.    So that means, if the dates and times are

18   off here in this player, they were off when these

19   files were created on the device?

20        A.    Yes, correct.

21        Q.    All right.  Did you also look at disc ID58?

22        A.    Yes.

23        Q.    And just bring that up, if you will.

24        MR. BECK:  For the record, I don't know how

25   it's disclosed to you, but that's how we keep track
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of things.

2        Q.   Is the serial number for this device 0730?

3        A.   Yes.

4        Q.   And it looks like, when we bring it up in

5    the player, we don't see any warning flags; is that

6    right?

7        A.   I see some green flags indicate it's

8    spanned due to the size of the file.

9        Q.   And that's -- when you scrolled down,

10   that's from sessions 21 through 34.

11       A.   21, 22, 23, 25, 29, 32, and 34 have green

12   flags.  They reached their size limit.

13       Q.   Did you do the hash value validation for

14   this disc, ID58?

15       A.   Yes.

16       Q.   What did that validation tell you?

17       A.   Those hash calculations were a match as

18   well.

19       Q.   So was all the information, all the data on

20   the device downloaded to this evidentiary DVD in the

21   same --

22       A.   Yes.  From what was on the recorder, it's

23   identical to what's on this.

24       Q.   Okay.  And I want to take you back now to

25   the DVD two times ago.  You don't have to do anything



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    there.  I just want to ask you a question about it.

2    That was the DVD where all the dates said they were

3    in the year 1899.  Do you remember that DVD?

4         A.   Yes.

5         Q.   Did you do anything with that evidentiary

6    DVD to see if you could, in fact, find dates and

7    times of when those recordings were made?

8         A.   Yes.  In order -- when we have problems

9    with the recorders or recordings because of some

10   error, we take them to the vendor who owns the

11   proprietary software and have the source code.  We

12   will have the Los Angeles division EOT take it to the

13   vendor and sit with the technician as they try to

14   access it, and see what they can see.

15        Q.   Did that happen with this DVD?

16        A.   We did.  We sent it back.

17        Q.   And what happened?

18        A.   They could not recover any data because the

19   clock battery had not provided that data regarding

20   the date and the time.

21             MR. BECK:  Thank you, Special Agent

22   Williamson.  Nothing further.  And just for the

23   record, I couldn't read the handwriting on there.

24   It's actually 1D, not ID for those.

25             MS. JACKS:  I'm sorry?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  It's 1D.  I just read it
 2     incorrectly.
 3              No further questions.
 4              THE COURT:  All right.  Thank you, Mr.
 5     Beck.
 6              Ms. Jacks, do you want to start?
 7              MS. JACKS:  I do.  But I'd just like a
 8     moment to confer.
 9              THE COURT:  You may.
10                      EXAMINATION
11     BY MS. JACKS:
12        Q.   Good afternoon, Agent Williamson.
13        A.   Good afternoon.
14        Q.   I'm going to start with the easy stuff.
15     First of all, you said you're the program manager for
16     the covert body recording program, right?
17        A.   Yes.
18        Q.   So, as the program manager, I think you
19     mentioned you're responsible for the acquisition of
20     the devices?
21        A.   I'm not directly responsible for the
22     acquisition.  Finance division has a protocol in
23     place, through federal law, that governs how we
24     acquire them.  These were acquired before I became
25     the program manager.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   You mean all the ELSUR devices that we're

 2   talking about today?

 3        A.   The contract for their purchase was before

 4   I came there.

 5        Q.   Okay.  The testing of the devices is under

 6   your authority?

 7        A.   The testing that we do at Quantico, the

 8   limited testing we do, yes.

 9        Q.   That's to try to make sure that when they

10   go out in the field there is procedures in place that

11   ensure that the devices work as they're supposed to?

12        A.   I don't understand your question.

13        Q.   Well, what is the testing that you do?

14        A.   To make sure that they work; power them up,

15   they actually make a recording and they actually

16   function the way they're supposed to.

17        Q.   Okay.  And that you can set the date?

18        A.   Yes.

19        Q.   And that the times reflected on the summary

20   charts that you've shown us today are the actual

21   times?

22        A.   That's not set by us.  That's set by the

23   operator in the field.

24        Q.   What's set by the operator in the field?

25        A.   The date and time they're going to use.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Like I set a date and the time for a recorder, and

 2    they go somewhere else, and they want to use their

 3    date and time.

 4         Q.   Right.  I think you explained that.  So,

 5    for example, if these devices were checked out in

 6    Albuquerque, there would be a person in the

 7    Albuquerque office that has the responsibility of

 8    setting the devices up with the proper date and time?

 9         A.   I'm not familiar with Albuquerque's

10    procedures.

11         Q.   So you don't know if the Albuquerque -- the

12    ELSUR person in Albuquerque or people in Albuquerque

13    are tasked with putting in the date --

14         A.   No.

15         Q.   -- properly?

16         A.   No.

17         Q.   So there is not some sort of national

18    standard for how these devices are to be calibrated

19    before they're sent out in the field?

20         A.   When you say "national standard," I don't

21    understand that.

22         Q.   The standard that you, as the program

23    manager of the covert body recording program, put in

24    place to ensure that when people use these devices

25    they use them right.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492
                                                                                  1-800-669-9492
                                                                          e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          A.    When we teach the tech agents how to use

2     them, we teach them to set the time and date

3     appropriately.

4          Q.    Okay.  And the tech agents are the people

5     that then would be sent out into the field to manage

6     the ELSUR devices in any particular office?

7          A.    They would assist the ELSURs, yes.

8          Q.    I'm sorry?  They would what?

9          A.    They would assist the ELSUR operations

10    technician in how to properly do that, yes.

11         Q.    Okay.  So the idea would be that they would

12    train the ELSUR operations technician how to set the

13    time and date?

14         A.    And we do also provide training to ELSUR

15    operations technicians to do that as well.

16         Q.    Okay.  Just so that I understand when you

17    say "ELSUR operations technician," that's the person

18    that would be in the FBI field office?

19         A.    They are in the FBI field offices, yes.

20         Q.    And who is the person that would be sent

21    out there to train them?

22         A.    We don't send anyone out to train them.

23         Q.    The person that you were talking about, I

24    think that you actually trained in how to set up the

25    devices, what is that person?

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                      1-800-669-9492
                                                           e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1      A.   We have regular training of technically
 2   trained agents.   There is a whole program that does
 3   that.   And part of their instruction is teach them
 4   how to use these devices.
 5      Q.   Okay.   So these would be special agents
 6   that are technically trained at Quantico on how to
 7   operate the devices?
 8      A.   Some of their training does occur at
 9   Quantico.
10      Q.   And then they would be sent out the various
11   field offices to train the ELSUR operations
12   technicians?
13      A.   We also run -- that is one thing that can
14   happen.   We also have training, not throughout all
15   ELSUR operations technicians.   There is a ELSUR
16   operations technician program that provides training
17   at times.   And that's a different unit that does
18   that.   Not my unit.
19      Q.   And so the ELSUR operations technician
20   would go to that training and learn about the
21   devices, and receive some sort of acknowledgment that
22   they had completed that training?
23      A.   I would assume so.   I don't know.   I don't
24   run the program.
25      Q.   Okay.   I think you said you were

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1    responsible for supervising the maintenance of the

2    ELSUR devices; is that right?

3         A.   To the degree that we can do that at

4    Quantico, yes.

5         Q.   Okay.  So you supervise the maintenance of

6    the devices that are back in Virginia; is that right?

7         A.   Yes.

8         Q.   But you don't have anything to do with the

9    maintenance of the devices that are in the other

10   field offices?

11        A.   We provide guidance, and we ask that

12   certain things be done.  But that's part of what is

13   provided the technically trained agents.  But they're

14   not the ones always holding the devices.

15        Q.   I'm sorry?  They're not the ones --

16        A.   I mean, the tech agents are -- some of the

17   people, ELSUR operations technicians also; it depends

18   on the field office.

19        Q.   Is there some sort of requirement that a

20   field office have somebody that's been through a

21   specific training that you developed?

22        A.   Yes.

23        Q.   And what that is requirement, or what are

24   those requirements?

25        A.   They attend the tech training, which is in

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    a different unit.  And they attend the ELSUR

2    operations training, which is a different unit as

3    well.

4         Q.   And there has to be, what, one person in

5    each field office that has accomplished those two

6    things?

7         A.   I don't know how many people are required.

8         Q.   In connection with your job as the program

9    manager of the covert body recording program, do you

10   provide any sort of instruction or standards on how

11   the devices are to be used in the field?

12        A.   There are -- there is training provided in

13   the TTA program that the TTAs are given.

14        Q.   The TTAs are the technical training agents?

15        A.   Technically trained agents, yes.

16        Q.   And are the technically trained agents

17   given instructions on how a person that's given the

18   ELSUR device is supposed to be educated with respect

19   to its operation?

20        A.   I don't understand what you mean by that.

21        Q.   Well, what I mean is, like, are they told

22   something like:  When you give this device to

23   somebody that you're going to ask to use it in a

24   subreptitious fashion, they should be instructed to

25   leave it on during the entire conversation that's at

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1    issue?

2         A.   That's not something you would teach

3    everybody to do.

4         Q.   Okay.  Is there any requirement or any

5    training that when you're providing this ELSUR device

6    to somebody who is going to use it in the field, they

7    should keep it in their presence for the entire time

8    of the conversations they're recording?

9         A.   No.

10        Q.   Is the information that these technically

11   trained agents are trained on published somewhere?

12        A.   Do you mean are there syllabi that exist?

13        Q.   Correct, somewhere within the FBI.

14        A.   Yes.

15        Q.   And where is that?

16        A.   At the Technical Operations Development

17   Unit, which is in charge of the TTAs.

18        Q.   And they keep records of what sort of

19   topics and things these technically trained agents

20   are educated about?

21        A.   Yes.

22        Q.   Now, Mr. Beck asked you some questions

23   about the ELSUR device actually terminating a session

24   and starting a new session on its own.  Do you recall

25   those questions?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    It doesn't terminate a session and start a
 2   new session by itself.
 3        Q.    Okay.  Well --
 4        A.    Unless you say it's spanning the limit, you
 5   mean.
 6        Q.    That's exactly where I was going.
 7        A.    Yeah.  With an excessive size, it will
 8   create a new session, yes.
 9        Q.    Okay.  And the ELSUR device does that on
10   its own, without any input from the operator?
11        A.    The device does it automatically.
12        Q.    And you're saying that happens when the
13   recording reaches a certain length?
14        A.    Yes.
15        Q.    And is there some sort of set length on the
16   recording?
17        A.    No.  It's dependent upon each device's
18   capacity, and when it was -- different devices, my
19   understanding, have different lengths.  And I don't
20   know them off the top of my head.  I'd have to go
21   look them up.
22        Q.    Within the same device, is there a
23   consistent length that is -- then causes a session to
24   terminate and begin a new session?
25        A.    Well, the models have different series.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the HAWK8 had multiple models, or variance.  So I

2    don't know if they changed or they are the same.

3        Q.   What about within a particular HAWK device,

4    within -- when we're looking at these folders here,

5    that are displayed -- let's look at the one that's on

6    the screen.  You pulled up the recordings that are

7    designated on HAWK file 0730, right?

8        A.   This one here?

9        Q.   Yes.  Does that identify a particular

10   individual HAWK device?

11       A.   Yes.  The HAWK serial number at the top,

12   0730.

13       Q.   Okay.  And with respect to a particular

14   HAWK device; for example, this one, 0730, would there

15   be a distinct length of time that would then cause a

16   session to terminate and start a new session?

17       A.   It wouldn't be time.  And again, you're

18   looking at a video -- audio-video recorded, and so

19   it's data; it's based on data.

20       Q.   It's based on the amount of data?

21       A.   Yes.

22       Q.   So is there, within a device, let's say the

23   amount of data is one gigabyte.  If the amount of

24   data exceeds one gigabyte, would it then

25   automatically reset every time?



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                1-800-669-9492
                                                     e-mail: info@litsupport.com

1        A.    It's much lower than that.

2        Q.    Okay.  Then you pick the number.

3        A.    I don't know it off the top of my head.

4   I'd have to go find out.

5        Q.    But do you understand the tenor of my

6   question?

7        A.    Yes.

8        Q.    I mean, is it like every time when it hits

9   that limit --

10       A.    Yes.

11       Q.    -- it would then reset?

12       A.    When it hits that limit, it will create a

13  new session.  So it can fit all that onto a single

14  evidentiary disc.

15       Q.    And on a single recording device that would

16  be consistent over time, according to you?

17       A.    It should be, yes.

18       Q.    Now, I think that the device that we're

19  looking at here, you said that has audio and video?

20       A.    Excuse me, yeah.  In this case, no, it

21  doesn't.  It has no video at the top, and it has

22  stereo, so it's just audio for this one.

23       Q.    Okay.  So if a device like this device,

24  0730, is simply recording audio, would you expect it

25  to start a new session after a particular amount of

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

```
 1    time in a consistent fashion?
 2        A.   No.
 3        Q.   Okay.  And why is that?
 4        A.   Because it's based on data, not time.
 5        Q.   So it would depend on the amount of
 6    talking?
 7        A.   Or noise, how much information is coming
 8    through the microphone.
 9        Q.   So I want to talk to you about the first
10    evidentiary disc that you discussed.  And,
11    unfortunately, we don't have them identified the same
12    as you.  But it was the first one that you pulled
13    up -- I think it had -- it was 1168.  And I think you
14    had a total of 11 sessions.  The file was 1168.
15        A.   Let me see.
16             MS. JACKS:  Do you know which one it was?
17             MR. BECK:  It was 1D55.
18        A.   Do you want me to put that one on?
19        Q.   Please.  Yeah, that's the one.  Thanks.
20             So, just to reiterate the last -- I guess
21    the last series of questions.  If you look at session
22    8, that recorded 21 minutes 55 seconds of audio; is
23    that right?
24        A.   Yes.  The length shows 21 minutes 55
25    seconds.
```


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   Then the green flag shows that the session

2    was terminated, and a new session was automatically

3    started by the device?

4        A.   Yes.

5        Q.   Because the size limit was exceeded?

6        A.   Yes.

7        Q.   And then the second part of that same

8    conversation lasted about 47 seconds; is that right?

9        A.   Yes.

10        Q.   Okay.  If you look at session 6, how much

11   time did that session go for?

12        A.   It says 37 minutes 14 seconds.

13        Q.   Okay.  And does the software show any

14   indication that that session was broken into pieces?

15        A.   No, it shows that it was turned off.

16        Q.   It shows that the operator of the device

17   turned it off?

18        A.   Yes.

19        Q.   After 37 minutes and 14 seconds?

20        A.   Yes.

21        Q.   With respect to the dates on this series of

22   recordings, do you know on this particular one

23   whether the recordings occurred on the dates as

24   indicated?

25        A.   I have no idea.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                                              Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Q.   No idea?

2    A.   None.

3    Q.   And the only way you would know that, or

4  I'm sorry, the only way you could determine if the

5  dates were correct is to know when the device was

6  provided to the person operating it?

7    A.   No.  You'd have to ask the person who

8  operated it when they deployed it.

9    Q.   And what about the ELSUR operations

10 technician who was responsible for the deployment of

11 this device?

12    A.   The ELSUR operations technician is not

13 responsible for the deployment of the device.

14    Q.   They're responsible for setting up the

15 device and providing it to the agent, right?

16    A.   No.

17    Q.   What are they responsible for?

18    A.   For receiving the device that has the

19 evidence on it, and downloading the evidence.

20    Q.   Okay.  Who is responsible for preparing the

21 device to be able to go out in the field?

22    A.   In most field offices technically trained

23 agents provide technical equipment to case agents to

24 use.

25    Q.   So the case agent, the person that was

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                   e-mail: info@litsupport.com

1    actually going to provide the device to somebody he

2    was working with, it would be his responsibility to

3    make sure the device was set appropriately?

4         A.   I can't speak to Albuquerque, what they did

5    or did not do.

6         Q.   Is that a practice at least in some areas

7    that you're aware of?

8         A.   Generally, technically trained agents will

9    provide equipment and instruction on the equipment to

10   case agents, yes.

11        Q.   And then, generally, the case agent would

12   be responsible for preparing the device for

13   deployment?

14        A.   No.  Depends.  Some offices rely more on

15   the tech agent to do that.  It depends on the office

16   and the scenario.

