IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL NO.   15-4268 JB |
| ) | |
| vs. ) | |
| ) | |
| **ANGEL DELEON, et al**, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE TO DEFENDANT RUDY PEREZ'S MOTION TO EXCLUDE STATEMENT OF COOPERATING GOVERNMENT WITNESSES [1514], DEFENDANT CHRIS GARCIA'S MOTION TO EXCLUDE CO-DEFENDANT'S STATEMENTS [1517], AND DEFENDANT ANTHONY RAY BACA'S MOTION TO PROHIBIT THE GOVERNMENT FROM QUESTIONING JERRY ARMENTA ABOUT ANTHONY RAY BACA'S INVOLVMENT IN COUNTS 6 &7 [1540]**

The United States of America, by and through undersigned counsel, hereby submits this Response to Defendant Rudy Perez's (Doc. 1514), Christopher Garcia's (Doc. 1517), and Anthony Ray Baca's (Doc. 1540) motions regarding co-defendant statements. For the reasons set forth more fully below, the motions are without merit and should be denied.

**MEMORANDUM**

On December 1, 2017, Defendant Rudy Perez filed a motion to exclude statements offered by Timothy Martinez and Jerry Montoya that implicate Mr. Perez in the murder of Javier Molina. (Doc. 1514). Also on December 1, 2017, Defendant Christopher Garcia filed a motion to exclude co-defendant statements. (Doc. 1517). On December 4, 2017, Defendant Anthony Ray Baca filed a motion to prohibit the government from questioning Jerry Armenta about Baca's involvement in the murder of Javier Molina. (Doc. 1540). Each of the Defendants allege that the admission of statements would violate their rights under the Sixth Amendment's Confrontation Clause. Because the Defendants' motions fail to demonstrate that the admission of these

statements would run afoul of their constitutional rights, the Court should not exclude this evidence, and should deny their motions.

## Factual Background

As the Court is aware, members of the Syndicato de Nuevo Mexico ("SNM") engaged in acts of violence and other criminal activities, including murder and various other crimes. Some members have cooperated with law enforcement and have made statements to law enforcement officials about the SNM and their involvement with the gang. Some members who cooperated with law enforcement officers obtained statements made by co-defendants in this case.

There has already been a significant amount of litigation regarding co-defendant statements in this case. This Court has already heard arguments, held *James* hearings, and written an opinion on this issue. *See United States v. Angel DeLeon, et al.*, No. CR 15-4268 JB, Mem'm Opinion and Order (D.N.M. June 9, 2017) (Browning, J) (*DeLeon* MOO). The opinion included sections entitled "Law Regarding Co-Defendants' Statements and the Confrontation Clause after *Crawford v. Washington: Bruton* v. *United States* and Nontestimonial Hearsay," (*DeLeon* MOO at 147-55), "Law Regarding Hearsay," *id.* at 155-58, and "Law Regarding Rule 403." *Id.* at 158-59.

## Argument

### I. The Confrontation Clause Does Not Preclude Admission of Statements When Statements are Not "Testimonial"

The Sixth Amendment of the Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 53-54, 68 (2004), the Supreme Court held that the Confrontation Clause bars the admission of testimonial, out-of-court

statements offered against a defendant for the truth of the matter asserted, unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination.

The rule announced in *Crawford* applies to out-of-court statements that are "testimonial." *Crawford*, 541 U.S. at 68-69 (holding that Constitution requires confrontation of declarant only "[w]here testimonial statements are at issue"). Thus, when statements are not testimonial in nature, their admission into evidence does not implicate the Sixth Amendment. *See Giles*, 554 U.S. at 376 ("[O]nly *testimonial* statements are excluded by the Confrontation Clause.") (emphasis in original); *Davis*, 547 U.S. at 821 ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."). Accordingly, the statements made to co-defendants are not "testimonial" and thus are not covered by the Confrontation Clause.

The Supreme Court has defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51 (citation omitted). The Court in *Crawford* did not provide a comprehensive definition of "testimonial," but it identified various formulations of what it characterized as "the core class" of testimonial statements:

> *[E]x parte* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . ;
>
> extrajudicial statements…contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions . . . ; [and]
>
> statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (internal citations and quotation marks omitted).

Since *Davis*, courts have evaluated the "primary purpose" of a statement to determine whether it is testimonial or non-testimonial. *See Davis*, 547 U.S. at 822. Under this test, a court is to consider "all of the relevant circumstances" in assessing whether a statement was made "with the primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 358, 369 (2011).

