1           IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                    CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8                     VOLUME 2

9         Transcript of Combined Motions to Suppress
     Proceedings and Daubert Hearings before The Honorable
10   James O. Browning, United States District Judge, Las
     Cruces, Dona County, New Mexico, commencing on
11   December 19, 2017.

12
     For the Government:  Ms. Maria Armijo; Mr. Randy
13   Castellano; Mr. Matthew Beck

14   For the Defendants:  Mr. Brock Benjamin; Ms. Cori
     Harbour-Valdez; Mr. Patrick Burke; Mr. Robert Cooper;
15   Mr. Jeff Lahann; Mr. Orlando Mondragon; Mr. Billy
     Blackburn; Mr. Scott Davidson; Ms. Amy Jacks; Mr.
16   Richard Jewkes; Ms. Amy Sirignano; Mr. Christopher
     Adams; Mr. Marc Lowry; Ms. Theresa Duncan; Ms. Carey
17   Bhalla; Mr. William Maynard; Ms. Justine Fox-Young;
     Mr. Donovan Roberts; Ms. Lisa Torraco; Ms. Angela
18   Arellanes; Mr. Jerry Walz

19
     For the Defendants (Via telephone):  Mr. James Castle
20

21

22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Good morning
 2    everyone.  It looks like everybody has an attorney
 3    this morning.  Let's see, Ms. Duncan, your paralegal
 4    Erin Glasser is calling in.  Ms. Glasser, are you on
 5    the phone, yet?
 6              MS. GLASSER:  I am, sir.
 7              THE COURT:  All right.  Ms. Glasser, good
 8    morning to you.
 9              Any other changes in counsel, people that
10    are here?  Do I need to note any?
11              All right.  Mr. Adams, I talked to Ms. Wild
12    last night.  It appeared that what you were trying to
13    tell me is encompassed in a document that Ms.
14    Sirignano had filed.  Am I missing something?  Am I
15    not tracking what you're trying to tell me?  What I
16    understood you were trying to tell me -- and if I'm
17    wrong, tell me -- but is that you had some documents
18    from Christopher Garcia's drug case, or some motions
19    that you wanted to pull into this case, and I need to
20    hear them.  Those are the motions to suppress, that
21    we fully heard, and I need to give you an opinion on
22    those.  I think I orally gave you rulings on those,
23    but you wanted me to take a look at those again, give
24    you a more detailed findings of fact and conclusions
25    of law.  Is that what you were trying to tell me?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. ADAMS:  That is most of what I was

 2    trying to tell you.  I did want to point out one

 3    document or one issue in particular that you did not

 4    rule on.  And if I may, we did a suppression motion.

 5    We filed a motion to suppress a three-hour statement

 6    in the 15-4275 case.

 7            THE COURT:  That's the drug case?

 8            MR. ADAMS:  Yes, sir.  Our motion to

 9    suppress was 184, the Government's response was at

10    226, and our reply was at 246789.  We had a full-day

11    hearing on May 4, 2017, and the transcript is at ECF

12    264.  We also -- with Joseph Sainato, the Special

13    Agent testified -- we also incorporated testimony

14    from Sergeant Lerner about -- from April 13, 2017.

15    And that transcript is at ECF 254.  And in that one

16    he had talked about driving Chris Garcia; arresting

17    him, driving him over and Chris Garcia said, "Gorence

18    is my guy."  And he knew Gorence to be a lawyer.  In

19    the interrogation, the first 16 minutes took place

20    pre-Miranda.  And Joseph Sainato said he'd forgotten.

21    But he'd been trained to do Miranda, but he'd also

22    been trained it's okay to get him talking first, was

23    the testimony.

24            They came in and said, "Tell us about the

25    Marcantel hit, tell us about SNM, who ordered it, et
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    cetera, et cetera.  When we got to the argument part
 2    of the case, you had pressed the Government on:
 3    Well, what are you trying to use?  And they pointed,
 4    Ms. Armijo pointed to comments on page 199 of the
 5    transcript.  And you --
 6                THE COURT:  That's after the gap?
 7                MR. ADAMS:  That was about two-and-a-half
 8    hours after the Miranda.  And your impression at the
 9    time -- and you never did a written order on this --
10                THE COURT:  Right.
11                MR. ADAMS:  -- you said, you know, my view
12    just sitting here is I really need to dig into the
13    case law on this.  My gut is telling me that Chris
14    Garcia really seemed like he wanted to talk.  You
15    know, how does that factor into the equation?  And
16    the stuff about the drugs didn't come up at all until
17    so much after the Miranda.  It's not like when this
18    issue comes up in the other context, which I took to
19    mean, in 4268, and in the 16-1613 case.
20                So that was the issue.  And then we pled in
21    the drug case before an order was drafted.  So I
22    think even if your written order had been consistent
23    with what your gut was that day, that this issue for
24    this case would have been different, because the
25    pre-Miranda material was all about the SNM
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    enterprise, all about the leaders of the gang, and

2    all about who ordered the hit, and who had

3    involvement in the Gregg Marcantel conspiracy.

4              So, our view is, even if you'd ruled

5    against us before, which you never did, we think this

6    pre-Miranda stuff so taints the rest of the statement

7    that none of it should be admissible.

8              THE COURT:  Now, is that document one of

9    the ones on Ms. Sirignano's list?

10             MR. ADAMS:  Yeah.

11             THE COURT:  Okay.  So I know I owe you that

12   work.

13             My mind is -- and this will be my ruling,

14   unless this is one of the ones I take a look at

15   reconsidering, is the statement after the Miranda

16   warnings are admissible; the ones before are not

17   admissible.  And that's the way I'll cut it.  If

18   y'all -- if this one goes to the top of the list and

19   this is one you want me to spend some time with, then

20   I will.

21             MR. ADAMS:  I can certainly tell you

22   without consulting any of the other defense counsel,

23   this is at the top of our list.  We would love to get

24   a written opinion.  And if we have a disagreement, it

25   can be resolved somewhere else in one day, I suppose.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Thank you very much.

2           THE COURT:  I think I got the opinion out

3   yesterday on defendant Daniel Sanchez' motion to

4   sever or reconsider.  So that came out yesterday if

5   you didn't see it.

6           Ms. Harbour-Valdez, I think I cut you off a

7   little bit at the end of the day because I was trying

8   to get everybody out of here.  What did you need to

9   bring up?

10          MS. HARBOUR-VALDEZ:  Your Honor, we were

11  going to ask if the Group 2 motions in limine could

12  be put off until closer to our trial, to devote the

13  time that we have now to the Group 1.

14          THE COURT:  Have you talked to Ms. Wild

15  about that?

16          MS. HARBOUR-VALDEZ:  That's what I thought

17  we had talked to her about last week, that all the

18  individual Group 2 motions in limine were going to be

19  pushed aside.  The ones that were dealing with

20  everyone, like the motions in limine that were filed

21  on behalf all defendants, would be taken up while we

22  were together.

23          THE COURT:  Well, let's see if she's on the

24  phone.  Ms. Wild, are you there?

25          THE CLERK:  I am.  But I could not hear

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    anything that Ms. Harbour-Valdez just said.
 2              THE COURT:  Well, let me summarize it for
 3    you, because it's fairly important, given that the
 4    motion I'm holding in my hand to take up next is Mr.
 5    Troup's motion in limine on bad acts.  I was going to
 6    use it as the way to start getting into this thing.
 7    But what Ms. Harbour-Valdez is saying, can we take
 8    off the motions in limine of the Group 2 defendants,
 9    ones that are going to be tried in April, and just
10    focus on the ones for the Group 1, and then also the
11    ones that are general that go to both.  The list of
12    motions in limine that you gave me were not so
13    segregated, so I was wondering what your thoughts and
14    understanding was.
15              THE CLERK:  Well, first, the listing was
16    just the order in which I believe that they were
17    filed.  The reason that I prepped you for everything
18    was because of generalities, and to maybe try and use
19    the Court's resources most efficiently.  If there was
20    bleed-over or things that you could address generally
21    as to all defendants, this would be the time to do
22    it.  If you're comfortable waiting to take up the
23    specifics until we're closer to trial for Group 2, I
24    think that's fine.  But that was the purpose in
25    prepping you the way that I did.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.  Well, if then, nobody
 2   has any objection to that, then we'll go ahead and
 3   put the Group 2 motions in limine, your specific
 4   motions in limine aside.
 5              All right.  Two people have come on the
 6   phone.  Who has come on the phone that hasn't entered
 7   an appearance?  And make sure that your mute button
 8   is not on as you talk.
 9              THE CLERK:  Judge, I dropped off, and just
10   go back on the line.
11              THE COURT:  Okay.  All right.  So I am
12   moving then, unless somebody has something better to
13   move to, to Document 1505, which is a joint motion by
14   the defendants to prohibit cooperating and other
15   witnesses from testifying to fear of defendants, the
16   SNM, or retaliation, and about any witness protection
17   measures.
18              Let me give some thoughts on this, and then
19   I'll hear what anybody wants to say on this.  I'm
20   trying to think -- and the Government may be able to
21   think of some reason why they should, but I can't
22   think of any sort of independent reason that the
23   cooperating witnesses should take the stand and
24   testify about their fear of testifying against the
25   defendants.  It seems to me that that has a number of
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    issues and problems.

 2            First of all, if the defendants -- I mean,

 3    if the cooperating defendants are going to be

 4    testifying that they're afraid of the defendants, it

 5    seems to me that the jury may be sitting over there

 6    thinking, Well, maybe I should be afraid, too.  That

 7    seems to me it doesn't help the defendants, because

 8    if they are fearful of the defendants, they may feel

 9    like, well, they better just not convict anybody for

10    fear of what might happen to them.

11            On the other hand, it could also work the

12    opposite against the defendants; that they better

13    convict all these guys so that they're not out to

14    hurt cooperating or themselves.

15            So I think it's a two-edged sword.

16    Everybody in the room can sort of evaluate that for

17    their own.  But I'm trying to think of how there is

18    any probative value that is legitimate for them

19    testifying about just a general fear.

20            As far as SNM, it seems to me the

21    cooperating defendants can talk about SNM, if they

22    have personal knowledge of that.  So it seems to me I

23    shouldn't be excluding just their discussion of SNM.

24    We'll just have to take those one at a time.  They

25    have to be testifying from personal knowledge.  But I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   would assume that many of the cooperating defendants

2   do have some relevant information and testimony about

3   SNM.  So I'd be inclined to deny that as a blanket.

4        Also, it seems to me that they may know and

5   have personal knowledge of retaliation in specific

6   instances against witnesses and other people who

7   cooperate and snitch and those sort of things.  And

8   so it would seem to me that I can't blanket knock

9   that evidence out of the case from cooperating

10  witnesses.  So I'd be inclined to deny that.

11       And then, as far as any witness protection

12  measures, it seems to me that probably falls within

13  the same comments I had about cooperating witnesses

14  testifying about fear.  On the other hand, it may be

15  that the defendants have some reason to bring that

16  up.  And if they do, and they open the door because

17  it's part of any plea agreement or agreement that

18  that witness has with the Government, then they can't

19  open the door and then shut it for the Government.

20  So it's got to come in, but I think it's probably

21  going to be for the defendants' choice, rather than

22  the Government's choice as to whether they talk about

23  witness protection measures.

24       So those are my thoughts coming in about

25  how to deal with this.  I think this was Mr. Villa's

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                 1-800-669-9492
                                                       e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   motion.  Ms. Fox-Young, are you going to argue it?
 2            MS. FOX-YOUNG:  Sure, Your Honor.
 3            THE COURT:  How close did I get to
 4   something you can live with?
 5            MS. FOX-YOUNG:  I think we can absolutely
 6   live with the Court's proposed ruling.  And we just
 7   ask that the Court take up any specific threats --
 8   and I don't think the Court can anticipate everything
 9   that will come up from either side -- but just take
10   them as they come at trial.
11            But I think the Court's ruling in terms of
12   a blanket ruling and a general fear is exactly what
13   we were looking for.
14            THE COURT:  Like Mr. Perez was testifying
15   in his testimony that he didn't want to get labeled a
16   snitch, and you know, thought that it was useful to
17   get information out there so people didn't do things
18   to him.  I think it's just hard to probably blanket
19   exclude retaliations, because it seems to be part and
20   parcel of the story that's going to be told.
21            MS. FOX-YOUNG:  I think the Court
22   understands what Mr. Villa was getting at in terms of
23   generalized fear.  And we'll just have to take them
24   issue by issue at trial.
25            Thank you, Your Honor.
```

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                              1-800-669-9492
                                                             e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1                THE COURT:  Thank you, Ms. Fox-Young.

 2                Anybody else?  Everybody on the defense

 3    side can live with kind of the line I propose?  Let's

 4    see what the Government says here in a moment.  Mr.

 5    Castle, do you want to comment on that?

 6                Ms. Rodriguez, are you on the phone now?

 7                MS. RODRIGUEZ:  I am, Your Honor.

 8                THE COURT:  All right.  Ms. Rodriguez, good

 9    morning to you.

10                MR. RODRIGUEZ:  Good morning, sir.

11                MR. CASTLE:  Your Honor, the only comment I

12    have is that in the Government's response -- and I

13    think we're anticipating might happen at trial -- is

14    that one defendant might open the door to evidence of

15    fear.  The concern I have that I want to raise -- I'm

16    not sure I'm asking for a ruling right now, but I'm

17    just lodging this concept with the Court -- is that,

18    just because one defendant might open the door to

19    something, the other defendants aren't necessarily

20    agreeing to that door being opened and the prejudice

21    that flows from that act being shared by everyone.

22    So I think we have to be real careful that a

23    particular defendant opens the door to fear evidence,

24    that it's got to be fear of that particular

25    defendant.  Because, otherwise, all the defendants

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    will be painted with a brush that they didn't hold in

2    their hand.  So that's the concern I raise to the

3    Court, because I think there are different strategies

4    that different lawyers want to take.  And one example

5    that I would give is one we talked about a little bit

6    yesterday, is monies that are given to a particular

7    witness.  If there are expenses, one defense lawyer

8    might avoid that, saying, Well, that's witness

9    protection money.  That was expenses necessary to

10   protect that witness.  Another lawyer might decide,

11   Well, I'm going to go for it, and I'm going to go

12   ahead and put that evidence on.  That shouldn't

13   prejudice the defendant that holds their cards close

14   to their vest and makes sure that their client

15   doesn't open the door to prejudicial information.

16          That's the problem with co-defendant cases.

17   But that's the way the Government has chosen to

18   indict this case.  This isn't the way these

19   defendants chose to be tried.  In fact, I think every

20   one of them has moved for a severance.  So when we

21   get to that bridge that needs to be crossed, I just

22   raise that concept that we may need to tailor any

23   remedy that the Court orders to the circumstances at

24   hand.

25          THE COURT:  Well, I hear what you're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    saying, and I am not -- I guess I'll indicate that I

2    guess I'm not -- I probably will not be quick to find

3    that the door has been opened, or it's been opened so

4    wide that we run a truck through what we're working

5    out here today.

6             But, at the same time, I think it may be

7    hard, once some defendant decides to put fear in the

8    courtroom, we don't generally sort of talk

9    specifically about defendants.  We don't specifically

10   talk about cooperating witnesses.  Sometimes it gets

11   generalized.  And so I think what you're saying, and

12   I think I agree, we may just have to play it by ear

13   at that point.  But I've got to be fair and sort of

14   think about what's going on.  I mean, if one

15   defendant is over there jumping up and down talking

16   about fear, you know, I may not be able to do much

17   about it.  It might be that I just have to sort of

18   say, Well, it's in the room, and we've got to deal

19   with it.

20             MR. CASTLE:  I think, at that point in

21   time, we'll all make our records and move from there.

22             THE COURT:  Fair enough.

23             Anyone else before I hear from the

24   Government?  Everybody fairly comfortable with where

25   I'm proposing to draw the line on this issue?  All

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1   right.
 2              Mr. Castellano, are you going to be the
 3   one?  Mr. Beck?  Can you live with what I'm banging
 4   out on this motion?
 5              MR. BECK:  I can.  And I think with regard
 6   to Mr. Castle's comment, you know, if a defendant
 7   chooses to cross-examine a witness about promises
 8   made, and brings out that promise was made to
 9   relocate the cooperating witness either before or
10   after trial or during trial, relocate the witness'
11   family, or anything like that, well, then, I mean, I
12   if think that opens the door to the Government
13   saying:  Why is this happening.  And I think, in that
14   case, if a defendant then wants to go and say, Well,
15   are you specifically afraid of my client, they're
16   able to do that on recross.  So I think that's just
17   the way it will play out.
18              I mean, the Government doesn't intend to
19   bring out any generalized witness fears on direct
20   examination.
21              THE COURT:  I think that what we're banging
22   out is -- puts an additional burden on you, as far as
23   your cooperating witness.  I think you need to talk
24   to them about -- because Mr. Cordova was -- he's a
25   little bit of a live wire here.  I mean, once he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  started talking, he was talking.  So I think you're
 2  going to have to talk to him a little bit about:
 3  Don't bring that up on your own.  If you get asked,
 4  and you have to answer, then just be truthful, and do
 5  what you got to do and say what you got to say.  But
 6  they probably shouldn't walk in here and drop, you
 7  know, right off the top the bomb that they're afraid
 8  to be here and they're scared of everybody in the
 9  room.  So talk to them about it before they take the
10  stand, so we don't inadvertently and unwantingly get
11  that issue dropped on us and we have to deal with it.
12          MR. BECK:  We'll do that with all of these
13  pretrial rulings, Your Honor.
14          THE COURT:  Anything else, Mr. Beck?
15          MR. BECK:  No, Your Honor.
16          THE COURT:  Anybody else on the defense
17  side?  Ms. Fox-Young?  Anybody else have anything on
18  that issue?  All right.  So we'll so proceed on
19  Document 1505.
20          Let's go to 1512.  My -- refresh my memory
21  on this.  I think it might have been labeled a little
22  bit different.  This, again, I think is from you and
23  Mr. Villa, Ms. Fox-Young, but is this different than
24  your bad acts?  Or is this a new motion, a new
25  version of what we dealt with earlier that -- well,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    let me just hear what you're trying to do here rather
 2    than me trying to characterize it.  It seems like we
 3    might have sort of dealt with this in the past.
 4              MS. FOX-YOUNG:  Your Honor, I'm looking for
 5    1512, if you just give me a moment.
 6              THE COURT:  This is the opposed motion to
 7    exclude references to and evidence of unrelated
 8    enterprise acts.  That sounds to me a little bit like
 9    the 404(b), which I think you have a separate 404(b)
10    motion.
11              MS. FOX-YOUNG:  We do, Your Honor.  I think
12    a number of defendants joined this motion, 1512.  And
13    I think the Court maybe has already at least
14    partially ruled on this issue.  But this motion --
15    and we may take this up with each 404(b) motion
16    individually -- but we're moving the Court to exclude
17    specifically enterprise acts from the second trial,
18    and certainly from the other cases, unless there is,
19    you know, a relevance finding.
20              I think the Court has construed the
21    racketeering enterprise, the RICO broadly.  I don't
22    know if the Court wants to take another look at that
23    with respect to the individual bad acts.  But that's
24    what we're asking for here.  You know, for instance,
25    Mr. Castle and Mr. Cooper's client is in the trial
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    with allegations dating back to the year 2000.  We
2    don't think that those acts, those allegations,
3    should come in, you know, for the Government to prove
4    up the existence of the enterprise, when they have
5    nothing to do with Molina and the Marcantel counts.
6              THE COURT:  So this just relates to the
7    second trial?
8              MS. FOX-YOUNG:  The second trial, 1613, and
9    the other stand-alone cases as well.
10             THE COURT:  But it doesn't apply to the
11   first trial?
12             MS. FOX-YOUNG:  It applies -- what we're
13   asking is that none of these acts from the second
14   trial and the other indictments come in at the first
15   trial.
16             THE COURT:  Okay.  Well, my sense is I've
17   already ruled on that.  I mean, I hit it again in Mr.
18   Sanchez' motion to sever yesterday.  I plowed through
19   that.  So I think I've looked at that several times.
20   I may be wrong, but --
21             MS. FOX-YOUNG:  I think you have, Your
22   Honor.  I read that, and we don't need to rehash it.
23             THE COURT:  All right.  Anybody else got
24   anything on this?  Mr. Burke?
25             MR. BURKE:  Your Honor, this may be a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   motion that we reraise before the Group 2 trial,
 2   because we'll have to see what sorts of --
 3             THE COURT:  On the second trial?
 4             MR. BURKE:  Yes, Your Honor.  All right.
 5   Thank you.
 6             THE COURT:  But you were also, Ms.
 7   Fox-Young, raising it at the first trial, keep the
 8   evidence out on those counts out of the first trial,
 9   right?
10             MS. FOX-YOUNG:  Yes, Judge.
11             THE COURT:  Anybody else want to say
12   anything on this?  I don't mind relooking at it.  But
13   I have looked at it several times, and keep coming to
14   the same conclusion.
15             Mr. Castellano?  Mr. Beck.  Anybody want to
16   say anything on this?  Mr. Castellano?  Do you think
17   I'm getting it right?
18             MR. CASTELLANO:  I think you are, Your
19   Honor.  We filed an omnibus response to the bad acts
20   motions, which is --
21             THE COURT:  Yeah, I haven't gotten all the
22   briefing -- I've read it all, but I haven't gotten it
23   all linked up by paper clip.
24             MR. CASTELLANO:  This Document 1581, I
25   don't think we have to go into it right now.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  What's the number on in?
 2              MR. CASTELLANO:  It's 1581.  But what I'll
 3     do is just highlight one of the cases, which is the
 4     Diaz case from the Second Circuit.  It's 176 F.3d 52.
 5     And just to give the highlights, there is a
 6     discussion in here about admission of bad act
 7     evidence.  And it says, "The Government introduced
 8     evidence of prior uncharged crimes and other bad acts
 9     that were committed by defendant appellants and
10     Government witnesses.  And ultimately the district
11     court admitted this evidence, finding that it was
12     relevant because it tended to prove the existence,
13     organization, and nature of the RICO enterprise, and
14     a pattern of racketeering activity of each defendant
15     appellant."
16              THE COURT:  And you would agree with me on
17     this statement I'm about to make as a general
18     principle for what we're looking at at trial, if
19     you're going to use this to establish enterprise or
20     furtherance of the enterprise's activities, you can't
21     just have a stand-alone bad act; you've got to link
22     it up in some way, and have evidence that it is not
23     just some individual's bad act, but it is part of
24     their efforts on behalf of the enterprise.
25              MR. CASTELLANO:  I agree with that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    statement, Your Honor.

2           Also, on the same case, Diaz, there is a

3    discussion of spillover effect.  And this was also a

4    motion to sever that was denied.  And in that

5    discussion, one of the defendants noted that he was

6    implicated in only one of nine murders.  He was tried

7    over three months before the same jury, who heard

8    volumes of evidence.  Ultimately, the Court noted

9    that "the evidence in dispute is relevant to the

10   charges against all RICO defendants because it tended

11   to prove (1) the existence and nature of the Latin

12   Kings and their RICO enterprise; and (2) a pattern of

13   racketeering activity on the part of each RICO

14   defendant by providing the requisite relationship and

15   continuity of illegal activities."  So here was a

16   situation where he was charged in only one of nine

17   murders, but as the Court also ruled recently in the

18   denial of the motion to sever, it comes in against

19   all defendants.

20           But you're right, we do have to link it up

21   to the enterprise.  It can't be just some stand-alone

22   act that's a bad act.

23           THE COURT:  And are you taking the same

24   position, and do you think you're correct on the

25   evidence that's coming in, you've been working on the

SANTA FE OFFICE                                         MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    James hearing with the co-conspirator statements?
 2              MR. CASTELLANO:  Yes, the same thing, Your
 3    Honor.
 4              THE COURT:  So you prove one conspiracy
 5    here, you've got another conspiracy over here, it
 6    comes in against both of them because both
 7    conspiracies are in furtherance of the enterprise and
 8    its activities?
 9              MR. CASTELLANO:  That's correct.
10              THE COURT:  And that's Smalls, right?  So I
11    don't have to deal with a bunch of Bruton problems in
12    there because of the way Smalls from the Tenth
13    Circuit deals with that.
14              MR. CASTELLANO:  That's correct.  So we'll
15    have a number of things going on.  I think we'll have
16    three categories.  We're going to have co-conspirator
17    statements under James.  Then we'll have statements
18    pursuant to Smalls, which will be statements against
19    interests which point a finger at other defendants.
20    And then, ultimately, there are Bruton statements out
21    there.  I think that number will be small in this
22    case.  I think, the only one I can think of right
23    now --
24              THE COURT:  When you say "this case," are
25    you talking about the first trial or just the case
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    overall?
2              MR. CASTELLANO:  Overall.  I think the Jose
3    Gomez assault is the one that has statements in there
4    that may be redacted.  I can't think of any others
5    other than that particular incident.
6              But I think the Court has a right, and I
7    pointed out another case from the Second Circuit
8    which talks about that.  There is also another
9    case -- and I can get it, Your Honor -- it's a Tenth
10   Circuit case, U.S. versus Harris; it's 695 F.3d 1125
11   from 2012.  And this is a discussion that we've had
12   numerous times in court.  And one of the issues in
13   the Harris case was that the overarching enterprise
14   was the Crips Gang, and there were three sets, or
15   subsets.  So there were the Deuce Trey Crips, the
16   Insane Crips, and the Tre Five Seven Crips.  But
17   ultimately, they were three groups who had come
18   together at various times.  And ultimately, the Court
19   held that the three Crips sets together constituted
20   an association-in-fact enterprise.  So I know there
21   has been discussion about the Old Timers and the
22   Dropouts, and the All Stars.  But ultimately, our
23   facts in this case are stronger than the facts in
24   Harris.  So, ultimately, this will come in against
25   the entire enterprise.  And that's the Harris case,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Tenth Circuit.
2              THE COURT:  Anything else, Mr. Castellano?
3              MR. CASTELLANO:  No, Your Honor.
4              THE COURT:  Ms. Fox-Young, any further
5    comments on it?
6              MS. FOX-YOUNG:  Just one brief comment,
7    Your Honor.  I think the cases, Diaz and Harris, and
8    some of the other cases that the Government cites are
9    not cases where there was a severance.  I think the
10   Court still does need to do 403 analysis.  It may be
11   a little bit hard to do in the abstract.  But with
12   respect to very old, very dated acts coming in in the
13   first trial, if the Government can't tie them up and
14   connect them, I think the analysis is different where
15   Your Honor has granted a severance.  And I understand
16   the basis for the severance was not necessarily that
17   the Court's concerned about prejudice.  But that
18   there may be instances where that 403 analysis yields
19   a different result.  And I just would ask the Court
20   to keep that in mind.
21             THE COURT:  I'm always worried about
22   prejudice.
23             MS. FOX-YOUNG:  Thank you, Judge.
24             THE COURT:  Never leaves my mind.
25             Thank you, Ms. Fox-Young.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Anybody else want to comment on this
 2    motion?  All right.  So that motion is pretty much
 3    denied.  I may take another look at some of these
 4    cases, but I think we've plowed that ground pretty
 5    hard.
 6              All right.  Let's go to the moniker, alias
 7    names.  Let me use Mr. Acee a little bit as an
 8    example here, and see if I can separate out maybe
 9    some of the problems.  If the case agent is on the
10    stand, and he's talking about alias names and
11    monikers, I guess I do that with some caution,
12    because it seems to me he may have gotten that
13    information solely from other people and not having
14    personal knowledge.
15              On the other hand, if a cooperating witness
16    is on the stand talking about monikers, talking about
17    aliases, those sort of things, and that's just what
18    he calls -- and he can say I called him "Pup" Baca.
19    He calls him that, it seems to me I shouldn't
20    probably be excluding that.  So I guess what I would
21    suggest is that -- I guess my proposal would be that
22    Mr. Acee and other people that may be, like him,
23    testifying as case agents, or something, not use
24    alias names, not use monikers, those may be somewhat
25    argumentative, and may not have personal knowledge of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    them, other than what he's been told, there not be
 2    restriction on cooperating witnesses and people that
 3    have personal knowledge.  They can use whatever names
 4    they use.  As we saw from the testimony last week, I
 5    think it was Mr. Perez and Mr. Cordova both at times
 6    didn't know their real names.  They only knew them
 7    through monikers and aliases.  So it seems to me I
 8    shouldn't restrict it there.
 9              In closings, it would seem to me that the
10    Government is free to use whatever it wants to, in
11    arguments.  It should not use those in probably
12    opening statements.  But that's, I guess, where I was
13    inclined to draw the line here.
14              Hold on.  Let me see if there was something
15    else I wanted to say as an opening statement.  Well,
16    I think that's it as far as some opening remarks.
17              Ms. Harbour-Valdez, Mr. Burke, I think this
18    was your motion.  Do you think you could live with
19    where I'm drawing the line?
20              MS. HARBOUR-VALDEZ:  Yes, Your Honor, we
21    could live with that compromise.
22              THE COURT:  All right.  Anything else you
23    want to say on the motion?
24              MS. HARBOUR-VALDEZ:  Nothing else.  Thank
25    you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Any of the defendants want to
 2     comment on this, either for or against where I'm
 3     drawing the line?
 4            All right.  Ms. Armijo, what's the
 5     Government think about this?
 6            MS. ARMIJO:  Your Honor, in general, we
 7     would agree.  The only distinction I could think of
 8     is that if we have STIU officers come in here who
 9     have dealt, for instance, with Mr. Baca for years,
10     and if they call him "Pup" -- on a personal basis.
11            THE COURT:  If they're able to say, I call
12     Mr. Baca "Pup," and he responds to me, and he answers
13     to "Pup," I think that's personal knowledge.
14            MS. ARMIJO:  Okay.  Thank you.
15            THE COURT:  But I think you might have to
16     establish that, rather than -- you know, so the jury
17     doesn't get the sense that this person was just
18     trained or coached for this trial to call him "Pup"
19     for some strategic reason.  But I think if they say,
20     At the jail I call him "Pup," he responds to me.  I
21     think that's personal knowledge.
22            MS. ARMIJO:  Thank you.
23            THE COURT:  Can you live with that?
24            MS. ARMIJO:  Oh, what about business
25     records?  Mr. Beck brought up a good point.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Well, I don't think -- if
 2    something is coming in in a document, and it has
 3    their names, I don't think we're going to be
 4    sanitizing business records.  So, for example, I
 5    guess -- I don't know, I'm not sure what business
 6    record we're maybe talking about; it wouldn't be --
 7    302s wouldn't be business records, but what business
 8    records are we talking about?  What are we trying to
 9    get in under business records?
10            MR. BECK:  I'm thinking about STIU files.
11    If there is -- you know, I mean, I can't give an
12    example, but if there is like a jail business record
13    that would list their moniker on the top, and that's
14    how the jail keeps the name of them, or if we talk
15    about, you know, previous pleadings and cases where
16    there may be an a/k/a or something like that.  I
17    mean, I can't think of a specific example.  But I can
18    think of documents that we may be entering, or the
19    defendants themselves may be entering as business
20    records, and the way in which they were made and
21    preserved at the time, may refer to these folks'
22    monikers.  And so I don't think that we would be, you
23    know, sort of redacting on the fly going through all
24    these documents to redact monikers.
25            THE COURT:  All right.  I don't think the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    motion is trying to sanitize documents.
 2    Ms. Harbour-Valdez is shaking her head no.  Without
 3    ruling on whether anything is coming in, I mean, I'm
 4    not trying to say business records are coming in.
 5    But assuming they do, I don't think anybody is
 6    sanitizing.
 7              Anything else, Mr. Beck?  Ms. Armijo?
 8              MS. ARMIJO:  No, Your Honor.
 9              THE COURT:  All right.  Anybody else?  Just
10    a few sort of modifications there, everybody can live
11    with that?  Mr. Castle?
12              MR. CASTLE:  Yes, I'm looking for a
13    microphone.  Your Honor, I know the Court's not
14    making any ruling on hearsay objections.  But this
15    concept of business records exception has been
16    bandied about in numerous hearings concerning reports
17    of these investigative agencies.  That's dealt with
18    not as a business record but as a public record under
19    803(8).  And what 803(8) says is that, "Matters
20    observed while under a legal duty to report, but not
21    including in a criminal case a matter observed by law
22    enforcement personnel."  So the rules of evidence,
23    explicitly in criminal cases, indicated that law
24    enforcement reports are not admissible against a
25    criminal defendant.  And the reason for that, as we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   can all imagine, is you can try the case with just

2   the reports of the officers.  Just because they're

3   kept by the police department, that doesn't immunize

4   them from the rules of evidence.

5           So it's been indicated time and time

6   again -- let's talk about business records, but

7   they're actually analyzing it under the wrong

8   subsection of 803.  It has to be analyzed under

9   803(8), which specifically says that those kinds of

10  reports by law enforcement personnel, if they are in

11  a criminal matter, are not allowed.  And specifically

12  803(8)(a)(iii) says it's admissible against the

13  Government in a criminal case, factual findings from

14  a legally authorized investigation.  It's not

15  admissible for the Government in a criminal case.

16          And so I just bring that up because it's

17  going to be argued over and over again, I know the

18  Court is probably thinking about these issues.  The

19  rules of evidence specifically prohibit the kinds of

20  arguments -- well, not the arguments, but the

21  admission of materials that are suggested by the

22  Government here.

23          THE COURT:  All right.  I guess, without

24  giving a complete agreement with Mr. Castle, I'm

25  cautious about business records, when it's the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   Government offering them, and tend to kick into those
2   other hearsay exceptions that deal with Government
3   records, public records, and those sort of things.
4   So I've written a fair amount on these evidentiary
5   issues, both business records -- a lot of times what
6   people call business records don't really come within
7   the business records exception.  And so I do think I
8   have to be cautious about that.
9           Mr. Beck?
10          MR. BECK:  I had in mind more of the
11  placement records.  I'm aware that law enforcement
12  reports are public records.  So I wasn't thinking of
13  those.  I mean, I understand the law in this area.  I
14  don't want to --
15          THE COURT:  All right.  I've written on
16  both of these, both I think it's 508 and 506.  So I
17  think I've got opinions out there.  You might want to
18  take a look at them.  And what we might do is, you
19  know, the defendants might pick one document, the
20  Government might pick one document, or a handful of
21  documents, give them to me pretrial.  Let me take
22  look at them.  If I can sort of give you some
23  categorical rulings or some rulings on particular
24  documents, whether they're in or out, it might give
25  you some guidance.  I'll be glad to take a handful
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    from each side and see if I can give you some

2    guidance.

3          All right.  We will then put aside the

4    moniker issue.  I think we have an understanding how

5    we're going to deal with that.

6          Let's go to 1514.  This is Ms. Fox-Young's

7    motion in limine to exclude statement of cooperating

8    Government witnesses.

9          MS. FOX-YOUNG:  Your Honor, I know the

10   Court has thought about the order you want to hear

11   everything in.  It might make sense to take this up

12   after we do James, only because I don't know what

13   you'll have left.

14          THE COURT:  Okay.  All right.  I was

15   wondering if that was tied to the James hearing.  So

16   I'll put 1514 back in the mix.

17          All right.  Let's take then up 1515, which

18   is invocation of the rule.  I didn't get tied the

19   Government's response.  But from memory, I recall

20   that there was an objection to this.  So the

21   defendants are requesting that the Court order the

22   witnesses be excluded from the room for all future

23   evidentiary hearings and any trial in this matter.

24          What I would propose to do is, we take the

25   evidentiary hearings one by one.  It may not be that

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                        1-800-669-9492

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

```
 1    we need a blanket exclusion for all witnesses, but if
 2    everybody wants to do it now, we can.  But certainly
 3    at the trial, witnesses are excluded from the trial.
 4    They cannot speak to each other about their
 5    testimony.  They can't discuss their testimony with
 6    each other, although they can talk to attorneys about
 7    their testimony.  I think there is an agreement -- it
 8    looks like Mr. Acee is going to be the case agent, so
 9    he can remain in the courtroom.  Experts can remain
10    in the courtroom.
11            What else on the rule do the defendants
12    want or need?
13            MR. BENJAMIN:  I think that's it, Your
14    Honor.
15            THE COURT:  Covered it.  All right.  How
16    about Ms. Fox-Young?  It's your -- Mr. Perez' motion.
17    Anything else you can think of I need to rule on?
18            MS. FOX-YOUNG:  Nothing else at this time,
19    Your Honor.
20            THE COURT:  All right.  Do y'all -- let me
21    ask this:  Do we want to invoke the rule for all
22    further evidentiary hearings before trial?  So, in
23    other words, witnesses who are going to testify in
24    any evidentiary hearings or in trial will be required
25    and expected to remain outside the courtroom?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. FOX-YOUNG:  Yes, Judge.
 2              THE COURT:  Is the Government okay with
 3    that?
 4              MR. CASTELLANO:  That's fine, Your Honor.
 5              THE COURT:  Okay.  All right.  So from this
 6    day forth, if we have evidentiary hearings, all
 7    witnesses will remain outside of the courtroom.
 8              Anybody else?  Any other defendants want to
 9    comment on this?
10              Mr. Castellano?  Is how I'm drawing the
11    rule, is the Government comfortable with that?
12              MR. CASTELLANO:  Yes, Your Honor.
13              May I have one moment, please?
14              THE COURT:  Certainly.
15              MR. CASTELLANO:  Your Honor, we don't have
16    any objection to that.  I will note that on one
17    occasion with defense counsel's permission another
18    agent sat in so she could hear the testimony of one
19    of the experts.  That was related to the ELSUR
20    devices.  But we got permission from the defense
21    first.  So I think, if we have a request, we can put
22    that to the defense and take care of it that way.
23              And we filed a response to this motion, as
24    well to, I think, maybe Ms. Sirignano's, which was
25    the reading of transcripts during trial as well.  And
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   we had no objection to that.  We thought the case
 2   agent could do it, the experts could do it.  And if
 3   we had some reason why we thought someone else should
 4   do it, we would request that of the Court and counsel
 5   beforehand.  I don't remember the number of her
 6   motion, but we responded to a few motions.  Possibly
 7   1518, I think is the other motion.
 8             MS. SIRIGNANO:  It's 1518.
 9             MR. CASTELLANO:  So we can dispose of those
10   both at one time if the Court wanted to.
11             THE COURT:  Okay.  Everybody in agreement
12   on that?  So I understand on transcripts experts can
13   look at transcripts; that's what we talked about
14   yesterday.  But no fact witnesses will review
15   transcripts.  That will be part and parcel of the
16   rule.  All right.  Not hearing any objection, that
17   will be incorporated.
18             All right.  Anything else on those two
19   motions?  Do you have anything else, Ms. Sirignano?
20             MS. SIRIGNANO:  Yes, Your Honor.
21             THE COURT:  Let me ask Mr. Castellano, I'm
22   looking -- I know I read your response, Mr.
23   Castellano, but do you have the number on it?
24             MR. CASTELLANO:  I think it's 1571, Your
25   Honor.  You probably missed it because it was so
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    short.
 2              THE COURT:  Well, I'm just not seeing it.
 3    But that's not a problem.  Go ahead, Ms. Sirignano.
 4              MS. SIRIGNANO:  Thank you, Judge.
 5              I just wanted to clarify and make sure that
 6    your ruling is for both trial and pretrial testimony
 7    transcripts.  You might have said that, but I might
 8    have missed it.
 9              THE COURT:  Is that agreeable to the
10    Government, that the transcript rule will go into
11    effect now, so fact witnesses shouldn't be reading
12    evidentiary or trial transcripts, and they certainly
13    shouldn't in trial.  Experts can do that?
14              MR. CASTELLANO:  Yes, Your Honor.  Well,
15    I'm not even sure I'd call it an exception.  I think
16    the witnesses can read their own prior testimony.
17    But I don't think that's covered by the rule.  It's
18    their own testimony.  That would be the only caveat.
19              THE COURT:  All right.  Is that agreeable,
20    Ms. Sirignano?
21              MS. SIRIGNANO:  Yes.
22              THE COURT:  People can read their own
23    testimony, but they can't read testimony of other
24    fact witnesses or experts, and experts can read any
25    transcript.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. SIRIGNANO:  Thank you, Your Honor.
 2              THE COURT:  All right.  Anything else on
 3     the rule or transcripts?
 4              Let's go to 1516, which is the presumption
 5     of innocence.  Is Mick available?  Is he here today?
 6              THE MARSHAL:  Yes, sir, he is.
 7              THE COURT:  Would you mind asking him to
 8     come up?  He just might want to listen to the
 9     conversation we're going to have on this.  I think I
10     need to have marshals listening to this.  And then
11     they're going to have to participate in whatever we
12     work out.
13              THE MARSHAL:  Yes, sir.
14              THE COURT:  Why don't we hold up on this
15     516 till Mick gets up here.
16              All right.  Number 518 (sic) was the one
17     that Ms. Sirignano rolled in to the discussion of the
18     reading of the trial transcripts.
19              MS. SIRIGNANO:  Your Honor, that's 1518.
20              THE COURT:  Yeah.  And that's where the
21     Government's response was, wasn't it?  1571.
22              All right.  Shall we go to 1519?  This is
23     Daniel Sanchez' motion in limine to prohibit
24     Government from making statements or argument that
25     improperly suggests that propensity character
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    inferences can or should be made from extrinsic act
2    evidence.
3          I guess how I would draw the line is on
4    either res gestae, or what I'm going to call
5    enterprise or furtherance of the enterprise evidence,
6    it seems to me that the Government should be
7    prohibited from saying because they were involved in
8    this murder, they were involved in the Molina murder,
9    for example.
10          You are free to argue that because they
11    committed that murder in furtherance, that that shows
12    that there was an enterprise, and that they did that
13    in furtherance.  But you still can't argue
14    propensity.  If I determine on the 404(b) that
15    certain, what I'm going to call 404(b) evidence -- I
16    know that's a little bit of a misnaming of that
17    category, but I think we know what, as trial lawyers
18    and judges, what we're talking about -- if it comes
19    in as 404(b), then you do get to argue that it's
20    coming in to show intent or pattern, or whatever I'm
21    letting it in for.  But you can't argue that because
22    they did it in the past, they must have done it this
23    time.  And so probably true propensity evidence, the
24    Government can't make the argument and shouldn't make
25    the argument.  I'm trying to think of any situation

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  in which it would be proper for the Government to

2  make in this trial a true propensity argument that

3  because they did it in the past, they do it -- they

4  did it here.

