1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3     UNITED STATES OF AMERICA,

4          Plaintiff,

5          VS.                    CR. NO. 15-4268 JB

6     ANGEL DELEON, et al.,

7          Defendants.

8                    VOLUME 3

9          Transcript of Motions to Suppress Proceedings
      and James Hearing before The Honorable James O.
10    Browning, United States District Judge, Las Cruces,
      Dona County, New Mexico, commencing on December 20,
11    2017.

12

      For the Government:  Ms. Maria Armijo; Mr. Randy
13    Castellano; Mr. Matthew Beck

14    For the Defendants:  Mr. Brock Benjamin; Ms. Cori
      Harbour-Valdez; Mr. Robert Cooper; Mr. Jeff Lahann;
15    Mr. Orlando Mondragon; Mr. Billy Blackburn; Mr. Scott
      Davidson; Ms. Amy Jacks; Mr. Richard Jewkes; Ms. Amy
16    Sirignano; Mr. Christopher Adams; Mr. Marc Lowry; Ms.
      Theresa Duncan; Ms. Carey Bhalla; Mr. William
17    Maynard; Ms. Justine Fox-Young; Ms. Lisa Torraco; Ms.
      Angela Arellanes; Mr. Jerry Walz

18

19    For the Defendants (Via telephone):  Mr. James Castle

20

21

22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  All right.  Let's settle down.
 2    Let's go on the record.  It looks like everybody has
 3    got an attorney this morning.  Mr. Maynard, I
 4    understand you're leaving after lunch, and Ms. Bhalla
 5    will be here the rest of the day; is that correct?
 6                MR. MAYNARD:  Yes, Your Honor.
 7                THE COURT:  All right.  And we've got
 8    Mr. Mondragon for Mr. Gallegos.  Mr. Lahann, I
 9    understand you're going to be working with Judge
10    Brack to get a sentencing done, so when we take a
11    break you're going to run up there and so we'll work
12    with you to try to get that done.
13                MR. LAHANN:  Thank you, Your Honor.
14                THE COURT:  Anything else that we need to
15    put on the record?  Mr. Jewkes?
16                MR. JEWKES:  Your Honor, I need to duck out
17    about 20, 30 minutes to go upstairs to Judge
18    Gonzales, and I'll be back.
19                THE COURT:  Ms. Jacks is going to be here
20    all day.
21                MS. JACKS:  Until 4:00.
22                MR. ADAMS:  Your Honor, I have a flight
23    that I couldn't change.  I'll be leaving early.  I'll
24    be on the phone on the way down.  Thank you.
25                THE COURT:  Thank you, Mr. Adams.
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                           1-800-669-9492
                                               e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              Anyone else?  All right.  I have been told
 2     by Ms. Standridge that the Government wants to take
 3     up Document 1586 first, before we put on the FBI
 4     agent in connection with Eric Duran, that Eric Duran
 5     suppression motion.  So, Mr. Castellano, if you wish
 6     to speak on 1586.
 7              MR. CASTELLANO:  Yes, sir.  Thank you, Your
 8     Honor.
 9              THE COURT:  Mr. Castellano.
10              MR. CASTELLANO:  The reason I wanted to
11     address this this morning is I'm going to ask the
12     Court to strike this pleading from the record, or at
13     least portions of the pleading.  Ironically, this was
14     filed in response to the Government's motion in
15     limine to keep people from asking personal questions
16     about witnesses, so as not to harass or intimidate
17     them.  But the pleading itself starts out by doing
18     that.
19              It's clear -- the pleading lists a few
20     cases in which Agent Acee was named as a defendant in
21     a number of -- a couple of civil cases.  It's
22     completely nonresponsive to the motion filed by the
23     U.S. Attorney's Office.  And it really serves no
24     purpose other than to intimidate, harass, or
25     embarrass the Government's case agent.  There is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    really no other explanation.

2            THE COURT:  Does it put him or any of his

3    work or the United States' work in any danger,

4    jeopardy, anything like that?  Or is it just

5    annoying?

6            MR. CASTELLANO:  One, it's annoying, but

7    the other part is that, of course, we're on the eve

8    of trial.  We now have a pleading on the docket which

9    throws mud on the Government's case agent.  So if the

10   press picks it up, obviously it has the tendency to

11   generate press, and hurt the jury pool and influence

12   the jury pool, when we're a month out from trial.  So

13   if the press picks it up, what they see is a story

14   about the case agent, and defense throwing mud at

15   him.  So the concern there is that it's going to

16   unduly sway the jury, and sway them against the

17   United States, when they see a news report involving

18   the Government's case agent.

19           So it has two purposes.  Like I said, it's

20   there to embarrass, harass, or annoy, and it also

21   serves to taint the jury pool, if it's picked up.  So

22   I would ask the Court to strike the pleading from the

23   record, or at least strike those portions related to

24   Agent Acee.  As I stated, there is nothing about

25   those statements that is responsive to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Government's motion, and it doesn't address that in
 2   any way.  And that takes up half the pleading.
 3           THE COURT:  All right.  Thank you, Mr.
 4   Castellano.
 5           MR. CASTELLANO:  Thank you, Your Honor.
 6           THE COURT:  All right.  Mr. Benjamin?
 7           MR. BENJAMIN:  Your Honor, I think that
 8   pleading is extremely responsive.  It does the
 9   opposite of what the Government put in their motion
10   in limine for the personal information.
11           And this entire process over the last two
12   years has been them attempting to paint their picture
13   of the story.  This paints exactly what I think the
14   issues need to be.  This is not a one-sided issue
15   where they get to say what they want, how they want,
16   and then say that we can't go into personal
17   information of other people.  As I stated at the end
18   of the motion, Your Honor, and as we discussed
19   yesterday when discussing this motion, there is, I
20   don't think, anything that comes up that's relevant.
21   Nothing in that motion is personal.  Those are all
22   facts that were taken from plaintiffs' petitions
23   against Special Agent Acee in his official
24   capacities.  And so those were public documents, as a
25   matter of public record.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And the body of the Government's motion in
 2    limine starts out by saying that they want to make
 3    sure that, because of the threats that have been
 4    taken, because of the actions that have been taken by
 5    defendants, they want to protect personal
 6    information.  My response to that was exactly that
 7    they need to look at their own table, if they want to
 8    look for threats and actions that have been taken,
 9    and other people disagree with.  So I think it's
10    extremely responsive, Your Honor.
11              THE COURT:  Well, I guess I have some
12    questions whether it's responsive.  It just seems to
13    me that there was -- this was tied to the motion not
14    to bring out at trial personal information about the
15    Government's witnesses; correct?  I mean, the title
16    is not even, I think, in compliance with our rules.
17    But the title has to respond to the pleading.  I
18    mean, this is just a Defendants' Suggestion that the
19    Government is More Violent Than Defendants.  That's
20    pretty raunchy, don't you think?
21              MR. BENJAMIN:  I guess "raunchy" wasn't the
22    term that came to mind, Your Honor.  I apologize to
23    the Court.
24              THE COURT:  What is the point of this in
25    response to the Government's motion?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Your Honor, the body of --
 2              THE COURT:  Tell me, though, how it would
 3    inform the Court that it should deny the Government's
 4    motion for you to put this material in here?
 5              MR. BENJAMIN:  Because I think of what it
 6    specifically contains in the body of the motion, Your
 7    Honor.
 8              THE COURT:  Well, let me ask my first
 9    question.
10              MR. BENJAMIN:  Yes, Your Honor.
11              THE COURT:  This responds to the
12    Government's motion that the defendants not get into
13    personal information at trial.  Is that what this is
14    a response to?
15              MR. BENJAMIN:  That is exactly a response
16    to that, Your Honor, yes.
17              THE COURT:  Tell me how this Canadian case,
18    how that impacts what I'm supposed to glean from that
19    in regard to that motion.
20              MR. BENJAMIN:  I apologize, when the Court
21    says "Canadian case" -- if I can pull it up, Your
22    Honor.  The Government started on that --
23              THE COURT:  You keep talking about Mr. Acee
24    being a -- something with the Canadian police?
25              MR. BENJAMIN:  He was in Vancouver,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Washington, Your Honor.
2              THE COURT:  Okay.  Tell me how that
3    responds to the motion.
4              MR. BENJAMIN:  Your Honor, there was
5    allegations in that case that Special Agent Acee
6    authored an affidavit and went --
7              THE COURT:  Tell me how that responds to
8    the Government's request that the defendants not get
9    into personal information while the witnesses are on
10   the stand at trial.
11             MR. BENJAMIN:  In the original motion,
12   Document 1520, they quoted actions that they said the
13   defendants took -- and I'm trying to pull that up,
14   Your Honor -- and cited, essentially, as I believe
15   just allegations.  And so I was responding directly
16   to those allegations that were put in the body of the
17   motion, 1520.
18             THE COURT:  How does this respond?
19             MR. BENJAMIN:  Your Honor, may I have a
20   second to pull it up?
21             THE COURT:  I'm at a loss.  Tell me how
22   that responds to what we're going to do at trial.
23             MR. BENJAMIN:  If I may have a second, Your
24   Honor.  The issue that was in the motion was whether
25   or not personal information should be brought out by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the defendants at trial.  That was the point of the
 2    motion, as I understood it.
 3            The Government in its body of the motion,
 4    in the background portion, talks about the SNM
 5    investigation has uncovered a large number of
 6    potential threats to witnesses.  I think this is the
 7    Government trying to inflate those threats in -- much
 8    as Mr. Castellano said, and much as they have done in
 9    their actions in the past --
10            THE COURT:  Why didn't you make that
11    argument, rather than talking about what you talk
12    about here?
13            MR. BENJAMIN:  Your Honor, the thought in
14    my mind when I was drafting that, for lack of a
15    better term, pictures are worth 1,000 words, and
16    that's what I was trying to do.
17            THE COURT:  I guess I'm missing the picture
18    and the words.  Where does it say in the brief what
19    you just said to me, that you pointed out, that they
20    were inflating certain statements in their brief?
21            MR. BENJAMIN:  I can't point to that, Your
22    Honor.  I was trying to do that by -- the word's
23    escaping me, but I was trying to draw that out by the
24    way that I responded with that brief.  Because that
25    has been -- from where I am sitting, representing Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Gallegos, they have been doing exactly what I did in

2    my response in my objection, Your Honor.  And that is

3    trying to elicit this big picture.  And so I was

4    responding with a picture of my own.  And I believe

5    that responded directly.  And in the end of the

6    motion, I believe is where, as I stated that the

7    response, I think, was odd, because I don't know how

8    to -- I don't plan on getting into their personal

9    information.  And I don't believe getting into the

10   information that I elicited regarding Special Agent

11   Acee gets into any personal information.  That's

12   public information.

13            THE COURT:  So why get into it in this

14   response?

15            MR. BENJAMIN:  Your Honor, for the very

16   reason, as I said, their motion brought out the SNM

17   investigation has uncovered large potential threats.

18   I believe that's how the plaintiffs in those

19   petitions felt.  And that's what I was trying to

20   elicit, and obviously doing a poor job.  But that's

21   what I was trying to elicit, was the idea that the

22   Government has put forth this idea that there is a

23   whole bunch of bad actors out there.  And I don't

24   think that they're allowed to freely slander or make

25   allegations.  Yes, they have.  They brought everybody

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    into court, but --
 2              THE COURT:  Was that your point that,
 3    because you thought the Government had slandered your
 4    defendants, you were going to slander back the
 5    Government's witness?
 6              MR. BENJAMIN:  Your Honor, I don't
 7    believe --
 8              THE COURT:  Is that what you did?  It was
 9    just a quid pro quo?
10              MR. BENJAMIN:  Your Honor, no, what I did
11    is I drew out specific allegations out of specific
12    pleadings that I have uncovered out of discovery that
13    I believe are items that I believe illustrate --
14              THE COURT:  It doesn't sound like it was
15    responsive to the motion.  It just sounded like since
16    they slandered, you're going to slander.  Is that
17    your point?
18              MR. BENJAMIN:  No, Your Honor.  My point --
19    and I apologize if I'm not covering it very well.
20              THE COURT:  No, you're not covering it very
21    well, Mr. Benjamin.
22              MR. BENJAMIN:  But there is a portion of
23    their motion that says because of that fact,
24    everybody is going to know they're going to hit my
25    family, I'm never going to tell them -- they're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   talking about specific actions.  So that's where I
 2   went with specific actions, Your Honor.
 3            THE COURT:  Specific actions of Mr. Acee?
 4            MR. BENJAMIN:  Yes, Your Honor.
 5            THE COURT:  And why?
 6            MR. BENJAMIN:  Because of what was
 7   contained in the body of 1520 that I just read, Your
 8   Honor.
 9            THE COURT:  They slander your client;
10   you're going to slander theirs?
11            MR. BENJAMIN:  Your Honor, when the Court
12   says it that way, I can understand the Court's
13   concern.
14            THE COURT:  That was your word.
15            MR. BENJAMIN:  It was my word, Your Honor.
16   But my word was -- I guess what I wanted to do, and I
17   don't believe I've done a very effective job, but I
18   think I've done an accurate job, is bring this issue
19   to the Court's attention.
20            THE COURT:  What is the issue?  What are we
21   going to do with this, now that you've filed this
22   public document and brought it to the Court's
23   attention, what are we going to do with it?
24            MR. BENJAMIN:  Your Honor, yesterday we
25   resolved this by saying that we weren't going to get
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    into the personal information.  And as I stated, I
2    don't believe there is any personal information that
3    I put in that motion -- in my response.
4               THE COURT:  Yeah, that's the reason I'm
5    trying to figure out why you put it in the brief
6    then.
7               MR. BENJAMIN:  Because, Your Honor, it
8    deals with specific facts, much like the Government
9    in 1520 put in what they believe are specific facts
10   or threats.
11              THE COURT:  All right.  Anything else, Mr.
12   Benjamin?
13              MR. BENJAMIN:  I think there is a lot I'd
14   like to add, Your Honor, but I don't believe I'm
15   doing it effectively.  So, no, at this point in time,
16   I don't think so.
17              THE COURT:  Well, I'll listen, if you want
18   to speak.
19              MR. BENJAMIN:  Your Honor, I guess my
20   position is, when I drafted that on the weekend --
21   actually, when I drafted it, I believe, on Thursday,
22   then we got an extension on Friday, Your Honor, in
23   drafting that, I believed that that was a fair and
24   accurate response to the Government's Document 1520.
25   And, essentially, on page 2, where they get into the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1   actual types of threats and different issues.  And I
 2   believe they've been able to make those allegations.
 3            And, Your Honor, I guess what I would like
 4   to relay to this Court is that I didn't believe that
 5   was a one-sided issue.  That is an issue that I think
 6   needs to go both ways.  And that's why I am -- I have
 7   responded that I don't believe personal information
 8   is necessary or required, because of both sides.  And
 9   so, Your Honor, I think this pleading is an accurate
10   portrayal of my response to 1520.
11            THE COURT:  The Government has made a
12   motion to strike the document.  How do you feel about
13   that?
14            MR. BENJAMIN:  Your Honor, that I guess --
15   I think that is -- the only word that comes to mind
16   is unfair and inaccurate, Your Honor.  The
17   Government -- and I specifically have not mentioned
18   anything to the press.  The only individuals that
19   have brought any, or released any issues to the press
20   in this matter have been the Government.  I
21   understand --
22            THE COURT:  How about that article that
23   appeared on the front page of the Journal last week?
24   Was that generated by the defense?
25            MR. BENJAMIN:  I don't know what article
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    you're talking to, Your Honor.
 2            THE COURT:  The front page of the
 3    Albuquerque Journal.
 4            MR. BENJAMIN:  I apologize --
 5            THE COURT:  Certainly, reading that
 6    article, it looked like the defense probably had
 7    their hand on that.
 8            MR. BENJAMIN:  I will have to go Google
 9    that, Your Honor.  I'm from the southern half -- I'm
10    from El Paso, as the Court, I believe, knows -- from
11    the southern half of the state.  I don't read the
12    Journal.
13            THE COURT:  You might get on the internet
14    and look at that, and give me your impression as to
15    whether that was something that the Government put
16    out or defense lawyers put out.
17            MR. BENJAMIN:  And, Your Honor, and I
18    apologize, what I was continuing saying is that the
19    Government, I understand, at this point in time, has
20    agreed, based upon some emails I've seen that nobody
21    is putting out any press releases.  I can speak for
22    myself, Your Honor.  I know I haven't.  But I will
23    take a look at the article from last week in the
24    Journal.
25            But I do not believe that there is any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   grounds to strike the motion.  As the Court can tell

 2   from the brief, I guess I was maybe not in the best

 3   drafting mode when I did that.  But I think it's a

 4   very accurate and correct response to Document 1520,

 5   Your Honor.

 6            THE COURT:  All right.  Anything else, Mr.

 7   Benjamin?

 8            MR. BENJAMIN:  No, Your Honor.

 9            THE COURT:  Thank you, Mr. Benjamin.

10            Ms. Harbour-Valdez, why don't you come up

11   to the podium.  Tell me why the response to the

12   motion in limine that the Government filed included

13   this information.

14            MS. HARBOUR-VALDEZ:  Which information?

15            THE COURT:  Did you read the brief before

16   it was filed?

17            MS. HARBOUR-VALDEZ:  Mr. Benjamin's?

18            THE COURT:  That has your signature on it.

19            MS. HARBOUR-VALDEZ:  Was it filed on behalf

20   of everyone?

21            THE COURT:  Yes, your signature is on page

22   4.

23            MR. BENJAMIN:  Yes.

24            MS. HARBOUR-VALDEZ:  Okay.  My

25   understanding, Your Honor, is that Mr. Benjamin was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    trying to --
 2              THE COURT:  My question was:  Did you read
 3    it before your signature went on this document?
 4              MS. HARBOUR-VALDEZ:  I did not read it,
 5    Your Honor, no.  What we had agreed among the
 6    defense, is that when a response was being filed to
 7    the motions in limine that we had all joined, that
 8    was the informal agreement among the defense.
 9              THE COURT:  So did you know this document
10    was going to respond in the way that it did?
11              MS. HARBOUR-VALDEZ:  I did not read it,
12    Your Honor.  So, no.
13              THE COURT:  All right.  Anything you want
14    to say on the motion to strike by the Government?
15              MS. HARBOUR-VALDEZ:  No, Your Honor.
16              THE COURT:  Do you oppose it?
17              MS. HARBOUR-VALDEZ:  I take no position.  I
18    think it's an extreme request.  I understand, though,
19    why they're doing it.  I also understand why Mr.
20    Benjamin has drafted this the way that he did.  I
21    think he was trying to portray a different picture of
22    what goes on in this case, Your Honor.
23              THE COURT:  All right.  Anything else,
24    Ms. Harbour-Valdez?
25              MS. HARBOUR-VALDEZ:  Nothing else, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Honor.
 2              THE COURT:  All right.  Mr. Cooper, why
 3   don't you come up to the podium.  Did you look at
 4   this motion -- it has your signature on it.  Did you
 5   look at this response before it was filed?
 6              MR. COOPER:  No, Your Honor, I did not.
 7              THE COURT:  Do you have any thoughts about
 8   the response?
 9              MR. COOPER:  Your Honor, like
10   Ms. Harbour-Valdez said, the group has agreed that
11   not everybody should respond to every motion.  And we
12   all agreed that the responses should be filed on
13   behalf of all defendants.  But I did not read it,
14   Your Honor.  And I don't have any thoughts.  And I
15   still have not read it.
16              THE COURT:  All right.  And do you have any
17   position on whether the brief should be stricken?
18              MR. COOPER:  Your Honor, having not read
19   it, I don't have a position on that.
20              THE COURT:  All right.
21              MR. COOPER:  Thank you.
22              THE COURT:  Thank you, Mr. Cooper.
23              MR. COOPER:  Your Honor, while I'm here I'd
24   like to inform the Court that Mr. Castle is on the
25   phone.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Oh, okay.
 2            MR. COOPER:  I don't think that he -- I
 3   don't think the Court knew that.  But anyway, he's
 4   on.
 5            THE COURT:  All right.  I'll do that.
 6   Thank you, Mr. Cooper.  Let me get the people who are
 7   on the phone.  Mr. Castle, are you there?  Are you
 8   present, Mr. Castle?  Got your mute button on?
 9            MR. CASTLE:  Yes, Your Honor.
10            THE COURT:  How about you, Mr. Castle, do
11   you have -- did you read this response before it was
12   filed?  Mr. Castle?
13            MR. CASTLE:  Your Honor, I'm having
14   difficulty.  I don't know if the Court can hear me at
15   all.
16            THE COURT:  We can hear you now.  Did you
17   have an opportunity to read Mr. Benjamin's response,
18   or actually, it was the Defendants' Suggestion That
19   the Government is More Violent Than The Defendants.
20   That document, did you have a chance to read it
21   before it was filed?
22            MR. CASTLE:  No, Your Honor.  My
23   understanding is it was filed during court yesterday,
24   and I did not have an opportunity to review it.
25            THE COURT:  Will your responses to my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   questions be the same as for as the ones that I asked
 2   Mr. Cooper?
 3              MR. CASTLE:  Yes, Your Honor.
 4              THE COURT:  All right.  Mr. Lahann, do you
 5   want to come up to the podium here?
 6              MR. LAHANN:  And, I'm sorry, Your Honor, I
 7   haven't had a chance to say it; it's Lahann.
 8              THE COURT:  Lahann.
 9              MR. LAHANN:  Yes, Judge.
10              THE COURT:  I'll try to say that.  Now I'm
11   in a bad habit, so I'll try to get better at it.
12              Mr. Lahann, did you have a chance to read
13   this document before it was filed?
14              MR. LAHANN:  I did not.
15              THE COURT:  Do you have any thoughts about
16   it?
17              MR. LAHANN:  I have no thoughts, because I
18   did not read the brief before it was filed.
19              THE COURT:  And your position on the motion
20   to strike by the Government?
21              MR. LAHANN:  I take no position on that.
22              THE COURT:  All right.  Thank you, Mr.
23   Lahann.
24              MR. LAHANN:  Your Honor, may I address the
25   Albuquerque Journal article?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  You may.

 2          MR. LAHANN:  To my knowledge -- and I

 3  certainly wouldn't expect that anybody on the team

 4  would have somehow gone to the press with the

 5  information that was presented in that article.  I

 6  was aware of the article two days ago, when it was

 7  being passed from some of our clients, from one to

 8  another.  They were shocked in the way that they were

 9  portrayed in that article.  My client was very upset.

10  And so I pulled it up on the internet yesterday.  And

11  it bothered me, because I felt like -- and I told my

12  client it felt like this was not a seasoned court

13  reporter writing about what goes on in court.  It had

14  the point of view of somebody who seems to get all

15  their information about the criminal justice system

16  from what they see in the movies.  Just the way the

17  defendants were described.  It just -- it seemed

18  hyperbolic, Your Honor.

19          I can't see that any one of us would have

20  done that.  And maybe it's just confirmation bias in

21  the way that we read that article.  But it just would

22  seem greatly out of character for the people that

23  I've been working with.

24          THE COURT:  All right.  And did I ask you

25  your position on this motion, Mr. Lahann?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. LAHANN:  You did.  And I take no
 2    position.
 3              THE COURT:  All right.  Thank you, Mr.
 4    Lahann.
 5              Mr. Mondragon.
 6              MR. MONDRAGON:  Yes.
 7              THE COURT:  Did you have an opportunity to
 8    review this Defendants' Suggestion That The
 9    Government is More Violent Than The Defendants before
10    it was filed?
11              MR. MONDRAGON:  No, Your Honor.  I'm in the
12    same boat as Ms. Harbour-Valdez and Mr. Lahann.
13              THE COURT:  Do you have any thoughts about
14    the contents of it?
15              MR. MONDRAGON:  No, Your Honor.  I take no
16    position on the motion.
17              THE COURT:  And the Government's motion to
18    strike, do you have a position on it?
19              MR. MONDRAGON:  No, Your Honor.
20              THE COURT:  All right.  Thank you,
21    Mr. Mondragon.
22              MR. MONDRAGON:  Thank you, Your Honor.
23              THE COURT:  Is there anybody else on the
24    phone besides Mr. Castle?
25              MS. GLASSER:  Yes, Your Honor, Erin
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Glasser.

 2              THE COURT:  All right.  Ms. Glasser.

 3              Mr. Blackburn, come up to the podium.  Mr.

 4    Blackburn, did you have an opportunity to review this

 5    Defendants' Suggestion That the Government is More

 6    Violent Than Defendants before it was filed?

 7              MR. BLACKBURN:  No, Your Honor.

 8              THE COURT:  Do you have any thoughts about

 9    its contents?

10              MR. BLACKBURN:  No, Your Honor.  I knew it

11    was filed -- I knew it was being filed while we were

12    sitting here in the courtroom, because Mr. Benjamin

13    asked me if there was something wrong with the

14    internet, and if I had any ideas how to file -- to do

15    the e-filing.  So I knew it was filed.  I did not

16    read it before it was filed.  As I think everyone has

17    indicated before me, when all of these motions came

18    in, people were given assignments as to who would do

19    these motions.  And we have a sort of a trust issue

20    with everybody in this case, that they're going to

21    respond appropriately, and do what is necessary to

22    respond to that.  Because, otherwise, there is no way

23    that all of us can respond to every one of these

24    motions.

25              Mr. Benjamin agreed to take that particular
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    motion, that response.  He filed it.  I've agreed
 2    to -- for my name to go on those particular
 3    responses.  Did I read it?  No.  Did I know what it
 4    said?  No.  Have I read it?  No.  I take no position
 5    as to what the Court should do under the
 6    circumstances with that particular motion.
 7              THE COURT:  All right.  Thank you, Mr.
 8    Blackburn.
 9              MR. BLACKBURN:  I have -- can I respond to
10    the Albuquerque Journal article?
11              THE COURT:  You may.
12              MR. BLACKBURN:  The reporter who -- I did
13    not know who the reporter was, because I saw her
14    walking in the hallway for a couple of days --
15    actually, I thought she was the paralegal for the
16    Government -- came up and asked me how it was that a
17    lawyer like me -- no, how it was that my client, who
18    has been in custody, could afford a lawyer like me on
19    this case.  And I said that the case was a death
20    penalty case in the beginning.  I was appointed to
21    that, and I stayed on the case.  That was basically
22    the extent of that.  She asked another question about
23    motions.  And I said, if she wanted to see what the
24    motion was, that she could go online like everybody
25    else and review the -- because I think it was when
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Perez was on the stand.  And she had asked me

2    what the motion was about.  I said, You can just go

3    online and look at that, because I -- actually, this

4    was a conversation that took place maybe 15 or 20

5    seconds before we walked into court.  Obviously, we

6    wanted to get back in to be on time.

7            I was a little shocked when my wife opened

8    up the newspaper on Friday morning, or whenever it

9    was, Friday morning, and said, Oh, my gosh, did you

10   see this article?  And she was making more fun of the

11   fact that, out of the all the lawyers in this room,

12   who are great lawyers in this whole state, New Mexico

13   and Colorado and South Carolina, that she picked

14   myself and Ms. Sirignano, for some reason as -- to

15   talk about our reputation.  That made for quite a bit

16   of ribbing at some of the Christmas parties that we

17   went to this weekend, that I would be in that

18   particular article.  So I know that even though my

19   name was mentioned in there, my conversation with her

20   may have lasted 30 seconds at the most.  I did not

21   know who she was.  And actually, I think I gave her

22   card to Ms. Harbour-Valdez, because she knew who she

23   was because she covers this area down here.  But that

24   was the extent of that conversation.  I really

25   haven't read much of that article, other than to see

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    the one little paragraph in there that mentioned my
2    name and Ms. Sirignano's name.  So I wanted to report
3    that to the Court, that because my name was mentioned
4    in there, that doesn't mean that I was the one who
5    fed her any information.  That's not true.
6              THE COURT:  All right.  Thank you
7    Mr. Blackburn.
8              MR. BLACKBURN:  Thank you.
9              THE COURT:  Ms. Jacks?
10             MS. JACKS:  Good morning, Your Honor.
11             THE COURT:  Good morning, Ms. Jacks.  Did
12   you have a chance to look at this Defendants'
13   Suggestion That the Government -- get the exact title
14   here -- Defendants' Suggestion That the Government is
15   More Violent Than Defendants -- did you have a chance
16   to review that document before it was filed?
17             MS. JACKS:  No.
18             THE COURT:  Have any thoughts about it this
19   morning?
20             MS. JACKS:  I don't.
21             THE COURT:  Do you have a position on the
22   Government's motion to strike it?
23             MS. JACKS:  I'll submit.
24             THE COURT:  All right.  Thank you, Ms.
25   Jacks.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Mr. Jewkes, if you'll come up to the podium
 2     here.  Did you have a chance, Mr. Jewkes, to review
 3     this before it was filed?
 4              MR. JEWKES:  The motion, no, Your Honor.
 5              THE COURT:  I guess it's what Mr. Benjamin
 6     has called the response that the Defendants'
 7     Suggestion That the Government is More Violent Than
 8     Defendants.
 9              MR. JEWKES:  I have not reviewed it, Your
10     Honor.
11              THE COURT:  Do you have any thoughts about
12     it this morning?
13              MR. JEWKES:  No, Your Honor.
14              THE COURT:  Any position on whether it
15     should it be stricken or not?
16              MR. JEWKES:  Not having read the response,
17     Your Honor, I take no position.
18              THE COURT:  All right.  Thank you,
19     Mr. Jewkes.
20              Mr. Lowry.  Good morning, Mr. Lowry.
21              MR. LOWRY:  Good morning.
22              THE COURT:  Did you have a chance to review
23     this document before it was filed?
24              MR. LOWRY:  No, I didn't, Your Honor.
25              THE COURT:  Do you have any thoughts about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   it this morning?
 2              MR. LOWRY:  I do, Your Honor.  And I
 3   haven't read the document at all, frankly.  But I
 4   understand the tenor of the conversation this
 5   morning.  But I think it would be appropriate, maybe
 6   at this time for the Court to issue a gag order on
 7   all parties to not talk to the press.  I mean, this
 8   should be litigated in this courtroom, and not in the
 9   media, frankly, is my thought on it.
10              My practice, ever since I had my bar card,
11   has been not to litigate my cases in the media.  And
12   I think it's inappropriate to try to reach, you know,
13   a potential jury pool from either side.  And I think
14   there has been a lot of press in this case.  And I
15   would like to see it, you know, mollified to the
16   degree the parties have control over that.  So that
17   would be my request, Your Honor.
18              THE COURT:  All right.  Do you have a
19   position on the Government's motion that this
20   response should be stricken?
21              MR. LOWRY:  No, I don't, Your Honor.
22              THE COURT:  Thank you, Mr. Lowry.
23              Ms. Duncan, did you have a chance to review
24   this document, this Defendants' Suggestion That the
25   Government is More Violent Than the Defendants before
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   it was filed?

 2            MS. DUNCAN:  Your Honor, I did not review

 3   it before it was filed.

 4            THE COURT:  Do you have any thoughts about

 5   it this morning?

 6            MS. DUNCAN:  I've reviewed it now sitting

 7   here in court.  I understand the Court's concerns,

 8   but I also understand Mr. Benjamin's point.

 9            THE COURT:  Well, tell me -- because other

10   than what the title says, but I guess I'm trying to

11   figure out how that is maybe an appropriate response

12   to the Government's motion in limine about personal

13   information of the Government's witnesses.

14            MS. DUNCAN:  I think I understand Mr.

15   Benjamin's point about the Government and many

16   pleadings, including the one about personal

17   information, puts out in the public arena information

18   about our clients that's intended to scare the public

19   and the Court.  And so I see that he was trying to

20   respond to that, because it is unfair.  I understand

21   and share the Court's concern about putting so much

22   information about Mr. Acee in the front of it, but I

23   do --

24            THE COURT:  I mean, is it your sense it was

25   filed in frustration?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&
ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1           MS. DUNCAN:  I think that's probably fair.
2    And also I think to say that these issues need to
3    sort of be litigated on the law and the facts of this
4    case, and not on portraying the defendants as these
5    horribly violent people, for whom special rules
6    should apply.
7           So it may not have been drafted as artfully
8    as Mr. Benjamin would have wanted it to, but I think
9    that the point is a valid one.
10          THE COURT:  All right.  And your thoughts
11   on the position as to the Government's request that
12   this Defendants' Suggestion That the Government is
13   More Violent Than the Defendants, that -- their
14   motion to strike?
15          MS. DUNCAN:  I mean, I'm a little bit torn
16   between taking no position and opposing.  And I think
17   where I'm torn is I hear Mr. Castellano's point about
18   the media picking up on this motion, and I don't
19   think any of us want that to happen.  But, you know,
20   there has been a lot of negative press about our
21   clients taken from the Government's presentation.  So
22   standing up here right now, Your Honor, I'd have to
23   say I take no position.
24          THE COURT:  All right.  Thank you, Ms.
25   Duncan.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              Ms. Sirignano.  Ms. Sirignano, did you have
2    an opportunity to review this Defendants' Suggestion
3    That the Government is More Violent Than Defendants
4    before it was filed?
5              MS. SIRIGNANO:  I reviewed it about 10
6    minutes ago, Your Honor, during --
7              THE COURT:  But not before it was filed?
8              MS. SIRIGNANO:  No, Your Honor.
9              THE COURT:  Do you have any thoughts on the
10   Government's request or what we've been talking about
11   this morning?
12             MS. SIRIGNANO:  Your Honor, my only thought
13   is that Mr. Benjamin did what all the defense agreed
14   to, which was to circulate the pleading beforehand to
15   everybody.  And it was.  And no one responded to him
16   during that circulation.  So I take some
17   responsibility for not even looking at the
18   circulation and giving him some feedback on that, as
19   I was preparing, myself, for these hearings.  But we
20   do have a significant amount of trust with each
21   other.  And that was the agreement that we came to.
22             I take no position on the Government's
23   position.  I take no position on that motion, since I
24   just read it, Your Honor.
25             And I'd like to comment on the media.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Similar to Mr. Blackburn, during the break, the
2   afternoon break -- this Journal reporter was here for
3   a couple of days.  I didn't know who she was.  I've
4   never met her before.  Apparently, she was a reporter
5   on the border, Ms. Harbour-Valdez told me, for
6   another news outlet.  She approached me, gave me her
7   business card; you know, asked if I had any comments
8   about the informant and Mr. Perez on the stand.
9           And I said I couldn't comment.  Because in
10  Mr. Garcia's drug case, if you recall, we had a
11  gentlemen's agreement, so to speak, with the
12  Government and Mr. Garcia's defense, after I filed
13  the media motion, that we wouldn't talk to the press.
14  And I told her that straight out.  And I said, "I'm
15  sorry I can't talk to you, but, you know, all the
16  pleadings are in the record, and you're welcome to
17  pull up the pleadings."
18          So similar to Mr. Blackburn, I saw the
19  article.  And I was shocked because there were a
20  number of incorrect names.  And Mr. Castellano's name
21  was wrong.  And like Mr. Blackburn, we both got
22  ribbed really good for being two of the best defense
23  attorneys in the state, which I wouldn't agree with,
24  with my colleagues that are here, and from out of the
25  town.  So I was shocked when that article came out.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1   I did not disclose one bit of information to that

 2   reporter other than telling her that all the

 3   pleadings were online, Your Honor.

 4            THE COURT:  When you say "media motion,"

 5   what are you referring to?

 6            MS. SIRIGNANO:  If you recall the

 7   15-CR-4275 drug case.  I had filed a motion to bar

 8   extrajudicial statements in that case.  And during

 9   our hearings in the drug case, the parties agreed,

10   and a "gentlepersons' agreement" -- those were your

11   words -- that we would not talk to the media about

12   this case.  And I have not done that, Your Honor.  I

13   have not broken my word with that.  I hope you

14   understand that.

15            THE COURT:  All right.  And do you have a

16   position on the Government's motion to strike?

17            MS. SIRIGNANO:  I have no position, Your

18   Honor.

19            THE COURT:  All right.  Thank you, Ms.

20   Sirignano.

21            Mr. Adams.  And did you have an opportunity

22   to review the Defendants' Suggestion That the

23   Government is More Violent Than Defendants before it

24   was filed?

25            MR. ADAMS:  I had the opportunity.  I did

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                     (505) 843-9494
FAX (505) 843-9492                             FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    not read it.  I went back, when this conversation

 2    started this morning -- apparently, it was sent

 3    around on Friday.  I had a lengthy sentencing on

 4    Friday.  I didn't read it.  I should have, and I did

 5    not.

 6              THE COURT:  Do you have any thoughts about

 7    what we've been discussing this morning?

 8              MR. ADAMS:  I do have thoughts on it.  We

 9    have a working agreement among the defense lawyers.

10    And I want to support the defense lawyers in that

11    relationship.  And so the last thing I'd want to do

12    is throw Mr. Benjamin under the bus, when he sent it

13    around and asked us for input, and we didn't give it

14    to him.

15              I would say, if you're inclined to strike

16    it, or think it's an inappropriate filing, I

17    understand where you're coming from.  I think I would

18    ask if it's a friendly alternative, would be to allow

19    us to withdraw it, and either make amendments that we

20    all are participating in, or file it under seal, or

21    do something else, so that the thrust of what his

22    verbal statements to you on why he believed it was

23    relevant, that matter could still be pursued as he

24    sees fit.

