IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL NO. 15-4268 JB |
| ) | |
| vs. ) | |
| ) | |
| DANIEL SANCHEZ, a.k.a. "Dan Dan," ) | |
| ANTHONY RAY BACA, a.k.a. "Pup," ) | |
| CHRISTOPHER GARCIA, ) | |
| CARLOS HERRERA, a.k.a "Lazy," and ) | |
| RUDY PEREZ, a.k.a. Ru Dog," | |
| Defendants. | |

## UNITED STATES' PROPOSED VOIR DIRE

The United States of America respectfully requests, pursuant to Rule 24(a) of the Federal Rules of Criminal Procedure, that this Court include the following questions in its examination of prospective jurors during the first trial ("Trial 1") in this case. The United States asks to be allowed to pursue more detailed questioning if further inquiry is appropriate and, if desirable, to conclude with an inquiry as to whether the particular fact or circumstance would influence a juror in favor or against either the United States or the defendant.   Additionally, the United States asks that the Court invite jurors to approach the bench to respond outside the hearing of the rest of the panel if the prospective juror so desires.

    **A.**    **The Charges.**

    1.    This is a criminal case. Defendants Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, and Rudy Perez have been charged in the Indictment with violent crimes in aid of racketeering for conspiring to murder (J.M.) Javier Molina. These defendants have also been

charged in the Indictment with violent crimes in aid of racketeering in the murder of (J.M) Javier Molina.

2. Defendant Anthony Ray Baca has been charged in the Indictment with violent crimes in aid of racketeering in conspiring to commit assault resulting in serious bodily injury to (J.R.) Julian Romero.

3. Defendant Anthony Ray Baca has been charged in the Indictment with violent crimes in aid of racketeering in conspiring to murder (D.S.) Dwayne Santistevan.

4. Defendants Anthony Ray Baca and Christopher Garcia have been charged in the Indictment with violent crimes in aid of racketeering in conspiring to murder (G.M.) Gregg Marcantel.

5. Defendant Christopher Garcia has been charged in the Indictment with felon in possession. Defendant Christopher Garcia has also been charged in the Indictment with using and carrying a firearm during and in relation to a crime of violence.

6. The Indictment is not evidence itself. It simply contains the charges that the United States is required to prove to the satisfaction of the trial jury beyond a reasonable doubt. I would like to summarize the charges in this case in order to determine whether there is anything about the nature of this case that may make it difficult or inappropriate for any of you to serve on the jury.

7. In Count 6, the Indictment charges that in March 2014, in Doña Ana County, in the District of New Mexico and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and

maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder J.M., in violation of NMSA 1978, Sections 30-2-1 and 30-28-2, in violation of 18 U.S.C. § 1959(a)(5).

8. In Count 7, the Indictment charges that on or about on or about March 7, 2014, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** did unlawfully, knowingly and intentionally murder J.M., in violation of NMSA 1978, Sections 30-2-1 and 30-1-13, in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

9. In Count 8, the Indictment charges that starting in or about 2003, and continuing until on or about July 13, 2015, in Doña Ana County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** GERALD ARCHULETA, a.k.a. "Styx," a.k.a. "Grandma," and CONRAD VILLEGAS, a.k.a. "Chitmon," did unlawfully, knowingly, and intentionally conspire to commit assault resulting in serious bodily injury to J.R., in violation of NMSA 1978, Sections 30-3-5 and 30-28-2, in violation of 18 U.S.C. § 1959(a)(6).

10. In Count 9, the Indictment charges that starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Second Superseding Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," and ROBERT MARTINEZ, a.k.a. "Baby Rob," and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder D.S., in violation of NMSA 1978, Sections 30-2-1 and 30-28-2, in violation of 18 U.S.C. § 1959(a)(5).

11. In Count 10, the Indictment charges that starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Second Superseding Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," ROBERT MARTINEZ, a.k.a. "Baby Rob," and **CHRISTOPHER GARCIA**, and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder G.M., in violation of NMSA 1978, Sections 30-2-1 and 30-28-2, in violation of 18 U.S.C. § 1959(a)(5).

