IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 15-4268 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| **ANGEL DELEON, et al**, | ) | |
| | ) | |
| Defendants. | ) | |

## PROPOSED JURY INSTRUCTIONS

The United States respectfully requests the Court to include the following instructions in its charge to the jury during the first trial ("Trial 1") in this case, and requests permission to submit such additional instructions as may become appropriate during trial. Unless otherwise noted, references are to the 10th Circuit Pattern Jury Instructions (2011 Edition, Updated January 2017).

Respectfully submitted,

JAMES D. TIERNEY
Acting United States Attorney

*Electronically filed 1/12/18*
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
200 N. Church Street
Las Cruces, New Mexico 88001
(575) 522-2304 – Tel.

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and sent notification to opposing counsel of record on this date.

_____
        */s/*
RANDY M. CASTELLANO
Assistant United States Attorney

**UNITED STATES' PROPOSED JURY INSTRUCTION NO. ___1___**

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

Tenth Circuit Pattern Jury Instructions Criminal 1.03 (2011) (**Introduction to Final Instructions**)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO. __2___**

You, as jurors, are the judges of the facts. But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

Tenth Circuit Pattern Jury Instructions Criminal 1.04 (2011) (**Duty to Follow Instructions**)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   3**

Defendants Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, and Rudy Perez are on trial before you upon an Indictment brought by the Grand Jury.  Before reading the indictment to you, I remind you that the Indictment or formal charge against a defendant is not evidence of guilt.  Indeed, a defendant is presumed by the law to be innocent.

In this case, the Indictment charges as follows:

**INTRODUCTORY ALLEGATIONS**

**THE RACKETEERING ENTERPRISE, SYNDICATO DE NUEVO MEXICO GANG**

1.      At  various times relevant to this Second Superseding Indictment, the defendants, **ANGEL DELEON,    JOE LAWRENCE GALLEGOS, EDWARD TROUP, a.k.a. "Huero Troup,"** LEONARD LUJAN, **BILLY GARCIA, a.k.a. "Wild Bill,"** EUGENE MARTINEZ, a.k.a. "Little Guero," **ALLEN PATTERSON, CHRISTOPHER CHAVEZ, a.k.a. "Critter,"** JAVIER ALONSO, a.k.a. "Wineo," **ARTURO ARNULFO GARCIA, a.k.a. "Shotgun,"** BENJAMIN CLARK, a.k.a. "Cyclone," RUBEN HERNANDEZ, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a.  "Pup,"** ROBERT MARTINEZ, a.k.a. "Baby Rob," ROY PAUL MARTINEZ, a.k.a. "Shadow," MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan,"** GERALD ARCHULETA, a.k.a.  "Styx," a.k.a. "Grandma," CONRAD VILLEGAS, a.k.a. "Chitmon," **CHRISTOPHER GARCIA, CARLOS HERRERA, a.k.a. "Lazy," RUDY PEREZ, a.k.a. "Ru Dog," ANDREW GALLEGOS, a.k.a. "Smiley,"** SANTOS GONZALEZ, PAUL RIVERA**, SHAUNA GUTIERREZ** and  **BRANDY RODRIGUEZ**, and others were members/prospects/associates of the Syndicato de Nuevo Mexico Gang (SNM), a criminal

4

organization whose members/prospects/associates engaged in acts of violence and other criminal activities, including, murder, kidnapping, attempted murder, conspiracy to manufacture/distribute narcotics, and firearms trafficking.  At all relevant times, SNM operated in the District of New Mexico and elsewhere.

2.      SNM, including its leadership, membership, prospects, and associates, constituted an enterprise as defined in Title 18, United States Code, Sections 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members/prospects/associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## GENERAL BACKGROUND

3.      The Syndicato de Nuevo Mexico ("SNM"), Spanish for Syndicate of New Mexico, is a powerful and violent prison gang, which controlled drug distribution and other illegal activities within the New Mexico penal system, and was also involved in street level narcotics trafficking. It was formed in the early 1980s at the Penitentiary of New Mexico after a prison riot at the penitentiary in February, 1980. During the prison riot, twelve correctional officers were taken hostage and several of them were seriously assaulted and raped by inmates. Thirty-three inmates were killed during the riot, and more than two hundred were injured.

4.      Following the prison riot, the SNM Gang expanded throughout the New Mexico penal system and has boasted of as many as 500 members since the early 1980s. The SNM Gang was comprised of approximately 250 members, who are known as "hermanos," "brothers," "carnales," "dons," "jefes," "big hommies," or "Zia manos" and who controlled the gang.  The

SNM operated under a "panel" or "mesa" (Spanish for table) of leaders who issued orders to subordinate gang members.

5.      Despite being imprisoned and being closely scrutinized by prison officials, SNM Gang leaders managed to convey orders to SNM Gang members and associates throughout the prison system and outside the prison system through a variety of means, including secret notes, called "kites," or "welas," coded letters, and messages conveyed by complicit visitors.  When SNM Gang members or associates completed their sentences and rejoined their communities, they were expected to remain loyal to the SNM Gang and work to further the goals of the SNM Gang outside the prison environment.  Members who failed to show continued loyalty to the gang were disciplined in various ways, to include murder and assaults. One of the significant goals of the SNM Gang was to control and profit from narcotics trafficking.

