1        IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4        Plaintiff,

5        VS.                    CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7        Defendants.

8                    VOLUME 1

9        Transcript of Motion to Suppress Proceedings and
     James Hearing before The Honorable James O. Browning,
10   United States District Judge, Las Cruces, Dona
     County, New Mexico, commencing on January 8, 2018.
11

12   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck
13
     For the Defendants:  Mr. Brock Benjamin; Ms. Cori
14   Harbour-Valdez; Mr. Pat Burke; Mr. Robert Cooper; Mr.
     James Castle; Mr. Jeff Lahann; Mr. Orlando Mondragon;
15   Mr. John Granberg; Mr. Scott Davidson; Ms. Amy Jacks;
     Mr. Richard Jewkes; Ms. Amy Sirignano; Mr. Marc
16   Lowry; Ms. Theresa Duncan; Ms. Carey Bhalla; Mr.
     William Maynard; Mr. Donovan Roberts; Ms. Lisa
17   Torraco; Ms. Angela Arellanes; Mr. Jerry Walz

18
     For the Defendants (Via telephone):  Ms. Justine
19   Fox-Young; Ms. Margaret Strickland

20
     For the Witness Eric Duran:  Mr. Ken Del Valle
21

22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

2

```
 1            THE COURT:  All right.  Good morning
 2   everyone.  I appreciate everyone making themselves
 3   available to me this morning.  I appreciate y'all's
 4   patience this morning.  I'm running a little behind
 5   trying to get some other fires put out.
 6            I'm going to go ahead and call court and
 7   get entries of appearances since we haven't been
 8   together in a while.  So United States of America
 9   versus Angel DeLeon, Criminal Matter No. 15-4268 JB.
10            If counsel will enter their appearances for
11   the Government.
12            MS. ARMIJO:  Good morning, Your Honor.
13   Maria Armijo, Randy Castellano, and Matthew Beck on
14   behalf of the United States.
15            THE COURT:  Ms. Armijo, Mr. Castellano, Mr.
16   Beck, good morning to you.
17            And for Defendant Joe Lawrence Gallegos.
18            MR. BENJAMIN:  Good morning, Your Honor.
19   Brock Benjamin.
20            THE COURT:  Mr. Benjamin, good morning to
21   you.
22            And for Defendant Edward Troup?
23            MS. HARBOUR-VALDEZ:  Good morning, Your
24   Honor.  Cori Harbour-Valdez and Pat Burke for Edward
25   Troup.  And our paralegal, Raquel Rodriguez, is on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   the phone.
 2            THE COURT:  All right.  Mr. Gallegos, I
 3   meant to say hello to you this morning as well.
 4            And Ms. Harbour-Valdez, Mr. Burke, Mr.
 5   Troup, good morning for you.
 6            THE DEFENDANT:  Good morning, Your Honor.
 7            THE COURT:  And then for Defendant Billy
 8   Garcia.
 9            MR. CASTLE:  Jim Castle and Bob Cooper on
10   behalf of Billy Garcia, who is present.
11            THE COURT:  All right.  Mr. Cooper, Mr.
12   Castle, Mr. Garcia, good morning to you.
13            THE DEFENDANT:  Good morning, Your Honor.
14            THE COURT:  And for Defendant Allen
15   Patterson.
16            MR. LAHANN:  Good morning, Your Honor.
17   Jeff Lahann on behalf of Mr. Patterson.
18            THE COURT:  Mr. Lahann, good morning to
19   you.  Mr. Patterson, good morning to you.
20            THE DEFENDANT:  Good morning, Your Honor.
21            THE COURT:  And for Mr. Christopher Chavez.
22            MR. MONDRAGON:  Good morning, Your Honor.
23   Orlando Mondragon and John Granberg on behalf of
24   Mr. Chavez.
25            THE COURT:  Mr. Mondragon, Mr. Granberg,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Chavez, good morning to you.

 2              And for Arturo Arnulfo Garcia.

 3              MR. DAVIDSON:  Good morning, Your Honor.

 4    Scott Davidson on behalf of Mr. Garcia.  Mr.

 5    Blackburn may be joining us later this week, but not

 6    for the next couple of days.

 7              THE COURT:  Mr. Davidson, Mr. Garcia, good

 8    morning to you.

 9              And for Daniel Sanchez.

10              MR. JEWKES:  Good morning, Your Honor.

11    Richard Jewkes, Amy Jacks, and Daniel Sanchez, who is

12    present before the Court.

13              THE COURT:  All right.  Mr. Jewkes,

14    Ms. Jacks, Mr. Sanchez, good morning to you.

15              And for Anthony Ray Baca?

16              MR. LOWRY:  Good morning, Your Honor.  Marc

17    Lowry and Theresa Duncan on behalf of Anthony Ray

18    Baca, who is present in the courtroom.

19              THE COURT:  Mr. Lowry, good morning to you.

20    Ms. Duncan, good morning to you.  Mr. Baca, good

21    morning to you.

22              THE DEFENDANT:  Good morning, Your Honor.

23              THE COURT:  And for Defendant Christopher

24    Garcia.

25              MS. SIRIGNANO:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Amy Sirignano and Cynthia Gilbert on behalf of
2    Christopher Garcia.  Mr. Adams is in D.C. today.
3    He'll be joining us tomorrow.
4              THE COURT:  All right.  Ms. Sirignano,
5    Ms. Gilbert, and Mr. Garcia, good morning to you.
6              I hope it's warmer in D.C. than when I left
7    there on Friday.  It was cold.
8              For Carlos Herrera.
9              MR. MAYNARD:  Good morning, Your Honor.
10   Bill Maynard and Carey Bhalla for Mr. Herrera.
11             THE COURT:  All right.  Mr. Maynard, Ms.
12   Bhalla, and Mr. Herrera, good morning to you.
13             And for Defendant Rudy Perez.
14             MR. VILLA:  Good morning, Your Honor.  Ryan
15   Villa on behalf of Mr. Perez, who is present.  Ms.
16   Fox-Young is joining us on the phone.
17             THE COURT:  All right.  Mr. Villa, Mr.
18   Perez, good morning to you.  And Ms. Fox-Young, are
19   you present?
20             MS. FOX-YOUNG:  Yes.  Good morning, Your
21   Honor.
22             THE COURT:  Good morning to you, Ms.
23   Fox-Young.
24             And for Defendant Andrew Gallegos.
25             MR. ROBERTS:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Donovan Roberts and Lisa Torraco on behalf of Mr.
 2   Andrew Gallegos.
 3               THE COURT:  All right.  Mr. Roberts, Ms.
 4   Torraco, good morning to you.  Mr. Gallegos, good
 5   morning to you.
 6               And for Defendant Shauna Gutierrez.
 7               MS. ARELLANES:  Good morning, Your Honor.
 8   Angelina Arellanes for Ms. Gutierrez, who appears in
 9   person.
10               THE COURT:  All right.  Ms. Arellanes, Ms.
11   Gutierrez, good morning to you.
12               THE DEFENDANT:  Good morning.
13               THE COURT:  And for Defendant Brandy
14   Rodriguez.
15               MR. WALZ:  Good morning, Your Honor.  Jerry
16   Walz for Brandy Rodriguez, and she's present, Your
17   Honor.
18               THE COURT:  All right.  Mr. Walz, good
19   morning to you.  Ms. Rodriguez, good morning to you.
20               THE DEFENDANT:  Good morning.
21               THE COURT:  All right.  The first issue
22   that I think we need to address is going to be the
23   sealed third motion to withdraw as counsel and
24   motion -- well, let me just deal with it up here at
25   the bench.  Why don't I have Mr. Mondragon, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Granberg, and Mr. Chavez come up here.  And it will
2    be a little bit of issue there for the -- and I
3    assume the Government has seen this -- don't have any
4    objections to this?
5              MS. ARMIJO:  No, Your Honor.  We are aware
6    of the circumstances.
7              THE COURT:  All right.
8    SEALED BENCH PROCEEDINGS WERE HELD - NOT TRANSCRIBED
9              (The following proceedings were held in
10   open court.)
11             THE COURT:  All right.  We're back in open
12   court.  Ms. Wild, on this next motion, is there any
13   problem in discussing it in open court?
14             THE CLERK:  No, sir.
15             THE COURT:  So, Ms. Sirignano, I think this
16   is your motion, and I'm not fully versed in it.  But
17   my understanding is that because of what the marshal
18   has told you, nobody has custody of the witness
19   you're subpoenaing.  So I think what Ms. Wild told me
20   when I left Albuquerque yesterday is that what she
21   anticipated was this motion being withdrawn today.
22   Am I accurate in where we are?
23             MS. SIRIGNANO:  Judge, I'm not entirely
24   sure.  I did get a call from Ms. Wild this morning.
25   I understand that Mr. Montoya is still in custody
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    because he has a federal detainer.  But he's out on

 2    some kind of bond from the State of Colorado, but

 3    pending Rule 5 proceedings, I think, up in Colorado

 4    to come into federal custody.  So I'm not entirely

 5    sure, Judge.

 6               THE COURT:  Well, do you want to hold off,

 7    then, on your motion till things clear up, to see

 8    whether this is the motion you need granted or you

 9    need another motion?  If he's not in state custody,

10    which is the way that I thought this was all drafted

11    up, was that it would writ him out of state custody

12    in here.  Am I wrong?

13               MS. SIRIGNANO:  No, Judge, you're not

14    wrong.  I just don't know where he is, honestly.

15    I've talked to Michael Keefe, his federal defender.

16    And I tried to get some information from the

17    Government.  I filed that as a placeholder to make

18    sure that he came this week.  So if I have to

19    withdraw that, I'm happy to do that.  I just need

20    some assurances from either the Marshal Service or

21    the Government that we'll have access to him either

22    this week or prior to trial, so we have him able to

23    testify before the 29th, Judge.

24               THE COURT:  All right.  Well, any thoughts

25    on what you can say about Mario Montoya?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          MS. ARMIJO:  Yes, Your Honor.  The last
 2     email I had from Ms. Sirignano indicated that she was
 3     perfectly aware of his whereabouts.  In fact, she
 4     indicated that -- a slam to the Government, she was
 5     aware of the circumstances of his arrest, or of his
 6     custody status in an email to Mr. Keefe.  My
 7     understanding is he is in state custody with a
 8     federal detainer.
 9          He had bonded out -- he tried to bond out
10     of his state charges, to make his way down here.  But
11     I think the parties were forgetting that he had to
12     deal with the Rule 5 issue.  So on Friday night, we
13     were looking into the Rule 5 issue.
14          THE COURT:  Educate me a little bit.
15          MS. ARMIJO:  He had to be initialed on his
16     federal warrant for pretrial release violation.  So
17     he's in state custody.  And he was bonding out.  He
18     wanted to bond out to come down here, because he
19     knows he's needed down here.  And so that was why he
20     was bonding out, to try and get here.  But he needs
21     to go before a Colorado judge.
22          Royce, who has moved with the U.S.
23     Marshal's Office up there, was going to assist us in
24     getting us to court quickly.  But the problem is, as
25     of late Friday, the bondsman had not finished the

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                1-800-669-9492
                                                          e-mail: info@litsupport.com




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    paperwork so he could be taken physically into

2    federal custody, because he was still technically in

3    state custody.  My understanding is that possibly

4    over the weekend or this morning -- I don't have an

5    update -- that bondsman is going to go through with

6    the paperwork.  And I believe Royce is worked as

7    quickly as he can to get him into federal custody,

8    take him to a judge up here.

9                Mr. Keefe, his attorney, knows the

10   situation.  We're hoping that he can convey over

11   there in Colorado to waive his identity hearing, at

12   which point the U.S. Marshal's Office and the FBI

13   will work quickly to get him here.

14               That being said, he can be here possibly

15   tomorrow, or Wednesday.  We just need more

16   information on what's happening up there.  And we

17   will try to work with that.  So he's kind of in

18   limbo.  He's not -- he's bonded out or trying to bond

19   out of state custody at this very moment.  I don't

20   know what the situation is.  And the federal detainer

21   will immediately go into effect.

22               THE COURT:  Well, is that enough of an

23   assurance to you?  It seems to me that maybe, rather

24   than me gumming up the works up in Colorado by

25   issuing an emergency writ right now, which then could

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   delay, or follow up him getting transferred to

2   federal custody, shall we just hold off a little bit

3   on this motion until we get some visibility of what's

4   going on up there?

5           MS. SIRIGNANO:  Absolutely, Judge.  The

6   only reason I filed that was a placeholder to get him

7   down here.  So if he's going to be in federal

8   custody.  And I know Royce Namoca.  I can give him a

9   call, too, and get a status from him.

10          THE COURT:  Why don't I just hold this?

11          MS. SIRIGNANO:  Yes, Your Honor.

12          THE COURT:  If things clear up, let me

13  know.  And I may ask you to withdraw this motion so

14  it clears our docket up.

15          MS. SIRIGNANO:  Sure, Judge.

16          THE COURT:  But we'll just keep it in place

17  at the present time.  Does that work for you?

18          MS. SIRIGNANO:  Yes, Judge.  Thank you.

19          THE COURT:  Thank you.  Ms. Wild, I know

20  this is going to be an impossible question to ask

21  you, but do you know where I put my materials on this

22  Eric Duran colloquy?  Do you know?

23          THE CLERK:  It should have been under tab

24  number 3.  Are they not there?

25          THE COURT:  Well, it's showing up just as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    an empty -- well, hold on.
 2              THE CLERK:  I can send it along pretty
 3    quickly if you need me to.
 4              THE COURT:  My memory was -- and correct me
 5    if I'm wrong -- you and I talked about a big stack of
 6    material.  I'm showing about an inch thick, maybe it
 7    was a little less.  And I'm just seeing a few pages
 8    here.  Did we decide that I wouldn't bring those
 9    here?
10              THE CLERK:  That's correct.  You should
11    have an outline and two waivers.
12              THE COURT:  And Ms. Armijo, I was handed
13    something this morning.  Did y'all file a response to
14    this motion this morning?  Is that the one that I got
15    the motion on?
16              MS. ARMIJO:  No.  I believe you're talking
17    about the conflict.  I believe Mr. Lowry filed
18    something late last night.
19              THE COURT:  Okay.  So that's not --
20              THE CLERK:  The motion, Judge, that was
21    originally filed is -- or the notice that the
22    Government submitted is not in that stack.  But it's
23    at Document 1534.
24              THE COURT:  Say that again.
25              THE CLERK:  The Government's notice of this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    potential conflict is not in that stack of materials

 2    you have.  But it can be located at Document 1534.

 3    You've read it, and looked at it previously in early

 4    December.

 5            THE COURT:  Okay.  So that wasn't something

 6    that was filed today.

 7            THE CLERK:  That's Document -- I believe --

 8    1613, that was filed last night.  That's the

 9    defendant's response to that Government's notice.

10            THE COURT:  All right.  Since we have Mr.

11    Del Valle here and Mr. Duran here, why don't we go

12    ahead and take up that issue.  I'm not sure that I

13    have the materials in front of me about the conflict,

14    so I may have to be rereminded, reeducated as to what

15    the issue is.  So somebody want to start?  All I have

16    is materials to try to do a colloquy.  But I don't

17    have any materials to remind me what the conflict is.

18            MR. CASTELLANO:  Judge, just to get things

19    started off then, the conflict, or potential conflict

20    involved the fact that Mr. Duran had previously sued

21    the Department of Corrections.

22            THE COURT:  So this was the civil matter?

23            MR. CASTELLANO:  Yes, sir.  So the Court --

24    I think there was transcripts and other documents

25    presented at the last meeting.  That issue is related

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   to the suit, and Mr. Lowry's firm previously

 2   representing Mr. Duran.

 3           THE COURT:  All right.  So it sounds like

 4   where we were was I was going to have a colloquy with

 5   Mr. Duran, and make sure he was comfortable with Mr.

 6   Lowry and his firm continuing to represent Mr. Baca

 7   in this case; is that correct?

 8           MR. CASTELLANO:  That's correct, Your

 9   Honor.  And I guess one of the questions will be the

10   extent and the length of the representation.  It may

11   have been longer than we initially thought.  But

12   that's correct, we're at that point, I believe.

13           THE COURT:  Well, why don't I get started

14   on this colloquy.  And then, Mr. Castellano, if you

15   want to weigh in and make sure that you're

16   comfortable with what we're doing.

17           Mr. Del Valle, how are you today?

18           MR. DEL VALLE:  Doing well.

19           THE COURT:  Good.  And, Mr. Duran, good

20   morning to you.

21           THE DEFENDANT:  Good morning, Your Honor.

22           THE COURT:  All right.  So, Mr. Duran, do

23   you have a sense as to why you're here today and what

24   we're about to do?

25           THE DEFENDANT:  Yes, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            THE COURT:  So I if understand the

2    situation, is that Mr. Lowry's firm -- not Mr. Lowry,

3    but someone else in his firm -- represented you in a

4    civil action involving the Department of Corrections.

5    Is that your memory of the case?  You may know more

6    about it than I do.  I have read some material on it,

7    but it's been a while.  But do you remember that?

8            THE DEFENDANT:  Correct.

9            THE COURT:  And so you understand that what

10   we're doing here is, you have new counsel, you have

11   Mr. Del Valle, which the Court has appointed to

12   represent you in this matter.  So we're trying to

13   make certain you're comfortable with Mr. Lowry, who

14   is with the Rothstein Firm, going ahead and

15   representing Mr. Baca in this case.  So you

16   understand what we're doing here this morning?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  All right.  Let me explain a

19   few things to you, to make sure that we understand

20   exactly what I'm going to be asking you some

21   questions about.  Do you understand that you have a

22   right to a conflict-free counsel?  Do you understand

23   you have that right?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  And do you understand what that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   means, that you have a right to a counsel that is
 2   solely devoted to your interests, and nobody else's;
 3   they're not going to be worried about themselves,
 4   they're not going to be worried about anybody else,
 5   but just you?  Do you understand you have that right?
 6              THE DEFENDANT:  Yes, Your Honor.
 7              THE COURT:  And do you understand the facts
 8   surrounding Mr. Lowry's firm's previous
 9   representation of you, and that it was, as far as I
10   can tell, an unrelated civil case?  Do you understand
11   all the circumstances there?
12              THE DEFENDANT:  Yes, Your Honor.
13              THE COURT:  Do you have any questions that
14   you want to ask me about that case, or that you want
15   to ask -- anything you want to ask Mr. Del Valle or
16   Mr. Lowry about that prior case?  Or do you feel like
17   you know what the Rothstein Firm was representing you
18   on?
19              THE DEFENDANT:  I just feel like them
20   representing me would be a conflict of interest, as
21   far as me being a witness in this case.
22              THE COURT:  Okay.  So am I hearing you that
23   you're not planning to waive your conflict here?
24              THE DEFENDANT:  Correct.
25              THE COURT:  Okay.  And is that your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   understanding as well, Mr. Del Valle, that he's not

 2   going to be waiving his representation?

 3              MR. DEL VALLE:  Yes, Your Honor.  I spoke

 4   to my client, Mr. Duran, and he doesn't feel

 5   comfortable being cross-examined by somebody -- or

 6   another attorney who previously represented him.

 7              THE COURT:  Okay.  All right.

 8              Mr. Lowry, I guess I had understood it was

 9   going to be different; that Mr. Duran was going to

10   waive.  Is my memory off, or was this what we were

11   anticipating when we were talking earlier?

12              MR. LOWRY:  Your Honor, I hate to say that

13   your memory is off, but indeed it is; that we never

14   anticipated that Mr. Duran was going to waive his

15   conflict.

16              Our argument on December 7 to Your Honor is

17   that there is no conflict.  There is not even the

18   potential, or even the possibility of a conflict.  As

19   we discussed on the 7th, once we realized that

20   Mr. Duran was going to be a witness in this case, we

21   immediately assigned all duties to Mr. Duran to Ms.

22   Duncan, who is co-counsel, who is conflict-free in

23   this situation.

24              So Mr. Duran's concern that he would be

25   cross-examined by any member of the Rothstein Firm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

 1   would be incorrect.  That will not happen.  So I

 2   mean, we can walk through -- and I apologize about

 3   the filing last night, Your Honor, but it just echoes

 4   the argument we made on the 7th, that, as you just

 5   pointed out, these are completely unrelated cases,

 6   and there is really no overlap.

 7          And if you look at the Rules of

 8   Professional Conduct, Rule 16-109(a), in particular,

 9   I mean, has to be a same or substantially similar

10   matter.  And they're neither in this case.

11          The United States' motion that brought this

12   to the Court's attention pointed out -- I thought in

13   writing this response a bit of an incongruity in the

14   record, if you will.  The response seems to intimate

15   in Footnote 7 -- I mean, the United States' motion,

16   Document No. 1534, in Footnote 7, seems to indicate

17   that Mr. Duran is going to testify in this case about

18   being an SNM member and SNM Gang-related activities.

19   And the problem is, Your Honor, there is no

20   indication that he was ever an SNM member until, at

21   best, 2005.  And that's by his own admission in the

22   February 19, 2015 interview we heard about at the

23   very last hearing we had in this case in December.

24          So there is really no overlap.  There is

25   no -- even if you considered that Mr. Donatelli, who

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is in a different office, in a different city, had
 2    attorney-client confidential information regarding
 3    Mr. Duran, that would be an entirely unrelated
 4    matter.  It would be of no utility or no usefulness
 5    in this case.
 6              Again, as you know from the last meeting, I
 7    haven't talked to Mr. Donatelli about this.  You
 8    directed Ms. Duncan to talk to Mr. Donatelli about
 9    this.  I have the letter that was attached to the
10    pleading last night, Your Honor.  If you want, I can
11    provide you with a copy.
12              THE COURT:  Well, is that what -- I've been
13    handed now the response to the United States' motion.
14    Is it attached to that document?
15              MR. LOWRY:  Yes, Your Honor.  I believe it
16    would be Exhibit E.
17              THE COURT:  Well, let me ask Ms. Wild a
18    question.  If Mr. Duran was not going to waive his --
19    any conflict here, what was the thinking about
20    setting this hearing up to go through any sort of
21    colloquy with Mr. Duran?
22              THE CLERK:  Do you have your cellphone on
23    the bench?
24              THE COURT:  I do.
25              THE CLERK:  Let me call you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              (A discussion was held off the record.)
 2              THE COURT:  All right.  Well, let me do
 3    this:  I want to read -- it seems to me that we've
 4    now determined that Mr. Duran is not going to waive
 5    any conflict here.  So, I apologize, there may not
 6    have been any reason to bring Mr. Duran here to the
 7    courtroom for that purpose.  And so -- but at least
 8    we have it clear that he's not going to waive.
 9              At some point, I'm going to need to do a
10    colloquy with Mr. Baca.  But I think that before I do
11    a colloquy, I want to read the response of Mr. Lowry,
12    the Rothstein Firm, and educate myself a little bit
13    more so that my colloquy with Mr. Baca is a little
14    bit more informed.
15              So I'm going to put that aside.  We'll just
16    plow ahead.  And I won't make any decisions on that
17    at the present time.  So unless somebody has
18    something else to propose here, I'm inclined to let
19    Mr. Del Valle and Mr. Duran leave the courtroom.
20              Mr. Castellano?
21              MR. CASTELLANO:  Your Honor, I don't have
22    any objection to that approach.  Mr. Lowry had said
23    that, according to Mr. Duran's statements in his
24    prior interview, that he may not have been an SNM
25    Gang member at that time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          But I believe the representation continued

2     for a number of years.  So the representation may

3     have pushed into the time when he says he was an SNM

4     member.  And so what we don't know, and what maybe

5     the Court can delve into with Mr. Duran, is the

6     nature of any conversations, any privileged

7     conversations he had with counsel; for example,

8     anything that would have tied to gang activities,

9     such as drug trafficking or any administrative

10    trouble he may have gotten into during that time when

11    he was represented.  Because that may be reflected in

12    his STIU file.  So I agree with the Court's approach.

13    I just think there may be other things we'll have to

14    flesh out as part of the colloquy.

15          THE COURT:  Well, since I'm letting

16    Mr. Duran go, it seems to me that if those are the

17    sort of questions that before he leaves that we ought

18    to do today?

19          MR. CASTELLANO:  It wouldn't hurt to at

20    least talk about the length of the representation,

21    and without asking him about what the conversations

22    were, whether certain topics, for example, were

23    discussed during that time.

24          THE COURT:  Well, why don't you turn around

25    and why don't you ask Mr. Duran those questions.  Mr.

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   Del Valle, you're obviously counsel, you can make

2   objections if you want.  And let me see what Ms.

3   Duncan wants to say before --

4           MS. DUNCAN:  Your Honor, I'm sorry, before

5   the Government talks to him, may I ask that he be

6   placed under oath.  It's a serious topic so I think

7   he should be under oath.

8           THE COURT:  All right.  So I'll place you

9   under oath.  But again, if Mr. Del Valle wants to

10  talk to you or make an instruction to you, then you

11  know, let Mr. Del Valle talk to you before you answer

12  a question.  But I'm going to place you under oath.

13  If you'll raise your right hand to the best of your

14  ability, Mr. Duran, Ms. Standridge will swear you in

15  at this time.

16                  ERIC PRESTON DURAN,

17      after having been first duly sworn under oath,

18      was questioned and testified as follows:

19                  DIRECT EXAMINATION

20          THE CLERK:  Please state your name for the

21  record.

22          THE WITNESS:  Eric Preston Duran.

23          THE COURT:  All right.  Mr. Castellano.

24  Mr. Duran.

25          Why don't we do this:  Mr. Duran, why don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      you come up to the witness box and be seated.  Mr.

2      Del Valle, why don't you come up.  We have a seat up

3      here.  I didn't mean to take your seat away from you.

4      We can get another one here.  Does that work for you?

5              All right.  Mr. Castellano.

6      BY MR. CASTELLANO:

7          Q.   Good morning, Mr. Duran.

8          A.   Good morning, sir.

9          Q.   Can you please tell the Court approximately

10     when the Donatelli law firm began representing you in

11     the civil matter?

12         A.   1997.

13         Q.   And do you remember approximately how long

14     that representation lasted; in other words, when did

15     they stop representing you on that case?

16         A.   2005.

17         Q.   Now, after 2005, did you have any other

18     communications with the law firm, or did they

19     otherwise represent you?

20         A.   I did -- like, short brief conversations

21     with them and contact.

22         Q.   And approximately how much longer then did

23     you have contact with the firm?  In other words,

24     approximately what year?

25         A.   Till about 2007.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         Q.   And during that time, without telling us
 2    what the communications were, what the conversations
 3    were, do you know if you had conversations with the
 4    law firm about anything that touched on what the SNM
 5    does in terms of gang activity?
 6         A.   As far as when they represented me?
 7         Q.   Yes.
 8         A.   Yeah, several things.
 9         Q.   So, in other words, in terms of any
10    conversations you had with the law firm, could some
11    of those conversations come up in court in terms of
12    things you discussed with them?
13         A.   They could.
14         Q.   And the same question involving any
15    disciplinary matters.  Did you have any discussions
16    with the law firm about any disciplinary matters you
17    were facing or faced during that representation?
18         A.   I did.
19         Q.   I don't know if you know the answer to this
20    question, but would you know if those matters would
21    be represented in your STIU or other corrections
22    files?
23         A.   I'm not aware.
24         Q.   Okay.  I'm going to try get into some
25    topics.  Once again, without asking you about what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the conversations were, but in terms of topics, can

2    you tell the Court if you discussed anything related

3    to drug activity?

4         A.   Drug activity, yes, we did.

5         Q.   With the law firm?

6         A.   With the law firm.

7         Q.   Can you tell the Court whether you had any

8    discussions with the law firm involving any acts of

9    violence?

10        A.   I did.

11        Q.   And to the best of your recollection, when

12   did your conversations with the law firm cease

13   entirely?

14        A.   Around 2007.

15        Q.   You've had a chance to see Mr. Lowry today.

16   Do you remember him at all?

17        A.   I do.

18        Q.   How do you remember him?

19        A.   I've seen him before in court dates, or

20   Donatelli's office.

21        Q.   Can you tell the Court whether or not you

22   had any of these privileged conversations with Mr.

23   Lowry?

24        A.   No, I haven't.

25        Q.   So you recognize him from the firm, you've

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   seen him, but your conversations did not involve
 2   Mr. Lowry; is that correct?
 3        A.   Right.
 4        Q.   And other than Mr. Donatelli, did you have
 5   conversations such as these with any other lawyers in
 6   the firm?
 7        A.   I believe I spoke to everybody that was in
 8   that firm at this time that they represented me.
 9        Q.   Do you remember any other names?
10        A.   I don't recall.
11        Q.   Do you remember approximately how many of
12   the attorneys from the firm you spoke with about this
13   representation?
14        A.   Approximately 10.
15        Q.   And do you remember which office they were?
16   For example, were they in the Santa Fe office, or the
17   Albuquerque office, or another office?
18        A.   Both.
19             MR. CASTELLANO:  May I have a moment, Your
20   Honor?
21             THE COURT:  You may.
22             MR. CASTELLANO:  Thank you, Your Honor.  I
23   pass the witness.
24             THE COURT:  Thank you, Mr. Castellano.
25             Ms. Duncan, do you want to ask any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   questions of Mr. Duran?
 2            MS. DUNCAN:  I do, Your Honor.
 3            THE COURT:  Ms. Duncan.
 4                        EXAMINATION
 5   BY MS. DUNCAN:
 6        Q.   You testified that the Donatelli firm
 7   stopped representing you in 2005; correct?
 8        A.   Correct.
 9        Q.   Your lawsuit, civil lawsuit you filed
10   against Wackenhut, was dismissed in 2002; correct?
11        A.   It wasn't dismissed.
12        Q.   I'm going to mark -- I think I might be on
13   Exhibit A.  Anthony Baca --
14            THE COURT:  Let's just treat this as a
15   separate matter.  I don't think we had any testimony
16   on it before, unless my memory is off.
17            MS. DUNCAN:  Thank you, Your Honor.
18            THE COURT:  All right.  That's Defendant's
19   Exhibit A?
20            MS. DUNCAN:  Your Honor, may I approach?
21            THE COURT:  You may.
22        Q.   I'm showing you what has been marked as
23   Anthony Baca A.  Can you take a look at that document
24   and tell me if you've seen that before?
25            MS. DUNCAN:  Your Honor, while the witness
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   is reviewing the document, I understand the
 2   Government has no objection, and we would introduce
 3   it for purposes of this hearing.
 4              THE COURT:  All right.  Has it been
 5   sufficiently identified so that everybody knows what
 6   it is?
 7              All right.  No objection from the
 8   Government?
 9              MR. CASTELLANO:  That's correct.
10              THE COURT:  Any objection from anybody
11   else?  All right.  Anthony Baca's Exhibit A will be
12   admitted into evidence.
13   BY MS. DUNCAN:
14        Q.   Do you recognize that document?
15        A.   No, I don't.
16        Q.   Do you recognize the caption of that
17   document?
18        A.   I do.
19        Q.   Is that the lawsuit that you filed against
20   Wackenhut?
21        A.   Yeah.
22              MS. DUNCAN:  May I approach the witness
23   again?
24              THE COURT:  You may.
25        Q.   I've got it now here on the Elmo.  And this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   document is entitled, "Order of dismissal with

 2   prejudice; correct?

 3        A.   Correct.

 4        Q.   And, again, I think you've agreed that this

 5   is filed in the case of Eric Duran versus Wackenhut

 6   Corrections Corp, et al.; correct?

 7        A.   Correct.

 8        Q.   And this is the lawsuit that the Donatelli

 9   firm represented you in?

10        A.   Right.

11        Q.   There was no other lawsuit filed after this

12   one by the Donatelli firm?

13        A.   No.

14        Q.   And if you look at the bottom of that

15   paragraph it says -- it reads, "All causes of action

16   therein" -- I'll start here:  "Eric Duran and the

17   attorneys for certain of the defendants here are

18   praying for entry of an order dismissing the

19   complaint for damages for deprivation of civil rights

20   and for supplemental state law claims filed herein by

21   said plaintiff, and all causes of action therein with

22   prejudice as to all defendants named in the

23   aforementioned complaint on the grounds" -- and I'm

24   skipping over -- "on the grounds that the matters in

25   controversy have been fully settled and compromised,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and the Court, having read the pleadings and being
 2    sufficiently advised in the premises, finds that the
 3    Court has jurisdiction over the parties and the
 4    subject matter herein, and that said motion to
 5    dismiss is well taken and should be granted."
 6            Did I read that correctly?
 7        A.   Correct.
 8        Q.   The last paragraph, "It is therefore
 9    ordered, adjudged, and decreed that the complaint for
10    damages for deprivation of civil rights and for
11    supplemental state law claims filed herein by said
12    plaintiff, and all causes of action therein be, and
13    the same hereby are, dismissed with prejudice as to
14    all defendants named in the aforesaid complaint for
15    damages for deprivation of civil rights and for
16    supplemental state law claims."
17            Did I read that correctly?
18        A.   Yes, ma'am.
19        Q.   So you testified that you had contact with
20    the firm until 2007; correct?
21        A.   Correct.
22        Q.   And you indicated that you spoke to
23    approximately ten lawyers in the firm?
24        A.   At the time, during testimony, yes.
25        Q.   When you say, "at the time, during
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1     testimony," what do you mean?
 2          A.   When I testified against the correctional
 3     officers that assaulted me.
 4          Q.   You did that in a criminal case; correct?
 5          A.   During trial, yes.
 6          Q.   Yes.  And when you talk about meeting with
 7     lawyers, you were meeting with members of the U.S.
 8     Attorney's Office; correct?
 9          A.   No, the lawyers from Donatelli's firm.
10          Q.   You never met with a lawyer from the U.S.
11     Attorney's Office to the prepare to testify in the
12     criminal case?
13          A.   In the criminal case, I did, yes.
14          Q.   But when you're talking about testifying,
15     you're talking about the criminal case; correct?
16          A.   Yeah.
17          Q.   You never testified in the civil case?
18          A.   I testified -- no.
19          Q.   So when you met to prepare for your
20     testimony in the criminal case, it was also with
21     members of the U.S. Attorney's Office; correct?
22          A.   And Donatelli's firm, yes.
23          Q.   How often did you meet with the U.S.
24     Attorney's Office to prepare?
25          A.   Once or twice.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    And Mr. Donatelli was always there?

 2        A.    Correct.

 3        Q.    Where did you meet?

 4        A.    In a private room at the courthouse.

 5        Q.    Did you ever meet at Donatelli's office?

 6        A.    Yes.

 7        Q.    When did you meet at Mr. Donatelli's

 8   office?

 9        A.    I don't recall dates.

10        Q.    Approximately when did you meet with Mr.

11   Donatelli in his office?

12        A.    During the beginning of this whole civil

13   suit.

14        Q.    And was that the office in Santa Fe?

15        A.    Santa Fe and Albuquerque.

16        Q.    Approximately how many times did you meet

17   with Mr. Donatelli at his office?

18        A.    Just maybe once or twice.

19        Q.    And you said that was at the beginning of

20   the lawsuit?

21        A.    Correct.

22        Q.    Who was present with Mr. Donatelli?

23        A.    People that represented his firm.

24        Q.    Do you remember any of their names?

25        A.    I don't.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   You said that you had conversations with
 2    Mr. Donatelli regarding disciplinary matters;
 3    correct?
 4        A.   Correct.
 5        Q.   When did you have those conversations?
 6        A.   At the beginning of the civil matters.
 7        Q.   So that would have been in 2001; is that
 8    correct?
 9        A.   1998.
10        Q.   Did you discuss those matters with Mr.
11    Donatelli other than at the beginning of the
12    litigation in 1998?
13        A.   Throughout his whole representation.
14        Q.   So are you saying every time you talked to
15    Mr. Donatelli you brought up your disciplinary
16    matters?
17        A.   If it involved the case, yes.
18        Q.   And in what way would your disciplinary
19    matters involve your case?
20        A.   As far as retaliation by the correctional
21    officers.
22        Q.   So disciplinary matters for which those
23    particular correctional officers would have
24    retaliated against you; correct?
25        A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.    You testified that you talked to the law
 2     firm about your drug activity; correct?
 3          A.    Correct.
 4          Q.    When did you have those conversations?
 5          A.    2002.
 6          Q.    And in what context did you have those
 7     conversations?
 8          A.    Just as far as what I was doing.
 9          Q.    Why did you have those conversations?
10          A.    Because it related to the case I was
11     involved in.
12          Q.    So it related to the criminal case where
13     you were going to testify, or the civil case?
14          A.    The separate case.
15          Q.    And with whom did you discuss your drug
16     activity?
17          A.    With Donatelli.
18          Q.    And did you discuss your drug activity
19     outside of prison or inside prison?
20          A.    Outside of prison.
21          Q.    Did you discuss at all your drug activity
22     inside prison?
23          A.    Yes.
24          Q.    And this was, again, you said in 2002?
25          A.    No; 2002 was one time.  The other time was
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

1    in 1998, approximately.

2         Q.   And you said that you talked to the law

3    firm about acts of violence; is that correct?

4         A.   Correct.

5         Q.   When did you have those conversations?

6         A.   1998.

7         Q.   And with whom?

8         A.   Donatelli and other people that represented

9    his firm.

10        Q.   You said that the representation ceased in

11   2007; correct -- or I'm sorry, your communications

12   ceased in 2007?

13        A.   Correct.

14        Q.   Why did it cease?

15        A.   Because throughout the time, from 2003,

16   when we stopped the case, he still managed my money.

17        Q.   Did he provide any services for you other

18   than managing your money after 2003?

19        A.   No.

20        Q.   You said that the representation itself

21   ended in 2005.  Does that mean that's when he stopped

22   managing your money, in 2005?

23        A.   Right.

24        Q.   So from -- okay, moving on.

25             You said that you remembered Mr. Lowry from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    court dates.

 2         A.   Right.

 3         Q.   What court dates?

 4         A.   The court dates when I testified against

 5    the correctional officers, the trial.

 6         Q.   And that was in the criminal case, the

 7    federal criminal case?

 8         A.   Against the correctional officers, yes.

 9         Q.   And where was Mr. Lowry in the courtroom?

10         A.   Everybody that was with Donatelli.

11         Q.   So he was sitting with Mr. Donatelli?

12         A.   Yes.

13         Q.   Other than seeing Mr. Lowry in the

14    courtroom, do you remember seeing him any other time?

15         A.   No.

16         Q.   Did you have any conversations with Mr.

17    Lowry?

18         A.   No.

19         Q.   You said that you spoke with lawyers from

20    both Santa Fe and Albuquerque office; correct?

21         A.   Correct.

22         Q.   How did you know which offices the lawyers

23    came from?

24         A.   Because they told me.

25         Q.   How many lawyers did you speak to who were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   from the Santa Fe office?
 2        A.   I don't recall.
 3        Q.   How many lawyers did you speak to from the
 4   Albuquerque office?
 5        A.   I don't recall.
 6        Q.   How many conversations have you had with
 7   this group of prosecutors about Mr. Donatelli?
 8        A.   One, maybe.
 9        Q.   And when was that conversation?
10        A.   Just the other day.
11        Q.   When you say, "just the other day," within
12   the last week?
13        A.   Yes.
14        Q.   So before last week you've never spoken to
15   anyone from this office about Mr. Donatelli?
16        A.   No.
17        Q.   How about with Mr. Acee?
18        A.   I don't recall.
19        Q.   You don't recall speaking to him about Mr.
20   Donatelli?
21        A.   About Mr. Donatelli representing me in a
22   case?
23        Q.   Yes.
24        A.   Yes.
25        Q.   When did you have that conversation?
```

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                   1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1          A.   I don't recall.

