1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3   UNITED STATES OF AMERICA,

4        Plaintiff,

5        VS.                    CR. NO. 15-4268 JB

6   ANGEL DELEON, et al.,

7        Defendants.

8                      VOLUME 2

9        Transcript of Motion to Suppress and James
    Hearing Proceedings before The Honorable James O.
10   Browning, United States District Judge, Las Cruces,
    Dona County, New Mexico, commencing on January 9,
11   2018.

12

    For the Government:  Ms. Maria Armijo; Mr. Randy
13   Castellano; Mr. Matthew Beck

14   For the Defendants:  Mr. Brock Benjamin; Ms. Cori
    Harbour-Valdez; Mr. Pat Burke; Mr. Robert Cooper; Mr.
15   James Castle; Mr. Jeff Lahann; Mr. John Granberg; Mr.
    Scott Davidson; Ms. Amy Jacks; Mr. Richard Jewkes;
16   Ms. Amy Sirignano; Mr. Christopher Adams; Mr. Marc
    Lowry; Ms. Theresa Duncan; Ms. Carey Bhalla; Mr.
17   William Maynard; Mr. Donovan Roberts; Ms. Lisa
    Torraco; Ms. Angela Arellanes; Mr. Jerry Walz

18

19   For the Defendants (Via telephone):  Ms. Justine
    Fox-Young; Ms. Margaret Strickland

20

21

22

23

24

25




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Good morning
2    everyone.  I appreciate everyone being back and ready
3    to go and on time.  Looks like everybody has got an
4    attorney.  Look around, make sure that everybody is
5    represented before we get started.
6              All right.  I want to start this morning by
7    talking a little bit more about the issue that we
8    closed on December 20 with, that I closed the day
9    yesterday.  You can tell it's on my mind, so I want
10   to talk about it a little bit more, and tell you what
11   I'm going to do, and then invite you to focus in
12   very -- like a laser at some point on the issues that
13   are concerning me.  At this point, I think my needs
14   are beginning to show, and take over.  And so anybody
15   that wants to say anything on what I'm thinking
16   about, I'm going to be as open as I can with you
17   about it.
18             As I indicated last night, after giving
19   some thought about it over the holidays, I am
20   inclined to conclude that under Bruton, a
21   nontestimonial confession implicating several
22   defendants cannot be admitted against one of them,
23   without being admitted against all of them, unless
24   there is a limiting instruction.
25             There are a number of courts of appeals
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that have indicated that Bruton is a confrontation

2    clause case.  And I'll just give you one cite of what

3    I think is the strongest pronouncement of that.

4    That's the Third Circuit in United States versus

5    Berrios, 676 F.3d 118.  And I quote, "Bruton is no

6    more than a by-product of the Confrontation Clause."

7    So you can't get any firmer with that.  But there

8    is -- there are people that push back on that, and I

9    would point you to the Federal Rules of Evidence 105

10   Advisory Committee Note, which says this, it says,

11   "In Bruton versus United States -- gives the cite --

12   "the Court ruled that a limiting instruction did not

13   effectively protect the accused against the

14   prejudicial effect of admitting in evidence the

15   confession of a co-defendant which implicated him."

16          So there you can see that probably the

17   advisors to 105 are taking a little bit different

18   view of what Bruton said.  And I do think a lot

19   depends on how you read Bruton.

20          Let me pick up where the advisory committee

21   notes are.  The way I read that group of scholars,

22   commenters, is that the Supreme Court in Bruton did

23   not decide that the Confrontation Clause prohibited

24   the introduction of a nontestifying defendant's

25   confession against a co-defendant; because there was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   no doubt when Bruton was decided, that using a

 2   confession in that way was impermissible.  When you

 3   look at note 3 on page 128 of Bruton, it says, "We

 4   emphasize that the hearsay statement inculpating

 5   petitioner was clearly inadmissible against him under

 6   traditional rules of evidence."  And it cites to

 7   Tong's case, which is a 1662 English Reporter that

 8   permitted that when a, quote, "conspirator be

 9   examined before a privy councellor or justice of

10   peace, and upon his examination without torture

11   confessed the treason."  So the use of that

12   confession against that conspirator at trial, even

13   though "the confession there spoken of, is not meant

14   a confession before the judges at his trial, but a

15   confession upon his examination," with the proviso

16   that the confession "is only evidence against the

17   party himself who made the confession, but cannot be

18   made use of as evidence against any others whom on

19   his examination he confessed to be in the treason."

20           Crawford at page 45 cites, and quotes that

21   portion that I just read from Tong's.

22           So the disputed issue in Bruton -- and

23   again, I'm giving what I think is the scholarly

24   advisory committee approach to this issue -- was

25   rather whether courts can admit a confession against

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    one defendant without admitting it against an

2    implicated co-defendant by instructing the jury that

3    the, quote -- Bruton again -- "confession inculpating

4    the second defendant had to be disregarded in

5    determining his guilt or innocence."  Once again, not

6    talking about the Confrontation Clause, but just

7    talking about the problem in general.

8            And in fact, the Supreme Court -- and I'm

9    going to quote again from Bruton, "granted certiorari

10   to reconsider Delli Paoli versus United States," a

11   1957 case, which does not even mention the

12   Confrontation Clause, and instead addressed only the

13   efficacy of limiting instructions.  So that's the

14   reason I think a powerful argument could be made that

15   Bruton is a limiting instruction case.  And if you

16   look at Delli Paoli, at page 259, what it said was,

17   "The issue here is whether, under all the

18   circumstances, the court's instructions to the jury

19   provided petitioner with sufficient protection so

20   that the admission of Whitley's confession strictly

21   limited to use against Whitley, constituted

22   reversible error."  Bruton comes back and says this

23   at page 126, "The basic premise of Delli Paoli was

24   that it is" -- and it's going to quote now Delli

25   Paoli, "reasonably possible for the jury to follow,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    sufficiently clear instructions to disregard the

 2    confessor's extrajudicial statement that his

 3    co-defendant participated with him in committing the

 4    crime."  That's a quote from Delli Paoli, at 239.

 5             And then in United States v. Clark -- and

 6    this is the case that I think we need to really focus

 7    on from the Tenth Circuit -- 717 F.3d 790, at page

 8    814, it stated that, "Bruton provides the foundation

 9    for affirmative remedial measures -- most notably

10    severance -- upon a proper showing that a

11    co-defendant's statement offered into evidence would

12    inculpate the defendant," and that "these measures

13    are meant to avoid the extrinsic (i.e. collateral)

14    damage to a defendant from the jury's undue

15    consideration of a co-defendant's facially

16    inculpatory statement -- a factor that the jury would

17    be highly unlikely to disregard, and one that cannot

18    be remedied by a curative instruction."  Bruton

19    resolves that disputed issue by holding that -- I'm

20    quoting from Richardson versus Marsh -- which was a

21    pre Crawford Supreme Court opinion that "the almost

22    invariable assumption" -- and notice that language --

23    "the almost invariable assumption of the law that

24    jurors follow their instructions does not apply when

25    a defendant's confession that implicates

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    co-defendants is admitted in a joint trial."  Now, on
 2    the face of it, that would seem to suggest that
 3    limiting instructions cannot be done in this case.
 4    But again it's pre Crawford.  But the thing that I
 5    think you have to draw from it is it says that, the
 6    almost invariable assumption of the law is that
 7    limiting instructions can work.  So Bruton carved
 8    out, even pre Crawford, a very limited exception when
 9    limiting instructions cannot work.
10            Now, if I were to stop right there, I
11    think -- and I didn't have anything else -- I think I
12    would probably write an opinion that says Bruton is a
13    limiting instruction opinion; it's not a
14    Confrontation Clause opinion.  Because you heard the
15    same language I'm looking at.  And I can't solve the
16    problem here with limiting instructions.  And I think
17    you could write a scholarly opinion, an academic
18    opinion that would have some force.
19            But now, listen to what else you can glean
20    out of the Bruton and Marsh, and then we're going to
21    turn back to the Tenth Circuit cases.  Here's what
22    Marsh says, "That exception" -- so this exception
23    that Bruton created -- "implicates the Confrontation
24    Clause only because, absent Bruton versus United
25    States, courts could sidestep Confrontation Clause
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    issues in joint trials by instructing juries to use
2    confessions only against the defendants who make
3    them, and not against implicated co-defendants."
4            So this is what Marsh says, and I'm quoting
5    at 206:  "Ordinarily, a witness whose testimony is
6    introduced at a joint trial is not considered to be a
7    witness against a defendant if the jury is instructed
8    to consider that testimony only against a
9    co-defendant."  Again, "ordinarily."  So the Bruton
10   rule, whatever it is, is a narrow exception from the
11   invariable, and now ordinary rule, that limiting
12   instructions can work.
13           Here's what Bruton again says, "If it were
14   true that the jury disregarded the reference to the
15   co-defendant, no question would arise under the
16   Confrontation Clause, because by hypothesis the case
17   is treated as if the confessor made no statement
18   inculpating the nonconfessor."
19           Bruton, however, recognizes and again I
20   quote that, "The practical and human limitations of
21   the jury system," render that route around the
22   Confrontation Clause impassible, when, quote, "the
23   powerfully incriminating extrajudicial statements of
24   a co-defendant, who stands accused side by side with
25   the defendant, are deliberately spread before the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    jury in a joint trial."  That's Bruton at 135-36.

2            And then, in Cruz versus New York, 1987,

3    Scalia says this on page 190, reading Bruton versus

4    United States to hold that the principle that -- and

5    I'm quoting, "a witness whose testimony is introduced

6    in a joint trial with the limiting instruction that

7    it be used only to assess the guilt of one of the

8    defendants will not be considered to be a witness

9    against the other defendants."  Does not, "validate,

10   under" -- and this is in his quote -- "the

11   Confrontation Clause, introduction of a nontestifying

12   co-defendant's confession implicating the defendant,

13   with instructions that the jury should disregard the

14   confession insofar as its consideration of the

15   defendant's guilt is concerned."

16           When you read that, you can understand why

17   almost all the courts of appeals have said Bruton is

18   a Confrontation Clause case.  That roundabout

19   analysis means at least in pre Crawford versus

20   Washington cases that "the rule" -- and I'm going to

21   quote Scalia in Green versus Fisher, 2011 -- that

22   "the rule announced in Bruton versus United States

23   forbids the prosecution to introduce a nontestifying

24   co-defendant's confession implicating another

25   defendant in the crime."  That's what he describes as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    pre Crawford.

2            After Crawford, however, the confrontation

3    clause does not police the use of nontestimonial

4    statements.  And we've talked about -- and I think we

5    all agree on that.  So I think, unless somebody wants

6    to take that one on, I think we take that as a given.

7            Accordingly, it no longer matters, for

8    Confrontation Clause purposes, whether limiting

9    instructions restrain how juries use nontestimonial

10   confessions in joint trials, because the

11   Confrontation Clause does not apply to those

12   confessions in the first place.  The Confrontation

13   Clause thus permits the admission of nontestimonial

14   confessions in multidefendant trials notwithstanding

15   Bruton.  In other words -- and I'm quoting now

16   Smalls -- in other words, "the Bruton rule, like the

17   Confrontation Clause upon which it is premised, does

18   not apply to nontestimonial hearsay statements."

19           And then going back to Clark that's in note

20   2 of Smalls, on page 768 -- then going back to Clark,

21   this is the language that I think finally suggests

22   where I have to go in this case.  On page 816, it

23   concludes that nontestimonial statements, quote,

24   "fall outside the protective ambit of the

25   Confrontation Clause."  Again, I think we all agree

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    with that.  And then here's the four words that I

2    think determine, "and by extension Bruton."

3            So even if I were to read Bruton as a

4    limiting instruction opinion, which I probably

5    intellectually agree with, I don't think the Tenth

6    Circuit language of those four words allow it.

7            I think what the scholars, the advisors say

8    is that Bruton is not absolutely silent regarding

9    nontestimonial statements.  When you look at Crawford

10   it discusses Roman law, "Marian bail and committal

11   statutes," the 1603 trial of Sir Walter Raleigh for

12   treason."  I think have to read that as obviating

13   Bruton with respect to Confrontation Clause

14   challenges to nontestimonial statements.  But I think

15   you could also read that like Richardson, which again

16   is pre Crawford.  It neither calls that case's

17   rationale into question, which is what Richardson

18   says, declaring that, quote, "We continue to apply

19   Bruton where we have found its rationale validly

20   applies," nor as Bruton says alters, "the practical

21   and human limitations of the jury system."

22           But Crawford upset the Supreme Court's

23   Confrontation clause jurisprudence.  And so I think

24   the key question is whether Bruton is a Confrontation

25   Clause case.  I think there is more to Bruton than it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    just being a Confrontation Clause case.  But I don't
 2    think that most of the courts of appeals have said it
 3    that way.  And I'm concerned with the language I just
 4    emphasized from Clark, and to some degree, Smalls.  I
 5    think it may foreclose me writing an opinion or
 6    saying here in court that Bruton is not a
 7    Confrontation Clause case given what the Tenth
 8    Circuit has said.
 9              So I am not inclined to think that Bruton's
10    holding that admitting a confession against one
11    defendant requires admitting a confession against all
12    the defendants that it implicates remains good law in
13    the Tenth Circuit, even vis-a-vis nontestimonial
14    confessions.
15              I ran out of time this morning.  I looked
16    at it a little last night.  There is a Fifth Circuit
17    case that may go the way of the scholars and say that
18    some of the rationale for Bruton survives Crawford.
19    I think there is also an Eastern District of Virginia
20    case that is kind of of the way.  Those two cases
21    were in positions that are very similar to ours.  But
22    even though I find some of that persuasive, I'm not
23    sure -- I think it may be foreclosed here in this
24    circuit.
25              So what I am going to probably do this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

13

1    morning, if I can get it done, is I'm probably going

2    to issue an order to the U.S. Attorney's Office to

3    their appellate division.  I will explain to them

4    that if I go this way, I want an assurance from the

5    appellate lawyers that they're going to defend what I

6    do on appeal, and that they're not going to confess

7    error if I write as I just explained.

8            If they have some problems about it, we

9    need to know about it sooner rather than later.

10           I looked at the Government's 1594, which

11   was filed after our hearing on Wednesday, December

12   20 -- y'all filed -- the Government filed that the

13   next day.  The Government is going back -- unless I

14   missed something and it didn't address these

15   issues -- it instead addressed the issue I'm taking

16   for granted is that certain statements that Mr. Perez

17   is making on the tape can come under some hearsay

18   exception.  So the Government is still fighting or

19   resisting the notion that those cannot be used

20   against other people.

21           As can you see, I've kind of moved beyond

22   that.  I'm not saying I'm through analyzing it.  But

23   I don't think the statements against penal interests

24   or the co-conspirator statement are going to be able

25   to cover -- I think the way the Government put it in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    its brief -- was anything that's said within the
2    prison walls comes within the co-conspirator
3    exception.  I don't think I can go that far.  So I
4    think it's going to have to meet those elements.
5            And so it seems to me that, at the present
6    time, I'm inclined to allow those statements to be
7    heard by the jury, and use the invariable and
8    ordinary rule that limiting instructions have
9    efficacy.  And we'll give those in this case.  But I
10   will make it clear to them, and everybody will have
11   to conform their arguments accordingly, that that
12   evidence cannot be used against the other four
13   defendants in the trial.
14           If the Government, in thinking that
15   through, has problems with that, then we know the
16   kind of the solutions and remedies the defendants
17   have been advancing.  And so the Government may want
18   to relook and reconsider those as well.
19           So you'll probably receive those orders.
20   It's not to preclude the defendants from in any way
21   commenting on those -- where I'm going.  But I do
22   think need assurance that if I'm going to rule in
23   favor of the Government on a very important issue, I
24   think, as to how the evidence is going to play out,
25   then I need the assurance from the Government that

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    their appellate division is going to defend that
 2    decision and not confess error in an area where some
 3    people have thought about it and come out different
 4    ways.
 5              You can tell I put a lot of thought into
 6    this.  I don't want off-the-cuff comments on this
 7    issue.  I will -- before we leave here this week,
 8    I'll be quiet and let everybody think about it.  But
 9    I'd prefer to have people think about just what I
10    said, and then respond maybe in writing, because I
11    think that, without people giving it some serious
12    thought, and getting at least to the same place I am,
13    that it's not going to be as helpful, and it's going
14    to be more frustrating.  So I won't leave here
15    without letting you say what you have to say before
16    you see me on the 29th.  But let's just give that
17    some thought and leave it there for this morning.
18              All right.  Who is on the telephone this
19    morning?
20              MS. FOX-YOUNG:  Good morning, Your Honor.
21    This is Justin Fox-Young.
22              MS. STRICKLAND:  Good morning, Your Honor.
23    This is Margaret Strickland.
24              THE COURT:  Ms. Strickland, good morning.
25    Anybody else?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE CLERK:  This is K'Aun Wild.
 2              THE COURT:  All right.  Ms. Wild.  So I've
 3    got three people on the phone.  If somebody has got
 4    their mute button on and trying to talk, we're not
 5    hearing you.
 6              All right.  Ms. Duncan, Mr. Lowry, are you
 7    ready to pick up where we were on the motion?  Mr.
 8    Castellano?
 9              MR. CASTELLANO:  I had Agent Acee on the
10    stand for cross-examination, Your Honor.
11              THE COURT:  All right.  Mr. Acee, if you'll
12    return to the witness box, and I'll remind you that
13    you're still under oath.
14              Mr. Adams, good morning to you.  Glad to
15    see you.
16              MR. ADAMS:  Thank you, Your Honor.  I am
17    grieving today over the collapse of the Mighty
18    Bulldogs.  But other than that, I'm pleased to be
19    here.
20              THE COURT:  I told Mr. Cooper that I
21    thought Georgia had the better team, but Alabama had
22    better athletes, at least in the placekicking.  I was
23    exactly right, they had a better team.  But boy,
24    that's -- I tell you what, you can go to the locker
25    and pull out a freshman like that.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. ADAMS:  Never played.  How do you game
 2    plan for a guy who has never played?  Which is a
 3    little bit I'm concerned the Government might do with
 4    their witness list.  But we'll get to that.
 5              THE COURT:  Yeah.  But I stayed up and saw
 6    Kirby Smart saying he had planned on them bringing
 7    that quarterback out.  So, Mr. Adams may not have
 8    planned it, but Mr. Smart planned it.
 9              MR. ADAMS:  I would say the evidence would
10    suggest Kirby Smart should have planned a little bit
11    more for the kid from Hawaii, who played an
12    incredible game.
13              THE COURT:  All right.  Mr. Castellano.
14              MR. CASTELLANO:  I was going to say there
15    is no planning for that kid.  He was good.
16              THE COURT:  Somebody that's on the
17    telephone is typing, and they don't have their mute
18    button on.  Can you put your mute button on, because
19    the typing is coming across the phone.  Thank you.
20              Mr. Castellano.
21                        EXAMINATION
22    BY MR. CASTELLANO:
23        Q.   Agent Acee, I'm going to take you back to
24    Chris Garcia's Exhibits A and B, which are these
25    extraction reports.  Do you remember those from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   yesterday?

 2        A.   Yes.

 3        Q.   Turning to the second page of each of those

 4   reports -- showing you first Exhibit A, which is

 5   Agent Stemo's report --

 6        A.   Yes.

 7        Q.   -- if you know, do you know why Agent

 8   Stemo's report indicates seven text messages up

 9   above, even though there are fewer below, and why the

10   defense expert has five text messages in their

11   subsequent analysis, and then the same text messages

12   below?  Do you know why?

13        A.   I do not.

14        Q.   Turning your attention to Baca F from

15   yesterday.  It's the telephone conversation

16   purportedly from November 20 of 2015, purportedly

17   between you and Mr. Duran.  Do you remember that?

18        A.   I do.

19        Q.   Now, you mentioned earlier, when we had

20   these conversations on the recording device, or the

21   telephone, they sometimes start at what appears to be

22   mid-sentence.  Do you remember that conversation?

23        A.   Yes.

24        Q.   And you said in response that you would

25   like to have other corroboration to help support
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    those recordings, if you can?

 2         A.   Yes.

 3         Q.   Okay.  So in a conversation with Mr. Duran,

 4    you have a discussion here on page 3 of the

 5    transcript, which refers to a statement, "He's just

 6    trying to really basically put it on Mario's

 7    shoulders, and say, you know, don't say nothing to

 8    nobody."  Do you know what that corroborated in terms

 9    of the statements and what was going on in the

10    investigation?

11         A.   Yes.  The "Mario" he's referring to is

12    Mario Montoya.  And what Duran is saying in response

13    to my suggesting getting "Styx" in or including

14    "Styx" or others in the conversation, Duran is tell

15    me that Mr. Baca just wants Mario to handle it, and

16    not to involve other people, so that it can stay

17    small scale or quiet.

18         Q.   And what was Mario Montoya supposed to be

19    handling at that point in the investigation?

20         A.   Montoya was supposed to be conducting

21    surveillance to find out where Marcantel and

22    Santistevan lived, and then killing them.

23         Q.   And did you later have corroboration of the

24    investigation about that in terms of any steps that

25    Mario Montoya took to further that alleged crime, or
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    attempted crime?

2        A.   Yes.  Montoya reported a fictitious

3    location where Marcantel lived.  And Montoya went to

4    Chris Garcia's house and picked up a firearm that was

5    to be used in the murder.

6        Q.   On page 4 of that same exhibit, there is

7    discussion about having Eric Duran discussing that he

8    would put "Pup" or Mr. Baca on the telephone, so he

9    could say things in his own words.  Was that an

10   attempt there to put words in Mr. Baca's mouth or to

11   have Mr. Baca speak about a subject?

12       A.   The latter.

13       Q.   On page 6 of that same exhibit, you gave a

14   statement where you say -- you talk about "Styx" or

15   Mr. Archuleta getting involved in criminal activity

16   in New Mexico.  And you say, "I don't actually see

17   him doing anything," which would, I guess, arguably

18   be an exculpatory statement as to Mr. Archuleta, if

19   you believe he might not engage in certain criminal

20   activity; is that fair to say?

21       A.   Yes, sir.

22            MS. SIRIGNANO:  Objection, Your Honor.

23   Counsel is leading the witness.

24            MR. CASTELLANO:  It's cross-examination.

25            THE COURT:  I think he's probably your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    witness.  Don't lead.  But I think that question is

2    fine.  Overruled as to that question.

3        Q.    Okay.  So the question was:  Is there some

4    tendency there on your part to say something which

5    tends to be exculpatory as to Mr. Archuleta?

6        A.    Yes, sir.

7        Q.    And in terms of exculpatory statements, can

8    you tell the Court whether Mr. Duran, on things that

9    were not recorded, whether he indicated to you that

10   anyone had given him any exculpatory statements, or

11   that he had taken exculpatory statements from

12   anybody?

13       A.    No, Duran didn't report anything like that

14   to me.

15       Q.    And if he had, would you have reported that

16   or documented it somewhere?

17       A.    Yes.

18       Q.    On page 7 of that same exhibit, there is

19   discussion where you say you "believed that the dude

20   that got hit down in Cruces was his call."  Do you

21   see that?

22       A.    Yes.

23       Q.    What's this discussion referring to?

24       A.    The hit on Julian Romero.

25       Q.    And did you have corroboration through the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    investigation that Mr. Baca and what's on the

2    document as "Styx," Mr. Archuleta, as being involved

3    in that hit?

4         A.   Yes, we did.

5         Q.   And, in fact, have people pled guilty to,

6    and admitted to having been involved with that

7    assault?

8         A.   Yes, I believe three have pled.

9         Q.   Page 10 of that exhibit there is a

10   discussion at the bottom that says, "Chris was

11   supposed to, and I don't know, he was supposed to put

12   him somewhere, and then he didn't want to put him,"

13   the next page says, "I don't know what he did.  He

14   didn't answer last night, so we just -- 'Pup' just

15   told Mario to go to his house and get him."

16             Did you have any corroboration for what

17   Mr. Duran told you there?

18        A.   Yes, that discussion is about firearms.

19   And Mario Montoya did go to Chris Garcia's house and

20   obtain a firearm.

21        Q.   And were some of these topics also captured

22   on the wire on either the phone or the recording

23   devices?