17        Q.   So we'd have to talk to somebody from

18   Albuquerque?

19        A.   Yes.

20        Q.   Now, I think you were asked some questions

21   by Mr. Beck about DVD 1D56.  And that was the one

22   that showed that the recordings were made on December

23   30, 1899, and were zero seconds?

24        A.   Wrong date and time, obviously.

25        Q.   Right.  And you're attributing that to the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1    clock battery being dead or defective in some manner?

 2        A.    The clock battery was dead, and that's why

 3    it happened.

 4        Q.    But you've confirmed that there are

 5    recordings on that evidentiary DVD?

 6        A.    Yes.  We played one here a minute ago.

 7        Q.    And I think you acknowledge that at the

 8    time that that device was downloaded onto the

 9    evidentiary DVD, 1D56, it was apparent from the

10    download that there had some sort of malfunction of

11    the clock system?

12        A.    That would be immediately apparent when you

13    were to look at the recorder in USBird.

14        Q.    Okay.  You testified that that actual ELSUR

15    device was sent back to the vendor.  Am I

16    understanding you correctly?

17        A.    No.  The copy of the evidence was sent to

18    the vendor to see if they could extract any

19    information.

20        Q.    So a copy of that DVD was sent to the

21    vendor?

22        A.    Yes.  A copy was sent to LA field office.

23    And the EOT took it to the vendor to examine it.

24        Q.    What about the device itself?  Was the

25    device itself ever sent back to the vendor to see if



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492
                                               e-mail: info@litsupport.com

1    there was information on that that wasn't transmitted

2    to the DVD?

3        A.   If the device was not erased, there would

4    still be those sessions on the device.  If you erase

5    the device, then there is nothing on the device.

6        Q.   Okay.  So my question is -- and maybe you

7    don't know -- if that device, the actual ELSUR

8    device, was that sent back to the vendor?

9        A.   There would be no point in doing that, if

10    it was erased.  If it was not erased, that would be

11    different.

12        Q.   Well, do you know if the device, prior to

13    being erased, was sent back to the vendor because --

14        A.   I don't think it was, no.  It was not to my

15    knowledge, no.

16        Q.   Okay.  Are there some sort of -- you're

17    obviously aware that something was sent back to the

18    vendor.  Is that a notification that somebody makes

19    to you by phone, or is that something that you find

20    out about through some sort of written communication?

21        A.   It can be by phone.  We usually send an

22    email saying:  Would you take something back?  But

23    it's phone or email.  So the response could be a

24    verbal response; the response could be an email

25    response.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Q.    You mean the response from the vendor?

2          A.    This specific time?

3          Q.    Yes.

4          A.    I had an email back.

5          Q.    Okay.  So there is a record of some sort of

6    written communication between you and the vendor

7    regarding this particular evidentiary DVD?

8          A.    It was between my unit and the LA field

9    office's EOT, who contacted the vendor and took the

10   copy of the disc to the vendor.

11         Q.    And when the vendor responded, do they just

12   respond informally in an email, or was there some

13   sort of forensic report generated?

14         A.    I didn't get a response from the vendor.  I

15   think they spoke directly to LA and I got a response

16   from LA.  Actually, my ET got an response from LA.

17         Q.    What's your ET?

18         A.    Electronics technician.

19         Q.    And, essentially, the response was there is

20   no additional information on the copy of the DVD that

21   was created?

22         A.    There is no way to find date and time from

23   that at all.  And all they could say was it was an

24   authentic recording.  But there is no metadata

25   showing date and time because the clock battery had

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    failed.
 2         Q.   And did the vendor ask whether you could
 3    provide the original ELSUR device?
 4         A.   No.
 5              (Mr. Adams entered the courtroom.)
 6         Q.   Apart from this particular DVD recording,
 7    or this particular ELSUR device, was anything else
 8    sent back to the vendor to ask about missing or
 9    incorrect information in connection this case?
10         A.   No.
11         Q.   So there was just that one DVD?
12         A.   That was the one DVD we sent back.
13         Q.   And based on your knowledge, who is
14    responsible for informing the operator of the device
15    the conditions or how it's to be utilized in the
16    field, if anybody?
17         A.   Technically trained agents have the
18    responsibility for teaching the case agents how to
19    use the equipment.
20              MS. JACKS:  If I could just have a moment?
21              THE COURT:  Certainly.
22              MS. SIRIGNANO:  Your Honor, good afternoon.
23              THE COURT:  Ms. Sirignano.
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                      EXAMINATION
 2   BY MS. SIRIGNANO:
 3        Q.   Good afternoon, Agent.
 4             Agent, I'd like to talk a little bit about
 5   training first, like Ms. Jacks started out with, and
 6   then go into the device a little bit.
 7             So who did you speak to before you came
 8   here to Las Cruces to prepare for your testimony?
 9        A.   Mr. Beck.
10        Q.   Assistant United States Attorney Matt Beck?
11        A.   Yes.
12        Q.   And how many times did you talk with him?
13        A.   Less than a dozen times.  In terms of on
14   the phone formally?
15        Q.   Well, any contact with him.
16        A.   I can't recall.  I'd have to go back and
17   get you that information exactly.
18        Q.   You'd say less than a dozen times?
19        A.   If you include emails, more than a dozen
20   times.
21        Q.   What was substance of these communication?
22        A.   When to appear, when come out.
23        Q.   Scheduling, or --
24        A.   He sent me a copy of what he submitted
25   today, a rough draft, to share with the attorneys at
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    OTD and myself.

2         Q.   The motion to reconsider?

3         A.   Yes, ma'am.

4         Q.   Did you proofread it?

5         A.   Not entirely, no.

6         Q.   Well, did you proofread any of it?

7         A.   Some of it.

8         Q.   What did you proofread?  What did you

9    change?

10        A.   It referred to -- and again, he already

11   corrected it.  He had the wrong name or wrong model

12   number of the recorder.

13        Q.   Wrong model number of what?

14        A.   The recorder.  He had a HAWK3 instead of a

15   HAWK8.  It was typo.

16        Q.   There were two devices in this case, right?

17        A.   I'm not familiar off the top of my head how

18   many devices there were.  I know of a HAWK and a

19   RAVEN, and I think an EAGLE as well.

20        Q.   So there could have been three?

21        A.   I don't know.  You'll have to ask the case

22   agents.

23        Q.   What was the extent of your review of the

24   actual recordings and the devices before you came

25   here?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I didn't view any of the devices.
 2        Q.   I was just going to ask you to let me
 3  please try to finish my sentence, because Ms. Bean
 4  here is going to get upset with us if you step over
 5  me a little bit.  Okay?
 6        A.   Okay.
 7        Q.   I'll give as much time as you need to
 8  answer.  I just don't want to get Ms. Bean upset with
 9  us.
10             So you did not review the devices?
11        A.   No, I did not inspect the devices.
12        Q.   Where are these devices?
13        A.   I don't know.
14             THE COURT:  Ms. Sirignano, would this be a
15  good time for us to take our afternoon break?
16             MS. SIRIGNANO:  It would, Your Honor.
17  Thank you.
18             THE COURT:  All right.  We'll be in recess
19  for about 15 minutes.
20             (The Court stood in recess.)
21             THE COURT:  All right.  It looks to me like
22  everybody has got an attorney.  Everybody look around
23  to make sure everybody has got an attorney.
24             All right.  Mr. Adams, you're now here?
25             MR. ADAMS:  I am, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Good afternoon to you,
 2    Mr. Adams.
 3              Ms. Strickland, I think you walked in.
 4    We'll note your appearance.
 5              I've been told that Ms. Fox-Young is not
 6    going to be on the telephone for the rest of the
 7    afternoon.
 8              Is there any other adjustments we need to
 9    make?
10              MR. CASTLE:  Your Honor, this is Jim
11    Castle.  I've been on the phone since the hearing
12    began.
13              THE COURT:  Oh, okay.
14              MR. CASTLE:  I didn't think the Court
15    wanted me to enter my appearance since it wasn't a
16    change from last week.
17              THE COURT:  All right.  Mr. Castle, good
18    afternoon to you.
19              All right.  Mr. Williamson, I'll remind you
20    that you're still under oath.
21              THE WITNESS:  Sure.
22              THE COURT:  Ms. Sirignano, if you wish to
23    cross-examine Mr. Williamson, you may continue.
24              MS. SIRIGNANO:  Thank you, Your Honor.
25              THE COURT:  Ms. Sirignano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   BY MS. SIRIGNANO:
 2        Q.   Agent Williamson, so I believe right before
 3   the break I asked you if you reviewed the devices in
 4   issue before --
 5        A.   No, I did not.
 6        Q.   Okay.  And then I asked you where these
 7   devices are.
 8        A.   I don't know.
 9        Q.   Presumably, they're in the ELSUR storage
10   unit in Albuquerque?
11        A.   You'd have to ask the Albuquerque office.
12        Q.   So you're the supervisory Special Agent for
13   nationwide FBI on covert recording devices; correct?
14        A.   Yes.
15        Q.   So you have a point of contact in each FBI
16   field division on these devices?
17        A.   Yes.
18        Q.   And who is the point of contact for
19   Albuquerque's division that you talk with routinely
20   about your program and these devices?
21        A.   It's a technically trained agent, Special
22   Agent Hugo Nanez.
23        Q.   I'm sorry?  Hugh?
24        A.   Hugo Nanez.
25        Q.   Hugo N-A-N-E-Z?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1           A.   Yes, ma'am.
 2           Q.   So when you were talking with Ms. Jacks
 3      earlier, he would be the technically trained agent
 4      that is in charge of these ELSUR devices maintained
 5      in Albuquerque; correct?
 6           A.   Yes.
 7           Q.   And what's his staff look like, in the
 8      ELSUR unit, or in the technically trained agent unit?
 9           A.   I can't tell you.  I don't know.  You'd
10      have to ask Albuquerque.
11           Q.   You don't have any idea of how many
12      personnel are in the Albuquerque covert recording
13      unit?
14           A.   It's not a covert recording unit.
15           Q.   What is it?
16           A.   They're technically trained agents assigned
17      to the Albuquerque office.
18           Q.   How many are in Albuquerque?
19           A.   I'd have to look it up.
20           Q.   More than five?
21           A.   Maybe.
22           Q.   More than 10?
23           A.   I don't think so.
24           Q.   So somewhere between five and 10
25      technically trained agents in Albuquerque; correct?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I'd have to look it up.

 2        Q.   But you just said it's less than 10, but

 3   more than five, somewhere like that, right?

 4        A.   Probably.

 5        Q.   And then, within this technically trained

 6   agent group, they work with the ELSUR unit; correct?

 7        A.   They do.

 8        Q.   And tell us what an ELSUR unit is.

 9        A.   Where is it?

10        Q.   No.  What it is.

11        A.   It's not a unit, but there are ELSUR

12   operations technicians assigned to Albuquerque whose

13   responsibility it is to receive evidence and enter it

14   into evidentiary storage.

15        Q.   So it's like an evidence clerk, but just

16   for ELSUR-type evidence; correct?

17        A.   They handle all evidence.

18        Q.   Recorded evidence or physical evidence?

19        A.   Again, you'd have to talk specifically to

20   the Albuquerque office.  Because every field office

21   is slightly different.

22        Q.   Slightly different.  But what's the MIOG

23   stand for, M-I-O-G, FBI verbiage?

24        A.   Memory of Investigative Operational

25   Guidelines?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   Correct.  And what is the DIOG?

2        A.   I can't recall off the top of my head right

3    now.  But there was no talk to this, as far as I

4    know, the specific who is in what room, and what they

5    do.

6        Q.   Oh, no, I'm not asking specifically about

7    who is in what room and what they do.  I'm trying to

8    get a general overview.  Since you are the program

9    manager for all technically trained agents that

10   handle the covert recording throughout United States,

11   you can tell us exactly what the MIOG or the DIOG or

12   whatever other policy or procedure document is out

13   there to go over what each technically trained agent

14   and ELSUR clerk has to follow; correct, since you're

15   the supervisor?

16       A.   No.  I don't know all the things that the

17   ELSUR operations techs have to do.  That's not my

18   program.

19       Q.   Okay.  Where would we find the ELSUR

20   technicians' job description, responsibilities, and

21   what they do?

22       A.   What unit in the FBI?

23       Q.   Sure.  Let's start with that?

24       A.   The ELSUR Program Management Unit.

25       Q.   And who is in charge of that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    The Unit Chief is Kris Moxley, Kristen

 2   Moxley.

 3        Q.    And she's --

 4        A.    He is Kristen, K-R-I-S-T-E-N, M-O-X-L-E-Y,

 5   he's the unit chief for the ELSUR program management

 6   unit.

 7        Q.    And is he in Quantico or D.C.?

 8        A.    Quantico.

 9        Q.    Okay.  Thank you.

10              And so we've got this ELSUR program.  Their

11   responsibilities are outlined in the new DIOG or the

12   MIOG or another policy?

13        A.    There is the TIP policy.

14        Q.    Oh.  What's the TIP policy?

15        A.    Technical Investigative Program policy.

16        Q.    When was this written?

17        A.    I can't recall.

18        Q.    Is this a public policy?

19        A.    I don't think so.

20        Q.    So everyone, an ELSUR clerk, or anybody

21   working in the ELSUR unit, would have to abide by the

22   TIP policy; correct?

23        A.    You'd have to ask EPMU.  I don't know.

24        Q.    EPMU is what?

25        A.    ELSUR Program Management Unit.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Okay.  So let's get to your unit.  You're
 2   the Supervisory Special Agent.  Are you the unit
 3   chief?
 4        A.   I'm the acting unit chief.
 5        Q.   Acting unit chief, okay.  Of the covert
 6   recording devices unit?
 7        A.   The audio surveillance unit.
 8        Q.   Audio surveillance unit.  Okay.
 9             And how many technically trained agents in
10   Albuquerque report to you?  Just the one?
11        A.   None.
12        Q.   None.  They report to Albuquerque division?
13        A.   Yes.
14        Q.   And what policy do you abide by in the
15   audio surveillance unit and in each division across
16   the FBI, including Albuquerque, regarding covert
17   recordings?
18        A.   The TIP policy.
19        Q.   The TIP policy.  Do you have a copy of that
20   policy with you here today?
21        A.   No.
22        Q.   Why not?
23        A.   It's something I don't carry around with
24   me, and I was not asked to bring it.  And I don't
25   know if I'd be allowed to show it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Okay.  So since all agents, including
 2    yourself, acting unit chief -- maybe we can talk a
 3    little bit about this policy and standards, because
 4    within the policy are the standards of operating
 5    these devices; correct?
 6        A.   No.
 7        Q.   Where would the standards be?
 8        A.   They are what we follow in accordance with
 9    what, how the devices are used and work.  It's not
10    something we have written down as a standard how to
11    use the devices, because they're used in so many
12    myriads of ways.
13        Q.   I don't understand that answer.
14        A.   When you say how do you use them, I mean we
15    have instruction we give to the technically trained
16    agents.  And there is a syllabus of instructions.
17    And there is user manuals from the vendor.
18        Q.   Okay.  I'm going to start with the user
19    manuals of the vendor.
20             MS. SIRIGNANO:  May I approach, Your Honor?
21             THE COURT:  You may.
22        Q.   Agent, I apologize, but I don't have a hard
23    copy of this reg yet.  What does this look like to
24    you?
25        A.   It looks like a user's manual.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Which user's manual?

 2        A.   I don't know.

 3        Q.   Well, can you read from it, please, sir,

 4   the first page?

 5        A.   USBird HAWK, FALCON, EAGLE8A, model 8 flex

 6   8C audio recorders user's manual, Windows version.

 7        Q.   So looking at this first page -- and feel

 8   free to scroll down, especially down to page 32.

 9   What do you think this purports to be?

10        A.   A user's manual for the devices.

11        Q.   Which devices?

12             MR. BECK:  Your Honor, I'm going to object.

13   It's outside the scope and relevance.  I don't see

14   how this ties back to his testimony on direct.

15             THE COURT:  What are you trying to --

16   explain to me what you're trying to do here, Ms.