By any standard, the statements at issue in Defendants' motions are non-testimonial and, thus, are beyond the reach of the Confrontation Clause. The communications did not take the form of *ex parte* in court-testimony or extrajudicial statements such as affidavits, custodial examinations, depositions, prior testimony, confessions, or any other statement that an objective person would reasonably believe would be used in trial. As such, they fall far outside the "core class" of testimonial statements that the Supreme Court described in *Crawford*.

Rather, the statements that these Defendants and cooperators made to each other in prison are directly analogous to the in-prison statements that the Tenth Circuit held admissible in *United States v. Smalls,* 605 F.3d 765, 768 n.2 (10th Cir. 2010). *See DeLeon* MOO at 153-55.

## II. Statements Made in Jail (non-testimonial, against interest) are Admissible.

Defendant Christopher Garcia moves the Court to prohibit the Government from an attempt to "introduce, elicit, or attempt to elicit statements made by defendants named in the second superseding indictment that refer or implicate another defendant." Doc. 1517 at 3. He suggests that, under *Bruton*, these statements violate his Sixth Amendment right to confront his accusers*. See Bruton,* 391 U.S. at 124-26. But *Bruton* holds only that admission of a non-testifying co-defendant's *confession* which implicates another defendant violates the latter's Sixth Amendment Confrontation Clause rights, because it deprives the latter of the right to cross-examine the declarant. *See* 391 U.S. at 124-26. Similarly, Defendant Rudy Perez asserts for

much the same reasons that the Court should not allow his former co-Defendant Timothy Martinez to testify "that '[Defendant Daniel] Sanchez had obtained the shanks from 'fat ass' the nickname Sanchez used for Rudy Perez.'" (Doc. 1514 at 1.)

Garcia's suggestion that introduction of "statements made by defendants named in the second superseding indictment" against the remaining defendants violates *Bruton* fails, as does Perez's contention, because *Bruton* applies only to testimonial statements. *See Smalls,* 605 F.3d at 768 n.2; *DeLeon MOO* at 153-55. A testimonial statement is a "formal declaration made by the declarant that, when objectively considered, indicates" that the "primary purpose of the [statement is] to establish or prove past events potentially relevant to later criminal prosecution." *Smalls*, 605 F.3d at 777-78 (quoting *Davis v. Washington,* 547 U.S. 813, 822 (2006)).

The statements made by Garcia's and Perez's co-Defendants were not made to be used for investigation or prosecution of a crime. *See Smalls,* 605 F.3d at 777. The defendants and cooperators were speaking to their fellow co-conspirators during the course of the conspiracy, including, in the case of Jerry Armenta's knowledge of Defendant Anthony Baca's involvement in the Javier Molina murder, the attempt to hide the conspiracy from law enforcement. (*See* Doc. 1540 at 1-3 (asking the Court to preclude Armenta from testifying to his knowledge that Baca was involved in the Molina murder)).[1] Indeed, no law enforcement official or any other third party participated in these conversations. There simply is no sound basis in the facts to conclude

---

[1] It appears that Baca also seeks to exclude Armenta's testimony that "Anthony Ray Baca 'is, or was, the man in charge.'" (Doc. 1540 at 2.) The Court properly should conclude that his co-Defendants' statements that Baca called the Molina murder are co-conspirator statements, as they furthered the conspiracy by avoiding law enforcement understanding of the murder. But regardless whether the Court reaches that conclusion, the Court certainly should not exclude Armenta's first-hand knowledge as an SNM member at the time that Baca was in charge of the SNM. (Of course, the United States concedes it can't enter the statement Armenta made to law enforcement, as opposed to Armenta's in court testimony to the same.) Finally, Armenta's statement was discussed in Court on December 20, 2017, and the United States intends to look into the statement and Armenta's basis of knowledge for the statement further.

5

that the primary purpose of the statements was to "establish or prove past events potentially relevant to later criminal prosecution." *Smalls,* 605 F.3d at 777. The statements, in short, were not testimonial.

Finally, Sanchez's statement to Martinez that Sanchez received the shanks from Perez, and Rodriguez's statements to Montoya that the shanks came from Perez's walker meet the second and third elements of co-conspirator statements. (*Contra* Doc. 1514 at 2 (citing *United States v. Sinclair*, 109 F.3d 1527, 1533 (10th Cir. 1997))). With regard to the second element -- Perez's membership in the conspiracy -- the Court heard Perez's admissions during the December motions to suppress hearing and during the November and December *James* hearing that Perez: (i) admitted multiple times that he was a member of the SNM; and (ii) admitted to Billy Cordova in prison while Cordova was unknowingly recording Perez that Perez volunteered his walker, because it was the only way he could put in work (give "*skina*") to the SNM. (*See* Transcript of Perez Recording, Gov't Exhibit 17 to the December Motions to Suppress hearings.) The Court also heard during Perez's testimony at the December 13 Motion to Suppress hearing that Perez told Cordova what Cordova wanted to hear, so that Cordova would spread the word and put to rest any concern by SNM members that Perez may be a rat. How would Perez's admission to Cordova that he voluntarily provided his walker to be fashioned into shanks put that concern to rest? Because Perez did, in fact, volunteer his walker to Sanchez to be put into shanks. Thus, this rational and reasonable inference from Perez's own testimony, along with Perez's admission to NMSP Officer Palomares that he's a long-time member of the SNM in good standing, is sufficient to conclude that Perez, along with Sanchez and Rodriguez, "were members of that conspiracy." (Doc. 1514 at 2).