5        I can't find my -- I'm looking for 1519.

6  All right.  What is -- I think this was a motion that

7  Ms. Jacks filed, Mr. Jewkes filed.  Can you live with

8  where I'm -- well, I guess I'm pretty much agreeing

9  with you here.  It seems to me that the Government

10  cannot argue and should not argue from any evidence

11  in this case, make a propensity argument.  That's

12  your point; am I correct?

13        MS. JACKS:  Yes.

14        THE COURT:  Oh, there is Ms. Jacks.  I

15  didn't see you there.  Sorry.

16        All right.  Any of the defendants have any

17  arguments?

18        Mr. Mickendrow, let me finish up this

19  motion.  I'll come back to the one that you might

20  want to listen in on the arguments we're about to

21  have.

22        Anybody else on the propensity argument?

23  Mr. Castellano, are you handling this one?  Do you

24  agree with me that probably the Government is not

25  permitted to draw propensity inference, ask the jury

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to draw one, make an argument from any evidence

2    that's going to get into the trial?

3         MR. CASTELLANO:  Yes, Your Honor, I think

4    that only makes sense.  I don't think we can say just

5    because it happened on day one, it also happened on

6    day two, we have to tie those things together.  You

7    touched on it a little bit in your severance

8    memorandum yesterday, indicating that if an order was

9    issued, there would be repercussions for not

10   following that order.  But that would be tying up the

11   evidence, as opposed to just saying one thing

12   happened, and then you must believe the other thing

13   happened.  So I agree with the Court.

14        THE COURT:  Okay.  And the defendants may

15   be entitled to a limiting instruction.  There is a

16   pattern jury instruction on the 404(b).  A little

17   trial I had just two weeks ago with Bob Gorence, he

18   wanted it; got a split decision.  He didn't get an

19   acquittal on Count 1 on the conspiracy, but he got it

20   on Count 2, on the distribution.

21        So I understand sometimes defendants like

22   that 404(b) instruction, sometimes they don't.  But I

23   think you're entitled to it.  If you decide you want

24   the 404(b) instruction, and you want it at the time

25   the evidence is coming in, kind of put that burden on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the defendant to tell me that they want it, because

2   sometimes they just want to let it slide through and

3   they don't want to highlight it.  So I'm not going to

4   intrude into the trial.  The Tenth Circuit says I

5   should give it at both times, at the time the

6   evidence comes in and at the final instructions.  But

7   I try not to intrude.  So I'm going to have to get my

8   cues from the defendants whether you want me to give

9   it or not.  But I think you're entitled to it.

10          All right.  Anything from anybody else on

11  the propensity evidence that Ms. Sanchez filed?  All

12  right.  That will be the ruling.  The Government just

13  can't ask the jury to draw any inferences or make any

14  propensity arguments.

15          All right.  Mr. Mickendrow, what I'm about

16  to do is I'm about to hear a motion that the

17  defendants have filed requesting what they call the

18  maintenance of the appearance of innocence.  What

19  they're putting into this basket is going to be

20  things that are going to implicate the marshals, and

21  how they're going to try this case.  I'm going to be

22  a judge up here, and I'm going to do the best I can

23  to be a judge and be fair to the parties in this

24  case.  So I'm going to make some rulings, but they

25  are going to be tentative rules.  You're going to get

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to listen, and hear why, from a lawyers' standpoint

2    and a judge standpoint, why we think this is what

3    this trial ought to look like.  But I'm not going to

4    cram it down your throat.  So don't panic.  You're

5    part of the players in this trial, and I want to

6    respect what y'all have done for us all over the last

7    few months.  And I want to work with you and be

8    cooperative going forward.  So I wanted you to hear

9    this, but -- and I'm going to make some rulings, and

10   then probably we'll be then talking with you.

11   Ms. Wild will be talking with you.  If need be, we

12   may have to pull Marshal Candelaria into the picture

13   or something like that.  So don't panic.  I'm going

14   to do my judge thing.  I'm trying to be fair here,

15   and try to work out some things.  And if they don't

16   work for you, then we'll put them back on the table.

17   Does that sound okay to you?

18              MR. MICKENDROW:  Sounds good, Judge.

19              THE COURT:  All right.  But I thought it

20   made sense for you to hear this.

21              All right.  Let's talk about the shackles.

22   Here's what my thoughts are on the shackles.  It

23   seems to me -- let me do some counting here.  How

24   many people do we have?  We're probably going to --

25   tell me -- I would imagine we're going to switch

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    tables here for this trial.  So they will be coming
2    out these doors.  Isn't the jury room over here?
3    This is the jury room?
4              THE CLERK:  Yes.
5              THE COURT:  So probably we'll be switching
6    tables.  So unlike in Albuquerque where -- well, no,
7    that's what I do in Albuquerque.  The defendants sit
8    over here, and the prosecution sits over here, we'll
9    probably switch.  So the big table will be over here.
10   And if necessary, there may have to be a bigger
11   table.  We may have to do a little bit of putting the
12   tables together.  But how many men and women do we
13   have around this table here?  Can somebody count for
14   me?
15             MR. BENJAMIN:  Eleven, Your Honor.
16             THE COURT:  Eleven.  So we've got the five
17   defendants; give them a lawyer apiece, and y'all have
18   got more than two.  So I'm probably going to need a
19   bigger table.  So it's probably going to be over
20   here.  What I'm going to suggest is that the --
21   they're all men for the first trial, so all the men
22   are going to be -- remain shackled at the feet.  They
23   will not have anything on their hands.  And I'll use
24   bunting on both tables, so both the Government and
25   the defense table will have bunting on it.  So, men,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    don't kick the bunting out of the way so they can see

2    your shackles.  Don't do that.  That's not going to

3    help anything.  So watch it.  I guess we'll have to

4    figure out how we're going to organize it so the

5    lawyers can be next to the defendants.  But I imagine

6    we can figure that out.  So that's what I'm thinking

7    about the shackles.

8              The transport -- if I understand the big

9    issue -- I was in the Albuquerque courthouse when

10   Judge Molzen arraigned many of the defendants here.

11   And it was quite a sight.  I mean, there was more

12   high-powered rifles and ski masks and things like

13   that than I'm normally used to, coming in in the

14   morning.  Given that we're going to be with five

15   defendants, I'm going to be asking that the marshals

16   bring in the transport people as inconspicuously as

17   possible, as they would bring in any other

18   defendants; they bring in the SNM defendants the same

19   way, try to get them into the building without any

20   sort of fanfare outside of the courtroom so that

21   neither prospective jurors nor the jurors that are

22   actually selected and are coming into the building

23   each day really notice the transport vehicles, and

24   they slide in and out of the building without any

25   sort of ski masks or any sort of -- maybe men outside
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    with large guns, things like that, when the jurors
2    either are going to be here on the day that they're
3    selected or throughout the trial, so the jurors don't
4    see or get any sense from that.
5             Seems like there was one other thing.  Can
6    somebody remind me what the vests were that said SOG,
7    what those --
8             MR. BENJAMIN:  Yes, Your Honor.  That's --
9    I think that's Special Operations Group, Your Honor,
10   and that would get me started on a whole pet peeve
11   from my time in the military for individuals that are
12   wearing that.
13            But the case in point would be sitting in
14   the jury pews right now.  And that's kind of been a
15   morphing attire.  There was individuals in here one
16   day with a whole bunch of zip ties, and everything
17   else.  And so the attire has morphed.
18            And that takes us into the third point,
19   which is, as I styled it, "Gentleperson attire."  I
20   would assume -- and has been the case in every
21   trial -- that the security shows up and is wearing
22   suits, and looks just like counsel.  But I raise that
23   simply because of the way that this has morphed.  One
24   of the things that happened, I think it was the first
25   day in Las Cruces, Your Honor.  There was ski masks
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that kept coming on and off by the guards.  So I

2    think it's something I need to raise.

3            THE COURT:  Well, I guess what I'm thinking

4    of -- will be with the ski masks, if there are guards

5    who are afraid to be in this case and feel like they

6    need to wear ski masks, since we're reducing it down

7    to five defendants for the trial, could the marshals

8    work with the transport, the Corrections Department,

9    and maybe those men, women not be used, so I don't

10   have to have ski masks on or off at any time in the

11   courtroom?

12           As far as the men who have had heavy

13   attire, I guess I would -- you know, I don't have any

14   problem with it for the hearing that we had last

15   week.  But I'm wondering if we need those for the

16   trial.  So I will probably be talking to the marshals

17   about either, A, those people not be in the

18   courtroom.  If they tell me they absolutely have to

19   be in the courtroom, I'll probably want them back as

20   they are now, rather than anywhere up here at the

21   front.

22           All right.  Mr. Benjamin, those were going

23   to be my proposals of how we deal with -- and there

24   may be others, but what you're calling the

25   maintenance of the appearance of innocence.  So what

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                         (505) 843-9494
FAX (505) 843-9492                                                               FAX (505) 843-9492
                                                                                      1-800-669-9492
                                                                            e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   I've outlined, does that sound doable?  Are there
 2   other issues we need to address?
 3              MR. BENJAMIN:  I think that sounds very
 4   doable, Your Honor.  I just have two questions that I
 5   would like to address the Court with.  I guess the
 6   first is, I understand the Court is going to discuss
 7   this with the marshals, but assuming that the
 8   marshals suggest that there need to be individuals in
 9   the back of the courtroom, or one of the security
10   precautions, I guess the only request, the only thing
11   that's coming to mind is, if there was a way to be
12   included in that discussion after we get to that
13   point, so that we can try and raise some issues and
14   resolve some issues before a final ruling is made?
15              THE COURT:  Well, I guess -- let Ms. Wild
16   sort of talk to the marshals.  I don't really want
17   to -- unless I have to -- to be probably in
18   face-to-face discussions.  If I need to, I will
19   probably do that.  Probably we don't need it to be an
20   adversarial process, and that the Government there
21   and you there.  Let's just see if I can get some
22   feedback here, and if there is issues, we'll be
23   discussing it with you.
24              MR. BENJAMIN:  Thank you, Your Honor.
25              THE COURT:  Does that sound okay?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

48

```
 1            MR. BENJAMIN:  Yes, Your Honor.  I guess
 2     I'd like to be included.
 3            THE COURT:  Well, I just want the marshals
 4     to be able to speak very candidly to particularly
 5     Ms. Wild.  And you know, you start getting a lot of
 6     counsel around, they may not say everything in front
 7     of the defendants.  And I just don't want to put them
 8     in that position.  But I'll try to be very fair and
 9     make sure that nobody is surprised when we show up on
10     the first day of trial, or throughout the trial.
11     I'll try to keep that at a minimum.
12            MR. BENJAMIN:  The second issue I'd like to
13     address, Your Honor -- and I understand the Court's
14     ruling regarding the bunting and the shackles.  I'd
15     like the Court to consider whether there is an
16     alternative way of doing that, simply because of one
17     of my concerns is, I'm just looking at this table for
18     specifically trial Group 2, even if we expand this
19     table in some way, shape, or form, I don't think
20     we're all going to fit on that side, Your Honor.  I
21     think we're going to have to be on both sides.  Which
22     individuals on this side aren't going to be able to
23     probably realistically keep their feet under the
24     bunting.  So I'm curious if there is not some kind of
25     ankle device or something else that could be used in
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   lieu of shackles?
 2           THE COURT:  Well, I appreciate you bringing
 3   that up.  Mr. Mickendrow is taking notes back there.
 4   And we'll see.  It may be -- and I don't know this to
 5   be the case, it may be that the marshals would feel
 6   comfortable with certain men not having shackles on,
 7   we can seat them on this side of the table, with
 8   their attorneys, and other people on the other side
 9   are going to need shackles, we can seat them on the
10   other.  It may not be across the board the same.  But
11   I appreciate you bringing alternatives up.
12           MR. BENJAMIN:  I appreciate that, Your
13   Honor.  And I guess that's it on that, I think.
14           THE COURT:  Anything else?  All right.
15   Thank you, Mr. Benjamin.
16           Anybody -- let me have Mr. Adams first,
17   then I'll have you, Mr. Jewkes.
18           Mr. Adams.
19           MR. ADAMS:  Thank you.  May I borrow your
20   microphone?
21           Judge, I would point out along the lines of
22   Mr. Benjamin's last points, I've got two things to
23   raise.  But with shackles it's not -- so, first of
24   all, I do think there needs to be an individual
25   assessment done by the marshals.  If there is a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    reason, and that's one of the reasons we've been
 2    pushing to get out of the black boxes, so we can show
 3    that there is no reason to shackle anybody.  The goal
 4    has to be that the jurors don't know if the
 5    defendants are in custody or not.  That's what we're
 6    supposed to do.
 7           At least, in South Carolina, if there was
 8    that sound of a shackle, that's automatic mistrial.
 9    It would be reversible error to go forward, if there
10    is any suggestion at all to the jurors that somebody
11    was in custody.  I've done a lot of cases involving a
12    lot of murders, and they're always ways other than
13    shackles in state courts all over.  And if the state
14    courts can afford it, I'm sure the marshals can
15    afford it.  Whether those have been interlocking knee
16    devices, or in some instances, over our objections,
17    stun devices, or whatever, but ways that don't make
18    noise when people walk in and out of the courtroom.
19    Otherwise, we're going to be in a situation where at
20    every break the jurors have to get to their room,
21    white noise has to be turned on before anybody can
22    even get up to go to the bathroom.
23           So I think the shackles -- we're opposed to
24    Mr. Garcia being in shackles, because I think, as
25    much as you try to not let the jurors know, it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    inevitable that they're going to hear the rustling of
2    chains.  At that moment, we'll be moving -- we'll be
3    peppering the record with our objections.  So I don't
4    think there is a showing that's been made as to why
5    Mr. Garcia would need to be chained.  I think we need
6    him to act in a natural way with his lawyers.  And
7    we're opposed to any shackling.
8            The other observation I'll make, and this
9    is for the marshals to consider.  They obviously have
10   an important job related to security, and I'm aware
11   of that.  I was leaving the courthouse last week, I
12   believe; it could have been two weeks ago, but I was
13   leaving 10 minutes after court, and I was driving
14   north of town back to the restaurant or hotel or
15   wherever I was going.  And I had to get over onto the
16   shoulder of the road to get out of the way of a
17   caravan, about five vehicles, like two or three vans,
18   and then escort cars with sirens rolling.  It could
19   have only been one thing, and that would be this
20   group of guys being returned to their facility.  So
21   we're going to have to be mindful that jurors have to
22   come and go without being alarmed.  And they have to
23   be able to go home, and there has to be a mechanism
24   where, if they see a whole bunch of cars with sirens
25   forcing them off the road on the way, which gives a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    signal that these people are really dangerous, watch
 2    out, that they have to have the opportunity to come
 3    tell the Court, and we just have to deal with it.
 4    Obviously, if they need sirens to move people, they
 5    need sirens.  But maybe they need to wait, 30, 45
 6    minutes after court breaks, so people can get on back
 7    to wherever they're going and we don't -- jurors
 8    don't encounter the same caravan.  That's a pretty
 9    frightening experience that I had, as I whipped over
10    on the shoulder.
11              Those are my two points.
12              THE COURT:  Well, I've already talked to
13    Conrad Candelaria a little bit about leaving the
14    building.  And it's been different in Las Cruces than
15    it was up north.  And so he's thinking about that,
16    and he's aware of that issue.  And we'll see how he
17    decides to work it out.  And I'll put that on the
18    list of getting some response and get back to you.
19    But I was aware of that when I left the building as
20    well, and he's now aware of it.  So we'll see how
21    that sorts out.
22              MR. ADAMS:  Thank you.
23              THE COURT:  But help me out.  No drones or
24    anything.  Nobody do any drones or advertise or
25    anything like that, and create any issues for me.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   defense lawyers got to work with me, too.  Don't do
 2   anything unusual during the trial that's going to set
 3   off any sort of alerts with the marshals that I have
 4   to deal with.  So, everybody, don't do those things,
 5   okay?
 6            MR. ADAMS:  Judge, honestly, we'd like to
 7   do just opposite.  We'd like to take the first step
 8   in getting these gentlemen out of the black boxes, so
 9   they can show the Court that being caged up like this
10   is not necessary.  And that's a very -- they'll still
11   be shackled and belly chained.  That's a very small
12   step to show that they really can comply, so they can
13   earn their right to be treated fairly in front of the
14   jury.
15            THE COURT:  It may be.  But listen to what
16   I'm saying:  Counsel, don't you do anything that's
17   going to create problems for the marshals.  Don't do
18   any advertising, or you know -- I'm not saying don't
19   do advertising -- but don't do anything like drones
20   or anything like that that's going to create
21   additional problems and work for the marshals.
22            MR. ADAMS:  Judge, if you are referring to
23   anything, I have no idea what you're --
24            THE COURT:  You may not.
25            MR. ADAMS:  I don't own a drone.  We have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   one drone that I lost in the neighbor's tree.  I
 2   don't know what you're referencing to.
 3            THE COURT:  You may not, but people in this
 4   room do.  So help me out, work with me.  Don't do
 5   unusual stuff.  Because when you do unusual stuff,
 6   that makes the marshals nervous, that makes their job
 7   harder, when people start doing unusual stuff.  So I
 8   think, if the defense counsel sort of do normal stuff
 9   for this case, it decreases the number of sort of
10   incidents, and makes the marshals nervous, and then
11   we have to deal with additional problems.
12            All right.  Anybody else?  Mr. Jewkes.
13            MR. JEWKES:  Your Honor, while we have
14   Mr. Mickendrow here, I'd like to bring up the issue
15   of courtroom attire for our client.  I anticipate
16   that every one of these five will be wearing suits or
17   dress slacks and sports coats.
18            THE COURT:  I would agree.  So I will be --
19   that will be one of the things that I'll be
20   requesting of the marshals, is that they assist in
21   helping them dress in street attire, however you want
22   them dressed.
23            Now, y'all are going to have to work with
24   me.  You're going to have to get clothes here
25   earlier, going to have to have them tried on well
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN &
ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   before the trial.  So start thinking about that
 2   earlier rather than the day of the trial.
 3           MR. JEWKES:  Your Honor, the reason I
 4   wanted to bring this up in front of Mr. Mickendrow
 5   is -- well, two reasons.  First of all, leather
 6   footwear.  What's the marshal and the Court's
 7   decision on that?
 8           And secondly, once we bring the clothing
 9   the first day, does that mean we have to bring it
10   every day, or is there a place here where it can be
11   kept where these guys can be dressed back there?
12           THE COURT:  Okay.  That's a fair question.
13   I don't know the answer for it.  Mr. Mickendrow is
14   writing notes.  Let me -- you just listen for a
15   little bit, Mr. Mickendrow.  There is going to be
16   more people talking, and I'm not going to put you on
17   the spot today.  You may have to think about this.
18   I'll make some rulings today, but they're with the
19   understanding they're tentative.
20           Let's see, Ms. Fox-Young, I think you were
21   next.
22           MS. FOX-YOUNG:  Thank you, Your Honor.
23   Just along the lines of other security measures that
24   I think the jury should not be exposed to.  And I
25   think if the marshals can work around the jury's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   timeline, the bomb sniffing dogs that are outside in
 2   the morning when we come in, and that are in the
 3   courtroom, I think, are something else that we've got
 4   to work around.
 5           THE COURT:  Okay.  Well, yeah, we'll see
 6   what they want to do and what they need do.  You
 7   know, this is a federal courthouse, after Oklahoma
 8   City, I don't know if anybody gets too worked up
 9   about dogs being around.  But we'll see what they
10   want to do.  I think people expect, when they to come
11   into a federal courthouse there to be certain
12   securities after Oklahoma City.  So certain things
13   may be a little bit less suspicious to jurors.
14           Anyone else?  Mr. Lowry.  Let me let Mr.
15   Lowry, then I'll come back to you, Ms. Sirignano.
16           MR. LOWRY:  Your Honor, I just wanted to
17   follow up and on a point Mr. Adams made, and I
18   understand the Court's concerns.  But I can speak for
19   our counsel table, we've always had what I consider
20   to be an excellent working relationship with the U.S.
21   Marshals, and I appreciate the security that they
22   bring to the courtroom.  But I think it would be
23   really helpful for all involved, if the Court could
24   give us, you know, a game plan.  And I agree with Mr.
25   Adams, it would be really nice if we could get out of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   black boxes before the trial, if nothing else, to
 2   practice in the courtroom.  But if everybody is on
 3   the same playbook of how you can earn the right to
 4   get out of the black boxes between now and the
 5   beginning of trial, it would just be helpful to get
 6   everybody on their best behavior, Your Honor.
 7           THE COURT:  Thank you, Mr. Lowry.
 8           Ms. Arellanes?
 9           MS. ARELLANES:  Judge, the only thing is,
10   that it may be premature, but there are a couple of
11   females, not in this trial.  So I'm not quite sure
12   how the Court wishes to configure, arrange the
13   females around the defense table.  Maybe we can
14   address that at a later point.
15           THE COURT:  Well, I guess at the second
16   trial, I'm thinking that there -- I'll be probably
17   putting -- leaning on the marshals to let me just
18   treat them like any other defendant.  They just go
19   around the table like everybody else.  Is that kind
20   of what you're wanting?
21           MS. ARELLANES:  I think, so Judge, yes.
22           THE COURT:  So that's going to be a much
23   more logistical issue in the second trial, because
24   we're almost doubling the number of defendants that's
25   going to be in the courtroom.  But we're going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   have to do some reconfiguring of this courtroom to

 2   try nine people sitting at that table.

 3           MS. ARELLANES:  Okay.  Thank you, Judge.

 4           THE COURT:  At least one is out of custody,

 5   so I can put one person on one side of the table

 6   without having her in any sort of shackles or

 7   anything.

 8           Anybody else got anything on the wish list

 9   they want Mr. Mickendrow to hear, Ms. Wild to hear,

10   the Government to hear, the Court to hear?

11           MR. BENJAMIN:  Yes, Your Honor.  One final

12   issue.

13           THE COURT:  Mr. Benjamin.

14           MR. BENJAMIN:  And I think this probably

15   deals with Count 1, but specifically with Count 2,

16   Your Honor, part of when we sit places in trial, we

17   usually choose those places.  So I guess before

18   seating arrangements are done, if we could have some

19   input on that as well, where we're sitting.

20           THE COURT:  Well, you can say.  I'll tell

21   you that's not going to be my biggest concern.

22   You're probably going to get a seating chart.

23           MR. BENJAMIN:  I understand, Your Honor.

24           THE COURT:  If you want to express it to,

25   Ms. Wild, go right ahead.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  The Court made a call for
 2     any requests.
 3              THE COURT:  There you go.  I did.  I'm not
 4     shutting you down.  I'm just trying to give you quick
 5     and dirty rulings.
 6              All right.  Anybody else?  And I don't mean
 7     to shut anybody down.  I tried cases.  And I used to
 8     think it was important -- I used to have Ms. Wild
 9     head over and stake out my table as soon as the
10     courthouse was open.  So I know how important it is.
11              All right.  Ms. Armijo, Mr. Castellano, do
12     y'all want to --
13              MS. ARMIJO:  Your Honor, one of the things
14     that we would ask -- and we'll work with the U.S.
15     Marshals on certainly -- is I know that, in looking
16     at the witness list, we're going to have double
17     digits of cooperators testifying.  Some are in
18     custody with the U.S. Marshals, some are in custody
19     with Corrections.  There is at least one person that
20     I know we'll have testify that is out of custody.
21     And so -- and this is just for the first trial alone.
22     So I think that there may be issues with -- and we'll
23     have to deal with this -- as far as how they're
24     coming into the courtroom.  Because they're not going
25     to be coming into the courtroom necessarily -- when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   we had Mr. Cordova here last week, we took great
 2   precautions of how we brought him in, how he came
 3   into the courtroom and other things.  So I think that
 4   that's going to be another consideration.
 5            THE COURT:  Yeah, it's going to be a
 6   consideration, because I understand I'm going to be
 7   trying it in this room.  And that's the jury room.
 8   So you can't come in through the jury room like you
 9   brought -- I assume that's how he got here.  He was
10   all of a sudden standing right next to me, so I
11   assume that's how he got here.  So, yeah, I mean, I
12   guess for better or worse, your cooperating witnesses
13   are going to have to come in through that back door.
14            MS. ARMIJO:  So then the defense is going
15   to object to if -- you know, they're shackled or not.
16   I mean, is that going to be a concern of the defense?
17   So that's another issue to raise.
18            THE COURT:  Well, let me say this:  I
19   guess, unless the defendants tell me otherwise, it
20   wouldn't seem to me that it makes any difference to
21   you how the cooperating witnesses come into the
22   courtroom.  If they look all shackled and everything,
23   then it seems like that's the image you're probably
24   going to want to paint of those people; that they've
25   got a long list of bad acts, and they're unsavory
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   characters, and they are not to be trusted.  But tell
 2   me if I'm wrong.
 3          MR. ADAMS:  You are correct.  I don't think
 4   they have a fair trial right.  We do.  So I think
 5   those are different.  And if they come all dressed
 6   up, we'll probably talk about how they changed
 7   outside for court, and got out of their shackles,
 8   with -- probably with Bryan Acee's assistance and
 9   escorted in.  That would be my anticipation here, six
10   weeks out from trial.
11          THE COURT:  All right.  So I guessed
12   something right.
13          Mr. Castellano.
14          MR. CASTELLANO:  Ultimately, when it's all
15   said and done, and the Court makes its decisions, I
16   think we will, and probably the defense, will ask the
17   Court to make defense-specific decisions that
18   minimize the risk of prejudice.  So ultimately, we'll
19   probably have to make a record on the Court's
20   decisions.  So we just want to be mindful of that,
21   avoiding the error on the record.
22          Related to shackles, I have seen the
23   marshal service put things on the shackles that
24   silence them sometimes so you don't hear them under
25   the table.  So that's another option.  It's either
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   tape or cloth.

2          Related to the clothing of the security

3   personnel, I think, in some ways, it may be

4   impractical for some of them to have a suit every

5   day.  And it may not work with their other --

6   otherwise, their attire, for purposes of

7   transportation and whatnot.  But I think, as long as

8   we talk about it and have it squared away ahead of

9   time, we can get that addressed.

10          THE COURT:  Okay.  All right.  Let me hear

11  from the defendants.  Any other issues you want to

12  put on the table?  I guess -- I agree with what

13  Mr. Castellano said, assuming that I understood

14  fully, is we are going to work -- my goal will be to

15  reduce prejudice to the defendants as much as

16  possible in this trial, consistent with probably the

17  pushback that I get from the marshals.  And I use

18  that in a good way.  That's their job.  So my goal is

19  very much to try to reduce the prejudice.

20          The shackles, I think, are doable.  I can

21  tell you that if -- and I'll go back and listen in

22  the jury room, but for example, I've been working out

23  of the vestibule here.  I can't quite navigate this

24  building, so I've just been working out of the

25  vestibule.  I cannot hear anything in here.  As soon

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   as I open the door to stand over here to come in,
 2   it's noisy.  And so it is fairly noisy in here, and I
 3   cannot hear a word in the vestibule.  Assuming that's
 4   the same acoustics that you have in the jury room,
 5   then it would be normal procedure for me -- and we'll
 6   talk about this when we get to the pretrial
 7   procedure -- I'm going to put the burden and
 8   obligation on Government, on me, my staff, clerks,
 9   everybody.  We're going to be staring at that defense
10   table to make sure we have every defendant here
11   before the jury comes into the room.
12           So, you know, I'll have to ask the men
13   don't sit there and move your legs a lot.  Don't
14   create noise.  We're trying to make sure the jury
15   doesn't know about the shackles.  So you're going to
16   have to be careful with that.
17           Ms. Wild, are you on the phone?
18           THE CLERK:  Yes, sir, I am, but I've been
19   on and off dealing with another case of yours, so
20   I'll have to review the transcript to understand all
21   this discussion in totality.
22           THE COURT:  Okay.  What I was going to
23   propose is, I don't want to put Mr. Mickendrow on the
24   spot to just shoot from the hip with all this that
25   all of us have probably been thinking about for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   months.  I was going to suggest a couple of things.
 2   One is that you get the transcript, and you review
 3   it.  If you want to get a copy of it, give it to Mr.
 4   Mickendrow, so that he can review it.  I think it
 5   would be also good if the marshal reviewed it.  So I
 6   think if you'd get those transcripts and review it.
 7   And then, if I could get you to maybe sit down or
 8   talk on the telephone with Mr. Mickendrow, and if
 9   necessary, Marshal Candelaria, bang out -- I mean,
10   you've done enough trials with me, you know where I'm
11   going to want to go, and where I want to end up; work
12   with the marshals to try to come up with the best
13   game plan we can, that's most consistent with
14   prejudice being minimized to the defendants, without
15   sacrificing the security that the marshals have to do
16   their job.  And then, let's come back, through me,
17   with a plan that we propose to the parties, and then
18   either we'll have to tell them that's what we're
19   going to do, and they'll have to make a record at
20   that point, or we'll just have to -- or we'll see if
21   there is some tinkering that we can do to improve the
22   plan.
23            Does that sound like a plan, Ms. Wild?
24            THE CLERK:  Yes, sir.
25            THE COURT:  All right.  Mr. Mickendrow,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   again, I don't want to put you on the spot, because I
 2   wanted to just invite you to come and listen, and
 3   understand the process that we're going through, and
 4   the important role you're going to be playing in this
 5   trial, and how we want to work with you, and don't
 6   want to just dictate things to you.  We want to work,
 7   and be a partner with you in this.
 8           If you do want to say some stuff, you're
 9   welcome to.  If you want to just demure, and work
10   with Ms. Wild and see what we come up with.
11           MR. MICKENDROW:  Judge, if you don't mind,
12   A Chief Barela is here, and he would like to say a
13   few words.
14           THE COURT:  All right.  Mr. Barela, you're
15   welcome to say --
16           CHIEF BARELA:  Jim Barela, Chief of the
17   U.S. Marshals.  I just want to assure everybody that
18   it's not our first rodeo.  We've all done this
19   before.  And, of course, with security being an
20   important part of it, that's our number one priority.
21   But I can guarantee -- we don't want to do anything
22   to cause any marshal responsibility for any mistrial
23   or anything.  So we've done this before.  And all of
24   your concerns I've heard today, I've seen them
25   throughout states, how they've all been handled.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    we'll get a good medium, like the Judge said, with

2    Mr. Mickendrow working with Ms. Wild, we'll get a

3    medium.  Somebody may not be always be happy, but our

4    priority is security, and then definitely not a

5    mistrial.  So all your defendants -- excuse me,

6    everybody, to include witnesses and everybody, is

7    treated equal.

8              And we work with the clerk's office, not

9    only Ms. Wild, but here, to set things up with the

10   tables different, so that juries will not have any

11   bias by seeing anybody in custody.  And we'll be in

12   suits -- deputies in suits.  We've handled all those

13   issues before.  And we'll work with Ms. Wild and come

14   up with a good solution I think you guys will be

15   happy with, okay?

16             THE COURT:  All right.  Thank you,

17   Mr. Barela.  Appreciate it.

18             Mr. Castellano, do you have anything

19   further on it?

20             MR. CASTELLANO:  Yes, Your Honor.  One

21   thing that comes to mind, I think the jury will hear

22   that some of these individuals are still in prison.

23   So I don't think anyone should be surprised by that.

24   I think, if people were arrested when they were not

25   incarcerated, I think it's fair for the defense to

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                Albuquerque, NM 87102
(505) 989-4949                                                                              (505) 843-9494
FAX (505) 843-9492                                                                     FAX (505) 843-9492
                                                                                          1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                       e-mail: info@litsupport.com

```
 1    ask:  Was this person arrested on the streets?  They
 2    weren't in jail at the time of arrest.  But I think,
 3    obviously, some of these things happened in prison,
 4    and some of the defendants are still in prison.  So I
 5    think there will be some testimony to that effect.
 6              THE COURT:  Okay.  Well, y'all know the
 7    evidence much better than I.  So I'll just have to
 8    rely both on the defendants and the Government to
 9    alert me.  Otherwise, I'll, you know, let the
10    evidence develop at trial.  If there is a problem
11    there, y'all need to alert me to it, to see if there
12    is something I need to be doing, or there is some
13    ruling I need to make.
14              All right.  So I'm going to put defendants'
15    motion, which is largely Mr. Gallegos' motion, and
16    Mr. Benjamin's on behalf of him, I'll put it aside,
17    and we'll -- I think we have some -- I can see where
18    the Court is going on some of these issues.  But we
19    need to work with the marshals before we make some
20    final rulings there.
21              All right.  Let's go ahead and take our
22    morning break.  When I come back, I want to go to --
23    I think it's Government's 1520.  It's the United
24    States' motion in limine to preclude questioning
25    Government witnesses regarding personal information.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    So we'll take that motion up when we come back.
 2              MR. BENJAMIN:  Your Honor, if I may -- and
 3    I apologize I didn't get this, based on technical
 4    difficulties, I just filed a response on 1520.
 5              THE COURT:  When did you file it?
 6              MR. BENJAMIN:  I'd say two minutes ago.
 7              THE COURT:  Oh, okay.  All right.  Give me
 8    something to do on the break.
 9              All right.  So we'll take that one up as
10    soon as we come back.
11              (The Court stood in recess.)
12              THE COURT:  All right.  Let's go on the
13    record, and look around.  It looks like everybody is
14    here.  I want to spend a little time on the phone
15    with Ms. Wild talking about some of the things.  She
16    was a little bit in and out of our conversation
17    because of another case that I have up there that I'm
18    going to have to set -- doesn't impact this, but some
19    emergency hearings over the next few days, next week,
20    something like that.  So I need to work with her and
21    fill her in where she had not heard what we were
22    talking about.  I talked to her about maybe some
23    approaches, sort of my philosophy on some of this.
24    What I was looking to gain.  We'll try to get back
25    with you pretty quickly, and see if we've got a game
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   plan that everybody is comfortable with.

2           There was one motion that we skipped over

3   that I want to come back to.  I think we've covered

4   it.  But I want to make sure that there is nothing

5   more that needs to be said on that.  And I think Ms.