25              THE COURT:  All right.  Thank you, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Adams.

 2              MR. ADAMS:  Thank you.

 3              THE COURT:  Mr. Maynard, did you have a

 4    chance to review this before it was filed?

 5              MR. MAYNARD:  I believe I had an

 6    opportunity, Your Honor, but I didn't get around to

 7    it.

 8              THE COURT:  All right.  And any thoughts

 9    about what we've been discussing this morning?

10              MR. MAYNARD:  Not any additional thoughts.

11    I understand -- I think it was done in part out of

12    the frustration.  The pleadings of the Government

13    have been implying that the defendants are dangerous

14    on an ongoing basis.  And I think counsel for the

15    defense has been feeling that's been exaggerated and

16    unfair.  And, of course, now the Government is

17    feeling offended.

18              And so, in any case, I have nothing really

19    additional to add.

20              THE COURT:  Do you take a position on their

21    request that it be struck, or --

22              MR. MAYNARD:  Well, basically, I kind of

23    agree with Mr. Adams' position, that perhaps in lieu

24    of that, an opportunity to withdraw and amend.

25              THE COURT:  All right.  Thank you, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Maynard.
 2              Ms. Bhalla?  Did you have a chance to
 3    review the Defendants' Suggestion That the Government
 4    is More Violent Than Defendants before it was filed?
 5              MS. BHALLA:  No, Your Honor, I did not.
 6              THE COURT:  And do you have any thoughts
 7    about what we've been discussing this morning?
 8              MS. BHALLA:  I do, Your Honor.  I think
 9    that I'm of a similar mind of Ms. Duncan.  I
10    understand why it was done.  And I understand the
11    sympathy.  My brother is a creative writer.  I think
12    he would have liked it.  I don't know that that --
13    you know, I understand the sentiment and I understand
14    why he did it, and I certainly want to support him in
15    that.
16              I do think, though -- I mean, I'm sort of
17    anticipating the Court's next question -- that
18    perhaps filing it under seal may be appropriate, or
19    some other remedy.
20              THE COURT:  You oppose the motion to
21    strike?
22              MS. BHALLA:  I don't know that I oppose it,
23    but I think there are other ways to deal with it,
24    Your Honor.
25              THE COURT:  All right.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. BHALLA:  And if I may --
 2              THE COURT:  You may.
 3              MS. BHALLA:  Your Honor, I wanted to put a
 4    little something on the record about the media.  We
 5    had talked as a group about dealing with that in a
 6    motion in limine.  And I contacted Mr. Beck about
 7    their position on that, so that we didn't have to
 8    file unnecessary motions.  And I think we all sort of
 9    came to a gentlemen's agreement on that issue.
10              And I was a little late in sharing that
11    agreement with everyone.  I think I sent it out -- I
12    think seeing the article, I was like, Oh, my gosh, I
13    need to send that out so everybody knows.  I
14    certainly don't think that anyone has violated that
15    agreement, based on the conversations we had today.
16    But I did want to put that on the record that I had
17    that conversation with the Government.  And I think
18    we are all willing to do that and willing to continue
19    doing that, Your Honor.
20              THE COURT:  Thank you, Ms. Bhalla.
21              Ms. Fox-Young.  And did you read the
22    Defendants' Suggestion That the Government is More
23    Violent Than Defendants before it was filed?
24              MS. FOX-YOUNG:  Good morning, Your Honor.
25    I did not.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Do you have any thoughts about
 2     what they've been discussing this morning?
 3            MS. FOX-YOUNG:  Your Honor, I know the
 4     Court's going to ask me if I oppose a motion to
 5     strike this pleading.  I think I do.  And I think a
 6     better remedy would be to seal it.  And I wouldn't
 7     oppose sealing it.  I think there is a lot of
 8     inflammatory, personal, sensitive information in this
 9     case.  And the parties -- one way that we've been
10     able to deal with that is to agree to seal pleadings,
11     or for the Court to intervene and seal pleadings.
12            THE COURT:  All right.  Thank you, Ms.
13     Fox-Young.
14            MS. FOX-YOUNG:  Just one further comment on
15     the issue of the press.  The Court is well aware that
16     this is a public courtroom, and we'll have a public
17     trial.  I don't think that the parties can do
18     anything to control access to the courtroom by the
19     press.  And I don't know what the Court has in mind.
20     But, you know, this is something that we're going to
21     have to deal with.  And I hope that the Court doesn't
22     think that the mere appearance of an article or any
23     press coverage of this case is an indication that the
24     defense has done something to inspire it.  You know,
25     I think we're going to deal with this in the coming
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    weeks, and we'll probably see reporters in here.  So
 2    that's just a consequence of having a public trial.
 3              THE COURT:  All right.  Thank you, Ms.
 4    Fox-Young.
 5              MS. FOX-YOUNG:  Thank you, Judge.
 6              THE COURT:  Mr. Roberts?  I guess it will
 7    be Ms. Torraco.  But she didn't sign it, so I'll move
 8    on.
 9              Ms. Arellanes, did you review the
10    Defendants' Suggestion That the Government is More
11    Violent Than Defendants before it was filed?
12              MS. ARELLANES:  Not before it was filed,
13    Your Honor.  I had read it last night.
14              THE COURT:  Do you have any thoughts about
15    what we've been talking about this morning?
16              MS. ARELLANES:  Judge, I thought the motion
17    was a little bit over the top but I would suggest --
18              THE COURT:  The motion or the defendants'
19    suggestion?
20              MS. ARELLANES:  The motion.
21              THE COURT:  The Government's motion.
22              MS. ARELLANES:  I beg your pardon?
23              THE COURT:  The Government's motion in
24    limine?
25              MS. ARELLANES:  No, the defendants' motion,
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492
                                                         e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    I'm sorry, was a little bit over the top.  What I
 2    would suggest to the Court -- I would echo Mr. Adams'
 3    suggestion, and that is to amend, and maybe perhaps
 4    more artfully address the issue.
 5              THE COURT:  All right, and -- okay.  Thank
 6    you, Ms. Arellanes.
 7              MS. ARELLANES:  Thank you, Your Honor.
 8              THE COURT:  Mr. Castellano, I'll give you
 9    the final word on your motion.
10              MR. CASTELLANO:  Related to my motion, a
11    number of people have referred to page 2 of our
12    motion which refers to Anthony Baca discussing the
13    murder of the cooperators' family, as well as finding
14    public officials' addresses.  That was actually
15    already public record from the James hearing.  Those
16    are statements already brought out.  That was not
17    additional information we filed in the pleading.  So
18    I need to make that point.
19              Related to the article, I read it briefly.
20    I saw there was a lot of inaccuracies in there.  We
21    had nothing to do with it.  And when I read it, I
22    didn't suspect that any of the defense team had
23    anything to do with it.  I thought it was a reporter
24    who just really didn't get it right at all, because
25    of all the inaccuracies in there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          But related to the motion, I would just ask

 2   that it be stricken.  If they want to file a separate

 3   response, that's fine.  But I just -- I would prefer

 4   very much that it not be on the docket, and not be

 5   accessible, especially by the press, given the

 6   contents of the document.

 7          THE COURT:  There has been a number of

 8   suggestions by some of the lawyers on behalf of some

 9   of the clients that it be sealed rather than

10   stricken.  Would that satisfy the Government?

11          MR. CASTELLANO:  Yes, if the Court is not

12   going to strike the pleading, that would be a viable

13   alternative, because then, once again, it would be

14   off the public record and away from the press.  I do

15   have my first preference, but that would be an

16   acceptable second choice.

17          Thank you, Your Honor.

18          THE COURT:  All right.  Thank you, Mr.

19   Castellano.

20          Mr. Benjamin.

21          MR. BENJAMIN:  Your Honor -- and I've

22   heard -- as I stood here in front of the Court

23   earlier and told the Court that I didn't think I

24   wasn't conveying things very well -- I've heard many

25   people articulate things much more eloquently than I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   can.  And I guess I need to tell the Court that,
 2   obviously, I think the Court appears bothered by the
 3   title of the motion -- or the response.  I can
 4   understand that, Your Honor.  But I do think a very
 5   valid suggestion is because I don't have any desire
 6   in this -- my goal in this response was not to have
 7   this attract press or attract attention that way.  So
 8   I guess I would move to seal -- essentially, I think
 9   you have to seal the motion and the response -- but I
10   would move to seal that.  I think that, if I'm
11   understanding the Government's position correctly,
12   that would seal or would -- excuse me, I'm
13   tongue-tied -- that would end their concern about it
14   being public record.
15          My issue is not that it become public
16   record so much as my issue was raising what I believe
17   have been the characterizations.  And so, you know,
18   to the extent that the Court may have changed its
19   opinion of me based upon that writing, I apologize to
20   the Court and the Government, Your Honor.  And I also
21   take full responsibility, Your Honor, for the
22   drafting of that, and also attaching everybody else.
23          Thank you, Your Honor.
24          THE COURT:  Thank you, Mr. Benjamin.
25          MR. BENJAMIN:  Yes, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Anything further, Mr.
 2   Castellano?
 3              MR. CASTELLANO:  No, Your Honor.
 4              THE COURT:  Who just got on the phone?
 5   There was somebody that came on the phone.  Who just
 6   got on?
 7              THE CLERK:  It's K'Aun, Judge.
 8              THE COURT:  All right.  Good morning to
 9   you, Ms. Wild.
10              THE CLERK:  Good morning.
11              THE COURT:  Let me ask across the board:
12   Do any of the defendants oppose sealing this
13   document?  Not hearing anybody, I'll assume that no
14   defendants, including all the defendants and lawyers
15   that actually joined this motion, do not oppose
16   sealing it.
17              How do you feel, Mr. Castellano, about Mr.
18   Benjamin's request that the Government's motion also
19   be sealed on this; that the pleadings on both sides
20   of this be sealed?
21              MR. CASTELLANO:  I think it's fine, Your
22   Honor.  It's already a resolved issue in this case.
23   There is no objection to that.
24              THE COURT:  All right.  So that I am as
25   evenhanded as I can be here, I will seal both -- what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I thing is 1520 -- is that your motion, Mr.

2    Castellano?

3              MR. CASTELLANO:  It is, Your Honor.

4              THE COURT:  So 1520 and 1586 will be

5    sealed.  And the reason I do that is because I think,

6    as we get a little closer to trial, maybe we don't

7    need some of this information being reported in the

8    press.  I think it will make it harder for everybody

9    to try it.  It is part of the record.  And we'll

10   leave it there.  But we won't necessarily have it

11   floating around, making it more difficult to try the

12   case.

13             Let's just be careful.  I mean, this is

14   going to be a difficult month for everybody.  They're

15   going to get frustrated.  There is going to be

16   feelings that, you know, because somebody does this,

17   I've got to do this in response.  I think, by and

18   large, y'all have been pretty good about avoiding

19   that, and trying to avoid it.  It's very difficult in

20   a case like this for there to be moral equivalency on

21   both sides.  We all know in our system the Government

22   gets to charge people with crimes.  And we know

23   that's a very serious thing.  They have a lot of

24   responsibilities when they do that.  As a result, we

25   put a lot of bennies and benefits on the defendants'

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

**BEAN
&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1   side to try to make sure that the charges are
2   resolved as fairly and impartially as we possibly
3   can.  I think everybody in the room is aware that
4   we've got to pick a jury here in about 39 days.  And
5   I don't think it's in any of us' benefit to make that
6   job more difficult for anybody.  I don't think
7   anybody gains anything.  The Court doesn't get
8   anything out of it by making it more difficult.  And
9   the Government doesn't gain anything.  They're
10  wanting to get this thing to trial.  So they don't
11  gain anything and, I don't think the defendants gain
12  anything by getting stuff in the press.  As the
13  article that's there, I mean, you know, talking about
14  some of the testimony from last week, I don't think
15  that helps the defendants.
16          So, you know, we've got a little issue here
17  we've dealt with, and we'll move on.  But just give
18  some thought about everything you write and
19  everything you say, be it in the courtroom, outside
20  of the courtroom, that we've all got to work together
21  to get this thing to a resolution, and we can do
22  things that make it more difficult, or we can do some
23  things and check our frustrations and make sure that
24  what we're responding to is really responsive to the
25  briefing, rather than not.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        When I read the response, I was surprised

2    by it.  I kept thinking that maybe there was

3    something that I was missing, because I couldn't

4    figure out how it responded.  Then, when we discussed

5    the motion in limine in here, we came to a resolution

6    so quickly.  And when I reread the response, I still

7    had a hard time figuring out how it responded to the

8    motion.  And so just be careful in the sense that --

9    try to help the Court do its job.  If I read

10   things -- and I do try to work very hard to read

11   everything and make sure I'm prepared -- that it's

12   helpful to the Court.  It's really helping the Court

13   make a decision rather than it just being information

14   that:  If they're going to slander me, I'm going to

15   slander them.

16        It's hard in these sort of cases for there

17   to be moral equivalency.  It's just the nature of the

18   proceedings.  So I think we have to sort of check

19   those impulses and be very careful.  So I'll deny the

20   Government's motion to strike, but pursuant to the

21   stipulation of the parties, the motion and the

22   response will be placed under seal.

23        There was some suggestion of a gag order.

24   I guess I am always reluctant to place gag orders in

25   place.  There is a First Amendment in this country.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    And there is a lot about this case already in the

2    press.  So unless somebody wants to really go down

3    that path, I would suggest we not.  But if that's

4    where y'all want to go, then I'll certainly entertain

5    a formal motion on that and not prejudge it.  There

6    does seem to be some discussion among the parties

7    that at this point going forward, there will be no

8    discussions with the press.  And, perhaps, it would

9    be useful to see if there is a gentlemen's and

10   gentleladies' agreement among the counsel that

11   they're not going to talk to the press.  And if there

12   is, that might be useful to put on the agreement.  As

13   I've indicated, I will enforce stipulations among the

14   parties.

15           Mr. Castellano, what's the Government's

16   thoughts on that?

17           MR. CASTELLANO:  We would agree to that,

18   Your Honor.

19           THE COURT:  The defendants, some brought it

20   up, some suggested it; is there any defendant,

21   defendant's lawyers, defendant's counsel that are not

22   here, or they're here, that you know of, that would

23   not agree to such a stipulation?

24           All right.  I'm going to take that that

25   there is now an agreement in this case, 39 days out

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    from the trial, that there will be no discussion
2    among the lawyers or parties with the press.  So that
3    will be an agreement among the parties, and I'll
4    certainly enforce that.  If we're challenged by that
5    on the press, then we'll deal with it at that time.
6    But I think at the present time it's agreement among
7    the parties.
8              MR. CASTLE:  Your Honor, this is Jim
9    Castle.  I'm wondering if I could make a couple of
10   comments.
11             THE COURT:  Certainly, Mr. Castle.
12             MR. CASTLE:  Yes.  First of all, now that
13   I've had an opportunity to review the motion by Mr.
14   Benjamin, my only comment is that my name is on that
15   motion, and so I'm as responsible for it as -- even
16   more responsible for Mr. Benjamin, because it was
17   myself and a couple of others who suggested we divvy
18   up motions.  So if there is any fault to be laid, I
19   want the Court to know that I accept that
20   responsibility.
21             But the second matter I'd like to bring up
22   is we're about to go into motions in limine
23   concerning our clients' alleged bad acts.  And in
24   that -- in those pleadings, the prosecution has set
25   forth a litany of bad acts, ranging from the minor to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    grand.  And I don't believe those are sealed.  And in
 2    the interests of having a fair trial for the
 3    defendants, as well as the Government, I believe
 4    those responses, if they're not suppressed from
 5    public view, should be at this time.
 6              THE COURT:  Well, I'm getting concerned
 7    here.  These are public proceedings.  And I have
 8    resisted everything being filed under seal.  I'm just
 9    going to leave the two documents we talked about
10    unsealed; just hope that the press is not interested
11    in the one that was filed.  But I'm not going to sit
12    here and start sealing stuff that -- keeping from the
13    press the information.  So if y'all want to talk
14    about it afterwards -- but I think to start just
15    sealing stuff willy-nilly, where we are in this case,
16    I'm reluctant to do it.
17              So I'm going to deny the request to seal
18    documents that have been filed publicly.  I'm going
19    to deny the request to strike.  I'm going to deny the
20    request to file under seal.  And we're just going to
21    move on with the case.
22              All right.  Did you have anything, Mr.
23    Blackburn?
24              MR. BLACKBURN:  Just briefly, Your Honor.
25    I've spoken to Mr. Castellano, and I think it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    important that all of the defendants and the lawyers
 2    meet to discuss this; not that we have any issue with
 3    the semi gag order.  But, you know, it puts us in a
 4    bad position, as you well know, when somebody from
 5    the press comes up and says:  What about this?  Are
 6    you taking -- when is this motion going to be heard?
 7    So I think that we sort of agree that there shouldn't
 8    be any comment on any substantive matter.  But we
 9    would like to formulate that with the Government, and
10    also maybe formulate how we would deal with these
11    issues that we're talking about this morning, if we
12    can agree as to something as to those motions,
13    whether they be sealed or otherwise.
14              So we agree -- I mean everybody in this
15    room has done enough of these trials to know not to
16    comment on any substantive matters.  But at the same
17    time, we want to formulate that and make clear that
18    everybody on the defense side knows that, and come to
19    an agreement with the Government.  Does the Court
20    understand what I'm trying to get at?
21              THE COURT:  Do you agree with that, Mr.
22    Castellano?  You'll work on an agreement before we
23    put one together this morning?
24              MR. CASTELLANO:  Yes, Your Honor.
25              THE COURT:  Anybody have any disagreement
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    with that?  Mr. Cooper?
 2              MR. COOPER:  No, Your Honor.
 3              THE COURT:  Mr. Adams.
 4              MR. ADAMS:  No, sir, Your Honor.
 5              THE COURT:  All right.  Are we ready to
 6    take up the FBI agent for his testimony or her
 7    testimony?
 8              MR. BECK:  Your Honor, the United States
 9    asks the Court to consider reconsidering the motion
10    to strike.  I think the Court is right to point out
11    that that does not respond to a motion.  What I glean
12    from that is that they don't oppose our motion in
13    limine to not get into personal information about
14    witnesses.  And I think a proper response would be
15    that:  They don't oppose that.
16              THE COURT:  I'll think about it.  But at
17    this point, I'm not granting the Government's
18    request.
19              All right.  Do you have your witness on the
20    motion to suppress Eric Duran's recordings?
21              MR. BECK:  Yes, Your Honor.
22              MR. CASTELLANO:  The witness will be
23    Special Agent Brusuelas with the FBI.
24              THE COURT:  Ms. Brusuelas, if you'll come
25    up and stand next to the witness box on my right,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   your left.  Before you're seated --
 2             MS. HARBOUR-VALDEZ:  Your Honor, is this
 3   1325 or 1328?
 4             MS. DUNCAN:  1325, which is our motion to
 5   suppress Eric Duran's testimony and statements.
 6             THE COURT:  All right.  If you'll raise
 7   your right hand.  Before you're seated, my courtroom
 8   deputy, Ms. Standridge, will swear you in.
 9                  KATHERINE BRUSUELAS,
10       after having been first duly sworn under oath,
11       was questioned and testified as follows:
12                   DIRECT EXAMINATION
13             THE CLERK:  Please be seated.  State and
14   spell your name for the record.
15             THE WITNESS:  My name is Katherine
16   Brusuelas, K-A-T-H-E-R-I-N-E.  Brusuelas is
17   B-R-U-S-U-E-L-A-S.
18             THE COURT:  Ms. Brusuelas, Mr. Castellano.
19             MR. CASTELLANO:  Thank you, Your Honor.
20             THE COURT:  Let me ask, on this particular
21   motion there was some debate in the motion itself as
22   to who had the burden of proof.  I didn't quite
23   understand Mr. Baca's response.  Are you in
24   agreement, Ms. Duncan, that on this motion the
25   defendant has the burden of proving that a third
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

 1   party's statements and actions were involuntary?

 2           MS. DUNCAN:  Yes, Your Honor.  I think that

 3   there are two different issues.  There is -- one is

 4   are Eric Duran's statements and his testimony

 5   involuntary?  On that, I do believe that the Tenth

 6   Circuit law is that the defense bears that burden.

 7           The second question is whether Mr. Duran's

 8   decision to record -- consensually record statements

 9   is voluntary.  And my understanding of Tenth Circuit

10   law is that the burden is on the Government to make

11   that showing.

12           THE COURT:  Do you agree with that, Mr.

13   Castellano?

14           MR. CASTELLANO:  I think so, is my best

15   answer.  I'm looking at the Dowell case.  It's 430 F.

16   3d 1100, 2005, Tenth Circuit.

17           THE COURT:  If the question is what -- if

18   you're saying that the Government has the burden of

19   proof of showing that Mr. Duran's actions in

20   recording Mr. Baca, that the Government has to prove

21   those were voluntary, what burden are you assuming on

22   behalf of Mr. Baca?

23           MS. DUNCAN:  So my understanding is that

24   because Mr. Duran's statements to law enforcement --

25   so, for example, Agent Brusuelas participated in an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    interview with Mr. Duran in February of 2015.  So our
2    argument is that those statements were coerced, and
3    that his statements after that, continuing to his
4    trial testimony, are coerced.  And it's my
5    understanding because Mr. Duran is not a defendant,
6    that we bear the burden of showing that those
7    statements and testimony are coerced.
8              THE COURT:  So you're assuming the burden
9    on his statements, but on his actions in recording,
10   you think that remains with the Government?
11             MS. DUNCAN:  That's correct.  I think
12   that's what the cases hold.
13             THE COURT:  And you're uncertain of that?
14             MR. CASTELLANO:  I'm not sure I agree with
15   that, Your Honor.  I'm look at the Dowell case.  And
16   I do agree, if we're introducing the defendant's
17   statement, we have to establish voluntariness.
18             THE COURT:  I think they're agreeing that
19   on the statements of Mr. Duran they bear the burden.
20   The only burden that they're saying remains or is
21   shifted or with the Government is the one on whether
22   Mr. Duran's actions in recording Mr. Baca were
23   voluntary.
24             MR. CASTELLANO:  I think we're going to
25   establish that they were voluntary.  But I'm still
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    not convinced that that's the burden.  In the Dowell
 2    case, the defendant failed to meet the burden of
 3    presenting sufficient evidence to create a serious
 4    factual dispute, suggesting that Sherman's confession
 5    to police was involuntary.  And when a defendant
 6    makes a motion to exclude coerced testimony of a
 7    third party on due process grounds, the burden of
 8    proving improper coercion is upon the defendants.  So
 9    actually two things happen.  One is what happened at
10    the time, and the other is actually what happens at
11    trial.  Is the person's testimony at trial coerced or
12    not?  And, of course, we won't get there until trial.
13    But --
14              THE COURT:  But you have no problem
15    proceeding first with your evidence?
16              MR. CASTELLANO:  No, no problem at all,
17    Your Honor.  We had Agent Brusuelas here, so we
18    figured we'd put her on.  So we are prepared to go
19    first.
20              THE COURT:  All right.  Mr. Castellano.
21              MR. CASTELLANO:  And, Your Honor, in terms
22    of marking exhibits, are we going to ahead and
23    start --
24              THE COURT:  We're starting with a new
25    motion.  Unless anything is being pulled over into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    this one, let's keep it separate.  So why don't you
 2    start with Government's Exhibit 1 unless there is
 3    something, some other hearing that I need to look at
 4    for this motion.
 5              MR. CASTELLANO:  We're fine.  We'll start
 6    with Government's Exhibit 1 this morning.
 7                         EXAMINATION
 8    BY MR. CASTELLANO:
 9         Q.   Good morning.
10         A.   Good morning.
11         Q.   How are you employed?
12         A.   I am currently a Special Agent with the
13    Federal Bureau of Investigations.
14         Q.   How long have you been a Special Agent?
15         A.   A little over 21 years.
16         Q.   And let me take you back to February 25 of
17    2015.  What were your responsibilities during that
18    timeframe?
19         A.   I was assigned to work gangs and drugs.
20    And I was also assigned to work a new prison
21    initiative that the FBI was starting up.
22         Q.   What were your responsibilities related to
23    that initiative?
24         A.   I would go to the different Department of
25    Corrections facilities in Albuquerque and speak with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   them.  I would go up to the Santa Fe -- the PNM

2   facility once to twice a week.

3         Q.   For what purpose?

4         A.   I would work with the STIU investigators up

5   there.  And I would investigate any drugs and things

6   that were being brought into the prison by corrupt

7   guards or inmates that were willing to cooperate, or

8   just things that were happening in the prison.

9         Q.   I want to ask you if on February 25 --

10  excuse me, February 19, 2015, you met with someone

11  named Eric Duran?

12        A.   Yes.

13        Q.   How is it that you came to meet him?

14        A.   Captain Sapien had come to me, at least a

15  week or so prior to that date, and informed me that

16  there was an individual in the facility that wanted

17  to come forward and cooperate on unsolved homicides

18  and different drugs and things, large volume of drug

19  dealing throughout the Albuquerque area.

20        Q.   You mentioned the call happened

21  approximately a week prior to your meeting.  What

22  explains the gap, or what took you that amount of

23  time to meet Mr. Duran?