12. In Count 11, the Indictment charges that on or about November 29, 2015, in Bernalillo County, in the District of New Mexico, the defendant, **CHRISTOPHER GARCIA**, having been convicted of at least one of the following felony crimes punishable by imprisonment for a term exceeding one year:

      (1) aggravated battery (great bodily harm) (firearm enhancement),

      (2) felon in possession of a firearm, and

      (3) trafficking a controlled substance,

knowingly possessed, in and affecting commerce, a firearm, in violation of 18 U.S.C. § 922(g).

13. In Count 12, the Indictment charges that on or about November 29, 2015, in Bernalillo County, in the District of New Mexico, the defendant, **CHRISTOPHER GARCIA**, during and in relation to a crime of violence for which the defendant may be

prosecuted in a court of the United States, specifically, conspiracy to murder as charged in Count 10 of this second superseding indictment, knowingly used or carried a firearm, in violation of 18 U.S.C. § 924(c).

14. Does any juror have personal knowledge of the events that occurred in Doña Ana, Santa Fe, and Bernalillo Counties in New Mexico? Has any juror read or heard anything about the charges in the Indictment?

### B. Nature Of The Charges.

15. During the trial, you will hear evidence concerning alleged conspiracies to murder Javier Molina and to assault Julian Romero, both members of the Syndicato Nuveo Mexico (SNM) prison gang. Does the fact that the victims, Javier Molina and Julian Romero, were SNM members make it difficult for any juror to render a fair verdict? Does the fact that the victims were incarcerated in a state prison when the attacks occurred make it difficult for any juror to render a fair verdict? Does any juror feel that he or she could not sit in judgment of your fellow man?

16. The defendants in this case are members of the Syndicato Nuevo Mexico prison gang, a group known for violence within state prison walls and on the streets. How many of you have heard of the Syndicato Nuevo Mexico or "SNM?" Are you familiar with their views? Do you know anyone who is an SNM member or prospect? Do any of you believe that knowing the defendants' belong to a prison gang would affect your ability to be an impartial judge?

17. Syndicato Nuevo Mexico is a powerful and violent prison gang that operates inside and outside of state and federal prisons throughout the United States. Do any of you belong to an organization that seeks to promote the rights of prisoners?

18. Is there anything about the nature of the charges that would cause you to be unable to render a fair verdict in this case?

### C. Knowledge Of The Trial Participants.

19. The defendants in this case are Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, Rudy Perez, and Christopher Garcia. Does any juror know, or has he or she had any dealings, directly or indirectly, with the defendants, or with any relative, friend or associate of the defendants?

20. The alleged victims in this case are Javier Molina, Julian Romero, Dwayne Santistevan, and Gregg Marcantel. Are there any of you who know or had dealings with these people?

21. Does any juror have any relatives, friends, associates, or employers who know or who have had any dealings with the defendants?

22. Defendant Daniel Sanchez is represented by Amy Jacks and Richard Jewkes. Do any of you know Ms. Jacks or Mr. Jewkes? Has any juror had dealings, either directly or indirectly, with Ms. Jacks or Mr. Jewkes?

23. Defendant Anthony Ray Baca is represented by Marc M. Lowry and Theresa M. Duncan. Do any of you know Mr. Lowry or Ms. Duncan? Has any juror had dealings, either directly or indirectly, with Mr. Mr. Lowry or Ms. Duncan?

24. Defendant Christopher Garcia is represented by Amy Sirignano and Christopher Adams. Do any of you know Ms. Sirignano or Mr. Adams? Has any juror had dealings, either directly or indirectly, with Ms. Sirignano or Mr. Adams?

25.     Defendant Carlos Herrera is represented by William R. Maynard and Carey Corlew Bhalla.  Do any of you know Mr. Maynard or Ms. Bhalla?  Has any juror had dealings, either directly or indirectly, with Mr. Maynard or Ms. Bhalla?

26.     Defendant Rudy Perez is represented by Justine Fox-Young and Ryan J. Villa.  Do any of you know Ms. Fox-Young or Mr. Villa? Has any juror had dealings, either directly or indirectly, with Ms. Fox-Young or Mr. Villa?