6.      In addition to exerting its control in the New Mexico penal system, the SNM Gang also operated on the streets of New Mexico by intimidating and influencing smaller New Mexico Hispanic gangs for the purpose of establishing a larger network for the SNM's illegal activities.  If a gang did not accede to the SNM Gang's demands, the SNM Gang assaulted or killed the gang's members who were not in custody as well as those members who were incarcerated within the New Mexico penal system.  In addition to intimidation through direct assaults, the SNM Gang was also able to assert control and influence over gang members outside the penal system because gangs did not want their members outside the penal system to be assaulted or killed, and because the gang members knew that, if they are incarcerated, they would need the protection of the SNM Gang while they served their sentences.

7.      The SNM Gang had been and continues to be engaged in a fierce and violent war with rival gangs, to include the Barrio Azteca, Los Carnales, Sureños, and Burqueños gangs.

Within the prison system, this rivalry manifested itself in beatings and stabbings, which often resulted in death.  Outside the prison system, the SNM Gang fought for control of territory in which to conduct narcotics trafficking and other crimes, as well as to recruit and influence non-gang members. In addition to fighting for control over numerous illegal activities and using violence and terror for the purpose of enriching themselves, the SNM Gang also engaged in violence simply to assert its gang identity, to claim or protect its territory, to challenge or respond to challenges, to retaliate against a rival gang or member, to gain notoriety and show its superiority over others, and to send a message to others that it was strong, powerful and not to be provoked.

8.     The SNM Gang sought to maintain its reputation for being strong and powerful and maintained its membership to continue functioning as an organization in prison and on the streets. If the SNM Gang was perceived as being weak, then rival gangs would challenge and assault its members and take over its territory. This could have caused the gang to lose membership and eventually dissolve. The SNM Gang maintained a large membership and a reputation for being strong, powerful and dominant so that rival gangs would think twice before they challenged it and victims/witnesses would think twice about assisting authorities with any prosecution attempt against it.  This allowed the gang to grow in strength, thrive in its criminal activity, and dominate its territory.  A member of the SNM Gang was expected to seek out and beat, stab, or shoot rival gang members.  Similarly, a member of the SNM Gang was expected to confront and attack any suspected law enforcement informants, cooperating witnesses, homosexuals, or sex offenders.

9.     SNM Gang members identifed themselves with the Zia symbol and the letters "SNM" or "S," which represented the "Syndicato de Nuevo Mexico" or "Syndicato" which is

Spanish for Syndicate. SNM Gang members also utilized the number "19" which represents the 19th letter of the alphabet, "S," and "505," which corresponds with the area code for the greater Albuquerque area.  The SNM Gang claimed the entire state of New Mexico as its territory, which was broken into four geographical regions: North, South, East, and West. As with the numbers "19," and "505," the letters "S" or "SNM," the Zia symbol, and the Spanish word "Syndicato" were commonly, but not exclusively, displayed by SNM Gang members in tattoos, graffiti, drawings, and on clothing, as a way of displaying affiliation, loyalty, and commitment to the gang.

## ROLES OF THE DEFENDANTS

10.     Defendants **ARTURO ARNULFO GARCIA, a.k.a. "Shotgun,"** GERALD ARCHULETA, a.k.a.  "Styx," a.k.a. "Grandma," BENJAMIN CLARK, a.k.a. "Cyclone," MARIO RODRIGUEZ, a.k.a. "Blue," **ANTHONY RAY BACA, a.k.a.  "Pup,"** ROBERT MARTINEZ, a.k.a. "Baby Rob," ROY PAUL MARTINEZ, a.k.a. "Shadow," and **DANIEL SANCHEZ, a.k.a. "Dan Dan,"** were the leaders of the enterprise who directed or delegated the power to direct other members of the enterprise to carry out unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

11.     Under the direction and leadership of the enterprise, defendants **ANGEL DELEON, JOE LAWRENCE GALLEGOS, EDWARD TROUP, a.k.a. "Huero Troup," LEONARD LUJAN, BILLY GARCIA, a.k.a. "Wild Bill,"** EUGENE MARTINEZ, a.k.a. "Little Guero," **ALLEN PATTERSON, CHRISTOPHER CHAVEZ, a.k.a. "Critter,"** JAVIER ALONSO, a.k.a. "Wineo," RUBEN HERNANDEZ, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," TIMOTHY MARTINEZ, a.k.a. "Red," MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," CONRAD VILLEGAS, a.k.a.

"Chitmon," **CHRISTOPHER GARCIA, CARLOS HERRERA, a.k.a. "Lazy," RUDY PEREZ, a.k.a. "Ru Dog," ANDREW GALLEGOS, a.k.a. "Smiley,"** SANTOS GONZALEZ, PAUL RIVERA, **SHAUNA GUTIERREZ** and **BRANDY RODRIGUEZ**, were members or associates who participated in unlawful and other activities in furtherance of the conduct of the enterprise's affairs.

### PURPOSES OF THE SYNDICATO DE NUEVO MEXICO GANG

12.     The purposes of the SNM Gang enterprise included the following:

a.      Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder;

b.      Promoting and enhancing the enterprise and the activities of its members and associates through criminal acts, including, but not limited to, murder, attempted murder, narcotics trafficking, theft of vehicles, robberies, and other criminal activities;

c.      Keeping victims, potential victims, witnesses, and community members in fear of the enterprise and its members and associates through violence and threats of violence;

d.      Protecting the enterprise's members and associates who committed crimes by hindering, obstructing, and preventing law enforcement officers from identifying the offenders, apprehending the offenders, and successfully prosecuting and punishing the offenders;

e.      Providing information to members and associates of the enterprise, including those who were incarcerated, for the purpose of committing acts

of violence, robbery, distribution of controlled substances, and other

offenses;

f.      Providing financial support and information to SNM Gang members and

associates, including those members and associates who were

incarcerated.