 2          Q.   Was it within the last year?

 3          A.   Yeah, probably 2014, maybe.

 4               MS. JACKS:   Excuse me, Your Honor.   We're

 5     having trouble hearing in the back of the courtroom.

 6               THE COURT:   Why don't you move the mic.

 7          Q.   So you think, in approximately 2014, you

 8     spoke to Bryan Acee about Mr. Donatelli having

 9     represented you in the civil case?

10          A.   Right.

11          Q.   What do you recall about that conversation?

12          A.   Just telling him as far as this

13     correctional officer incident and the lawsuit.

14          Q.   At any point, did you discuss with Mr. Acee

15     what conversations or the topics of conversations you

16     had with Mr. Donatelli?

17          A.   No.

18          Q.   At any point, did you have a conversation

19     with any of these prosecutors about the topics of

20     your conversation with Mr. Donatelli?

21          A.   No.

22          Q.   Even when you met with them last week?

23          A.   When I met with them?

24          Q.   When you met with the prosecutors last

25     week, did you talk to them about the subject matter
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of your conversations with Mr. Donatelli?

2         A.    Yeah, I brought up my concerns, yes.

3         Q.    And you raised those concerns for the first

4    time last week?

5         A.    Correct.

6         Q.    When you raised those concerns with them,

7    what did you tell them?

8         A.    That Mr. Baca's attorney represented the

9    same firm that represented me in a lawsuit, who would

10   have access to the things that I told him.

11        Q.    And why did you raise those concerns?  I

12   mean, what prompted you to bring this issue up?

13        A.    I just feel like it would be a conflict of

14   interest to have a defendant being represented by

15   someone that represented me.

16        Q.    So did you raise the question of whether

17   there was a conflict of interest or did someone else

18   raise it to you?

19        A.    I did.

20        Q.    So just -- how did you learn that Mr. Baca

21   was represented by someone from Mr. Donatelli's

22   office?

23        A.    Because I learned that you guys were trying

24   to subpoena me to show up to places, to get me to be

25   here.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.    And so when you heard that we were
 2   subpoenaing you is the first time that you learned
 3   that Mr. Donatelli's office -- a lawyer from Mr.
 4   Donatelli's office was Mr. Baca's attorney?
 5        A.    No.  I knew he was being represented from
 6   the day he went to court.
 7        Q.    Right.  That's not my question.  My
 8   question is:  When did you learn that an attorney
 9   from Mr. Donatelli's firm represented Mr. Baca?
10        A.    The day he went to court.
11        Q.    Which day that he went to court?
12        A.    When he first got initially charged.
13        Q.    In December of 2015?
14        A.    Right.
15        Q.    And so did you raise your concerns then?
16        A.    No.  I hadn't been talked to.
17        Q.    So -- okay.  So in -- you said in 2014, you
18   talked to Bryan Acee about your lawsuit; correct?
19        A.    And there was nobody that was represented
20   by any law firms at that point.
21        Q.    And when is the next time that you talked
22   to Mr. Acee or any member of the government about the
23   Rothstein firm or Mr. Donatelli's representation of
24   you?
25        A.    Last week.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   So before last week, you had never spoken
 2   with Maria Armijo about your conversations with Mr.
 3   Donatelli?
 4        A.   I haven't spoke with Maria Armijo since
 5   2014, before anybody was represented.
 6        Q.   The only lawsuit which -- for which Mr.
 7   Donatelli represented you was a civil lawsuit against
 8   Wackenhut and others; correct?
 9        A.   Correct.
10             MS. DUNCAN:  May I have a moment, Your
11   Honor?
12             THE COURT:  You may.
13   BY MS. DUNCAN:
14        Q.   You testified that you met with lawyers
15   from the Donatelli firm in Albuquerque; correct?
16        A.   Correct.
17        Q.   Where is that office?
18        A.   I'm not sure right now.
19        Q.   Can you describe what the office looks
20   like?
21        A.   No.
22        Q.   Can you describe whether you met with them
23   on the first floor?  On an upper floor?
24        A.   It was in a building.  I don't know.  I'm
25   not sure.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         Q.   How about the Santa Fe office?
 2         A.   The Santa Fe office was just a single-floor
 3    building.
 4         Q.   And how often did you meet in the Santa Fe
 5    office?
 6         A.   Once.
 7         Q.   Were you in custody at the time that you
 8    met in the Santa Fe office?
 9         A.   Yes.
10         Q.   And were you in custody at the time you met
11    in the Albuquerque office?
12         A.   The Albuquerque office was the office that
13    we conducted --
14              MS. SIRIGNANO:  Sorry, Your Honor, I can't
15    hear the witness.
16         A.   The Albuquerque office was the initial
17    place that we conducted the lawsuit, to settle out of
18    court.
19         Q.   So you met in the Albuquerque office to
20    discuss settling your case?
21         A.   No.  We settled out of court in the
22    Albuquerque office.
23              MS. DUNCAN:  Okay.  I have no further
24    questions, Your Honor.
25              THE COURT:  Thank you, Ms. Duncan.
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                             1-800-669-9492
                                                 e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              Mr. Lowry, I know that you'd indicated you
 2     didn't want to cross-examine Mr. Duran.  Is that
 3     still the situation?
 4              MR. LOWRY:  Well, Your Honor, that puts me
 5     in a bit of a pickle.
 6              THE COURT:  Yeah.
 7              MR. LOWRY:  I would like to ask --
 8              THE COURT:  I'm going to let you decide
 9     whether you want to be in the pickle jar or out of
10     the pickle jar.
11              MR. LOWRY:  I know pickle juice is the big
12     refresher these days.  I think it's the high school
13     football team --
14              THE COURT:  Ms. Wild started me on this.
15     For a long time I would eat the pickles and give her
16     the pickle jar.  But now I've been eating the pickle
17     juice myself.  I don't know if I recommend it.
18              All right.  Mr. Lowry.
19              MR. LOWRY:  Just a few brief questions.
20                          EXAMINATION
21     BY MR. LOWRY:
22       Q.   Mr. Duran, you said that -- I just want to
23     clarify -- you said that I was in court with Mr.
24     Donatelli during your criminal case?
25       A.   Yeah, I believe so.
```

 

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    And you said that you had met me, or
 2   recognized me, from one of the offices?
 3        A.    Correct.
 4        Q.    Which office?
 5        A.    The Albuquerque office.
 6        Q.    In what year was that?
 7        A.    I'm not sure.   I don't recall.
 8        Q.    Okay.   I think you just spoke to Ms.
 9   Duncan, and you said -- how many times had you been
10   to the Albuquerque office?
11        A.    Once.
12        Q.    And if I recall correctly, that was when
13   you settled your civil case?
14        A.    Right.
15        Q.    So that would have been before the notice
16   of settlement was issued or filed with the court?
17        A.    I'm not sure.
18        Q.    Well, you wouldn't have dismissed your case
19   before you settled it, would you have?
20        A.    No.   I believe the case got dismissed after
21   I settled it.
22        Q.    So my question is:   You would have been in
23   the Albuquerque office before the date of the
24   dismissal of your case?
25        A.    Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. LOWRY:  No further questions, Your
 2    Honor.
 3              THE COURT:  All right.  Thank you, Mr.
 4    Lowry.
 5              Any other defense counsel, other
 6    defendants, have any question of Mr. Duran?
 7              Mr. Del Valle, do you have any questions
 8    that you wish to ask Mr. Duran?
 9              MR. DEL VALLE:  No, Your Honor.
10              THE COURT:  All right.  Mr. Castellano, do
11    you have --
12              MR. CASTELLANO:  Yes, sir.  Thank you.
13              THE COURT:  -- redirect?
14                     REDIRECT EXAMINATION
15    BY MR. CASTELLANO:
16         Q.   Mr. Duran, you indicated that you had
17    discussions with Agent Acee and with Ms. Armijo in
18    2014.  Do you remember when you first met each of
19    them, what year it was?
20         A.   Yes.
21         Q.   When do you think that was?
22         A.   2014.
23         Q.   Why do you think it was 2014?
24         A.   Because I met them in February of 2014 --
25    or I met Mr. Acee in 2014.
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Do you remember giving a statement to FBI

2   agents in February of 2015, including a woman named

3   Katie Brusuelas?

4      A.   That was 2015.  I'm sorry, it was 2015.  I

5   met Mr. Acee in May, and I met Katie in February, and

6   I met Ms. Armijo in August.

7      Q.   August of 2015?

8      A.   Correct.

9      Q.   Now, you mentioned actually three things:

10  You mentioned a civil suit, testifying against the

11  corrections officers, and then the Donatelli firm

12  managing your money.  Can you tell the Court whether

13  all three of those things related to the same

14  incident?

15     A.   They did.

16     Q.   So, in other words, did corrections

17  officers assault you?

18     A.   Correct.

19     Q.   Did you file a civil suit in response to

20  that assault?

21     A.   Correct.

22     Q.   And after that, did the Department of

23  Justice then prosecute those correction officers for

24  the same incident?

25     A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And then, prior to your testimony in the
 2   criminal case, did the Donatelli firm help you
 3   prepare for your testimony in any way?
 4        A.   Yes.
 5        Q.   Okay.  How did they help you prepare for
 6   your testimony?
 7        A.   They just helped me prepare for it.
 8        Q.   In other words, did they tell you certain
 9   things that the other defense attorneys in the
10   criminal case might ask you?
11        A.   Yeah, correct.
12        Q.   Including any prior bad acts you may have
13   been engaged in?
14             MS. DUNCAN:  Your Honor, I object to
15   leading.
16             THE COURT:  Overruled.
17        A.   Correct.
18        Q.   So, in other words, if you had done
19   other -- other things for which the defense attorneys
20   in the criminal case could impeach you, did the
21   Donatelli firm help you prepare for that kind of
22   testimony?
23        A.   Correct.
24        Q.   And then, when you talked about the
25   Donatelli firm helping you manage your money, was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that from the civil suit in which you settled?

2         A.   Yes.

3              MR. CASTELLANO:  I have no further

4    questions, Your Honor.

5              THE COURT:  All right.  Thank you, Mr.

6    Castellano.

7              All right.  Mr. Duran, you may step down.

8    Thank you for your testimony.

9              Well, even though I'm not going to take a

10   colloquy of Mr. Baca at the present time because I

11   want to read material that's come in -- I've been

12   looking at it and refreshing my memory about the

13   Government's filings while we've been hearing

14   testimony -- I do think it would be a good idea to go

15   ahead and argue the motion again, because it looks

16   like I'm going to have to make a rather prompt ruling

17   on this, given the motions that we're going to have

18   to hear this week.

19             So, Mr. Castellano, why don't I let you go

20   first, since I think it was the Government that

21   raised the potential conflict here.

22             MR. CASTELLANO:  Your Honor, I think we

23   fleshed out some more facts today that we didn't know

24   last time, because --

25             THE COURT:  Tell me what I'm hearing for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    the first time.  I certainly have heard some things

 2    that I think I'm hearing for the first time.  But

 3    what's your list?

 4            MR. CASTELLANO:  What we didn't know was

 5    the extent of the representation or the length of

 6    time of the representation, or that the

 7    representation not only covered the civil case, but

 8    the criminal case, and the management of Mr. Duran's

 9    funds.

10            And so, as Mr. Duran testified, what the

11    Donatelli firm helped him do, in addition to meeting

12    with the Department of Justice officials, prior to

13    his testimony in the criminal case, was they helped

14    him prepare for testimony, including what to expect

15    when he might be attacked for any prior bad acts he

16    may have done in the Corrections Department, or

17    otherwise.  And so any of that conduct, if it

18    involved criminal activity, those are things which

19    the Donatelli firm knows about Mr. Duran, and in

20    fact, helped him to prepare when he was going to be

21    questioned about those things.

22            So I think the representation is more

23    extensive than we knew last time we were here,

24    because we didn't have the benefit of Mr. Duran's

25    testimony, which he recalls extending into 2007.  So

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                 1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                    e-mail: info@litsupport.com

```
 1    that would have taken him well within the timeframe
 2    that we're talking about here.
 3            And so, when we talk about things such as
 4    acts of violence or drug trafficking, those are
 5    things which are racketeering acts, which are things
 6    we allege that the criminal enterprise does.  And so
 7    they do relate to the charges in this case because
 8    they touch on some of the elements.
 9            I think that's what I would add to the
10    analysis, Your Honor.
11            THE COURT:  All right.  Thank you, Mr.
12    Castellano.
13            Ms. Duncan, do you want to go first?  Do
14    you want Mr. Lowry to go first?  How do you want to
15    proceed?
16            MR. LOWRY:  Your Honor, I would like to go
17    first.  And then I'd like Ms. Duncan to follow-up if
18    I may.
19            THE COURT:  All right.  Mr. Lowry.
20            MR. LOWRY:  Your Honor, I agree with Mr.
21    Castellano in the sense that -- and, as I said to the
22    Court in December, you know, I haven't spoke to Mr.
23    Donatelli about the representation of Mr. Duran.  So
24    all of this today was news to me.
25            In December -- and I continue to adhere to
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                          1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1   this position -- the standard is really an objective

2   standard.  And the Court should look at the scope of

3   the representation in the civil case and make an

4   assessment whether the kinds of topics that Mr. Duran

5   claims to have spoken to Mr. Donatelli about would be

6   necessary in the context of that case.  And if they

7   weren't, then you can make a finding that there is --

8   there was no confidential information that would have

9   been shared.

10          I understand Mr. Duran has testified today

11  that he did talk about prior bad acts.  But, again,

12  this brings me back to the point is -- this case is

13  about the SNM, and his prior bad acts before 2002

14  would have been unrelated to the SNM.

15          So I just heard, you know, all about this

16  timeframe extending -- I heard various dates, from

17  2005 to 2007.  So all of that is news to me.  And I

18  would appreciate it, perhaps, if the Court would, you

19  know, task Ms. Duncan with going back and seeing if

20  any of that is remotely real.

21          I mean, I work in the office.  I would say

22  this -- and the reason I wanted to step into the

23  pickle and ask Mr. Duran the few questions I did, is

24  just to assess his credibility.  And, to me, it's

25  rather striking that he's willing to say that he met

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    me in the office at the Rothstein law firm during his

2    settlement conference, which took place sometime

3    before the September 18, 2002 settlement.  At the

4    time, I was a law clerk for Chief Justice James A.

5    Parker, so I would have been in the federal

6    courthouse at the time.  So that's highly unlikely.

7    It just stretches one's imagination past the breaking

8    point, to hear him say some of the things he said.

9              So, if the Court would be so inclined -- I

10   know that the firm has a policy of sending case

11   closing letters when the case wraps up.  And maybe

12   that is one of the things that would help us

13   determine whether the scope of representation lasted

14   as long as Mr. Duran claims that it did.

15             But it gives me no great pleasure to say

16   that I think a lot of what was said was fanciful.

17   But, at the end of the day, all of his prior bad

18   acts, any of his conduct, would have been unrelated

19   to the SNM, by his own admission to the FBI on

20   February 19, 2015.

21             So at the last hearing you'd asked me to

22   look at cases about the appropriate type of remedy.

23   And I'd encourage you to look at the last section of

24   the brief we filed yesterday.  The best I could find

25   was the New Hampshire courts allow exactly what we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    proposed in this case, and that is to have substitute
 2    counsel handle that witness.  The New Hampshire
 3    courts even go a step further, to allow a lawyer in
 4    the office -- in that case, the public defender's
 5    office, who has represented government witnesses.  It
 6    doesn't disqualify the public defender and other
 7    attorneys, as long as they're, you know, Chinese
 8    walled off from the original case file, and the
 9    original attorneys are allowed to represent new
10    clients who have to cross-examine former clients of
11    the firm.  And that is the case when the two cases
12    are not, as the Court has already indicated,
13    substantially similar.  These cases aren't similar at
14    all.
15            And I would urge the Court to consider a
16    remedy that's short of disqualification along the
17    lines that we put in place immediately upon realizing
18    Mr. Duran's involvement in the case, Your Honor.
19            Thank you.
20            THE COURT:  All right.  Thank you, Mr.
21    Lowry.
22            Ms. Duncan?
23            MS. DUNCAN:  Your Honor, I'd like to start
24    out by discussing the letter that I sent to you that
25    was attached to our response.  I've had a couple of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    conversations with Mr. Donatelli about this matter.
 2    And as I lay out in my letter, he denies ever having
 3    a conversation with Duran about gang life or drug use
 4    or priors.
 5              He said that the liability for the civil
 6    case was really won for him by the U.S. Attorney's
 7    Office, when they convicted the correctional officers
 8    who beat Mr. Duran.
 9              So, for him, the focus was money.  You
10    know, what was the damage to Mr. Duran, and what was
11    that worth?
12              I have talked to him.  Ms. Armijo informed
13    Mr. Lowry that Mr. Duran was going to make these
14    claims about having these conversations.  I spoke to
15    Mr. Donatelli after learning of that.  He, again,
16    repeated that he did not have -- he has no
17    recollection of having any such conversations, and he
18    can't imagine why he would in the limited context of
19    the case.
20              You know, even listening to Mr. Duran
21    testify right now -- I mean, he's talking about
22    conversations that he had in 1998, and as late as
23    2002, with Mr. Donatelli and the U.S. Attorney's
24    Office, preparing to testify for that criminal case.
25              The Government has conceded, and all the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    documentary evidence in this case suggests that
 2    Mr. Duran did not begin his alleged affiliation with
 3    the SNM until 2005.
 4              So if he's talking about gang life, he's
 5    not talking about the SNM.  If he's talking about
 6    drug stuff, he's not talking about drug stuff related
 7    to this case here.
 8              In terms of his acts of violence, they are
 9    well documented in court records, and also in his
10    disciplinary file.
11              So there is no confidential information
12    that could be used in this lawsuit from 2002.  And
13    just using that objective standard, there is nothing
14    that we would use.  And even if there were, as Mr.
15    Lowry has pointed out, having me do the
16    cross-examination -- I am not a member of the
17    Rothstein law firm.  I've never represented
18    Mr. Duran.  I'm relying on the extensive records,
19    both criminal records, disciplinary records, going
20    back as far as 1998, against Mr. Duran, to do the
21    cross-examination.
22              So there really just isn't a conflict here.
23    And the fact that Mr. Donatelli represented Mr. Duran
24    back in 1998 to 2001, does not put the Rothstein firm
25    off limits in any case in which Mr. Duran might be a
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492
                        BEAN                              e-mail: info@litsupport.com
                        & ASSOCIATES, Inc.
                        PROFESSIONAL COURT
                        REPORTING SERVICE

1    witness.  They're not substantially related.

2            And what the Government is doing here is

3    asking this Court to knock Mr. Lowry off, to

4    disqualify him as Mr. Baca's counsel three weeks

5    before trial.  Mr. Baca has a Sixth Amendment right

6    to the effective assistance of counsel.  And the

7    Government is seeking to invade that right, to deny

8    him of that right based on speculation, and not

9    credible testimony by Mr. Duran.

10           I mean, it's clear that Mr. Duran is doing

11   what he thinks he needs to do to win the Government's

12   favor, having absconded and now gotten himself in

13   trouble with them.

14           So we have on the one hand, you know, one

15   of the most respected members of the defense

16   community here in New Mexico, Mr. Donatelli --

17           THE COURT:  Let me do this:  I don't want

18   to rush us on this.  I don't want to rush you or me

19   on this.  But I do need to let Ms. Bean have a break.

20   And it will give me a little bit of time to continue

21   to read your document that you filed last night.

22           So let's take a break now.  We'll be in

23   recess for about 15 minutes, then we'll hear it.

24           (The Court stood in recess.)

25           THE COURT:  All right.  Let's go back on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    the record.  Looks like to me all defendants have a
2    counsel.  Check around, look around, make sure your
3    co-defendants have a counsel.
4              All right.  Ms. Duncan, if you wish to
5    continue your response to the Government's motion.
6              MS. DUNCAN:  Thank you, Your Honor.
7              Your Honor, just before I finish my
8    argument as an evidentiary matter, Mr. Lowry
9    mentioned during his argument that he didn't join the
10   Rothstein Firm until 2003.  And that at the time
11   Mr. Duran is claiming to have seen him in the firm
12   and sitting with Mr. Donatelli in the courtroom, he
13   was clerking with Chief Judge Parker.  I don't know
14   if we could add that to the record as a proffer, or
15   have Mr. Lowry testify.  If the Court has a
16   preference, if the Government has a preference --
17             THE COURT:  Do you have any problem with me
18   just taking notice of that statement, Mr. Castellano?
19             MR. CASTELLANO:  Your Honor, Mr. Lowry is
20   an officer of the court.  I think the Court can take
21   that.
22             THE COURT:  All right.  Unless there is
23   some objection to that, the Court will add that to
24   the record.
25             MS. DUNCAN:  The other fact that I think is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    relevant to this argument that Mr. Lowry can provide
 2    to the Court is that he's never met Mr. Duran, either
 3    in 2002, 2003, or otherwise.  I don't know if you can
 4    do the same thing, as an officer of the court for
 5    Mr. Lowry?
 6              THE COURT:  Can I accept that and add to
 7    the record that that's Mr. Lowry's representation to
 8    the Court?
 9              MR. CASTELLANO:  That's fine, Your Honor.
10              THE COURT:  All right.  Any objection?
11    That will be added to the record as well.
12              MS. DUNCAN:  Thank you, Your Honor.
13              And I'll be brief.  As you see in my
14    letter -- and Mr. Donatelli -- if the Court wanted to
15    speak with him -- said that he would be available
16    this week either by phone, or if the Court wanted him
17    to, he would be willing to come and talk to the
18    Court.  But given his consistency in his statements
19    to me, and his reputation as an officer of the court,
20    and also as one of the most ethical lawyers in New
21    Mexico, I can tell you that in every conversation
22    I've had with him since we first learned of the
23    Donatelli firm's representation of Duran in 2016,
24    that he has been clear that there was no conflict.
25              You know -- and as I was saying before the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    break, you contrast that with Mr. Duran, who has made
2    several demonstrably false statements on the stand,
3    and is in trouble with the Government right now,
4    having absconded, he claims that it was just out of
5    his own concern for the conflict he raised it last
6    week to discuss it with the prosecutors.  And we know
7    that's not true, given that the prosecutors filed a
8    motion to determine this conflict.  And the Court,
9    itself, appointed counsel for Mr. Duran last month.
10   And the only reason we didn't hear this last month is
11   because Mr. Duran absconded.
12            So the bottom line is, Your Honor,
13   everything -- there is nothing new.  We've known
14   since this issue first came up that the Donatelli
15   firm represented Mr. Duran in his lawsuit against
16   Wackenhut; that that lawsuit overlapped the criminal
17   case; that Mr. Donatelli was relying on the criminal
18   case to establish liability for the civil case; and
19   that both of those cases were over in 2002, before
20   Mr. Lowry joined the Rothstein firm, and before
21   Mr. Duran began allegedly associating with the SNM in
22   2005.
23            So using that objective standard, even a
24   subjective standard, there is no information that was
25   disclosed that would cause a conflict in this case,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    given the disconnect between that lawsuit and the
 2    present litigation.
 3              And, as I said earlier, Mr. Baca -- he has
 4    a Sixth Amendment right to counsel.  We're three
 5    weeks away from trial.  The Government's effort to
 6    kick Mr. Lowry off the case at this point is
 7    unconscionable.
 8              And when the Court does its colloquy with
 9    Mr. Baca, Mr. Baca will waive any conflict.  He very
10    much wants Mr. Lowry to be his counsel at trial with
11    me.  And any concerns that the Court may have about
12    the conflict are remedied by our solution of I will
13    cross-examine Mr. Duran, as I have done today.
14              Thank you.
15              THE COURT:  All right.  Thank you, Ms.
16    Duncan.
17              I think I've read enough during the break,
18    the response that Mr. Baca filed last night, so I'm
19    going to go ahead and do a colloquy here at this
20    point, so that, if anybody needs to do anything
21    further as far as arguments, they'll be able to do
22    so.
23              So, Mr. Baca, I'm going to ask you to
24    stand, and I'm going to ask you some questions.  I'm
25    sure your counsel has talked to you a little bit
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    about today and what may take place.  So you're
 2    prepared for this.  Is this correct?
 3              THE DEFENDANT:  That's correct.
 4              THE COURT:  All right.  Mr. Baca, do you
 5    understand that you have a right to a conflict-free
 6    counsel, and that is a counsel that doesn't owe any
 7    obligations, loyalties, duties to anyone else other
 8    than to you in this case?
 9              THE DEFENDANT:  I understand that.
10              THE COURT:  And do you understand the facts
11    surrounding the Rothstein's firm, Mr. Donatelli's
12    representation, previous representations of Mr. Eric
13    Duran, that it was in -- and this is your counsel's
14    position that it's unrelated -- I've yet to make that
15    determination, but they made a statement that it's
16    unrelated.  And you listened to us on December 7 and
17    today about the circumstances of that.  Do you think
18    you understand that prior case and the Rothstein's --
19    Mr. Donatelli's representation of Mr. Duran?
20              THE DEFENDANT:  I do, Your Honor.
21              THE COURT:  And do you understand that Mr.
22    Lowry, as a part of that Rothstein Firm, may have
23    duties of loyalty stemming from the Rothstein firm's
24    previous representation of Mr. Duran?  Do you know
25    they may have some ongoing duties of loyalty to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Mr. Duran?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And do you understand that Mr.

4    Donatelli's and the Rothstein's duties to Mr. Duran

5    may impact upon Mr. Lowry's representation of you;

6    that there may be something that comes up that Mr.

7    Donatelli is not presently remembering; he may have

8    gotten some pertinent information that he learned

9    during the course of his representation, the

10   Rothstein Firm's representation of Mr. Duran; do you

11   understand that something could come up that may

12   impact the Rothstein's firm representation of you?

13             THE DEFENDANT:  I do, Your Honor.

14             THE COURT:  And do you understand that

15   there is a risk that Mr. Lowry and his firm may have

16   to choose between their duty of loyalty to you and

17   duty of the loyalty to Mr. Duran, and, you know,

18   there may be an impact upon Mr. Lowry's zealous

19   advocacy for you?

20             THE DEFENDANT:  I understand.

21             THE COURT:  If -- and this is already, I

22   guess, happened -- I'm not as informed or

23   knowledgeable about what Mr. Duran is going to say,

24   as maybe you have -- but if he's going to cooperate

25   and testify -- you may know what he's going to be
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    saying better than I do -- Mr. Lowry and Ms. Duncan

2    are going to be forced to cross-examine Mr. Duran.

3    And Mr. Lowry's duty of loyalty, through his firm, to

4    Mr. Duran may affect their performance in some way

5    that I can't fully anticipate at the moment.  But it

6    could.  Do you understand that possibility?

7             THE DEFENDANT:  I do understand.

8             THE COURT:  Additionally, the Rothstein's

9    firm, and Mr. Lowry's duties to Mr. Duran through Mr.

10   Donatelli and his firm may affect trial strategies,

11   including arguments, including relative culpability

12   between the defendants here.  Do you understand that

13   there could be an impact there?

14            THE DEFENDANT:  I do, Your Honor.

15            THE COURT:  I'm going to have you look at a

16   waiver.  Did you look at a written waiver,

17   Ms. Duncan, Mr. Lowry?

18            MS. DUNCAN:  Your Honor, we have not seen

19   the waiver.

20            THE COURT:  I'm going to have Ms.

21   Standridge hand you one that I used in another case.

22   And I'll ask you to work one up, and to show it to

23   the Court and show it to Mr. Baca and Mr. Lowry as

24   well.

25            So, Mr. Baca, when you review the final

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    product of this, I'll be asking you some further

2    questions about whether you reviewed it and you're

3    ready to sign it after you've been fully advised,

4    particularly in this matter by Ms. Duncan.  So do you

5    understand what is going to take place from here on

6    out?

7              THE DEFENDANT:  I do, Your Honor.

8              THE COURT:  Knowing that a conflict may

9    arise in the future and the risk associated with such

10   a conflict, do you still wish to waive that conflict

11   and continue to have Mr. Lowry and the Rothstein Firm

12   as your attorney in this case?

13             THE DEFENDANT:  I do wish to waive.

14             THE COURT:  All right.  So we'll prepare

15   that written document.  We'll all take a look at it.

16   And Ms. Duncan will go over it with you.

17             All right.  Anything else you want to say

18   on this issue, Mr. Baca, to the Court?

19             THE DEFENDANT:  No, I'm fine.

20             THE COURT:  All right.  Thank you, Mr.

21   Baca.

22             THE DEFENDANT:  Thank you.

23             THE COURT:  Is there anyone else that

24   wishes to comment on the Government's motion?

25             All right.  Mr. Del Valle, do you have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    anything you wish to say on behalf of Mr. Duran?
 2              MR. DEL VALLE:  No, Your Honor.
 3              THE COURT:  All right.  Mr. Castellano, do
 4    you have anything further you wish to say on this
 5    motion?
 6              MR. CASTELLANO:  No, Your Honor.
 7              THE COURT:  All right.  Well, I'm still
 8    where I was in December when I first had the issue,
 9    that I'm not convinced that there is the same
10    conflict or dispute that caused me to have problems
11    with Mr. Davis' representation.  So I'm inclined to
12    think that, A, there is not a violation or any
13    conflict that causes a conflict here because it's not
14    the same subject matter.
15              Secondly, I think the Tenth Circuit in
16    Winkle has indicated that if Ms. Duncan handles the
17    cross-examination of Mr. Duran, that may solve any
18    sort of problems.
19              So probably what I'll do is I'll expedite
20    some looking at this.  I should have said at the
21    beginning, to let y'all know what I'm working on,
22    given that issue that kind arose at the end of the
23    hearing on the last day we were together in December,
24    there wasn't really a clear vehicle to put that issue
25    in.  I decided that of all the things that I need to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   work on, that probably is the murkiest.  And so I

2   wanted to go in and get some clarity for myself on

3   these evidentiary issues going into trial.

4          I chose as the vehicle the James motion.

5   So, while I don't think there was a lot of dispute

6   about the James, it seemed to have arisen in the

7   James motion, either Mr. Perez' or Mr. Baca's or Mr.

8   Sanchez' or Mr. Herrera's.  Those seemed to be the

9   places it was coming up with the testimony we were

10  getting from the cooperating witnesses.  So I've

11  chosen to work on that.  I'm going to put that aside.

12  I'm going to try to reach an answer here.  So you're

13  probably not going to get any full opinion, but maybe

14  you'll get an oral ruling from me before we get out

15  of here this week.  But I'm inclined to not

16  disqualify the firm or Mr. Lowry.  So that's where I

17  am at the present time on that motion.

18          All right.  I think the next thing we need

19  to do is to take up the conflict and waiver issues as

20  to Mr. Garcia.  And, of course, that's a little bit

21  different situation.

22          I understand that this is unopposed by the

23  Government, and by everybody else.  So I just want to

24  get a colloquy with Mr. Garcia that he doesn't have

25  any problem with Ms. Sirignano representing him in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    this matter despite some involvement at the U.S.

 2    Attorney's Office on some issues.  Anybody want to

 3    say anything on this first before we deal with this?

 4    Ms. Sirignano?

 5              MS. SIRIGNANO:  No, Your Honor.  It's all

 6    contained in the pleading.

 7              THE COURT:  All right.  How about you, Mr.

 8    Castellano?  Ms. Armijo?  Anything you want to say?

 9              MS. ARMIJO:  No, Your Honor.

10              THE COURT:  Anybody else have any issue on

11    this?

12              All right.  Mr. Garcia, if you'll stand,

13    I'm going to ask you a few questions.  Again, they're

14    very similar to what I've just asked Mr. Baca.  But

15    you've been listening today, and of course over the

16    course of these hearings.  You understand that you're

17    entitled, and that you have a right to a

18    conflict-free counsel?

19              THE DEFENDANT:  Yes.

20              THE COURT:  All right.  And I won't go into

21    as much detail as I have in others, but you

22    understand you have the right to an attorney that

23    represents only you and your interests, and is not

24    conflicted in any way with loyalty to anybody else?