24        A.   Yes, sir.

25        Q.   So even whether they were mid-sentence or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

23

```
 1    not, did you have corroboration in other parts of the
 2    investigation?
 3         A.   Yes, I did.
 4         Q.   Now, turning to Defendant's Exhibit E,
 5    DeLeon Bates 6043.  It's a transcript from October of
 6    2015, that was discussed yesterday.  Do you recall
 7    that?
 8         A.   Yes.
 9         Q.   Okay.  Turning your attention to the second
10    page of that transcript, which is 6044 Bates stamp.
11    There is a discussion by the CHS that Marcantel would
12    be "a bigger target, and it would give us more
13    recognition.  He's all I know 'Pup' would be fuck
14    happy if we got this accomplished."  Is this a
15    discussion with Mr. Baca?
16         A.   Yes.
17         Q.   And does Mr. Baca indicate that he does not
18    want this to happen?
19         A.   No, he does not.
20         Q.   And there is a discussion on the next page,
21    which is 6045.  Once again, there is a discussion
22    with Mr. Baca, and there is a discussion about
23    sending willas.  What are willas?
24         A.   Messages, kites, letters.
25         Q.   And can you tell from this discussion that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    these are the willas or letters that are tied to the

2    Marcantel and Santistevan hits?

3         A.   I believe they are.

4         Q.   And so, even though this conversation maybe

5    starts mid-sentence, did you have corroboration of

6    the fact that letters were sent?

7         A.   Yes.

8         Q.   And were those some of the letters that you

9    discussed during the James hearing about people,

10   including Mr. Baca, conspiring to murder Mr.

11   Marcantel and Mr. Santistevan, as well as Mr. Vigil?

12            MS. SIRIGNANO:   Objection, Your Honor.

13   He's still leading the witness.

14            THE COURT:   Overruled.

15        A.   Yes, we recovered, I believe eight of the

16   nine original letters that were sent out to SNM

17   members on the street, to hit those individuals, or

18   to kill those individuals.

19        Q.   So was this another way for you to

20   corroborate things that were recorded by Mr. Duran or

21   others?

22        A.   Yes, sir.

23        Q.   Once again, what threats, if any, did you

24   make to Mr. Duran to get him to cooperate in this

25   case?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    Never -- I never threatened Mr. Duran to

2   cooperate.

3        Q.    Now, was there an indication that Mr. Duran

4   may have been motivated by certain things to

5   cooperate, aside from threats?

6        A.    Yes.

7        Q.    So, for example, restoration of good time?

8        A.    Yes.

9        Q.    And down the road, potentially even money?

10       A.    Yes.

11       Q.    All right.  On the same page, did any of

12   those possible motivations -- were they threats in

13   any way?

14       A.    No.

15            MR. CASTELLANO:  May I have a moment, Your

16   Honor?

17            THE COURT:  You may.

18            MR. CASTELLANO:  Thank you, Your Honor.  I

19   pass the witness.

20            THE COURT:  Thank you, Mr. Castellano.

21            Mr. Lowry, do you have any redirect of Mr.

22   Acee?

23                         EXAMINATION

24   BY MR. LOWRY:

25       Q.    Good morning, Special Agent Acee.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Good morning.
 2        Q.   If I understood your testimony just now,
 3   you said that Mr. Duran never reported any
 4   exculpatory information to you?
 5        A.   No, not that I can think of.
 6        Q.   It's fair to say he didn't report a lot of
 7   information to you about his personal behavior?
 8        A.   Fair to say.
 9        Q.   He didn't report to you that he was getting
10   pornographic images over his cellphone?
11        A.   Not at the time.
12        Q.   Did he report that to you later?
13        A.   Yes.
14        Q.   So did he report to you that -- when you
15   asked him to quit gambling via Fantasy Football, did
16   he report to you that he had quit gambling?
17        A.   Yes.
18        Q.   Did he, in fact, quit gambling?
19        A.   At least on the phone, yes.
20        Q.   And it's fair to say you gave him plenty of
21   admonishments about what not to do, but he ignored
22   those admonishments?
23        A.   I think he followed my admonishments.  At
24   times he would try to explain why it was necessary to
25   do something.  And in some cases, I understood and I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  concurred.

 2         Q.   But it's fair to say that you never gave

 3  him permission to engage in prostitution?

 4         A.   No, I wouldn't give him permission to do

 5  that.

 6         Q.   And you didn't give him permission to sell

 7  heroin?

 8         A.   Of course not.

 9         Q.   And you didn't give him permission to

10  possess a firearm?

11         A.   I did not.

12         Q.   You didn't give him permission to abuse

13  children?

14         A.   I wouldn't do that.

15         Q.   You're aware that he's done all these

16  things?

17         A.   I disagree.

18         Q.   What do you disagree with?

19         A.   I don't think he's done all those things.

20  I suspect he possessed a firearm, and I'm pursuing

21  charges in that matter.  But the child abuse thing

22  was unfounded by the authorities up there.  I didn't

23  have any involvement in that, but I talked to the

24  people that did.

25              I think there is probable cause to believe

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    he possessed heroin.  Unfortunately, that's a
 2    misdemeanor on that occasion, and probably below the
 3    threshold that I can charge.
 4              And the prostitution one, I don't believe
 5    that there was any probable cause to believe that
 6    occurred.  I did read those reports as well.
 7         Q.   And with regard to the report on the
 8    prostitution charge, if I understood that report
 9    correctly, when the police approached his vehicle to
10    question him about that, he possessed a syringe full
11    of a substance that he sprayed out on the floor?
12         A.   That's what I read as well.
13         Q.   Did anybody ever test that to see if that
14    was heroin?
15         A.   I don't believe so.  I think it was
16    dissipated into the carpet or upholstery.
17         Q.   Would you have approved of him to possess
18    paraphernalia like that, like a syringe?
19         A.   No.  And his possession of any kind of
20    illegal substance would have had to have been during
21    an FBI operation with agents there.  And that wasn't
22    the case.
23         Q.   But it's fair to say that he didn't report
24    any of that activity, or even being engaged by police
25    in those activities to you, whether he was guilty of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   them or not?
 2        A.    I talked to him about what you referred to
 3   as the child abuse incident.  He did report that to
 4   me.
 5             He reported the incident with the
 6   prostitute and syringe of heroin to the agents of the
 7   Seattle division.
 8             The other two incidents he didn't report.
 9             MR. LOWRY:  No further questions, Your
10   Honor.
11             THE COURT:  Thank you, Mr. Lowry.
12             All right.  Mr. Acee, you may step down.
13   Thank you for your testimony.
14             Mr. Lowry, Ms. Duncan, does Mr. Baca have
15   further witnesses or evidence he wishes to present on
16   these two motions?
17             MR. LOWRY:  Your Honor, may I have a quick
18   moment?
19             THE COURT:  You may.
20             MR. LOWRY:  Your Honor, we'll call Edward
21   Urtiaga.
22             MS. SIRIGNANO:  Judge, may I raise a quick
23   housekeeping matter?
24             THE COURT:  Sure.
25             MS. SIRIGNANO:  Mr. Montoya is back in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   State of New Mexico, and I believe he's had his

 2   initial appearance on his supervised release

 3   violation.  So I'll withdraw the emergency writ

 4   motion this afternoon.

 5            THE COURT:  All right.  Any objection?

 6   Then all you need to do is file a notice, not another

 7   motion.  Just file a notice.  And without objection,

 8   it will be withdrawn.

 9            Mr. Urtiaga, if you'll come up and stand

10   next to the witness box on my right, your left.

11   Before you're seated, my courtroom deputy, Ms.

12   Standridge, will swear you in.

13                    EDWARD URTIAGA,

14       after having been first duly sworn under oath,

15       was questioned and testified as follows:

16                  DIRECT EXAMINATION

17            THE CLERK:  Please be seated.  State your

18   name and spell it for the record.

19            THE WITNESS:  My name is Edward Urtiaga.

20   My last name is Urtiaga, U-R-T-I-A-G-A.

21            THE COURT:  Mr. Urtiaga.  Mr. Lowry.

22   BY MR. LOWRY:

23       Q.  Good morning, Mr. Urtiaga.

24       A.  Good morning.

25       Q.  Mr. Urtiaga, where have you been employed?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    At the New Mexico Corrections Department.

2        Q.    How long have you been employed there?

3        A.    Approximately 12 years.

4        Q.    In the course of your employment, where did

5    you work within the Department of Corrections?

6        A.    I worked with the Corrections Department in

7    Los Lunas, New Mexico, for three years, and the

8    remainder in Santa Fe, New Mexico.

9        Q.    And you worked with -- which unit of the

10   prison system did you work in?

11       A.    Most recently, the North facility.

12       Q.    In February of 2015, where did you work at

13   the Department of Corrections?

14       A.    The North facility, sir.

15       Q.    When you worked at the North facility in

16   February of 2015, did you have the occasion to meet

17   an inmate named Eric Duran?

18       A.    I know who he is, yes.

19       Q.    Okay.  How long had he been under your

20   supervision as a correctional officer?

21       A.    I can't give you an approximate number,

22   sir.  I had him as an inmate in my unit.  But I don't

23   know how long.

24       Q.    Do you recall what unit that was?

25       A.    3B, housing in 3B at the North facility.

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                               (505) 843-9494
FAX (505) 843-9492                                                           FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Do you recall who was housed next to him or
2  around him at that time?
3      A.   At the time, there was other SNMers, mostly
4  SNM, and I think it was X pod.
5      Q.   Do you recall an event that happened on
6  February 18, 2015, with Mr. Duran?
7      A.   The one on the paper that you showed me,
8  yeah.
9      Q.   Okay.  And fair to say that I shared with
10 you your report yesterday, when you were here at the
11 courthouse?
12     A.   Yes, sir.
13     Q.   Do you recall that incident without seeing
14 the report?
15     A.   Vaguely.
16          MR. LOWRY:  May I approach, Your Honor?
17          THE COURT:  You may.  As far as exhibits on
18 Baca, you're at G.  So it will be H.
19     Q.   Mr. Urtiaga, does that refresh your
20 recollection about your encounter with Mr. Duran on
21 the 18th of February, 2015?
22     A.   Yes, sir.
23     Q.   Can you describe to the Court what happened
24 that day?
25     A.   We had found contraband on a lot of the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   inmates in that pod, that got moved in that pod.
 2              MS. ARMIJO:  Your Honor, excuse me.  I'm
 3   going to object if he's going to read it.  If that
 4   item has refreshed his recollection, I would ask that
 5   he --
 6              THE COURT:  Have you had plenty of time to
 7   look at the document?
 8              THE WITNESS:  Yeah.
 9              THE COURT:  Why don't you turn it over and
10   just testify from your memory now.
11        A.   We had found pieces of metal missing from
12   another unit.  And we moved these inmates to a pod.
13   We placed them on PHD, meaning they couldn't have
14   personal property or things like that.  And when they
15   got moved, their property that they weren't allowed
16   wasn't taken.  So I had to go in there and make sure
17   it got taken.
18        Q.   Did Mr. Duran appreciate you taking his
19   property?
20        A.   None of the inmates did.
21        Q.   How did Mr. Duran react to you when you
22   removed his property from his cell?
23        A.   He was upset.
24        Q.   Did he say anything to you to express his
25   level of upsetness?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I mean, I can recall what's off the paper.
 2   I can't recall just by memory exactly what he told
 3   me.  I remember they threatened to kill me in the
 4   pod.  And I recall him telling me that his girlfriend
 5   knew what kind of car I drove, where I lived at.  He
 6   told me my address.  And I mean, it was all the
 7   SNMers in there also yelling.  So I mean, I took it
 8   pretty seriously.  That's about it.
 9        Q.   What kind of tone of voice did he use when
10   he was talking to you?
11        A.   He was yelling.
12        Q.   If you wanted to step away from the
13   microphone, could you just give the courtroom a sense
14   of how high his voice was?
15        A.   I don't know, just yelling.  Hey, like just
16   yelling at me.  I mean, it's kind of hard, but behind
17   a door, I could hear him from behind a door.  He was
18   yelling at me.
19        Q.   Behind a closed door?
20        A.   Yes.
21        Q.   And you captured all of that in the report
22   that you wrote in Anthony Baca Exhibit H?
23        A.   Yes.
24        Q.   Did that cause you to file a disciplinary
25   report against Mr. Duran?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.   Yes, him and other inmates in that pod.
 2             MR. LOWRY:  Your Honor, at this time, I'd
 3   like to move for admission of Anthony Baca Exhibit H.
 4             THE COURT:  Any objection, Ms. Armijo?
 5             MS. ARMIJO:  No, Your Honor.
 6             THE COURT:  All right.  Defendant's Exhibit
 7   H will be admitted.  This was Baca Exhibit H will be
 8   admitted into evidence.
 9        Q.   And you said you did write a disciplinary
10   report against Mr. Duran?
11        A.   Yes, sir.
12             MR. LOWRY:  May I approach, Your Honor?
13             THE COURT:  You may.
14        Q.   Mr. Urtiaga, I've handed you what I've
15   marked as Defendant's Exhibit AB-I.  Do you recognize
16   that?
17        A.   Yes.
18        Q.   Is this the disciplinary report you wrote
19   up for Mr. Duran?
20        A.   Yes, sir.
21        Q.   And it fairly and accurately reflects the
22   report that you drafted?
23        A.   Yes, sir.
24             MR. LOWRY:  Your Honor, at this time, I'd
25   move for admission of Anthony Baca Exhibit I.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Any objection, Ms. Armijo?
 2              MS. ARMIJO:  No, Your Honor.
 3              THE COURT:  Anybody else have any
 4    objection?  Not hearing any, Baca Defendant's Exhibit
 5    I will be admitted into evidence.
 6         Q.   Mr. Urtiaga, did you take the threats
 7    against you seriously?
 8         A.   Yes, sir.
 9         Q.   What, if anything, happened to your
10    disciplinary writeup that you know about?
11         A.   I don't know.  As a corrections officer,
12    we're not part of the disciplinary process.
13         Q.   So you don't know what came of your report?
14         A.   No, sir.
15         Q.   Did you feel threatened by Mr. Duran?
16         A.   Yeah, it was --
17              MS. ARMIJO:  Objection; asked and answered.
18              THE COURT:  Overruled.
19         Q.   You're free to answer.
20         A.   Yes, I did; yes, that day, yes.
21              MR. LOWRY:  May I have a moment, Your
22    Honor?
23              THE COURT:  You may.
24         Q.   Mr. Urtiaga, did you feel as though knowing
25    your address and the kind of car you drove increased
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the threat to your safety?

 2         A.   Yes.

 3         Q.   Do you have any sense of how Mr. Duran came

 4    to know that information?

 5         A.   As I recall, he told me his girlfriend -- I

 6    was in a motorcycle accident in 2009.  And I used an

 7    attorney, Ron Bell, in Albuquerque -- and for him to

 8    say his girlfriend worked at Ron Bell, and knew my

 9    address, it scared me, for him to find that

10    information out.  It scared me.

11         Q.   And you testified earlier about Mr. Duran

12    being moved to prehearing detention because of metal

13    items that were found?

14         A.   Yes.  There was metal missing in their

15    cells.  And they had found homemade weapons, or

16    shanks we call them, in their cells.

17         Q.   Had Mr. Duran been moved to that location

18    because a shank was found in his cell?

19         A.   I don't recall him specifically, sir.

20         Q.   But the inmates, in general, had been moved

21    there because of that?

22         A.   Yes.

23         Q.   Are you aware of anything being done at the

24    correctional facility with regard to his girlfriend,

25    or Mr. Duran, in terms of the threats he made to you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I don't know.  I mean, I was -- I wrote my
 2   report, and that was it.  I didn't ever -- I never
 3   was aware of anything that came from that.
 4             MR. LOWRY:  No further questions, Your
 5   Honor.  I'll pass the witness.
 6             THE COURT:  Thank you, Mr. Lowry.
 7             How about any other defendants?  Do they
 8   have cross-examination of Mr. Urtiaga?
 9             All right.  Ms. Armijo, if you have
10   cross-examination of Mr. Urtiaga you may do so at
11   this time.
12             MS. ARMIJO:  Thank you, Your Honor.
13                       EXAMINATION
14   BY MS. ARMIJO:
15        Q.   Good morning, Lieutenant Urtiaga.
16        A.   Good morning, ma'am.
17        Q.   During that time that you were with
18   Corrections, how long were you with STIU?
19        A.   Approximately two years, I believe.
20        Q.   And when was that?
21        A.   I can't recall, ma'am.  Honestly, I can't
22   recall.  I want to say late 2009, maybe to 2011
23   almost.  I can't recall, ma'am, the dates.
24        Q.   You can't recall the dates when you were
25   part of STIU?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         A.   No.   There is a series of events -- I was
 2    in a motorcycle accident, and I was on admin for a
 3    year.   I just can't recall the dates.   I'd have to
 4    get them for you.
 5         Q.   You mentioned you were in a motorcycle
 6    accident in 2009?
 7         A.   Yeah.
 8         Q.   Were you on STIU before or after that?
 9         A.   It was after that.   Maybe 2010.
10         Q.   Okay.
11         A.   2010.
12         Q.   And for how long?
13         A.   I think approximately, it was approximately
14    two years.
15         Q.   And what were the circumstances of you
16    leaving STIU?
17         A.   The circumstances of me leaving.   I just
18    resigned, I stepped out of STIU.   It wasn't worth the
19    pay, what we were doing.
20         Q.   Okay.   So you're saying that you
21    voluntarily left STIU; is that right?
22         A.   Yes.
23         Q.   Okay.   And you just said it wasn't worth
24    what you do; is that correct?
25         A.   It wasn't worth the pay.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Okay.  STIU deals with prison gangs;
 2   correct?
 3        A.   Yes, ma'am.
 4        Q.   It's a very dangerous position?
 5        A.   Yes, it is.
 6        Q.   And would you agree that SNM is dangerous
 7   group?
 8        A.   Yes.
 9        Q.   And did you know, in 2015 -- I noticed in
10   your testimony -- I know that Mr. Lowry kept on
11   saying "Eric Duran" -- but you referred to they, they
12   a great deal.  When you were referring to "they," who
13   are you referring to?
14        A.    SNM members, ma'am.
15        Q.    And the incident that is reflected on
16   exhibits, do you have the exhibits -- Mr. Lowry, do
17   you have the exhibits?  Are they up there?  Okay,
18   sorry.
19             And I'm going to show you AB-H first.
20   Okay.  And this is your memo regarding this incident;
21   correct?
22        A.   Yes, ma'am.
23        Q.   Okay.  And it doesn't just refer to Eric
24   Duran; correct?
25        A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   You also refer to Robert Martinez and Roy
 2   Martinez; correct?
 3        A.   Yes, ma'am.
 4        Q.   And of those people, do you know who was
 5   higher up in the organization?
 6             MR. LOWRY:  Objection, Your Honor.  This is
 7   beyond the scope of direct.
 8             THE COURT:  Well, I see some connection.
 9   Overruled.
10        Q.   Do you know who was higher up in this
11   organization?
12        A.   Just looking at it, from my experience, it
13   was probably Robert Martinez.
14        Q.   Okay.  Known as "Baby Rob"; correct?
15        A.   Yes, ma'am.
16        Q.   And he was known, especially back in 2015,
17   as a leader of SNM; correct?
18        A.   Yes, ma'am.
19        Q.   Then Roy Martinez, "Shadow," were you
20   familiar with him?
21        A.   Yes, ma'am.
22        Q.   And he was higher up than Mr. Duran;
23   correct?
24        A.   Yes, ma'am.
25        Q.   So you have -- this incident involved a pod
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    where you had Robert Martinez, a leader of SNM;
 2    correct?
 3         A.   Yes, ma'am.
 4         Q.   Roy Martinez, who also held a leadership
 5    role; correct?
 6         A.   Yes, ma'am.
 7         Q.   And Eric Duran, who you would agree, he was
 8    not a leader at that time; correct?
 9         A.   Yes, ma'am.
10         Q.   All right.  So are you aware of how SNM
11    members act when their property is being, for lack of
12    a better term, is messed with?
13         A.   Can you repeat that?  Am I aware?
14         Q.   Let me rephrase that question.  Were you
15    surprised at this incident, or was this par for the
16    course, for SNM members to act against a correctional
17    officer after having their property interfered with?
18         A.   This day, ma'am, they were mad at me.  They
19    were specifically upset with me, because I do my job.
20    I went and made sure that I took their property that
21    they were on PHD.
22         Q.   Correct.
23         A.   Yes.
24         Q.   And I guess that's my point.
25         A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   They were mad at you because you did your
 2   job; correct?
 3        A.   Yes.
 4        Q.   And you were a correctional officer doing
 5   your job.  And as part of that, they were upset with
 6   you?
 7        A.   Yes, ma'am.
 8        Q.   But this isn't the first time this sort of
 9   thing has happened; correct?
10        A.   No, it's not.
11        Q.   Okay.  When you were -- even as not being
12   in STIU, when you have contact with SNM Gang members;
13   correct?
14        A.   Yes, I did.
15        Q.   Okay.  And this wasn't surprising to you,
16   was it?
17        A.   No, it was the normal thing from them.
18        Q.   A normal thing from them; correct?
19        A.   Yes, ma'am.
20        Q.   And if one of them -- let's say Mr. Duran
21   was cooperating, or wanted to cooperate with law
22   enforcement, he wouldn't want "Baby Rob" or "Shadow"
23   to know, would he?
24        A.   No, I'm sure he wouldn't.
25        Q.   And he wouldn't want to act any differently
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to a correctional officer, if what was expected of
 2    him -- especially as being the lowest on the totem
 3    pole -- is to basically kind of punk you, for lack of
 4    better words; correct?
 5         A.    Correct, ma'am.
 6         Q.    Okay.  Now -- and you are aware that SNM
 7    members assault correctional officers; correct?
 8         A.    Yes, ma'am.
 9         Q.    And the yelling that you were referring to,
10    I believe Mr. Lowry was asking about Eric Duran --
11    "Baby Rob" was yelling at you, Mr. Robert Martinez?
12         A.    There was a lot of inmates in there yelling
13    at me.
14         Q.    Okay.  So, in addition to the three that
15    you wrote up, were there other SNM members around?
16         A.    Yes, there was, yes.
17         Q.    Okay.  And so, if Eric Duran did not want
18    any of those other gang members to know he was
19    cooperating, he, too, would have had to -- he
20    couldn't have just been compliant with you; correct?
21         A.    You're right.
22         Q.    You would agree with that?
23         A.    Yes, I agree with you, ma'am.
24         Q.    Now, going to AB-I.  This is the
25    disciplinary report.  Looks like the day of the
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                        e-mail: info@litsupport.com

```
 1    incident is 2/18; correct, 2015?
 2         A.   Yes, ma'am.
 3         Q.   You wrote it on 2/19/2015; correct?
 4         A.   Yes, ma'am.
 5         Q.   Looks like it went to the disciplinary
 6    board on 2/20/2015; correct?
 7         A.   Yes, ma'am.
 8         Q.   And you were unaware when you wrote this on
 9    2/19, that Eric Duran was, in fact, at the FBI office
10    meeting with FBI, cooperating; correct?
11         A.   I had no idea.
12         Q.   So he would not have received this, given
13    that disciplinary -- it was received by disciplinary
14    on 2/20/2015; correct?
15         A.   Yes, correct.
16         Q.   Okay.  Now -- and even after that date, you
17    were not aware, in 2015, that Eric Duran was working
18    with law enforcement, were you?
19         A.   That's not -- I mean, I knew myself, but,
20    no.  I mean, I don't know how to answer that.  I
21    knew.  I know a lot of these SNM members, so I kind
22    of knew that he was.
23         Q.   Okay.  When did you know that?
24         A.   What's that?
25         Q.   When did you know that?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          A.    Just based off of the way they move

2     inmates, and where they put them.  I mean, I was in

3     the gang unit for two years.  I knew kind of what was

4     going on.

5          Q.    My question was not how, although I

6     appreciate the answer.

7          A.    I'm sorry.

8          Q.    When did you know that?

9          A.    I don't recall exactly what day.

10         Q.    Okay.  Well, let's go to February of 2015.

11    As I mentioned to you, on the 19th of February is

12    when he had his first meeting with FBI.  Did you

13    know, when you wrote this disciplinary report, that

14    he was potentially going to cooperate?

15         A.    Oh, no, no.

16         Q.    Okay.  So as far as the timeframe, it was

17    after this; correct?

18         A.    Yeah, it was after that.

19         Q.    Do you know approximately how long after

20    this?

21         A.    Whenever -- I can't tell you dates, but I

22    know when he came back, when -- I know no sanctions

23    were imposed against him, no major sanctions.  So

24    something happened where they dropped the report.

25         Q.    I thought you testified that you didn't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    know what happened?

2         A.    No.   Later on, when you -- later on, when

3    they impose the sanctions on the inmates, they'll be

4    on disciplinary for a long -- an extended period.  It

5    would be longer.

6         Q.    Okay.

7         A.    So we know, as correctional officers, that,

8    yeah, you know what, this guy is serving his

9    sanctions, or whatnot.  And that's -- I mean, that's

10   my answer, ma'am.

11        Q.    So you did know or you didn't know -- I

12   just want to clarify -- do you know whether or not

13   from this report, this disciplinary report, AB-I,

14   whether or not Mr. Duran was actually sanctioned or

15   not?

16        A.    Off of this report, I don't know based off

17   this report.

18        Q.    Okay.  So what is that you're talking about

19   that you think he wasn't sanctioned for?

20        A.    Later on -- I don't know how to explain it

21   to you.  Later on -- usually something like this,

22   this inmate would have been on disciplinary for a

23   long time.  He would have been without anything for a

24   long time.  And you know.  And then based off of

25   where they move these guys, you know if the inmate --


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    you know if he's an informant, pretty much.
 2         Q.   Okay.  So you did keep up and try and find
 3    out whether or not he was disciplined?
 4         A.   It's just something you do as a
 5    correctional officer.  Not him specifically also.
 6    It's all these guys.
 7         Q.   Okay.  Because that's important?
 8         A.   They're dangerous.  They're dangerous, so
 9    you've got to keep up with everything that's going on
10    with these guys.
11         Q.   Yes, okay.
12              So now, if -- the last thing I want to ask
13    you about is, you're currently on administrative
14    leave; correct?
15         A.   Yes.
16         Q.   And I don't want to ask you --
17              THE COURT:  Hold on just a second.
18              MR. LOWRY:  Object, Your Honor.  What
19    relevance does this have on the scope of the inquiry?
20              THE COURT:  Well, I see the relevance.  We
21    need -- the Government is attacking some things here
22    so I'll allow it.  Overruled.
23         Q.   You're currently on administrative leave;
24    correct?
25         A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And I don't want to ask you about -- or you
 2   to say details about it.  But you are aware that
 3   there is allegations against you that New Mexico
 4   State Police is investigating; correct?
 5        A.   Yes.  It's standard procedure, ma'am.
 6        Q.   Okay.  And you don't know what the outcome
 7   of that will be?
 8        A.   I know that nothing is going to happen.
 9        Q.   Oh, how do you know that?
10        A.   Because, like, I did what I had to do by
11   policy, ma'am.
12        Q.   Have you spoken to the officer that's
13   investigating you?
14        A.   No.  I know what happened that day, ma'am.
15        Q.   Okay.  Would you be surprised if that case
16   isn't closed, and it's going to be submitted to the
17   DA's office?
18        A.   The State is going to do what they're going
19   to do.  But I know what happened.
20        Q.   Okay.  The allegations are against you that
21   you used excessive force; correct?  And I'm just
22   talking -- I don't want you talking about it.
23        A.   I haven't been brought with any allegations
24   or anything like that.
25        Q.   Why are you on administrative leave, then?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   What technicality is it that's on administrative
 2   leave?
 3        A.   They haven't told me anything.  The
 4   Department hasn't told me anything.  I just got
 5   placed on administrative leave pending misconduct,
 6   pending possible misconduct.
 7        Q.   What is that misconduct?  Surely, they have
 8   to tell what you that misconduct is.
 9        A.   No, they didn't tell me what any kind of
10   misconduct was.  I was placed on administrative
11   leave.  That it's.
12             MS. ARMIJO:  All right.  If I may just have
13   a moment.
14             THE COURT:  You may.
15             MS. ARMIJO:  That's all I have.  Thank you.
16             THE COURT:  Thank you, Ms. Armijo.
17             Mr. Lowry, you have redirect of Mr.
18   Urtiaga?
19                  REDIRECT EXAMINATION
20   BY MR. LOWRY:
21        Q.   Mr. Urtiaga, you said that that was not the
22   first time that inmates had gotten upset with you for
23   doing your job?
24        A.   Yes, sir.
25        Q.   Was that the first time anybody had yelled
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    at you with knowledge of your home address?

2         A.   That was the first time, yes, sir.

3         Q.   Was that the first time anybody yelled at

4    you with knowledge of the car that you drove and the

5    license plate of the car that you drove?

6         A.   Yes.

7         Q.   Did that make this particular incident

8    unique in your mind?

9         A.   Yes, it did, sir.

10        Q.   If you assume, as the United States did,

11   that Mr. Duran was cooperating at that time with law

12   enforcement, could he have yelled and hollered at you

13   without sharing that kind of personal identification

14   information?

15        A.   I don't know why he would have done that,

16   if he was already an informant.

17        Q.   So would that have been inappropriate, in

18   your eyes, for a government agent or cooperating

19   agent for the Government, to share that kind of

20   information with other people that you thought may

21   have been hostile or dangerous to your safety and

22   welfare?

23        A.   Yes.

24             MR. LOWRY:   No further questions, Your

25   Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Thank you, Mr. Lowry.
 2              All right.  Mr. Urtiaga, you may step down.
 3   Any reason Mr. Urtiaga may not be excused from the
 4   proceedings?
 5              MR. LOWRY:  Not from the defense, Your
 6   Honor.
 7              MS. ARMIJO:  No, Your Honor.
 8              THE COURT:  Any other defendant have any
 9   objection?  All right.  Mr. Urtiaga, you're excused
10   from the proceedings.  Thank you for your testimony.
11              Mr. Lowry, does Mr. Baca have further
12   witnesses or evidence he wishes to present in support
13   of these two motions?
14              MS. DUNCAN:  Your Honor, we're going to
15   call Chris Cupit.
16              THE COURT:  Mr. Cupit, if you'll come up
17   and stand next to the witness box on my right, your
18   left.  My courtroom deputy, Ms. Standridge, will
19   swear you in.
20
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    CHRISTOPHER CUPIT,
 2        after having been first duly sworn under oath,
 3        was questioned and testified as follows:
 4                    DIRECT EXAMINATION
 5              THE CLERK:  Please be seated.  State your
 6   name and spell it for the record.
 7              THE WITNESS:  My name is Christopher Cupit,
 8   C-U-P-I-T.
 9              MS. DUNCAN:  Good morning, Mr. Cupit.
10              THE COURT:  Ms. Duncan.
11              MS. DUNCAN:  Thank you, Your Honor.
12   BY MS. DUNCAN:
13        Q.   Mr. Cupit, where are you employed?
14        A.   New Mexico Department of Corrections.
15        Q.   How long have you been employed there?
16        A.   Approximately -- going on my 12th year.
17        Q.   And were you employed there in 2015?
18        A.   Yes, ma'am.
19        Q.   What was your title or your job at that
20   point?
21        A.   Security Threat Intelligence Unit, STIU.
22        Q.   Did you have a particular position within
23   the STIU?
24        A.   Just an investigator, gang investigator.
25        Q.   How long had you worked for the STIU in
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   2015?

2       A.   I started in January of 2012, so

3   approximately three years.

4       Q.   And did you know an individual named Eric

5   Duran?

6       A.   Yes, ma'am.

7       Q.   How did you know him?

8       A.   He's an inmate that we had housed there in

9   PNM.

10      Q.   Do you recall a conversation with Mr. Duran

11  in February of 2015?

12      A.   Yes.

13      Q.   And how did that conversation come about?

14      A.   It started actually in 2014, approximately

15  a couple months before that.  STIU Coordinator Adam

16  Vigil asked myself and Captain Sergio Sapien to go

17  ahead and interview Eric Duran.

18      Q.   And did you know why Mr. Vigil asked you to

19  interview Eric Duran?

20      A.   He didn't tell us the exact reason why.  He

21  just said to go talk to him, that he would only talk

22  to us.

23          MS. SIRIGNANO:  Excuse me, Your Honor.  Can

24  we ask the witness to move the microphone?

25      A.   Sorry.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492
                                                                          1-800-669-9492
                                                              e-mail: info@litsupport.com




```
 1        Q.   Do you remember when, in 2014, you spoke to
 2   Mr. Duran?
 3        A.   I don't know the exact date, but I know it
 4   was right around November, December, timeframe,
 5   within that month.
 6        Q.   Did you write any kind of document to
 7   memorialize that meeting?
 8        A.   No, ma'am.
 9        Q.   Did you take any notes of the meeting?
10        A.   No.
11        Q.   And was it recorded in any way?
12        A.   No.
13        Q.   So what did you discuss with Mr. Duran in
14   November of 2014?
15        A.   From what I recall, he comes in and we're
16   talking at the North facility, and he's just saying,
17   Hey, I'd like to talk to you guys away from here,
18   away from the Penitentiary.  It was very brief.  If I
19   could put a timeframe on it, maybe ten, 15 minutes at
20   the most.  I don't remember exactly what was said,
21   other than he just wanted to talk to me.
22        Q.   And I think you said he wanted to talk to
23   you away from the facility?
24        A.   Yes, ma'am.
25        Q.   What did you do following that meeting
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    about Mr. Duran and his request?
 2         A.   I just -- we just went back to our office.
 3    That's Sergio Sapien's job to notify our chain of
 4    command; he's the Captain of the unit.
 5         Q.   Okay.  And did you know generally what
 6    Mr. Duran wanted to talk to you about away from the
 7    facility?
 8         A.   I knew it had to do with the SNM and SNM
 9    business.  But I don't recall any specifics, like if
10    he said anything.
11         Q.   So after that point, did you discuss with
12    Mr. Duran any of the specifics?  Did you have any
13    meetings inside the facility with Mr. Duran regarding
14    the information he wanted to provide?
15         A.   After that?
16         Q.   Yes.
17         A.   No, ma'am.
18         Q.   So when was the next time you spoke to
19    Mr. Duran about the information?
20         A.   It was in February, when we actually
21    transported him out to have a conversation.
22         Q.   And what was your role, if any, in
23    transporting Mr. Duran outside the facility?
24         A.   I was one of the officers that assisted in
25    the transfer to the outside.  I know, during the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    meeting, that I may have asked a few questions -- I
2    don't remember exactly what questions I asked.  But
3    that was my main role was to help transfer him.
4         Q.   Did you collect any documents or prepare
5    any documents in preparation for that meeting?
6         A.   No.
7         Q.   At any point, did Mr. Duran discuss with
8    you a letter he had written to you or to Sergio
9    Sapien?
10        A.   I know I remember him mentioning a letter.
11   However, I don't remember him actually giving it to
12   us.  Especially that day.  He definitely didn't give
13   us anything that day.  But I don't remember seeing
14   anything.
15        Q.   When you say "that day," do you mean
16   February 19, 2015?
17        A.   Yes, ma'am.
18        Q.   Did he bring anything when he spoke to you
19   in November or December of 2014?
20        A.   No.
21        Q.   At any point, either November or December
22   2014, or February 2015, did you discuss with
23   Mr. Duran benefits that he sought from cooperating
24   with STIU or the FBI?
25        A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   After Mr. Duran -- you met with the FBI,
 2   with Mr. Duran, were you involved in any way with
 3   Mr. Duran's work with the FBI?  I know that was a
 4   super roundabout question.  I'll ask it again.
 5            To your knowledge, did Mr. Duran begin
 6   working with the FBI after the February 19 meeting?
 7        A.   Yeah.
 8        Q.   And were you involved in any way in
 9   facilitating that work?
10        A.   I assisted with transporting him whenever
11   they needed to speak with him, yeah.
12        Q.   Do you recall how many times you would have
13   transported Mr. Duran to meet with the FBI?
14        A.   I don't have an exact number, so I wouldn't
15   know.
16        Q.   Would you say more than five?  Less than
17   five?
18        A.   I don't know.
19        Q.   When you transported Mr. Duran to the
20   meetings with the FBI, would you stay in the room
21   while they spoke with him?
22        A.   Yes.
23        Q.   Do you know if those meetings were
24   recorded?
25        A.   I don't believe so.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

59

```
1          Q.    Were you ever asked to either bring

2    documents that already existed or prepare documents

3    for those meetings?

4          A.    No.

5          Q.    Are you aware that the FBI provided

6    Mr. Duran with recording devices?

7          A.    Yes.

8          Q.    Were you involved at all with bringing

9    those recording devices to Mr. Duran or taking them

10   out of the cell to give to the FBI?

11         A.    I was involved one time picking the

12   recording device up.  And I know the exact time when

13   I did that.

14         Q.    Will you tell us about that, please?

15         A.    So it was the last day, December 3, the day

16   of the operation, when we picked all these guys up.

17   I walked into Housing Unit 3.  They were housed in

18   Housing Unit 3 Alpha, Q pod.  I walked straight to

19   Eric Duran's cell while these guys were being taken

20   out, opened up his food port, and he handed me the

21   recording device.

22         Q.    So at the time did he hand you a recording

23   device or did he hand you a cellphone?

24         A.    It was the cellphone.

25         Q.    And when you took the cellphone, did you
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   power it up?
 2        A.   No.
 3        Q.   Did you operate it in any way?
 4        A.   No.
 5        Q.   And did you delete anything off of it?
 6        A.   No.
 7        Q.   And you said that's the only time you ever
 8   retrieved or brought a recording device to Mr. Duran;
 9   is that correct?
10        A.   That I can recall, yeah.
11        Q.   Did you ever arrange for Mr. Duran to call
12   FBI Agent Bryan Acee?
13        A.   No, ma'am.
14        Q.   So other than transporting Mr. Duran to
15   meetings with the FBI, and retrieving the cellphone
16   in December of 2015, did you play any other role with
17   Mr. Duran, in terms of his cooperation with the FBI?
18        A.   No.
19        Q.   And since December '15, have you ever --
20   has the U.S. Attorney's Office ever asked you to
21   gather any documents regarding your participation
22   with Eric Duran and his cooperation with the FBI?
23        A.   Not that I can recall, no.
24        Q.   As a member of -- the STIU monitors inmate
25   phone calls; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.    Yes, ma'am.

 2          Q.    And does that include the calls made by

 3     Eric Duran?

 4          A.    Yes, ma'am.

 5          Q.    Do you know if the STIU continued to

 6     monitor his phone calls while he was cooperating with

 7     the FBI?

 8          A.    I do not know.

 9                MS. DUNCAN:   If I could have a moment, Your

10     Honor?

11                THE COURT:   You may.

12                MS. DUNCAN:   No further questions, Your

13     Honor.

14                THE COURT:   Thank you, Ms. Duncan.

15                Any other defendants have questions of Mr.

16     Cupit?

17                All right.   Mr. Castellano, are you going

18     to do the cross-examination of Mr. Cupit?

19                          EXAMINATION

20     BY MR. CASTELLANO:

21          Q.    Mr. Cupit, what's your current rank with

22     the Corrections Department?

23          A.    STIU investigator.

24          Q.    All right.   You mentioned meeting with

25     Mr. Duran in, you think possibly the November or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    December timeframe of 2014?

2         A.   Yes, sir.

3         Q.   Did you meet with him at your request or at

4    his request?

5         A.   At his request.

6         Q.   And was it your understanding, after

7    meeting with him for that short period, that he

8    wanted to cooperate with authorities?

9         A.   Correct.

10        Q.   He met with you in 2014.  Were you aware of

11   whether he was in trouble in any way, either

12   administratively with the jail, or criminal

13   liability?

14        A.   No, sir.

15        Q.   And then, from that time in 2014, until

16   2015, during that timeframe, were arrangements being

17   made for Mr. Duran to eventually meet with the FBI?

18        A.   Yes, sir.

19        Q.   And was that something you had to do

20   through the chain of command at the facility?

21        A.   Yes, sir.

22        Q.   Now, there was talk of a letter.  Do you

23   remember what the letter discussed?  If it was about

24   cooperation, or if it was about something else?

25        A.   From what I can remember, I think Eric told

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE                           e-mail: info@litsupport.com

1    us that he had a letter, and was going to give it to

2    us.  However, I never saw that letter.

3        Q.  And do you know if it was about SNM Gang

4    business, or if it was about anything else, from what

5    he said to you?

6        A.  He said it was going to be about SNM Gang

7    business, yeah.

8        Q.  To the best of your recollection, he did

9    not turn that over to you?

10       A.  No.

11       Q.  Now, you were part of the transport on

12   February 19th of 2015, when he met with the FBI?

13       A.  Yes, sir.

14       Q.  At that time, were you aware of whether or

15   not Mr. Duran was in trouble at the facility?

16       A.  No, sir.

17       Q.  If you had no information that he was in

18   trouble, then you would not have been able to have

19   scared him or coerced him into cooperating; is that

20   correct?

21       A.  Correct.

22       Q.  And, in fact, did you coerce him or force

23   him to cooperate in any way?

24       A.  No, sir.

25       Q.  Okay.  He's alleged to have been involved

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   in an incident with Agent Urtiaga on February 18th,
 2   the day before you took him to meet with FBI.
 3             Did you know Officer Urtiaga?
 4        A.   I do know Officer Urtiaga.
 5        Q.   And had he been involved with STIU at any
 6   point, that you know of?
 7        A.   Yes.
 8        Q.   Do you know why he left STIU?
 9        A.   I'm not one hundred percent specific on why
10   he left STIU.
11             MS. DUNCAN:  Your Honor, I'm going to
12   object that this witness may be speculating now.
13             THE COURT:  Well, ask him if he knows.  If
14   he knows, I'll let him testify.
15        Q.   What do you know about how he left STIU?
16        A.   I just know that he had some issues within
17   STIU, and they removed him from there.
18             MR. CASTELLANO:  Pass the witness, Your
19   Honor.
20             THE COURT:  Thank you, Mr. Castellano.
21             Ms. Duncan, do you have redirect of Mr.
22   Cupit?
23             MS. DUNCAN:  Very brief.
24             THE COURT:  Ms. Duncan.
25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1                    REDIRECT EXAMINATION
 2   BY MR. DUNCAN:
 3        Q.   I'm sorry, you may have testified to this,
 4   and I just missed it.  But were you present when Eric
 5   Duran and other inmates threatened Sergeant Urtiaga?
 6        A.   No.
 7        Q.   Were you aware when you transported
 8   Mr. Duran on February 19 or the day before, he had
 9   threatened Mr. Urtiaga?
10        A.   No.
11        Q.   Were you aware that the week before you
12   transported Mr. Duran to the February 19 meeting,
13   he'd been found with a shank in his cell?
14        A.   No.
15             MS. DUNCAN:  Thank you.  I have no further
16   questions.
17             THE COURT:  Thank you, Ms. Duncan.
18             All right.  Mr. Cupit, you may step down.
19   Is there any reason Mr. Cupit may not be excused from
20   the proceedings?
21             MS. DUNCAN:  No, Your Honor.
22             MR. CASTELLANO:  No, Your Honor.
23             THE COURT:  Without hearing any objection,
24   you're excused from the proceedings.  Thank you for
25   your testimony.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Mr. Lowry, Ms. Duncan, does Mr. Baca have
 2   any further witnesses or evidence he wishes to
 3   present on his two motions?
 4              MS. DUNCAN:  He does not, Your Honor.
 5              THE COURT:  All right.  Mr. Castellano, Ms.
 6   Armijo, does the Government have any motion -- any
 7   further evidence they wish to present?
 8              MS. ARMIJO:  No, Your Honor.
 9              THE COURT:  All right.  Ms. Duncan, Mr.
10   Lowry, do you wish to argue your motions together or
11   separate them out?  How would you like to proceed?
12              MS. DUNCAN:  I would suggest we argue them
13   separately, Your Honor.
14              THE COURT:  All right.  Which one do you
15   want to take up first?
16              MS. DUNCAN:  Why don't we take them in
17   order.  So I'll start with 1325, which is the coerced
18   statements.
19              THE COURT:  All right.  Let me ask you a
20   thing that -- just a very simplistic way of looking
21   at this.  I had a chance to watch Mr. Duran.  He took
22   the stand.  He doesn't look like he's the kind of guy
23   that's easily coerced, made involuntary; intelligent,
24   seemed to be a rational person; not a weak person
25   that can be overridden.  Is that not a legitimate
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    consideration, watching his demeanor, watching his

2    statements, how he testified, that he looks like he's

3    not going to be a person that's run over?

4              MS. DUNCAN:  I do think that the Court

5    should take into consideration his demeanor.  But I

6    think it's a very different setting today than it was

7    back in late 2014, and early 2015.

8              THE COURT:  What do you think -- if I can

9    take that into consideration, I agree, I can look at

10   him and make some statements or some thoughts about

11   what he is as an individual.  What do you think is so

12   different about his circumstances back then, that

13   when I add that to it, I come to the conclusion that

14   his participation in this recording, these

15   recordings, was involuntary?

16             MS. DUNCAN:  I think there is a couple of

17   things, Your Honor.  In 2014 --

18             THE COURT:  I guess the thing is, why

19   should I conclude that he's just not a man that's

20   making a bargain for his own benefit?

21             MS. DUNCAN:  Your Honor, I think because,

22   in 2014, 2015, when he made this deal with the

23   Government, he was on lockdown.  And as he testified,

24   he filed a lawsuit against then Secretary Marcantel,

25   because he had been in solitary confinement for so

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                     (505) 843-9494
FAX (505) 843-9492                                                                 FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   long, which was having a negative input on his mental

2   and physical health.  He'd lost his privileges.  He

3   was unable to call his family.  He was unable to

4   visit with his family.  He had nothing to distract

5   him at that time.  And that was tortuous enough that

6   he sought the courts to intervene and to end it.

7           THE COURT:  Why don't I see that as just a

8   man that's beginning to deal with reality?  Some

9   people push reality on down the road, and they never

10  come to grips with it.  He came to grips with it.