17   Sirignano.

18             MS. SIRIGNANO:  Well, Your Honor, I believe

19   the testimony on direct was that the Government

20   didn't want any of this proprietary information

21   regarding the HAWK and the EAGLE, and the -- I can't

22   remember the third device name.  And they didn't want

23   to provide it to the defense and the defense expert

24   because it's proprietary, and it had national

25   security concerns.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              But, as you can see, Judge -- and I'll
 2   offer a hard copy of this one when Ms. Gilbert comes
 3   back and gets me a hard copy.  It's the actual user's
 4   manual of these devices.  And also there is at least
 5   one photograph of one of the devices that is here in
 6   the public record.
 7              Thank you.  Let's do it this way --
 8              THE COURT:  Well, I guess at this point,
 9   Mr. Beck, one of the problems I'm having, I'm trying
10   to figure out what it is they want that they don't
11   have.  So I need to probably give her a little
12   leeway, because I'm not sure what the ballgame is
13   right now.
14              MR. BECK:  Yeah.  And I agree, I'm not
15   either.  I don't know that they asked for a user
16   manual of this device.  And we didn't provide one.
17   So, I guess, if they want to put this in the record,
18   it seems to me this would be a little bit more
19   argument than cross-examination of Special Agent
20   Williamson.
21              THE COURT:  Well, I'm going to allow it,
22   because -- and overrule the objection -- because I
23   guess we could have had argument before we had the
24   witness.  But it may be that the witness has taken
25   care of a lot of concerns of the defendants.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    know.  But anyway, I'll allow it.  Overruled.

2              MS. SIRIGNANO:  And, Judge, I might be able

3    to streamline this thing.  The reason why I think

4    we're going through this exercise is, you know, how

5    can we learn the person can turn these devices on and

6    off, and whether or not someone can actually break

7    into these devices.  And that was the purpose of

8    Ms. Jacks' letter that was filed at Document 1459 on

9    November 20.  Really, that's bottom line here.

10             And I can keep going on until 5:30, as you

11   know.  But I'm happy to streamline this thing, if we

12   can get access to it.  Get -- Mr. Bly is here.  He

13   can take a look at it.  The photograph of it is in

14   the public record, as is the user's manual.  And so

15   I'm having a very difficult time trying to figure out

16   why the CHSs have had access to it, and the defense

17   cannot at this point.

18             THE COURT:  Well, I guess my sort of

19   reaction to everything is that this looks like a

20   fishing expedition.  I'm just not seeing that y'all

21   are pointing out -- the defendants keep pointing out

22   some information, either Brady or Rule 16 or Giglio

23   that they're going to get.  It just seems to me it's

24   sort of general discovery.  So I guess I'm not

25   inclined to go much further than where we are now.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                    1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                            e-mail: info@litsupport.com

```
 1              MS. SIRIGNANO:  I'll proceed, Your Honor.
 2     If you'd like, I can argue about it not being a
 3     fishing expedition.  I could keep going or I can take
 4     some argument now, if you'd like.
 5              THE COURT:  It's your call.  I'm just kind
 6     of telling you where I'm leaning right now.
 7              MS. SIRIGNANO:  I'll proceed, Your Honor.
 8     Thank you.
 9              May I approach?
10              THE COURT:  You may.
11     BY MS. SIRIGNANO:
12         Q.   So Agent, does this reflect the digital PDF
13     that I showed you previously?
14         A.   It looks to be the same, yes.
15         Q.   What did you say it was?
16         A.   It says it's a USBird user's manual.
17         Q.   And the date of it?
18         A.   It says March 2, 2007.
19              MS. SIRIGNANO:  Your Honor, I'd like to
20     move to admit Garcia, Chris, Exhibit B at this time?
21              THE COURT:  Any objection?
22              MR. BECK:  No objection, Your Honor.
23              THE COURT:  All right.  Defendant Chris
24     Garcia's Exhibit B will be admitted into evidence.
25         Q.   And Agent, look at the second page, titled
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    Section 6.  What is that?
 2         A.   Section 6, it says HAWK.  It describes the
 3    HAWK recorders.
 4         Q.   And is that an actual HAWK recorder on the
 5    bottom of the page?
 6         A.   It appears to be, yes.
 7         Q.   Consistent with what the FBI was using in
 8    this case?
 9         A.   No.
10         Q.   It's different?
11         A.   Yes.
12         Q.   How so?
13              MR. BECK:  Objection, Your Honor.  I think
14    this is getting into law enforcement sensitive
15    material that I'm going to object to on that basis.
16    I've got my marching orders.
17              THE COURT:  Let me ask Mr. Williamson a
18    question:  Would you agree with that; that the answer
19    here that Ms. Sirignano is requesting is going to
20    reveal some confidential information?
21              THE WITNESS:  It would be information I'd
22    rather not share, yes, Your Honor.
23              THE COURT:  And, Ms. Sirignano, precisely
24    what are you asking here?
25              MS. SIRIGNANO:  I'm trying to determine
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   between the device in this photograph, and if there

 2   is a difference between the FBI device.  And I could

 3   make the question more specific:  Is that the

 4   configuration of the on and off switch on the device

 5   that was used in this case?

 6              THE COURT:  Is that still confidential

 7   information?

 8              THE WITNESS:  No, I can share that

 9   information.

10              THE COURT:  Okay.  Do you have any problem

11   with that then, Mr. Beck?

12              MR. BECK:  I do, Your Honor.  And I mean,

13   you have his answer, so I probably know where you're

14   going to go on this.  But my understanding is that's

15   the purpose of holding this hearing, because we're

16   looking for what information the defendants need or

17   are entitled to under Rule 16, Brady, or Giglio, and

18   which they don't have provided to them through either

19   the facts or what Agent Williamson has already

20   testified to.  And so certainly it has an on and off

21   device.  It's probative.  We provided that

22   information.  What the on and off button looks like

23   is not helpful to their defense.  It's not Brady,

24   Rule 16, or Giglio.  And it's treading upon law

25   enforcement sensitive information.  So that we're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    having this hearing, I don't think, allows them to
 2    get into the discovery that we're trying to prevent
 3    by having this hearing.
 4              THE COURT:  Well, I'm going to sustain the
 5    objection.  And you can make an argument for that
 6    information when we get to the argument side.
 7              MS. SIRIGNANO:  Thank you, Your Honor.
 8              THE COURT:  Ms. Sirignano.
 9    BY MS. SIRIGNANO:
10         Q.   Agent, can you please identify this third
11    page?
12         A.   It says it's an EAGLE8A and describes an
13    EAGLE8A.
14         Q.   And you testified earlier that the EAGLE8A
15    was used in this FBI case as well; correct?
16         A.   I think there was an EAGLE involved.  I'd
17    have to check with the case agents to make sure.
18         Q.   Was your testimony you thought it was
19    involved, earlier, or it was involved?
20         A.   My understanding, there was one involved.
21         Q.   And is that a picture of the EAGLE8A in
22    Figure 6.2 of this document?
23         A.   Of the type that was used?
24         Q.   No, I didn't ask that question.  I said is
25    this a picture of the EAGLE8A?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         A.    It is a picture of an EAGLE8A, yes.
 2         Q.    Does law enforcement or the FBI
 3   specifically have a different user's manual than the
 4   one I've shown you here today?
 5         A.    That is dated 2007.
 6         Q.    It is.
 7         A.    And that is not a manual that I have or
 8   that we use, that I'm familiar with.  I might have a
 9   copy of it somewhere from a long time ago.
10         Q.    And your user's manual is dated what?
11         A.    I'd have to go back and look and see.
12         Q.    So, ostensibly, there is a later version of
13   the user's manual that I found on the internet?
14         A.    Are there later ones on the internet?
15         Q.    No.  I asked you -- there is a later
16   user's manual for these three devices?
17         A.    Yes.
18         Q.    And you don't know the date of them?
19         A.    No, I do not.
20         Q.    But the technology and the graphics should
21   be somewhat similar; correct?
22         A.    Somewhat similar.  The technology, yes,
23   somewhat similar.
24         Q.    Were you able to review the letter that
25   Ms. Jacks wrote and filed to the prosecutors in this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    case?

 2         A.   No.

 3         Q.   You did not review Document 1459?

 4         A.   I'm not familiar with it.

 5         Q.   What did you review prior to you coming to

 6    testify today?

 7         A.   Specifically, I looked at certain DVDs that

 8    were provided to me, and checked the authenticity of

 9    them.  And I looked very briefly at the motion.  But

10    I didn't understand it because I'm not a lawyer.

11         Q.   Thank you.

12              So those DVDs are the ones that you and Mr.

13    Beck talked about earlier; correct?

14         A.   Yes.

15         Q.   Okay.  So we were provided copies of these

16    recordings.

17              May I approach?

18              THE COURT:  You may.

19         Q.   Agent, I'm providing you what's been marked

20    Garcia, Chris, Exhibit A.  Can you take a look at

21    these screen shots for me.  And I'll ask you a couple

22    of questions.  Do they look familiar to you?

23         A.   I'd have to compare them to the screen

24    shots for the actual DVDs.  They're the same serial

25    numbers.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Are you saying they are the same serial

2  numbers?

3      A.   I remember the serial numbers are matched.

4  But I'd have to actually look at the screen to

5  compare my Bird player to this, to see if they're the

6  same.

7           MS. SIRIGNANO:   Your Honor, may I have a

8  moment?

9           THE COURT:   You may.

10      Q.   Agent, can you tell us what a 1E number is?

11      A.   A 1E number?

12      Q.   Yes.

13      A.   As in evidence?

14      Q.   Yes.

15      A.   I don't deal with evidence much.   It refers

16  to the piece of evidence, I think.

17      Q.   Well, you testified about a 1E56; correct,

18  and a 1E60?

19      A.   A 1D.   I'm sorry, 1D.

20      Q.   1D, as in dog?

21      A.   1D, as in dog, yes.   I have a copy of 1D55,

22  56, 58, and 60 here.

23      Q.   Now, do you know if those numbers were

24  numbers that were produced to the defense in the

25  Government production?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    I don't know.
 2        Q.    And on the top of that exhibit that I just
 3   gave you, in the handwriting, can you see what it
 4   says on the tops of those pages?
 5        A.    DVD 14, DVD 15.
 6        Q.    Correct.  Going all the way to what?
 7        A.    It goes up to 16, 17, 17 page 2, DVD 19,
 8   20, 21, 22, 23, 24, and 24 page 2.
 9        Q.    24 page 2.  And based on that screen shot
10   of the program that you looked at earlier, is the 1D
11   number on the front of those, or anywhere on those
12   documents?
13        A.    No.
14        Q.    So you specifically referred to 1D55, 56,
15   58, and 60.  And I'm going to refer to DVDs 14
16   through 24 page 2.  Is that a yes?
17        A.    I understand.
18        Q.    Yes.
19              MS. SIRIGNANO:  Your Honor, I'd like to the
20   move to admit Chris Garcia, I believe that's Exhibit
21   A.
22              THE COURT:  Any objection?
23              MR. BECK:  No objection, Your Honor.
24              THE COURT:  All right.  Anybody else have
25   an objection?  Not hearing any, Chris Garcia's
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Exhibit A will be admitted into evidence.

2        Q.   Okay.  So you specifically talked about the

3    ELSUR clerk downloading these recordings into the

4    software program; correct?

5        A.   The ELSUR clerks use the USBird software to

6    download the data on the recorder into the original

7    evidence DVD.

8        Q.   And the original evidence CD or DVD?

9        A.   I think it would be a DVD or a CD.  It

10   depends upon how large the file is.  I think DVDs are

11   used because they contain more information.

12       Q.   Okay.  And this was what you consider the

13   original evidence before the recording device is --

14   the data is either deleted or it's wiped clean;

15   correct?

16       A.   The first download from the recorder is the

17   original evidence.

18       Q.   Where is that maintained?

19       A.   It should be maintained in the ELSUR

20   storage room.

21       Q.   And the ELSUR clerk would put together the

22   original CD or DVD depending on the size, and then

23   they create the chain of custody form and the

24   identification bar code for each download?

25       A.   They would; yes, they would.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                          e-mail: info@litsupport.com

1      Q.   And so this piece of electronic or digital

2   evidence, the first download is treated just like a

3   blood sample or a firearm or any piece of physical

4   evidence in terms of maintenance of that original

5   evidence; correct?

6      A.   Yes.

7      Q.   And what policy do these ELSUR clerks use

8   to maintain this evidence?

9      A.   I don't know.

10      Q.   What policy do the technically trained

11   agents use to maintain this evidence?

12      A.   They don't.

13      Q.   They don't.  So I believe your testimony

14   earlier was that the technically trained agents check

15   these devices out; correct?

16      A.   It depends on the field officer.

17      Q.   And in Albuquerque who checks it out?  The

18   technically trained agent or the case agent?

19      A.   I don't know.  You'd have to ask the

20   Albuquerque agents.

21      Q.   So you're saying here today that you don't

22   know if it was Mr. Acee or one of the technically

23   trained agents that checked any of these devices out

24   for this case?

25      A.   That's correct.

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                            1-800-669-9492
                                                            e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1       Q.   And so, presumably, whoever checked out the

2    device would have looked at the device before they

3    checked it out; correct?

4       A.   One would presume.

5       Q.   It's probably part of the policy; correct?

6       A.   People who are going to use the device,

7    before they deploy it, should check in USBird to see,

8    make sure it functions, yes.

9       Q.   Correct, because it's going to be used as

10   evidence one day in trial; correct?

11      A.   Not the USBird.  But it will collect

12   evidence.  To make it work -- make sure it works.

13      Q.   I'm talking about the actual device itself

14   that collects the original evidence.  That evidence

15   would eventually be used in court someday?

16      A.   What the recorder records would.

17      Q.   The original evidence.

18      A.   It was downloaded, yes.

19      Q.   Okay.  So we're on the same page here.

20           So either the case agent or the technically

21   trained agent, presumably, pursuant to the FBI's

22   policy, would look at the device before deploying it?

23      A.   The agents are trained they should check

24   the devices, or somebody should check the devices

25   before they're deploying them.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      Q.   And that's pursuant to the policies that
 2  you were talking about, instructions on how to use
 3  these devices, the syllabus of the instruction, and
 4  the user's manuals; correct?
 5      A.   We teach them in their training how to use
 6  the equipment.  So the syllabi includes that.  The
 7  TIP policy doesn't specifically state it.  It just
 8  says generically who is in charge of the equipment.
 9  It doesn't go into that much detail on the TIP
10  policy.
11      Q.   Okay.  And there is a log that each
12  technically trained agent or case agent would have to
13  sign when they check out a specific device; correct?
14      A.   It would depend upon the field offices and
15  what they're doing.
16      Q.   Yes, but -- either a digital log or a hard
17  copy log, there has to be an inventory of these
18  devices; correct?
19      A.   There is an inventory of the devices,
20  that's correct.
21      Q.   And just like a firearm or any other piece
22  of FBI property, whoever is maintaining these
23  devices, like an ELSUR clerk or a technically trained
24  agent or a unit chief at Quantico, would want to know
25  where their devices are at all times; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      A.   We do the best to know where they are,
2   that's correct.
3      Q.   Do you maintain logs for your devices?
4      A.   Yes.
5      Q.   And does the Los Angeles division maintain
6   logs for their devices?
7      A.   I would presume.
8      Q.   So you'd also presume that Albuquerque
9   would have some kind of log to know where the devices
10  are; correct?
11     A.   I would.
12     Q.   Yes.  Thank you.
13          So who sets the date and time on these
14  devices?
15     A.   It can be anyone who has the USBird
16  software and the device and the computer to do so.
17  It could be a tech agent, an ELSUR operations
18  technician, or a case agent.
19     Q.   And do you know if Mr. Acee here has the
20  ability to get into this software himself?
21     A.   I don't know.
22     Q.   Do you know if he has permission from the
23  ELSUR clerk or the technically trained agent to
24  download or use this original evidence?
25     A.   I don't know.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   So we're presuming that there is a log in

2  Albuquerque to check in and check out a device.

3         Let's talk a little bit about maintenance

4  records, okay.  So intoxilyzers fail, calibration on

5  these devices sometimes fail.  Who maintains the

6  maintenance records of these devices?

7    A.   There is limited quality control records on

8  devices that come through our unit.  And then ADS

9  has, when they produce a product, or they repair it,

10  there is some record.  But that's the only records

11  I'm aware of.

12    Q.   So what you're saying is that each division

13  does not have a record of when a device malfunctions

14  or needs maintenance?

15    A.   I don't think so.

16    Q.   So when does a device come out of

17  circulation with the FBI?

18    A.   When it fails and breaks and they can't fix

19  it, or it's been determined to be obsolete, and it

20  should be decommissioned.

21    Q.   So if could you look at the exhibit I gave

22  you, and look for DVD 20 -- or just 20, I'm sorry.

23  That's the device that you had talked about earlier

24  that had -- you called it a clock fail or a date and

25  time fail; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

88

1       A.   Yes.  The clock battery was dead so the

2   clock battery didn't power the clock function.

3       Q.   Was this device decommissioned based on the

4   failure of the clock after this recording?

5       A.   I don't know.

6       Q.   Who would be able to tell us that?

7       A.   I don't think it would be decommissioned.

8   It would be Albuquerque's technical program.

9       Q.   The technical agent that we talked about

10  earlier?

11      A.   Yes, ma'am.

12      Q.   Hugo Nanez?

13      A.   Yes, ma'am.

14      Q.   And there was some discussion with the Los

15  Angeles electronic operations unit about this

16  specific device?

17      A.   We contacted Los Angeles Division's ELSUR

18  operations technicians to ask them to take the copy

19  of the disc to ADS to see if they could find any more

20  data that we couldn't see.

21      Q.   So you presented them with a copy, not the

22  actual device; correct?

23      A.   A copy of the evidence, yes.

24      Q.   So why was a copy of the original evidence

25  made, and not the actual recording and the device



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1     that made the digital evidence, why wasn't that given
2     to the Los Angeles division?
3          A.   There was no need.
4          Q.   Why?
5          A.   Because it was identical to the evidence;
6     the copy is identical to the evidence.
7          Q.   Well, the evidence itself you said you
8     verified.  But it's just a copy --
9          A.   I compared the copy, yes.
10         Q.   I'm sorry, if you could just let me finish
11    my question.  You verified a copy; correct?
12         A.   Yes.
13         Q.   Okay.  But the actual data itself regarding
14    the metadata, the date, the time, the hours, the
15    seconds, that could have been on the original
16    recording device; correct?
17         A.   Not based on what I'm seeing in this CD,
18    this CD.
19         Q.   But you don't know because you gave them a
20    copy.  You don't have the original; correct?
21         A.   I never had the original.
22         Q.   Who had the original?
23         A.   Albuquerque.
24         Q.   Who in Albuquerque?
25         A.   I assume the ELSUR operations unit techs.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         Q.    You don't know?
 2         A.    No.
 3         Q.    And you don't know who checked it out to
 4    verify that the battery was working when it was
 5    checked out; correct?
 6         A.    Are you talking about the recorder now?
 7         Q.    Yes.
 8         A.    No, I don't know.
 9         Q.    You don't know.  So did you work in any
10    field office before you became a Supervisory Special
11    Agent in Quantico?
12         A.    I did.
13         Q.    You were a case agent?
14         A.    Yes.
15         Q.    Which division?
16         A.    Baltimore.
17         Q.    Baltimore.  Okay.  So you understand how
18    important, when someone says something to a
19    government informant, that it would be prudent to
20    know the exact date and time of a statement; correct?
21         A.    Yes.
22         Q.    And especially someone like my client,
23    Mr. Garcia, if he had one of his statements allegedly
24    captured by a government informant, when that
25    statement was made would be very important in a
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    conspiracy case; correct?

2         A.   Yes.

3         Q.   So can you please tell us, Agent, why that

4    original device was not sent back to Quantico or to

5    ADS to determine exactly that metadata, which is so

6    importantly needed in this case?

7         A.   We did send a copy of the evidence to ADA,

8    and they could not extract the metadata.

9         Q.   I'm not talking about a copy.  I'm talking

10   about an original piece of evidence or the actual

11   HAWK or the FALCON?

12        A.   The HAWK wouldn't contain it anymore.  It

13   was deleted.  And we know that it was the battery

14   that didn't work.  So we know it's a battery failure

15   that caused it from the CD that we're seeing, the

16   DVD.  And we sent a copy of that to ADS, and they

17   confirmed it was a battery failure.  And that's why

18   there is no date and time.

19        Q.   And who at ADS confirmed the battery

20   failure?

21        A.   I don't know.

22        Q.   But you have an email with that

23   information; correct?

24        A.   Yes.

25        Q.   Is that something that you could please
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  produce to the Government and the Los Angeles

2  technician, so it could be given to the defense

3  counsel?

4       A.   Yes.

5       Q.   Thank you.

6            Okay.  Let's talk a little bit about

7  teaching, and teaching technically trained agents and

8  case agents.

9            So, when I was back in the FBI, we used to

10  have forms for everything.  And so I'd like to know

11  if there was a form that agents fill out when they

12  provide a recording device to a cooperating witness

13  or a cooperator?

14       A.   You'd have to ask the case agents.  I don't

15  know what they did.

16       Q.   I'm not asking you about what they did.

17  I'm asking you if a form exists?

18       A.   Do you mean a form in which you get consent

19  from someone?

20       Q.   Yes.

21       A.   There are consent forms that are used, yes.

22       Q.   What kind of consent form, Agent?  Tell us

23  a little bit about it.

24       A.   I can't recall off the top of my head all

25  the details about it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   I'm not asking you for all the details.

2   I'm just asking you for a summary of what the form

3   says.  As the unit chief, you would be responsible

4   for teaching every division about these forms;

5   correct?

6      A.   No.

7      Q.   You wouldn't?

8      A.   No.

9      Q.   Who would then?

10      A.   The people who run the training of those

11   agents who run those programs involving those

12   investigative matters.  I maintain the equipment.

13      Q.   You maintain the equipment, but don't you

14   also have any buy-in on how the equipment is

15   maintained, how the equipment is used, and the

16   policies the unit chiefs out of Quantico and

17   headquarters routinely develop these kinds of lesson

18   plans and syllabi, correct?

19      A.   No.

20      Q.   They don't.  Okay.

21           Well, so tell us a little bit about this

22   consent form.  It's, arguably, a form between the

23   agent and whoever is using the device, that they

24   consent to the use of this recording device; correct?

25           MR. BECK:  Objection, compound, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  Overruled.
 2                MS. SIRIGNANO:  I'm sorry, Your Honor.
 3                THE COURT:  Overruled.
 4        A.   So you'd have to ask the case agent what he
 5   did.  I don't know.
 6        Q.   No, I'm not asking you about what the case
 7   agent did or didn't do.  We'll get a chance with him
 8   later.  But I'm asking you what the consent form is
 9   all about.
10        A.   You need to have consent in most cases to
11   do a covert recording.  So you have to get consent of
12   the person who is carrying the recorder.
13        Q.   Consent of the person who is --
14        A.   Going to carry the recorder.
15        Q.   -- who is going to carry the recorder.
16             Now, as part of that consent form there is
17   also an admonishment, obligations on how to use it;
18   correct?  I'm asking about the form.
19        A.   You're asking about the form?
20        Q.   Yes.
21        A.   I can't recall.
22        Q.   So, as part of your policy in your unit,
23   and in all of the FBI divisions, isn't it basic agent
24   training that whenever an informant or cooperator is
25   given something, they have to sign for it, like money
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    or a recording device?

2        A.    In terms of filling out a form, getting

3    consent to use -- to make the recording, yes.

4        Q.    And there are certain guidelines on how

5    recordings should be made; correct?

6        A.    Guidelines meaning written guidelines?

7        Q.    Sure.  Or oral guidelines?

8        A.    You would give oral instructions to a

9    source of how to -- what to do with a device.

10       Q.    Okay.  And based on your experience --

11   maybe that was done in this case; maybe it wasn't --

12   what kind of oral guidelines does a case agent

13   generally give to a cooperator when they're given one

14   of these devices?

15       A.    I don't know.

16       Q.    Generally speaking, and as the head of this

17   unit, what are the general guidelines?

18       A.    It depends upon the scenario in which the

19   device is being used.

20       Q.    Okay.  So let's talk about a scenario in a

21   correctional facility setting.  The device is covert.

22   Obviously, there is an on and off switch.  Generally

23   speaking, based on your training and experience, what

24   kind of admonition or advice would a case agent give

25   this person?

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                            1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