In relation to the third and final co-conspirator element -- "the statements that the United States seeks to admit were made during the course and in furtherance of the conspiracy," (*id.*) -- the knowledge that Perez's walker, as opposed to other shanks lying around, and especially those that may have come from the wheelchair program, helped the coconspirators avoid detection and prosecution for their crime, renders these statements in furtherance of the conspiracy. As the Court heard during the November and December *James* hearings and December motions to suppress hearings, law enforcement followed the red herring that the SNM planted about the shanks used in the Molina murder coming from the wheelchair program. Instead of following investigatory leads that would lead them to Perez's walker, and Perez's involvement in the Molina murder, they followed the rumors from all involved (and some not) about shanks coming from the SNMCF wheelchair program. Thus, Rodriguez's statement to Montoya and Sanchez's statement to Martinez about Perez providing the shanks from his walkers helped further the conspiracy by allowing all of the Defendants to know from where the shanks came, and from where they did not, which would lead to a dead-end investigation if inquired about by law enforcement. Thus, these statements "relate to 'avoiding detection by law enforcement personnel' [and] can be in furtherance of the conspiracy." *United States v. Alcorta*, 853 F.3d 1123, 1139 (10th Cir. 2017) (quoting *United States v. Williamson*, 53 F.3d 1500, 1520 (10th Cir. 1995)). *See United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir. 1988) ("[C]oncealment of the crime done in furtherance of the main criminal objectives of the conspiracy falls within the coconspirator exception."); *United States v. Skidmore*, 254 F.3d 635 (7th Cir. 2001) (statement by wife of defendant that helped prevent further detection of defendant's crimes held to be in furtherance of the conspiracy because it helped avoid detection). Accordingly, these statements

made to conceal from law enforcement the source of the shanks were made in furtherance of the conspiracy.

Additionally, these statements are also admissible as in furtherance of the conspiracy as they are "part of a conversation among coconspirators about ongoing activities in the conspiracy itself." *United States v. Lewis*, 10 F.3d 1086, 1091 (4th Cir. 1993). Because the conspiracy is a VICAR conspiracy to murder, which includes as an element that it was done in furtherance of or to gain some type of benefit from the SNM gang, these statements show that Perez voluntarily participated as a coconspirator in the murder in the only way in which he was physically able, which, thus, further his standing in the SNM and the VICAR conspiracy to murder. *Cf. United States v. O'Malley*, 796 F.2d 891, 901 (7th Cir. 1986) (holding as properly admissible a coconspirator's statement that he had "expected" a fire, even though the fire occurred at the victim's house one week before the statement was made, because "his comment might very well be interpreted as an attempt to strike fear into [the victim] to ensure that he . . . continued to deliver timely payments to the conspirators"). Thus, these statements were made in furtherance of the conspiracy.

All of these statements made within the prisons are, thus, non-testimonial co-conspirator statements. Because *Bruton* does not apply to these non-testimonial statements between co-conspirators in the prison walls, *see id.* at 768 n.2, Defendants' Sixth Amendment rights would not be violated by admitting the statements into evidence. The Court should therefore deny the Defendants' motions in limine.

To the extent that the United States has in its possession testimonial statements made by cooperators or by Defendants themselves, the United States will not seek to admit those statements against other co-Defendants in violation of *Bruton* and *Crawford*. Rather, the United

States is aware that it may only admit those testimonial statements against the Defendant who made them, and will seek to do only that.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the motions to exclude co-defendant statements be denied.

                Respectfully submitted,

                JAMES D. TIERNEY
                Acting United States Attorney

                *Electronically filed on 12/21/17*
                MARIA Y. ARMIJO
                RANDY M. CASTELLANO
                MATTHEW M. BECK
                Assistant United States Attorneys
                200 N. Church Street
                Las Cruces, NM   88011
                (575) 522-2304

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

/s/
RANDY M. CASTELLANO
Assistant United States Attorney