6   Sirignano, it's your motion, it's number 1517.  It's

7   the opposed motion in limine to exclude co-defendants

8   statements.  If I understand what this one is -- and

9   correct me if I'm wrong -- you don't want things

10  admitted into trial under the co-conspirator

11  exception until there is a James hearing.  And we're

12  in the middle of that, so there is going to have to

13  be some rulings on that.  You raised some Bruton

14  issues.  We've talked a lot about those.  I made some

15  preliminary rulings in some of the motions to sever

16  about how I view Smalls, and that.  Is there anything

17  else in your motion that we need to deal with, that

18  you need guidance on?

19          MS. SIRIGNANO:  No, Judge.  It was just

20  filed to make the record regarding the matters that

21  you just stated.  And there are some Bruton issues.

22  And I believe the Government did say today that they

23  were looking into those three specific categories

24  that you just mentioned.  So I think we're fine

25  there.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Anybody else on the

 2    defendants' side have any issues on that that they

 3    want to raise?

 4              Mr. Castellano?  Mr. Beck, have anything on

 5    that.

 6              MR. CASTELLANO:  No, Your Honor.

 7              THE COURT:  All right.  So I'll put that

 8    aside.  I think we're in the middle of the James

 9    hearing, and I know we've got some Bruton issues down

10    the road.  But I've given some guidance on the

11    motions to sever as to how I'm going to deal with

12    some of those issues.

13              MS. SIRIGNANO:  Judge, yesterday you asked

14    me to talk to Ms. Waters about the real-time and

15    daily transcripts, and I did that by email.  And over

16    the break talked with Ms. Bean, and we've agreed to

17    three real-time terminals for the defense.  And then

18    daily transcripts only for issues as needed.  And

19    this was something that Ms. Waters agreed to.  So

20    we'll do the authorization and we'll get that moving,

21    Your Honor.

22              THE COURT:  All right.  If she's

23    comfortable with it, I'll approve it.

24              MS. SIRIGNANO:  The other little

25    administrative issue that I was reminded to request
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   of the Court was we'd like to have permission for our
 2   clients to bring their tablets during the trial, if
 3   that's satisfactory.
 4            THE COURT:  Why don't you do this:  I don't
 5   have any problem with that, but can you talk to the
 6   marshals, talk to Ms. Waters, see if there is any
 7   expenses that I need to be aware of.  But as far as
 8   me, if the marshals -- does the Government have any
 9   problem with that?  Do you have any issue with that?
10            MR. CASTELLANO:  No, Your Honor.
11            THE COURT:  All right.  So I don't have any
12   problem with it.  The Government doesn't have any
13   problem.  Ms. Waters, marshals don't have any
14   problem, then y'all can go ahead and do that.
15            MS. SIRIGNANO:  Thank you, Judge.
16            THE COURT:  Anything else?
17            MS. SIRIGNANO:  No, Your Honor.
18            THE COURT:  All right.  So let's go to the
19   United States' motion in limine to preclude
20   questioning Government witnesses regarding personal
21   information.  It seems to me -- here's the line I
22   would sort of draw, or propose for the parties
23   here -- when the Government puts their witnesses on,
24   I always allow each side a little bit of leeway to
25   put personal information on, so that they can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    introduce to the jury, so the jury has some sense of
 2    who they're talking to.
 3            So I'll take my cues from the Government.
 4    If the Government wants to do a little, a lot, that's
 5    their business.  But you will be opening the door.
 6    So whatever you sort of do with them, then it seems
 7    to me you've got to be careful, or otherwise, it
 8    gives the defendants a little bit of leeway.  So I'll
 9    look for you to define the scope of the information
10    that you want the jury to know about the witness.
11    But, otherwise, I can't think of any reason that the
12    defendants would need to get into the personal
13    information of the Government's witnesses.  So I'd be
14    inclined to grant that motion.
15            Anybody -- well, it's your motion.  It's
16    the Government's motion.  I don't know if you filed
17    it, Mr. Beck?
18            MR. BECK:  Yes, Your Honor.
19            THE COURT:  Does that line make sense to
20    you?
21            MR. BECK:  Yes, Your Honor.
22            THE COURT:  All right.  How about the
23    defendant, Mr. Castellano?
24            MR. CASTELLANO:  One thing that we'll -- or
25    may come up for purposes of impeachment is, I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the FBI, for at least one witness paid for a trade
 2    school for that witness, so that person could have a
 3    trade and work out on the streets.  What I'd like to
 4    do is indicate that the Government paid for him to go
 5    to trade school, without necessarily stating what
 6    that trade is.  In other words, it would make it
 7    harder for people to find him if they don't know what
 8    the trade is.  I'm not sure it's relevant to know
 9    what that is, other than they provided him a trade.
10             THE COURT:  So the FBI has paid one of the
11    cooperating witnesses money for a trade school?
12             MR. CASTELLANO:  Yes.  At least one.
13             THE COURT:  All right.  I see what you're
14    saying.  All right.  I have no problem with that, but
15    I'll listen to the defendants.  But can the
16    defendants live with this sort of the way I've
17    structured the personal information?  Mr. Benjamin?
18             MR. BENJAMIN:  Your Honor, as I said in my
19    response, I can't think of --
20             THE COURT:  Tell me what number your
21    response is.  I'm sorry.  I read it, but I don't have
22    it tied to the -- paper clipped to the motion.
23             MR. BENJAMIN:  1586, Your Honor.  It was
24    the one that was filed, I think probably 20 minutes
25    now --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Yeah, you warned me about that.
 2     Yeah, I did get it.  All right.  Go ahead.
 3              MR. BENJAMIN:  Your Honor, and the response
 4     essentially ends with the fact that I don't know how,
 5     and in trying cases normally, personal information
 6     does not come up.  And the witness that Mr.
 7     Castellano is talking about in that trade school
 8     doesn't affect Mr. Gallegos.  So I would let the
 9     defendant that's affected by that decide whether it's
10     relevant or not.  And I think they could probably
11     approach, would be the course.
12              But this motion, and in my response
13     specifically, and the reason I wanted to get it on
14     file, I think dovetails into what we were talking
15     about, the appearance of innocence.  The motion that
16     I filed in 1586 has about two pages that deals with
17     an appearance, that if one takes that at face value
18     regarding Special Agent Acee, one can interpret
19     things in a whole different way.
20              And so we have defendants that are sitting
21     here, that the Government in its -- in 1520 starts
22     making what I would refer to as scandalous
23     allegations that they're going to do things.  But we
24     haven't seen that done.  And the concern I have with
25     Document 1520 is it's a repeat action by the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Government to attempt to scare the Court into

2    security concerns that we just saw addressed in the

3    appearance of innocence.  And that's why my 1586

4    starts out with detailing essentially the assault on

5    the house that occurred in Southern New Mexico.  And

6    so I raise it --

7              THE COURT:  Well, interestingly enough,

8    this motion is usually filed by the defendants.

9    Because they don't want the Government witness to get

10   on there, and they talk about the Government witness'

11   military history, and the fact they served in Iraq,

12   and they've been in government service for 20 years.

13   And it's a big windup to, you know, the fact that you

14   need to believe this Government witness, so in some

15   ways, it seems to me we're just saying the Government

16   witnesses, cut it out.  They're not going to sit

17   there and talk about their kids and family, like they

18   do in some trials.  And you're not going to get to

19   bring it up either.  So it's a little bit of a

20   cleaver cut, but it seems to me it cuts probably

21   pretty fairly for both sides.  Your thoughts?

22             MR. BENJAMIN:  That's -- I agree with the

23   Court.

24             THE COURT:  All right.  Well, we'll have to

25   obviously play it by ear.  There may be some

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                         1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

1    testimony -- is everybody comfortable with the one

2    witness, as far as we not -- we get into the trade

3    school, that they paid for a trade school, but does

4    anybody need to get into what kind of trade school?

5    I don't know what the trade school is, so I'm not --

6              MR. CASTLE:  Judge, I think we have to know

7    what kind of trade school it is before we know what

8    it is.  If it's something -- I don't know what it is.

9              THE COURT:  Does the Government have

10   problems sharing that with the defense lawyers?

11             MR. BECK:  I think it's disclosed in the

12   materials that we disclosed for Giglio.  So I think

13   they can probably find it.  We don't really have a

14   problem disclosing it to them outside of that.

15             THE COURT:  Why don't you tell Mr. Castle

16   what it is; otherwise, I'm going to assume that the

17   trade school is not coming in.  If you want to

18   reraise it, Mr. Castle, after you find out what it

19   is, you can.  But we won't get into personal

20   information, the Government witnesses.

21             You rise, Ms. Duncan?

22             MS. DUNCAN:  Your Honor, on behalf of Mr.

23   Baca, we're comfortable with the line that the Court

24   has drawn.  We just ask that -- there may be

25   instances where, for example, the type of employment

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                          FAX (505) 843-9492
                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                          e-mail: info@litsupport.com

1     of a particular witness is relevant for impeachment

2     or credibility.  And so we could clearly raise that

3     with the Court before delving into that

4     cross-examination.  But I'd reserve the right to

5     argue that certain personal information may be

6     relevant for a very particular purpose.

7              THE COURT:  Okay.  Well, when you say type

8     of employment, I assume that when the Government does

9     their introduction, they're going to identify the

10    person as to what his job -- his or her job title is,

11    where he or she works, probably what the job entails.

12    So I'm not including that in personal information.

13    So I would think that what that person does as far as

14    their job is fair game, both by the Government and by

15    the defendant.  Because that goes to personal

16    knowledge, how they know what they're testifying

17    about, and those sort of things.  Does that satisfy

18    your concern?  And personal information, I'm thinking

19    of kids, spouses, where you live, that type of stuff.

20             MS. DUNCAN:  Yes, Your Honor.  That answers

21    one of my bigger concerns.  But I still -- I could be

22    arguing something with the Court that ultimately is a

23    total nonissue.  But I think that there may be some

24    times when personal information is relevant for

25    cross-examination.  So I would just reserve the right

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

1   to raise it with the Court, which I would do before

2   asking that question.

3         THE COURT:  All right.  But, otherwise,

4   we'll probably stick pretty closely to this.  And if

5   my pretrial rulings are going to mean anything, I'm

6   going to have to probably give them a presumption of

7   applying throughout trial.

8         All right.  So with that caveat about what

9   I define personal information as, that will be the

10   ruling on that motion on the personal information

11   motion.

12         All right.  The next motion, Mr. Blackburn

13   and I have probably exhausted what I have to say on

14   this issue in a trial that he had.  What was that

15   fellow's name?  Courtney?

16         MR. BLACKBURN:  Yes, Your Honor.

17         THE COURT:  So while I am very sympathetic

18   to -- probably shows my Libertarian and Originalist

19   leanings to allowing jurors to know what the

20   sentencing parameters are, and also the consequences

21   of a conviction, the Tenth Circuit and the Supreme

22   Court have said that my thoughts are not very

23   important, and that they have pattern instructions

24   here.  And so I think I am forced by the controlling

25   law to grant the United States' motion in limine to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   exclude any reference to punishment or sentencing,

 2   and tell the jury that they should put that out of

 3   their minds.  So I'm inclined to grant the motion.

 4            Anything the Government wants to say on

 5   that motion, Mr. Beck?

 6            MR. BECK:  No, Your Honor.

 7            THE COURT:  All right.  Defendants, Ms.

 8   Fox-Young?

 9            MS. FOX-YOUNG:  Your Honor, what is the

10   document number?

11            THE COURT:  This is 1521.

12            MS. FOX-YOUNG:  Okay.  I don't have it up,

13   but it's my recollection that the Government asked

14   the Court to preclude any questioning of the

15   cooperators as well.

16            THE COURT:  Well, I thought yesterday when

17   we did it, there was no request from anyone on either

18   side to take out or redact the portion of the plea

19   agreement that dealt with the sentencing.

20            MS. FOX-YOUNG:  That's right.  And so, Your

21   Honor, where the Government says the United States

22   requests the Court prohibit the defense from

23   eliciting testimony about potential punishment from

24   any of the Government witnesses, I think that's the

25   only place where we would take issue on behalf of Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Perez.  I mean, we take issue, but we understand the
 2    controlling law.  But on behalf of Mr. Perez, I
 3    think --
 4              THE COURT:  Well, I've read Mirabal -- it's
 5    been a while, it's not -- well, it's not fresh in my
 6    mind -- it looks like it's a very recent case.  Does
 7    Mirabal prohibit the defendants from eliciting
 8    testimony about potential punishment from Government
 9    witnesses?  Does it say that?
10              MS. FOX-YOUNG:  Your Honor, I'll have to
11    pull it up.  This isn't our motion, it's the
12    Government's motion.  I'll pull it up right now.
13              THE COURT:  All right.  Ms. Duncan?
14              MS. DUNCAN:  Your Honor, to answer the
15    Court's question, I did read Mirabal today, and no,
16    it does not.  That case was from Judge Johnson, and
17    he allowed the defense to impeach the witness with --
18    and I'll pull it up right now -- with his plea
19    agreement -- about the plea agreement and the
20    expectation of a lighter sentence because of his
21    cooperation.  What the judge didn't allow the defense
22    to do was get into the specifics of the guidelines.
23    And what the Tenth Circuit held -- they presumed that
24    was a confrontation clause violation by limiting
25    cross-examination, but said that, given the evidence
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   in the case, any error was harmless.
 2              THE COURT:  Okay.  Well, I'm not hearing
 3   from anybody that anybody wants to redact or exclude
 4   that portion.  It was in your motion, Mr. Beck, but
 5   are you comfortable with where I'm coming out, that
 6   defendants' sentencing punishment -- we'll tell the
 7   defendants that that is off limits for them, and the
 8   defendants -- nobody can discuss sentencing and
 9   punishment as far as defendants.  But it will be
10   still fair game for cooperating witnesses?
11              MR. BECK:  Yes, I think that's fair.
12              THE COURT:  All right.  Everybody
13   comfortable where we've drawn the line?  All right.
14   So the Government's motion is granted, with the
15   exception of sentencing and punishment for
16   cooperating witnesses will still be fair game.
17              And yesterday we talked about motion number
18   1522, and I think everybody was in agreement that
19   that probably was a good idea.  So that Fed Ex
20   package reminds me that all CJA vouchers, unless that
21   package contains some or there are some on my desk
22   back in Albuquerque, I'm totally caught up.  I had a
23   few questions on some of these, some of you will be
24   getting a little bit more questions from me than in
25   the past.  But they're all off my desk, unless that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    package contains some more, or there are some back in

 2    Albuquerque.  So I'm pretty caught up.

 3          So this is the United States' motion.  I

 4    think everybody was in agreement it should be

 5    granted, that the Government would be permitted to

 6    present witness testimony in installments.  What I

 7    understand that to be is that they're going to

 8    package and group their story together.  I think

 9    everybody agreed that that probably was a good idea

10    to try to manage the workload in this case.  And, in

11    fact, we're encouraging the Government to do that,

12    and to also then disclose as much of that in advance

13    as they can, so that defendants can know who they'll

14    be facing in the coming days.  And what that will

15    mean, so everybody is clear -- and at least what I

16    think it means is that, for example, Mr. Acee can

17    come up several times during the Government's case,

18    as he's done in the James hearing.  It will sort of

19    be packaged.  And there may be some other defendants

20    where they do the same thing.  We'll be permitting

21    that.  I think they can do it anyway.  But we'll

22    permit them to call and re-call and maybe re-call

23    several times some of the witnesses.

24          Did I package your motion correctly?  Is

25    this yours, Mr. Beck?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BECK:  Yes, you did, Your Honor.
2              THE COURT:  Anything else you want to say
3    or need to get the green light on this?
4              MR. BECK:  No, Your Honor.
5              THE COURT:  All right.  How about from the
6    defendants?  Anybody disagree with how we're going to
7    allow the Government to put on their trial, their
8    case?  Mr. Adams?
9              MR. ADAMS:  Judge, I don't have a problem
10   with that.  And I think it makes a lot of sense.  I
11   did want to just make sure we're clear.  I'm hearing
12   you say you'll grant them the latitude to do that,
13   but in exchange, they need to really play fair with
14   us about when they call somebody, whether they're
15   going to re-call them later.  Because I anticipate we
16   will have lengthy crosses, some of which would be
17   relevant to different times they call the witness.
18   So we'll need to make some choices based on whether
19   they're intending to call somebody two, three, or
20   four times.  And that when they give us the overview
21   of the case, they'll let us know which people they
22   intend to call multiple times so we can plan
23   accordingly.
24             THE COURT:  Could the Government do that?
25   If you know you're going to be calling witnesses
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   multiple times, you let the defendants know, so they
 2   can figure out when to do their robust
 3   cross-examination?  Is that basically what you're
 4   saying, Mr. Adams?
 5             MR. ADAMS:  I am.  I would hate to put
 6   jurors to sleep through the same cross four times.
 7             MR. BECK:  Yes.
 8             THE COURT:  So we'll have that agreement.
 9   We'll also have an agreement you won't put the jurors
10   to sleep.
11             MR. ADAMS:  I hope that goes without
12   saying.  If so, I might need to reserve the issue of
13   bringing a drone into the courtroom.
14             THE COURT:  No drones, no drones.
15             Mr. Castle?
16             MR. CASTLE:  Your Honor, I would just note
17   that such an order should go both ways, so that the
18   defense can also present in installments in a joint
19   trial like this.  I don't know if there is any
20   objection to that, but not seeing any nodding heads
21   from the prosecution table.  I may have need for
22   Count 1 and 2 to call Agent Acee also, and then for
23   Count 3, be another.  I'm sorry, I'm not loud enough
24   probably but --
25             MR. BECK:  That's fine.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  So those agreements
 2   will then cut both ways as far as packaging.
 3              Mr. Walz, is Ms. Rodriguez okay?  Are you
 4   okay back there?
 5              MR. WALZ:  We're fine.
 6              THE COURT:  All right.  Talking about
 7   jurors asleep.  We don't want defendants sleeping.
 8              MR. WALZ:  She's okay.
 9              THE COURT:  All right.  Nothing else on
10   that motion, then, that's how the Government will put
11   on their case and the agreements we have there.
12              All right.  Let's talk about the United
13   States' motion in limine to allow transcripts
14   containing English translations of recorded Spanish
15   conversations as substantive evidence.  I've heard
16   some tapes.  I've heard some -- certainly read a lot
17   of transcripts.  The transcripts have been in
18   English.  So I guess I, A, don't know what the extent
19   of the problem is, how much of the conversations are
20   in Spanish, and how much of them are in English.  I
21   guess my sort of -- the first cut is -- and I'm not
22   sure I have an ultimate solution to offer.  But my
23   thoughts are that unless there is an agreement among
24   the parties what to do with the transcripts, the
25   transcripts should not come into evidence.  They
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    should be used as demonstratives.  The real evidence
 2    should be the tapes themselves.  We'll be talking in
 3    the pretrial conference portion about the use of
 4    JERS, so we'll be putting these on electronically for
 5    the jury to listen to again.  If it's just a
 6    sprinkling of Spanish words that are used, this is
 7    just a proposal.  I mean, I'm working with you.  I'm
 8    wondering if we can come up with a little glossary,
 9    or something that gives the jury the definition of
10    those Spanish words that are sprinkled.  If, on the
11    other hand, you tell me it's whole transcripts that
12    are in Spanish, I'm not sure what else we can do
13    other than maybe admit those transcripts because of
14    the English requirement for federal court, that the
15    evidence has to go back.  So I guess my proposal
16    would be, if it's a smattering, transcripts don't go
17    back, discs do.  Discs will then go on the JERS
18    system, which we'll talk about, if you're not
19    familiar with the JERS system in federal court in the
20    District of New Mexico.  So they'll have the
21    recording back there ready to be played as soon as
22    they go back to deliberate.  The transcripts won't
23    go.  If a conversation or conversations are totally
24    in Spanish, the transcript should come in.  If there
25    is a disagreement among the transcripts, you can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    either argue it with me and I'll work it out, or if
 2    it's so severe, we might have competing transcripts.
 3    But those would be my thoughts as to how to deal with
 4    the transcript in Spanish that are in the
 5    conversations.
 6              This is motion 1523.  Mr. Beck, is this
 7    your motion?  Mr. Castellano, is it yours?
 8              MR. CASTELLANO:  Yes, Your Honor.
 9              THE COURT:  All right.  Could you live with
10    what I've proposed?  Do I not understand the
11    situation?  What's your thoughts?
12              MR. CASTELLANO:  I think you understand the
13    situation.  I think that when we're talking about the
14    Spanish language transcripts, it's really a
15    smattering.  I think we're talking about words and
16    phrases, as opposed to entire conversations.
17              THE COURT:  If you had to guess, of the
18    number of Spanish words that we might -- if we were
19    putting a glossary together for the jury, what would
20    you say -- what number would you say would go on that
21    glossary or index?
22              MR. CASTELLANO:  My guess is that maybe 5
23    percent of the conversations would have words or
24    phrases.  I don't think it's a large --
25              THE COURT:  So it's only 5 percent of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    transcripts?
 2              MR. CASTELLANO:  I think so, Your Honor.
 3              THE COURT:  And then how many words off
 4    those transcripts do you think they'd be looking at?
 5              MR. CASTELLANO:  I'm not sure.  I don't
 6    think it's a large number.  But I think there would
 7    be some work to put together a glossary.  But I don't
 8    think it's a large number of words on any given
 9    transcript.
10              THE COURT:  All right.  It seems to me that
11    that's probably the approach.  Can you live with
12    that, Government?
13              MR. CASTELLANO:  I think so.  If we run
14    into problems putting together a glossary, one issue
15    may be whether there is an agreement on terms or not
16    with the defense.  So we may get pushback there, we
17    may not.
18              I think I heard the Court say that the
19    transcripts will not go back to the jury.  Would you
20    consider allowing the transcripts to go to the jury
21    to aid in listening, with an instruction which says
22    the transcripts are only to aid you in hearing the
23    transcripts.  If there is any discrepancy between the
24    two, the tape recording prevails, and it is the
25    evidence?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Well, I'll certainly consider
 2    it.  I'll see what the defendants say.  If the
 3    defendants oppose the transcripts being back there,
 4    then I probably will go for the defendants on that.
 5    But I'll certainly consider it.
 6            Anything else on your motion, Mr.
 7    Castellano?
 8            MR. CASTELLANO:  No, Your Honor.
 9            THE COURT:  All right.  Let's hear from the
10    defendants.  Ms. Sirignano?
11            MS. SIRIGNANO:  I think Mr. Cooper was
12    before me.
13            THE COURT:  I thought he was over there
14    sneezing.
15            MR. COOPER:  We would oppose the use of the
16    transcripts.  And I don't think that using a glossary
17    is a good idea either.  I think the jury has to hear
18    the evidence from the witness in that chair.  The
19    Government is going to say -- ask the witness a
20    question, and the witness is going to say, Well, he
21    needed to get his huesos.  What does huesos mean?
22    Huesos means bones.  The juror has to -- every one of
23    these jurors has to hear that testimony, go back into
24    the jury room and remember that huesos means bones.
25    And I think that's how we deal with the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    English-Spanish issue.

2              THE COURT:  All right.  So if I understand

3    your proposal from the defendants -- we'll hear from

4    everybody else in a minute -- transcripts go back.

5    Are they part of evidence or not part of evidence?

6              MR. COOPER:  No, I don't think transcripts

7    go back.  I don't think transcripts should be used.

8    If it's 5 percent of the transcripts, and only a few

9    words or phrases, I think it's incumbent upon the

10   Government to ask the question:  What does huesos

11   mean?  What does orale mean?  What does whatever that

12   mean?  They translate into English, because it's

13   going to be a Spanish speaker that's going to be

14   testifying as to what huesos means or orale means or

15   whatever the Spanish term is.  And this jury hears

16   what that testimony is, and they have to rely on the

17   evidence that comes in through that witness.

18             THE COURT:  All right.  If I allow the use

19   of transcripts during the trial, what's then your

20   position about whether they go back or not?  Well,

21   first of all, let me ask a foundational question.

22   Should they be admitted into evidence or not

23   admitted?

24             MR. COOPER:  No.

25             THE COURT:  Okay.  What about going back to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the jury room?  Because remember what's going to
 2    happen in the jury room, they're going to be
 3    listening -- if they decide to review the evidence in
 4    this detail, they will be able to punch up and listen
 5    to the recordings.  Do you want them looking at the
 6    transcript at the same time or not?
 7              MR. COOPER:  Judge, I think it ought to be
 8    determined at the time, during the trial, on a case
 9    by case basis, and we see how much of that testimony
10    is in English, how much is in Spanish, and then make
11    a determination at that point; not here today, not
12    having seen what that testimony is, and how much of
13    it is in Spanish.
14              THE COURT:  Okay.
15              MR. COOPER:  So I would say we ought to
16    wait for the trial.
17              THE COURT:  How close is Mr. Cooper's
18    position to the rest of the defendants?  Start with
19    you, Ms. Sirignano.
20              MS. SIRIGNANO:  Your Honor, I'd agree with
21    about 95 percent with Mr. Cooper.
22              MR. COOPER:  I object.
23              MS. SIRIGNANO:  My only concern, Judge, is
24    that these transcripts that have been provided by the
25    Government are incomplete, and they're unreliable.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    As we've seen during the James hearing, there is big

2    gaps of unintelligibles, UIs in parentheses,

3    throughout these transcripts.  So I personally would

4    not like these transcripts going back to the jury, as

5    they're nonevidentiary.  And we have to first start

6    out with whether or not we could actually use them

7    here during the trial first, before even getting to

8    the discussion that they should go back.  And I don't

9    think they should go back at all.

10              THE COURT:  All right.  Mr. Maynard?

11              MR. MAYNARD:  And I'm of the same position.

12   I think they may be demonstrative, they might help

13   the jury in listening to the tape.  But the case law,

14   basically, is they're not substantive evidence, and

15   they don't go back to the jury room.  And with

16   respect to the Spanish translation issue, I think

17   from the tapes that I've listened to and the

18   transcripts that I've read, most everything is in

19   English.  And there is a smattering of Spanish

20   phrases and words.

21              And the best approach would be, at the time

22   the jury is listening to the tape, with a witness on

23   the stand, who probably was participating in the

24   conversation, let that person express and translate

25   what the meaning is, especially because sometimes

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    words can have different shades of meaning in a
 2    different context.
 3              THE COURT:  Okay.  All right.  Well, let
 4    me -- I'm hearing different things on the
 5    transcripts.  Are the defendants opposed to the use
 6    of transcripts in the courtroom?  Is that what you're
 7    saying, Ms. Sirignano?  I mean, I can probably go
 8    with the defendants that they, A, are not admitted
 9    into evidence, and B, they're not going to go back to
10    the jury room.  But I guess I'm leaning toward
11    allowing the transcripts to be available to the jury
12    during the trial.
13              MS. SIRIGNANO:  Judge, the transcripts that
14    we've been given by the Government have huge gaps in
15    the -- from the recordings, either because the
16    recordings --
17              THE COURT:  But isn't that -- I mean, I
18    guess my reaction to that, isn't that an honest
19    transcription, rather than having the court reporter
20    guessing what is said there -- which would be a
21    bigger concern to me -- they're just admitting they
22    can't figure out what it is, which will probably be
23    the reality?
24              MS. SIRIGNANO:  Well, we've got competing
25    transcripts on some, Your Honor.  And this is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   something that we're going to have to decide pretrial

 2   on these transcripts.  As some of them -- some of the

 3   versions aren't necessarily what our

 4   transcriptionists have come up with.  So this is

 5   probably something that we're going to need to take

 6   up pretrial, with competing transcripts.  I'm not

 7   saying all, but I think some of them aren't

 8   completely accurate, which is why we had them

 9   transcribed.

10        THE COURT:  But that's a separate issue

11   than whether the jury has no transcripts.  Are you in

12   agreement that some transcript ought be in their lap

13   in the trial while they're listening?

14        MS. SIRIGNANO:  If they're accurate, Judge.

15   That's the best that I can come up with.  And I'm not

16   saying that all of them are right now.  That's my

17   problem.

18        THE COURT:  Okay.

19        MR. MAYNARD:  There is another issue with

20   the transcripts and the recordings, Your Honor, in

21   that some of the conversations are fairly lengthy,

22   and the transcripts are long, and yet maybe only 10

23   percent of a 10-minute conversation is relevant.  So

24   we're going to have to address the issue of, Well, on

25   this conversation out of this exhibit or Bates number

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    transcript, what is the Government going to offer?
 2    The entire conversation?  Or just what relevant
 3    excerpts are going to be allowed to come in?  And, of
 4    course, there is also going to be issues over not
 5    just translating the Spanish phrases and words into
 6    English, but there is going to be witnesses
 7    attempting to interpret or -- the context of the
 8    conversation.  And the best evidence of the
 9    conversation is just the conversation itself, the
10    relevant portions.
11              THE COURT:  All right.  Thank you, Mr.
12    Maynard.
13              Mr. Cooper.
14              MR. COOPER:  A couple things, Judge.  When
15    the jurors are allowed to have transcripts, it lends
16    more importance to that particular testimony.  It
17    creates "super evidence" for that particular
18    testimony.  So I would object to the use of the
19    transcripts at all.  The other thing is when we have
20    transcripts, that translation is necessarily the
21    transcriptionist's idea as to what the individual
22    said in Spanish, and what he or she thinks it ought
23    to mean in English.  So I think there is a
24    confrontation sort of an issue there.
25              THE COURT:  Well, on the transcripts, is
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    somebody interpreting -- are they putting a

2    translation of Spanish next to the words?

3            MR. MAYNARD:  There are a few transcripts

4    where some words -- where the English is next to the

5    Spanish word, and it's in parentheses.

6            THE COURT:  Put in brackets or something.

7            All right.  Any of the other defendants

8    want to speak on this?  Ms. Fox-Young?

9            MS. FOX-YOUNG:  Your Honor, it sounds like

10   the Court is going beyond the translation issue, and

11   is inclined to allow transcripts for all recordings;

12   is that right?

13           THE COURT:  Well, the motion is broad in

14   that it allows transcripts.  So before I can

15   determine whether it includes English translation,

16   I've got to, I guess, take the first issue, and that

17   is whether there is going to be transcripts at all.

18           MS. FOX-YOUNG:  Okay.

19           THE COURT:  Because if there is no

20   transcripts at all, I don't have to worry about

21   putting English translations next to it.

22           MS. FOX-YOUNG:  Okay.  Well, just to

23   reiterate, I think the Government has made clear --

24   this is perhaps something of a nonissue, if there is

25   not much of a translation problem, and not much

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Spanish language to deal with, without rehashing

2   everything, for the record, we would oppose providing

3   the jury with transcripts during the course of

4   testimony.

5            If the Court is inclined to come up with a

6   default position, certainly would oppose entering

7   them into evidence and sending them back with the

8   jury.  And I do think that there is an accuracy

9   issue.  And I think, if the Government can make a

10  showing during trial that it's necessary, for some

11  reason, perhaps the Court could take it back up.  But

12  our position would be, with no showing and no basis

13  for the Court at this point, as to how that would be

14  helpful for the jury, we'd oppose it.

15           THE COURT:  All right.  Anybody else?  Any

16  other defendants want to speak on this issue?  Mr.

17  Maynard?

18           MR. MAYNARD:  Just, again on that point,

19  Your Honor, the best evidence -- if the tape, to the

20  extent that it's fairly clear and intelligible, the

21  jury can hear it.  They don't really need the

22  transcript to help them out.

23           THE COURT:  All right.  Thank you,

24  Mr. Maynard.

25           Anybody else on the defense side.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          All right.  Mr. Castellano, I assume you

2    still, after listening to the defendants, want

3    transcripts in the jurors' lap during the playing of

4    these tapes?

5          MR. CASTELLANO:  Yes, Your Honor.  And the

6    reason being that jurors, and people in general, take

7    in information differently; some are auditory

8    learners, some are visual learners.  And I think even

9    this Court, when reading the jury instructions to the

10   jury, puts them on the visualizer so the jury can

11   read and follow along.  And that's for a reason.

12   That's because people take in information differently

13   and understand better when they can both see and

14   hear, so you're using more senses to understand the

15   evidence.  And so I think that the transcript

16   certainly is an aid to the jury.  And I agree that

17   the recording is the evidence.

18          Related to a point Mr. Maynard made, I

19   agree that sometimes excerpts are better because you

20   might have a 20-minute conversation.  And no one

21   wants to hear a 20-minutes of recording.  So there

22   might be a point where there are excerpts.  But that

23   also means the defense will have to figure out if

24   there is something that they want from that

25   conversation that we're not using because we're going

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

99

to use what's relevant to us, and they might want other points. I do agree that excerpts can be useful rather than listening for 20 minutes.

THE COURT: What do you do about Mr. Cooper's point -- and I think somebody else brought it up, too -- if your transcripts have the court reporter or the reporter interpreting the word, would you be better off taking that court reporter interpretation out, and just listing that statement from the witness? What's your thoughts about that?

MR. CASTELLANO: It could be done that way. Or if the witness disagrees with the interpretation, saying that's not what it means, that could be clarified. Some of the transcripts, from time to time, have people who are actually involved in the conversation who correct the transcripts after there is a first draft. So that may actually be fairly accurate. I can't speak to all the transcripts. But sometimes the players are allowed to listen to the transcript and make corrections to it before it's finalized.

THE COURT: What would be your preference as to the Spanish word being in brackets or not brackets? Would you prefer that they be there, and then there be explanations? Or if the witness adopts

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the translation, would you rather pull them out and

 2    just do it all by examination?

 3              MR. CASTELLANO:  I'd prefer to leave them

 4    in, otherwise we'll spend the rest of our time

 5    correcting transcripts and then redisclosing them to

 6    the defense for their take on the redaction.  And I

 7    think we'll just be doing that up until the trial

 8    starts.  So I think we go with what we have.  And if

 9    there are disagreements, then certainly they can be

10    highlighted through examination.

11              THE COURT:  Do you see -- it may have been

12    Mr. Cooper raised -- any sort of confrontation clause

13    issues there?

14              MR. CASTELLANO:  No, because the witness

15    will be on the stand subject to examination.  It

16    would be a confrontation problem if the person could

17    not be cross-examined.

18              THE COURT:  All right.  Anything else you

19    want to say on your motion?  Any other guidance that

20    you need other than these parameters?

21              MR. CASTELLANO:  No, Your Honor.

22              THE COURT:  All right.  Mr. Cooper.

23              MR. COOPER:  Confrontation problem is that

24    the translator, the transcriptionist is not here to

25    be cross-examined.  It's not somebody else.  So I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    think that's a confrontation issue, Judge.
 2              THE COURT:  All right.  Anybody else want
 3    to have a say before I rule on this motion how we're
 4    going to do the transcripts?  From the defense side?
 5              All right.  Well, the transcripts will not
 6    come into evidence.  I will allow the jurors to use
 7    transcripts.  The transcripts can remain with the
 8    court reporter's translation, or if there is some
 9    other etymology as to how that got into the brackets,
10    or the parens, that can be explored either on direct
11    or cross.
12              I don't think there is a -- any sort of
13    confrontation problem here.  And if anybody wants to
14    explore this further, I'd be glad to take briefing on
15    it.  But it's not coming into evidence.  So the court
16    reporter's translation is not coming into evidence,
17    because the transcript is not coming into evidence.
18    It's going to be the audio, the disc that's going to
19    be coming into evidence.  So the jury will not take
20    the transcripts back to the jury room.  And they will
21    just be used as aids as they listen in here.  They
22    will have only the disc or recording in the jury
23    room.  So the only thing that's going to be coming
24    into evidence is going to be the transcription.
25              So the Government will produce, identify
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    the transcripts that they're going to be using at
 2    trial.  The defendants, then, have a right to
 3    challenge that.  So Ms. Sirignano, if you don't agree
 4    with the translation, talk first to the Government,
 5    say:  Here is how we think it ought to be translated,
 6    or here's the changes we think ought to be made.  If
 7    they don't agree, then you'll need to submit it to
 8    me, and I'll make a ruling.  Probably I'll need the
 9    tape and the competing transcriptions.  See if you
10    can work those out.  If you can't work them out --
11          All right.  Any confusion?  Everybody
12    understand?  Everybody got a ruling on that?  Did I
13    rule on all the motions there -- all the motions?
14    All right.  That's how we will handle transcripts.
15    And I will use the standard jury instruction from the
16    Tenth Circuit on that information, because I think
17    we're doing what the Tenth Circuit normally predicts
18    and requires.
19          All right.  So let's go to 1524, which is,
20    again, the United States' motion to preclude
21    eliciting testimony about sensitive government
22    recording devices or programs.  I think we may have
23    banged out the compromise, or at least the -- how
24    we're going to deal with this.  I hope I can remember
25    everything that we did.  But I think that basically
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the defendants can ask questions about the recording

2   devices except in two areas.  One, they cannot ask

3   questions about the size of the device.  And they

4   also can't ask questions about the portals, the

5   recharging information, or other things you might

6   stick into a portal, or how the portal is configured,

7   or what it looks like.

8           Are those the two areas that we agreed

9   would be kept confidential, Mr. Beck?

10          MR. BECK:  I think that's right, Your

11  Honor.

12          THE COURT:  So are you comfortable, then,

13  that I grant your motion in part and deny it in part?

14  Everything else is fair game, but those two areas

15  would be off limits?

16          MR. BECK:  Well, I mean, I guess I'm

17  thinking about fighting it harder when it's already

18  out there in a publicly filed document.  I mean, I

19  think the basis of this motion is also the relevance

20  of asking about details about the recording device at

21  trial, as opposed to for a motion to suppress.

22          I mean, if we think about a motion to

23  suppress in the Fourth Amendment context, once the

24  Court has ruled on a pretrial admission of evidence,

25  and defendants move to suppress, that search, or a

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                      1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                      e-mail: info@litsupport.com

1    lot of the contentions about why that evidence should

2    be suppressed are not included in the trial.

3           And I think the same goes here.  I think

4    the Court should be wary about allowing the

5    defendants sort of free rein for a host of reasons;

6    free rein to go into how they were trained to use the

7    devices, how they secreted the devices in prison, the

8    dimensions of the devices, how they turn them on or

9    off.  I mean, certainly, as I've said -- and I've

10   remained with this position throughout -- that's fair

11   on cross-examination, to ask about whether you

12   intentionally turned on or off the devices.