24        A.   The logistics.  We had to find a facility

25  where we could do the interview and get him

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                       Albuquerque, NM 87102
(505) 989-4949                                                                           (505) 843-9494
FAX (505) 843-9492                                                                       FAX (505) 843-9492
                                                                                         1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                                         e-mail: info@litsupport.com

```
 1    transported to that facility.  And I was also having
 2    other detectives sit in on the interview who might be
 3    familiar with the different homicides.
 4         Q.   Do you know if the interview was recorded?
 5         A.   Yes, it was.
 6         Q.   And was a transcript made from that
 7    recording?
 8         A.   Yes.
 9              MR. CASTELLANO:  May I approach the
10    witness, Your Honor?
11              THE COURT:  You may.
12         Q.   Agent Brusuelas, I'm handing you what's
13    been marked for identification as Government's
14    Exhibit 1.
15         A.   Okay.
16         Q.   Do you recognize that exhibit?
17         A.   Yes.
18         Q.   Is that a transcript of at least part of
19    that conversation?
20         A.   Yes.
21              MR. CASTELLANO:  Your Honor, I'd move the
22    admission of Government's Exhibit 1.
23              THE COURT:  Any objection, Ms. Duncan?
24              MS. DUNCAN:  Your Honor, I have no
25    objection.  I would note for the record that this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   transcript is incomplete.  But we will be adding --
 2   it doesn't capture about 35 minutes of the interview.
 3   So we'll be submitting a more full transcript later
 4   in these proceedings.
 5             THE COURT:  All right.  Thank you,
 6   Ms. Duncan.
 7             Anybody else have any objection to
 8   Government's Exhibit 1?
 9             MS. JACKS:  No.  Just for the record, could
10   we have the Bates stamp number?
11             MR. CASTELLANO:  Yes, it's 31520 of DeLeon.
12             THE COURT:  Any other objection, comments?
13   Government's Exhibit 1, not hearing any objection,
14   will be admitted into evidence.
15   BY MR. CASTELLANO:
16        Q.  Agent Brusuelas, I would introduce the
17   exhibit, but for purposes of your testimony I'm going
18   to talk about a highlighted version of that exhibit
19   for ease of your testimony.  But as part of your
20   meeting with Mr. Duran, how was it that you were
21   introduced to him?
22        A.  Captain Sapien introduced us as an
23   individual who had information that wanted to come
24   forward and provide that information to the FBI.
25        Q.  I'm showing you the first page of that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    document.  It's page 31520.  Do you recall discussion

2    about Mr. Duran's motivation for being there at the

3    meeting?

4         A.   Yes.

5         Q.   Was there any indication to you by him that

6    he was in any type of trouble?

7         A.   No.

8         Q.   And, basically, what was his motivation for

9    being there?

10        A.   His motivation -- when he was asked early

11   on in the interview, he informed that he felt it was

12   part of his rehabilitation; that he needed to come

13   forward and cooperate.  There were a lot of bad

14   people out there that were getting away with murder.

15   And he wanted to help and do his part.  He felt like

16   he had taken so much from the community, and now he

17   wanted to give back.  And he also had a trust for the

18   STIU investigators, both Investigator Cupit and

19   Captain Sapien.

20        Q.   I'm showing you page 31521.  There is

21   mention of someone named Anthony Baca?

22        A.   Yes.

23        Q.   Did you know that name when you met with

24   Mr. Duran?

25        A.   Yes, I did.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    How did you know that name?

 2        A.    From prior investigations.

 3        Q.    And what was your recollection of what you

 4   knew about Mr. Baca at that point in time?

 5        A.    He was one of the leaders of the prison

 6   gang, SNM.

 7        Q.    And did Mr. Duran discuss other members or

 8   leaders of the gang?

 9        A.    Yes, he did.

10        Q.    And you mentioned a discussion of murders.

11   I'm showing you page 31526, and there is the name

12   Javier Molina on that page.  Do you recall that

13   discussion?

14        A.    Yes.

15        Q.    Now, before this time, did you know

16   anything about the Javier Molina murder?

17        A.    I did not.

18        Q.    So who was the information coming from at

19   that point in time?

20        A.    Mr. Duran.

21        Q.    And do you see where he says that Mr. Baca

22   called it?

23        A.    Yes.

24        Q.    For what reason?

25        A.    For Molina's cooperation with law
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   enforcement prior.

 2        Q.   I'm showing you page 31527.   Do you see

 3   there an indication of how the paperwork traveled in

 4   this case?

 5        A.   Yes.

 6        Q.   How did that happen?

 7        A.   The paperwork came from Santa Fe from an

 8   individual named David Calbert, and it went down to

 9   this facility in Las Cruces.

10        Q.   Turning to page 53128 of that exhibit.

11   I've also highlighted a portion here.   Was Mr. Duran

12   able to lay out more of the murder and some of the

13   other participants in that murder?

14        A.   Yes, he was.

15        Q.   And looks like it may be misspelled, but

16   there is a person identified as Archie?

17        A.   Yes.

18        Q.   And do you see the name "Dan Dan" there?

19        A.   Yes.

20        Q.   At that point in time did you know who "Dan

21   Dan" was?

22        A.   I did not.

23        Q.   What about the person named Mario?

24        A.   I did not.

25        Q.   And how about Jerry Armenta?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   I did not.
 2          Q.   So from what you recalled, did you mention
 3    these names first or did Mr. Duran?
 4          A.   Mr. Duran.
 5          Q.   Do you recall him -- this is page 31532 --
 6    do you recall him discussing the murder of someone
 7    named Freddie Sanchez or "Fred Dog"?
 8          A.   Yes.
 9          Q.   And was Mr. Duran able to tell you who he
10    believed called that murder?
11          A.   Yes.
12          Q.   Who was that person?
13          A.   Arturo Garcia.
14          Q.   And the same question regarding this
15    murder.  Did you know anything about this one
16    beforehand?
17          A.   I did not.
18          Q.   Did Mr. Duran further explain to you who
19    else was involved with this murder?
20          A.   Yes, he did.
21          Q.   Do you see the name Benjamin Clark there?
22          A.   Yes.
23          Q.   What was his explanation of what happened
24    with Mr. Clark's involvement?
25          A.   Mr. Clark, I believe, was the one that was
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   supposed to enforce that it occurred.
 2        Q.   And on page 31536 of this exhibit, there is
 3   a question about who actually killed Freddie.  Do you
 4   see what Mr. Duran's response was?
 5        A.   Yes.
 6        Q.   Who was that?
 7        A.   "Wino."
 8        Q.   And did you know who "Wino" was at that
 9   point?
10        A.   I did not.
11        Q.   And do you see any other name tied to the
12   name "Wino"?
13        A.   Yes.
14        Q.   Who was that person?
15        A.   That would be Alonso.
16        Q.   And what about discussion of another person
17   involved with the Freddie Sanchez murders?
18        A.   Yes, he gave the name Edward Troup.
19        Q.   And, ultimately, did someone ask him how he
20   actually knew this information?
21        A.   Yes.
22        Q.   What was Mr. Duran's response to how he
23   knew this?
24        A.   He was present when Arturo gave the hit.
25        Q.   Do you remember discussion of a person
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   named Sammy Chavez?
 2        A.   Yes.
 3        Q.   Did you know anything about that person
 4   before your discussions with Mr. Duran?
 5        A.   I did not.
 6        Q.   And do you see the name there of who he
 7   believed called that hit as well?
 8        A.   Yes.
 9        Q.   Who was that person?
10        A.   That was also Arturo.
11        Q.   Do you remember discussions of
12   Mr. Santistevan or Mr. Marcantel?
13        A.   Yes.
14        Q.   At that point in time, did you know who
15   either of those people were?
16        A.   I did.
17        Q.   Who was your understanding of who
18   Mr. Santistevan was?
19        A.   Mr. Santistevan was -- he worked for the
20   Department of Corrections.  He was actually one of
21   the supervisors that was head of the STIU.
22        Q.   What about Mr. Marcantel?
23        A.   Yes, Mr. Marcantel was the main guy over
24   there.
25        Q.   And what did Mr. Cordova (sic) explain to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  you about the way "Pup," or Mr. Baca, the way he felt

 2  about those people?

 3      A.   He said he hated them, hated both of them.

 4           THE REPORTER:  Did you mean to say Mr.

 5  Cordova?

 6           MR. CASTELLANO:  Mr. Duran, excuse me.

 7      Q.   And so at that point was it your

 8  understanding that there was some sort of threat to

 9  either Mr. Marcantel or Mr. Santistevan?

10      A.   Yes.

11      Q.   At that point in time, did Mr. Duran tell

12  you approximately how much time he had left in

13  prison?

14      A.   He had approximately two years.

15      Q.   Did Mr. Duran discuss narcotics

16  trafficking?

17      A.   Yes, he did.

18      Q.   And how would he describe himself as a

19  narcotics trafficker?

20      A.   Mr. Duran had received a settlement, a

21  large amount of money, and he was able to purchase

22  large quantities of narcotics.  So he said he had a

23  very good reputation for being a money man and being

24  a businessman, and he had lots of contacts that sold

25  large quantities of narcotics.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   Did he show an interest in cooperating

2   either against the SNM Gang or against other drug

3   dealers?

4      A.   Yes, he did.   He wanted to cooperate both

5   while he was in prison, and then once he was

6   released, when he was out on the streets.

7      Q.   Let me show you another indication on page

8   31554 about Mr. Duran's discussions about whether he

9   was in trouble, or thought was in trouble?

10     A.   Yes, several times throughout the

11   interview, he had mentioned that a lot of people do

12   come forward when they're in trouble.   But he was not

13   in trouble, so he was coming forward because he

14   wanted to.   He wanted to have a long-term working

15   relationship with us.

16     Q.   And on page 31555, there is a discussion

17   about Mr. Duran having written a note?

18     A.   Yes.

19     Q.   What did you know about that note?

20     A.   My understanding is there were a couple

21   notes written.   One was to Captain Sapien informing

22   him that he wanted to cooperate with the FBI.   And

23   then he began to draft another note to the FBI about

24   cooperation he wanted to help with.   But when they

25   did a search of the different cells, that note was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    recovered and taken with all his property.
 2         Q.   Did you ever see any of those notes?
 3         A.   I did not.
 4         Q.   Were you ever contacted because he had
 5    written one of those notes?
 6         A.   Yes.
 7         Q.   Is that the contact that got you to the
 8    prison in the first place?
 9         A.   Yes.
10         Q.   And about how long before this meeting were
11    you notified that Mr. Duran wanted to meet with you?
12         A.   It was several weeks before we actually
13    met.
14         Q.   On page 31557 of that exhibit, do you see
15    there is discussion of a cellphone here?
16         A.   Yes.
17         Q.   Was it your understanding that a cellphone
18    had been confiscated from Mr. Duran?
19         A.   Yes.
20         Q.   And at this point did it appear that
21    Captain Sapien had any information about whether or
22    not Mr. Duran had been sanctioned for that?
23         A.   No, he was not aware of it.
24         Q.   On page 31558, I've highlighted a portion
25    here.  What was Mr. Duran explaining to you about the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    various roles of the various players in the Molina
 2    murder?
 3         A.   He was describing which individuals, what
 4    his participation was, who had the shanks, and who
 5    did what.
 6         Q.   And do you see any discussion about cameras
 7    here at the bottom of that paragraph?
 8         A.   Yes.
 9         Q.   What was the discussion about the cameras?
10         A.   The cameras were supposed to be covered
11    during the time that the murder took place.
12         Q.   And were they?
13         A.   No, they were not.
14         Q.   On page 31566, there is a discussion about
15    Mr. Duran's property, including his television.  What
16    can you tell us about that part of conversation?
17         A.   Mr. Duran was hoping that by his
18    cooperation he might be able to get commissary again,
19    and maybe get back some of his property.  This
20    discussion here was -- he didn't -- he wasn't asking
21    for TVs or any other kind of electronics or anything.
22    And he wanted a lot of that stuff withheld so it
23    would look like he was still in some type of trouble.
24         Q.   Now, when you met with Mr. Duran, was there
25    any discussion of an incident he had with a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    corrections officer the day before?
 2         A.   No, there was not.
 3         Q.   Was there an indication that he might be
 4    sanctioned for whatever happened the day before?
 5         A.   No.
 6         Q.   Did you know what happened the day before?
 7         A.   No.
 8         Q.   Did anyone there discuss what happened the
 9    day before?
10         A.   No.
11              MS. SIRIGNANO:  Objection, leading.
12              THE COURT:  Overruled.
13         Q.   Did anybody threaten Mr. Duran?
14         A.   Not that I was aware of, not during the
15    interview.
16         Q.   Did anyone say:  If you don't cooperate,
17    there will be consequences?
18              MS. SIRIGNANO:  Objection, leading.
19         A.   No.
20              THE COURT:  Overruled.
21         A.   Several times through the interview he
22    discussed what he provided to the FBI and how he
23    wanted to provide information.  And he wanted it to
24    be a long-term relationship.  Once he got out of the
25    incarceration, he would help on the streets.  He had
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    lots of contacts.  He realized it would put himself
 2    in danger, and he was okay with that.  He just wanted
 3    to help out since he had done so many bad things
 4    prior.
 5         Q.   And were you aware at that meeting of any
 6    of the corrections officers indicating that Mr. Duran
 7    was in any type of trouble?
 8         A.   They did not indicate at all during that
 9    interview.
10         Q.   After this meeting, did you agree to open
11    up Mr. Duran as a cooperator or a confidential human
12    source?
13         A.   Yes.
14         Q.   And about how long after this meeting did
15    that happen?
16         A.   It was about a month after.
17         Q.   And what did you do as part of that
18    meeting; in other, words was he admonished in any
19    way?
20         A.   Yes, he was.  He was informed that all the
21    information he would be providing would be voluntary.
22    He needed to be truthful in all information he
23    provided.  He had to follow any rules that we had for
24    him.  And we would try to protect his identity.  We
25    also let him know that he wouldn't be an employee of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    the federal government.  He could not enter into any
2    contracts.  And he could not do anything on behalf of
3    the Government without prior authorization.  He was
4    informed that he wasn't having any promises made as
5    to immunity.  And that any payments he received -- he
6    wouldn't be promised any payments, but if he received
7    any, he'd have to pay taxes.
8         Q.   And are those general admonishments you
9    give to people who agree to cooperate with the FBI?
10        A.   Yes.
11        Q.   And during -- after that happened, did
12   Mr. Duran make any recordings in the prison system?
13        A.   Yes, he did.
14        Q.   And did Mr. Duran remain a source under
15   you, or was he ever transferred to anyone?
16        A.   After a couple of months, he was
17   transferred to another agent.
18        Q.   Who was that agent?
19        A.   That would be Agent Bryan Acee.
20             MR. CASTELLANO:  May I have a moment, Your
21   Honor?
22             THE COURT:  You may.
23             MR. CASTELLANO:  I pass the witness, Your
24   Honor.
25             THE COURT:  Ms. Duncan, why don't I start
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    with you.  Do you have cross-examination of Ms.
 2    Brusuelas?
 3              MS. DUNCAN:  Thank you, Your Honor.
 4              THE COURT:  Ms. Duncan.
 5              MS. DUNCAN:  May I just have a moment to
 6    get organized?
 7              THE COURT:  Certainly.
 8                          EXAMINATION
 9    BY MS. DUNCAN:
10         Q.   Good morning.
11         A.   Good morning.
12         Q.   You've testified that Captain Sapien
13    contacted you about a week before you met with
14    Mr. Duran; is that correct?
15         A.   That's correct.
16         Q.   And how did he contact you?
17         A.   I was up at the facility once to twice a
18    week to see what was going on, and see what kind of
19    activities are happening that we could take on the
20    federal level.  So while I was up there at the PNM
21    facility.
22         Q.   And did you produce a report or any written
23    document to document that conversation?
24         A.   With Captain Sapien?
25         Q.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No.

 2        Q.   What do you recall specifically about that

 3   particular conversation?

 4        A.   I don't recall exact details of it.

 5   Because there was many individuals that we talked

 6   about every time that I went up there.  But there was

 7   an individual, Mr. Duncan (sic), who was willing to

 8   cooperate.  And, as I previously testified, he had

 9   information on several unsolved murders, and drug

10   dealing large quantities of drugs in the Albuquerque

11   area.

12        Q.   When you say "Mr. Duncan," you mean

13   Mr. Duran; correct?

14        A.   I'm sorry.  Yes.

15        Q.   And then you said that it took some time to

16   put together the team to talk to Mr. Duran; is that

17   correct?

18        A.   That's correct.

19        Q.   How was that decision made who would

20   participate in the interview?

21        A.   That was my decision as to what other task

22   force officers or law enforcement personnel I wanted

23   to meet with.

24        Q.   And how did you prepare to interview

25   Mr. Duran?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     A.   I did not do any preparing to interview

2   him.  We just went up to talk with him, to see what

3   information he actually had.  We get a lot of people

4   who claim that they have information and want to

5   talk.  And most of the time it's stuff that's not

6   validated.  It's just they're trying to get something

7   from us, rather than actually cooperate and give

8   information.

9     Q.   And you mentioned a letter Mr. Duran wrote

10  to Captain Sapien?

11    A.   Yes.

12    Q.   Did Captain Sapien ever show you that

13  letter?

14    A.   No.

15    Q.   Or provide with you a copy?

16    A.   No.

17    Q.   You testified that Eric Duran agreed to

18  cooperate because he wanted to give back to the

19  community; correct?

20    A.   That is one of the reasons he stated.

21    Q.   And that he said he was not in trouble?

22    A.   That's correct.

23    Q.   And that's not true, though; correct?

24    A.   As far as I know, he was not in any trouble

25  from any activities other than why he was

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   incarcerated.
 2        Q.   Are you aware that on February 12 of 2015,
 3   Mr. Duran was found in the possession of a shank at
 4   the prison?
 5        A.   I was not at the time, no.
 6        Q.   And are you aware that on February 18,
 7   2015, Eric Duran threatened to kill a correctional
 8   officer?
 9        A.   I was not aware of that.
10        Q.   And that, in threatening to kill the
11   correctional officer, he disclosed to the officers
12   and others the officer's home address?
13        A.   I was not aware of that.
14        Q.   And are you aware that he told law
15   enforcement that his then girlfriend had provided the
16   information to him about the officer?
17        A.   No, I was not aware of that.
18        Q.   Now, during the conversation with
19   Mr. Duran, though, he mentions the shank; correct?
20        A.   Several shanks were mentioned during that
21   interview.
22        Q.   And did you understand that one of those
23   shanks was his?
24        A.   I don't believe we discussed a shank being
25   his from any recent incident.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   Let's see.  I'd like to turn your attention

2   to page 53156 of the transcript.  If you look here on

3   this page, y'all are discussing the shanks that were

4   seized during a shakedown.  I'll point you here to

5   Eugene.  Who is he?

6        A.   He was one of the task force officers.

7        Q.   So Eugene says, "What happened last week?

8   Y'all did a big shakedown;" correct?

9        A.   That's correct.

10        Q.   Then Chris Cupit responds, "Yeah, we did a

11   big shakedown"; correct?

12        A.   Correct.

13        Q.   Then Sergio is Sergio Sapien; correct?

14        A.   Correct.

15        Q.   And Sergio is talking about some photos of

16   those shanks; correct?  He says, "Yeah, I got some

17   photos here.  One of them is yours."

18        A.   That's correct.  I'm not sure if he's

19   talking about the shanks on that part of interview or

20   not.

21        Q.   Do you recall seeing some photographs of

22   shanks during this interview?

23        A.   I did not see photographs during that

24   interview, no.  After the interview, I did see

25   photographs.  But I don't recall exactly what I saw

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    them on.
 2         Q.   And in response to Mr. Sapien saying,
 3    "Yeah, I've got some photos here, one of them is
 4    yours," Eric Duran responds, "Yeah, some they used to
 5    scratch trays," and he starts laughing; correct?
 6         A.   That's correct.
 7         Q.   And Mr. Sapien responds, "So this was found
 8    in his house.  It's an eyeglass, a little attention
 9    getter"; correct?
10         A.   That's correct.
11         Q.   And then Mr. Duran responds, "That ain't
12    mine.  As you see mine is there"; correct?
13         A.   That's correct.
14         Q.   So during this conversation Mr. Sapien and
15    Mr. Duran are talking about a shank that Mr. Duran
16    possessed, or was found in his house?
17         A.   Yes.
18         Q.   And are you aware that at the time --
19              THE COURT:  Let me ask you, Ms. Duncan,
20    would this be a good time for us to take our morning
21    break?
22              MS. DUNCAN:  It would, Your Honor.
23              THE COURT:  All right.  Thank you, Ms.
24    Duncan.  All right.  We'll be in recess for about 15
25    minutes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              (The Court stood in recess.)
 2              THE COURT:  All right.  Let's go on the
 3    record.  Make sure everybody has got an attorney.
 4    Looks to me like everybody has one.
 5              All right.  Ms. Brusuelas, I'll remind you
 6    that you're still under oath.  Ms. Duncan, if you
 7    wish to continue your cross-examination of Ms.
 8    Brusuelas, you may do so at this time.
 9              MS. DUNCAN:  Thank you, Your Honor.
10              THE COURT:  Ms. Duncan.
11    BY MS. DUNCAN:
12         Q.   So before the break you were talking about
13    Eric Duran's possession of a shank.  And I'd like to
14    point out one other portion of this transcript.  And
15    I'm looking at Bates No. 31560.  Here in the middle
16    of the page, I've highlighted a statement from Eric
17    Duran where he says, "If you have dudes like me that
18    are doing two years, that dumb ass shank that you
19    found in my cell, that's not going to happen.  I'm
20    trying to go home"; correct?
21         A.   Correct.
22         Q.   And, in fact, if an inmate is found in
23    possession of a shank, he would get into trouble;
24    correct?
25         A.   I don't work for the Department of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Corrections, but I would assume, yes.
 2         Q.    In fact, it's a crime for someone who is
 3    incarcerated to have a weapon like a shank?
 4         A.    Yes.
 5         Q.    And if someone were to threaten the life of
 6    a correctional officer, that would also get them into
 7    trouble; correct?
 8         A.    That's correct.
 9         Q.    It may also be a crime; correct?
10         A.    Correct.
11         Q.    Now, we talked a little bit about the
12    letter that Eric Duran wrote to Mr. Sapien.  At some
13    point, did the STIU provide you with a list of SNM
14    members during that meeting?
15         A.    I don't recall that.
16         Q.    So I will turn you to page 31528.  And this
17    is where you're discussing with Mr. Duran alleged
18    members of the SNM.  And so in the middle of the page
19    Sergio -- and again, that's Sergio Sapien -- says,
20    "Here's what I got.  I did this last week.  It has
21    names, numbers, and all that good stuff in there."
22               And Katy" -- that would be you; correct?
23         A.    Correct.
24         Q.    You respond, "Okay, is that an updated one
25    you said?"  Do you recall receiving that list of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    names and numbers?

2        A.   I do recall getting a list from him.   I

3    don't know if I received it during that interview.

4    But as I said, I was working on a prison initiative

5    that we were keeping track of the different gang

6    members, and seeing which ones were causing problems

7    in the prison.

8        Q.   So if you received a list like that, what

9    would you have done with it?

10        A.   I would have kept it probably in my working

11    file, or possibly put it into the case.

12        Q.   Okay.  Do you recall if you did that in

13    this instance?

14        A.   I don't recall.

15        Q.   During the conversation with Mr. Sapien --

16    again, let's see if I can -- now, looking at Bates

17    31529.  And on this page at the very top you'll see

18    Eugene asks, "Is that in your packet, sir?"

19            And Mr. Sapien responds, "Yes, sir";

20    correct?

21        A.   Yes.

22        Q.   What was that packet?

23        A.   Again, that was the list that he

24    provided -- he gave a copy to Eugene, and I believe

25    Eric also received a copy -- of the different inmates

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                      1-800-669-9492




1    that were possibly in the gang.

2        Q.   Were there any other documents in that

3    packet, to your recollection?

4        A.   Not that I recall.

5        Q.   And is that packet something that you would

6    have put into the case file?

7        A.   Again, that's Eugene's packet that he's

8    referring to there.  So I would assume it probably

9    would be a similar list that I received.

10       Q.   In preparing to testify today, did you

11   listen to the recording of the February 2015

12   interview with Eric Duran?

13       A.   I did not.  I just reviewed the transcript.

14       Q.   During the interview with him, you did

15   discuss Sergeant Artiaga; correct?

16       A.   I believe so.

17       Q.   What do you recall about that conversation?

18       A.   I would have to refer to the transcript.  I

19   can't recall at this time.

20       Q.   Well, unfortunately -- I can show you this

21   transcript, but would you accept a representation

22   from me that the portion of the discussion about Mr.

23   Artiaga is not in this transcript?  Would you like to

24   see the transcript?

25       A.   If you're going to need to question me on

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

 1    something, I'd have to see it to refresh my memory.

 2         Q.   I'm about to question you about the

 3    conversation regarding Sergeant Artiaga, but it's not

 4    included in this transcript.

 5         A.   I just reviewed the transcript.  I did not

 6    listen to the audio.

 7         Q.   When you reviewed the transcript, do you

 8    remember seeing anything about Sergeant Artiaga?

 9         A.   No.

10         Q.   You testified on direct that Mr. Duran was

11    the first one to raise -- to assert that Anthony Ray

12    Baca called the Molina hit; correct?

13         A.   From my knowledge, yes.

14         Q.   And I'm looking on page 31526.  In fact, it

15    was Eugene who first identifies Mr. Baca as the

16    person who called it; correct?

17         A.   I'm assuming, from looking at that page

18    that you're putting up.

19         Q.   I'm asking you about the recording itself.

20    Who made this recording?

21         A.   I believe that was Chris Cupit.

22         Q.   And what do you recall about the

23    conversation prior to the recording starting?

24         A.   The conversation prior was just kind of

25    smalltalk, you know, talking about him.  I believe we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    had brought him a breakfast burrito, or something

2    like that.  So it was nonrelevant to any of the

3    ongoing investigations.

4        Q.   Did you take any notes of the conversation

5    that happened before the recording started?

6        A.   I may have, if it was anything relevant.

7    But I don't think -- they started the recording as

8    soon as we started the actual interview.

9        Q.   And do you have notes from your meeting

10   with Mr. Duran?

11       A.   I do not have them with me.  They are in

12   our Albuquerque office.

13       Q.   And would you be willing to review those

14   notes to see if any of them pertain to conversation

15   before the recording?

16       A.   Yes, I'd have to see what time the

17   recording was started.  And I'd have to listen to the

18   recording to see.

19       Q.   And you wrote some reports in this case;

20   correct?

21       A.   Correct.

22       Q.   And so let me ask you this:  So, when you

23   wrote those reports, did you rely on your notes or

24   did you just rely on your recollection of the

25   meeting?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   On the notes also.
 2        Q.   And have you compared your notes to the
 3   report to see if there is anything in the notes that
 4   are not in the report?
 5        A.   Not since I've written the report.  But I
 6   usually do compare it before I submit the report.
 7        Q.   Can you conduct that review as well when
 8   you return to your office?
 9        A.   Yes.
10        Q.   And if you have this packet that was
11   provided to you by STIU, would you be willing to
12   produce that in this case?
13        A.   Yes.
14        Q.   Would you also be willing to produce your
15   notes?
16        A.   Yes.
17        Q.   You testified on direct quite a bit about
18   the information that Eric Duran provided about the
19   Molina homicide.  You are aware that Mr. Duran was
20   not in Southern New Mexico Correctional Facility at
21   the time of the homicide; correct?
22        A.   That's correct.
23        Q.   He was in PNM North?
24        A.   Yes.
25        Q.   And the information that he provided you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  was information he'd obtained from Jerry Armenta;

2  correct?

3      A.   I believe so.

4      Q.   And during the interview with you, he was

5  negotiating -- not negotiating, but speaking to the

6  Government about a plea deal for Mr. Armenta;

7  correct?

8      A.   He was not speaking for a plea deal for

9  Armenta.  But he was -- he did feel bad because he

10  felt like he had been kind of set up.  He was 30 days

11  left before he was released, and he indicated that he

12  was forced to participate in the murder.  And he felt

13  bad for him.

14      Q.   And he suggested to you that 10 years was a

15  good sentence for Mr. Armenta based on the Molina

16  homicide?

17      A.   Well, he did say that -- you know, he did

18  the crime, he would have to do the time, you know, he

19  did participate in it.  But he also felt like he had

20  no choice; that he was forced.

21      Q.   Are you aware that at a disciplinary

22  hearing following Mr. Duran's threatening an

23  officer's life that he called Jerry Armenta as a

24  witness?

25      A.   I'm not aware of the hearings conducted by

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   DOC.

2        Q.   Are you aware that Mr. Duran would call

3   Jerry Armenta as a witness to defend him against any

4   kind of allegations?

5        A.   I was not aware of that.

6        Q.   And Mr. Duran also offered to bring Mr.

7   Armenta in to talk to the FBI; correct?

8        A.   Well, he personally could not bring him in.

9   But he had talked to him and tried to get him to

10  cooperate.

11       Q.   You testified on direct that "Pup" had made

12  a threat -- or sorry, Anthony Ray Baca, had made a

13  threat, or that Eric Duran explained that Anthony Ray

14  Baca had made a threat against both Gregg Marcantel

15  and Dwayne Santistevan; correct?

16       A.   Yes.

17       Q.   I'd like to show you page 31541 of the

18  transcript.  And this is the portion of the

19  transcript where they're talking about Dwayne

20  Santistevan and Gregg Marcantel; correct?

21       A.   That's correct.

22       Q.   And Eugene says, "So 'Pup' was the one

23  calling the shots?"

24            And Eric Duran said, "He probably hates him

25  more than Marcantel"; correct?



SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                             Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                    BEAN                            1-800-669-9492
                 & ASSOCIATES, Inc.          e-mail: info@litsupport.com
                 PROFESSIONAL COURT
                   REPORTING SERVICE

```
 1        A.   Correct.

 2        Q.   And by "him" he means Dwayne Santistevan?

 3        A.   That's correct.

 4        Q.   And you asked, "And Marcantel or the hit

 5   was only on Santistevan?"

 6             And Mr. Duran replied, "No, no, it was only

 7   on Santistevan.  But I'm saying he hates Santistevan

 8   more than he hate Marcantel"; correct?

 9        A.   Yes.

10        Q.   So he's reporting only that there was a

11   potential threat against Mr. Santistevan?

12        A.   That's correct.

13        Q.   Do you know if anyone other than STIU

14   recorded that interview?

15        A.   No, nobody else did.

16        Q.   We talked before about Mr. Eric Duran

17   telling you that he was cooperating to give back to

18   the community, not because he was in trouble.  But

19   later on in this conversation Mr. Duran also

20   indicated that he wanted some benefits for

21   cooperating; correct?

22        A.   Yes.

23        Q.   For example, he was looking for lump sum

24   credit to get out of prison early?

25        A.   That was not brought up at that time, no.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    And when you testified about Mr. Duran
 2   wanting to seem like he was still in trouble so to
 3   keep away some of his privileges, you're aware he was
 4   in prehearing isolation because of a disciplinary
 5   infraction at that time; correct?
 6        A.    I believe all of SNM was in lockdown at
 7   that time, not just him.
 8        Q.    Did you understand -- well, I guess you'd
 9   testified before you weren't aware that he was found
10   with a shank?
11        A.    That's correct.
12        Q.    And put into prehearing detention for that?
13        A.    That's correct.
14        Q.    So his privileges had been taken away, he
15   was actually negotiating for things to be given back?
16        A.    He was hoping by his cooperation he would
17   be able to have some of his personal items returned.
18        Q.    After you met with Mr. Duran on the 19th of
19   February, when did you next speak to him?
20        A.    It would have been in March, somewhere
21   around the 25th, I believe, or something like that.
22        Q.    And was that the meeting you discussed
23   earlier where you gave him the admonishments and the
24   recording device?
25        A.    That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   Did you record that interview with
 2   Mr. Duran?
 3        A.   I did not.
 4        Q.   Did you take any notes of that interview?
 5        A.   I believe a report was written up, yes.
 6        Q.   And would you be willing to check your file
 7   for any notes that you might have made from March of
 8   2015?
 9        A.   Yes.
10        Q.   And to produce them?
11        A.   Yes.
12        Q.   Thank you.
13             After you met with Mr. Duran, in March of
14   2015 -- so other than admonishments that you gave him
15   and giving him the recording device, did you discuss
16   anything else?
17        A.   There was other interviews with him.  I
18   would have to look at my notes and my papers to see
19   exactly what was discussed on what days.  But we did
20   discuss other criminal activity on other interviews.
21        Q.   How many interviews, total, did you
22   participate in with Mr. Duran?
23        A.   It was very few, because I was only his
24   handler for a couple of months.  So two to three.
25        Q.   And would you have generated a report
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    following each interview?
 2         A.   Yes.
 3         Q.   Who was present during your meetings with
 4    Mr. Duran?
 5         A.   Again, to be exact, who was at every
 6    meeting, I'd have to look at my reports.  But we
 7    would have always had STIU officers present, because
 8    they would have transported him to wherever we were
 9    meeting.  It would have been Captain Sapien, it would
10    have been Investigator Cupit, possibly Escare Loyola
11    (phonetic) that worked with them.  And then I also
12    had several task force officers that were involved in
13    it.
14         Q.   So at some point during the interview, Mr.
15    Sapien indicates he'd interviewed Duran the week
16    before your interview with him; correct?
17         A.   Yes, at some point before.
18         Q.   Were you ever given a report or a recording
19    of that interview?
20         A.   No.
21         Q.   You testified that you handed over
22    Mr. Duran to another handler, Bryan Acee?
23         A.   That's correct.
24         Q.   When did that happen?
25         A.   That was early August.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1        Q.   How many times -- you gave the recording
 2   device to Mr. Duran in March of 2015?
 3        A.   Correct.
 4        Q.   Are there any other instances where you
 5   provided him with a recording device?
 6        A.   Well, the recording device was switched out
 7   occasionally.  But during the time that I had him, I
 8   think we attempted to give two different recording
 9   devices.
10        Q.   And would you meet with him when you would
11   switch out recording devices?
12        A.   Captain Sapien would do that, so it wasn't
13   as obvious with me going in and out of the prisons.
14             MS. DUNCAN:  Your Honor, if I could just
15   have a moment?
16             THE COURT:  You may.
17             MS. DUNCAN:  I just have one final
18   question.
19        Q.   When we were talking about your notes, has
20   anyone from the U.S. Attorney's Office ever asked to
21   review your notes?
22        A.   They just referenced my notes yesterday
23   while I was up here.
24        Q.   That was the first time?
25        A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MS. DUNCAN:  Thank you.  No further
 2     questions, Your Honor.
 3              THE COURT:  Thank you, Ms. Duncan.
 4              Do any of the other defendants have any
 5     cross-examination of Ms. Brusuelas?  All right. Ms.
 6     Sirignano?
 7              MS. SIRIGNANO:  Yes, Your Honor.
 8              THE COURT:  All right.  Ms. Sirignano.
 9              MS. SIRIGNANO:  Thank you, Your Honor.
10                        EXAMINATION
11     BY MS. SIRIGNANO:
12         Q.   Good morning, Agent.
13         A.   Good morning.
14         Q.   You talked about the documents that you had
15     Mr. Duran sign when you opened him during direct
16     examination; correct?
17         A.   About the admonishments?
18         Q.   Yes.
19         A.   Yes.
20         Q.   What kind of admonishments were they?
21         A.   Do you need me to repeat them, the ones I
22     gave, the summary of them?
23         Q.   Please.
24         A.   Okay.  We would have informed him that all
25     the information he's giving is voluntary.  He must be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    truthful.  That he needs to follow any direction that

 2    we give him.  We would try to protect his identity.

 3    We also give a section of admonishments where we tell

 4    him he's not an employee of the U.S. Government.  He

 5    cannot sign any contracts on behalf of the U.S.

 6    Government.  He cannot do any work for the U.S.

 7    Government without preapproval from us.  We inform

 8    him that we are not making any promises about lack of

 9    prosecution, or if we're going to make any payments

10    to him.  But if we do make payments to him, he'll

11    have to pay taxes, that's his responsibility.

12         Q.   And was there a form or a checklist that

13    you used to make these admonishments?

14         A.   Yes, there is a form.

15         Q.   And that form goes in his informant file;

16    correct?

17         A.   Yes.

18         Q.   And he has an informant file?

19         A.   Yes, he does.

20         Q.   Have you produced the informant file to the

21    Government?

22         A.   I have not.

23         Q.   Can you bring it to us so we can use that

24    in your cross-examination today?

25              MR. CASTELLANO:  Your Honor, my



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    understanding is that that file is already on the way
 2    to the defense for production, so that is being
 3    produced, and I think that includes the
 4    admonishments.  So I just want to shortcut that.
 5              THE COURT:  All right.
 6              MS. SIRIGNANO:  Your Honor, we need this
 7    informant file to cross-examine this witness
 8    properly.  She opened up Mr. Duran, and we need to
 9    make sure that everything was done properly according
10    to FBI procedure.
11              THE COURT:  Well, it doesn't look like
12    we're going to get them today.  So you'll have to --
13              MS. SIRIGNANO:  Can I request that this
14    witness be re-called once we get these documents?
15              THE COURT:  Well, I don't know.  I don't
16    think they're going to probably have much impact on
17    my decision.  So if you want to re-call her, you can.
18    But I haven't heard much to suggest that Mr. Duran
19    did anything involuntary here.
20              MR. CASTELLANO:  And I would object for
21    that reason, Your Honor, that there is no indication
22    the admonishments would affect the coercion which is
23    at play here.
24              MS. SIRIGNANO:  May I continue, Your Honor?
25              THE COURT:  You may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. SIRIGNANO:   Thank you.
 2      Q.   So you were the one that opened up
 3 Mr. Duran; correct?
 4      A.   Yes, ma'am.
 5      Q.   Okay.  And during that process, you run a
 6 criminal history check; correct?
 7      A.   That's correct.
 8      Q.   Did you find a warrant from another
 9 jurisdiction during that check?
10      A.   I would have to review his opening
11 documents.
12      Q.   Was that a yes or a no?
13      A.   I do not recall at this time.
14      Q.   If you did find a warrant when you opened
15 him up, what's the normal FBI procedure for dealing
16 with that warrant?
17      A.   We make sure they take care of the
18 warrants.  At the time I opened him up, he was
19 already incarcerated, though.
20      Q.   What was he incarcerated for?  Murder?
21      A.   I think he was still doing time on a
22 murder, yes.
23      Q.   First degree murder?
24      A.   I don't recall exactly.  I'd have to look
25 at the file.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    When was the last time you spoke to
 2   Mr. Duran?
 3        A.    Sometime in 2015.
 4        Q.    Was this after you handed him off to Mr.
 5   Acee?
 6        A.    No, I did not speak to him after that.
 7        Q.    Did you assist in his apprehension since he
 8   recently fled from contact with the FBI and the
 9   jurisdiction?
10        A.    I did not.
11        Q.    Do you know where he was arrested?
12              THE REPORTER:  Where or when?
13              MR. CASTELLANO:  Objection, Your Honor.
14        Q.    Do you know where he was arrested?
15              THE COURT:  Sustained.
16        A.    I was not involved in that investigation.
17              MS. SIRIGNANO:  May I have a moment, Your
18   Honor?
19              THE COURT:  You may.
20              MS. SIRIGNANO:  Pass the witness, Your
21   Honor.
22              THE COURT:  Thank you, Ms. Sirignano.
23              Any other defendant have questions?
24              MS. JACKS:  I have a few questions.
25              THE COURT:  Ms. Jacks.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                      EXAMINATION
 2  BY MS. JACKS:
 3       Q.   Good morning, Agent Brusuelas.  How are
 4  you?
 5       A.   Good morning.
 6       Q.   I want to just talk generally about what
 7  your state of mind was when you first interviewed
 8  Eric Duran.  Did you know what kind of prior
 9  convictions he'd sustained?
10       A.   Yes, I did.  Before I interview anybody, I
11  do run a criminal history on him.
12       Q.   Do you remember any of that now?
13       A.   I would have to review the file.  I know he
14  had an extensive criminal history.  He's been in and
15  out of jail the majority of his life.  He was
16  convicted of murder, and has several drug charges,
17  but I could not be exact right now.
18       Q.   Was it your state of mind, when you first
19  went in to interview him, that he was potentially a
20  very manipulative individual?
21           MR. CASTELLANO:  Objection, Your Honor.  To
22  relevance.  I don't know what it has to do with
23  coercion.
24           THE COURT:  Well, I can see a little bit of
25  the argument.  Overruled.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   Every time I interview somebody who is

2    incarcerated, or who is willing to cooperate, I

3    always take what they say -- I verify information and

4    stuff, because a lot of times they are trying to get

5    something for their cooperation.

6    Q.   And I think what you said when Mr.

7    Castellano was asking you questions was that one of

8    the things that Mr. Duran emphasized to you in this

9    first meeting with you was that he was actually just

10   doing all this out of the goodness of his heart, and

11   didn't want anything?

12   A.   Yes, fairly much.  So he said that he was

13   trying to give back to the community.  It was time

14   that he came forward as part of his rehabilitation,

15   yes.

16   Q.   And during the course of the conversation

17   with him, it's actually a topic he went back to on

18   several occasions, in an effort to almost reassure

19   you that that was his motivation?

20   A.   That's correct.

21   Q.   During the conversation, did you start to

22   hear things that maybe caused you to question his

23   stated motive for coming forward?

24   A.   No.

25   Q.   So after the first meeting with Mr. Duran,

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                         (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                    1-800-669-9492
                                              e-mail: info@litsupport.com



 1  it was your state of mind, or your belief that it

 2  really was true that he was just coming forward out

 3  of his genuine effort to want to change, and not for

 4  any sort of benefits?

 5       A.   Well, I don't think that's 100 percent of

 6  the reason he came forward, no.  I mean, he did

 7  mention that he was hoping to get commissary back.

 8  So, no, I don't think it was 100 percent of his

 9  intention.

10       Q.   So after your first interview with

11  Mr. Duran, you had some reason to believe that

12  perhaps he was trying to manipulate you?

13       A.   I don't believe he was trying to manipulate

14  me.

15       Q.   Did you make -- let me just go back.  If

16  Mr. Duran's motive in coming forward wasn't just out

17  of his genuine desire to change his life, did he lie

18  to you during that interview?

19       A.   Not that I'm aware of.

20            THE COURT:  Well, and let's ask it in those

21  terms.  I think I'm going to be the one that has to

22  determine whether people are lying or not.  So let's

23  make sure, as we get ready for trial, that we don't

24  ask questions like that.  I, or the fact finder will

25  make those determinations.  Let's not be asking

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1   witnesses those.

 2        Q.   Well, let me see if I can ask it in a

 3   different way that maybe is not objectionable.

 4             One of the things that you said you

 5   explained to Mr. Duran is that, if he was going to

 6   work with you, he had to be truthful, right?

 7        A.   Correct.

 8        Q.   And was that qualified in any sort of way?

 9   Like he only had to be 98 percent truthful?  He could

10   lie about 2 percent of the things, and still work

11   with you?

12        A.   We did not qualify that, no.

13        Q.   So it's an unqualified truthfulness that's

14   part of the terms of his cooperation?

15        A.   Correct.

16        Q.   And what, if any, efforts did you make,

17   after speaking with him on two or three occasions, to

18   verify that he was, in fact, 100 percent truthful

19   with you?

20        A.   I don't know if he was, in fact, 100

21   percent truthful.  You know, we verified some of the

22   information he gave us, and it was truthful.

23        Q.   As you sit here today as a witness, do you

24   have reason, or can you tell us anything that he was

25   untruthful about that could have potentially violated

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    his agreement to be a cooperating witness?

2         A.   No, I cannot.

3         Q.   You talked about Mr. Duran making some

4    statements about this homicide of an inmate named

5    Javier Molina.  Do you recall that testimony?

6         A.   Yes.

7         Q.   And Mr. Duran didn't have any personal

8    knowledge of the murder of Javier Molina, did he?

9         A.   He was not present at the time, no.

10        Q.   So everything he was telling you was stuff

11   he heard from somebody else?

12        A.   That's correct.

13        Q.   And Ms. Duncan asked you some questions

14   about a list that may have been provided to you

15   regarding SNM Gang members.  Do you recall those

16   questions?

17        A.   Yes.

18        Q.   And you also, if I'm correct, you recall

19   getting such a list?

20        A.   I believe I did.  I, several times, have

21   gotten lists from DOC about different things.  So I

22   believe I did get a copy of that.

23        Q.   And it sounds like from your testimony, you

24   may have gotten lists like that on a number of

25   occasions?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   Yes, on different things.

 2          Q.   And those lists, would they be in

 3   Mr. Duran's informant file, or do you know where they

 4   are today?

 5          A.   As I testified to a little bit ago, I'm not

 6   sure.  They might be in my notes in his file.

 7          Q.   Do you know if Daniel Sanchez was on any of

 8   those lists?

 9          A.   I don't recall the list, so I could not

10   say.

11          Q.   As part of your training in becoming an FBI

12   agent, you're trained on your duty to preserve

13   evidence that might benefit a criminal defendant,

14   aren't you?

15          A.   That's correct.

16          Q.   You have a duty to preserve potentially

17   exculpatory evidence?

18          A.   That's correct.

19          Q.   And, if Mr. Sanchez' name was not on a list

20   of SNM members that was provided to you in 2015, that

21   could be potentially exculpatory to him, wouldn't you

22   agree?

23          A.   It wasn't an all-inclusive list.

24          Q.   Wouldn't you agree that it's potentially

25   exculpatory?  If somebody's name is not on a list of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    SNM Gang members, that might be something that would
 2    be beneficial to them in a subsequent prosecution?
 3         A.   Potentially.
 4         Q.   And so what do you with that potentially
 5    exculpatory evidence?
 6         A.   At the time I received the list, as I
 7    explained earlier, I had been assigned to work a new
 8    initiative in the prisons.  And every bit of
 9    information that I received from them was not
10    information that went towards an ongoing case.  So
11    some of it was just information for background, for
12    my information.  I didn't save every bit of
13    information on every individual that I received
14    during that period.
15         Q.   So is there an exception to your duty to
16    preserve exculpatory information that says that if a
17    person isn't charged, or isn't the subject of a
18    pending indictment, that you don't need to preserve
19    it?
20         A.   If it's not information that's relevant to
21    an ongoing case, I did not save it.
22              MS. JACKS:  I have nothing further.
23              THE COURT:  Thank you, Ms. Jacks.
24              Any other defendants have cross-examination
25    of Ms. Brusuelas?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1              All right.  Mr. Castellano, do you have

2     redirect of Ms. Brusuelas?

3              MR. CASTELLANO:  No redirect, Your Honor.

4              THE COURT:  All right.  You may step down,

5     Ms. Brusuelas.  Is there any reason that Ms.

6     Brusuelas cannot be excused from the proceedings?

7     Mr. Castellano?

8              MR. CASTELLANO:  No, Your Honor.

9              THE COURT:  From the defendants?

10             MS. SIRIGNANO:  Your Honor, I'd just like

11    to renew my objection to not having the file.  And

12    once we receive it, I will advise the Court if we

13    need to re-call her.

14             THE COURT:  All right.  Well, you'll need

15    to step outside at least for the remainder of this

16    hearing.  And we'll discuss whether you'll be

17    re-called.  But at least you can't stay within the

18    confines of the courtroom.  Thank you for your

19    testimony.

20             MR. CASTELLANO:  Can I get some

21    clarification on that?  Is Ms. Sirignano going to

22    review -- I think she's going to review the notes on

23    a different date, so we could dismiss Agent Brusuelas

24    today.