27.     The United States is represented here, as in all cases where it is a party before this Court, by the Acting United States Attorney for the District of New Mexico, who is James D. Tierney. The conduct of the trial will be in the immediate charge of Assistant United States Attorneys Maria Y. Armijo, Randy M. Castellano and Matthew M. Beck. Do any of you know Mr. Tierney or his assistants, Ms. Armijo, Mr. Castellano or Mr. Beck? Have any of you had dealings either directly or indirectly with these individuals?

28.     During the trial you may hear reference to the following people, and some may be called as witnesses: [read witness list] Do any of you know any of these witnesses? Has any juror had dealings, either directly or indirectly, with these witnesses?

**D.     Ability To Render A Fair Verdict.**

29.     <u>Expert Witnesses</u>. You may hear testimony in this case by expert witnesses. Let me advise you that the use of expert testimony is proper in the context of this case. Have any of you had any experiences with experts or do you have any general feelings about the use of experts that would make it difficult for you to render a wholly fair and impartial verdict?

30.     <u>Law Enforcement Personnel</u>. The witnesses in this case will include law enforcement personnel. Would you be <u>more</u> likely to believe a witness merely because he or she

is a law enforcement officer? Would you be <u>less</u> likely to believe law enforcement witnesses?

31. <u>Confidential Sources/Cooperating Defendants.</u> In this case, some of the witnesses may be confidential sources or cooperating witnesses who agreed to assist law enforcement agents. Does any juror have strong feelings about this law enforcement technique that would prevent you from fairly and impartially judging this evidence?

32. <u>Plea Bargaining.</u> Plea bargaining, as it is called, has been approved as lawful and proper, and is expressly provided for in the rules of court. Is there anyone who nevertheless personally disapproves of plea bargaining and would hold a plea bargain against the parties who made a bargain? What if the plea agreement included an agreement to cooperate with law enforcement, or testify in trial in exchange for the possibility of a reduced sentence? Is there anyone here who would automatically believe or disbelieve a person's testimony just because he has pled guilty to an offense or because he is testifying pursuant to an agreement?

### E. **Relationship With Government.**

33. Do any of you know, or have any association -- professional, business, or social, direct or indirect -- with any member of the staff of the United States Attorney's Office for the District of New Mexico, the Federal Bureau of Investigation, the New Mexico Department of Corrections, the New Mexico State Police, or any other law enforcement agency? Is any member of your family employed by any law enforcement agency, whether federal, state or local?

34. Does any juror have any strong feelings for or against the United States Attorney's Office, or any particular law enforcement agency?

35. Have you, or has any member of your family, either as an individual or in the course of business, ever been a party to any legal action or dispute with the United States or

any of the officers, departments, agencies, or employees of the United States, or had any interest in any such legal action or dispute and its outcome?

  F. **Prior Jury Service.**

   36. Have you ever, at any time, served as a member of a grand jury, whether in federal, state, county or city court? If so, when and where did you serve?

   37. Have you ever served as a juror in any court? If so, when and in what court did you serve and was it a civil or a criminal case?

  G. **Experience As A Witness, Defendant, Or Crime Victim.**

   38. Has any juror or any relative or close friend of any juror, ever been involved or appeared as a witness in any investigation by a federal or state grand jury or been questioned in any matter by a federal, state, or local law enforcement agency?

   39. Have you ever been a witness or complainant in any prosecution, state or federal?

   40. Have you, or has any member of your family, any associate or close friend, ever been charged with a crime?

   41. Has any juror or any relative, associate, or close friend ever been the subject of any investigation or accusation by any grand jury, federal or state?

  H. **Burden of Proof**

   42. In every single criminal trial, the United States' burden of proof is beyond a reasonable doubt. A reasonable doubt is a doubt based on reason and common sense. The United States is not required to prove its case beyond a shadow of a doubt, or beyond all possible

doubt. It must prove it beyond a reasonable doubt. Does anybody believe that the United States should be held to a higher or lower burden of proof?

43. Do you promise to follow the Court's instruction that the United States must prove its case beyond a reasonable doubt, nothing more, nothing less?

44. How many of you watch CSI or other shows related to forensic science?

45. Does any juror think this type of television program is reality?

46. Notwithstanding what you see on CSI or other shows related to forensic science, do you all agree that the prosecution can prove a criminal case without presenting any physical evidence?