### MEANS AND METHODS OF THE ENTERPRISE

13.     Among the means and methods by which the defendants and their associates

conducted and participated in the conduct of the affairs of the SNM Gang were the following:

a.      Members and associates of the enterprise committed, conspired,

attempted, and threatened to commit acts of violence, including murders

and assaults, to protect and expand the enterprise's criminal operations.

b.      To generate income, members and associates of the enterprise trafficked in

controlled substances and extorted narcotics traffickers.

c.      To perpetuate the enterprise, members and associates of the enterprise

discussed the membership, rules, and enforcement of the rules of the SNM

Gang; the status of SNM Gang members and associates who were arrested

or incarcerated; the discipline of SNM Gang members; SNM Gang

members' encounters with law enforcement; the identities of individuals

suspected of cooperating with law enforcement and the proposed actions

to be taken against  them; and plans and agreements regarding the

commission of future crimes,  including murder, drug distribution,

possession of firearms, and assault, as well as ways to conceal  these

crimes.

d.     It was further part of the means and methods of the enterprise that members and associates of the enterprise concealed from law enforcement the way in which the enterprise conducted its affairs; the locations where enterprise members discussed and conducted the affairs of the enterprise; the locations where enterprise members stored and possessed weapons and narcotics; and the locations where enterprise members maintained the proceeds from narcotics trafficking.

e.     Members of the SNM Gang also used violence to impose discipline within the SNM Gang. It was further part of the means and methods of the enterprise that the defendants and other members and associates of the SNM Gang agreed to distribute narcotics and commit other crimes, and to conceal their criminal activities by obstructing justice, threatening and intimidating witnesses, and other means.

14.     The SNM gang enterprise, through its members and associates, engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1), that is acts and threats involving murder and robbery in violation of New Mexico law, acts indictable under 18 U.S.C. §§ 1503, 1512 and 1513 involving obstruction of justice, tampering with or retaliating against a witness, victim, or informant,  and offenses involving trafficking in narcotics in violation of 21 U.S.C. §§ 841 and 846.

<u>Count 6</u>

<u>Conspiracy to Murder J.M.</u>

Paragraphs one through fourteen of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

11

In March 2014, in Doña Ana County, in the District of New Mexico and elsewhere,  as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a.  "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder J.M., in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

<u>Count 7</u>

<u>Murder of J.M.</u>

Paragraphs one through fourteen of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about March 7, 2014, in Doña Ana County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, JERRY ARMENTA, a.k.a. "Creeper," JERRY MONTOYA, a.k.a. "JR," a.k.a. "Plaz," MARIO

RODRIGUEZ, a.k.a. "Blue," TIMOTHY MARTINEZ, a.k.a. "Red," **ANTHONY RAY BACA, a.k.a. "Pup,"** MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts," **DANIEL SANCHEZ, a.k.a. "Dan Dan," CARLOS HERRERA, a.k.a. "Lazy,"** and **RUDY PEREZ, a.k.a. "Ru Dog,"** did unlawfully, knowingly and intentionally murder J.M., in violation of NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

Count 8

Conspiracy to Commit Assault Resulting in Serious Bodily Injury to J.R.

Paragraphs one through fourteen of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

Starting in or about 2003, and continuing until on or about July 13, 2015, in Doña Ana County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **ANTHONY RAY BACA, a.k.a. "Pup,"** GERALD ARCHULETA, a.k.a. "Styx," a.k.a. "Grandma," and CONRAD VILLEGAS, a.k.a. "Chitmon," did unlawfully, knowingly, and intentionally conspire to commit assault resulting in serious bodily injury to J.R., in violation of NMSA 1978, Sections 30-3-5 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(6).

Count 9

Conspiracy to Murder D.S.

13

Paragraphs one through fourteen of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Second Superseding Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants,

**ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," and ROBERT MARTINEZ, a.k.a. "Baby Rob," and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder  D.S., in violation of  NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

Count 10

Conspiracy to Murder G.M.

Paragraphs one through fourteen of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

Starting on a date uncertain, but no later than 2013, and continuing to on or about the date of this Second Superseding Indictment, in Santa Fe County, in the District of New Mexico, and elsewhere, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the  Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants,

**ANTHONY RAY BACA, a.k.a. "Pup,"** ROY MARTINEZ, a.k.a. "Shadow," ROBERT MARTINEZ, a.k.a. "Baby Rob," and **CHRISTOPHER GARCIA**, and others known and unknown to the grand jury, did unlawfully, knowingly, and intentionally conspire to murder G.M., in violation of NMSA 1978, Sections 30-2-1 and 30-28-2.

All in violation of 18 U.S.C. § 1959(a)(5).

## Count 11

## Felon in Possession of a Firearm

On or about November 29, 2015, in Bernalillo County, in the District of New Mexico, the defendant, **CHRISTOPHER GARCIA**, having been convicted of at least one of the following felony crimes punishable by imprisonment for a term exceeding one year:

(1)      aggravated battery (great bodily harm) (firearm enhancement),

(2)      felon in possession of a firearm, and

(3)      trafficking a controlled substance,

knowingly possessed, in and affecting commerce, a firearm.

In violation of 18 U.S.C. § 922(g).