25              THE DEFENDANT:  Yes, Your Honor, I do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  And do you understand the facts
 2    surrounding Ms. Sirignano's previous representation
 3    of the United States, by being an Assistant United
 4    States Attorney, and her involvement in anything
 5    related to SNM?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  All right.  Ms. Sirignano,
 8    anything you want to add to this?  I'm sure you've
 9    explained to Mr. Garcia your involvement.  But
10    anything you want to put on the record so that it's
11    clear that he understands what your involvement was?
12              MS. SIRIGNANO:  Your Honor, yes.  I -- Mr.
13    Adams advised him of what my involvement was, and I
14    did as well, in getting that pen register back in, I
15    think it was 2005.  And he understands what limited
16    involvement I had, and that I wasn't working in that
17    investigation in any way other than getting the
18    magistrate judge's signature on that trap and trace
19    order.  And while we don't believe there is a
20    conflict, he's agreed to waive any conflicts, after
21    me and Mr. Adams spoke with Mr. Garcia.
22              THE COURT:  All right.  Mr. Garcia, do you
23    understand that Ms. Sirignano, because she
24    represented the Government at one time, may have some
25    duties of loyalty stemming from her previous
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    representation of the United States?  There may be
 2    things that she worked on there that she can never
 3    reveal to anybody.  Do you understand that?
 4                THE DEFENDANT:  Yes.
 5                THE COURT:  And do you understand that Ms.
 6    Sirignano's duties to the United States may -- I
 7    can't say how they would -- but they may impact --
 8    something might come up about her representation of
 9    you; should she all of a sudden recall some pertinent
10    information that she learned during the time that she
11    represented the United States, and was sitting over
12    at that table.  Do you understand that could happen?
13                THE DEFENDANT:  Yes, I do.
14                THE COURT:  Do you understand that there is
15    a risk that Ms. Sirignano will have to choose at that
16    point, or some other point, between her duty of
17    loyalty to you and her duty to the United States, and
18    her duty to zealously advocate for you?  Do you
19    understand that that risk can pop up at some point?
20                THE DEFENDANT:  Yes.
21                THE COURT:  And if Ms. Sirignano chooses --
22    you know, something could come up with somebody that
23    cooperates, somebody that's testifying, she may be
24    required to cross-examine some people that she can't
25    predict at the present time, and her duty of loyalty
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to you, and then to the United States, may affect her
 2    performance.  Do you understand you run a risk there?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  Additionally, Ms. Sirignano's
 5    duties to the United States at some point may affect
 6    trial strategies, including arguments regarding
 7    relative culpability with all the people that's in
 8    the room.  There is maybe something that pops up
 9    that, all of a sudden is a problem, given that she
10    was an assistant United States Attorney at one time.
11    Do you understand that?
12              THE DEFENDANT:  Yes.
13              THE COURT:  I'm going to ask you to execute
14    a similar waiver.  So I'll ask you to get a copy of
15    that, Ms. Sirignano, and you and Mr. Adams -- and I'd
16    like particularly Mr. Adams to be the one that
17    advises Mr. Garcia, and goes over it with him.  And
18    then if y'all present it to the Court, and at that
19    time I'll probably ask you some additional questions,
20    Mr. Garcia, to make sure that you reviewed it.  But
21    do you understand how we're going to proceed here?
22              THE DEFENDANT:  Yes, I do.
23              THE COURT:  All right.  Knowing that a
24    conflict may arise in the future and the risks
25    associated with such a conflict, Mr. Garcia, do you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    still wish to waive any conflict Ms. Sirignano has
 2    and continue with Ms. Sirignano as your attorney?
 3              THE DEFENDANT:  Yes, I do.
 4              THE COURT:  All right.  And I understand
 5    the Government doesn't oppose Ms. Sirignano
 6    continuing to be an attorney on this case?
 7              MS. ARMIJO:  No, Your Honor.
 8              THE COURT:  All right.  Thank you, Mr.
 9    Garcia.
10              Ms. Sirignano.
11              MS. SIRIGNANO:  Thank you, Your Honor.
12              THE COURT:  One other question I want to
13    ask Mr. Castellano.  As I work on Mr. Lowry's issues,
14    does the United States think that Mr. Lowry should be
15    conflicted out of the case, or where are you on the
16    issue, now that we've explored it with now
17    evidentiary testimony and a record and those sort of
18    things?
19              MR. CASTELLANO:  Your Honor, I don't know
20    if I can say that we think he should be conflicted
21    off the case.  What we wanted to do was make a
22    record, make sure we had a clean record before
23    proceeding to trial in this matter.
24              THE COURT:  All right.  Fair enough.  Thank
25    you, Mr. Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              All right.  The next issue then -- and I'll
 2     accept the waiver after we complete the paperwork on
 3     it; make sure that Mr. Garcia has had a chance to
 4     think about it.  The same way with you, Mr. Baca.
 5     I'm inclined to accept your waiver as well.  But
 6     we'll nail that down after you've had a chance to
 7     look at the paperwork.
 8              On the -- Mr. Jewkes and Mr. Blackburn, on
 9     that issue, do we want to wait until Mr. Blackburn is
10     here, or do you want to proceed?
11              MR. DAVIDSON:  I think that would be
12     better, Your Honor.
13              THE COURT:  Do you want to wait?  Do you
14     agree with that, Mr. Jewkes?
15              MR. JEWKES:  Yes, sir, I do.
16              THE COURT:  All right.  So we'll wait until
17     Mr. Blackburn is here and then we can maybe make a
18     more robust record on that.  I still want you to be
19     the one that's primarily advising the defendant on
20     this.  But at the same time, it might make sense to
21     have Mr. Blackburn here.
22              MR. JEWKES:  We believe that will be
23     Wednesday.
24              THE COURT:  Is that when Mr. Blackburn is
25     going to be here?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. DAVIDSON:  Your Honor, I don't think
 2   he's going to be here today, tomorrow, or Wednesday.
 3   But if we go on to Thursday, he will be here.
 4            THE COURT:  Okay.  Well, let's see how it
 5   goes.  We probably won't get out of here without
 6   doing it.  So, if we look like we're going to wrap up
 7   things on Wednesday, I may go ahead and just do it.
 8            On the other hand, if it's something that
 9   we're going to be here on Thursday, maybe we can wait
10   till Thursday to do it.  Does that create any
11   problems for you, Mr. Jewkes?
12            MR. JEWKES:  No, problems, Your Honor.
13            THE COURT:  All right.  So we'll hold off
14   on that.
15            Ms. Wild, remind me, I didn't at the
16   beginning of the hearing say anything about who else
17   is on the phone.  I know that Ms. Fox-Young is on the
18   phone, Ms. Wild is on the phone.  Anyone else on the
19   phone?
20            MS. STRICKLAND:  This is Margaret
21   Strickland.  I'm on the phone.
22            THE COURT:  Okay.  Ms. Strickland, good
23   morning to you.
24            MS. HARBOUR-VALDEZ:  And our paralegal,
25   Raquel Rodriguez, is on the phone.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           MS. RODRIGUEZ:  Yes, Your Honor.  This is
 2   Raquel Rodriguez.  I'm on the line.
 3           THE COURT:  All right.  Good morning to
 4   you.
 5           All right.  I understand that the next
 6   issue we take up is Mr. Baca's motion to suppress
 7   coerced statements, and anticipated testimony of
 8   cooperating witnesses.  So this is an evidentiary
 9   hearing.  Do you want to make some preliminary
10   remarks, Mr. Lowry?  Ms. Duncan?
11           MS. DUNCAN:  I'll be very brief, Your
12   Honor.  One thing we discussed with the Government
13   this morning is we have two motions, 1325 and 1328.
14   One is the motion to suppress statements.  The other
15   is a motion to suppress for selective recordings.
16           THE COURT:  Do you want to take these up
17   together?
18           MS. DUNCAN:  I think so for the purposes of
19   witnesses, rather than calling people back.  So I'll
20   be arguing the motion to suppress coerced statements,
21   and Mr. Lowry will be arguing the motion to suppress
22   the selective recordings.
23           THE COURT:  All right.  Is that agreeable
24   to the Government?  Can we just take these two
25   motions up together?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MS. ARMIJO:  Yes, Your Honor.

2           THE COURT:  All right.  Anything you want

3    to say, then, in support of both motions?

4           MS. DUNCAN:  Your Honor, so I will argue on

5    the motion for the coerced statements.  And we

6    anticipate having testimony from Mr. Duran; also

7    Sergio Sapien, who is part of the STIU; Chris Cupit,

8    also STIU; and Edward Urtiaga, also STIU.

9           So the basis of our motion is, at the time

10   that Eric Duran decided to provide information to the

11   Government, he had incurred two disciplinary

12   infractions.  The first was possession of a shank,

13   which is a Grade A violation in the Department of

14   Corrections, and can result not only in criminal

15   charges, and in the State of New Mexico possession of

16   a shank by a prisoner is a second degree felony that

17   carries a presumptive sentence of nine years.  But it

18   also, as a Grade A violation, could result in the

19   loss of all of his good time and all of his

20   privileges.

21          A week later, he picks up a second level A

22   violation.  This time because he threatened to kill a

23   correctional officer, Edward Urtiaga, threatening to

24   go to his home, telling Officer Urtiaga that he knew

25   where he lived, knew what car he drove, and that he

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    was going to harm him.  Again, this was a serious
 2    violation that could result in a loss of all good
 3    time and privileges and also criminal prosecution.
 4              MR. BECK:  Your Honor, I don't want to
 5    interrupt, but Mr. Duran is in the room, and he will
 6    be a witness --
 7              MS. DUNCAN:  That's a good point.
 8              MR. BECK:  The rule to exclude is in force,
 9    so I --
10              MS. DUNCAN:  Thank you, Mr. Beck.  I
11    probably would reserve argument, Your Honor, until
12    Mr. Duran is no longer in the room.
13              THE COURT:  All right.  Thank you, Ms.
14    Duncan.
15              Anything the Government wants to say in
16    advance, or do you want to just go ahead and go to
17    testimony?
18              MR. CASTELLANO:  I think we can go to the
19    testimony, Your Honor.
20              If you'll remember, Agent Brusuelas, who
21    already testified, testified that she was contacted
22    before these incidents occurred.  So I'll just remind
23    the Court of that.  But I think we can continue with
24    the testimony.
25              THE COURT:  All right.  Before I do,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Mr. Jewkes, I'm going to have Ms. Standridge hand to

2  you, so that maybe we're a little bit ahead of the

3  game, a form of waiver I brought down from

4  Albuquerque that you can review with Mr. Sanchez.  I

5  understood you were going to waive any conflict?

6          MR. JEWKES:  That is correct, Your Honor.

7          THE COURT:  So that's the form -- you might

8  take a look at it.  I'm not wedded to it, but I think

9  something like that, that you review with Mr. Sanchez

10 and he sign, and I can discuss it when we do a

11 colloquy with him later in the week.  All right.

12         All right.  Ms. Armijo, Mr. Beck, if y'all

13 want to call your first witness.

14         MS. ARMIJO:  We would call Eric Duran.

15         THE COURT:  All right.  Mr. Duran, if

16 you'll come up and take the stand.  Because we are

17 doing a different proceeding here, I'm going to have

18 Ms. Standridge swear you in.

19               ERIC PRESTON DURAN,

20      after having been first duly sworn under oath,

21      was questioned and testified as follows:

22               DIRECT EXAMINATION

23         THE CLERK:  Please be seated, and state

24 your name for the record.

25         THE WITNESS:  Eric Duran.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Mr. Duran.  Ms. Armijo.
 2              MS. ARMIJO:  Thank you, Your Honor.
 3    BY MS. ARMIJO:
 4         Q.   Mr. Duran, just for the record, how do you
 5    spell your name?
 6         A.   E-R-I-C.  D-U-R-A-N.
 7         Q.   And Mr. Duran, I'm going to go back a
 8    little bit in time for you.  Are you aware -- let me
 9    ask a couple background questions.  Are you aware of
10    what the SNM is?
11         A.   Correct.
12         Q.   And what is it?
13         A.   Prison gang.
14         Q.   Are you a member of that prison gang?
15         A.   Yes -- was.
16         Q.   When did you become a member?
17         A.   2005.
18         Q.   Now, I'm going to jump forward, and to
19    approximately 2014, 2015 -- well, let's start 2014.
20    Were you still a member at that time?
21         A.   Yes.
22         Q.   At some point in time, did you decide to no
23    longer be an active SNM Gang member?
24         A.   Yes.
25         Q.   Can you tell us about when that you made
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that decision?
 2        A.   Prior to getting a report.
 3        Q.   Okay.
 4        A.   February -- we'll say February 2015.
 5        Q.   Okay.  So was it prior to February of 2015?
 6        A.   Correct.
 7        Q.   And what happened in February 2015 that
 8   we're using that as a basis for time decisions?
 9        A.   Nothing really happened.  I just got tired
10   of all the different chaos within the gang, and was
11   just deciding on who I was going to go to with the
12   information I had.
13        Q.   Okay.  I guess my question -- it was
14   probably a bad question -- was, you say prior to
15   February of 2015.  Did something happen in February
16   of 2015, that you're using that start label that,
17   before this, I decided I was not going to be an SNM
18   Gang member?
19        A.   Did something happen?
20        Q.   Yes.  What happened in 2015, February?
21   What happened with you and SNM, if anything?
22        A.   Nothing really happened, no, nothing.
23        Q.   Did you have some disciplinary issues that
24   occurred in February of 2015?
25        A.   Disciplinary issues arose, but it wasn't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the reason of my cooperation.
 2         Q.   Okay.  So, in February 2015, did you have
 3    some disciplinary issues?
 4         A.   I got a disciplinary report -- well,
 5    actually, I didn't get the disciplinary report before
 6    I came forward, no.
 7         Q.   Okay.  But were there some things that
 8    occurred in February of 2015, that later on you
 9    became aware you were facing disciplinary charges?
10         A.   A shank, yeah.
11         Q.   Okay.  Now, do you remember meeting with
12    the FBI at some point in February of 2015?
13         A.   Right, I did.
14         Q.   Do you remember that agent's name or if it
15    was a man or a woman?
16         A.   It was a woman.
17         Q.   Do you even remember her name?
18         A.   Katie.
19         Q.   Was that the first time that you had spoken
20    to an FBI agent about potential cooperation?
21         A.   Yes.
22         Q.   Prior to that, did you ever speak to
23    anybody about leaving the gang or cooperating?
24         A.   To STIU.
25         Q.   Okay.  What is STIU?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          A.    Security Threat Intelligence Unit.
2          Q.    And where, at this time period, are you
3    being housed within the Corrections Department?
4          A.    PNM 3A pod.
5          Q.    Is that the North PNM or the South PNM?
6          A.    North.
7          Q.    And who did you initially speak to about
8    potential cooperation?
9          A.    I initially spoke to Adam Vigil, and asked
10   him to speak to Sapien.  And that was it.  Just
11   Sapien, and Cupit came with him.
12         Q.    Okay.  You mentioned a couple of names.
13   Who is Adam Vigil?
14         A.    Adam Vigil is the gang coordinator, the
15   STIU coordinator, at the North.
16         Q.    And did you have -- if you recall, what
17   were the circumstances of your contact with
18   Mr. Vigil?  I mean, how was it that you came to talk
19   to him?
20         A.    During the interviews -- at this point, I
21   had no knowledge that they had even found a shank in
22   my cell.  And I had already requested to talk to
23   Sapien.
24         Q.    Okay.  And I understand that.  But I'm just
25   trying to get to what the circumstances were with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1    Mr. Vigil that you had a conversation.  Do they
 2    routinely come and talk to SNM members and interview
 3    you?
 4         A.   Yeah.  When they do shakedowns, it's their
 5    routine that they usually interview us before they
 6    put us back in our cell.
 7         Q.   Okay.  So at some point you had a
 8    conversation with Mr. Vigil?
 9         A.   Correct.
10         Q.   And who was it that you requested to speak
11    to?
12         A.   Sapien.
13         Q.   Who is Sapien?
14         A.   He's a Captain of STIU at the North
15    facility.
16         Q.   And why is it that you chose Sapien, as
17    opposed to Mr. Vigil?
18         A.   I just felt like the information that I was
19    going to give him was -- he was trustworthy.  And I
20    didn't really trust nobody else.
21         Q.   Okay.  Is it fair to say that you trusted
22    Captain Sapien, and that's the person that you wanted
23    to deal with?
24         A.   Correct.
25         Q.   Okay.  And at some point, did you talk to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Captain Sapien?

 2         A.   Probably like an hour later, after

 3    requesting him.

 4         Q.   Okay.  And you indicated that -- you said

 5    Cupit was there?

 6         A.   Cupit came with him, yes.

 7         Q.   And who is Cupit?

 8         A.   Cupit is the Sergeant of the STIU.

 9         Q.   And what did you inform them?

10         A.   I informed them that I had information and

11    I wanted to talk to the FBI.

12         Q.   And why did you make that decision?

13         A.   Because I felt like the information I had

14    was beyond their control.

15         Q.   Okay.  I guess -- what was the basis for

16    you to decide to cooperate?

17         A.   I had been, you know, over in transition,

18    deciding about how I was going to go about

19    cooperating, and do it in a way that would keep me

20    safe, and at the same time, work with someone that I

21    could trust within the facility.

22         Q.   Now, you mentioned that you were thinking

23    about ways to keep you safe.  Was that a concern of

24    yours?

25         A.   It was.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.    And why is that?
 2        A.    Because the SNM is known to, you know,
 3   murder people for paperwork, or telling.
 4        Q.    What is paperwork?
 5        A.    Paperwork is information that's given by an
 6   individual that's against somebody else.
 7        Q.    Cooperation?
 8        A.    Cooperation.
 9        Q.    So now, when you made that decision, and
10   you spoke to Captain Sapien, was that before the
11   shakedown in February of 2015, that a shank was
12   found?
13        A.    That was actually the moment I decided
14   would be the best time.  Since everybody was being
15   interviewed, you know, everybody was talking to the
16   STIU, so there wouldn't be no -- like no one would
17   really raise a flag, if I was to do what I did.
18        Q.    Okay.  Had you made the decision before
19   then, to talk to them?
20        A.    I did.  I had already wrote letters to
21   Sapien before shakedowns had even occurred.
22        Q.    Okay.  Let's talk a little bit about that.
23   You wrote a letter to Sapien?
24        A.    Right.
25        Q.    Okay.  And why did you write him a letter?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   Two individuals were planning on attacking

2   another individual within the gang.  And I just

3   didn't want to be involved in it no more.

4       Q.   Okay.  And so did you write him a letter

5   about that?

6       A.   I did.  But I hadn't sent it at that time,

7   because we got shooken down, like the day -- the next

8   day.

9       Q.   So after you indicated that you wanted to

10  cooperate, was it after that that you spoke to FBI

11  Agent Katie Brusuelas?

12      A.   When I spoke to Sapien, then a week later

13  maybe they took me to see the FBI.

14      Q.   So -- and when you spoke to the FBI, were

15  you still the same mindset, that you wanted to

16  cooperate?

17      A.   I was, fully.

18      Q.   Did anybody make any threats against you to

19  get you to cooperate with the government?  And when I

20  say "government," I just mean in general, either FBI

21  or Corrections, just any type of law enforcement?

22  Did anybody make any threats against you?

23      A.   No.

24      Q.   Were you coerced in any way?

25      A.   No.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Were you feeling any sort of duress, like

2    feeling that you had to do this for any reason, and

3    you felt pressure to do it, other than your own wish

4    to do it?

5    A.   No.

6    Q.   Now, at some point, as part of your

7    cooperation, did you agree -- and I guess I should

8    make this clear -- at this time, were you an inmate

9    within the New Mexico Corrections Department?

10   A.   Correct.

11   Q.   And up from 2014, through all of 2015, were

12   you an inmate?

13   A.   Correct.

14   Q.   At some point, for part of your

15   cooperation, did you agree to make recordings of

16   other SNM Gang members?

17   A.   Correct.

18   Q.   And what was the purpose of the recordings?

19   Do you recall?

20   A.   To review information of plans they had to

21   assassinate the Secretary of Corrections and Dwayne

22   Santistevan, the head coordinator of STIU.

23   Q.   And how were you aware of that conspiracy?

24   A.   I received plans in 2013 by Mr. Baca to do

25   so.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1         Q.    Okay, to do what?
 2         A.    To assassinate the Secretary of
 3    Corrections.
 4         Q.    Now, at some point in time, were you placed
 5    next to -- I'm going to be specific.  At some point
 6    in 2015, were you placed next to Mr. Baca?
 7         A.    Yes.
 8         Q.    And did you use a recording device that was
 9    provided to you to record conversations?
10         A.    I used a recording device and a cellphone.
11         Q.    Okay.  I was going to talk about the
12    cellphone next.  So you were given a recording device
13    to use?
14         A.    Correct.
15         Q.    And I don't want you to give specifics of
16    what it looked like, but can you at least tell us
17    whether or not it was a recording device that turned
18    off and on?
19         A.    It was a recording device that turned off
20    and on, and worked.
21         Q.    And who had control of that?
22         A.    I did.
23         Q.    Now, how was it powered?  In other words,
24    was it electrical, you plugged it into a wall?  Or
25    was it battery operated?  How is it that it worked?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1        A.    It was battery operated.

2        Q.    Okay.  And were you given any instructions

3    with the recording device, as far as keeping it

4    charged up, so to speak, for usage?

5        A.    That was really no way to keep it charged

6    up, just not keeping it on all the time.

7        Q.    Were there any steps that you took in order

8    to preserve battery life?

9        A.    I just -- I mean, I played it when it

10   needed to be played.

11       Q.    Okay.  So it wasn't turned on all the time?

12       A.    It wasn't on when they were telling me

13   their life story, about how they met up with some

14   girl at a club.

15       Q.    Okay.  And so, when you say "they," did you

16   use it on more than one person, on other people other

17   than Mr. Baca?

18       A.    Yes.

19       Q.    And when you were using it, where were you?

20       A.    Under the bunk, under the bed.

21       Q.    In your cell?

22       A.    Correct.

23       Q.    And when you mentioned that you -- and I'm

24   going to be specific about Mr. Baca, because this is

25   his motion.  When you were using it with Mr. Baca,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   where was he?

2        A.   On the other side of the wall.

3        Q.   And could you talk to each other?

4        A.   Correct.

5        Q.   And were all of your conversations with Mr.

6   Baca recorded?

7        A.   The majority of my conversations with Mr.

8   Baca were recorded, because he spoke relevant

9   information.

10       Q.   Okay.  What decision, if any, for you to

11  turn on or to not turn on a recording device with Mr.

12  Baca was it that you made?

13       A.   When he strayed from conversation of

14  relevant information.

15       Q.   Can you give us an example of that?

16       A.   He could be talking about the hit, and then

17  he can go into talking about his mom.

18       Q.   And, at any point in time -- you said that

19  the majority of the conversations with Mr. Baca was

20  recorded; is that correct?

21       A.   Correct.

22       Q.   Can you think of any conversation with Mr.

23  Baca that was not recorded, that was not, as you

24  would put it about his family and things like that?

25       A.   I don't recall.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1        Q.    Now, you mentioned that you also had a
 2   cellphone.
 3        A.    Correct.
 4        Q.    And who provided you with that cellphone?
 5        A.    The FBI.
 6        Q.    And were you aware that that cellphone had
 7   any sort of -- well, what was your understanding of
 8   the cellphone as far as recordings?
 9        A.    The cellphone was recording every time I
10   dialed a phone number.
11        Q.    Okay.  And what about text messages?
12        A.    Same thing.
13        Q.    And were you given any instructions, as far
14   as letting other people use that?
15        A.    It was just for my use.
16        Q.    And where would you use it?
17        A.    Where would I -- oh, I would use it in my
18   cell.
19        Q.    And did you have conversations with people
20   obviously not in Corrections?
21        A.    Correct.
22        Q.    At any point in time, did you also have
23   conversations with people, and include Mr. Baca in on
24   those conversations?
25        A.    Correct.  And during those conversations,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    even though I knew the cellphone was recording, I

2    also used the device that was given to me to record

3    the conversations.

4         Q.   All right.  So in the sense, there may be

5    times when Mr. Baca was being double recorded?

6         A.   He was being double recorded on every

7    device I had.

8         Q.   Now, did you at some point -- for the

9    device recordings, did the batteries have to be

10   changed out?

11        A.   Yeah.

12        Q.   Now, was that something that you could just

13   go, Hey, correctional officer, I need to get

14   batteries for my recording device?

15        A.   No.

16        Q.   Okay.  What sort of -- was that something

17   you were in control of, or did people come to you?

18        A.   Most of the time I would call them, and

19   they would just come switch out devices.

20        Q.   And when you say you would call them, who

21   would you call?

22        A.   I would call STIU Sapien.

23        Q.   Okay.  And the same Captain Sapien that you

24   were talking about earlier?

25        A.   Correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Is it fair to say that very few people in

2  Corrections knew that you had a recording device?

3      A.   Yeah, very few.

4           MS. ARMIJO:  If I may just have a moment?

5           THE COURT:  You may.

6      Q.   Finally, do you know if you received any

7  instructions from anybody, either FBI or STIU, as far

8  as what to record or, you know, whether or not you

9  should save battery life?  What were the instructions

10  that were given to you?

11      A.   I was given a device one time, and I had

12  left it on and continued to record, and it died.  So

13  I was ending up not able to pick up a lot of the

14  information that I was supposed to be picking up

15  because the battery died.  And that's when I was told

16  by the FBI to try to conserve battery life, to obtain

17  the proper information.

18           MS. ARMIJO:  All right.  Thank you.  I pass

19  the witness.

20           THE COURT:  Thank you, Ms. Armijo.

21           Mr. Lowry, Ms. Duncan, do you want to

22  cross-examine Mr. Duran?

23                      EXAMINATION

24  BY MS. DUNCAN:

25      Q.   You testified on direct that you were a

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1     member of the SNM beginning in 2005; correct?

2         A.    Correct.

3         Q.    You previously denied being a member of the

4     SNM; correct?

5         A.    I denied being a member of SNM?

6         Q.    Yes.

7         A.    I don't recall that.

8         Q.    Do you recall having an interview with the

9     FBI on February 19th of 2015?

10        A.    I do.

11        Q.    And do you remember them asking you whether

12    or not you were a member of the SNM?

13        A.    No.

14        Q.    If I were to show you a partial transcript

15    of that interview, would that refresh your

16    recollection?

17        A.    It may.

18            MS. DUNCAN:  Your Honor, may I approach?

19    This is Government's Exhibit 1.

20            THE COURT:  You may.

21        Q.    If you could look at the first page,

22    it's -- I'm looking at page 1 of that transcript.

23            THE COURT:  Let me ask while he's reviewing

24    it, the Government didn't have any exhibits for this.

25    So when you say "Government's Exhibit 1" --



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. ARMIJO:  Your Honor, I believe we had
 2   FBI Agent Katie Brusuelas testify previously in this
 3   hearing, and it was admitted during that hearing.
 4              THE COURT:  Well, that was for a different
 5   motion; correct?
 6              MS. ARMIJO:  No.  Same motion, Your Honor.
 7   We started that because she was here in town, so we
 8   started that when we last met before Christmas.
 9              THE COURT:  All right.
10              MS. ARMIJO:  She testified then.  And I
11   believe we had started it at Government's Exhibit 1
12   at that hearing.
13              THE COURT:  All right.
14   BY MS. DUNCAN:
15       Q.   Have you had an opportunity to review that
16   transcript?
17       A.   Yeah.
18       Q.   Does that refresh your recollection about
19   that conversation?
20       A.   No, it doesn't.
21       Q.   If, in 2015, you told the FBI that you were
22   not a member of the SNM, that would have been a lie;
23   correct?
24              THE COURT:  Well, I'll make the
25   determination whether it's a lie or not.  You can ask
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    if that's not his recollection or those sort of
 2    things.
 3         Q.    So you're now testifying that you were
 4    member of the SNM in 2015; correct?
 5         A.    Excuse me?
 6         Q.    That you were a member of the SNM in 2015?
 7         A.    Correct.
 8         Q.    So, if you told someone that you were not a
 9    member of the SNM in 2015, that would not be true?
10         A.    If I would have, yes.
11         Q.    And in February of 2015, you were being
12    interviewed by FBI agents; correct?
13         A.    Correct.
14         Q.    Federal law enforcement officers; correct?
15         A.    Correct.
16         Q.    Now, you testified about the disciplinary
17    issues that arose in 2015; correct?
18         A.    Correct.
19         Q.    And you told -- when the FBI asked you why
20    you were cooperating, you told them you were
21    cooperating to give back to the community; correct?
22         A.    Correct.
23         Q.    And you told them that you were not in
24    trouble at the time; correct?
25         A.    Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          Q.   That most people who cooperate are in
 2     trouble, but that wasn't you, you were doing it out
 3     of the goodness of your heart; correct?
 4          A.   Correct.
 5          Q.   But that was not true; correct?
 6          A.   No.
 7          Q.   February 19th of 2015, you had picked up
 8     two disciplinary write-ups; correct?
 9          A.   At that time I didn't have knowledge that I
10     had reports.
11          Q.   You knew on February 19th of 2015 that they
12     had found a shank in your cell; correct?
13          A.   Correct.
14          Q.   And you knew that it was a violation of the
15     Department of Corrections' regulations for you to
16     have a shank in your cell; correct?
17          A.   Correct.
18          Q.   And that it was a Level A violation;
19     correct?
20          A.   Correct.
21          Q.   And it was also a criminal offense;
22     correct?
23          A.   Correct.
24          Q.   Because you had previously been convicted
25     of possessing a shank?

SANTA FE OFFICE                                                         MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                      e-mail: info@litsupport.com

```
 1        A.    Correct.
 2        Q.    And you understood that being caught with a
 3   shank meant that you could lose your good time?
 4        A.    Correct.
 5        Q.    You could lose your privileges?
 6        A.    Correct.
 7        Q.    And be put in restrictive housing?
 8        A.    Where I already was, correct.
 9        Q.    The day before you had your interview with
10   the FBI, you had been accused of threatening a
11   correctional officer?
12        A.    Correct.
13        Q.    Edward Urtiaga?
14        A.    Correct.
15        Q.    And you were aware that threatening a
16   correctional officer is a disciplinary violation?
17        A.    Correct.
18        Q.    A Level A violation at that?
19        A.    Correct.
20        Q.    So you could lose all your good time for
21   that?
22        A.    Correct.
23        Q.    You could be put in restrictive housing;
24   correct?
25        A.    Correct.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    And lose all your privileges?
 2        A.    Correct.
 3        Q.    And, in fact, you were ultimately
 4   disciplined for that; correct?
 5        A.    For what?
 6        Q.    For threatening Officer Urtiaga?
 7        A.    Correct.
 8        Q.    When you spoke to Adam Vigil, you said that
 9   you did that following the interviews that were done
10   after the shakedown; correct?
11        A.    Correct.
12        Q.    Then you spoke with Mr. Sapien within an
13   hour following that?
14        A.    Correct.
15        Q.    At that time, had you written the letter to
16   Mr. Sapien?
17        A.    I did.
18        Q.    And did you provide him a copy of that
19   letter?
20        A.    No.  I'd didn't have to because I spoke to
21   him.
22        Q.    So what did you do with the letter?
23        A.    Threw it away.
24        Q.    When did you throw it away?
25        A.    When I went back to my cell after I spoke
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to Sapien.

 2         Q.    Did you also write a letter to the FBI?

 3         A.    No.

 4         Q.    So there was only one letter?

 5         A.    Correct.

 6         Q.    A letter that you gave to Sapien.

 7               Did you talk to anyone else about your

 8    decision to cooperate with the Government?

 9         A.    No.

10         Q.    Did you discuss it with Jerry Armenta?

11         A.    No.

12         Q.    Did you discuss it with Grace Duran?

13         A.    Eventually.

14         Q.    When you say "eventually," when is that?

15         A.    Maybe like months and months after I was

16    already cooperating.

17         Q.    So tell us about the conversation you had

18    with Sergio Sapien?

19         A.    I just revealed to him the plans that Mr.

20    Baca had to assassinate Mr. Marcantel and

21    Santistevan, and everything that had to do with the

22    murder that happened in Las Cruces.

23         Q.    Now, when you were asked about whether or

24    not Mr. Baca had planned to kill Gregg Marcantel, in

25    February of 2015, you denied that that was the plan;
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   correct?

 2        A.    I what?

 3        Q.    You denied that Mr. Baca had planned to

 4   kill Gregg Marcantel; correct?

 5        A.    No.

 6        Q.    Let me show you -- I'm going back to

 7   Government's Exhibit 1.

 8             MS. DUNCAN:  Your Honor, I have a different

 9   transcript of the same interview that we had done by

10   Bean & Associates.  I've given a copy to the

11   Government.  At this time, I'd like to introduce this

12   as an exhibit.

13             THE COURT:  Is this a duplicate of 1?

14             MS. DUNCAN:  It's not, Your Honor.  So 1 is

15   a partial transcript of this interview, and we had

16   the entire interview transcribed.

17             THE COURT:  Any objection, Ms. Armijo?

18             MS. ARMIJO:  We're not objecting to it.

19             THE COURT:  All right.  Anybody else?

20             All right.  Then Mr. Baca's -- Anthony

21   Baca's exhibit -- is that going to be B?

22             MS. DUNCAN:  Exhibit B, Your Honor.

23             THE COURT:  -- Exhibit B will be admitted

24   into evidence.

25   BY MS. DUNCAN:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Q.   If I were to show you a transcript of the

2    conversation that you had with the FBI on February

3    19, 2015, might it refresh your recollection of what

4    you said about the hit on Gregg Marcantel?

5    A.   Show it to me, yeah.

6         MS. DUNCAN:   May I approach, Your Honor?

7         THE COURT:   You may.

8    Q.   I'm showing you page 45 of Anthony Baca

9    Exhibit B.  Let us know when you're done reading it.

10   Did that refresh your recollection of what you said

11   about the alleged hit?

12   A.   Yes.  Just misunderstood what I was saying.

13   What I meant was Mr. Baca had more hate towards

14   Santistevan than Marcantel; not that he didn't intend

15   to hit Marcantel.

16   Q.   Let's put it on the monitor so everyone can

17   see.

18        THE COURT:   This is Exhibit B?

19        MS. DUNCAN:   This is Exhibit B, Your Honor,

20   page 45.

21   Q.   So the Unidentified Female says, "And

22   Marcantel, or the hit was only on Santistevan?

23        And you answered, "No, it was just on

24   Santistevan.  But I'm saying he hates Santistevan

25   more than he hates Marcantel."  Correct?  I'm looking

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                          1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   here.
 2            THE COURT:  Doesn't sound good.  Is that
 3   the noise to --
 4            MR. LOWRY:  A cellphone.
 5            THE COURT:  Oh, that's just a cellphone.
 6            MS. BHALLA:  I think it's his wife's
 7   number, Your Honor.
 8            THE COURT:  No comment.
 9   BY MS. DUNCAN:
10       Q.   Did I read that correctly, Mr. Duran?
11       A.   I can see it correctly, yeah.  It's not
12   what I said, though -- that's not what I meant.
13       Q.   So it's what you said; it's just not what
14   you meant?
15       A.   No.
16       Q.   So you're denying that you said that?
17       A.   The way they put it, it might have been
18   said like that.  But what I meant was the hit was on
19   both of them, but he had more hate towards
20   Santistevan than Marcantel.
21       Q.   So when someone asks you -- I'm not going
22   to argue.  I take that back.
23            In September or early -- yes, September of
24   2014, you filed a lawsuit against Gregg Marcantel;
25   correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Correct.
 2        Q.    And you filed the lawsuit complaining of
 3   the conditions of your confinement?
 4        A.    Correct.
 5        Q.    That you were under lockdown?
 6        A.    Correct.
 7        Q.    And you were being denied visits with your
 8   family?
 9        A.    Correct.
10        Q.    Phone calls with your family?
11        A.    Correct.
12        Q.    And commissary?
13        A.    Correct.
14        Q.    You also alleged that you were in solitary
15   confinement?
16        A.    Correct.
17        Q.    And that that was having a detrimental
18   effect on your health?
19        A.    Correct.
20        Q.    Is that true?  At the time, were you
21   suffering detrimental effects of solitary
22   confinement?
23        A.    Correct.
24        Q.    Tell us about that.  What does that mean?
25        A.    I believe that was an SNM act.  I wasn't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the only participant in that suit.

2         Q.   So the SNM put you into solitary

3    confinement?

4         A.   The SNM filed together.

5         Q.   You were the only plaintiff, though.

6         A.   I was the only plaintiff?

7         Q.   Correct.

8         A.   Is that -- yeah, if that's what it says,

9    then I was.

10        Q.   And the conditions of confinement at the

11   time were so intolerable that you filed this

12   complaint; is that right?

13        A.   Correct.

14        Q.   And you were in lockdown; it was a

15   disciplinary status for you and other SNM members

16   following -- or alleged SNM members -- following the

17   Molina murder; correct?

18        A.   Correct.

19        Q.   So being on disciplinary status meant that

20   the conditions of your confinement worsened?

21        A.   I wasn't on disciplinary status.

22        Q.   Well, so pending the investigation, you

23   were on lockdown; correct?

24        A.   Correct.

25        Q.   And if you were on prehearing, like

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                        1-800-669-9492



```
 1    detention for a disciplinary infraction, you'd also
 2    be on lockdown?
 3         A.   Correct.
 4         Q.   And if you were found to have committed a
 5    major violation, then those conditions might continue
 6    for you?
 7         A.   And I wasn't on none of that.
 8         Q.   You were on prehearing detention --
 9         A.   I was just on lockdown.
10         Q.   In 2015, February of 2015, you were on
11    prehearing detention for the shank; correct?
12         A.   Correct.
13         Q.   And that was -- at the time of the
14    altercation between you and Mr. Urtiaga, you were on
15    prehearing detention; correct?
16         A.   Correct.
17         Q.   And you had lost some of your privileges?
18         A.   Correct.
19         Q.   You had lost your personal property;
20    correct?
21         A.   Correct.
22         Q.   You didn't -- you had limited visits;
23    correct?
24         A.   Correct.
25         Q.   And limited phone calls?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Correct.
 2        Q.   And, in fact, you were trying to collect
 3   pin numbers of other inmates so that you could call
 4   your family?
 5        A.   I don't recall.
 6        Q.   With respect to the recordings, you said
 7   that the recording devices were battery operated;
 8   correct?
 9        A.   Correct.
10        Q.   What kind of batteries did they use?
11        A.   Triple A.
12        Q.   Were you allowed to have triple As while
13   you were in prison?
14        A.   Not while we were on PHD, no.
15        Q.   Once you were out of PHD, could you have
16   triple A batteries?
17        A.   Correct.
18        Q.   They weren't contraband?
19        A.   Correct.
20        Q.   Did you ever ask for replacement batteries
21   for the recording device?
22        A.   No.
23        Q.   So I know you originally were recording
24   under the instruction of Ms. Brusuelas in early 2015,
25   right?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1          A.    Correct.

 2          Q.    And then Mr. Acee took over in August of

 3     2015?

 4          A.    Correct.

 5          Q.    What conversations did you have with Mr.

 6     Acee about what to record?

 7          A.    None.

 8          Q.    So he left what you should record

 9     completely to your discretion?

10          A.    Acee's information, yeah.

11          Q.    Did he tell you what information he wanted?

12          A.    Yeah, he told me get the information of the

13     hit.

14          Q.    Of which hit?

15          A.    On Marcantel.

16          Q.    So that was the only thing that you were

17     supposed to get information about?

18          A.    All the information.

19          Q.    What is all information?

20          A.    On the SNM.

21          Q.    And how did you get Mr. Baca talking on the

22     recordings?

23          A.    I didn't get him to talk anyway.  He

24     talked, he talked.

25          Q.    Did you talk with Mr. Acee about how you
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   would get Mr. Baca to talk?
 2        A.   No.
 3        Q.   What about Joseph Sainato?
 4        A.   No.
 5        Q.   And who is Joseph Sainato?
 6        A.   I don't know.  What's his nickname?
 7        Q.   I don't know.  Joseph Sainato, my
 8   understanding, is an FBI agent.  You've never met Mr.
 9   Sainato?
10        A.   Oh, Joe?  Yeah.
11        Q.   Did you have any conversations with Joe
12   about the recordings?
13        A.   Yeah, I had conversations with Joe about
14   the recordings, about the clarity of it.
15        Q.   And what about the topics that you were to
16   cover with Mr. Baca?
17        A.   No.
18        Q.   Did Mr. Sainato or Mr. Acee give you
19   instructions on how to use the device?
20        A.   I believe Sapien gave me instructions how
21   to use it.
22        Q.   And what instructions did Sapien give you?
23        A.   On and off.
24        Q.   Did they talk to you about how you would
25   know if the battery ran out?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No.
 2        Q.   How were the devices picked up from you and
 3   given back to you?  So let's say this is the first
 4   time you got a device, who brought it to you?
 5        A.   They would go in my cell and shake it down
 6   and put one in there, or bring me laundry.  Just a
 7   variety of ways.
 8        Q.   Who would do that?
 9        A.   STIU.
10        Q.   Who within STIU?
11        A.   Cupit and Sapien, or other people that
12   worked there.
13        Q.   How many times did they bring you a
14   recorder?
15        A.   Probably like every three days.
16        Q.   For what period of time?
17        A.   Depending on how much whoever talked.  If
18   it was a lot of information, and I felt like I
19   recorded a lot of information, I felt like the
20   battery was going to die, I got a new one.
21        Q.   I guess what I'm asking you is how many
22   times did they come and change out the recording
23   device?
24        A.   Several.
25        Q.   So less than 10?  More than 10?
```

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                               1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                         e-mail: info@litsupport.com

```
 1        A.   More than 10.