11          MS. DUNCAN:  Well, I think the reality of

12  his current situation was, that it was coercive.  I

13  mean, he's in intolerable conditions at the time, and

14  seeking relief for it.  So for him, whatever his

15  mental state or physical condition was, it was bad

16  enough that he was seeking the court's intervention.

17  And then, as the restrictions start to ease up, he

18  ends up getting these additional disciplinary

19  infractions.  So the shank -- he had previously been

20  convicted of possession of a shank, had been

21  sentenced to a year in prison with probation -- no,

22  I'm sorry, Your Honor, I misspoke.  At that point he

23  had not been convicted.  Those charges were pending,

24  but he was facing a charge that carried a punishment

25  of nine years.  He had these disciplinary write-ups,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   which would have lost him good time, meaning that he

2   would have been in prison under these tortuous

3   conditions longer.  As you heard from Sergeant

4   Urtiaga, those kinds of infractions are ones in which

5   you expect to see someone in disciplinary for a long

6   period of time.

7          So I agree with you that Eric Duran saw

8   this as a way to make money, saw it as a way to get

9   benefits for himself.  But I think at the very

10  beginning, he was in a situation that he would have

11  done anything to get out of.  And that was the

12  motivation for cooperating.

13         And that kind of pressure continues to this

14  day.  You know, he now finds himself in a position

15  where he's facing criminal charges in Portland, he's

16  facing a probation/parole revocation here, which

17  could put him in prison for longer than nine years.

18         THE COURT:  But how is that any different

19  than any person who is looking at maybe taking a plea

20  agreement?  I mean, they're all under pressure at the

21  time to make a hard decision.  Some of them are

22  sitting in custody, some of them in solitary.  I

23  mean, you know, a lot of times -- and we come in to

24  court, and they stand at the podium and we say it's

25  voluntary.  We just make sure that they know what

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1   they're getting into.  How is that different than,

2   you know, he put himself in a bad spot; worked out a

3   pretty good deal in some ways.  I don't know.

4            MS. DUNCAN:  Sure.  I guess because of the

5   addition of the coercive conditions of confinement

6   that existed in 2014.

7            THE COURT:  But a lot of times I have

8   people standing at the podium taking a plea, and

9   they're in solitary for some reason.

10           MS. DUNCAN:  Sure.  I mean, I understand

11  what the Court is saying, and this Court and other

12  courts have found not to be coercive.  I would not

13  argue differently.  I think there is lot of authority

14  out there.  And it came up during Mr. Perez' motion.

15           THE COURT:  I guess I'd say, putting aside

16  the word "coercive," it's just pressure.  You know, I

17  mean, it's pressure that we're all under.  And if we

18  sometimes have to make decisions when we're under

19  that pressure.  But that doesn't mean it's

20  involuntary.  We just, to relieve the pressure, we

21  sometimes take a different route.

22           MS. DUNCAN:  Well, I think the pressure can

23  turn into coercion.

24           THE COURT:  And what do you think, then,

25  that, if I'm not convinced just being in solitary or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   in confinement or those others, what do you think
 2   that maybe takes his situation and makes it so unique
 3   that the evidence should be suppressed here?
 4            MS. DUNCAN:  Your Honor, I've got to argue
 5   it's the conditions of confinement, plus --
 6            THE COURT:  The conditions of confinement?
 7            MS. DUNCAN:  That's right.  And that this
 8   was -- he was about to lose everything, and remain
 9   under conditions which he found so tortuous.
10            THE COURT:  When you say "lose everything,"
11   what are you putting into the basket?
12            MS. DUNCAN:  I'm putting in he's going to
13   lose his good time, which would have increased his
14   current sentence.
15            THE COURT:  Because of yelling at the
16   officer.
17            MS. DUNCAN:  And because he possessed a
18   dangerous weapon.  He was facing -- he still had a
19   pending case for a prior possession of a dangerous
20   weapon.  So he's facing the prospect of another nine
21   years being added onto his sentence.
22            And so I think, for him personally, at the
23   time, that was unbearable.  So he filed that lawsuit
24   against --
25            THE COURT:  A basket of circumstances?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. DUNCAN:  That's right.  So I think it's
 2     for the Court to decide -- I agree with you that
 3     pressure is not enough, because most people who enter
 4     into pleas are under pressure.  But pressure moves
 5     beyond to coercion, when the factors that are
 6     bearing -- the pressure itself becomes so extreme
 7     that someone is no longer exercising free will; they
 8     basically would do anything to get out of that
 9     decision and to get out from under that pressure.
10     And, you know, I think that that was true of
11     Mr. Duran in 2014, 2015.
12            THE COURT:  Well, we've got a lot of guys
13     in the room.  They're under pressure, too.  But
14     they're not cooperating.  How do you distinguish them
15     from Duran?
16            MS. DUNCAN:  I think it's partly a
17     difference in internal fortitude.  I mean, personal
18     strength.  Some people are weaker than other people.
19            THE COURT:  That's the reason, when I look
20     at Mr. Duran, he doesn't look like some people that I
21     have to worry about -- maybe sometimes you've got a
22     couple FBI agents in a room, maybe a language issue,
23     or something like that.  It's not one of those
24     situations.
25            MS. DUNCAN:  I agree that it's not as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    obvious as that, Your Honor.  But Mr. Duran testified
2    to things that are demonstrably false that he thought
3    would help the Government.  So I think he was
4    succumbing to pressure even in this courtroom.
5             His testimony about Mr. Lowry:  Meeting
6    with Mr. Lowry, seeing Mr. Lowry in the courtroom, at
7    a time when Mr. Lowry was clearly not with the
8    Rothstein Law Firm.  His testimony about trying to
9    explain why he would have this testimony that would
10   be helpful to the Government that wasn't recorded,
11   because there were days where he didn't have the
12   recording device.  And we have two Government
13   witnesses who have testified that the recording
14   devices were taken out and replaced on the same day.
15            So, even if externally, he may have looked
16   calm and able to withstand pressure, I mean, he was
17   perjuring himself to benefit the Government.  And I
18   think that's to get himself out of trouble.  So I
19   don't think that Mr. Duran is a particularly strong
20   person.  I think he is someone who is very
21   susceptible to pressure, both internal and external,
22   and that renders his cooperation and the statements
23   in this case involuntary.
24            THE COURT:  All right.
25            MS. DUNCAN:  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Thank you.
 2              Anyone else want to argue in support, from
 3    the defendants' side, on this motion on the
 4    voluntariness of activities of Mr. Duran?  Any other
 5    defendants?
 6              All right.  Mr. Castellano, if you wish to
 7    argue in opposition.
 8              MR. CASTELLANO:  Yes, Your Honor.
 9              THE COURT:  Mr. Castellano.
10              MR. CASTELLANO:  I'd like to start off
11    where Ms. Duncan left off, and that's that she said
12    that Mr. Duran is susceptible to pressure.  But on
13    cross-examination, they tried to press Agent Acee
14    into saying Mr. Duran is somebody who influences
15    other people.  I think those two are mutually
16    exclusive in this situation.  And I don't think that
17    Mr. Duran is susceptible.
18              I think the fact that he filed the lawsuit
19    doesn't tell us too much.  It tells us that he did
20    what inmates do, and they file lawsuits when they
21    don't like the conditions of confinement.  And his
22    recollection was he was not the only person to file
23    such a lawsuit.
24              Now, the argument has changed here from
25    what was briefed, because in the defense's brief,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    what they alleged was that the Court should suppress
 2    the evidence based on coerced -- evidence that was
 3    coerced by unlawful Government conduct.  And we don't
 4    have any evidence of that whatsoever.  The shift has
 5    now focused to pressure that Mr. Duran was under, or
 6    that he placed on himself.  But there is no evidence
 7    whatsoever of coerced conduct.  And what's important
 8    to remember is that when the defense briefed this,
 9    they were not aware that Mr. Duran had reached out to
10    Government officials prior to February of 2015.
11            So their argument initially was based on
12    the fact that Mr. Duran had got in trouble on the
13    18th, and the next day was before the FBI.  So their
14    picture was that he was only before the FBI because
15    he was in trouble the previous day.
16            We now know that, from a number of
17    witnesses -- I think at least three -- that
18    Mr. Duran, when he was not in trouble at all, reached
19    out to the FBI in order to cooperate.  And that
20    reached back to either November or December of 2014.
21            So I think it's a vastly different picture
22    than what the defense briefed or argued or what was
23    presented in court.
24            The other thing about Mr. Duran's
25    circumstances versus anyone's, is that, if the Court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   were to grant this motion, the Court can grant a
 2   motion to exclude the witnesses who are going to
 3   cooperate against these defendants in trial in
 4   January.  We have four defendants.
 5           THE COURT:  Let's do this, Mr. Castellano:
 6   I need to give Ms. Bean a break, and I don't want to
 7   cut anything off short.  So why don't -- we'll be in
 8   recess for about 15 minutes.
 9           (The Court stood in recess.)
10           THE COURT:  It looks to me like everybody
11   has at least one of their attorneys present.  Look
12   around the room and make sure that your co-defendants
13   have counsel.
14           All right.  Mr. Castellano, if you wish to
15   continue your argument on the motion to suppress on
16   voluntariness grounds.
17           MR. CASTELLANO:  Thank you, Your Honor.
18           One of my final points was, I think the
19   Court got it right, when asking about pressure in
20   this case, that the standard isn't whether or not
21   people are under pressure, because, as the Court
22   said, everyone in this case is under pressure.  And
23   if the Court were to grant this motion, we wouldn't
24   have any cooperators testifying in this trial at the
25   end of the month.  We've got four cooperators in the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Molina murder who pled to life sentences.  And so, if
 2   we use pressure as a standard, none of those people
 3   would be allowed to testify under the arguments that
 4   the defense puts forth.
 5            And like I said, the initial argument was
 6   coerced unlawful government conduct.  And that's just
 7   simply not the case here.  There is no evidence of
 8   that whatsoever.  And so I think under those
 9   circumstances, it is not pressure that counts.  It
10   would be coercion that counted.  And there is no
11   evidence that we have that.  So I would ask the Court
12   deny the motion.
13            THE COURT:  All right.  Thank you, Mr.
14   Castellano.
15            Ms. Duncan, I'll give you the last word on
16   this motion.
17            MS. DUNCAN:  Thank you, Your Honor.
18            THE COURT:  Ms. Duncan.
19            MS. DUNCAN:  I just would like to respond
20   to a couple of points.  First, with respect to the
21   testimony that Eric Duran influences people, that
22   testimony was that he exploits vulnerable, lonely
23   women to get money for himself.  So I don't know that
24   that shows a strength of character, with the ability
25   to withstand coercion.  I just think it shows he's
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    manipulative, which we would agree.

2            We did originally brief this issue as --

3    you know, because the threat to kill Urtiaga happens

4    the day before he cooperated, looked on the paper

5    that that was the motivation for his cooperation.

6            Now, we've just learned that the pressure

7    and the coercion go back farther than February of

8    2015.  But the Urtiaga incident continues to exert

9    coercion on Mr. Duran, because Mr. Duran is now

10   facing charges, potential charges, related to that

11   incident.  But also his girlfriend, Karen Bueno, who

12   gives him that information that she had learned while

13   working for an attorney, is potentially to be

14   prosecuted for that case.

15           And of course, we all now know that nothing

16   happened because of that, and nothing happened

17   because Eric Duran cooperated with the Government.

18           So I think, in this case, I understand that

19   simply pleading guilty or cooperating to get out of

20   charges isn't enough to prove unlawful coercion.  But

21   there is just more here.  Because there is more with

22   the conditions of confinement, and also the potential

23   threat to incarcerating a girlfriend, Karen Bueno.

24           So under these unique circumstances, there

25   was unlawful coercion of Mr. Duran, and his earlier

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                              1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
1    statements and his testimony at trial should be
2    suppressed.
3              THE COURT:  All right.  Thank you, Ms.
4    Duncan.
5              MS. DUNCAN:  Thank you.
6              MR. CASTELLANO:  If I could just make one
7    correction, Your Honor:  There is no evidence that
8    Eric Duran's girlfriend was not prosecuted as a
9    result of cooperation.  Is simply no witness who said
10   that.
11             THE COURT:  All right.  Thank you, Mr.
12   Castellano.
13             Anything else you want to say, Ms. Duncan?
14             MS. DUNCAN:  No, Your Honor.
15             THE COURT:  Well, in these voluntariness
16   situations, you do have to look at each of the facts
17   of the case.  Each situation is unique.  But they do
18   tend to fall on a spectrum, and after years of
19   dealing with these types of motions, I think, try to
20   get some feel as to where they are on that spectrum.
21             As I mentioned with my questions to Ms.
22   Duncan, I did have an opportunity to not just see
23   paper about Mr. Duran, but I finally got to see him
24   on the stand and witness him, and look at his
25   testimony.  I think we all would agree that he is
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    manipulative.  But in some ways, I think that shows

 2    intelligence.  And it's not something just to be

 3    disregarded.  He seemed to be a shrewd and

 4    calculating and reasoning person, and someone who

 5    makes independent decisions as to what is in his best

 6    interests.  And I think that's probably the best way

 7    to look at it.

 8              The Urtiaga incident, I think, could be

 9    seen as -- not as Defendant Mr. Baca is arguing, but

10    another indication of his intelligence, is that he

11    may have been using it to cover, since there is

12    evidence that he was approaching the Government even

13    before that incident occurred.  So by yelling in the

14    prison, he may have been taking attention off

15    himself, and just part of his ruse to protect himself

16    if he was about to begin some serious cooperation

17    with the Government.

18              I think, in these situations, as you look

19    at this spectrum, you look for something more than

20    just the pressure that all defendants are in, and

21    many men who are in prison are under.  And I'm not

22    seeing that additional more that translate the normal

23    pressures that people are under in our prison system,

24    and in our judicial system, that translates that

25    pressure from just pressure to coercion.  I agree

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that the pressure is not the standard, because almost
2    everybody is under pressure of some sort.  And
3    defendants and prisoners are under pressure of a
4    particular kind, but it's not the kind that we're
5    unused to seeing in a federal court.
6            I don't see any evidence of unlawful
7    Government conduct, so there is nothing that raises
8    to me a particular red flag here.  So I don't think
9    that, after observing Mr. Duran, that he is unduly
10   susceptible to pressure in some way.  The law doesn't
11   just tell us that person doesn't have to be under
12   pressure.  It indicates that the Court has to make a
13   determination whether his statements were voluntary.
14           The evidence, which I credit, that
15   Mr. Duran reached out to Government officials before
16   yelling at Mr. Urtiaga, I think, again, places that
17   Urtiaga incident in a particular -- could go either
18   way -- it could be part of his ruse, or just another
19   additional pressure point.  But it doesn't, I think,
20   convert it into coercion.
21           Duran's conduct could just as easily have
22   been something to confuse everybody in the prison,
23   including his fellow SNM members.  I don't think that
24   he is any different than many of the people who plea
25   and cut a deal that's in their benefit.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

82

```
 1              So I don't think the evidence supports a
 2    finding of coercion that makes these statements --
 3    his actions involuntary.
 4              So I will deny Mr. Baca's motion to
 5    suppress that evidence, and allow that evidence to
 6    come into court, unless there is some other basis for
 7    including the evidence.  But I don't think this
 8    provides a basis to exclude it.
 9              Mr. Lowry, if you wish to argue your
10    selective recording motion.
11              MR. LOWRY:  Thank you, Your Honor.
12              THE COURT:  Mr. Lowry.
13              MR. LOWRY:  Your Honor, I really want to
14    take off -- or start my argument here with a comment
15    that the Court just made, and I think I got this
16    right.  You said:  We all agree that he, meaning Eric
17    Duran, is manipulative.  And that's the whole thrust
18    of the selective recording motion, is that he was
19    able to manipulate the recordings at will.  And,
20    essentially, as the testimony came in, basically
21    unsupervised.  I mean, he wasn't given any kind of
22    detailed instruction on how to use this, or what to
23    do, or how to record; just get us evidence to prove
24    this SNM case; you know, murders, we want to hear
25    about the murders.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          And there was no incentive for him to make
 2   complete recordings.  There was no incentive for him
 3   to capture exculpatory information.  And you heard
 4   Mr. Acee this morning testify that he couldn't recall
 5   an instance of exculpatory information being shared.
 6          But would I beg to differ with that.  I
 7   mean, if you look at the HAWK data -- and we went
 8   through this -- and the transcripts attached to the
 9   motion -- but when asked by Mr. Duran point-blank if
10   he wanted to hit Secretary Marcantel on the 24th of
11   October, Mr. Baca says, "No."  And this is the
12   hallmark of the problem we have with the selectivity
13   of these recordings.  As time goes on, apparently,
14   the emphasis of that changed.  And we don't have any
15   indication of how or why.  All we know is Eric Duran
16   was sent on a mission; he was sent on a mission by
17   the Department of Justice, and he knew what his
18   mission was.  And if you look at the text messages
19   there in Chris Garcia Exhibit D, you can see the
20   whole story about his, you know, willingness to
21   provide inculpatory evidence to the United States.
22          So, really, that's the driving factor in
23   the selectivity of these recordings.  We agree -- and
24   I think the parties agree that, for the most part,
25   that what you're seeing on the ELSUR device
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    recordings are just partial conversations.  They're

2    not like, necessarily, cellphone recordings, where

3    you get entirety of the call, the beginning, middle,

4    and the end.

5              And that's problematic.  Because in none of

6    the recordings we have of Mr. Baca, until deep into

7    November, do we see the emphasis change with regard

8    to Mr. Marcantel.  And it's the absence of that

9    evidence that hurts the defense.  Obviously,

10    something happened.  And we don't have that

11    documented.  And Eric Duran was in a position to make

12    that happen, and didn't.  And he had no incentive to.

13    And this comes back to what we all agreed on, that

14    he's manipulative, and he wanted to satisfy his

15    master.  And his master at the moment was the FBI,

16    because they held the keys to his kingdom.  They put

17    the food commissary on the books.  They gave Grace

18    Duran money.  And, you know, there was testimony

19    about the lump sum award after the takedown, and it

20    was a $6,000 award, where she signs the receipt using

21    the moniker "Ironman."

22              So there was no incentive for him to

23    provide the FBI with exculpatory information.  And

24    that really lies at the heart of this.  Ultimately,

25    it's a due process violation.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  You would agree with me that
 2    there is nothing in the case laws that you cited --
 3    and I think you had mostly cases from the Second
 4    Circuit and the Seventh Circuit --
 5          MR. LOWRY:  That's correct.
 6          THE COURT:  Again, going back to what Ms.
 7    Duncan and I -- it's a bit of a spectrum.  You would
 8    agree with me that you would not have a basis to
 9    exclude Mr. Duran's recordings because they are
10    incomplete?  For example, if -- since these are --
11    this is not like somebody going to a party and they
12    record everything as soon as they get out of the van,
13    go into the house, come out of the house, everything
14    is recorded, with people sitting in the van; it's not
15    one of those things.  It's more:  This is going to
16    take place over days and weeks, and maybe months.
17          It's unrealistic, and the law doesn't
18    require that, once the Government is recording, it
19    has to record everything.  You would agree with that?
20          MR. LOWRY:  And as an overarching
21    proposition, I don't disagree with that.
22          THE COURT:  All right.  So we're on a
23    spectrum.  There is going to be some things that are
24    left off and some things that are on the recordings.
25    That's just -- probably, Mr. Duran is not going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    talk to Mr. Baca about -- he's probably going to talk
2    to him about the ballgame, he's going to talk to him
3    about whatever they're kind of interested in as
4    buddies and things like that, they talk about.  And
5    he's going to switch it on when they start talking
6    about the things that Mr. Acee is interested in.
7              MR. LOWRY:  Or switch it on after he's, you
8    know, incited him to make inflammatory statements, if
9    you will.
10             THE COURT:  Well, but let's say that's the
11   situation.  And let's come back to my point.  But
12   let's take your point.  What's wrong with that?
13             MR. LOWRY:  Well, what's wrong with that is
14   you get into the realm of where -- let's say
15   Mr. Duran is sitting there:  I need a recording, Mr.
16   Baca hasn't said that he wants to hit Secretary
17   Marcantel.  I need to convince him that that's a good
18   idea.
19             What's wrong with that is there could be
20   hours, and in fact, there could be days -- and we've
21   seen gaps of days in these recordings where he could
22   have systematically planted the idea in Mr. Baca's
23   head that:  Wow, this could be a really good idea,
24   for whatever reason.  That's what's wrong with that.
25             So the genesis of the idea doesn't generate
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    with Mr. Baca at all.  It originates with a paid

2    government agent.  And that's a problem, Your Honor.

3    I mean, you could get into the idea of whether there

4    was predisposition -- and certainly, if we take the

5    indictment -- well, not the indictment -- but if you

6    look at the history that the United States alleges,

7    you can look at violence within the institution

8    against other inmates and take that as a given.

9            But there was no predisposition to reach

10   out and harm employees, officers of the Department of

11   Corrections.  I mean, that was a fairly novel event.

12   And I think, frankly, that's the novel event that

13   brings us all into the courtroom.  I don't think we'd

14   be here, but for that, is my personal opinion.  But

15   that doesn't matter.

16           But the point being is that if Mr. Duran is

17   the genesis of this idea, and Mr. Duran is a

18   manipulator -- and Mr. Duran has sold this idea; he's

19   already sold it to Mr. Acee in this August 5, 2015

20   meeting, where he says Mr. Baca is eager to make this

21   happen.  And when payday comes, and he has him on a

22   recorder that says:  What about hitting Secretary

23   Marcantel?  And he goes, "No."  Then, oh, wait a

24   second, my ship didn't dock, I've got to do something

25   to make it dock.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

88

```
 1              THE COURT:  But I've got no evidence of
 2     that.
 3              MR. LOWRY:  That's the whole point.
 4              THE COURT:  But, I mean, isn't that a
 5     difficulty?  To exclude evidence, that extraordinary
 6     remedy of excluding evidence, when I've got no
 7     evidence of this scenario in this case.  It's just a
 8     possibility or a theory or a hope or something like
 9     that.
10              MR. LOWRY:  No.  I think, if you look at
11     the cases -- and unfortunately, there are very few
12     cases.
13              THE COURT:  Let's talk about those cases.
14     And this what is struck me -- and you can tell me if
15     I'm reading them too narrowly -- those cases seem to
16     have some really junky, messy barnacles in them, in
17     the sense that the Government was manipulating tapes
18     and things like that.  It seemed to me that they were
19     fairly egregious circumstances.  Is that too
20     uncharitable to that small basket of cases that we
21     have?
22              MR. LOWRY:  I think -- on some of them I
23     think that's true.  Not all of them resulted in
24     suppression.  I'm not going to argue that.  But my
25     point, I think, if you look at the essential holdings
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

89

```
1    of those cases, what the courts have said is, Look,
2    when the recordings are internally consistent
3    throughout the time they made them, then we don't see
4    a problem with the reliability and authenticity of
5    these recordings.  They had the same message from the
6    beginning to the end.
7            And so the fact that any one particular
8    player was selective about what they chose to record,
9    if you look at the entire constellation of
10   recordings, from the beginning to end, they all bore
11   the same message.
12           And that's really the essence of our
13   motion, is, if you look at the constellation of the
14   recordings of Mr. Baca, from beginning or end, it
15   starts with:  I don't care about Mr. Marcantel.  And,
16   frankly, for the sake of this argument before this
17   tribunal at this moment, they end with recordings
18   that are not favorable to my client, that are very
19   centered on Mr. Marcantel.
20           So the problem here is they're not
21   internally consistent from beginning to end.  There
22   is a mixed message.  And that's the problem with the
23   selectivity of when Mr. Duran chooses to turn the on
24   button on, and when he chooses to turn it off.
25           THE COURT:  But doesn't he run a real risk
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   that once he's got Mr. Baca talking about killing

2   anybody, if he doesn't have that thing on, he runs a

3   real risk of losing valuable testimony.  And once he

4   records, he can't do anything about it.  He can't

5   erase it or eliminate it or anything like that.  So

6   what is the incentive -- just putting your feet into

7   Mr. Duran -- I know you don't want to put your feet

8   in his shoes.  But what's his incentive for not

9   clicking that button as soon as Mr. Baca starts

10  talking about killing people?  Why wouldn't he want

11  to click it on just in case Baca says something that

12  helps Mr. Acee?

13          MR. LOWRY:  I agree with Your Honor.  He

14  has every incentive to hit the on button when that

15  moment comes.  But maybe I'm not making myself clear.

16          In defending Mr. Baca, I'm more concerned

17  about when he doesn't click the button on because

18  he's having to convince Mr. Baca that this is a good

19  idea.  And there is no incentive for him to cut it on

20  there.  He's got to wait -- pardon me.

21          THE COURT:  What if he said:  Hey "Pup,"

22  have you thought about killing Marcantel?

23          MR. LOWRY:  He did.  He did it on October

24  24, at approximately, you know, 9:05.

25          THE COURT:  So don't you have everything

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    you need, though, then, for making the argument to
2    the jury?  You're going to turn to the jury and say:
3    This wasn't my client's idea, this was Eric Duran.
4    He talked him into it.
5              MR. LOWRY:  Oh, sure.  I can make that
6    argument to the jury, Your Honor.  But what I would
7    like to do on behalf of my client is to eliminate
8    these recordings from beginning to end, because they
9    don't fairly detail the entire story.  They detail a
10   very lopsided, one-sided version of the case.
11             THE COURT:  But what is -- if you can, if
12   you already have a tape that makes that point, what
13   is it that you lack?  What do you think that's not
14   out there?  Ten of those conversations?
15             MR. LOWRY:  Oh, who knows?  I mean, we have
16   entire days gone by.  I mean, that's why --
17             THE COURT:  Why isn't the explanation of
18   both Mr. Duran and others that you don't want to sit
19   there and dwell on it, or Mr. Baca will get
20   suspicious?  I mean, that seems plausible to me that
21   you don't want to sit around and just talk about
22   this.  Mr. Baca will go: "What's this dude doing?
23   Why does he want to talk about this all the time?
24   He's got to be wired."
25             MR. LOWRY:  Well, in the context of prison
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    life, I can imagine that, you know, that there is a
 2    lot of blowing off steam, and a lot of locker room
 3    talk, if you will, of just:  This is terrible, what's
 4    going on?  And there is all kinds of banter that's
 5    hypothetical, that's imaginary, you know, Jeez, what
 6    if this happened.
 7            But the point being is, if Mr. Duran is on
 8    his mission, in his own words, and days are going by
 9    with no recordings, and my suspicion is that he's
10    using that time wisely to bring Mr. Baca around to
11    his point of view.  He has a mission.  He has -- I
12    agree with Your Honor.  Is it an argument we can make
13    to the jury?  Sure.
14            But the purpose of this suppression motion
15    is it's fundamentally unfair for the Government to
16    use evidence that's so lopsided, when they could have
17    instructed him.  And, frankly, the testimony was that
18    was impractical.
19            But they could have wired up the entire
20    cell, and had every second of every day recorded.  So
21    we could have parsed out all of the puffing from the
22    realistic criminal activity.
23            THE COURT:  Could.  But is there anything
24    in the Constitution that requires them to wire the
25    cells?  They can do what they did here, and wire one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

93

1    person and put them in a cell next to --

2              MR. LOWRY:  Sure.  And certainly, the

3    Government has a prerogative to choose their

4    technique.  And that's not really the crux of my

5    argument.

6              My argument is that, by failing to educate

7    Mr. Duran, and get him to do a balanced recording

8    set, instead of just inculpatory, then the Court has

9    to step in and decide, in the words of the Seventh

10   Circuit, is the proceeding so fundamentally fair that

11   the selective recordings passed the sniff of the

12   court.

13             And what we're suggesting here is, if you

14   look at those cases, and again, if the recordings

15   aren't internally consistent from the beginning of

16   the recording set, until the end -- and here, they're

17   not -- you have problems.

18             THE COURT:  The primary internal

19   inconsistency is that Mr. Baca was not focusing on

20   Marcantel at the beginning?

21             MR. LOWRY:  No.  I think the recordings --

22   in fact, if you listen to the recordings and look at

23   the transcripts -- the recordings are pretty

24   detailed, the focus is Adam Vigil and Dwayne

25   Santistevan.  It had nothing to do with Marcantel.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Right, but when you keep saying
 2     internally inconsistent, is that --
 3              MR. LOWRY:  That's exactly, your Honor.
 4     That's really it.  You know, it's Vigil/Santistevan,
 5     Vigil/Santistevan, Vigil/Santistevan.  And here you
 6     have Mr. Duran going:  What about Marcantel:  What
 7     about Marcantel?  What about Marcantel?  And all of
 8     these Marcantel comments are precipitated and
 9     injected into the conversation by Mr. Duran, who we
10     all agree is a master manipulator.
11              So, I mean, that it's, Your Honor.  I mean,
12     it's a tough standard, I'm not going to deny it.  But
13     I think, when the calls are internally inconsistent,
14     and you know that the person operating the device is
15     on a mission, is on a mission to satisfy a singular
16     interest, which unfortunately, is not the fundamental
17     fairness of a courtroom proceeding.  But he's making
18     sure he gets his paycheck, his commissary money, his
19     $25,000 bonus, his lump sum award to get out of
20     prison, so he can go menace the west coast of the
21     United States.
22              I mean, the idea that he wanted to give
23     back to society, is a perverse one, when you look at
24     how he chose to give back.  I just don't think his
25     motivations are pure.  And they rarely are when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    you're talking about this kind of individual.  That's
 2    a given.  But he played the system.  And he played it
 3    to his benefit, and just because he enjoyed the
 4    accouterments, the devices and the toys that the
 5    United States shared with him, doesn't mean that the
 6    way he used them were fair.
 7             I think -- you know, we're talking about
 8    the recordings -- I think the real way to look at
 9    this, Your Honor, and the problem we see is -- I
10    mean, there are two tiers to this, if you will:  One
11    are the recordings themselves, with the ELSUR
12    devices; have less of an argument with that, with the
13    cellphone recordings, because the cellphone
14    recordings were captured by Verizon.  All of those
15    recordings were made from beginning to end.  I mean,
16    when you hit the dial button, he didn't have the
17    prerogative to stop the conversation in the middle.
18             But the problem is, when you get to things
19    like the text messages -- and you heard the testimony
20    is, we didn't even care about the photographs.  And
21    we know -- and Mr. Acee said it this morning that
22    there is pornography being sent to his phone.  And,
23    again, there are two photographs that we got off of
24    his phone.  There are a handful of selfies that he
25    sent to Chris Garcia's -- I would say wife -- but I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1   don't know that they were married -- but his
 2   significant other.  But none of this:  The
 3   pornography, the messages that he sent out via
 4   photographs, none of that is captured, none of that
 5   was on the phone when we picked it up.
 6             And, likewise, the texts.  I mean, one of
 7   the reasons I think the master text file is pretty
 8   critical is this is the extraction report.  And this
 9   is actually -- Your Honor, this is Government's
10   extraction report done by Nancy Stemo, and this is
11   the Chris Garcia Exhibit A.  And if you look at the
12   last text -- these are all of the texts that the
13   Government pulled off of that phone -- but if you
14   look at the master text file that was submitted as
15   Chris Garcia D, there are thousands of text messages.
16             And the real interesting part about this
17   is, when you start to parse it out is, of these
18   texts -- and I think this is some kind of error that
19   happened when they did the Cellebrite download, but
20   these next two texts that are on December 3, 2015,
21   "Call me ok; text me back."  I mean, these are
22   messages that were sent to Mr. Duran by two females.
23   But neither one of these texts appear on the
24   disclosures that the Government initially gave us, on
25   March 25, 2016, which causes me a great deal of
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

```
1    concern, because what it's saying is the Verizon
2    records, or whatever methodology the United States
3    used to capture those text messages, was less than
4    efficient.  Because here we have this one part of one
5    day, and only one of the three texts are here.
6              And just for the Court's edification, if
7    you look at the time stamps here, the very last text,
8    "Call me ok," this is actually on the master text
9    file.  And that's at 9:06:26 a.m.  But the earlier
10   texts, the ones that preceded that final text, the
11   "Text me back, they took my home boy."  I mean, this
12   is not really relevant.  And it's not in the record.
13   But these messages came from Chris Garcia's
14   significant other.  But they're not in the master
15   text file.  And you've got to scratch your head and
16   go, Why?
17             And it gets worse.  If you look at Anthony
18   Baca's Exhibit G, Your Honor -- and I went through
19   and highlighted one for the Court -- but this is the
20   Verizon record as they captured it.  And I don't want
21   to flip through all the pages.
22             But if you go through Exhibit G, you'll see
23   that Verizon documented approximately 17 text
24   messages between Mr. Duran and another government
25   informant in this case, Gerald Archuleta.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              But when you look at the master text
 2    file -- this is why I wanted it OCR'd for the
 3    Court -- you can look at his cellphone number -- I
 4    can read it for the record -- was 931-743-7592.  None
 5    of them are on the master text file, not a single
 6    one.
 7              And this comes back to the point I'm trying
 8    to make, is Eric Duran wasn't sufficiently
 9    supervised.  Eric Duran wasn't sufficiently educated.
10    Eric Duran wasn't sufficiently instructed on how to
11    use these devices.  I mean, here he picks a single
12    individual, and makes sure that he -- you know,
13    eliminates all this documentary evidence that would
14    benefit the parties.  I mean, either party.
15              But I mean, the fact of the matter that he
16    is working as a government agent and destroying
17    evidence that he knows is going to be used in the
18    criminal case is problematic.
19              And the view of the defense, Your Honor,
20    and the view of Mr. Baca is that his decision not to
21    turn on that recording device, when he is encouraging
22    Mr. Baca to commit crimes, is the functional
23    equivalent of deleting Gerald Archuleta's text
24    messages off of his phone so nobody can see what was
25    said.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              And while Mr. Acee testified -- and I have
 2    no reason, really, to doubt his sincerity, when he
 3    says he thinks it's designed to capture all that
 4    information, if you compare the Verizon text master
 5    sheet of what was done with that phone to the actual
 6    text messages that were received and delivered to the
 7    defense team by the Government, what we're going to
 8    see is none of the Gerald Archuleta texts are there.
 9              And it's just indicative of the systematic
10    problem with providing a manipulator, like Eric
11    Duran, with electronic devices, and not educating
12    him.
13              So, Your Honor, if you have any other
14    questions, I'm happy to answer them.  But I really
15    think that's it in a nutshell.
16              THE COURT:  All right.  Let me -- I may
17    have other questions, but let me hear from others.
18    Thank you, Mr. Lowry.
19              Anybody else want to argue in support of
20    Mr. Baca's motion?
21              All right.  Mr. Castellano, are you going
22    to argue in opposition?
23              MR. CASTELLANO:  Yes.  Thank you, Your
24    Honor.
25              THE COURT:  All right.  Mr. Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  I'd like to start with a
 2     point the Court made earlier.  And that's that
 3     context matters, in terms of how and when these
 4     recordings are made.  And, as the Court knows, now
 5     from multiple hearings, these are recordings made at
 6     a Level 6 facility in the situation where batteries
 7     were at issue, and a situation where the operation
 8     had to be kept secret.  Even Corrections officers
 9     didn't know.  It was a very small group of people who
10     knew what was going on that there was recording
11     taking place in the facility.
12              So I think that the context in which these
13     recordings are made is something that we have to
14     focus on.
15              And Mr. Lowry actually asked Agent Acee:
16     Why didn't you just wire the whole cell?  And he
17     explained why you couldn't wire the cell, including
18     the fact that tech agents even said it was going to
19     come to the point where it's impactful, when you have
20     people in the facility working in the cells, you
21     pretty much give up the ghost, in terms of what's
22     going on at the facility.  So they used the best
23     means that they had available at the time.  And they
24     used multiple means, including recording devices and
25     the cellphone.  So I think that's important when we
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

1    talk about what's required or what's permitted.