```
 1            MR. BECK:  Your Honor, I'm going to object
 2   to the relevance.  I think we're getting pretty far
 3   afield of Agent Williamson's role in this case and
 4   expertise.
 5            THE COURT:  I'm inclined to agree.
 6   Sustained.
 7       Q.   Agent, do all your trainings and your
 8   syllabi have an outline of how these devices should
 9   be deployed when --
10       A.   No.
11       Q.   -- when -- in -- okay, let me rephrase the
12   question then.
13            So how does a case agent know how to deploy
14   these devices, if the training and the policies don't
15   have a standard as to how to use them?
16       A.   The expertise -- the TTA and their
17   expertise.
18       Q.   So the TTA is involved in each deployment
19   then?
20       A.   No.
21       Q.   So I'll restate the question then.  How
22   would a case agent know how to deploy these devices,
23   if it's not in the training, it's not in the policy,
24   and the TTA is not present with them?
25       A.   You'd have to use your ingenuity and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    determine a way to do it.
 2              MS. SIRIGNANO:  Your Honor, may I have a
 3    moment?
 4              THE COURT:  You may.
 5              MS. SIRIGNANO:  Pass the witness, Your
 6    Honor.
 7              THE COURT:  Thank you, Ms. Sirignano.
 8              Mr. Lowry, were you up next?
 9              MR. LOWRY:  Yes, Your Honor.  Thank you.
10              THE COURT:  Mr. Lowry.
11                         EXAMINATION
12    BY MR. LOWRY:
13         Q.   Good afternoon, Agent Williamson.
14         A.   Good afternoon, sir.
15         Q.   I want to back up a little bit and just
16    talk about the mechanics of this device.  You've
17    gotten into a lot of technical details about the
18    operation of the program.  But I really want to talk
19    about the mechanics of the particular devices.
20              There is a lot of conversation in this
21    testimony you just had about -- well, describing the
22    evidence at play in this case.  But it's fair to say
23    everything we've looked at today in these charts,
24    they're all copies of the original evidence; isn't
25    that fair?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.    Yes.
 2          Q.    And the original evidence was destroyed
 3   when the device was wiped clean?
 4          A.    No.
 5          Q.    Why do you say that?
 6          A.    The original evidence is the first download
 7   from the device when it's transferred to an
 8   evidentiary disc.  Because that's when the hashing
 9   authentication is created from the SHA256.
10          Q.    Okay.  But that download is a copy of what
11   was on the device?
12          A.    It's what was on the device with the
13   authentication hashing included.
14          Q.    And who validated this -- what you just
15   described as authentication hashing?
16          A.    When you first -- the first download from
17   the device, after you make a download, there is a
18   verify button.  You click "verify."  And it verifies
19   the hash calculation.
20          Q.    That's a black box technology that ADS
21   developed?
22          A.    Yes.
23          Q.    So you're taking ADS at its word that
24   that's a mirror copy of what was originally on the
25   device?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes, sir.

 2        Q.    My question to you is:  Who validated their

 3   proprietary software so that FBI could be confident

 4   that that copy is a true copy of the original?

 5        A.    We tested the devices to make sure they

 6   actually performed as designed.  You actually have an

 7   authentic recording, and you listen to them, and say,

 8   yeah, that's an authentic recording.

 9        Q.    But programs like NIST are designed to

10   create validation programs to test computer

11   algorithms; correct?

12        A.    I'm not familiar with NIST function or role

13   in that regard.

14        Q.    But are you aware of FTK reports?

15        A.    No.

16        Q.    No?

17        A.    No.

18        Q.    You don't work with other computer forensic

19   technology?

20        A.    No, I do not.

21        Q.    Just ELSUR devices?

22        A.    The specific devices that are part of

23   technical investigative program are the ones I'm

24   familiar with.

25        Q.    Are you aware of this ADS proprietary
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    software ever being validated by a third party?

2        A.    No.

3        Q.    So you're relying completely on their word

4    that it works?

5        A.    I was not in the FBI or onboard when we

6    first initiated this contract with ADS, so I can't

7    speak to what happened when it first occurred.

8        Q.    Because when -- earlier on direct with the

9    Government you were talking about comparing the hash

10   values, and you downloaded your own SHA256 program to

11   compare the hash values to what was on the evidence

12   DVDs that were provided; correct?

13       A.    Yes.

14       Q.    But it's fair to say you're comparing hash

15   values of a copy to a hash value of a copy?

16       A.    I'm running a hash against the files that

17   contain the recordings.  So I'm comparing a new hash

18   calculation made on the original, on those sessions,

19   on those audio recordings.

20       Q.    But it's not the original; it's what was

21   downloaded?

22       A.    It's a copy of the original that's in the

23   ELSUR storage facility in Albuquerque.

24       Q.    And I guess what I'm trying to get at is --

25   I mean, let's back up and ditch the computer lexicon

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    for a second.

 2              If we pretend the original recording was

 3    like a piece of fine art, like the Mona Lisa, and

 4    it's locked up in a secure room.  What ADS is telling

 5    you is we can send a master artist in there to make a

 6    copy of that and bring it out of that secure room,

 7    and put it on the table for you use; isn't that what

 8    they're telling you?

 9         A.   Meaning what's transmitted down to

10    download?

11         Q.   Correct.

12         A.   Yes.

13         Q.   And we're going to keep this safe.  We're

14    going to make a copy.  We're going to bring it out

15    for you to use; correct?

16         A.   Yes.

17         Q.   And then we'll make a copy of that copy and

18    hand it all around the courtroom, right?

19         A.   Well, the copy is given to appropriate

20    personnel, correct.

21         Q.   Fair enough.  Appropriate personnel.

22              So when would you're doing your hash value

23    comparison, you're comparing a copy that Mr. Beck may

24    have to the copy that I may have in discovery?

25         A.   Yes, I can run a hash calculation on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    copy you have or the copy that Mr. Beck has, any of
 2    those.
 3         Q.   And the original that's in the locked
 4    vault, that's been dispensed with?
 5         A.   We can run a hash calculation on that, too.
 6         Q.   How?  If the ELSUR device has been wiped
 7    clean?
 8         A.   No, the original evidence is sitting in a
 9    DVD in the ELSUR storage room.
10         Q.   I don't want to go around the circle too
11    many times.  But that was the download of the
12    original?
13         A.   We consider that the original evidence.
14         Q.   You consider that the original evidence?
15         A.   Yes.
16         Q.   And that's based on what ADS tells you?
17         A.   There is no way to get onto an ADS recorder
18    and listen to it and hear what's on it without
19    downloading it.
20         Q.   And, again, you're taking ADS at its word
21    that that's a perfect copy of what was there?
22         A.   Yes.  And through experience.
23         Q.   I want to talk to you about -- I think what
24    Ms. Sirignano handed you is a Chris Garcia exhibit
25    with the spreadsheets on there?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          A.   Yes, sir.
2          Q.   Well, first, let me back up.  So let's talk
3     about this actual device, if I can.  You mentioned on
4     direct that there is an on/off switch; correct?
5          A.   Yes.
6          Q.   And that's for the person who has been
7     instructed to handle this device to activate?
8          A.   Ideally, yes.
9          Q.   Is there a way this device could
10    accidentally turn off?
11         A.   If you could accidentally hit the switch
12    and turn it on or turn it off by accident, yes.
13         Q.   Is there any kind of way somebody handling
14    the device would know that it was on?
15         A.   I'm sorry.  Say that again?
16         Q.   Sure.  Is there any way the person actually
17    using the device would know that it is on?
18         A.   If they were instructed what to look for,
19    they could see a light that indicates a recording is
20    going on.
21         Q.   That is a light that turns green if it's
22    on?
23         A.   It flashes when recording is going on.
24         Q.   So they would be able to see it flash?
25         A.   If they knew to look for it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   So when the device is turned on -- I

2  believe you said on direct that when you turn it on

3  it energizes the microphone?

4    A.   Correct.

5    Q.   How long does that take to energize the

6  microphone from the time you push the on button?

7    A.   My understanding is for audio devices it is

8  practically instantaneously.

9    Q.   So instantaneous, in your mind?

10    A.   As fast as electricity powers up the

11  transducers.

12    Q.   Okay.  So if the people that were handling

13  this case in the field were told it took ten seconds

14  to activate the microphone, they would have been

15  misinformed?

16    A.   With the audio/video, if video is involved

17  there can be a delay if the camera is activated.  It

18  can be a correct instruction.  It depends upon the

19  device.

20    Q.   But if it was just a device in audio only

21  mode, it would only be -- it would be instantaneous,

22  if I understand you correctly?

23    A.   It would be.  But I think people might

24  still hear the delay instruction.