13          What I'm concerned about is -- and I'm not

14   saying anyone would do this; I just think it may be a

15   good time to discuss it here, to talk about what

16   intentions are -- to go down a rabbit hole in which

17   they're going to just, you know, beat this thing to

18   death, and we're going to fall into what happened

19   when Special Agent Williamson was on the stand -- or

20   it may not have been Special Agent Williamson; it may

21   have been Mr. Cordova -- in which we had to kind of

22   wait after every question for whether the Government

23   was going to object or not.

24          And so I think the Court may be wise to be

25   a little bit more heavy-handed here.  And just as the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Court admonished us to talk to our cooperators about
2    what's coming in and what's not.  I think that the
3    Court may stand by this ruling, and that's fine.  But
4    we may also think about how much and why we're going
5    to get into these recording devices.  I mean,
6    certainly, as we heard from Mr. Cordova, STIU
7    provided them in the cells as a ruse, that's fair
8    game; that, you know, they may be contraband, I think
9    that's fair game.
10           And again, I think this all may be for
11   naught, because I don't think the defense is going to
12   want to waste a lot of time in trial trying to ferret
13   out this evidence.  I just think we all may be wise
14   to just be careful and think about what the purpose
15   of bringing in this evidence is at all.
16           THE COURT:  Well, I guess my problem is,
17   last week, if I understood what Mr. Jewkes and
18   Ms. Jacks were saying, is that probably the biggest
19   attack they're going to have at trial is going after
20   Mr. Cordova and other witnesses.  And it seems to me
21   they're going to probably -- I don't want to do the
22   defense for them, but they're going to attack every
23   possible angle they can about how Cordova recorded
24   those conversations, including -- you know, maybe it
25   was Mr. Herrera that said this, I can't remember
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   now -- but was he turning it on or off?  Did he know
 2   how to function the machine?  I guess I need to know
 3   what parameters the Government wants imposed.
 4   Because, to a certain degree, I think I have to rule
 5   this way, I have to say:  This is off limits.  And
 6   then the rest of it I probably can't restrict the
 7   defendants.  I guess, at trial, if it gets
 8   cumulative, if it's gets irrelevant, immaterial, you
 9   know, then those objections are always available.
10   But at least going into the trial, I think I need to
11   probably have the Government state this is what they
12   want to be off limits.  I tell the defendant:  That's
13   off limits.  And then the rest of it is at least
14   within their ballgame.  It doesn't mean they have to
15   use it, but it's in their ballgame.
16           MR. BECK:  And I think -- I mean, I think
17   all of that is fair.  As I said, I don't think this
18   is going to be an issue, because I think that the
19   points you're bringing up here are fair game for
20   cross-examination, certainly.
21           I would say, in addition to this list, I
22   think the Government would have concern about going
23   into the specific amounts of times the devices were
24   taken in and out because of battery issues.  I don't
25   know that any of the cooperators would specifically
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   know that information or recall that information.
2   But I could see how that would be used for
3   counterintelligence purposes.  And that information,
4   I think, is law enforcement sensitive, in terms of
5   the amount of hours, possibly, that these devices
6   record.
7           On the other hand, you know, I could see
8   that information would be helpful.  So, I mean, I
9   wish I was more -- I wish I was being more helpful to
10  everyone in the room.  I can see that it's a hard
11  decision for everyone to make.  I think that these
12  two areas are a fine line for the Court to draw at
13  this point.  And I think we can probably operate on
14  this basis.  And if we need to address it, we can do
15  that at a later time.  I don't expect that we will.
16  But if we need to, we can bring that up at a later
17  time.
18          And I know the Court can say -- I know the
19  Court always has an open door.  I understand if the
20  Court wants to say this is a pretty firm ruling, you
21  better have some really good grounds to address this
22  later since we're moving quickly, which is why I am
23  saying I think these two points are fine to draw for
24  now.  I think we could be comfortable with these
25  lines.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                          (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  You were adding a third one on
 2    about the battery.  Does that need to be in or out?
 3    Can we just live with the two, or do we need to make
 4    it a three-point exclusion?
 5          MR. BECK:  I think we can live with the
 6    two.  Because I think the battery is going to be
 7    important for -- I mean, I think it will be important
 8    on both sides.  Because, as we'll see here in a
 9    couple of days, I mean, there is going to be lots of
10    debate about why there aren't just days and days of
11    recording, right?
12          So I think it's important for our case to
13    establish that, as it's probably important for their
14    case, to establish the opposite.  So I think, in this
15    case, it's probably fair game.
16          So I think I've now talked myself in a
17    circle.  And I think the Court's two areas are fine
18    for now.  We can work with that.  If we can't, then
19    I'll have to bring that up.
20          THE COURT:  Now, was the Government's
21    concern about the size or the shape?  I mean, for
22    example, it would seem to me that everybody needs --
23    the jury, including all of us here in this room --
24    need to convey in some ways the size of this.  It's
25    not like Mr. Cordova had a recording bank there, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    know, like a recording studio in his cell next door.
 2    But at the same time, we're not going to have one of
 3    these devices in the courtroom so somebody can
 4    actually show the size.  I mean, if Mr. Cordova
 5    wanted -- I have no idea if this is right or not --
 6    raise his fist and say it was the size of my fist or
 7    half the size of my fist, or it was about the size of
 8    my finger, would that be okay?  So the jury has some
 9    sense -- because we're talking about -- we're talking
10    about putting these in cells.  We're talking about
11    dropping them in beds.  We're talking about a lot of
12    stuff.  I think that some information about the size
13    is going to be important to both sides telling their
14    story here.
15            MR. BECK:  Yeah, I think that's okay.
16            THE COURT:  Is it the shape or the size
17    that's the problem?
18            MR. BECK:  I don't necessarily think it's
19    either one, as opposed to getting into details about
20    the specifics of either of those.  And what I mean by
21    that is, I think it's okay to say:  It's the size of
22    my fist, or it's the size of my finger, because I
23    think that will be important for both sides.  I think
24    if we talk about its -- you know, the specific
25    aesthetics; that it looks like X, I think that would
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   be -- I think that would be a concern, and I think
 2   that's where probably the law enforcement privilege
 3   overcomes any need for that.  I think really 403, and
 4   the usefulness of that, versus other reasons for
 5   keeping it out, we'll probably keep that out.  So I
 6   think, generally, if we get into the size.  You know,
 7   for instance, it's the size of, you know, an MP3
 8   player; it's the size of an iPhone; it's the size of
 9   a car battery; it's the size of a watch battery,
10   something like that, I think all that stuff is fine.
11   I think, if we start talking about:  It looks like X,
12   I think that would be the concern.  And I don't think
13   that is probative.
14            THE COURT:  Let me -- since I'm probably
15   ignorant the most of what it looks like -- if the
16   person says:  It's round or it's square or it's
17   rectangle, it looks like a match box, those sort of
18   things, is that fair game to give some visual
19   description of what the recording device looks like?
20            MR. BECK:  I mean -- so I'd like to say
21   yes, and I think that the answer is yes.  But I also
22   am not privy to what these things look like.  And I
23   don't know whether our cooperators will have readily
24   available that information either.  I don't know the
25   conditions under which they use them.  So I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    that's fair.  I think that's fair to ask circular,

 2    rectangular, any other shape they can think of.

 3           I guess what I'm getting at is, you know,

 4    if for instance someone was going to say:  It looks

 5    like a leather shoe with a heel in it, and I take off

 6    my shoe, and I hold it up to my ear and talk through

 7    it, thinking of the Smart show that I watched with my

 8    dad when I was little.  "Get Smart," thank you.

 9    Right.  That would be Government sensitive

10    information that we don't want out there.  The

11    particular aesthetics of the device.  But the size,

12    the shape, those sorts of things I think are fair

13    game.  Does that sort of color in where I think the

14    Court should draw the line?

15           THE COURT:  I guess.  I hadn't thought

16    about if there is some packaging here.  But --

17           MR. BECK:  I think there may be -- and I

18    think that's what the law enforcement privilege gets

19    at, is I think that if, for instance, they -- I mean

20    I'm trying to think -- I don't know these things, so

21    these are just examples, but I'm thinking, you know,

22    if they could secrete it in clothing, well, that may

23    be fair game.  I mean, what I'm getting at is, if

24    there was this Get Shorty -- Get Short -- sorry,

25    that's the wrong -- Get Smart, thank you.  I'm now

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    showing my generation.  If there was a Get Smart
 2    shoe, that would be something the Government would
 3    have an interest in protecting, that may override
 4    their need to bring it out in cross-examination.  But
 5    in terms of the size, the shape of these devices, I
 6    don't think that's the problem as much as:  It's this
 7    color; it looks like this; you know --
 8              MR. MAYNARD:  Could I ask what it's
 9    disguised as?  I mean, is that what you're getting
10    at?
11              MR. BECK:  Right.  I think that would be
12    the concern:  What it's disguised as.  I mean, in
13    this case, I'm not sure that's a huge concern.  Thank
14    you for helping me out on that, yes.  But if it's
15    disguised as X, I think that's where the law
16    enforcement privilege comes in, to keep that out of
17    the case.
18              THE COURT:  All right.  Anything else you
19    want to say on your motion then, Mr. Beck?
20              MR. BECK:  No, Your Honor.
21              THE COURT:  All right.  So if I understand
22    what the Government is saying that they want to keep
23    out will be the portals:  Any sort of questioning
24    about what goes in the portals, and what the portals
25    look like.  The shape and size are fair game.  If --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   any questions about how it's disguised would be okay.
 2   Now, what I understand that would permit the
 3   defendants to do is, for example, Ms. Sirignano, I
 4   guess, had a picture of it.  She could show it to the
 5   witness and say:  Is that what it looked like?  And
 6   that would be a yes-no answer.  But that would be
 7   okay.  Am I understanding correctly, Mr. Beck?
 8           MR. BECK:  No, I don't think so.
 9           THE COURT:  No.
10           MR. BECK:  So the way the device was maybe
11   smuggled in or secreted is not okay.
12           THE COURT:  Well, what she had a picture of
13   was just the recording device.  I don't think she has
14   a picture of how it was secreted.
15           MR. BECK:  Right.
16           THE COURT:  But whatever this device was,
17   she thinks she has figured out what you've told them
18   a lot, so they have a picture from 2007 or 2008, or
19   something, if they showed that picture, would that be
20   a problem?
21           MR. BECK:  Yes, I think it would be.
22           THE COURT:  Because that falls under what?
23           MR. BECK:  That falls under the law
24   enforcement privilege -- the law enforcement
25   sensitive privilege.  I know what that device --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Why does that not come under

2     the shape, which you said, I thought, was okay,

3     rather than Mr. Maynard's question of it being:  How

4     is it disguised?

5          MR. BECK:  I think -- I think that's a

6     good -- so I think that picture is a good example.

7     That picture may be law enforcement sensitive, and so

8     we don't want to bring that into the courtroom.  I

9     mean, we can talk about -- you know, liken this to

10    classified information.  There may be classified

11    information out there in the public sphere, but we

12    can't talk about that; we can't bring it in, even if

13    it's out there.  So that picture may be law

14    enforcement sensitive.  And so I would ask the Court

15    to tread lightly on even going this far.  But if we

16    ask:  Is that the device used, especially the length,

17    said no; when we ask what are the differences, that's

18    what concerns the Government, is the specific

19    aesthetics of these devices.

20          Now, if we look at that device or that

21    picture, and we say:  Is it about that big, I still

22    think that's going too far.  I still think -- I think

23    what is okay is to say, just as Your Honor did, is it

24    about the size of a fist?  Is it -- you know, there

25    is no -- I don't see that there is probative value to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    getting into:  Does it look like this picture, and
2    what are the specific differences?  I don't see there
3    is probative value:  Does it look like this picture?
4    There is probative value to:  Does it have an on-off
5    switch?  Is it about as big as your fist?  Is it
6    about as big as your finger?  Is it about as big as a
7    car battery?  Can you rewind the device?  Those
8    questions are probative of issues in the case.
9             But whether it looks like the picture, and
10   what are the differences, are not probative.  And to
11   the extent they are, the law enforcement sensitive
12   privilege overrides the introduction of that evidence
13   in the trial.
14             THE COURT:  You had -- in your motion you
15   talked about sensitive government recording devices
16   or programs.  Is there something in addition to
17   programs that you're trying to sweep in other than
18   just the recording devices here?
19             MR. BECK:  The programs would be the ways
20   in which devices are secreted or installed or
21   something like that.  So the shoe that I was giving
22   the example of; obviously, the whole shoe -- I mean,
23   I don't know.
24             THE COURT:  But the word "programs" relates
25   still to this recording device?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Right.  So when we talk about --
 2              THE COURT:  There is not another program
 3    out there we're talking about?
 4              MR. BECK:  Right.  When we talk about means
 5    and methods of law enforcement being protected, the
 6    mean would be the device; the method would be how
 7    it's secreted.  So the programs likens to the method.
 8              So I understand that the defense would like
 9    to bring out that STIU brought them in in a ruse, or
10    through the trades or something like that.  And I
11    think that's fair game.  But, when we talk about how
12    the device was -- as I said, if it's like a shoe,
13    that would be the program, the way in which it may be
14    secreted or it may not.
15              THE COURT:  All right.  Anything else,
16    then, on your motion, Mr. Beck?
17              MR. BECK:  Not right now, Your Honor.
18              THE COURT:  Well, so I -- let me see if I
19    can state again more accurately what the Government's
20    position is:  There would be no questioning about the
21    portal or what goes into the portal, what devices are
22    used in the portal, or what it would look like.  And
23    then as far as this category of disguises, we could
24    talk generally about shape and size.  So you can
25    probe there, using somewhat general language.  The
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    technique of taking Ms. Sirignano's picture and

2    showing it both to the jury and to the defendant, or

3    having the defendant take, on butcher block paper and

4    draw it or something like that, that sort of

5    specificity would not be allowed.

6              So I think that's the Government's

7    limitations that they're seeking here.

8              Mr. Adams?

9              MR. ADAMS:  Thank you, Your Honor.

10             THE COURT:  Did I capture that right, Mr.

11   Beck?  Was that a better try?

12             MR. BECK:  You did, Your Honor.

13             THE COURT:  All right.  Mr. Adams.

14             MR. ADAMS:  Judge, I'm not so familiar with

15   the law enforcement privilege and the argument that's

16   being made there.  This is not a terrorism case.

17   This is not one where we have other issues at play.

18   We're not operating in a SCIF.  We've found online --

19             THE COURT:  I think the Government's

20   position, though, is, and correct me if I'm wrong,

21   Mr. Beck is, from last week, is that this is not --

22   they're not trying to suggest this is a terrorism

23   case, but they use these recording devices

24   internationally.  And so they don't want it disclosed

25   in New Mexico, because they use this throughout the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                        e-mail: info@litsupport.com

```
 1    world in terrorism cases.
 2               MR. ADAMS:  That's fine.  And we found
 3    online -- Ms. Sirignano has the EAGLE up on her
 4    computer.  Mr. Lowry has the HAWK up on his, through
 5    Google searches.  So it's fair game.  I mean, what
 6    they view as privileged -- they're making the choice
 7    to introduce this evidence.  We have Sixth Amendment
 8    rights to fully confront -- not partially confront --
 9    and they can classify it as a rabbit hole all they
10    want -- but to fully confront the witness and a right
11    to present a full defense.  If they're so concerned
12    about the sensitive nature of the devices, they don't
13    have to use that evidence.  They're making a choice
14    to put it in play in this courtroom.
15               I'm not going to agree -- I'll obviously
16    follow whatever ruling you have -- but I'm not going
17    to agree a centimeter of an inch to give up any
18    constitutional right and make any sort of agreement.
19               At issue for us, for Mr. Garcia, and for
20    many of these men, is absolutely, the Government's
21    ability and their agents' ability to manipulate the
22    collection of evidence that's presented in this
23    courtroom.  When they can turn on and off the
24    devices.  And the Government wants, I believe -- and
25    I think they want to hide behind this notion of:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Well, keep them away from talking about the battery
 2   life, keep them away from this, so the insinuation at
 3   the end of the case is we did the best we could do
 4   with what we had.
 5           THE COURT:  I think the battery life is
 6   back on.  I think, as Mr. Beck talked, it was
 7   important to both sides to talk about the battery
 8   life.  So I don't think that's off the table.  Am I
 9   correct on that, Mr. Beck, that you decided the
10   battery life stays on the table?
11           MR. BECK:  That's right, Your Honor.
12           MR. ADAMS:  Then my position is it's all on
13   the table; not just so we can give them a hard time,
14   that's not the point at all.  But for us to be able
15   to complete the fullest, broadest, most powerful
16   defense we can present as to their witnesses' ability
17   to manipulate the evidence, we can't agree to any
18   limitation on this.
19           Obviously, again, you can limit us, and
20   we'll follow that ruling.  But I don't think I'm in a
21   position to agree to any limitation on the
22   cross-examination related to these devices.
23           THE COURT:  All right.  Thank you, Mr.
24   Adams.
25           MR. ADAMS:  Thank you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Anyone else want to speak on
 2      the Government's request for limitations here?
 3              All right.  Anything further, Mr. Beck, on
 4      that?
 5              MR. BECK:  Well, I mean -- I think,
 6      obviously, we're constrained to evidentiary rules,
 7      the rules of evidence here.  And, obviously, they
 8      take into consideration constitutional rights.  So,
 9      as I said, the information they're seeking isn't
10      relevant to an issue in this case -- and so it would
11      be not admissible under 402 -- I mean, I understand
12      Mr. Adams' argument that they want to fully explore
13      manipulation of the evidence.  And as I said, they
14      can.  They can ask whether they can rewind, go over
15      all those things that were explained in court the
16      other day.
17              The dimensions of the device don't have to
18      do with any manipulation of the data.  And the
19      aesthetics of the device don't have to do with any
20      manipulation of the data, which is why I think those
21      two areas are important, so --
22              THE COURT:  Well, I'm going to grant -- did
23      you have something, Ms. Sirignano?
24              MS. SIRIGNANO:  Just a quick footnote.
25              I think the idea that this thing is so
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    secretive is just complete nonsense, Judge.  Even you

2    can pull up this stuff on the internet.  They gave

3    this to their cooperator.

4              THE COURT:  Why did you say it that way?

5              MS. SIRIGNANO:  It's that easy.  It's that

6    easy.  You know, the fact that this stuff --

7              THE COURT:  I feel slighted.

8              MS. SIRIGNANO:  I'm sorry, Judge.

9              THE COURT:  I have an iPhone.

10             MS. SIRIGNANO:  It wasn't meant that way.

11             THE COURT:  I'm in the 21st Century.

12             MS. SIRIGNANO:  You've got your iPhone, go

13   right ahead, type in the HAWK device.  It's right

14   there.  Not one picture says law enforcement

15   sensitive.  It's proprietary, sure.  But -- and the

16   fact that the FBI uses proprietary equipment is,

17   again, not a secret.  And so I fully intend to get an

18   exhibit with the HAWK and the EAGLE and the other one

19   that was used, and put it in evidence.  I just think

20   that, you know, we go into this argument that it's

21   law enforcement sensitive, national security

22   privilege, which really hasn't been proven in any

23   stretch of the imagination.  They gave it to these

24   informants.  They're given to informants all over the

25   country, every division of the FBI, thousands of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    people, informants, cooperators, know how these

2    devices are being used by the FBI, and the fact that

3    our clients can't delve into that is utterly

4    ridiculous.

5           If they want to not give up this device or

6    the way that this evidence was recorded, then they

7    can choose whether or not to use it, Your Honor.  I

8    mean, that's the give and take.  Either they let us

9    delve into it or they don't use it.  And that would

10   just be my little footnote.

11          Thank you, Your Honor.

12          THE COURT:  Thank you Ms. Sirignano.

13          Mr. Beck.

14          MR. BECK:  I'll respond to that by saying

15   the FBI and the Government considers this extremely

16   sensitive.  And that will be evidenced later today

17   when we talk about the request for the viewing of

18   this device that we discussed when these devices were

19   presented two weeks ago by Special Agent Williamson

20   and the conversations that I've had with the FBI

21   about that.  So the Government and the FBI considers

22   these very, very sensitive.  And that's why the law

23   enforcement sensitive privilege exists.

24          So the remedy isn't that the United States

25   can put in this evidence or not use the devices.  The

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   remedy is that the defendants have to overcome the

 2   law enforcement sensitive privilege to show that they

 3   are entitled to these devices.  And at that point,

 4   the United States decides how it wants to proceed.

 5   But I think the Court's ruling on this motion is

 6   correct and is sound.  So I'll sit down.

 7           THE COURT:  All right.  Thank you, Mr.

 8   Beck.

 9           Well, I am going to grant the motion in

10   part.  We don't have a lot that's off the table.

11   There is a lot about the device that is fair game and

12   can be disclosed.  But I do think in the particular

13   areas the Government has established their privilege.

14   And so I will honor it, and not see it's been

15   overcome.  If this is one of the ones -- this

16   scenario that you want me to spend more time with,

17   I'd be glad to move it to the top of the list.

18   Otherwise, for purposes of trial there will be no

19   testimony elicited about the portals or the devices

20   that go into the portals.  No pictures will be shown

21   to the witnesses:  Was this the device?  And we'll

22   not ask the witnesses to draw on butcher block paper

23   the exact size or shape.  Size or shape can be asked,

24   and answered generally.  As far as how they are

25   disguised, packaging, anything like that, that will

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    be off limits as well, any sort of program the

2    Government has for disguising or secreting these will

3    be off limits.

4              Again, if defendants can't live with that,

5    or think that's cutting it too close, you want to

6    move this one up so I take a harder look at it, I'd

7    be glad to do that.  But that will be our ruling for

8    trial.

9              What I would like to do now is go into a --

10   I think Ms. Wild -- Ms. Wild, are you on the phone?

11   She was going to be gone at a meeting for about an

12   hour.  She may not be on the phone.  I'd like to go

13   into a true pretrial conference at this point,

14   because I think what that will do is it will begin to

15   kick us into some of the issues about exhibits,

16   exhibit lists, and things like that.  So I'd like to

17   pull our calendars out.  I'd like to get my list of

18   things that I go over in every trial.  Many of you in

19   the room have had trials with me, so you're going to

20   be familiar with how I do a pretrial conference.

21             And then what I'd like to do is go through

22   that in part.  I'm sort of beginning to pick up

23   Document 1525.  And then, after we go through that in

24   part, it will certainly not be in whole, but in part,

25   a true pretrial conference.  And I've thought about

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

**BEAN
&ASSOCIATES**, Inc.                                          1-800-669-9492
PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

```
 1   it overnight about how to tackle these bad acts.  And
 2   what I was going to propose is that we pick up,
 3   instead of Mr. Troup's, we pick up Mr. Garcia's
 4   motion on bad acts.  And I'm not particular as to
 5   which one we do, but we pick that one up, and then we
 6   begin to plow through t.  We'll just take them one at
 7   a time, we argue them out, and I call balls and
 8   strikes, and see how it goes.  I mean, if it's going
 9   to take the rest of our week, then we may want to
10   start looking at some other motions or some other
11   issues.  If it moves along, at some point people may
12   say, We get it, Judge, we think we can work out the
13   rest.  I don't know, but it seems to me that that's
14   the best thing to have a judge just start making
15   balls and strikes on what's been -- after a while,
16   y'all can tell me whether that's useful or not, and
17   whether we just need to keep going, or we need -- I
18   have to pull back.
19            So I'm going to get out my folder.  I
20   brought it to the bench yesterday.  Mr. Hammond,
21   would you grab my calendar out of my briefcase.  I
22   brought it yesterday to the bench, but I didn't bring
23   it today.
24            Ms. Wild, are you there?  Ms. Wild?
25            All right.  Let's, first of all, talk about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the length of the trial.  I think y'all talked to

2    Ms. Wild about this.  We've also talked about it in

3    hearings that we had.  But let's just make sure

4    everybody is on the same page.  What I had been

5    understanding that Ms. Wild has been using, and y'all

6    have been using with her, is that this trial would

7    start on January 29, and it would go six to eight

8    weeks, which would mean that it would be the last

9    week of January, 2, 3, 4, 5, 6.  So that people were

10   not anticipating the trial being over before the end

11   of business on March 9.  And that they thought it

12   could last as late as March 23.

13           Is that, A, still the expectations of the

14   parties, or is there any miscommunication or

15   misunderstanding on this?  And do I need to be using

16   any sort of different figure?  From the Government's

17   standpoint, is that still an accurate estimate of how

18   long the trial would last?  Is there anything more

19   accurate that we can use at the present time?

20           MS. ARMIJO:  I think we used that number,

21   and I think that's the number that we used

22   approximately in the juror questionnaire, four to six

23   weeks, and we stay with that.

24           THE COURT:  So on the jury questionnaire

25   says four to six?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            MS. ARMIJO:  I thought the jury
2   questionnaire said four to six.  But I hear some
3   people saying differently.  If Ryan was here, he
4   would know, because he's the one that worked with us
5   on it.  But I think we could say six weeks.
6            THE COURT:  Let me ask Ms. Standridge if
7   she can get ahold of the -- it doesn't have to be an
8   actual questionnaire, but just what went out to the
9   jurors.
10           Has the rolling production started yet?
11           MS. HARBOUR-VALDEZ:  No, Your Honor.  Next
12  week or later this week, the 20th, I believe.  It's
13  December 20 is the first distribution.
14           THE COURT:  So that's tomorrow.  You might
15  see if Jury Services, since they're about to give
16  them to the parties, if they have one if they could
17  just look at that and tell us what it says there.
18           MS. FOX-YOUNG:  Your Honor, I'm looking
19  at -- I don't obviously know what went out, but the
20  final draft did say approximately six weeks as far as
21  I can tell.
22           THE COURT:  Approximately six weeks.
23           (A discussion was held off the record.)
24           THE COURT:  Well, does anybody have any
25  refinement?  If it says six weeks, is that what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    everybody is anticipating, which would put it at the
2    end of business on March 9?  Is that still, from the
3    Government's standpoint, does that look like a good
4    estimate of six weeks?
5              MS. ARMIJO:  Yes.
6              THE COURT:  Ms. Sirignano?
7              MS. SIRIGNANO:  Judge, I just can't
8    reconcile that in my head with the number of
9    witnesses that the Government has put on their expert
10   list and our expert list.  And so we had been
11   anticipating eight weeks.  I just --
12             THE COURT:  Who just got on the phone?  Is
13   that Ms. Wild?
14             MR. CASTLE:  No, it's Mr. Castle and
15   Mr. Burke.
16             THE COURT:  All right.
17             MS. SIRIGNANO:  Those are just my thoughts.
18   I don't see how this could wrap up in six weeks,
19   quite honestly, with what we've got before us today.
20             THE COURT:  Well, we need to be honest with
21   the jurors.  If we sent out an estimate of six weeks,
22   if that's what's on that form, it's going to get done
23   in six weeks.  So your reconciliation should have
24   come earlier, because I signed off on what y'all
25   agreed on.  So if it says six weeks, then we're going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    to be done by March 9, because that's what went out
2    there.  Anybody else have any comments on the length?
3           All right.  As far as I understand -- and
4    people can correct me if I'm wrong -- we're doing
5    this trial in Las Cruces.  We are doing it in this
6    courtroom, unless Ms. Standridge tells me it's some
7    other courtroom.  But I understand it to be here.  So
8    we will talk about technology.  We'll talk about what
9    the needs of the parties are.  But plan on it being
10   in this courtroom unless we're told otherwise, and
11   I'll keep you posted on that.
12          So the first question:  Do you wish to
13   have, at the end of the case, do you want to have
14   closings before or after instructions, Ms. Armijo?
15          MS. ARMIJO:  After.
16          THE COURT:  Closings after.
17          So the five defendants that are appearing
18   in the first case, is everybody comfortable with
19   closings being after instructions?  Anybody have any
20   problem with that?  Most people like to get the judge
21   out of the way so they can speak to the jury.
22          All right.  So not hearing any objections,
23   we will have closings after the Court instructs the
24   jury.
25          Let's begin to dip our toe into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    preliminary -- to jury instructions.  Let me ask the

2    Government first, because y'all will probably -- I'll

3    be putting a number of the burdens on jury

4    instructions on the Government.  Are all the counts,

5    or all the crimes that are charged in the first

6    trial, are those ones for which the Tenth Circuit has

7    pattern jury instructions, or does not have pattern

8    instructions?

9              MR. CASTELLANO:  They don't have all of the

10   instructions for VICAR.  There are some RICO

11   instructions.  I think they talk about enterprise.

12   But it's not a complete set in the Tenth Circuit.

13             THE COURT:  All right.  So I'm going to

14   start setting some deadlines here.  And I'll work

15   with you to make them doable.  But the first thing

16   I'd like to do is to start working on a preliminary

17   instruction so that the jury has a preliminary

18   instruction that contains the elements of the

19   offenses that the Government is seeking to prosecute.

20             So -- and I'm flexible on these deadlines.

21   But here's the first deadline I'd like to have is,

22   I'd like to put the burden on the Government to get

23   out not a full set of jury instructions, but --

24   unless they want to -- but get the elements of the

25   offense.  So this is something that not every judge

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   requires, but I require it, and it seems like every

2   time I require it, nobody ever does it.  So I'd like

3   in this trial that we do it.  So I must communicate

4   exactly what I'm looking for here.  But I'm looking

5   for a document that the Government will produce and

6   file -- we'll talk about all that in a moment -- that

7   says this:  These are the elements of the offense

8   that we have to prove beyond a reasonable doubt.  And

9   that's all it is.  It's not dressed up with all the

10   bells and whistles of defenses and definitions and

11   those sort of things.  It's just:  Here are the

12   elements of what is going to be proved.  And since

13   there might be some disagreement about what those

14   elements are, I'd like to start getting those issues

15   out earlier rather than later.

16          So, with that in mind, I would like to

17   have -- and if people want to back these up some,

18   that would be fine with the Court -- let me look at

19   my calendar and propose some deadlines.  Then we can

20   see how y'all react to these.

21          All right.  Here is my proposal.  And if

22   you want to do something different, I'm game.  But

23   I'm trying to think of what my needs are, and then

24   what -- how y'all work.  I would propose that the

25   Government file this document and call it "Elements

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    of the Offenses the Government has to Prove" for each
 2    of the -- I guess, it's each of the counts.  If the
 3    counts are duplicative, in other words, it's the
 4    same -- well, why don't we do it for each count.  And
 5    if there is different defendants, then identify it,
 6    but it be comprehensive in the sense that I will be
 7    giving an instruction.  Even if I'm repeating myself,
 8    I'd rather do that, and then figure out how to reduce
 9    the redundancy.  But you produce this document by the
10    end of business on Monday the 22nd.  Defendants look
11    at it on the 23rd.  Discuss it, see how much you
12    agree with, what you disagree with, if any.  By the
13    end of business on the 24th, then, the Government
14    file this document.  So on the 22nd you're sending it
15    to the defendants.  And then discussion occur on the
16    22nd and 23rd.  On the 24th, the Government then file
17    a document again called "Elements of the Offenses the
18    Government has to Prove Beyond A Reasonable Doubt" by
19    the end of business that day indicating where the
20    defendants agree with you and where they disagree
21    with you.  And then you file it and you're done.
22            The defendants then need to also file by
23    the end of business that day what you disagree with.
24    So you can tell me briefly what the disagreement is,
25    or you can tell me you need this word changed or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1     something like that.  Make it real clear in both
 2     submissions what you agree on, so we don't spend a
 3     lot of time with those elements, and that I focus on
 4     where the disagreements are.  And then that will give
 5     me a couple of days to work with what you have and
 6     try to generate for you before I -- before end of
 7     business on the 26th.  So that will give me a couple
 8     of days to try to generate a preliminary instruction
 9     for you.
10          You do not need to prepare a preliminary
11     instruction.  All I need from the parties is to tell
12     me -- give me some input on the elements of the
13     offense.  And I will prepare the preliminary
14     instruction so you don't need to prepare that.
15          How about those deadlines, requirements for
16     the Government?  Does it work for you, Ms. Armijo?
17          MS. ARMIJO:  Yes, Your Honor.  I believe
18     our scheduling order has for both parties to submit
19     jury instructions on January 12 currently.  So that
20     will be after that deadline.  So it should be easy.
21          THE COURT:  All right.  Well, I forgot
22     about the scheduling order.  Do we already have the
23     jury instructions plugged in there then?
24          MS. ARMIJO:  January 12.
25          THE COURT:  For both sides.  All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Let me skip that, then.  I'll just look at the jury
 2    instructions.  You don't need to do that at all.  So
 3    I'll pull that out and prepare a preliminary
 4    instruction and try to get it as soon as possible.
 5    So I guess what -- I guess, if I were the defendants,
 6    I'd take a hard look at what the preliminary
 7    instructions of the plaintiffs or the Government is.
 8    And then maybe be alerting to me, because I'll be
 9    then putting the preliminary instruction together.
10    So I'll just look at your instructions to get my cue
11    as to what the elements of the offense are.
12             Ms. Sirignano.
13             MS. SIRIGNANO:  Sorry, Judge.  I'm not
14    tracking.  So we don't have to worry about the
15    December 22nd deadline.
16             THE COURT:  Well, January 22nd.
17             MS. SIRIGNANO:  January 22nd.
18             THE COURT:  Yeah, don't worry about that.
19    If y'all are going to give me jury instructions as
20    early as the 12th, then I'll just work with those.
21             MS. SIRIGNANO:  Just jury instructions by
22    both parties submitted on January 12.
23             THE COURT:  Well, that's what Ms. Armijo
24    tells me the scheduling order is.  I don't have it in
25    front of me.  So if that's what it says, let's not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    start untangling that.  Y'all worked hard on that,
2    and I don't want to start untangling that.  I'd
3    forgotten about that.
4              MS. ARMIJO:  There are several things due
5    January 12th.  That's one of them.  As to jury
6    instructions, the 12th is the deadline for filing it,
7    and January 19th is the objections to the jury
8    instructions.  So the Court should have, well in
9    advance of January 22nd, both parties' submitted and
10   objections to jury instructions.
11             THE COURT:  Okay.  All right.  So we'll
12   just deal with that.  So forget the elements of the
13   offense.  I'll just take that.
14             Notetaking.  I generally give an
15   instruction in the preliminary instruction.  Have I
16   gone over this at all?  Did we do this at all?  I
17   don't want to be wasting everybody's time.  So I
18   generally put in my preliminary instruction that the
19   jury can take notes.  There are cautionary
20   instructions about not getting lost in notetaking,
21   leave your notes in the jury room at night, you know,
22   the sort of standard things you tell them about
23   notetaking.  But I generally allow, bottom line is,
24   jurors to take notes with cautionary instructions.
25             Is that acceptable to the Government, Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Armijo?

2          MS. ARMIJO:  Yes, Your Honor.

3          THE COURT:  Any defendant have any

4   objection to me allowing the jury to take notes with

5   the cautionary instruction?  Which you'll see, I'll

6   send you the preliminary instruction.  Anybody have

7   any problem with that?  Not hearing any, then I will

8   include that.

9          Same with questions by jurors.  I typically

10  do not, as you've probably gotten a feel, I don't

11  usually ask questions of witnesses.  I don't inject

12  myself into the trial.  So I don't allow jurors to

13  stand in the jury box and ask questions either.  But

14  if they wish to write out questions, we'll tell them

15  those are extraordinary moments.  They write it out.

16  It will be picked up by the courtroom deputy, handed

17  to me.  I look at it.  What I typically do is show it

18  to you.  If you want to work it in, then we'll work

19  it in.  And then I'll show it to you.  If you want me

20  to ask it, I'll ask it -- Ms. Wild is on the phone?

21  Okay.  So we'll do it that way, but at least allow

22  them to write out questions.

23          Two weeks ago, I had a jury, boy, they

24  asked a lot of questions.  But some were useful and

25  some weren't.  Anybody have any problem with that,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Ms. Armijo?

 2              MS. ARMIJO:  No, Your Honor.

 3              THE COURT:  Any of the defendants have any

 4    problems with me including that paragraph in my

 5    preliminary instructions?  All right.  So I will

 6    include that in my preliminary instructions.

 7              Let me ask -- I assume before we did all

 8    our work, so y'all just have to remind me, we agreed

 9    on how many alternates we were going to have for

10    trial, and I remember it being four.  So we're

11    picking a jury of 16?  Everybody is nodding their

12    head.  So I think we've already passed that bridge.

13              And the next question -- let's take it up

14    after lunch -- do we want to keep all four under

15    charge when we send the jury back to deliberate?  One

16    under charge?  Two?  Three?  Let them all go?  Let me

17    know what y'all think about that.  But why don't we

18    take our lunch break at this time.

19              All right.  See you in about an hour.

20              (The Court stood in recess.)

21              THE COURT:  All right.  Go back on the

22    record here, get started.  Looks like every client

23    has a counsel -- defendant has a counsel.  Look

24    around, make sure that's the case.

25              All right.  A couple of things.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   Mr. Hammond, my law clerk, looked at VICAR jury

2   instructions.  Interestingly enough, he said the

3   Second and the Fourth didn't have any, but the Fifth

4   does.  I have not used the VICAR jury instructions

5   from the Fifth.  But my experience with the Fifth has

6   been that they are a good set of jury instructions.

7   The Tenth used them in many ways as a model for

8   theirs.  And I use their -- on the civil side, I

9   think their civil jury instructions for 1983 actions

10  and stuff is pretty good.  So I point that out.  I

11  don't know if y'all had already started that.  But

12  the Fifth does have a set.  It's a 2.78, and it's

13  pages 382 through 387.  So maybe that will assist you

14  on jury instructions, if you haven't already done

15  them.

16          We did look during the break also at the

17  summons for jury service that went out, the special

18  jury questionnaire.  Questionnaire itself, which

19  y'all agreed on, says on page 18, question number 76,

20  it says, "The trial in this case is expected to last

21  approximately six weeks in Las Cruces, New Mexico.

22  Is there anything about the approximate length of

23  time that would not allow you to serve on this jury?"

24  The cover letter, I think originally had four to six

25  weeks.  And I think we changed that.  So the trial is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  expected to last approximately six to eight weeks.

2  So the cover letter says six to eight weeks.  The

3  jury questionnaire itself says six weeks.  So I guess

4  we got a little bit of time we're in play on.

5          All right.  I think the question that I

6  left on the table was what your thinking was on

7  alternates?  Do you want to keep all four under

8  charge?  None under charge?  Or some number in

9  between one and four under charge?  Ms. Armijo?