25             THE COURT:  Well, she's free to go back to

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                   1-800-669-9492
PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

```
 1    Albuquerque, correct, because you're not going to be
 2    able to see the notes today, correct, Ms. Sirignano?
 3            MS. SIRIGNANO:  That's correct, Your Honor.
 4            THE COURT:  But she's reserving the right
 5    to re-call.  I'm not ruling on it, and Ms. Sirignano,
 6    I don't think is committed yet to calling her back.
 7    So we'll see how it develops.
 8            MR. CASTELLANO:  Understood, Your Honor.  I
 9    just want to make sure that she can leave for today.
10            THE COURT:  She can leave for today, but
11    she can't stay in the courtroom because she may be
12    subject to re-call down the road.  All right.  Thank
13    you for your testimony.
14            All right.  Does the Government have its
15    next witness or evidence on the motion to suppress?
16    Mr. Castellano?  Mr. Beck?
17            MR. CASTELLANO:  May I have a moment, Your
18    Honor?
19            THE COURT:  You may.
20            MR. BECK:  Your Honor, I guess we were
21    under the understanding that we would go back to the
22    motion -- to the other motions we were discussing
23    yesterday after this.
24            THE COURT:  Okay.
25            MR. BECK:  I think we were asking to take
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    her out of order, just since she was here, to get her

2    back to Albuquerque.

3              MS. DUNCAN:  That was my understanding as

4    well, Your Honor.

5              THE COURT:  All right.  So then I think we

6    were discussing Carlos Herrera's motion in limine.

7    And I think y'all were going to maybe look at some

8    stuff overnight, maybe talk to each other, and maybe

9    y'all could tell me where you are.  Otherwise, I'll

10   start making some rulings here.

11             Mr. Castellano.

12             MR. CASTELLANO:  Unfortunately, I don't

13   know that we got very far.  We got into the evening,

14   and then everybody left.  Ms. Bhalla and I discussed

15   this for a little bit, but I don't know that we got

16   much further.  And because of the lateness of the

17   conclusion of the proceedings, I haven't had a chance

18   to look at the substantiating documents underlying

19   each of them.

20             But what I told Ms. Bhalla was, generally

21   speaking, if Mr. Herrera is in prison, and it

22   involves drugs, I would likely move its admission.

23   Because as I ended the day yesterday, stating that

24   Mr. Herrera was -- his brother and father were SNM

25   Gang members, and his mother would sell drugs both to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   18th Street and the SNM Gang members.  So that would

2   be relevant to us.

3            THE COURT:  Let me attempt to see if I can

4   maybe make some progress on this, and see what people

5   think.  We've already struck the first three on page

6   1.  I'm not seeing that any of those others relate to

7   drugs or that they are an overt act.

8            And on the second page, the event on

9   January 26, 1997, keep it on the table.  The next one

10  on September 14, leave it on the table.  We've

11  already -- I'm not saying everybody is agreed, but at

12  least we discussed leaving the next two on the table.

13  Keeping the May 24 on the table.  We struck the next

14  two, November 3 and September 8, 2000.

15           MS. BHALLA:  I'm sorry.  I lost you after

16  May 24, 1999, I'm sorry.

17           THE COURT:  Keep May 24, 1999 on the table.

18  And then we struck November 3, 1999 and September 8,

19  2000.  Leave on the table January 5, 2001, the

20  portion at least about -- I'll just say the portion

21  about heroin I'll take off the table.  And this is

22  just me for the present time of putting something

23  together.  So we'll take -- we'll put a period after

24  heroin.

25           On page 3, leave on the table January 12.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. BHALLA:  Of '02?

 2            THE COURT:  2002.  I'm sorry.

 3            MS. BHALLA:  No, that's okay.  Thank you.

 4            THE COURT:  Leave on the table December 23,

 5    2019 (sic).

 6            MS. BHALLA:  Do you mean 2010?

 7            THE COURT:  2010, correct.

 8            Leave on the table February 1, 2011.  We've

 9    already struck October 6, 2011.  Leave on the table

10    October 18, 2011.

11            (Mr. Adams left the courtroom.)

12            THE COURT:  Here's what I would propose to

13    do, since we don't have any of these as overt acts

14    pled in the indictment, so that the chances are less

15    that any of these are going to be relevant to the

16    enterprise, or to furthering the enterprise.  The

17    ones I have identified as still on the table, then

18    those are ones that for the present time the

19    Government will need to inform, on January 22,

20    whether they -- whatever information they have that

21    they're going to use to establish relevancy.  All the

22    others will be off the table.  If the Government

23    wants to put them back on, it needs to put them back

24    on by that date.  There will be no 404(b), so it will

25    have to be tied to the relevancy.  And then some of
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    these we permanently struck.  And we confirmed that
 2    on the record yesterday.
 3            Could you live with that procedure, Mr.
 4    Castellano?
 5            MR. CASTELLANO:  Yes, Your Honor.  And I'll
 6    double-check with Ms. Bhalla on the list of the
 7    things that are still on the table.  But for now, the
 8    answer is yes.
 9            THE COURT:  All right.  Do you want me to
10    go back through what's on the table so it's clear?
11            MR. CASTELLANO:  Would you please.  I would
12    appreciate that.
13            THE COURT:  All right.  So what's
14    permanently off the table is the first three on page
15    1.  And what is not permanently off the table, but
16    it's off the table for the present time is -- well,
17    the September 24, 1991, November 16, 1991, and
18    January 12, 1994 are permanently off the table.  The
19    rest is off the table, but the Government can put it
20    on by January 22.
21            On page 2, the first four are in the same
22    category.  They're off the table unless the
23    Government puts them back on.  January 26, 1997 is
24    still on the table.  July 27, 1997 is off the table,
25    but it can be put back on by January 22.  September
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    14, 1997 is on the table.  The next one is on the

2    table, the 1998, voting for Martinez.  The February

3    23 is on the table.  The May 24, 1999 is on the

4    table.  Off the table, but could be put back on is

5    the July 31.  Permanently off the table is the

6    November 3, 1999, September 8, 2000.  The first

7    clause down to heroin is on the table.  January 16,

8    2001 and the January 31, 2001, at the bottom of page

9    2, are off the table unless the Government puts them

10   back by January 22.  January 12, 2002 is on the

11   table.

12          The next seven lines, which will go through

13   October 9, 2010, are off the table unless the

14   Government, by January 22, puts them back on the

15   table with the information that we've indicated.  The

16   December 23, 2010 is on the table.  The February 1,

17   2011 is on the table.  The October 6, 2011 is

18   permanently off the table.  October 18, 2011 is on

19   the table.  The next one, on March 2017, is off the

20   table unless the Government, by January 22, puts it

21   back on the table, and indicates what it's going to

22   use to tie it to the enterprise, proving the

23   enterprise, or the furtherance of the enterprise.

24          Is that clear, Mr. Castellano?

25          MR. CASTELLANO:  It is, Your Honor.  Thank

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   you.
 2               THE COURT:  Ms. Bhalla, is that clear?
 3               MS. BHALLA:  Yes, Your Honor.  If the Court
 4   would -- just a question for the Court.  Are the ones
 5   that are sort of off the table now, but could be back
 6   on the table, is that sort of an indication that the
 7   Court expects a little bit from the Government in
 8   terms of putting it back on the table again?
 9               THE COURT:  Well, I mean, we're dealing
10   with a lot of subjects without any documents.  You've
11   looked at some.  And so that's the reason I've been
12   pushing the Government here, because you did your
13   homework.  They may just decide it's not worth
14   looking at the documents.  If they are, they're gone.
15   So we're getting some rulings here.  If they decide
16   to put them back on, they're going to have to do the
17   same thing with the ones on the table and that's give
18   you information so that you can make an informed
19   judgment as to whether they're relevant to
20   establishing enterprise, or that they were in
21   furtherance of the enterprises activities.
22               MS. BHALLA:  Okay.  Thank you, Your Honor.
23               THE COURT:  All right.  Everybody live with
24   that?  All right.  That's what we'll do on Mr.
25   Herrera's bad acts for the present time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          All right.  Then we will now take up

2     Document 1555, which is Christopher Garcia's motion

3     on bad acts.  Do you want to make any preliminary

4     statements, Ms. Sirignano, Mr. Adams, on your motion?

5          MS. SIRIGNANO:  Good morning, Your Honor.

6     Mr. Adams had to depart.  He's on the phone, though,

7     or should be momentarily.

8          THE COURT:  All right.

9          MS. SIRIGNANO:  Your Honor, at this point

10    in time, these are alleged bad acts.  There is 40 of

11    them here.  And a few of them are res gestae acts, I

12    believe.  But we do not concede that any of these

13    should be used at trial.  They're highly prejudicial.

14    And a majority of these are from their snitch, Mario

15    Montoya, that perhaps might have gone before the

16    Grand Jury.  I don't know, specifically from him or

17    by a summary agent, which would make them hearsay

18    statements.  But every single one of these 40 are

19    overt Acts in the 16-CR-1613 case, but for number 2,

20    I believe.  So at this point in time I don't have any

21    evidence, other than the indictment in 1613,

22    specifically, that ties this in to the SNM

23    enterprise.  And as I said as I started, there are

24    alleged, and some of them are prior convictions, but

25    our position is that none of them have anything to do

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   with the SNM Gang.
 2              Thank you, Judge.
 3              THE COURT:  Thank you, Ms. Sirignano.
 4              So if I understand from Ms. Sirignano's
 5   comments, everything except the May 16 -- and I
 6   believe that's supposed to be 1995 -- incident there,
 7   the second one, are pled as overt acts in the
 8   indictment?
 9              MR. CASTELLANO:  Yes, Your Honor.
10              THE COURT:  All right.  Do you want to put
11   your chart up, if you prepared one, and I'll write
12   that down.
13              MR. CASTELLANO:  And I'll check the second
14   page as the Court is looking at the notes.
15              THE COURT:  All right.  Do you want to turn
16   the page, Mr. Castellano?
17              MR. CASTELLANO:  Yes, Your Honor.
18              THE COURT:  On that 2015, where he received
19   $100, where he wired 100 to Mr. Archuleta, is that OA
20   193?
21              MR. CASTELLANO:  Yes, it looks like 193.
22              MS. SIRIGNANO:  I'm sorry, Your Honor.  I
23   didn't hear you.
24              THE COURT:  I was asking whether the wiring
25   in 2015, to Mr. Archuleta, is that OA 193.  And he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   confirmed it was?

 2              MR. CASTELLANO:  It is, Your Honor.  It's

 3   Overt Act 193.

 4              THE COURT:  All right.  If I could see page

 5   3 of your letter, Ms. Armijo's letter.

 6              And you've got written at the top, "15-4275

 7   pled guilty."

 8              MR. CASTELLANO:  Yes, Your Honor.  What

 9   I've done is, in 15-4275, Mr. Garcia pled guilty to,

10   I believe, four counts involving trafficking of

11   narcotics.  And I can put that up next.

12              THE COURT:  That was our drug case that was

13   settled?

14              MR. CASTELLANO:  Yes, it was.

15              MS. SIRIGNANO:  And, for the record, Your

16   Honor, the factual basis in that drug case, we did

17   not plead to drug trafficking on behalf of the SNM.

18   So I would object strenuously to any of that coming

19   in as a bad act in this case.

20              THE COURT:  Well, I'm sure you have

21   evidence that will supplement what Mr. Garcia pled

22   to, Mr. Castellano?

23              MR. CASTELLANO:  That's correct, Your

24   Honor.

25              THE COURT:  All right.  If I can look at
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   your overt acts on page 4.
 2             All right.  I assume that -- well, I don't
 3   want to assume anything, but I'd asked, on others,
 4   you will not attempt to get any of these that have
 5   been marked as overt acts, you'll not attempt to get
 6   any of those in through 404(b), by pointing to some
 7   legitimate purpose?  You'll simply take the position
 8   that these are relevant to proving enterprise and
 9   proving that they're in furtherance of the
10   enterprise's activities?
11             MR. CASTELLANO:  That's correct, Your
12   Honor.
13             THE COURT:  Let's talk a second about the
14   May 16, 1995.  Are you going to attempt to bring that
15   in to trial?
16             MR. CASTELLANO:  It depends on what we have
17   for the substantiating documentation.  If it's a
18   conviction, and we can tie that to SNM, then the
19   answer would be yes.
20             MS. SIRIGNANO:  Your Honor, this is what
21   we're doing here today.  I need to know one way or
22   the other.
23             THE COURT:  Let me take them in order.
24   I'll talk to Mr. Castellano, and then I'll let you
25   have rebuttal.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. SIRIGNANO:  Thank you, Judge.
 2            THE COURT:  All right.  Anything else you
 3    want to say on the motion, Mr. Castellano?
 4            MR. CASTELLANO:  Not at this time, Your
 5    Honor.
 6            THE COURT:  If I were to require what I
 7    have required of the other defendants that are going
 8    to trial on their bad acts, they're really not bad
 9    acts anymore; they're just evidence that the
10    Government intends to put on as far as whether it's
11    relevant to, or to try to establish enterprise or a
12    furtherance.
13            Would you be in agreement as to Mr. Garcia,
14    that you'll look at this list, including the May 16,
15    1995 incident, and by January 22, provide the
16    evidence you're going to rely upon to establish and
17    prove that these are related to the establishment of
18    the enterprise and in furtherance of the enterprise
19    activity?
20            MR. CASTELLANO:  Yes, Your Honor.  And just
21    looking at this quickly, at least the third page of
22    the document I have here is actually relevant.  It's
23    evidence that we have to prove at the upcoming trial.
24    So they include the Gregg Marcantel conspiracy.  So
25    when it talks about going on a mission, using coded
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    language regarding firearms, giving Mandel Lon Parker
 2    a hotshot after the murder, all that is part of the
 3    evidence in this case.  So we'll be using all of
 4    that.  So we actually have to prove that.
 5            MS. SIRIGNANO:  Your Honor --
 6            THE COURT:  Hold on a second.  Let me
 7    finish up talking to Mr. Castellano, and then I'll
 8    allow you to have rebuttal.
 9            MS. SIRIGNANO:  I apologize.
10            THE COURT:  On that second one that we were
11    talking about, on the May 16, 1995, I think I asked
12    about the overt acts.  But you'll not try to get that
13    into evidence under 404(b)?  You'll also try to tie
14    that to proof of the enterprise and the enterprise's
15    ongoing activity?
16            MR. CASTELLANO:  That's a good question,
17    Your Honor.  That is actually one I could see being
18    used as 404(b).  Because if the allegation is that
19    Mr. Garcia is not trafficking cocaine, or lacks
20    knowledge, then I think that actually could be used
21    as 404(b), to show lack of mistake, knowledge, and
22    intent, among other 404(b) factors.  So I think that
23    one actually could be under 404(b).
24            THE COURT:  So what would be the legitimate
25    purpose of the 404(b) evidence in this trial?  What
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   would you be trying to establish in this case that
2   would be helpful to the jury?
3           MR. CASTELLANO:  Basically, what I just
4   said.  So if we put on other evidence that Mr. Garcia
5   had been trafficking in drugs, and then put on a
6   defense indicating that it wasn't him, or it was a
7   mistake, things of that nature, then I think we could
8   put that on to show lack of mistake, knowledge, and
9   intent indicating -- well, those 404(b) purposes.
10          In other words, if somebody was at a Border
11  Patrol checkpoint and they were denying knowledge of
12  the drugs in the vehicle, then we could put on
13  potentially a prior conviction.
14          THE COURT:  Okay.
15          MR. CASTELLANO:  Indicating that they did
16  have knowledge of the drugs in the vehicle.  It would
17  be something to that effect.
18          THE COURT:  You don't have to reveal any
19  sort of trial strategy, if you don't want to, but do
20  you intend to try to deny that Mr. Garcia used,
21  trafficked drugs, did that with other people?
22          MS. SIRIGNANO:  Your Honor, Mr. Garcia is
23  not charged with drug trafficking in this case.  He's
24  charged with being a felon in possession of a
25  firearm, a violation of 18 United States Code 924(c),
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and the VICAR attempt to murder against Mr.

2    Marcantel.  So if the Government wants to file a

3    404(b) motion to explain why it intends to bring in

4    my client's prior convictions from 1995 --

5              THE COURT:  Well, I guess that's what

6    they've done with their letter.  And almost all this

7    is not 404(b).  But we may have one with this 1995,

8    that they're concerned that there may be -- that

9    Mr. Garcia may attempt to establish that any

10   connection he had with drugs was an accident or

11   misidentification, or something like that.  So they

12   want this 404(b) evidence in the wings, in case he

13   doesn't.

14              If you don't want to tell me your strategy,

15   what I'd be inclined to do is we've identified this.

16   I'll just have to rule at the time, get a temperature

17   as to what your defense is through either your

18   cross-examination in the Government's case-in-chief,

19   or as you begin to put it on, they may be allowed to

20   put it on in rebuttal.

21              MS. SIRIGNANO:  I understand what you're

22   saying, Judge.  The Government's motion didn't

23   identify these as 404(b) specifically, and the

24   Government has yet to say other than mistake or

25   denial of -- it wasn't me, why they would be offering

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    it.

2          My point is, Judge, is that they are highly

3    prejudicial.  They have nothing to do with the SNM,

4    and they occurred prior to when the Government

5    alleges that Mr. Garcia joined the SNM, which was

6    1999.  So without revealing any trial strategy, I

7    understand what they're trying to do.  I just think,

8    after a 403 balancing test, this conviction was

9    looked at by the Court in the drug case pursuant to a

10   609 motion.  And the Court had ruled in that case

11   that the fact of the conviction, and not the actual

12   substance of the conviction, could be used if

13   Mr. Garcia took the stand.

14          So my position is, unless the Government

15   can show specifically under 404(b) why it wants to

16   enter this in as evidence, it's highly prejudicial

17   and should be excluded under a 403 balancing, Judge.

18          THE COURT:  Mr. Castellano, do you have

19   anything further on your letter or this motion?

20          MR. CASTELLANO:  Yes, Your Honor.  In

21   response to Ms. Sirignano's point, in the drug case,

22   if you recall, the Government said it would not

23   present any racketeering evidence whatsoever in that

24   case.  It was up to the defense whether they wanted

25   to open the door.  So we were talking about a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    different subject matter at that time.
 2             The other thing about drug trafficking is
 3    that the drug trafficking does affect interstate
 4    commerce.  So it's not only racketeering activity,
 5    but it's also something that affects commerce.  So
 6    I'll get the Court thinking about this now.
 7             Title 21, Section 801 -- I've highlighted
 8    it.  We're going to ask the Court at some point for
 9    an instruction indicating that drug trafficking does
10    affect interstate or foreign commerce.  That's a
11    finding by Congress.  And I'll make it a little bit
12    bigger for the Court to see.  So what Congress has
13    said that even -- sometimes, even when drug
14    trafficking is intrastate, it still has an effect on
15    interstate commerce.  I've asked for that at least
16    once before, and was granted that, at least in the
17    Aryan Brotherhood trials.  So I'll just put that on
18    the plate now, and the Court and parties can think
19    about that.  But that is an instruction we will
20    request, and that meets at least two elements of the
21    offense in this case.
22             THE COURT:  All right.  Anything else on
23    this motion, Mr. Castellano?
24             MR. CASTELLANO:  No, Your Honor.
25             THE COURT:  All right.  Anything further,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Ms. Sirignano, on this motion?

2              MS. SIRIGNANO:  Yes, Your Honor.  I'm still

3    unclear from the Government how they're going to try

4    and offer that first alleged bad act, whether or not

5    it's 404(b).  And now Mr. Castellano is switching.

6              THE COURT:  Do you mean the May 16, the

7    second bad act?

8              MS. SIRIGNANO:  Well, I think he's

9    referring to -- May 16, yes, Your Honor, I'm sorry.

10   That's number 2.  Either it's 404(b) or it's

11   enterprise --

12             THE COURT:  No, he's saying he agrees that

13   he probably can't use that for enterprise.  He's just

14   saying is if, particular to Mr. Garcia, if he comes

15   in at trial and suggests he's never used drugs, never

16   been in drug trafficking, then he'll use that to

17   establish that that is not the case.  As he likened

18   it, it's like the tractor-trailer cases we have out

19   here.  And that seems to me that that is a proper

20   purpose under 404(b).  But it's kind of tied to what

21   the defense is.

22             MS. SIRIGNANO:  Correct, Your Honor.

23             And I also understand from Mr. Castellano

24   that he's going to try and use these prior drug

25   convictions to satisfy his element under VICAR for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    interstate commerce.
2             THE COURT:  That's true, the other ones he
3    is.
4             MS. SIRIGNANO:  Okay, Judge.
5             THE COURT:  Have I captured your position?
6             MR. CASTELLANO:  You have, Your Honor.
7    Regarding the May 16, 1995 conviction, I'm not sure I
8    can tie that in to the enterprise.  If I can, I will.
9    And I'll submit supporting documentation to Ms.
10   Sirignano.  But at this point, I think that is
11   404(b).
12            THE COURT:  Okay.
13            MS. SIRIGNANO:  We'll await the
14   documentation, Judge.
15            Judge, looking at that front page, please,
16   and it is number 5, counting down, "On or about
17   February 19, 2004, Christopher Garcia was shot by
18   rival gang member SD at the defendant's residence."
19   I don't understand how this could be a bad act.  My
20   client was shot in the abdomen, and he still suffers
21   complications from that.  This wasn't his action.
22   Someone shot him.
23            THE COURT:  Well, you don't want it in the
24   trial, right?
25            MS. SIRIGNANO:  It doesn't need to be in
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

125

```
1    the trial, Judge.
2              THE COURT:  You don't want it in, right?
3              MS. SIRIGNANO:  I do not.
4              THE COURT:  So it's probably bad.  It's a
5    bad act of somebody.
6              MS. SIRIGNANO:  Well, how could him being
7    shot --
8              THE COURT:  But I mean, I guess I've got to
9    be liberal to you.  If you don't want it in, then --
10             MS. SIRIGNANO:  The only reason why I don't
11   want it in is because I don't believe it's his
12   actions.
13             THE COURT:  No, I think you want it out for
14   other reasons.  You don't want the fact that
15   Mr. Garcia is in one gang, and he's being shot by
16   another gang?  You don't want that in the trial.
17             MS. SIRIGNANO:  My first argument, Judge,
18   would be that I don't understand how him being shot
19   is an alleged bad act on his part.
20             THE COURT:  Well, then, I guess if you
21   don't think it's 404(b), then it can come in without
22   filtering it through this motion, then.
23             MS. SIRIGNANO:  I'm sorry, Judge.  I didn't
24   understand you.
25             THE COURT:  Well, if you're saying it's not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   404(b) evidence, because it doesn't pertain to him,
 2   if you're making that argument, then I don't guess we
 3   need to argue it here, because it will come in for
 4   just general rules, 401.
 5           MS. SIRIGNANO:  I'm arguing that -- well,
 6   it will come in as 401, yes, Judge.  I'm arguing here
 7   we're look at a summary of alleged bad acts that the
 8   United States --
 9           THE COURT:  Well, I think we've noted that
10   the Government has been -- everybody has criticized
11   the overinclusiveness of this.  I mean, if you don't
12   think it's 404(b), then that's fine, we'll just
13   analyze it as 401 evidence.
14           MS. SIRIGNANO:  Thank you, Judge.
15           THE COURT:  Anything else?
16           MS. SIRIGNANO:  No, Your Honor.
17           THE COURT:  All right.  So then, as to all
18   the ones except the May 16, 1995, we'll just use the
19   same mechanism that we've had.  I think the
20   Government has established, at least to the Court's
21   satisfaction, based largely on their representations,
22   that they have evidence that, for the present time,
23   I'm not going to exclude any of that on the basis of
24   relevance.  None of that will come in under 404(b).
25   It will only come in if it's relevant to establishing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    enterprise, or that the actions here were in

2    furtherance of the enterprise.

3            So the Government has agreed to -- so that

4    the defendants can make an informed decision -- has

5    agreed that it will, by January 22, indicate, A,

6    which ones they're going to advance.  They may cut

7    some of them out.  And then, secondly, what evidence

8    they have in support.  So the defendants will then be

9    able to make a more informed relevancy objection.

10           Again, I'd hoped everybody would really

11   eyeball this, particularly on the defendants' side,

12   when they decide whether they're going to raise an

13   objection.  Remember, it's a relevancy objection.

14   We're at a 401 on those.  So chances are, if the

15   Government's evidence can -- has any tendency to

16   prove the enterprise, or that the actions were taken

17   in furtherance, it's going to come in.  I'm not

18   making a determination whether it's by a

19   preponderance of the evidence or beyond a reasonable

20   doubt.  It's simply a 401 standard.  So be mindful of

21   that.

22           And then, as to the May 16, 1995 conduct,

23   for the present time, that is not going to be

24   relevant to establishing enterprise or the

25   furtherance of it.  So the Government will have to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  notice the Court and the defendants back up on that

2  if they're attempting to establish it's relevant.  It

3  will just be 404(b).  It will only come in to the

4  case if the defendant suggests, Mr. Garcia suggests,

5  either through cross-examination, that that's his

6  defense, or in his case-in-chief that he's raising

7  the defense that he never was around any drugs, never

8  used any drugs, didn't traffic in any drugs, didn't

9  conspire with anybody else to do it.  If he stays

10  away from those defenses, either through

11  cross-examination or through his case-in-chief, then

12  that May 16 incident will not come in.

13          All right.  Anything else on that motion,

14  the bad acts or 401 enterprise furtherance that we

15  need to discuss, Mr. Castellano?

16          MR. CASTELLANO:  No, Your Honor.

17          THE COURT:  Ms. Sirignano.

18          MS. SIRIGNANO:  No, Your Honor.  Thank you.

19          THE COURT:  So that's how I'll rule on that

20  motion.

21          All right.  My papers are messed up here,

22  because we kind of went back and forth and did some

23  different things, and I never had them all clipped

24  together, responses and things.  But looking over

25  what Ms. Wild prepared as the clerk's minutes, which

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1    was going to be prepopulated clerk's minutes, to help
 2    Ms. Standridge follow what we were doing today.
 3            It looks to me like we have completed the
 4    work that I brought down just for this week.  I know
 5    we have a number of outstanding motions that we need
 6    to continue.  Does anybody know or see anything on
 7    the packet that we -- oh, did I not do Mr. Perez'?
 8    Did I skip over it somehow?
 9            MR. CASTELLANO:  You did, Your Honor.
10            MS. FOX-YOUNG:  Yes, Your Honor, it was
11    filed a little bit later.  So I think it's Document
12    1558.
13            THE COURT:  Okay.  So it just didn't make
14    the list.
15            MS. FOX-YOUNG:  I think it made the list,
16    but somehow --
17            THE COURT:  Ms. Wild's list, because I
18    stopped with 1555.  So all right.  Well, let's take
19    it up then.
20            MR. CASTELLANO:  May we approach on that
21    one, Your Honor?
22            THE COURT:  Approach the bench.
23            (The following proceedings were held at the
24    bench.)
25            MR. CASTELLANO:  For each of these, I've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    normally been putting the document on the visualizer.

2    On Mr. Perez, I'll just tell the Court which ones I

3    want to include, but there is a crime on here I'm

4    going to keep out from the rest of the group.

5              MS. FOX-YOUNG:  Is there even anything on

6    this first page you want to do?  They're all so old.

7              MR. CASTELLANO:  I'm talking about the last

8    three on the page.

9              MS. FOX-YOUNG:  Want to do the Ferris

10   Bueller dummy?

11             MR. CASTELLANO:  Possibly.  I'll see.  I'm

12   just bringing that to the Court's attention.  I don't

13   want to draw attention to the first part.

14             MS. FOX-YOUNG:  Do you want to just put

15   something over this first eight, or whatever it is?

16             MR. CASTELLANO:  I'll tell the Court that

17   the bottom three on the first page are at play.

18             THE COURT:  So you're just going to give

19   me -- on his letter you're just going to give me the

20   information orally.

21             MR. CASTELLANO:  Yes.

22             THE COURT:  I'm not sure you attached it to

23   your motion, unless it was the letter.

24             MS. FOX-YOUNG:  It's attached in the

25   filing.  And I'm sorry, I don't have a printed copy

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    of it.  It's an exhibit to 1558.

 2              THE COURT:  1058.

 3              MS. FOX-YOUNG:  It's an exhibit to this

 4    Document 1558.  I don't have it printed out.

 5              THE COURT:  Ms. Standridge, can you print

 6    out -- there is an attachment to this 1558.  Can you

 7    print it?  So you're just going to give me or rely on

 8    the information you would normally put on the screen,

 9    is that what you're telling me?

10              MR. CASTELLANO:  What I'll do, I'll just

11    ask the Court to -- I'll let the Court know that the

12    last three entries on that page are in play, and that

13    the conduct or the allegation for the 1987 to 1993,

14    we think are not in play.

15              THE COURT:  Okay.  All right.  Okay.  And

16    do you have either for the -- what -- for the rest of

17    the document you have tying them to overt acts?

18              MR. CASTELLANO:  Mr. Perez was not charged

19    in the RICO indictment, so I do not have overt acts

20    for this.

21              THE COURT:  All right.

22              MR. CASTELLANO:  We can clarify that also

23    in the larger group.

24              THE COURT:  All right.  Anything else?

25              MR. CASTELLANO:  No, sir.  I just wanted to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    let the Court know that.

2            THE COURT:  Okay.

3            (The following proceedings were held in

4    open court.)

5            THE COURT:  All right.  I haven't been all

6    the way through the motion, but I now have the

7    motion, and I now have the attachment to the motion,

8    which is Ms. Armijo's letter of November 30.  All

9    right.  So you're going to do orally what we've been

10   doing a little bit on the screen.  So you're going to

11   tell me which ones are out, Mr. Castellano?

12           MS. FOX-YOUNG:  Your Honor, could I just

13   make a few remarks before we get into it on our

14   motion?

15           THE COURT:  I should have allowed you to do

16   so.  Yes, you may.

17           MS. FOX-YOUNG:  Your Honor, the Government

18   alleges, I think, approximately 30 acts or provided

19   notice of approximately 30 acts.  I'd just tell the

20   Court we contest that any of these are relevant to

21   the establishment of the enterprise, or -- and also

22   were not conducted in furtherance of the activities

23   of the enterprise.  I think we have, in the interests

24   of efficiency, knocked out the first few, which

25   should make our work a little bit easier.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              But I'll tell the Court, even on the
 2    Government's evidence and allegations, the Government
 3    doesn't even allege that Mr. Perez was a member of
 4    the SNM, was a validated member until 2009.  And so
 5    the only acts that occur after that in this listing
 6    are the final eight.  Of those -- and we contest the
 7    relevancy of the others as well -- and I won't get
 8    into 404(b), unless the Government intends to notice
 9    them that way.  But in addition to the fact that
10    these -- you know, alleged crimes are crimes
11    committed on the streets, sort of minor disciplinary
12    issues, I'm looking at the last eight.  In custody
13    are unrelated to the enterprise in any way.  We also
14    have an issue where I think three of them may not be
15    Mr. Perez.  And not having seen the underlying
16    documents, I can't be certain, and maybe Mr.
17    Castellano has more on that.  But just looking at an
18    NM Court search, and trying to chase them down with
19    what we do have, I think the May 6, 2010, the August
20    31, 2010, and the February 10, 2012 incidents may not
21    be this Rudy Perez.  But perhaps the Government has
22    the supporting documents which we have not received.
23              Thank you, Your Honor.
24              THE COURT:  All right.  Thank you, Ms.
25    Fox-Young.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              All right.  Mr. Castellano, Ms. Fox-Young
 2    indicated y'all had talked and some of these are off
 3    the table.
 4              MR. CASTELLANO:  Yes, Your Honor.
 5              THE COURT:  Do you want to give me which
 6    ones the Government will not be pursuing at trial?
 7              MR. CASTELLANO:  So on the first page of
 8    the document we think at play at this point are the
 9    bottom three allegations on page 1.  So December 2,
10    1994, would be the first one on that page.
11              THE COURT:  Okay.
12              MR. CASTELLANO:  And then I haven't
13    finished discussing this with Ms. Fox-Young, but on
14    the second page I have marked through a few, which I
15    think we can agree on.
16              THE COURT:  Okay.
17              MR. CASTELLANO:  If I have any reason to
18    believe otherwise, I'll provide the documentation.
19    But at this point I don't think that we will.
20              THE COURT:  Okay.  Do you want to give
21    those to me?
22              MR. CASTELLANO:  Yes, on page 2, there is
23    March 21, 2002, fraud.  I have this one up on the
24    screen.
25              THE COURT:  Oh, okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. CASTELLANO:  Then June 27, 2002.
2              THE COURT:  Okay.
3              MR. CASTELLANO:  August 28, 2008.
4              THE COURT:  Okay.
5              MR. CASTELLANO:  And July 29, 2010.
6              THE COURT:  All right.
7              MR. CASTELLANO:  And in terms of the
8      documents that Ms. Fox-Young referenced, I don't have
9      anything at this point.  He was another one I wasn't
10     able to check the underlying documents beforehand.  I
11     will say that things like --
12             THE COURT:  Now, what I understand is Mr.
13     Perez is not charged in the RICO counts, so we're not
14     talking about any of these being alleged or pled as
15     overt acts?
16             MR. CASTELLANO:  That's correct, none of
17     these are alleged in overt acts in the RICO
18     indictment.
19             THE COURT:  So are you intending to use any
20     of these as in any way to establish the enterprise or
21     that they were done in furtherance of the enterprise?
22             MR. CASTELLANO:  Yes.
23             THE COURT:  Do you want to identify which
24     ones you're going to so use?
25             MR. CASTELLANO:  I'll go with the ones that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    I think are easier, since I don't have the documents.
2    On the first page, the assault on two inmates in
3    April of 1996.
4               THE COURT:  Okay.
5               MR. CASTELLANO:  On September 23, 1996 -- I
6    have to look at the documents on that one.  It's
7    related to a dummy made out of clothes on his bunk.
8    I don't recall what that was about.
9               THE COURT:  Okay.
10              MR. CASTELLANO:  May 7, 2003, he possessed
11   a stinger, a homemade weapon.  So that would be the
12   expectation that members, and many times inmates,
13   sometimes are required to have homemade weapons or
14   shanks for protection and to assault others.
15              And then the other ones related to crimes
16   of violence would be assaultive behavior related to
17   the SNM.  But once again, those I'm going to have to
18   find the underlying documents.
19              THE COURT:  Is that the next one, December
20   31?
21              MR. CASTELLANO:  Yes.  And the following
22   one on February 14.
23              THE COURT:  Okay.
24              MR. CASTELLANO:  That's the same with all
25   of those.  There is a possession of a controlled
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    substance and breaking and entering in 2007.  I'm

2    going to have to look at those more closely.  In

3    2008, there is bribery of a witness.  That one could

4    be in play based on allegations in the indictment of

5    bribery or intimidation of witnesses.  But for each

6    of these, frankly, I will have to go back and look

7    more closely at the documents.

8              THE COURT:  All right.  Let me ask the

9    question this way:  If you cannot establish any of

10   these as related to the enterprise -- I'm putting

11   little e's next to these ones that you've

12   identified -- if the evidence doesn't pan out for

13   enterprise, will you agree not to try to get them in

14   through 404(b), to establish some other legitimate

15   purpose?

16             MR. CASTELLANO:  I think the answer is

17   probably.  Especially, if we have things like

18   assaults or batteries on the street, then I think

19   there is a pretty good chance we will not move the

20   admission, even under 404(b).

21             THE COURT:  All right.  Here's what I

22   propose:  I propose to -- let me give the numbers

23   here, April 11, 1996, September 23, 1996, May 7,

24   2003, December 31, 2005, February 14, 2006, July 2,

25   2007, and January 18, 2008.  For those, those are on

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    the table.  The Government will give you proof that

2    those will be used, how they'll use those, or how

3    they'll prove those.  So that you can determine

4    whether they're relevant to enterprise or furtherance

5    of the enterprise; understanding Mr. Perez wasn't

6    charged with that, but it's still evidence that can

7    be used to establish those things.  And that will

8    allow you to make a more informed objection to

9    whether those actually prove it.

10           The rest will not come in through 404(b).

11   If Mr. Castellano wants to put something back on, he

12   needs to do that pretty promptly so that we can

13   discuss it.  But for the present time, they're off

14   the table for 404(b).  On some of the others, if he

15   wants to look and put them in what I'm calling the

16   enterprise, he needs to do that by January 22, and

17   then provide you the information that he's agreed to

18   provide the others.

19           Is that acceptable to the Government, Mr.

20   Castellano?

21           MR. CASTELLANO:  It is, Your Honor.  I'd

22   like to add two more to that list.

23           THE COURT:  Okay.

24           MR. CASTELLANO:  One is a May 6 to, 2010

25   possession of a controlled substance.  And the caveat

SANTA FE OFFICE                                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                             Albuquerque, NM 87102
(505) 989-4949                                                                                         (505) 843-9494
FAX (505) 843-9492                                                                             FAX (505) 843-9492
                                                                                                     1-800-669-9492
BEAN & ASSOCIATES, Inc.                                                                  e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    is, if that was in prison; there is no indication

 2    from the notes that it is.  And then on June 6, 2010,

 3    inciting other inmates, if that is SNM related.  So

 4    we would have to tie that in.

 5              THE COURT:  Okay.  Otherwise, what I said

 6    is acceptable to the Government?

 7              MR. CASTELLANO:  It is.  Can you give me

 8    the ones prior to May 7, 2003?  That's where I was

 9    caught up, but I missed the ones before that.

10              THE COURT:  I had the April 11, 1996 event,

11    and the September 23, 1996 event, is what I'm putting

12    them in the e box, where they're going to be relevant

13    to enterprise or furthering the enterprise activity,

14    or they're not going to come in at all.

15              MR. CASTELLANO:  We agree, Your Honor.

16    That's acceptable.

17              THE COURT:  Can you agree to that

18    mechanism?  Because, basically, you're not going to

19    see any 404(b) evidence at trial.  You're only going

20    to see this coming in, if at all, to support their

21    proof on enterprise and furtherance of the

22    enterprise's activities.

23              MS. FOX-YOUNG:  Yes, Judge.  I think the

24    mechanism is fine.  And we'll just renew any

25    objections at such time as they provide the proof on
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    those.

 2            Thank you, Judge.

 3            THE COURT:  Let me ask you, Mr. Castellano:

 4    Do you think, since Mr. Perez is not charged in the

 5    racketeering side, that his 403 arguments have more

 6    force than the folks who are charged with

 7    racketeering activities, because this evidence is

 8    being used -- it's prejudicial to the defendants, but

 9    it's being used to establish the enterprise, which is

10    relevant solely to other defendants; that the 403

11    argument might have more force coming from Mr. Perez

12    than it would be from the others who are charged with

13    overt acts?