47. The United States' burden of proof in this case is beyond a reasonable doubt. Will anybody hold the United States to proof "beyond a CSI doubt?"

48. Do you believe that shows like CSI realistically portray scientific tests they show?

49. Do you understand that the law requires the United States to prove the defendant's guilt beyond a reasonable doubt, but does not require the United States to present any specific type of evidence, including scientific evidence?

50. Do you understand that in real life there is not always scientific evidence like there is on CSI?

51. If traditional evidence of guilt in this case is strong enough, would you be able to vote guilty even if no scientific evidence was available?

I. **Other Questions.**

52. Discussion of aiding and abetting.

53. Discussion of conspiracy.

54. Does any juror have any problem with his or her hearing, vision, or physical health, which would prevent him or her from giving full attention to all the evidence at this trial?

55. Is any juror taking any medication, which would prevent him or her from giving full attention to all of the evidence at this trial?

56. Does any juror have any difficulty in reading or understanding English to any degree?

57. Does any juror have any religious, philosophical or other beliefs which would make him or her unable to act as the judge of the facts in this case and to render a guilty verdict for reasons unrelated to the law and evidence? Does any juror feel that he or she could not sit in judgment of your fellow man?

58. In these questions, I have tried to direct your attention to possible reasons why you might not be able to sit as a fair and impartial juror. Apart from any prior question, does any juror have the slightest doubt in his or her mind, for any reason whatsoever, that he or she will be able to serve conscientiously, fairly and impartially in this case and to render a true and just verdict without fear, favor, sympathy or prejudice, and according to the law as it will be explained?

J. **Function Of The Court And Jury**

K. The function of the jury is to decide questions of fact. You are the sole judge of the facts and nothing that the Court or lawyers say or do may encroach in any way on your role as the exclusive fact finder. When it comes to the law, however, you are to take your

instructions from the Court and you are bound by those instructions. You may not substitute your notions of what the law is or what you think it should be. At the conclusion of this case, your job will be to determine whether or not the defendants are guilty as charged in the Indictment. Does any juror have any reason that might prevent him or her from accepting the instructions of law that I will give you in this case? Would anyone be unable to reach a firm yes/no, guilty/not guilty verdict based solely on the evidence admitted at trial and on the law?

L. Will each of you accept the proposition of law that the question of punishment is for the Court alone to decide and that the possible punishment must not enter into your deliberations as to whether the defendant on trial here is guilty? Would the possibility that a defendant might spend time in prison make you even a little less likely or a little more likely to influence your deliberations?

M. Will each of you accept the proposition of law that neither sympathy nor prejudice should enter into your deliberations as to the guilt or innocence of the defendant and that only the evidence produced here in Court may be used by you to determine the guilt or innocence of the defendant?

N. Is there any juror who feels that even if the evidence established a defendant's guilt beyond a reasonable doubt, he or she might not be able to render a guilty verdict for reasons unrelated to the law and evidence?

**K.** **Requested Instruction Following Impaneling**

O. From this point until the time when you retire to deliberate your verdict, it is your duty not to discuss this case, and not to remain in the presence of other persons who may be discussing this case. The rule about not discussing the case with others includes

discussions even with members of your family or friends. If at any time during the course of this trial, any person attempts to talk to you or to communicate with you about this case, either in or out of the courthouse, you should immediately report such an attempt to me. In this regard, let me explain to you that the attorneys and the defendant in a case are not supposed to talk to jurors, not even to offer a friendly greeting. So if you happen to see any of them outside this courtroom they will, and should, ignore you. Please do not take offense.   They will only be acting properly by doing so.

    Respectfully Submitted,

    JAMES D. TIERNEY
    Acting United States Attorney

    ***Electronically filed on 1/12/2018***
    MARIA Y. ARMIJO
    RANDY M. CASTELLANO
    MATTHEW M. BECK
    Assistant United States Attorneys
    200 N. Church Street
    Las Cruces, New Mexico 88001
    (575) 522-2304 – Tel.

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record on this date.

/s/
MARIA Y. ARMIJO
Assistant United States Attorney