## Count 12

## Using and Carrying a Firearm During and in Relation to a Crime of Violence

On or about November 29, 2015, in Bernalillo County, in the District of New Mexico, the defendant, **CHRISTOPHER GARCIA**, during and in relation to a crime of violence for which the defendant may be prosecuted in a court of the United States, specifically, conspiracy to murder as charged in Count 10 of this second superseding indictment, knowingly used and carried a firearm.

In violation of 18 U.S.C. § 924(c).

15

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   4**

What I have just read are the charges brought by the Grand Jury in the indictment. Although the indictment refers to twenty-two defendants, Daniel Sanchez, Anthony Ray Baca, Christopher Garcia, Carlos Herrera, and Rudy Perez are the only defendants who are on trial before you in this case. The other Defendants are not on trial at this time. You must base your verdict solely on the evidence received in this trial, and you are not to draw any inferences from the fact that other Defendants named in the indictment are not on trial before you today.

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   5**
—

The government has the burden of proving the defendants guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving a defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find that defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Tenth Circuit Pattern Jury Instructions Criminal 1.05 (2011) (**Presumption of Innocence – Burden of Proof-Reasonable Doubt**)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   6   **

The defendant did not testify and I remind you that you cannot consider his decision not to testify as evidence of guilt. You must understand that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify. That is a constitutional right in this country, it is very carefully guarded, and you must not presume or infer guilt from the fact that a defendant does not take the witness stand and testify or call any witnesses.

Tenth Circuit Pattern Jury Instructions Criminal 1.08.1 (2011) (**Non-Testifying Defendant**)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   7   **
—

The word "racketeering" has certain implications in our society. Use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of this defendant has been proven. The term is only a term used by Congress to describe the statute.

Tenth Circuit Pattern Jury Instructions Criminal 2.74.1 (2011) (**Prejudice from the Word "Racketeering"**)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   8**

Counts 6, 7, 8, 9, 10 of the Indictment charge the defendant with committing violent crimes in aid of racketeering, in violation of 18 U.S.C. § 1959. This statute reads as follows: "Whoever, as consideration for a promise or agreement to pay anything of pecuniary value from an enterprise engaged in racketeering activity,  or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the law of any State or the United States, or attempts or conspires so to do" is guilty of a crime.

To convict a Defendant of a violent crime in aid of racketeering under this statue, as charged in Counts 6, 7, 8, 9, 10, you must find that the Government has proven each of the following elements beyond a reasonable doubt:

First:        The existence of an "enterprise" as defined in 18 U.S.C. § 1959 (b)(2);

Second:     The charged enterprise engaged in, or its activities affected, interstate or foreign commerce;

Third:       The charged enterprise engaged in "racketeering activity" as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1);

Fourth:      The defendant committed one of the following crimes—or conspired or attempted to commit one of these crimes—which crime violated state or federal law: murder, kidnaping, maiming, assault with a dangerous weapon, assault resulting in serious bodily injury, threatening to commit a crime of violence;

Fifth:          The crime of violence was committed either: (1) as consideration for the

receipt of, or as consideration for a promise or agreement to pay,

anything of pecuniary value from the charged enterprise, or (2) for the

purpose of gaining entrance to or maintaining or increasing position in

the charged enterprise.

I will now instruct you on the law applicable to each of these five elements.

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   9   **

The first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed as alleged in the Indictment.

The government has charged the following in the Indictment as constituting the enterprise: the Syndicato de Nuevo Mexico Gang (SNM) in Counts 6, 7, 8, 9, 10.

An "enterprise" includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce.

Although the enterprise must be separate and apart from the pattern of racketeering activity in which the enterprise allegedly engaged, it is not necessary to find that the enterprise had some function wholly unrelated to the racketeering activity. The enterprise must be proved to have been an ongoing organization, formal or informal, that functioned as a continuing unit.

If you find that this was, in fact, a legal entity such as a partnership, corporation or association, then you may find that an enterprise existed.

An enterprise is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. The personnel of the enterprise, however, may change and need not be associated with the enterprise for the entire period alleged in the indictment. Therefore, the government must prove the existence of an association-in-fact enterprise by evidence of an ongoing organization, formal or informal, and by evidence that the various associates functioned as a continuing unit. The enterprise must have the three following structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. The name of the organization itself is not an element of the offense and does not have to be proved. The

government need not prove that the enterprise had any particular organizational structure.

The group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, you may nonetheless find that the enterprise element is satisfied by finding a group whose associates engage in spurts of activity punctuated by periods of quiescence [inactivity].

Tenth Circuit Pattern Jury Instructions Criminal 2.74.3 (2011) (modified) (**First Element – The Enterprise**)

Fifth Circuit Pattern Jury Instructions Criminal 2.78 (2015)(modified)(**Violent Crimes in Aid of Racketeering**)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   10**

The second element the government must prove beyond a reasonable doubt is that the enterprise was engaged in or had an effect upon interstate (or foreign) commerce.

Interstate commerce includes the movement of goods, services, money and individuals between states (or between states and the District of Columbia or a U.S. Territory or possession or between the United States and a foreign state or nation).

The government must prove that the enterprise engaged in interstate commerce or that its activities affected interstate commerce in any way, no matter how minimal. It is not necessary to prove that the acts of any particular defendant affected interstate commerce as long as the acts of the enterprise had such effect. Finally, the government is not required to prove that any defendant knew he was affecting interstate commerce.

I further instruct you that, pursuant to 21 U.S.C. §§ 801(3), (5), (6), and (7), the possession and/or distribution of a controlled substance has a direct and substantial effect on interstate commerce.