 2        Q.   Less than 20?  More than 20?

 3        A.   More than 20.

 4        Q.   Less than 30?  More than 30?

 5        A.   A lot.

 6        Q.   Less than --

 7        A.   I don't recall.  I did this for months.  So

 8   we could say more than 20.

 9        Q.   So more than 20 --

10        A.   Could be 29.

11        Q.   And you said over a period of months.  Can

12   you remember what period you were making these

13   recordings?

14        A.   From February of 2015, all the way till

15   December of 2015; December 3 to be exact.

16        Q.   You said that the majority of the

17   conversations you had with Mr. Baca were recorded;

18   correct?

19        A.   Correct.

20        Q.   Did you record every conversation you had

21   with Mr. Baca about Dwayne Santistevan?

22        A.   Yes.  I mean, some of it I missed because I

23   didn't have the recorder.

24        Q.   So there were periods of time when you did

25   not have a recording device?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.
 2        Q.    Which periods of time would that be?
 3        A.    That would be a grace point for your
 4   defendant -- excuse me -- but --
 5              MS. SIRIGNANO:  I'm sorry, I can't hear
 6   what you're saying.
 7        Q.    What period of time?  I'm asking you for a
 8   month?
 9        A.    No, maybe like a day.
10        Q.    So do you have any recollection of a
11   conversation you had with Anthony Baca about Dwayne
12   Santistevan that you did not record?
13        A.    The majority of it I recorded.
14        Q.    That's not my question.  I'm asking you do
15   you have a recollection today, as you sit there, of a
16   conversation you had with Anthony Baca about Dwayne
17   Santistevan that is not recorded?
18        A.    Correct.
19        Q.    You have no memory; that correct?
20        A.    I have a memory what he had said that I
21   didn't get to record.
22        Q.    So what do you remember?
23        A.    I remember he said that he sent a kite from
24   Arizona to "Baby G" in Las Cruces, and told him to
25   hit Marcantel or Santistevan if they ever went into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the pod.

2       Q.   When did you have that conversation with

3   him?

4       A.   When he first got to the facility.

5       Q.   And why didn't you record it?

6       A.   Because I didn't have a device.

7       Q.   How soon after that conversation did you

8   get the device?

9       A.   Maybe the next day.  I had the cellphone

10  but I couldn't record it.

11      Q.   You couldn't use the cellphone to record

12  the conversation?

13      A.   Only if I called somebody.

14      Q.   Is that the only conversation that you

15  recall having with Mr. Baca about Santistevan that

16  wasn't recorded?

17      A.   Correct.

18      Q.   What about conversations you had with Mr.

19  Baca about Gregg Marcantel?

20      A.   What about them?

21      Q.   Were there any conversations you had with

22  him that you didn't record?

23      A.   No.  The majority of them I recorded.

24      Q.   Well, there is a difference between a

25  majority and no --

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1        A.   Almost all.
2        Q.   Do you recall any conversation that you had
3   with him about Dwayne or Mr. Marcantel that wasn't
4   recorded?
5        A.   No.
6        Q.   How about the same kind of question with
7   respect to Javier Molina?  Were all the conversations
8   you had with Anthony Baca regarding Molina recorded?
9        A.   Some of them were, due to me not having a
10  device.
11       Q.   So do you have a recollection of any
12  specific conversations about Molina that were not
13  recorded?
14       A.   I had conversations about how Mr. Baca was
15  upset that "Lazy" and -- "Lazy" didn't get Molina
16  hit.
17       Q.   And did you not record that conversation?
18       A.   I did not record that.  I did not record
19  that Mr. Baca was upset that "Dan Dan" and "Cyclone"
20  didn't get hit.  And those were both orders that he
21  gave to "Lazy."
22       Q.   And why did you not record those
23  conversations?
24       A.   I didn't have a device.
25       Q.   When did those conversations take place?
```

SANTA FE OFFICE                                                                MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492
                                                                          1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1        A.   In between device switch-outs.
 2        Q.   So how much time would lapse between you
 3   giving the device to STIU and them bringing the
 4   device back?
 5        A.   Sometimes they wouldn't bring it back,
 6   because they had devices in other places.  So I had
 7   to wait sometimes.
 8        Q.   So how --
 9        A.   I would give them a device.  They would
10   download the information and bring back the device.
11        Q.   So they would -- you would give them the
12   device, and then there would be a lapse of time, and
13   they would bring you another device?
14        A.   Yes.  Not a far lapse, but still a lapse of
15   time.
16        Q.   What's the biggest lapse of time between
17   you giving them --
18        A.   A day.
19        Q.   A day.  Is that typical or is that long?
20        A.   It was long to me.
21        Q.   So when they did the other switch-out, was
22   it faster than a day?
23        A.   Most of the time it was just a hand-off.
24        Q.   So a hand-off meaning you would give them
25   the old device and they would give you the new
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    device?
 2         A.   Correct.
 3         Q.   Which was more common to do, a hand-off or
 4    for you to give them a device and them to bring
 5    another device later?
 6         A.   Well, I gave them the device; they would
 7    give it to Joe, and he would give them a device to
 8    give back to me.  So sometimes it was an hour.
 9         Q.   And where were you when you had this
10    conversation with Mr. Baca that you did not record?
11         A.   In my cell.
12         Q.   Do you recall any other conversations that
13    you did not record regarding Molina?
14         A.   No.  Are you talking about at this time, or
15    period?  Like all around?  Because I had several
16    conversations with him before I even talked to the
17    FBI.  So what --
18         Q.   I'm asking you, during the period of time
19    that you were recording Mr. Baca.
20         A.   No.
21         Q.   When did you first meet Mr. Baca?
22         A.   I first met Mr. Baca in -- here in
23    Southern.
24         Q.   In what year?
25         A.   2013.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1       Q.   And how long were you -- were you in the
 2  same pod?
 3       A.   He was in blue pod.  I was in green pod.
 4  We were in separate pods.
 5       Q.   How long were you both in Southern
 6  together?
 7       A.   Six months.
 8       Q.   And you had not met Mr. Baca before 2013;
 9  is that correct?
10       A.   Correct.
11       Q.   When you were recording Mr. Baca in 2015,
12  you would go days without recording a conversation.
13  Do you recollect that?
14       A.   No.
15       Q.   So do you think you were recording him
16  every day?
17       A.   I wouldn't -- no, not every day.
18       Q.   So why would days go by that you didn't
19  record him?
20       A.   Because we weren't talking, we weren't
21  really talking.
22       Q.   When you were in PNM North in 2015 with Mr.
23  Baca, did you ever go to rec together?
24       A.   No.
25       Q.   While you were recording Mr. Baca, were you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    also communicating with Bryan Acee?

2         A.   Correct.

3         Q.   You were communicating with him on the

4    cellphone that you had in your cell; correct?

5         A.   Maybe, when I couldn't call him from the

6    phone, because I was on phone restriction and I

7    needed to call him, yeah.

8         Q.   And then you'd also call him on the prison

9    phone?

10        A.   Correct.

11        Q.   Was there -- did you use any other phone to

12   call Bryan Acee?

13        A.   No.

14        Q.   How many times do you think you called him

15   on the cellphone?

16        A.   Once, maybe twice.

17        Q.   And how many times did you call him on the

18   prison phone?

19        A.   Maybe about 10.

20        Q.   And over what period did you call him 10

21   times?

22        A.   Over a period of eight months.

23        Q.   So starting when?  When is the first time

24   that you would have called?

25        A.   I don't recall.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492
                                                    e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1        Q.   Do you recall the last time you would have
2   called Bryan Acee using the prison phone?
3        A.   Maybe like August -- or, no, maybe
4   September, 2016.
5        Q.   And when you called Mr. Acee using the
6   prison phone, did you make those calls in your cell
7   or somewhere else?
8        A.   In my cell.
9        Q.   With respect to the cellphone, did you ever
10   delete anything off of the cellphone?
11        A.   Not that I recall.
12        Q.   Did you ever delete any pictures?
13        A.   I might have.
14        Q.   When did you do that?
15        A.   I don't recall.
16        Q.   Why did you do it?
17        A.   Just did it.  I don't know.
18        Q.   Did Mr. Acee ever talk to you about not
19   deleting pictures or texts off the cellphone?
20        A.   No.
21        Q.   Did he ever talk to you about the
22   importance of preserving evidence?
23        A.   I didn't know that was evidence, no.
24        Q.   How often did you delete photos or
25   something else off the cellphone?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.   Not often.

 2        Q.   So more than five?  Less than five?

 3        A.   Oh, less than five.  Less than two.

 4        Q.   At any point did you wipe the phone?

 5        A.   No.

 6        Q.   So when you deleted things, would you

 7   delete one entry or a lot of entries?

 8        A.   Maybe a picture.

 9        Q.   Did you ever delete text messages?

10        A.   No.

11        Q.   Did you ever delete the phone logs showing

12   who you had called or who called you?

13        A.   No.

14        Q.   Do you remember which pictures you deleted?

15        A.   Just pictures I took of myself that I

16   didn't like.

17        Q.   Did you delete pictures that people had

18   sent to you?

19        A.   No.

20        Q.   So those would still be on the phone?

21        A.   They should.  I don't think no one sent me

22   pictures, though.

23        Q.   Did anyone named Felicia send you pictures?

24        A.   Possible.  I don't recall.

25        Q.   When you spoke to the FBI about the Molina
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    homicide, you had discussed that homicide with Jerry

2    Armenta; correct?

3         A.   Wait, what?  Oh, when I spoke to them, I

4    had talked to Jerry Armenta about it?

5         Q.   That's correct.  You spoke to the FBI after

6    talking to Jerry Armenta; correct?

7         A.   Yeah, and everybody else.

8         Q.   Jerry Armenta was next to you?

9         A.   I already knew about it before I spoke to

10   him.

11        Q.   But I asking, Jerry Armenta was next to

12   you, right?

13        A.   Yes.

14        Q.   And you discussed the Molina homicide with

15   him?

16        A.   Correct.

17        Q.   You weren't in Southern at the time that

18   Molina was murdered, were you?

19        A.   No, I was just around when the paperwork

20   was getting passed around.

21        Q.   Where were you around when paperwork was

22   getting passed out?

23        A.   I was in 1B with "Spider," when the

24   paperwork got passed to Southern.

25        Q.   So did you see the paperwork?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.    I did.
 2          Q.    Did you see the paperwork get delivered to
 3     "Spider"?
 4          A.    No.
 5          Q.    Did you see "Spider" deliver the paperwork
 6     to anyone else?
 7          A.    No.
 8          Q.    Have you ever gone by the name of Johnny
 9     Joe Lucero?
10          A.    Yes.
11          Q.    Were you arrested in Texas under the name
12     of Johnny Joe Lucero?
13          A.    Yes.
14          Q.    And charged with armed robbery; is that
15     correct?
16          A.    Yes.
17          Q.    And late last year, you were supposed to
18     meet with your FBI handler and parole officer, and
19     you failed to appear; correct?
20          A.    Correct.
21          Q.    And then -- that was in late November of
22     last year?
23          A.    Yes.
24          Q.    And then you were arrested on December 15
25     of last year?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Correct.

2      Q.   How were you arrested?

3           MR. DEL VALLE:  Objection, Your Honor.

4  That case is still pending.  And I'm going to ask

5  counsel not to inquire about that case because it is

6  still pending.

7           THE COURT:  How does, really, him -- how he

8  was arrested in that case, how does that really help

9  me with the voluntariness issue here?

10          MS. DUNCAN:  I think -- well, a couple

11  things, Your Honor.  I think one, the fact that the

12  arrest goes to his credibility as a witness.  It also

13  goes to the ongoing coercion that we're arguing is in

14  play with respect to his statements.  So I'm not

15  asking him about what he did.  I'm asking about the

16  circumstances of him being arrested.

17          THE COURT:  Well, I think the "how" I will

18  sustain.

19      Q.   Now, you are currently facing a parole

20  violation in your most recent criminal case here in

21  New Mexico; correct?

22      A.   Correct.

23      Q.   You're also facing possible charges for

24  possession of heroin, and being a felon in possession

25  of a firearm; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.    Correct.

 2          Q.    And you're facing possible child abuse

 3   charges in Portland, Oregon; correct?

 4          A.    Not to my knowledge.

 5          Q.    You're being investigated for an allegation

 6   that you hit your stepdaughter, Ivy; correct?

 7                MR. DEL VALLE:   Again, I'm going to make

 8   the same objection, Your Honor.

 9                THE COURT:   Yeah, if he's -- if these are

10   other charges that he's facing, I'm reluctant to have

11   him be compelled to testify about some other possible

12   criminal activity.   So I'll sustain.

13                MR. DEL VALLE:   Thank you.

14          Q.    You're aware that -- so the shank that --

15   you were found in possession of a shank in 2015;

16   correct?

17          A.    Correct.

18          Q.    And you could still be charged in New

19   Mexico State Court with possession of that shank;

20   correct?

21          A.    Correct.

22                MS. DUNCAN:   If I could have a moment, Your

23   Honor?

24                THE COURT:   You may.

25          Q.    Were you ever housed with other cooperating
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    witnesses in this case?

2         A.   Correct.

3         Q.   And when you were housed with them, did

4    they have tablets with discovery on them?

5              MS. ARMIJO:  Your Honor, I'm going to

6    object.  That's beyond the scope of the hearing.

7    It's just a fishing expedition now.  The tablets were

8    not until well after these recordings.

9              THE COURT:  How does this relate to the

10   motion?

11             MS. DUNCAN:  Sure.  Your Honor, Mr. Duran

12   has volunteered that he's talked to everybody and

13   their cousin about the allegations in this case, and

14   I -- to sort of buffer his credibility.  And it's our

15   position that a lot of the information he got would

16   have come from those tablets.  So it really goes to

17   credibility for purposes of this hearing.

18             THE COURT:  Well, I'm going to sustain it.

19   I'm not seeing how that's going to help me make the

20   determination on these two motions.  So sustained.

21        Q.   When you had the recording device and you

22   were next to Mr. Baca at PNM North, did you ever

23   record any conversations between Roy Martinez and

24   Anthony Ray Baca?

25        A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. DUNCAN:  I have no further questions,
 2    Your Honor.
 3            THE COURT:  Thank you, Ms. Duncan.
 4            Anyone else have questions of Mr. Duran on
 5    this motion?
 6            Mr. Maynard.
 7                       EXAMINATION
 8    BY MR. MAYNARD:
 9        Q.   Mr. Duran, just a couple of questions.  You
10    testified that, of course, there were time periods
11    when you had conversations with Mr. Baca that were
12    not recorded?
13        A.   Correct.
14        Q.   And, of course, you can't remember all the
15    ones that were recorded, much less the ones that were
16    not recorded?
17        A.   Correct.
18        Q.   And if I understood your testimony, you
19    said that there was a conversation you had with Mr.
20    Baca, and he was upset with "Lazy," or he had some --
21    mentioned something about "Lazy"?
22        A.   Correct.
23        Q.   For not moving on Mr. Molina, or something
24    of that nature?
25        A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.    And that was not recorded?

2    A.    Correct.

3    Q.    And you didn't have that recorded and

4    erased by any chance?

5    A.    I didn't have a device to record it.

6    Q.    All right.  When was that conversation,

7    more or less?

8    A.    When he first came back, and -- yeah, when

9    he first came back, and then some when he was in

10   Southern with me.

11   Q.    And what year was this?

12   A.    2015 and 2013.

13   Q.    This was more than a year?

14   A.    Right.

15   Q.    After Mr. Molina had died?

16   A.    2015?

17   Q.    No, the conversation was more than a year

18   later.

19   A.    The conversation I didn't record happened

20   in 2015.

21   Q.    Right.

22        MR. MAYNARD:  Thank you.

23        THE COURT:  Thank you, Mr. Maynard.

24        Anyone else?  Mr. Villa?

25        MR. VILLA:  I'll let Ms. Sirignano go

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



 PROFESSIONAL COURT
REPORTING SERVICE

BEAN & ASSOCIATES, Inc.

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1    first.
 2              THE COURT:  All right.  Ms. Sirignano.
 3                        EXAMINATION
 4    BY MS. SIRIGNANO:
 5         Q.   Good morning, Mr. Duran.
 6         A.   Good morning.
 7         Q.   You said that you would speak to your
 8    handler, Bryan Acee, on the jail phone; correct?
 9         A.   Correct.
10         Q.   What's a house phone?
11         A.   A jail -- a house phone that's in the pod.
12         Q.   It's the jail phone in the pod?
13         A.   Correct.
14         Q.   Is it recorded?
15         A.   Yes.
16         Q.   Did you ever speak to Mr. Acee on an
17    unrecorded line?
18         A.   Very rarely.
19         Q.   So how many times?
20         A.   Maybe once.
21         Q.   And what was the content of that
22    conversation?
23         A.   I don't recall.
24         Q.   Do you know when it was?
25         A.   When it was?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Yes.
 2        A.   No.  Maybe at the beginning, when I first
 3   started working with him.
 4        Q.   And you don't remember what you talked to
 5   him about on an unrecorded line?
 6        A.   No, it wasn't really of importance.
 7        Q.   Okay.  And did you ever speak to any other
 8   law enforcement on an unrecorded line?
 9        A.   No.
10        Q.   Did you ever speak to Mr. Acee over text
11   messages?
12        A.   Maybe once or twice.
13        Q.   And how would you communicate with the FBI
14   generally?
15        A.   They would just come get me.
16        Q.   Where would they come get you?
17        A.   From my cell, and take me to the office.
18        Q.   Which office?
19        A.   In Albuquerque.
20        Q.   And how many times did you travel from PNM
21   to the FBI?
22        A.   Maybe like five times.
23        Q.   About five times.  And can you say when
24   those trips happened?
25        A.   I went once in May, twice in August, and in
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                             e-mail: info@litsupport.com

```
 1    November, I think.

 2         Q.    2015?

 3         A.    Yeah, once.

 4         Q.    Okay.  That's four times.

 5         A.    About four or five times.

 6         Q.    Can you remember another time?

 7         A.    I can't recall another time.

 8         Q.    And what were these trips about?

 9         A.    To obtain the cellphone, debrief -- brief

10    them on what was going on.

11         Q.    What do you mean by "what was going on"?

12         A.    I mean, most of these were just my

13    first-time interviews with them.  I met one time with

14    Bryan.  And the same week I went and met with Bryan

15    and Ms. Armijo.  And then the next time I went was

16    just tell them what was going on.

17         Q.    Was the Government and Mr. Acee listening

18    to your recordings at the same time you were making

19    them, contemporaneously?

20         A.    Not really, no.

21         Q.    No?  How do you know that?

22         A.    Because.  I don't know, didn't seem like

23    it.

24         Q.    When were they listening to your

25    recordings?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        A.   I don't think they listened to it.  I think
2    they had a separate person listening to it and
3    operating the recordings, which was Joe.
4        Q.   The FBI Agent Joe?
5        A.   Correct.
6        Q.   Sainato?
7        A.   Correct.
8        Q.   He was the one listening?
9        A.   He was the one, yes.
10       Q.   How do you know that?
11       A.   Because he would talk to me about clarity.
12       Q.   And what would he say to you about clarity?
13       A.   Just "try to get better," you know "better
14   clarity within the recordings.  Try to get closer."
15       Q.   Because he was having trouble listening --
16   hearing them?
17       A.   He could still hear them, but he didn't
18   hear them as clear as he wanted to.
19       Q.   Do you know if your initial meeting with
20   Sapien from STIU was recorded?
21       A.   I don't.
22       Q.   Would the FBI tell you what was going on
23   with their case when you met them?
24       A.   No.
25       Q.   So it was mostly you telling them what was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   going on within the facility?

 2        A.   Correct.

 3        Q.   Did you ever record Mr. Garcia -- or did

 4   you ever not record Mr. Garcia in any of your

 5   conversations with him?

 6        A.   He always got recorded.

 7        Q.   So you said that December -- in December

 8   2015, you stopped recording; correct?

 9        A.   Correct.

10        Q.   What day was that?

11        A.   December 3.

12        Q.   And how did you stop recording?

13        A.   Because they came and got the cellphone and

14   the device from me.

15        Q.   Who did?

16        A.   STIU.

17        Q.   Who?

18        A.   Sapien and Cupit.

19        Q.   And did they tell you anything why they

20   were picking up the device?

21        A.   Yeah, because they just rounded everybody

22   up.

23        Q.   And after they picked up the cellphone and

24   the device, how did you get in touch with your

25   handler?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I didn't.

 2        Q.   You didn't?

 3        A.   No.

 4        Q.   After the roundup, when was the next time

 5   you spoke to your handler?

 6             MS. ARMIJO:  Your Honor, I'm going to

 7   object as beyond the scope.  We're now beyond where

 8   he gave up -- when everybody was rounded up.  We're

 9   beyond the scope of his testimony and the

10   voluntariness of this statement.

11             THE COURT:  How does it relate to that, Ms.

12   Sirignano?

13             MS. SIRIGNANO:  Well, I'm just trying to

14   figure out how often he spoke to Mr. Acee after the

15   roundup.

16             THE COURT:  Well, I know what you're trying

17   to get, but it doesn't seem to me it's relevant to

18   the two motions.  So I'll sustain.

19        Q.   And you testified previously that Mr. Acee

20   didn't tell you not to delete anything off the

21   cellphone?

22        A.   Yeah, he didn't.  Yeah, he didn't say to or

23   not to.

24             MS. SIRIGNANO:  Okay.  Thank you.  Pass the

25   witness.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Thank you, Ms. Sirignano.
 2              Anyone else?  Mr. Villa?
 3              MR. VILLA:  Thank you, Your Honor.
 4                          EXAMINATION
 5    BY MR. VILLA:
 6         Q.  Good afternoon, Mr. Duran.
 7         A.  Good afternoon.
 8         Q.  So December -- was it December 2, 2015 that
 9    STIU, Sapien, and Cupit came and took the recording
10    device?
11         A.  It was the day when they came and rounded
12    them up.  I believe it was December 3.
13         Q.  Of 2015?
14         A.  Right.
15         Q.  Where were you?  Which pod were you in?
16         A.  I was in the pod right next to Mr. Baca in
17    Q pod, I believe.
18         Q.  Q pod at Level 6?
19         A.  Q pod 3A, yes.
20         Q.  Before Q pod, were you in X pod?
21         A.  Correct.
22         Q.  In 2015?
23         A.  Correct.
24         Q.  When did he get moved from X to Q?
25         A.  I don't recall.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.    When you were in X pod, was Rudy Perez
 2   there as well?
 3        A.    No.
 4        Q.    So the time you were in X pod, it's your
 5   testimony that Mr. Perez was not in X pod at the same
 6   time?
 7        A.    Oh, yeah, he was there.
 8        Q.    In 2015?
 9        A.    Yeah, he was in X pod.
10        Q.    In the fall?
11        A.    Correct.
12        Q.    Did you speak to Mr. Perez during the time
13   you were both housed together?
14        A.    Yeah, briefly.
15        Q.    Did you ever attempt to record him?
16        A.    No.
17        Q.    Did you speak to Mr. Perez about the Javier
18   Molina murder?
19        A.    No.
20        Q.    While you were in X pod, did you speak to
21   other people about the Javier Molina murder?
22        A.    Yeah.
23        Q.    Who did you speak to?
24        A.    I spoke to Mario Rodriguez.
25        Q.    Mario Rodriguez who also goes by "Blue"?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Correct.

 2        Q.    Was Timothy Martinez also there?

 3        A.    Yes, I spoke to him, too.

 4        Q.    Spoke to him about the murder?

 5        A.    Yes.

 6        Q.    What about Roy Martinez, "Big Shadow"?

 7        A.    No.

 8        Q.    Was Mr. Martinez, either Roy or Rob, there

 9   in X pod?

10        A.    They were both there, but never really

11   spoke too much about the Molina murder.

12        Q.    Was there a conversation about the Molina

13   murder concerning that -- this idea that there was a

14   hit out on Molina prior to the time he had actually

15   been killed?

16              MS. ARMIJO:  Your Honor, I'm going to

17   object to a fishing expedition.  Again, this doesn't

18   get to selective recording as to Mr. Baca or the

19   duress of him initially cooperating.  It's now a

20   fishing expedition.

21              THE COURT:  Well, it seems like it's more

22   discovery.

23              MR. VILLA:  Well, I think it does get to

24   the selective recording, Your Honor, in that he

25   didn't record -- I guess I have to ask him whether he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    recorded it or not.

2         THE COURT:  Why don't you see if you can

3    lay some foundation, and then we'll see if we will

4    let you ask this question.

5         MR. VILLA:  Well, I think I just need to

6    establish whether he had a conversation about it.  I

7    think his answer was yes.

8    A.    And it was recorded.

9    Q.    I'm sorry?

10   A.    It was recorded.

11   Q.    It was recorded?

12   A.    Every time I spoke to him, it was recorded.

13   Q.    And I'm talking about the idea that there

14   was a hit out on Molina a couple years before he

15   actually was killed.

16   A.    Not a couple years.  I don't know about a

17   couple years.

18   Q.    Well, a long period of time.  Maybe a year,

19   a long period of time.

20   A.    Whatever involved Molina was recorded.

21   Q.    Anytime you talked about Molina?

22   A.    Correct.

23   Q.    And does that include this -- was there --

24   this previous hit on Molina, did it have to do with

25   Jesse Sedillo and Benjamin Clark?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          A.   It did on some points, yes.
2          Q.   The two of them were supposed to be part of
3     carrying it out?
4          A.   No, I believe that Mr. Sedillo -- or Jesse
5     Sedillo and -- no, another Jesse was the one that was
6     supposed to provide the paperwork.  That's what
7     everybody was thinking.
8          Q.   Is that the Jesse that goes by "Croc"?
9          A.   No.
10         Q.   Who is "Croc"?
11         A.   Just an SNM member.
12         Q.   Is that Jesse Sedillo?
13         A.   Correct.
14         Q.   But Jesse Sedillo was not involved in any
15    way, as far as you know, with this previous hit on
16    Javier Molina?
17              MS. ARMIJO:  Objection.  Fishing
18    expedition.
19              THE COURT:  Well, I'm going to allow this.
20    I see some connection here.  Overruled.
21         A.   Mr. Baca was upset at the fact that "Croc"
22    had received the paperwork to assassinate Mr. Molina
23    and didn't show it to anybody.
24         Q.   Okay.  And was this paperwork that got to
25    "Croc" some period of time prior to the actual hit on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Molina?

2         A.    Correct.

3         Q.    And maybe it was two years, maybe it was a

4    year, but it was a decent period of time?

5         A.    Correct.

6         Q.    And you recorded that conversation with Mr.

7    Baca?

8         A.    No, not Mr. Baca.

9         Q.    But you just testified that Mr. Baca was

10   upset about it, right?

11        A.    Yeah.  I didn't say I recorded him saying

12   it.  No.  You asked me if I recorded the conversation

13   about the Molina murder, and who I talked to about

14   it.  I talked to Mario Rodriguez and I talked to

15   Timothy Martinez about the murder.  Both of those

16   individuals are the ones I recorded.

17        Q.    And were they the individuals that told you

18   Mr. Baca was upset?

19        A.    Correct.

20        Q.    And you recorded that conversation?

21        A.    I already knew he was upset, and I recorded

22   the conversation.  But they knew he was upset.

23        Q.    But you did not speak to Mr. Baca about

24   whether he was upset?

25        A.    Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   When did you do that?
 2        A.   In 2013.
 3        Q.   So that was before you had a recording
 4   device?
 5        A.   Correct.
 6        Q.   Was Benjamin Clark also supposed to assist
 7   "Croc" in distributing this paperwork to carry out
 8   the hit on Mr. Molina?
 9        A.   I don't know.
10        Q.   Did you record anybody discussing that?
11        A.   No.
12        Q.   At no point in time?
13        A.   Nothing that involved Benjamin Clark.
14        Q.   Did you ever have a conversation before you
15   had the recording device about something involved
16   Benjamin Clark and Javier Molina?
17        A.   No.
18        Q.   When you spoke to Mr. Perez briefly in the
19   X pod, in the fall of 2015, what did you speak to him
20   about?
21        A.   Random activities within the SNM.  Nothing
22   about the murder.
23        Q.   Was this during the same time that you had
24   recorded Timothy Martinez and Mario Rodriguez?
25        A.   Mario Rodriguez was his neighbor.  So no, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    didn't really pay attention to him.
 2         Q.   But, I mean, is this the same time frame
 3    that you recorded Mario Rodriguez?
 4         A.   Right.
 5         Q.   Talking about what "Croc" was supposed to
 6    do with the paperwork on Javier Molina?
 7         A.   Right.
 8              MR. VILLA:  That's all the questions I
 9    have.
10              THE COURT:  All right.  Thank you, Mr.
11    Villa.
12              Anyone else from the defendants that wants
13    to cross-examine Mr. Duran on these two motions?
14              All right.  Mr. Del Valle, do you have
15    anything you need to clarify?
16              MR. DEL VALLE:  No, Your Honor.
17              THE COURT:  All right.  Did you have
18    something else, Mr. Lowry?
19              MR. LOWRY:  No, Your Honor.
20              THE COURT:  Hold on just a second.  Did you
21    have something else, Ms. Duncan?
22              MS. DUNCAN:  No, Your Honor.
23              THE COURT:  Mr. Lahann, were you just
24    letting Mr. Villa in?
25              All right.  Ms. Armijo.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    REDIRECT EXAMINATION
 2   BY MS. ARMIJO:
 3        Q.   Mr. Duran, at the time that you initially
 4   spoke to Special Agent Brusuelas, were you already in
 5   restrictive housing?
 6        A.   I was.
 7        Q.   And why was that?
 8        A.   That's where they had us for the Molina
 9   murder.
10        Q.   When you say "us," who are you referring
11   to?
12        A.   SNM.
13        Q.   All right.  And was -- after you had
14   decided to cooperate, did you immediately change your
15   behavior in front of other SNM members?
16        A.   No.
17        Q.   And why not?
18        A.   Because it would put me in danger of
19   getting killed.
20        Q.   Now, you talked about -- a little bit with
21   Ms. Duncan about suing because of the SNM conditions.
22   Was that -- what year was that?
23        A.   That was when the Molina murder had first
24   taken place, which was maybe a month after that.  So
25   maybe like March.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   And you spoke a little bit about "Lazy."

2  And just for the record, who is "Lazy"?

3      A.   Carlos Herrera.

4      Q.   And you said -- I believe you were talking

5  about "Lazy" didn't get Molina hit.  What did you

6  mean by that?

7      A.   He didn't get him hit.  He was supposed to

8  get him hit.  He had orders from Baca to get him hit.

9  And he didn't get him hit.

10      Q.   And when you say "hit," what do you mean?

11      A.   Hit, you know, like killed.

12      Q.   Okay.

13      A.   Assassinated.

14      Q.   Okay.  So we're not talking just going and

15  getting him hit as far as a punch.  Are we talking

16  about murder?

17      A.   Murder.

18      Q.   Or killed?

19           Okay.  And then -- and when did you learn

20  that information, initially?

21      A.   2013.

22      Q.   And who did you learn it from?

23      A.   Mr. Baca.

24      Q.   Now, you mentioned "Dan Dan" and "Cyclone."

25  What were you referring to about them?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Mr. Baca had felt that Daniel Sanchez and
 2   Benjamin Clark had dropped kites on him and prevented
 3   him from hitting the Level 4, when they were at the
 4   South.  And he was upset about that and wanted him
 5   hit.
 6        Q.    Okay.  So you're talking -- just so that
 7   we're clear, Mr. Baca wanted Daniel Sanchez and
 8   Benjamin Clark hit as well?
 9        A.    Correct.
10        Q.    And when did you learn that?
11        A.    In 2013.
12        Q.    And when you say drop a kite, what do you
13   mean?
14        A.    Drop a kite, like to STIU, or --
15        Q.    You used --
16        A.    Just write a letter to inform officers.
17        Q.    Okay.  So drop a kite is a way of
18   communicating to other people?
19        A.    Drop a kite is a way of telling.
20        Q.    Okay.  Now, the phone that you had, that
21   you were given by FBI, were you aware that all of
22   your text messages and your calls were being recorded
23   by a court order?
24        A.    Strict, yes.
25        Q.    And you talked a little bit about photos.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