2         The other thing, I think Mr. Lowry's

3    argument would carry a lot more weight if we didn't

4    have other corroboration in this case.  That's why we

5    went through some of these exhibits.  And I mean, the

6    defense knows that Mr. Baca, at one point, said not

7    to kill Mr. Marcantel, because we gave that to him,

8    because that came from the recording.  That's how

9    they know that information exists.

10        If the Court will remember from the

11   summaries when we did the James hearing, there is a

12   point when Mr. Baca tells Mario Montoya to hit Mr.

13   Santistevan or Adam Vigil.  He's still talking about

14   killing corrections officials.  At that point, it's

15   not just Mr. Marcantel.

16        And in the next call, Mr. Baca decides it's

17   better to hit Santistevan and Vigil because they're

18   the ones telling lies to Marcantel.

19        So he does prioritize who he wants hit when

20   he makes these comments on the recordings.  So it's

21   not like he's saying:  Don't do it at all.  He's

22   saying:  I want these guys hit -- and this, once

23   again, would carry more weight if we didn't know what

24   we know also from the James hearing -- and that's

25   that, in March of 2015, months before these

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    recordings take place, letters went out indicating

2    that Marcantel was to be hit, based on orders given

3    by Mr. Baca.

4              So once again, Agent Acee indicated the

5    importance of corroboration, whenever you can get it.

6    So, if you have a statement that starts and ends in

7    mid-sentence, it's nice to get other information to

8    plug in the gaps that you have for this very reason.

9              And so we know, going back to March of

10   2015, that Mr. Baca wanted to kill Mr. Marcantel and

11   others.  So it's not surprising that initially he

12   prioritizes, and then later on moves on to

13   Mr. Marcantel.

14             THE COURT:  Well, what are you going to

15   tell the jury about this -- what's your story going

16   to be about Mr. Baca?  Are you going to say that he

17   wasn't sharing all the information with Mr. Duran

18   about his thoughts about Marcantel; that he was

19   playing a game with Duran; that he always intended to

20   kill Marcantel?  Is the story going to be that he

21   threw Marcantel in at some point into the hit list?

22   What's going to be the Government's version of

23   events?

24             MR. CASTELLANO:  I think it's going to be

25   right here, Your Honor.  And that's that he decides

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                          1-800-669-9492
                                                   e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   it's better to hit Santistevan and Vigil, because
 2   they're the ones telling lies to Marcantel.  So what
 3   he's done is he's prioritized who he wants murdered.
 4              THE COURT:  So is he backtracking?  You had
 5   earlier materials, that Duran didn't have the benefit
 6   of, indicating that he was calling a hit on
 7   Marcantel, and then he pulled it back.  Is that what
 8   happened?
 9              MR. CASTELLANO:  Well, I think my theory is
10   that he is prioritizing.
11              THE COURT:  What's that mean?
12              MR. CASTELLANO:  Well, he wants a number of
13   people killed.  Who I would like to see killed first,
14   or the most.  And the evidence, even from Mr. Duran,
15   was that Mr. Baca hated Santistevan.  And so clearly,
16   he was somebody he wanted killed.
17              And the other evidence that's been
18   presented at other hearings is that Adam Vigil was
19   also added to the list, because at one point he was
20   supposed to be an expert witness in the state case of
21   the Molina murder.  So there were reasons to hit
22   them.
23              The other thing from even the defense
24   exhibits, in terms of just corroboration alone is
25   Exhibit E.  And there is a conversation with Mr. Baca
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   and Mr. Duran about the fact that Marcantel would be
 2   a bigger target, and it would give them more
 3   recognition.  He doesn't say:  I don't know what
 4   you're talking about, or what do you mean, something
 5   you would expect would be a natural response, if he
 6   didn't already have this information.
 7           Then, on the next page of that exhibit,
 8   there is discussion of the willas or the letters that
 9   went out.  And that goes back to the March letters,
10   referring to the hits on Mr. Marcantel and
11   Mr. Santistevan.
12           So, for example, Mr. Baca doesn't say,
13   Wait, what are you talking about?  I've never heard
14   of those things.
15           So we have to put these things into
16   context.  And we do have that from the other
17   recordings in this case.  It's not as if Mr. Baca
18   denies any knowledge whatsoever of any letters going
19   out at any point.
20           And so that just goes to corroboration, and
21   the fact that there is reliability in the recordings.
22   And as the Court noted --
23           THE COURT:  But those words are coming out
24   of Mr. Duran's mouth.
25           MR. CASTELLANO:  That's correct.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    dispute that.  Those are coming from Mr. Duran's

2    mouth.  And once again, Mr. Baca does not have a

3    response indicating he doesn't know what he's talking

4    about in either the first statement, among others,

5    and the second one, when there is a discussion about

6    the willas or the letters going out.

7            So I agree, Mr. Duran is putting out the

8    subject matter to Mr. Baca.  But Mr. Baca is

9    responding in kind.  That's something that gives us

10   some confidence in the fact that, even if you start

11   and finish the conversation mid-sentence, we've

12   captured reliable evidence in this case.

13           And the same thing happens in the -- this

14   is Baca's F -- so this is a phone conversation

15   between Mr. Duran and Agent Acee.  So this is --

16   basically, what's captured here is a candid

17   conversation between the two.  So even something that

18   isn't intended to be recorded on the devices is

19   discussion about Mr. Baca wanting few people to know

20   about the murder conspiracy.  Mario Montoya is one

21   who is eventually going to pick up the gun from

22   Mr. Garcia.

23           So, like I said, even in candid

24   conversations between the agent and the informant, we

25   have information that's corroborated.  So it's not as

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                              1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                    e-mail: info@litsupport.com

1    if Mr. Duran is just saying things to please Agent

2    Acee, and they can't be corroborated anywhere else.

3    They, in fact, are by other means.

4             So I think there is, therefore, some

5    reliability, and reasons to believe that he truly

6    tried to capture what was being said.  Because, as I

7    stated earlier, if we took one statement in a vacuum,

8    it would be exculpatory as to Mr. Baca on only one

9    statement regarding Mr. Marcantel.  But that's

10   captured.

11            So the Court asked the question earlier:

12   Wasn't Mr. Duran running the risk, then, that he

13   turns this thing on and off at the same time; it

14   would take a great deal of skill to exclude all

15   exculpatory information and capture only inculpatory

16   information.  That would be a tall order, including

17   the fact that there is a cellphone backing up a lot

18   of these recordings.  That's a tall order.  So I

19   don't think there is anything here that would offend

20   our notions of due process, in light of what we know.

21            Now, the recordings themselves, or the data

22   from the recordings -- actually, no one can explain

23   to the Court what happened there.  Mr. Lowry

24   indicated that a conversation later in time showed up

25   on -- it was either two or three -- that one showed

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   up on the summary.  But, if you look at them, they

2   are only one second apart:  9:06:25 versus 9:06:26 on

3   the same date.  So there is just no explanation why

4   one would show up on the summary and the other

5   wouldn't.  That doesn't have anything to do with Eric

6   Duran.  That's some sort of technical glitch.  And

7   the bottom line is that the defense has the

8   information; it's been turned over in the summaries

9   that they received of the text messages.

10          The other thing that couldn't be explained

11  in court, because nobody had that information is why

12  neither chart, the defense's or the prosecution's

13  indicated seven text messages above, and maybe four

14  test messages.  So there is just a problem with the

15  technology here that no one can explain, and that's

16  one of the problems we're facing.

17          The other issue here regarding Baca's

18  Exhibit G, the same thing, we don't know why certain

19  information may or may not have shown up in one

20  summary versus the other summary.  The defense's

21  explanation is that Eric Duran deleted certain

22  information.  But he had no reason to know that if he

23  deleted these things, it wouldn't be captured.  Agent

24  Acee told him:  Everything you do is going to be

25  captured here.  So I don't think that's an issue with



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Eric Duran.  I think it's another issue with the

2    technology, which is probably a more likely

3    explanation than Eric Duran deleting a certain subset

4    of a mass -- I think over 830 pages of text messages

5    that the Court has now as an exhibit.  I think these

6    are technological issues.  I don't think they're

7    issues related to Eric Duran.  And there is nothing

8    indicating that it was Mr. Duran.

9           I think a couple of these entries show

10   "N/A," on them when I was looking at them yesterday.

11   I'll see if I can find one example for the Court.  I

12   can't find one, but if you look closely at the

13   exhibit there are entries here that just say "N/A."

14   And once again, we don't know why that appears on the

15   summaries.  So I think, once again, these are

16   technical and not issues related to Eric Duran.

17   Because he would have to know how to delete these

18   text messages in a way that they weren't picked up on

19   the wire.  And we just don't know why could happen.

20          But I think based on the evidence here,

21   there is clearly not a due process violation.  In

22   addition to that, the defense argument is lessened by

23   the fact that we don't have corroboration.  So we

24   don't have issues where we have to speculate and

25   wonder what happened in-between the conversations or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   the context of the conversations, because we have
 2   that context from other means, numerous other means.
 3            I don't have anything else unless the Court
 4   has questions, Your Honor.
 5            THE COURT:  Seemed like there was one thing
 6   I was going to ask you but I can't remember what it
 7   was.  It was something that Mr. -- I think of it,
 8   I'll ask you.  Thank you, Mr. Castellano.
 9            Mr. Lowry, I'll give you the last word on
10   this motion.
11            MR. LOWRY:  Thank you, Your Honor.
12            THE COURT:  Mr. Lowry.
13            MR. LOWRY:  Your Honor, I don't have a
14   problem with Mr. Castellano referring to the
15   materials in the James hearing.  But I would ask the
16   Court's indulgence if I could augment with -- Mr.
17   Castellano pointed out to one of the bullet points,
18   which was recording 0730.020.  And the bullet
19   point -- I think, if you look at the actual
20   transcript, you really get the gestalt of my concern.
21   And that is -- the Court pointed this out -- you're
22   looking at these transcripts where it's Mr. Duran
23   talking about Marcantel, Marcantel.  And the United
24   States wants to take this affirmative -- well, there
25   is just these one-word comments, yeah, yeah.  They're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    like normal conversational ticks that people have so
2    the person you're talking to knows that you're still
3    there and listening.  It's not necessarily an
4    affirmative agreement with what you're saying.
5           But my point is, if you look at recording
6    number 20, once again, you see Mr. Duran trying to
7    implant the idea that killing Secretary Marcantel is
8    just a wildly fantastic idea.  And what you see in
9    the context of that conversation -- it's even
10   captured in the bullet point, but it's in more detail
11   in the transcript -- is Mr. Baca is explaining why
12   Marcantel is not worthy of any consideration for
13   violence, because he's been purposefully fed
14   misinformation by subordinates that work for him.
15   And the point being is that you actually see Mr. Baca
16   making the case why Mr. Marcantel should not be a
17   target.  And he makes it in real-time, and it's
18   recorded, and he explains to Mr. Duran why the facts
19   of the prison life and prison administration don't
20   warrant that kind of retaliatory action towards the
21   Secretary of Corrections.
22          So I'd like to augment, if my colleague
23   will agree, and give you a copy of that transcript,
24   because I think it's really indicative of the problem
25   we're facing -- and the fact that I think the Court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    started to recognize that these -- the Marcantel, the
 2    Marcantel, the Marcantel, is coming from the
 3    informant in this case.
 4             Now, the Government points back to letters
 5    that were written by yet two other Government
 6    informants -- not at the time -- but "Baby Rob,"
 7    Robert Martinez, and "Shadow," Roy Martinez.  And the
 8    thing is that they wrote those letters after the
 9    Molina murder.  The Government is going to argue
10    that, Oh, all of those spring from a conversation in
11    2013.  I realize that.  But I don't think they're
12    corroborative.  Because if you actually go back and
13    look at the conversations that Mr. Duran recorded
14    with those two gentlemen, they acknowledge that Mr.
15    Baca had no idea what they were doing.  And that
16    they're writing these for a dual purpose.  They just
17    want to get sent out of state.  They're tired of
18    being housed in the Department of Corrections of New
19    Mexico, much like Mr. Duran was tired of being housed
20    in the Department of Corrections in the State of New
21    Mexico, because of the onerous -- and Duran describes
22    them in his civil suit as "horrendous conditions."
23    And they just wanted to be shipped out of state.  For
24    them, it's a different motivation altogether.  It's
25    just like, Oh, wow, let's float these kites out,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    they'll get intercepted, and we'll be shipped out of

 2    state.  And Mr. Baca had no idea that they were doing

 3    this.

 4              So I can understand why the Government is

 5    trying to say, Oh, that's fantastic evidence of

 6    corroboration.  But if we really wanted to drill down

 7    on that, I would argue to the contrary that it's not.

 8    And I think that the best evidence of that is call

 9    number 20, which was referenced in the James hearing.

10              So I'd like to supplement the exhibits with

11    that, if it's okay with the United States.

12              THE COURT:  Any objection, Mr. Castellano?

13              MR. CASTELLANO:  I have a few points on

14    that.  One that is Agent Acee said that oftentimes in

15    reversals people do suggest to others that they

16    commit crimes.  And they do, in fact, commit those

17    crimes.  That is not violation of any sort.

18              And the other thing is that I don't object

19    because Mr. Lowry is actually asking the Court to

20    consider Eric Duran's recordings as reliable for

21    purposes of them as argument.  So I think that cuts

22    against him.

23              And I certainly have no objection to the

24    Court looking at that evidence.

25              THE COURT:  How do you want to make sure,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

113

```
 1   so that the record of this is clean?  Do you want to
 2   provide excerpts that you want me to consider, and
 3   we'll mark those as exhibits?
 4            MR. LOWRY:  Yes, Your Honor.  And I have a
 5   copy of that today.  I can share that with the
 6   Government and make sure that it suits their -- that
 7   it's authentic in their eyes.  And I can label it and
 8   get it in the record, Your Honor.
 9            THE COURT:  Okay.
10            MR. LOWRY:  But Mr. Castellano's point
11   about relying on the Duran recordings, Your Honor, I
12   think, you know, if you look at the rules of evidence
13   for authenticity of recordings -- yeah, I'm not --
14   you know, the United States, you're well aware of the
15   litigation we went through to get the recording
16   devices, and we all heard Mr. Williamson testify
17   about how the ELSUR devices work.
18            On behalf of Mr. Baca, I'm satisfied that
19   the recordings, as they were made, the ones that we
20   have, they haven't been altered with.  I don't think
21   there is any rational argument that they've been
22   doctored or tampered with.  So I will agree with the
23   United States that the argument here isn't that what
24   we have that is recorded, those recordings haven't
25   been manipulated or doctored.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          But I think the Court understands my

2     position is a much broader one.  It's how those

3     recordings were made and what's missing in the larger

4     holistic picture of what was available to be

5     recorded, and what was chosen to be recorded.

6          But I would say -- and you heard the

7     Government argue that the mistakes that we're seeing

8     in these technical glitches were out of Mr. Duran's

9     control.  But that does go into the authenticity

10    requirements under the rules of evidence.  And one of

11    the factors the Court should consider is, you know,

12    had the evidence been properly preserved.  Mr.

13    Castellano suggested that, Oh, well, look, they

14    really can't stand to complain, if you look at Chris

15    Garcia Exhibit A, they have these three texts now, so

16    they really can't complain about them not being on

17    the master text file, because we have them in Exhibit

18    A.

19         But that really misses the larger point of

20    Chris Garcia Exhibit A.  This is the tip of the

21    iceberg.  And, unfortunately, because Mr. Duran's

22    phone has been, you know -- I mean it looks, it

23    appears as though it's been wiped, and because we

24    only have these bits of recordings.  Sure, we have

25    these, but I think what it does is says there is a

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1   larger problem, and it renders the entire master text
2   list, which was tendered to the Court as Garcia
3   Exhibit D, suspect; that we really have no way to
4   know that that's a complete and accurate set of text
5   messages.  And that's the reason I bring up the
6   Gerald Archuleta texts.
7             And I hear what Mr. Castellano is saying.
8   And again, I don't know what "N/A" means on the
9   Verizon text file, which is Anthony Baca G, but what
10  I would suspect to see on the master text file is
11  that, even if Mr. Duran attempted to send a text --
12  and we know that he must have, because they're on the
13  Verizon document, that they're not on the master text
14  file.
15            So that's showing that there is really a
16  major problem with the technology, and that we have
17  every reason to believe that, under the standard for
18  the rules of evidence, that these things haven't been
19  properly preserved for everyone to see.
20            So, Your Honor, unless the Court has
21  questions, I really don't have anything else that I
22  could add to the argument right now.
23            THE COURT:  All right.  Thank you, Mr.
24  Lowry.
25            Well, I believe that, again, you have to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    look at the total circumstances of the undercover

2    operation to make a determination of whether notions

3    of due process are violated by the introduction of

4    these recordings.

5              At the same time, I have to be careful, as

6    a federal judge, not to tell the Government how to

7    conduct its investigations better.  We learn from

8    excessive force cases that better operations doesn't

9    mean that they violate the Fourth Amendment.  And I

10   think that's probably equally true here in the due

11   process realm of the Fifth Amendment as well; that

12   just because the Government could have done other

13   things and maybe done their job better, that that

14   necessarily means that it violates the Constitution.

15             As Mr. Lowry admitted, the notions of due

16   process that I have to work with here are quite high.

17   And I tend to think that most of the criticisms of

18   what the Government has done and how they've gone

19   about their task fall into the realm, not of a

20   violation of the notions of due process that we bring

21   to bear in this type of motion, but are mostly

22   cross-examination materials.

23             We're not dealing with a case in which

24   there is any destruction of evidence that I see.  No

25   evidence that there has been only a capturing of

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    exculpatory information -- of inculpatory information

2    on exculpatory issues -- evidence.  There may be some

3    technology issues, and the defendants are welcome to

4    explore that.  But I don't think those rise to the

5    level of suppressing the evidence from the case.

6              It seems to me that the evidence -- and I

7    make this finding by a preponderance of the

8    evidence -- that Mr. Duran was trying to capture

9    everything that Mr. Baca was saying on these topics

10   that are relevant to this case.  He wasn't trying to

11   capture everything that Mr. Baca was saying, but he

12   was trying to capture these, and wasn't trying to

13   sort through them.  I don't see any evidence to the

14   contrary.

15             I think, to require the Government to start

16   wiring inside the cells, I do think that my

17   experience with the SNM members is that they're

18   smart, and they would have detected what was going on

19   quickly.  And so the fact that there are multiple

20   ways to get these recordings doesn't make this way

21   unconstitutional.

22             I do think that we have to look at the

23   context of the recordings.  I agree, and I think

24   everybody agrees that context matters greatly here.

25   And given the level in which the recordings were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    made, Level 6, the people involved, and what we know
2    about the members involved, I think those indicate
3    that battery life, hiding these, shakedowns; these
4    were all important to the recording.  So it's not
5    something that can be done just like it can be
6    outside of a prison context.
7            I've carefully examined, over the days in
8    which we've conducted this hearing, that the
9    Government's conduct in managing the undercover
10   operation, this taping and recording of information
11   and investigation, I don't find it to be outrageous.
12   I don't believe it runs afoul of the constitutional
13   guarantees of due process.
14           Credibility determinations regarding
15   informants belong to the jury and not to the Court.
16   And the Court is reluctant to take those away in the
17   guise of suppressing the information.
18           In assessing the supposed outrageousness of
19   the Government conduct, again, I don't find evidence
20   that there was selective recording here.  I think
21   it's more of a theory.  There is no evidence that
22   tapes were altered or doctored.  No evidence of any
23   sort of monkey business.  These seem to be authentic,
24   and the product -- they've largely been produced in
25   the same form that they were recorded.  It seems
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

119

```
1    relevant.  I don't see any bad faith.  And I think if
2    the defendants want to suggest exculpatory evidence
3    was not included, they're welcome to do that.  But I
4    don't think the fact that maybe the tapes don't
5    include those is a basis for excluding the evidence.
6            So after carefully considering the
7    circumstances here, which I think is very
8    fact-intensive inquiry, as well as the relatively few
9    cases that have looked at this issue and excluded
10   some recordings, I don't find this case to be on the
11   spectrum at the end of the spectrum that permits or
12   allows exclusion.  So I will deny the motion to
13   suppress on the basis of selective recording.
14           All right.  Let me get my materials
15   organized and we'll take up the next motion.  I got
16   my materials a little bit scattered around.
17   Ms. Wild, are you on the phone?  I can't find my
18   little docket sheet.  I think she shared it with
19   y'all.  Do y'all know what the next number that we're
20   taking up is?
21           THE CLERK:  Can you hear me?
22           THE COURT:  I couldn't hear for you a
23   second.
24           THE CLERK:  The next thing that's up is
25   1525.  It's the Government's notice of the 609.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.  Is that number 5 in
 2   mine?
 3              THE CLERK:  It's number 8 in the tabbed
 4   stack.
 5              THE COURT:  All right.  Does the Government
 6   wish to argue on this?  Ms. Armijo?
 7              MS. ARMIJO:  Certainly, Your Honor.
 8              We just filed a 609 notice in which we
 9   requested, if the defendants were to testify, they
10   would be impeached with anything that falls under
11   609.
12              I have gone through the pretrial reports,
13   and also I have pen packs, which have all been
14   disclosed, obviously, as to each these defendants.  I
15   guess the issue will be, if they want them sanitized.
16   And I have not heard from anyone if, in fact, they
17   do.
18              The other issue would be some of these
19   priors may be bad acts which would come in even if
20   they didn't want them sanitized.  So I guess I'm
21   willing to hear from the defense.  But I can also
22   meet independently with the attorneys from each of
23   them, maybe over lunch, to see if we agree on which
24   ones fall within that, and if we're going to use them
25   for 609, and if, in fact, they want them sanitized or
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   not.  So that's where we are with it.
 2           And I only did that as to the five that are
 3   going to trial.  I have that information readily
 4   available for all 14, but I did focus, since we're
 5   just focusing in on the five for trial.
 6           THE COURT:  Let me ask the defendants:  Do
 7   y'all want to meet with Ms. Armijo during the lunch
 8   hour, and see if there are any issues I need to rule
 9   on, or see if y'all can reach some agreement as to
10   what will come in and what will not come in, if your
11   defendant testifies?
12           I take it this has nothing to do with your
13   case-in-chief.  This is strictly impeachment
14   information.
15           MS. ARMIJO:  This is strictly for 609 --
16   like I see Ms. Sirignano standing up -- I do believe,
17   like Mr. Garcia has different issues, because he is
18   charged with being a felon in possession.  So we can
19   certainly discuss with her.
20           THE COURT:  Can we just Old Chief that one?
21           MS. ARMIJO:  Yes.  I have had one --
22           THE COURT:  I'm sorry, I talked over you.
23           MS. ARMIJO:  I have had one trial where
24   they did not want to Old Chief it, and they wanted it
25   out.  So I guess I would leave it to the defense.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  So you've got a choice on

2     yours, since you've got the felon in possession, we

3     can Old Chief it, so we can have a stipulation and it

4     doesn't come in.  If Mr. Garcia takes the stand, then

5     go to 609, you can meet with the Government and try

6     to work that out.  If you can't work it out, we'll

7     pick it up after lunch.  What do you think?

8          MS. SIRIGNANO:  Judge, in response to your

9     question:  First point is, that's what we did in

10    15-CR-4275, is the Government provided a proper 609

11    notice, with Mr. Garcia's prior convictions, that

12    they planned on using.  And then we did make an

13    agreement that we would just agree to the facts of

14    the conviction instead of what it was.  I'm sure we

15    could do that today.

16          But just for my record, Judge, this

17    Document 1525 is not properly noticed up.  There is

18    no lists of prior convictions, and -- for the five

19    defendants that are going to trial.  And so my first

20    objection would be that it's insufficient.  And if

21    the Government would like to remedy their 609 notice

22    by filing it sealed, with all of the convictions that

23    they intend to use, of the defendants going to trial,

24    that would be the proper way to go forward here

25    first.  And then we could talk to them about --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    during lunch -- what convictions they have, if that's
 2    what the Court would like us to do.
 3              I just want to make sure we have a clean
 4    record going forward, Your Honor.  Thank you.
 5              MR. VILLA:  Your Honor, if I may.
 6              THE COURT:  Let me look here.
 7              MR. VILLA:  Sure.
 8              THE COURT:  Ms. Sirignano, as far as
 9    this -- what are you saying the Government needs to
10    do to comply with 609?  I mean --
11              MS. SIRIGNANO:  Your Honor, as long as I've
12    been doing this, and as far as I know, with 609, the
13    Government, if they intend to notice -- or if they
14    intend to use criminal convictions, I believe they
15    should have a sealed notice of what it is they plan
16    on bringing in as evidence.
17              THE COURT:  Where does that requirement
18    come from?
19              MS. SIRIGNANO:  I'll look at 609.  If I'm
20    wrong, Judge, I'll let you know.  But --
21              THE COURT:  I don't see it.  I know that
22    oftentimes we're dealing with a discrete defendant
23    and maybe a discrete number of convictions.  Maybe
24    it's in here.
25              MS. SIRIGNANO:  Your Honor, may I have a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   moment please to confer with colleagues?
 2            THE COURT:  Maybe it's in 609(b) -- I guess
 3   that's for convictions more than 10 years.  Are some
 4   of the convictions you're going to use, Ms. Armijo,
 5   more than 10?
 6            MS. ARMIJO:  Yes, they are.  But they would
 7   still fall under the first part, because, for
 8   instance, I believe some of these defendants have
 9   convictions that are over 10 years old, but they are
10   serving life sentences, and they're still serving
11   their sentence, or it brings it into the 10-year time
12   period.
13            THE COURT:  So I guess what Ms. Sirignano
14   is invoking then is 609(b)(2), that the proponent
15   gives an adverse party reasonable written notice of
16   the intent to use evidence after 10 years.  So it
17   probably is not -- there is probably no notice
18   requirement for the convictions within 10 years.  But
19   there is one for beyond 10 years.
20            MS. ARMIJO:  I think that, when you look at
21   the 10 years, it still would require -- if it's
22   beyond 10 years that they serve custody.  I think it
23   still falls within the first one.  But we'd be more
24   than happy, now that we know for the five that are
25   going to trial, to file a supplemental notice that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

 1  lists them out.  And I can certainly meet with them.
 2  We can even get that done possibly today.  But I was
 3  just trying to see if we could meet -- if they wanted
 4  to see what it was.  But if that solves that issue,
 5  certainly we'll do it.
 6          And I want to put on the record this is
 7  just for impeachment purposes.  Many of these
 8  incidents would still be coming in as bad acts or
 9  racketeering activity.  That's separate.  So I'm just
10  now dealing with the 609 issue itself.
11          THE COURT:  Well, let's be careful with our
12  record.  Because I went very carefully with Mr.
13  Castellano -- we went through all, we made a list of
14  all the bad acts, so that the defendants had an
15  opportunity to go through those.  And then, for
16  almost every one, on the ones that are going to trial
17  on January 29, my recollection -- I don't want to
18  mess up our record, but we went very carefully
19  through that the Government was not going to try to
20  get any of those acts in as 404(b) evidence.
21          MS. ARMIJO:  Correct.  And so -- but I was
22  just trying to say that what we're dealing with now
23  is just 609.  But --
24          THE COURT:  609 is only being admitted for
25  impeachment purposes if they take the stand for

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                   1-800-669-9492
                                                           e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    truthfulness.  In fact, it can't be used as 404(b)

2    for -- well, it can't be used as 404(b) evidence.

3             MS. ARMIJO:  Correct.

4             THE COURT:  In fact, I think they're

5    entitled to a limiting instruction that it could only

6    be used to determine their credibility.

7             MS. ARMIJO:  Correct, Your Honor.  And I

8    just want to make clear that there may be some of

9    these that the defense may want sanitized, that we --

10   and I know, specifically, like for instance, for

11   Mr. Garcia, there are some that Mr. Castellano went

12   over saying that we would be using.

13            But that's why -- what I will file -- and

14   if they want to see specifically what we're looking

15   at, they can certainly reach out to me and I can show

16   them -- but I will file an amended notice with the

17   individual ones.

18            THE COURT:  All right.  So the Government

19   is going to file a notice that will have -- a written

20   notice that will provide all the convictions that

21   they are going to use that are after 10 years.  And

22   that 10 years runs from the release from confinement.

23   But then that doesn't preclude the parties from

24   sitting down and seeing if I can address any issues

25   that might be coming in about those.

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                         FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              Is that everybody's understanding and
 2    agreement?
 3              MR. VILLA:  Your Honor, if I could have a
 4    minute?
 5              THE COURT:  Okay.  Take your time.
 6              MS. ARMIJO:  Your Honor, I believe that the
 7    defense is requesting that maybe I not file that, if
 8    they withdraw their objection to what I filed before.
 9    Because the defense did not file for our witnesses, a
10    609, and I believe that it's an issue that Mr. Villa
11    is proposing.
12              MR. VILLA:  So, Your Honor, I was going to
13    file -- I was tasked with filing a joint one for the
14    Trial 1 defendants, just on the older than 10 years.
15    And rather than both sides burying ourselves in
16    paperwork --
17              THE COURT:  Let me make sure I understood
18    what -- you were going to file one that excluded any
19    convictions beyond 10 years?
20              MR. VILLA:  No, no.  For the cooperating
21    witnesses who are testifying, that was putting the
22    Government on notice that we would use some that were
23    older than 10 years.
24              THE COURT:  All right.
25              MR. VILLA:  So like I say, I'm trying to
```

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                              1-800-669-9492



```
1    strike a deal, I guess, with the Government that they

2    don't have to file one if we don't have to file one.

3    And if there are issues with specific exhibits or

4    redactions, things like that, we can try to work

5    those out ahead of time.  But rather than bury

6    ourselves in paperwork for the cooperating witnesses

7    and the five defendants --

8              THE COURT:  Are you comfortable with this,

9    Ms. Sirignano?  Mr. Villa is suggesting that since

10   the defendants were about to file a motion saying

11   they're going to use convictions that are more than

12   10 years old against all the cooperators, rather than

13   y'all having to list out all the convictions, and the

14   Government having to list out all their convictions,

15   everybody just agree -- everybody has got notice --

16   nobody will have to file any notice, and then

17   everybody will sit down and try to sanitize it.  And

18   if you can't agree on it, then you'll bring it to me?

19             MS. SIRIGNANO:  That works for me, Your

20   Honor.

21             THE COURT:  All right.  Does that work for

22   you, Ms. Armijo?

23             MS. ARMIJO:  Yes, that's fine.

24             THE COURT:  All right.  So it works for the

25   Government.  Is there anybody that doesn't work for?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    So you're giving up your notice requirements on both
 2    sides for a 609(b)(2) notice of an adverse party.  Is
 3    there anybody that's not comfortable with that?
 4    Everybody agrees with that.  So that requirement is
 5    then waived.  I'll let y'all work on that for a while
 6    and see if you can sanitize the 609.  And if you
 7    can't, then I'm available to give a ruling on that.
 8            All right.  If I understand -- oh, there is
 9    my little chart.  If I understand the next issue that
10    we're taking up is number 9, which is the opposed
11    motion in limine to exclude co-defendant statements,
12    which is resuming the James-related hearings.  So I
13    need to be educated on where we are on the James
14    hearings, and what else needs to be done on that
15    issue.
16            Mr. Castellano, do you want try that?
17            MR. CASTELLANO:  I can try.  I think the
18    Court is going to educate us on its ruling.  I'm not
19    sure where that puts us right now with James and the
20    motion.  What number is the motion, Your Honor?
21            THE COURT:  Well, I thought that the way we
22    left the James hearing is that I was satisfied that
23    the Government had established all the elements of
24    the James hearing for the materials that I saw.  I
25    invited the defendants, if they felt like there was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   something I needed in particular to look at, to do

 2   so.  We took a few of those.  I made some

 3   particularized rulings on some evidentiary matters.

 4   But I am putting an opinion together to indicate that

 5   I think that the Government has met all the

 6   standards, the materials that are in the boxes of

 7   James materials that we went through.  I'm satisfied

 8   with it.  But I also advised the defendants, if they

 9   felt I overlooked something on some particular

10   statements, I would reconsider those.  And we took a

11   few of those, I cut back a few of those on the

12   record.  But I think, unless somebody has anything

13   they want me to take a special look at, I tried to

14   stare at these statements as much as I could.  And it

15   seemed to me that they were coming in.  So I'm

16   available, if the defendants, particularly the five

17   that are going to trial, if you've got something

18   special you want me to say that shouldn't be coming

19   in because of -- it's not in furtherance or something

20   that you want me to take a special look at, we'll

21   take a look at it, and I'll give you a ruling on it.

22   I think we did two or three of those.  But I haven't

23   heard any more.