25    Q.   I believe, Agent Williamson, you have

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



```
 1    this -- we've been provided this in a manner that is
 2    labeled DVD 15.  Can you turn to that real quickly?
 3              MS. BHALLA:  Excuse me, Your Honor.  Can
 4    you get this one turned on?  I'll just move over
 5    here, Your Honor.
 6              THE COURT:  We'll have to get IT up here.
 7    But I think everybody has positioned themselves so
 8    they can see it on some screen.  So let's go ahead.
 9    BY MR. LOWRY:
10        Q.   Agent Williamson, so if I understand your
11    testimony correctly, this would be a single download
12    from, in this case, I guess a RAVEN2A device?
13        A.   Yes.
14        Q.   Would you do me a favor:  Could you tell me
15    the time above the pen?
16        A.   On line 6?
17        Q.   Correct.  So how much recording time would
18    we have there, from 1 through 6?
19        A.   The total number lengths of these together?
20        Q.   Correct.
21        A.   It's going to take me a while to add those
22    up.  I'm not that good at math without a pencil.
23        Q.   Just give me an approximation, if you will.
24    Take your time.  You can add them up.
25        A.   Over 53 minutes, if I'm adding close to it,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is the total combined of the length between 1 and 6,

 2    of the total, if you add all those durations up.

 3         Q.   So you have less than 55 minutes; is that

 4    fair?

 5         A.   Yes.

 6         Q.   Why would the person operating this device

 7    tell the FBI handler that they had recorded five to

 8    six hours of video, if we can only see less than 55

 9    minutes of video -- I mean audio -- pardon me.  I

10    meant audio throughout that.

11         A.   I don't know.

12         Q.   Okay.  The person actually handling the

13    device knows when they turned it on; correct?

14         A.   Unless they turned it off by mistake.

15         Q.   But if they turned it off by mistake, they

16    wouldn't see the lights flashing?

17         A.   If they knew to look for it.

18         Q.   Are these individuals handling the devices

19    instructed on how to cut it on or cut it off?

20         A.   I don't know what they were instructed.

21         Q.   Should they have been instructed how to cut

22    it on and cut it off?

23         A.   One would think you'd need to know that to

24    deploy it.

25         Q.   So if you think that person needed to know
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    that to deploy it, then that person thought that they
2    deployed it for five or six hours, do you have any
3    reason to think -- well, why would we only see less
4    than 55 minutes?
5         A.   I don't know.
6         Q.   And I wanted to bring your attention to --
7    I'm going to go over this briefly, because I'm not
8    quite sure I understood it earlier.
9              There is a green flag.  You can't tell on
10   this copy because it's a black and white copy.  But
11   this green flag on line 21 -- and feel free to pull
12   it up on your digital device.
13        A.   No.  I would agree, it's a green flag,
14   given that the end time is 23:25 hours and 52 seconds
15   and the start time is the same for the next session.
16        Q.   And I'm still a little confused.  Why would
17   that recording 21 click off at 4 minutes and 45
18   seconds, when you look at DVD 17 that's part of that
19   same exhibit, and all of these are green flags, and
20   you see the run time is typically over an hour on DVD
21   17?
22        A.   I don't know.
23        Q.   So if I understand the green flag
24   correctly, that's for when the device senses it's
25   going to be a lengthy recording?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   It's supposed to create a new session when

2   it detects that the amount of data exceeds the amount

3   that can fit onto an evidentiary disc.

4      Q.   Okay.  So I mean, I'm taking it that the

5   device, while it's a highly technical device is not

6   clairvoyant, it can't predict the future; am I

7   correct?

8      A.   Yes.

9      Q.   So what's the data limit that would cause

10  DVD 15 line 21 to cut off at four minutes, but on DVD

11  17 you have run times of over two hours?

12     A.   I don't know.

13     Q.   As the national leader, I assume you're

14  assigned to understanding how the ADS program works

15  with their proprietary software?

16     A.   I don't know how the proprietary software

17  works.  That's proprietary.

18     Q.   Is there a data limit in kilobytes or

19  megabytes or gigabytes that you have to reach before

20  you hit a green flag and it terminates?

21     A.   My understanding, it changes from recorder

22  to recorder.  In order to make the assessment you're

23  asking, I'd have to actually get the actual recorder

24  and have ADS take a look at it and give us an answer.

25     Q.   But on DVD 15 and DVD 17, we're both

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    talking about a RAVEN2A device; correct?

2        A.   Yes.

3        Q.   And as we sit here before this Court, you

4    can't tell us why one would transition at a little

5    under 5 minutes and the other would transition after

6    two hours?

7        A.   Assuming it worked according to the way

8    it's supposed to work, it's based on data.  So the

9    time involved doesn't reflect data.  Do you

10   understand what I'm saying?

11       Q.   No.  Help me out there.

12       A.   You could have a recorder going on for an

13   hour, and it be quiet, and there is very little data

14   hitting the microphone transducers, so there is very

15   little data being compiled on the recorder.  Or you

16   can be in a noisy environment, having a lot of data

17   hitting the microphone and recording a lot of data.

18       Q.   How do you measure that type of data that's

19   hitting I believe -- what did you say?  The

20   transducer?

21       A.   The microphone has a device that takes the

22   sound and converts it the electrical impulses into a

23   transducer.  I don't know, to answer your question.

24       Q.   Just another -- this is DVD 20 out of that

25   same series of this exhibit.  And would you agree

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    with me that if we look down at line 13, we have a

2    red flag at line 13, which I've highlighted here?

3         A.   I would have to look on my screen to see if

4    it's red.

5         Q.   Absolutely.  Help yourself.

6         A.   Yes, line 13 is a red flag.

7         Q.   You explained to this Court why, at line 13

8    and the red flag for everybody in the room means that

9    it's a low battery?

10        A.   Correct.

11        Q.   And it means that that recording at the end

12   of line 13 ended with a low battery?

13        A.   That's correct.

14        Q.   Can you explain to us then why -- how the

15   battery would have been recharged through lines 14

16   through 23?

17        A.   It wasn't recharged.

18        Q.   That's my point.  If we have a low battery

19   at line 13, and the device has not been recharged,

20   why don't we have the red flag throughout rest of it?

21        A.   Because you don't recharge batteries in

22   RAVEN2A.  You replace them.

23        Q.   Okay.  So do you think the batteries were

24   replaced?

25        A.   Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   And that would have been by the user?

2      A.   I don't know who replaced it, but someone

3   replaced it.

4      Q.   And I would assume that you don't know what

5   the users in this case, who was in charge of

6   replacing batteries?

7      A.   That's correct.

8      Q.   If I understood your affidavit correctly,

9   there are two types of batteries in the devices, a

10  lithium battery and maybe a regular battery?

11     A.   Well, most of the batteries used are moving

12  to lithium, so both would probably be lithium

13  battery.

14     Q.   Okay.  A lithium battery for the device and

15  a lithium battery for the clock?

16     A.   Probably, yes.

17     Q.   And you're saying "probably" --

18     A.   You can buy nonlithium batteries that will

19  configure and fit into those devices.  So you

20  wouldn't be required to use a lithium battery.  But

21  there are generic batteries that are sold

22  commercially, like AAA batteries, AA batteries,

23  things like that.

24     Q.   Agent Williamson, back to DVD 15 briefly.

25  Can you sit here looking at this spreadsheet and tell

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    us each time a session ended whether that was

 2    intentional or accidental?

 3         A.   No.

 4              MR. LOWRY:  No further questions, Your

 5    Honor.

 6              THE COURT:  Thank you, Mr. Lowry.

 7              Any other defendant have questions of Mr.

 8    Williamson?

 9              All right.  Mr. Beck, do you have redirect

10    of Mr. Williamson?

11              MR. BECK:  No, Your Honor.

12              THE COURT:  All right.  Mr. Williamson, you

13    may step down.  Is there any reason that Mr.

14    Williamson cannot be excused from the proceedings?

15              Mr. Beck, can he be excused?

16              MR. BECK:  Yes, he may, Your Honor.

17              MS. SIRIGNANO:  No, Your Honor.

18              THE COURT:  All right.  Not hearing anybody

19    say that he can't be excused, you're excused from the

20    proceedings.  Thank you for your testimony.

21              THE WITNESS:  Thank you, Your Honor.

22              THE COURT:  All right.  Mr. Beck, does the

23    Government have further witnesses or evidence it

24    wishes to present?

25              MR. BECK:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Do the defendants
 2     wish to present any evidence?
 3              MS. SIRIGNANO:  No, Your Honor.
 4              THE COURT:  All right.  Mr. Beck, if you
 5     wish to argue in support of your motion.
 6              MR. BECK:  So, Your Honor, with today's
 7     testimony, the defendants have the information to
 8     which they would be entitled under Rule 16, under
 9     Brady, under Giglio, and more information than that.
10              I think the only information that they
11     don't have at this point are sort of the dimensions
12     of the recorder and to be able to inspect the
13     recorder, which --
14              THE COURT:  You know, this is probably a
15     question that's more appropriate to the defendants,
16     but do you understand what it is they're trying to
17     get from that remaining information that you're
18     withholding?
19              MR. BECK:  I think so.  I think what they
20     were intending to look at -- I mean, we can trace
21     back and see how this was a train wreck on our
22     behalf, the United States' behalf.  We did not do a
23     good job of educating ourselves and the Court in what
24     happened here.  I think what they were looking for
25     was the metadata to understand.  First of all, we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    didn't know there was metadata.  Then we found out
 2    there was metadata.
 3            And I think what the defendants were
 4    looking for in accessing the devices is -- I think
 5    what Ms. Jacks was explaining to the Court in
 6    November, early November hearings, was that she
 7    wanted her forensic computer expert or a forensic
 8    expert to analyze these devices and go back and see
 9    whether there is any trace metadata on these devices
10    when they're deleted.  There is not.  And that is
11    what the hash values and the procedures in place tell
12    us, is that, as he testified, once you download it,
13    the devices are wiped clean.  So once you have a
14    disc, you have everything that was off of that.  That
15    is the evidence.  And the discs are wiped clean.
16            And there is a reason for that.  If we go
17    back to what Mr. Lowry was saying here about the Mona
18    Lisa, that Mona Lisa hangs in a vault or a chamber
19    somewhere, and all we see is the picture.  If we're
20    having a court hearing or a trial that involves the
21    Mona Lisa, the Court doesn't require the Mona Lisa to
22    be produced in court.  A picture that is
23    authenticated by saying that's how it appeared that
24    day, that's how it looks to me, is sufficient.  And
25    the reason why, is because you could have someone
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    come in, and you could look at the Mona Lisa, and

2    someone who is educated on the Mona Lisa could say:

3    That's now exactly how da Vinci painted that smile;

4    that is not an authentic reproduction of what the

5    Mona Lisa is.

6            You can do that same thing here through the

7    hash values.  So we're not taking ADS's word for it.

8    We're not taking his word for it.  There is a

9    procedure in place, with hash values, that makes sure

10   what was on there is authentically reproduced and not

11   modified in any way.

12           And I would -- and, as an example, I would

13   show the Court the modifications to Rule 902 for

14   authentication that came into effect at the beginning

15   of this month, December 1st.  And you can now have

16   self-authenticating evidence, certified data copied

17   from an electronic device, storage medium, or file.

18   I expect that the Court will see a certification like

19   this in this case that gives some of the same data

20   here.  And so what it allows for is you have a

21   certificate of a qualified person that complies with

22   the certification requirements of 902 (11) or (12).

23           So, in this case, what would happen is an

24   expert who has verified the data in the exact same

25   way that Special Agent Williamson did, writes out in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    a certificate all of the things by affidavit that he

2    did to certify this.  And so, again, if we're looking

3    here at 902(14), that's Rule 902 evidence that is

4    self-authenticating.

5            And if we go here, this is the committee

6    commentary to the 2017 amendments.  Paragraph 14, the

7    second paragraph in there talks about authentication

8    for hash value; that the Committee on the Federal

9    Rules of Evidence, that the courts recognize that the

10   process that ADS put in place to authenticate the

11   data that was on the ELSUR, or in this case HAWK and

12   other ADS storage devices, the way in which the hash

13   values were obtained, and the way in which they were

14   assigned authenticates the evidence as same as the

15   original.

16           And so that's why the defendant have all

17   the information that may be helpful or may be useful

18   to them, is through this hashing that was contained

19   on the evidentiary DVD that was copied, and then

20   provided to the defendants to look at their DVDs,

21   provides them everything they wanted in the same form

22   as the original.

23           So the way in which an expert on da Vinci

24   would come in and say that smile is different, is the

25   same way in which this hash value, if those files

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                          1-800-669-9492
PROFESSIONAL COURT                                     e-mail: info@litsupport.com
REPORTING SERVICE

BEAN & ASSOCIATES, Inc.

1    were ever modified -- which they can't be -- but if

2    they ever were, the hash value that Special Agent

3    Williamson showed to the Court there, the long string

4    of numbers where we looked at the first and the

5    second, they would be completely different from each

6    other.  And that's how we can authenticate digital

7    evidence in court.  We look at the hash values that

8    were assigned when that recorder was downloaded, the

9    hash values on the evidentiary DVD, the hash values

10   on the copies of the DVDs that he had today and that

11   the defendants have contain the exact same hash value

12   showing that it is identical to the original.

13          Now, so that the three DVDs that we played

14   at the end are the three DVDs in which the metadata,

15   as I said -- and as Special Agent Williamson pointed

16   out -- the metadata does not match up with the real

17   world.

18          And so in the case of the DVD with the 1899

19   dates, the battery died, and so all the date

20   contained in those files is authentic; it's exactly

21   what was on the device.  It just doesn't -- it

22   just -- when you play it through the player, it

23   doesn't correspond with real dates and times.  But it

24   is the same exact data that was created when the user

25   hit the on and off button.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          The same thing for the second and third,
2     although a little bit different, the third and fourth
3     that I played.  Those, there was something in the
4     process so that the internal computer for the devices
5     did not match up with the actual dates and times.
6     And the way in which that was discovered is by
7     looking at either when these devices were deployed
8     out into the field or when these conversations took
9     place accordingly, and that there was no recorder in
10    the jails during those dates or the source recording
11    wasn't placed next to the person who he was recording
12    in those cases.  So in that case, again, even though
13    that data is inaccurate in terms of real world data,
14    nothing would be gained, even if that information
15    were still on the device, which it weren't, because
16    that's just the coding.
17         If -- there is no way to manipulate the
18    date, as Special Agent Williamson testified, there is
19    no rewind button.  There is no way to manipulate this
20    data.  But if you did, again, the hash values would
21    be different, and it would not -- the proprietary ADS
22    software wouldn't read the information.
23         So I think that's why I was hoping that
24    Special Agent Williamson's testimony would make
25    clear -- and it think that it did -- that no helpful

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    or useful information will be gained from inspecting

2    the devices, from allowing access to the devices.

3    The hash values are in place, they are an accepted

4    method of authenticating the original, and there is a

5    reason why.

6              So if we look at the law, the same law

7    enforcement privilege applies as would apply in

8    Roviaro.  And what I looked at in the case law and

9    what they looked for is that basically there is a

10   compelling need to have access to this law

11   enforcement sensitive information.  And the

12   defendants cannot establish they have a compelling

13   need for the devices or for access to the devices,

14   because nothing would be gained from accessing the

15   devices, nothing helpful.

16             THE COURT:  All right.  Anything further,

17   Mr. Beck?

18             MR. BECK:  Not at this time, Your Honor.

19             THE COURT:  Thank you, Mr. Beck.

20             Who wants to take the lead here?  I'll kind

21   of go in the order of the examination.  Do you want

22   Mr. Lowry to go first?

23             MS. JACKS:  I think Mr. Lowry would like to

24   go first, if the Court doesn't mind.

25             THE COURT:  All right.  Mr. Lowry.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1         MR. LOWRY:  If the Court would indulge me,

2    Your Honor.  I just wanted to speak briefly.  And I

3    understand the Court's concern is:  What do we need

4    that we don't have, if I understood the Court

5    correctly.

6         And I think the very last question that

7    Agent Williamson answered is exactly why, on behalf

8    Mr. Baca, we would like to examine this device.  The

9    real issue here is, for Defendant Baca, is how easy

10   was it for Mr. Duran to manipulate this device?

11        Mr. Duran tells Mr. Acee in the text that

12   he provided five to six hours of his recordings of

13   Mr. Baca.  But, as you heard Mr. Williamson say, that

14   the DVD provided has less than 55 minutes.  There is

15   an open question that you pose, is there no way to

16   tell from this metadata that was provided, if the

17   recording sessions were inadvertently cut off or

18   intentionally cut off.  And I didn't get the sense

19   from him how easy it was to inadvertently switch on

20   or off the device, which is, frankly, why we want to

21   see it.  It's less about the metadata, and for Team

22   Baca, I would say, it's almost not about the

23   metadata, but it's about how easy it is to manipulate

24   this device.  And when I say "manipulate" I mean turn

25   it on or off.  And it's really critical for us to

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    know is it turned off so easily that it happens, you
 2    know, just by happenstance?
 3            So there is a whole bunch of actually
 4    technical, mechanical questions that one would want
 5    to get from looking at the device:  Like how much
 6    pressure do you have to apply to the button to
 7    actually turn it off?  How bright or luminescent is
 8    this light that's on flashing when your device is on
 9    compared to when it's off?  Whether anybody normally
10    using this device knows it's on, knows it's off?
11    Especially somebody, as in this case who is given
12    this device and tasked with recording other
13    individuals in the prison.  You would think that they
14    would be acutely aware of whether the device was on
15    or not.  Because that, in the words of Eric Duran,
16    was his quote "mission," was to record Mr. Baca.
17            So I find it a little bit disconcerting
18    that the Special Agent testified that he didn't know
19    whether it was an intentional log off or not.  And
20    that's something we need to explore.  And the only
21    way we can explore that is to examine the device.  So
22    I would say that's the primary reason we would like
23    to look at it, Your Honor, so we could understand
24    that fully.  It's a critical part of our defense,
25    because there is a big difference between five or six
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    hours of recordings and less than 55 minutes of

2    recording.

3            But moving to the metadata -- and I'm going

4    to have to research this authentication element under

5    federal Rule 902 -- but it concerns me a great deal

6    that we're just taking ADS's word at face value.

7            Mr. Beck took me up on the Mona Lisa

8    example, but let me play with that for a second.  We

9    all know what Mona Lisa looks like, but let's say we

10   have a Jason Pollack painting locked up in the vault,

11   and I'm coming out and saying, Hey, well, here's the

12   one I have in the vault.  If nobody really knows

13   what's in the vault, and we're all talking about

14   copies, that's the question.

15           And it bothers me a great deal that this

16   process, this proprietary software has never been

17   vetted or validated by any independent agency, and

18   we're taking it at face value that it is what it

19   purports to be.

20           And I'm sure the Government's confident and

21   at ease with a certification of authenticity.  But my

22   question is a little bit broader than that, and

23   perhaps, delves more on a real technical validation

24   issue maybe under Daubert.  But we weren't aware that

25   there is a Daubert issue until we saw this affidavit.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1        But I'm familiar with DNA evidence and

2   those kind of things, and those types of black box

3   technologies, whether you're talking about

4   breathalyzers or electropherograms or the STRmix

5   data, which you also hear about in this case later

6   on.  The people that develop these types of software

7   open it up for the FBI, and even independent

8   organizations to view it and validate it, to make

9   sure it is what it purports to be, a valid technique

10  to record and then download correctly.

11       And so, again, for Mr. Baca, I'm not saying

12  metadata is of no concern whatsoever, but our primary

13  concern is really about the mechanics of this device:

14  How does it cut on?  How does it cut off?  And is it

15  accidental or not?  And I think that's a critical

16  part of the case.  And I think that's something we

17  don't get from looking at the metadata, and

18  unfortunately, it not even something we get from

19  looking at a picture of a device.  You'd actually

20  have to handle it to understand how the buttons

21  function and how it cuts on and off, and whether it

22  can be accidentally turned on and accidentally turned

23  off, or whether it's damn near impossible.

24       And if you have any other questions, Your

25  Honor, I'd be happy to answer them.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Do you disagree with Mr. Beck
 2    that the standard here to overcome this privilege is
 3    that the defendants have to show a compelling need?
 4            MR. LOWRY:  I think -- yes, I would agree
 5    that it's a compelling need.  And I would think that
 6    based on what I've just argued to you that we have a
 7    compelling need to access the device.
 8            One thing the United States hasn't told
 9    you, Your Honor -- and I'd be remiss if I did not --
10    is that the Seventh Circuit in the United States of
11    America versus Vernon Chapman -- and I don't have a
12    Westlaw cite, but it's appeal numbers 14-3311 and
13    14-3363, and this is an October 2015 Seventh Circuit
14    opinion, ordered the FBI to disclose a HAWK device
15    not once, but twice to two different experts for
16    forensic review.  So you wouldn't be taking the first
17    step on to the playing field.  And this is an opinion
18    by Circuit Judge Bauer, joined by Williams and
19    Hamilton.  And they -- again, the district court in
20    this case had ordered this HAWK device disclosed to
21    two independent experts to evaluate it.  So it's not
22    as if compelling needs cannot be shown under any
23    circumstances.
24            THE COURT:  What were the compelling needs
25    in that case?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. LOWRY:  It was whether -- sort of what
 2    we're talking about here -- they thought that the
 3    recording had been tampered with, Your Honor, and so
 4    they turned it over to experts to see if it had.  And
 5    I perused the opinion.  The experts actually
 6    determined that it had not; that the recordings
 7    were -- the integrity of the recordings had been
 8    maintained.  But the point being is that once the
 9    need was there, the judge gave them not one, but two
10    bites at the apple, to prove their case.  And they
11    didn't, and the recordings came in.  But the point
12    being is that there was a compelling need
13    demonstrated by the defense, and the judge gave them
14    that opportunity.
15              And I'd be remiss again to say that it
16    strikes me -- and I noted in the Government's brief
17    that the United States claims that they have the
18    prerogative to disclose these devices to whoever they
19    want, whenever they would like.  And they have to say
20    that because they have to justify having given this
21    device to someone like Eric Duran, who not only was
22    convicted of murder, but we know has both in the past
23    fled from the police and caused significant harm to
24    law enforcement in refusing to obey lawful orders of
25    police officers, where they had to discharge their
```