10         MS. ARMIJO:  We would like to keep all four

11  under charge.

12         THE COURT:  How do the defendants feel

13  about that?  Anybody have any views on it?  Is that

14  fine?  Just keep all four under charge?  Keep them at

15  a secret, undisclosed location somewhere in the

16  building during deliberations?  All right.  We'll

17  plan on keeping them under charge.  So when the jury

18  goes back to deliberate, I'll give the alternates

19  some instructions, and we'll be prepared to place

20  them somewhere comfortably within the building.

21         Start time.  I'll certainly discuss this

22  with you, but I think just because of logistics, it's

23  hard to do much more than sort of a regular time

24  schedule.  I have in the past done some trials as a

25  lawyer out on the west coast and stuff, that I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    thought worked a little bit.  But I'm not sure that

2    we can really do it because of the logistics of this,

3    where we'd start real early, and not have any lunch

4    break.  Have a couple of short snack breaks, and

5    maybe break a little bit early in the afternoon, so

6    that you can prepare for witnesses the next day.  The

7    problem with that schedule here, I'm not sure we can

8    really do it because I'm going to talk to the

9    marshals about seeing if we can start the trial at

10   8:30 in the morning, moving it up 30 minutes.  I

11   don't know if that's going to be possible given the

12   logistics of moving people in.  And that way, still

13   breaking at 5:30.  But if we're moving the trial

14   along, maybe we can get out of here a little bit

15   earlier, so the men can get -- in the first trial --

16   get the men back a little bit earlier in the day and

17   the marshals out of here.  But I'd sort of entertain

18   a little bit of an alternate schedule, but I'm not

19   sure it really is feasible here.  Otherwise, we'll

20   probably start as early as I can get the marshals to

21   get them in here.  Go to 5:00, 5:30, take a

22   traditional lunch break, so you get lunch.  And I may

23   break at 11:45.  I don't know if I can get some work

24   done down here on some other cases, up in

25   Albuquerque, I do a lot of reentry cases or something

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    at 11:45, maybe some initial scheduling conferences

 2    in some civil cases.  Down here, most of my docket is

 3    up there, so I don't know.  Maybe I can do some

 4    things by phone, that way you get a little bit more

 5    time at lunch.  And then everybody try to be back.

 6            Any thoughts on that, Ms. Armijo?  I'm

 7    certainly willing to discuss and take back to Ms.

 8    Wild and the marshals.  Are you game for doing

 9    something different, or stick with the traditional

10    schedule?

11            MS. ARMIJO:  We would like to stick with

12    the traditional schedule.

13            THE COURT:  You like lunch?  Everybody has

14    grown fond of lunch.

15            All right.  Mr. Adams, traditional?

16            MR. ADAMS:  I'm also apparently very fond

17    of lunch and breakfast and dinner.  I like them all.

18            THE COURT:  I've been reading your

19    vouchers, figuring out where to eat around here.

20            MR. ADAMS:  I found all the spots.  I'm

21    going to do a book when I leave.  I do have one

22    request.  And I know I'm -- that a lot of people

23    drive down from afar, and I know you're coming down.

24    And I think all of us have an interest once the trial

25    starts, to get it over as quickly as we can, with a

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   round of acquittals for everybody in as short order

2   as we can.

3        I also am looking at flights.  And I have

4   basically two options to get home.  And I have a son

5   who is 8, who likes his mom a lot more than he likes

6   me, but I'd like to keep connected with him.  And I

7   don't know if it might be -- so there is no real way

8   for me to do that on Saturday morning at the 6:00

9   flight, and then get back here Sunday.  I was

10  wondering, if it's not too disruptive, I -- think you

11  like to go all five days, and I'm not trying to talk

12  you out of who you are as a person, but if maybe

13  every other Friday -- if you would consider possibly

14  breaking at noon every other Friday, that would be, I

15  think, certainly a huge help at my house in South

16  Carolina, and I suspect in many other houses around.

17       And I would also point out it doesn't fall

18  as the second week.  But there is a President's Day

19  weekend in there, where I think we're off on a

20  Monday.  I have to be -- I have a professional

21  obligation to be in New Orleans on Saturday morning

22  at 8:00 a.m.  So realistically the flight, I could

23  get an afternoon flight to El Paso, and get in around

24  midnight.  But if that might be a day that you would

25  consider breaking a little early before the long

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   weekend.  I just offer those up.  If you can work any
2   accommodations, it would be appreciated by Helen
3   Adams at 843 -- no.  But thank you.
4          THE COURT:  Well, I guess, you know -- I
5   guess what I'm thinking is that, you know, for
6   particularly the people that are going to be flying,
7   I personally don't care if you stay -- you know, on a
8   Friday afternoon or something, if you want to get out
9   of here, just get out of here.  You may feel like you
10  don't want to get out of here with the jury watching
11  you or something like that, and I understand that.  I
12  probably am going to push everybody.  I think I
13  indicated earlier that these things don't just get
14  any better with age.  This is not wine.  This is a
15  trial.  So I'll probably push myself and push
16  everybody hard.  I'm probably not going to go back on
17  Friday night.  That's just too hard.  I'm going to go
18  back tomorrow night because I've just got to be in
19  the office 8:30 on Thursday morning.  But I'm going
20  to try to pace myself, too.  So I'm not going to
21  break early.  I'm not going to go back up to
22  Albuquerque until Saturday morning.
23          So I hear what you're saying.  But the
24  thing that would probably work in your case, Ms.
25  Sirignano; if you want to get out of here, it's fine
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  with me, and that way, you'll have counsel here, and

2  you know, maybe work with the Government to make sure

3  nothing is coming up that afternoon that you need be

4  here for.  But do plan on being here.  We're going to

5  push ahead.  We're going to get it done.  And so put

6  everybody on time schedule, on the defendants' side,

7  everybody want a traditional schedule?  That means

8  everybody will break for lunch, all that.  We'll work

9  regular hours.  Mr. Jewkes, everybody on board?

10  Okay.  So we'll plan on a regular schedule.

11          MR. JEWKES:  That would be my choice.

12          THE COURT:  Okay.  We'll do a traditional

13  schedule.  And you know, Mr. Adams, you work on

14  Ms. Wild.

15          MR. ADAMS:  Judge, I'm really not

16  complaining.  I thought you would probably want to be

17  a 9:00 to 5:32 p.m. person every day.  I just thought

18  I would offer it, if there was a little bit of

19  flexibility.

20          THE COURT:  Well, talk to Ms. Wild.

21          MR. ADAMS:  We'll live with whatever you

22  tell us to do.  We'll be happy to be here.

23          THE COURT:  Okay.  I should have put on the

24  record that Mr. Burke, Mr. Castle, are not in the

25  courtroom.  Are they on the phone, Mr. Cooper?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          MR. COOPER:  Your Honor, I don't know,
 2    given their flights, they might not be.
 3          THE COURT:  Well, they're not in the
 4    courtroom.  I'll make that record.  I don't hear them
 5    on the phone.
 6          All right.  So unless y'all tell me
 7    otherwise, we'll run a traditional schedule.  And
 8    Ms. Wild, are you there?  Ms. Wild?  All right.
 9    Well, I want to put on her list for her to discuss
10    with the marshals to see if we can get the defendants
11    in here at 8:30, see if we can try to get started at
12    8:30, and get a little bit longer day or at least
13    push the day up a little bit.
14          All right.  Let's talk about openings.  How
15    long does the Government expect its opening to last?
16          MS. ARMIJO:  An hour.
17          THE COURT:  All right.  How do the
18    defendants anticipate doing their opening?  I'm going
19    to ask some questions.  If for trial strategy you
20    don't want to answer a question, you're welcome to
21    tell me you don't want to answer.  But if you do know
22    that you're going to make your opening statement at
23    the beginning of trial, that would help me in
24    planning purposes, and also writing the preliminary
25    instruction.  And do you intend -- if you intend to

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   do it at the beginning, or do you intend to each
 2   defendant make an opening statement?  And how does
 3   that work.
 4            So let me ask the first question.  The five
 5   people going to trial on January 29, is there anybody
 6   here that's not wanting to make an opening statement
 7   at the beginning of the trial, or either that, or
 8   doesn't want to tell me, one or the other?  All
 9   right.  So I'm going to assume for writing my
10   preliminary instruction that all defendants will be
11   making an opening statement on the first day, or
12   whenever we have openings, and you'll be doing it at
13   the beginning of the trial.
14            So let me just ask, probably ought to break
15   these down now.  Mr. Baca, either you or Mr. Lowry or
16   Ms. Duncan, how long do you think your opening will
17   last?
18            MR. LOWRY:  Your Honor, we anticipate
19   roughly an hour as well.
20            THE COURT:  All right.  And Mr. Maynard,
21   Ms. Bhalla, how long did you think your opening will
22   last?
23            MR. MAYNARD:  Probably 20 or 30 minutes.
24            THE COURT:  Okay.  Mr. Adams, Ms.
25   Sirignano, how long do you think yours will last?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. ADAMS:  One hour.
 2              THE COURT:  All right.  Ms. Fox-Young, how
 3    long does Mr. Perez' last?
 4              MS. FOX-YOUNG:  Without speaking for Mr.
 5    Villa, I would estimate at least a half an hour, 30,
 6    45 minutes.
 7              THE COURT:  And Mr. Jewkes, Ms. Jacks, how
 8    long do you think yours will last?
 9              MR. JEWKES:  Your Honor, Ms. Jacks and I
10    have discussed this, and we don't want to sound like
11    cheapskates, but 20 minutes.
12              THE COURT:  Well, my dad was an old country
13    preacher.  He said he never saved anybody after 20
14    minutes.  So that's a good number.
15              MR. JEWKES:  I understand, Your Honor.
16              MS. FOX-YOUNG:  Your Honor, just backing up
17    a bit.  And if the Court doesn't want to go through
18    this now, that's fine.  But do you have an estimate
19    how long you think jury selection will take?
20              THE COURT:  I was thinking about what my
21    next question was going to be.  Whether I wanted to
22    go into voir dire or I wanted to go into closings.
23    Why don't I do this:  Since I've gotten openings,
24    let's talk about closings and then we'll talk about
25    voir dire.  Because I think I need to share
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    information with you for those people that haven't

2    had a trial with me, so we can have an informed

3    discussion here.

4              So how long does the Government think its

5    closing will last?

6              MS. ARMIJO:  Including rebuttal,

7    two-and-a-half hours.

8              THE COURT:  And Mr. Lowry and Ms. Duncan,

9    how long will Mr. Baca's closing last?

10             MS. DUNCAN:  Your Honor, I would guess an

11   hour to an hour and a half, max.

12             THE COURT:  All right.  And Mr. Adams.

13             MR. ADAMS:  56 minutes and 28 seconds, Your

14   Honor.

15             THE COURT:  I like answers like that.

16             All right.  Ms. Fox-Young.

17             MS. FOX-YOUNG:  45 minutes.

18             THE COURT:  Ms. Jacks?  Mr. Jewkes?

19             MS. JACKS:  I would say an hour and a half.

20             THE COURT:  Mr. Maynard?

21             MR. MAYNARD:  30, 45 minutes.

22             THE COURT:  All right.  Let me talk about

23   voir dire, depending upon how you say those French

24   words, we have enough Texans here that probably

25   you've heard the alternative pronunciation.  For
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   those of you who have had trials with me, you

2   probably know that I probably do the most extensive

3   voir dire among my colleagues.  That does not mean

4   that I'm extensive from where you're from.  But you

5   probably scouted me out enough to know that I do an

6   extensive voir dire.

7            Let me talk about my philosophy as a judge.

8   You have your philosophy as a lawyer.  I do think

9   jury selection is important, so I'm not one of those

10  judges that does not think it's important.  I do

11  think voir dire is important.  I think it's a

12  critical stage of the trial, because I want everyone

13  in the room, all the parties, to feel that when they

14  start this trial, they've got a fair and impartial

15  jury there.  So I will work with you to get you a

16  fair and impartial jury.  Again, you have your

17  philosophy about how to select a jury, and that's for

18  you to decide.

19           I will tell you a little bit that when I

20  was practicing, I always thought the best thing the

21  judge could do for me was to make the jurors feel

22  comfortable talking in the courtroom.  Because we're

23  used to hanging around courtrooms, that's what we do

24  all the time for a living, and so we're used to

25  talking and we're used to being fairly comfortable in

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                            e-mail: info@litsupport.com

1    a courtroom.  And we forget how intimidating a

2    courtroom can be for people that don't make a living

3    hanging around courtrooms.  So the thing I try to do

4    is to make it a comfortable place.  So you will see

5    me doing some things that are maybe not terribly

6    enlightening for what you have to do, which is to

7    exercise peremptory challenges and make for cause,

8    but what I will be doing is trying to make the jurors

9    comfortable.  So that when you stand up as counsel,

10   you have probably heard the jurors speak at least

11   once, if not multiple times, had me questioning them

12   a little bit, so they're used to questioning.  So

13   that the first person that has to speak to a juror is

14   not you, which I think puts you at a disadvantage,

15   but that I've kind of done that for you.

16          So I will -- I'm going to give this some

17   thought.  Ms. Wild, are you on the phone now?  I

18   think what we agreed to is that we'd have 60 in the

19   courtroom, and bring in waves of 20, if we didn't get

20   our 16 out of the first 60.  Sixty is a big number.

21   That is a big number in the courtroom.  But, of

22   course, we're picking 16.

23          Ms.  Wild, are you there?

24          THE CLERK:  I am, Judge.

25          THE COURT:  All right.  So I'm talking

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    about the jury selection.  And I think we agreed that
 2    there would be 60 in the courtroom.  I will do the
 3    sort of typical things of -- I will prompt you
 4    through -- so I will prompt you through introduction
 5    of yourselves as the lawyers.  I will prompt you
 6    through your introduction of your clients.  I will
 7    prompt you through the identification of your
 8    witnesses.  So you will need to be ready for those
 9    questions.  So when they come, you know they're
10    coming, and you will then -- then you'll do it.  But
11    I will prompt you through.  Then I will ask some
12    general questions.  I intend to ask about law
13    enforcement.  Even though you have some information
14    on your jury questionnaire, I'll probably ask some
15    questions on law enforcement.  I will probably ask
16    some questions about jury service.
17           I will probably ask some questions, because
18    this case has drugs, I think we probably need to find
19    out a little bit about if anybody has strong
20    reactions to drugs, substance abuse, that sort of
21    thing.  Then I will probably look very closely at the
22    standard jury questionnaires that went out as well as
23    the special questionnaires, as well as the special
24    questionnaires, and see if I see some questions that
25    I can ask each one of the jurors or at least deep
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    into the jury pool.  I may not go to number 60.  You
2    know, it's always number 60 that's yappiest back
3    there, you know.  And you know they're not going to
4    chosen, but they're going to tell you about their
5    mother-in-law and their dog and cat and everything
6    else.  I'll probably begin to, you know, quit, but I
7    don't know.  I don't know, it may be that I just feel
8    like we have to exhaust this 60 and make sure we get
9    it done.
10            Now, the thing that's a little more
11   challenging for me as a judge this time is because
12   your questionnaire is so extensive that, I don't
13   know, there might not be anything for me to ask, you
14   know.  So I say that because, be prepared, for those
15   of you who have tried cases with me, if I just really
16   don't have something to ask somebody because of the
17   extensive questionnaires here, and I'm not going to
18   waste everybody's time, theirs or mine or yours, by
19   asking them a bunch of makeup questions.  So it's
20   really not going to be helpful.  I'll try, though.  I
21   will try to think of something, maybe two or three
22   questions with each one of the jurors, so that
23   they're comfortable speaking in here.
24            If the jurors know something about the
25   case, I intend not to have them pollute the jury
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  pool, so I'll bring them up to the bench.  So be

2  ready to come up to the bench fairly frequently,

3  because if anybody knows anything about the witnesses

4  or the case, we'll do that up here at the bench.

5  We'll fog the machine, and we'll do that portion of

6  the voir dire up here at the bench.

7        I'm trying to think.  Is there anything

8  else I need to go over?  Can you think of anything

9  else, Ms. Wild, that might be particular to me for

10  the lawyers that haven't had a trial in front of me?

11  Anything in particular about this case that you think

12  I ought to share with them that you would predict how

13  I'm going to do things.

14        THE CLERK:  Typically, you don't excuse

15  jurors for cause without a party moving.

16        THE COURT:  That's a good point.  When we

17  get to the for cause challenges, I'm not going to be

18  freewheeling.  I haven't done it with -- you know,

19  you get some of these judges that grab the

20  questionnaires and start knocking people out.  I

21  didn't do that.  I'm going to work with you so that I

22  don't skew the pool.  And I typically will not be

23  excusing people out of the venire without somebody

24  telling me they want them out.  Because you have

25  reasons, and you have probably profiles and people

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that you want on the jury.  You've probably got

2    profiles of people you want off the jury.  I'm not

3    going to try to get myself involved and do that.  So

4    if you want somebody off the jury, you've got to make

5    a for cause challenge for them.

6              Can you think of anything else, Ms. Wild?

7              THE CLERK:  Give me just a second, Judge.

8    I can't off the top of my head.  But I'm going to

9    look at my notes, and I may have something to send

10   back to you.

11             THE COURT:  Now, the reason I'm dumping a

12   lot of information on you is because I'm about to ask

13   you a question, and I want it to be as informed as

14   possible.  And that's how long you think the voir

15   dire will take for you to do your voir dire.  I'll

16   give you my philosophy that I think that it's

17   important that you conduct some voir dire.

18             But on the other hand, I've got to tell you

19   that because of the way other judges do voir dire,

20   lawyers don't get much voir dire anymore.  And so, as

21   a result, unfortunately, I'm not seeing good voir

22   dire, because people don't get to practice it

23   anymore.  So I tend to, within reason, allow you to

24   do some voir dire, but I also begin to probably put

25   some limits on it.  I'm not one of those judges that

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                              1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                    e-mail: info@litsupport.com

 1   just says, no, the judge is going to ask all the
 2   questions.  So I'll give you some voir dire.  But I
 3   probably am not going to just let it go on forever
 4   given particularly the logistics we're going to have
 5   to do in this trial.
 6            There was one other thing I remembered I
 7   wanted to tell you.  I can't think of anything else
 8   unless Ms. Wild does.  I'll hush.
 9            Let me now ask -- and this is for anybody
10   if you've had a trial with me or haven't had a trial
11   with me -- anybody want to ask me some questions
12   about how I do voir dire, how we're going to do voir
13   dire before I begin to ask y'all questions about how
14   long your voir dire is going to take?
15            THE CLERK:  Judge, did you explain to them
16   how you seat the jury?
17            THE COURT:  That's a good point.  So what
18   we will do for this trial -- and I didn't tell you
19   last time, Ms. Wild -- and you might need to explore
20   this -- for the first time the marshals approached me
21   about the fact that I had jurors sitting in the well.
22   That was a one-defendant case.  And they began to --
23   what I typically do is the 14 jurors in the box over
24   here, as you know, when you come into federal court,
25   we don't have the old wheel, so we don't pull numbers

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    out anymore like in the old days, you'd put

2    everybody's name in there and you'd pull it out and

3    you give them a number.  But it's still done the same

4    way, but it's just done electronically.  So when the

5    jurors show up, we check them off, we take their

6    names and put them in the computer, and it randomly

7    draws the names.  So you go from the computerized

8    list that you're getting over the next three batches,

9    you're getting an alphabetical list.  It goes from

10   that to a randomly selected list.  So when the jurors

11   begin to come in, the 60 will go 1 through 14, and

12   then, if the marshals allow it -- I wasn't sure why

13   in that particular trial for the first time they

14   began to balk on this -- but assuming that they let

15   me do it the way I always do it, where Mr. Lowry, Ms.

16   Duncan and Mr. Baca are seated, that row, which looks

17   to me shorter than the row I have in Albuquerque,

18   normally that row is 15 through, what about 22,

19   Ms. Wild?

20             THE CLERK:  Correct.

21             THE COURT:  22, and then it goes back over

22   here where Mr. Herrera is.  And on the back -- I

23   guess we've got a front row there, don't we, which is

24   not the way it is in Albuquerque.  So if they'll let

25   me do it, I'll put -- where Mr. Herrera is sitting --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    be 23 through -- is it 31?

2           THE CLERK:  Through 30.  But that well is

3    going to be pretty crowded, so I'm not sure that

4    that's a good option to use those rows.  We can talk

5    about it.

6           THE COURT:  Well, the interesting thing is

7    this is a lopsided room, in the sense that instead of

8    it being balanced, the door in the middle, it's short

9    on my left, and it's long on the right.  But anyway,

10   that's the way I line them up.  The reason for that

11   philosophy was, is those 14 jurors over here in this

12   box, if they're unstruck and unchallenged, they're

13   going to be your jury.  And so it always helped me

14   visually -- I'm sort of a visual guy -- to look at

15   that jury box and go, if I don't take care of those

16   jurors, they're going to be my jurors.

17           So what you will do is we'll give -- I

18   think we've already discussed this about peremptory

19   for cause challenges, of course you get to make those

20   as need be.  So when we do the for cause challenges,

21   I will ask for the for cause challenges by number and

22   name, no argument.  And we'll see if we agree on some

23   folks.  And then those that we don't agree on, then

24   we'll start arguing those.

25           And then we will confirm the unstruck --

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    we'll confirm the people that are struck from the
2    venire.  Then, after that, we will give peremptory
3    challenges, the defendant get 10, the Government gets
4    6.  We'll go with six rounds.  The Government leads
5    off round one.  The defendant leads off on the
6    alternate rounds, so for the first four rounds, is my
7    memory, is that for the first four rounds, the
8    defendants get two peremptory challenges each round.
9    The Government gets one.  So in the six rounds the
10   Government only gets one peremptory challenge for the
11   first four rounds.  Defendants get two.  Then the
12   last two they only have peremptory challenge.  So
13   that's the 10, that's the six.
14           So that will pretty much -- then I'll seat
15   the first 12 unstruck, unchallenged jurors.  We'll go
16   ahead and select 16.  That will be the alternates.
17   Then I'll have to look at the rules.  There actually
18   is a rule or statute, when I got two alternates, I
19   give each side one peremptory challenge to be
20   exercised against the alternates.  I just can't
21   remember on four alternates whether you get two
22   peremptory challenges, or maybe even three.  Whatever
23   the statute permits, the rule permits, you'll get
24   that.  And then we will have those as our alternates.
25   So it will be the first unstruck, unchallenged.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            Mr. Castellano?

2            MR. CASTELLANO:  Your Honor, will this be

3    an anonymous jury, so we address them only by number

4    or will we be using names as well?

5            THE COURT:  Well, you know, I'll do what

6    everybody thinks, and I'll certainly get input from

7    the jurors.  My thoughts are, is that once you go to

8    numbers, you begin to put some distance between the

9    Court and the jurors.  You begin to make it a little

10   more impersonal.  And I'm of two minds on this.  Once

11   you start using numbers, I don't know if the jury

12   gets more nervous or less nervous.  On one sense, I

13   think they would go, Oh, my goodness, this thing is

14   so dangerous that they're having to assign me

15   numbers, and I should be worried about my security.

16   Or, on the other hand, if everybody is just talking,

17   I'll tell everybody where I live, and things like

18   that, and try to make them feel as comfortable as I

19   am.  If we all signal we're not worried about our

20   security, or anything like that, I think it might put

21   them at ease.  If we put numbers in it, I don't know.

22   I'm of two minds on it.

23            What do you think, Mr. Castellano?

24            MR. CASTELLANO:  I think we could ask the

25   jurors.  I like an anonymous jury.  I know Judge
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

```
1    Brack does it in pretty much every case, so this is
2    par for the course in his courtroom.  My preference
3    would be to have an anonymous jury and refer to them
4    by number.  But as the Court said, you may also start
5    just by asking the jurors how they feel about it.
6              THE COURT:  And I've never done an
7    anonymous jury.  I always felt like it took something
8    out of the room when we start using numbers.  But I
9    don't know, how do the defendants feel?  I mean, it
10   could cut two ways.  I mean, if we use numbers, they
11   may relax and feel like nobody knows them, and that
12   may give you a better jury.  Mr. Benjamin?
13             MR. BENJAMIN:  I like names, Judge.
14             THE COURT:  You like names.
15             MS. BHALLA:  Yes, Your Honor.  I mean, from
16   our perspective, we definitely want names.  It's very
17   dehumanizing.  It makes the whole process very
18   sterile.  I think that in my experience, when I've
19   been in state court trials when we've done that, it
20   really seemed to clam people up rather than when you
21   can use names, people just get more relaxed, they get
22   more open.  I would really object to that, Your
23   Honor.
24             THE COURT:  I will tell you this, 14 years
25   ago, when I was starting out with juries, jurors
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    never seemed to be concerned about their safety.
2    But, boy, they've gotten more so over the years.  I
3    don't know what it is.  But jurors seem to me more
4    antsy about, when I try a drug conspiracy case or
5    some violent crime or something up in Albuquerque,
6    used to, jurors just come in and do their job.  But
7    now they want you to walk them to the car and all
8    sorts of stuff.  Have you given that side of it a
9    thought, about if you think you'll get a fairer trial
10   if they feel like they're sitting there listening to
11   all this evidence, and the defendants know their
12   name, that's going to scare them off?
13            MS. BHALLA:  I think it goes the opposite
14   way, Your Honor.  I think if you refer to them as
15   numbers, I think that that makes them concerned about
16   why their names aren't being used.
17            THE COURT:  Remember, they don't know a
18   whole lot different.  And we -- if Judge Brack is
19   down here using numbers all the time, they don't know
20   the difference a lot.
21            MS. BHALLA:  You know, Your Honor, I don't
22   know that I agree with that.  I think that they would
23   definitely make that link in their minds, especially
24   with the security in the courtroom.  I think that
25   we've got to try and minimize that aspect of it.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    I think using names is the best way to do that.  I
 2    just don't think -- I think that would be
 3    prejudicial, to be quite honest with the Court.
 4             MR. BENJAMIN:  Your Honor --
 5             THE COURT:  You know what, I need to hear
 6    from some others.  I'll come back to you,
 7    Mr. Benjamin.  You know, I think the AO is now
 8    encouraging everybody to use numbers.  So it's going
 9    to be hard to probably complain about it, either way
10    we go.
11             Mr. Cooper, you were I think up next, then
12    Mr. Lahann.
13             MR. COOPER:  Judge, there are a lot of
14    really good defense lawyers in this room.  And I love
15    picking juries.  I love talking to those jurors.  And
16    I know a lot of my colleagues here do, too.  And I
17    think we're going to make them feel comfortable when
18    we talk to them.  When I can stay, Hi, Ms. Martinez,
19    you know, the Judge talked to you about this and that
20    and the other thing.  And Mr. Smith, you said this
21    and that.  I think it's so much more personal if we
22    can address them by name.  And I would really object
23    to -- I think we pick a better jury if I can talk to
24    Mr. Martinez and Mrs. Smith.  So I think that picking
25    a jury using their names, and I think my colleagues
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    here are going to make everybody feel comfortable.

 2    That's my two cents.

 3              THE COURT:  Mr. Lahann?

 4              MR. LAHANN:  Ditto what everybody said so

 5    far.  But, Your Honor, my client has a right to a

 6    public trial.  He's being judged on something that

 7    will affect the rest of his life.  And I think he has

 8    a right to be treated with his name, and I think he

 9    has a right for all the other participants to be

10    treated with their full names.

11              THE COURT:  All right.  Mr. Benjamin?

12              MR. BENJAMIN:  Your Honor, I've tried two

13    cases in front of Judge Brack and used names both

14    times.  That's my experience.

15              THE COURT:  Okay.  Well, I haven't seen

16    Judge Brack try a case, so I'll have to rely on

17    y'all.

18              MR. COOPER:  So did I.

19              THE COURT:  And he used names?

20              MR. COOPER:  Yes, Your Honor.

21              THE COURT:  Let me give you a little bit

22    more information.  Over here on the row with

23    Mr. Baca, that seats 10, so that normally seats 10.

24    So if you're trying to get this in mind, that would

25    be 14, 15, through I guess 25, maybe it's 24.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    then, when we go over here where Mr. Maynard and Mr.
2    Herrera is, that normally seats 12.  So there is a
3    little bit of difference there.  So if you're putting
4    together jury charts or something, it would be 12
5    over here and 10 over there.  And we'll start with
6    14.
7              Ms. Bhalla?
8              MS. BHALLA:  After you get to this side of
9    the courtroom on your right, to number, let's just
10   say 30 or 31, are you going to start 32 back this
11   way?
12             THE COURT:  No.  What I'll do is right
13   behind Mr. Acee, that will be Juror No. 15.  It will
14   go down to -- it will be 25.  And then where Mr.
15   Herrera is sitting, assuming that the -- maybe
16   Ms. Wild can add this to the list, but they'll let me
17   put them in the well, I'll probably seat Juror No. 26
18   where Mr. Herrera is, and then it will go down to --
19   I guess, that would be 38, and then we'll come over
20   here where Ms. Rodriguez is seated.  And that will be
21   39 and go down.  And the reason for that, it's a
22   little bit of a problem getting people in through the
23   pews.  But I think it's better for our chart, if it
24   runs that way.  So I'll probably deal with the
25   inconvenience of getting them in and crawling all
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    over each other, but I think it makes a better chart

 2    for everybody when we're trying to remember names.

 3              All right.  Any other questions about how I

 4    pick juries, or how we're going to probably pick them

 5    for this trial?

 6              Ms. Wild, do you have anything to add

 7    before I start asking the counsel questions?

 8              THE CLERK:  Not at this time.

 9              THE COURT:  All right.  So given what I've

10    done, tried to explain to you, and probably you've

11    scouted out, Ms. Armijo, Mr. Castellano, how long do

12    you think your voir dire will take?  You've had a

13    number of trials with me so, both of you together and

14    separately, so you've probably got pretty good

15    experience with me.

16              MS. ARMIJO:  I think it will be less.  But

17    just to be safe, 45 minutes.

18              THE COURT:  How about you, Mr. Lowry, Ms.

19    Duncan?

20              MR. LOWRY:  We'll take an hour, Your Honor.

21    If you think that's too long, we'll assess it.

22              THE COURT:  Try to shoot for 55 minutes, no

23    more.  Let's try to keep it under an hour.

24              How about you, Ms. Fox-Young?

25              MS. FOX-YOUNG:  I think, you know,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    something on the order of 45 minutes, 30, 45 minutes.
 2             THE COURT:  Just remember, if everybody
 3    takes an hour here, we're not going to get it done
 4    that first day.
 5             MR. LOWRY:  It's hard to judge, Your Honor.
 6    Get the jury to open up, it goes relatively quickly.
 7             THE COURT:  I understand.  I understand.
 8             Ms. Jacks?  Mr. Jewkes?
 9             MR. JEWKES:  45 minutes.
10             THE COURT:  Mr. Maynard?  Ms. Bhalla?
11             MS. BHALLA:  Your Honor, I mean, I'm going
12    to try to get it done in 20 minutes.  I don't want to
13    constrain myself too much.  I don't think we'll be
14    going first.  So I think we, realistically, can do it
15    in 20, 25 minutes.
16             THE COURT:  All right.  Mr. Adams?  Ms.
17    Sirignano?
18             MR. ADAMS:  I really don't know, Your
19    Honor.  If the upper end mark is 55 minutes, we'll
20    sign up for 55 minutes.  I'm sure we'll be less than
21    that.
22             THE COURT:  Yeah, and I'm not telling you
23    that's the absolute cap.  I'll get in the flow and
24    see what happens, if you feel like something needs to
25    be done.  But just for planning purposes, let's try
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    to keep it under an hour.  I mean, I'd still like to
 2    get the jury picked on the first day.  I mean, I've
 3    always been able to do that, and I think we should be
 4    able to do it.  But with this many defendants, this
 5    much voir dire, so if we can kind of put a little
 6    pressure on ourselves, particularly on the defense
 7    side, to try to really cooperate on the defense side,
 8    and try to keep the voir dire down, I think we've got
 9    a fighting chance of getting it picked.  If not,
10    we're going to have to bring 200 people back the next
11    day.
12          And remember, we've got a statewide venire
13    here.  These people are going to be coming from all
14    over the state.  So that's going to be a real burden,
15    if we have to put up a bunch of people overnight.
16    It's just going to be expensive, and keep them here.
17    And so if we can work to try to put a little downward
18    pressure on the venire, that would be great.
19          I mentioned this earlier.  Let's everybody
20    make sure that when we get the defendants -- when we
21    get to the trial, that we make certain that the
22    defendants are at the table before we bring the jury
23    in, or bring the venire in, or anything like that.
24    So let's just really watch.  I'll put that burden on
25    the Government, put it on myself, put it on my staff,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    my law clerks, everybody.  Let's just make sure that
 2    we've got those defendants seated over at that table
 3    before we bring in the jury or the venire in.
 4              All right.  I think that I'm going to skip
 5    a few things.  Let's see, we've already got on our
 6    schedule the instructions.  One thing on the
 7    instructions -- I'm going to skip around a little bit
 8    and then I'm going to come back to witnesses here --
 9              MR. ADAMS:  Judge, may I ask one thing
10    about jurors before we move on?
11              THE COURT:  Yes.
12              MR. ADAMS:  We get the questionnaires in
13    advance.  Is there going to be a time where we are
14    whittling down people with the prosecution and
15    dealing with that before the voir dire, or how do you
16    anticipate that going?
17              THE COURT:  Ms. Wild, let me -- I can
18    either turn it over to you, or I can bumble through
19    it and see if you agree with me.  But I think that I
20    would like to see happen -- and maybe Ms. Wild is
21    thinking of something different.
22              THE CLERK:  We already have agreed on
23    dates.
24              THE COURT:  All right.  So you're aware of
25    that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1              THE CLERK:  January 15 is when they're
 2    supposed to submit their agreed and disputed for
 3    cause challenges.  And your ruling on the disputed
 4    challenges will be on January 22.
 5              THE COURT:  Okay.  So did you remember
 6    that, or does that answer your question?
 7              MR. ADAMS:  How about if I answer yes, sir?
 8              THE COURT:  Well, what I'm envisioning is
 9    between now and the 15th, y'all working with the
10    Government and then giving me a list of everybody you
11    agree on.  And let me suggest this:  And I may have
12    said this earlier, but I'll go ahead and repeat it
13    now that we're getting very close to this.  You know,
14    I'm not telling you to not fight for jurors that you
15    want.  But I would suggest that, at least the rule
16    going in to negotiations should be some generosity to
17    both sides.  You know, if you've got a juror that you
18    know the Government is going to get kicked off for
19    cause, why fight for it?  Because I might give you a
20    chance to fight for it, but they're going to end up
21    with one of the 60 in here, and you're going to be
22    wasting a lot of questions, a lot of time.  So, at
23    least going in into negotiations, try to be a little
24    bit generous.  Put your feet in the shoes of the
25    lawyers on the other side, because I think it's in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    everybody's interests to knock off jurors that are
2    going to get knocked off eventually for cause.  And
3    if y'all want to question me a little bit about how I
4    do for cause and some things like that, I'd be glad
5    to tell you as much as I can, so you can make
6    informed decisions.
7              And then, the ones in which you can't agree
8    on, I guess I'm supposed to give you an answer on the
9    22nd.  So the ones that are in dispute, I probably
10   will not quibble with you, so if y'all agree to knock
11   off, you know 50, 60 people, I'm probably just going
12   to knock them off, and then just deal with the ones
13   in which y'all can't agree on.
14             MR. ADAMS:  That's fine.  And Judge, I'm
15   sorry, I just did not remember that being in the
16   scheduling order.  So thank you for clarifying that.
17             THE COURT:  All right.  And I'll just go
18   ahead and say, if y'all agree on somebody getting
19   knocked off, that's probably fine.  Let's talk about
20   some broad categories of people.  Let's talk about
21   the scheduling problem people.  I do these different
22   in every trial, so I have no consistency here.  I'll
23   admit it right off the bat.  Because I'm really
24   taking my cues from the lawyers.  If the lawyers want
25   to knock off people for scheduling problems, and they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    both agree, I will go along with it.  If you don't

2    want to knock people off for scheduling problems,

3    I'll hang tough with you.  I'll be the bad guy and

4    tell them they've got to serve on the jury.  I do

5    that because sometimes people get particular profiles

6    on jurors they want.  We're doing cases off the

7    Indian Reservation, sometimes there are particular

8    profiles we're looking at, trying to get certain

9    jurors on there and stuff.  So I don't want to

10   interfere with your -- with what you're doing as far

11   as picking a fair and impartial jury.  But chances

12   are -- let's say -- and I'm not saying this is the

13   case -- let's say the Government wants to knock off

14   everybody that has a scheduling problem over eight

15   weeks, and the defendants won't knock off anybody

16   that's got scheduling problems.  You've got a

17   particular profile.  You're not going to go along

18   with that.  So the mother has got a two-year-old

19   child and day care problems and no working vehicle,

20   and the Government wants them -- and the Government

21   wants them knocked off and the defendants don't, I'll

22   probably hang tough with the defendants on that

23   thing.  But, you know, we may get that person on the

24   jury.  It's amazing how it's always that problem,

25   that Juror No. 7 up there is the one that begins to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    be a problem.  And in an eight-week trial, you know,
 2    think about it, you may not want that problem every
 3    day coming in here, and having to figure out if
 4    they've got day care issues, or something like that.
 5             Anything else you want to ask me on my
 6    philosophy on peremptories, so that, as you begin to
 7    make negotiations on the 15th, and try work to
 8    through the for causes?
 9             Ms. Wild, you probably know me pretty well.
10    Anything else you want to tell me about what I do on
11    for causes?
12             THE CLERK:  Not at this time.
13             THE COURT:  Okay.  So anything else on
14    that, Mr. Adams?  Do you understand how that's going
15    to work?
16             MR. ADAMS:  Yes, sir.
17             THE COURT:  All right.  And I'll just make
18    the call.  Mr. Blackburn.
19             MR. BLACKBURN:  Your Honor, not on that
20    issue.  I can't recall, do you have us, the lawyers,
21    introduce the clients, or do you?
22             THE COURT:  I will prompt you through, but
23    I will have you introduce your client.  I always
24    think that's better.  Don't you?
25             MR. BLACKBURN:  Yes.  I was just wondering,
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   now that we're going to have the shackles and stuff,
 2   that may impact that.  That's why I asked.
 3             THE COURT:  All right.  Well, that's
 4   something we'll have to think about.  But I think
 5   it's better if you introduce your client and you
 6   introduce him the way you want.
 7             Mr. Castellano.
 8             MR. CASTELLANO:  Your Honor, just thinking
 9   ahead to the voir dire and the security issues.  The
10   defense is at this table.  There will be a moment in
11   time when jurors on this side will be able to see
12   both sides of the table.  So I just put that out
13   there now, so we'll be thinking about security and
14   how we want to set that up.
15             THE COURT:  Okay.  Yep, we're going to have
16   to think about that.  So I'll ask Ms. Wild to add
17   that to her list, we're going to have jurors sitting
18   where Ms. Duncan, Mr. Lawrence, and Mr. Baca are
19   seated.  So sitting behind there, they might be able
20   to see behind there.
21             All right.  If there is nothing else on
22   jury selection or voir dire, the venire, for cause
23   challenges -- on instructions, when you file your
24   instructions and you do need to file your
25   instructions, you need to file your objections.  You
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    also need to send to my proposed text -- so y'all

 2    have gotten used to that when you send a proposed

 3    order -- file your jury instructions, so that's a

 4    matter of record on CM/ECF, for appeal purposes.  But

 5    also send your set in executable format to me at my

 6    proposed text.  Because I'll be working off your

 7    executable set of instructions to put my jury

 8    instructions together.

 9              You do not need to do the old thing of

10    sending one clean set and one with citations, and 16

11    copies to chambers, and all that sort of stuff.

12    Just -- all you need to do is file one set with your

13    citations.  And then you may want to file a separate

14    document of objections.  And whatever you file on

15    jury instructions needs to be sent to my proposed

16    text address.

17              All right.  Let's talk a little bit about

18    the case description.  Is there anything in the

19    scheduling order, Ms. Wild, about the case

20    description?

21              THE CLERK:  I don't believe so, Judge.

22              THE COURT:  All right.  So let me do this:

23    Unless anybody has an objection to this, let's do

24    this on the same -- Ms. Armijo, you had a scheduling

25    order out -- or Ms. Wild, do you have -- Ms. Wild, do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    you have the scheduling order out in front of you?
 2            THE CLERK:  Yeah, let me get it up in front
 3    of me.  Hold on a second.
 4            THE COURT:  I think Ms. Armijo said the
 5    12th was the day that you're filing jury
 6    instructions?  Are there objections to that after
 7    that, Ms. Armijo?
 8            MS. ARMIJO:  Yes, Your Honor, January 19.
 9    And also on the 12th, we have proposed voir dire,
10    disclosure of exhibits, and witness lists.  Of
11    course, the witness lists, the United States has done
12    one at least.
13            THE COURT:  Okay.
14            Let's talk about the case description.
15    Here's what I would propose is, if there is nothing
16    on the scheduling order about case description, why
17    don't the -- why don't we do this?  By January 8, by
18    the end of business on January 8, the Government
19    generate a case description.  I assume that this case
20    is of a nature that you don't want me just to be
21    reading the indictment.  If you want me to just read
22    the indictment, I can.  I haven't looked at the
23    indictment in a while.  So it might need to be marked
24    up some.  But it strikes me that this might be not
25    the time to just use the indictment as a case
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    description.
 2            So unless somebody has something different
 3    to say on this, I'll ask the Government to generate a
 4    first draft of the case description; send it over to
 5    the defendants by the end of business on the 8th.
 6    The defendants look at it on the 8th and 9th, and get
 7    back with the Government by the end of business on
 8    the 10th.  See how much you can agree on by that
 9    point.  If you cannot agree on a full case
10    description, at least tell me what you can agree on
11    and what you don't agree on.  It's not as helpful to
12    me if the defendants just send me another case
13    description.  It's better if you try to work it out
14    so that you agree on as much as possible, and send me
15    a marked out, struck, highlighted, whatever, showing
16    me where the disagreements are.
17            And let's have that filed -- both sides
18    file their competing drafts or disagreements, so I
19    know what the disagreements are by the end of
20    business on the 11th.  And I'll try to generate
21    something and send it back to you, and see if you
22    have any objections.
23            Anybody have any problem with that
24    procedure?  Ms. Armijo?
25            MS. ARMIJO:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1             THE COURT:  Any of the defendants?  Does

 2   that sound okay?  So we won't be using the

 3   indictment.  We'll be using a case description.

 4   Remember that all the case description is for --

 5   don't kill each other and yourselves over this.  The

 6   only thing it's used for is when the jury comes in

 7   the room, and I ask the question:  Do you know

 8   anything about this case, and I read to them the case

 9   description, it is meant to sort of trigger in their

10   mind, do they know anything about this case.

11             Now, remember in your questionnaires, you

12   have a lot of information on there, so they're going

13   to know a fair amount, I think, about this case a

14   little bit, generally, from what you've told them.

15   But I do think we need to do it again, because we

16   need to bring those people probably up to the bench,

17   and find out what they know, and whether what they

18   know keeps them from being a fair and impartial

19   juror.

20             MS. HARBOUR-VALDEZ:  Your Honor, for

21   clarification, this is just for trial 1 group;

22   correct?

23             THE COURT:  Yes.  Let's just do these for

24   the first trial.  And we'll -- are you envisioning

25   another pretrial conference for the second trial,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492

**BEAN
&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    Ms. Wild?
 2              THE CLERK:  I am.
 3              THE COURT:  So we'll do that.  All right.
 4    Anything on case description?
 5              All right.  Let's do proposed voir dire.
 6    Ms. Armijo, did you say there was a date in the
 7    scheduling order for proposed voir dire?
 8              MS. ARMIJO:  Yes, January 12.
 9              THE COURT:  All right.  And is that all it
10    says about proposed voir dire?
11              MS. ARMIJO:  And there is also objections
12    to that on January 19.
13              THE COURT:  All right.  So between the 12th
14    and the 19th, try to talk to each other about voir
15    dire.  See if you can work it out.  And if you can't
16    work it out, then file your objections, and then I'll
17    try to rule on them.  I'm fairly liberal to each
18    side.  I mean, there are limits.  But y'all probably
19    noticed I struck out some things on your special
20    questionnaires.  I didn't think we needed to get into
21    their religion.  I didn't think we need to know what
22    political party they were.  So there were some limits
23    on that.  But by and large, I'm fairly generous on
24    voir dire.  Take a look at it, talk to each other,
25    see if you can work it out.  If you can't, file your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    objections by the 19th, and then I'll try to rule on

2    it.

3           One thing I was going to mention on voir

4    dire, if y'all think that there are certain questions

5    that need to be asked -- although I can't imagine how

6    much more of this we could ask them, after we did

7    that questionnaire -- but if you think of something

8    that ought to come out of my mouth, that I ought to

9    ask the question rather than y'all, see if you can

10   agree on it, submit it to me, and tell me you want me

11   to ask that as part of mine.

12          Otherwise, I'll expect you -- sometimes

13   people draft the proposed voir dire as things that

14   they are going to ask the Court to ask.  I'll expect

15   you to ask most of that, unless it's something that

16   I've already told you I'm going to ask about.  So if

17   you decide that, as you get closer, there are certain

18   questions that you think would be better coming out

19   of my mouth and you prefer not to ask, talk with each

20   other and then submit those.

21          All right.  We know the jury list.

22          Courtroom technology.  Y'all have used it

23   here over the last month, so you know how the

24   courtroom works.  If you need something else, talk to

25   Ms. Wild about it, and we'll work with you to provide

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that technology.  I would encourage you that if

2    you're going to use technology, that you make a time

3    with Ms. Wild and Ms. Standridge to come over and

4    practice and make sure it interfaces.  We'll get our

5    IT people in the courtroom, and they can work with

6    you to make sure it works.  So do take advantage of

7    that.  We'll work with you to make the courtroom

8    available, our IT people available, to try to make

9    sure it interfaces well.

10           We talked about jury instructions.  As Mr.

11   Castellano mentioned, I generally have my courtroom

12   deputy place on the Elmo a copy of the jury

13   instructions that I will read so that the jury can

14   read along with me as I read them the jury

15   instructions.  Anybody have an objection to them

16   visually seeing the jury instruction as I am reading

17   them?  From the Government?  Ms. Armijo?  Mr.

18   Castellano?

19           MS. ARMIJO:  No objection.

20           THE COURT:  Any from the defendants?  Not

21   hearing any, we'll put those on the Elmo.

22           The same -- let's see, with jury

23   instructions, I generally send back one set of jury

24   instructions to the jury so they each have a set of

25   jury instructions that I've read.  And then only one

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    verdict form goes back.  So there is one verdict
 2    form, but each one has a set of jury instructions.
 3    Is that okay, Ms. Armijo?
 4              MS. ARMIJO:  Yes, Your Honor.
 5              THE COURT:  Any of the defendants have a
 6    problem with that?
 7              All right.  Let's talk about exhibits.
 8    Many of you are -- we'll do the cutoff at Ms.
 9    Sirignano's age.  So everybody that's below her in
10    high tech are not going to have a problem with this.
11    Everyone my age begins to maybe stumble around on
12    JERS.  Now, JERS is spelled J-E-R-S.  I'm not saying
13    it like I'm from Hobbs and I'm talking about jurors.
14    I meant JERS.  Now, for those of you who are not
15    familiar with the system here in the District of New
16    Mexico -- maybe Mr. Adams is, because I think we
17    borrowed the technology from South Carolina.  I think
18    they invented it in the federal court there, but we
19    were right there on their heels.
20              So, in the old days, you'd take all the
21    exhibits after the trial and take them to the jury
22    room, and you'd bundle them up, and give them a gun
23    and heroin all at the same time, and hope they came
24    out in a few hours with an appropriate verdict.  We
25    don't do that anymore.  I don't know about real
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   evidence, maybe we still do it, I don't know.  But we
 2   put all the exhibits on a disc, and it goes back.
 3   And they have a video screen.  You can come over and
 4   look at it.  We'll give you a tutorial, so everybody
 5   is comfortable with it.  But it does make the
 6   presentation of the evidence in the jury room better.
 7   So let's plan on using it.  I know we get stuck in
 8   our ways.  We need to drag ourself into 2018 and step
 9   it up.  So the burden falls mostly on the Government
10   since they have most of the exhibits.  But JERS
11   stands for Jury Evidence Recording System.  So just
12   like when you're watching -- I know I never do this,
13   but you're watching the NFL Network, and you've got
14   all the screens up there, and you just pull up the
15   games with the remote control.  That's basically what
16   you're doing in the jury room.  They can pick up the
17   audio.  They pick up all the documentary evidence.
18          Real evidence, I guess, it will have to
19   still go back there.  But let's work to get that
20   done.  Sometimes what happens is, despite my
21   admonition, people begin to bail out, and try to get
22   out of it as the trial goes on.  I'm trying to pull
23   the U.S. Attorney's Office into the 21st Century.  So
24   I'm going to put pressure on them to get it done.
25   Defendants, you'll need to do it too, work with the

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                             201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                                 1-800-669-9492
                                                         e-mail: info@litsupport.com