14            MR. CASTELLANO:  I don't think I could

15    agree to that, Your Honor.  I think, because when it

16    comes to a VICAR count, which Mr. Perez is charged

17    with, we only have to prove that the enterprise

18    engaged in racketeering activity.  So any member of

19    the enterprise who does these things, it would be

20    attributable to the enterprise and to the other

21    defendants.

22            THE COURT:  Yeah, I think I agree with

23    that.

24            All right.  If we've taken care of, then,

25    his bad acts, I'll put that aside.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              What -- do y'all have an understanding from
 2    Ms. Wild what we're moving to now that we've
 3    completed the things I brought down for these three
 4    days?  Mr. Castellano?  Ms. Armijo?  Did y'all have
 5    some understanding if we were going to complete the
 6    James hearing or the suppression hearings we were
 7    going to try to clean up?  What did y'all understand
 8    we were going to do if we got through this stack?
 9              MS. ARMIJO:  I think we were going to
10    finish the James hearing.
11              THE COURT:  James hearing.  Defendants have
12    any disagreement?
13              MS. HARBOUR-VALDEZ:  That was our
14    understanding.
15              THE COURT:  So shall we take that up after
16    lunch then?  All right.  So we'll see y'all after
17    lunch.  Have a good lunch.
18              (The Court stood in recess.)
19              THE COURT:  All right.  Let's go on the
20    record here.  I think we've got an attorney for each
21    defendant.  Look around the room, make sure everyone
22    has an attorney.
23              All right.  Mr. Castellano, you indicated
24    that y'all had worked with Ms. Wild to move then to
25    the James hearing.  Can you remind me where we are in
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                        1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                     e-mail: info@litsupport.com

```
1    that proceeding?
2            MR. CASTELLANO:  When we last left off, I
3    believe some people were cross-examining Agent Acee
4    regarding statements.  And I don't know if anyone has
5    any cross remaining.
6            THE COURT:  All right.  Why don't I ask you
7    to return to the witness stand, Mr. Acee, and I'll
8    remind you that you're still under oath.
9            Did anyone who was questioning at the time
10   need to finish theirs?  I know Mr. Lowry was up.  But
11   was there anybody that was in the midst of
12   questioning Mr. Acee when we took a break?
13           MR. LOWRY:  That was myself.
14           THE COURT:  You were up?  Okay.  So you
15   want to continue, Mr. Lowry?
16           MR. LOWRY:  I do, Your Honor.
17           And I just have one housekeeping matter I
18   want to address before we get going, if that's okay.
19           THE COURT:  You may.
20           MR. LOWRY:  Your Honor, at the beginning of
21   this week's hearings, I took over from Ms. Sirignano,
22   it's Document 1454 -- no, pardon me, there are too
23   many documents in this case, Your Honor -- but it was
24   Document 1329.  And it was the motion for an order to
25   show cause.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            I've worked with my colleagues on the other
 2    side of this, and we've ironed out understandings on
 3    all the issues.  But after -- I want to -- frankly, I
 4    want to pick up on a riff that the Court had this
 5    morning about, you know, just the frustration level
 6    in the courtroom.  And it just reminded me of that
 7    with the FBI agent that testified today, you know.
 8    The reason I'm bringing this up is because, back in
 9    May, at the hearings there were numerous motions to
10    compel a lot of it dealing with Brady and Giglio
11    material.  And at the time, you had asked the
12    Government to look at rough notes and things like
13    that from FBI agents, and to lay eyes on those
14    documents, to see if there is any Brady or
15    Giglio-type material there.  And it's just
16    disconcerting to the defendants and to counsel, when
17    we hear from an agent, like we did just now on the
18    stand, that, you know, they just got a request for
19    their rough notes yesterday.  So we have no reason to
20    believe that that kind of Brady review has been done.
21    And it just speaks to the merits of this motion for
22    an order to show cause.
23            Now, I'm not a big fan of orders to show
24    cause.  But I think it bears repeating, we heard this
25    last week as well.  We saw a number of witnesses come
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

 1  in and they're employees with the Department of

 2  Corrections, and not necessarily low-level employees,

 3  Deputy Director Roark is a high-ranking employee with

 4  the Department of Corrections.  And they all had

 5  material that is relevant and disclosable in this

 6  case, some of which is Brady material.

 7          And I just want to implore the Court to

 8  work with the defense teams, and you know, get our

 9  colleagues in the U.S. Attorney's Office to perform

10  the type of Brady review that this Court requested

11  back in May of this year.  So --

12          THE COURT:  Well, is the motion, though,

13  that, the show cause, is there anything else to be

14  done on that?  Did you reach an agreement with --

15          MR. LOWRY:  We reached an agreement on

16  everything, and we're actually working on that.  But,

17  if you look at the motion itself -- and the United

18  States responded at Doc No. 1401, and the defendants

19  replied at Document 1454.

20          But the part -- the reason I'm bringing

21  this up now is one of the things that was left

22  outstanding -- and I did talk with my colleagues, and

23  I told them I was going to bring this to the Court's

24  attention, and that was before the testimony today --

25  but on page 4, there is a bullet point that -- one of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the requests is to review or disclose Brady, Giglio,
 2    and Rule 16 notes of CHS law enforcement handlers
 3    within 14 days.  And there is a cite to the May
 4    transcripts in here.
 5            And, again, it bears repeating, especially
 6    in light of the testimony that we just heard, that
 7    the request hadn't even been made for Eric Duran's
 8    handler.  And, obviously, Eric Duran is going to be a
 9    key witness for the Government.  And, frankly, if
10    it's an oversight, it's an oversight that's, in my
11    view, inexplicable.
12            THE COURT:  All right.  What's your
13    request, though?
14            MR. LOWRY:  Well, I think at this point,
15    you know, everybody was familiar with the Court's
16    ruling after the May hearing -- and I believe that's
17    Doc 907, when the Court in a very lengthy opinion
18    walked through the remedies, and all of this, you
19    know, the requests.  And the Court laid out in very
20    detailed fashion what the appropriate response is,
21    and asked the parties to work, as this Court always
22    does, in a collegial and professional fashion.
23            And when I filed our request for Brady and
24    Giglio materials, you know, months ago, I
25    acknowledged the Court's position.  And my last
```



SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                      e-mail: info@litsupport.com

```
 1   sentence in that motion was, you know, we're waiting
 2   patiently.  But patience wears thin.
 3           And I think as we approach -- and I'm not
 4   going to be good with the days, but I think you said
 5   it this morning we're, what, maybe 31 days from
 6   trial.
 7           THE COURT:  I think we're 39 days from
 8   trial.
 9           MR. LOWRY:  This is the type of material
10   that we need to be working with and working on, to
11   develop the defenses in this case.  So, at this time,
12   I think we need to ratchet up the remedy a little
13   bit.  And I know that the Court said maybe it's a
14   limitation on the scope of testimony of a witness, or
15   maybe it's a striking of a witness.  But if we can't
16   get the raw material that this Court ordered to be
17   produced in May of this year, and we're this close to
18   trial, I think that the Court has to consider other
19   appropriate remedies that the circuits have
20   authorized the Court to consider.
21           THE COURT:  Well, but what are you asking
22   me to do?  On one hand, you're telling me that you've
23   worked with the Government to resolve all outstanding
24   disputes.  But I'm just hearing kind of a complaint.
25           MR. LOWRY:  Well, it's not a complaint.  We
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   just heard from the FBI agent that she has rough

 2   notes.

 3            THE COURT:  What do you want me to do?

 4            MR. LOWRY:  I want you to order them to be

 5   produced.

 6            THE COURT:  I think they've agreed to

 7   produce it.  They're shaking her heads yes, it's

 8   going to be produced.

 9            MR. CASTELLANO:  If I remember correctly,

10   this morning I couldn't remember but I think Ms.

11   Armijo reminded me that the CI file for Eric Duran

12   was disclosed on Monday.  So the defense can confirm

13   that or not.

14            THE COURT:  That's en route to Mr. Aoki?

15            MR. CASTELLANO:  I believe it was sent to

16   him on Monday, if I'm not mistaken.

17            MR. LOWRY:  In fairness to my colleagues

18   here, they worked with us and got us materials that

19   were relevant to the ELSUR motion, Your Honor.

20            But I guess I've been asking for these

21   rough notes for some time.  And we hear today that

22   they do exist.  And they weren't even brought to the

23   courtroom.  And this is in light of multiple

24   requests.

25            So I guess, Your Honor, if the Court is not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    inclined for any other relief, can we expedite that,

2    so we can get them in the next couple of days?  There

3    is scans.  There is fax.  I mean, there is ways to

4    make that happen.

5           I would just ask to admonish the United

6    States that they know who the key witnesses are in

7    this case.  They know who the right folks at the

8    Department of Corrections are.  We heard about the

9    STIU unit.  And this gives me some concern.  They've

10   disclosed what the testimony was, I believe, from

11   Adam Vigil, that there is a hard STIU file.  And

12   that's what we got.  But he also testified at length

13   about a soft STIU file.  And nobody has seen the,

14   quote, "soft STIU files."

15          And the sense I've had from all the

16   hearings we've had is there is materials scattered

17   hither and yon.  And we're not seeing the light of

18   day of any of it.

19          And as we approach trial, I get more

20   concerned about substantial reservoirs of, as

21   Ms. Jacks pointed out, exculpatory material, in the

22   sense that they debrief with these folks; some people

23   say:  These folks are involved, but not those.

24   Others have a different set of people that are

25   involved.  The absence of involvement is exculpatory.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   And I think all of these materials need to be sifted
 2   and reviewed and disclosed.
 3          And I wish I had a more confident feeling
 4   that that was being done in a methodical, timely, and
 5   efficient manner.  And it is a complaint, Your Honor.
 6   But I think it's a complaint worth taking notice of,
 7   given the testimony we've seen over the course of the
 8   last two weeks.
 9          It's not just a complaint.  It's a
10   complaint with merit.
11          THE COURT:  Well, I guess I don't agree
12   with Ms. Jacks, that just because a name doesn't
13   appear, that's exculpatory.  I think that reads Brady
14   way too broadly.  So I'll not adopt that.
15          Now, you're getting the file.  There is no
16   guarantee it contains either Rule 16, exculpatory, or
17   Brady material.  So the Government is just providing
18   it to you.  I won't order any special deadlines on
19   it.
20          So right at the moment, with the resolution
21   of the motion to show cause, I don't see a problem.
22          So let's continue our examination of Mr.
23   Acee at this time.  Mr. Lowry.
24                JAMES HEARING RESUMES
25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                         BRYAN ACEE,
 2         after having been previously sworn under oath,
 3         was questioned and testified as follows:
 4                         EXAMINATION
 5   BY MR. LOWRY:
 6         Q.    Agent Acee, good afternoon.
 7         A.    Good afternoon.
 8         Q.    Agent Acee, you were the handler for Eric
 9   Duran?
10         A.    Yes, sir.
11         Q.    And was testimony we heard this morning
12   correct that you took over those responsibilities in
13   early August of 2015?
14         A.    Yes, sir.
15         Q.    And as part of your working with Mr. Duran,
16   you spoke to him about how to record statements?
17         A.    That's fair to say.  I mean, he'd already
18   had a device and was in the facility by the time I
19   met him.
20         Q.    And one of the things you reminded Mr.
21   Duran of is that he was essentially working for the
22   Government?
23         A.    Yes.
24         Q.    And you implored him, when he was making
25   recordings, that he had to get two people to speak
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    directly to each other, because his status as a

2    Government agent, individuals could not conspire with

3    him?

4         A.   Yes, at times.  Because he'd set up drug

5    deals on the street, yeah.

6         Q.   But that's a point you wanted to emphasize

7    with him, that because he's a Government agent, you

8    cannot conspire with a Government agent?

9         A.   Correct.

10        Q.   Did you have a similar conversation with

11   Mario Montoya?

12        A.   Yes.

13        Q.   And when did you open a file for Mario

14   Montoya to become a Government agent?

15             MR. CASTELLANO:  Objection, relevance.

16             MR. LOWRY:  The relevance, Your Honor, is

17   for the James hearing, the three prongs:  We have to

18   show, one, that there is a conspiracy.  And I think

19   what the agent just testified is it's impossible to

20   conspire with the Government agent.  So the timing of

21   this would be critical for the defense to understand

22   what statements made to Mr. Montoya were during that

23   period of time.

24             MR. CASTELLANO:  Well, we agree that the

25   Government cooperator cannot be a member of the

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   conspiracy.  But we're not focusing on the actual
 2   statements themselves to make that determination.
 3            THE COURT:  Well, I'll overrule the
 4   objection.  He can state when he opened the file.
 5       A.   It's tough for me to say exactly when.  But
 6   it was fairly early on in my opening of the SNM case.
 7       Q.   Do you think it was before August of 2015?
 8       A.   No.
 9       Q.   Can you just give us a month?
10       A.   I can't.  I can get back to you with an
11   exact date.
12       Q.   Okay.  I appreciate that.  I'll take you at
13   your word on that.
14       A.   Before the day is over, I can have an
15   answer.
16       Q.   Thank you.
17            Is it fair to say that in the recorded
18   calls from Duran to the people outside of the
19   facility that there was some effort on the part of
20   the folks inside the facility to keep Chris Garcia in
21   the dark about why they needed weapons?
22       A.   I think that there was initially -- that's
23   true initially of Mr. Baca, from my interpretation of
24   the conversation.
25       Q.   And again, but not just your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    interpretation, but the recordings actually reflect

2    that they didn't want Mr. Garcia to have any idea

3    what they were doing?

4         A.    Yes, that's what I'm trying to say.

5         Q.    Okay.  Did you have to instruct Mr. Montoya

6    to inform Mr. Garcia what the purpose of the weapons

7    was for?

8         A.    I think I did.

9              MR. LOWRY:  No further questions, Your

10   Honor.

11             THE COURT:  Thank you, Mr. Lowry.

12             Any other defendant have questions of Mr.

13   Acee on this portion of the James hearing?

14             All right.  Mr. Castellano, do you have

15   redirect of Mr. Acee?

16             MR. CASTELLANO:  No, Your Honor.

17             THE COURT:  All right.  Mr. Acee, you may

18   step down.  Thank you for your testimony.

19             All right.  Mr. Castellano, on this portion

20   of the James hearing, do you have further witnesses

21   or evidence?

22             MR. CASTELLANO:  No, Your Honor.

23             THE COURT:  All right.  How about the

24   defendants?  Do they have witnesses or evidence they

25   wish to present?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              All right.  Mr. Castellano, do you want to
 2     argue this motion?
 3              MR. CASTELLANO:  Your Honor, there has been
 4     a question and ongoing discussion between the parties
 5     about how best to proceed at this point.  So the
 6     Government has introduced the statements, a large
 7     number of statements.  And so I think everyone is
 8     looking for a little guidance on whether we just
 9     argue about categories of statements, or whether the
10     Court is interested in going over each of the
11     statements to discuss why they're co-conspirator
12     statements, and things of that nature?  And I'm happy
13     to do it either way.
14              Also, do you have the plea agreements that
15     were introduced at the beginning of the James
16     hearing?  It was about 15.
17              THE COURT:  I have not taken any exhibits
18     over the last two weeks back to Albuquerque.  So
19     they're probably somewhere here.  Let me see what I
20     got here.  Because we haven't been finishing, I'm
21     reluctant to take anything back.  I have what has
22     been marked as Exhibits 1 through 15, which I think
23     were the plea agreements, am I correct?
24              MR. CASTELLANO:  Yes.
25              THE COURT:  So attached, so Exhibits 1
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    through 15 to the James hearing, I do have.  Do you

2    need to look at them?

3                MR. CASTELLANO:  Yes, please.

4                THE COURT:  All right.  Do you need 16A?

5    This is just all the exhibits.  Let me just hand

6    those back.  Those are the exhibits to the James

7    hearing.

8                MR. CASTELLANO:  One of the purposes of the

9    exhibits was to establish the elements of the

10   co-conspirator statement.  So as the Court knows, we

11   have established the existence of the conspiracy,

12   membership of the conspiracy, and that the statements

13   were made in furtherance of the conspiracy.

14               So I'm looking at Government's Exhibit 1.

15   It's a plea agreement by Mario Rodriguez.  And so

16   there is evidence of the existence of the conspiracy.

17   He pled guilty to the charge.  And then, on page 6 of

18   11 of his plea agreement, there is discussion of not

19   only the conspiracies in which he was involved, but

20   who was involved.  And so I'll just use this as one

21   example.  But for each of these there is evidence of

22   the existence of a conspiracy, just through the plea

23   agreements themselves, which were sworn statements

24   given to a Court.

25               So for purposes of the Molina murder, there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is the existence of the conspiracy contained within
 2    this document.  And it names Carlos Herrera, Timothy
 3    Martinez, Jerry Montoya, Daniel Sanchez.  And I may
 4    be missing some names, I'm glossing over it.  But
 5    clearly there is a conspiracy.  And we have members
 6    of that conspiracy listed in this document alone.
 7    And so I would argue the same for each of these.
 8    Jerry Montoya would be related to the Molina murder.
 9    Same with Timothy Martinez and Jerry Armenta.
10             Also, look at the plea agreements for
11    Robert Martinez.  That's Exhibit Number 10.  In that
12    exhibit he states at the bottom of page 5, he
13    conspired with Roy Martinez, Anthony Baca, and others
14    to murder GM and DS, which we know is Gregg Marcantel
15    and Dwayne Santistevan, and lays out a little bit of
16    the conspiracy.  So that's the existence of the
17    conspiracy to murder Santistevan and Marcantel.  And
18    an admission in there that he did conspire with
19    others to commit that murder.
20             Roy Paul Martinez has a plea agreement,
21    which is Government's Exhibit 11.  And in there he
22    admits that he conspired with Robert Martinez and
23    Anthony Baca to murder Gregg Marcantel and Dwayne
24    Santistevan.
25             So a number of these conspiracies -- I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    not sure if it's all of the -- but many, if not all,

2    are covered.  So I tender those to the Court for

3    purposes of the James hearing to establish the

4    existence of those conspiracies.  And it also names

5    members of those conspiracies.

6             So I think at that point, for the most

7    part, we can move on to the in furtherance

8    discussion.  So if can I talk about the statements as

9    a whole, as we briefed this, this is a page from one

10   of our responses, Document 1243.  And in the in

11   furtherance discussion on page 5, we indicate that

12   "Statements made to induce enlistment, or further

13   participation in the group's activities, to prompt

14   further action on the part of conspirators, to

15   reassure members of the conspiracy's continued

16   existence, to allay the co-conspirators' fears or

17   keep co-conspirators abreast of an ongoing

18   conspiracy's activities are examples of statements

19   which are in furtherance of a conspiracy.

20            "Similarly, statements which identify other

21   members of the conspiracy, and statements regarding

22   the roles of other co-conspirators are statements

23   which are made in furtherance of the conspiracy."

24            In the last questioning, Mr. Lowry touched

25   on this a little bit.  It doesn't necessarily matter

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   who you're speaking to, as long as there is a
 2   conspiracy.  So what matters is not to whom the
 3   statements are made, but the declarant's intent in
 4   making the statement.
 5          Also, the statement itself doesn't have to
 6   further the conspiracy to be admissible.  It's enough
 7   that the statements be intended to promote the
 8   conspiratorial objectives.
 9          So in one of the statements we discussed,
10   as we were introducing the statements, was a
11   statement by Mr. Baca to one of the cooperators.  And
12   he indicated that Chris Garcia would finance the
13   operation, meaning the conspiracy to murder Gregg
14   Marcantel.  So that would be one example of where one
15   member of the conspiracy identifies another member of
16   the conspiracy.  And it doesn't necessarily matter
17   when Chris Garcia joined that conspiracy.  He's
18   ultimately responsible for what was contained in the
19   conspiracy when he joins.
20          So that's my overview of these statements.
21   And there is a Tenth Circuit case from this year,
22   Alcorta, 853 F.3d, 1123.  And there is a modification
23   or an addition to statements that are in furtherance
24   of -- I'll find it here for the Court.  On, I believe
25   it's page 1137, of that opinion is a reiteration of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    what I told the Court already about what can be used

 2    or what signifies a statement in furtherance of the

 3    conspiracy.  But then they had a little bit more on

 4    page 1139 of that case.  And it says, "When a

 5    conspiracy is ongoing, statements that relate to

 6    avoiding detection by law enforcement personnel can

 7    be in furtherance of the conspiracy.  Concealment of

 8    the crime done in furtherance of the main criminal

 9    objectives of the conspiracy falls within the

10    co-conspirator exception."  So that is something else

11    the Court can consider when looking at these

12    conspiracies.

13            Now, we're at the point, Your Honor, where

14    we could start getting into the statements.  That's

15    just kind of an overview.  However the Court wants to

16    do it, I'm happy to proceed that way.

17            THE COURT:  Let me propose this:  It

18    certainly seems to me there has been sufficient

19    evidence for the Court to find by a preponderance of

20    the evidence, which I think is the requirement on a

21    James hearing, that I find that the Government

22    established by a preponderance of the evidence that a

23    conspiracy exists; that the members, the defendants,

24    and the declarants were members of the conspiracy,

25    and that the statements that I have heard, that I've

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    listened to carefully, that I've looked at were made

2    in furtherance.

3            I think the Government has put on a fairly

4    comprehensive demonstration for these statements.

5    And these are the statements -- remember, that

6    they're going to introduce pursuant to the

7    co-conspirator statements.  And if they did not bring

8    it into the James hearing, then we're not going to

9    try to see it through the -- we're not going to see

10   the Government trying to get it in through a

11   co-conspirator statement.

12           So it's a fairly contained list of

13   statements that the Government has brought forward.

14   As I've listened to those, as I've read them, I have

15   not seen anything that would not come in under the

16   co-conspirator statement.

17           I guess what I would do -- I mean,

18   ultimately, it's the Government's burden, but I think

19   they've met their burden.  Unless the defendants

20   bring statements to me and say, you know, just as you

21   would in the course of trial, you'd make an

22   objection, and that's the way you note that they

23   haven't done it.

24           So it would seem to me that, probably, the

25   Government ought to sit down, and that I ought to be

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    quiet, and see if anybody disagrees with the

 2    conclusion that I've reached.  It's a tentative

 3    conclusion, subject to your arguments.

 4              But I'm not sitting here seeing in the box

 5    that we've taken in James over several days, and now

 6    over several weeks -- so if the defendants want to

 7    challenge some and have me relook at them, and think

 8    of them in general, and have the Government argue in

 9    specific, I'm game.

10              But, otherwise, the box we have put the

11    Government in in these particular statements, I'm not

12    seeing why they shouldn't come in under

13    co-conspirator.  They seem to meet all three prongs.

14              Mr. Castellano, unless you have something

15    else you want to do, we might see if the defendants

16    want to pick up some individual statements.

17              MR. CASTELLANO:  I agree with that

18    approach, Your Honor.  I just want to add one

19    statement that came out of Billy Cordova's testimony.

20    He was talking to Daniel Sanchez through the door.

21    Daniel Sanchez told Billy Cordova, "I already hit him

22    up," meaning he had already taken the -- taken or

23    agreed to take the shanks from Mr. Perez' walker.  I

24    think that would clearly fall within James.

25              THE COURT:  I think so, too.  I mean, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    think, if you're going to have a statement where
 2    somebody is confirming that has occurred, that's what
 3    a business does.  It confirms these actions are
 4    taken.  So I would think that would fall within the
 5    co-conspirator statement as well.
 6              MR. CASTELLANO:  I don't have anything
 7    further, Your Honor.
 8              THE COURT:  All right.  Why don't you be
 9    ready to argue each one of these that the defendants
10    want to raise.
11              Anybody want to raise any particular
12    statement that they think is not going to fit in?
13              Mr. Lowry?
14              MR. LOWRY:  Thank you, Your Honor.
15              THE COURT:  Mr. Lowry.
16              MR. LOWRY:  Your Honor, I appreciate the
17    Court's attention over the last couple of weeks on
18    this hearing and these matters.
19              Your Honor, understanding the way this case
20    has been charged -- and I guess I'm going to beg the
21    Court's indulgence on what the Court means -- the
22    Court just ruled that you're inclined to conclude
23    that a conspiracy exists.  And this is something I've
24    been struggling with.
25              THE COURT:  Well, there is two conspiracies
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   that the Government is proposing.  One on the Molina

2   murder, and then the other on the threats on

3   Marcantel.  And so those are the two conspiracies.

4   So we've taken those separately.

5          It seems to me that being precise, I think

6   that those two conspiracies exist.  And that,

7   therefore, in the box that we did of each one, it

8   seemed to me, listening carefully, I didn't see

9   that -- it seemed to me that they had established by

10  a preponderance of the evidence conspiracies on both

11  those boxes.  So a little bit more precise.  That's

12  what I meant.

13         MR. LOWRY:  Thank you, Your Honor.  Because

14  I just want to make sure if I understood the Court's

15  perspective.  I guess, for lack of a better term,

16  there have been two separate conspiracies that may

17  have overlapped at certain places with the players.

18         THE COURT:  They may have.  Although, the

19  way the Government has presented it, I think, has

20  been that they are separate conspiracies.  They all

21  go to trying to advance the cause of the enterprise.

22  But I think the way they've tried it, they mounted

23  the burden of them being separate conspiracies,

24  unless Mr. Castellano tells me something different or

25  I missed something.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

164

```
 1              MR. LOWRY:  I just want to make sure we're

 2      all on the same page, Your Honor.

 3              So I do have a bit -- and I want to take

 4      this as a broad category -- and think we just heard

 5      argument from the Government trying to address this

 6      with the citations to the "in furtherance" prong of

 7      the analysis.  And the Court said that, in its view,

 8      everything that the Court heard would come in under

 9      James.

10              But I want to draw the Court's attention to

11      the recorded conversations with Mr. Perez that took

12      place years after the homicide.

13              THE COURT:  Do you have either this you can

14      put on the Elmo, or do you have Mr. Acee's -- the

15      outline that he was reading from so, that we can

16      really zero in on the statement?  If you don't, we'll

17      manage without it.  But it helps me to see it if you

18      have it.

19              MR. LOWRY:  Absolutely, Your Honor.  I have

20      citations to the transcript.

21              MR. CASTELLANO:  I think Mr. Perez' was

22      Exhibit 16.  I believe that was a single transcript.

23      And Mr. Lowry is welcome to borrow mine.  I have

24      tabs.

25              MR. LOWRY:  I have it here, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Here it is on the Elmo.
 2            THE COURT:  Do you want to identify this
 3   for the record?
 4            MR. LOWRY:  Sure.  For the record purposes,
 5   Your Honor, this is Government's Exhibit 16.  And
 6   this is at DeLeon Bates No. 20529.  And as you can
 7   see from the date of the recording, this is in
 8   February of 2016, so the Molina event was March --
 9            THE COURT:  So this is Mr. Cordova
10   recording Mr. Perez?
11            MR. LOWRY:  That's correct, Your Honor.
12            And if you move throughout the document
13   that I believe Mr. Castellano had highlighted, there
14   are statements in here, and they're attributing some
15   of these statements to Mr. Baca.
16            THE COURT:  All right.  Why don't you pick
17   which one, and let's analyze it in some detail.
18            MR. LOWRY:  Okay.
19            THE COURT:  You would agree with me that
20   this transcript itself -- this is the statement of
21   Mr. Perez -- it doesn't need a co-conspirator
22   statement.  It can come in.  And then, of course,
23   you've got the Smalls issue to deal with --
24            MR. LOWRY:  The Bruton issue.
25            THE COURT:  -- it's coming in.  So the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    transcript is coming in.  So now we're just dealing
 2    with whether what Mr. Perez said -- which may be an
 3    out-of-court statement of Mr. Baca being offered for
 4    the truth, it contains something that needs its own
 5    separate exception.  That's what we're about to
 6    discuss, right?  Do you agree with that analysis?
 7              MR. LOWRY:  Well, no.  I'm looking at this
 8    as still under the co-conspirator statement analysis.
 9              THE COURT:  Well, I don't think that Mr.
10    Perez necessarily -- you can talk to me, if you think
11    differently, Mr. Castellano -- but the statements
12    that are being recorded here, are you taking the
13    position that the Perez/Cordova statements would be
14    in furtherance of the conspiracy?
15              MR. CASTELLANO:  Are Mr. Cordova's
16    statements?
17              THE COURT:  Well, I think that what Mr.
18    Lowry -- I didn't think I needed to analyze, under
19    the co-conspirator exception, the recording of
20    Cordova with Mr. Perez.  That was coming in because
21    it was an admission of Mr. Perez to Mr. Cordova.  So
22    it's just not hearsay.  So the only thing that needed
23    a co-conspirator statement was Mr. Perez' statements
24    in this recording that are statements of, for
25    example, Mr. Baca, that were made in the past,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   perhaps giving directions to people about killing Mr.

 2   Molina.  And that's where they were analyzing the

 3   co-conspirator exception.

 4            Do you agree with my analysis?

 5            MR. CASTELLANO:  I do agree with that.  I

 6   think some of these statements may fall within

 7   Smalls.

 8            One discussion we were having outside

 9   before the hearing was, at the bottom of page 20531

10   there is an example of Rudy Perez, a couple of years

11   after the murder, recounting the conversation during

12   the time of the conspiracy.  So what he describes is

13   people coming in to him, and they tell him, "Look,

14   Big Dog, something has to be taken care of.  But we

15   need squina.  You don't have to do nothing, you don't

16   have to do nada."  And this is the discussion where

17   they're saying:  You don't need to do anything else

18   other than provide your walker for the shanks.

19            THE COURT:  All right.  Let me break it

20   down.  Mr. Cordova doesn't need a hearsay exception,

21   because under the rules, it's not hearsay.

22            MR. CASTELLANO:  Correct.

23            THE COURT:  Okay.  Now, his statement about

24   what other people told him, that's where we need the

25   co-conspirator exception.  And that seems to me, what

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    you are looking at, or highlighting right there,
 2    would be in furtherance of the conspiracy.
 3              Do you agree with my analysis?
 4              MR. CASTELLANO:  Yes, I do agree, even
 5    though it happened a couple years after he's
 6    recounting a conversation at the time of the
 7    conspiracy, I think of it as a James statement.
 8              THE COURT:  I agree.  I guess that's where
 9    Mr. Lowry and I disagree.  But I just want to make
10    sure that you and I were on the same -- that the
11    first analysis of -- I don't need a co-conspirator
12    exception for the tape of Mr. Perez to come in.  I
13    need co-conspirator when Mr. Perez is, in that tape,
14    talking about conversations that may have been said
15    to him.
16              MR. CASTELLANO:  I agree.
17              THE COURT:  All right.  And you disagree
18    with that analysis, Mr. Lowry?
19              MR. LOWRY:  Well, Your Honor, for this
20    particular statement, I mean, this doesn't even
21    involve Mr. Baca.  The squina, you know.  So in a
22    sense, I'm only concerned with the statements that
23    could be attributed through the lens of the
24    co-conspirator hearsay exception to my client.
25              THE COURT:  Okay.  I mean, if that doesn't
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    bother you, we can take another example.  But I think
 2    that probably that one would come under the
 3    co-conspirator statement, because even though it's
 4    being made in a more recent time, it's recording
 5    conversations that were made earlier in furtherance
 6    of the conspiracy.
 7              MR. LOWRY:  Your Honor, this may be
 8    helpful.  Can I get my trial transcript, because I
 9    have --
10              THE COURT:  You may.
11              MR. LOWRY:  Your Honor, I think I would let
12    one of my colleagues go through there, but I want to
13    break them out statement by statement, if I could.
14              THE COURT:  All right.
15              MR. LOWRY:  But I guess I hear what the
16    Court is saying, but what I understood Mr. Perez to
17    say in the recordings is he's attributing things to
18    Mr. Baca about what he wanted to have happen.  And
19    those were well after the fact.
20              THE COURT:  Give me an example, even if
21    it's not exact.
22              MR. LOWRY:  He refers to them as "The
23    viejo."  Right.  This is at Bates DeLeon number
24    20558.
25              THE COURT:  Do you want to put it on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Elmo?

 2            MR. LOWRY:  Absolutely, Your Honor.  And

 3    you can see it right here, where this is Mr. Perez,

 4    and he's saying, quote, "The old man was pissed bro,

 5    he was like, he was upset with them the other fools

 6    over there, why didn't they handle it a year sooner

 7    when they took the paperwork over there?  Well you

 8    send paperwork up there."

 9            Well, it would seem to me -- assuming "Old

10    man" refers to Mr. Baca, which I think it does -- his

11    complaints to Mr. Perez, another member of the

12    conspiracy, as has been proved by the Government, and

13    Molina would be in furtherance.  I mean, that's what

14    people do when they're in a conspiracy.  They

15    complain to members of the group.  And the reason you

16    complain is to try to make the group better, or

17    advance your purposes.  So it seems to me that that

18    would be classic co-conspirator exception material.

19            MR. LOWRY:  Well, I'm having a hard time --

20    if this complaint can be attributed to Mr. Baca, it's

21    a complaint about after the fact, after the objective

22    of the alleged conspiracy has been completed.

23            THE COURT:  Well, but, I mean, if you're

24    now going to start talking about some of the

25    paperwork I looked at, Mr. Baca was ordering further

SANTA FE OFFICE                                                                              MAIN OFFICE
119 East Marcy, Suite 110                                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                Albuquerque, NM 87102
(505) 989-4949                                                                              (505) 843-9494
FAX (505) 843-9492                                                                  FAX (505) 843-9492
                                                                                          1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                          e-mail: info@litsupport.com

1  hits on people because they didn't do a good job on

2  the Molina murder, then it seems to me that this may

3  be in furtherance of the conspiracy because it's

4  covering up the murder.

5          MR. LOWRY:  Well, Your Honor, analytically,

6  I have a bit of an issue with that, because now we're

7  shifting conspiracies and we're not talking about the

8  conspiracy to --

9          THE COURT:  No, I think the conspiracy to

10 cover up the act of the conspiracy is just as much a

11 part of the conspiracy.  And that's what that case

12 that we just looked at says.

13         So if Mr. Baca is going to continue actions

14 of directing people to be hurt or assaulted or

15 killed, because they did it wrong, or something like

16 that, I think that's all part of the same conspiracy.

17 He's unhappy as a leader with how it was carried out.

18         MR. LOWRY:  If you assume -- well, this

19 goes back into the disagreement I think I had with

20 the Court during the presentation of the witnesses,

21 if you assume the credibility of the statements.  It

22 sounds to me like the Court --

23         THE COURT:  I have to make by a

24 preponderance -- but you're right, it does go back.

25         MR. LOWRY:  So I think that's something,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Your Honor, we just have to argue about during the

2    evidence at trial, if that's the Court's ruling, if

3    this continues to be in furtherance of the

4    conspiracy.  I mean, my real objection was just

5    that --

6              THE COURT:  Let's do this:  It's probably

7    not going to benefit us to have a big James hearing

8    and then us do this, and then argue again through

9    trial.  I'm making the best call I can.

10             Do this:  If you disagree with the scope,

11   give me some cases.  I told you I tip my hand.  I

12   like Saltzburg.  So dig into him, and see if you can

13   convince me that I'm reading the co-conspirator

14   exception too broadly.

15             But when I look at the Tenth Circuit cases,

16   and Mr. Castellano is putting those up, so he's

17   showing the same ones I'm looking at, if I'm reading

18   it too broadly, I'll be glad to take another look at

19   it.

20             MR. LOWRY:  That would be --

21             THE COURT:  I'm trying to give you some

22   rulings, keep things moving, and it seems to me these

23   are falling fairly squarely within that.  I don't

24   mean to cut you off in any way.  I mean, if you've

25   got more to present.  I'm trying to give people

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    guidance.

2             MR. LOWRY:  No, Your Honor.  That would be

3    my preference is to methodically go through this and

4    reduce it to paper.  I think it would be beneficial

5    for everyone involved.

6             THE COURT:  Well, I'm not inviting more

7    paper.  But if you have a case that you think I'm not

8    reading this right -- you're putting up examples, and

9    I think that's good, because it forces me to apply

10   these general principles I read from the Tenth

11   Circuit to what we've got to do in this case, and I

12   don't want there to be an analytical gap here -- but

13   if you're finding that the case law is not what I

14   think it is, I particularly welcome that.

15            MR. LOWRY:  I'll bring it to the Court's

16   attention.

17            THE COURT:  All right.  Thank you, Mr.

18   Lowry.

19            Ms. Bhalla, did you want to bring some to

20   the Court's attention and get some rulings on them in

21   specific?