Tenth Circuit Pattern Jury Instructions Criminal 2.74.4 (2011) (**Second Element – Effect on Interstate Commerce**)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   11___**

The third element which the Government must prove beyond a reasonable doubt as to Counts 6, 7, 8, 9, 10 is that the enterprise was engaged in racketeering activity on or around the time of the violent crime charged in that count of the indictment.

"Racketeering activity" means the commission of certain crimes. The indictment alleges that the SNM engaged in multiple acts of racketeering activity consisting of the following:  (1) murder and robbery, in violation of New Mexico law; (2) acts involving obstruction of justice, tampering with or retaliating against witness, victim, or informant, in violation of federal law; and, (3) offenses involving trafficking in narcotics, in violation of federal law.

There must be some nexus between the enterprise and the racketeering activity being conducted by members and/or associates of the enterprise.

I instruct you that "racketeering activity" includes numerous offenses, including those listed above. It is for you to determine whether the enterprise engaged in these activities as charged. You should give the words "engaged in" their ordinary, everyday meaning. For an enterprise to be engaged in racketeering activity it is enough to show that the enterprise committed or was planning to commit some racketeering activity within a period of time short enough under all of the circumstances so that it is appropriate to say that the enterprise was engaged in racketeering activity.

**UNITED STATES' PROPOSED JURY INSTRUCTION NO. ___12___**

In order for the offense of murder to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that:

*First*: someone killed the victim, and

*Second*: the killing was with the deliberate intention to take away the life the victim.

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.  \_\_13\_\_\_**

In order for the offense of possession with intent to distribute a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that:

> *First*: a member, prospect, or associate of the SNM knowingly and intentionally possessed a controlled substance as charged, and

> *Second*: that person possessed the substance with the intent to distribute it.

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

[Name controlled substance] is a controlled substance within the meaning of the law.

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   __14___**
_

In order for the offense of distribution of a controlled substance to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that a member, prospect, or associate of the SNM knowingly or intentionally distributed a controlled substance.

The term "distribute" means to deliver or to transfer possession or control of something from one person to another. The term "distribute" includes the sale of something by one person to another. It is not necessary, however, for the government to prove that any transfer of money or other thing of value occurred at the same time as, or because of, the distribution.

[Name controlled substance] is a controlled substance within the meaning of the law.

**UNITED STATES' PROPOSED JURY INSTRUCTION NO. ___15___**

The fourth element which the Government must prove beyond a reasonable doubt as to Count 6 is that Daniel Sanchez, Anthony Ray Baca, Carlos Herrera, and Rudy Perez conspired to murder Javier Molina.

The fourth element which the Government must prove beyond a reasonable doubt as to Count 9 is that Anthony Ray Baca conspired to murder Dwayne Santistevan.

The fourth element which the Government must prove beyond a reasonable doubt as to Count 10 is that Anthony Ray Baca and Christopher Garcia conspired to murder Gregg Marcantel.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.   To find a defendant guilty of this crime, you must be convinced that the Government has proved ach of the following beyond a reasonable doubt:

1.  The defendant and another person by words or acts agreed together to commit murder;

2.  The defendant and the other person intended to commit murder;

3.  This happened in New Mexico on or about March 2014 as to Count 6,  a date uncertain, but no later than 2013, and continuing to on or about March 9, 2017 as to Counts 9 and 10.

NM UJI 14-2810 NMRA.

The essential elements of willful and deliberate murder are provided below to aid you in deciding if the Government has proven the first element:

1. Someone killed the victim; and

2. The killing was with the deliberate intention to take away the life of the victim.

NM UJI 14-201 NMRA.

In proving a conspiracy to murder, it is not necessary to show a meeting of the alleged

29

conspirators or the making of an express or formal agreement. The formation and existence of a conspiracy to murder may be inferred from all circumstances tending to show the common intent and may be proved in the same way as any other fact may be proved, either by direct testimony of the fact or by circumstantial evidence, or by both direct and circumstantial evidence.

Evidence that a person was in the company of or associated with one or more other persons alleged or proved to have been members of a conspiracy is not, in itself, sufficient to prove that such person was a member of the alleged conspiracy.

**UNITED STATES' PROPOSED JURY INSTRUCTION NO. ___16___**

The fourth element which the Government must prove beyond a reasonable doubt as to Count 7 is that Anthony Ray Baca, Daniel Sanchez, Carlos Herrera, and Rudy Perez murdered Javier Molina.

The essential elements of murder under New Mexico law are provided below to aid you in deciding if the Government has proven the fourth element:

1.   The defendant killed Javier Molina;

2.   The killing was with the deliberate intention to take away the life of Javier Molina;

3.   This happened in New Mexico on or about March 7, 2014.

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

NM UJI 14-201 NMRA.

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   __17___**

The fourth element which the Government must prove beyond a reasonable doubt as to Count 8 is that Anthony Ray Baca conspired to commit assault resulting in serious bodily injury to Julian Romero.

Again, a conspiracy is an agreement between two or more persons to accomplish an unlawful purpose.   The essential elements of assault resulting in serious bodily injury  are provided below to aid you in deciding if the Government has proven the fourth element:

One: A person intentionally struck Julian Romero; and,
Two: As a result of this assault, Julian Romero suffered serious bodily injury.

The term "serious bodily injury" means bodily injury which involves—

(A) a substantial risk of death;

(B) extreme physical pain;

(C) protracted and obvious disfigurement; or

(D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

2 Fed. Jury Prac. & Instr. § 25:09 (6th ed.) (modified) (**The essential elements of the offense charged**)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   __18___**

The fifth and final element of Counts 6, 7, 8, 9, 10 that the Government must prove beyond a reasonable doubt is that the Defendant's general purpose in committing the underlying crimes of violence was to maintain or increase their position in (or to gain entrance to) the enterprise.