144

```
 1    Did you take any photos on them -- on that phone?
 2         A.   I did.
 3         Q.   Okay.  And tell us the circumstances of
 4    those photos, and how many, if you recall.
 5         A.   They were just selfies.  I just treated the
 6    phone as if it was a real cellphone, for Mr. Baca to
 7    believe it was a real cellphone.
 8         Q.   Okay.  And did you send any of those
 9    selfies out to anybody?
10         A.   I sent those selfies to Mr. Baca's cousins,
11    and someone that Mr. Baca had befriended, a girl that
12    he hooked me up with.
13         Q.   Okay.  Who was Mr. Baca's cousin?
14         A.   I forgot her name.
15         Q.   Okay.
16         A.   I don't recall it.
17         Q.   I'm sorry?
18         A.   I don't recall her name.
19         Q.   How did you know to get ahold of her?
20         A.   Through him.
21         Q.   Okay.  And so what was your point in
22    sending her a selfie, with Mr. Baca giving you her
23    number?  What was the point of that?
24         A.   Just to make the phone look real,
25    basically.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Okay.  And Ms. Duncan asked you --
 2             THE COURT:  How much longer do you think
 3   you're going to go?
 4             MS. ARMIJO:  Your Honor, I just have a
 5   couple more questions.
 6             THE COURT:  All right.  Go ahead.
 7        Q.   Ms. Duncan mentioned Johnny Joe Lucero, and
 8   an arrest that you had.  How old were you at that
 9   time?
10        A.   I was 17 years old.
11        Q.   And when the phone was picked up, the day
12   of the roundup -- you referred to that -- when you
13   say roundup, was that when SNM Gang members were
14   initially arrested in this case?
15        A.   Correct.
16        Q.   At the time of the roundup, was there a
17   shakedown of all SNM members at PNM?
18        A.   Correct.
19        Q.   Was the cellphone taken as part of that?
20        A.   The cellphone was taken immediately after
21   Baca was removed from his cell.
22        Q.   At that time did any other -- were you
23   aware if any other of the people that were arrested
24   knew you were cooperating at that time?
25        A.   Nobody knew, to my knowledge.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1        Q.   Okay.  When you talked about -- and lastly,
 2   you talked about recordings that you had with Mario
 3   Rodriguez and Timothy Martinez.  And you said that
 4   you used the recorder.  Are you aware of whether or
 5   not some of the recordings, maybe the batteries died
 6   and it didn't get captured?
 7        A.   That was one of the incidents that the
 8   battery died.
 9            MS. ARMIJO:  All right.  I have nothing
10   further.
11            THE COURT:  All right.  Thank you, Ms.
12   Armijo.
13            All right.  Mr. Duran, you may step down.
14   Thank you for your testimony.
15            All right.  Let's go ahead and take our
16   lunch break.  We'll be back in about an hour.  It may
17   take a little bit longer getting everybody out.  But
18   let's shoot for an hour.  Have a good lunch.
19            (The Court stood in recess.)
20            THE COURT:  All right.  I think everyone
21   has got an attorney.  Help your co-defendants out,
22   make sure everybody has got an attorney.
23            All right.  Let me go ahead and make an
24   oral ruling on the motion to disqualify Mr. Lowry.
25   Lawyers appearing before the Court in a criminal case
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    are subject to the New Mexico Rules of Professional
 2    Conduct.  And there are two ways that a
 3    representation can violate a lawyer's ethical duties
 4    to a former client under those rules.  First, under
 5    Rule 16-109(a), a lawyer cannot represent a client in
 6    a matter in which the lawyer represented a former
 7    client, or in a substantially related matter, if the
 8    current client's interests are materially adverse to
 9    the former's client interests.  Whether two
10    representations are in the same matter depends on
11    whether the lawyer can be justly regarded as changing
12    sides.  One matter is substantially related to
13    another if it involves the same dispute, or if there
14    is a substantial risk that confidential factual
15    information, as would normally have been obtained in
16    the prior representation, would materially advance
17    the client's position in the subsequent matter.
18              Section 132 of the Restatement Third of the
19    Law Governing Lawyers puts it, I think, a little
20    bit -- from a syntax sort of way, a little bit better
21    than maybe the New Mexico rules do.  But the current
22    matter is substantially related to the earlier matter
23    if, one, the current matter involves the work the
24    lawyer performed for the former client.  I think that
25    was the problem with Mr. Davis' representation.  Or,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    two, there is substantial risk that representation of
 2    the present client will involve the use of
 3    information acquired in the course of representing
 4    the former client, unless that information has become
 5    generally known.  And that's the Restatement Third,
 6    Section 132.
 7           Mr. Duran's civil case is not the same
 8    matter as Mr. Baca's prosecution.  The civil case,
 9    likewise, does not involve the dispute, as Mr. Baca's
10    prosecution.  While it is theoretically possible that
11    confidential information gained by Mr. Donatelli
12    while representing Mr. Duran would be helpful to Mr.
13    Baca's defense, that possibility does not amount to a
14    substantial risk that Mr. Baca's defense will involve
15    such information because Mr. Duran's civil case did
16    not involve the SNM, or otherwise implicate
17    Mr. Duran's expected testimony.  Accordingly, the
18    Court concludes that Mr. Lowry's representation of
19    Mr. Baca does not offend Rule 16-109(a).
20           Second, under Rule 16-109(c), a lawyer
21    cannot use or reveal a former client's confidential
22    information.  The Court credits Mr. Lowry's assertion
23    that he is aware of no confidential information
24    regarding Mr. Duran.  Moreover, the risk that Mr.
25    Lowry would use or reveal such information, even if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    he had it, is minimal, because he will not

2    cross-examine Mr. Duran.

3              The Court is confident that Mr. Lowry, as

4    an officer of the Court, will inform the Court if his

5    recollection regarding Mr. Duran's confidential

6    information is refreshed before or during trial.

7    Accordingly, the Court concludes that Mr. Lowry's

8    representation of Mr. Baca does not offend Rule

9    16-109(c).

10             I want to get the further waiver of

11   Mr. Baca.  But assuming that comes through, then Mr.

12   Baca will have waived any conflict of interest

13   stemming from Mr. Donatelli's representation of

14   Mr. Duran, so Mr. Lowry's continued representation of

15   Mr. Baca does not offend Mr. Baca's rights under the

16   Sixth Amendment.

17             Mr. Duran is not charged in this case.  I'm

18   going to think through a little bit about whether he

19   still has some Sixth Amendment rights in this case.

20   So I'll continue to give that some thought as to

21   whether he has a right under the Constitution to

22   anything in this case.

23             But, in any case, the Court has appointed

24   Mr. Del Valle to represent Mr. Duran, so Mr. Duran

25   has, in fact, been afforded conflict-of-interest-free

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   counsel.  So, accordingly, the Court concludes that,
2   even though Mr. Duran refused to waive any conflict,
3   Mr. Lowry's representation of Mr. Baca does not
4   offend the Sixth Amendment.
5           All right.  We also had some issues, as far
6   as Mr. Duran, that we wanted to take up.  I am not
7   sure I'm familiar with them.  So you may have told
8   Ms. Wild, and it may have gone into my ear, and I
9   didn't register it.  But this sounds new to me.
10          MS. ARMIJO:  Your Honor I, believe it's a
11  little new.  And I have been informing defense
12  counsel for Mr. Baca about the issue, because I
13  believe it was their motion.  The Court -- we had
14  previously -- it was a motion for Mr. Duran's medical
15  and mental health records.  And the Court did, in
16  fact, order them.  That was prior to Mr. Duran having
17  counsel and weighing in on the issue.  And I'll let
18  Mr. Del Valle speak to it.  But I believe that
19  Mr. Duran -- and we actually have them -- "we" being
20  the U.S. Attorney's Office.  They were sent to us by
21  Corrections after the Court had issued the order.
22  But I believe that Mr. Duran is objecting to the
23  release of those items.  And I'll let Mr. Del Valle
24  speak to that.  So -- and I do know that mental
25  health records require extra care when being ordered
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to be released.  And so I'll let Mr. Del Valle
 2    address those issues.
 3             THE COURT:  All right.  Mr. Del Valle.
 4             MR. DEL VALLE:  Thank you, Your Honor.
 5             Mr. Duran objects to the release of any
 6    medical records whatsoever as a violation of his
 7    privacy rights under HIPAA.
 8             Additionally, let me kind of loop back on
 9    the conflict issue.  Although I'm not sure, I would
10    assume that during the representation of Mr. Duran by
11    Mr. Lowry's firm, the issues of mental health and
12    medical records were part of the lawsuit, as they
13    typically are in terms of mental damages, pain and
14    suffering, and so forth.  If they have any special
15    knowledge of those things, that would enhance the
16    concept of a conflict.
17             That's all I have to say on that matter.
18    But it's another consideration for the Court that we
19    really don't know how far those medical records go
20    back at this time, whether they were, in fact,
21    generated by that firm.
22             And so, again, I repeat that he does object
23    to the release of his medical records.  Thank you.
24             THE COURT:  All right.  Thank you, Mr. Del
25    Valle.  Did -- Ms. Duncan, Mr. Lowry, are y'all the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   ones that subpoenaed the medical records?

 2            MS. DUNCAN:  Your Honor, we didn't subpoena

 3   them.  We had an agreement with the Government that

 4   they would produce them, if the Court would sign the

 5   order for their production.  So the Court signed the

 6   order.  Ms. Armijo represented the records made it

 7   from DOC to the U.S. Attorney's Office, and then the

 8   U.S. Attorney's Office did not disclose them to us.

 9            THE COURT:  Say that again.  What did you

10   say?

11            MS. DUNCAN:  We stipulated, when we were

12   arguing discovery, we had asked for them, and the

13   parties came to an agreement that if the Court would

14   issue an order for their production, then DOC would

15   give them to the U.S. Attorney's Office, and the U.S.

16   Attorney's Office would give them to us.

17            So, yes, we were the ones who asked for

18   them, but it was just pursuant to a order that's been

19   entered.

20            THE COURT:  What are you looking for in his

21   medical records?  What is it that you're wanting to

22   see, and how are they relevant to, I guess it would

23   be these two motions; correct?

24            MS. DUNCAN:  No, Your Honor, actually this

25   is a separate issue.  We had asked for the medical
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and mental health records for trial, for impeachment

2    purposes, so as they bear on his credibility as a

3    witness and they bear on his ability to recollect.

4    The Court saw today that he has trouble recollecting

5    events.  And the medical and mental health records

6    would bear on that issue.

7              THE COURT:  Well, anybody else want to

8    weigh in on this issue?  Did you have anything else?

9              MS. DUNCAN:  No, Your Honor.

10             THE COURT:  Anything else you want to weigh

11   in on this issue?

12             Anything else you have, Ms. Armijo?

13             MS. ARMIJO:  No.  I don't know -- if it's

14   just for impeachment purposes, I guess an alternative

15   would be for the Court to do an in camera review of

16   them.  But I believe it is substantial amount of

17   reviewing.  As you may recall, there was testimony

18   with Mr. Roark, I believe, for that motion to

19   suppress, that indicated that, when these inmates are

20   being held in Level 6, that they go and they

21   routinely have a mental health evaluation to

22   determine how they are.  So --

23             THE COURT:  For whose benefit is that,

24   though?  Is that for the prison, or is that for the

25   prisoner?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. ARMIJO:  I think that's for the
 2    prisoner's benefit.
 3              THE COURT:  So does the prison see those
 4    records, though, and use them in evaluating whether
 5    somebody is deteriorating or not?
 6              MS. ARMIJO:  The prison doesn't see them
 7    themselves.  I believe that -- and that was part of
 8    the issue, is that the NMCD does not have custody of
 9    them.  It's a completely different company that does
10    the medical work.  Obviously, if there is issues as
11    to an inmate, then I think the protocol would be to
12    notify Corrections that there is issues with an
13    inmate, and then it would be dealt with.  But I know
14    that that is routine with all of the inmates.  I'm
15    sure all of these people probably have mental health
16    records, because they've all been held in Level 6
17    capacity.  So -- and I don't know what else is there,
18    obviously, because I have not personally sat down and
19    reviewed them.  But that is an alternative.
20              THE COURT:  Have I already signed the
21    order?
22              MS. ARMIJO:  You did sign the order, Your
23    Honor.  But that was before Mr. Duran weighed in on
24    the issue and had counsel to advise him.
25              THE COURT:  Well --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. CASTLE:  Your Honor, I'm sorry.  I
 2   didn't jump up quick enough.  I'm wondering if I
 3   could help the Court a little bit.
 4            THE COURT:  All right.
 5            MR. CASTLE:  Your Honor, on behalf of Mr.
 6   Garcia, we have requested such records regarding
 7   Eugene Martinez, who had been a defendant in the
 8   case.  And the Court authorized a process by which
 9   his counsel reviewed the records, and then made
10   suggested redactions.  And we're in the process of
11   that.
12            But the law on this issue was set forth in
13   a motion we filed, which is Document 1163, which is
14   our Giglio motion.  And what we cited was the case of
15   United States v. Robinson, a Tenth Circuit case, 583
16   F.3d 1265, in which they stated that evidence that a
17   confidential informant has suffered from a mental
18   illness was relevant because it would provide some
19   significant help to the jury in its efforts to
20   evaluate the informant's ability to perceive or to
21   recall events or to testify accurately.
22            In addition to that case, they talked about
23   evidence of illegal drug use also being relevant in
24   that context.  And I don't know if this is Your
25   Honor's case, but -- I imagine you'd remember it --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the last name is United States v. Ganadonegro.

 2              THE COURT:  Ganadonegro.

 3              MR. CASTLE:  If that's this Court's case.

 4    It also found that a 2012 U.S. -- well, I have a

 5    Lexis cite, which is a New Mexico District of New

 6    Mexico case in 2012.

 7              In addition, while there is other circuits

 8    that we set forth what their position was, but it

 9    seems like the circuits, from the Fifth to the

10    Eleventh to the Second, all indicate these kind of

11    records are Giglio materials that should be

12    disclosed.

13              THE COURT:  All right.  Thank you, Mr.

14    Castle.

15              Well, let's do this:  I'm going to leave my

16    order in place.  If you want to go through, Mr. Del

17    Valle, and look at the records and either, A -- I'm

18    not inclined to probably allow you to object so that

19    it blocks the production of just medical records.

20    But if you want to make an argument that certain

21    materials are subject to the

22    psychotherapist-psychiatrist privilege, then I'll let

23    you raise those issues.  I've written on those as to

24    what the federal law allows, as far as a privilege

25    and what elements have to be met.  So you might look
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    at what I have said in the past.
 2            Typically, what I do with police records or
 3    police reports up in Albuquerque -- and that's the
 4    reason I was asking who looks at these things -- if
 5    they're made primarily for the Corrections Department
 6    to evaluate and decide how long somebody is going to
 7    stay in solitary, I'm probably not going to sustain
 8    the privilege.
 9            On the other hand, if Mr. Duran has a
10    psychiatrist, and he's talking to that person, or a
11    psychologist or a psychotherapist, and only he and
12    the doctor are seeing those reports, and they're not
13    something for the benefit of the use of the prison,
14    then I'll probably sustain it, and keep those records
15    from being produced.  But we're going to have to look
16    at them a little closer.
17            So I'll let you look at them before they're
18    produced.  But at least at the present time, we'll
19    keep the production order in place.
20            MR. DEL VALLE:  If I may, Your Honor?
21            THE COURT:  You may.
22            MR. DEL VALLE:  I understand that there is
23    approximately 6,000 pages.
24            MS. ARMIJO:  No, I think there is a
25    banker's box that has the medical -- and I know that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   the mental health records were about 600.  There is a
 2   banker's box.  Does that include both?  Okay, there
 3   is a banker's box full of both.  So I don't know how
 4   many pages that is, but --
 5              MR. DEL VALLE:  Just to let the Court know,
 6   it will be a while --
 7              THE COURT:  Okay.
 8              MR. DEL VALLE:  -- based on the volume.
 9              Additionally, while I'm up here, I would
10   like to announce to all counsel that I have
11   undertaken the representation of Grace Duran; that is
12   Mr. Duran's wife.  And if anybody wants to contact
13   her, I am now her attorney.
14              THE COURT:  Okay.
15              MR. DEL VALLE:  Thank you.
16              THE COURT:  Thank you, Mr. Del Valle.
17              All right.  So I'll leave the production
18   order in place, and give Mr. Del Valle a chance to go
19   through and see if he wants to make a pitch for me
20   keeping some of the documents out.  Otherwise, we'll
21   go ahead and keep the production order in place.
22              Ms. Duncan?
23              MS. DUNCAN:  Your Honor, I understand that
24   these records are voluminous.  But we're only three
25   weeks out from trial.  And Mr. Duran is a big witness
```

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                Albuquerque, NM 87102
(505) 989-4949                                                                            (505) 843-9494
FAX (505) 843-9492                                                                  FAX (505) 843-9492
                                                                                          1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                               e-mail: info@litsupport.com

1    for the Government against my client.  So I'd ask the

2    Court to set a deadline within the next week,

3    week-and-a-half, for that review to get completed, so

4    that we have time to process those records to

5    effectively cross-examine Mr. Duran.

6            THE COURT:  Could I set a production of 11

7    days from today for the production of the documents?

8    Does that give you enough time to get through them,

9    Mr. Del Valle?

10           MR. DEL VALLE:  I'll have to make time.

11           THE COURT:  All right.  So 11 days from

12   today the documents will be produced.  And by that

13   point, Mr. Del Valle will get through them as much as

14   possible.  And otherwise, they will be produced.  The

15   ones that he objects to, they can be pulled.  You can

16   get the others, pull those, and we'll argue about

17   them at the appropriate time.

18           All right.  Ms. Armijo, anything further on

19   that issue?

20           MS. ARMIJO:  No, Your Honor.

21           THE COURT:  Is the Government ready to go

22   to its next witness or evidence?

23           MS. ARMIJO:  Yes, Your Honor.

24           May Mr. Duran be excused?

25           THE COURT:  Any objection to Mr. Duran

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   being excused?

 2             MS. JACKS:  Your Honor, may I just be heard

 3   briefly?

 4             THE COURT:  You may.

 5             MS. JACKS:  Because I was unaware that the

 6   same attorney that was representing Eric Duran was

 7   claiming to represent Grace Duran.  And that seems to

 8   me to be like a conflict situation, given at least

 9   what I know about their relationship and the crimes

10   that Mr. Duran has committed against Mrs. -- or Grace

11   Duran and her child.

12             THE COURT:  Well, how is -- I need to be

13   educated on this.  How is Ms. Duran relevant to this

14   case?

15             MS. JACKS:  I think with respect to bias,

16   motive, and rewards offered to Eric Duran, and prior

17   inconsistent statements, or statements on the phone.

18   I'm happy to address it at another time.  I just

19   didn't want to let it go by without alerting for the

20   Court that I don't think that's something that, at

21   least most people in this room, would think would be

22   acceptable, for the same lawyer to represent them

23   both.

24             THE COURT:  Okay.  Any thoughts on that,

25   Mr. Del Valle?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. DEL VALLE:  Just to advise counsel, I
 2    have spoken to Ms. Duran, and I have told her that
 3    she can speak to anybody she wants to, and she can
 4    not speak to anybody that she doesn't want to speak
 5    to, that it is totally up to her, and leave it up to
 6    her discretion.
 7              She's been subpoenaed to be here on the
 8    28th.  And unless anybody will withdraw the subpoena,
 9    she will obey the subpoena.
10              THE COURT:  So she's been subpoenaed for
11    the trial in this case?
12              MR. DEL VALLE:  She's been subpoenaed for
13    the 28th.  She just sent me a text copy of it.
14              The whole point is that I want to alert all
15    counsel that if they want to speak to her, I have to
16    be present.  That's all.
17              THE COURT:  All right.  Let me start with
18    you, Ms. Jacks.  What do you want me to do about this
19    issue?
20              MS. JACKS:  I think for the -- to use the
21    Court's time wisely, I think what we ought to do is
22    table it for the moment.  Maybe we can provide the
23    Court with some sort of briefing.
24              But I'm even more concerned now, because
25    now we have somebody concurrently representing two
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    people with diverse interests in this proceeding.  So
 2    at this point, I think the question becomes should
 3    this attorney be removed from both representations.
 4    So I think we need to look into it.
 5              THE COURT:  All right.  So table it for the
 6    present time.
 7              All right.  Anybody?  Mr. Del Valle?
 8              MR. DEL VALLE:  Just to let counsel know
 9    that I'm not shaking in my boots.
10              Thank you.
11              MS. JACKS:  Neither am I.
12              THE COURT:  All right.  So unless somebody
13    thinks otherwise, we'll table it.
14              Mr. Villa.
15              MR. VILLA:  Your Honor, I was going to
16    bring up a separate issue.
17              THE COURT:  You don't want to table it?
18              MR. VILLA:  I want to bring up a separate
19    issue.  Maybe before the Government calls the next
20    witness.  It has to do with the phone calls that the
21    Government has produced.  They produced, I think the
22    first round we're talking, phone calls of our client,
23    phone calls of cooperating witnesses, et cetera,
24    about mid December.  There was some issues with those
25    we had to get fixed.  And we're all busy going
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    through those.  And I can file a motion if the Court
 2    wishes.
 3            But what I wanted to ask the Court is, if
 4    it would have the Government -- give the Government a
 5    deadline to tell us which calls of our clients they
 6    intend to introduce at trial, or else not be
 7    permitted to use any calls of our clients at trial,
 8    short of some impeachment issue or something like
 9    that.
10            THE COURT:  What's your thoughts on that,
11    Ms. Armijo?
12            MS. ARMIJO:  Well, Your Honor, I think that
13    that's -- we certainly don't know what's going to
14    become relevant at trial.  For instance, Mr. Perez
15    could come up and testify to one thing, and we may
16    need a certain call for his.  A lot of calls that
17    were produced were produced at the defense request
18    for jail calls.  So we just made a blanket production
19    of jail calls.  Certainly, they know the recordings
20    that we're going to use.
21            I can't think off the top of my head of
22    individual calls that we may be using.  If we know
23    that we're going to use a call, certainly -- and then
24    I would request, then, the reverse.  Maybe we can ask
25    the defense, if they're going to be using calls that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   we've provided, then they can let us know.  Maybe we
 2   can enter into a joint agreement.  But certainly not
 3   just for the Government to notify people of certain
 4   calls at this point.
 5           THE COURT:  Your thoughts on some
 6   reciprocal agreement on that?
 7           MR. VILLA:  Well, a couple things, Judge.
 8   I mean, certainly, as we're going through them -- and
 9   we have lots of staff doing that -- if we identify
10   something that we think is admissible evidence, we
11   can turn that over to the Government.  You know, I'm
12   not talking about impeachment material.  I think
13   that's fair game, if Mr. Perez decides to testify and
14   says something different than is in the call.  I'm
15   asking about substantive evidence that the Government
16   intends to use of phones calls of our clients.  Not
17   cooperators; keep those out.  Just our clients'
18   statements that the Government is going to try to use
19   as admissions in the Government's case-in-chief.
20           THE COURT:  Could we have this agreement,
21   Ms. Armijo, that for the present time, the Government
22   will not introduce any jailhouse calls using the
23   definition that Mr. Villa just gave, unless it
24   identifies those for the defendant, so we're not
25   going to just have them in its case-in-chief?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Your Honor, I guess I don't know
 2    under what authority we would be agreeing to that.  I
 3    mean, I understand we have an exhibit list that we
 4    have to get out, and that may be fluid.  But I just
 5    don't want to pigeon hole us.  I mean, as much as
 6    they're saying they have a bunch of staff listening
 7    to the calls, we have less staff and --
 8              THE COURT:  When is your exhibit list due?
 9              MS. ARMIJO:  Friday.
10              MR. BECK:  Yeah, I think Friday.
11              THE COURT:  Well, could we just make it
12    that if it's not on the exhibit list, jailhouse calls
13    on an exhibit list, it's not going to be in your
14    case-in-chief?
15              MR. BECK:  I think that's -- I mean, I
16    guess that's probably how we're going to operate with
17    all the evidence.  So --
18              THE COURT:  Live with that?
19              MR. VILLA:  I can live with that.
20              THE COURT:  Okay.  Let's just do that.  If
21    we don't see it on the exhibit list, it won't be
22    entered.  If something pops up, then we'll deal with
23    it like we do any other evidence that pops up; people
24    try to get it in, and I'll have to make a judgment
25    call at that point.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Yeah, I think that's fine.
 2              THE COURT:  And this excludes anything you
 3    want to do on impeachment.  So when the defendants
 4    put on their case-in-chief it's fair game, depending
 5    upon what they say.  But it's just your
 6    case-in-chief.  Work, Mr. Villa?
 7              MR. VILLA:  Yes, Your Honor.
 8              THE COURT:  Anybody have any problem with
 9    that?  Ms. Sirignano?
10              MS. SIRIGNANO:  Your Honor, I do.  I'm
11    sorry to be a stick-in-the-mud again.
12              These calls were produced in December,
13    16,000 hours of phone calls.  I filed a notice over
14    the break regarding the calls.  I attached an email
15    from Mr. Aoki regarding the contents of these phone
16    calls.  And, quite frankly, if we had everybody in
17    this room listening to phone calls between now and
18    the 29th, we probably wouldn't get through all of
19    them.  What bothers me, Judge -- and I'm just putting
20    this on the record here -- is that Mr. Lowry, when
21    his client was arraigned back on December 4th or
22    5th -- or 3rd of 2015 -- he had asked the
23    Government -- and I was present during the hearing in
24    front of Judge Gonzales where the Government agreed
25    to a rolling production of all of these phone calls.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    And they stated on the record before Judge Gonzales

2    that they were getting these phone calls and would

3    produce them in a rolling fashion.  So --

4              THE COURT:  Wasn't that done for a while?

5              MS. SIRIGNANO:  Not really, Your Honor, not

6    the jail calls of the cooperating defendants and of

7    some of the clients here.  There were calls that were

8    produced, yes, of -- evidentiary in nature.  But

9    we're talking 16,000 hours of phone calls, which we

10   requested in the very beginning of this case, that

11   was dumped on us in December of this year.  So my

12   position would be that they be excluded one hundred

13   percent, and that they're not allowed in for

14   impeachment or rebuttal.

15             Because, quite frankly, I don't know if

16   they've actually even made a search for Brady or

17   Giglio in any of these phone calls.  And we're trying

18   to go through as best as possible to find material

19   that would be good for us.  But it's an impossible

20   task.  We got 10,000 pages of discovery in PDF form

21   within that week.  And now, we're going to have, on

22   the 15th, our Jencks deadline.

23             So all I'm saying is that my position would

24   be that they don't come in at all, Your Honor.

25             THE COURT:  Well, let me do this:  It may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   never be a problem, so I'm not going to exclude them
 2   at the present time.  If it comes up that all of a
 3   sudden they're a gold mine -- it sounds like they're
 4   marginal and nobody right at the moment knows if
 5   there is anything in there that, A, is admissible, or
 6   useful to them.  So I'm not inclined to start
 7   excluding that much material, if we even don't know
 8   if anybody's going to have anything in there they're
 9   going to use.  At the present time, the Government is
10   saying they don't think there is anything they're
11   going to use.
12          And you can renew it at the time that we
13   identify somebody is about to use this stuff.  But
14   I'm inclined to leave it with -- if it's not on the
15   exhibit list on Friday, then it's not going to be in
16   the Government's case-in-chief.
17          Mr. Lowry?
18          MR. LOWRY:  Yes, Your Honor.
19          Your Honor, with regard to the jailhouse
20   calls, I just wanted to alert the Court -- I mean,
21   I'm cognizant of the comments the Court has just now
22   made.  But, unfortunately, we just started getting to
23   the tip of the iceberg of these jailhouse phone
24   calls.  There are useful things.  I mean --
25          THE COURT:  To you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. LOWRY:  To Mr. Villa, frankly.  We just
 2   came across -- we took a stab at looking at Billy
 3   Cordova's calls, for instance.  And there is a number
 4   of calls that would give them the perfect motion on
 5   terms of coercion that we're arguing today, where Mr.
 6   Cordova is telling his wife exactly the pressure that
 7   was put on him, the threats that were made to his
 8   family, that they would be prosecuted if he didn't
 9   cooperate.  And so he's explaining to his wife
10   exactly why he cooperated.  And we're in the middle
11   of providing Mr. Villa those materials right now, so
12   he can prepare a motion to suppress.
13              Now, I realize the timing of this, you
14   know, lacks a little bit to be desired.  But we just
15   got the phone calls.  And this information is just
16   becoming available.  And frankly, I think the impact
17   of that kind of testimony, again, it's like finding a
18   needle in a haystack.  So I'll leave it to Mr. Villa
19   how he wants to approach that.
20              But to think that the phone calls are just
21   a lark would be mistaken.
22              THE COURT:  Okay.  Well, I don't think Ms.
23   Sirignano was saying that y'all couldn't use the
24   phone calls, right?  You were saying, just keep the
25   Government from using them, correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. SIRIGNANO:  Yes, if they're useful for

2     the defense, we should be able to use them, because

3     we've been asking for them.

4          And Judge, you know, I do have a little bit

5     of difficulty with the decision like there is nothing

6     very useful in there.  We don't know one way or the

7     other.  And we've got a staff of people listening to

8     them just to ascertain what is there.

9          Frankly, it's a timing issue, Judge.  And

10    that's why I filed the notice, to alert the Court

11    that we've got all of this that's still out there.

12    And I'm sure this Jencks production is going to be

13    fairly substantial as well.

14          THE COURT:  Well, maybe I'll limit my

15    remarks there doesn't appear to be anything useful to

16    the Government in it.  Sounds like y'all are

17    beginning to find some stuff that may be useful for

18    defendants.  And I'll modify my statement there.  But

19    I wasn't aware that anybody had found anything yet.

20    I'll modify it there.

21          MS. SIRIGNANO:  Thank you, Judge.

22          THE COURT:  All right.  Ms. Duncan.

23          MS. DUNCAN:  Sorry, Your Honor.  I wanted

24    to clarify something on the record about Grace Duran.

25    Grace, Ms. Duran, was served with two subpoenas

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   today; one is for trial, and one was actually for
 2   purposes of this hearing.  I think that she was
 3   served at 11:00 this morning, is my understanding, so
 4   we don't expect her to be here today.  But we may
 5   intend to call her later this week.  So I know Mr.
 6   Del Valle had talked about the trial subpoena.  But I
 7   just want it on record that she's under subpoena for
 8   this week as well.
 9                THE COURT:  All right.  Anything else?
10                All right.  Ms. Armijo, does the Government
11   have its next witness or evidence on Mr. Baca's two
12   motions?
13                MS. ARMIJO:  Yes.  Sergio Sapien.
14                MR. DEL VALLE:  Your Honor, if I may, may
15   we excused?
16                THE COURT:  Any objection to Mr. Del Valle
17   and Mr. Duran being excused?  All right.  You're
18   excused.  Thank you.  Appreciate it.
19                MR. DEL VALLE:  Are we back tomorrow?
20                THE COURT:  When do you expect -- anybody
21   else need Mr. Del Valle in his capacity representing
22   Mr. Duran?  All right.  You're excused.
23                MR. DEL VALLE:  Thank you, Your Honor.
24                THE COURT:  You don't need to be here
25   tomorrow.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           All right.  Mr. Sapien, if you'll come up

2    and stand next to the witness box on my right, your

3    left.  Before you're seated, my courtroom deputy, Ms.

4    Standridge, will swear you in.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                        SERGIO SAPIEN,
 2        after having been first duly sworn under oath,
 3        was questioned and testified as follows:
 4                      DIRECT EXAMINATION
 5             THE CLERK:  Please be seated and state and
 6   spell your name for the record.
 7             THE WITNESS:  Sergio Sapien.  S-E-R-G-I-O,
 8   S-A-P-I-E- N.
 9             THE COURT:  Mr. Sapien.  Ms. Armijo.
10             MS. ARMIJO:  Thank you, Your Honor.
11             For the record, I'm going to move for the
12   admission of Government's Exhibit 2, which is the
13   interview that you have now two transcripts of.  But
14   it's the audio portion.
15             THE COURT:  Any objection to Government's
16   Exhibit 2?  Not hearing any, Government's Exhibit 2
17   will be admitted into evidence.
18   BY MS. ARMIJO:
19        Q.   Mr. Sapien, where are you employed?
20        A.   New Mexico Corrections Department, Security
21   Threat Intelligence Unit.
22        Q.   All right.  And what is your position
23   there?
24        A.   Captain.
25        Q.   And how long have you worked for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Corrections?

 2          A.   Almost 18 years.

 3          Q.   And how long have you been the Captain of

 4    STIU?

 5          A.   Almost -- I want to say July, August of

 6    2014.

 7          Q.   Now, are you familiar with Eric Duran?

 8          A.   Yes, ma'am.

 9          Q.   And how are you familiar with Eric Duran?

10          A.   Just with my knowing him while he's been

11    incarcerated with the Department.

12          Q.   And are you aware of --

13               THE COURT:  Any other witnesses in this

14    hearing that are in the courtroom?  Anybody want the

15    rule invoked for purposes of this motion?  Anybody

16    else?  Well, if nobody is concerned, plow ahead.

17               Ms. Armijo.

18               MS. ARMIJO:  Thank you.

19          Q.   And is he a member of a prison gang?

20          A.   Yes, ma'am.

21          Q.   Which prison gang?

22          A.   SNM, Syndicato de Nuevo Mexico.

23          Q.   At some point were you made aware of

24    whether or not he wanted to cooperate with law

25    enforcement?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   Yes, ma'am.

 2          Q.   Can you tell us about that?

 3          A.   Yes, ma'am.  At one time I was advised by

 4   my boss that this inmate wanted to talk to me.  So we

 5   went back and pulled him out.  And at that time he

 6   advised me that he wanted to cooperate fully.

 7          Q.   Okay.  When you say "he," who are you

 8   referring to?

 9          A.   I'm sorry, Eric Duran.

10          Q.   And who was your boss that informed you of

11   that?

12          A.   Adam Vigil.

13          Q.   And was there anything -- had Adam Vigil

14   had contact with Mr. Duran?

15          A.   Yes, ma'am.

16          Q.   And is that unusual that he would have had

17   contact with Mr. Duran?

18          A.   That's not unusual.

19          Q.   And so, based upon what Mr. Vigil told you,

20   what did you do?

21          A.   We went back to the unit and had Eric Duran

22   pulled from his cell out into an office, and

23   interviewed him.

24          Q.   And who is "we"?

25          A.   Myself and Chris Cupit.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   And who is Chris Cupit?

2        A.   He's one of my investigators, STIU.

3        Q.   Now, do you recall approximately when this

4   was?

5        A.   I want to say late November, early

6   December, somewhere around that time, 2014.

7        Q.   All right.  And when you spoke to him, did

8   he indicate anything to you about writing a letter to

9   you?

10       A.   Not that I can recall.  Writing a letter to

11  me?  In reference to?  I'm sorry, like --

12       Q.   To, like, his cooperation or wanting to

13  cooperate?

14       A.   I cannot recall that, ma'am.

15       Q.   Now, what did he say to you as far as

16  cooperation?

17       A.   On the basis of -- he was tired of dealing

18  with the gang and being in the gang.  And that they

19  were about to do something big; that they wanted to

20  hurt or kill or assault Mr. Marcantel and

21  Mr. Santistevan.

22       Q.   And who was Mr. Marcantel?

23       A.   At the time he was Secretary of

24  Corrections.

25       Q.   And Mr. Santistevan?

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                       Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                       FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   He was the head of STIU.
 2        Q.   And so what did you do with that
 3   information?
 4        A.   I went back and advised my boss, Mr. Vigil.
 5   And in turn, he started contacting -- you know, of
 6   course, it went up the chain on our side.  And then
 7   he contacted the FBI.
 8        Q.   Did you change anything as far as
 9   Mr. Duran, as far as move him or anything else, or
10   did you leave him in place so nobody would know there
11   was anything suspicious about your meeting with him?
12        A.   We left him in place.
13        Q.   And, at some point in time, were you made
14   aware that -- did he -- during his conversation with
15   you, did you use any threats against him to get him
16   to cooperate?
17        A.   No, ma'am.
18        Q.   Any coercion?
19        A.   No, ma'am.
20        Q.   Did it appear that he was doing so
21   voluntarily?
22        A.   Yes, ma'am.
23        Q.   And at some point, are you aware of him
24   actually meeting with the FBI?
25        A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.    And do you recall when that was,
2    approximately?
3        A.    I want to say February 19, I believe, 2015.
4        Q.    Okay.  So was that after your initial
5    meeting with him for his cooperation?
6        A.    Yes, ma'am.
7        Q.    And had anything -- when he was talking
8    with the FBI, were you part of that meeting as well?
9        A.    Yes, ma'am.
10       Q.    And at that time, was there anything, in
11   your view, as far as did you use any threats against
12   him?
13       A.    No, ma'am.
14       Q.    Any coercion against him to have him talk
15   to the FBI?
16       A.    Sure didn't.
17       Q.    Did it appear to you that he was talking to
18   the FBI on his own volition and free will?
19       A.    Yes, ma'am.
20             MS. ARMIJO:  If I may just have a moment?
21             THE COURT:  You may.
22             MS. ARMIJO:  That's all I have, Your Honor.
23   Thank you.
24             THE COURT:  Thank you, Ms. Armijo.
25             Ms. Duncan, Mr. Lowry, do you have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   cross-examination of Mr. Sapien?
 2              MS. DUNCAN:  If I may just have a moment,
 3   Your Honor?
 4              THE COURT:  Certainly.
 5                         EXAMINATION
 6   BY MS. DUNCAN:
 7       Q.   Good afternoon.
 8       A.   Good afternoon.
 9       Q.   When you met with Mr. Duran, did you
10   document that meeting?
11       A.   The initial one?
12       Q.   Yes.
13       A.   I do not recall if I did or didn't, ma'am.
14       Q.   Is it your practice to document meetings
15   with informants?
16       A.   Yes, ma'am.
17       Q.   How would you have documented, if you did?
18       A.   Just simply noted the date and time.  At
19   the time, I probably wouldn't have given him a CI
20   number just yet.  I'm sure of the CI numbers, just
21   for the fact that you have to corroborate the
22   information and all that stuff prior to giving them.
23   So I would have documented, yes, ma'am, just with his
24   name.
25       Q.   And I think you said Mr. Cupit was with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   you?

 2         A.   Yes, ma'am.

 3         Q.   And would Mr. Cupit have documented it?

 4         A.   I would have probably been the one to

 5   document that.

 6         Q.   And how do you document those kinds of

 7   meetings?

 8         A.   We'll just go out and pull up a standard

 9   STIU memo form, and just document date and time,

10   names, stuff like that.

11         Q.   Do you summarize what you discussed with

12   the person in those reports?

13         A.   Yes, ma'am.

14         Q.   And you were talking about a CI number.

15   Can you tell the Court, what is a CI number?

16         A.   That is a number that we give a

17   confidential informant.

18         Q.   And at what point do you give a

19   confidential informant --

20         A.   At the point that they met four of the

21   eight criteria, as per the policy.

22         Q.   What does that mean?

23         A.   There is eight criteria for documenting a

24   confidential informant.  In order to validate their

25   information, they have to meet four of the eight.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Simple stuff.

2         Q.   And did you give Mr. Duran a CI number?

3         A.   Eventually, yes, ma'am.

4         Q.   You say "eventually," do you know about how

5    long it took for you to give him a CI number?

6         A.   Once we gathered the information from him

7    and corroborated some of it, I would give him a CI

8    number.

9         Q.   And how would you document that process?

10        A.   How would I document it?  Date, facility,

11   my initials.  I'd give him also a number.

12        Q.   And would the report, where you say:  Here

13   are the criteria I think that the CI has met, and

14   here's why?

15        A.   Usually, yes, ma'am.

16        Q.   And where would you keep those kinds of

17   documents?

18        A.   I would type it all up.  And if it was

19   something that needed to be submitted, I'd submit it

20   right away.  Unless we're looking at some kind of

21   investigation.

22        Q.   So how soon after your first meeting with

23   Mr. Duran did you meet with him again?

24        A.   You know what, I don't recall.  I'm sorry.

25        Q.   Would you record -- did you record that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    first meeting?

 2         A.   No, ma'am.

 3         Q.   Do you recall how soon after that meeting

 4    that you would have met with Mr. Duran and the FBI?

 5         A.   It was approximately, maybe two months

 6    later, a month-and-a-half, two months.  We're talking

 7    late November, December, up into the beginning of

 8    February.

 9         Q.   When you say you met with him in late

10    November, early December -- is that what you said?

11         A.   Yes, ma'am.

12         Q.   So how do you recall when you met with him?

13         A.   As I stated previously, I don't remember

14    where I was.  I was away from the facility at the

15    time.  And, you know, my boss -- they'd been doing

16    some shakedowns and interviews of that area, at which

17    time, he advised Mr. Vigil that he needed to talk to

18    me, and only me.  So once I got back from where it

19    was -- I don't recall -- we had him pulled again.

20         Q.   Do you recall there being a shakedown in

21    February of 2015?

22         A.   Yes, ma'am.

23         Q.   And during that shakedown that Mr. Duran

24    was found in possession of a shank?

25         A.   That is on -- I believe he got a misconduct
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    for that, yes, ma'am.

2         Q.   I'm sorry?

3         A.   A misconduct report was submitted for that,

4    yes.

5         Q.   And is it possible that Mr. Duran asked to

6    speak to you at the time of that shakedown, in

7    February of 2015?

8         A.   He was kind of always talking -- asking to

9    talk to me.  So more than likely.

10        Q.   And you participated in the FBI's interview

11   with Mr. Duran in February of 2015; correct?

12        A.   Yes, ma'am.

13        Q.   And do you recall, during that meeting,

14   discussing a letter that Mr. Duran had written to

15   you?

16        A.   I believe he made reference to a letter

17   that he had in his property that he had written.  We

18   didn't retrieve that.

19        Q.   So did you ever receive a letter from

20   Mr. Duran?

21        A.   Yes, ma'am.

22        Q.   You did.  Tell me about that letter.

23        A.   I received a bunch of letters from him.

24        Q.   And where do you keep those letters?

25        A.   They were signed in.  I have them all, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   they were submitted with everything else we had.
 2        Q.   And when you say "they were submitted with
 3   everything else" you had to --
 4        A.   All our SNM documentation that we had, that
 5   we were to submit.
 6        Q.   And who did you submit it to?
 7        A.   I believe to Ms. Armijo.
 8        Q.   Do you have any SNM-related documents in
 9   your possession that you did not submit to Ms.
10   Armijo?
11        A.   No, ma'am.
12        Q.   When you talked to Mr. Duran in that
13   initial meeting, what did he tell you he wanted to
14   do?
15        A.   He advised that he was finished with the
16   gang life, and he wanted to provide information on
17   possible hits that they were looking at on a couple
18   higher up within the Department.  And he just wanted
19   to be done.
20        Q.   And at any point was Mr. Duran going to
21   enter the RPP Program?
22        A.   No, ma'am.
23        Q.   Did you ever discuss that with him?
24        A.   We did.  We discussed it with everybody.  I
25   mean, anytime we do any interviews of any gang member
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   we always offer RPP, whether they want it or not.