24            So anything else on the James hearings, Mr.

25   Benjamin?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BENJAMIN:  Your Honor -- and I just
2    approached the Government, and I was understanding
3    they were going to provide us --
4              THE COURT:  Say that again.
5              MR. BENJAMIN:  This just deals mainly with
6    Group 2's James hearings, Your Honor.  I understand
7    there was an agreement.
8              THE COURT:  There was.
9              MR. BENJAMIN:  So the Court is not
10   inquiring into that?
11             THE COURT:  I wasn't.  Y'all have a special
12   deal, in the sense that you're going to get a written
13   document, if I understand it correctly, that sets out
14   the statements.  So what we did orally here in court,
15   with witnesses, subject to cross-examination, you're
16   not going to get that first.  You're going to first
17   get the written statements.  And I think, after that,
18   it's fluid.  We may have a James hearing, and maybe
19   everybody is comfortable with it.  But you're going
20   to get something that the first group didn't get, but
21   the first group immediately got a witness.  Is that
22   your understanding?
23             MR. BENJAMIN:  I understand.  That is, Your
24   Honor.  The Court was getting a little broader.
25             THE COURT:  That's true.  I think we better
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   focus right on the moment to take care of the five
 2   that are going to trial on the 29th.
 3           So why don't we do this.  Let's go ahead
 4   and take our lunch break.
 5           Did you want to say something, Ms. Jacks?
 6           MS. JACKS:  I did, Your Honor.  I just
 7   wanted to make sure I alerted the Court, we've been
 8   work jointly on a filing which we were all reviewing
 9   and finalizing yesterday.  I filed it yesterday
10   evening.  And it does, in writing, spell out our
11   arguments as to very specific issues that the James
12   hearing brought up.  And I think it's Document 1616.
13           THE COURT:  Yeah, I was given it today.  I
14   haven't had a chance to look at it.
15           MS. JACKS:  It might make sense for us to
16   talk to you about that.  And I think it answers -- or
17   at least has our view on some of the questions you
18   raised this morning, but after you've had a chance to
19   review it.
20           THE COURT:  Yeah.  Let me see what I did
21   with it.  I brought it to the bench, but -- what's
22   the number again, Ms. Jacks?
23           MS. JACKS:  I think it's 1616.  That's
24   correct.
25           THE COURT:  Well, I'll find it.  And --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   here it is.  I think I put it in the back.  No -- did
 2   you say 1616?  All right.  So I do have it.  It was
 3   given to me this morning.  It was kind of
 4   mid-morning, so I haven't had a chance to look at it.
 5   But you think this is the time to take this up as we
 6   bring the James materials to a conclusion?
 7            MS. JACKS:  I'm happy to, and ready to.
 8            THE COURT:  Do you think this is the best
 9   time?  I was putting it at the back, but if this is
10   part of the James hearing, I'm glad to take this up
11   now.
12            MS. JACKS:  I'll do it in whatever order
13   the Court wants.  I'm not sure if there is additional
14   statements the Government wants to offer.  I think,
15   at least our filing probably covers the issues with
16   any statements.
17            THE COURT:  All right.  Well, let me take a
18   look at this during the lunch hour.  And we'll come
19   back and then we'll decide whether we're going to put
20   this at the bottom of the hearing or we're going to
21   take it up now in conjunction with the James hearing.
22            All right.  We'll see you in about an hour.
23            (The lunch recess was held.)
24            THE COURT:  All right.  It looks like
25   everybody has counsel.  Look around, make sure I'm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

134

```
1   not overlooking somebody.  It looks like everybody
2   has got counsel.
3           All right.  Let me do a few things for the
4   record.  First of all, in the hearing we just
5   completed on the two motions that Mr. Baca filed, in
6   sort of getting things organized, it doesn't appear
7   there was an Anthony Baca Exhibit C, so we just
8   skipped one.  So I'm going to put a blank page in the
9   exhibit numbers that it was skipped in error.  But
10  for the record, there is no Exhibit AB, Anthony Baca,
11  C.  But that is --
12          MR. LOWRY:  That was my understanding.
13          THE COURT:  Does that comport with yours as
14  well?
15          MR. LOWRY:  Yes, Judge.
16          THE COURT:  A little bit for planning
17  purposes, I understand Mario Montoya is not going to
18  be here till tomorrow, so everybody will be here
19  through tomorrow.  And I'm going to delay probably
20  until the end of the hearing going over all the
21  mechanics that I have worked out with the marshals.
22          Is Mick going to be here tomorrow?
23          THE MARSHAL:  No.
24          THE COURT:  Then I'll just put those on the
25  record and we'll see if there is any differences
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

135

```
1    between what I'm stating and Ms. Wild and I
2    understand, and what the marshals understand.  So
3    we'll go through that before we leave here tomorrow.
4    But I'm going to push that to the end.  If we run out
5    of time today, for some reason, we will advance it.
6    But, otherwise we'll plan on that being the thing we
7    do when we leave here.
8            I did have a chance to look at the Document
9    1616.  I read it a little faster than I like to read
10   it, to make sure I got it read.  But I have the gist
11   as to what many of the things are.  So I have a sense
12   of some of the issues.
13           And I have been working with -- I believe
14   it's Government's motion 1594.  So I'm working
15   through those issues which the Government filed on
16   December 21.  I think I may cover some of those in
17   what I'm about to say.
18           So let me give you my thoughts on sort of a
19   basket of issues and, then we'll figure out where
20   we're going to go then with the James hearing, or
21   whether we want to move on to Defendants' 1616, or
22   how we want to proceed.
23           I know the defendants are raising the issue
24   that some of these statements are testimonial.  And I
25   understand you need to do that.  That's probably
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    going to be an appellate issue if there is

2    convictions here.  But for purposes of the trial,

3    I'll take a harder look at what's in the recent

4    filing, and you'll be able to say whatever you want

5    to say for the record here before you leave.

6           But I'm still inclined to find that the

7    out-of-court statements that are at issue here are

8    nontestimonial, so that their admissions do not

9    offend the Confrontation Clause.  The Confrontation

10   Clause does not require the exclusion of out-of-court

11   statement if that statement was nontestimonial --

12   using the most current Supreme Court definition,

13   which the defendants are using in their 1616 --

14   "i.e., the question is whether, in light of all the

15   circumstances, viewed objectively, the primary

16   purpose of the conversation was to create an

17   out-of-court substitute for trial testimony."  And

18   much of that comes from Michigan versus Bryant.

19          Then, a little later in Clark, the Supreme

20   Court said, "The primary purpose test is a necessary,

21   but not always sufficient, condition for the

22   exclusion of out-of-court statements under the

23   confrontation clause."  Although, the Supreme Court

24   "refers to interrogations" and the primary purpose of

25   an interrogation, "it is in the final analysis" --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and I'm quoting Washington v. Davis here -- "it is in
2    the final analysis the declarant's statements, not
3    the interrogator's questions, that the confrontation
4    clause requires us to evaluate."  822 Note 1.
5    "Accordingly, statements made unwittingly to a
6    government informant and statements from one prisoner
7    to another are nontestimonial."  I think that's the
8    holding of Smalls, page 777.  And under this rubric,
9    most of the statements that the United States
10   identified are testimonial so the Confrontation
11   Clause permits their admission even if the declarants
12   are not subject to cross-examination."
13            Now, Perez' statements to Sergeant
14   Palomares and Deputy Warden Mulheron as part of the
15   Molina murder investigation were testimonial,
16   however, so the United States cannot use those
17   statements for their truth unless Mr. Perez
18   testifies.
19            Rule 801(d)(2)(E) -- let's talk about the
20   co-conspirator exception.  It applies to the
21   out-of-court statements at issue that were made
22   before the object of the relevant conspiracy was
23   accomplished or became impossible.  Rule 801(d)(2)(E)
24   means that a statement, quote, "offered against an
25   opposing party and was made by the party's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    co-conspirator during and in furtherance of the

2    conspiracy" is not by definition hearsay.  So it's

3    not an exclusion.  It's a definitional consideration

4    in determining whether it's even hearsay.  "The

5    statement must be considered, but does not by itself

6    establish the existence of the conspiracy or

7    participation in it."  That, again, comes out of the

8    rules.

9            And then, whether a particular defendant

10   was a member of the conspiracy and whether a

11   particular statement was made during and in

12   furtherance of that conspiracy is a question of fact

13   to be determined by a judge by a preponderance of the

14   evidence.  That's Bourjaily and then also 104(a)

15   where "the Court must decide any preliminary question

16   about whether evidence is admissible."  To qualify

17   under Rule 801(d)(2)(E), a statement needs to be made

18   by a co-conspirator, but it need not be made to a

19   co-conspirator.  That's the holding of Williamson

20   from the Tenth Circuit.

21           Likewise, a statement needs to be made,

22   from the perspective of the declarant, in furtherance

23   of the conspiracy, but it does not need to, in fact,

24   further the conspiracy.  Again, that's what

25   Williamson said.  Thus, a statement made by a

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          1-800-669-9492
                                           e-mail: info@litsupport.com

```
1   co-conspirator to a confidential human source can
2   qualify as a statement in furtherance of a conspiracy
3   even though a confidential human source -- as a
4   government agent -- cannot qualify as a conspirator
5   under federal law, and even though a statement to a
6   confidential human source likely hinders conspiracy.
7   A co-conspirator statement under Rule 801(d)(2)(E)
8   must be made while the conspiracy persists.
9   According to the Supreme Court, a co-conspirator's
10  statement, made after the central aim of the
11  conspiracy's accomplishment or failure is not made
12  during and in furtherance of the conspiracy.  And
13  that goes all the way back to Krulewitch.  "This
14  hearsay declaration, attributed to a co-conspirator,
15  was not made pursuant to and in furtherance of
16  objectives of the conspiracy charged in the
17  indictment, because if made, it was after those
18  objectives had either failed or had been achieved."
19          Then the Tenth Circuit has said in Alcorta,
20  "To be sure, to qualify for the co-conspirator
21  exception a statement must have been made during the
22  conspiracy.  Statements made after the objectives of
23  the conspiracy have either failed or been achieved or
24  not made during the conspiracy must be excluded."
25  That rule makes sense because "there can be no
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
1    furtherance of a conspiracy that has ended."
2    Moreover, once the "central criminal purposes of a
3    conspiracy have been attained, a subsidiary
4    conspiracy to conceal may not be implied from
5    circumstantial evidence showing merely that the
6    conspiracy was kept a secret and that the
7    conspirators took care to cover up their crime in
8    order to escape detection and punishment."  The
9    Supreme Court has emphasized the "vital distinction
10   between acts of concealment done in furtherance of
11   the main criminal objective of the conspiracy, and
12   acts of concealment done after these central
13   objectives have been attained, for the purpose of
14   covering up after the crime."  That's Grunewald,
15   that's Harlan's case in 1957.
16            In the former case, "acts of concealment
17   are in furtherance of the objectives of the
18   conspiracy itself," whereas, "in the latter case the
19   acts of covering up can by themselves indicate
20   nothing more than that the conspirators do not wish
21   to be apprehended -- a concomitant, certainly, of
22   every crime since Cain attempted to conceal the
23   murder of Abel.
24            The United States has identified two
25   distinct conspiracies for 801(d)(2)(E) purposes.  The
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    first corresponds to Counts 6 and 7 of the

2    indictment, the Molina murder.  The central aim of

3    that conspiracy was accomplished with Molina's death

4    on March 7, 2014.  And I take that right out of the

5    indictment.

6            The second corresponds to Counts 9 and 10

7    i.e., the conspiracy to murder Marcantel and

8    Santistevan.  The United States has neither

9    identified nor proved a third conspiracy to conceal

10   the first two.  That multiple SNM members attempted

11   to conceal SNM crimes does not permit the Court to

12   infer that those SNM members formed an agreement,

13   tacit or otherwise, to conceal those crimes.  Alcorta

14   says, "stating that a conspiracy requires an

15   agreement with another person to violate the law."

16   Accordingly, statements that were made after those

17   conspiracies were complete, such as Mr. Perez'

18   recorded statements, do not qualify as co-conspirator

19   statements under Rule 801(d)(2)(E).

20           Contrary to the United States' suggestion

21   that the indictment alleges VICAR violations, some of

22   which are based on conspiracy offenses, does not

23   alter the scope of the conspiracies.  On page 8, they

24   argue that Mr. Perez' statements were in furtherance

25   of the conspiracy, even though they occurred years

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    after the Molina murder, "because the conspiracy is a

2    VICAR conspiracy to murder, which includes as an

3    element that it was done in furtherance of or to gain

4    some type of benefit from the SNM Gang," so Mr.

5    Perez' statements claiming credit in the Molina

6    murder, "thus, further his standing in the SNM and

7    the VICAR conspiracy to murder."  That conspiring to

8    commit murder, quote, "for the purpose of gaining

9    entrance to or maintaining or increasing position in

10   an enterprise engaged in racketeering activity"

11   violates VICAR is immaterial for Rule 802(d)(2)(E)

12   purposes.  And I think that follows from Section 1959

13   of the code.  The inquiry under Rule 801(d)(2)(E) is

14   whether a statement was made during, in furtherance

15   of a conspiracy, but a VICAR violation is not,

16   itself, a conspiracy even though it may have a

17   conspiracy as its underlying offense.

18           So I hope those will stand as rulings of

19   the Court unless further arguments persuade the Court

20   otherwise.  But I'm inclined to go with those.

21           Given those, where are we on the James

22   hearings?  What further guidance do the parties need

23   on any particular James or any other particular

24   evidence?

25           MR. CASTELLANO:  Your Honor, I noticed the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   two things.  I think it may be Count 8, there is

 2   another conspiracy regarding Julian Romero.  I think

 3   the Court's ruling --

 4            THE COURT:  It was, yeah, you're right.

 5            MR. CASTELLANO:  I think the Court's

 6   rulings will cover that.  I don't think the Court

 7   needs to make additional findings.

 8            THE COURT:  Well, I made them on the record

 9   when we did it.

10            MR. CASTELLANO:  Correct.

11            THE COURT:  I didn't remember it today,

12   yeah.

13            MR. CASTELLANO:  The other question I had

14   was just regarding Mr. Perez' statements.  He had

15   some statements that related back to the time of the

16   event.  It was basically like a flashback.  So the

17   only question I had was whether or not the statements

18   he recalls as having happened at the time of the

19   Molina murder, or leading up to it, whether those --

20            THE COURT:  The way I would analyze that is

21   at the time he made those statements, yes, they're a

22   flashback.  He's talking about the statements.  You

23   can get those statements in through some other

24   source, and that he made them at the time, or that

25   they were made at the time, but that he's not making
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    those statements to Mr. Cordova at the time that
 2    he -- at the time he made them to Mr. Cordova he's
 3    not making them in furtherance of the conspiracy.
 4              So I think, bottom line, most of what he's
 5    going to be saying -- that's the reason I started
 6    where I did this morning -- was I think, you know,
 7    they can come in against him, because he's a party
 8    opponent.  But I'm going to have to tell the jury for
 9    the next however many times, however long it's going
10    to take for us to play the Cordova material, that in
11    the recitation of what Mr. Perez told Mr. Cordova,
12    that they cannot consider those statements in
13    determining the guilt of the other four defendants.
14              Anything else from the Government?
15              MR. CASTELLANO:  No, sir.  Thank you.
16              THE COURT:  All right.  From the
17    defendants?
18              Ms. Jacks, do you want to take over and
19    start putting up particular pieces of evidence that
20    we can get rulings on, so that -- clarity -- do you
21    want to push that down the road?  What would you
22    like?
23              MS. JACKS:  What I'd like to do is talk
24    about what you wanted to talk about this morning.
25              THE COURT:  Okay.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          MS. JACKS:  Which was whether Bruton still
2    has any sort of basis, I guess, really whether a
3    limiting instruction is sufficient in the situation
4    where the statements are nontestimonial.  And I'm
5    accepting for the sake of this argument the Court's
6    indication that you are going to apply the Smalls
7    test, and rule that the statements at issue here are
8    nontestimonial.
9          We've tried in our brief to argue why that
10   test has evolved and is somewhat different, and that
11   the Smalls test only looks at one aspect of
12   determining whether a statement is testimonial, and
13   that that definition has broadened since then.  Let's
14   just assume that the Court is finding that the
15   statements are nontestimonial, and want to go to
16   Bruton.
17         Because I went back over the holidays and
18   reread Bruton and the related cases.  And it had been
19   a long time since I looked at them.  And I guess the
20   best way that I would like to, at least give the
21   Court my interpretation is, it seems to me, Bruton
22   really stands on two constitutional legs, one being
23   the Sixth Amendment Confrontation Clause, and the
24   other being the Due Process Clause.  You have either
25   the Fifth or Fourteenth Amendment.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                      1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          And the reason I feel like that's true, is

2     that Bruton relied heavily, the opinion relied

3     heavily on Jackson v Denno.  And that was the case

4     that really started all of this.  And that was

5     founded on the Fourteenth Amendment right to due

6     process.  And as I'm sure the Court remembers,

7     Jackson v. Denno is the case where, in New York

8     State, the judge basically had to let any sort of

9     confession go to the jury.  And the jury was told:

10    You decide if it's voluntary or involuntary.  And if

11    it's involuntary, just ignore it.  And this Jackson

12    v. Denno, the Supreme Court said, Look, jurors can't

13    do that.  How can we expect somebody to ignore an

14    involuntary confession, and there is no guarantee

15    that the defendant is not being convicted on evidence

16    that's inadmissible.

17         And I think Bruton really -- in Bruton, you

18    look at the Supreme Court's opinion, and they really

19    relied on an opinion by Justice Traynor in the

20    California Supreme Court that took that language from

21    Jackson v. Denno, and said:  You can't have evidence

22    against a defendant that is a confession that

23    implicates him from a nontestifying co-defendant.

24         So I really think Bruton has a due process

25    leg and a confrontation leg.  And so, if you take

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

147

```
1    that confrontation leg and say that's cut off by
2    Crawford, and by the fact that now we have sort of a
3    new Sixth Amendment analysis, I don't think that
4    means that Bruton means nothing anymore.  And I
5    would -- well, and I think what the issue becomes is
6    whether the evidence, even if it's nontestimonial, is
7    of the type like the Court --
8             THE COURT:  Well, you would agree that it's
9    not overruled.  I mean, we both agree that Bruton is
10   not overruled because it still applies to testimonial
11   statements.  So that makes it alive and well.
12            MS. JACKS:  Yes.
13            THE COURT:  It's just more narrow than
14   maybe anybody supposed before Crawford?
15            MS. JACKS:  And I guess I would also say
16   that, I think there is still a very valid argument
17   that it's alive and well, insofar as that part of its
18   rationale behind the holding was based on due process
19   rights.  And I don't see that Jackson v. Denno has
20   been overruled.  So I think it's still good law, that
21   yes, there are situations where evidence that's
22   admissible against one defendant could be so
23   overwhelmingly prejudicial to another defendant that
24   it's not admissible against, that you can't just give
25   a limiting instruction to cure the problem.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            So that would be -- so I would urge the
 2    Court to look at the cases and the Fifth and
 3    Fourteenth Amendment due process analysis in trying
 4    to decide whether some of these statements that are
 5    coming in against one defendant, as an admission are
 6    overwhelmingly prejudicial to other defendants.
 7            THE COURT:  What did you think -- because,
 8    in some ways, you probably sense you're speaking a
 9    little bit to the choir here in my remarks this
10    morning.  But the thing that -- I still think that it
11    would -- if I were to go your direction and the
12    Government would appeal, I guess I'm concerned as to
13    what the Government would say about the Tenth
14    Circuit's opinion in Clark, those four words that I
15    am focusing a great deal on that -- concluding that
16    nontestimonial statements, quote, "fall outside the
17    protective ambit of the Confrontation Clause."  I
18    think we agree on that.  And then those four words
19    "and by extension Bruton."
20            MS. JACKS:  Well, my answer to that would
21    be Jackson v. Denno.  My answer to that would be --
22            THE COURT:  But you've got to understand --
23    I mean, you know, what do I do as a district judge?
24    I mean, you and I can have an academic discussion as
25    to whether Clark is overreading or limiting Bruton
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    too much.  But don't we have to take it as what we

2    have to try this case under?

3          MS. JACKS:  Well, I think it certainly

4    didn't overrule existing Supreme Court precedent.

5    And so I don't see -- and it doesn't seem like it

6    considered that exact argument as to whether there

7    was a leg of Bruton that was grounded in due process.

8    So I think there is a way to find your decision --

9    ground your decision on law that is, in fact,

10   consistent with the Tenth Circuit's opinion in Clark.

11         THE COURT:  Okay.

12         MS. JACKS:  I mean, I think what happens is

13   a lot of times courts, appellate courts, are

14   considering issues, and make statements, when they're

15   not really considering all the options of -- they're

16   considering the issue before it and not other

17   renditions of the same or similar issue.  And I

18   think, until Crawford was decided, I don't think

19   people were acknowledging or discussing the two

20   foundations of Bruton.

21         THE COURT:  I'll have to stare at this

22   Fifth Circuit case that I mentioned this morning a

23   little bit more tonight.  Other than the Fifth,

24   possibly, and maybe not even the Fifth, every court

25   of appeals, to my knowledge, has held just what the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Tenth has, that Bruton is just not a consideration
2    once you get -- once you find that it's
3    nontestimonial.
4              MS. JACKS:  And I would say this is an
5    issue, I think, that's in litigation around the
6    country in the courts of appeals right now.  I mean,
7    I spent time reading about this, and thinking about
8    this over the holiday.  Come to find out, on Thursday
9    evening, before I left to come out to New Mexico,
10   that this is an issue that going to be debated in a
11   death penalty appeal tomorrow in the Ninth Circuit.
12   So I think it's an issue that is coming up and is the
13   subject of litigation now, because Crawford changed
14   the landscape of the Sixth Amendment analysis.
15             The other thing, in thinking about this --
16   and I mean, this issue is complex.  Most of the cases
17   that you read deal with state court prosecutions that
18   are relatively simple, two or three defendants.  Not
19   these types of charges we have here, which are
20   federal offenses, that have a lot of different
21   elements beside just the crime of violence.
22             And one of the things that -- and I think
23   we tried to brief this -- that came up, is there is
24   kind of a tension in this case between Counts 6 and 7
25   and Counts 9 and 10, in the sense that there is two
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    conspiracies.  So just to try to lay out what I see

2    as the real difficult problem to deal with is all the

3    co-conspirator statements or the alleged

4    co-conspirator statements that the Court may say are

5    in furtherance of the Counts 9 and 10 conspiracy to

6    murder Santistevan and Marcantel, off of those

7    statements, all of that proof is hearsay as to every

8    other -- besides Mr. Baca, hearsay as to every other

9    Molina defendant.  And yet, the Government is relying

10   on that, or at least I've heard them say they're

11   relying on that to prove an element of the VICAR

12   offense that the SNM was engaged in racketeering

13   activity.

14            So they want it to apply, because that's an

15   element of the offense.  But yet, they're using their

16   inadmissible evidence to attempt to prove the

17   racketeering.

18            THE COURT:  You and I will have to work

19   hard to tell the jury what doesn't apply.  Then the

20   Government has got to sit here and make a decision as

21   to whether they still want to try all this stuff

22   together, or they feel like they're getting trimmed

23   back so much of their evidence, that they don't want

24   to try these together.  But right at the present

25   time, you and I are just going to have to work real

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   hard to make sure we tell the jury:  You can consider
 2   it for this, but not for that.
 3            MS. JACKS:  Again, I hear the Court's
 4   solution.  I think, given the complexity of the
 5   problem, and the fact that the whole problem repeats
 6   itself, at least as to Christopher Garcia, when
 7   you're talking about all the evidence of the Molina
 8   conspiracy being used to prove an element of his
 9   VICAR offenses, that the SNM was engaged in
10   racketeering activity.
11            So as I think we said in our pleading, it's
12   a tangled web of limiting instructions that I think
13   you and I and the rest of the lawyers in this case
14   are going to have a problem even writing them.
15            I can only imagine how the jurors are going
16   to feel when they're being asked to apply them.
17            THE COURT:  Well, here's the problem,
18   though.  We are focused, properly so, on a discrete
19   body of evidence.  It's very important to both sides
20   of the case, and we're going to focus on it and get
21   it right.  But my sense is, when I think about this
22   trial, when I think about it and what it's going to
23   look like, after the Government sort of gave us an
24   outline of how they're going to try this case, I
25   would think that there is going to be the great bulk,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   the great majority of this case is going to be
 2   evidence that they're going to put on the enterprise,
 3   in furtherance of the activity, that's not going to
 4   implicate these hearsay exceptions.
 5            Now, they're going to try to get a lot of
 6   stuff through these exceptions.  And that's where
 7   we're trimming them back.  But I still think that the
 8   great bulk of their case is going to be people
 9   sitting in that box right there testifying day after
10   day about an enterprise and about the crimes
11   committed in furtherance of it, so that when we
12   finally get to these limiting instructions and this
13   particular evidence, they may get their wings clipped
14   as to what they can get through in some of the more
15   sexy stuff.  But the great bulk of it is going to be
16   applicable to all five defendants.
17            Do you sit and think about this case
18   differently than what I just envisioned?
19            MS. JACKS:  I do.  I guess I want to go
20   back to your initial assumption, take us back for a
21   second.  Because I recall that when we moved for
22   severance of the Molina counts from the other counts,
23   the Government's point was, Oh, no, we need to have a
24   joint trial because we need to be able to prove the
25   racketeering activity.  And the racketeering activity
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    in Counts 9 and 10 is admissible against all
 2    defendants.  And I guess, vice verse, the
 3    racketeering activity of 6 and 7 is admissible
 4    against all defendants.
 5              THE COURT:  I think that's true.
 6              MS. JACKS:  Now, I think we're at a point
 7    where a huge, if not all of the Government's evidence
 8    as to Counts 9 and 10 is inadmissible hearsay as to
 9    the defendants that are only charged with the Molina
10    homicide.
11              THE COURT:  You may have a better sense of
12    that, and you may be right.  I have a hard time
13    figuring out what else they have.  But my sense is
14    that they have an arsenal, that we're focusing on
15    this, and rightly so, they have a lot more that we're
16    going to put out there that is not dependent upon a
17    co-conspirator statement, or is some other hearsay
18    exception.
19              MS. JACKS:  My impression is that, with
20    respect to perhaps the Molina homicide, that might be
21    the case, because there is very few -- there are not
22    as many co-conspirator statements, and there is other
23    evidence.
24              But I think, with respect to Counts 9 and
25    10, almost all of the Government's proof, at least
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    from my perspective -- I don't know what other people

2    think -- but from my perspective is going to be the

3    letters from Roy Paul Martinez and Robert Martinez,

4    and the conversations with Mr. -- the conversations

5    of various defendants with Eric Duran and Mario

6    Montoya.

7              It's a conspiracy to murder.  I mean, the

8    crime never actually happened.  So they don't have,

9    you know, the things I don't think other than that.

10             So my point, I guess, is simply that the

11   whole justification for a joint trial has been this

12   cross-admissibility of evidence related to all the

13   charges.  And now we're at a juncture where that

14   doesn't really seem like that's the case.

15             THE COURT:  What is wrong with Duran --

16   maybe I just haven't thought that through -- what's

17   the problem with him being in the co-conspirator

18   exception?

19             MS. JACKS:  No, my point about Duran,

20   assuming for the sake of argument, that Duran -- the

21   statements of Baca and Garcia and others to Duran are

22   statements of co-conspirators within the course of

23   the Santistevan and Marcantel conspiracy conspiracies

24   to commit murder.  Okay.  I mean, that's fine.

25             But I represent Mr. Sanchez.  He's not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    implicated in that at all.  He's not a co-conspirator
2    to those conspiracies.  So that evidence is
3    completely inadmissible.  I mean, there is not a
4    shred -- if it's not admissible to prove a
5    racketeering activity, and he's not a co-conspirator,
6    it's absolutely irrelevant to his prosecution.  And
7    so if it's very damaging, prejudicial evidence.  And
8    it's -- the basis for the joint trial has been the
9    idea that the evidence of Counts 9 and 10 is going to
10   be used towards the Counts 6 and 7 defendants anyway.
11   So it just seems like we're going in circles.
12              THE COURT:  It's going to be hard.
13              MS. JACKS:  I guess, before -- I think
14   maybe I touched on everything that the Court was
15   discussing this morning.
16              I do just want to make a comment about
17   Smalls and about the current testimonial versus
18   nontestimonial distinction.  Because the language
19   that's quoted all the time from Smalls is this
20   unwitting statement to a fellow inmate.
21              And I think that what we have here, or
22   what's developed over the course of these past few
23   days of hearings, is that Mr. Perez' statements to
24   Billy Cordova -- first of all, that comment really
25   focuses only on the declarant's state of mind.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the current test under Michigan v. Bryant, is you

2    have to look at all the circumstances.  The most

3    important factor is whether the statements were given

4    to police, or an agent of law enforcement in response

5    to an emergency.

6           But then, the Supreme Court also said:  You

7    have to look at the actions and statements of both

8    the declarant and the person that the declarant's

9    making the statements to.  And that Smalls test

10   really focuses only on:  What did the guy who was

11   making statements think?  He didn't know he was

12   talking to a government agent, so, therefore, it's

13   nontestimonial.

14          And I think what Smalls is lacking, or

15   where the analysis has progressed since Smalls, is to

16   looking at the intent and the actions of both the

17   declarant and the person that the statements are made

18   to.

19          THE COURT:  I guess that's where I'm just

20   not seeing that it's advanced to that.  They're still

21   focusing on the declarant there.  The statements that

22   are being made.  I read that with care, and I'll give

23   it some thought.  But I guess I'm not seeing that

24   Bryant and Clark move us to undermine Smalls.

25          MS. JACKS:  That's maybe a different

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    conclusion, I think, than the one I'm making.  But I
 2    do think that Bryant -- Smalls was decided before
 3    Davis.
 4            THE COURT:  Yes.
 5            MS. JACKS:  And then -- and -- or no, wait,
 6    let me say that again -- just after Davis.
 7            THE COURT:  Yeah, and before Bryant and
 8    Clark.
 9            MS. JACKS:  Right.  And Smalls was looking
10    at the previous Tenth Circuit test, and realized
11    that, well, there is some tension between this and
12    Davis, but we're not going to just drop the test.
13            And I think what the Supreme Court has
14    acknowledged is that Michigan versus Bryant has moved
15    the test even further away from what it was when the
16    Smalls court made its decision, and to the point
17    where I think the Smalls court's decision does not
18    consider important factors in the testimonial versus
19    nontestimonial analysis.
20            And I guess the other thing I just want to
21    point out is there is no question that Billy Cordova
22    went in there to the prison and made comments to Mr.
23    Perez, as a government agent, in an effort to gather
24    evidence for a criminal prosecution.  There is no
25    doubt.  And he was given a way to preserve that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    evidence.  And he was told what his mission was:  Get
 2    statements about murder.
 3              And he very, very glibly stated from the
 4    witness stand that over a period of days, at least to
 5    another individual, he turned the recorder off and
 6    on, and warmed the guy up -- let me go back.  He said
 7    that he worked a different suspect over a period of
 8    days, and never turned the recorder on because the
 9    guy never said anything.
10              With respect to Mr. Perez, I think he said
11    he used the same sort of tactics, but flipped the
12    recorder on and off when he got the feeling something
13    incriminating might be said.
14              So it's not a situation where you can say
15    that it was -- let me go back.  I don't think
16    statements made to what is custodial interrogation,
17    engaging someone in conversation that's reasonably
18    likely to illicit an incriminating response, I don't
19    think you can classify those remarks as an unwitting
20    statement to a fellow inmate.  I mean, that is
21    classic psychological interrogation that Mr. Cordova
22    described.  That's what he used on Rudy Perez.  And
23    Rudy Perez' statements, whatever they were, were not
24    unwitting, they were the product of that custodial
25    interrogation, along with, I think, other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   circumstances, such as the fact that he was in
 2   isolation, he was unable to go to recreation, and he
 3   was on heavy doses of narcotic painkillers.
 4           So I think this is a unique situation.  I
 5   haven't been able to find something exactly on point.
 6   But I think that is a big difference between what
 7   happened to Mr. Perez, and somebody sitting down at
 8   the county jail bragging about a murder they did.
 9           I don't have anything else.
10           THE COURT:  Okay.  All right.  Thank you.
11           Mr. Castle, you've been wanting to speak on
12   this issue.
13           Is this deja vu?  We had this conversation
14   about a year ago, didn't we?
15           MR. CASTLE:  We did.  And I'll begin my
16   comments with --
17           THE COURT:  Is it getting any better?  Like
18   wine?  Is time on your side?
19           MR. CASTLE:  I don't think so.
20           But I can say about a year ago this
21   conversation really came up in the context of whether
22   Bruton had survived.
23           THE COURT:  Well, it was the severance
24   motions, and we were -- at that time, without the
25   robust discovery we had today, we were trying to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   figure out if there were Bruton issues here that
 2   really would dictate severance along the lines that
 3   the defendants wanted.
 4            MR. CASTLE:  Interestingly enough, I went
 5   back and reviewed not only the oral litigation but
 6   the written motions.  And the Number 1 motion was
 7   Javier Alonzo's reply, which is Document 1036.  And
 8   what wasn't addressed in those pleadings was Michigan
 9   versus Bryant, or Clark versus Ohio, or the primary
10   focus test analysis as set forth in those cases.
11            THE COURT:  Well, my memory -- and you can
12   correct me if I'm wrong -- but again, that's the
13   reason I say it's deja vu, you and I were sitting
14   there going -- because, you know, I was coming out of
15   a lot of experience with Bruton, where we took the
16   paste and the scissors and we cut out those things.
17   So I was being educated on Smalls.  And we all had to
18   admit the world had moved beyond Bruton.  And we took
19   what we could.
20            If you'll go back and look at the first
21   severance opinion that I did, before I did Mr.
22   Sanchez' motion to reconsider, we took all the Bruton
23   problems we could think up at that time, and did the
24   best we could with them.  And if you go back and look
25   at that opinion, I said that certain evidence
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

162

```
1    couldn't come in.  So I said, okay, if the Government
2    doesn't want to sever it any further than this,
3    certain things are Bruton problems and got to stay
4    out, even under Smalls.  But other things, most of
5    it, was going to be satisfied by Smalls, because it
6    was probably nontestimonial.
7              MR. CASTLE:  I think that how Michigan
8    versus Bryant, and Ohio versus Clark changed, or
9    maybe implicitly overruled Smalls, is in this
10   fashion:  As the Court will recall, Smalls is almost
11   the identical same situation that we received with
12   Mr. Cordova and Mr. Duran.  I mean, it was an
13   informant working for the Government, sent in to the
14   prison, for the very purpose of obtaining evidence
15   that could be used at trial.
16             And I think, even this Court earlier today,
17   I think, put it best when we were talking about Eric
18   Duran -- and I wrote this down, I hope I got it
19   right -- but the Court said:  Didn't Duran risk
20   losing valuable testimony by not turning the recorder
21   on.
22             And I think that really kind of captures
23   it.  And the purpose of it was to obtain material to
24   be presented at trial.  No different than in front of
25   a magistrate.  It's just that they don't look like
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

163

```
 1   magistrates, but they're performing the same exact
 2   role.
 3            In Michigan versus Bryant, the Supreme
 4   Court said a statement qualifies as testimonial, "if
 5   the primary purpose of the conversation was to create
 6   an out-of-court substitute for trial testimony."
 7   That's exactly what happened here.  When the
 8   Government -- and it happens a lot now, because this
 9   is a tactic that's been used more and more
10   frequently, especially in cases in which defendants
11   are in custody, prior to being charged, is that they
12   send in informants to talk to the defendants.  And
13   what is the purpose of that?  What's the primary
14   purpose?  It wasn't to have an idle conversation with
15   the guy nextdoor.  The primary purpose of the
16   conversation was -- and I use the quotes -- to create
17   an out-of-court substitute for trial testimony.
18            Ohio versus Clark also talks about that
19   same primary purpose focus.  The problem with Smalls
20   is Smalls focused only on what was the purpose of the
21   declarant in speaking to the informant.  It didn't
22   look at the purpose of the informant engaging in the
23   conversation.  And so what the Supreme Court -- Ohio
24   versus Clark very candidly states the analysis keeps
25   evolving, and it says it evolved after Davis versus
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1   Washington.  It evolved, and it said:  What we have
 2   to do is look at the conversation itself.  And when
 3   we look at the conversation itself, was the
 4   purpose -- did that conversation happen because it
 5   was designed to produce evidence in court?
 6            And there is no doubt -- at least -- we're
 7   not dealing with Trial 2 issues right now, but I'm
 8   putting that in the context of Trial 1 -- not because
 9   I'm arguing their case for them, but because I think
10   these issues are going to reoccur in some context in
11   Trial 2.  So, with that aside, I think that we have
12   to look at the primary purpose of it.  And the
13   primary purpose of these conversations was to produce
14   evidence to be used in court.
15            One of the other problems with Smalls is it
16   indicates that the Davis court found that, even when
17   interrogation existed, it is in the final analysis
18   the declarant's statements, not the interrogator's
19   questions, that the Confrontation Clause requires us
20   to evaluate.
21            THE COURT:  That seems like that works
22   against you.
23            MR. CASTLE:  It is, and it was a footnote
24   in Davis.
25            But then, Michigan versus Bryant, and also
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Clark said, no, no, we have to look at the motivation
2    of the questioner.
3            So the reason I point this out is not to
4    argue against my position, but to argue to the Court
5    that something very different happened after Smalls
6    was decided.  It was no longer the situation where,
7    in the final analysis, only the declarant's
8    statements, and not the interrogator's questions
9    matter.
10           It changed.  The Supreme Court said, No,
11   we're going to look at the purpose, the overall
12   purpose, and why this statement was produced.  And
13   then, if it was for the purposes of testimony, or
14   evidence at trial, then it's Confrontation Clause
15   analysis.
16           I think, after the Court looks at
17   confrontation, then I agree with Ms. Jacks, then the
18   Court has to look at due process.  In Michigan versus
19   Bryant, the Supreme Court actually alluded to this
20   and said, "the Sixth Amendment standards are not the
21   only bar to admissibility.  And they quoted -- I
22   believe, they quoted Montana versus Egelhoff, a U.S.
23   Supreme Court case in 1996, that indicated erroneous
24   evidentiary rulings can, in combination, rise to the
25   level of a due process violation.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

166

 1                  Once again, to quote Perry versus New

 2      Hampshire, the Supreme Court said that "the Due

 3      Process Clause precludes evidence that is so

 4      extremely unfair that its admission violates

 5      fundamental conceptions of justice."  Our argument is

 6      that this situation does create that.