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    firearms to try to apprehend him.

2           And it strikes me as a bit odd that the

3    protective orders of this Court with a former FBI

4    agent can't review this device, if there is somehow a

5    security risk to the United States when you have

6    somebody who, as we speak in this courthouse, is a

7    fugitive from justice, who knows everything about

8    this device.  To think that -- and maybe it is the

9    United States' prerogative, Your Honor, about who

10   they let see these.  But there is also a balancing

11   test that this Court can entertain, to see whether

12   the defendants have met a compelling need to get

13   access to the device, and inform Mr. Baca getting

14   access to the device is imperative, so we can know,

15   if and when Mr. Duran ever shows up, whether he was

16   turning on this device intentionally and willfully,

17   or accidentally.  And it goes to his credibility.  It

18   goes to the reliability of the recordings.  It goes

19   to Mr. Baca's defense about these recordings being

20   manipulated at his will.

21          So, Your Honor, I would ask the Court to

22   order the production of the device so our expert

23   could examine it under a very strict and robust

24   protective order, frankly.

25          THE COURT:  Let me do this.  I've got some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    more questions I want to ask you, and I don't want to
 2    rush anything.  But I do need to give Ms. Bean a
 3    break.  So why don't we take about a 15-minute break,
 4    and we'll come back in and go about an hour.
 5            All right.  We'll be in recess for about 15
 6    minutes.
 7            (The Court stood in recess.)
 8            THE COURT:  All right.  It looks like
 9    everybody has an attorney.  Look around the room,
10    make sure everyone has an attorney.
11            All right.  Mr. Lowry, if you wish to
12    continue your argument.
13            MR. LOWRY:  Well, Your Honor, I think I had
14    finished.  I was standing for the Court's questions,
15    if you had any.
16            THE COURT:  If I understand, all we're down
17    to, pretty much with Mr. Baca, is that you want
18    somebody to be able to press the button and see how
19    hard or how easy it is to record.  Is that what we're
20    down to?
21            MR. LOWRY:  Well, that, and whether, based
22    on the illumination of the lights on the device,
23    whether you would know if it's in active recording
24    mode, or whether -- suppose Mr. Duran goes to
25    activate the device and thinks he's recording a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    conversation, he could say, Oh, I missed that part

2    because I saw the light wasn't flashing, so I had to

3    go back and cut it on.  I mean, without knowing how

4    the device is illuminated, in tandem with the

5    buttons, we're at a loss to explain why the person

6    holding the device, employing the device, would or

7    would not know it was on or off at a given moment.

8    And that's imperative to our defense, Your Honor.

9    And I can't overstate.

10            I would just point out for the record --

11   and I believe in the briefing and in the discovery,

12   that the Government indicated that Mr. Duran had two

13   different devices, but based on the Garcia exhibit,

14   he had three different devices.  He had a RAVEN

15   device, a HAWK device, and an EAGLE device.  But, I

16   mean, that's just a little tidbit.

17            But the real point for us, Your Honor, is

18   exactly what I've been talking about is the mechanics

19   of the device.  Would the person holding the device,

20   using the device, know it was on, and would they know

21   it was off?  And that sounds really simple.  And in

22   theory it is.  But in practical application, it's

23   imperative that we know exactly how it functioned so

24   we can be prepared at trial to defend against a claim

25   that, Oh, it was an accidental turn off, it just -- I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    dropped it and it cut off, or whatever.  I can't even

2    begin to anticipate what the testimony will be.  But

3    we need to be prepared for any kind of testimony that

4    the thing randomly cut on and off.  And the only way

5    we can defend against that is to actually look at the

6    device.

7            I would, you know, analogize it to the

8    trigger pull on a weapon.  I'm not a firearms person.

9    But I think people that are into firearms are all

10   about how much pounds it takes to pull the trigger.

11   So, essentially, that's what I want to do with this

12   device.  I need to know how much pressure it takes to

13   cut off.  Does it cut on accidentally, or is it only

14   intentionally?  And when you intentionally cut it on,

15   is it apparent it's on by a glowing bright green, is

16   it glowing red?  I don't know.  I've never seen it.

17           THE COURT:  Well, why not just ask those

18   questions of Mr. Williamson?

19           MR. LOWRY:  Well, I mean, in fairness, Your

20   Honor -- I mean, it strikes me -- again, I want to

21   come back to this idea that, I guess part of my role

22   as a criminal defense attorney is I'm a natural born

23   skeptic.  And I want to handle the device myself

24   rather than take the word of an agency who is trying

25   to prosecute my client and put him in prison for the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                        1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1    rest of his life.  I hope Your Honor would

2    understand --

3            THE COURT:  Then that sounds very much

4    you're just like fishing for evidence.

5            MR. LOWRY:  No, I'm not.  I'm telling you

6    exactly why I want it.  It's not a fishing --

7            THE COURT:  But you've got a witness on the

8    stand that can answer the lights issue, and tell you

9    how hard it is.  I mean, you know, that's just

10   fishing after that, to see if you can come up some --

11   you know, play with it and come up with your own

12   theory.

13           MR. LOWRY:  No, I mean, I think I need to

14   know -- I mean, one of the things we can do, if we

15   went in is actually measure the illumination, the

16   lumens that the thing gives off.  So would an

17   ordinary person be aware, based on the lights, that

18   it's on or off?  I mean, you're asking us -- it's not

19   a fishing expedition.  I'm telling you exactly what I

20   want out of this device, in terms of the pressure --

21           THE COURT:  But you're just fishing to see

22   if something turns up.

23           MR. LOWRY:  No.

24           THE COURT:  There is no evidence that

25   anything is wrong with the device, or that it doesn't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    work as intended.

2              MR. LOWRY:  Well, it didn't work as

3    intended, Your Honor.  I mean, we're looking at a

4    bunch of data that's a bunch of goose eggs.  And they

5    had to come in and explain why it didn't work as

6    intended.  So I hesitate to agree with Your Honor

7    that the thing worked as intended.  I mean, if we

8    look at some of the data sheets, there is no data.

9    It's everybody's guess, if you look at DVD 20, I

10   believe it is, they all say zero minutes of

11   recording, and the same date and time.

12             But it's really not a fishing expedition,

13   Your Honor.  I mean, we're looking for the pressure

14   it takes to turn on the button, the illumination in

15   terms of lumens for the device, the lights on the

16   device.  I mean, it's concrete information that we

17   want.  We know it exists.  We just want to measure

18   it.

19             THE COURT:  All right.

20             MR. LOWRY:  And I don't think Mr.

21   Williamson would know.  If we want to put him back on

22   the stand, we could ask him, but I don't think he

23   knows that information.

24             THE COURT:  All right.  Thank you, Mr.

25   Lowry.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Anyone else?  Ms. Sirignano?
 2          MS. SIRIGNANO:  Your Honor, I've just
 3   passed you the Exhibit A and B, which was entered in
 4   today as evidence.  And what Mr. Lowry referred to is
 5   on Exhibit B.  And on the top is DVD number 20, which
 6   has the problems with the metadata.  And I'd just
 7   like the Court to look at that and the different
 8   devices that --
 9          THE COURT:  Which one?  B?
10          MS. SIRIGNANO:  B, Your Honor, yes.
11          And with all due respect, Your Honor -- and
12   very respectfully -- I did try and ask the agent
13   about the device.  And I was shut down because of
14   some alleged national security or proprietary
15   argument privilege.
16          And I was prepared to go through every
17   feature on that HAWK device, which is -- the pictures
18   are in Exhibit A -- and unfortunately, I wasn't
19   allowed to do that.  So, as you can see, the
20   Government's argument about this information being
21   national security privileged, it fails terribly.
22   It's all over the internet.  And while it might be
23   proprietary in nature, it's over the internet, it's
24   on YouTube.
25          And although that manual is 2007, which
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    came into evidence -- there might be a newer one --
2    but for all intents and purposes I would have liked
3    to have asked if the buttons were the same.  But this
4    witness wouldn't give us an answer, nor was I allowed
5    to go into the specifications of the device.
6                So just two really quick points, Your
7    Honor.  I do believe there is a compelling need.  And
8    this is definitely not a fishing expedition.  You
9    heard the Government's witness admit to the dates in
10   these devices; that some of them are bogus.  And I
11   did elicit on cross-examination that the dates and
12   times and seconds of these recording devices is very
13   compelling, it's very important to establish in this
14   case the conspiracy statements, co-conspirator
15   statements.  The date and the time is very important
16   for all of us.  As these recordings, either they
17   pre-dated conspiracy or they post-dated the
18   conspiracy.
19               And as you can see, to use Mr. Lowry's
20   language, in DVD number 20, there is a bunch of goose
21   eggs there, Your Honor, all zeros.
22               And what we couldn't hear from this witness
23   was what data integrity checks were done, either at
24   the time that the device was taken out of the ELSUR
25   room or, at the time that the ELSUR clerk downloaded

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    this information.  And arguably, if there was problem
 2    downloading this information, then it should have
 3    been stopped.  And the original recording on the
 4    device itself should have been sent to Los Angeles,
 5    and not a copy.  That's not the best evidence.  The
 6    best evidence is not a duplicate.  I think it's
 7    pursuant to Federal Rule of Evidence 10002 and 1001
 8    is where it's defined.  So I think we have shown a
 9    compelling need.
10             Additionally, with the testimony that the
11    Government's main snitch said that he had five to six
12    hours of recordings, and we only see 53 minutes
13    here -- and, Your Honor, if you go through each
14    entry, each session time, you can see where one flips
15    over at the end of the recording and it starts at the
16    exact same time with a second session.  That would be
17    a proper recording, one session goes into a second
18    session, depending on the device.  But then you'll
19    also see other sessions that, for whatever reason,
20    only go for a few seconds.
21             And it also came out in the testimony of
22    the handler's ability to start a conversation and to
23    stop a conversation instantaneously.
24             So I would just submit, Your Honor, that we
25    have shown a compelling need.  This national security
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   argument fails.  And all we're asking for is to have

2   one attorney and our expert, Mr. Bryan, be able to

3   look at this recording and to ascertain the problems

4   with this metadata that does exist and the data

5   integrity issues that we uncovered today.

6           Thank you, Judge.

7           THE COURT:  Well, are you where Mr. Lowry

8   is?  You primarily want to touch the off and on

9   device, look at the lights.  And the metadata, it is

10  what it is, and there is not much more to be mined

11  there.