```
 1    Court.  If you want a tutorial, we'll give it to you.
 2    We'll take you back there and make you comfortable
 3    with it.  It's fine.
 4            If you think about it, one of the things it
 5    does, instead of Juror No. 11 over there looking
 6    through this binder, and this juror over here looking
 7    at this, they have to look at it together.  So I
 8    think it does have some benefit of pulling the jurors
 9    together, and they have to watch television together,
10    rather than just sitting in the corner and looking at
11    this exhibit and that exhibit, it pulls them
12    together.  So I think from Harvard MBA group
13    dynamics, it has some benefit of pulling jurors
14    together and making them begin to do some stuff
15    together at the beginning, and that's review
16    exhibits, and ultimately them voting on how they're
17    going to -- what verdict they're going to return.  So
18    let's work hard and we'll be glad to try to help you
19    do that.
20            You've gotten used to my numbering system.
21    So the Government gets the numbers.  Theirs is real
22    easy.  I think we've worked out a system unless Ms.
23    Wild tells me it's not a good system.  Let me ask
24    you, Ms. Wild, and then I'll ask the defendants:  Is
25    there any reason for purposes of the trial that you
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   can think of that the defendants need to separate
 2   their exhibits by name?  In other words, we've
 3   been -- in this hearing we've been saying Carlos
 4   Herrera Exhibit A, Mr. Perez Exhibit A.  We've been
 5   breaking out by name.  Is there any reason that we
 6   can't just run Defendants A through Z, and then if
 7   they're done with those letters, they go back and go
 8   AA, AB, AC.  And then if they run out of that, it's
 9   BA, BB, BC?  Is there any reason to break it out by
10   defendants, or should we do it just by individual
11   defendants, so their name is on it, and then run
12   separate letters for each defendant, or should we
13   just run one set of defendants exhibits?
14           THE CLERK:  I think for clarity of the
15   record that, because in some instances I'm imagining
16   only one defendant could be moving something.  But it
17   would be useful to utilize the system we've been
18   using for this hearing, unless the defendants
19   collectively have a different view.  But that's my
20   gut reaction to that.
21           THE COURT:  Well, it's been working here in
22   the courtroom for the purposes of the evidentiary.
23   Anybody have any problem with just continuing that?
24   Ms. Jacks?
25           MS. JACKS:  I just have a suggestion how
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   this has worked in other multidefendant cases, where
 2   each defendant starts with what, like say Sanchez
 3   would start with 1000.  Baca would start with 2000
 4   another defendant would start with 3000.  So they're
 5   numbered, but each defendant has like a sequence of
 6   numbers.  I prefer numbers over letters because it's
 7   easier for me to keep track.
 8            THE COURT:  Well, I'll probably do letters.
 9   I need to -- in certain things I probably just need
10   to stay steady rather than have a bunch of numbers
11   floating around.  So I'll probably stay with letters.
12   All right.  Anything else on that?
13            All right.  Ms. Wild, I'm beginning to run
14   out of general stuff.  I'm about to switch back to
15   exhibits and witnesses and discovery and evidentiary
16   issues and motions in limine and Daubert, and
17   anything like that.  Can you think of anything else
18   from a general standpoint we need to talk about to
19   finish the pretrial conference?
20            THE CLERK:  Did you cover the mechanics of
21   the submission of the jury instructions, and how that
22   needs to be done in terms of ensuring that
23   anything -- everything needs to be filed, needs to be
24   provided to us in an executable format at your
25   proposed text email address.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                 THE COURT:  I think we covered that.
 2                 THE CLERK:  One instruction per page.
 3                 THE COURT:  Didn't cover that.
 4                 THE CLERK:  Don't need a clean set, just a
 5      dirty.
 6                 THE COURT:  Covered that.
 7                 THE CLERK:  Okay.  That's all I have.
 8                 THE COURT:  All right.  Anything else we
 9      need to cover about the trial?  Many of you have had
10      trials with me, others haven't.  Anything you want to
11      ask me, this would probably be the time to do it as
12      to how I conduct a trial, or what I allow, what I
13      don't allow.  Don't feel shy about asking.  Anybody
14      want to know how I do things or what I allow?
15                 All right.
16                 MS. ARMIJO:  Your Honor --
17                 THE COURT:  Ms. Armijo?
18                 MS. ARMIJO:  When we approach the bench,
19      there is obviously going to be -- my math skills are
20      not very good -- 13 attorneys.  Are you going to have
21      any rules about if we're all going to go up there?
22      Are you going to allow just one attorney per team, so
23      to speak?  Just something to think about so that the
24      first time it happens, we're not all rushing up there
25      and creating chaos.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Yeah.  Well, I'm not going to
 2     restrict the attorneys that come up.  If y'all want
 3     to self-select, for example, who comes up, that's
 4     y'all's business.  But I probably won't restrict the
 5     attorneys from coming up.  If, during the trial,
 6     y'all want to have one, particularly during the voir
 7     dire, if you want to just have one coming up, and
 8     dealing with stuff.  But I probably am not going to
 9     limit you.  It will be harder.
10              Remember when you come up, if you're the
11     speaker, you need to speak into this.  Because
12     Ms. Bean is going to put on earphones, and I'm going
13     to fog the machine.  So you'll need to be the one
14     that's speaking here.  So if you're lawyer number 13
15     out there, you know, you may not get -- you're going
16     to have to come in here and speak.
17              You know, I will probably have to put
18     limitations on tag-teaming in examinations with this
19     many lawyers.  So no tag-teaming.  If you stand up
20     and object, I'm probably going to be expecting Mr.
21     Adams to do the examination, not Ms. Sirignano.  So
22     pick your champion on each witness and stick with it,
23     and don't switch.  You're not going to get to have
24     Mr. Adams cross-examine a while and then Ms.
25     Sirignano for a while.  We're not doing it that way.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    So pick your lawyer for each witness, and I'll

2    probably not allow tag-teaming for each witness.

3    You're welcome to switch around, have one lawyer on

4    one witness and another lawyer on another witness,

5    but not two lawyers on one witness.

6            Anything else, Ms. Wild?

7            THE CLERK:  And you explored if the defense

8    would be giving their openings at the beginning of

9    the case.

10           THE COURT:  For the time being, we're

11   planning on their doing their openings at the

12   beginnings, and we have the times on it.

13           THE CLERK:  Thank you.

14           THE COURT:  If the defense would send me a

15   letter telling me in what order they're going to do

16   it, that way, at least I can call on you.  If you

17   have preference as to how you want to -- if you want

18   to do the same order throughout trial, just let me

19   know; that way, I'll call on you and do it.  If you

20   want to just play it by ear during the trial, at

21   least for openings, I think you can probably plan

22   ahead.  So send me a letter so I've got it up here,

23   and I can call on you, and we look like we're

24   organized and know what we're doing.  I'll call on

25   you in that order.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1          If you want to do something throughout
 2   trial that I call on a particular order for a
 3   cross-examination in the Government's case, and how
 4   you're going to present your case in the defendants'
 5   case-in-chief.  So think about that, and just give me
 6   direction.  I don't have any particular views on
 7   that.  But y'all may.  And we'll try to look like we
 8   had a pretrial conference and got together and
 9   discussed those things.
10          Anything else, Ms. Wild?
11          THE CLERK:  Not at this time.
12          THE COURT:  All right.  Let's then go back
13   to -- unless anybody has anything on this, let's go
14   back to the motion list, which I think brings up sort
15   of getting to some of the core issues that we have
16   on -- give me just a second to get a little organized
17   here.
18          All right.  Ms. Armijo, Ms. Wild, if you'll
19   remind me of what the -- what it says on the
20   scheduling order about witnesses.  What does it say
21   on that?
22          MS. ARMIJO:  Well, Your Honor, it says
23   January 12, 2018, witness list.  But I believe that
24   when we were at one of our previous hearings, you had
25   ordered the Government to be overinclusive, and to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   file a witness list, which we've done.
 2           THE COURT:  Okay.  Well, let me ask the
 3   Government this before I start imposing things:  On
 4   your January 12th list that you're going to file by
 5   January 12th, what is it that you're thinking of
 6   filing, you're wanting to file?  And let me see if I
 7   can work with that before I start telling the
 8   Government what to file.  What's your thinking about
 9   what you're going to file on the 12th?
10           MS. ARMIJO:  You mean as far as witness
11   list, or the --
12           THE COURT:  Yes.
13           MS. ARMIJO:  Well, we've already filed one.
14   We probably would file another one and try and make
15   it a little bit more tailored to witnesses that we
16   would be calling.  It still may be a little bit --
17   have people that we may not, but just in an abundance
18   of caution, so that we're not caught short, if we
19   have to call somebody, have some people on there.
20   But it would be shorter, I would imagine.
21           THE COURT:  Let me ask some general
22   questions, see if we can maybe hammer something out
23   that's useful to everybody, and still allows the
24   Government to do what it needs to do.  Thinking of
25   your case-in-chief, how much witnesses -- let me ask
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    this question -- it goes back to how long this trial
 2    is going to last.  How long do you think it's going
 3    to take the Government to put on its case?  Of the
 4    six to eight weeks that we're talking about, how much
 5    of that time do you think is going to be the
 6    Government putting on its case?
 7              MS. ARMIJO:  If I could just have a moment,
 8    Your Honor.
 9              THE COURT:  You bet.
10              MS. ARMIJO:  Four weeks.
11              THE COURT:  Now, thinking about your
12    case-in-chief, how many witnesses -- not naming the
13    witnesses -- but how many witnesses do you think
14    you're going to be putting on in that four weeks?  Do
15    you think you're looking at 20, 30?  What do you
16    think that four weeks is going to look like?
17              MS. ARMIJO:  Approximately 30.
18              THE COURT:  Do you think that 30 is a
19    conservative number?  Or do you think that number --
20    by that I mean does that leave you a little bit of
21    cushion, or do you think that's a number that is one
22    that, if we worked with 30, it's going to get you
23    into trouble?
24              MS. ARMIJO:  As long as -- I think it's a
25    good number.  I think it gives us a little bit of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1  wiggle room.  And depending on cross-examination and

2  defenses that we see, things like that -- I mean, we

3  may have to add to it.  But that's probably a good

4  number.

5           THE COURT:  Okay.

6           MS. ARMIJO:  Certainly, if as we start to

7  really get into things, if it's more, we'd let the

8  parties know.  But I think that's a fair estimate.

9           THE COURT:  Okay.  Now, don't anybody panic

10  here, but here's what I'm going to propose, and then

11  we'll see if there is something here to try to work

12  with to address the defendants' needs and the

13  Government's needs.  What if I required, by January

14  12, a witness list that it was of this structure;

15  that on the -- there will be at the top of the

16  witness list, there will be a will call list.  It

17  will not exceed 35 names.  Those will be the people

18  that, in the Government's best estimation, good

19  faith, they think they will be calling and -- well,

20  just will be calling.  And then everybody else will

21  be at the bottom in a may call list.  And then

22  another category -- although I want to talk about

23  it -- is rebuttal witnesses at the bottom.  Now,

24  while everybody is beginning to absorb this sort of

25  idea, by rebuttal witnesses I take a fairly narrow

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1   view of rebuttal witnesses, in the sense that if --
2   if the testimony can be anticipated, I don't think
3   that they're really rebuttal witnesses.  So we know a
4   lot about what the defendants are going to do and
5   say.  We've watched some of it.  So if it's something
6   that we think they're going to do, we've seen them
7   do, or there is any possibility they can do, I think
8   they probably need to be above the rebuttal line, not
9   below the rebuttal line.  So the rebuttal line might
10  be a zero for you, because those are really the kind
11  of witnesses that you can't anticipate.  You just
12  didn't know the defendants were going to do anything
13  like that.  You can walk up here and tell me at the
14  bench, Judge, I didn't have any idea they were going
15  to go that direction.  So your rebuttal line may be
16  zero.  But if you gave them a will call that's 35 or
17  under, and then you had a may call that, at this
18  point, with five defendants, you could cut down as
19  much as you can, if you know people are not going to
20  be called, if you could knock them off the list, so
21  they're not assigning those to various people, I
22  would think that's probably how they're going to do
23  this.  They're going to sit down and probably divide
24  up the will calls among some lead lawyers.  And then
25  the will call, maybe more junior lawyers are going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    get some will calls.  But if you can try to reduce

2    the number of people on that list, and so that

3    reduces the amount of work they've got to do, could

4    you live with that, as far as the defendants' request

5    for an updated witness list?

6            MS. ARMIJO:  We could certainly try, Your

7    Honor, to meet that.  And if we're having issues,

8    then we'd let the parties know.  But we could

9    certainly try.

10           THE COURT:  Okay.  Ms. Sirignano, I think

11   you've been taking the lead on this.  Why don't I

12   hear from you.  If I were to order that as to the

13   witness list that you're going to see on the 12th,

14   does that get you pretty close to where you need to

15   be to get ready for this trial?

16           MS. SIRIGNANO:  Judge, I filed Document

17   1526, that was the opposed motion in limine.

18           THE COURT:  That's the one in front of me.

19           MS. SIRIGNANO:  Just for the record, Judge.

20           Quite honestly, Judge, you know, if I had

21   my druthers, I would request that we got this updated

22   witness list sooner than later, only because I think

23   all of us in good faith filed our witness lists,

24   which were realistic in nature.  And I know the

25   Government's position was that you asked them to be

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492
                                                                                  1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                    e-mail: info@litsupport.com

```
 1    overinclusive.  And that's something that's been
 2    repeated a couple of times here.  And I understand
 3    that.  But if you do the math, Judge, a six-week
 4    trial, that's 240 hours total time.  And they have
 5    listed 274 potential witnesses.  And so I just want
 6    everybody to realize that all the defense teams are
 7    spending incredible amounts of CJA funds trying to
 8    figure out who these 274 people are.  So it's
 9    unfortunate that we have to keep plowing through all
10    of the investigation, the defense investigation, the
11    costs, and then wait until January 12.
12             I do like your proposal of will call
13    witnesses, may call, and then rebuttal, I agree with
14    you could be zero, or maybe one or so.  But my
15    request would be to perhaps amend the scheduling
16    order so we can do what we need to do for trial, and
17    not waste our resources going through all of these
18    proposed names, and really focus on the ones that
19    we're going to be dealing with at trial.
20             Thank you, Judge.
21             THE COURT:  Thank you, Ms. Sirignano.
22             Any other defendants have any thoughts on
23    the proposal I'm putting out there to address this
24    updated witness list?  Mr. Adams?
25             MR. ADAMS:  Sorry to double-team.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  You're already tag-teaming.
 2            MR. ADAMS:  I think that only applied to
 3    trial is the way I heard that.  Judge, the only -- I
 4    love the idea of narrowing it down.  And obviously, I
 5    agree with Ms. Sirignano, if they have a pretty good
 6    handle on who their people are, I would hope they
 7    wouldn't wait till January 12 to provide it, and they
 8    could go ahead and do that in good faith, so we can
 9    push to be ready.  Earlier, we had talked about
10    allowing them to re-call people due to the
11    narratives, and they're wanting to have things be
12    more seamless.  If they could just asterisk those
13    people who they intend to call more than once, to the
14    best of their knowledge, that would certainly help us
15    be on the same page with them as we move forward.
16            THE COURT:  All right.  Any other
17    defendants that have any thoughts on this updated
18    witness list.  My proposal okay?
19            All right.  Let me ask you, Ms. Armijo, do
20    you have -- I forgot what the 12th is.  Let's see, is
21    that a Wednesday?
22            MS. ARMIJO:  I believe that's a Friday.
23            THE COURT:  How would you feel about
24    backing up a little bit the witness list, get it out
25    there a little earlier?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. ARMIJO:  I think it's difficult.
 2    Because next week, of course, is the holiday.  I know
 3    that there is a few of us at this table that have use
 4    or lose that we're already going to be missing out.
 5    The following week, we are talking about hearings,
 6    scheduling the week of January 8.  We don't know what
 7    that looks at.  It leaves very little time for us to
 8    do it.  And let's remember why we had that first
 9    list.  It was because we were getting into Brady,
10    Giglio, and the defense was hammering down:  We need
11    to know who they're calling.  We want this, that, and
12    the other.  So they've already had the luxury of one
13    list, which was purposely overinclusive.
14            This scheduling order was filed July 7 of
15    2017.  So it's not really fair for the defense to now
16    cry, and try and go back on it.  This scheduling
17    order applies to both parties.  We're willing to do
18    what the Court asked, instead of just narrowing it
19    down to 100 people, to do the dividing and everything
20    else.  But I don't think at this point, with all of
21    the discovery that we still have to get out and that
22    we're working on, for us to go back just for
23    convenience of the defense.  This was agreed upon,
24    and we would like to stick with January 12.
25            THE COURT:  Do you have any problem with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

198

```
 1    the asterisk -- putting the asterisk next to the
 2    witnesses that you think at this time you're going to
 3    be calling, and maybe several times in your trial?
 4              MS. ARMIJO:  No, we have no problem with
 5    that.
 6              THE COURT:  How many asterisks does Mr.
 7    Acee get?
 8              MS. ARMIJO:  He'll be a five asterisk
 9    person.
10              THE COURT:  All right.  Anything else you
11    want to say on this updated witness list, Ms. Armijo?
12              MS. ARMIJO:  No, Your Honor.
13              THE COURT:  All right.  Ms. Sirignano.
14              MS. SIRIGNANO:  Judge, I'm trying to
15    respond to that statement that we're trying to change
16    everything at the last minute after the scheduling
17    order has been in place.  Quite frankly, if we had
18    gotten useful witness lists the first time around, we
19    wouldn't be asking for something that's actually
20    workable.  What we don't have is workable.  Based on
21    information and belief, there is a deceased person on
22    the Government's witness list.
23              THE COURT:  It's New Mexico.
24              MS. SIRIGNANO:  Hey.  And I understand
25    they've got use or lose.  I was a Government employee
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    for 15 years.  My client is looking at a lot of time.
2    And they charged this case.  I understand them being
3    overinclusive.  But it's kind of abusive, 247
4    potential witnesses.  I'm not asking for the name of
5    every single person that they're going to call
6    tomorrow.  We're all going to be here after the
7    holidays.  And I think, you know, 35 -- will call 35
8    names, they could probably skim that off of their 274
9    person witness list, and send it out in an email
10   before the 12th, and if they want to finalize
11   something later.
12            But I just think that the amount of money
13   that's being wasted on finding people that aren't on
14   police reports, that have nothing to do with this
15   Molina or this alleged Marcantel thing, is just an
16   incredible exercise in futility for all of us.  And,
17   frankly, I'd like to get it sooner than later, so we
18   can focus on something else, Judge.  And it's not
19   that I'm trying to intentionally, you know, move the
20   scheduling order.  That's fine.  But I don't think
21   that we're asking for a lot; 35 names at the will
22   call, and this way we know who they're definitely
23   going to call, and we can move forward and address
24   something else.
25            Thank you, Judge.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  All right.  Thank you, Ms.

2     Sirignano.

3          Anything else, Ms. Armijo, on the updated

4     witness list?

5          MS. ARMIJO:  Well, it's not something that

6     we can just easily put together.  It's something that

7     all the parties need to be together.  And even though

8     I said that we'd be taking off, I'm sure we're all

9     going to be working, but in different parts -- in

10    different states, in different cities.  So it's not

11    something that the trial team can do necessarily the

12    day after Christmas.  So we would simply request,

13    again, that we follow the scheduling order.

14          And again, I can't emphasize enough that we

15    were told to be overinclusive.  And we did go through

16    the Molina discovery, the Santistevan.  The counts

17    that are going to trial is where we got names from

18    that list.  So it's not like we were pulling from a

19    lot of other things.  And it's not worthless, because

20    as the Court knows, there is enterprise witnesses and

21    things like that.  So it's not something that is

22    easily done.

23          THE COURT:   All right.  Well, I'm going to

24    order that the updated witness list -- this is more

25    directed to the Government, but it applies to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    everybody -- will have, for the Government, a maximum
2    of 35 names as the will call.  And I encourage the
3    Government, if they don't think they have 35, don't
4    feel like you have to fill that up, so, if you don't
5    need it, if it's closer to 30, try to make it as
6    realistic as possible.  Because the more that the
7    defendants have to prepare for, the more difficult it
8    is for them.  And it is more costly.
9               On the may call, then those, again, I hope
10   that the Government will try to eliminate names at
11   this point.  I'll leave the January 12 deadline in it
12   to try to make sure that we don't rush this, and
13   we're looking at as realistic a list as possible.
14   And I'm hoping and anticipating that it will be much
15   less than 210 witnesses.  It will be something way
16   reduced on both will call and the may call side.  And
17   then there will be an asterisk next to the names of
18   the witnesses on the will call that the Government
19   anticipates may be called multiple times.  But I'll
20   leave the schedule in place.
21               All right.  Let me go back to you, Ms.
22   Sirignano.  You had another request, and a couple
23   more requests in this motion, assessment of all
24   Government witnesses.  What are you looking for
25   there?  Is there something else you're wanting here,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    or are we -- I know it may not have worked out just

 2    the way you wanted it.  But have I handled everything

 3    that's in 1526, or is there something else that you

 4    need?

 5              MS. SIRIGNANO:  Judge, that was just

 6    included in there as argument because of the 274

 7    witnesses, including the dead guy that they were --

 8    that the witnesses were going to be admissible and

 9    they were going to be relevant to trial based the

10    rules of evidence.  I can -- we can wait to get the

11    updated witness list and make any argument after the

12    fact.  Because right now, it doesn't make sense to do

13    that.

14              THE COURT:  You also have a title in

15    discussion in the brief, or in the motion about voir

16    dire of all Government expert witnesses.  Is there

17    anything else on that line that you need or want

18    today, or have we covered it all with the Court's

19    ruling?

20              MS. SIRIGNANO:  I think we covered it all

21    already, Your Honor.  Thank you.

22              THE COURT:  All right.  So I will grant in

23    part and deny in part 1526 of the defendant's motion

24    on the updated list.

25              Let me drop down to Anthony Ray Baca's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   motion 1537.  Let me just see if we can clean that up
 2   a little bit.  This is the one where he's asking that
 3   the Government attorneys or witnesses not refer to
 4   the alleged victims as victims.  Let me sort of give
 5   my thoughts on this.  And I've done similar things in
 6   the past, if not specifically.  And you may be able
 7   to find an opinion I've written on this subject.
 8   Generally, I consider the word "victim" to be
 9   argumentative.  So I would prohibit that in the
10   opening statement or the Government using that word
11   in questions, and would ask the Government's lawyers
12   not to -- or to counsel and direct their witnesses
13   not to use that word.  I think it's better if you
14   just use names.  So if the alleged victims that we're
15   talking about are going to be people like Marcantel,
16   and people like that, that we just use names.  Tell
17   yourself to use names in the -- in your openings, use
18   names in your questioning, use names in your witness'
19   responses.
20           At closing, I do consider it proper for you
21   to characterize the evidence and call them victims.
22   And you can argue that they were victims, and use
23   that word.
24           Mr. Lowry, it's your motion.  Is where I'm
25   drawing the line acceptable to you or are there any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    other -- Ms. Duncan?

2            MS. DUNCAN:  Yes, Your Honor.  That is

3    fair.

4            THE COURT:  Any other defendants have

5    anything they want to say on that before I hear from

6    the Government?

7            All right.  Can the Government live with

8    that line, Ms. Armijo?

9            MS. ARMIJO:  Yes, Your Honor.

10           THE COURT:  All right.  So that will take

11   care of 1537.

12           All right.  Then let's pull out motion

13   1530.  I believe that's Mr. Sanchez' motion in limine

14   on bad acts.  What I would propose to do on these is

15   start plowing through using the letter that Ms.

16   Armijo sent to Mr. Jewkes and Ms. Jacks.  Just take

17   these one at a time.  I guess I'll be looking, first

18   of all, from the Government to sort of tell me what

19   they intended to -- what they intend to use the

20   information for, if they are using the information

21   for establishing the enterprise, or that this was a

22   crime or bad act that was committed in furtherance of

23   the enterprise.  If they're not going to try to do

24   with that evidence, then if it's just a bad act or a

25   crime, and they're using it for some other purpose

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that is permissible under 404(b), they identify what
 2    that purpose is.
 3             Then I'll look to the defendant,
 4    Mr. Jewkes, Ms. Jacks, to tell me what you think is
 5    wrong with the Government's arguments of why it
 6    should be admitted into evidence.  And then I guess
 7    I'll make rulings on these one at a time.
 8             Let me give Ms. Bean a break, and I'll hear
 9    from you right after the break.  Let's get -- let's
10    everybody take a break for about 15 minutes, and then
11    we'll come back and get started going through these
12    one at a time.
13             MR. BENJAMIN:  Could I confirm, we are here
14    tomorrow; correct?
15             THE COURT:  As far as I know.  If you want
16    to talk to Ms. Wild, go ahead.  But as far as I know,
17    I'm working through 5:30 tomorrow, and I'm driving
18    back tomorrow, and I have criminal stuff in
19    Albuquerque on Thursday morning.  That's a schedule I
20    am operating under.
21             All right.  We'll see you after the break.
22             MR. JEWKES:  After the break, I'll ask the
23    Court a question.
24             (The Court stood in recess.)
25             THE COURT:  All right.  Let's go back on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    the record.  Everybody got an attorney?  Look around,

2    make sure everybody has got an attorney.

3              All right.  Mr. Jewkes, you had some

4    comments you wanted to make on your motion.

5              MR. CASTELLANO:  Your Honor, before

6    Mr. Jewkes begins, I just have a scheduling question.

7    Does the Court know when it's going to hear Document

8    1325?  That is Mr. Baca's motion to suppress coerced

9    statements anticipated testimony.  We've had, since

10   yesterday, Agent Brusuelas from the FBI come from

11   Albuquerque.

12             THE COURT:  I'm sorry.

13             MR. CASTELLANO:  That's okay.  I didn't let

14   the Court know earlier.

15             THE COURT:  Which motion is that?

16             MR. CASTELLANO:  It's Document 1325.

17             THE CLERK:  You don't have it, Judge,

18   because it's not something we didn't know for sure

19   would be taken up.  And it's something I just spoke

20   with Ms. Armijo about.

21             THE COURT:  Well, what do you think?  I

22   take it that you would like to get that witness on;

23   is that what you're raising it for, Mr. Castellano?

24             MR. CASTELLANO:  We would, Your Honor, so

25   she can get back to Albuquerque.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Does that mess anything up from
 2   your standpoint, Ms. Wild?
 3              THE CLERK:  No, other than it's a little
 4   bit different than the agreement and the discussion I
 5   just had with Ms. Armijo in coordinating with counsel
 6   for the defense.  But if everyone is on board, I
 7   don't see it as a problem.
 8              THE COURT:  Does anybody from the defense
 9   side have a problem with getting the Government's
10   witness testimony taken and getting out of here?
11              MR. CASTELLANO:  Your Honor, if it's a
12   problem -- I understand the Court doesn't have it
13   scheduled for today.  We could probably put her on
14   tomorrow maybe first thing, and get her back.  I'm
15   not trying to mess with the schedule too much.
16              THE COURT:  So I don't have it written
17   down, this is Mr. Baca's motion to suppress?
18              MR. CASTELLANO:  It is, Your Honor.
19              THE COURT:  How about you, Ms. Duncan?  Do
20   you have any problem with taking this witness up now?
21              MS. DUNCAN:  Your Honor, we'd ask that we
22   take her up first thing in the morning and not now.
23   I'm not ready to do her this afternoon.  But I could
24   be ready first thing in the morning.
25              MR. CASTELLANO:  That's fine with us, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Honor.  I just wanted to make sure it was on the

2    Court's schedule.

3              THE COURT:  Okay.  It wasn't.  But sounds

4    like, if nobody has any objection, we'll take the

5    witness up first thing in the morning then.