22            MS. BHALLA:  You know, Your Honor, just

23   briefly.  I'm not going to try and go through each of

24   the statements.  But I think that I, in my mind,

25   found the case that I find to be relevant to the

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    inquiry about -- in terms of when the statements are
 2    made.  And it's a Ninth Circuit Court of Appeals
 3    case.  It's United States v. Smith, 893 F.2d 1573.
 4    And I was sort of looking at a little bit of that
 5    over the lunch break, and a little bit during the
 6    hearing.
 7              THE COURT:  I'm certainly not suggesting
 8    that when a statement is made is not relevant.  For
 9    example, we'll take Mr. Perez' statements to Mr.
10    Cordova.  They're not coming in to the hearsay
11    exception.  Why?  Because it's all over.  Right?  Mr.
12    Cordova -- Mr. Perez has got his own reason for
13    talking to Mr. Cordova.  And so that seems to me to
14    probably not be in furtherance of the conspiracy.
15    And I think the Government is not trying to put it in
16    there.
17              But it seems to me, if Mr. Perez is talking
18    about what was said to him at the time or during the
19    time of the conspiracy, then the timing issue is less
20    relevant.  Other things may be relevant, like what
21    was said.  That's the reason we're keying in on
22    what's said.  But it seems to me that, just because
23    Mr. Perez made his statement, you know, in 2015 --
24    the murders occurred in 2012 -- that doesn't mean
25    it's not within the hearsay exception.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Did the Ninth Circuit say something

2     different?  I'm glad to be educated on it.

3          MS. BHALLA:  I'll just read this brief

4     blurb, if that's all right, Your Honor.  And I may be

5     off base.

6          THE COURT:  Give it to me.

7          MS. BHALLA:  This isn't my best area.

8          THE COURT:  No, give it to me.

9          MS. BHALLA:  "In order for a statement to

10    be admissible, a statement by a co-conspirator must

11    be made in course and in furtherance of the

12    conspiracy."  I think we all understand that.

13          Three separate inquiries must be made by

14    the court.  "First, the Court must find independent

15    proof of the existence of the conspiracy."  I think

16    we've talked about that.

17          Second, "The Court must find the proposed

18    statement was made in furtherance of the objectives

19    of the conspiracy."  I think we're good on that.

20          And this is where I'm getting -- where I

21    think it's important.  "Third, the Court must find

22    that the proffered statement was made during the

23    course of the conspiracy.  In addition, a necessary

24    corollary to the above three conditions is the

25    requirement that there must be" -- I may be going on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    too far here -- "there must be independent proof of
2    the defendant's and declarant's status as members of
3    the same ongoing conspiracy."
4              To me, that limits when the statement was
5    made, Your Honor.  And I may be reading that wrong,
6    but that's how I'm reading it.
7              THE COURT:  Well -- and I don't mean to get
8    you involved in Mr. Perez.  But let's just take the
9    statement, the hypothetical that we had when Mr.
10   Perez is on the phone with Mr. Cordova, and he's
11   talking, but he's talking about statements that were
12   made -- let's make our example easy -- were made
13   contemporaneous with the Molina murder.  Would you
14   agree with me, just simply the fact that Mr. Perez is
15   making the statement a few years later is irrelevant,
16   if he's relating statements that were made at the
17   time that the murder occurred?
18             MS. BHALLA:  I don't know that I do agree
19   with that.  But I'm not the best to necessarily argue
20   that.
21             THE COURT:  Okay.  See, I don't hear
22   anything that the Ninth Circuit is saying that I
23   would not apply.  The Tenth Circuit may put it a
24   little differently, and may put it in a different
25   order.  But I think the Tenth is saying about the
```

```
 1    same thing.
 2              And so I'm not disagreeing with the legal
 3    principles.  I'm just trying to apply those now to
 4    the fact-specific case that we have here.
 5              MS. BHALLA:  Okay.  I understand, Your
 6    Honor.  And if I find something else --
 7              THE COURT:  Think about it.
 8              MS. BHALLA:  I will.  Thank you.
 9              THE COURT:  I think I'm right.  But I don't
10    mind being educated on it.
11              MS. BHALLA:  Thank you, Your Honor.
12              THE COURT:  Okay.  Do you want to respond
13    on that?
14              MR. CASTELLANO:  I just want to make a
15    quick point.  Going back to the example that Mr.
16    Lowry had about Mr. Baca not being happy that the
17    murder hadn't happened sooner.  I think, even if it
18    were to fall out of a James statement, I think we
19    would then be falling into Smalls' statements as a
20    statement against interests.  So, for example, Mr.
21    Baca would be saying "I'm not happy that the murder
22    wasn't taken care of a year earlier."  That's still a
23    statement against interests.
24              THE COURT:  Well, let me ask you this:
25    Would you be unwilling to defend on appeal, if I were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to find that comes within a co-conspirator, does that
 2    make you nervous for me to ground it in that area?
 3            MR. CASTELLANO:  I would say it makes me a
 4    little bit nervous for this reason:  When Mr. Perez
 5    talks about his conversation with Mr. Baca, we're not
 6    quite sure of the timeframe.  So is it a conversation
 7    he had with him after the conspiracy concluded?  Is
 8    it something else -- you know, I'm not sure when,
 9    necessarily, that happened.  All we know is they had
10    a conversation; Mr. Baca relayed to him he wasn't
11    happy it wasn't done a year earlier.
12            THE COURT:  And the Smalls problem
13    satisfies the Bruton problem as to the other
14    defendants?
15            MR. CASTELLANO:  That's correct.  Because
16    they are statements that are nontestimonial.  When
17    they were made, no one -- well, Mr. Perez didn't
18    think these would show up in court, so they're
19    nontestimonial statements.
20            THE COURT:  So you're saying it makes you a
21    little nervous to rely on the co-conspirator, but it
22    doesn't make any difference, because it's going to
23    come under another exception?
24            MR. CASTELLANO:  That's correct.  I think
25    it could be a co-conspirator statement.  The timing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   is less clear.  But I think under Smalls, it's still
 2   going to come in.
 3              THE COURT:  Let me read it again as to --
 4   it's down at the bottom.  Where are you looking?
 5              MR. CASTELLANO:  They were asking why it
 6   wasn't taken care of.  This is in the middle of page
 7   20558, DeLeon.  And ultimately, the CHS says, "What
 8   did 'Pup' say, because the (unintelligible) wasn't
 9   done earlier?"
10              Mr. Perez says.  "He didn't like it."
11              So, at some point, Mr. Baca has conveyed to
12   Mr. Perez -- or he's aware of Mr. Baca not being
13   happy with the fact that this murder didn't happen a
14   year earlier, as intended.  So it's still talking
15   about the conspiracy.  It's talking about the
16   conspiracy, having gone back a year, and nobody
17   following through on the order.
18              THE COURT:  Okay.  You think on that one
19   the age is a little fuzzy?
20              MR. CASTELLANO:  It seems to me a little
21   bit.  I think maybe the Court can make alternative
22   findings.  It appears to be a James statement.  But
23   if it's not, then it's covered by Smalls.
24              THE COURT:  Okay.
25              MS. JACKS:  Can I make a couple comments?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Well, Mr. Lowry was already up.
 2    So I'll come back to you, Ms. Jacks.
 3            Go ahead, Mr. Lowry.
 4            MR. LOWRY:  Thank you, Your Honor.
 5            And I appreciate the comments by Mr.
 6    Castellano.
 7            But here's where I'm running on the shoals
 8    of this analysis a little bit.  And this is where --
 9    why I started off my comments with the Court about:
10    Let's define the conspiracy we're talking about.  And
11    I appreciate the Court's comments on that.
12            But my concern is that, if you assume --
13    and for the sake of this hearing and for the sake of
14    this argument let's assume that Mr. Baca is in a
15    leadership position, and let's assume that even these
16    statements could be attributed to him; that he's not
17    happy about how this happened.
18            And if you make those two assumptions, his
19    statements to Mr. Perez are about, We need to do
20    something about that.  And that is a separate
21    conspiracy.  And I understand what the Court said
22    earlier.  Well, in the Court's mind, that could be a
23    conspiracy to cover up the Molina homicide.
24            But we can't just assume, by fiat, that a
25    potential conspiracy to cover up the involvement of a
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   previous murder made you a conspirator in that
 2   murder.  Because -- I think the Government said
 3   this -- that there are certain rules that this
 4   enterprise had that you needed to abide by.  And that
 5   conspiracy, the second conspiracy, could be
 6   conspiracy to enforce the rules of the enterprise.
 7   And it might not have had anything to do with being a
 8   participant in the original conspiracy.
 9             So I guess --
10             THE COURT:  I well, I guess I'm struggling
11   a little bit with that.  I mean, there is no evidence
12   that the men involved in this conspiracy wanted it to
13   be uncovered.  In fact, it seems to me that part of
14   the conspiracy was covering cameras, throwing away
15   shanks, people having different tasks, paperwork
16   coming in, it's concealed.  So there was a conspiracy
17   to conceal this murder.
18             MR. LOWRY:  And I'm not going to --
19             THE COURT:  I think you have to agree with
20   me that most of the time that outlasts the murder
21   itself.
22             MR. LOWRY:  Well, I think there was --
23   certainly, you can look on the video and see people
24   discarding evidence into trash cans and things found
25   in the plumbing drains and that, so I'm going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   agree with you.  But I don't know that the conspiracy

2   went so far, because I think the evidence is that

3   nobody did cover the cameras.  So if other people --

4        THE COURT:  Well, it may not have been

5   successful.  But that doesn't mean that there is

6   still not a conspiracy for purposes of the hearsay

7   rule, right?

8        Isn't your better argument the one that

9   Mr. Castellano is handing you by saying that he's not

10  sure that I ought to rely on it here because of what

11  Ms. Bhalla is saying, is the dates on this particular

12  statement may not be staked out enough for taking Ms.

13  Bhalla's law, and maybe the ambiguity in this

14  particular statement that we can't fit it in, or

15  shouldn't fit it in under the co-conspirator, so then

16  you have a Smalls issue?

17       MR. LOWRY:  And I agree with that, Your

18  Honor.  And that's the argument.

19       THE COURT:  So maybe on this one, I

20  shouldn't rely on co-conspirator.  But I should say,

21  right at the present time, it comes in under the

22  Smalls, to solve any sort of Bruton problem, and it's

23  a statement against interests by Mr. Baca?

24       MR. LOWRY:  And I think -- maybe I'm not

25  being as efficient with my language as I should be --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    but this is my point:  If it's a statement against
 2    penal interests, it would be a statement against
 3    penal interests regarding a different conspiracy.
 4    And I think maybe --
 5              THE COURT:  We just don't have to get into
 6    conspiracy.  It's just murder.
 7              MR. LOWRY:  Well, it would be murder of
 8    different people.  It would be murder of people that
 9    didn't cover up the camera.
10              THE COURT:  But it doesn't matter, it's a
11    statement against interest, right?  So I don't have
12    to figure out what murder it is.  It's just people
13    don't go around making those statements.  It's
14    against their penal interests.
15              MR. LOWRY:  I think that has to be tied to
16    what interests we're talking about.  But I'll go
17    back --
18              THE COURT:  But if we've abandoned the
19    conspiracy, co-conspirators exception, then it's just
20    penal interests, I don't think it has to be quite as
21    tied.
22              MR. LOWRY:  And, frankly, Your Honor, I'll
23    have to go back and look at that.  Because I wasn't
24    prepared to argue the Bruton and Smalls issue today.
25    But I will.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          But I think that that penal interest would

2    have to be -- and I understand we're going to have a

3    different point of view on this, of how closely that

4    penal interest has to be tied to the act of

5    conspiracy under indictment.  And I think that's

6    where, analytically, we're on different pages.  And

7    I'll come back to you on that.

8          THE COURT:  If Mr. Baca just said something

9    just general:  I could kill people because they

10   didn't handle this thing right, seems to me that that

11   is probably against penal interests.

12         MR. LOWRY:  Yeah.  But here's where, as a

13   matter of the credibility of this argument I'm really

14   struggling with, because, A, our argument is he

15   wasn't involved with the Molina homicide at all.  And

16   there is even recordings with Mr. Duran where he's

17   complaining that, you know, everybody under the sun

18   is trying to wipe their ass with Mr. Baca.  And I

19   think what we're seeing in the Molina homicide is

20   evidence of that.

21         But where I'm going with this is that there

22   are all these assumptions he wanted Mr. Molina dead.

23   And he lived with Mr. Molina from August of -- well,

24   January of 2013 into August of 2013, in the same pod,

25   in Southern, in the blue unit, where Mr. Molina

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                    1-800-669-9492
                   BEAN                              e-mail: info@litsupport.com
                   & ASSOCIATES, Inc.
                   PROFESSIONAL COURT
                   REPORTING SERVICE

```
 1   ultimately died.  So I really have been struggling
 2   with the credibility of these allegations, when, if
 3   Mr. Baca really wanted Mr. Molina dead, he could have
 4   done it himself when he was there.
 5            THE COURT:  If they get over the penal
 6   interests, I don't have to make any findings by a
 7   preponderance of the evidence.  I simply have to find
 8   that it's a 401 analysis, right?
 9            MR. LOWRY:  It would be -- well --
10            THE COURT:  Does the evidence have a
11   tendency to prove what it's being offered for?
12            MR. LOWRY:  It would be a statement against
13   penal interests from Mr. Baca to Mr. Perez.  And then
14   we'd have to do the hearsay analysis from Mr. Perez
15   to Mr. Cordova.
16            THE COURT:  But that's clear, right?
17            MR. LOWRY:  Yeah.
18            THE COURT:  It's not hearsay.
19            MR. LOWRY:  It would be an admission as to
20   Mr. Perez.
21            THE COURT:  Correct.  And so, then, we have
22   to analyze the statements within Mr. Perez'
23   statements?
24            MR. LOWRY:  Exactly.
25            THE COURT:  Well, think about it.  I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    it's coming in.  But you're welcome to --
 2              MR. LOWRY:  I'm going to give it my best
 3    shot to keep it out.
 4              THE COURT:  All right.  Okay.
 5              MR. CASTELLANO:  And, Your Honor, no one
 6    has briefed this yet, but if necessary, we could
 7    provide a case.  There is still some case law that
 8    says you can do things after the conspiracy that
 9    still show the conspiracy existed.  So, in other
10    words, Mr. Baca is discussing the conspiracy after
11    the fact, which once, again, goes to establish that
12    the conspiracy was there.  So --
13              THE COURT:  I'd like to see that case.
14              MR. CASTELLANO:  I'll pull something for
15    the Court.
16              THE COURT:  Because a lot of evidence may
17    be more clearly classified as establishing the
18    existence of the conspiracy than it is going to be in
19    furtherance of the conspiracy.  Those are not subsets
20    of each other.  Those may be different things.  A
21    statement could be either way, it could be used
22    either way, and fall into both.  But they always
23    could be completely separate.
24              Ms. Jacks, you were up next.
25              MS. JACKS:  I just have a couple of
```



SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                       (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.                                         1-800-669-9492
PROFESSIONAL COURT                                         e-mail: info@litsupport.com
REPORTING SERVICE

```
 1    observations.  I guess, first of all, with respect to
 2    the discussion about Perez relating that Baca was
 3    angry or something about Baca.  What I thought the
 4    examination brought out of Agent Acee was that we
 5    weren't -- he wasn't clear, and there wasn't -- it
 6    wasn't clear -- that those were statements that were
 7    in Perez' personal knowledge, that Baca actually said
 8    that to him, or that that's something he heard, or
 9    was repeating through basically a game of prison
10    telephone.
11            So I feel like that's a hurdle that hasn't
12    been jumped at this point.  There is no -- I don't
13    think the Government has met its burden showing that
14    that, when Perez said that to Cordova, he was
15    reporting what Baca had said to him.
16            THE COURT:  Why don't you put the statement
17    up there, and let's look at it, so we can drill down
18    on this.
19            MS. JACKS:  I was reading off the actual
20    transcript of the hearing.
21            THE COURT:  Oh, the hearing.
22            MS. JACKS:  The hearing transcript is what
23    I've been referencing.
24            THE COURT:  Why don't you borrow from Mr.
25    Lowry or Mr. Castellano the actual Perez transcript,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   and we can look at it, and see if we've got -- if
 2   your argument has some force here.
 3            MR. CASTELLANO:  34A, I have 20558.
 4            MS. JACKS:  So I think the part, Your
 5   Honor, that we were just talking about, where it
 6   starts with Rudy, the part with the pink next to it,
 7   "The old man was pissed bro."
 8            THE COURT:  Now, why do you -- when you
 9   read that statement -- there may be some others, I
10   agree with you we may need to look at -- but why when
11   you read that do you not think that that's Mr. Perez,
12   with his personal knowledge, stating Mr. Baca was
13   very upset with the way this murder was handled?
14            MS. JACKS:  Well, I guess for two reasons.
15   One is at the time of the homicide, Baca and Perez
16   were not housed at the same institution.  And I don't
17   think there was evidence put in by the Government,
18   when they were in a position where they could have
19   had this discussion.
20            And then the other reason I think that is
21   because during the examination, Agent Acee was
22   specifically asked, both by myself and by Mr. Villa,
23   that specific question, whether he knew whether any
24   of these statements that Mr. Perez was saying were
25   things he knew firsthand, or things he was just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    repeating.  And he didn't.  His answer was no, that

2    he didn't.

3              THE COURT:  Let's assume that that's the

4    case, that we don't know.  Does that necessarily mean

5    the evidence is kept out?

6              MS. JACKS:  I guess what it means to me is

7    that there is a layer of hearsay, or potentially a

8    layer of hearsay, that's not accounted for by some

9    sort of exception.  And if he is hearing it from

10   somebody else, I think the issue is:  Who is that,

11   and is that person a member of the conspiracy, or is

12   he repeating something that somebody else told him?

13             THE COURT:  Well, I think we had an

14   agreement earlier, the Government is not trying to

15   fit this into the co-conspirator statement.

16             MS. JACKS:  I have two comments about that.

17   And maybe my brain just isn't functioning.  But it

18   seems like, if that's an admission against Mr.

19   Perez --

20             THE COURT:  No.  It's an admission against

21   Mr. Baca, against his penal interests.

22             MS. JACKS:  Oh, I guess I'm going two

23   levels.  The justification for letting --

24             THE COURT:  It comes in because it's an

25   admission against interests.  It's a statement of a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    party defendant.  So it's not hearsay.  It needs no
 2    exception.
 3            MS. JACKS:  And I understand the Court's
 4    analysis as to Mr. Perez.  But what about to the
 5    other defendants who didn't say that?
 6            THE COURT:  Then it's a Smalls issue.
 7            MS. JACKS:  Which you're talking about,
 8    then, whether it's a declaration against penal
 9    interests; correct?
10            THE COURT:  As to Mr. Baca.
11            MS. JACKS:  Well, I would think, isn't it
12    also a Smalls issue about whether Mr. Perez'
13    statement is a declaration against penal interests,
14    so that it comes in against the other defendants?
15            THE COURT:  I don't need to analyze it.
16    It's nonhearsay, so it doesn't need an exception.
17            MS. JACKS:  Well, that's where I'm just
18    sort of missing it.  But I guess what the Court is
19    saying --
20            THE COURT:  Well, under the definition of
21    hearsay, the statement of a party opponent is not
22    hearsay.
23            MS. JACKS:  No, I agree with that.  But
24    it's hearsay as to Mr. Sanchez, and he's not the
25    person that made the statement.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  I would agree that it would
 2    then implicate a Bruton issue, which then I think the
 3    Smalls case deals with.
 4            I think we had this conversation last
 5    summer, or during the summer.  And you're welcome to
 6    correct me.  But I mean, I think this is where we all
 7    stared at the Tenth Circuit and said it resolved that
 8    problem.
 9            MS. JACKS:  I remember that discussion.
10            So I guess the other thing I want to just
11    point out, this isn't the only statement that's
12    potentially Perez just spewing things that he's heard
13    from other people and not things he has personal
14    knowledge of.  And I think there is a bunch of
15    statements in what's been offered by the
16    Government --
17            THE COURT:  Why don't we take them one at a
18    time, and that's what we're here for is to look at
19    these one at a time, and analyze whether they're
20    coming in or not.
21            MS. JACKS:  Well, let me pull up the
22    transcript, because that's how I've been looking at
23    these.
24            So the first one that I note is at Exhibit
25    16, Bates stamp 20540.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  All right.  Help me out on the
 2    front page, Ms. Jacks.  What is this document?
 3          MS. JACKS:  This is the Government's
 4    Exhibit 16.  And the Bates stamp at the bottom of the
 5    page -- well, let me just be really specific.  I'm
 6    looking at the transcript of December 8, Volume 2, at
 7    page 210.  And in the record it's referenced as
 8    Government's Exhibit 16, Bates stamped 20540 -- oh,
 9    no, I'm sorry, its reference is Bates stamp 20540.
10    I'm looking at Mr. Castellano's exhibit here.  And I
11    think that that had been subsequently marked Exhibit
12    31A.
13          Let's just put this statement up.  And I
14    think, specifically, again, it's the one -- it's the
15    statement where the pink sticky note is here talking
16    about "Crocodile" and "BB" having to answer for never
17    doing the first paperwork that was sent down there.
18    There is no evidence that the Government has
19    presented that Mr. Perez had the ability to talk
20    specifically with "Crocodile" or "BB."
21          And I think again, the answer of Agent Acee
22    on the stand was that he didn't know what Mr. Perez
23    was talking about, whether that was from his personal
24    knowledge, or something he just heard through the
25    prison telephone.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Mr. Castellano,
2   would you try to get this statement in through the
3   co-conspirator statement, or is it going to be back
4   to a statement against interests in a Smalls issue,
5   so we're not talking about a co-conspirator statement
6   here, we're talking about a Smalls issue?
7              MR. CASTELLANO:  Yes, I think --
8              THE COURT:  Would you want to defend me
9   letting this in on the co-conspirator statement
10  exception?
11             MR. CASTELLANO:  I would defend it with the
12  secondary argument about --
13             THE COURT:  You prefer the secondary
14  argument?
15             MR. CASTELLANO:  Yes.  I think the
16  secondary argument would be my stronger argument.  I
17  will say -- and the Court may remember from
18  cross-examination of Mr. Perez last week -- I don't
19  have the transcript in front of me -- there is a
20  statement where Mr. Perez said "Pup," Mr. Baca, told
21  me.  So there is evidence about direct conversations
22  between Mr. Perez and Mr. Baca.  There is evidence
23  here.  Because it's kind of behind the laptop, I
24  don't want to mess with it.
25             MS. JACKS:  Here, I'll move it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        MR. CASTELLANO:  We know there is evidence

2    from the transcripts themselves.

3        THE COURT:  Okay.  I wouldn't mind having

4    my memory refreshed on what he said.  It might help

5    us with these arguments, if you have that available.

6    I'll come back to you.

7        MS. JACKS:  I can provide an example.  I

8    don't disagree that there may be some statements

9    where the Government did present testimony that Mr.

10   Perez heard it directly from Baca.  But there are

11   certainly a lot of statements that they're offering

12   that don't contain that sort of evidence.

13       Let me -- I'll give you one in specific

14   that regards Mr. Sanchez.  I'm at the same exhibit,

15   page 20550.  In this case, there is a conversation

16   that starts about what "Dan Dan" and Mr. Perez are

17   talking about.  And Mr. Cordova said, "That's what

18   'Dan Dan' asked you.  When did he ask you that?"

19       THE COURT:  Can you point it out to me,

20   Ms. Jacks?

21       MS. JACKS:  Right here.  I would agree that

22   that's evidence of a conversation between Mr. Sanchez

23   and Mr. Perez.  So I guess what type of evidence I'm

24   asking for -- and I think we have a right to demand

25   from the Government -- is of this quality; not just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    some -- something that could be passed along through
2    prison gossip.
3              THE COURT:  Well, I don't know.  I can be
4    educated on this.  But it seems to me that, if the
5    Government has established that they had personal
6    communications, and then somebody testifies that this
7    is what -- let's just be specific -- if the
8    Government has established that Mr. Perez and Mr.
9    Baca had conversations, and then they also have
10   testimony that Mr. Baca or Mr. Perez says Mr. Baca
11   said this or did this, do I need more?  That's a lot
12   of evidence.
13             MS. JACKS:  I think each conversation, I
14   think has to be looked at independently.
15             THE COURT:  But that would not be normal to
16   have a conversation, in which each person, each time
17   they say it, for them to give a date and time as to
18   when it occurred.  I mean, I say, "My wife said
19   this."  Now, I may have earlier in the conversation
20   said, "My wife said this yesterday on the telephone."
21   But I don't go back with each statement and reference
22   the exact conversation.
23             MS. JACKS:  And I understand that.  I guess
24   what I'm saying is, I think in this transcript, or in
25   this conversation, there do appear to be a lot of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    things where Mr. Perez is simply repeating what he's
2    heard through the grapevine.  And there is no -- we
3    know for a fact Mr. Baca and Mr. Perez were not in
4    the same custodial environment at or around the time
5    of the Molina homicide.  So there really isn't a way
6    for them to be talking to each other directly.
7              THE COURT:  And I think that Mr. Castellano
8    is trying to keep all of us out of the error by, on
9    some of these, conceding he's not very comfortable
10   with me trying to fit it in to the co-conspirator
11   statement.  But then you're going to be looking at a
12   Smalls issue, and it's going to be coming in there.
13   So I'm wondering if, on some of these, it may be
14   somewhat irrelevant.  I don't want to say
15   "irrelevant."  That's not the word.  What I mean, it
16   may only tell us which -- either it's an exception or
17   it's not going to be hearsay at all.
18             MS. JACKS:  I think that --
19             THE COURT:  So it may be coming in, you
20   know what I mean?
21             MS. JACKS:  And it's very hard to talk
22   about this without zeroing in on a particular
23   statement.  But I just wanted to make my point that I
24   think some of this is hearsay being repeated, and
25   there is not evidence that it came directly from a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   co-conspirator --
 2              THE COURT:  Well, I think Mr. Castellano
 3   will concede that, right?  That's what I got from
 4   your prior comments, you'll concede that probably
 5   some of these statements, you'd prefer I not rely on
 6   the co-conspirator statement to get them in, because
 7   it would be tougher for you to defend that on any
 8   appeal?
 9              MR. CASTELLANO:  Right.  I think the Smalls
10   argument would be my stronger argument on appeal.
11              THE COURT:  On some of these statements?
12              MR. CASTELLANO:  Correct.  And then, I
13   mean, we haven't gone there -- are other reasons this
14   could be relevant.  It could be discussion about the
15   enterprise and identify the members of the
16   enterprise.  And there are many other evidentiary
17   reasons why this could come into evidence.  There are
18   plenty.
19              MS. JACKS:  I just have a couple of general
20   categories that I just want to bring up, because I
21   felt they were offered as co-conspirator statements,
22   and I wanted to draw the Court's attention to them.
23   I think there were two statements that were offered,
24   or discussed, that were statements of Mr. Molina.
25   Obviously, he's not a member of the conspiracy.  I'm
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    not quite sure what, if any, theory of admissibility
 2    the Government is advancing for those.
 3                THE COURT:  Can you point those out to me?
 4                MS. JACKS:  So I think the first one was
 5    discussed on November 28, at page 46 in the
 6    transcript.
 7                THE COURT:  This would be Mr. Perez
 8    stating --
 9                MS. JACKS:  This is testimony by, I think,
10    Agent Acee regarding -- or Agent Stemo -- regarding
11    statements of Mario Rodriguez.  Let me just pull it
12    up, if there is an exhibit.  I think this was Agent
13    Stemo.  And I don't believe this was the -- was
14    addressed in a particular Government's exhibit.  As I
15    recall, Agent Stemo had Mr. Rodriguez' 302 up there
16    with her when she was testifying.  And that was
17    actually a document that, prior to that moment, had
18    not been provided to the defense.  She was basically
19    just testifying to statements contained in that
20    document.
21                So I'm at page 46 of the transcript of the
22    hearing on November 28, 2017.  And starting at line
23    4, she said, "Rodriguez" --
24                THE COURT:  Now, you're looking at your
25    computer?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. JACKS:  I am.  I'm looking at the
 2    transcript, which I have electronically.
 3              THE COURT:  Let me ask you this:  Do you
 4    have the 302 that we could put up?
 5              MR. CASTELLANO:  I might, Your Honor.  I
 6    think the statement she's referring to is when Mr.
 7    Molina is downstairs, he says something like, Yeah,
 8    you got me, Carnal.  Mr. Rodriguez says, "You're no
 9    carnal," words to that effect.  But I can look for
10    the statement itself.
11              MS. JACKS:  Actually, it's slightly
12    different.  I think that's the other one.  It's not
13    long.  If I could just state it, maybe that would
14    refresh the Court's recollection.
15              THE COURT:  You may.
16              MS. JACKS:  Is that okay?  So Agent Stemo
17    testified this, starting at line 4 through line 9 --
18    this is her answer to a question:  "Rodriguez
19    overheard Montoya tell Molina to stay back, and
20    Molina did not."
21              THE COURT:  Read that sentence again.
22              MS. JACKS:  "Rodriguez overheard Montoya
23    tell Molina to stay back, and Molina did not."  This
24    is the lead-up.
25              Then the next question was, "And when Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Molina made a statement" --

2          THE COURT:  You would agree there is no

3   problem with the first sentence; it's what you're

4   about to read me that's the problem?

5          MS. JACKS:  My issue is Molina's statement.

6          THE COURT:  All right.

7          MS. JACKS:  Question:  "And when Mr. Molina

8   made a statement that he was done, saying, 'Come on,

9   I'm done now,' what was Rodriguez' response to that?"

10          And the answer was he told Molina that he

11   was no carnal.

12          So I'm not clear if the Government is

13   trying to offer Molina's statement, "Come on, I'm

14   done now."  But I think that's not a statement of a

15   co-conspirator.

16          THE COURT:  Maybe I'm being dense.  But

17   what is he trying to communicate, Molina?

18          MS. JACKS:  Well, I would have to

19   speculate.

20          THE COURT:  Speculate for me.

21          MS. JACKS:  I think the speculation is:

22   You guys have stabbed me enough, leave me alone.

23          MR. CASTELLANO:  I would agree with that

24   assessment.  And I agree, it's also not a

25   co-conspirator statement we could offer for a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   nonhearsay reason to provide context of what was

2   going on, especially because, in response to that

3   statement, Mr. Rodriguez makes an admission.  I agree

4   it is not co-conspirator statement.

5           THE COURT:  Well, I guess what I'd be

6   inclined to do on that is to tell -- boy, I guess I

7   would think that would fall into a present sense

8   something, being stabbed, and a statement that you

9   make there falls under one of those exceptions.  So I

10  think it could probably come in there.  Well, if it's

11  an exception, it's an exception.  I think it's

12  probably going to fall within that exception.

13          MS. JACKS:  And the other one I can't

14  locate immediately, but I'd have to take a look and

15  see if that would probably be the same analysis.

16          THE COURT:  Okay.  I guess if there are

17  statements by Molina at the time he's being stabbed,

18  they're probably coming in under one of those

19  exceptions.  We can think about it a little harder.

20  And I can review the rules for each one of them.  But

21  I would think they would probably fit into something.

22          MS. JACKS:  The other category or type of

23  statements that I think were offered, that I'd just

24  like to take a minute to talk about, are statements

25  that, to me, sort of are not about the murder of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Molina, or the conspiracy to murder Santistevan or

 2    Marcantel, but statements or puffery about prison

 3    politics.  And the one that's probably an example --

 4    and I'm not saying this is the only one -- is it was

 5    offered November 29.  And I think it was through the

 6    testimony of Agent Acee regarding conversations

 7    between -- recorded conversations between Mr. Baca

 8    and Mr. Duran.  And I'm at transcript, on page 259.

 9    It's the top of page 259 on the transcript.  And I

10    don't think there is an exhibit that corresponds

11    directly to it.  But --

12            THE COURT:  Did you have 259 up, or was

13    that --

14            MS. JACKS:  I'm reading off the transcript

15    of the hearing of November 29, at page 259, starting

16    at the top.  And it's a statement of Baca that -- I

17    think Duran has initiated him into a discussion about

18    the Mexican Mafia.  And Mr. Baca says, "Hell, yeah,

19    they are." "Pup" complains -- this is Agent Acee's

20    characterization -- "Pup" complains to the CHS that

21    "Dan Dan" is too quick to want to fall under the Eme,

22    which is the Mexican Mafia.  "Pup" views the SNM

23    equal to the Eme or Mexican Mafia.

24            THE COURT:  Hold on just a second.  Let me

25    reread that sentence on the real-time.  Do you want



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to read it again?  Read it real slowly, so maybe we
 2    can get a real good transcription here.
 3            MS. JACKS:  So this is Agent Acee, and he's
 4    saying, as an answer to the question, "Pup" responds,
 5    quote, "Hell, yeah, they are."  And then Acee gives
 6    his interpretation of what that conversation was.
 7    This is what I'm understanding the testimony to be,
 8    "Pup" complains to the CHS that "Dan Dan" is too
 9    quick to want to fall under the Eme.  "Pup" views the
10    SNM and equal to the Eme.
11            THE COURT:  Okay.  Is this still Mr. Perez'
12    statements?
13            MS. JACKS:  No, this is testimony of Agent
14    Acee about statements of Mr. Baca that were recorded,
15    or conversations of Mr. Baca and Eric Duran.  And so
16    one of the things Eric Duran engages Mr. Baca in
17    conversation about is the Mexican Mafia, and the
18    standing of the SNM with the Mexican Mafia.  And --
19            THE COURT:  I'll let Mr. Castellano do his
20    own argument, but I would think that the way that
21    would be handled would be that -- I think we might
22    agree that that would not come under the
23    co-conspirator exception.  But it is a statement by a
24    party opponent, and therefore, it's nonhearsay, the
25    statement itself, and it's relevant to the enterprise
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    or the furtherance of the enterprise's activities.

2              Let me stop there.  Did you analyze it

3    differently?  Remind me who is stating that Mr. Baca

4    said this?

5              MR. CASTELLANO:  Yes, I'll put it on the

6    visualizer, Your Honor.  It's on DeLeon 3307.

7              THE COURT:  Who is the declarant, the first

8    declarant?  Not Mr. Baca, but who is saying Mr. Baca

9    said this?

10             MR. CASTELLANO:  So here, this is the

11   actual statement.  It's 1168.010, in terms of the

12   recording.  So Duran tells Mr. Baca that if Mario --

13             THE COURT:  This is Duran recording Baca?

14             MR. CASTELLANO:  Yes.  So if Mario gets

15   caught -- as we recall, Mario was supposed to be

16   involved with the murder conspiracy -- and if he gets

17   caught, the news will get out that the SNM hit the

18   Secretary, then the Eme will look at the SNM

19   different.  And as Ms. Jacks said, "Pup" responds,

20   "Hell, yeah, they are."

21             So it is related to the enterprise.  It

22   relates to how they relate to other gangs --

23             THE COURT:  So the analysis I gave would be

24   the one that you would advocate?

25             MR. CASTELLANO:  Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1              THE COURT:  What do you see as the flaw in
 2    that analysis, Ms. Jacks, if any?
 3              MS. JACKS:  Well, I guess where I would go
 4    next, if that's the Court's analysis, is to say at
 5    some point I think this is just getting over the top
 6    in terms of the inflammatory nature of the comments,
 7    and with very little probative value proving whatever
 8    minor things the Government has to prove with respect
 9    to the enterprise.  So, at some point, I would say
10    that it should just be cut off.
11              THE COURT:  Okay.  So it's a 403 analysis.
12              MS. JACKS:  Correct.
13              THE COURT:  All right.  Anybody else want
14    to take on some particular statements as being either
15    not co-conspirator -- were you getting your jacket on
16    to get up, Ms. Sirignano?
17              MS. SIRIGNANO:  I am, Your Honor.
18              THE COURT:  All right.  So I'll get Ms.
19    Sirignano first, and then I'll come back to you, Ms.
20    Fox-Young.
21              MS. SIRIGNANO:  Your Honor -- and I really
22    don't have a particular statement that I can
23    challenge right now.  I just wanted to bring to the
24    Court's attention the argument that Ms. Jacks was
25    making.  And this is the Alcorta case, at 853 F.3d
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   1123.  And this page is 1137 --

2          THE COURT:  Remind me of the argument

3   you're tying this case to that Ms. Jacks made.

4          MS. SIRIGNANO:  Well, right there,

5   mid-page, talking about things that are heard as

6   gossip, things that are heard on the yard, things

7   that can't necessarily be attributed to one person.

8   And right where the Section 8, 9, 10 boxes are

9   starts, "Before admitting statements into evidence

10  under the co-conspirator exception to the hearsay

11  rule, the district court must determine by a

12  preponderance of the evidence that, 1, a conspiracy

13  existed, 2, the declarant and the defendant were both

14  members of the conspiracy, and 3, the statements were

15  made in the course of, and in furtherance of the

16  conspiracy."  And they cite this Morgan case from the

17  Tenth Circuit in 2014.  This is the same argument

18  that Ms. Bhalla was making earlier.

19          So starting here at this sentence, of

20  central importance here is the in furtherance

21  requirement of the Federal Rules of Evidence, which,

22  quote, "embodies the drafter's desire to strike a

23  balance between the great need for conspirators'

24  statements in combatting undesirable criminal

25  activity, which is inherently secretive and difficult

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   of prove, and the need to protect the accused against

2   idle chatter of criminal partners, as well as

3   inadvertently misreported and deliberately fabricated

4   evidence," end quote.  And they cite this United

5   States v. Perez case.  It's a Tenth Circuit 1993

6   case.  And Mr. Castellano used this to show the Court

7   a wide array of statements can fit into this

8   requirement.

9          And then, at the bottom of the page,

10  starting at boxes 11, 12, and 13, it says, "The trial

11  court must state on the record its findings on the

12  elements of the co-conspirator exception," citing

13  Rascon, a Tenth Circuit case from 1993.

14         So, Judge, my argument is two-fold here.

15  One, I understand you're trying to ascertain if these

16  statements are co-conspirator statements or not,

17  which Ms. Jacks determined that some of them may not

18  be.

19         And secondly, the Court -- Tenth Circuit

20  requires that if it's coming in as a co-conspirator

21  statement, the Court must state on the record its

22  findings regarding each and every statement.  So that

23  just concerns me a little bit, because I --

24         THE COURT:  Well, I think you're adding a

25  little bit.  I don't think it requires me to make

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    1000 findings.  I mean, if I find generally that this

2    Perez transcript comes within the co-conspirator

3    exception, with the exception of maybe a few

4    statements, I think that's satisfying my task.  It

5    doesn't say that I have to make it as to each and

6    every statement.  It does say I have to make, on the

7    record, findings on the elements of the co-conspiracy

8    exception.  I think I can -- for example, once I find

9    a conspiracy existed, once I find the declarant and

10   the defendant were both members of the conspiracy, I

11   think I have to be maybe a little bit more precise on

12   the statements were made in furtherance.  But I can

13   take them as groups, wouldn't you agree?

14          MS. SIRIGNANO:  I'm not so sure, Judge.

15   That's why I bring it to the Court's attention.

16          THE COURT:  Well, if the defendants are not

17   going to take the time to point out specific

18   statements, I think it's a little hypocritical for

19   them to go to the Tenth Circuit and say I've got to

20   make a statement on each one that nobody even

21   challenged.  So I guess I would push back on that.

22   That seems to me elevating a lot of form over

23   substance.

24          All right.  Let's take our break for the

25   afternoon, then I'll pick up when you get back, Ms.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Sirignano.

2              (The Court stood in recess.)

3              THE COURT:  We'll go back on the record.

4    Make sure that everybody has a lawyer.  All right.

5              Ms. Sirignano, let's make sure that you and

6    I aren't speaking past each other.  Let's slow down

7    here.  And I think you and I can agree on this.  And

8    this is maybe what you were saying and this is maybe

9    what I was saying, and I think maybe we're not as far

10   apart.  I agree with you, I have an obligation on

11   every statement to say -- make those findings.  I

12   think I have made those statements and findings as to

13   everything that I am calling in the James box for the

14   two conspiracies.  So I did that at the beginning.

15   And then I invited the defendants to challenge, if

16   they saw some statements that -- I mean, there is a

17   lot of statements here, and so I'm trying to keep

18   them all straight in my head, and filter them through

19   the co-conspirator analysis.  But I've made findings

20   as to everything that the Government has presented in

21   their James presentation.  So I think I've made those

22   three.

23             What I was disagreeing with you, and I

24   don't think you're asking me to do this, is I take

25   every sentence and state it separately.  I can take

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   boxes of materials and make those.  If you think I
 2   need to make it, then we'll have to disagree.  But it
 3   seems to me that then if y'all disagree with me, the
 4   defendants agree on some statements, we need to do
 5   like Mr. Lowry was doing, Ms. Jacks was doing, to a
 6   certain degree, Ms. Bhalla, tell me, Hey, you've got
 7   this one wrong.  You've got to look at this
 8   statement.  And then I've got to either agree with
 9   you, which I think Mr. Castellano and I have agreed
10   with the defendants on some, and then we have to
11   filter it or get it in, if it's going to come in at
12   all through some other exceptions.  Would you agree
13   with that analysis?
14           MS. SIRIGNANO:  One hundred percent.
15           THE COURT:  All right.  We're in agreement
16   then.
17           MS. SIRIGNANO:  Thank you, Judge.  I just
18   wanted to make the record on that because this
19   Alcorta case is very helpful.
20           THE COURT:  What is the case you had up
21   there?
22           MS. SIRIGNANO:  It's United States v.
23   Alcorta, A-L-C-O-R-T-A, 853 F.3d 1123.  And I was
24   quoting from page 1137.  And the court's discussion
25   bleeds onto page 1138, and the very beginning of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    1139.

 2                THE COURT:  And is that a Tenth Circuit

 3    case?

 4                MS. SIRIGNANO:  Yes, 2017.  And it's Judge

 5    Hartz.

 6                THE COURT:  Is that the same case you had

 7    up, Mr. Castellano?

 8                MR. CASTELLANO:  Yes, I lent it to

 9    Ms. Sirignano.

10                MS. SIRIGNANO:  It's Judge Hartz' opinion,

11    Your Honor.

12                THE COURT:  Okay.

13                MS. SIRIGNANO:  So just to sum up, Judge,

14    my concern is that this case says that the Court went

15    through at the first James hearing, and the district

16    court judge in this case ruled that the Government

17    had showed by a preponderance of the evidence that

18    the conspiracy existed, and that it included the

19    defendants.  And the court did question the parties

20    about how the specific conversations fit within the

21    co-conspirator exception.  And if it didn't fit

22    within the co-conspirator exception, the Government

23    provided various rationale for the challenged

24    statements.  And I understand we're doing that here.

25    But I do believe it's the Government's burden.  If
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the statements aren't coming in, based on the --

2              THE COURT:  I don't disagree with you.  The

3    burden remains regardless of the exception.  They're

4    the proponent of the evidence so they have the burden

5    of proving its admissibility.  The only thing I'm

6    trying to set up a mechanism for is I know y'all have

7    been struggling with it.  Ms. Wild has been telling

8    y'all -- I'm just saying:  Help me out.  I'm making

9    my findings.  I'm doing what I think the Tenth

10   Circuit requires me to do, and the Ninth Circuit

11   requires me to do.  But after I make that, I'm still

12   giving y'all an opportunity to come back just like

13   Ms. Jacks was doing and Mr. Lowry was doing, Judge, I

14   think you've got it wrong on this one.  And I'll

15   reconsider that and say, Yeah, you're right, it's not

16   in furtherance or yeah, the dates aren't precise.

17   And this is a lot of material for a judge to absorb.

18   And I'm quite willing to say, Hey, I don't think

19   you're right on this one; you know, I understand on

20   others, but this one you got it wrong.

21              And so that's -- but I agree with you the

22   burden always stays with the Government.  But I've

23   got to have some help from the defendants, because

24   y'all are going to run the risk of waiving for an

25   appeal if you don't help me out to some degree

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                          1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   saying:  That one you got wrong.  So I think we all
 2   are in the same box here.  We've got to preserve our
 3   objections; I've got to do my job, and the Government
 4   has the burden of proof.  So --
 5             MS. SIRIGNANO:  Thank you, Judge.  That's
 6   all I've got right now.
 7             THE COURT:  Do you have anything
 8   specifically you want guidance or you want me to
 9   reconsider or think about?
10             MS. SIRIGNANO:  I'll just take the Mr.
11   Lowry and Ms. Jacks option.  And if I -- Mr. Adams
12   and I believe that there is something that came in
13   wrong, we'll advise the Court in a letter.
14             THE COURT:  All right.  Take a look at it.
15   We've got boxes here of two conspiracies.  If they
16   don't fit in there, you can say, Well, I don't think
17   it fits in, and then the Government is going to
18   probably have to show me how else it's going to --
19   how it's going to fit in.
20             MS. SIRIGNANO:  Thank you, Judge.
21             THE COURT:  Thank you, Ms. Sirignano.
22             Mr. Castellano, I'll ask you, since some of
23   these that we've been talking about this afternoon
24   you're relying on Smalls.  On every one of the ones
25   that we had this afternoon in Smalls, are you -- let
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    me get the language to the rule so I can cite it to

2    you -- and then some of the defendants may have -- I

3    guess what I was going to ask you is:  Where we have

4    this afternoon defaulted not to the co-conspirator

5    statement, but we have defaulted to the statement

6    against interests.  The first requirement of that is

7    "a reasonable person in the declarant's position

8    would have made the statement only if the person

9    believed it to be true because, when made, it was so

10   contrary to the declarant's proprietary or pecuniary

11   interest or had so great a tendency to invalidate the

12   declarant's claim," that reasonable person in the

13   declarant's position, we're relying a lot on -- well,

14   I think I'm answering my own question.  Because we

15   don't have to determine Perez' interests.  What I was

16   thinking of is his is coming in because it's not

17   hearsay; it's a party opponent.  So it's Baca's

18   interests that we're having to evaluate.  And those

19   statements were against, those would not have been

20   made -- okay, I was thinking for a second, given the

21   testimony I heard, not in the James hearing, but in

22   the suppression motion, where he said he was lying.

23   But I don't think that's going to be relevant to

24   Baca's penal interests.  So I think the Smalls

25   exception still works.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           You're probably going to tell me I'm right.

2           MR. CASTELLANO:  I'm going to tell you

3     you're right, Your Honor.  And that's what happened

4     in Smalls.  We had a jailhouse informant, who said

5     that another person told me those things, and that

6     informant wasn't in harm's in terms of criminal

7     liability.

8           The only reason I came up --

9           THE COURT:  The informant is sort of

10    irrelevant here, because we've got the tapes.  So the

11    informant sort of falls out of the hearsay analysis,

12    and we're just analyzing Perez.  Perez comes under

13    party opponent.  And Baca comes in under the

14    exception statement against penal interests.

15          MR. CASTELLANO:  Yes.  And I think we've

16    covered the subjects.  But I want to make sure we're

17    talking about multiple conspiracies.  I think four

18    actually.  One is the conspiracy to murder Javier

19    Molina.  The next is the conspiracy to assault Julian

20    Romero.  That's one we don't discuss very much, but

21    Mr. Baca is the only remaining defendant in that

22    count.  There is a conspiracy there.  And then a

23    conspiracy to murder Dwayne Santistevan.  And a

24    conspiracy to murder Gregg Marcantel.  I've generally

25    spoken about Santistevan and Marcantel together, but

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                    1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    they are two conspiracies.
2              THE COURT:  Two conspiracies.  Let's talk a
3    bit about that second one, because that one I've sort
4    of phased over a little.
5              MR. CASTELLANO:  So we've talked about that
6    in passing, even when Mr. Roark was on the stand.  So
7    when the SNM was locked down following the Molina
8    murder, eventually they decided to lift the lockdown.
9    And within hours, another person was assaulted, and
10   that was Julian Romero.  And that resulted in the SNM
11   being locked down once again.  And that is covered in
12   one of the plea agreements I referenced earlier.  But
13   I'll give it back to the Court.
14             THE COURT:  So I have this clearly in my
15   head, who are you saying -- what are you naming this
16   conspiracy?
17             MR. CASTELLANO:  The Julian Romero assault.
18             THE COURT:  And who are you including in
19   this conspiracy?
20             MR. CASTELLANO:  This was a conspiracy
21   with, I believe, Gerald Archuleta, Conrad Villegas,
22   and Mr. Baca, among others.
23             THE COURT:  So then what statement of those
24   co-conspirators are you trying to get in through the
25   co-conspirator exception?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  Let me see if I can find
 2     that.  First, is -- one was Lupe Urquizo, and I'll
 3     give that to the Court in a second here.  But in
 4     terms of the conspiracy, Gerald Archuleta's plea
 5     agreement indicates that -- on page 5 of his
 6     agreement -- this is Government's Exhibit 14 -- "This
 7     attack and hit had been approved by leaders of the
 8     SNM Gang, including Anthony Ray Baca.  As leader of
 9     the SNM Gang in 2015, Baca was aware of the
10     outstanding green light and sanctioned it."  There is
11     some evidence of the conspiracy there --
12              THE COURT:  Who made that statement?
13              MR. CASTELLANO:  That is Gerald Archuleta.
14     I'll put the plea agreement --
15              THE COURT:  And he is one of the
16     conspirators in the Romero assault?
17              MR. CASTELLANO:  Yes, he was.  So in terms
18     of background, one of the things that causes some
19     divides in the gang were that -- maybe as far as
20     2003 -- Gerald Archuleta was in prison, if I recall
21     correctly.  He allowed Julian Romero to stay at his
22     house.  And he ended up sleeping with Gerald
23     Archuleta's wife, or girlfriend.  So, from that time
24     forward, there was an ongoing conspiracy to murder
25     Mr. Romero.  And in 2003, he was actually shot as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    part of that conspiracy.  And the conspiracy remained

2    outstanding up until the time he was assaulted.  And

3    that's referenced on pages 4 and 5 of Gerald

4    Archuleta's plea agreement.

5            And let me get the statement real quick, at

6    least some of them.  I believe one we introduced at

7    the hearing, at least as related to Lupe Urquizo, is

8    that "Anthony Ray Baca told Mr. Urquizo to let the

9    shot callers at Southern know that Baca wanted Javier

10   Molina hit."

11           The next statement was that, "Baca told

12   Urquizo to make sure the guys running Southern took

13   care of Molina."

14           The next statement is that, "Baca told

15   Urquizo if you guys down there don't handle it, then

16   just stab him," referring to Molina -- I'm sorry,

17   that's Molina -- I apologize, those are related to

18   Mr. Molina.  The two statements we have from Mr.

19   Urquizo are that "Mr. Urquizo and Jonathan Gomez told

20   Conrad Villegas to hit Julian Romero."  And the next

21   one was that, "Anthony Baca sent down word to

22   Southern that Romero should be beat but not stabbed

23   or killed."  And ultimately that's what happened.

24   Those are at least two of the statements I can find

25   right offhand that we introduced related to the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Julian Romero beating or assault.

2            THE COURT:  All right.  Did you want to say

3    something, Mr. Lowry?

4            MR. LOWRY:  Just a point of clarification,

5    Your Honor.  And this is going to go back.  So I take

6    on the representations now they're not two

7    conspiracies, but four conspiracies that we're

8    talking about.  But this point with the Julian Romero

9    statements, if I recall Agent Acee's testimony

10   correctly, Mr. Urquizo claims that he was told by

11   Jonathan Gomez about Mr. Baca's statements.

12           THE COURT:  Well, let me ask this:  That

13   statement of Mr. Urquizo was offered only to prove

14   for purposes of the James hearing that a conspiracy

15   existed, and who was a member of it.  It's not a

16   statement that you're trying to fit in as a

17   co-conspirator statement for purposes of the

18   exception?  Am I understanding the Government's

19   position correctly, Mr. Castellano?

20           MR. CASTELLANO:  The first statement.  Yes,

21   it wouldn't come in, well, directly.

22           THE COURT:  The first statement --

23           MR. CASTELLANO:  Yes, the first statement

24   is an admission by Mr. Urquizo that he and Jonathan

25   Gomez told Conrad Villegas to hit Julian Romero.  In

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                         1-800-669-9492
                                                                 e-mail: info@litsupport.com