The Government is required to prove that the defendant's general purpose was to maintain or increase their position in the enterprise. The Government is not required to prove that it was the defendant's sole or principal motive.

In determining whether the defendant's purpose in committing the underlying crime of violence was to maintain or increase his position in the enterprise, you should give the words "maintain" and "increase" their ordinary meanings. You should consider all of the facts and circumstances in making that determination.

For example, you may consider evidence that the crime, if proved, was committed in order to maintain discipline within the enterprise and served to maintain the defendant's position in the enterprise. If the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise, or if he committed the crime because he thought it would enhance his position or prestige within the enterprise, or if he committed it because he thought it was necessary to maintain the position he already held, this element would be established.

These examples are only meant by way of illustration. They are not exhaustive.

33

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   19**

The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by him through the direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.

If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

Before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not suffcient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: That the offense of  murder was committed by some person;

Second: That the defendant associated with the criminal venture;

Third: That the defendant purposefully participated in the criminal venture; and

Fourth: That the defendant sought by action to make that venture successful.

"To associate with the criminal venture" means that the defendant shared the criminal intent of the principal. This element cannot be established if the defendant had no knowledge of the principal's criminal venture.

"To participate in the criminal venture" means that the defendant engaged in some affimative conduct designed to aid the venture or assist the principal of the crime.


Fifth Circuit Pattern Jury Instructions Criminal 2.04 (2011) (**Aiding and Abetting**)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   20**

Christopher Garcia is charged in Count 11 with a violation of 18 U.S.C. section 922(g)(1). This law makes it a crime for any person who has been previously convicted in any court of a felony to knowingly possess any firearm in or affecting interstate commerce.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*:          The defendant knowingly possessed a firearm;

*Second*:     The defendant was convicted of a felony, that is, a crime punishable by
              imprisonment for a term exceeding one year, before he possessed the
              firearm; and

*Third*:        Before the defendant possessed the firearm, the firearm had moved at
              some time from one state to another or from a foreign country to the
              United States.

Tenth Circuit Pattern Jury Instructions Criminal 2.44 (2011, 2017 Update) (modified)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   __21___**

Christopher Garcia is charged in Count 12 with a violation of 18 U.S.C. section 924(c)(1).

This law makes it a crime to use or carry a firearm during and in relation to any crime of violence for which a person may be prosecuted in a court of the United States.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*:          The defendant committed the crime of conspiracy to murder as charged in Count 10 of the Indictment.  You are instructed that conspiracy to murder is a crime of violence;

*Second*:      The defendant used or carried a firearm;

*Third*:        The defendant did so during and in relation to the conspiracy to murder.

The phrase "during and in relation to" means that the firearm played an integral part in the underlying crime, that it had a role in, facilitated (i.e., made easier), or had the potential of facilitating the underlying crime.

A defendant knowingly "uses" a firearm when it (1) is readily accessible and (2) is actively employed during and in relation to the underlying crime.

A defendant knowingly "carries" a firearm when he (1) possesses the firearm through the exercise of ownership or control and (2) transports or moves the firearm from one place to another.

In determining whether the defendant knowingly used or carried a firearm during and in relation to the underlying crime, you may consider all of the facts received in evidence including the nature of the crime, the usefulness of a firearm to the crime, the extent to which a firearm

37

actually was observed before, during and after the time of the crime, and any other facts that bear on the issue.

A firearm plays an integral part in the underlying crime when it furthers the purpose or effect of the crime and its presence or involvement is not the result of coincidence. The government must prove a direct connection between the defendant's use or carrying of the firearm and the underlying crime but the crime need not be the sole reason the defendant used or carried the firearm.

The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device

Tenth Circuit Pattern Jury Instructions Criminal 2.45 (2011)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   __22___**

You will note that the indictment charges that each offense was committed "on or about" a particular date or range of dates. The government does not have to prove that the crime was committed on the exact date or  dates specified in the Indictment, so long as the government proves beyond a reasonable doubt that the defendant committed the crime on a date reasonably near the date or dates alleged in the Indictment.

Tenth Circuit Pattern Jury Instructions Criminal 1.18 (2011) (**On or About**). *Modified.*

### UNITED STATES' PROPOSED JURY INSTRUCTION NO. ___23___

When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact. Knowledge can be inferred if the defendant was aware of a high probability of the existence of [the fact in question], unless the defendant did not actually believe [the fact in question].

Tenth Circuit Pattern Jury Instructions Criminal 1.37 (2011) (**Knowingly**).

**UNITED STATES' PROPOSED JURY INSTRUCTION NO. ___24___**
**__**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Tenth Circuit Pattern Jury Instructions Criminal 1.06 (2011) (**Evidence- Defined**).

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   25**

–

A stipulation is an agreement between both sides that certain facts are true. A stipulation means simply that the government and the defendant accept the truth of a particular proposition or fact. Since there is no disagreement, there is no need for evidence apart from the stipulation.

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   __26___**

–

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

Tenth Circuit Pattern Jury Instructions Criminal 1.41 (2011) (**Summaries and Charts**).

**UNITED STATES' PROPOSED JURY INSTRUCTION NO. ___27___**

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

Tenth Circuit Pattern Jury Instructions Criminal 1.07 (2011) (**Evidence –Direct and Circumstantial - Inferences**).