2        Q.   And can you tell the Court, what is that

3   program?

4        A.   Restoration into the Population Program.

5   It's essentially just for individuals that were part

6   of a gang and wanting to leave the gang life.

7        Q.   Were you involved in the providing Mr.

8   Duran with a recording device?

9        A.   Yes, ma'am.

10       Q.   Tell us about your involvement in that

11  process.

12       A.   I would receive the devices from the FBI,

13  and I would take them in the facility and give them

14  to Mr. Duran.

15       Q.   How would you do that?

16       A.   Different ways.  I'd either -- you know,

17  initially, I had to show him, Hey, this is what this

18  is, and how you turn it on and turn it off, and

19  either during chow -- I'd help serve chow.  I'd wait

20  till they were at recreation, nobody was in there,

21  and then deliver the device and pick up the other

22  one.

23       Q.   So when you would deliver the new device

24  and pick up the old one, would you do that at the

25  same time?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes, ma'am.
 2        Q.   And did you always do that at the same
 3   time?
 4        A.   Yes.
 5        Q.   How many times do you think you picked up
 6   and delivered a recording device from Mr. Duran?
 7        A.   It was a few.  I can't remember the exact
 8   number.
 9        Q.   Do you remember the time period for which
10   you were doing that?
11        A.   I want to say February, March of 2015,
12   maybe all the way up until December 2015.
13        Q.   And were you also involved in providing him
14   with a cellphone?
15        A.   Yes, ma'am.
16        Q.   Tell us about that.
17        A.   It was a preapproved deal, that they wanted
18   to introduce the cellphone for, you know, purposes of
19   investigation.  It was approved on our level.  And
20   that's way above my pay grade, central office
21   personnel.  Once everything was approved, I took it
22   in to him.
23        Q.   And were you involved in taking the
24   cellphone from Mr. Duran?
25        A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Can you tell us about that?
 2        A.   I believe -- I don't remember if it was the
 3   exact date of the actual takedown, if it was the
 4   actual cellphone or a device.  But when we went in
 5   there that day, he actually just handed it to us
 6   through the food port.  We opened the food port and
 7   he actually handed it to Mr. Cupit that day.
 8        Q.   He handed both the cellphone and the
 9   recording device?
10        A.   I don't remember exactly which one it was.
11   It might have been just one.  I believe it was a
12   cellphone.
13        Q.   And after you all got the cellphone from
14   Mr. Duran, what did you do with it?
15        A.   We took it straight with us to the takedown
16   area, which is the Gold Office in Albuquerque, and
17   handed it over.
18        Q.   Did you --
19        A.   It might have been the recording device.
20   I'm sorry.  It was one or the other.
21        Q.   Okay.  But were you involved, do you recall
22   being involved in taking the cellphone from
23   Mr. Duran?
24        A.   Yes, ma'am.
25        Q.   And when you took the cellphone from him,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   did you examine it?

 2          A.   No, ma'am.

 3          Q.   Did you turn it on?

 4          A.   I turned it off, if it wasn't already off.

 5   Usually, it was always off.

 6          Q.   And did you delete anything from that

 7   cellphone?

 8          A.   No, ma'am.

 9          Q.   No pictures or texts?

10          A.   No, ma'am.

11          Q.   Did you ever, at any point, delete anything

12   off of that cellphone?

13          A.   No, ma'am.

14          Q.   So, from the time that you gave Mr. Duran

15   the cellphone initially, and then you retrieved it

16   from him sometime in December of 2015, did you touch

17   it anytime in between?

18          A.   Did I touch it?

19          Q.   Yes.

20          A.   No, ma'am.

21          Q.   And when you would retrieve the recording

22   devices from Mr. Duran, the ELSUR devices, what would

23   you do with them?

24          A.   I would take them to the FBI and give them

25   to them.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Was there a particular person who you took
 2   them to?
 3        A.   Mr. Acee.
 4        Q.   You mentioned that when you first gave
 5   Mr. Duran the recording device, you gave him
 6   instructions on how to use it.  Do you recall exactly
 7   what you told Mr. Duran?
 8        A.   The recording device, I believe it's just
 9   basic on and off.  It's a little box.
10        Q.   Did you talk to him about the battery life
11   of the device?
12        A.   Just kind of -- I really don't know how to
13   work them, you know.  There is batteries on them.
14   You turn them on, turn them off.  Typically, after
15   there was -- I guess there was time where the
16   batteries kind of failed.  We'd get new batteries.
17   And I wouldn't even put them in the device.  I would
18   tape them to the side and then deliver them to Mr.
19   Duran.
20             MS. ARMIJO:  Your Honor, and if I can -- I
21   don't believe this witness knows that.  And I would
22   ask that he not describe the device in court, and
23   just talk only about the battery life and the on and
24   off switch, and not describe any recording device
25   specifically.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1            THE COURT:  Let Ms. Duncan specifically ask
 2    you questions about these devices.  I've entered some
 3    orders that limit what can be disclosed on it.
 4            THE WITNESS:  Okay.
 5            THE COURT:  So you're welcome to answer her
 6    questions.  Ms. Armijo can object, but just be
 7    careful here about the description, particularly
 8    about the port.  And so keep away from that, but
 9    otherwise, you can go ahead and answer Ms. Duncan's
10    questions.
11        Q.   I'm not going to ask you what it looks
12    like.  I just want to understand how it operated and
13    how you got it to Mr. Duran.  So you said you taped
14    some batteries to the side.  The side of what?
15        A.   The side of the device.
16        Q.   So it was your understanding that the
17    device had batteries, but then you would give Mr.
18    Duran a spare set?
19        A.   If there was.  If not, he'd have an extra
20    one.
21        Q.   When you spoke with Mr. Duran about
22    cooperating with the STIU, did you also talk to him
23    about benefits he would receive?
24        A.   No, ma'am.
25        Q.   For example, did Mr. Duran ask you about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    getting lump sum credit on his sentence for

2    cooperating?

3         A.   Not initially, ma'am.

4         Q.   Did he talk to you about getting some of

5    his commissary back, his privileges back, in exchange

6    for cooperating?

7         A.   I don't recall.  I'm sorry.

8         Q.   And you said that he didn't talk to you

9    about the lump sum initially.  At what point did he

10   talk to you about that?

11        A.   He it brought it up.  I don't remember the

12   exact date, but he brought it up.

13        Q.   Did he talk to you about good time that he

14   had forfeited for earlier disciplinary issues?

15        A.   Yes, ma'am.

16        Q.   And did he ask you about giving him back

17   his good time?

18        A.   Yes, ma'am.

19        Q.   You were involved in the investigation of

20   Mr. Duran for possessing a contraband cellphone in

21   the past; correct?

22        A.   Yes, ma'am, I do recall that.

23        Q.   And can you tell us about that incident?

24        A.   I don't remember the exact date.  I know

25   that he was caught with one while housed at the North

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    facility.
 2         Q.   Do you know how he got that cellphone into
 3    the North?
 4         A.   I don't, ma'am.
 5         Q.   And I think you said you can't recall how
 6    often you exchanged out the device; is that correct?
 7         A.   Yes.
 8         Q.   Did anyone other than you handle the
 9    recording devices?
10         A.   Other than Cupit, I have no idea, no,
11    ma'am, not that I recall.
12         Q.   Who was in charge of coordinating the
13    changing out of the recording devices?
14         A.   Usually, I would just do it myself.
15         Q.   And how would you know that it was time to
16    change out the device?
17         A.   Mr. Duran would contact me, or we'd --
18    whenever I got a new one, I'd switch them out.
19         Q.   And how would he contact you?
20         A.   He would call me.
21         Q.   Using what phone?
22         A.   The state phone, the inmate cellphone.  I'm
23    sorry, inmate Securus phone.  I apologize.
24         Q.   Okay.  So is that the phone that all
25    inmates use to call their families?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   Yes, ma'am.

 2          Q.   Is that also known as "the house phone"?

 3          A.   Never heard that.

 4          Q.   Did Mr. Duran call you using any phone

 5     other than the state-issued phone?

 6          A.   Not that I can recall.

 7          Q.   Did you ever facilitate phone calls between

 8     Mr. Duran and Mr. Acee?

 9          A.   Yes.

10          Q.   And tell us about that.  How did you

11     facilitate those phone calls?

12          A.   He'd call me, and I would do like a group

13     call, I guess you would call it.

14          Q.   So Mr. Duran would call you on the prison

15     phone, and you'd call Mr. Acee and you'd conference

16     it in?

17          A.   Correct.

18          Q.   So the calls that Mr. Duran would make to

19     you on the prison phone, were those recorded?

20          A.   No, ma'am.

21          Q.   And why not?

22          A.   It's a deal we have with Securus.

23          Q.   How does Securus know which phones should

24     be recorded, and which aren't?

25          A.   With my phone number, my state-issued
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   cellphone number.

 2       Q.   Is it just the calls to your state-issued

 3   phone number that aren't recorded or other calls not

 4   recorded?

 5       A.   Just to mine, I believe.

 6       Q.   So as an attorney, if I had a client who

 7   was in PNM North, could I give Securus my phone

 8   number and they wouldn't record it?

 9       A.   No, ma'am.

10       Q.   Other than these conference calls that

11   you've discussed, did you ever -- is there any other

12   way that you would facilitate communication between

13   Mr. Acee and Mr. Duran?

14       A.   None that I can recall.

15       Q.   Now, the STIU monitors inmate phone calls;

16   correct?

17       A.   Yes, ma'am.

18       Q.   Not the ones, obviously, you're making with

19   Mr. Duran, but the ones he has with his family?

20       A.   Yes.

21       Q.   And it's part of the regular duties of STIU

22   to monitor phone calls of suspected SNM; correct?

23       A.   We monitor phone calls of all inmates.

24       Q.   And did you monitor Mr. Duran's phone calls

25   while he was working as an informant for STIU?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   Yes, ma'am.

2        Q.   And how about after the takedown in

3   December of 2015?

4        A.   I believe so.

5        Q.   And were any reports written of monitoring

6   his phone calls?

7        A.   No, ma'am.

8             MS. DUNCAN:  If I could just have a moment,

9   Your Honor?

10            THE COURT:  You may.

11       Q.   Did you meet with Mr. Duran before going

12   with him to meet with the FBI?

13       A.   I'm sorry.  Can you --

14       Q.   Yeah, it was a bad question.  I apologize.

15            So were you involved in arranging the

16   meeting with the FBI?

17       A.   Yes, ma'am.

18       Q.   Did you meet with Mr. Duran to prepare him

19   for that meeting?

20       A.   I'm sure I advised him.

21       Q.   And what did you advise him?

22       A.   That he would be going, at his request, to

23   speak with the FBI.

24       Q.   And did you talk to him about what would be

25   discussed during the FBI meeting?

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                                       Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                       FAX (505) 843-9492
                                                                         1-800-669-9492
                                                                      e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.   No, ma'am.
 2        Q.   And when you met with the FBI, did you
 3   prepare any documents for them?
 4        A.   I don't recall taking anything with me, not
 5   that time.
 6        Q.   So the time that you met with Mr. Duran and
 7   the FBI, you didn't?
 8        A.   Initially, no, ma'am.
 9        Q.   But then later in the investigation, you
10   did provide documents; is that correct?
11        A.   Yes.
12        Q.   Were you present during any other
13   interviews between Mr. Duran and the FBI?
14        A.   Yes, ma'am.
15        Q.   And when were those interviews?
16        A.   I don't recall.  I'm sorry.  It's been a
17   little bit, and there are so many.
18        Q.   Sure.  So do you know -- for example, have
19   you been involved in any interviews with Mr. Duran
20   since the takedown in December 2015?
21             MS. ARMIJO:  Objection, relevance.
22             THE COURT:  What's the relevance to the two
23   motions?
24             MS. DUNCAN:  I think the relevance would
25   be, Your Honor, that -- our argument is that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Mr. Duran's ongoing participating in this case is
 2   coerced.  So knowing the scope of his participation
 3   is relevant to understanding that coercion.
 4              THE COURT:  Let me see what his answer is,
 5   then I'll determine whether I'm going to allow any
 6   more testimony.
 7        A.   Will you repeat the question?
 8        Q.   Of course.  Were you involved in any
 9   meetings between Mr. Duran and the FBI after the
10   takedown in December of 2015?
11        A.   Yes, ma'am.
12        Q.   And when was that?
13        A.   I don't recall.  There were a few -- we had
14   him housed in state custody.  So --
15        Q.   So would you participate in the meetings
16   between Mr. Duran and the FBI -- every meeting while
17   he was in state custody?
18        A.   I wouldn't say every meeting, but I'm
19   usually around, yes, ma'am.
20        Q.   Was anyone else from STIU participating in
21   those meetings?
22        A.   Yes, ma'am.
23        Q.   Who?
24        A.   It depends on the day, and days off, and
25   who is around.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   So did everyone in the STIU know that
 2   Mr. Duran was an informant?
 3        A.   Within my crew, yes, ma'am.
 4        Q.   And who is part of your crew?
 5        A.   I'm sorry -- in my crew -- my unit.  I
 6   apologize.  Chris Cupit; Ramil Loya at the time;
 7   sergeant Ron Martin; Adam Vigil.
 8             MS. DUNCAN:  Your Honor, if I could just
 9   have a moment?
10             THE COURT:  You may.
11             MS. DUNCAN:  I have no further questions.
12             THE COURT:  Thank you, Ms. Duncan.
13             Any other defendants have
14   cross-examination?  Ms. Sirignano.
15             MS. SIRIGNANO:  Quick question.
16                      EXAMINATION
17   BY MS. SIRIGNANO:
18        Q.   Good afternoon.
19        A.   Good afternoon.
20        Q.   You said that you participated in meetings
21   with the FBI and Mr. Duran; correct?
22        A.   Yes, ma'am.
23        Q.   Can you give me a ballpark number of how
24   many meetings you think you attended?
25        A.   Are we talking meetings, or just --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Well, why don't you break it up and just
 2   give me an idea of --
 3        A.   Are you talking about, like, actual
 4   meetings?
 5        Q.   Yes.
 6        A.   Or are we talking about just regular
 7   interaction?
 8        Q.   With the FBI and Mr. Duran?
 9        A.   You mean individually, by himself?
10        Q.   Yes, let's start with that.
11        A.   I couldn't recall all of them, ma'am.  I'm
12   sure there was plenty.
13        Q.   "Plenty" meaning more than 20?
14        A.   I have no idea.  I couldn't answer that.
15        Q.   So between -- you can't give me just a
16   ballpark.  I mean, I'm not looking for -- to nail you
17   in on something.  But was it once a month?  Was it
18   more than once a month?
19        A.   Well, I mean, there is -- actual meetings
20   where he was pulled out?
21        Q.   Yes.
22        A.   By himself?
23        Q.   Yes.
24        A.   After 2015?
25        Q.   Yes.  No, no, while he had the cellphone
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                    1-800-669-9492
                                                            e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    and the recording device.  Let's start with those
 2    first.
 3         A.   I don't have anything in front of me.  I
 4    mean, there was bunch of times that we talked to him,
 5    yes, ma'am.  But I couldn't recall every single time.
 6         Q.   So could you just give me a ballpark what a
 7    "bunch" means to you?
 8         A.   I'm sorry, I couldn't.  We were in pretty
 9    much constant contact, so --
10         Q.   With the FBI?
11         A.   Yes, ma'am.
12         Q.   So, actually transporting him down to the
13    FBI building, can you give me an idea of how many
14    times that might have happened?
15         A.   I know it happened initially the first
16    time.  I'm drawing a blank on the rest of them, I'm
17    sorry.  I don't have anything in front of me to refer
18    to, so --
19         Q.   Did it increase or decrease after the
20    arrests in December of 2015?
21         A.   I would say decreased.
22         Q.   And who would attend those meetings
23    generally?
24         A.   The FBI and us.
25         Q.   Who with the FBI?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   Mr. Acee.

2        Q.   Anyone else?

3        A.   Like I said, I can't recall.  We've done so

4   many.  And I don't have it in front of me, I can't

5   reference it, and I don't want to guess.

6        Q.   And when you said "and us," meaning the

7   STIU Unit?

8        A.   Yes.

9        Q.   And who would go with you, generally?

10       A.   Usually, they need -- well, any of my guys

11  that are available, between scheduled days off, and

12  vacations, and stuff like that.  It's who I have

13  around.

14       Q.   And prior to 2015, was Mr. Duran working

15  with anyone else other than the FBI in law

16  enforcement?

17       A.   Just I'm aware of 2014, is when I initially

18  talked to him.

19       Q.   And that was it?

20       A.   That I'm aware of yes, ma'am.

21            MS. SIRIGNANO:  Thank you.  Pass the

22  witness.

23            THE COURT:  Any other defendant have

24  questions of Mr. Sapien?  Mr. Villa?

25            MR. VILLA:  Thank you, Judge.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1                        EXAMINATION
2    BY MR. VILLA:
3         Q.   Good afternoon, Mr. Sapien.
4              Were you aware of who Mr. Duran was
5    recording at the time you were providing these
6    recording devices?
7         A.   Yes, sir.
8         Q.   Who do you know that he recorded?
9         A.   I know he recorded Mr. Baca, Anthony Ray
10   Baca.  I believe -- I'm sorry, I'm having one of
11   those days.  Mario Rodriguez was in on some of those
12   recordings.
13        Q.   What was the first name?
14        A.   Mario.
15        Q.   Who also goes by "Blue"?
16        A.   Yes, sir.
17        Q.   What about Timothy Martinez?
18        A.   I don't recall, sir.  I don't recall.  I
19   was trying to think about --
20        Q.   Billy Cordova?
21        A.   No, sir.
22        Q.   Rudy Perez?
23        A.   Not that I recall.
24        Q.   Did you listen to these recordings?
25        A.   Yes, sir -- not all of them.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   But you listened to recordings, for
 2   instance, of Mario Rodriguez?
 3          A.   Yes, sir.
 4          Q.   And I apologize, I think you said you
 5   weren't sure about Timothy Martinez?
 6          A.   Yes, sir.
 7               MR. VILLA:  May I have just a moment, Your
 8   Honor?
 9               THE COURT:  You may.
10               MR. VILLA:  That's all the questions I
11   have.
12               THE COURT:  Thank you, Mr. Villa.
13               Any other defendants have questions of Mr.
14   Sapien?
15               All right.  Ms. Armijo, do you have
16   redirect of Mr. Sapien?
17                    REDIRECT EXAMINATION
18   BY MS. ARMIJO:
19          Q.   You spoke a little bit about how Mr. Duran
20   initiated good time and lump sum credit or lump sum
21   amount and some good time credit?
22          A.   Yes.
23          Q.   And when was that?  Do you recall?
24          A.   I want to say early 2015 sometime, March,
25   April.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Sometime after the initial meeting?
 2        A.    Yes, ma'am.
 3        Q.    And did you make him any promises as to
 4   that?
 5        A.    No, ma'am.  I did advise him I'm not the
 6   classification worker.  And that type of math, and
 7   dealing with that, I have no dealing with.
 8        Q.    All right.  So was his cooperation in any
 9   way conditioned upon any promises that you made to
10   him?
11        A.    No, ma'am.
12        Q.    And who was primarily in charge of the
13   recordings?  Was it your agency or was it FBI?
14        A.    FBI.
15              MS. ARMIJO:  I have nothing further.  Thank
16   you.
17              THE COURT:  Thank you, Ms. Armijo.
18              All right.  Mr. Sapien, you may step down.
19   Is there any reason that Mr. Sapien cannot be excused
20   from the proceedings?  Ms. Armijo?
21              MS. ARMIJO:  No, Your Honor.
22              THE COURT:  How about any of the other
23   defendants?  Can he be excused?  Not hearing any
24   objections, Mr. Sapien, you're excused from the
25   proceedings.  Thank you for your testimony.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. ARMIJO:  Your Honor, he is one of our

2   expert witnesses, and since he's excused from -- we

3   didn't have him in earlier because of the hearing,

4   and he was going to be testifying.  Is there any

5   objection to him sitting in now?

6          THE COURT:  I don't guess I see any

7   problem.  Anybody else have any problem?  All right.

8   Not hearing any --

9          MR. CASTLE:  Judge, I do.  I think the last

10  time we heard from one of their proposed expert

11  witnesses, it turned out that it was also a

12  percipient witness.  Too many things.  So I don't

13  think that we should, when they're these hybrid kinds

14  of witnesses, I don't think we should use the expert

15  witness exception to the rule.

16          THE COURT:  I tend to agree.  If they're

17  going to be both a fact witness and an expert

18  witness, if they're sitting in, I'm inclined to agree

19  with it.  So you're excused from this proceeding.

20  But you can't sit in on the testimony because you are

21  a fact witness in this case.

22          THE WITNESS:  Yes, sir.

23          THE COURT:  All right.  Ms. Armijo, does

24  the Government have its next witness or evidence on

25  these two motions?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MS. ARMIJO:  May I have a moment?

2           THE COURT:  Certainly.

3           MS. ARMIJO:  That's all we have, Your

4    Honor.

5           THE COURT:  Thank you, Ms. Armijo.

6           Ms. Duncan?  Mr. Lowry?  Does Mr. Baca have

7    any witnesses or evidence he wishes to present?

8           MR. LOWRY:  Yes, Your Honor.  We have

9    Edward Urtiaga out in the hall.

10          THE COURT:  All right.

11          MS. ARMIJO:  Your Honor, before that

12   witness is brought in, can we approach on this issue?

13          MR. LOWRY:  Sure.

14          (The following proceedings were held at the

15   bench.)

16          THE COURT:  What this is witness' name?

17   Edward what?

18          MR. LOWRY:  Edward Urtiaga, U-R-T-I-A-G-A.

19          MS. ARMIJO:  And, Your Honor, my

20   understanding is that they were going to call him

21   tomorrow.  I was surprised they're calling him today.

22   Mr. Urtiaga has Giglio we would be probably using to

23   show a bias.  He's on administrative leave.  My

24   understanding is New Mexico State Police is

25   investigating him for an incident that occurred.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  What is, or what was his
 2    position?
 3              THE CLERK:  Judge, if --
 4              MS. ARMIJO:  At the time, or now?  We know
 5    he had been removed from STIU, and he was a
 6    correctional officer.
 7              THE COURT:  Okay.
 8              MS. ARMIJO:  So I think that they would --
 9    possibly to show bias.  We would have a right to
10    question him about it.  But we would be advised that
11    he has a Fifth Amendment right as to that.  But I
12    haven't had a chance to call the New Mexico State
13    Police on it.  But if I had known that, I would have
14    called him over lunch.  I have to call State Police
15    to ask him about the status of the investigation.
16              THE COURT:  I'm sorry I'm being so slow on
17    this, but you're calling an STIU officer to the stand
18    that's going to testify generally about what?
19              MR. LOWRY:  He was going to testify about
20    the February 18 threats made to his life.
21              THE COURT:  Oh, that's right.
22              MR. LOWRY:  And I don't disagree with what
23    Ms. Armijo said.
24              THE COURT:  So you're trying to establish
25    that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            MR. LOWRY:  That precipitated the meeting.

2    And I realize where we are in the process.

3            THE COURT:  So what are you concerned about

4    him testifying?  What do you need?

5            MS. ARMIJO:  Well, I would be concerned

6    that -- I don't know.  I haven't spoken to him.  I

7    don't know what he's going to say as far as anything

8    else, or the extent of it.

9            THE COURT:  The extent of what?

10           MS. ARMIJO:  The extent of his testimony.

11   I do know that there were other inmates present other

12   than Mr. Duran.  And I know that Mr. Duran has read

13   the reports and disagrees with what was written on

14   the reports.  I mean, I don't think there is any

15   dispute that Mr. Duran was disciplined for it.  And I

16   think the Court will consider those records.  But I

17   just think it can get very messy with this witness.

18   And the fact that -- and my concerns are an open

19   investigation on him.  It's for excessive force on an

20   inmate.

21           MR. CASTELLANO:  So the issue, Your Honor,

22   is that he may be impeached related to that

23   investigation and any bias he has against the

24   Corrections Department now in his testimony before

25   the Court.  So there is potential impeachment against

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    him.  But at the same time, we're going to run

2    against his Fifth Amendment privilege by doing so.

3    So that's where it gets a little tricky, is they're

4    going to impeach him potentially on his bias, then

5    that includes when he's on leave now and facing

6    criminal investigation.

7              THE COURT:  Does he have an attorney on

8    those issues?

9              MS. ARMIJO:  We haven't discussed it with

10   him.

11             MS. DUNCAN:  Your Honor, we didn't mean to

12   surprise you.  We just ran faster.  So we would agree

13   to put him first thing tomorrow, and go on to Agent

14   Acee.

15             MS. ARMIJO:  We're still going to have the

16   issue tomorrow.  The only thing that's different -- I

17   can make a call to the New Mexico State Police, and

18   they'll tell me:  We completed our investigation, we

19   haven't completed it.  At least I can give the status

20   update.  But I think the issue will remain.

21             THE COURT:  Do you think if you called the

22   State Police, and let's say you called the State

23   Police and they're done, they're not going to do

24   anything with him, you think your problems or

25   concerns are cleared up?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                  1-800-669-9492

                      PROFESSIONAL COURT
                        REPORTING SERVICE           e-mail: info@litsupport.com

```
 1              MS. ARMIJO:  Maybe his Fifth Amendment
 2    right may be cleared up to some extent.  But I think
 3    there is a good chance he's going to be fired by
 4    Corrections regardless.
 5              THE COURT:  Be fired?
 6              MS. ARMIJO:  Yes.
 7              MR. LOWRY:  For testifying?
 8              MS. ARMIJO:  No, not for testifying.
 9              MR. LOWRY:  We want to make that clear on
10    the record.
11              MS. ARMIJO:  No, for his actions that he's
12    under investigation for.  My understanding is that it
13    was not a simple --
14              THE COURT:  Well, I guess, you know,
15    somebody can correct me if I'm wrong, you know, that
16    may have some consequences for him from a civil
17    standpoint, personal standpoint.  But it's not
18    criminal.  So it sort of seems like it's not a
19    problem from a constitutional standpoint.  And so I
20    don't have to worry about him having counsel.  I
21    don't have to worry about him being prosecuted.  He
22    may lose his job on it, but that happens almost every
23    case, somebody is going to suffer some personal
24    consequences.  So I'm inclined to skip that one and
25    see if we can find out whether he's got some criminal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   liability we need to be worried about.
 2            MS. ARMIJO:  That's fine.  If they call
 3   Special Agent Acee, I can step out and do that.
 4            THE COURT:  All right.  Is that agreeable
 5   to y'all?
 6            MR. LOWRY:  That's fine.  We had called him
 7   because we were concerned about running out of
 8   witnesses, and that's exactly what happened.  So we
 9   can call Bryan Acee.
10            THE COURT:  Okay.  You can step out and
11   make your call.  Let's go ahead and do Acee.  And
12   we're going to take a break here in a little bit
13   anyway.
14            MS. ARMIJO:  Okay.
15            (The following proceedings were held in
16   open court.)
17            THE COURT:  All right.  Mr. Acee, you're
18   being called, so if you'll come up and stand next to
19   the witness box.  Before you're seated, Ms.
20   Standridge will swear you in.
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                        BRYAN ACEE,
 2         after having been first duly sworn under oath,
 3         was questioned and testified as follows:
 4                     DIRECT EXAMINATION
 5              THE CLERK:  Please be seated and state your
 6    name for the record.
 7              THE WITNESS:  Bryan Acee.
 8              THE COURT:  Mr. Acee, Mr. Lowry.
 9    BY MR. LOWRY:
10         Q.  Agent Acee, when did you first come to meet
11    Eric Duran?
12         A.  August 2015.
13         Q.  And what precipitated your meeting with
14    Mr. Duran?
15         A.  I'd been assigned to the investigation of
16    the SNM.  Agent Brusuelas and Captain Sapien, that
17    you just heard from, notified me that they had an
18    informant within the S up at the North.
19         Q.  And did you ask to speak with him, or how
20    did the meeting come about?
21         A.  Yes, at some point I did, yes.
22         Q.  Prior to that, who was Mr. Duran's handler?
23         A.  Katherine Brusuelas.
24         Q.  And was there a point in time when you took
25    over those duties?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    A.   Yes, sir.  I think it would have been in

2    about August.

3    Q.   As a matter of policy, how does that take

4    place within the FBI?

5    A.   It's a simple switch, in terms of his Delta

6    file, or his informant file.  We send an email, and

7    the office changes the handling agent.

8    Q.   Do you review that file before you take

9    over handling that agent -- or that CI?

10   A.   I can.

11   Q.   I guess my question is, at that point in

12   time, when you took over handling Mr. Duran, was he

13   already in the process of recording folks in the

14   prison?

15   A.   He was.  There was some trouble with that.

16   But I believe they'd tried.

17   Q.   What do you mean there was trouble with it?

18   A.   When I met Duran, he claimed he had made

19   several recordings.  And when I checked that, there

20   weren't any.  So then I talked to Agent Brusuelas,

21   and she was under the impression as well that he did.

22   And it turns out that the device they were using,

23   which I'm familiar with, was smaller, and didn't

24   work.  I think the batteries were dead.

25   Q.   The entire time he had the device, or --

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1      A.   No.  Because there was one recording on

2    there of Timothy Martinez, so that indicates to me --

3    because I wasn't handling Duran when he did that one.

4    So I think there was enough power on the device to

5    get that conversation, however long it lasted.  Duran

6    claimed that he also had a really long conversation

7    with Mario Rodriguez.  And that doesn't exist.

8      Q.   And the first call was with Tim Martinez, I

9    believe you said?

10     A.   Yes.  Not a call, but a recording.

11     Q.   A recording, an ELSUR recording?

12     A.   Yes.

13     Q.   Was that turned over in discovery?

14     A.   Yes.  As I understand it, a number of the

15   cooperators have told me -- they kind of tell me

16   where on the tablet it is.  But I'm not sure exactly.

17     Q.   Was that the same type of recording

18   device -- without going into specifics -- that was

19   used later, when you took over the duties of handling

20   Mr. Duran, or did you change makes, models?

21     A.   It was not the same device.  It was very

22   different.

23     Q.   Now, did you talk to him about how to

24   handle the new device that you gave him?

25     A.   Yes.  Without going into great detail, the


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    original device was more complex.  And I had tried it

2    in the prisons on another case as well.  I didn't

3    like it.  We were getting the device back and the

4    recordings weren't on there.  So we dumbed it down to

5    this simple device we talked about a bunch in here,

6    with an on and off switch.  So I think I had some

7    conversation with him about that.

8         Q.   Now, is there a standard set of protocols

9    that you would go through to -- I'll use the word

10   train, but instruct, you know, school a confidential

11   informant on how to use the device?

12        A.   No.  Particularly not a simple one like

13   that.

14        Q.   Would there be any protocols within the FBI

15   about, you know, making sure you get complete

16   recordings of conversations?

17        A.   To answer your question, no.  Is there a

18   protocol within the FBI?  No.

19        Q.   Would that be something you would be

20   concerned about, as an FBI agent handling a

21   confidential informant, to make sure you capture a

22   conversation from the beginning of it until the end

23   of it?

24        A.   Yes and no.

25        Q.   Why yes?

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                                 (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492
                                                                              1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1          A.   Well, if the informant tells me a

2     conversation happened, and it's not on there, then

3     they're going to have to do it over.  They don't get

4     credit for it, or we don't use it in terms of asking

5     for prosecution.

6          Q.   Why no?

7          A.   Well, we're in the most secure facility in

8     the state in terms of a prison.  And we had

9     significant challenges getting recording devices in

10    there, and significant failures attempting to do so

11    early on.  So we also had failures with the devices

12    themselves in terms of the battery life.  So I say no

13    because a new battery life was an issue.  And I made

14    that known to the sources.  So, in that case, if two

15    neighbors are talking endlessly for hours, they're

16    going to have to turn it off.

17         Q.   Why not just wire the cells, you know,

18    independently so you didn't have to worry about

19    battery life or anything like that?

20         A.   We thought of that.  We considered that.

21    We considered using car battery type things.  The

22    problem was we couldn't get techs into the

23    institution.  All of the inmates are very watchful,

24    particularly the SNM.  I've been in their pod a

25    number of times.  And they know we're coming as soon

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492



1-800-669-9492
PROFESSIONAL COURT                                  e-mail: info@litsupport.com
REPORTING SERVICE

1   as we hit the gates.

2         Q.    Was there a way to wire the cells so you

3   didn't have to come and go, so it could just be

4   independent?

5         A.    I'm not a tech agent.  But I did ask that.

6   That was my preference.  And I think we went as far

7   as doing some site survey, the tech agents.  And they

8   could not come up with a plan and not compromise

9   security, so no.

10        Q.    So if I understand your answer -- and

11  correct me if I'm wrong -- this was the best

12  available solution you had to make recordings in this

13  particular unique environment?

14        A.    Yes, sir.

15        Q.    How often -- when you talked about battery

16  life, in your experience, how often did you have to

17  change out the batteries for any particular device?

18        A.    That's a tough one.  Because when we get it

19  back -- as you may recall from some of the other

20  hearings, I don't handle the device other than to

21  turn it in.  So I don't know if an informant has used

22  it for a couple of weeks, and then I turn it in, I

23  don't know how much battery life is left.  So it's

24  hard for me to say.  But I would rely primarily on

25  the informants to tell me, Hey, I've got a lot of

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                  1-800-669-9492
                                                                   e-mail: info@litsupport.com