 7                  Historically, the United States Supreme

 8      Court has constantly said that informants'

 9      statements, jailhouse informants' statements are

10      inherently unreliable.

11                  And now we're going to take that, and we're

12      going to put a limiting instruction, to try to maybe

13      alleviate some of that.  But even the U.S. Supreme

14      Court has said constantly there is problems even with

15      limiting instructions, that there is kind of an

16      inherent weakness of those.  So we're piling on

17      inherently unreliable evidence, and we're trying to

18      cure it with imperfect limiting instructions.  And I

19      don't mean the form that it's written.  I'm talking

20      about the effect that it has on the jury.

21                  Now, piled on top of that is we have a

22      VICAR prosecution here, where they're going to have

23      to prove the enterprise, the criminal enterprise.

24      And this evidence, this very same evidence that the

25      Court is going to limit, saying, you can't use it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    against this defendant or that defendant, but only
 2    against that defendant, how are we going to expect
 3    the jury to say, But I'm not going to use any of that
 4    for the enterprise element?  That is kind of a unique
 5    animal.  It's a unique animal created by the manner
 6    in which the prosecution has indicted in case.
 7              The next level after due process is, of
 8    course, the statement against interests exception.
 9    And Smalls, even if we accept Smalls, starts talking
10    about redaction, and it talks about removing parts
11    that inculpate someone else.  And I don't know if the
12    Court in its comments was thinking that we're not
13    going to do that anymore.  Okay.  Then I'll move on.
14              THE COURT:  We're not going to do it
15    anymore.
16              Now, if the Government wanted to come in
17    and say:  Look, we'll accept the burdens of Bruton,
18    and instead of limiting instructions, we'll sit and
19    cut this thing down to something that is only, for
20    example, against Mr. Perez; it doesn't implicate any
21    of the other four defendants.  And so we go back to a
22    Bruton thing.  That's one way of, perhaps, addressing
23    the issue.  I haven't thought that through.  But I
24    guess the bottom line was I was concluding the
25    statements were nontestimonial, and I was talking
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    with Ms. Jacks.  When I look at Clark, Bruton is off.

2    So that cutting and pasting we did with Bruton, we're

3    not going to do in this trial.

4            MR. CASTLE:  Well, but the cutting and

5    pasting was also authorized in Williamson versus

6    United States so I think it's continued to have its

7    vitality.

8            I think that can alleviate some of the

9    concerns the defense have, but not all.  Because even

10   if it's just evidence that says Rudy Perez, a member

11   of the SNM, committed this violation, it can be used

12   by the jury for the purpose of establishing the

13   enterprise.

14           THE COURT:  I think you're right.  That's

15   the reason I'll just leave it where it is.  I'm not

16   going to go that way.

17           MR. CASTLE:  The final consideration I

18   bring to the Court is, when we're talking about

19   limiting instructions, I would point the Court to

20   Tennessee versus Street, which is 471 U.S. 409.  And

21   that was the case that said that if statements aren't

22   offered for the truth of the matter asserted, then

23   they're nontestimonial.  But there is another

24   discussion in Tennessee versus Street, which talks

25   about the limiting instructions and the vitality of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    them.  And what it stated was, before you go to the

2    point of issuing a limiting instruction to tell the

3    jury:  Don't use this damaging evidence against a

4    defendant, that there has to be a finding of

5    necessity.  And in Tennessee versus Street, it said

6    "there were no alternatives that would have both

7    ensured the integrity of the trial's truth seeking

8    function and eliminated the risk of the jury's

9    improper use of evidence."  And I think Tennessee

10   versus Street is also grounds for redaction.  Because

11   redaction then makes it -- you in a situation where

12   you don't have to limit, perhaps, the use of the

13   evidence, as much as you would have to if you don't

14   redact.

15          And the final aspect of my argument -- and

16   I have to say what Group 2 is intending to do is,

17   when we get the list of the statements, we're going

18   to see which ones, if any, we have a real heartburn

19   about.  I mean, there are obviously going to be

20   statements that are clearly co-conspirator statements

21   that even I can't try to argue out of.

22          But there might be a residual, and I think

23   there will be.  We'll try to address those in a

24   written pleading.

25          So I'm cutting some of my comments short.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    But my final comment is what Justice Toms talked
 2    about, and he's talked about it now in his dissent in
 3    Bryant, in Davis, and what he's talking about -- and
 4    no one has rejected this concept -- is the
 5    Confrontation Clause reaches and prohibits
 6    prosecutorial use of technically informal statements
 7    when used by the prosecution to evade the formalized
 8    process.  If that has vitality, that's exactly what
 9    happened here.  Instead of bringing in Mr. -- sorry,
10    I always call him "Pup," so I apologize I'm
11    stumbling.
12              THE COURT:  Baca.
13              MR. CASTLE:  Mr. Baca.  Of bringing Mr.
14    Baca into the police station and interviewing him,
15    they sent a police agent in, in the form of an
16    informant to interview him in the jail.  And it's
17    happening more and more.  It's a pattern.  And what
18    it is, is the prosecutorial's use of these informal
19    processes to avoid the actual rights of a defendant
20    in a criminal case.
21              And so, that's my last bit of discussion,
22    Your Honor.  If the Court has any questions.
23              THE COURT:  Well, we may come back to this,
24    but not at the present time.  Thank you, Mr. Castle.
25              Ms. Sirignano, you want to weigh in?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. SIRIGNANO:  Your Honor, it was more of

2    a clarification than an argument.

3          Was the Court's opinion that Mr. Duran, his

4    statements would come in under the co-conspirator

5    exception to the hearsay rule?

6          THE COURT:  Well, the difference I was

7    making between Mr. Perez' statements to Mr. Cordova

8    is that I don't see how most of those, if any of

9    those, statements are going to be in furtherance of a

10   conspiracy; whereas, Mr. Duran's statements were

11   contemporaneous with the conspiracy.  So it seems to

12   me that Mr. Baca was making those statements in

13   furtherance of the conspiracy.  So I'll need to think

14   specifically as to whether Mr. Duran's statements

15   come in against anybody but Mr. Baca.  But they

16   certainly come in to Mr. Baca.

17         MS. SIRIGNANO:  So you're saying -- I'm

18   sorry, Your Honor -- that Mr. Baca's statement to --

19         THE COURT:  I think so.  I think those come

20   in, because they find an exception to the hearsay

21   rule.

22         MS. SIRIGNANO:  And I would agree with

23   that.  But what about Mr. Duran's statement?  Because

24   he was a government agent, and he wasn't charged in

25   this case.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  He was not.  But, as I said in
 2    my statement, you can still make statements, because
 3    it's the declarant that's making the statements.  Mr.
 4    Baca was making those statements at the time a
 5    conspiracy existed in furtherance of the conspiracy.
 6              MS. SIRIGNANO:  Correct, Your Honor.  But
 7    can we focus on Mr. Duran's statements?  Because, in
 8    accordance with what Mr. Castle as arguing, you have
 9    to look --
10              THE COURT:  Turn that mic a little bit so I
11    can hear you better.
12              MS. SIRIGNANO:  You have to look at both.
13              THE COURT:  Well, Mr. Duran is going to be
14    here.
15              MS. SIRIGNANO:  Presumably, yes, he will be
16    here.  But I guess what I'm trying to figure out
17    here, is that there were a number of people recorded:
18    My client, Mr. Duran, Mr. Baca.  And so those
19    recordings, the jury is going to have to ascertain --
20    and the Government is going to have to provide a
21    basis of admissibility, and a hearsay exception, as
22    to how those recordings and those statements are
23    going to be used against each defendant.
24              THE COURT:  Well, I think what Ms. Jacks'
25    point was, they probably cannot be used against
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    people who are not indicted in those counts as to
2    Marcantel and that conspiracy, the Marcantel
3    conspiracy.  And I think I agree with her.  So that a
4    jury will have to be told that they cannot use those
5    statements to establish enterprise, or anything else
6    that the Government may be trying to use those for;
7    they'll not be used.  But, as far as people in the
8    conspiracy, I think it is different than the Perez
9    statement or the Cordova statement, because it is in
10   furtherance.  I think it finds a hearsay exception.
11   So it will be used against those defendants in the
12   Marcantel conspiracy.  Is that clear?
13             MS. SIRIGNANO:  I agree with that, Your
14   Honor, yes.
15             THE COURT:  All right.
16             MS. SIRIGNANO:  Thank you.
17             THE COURT:  All right.  Anything else, Ms.
18   Sirignano?
19             MS. SIRIGNANO:  No, Your Honor.  Thank you.
20             THE COURT:  Let me have Mr. Lowry talk,
21   then I'll come back to you, Ms. Jacks.  I won't cut
22   you off.
23             Mr. Lowry.
24             MR. LOWRY:  I just had a point to make sure
25   I'm following this conversation correctly, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Honor.  And I think I might be speaking -- I don't
 2   want to ever try to speak for Ms. Jacks -- but
 3   following the logic you just went through with Ms.
 4   Sirignano -- and Mr. Castle raised this -- it seems
 5   to me the concern is, when Ms. Jacks argued the
 6   severance motion, the Court was very clear, Well,
 7   wait a second, the Marcantel homicide comes in as
 8   evidence of the enterprise.
 9             THE COURT:  Well, it still does.  But
10   certain evidence cannot be used against certain
11   defendants.
12             MR. LOWRY:  But then how can you use that
13   evidence of enterprise against somebody like Mr.
14   Sanchez, without using the co-conspirator statements
15   that you're not supposed to use against Mr. Sanchez?
16             THE COURT:  We'll just have to tell them
17   that.
18             MR. LOWRY:  Pardon?
19             THE COURT:  We'll just have to tell them
20   that.
21             It's hard.
22             I thought you were next, Mr. Villa.  Come
23   on up.  We'll get -- we'll let Ms. Jacks play cleanup
24   here.
25             Come on up, Mr. Villa.  Did you get new
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    glasses?
 2              MR. VILLA:  I lost a contact, so I'm
 3    wearing glasses.
 4              THE COURT:  I looked over there and didn't
 5    know who that was.
 6              MR. VILLA:  Your Honor, a couple things.  I
 7    guess it strikes me as a bit of unfairness to Mr.
 8    Perez, when the jury is going to hear his statements
 9    to Mr. Cordova.  And the bulk of those statements are
10    really talking about what else everybody else is
11    doing, right?  So he's not talking about how he took
12    pieces from his walker and he made shanks.
13              The whole line of questioning was, you
14    know, who asked him to do that?  Who came and took
15    it?  Who called the shot?  Who is running the pod?
16    So that most of Mr. Perez' statements are, of course,
17    inculpatory to him, but they're inculpatory to the
18    co-defendants, which then, we get to the limiting
19    instruction, which tells the jury -- I don't know how
20    many times, because there is a lot of statements that
21    they're going to have to hear -- just use this
22    against Mr. Perez, use this against Mr. Perez for
23    this specific count or this specific crime.  And it
24    almost is overemphasizing Mr. Perez' guilt when
25    you're telling the jury enough times in the limiting
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    instruction, "just use this against Mr. Perez."  I'm
 2    not quite sure how to deal with that yet.  But it
 3    seems like it's going to be a problem when we get to
 4    that part.
 5            The other issue I want to raise, that I
 6    think is related to the James stuff, is there were a
 7    couple of statements that I identified in a brief --
 8    it's 1514 -- that we argued were not in furtherance
 9    of the conspiracy.  And so I don't think there is any
10    question they occurred.
11            THE COURT:  Mr. Perez' statements to
12    Cordova?
13            MR. VILLA:  No, not Mr. Perez' statements.
14    So there are two statements we're talking about.
15            Number one is the statement we anticipate
16    Timothy Martinez to be testifying about.  He's a
17    cooperating co-defendant.
18            THE COURT:  Would I have that statement in
19    front of me?  Did I bring that briefing with me?  Let
20    me ask Ms. Wild.  Are you on the phone, Ms. Wild?
21    Ms. Wild?
22            MR. VILLA:  I could dig it up and we can
23    deal with it.
24            THE COURT:  Do I have 1514 with me?
25            THE CLERK:  I believe so.  You should.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Where would it be?
 2              THE CLERK:  Give me just a second.  It
 3    would be under tab -- it should have been with the
 4    materials under Tab 8.
 5              THE COURT:  Tab 8 was the 609.
 6              THE CLERK:  Hold on.  Actually, you know
 7    what, you don't have it with you, even though the
 8    response was just filed.  I don't know that you do
 9    have it with you.  That was heard back in December.
10    You don't have it with you right now.
11              MR. VILLA:  Your Honor, Ms. Jacks has the
12    cite to the place where it came up in the transcript,
13    which we can give to you.  And I'll sort of just give
14    you the backdrop.
15              THE COURT:  Why don't you give me the
16    backdrop, then put it on the screen, and let's try to
17    get a ruling on it then.
18              MR. VILLA:  Absolutely.  So just the
19    backdrop is that there is some conversation between
20    Mr. Martinez and Daniel Sanchez about the source of
21    the shanks.  And, apparently, according to Timothy
22    Martinez, Mr. Sanchez says it came from Fat Ass' or
23    Fatso's walker.  What else is he going to do?  And
24    that's a reference to Mr. Perez.  So this, we
25    anticipate Timothy Martinez to be testifying about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    the statement that Daniel Sanchez made.  So it fits
2    under -- I mean, it's not a testimonial statement.
3    But, of course, there isn't going to be an
4    opportunity for Mr. Sanchez to testify about it.
5            But the argument that we made in this
6    particular brief was primarily about whether it's a
7    statement against penal interests.
8            But the argument with respect to James is
9    that it's not in furtherance of the conspiracy.  It
10   doesn't matter, you know, when the shank is being
11   given to Timothy Martinez, it doesn't matter where it
12   came from, how it was made, who provided it to
13   further the conspiracy.
14           And the same issue arises in the other
15   statement we raise in this particular brief, and
16   that's --
17           THE COURT:  Was the statement made after
18   the Molina murder?
19           MR. VILLA:  No, it was before.  So it's
20   strictly a furtherance argument.
21           THE COURT:  And Sanchez made it to
22   Martinez?
23           MR. VILLA:  That's right.
24           THE COURT:  Do you have the statement that
25   you can put on the screen, so we can look at these
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   statements?

 2              MS. JACKS:  I only have the transcript on

 3   my computer.

 4              THE COURT:  What page of your brief is it?

 5              MR. VILLA:  It's on page 1 of the brief, at

 6   the very bottom.  And we're getting the transcript

 7   here set up for you.

 8              So this was brought up during the November

 9   27 to 29 period of time, when we had the James

10   hearing.  So I think, if we get the Elmo up, Your

11   Honor, this might work.  There is a bit of a glare.

12              I believe this is Mr. Acee testifying.

13              MS. JACKS:  For the record, it's November

14   27, 2017, transcript at page 164.

15              THE COURT:  Why would that not come in as a

16   co-conspirator statement that's being made before the

17   Molina murder?

18              MR. VILLA:  Your Honor, because it's not in

19   furtherance of the conspiracy.  And we cite to some

20   of that case law, both in the original James motion

21   that we -- Ms. Fox-Young filed -- as well as this

22   pleading that I referred to.

23              So the Tenth Circuit has talked about

24   statements that are not in furtherance of a

25   conspiracy when they're mere narrative statements
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    relating to past events, even those that are
 2    connected with the operation of the conspiracy, where
 3    the statement serves no immediate or future
 4    conspiratorial purpose.  And that's from United
 5    States v. Wolf, 839 F.2d 1387, Tenth Circuit case.
 6              And there is sort of a string cite there as
 7    well to a Ninth Circuit case, United States v.
 8    Foster, 711 F.2d 871.  It stands for the same
 9    proposition -- and there is a number of other cases
10    in there which I can talk about, if you'd like, Your
11    Honor -- but, you know, the Fourth Circuit, Eighth
12    Circuit, Fifth Circuit, talking about statements that
13    we think are just like this, that really don't
14    further the conspiracy.
15              THE COURT:  Well, it doesn't -- I mean, I
16    thought that's what I said Williamson said.  It
17    doesn't need to, in fact, further a conspiracy.
18              MR. VILLA:  No, I don't think it has to.
19    But it does have to meet that third prong, if you
20    will, of being in furtherance of the conspiracy to be
21    a co-conspirator statement.  So I think there is a
22    line that has to be drawn between --
23              THE COURT:  So this is the statement that
24    Mr. Sanchez (sic) said that Sanchez had obtained the
25    shanks from "Fat Ass," the nickname Sanchez used for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
1    Rudy Perez?  That's the statement?
2               MR. VILLA:  That's right.  That Timothy
3    Martinez would be testifying to the declarant being
4    Daniel Sanchez.
5               THE COURT:  All right.  Unless you've got
6    something else, let me hear from the Government as to
7    how you are trying to get that in.
8               MR. VILLA:  There is one more that's really
9    close.
10              THE COURT:  I know there is one more, but I
11   want to take them one at a time.
12              MR. VILLA:  Okay.  I'm just saying,
13   substantively, it's the same issue.
14              THE COURT:  Well, let me take them one at
15   time.
16              All right.  Mr. Castellano.
17              MR. CASTELLANO:  I've got up on the
18   visualizer a summary from one of our responses, which
19   is Document 1243, at page 5.
20              So in terms of the "in furtherance"
21   discussion, "statements made to induce enlistment or
22   further participation in the group's activities or to
23   prompt further action on the part of the
24   conspirators, to reassure members of the continued
25   existence of the conspiracy, to allay fears," and one
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

```
 1    of them is also "to identify other members of the
 2    conspiracy."
 3             So, in that case, as to Daniel Sanchez,
 4    when Mr. Martinez takes the stand, that's a statement
 5    by a party opponent as it relates to Daniel Sanchez.
 6    But it's also a statement in furtherance of the
 7    conspiracy, because it identifies another member of
 8    the conspiracy was Mr. Perez.  So that clearly
 9    qualifies in the "in furtherance" discussion prong of
10    801(d)(2)(E).  So it could satisfy any of those
11    elements and satisfy the "in furtherance" prong.
12             THE COURT:  Where did Mr. Villa go?
13             MR. VILLA:  I'm here, Your Honor.
14             THE COURT:  That was my first reaction when
15    you first put it up.  I think the timing of it, the
16    statement of it, it's going to fit into what Roberts
17    is talking about there.
18             MR. VILLA:  One thing, I guess I maybe was
19    a little too quick to say that the timing had been
20    established during the course of the James hearing,
21    exactly when it was that Mr. Sanchez said this to
22    Timothy Martinez.  But I think the argument doesn't
23    change, from Mr. Perez' perspective, that this really
24    wasn't necessary to further the conspiracy.  And just
25    so the record is clean, it's the same issue with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    respect to Mario Rodriguez' statement to Jerry

2    Montoya.

3             Now, Mario Rodriguez is going to be

4    testifying.  But Jerry Montoya, who is also a

5    cooperating co-defendant, is going to say that when

6    Mario Rodriguez provided him a shank, that Mario

7    Rodriguez told him it came from Rudy Perez' walker.

8             And, again, our position is that that

9    didn't further the conspiracy in any way, shape, or

10   form.  Jerry Montoya's job was to stab Javier Molina,

11   and it didn't matter the source of the shank.

12            THE COURT:  Would your argument be the

13   same, Mr. Castellano?

14            MR. CASTELLANO:  It is, Your Honor.  And in

15   terms of Alcorta, the more recent case that's come

16   up, there is also a potential for a cover-up of the

17   conspiracy.  So, in other words, a lot of people

18   pointed Corrections to the wheelchair program, when

19   the shank actually came from in the pod.  And so that

20   would be just one more reason.  But the reasons I've

21   already stated in addition to that part, helping to

22   cover up the conspiracy.

23            THE COURT:  Well, I'll take a little closer

24   look.  But I'm inclined to agree with the Government

25   on that, that both of those can be used against Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Perez.  Certainly can be used against Mr. Sanchez.
2    But I think it could also be used under the
3    co-conspirator exception.  Because of the timing of
4    it.  If you find the timing is different, I might
5    think of it more in the sense of what Mr. Perez was
6    saying to Mr. Cordova.
7              But, right at the moment, it sure looks
8    like it's going to fit into that fairly broad Roberts
9    definition of what is furtherance of the conspiracy.
10             MR. VILLA:  We may have to reserve this for
11   when Mr. Martinez actually testifies, because I don't
12   think it was ever clear, from Agent Acee's testimony,
13   exactly when that statement was made to Timothy
14   Martinez.
15             THE COURT:  Just trying to give you as much
16   guidance as I can.
17             MR. VILLA:  I appreciate it, Your Honor.
18             THE COURT:  Thank you, Mr. Villa.
19             Ms. Jacks, do you want to go --
20             MS. JACKS:  I just have something quick.
21             THE COURT:  Okay.
22             MS. JACKS:  I went back and I looked at the
23   Clark decision, because I hadn't read it today.  And
24   I do think that, in Clark, the claim that the
25   defendant made was only based on the Sixth Amendment
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    right to confrontation.  So they didn't even raise
 2    the issue about whether Bruton also recognized and
 3    acknowledged that there was a Fifth Amendment Due
 4    Process right.  So I do think that's a different
 5    argument; that we're making a different argument
 6    here.  And I think, if the Court goes back and looks
 7    at Jackson v. Denno and the cases that have relied
 8    upon it, there is clearly a due process right not to
 9    be convicted with inadmissible evidence.
10            THE COURT:  Are you talking about Clark v.
11    Ohio, the Supreme Court case, or the Tenth Circuit?
12            MS. JACKS:  No, I was talking about the
13    Tenth Circuit; it's the Pump and Dump --
14            THE COURT:  Right.
15            THE REPORTER:  The what?  The who?
16            MS. JACKS:  I'm sorry, the Pump and Dump;
17    it's like a pump and dump stock fraud case.
18            THE COURT:  All right.  Thank you,
19    Ms. Jacks.
20            All right.  I am trying to give as much
21    guidance as I can on the James issues, as much
22    guidance as I can on specific issues.  And the offer
23    still stands to the defendants.  I know it's the
24    Government's burden of proof to establish as the
25    proponent of the evidence to get this in.  But I do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    want to -- you know, if there is some specific things

2    I may be generalizing on, bring up any specific

3    evidence, and we'll make rulings on it.

4              Mr. Adams?

5              MR. ADAMS:  Yes, sir.

6              THE COURT:  How was the weather in

7    Washington when you left?

8              MR. ADAMS:  It was windchill factor of 11

9    degrees.  It was miserable.  I'm very happy to be

10   here.

11             THE COURT:  I left on Friday, and it was

12   not warm.

13             MR. ADAMS:  I hope you didn't have to be

14   outside much.

15             THE COURT:  I had to walk around.

16             MR. ADAMS:  I did walk by the new Trump

17   Hotel.  I moved very quickly going by that one,

18   personally.

19             I think I understand where you're coming

20   from on the broad outlines of the motion.  We have

21   put together -- our team has put together a list of

22   all the various statements that have been referenced.

23   What I would like to do is to not have this

24   necessarily settled and submitted today.  But to take

25   what you said and to be able to sit down with Randy.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   And the ones that I think there might be disagreement
 2   on, to see if we can iron them out.  And then, maybe
 3   tomorrow, bring back ones that we might need further
 4   guidance on.  If that -- I think that would conserve
 5   time, and narrow my need just to hear myself talk.
 6              THE COURT:  All right.  Does that satisfy
 7   you, Mr. Castellano?
 8              MR. CASTELLANO:  That's fine, Your Honor.
 9              THE COURT:  And is this list something that
10   everybody has put together?
11              MR. ADAMS:  We have -- it's not -- it's a
12   working document -- it's not really not suitable for
13   filing.  But we've shared it with everyone.  All the
14   defense lawyers.  We haven't shared it with the
15   Government.
16              THE COURT:  Is everybody comfortable moving
17   on?  My offer stands.  It sounds like it will be
18   picked up tomorrow.  After talking with the
19   Government, we'll maybe pick this issue up again.
20              And, like I said, I know I'm running slow
21   today; I haven't got draft order over to the
22   Government.
23              But I think the Government is getting a
24   picture of what this trial is going to look like.
25   And I think you've got to go to your appellate
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   lawyers, and say, Okay, this is the way he's running
 2   the show over there.  Are we going to defend him, or
 3   not?
 4            So I'll try to get that order out, so you
 5   can get your appellate people going.  But you might
 6   warn them it's coming so they can start looking at
 7   it.
 8            All right.  Let's go to the next issue
 9   then.  We'll move beyond James here.  And we will
10   move to Mr. Baca's motion in limine to prohibit the
11   Government's attorneys from using Rule 405, 608, 609
12   character evidence without judicial approval.  I
13   think we started this hearing in December, that last
14   week we were here.  So this is a resuming of that
15   hearing.  And I'll have to be educated exactly where
16   we are.
17            Mr. Lowry.
18            MR. LOWRY:  Your Honor, I just checked with
19   my colleagues.  I think we finished that.  Especially
20   in light of the 609 conversation today, we're done.
21            THE COURT:  So you feel like I gave
22   sufficient rulings on it; so you've got the guidance
23   you need?
24            MR. LOWRY:  Yes, Your Honor.
25            THE COURT:  Everybody think the same way?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Anybody else need anything else?
2              All right.  So then we're going to move
3    to -- I think this is Ms. Sirignano's motion:  Mr.
4    Garcia's motion, which is the Government's motion --
5    I think that raises the Mario Montoya issue, right?
6              MS. ARMIJO:  Yes, Your Honor.
7              THE COURT:  Anybody else need anything?
8              All right.  So then we're going to move to,
9    I think this is Ms. Sirignano's motion, Mr. Garcia's
10   motion, which I think that raises the Mario Montoya
11   issue, right?
12             Can we make any progress on this without
13   Mr. Montoya here today?
14             MS. SIRIGNANO:  Are you referring to 1330,
15   Your Honor?
16             THE COURT:  1529.  I'm sorry, I should have
17   said.  Isn't this yours, or is this Mr. Baca's?  Is
18   this the unintelligible, irrelevant audio recordings?
19             MS. SIRIGNANO:  This is ours, yes, Your
20   Honor; 1529.
21             THE COURT:  This is what you were going to
22   use Mario Montoya for, right?
23             MS. SIRIGNANO:  Yes, Your Honor.  And Mr.
24   Adams is going to handle it.  But I think that we do
25   need Mr. Montoya here prior to arguing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            THE COURT:  Is that going to be your only
2    evidence on this?
3            MS. SIRIGNANO:  I'm sorry, Judge, I didn't
4    hear you.
5            THE COURT:  Is that going to be your only
6    evidence on this?
7            MS. SIRIGNANO:  I believe Mr. Montoya is
8    going to be the majority of the evidence, yes.
9            THE COURT:  Okay.  Do you have anything
10   else, then?
11           MR. ADAMS:  No, sir.  And I don't think
12   that will be extensive.  I think that will be a small
13   part of --
14           THE COURT:  So you think we need to move
15   this down, then, the list?
16           MR. ADAMS:  We can move it whenever.  As a
17   lawyer, whatever please the Court, my understanding
18   is his lawyer couldn't be here till tomorrow morning.
19   So we'll be ready to roll then, and it should not --
20           THE COURT:  Is he here?
21           MR. ADAMS:  He is apparently in New Mexico,
22   and in Las Cruces, so we should be able to --
23           MS. ARMIJO:  When you say "he," who?
24           THE COURT:  Mario Montoya.
25           MS. ARMIJO:  Mr. Montoya is in New Mexico,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and will be available here in Las Cruces tomorrow.
 2              THE COURT:  Okay.  Mr. Keefe is his lawyer,
 3    right?
 4              MS. ARMIJO:  Mr. Keefe is his lawyer.
 5    There was a lot of back and forth well into the
 6    evening yesterday, and last night about where he was
 7    going to be initialed, and everything else.  And so
 8    we had just planned on having him here on Wednesday
 9    for testimony.  But we did manage to get him
10    initialed.  And Mr. Keefe is coming.  I don't know if
11    he's coming up this afternoon or tomorrow.  But Mr.
12    Montoya is not in the building.
13              THE COURT:  Is he in town?
14              MS. ARMIJO:  I don't want to say where he's
15    located.  Because this morning he received threats
16    from some of these defendants.  So I really would not
17    like to say where he's at.
18              THE COURT:  Come on guys, behave, behave.
19              All right.  So we're going to move this to
20    the bottom?
21              MS. SIRIGNANO:  There is two motions, Your
22    Honor, yes.
23              THE COURT:  So there is two more, one is
24    the sealed opposed motion to dismiss and request
25    for -- that's number 12 -- and that is also your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   motion?  Are we ready to take it up?
 2             MS. SIRIGNANO:  Yes, Your Honor.
 3             THE COURT:  This is 1330, this is Ms.
 4   Sirignano's sealed motion to dismiss and request for
 5   an evidentiary hearing.  I think several people
 6   joined Mr. Garcia's motion.
 7             MS. SIRIGNANO:  Your Honor, there is two.
 8   We filed, the one we just spoke of, which is 1529,
 9   the motion to suppress --
10             THE COURT:  Right.
11             MS. SIRIGNANO:  -- and the other one, is
12   1330, where the Government's response is 1400.  And
13   then I filed 1612 over the weekend out of time, but
14   with Mr. Beck's permission.  It was the
15   destruction --
16             THE COURT:  That's the reply, right?
17             MS. SIRIGNANO:  Correct, the reply.  Yes,
18   Your Honor.
19             Your Honor, I do need to have Mr.
20   Montoya --
21             THE COURT:  For both those motions?
22             MS. SIRIGNANO:  Yes, I do, Your Honor.
23             THE COURT:  All right.  Then let's go to
24   the motion for pretrial rulings on pretrial
25   evidentiary objections to exhibits.  This is, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    believe, Mr. Davidson, your motion.
 2              MR. DAVIDSON:  Yes, Your Honor.  This was
 3    my motion.  I'm referring to it in the past tense
 4    because I think it's obviated by the pretrial
 5    conference.  We wanted to establish a procedure
 6    whereby the Government would provide a list of
 7    exhibits, and there would be a schedule for lodging
 8    objections, and back and forth.  But I think the
 9    pretrial conference --
10              THE COURT:  Setting those deadlines.
11              MR. DAVIDSON:  Yeah.  So this goes away.
12    And I talked to the Government about that.
13              THE COURT:  Can I get you, then, to
14    withdraw this?
15              MR. DAVIDSON:  Sure.  I'll file a notice of
16    withdrawal.
17              THE COURT:  Any objection?  The Government,
18    no?  All right.  So just file a notice.  You don't
19    need to file another motion.  But just file a notice
20    withdrawing that.
21              MR. DAVIDSON:  Will do.
22              THE COURT:  Ms. Wild, are you there?
23    Ms. Wild?
24              THE CLERK:  Yes.
25              THE COURT:  Thoughts?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE CLERK:  Can you hear me?
 2              THE COURT:  Yes, I can hear you.  Thoughts?
 3              THE CLERK:  This is it.  This is all that
 4    I'm aware of.
 5              THE COURT:  Well, let me do this.  Let me
 6    ask you, Ms. Wild, would this be a good time to begin
 7    to go over the security issues, some of the nuts and
 8    bolts of trying this case, if we're going to just
 9    take up two motions in the morning?
10              THE CLERK:  It would be.  But if I could
11    have a few minutes of your time before you start
12    through that, I think it may be more productive and
13    less disjointed.
14              THE COURT:  Okay.  Let me, then, use this
15    time -- and it looks like Mr. Castellano may be doing
16    this as well -- before we take a break, why don't I
17    see if there are any other issues that we need to
18    take up other than nuts and bolts, security issues,
19    and things like that, that I made some rulings on.
20    Mick was here and he listened to them, and then we
21    had some going back and forth.  So I'm ready to
22    pronounce some things about how we're going to try
23    this case.
24              I'd love to say there is not going to be
25    any pushback, but I'm not that optimistic.  But maybe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    we can come to an agreement how we're going to try
2    this case.  But before we take a break so I can talk
3    to Ms. Wild about the finishing touches on that, and
4    taking up two motions in the morning, I want to see
5    if there are any other issues we need to discuss
6    before we go to trial.
7              Let me start with the Government.  Mr.
8    Castellano?
9              MR. CASTELLANO:  Yes, Your Honor.  We are
10   waiting for the Court's order regarding the tablets
11   so that the Corrections Department can -- well,
12   they've already seized the tablets, so they can do
13   the analysis on the tablets so we can turn that over
14   to the defense counsel.
15             THE COURT:  Is it an order that's on my
16   desk to be signed?  What is that?
17             MR. CASTELLANO:  I don't know the status of
18   the order.  I just know we're waiting for an order
19   which allows the Corrections Department or someone
20   else to do a forensic analysis of the tablets.
21             THE COURT:  Did y'all prepare an order for
22   me to sign?
23             MR. CASTELLANO:  No one has prepared an
24   order.  The only thing I remember the Court saying
25   was that the Court would issue an order.  But there
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   was no instructions for anyone to necessarily forward
 2   one to the Court.  So it is outstanding.
 3           THE COURT:  Can I get you to prepare an
 4   order and submit it to me?
 5           MR. CASTELLANO:  Yes.  We'll put together
 6   something, yes.
 7           THE COURT:  I don't recall that.  That
 8   doesn't mean it didn't happen, but I don't recall it.
 9   So why don't y'all prepare an order and get it to me.
10           All right.  How about other things?
11   Mr. Jewkes?
12           MR. JEWKES:  Your Honor, would today be an
13   opportune time to do the conflict issue regarding
14   Daniel Sanchez, as far as Billy Blackburn
15   representing Mr. Garcia?
16           THE COURT:  Is Mr. Blackburn going to be
17   here tomorrow?
18           MR. DAVIDSON:  No, Your Honor.  But I
19   talked with Mr. Blackburn, and I talked with
20   Mr. Garcia.  I think we can go ahead with that.
21           THE COURT:  All right.  Let me see if I can
22   find that motion so I refresh my memory about that.
23           Ms. Wild, was there anything under my Tab
24   5, or was that just a placeholder?
25           THE CLERK:  It was a placeholder.  All of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    that information was, I believe, collapsed together

 2    under 3.  It's just going to be that single sheet.

 3              THE COURT:  All right.  Mr. Davidson, why

 4    don't you remind me of what it was Mr. Blackburn

 5    represented Mr. Sanchez on previously, the nature of

 6    that?

 7              MR. DAVIDSON:  Yes, Your Honor.  There was

 8    a state habeas corpus involving Mr. Sanchez and his

 9    brother, Ronald Sanchez.  There was very little

10    contact between Mr. Blackburn and Daniel Sanchez.

11    Mr. Blackburn's involvement was the habeas.  He

12    wasn't involved in the trial.  That was handled by

13    two state public defenders.

14              Then, Gary Mitchell did an appeal.  And

15    after that the two defendants hired Mr. Blackburn.

16    His primary contact was Mr. Sanchez' brother's wife.

17    And my understanding, there was only several

18    conversations with Mr. Daniel Sanchez.  And they

19    basically involved when was there going to be an

20    evidentiary hearing on the habeas petition?

21              And then, there was a substitution of

22    counsel.  And the Sanchez brothers had hired John

23    Damato, and then he continued with the habeas

24    representation.

25              So Mr. Blackburn had prepared and filed a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    habeas petition, filed that.  There may have been
2    some briefing.  But he didn't conduct the evidentiary
3    hearing, had very limited involvement with Mr.
4    Sanchez.  And I understand it wasn't about anything
5    about the underlying facts of the case.  There
6    weren't any sort of client confidences in that sense
7    disclosed to Mr. Blackburn by Mr. Sanchez.
8              THE COURT:  Okay.  Is that your
9    understanding as well, Mr. Jewkes?
10             MR. JEWKES:  That's correct, Your Honor.
11             THE COURT:  All right.  Mr. Sanchez, why --
12   do you want say something else?
13             All right.  Mr. Sanchez, if I can get you
14   to maybe stand up so I can just see you and eyeball
15   you here as we talk.
16             Did you want to say something, Mr. Jewkes,
17   before we start?
18             MR. JEWKES:  I was going to get the
19   microphone.
20             MS. ARMIJO:  Your Honor, if I may just add,
21   I believe Mr. Gary Mitchell also represented him on
22   the same matter before Mr. Blackburn.  And so I
23   believe the waiver should be also as to, not only Mr.
24   Blackburn, but also as to Mr. Mitchell.
25             And Mr. Mitchell represents Jerry Armenta,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    who is going to be testifying.
2              THE COURT:  Okay.  Is he prepared to waive
3    it as to both of them?  Mr. Mitchell as well?
4              MR. JEWKES:  We haven't discussed that as
5    far as the potential conflict with Mr. Mitchell, Your
6    Honor.
7              THE COURT:  Why don't I just take it a step
8    at a time.  Let's get it as to Mr. Blackburn.  Then
9    we'll tackle the one down the road when you're ready
10   to go, or if it needs to be done.
11             Mr. Sanchez, do you understand that your
12   former attorney, Mr. Blackburn -- you know who Mr.
13   Blackburn is?  He sits over here with Mr. Garcia?
14   You understand who he is and where he is?  You've
15   been working with him?
16             THE DEFENDANT:  Yeah.
17             THE COURT:  You know who he is.
18             And you understand that he's currently
19   representing Mr. Arturo Garcia over here in the
20   corner of this table?
21             THE DEFENDANT:  Yeah, I do.
22             THE COURT:  And do you understand that Mr.
23   Blackburn still owes duties of loyalty to you,
24   including not to reveal information told to him in
25   confidence?  Do you understand he has all that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                 THE DEFENDANT:  Yeah, I do.

 2                 THE COURT:  And do you understand that

 3     Mr. Blackburn, in order to zealously represent on

 4     behalf of Mr. Arturo Garcia, he may have to make

 5     arguments that we don't know for certain how it could

 6     happen, but it could happen that he has to make

 7     arguments in representing Mr. Garcia that are

 8     detrimental to your defense?  Do you understand that?

 9                 THE DEFENDANT:  Yeah, I do.

10                 THE COURT:  And has your attorney reviewed

11     with you this situation?

12                 THE DEFENDANT:  Yes, he has, Your Honor.

13                 THE COURT:  And do you understand that, if

14     you choose to testify, or, you know, if you were to,

15     down the road, plea or something, and cooperate with

16     the Government, it could turn out that Mr. Blackburn

17     may have to cross-examine you in an adversarial

18     manner?  Do you know that could possibly happen?

19                 THE DEFENDANT:  Yeah, I do.

20                 THE COURT:  All right.  And Mr. Jewkes, if

21     you would get the form that I circulated on Monday.

22     Do you have it in front of you?  Do you have one

23     that --

24                 MR. JEWKES:  I do, Your Honor.  And I have

25     it signed.  May I approach the courtroom deputy?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  You may.
 2                And let me ask you, before you bring it up,
 3      Mr. Jewkes.  Is that your signature on that waiver,
 4      that written waiver?
 5                THE DEFENDANT:  Yes, it is, Your Honor.
 6                THE COURT:  And you reviewed it with
 7      Mr. Jewkes?
 8                THE DEFENDANT:  Yes, I have.
 9                THE COURT:  And you waive any sort of
10      conflict here?
11                THE DEFENDANT:  Yes, I do.
12                THE COURT:  All right.  I'm going to ask
13      you a broad question, so think about it very
14      carefully here.  Knowing that a potential conflict
15      may later materialize between Mr. Blackburn's duties
16      to Mr. Garcia and the risks associated with his
17      continued representation of Mr. Garcia, do you wish
18      to waive that conflict?
19                THE DEFENDANT:  Yes, I do, Your Honor.
20                THE COURT:  Do you understand what that
21      means?  You're been apprised of all the risks and
22      problems with it?
23                THE DEFENDANT:  Yes.
24                THE COURT:  You still want to do it?
25                THE DEFENDANT:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1              THE COURT:  All right.  Anything else on
 2      that, Mr. Jewkes?
 3              MR. JEWKES:  No, Your Honor.
 4              THE COURT:  Anything else, Ms. Armijo?
 5              MS. ARMIJO:  No, Your Honor, not as to that
 6      conflict.
 7              THE COURT:  How about you, Mr. Davidson?
 8              MR. DAVIDSON:  Nothing else, Your Honor.
 9              THE COURT:  All right.  Mr. Jewkes, you can
10      approach, and we'll mark that as Exhibit A to this
11      colloquy.
12              And Mr. Garcia, do you understand that you
13      have a right to a conflict-free attorney?  We've been
14      talking about that over the last couple of days, and
15      you've been here.  Do you understand what that means?
16              THE DEFENDANT:  Yes.
17              THE COURT:  You have the right to have an
18      attorney that just represents you and just represents
19      your interests.  Do you understand that?
20              THE DEFENDANT:  Yes.
21              THE COURT:  And do you understand all the
22      facts we've been talking about, the representations
23      of Mr. Blackburn, of Mr. Sanchez?  Do you understand
24      all those circumstances?
25              THE DEFENDANT:  Yes, I do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