12          MS. SIRIGNANO:  Well, I am with Mr. Lowry

13  on actually viewing the device, the on and off

14  switch, and the light issue.  But with the metadata,

15  I agree with the Court, that it's either there or

16  it's not there.  But we don't have any testimony from

17  the FBI about what they did with the data.  And he

18  said he verified it, but he didn't explain how.  And

19  they're just taking the proprietary software and the

20  program that was developed for not just the FBI; it

21  seems for other law enforcement agencies.  And in

22  making the copy of the original recording, the

23  original recording stays with the device, and what

24  the FBI is calling the evidentiary copy.  But, Your

25  Honor, I submit it's a copy.  And without that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    original device, it's very hard to -- it's impossible
2    to make sure that the integrity of the data exists,
3    or still exists.
4              THE COURT:  But what is -- what more is to
5    be done?  I mean, that's kind of a legal argument,
6    isn't it?  But there is nothing really more as far as
7    tests or anything that can be done on the metadata
8    side, is there?
9              MS. SIRIGNANO:  Yes, the Chapman case --
10   and I reviewed it briefly -- there were a couple of
11   experts that reviewed that date.  And Mr. Bryan, if
12   he was able to get access to the original copy, what
13   they're calling the original evidence, he might --
14   well, he can look at that data to see if there was
15   any manipulation other than the on and off switch.
16             THE COURT:  But if I understood the
17   testimony, there is nothing on the recording device
18   now.
19             MS. SIRIGNANO:  Well, that's what I
20   understand, Your Honor.  So the copy, the original
21   copy -- which we don't have -- it's in FBI's evidence
22   vault somewhere -- we were given copies of copies.
23             So what I would like to look at with Mr.
24   Bryan is the original copy, to see if there is any
25   anomalies or any manipulation.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  So that doesn't have anything
 2    to do with the device.  That's just you're wanting to
 3    see, I guess, whether the copy, your copy, is the
 4    same as the copy of the original?
 5              MS. SIRIGNANO:  Yes, Your Honor.
 6              THE COURT:  So that doesn't have anything
 7    to do with the device?
 8              MS. SIRIGNANO:  Not the device itself,
 9    since the FBI destroyed that evidence.
10              THE COURT:  So the metadata is just limited
11    now to a copy issue, not to the recording device
12    anymore?
13              MS. SIRIGNANO:  Except for disc number 20,
14    which we were told that never -- the metadata was
15    never captured because of a battery issue.
16              THE COURT:  But we can't do anything on
17    that at this point, right?
18              MS. SIRIGNANO:  Not at this point, Your
19    Honor.
20              THE COURT:  All right.  So if I understand
21    where you and Mr. Lowry are, in combination, it's the
22    on and off switch; it's the lights; and you want to
23    look, now, at the original disc to see if it's the
24    same as the copies you're getting?
25              MS. SIRIGNANO:  Yes, Your Honor.  Thank
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   you.
 2              THE COURT:  So I have the universe, and
 3   that's it?
 4              MS. SIRIGNANO:  You do.
 5              THE COURT:  Thank you, Ms. Sirignano.
 6              MS. SIRIGNANO:  Thank you.
 7              THE COURT:  Anyone else want to argue?
 8   Ms. Jacks?
 9              MS. JACKS:  I have a few comments, because
10   I mean, this has been sort of a moving target.  I
11   think, when we first started, we were requesting the
12   metadata, because we were saying to the Government:
13   How can you have recordings that you don't know what
14   date they were made, if you're saving the metadata?
15   How can you have recordings that show up as having
16   nothing in them, and they have minutes of recordings,
17   you know, in these files?  How can you have
18   recordings that are supposedly made in 1899?  And so
19   those were the questions that were raised by the
20   Government's evidence, and why we were saying, look,
21   we need metadata.
22              And I join the Court in complimenting Mr.
23   Beck to getting some of the answers to those
24   questions.  And I thought he did a good job in
25   briefing, or in setting out and honing in on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1     issues here.  And I think what the Government's
2     answer has been, Well, how that can happen is the
3     device malfunctioned, or the person that set up the
4     device sent it out the door of the FBI in Albuquerque
5     without the right date setting, or -- and I think
6     we've also heard -- and the Government has answered
7     the questions about how they know when a date, for
8     example, on that Exhibit B, that you have before you,
9     if you look at the one labeled DVD 17 -- I'm sorry,
10    DVD 19 -- this is a summary of recordings that were
11    allegedly made by Billy Cordova with Rudy Perez.  And
12    these purport to have dates on there.  I mean, it's
13    not like you get a date of 1899.  These purport to be
14    recorded between February 1st and February 4th.
15            And what the Government has determined,
16    apparently, that -- this is what I understood through
17    these hearings, and ultimately today -- is that those
18    dates are wrong, and they're wrong because either the
19    device wasn't introduced into the facility on those
20    dates, or because Mr. Cordova wasn't housed next to
21    Mr. Perez on those dates.  You wouldn't know that by
22    looking at it.  By looking at it, it looks like it's
23    purporting to tell you about recordings that happened
24    on February 1st, 2nd, and 4th.
25            So my point -- I guess what I'm saying is I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think the Government has answered our questions.  And

2    I think what we're hearing is that there were various

3    errors, some mechanical and some human caused, that

4    produced this confusing data set that we've been

5    trying to make sense of.  And for that, I think we

6    understand where we need to go.

7         I think Mr. Beck and his expert have made

8    it clear that these ELSUR devices, once the data is

9    downloaded off them, whether it downloads correctly

10   or incorrectly, or whether the download is accurate,

11   the device is simply wiped clean and never further

12   examined.  So I don't think there is anything that we

13   can gain by looking at the actual ELSUR devices,

14   looking at the metadata on the ELSUR devices.  I

15   think the Court is right, that's long gone.  And any

16   effort to inquire about the integrity of that or

17   whether there is data on the device that wasn't

18   downloaded onto the DVD, that opportunity was missed

19   when the Government just erased the devices and moved

20   forward.

21        With respect to Mr. Lowry's comments, I

22   join in his request to examine the devices.  And I

23   can only sit here and run through in my mind the

24   various excuses that Mr. Duran or Mr. Cordova or

25   other government informants are going to come up with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   when they're challenged about:  Why are you turning
 2   this thing off and on and off and on multiple times
 3   during a very short time period?  And certainly,
 4   mistake or accident, or the thing shut off, you know,
 5   when I set it down, those are the types of, I think,
 6   excuses that are going to be offered up here in court
 7   to explain this very unusual manner of recording a
 8   conversation.
 9           I note, in looking at the Government's
10   evidence -- and I think the Court can see that in
11   examining Exhibit B -- there are three separate types
12   of electronic surveillance devices that were used in
13   this investigation.  And it looks like some of the
14   informants used the same device, and some of the
15   informants used multiple devices, depending on which
16   one was introduced into the prison at which point in
17   time.  So I think, to be fair, or to be clear about
18   Mr. Lowry's request, or what's the remainder of the
19   defense request, is an opportunity to examine a
20   prototype of each one of the type of electronic
21   surveillances devices.  So that looks to me like it's
22   a HAWK8A, a RAVEN2A, and an EAGLE8C.
23           But the one other thing I just want to
24   point out -- and that's something that's just become
25   apparent to me over the course of these hearings --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    is in responding to our letter, the Government did, I
2    think, make an effort to respond directly and to be
3    concise, and answer our questions.  And for that I'm
4    appreciative.
5         I do note there are errors in the
6    Government's response.  One that jumped out at me
7    today is the Government is reporting to us and to the
8    Court that Mr. Duran had two separate ELSUR devices
9    at different points in time.  And the exhibits in --
10   the pages of Exhibit B show that Duran at least had
11   three separate devices:  1168, 730, and 1188.  And so
12   it is troubling.
13        This stuff is complicated.  It's difficult
14   to understand.  It's difficult to analyze.  But it's
15   troubling that the Government continues to be
16   inaccurate and make mistakes in terms of what it's
17   disclosing about who had what when.  But I think --
18        THE COURT:  But that's a separate issue,
19   though, from looking at the device issue.
20        MS. JACKS:  Correct.  I just want to point
21   out, we've certainly learned a lot.  And I think that
22   it's been helpful to try to understand where we go
23   from here.
24        But I guess my point is only that, sort of
25   the target has changed over the course of this
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                                         Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    litigation.  And I think we have gotten answers.  And
 2    basically what we know now is to examine the devices
 3    for the metadata would be a fruitless action because
 4    the Government destroyed that information when they
 5    downloaded the device and erased it.
 6              THE COURT:  Maybe I missed this point, but
 7    I thought he testified that when you download, you
 8    don't have it on the machine anymore.  I mean, it's
 9    not like, if I make a CD of something on my hard
10    drive, it's still on the hard drive.  Here, when you
11    download, you lose it off the device.
12              MS. JACKS:  Maybe I failed to ask the right
13    question on cross-examination.  I have some testimony
14    from the other cases that Mr. Beck provided.  And
15    it's my understanding it's sort of a two-step
16    process; you download, and then you're given the
17    opportunity to delete or not delete.  So if I'm
18    misstating that --
19              MR. BECK:  Ms. Jacks is correct.  Yeah, it
20    prompts the ELSUR operations technician.  When the
21    download is complete, it says, "Download complete,
22    okay, erase the device, okay."
23              THE COURT:  I guess the reason that you're
24    erasing it is because you're going to use it again on
25    another investigation; is that the reason?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BECK:  That's right.

2              THE COURT:  Anything else, Ms. Jacks?

3              MS. JACKS:  No, thank you.

4              THE COURT:  Let me ask you one question:

5     So you don't add anything to the universe of requests

6     here that Ms. Sirignano and Mr. Lowry had?  Those

7     three items are still the ones that -- you don't have

8     anything to add to that list?

9              MS. JACKS:  I really don't.  The only thing

10    I wanted to add was there are three devices, and give

11    you the names of them, because those three devices

12    were used by various cooperating witnesses in the

13    same manner.

14             THE COURT:  All right.  Thank you, Ms.

15    Jacks.

16             Anyone else?  Mr. Lowry?

17             MR. LOWRY:  Just to follow up on Ms. Jacks'

18    point.  If the Court was inclined, preferably I'd

19    like to see the original devices, not to examine

20    metadata, but to test the real devices that were

21    used.  But if the Court is inclined to get the

22    prototypes, I'd like to get some kind of admission

23    out of the United States about, Well, you can't

24    complain that the pressure points or the illumination

25    on this device is unlike the one on the actual
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    devices, when they have access to those and could

2    make them available for us to look at, Your Honor.

3    So that's really the only point.

4            And finally, Your Honor, in Mr. Beck's

5    defense I was complimenting his writing on the way

6    down here to my colleague, Theresa Duncan, to say:

7    He had a marvelous mentor, because you could tell by

8    the way he patterned his brief, it was definitely Mr.

9    Beck's work product.  So I think it's fair to say --

10           THE COURT:  You always want the judge to

11   write his opinion out of your brief.  That's what

12   you --

13           MR. LOWRY:  He did a good job laying it out

14   for you just in a manner that you would like, so.

15           THE COURT:  Thanks, Mr. Lowry.

16           All right.  Mr. Beck?

17           MR. BECK:  So I see -- I think Mr. Lowry

18   makes a point.  I went back over Chapman.  I found it

19   during the break.  It looks to me like in that case

20   what the Court required to be disclosed was the

21   evidentiary DVD.  I didn't glean from that that they

22   required the device to be disclosed.  And in fact,

23   then they had an audio/video technician person look

24   at the DVD, I'm assuming in the way we did today in

25   court.  And they didn't find any sign of tampering.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    And so their request to allow a forensic computer

2    scientist expert to examine the actual device was

3    denied, from what I gather reading it.

4            And I think properly so.  I think, as

5    everyone acknowledges, there is nothing else on these

6    devices afterwards.  And I think Mr. -- and I think

7    Special Agent Williamson's testimony was it is an

8    intentional press of a button by the operations ELSUR

9    technician to delete the device.

10           I will talk about DVD 20 that we've heard a

11   lot of testimony about.  To sum up Agent Williamson's

12   testimony about DVD 20, the problems with the

13   computer battery that recorded the date and time were

14   not -- they weren't -- I guess I'm going to use my

15   own phrasing here -- like a terminal error.  Meaning

16   that it corrupted the data.  What happened was, when

17   that data is recorded on the device, and creates

18   those files we looked at, 1168.001, the binary coding

19   in there is all correct.  But when that goes through

20   the proprietary software, it just displays the date

21   that was on the computer, which is nothing.  Which is

22   that 1899 date.

23           And so I think when Ms. Sirignano was

24   saying, it would be good -- or why didn't they then

25   send that device back to Quantico, and then back to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    the manufacturer so they could look at the device,

2    the answer is that, if there is corrupted data on a

3    device, it doesn't download, you can't complete the

4    download.  What the download does is it used that

5    SHA -- I'm not technical, but that check value to

6    make sure that the data is the same.  And as long as

7    it is, as long as it's all the same data on the

8    device that's downloaded onto the DVD, it completes

9    the download.  And you delete it.

10        And so whether someone, the operations

11   technician in Albuquerque, or the technically trained

12   agent even saw on the player that there was no date

13   and time there, because it downloaded fully, because

14   it completed that DVD, that established that there

15   was nothing else to be gained from the device.

16        So I think Agent Williamson said there

17   would be no point in sending that back to the

18   manufacturer.  And that's why, because he confirmed

19   that all the information on that device was on the

20   DVD.  It's not accurate for when it was recorded, but

21   it's accurate for the information that was created on

22   the DVD.

23        So I think we've established that

24   inspecting, or having access to the devices for

25   purposes of looking at the metadata on them or

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    examining the metadata won't work.  With one other

2    caveat:  I think they talked about giving their

3    computer expert access to the device so that they

4    could check the data on the evidentiary DVD is the

5    same as the data provided on the copies to them.

6              That's what we went through at the

7    beginning with Special Agent Williamson, where he

8    used a third-party hash software to check the hash

9    values.  So that third-party software that's

10   available to anyone, including us in this room,

11   checked and saw that the hash value that was assigned

12   when the recording was downloaded in the ELSUR

13   technician office in Albuquerque was the same as the

14   copy of the DVD he was playing today.

15             And so they can go and use -- I mean, they

16   can provide that evidentiary DVD, I'm assuming, to

17   their computer technician, computer forensic expert,

18   who can then check the hash values, and come up with

19   that same thing, that the hash values that were

20   downloaded originally as part of that file are the

21   same hash values as they will get when they run it

22   through a hash check software.

23             So then we come to the last point here,

24   which is the physical inspection of the devices.

25   Mr. Duran had, in prison, multiple devices.  I



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   believe that he had an ELSUR-type HAWK, EAGLE

2   recording device; that was one.  And then he also had

3   a consensual wiretap on a phone there, which was two.

4   So to say that there were five or six hours of

5   recording could be those two different mediums for

6   recording conversations.  It also could be a lie.

7   And the way we test that is with Mr. Duran up there

8   on the witness stand.

9           I think that they were saying, the defense

10  was saying that they need access to the device so

11  they can prepare for the witness saying that it was

12  unintentional that they turned it off or not; they

13  didn't know they turned it off, something like that.

14  I think there are a couple of ways to corroborate

15  that or not.  One would be to listen to the

16  recordings.  If it stops at the end of a

17  conversation, and then turns off, that obviously

18  corroborates that they didn't turn it off

19  unintentionally, or they intentionally did it.

20          Special Agent Williamson's testimony was

21  that he couldn't tell whether they intentionally

22  turned off the recording or not was credible.  You

23  can see whether the device malfunctioned in some way,

24  or the batteries died.  That's all told by the flags.

25  So you can tell from the player software whether a



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    session was completed by turning on and off the

2    device.

3            If you look at the timestamps on there, you

4    can account for every hour, minute, and second that

5    it was inside the prison after it had been activated

6    the first time, to when it was turned off the last

7    time, aside from DVD 20, you can't do that on DVD 20.

8    But with the other ones, even though the dates may be

9    wrong, you're still accounting for all that time

10   there.

11           If one inspects the device and looks at it,

12   I am thinking -- I anticipate that Mr. Lowry's

13   argument about whether you can easily turn on and off

14   the device or see the light blinking would be my

15   interpretation of how easy it is to turn on and off

16   the device and see the light, which would be

17   different than Mr. Duran's or Mr. Cordova's.  And I

18   say that because I anticipate that the defendant will

19   say:  It's very difficult to turn on or off the

20   device unintentionally.  You have to flip the button

21   or you have to press the button.  And you can't do

22   that unintentionally, to which I am sure the person

23   on the witness stand saying that they did so

24   unintentionally, if that would be their testimony,

25   would say, well, it's obviously very easy because I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    did it.  I had it in my pocket.  I hit the off

2    button, must have, that's why it stopped recording,

3    or it must have hit the on or off switch, that's why

4    it stopped recording.