6              MR. CASTELLANO:  With your permission, may

7    I release her for the day, Your Honor?

8              THE COURT:  Any objection, Ms. Duncan?

9              MS. DUNCAN:  No, Your Honor.

10             THE COURT:  Anybody else?  All right.

11   She's released for the day then.

12             MR. CASTELLANO:  I'll be right back.

13             THE COURT:  Mr. Jewkes, you had some

14   comments you wanted to make on your motion.

15             MR. JEWKES:  Yes, sir.  But I do have a

16   housekeeping matter to begin with.  In the morning I

17   have two sentencing hearings in front of Judge

18   Gonzales upstairs.  So if I can duck out of here

19   about 9:45, take care of business, I will be back,

20   and of course, Ms. Jacks will be here --

21             THE COURT:  All right.

22             MR. JEWKES:  -- to take care of Mr.

23   Sanchez.

24             THE COURT:  That's fine.

25             MR. JEWKES:  Your Honor, may it please the

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                        1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                            e-mail: info@litsupport.com

1  Court.  We filed Document 1530.  We complain about

2  the Government's notice of their intended use of

3  alleged bad acts, which is 404(b) evidence.  And,

4  Your Honor, Appendix A, which was provided to us,

5  lists 27 acts.  And by the way, that's attached to

6  the motions.  That began in 1992, with Mr. Sanchez'

7  conviction in Valencia County for murder, and then

8  goes on to culminate in the March 7, 2014 incident

9  involving Javier Molina, the subject of Counts 6 and

10 7 of the case before the Court.  We're talking about

11 a span of 22 years.

12        Your Honor, as we pointed out in the

13 motion, the guiding rule here, of course, is rule

14 404(b) of the Federal Rules of Evidence.  It has to

15 do with prohibited use.  Evidence of a crime or a

16 wrong or other act that's not admissible to prove the

17 person's character, in order to show that on a

18 particular occasion the person acted in accordance

19 with that character.

20        Your Honor, the Court brought this up, oh,

21 I don't know, a couple hours ago, that basically the

22 problem is, the Government, in order to meet their

23 burden, must establish a link between the bad act,

24 and link it to the enterprise.  And to do that, what

25 they're going to have to show is that it's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    relevant -- the bad act, that is -- to establish any

2    one of those elements that we find in 404(b), which

3    can be intent and knowledge, motive, preparation,

4    plan, or absence of mistake.  And at the same time,

5    has to show a logical connection between the alleged

6    bad act and the trial before the Court.

7            One last thing, Your Honor.  The Government

8    bears the burden of proving just how the proffered

9    act is relevant to an issue in the case before the

10   Court.  And, as I said, they noticed us with 27 acts.

11   The first act being November 22, 1992, Daniel Sanchez

12   committed murder in the first degree.  We would argue

13   to the Court, Your Honor, that they have not

14   established -- they've not notified us as to what is

15   the nexus between this and the alleged enterprise.

16   In other words, how is it relevant to this case?

17           Should we take things one by one, to let

18   the Government respond, Your Honor, or how do you

19   want to do it?

20           THE COURT:  Yeah, I think that probably

21   what I'd like to do is have the Government lead off,

22   since they are the proponent of the evidence, and

23   see -- let me ask them some questions about it.  And

24   then I'll hear from you, and you can tell me more

25   that I don't know about what the bad act is.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    then if you have some questions of the Government
 2    that you'd like to ask through me, I'll be interested
 3    in those.
 4              MR. JEWKES:  Very well, Your Honor.
 5              THE COURT:  Thank you, Mr. Jewkes.
 6              All right.  So I guess the two questions I
 7    will probably be asking -- I mentioned these a little
 8    bit earlier -- on each one of these, Mr. Castellano,
 9    and you can tell me anything about them you want --
10    some of these I can probably figure out what they
11    are; others I may not.  So I'm not trying to restrict
12    you in any way.  But the two questions I'll probably
13    be looking at is this what you think of as 404(b)
14    evidence?  And we're answering that in probably two
15    ways.  Tell me, is this what I would call enterprise
16    res gestae, furtherance of the enterprise, or is it a
17    true bad act or crime that you're using to show one
18    of the 404(b) purposes?  So on each one of these I
19    have those two questions.  And then, if it is 404(b)
20    evidence, what is the proper purpose that the
21    Government thinks it's invoking with this evidence.
22              MR. CASTELLANO:  And I looked over each of
23    these last night.  And I may be able to answer some
24    of the Court's questions, and I may not be able to
25    answer others.  Each of these allegations is
```



SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                         (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   supported by documentation.  And so, over the night
 2   last night, I wasn't able to pull the documents which
 3   substantiated each of these allegations.  My short
 4   answer is I think none of this is 404(b).
 5              THE COURT:  So your position is you're
 6   either going to tie it to enterprise, furtherance of
 7   the enterprise.  I can't think anything else what it
 8   would be.  Maybe res gestae.  But it's going to be
 9   enterprise, furtherance of the enterprise, or it's
10   not coming in for any exception under 404(b); is that
11   fair?
12              MR. CASTELLANO:  It is fair, Your Honor.
13   And I didn't get a chance to do this with each of the
14   letters, but I did with Mr. Sanchez' over the break,
15   if you look in the right hand column, I have OA 11,
16   12, and 13, and numbers going down the page.  Those
17   are overt acts.  Each of those acts is actually
18   charged in the RICO indictment, which is 16-CR-1613.
19              THE COURT:  So on these is particular acts,
20   these are actually alleged in the indictment, if I go
21   to those counts?
22              MR. CASTELLANO:  That's correct.  In
23   16-1613, which is the RICO indictment.  With the
24   exception of the 1992 charge --
25              THE COURT:  Are you able to make this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    portion just bigger on your screen?  Thank you.
 2             MR. CASTELLANO:  So, with the exception of
 3    the 1992 charge, every one of these is an
 4    allegation -- it's an Overt Act in the RICO,
 5    conspiracy charged in a separate case.
 6             THE COURT:  If you were to turn the page,
 7    would it be the same way?
 8             MR. CASTELLANO:  Yes, sir.  I can display
 9    that for the Court.  Like I said, I was only able to
10    do this one over the break.
11             THE COURT:  What are the letters in front?
12             MR. CASTELLANO:  The OA stands for overt
13    acts.
14             THE COURT:  Oh.  Did you have those on the
15    front page?
16             MR. CASTELLANO:  I did, Your Honor.
17             THE COURT:  Okay.  I thought those were
18    just numbers.  Okay.
19             Would you push it up a little bit?  All
20    right.  If you want to go to the next page.
21             MR. CASTELLANO:  On this page I struck one,
22    which was the one that mentions the date of the
23    February 24, 2012.
24             THE COURT:  So you will not be seeking to
25    introduce that bad act?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1          MR. CASTELLANO:  No, Your Honor.  If I
 2    remember correctly, I think when we superseded, we
 3    may have removed that act, now that I went back and
 4    double checked.
 5          THE COURT:  All right.  Let me ask you
 6    this:  You can tell me anything you want on these,
 7    but when you were charging the overt acts in the
 8    indictment, what was your philosophy, thinking, why
 9    did you use those to charge in the indictment?
10          MR. CASTELLANO:  In the RICO indictment,
11    the purpose was to establish for purposes of a
12    racketeering conspiracy, that each of these
13    individuals in that indictment conspired, or -- there
14    is a conspiracy with one or more other people to
15    violate the RICO Act.  So these would all be an
16    indication of a conspiracy to commit racketeering
17    acts in furtherance of the enterprise.
18          THE COURT:  So I take it from that answer
19    that during the entire timeframe that's used, I guess
20    the earliest one that's an Overt Act is going to be
21    1994.  During that entire time Mr. Sanchez was,
22    according to the Government, a member of the SNM
23    Gang?
24          MR. CASTELLANO:  I believe that's correct,
25    Your Honor.  The one issue I have with not having
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   supporting documentation is I won't be able to recall
 2   when each of these individuals entered the SNM Gang.
 3   So, for example, in 1992, I don't believe that Mr.
 4   Sanchez was a member of the SNM.  But the reason
 5   that's included is that for purposes of recruiting
 6   for the SNM, things like pedigree, and the
 7   willingness to put in work for the gang is something
 8   that the gang looks for when they're recruiting
 9   members.  So if someone comes into prison with a
10   murder, that's somebody who they may be interested
11   in, knowing that someone is willing to take a life.
12            So we are actually moving the admission of
13   that as well.
14            THE COURT:  I guess I understood that, if
15   somebody did something to advance their position
16   within the enterprise, or to become a member of the
17   enterprise, that would probably fall within the
18   furtherance or evidence of the enterprise.  But if he
19   just committed a murder, and that's all we have, we
20   don't have any evidence that he was doing it for
21   purposes of advancing the enterprise or becoming a
22   member of the SNM Gang, what would be your pitch for
23   why that should come in?
24            MR. CASTELLANO:  For the reason I stated.
25   I believe that some of the cooperators know Mr.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Sanchez to have a murder conviction.  That's
2    something they talk about amongst themselves.  It's
3    something that establishes that someone is willing to
4    prove themselves for the gang.  But I do agree with
5    the Court's question, or I think the Court is asking
6    the right question.
7            THE COURT:  Seems like that's part of his
8    resume.  He's got a resume; doesn't matter how he got
9    it, but if he didn't put that thing on his resume to
10   try to get into the gang, or advance the gang, it
11   seems to me it's not going to fall within the
12   enterprise evidence.
13           MR. CASTELLANO:  I agree with that
14   statement, Your Honor.  I use the term "pedigree."  I
15   think resume is another word for that.
16           And I will state I don't believe we could
17   establish that, in 1992, Mr. Sanchez committed that
18   murder for the purpose of entering the enterprise.
19   So I don't think it would fit the elements in that
20   way.
21           THE COURT:  Do you feel like on the
22   others -- and you must have taken this to the Grand
23   Jury; the Grand Jury found probable cause on these
24   overt acts.  Did the Grand Jury hear testimony about
25   tying Mr. Sanchez or tying these bad acts and crimes

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to the enterprise for each one of the overt acts?

2          MR. CASTELLANO:  I don't remember the

3    specific Grand Jury testimony.  But, yes, that would

4    have been the purpose, was that we would have tried

5    to establish for the Grand Jury these things were

6    done for the purpose of establishing a racketeering

7    conspiracy.

8          THE COURT:  And is that your intent at

9    trial is to take each one of these overt acts?  And

10   do you have the evidence to tie these acts to the

11   enterprise, and that they were done in furtherance of

12   the enterprise?

13         MR. CASTELLANO:  Yes, Your Honor.  Now, the

14   first question is admissibility.  And that's the

15   first question you want to ask.  The second is

16   whether we truly want to introduce each of these at

17   trial.  I can tell the Court, like I said, each of

18   these is based on documentation.  So once we decide

19   which ones we want to introduce at trial, we would

20   make sure we had a witness.  And if we didn't, then,

21   obviously, it wouldn't come in.

22         But this is for the purpose of the Court

23   noting that they're admissible for trial purposes.

24         THE COURT:  All right.  Tell me what I also

25   ought to be asking you to try to determine whether

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    you are meeting your requirements to get this in for
 2    enterprise or furtherance of enterprise activity.
 3             MR. CASTELLANO:  I may be able to answer
 4    that with the Harris case I mentioned earlier.  I'll
 5    show the Court two portions from that decision.  The
 6    first is that an association-in-fact enterprise, here
 7    at the top of the page, need not have a hierarchical
 8    structure or chain of command.  Decisions may be made
 9    on an ad hoc basis, and by any other number of
10    methods, by majority vote consensus and show of
11    strength, et cetera.  Members of the group may not
12    that have fixed roles.  Different members may perform
13    different roles at different times.  The group need
14    not have a name, regular meetings, dues, established
15    rules and regulations, disciplinary procedures, or
16    induction, or initiation ceremonies, nor is the
17    statute limited to groups whose crimes are
18    sophisticated, diverse, complex, or unique.  For
19    example, a group that does nothing but engage in
20    extortion through old-fashioned, unsophisticated, and
21    brutal means, may fall squarely within the statute's
22    reach.
23             So one of the things we need to prove --
24    well, I should say three things -- is that the
25    enterprise has a purpose.  And in Harris, one of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    purposes of the Crips Gang was drug distribution.

2    Then we have to establish relationships among the

3    members, and then longevity.  And I know people talk

4    about the acts covering a number of years.  Well,

5    longevity covers that element.  And in that case the

6    record showed a pattern of activity that the

7    Government alleged continued over a period of years.

8    So we do have to establish for an association-in-fact

9    enterprise sufficient longevity for the group to meet

10   its purposes.  And so when we allege at least acts,

11   it is showing longevity of the gang, long enough for

12   them to basically be a gang.

13            THE COURT:  All right.  Anything else on

14   these bad acts, Mr. Castellano?

15            MR. CASTELLANO:  Not for Mr. Sanchez, Your

16   Honor.

17            THE COURT:  Well, let me say this, and I'll

18   start hearing from you, Mr. Jewkes, and other

19   defendants.  I'd be inclined not to include, based

20   upon what I'm hearing, the first one about Mr.

21   Sanchez committed murder in the first degree in 1992.

22   I'm not seeing enough link there just between items

23   on a resume or pedigree and the enterprise.  There

24   may be some other reason it comes in, but -- such as

25   he takes the stand, and a conviction or something.

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    I'd have to rethink that.  But at least for purposes

2    of either the Government is not trying to use 404(b),

3    so that's out.  So if it's coming in for enterprise,

4    it looks like it wouldn't.

5          The rest of them, based upon the

6    Government's representations, they're not coming in

7    under 404(b).  But they'd be coming in for enterprise

8    and for furtherance of the enterprise's activities.

9          So those would be my calls.  Your thoughts?

10          MR. JEWKES:  Your Honor, that's half the

11   battle.  With regard to -- first of all, Your Honor,

12   they allege, if I counted correctly, eight or nine

13   assaults inside prison, either involving correctional

14   officers or other inmates.  But we have received no

15   showing that this was in furtherance of the

16   enterprise; in other words, that it was tied to the

17   enterprise.  Because I think the Court's going to

18   hear ample evidence that inside prison, these guys

19   don't always get along.  It doesn't have anything to

20   do with gang affiliation.

21          THE COURT:  You mean, the defendants here,

22   is that what you mean by "guys"?

23          MR. JEWKES:  Yes.  Personal beefs.

24          So we would argue that we're going to have

25   to have a showing at some point in time with regard

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to the remaining 25 overt acts as to how it's going

2    to be tied to the organization.

3            THE COURT:  Well, stop right there.  And

4    let me ask Mr. Castellano a couple of questions here.

5    I don't want to turn this into more difficult than it

6    has to be.  I mean, this is -- since it's not a

7    404(b) and that's out the window, we're just talking

8    about regular evidence in a trial.  But can you think

9    of a way, Mr. Castellano, that before you talk about

10   one of these bad acts, or crimes, is there a way for

11   you to put on your evidence so that I can see what's

12   about to come, so I can hear the evidence of

13   enterprise and furtherance of the enterprise before

14   you actually get the bad act in, so that Mr. Jewkes

15   and I can be listening to it?  And then -- you know,

16   if it looks like he laid the foundation, we're just

17   going to keep moving.  But if we don't have the

18   evidence, I'm taking you at your word that you have

19   it.  I assume you do.  But before you blurt out these

20   things in trial, or a witness does, I'd like to hear

21   the evidence in furtherance before I hear it.

22           Can you think of a way to do that?  Because

23   once the bell is rung, it's hard to unring it.

24           MR. CASTELLANO:  I'm trying to figure out

25   how best to answer that question.  Because the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN
&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    indictment alleges, among other things, that the gang
 2    rules the prison system by force and by fear and
 3    intimidation.  And so I'm not sure that every act
 4    would be considered in furtherance of membership in
 5    the gang.  It could be.  For example, one of the
 6    intent requirements under VICAR is that you do
 7    something in furtherance of the gang, and that also
 8    means -- the cases law tells us you do it because
 9    it's expected of you by virtue of your membership in
10    the gang.  So if you're disrespected, then that would
11    result in responding to somebody who disrespects you,
12    which would include guards or other inmates.  So --
13              THE COURT:  Let me try this -- let me try
14    this and see -- I don't want make this more
15    complicated than it has to be.  But I also am trying
16    to figure out the way that the Court and the
17    defendants have a meaningful ability to object, if
18    they don't feel like the nexus is there, because this
19    is the kind of evidence that once it's out, you just
20    can't put it back in.  Sometimes nexus falls apart
21    and you can't fix it.
22              Would you be able to do this:  You said at
23    some point -- you're probably not going to put in all
24    these acts; at some point you're going to know
25    whether you are going to put in the acts.  You said
```

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                          1-800-669-9492



1  you hadn't had a chance to look at the documents, and

2  that's probably what's going to drive it.  Would you

3  be willing that, at the point you're ready to

4  determine which overt acts you're going to prove up

5  at trial, and you're going to be looking at the

6  documents as you go through, would you be willing to

7  send a letter to Mr. Jewkes, and say:  Here's the

8  documents I'm going to be relying on, and these are

9  the overt acts I'm going to prove.  And then, at that

10  point, Mr. Jewkes can be looking at them, and you

11  know, he can make a call.  It's like, Yeah, this is

12  coming in, the judge is going to let it in, or there

13  is not enough here for them to prove the nexus, so

14  I'm going to fight him on that one and object at

15  trial.  And if need be, you know, somebody could send

16  me a letter and send me the documents you're relying

17  on, too, and tell me how you're going to do it.

18          The reason I'm thinking that might be a

19  minimal burden, is that's something you're going to

20  do eventually yourself anyway.  And the only thing

21  I'm adding to it is when you do it, tell Mr. Jewkes

22  so that he can figure out whether to object.  And if

23  you do, then Mr. Jewkes, since I'm putting one burden

24  on the Government here, I put the burden on you to

25  send me a letter and send me the documents and tell

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   me that you don't think that ought to come.  And I'll
 2   try to be alert during the trial to the objection.
 3             Do you think y'all could live with that?
 4             MR. CASTELLANO:  I'm willing to give that a
 5   try, Your Honor.  And if I can generate a shorter
 6   list beforehand, indicating that I intend not to use
 7   something, I'll try to let Mr. Jewkes know that.  And
 8   then I'll try to focus on the other ones that we're
 9   either thinking about, or moving towards admission.
10   But if I can shorten that list, then we'll try to do
11   that.
12             THE COURT:  Okay.  I don't think I can
13   think of a better solution as to how to deal with
14   this.  I think, generally, if the Government thinks
15   that -- I mean, if they went to the trouble of
16   putting it as an Overt Act, that's a pretty
17   substantial step.  So I assume they have some
18   evidence to back that up.  Remember, it only has to
19   be relevant.  So the standard is pretty low here.  I
20   mean, if it has any tendency to make the statement
21   true; in other words, that it establishes the
22   enterprise, or is in furtherance of the enterprise,
23   it's not a call I make by a preponderance of the
24   evidence.  It's simply, is it relevant?  And if
25   they've got enough there to allow a reasonable juror
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to infer from that evidence, then it's probably not
 2    my -- I don't have a gatekeeping function here.
 3             What do you think, Mr. Jewkes?
 4             MR. JEWKES:  Yes, sir.  I think we can live
 5    with that.  What type of deadline did you have in
 6    mind?
 7             THE COURT:  Well, I'd be inclined not to
 8    impose a deadline here.  Because this is a little bit
 9    unusual, and just try to protect the defendants from
10    having it blurted out at trial.  I think we're going
11    to have to make some calls as we go.
12             I don't know.  How do you feel,
13    Mr. Castellano?  Is this something that you're going
14    to do sooner rather than later?
15             MR. CASTELLANO:  It's something I'd rather
16    do later.  Because, obviously, we'll be doing this
17    potentially for five defendants, depending upon how
18    the Court rules, in addition to everything else we'll
19    be doing as we march towards trial.  I'll certainly
20    try not to spring this on them last second, so
21    they're scrambling.
22             THE COURT:  If you were to propose a
23    deadline, what would it be?
24             MR. CASTELLANO:  Let me check the calendar,
25    Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  January 2, 8, 15, 22, 29 are
 2    our Mondays.
 3              MR. CASTELLANO:  How about the 22nd, a week
 4    before trial?
 5              THE COURT:  Okay.  And then, Mr. Jewkes,
 6    you're experienced, you can look at it and see if
 7    there are some there that you really want to fight.
 8    And if there are, I'll put the burden on you to send
 9    me a letter or something, and then I'll look at it.
10    I'll just have to make balls and strikes on it and
11    say whether it's relevant or not.  Because I think
12    that's the standard at this point, is whether it has
13    any tendency to make what the Government is trying to
14    prove more likely than not.
15              MR. JEWKES:  Very well, Your Honor.
16              THE COURT:  Anything else on your motion?
17              MR. JEWKES:  No, sir.
18              THE COURT:  All right.  Anything else you
19    want to say?  I kind of chopped it up, Mr.
20    Castellano.
21              MR. CASTELLANO:  No, Your Honor.
22              THE COURT:  All right.  Anybody else want
23    to comment on this:  I've probably got some more of
24    these coming up, so if anybody wants to comment on
25    what we're doing because, once you do one of these,
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                          1-800-669-9492
                                                                   e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

```
 1   you fall into a pattern.

 2           Ms. Duncan?

 3           MS. DUNCAN:  Your Honor, I'll address the

 4   individual issues as to Mr. Baca in a moment.  But

 5   the January 22 deadline, that just feels to me way

 6   too close to trial.  I know from my letter, I've got

 7   four whole pages of proposed bad acts against Mr.

 8   Baca.  And I'm going to be prepping for actual trial

 9   instead of having to brief all this in that week,

10   that already very busy week.

11           THE COURT:  Don't feel like you have to

12   brief it.  I mean, really, just give me the basic

13   documents, and tell me this is one of the ones you're

14   objecting on.  Because, you know, the way I'm

15   envisioning this, I'm going to make calls, like I

16   would if they were just doing in this trial, you

17   know.  So you make them the best you can.  And

18   remember, the standard is extremely low.  And it is

19   not a Daubert hearing, it's not a James hearing.

20   This is a relevancy hearing.  And so they don't have

21   to have much.

22           MS. DUNCAN:  And I appreciate that.  I

23   just -- I guess for my client, the 404(b) notice the

24   Government gave us, the first one, is alleged to have

25   happened in August of 1982.  And the last one is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   alleged to have happened in November 30 of 2015.  And

 2   you know, we're not objecting.  We acknowledge that

 3   some of these alleged bad acts are part of the

 4   enterprise evidence.  But there is others -- for

 5   example, the 1982 stuff that's just totally

 6   irrelevant.

 7          THE COURT:  Let's see what Mr. Castellano

 8   says in a moment about Baca.  If he takes the same

 9   position that none of it is 404(b) evidence, he's not

10   going to use 404(b), we can put that aside, and that

11   may give you some comfort.

12          MS. DUNCAN:  It may give me some I think.

13   And I agree I could just argue on the points.  But

14   the evidence they're proposing to use, whether it's

15   404(b), or alleged enterprise evidence, is highly

16   prejudicial against my client.

17          THE COURT:  Let's see what he says.  He may

18   get up and say he's not going to try to bring any of

19   it under 404(b).  Remember, this device got done to

20   make sure that the defendants got to object to 404(b)

21   evidence.  It's working.  That's all I'm saying.

22   It's working.  It's not fun.  But it's working.  So.

23          MS. DUNCAN:  Thank you, Your Honor.

24          THE COURT:  Hold on.  I'm not cutting you

25   off.  But I'm thinking anybody wants to say anything

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   sort of about what they just saw with the Government
 2   and Mr. Sanchez?
 3           Were you up, Ms. Sirignano?
 4           MS. SIRIGNANO:  If we're going to do this
 5   for each defendant --
 6           THE COURT:  I am.  But if you've got
 7   something on what you just saw, go ahead and tell me.
 8           MS. SIRIGNANO:  Well, my objection would be
 9   evidentiary in nature, and tying it into the
10   enterprise.  I talked with the Government before our
11   break, and was told that it's going to be all
12   enterprise evidence instead of 404(b) evidence.  But
13   I don't know how all this is going to come in, either
14   through co-conspirator statements, or with prior
15   convictions.  They're not related to the alleged SNM
16   enterprise.  And while I do agree that some may be
17   alleged to -- or some of them may be enterprise
18   evidence, I can't concede that all 40 of them, four
19   pages' worth, starting from 1995, going all the way
20   through --
21           THE COURT:  All right.  Let's hold those
22   thoughts, because I think those are specific to
23   Mr. Garcia.  So let's hold those.
24           MS. SIRIGNANO:  Thank you, Judge.
25           THE COURT:  Anything else then?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          All right.  So that's how we'll deal with
2    Mr. Sanchez' motion in limine on the bad acts.
3          So the next one I had up was for
4    Christopher Chavez.  So I'll think we'll put it
5    aside.  Are you in agreement on that?
6          MR. MONDRAGON:  Yes, Your Honor.
7          THE COURT:  We'll put it aside.
8          I'm putting Mr. Patterson's aside.  So
9    we'll take it up the second trial.
10         All right.  Ms. Duncan, why don't we take
11   up your motion.  Did you have a chance to talk to Mr.
12   Castellano about your motion, what positions he's
13   going to take?  Or do you want to let him talk a
14   little bit to see if we can -- I'm not seeing Mr.
15   Baca's motion.  I know I read it.
16         MS. DUNCAN:  Your Honor, I haven't had an
17   opportunity to speak with Mr. Castellano.  So I'm
18   hoping he can put his position on the record.
19         THE COURT:  Okay.  Let me see if I can find
20   it first, here.
21         All right.  Mr. Castellano, on Document
22   1538, any preliminary remarks that you want to make?
23   I guess the first question is, is there anything on
24   your letter here, this attachment, that is going to
25   be 404(b) evidence?  Or are you going to do like you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    did with Mr. Sanchez, and say, No, I'll not try to
 2    get it in as 404(b).  We're just going to try to get
 3    it in as enterprise or in furtherance of the
 4    enterprise?
 5              MR. CASTELLANO:  Yes, Your Honor, I think
 6    we are probably looking at enterprise evidence once
 7    again.  And I'm looking through the notes --
 8              THE COURT:  Can I and Ms. Duncan take
 9    404(b) then off the table?  None of this, the
10    Government will try to get in as 404(b) evidence?
11              MR. CASTELLANO:  I think that's correct.
12    If I come across something that I think is otherwise,
13    Your Honor, I'll indicate that.
14              THE COURT:  Okay.  All right.  So do you
15    have -- did you do something similar for Mr. Baca
16    that you did for Mr. Sanchez on overt acts?
17              MR. CASTELLANO:  Agent Acee is working on
18    that right now, Your Honor.  But I can do some
19    talking, I think, in the interim.  Because, if you
20    recall from the James hearing, and I'll just put this
21    up here to refresh the Court's recollection, we went
22    through a number of statements from this kind of
23    summary chart, a report by the FBI.  The one I'm
24    showing on the screen is DeLeon 3304.  In one of
25    these, I believe that Mr. Baca talks about having
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    killed another inmate over a drug dispute.  I'm just
 2    looking for that as I'm talking.
 3             THE COURT:  Somebody is on the phone
 4    dialing, and we can hear everything.  So those people
 5    on the phone, be real careful about dialing.  We're
 6    hearing the dialing in the courtroom and hearing
 7    other things.
 8             MR. CASTELLANO:  I can't find it right now,
 9    Your Honor.  If I come across it, I'll highlight it
10    for the Court.  It is related to the acts here.
11             Your Honor, I'm putting on the screen a
12    letter sent by the Government to the defense
13    regarding the prior acts.  And I'll go over the easy
14    part first, which is the items that are contained as
15    overt acts in the letter.
16             THE COURT:  All right.  Have you done this
17    for every page, or is Mr. Acee still doing that?
18             MR. CASTELLANO:  He has them all done, with
19    the exception of, I think, just the last couple.  I
20    just grabbed it from him, since I knew we were moving
21    forward.
22             THE COURT:  Why don't you put the second
23    page up and let me get the overt acts down.
24             MR. CASTELLANO:  I'm showing the Court the
25    second page, and I'll move it whenever the Court is
```

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



1-800-669-9492
PROFESSIONAL COURT                        e-mail: info@litsupport.com
REPORTING SERVICE

```
1    ready.
2              THE COURT:  All right.  Do you want to go
3    to the next page, page 3?
4              All right.  Do you want go to page 4?
5    Okay.
6              MR. CASTELLANO:  What I'll do is I'll
7    reference the indictment, and see if I can find those
8    final acts.  It looks like the November 29 date is
9    Overt Act 246 in the RICO indictment.  And those are
10   related to Gregg Marcantel, so that's actually
11   charged conduct in this case.
12             THE COURT:  So that's res gestae, or it's
13   charged conduct?
14             MR. CASTELLANO:  It is, Your Honor.  That's
15   Overt Acts 246 and 247 from the RICO indictment.  So
16   those are the acts we have to prove as charged.
17             THE COURT:  Does that apply also to the one
18   for November 30?
19             MR. CASTELLANO:  Yes, I think that might be
20   Overt Act 247.  I'll double-check.  Yes, November 30
21   is Overt Act 247.
22             THE COURT:  All right.  Now, if I were to
23   ask you the same questions about how you're going to
24   prove these that I asked you in regard to Mr.
25   Sanchez, would your answers be any different?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. CASTELLANO:  No, it would be the same,

2    Your Honor.  What I don't recall here, going back to

3    the items that are not covered by overt acts, is when

4    Mr. Baca became a member of the SNM.  So I'd have to

5    go back and check the 1982 to 1988 acts.  As I stated

6    earlier, we'll have testimony from some cooperators

7    who will say that they were known by reputation when

8    they reached prison, because they were willing to

9    beat people down, and they were known for that type

10   of activity, so that was used as a recruiting tool.

11          What I can't tell the Court right now is

12   anything about the first five items on that page,

13   without looking at the supporting documents.

14          THE COURT:  All right.  And would you be

15   agreeable, on the same schedule and timeline, provide

16   the same information as to Ms. Duncan, Mr. Lowry,

17   that you're going to provide to Mr. Sanchez, when you

18   get ready for trial and start determining what overt

19   acts you're going to produce?

20          MR. CASTELLANO:  Yes, Your Honor.  I'm

21   trying to think of -- well, some of these will be

22   pretty clear.  So I can give them a heads-up

23   beforehand on some of these.  Like I said, some of

24   this is actually charged conduct, then I'll let them

25   know that ahead of time.  They should know that

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                             1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                   e-mail: info@litsupport.com

```
 1   that's actually part of the crimes charged.
 2            THE COURT:  And really I'm doing this as
 3   much for myself as them, just so that when I make a
 4   ruling, that the bad act is coming in to show
 5   enterprise, the furtherance of it, that I feel like
 6   I'm making an informed decision.  So that's kind of
 7   what I'm trying to do is make sure that I'm getting
 8   an informed objection, and then making an informed
 9   ruling.
10            All right.  Anything else, as the proponent
11   of the evidence, you want to say to the Court, Mr.
12   Castellano?
13            MR. CASTELLANO:  No, Your Honor.
14            THE COURT:  All right.  Ms. Duncan, I guess
15   what I would be inclined to do, based upon the record
16   and the representations of the Government, is not
17   allow the first five at the present time, because I
18   don't see sufficient evidence for those coming in.
19   Those seem to me to be resumes or pedigrees that he
20   may have established certain characteristics that
21   would be attractive to the SNM Gang.  But they were
22   not yet -- they're not evidence of an enterprise, and
23   they're not yet evidence that he was doing them in
24   furtherance of the enterprise.  The others, based
25   upon the representations of the Government, and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    fact that they're pled as overt acts, gives me some

2    comfort that the Government has some evidence that's

3    relevant, and probably would allow the Government to

4    introduce that evidence.

5              MS. DUNCAN:  Your Honor, I certainly agree

6    with you about the first five.  So all of those

7    offenses, convictions that Mr. Baca has occurred

8    before the Government even alleges he was a member of

9    SNM.  Obviously, we contest the Government's

10   representations about his membership in the SNM.

11   Well, we contest really everything in here.  But

12   those five clearly are well before the enterprise.

13             For the things after, you know, I have

14   looked at some of the evidence.  Some of this are

15   Department of Corrections reports summarizing

16   statements by -- multiple levels of hearsay, so I

17   think the Government is going to have a major proof

18   problem at trial.  There are others that summarize

19   conversations Mr. Baca had with informants.  And the

20   Government is attributing to Mr. Baca statements that

21   the informants made.  There are other acts in here

22   that aren't acts by Mr. Baca at all.  For example,

23   I'm assuming Mr. Garcia is going to want speak to

24   this motion, because there are at least three overt

25   acts that are really about Mr. Garcia and not Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Baca.

2          The other thing that's confusing to me

3  about the Government's notice is really starting

4  about on page 2, to the end.  These are all

5  predicated on conversations that Mr. Baca had with

6  Eric Duran.  And they're pleading the bad acts, or

7  how they want to plead the conspiracy, or the

8  enterprise as things that Mr. Baca said.  So it's not

9  really the act itself.  It's, rather, we're going to

10 bring in evidence that Mr. Baca said that.

11         So it's a little bit --

12         THE COURT:  Give me an example.

13         MS. DUNCAN:  So if you look on page 3, for

14 example, it's "On or about October 24, 2015, Anthony

15 Ray Baca stated that he was brought into the gang

16 after he assaulted another inmate on orders from SNM

17 member, Diaz, Sr."

18         THE COURT:  Which paragraph is that?

19         MS. DUNCAN:  I'm sorry, Your Honor.  It's

20 the very first one.

21         THE COURT:  First one.  Well, I guess, you

22 know -- okay, well, if that's the evidence, if he's

23 taking orders from the SNM -- an SNM member of the

24 gang, then I think that is some evidence that he was

25 doing it for the SNM Gang.  People don't usually take

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    orders from somebody unless they're wanting something
 2    in return.  So I think it would be some evidence.
 3            MS. DUNCAN:  Sure, Your Honor.  And I agree
 4    that with some of these allegations, the Government
 5    can prove them up, they would come in as enterprise
 6    evidence.  And once we know for sure what the
 7    Government intends to introduce, we will be filing
 8    something to show that the evidence doesn't prove
 9    what they say it does.
10            I am given comfort by the Court's ruling
11    that it's going to exclude the first five in the
12    Government's notice, because it's a different
13    character.
14            THE COURT:  If Mr. Castellano goes back and
15    he thinks he can prove them up, he'll let you know.
16    But right at the moment, they're not 404(b), so --
17    and I'm not hearing anything that says to me that
18    they're enterprise, or furtherance of the enterprise.
19    If he finds something, he can come back and tell you
20    and me, but --
21            MS. DUNCAN:  And I think with the remaining
22    overt acts -- I mean, again, I appreciate Mr.
23    Castellano's representation that he'll let us know
24    sooner than January 22, if they're intending to
25    introduce evidence of one, so that we can prepare.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    But I would still ask the Court to move that deadline
2    up a little bit, because it will affect how we
3    present our defense at trial.  So the more time that
4    we have to respond and educate the Court, I think the
5    more reliable the ruling will be.  But it's the best
6    way to protect Mr. Baca's constitutional rights,
7    because a lot of this evidence is very prejudicial
8    and somewhat tangential.
9              THE COURT:  Well, and that's the reason I'm
10   trying to get some information.  I'm not inclined to
11   move it up, because I think anything we're getting,
12   you and I, is a gift.  It helps me make a more
13   informed decision, and it helps you to formulate an
14   objection.  But this is the kind of stuff that, in
15   many trials, you'd just be making like that (snaps
16   fingers.)  So I think we better take the gift we got.
17             Anything else, Ms. Duncan?
18             MS. DUNCAN:  I have nothing else, Your
19   Honor.
20             THE COURT:  All right.  Anybody else want
21   to say anything on Mr. Baca's motion in limine to
22   exclude evidence of bad acts turning into enterprise
23   and furtherance of enterprise?  Did you have
24   something, Mr. Benjamin?
25             MR. BENJAMIN:  No, Your Honor.  I was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    trying to figure out --
 2            THE COURT:  Anybody else?  Any other
 3    defendants?
 4            Mr. Castellano?
 5            MR. CASTELLANO:  Your Honor, I was just
 6    trying to match up so the Court has an idea what
 7    we're talking about, beginning with the October 24,
 8    2015 statement, attributed to Mr. Baca -- I can't
 9    read the Bates stamp number, probably 3300 -- this is
10    where it says, "'Pup' explains where he got brought
11    in at the Main, after he piped a guy from Colorado."
12    So this is talking about, I believe, the statement
13    referenced in October 24.  So it should be recording
14    rather than just words of Eric Duran.  So that should
15    be included.
16            THE COURT:  Which paragraph are you looking
17    at, Mr. Castellano?
18            MR. CASTELLANO:  Ms. Duncan referred to the
19    top of page 3.
20            THE COURT:  Yes.
21            MR. CASTELLANO:  October 24, 2015.
22            THE COURT:  Okay.  All right.
23            MR. CASTELLANO:  Talks about how he was
24    brought in.
25            THE COURT:  Okay.  This is the assault.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    And what, then -- what's the evidence show?

2              MR. CASTELLANO:  The summary is that Mr.

3    Baca explained where he got brought in at the Main

4    after he quote/unquote "piped a guy from Colorado."

5    So that would be the assault he admits to having

6    committed, so he could be brought into the SNM Gang.

7              THE COURT:  And what are we looking at

8    here?  What is this evidence?

9              MR. CASTELLANO:  These are the summaries we

10   used one or two weeks ago, when we were introducing

11   the James statements.

12             THE COURT:  There is some document behind

13   this or some evidence behind this?

14             MR. CASTELLANO:  Yes.  These are summaries

15   of recordings, and most of these should have

16   transcripts.  That's just one of the examples.

17             THE COURT:  So this one here is Mr. Baca

18   talking to himself?