```
 1    fact --

 2              THE COURT:  That is not -- you're not

 3    trying to fit that in a co-conspirator statement?

 4    Because Urquizo is not a co-conspirator in this one,

 5    right?

 6              MR. CASTELLANO:  He would be an uncharged

 7    co-conspirator.  He's not charged with that.  But he

 8    admits that he and Jonathan Gomez told Conrad

 9    Villegas to hit Julian Romero.  But that would come

10    in through Urquizo on the stand.

11              THE COURT:  Okay.  So there is no hearsay

12    problem, because he's here, and he made that

13    statement then to -- well, he made that statement to

14    who?

15              MR. CASTELLANO:  To Conrad Villegas, who

16    ultimately assaulted Julian Romero.

17              THE COURT:  Who is part of the conspiracy?

18              MR. CASTELLANO:  Yes.

19              THE COURT:  And he's saying that Mr. Baca

20    said that to him?

21              MR. CASTELLANO:  Well, a separate statement

22    is attributed, and that's that Mr. Baca is the one

23    who sent word down to Southern that Romero should be

24    beat, but not stabbed or killed.  So Mr. Baca is

25    modifying that order.  The original order for Mr. --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   "Styx," Gerald Archuleta, was that he should be

2   killed, referring to Julian Romero.  Mr. Baca

3   modifies that by saying, "He should be beat up, but

4   not stabbed or killed."

5           THE COURT:  Well, help me analyze it.  The

6   statement that Mr. Urquizo is going to make on the

7   stand, I don't need the co-conspirator exception.

8   The co-conspirator exception that you need is where?

9           MR. CASTELLANO:  Actually, I think you're

10  right, Your Honor.  I'm not sure we need it for that

11  purpose as a co-conspirator statement.

12          THE COURT:  Okay.  So if I don't need

13  Urquizo, if that statement doesn't need to fit into

14  an exception, then do you see any problems with now

15  the co-conspirator statements that the Government is

16  trying to get in in the Romero box?

17          MR. LOWRY:  Well, going with the Court,

18  what's the theory of admissibility?  I'm not quite

19  sure --

20          THE COURT:  Well, if Urquizo is on the

21  stand, you don't need any exception.  There is no

22  hearsay there, because it's going to be an in-court

23  statement being offered for the truth of the matter.

24          MR. LOWRY:  And my understanding was --

25          THE COURT:  But he's going to be testifying

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   about what Baca said.

 2          MR. LOWRY:  And that's my point, Your

 3   Honor.  That's not what my understanding from the

 4   testimony was.  My understanding from Agent Acee's

 5   testimony is that Mr. Urquizo will testify about what

 6   Jonathan Gomez told him that Anthony Baca told

 7   Mr. Gomez.  And I think --

 8          THE COURT:  Well, is Gomez part of the

 9   Romero conspiracy?

10          MR. CASTELLANO:  Jonathan Gomez is, I would

11   say part of the conspiracy, but he is not charged.

12   And my notes could be wrong here.  We could go back

13   to the transcript about what Agent Acee said.

14          MR. LOWRY:  And the reason this stands out

15   to me -- well, Mr. Castellano is looking at the

16   transcript, Your Honor -- is when I was asking Agent

17   Acee on the stand:  Okay, Urquizo attributes this to

18   Mr. Gomez.  You interviewed Mr. Gomez.  What did

19   Mr. Gomez say?  And this is where Agent Acee said,

20   "Well, he danced around it.  He never answered."  And

21   I had to press Mr. Acee.  And under cross, Mr.

22   Acee -- I think the transcript will reflect that he

23   said Mr. Gomez never affirmed that representation

24   made by Mr. Urquizo.  So I'm having a break in the

25   chain of the hearsay statements, or however we want
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   to characterize them.

 2            THE COURT:  Do you have the transcript that

 3   we can pull it up and take a look at it?

 4            MR. CASTELLANO:  I don't have it available,

 5   Your Honor.

 6            THE COURT:  Do you have that, Mr. Lowry, or

 7   Ms. Duncan?

 8            MR. LOWRY:  I do, Your Honor.  Your Honor,

 9   I'm looking at Volume 1 of the transcript from

10   November 27, 2017.

11            THE COURT:  Are you able to put that on the

12   screen for me?

13            MR. LOWRY:  I will, Your Honor.  It's on

14   page 153, if I have this correctly.  This is 153, I

15   have it highlighted here.  So that's what I'm saying

16   here, "Word had come down" -- this is Agent Acee's

17   testimony -- "Word had come down via Jonathan Gomez

18   that they were to hit Julian Romero."

19            THE COURT:  And your problem -- go ahead

20   and say it for me -- make your argument -- your

21   problem with that statement coming in the

22   co-conspirator is what?

23            MR. LOWRY:  Well, other than this is the

24   first I'm hearing -- well --

25            THE COURT:  That Jonathan Gomez was part of

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                          1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    the conspiracy?
 2              MR. LOWRY:  A member of the conspiracy.
 3              THE COURT:  Well, assume that they can --
 4    well, let's -- let's ask Mr. Castellano this:  What
 5    proof do I have at this point that Mr. Jonathan Gomez
 6    would be a conspirator here, indicted or unindicted?
 7              MR. CASTELLANO:  Let me check with Agent
 8    Acee real quick, see if he recalls, Your Honor.  And
 9    I'll see if I have another report.
10              THE COURT:  All right.
11              MR. LOWRY:  And I don't want to get stuck
12    on the shoals of credibility again.  But you can see
13    where I'm having an issue with this, if Mr. Gomez is
14    not saying that this statement was made.  Again, it
15    comes back to sort of an ongoing --
16              THE COURT:  Well, they have the burden of
17    proving that Mr. Gomez was a conspirator.  So I think
18    they're shouldering that burden, and wondering if
19    they have put in evidence that makes this --
20              MR. CASTELLANO:  I'm going to try to write
21    this down, Your Honor, as exact as I can get it.
22              MR. LOWRY:  And, Your Honor, just for the
23    sake of the exercise, I think one of the things
24    you've seen all the parties struggling with this
25    afternoon -- and I understand the way the hearing
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  unfolded, but nobody has a complete set of the

 2  exhibits.  And if we could get, at the end of the

 3  day, a complete set of the Governments exhibits so we

 4  can be pinpoint accurate if we have any questions.

 5          THE COURT:  You want the Government's

 6  exhibits?

 7          MR. LOWRY:  That are up here, just a copy,

 8  a set.  I mean, they referred to them in the record,

 9  and that's why we're looking at the transcripts

10  instead of having an actual set.  And just the number

11  of defendants -- I think the parties didn't make full

12  sets of exhibits for everyone.  And if we could just

13  make a copy of what the Court has on record, that

14  would be most helpful for this exercise, Your Honor.

15          THE COURT:  How do you want to do that,

16  Mr. Castellano?  It doesn't have to be today, but I'd

17  like to get a set back with me in Albuquerque.  Do

18  you want to let Mr. Lowry have a set of the exhibits?

19  He can make copies of them, and then get them back to

20  Ms. Standridge, and then she can get them up to me in

21  Albuquerque.  Is that okay?

22          MR. CASTELLANO:  The only set of exhibits I

23  have are here.  And some of the testimony came from

24  the officers refreshing their recollection from

25  reports.  Those did not become exhibits.  If you

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                     1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1    recall, a few times we lent those to the defense to

2    review during breaks.  So those weren't exhibits.

3    The exhibits here are the plea agreements.

4             I want to say, the summary I've been using

5    was introduced at one point.  I'll see if it's up

6    here.

7             THE COURT:  Let me see if I have -- I think

8    what Ms. Wild is saying is identify for the Court

9    what copies you want.  I think, at this point, I

10   probably better hang onto them.  So tell Ms.

11   Standridge what copies you want.  We'll make copies

12   and we'll hand them back to you.

13            MR. LOWRY:  I'll do that, Your Honor.

14   Thank you.

15            THE COURT:  Let me just look up here and

16   make sure that I don't have more exhibits.  Ms.

17   Standridge, do you have the exhibit numbers?  You're

18   not interested in any of the defendants' exhibits?

19   Because I have a stack of those.

20            MR. LOWRY:  No, Your Honor, I'm not.  And

21   if I help narrow this for everyone concerned, what

22   I'm really looking for are the Government's exhibits

23   that were in the form of transcripts or the

24   recordings summaries that were used with Agent

25   Acee's.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Does that stack have anything
 2    you're looking for?
 3              MR. LOWRY:  Yes, Your Honor, it does.  And
 4    I think this may be the majority of it.  But I'll go
 5    back to the record and look.
 6              THE COURT:  All right.  Just identify
 7    before you leave today with Ms. Standridge what
 8    copies you want.  I'll keep the exhibit set, and then
 9    she'll make you a set of copies and get them to you.
10              MR. LOWRY:  Thank you, Your Honor.
11              THE COURT:  All right.  Mr. Castellano, if
12    you have something you want to say further on the
13    Romero, then I want to go back to some of these
14    Smalls issues that -- I want to cover some of the
15    ones that we've identified here, that the defendants
16    have raised that they may have problems with
17    co-conspirator.  Then we were looking at Smalls.  So
18    I want to come back to that issue.  But why don't we
19    finish up with Romero before we do.
20              MR. CASTELLANO:  In Romero, looking at
21    Exhibit 14, which is Gerald Archuleta's plea
22    agreement, just to go back to establishing the
23    conspiracy, and that Mr. Baca was a member of the
24    conspiracy, that's on the top paragraph of page 5,
25    indicating that, "The hit had been approved by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1  leaders of the SNM Gang, including Anthony Ray Baca."
 2          THE COURT:  And this document that I'm
 3  looking at is whose plea agreement?
 4          MR. CASTELLANO:  This is Gerald Archuleta.
 5  It's Government's Exhibit 14.  So Archuleta was a
 6  member of that conspiracy, and he agreed that he
 7  conspired with Mr. Baca and others.
 8          And related to the --
 9          THE COURT:  Can you put that back up there?
10          MR. CASTELLANO:  Yes.
11          THE COURT:  What other -- does he identify
12  the others?
13          MR. CASTELLANO:  On page 4, there is a 2003
14  Shooting of Julian Romero.  I believe that was
15  Federico Munoz who did that, and maybe another person
16  was with him.  That went back to 2003.
17          And then, in 2005, it just indicates that
18  another member or associate of the SNM acted on the
19  hit, and that would refer to Conrad Villegas, was the
20  person who ultimately acted and assaulted Mr. Romero.
21          THE COURT:  Okay.
22          MR. CASTELLANO:  Then related to the
23  statements --
24          THE COURT:  So you're offering this to
25  prove who was in the conspiracy?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        MR. CASTELLANO:  Correct.  So we have to

2    prove the existence of the conspiracy.  In this case,

3    the remaining defendant in that conspiracy is Mr.

4    Baca, so to establish his membership in the

5    conspiracy.

6        Then going back to the statement by Mr.

7    Urquizo.  There is an indication that he and Jonathan

8    Gomez told Conrad Villegas to assault Julian Romero.

9    So that would be one statement, those two instructing

10   Conrad Villegas to assault Julian Romero.  Then Gomez

11   indicated to Urquizo that Mr. Baca sanctioned the

12   hit, but he only wanted him smashed; he did not want

13   him stabbed or killed, referring to Julian Romero.

14   So the other statement would be Mr. Urquizo telling

15   the jury that Mr. Gomez told him that Mr. Baca only

16   wanted the victim smashed or beat up, but not stabbed

17   or killed.

18        THE COURT:  You say there is an indication

19   that he, Mr. Urquizo, and Gomez told Conrad Villegas

20   to assault Romero.  So that would be one statement.

21   Do we need -- if Urquizo is part of the conspiracy,

22   what evidence do I have at this point that Urquizo is

23   part of the conspiracy?

24        MR. CASTELLANO:  Urquizo's admission.  He

25   admits that he and Jonathan Gomez instructed Conrad

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Villegas to assault Mr. Romero.

2            THE COURT:  And that's Mr. Urquizo's own

3    statement?

4            MR. CASTELLANO:  Yes.

5            THE COURT:  So what do we need Jonathan

6    Gomez at all for?  It seems to me that it may be

7    difficult for the Government to get Jonathan Gomez.

8    I don't think there is maybe enough here for me to

9    find that Gomez is a member of this conspiracy.  And

10   then, if that's the case, it seems to me it's

11   irrelevant what Gomez said to Villegas.  And it may

12   be difficult to fit that into the co-conspirator's

13   statement.  Your thoughts on that?

14           MR. CASTELLANO:  Mr. Urquizo and Mr. Gomez

15   both told Conrad Villegas to commit the assault.

16           THE COURT:  But it sounds to me like I've

17   got Urquizo coming in and saying that he told

18   Villegas to assault.  What do I gain by getting Gomez

19   in the picture?

20           MR. CASTELLANO:  Because Gomez is the one

21   who tells Urquizo that Mr. Baca only wanted the

22   victim assaulted, not stabbed or killed.  So what

23   Mr. Gomez is doing is providing instructions to Mr.

24   Urquizo that Mr. Baca sent down when that assault was

25   going to occur.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.  So let me make sure I
 2    understand.  I'm using Urquizo's statement to prove
 3    both that Gomez is a member of the conspiracy to
 4    assault Romero, and that -- well, that Gomez was part
 5    of it, and then there was a conspiracy, and I'm using
 6    the same statement to show that it was in furtherance
 7    of the conspiracy?
 8              MR. CASTELLANO:  Correct.
 9              THE COURT:  Okay.
10              MR. CASTELLANO:  In other words, Mr. Gomez
11    would be identifying other members of this
12    conspiracy, to include Mr. Baca.  And identifying
13    other members of the conspiracy is in furtherance of.
14              THE COURT:  Mr. Urquizo would be doing
15    that, is that what you said?
16              MR. CASTELLANO:  Well, yes, Mr. Urquizo.
17              THE COURT:  You said "Mr. Gomez," but I'm
18    not having Mr. Gomez speak.  Where is he speaking
19    other than to he told Villegas?
20              MR. CASTELLANO:  Correct.  He does two
21    things.  Mr. Gomez, along with Mr. Urquizo, first
22    instructs Mr. Villegas to commit the assault.  And
23    then Mr. Urquizo tells us that he got word through
24    Mr. Gomez that Mr. Baca wanted this only to be an
25    assault.  So Mr. Urquizo is relaying a statement by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Gomez, identifying himself as a conspirator and
 2    Mr. Baca as another conspirator.
 3              THE COURT:  Okay.  What do you see as the
 4    flaw, if any, on that, Mr. Lowry?  It looks like
 5    they've got enough for me to find by a preponderance
 6    all three of the elements on the Romero, and get the
 7    Baca statements in.
 8              MR. LOWRY:  Well, Your Honor -- I would
 9    agree with Your Honor, if we assume Jonathan Gomez is
10    a member of the conspiracy.
11              THE COURT:  Well, do you agree with me --
12    and I think this is a principle that I can use --
13    that's the reason I was asking Mr. Castellano.
14    Because it seems to me the critical statement is that
15    Urquizo -- let me see if I can find it -- so Urquizo
16    said that he and Gomez told Villegas.  So I can get
17    Urquizo's statement in.  Like I said, just drop out
18    Gomez for a second, drop him out.  So it's just
19    Urquizo telling Villegas to go assault Romero.  And
20    then Urquizo can then -- and that statement would be
21    in furtherance of the conspiracy.  It would show
22    there is a conspiracy, because he's saying Baca said
23    it.  And it would indicate that he and Mr. Baca were
24    members of the conspiracy.  And then, if I had a
25    Mr. Gomez -- then Urquizo is establishing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Gomez -- there is already a conspiracy -- now
 2    that he's a member of the conspiracy and that he is
 3    acting in furtherance of the conspiracy.  So it seems
 4    to me I can use the statement for multiple purposes,
 5    and therefore, establish that Mr. Gomez is, by a
 6    preponderance of the evidence, is both a member --
 7    that the conspiracy exists; he's a member of the
 8    conspiracy, and that the statements Mr. Gomez made
 9    were in furtherance of the conspiracy.  So, yes, it's
10    not an assumption.  I have to make a finding on that
11    that I can use a statement.  I can use the -- I can
12    use as evidence the statement itself that's being
13    used to find the three elements of the co-conspirator
14    exception.
15              MR. LOWRY:  That's a lot of work for just
16    the statement itself.  And I'm not --
17              THE COURT:  But it's only a single
18    statement coming in, too.  So it's not carrying the
19    weight of a lot of things like in the other
20    conspiracies, where a lot of statements were coming
21    in.  It's one coming in here.
22              MR. LOWRY:  Well -- and I guess what I
23    would suggest, you know, the standard would ask the
24    Court to look for evidence of corroboration with
25    that.  And that's why I asked Mr. Acee.  And what I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    have on the Elmo is the direct --

 2              THE COURT:  Well, isn't the corroboration

 3    going to come in -- I'm sorry, who is coming on the

 4    stand?  It's Romero -- not Romero.  It's --

 5              MR. LOWRY:  Urquizo.

 6              THE COURT:  Is it Urquizo or Gomez?

 7              MR. CASTELLANO:  It's Urquizo, Your Honor.

 8              THE COURT:  So Urquizo is going to come in

 9    on the stand.  The fact he's here going to state

10    these things under oath, isn't that going to be some

11    additional indication of trustworthiness?

12              MR. LOWRY:  Your Honor, if you look at the

13    pattern instructions on the credibility of

14    informants, I think what the instructions will tell

15    the jury, ultimately, is we're to treat their

16    credibility with a high degree of suspicion.  And I

17    would encourage the Court to do so as well,

18    especially in this analysis.

19              Because what Agent Acee had said, when I

20    asked him on this page, and this is page 206 of the

21    transcript, from November 27, 2017, is that he did

22    try to corroborate this statement, and he was

23    unsuccessful in doing so.