**UNITED STATES' PROPOSED JURY INSTRUCTION NO. ___28___**

I remind you that it is your job to decide whether the government has proved the guilt of each defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses [including the defendant] who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

[The testimony of the defendant should be weighed and his credibility evaluated in the same way as that of any other witness.]

[The defendant did not testify and I remind you that you cannot consider his decision not to testify as evidence of guilt. I want you to clearly understand, please, that the Constitution of

the United States grants to a defendant the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant does not take the witness stand and testify or call any witnesses.]

In reaching a conclusion on particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

Tenth Circuit Pattern Jury Instructions Criminal 1.08 (2011) (**Credibility of Witnesses**).

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   29   **

You have heard the testimony of [name of witness]. You have also heard that, before this trial, he made a statement that may be different from his testimony here in court.

This earlier statement was brought to your attention only to help you decide how believable his testimony in this trial was. You cannot use it as proof of anything else. You can only use it as one way of evaluating his testimony here in court.

Tenth Circuit Pattern Jury Instructions Criminal 1.10 (2011) (**Impeachment by Prior Inconsistencies**).

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   30**

You have heard evidence that the defendant has been convicted of a felony, that is, a crime punishable by imprisonment for a term of years. This conviction has been brought to your attention only because you may wish to consider it when you decide, as with any witness, how much of his testimony you will believe in this trial. **The fact that the defendant has been convicted of another crime does not mean that he committed the crime charged in this case, and you must not use his prior conviction as proof of the crime charged in this case**. You may find him guilty of the crime charged here only if the government has proved beyond a reasonable doubt that he committed it.

Tenth Circuit Pattern Jury Instructions Criminal 1.11 (2011) (**Impeachment by Prior Conviction**).

48

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.    31__**

[During the trial you heard the testimony of who expressed opinions concerning .] In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

Tenth Circuit Pattern Jury Instructions Criminal 1.17 (2011) (**Expert Witnesses**).

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   __32___**

An informant is someone who provides evidence against someone else for a personal reason or advantage. The testimony of an informant alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence. You must examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness. You must determine whether the informant's testimony has been affected by self-interest, by an agreement he has with the government, by his own interest in the outcome of the case, or by prejudice against the defendant.

You should not convict a defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony beyond a reasonable doubt.

Tenth Circuit Pattern Jury Instructions Criminal 1.14 (2011) (**Informant**).

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.  ___33___**

The government has entered into a plea agreement with [Robert Martinez, etc…..],
providing for the possibility of a recommendation of a lesser sentence than he would otherwise
likely receive. Plea bargaining is lawful and proper, and the rules of this Court expressly provide
for it.

A person who has entered into a plea agreement with the government is not prohibited
from testifying. On the contrary, such testimony may, by itself, support a guilty verdict. You
should receive this type of testimony with caution and weigh it with great care. You should never
convict a defendant upon the unsupported testimony of such a witness, unless you believe that
testimony beyond a reasonable doubt. The fact that the person has entered into a guilty plea to
the offense charged is not evidence of the guilt of any other person.


Tenth Circuit Pattern Jury Instructions Criminal 1.15 (2011) (**Accomplice-Co-Defendant – Plea
Agreement**), modified.

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   34___**

_

The testimony of a drug abuser must be examined and weighed by the jury with greater

caution than the testimony of a witness who does not abuse drugs.

[Name of witness] may be considered to be an abuser of drugs.

You must determine whether the testimony of that witness has been affected by the use of

drugs or the need for drugs.


Tenth Circuit Pattern Jury Instructions Criminal 1.16 (2011) (**Witness's Use of Addictive Drugs**).

## UNITED STATES' PROPOSED JURY INSTRUCTION NO. ___35___

You have heard the testimony of _____.  These witnesses and some of their family members received money or other financial benefits from the government, including help with relocating.

Conferring benefits upon witnesses is common and permissible.  But you should consider those witnesses' testimony with more caution than the testimony of other witnesses.  Consider whether their testimony may have been influenced by what the government gave them.

Do not convict the defendants based on the unsupported testimony of such a witness, standing alone, unless you believe his or her testimony beyond a reasonable doubt.


Sixth Circuit Pattern Jury Instructions Criminal 7.06A (2017) (Testimony of a Paid Informant).

**UNITED STATES' PROPOSED JURY INSTRUCTION NO. ___36___**

You have heard the testimony of a few witnesses who faced or face potential criminal liability.  You have also heard that the government has promised those witnesses that they will not be prosecuted for certain crimes or that the government may recommend a reduced sentence in exchange for those witnesses' cooperation.

It is permissible for the government to make such a promise.  But you should consider those witnesses' testimony with more caution than the testimony of other witnesses.  Consider whether the testimony of the witnesses who face potential criminal liability may have been influenced by the government's promise.

Do not convict any of the defendants based on the unsupported testimony of such a witness, standing alone, unless you believe his testimony beyond a reasonable doubt.

Sixth Circuit Pattern Jury Instructions Criminal 7.06B (2017) (Testimony of an Addict-Informant Under Grant of Immunity or Reduced Criminal Liability).

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   __37___**

Evidence has been presented about a statement attributed to the defendant alleged to have been made after the commission of the crime (or crimes) charged in this case but not made in court. Such evidence should always be considered by you with caution and weighed with care. You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training, education, occupation, and physical and mental condition of the defendant, and any evidence concerning his treatment while under interrogation if the statement was made in response to questioning by government officials, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances. If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.