```
 1    conversation.  And that was my indicator that we need
 2    to probably switch the device.
 3         Q.   Now, Captain Sapien just spoke -- would you
 4    nudge Sapien to switch out the device, or how would
 5    he know to go in?
 6         A.   Actually, from my recollection, a number of
 7    times he told me, because he had more communication
 8    with the informants in the Level 6 than I did.  He
 9    had more awareness.
10         Q.   Because he's there on a daily basis?
11         A.   Correct.
12         Q.   So is there any way for the individual
13    handling the device to know how much battery life is
14    left in it?
15         A.   No.  They're going to be estimating.  But
16    they don't know.  There is no readout or anything
17    like that.
18              MR. LOWRY:  May I have a moment, Your
19    Honor?
20              THE COURT:  You may.
21         Q.   Is the only way an individual using the
22    device would know the battery is dead if the light
23    wouldn't come on when you tried to activate it?
24         A.   That makes sense on that particular type of
25    device.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   How often did you review -- when you clawed
 2   back a device, how eager were you to review the
 3   audios that were on it?
 4        A.   I wasn't.  I had newer agents doing that.
 5        Q.   I take it those newer agents would give you
 6   feedback about what was there?
 7        A.   Yes, they wrote a summary.  I think you had
 8   me -- or perhaps, it may have been Mr. Castellano --
 9   but I read through the bullet point summaries.  They
10   would write those.
11        Q.   Okay.  And were you part of, I think, of
12   Joe Sainato's conversations with Mr. Duran about the
13   quality of the recordings?
14        A.   No.  That agent would report that he was
15   having a problem, and indicate that he was going to
16   communicate that to Duran.  That's the extent I would
17   have been involved.
18        Q.   Did anybody ever express any concern to you
19   that the way the recordings were being made -- and by
20   that -- let me withdraw that question, Your Honor.
21             Is it fair to say that sometimes you just
22   have snippets of conversations?
23        A.   Yes.
24        Q.   And is it fair to say, more often than not,
25   the recordings that we see on the ELSUR devices
```

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   really were just partial conversations?
 2        A.   Well, they're not complete.  Some of them
 3   are -- you know, they last several minutes.  But
 4   where they start and where they end might be cut off.
 5             MR. LOWRY:  Where did we leave off on
 6   exhibit numbers?
 7             THE COURT:  I think on this hearing it's
 8   Exhibit C, am I correct, Ms. Standridge, on this
 9   hearing?
10             THE CLERK:  I'm looking for it.
11             THE COURT:  Use Exhibit C.
12             THE CLERK:  I think so.  D as in dog.
13             THE COURT:  So it will be Exhibit D, Mr.
14   Lowry.
15             MR. LOWRY:  Thank you, Your Honor.  If I
16   may.
17        Q.   So I'm just putting on the Elmo what I've
18   marked as Defendant's Exhibit D.
19             THE COURT:  Do you have any objection to
20   this, Ms. Armijo?
21             MR. CASTELLANO:  No objection, Your Honor.
22             THE COURT:  Anybody else?  You're moving
23   its admission?
24             MR. LOWRY:  Yes, I am, Your Honor.
25             THE COURT:  Defendant's Exhibits D will be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   admitted into evidence.  Mr. Baca's Exhibit D.
 2           MR. LOWRY:  If I could focus this.
 3       Q.   Do you see that?  And Special Agent Acee,
 4   this is what you're talking about some of the calls,
 5   some of the snippets would be anywhere from
 6   two-and-a-half minutes on this particular exhibit,
 7   which is in three parts, of the 16-and-a-half
 8   minutes, roughly?
 9       A.   Yes.
10       Q.   And so nothing -- the length of the
11   recording would be completely dictated by this
12   objective point of view of Mr. Duran?
13       A.   Well, it would be completely subjective to
14   the on and off switch.
15       Q.   Well, the on and off switch didn't have any
16   ability to cut itself on or off, did it?
17       A.   I don't think so.
18       Q.   Okay.  And so the person operating the
19   device would be Mr. Duran?
20       A.   Yes, sir.
21       Q.   And something in his mind had to trigger
22   him to cut the switch on?
23       A.   Correct.
24       Q.   And something triggered it to cut off.
25       A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   And that would just be his independent

2   opinion about whether the conversation was worthy of

3   recording?

4      A.   He was in total control of the device.

5      Q.   And, again, I want to cycle back just to

6   make sure we're clear on the record.  But there was

7   never any advice, instruction, encouragement, hey,

8   when you get up in the morning and you say, "Good

9   morning, Mr. Baca" -- cut it on then, see what you

10   get, and then cut it off?

11      A.   No, I didn't give him any advice like that.

12      Q.   So what advice did you give him in terms of

13   what you wanted to see on the recordings?

14      A.   Well, in our first interaction in August,

15   after I met him, he told me that he had made several

16   recordings, which I couldn't find.  So my advice to

17   him was to make sure the device was on, to not leave

18   the device on.  And to capture conversations related

19   to the Molina murder and the conspiracy to kill the

20   corrections officials.

21      Q.   Did it ever concern you that Mr. Duran

22   might, you know, lead somebody into a conversation

23   just to record them?

24      A.   Well, yes.  I mean, I have that concern

25   with all informants.  But I have to let the recording

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                         1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1    speak for itself.

2         Q.   And I guess that's my point.  Can the

3    recording really speak for itself, if it's not

4    completed?

5         A.   I think it can.  If there is enough there,

6    if we can corroborate that with other information

7    that we're getting from other sources or other

8    recordings.  So, you know, a partial recording on

9    itself, if an informant just brought it to me and

10   said, Mr. Lowry committed this crime, here is ten

11   seconds, that's garbage.  But to have those other

12   sources I mentioned, that helps put it together for

13   us.

14        Q.   Did it ever cause you concern -- okay, you

15   have -- Mr. Duran has the ELSUR device and at the

16   same time he's issued a cellphone by the FBI;

17   correct?

18        A.   Yes.

19        Q.   And you were in relative -- well, let's put

20   it this way:  You could communicate with Mr. Duran

21   via text messaging if and when you wanted to?

22        A.   I could.

23        Q.   In the text messages that were disclosed in

24   this case, at various times in early -- well, after

25   Mr. Baca arrived back to Level 6 -- I believe it was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    October 22, 2015?

 2         A.    That sounds about right.

 3         Q.    And at this point in time, Mr. Duran called

 4    it his mission to record Mr. Baca regarding the

 5    Marcantel --

 6         A.    I think I remember seeing that.

 7         Q.    Was that your understanding of his mission?

 8         A.    It was part of it.

 9         Q.    But when you first met him in August, he

10    had told you Mr. Baca is eager to make this Marcantel

11    hit happen?

12         A.    I don't know.  Because, I mean, it took us

13    some time to get Mr. Baca back.  And I didn't

14    communicate that to Duran until right before he was

15    there.  Like, I wouldn't be communicating our

16    investigative plans to any of the informants until

17    they needed to know.

18         Q.    So do you recall drafting an FBI report

19    after you first met Mr. Duran on the 5th of August,

20    2015?

21         A.    I don't know if I did that one.  But I'm

22    sure there is a report.

23              MR. LOWRY:  May I approach, Your Honor?

24              THE COURT:  You may.

25              Why don't we do this:  This is probably a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   good time for us to take our afternoon break.  So why
 2   don't we be in recess for about 15 minutes.
 3             MR. LOWRY:  That's fine, Your Honor.
 4             (The Court stood in recess.)
 5             THE COURT:  Let's go back on the record.
 6   It looks like every defendant has an attorney.  But
 7   make sure that your co-defendant has an attorney.
 8             All right.  Mr. Acee, I'll remind you that
 9   you're still under oath.
10             Mr. Lowry, if you wish to continue your
11   cross-examination of Mr. Acee, you may do so at this
12   time.
13             MR. LOWRY:  Thank you, Your Honor.  I was
14   going to approach the witness to refresh his
15   recollection.
16             THE COURT:  You may.
17             MR. LOWRY:  Thank you.
18        Q.   Now, what I've handed you, just to refresh
19   your recollection, is that your initial report
20   documenting the initial meeting you had with
21   Mr. Duran?
22        A.   Yes, sir.
23        Q.   Okay.  And there is a highlighted portion.
24   I think it's on the third page of that.  But at the
25   top of that highlighted portion, you drafted your
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                         1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    report, and according to your report, Mr. Duran
 2    reported to you that Mr. Baca was eager to hit the
 3    Secretary of Corrections, Gregg Marcantel?
 4         A.   Yes, sir.
 5         Q.   So my question to you is:  Did it surprise
 6    you at all, when Mr. Duran began to record Mr. Baca,
 7    and there was no initial interest in putting a hit on
 8    Secretary Marcantel?
 9         A.   No, I wasn't surprised.
10         Q.   Were you surprised when Mr. Duran tried to
11    ask -- not tried, but Mr. Duran point-blank asked Mr.
12    Baca if he wanted to hit Secretary Marcantel, and Mr.
13    Baca said no?
14         A.   I think you're referring to transcripts
15    that we went over.
16         Q.   That's correct, and it's part of the
17    motion.  But --
18         A.   I'm sorry?  The question was, was I
19    surprised?
20         Q.   Correct.
21         A.   No.
22         Q.   Why not?
23         A.   Well, from what I recall from that
24    transcript, they were speaking over each other, too.
25    And Baca's response, if I remember correctly, was
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                        1-800-669-9492
                                                            e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    just simply, "No," with no elaboration after that.

2    So I don't know if that "no" was in relation to him

3    asking the question about hitting Marcantel, or if it

4    was an earlier question.

5         Q.   Okay.  But these initial recordings -- and

6    if we look at them again on Defendant's Exhibit D --

7    I mean, all the recordings -- and I have all the

8    transcripts here -- but could you point to a single

9    transcript in the month of October where Mr. Duran

10   recorded Mr. Baca, where Mr. Baca said:  I want to

11   hit Secretary Marcantel?

12        A.   I don't know if those are in the October

13   transcripts.

14        Q.   Okay.  So the answer to my question is no,

15   none of these recordings in October?

16        A.   Well, I don't want to be uncooperative with

17   you.  But my answer is I don't know what's in the

18   October transcripts without looking at them.  And

19   this isn't a representation of the transcripts.

20        Q.   Fair enough.  And I was going to try to

21   avoid doing this.  But would you like to see a set of

22   the transcripts for the month of October?

23        A.   If you'd like me to review them, I will.

24        Q.   Do you have an independent recollection of

25   whether there was any kind of representation made by

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Baca during the month of October, that he wanted

2    to see the Secretary Marcantel murdered?

3         A.   My recollection is those conversations

4    picked up later in the investigation throughout the

5    last couple of weeks of November.

6         Q.   So I want to come back to the question that

7    I was really driving at.  If Mr. Duran told you that

8    Mr. Baca was so eager to have Mr. Marcantel killed,

9    why weren't you concerned that you have, what, nine

10   days and hours worth of recordings here with nothing

11   on it?

12        A.   Sure.  Well, Mr. Duran's reporting to us

13   that Baca was eager to hit Santistevan was actually a

14   conversation from 2013, I believe, is what Duran was

15   relating, that happened down here in Las Cruces at

16   the Southern New Mexico Correctional Facility.

17            Duran eased his way into that conversation

18   over a six- to eight-week period.  He didn't open up

19   with that.  I don't know if I'm answering your

20   question.

21            But we're combining the statement made in

22   2013 with no recorder.  Then now we've introduced a

23   recorder, and we've asked him to get Baca to talk

24   about that again.

25        Q.   How do you know that statement in 2013 was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    actually made?

2        A.   Well, I can't be certain of it.  But I've

3    heard it from three people that were in the hole, or

4    in the Ed Seg area together.

5        Q.   Because when we started this conversation

6    this afternoon, I believe what you said was, if it

7    wasn't on the recording, it sort of didn't really

8    happen, you missed your opportunity?

9        A.   I prefer a recording.  If three different

10   sources are telling me something happened, that may

11   not be enough to prosecute them.  I don't make those

12   decisions.  But I prefer a recording.

13       Q.   Do you think Mr. Duran was a skilled

14   manipulator?

15       A.   Probably.

16       Q.   Do you think he manipulated the people

17   around him?

18       A.   Depending who they were.

19       Q.   Did he manipulate women?

20       A.   Probably.

21       Q.   From your review of the recordings, does he

22   manipulate women in his life?

23       A.   I think he's pretty skilled at that.

24       Q.   And he manipulates people to get money?

25       A.   He manipulates people to give him money?



SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110              201 Third NW, Suite 1630
Santa Fe, NM 87501                       Albuquerque, NM 87102
(505) 989-4949                                    (505) 843-9494
FAX (505) 843-9492                          FAX (505) 843-9492
                                                1-800-669-9492
                                          e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   Well, he manipulates women to give him

2    money.

3      A.   He may have.  I can't think of any

4    circumstances where I saw that.

5      Q.   Have you listened to any of the regular

6    jail recordings?

7      A.   I've listened to a lot of jail recordings.

8      Q.   Did you have any of your staff listen to

9    the jail recordings with Carolyn Bueno?

10     A.   I don't -- I'm not familiar with that

11   conversation.

12     Q.   But you would agree that he is a very

13   skilled manipulator?

14     A.   No.  I mean, does Mr. Duran -- did

15   Mr. Duran manipulate me?  I don't think so.  I think

16   it depended who it was.

17     Q.   Well, I didn't say that.  But with regard

18   to the inmate population.

19     A.   I think Mr. Duran has the gift of gab, and

20   some people fall for it, and some people don't.

21     Q.   So I'm going to hand you what I'm going to

22   mark as Defendant's Exhibit E.  You remember the

23   bullet points you were talking about in the FBI

24   report you did, the FD 1023?

25     A.   Yes, sir.  I think Mr. Sainato did this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    one.  But I do remember it.
 2         Q.   And if we look at this call here, it's the
 3    10th call, this initial number, the 0730, that's the
 4    actual ELSUR device that's being employed; correct?
 5         A.   Yes, sir.
 6         Q.   And the .010, that would be the 10th
 7    recording on this particular recording set; correct?
 8         A.   Yes, sir.
 9         Q.   So jumping from that back to Defendant's
10    Exhibit D, that would be this call right here, 10,
11    the 3 minute and 26 second call?
12         A.   Yes.
13         Q.   Now if, we look at --
14              THE COURT:  Did you want to move this
15    admission?
16              MR. LOWRY:  Not for -- well, not for this,
17    Your Honor.  I was just trying to direct Mr. Acee's
18    attention to this, so we could really come back to
19    Defendant's Exhibit D to talk about this call.
20         Q.   So what we know about this particular call,
21    call 10, is it would have begun --
22              THE COURT:  I guess I'm a little concerned
23    with him testifying, for the clarity of the record,
24    about Exhibit E, and then I not being able to find
25    Exhibit E when I get ready for it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. LOWRY:  Well, I'm just trying to set up
 2   the length of this call, Your Honor, so we can
 3   understand the transcript a little better.  But --
 4              THE COURT:  Well, either don't use E, or
 5   let's try to move it and let me make a decision on
 6   it.
 7              MR. LOWRY:  Sure.
 8              THE COURT:  Any objection?  Do you want to
 9   move it?
10              MR. LOWRY:  I'll move it.
11              THE COURT:  Any objection?
12              MR. CASTELLANO:  No objection.
13              THE COURT:  Anybody else?
14              All right.  So Exhibit E will be admitted
15   into evidence.  I just got to keep these --
16   otherwise, I'm not going to be able to reconstruct
17   the record when look at it.
18        Q.   So Exhibit E would be call 10 on Exhibit D;
19   correct?  If I'm representing to you that Exhibit E
20   is the 10th call.
21        A.   Yes, sir.
22        Q.   And this transcript would have taken place
23   on the 23th of October, 2015, from 2100 hours?
24        A.   9:46 p.m., I believe.
25        Q.   9:46 to --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   9:50.
 2        Q.   -- 9:50?  So -- I mean, this recording was
 3   made just six minutes after the prior recording; is
 4   that correct, 10?
 5        A.   Yes.
 6        Q.   And then, if you look -- and then the next
 7   recording would have been two hours later, roughly?
 8        A.   Yes.
 9        Q.   Number 11?
10        A.   I agree.
11        Q.   So it appears from the time stamps they're
12   talking, and he just turned the recorder on and off
13   when he feels like it?
14        A.   Yes.
15             MR. LOWRY:  May I approach, Your Honor?
16             THE COURT:  You may.
17        Q.   I'm going to hand you what I've marked as
18   Defendant's Exhibit E.  And for everybody else, this
19   is DeLeon Bates No. 6043.
20             And looking at that transcript, is it
21   fairly obvious that this takes place in the middle of
22   a conversation?
23        A.   I think that it did.  I guess it could
24   start out with "Pup"'s initial statement.  But
25   probably started in the middle of the conversation.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   And if you look at the last page, at DeLeon

2   6046, literally the recording stops in the middle of

3   a sentence?

4     A.   Correct.

5     Q.   And this was a transcript prepared by your

6   office?

7     A.   Yes, sir, it was.

8     Q.   So would you agree with me that this is

9   nothing more than a portion, a snippet, of what

10  appears to be a longer conversation that evening?

11    A.   It's a portion of a conversation that we

12  don't have the start or end of.

13    Q.   And we have no way of knowing, as we sit

14  here in the courtroom today, the other components of

15  that conversation, other than the potential testimony

16  from Mr. Duran or Mr. Baca?

17    A.   I believe that.

18    Q.   But, in keeping with your policy of

19  preferring a recording, why wouldn't you have

20  assisted Mr. Duran with some advice, Hey, can you

21  capture everything?

22    A.   Well, he'd be following my advice if that

23  other -- that missing information wasn't pertinent to

24  the crimes we were looking at.

25    Q.   Right.  But if -- hypothetically, if

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492



1-800-669-9492
PROFESSIONAL COURT                                  e-mail: info@litsupport.com
REPORTING SERVICE

1    Mr. Duran is trying to manipulate somebody into

2    saying something that benefits him, it doesn't

3    necessarily benefit you, does it?

4         A.   I don't know.  I'm not sure.

5         Q.   Well, I mean, let me boil it down to its

6    essence.  If the plot to kill Mr. Marcantel really

7    sprung from Mr. Duran, and he had to convince

8    somebody that it's a good idea, that's not helpful to

9    your case, is it?

10        A.   No.  But it just depends.

11        Q.   Well, if Mr. Duran is working for you --

12        A.   Yes.

13        Q.   -- and you had informed him via text that

14   he's a government agent --

15        A.   Yes.

16        Q.   -- and you informed him via text that he

17   can't participate in the conspiracy; correct?

18        A.   Okay.  These are the normal type of

19   conversations we have.

20        Q.   Right.  I mean, these are things you

21   actually texted Mr. Duran?

22        A.   I'll take your representation.

23        Q.   It wouldn't help you to have a government

24   agent precipitate a crime of that nature, a murder of

25   the Secretary of Corrections of New Mexico?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   I'm just struggling with this one, because

2   we do reverse operations, where -- and I've worked as

3   an undercover agent in the past -- where we are

4   participating in that crime.  To an extent, you know,

5   we're soliciting it or we're trying to get people to

6   join us.  So that's why I'm hesitating.  Maybe I'm

7   not understanding what you're asking.

8       Q.   Okay.  But, well, if it was Mr. Duran's

9   idea, that's not a good thing, is it?

10      A.   If it's Duran's idea to kill the Secretary?

11  No.  And there is no other conversation about it?

12  No.

13      Q.   There is no real way -- you didn't have,

14  from what I'm understanding through your testimony,

15  there was no police mechanism with Mr. Duran to say:

16  We want the whole enchilada, not just a part of it?

17      A.   In terms of conversation?

18      Q.   Um-hum.

19      A.   No.  And we didn't want the whole enchilada

20  if it didn't pertain to those two conspiracies, or

21  the SNM.  We didn't want a lot of personal business,

22  because we're losing valuable recordings.

23      Q.   But, in fairness, you wanted inculpatory

24  information?

25      A.   No.  I'd take exculpatory, if it was on the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492
                                                             e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   topic of the SNM and the hit on Marcantel, I'd take
 2   that, too, to be fair, certainly.
 3        Q.   But if you're Mr. Duran, and you realize
 4   your paycheck is dependent on the inculpatory
 5   information, where is the incentive for Mr. Duran to
 6   get the exculpatory information?
 7        A.   I don't agree with saying there was a
 8   paycheck.  Because I didn't discuss that with him.
 9   And I didn't tell him he was getting a paycheck,
10   or --
11        Q.   Your very first recorded conversation with
12   Mr. Duran, on September 10, 2015, discussed Mr. Duran
13   getting commissary money; correct?
14        A.   It may have, I guess, if we're going to
15   count buying chips at the store a paycheck.  I
16   thought you meant something more substantial.  I'm
17   sorry.
18        Q.   Well, in fairness, he did get something
19   more substantial, didn't he?
20        A.   He did in the end, yes.
21        Q.   Did he in the middle?
22        A.   No.
23        Q.   He didn't get a substantial sum of money at
24   the beginning of 2016?
25        A.   He had at the conclusion of my handling
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    him, before I relocated him, yes.  If you're saying

2    at the middle of his time as a FBI informant, that's

3    fair.

4        Q.   Let's just say before he was released from

5    the Department of Corrections.

6        A.   Yes.  For one reason only.  Into the

7    federal fiscal year, I had to spend that money or it

8    was going back.

9        Q.   And that's why you ended up having to go to

10   the Department of Corrections and depositing $25,000

11   on his commissary account?

12       A.   Yes, I had to do that by September 1st, I

13   believe.

14       Q.   And that was literally a calendaring issue

15   with the federal budget?

16       A.   Unfortunately.

17       Q.   But he was still incarcerated with the

18   Department of Corrections at that time?

19       A.   Yes, sir.

20       Q.   But it was clear to you, from the inception

21   of your relationship with him, that Mr. Duran was in

22   it for the money?

23       A.   I don't agree.  At the time I was working

24   over a dozen of these guys, targeting this group

25   right here.  And I wasn't talking to him about money

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   or paying him money.
 2        Q.   Okay.  Well, Mr. Duran wanted his chips?
 3        A.   Oh, the commissary.  Yeah, let me back up.
 4   Sure.  If we're going to talk about commissary
 5   checks, that was important to all the cooperators,
 6   and I did provide that.
 7        Q.   But for Mr. Duran, it wasn't just
 8   commissary money for him, you actually had to go
 9   visit Grace Duran at her house and deliver money to
10   her?
11        A.   Not at her house.  But, yes.
12        Q.   But to her?
13        A.   Correct.
14        Q.   For her kids?
15        A.   I don't -- if that's where he wanted his
16   money to go.  I don't ask questions beyond that.
17        Q.   Do you recall a conversation that you had
18   with Mr. Duran on November 20, 2015?
19        A.   You'd have to remind me.
20             MR. LOWRY:  May I approach, Your Honor?
21             THE COURT:  You may.
22        Q.   And this is Defendant's Exhibit F.
23             MS. JACKS:  Is there a Bates?
24             MR. LOWRY:  There is.
25        Q.   If you want to take a moment to review
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    that.  Could I direct your attention to the bottom of
2    page 9.  Is it fair to say this conversation you had
3    with Mr. Duran, you're sort of trying to loop "Styx,"
4    who is Gerald Archuleta, you're trying to loop him
5    into this scheme to murder Secretary Marcantel?
6         A.   I think I'm trying to get "Styx," Gerald
7    Archuleta, and Anthony Baca talking on that phone.
8         Q.   And as part of that conversation,
9    Mr. Duran, at the bottom of page 9, basically offers
10   to -- and I'll in my words -- manipulate each one of
11   the players to get them on the phone together, to
12   benefit your desire to have them talk to each other?
13        A.   Well, I don't agree with you about the
14   manipulation part.  He's just simply saying, Yeah, I
15   can tell "Pup" that "Styx" wants to talk, and I can
16   tell "Styx" that he wants to talk.
17        Q.   Well, we can disagree with the word
18   "manipulation."  But if Duran was to tell "Styx" that
19   "Pup" wanted to talk to him, that would be a lie,
20   wouldn't it?
21        A.   It would be a lie -- well, maybe he does
22   want to.  But he'd be driving that, yes.
23        Q.   And likewise, you had no idea whether
24   "Styx" wanted to talk to Mr. Baca?
25        A.   No, I had a feeling that he would, though.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Okay.  And you don't disagree with me that
 2   probably neither Mr. Archuleta, nor Mr. Baca, wanted
 3   to talk to each other?
 4        A.   I think that they would have talked to each
 5   other.
 6        Q.   You think they would have?
 7        A.   I think they would have.
 8        Q.   But that's not what Mr. Duran told you?
 9        A.   On the bottom of 9?
10        Q.   Well, I mean, he says that Mr. Baca didn't
11   want to talk to Mr. Archuleta at all because he
12   thought Mr. Archuleta had a big mouth?
13        A.   I didn't see that, sir.  Where are you on
14   page 9?  I'm sorry.
15        Q.   I'm not on page 9.  I think if you back
16   up -- look at the bottom of page 6.
17        A.   I don't see it there, sir.
18        Q.   Well, you say -- pardon me, that's when
19   you -- you're the "Unidentified FBI agent" in this
20   conversation, are you not?
21        A.   I think so.
22        Q.   And when you say "he talks a lot," you're
23   talking about Mr. Archuleta?
24        A.   Yes.
25        Q.   So if you look at the top at page 2, about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    two-thirds of the way down, lines 15 through 20,
 2    Mr. Duran tells you that, "Nah, he wouldn't ask
 3    'Styx'" -- meaning that Mr. Baca wouldn't talk to Mr.
 4    Archuleta?
 5         A.   I do see those lines.
 6         Q.   Okay.  And you agree with me that in Eric
 7    Duran's estimation, if you look at the top of page
 8    2 -- or pardon me, the top of page 3 -- Eric Duran
 9    says, "No, he likes him.  It's just that he has a big
10    mouth"?
11         A.   That is what Mr. Duran says.
12         Q.   By that he's meaning that Mr. Baca wouldn't
13    talk to Mr. Archuleta because Mr. Archuleta talks too
14    much?
15         A.   He wouldn't talk to him about the Marcantel
16    hit, or whatever hit they're talking about, because
17    he has a big mouth.
18         Q.   Right.  And that's what you wanted,
19    Mr. Duran to facilitate that conversation?
20         A.   Yes.
21         Q.   And Mr. Duran was willing to lie to each
22    one of the individuals to get them on the phone
23    together?
24         A.   Yes.
25         Q.   But that still never happened, did it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   I don't -- we do have a few three-way calls

2    with "Styx" and guys on the inside at the Level 6.

3    But I don't know that Mr. Baca was part of that.

4    Q.   But my question here is -- I mean, you

5    didn't say or do anything to kind of nudge Mr. Duran,

6    and say, you know, maybe that's not a good idea to

7    lie to Mr. Archuleta to get Mr. Baca on the phone, or

8    mislead Mr. Baca to get Mr. Archuleta on the phone?

9    A.   No, I didn't do that.

10   Q.   You were here to hear Mr. Sapien testify?

11   A.   Yes.

12   Q.   Would you agree with Mr. Sapien that the

13   ELSUR device was switched out with Mr. Duran

14   simultaneously?

15   A.   If he said that, I believe it.

16   Q.   Okay.  So according to Mr. Sapien's

17   testimony, Mr. Duran would have always had an ELSUR

18   recording device with him?

19   A.   He should have.  That was the plan.

20   Q.   Did you ever ask Mr. Duran, after the

21   initial spate of recordings in October, after Mr.

22   Baca arrived back at the facility why, you know, the

23   frequency of the recordings started to taper off?

24   A.   No.

25   Q.   Okay.  Did it concern you that days would

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    go by without a recording being made?

2         A.    No.

3         Q.    Why not?

4         A.    Because they'd already covered it.  And to

5    talk about it too much, I think would have been

6    foolish on Eric Duran's part.

7         Q.    What do you mean "they already covered it"?

8         A.    Well, as the -- as you said, as the

9    recordings started to taper off, they'd already

10   discussed and put in motion the hit on both guys.

11   And the belief was that Mario Montoya was on the

12   street, going to hit Marcantel any moment.  I think

13   too much talk sometimes is like a nervous talk, and,

14   you know, these guys are -- these are some

15   experienced guys.  So to do that would be foolish.

16        Q.    Well, where did you get the sense that Mr.

17   Baca understood that somebody on the street was going

18   to hit Marcantel?

19        A.    Through his conversations over the recorded

20   telephone with Mario Montoya, primarily.

21        Q.    But those recordings don't happen till much

22   later, until November?

23        A.    I didn't know you were putting a time limit

24   on that question.  I'm sorry.

25        Q.    Well, no, I'm just talking about October

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    here.

2         A.   In October, I wouldn't have known the full

3    extent of that.

4         Q.   In October -- if we look at what's called

5    number 19, call number 19 would be the call where Mr.

6    Baca tells Mr. Duran that he's not interested in

7    hitting Mr. Marcantel?

8         A.   By saying "No"?

9         Q.   Correct, by saying "No."

10        A.   I don't think that excludes him, sir, that

11   simple "no" didn't negate that.  We fleshed out so

12   much more information subsequently.

13        Q.   Subsequently?

14        A.   Yes, sir.

15        Q.   After he said that?

16        A.   If that "no" was even in the right place in

17   that transcript, yes.

18        Q.   All right.  I'm going to switch over from

19   talking about the ELSUR recordings to talking about

20   the cellphone, if I can real quickly.  Was it -- did

21   you ever instruct Mr. Duran not to delete material

22   off his cellphone?

23        A.   I may not have.  I may not have.

24        Q.   Did you think Mr. Duran thought he was free

25   to delete whatever was on his cellphone?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    I don't know.  Because I told him that

2   everything on the phone we could see.  And I gave him

3   some admonishments about what to stay off of,

4   specifically, on the phone.  So I gave him the belief

5   that, you know, we were seeing everything as it was

6   happening.  And I think he believed that, because

7   sometimes in his conversations he'd say, "Well, did

8   you just hear that?"  And we didn't always, but we

9   represented that we were able to do that with him.

10        Q.    Now, in fairness, were you able to look at

11   the text messages in real-time on the cellphone?

12        A.    I think near real-time, we could.  There is

13   a -- you know, I work on the second floor of the

14   building with the rest of the gang squad.  And the

15   wire room is downstairs.  So it's a matter of walking

16   down there or sitting in front of it.  So it's

17   possible.

18        Q.    So you would capture the actual language,

19   the words of the text, as they came across the phone

20   in real-time?

21        A.    There may have been a delay.  Just given my

22   understanding of how the Bureau's wire interception

23   program works, there could be a little bit of a

24   delay.

25        Q.    So do you have -- are you familiar with

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    what we've referred to over the course of the
2    hearings as that master text file, the 800-some-odd
3    pages of all the texts that were gathered from
4    Mr. Duran's phone?
5         A.   Was that in Ms. Sirignano's motion?
6         Q.   I believe it was.
7         A.   I have looked that over, yes.
8         Q.   In your estimation, was that the Department
9    of Justice's representation of all the texts that
10   were disseminated or acquired using Duran's
11   cellphone?
12        A.   I think her attachment was from her expert.
13        Q.   No, but I'm talking about the disclosure
14   from the Department of Justice.
15        A.   Are you asking me if they match?
16        Q.   No.  I'm asking you if that was the
17   Department's representation of all the texts that
18   were sent and received from Mr. Duran's cellphone?
19        A.   I believe so.  That was contained on the
20   disc from our wire intercept unit, and that's what I
21   turned over.
22        Q.   Okay.  And that was disclosed to all the
23   defense attorneys in the room as part of the
24   discovery in this case?
25        A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Did you ever have an opportunity to compare

2    that file to the Verizon data that was also disclosed

3    in this case?

4    A.   Which files am I comparing?

5    Q.   Well, the master text doesn't have a Bates

6    number, but if we look at DeLeon Bates No. 2385, that

7    I'll mark as 2385 through 2466, but it's a document

8    that looks like this, what I've marked as Defendant's

9    Exhibit G?

10         THE COURT:  Do you move its admission?

11         MR. LOWRY:  I do move its admission, Your

12    Honor.

13         THE COURT:  Any objection, Mr. Castellano?

14         MR. CASTELLANO:  Can I get another look at

15    it?  I can't see it on the screen.  I don't believe I

16    have an objection.  No objection, Your Honor.

17         THE COURT:  And you didn't move F.  Do you

18    want to move F?

19         MR. LOWRY:  I would move F as well, Your

20    Honor.

21         THE COURT:  Any objections to F?

22         MR. CASTELLANO:  No, Your Honor.

23         THE COURT:  Any objection to F or G from

24    defendants?  Defendant Baca's Exhibits F and G will

25    be admitted into evidence.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      Q.   I'll try to zoom in on this a little bit.
 2  But you recognize data like this as something you
 3  would have come across in the course of your
 4  investigation?
 5      A.   Yes, sir.
 6      Q.   And this -- if I understand this document
 7  correctly, this would be what you're talking about is
 8  the intercepts from the Verizon unit as it came in
 9  off the cellphone?
10      A.   I would call these like the call detail
11  records.
12      Q.   And would these would be from the carrier?
13      A.   Yes, sir.
14      Q.   I guess my question is:  If you compare
15  this document, Defendant's Exhibit G, to the master
16  text list that was disclosed by the Department of
17  Justice, none of Gerald Archuleta's texts, the ones
18  you can see that took place on Defendant's Exhibit
19  G -- let me just for an example, bear with me -- are
20  on the master text file.  Do you have any idea why we
21  don't have copies of those texts?
22      A.   Were the texts completed, or was it just an
23  attempt?  Because the call detail record might show
24  an attempt.  But if the text was not sent, or the
25  phone was off, it wouldn't contain any text.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1        Q.    Well, my view of this seems to lend the

2    reading that they were completed.

3        A.    Well, I think on -- the call detail records

4    are a little tricky, because it will indicate the

5    attempts, but sometimes there is no text because it

6    didn't go through.

7        Q.    So if we look at DeLeon 2420, at the top of

8    the page, you see incoming and outgoing texts between

9    Mr. Duran and Mr. Archuleta.  So it looks like there

10   is a back and the forth, if you will.

11       A.    I disagree, sir.  And the reason I disagree

12   is I'm looking at the times, and I think that's an

13   attempt to send, an attempt to send.  And I think

14   Archuleta, or the target phone, is off, and it's not

15   going through, based on the duration there.

16       Q.    So you just think it's a coincidence on the

17   same day, within 10 minutes of each other, that Duran

18   is trying to text Archuleta, and then Archuleta is

19   trying to text Duran?

20       A.    It may be.  I'm not sure.  It might have to

21   do with the signal in there.  There are a lot of

22   possibilities.  So it's a tough answer.

23       Q.    And then, if we look at DeLeon at 2417, as

24   part of Defendant's Exhibit G, the same thing.  These

25   would be a series of texts on October 24, 2015, both

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1  incoming and outgoing in a relatively short period of
 2  time.  It looks like a back and forth.
 3      A.   I would agree with you, Mr. Lowry.  I can
 4  represent to you that what was collected by the
 5  FBI -- not handled by me, other than I obtained it
 6  and turned it over.
 7      Q.   And I'm not suggesting otherwise.  I wasn't
 8  aware, until you just spoke on the stand, that the
 9  FBI had the capability of pulling down the text
10  language in real-time.
11      A.   Well, I said near real-time, I believe.
12  You know, spending a lot of time in wire rooms, that
13  the calls might be delayed because there is a switch
14  through the phone company.
15      Q.   Right.
16      A.   Same thing with the text; routed to an FBI
17  server, then into our office.  So I think there is
18  probably a delay.  It's probably not very much.
19      Q.   But if I understand your testimony
20  correctly -- and this might clarify things for me --
21  is that, if Mr. Duran deleted a series of texts from
22  his phone, the FBI would still have them?
23      A.   I believe that's correct.
24      Q.   Okay.  Would the same hold true for images?
25      A.   No, not necessarily.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1       Q.   Why not?

 2       A.   Well, it just depends.  First, I think it

 3  depends on what the court order says.  And in this

 4  case, I'd have to look at it.  I think it depends on

 5  the capabilities of the phone company and limitations

 6  there.  I think in this case, Verizon can do that.

 7  And then whether or not our technically trained

 8  agents set up the wire intercept to collect that.

 9  For instance, as you know, email or internet traffic

10  could be captured.  But, in this case, what the

11  wiretap was set up to capture was the text messages

12  and the phone calls.

13       Q.   Right.  But if somebody was clever and

14  tried to evade detection, and they knew that, they

15  could just take a picture of a note, and then send

16  the note over the cellphone.  And then what you're

17  telling me is you wouldn't be able to see that?

18       A.    In this case, we would not have been able

19  to see that, I don't believe.

20       Q.   How were you going to capture that material

21  that Eric Duran -- I mean, let's cut to the chase --

22  a cellphone is contraband inside the jail; correct?

23       A.   Normally, it is.

24       Q.   Normally.  Did you give Mr. Duran license

25  to download pornography or have pornography sent to

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                            (505) 843-9494
FAX (505) 843-9492                                                                   FAX (505) 843-9492
                                                                                      1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                      e-mail: info@litsupport.com

1     him over his cellphone as a benefit for his

2     cooperation?

3          A.   No.  And I specifically told him I better

4     not find any of that on his phone.

5          Q.   But you're telling me you had no way to

6     determine that.

7          A.   But he didn't know that.  You're right, I

8     couldn't go to his phone and look through.  And when

9     I went and conferred with our tech agents on what

10    exactly we were capturing, that's when I learned we

11    weren't capturing photos, and we weren't capturing

12    email, because my court order didn't ask for that.

13         Q.   So when Mr. Duran struck up his

14    relationship with Felicia Cordova, the stripper who

15    was sending him photographs, you didn't say, Wa sha,

16    what are you doing, bro?

17         A.   I didn't see those photographs.

18         Q.   Apparently not.  But you did see the text?

19         A.   Well, the text would have been captured.

20    I'm not claiming I saw the text either.  But the text

21    would have been captured.

22         Q.   Right.  And you and your staff were

23    reviewing the texts sort of real-time?

24         A.   We had the ability to review them

25    real-time.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Okay.   Were you interested in reviewing

2    them real-time?

3      A.   I was interested in having some of the

4    agents verify what Duran was representing.

5      Q.   And if he's representing to you he's not

6    getting pornography, but he's getting pornography, is

7    that a concern of yours?

8      A.   If he tells me he's not doing something,

9    and he's doing it, yeah, that's always a concern.

10      Q.   And that's always a concern with Mr. Duran,

11    isn't it; him saying he's not going to do something

12    that he does?

13      A.   It's a concern with all informants,

14    particularly within the SNM.

15      Q.   Particularly with Mr. Duran?

16      A.   I'd lump him into that category.

17      Q.   Let's talk about the admonishments you gave

18    him with specificity.   What admonishments did you

19    give Mr. Duran?

20      A.   I have them.   I can refer to them.

21      Q.   Please do.

22      A.   So the initial admonishments would have

23    been done by Agent Brusuelas.   Do you want me to skip

24    those and just go to the ones I've done?

25      Q.   Yes.

SANTA FE OFFICE                                                                        MAIN OFFICE
119 East Marcy, Suite 110                                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                Albuquerque, NM 87102
(505) 989-4949                                                                                (505) 843-9494
FAX (505) 843-9492                                                                    FAX (505) 843-9492
                                                                                          1-800-669-9492
                                                                              e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1    A.   So the first time he's admonished by myself

2  or one of the agents that working on the case with me

3  was 2016.  The specific date was March 24.  The

4  admonishments were the standard four that I've

5  testified about before, that are applicable to all

6  sources.  And that is:  The CHS's assistance and the

7  information provided to the FBI are entirely

8  voluntary.

9        Number 2, the CHS must provide truthful

10  information to the FBI.

11        Number 3, the CHS must abide by the

12  instructions of the FBI, and must not take or seek to

13  take any independent actions on behalf of the US

14  Government.

15        Number 4, the US Government will strive to

16  protect CHS's identity, but cannot guarantee it will

17  not be divulged.

18        And then there are some additional

19  admonishments that I thought were applicable to

20  Mr. Duran.  And I can read through those.  There are

21  four additional ones.

22    Q.   Sure.  Would you read through them quickly.

23    A.   "The FBI, on its own, cannot promise or

24  agree to any immunity from prosecution or other

25  consideration by an FPO" -- which is a Federal

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Prosecuting Office -- "a state or local prosecutor,

2    or a court in exchange for the CHS's cooperation

3    because the decision to confer any such benefit lies

4    with the exclusive discretion of the prosecutor or

5    court.  However, the FBI will consider, but not

6    necessarily act upon, advising the appropriate

7    prosecutor of the nature and extent of the CHS's

8    assistance to the FBI."

9           The second additional admonishment was,

10   "The CHS is not authorized to engage in any criminal

11   activity and has no immunity from prosecution for any

12   unauthorized criminal activity."

13          And then in parentheses it says, "This

14   instruction is not necessary for CHSs who have such

15   authorization."

16          Number 3, "The CHS is not an employee of

17   the US Government, and may not represent himself or

18   herself as such."

19          And the 4th, and last one is, "The CHS may

20   not enter into any contract or incur any obligation

21   on behalf of the US Government except as specifically

22   instructed or approved by the FBI."

23          So those were the 2016 admonishments.

24   Q.    So you didn't give -- if I understand your

25   testimony correctly, you didn't give Mr. Duran any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  admonishments when you took over handling him in

2  August of 2015?

3       A.   No.  His admonishments -- well, let me --

4  yes and no.  By policy, his admonishments were still

5  good, because Agent Brusuelas had done it.  So that

6  fulfilled the FBI's.  Now, me personally, as an

7  agent, giving someone extra admonishments or

8  instructions outside of policy, I regularly do that.

9       Q.   Did you regularly do that with Mr. Duran?

10      A.   Over the lifetime of Mr. Duran working as

11 an informant, yes.

12      Q.   Okay.  Between August of 2015 and the

13 takedown of the SNM, December 3, did you give him

14 those admonishments when he was making recordings of

15 people?

16      A.   I don't think I did give him any other --

17 nothing is jumping out at me.

18      Q.   Did you have any concerns about Mr. Duran

19 using his phone to engage in gambling via Fantasy

20 Football?

21      A.   Yes.

22      Q.   What did you tell him?

23      A.   I think I got a notice from Verizon that

24 his data was used up like in a record amount of time,

25 and I figured he was looking at something online.  So

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    then I went to the techs, found out -- I thought I

2    had access to all that, and I didn't.  I just had

3    text and phone call.  So then I did admonish him

4    about what he was looking at.  And he said it was

5    Fantasy Football.  And I told him to stop doing that.

6         Q.   Did he stop doing it?

7         A.   I believe he did, because his data went way

8    down.

9         Q.   Have you ever reviewed the forensic

10   analysis of Mr. Duran's phone?

11        A.   Was that attached to Ms. Sirignano's

12   motion?

13        Q.   I don't know.  This was -- well, Nancy

14   Stemo did that in March 20 of 2017.

15        A.   She told me about it.  I don't know that I

16   reviewed it.

17        Q.   Okay.  Would it surprise you to learn that

18   they were only four texts on this phone when she

19   looked at it forensically?

20        A.   No.  You're going to be kind of hard

21   pressed to get something that surprises me.  But I

22   believe you.

23        Q.   Would it concern you?  Let me rephrase the

24   question.

25        A.   Yeah, it may be a minor concern, but then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  again, no, because the wire captured the text

2  messages.

3      Q.   If you look at the Stemo Cellebrite report,

4  and compare it to the text messages that were

5  disclosed to the defense teams, why weren't three of

6  the four text messages in the Cellebrite report in

7  the master text file?

8      A.   I don't know that they weren't.  I mean, if

9  they were -- if the text messages were between the

10  time we had the wire intercept up, they should have

11  been captured.

12      Q.   Well, there are only four text messages in

13  the report, and they are all on the day of the

14  takedown, December 3, 2015.

15      A.   Mr. Lowry, I'm not sure.  I mean, it could

16  have something to do with I bought a pretty small,

17  pretty cheap phone from Walmart.  I don't know if it

18  has to do with that.  But Agent Stemo is very

19  competent, but that was probably her first time

20  dumping a phone.  I'm not really sure.

21          MR. LOWRY:  May I have a moment, Your

22  Honor?

23          THE COURT:  You may.

24          MR. LOWRY:  No further questions, Your

25  Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Thank you, Mr.
2   Lowry.
3              Ms. Sirignano.
4              MR. LOWRY:  May I approach and get the
5   exhibit?
6              THE COURT:  You may.
7              Ms. Sirignano, did you want to
8   cross-examine Mr. Acee?
9              MS. SIRIGNANO:  Yes, please, Your Honor.
10             THE COURT:  Ms. Sirignano.
11             MS. SIRIGNANO:  Are we on G, Your Honor?
12             THE COURT:  Those are Baca's Defendant's
13  Exhibits, so go ahead and start your running with
14  Christopher Garcia's Exhibit A, B, or whatever you
15  want.
16             MS. SIRIGNANO:  Thank you, Judge.
17             THE COURT:  I don't think you have any
18  exhibits yet on this one, right?
19             MS. SIRIGNANO:  No, Your Honor.
20             May I have a moment, Your Honor?
21             THE COURT:  You may.
22                       EXAMINATION
23  BY MS. SIRIGNANO:
24      Q.   Agent Acee, good afternoon.
25      A.   Good afternoon.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   I'm going to start with the extraction
 2   report, the Cellebrite report.  Did you see the
 3   extraction report that Agent Stemo did?
 4        A.   I think I did.
 5        Q.   Was that recently?
 6        A.   No.
 7        Q.   Let me show you what's been marked as Chris
 8   Garcia Exhibit A.  Does that look like the report
 9   that you reviewed?
10        A.   Yes.
11        Q.   And that's Ms. Stemo's name right there.
12   So that would mean that she ran this report?
13        A.   Yes.
14        Q.   That's your Albuquerque case file number?
15        A.   Yes.
16        Q.   And the date that she ran this report is
17   here, March 20, 2017; correct?
18        A.   Yes.
19        Q.   And the phone that she analyzed is the
20   Samsung CDMA, and the device name.  Is that the
21   device that was given to Mr. Duran?
22        A.   Yes.
23        Q.   And on page 2, here, this is the phone
24   number; correct?  505-218-1861.
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    That was Mr. Duran's phone?

 2        A.    Yes.

 3              MS. SIRIGNANO:  Your Honor, I'd like to

 4   move for admission of Exhibit A, please.

 5              THE COURT:  Any objection, Mr. Castellano?

 6              MR. CASTELLANO:  No objection.

 7              THE COURT:  Anybody else?  All right.  Not

 8   hearing any, Christopher Garcia's Defendant's Exhibit

 9   A will be admitted into evidence.

10        Q.    So looking at this report, this is page 2,

11   and it contains a total of five pages?

12        A.    Looks that way, yes.

13        Q.    Thank you.  And so the report says "SMS

14   messages, four," on the phone?

15        A.    Yes.

16        Q.    Total, on this page.  And then on the

17   second page -- actually, this is page 3 -- sorry, I'm

18   having a hard time with this Elmo here -- there is

19   images, SMS messages, incoming.  And then data files

20   towards the middle and the bottom of the page.  On

21   page 4, more data files.  And then on page 5, we've

22   got texts, seven texts here, and then videos, five,

23   down at the bottom here; correct?

24        A.    Yes.

25        Q.    And that it's.  That's the whole Cellebrite
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   report.  Going back to page 2, the SMS messages, it
 2   says "four."  And the first one is dated March 20,
 3   2017; correct?
 4        A.   Yes.
 5        Q.   And it's in the draft folder.  And that was
 6   the day that Agent Stemo did the analysis of this
 7   phone; correct?
 8        A.   Yes.
 9        Q.   Do you know if she typed the message
10   "Krazo" on this phone, or a draft text on this phone?
11        A.   I don't.  I think he had an automatic
12   signature though that said "Krazo."
13        Q.   This is a draft text message.
14        A.   I agree.
15        Q.   So you don't know if Agent Stemo put that
16   there, or -- was she the only one that did the
17   analysis on this phone?
18        A.   Another agent may have gone with her.  I'm
19   not sure.
20        Q.   Did she sign out this phone?
21        A.   No.
22        Q.   Where was the phone?
23        A.   At the office.
24        Q.   Was it in evidence?
25        A.   No.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1        Q.    Why not?

2        A.    I didn't consider the phone evidence.

3        Q.    The phone itself was not evidence?

4        A.    Was not.

5        Q.    Why?

6        A.    I didn't consider the phone evidence.

7        Q.    Yes.  But I'm asking you why?

8        A.    Well, over my career, anytime I've served

9   as an undercover agent, and we've done a consensual

10   wiretap, the evidence that we turn over is the

11   intercept logs, the calls, and the text messages.

12   I've never logged my own phone into evidence.

13        Q.    But we're talking about a snitch phone

14   here.  We're not talking about an undercover phone;

15   correct?

16        A.    It's still an undercover phone.  It's just

17   the operator is different.

18        Q.    Correct.  A sworn law enforcement officer

19   versus a convicted murderer; correct?

20        A.    Yes.

21        Q.    So how can the FBI explain, with the

22   original phone, after 800-some-odd pages of text

23   messages, that this phone only has four SMS text

24   messages on it?

25        A.    This FBI agent can't explain that.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                        1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                          e-mail: info@litsupport.com

1        Q.   Can Ms. Stemo explain that?

2        A.   I doubt it.

3        Q.   Why?

4        A.   I don't want to put words in her mouth.

5   But she's a relatively new agent.  And I think this

6   was the first download of a phone she'd ever done.

7        Q.   Did she wipe the phone?

8        A.   I don't believe so.

9        Q.   Did she unintentionally wipe the phone?

10       A.   I don't think so.

11       Q.   So how did the phone get wiped?

12       A.   Well, we'd have to agree the phone got

13   wiped.

14       Q.   Was the phone wiped?

15       A.   I don't know.

16       Q.   Well, where did all the 800 pages of text

17   messages go on that phone?

18       A.   Well, I don't know that they're not there.

19   Because I think your expert analyzed it, and they

20   were there.

21       Q.   No, they weren't.  Let me refer you to

22   Exhibit B.  This is a Cellebrite report, "Crowe

23   Horwath, LLP."  Do you recognize that?

24       A.   Yes.

25       Q.   Who is that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    Tim Bryan, your expert.

2        Q.    And he reviewed the phone on December 18,

3    2017.  And that's the same phone; correct?

4        A.    Yes.

5        Q.    Looking at the second page, the same phone

6    number there, 505-218-1861; correct?

7        A.    Yes.

8        Q.    And then there is four text messages there;

9    correct?

10            MS. SIRIGNANO:  Your Honor, I'd move for

11    admission of Chris Garcia B, please.

12            THE COURT:  Any objection, Mr. Castellano?

13            MR. CASTELLANO:  No objection.

14            THE COURT:  Anybody else have any

15    objection?  All right.  Christopher Garcia

16    Defendant's Exhibit B will be admitted into evidence.

17        Q.    So these four text messages look identical;

18    yes?

19        A.    They do.

20        Q.    Okay.  What happened with the 800-plus text

21    messages on this phone, Agent, do you know?

22        A.    I don't.  And I'm sorry, I think I misread

23    your motion.  Sorry to say that that was in there.  I

24    think you must have attached what the Government

25    turned over.  I'm sorry.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.    The text messages?

2     A.    Yes.

3     Q.    Where did that master text list come from?

4     A.    It came from the FBI.  Do you want the

5  specific unit, or --

6     Q.    I'd just like to know how it was compiled.

7     A.    Sure.  So that's not my area of expertise,

8  but I can explain my understanding of it.  I obtained

9  a court order; provided that to our technically

10  trained agent unit.  They served the order on

11  Verizon, and then they coordinated with our

12  collection unit, if you will, which is not located

13  here in Albuquerque; it's out of the state.

14        Once the texts or phone calls or whatever

15  the data is that we're collecting is collected, it's

16  then routed to the field office from that central

17  collection unit.  So that's what we were looking at.

18        I get a -- once the wire comes down, that

19  unit sends me a disc that contains all that

20  information.  As I was -- actually, they send that to

21  the ELSUR technician, and I get a copy.  So that's

22  what we turned over.  And I believe that's what was

23  printed and turned over.  And I mistakenly thought it

24  was your expert's when I read your motion.

25     Q.    Okay.  So it's coming directly from the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    FBI's collection unit that works directly with

 2    Verizon; yes?

 3         A.   Yes.

 4         Q.   When I was there, we had reel-to-reels,

 5    so --

 6         A.   That was quite a while ago.

 7         Q.   It was.

 8              So these calls, or these texts are all

 9    dated December 3, 2015.  Your court order expired

10    when?

11         A.   Can I look at my notes?

12         Q.   Yes.

13         A.   December 15, 2016.

14         Q.   So Verizon was still collecting the calls

15    presumably, and text messages for the FBI?

16         A.   I don't know that they did.  I might have

17    sent a cease and desist request or a stop request.

18    After the takedown, I might have gotten busy and it

19    might have taken a while.  It could have run its

20    course.  But I usually try to stop it, as not to

21    waste the time.

22         Q.   Are you sure you did that, or are you

23    uncertain?

24         A.   That's my normal practice.  But I may have

25    failed to do that.  It could have run the full course
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of the order.

2         Q.   So would it surprise you to learn that

3    these text messages, dated 12/3, are not on the FBI

4    collection unit's master text file?

5         A.   If they were sent, yeah, it would surprise

6    me, yeah.

7         Q.   I didn't print out 800 pages.  So I'll have

8    to let you research that.

9         A.   I believe you.

10        Q.   And would there be any reason or

11   explanation why there would be this report from the

12   actual phone, which is the original evidence, and the

13   master text file?

14        A.   I'm sorry, I didn't follow that.

15        Q.   Is there a reason why the numbers would

16   occur, or the text messages would occur on the actual

17   evidence, the cellphone itself, versus the FBI

18   collection unit's master text file?

19        A.   So I'm not an expert in this.  But the only

20   thing I can think of is that those messages didn't

21   transmit over Verizon's network, or else they should

22   have been captured.  Perhaps a better question for

23   the technical agents of Verizon, though.

24        Q.   And, therefore, it would be prudent to

25   maintain the original phone in case something like

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that occurred; correct?
 2         A.   If I wanted to be able to show that, I
 3    would need the phone to do that.
 4         Q.   So you said the phone was not placed in
 5    evidence.  Who had access to this phone?
 6         A.   Me.
 7         Q.   Where was it?
 8         A.   My desk drawer, where I keep burner phones.
 9         Q.   Did you turn it on before you gave it to
10    Ms. Stemo on March 20?
11         A.   No, I would have turned it off.  I've got
12    probably 50 phones in that drawer.
13         Q.   But you didn't turn it on to check it
14    before you gave it to her?
15         A.   No.  She would have -- I presume, she would
16    have had to charge it, too.
17         Q.   When you put the phone in there, did it
18    have data on it?
19         A.   I don't know what was on it.  I didn't view
20    the phone or manipulate the phone.  I wrote some
21    notes on it and threw it in the drawer, to be honest
22    with you, to recycle and utilize again in another
23    case somewhere else.
24         Q.   And who did you get that phone from?
25         A.   I bought it at Walmart.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   No.  I'm sorry, bad question.  Did Mr.

2   Sapien give you the phone during the takedown?

3      A.   I'm not sure he did.  He may have.  We met

4   later that day at the Gold building here, is where we

5   were processing and interviewing.  So somebody from

6   the Penitentiary brought it down to me.

7      Q.   And gave it to you directly?

8      A.   That's what I recall, yes.  There were a

9   number of informants with phones, and I collected, I

10  think, all of them.

11     Q.   How many meetings did you have with

12  Mr. Duran?

13     A.   During the early stages, during the

14  investigation?

15     Q.   From when you signed -- or when Agent

16  Brusuelas signed him up -- to, let's just say, to the

17  takedown?

18     A.   My first one was in August of 2015.  I

19  think I only met him maybe two other times.  My

20  contact with him in person was limited.

21     Q.   How would you contact him normally?

22     A.   My preferred method was to go through STIU,

23  so I wasn't talking on the phone with him.  But at

24  times, I would have to talk to him on the phone.  At

25  times we talked on the wire phone.  And at times I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   had to text him, or he text me on the wire phone.

2        Q.    You didn't like talking on the wire phone;

3   correct?

4        A.    Correct.

5        Q.    You said so much to him?

6        A.    I probably said it on every wire phone that

7   anyone has ever called me on.

8        Q.    And you said you went through STIU to talk

9   to him.  Was that phone -- those calls were recorded,

10  or no?

11       A.    Sometimes that was in person, because they

12  would go in there and shake those guys down.  So I

13  deferred to them on how they got a message to him.  I

14  also wasn't as familiar with Securus and how the

15  phones worked in the prison.  So I would just relay

16  to the Captain what information needed to get to

17  whatever informant.  And they would handle it.

18       Q.    So you would talk to Captain Sapien, and

19  then he would relay the message to Mr. Duran or any

20  particular informant?

21       A.    Yes.  In his absence, maybe one of the

22  other guys.  But he was my main point of contact.

23       Q.    Do you have any idea how many unrecorded

24  phone calls you might have had directly with

25  Mr. Duran?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    You probably want a number next?

2        Q.    I do.

3        A.    At least a dozen.  I wouldn't be surprised

4    if it was two dozen.  Especially after the arrests.

5    The phone calls increased after the takedowns.

6        Q.    Did you write a 302 report or any kind of

7    memorandum regarding these phone calls with

8    Mr. Duran?

9        A.    Only if there was something that I wanted

10   to capture that I thought was evidentiary, I would

11   have done a 302.  Otherwise, I wouldn't have.

12       Q.    And on, say, the two dozen phone calls that

13   you had, can you approximate how many reports you

14   wrote?

15       A.    It wouldn't be very many.  My -- I wasn't

16   seeking evidence from him in those phone

17   conversations.

18       Q.    What were you seeking?

19       A.    From my recollection, there were -- I had

20   to prepare him for the arrival of Mr. Baca.  I had

21   to -- well, at times I had to manage him, just give

22   him some guidance.

23       Q.    What kind of guidance?

24       A.    The first -- the instance I'm thinking of

25   is when another informant arrived there, and I think

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                    e-mail: info@litsupport.com