```
1              THE COURT:  Those have been explained to
2     you by Mr. Davidson and Mr. Blackburn?
3              THE DEFENDANT:  Yeah.
4              THE COURT:  So you understand what Mr.
5     Blackburn's previous representation of Mr. Sanchez
6     involved?  And as I understand it -- correct me if
7     I'm wrong -- anybody -- that this was an unrelated
8     criminal case; correct?
9              THE DEFENDANT:  That's what I understand.
10             THE COURT:  Is that your understanding,
11    Mr. Davidson?
12             MR. DAVIDSON:  Yes, Your Honor.
13             THE COURT:  Yours as well, Mr. Jewkes?
14             MR. JEWKES:  Yes, Your Honor.
15             THE COURT:  Do you understand that Mr.
16    Blackburn may have duties of loyalty stemming from
17    his previous relationship with Mr. Sanchez; that he
18    may still have some duties to keep some things
19    confidential?  Do you understand that?
20             THE DEFENDANT:  Yes.
21             THE COURT:  Do you understand that Mr.
22    Blackburn's duties to Mr. Sanchez may impact his
23    representation of you, should he, all of a sudden,
24    recall some pertinent information that he learned
25    during the course of his relation of Mr. Sanchez.  He
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

204

```
 1    may not by thinking of anything now, but he may
 2    remember it when we're in the middle of the trial, or
 3    something, that he got some information from Mr.
 4    Sanchez?  Do you understand that could happen?
 5                THE DEFENDANT:  Yes.
 6                THE COURT:  Do you understand there is a
 7    risk that Mr. Blackburn will have to choose at some
 8    point between his duty of loyalty to Mr. Sanchez and
 9    his duty to zealously advocate for you?  Do you
10    understand that could happen down the road?
11                THE DEFENDANT:  Yes.
12                THE COURT:  And if Mr. Blackburn chooses,
13    at some point -- or excuse me, Mr. Sanchez chooses at
14    some point to cooperate or to testify, or something,
15    Mr. Blackburn may be forced to examine Mr. Sanchez.
16    And his duty of loyalty to him may affect his
17    performance.  Do you understand that?
18                THE DEFENDANT:  Yes, I do, Judge.
19                THE COURT:  And additionally, Mr.
20    Blackburn's duties to Mr. Sanchez may affect trial
21    strategies, including arguments regarding relative
22    culpability among the defendants here.  Do you
23    understand that could happen?
24                THE DEFENDANT:  Yes.
25                THE COURT:  And, Mr. Davidson, did you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    prepare a waiver for Mr. Garcia to sign?
2              MR. DAVIDSON:  We don't have that right
3    now, Your Honor.
4              THE COURT:  All right.  Will you get the
5    form that was circulating at the back of the
6    courtroom on Monday, that will go to the one that was
7    not previously represented, and get that marked up,
8    and present it to me?
9              MR. DAVIDSON:  I will, Your Honor.
10             THE COURT:  When we do, we'll complete the
11   colloquy.  Has Mr. Davidson or Mr. Blackburn --
12   particularly Mr. Davidson gone over this potential
13   conflict with you, Mr. Garcia?
14             THE DEFENDANT:  Yes, he has.
15             THE COURT:  Knowing that the conflict may
16   arise in the future and the risk of such a conflict,
17   Mr. Garcia, do you still wish to waive that conflict
18   and continue with Mr. Blackburn as your attorney?
19             THE DEFENDANT:  Yes, Your Honor.
20             THE COURT:  All right.  Anything else on
21   that issue, Ms. Armijo?
22             MS. ARMIJO:  No, Your Honor.
23             THE COURT:  Mr. Jewkes?
24             MR. JEWKES:  No, Your Honor.
25             THE COURT:  Mr. Davidson?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. DAVIDSON:  No, Your Honor.
 2            THE COURT:  All right.  If you'll complete
 3    that the form and get it filed, and we'll complete
 4    the colloquy.
 5            All right.  What else are we going to need
 6    to discuss?  We're going to take our break here
 7    pretty quickly.  But is there anything else we need
 8    to put on the agenda, Ms. Jacks?
 9            I'll get Ms. Jacks, then I'll come back to
10    you, Ms. Duncan.
11            MS. JACKS:  I just have a quick thing.
12            THE COURT:  All right.
13            MS. JACKS:  I think back on November 27, we
14    had the discussion about the Government's supposed
15    gang experts.  We did get to examine one.  I think
16    there was a discussion on November 27, that if they
17    were going to offer them for some other purpose, Mr.
18    Beck had said they were going to supply some
19    additional notice, which we haven't received.  I'm
20    not quite sure where we stand on that issue.
21            THE COURT:  All right.  Mr. Beck?
22            MR. BECK:  I think where we stood was that
23    if we were going to offer them for some other
24    purpose, we'd provide them notice.  And then we went
25    forward, not providing them for another purpose.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1          THE COURT:  All right.  So that's where it
2     stands?  Is that satisfactory, Ms. Jacks?
3          MS. JACKS:  I'm still not sure if they're
4     going to be called, and if so, for what.  Because we
5     haven't finished the Rodriguez hearing; there was an
6     objection -- we didn't know the basis of their
7     opinions, or what their opinions, for that matter,
8     were.
9          THE COURT:  Well, I gave a ruling what they
10    could testify and what they couldn't testify on.  Is
11    there any uncertainty as to --
12         MS. JACKS:  There is, because on November
13    27, you gave an indicated ruling, and the Government
14    said they didn't want to abide by that.  And then we
15    jumped into the Rodriguez/Daubert hearing on November
16    28, which they called one witness, Ron Martin.  And
17    since then, we have never taken it back up.
18         THE COURT:  Okay.  Are you willing to just
19    stand by the decision I gave on how we're going to
20    use experts, on gang experts?
21         MR. BECK:  I think that we gave it a run to
22    try to change the Court's mind.  And I think since
23    then, the Court has just dug in deeper.  So --
24         THE COURT:  All right.  So is that clear
25    enough then, Ms. Jacks?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. JACKS:  It's actually not.  Because I

2    think, on November 27, when the Court gave its

3    ruling, what we said is, Hey, even if the Government

4    is going to offer them for a different purpose, such

5    as just general gang experts, we're still entitled to

6    Rule 16 notice that spells out what their opinions

7    are and the bases for that opinion.

8          And Mr. Beck, at that point -- this was

9    prior to lunch -- this is at page 84 of the

10   transcript from November 27 -- said, "I think we can

11   draft a similar Rule 16 disclosure to what we have in

12   there, where they give the generic type of opinions

13   this Court will allow at the hearing."

14         And I think we're still entitled to that,

15   and object if they're going to proceed without doing

16   that.

17         THE COURT:  Any thoughts on that, Mr. Beck?

18         MR. BECK:  Yeah.  That was put in the

19   context I was just speaking about.  That was earlier,

20   before we decided to go ahead with the Rodriguez

21   hearing, and put them on, and put Agent Martin on and

22   allow his testimony.

23         THE COURT:  Well, you've gotten basically a

24   deposition of him.  What more do you need?

25         MS. JACKS:  What we got, I think, was an

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492
                                                                   e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    indication that everything -- what we need is the

2    opinions the Government is planning to offer at

3    trial, the expert that those opinions are coming

4    from, and the bases of those opinions.

5            THE COURT:  Didn't you get that with the

6    deposition that you got here?

7            MS. JACKS:  Well, with Mr. Martin what we

8    got was he was being offered as an SNM expert.  And

9    everything he knew or said was based on hearsay.  We

10   don't have anything.  So what we got was -- I don't

11   think there is anything that Martin presented that

12   was admissible expert testimony.  And I think his

13   testimony seriously called into his qualifications of

14   being a, quote, "expert."  I think we have two other

15   proffered experts that we've heard nothing of, other

16   than that they appear to have submitted a very

17   similar resume to that that Mr. Martin submitted.

18           THE COURT:  All right.  Well, let's take a

19   break.  I need to give Ms. Bean a break, and we'll

20   come back in and finish this up.  Y'all might talk

21   just a little bit and see if we can figure out maybe

22   how to get the needs of the defendants.  But I'm

23   inclined to think that if they testified here, the

24   defendants has got a pretty good indication of what

25   their opinions are going to be and what their
```

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                          1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    qualifications are, and the basis for them.

2          I may still have to have a little bit more

3    information about some of their statements to allow

4    them to testify, if they just got their statements

5    from things being told to them.  But if some of it

6    comes from experience, I think there can be gang

7    experts, and they can have some general experience.

8    So I'm not going to probably require a whole lot

9    more, given that they testified here.

10         But let's take our break.  And we'll come

11   back in and discuss it after the break.

12         (The Court stood in recess.)

13         THE COURT:  All right.  We'll go back on

14   the record, assuming everybody has an attorney here.

15         Let me do something I intended to do

16   earlier, and I focused on the co-conspirator

17   exception.

18         Let me give you a little guidance as we go

19   into trial on the -- it looks to me -- I think the

20   estimate, Ms. Sirignano, that you gave to Ms. Wild

21   was that you thought that the two motions that we are

22   putting at the bottom, for Mr. Montoya, are going to

23   be -- take about a half day; no more than a half day.

24   I think was what was said; is that correct?

25         MS. SIRIGNANO:  I think that's right, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Honor.
2              THE COURT:  Okay.  So I think I'm going
3    to -- if this is any help to anybody else, I'm going
4    to go ahead and cancel my hotel reservations for
5    tomorrow night and the rest of the week.  I don't
6    know what everybody else has got, but if that's of
7    any help to y'all; looks like we're going to be out
8    of here -- if it's going to be a half day, I may get
9    on back up to Albuquerque.
10             All right.  Ms. Jacks, Mr. Beck, during the
11   break, did y'all have a chance to see if you need any
12   more on the Government's gang experts?
13             MR. CASTLE:  Your Honor, I talked to Mr.
14   Beck.
15             THE COURT:  Okay.
16             MR. CASTLE:  And I think -- I can't
17   represent all the defendants, there might be some
18   disagreement -- but I think he was going to put on
19   the record what he thought the limitations were that
20   the Court imposed on the Government, and hopefully,
21   that will resolve it, but I'm not sure --
22             THE COURT:  Okay.
23             MR. CASTLE:  -- it works for everyone.
24             THE COURT:  You want to try that, Mr. Beck?
25             MR. BECK:  I can try, Your Honor.  I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Your Honor's ruling was that the expert -- the gang

2   experts will be able to testify to their experience

3   and opinions about prison gangs generally, about the

4   way that they operate, about the structure that they

5   have, the ways in which they can communicate inside

6   and outside prisons, the way in which they operate,

7   bringing in or secreting drugs in the prisons, the

8   ways in which they retaliate against persons who

9   cooperate with law enforcement, and those general

10  brief areas.

11          Gang experts will not be allowed to testify

12  about the SNM particularly.  I think that's probably

13  the contours of the Court's ruling.  So I think

14  that's how we intend to proceed with our experts, and

15  how the Court outlined the way in which the Court

16  would allow us to proceed.

17          THE COURT:  Okay.  That's my memory of what

18  I said on that.

19          And what more do you need, Ms. Jacks, on --

20  to do your job?

21          MS. JACKS:  Well, I think it would be

22  useful to know the names of the experts, and the

23  bases, or what helps them form those opinions.

24          THE COURT:  What's your thoughts on that,

25  Mr. Beck?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1          MR. BECK:  Well, I think that's covered in

2    our original notice.  It's the same experts that were

3    originally noticed, qualifications have remained the

4    same, and the bases of their opinions is still their

5    experience outlined in their CVs.

6          THE COURT:  Refresh my memory as to who

7    testified.

8          MR. BECK:  Ron Martin testified.

9          THE COURT:  He was the only one?

10          MR. BECK:  He was only one.

11          THE COURT:  How many experts do you have?

12          MR. BECK:  We noticed three experts.  I

13    think we intend to call only one per trial.

14          THE COURT:  Do you know which one you're

15    calling for Ms. Jacks' trial?

16          MR. BECK:  I don't think we do yet.  I

17    don't think we've decided on that.

18          THE COURT:  Let's do this:  I think that

19    the defendants has got a pretty robust picture of Mr.

20    Adams(sic), so I think that that's sufficient, what

21    you provided.  For the other two, I think you now

22    need to go back in, with what we're going to do in a

23    limited way, and provide more information about them.

24    So if you call Mr. Adams, they've got to Daubert him.

25    But on the other two, I think you need to provide

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                1-800-669-9492



```
 1   more information on the basis of their testimony and
 2   also what they're going to testify about.  If it's
 3   those topics, just list them out, say that's the
 4   limit of it then, give the basis of it, how they got
 5   that information.
 6            They do have CVs on these other two?
 7            MR. BECK:  They do.
 8            THE COURT:  Okay.  Anything else on that,
 9   Ms. Jacks?
10            MS. JACKS:  Judge, I think the name of the
11   expert was Ron Martin; correct?
12            THE COURT:  Ron Martin, okay.
13            Anything else on that, Ms. Jacks?
14            MS. JACKS:  No.
15            THE COURT:  Does that get you what you
16   need?
17            MS. SIRIGNANO:  Your Honor, I just would
18   like a deadline for this disclosure.
19            THE COURT:  When can you have that?  When
20   is your deadline, Mr. Beck, for just witnesses?
21            MR. BECK:  Friday.
22            THE COURT:  Could you just pick one by that
23   date for the first group and give it to them?
24            MR. BECK:  I mean, we can -- they'll have
25   the name of the expert who may testify that we can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   get a notice out by then, because we've got a lot on

2   our plate by then.

3            THE COURT:  Do you want to propose a

4   deadline for getting them information on the experts?

5            MR. BECK:  Sure.  We can say Friday, the

6   19th.

7            THE COURT:  Would that work for the

8   defendants?

9            MS. SIRIGNANO:  I'm sorry?  What day?

10            THE COURT:  19th.

11            MS. SIRIGNANO:  Your Honor, I'd like to

12   have it by this Friday.  Because if it's not

13   Mr. Martin, who we literally spent an entire day and

14   a half on, we'll probably have a request for a

15   Daubert hearing.  The Government chose to put all

16   three experts on its amended notice in a cumulative

17   nature, and noticed them all up, saying the exact

18   same thing.  And as we saw at Mr. Martin's hearing,

19   their resumes are nearly identical.

20            So I'd like to know specifically, whatever

21   expert they decide they're going to use, I'd like to

22   know who it is right away, and this way we can

23   proceed with a hearing.

24            THE COURT:  Well, let's do it by the end of

25   business on the 16th.  That will give us a little bit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of breathing room, give us nine days to see what

2    we've got to do. I would think that there is not

3    going to be a whole lot of difference between these

4    experts, given how much I've cut them back.  I would

5    think they'd be pretty much like y'all's experts.  So

6    they're going to be pretty fungible.  But it's not

7    going to be really a Daubert hearing, because I've

8    already made a determination that these opinions --

9         MS. SIRIGNANO:  My concern, Your Honor, is

10   whether or not they're truly percipient or fact

11   witnesses, or really if they truly are experts, as we

12   learned from Mr. Martin.  I don't believe he would

13   fall in that expert category at all.

14        THE COURT:  I'm not sure that's a Daubert

15   opinion.  That's not the purpose of Daubert.  That

16   may go to, you know, whether he can be a conduit for

17   hearsay.  But that may be something we have to sort

18   out at trial.  But I'm not sure the opinions he's

19   offering -- I think it sounds to me like it would be

20   the same opinions that your experts would offer.  So

21   it sounds to me like they're not going to differ a

22   whole lot.

23        MS. SIRIGNANO:  Well, that I don't know.

24   And I think Ms. Bhalla wanted to get some

25   clarification on whether or not the defense is going

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to offer a gang expert based on the hearing with her
 2    expert, or the defense expert.  So I'll leave that to
 3    her, Judge.  Thank you.
 4             THE COURT:  That you're not going to offer
 5    a gang expert, is that what you said?
 6             MS. BHALLA:  No, Your Honor.  I think the
 7    clarification I was seeking from the Court was that,
 8    I think the restrictions that the Court has laid out
 9    for the Government are fairly clear.  And I would
10    just assume that the same restrictions apply to our
11    expert, Mr. McReynolds.  And I just wanted to seek
12    clarification on that issue.
13             THE COURT:  Yeah, I don't think that
14    probably I'm going to allow your expert to come in
15    and start testifying about the SNM Gang.  Is that --
16             MS. BHALLA:  Right.  And we don't
17    anticipate doing that anyway, Your Honor.  I just
18    wanted to make sure.  We've already amended our
19    expert notice as well.
20             THE COURT:  Okay.  Did you have something
21    else, Mr. Beck?
22             MR. BECK:  Yeah, I was just going to say
23    that I think we've already litigated the conduit for
24    hearsay, and I think that was the basis of the Court
25    restricting the experts in such a limited fashion,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that once we get into generalities about prison gangs
 2    generally and the way that they operate generally, it
 3    takes out that possibility that they could just be
 4    conduits for hearsay.
 5              I'm inclined to agree.  But there could be
 6    some specific thing.  I'm not precluding the
 7    defendants from raising an objection to a particular
 8    question or area.  But I tend to agree that we're
 9    going to start with the assumption that these guys
10    got so much experience in the field and their jobs
11    that they're not just a conduit for something that
12    one person told them or something.
13              MR. BECK:  Right.
14              THE COURT:  All right.  Anything else on
15    experts?
16              How about any other issues, since we're
17    going to have these two motions tomorrow?  Anything
18    else, Ms. Duncan?
19              MS. DUNCAN:  Your Honor, I had three quick
20    issues.  The first is I have a waiver signed by Mr.
21    Baca related to the conflict issue, if I could
22    approach.
23              THE COURT:  All right.  Mr. Baca, Ms.
24    Duncan is holding that.  Did you review that document
25    with your attorneys?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE DEFENDANT:  Yes, I did review it.
 2              THE COURT:  Did you specifically review it
 3    with Ms. Duncan?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  And that's your signature on
 6    it?  You signed it?
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  You reviewed it with her?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  All right.  Let's mark it as
11    Exhibit A to that colloquy.  So it will be Anthony
12    Baca's Exhibit A.
13              I assume there is no objection to that, Ms.
14    Armijo?
15              MS. ARMIJO:  No, Your Honor.
16              THE COURT:  Anybody else?  All right.  It
17    will be admitted into evidence.
18              MS. DUNCAN:  My second issue is sort of a
19    housekeeping kind of thing.  We wanted to orally move
20    for an order permitting paralegals, investigators for
21    the defense, to bring their cellphones into the
22    courthouse to help the defense lawyers to coordinate
23    with witnesses and other issues during the trial.
24    It's my understanding that the Government doesn't
25    object to that motion.  So what I'd like to propose
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to the Court is that the defense teams work together
 2    to come up with an order listing the specific people
 3    to whom it would pertain.  And we'll share that with
 4    the Government before submitting it to the Court.
 5              THE COURT:  Do you see any problem on that
 6    issue, Ms. Wild?  Ms. Wild, is your speaker on -- or
 7    mute button on?
 8              THE CLERK:  I think that it may have to be
 9    approved by the Chief Judge.  But I'm not sure,
10    Judge.
11              THE COURT:  Okay.  Mick, do you see any
12    problem with it?
13              MR. MICKENDROW:  No, Your Honor.
14              THE COURT:  Okay.  Well, subject to
15    approval by the Chief, then it's fine with me.
16              MS. DUNCAN:  Thank you, Your Honor.
17              Then one other issue I wanted to put on the
18    record.  We received some discovery related to Eric
19    Duran and cooperating witness, Mario Montoya, today
20    from the Government.  There are reports about recent
21    charges and offenses allegedly committed by those two
22    witnesses.  The discovery is redacted.  For example,
23    the name of the law enforcement agency investigating
24    those crimes, locations of the crimes, the locations
25    where these witnesses were arrested have been
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    redacted.  I've spoken with the Government, and I
 2    think we've reached agreement that the Government
 3    will produce copies of that discovery with that kind
 4    of information unredacted by the end of this week.
 5    But they will maintain redaction of personal
 6    identifying information such as Social Security
 7    numbers and dates of birth, which we do not object
 8    to.  So I just wanted to have that on the record.
 9              THE COURT:  All right.  Is that your
10    understanding, Ms. Armijo?
11              MS. ARMIJO:  As well as any location
12    information as to them as well, plus their
13    residences.
14              MS. DUNCAN:  Yeah, we're fine with the
15    residences.  Just the places where the offenses were
16    allegedly committed or they were arrested.
17              MS. ARMIJO:  That's fine.
18              THE COURT:  Anybody else have any problem
19    with that?  All right.  So ordered.
20              MS. DUNCAN:  Thank you, Your Honor.
21              THE COURT:  Any other issues, Ms.
22    Sirignano?
23              MS. SIRIGNANO:  Yes, Your Honor.  We filed
24    a notice, Document 1468; it was the motions that were
25    filed in Mr. Garcia's drug case.  So we were just
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

222

```
 1   wanting to remind the Court that -- I know you ruled
 2   on the motion to suppress the first 18 minutes of his
 3   post-arrest statement.  But I was wondering, or
 4   inquiring, whether the Court was going to rule on
 5   those other motions?
 6              THE COURT:  Well, I may not get formal
 7   opinions out.  But I thought at the time I denied
 8   both of them.  I thought I gave fairly clear rulings
 9   on those.  The only one that I had thought a little
10   bit more about was the Miranda one.  I'll try and get
11   to them, give you something more formal.  But the
12   others, I thought I had been clear that they were
13   denied.  But when Mr. Adams reminded me for purposes
14   of going to trial, this is what we would do.
15   Anything more on that?
16              MS. SIRIGNANO:  No, Judge.  I just needed
17   that clarification.
18              The other thing was I filed a motion for
19   free process with an order, and I just would like --
20              THE COURT:  When did you file that?
21              MS. SIRIGNANO:  I filed it within the last
22   10 days, maybe a week or so.
23              THE COURT:  Ms. Wild, do I have that?  Is
24   that something I brought with me that I haven't
25   entered yet?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE CLERK:  You do.
 2              THE COURT:  Do you happen to know, either
 3    Ms. Wild or Ms. Sirignano, what number it is?
 4              THE CLERK:  I believe it's Document 1599.
 5              THE COURT:  Does that look like your number
 6    as well, Ms. Sirignano?
 7              MS. SIRIGNANO:  Your Honor, we're pulling
 8    it up here.  I'm sorry.
 9              THE COURT:  Ms. Wild, do you want me to
10    bring this back to Albuquerque, or do you want me to
11    hand it to Ms. Standridge?
12              THE CLERK:  Please bring it back up.
13              THE COURT:  So I have signed it.  I'm going
14    to put my electronic signature on it.  I've signed
15    it.  All right.  So I've signed it.
16              MS. SIRIGNANO:  Thank you.
17              THE COURT:  Mr. Benjamin?
18              MR. BENJAMIN:  Your Honor, there was the
19    same motion filed on behalf all the trial defendants
20    by myself in Document 1566, if the Court could
21    consider that.
22              THE COURT:  What's the number on it?
23              MR. BENJAMIN:  1566.
24              THE CLERK:  You have it.
25              THE COURT:  All right.  I have signed it,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

224

1    and Ms. Wild can affix my electronic signature to it.

2             All right.  What else?  Any other issues we

3    need to take up, other than the two motions that Ms.

4    Sirignano has for tomorrow morning?

5             Let me ask you this:  Are there going to be

6    other motions filed?  Is there something we can talk

7    through this afternoon rather than having to have

8    more motions?

9             While maybe y'all are thinking about that,

10   see if I can help you with that, let me say something

11   on these out-of-court statements.  I don't think

12   there is any confusion here, but it is an assumption

13   we've been making.  And we've been going fairly fast

14   here through some of this stuff.

15            I think I gave you the reasons at the

16   hearing on the 20th as to why the out-of-court

17   statements that we were discussing, particularly with

18   Mr. Perez', are not admissible hearsay as statements

19   against penal interests.  But the out-of-court

20   statements are admissible under 801(d)(2)(A) to the

21   extent that they are offered against the defendant

22   who made the statement.

23            So let me elaborate a little bit on that,

24   because that's the whole basis of these limiting

25   instructions.  Rule 801(d) renders a statement

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    offered against a party was, quote, "made by the

2    party in an individual or representative capacity"

3    not hearsay even if is offered for its truth.   A

4    defendant's statement that qualifies under Rule

5    801(d)(2)(A) cannot be used against co-defendants,

6    however.   Complications arise when a statement,

7    admissible against only one defendant, contains a

8    statement that is admissible against only one

9    co-defendant, Perez' recorded statements that

10   attribute statements to Baca.   The second statement

11   is not hearsay as against the co-defendant who made

12   it pursuant to Rule 801(d)(2)(A), but the statement

13   is only relevant, and therefore admissible, if the

14   co-defendant actually made that statement, according

15   to 104(b).   And "when the relevance of evidence

16   depends on whether a fact exists, proof must be

17   introduced sufficient to support a finding that the

18   fact does exist."   No such evidence exists, in this

19   situation, because the first statement cannot be used

20   against the second statement's declarant.   Therefore,

21   the second statement would be inadmissible against

22   its declarant under Rule 402, which states that

23   irrelevant evidence is inadmissible, even though that

24   statement would not be hearsay if used for its truth

25   against its declarant.   For example, Mr. Perez'

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    statements are not hearsay when offered against Perez

2    and Baca's statements -- contained within Perez'

3    statements -- are not hearsay when offered against

4    Baca.  Because Mr. Perez' statements cannot be used

5    against Baca, however, there is no evidence that is

6    admissible against Mr. Baca that are "sufficient to

7    support a finding" that Mr. Baca actually made such a

8    statement under 104(b).  So just kind of backing up a

9    little bit what we've been talking about.

10            Any other motions that are going to be

11   raised?  Anything else I can help you with before

12   trial?

13            MS. ARMIJO:  Your Honor, I had a question

14   about the jury questionnaire.  I've been speaking

15   with Ms. Duncan and Mr. Villa about it.  And just

16   for -- as an example, if there are 50 percent of the

17   jurors that are excused for cause, which may leave

18   about 300, are you expecting all 300 -- I mean, I

19   know they all won't come -- but will all the

20   remaining ones be summoned in?  Or from that group

21   will there be a certain number that we summoned in?

22   Does that make sense?

23            THE COURT:  Ms. Wild, correct me if what

24   I'm saying is incorrect.  But let's say y'all excuse

25   everybody but 300, so there is 300 in the pool; they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

227

1    will go into a draw.  It's not the draw for the day

2    of the trial.  This is just a draw for summoning them

3    there.  And we'll draw 200.  And then we'll summon

4    those 200 to the courtroom, so -- you know, I don't

5    know if we'll get all 200 here, but our expectations,

6    there would be 200.  Then I'll leave about 140 down

7    in the jury assembly room, and then we'll bring 60

8    into the courtroom, and that's where we'll get

9    started.  Is that clear?

10              MS. ARMIJO:  Yes.  And with that thought --

11              THE COURT:  Let me, first of all, check and

12   make sure that what I just said is correct.  Did I

13   have that correct, Ms. Wild?

14              THE CLERK:  Yes.  We will reduce to what we

15   think the target -- what the number needs to be to

16   target 200.  So it may not be just 100 get lopped

17   off.  It will be whatever number we think is

18   necessary to get 200 to the courthouse on the 29th.

19              THE COURT:  Okay.  Do you see what they're

20   saying?  Mr. Sorrell is in the back of the courtroom.