5             So I really don't anticipate there will be

6    useful evidence gathered from looking at these

7    devices physically.  I think everyone will disagree

8    about how easy or difficult it is to unintentionally

9    turn off the recording device.

10            THE COURT:  Stay right there.  Let me ask

11   Mr. Lowry:  If the software -- given this rule change

12   that you have, and you have the hash value that on

13   the material you could check it with just commercial

14   software that's available on the market, what are you

15   going to get additional of going and looking at the

16   original?

17            I'm sorry, I should probably ask that of

18   Ms. Sirignano.  What do you gain -- if you can just

19   check it with over-the-counter software, what do you

20   gain by getting the original?  You can tell if there

21   has been monkey business here with over-the-counter

22   software, can't you?

23            MS. SIRIGNANO:  Your Honor, based on the

24   testimony from today, the special agent said that

25   there was this over-the-counter software to compare

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the hash values, which our expert is saying is like a

2   fingerprint of the actual recording.  Now, whether or

3   not there is something other than a straight

4   comparison of the actual hash values that's on the

5   internet, I'd have to get back to the Court after I

6   speak with Mr. Bryan.

7          THE COURT:  Because when I read that rule,

8   which they are educating us as judges at schools and

9   seminars, it seems to me that what Mr. Beck is saying

10  is correct, you're not going to gain anything by

11  putting your hands on the original, because the copy

12  you can tell there was a problem.

13         MS. SIRIGNANO:  I disagree with that, Your

14  Honor, insomuch as the FBI did decide to destroy the

15  evidence on the device.

16         THE COURT:  But that's going back to the

17  original issue, which, you know, you'll have your say

18  at trial on that.  But at least the copy, I'm not

19  understanding how looking at the copy gives you

20  anything more than -- the first copy gives you

21  anything more than looking at the second or third

22  copy, because of the hash values they're going to be

23  on all.

24         MS. SIRIGNANO:  Your Honor, what we didn't

25  hear today was that the agent did the hash value

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492
                                                      1-800-669-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                         e-mail: info@litsupport.com

```
 1   check on the original.  We heard that the agent --
 2   the original copy, let's just say it that way, which
 3   is in evidence -- and who knows what --
 4             THE COURT:  But I guess what I'm
 5   understanding, from what I'm hearing at schools, and
 6   what the rules say is, you could take the hundredth
 7   copy and determine that -- if there is a problem,
 8   because of the hash value.
 9             MS. SIRIGNANO:  Unless, of course, Your
10   Honor, the scenario would be is that the original
11   copy, the hash value itself was manipulated in some
12   way.  And then each subsequent copy, whether it's the
13   hundredth copy, would reflect the initial
14   manipulation.  We don't know that.  We didn't hear
15   that from the agent today.  What we heard was that he
16   looked at copies, which --
17             THE COURT:  From what I understand, you
18   can't do that.
19             MS. SIRIGNANO:  I don't -- Your Honor, if I
20   could have a minute to consult with my expert, I can
21   get back to you.
22             THE COURT:  All right.
23             MS. SIRIGNANO:  Thank you.
24             MR. BECK:  I think I can answer that.  I
25   got into that with Agent Williamson about how the
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                1-800-669-9492
                                                           e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    proprietary software works; that they give that all
2    to ADS, the company that manufactures that, so that
3    they have the checks and balances in place, meaning
4    that, if there is some manipulation of the data,
5    which everyone agrees they really can't do, it just
6    won't play on that player.  So that's how they
7    double-check the ADS works.
8              So if you think about this, where we
9    have -- you know, I think on one hand that other law
10   enforcement, state, local, and international use this
11   company to manufacture devices is probative of the
12   checks and balances they have in place.  But compared
13   to, like a painting that we've never seen, borrowing
14   from Mr. Lowry's example -- he's obviously much more
15   well versed in art history than I am -- but a
16   painting that we've never seen, the way that we would
17   check to make sure that the second -- the copy in
18   court is an accurate representation of the original
19   is different when we're talking about a recording.
20             You can authenticate a voice recording by
21   having, you know, some expert come in and say that
22   person's voice is exactly what I'm hearing on this
23   end.  So the way that we check that -- I think
24   Special Agent Williamson got into this a little
25   bit -- is that they make a recording with the device,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    maybe they record themselves -- Special Agent
 2    Williamson would record himself -- and then they go
 3    back and they play that through the recorder.  And if
 4    it plays and it is his voice, well, then you know
 5    that whatever internal coding the proprietary
 6    software has, has worked, because you downloaded it;
 7    it didn't show an error when you downloaded it; you
 8    played it, it was able to play, and it's your voice
 9    on the recording.  And so that's the way that they
10    can double-check to make sure that the data integrity
11    is being maintained without having to, number one,
12    get access of their proprietary software, and number
13    two, check with a third-party vendor to make sure
14    that someone has done that.  Because a voice
15    recording, there are these things that you can do to
16    make sure that the checks and balances are in place.
17              THE COURT:  Well, let me ask you this:  How
18    much resistance do you have to their expert coming
19    over and doing it on the original?
20              MR. BECK:  I think we could -- I certainly
21    think we could accommodate that.  I don't know
22    whether we need to.  Because, as Ms. Sirignano
23    correctly pointed out, Special Agent Williamson did
24    not testify that he has verified the values -- the
25    hash values of the original evidentiary DVDs, because
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I didn't ask him to.  If we seek to admit these at

2    trial, we would either have to have someone testify

3    to that, stipulate to it, which would mean we'd have

4    to prove that we did it, or a certificate, likely

5    from Special Agent Williamson, that says:  I have had

6    in my possession the original evidentiary DVDs.  I

7    have done the hash value checks and they all check

8    out.

9              So I'm saying I don't have much opposition

10   to that, because it's going to have to be done

11   somehow.  I just don't know if we need to do that.

12             THE COURT:  Ms. Sirignano.

13             MS. SIRIGNANO:  Your Honor, so after

14   consulting with Mr. Bryan, the way he explained this

15   to me is that, when you download the original

16   recording, it creates a hash on that copy.  And then

17   each subsequent copy creates a hash or a fingerprint.

18             And so what we heard today was that this

19   expert didn't go back to the original hash from the

20   original downloaded recording to make that original

21   copy.  And so all he did was compare his copy to the

22   previous hash.

23             There is one file on all of this -- the

24   evidence that was given to us that contains all the

25   data values.  And if there was any way that those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   data values or the hash within these data values were

2   manipulated, then you'd have a problem with the

3   subsequent copies.  And Mr. Bryan tells me that it

4   would take about an hour total to take a look at this

5   and to ascertain if the integrity of the data is

6   still there, Your Honor.  And we would just ask that

7   we could do that sooner than later.

8           The Government did tell me that they were

9   going to use these recordings.  First on my 12(b) 4 B

10  motion, I wrote the Government a letter, and they

11  wrote me back, and based on my motions to suppress

12  Mr. Beck emailed me and told me they were going to

13  use this evidence at trial.  So I would just request

14  that we get a time as soon as possible, before the

15  holidays, to take look at this digital evidence, Your

16  Honor.  Thank you.

17          THE COURT:  Well, you're still talking --

18  it's still the original request, take the original

19  disc, not the copy, and check the hash values on

20  that?

21          MS. SIRIGNANO:  Right.  And I think we're

22  saying the same thing.  It's the original disc that's

23  in evidence that can be checked out, and looked at by

24  Mr. Bryan and his equipment.

25          THE COURT:  Well, do you oppose that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BECK:  No, we can coordinate that.  I
 2    mean, there is no reason to oppose that.
 3            THE COURT:  Let me ask on the physical
 4    check that Mr. Lowry -- if the concern of the FBI is
 5    you don't want anybody to see the shape or the size
 6    of it, would there be a way to cover all that device,
 7    including covering the outlets, which doesn't seem to
 8    be of interest to the defendants, and just let Mr.
 9    Lowry come in and push the button, and see if he can
10    any argument from that, and then look at the lights,
11    and but you would keep covered the device's size,
12    shape, and the outlets?
13            MR. BECK:  That, I can't say.  That would
14    go above my head to get clearance on that.  But it
15    seems like that would be a rational middle ground for
16    everyone to meet, and it seems like it would assuage
17    sort of the FBI's concerns, and allow Mr. Lowry to
18    get what he's looking for, which I don't know that
19    he's demonstrated a compelling need.  But it was a
20    good argument.  So --
21            THE COURT:  Well, what concerns me is -- I
22    don't want to put words in Mr. Lowry's mouth, but it
23    seems like attacking Duran's recording abilities is
24    about his only defense, or his chief defense here.
25    If that's really where they're going, but it's that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   crucial that they're going to go after his recording
 2   abilities, and I guess credibility as well.
 3             MR. BECK:  I agree, Your Honor.  And he did
 4   come forth with -- I mean, I think we look at the
 5   Chapman decision, and why they didn't allow the
 6   devices to be produced, which was that they didn't
 7   have evidence that the data had been manipulated at
 8   all.  I think Mr. Lowry made a good point that, to
 9   corroborate some of Mr. Baca's arguments about
10   Mr. Duran's contentions about the recordings, he
11   needs to have access to the device.
12             So I think the Court's middle ground is a
13   rational solution.  And as I said, I can't represent
14   that we would agree to that, but it sounds rational
15   to me.
16             THE COURT:  What is the -- I mean, if this
17   is revealing some strategy, you know, I'll entertain
18   that I don't want an answer, but what is the
19   Government's position going to be in explaining how
20   Duran is saying he's got five, six hours, and we've
21   got less than an hour?
22             MR. BECK:  I can't say that, because I
23   don't know, not because I don't want to answer it.  I
24   mean, that's just one of those things we have at
25   trial.  If we don't have five or six hours of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    recording at that point in time to back that up, I

2    don't know that we'll be able to explain that, other

3    than relying on Mr. Duran's explanation.

4          THE COURT:  All right.  Well, my suggestion

5    on this is maybe you talk to the people you need to

6    talk to, see if something like that could be worked

7    out, and then, I think we probably exhausted the

8    issues on this recorder device.

9          MR. BECK:  I think so, too, Your Honor.  It

10   would be my expectation that we could have an answer

11   to Mr. Lowry by the end of the hearings this week,

12   and to the Court.  To the extent that Mr. Lowry gets

13   to see it, we can decide whether one disclosure is

14   sufficient or whether there will be multiple

15   defendants there who have shown a compelling need for

16   it.  But certainly, I think, Mr. Lowry has, and

17   probably a lot of the other defendants are in the

18   same position as he is.

19          THE COURT:  All right.  Anything else on

20   the motion, Mr. Beck?

21          MR. BECK:  Just -- yeah, for the record, I

22   didn't know this, but I've been informed of the

23   corresponding DVD numbers, so when we were referring

24   to 1D55, that's DVD 19; 1D56 is DVD 20, 1D60 is DVD

25   23, and 1D58 is DVD 17.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1              THE COURT:  All right.  Anything further?
2              MR. BECK:  Nothing further, Your Honor.
3              THE COURT:  Thank you, Mr. Beck.
4              Everybody comfortable with where I'm
5    leaving it for at least tonight?  Mr. Lowry?
6              MR. LOWRY:  Yes, Your Honor.  I did have --
7    Your Honor, I apologize for not having this printed
8    off earlier, but it goes to the question you just
9    asked.  And I approached the United States, and Mr.
10   Castellano doesn't have any objection.  I was going
11   to ask Mr. Beck.  But we were going to offer as an
12   exhibit the one page out of the master text file,
13   which is Duran's text to the case agent about the
14   five or six hours of recording.
15             I would just point out, at this time it was
16   very early on, about this text took place on October
17   23, 2015.  And while Mr. Beck posed the argument that
18   he may have been talking about other recordings,
19   because he had a cellphone, at the time this text was
20   sent, Mr. Duran hadn't revealed to anyone that he
21   possessed the cellphone, so he hadn't started to
22   actively record anyone, especially my client, using
23   that device.  So I mean, the way I'm reading this is
24   all attributed to that one device.  But I could be
25   wrong, Your Honor.  But I'd like to offer that as an
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    exhibit.  And I don't think I have an objection from
 2    my opposing counsel.
 3              THE COURT:  What is that, that will be Mr.
 4    Baca's Exhibit A?
 5              MR. LOWRY:  It will be A.
 6              THE COURT:  Any objection to that, Mr.
 7    Beck?
 8              MR. BECK:  No, Your Honor.
 9              THE COURT:  Anyone else have an objection?
10              MS. JACKS:  Do you have a Bates number?
11              MR. LOWRY:  I'm looking at a PDF of the
12    master text file, and that's page 395 out of 838.
13    But I'm happy to circulate a copy to everyone.
14              THE COURT:  Give me one.  Anthony Baca's
15    Exhibit A will be admitted in evidence.
16              MR. LOWRY:  Thank you, Your Honor.
17              MR. BECK:  And I should note, because
18    seeing Mr. Lowry up again made me think of the end of
19    his argument -- I do not know at this point, but I
20    will get answers for everyone -- which of the
21    original recording devices still exist today.  Some
22    have been decommissioned.  These were older model
23    devices.
24              That being said, the FBI Office of
25    Technology Division, Special Agent Williamson
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   possesses exemplars of the models.  So I think for
2   the purposes of what Mr. Lowry and Mr. Baca want to
3   see the device for, for purposes of looking at the
4   physical components, the on/off switch and the
5   recording light, those exemplars will be identical to
6   the devices used in this case.
7          THE COURT:  So some of them will be the
8   actual ones, and some will be the exemplars?
9          MR. BECK:  That's my expectation.  And I'll
10  let everyone know that.
11         THE COURT:  All right.  Thank you, Mr.
12  Beck.
13         There was some issue about exemplars, some
14  representation.  I've lost track who was wanting some
15  representation.  Was that you, Ms. Jacks?
16         MS. JACKS:  No.
17         THE COURT:  No, it wasn't you?
18         MR. BECK:  That was Mr. Lowry again.  And
19  we will stipulate to his request.
20         THE COURT:  Okay.  All right.  There is
21  nothing else on the recorder device.
22         Ms. Wild has been out of the pocket all day
23  dealing with that funeral.  What was the agreement
24  among the parties in your discussions with her as to
25  what we'd go to next?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1           MR. BECK:  I think the parties intended to

 2    go back to the finishing up of the James hearing.

 3           THE COURT:  The James hearing, okay.  Is

 4    everybody in agreement with that?

 5           MS. SIRIGNANO:  Your Honor, I don't believe

 6    that's correct.  But I need to check my emails first.

 7    I think it was Mr. Villa's and Ms. Bhalla's motions

 8    to suppress, because they've got their witnesses

 9    subpoenaed for tomorrow and Wednesday.

10           MS. BHALLA:  That's correct, Your Honor.

11    Our expert is here from D.C., and --

12           MR. BECK:  I meant this afternoon --

13    tomorrow -- yeah, my impression is that tomorrow

14    morning.  I know the Court likes to use all the time,

15    so we've got three minutes left.  I thought that's

16    what the Court was referring to.

17           THE COURT:  Well, how much more do you have

18    on the James hearing?  A fair amount?

19           MR. BECK:  I think we've still got a fair

20    amount, yeah.  Tomorrow, I believe, first thing we're

21    going to start with the motion to suppress.

22           THE COURT:  All right.  So everybody is in

23    agreement where we're going?

24           Well, let's go ahead -- you're right, I am

25    very tempted to try to get three minutes out.  But

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    let's go ahead and shut it down for the day.  And

2    I'll see y'all tomorrow morning.

3              All right.  I appreciate everybody's hard

4    work.  Everybody be safe in your travels.

5              (The Court stood in recess.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on December 18, 2017.

15

16

17

18   _____
     Jennifer Bean, FAPR, RMR-RDR-CCR
19   Certified Realtime Reporter
     United States Court Reporter
20   NM CCR #94
     333 Lomas, Northwest
21   Albuquerque, New Mexico 87102
     Phone:   (505) 348-2283
22   Fax:     (505) 843-9492

23

24

25



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com