19             MR. CASTELLANO:  That's correct.

20             THE COURT:  Anything else, Ms. Duncan?

21             MS. DUNCAN:  No, Your Honor.  I mean, we'll

22   obviously argue about evidentiary basis for this at a

23   later time.

24             THE COURT:  You don't have to.

25             MS. DUNCAN:  I'm going to, though, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Honor.

 2              THE COURT:  All right.  So let's move to --

 3   I want to stay with Mr. Baca for a while.  He's got a

 4   series of motions here.  And while we're on him, I

 5   want to make sure I understand the difference between

 6   what we're doing here and what we're doing in these

 7   other motions.  So let's pick up 1539, which is Mr.

 8   Baca's motion in limine to prohibit Government

 9   attorneys from using Rule 405, 608, and 609 character

10   evidence without judicial approval.

11              Talk to me about this one.  Is this yours,

12   Mr. Lowry?

13              MR. LOWRY:  It is, Your Honor.  Actually,

14   what we were really seeking here -- I think we filed

15   separate 404(b) motion notices, and I think we heard

16   there will be none.  But if you do intend to use any

17   404(b) evidence in the case --

18              THE COURT:  I think that the 404(b) issue

19   is now over for this, at least for Mr. Sanchez and

20   Mr. Baca.  There is not going to be any 404(b)

21   evidence.  If it's going to come in, it's going to

22   have to come in for the relevancy to the enterprise

23   and the furtherance of the enterprise's activities.

24   But it doesn't sound like the Government is going to

25   try to do 404(b) with your client or Mr. Sanchez.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                  1-800-669-9492
                                                        e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MR. LOWRY:  That's correct, Your Honor.  I
 2    think that's correct.
 3              THE COURT:  Okay.  So then what does this
 4    motion do that we haven't done?
 5              MR. LOWRY:  The only thing it would do is
 6    if the defense called character witnesses.
 7              THE COURT:  Help me think what that would
 8    look like.  Somebody coming in saying what?
 9              MR. LOWRY:  It could be --
10              THE COURT:  Until Mr. Baca, if and when he
11    takes the stand, is he putting his character in
12    evidence in a way that would allow the Government --
13              MR. LOWRY:  Not Mr. Baca.  We could call
14    character witnesses to impeach the  Government's --
15              THE COURT:  You could.  But until your
16    case, character is not going to be in evidence --
17              MR. LOWRY:  Correct.
18              THE COURT:  -- or at play.  So what are you
19    fearful of in the case-in-chief?
20              MR. LOWRY:  Just actually the use of
21    hypotheticals, like if we put on a witness, for
22    instance, for truthfulness, for instance; the
23    Government might be used -- the case facts and a
24    hypotheticals to challenge their basis of belief that
25    this person was truthful, if you knew this person was
```

SANTA FE OFFICE                                                                   MAIN OFFICE
119 East Marcy, Suite 110                                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                          (505) 843-9494
FAX (505) 843-9492                                                                FAX (505) 843-9492
                                                                                      1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    involved in a hypothetical homicide or stabbing or
 2    this, that, or the other thing.  And really, it's
 3    just to prevent that type of hypothetical fact
 4    pattern from being so close to the facts of this
 5    case.  It just brings in -- it's just too close to
 6    the quick, if you will, Your Honor.  If they could
 7    challenge a witness' foundation for their testimony
 8    without referring to the facts of this case.
 9            And there is Tenth Circuit case -- and
10    frankly, circuit case law across the country,
11    typically comes up in death penalty cases and other
12    things where you're presenting evidence, you know, to
13    offset your client's -- you know, it could be
14    propensity for violence; it could be the propensity
15    to be dishonest.  It could be anything.  And the
16    Government would come up and say, Well, would your
17    opinion change, if you knew X, Y, and Z?  And X, Y,
18    and Z happens to be the material facts relevant to
19    the case that the jury is hearing.
20            And, really, that was with regard to 608.
21    Just to prevent those types of hypothetical
22    questions.  With that having been said, Your Honor, I
23    think we're in agreement.
24            THE COURT:  Let me see if I can break this
25    down.  The reputation stuff, I'm not sure I see
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    anything on the list.  Maybe I'm wrong.  Maybe Mr.
 2    Castellano wants to argue at this point.  But I'm not
 3    seeing anything on that that would necessarily go to
 4    reputation for truthfulness or for character for
 5    truthfulness.  So if you brought in a witness going
 6    to testify for truthfulness, and the only reason you
 7    do that is Mr. Baca is on the stand, right, has been
 8    on the stand, or will be taking the stand?
 9              MR. LOWRY:  Right.
10              THE COURT:  So that -- and maybe Mr.
11    Castellano could look through that list and see if
12    there is anything he would want to say:  And did you
13    know that he did such-and-such, and that would go to
14    truthfulness.
15              MR. LOWRY:  Correct.
16              THE COURT:  Assuming he doesn't identify
17    anybody there, I guess I'm not quite seeing the
18    issue.
19              Now, let's switch over to the character.
20    If you decide to put Mr. Baca's character in
21    evidence, then it would seem to me -- and correct me
22    if I'm wrong -- let's say it's his reputation, or
23    somebody's opinion for his peaceful character --
24              MR. LOWRY:  Right.
25              THE COURT:  -- it would seem to me, then,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the Government would be able to ask that witness
 2    about all the violent bad acts that they've listed on
 3    their notice.  Do you disagree with that analysis?
 4              MR. LOWRY:  Well, I do, Your Honor.  And
 5    that's what -- I'm looking at the United States v. --
 6    I'm going to botch that name -- Polsinelli -- 649
 7    F.2d 793.  It's a Tenth Circuit opinion from 1981.
 8    And we've quoted it in our brief.  And actually, the
 9    Tenth Circuit reversed a conviction based on the use
10    of those types of hypotheticals.
11              THE COURT:  Well, isn't what happened in
12    that case -- and tell me this -- is if he -- if you
13    put on a witness that says, you know, I've never
14    known the defendant -- I guess his name was
15    Polsinelli -- to have any involvement in drugs.  And
16    the Government lawyer then asks that witness, Well,
17    you know, if you knew that he distributed drugs in
18    this case, this distribution of drugs, would that
19    change your opinion any?  Or did you know about him
20    distributing drugs here?  That would be -- that would
21    not be a proper question.  But if he had prior
22    convictions, or if there were prior times that there
23    was evidence that he had distributed drugs or used
24    drugs, or something like that, that would be fair
25    game, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           MR. LOWRY:  Well, that's an interesting
 2   question, given the way the case is indicted, because
 3   with the racketeering and the VICAR counts, and the
 4   proof of the enterprise, I mean, I think that all of
 5   those acts are part of this case.  So it really
 6   becomes hard to separate the past from the present,
 7   if you will, under the hypothetical you just gave.
 8   You could say, We're going to look back to your past
 9   and use that to raise the hypothetical.  But it's all
10   sort of in the same basket, if you will.
11           THE COURT:  Well, I guess I would think
12   this would be my call, and maybe I need to be
13   educated on Polsinelli, and you can educate me a
14   little bit more.  It would be improper, I think, for
15   Mr. Castellano to ask one of your witnesses:  Well,
16   but if you knew Mr. Baca tried to knock off the
17   Corrections Secretary, that would not be a proper
18   question of your character witness.
19           On the other hand, if he were to ask the
20   character witness an overt act, even though it's
21   going to have to be -- it is going to be proved up
22   here, if he were to ask a character witness for --
23   let's just take Overt Act No. 6, "That on June 22,
24   Mr. Baca and another SNM Gang member murdered another
25   inmate," it seems to me that would be proper.  Why
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    don't you think about that.  If you don't have a real
 2    clear answer, maybe think about that, and send me a
 3    letter on it.
 4              MR. LOWRY:  I will.
 5              THE COURT:  I'd be inclined to think that
 6    the Marcantel would be off limits, but other overt
 7    acts would be okay.
 8              MR. LOWRY:  If the Court would indulge me,
 9    I'll go back and take a look at it.
10              THE COURT:  Yeah, think about it.
11              MR. LOWRY:  I understand where you're
12    drawing the distinction.
13              THE COURT:  Otherwise, it would seem to me
14    that you're basically going to denude the United
15    States of any cross-examination of one of your
16    character witnesses.  I don't know how they would
17    examine him.  Do you?
18              MR. LOWRY:  Well, I think if they're going
19    to ask a hypothetical, they could ask it without any
20    reference to any specific allegation, as you pointed
21    out, without going into the precise specificity, if
22    you will.
23              THE COURT:  Well, they don't have to ask
24    hypothetical questions.  This is not an expert.  They
25    can actually say:  Did you know that -- you offered
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    an opinion here of your -- of Mr. Baca being
 2    peaceful, but did you know that, on June 22, 1989, he
 3    and another gang member murdered somebody?  Did you
 4    know that in forming your opinion -- or well, your
 5    opinion?
 6             MR. LOWRY:  And I think if there was the
 7    equivalent of a judicial finding or a court finding
 8    or a plea agreement, I wouldn't disagree with you.
 9    But I think a lot of these overt acts, they're based
10    on a subjective analysis that didn't lend itself to
11    that kind of finality, in terms of a determination of
12    whether that specific instance of conduct could be
13    attributed to Mr. Baca or not.
14             So that would be a problem for me in the
15    analysis, in looking to give the Government carte
16    blanche to go --
17             THE COURT:  Think about it and look at it.
18    Because it would seem to me that the Government
19    doesn't have to prove, for a character witness, the
20    cross-examination, they don't have to prove anything
21    beyond a reasonable doubt or even by a probable
22    cause.  They simply have to have a good faith basis
23    for the question.
24             MR. LOWRY:  Right.  And maybe we could be
25    very close to agreement, but just not there.  Because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    what I'm thinking in my mind is you could back off a
 2    little bit, and not be date specific, time specific.
 3    If he was involved with this type of event, an
 4    assault, if you will, would that change your mind.
 5    Not was he involved.
 6              THE COURT:  That's the whole fun of a
 7    character witness is throwing out those 10 bad acts.
 8    Take all the fun out of the cross-examination.
 9              MR. LOWRY:  That would be our position,
10    Your Honor.  I'll go back and look at it.
11              THE COURT:  Take a look at it.  I'll be
12    ready.  Because it's not going to come up until your
13    case anyway.  Give that some thought.  That's where
14    I'd be inclined to draw the line, that they can't --
15    for example, ask about --
16              MR. LOWRY:  Marcantel, Molina, or Rubio.
17              THE COURT:  Yeah, probably so.  But the
18    other overt acts, they might be able to do.
19              MR. LOWRY:  Okay.
20              THE COURT:  What else on your motion do you
21    have?  What else --
22              MR. LOWRY:  That's it, Your Honor.  I think
23    we're in agreement.
24              THE COURT:  So we'll talk about
25    cross-examination of character witnesses, right?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                     1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MR. LOWRY:  Correct.
 2              THE COURT:  Can you think of anything on
 3    reputation for truthfulness, any limitations upon it,
 4    other than it has to be going to truthfulness?
 5              MR. LOWRY:  No, I don't, Your Honor.
 6              THE COURT:  All right.
 7              MR. LOWRY:  On 609, I think the Government
 8    filed a motion.  But I think we're in agreement on
 9    this one.  They didn't oppose with regard to 609.
10    But I think that will be a separate motion that the
11    Government has.
12              THE COURT:  Let's see, my memory on the
13    Government's response on the 609, that convictions
14    outside of 10 years, you're not going to use.  But
15    you do intend to use convictions within 10 years;
16    correct?  Is that what you responded, Mr. Castellano?
17              MR. CASTELLANO:  I don't recall.  That
18    sounds about right, Your Honor.  And I guess the
19    question we'll have to think about is what starts the
20    clock for the 10 years.  Some of these -- some of the
21    folks are still in prison on some of those charges,
22    even though they may be older.  So I think we'll be
23    well within that time period.
24              THE COURT:  Okay.  All right.  Well, you
25    probably know Mr. Baca's criminal history.  And so,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    if there is some that you want to quibble with, you
 2    might try to bring those to my attention earlier
 3    rather than later, if he's going to take the stand.
 4              MR. LOWRY:  Thank you, Your Honor.
 5              THE COURT:  Obviously, if he doesn't take
 6    the stand, we don't have to worry about it.
 7              MR. LOWRY:  I don't think it's an issue.
 8    Thank you, Your Honor.
 9              THE COURT:  Mr. Castellano, anything else
10    on this motion?  I mean, I've been trying to argue
11    your point.  But I mean, do you read the rule on
12    cross-examination of a character witness the way I
13    do?
14              MR. CASTELLANO:  Your Honor, I think you've
15    been doing a great job.  I don't have anything to add
16    to your arguments.
17              THE COURT:  Am I reading this Polsinelli
18    case correctly, or -- it sounds to me like it was a
19    much simpler case, because it looked like a drug
20    distribution case rather than a case that had overt
21    acts pled.
22              MR. CASTELLANO:  I think you get down to
23    the:  Are you aware, or did you know types of
24    questions for those character witnesses, if they come
25    up.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          THE COURT:  Well, I'll tell both of you,
 2    y'all might just do a little Westlaw search, and see
 3    if anybody has had cross-examination of character
 4    witnesses in an a overt act case, and where the court
 5    has cut it off and where they allow it.
 6          I find particularly persuasive, when I'm
 7    ruling on evidence questions, is Saltzburg.  So if
 8    you glance at Saltzburg -- and since he was both a
 9    prosecutor and a criminal defense lawyer, he's got a
10    good real world feel for evidentiary issues.  And
11    since he is a friend, and my former evidence
12    professor, I find him extremely persuasive.  He will
13    sit on my bench up here as we go through trial.  So
14    you might take a look and see if he tells us anything
15    on that issue.
16          Anything else on that, Mr. Lowry, on that
17    motion?
18          MR. LOWRY:  No, Your Honor.
19          THE COURT:  Did anybody else have any
20    comment on this issue, these evidentiary issues?
21    Because they may spill over into your cases as well.
22          All right.  So I'm going to put that aside.
23          I think Mr. Baca had one more, Your Honor.
24          MR. LOWRY:  He did, Your Honor.  It's 1540.
25    It's the motion in limine to prohibit the Government

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    from questioning Jerry Armenta about Mr. Baca's

2    involvement in Counts 6 and 7, which is the Molina

3    murder.

4            THE COURT:  All right.  Tell me -- refresh

5    my memory as to what Mr. Armenta would say and how he

6    would know what he's saying?

7            MR. LOWRY:  Well, that's an interesting

8    issue, Your Honor.

9            Mr. Armenta was videotaped in, I think it's

10   mid October of 2015, in the State case.  And during

11   that videotaped interview, he walks the State

12   investigators through the Molina event.  And at no

13   time did he mention Mr. Baca at all, until he had

14   gone through it.  And then he was asked a pointed

15   question by the folks that were talking to him, if

16   Mr. Baca had anything to do with this at all.

17           And his answer was interesting.  But more

18   to the point, he said, "I didn't know anything about

19   that rumor" -- he describes it as a rumor that was

20   going in the pod -- until after the event altogether.

21   And so it couldn't be in furtherance of any kind of

22   conspiracy because he had no prior knowledge

23   whatsoever.  He talks about what he had heard from

24   other people in the pod later, after the fact.

25           And so we'd ask just that that portion of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the video, if the Government is going to use it, and

2    then Mr. Armenta's testimony to the extent the

3    Government is going to rely on it, not go into

4    anything he learned after the fact, from the rumor

5    mill, that was taking place down in Southern at the

6    time.

7              We've heard ample testimony -- there is all

8    kinds of reasons why people might want to deflect

9    responsibility for that event away from themselves

10   and onto my client.  But, in any event, it's not in

11   furtherance of any kind of conspiracy.  It's an

12   after-the-fact comment, one that wasn't based on any

13   kind of firsthand knowledge whatsoever.

14             THE COURT:  Okay.  Thank you, Mr. Lowry.

15             Any other defendant want to talk about this

16   motion by Mr. Baca?

17             Mr. Castellano, are you going to handle

18   this one?

19             MR. CASTELLANO:  Yes, Your Honor.  I

20   think -- I haven't looked at Mr. Armenta's more

21   recent statements lately.  And I think we'll have to

22   delve into the basis of his knowledge.  If it's just

23   rumors from uninvolved people, that's one thing.  But

24   if it's a rumor from somebody who is involved with

25   the conspiracy, then that would be a statement that

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                            1-800-669-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                         e-mail: info@litsupport.com

1    falls under the Smalls case, because it would be a

2    statement against interest, where somebody tells Mr.

3    Armenta how he got involved in the case, or how Mr.

4    Baca was involved with the case.

5          So I think it's something we actually have

6    to drill down a little bit more into to get to the

7    bottom of.

8          THE COURT:  Do you agree with what Mr.

9    Lowry said about -- did he describe accurately what's

10   on the video?

11          MR. CASTELLANO:  I haven't seen the video

12   in a while, Your Honor.  I forget.  What he said

13   sounds familiar.  I just don't recall the specifics.

14          THE COURT:  I guess my reaction -- and tell

15   me if it's wrong -- is that, if that is a description

16   of the video, that's not going to be enough to

17   probably come in.  And that part of the video might

18   not be, and should not be admissible.  But if you get

19   Mr. Armenta on the stand, and then we just have to

20   listen to what his firsthand knowledge is, you'd have

21   to lay some foundation about Mr. Baca's involvement

22   before Mr. Armenta testified.

23          Your thoughts?

24          MR. CASTELLANO:  I agree, that's the

25   correct approach, Your Honor.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  All right.  Anything else you
 2    want to say on this motion then?
 3            MR. CASTELLANO:  No, sir.
 4            THE COURT:  All right.  Anybody else want
 5    to comment on Mr. Armenta's tape or the taped
 6    interview in the state trial, or what he might say on
 7    the stand?
 8            All right.  Does it sound like that's a
 9    pretty good dividing line, Mr. Lowry?
10            MR. LOWRY:  Well, Your Honor, you know, I
11    know that the United States is very fond of the
12    Smalls opinion.  But I think they represented that
13    right; the opinion is based not on a co-conspirator
14    hearsay analysis.  The Smalls case really is a
15    statement against penal interests.  And in that case,
16    the two defendants were talking about their direct
17    involvement in a homicide.  And even -- I think as
18    Glendell Cook (phonetic) was talking about the
19    defendants' participation, as they participated
20    together, in real-time, with the strangulation of
21    another inmate.  And I think that's just a far cry --
22            THE COURT:  I guess what it would do is --
23    let's say I'm analyzing the tape, right; put the tape
24    aside --
25            MR. LOWRY:  Right.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  If we get Mr. Armenta on the
2     stand, and he can testify about where he heard the
3     statement that Mr. Baca was involved.  So that we
4     have somebody that's part of the conspiracy, and then
5     he was able to testify.  We come in a co-conspirator,
6     and what Smalls does is it solves the Bruton problem
7     for that statement, right?
8              MR. LOWRY:  Yes.
9              THE COURT:  That's all it solves.  It
10    doesn't help us at all with the admissibility under
11    the hearsay rules.  It only satisfies the
12    confrontation issue or the due process issue?
13             MR. LOWRY:  I don't disagree with that,
14    Your Honor.  But here's where I have a real problem
15    with this hypothetical issue of what Mr. Armenta
16    might say when he's in the witness box.  We already
17    know what he's going to say, because he said it in a
18    videotaped interview.
19             THE COURT:  It's your description of that,
20    I think, that Mr. Castellano and I agree that would
21    not come in.  If he can't do any better than that on
22    the stand, then that wouldn't come in.
23             MR. LOWRY:  Correct.  I would just say, if
24    he said anything contrary to what he said in the
25    videotape about something he mysteriously heard a day
```

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                  201 Third NW, Suite 1630
Santa Fe, NM 87501                          Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                      1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1    beforehand, while he's in the witness box --
 2              THE COURT:  What do I do about that,
 3    though?  That's not an evidentiary problem.  It's
 4    just you -- just got to impeach him, right?  And
 5    that's tricky.
 6              MR. LOWRY:  Well, I have to impeach him.
 7    My colleagues have a duty of correcting any --
 8              THE COURT:  Was the statement under oath?
 9              MR. LOWRY:  -- false testimony.
10              No, it wasn't, Your Honor.  But I don't
11    think -- he's given a number of statements.  He's
12    never indicated that he had prior knowledge.  I would
13    be highly suspicious, to the point of incredulous, if
14    he testified to that effect at this point.
15              THE COURT:  Well, you wouldn't be too
16    surprised, or you wouldn't try keep it out.
17              MR. LOWRY:  I want to vitiate the problem.
18              THE COURT:  You're prewarning me you're
19    going to be surprised, right?
20              MR. LOWRY:  Exactly.  I'd be floored.  You
21    might see me pass out.
22              THE COURT:  I remember those days.  Wasn't
23    it New York you always had to feign surprise to get
24    in rebuttal evidence?
25              All right.  So based upon the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    representations of the video, I'll keep it out.  If
2    Mr. Armenta doesn't have anything more than what he's
3    saying in the video, then keep it out, too.  If Mr.
4    Castellano looks at the video, and it's more, then I
5    may have to revisit the issue.  But that will give
6    you some guidance in getting ready for trial.
7             And then, if Mr. Armenta, all of a sudden,
8    remembers a lot more evidence of Mr. Baca's
9    involvement in the murder, then we'll have to deal
10   with that at the time.  If we're at that point, if we
11   can figure out a way to -- tip me off here at the
12   bench, so that I can see what's coming, before we
13   just have it blurted out, it would be good.  So
14   everybody try to be alert to see if you can keep me
15   posted as the trial evidence develops on that point.
16            All right.  I think we're ready to go to
17   Carlos Herrera's motion in limine on bad acts.  Let
18   me pull this up.  This is 1540 -- I can't read.  All
19   right.  I've got 1549.
20            All right.  Ms. Bhalla, you've got some
21   preliminary remarks you want to make, or do you want
22   to hear from the Government first, or do you want to
23   do both?
24            MS. BHALLA:  You know, Your Honor, I think
25   I am anxious to hear from Mr. Castellano about this.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1            But I will just say, looking at the first
 2    page alone, some of these acts were committed when
 3    Mr. Herrera was in the juvenile detention facility,
 4    and he was 13 years old.  You know, I took the
 5    Court's admonition about the meat cleaver pretty
 6    seriously yesterday.  And so I went back and really
 7    tried to narrow this down.  I certainly can see if
 8    you or the Government may be able to put forth some
 9    evidence, and attempt to lay the appropriate
10    foundation.  But I think that some of these are well
11    outside anything having to do with any sort of
12    enterprise evidence.  So --
13            THE COURT:  Did you go through and do what
14    Mr. Castellano has been doing about matching up some
15    of these with overt acts?
16            MS. BHALLA:  I tried to do that.  I had a
17    tough time finding them.  I mean, there were a couple
18    that I could see, maybe.  That's why I'm curious to
19    hear from Mr. Castellano on that.  I mean, I
20    identified maybe four or five out of the 36.  So I'd
21    like to see what the Government has to say about
22    that, Your Honor, to try and see if I can narrow this
23    a little bit.
24            THE COURT:  All right.  Anything else from
25    a preliminary statement you want to make?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. BHALLA:  No, Your Honor.
 2              THE COURT:  Thank you, Ms. Bhalla.
 3              All right.  Mr. Castellano.  Have you done
 4     the same thing with your letter, or Ms. Armijo's
 5     letter to Mr. Herrera's counsel -- I mean,
 6     Mr. Herrera's counsel on this letter?
 7              MR. CASTELLANO:  I did, Your Honor.
 8     Admittedly, I had a tougher time with Mr. Herrera's,
 9     because he's not charged with overt acts in the RICO
10     indictment.
11              THE COURT:  At all?
12              MR. CASTELLANO:  I believe that's correct.
13     Let me double-check.
14              THE COURT:  Let me start first with the
15     question that I've been asking you about the 404(b).
16     Is the Government trying to get any of this evidence
17     in, filtered through 404(b)?
18              MR. CASTELLANO:  I'm having a tougher time
19     with Mr. Herrera's, because I'm going to have to go
20     back and look at the supporting documentation.
21              But let me start with the things I think we
22     can strike now.  It's not many.
23              THE COURT:  Okay.  And by "strike" you mean
24     these are things that the Government will not attempt
25     to prove or introduce against Mr. Herrera?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


```
1              MR. CASTELLANO:  That's correct.
2              The first is the January 12, 1994 incident.
3              THE COURT:  Auto theft.
4              MR. CASTELLANO:  If Ms. Bhalla represents
5     that the 1991 incidents were when Mr. Herrera was a
6     juvenile, I'll agree to strike those now.
7              THE COURT:  Are those both juvenile, Ms.
8     Bhalla?
9              MS. BHALLA:  Your Honor, the whole entire
10    first page is juvenile.  The 1991 incidents, he was
11    13 years old.  The '94 incidents, he was 15 years
12    old.  And then, when you switch to January -- let's
13    see, no, March 14, he was 16.  His birthday is in
14    February.  And then he was 16 for the rest of the
15    page.  I mean, if you look at the first line, it's
16    pretty clear he was a juvenile, because it notes that
17    he was in the detention home.  So --
18             MR. CASTELLANO:  Looking at the 1994, at
19    the bottom of the page, it indicates that Mr. Herrera
20    was in the Department of Corrections.  So I'm
21    assuming --
22             THE COURT:  How would he have been in the
23    Corrections -- in the custody of the Corrections
24    Department as a juvenile?
25             MS. BHALLA:  I'm a little confused about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that.  And I did try and find that out.  There was

2    some issue in the Juvenile Detention Center with him

3    at that time.  But I'm pretty confident that he was

4    16 at the time.  So I'm not sure if it's a mistake

5    with the Government's letter.  But I did talk to my

6    client about that.  And I'm pretty sure he was 16,

7    Your Honor.

8              MR. CASTELLANO:  He could have been

9    adjudicated as an adult.  So that is possible.

10             Like I said, this one -- with these, I was

11   not able to look at the substantiating documentation

12   last night.  I reviewed all the letters, but not the

13   documents underlying them.

14             THE COURT:  Well, do you know if he was

15   adjudicated as an adult for that?

16             MS. BHALLA:  I think that he's a little

17   unclear about that, Your Honor.  And unfortunately, I

18   don't have access to those records.  So I wasn't able

19   to look that up.

20             THE COURT:  Well, I don't know enough about

21   the SNM Gang, but do they allow juveniles or

22   associates into the gang?

23             MS. BHALLA:  Not that I'm aware of, or not

24   that's been alleged against my client, Your Honor.

25             THE COURT:  What's the Government's

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   position on that?  Do you think they allow juveniles,

2   or they let them be associates in some way, so they

3   would help further the criminal activities?

4           MR. CASTELLANO:  I'm not aware of a

5   prohibition on juveniles coming into the SNM Gang, as

6   long as they can put in the work.  I believe

7   Frederico Munoz may have been a juvenile when he

8   joined the gang.  I believe Eugene Martinez was also

9   very young when he joined the gang.

10          THE COURT:  I guess my thoughts are:  A bad

11  act is a bad act.  It doesn't really matter whether

12  it's a juvenile or not.  Mr. Castellano may be

13  willing to take off some of these because he doesn't

14  have any evidence that they were in furtherance of

15  the gang.  But I'm not sure that just him being a

16  juvenile is going to take it off.

17          MS. BHALLA:  I can understand that, Your

18  Honor.  I do think, though, that two things to keep

19  in mind, when we're looking at this, is the

20  Government is going to have to prove in some capacity

21  that's related to the enterprise, number one; and

22  number two, even if that initial burden may be met,

23  there is still a 403 balancing test that we're going

24  to have to look at.  And we can deal with that later,

25  if Mr. Castellano wants to continue agreeing which

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    ones we won't be arguing about, that would be great.
 2             THE COURT:  Well, he's only taken off this
 3    January 12th one so far.  After hearing the exchange,
 4    any others you want to take off, Mr. Castellano?
 5             MR. CASTELLANO:  Yes, Your Honor.  I've
 6    stricken the first two, 1991, as well.
 7             THE COURT:  September 24, 1991 is off?
 8             MR. CASTELLANO:  Yes.
 9             THE COURT:  And also November 6 is off,
10    January 12 is off.  Any others?
11             MR. CASTELLANO:  Not on that page.
12             THE COURT:  Not on that page.  Okay.
13             What was the age of Mr. Herrera in January
14    of 1994?  Is he going to be 15?
15             MS. BHALLA:  15.
16             THE COURT:  All right.  Going to page 2.
17             MR. CASTELLANO:  Toward the bottom of the
18    page, there is an entry on November 3, 1999.
19             MS. BHALLA:  Hold on.  I'm sorry.
20             THE COURT:  See, it's struck out there.
21    And September 8 as well.
22             MS. BHALLA:  I'm sorry.  Let me -- are we
23    on the second page?
24             THE COURT:  We are, 2 of 4.
25             MS. BHALLA:  Oh, okay, I see it.  Thank
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



267

```
 1    you.
 2              THE COURT:  Okay.
 3              MR. CASTELLANO:  That's November 3, 1999,
 4    and September 8 of 2000.
 5              THE COURT:  Correct.
 6              MS. BHALLA:  Now, I don't know if the Court
 7    wants to -- I did go back to try to look at some of
 8    these records.
 9              THE COURT:  These are just gifts.  I mean,
10    he's just not going to put these two in.  So he's
11    just listing right now the ones he's just dropping.
12              MS. BHALLA:  I understand, Your Honor.
13    Thank you.
14              I just meant there were a couple on the
15    list that aren't crossed off that I do have some
16    information on.
17              THE COURT:  Let's hold off.  Let's get Mr.
18    Castellano's -- sort of the universe here, and then
19    we'll see what we're going to do with them.  Go
20    ahead, Mr. Castellano.
21              MR. CASTELLANO:  The next is on the
22    following page, October 6, 2011.
23              THE COURT:  Okay.  The pornography?
24              MR. CASTELLANO:  Yes.
25              THE COURT:  So that one is out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              So it's actually three pages.  Okay,
 2   anything else, Mr. Castellano?
 3              MR. CASTELLANO:  That's it for right now,
 4   Your Honor.
 5              THE COURT:  All right.  And I think I
 6   already asked this question, but bear with me since
 7   I'm asking it a lot.  But with Mr. Herrera, you're
 8   not attempting to introduce any of this evidence or
 9   any other evidence under 404(b); this is all coming
10   in, in the Government's view, for enterprise and for
11   advancing the enterprise's activities?
12              MR. CASTELLANO:  I think so.  I have to
13   look at these more closely with an eye towards the
14   404(b).
15              THE COURT:  All right.  For the present
16   time, though, we'll take 404(b) off the table.  None
17   of this will be coming in for 404(b).  If Mr.
18   Castellano gets back and looks at it, he'll send a
19   letter telling us it's back on.  But right at the
20   moment, as to Mr. Herrera, we'll take 404(b) off the
21   table.  So all the evidence at the present time will
22   have to be filtered through 401 for the purpose of
23   proving enterprise or proving that it was in
24   furtherance of the enterprise's activities.
25              MR. CASTELLANO:  And I agree with that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    approach, Your Honor.  If there is a change, we'll

2    notice that in our letter to defense counsel.

3              THE COURT:  All right.  Do you have on

4    here -- because I guess Ms. Bhalla was saying that

5    she didn't -- did you see any of these that were

6    overt acts, or you just said you had a hard time --

7              MS. BHALLA:  No, Your Honor.  I mean, Mr.

8    Herrera is not named in any of the overt acts, as

9    some of the other defendants.  So I -- you know, I'm

10   trying to have to look at this in sort of a more

11   loose fashion, in terms of whether or not this would

12   fit into some sort of enterprise theory.

13             You know, I think that maybe there are four

14   or five that could potentially be applicable,

15   depending on what evidence the Government submits.

16   But some of these, I think, are fairly obviously not

17   related to enterprise.  And I say that because I was

18   able to go back and look through some of these

19   records, to read about the individual incidents.  And

20   I have a little more information, perhaps, than the

21   Government does at this point, about some of those

22   individual incidents.  And I'm willing to talk about

23   those.  But we can also see how this pans out.  Maybe

24   the Government wants more time to look at this.  I'm

25   open to how the Court wants to handle it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Well, let me make a suggestion:
 2    Would you be willing, if Mr. Castellano would drop
 3    everything but your five, and maybe at least for
 4    ruling and getting ready for trial, you'd identify
 5    which five you think they may have a shot at; he
 6    drops the other, and then he can focus then on those
 7    five, and see if he even wants to bring those in?
 8            MS. BHALLA:  I think that's fair, Your
 9    Honor.  I mean, I'm not going to certainly concede
10    that they're admissible.
11            THE COURT:  Right.
12            MS. BHALLA:  But yes.
13            THE COURT:  Okay.  Well, that might make
14    Mr. Castellano's work easier.  And it's probably
15    going to be overnight.  Why don't you identify the
16    four or five that you think are probably on the
17    table, and then he can maybe see if he's ready to
18    concede, maybe first thing in the morning, or
19    tomorrow, on the rest, that for the present time he's
20    not going to try to put them in?
21            MS. BHALLA:  Okay, Your Honor.
22            THE COURT:  Which ones are they?
23            MS. BHALLA:  If you go to page 2:  "1998,
24    Mr. Herrera voted to bring Gene Martinez into the SNM
25    Gang.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.
 2              MS. BHALLA:  Possibly the February 23, 1999
 3    incident.  I haven't found any records related
 4    directly to that.  But just -- you know, I'd be
 5    curious to see what they had.
 6              THE COURT:  Okay.
 7              MS. BHALLA:  I may have overstated how many
 8    I found to be relevant, or possibly relevant.
 9              You know, there is a lot of stuff about
10    drug use in here.  You know, the Government may think
11    that that is indicative of enterprise.  But I would
12    argue that any sort of minor possession isn't
13    necessarily related to the enterprise.  And there are
14    several on here.  And I think perhaps those, the
15    Government may want to -- I don't know, we may argue
16    about those.  But that's really it, in terms of what
17    I found, Your Honor.
18              THE COURT:  Well, let's do this:  Why
19    don't -- Mr. Castellano, why don't you look maybe a
20    little closer at Mr. Herrera's, and see how much you
21    think we could -- just for purposes of preparing for
22    trial -- how much we can take off the table.  And
23    then if you need to leave some on to look at more
24    closely, or if you and Mr. Acee can look at them
25    overnight, and maybe tell us which ones you're going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to take off, prepare to take off, what you want to
 2    leave in play, and maybe we can at least narrow it.
 3    And then we can go, then, with the structure that
 4    we've used for January 22, as we get a little closer
 5    and see what's left.
 6              Does that make sense?
 7              MR. CASTELLANO:  It does, Your Honor.  I
 8    don't know if I'll be able to find all the
 9    substantiating documents tonight.  I'll discuss it
10    with Agent Acee.  I can tell the Court, most of
11    the --
12              THE COURT:  Maybe you could at least tell
13    us which ones you want to play with.
14              MR. CASTELLANO:  I'll give the Court a
15    preview.
16              THE COURT:  Some of these you look at, and
17    you don't want to pursue, maybe we can just take them
18    off the table?
19              MR. CASTELLANO:  Just about everything
20    related to drugs, we will probably --
21              THE COURT:  You want to leave in play?
22              MR. CASTELLANO:  Yes, because --
23              THE COURT:  That's what SNM does, is drugs?
24              MR. CASTELLANO:  In particular, related to
25    Mr. Herrera; his father and brother were SNM Gang
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    members, and his mother was known to sell drugs both
 2    through the 18th Street Gang and to the SNM.  So
 3    that's where he has an additional connection to
 4    drugs.
 5               THE COURT:  Our breaks sort of worked out a
 6    little odd today.  I need to give Ms. Bean a break,
 7    and it doesn't make any sense to come back.  So let's
 8    bring it to an end.
 9               Let me make a few comments before we take a
10    break.  I'm not able to do sort of a standard
11    pretrial conference, because we're doing this over a
12    month in advance.  So we're going to have to do
13    portions of our pretrial conference on a rolling
14    basis.  So get out our pieces of paper here and write
15    this down.  I'm not asking for any more motions.  I'm
16    not asking for any more letters.  You can raise these
17    as we go.  If you want to send me a letter or
18    something, that's fine.
19               But keep in mind, I would like to help you
20    in advance of trial on a few select categories that I
21    would normally handle at a pretrial conference.
22    First, exhibits.  And I'd be willing to talk about
23    those exhibits in a formal way.  But it may be a
24    little early to do that.  So exhibits; I'd like to
25    address any issues I can, either in hearings this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   week, or in the future about exhibits, so keep that
 2   in mind.
 3           Same way with witnesses.  That's one reason
 4   I switched to the bad acts at this point because I
 5   think that's going to implicate both exhibits and
 6   witnesses, so any issues and disputes on that.  I
 7   want to try to help you resolve any issues on that as
 8   much as possible before trial.  I know we can't
 9   script out the trial.  But we can try, and that will
10   make it easier on everybody to try the case.
11           Keep in mind discovery issues.  Even if I'm
12   not going to allow discovery, I'd like to deal with
13   those in advance.  Just any evidentiary issue.
14           I think the deadline for motions in limine
15   have come and gone.  So I'm not inviting or asking
16   any more motions in limine.  But at the same time, I
17   think it helps us all if I can rule on evidentiary
18   issues before trial.  And the same thing with Daubert
19   issues.  So anything that falls into those
20   categories, while I'm down here -- you know, if I can
21   help you with those in any way, those are the kind of
22   things I would normally deal with at a pretrial
23   conference, we knock it out; we're close to trial.
24   Here, we're five weeks from trial.  So some of these
25   issues, we've got to plow through other motions to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    get to it.  But keep those in mind, if necessary, and

2    send me a letter, whatever you've got to do.  But if

3    we can also just raise them.  I want to try to deal

4    with as many of those before trial as we can, because

5    I think, A, it will help you prepare for trial; B, it

6    will help me to make a more informed decision.

7              All right.  I appreciate everybody's hard

8    work.  Y'all have a good evening.  See you tomorrow.

9              (The Court stood in recess.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on December 26, 2017.

15

16

17

18        _____
          Jennifer Bean, FAPR, RMR-RDR-CCR
19        Certified Realtime Reporter
          United States Court Reporter
20        NM CCR #94
          333 Lomas, Northwest
21        Albuquerque, New Mexico 87102
          Phone:   (505) 348-2283
22        Fax:     (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com