24              THE COURT:  Where do you get the standard

25    that -- and I'm not sure exactly what you said, but I

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

235

```
 1   think you said that:  What I am told to do is to
 2   treat something with a high degree of suspicion?
 3   What was your word?
 4            MR. LOWRY:  The pattern instructions, I'm
 5   thinking of the ones I've read from the Ninth
 6   Circuit.  But to say to the jury in the ultimate set
 7   of instructions that we'd like to have the Court
 8   read -- and obviously, we'll debate that at a later
 9   point -- is that one should consider informants,
10   snitches, however you want to describe it, with a
11   certain degree of suspicion.  Those are my words.
12            THE COURT:  And you think I should use the
13   same standard?
14            MR. LOWRY:  I'm sure the law doesn't
15   obligate you to use that standard.  But if we're
16   talking about corroboration of his statements, and
17   we're just resting sort of -- you know, pulling his
18   statements up by themselves on their own merit, as I
19   told the Court earlier, I'm a bit of a skeptic when
20   it comes to the Government's evidence, and I'm not
21   going to yield on this particular statement.
22            So when I try to assess whether the
23   Government had corroborated Mr. Urquizo's statements,
24   we get:  He didn't do that.  And this goes a little
25   bit further than that.  If we look from page 206 to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    207, Agent Acee described Mr. Gomez' briefing to him.

2    And that he says, essentially -- I'll paraphrase

3    this, and the Court is welcome to read it -- but:  We

4    don't listen to Mr. Baca, you know.  And that's what

5    we see here on line 21 of page 207.  "We don't always

6    follow the orders."

7           THE COURT:  And help me out.  From that,

8    your argument would be what?

9           MR. LOWRY:  Well, that you can't -- we're

10   relying completely on Mr. Urquizo's statements that

11   Mr. Baca was involved; had sanctioned this rough-up

12   of Mr. Romero.  And what I'm suggesting to the Court

13   is Mr. Urquizo had a lot of motivation to credit

14   someone else with this, especially Mr. Baca, because

15   the Government is, you know, offering considerable

16   benefits to individuals that are willing to implicate

17   Mr. Baca in all manner of criminal conduct.  And Mr.

18   Urquizo is no exception to that.

19           So here we have Mr. Urquizo, with some

20   degree of motivation, to corral Mr. Baca into a

21   conspiracy that Mr. Archuleta will say -- I would

22   imagine he'll say that he initiated.  I think it's

23   important for the Court to understand that, in Mr.

24   Archuleta's plea agreement, which we just examined

25   with the Government, he's talking about things that

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   happened in 2003, 2004, 2005, all of which
 2   incorporated a period of time where Mr. Baca isn't
 3   even in New Mexico.  He's been in Nevada serving time
 4   since 1997; doesn't return to New Mexico until 2008.
 5           So the idea that Mr. Baca was part of some
 6   tabla or some organization that got together and
 7   conspired to authorize Mr. Romero to be killed is,
 8   again, I guess, from what I understand the Court's
 9   leanings, you might consider that a credibility
10   issue.  But I think when we're looking for evidence
11   of corroboration about the merit of Mr. Urquizo's
12   statements, I think that's other evidence that the
13   Court could consider, and should consider.
14           THE COURT:  Okay.  If I do that, though,
15   should I also consider evidence that I have from a
16   number of sources that Mr. Baca was the leader and
17   did give orders?  I mean, not rely just upon this one
18   statement that -- but also everything else I've
19   heard, that Mr. Baca does -- is the leader, was the
20   leader, and did give orders, and many of those orders
21   were carried out.
22           MR. LOWRY:  I think the Court could use
23   everything that the Court has heard in the last weeks
24   of motions hearings.  I wouldn't argue against that.
25   But this is why --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1            THE COURT:  Tell me, though, on this
 2   particular point, whether he -- whether Mr. Baca was
 3   in control, wasn't in control, people followed his
 4   orders, didn't follow.  Tell me what element of the
 5   hearsay exception this goes to.
 6            MR. LOWRY:  Well, what I'm suggesting to
 7   the Court is that United States is trying to say that
 8   Mr. Urquizo is part of a conspiracy that includes Mr.
 9   Baca.  And Mr. Urquizo is telling Agent Acee:  I'm
10   not part of Mr. Baca's branch, for the sake of
11   argument here.  Mr. Urquizo is saying, Look, we don't
12   follow Mr. Baca, we don't follow his directives.  So
13   if one doesn't follow one's directives, I find it a
14   bit difficult to say:  I conspired with you, if we
15   don't agree on anything.
16            THE COURT:  But isn't here, there was an
17   assault carried out?
18            MR. LOWRY:  Apparently so.  It's on video,
19   Your Honor.
20            THE COURT:  So --
21            MR. LOWRY:  The question would be why was
22   that assault carried out?  And I think the Government
23   just stated it quite clearly.  The assault is carried
24   out because Mr. Romero slept with Mr. Archuleta
25   (sic), who is a Government witness.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1              THE COURT:  So you're arguing that the
2    Government has not proven that there is a conspiracy
3    that includes Mr. Baca?
4              MR. LOWRY:  Correct.  And I would submit
5    that the Government has tendered evidence from the
6    cooperating witnesses that Mr. Baca is allegedly
7    involved.  And again, that's why I'm asking the Court
8    to consider as part of analysis where the witnesses
9    may have had some motivation to implicate others,
10   when that may not, in fact, have been true.
11             I mean, the fact of the matter is -- what
12   I'm hearing the Court suggest is Mr. Baca was the
13   leader; Mr. Baca ordered this; Mr. Baca ordered that.
14   And if Mr. Baca -- what we've suggested to the Court
15   since this case began -- if Mr. Baca was so clearly
16   the leader of the SNM, you know, he's put in Level 6
17   repeatedly by individuals.  And we suspect, and the
18   Government hasn't confirmed this yet because we're
19   still working on identifying confidential human
20   sources within STIU, that those individuals placed
21   Mr. Baca in Level 6 because the organization
22   allegedly abandoned him as the leader.
23             THE COURT:  All right.  So that's the
24   element you're attacking there?
25             MR. LOWRY:  Yes, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Anything else on
 2    this one, Mr. Lowry?
 3              MR. LOWRY:  No, Your Honor.
 4              THE COURT:  Thank you, Mr. Lowry.  Do you
 5    want to respond on this one, Mr. Castellano?
 6              MR. CASTELLANO:  Yes, Your Honor.
 7              If the Court is looking to other evidence,
 8    I'm going back to Rudy Perez' -- one of his
 9    statements, which is DeLeon, 20540.  This is one of
10    the statements where Mr. Perez claims to have heard
11    directly from Mr. Baca.  "I heard 'Pup' say they have
12    to answer for that no matter how close I am to them.
13    They have to be account."  And this has to do with
14    them not following through with the hit.
15              So there are times when people don't obey
16    orders.  But at some point Mr. Baca has told Mr.
17    Perez that there will be repercussions for those
18    people.  But certainly those people can disobey, but
19    it doesn't mean there will not be consequences.  So
20    there is indication that people obey orders, and
21    sometimes they don't, and there will be
22    repercussions.
23              The other thing in terms of corroboration,
24    is that the assault itself is corroboration, because
25    Mr. Romero was, in fact, assaulted, but not stabbed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    or killed.  And in the transcript that Mr. Lowry

2    showed the Court, there is no indication that

3    Mr. Gomez, Jonathan Gomez -- he didn't say that it

4    didn't happen.  He said he danced around it.  And so

5    he didn't quite -- the answer to that question was

6    not no.  He just didn't really want to answer that

7    question.  So the evidence we have is that Mr. Baca

8    did approve it; that the approval came through

9    Mr. Gomez, and ultimately through him and Mr. Urquizo

10   for the assault to occur.

11            I don't have anything further on that

12   unless the Court has questions.

13            THE COURT:  All right.  I don't believe I

14   do.

15            I think specifically as to Romero, I'm

16   going to find that there is, by a preponderance of

17   the evidence, evidence that a conspiracy existed.  I

18   don't think that there is much dispute on that.  The

19   question is whether or not Mr. Baca was a part of it,

20   being a declarant.

21            And I think finding by a preponderance of

22   the evidence there is evidence that -- quite a bit

23   that we've heard and I've read -- that he is the

24   leader, or at least at one time was acknowledged as

25   the leader of the SNM Gang; that his orders were sent

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   down and carried out.  There may be times when he
 2   didn't, when they weren't carried out.  But I don't
 3   think that that's the element of the hearsay
 4   exception.  And I do think this was in furtherance of
 5   the conspiracy, how it would be taken care of,
 6   limitations on it.  I think those were part.  So I do
 7   think these statements in the Romero box, the
 8   conspiracy, do satisfy the hearsay exception.  And so
 9   I will admit them.
10           Let me now say for all four conspiracies --
11   because I do want to take what Ms. Sirignano said
12   seriously -- for all four conspiracies I am finding
13   that the statements that have been identified in the
14   four conspiracies by the Government do come within
15   the hearsay exception.  I do think that they -- the
16   Government has established the four conspiracies.  I
17   think they have satisfied the members of it and the
18   declarants are members of that conspiracy, and that
19   the statements were made in furtherance of the
20   conspiracy.
21           We have, this afternoon, identified a few
22   statements that either lacked dates and specificity,
23   that I will not rely on the hearsay exception for
24   co-conspirators.  And for those that we identified
25   this afternoon, I will be relying upon either present
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   sense for Mr. Molina's stabbing, or statements
 2   against interests, or the person is testifying, the
 3   first declarant is testifying.  But I will not be for
 4   those that we identified and found alternatives for.
 5   Those will be coming in, but they'll be coming a
 6   different way.
 7           With one caveat -- and I now want to ask
 8   the Government to help me because this was some stuff
 9   we covered this summer, and I want to make sure that
10   I have a firm basis for what I've just said as far as
11   the statement against interests.  Let me -- Mr.
12   Castellano, take again the Mr. Perez and Mr. Cordova
13   statements.  I'm not concerned about a Bruton
14   problem, I'm not concerned about particularly a
15   Smalls or testimonial or Crawford issue, so I'm
16   putting those aside.  But I'll come back and
17   reference them.  But that's not my concern.  But take
18   Mr. Perez, for example, his statements to Cordova.
19   I've said that the statements that are being made in
20   Mr. Perez' statements are -- come within the
21   co-conspirator exception with some statements we
22   identified this afternoon that we'll not be relying
23   on.  But all the others I will rely on.  But I want
24   to go back to Mr. Perez' statements.  You and I, in
25   our discussions earlier -- and no defendant disputed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     this -- we were relying upon the fact that Mr. Perez

2     was a party opponent.  I think Smalls deals with the

3     Crawford-Bruton problem, so there is no

4     constitutional problems.  But I'm looking for the

5     hearsay exception that gets the statements of Mr.

6     Perez on the tape to be used against other people.

7     And here's what I'm concerned about:  "An opposing

8     party's statement, the statement is offered against

9     an opposing party and was made by that party," it

10    looks like the statement is only excluded from the

11    hearsay definition.  So the definition part, when

12    it's used against the party that made the

13    statement -- so presumably, the United States will

14    want to use the Perez recording against Mr. Perez,

15    which I think is quite all right.  But what do I do,

16    then, to find either it being a nonhearsay statement,

17    or a non -- or a hearsay exception to cover it being

18    used against other people?  And again, I'm putting

19    aside the Bruton problem.  Because I do think Smalls

20    solves it.  And I'll give you my solution there.

21            If, in fact, the Tenth Circuit didn't have

22    a Bruton problem or Crawford problem or a testimonial

23    problem with an 803 exception for a nonavailable

24    witness, then it would seem to me that they would

25    have even less of a problem with something that is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     classified as nonhearsay.  But it is only nonhearsay

2     against Mr. Perez.  It seems to me that something has

3     to be done to make it nonhearsay against others, or

4     is this a situation where we have to give a limiting

5     instruction?  Again, it's not a Bruton problem or

6     Crawford problem or testimonial problem to say that

7     the jury cannot consider the statements of Mr. Perez

8     against any other party.

9              And if that's the case, it's not really my

10    problem.  But it begins to be an evidentiary problem

11    for you, if I'm telling them that Mr. Perez'

12    statements, which is the first cut, can't be used

13    against anybody else, so they can only listen to it

14    in connection with Mr. Perez.

15             Thoughts on that?  Have I analyzed the

16    hearsay problem correctly?

17             MR. CASTELLANO:  I think possibly,

18    depending on where we end up with this, Your Honor --

19    I'm trying to look for examples here in the

20    transcript -- so, in other words, if Mr. Perez says

21    someone else told me something in this statement, we

22    want to figure out how that could be used against

23    that person or the other defendants?

24             THE COURT:  No, I guess I'm thinking that

25    what -- and help me here -- but when the tape is

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                 1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   played about -- that Mr. Perez said to Mr. Cordova,

2   do I need to turn to the jury and say, "You cannot

3   consider this evidence against any other defendant,

4   because it's nonhearsay as to Mr. Perez," but I am

5   not thinking of a nonhearsay exception for Mr. Perez'

6   statement to be used against anyone else.  And,

7   again, it's not a Bruton problem.  They could be

8   tried together, everybody could be tried together,

9   which was where this first bubbled up, was in the

10  severance motions.  But at least in instructing the

11  jury, how does the jury use anything that Mr. Perez

12  says against Mr. Baca?

13          MR. CASTELLANO:  To be sure I'm

14  understanding you -- and I'll probably ask the

15  questions of my colleagues here in a second -- but

16  just to make sure I'm understanding the Court.  In

17  other words, if it doesn't fall under Smalls, or it

18  doesn't fall under a co-conspirator statement, we

19  just have other statements throughout the transcript,

20  then how can we use those against the other

21  defendants in the courtroom; is that correct, if

22  they're not otherwise categorized by some other rule?

23          THE COURT:  Well, let me put it in my

24  words.  I'm not trying to avoid your question.  But

25  let me put it in my words.  Here's what 801 says --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  it says:  "Definitions."  So statements that are not

2  hearsay, "An opposing party's statement, the

3  statement is offered against an opposing party, and,

4  A, was made by the party."

5          So you and I in our analysis, we were

6  putting Perez aside.  We're saying, Okay, it's coming

7  in.  It is coming in.  But it's coming in against Mr.

8  Perez.  How does his out-of-court statements being

9  offered for the truth of the matter come in against

10  any other defendant?  Again, it's not a Bruton

11  problem, Crawford problem, testimonial.  I think

12  Smalls takes care of that, which is the issue that we

13  were discussing at the severance.  I think the

14  defendants had raised there were Bruton problems, and

15  I dealt with those.  But then, how does Perez'

16  statements, how are they used against Mr. Baca or any

17  of the other four defendants?

18          MS. FOX-YOUNG:  Your Honor --

19          THE COURT:  Let them think a little bit.  I

20  can probably guess what y'all are thinking.  But let

21  me let them think just a second.

22          MS. FOX-YOUNG:  I thought the Court might

23  want me to comment on the Bruton issue.  Because I

24  don't think it is resolved.  And I thought maybe

25  while they were talking, we could talk about it.  But

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   I'll wait, Your Honor.
 2              THE COURT:  Let's do.
 3              MR. CASTELLANO:  The best shortest answer I
 4   can give to the Court right now, in terms of whether
 5   it comes in for the truth, would be -- still be under
 6   a statement against interests because the statements
 7   that Mr. Perez makes, even if he's repeating other
 8   people's statements, or adopting those statements, is
 9   still against his interests, because he's still
10   discussing the enterprise.
11              THE COURT:  Okay.  And this is where we
12   come back to what I was saying -- this is the
13   question I've tried to ask earlier, and then
14   abandoned it, and now I'm coming back to it.  Because
15   you remember I started asking you:  Do I need to fit
16   Mr. Perez' statement in to the statement against
17   interests?  And I said, No, I don't because he's the
18   party opponent.  So it fits there.
19              But I think I now need to come back to
20   that.  If you're relying upon a statement against
21   interests -- this is what I was talking about -- do I
22   need to take into consideration his testimony?  I
23   know it was offered in the suppression portion of the
24   hearings that we've had.  But here's what 804(3)(a)
25   says, "A reasonable person in the declarant's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    position would have made" -- it's "a statement that a
 2    reasonable person in the declarant's position would
 3    have made only if the person believed it to be true."
 4           He has testified that everything he was
 5    saying was a lie, or pretty much; not all of it, but
 6    some of it.  So -- and I guess the thing I'm pausing
 7    on, it does seem to me that, even though I have said
 8    I do not think his testimony was coherent or
 9    credible, nonetheless, a reasonable person in Mr.
10    Perez' position could think that spreading lies about
11    himself was a good idea to protect himself from being
12    labeled as a snitch, and then suffering the fate of
13    something like Mr. Molina.
14           So I'm wondering is it going to fit that
15    exception, because either the Government's theory and
16    the defendant's theory, would they both be what a
17    reasonable person in Mr. Molina's shoes could have
18    done?  And if so, then, it's only if the person
19    believed it to be true.
20           MR. CASTELLANO:  Well, if we set aside Mr.
21    Perez' testimony for a second, if we look at the
22    statements themselves, there is actually not an
23    indication here that he's lying.  In some places he's
24    defending his honor, and he's saying, basically,
25    Don't worry about it.  I talked to "Pup."  "Pup" said
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I'm okay.  Other people who questioned him about it,

2    he said he put him in check.

3            So I'm looking first at page 20536 of

4    DeLeon.  And then, in 20535, there is a discussion

5    here in the middle of the page.  He told somebody, "I

6    heard you're saying this and that, so I fucking

7    checked the trigger."  So I'm not sure there is an

8    indication, from reading the transcript itself, that

9    Mr. Perez was lying about any of this.  What he was

10   saying was --

11           THE COURT:  I'm not saying the transcript

12   of his testimony in the suppression hearing.

13           MR. CASTELLANO:  I mean, we have to do

14   something about this statement.  I mean, if the Court

15   doesn't credit his testimony, the Court doesn't have

16   to credit the part where he says, I lied to Mr.

17   Cordova about all these things.  And so I think

18   that's --

19           THE COURT:  I agree with you that I don't

20   have to credit it.  But I do have to make an

21   objective determination as to whether a reasonable

22   person in the declarant's position would have made

23   the statements that he made to Mr. Cordova only if

24   the person believed it to be true.

25           MR. CASTELLANO:  Right.  So looking at the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    transcript, a reasonable person would not have

2    admitted to criminal liability unless it were true.

3    So, in the transcript, Mr. Perez admits that he gave

4    pieces of his walker to be served as shanks.  He also

5    names the other people who were co-conspirators in

6    this case.  And he's saying that to another person he

7    believes is an active SNM member.  So it wouldn't

8    make sense for him to lie about other people who are

9    involved in the murder with him.  A reasonable

10   person, under those circumstances, would not have

11   said that, would not have implicated other people in

12   the murder, if that weren't true.  And that is all

13   against his interests.

14           THE COURT:  Well, look at it.  And help me

15   with the statement against interests.  If that's

16   going to be the hearsay exception, if you're in

17   agreement with me -- if you're in agreement with me,

18   remember in Smalls, we only had one level of hearsay.

19   It was a jailhouse recording.  So you're just -- you

20   know, you got Baca talking to Cordova, rather than

21   Perez talking to Cordova and talking about what Mr.

22   Baca said.

23           So you do have a little -- not a little,

24   it's an exception -- that's what's creating the whole

25   issue here.  Smalls had only one level of hearsay, a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    jailhouse recording of a declarant confession to a

2    confidential informant.  So it's like Baca talking to

3    Cordova.  And at least some of Mr. Perez' statements

4    have two levels of hearsay.  And I guess the one

5    we're focusing on here:  Mr. Baca told me X, Y, and

6    Z.  And of course, Rule 805 is going to require me to

7    find an exception or an exclusion for each hearsay

8    level.  We've been focusing on the second level, the

9    level within the recording.  But I'm thinking that

10   that works as against Mr. Perez.  But it may not work

11   against anyone else, which is not so much a problem

12   for me, but it's a problem for you.

13           MR. CASTELLANO:  On page 20541, there is an

14   indication that Mr. Perez admits to membership in the

15   SNM.  He says:  Because once that happens, once

16   you're validated, you get done dirty all the way

17   around the board.  In other words, things get pretty

18   rough for you once you're validated.  You get locked

19   down and things of that nature.

20           THE COURT:  Let's do this:  I need to give

21   Ms. Bean another break.  Take a look at -- if you're

22   going to rely on -- to get Mr. Perez' statements on

23   the tape against the other four defendants, see if

24   you can find anything, and we'll start looking at it,

25   too, as to what this statement in 804(3)(a) means:

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492
                                                                                      1-800-669-9492
                                                                              e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1    "A reasonable person in the declarant's position

2    would have made a statement that a reasonable person

3    in the declarant's position would have made only if

4    the person believed it to be true."  That's what I'm

5    pausing on.  So if that's going to be the exception

6    you relied on -- and I'm not surprised; that was the

7    one that I was studying, and that was the portion

8    that I wondered if the Government had a way of

9    establishing that.  So let's take a break for about

10   15 minutes, and then we'll come back in and resume

11   this argument.

12           I haven't forgotten your question, Ms.

13   Fox-Young, or your statement.

14           (The Court stood in recess.)

15           THE COURT:  All right.  We'll go back on

16   the record.  I think every defendant has an attorney.

17   If you'll look around and make sure that your

18   co-defendant, each person has an attorney.

19           Let me do one thing ministerial before I

20   begin.  I have sent Fed Ex packages back to

21   Albuquerque -- not today, but yesterday.  They did

22   receive them.  So again, just the status of vouchers

23   for the CJA lawyers, they had everything today that I

24   was able to get sent on Sunday, and then sent

25   yesterday.  Then I got the package yesterday.  They

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   received packages regularly.  I think one day Fed Ex
 2   had some delivery problems in the area.  But they
 3   have them all as of today.  I did receive a Fed Ex
 4   package today, and I'll be taking it back tonight.
 5   And I have got some vouchers done.  There was some
 6   vouchers in there.  So if you're wondering where
 7   things stand, I did receive a packet today.  It does
 8   have some CJA vouchers.  I have signed many of them.
 9   I'll be taking them back.  I don't know whether I'll
10   get the others done tonight or not.  But that's where
11   we are.  I did understand that Mr. Burke and Mr.
12   Castle didn't submit vouchers for today's hearing, so
13   you might talk to them about it.  It seems to me that
14   that's probably something that can be remedied.  They
15   can either just ask for it --
16            MR. COOPER:  Or eat it.
17            THE COURT:  I'm not suggesting eat it.  But
18   wondering since like for today I signed Mr. Lowry's
19   stuff for this week, the vouchers.  I don't know if
20   it has to be precise, if something comes up.  You can
21   get those to us.
22            MR. COOPER:  Thank you, Judge, for working
23   on our vouchers.
24            THE COURT:  So tell Mr. Burke and Mr.
25   Castle to talk to Ms. Waters.  I think that that can
```

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    be -- you know, if all of a sudden, you have an extra
 2    day in Las Cruces, even if they didn't expect it, for
 3    whatever reason, then talk to them about it.  I think
 4    it can be worked out so they can stay.  I don't have
 5    the answer off the top of my head.  But tell them
 6    that.
 7              MS. HARBOUR-VALDEZ:  We will, Your Honor.
 8    Thank you.
 9              THE COURT:  All right.  Mr. Castellano, we
10    were talking about 804(3)(a), and that was the
11    hearsay exception; you were using Mr. Perez'
12    statements to Mr. Cordova to find a hearsay
13    exception.  Any further thoughts you have on that?
14              MR. CASTELLANO:  I think I had three
15    thoughts over the break.  And I don't think I had any
16    other thoughts after that.  But so these are the
17    three thoughts.  One is we talked about fear and
18    things of that nature.  Mr. Perez testified he was
19    not intimidated in any way by Mr. Cordova.  So I
20    think some of the fear factors that might come in
21    here in the statements, in terms of why he might be
22    worried, why he might lie.  One, in the transcripts
23    themselves, he indicates no fear of anyone.  And also
24    indicates that Mr. Baca told him that he was fine.
25    Then, in court, he told the Court he was not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   intimidated in any way.  So I think in terms of
 2   having any type of motive to lie based on fear, it's
 3   completely gone.
 4             The second is that --
 5             THE COURT:  I know he didn't have any fear
 6   about Mr. Cordova.  But I thought what he testified
 7   on the stand was he spread lies because he didn't
 8   want to suffer the same fate as Mr. Molina himself.
 9             MR. CASTELLANO:  What he said was he wanted
10   to find a way to use Mr. Cordova as a conduit to,
11   once again, tell other people that there wasn't a
12   problem.
13             THE COURT:  Correct.  But he used lies, in
14   in his words, to do that.  And I guess that's my
15   question, is that is a reasonable person in Mr.
16   Perez' position, could he have done that?
17             MR. CASTELLANO:  Well, Your Honor, I only
18   had three thoughts on the break.  That's a fourth
19   thought.  And so Mr. Beck is actually going to handle
20   the reasonable person argument.
21             THE COURT:  Okay.
22             MR. CASTELLANO:  And I think you'll have an
23   answer for the Court here in a little bit.
24             THE COURT:  Okay.
25             MR. CASTELLANO:  Usually, when I walk up
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  here, I have a stack of papers, and refer to this as

 2  one statement.  But what we really need to think

 3  about, this is multiple statements over multiple

 4  days.  So Exhibit 16 is one.  And then we have 31A,

 5  32A, 33A, all the way through 37A.  Now, admittedly,

 6  37A is not even one page of transcript.

 7          But in terms of Mr. Perez' statement, it's

 8  actually statements over days.  And so, if we're

 9  talking about him making these statements, he has had

10  time between recordings to think about these things.

11  But he's been fairly consistent throughout the

12  statements.  So I think that also says something

13  about these statements.  And 804, the statement

14  against interests, the second paragraph also talks

15  about sufficient corroboration in the statements.

16  And that's found, once again, throughout the

17  statements themselves.  So we're not just talking

18  about one statement.  We're talking about multiple

19  statements against interests.

20          And the last thought I had was that -- I

21  pointed out before the break, and Mr. Perez admitted

22  to being a member of the enterprise.  So that itself

23  is against his own interests, because the enterprise

24  indeed is in racketeering activity.  It would be hard

25  pressed to find a member of the enterprise who

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   couldn't be convicted of a racketeering conspiracy,
 2   or having an agreement that somebody would commit
 3   racketeering acts.
 4          So, if you look at the statement
 5   separately, that tells you something.  If you look at
 6   each one or all of them in a whole, it all talks
 7   about the enterprise, membership in the enterprise,
 8   and he's talking about family business.  And those
 9   things are all generally going to be against his
10   penal interests to be discussing.  So I think all of
11   those would, therefore, weigh in favor of admitting
12   them as statements against interests.
13          And if you have any more questions, I think
14   Mr. Beck -- go ahead.
15          THE COURT:  Yeah.  I'm not hung -- I agree
16   with you on the -- once he admits to the SNM, that
17   he's a member of the SNM Gang, I think that probably
18   is enough to be against his interests.  But the part
19   I'm hung up on is not that what he was saying was so
20   contrary to the declarant's interest, but that first
21   portion, because I have to give content to it, that
22   "a reasonable person in the declarant's position
23   would have made only if the person believed it to be
24   true."  And so I guess I'm wondering, does that
25   require me to make a finding that he believed what he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    was saying to be true, or does it simply require that

2    a reasonable person in the declarant's position would

3    have made it only if the person believed it to be

4    true, which suggests to me that it's an objective

5    standard, not a subjective one, that I bring to the

6    analysis.

7            And then, it seems to me -- I'm not trying

8    to make the argument for him -- but the argument

9    would be that a reasonable person in Mr. Perez'

10   position would have made these statements only if he

11   believed it was true.  A reasonable person in his

12   position could have made those statements thinking

13   they were false, that he was purposely spreading a

14   lie.

15           So I guess that maybe I'm sort of beginning

16   to answer my own question, or at least phrase it

17   better.  Can a person tell a lie that is a perfectly

18   reasonable lie, and if it's a perfectly reasonable

19   lie, can an opponent use that, use the 804(3)(a)

20   exception?  Maybe that's the legal issue to decide.

21           MR. BECK:  I think that's probably where he

22   was going to pass the baton to me, Your Honor.

23           THE COURT:  Anything else, Mr. Castellano?

24           MR. CASTELLANO:  No, Your Honor.  I'll just

25   emphasize that these are multiple statements over

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1   multiple days.  So if he repeated those things over

 2   multiple days, I think that tells us something as

 3   well.

 4          THE COURT:  If it's a subjective standard.

 5   If it's only an objective one, then I don't know.

 6          MR. CASTELLANO:  I think we're in better

 7   shape if it's an objective standard, which I think it

 8   will be.  And if it's subjective -- the only time his

 9   interest changed is when he came into court and then

10   told the Court that he lied.  But he was in a

11   different position when he was testifying than he was

12   when he made the statements.

13          THE COURT:  All right.  Thank you, Mr.

14   Castellano.

15          Mr. Beck.

16          MR. BECK:  I think what Mr. Castellano just

17   said is correct.  If the Court looks to the Supreme

18   Court's decision in Williamson -- United States

19   against Williamson -- well, Williamson against the

20   United States, 512 U.S. 594, a 1994 Supreme Court

21   decision, a good explanation is provided in United

22   States against McVeigh, a district court opinion from

23   1996, which is found at 940 F.Supp.; starts on page

24   1541.  It's an objective inquiry into what a

25   reasonable person in the declarant's position would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have been, with the qualification provided there.

 2              And that's the language in the rule that

 3    says "because, when made, it was so contrary to the

 4    declarant's proprietary or pecuniary interests, or

 5    had so great a tendency to invalidate declarants'

 6    claim against someone else, or to expose the

 7    declarant to civil or criminal liability."  So the

 8    inquiry here is whether it's against the declarant's

 9    interests at the time the declarant made the

10    statement in the legal posture of the case.

11              And so, if you're looking at what would be

12    like a civil PI claim, that would be -- it would

13    invalidate the declarant's claim against someone.

14    Here, when we're talking about a defendant on trial

15    and giving a statement in prison, it would be against

16    the declarant's interests in that trial, on trial for

17    prison.

18              And if you look at the case law, it really

19    comes out of testimonial statements implicating

20    co-defendants.  And you look very closely at the

21    statements to decide whether these testimonial

22    statements given usually post-Miranda in a briefing

23    room, are not against their interests because they

24    implicate other persons.

25              So here, in the context of an in-prison
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    conversation between two prisoners, the context of

2    this conversation in which Mr. Perez is implicating

3    himself, both as a member of the SNM, and as a

4    willing participant in the Molina murder, and

5    explaining how others willingly participated in the

6    Molina murder, in which he was a co-conspirator,

7    those statements come in as against his interests

8    because they implicate him with criminal liability in

9    a criminal proceeding.

10            THE COURT:  Well, like I said to Mr.

11   Castellano, I'm not so concerned about whether the

12   statements he's making are contrary to his penal

13   interests.  So I'm not needing that.  What I am

14   concerned about is whether Mr. Perez -- I mean, just

15   listen to it.  I mean, I can understand why a person

16   in prison would spread lies that are not in his penal

17   interests, why he would spread lies to keep from

18   being -- suffering the fate of Mr. Molina.

19            MR. BECK:  Sure.

20            THE COURT:  So if that's the case, if

21   you're looking at evidence that way --

22            MR. BECK:  What I'm trying to say is that's

23   not the way we're looking at evidence under 803.  If

24   it was, I think it would still be okay because of

25   testimony that's been given about what happens when

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    you tell false things about what you did in the SNM.

2              But, regardless, it's not.  That's not the

3    inquiry.  The inquiry is whether a reasonable person

4    in prison, involved in the Molina homicide, would

5    make these statements inculpating him in that Molina

6    homicide.  And so that's the inquiry.

7              What his subjective intent was, or what

8    someone in his position, where he may be in trouble

9    from other people in the same -- that's not the

10   inquiry.  So the inquiry here is whether a defendant

11   in prison, involved in a murder conspiracy, making

12   statements to other people in the prison would make

13   these inculpatory statements.

14             THE COURT:  All right.  Well, give it some

15   thought.  I'm not quite convinced tonight that there

16   is a path by which this evidence should come in

17   against the other four.  It's a new problem.  It's

18   something that arose as we tried to figure out the

19   levels of hearsay under 805.  I can't just analyze

20   one level.  I have to look at all levels.  So give it

21   some thought.  And if you've got something you want

22   to put in writing to help me with it, you can.

23             I think we've dealt with the statements

24   within Mr. Perez' statements.  But I think we need to

25   pull back and look at Perez' statements themselves

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                           Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                            FAX (505) 843-9492
                                                  1-800-669-9492
                                         e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

```
 1   being used against others.
 2          MR. BECK:  I think those two cases -- and I
 3   think reading the language closely in 804(3), and
 4   looking at the qualifiers that start with that
 5   "because" language, I think will help shed light on
 6   the inquiry, and why these statements are admissible.
 7          THE COURT:  Okay.  I'm leaving here with a
 8   question mark.  So y'all are going to have to help me
 9   out.  And it's not so much an evidentiary problem,
10   because it's going to come into the case.  But I do
11   think that, right at the moment, I'm wondering why
12   I'm not turning to the jury and say, Ignore this
13   evidence against Mr. Baca in the other four.
14          All right.  Let me -- before I hear from
15   you, Ms. Fox-Young, let me make some prefatory
16   comments.  I think, before you came into the case --
17   when did you come in the case?
18          MS. FOX-YOUNG:  I think in the late -- the
19   early winter, about a year ago.
20          THE COURT:  I recall -- and someone will
21   have to refresh my memory -- maybe what I'm about to
22   say is of no use to me or anybody else.  But I recall
23   up in Albuquerque, in the Rio Grande courtroom, that
24   we had an extensive conversation -- I think it was
25   with Mr. Castle.  I think it was Mr. Castle that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    really took on the Smalls problem.  And he had to
2    admit that he didn't like it; none of the defendants
3    liked it, but it said what it said.
4            And so we did agree, just as we've sort of
5    done here, that there may be some residual Bruton
6    problems.  At the time that I made the severance
7    decision -- that was where it was coming up, because
8    the defendants were making the argument that the
9    severance issues, that I should sever the case more
10   severely or more -- into more parts than I did
11   because of the Bruton problem.  But at the time, the
12   defendants were only able to identify a certain
13   handful of statements.
14           So if you go back and read my large
15   severance opinion, what I attempted to do -- and I
16   hope I did, is that every statement that the
17   defendant -- I remember pushing myself every
18   statement that the defendant said was a Bruton
19   problem, I tried to do a Bruton analysis.  And my
20   memory is that for most of the statements I said it's
21   not a problem, but I did identify like one, I think,
22   that still survived as a Bruton problem, and Smalls
23   didn't say that.  So I guess, in my mind, even though
24   it was not really a Bruton motion, it was a severance
25   motion, I pushed myself hard.  And the parties I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  think did with what discovery they had at the time,

2  did feel like probably it was right; that -- I

3  remember Mr. Castle -- maybe it was Mr. Adams, I

4  don't know -- it was one of the counsel from out of

5  state that spent a lot of time -- we talked about it

6  and came up with the parameters here.

7       So I say that before I hear what you have

8  to say.  But I'm still thinking that the Bruton

9  problems may be not the issue here, but just the

10  hearsay problems.

11      MS. FOX-YOUNG:  Your Honor, I've read that

12  opinion, and I'm not going to take it up right now

13  and make a record on Bruton.

14      But I think Ms. Jacks wanted to respond

15  directly to the discussion that the Court has just

16  had with the Government with respect to Mr. Perez'

17  statements with Mr. Cordova.

18      I have some other issues I'd like to raise

19  both on the James statements, and then there is

20  another pleading that the Court took up.  But not

21  today.  I don't think we're going to --

22      THE COURT:  I guess I'd like to hear what

23  you wanted to say, just so I can be thinking about

24  it.  Go ahead and say what you want to say on the

25  Bruton issue, or what -- I think you said the Smalls

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    issue; maybe you said Bruton issue, but you didn't
 2    think Smalls solved it.  Go ahead and tell me what's
 3    on your mind so I can be thinking about it.
 4              MS. FOX-YOUNG:  Well, your Honor, I've gone
 5    back and looked at your opinion.  And I think, when
 6    we take up Document 1514, which was our motion in
 7    limine on some specific statements of cooperating
 8    witnesses that the Court raised it.  And I said I
 9    think we want to take this up at the end of the James
10    hearing.  I would like to distinguish Smalls.  But I
11    understand we have an issue with statements not being
12    found to be testimonial.  And I don't need to make a
13    record on that now.  I think the Court has labored on
14    this issue, and given us a lot of guidance.  I know
15    what the Tenth Circuit law is.
16              But I don't want to detract from, I think,
17    the argument which may be brief, for the record, that
18    Ms. Jacks wanted to make.
19              THE COURT:  Well, I'm not interested in
20    argument.  I'm trying to think of issues that I need
21    to be thinking over the next few days.  So tell me
22    what the Bruton and Smalls issues are, so I can be
23    thinking of them.  This is for my benefit, not for
24    your benefit now.
25              MS. FOX-YOUNG:  Your Honor, briefed in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Document 1514 are some objections that Mr. Perez has

2    to statements made -- and I can pull them up from the

3    transcript.  But they're identified in that document.

4    There are statements made by -- that we believe

5    Timothy Martinez will testify to, that Defendant

6    Daniel Sanchez made, that Sanchez had obtained shanks

7    from Mr. Perez, and that Sanchez referred to him as

8    "Fat Ass," and said, "What else is 'Fat Ass' going to

9    do?"

10          There are also statements from Defendant

11   Jerry Montoya, who we expect to testify that Mario

12   Rodriguez provided him a shank to use to kill Molina.

13   And the testimony at the James hearing was that he,

14   in some way, volunteered that the shank came from

15   Mr. Perez --

16          THE COURT:  Why don't you just, instead of

17   giving me a whole bunch of statements, take one

18   statement and tell me what the Bruton problem is, or

19   the Smalls problem you're concerned about.

20          MS. FOX-YOUNG:  Well, I think those

21   statements should not come in as co-conspirator

22   statements, so I'd want to first address that.  And

23   the reason is I don't think that -- where the --

24   first of all, I think there is a timing problem that

25   the Government has.  The Government did not prove up,

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                          1-800-669-9492
BEAN & ASSOCIATES, Inc.                          e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

1    in the course of the James hearing, when those

2    statements were made so far as I can tell.  And so,

3    if defendants are making statements about where

4    shanks came from -- and that's well after the fact,

5    we think it is -- that's simply not in furtherance.

6            So, back to the Court's earlier inquiry and

7    request that the defense identify any statements that

8    we take issue with coming in as co-conspirator

9    statements, that would be my first argument.  So,

10   specifically, in Document 1514, we lay out two.  And

11   perhaps the Court could look at those.  The

12   transcript is from November 27.  And I think it's

13   page 164, where the Government says that Timothy

14   Martinez will testify that at some unknown time

15   Co-defendant Sanchez told him that Sanchez had

16   obtained shanks from Mr. Perez.  I see no

17   reference -- I don't think the Government tied up the

18   timing on that.  And I don't think it can be in

19   furtherance, if it's not clearly --

20           THE COURT:  Okay.  We'll come back and do

21   that.  But tell me what -- you stood up over here and

22   you said, "I don't think that solves the Bruton

23   problem."  I wanted to hear what you wanted to say at

24   that point.

25           MS. FOX-YOUNG:  I have nothing else to say

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    with respect to any Bruton problem on Mr. Perez'
2    statements.  I've looked back at the Court's ruling.
3    I understand how the Court thinks we get around that
4    with Smalls.  And I think the Court's analysis on the
5    hearsay question is on point.  So I don't have
6    anything else to say on that.  But with respect to
7    these statements, I think we do get into a Smalls
8    issue, if the Court finds that they are
9    co-conspirator statements, because we have a question
10   as to whether they are against interests.  And it's
11   the same analysis the Court's going through --
12           THE COURT:  Well, it's not going to help
13   you out any, because if it's Mr. Perez' statements,
14   the example we've used, then, it can be used against
15   him just as a party opponent.
16           MS. FOX-YOUNG:  Exactly.  I'm talking about
17   Mr. Sanchez' statements.  We have a series of other
18   statements where I think the Court needs to do a
19   Smalls analysis.  But I don't want to interrupt where
20   the Court is with respect to Mr. Perez' statements.
21   I understand that it's not our fight as to whether
22   they come in against the other defendants.
23           And I think Ms. Jacks had something else to
24   say about that.
25           THE COURT:  Sixty seconds, Ms. Jacks.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MS. JACKS:  I do want to address this, just
 2    because, when the Court previously considered the
 3    arguments -- and I think they were really eloquently
 4    made by Mr. Chambers this summer about the Smalls
 5    issue.  There was not any sort of evidence about what
 6    type of statements, for example, Mr. Cordova -- what
 7    the Government was going to offer through Billy
 8    Cordova.
 9              I just took another look at Smalls, and I
10    just want to make the distinction between the facts
11    of that case and this case.
12              THE COURT:  I know.  I've looked at them.
13    Let's do this:  If y'all have something you want to
14    say, I told the Government they could comment on
15    this.  The defendants are welcome to do it, too.
16    Let's shut down for the evening.  I will see y'all on
17    January 8.  And I appreciate everybody's hard work in
18    the month of December, this week.
19              MS. SIRIGNANO:  Judge --
20              THE COURT:  And everybody be safe and have
21    a good holiday.  All right.  Y'all have a good break.
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3     UNITED STATES OF AMERICA

 4     DISTRICT OF NEW MEXICO

 5

 6

 7          I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8     Official Court Reporter for the State of New Mexico,

 9     do hereby certify that the foregoing pages constitute

10     a true transcript of proceedings had before the said

11     Court, held in the District of New Mexico, in the

12     matter therein stated.

13          In testimony whereof, I have hereunto set my

14     hand on December 28, 2017.

15

16

17

18          _____
            Jennifer Bean, FAPR, RMR-RDR-CCR
19          Certified Realtime Reporter
            United States Court Reporter
20          NM CCR #94
            333 Lomas, Northwest
21          Albuquerque, New Mexico 87102
            Phone:  (505) 348-2283
22          Fax:    (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com