Tenth Circuit Pattern Jury Instructions Criminal 1.25 (2011) (**Voluntariness of Statements by Defendant**)

**UNITED STATES' PROPOSED JURY INSTRUCTION NO. ___38___**

___

During this trial, you have heard sound recordings of certain conversations. These conversations were legally recorded; they are a proper form of evidence and may be considered by you as you would any other evidence. You were also given transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence. They were given to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

Tenth Circuit Pattern Jury Instructions Criminal 1.40 (2011) **(Transcript of Recorded Conversation)**

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.   39___**

____

A separate crime is charged against one or more of the defendants in each count of the indictment. You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant.

Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to any other defendants or counts.

Tenth Circuit Pattern Jury Instructions Criminal 1.22 (2011) **(Multiple Defendants-Multiple Counts)**

**UNITED STATES' PROPOSED JURY INSTRUCTION NO.  __40___**

____

If you find the defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

Tenth Circuit Pattern Jury Instructions Criminal 1.20 (2011) **(Caution - Punishment)**

**UNITED STATES' PROPOSED JURY INSTRUCTION NO. __41__**

____

In a moment the bailiff will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. [The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.]

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the indictment. Your deliberations will be secret. You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges—judges of the facts. You must decide whether the government has proved the defendant guilty beyond a reasonable doubt.

A form of verdict has been prepared for your convenience.

**[Explain the Verdict Form]**

59

The foreperson will write the unanimous answer of the jury in the space provided for each count of the indictment, either guilty or not guilty. At the conclusion of your deliberations, the foreperson should date and sign the verdict.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the bailiff. I will either reply in writing or bring you back into the court to respond to your message. Under no circumstances should you reveal to me the numerical division of the jury.

Tenth Circuit Pattern Jury Instructions Criminal 1.23 (2011) **(Duty to Deliberate-Verdict Form)**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,      )
                               )
             Plaintiff,        )   CRIMINAL NO. 15-4269 JB
                               )
        vs.                    )
                               )
**DANIEL SANCHEZ,**            )
                               )
             Defendant.        )

## <u>V E R D I C T</u>

**COUNT 6**

WE, the Jury, find the defendant, **DANIEL SANCHEZ,** _____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

**COUNT 7**

WE, the Jury, find the defendant, **DANIEL SANCHEZ**, _____

(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

Dated this _____ day of _____, 2018.

_____

FOREPERSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) CRIMINAL NO. 15-4269 JB |
| | ) |
| vs. | ) |
| | ) |
| **ANTHONY RAY BACA,** | ) |
| | ) |
| Defendant. | ) |

## <u>V E R D I C T</u>

**COUNT 6**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,**_____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

**COUNT 7**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,**_____

(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

**COUNT 8**

WE, the Jury, find the defendant, **ANTHONY RAY BACA,**_____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to commit assault resulting in serious bodily injury

to Julian Romero, as charged in Count 8 of the Indictment.

**COUNT 9**

WE, the Jury, find the defendant, **ANTHONY RAY BACA**,_____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Dwayne Santistevan, as charged in Count

9 of the Indictment.

**COUNT 10**

WE, the Jury, find the defendant, **ANTHONY RAY BACA**,_____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Gregg Marcantel, as charged in Count 10

of the Indictment.


Dated this _____ day of _____, 2018.


_____

FOREPERSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) CRIMINAL NO. 15-4269 JB |
| | ) |
| vs. | ) |
| | ) |
| **CHRISTOPHER GARCIA,** | ) |
| | ) |
| Defendant. | ) |

## <u>V E R D I C T</u>

**COUNT 10**

WE, the Jury, find the defendant, **CHRISTOPHER GARCIA,** _____
(guilty or not guilty)
of violent crimes in aid of racketeering in conspiring to murder Gregg Marcantel, as charged in Count 10

of the Indictment.

**COUNT 11**

WE, the Jury, find the defendant, **CHRISTOPHER GARCIA**, _____
(guilty or not guilty)
of felon in possession of a firearm, as charged in Count 11 of the Indictment.

**COUNT 12**

WE, the Jury, find the defendant, **CHRISTOPHER GARCIA**, _____
(guilty or not guilty)
of using or carrying a firearm during and in relation to a crime of violence.

Dated this \_\_\_\_\_ day of _____, 2018.

_____
FOREPERSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 15-4269 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **CARLOS HERRERA,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>V E R D I C T</u>

**COUNT 6**

     WE, the Jury, find the defendant, **CARLOS HERRERA,** _____

                                                            (guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

**COUNT 7**

     WE, the Jury, find the defendant, **CARLOS HERRERA**, _____

                                                            (guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

     Dated this _____ day of _____, 2018.

                                               _____

                                               FOREPERSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) CRIMINAL NO. 15-4269 JB |
| | ) |
| vs. | ) |
| | ) |
| **RUDY PEREZ,** | ) |
| | ) |
| Defendant. | ) |

## **V E R D I C T**

**COUNT 6**

WE, the Jury, find the defendant, **RUDY PEREZ,** _____

(guilty or not guilty)

of violent crimes in aid of racketeering in conspiring to murder Javier Molina, as charged in Count 6 of

the Indictment.

**COUNT 7**

WE, the Jury, find the defendant, **RUDY PEREZ**, _____

(guilty or not guilty)

of violent crimes in aid of racketeering in the murder of Javier Molina, as charged in Count 7 of the

Indictment.

Dated this _____ day of _____, 2018.

_____
FOREPERSON