```
 1    made a mistake in some of the representations he made

 2    in the pod.  That got to Duran.  Duran suspected, and

 3    correctly so, that that person was an informant.  He

 4    got pretty mad.  So guidance in terms of just

 5    managing him and telling him to stay focused, that

 6    sort of stuff, which I wouldn't write a 302 on.

 7           Then lastly, the phone calls increased as

 8    he was closer to being granted parole or getting his

 9    release from the Department of Corrections.  He

10    involved me in some of those conversations.

11        Q.   He was upset that he wasn't released

12    sooner; correct?

13        A.   I'm sure he was.

14        Q.   Let's talk a little bit about the money.

15    You paid him approximately $45,000; correct?

16           MR. CASTELLANO:  Objection, relevance.

17           THE COURT:  Well, we've had some of this

18    testimony so I need a complete picture.  Overruled.

19        A.   I think the total sum is somewhere around

20    there.  We have to break down those costs.  But it's

21    fair to say that he benefited from about that much

22    money.  And that would include expenses to move and

23    stuff like that, for his family to move.

24        Q.   Commissary?

25        A.   Commissary would be a much smaller portion
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    of that.  I think the greater was that 25,000 that we
 2    talked about earlier, I think with Mr. Lowry.  And
 3    then I remember another larger check to allow his --
 4    or to enable his family to move.
 5         Q.   And what amount was given to Grace Duran on
 6    his behalf?
 7         A.   I think I met with her twice at his
 8    request, to give her the money instead of putting it
 9    on his books.  I don't know the exact amounts, but
10    I've turned over all my receipts that were generated
11    with those payments.
12         Q.   Do you know if they've been disclosed to
13    the defense or not?
14         A.   I'm sorry?
15         Q.   Do you know if they've been disclosed to
16    the defense or not?
17         A.   I never know that.  My role is just to turn
18    them over to the U.S. Attorney's Office.
19         Q.   So you gave Grace Duran twice -- this is
20    the younger Grace Duran, Grace Duran No. 2?
21         A.   I haven't met No. 1.
22         Q.   And do you remember how much money it was
23    that you left with her on each occasion?
24         A.   No.
25         Q.   Can you give me a ballpark?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   Do you want me to look through receipts?

2    Q.   Sure.

3    A.   On July 25, 2016, Agent Sainato and I paid
4  her $6,000.

5    Q.   And the second payment?

6    A.   I can't tell.  There may not have been a
7  second one.  I just know that I've met her in person
8  twice.  The other time may have just been a meeting.

9    Q.   Did she sign for the money?

10    A.   Yes.

11    Q.   May I see that receipt, Agent?

12        MS. SIRIGNANO:  May I approach?

13        THE COURT:  You may.

14    Q.   Agent Acee, is this Ms. Duran's signature?

15    A.   Yes.

16    Q.   And how do we know that?

17    A.   Well, what I looked for first was the one
18  that was different than all the other signatures.
19  And then I remembered that because that was the money
20  to move, that amount.

21    Q.   To move from New Mexico to --

22    A.   Wherever she was moving.

23    Q.   -- out of state?

24    A.   Yeah.  It didn't matter to us.

25    Q.   And she signed it "Ironman"?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1         A.    Yes.

 2         Q.    And who is Ironman?

 3         A.    That's the payment name or code name for

 4    Eric Duran.

 5         Q.    And did he choose that name?

 6         A.    He did.  I think he did.  I didn't choose

 7    it.

 8              MS. SIRIGNANO:  Your Honor, I'd like to

 9    move this in as Chris Garcia C.

10              THE COURT:  Any objection, Mr. Castellano?

11              MR. CASTELLANO:  Yes, Your Honor.  First of

12    all, it's a copy.  And second, we're continuing to

13    get away from the two motions at this point.  We're

14    getting farther and farther away from either one,

15    including selected recordings.  So it's irrelevant to

16    either of the motions.

17              THE COURT:  Well, part of this -- I see it

18    as part of the motion on voluntariness.  So I'm going

19    to admit it.

20              And so anybody else have any objection to

21    it?  All right.  Christopher Garcia Defendant's

22    Exhibit C will be admitted into evidence.

23              MR. CASTELLANO:  Your Honor, I'd ask that

24    we make a photocopy of this exhibit and then mark it.

25              THE COURT:  All right.  Is that acceptable,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    Ms. Sirignano?

 2              MS. SIRIGNANO:  Absolutely.  I don't have

 3    any problem with that.  Just logistically should I

 4    leave it with the Clerk?

 5              THE COURT:  Maybe Ms. Standridge can make a

 6    copy of it and give you back -- or give Mr. Acee back

 7    his original.

 8              MS. SIRIGNANO:  Thank you.

 9    BY MS. SIRIGNANO:

10         Q.   So the second meeting was when, with

11    Ms. Duran?

12         A.   I think it was before I gave her that

13    money.  Because I wanted to talk to her about -- I'd

14    heard from Duran on what his plans were, but I just

15    kind of wanted to verify with her that she was on

16    board with that.  So I think it was before July, that

17    July date.

18         Q.   Did you write a report regarding this,

19    these two meetings?

20         A.   No.

21         Q.   I'd just like to go back to the master text

22    file.

23              MS. SIRIGNANO:  Your Honor, may I approach?

24              THE COURT:  You may.

25         Q.   Do you recognize this document?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes.
 2        Q.   Is this the master text file?
 3        A.   I think -- I believe that's what it's
 4   called.
 5        Q.   And you referred to my filing.  This was
 6   Exhibit C of Document 1612; correct?
 7        A.   Yes.
 8        Q.   And this exhibit is 838 pages; correct?
 9        A.   Yes.
10             MS. SIRIGNANO:  Your Honor, I'd like to
11   move for admission of the entire 838 pages, which I
12   don't have here in court with me right now, but it is
13   an exhibit in a reply I filed over the weekend.  With
14   the Court's permission, I can get a hard copy here
15   after the hearing.
16             THE COURT:  And tell me -- I have copied
17   this morning -- Ms. Standridge copied the reply.
18   What are most of those?
19             MS. SIRIGNANO:  Your Honor, this is the
20   master text file that I reviewed with Mr. Acee.
21             THE COURT:  So that's what it is?
22             MS. SIRIGNANO:  It's all the text messages
23   from Eric Duran's phone.  And there is a discrepancy
24   between the actual phone, the original evidence, and
25   the text messages that are in this master text file
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    from Verizon.

2            THE COURT:  Any objection to that coming

3    in?

4            MR. CASTELLANO:  Your Honor, I just wonder

5    what the relevance is as it relates to selective

6    recording or coercion, and where the discrepancy is

7    between the two, before they move its admission.

8            THE COURT:  Well, I think I see the

9    relevance to both of the motions, so I'm going to

10   admit it.  It seems that it's already been in the

11   court record here, and we've had discussions about it

12   during the day.

13           So is there any objection from anybody

14   else?

15           Did you have anything, Mr. Lowry?

16           MR. LOWRY:  No, Your Honor.  I can explain

17   the relevance, but I think it's a moot point given

18   the Court's ruling.

19           THE COURT:  All right.  So Christopher

20   Garcia Defendant's Exhibit D will be admitted into

21   evidence.

22           MS. SIRIGNANO:  Thank you, Your Honor.  And

23   this is just page 1, and I've marked it D as a

24   placeholder.  And I will provide the Court with the

25   remaining pages in the morning.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. LOWRY:  Your Honor, can I have a brief
 2    housekeeping matter?
 3              THE COURT:  You may.
 4              MR. LOWRY:  I think the Court would find it
 5    more beneficial to have that electronically versus on
 6    a CD or a thumb drive, OCR'd so you can search it
 7    more quickly.
 8              THE COURT:  I don't have any problem if
 9    nobody objects.  Mr. Castellano is shaking his head
10    no.
11              Anybody else?  All right.  So if you want
12    to provide it in that form, that will be fine as
13    well, Ms. Sirignano.
14              MS. SIRIGNANO:  Thank you, Your Honor.
15       Q.   You mentioned the wire room at the FBI, and
16    a delay in receiving text messages or calls; correct?
17       A.   I think there is a delay.
18       Q.   Did you have a monitor in your wire room
19    regarding this phone?
20       A.   No -- like a full-time monitor?
21       Q.   Yes.
22       A.   No.
23       Q.   Was there a part-time monitor?
24       A.   An agent was assigned to review it on, I
25    guess, a part-time basis, among other tasks.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   Who was that?
 2        A.   It was Agent Sainato.  And then I think it
 3   later changed to Agent Neale.
 4        Q.   This phone was being used every day by
 5   Mr. Duran; correct?
 6        A.   I don't know if it was used every day.
 7        Q.   Most days?
 8        A.   I think so.
 9        Q.   Was Agent Sainato or Agent Neale monitoring
10   this phone at least every other day?
11        A.   It just depended.  I placed the priority on
12   the operation we were doing on the street.  So if I
13   needed them for operations on the street, then they
14   would have to get back to reviewing this.  So it kind
15   of depended what the week looked like.  But this was
16   on their "to do list."
17        Q.   Do you know if weeks went by without the
18   texts or the phone calls being monitored?
19        A.   I think they were pretty good about getting
20   in there.  And I think they got in there at least
21   weekly.
22        Q.   Did they write reports regarding their
23   review of the texts or the phone calls?
24        A.   Yes.  In fact, Mr. Lowry presented one
25   earlier today with the bullet points.  That one was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    by Agent Sainato.

2         Q.   So at some point in time, the FBI became

3    aware that Mr. Duran's girlfriend, Felicia, was

4    sending sexy photos and videos of herself to him;

5    correct?

6         A.   I think today is the first time I heard

7    that name.  I have talked to Duran about that, yes,

8    but if you'd give me a timeframe, I might be able to

9    answer a little bit better.

10        Q.   Well, was it another girl that was sending

11   these videos?

12        A.   I wasn't aware of any videos being sent.  I

13   understand there was an exchange of photos.  And I

14   think in a couple of cases Mr. Baca introduced Duran

15   to some women.  I'm not sure how that introduction

16   took place.  But there was some photo exchanges

17   there.

18             And at the time I was using Mr. Duran to

19   also broker deals on the street between undercover

20   FBI agents and people selling drugs in places in New

21   Mexico.  He may have sent selfies to at least one of

22   those people, to kind of show how he's doing, what he

23   looks like now.  I'm only aware of that, though,

24   through what I've heard in court, and prior to that,

25   what Duran told me.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   What Duran told you about receiving sexy

2   photos from women?

3     A.   No, he didn't tell me that.  He -- at some

4   point in time, he told me that he had sent some

5   photos, and was texting with someone related to Chris

6   Garcia and someone related to Anthony Baca.  My

7   interest was more in who are those people, and are

8   those people we're doing buys from, or are you just

9   talking to women?  If he was just talking to women,

10   and it didn't involve us buying drugs or guns, or

11   something like that from them, I wasn't as concerned

12   who they were.

13     Q.   And that's because they weren't targets?

14     A.   Those people -- I think one of them might

15   have gotten a target letter, but we didn't arrest

16   them.

17          MS. SIRIGNANO:  May I have a moment, Your

18   Honor?

19          THE COURT:  You may.

20          MS. SIRIGNANO:  Pass the witness, please.

21          THE COURT:  Thank you, Ms. Sirignano.

22          Mr. Villa, do you have cross-examination of

23   Mr. Acee?

24          MR. VILLA:  Thank you, Your Honor.

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                       EXAMINATION
 2   BY MR. VILLA:
 3        Q.   Good afternoon, Agent Acee.
 4        A.   Good afternoon.
 5        Q.   Okay.  So I want to go back just to make
 6   sure I've got this understood on the recordings that
 7   Mr. Duran made of Timothy Martinez.
 8             You believe that he did make a recording
 9   that -- I think you testified with Mr. Lowry you saw
10   on a tablet?
11        A.   No, I have not looked through anyone's
12   tablet.  But different defendants will tell me what's
13   on the tablet.  That one stuck out to me because it's
14   among some of the recordings that really shouldn't be
15   on there.  They're from a different gang, from a
16   different case.  And I believe there is one recording
17   of Timothy Martinez in there with a guy that the
18   defendants will know as Pete, or Pite.
19        Q.   That was made by Eric Duran?
20        A.   Yes.
21        Q.   But you're saying that's for a different
22   case?
23        A.   No, sir.  What I'm saying is -- I'm sorry
24   if I'm not explaining it well -- but the device that
25   Duran used was a device that I used on a different
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    gang case.  And what happened was, Agent Brusuelas
 2    must have checked that device out before it was
 3    downloaded, or STIU took it from my case targeting a
 4    gang, the Sureno/Mexican Mafia Gang, and gave that
 5    device to Duran, who then used it on a number of
 6    people in the SNM case.  It's simply a device just
 7    crossing cases in the same facility.
 8         Q.   Okay.  But in any case, the recording of
 9    Timothy Martinez is pertinent to this case?
10         A.   Yes.
11         Q.   And the recording was a discussion of the
12    Molina murder?
13         A.   It's been a while since I've listened to
14    it.  But there were some aspects of that in there,
15    yes.
16         Q.   And I know you're not responsible for
17    disclosures, but you do believe that that recording
18    was properly captured on your end and provided to the
19    U.S. Attorney's Office?
20         A.   I do, simply by the fact, I mean, the
21    defendants would have no other way to tell me --
22    recite to me what was in those recordings.  They're
23    claiming they're in the tablet.
24         Q.   So defendants in this case told you they
25    saw them in the tablet?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.    They listened to them, yes.

2       Q.    That being cooperating defendants?

3       A.    Yes.

4       Q.    Who told you that?

5       A.    Most recently, Mario Rodriguez; Timothy has

6  told me that, Timothy Martinez; Roy Martinez; Rob

7  Martinez.

8       Q.    So they told you, but they didn't actually

9  play it for you on the tablet?

10       A.    No.  I stay away from the tablets.  If they

11  have them, I don't look at them, I don't listen to

12  them.

13       Q.    Now, you testified earlier about an

14  informant that was in the pod that Duran had actually

15  suspected of being an informant; is that right?

16       A.    Yes.

17       Q.    When was this timeframe?

18       A.    I think Mr. Lowry has it in some of his

19  documents that he's shown me.  But it would have been

20  before Mr. Baca came back, so I think it would have

21  been early October 2015, late September of 2015.

22       Q.    Is this when Mr. Duran was in Q pod?

23       A.    I'm not sure.  I'll be honest with you, at

24  that time, my knowledge of the pods and the system at

25  PNM is not what it is today.  So I'm not sure.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   All right.  Who was this informant?

2    A.   Tomas Clark.

3    Q.   Did Eric Duran record Tomas Clark?

4    A.   No, I don't think so.  I think they were on

5  different levels in the facility.

6    Q.   Did he record Billy Cordova?

7    A.   No, I don't believe so.

8    Q.   Now, a little earlier you testified about

9  Grace Duran, and I'm talking about No. 2, that she

10  and Mr. Duran were married; true?

11   A.   Yes.

12   Q.   Isn't it true that they were divorced May

13  9, 2014?

14   A.   I'm not aware of that.

15   Q.   I mean, if there was a court record

16  reflecting that, would you have any reason to dispute

17  it?

18   A.   No, sir.

19   Q.   Do you have any reason to believe that

20  since that divorce, there was any sort of formal

21  remarriage, if that's the right word?

22   A.   I don't know.  I thought they were married.

23   Q.   And that's based on what he's told you?

24   A.   As well as her.

25   Q.   Both of them?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes.
 2        Q.   But you're not familiar with legal
 3   documents and that sort of thing?
 4        A.   I haven't reviewed any of those, no.
 5             MR. VILLA:   May I have a moment?
 6             THE COURT:   You may.
 7             MR. VILLA:   That's all the questions, Your
 8   Honor.
 9             THE COURT:   Thank you, Mr. Villa.
10             Any other defendant have cross-examination
11   of Mr. Acee on these two motions?
12             All right.   Mr. Castellano, do you have
13   redirect of Mr. Acee?
14             MR. CASTELLANO:   Yes, Your Honor.
15                     REDIRECT EXAMINATION
16   BY MR. CASTELLANO:
17        Q.   Agent Acee, I'm showing you Chris Garcia's
18   Exhibit A, and you may or may not know the answer to
19   this question, but do you see up here where it says
20   "Contents," and it says "texts, 7"?
21        A.   Yes.
22        Q.   But there are four texts below?
23        A.   Yes.
24        Q.   Do you know what that means, or why it
25   has -- shows seven texts in one area and four texts
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   in another?

2       A.   No.

3       Q.   There is an indication on what's labeled as

4   page 3 of 5 of the same exhibit.  Do you know or

5   recognize the number -- because it indicates the

6   texts that are shown there are all incoming texts?

7       A.   Correct.

8       Q.   Do you know -- do you recognize either of

9   these two phone numbers?

10      A.   Not off of the top of my head, no.

11      Q.   Chris Garcia D, which is a summary of the

12  text messages, how did these come into existence?

13      A.   These are generated as a result of the

14  court order we got to intercept Duran's contraband

15  phone, prison phone.

16      Q.   Is it your opinion that certain things may

17  not have been captured because they were limited by

18  the court order in this case?

19      A.   Yes.

20      Q.   What types of things do you think were not

21  captured as a result of the limitations by the court

22  order?

23      A.   Internet traffic, email.  I know now that

24  the photographs weren't captured that would have been

25  sent over text.


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    Tell us about this phone that you gave to

2   Mr. Duran, that you bought at Walmart.  What type of

3   phone was it?

4      A.    It was a Verizon flip-phone.  And I think

5   it cost 19.99.  It was a small phone.  It was what I

6   believed would -- and was similar to the phones that

7   are utilized in the prison.

8      Q.    Now, were you aware of the phone's

9   capacity?

10      A.    No.

11      Q.    And by that, do you know if this was one of

12   those phones that only holds so many text messages

13   before new ones bump off the old ones?

14      A.    I don't know that.

15      Q.    And do you know what happens to the phone

16   once it loses power and loses its charge, for

17   example?

18      A.    No.

19      Q.    So when you gave the phone to Agent Stemo,

20   were you aware of whether or not it had to be charged

21   before she could do the Cellebrite report?

22      A.    I think it did.  Because I gave her a

23   charger.  In my experience, all the phones that we

24   have in our drawer, that we use for purposes like

25   this are dead.  They all need to be charged.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                         Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                           FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1       Q.   Are you aware of any other limitations on

 2   the phone or the cellular service, in terms of how

 3   long text messages were maintained on the phone?

 4       A.   No.

 5       Q.   Now, you talked about some of the

 6   recordings.  And so you mentioned that you like to

 7   get the corroboration, if you can; is that correct?

 8       A.   Yes, sir.

 9       Q.   So, for example, if you have a recording

10   that starts in the middle of a sentence and ends in

11   the middle of a sentence, where some pieces might be

12   missing, would you like to have other things that

13   fill in the blanks, possibly?

14       A.   Yes, sir.

15       Q.   So I'm going to show you just a summary

16   from call 10.  There is already in evidence the

17   transcript.  But there is a discussion here of the

18   CHS talking to Mr. Baca about a willa, or a message,

19   talking about how much Mr. Baca hated Santistevan.

20       A.   Yes.

21       Q.   Now, this is in October of --

22            THE COURT:  Let me ask you this:  Do you

23   want to take this up and finish it tomorrow so you're

24   not rushed trying to finish it up today?

25            MR. CASTELLANO:  I do have more, so we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    could finish it tomorrow.

2            THE COURT:  Why don't we do that.

3            One thing I wanted to say before we leave,

4    I told you I was working on these James motions.

5    Probably the place that I think that I -- where I'm

6    coming out is I'm inclined to think that, as I

7    indicated, that I think some of these statements by

8    the defendants can only be used against them, are not

9    exceptions -- they're not hearsay under the rules,

10   and that's what I indicated on the last day before

11   the holidays, that that was where I was coming out.

12   I think under Bruton, I probably cannot give

13   instructions that clarify the -- just a limiting

14   instruction, and that satisfied the Bruton problem.

15   But I think Smalls indicates that that is not a

16   Bruton problem.  So I think I don't have a

17   constitutional issue.  So I'm inclined to think that

18   just on a hearsay issue, I can give the jury a

19   limiting instruction, and expect them to follow it.

20           So y'all might, in your studies, be

21   focusing on that.  But I'm inclined to think that I

22   can give a limiting instruction and tell them this

23   evidence can only be used against this defendant.

24   That would not probably be permissible under Bruton.

25   But since there is no Bruton problems, it is going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    be satisfactory for the federal rules of evidence.

2    So that's where I'm coming out.

3              So -- nope, nope -- I told you where I'm

4    looking.  I still haven't gotten anything from

5    anybody after three weeks, so we're not going to

6    delay it today.  But that's where I am.  All right.

7    See y'all tomorrow.  Have a good evening.

8              (The Court stood in recess.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                              C-E-R-T-I-F-I-C-A-T-E

2

3   UNITED STATES OF AMERICA

4   DISTRICT OF NEW MEXICO

5

6

7        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8   Official Court Reporter for the State of New Mexico,

9   do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on January 15, 2018.

15

16

17

18                       _____

19                       Jennifer Bean, FAPR, RMR-RDR-CCR
                            Certified Realtime Reporter

20                       United States Court Reporter
                            NM CCR #94

21                       333 Lomas, Northwest
                            Albuquerque, New Mexico 87102

22                       Phone:  (505) 348-2283
                            Fax:    (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1680
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com