21   They're experienced at knowing, in Las Cruces, you

22   know, how many people -- let's just say I was in

23   Albuquerque, and I told Jury Services, "I want 46

24   people in their seats."  They may call 53, 54.  So it

25   may be higher than 200, it may be 220, or something

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    like that.  But it's their professional estimate as

2    to how many people will be -- it may take 220 to get

3    200 in Las Cruces, or in here.

4              THE CLERK:  And the parties will be

5    notified with a listing of the folks that are coming

6    out.

7              THE COURT:  So you will be told which ones

8    didn't make the list, so that you can start ignoring

9    them for trial preparation.

10             MS. ARMIJO:  Okay.  Thank you, Your Honor.

11   That was my next question, is I believe the parties

12   wanted to know who would be --

13             THE COURT:  Sure.  Well, I do too.  I have

14   every interest.  Because I've got banker's boxes

15   sitting in my office.  Does that make sense,

16   everybody?  Mr. Villa?

17             MR. VILLA:  It does, Your Honor.  So if the

18   200 are coming, when are we going to get the first

19   60 --

20             THE COURT:  You're not going to get the

21   first 60, you're going to get 200.

22             MR. VILLA:  In order?

23             THE COURT:  You're not going to know until

24   the day of the trial which 60 are going to be here,

25   because I don't know which 200 are going to show up.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                      1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                        e-mail: info@litsupport.com

```
 1              MR. VILLA:  Could we do 200 in order, then
 2     we just cross off the no-shows, so we know the order
 3     in advance?
 4              THE COURT:  When you get here and are
 5     speaking -- and Ms. Wild, correct me if I'm wrong --
 6     you're going to be told -- I guess this is what's
 7     going to happen -- you'll be told which ones to take
 8     out of your list, or out of your drawer.  And you can
 9     toss those aside.  And so let's say it's 220, 225,
10     you'll need to work with those, because if 225 or 200
11     of them show up on that day, then we put them into
12     the true wheel that morning, the computer wheel.  And
13     then that's when the alphabetical becomes numerical.
14     So Juror No. 1 will be sitting right where Mr. Burke
15     is sitting, and we'll go through there, 1 through 200
16     or 198, or whatever it is.  Does that make sense?
17              MR. VILLA:  It does.
18              THE COURT:  Am I correct, Ms. Wild?  Is
19     what I said correct?
20              THE CLERK:  Yes, sir.
21              THE COURT:  All right.  Mr. Sorrell.
22              MR. SORRELL:  Can I be heard on that, Your
23     Honor?
24              THE COURT:  Why don't we talk afterwards,
25     okay?  Why don't you talk to Ms. Wild on that.
```


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

```
 1              Mr. Castellano?
 2              MR. CASTELLANO:  I was seeking
 3    clarification on the Court's ruling on Mr. Perez'
 4    statements.  We had previously argued that they were
 5    statements against interests, and therefore it was
 6    Smalls admissible against the other people named in
 7    the statements.  Has the Court deviated from that?
 8              THE COURT:  No.  But remember, I didn't
 9    think that was true the day I made that ruling.  I
10    didn't think that the -- given his testimony, I can't
11    say that he meets the prong of -- let me find my
12    rules, and I'll read it -- but I wasn't convinced the
13    day that we had it that I had an answer as to how
14    he -- give me the number on that again.  That's
15    unavailable, so which one is that?
16              MR. CASTELLANO:  The rule number?
17              THE COURT:  Just a rule number.
18              MR. CASTELLANO:  It may be 804(3), but let
19    me double-check that.
20              THE COURT:  You're correct.
21              And here's the one that I don't think that
22    it met.  Given his testimony, I have a hard time
23    saying that a reasonable person in the declarant's
24    position would have made -- that's a statement that a
25    reasonable person in the declarant's position would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    have made only if the person believed it to be true.

2    That's what I'm having trouble on.  I mean, it seems

3    to me that what Mr. Perez was doing is just as likely

4    to have been a ruse, as it was not a ruse.  And I

5    can't -- so it's an objective standard.  So it's not

6    particularly him; it's just whether an objective

7    person in his position would have made that.

8              MR. BECK:  And, Your Honor, the Government

9    would ask you to go and look back more closely at the

10   testimony from Mr. Perez and from Mr. Cordova.  The

11   testimony that came out -- I know Mr. Perez said that

12   he was lying.  The Court found a lot of that

13   testimony not credible.  I think the Court can find

14   by a preponderance of the evidence that those

15   statements are sufficiently trustworthy because of

16   the context in which they were said.

17             THE COURT:  But remember, I'm not -- I

18   agree with you, I made a finding that his was not

19   trustworthy for the motions to exclude the testimony.

20   But when we get to the 804(b)(3)(A), it's an

21   objective standard.  So his testimony is enlightening

22   only in the sense that it informs whether a

23   reasonable person in the declarant's position would

24   have made only if the person believed it to be true.

25   And I think somebody in his position could have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   objectively and reasonably decided to lie to create a
 2   rumor around the prison that -- what he did to
 3   protect himself.
 4           MR. BECK:  That's why I'm saying I'd ask
 5   the Court to go back and look more closely at the
 6   context.  Because those statements were given after
 7   the first indictment came down.  And they were given
 8   by Mr. Perez to someone who he contends -- and the
 9   evidence at all these have shown -- was not higher up
10   in the organization.
11           And so in the context of those two facts,
12   number one, he would only make statements that he
13   participated willingly in the murder, if in fact, he
14   did, because he's not trying to convince Mr. Cordova
15   that -- he's not trying to gain credibility with
16   someone lower than him.
17           THE COURT:  But he might be using Mr.
18   Cordova to spread a rumor around the prison.
19           MR. BECK:  But the only reason in which
20   someone would do that, is if it were true, because
21   he's trying to -- I think, objectively, may be trying
22   to rebut that he is a government cooperator.  And
23   that's why he is saying that, "I participated
24   willingly, but only this person knows that, because I
25   haven't told anyone that I did that willingly."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Because, as you've heard, everyone in the
 2     SNM knows how that murder went down, knows what
 3     happened.  And only those who are cooperating and
 4     participated, were not indicted.  And so a reasonable
 5     person would only admit to participating in the
 6     murder after the indictment to someone lower in the
 7     organization, if he actually did those things.  And
 8     he is trying to say why, although he did those
 9     things, he was not indicted and he is not
10     cooperating.
11              So those explanations objectively would
12     make it so that those statements are against his
13     penal interests.  And the timing there is key.  After
14     the indictment and to whom he's making the
15     statements.
16              I agree with you that, if we look generally
17     throughout the context of prison gangs, throughout
18     the context of prison, statements may be made to try
19     to spread rumors about who did what.  But the
20     specific time period in which these statements were
21     done, after the indictment, to someone lower in the
22     organization, and after only those not indicted were
23     cooperating, participated, those facts objectively
24     make those statements trustworthy against his penal
25     interests.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

234

```
 1              So that's why I'm saying I think the Court
 2     may want to look more closely at the context of the
 3     statements, when they were made after the indictment.
 4     So --
 5              THE COURT:  All right.  I'll take another
 6     hard look at it.  But for planning purposes, plan on
 7     them not being used against anybody but Mr. Perez.
 8     But I'll take a hard look at it.  I did read your
 9     brief.  But I need to write that section up of the
10     opinion, so I'll take these comments into mind when I
11     do that.
12              Anything else?  Any other issues?  Any
13     other motions going to be filed?  We don't expect any
14     more motions to be filed?  Is this it?  We're done?
15     Got them all done?
16              MR. CASTLE:  I'll file one.
17              THE COURT:  No, that was not an invitation
18     or a request.
19              Ms. Sirignano.
20              MS. SIRIGNANO:  Sorry to be the
21     stick-in-the-mud again.  I'm waiting to get documents
22     back from my experts on the DNA, specifically in
23     regards to the policies and procedures.  And I may
24     file a motion to suppress the DNA, Your Honor.
25              THE COURT:  All right.  Anything else?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

235

```
1            MR. CASTLE:  Judge, I have a trial brief
2    that's pending with the Government to get their
3    position on.  I don't think it's going to take any
4    time to review -- well, it might take -- well, it's
5    12 pages, but it's a simple issue that I made really
6    long.  So it wouldn't take any time.  As a matter of
7    fact, I think the Court could probably rule on the
8    pleadings.
9            THE COURT:  When you say it's a trial
10   brief, what is it?
11           MR. CASTLE:  During some of the hearings, I
12   had noticed that some of the Government agents were
13   commenting on the honesty and reliability of certain
14   informants.  So this Court made a preliminary ruling
15   during those hearings that it didn't think that
16   was -- that kind of evidence was admissible, and told
17   us all to kind of be on notice at trial not to try
18   that.  But it's along those lines of saying that we
19   shouldn't allow that.  And it's particular in these
20   kind of cases, because agents often call someone a
21   reliable informant, or we verified their information,
22   things like that.
23           So that's with the Government.  If they can
24   look at it tonight, maybe they're going to be in
25   agreement with it.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Well, I'll give you my
 2    thoughts.  Sometimes in the course of a trial, for
 3    example, Mr. Acee has to get on the stand and say,
 4    you know, "I didn't act on this because I didn't
 5    believe him."  That's history.  Other times -- but I
 6    do agree with you, Mr. Acee and other agents can't
 7    get on the stand say, Yes, Mr. Duran is a reliable
 8    agent.  I agree he can't say that.  But if, in the
 9    course of his work, he decided certain things were
10    reliable, certain things were true and not true, I
11    would think that's part of history of the case.  And
12    I've kind to have to let him tell his story as to why
13    he did certain things and not do certain things.
14              Is that pretty consistent with what you
15    think would be the right call?
16              MR. CASTLE:  I guess, it depends how it
17    comes out.
18              THE COURT:  Well, I think it does, too.  I
19    think it's kind of the context.  I'd encourage the
20    agents not to call people reliable and things,
21    because that, I think, is for the jury to determine.
22    But if they're telling a story -- I mean, this is
23    what happens -- you've got the agent on the stand,
24    the defendant is saying:  Why didn't you do this?
25    Why didn't you do this?  Well, I didn't think he was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    reliable, or I did.  So it often comes out not so

 2    much in direct, it comes out in cross.

 3              MR. CASTLE:  I think we certainly could

 4    open the door to things.  The trial brief doesn't

 5    talk about or address the situation in which the

 6    defense opens the door to an area.  It was --

 7    frankly, I pulled out an example, which was Agent

 8    Acee's being asked:  Did you find Mr. Duran to be

 9    honest with you?  And it was that kind of

10    information.  Certainly, the defense can open the

11    door and make it relevant.

12              THE COURT:  I guess I would probably cringe

13    on that sort of question and answer.  But if it was

14    more spaced -- at the time that you made this -- you

15    know, you made -- I think it's going to be tied to

16    something specific.

17              MR. BECK:  I think it's pretty clear you

18    can't bolster your witness' credibility.  So I think

19    we're in agreement with where Your Honor is on that.

20              I think that probably came up because they

21    were impugning Duran's credibility in one of their

22    motions to suppress.  So for that, it's relevant

23    whether Agent Acee finds him credible.  So where it's

24    relevant, it's not bolstering.  But I don't see how

25    it would be relevant at trial unless the defendants

SANTA FE OFFICE                                                                              MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                              (505) 843-9494
FAX (505) 843-9492                                                                    FAX (505) 843-9492
                                                                                        1-800-669-9492
                        BEAN                                               e-mail: info@litsupport.com
                        & ASSOCIATES, Inc.
                        PROFESSIONAL COURT
                        REPORTING SERVICE

```
 1   open the door.
 2            THE COURT:  Okay.
 3            MR. CASTLE:  Makes sense.
 4            THE COURT:  Do you think you can live with
 5   that?
 6            MR. CASTLE:  Yes.
 7            THE COURT:  Some of you, I know, in the
 8   heat of the moment you ask questions, and you know
 9   better.  Let's be careful with the jury.  Let's don't
10   put any witness in -- you've seen me try to coach you
11   through this to get you ready for trial.  But if
12   you've got the witness on the stand, you know, don't
13   ask him if another witness was lying.  I'm going to
14   have to police that.  And you don't want me to call
15   you down or tell you not to do that.  So just watch
16   that.  You don't want to ask a witness to comment on
17   somebody else lying.  So just watch that sort of
18   language, so that you don't have to get me
19   intervening.  And I do have to intervene on those.
20   There is some case law that says I can't just sit
21   here and watch it take place.  I have to do my job,
22   and I will do it to protect the record.
23            Anything else?  Things that may come up
24   that I can maybe help you with today.
25            All right.  Well, let's -- then we've got
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    some marshals at the back.  And let's see -- what I'm
2    going to do is I'm going to put on the record some
3    things that Ms. Wild has worked out with the
4    marshals.  Most of these reflect the rulings that I
5    gave.  I'm not going to put the marshals on the spot.
6    This is mostly informative for the parties here, and
7    I'll let the parties sort of tell me if they can't
8    live with this.  But these will be the rulings unless
9    I misstate them in some way, and Ms. Wild and the
10   marshals get back to us and tell us I'm not stating
11   this.  That was the reason I asked the marshals to
12   come in.  And Mick and Joe Castro are in the
13   courtroom, so they can get with Ms. Wild later on and
14   say:  We can't do that or we can do that.
15          We are going to start proceedings at 8:30.
16   The marshals think they can get the defendants --
17   since we're going to be dealing with a reduced
18   number -- they think they can get them here.  So
19   we'll be starting at 8:30.  And plan on going to
20   5:30, like we've been doing.  So we'll need to shift
21   that up a half hour, because they think they can have
22   them ready to go.
23          Let's talk about the prior restraint
24   devices and security within the courtroom.  The
25   marshals have assured me, through Ms. Wild, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

240

```
1    there won't be anybody with ski masks in the
2    courtroom, or in the vicinity.  So you shouldn't be
3    seeing anybody with ski masks.  There won't be any
4    heavy attire, vests, or anything in the courtroom.
5              We'll talk about where other people may be.
6    But for the present time, assume that when they come
7    to the courthouse in connection with this case -- I
8    can't tell you what they may be doing with other
9    judges in other courtrooms, but there won't be any
10   heavy attire vest.
11             The prisoners will be restrained with leg
12   shackles, which will be duct taped to ensure no sound
13   is made even if the prisoner moves legs.  So that
14   shouldn't be a problem.  There won't be any
15   additional restraints used.  So, as far as hands,
16   they will be out, and they'll be able to write and
17   take notes.
18             The deputies will be placed throughout the
19   courtroom, but will be in suits and ties.  So what
20   you get used to seeing in trials here in New Mexico
21   is the way you'll see it in this trial as well.  And
22   there will be -- CSOs will be on the right side of
23   the courtroom, with access to the Judge's door.  So
24   they will be on your right and my left.
25             Let's see, I think that covers prisoner
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    restraint devices and security within the courtroom.
 2            Let's talk about the prisoner courtroom
 3    attire.  Prisoners -- I shouldn't say prisoners --
 4    the defendants, but they've been in custody, so I'm
 5    trying to shift them from their facilities to the
 6    courtroom.  So the defendants will be allowed any
 7    courtroom attire, including footwear, so -- within
 8    reason.  You know, don't too funky, but we're not
 9    going to get too specific either.  So what you want
10    to bring, leather-type shoes, just don't make the
11    marshals nervous.  But we're not going to be too
12    restrictive on that.
13            Clothes must be brought at least one full
14    business day prior to the start of the trial.  So I
15    would encourage you to try to have those to the
16    marshals by the end of business on Thursday, January
17    25.  So I encourage you to have them there so --
18    they've just got to have a full business day.
19            The attire is going to be searched by the
20    Marshal Service before the defendants are presented
21    with the items.  So, know that.  And the suits will
22    be housed by the marshals unless the attorneys want
23    them back for cleaning.
24            Now, let's talk about the cooperators, and
25    some of those issues, because they change a little

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    bit.  I want everybody to be advised of this.  I
 2    think we talked through some of these issues earlier.
 3    I can do this a couple of different ways.  I can take
 4    a recess and remove the jury before an in-custody
 5    defendant or an in-custody witness is being brought
 6    in.  I would suggest that certainly we take a break
 7    before an in-custody defendant is testifying, and
 8    certainly before they're brought into the courtroom,
 9    that the jury not see it.  But unless somebody tells
10    me otherwise, I'm not inclined to start taking
11    recesses every time we take a break with an
12    in-custody witness.
13            Now, I need to hear what the defendants
14    think about that, because it's mostly your optics
15    that I'm concerned about.  I'll certainly listen to
16    the Government's as well.  But if you want to see
17    them walk in, they can't walk and use the jury room
18    anymore.  I guess they could come in through the side
19    doors, or they can come in through the back doors.
20    But you may want them to do it.  So, at the present
21    time, unless sometimes tells me otherwise -- I'm not
22    going to take a recess and remove the jury every time
23    we bring an in-custody defendant into the courtroom.
24    I think it will slow things down, and it's not
25    necessary for the optics.  This will allow the -- you
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1   know, as far as the defendants are concerned, we'll

 2   not parade that witness before the jury, they'll just

 3   come in -- the defendant will be next to me.

 4   Otherwise, they'll just be brought in like any other

 5   witness, and they may be in custody or chains or

 6   things like that.

 7         In-custody witnesses will be brought in any

 8   clothes which were provided to him.  But if nobody

 9   provides him, he may just come in with what he's

10   wearing either at the prison or the detention

11   facility.  If no clothes, in-custody defendants will

12   be brought in in prisoner uniforms.

13         In-custody witnesses will remain fully

14   shackled.  In-custody defendants will remain in leg

15   restraints, as identified under what I just talked to

16   you about the prisoner restraining devices.  But I'm

17   calling that defendant restraint devices.

18         The Court will take another break after the

19   defendant is done testifying, allowing the individual

20   to be removed from the witness stand without being

21   paraded in front of a jury, so that they get the

22   sense that he's in shackles.

23         Now, here's a wrinkle that we need to

24   recognize.  The Marshal Service are not and cannot be

25   responsible for state custody inmates.  State custody

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    inmates may be transported by and guarded by a

2    uniformed officer.  So the reality is that -- and I

3    don't think this is a problem, but everybody will

4    have to make their own judgment -- when we have a

5    state custody inmate, there is going to be a state

6    custody person here.  I don't think that hurts the

7    defendants in any way, because they're not here

8    because of the new defendants.  They're here because

9    of that person.  So unless somebody tells me

10   otherwise, I'm not going to worry about that, because

11   I don't think that hurts the defendants.  It suggests

12   that they're the ones that -- so you're not going to

13   have, on a daily basis, people with heavy attire.

14   But you may have -- you will have uniformed officers

15   on the day that state custody inmates are testifying.

16          Now, let's talk about courthouse security.

17   The defendants will be brought to the courthouse

18   before the courthouse opening.  So I think that's

19   going to be before most of your jurors are going to

20   get here.  Some jurors are here early, but they'll be

21   brought in early.

22          Security on the perimeter of the courthouse

23   will be determined by the Marshal Services, by their

24   personnel.  What I understand is the bomb sniffing

25   dogs are used early in the morning.  That's one of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the first things they do is they sweep the

2   courthouse.  Again, I gave my thoughts that, after

3   9/11, after Oklahoma City, you can go to any stadium,

4   and they've got dogs.  I don't think that's a big

5   deal.  They're going to do -- what I understand,

6   they're going to sweep once, sweep in the morning,

7   and then they're going to be out of here.  So I think

8   that's okay.

9           The marshals have very graciously agreed

10  not to use lights and sirens when they leave the

11  courthouse, and if they go down Lohman.  So if

12  they're going down Lohman, they're not going to use

13  it.  What they do after, or if they go other

14  routes -- but at least around the courthouse, so I

15  think that those are going to be -- I think that's

16  going to be fine.  That's what we asked them to do.

17  And so around the courthouse and Lohman.

18          I have a few other issues I want to talk to

19  you about on the trial, but I think that's all that

20  relates to the security.

21          Ms. Wild, what did I miss, or what did I

22  misstate?

23          THE CLERK:  I don't believe you misstated

24  anything, other than -- it's not a misstatement, but

25  to also let folks know that the courtroom

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    configuration is in the works.  We don't quite have
 2    that solidified yet.  But we will let them know when
 3    we do.
 4              THE COURT:  We're still working on that.
 5    We talked about bunting, we talked about the
 6    shackles.  We're figuring it out.  I think we're
 7    going to be just fine as far as a courtroom that,
 8    even for voir dire, that we're not going to have to
 9    worry about the jury seeing anything that they
10    shouldn't see.  But it's going to take a little bit
11    more work.  But we're getting there.
12              Anything else, Ms. Wild, on that topic?
13              THE CLERK:  No, sir.
14              THE COURT:  Anybody have any issues,
15    comments, concerns, questions?  Mr. Lowry?
16              MR. LOWRY:  Your Honor, if I may.  During
17    the arraignment at the beginning of this case, as we
18    know, the courthouse security was at its -- what I
19    would consider to be its max.  Are we going to have
20    anything like, you know, armed security with AR 15s
21    on the roof or patrolling the perimeter?  I would
22    hope not.
23              THE COURT:  My understanding is no.
24              MR. LOWRY:  Okay.  Thank you, Your Honor.
25    And the Court made a comment with Mr. Mario Montoya
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    earlier -- and I think all of us take courtroom

2    security very seriously, as we should.  But, you

3    know, throughout the history of this case, we've seen

4    this crop up again and again, that cooperating

5    witnesses with the Government use those kind of

6    comments as an opportunity to disadvantage the

7    remaining defendants in this case.

8              THE COURT:  Like what?  Give me --

9              MR. LOWRY:  Well, like there was a comment

10   made earlier that Mario Montoya said threats were

11   made against his life.  I have no idea one way or

12   another.  But what I do know, throughout history of

13   this case, there is an incident with Mr. Herrera,

14   that there was a claim that he made a death threat

15   against his own mother, and that caused a ripple for

16   a number of days.

17             And that there were other similar type of

18   comments, like with the tablets, for instance, even

19   though the cooperators were the ones abusing the

20   tablet privileges, it spilled over into everybody

21   else losing access and privileges to their tablets.

22             So what I'm suggesting to the Court is not

23   that anybody truly lets their guard down, and don't

24   take courtroom security seriously, but that we have

25   an objective, open mind about comments like that that



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    could creep up.  I just don't want that to prejudice
2    the defendants in the courtroom.  I guess I'm just
3    trying to avoid a cheap shot, if you will, to be
4    simple about it.
5          You know, we've worked with our client.  As
6    far as I know, our client hasn't had any issues with
7    transportation or in-house court security.  We have a
8    good working relationship with the marshals.
9          I understand there was an issue with Dona
10   Ana County Detention about the razor being found in
11   his cell.  But it had nothing to do with any security
12   issue beyond his immediate cell, Your Honor.
13         So that's my concern, is that, you know, we
14   don't rush to judgment when you hear something like
15   that.
16         THE COURT:  Is there any action item there
17   for me?
18         MR. LOWRY:  No.  Again, in terms of -- I'm
19   just thinking future-oriented.  If something like
20   that crops up during the course of this trial, I
21   would hope that the Court can work with counsel in a
22   more subtle fashion, so we can address that, so it
23   doesn't have a spillover effect and change the
24   dynamic of the courtroom.  It's something I'd be
25   serious about.



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                 1-800-669-9492
                                                          e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

249

```
 1              THE COURT:  Well, I think everybody knows
 2    me well enough, that once we bring that jury and
 3    start this trial, I'm going to have of paramount
 4    concern the optics and the appearance of justice in
 5    this courtroom.  So some of the things that I have
 6    had to move rather rapidly, with such a high number
 7    of people, I think will probably -- you know, we're
 8    going to have to think about:  We now have a jury,
 9    that changes everything.
10              MR. LOWRY:  I agree, Your Honor.  And we
11    want to work collaboratively with our colleagues
12    across the aisle, and the Court, to make sure that
13    those optics don't adversely affect the jury's
14    judgment in this case.
15              THE COURT:  I agree.
16              MR. LOWRY:  The only final issue, we're
17    talking about bunting on the table, and I realize
18    that the Court hasn't finalized those decisions.
19              THE COURT:  There will be bunting on the
20    table.
21              MR. LOWRY:  We would ask, just again, for
22    the optics of this, that anything that's done -- and
23    I'm assuming that this is going to be the defendants
24    over here -- that we have a similar bunting placed on
25    the prosecution.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  It will be on both tables.
 2              MR. LOWRY:  Thank you, Your Honor.  That's
 3    it.
 4              THE COURT:  Do you want the bunting that
 5    they do on opening day of baseball, or you want
 6    something more subtle?
 7              MR. LOWRY:  Black would be fine.
 8              THE COURT:  I always thought that was the
 9    one thing that baseball had over football is opening
10    day.  I always miss bunting.
11              Anyone else?  Comments, questions,
12    concerns?
13              MS. ARELLANES:  Judge, what about family
14    members that want to observe the trial?
15              THE COURT:  Yeah, we haven't got that
16    totally worked out.  I do have -- I'm going to tell
17    the White House I'm getting old -- but I do have
18    problems when we see the people sitting way at the
19    back.  So I have -- and the marshals have been very
20    gracious on this -- they're going to let me use the
21    inside of the well.  So I am going to use the front
22    row in the well.  Now, that's going to create a
23    little bit of coziness here.  But at the same time,
24    it's going to help me be able to see and talk to
25    people, which means that, to answer your question,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    they're going to be plenty of seats at the back.  We
2    are still discussing having an overflow like we did
3    when we first started these hearings up in
4    Albuquerque.
5              For First Amendment purposes, we'll work
6    with Ms. Standridge, if there is press, we'll try to
7    identify those, and make sure that they're in this
8    room.
9              Family members, it depends on the numbers.
10   We may have to put them in an overflow, and then pipe
11   in the proceedings.  I don't think it's going to be a
12   problem during the trial.  But it could be a little
13   tight in here during voir dire.  That's my biggest
14   concern.  But I do think just looking at the chart
15   here, if I use the inside of the well -- which I
16   think will help me with my eyesight and also my
17   hearing, so I can make sure I hear the jurors,
18   because they don't talk as loud as the rest of us do.
19             It would put Juror No. 60 on the second
20   row, so the second bench on left would be totally
21   full.  That would be 47 through 53.  And then on the
22   second bench on the right would be 54 through 60,
23   probably right about where Mr. Maynard is on the
24   second row.  So the row right behind Ms. Sirignano,
25   where that group is sitting, that's going to be full;
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    that's going to be 46 through 37.  Then the next row
2    behind it is going to have people that are 54 through
3    60.
4          Ms. Wild, have you noticed that this
5    seating chart is reversed?  It's different than how
6    we do our seating charts.
7          THE CLERK:  In the way that they're
8    numbered and how they're seating?
9          THE COURT:  Yeah.
10         THE CLERK:  I must have gone to sleep at
11   the switch, which is possible.  But I thought -- oh,
12   you know what, you're right.  I had prepared a
13   stand-alone that would track our numbering.  So I'll
14   just take that and I'll renumber it and prepare one
15   that tracks how you seat them, with the lowest number
16   juror sitting closest to the aisle.
17         THE COURT:  One of the issues we haven't
18   quite figured out is, you know, we've got six
19   alternates.  So we haven't quite figured out how
20   that's going to work, but -- when we actually get to
21   the trial, but at least for the voir dire purposes
22   we'll have 14 over here in the jury box.  Then what I
23   typically do, is right to behind where Mr. Acee is
24   sitting, would 15, so that will be 15 through 20.
25   But we'll put 15 right where Mr. Acee is on that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    corner.  It will run that way.

2          I don't know who asked that question.  Who

3    asked that question?  Did I respond?

4          Anybody else?  Mr. Villa?

5          MR. VILLA:  Your Honor, after voir dire,

6    are we able to use that bench on this side of the

7    well for investigators and paralegals and things like

8    that?

9          THE COURT:  I don't have any problem with

10   that.  Do you see any problem with that, Ms. Wild?

11         THE CLERK:  I didn't hear the question.

12   I'm sorry.

13         THE COURT:  What Mr. Villa said is once

14   we're done with voir dire, where Mr. Baca is sitting

15   on that row with Mr. Lowry, can they use that row for

16   paralegals and investigators.

17         THE CLERK:  I don't think that will be an

18   issue.  But until we get other things nailed down, I

19   think we need to leave that a little bit fluid.

20         THE COURT:  Okay.  We'll try to make that

21   happen.  We'll see if it works.

22         Mr. Jewkes?

23         MR. JEWKES:  Your Honor, may we get a

24   little guidance as far as when the Court anticipates

25   having the new budgets completed?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Let me see if I --
 2            THE CLERK:  I have Mr. Jewkes' and Jacks',
 3    and then the others you have, Judge.
 4            THE COURT:  I've got them in my briefcase.
 5    Maybe I can get to them tonight and I can take them
 6    back with me.  I wanted to send a Fed Ex package, but
 7    you can tell by what I've been talking about during
 8    the day what I've been working on.  So she's got a
 9    few there.  But I think I have yours.  I'll try to
10    look at it tonight, sign it, and take it back to
11    Albuquerque tomorrow.
12            MR. JEWKES:  Very well, Your Honor.  Thank
13    you.
14            THE COURT:  Sorry, I'm a little bit slow on
15    that.  But we've just had a lot of issues, as y'all
16    know.
17            Any other -- any issues on security, what I
18    just read?  Any other comments, questions, concerns?
19            All right.  A couple of things that -- just
20    loose ends here.  This is for the first trial.
21    Unless the defendants tell me otherwise, this will be
22    the order I will call upon you for your -- we'll
23    start with the voir dire.  When I start introducing
24    the lawyers and the parties, and then this will also
25    be what I use, since we'll be going into
```


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    case-in-chief, and then we'll be going into opening
2    arguments -- I'll use the order of Mr. Sanchez will
3    go first, so Mr. Jewkes, Ms. Jacks; Mr. Baca will go
4    second, Mr. Lowry, Ms. Duncan; Mr. Garcia will be
5    third, so that will be Ms. Sirignano, Mr. Adams; Mr.
6    Herrera will be fourth, Ms. Bhalla and Mr. Maynard;
7    then Mr. Perez will be last, so Ms. Fox-Young and Mr.
8    Villa.  If y'all want a different order and can agree
9    on a different order, I'd be glad to do what you'd
10   like.
11           Ms. Duncan.
12           MS. DUNCAN:  Your Honor, the defendants
13   have been talking about the order.  I think we've
14   come up with an agreement as to voir dire and for the
15   openings.
16           With respect to cross-examinations during
17   the trial, we're trying to avoid duplications, having
18   one lawyer take the lead, and then other lawyers
19   would follow up with some follow-up questions.  I
20   don't have my notes in front of me of what we've
21   agreed to, but we can get that to the Court.  But we
22   do think the order for voir dire will be slightly
23   different than the order for the opening statements.
24           THE COURT:  All right.  Just let me know,
25   because I'll put it up here somewhere and try to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    remember to follow it.
 2            All right.  I think that concludes my list
 3    of things I needed to discuss with you as far as
 4    mechanics.
 5            Can you think of anything else, Ms. Wild,
 6    we need to bring up, discuss, as far as mechanics?
 7            THE CLERK:  Not at this time.
 8            THE COURT:  Anybody else have any issues on
 9    mechanics?
10            MS. JACKS:  I do briefly, Your Honor.  With
11    respect to clothing for our client, is there a -- I
12    guess limit on what we can bring, or what is --
13            THE COURT:  I think the Marshal Service is
14    fairly liberal.  But let me give a few things:  Don't
15    bring -- don't bring French cuffs, things like that.
16    Let's don't probably bring stick pins, ties, and
17    things.  But I think if you bring attire, they're
18    going to be okay and liberal with it, as far as like
19    a suit, tie, white shirt, that sort of thing.
20            MS. JACKS:  I guess what I meant was like
21    the number of changes of clothes, like pairs of
22    pants, jackets?
23            THE COURT:  I don't think they have any
24    limits.
25            MS. JACKS:  Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Anything else?
 2              And you can't have belts.  They can't have
 3     belts.  So you've got to exclude belts.
 4              Ms. Sirignano.
 5              MS. SIRIGNANO:  Judge, I was inquiring
 6     whether we can have a room.  The attorney room
 7     downstairs is very small.  And I know someone raised
 8     it with Ms. Wild that we could have a room here in
 9     the courthouse, perhaps, to keep our materials and
10     other things in while we're in trial.  Do you think
11     that's a possibility?
12              THE COURT:  Ms. Wild, have you considered
13     that request and have any response?
14              THE CLERK:  I don't have a response for
15     that today.
16              THE COURT:  We'll look at it, Ms.
17     Sirignano.  We'll see, and probably get back to you
18     on that.
19              MS. SIRIGNANO:  Thank you.  But the room
20     downstairs is very small, and sometimes there is
21     paper, sometimes there is not.  And we're just hoping
22     maybe we could have a workroom, if we needed to use a
23     workroom during the trial.
24              THE COURT:  Okay.
25              MS. SIRIGNANO:  Thank you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  I can't promise you anything on

 2    it.  Because I don't know this building very well

 3    myself.  I get myself in here and then I try not to

 4    get lost because I don't know the building extremely

 5    well.

 6              Any other things we need to discuss as far

 7    as mechanics?

 8              MR. LOWRY:  Your Honor, it's a trivial

 9    question, but you said no belts.  What about

10    suspenders or anything like that?  Are they off too,

11    or just --

12              THE COURT:  Do you know about suspenders,

13    Ms. Wild?

14              THE CLERK:  I don't know specifically.  We

15    can look into it.  I guess I kind of doubt it.

16              THE COURT:  Don't count on it, but we'll

17    find out.

18              Anything else on mechanics?  Security?

19              MR. MICKENDROW:  Your Honor, I just wanted

20    to clarify.  The Marshal Service would be fine with a

21    belt.  The defendants just would not be allowed to

22    wear them inside the cellblock, obviously.  But as,

23    they're coming out, we'll allow the defendants to put

24    the belts on, if that will help alleviate that issue.

25              THE COURT:  Okay.  Anything else?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. ADAMS:  I think that would be very

2    helpful.

3          THE COURT:  Any other issues?  Mechanics?

4    Anything else anybody wants to discuss today?  If

5    not, I'm inclined to shut her down for the day.  And

6    we'll get back at 9:00, take up those two motions

7    that Mr. Garcia has.  Anything else?  All right.

8    Y'all have a good evening.

9          (The Court stood in recess.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                       C-E-R-T-I-F-I-C-A-T-E

2

3       UNITED STATES OF AMERICA

4       DISTRICT OF NEW MEXICO

5

6

7           I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8       Official Court Reporter for the State of New Mexico,

9       do hereby certify that the foregoing pages constitute

10      a true transcript of proceedings had before the said

11      Court, held in the District of New Mexico, in the

12      matter therein stated.

13          In testimony whereof, I have hereunto set my

14      hand on January 17, 2018.

15

16

17

18      _____
        Jennifer Bean, FAPR, RMR-RDR-CCR
19      Certified Realtime Reporter
        United States Court Reporter
20      NM CCR #94
        333 Lomas, Northwest
21      Albuquerque, New Mexico 87102
        Phone:  (505) 348-2283
22      Fax:    (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com