```
 1              IN THE UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF NEW MEXICO

 3    UNITED STATES OF AMERICA,

 4         Plaintiff,

 5         VS.                      CR. NO. 15-4268 JB

 6    ANGEL DELEON, et al.,

 7         Defendants.

 8                         VOLUME 3

 9         Transcript of Motions to Suppress Proceedings
      before The Honorable James O. Browning, United States
10    District Judge, Las Cruces, Dona County, New Mexico,
      commencing on January 10, 2018.
11

12    For the Government:  Ms. Maria Armijo; Mr. Randy
      Castellano; Mr. Matthew Beck
13
      For the Defendants: Mr. Brock Benjamin; Ms. Cori
14    Harbour-Valdez; Mr. Pat Burke; Mr. Robert Cooper; Mr.
      James Castle; Mr. Jeff Lahann; Mr. John Granberg; Mr.
15    Scott Davidson; Ms. Amy Jacks; Mr. Richard Jewkes;
      Ms. Amy Sirignano; Mr. Christopher Adams; Mr. Marc
16    Lowry; Ms. Theresa Duncan; Ms. Carey Bhalla; Mr.
      William Maynard; Mr. Donovan Roberts; Ms. Lisa
17    Torraco; Ms. Angela Arellanes; Mr. Jerry Walz

18    For the Witness Montoya:  Mr. Michael Keefe

19

20

21

22

23

24

25
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  We'll go on the
 2    record.  I understand we still don't have a witness
 3    here, so we're going to have to decide what we're
 4    going to do.  Whether we're going to --
 5              MR. CASTLE:  And a defendant, Your Honor.
 6              THE COURT:  So we're going to have to
 7    decide what we're going to do.
 8              Mr. Keefe, how are you this morning?
 9              MR. KEEFE:  Good morning, Judge.
10              THE COURT:  We don't have a witness yet.
11              MR. KEEFE:  That's my understanding, Your
12    Honor.
13              THE COURT:  Okay.  Well, we didn't -- I
14    don't know what we can profitably do.  We just pushed
15    everything back.
16              But let me make a couple of statements,
17    then we'll see if there are some other things we can
18    do here before we start those two motions.
19              Ms. Standridge talked to Matt Dykman, Clerk
20    of the Court, about the defendants' request for a
21    room.  There is probably nothing in this building.
22    But -- no promises, but Mr. Dykman is looking at
23    something maybe in the Runnels Building nextdoor.
24    Before we spend a lot of time trying to find
25    something over there, would that work?  I mean, would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   that be better than your current room?  Would it be

 2   better than nothing?  What's your thoughts?

 3            MS. HARBOUR-VALDEZ:  For Trial 2, we would

 4   like that.  I don't know about 1.

 5            THE COURT:  How about 1?  Is it worth the

 6   effort?  Ms. Jacks?

 7            MR. JACKS:  Yes.

 8            THE COURT:  Yes.  Okay.  So again, no

 9   promises, but Ms. Standridge will communicate that to

10   Mr. Dykman, and we'll see if -- there is a couple of

11   possibilities over there, but no promises.

12            The second thing is, before we get started,

13   I have a typographical question for all of you.  But,

14   as we begin to put things in front of the jury, I

15   think it has maybe some importance, as I start

16   putting jury instructions in front of them.  And I'm

17   not sure whether the Government or the defense should

18   address it.  So anybody jump in to answer, but how

19   should I spell Syndicato, when referring to SNM?  The

20   indictment and media have been spelling it with a Y.

21   Whereas, the Spanish Language Dictionary spells the

22   word with an I, S-I-N-D-I-C-A-T-O.  Your thoughts as

23   to what my preliminary instructions -- and as we talk

24   to the jury and begin to put written product in front

25   of them, what it should say?  Ms. Armijo?

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                             201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492

**BEAN**
**&ASSOCIATES,** Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1          MS. ARMIJO:  Your Honor, I believe both are
 2    used, both spellings are used by members.  We have
 3    members that have tattoos with both the Y and the I.
 4    I guess, if the Court is not inclined to use both, I
 5    guess we would request it be consistent with the
 6    indictment.  But both are used by the members.
 7          THE COURT:  Are the defendants comfortable
 8    with using a Y, if I put it in a preliminary
 9    instruction?  I don't know what I'm putting in a
10    preliminary instructions.  But anybody have any
11    problem with that?  All right.  I had switched over
12    in my writing to an I, after one of the defense
13    lawyers sent me something.  But I think I'll go back
14    to Y, unless anybody says otherwise.
15          Well, I understand, through Ms. Standridge,
16    that the Government is suggesting that we try to do
17    some argument on the motion before the witness gets
18    here.
19          Ms. Sirignano, Mr. Adams, it's y'all's
20    motion.  What's your thoughts?
21          MR. ADAMS:  Judge, I don't know what I have
22    to add other than what's in the notion.  We have a
23    cellphone that was given -- I need to get better at
24    this since Oprah may not be in her job much longer.
25          I think we laid out in our arguments in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    1529, there are factual questions.  We have two

2    issues.  One related to the destruction of the

3    cellphone, which had been given to Mario Montoya.

4    And he -- there is a recorded conversation where he's

5    instructed by an alleged member of the SNM to destroy

6    the phone.  The phone was destroyed, and ultimately

7    disposed of by Special Agent Acee.  And so we have

8    questions about that, which are laid out.

9              And then there is a body wire.  And we

10   don't know whether the body wire was a full

11   recordation or whether it was partially recorded and

12   what the instructions were for Mr. Montoya.  So I'm

13   certainly capable of filibustering until the witness

14   arrives.  But I think our position is fairly clear,

15   and I think the witness will -- if he's able to

16   resolve any of the issues, he will resolve them when

17   he's under oath.  If he's unable to resolve any

18   issues, then I think we'll have an argument about why

19   evidence, that could be very important for the

20   defense, was not preserved or not recorded.

21              So that's basically our motion.

22              THE COURT:  Is the only witness you're

23   going to call Mr. Montoya?

24              MR. ADAMS:  That's the only witness we

25   intend to call.  They may -- I anticipate they may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   want to call Special Agent Acee, if there is anything
 2   to rebut.
 3              THE COURT:  Okay.  All right.  Thank you,
 4   Mr. Adams.
 5              Mr. Beck, are you going to be handling
 6   this?
 7              MR. BECK:  Yes.
 8              THE COURT:  Mr. Beck.
 9              MR. ADAMS:  And, Judge, I guess I will say
10   we don't necessarily have agreement on who has the
11   burden of proof in this.  We captioned 1529 as a
12   motion to suppress.  I'm a defense lawyer, so
13   therefore, I would prefer to cross.  But if we need
14   to do direct, I can probably learn how to do that.
15              THE COURT:  All right.  Mr. Beck.
16              MR. BECK:  I'll start with that last point.
17   I think we're all familiar with the Trombetta and
18   Youngblood standards in which the burden is on the
19   defense to prove that the Government destroyed
20   exculpatory or potentially exculpatory evidence.
21              I think the one portion in which Mr. Garcia
22   may believe that his 1529 motion is a motion to
23   suppress, is pages 7 to 8, in which Mr. Garcia argues
24   that the United States has not authenticated the
25   audio recordings.  That's not a basis for a motion to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    suppress.  That would be a basis to exclude the
 2    evidence at trial.
 3            So that's not a motion to suppress.
 4    Really, what this is, is a due process motion for
 5    destruction of evidence.
 6            I think throughout -- and so I think the
 7    reason that argument may be helpful here is to put
 8    these motions in context.  I think 1330 and 1529 go
 9    hand in hand.  1330 was at a time in which there was
10    confusion which cellphone was destroyed.  I think the
11    defense believed it was Eric Duran's cellphone.  It
12    was, indeed, the cellphone that Mario Montoya had.
13    So these two motions all go to the same thing, which
14    was the fact that that cellphone no longer exists.
15            The evidence -- I think that's also an
16    important distinction to recognize, because Eric
17    Duran's cellphone was a cellphone in prison.  So it
18    was the only cellphone he had.  So over the last two
19    days we've heard evidence that there may have been
20    photographs on that phone.  Eric Duran, I think, said
21    he took selfies in there, because that's what you
22    would do with a cellphone in prison.
23            You'll hear today in the testimony that
24    there is a difference when Mario Montoya is not in
25    prison, and he's provided a government flip phone.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    He had his own personal cellphones, on which he would
 2    take selfies, photographs, or whatever they may be.
 3    And so, to the extent that there is the potential for
 4    exculpatory evidence on a cellphone, it is much less
 5    when Mario Montoya only used this government-provided
 6    cellphone to capture recordings of the defendants in
 7    this case.  It is very unlike Duran's cellphone,
 8    which would have been used in prison.
 9              Also, it's a flip phone.  You'll hear it's
10    a Verizon flip phone, purchased from Walmart for $19.
11    So there are no apps on the phone, like Facebook and
12    Twitter.  There is no GPS data.  There is no location
13    tracking on this phone.  I think there may be web
14    browsing, but web browsing on a flip phone is not
15    practical.
16              So the potential for exculpatory
17    information in this limited flip phone that Mr.
18    Montoya used only to record conversations is much
19    less than it may have been in 1330, where it was
20    Duran's cellphone in the prison.
21              I think you'll also hear that Mr. Montoya
22    will say that it was accidental that he ran over the
23    phone.  And I think it's important to note that
24    that's not the destruction of the evidence that
25    matters here.  It surprises me to hear that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Garcia intends only to call Mario Montoya.

2    Because Mario Montoya broke apart the phone.  But it

3    was Special Agent Acee who destroyed the evidence,

4    who destroyed the physical phone.  His affidavit,

5    which was attached, and his testimony, I expect, will

6    be that it was leaking battery acid, and because of

7    that, he destroyed it as a hazard.

8            So they will not be able to meet their

9    standard under Trombetta or Youngblood.  I mean,

10   there is no evidence -- there will be no evidence, I

11   expect, that it was apparently exculpatory.  There

12   will be no evidence of bad faith because, when the

13   phone was taken to Special Agent Acee in multiple

14   pieces, he threw it out because the battery acid was

15   leaking.  At best, that will be negligence.  As we

16   found through the course of these pretrial hearings,

17   negligence just doesn't get there.  It has to be bad

18   faith destruction.

19           Another factor that plays in is there was a

20   consensual and court-ordered wiretap on this phone.

21   So that all of the text messages and phone calls in

22   their entirety, without exception, were preserved by

23   the FBI pursuant to their normal Title III

24   requirements, and those were all produced to the

25   defendants.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          So a lot of the points that the defendants

2     were unclear about, whether there was selective

3     recording, or whether the recordings were only

4     partial, or Mr. Montoya deleted some, impossible.  It

5     was a Title III wiretap.  All those calls, all those

6     text messages have been produced to the defendants.

7          I think that probably gets at it.  The last

8     thing is the body wire evidence.  This was simply a

9     listening device in which -- which operated much like

10    a walkie-talkie.  The agents would turn it on when

11    they were with Mario Montoya.  He would carry it on

12    his person.  At that point, they listened in on

13    everything from the time they turned it on to the

14    time they turned it off.

15         In addition to that, there is a third

16    reception device for this audio body recording, which

17    is the FBI downloads the entire content of this

18    conversation in real-time.  So in addition to the

19    agents listening, this conversation is recorded, I

20    believe, in Quantico.  And then what happens is,

21    after they're done, the ELSUR technician in

22    Albuquerque, from her ELSUR computer, then goes into

23    this mainframe in Quantico, downloads it, and puts it

24    onto a disc.  And that's how we obtained it to

25    produce to the defendants.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          So there is no way in which what is
2     captured on those recordings produced is not
3     everything that transpired in that time.  There is no
4     way that anyone could have gone in there and edited
5     those conversations.  And you'll hear from the agents
6     at trial, when they testify about hearing those
7     conversations, that that's not what happened.
8          So with that being said, I think correctly
9     it is the defendants' burden to produce this
10    evidence.  But if they don't intend to call Special
11    Agent Acee, I foresee that we will call him in
12    rebuttal just to cover all of our bases.  And given
13    the way that the Court has conducted these pretrial
14    hearings, it makes as much sense for me to call him
15    now and proceed with direct as it would later.
16          THE COURT:  All right.  Do you want to call
17    Special Agent Acee?
18          MR. BECK:  Yeah, the United States would
19    call Special Agent Acee.
20          THE COURT:  All right.  Mr. Acee, since
21    we're going into another hearing in another set of
22    motions, I'll have Ms. Standridge swear you in.
23
24
25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                        BRYAN ACEE,

 2          after having been first duly sworn under oath,

 3          was questioned and testified as follows:

 4                      DIRECT EXAMINATION

 5              THE CLERK:  Please be seated.  State and

 6     spell your name for the record.

 7              THE WITNESS:  Bryan Acee, A-C-E-E.

 8              THE COURT:  Mr. Acee.  Mr. Beck.

 9     BY MR. BECK:

10        Q.   Special Agent Acee, I'm going to go through

11     your background a little bit quicker here.  How are

12     you employed?

13        A.   I'm a Special Agent with the FBI, assigned

14     to the Albuquerque Field Office.

15        Q.   And were you the Special Agent who is the

16     lead case agent into the investigation of the SNM

17     that led to this case?

18        A.   Yes, sir.

19        Q.   In connection with that, did you use

20     consensual cellphone wiretaps of certain cooperators?

21        A.   Yes.

22        Q.   Did you have a consensual cellphone wiretap

23     for Mario Montoya?

24        A.   I did.

25        Q.   What was the cellphone that you used to
```

SANTA FE OFFICE                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                       Albuquerque, NM 87102
(505) 989-4949                                                                                      (505) 843-9494
FAX (505) 843-9492                                                                          FAX (505) 843-9492
                                                                                                  1-800-669-9492




1    tap -- what cellphone did you tap in connection with

2    that?

3         A.   It was a phone I purchased at Walmart.  It

4    was a Samsung.  I think, in my notes back there at

5    the table, I may have the model number.  But it was a

6    flip phone I purchased.  And service was through

7    Verizon.

8         Q.   Where did you purchase that cellphone?

9    Where did the FBI purchase that cellphone?

10        A.   I purchased it at a Walmart store.

11        Q.   Did you provide that cellphone to Mr.

12   Montoya?

13        A.   I did.

14        Q.   What did you tell Mr. Montoya when you gave

15   him that cellphone?

16        A.   That phone was to be used with his

17   communications with other SNM members; that we'd be

18   recording everything that took place on that phone;

19   and that he was to use it only in communicating with

20   those members.

21        Q.   Did he follow those directions?

22        A.   He did.

23        Q.   And how do you know that?

24        A.   Well, we recovered recordings, and text

25   messages.  And I know that he followed that, because

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   we had other listening devices utilized.  And his

 2   communications with me were as per my instructions,

 3   with a separate phone, with what I'll call one of his

 4   personal phones.

 5        Q.   So he communicated with you with a personal

 6   phone other than the flip phone you gave him?

 7        A.   Yes.  If I recall correctly, he had two

 8   personal phones; then he had the FBI phone that was

 9   utilized just for communications in furtherance of

10   our investigation.

11        Q.   For his cellphone, did you have a

12   court-ordered wiretap to intercept calls and text

13   messages on that phone?

14        A.   On his cellphone that I provided him, we

15   had the court order.

16        Q.   And how did you obtain that court order?

17        A.   Through my work with your office.

18        Q.   Did you go to a magistrate judge and apply

19   for that wiretap?

20        A.   I did.  I believe actually Ms. Armijo may

21   have obtained it for me.  We did eight of them with a

22   number of extensions.  But I worked with Ms. Armijo

23   to secure those.

24        Q.   Did you have Mario Montoya's consent to tap

25   that phone?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1       A.   I did.   I used our standard FBI forms to

2   obtain consent.

3       Q.   When Mr. Montoya used that phone, did you

4   indeed capture all of the conversations and text

5   messages on that phone?

6       A.   Yes.

7       Q.   How do you know that?

8       A.   They were provided to me through our

9   Electronic Surveillance Unit in a complete package.

10      Q.   What's the Electronic Surveillance Unit?

11      A.   The FBI has a unit that's dedicated to wire

12  interceptions.   There is a standard protocol that,

13  once we obtain a court order, we provide our

14  technical agents with that court order, and all of

15  our internal approvals.   It's provided to our

16  Electronic Surveillance Unit.   And then they serve it

17  on the phone company.   They, in turn, collect the

18  data from the phone company pursuant to the court

19  order.   And then they pipe that information to the

20  field office, so that we can review it in a wire

21  room.

22      Q.   And that procedure happened with the phone

23  that was destroyed in this case?

24      A.   Yes, sir.

25      Q.   Mr. Montoya's phone?

SANTA FE OFFICE                                                                MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                        FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1         A.    Correct.

 2         Q.    So the record that we received from the

 3    wiretap and we provided to the defendants, was that a

 4    complete and unbridged record of all the phone calls

 5    conducted on Montoya's phone?

 6         A.    Yes.

 7         Q.    How did you determine which phone calls or

 8    text messages would be recorded and preserved?

 9         A.    All of them were.

10         Q.    And what data could have been intercepted

11    pursuant to that wiretap and wasn't intercepted?

12         A.    All telephone calls and text messages.

13         Q.    So was there any data or telephone calls,

14    text messages, that could have been intercepted that

15    weren't?

16         A.    No.

17         Q.    At some point, did you learn that Mr.

18    Montoya had broken his phone?

19         A.    Yes.

20         Q.    What happened?

21         A.    Well, I just prior to the takedown on

22    December 3, I caused Mr. Montoya to be relocated out

23    of state for his safety.  I did collect the phone

24    before the takedown, because I anticipated there

25    could be some last minute phone calls, and I wanted

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  him to be able to answer the phone.  So I made

2  arrangements to collect the phone from him, I think

3  about a week after the takedown.  He was back in New

4  Mexico for a short period of time.  So I asked him to

5  bring the phone.  He said there was a problem; that

6  he damaged it.  I said, "Just bring it."  And when we

7  met, he gave me the phone.  And it was in bad shape.

8       Q.   What do you mean "in bad shape"?

9       A.   It was cracked, the glass screen was

10  cracked.  The back cover was missing.  The battery

11  was -- it had a -- not a crack, but like a -- it was

12  damaged as well.  There was fluid in that area that

13  was kind of looked like syrup, to describe it.  And

14  it was missing quite a few pieces.  He apologized.

15  If I remember correctly, he said when he was loading

16  an RV that he had purchased to move out of state in,

17  he ran it over.  I think it was like in his

18  daughter's backpack, or in a backpack with some of

19  his daughter's other electronic devices that he'd

20  also run over, and was pretty upset about.

21       Q.   Did you believe Mr. Montoya when he told

22  you he ran over it?

23       A.   I did.

24       Q.   What did you do with the phone?

25       A.   I disposed of it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   Why did you do that?
 2        A.   For a couple reasons.  At the time, I
 3   didn't consider the phone itself evidence.  If it had
 4   been in good shape, I would have recycled it and used
 5   it in another case after it had been wiped.  That
 6   would save the Bureau some money, save me or the
 7   Bureau $19 buying another one, I guess.  I have a box
 8   of phones that I'll save and recycle.  So, like I
 9   said, I didn't consider it evidence at the time.  And
10   because of the condition that it was in, I didn't
11   want to leave it in my desk drawer or throw it in
12   with the other phones.  So I simply discarded it.
13        Q.   Why didn't you want to leave it in your
14   drawer and put it with the other phones?
15        A.   It wasn't in a working condition.  So there
16   wasn't any reason, in my mind at the time, to keep
17   it.  I had no use for it, and it was not able to
18   work.
19        Q.   Did you think that there was exculpatory
20   evidence on the phone?
21        A.   I didn't.  If I had any inclination that
22   there was, I would have kept it.
23        Q.   What would have given you that inclination?
24        A.   I'm not sure what would have given me -- I
25   guess --
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                              1-800-669-9492
                                                       e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1        Q.   Let me ask that a different way.  Did Mario

 2   Montoya tell you he took photographs using that flip

 3   phone?

 4        A.   No.

 5        Q.   Did Mario Montoya tell you he searched the

 6   internet on that cellphone?

 7        A.   No.

 8        Q.   Did Mario Montoya tell you that he made

 9   videos on that phone?

10        A.   No.

11        Q.   What did you think Mario Montoya used that

12   phone for?

13        A.   He just used that phone when we had

14   operations.  There were a couple of times where he

15   would get nervous, and he'd be going to a meet

16   location to meet with us before a deal, and he'd

17   forget to bring the phone, because it wasn't his.  He

18   only used it on our operations, so he'd be on his way

19   and then he'd tell me, "Hey, I'm going to be late.

20   I've got to go back to the house and get the phone."

21   My impression was he only used it, and my impression

22   is correct because we didn't have any recordings from

23   anyone else, only targets of the investigation.

24        Q.   I want to talk now about a body recording

25   device that Mario Montoya used in this case.  Did he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    use a body recorder?
 2         A.    He did.
 3         Q.    What did he use it for?
 4         A.    Anytime he met with a target of the
 5    investigation in person, we equipped him with a body
 6    recorder so that that meeting or transaction could be
 7    recorded.
 8         Q.    How often did he use the body recorder?
 9         A.    Every time he met with a target of the
10    investigation and we were conducting surveillance of
11    that meeting.
12         Q.    Now, for example, when you used this body
13    recorder, what was the procedure that you would go
14    through with Mr. Montoya?
15         A.    I maintained custody of the body recorder.
16    I would meet with Mr. Montoya before the deal,
17    because we searched him and his vehicle.  I would
18    then give him the body recorder.  We'd cover any
19    last-minute instruction or questions.  We'd go over
20    our standard briefing stuff, safety considerations,
21    stuff like that.
22              When it came time for Mr. Montoya to
23    actually meet with the target, I would activate the
24    recording.  I would listen live.  This particular
25    advice allowed me to do that, as well as the other
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    agents on scene.  And then I would deactivate the
 2    recorder when the deal was over and I would recover
 3    it from him because we needed to do a post-buy or a
 4    post-meeting search, and that's when I would recover
 5    the device.
 6         Q.   While these operations were going on, did
 7    the body recorder record everything that happened
 8    between the time that you turned it on and the time
 9    that you turned it off?
10         A.   Yes, sir.  To be very specific, I started
11    it before Montoya would arrive.  And that's why
12    you'll hear on a lot of the recordings there is music
13    playing in the car.  Then I would deactivate it once
14    he was away from the location.  I'd wait a few
15    seconds, until he was driving away before I turned it
16    off.
17         Q.   Did you listen to the recordings in
18    real-time as they were going on?
19         A.   I did.
20         Q.   Were the recordings stored somewhere else
21    in real-time as you were listening?
22         A.   Yes, sir, they were.
23         Q.   How does that work?
24         A.   So that the device allows us to listen in
25    live.  And at the same time, whatever is being picked
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   up on that wire is being recorded through -- at our
 2   Electronic Surveillance Unit.  So after the deal,
 3   I'll tell our electronic surveillance technician that
 4   I need a download of that, and then she will provide
 5   that to me on a CD.
 6        Q.   Have you listened to the recordings that
 7   were on that CD that we provided to the defense?
 8        A.   Yes, sir.
 9        Q.   And are they the same recordings -- are
10   they the same conversation that you heard
11   contemporaneously with when you recorded them?
12        A.   They are.
13             MR. BECK:  May I have a moment, Your Honor?
14             THE COURT:  You may.
15             MR. BECK:  Pass the witness, Your Honor.
16             THE COURT:  Thank you, Mr. Beck.
17             Mr. Adams, do you have cross-examination?
18   Ms. Sirignano, cross-examination of Mr. Acee?
19                     EXAMINATION
20   BY MS. SIRIGNANO:
21        Q.   Good morning, Agent Acee.
22        A.   Good morning.
23        Q.   Agent Acee, you provided an affidavit for
24   the Government's response to our motion to suppress;
25   correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.
 2        Q.    And that affidavit is consistent with what
 3   you testified to today; correct?
 4        A.    Yes.
 5        Q.    What was the phone number that Mario
 6   Montoya had that the FBI gave him?
 7        A.    I have it on my notes, if I could retrieve
 8   those.
 9        Q.    That's fine.
10        A.    Could I do that quickly?
11        Q.    Sure.
12        A.    The telephone number was 505-219-7757.
13        Q.    And you got the phone at Walmart?
14        A.    I did.
15        Q.    How much was it?
16        A.    It was 19.99 before taxes.
17        Q.    Did you sign up Mr. Montoya as an informant
18   in this case?
19        A.    I did.
20        Q.    When was that?
21        A.    I couldn't tell you off the top of my head.
22        Q.    Was it in the fall of 2015?
23        A.    I believe so.
24        Q.    Okay.  And how did you come about signing
25   him up as an informant?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   I arrested him.
 2          Q.   For what?
 3          A.   Possession with intent to distribute
 4     heroin, and being a felon in possession of a firearm.
 5          Q.   Are those charges pending today?
 6          A.   Yes.
 7          Q.   What other benefits did you give Mr. -- let
 8     me rephrase.
 9               What did you tell Mr. Montoya when you
10     signed him up as an informant regarding those cases?
11          A.   Well, he was a pretty smart guy.  He wanted
12     to talk, but he wanted to consult with an attorney
13     before he did.  So I helped facilitate that.
14          Q.   And who is his attorney?
15          A.   Michael Keefe.
16          Q.   From the federal defender's office?
17          A.   Yes, ma'am.
18          Q.   So he met with Mr. Keefe before signing up
19     with you?
20          A.   Yes.
21          Q.   When was that?
22          A.   I think it took us -- if we say the fall of
23     2015 -- I think it took roughly a couple of weeks to
24     kind of line everything up.  He was provided with a
25     Kastigar letter, and we also had to coordinate with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the State.  So it took a little longer than normal.

2    But within, I think, a few weeks, we had a sit-down

3    meeting -- I believe it was at the he Federal Public

4    Defender's Office.

5        Q.   What did you have to coordinate with the

6    State?

7        A.   I was looking at Mr. Montoya or his

8    involvement in the Shane Dix homicide, which was a

9    cold case and unsolved.  And because the

10   Government -- I don't want to mischaracterize the

11   Government, but I don't believe we initially had

12   jurisdiction there, and it required the District

13   Attorney's Office be involved.

14       Q.   To investigate the Shane Dix homicide?

15       A.   Yes.  Well, I just think it was proper for

16   the DA's office and the Sheriff's Office to be there.

17   They were also at that initial meeting.  And I wasn't

18   driving that train.  That was the attorneys with the

19   U.S. Attorney's Office and the District Attorney's

20   Office.

21       Q.   He confessed to that homicide; correct?

22       A.   No.  He explained his participation in it.

23   But per his statement, he didn't pull the trigger.

24   He was involved in that homicide, though.

25       Q.   So did you sign him up like a regular

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                          1-800-669-9492
                                                   e-mail: info@litsupport.com



1    informant, with all the FBI policies and the

2    paperwork?

3        A.   Yes, ma'am.

4        Q.   What was his name in the FBI?

5        A.   "Pyro."

6        Q.   "Pyro."  Did you pay Mr. Montoya?

7        A.   He received benefits in the form of, like,

8    fuel, relocation.  And I paid for a trade school for

9    him.  I don't believe I ever paid him where I handed

10   him cash and he signed a receipt for that.  My

11   payments were definitely benefits, but I don't

12   believe I ever gave him money because he was working

13   off charges.

14       Q.   And you said the charges are still pending?

15       A.   Yes.

16       Q.   And he picked up new charges recently;

17   correct?

18       A.   He did.

19       Q.   You said he had two personal phone numbers,

20   in addition -- or two personal phones in addition to

21   the FBI phone.  Do you know those two numbers?

22       A.   I don't.  Mr. Montoya had a lot of phones,

23   and he changed his numbers frequently, like a lot of

24   guys like him do.

25       Q.   What does that mean?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                          e-mail: info@litsupport.com

1          A.   That means a lot of the SNM informants and

2    other informants that are involved in drug

3    trafficking, they frequently change their numbers.

4          Q.   So would you call him on the FBI phone or

5    would you call him on his personal phone?

6          A.   Personal.

7          Q.   What was that number?

8          A.   I couldn't tell you.

9          Q.   Why would you call him on the personal

10   phone?

11         A.   That's how I communicated with him.

12         Q.   Why?

13         A.   Well, I needed to communicate with him as

14   an informant.

15         Q.   But his personal phone wasn't being

16   recorded; correct?

17         A.   It was not.

18         Q.   Why did you choose to use that phone

19   instead of the recorded phone?

20         A.   Well, I'm not the subject of the

21   investigation, so I'm not interested in recording

22   myself.

23         Q.   Have you turned over the calls on his

24   personal phones to the U.S. Attorney's Office?

25         A.   No.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                      1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                            e-mail: info@litsupport.com

```
 1        Q.   Why not?
 2        A.   I don't believe they contain any evidence.
 3        Q.   They were involved in the investigation;
 4   correct?
 5        A.   They were.
 6        Q.   And you didn't turn it over?
 7        A.   I have not turned over the personal phone
 8   records of any of the informants.
 9        Q.   So you're saying that you used other
10   informants' personal phones to conduct an FBI
11   investigation?
12        A.   No, I don't use their phones to conduct the
13   investigation.  I use their phones to call them to
14   talk to them.
15        Q.   Which, presumably, would involve an
16   investigation, right, a federal investigation?
17        A.   I think everything I do involves a federal
18   investigation.  But the fact that I'm talking to an
19   informant to relay instructions to him, or safety
20   concerns, or tell them to meet me somewhere is not
21   pertinent to my investigation.  I'm just
22   communicating with them.
23        Q.   Which informants have you called on their
24   personal cellphones?
25             MR. BECK:  Objection, Your Honor,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    relevance.

 2              THE COURT:  Overruled.

 3         A.   Every one of them.  I'd have no other way

 4    to get ahold of them.

 5         Q.   Even if you gave them an FBI phone?

 6         A.   Yes.  I mean, I think Eric Duran is the

 7    only exception to my having to communicate with

 8    somebody over the wire phone.  Because Duran was in

 9    the Level 6, and sometimes it was difficult to get

10    ahold of him.  Informants on the street, though, I

11    would just call them on their phone.

12         Q.   Their personal phones?

13         A.   Yes.

14         Q.   Do you have a list of all of your

15    informants' personal phone numbers anywhere?

16         A.   No.

17         Q.   Why not?

18         A.   Well, there is no requirement for me to do

19    so.  That would be, I guess, the first answer.  And

20    I've not been asked to.

21         Q.   Does your phone contain an address book?

22         A.   Yes.

23         Q.   Are your confidential informants' phone

24    numbers contained in that address book?

25         A.   Some are.  To a man, not one of them has

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    kept the same number throughout the case, though.  I

2    can't think of a single informant who has kept the

3    same number.  Even their wives and girlfriends change

4    their numbers.

5         Q.   Right.  So would you call Grace Duran on

6    her personal cellphone?

7         A.   I have, or she's called me, and --

8    Ms. Duran, we talk about two of them, the younger

9    one; I've only talked to the older one once.  She

10   changes her phone like clockwork.

11        Q.   Going back to Mr. Montoya, would his two

12   personal cellphone numbers be in your cellphone

13   address book?

14        A.   No.  I may have a couple numbers for him.

15   But, as you're aware, I had some difficulty getting

16   ahold of him, which resulted in my requesting an

17   arrest warrant for him for pretrial violations.  So

18   the two numbers that I -- the last two numbers I have

19   for him, I may still have.  But he was unresponsive

20   to those, and presumably changed his number again.

21   Mario, Mr. Montoya, would text me or call me from

22   different numbers all the time.

23        Q.   And would that information be on your

24   cellphone?

25        A.   I believe I may have one or two old numbers

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                      1-800-669-9492
                                            e-mail: info@litsupport.com



31

```
 1    for him.  I don't still have the phone number that I
 2    was communicating with him on in the spring of 2015.
 3         Q.   Can you preserve that phone, those phone
 4    texts for me, Agent Acee?
 5         A.   Yes.
 6         Q.   Thank you.
 7              So you talked about the Electronic
 8    Surveillance Unit providing you with a complete
 9    package of phone calls and text messages; correct?
10         A.   Correct.
11         Q.   And, as we saw the other day, how do you
12    know if it is a complete package?
13         A.   I have no reason to doubt them.
14         Q.   Even after yesterday, or the day before,
15    when we went through Mr. Duran's master text file and
16    the Cellebrite reports, which are not identical?
17         A.   Yes, I still don't have reason to doubt
18    them.  If anything, I need to go back, and I need to
19    expand on my knowledge of why that occurred.  Because
20    that's not my area of expertise.
21              But I've been involved in a number of
22    wiretap investigations with the Bureau, or the DEA,
23    and I've never observed any discrepancies in the
24    recordings.
25         Q.   DDA?  What's that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          A.    The DEA.

2          Q.    DEA.   Thank you.

3                But, as you saw a couple days ago, there

4    are discrepancies in at least one cellphone in this

5    case; correct?

6          A.    I don't know that there is discrepancies.

7    I think there is -- my lack of knowledge on that, I

8    think it's probably easily explainable.   I just need

9    to talk to the folks who can educate me on that.

10         Q.    So the other day I showed you the text file

11   from the Cellebrite report that your training Agent,

12   Stemo did, the text messages from the Cellebrite

13   report that Mr. Bryan did, and the 800-page master

14   text file.   And there is text messages on the

15   Cellebrite report that aren't on the master text

16   file; correct?

17         A.    I need to take a closer look at them.   I'm

18   not sure.   You know, you also pointed out and

19   Mr. Lowry pointed out that on the Cellebrite reports,

20   it looks like there is only four or seven text

21   messages.   And we know that that's not true either.

22   I just don't know that that cellphone has the

23   capacity -- these are pretty cheap cellphones -- to

24   have saved 800 calls or text messages.   I don't know

25   that that phone is capable of doing it.   So I need to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   speak with folks from Verizon, as well as our

 2   Electronic Surveillance Unit, to be able to answer

 3   those questions better.

 4        Q.   Did you have digital evidence training when

 5   you were at the FBI Academy?

 6        A.   I did.

 7        Q.   Tell me about that.

 8        A.   That's part of our seven-month curriculum

 9   while we're there.  I had similar training as a

10   police officer.

11        Q.   And in your training, both as a police

12   officer and with the FBI, they tell you to maintain

13   original evidence; correct?

14        A.   Yes.

15        Q.   So a cellphone is original evidence;

16   correct?

17        A.   I think it depends on the circumstances.

18        Q.   The FBI, through the Scientific Working

19   Group on Digital Evidence, they work together, and

20   they set out standards to -- for all peace officers

21   and law enforcement officers on digital evidence;

22   correct?

23        A.   I'm not familiar with that organization.

24   What I can represent is that I have obtained training

25   on evidence collection that is from that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    organization.
 2         Q.   What kind of training?
 3         A.   As you mentioned, police academies.
 4    Following that, I went through a field training
 5    program with a senior officer, and the same sort of
 6    protocols at the FBI.
 7         Q.   And then, in all those trainings -- since
 8    I've been to them, too -- they tell you to preserve
 9    the original evidence; correct?
10         A.   I agree with you.
11         Q.   So why didn't you preserve these cellphones
12    in evidence?
13         A.   At the time, I didn't consider the phones
14    evidence.  If the circumstances were different, and
15    Mario Montoya were the target, then I would.  As you
16    know, I collected, or caused agents to collect
17    Mr. Garcia's phones.
18              At the time, though, being that he was a
19    government agent, and that the conversations were
20    being recorded by the FBI, I didn't consider the
21    phone itself evidence.
22         Q.   Contrary to all the training you've had?
23         A.   I don't think that's contrary, no.  If I
24    thought there were evidence on the phone itself --
25    again, if that -- I'll just leave it at that.  If I
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1    thought there was evidence on the phone itself, then

 2    I would have collected it and booked it into

 3    evidence.  I'll be very honest with you, ma'am.  The

 4    reason we have some of the phones is because I simply

 5    put them in my desk to preserve, to reutilize in an

 6    investigation in the future.  I didn't consider the

 7    phones evidence at that time.

 8         Q.   When did Mr. Montoya allegedly back over or

 9    run over his phone, his FBI phone?

10         A.   I'd characterize it as sometime between the

11    takedown and my requesting to meet with him one to

12    two weeks later.

13         Q.   Can you give me a month and year?

14         A.   I think it would be December of 2015.

15         Q.   Did he tell you right away?

16         A.   No, I don't think it came up until I asked

17    for the phone.  I don't know that he thought he was

18    going to turn the phone back in.  We didn't discuss

19    that.

20         Q.   Why not?

21         A.   Well, he just kept the phone, presumably,

22    on a shelf, or in his house, until I told him we had

23    something going on, or when he was engaged in talking

24    with Duran or Mr. Garcia or another SNM member.

25    That's the only time he utilized that phone.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1       Q.   You didn't contemporaneously monitor the

2   activity on that phone?

3       A.   No.   The activity was captured via the wire

4   intercept, but I didn't have live monitors on it, no.

5       Q.   You don't know, then, what was on that

6   phone when it was backed over?

7       A.   I know what was on the phone between when

8   the investigation was going on and when I had the

9   court order.

10       Q.   How long was the court order?

11       A.   It started on October 26, 2015, and it

12   terminated on November 25, 2015.

13       Q.   So between November 25 and after the

14   takedown on December 3, you have no way of knowing

15   what was on that phone?

16       A.   I don't.   But I also terminated the phone.

17   Like I pay the bills on the phones.

18       Q.   When was it terminated?

19       A.   I couldn't tell you off the top of my head,

20   but the billing cycle usually ends at the end of the

21   month.   So it would have been terminated at the end

22   of November.

23       Q.   You have no idea what was on that phone

24   from when your wire went down on the 25th of

25   November, to when it was terminated?



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                        1-800-669-9492
BEAN & ASSOCIATES, Inc.                      e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

```
1        A.   I don't believe anything was on the phone.
2        Q.   Well, yes, but we don't have the phone;
3    correct?
4        A.   We do not.
5        Q.   Because you decided to throw it out;
6    correct?
7        A.   I did dispose of it.
8        Q.   Did you take a photograph of it before you
9    disposed of it?
10       A.   No.
11       Q.   It was original evidence, right?
12       A.   You and I are disagreeing on that.
13       Q.   Well, we are indeed.  But based on your
14   training at the FBI and the police academy, a
15   cellphone is original evidence; correct?
16       A.   Again, it depends on the circumstances.
17       Q.   And in this circumstance, it was the
18   original evidence; correct?
19       A.   I believe the wiretap is the original
20   evidence.
21       Q.   So you said Mr. Montoya likely -- he often
22   forgot to bring the phone to use during operations;
23   correct?
24       A.   Not often, once or twice.
25       Q.   Was he using his personal phone during
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   those operations?

2        A.   No.

3        Q.   How do you know?

4        A.   Because he communicated -- well, one, I

5   know that on Duran, Duran didn't know he was an

6   informant.  So we caused Duran to get Mario's number.

7   We also did the same thing with Mr. Garcia.  We,

8   through the informant, informed Mr. Garcia what

9   Montoya's number was.  I instructed Montoya to only

10  use that phone in communicating with those guys.  And

11  that's what our observations were, and he confirmed.

12       Q.   You didn't hear the phone call between Mr.

13  Montoya and Mr. Baca about destroying the phone

14  contemporaneously with the conversation, did you?

15       A.   No.

16       Q.   When did you learn of that conversation?

17       A.   After the fact.  In reviewing phone calls

18  for preparation for grand jury.

19       Q.   Months after the fact?

20       A.   Yes.

21       Q.   You didn't take the phone to the tech agent

22  to see if there was any evidence on the phone to

23  recover, did you?

24       A.   No.  Do you mean like the RCFL?  The tech

25  agents wouldn't mess with the phone.  They would just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    help us with the technical aspects of the job.  Any
 2    kind of review would have been done by us, the
 3    agents, at the RCFL.
 4         Q.    What's the RCFL?
 5         A.    The Regional Computer Forensics Laboratory
 6    in Albuquerque.
 7         Q.    You didn't do that?
 8         A.    No.
 9         Q.    At any time was Mr. Montoya using drugs
10    when he was working with you?
11         A.    No.
12         Q.    How do you know?
13         A.    Because he was tested regularly.
14         Q.    By whom?
15         A.    By a couple different entities.  U.S.
16    Probation, us, as well as the trade he was involved
17    in would test him.
18         Q.    What trade?
19              MR. BECK:  Objection, Your Honor,
20    relevance.
21              THE COURT:  What's the relevance of that?
22              MS. SIRIGNANO:  I just wanted to know who
23    else was testing him.
24              THE COURT:  Well, sustained.  We've got the
25    FBI testing.  I think that's what's important.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



1    Q.   After that phone call between Montoya and

2  Mr. Baca, did you speak to Mr. Montoya about the

3  destruction of his cellphone?

4    A.   Not in relation to the conversation with

5  Baca.

6         But, yes, I talked to him about how the

7  phone got -- like why he's handing me a broken phone

8  that's leaking battery acid.

9    Q.   At the time, in December of 2015, or after

10  you heard the conversation between him and Baca?

11   A.   I didn't question him about his

12  conversation with Baca.  I think he was just going

13  along with a lot of the things Baca said.  I

14  questioned Mario as to why he was handing me a broken

15  phone.

16   Q.   What did you ask him?

17   A.   What the -- you know -- bleep is this?

18  What did you do to my phone?

19         And he said, you know, sorry.  And he

20  related how he was packing and backed over it with

21  his RV.  He was in a hurry to leave with his family.

22  And also I think he ran over some of his daughter's

23  stuff.  He was pretty upset about it.  I didn't make

24  any more of a deal about it than that, and just tried

25  to calm him down and get him on the road.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                    1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

```
 1              MS. SIRIGNANO:  May I have a moment, Your
 2    Honor?
 3              THE COURT:  You may.
 4        Q.   One last question.
 5              Did you give Mr. Montoya any instructions
 6    or guidelines regarding the use of his personal
 7    cellphones for contacting other SNM members?
 8        A.   Yes.
 9        Q.   What were those?
10        A.   "Don't use it.  Just use the wire phone."
11              MS. SIRIGNANO:  Thank you.  Pass the
12    witness.
13              THE COURT:  Thank you, Ms. Sirignano.
14              How about any of the other defendants?  Do
15    they have questions of Mr. Acee on Mr. Garcia's two
16    motions?
17              All right.  Mr. Beck, do you have redirect
18    of Mr. Acee?
19              MR. BECK:  Yes, Your Honor.
20              THE COURT:  Mr. Beck.
21                    REDIRECT EXAMINATION
22    BY MR. BECK:
23        Q.   Special Agent Acee, I think you testified
24    on cross-examination that you engaged in phone calls
25    with cooperators on their personal cellphones?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes.
 2        Q.   Did you talk in substance about any of the
 3   defendants in this room?
 4        A.   No.
 5        Q.   Did you talk with them about any
 6   exculpatory information in those phone calls with the
 7   cooperators?
 8        A.   No.
 9        Q.   What were those phone calls with the
10   cooperators about?
11        A.   Mostly:  Be here on this day at this time,
12   and this is where we're meeting.
13        Q.   Did you also check in with them if you were
14   supervising them?
15        A.   Yes.  They had to check in with me daily.
16   So those communications would start in the morning.
17        Q.   And the same questions with those
18   communications.  Did you talk to them in those
19   communications substantively about the defendants in
20   this room?
21        A.   No.  Those conversations were solely me
22   fulfilling my duties as performing their pretrial
23   supervision.
24        Q.   You talked with Ms. Sirignano about Duran's
25   cellphone.  Do you remember that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes.
 2        Q.   Was that cellphone also -- was there also a
 3   wiretap on that cellphone?
 4        A.   There was.
 5        Q.   Were the phone calls and text messages on
 6   that cellphone recorded and preserved pursuant to
 7   that wiretap?
 8        A.   Yes, sir.
 9             MR. BECK:  Nothing further, Your Honor.
10             THE COURT:  Thank you, Mr. Beck.
11             All right.  Mr. Acee, you may step down.
12   Thank you for your testimony.
13             Mr. Beck, is the Government going to have
14   any further witnesses or evidence?
15             MR. BECK:  That's all we have, Your Honor.
16             THE COURT:  Mr. Keefe, do you know if Mr.
17   Montoya is here yet?
18             MR. KEEFE:  Your Honor, I haven't been
19   notified by the marshals whether he's arrived.  I
20   think they said it would be about an hour when we
21   were downstairs.
22             THE COURT:  Okay.
23             MR. ADAMS:  Judge, may I step out very
24   briefly, two minutes?
25             THE COURT:  Yes.  Well, if there is nothing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    else we can do on this motion, let me ask --

2    Mr. Keefe, did you have something?

3              MR. KEEFE:  Your Honor, I just would ask,

4    if we could have a few minutes to speak with Mr.

5    Montoya when he does arrive.  We'd just ask for a few

6    minutes to speak with Mr. Montoya when he does

7    arrive.

8              THE COURT:  Okay.

9              MR. ADAMS:  Judge, obviously we have -- the

10   rule has been invoked for all evidentiary hearings.

11   It's certainly appropriate for a lawyer to meet.  We

12   just don't want the prep to involve anything that was

13   related to Special Agent Acee.

14             THE COURT:  You would agree with me,

15   Mr. Keefe, that even though you've been in the room,

16   and everybody agrees you should be in the room,

17   you'll not be a conduit for passing on to Mr. Montoya

18   what occurred here today?

19             MR. KEEFE:  Yes.

20             THE COURT:  Thank you, Mr. Keefe.

21             All right.  If there is nothing more we can

22   do on those two motions of Mr. Garcia, is there

23   anything else people were thinking about overnight;

24   had a couple of things that I relayed to you this

25   morning.  Is there anything else that people thought

SANTA FE OFFICE                                                            MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                              1-800-669-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1    about that you need rulings on, evidentiary rulings,
 2    wanted to talk about these issues?  Mr. Villa?
 3              MR. VILLA:  Your Honor, I just had a
 4    thought, and you probably have thought about this.  I
 5    know you said yesterday that you hadn't finished
 6    considering the courtroom setup.  But if the five
 7    defendants in trial are to be shackled, I'm just
 8    wondering where they're going to sit so that the jury
 9    doesn't see that.  If they're sitting in a circle, I
10    think the shackles will get revealed.  I'm just
11    curious --
12              THE COURT:  I'm fairly confident -- I don't
13    want to talk about how they're going to be set up
14    right at the moment, but I'm fairly confident that
15    we're going to have them positioned in a way so that
16    no jurors are going to be able to -- the voir dire --
17    after that, it gets kind of simple -- but during voir
18    dire that anybody will see shackles.  You can talk to
19    Ms. Wild about it, if you want to go into detail, but
20    I don't want to get into great detail here on the
21    record on it.
22              MR. VILLA:  I understand that, Your Honor.
23    You know when it might be set up?  So, for instance,
24    if we're here the week prior, we just want to get a
25    look at it maybe before Monday?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Ms. Wild, are you on the phone?
 2   Ms. Wild, are you on the phone?  Talk to Ms. Wild
 3   about that.  I think she'll be able to provide that
 4   information to you.
 5              THE CLERK:  I am.
 6              THE COURT:  Hold on just a second.  I'm
 7   talking to Ms. Standridge.  One second here.
 8              (A discussion was held off the record.)
 9              THE COURT:  All right.  Have you been
10   listening, Ms. Wild?
11              THE CLERK:  No, Judge, I haven't been able
12   to hear anything.
13              THE COURT:  Okay.  The question on the
14   table is from Mr. Villa, and he's asking about -- he
15   had two things.  He had some questions about the
16   actual setup here in the courtroom.  And I said that
17   we were confident, that we had looked at enough
18   arrangements that the jurors would not be able --
19   during voir dire and I think it will be a lot easier
20   after voir dire -- we're confident we can make
21   arrangements so that the jurors and the venire cannot
22   see any of the shackles that the defendants are going
23   to have on their feet, and that's correct; correct?
24              THE CLERK:  Correct.
25              THE COURT:  And Mr. Villa also wanted to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   know what that arrangement was going to look like.
 2   And I said we had not quite decided, but we were
 3   confident that it was going to work out.  But that we
 4   didn't want to put anything right on the record right
 5   at the moment.  And that he and others could talk
 6   directly to you about that.  Do you want to deviate
 7   from that answer in any way?
 8             THE CLERK:  Not at this time.
 9             THE COURT:  All right.  Then here -- and
10   this is what Ms. Standridge is telling me, so if you
11   have a different view or want something different,
12   let me know.  Next week this room is going to be out
13   of service because they're going to be upgrading some
14   of the technology here.  I don't know if it's the
15   microphones or things, but it's going to be out of
16   service.  And they're going to be putting in some
17   upgrades.  So starting the 22nd, that's when the
18   reconfiguring of this courtroom is going to take
19   place.  It will take place on the 22nd, 23rd, and
20   probably most of the 24th.  You probably can come in
21   here on the 24th and look at it, and get a pretty
22   good sense of what we're going to be using.  You
23   certainly will be able to see it on the 25th and
24   26th.  Because we're going to be, you know, doing
25   some test runs to make sure we don't have any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   glitches on the 29th.  So is that responsive?
 2          MR. VILLA:  Yes, Your Honor.  I think that
 3   works, because we've got to get the clothes to the
 4   marshals at that time.  So it's good timing.
 5          THE COURT:  Anything you want to add to
 6   that, Ms. Wild?
 7          THE CLERK:  I can't hear what was said.
 8          THE COURT:  You couldn't hear what I said?
 9          MR. VILLA:  I heard what you said -- oh,
10   what you said?  What I'd like to be able to do is get
11   out a diagram to them so they have an idea that
12   doesn't require necessarily viewing the courtroom in
13   person.  And I hope to have that out by early next
14   week.
15          THE COURT:  Okay.  And all Mr. Villa said
16   in response to what I said, if you heard what I said,
17   he said that would work for them because they're
18   going to have to get clothes to the marshals for the
19   defendants about that same time anyway.
20          THE CLERK:  Okay.
21          THE COURT:  All right.  Anything else?  Any
22   other questions?
23          MR. VILLA:  Thank you, Ms. Wild.
24          THE COURT:  Comments?
25          MR. ADAMS:  Judge, I have one issue --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Mr. Adams.
 2              MR. ADAMS:  -- since we're just jumping in
 3    and adding stuff.
 4              What I had heard from Special Agent Acee is
 5    that he was in communication with the cooperators on
 6    their personal cellphones through text messages and
 7    through oral calls that, to my hearing -- and I'm a
 8    little jaded -- but it seemed, by design, to not
 9    leave a paper trail.  We have asked -- and I've
10    discussed this with my brothers and sister at counsel
11    table -- I've asked if any of this has been provided
12    to us by way of Rule 16 or Brady or anything else.
13    We think the motivations and instructions or the prep
14    that was given to various cooperators before
15    individual conversations, or how they were coached up
16    to elicit discriminating statements, would be very,
17    very, very critically important for the trial.
18              They told me they would look into this
19    more; that they don't believe any of that has been
20    preserved; and that they don't believe any has been
21    turned over.  But they'll look into that.  I
22    anticipate this will be an issue that we'll be going
23    into at great length at the trial.  So I just want to
24    put it on your radar, that if nothing is preserved,
25    then they can't turn it over.  But we're not pleased
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    with it.  If items were preserved, then I think

2    they're going to work double-time to get it to us.

3    And we'll follow up with whatever will be appropriate

4    if they do find something.

5              THE COURT:  All right.  And you've been

6    talking to Mr. Beck about that?

7              MR. ADAMS:  Mr. Beck and Mr. Castellano and

8    Ms. Armijo.

9              THE COURT:  Is that y'all's understanding

10   as well, you'll look into it?

11             MR. BECK:  Yeah, that's accurate, Your

12   Honor.

13             THE COURT:  Okay.  Anybody else?  Any other

14   evidentiary issues?  Mechanics?  Anything else we

15   need to discuss, want to discuss?  Mr. Lowry?

16             MR. LOWRY:  Well, Your Honor, just a few.

17             Your Honor, over the last -- well, Monday,

18   we heard from Mr. Del Valle -- and he's not here --

19   but we anticipate calling Grace Duran as a witness in

20   this case.  And his dual representation in the same

21   matter of Grace Duran and Eric Duran is going to

22   cause some problems.  So we anticipate filing a

23   motion to conflict him out of Grace Duran's

24   representation.  So I just want to give you a

25   heads-up we're working on that now.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  Ms. Wild, maybe you know
 2   something about this.  Did Mr. Del Valle, did he
 3   start representing Grace Duran after we appointed him
 4   to be the CJA lawyer, and he picked it up as
 5   additional representation?  It's not part of our CJA
 6   appointment, is it?
 7          THE CLERK:  It is not.
 8          THE COURT:  So this is just something he
 9   picked this up on his own?
10          THE CLERK:  I would have to presume.
11          THE COURT:  Okay.
12          MR. LOWRY:  Having just gone through all
13   the conflict rules, I'm pretty familiar with them.  I
14   would think that the dual representation in the same
15   matter, where they have potentially -- well, not
16   potentially, in my view, but divergent interests --
17   would be inappropriate, Your Honor.  So I just want
18   to bring that to the Court's attention.
19          There is one other matter -- it's a little
20   premature, but since the Court is inquiring, I just
21   want to get it out there -- you know, in state court,
22   where I practice a bit, there is procedural mechanism
23   for the defense to file for witness immunity.  And I
24   was discussing this with some of my colleagues last
25   night.  This is something we're considering doing in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    preparation for the trial.  We've communicated -- and

2    I don't want to get into the identities yet -- with a

3    few people who have relevant and material

4    information, yet we're running into the obvious

5    problems where witnesses really don't want to get

6    subpoenaed or come in, because they're afraid that

7    they're going to be invited into the next RICO

8    prosecution, if they were to testify for the defense,

9    Your Honor.  So I'll work with my colleagues on that.

10   But I just didn't know if the Court had any thoughts

11   or inclinations we should be addressing when

12   researching and drafting these kinds of motions?

13           THE COURT:  Well, I certainly don't mind

14   being educated on it.  But if the Government is not

15   prepared to grant immunity to somebody, I don't think

16   there is anything I can do, or the defendants can do

17   to give immunity.  Do you?

18           MR. LOWRY:  Well, I know in New Mexico

19   courts they found it to be a due process violation to

20   basically tie the hands of the defense from material

21   witnesses in the case.  But that would be the nature

22   of the argument.  But, obviously, I'm just here to

23   plant a flag, so to speak, so the Court knows what

24   I'm thinking, where we're heading.  But I look

25   forward to educating you on that, and we are going to

SANTA FE OFFICE                                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                                    Albuquerque, NM 87102
(505) 989-4949                                                                                               (505) 843-9494
FAX (505) 843-9492                                                                                      FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   work mightily to do that.
 2           THE COURT:  My impression is that is very
 3   different in state court than it is in federal court.
 4   It basically rests in the discretion of the
 5   Government to grant or deny immunity.
 6           MR. LOWRY:  That's my -- as I stand before
 7   you right at this moment, Your Honor, that's my
 8   essential understanding as well.
 9           THE COURT:  They can play some pretty hard
10   ball.
11           MR. LOWRY:  And they are.  And we expect
12   them to play some pretty hard ball.  But, if you look
13   at the Berger Standard, they're fair to strike hard
14   blows, but not foul ones.  And we can argue about
15   whether that's foul a blow or not.  But, if nothing
16   else, we'll be reducing that to paper and litigating
17   and reserving it for an appellate issue.  I mean, it
18   may be time for the federal courts to mimic state law
19   on this issue.
20           THE COURT:  Okay.  Don't get optimistic
21   about that.
22           MR. LOWRY:  Your Honor, I'm a criminal
23   defense lawyer because I'm an optimist.
24           THE COURT:  You are an optimist, or not an
25   optimist?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1                  MR. LOWRY:  I am.

 2                  THE COURT:  All right.  Ms. Armijo?

 3                  MS. ARMIJO:  Your Honor, we did think of

 4     something last night that -- and I have not brought

 5     it up, but I'll bring it up now -- when we were

 6     talking about 609, I believe the agreement was that

 7     the defense was not going to have to provide the

 8     United States with written notice of what they

 9     believe -- impeachable material on our witnesses, and

10     vice versa.

11                  We've had a couple of cooperators testify

12     that have pending charges, and I -- we did not agree,

13     of course, to them extending past 609 to things like

14     impending charges.  So I guess I am putting it out

15     there that we would oppose, and would ask for a

16     pretrial ruling on anything that our cooperators --

17     that are pending charges that are not part of their

18     cooperation; for instance, Mr. Duran's felon in

19     possession case.  Before he testifies, I think it

20     needs to be ironed out what, if anything, can be

21     talked about that.  Or Mr. Montoya, I'm sure the

22     defense will try get into it today, but I know the

23     United States would be objecting, and his attorneys

24     as well, as to his pending Colorado case.

25                  So before it's just brought out in front of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the jury, I think that with each witness we probably

2   need to decide that issue.  And certainly, I wouldn't

3   expect anyone in opening statements to be saying.

4   "You will hear from Mr. Duran who was arrested," et

5   cetera, et cetera, et cetera.  Because that is --

6   although they will be arguing that is impeachment --

7   it's not 609, we have not had any notice of that, and

8   it should be something that the Court rules on ahead

9   of time.

10          THE COURT:  Well, if it's not 609, then,

11  what is it that kicks us into --

12          MR. ADAMS:  I think it's straight motive

13  and bias, and completely fair game, and fair game for

14  opening statements.  It's not the Government's

15  intention with the witness.  It's the witness' mental

16  state that's subject to attack, and broad attack, and

17  vicious attack, if we have the goods to do it.  And

18  new pending charges are certainly fair game for that.

19          THE COURT:  Well, I guess my analysis would

20  be slightly different than Mr. Adams.  But it would

21  be that, given the package of benefits that these

22  cooperating people are getting, some of which is

23  ongoing, and maybe the resolution of ongoing criminal

24  charges, isn't it fair game for the defendants to get

25  into pending charges against the cooperating

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    defendants, to explore whether they are going to
 2    receive some benefit from the Government for their
 3    cooperation?
 4              MR. BECK:  I think --
 5              THE COURT:  That's not a 609 issue.  I
 6    don't see pending charges -- correct me if I'm
 7    wrong -- but I don't see pending charges being a 609
 8    issue.  It is the basket of credibility, I guess, is
 9    what I would --
10              MR. BECK:  I think that's right, Your
11    Honor.  I think that is proper fodder for
12    cross-examination and impeachment evidence.
13              I think the United States' concerns for
14    someone like Duran or Mr. Montoya who are facing
15    criminal --
16              THE COURT:  Are you worried about their
17    Fifth Amendment issues?
18              MR. BECK:  Exactly.  That's our concern, is
19    that -- you know, I don't think it's relevant to get
20    into exactly the nuts and bolts of what happened, and
21    it treads upon their Fifth Amendment rights.  They
22    can say there are pending charges, they're
23    unresolved; they can get into whether they expect
24    that they'll gain some benefit in those cases from
25    testifying for us in this case.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        But I think Rule 403 would limit them from

2   going into cross-examination that would elicit

3   incriminating information.

4        MR. CASTLE:  Your Honor, if I could address

5   this briefly?

6        THE COURT:  Let me get Ms. Duncan, then

7   I'll come back to you, Mr. Castle.

8        I mean, it would seem to me that that would

9   probably be the appropriate line.  We don't want to

10  get these guys in more criminal trouble and violate

11  their rights.

12       Let's see, with Mr. Duran we're going to

13  have Mr. Del Valle there.  He can sit over here and

14  help draw that line.

15       We've got Mr. Keefe for Mr. Montoya.  I'm

16  going to have to refresh my memory about Mr. Cordova.

17  Is he pretty clean?

18       MR. VILLA:  Mr. Samore.

19       THE COURT:  That's right.  Mr. Samore was

20  here.  Okay.  So they're going to have attorneys.

21       Let me ask this:  I mean, if we've got an

22  attorney here -- Mr. Beck, Ms. Armijo, if we've got

23  an attorney here, and we go too far, don't we have

24  the protections in place so that their Fifth

25  Amendment rights are not going to be abused by this

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    process?

2            MR. BECK:  I think that is the safeguard in

3    place, yeah.

4            THE COURT:  So then what is the concern,

5    then about, either in opening statements or in

6    cross-examination of the defendants here, going full

7    bore against the cooperating witnesses?  It seems to

8    me that it's going to all be subject to maybe a

9    relevancy objection, 403 or something like that.  If

10   people go too far, you know, I just may cut it off

11   after they make their point that the person is

12   getting benefits, have received benefits, and may get

13   benefits in the future, even for future criminal

14   activity.  After they've sort of made their point, I

15   may start saying:  We've seen enough.  But don't we

16   have in place the mechanism so that they can go ahead

17   and bring these things out in openings if they need

18   to?

19           MR. BECK:  I think we do.  I think we just

20   got jealous of all the defense attorneys piling stuff

21   on that you should be aware of at trial, and wanted

22   to pick one for ourselves.  I think you're right,

23   Your Honor.

24           THE COURT:  All right.

25           MS. ARMIJO:  Your Honor, I think the issue

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    is if the witness is not allowed to say the details
2    of what they copped to, the defense attorneys know
3    that, then in opening statements they can't get into
4    the fact -- for instance, the child abuse charge that
5    is not a charge -- that was not -- that was
6    unfounded -- they can't be able to get up here and
7    start talking about -- or the felon in possession
8    details.  We would ask in opening statements, until
9    it is determined by the Court, that they can't get
10   everything out, knowing full well that there will be
11   objections as to that, and the Court may limit them
12   based on a Fifth Amendment right.  That's the concern
13   about opening statements.
14            Closings are obviously going to be
15   different, because the evidence will be in.  But if
16   there is something that they know that will be
17   sustained by this Court -- and I agree that the fact
18   that there are pending charges -- but there are other
19   things that this Court may prevent them from getting
20   into.  And that is what we are concerned about in
21   opening statements.
22            THE COURT:  Well, give me -- let's try to
23   be concrete here.  What is it that you're concerned
24   with your three big cooperators here?  What are you
25   thinking of that they're going to do?  And maybe I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    can just rule.

2            MS. ARMIJO:  Well, Billy Cordova is not

3    facing any charges.

4            THE COURT:  He's pretty clean.

5            MS. ARMIJO:  He doesn't have anything.  So

6    there are no concerns with Billy Cordova.

7            Mario Montoya has his pending cases -- and

8    I would have to consult with Mr. Keefe to get into

9    exactly what they would want to -- allow to get into.

10   But he does have, I believe it's a car theft charge

11   and a misdemeanor that's pending in Colorado.

12           Eric Duran has more -- his are not even

13   charged at this point.  And so there is the felon in

14   possession of possible heroin, that would be a

15   misdemeanor over there.  And then they've made

16   allegations about -- there is a report on child

17   abuse, but it was unfounded by the state, as far as

18   we know.  I see Ms. Duncan, who may share more light

19   on that right now.

20           But these are the sort of things that

21   before opening statement, if there is a Fifth

22   Amendment right to, and it's going to be blocked out,

23   the details of it, then they shouldn't be able to go

24   into it in opening statements.

25           THE COURT:  Well, this is what I propose to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   do -- and I'll hear from Mr. Castle and Ms. Duncan --
 2   but here's what I propose to do:  The Government
 3   identify exactly what you don't want the defendants
 4   to go into on opening and in cross without coming up
 5   to the bench.  And then I can make a call.  Right at
 6   the moment, I'm not seeing or hearing anything that I
 7   can really tell the defendants they can't go there.
 8   I might need to be refreshed on the child abuse
 9   charges.  Were they dismissed?  Did they turn out
10   they didn't exist?  But right at the moment, without
11   more information, I'm not going to make any ruling
12   that they're precluded from going into anything.  But
13   I'll reconsider it, if the Government focuses on a
14   specific charge or something like that.
15            All right.  Ms. Duncan?
16            MS. DUNCAN:  Your Honor, I think the
17   approach that you're proposing is the right one, and
18   for us to know exactly what it is that the Government
19   doesn't want us to get into.
20            But I think that these charges are relevant
21   for the package of benefits they're getting from the
22   Government.  And with respect to Mr. Duran, you heard
23   him testify that he was cooperating with the
24   Government out of the goodness of his heart and to
25   give back to the community.  And the way he's giving
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                        1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                         e-mail: info@litsupport.com

```
 1   back to the community is by slapping a 10-year-old

 2   girl, possessing heroin and a firearm, and I think

 3   also some forgeries, and an attempted breaking and

 4   entering.  So this is all classic cross-examination

 5   fodder bearing on Mr. Duran's credibility.  And I

 6   think under the Sixth Amendment, we are entitled to

 7   introduce that.

 8            But, again, I think it would be helpful to

 9   know exactly what the Government is objecting to, and

10   then we can respond to that to provide the Court with

11   the basis for including that evidence.

12            THE COURT:  All right.  Well, let's try to

13   get more specific before I start precluding.  Right

14   at the moment, though, the ruling is everything is

15   fair game for the defendants on charges.

16            I would ask the defendants to help me out.

17   Y'all are defense lawyers, too.  Help me out to

18   protect these guys' rights.  You know, they're facing

19   criminal charges.  I don't want them coming in and

20   incriminating themselves.

21            Mr. Castle.

22            MR. CASTLE:  Judge, I'm raising a couple of

23   thoughts while we're here.  And we'll respond in

24   writing once we see a motion in limine from the

25   Government, which I note is past due by significant
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    weeks.
 2              THE COURT:  They can just raise it orally
 3    before we get out of here today.  If they talk with
 4    Mr. Keefe or something, and come up.  Maybe we can
 5    resolve these before we even leave here today.
 6              MR. CASTLE:  Judge, there are two Supreme
 7    Court cases I think are relevant.  One is Davis
 8    versus Alaska.  I don't have the cite.  But it was
 9    back in 1974.  That was a case in which the
10    witness -- the defense sought to cross-examine a
11    witness on the fact that he had a pending probation
12    revocation, and that the witness might be wanting to
13    cooperate with the Government in order to curry favor
14    in his probation revocation.  Obviously, you have
15    Fifth Amendment rights in a probation revocation
16    matter as well.  And the United States Supreme Court
17    said it was error for the court to restrict
18    cross-examination into the pending probation
19    revocation.
20              THE COURT:  And why were those relevant in
21    that case?
22              MR. CASTLE:  Motive and bias.
23              The second concept is, aside from motive
24    and bias, the defense is entitled to question and
25    impugn the nature of the investigation and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   handling by the Government of the case.  And the fact

2   that they're letting people out, letting them prey

3   upon the public, will certainly impugn the nature of

4   this investigation.  And that was recognized as a

5   legitimate defense method in the case of Kyles versus

6   Whitley, and the Supreme Court indicated that it was

7   a legitimate defense tactic to do that.

8           Now, these witnesses aren't going to be

9   actually unprotected.  Let's assume for a moment they

10  have a Fifth Amendment right.  The fact is they're

11  being compelled to come in and testify; they're

12  required to do so through the use of subpoena power.

13  And because of that, I would bring a third case to

14  the Court's attention, Garrity versus New Jersey, 87

15  Supreme Court 616.  And in that case, the Supreme

16  Court found that compelled testimony, in essence,

17  acts almost as an immunity for the witness because

18  it's an involuntary statement.  And the only thing

19  that's not protected there is that they're not

20  protected from charges of perjury, if they lied on

21  the stand about that pending matter.

22          And the Supreme Court has said numerous

23  times that you do not have a Fifth Amendment right to

24  perjure yourself.  So when they take the stand, and

25  they get up there and they're examined and they claim

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1    the Fifth, that's an empty claim, because they're not

2    actually exposed to any criminal exposure other than

3    the fact that they perjure themselves on the stand.

4    So I think this is all -- I'm sorry, the word hooey

5    is in my mind right now.

6              But I think if they brief it and they look

7    into this, and they actually file a motion in limine,

8    they're going to come to the conclusion that their

9    arguments will fail.

10             And so I just bring those matters to the

11   Court and the Government's attention, because I think

12   it might lead them to withdraw their thoughts in that

13   regard.

14             THE COURT:  All right.  Thank you, Mr.

15   Castle.

16             Mr. Castellano.

17             MR. CASTELLANO:  Your Honor, I hear what

18   the defense is saying.  And I understand the basis

19   for the impeachment.  I think the distinction will be

20   the fact of a charge or the fact of a probation

21   violation, those are fair game, as well as any

22   expectation the person thinks they may receive as a

23   result of being charged and cooperating.

24             I think what the defense will not be

25   allowed to do is elicit a line of questions which are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   all designed to get the witness to invoke the Fifth

2   in front of the jury.  I think that would be

3   improper.  So if they get the police report and start

4   going through every fact to ask the person whether or

5   not it's true, or whether or not that's the

6   allegation, and the person continuously invokes the

7   Fifth, I think that's where the problem lies.  And so

8   we understand the fact of a charge.  But, like I

9   said, a line of questions designed to make them say

10  nothing more than, "I invoke the Fifth," is going to

11  be the problem.  So we'll look into that further.

12          THE COURT:  All right.  I will look into

13  Mr. Castle's case.  I guess I'm not excited about --

14  I guess I don't see what the relevance of it, even if

15  you can do it, I don't think it's very relevant to

16  get into the facts of those cases.  I think you can

17  get into the charges, and if the Government is taking

18  care of matters and stuff like that.  But I probably

19  am going to start shutting down, because I'm just not

20  sure how that's relevant to the issues in this case.

21          All right?  Anything else we need to

22  discuss?  Want to discuss?

23          MS. HARBOUR-VALDEZ:  Your Honor, I just

24  want to put on the record that Mr. Burke left to take

25  a flight back to Denver.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                 1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                   e-mail: info@litsupport.com

```
 1            THE COURT:  All right.  Okay.  Anything
 2    else you want to discuss?  Comments?  Suggestions?
 3    Need evidentiary rulings, rulings on?
 4            All right.  Did you have anything, Mr.
 5    Adams?  Are you just standing there?
 6            MR. ADAMS:  I was just standing.
 7            THE COURT:  All right.  Why don't we go
 8    ahead and take our break, and see if we can get Mr.
 9    Montoya on after we take our break.
10            (The Court stood in recess.)
11            THE COURT:  All right.  We'll go back on
12    the record.  Looks like we've got everybody in the
13    courtroom, everybody has got an attorney.
14            I did have a chance to look at Garrity,
15    because it just didn't have the right feel to me.
16    And I don't agree -- I don't have the same reading of
17    it as Mr. Castle does.  In that case, Justice Douglas
18    was dealing with a statute from New Jersey that
19    warned each -- I think they were police officers --
20    that, one, anything that he said might be used
21    against him in any state criminal proceeding; two,
22    that he had the privilege to refuse to answer, if the
23    disclosure would tend to incriminate him; but
24    three -- and I think this is the source of the
25    compulsion, not the subpoena -- that if he refused to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    answer, he would be subject to removal from office.

2    And the Justice Douglas says, "The choice given

3    petitioners was either to forfeit their jobs or

4    incriminate themselves.  The option to lose their

5    means of livelihood or to pay the penalty of

6    self-incrimination is the antithesis of free choice

7    to speak out or remain silent.  That practice, like

8    interrogation practices, we reviewed in Miranda, is

9    likely to exert such pressure upon an individual as

10   to disable him from making a free and rational

11   choice.  We think the statements were infected by the

12   coercion inherent in this scheme of questioning, and

13   cannot be sustained as voluntary under our prior

14   decision."

15          So I don't think the fact that they're

16   under subpoena means that they've been granted some

17   sort of quasi-immunity or something in trial.  So I'm

18   still going to be vigorous in protecting the

19   cooperators' Fifth Amendment rights.  And Washington

20   v. Davis -- that case was one in which the judge

21   prohibited any -- going into any of the issues about

22   probation or supervised release.  I think we're well

23   beyond that.  But even that case seemed to recognize

24   that the court could impose some limits on how much

25   questioning could be done of the -- I think there, it



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   was an eyewitness rather than a cooperating witness.

 2   So there may be -- you know, recognized there were

 3   limits that the court could impose as well.  So

 4   unless somebody tells me otherwise, I'm going to be

 5   vigorous in protecting the cooperators' Fifth

 6   Amendment rights as well.

 7           All right.  I understand we have Mr.

 8   Montoya.  So, are you going to call him, Mr. Adams?

 9   Mr. Armijo?

10           MS. ARMIJO:  He was meeting with his

11   attorneys.  And I don't know if he's still downstairs

12   or not.  But he is in the building and they can bring

13   him up.

14           THE COURT:  All right.

15           MR. VILLA:  Your Honor, with respect to

16   Garrity, we're not just talking about a witness who

17   is being subpoenaed to testify because they're a

18   percipient witness or something like that.  These

19   folks have cooperation agreements with the United

20   States.  Many of them have 5K agreements, or other

21   implicit agreements, like we heard about with Mr.

22   Cordova, where he wasn't going to get indicted on

23   RICO if for his cooperation.  And they risk losing

24   these agreements if they don't testify.  So it's not

25   because they're being subpoenaed here to court.  It's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    because they fear, like the officers in Garrity

2    feared losing their, not job, but losing their

3    agreement with the United States.  And perhaps we can

4    do some more research on it and look into that.  But

5    it's something to think about when we get to this

6    issue at trial.

7          THE COURT:  Well, I guess I just am not

8    seeing the issue.  I mean, Garrity is a case about

9    voluntariness of statements.  I don't think there is

10   going to be any question, when they come into court,

11   they're going to be -- their statements are going to

12   be voluntary.  I mean, yes, somebody may put them

13   under subpoena, the Government may produce them.  I

14   don't know exactly how they're going to get here, but

15   we're not going to be questioning the voluntariness

16   of the statements.  Y'all may, on cross-examination,

17   but they're not going to be constitutionally

18   questioned, in the sense that we're going to toss

19   their statements out, or not allow their statements

20   to be used against them.

21          I think, down the road, if they say

22   something incriminating in this court, I think they

23   could be prosecuted, and that statement could be used

24   against them.  Don't you?

25          MR. VILLA:  Well, I guess that's what I'm

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                     1-800-669-9492



**BEAN**
**&ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1     thinking about with respect to Garrity.  I know in

2     the present day context to say a police officer is

3     under investigation, they have them read the Garrity

4     warning before they make a statement about it.  If it

5     happens to be an investigation that could lead to

6     criminal charges, I think -- though I don't know --

7     that there could be -- they could prevent that

8     statement from being used against them in court,

9     because they gave it under the threat of losing their

10     job if they didn't give the statement to internal

11     affairs or that sort of thing.  In this context,

12     that's what I'm thinking about; they have this threat

13     of losing their 5K deal, or whatever their

14     cooperation agreement is with the Government.

15            THE COURT:  I have just never seen Garrity

16     extended that far.

17            MR. VILLA:  I'm not sure I have either.

18            THE COURT:  So y'all are going to have some

19     work to do to convince me that these men lose their

20     Fifth Amendment rights by coming in here and

21     testifying; that they cannot incriminate themselves

22     and have statements that they make under oath in this

23     court not be used against them.

24            I'll certainly listen.

25            MR. VILLA:  Well, we'll do some research.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1          THE COURT:  I don't think it's going to be
 2   a problem.  Because by the time y'all start -- if you
 3   really are going to take a police report and go
 4   through it, and say:  Did you do this, do that, I
 5   probably am not going to allow it, because I don't
 6   see any relevance to that.
 7          MR. VILLA:  Well, I understand the Court
 8   limiting us in that fashion.  But, you know, some of
 9   the things that took place yesterday when Mr. Del
10   Valle objected on Fifth Amendment grounds for
11   Mr. Duran, I think, you know, he might want to object
12   sooner than the Court is willing to make us stop
13   asking questions.  And --
14          THE COURT:  Could be.
15          MR. VILLA:  But we'll look into that, Your
16   Honor.
17          THE COURT:  Okay.  I think y'all are going
18   to get to make your point.  I think the point's going
19   to be pretty obvious to the jury that these guys are
20   getting benefits.  And I'm not interested in trying
21   to keep you from making that point.  It's just, you
22   know, maybe it doesn't have to be made with all the
23   details of those crimes in a way that gets him to
24   have to make incriminating statements.  That's
25   probably where I'm going to draw the line.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. ADAMS:  Judge, may I chime in on this?
 2              THE COURT:  Sure.
 3              MR. ADAMS:  My observation is a little bit
 4    different than Mr. Villa's.  I don't think the
 5    witness has to testify at all.  And they could choose
 6    to invoke the Fifth and not testify at all.  If they
 7    want to testify for the Government, and they subject
 8    themselves to the adversarial system at that point, I
 9    think you're completely correct, that if a report is
10    brought out, and it's gone through line by line, and
11    the purpose of the report is that a police officer
12    thinks you did this, maybe it's not admissible.  But
13    if the point of that is -- and this is part of what
14    you were facing, and this is part of the package, and
15    this is part of your motivation for testifying, and
16    this is why you're doing this, it's completely
17    relevant.  Just like, if I had a federal sentencing
18    with somebody, and we got new charges somewhere else
19    that weren't subject to conviction, I would be going
20    over all those records very closely with my client,
21    saying like, We've got to deal with this at your
22    sentencing.  It's relevant, it's relevant to how the
23    court is going to view you.  For that same reason, I
24    think it's relevant for the jurors to get the
25    complete picture, and not some artificially narrowed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   picture, as it relates to the witness' mindset and
 2   their bias.
 3          THE COURT:  Well, I think charges and
 4   stuff, you can probably go into.  But you can't get a
 5   situation where he's going to maybe make
 6   incriminating statements against him.
 7          All right.  Mr. Montoya, if you'll stand up
 8   again, and raise your right hand to the best of your
 9   ability there, Ms. Standridge, my courtroom deputy,
10   will swear you in.
11                  MARIO MONTOYA,
12       after having been first duly sworn under oath,
13       was questioned and testified as follows:
14                 DIRECT EXAMINATION
15          THE CLERK:  Please be seated.  State and
16   spell your name for the record?
17          THE WITNESS:  Mario Monday.  M-A-R-I-O,
18   M-O-N-T-O-Y-A.
19          THE COURT:  Mr. Montoya.  Mr. Adams.
20          MR. ADAMS:  Thank you, Your Honor.
21   BY MR. ADAMS:
22       Q.  Mr. Montoya, were you given a phone by
23   Special Agent Acee?
24       A.  Yes, sir.
25       Q.  When was that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   I think it was between October and November

2  of 2015, '14.

3      Q.   Why did he give you a phone, to your

4  knowledge?

5      A.   Because these guys right here were supposed

6  to call me from prison and ask me to kill Gregg

7  Marcantel, head of the gang unit, and a couple of

8  other guys involved in the case, also "Chuco," Mandel

9  Parker, and it was supposed to be recorded.

10      Q.   Why do you believe -- who told you they

11  were supposed to call you from prison about Gregg

12  Marcantel?

13      A.   The agents.

14      Q.   So, in October of 2015, you had not heard

15  anything at all about being called or put in any sort

16  of action against Gregg Marcantel?

17      A.   I was aware before I left prison that

18  people were talking about stuff like that.

19      Q.   All right.   When did you leave prison?

20      A.   I don't remember the exact date.   It's been

21  a while.   I had a lot going on in my life at that

22  time.

23      Q.   Was it 2015?

24      A.   No.

25      Q.   2014?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    2014, or before --
 2        Q.    All right.
 3        A.    -- I believe.
 4        Q.    And there was talk about doing something
 5   crazy back at that time, when you were still in
 6   prison?
 7        A.    Yeah.
 8        Q.    Was Gregg Marcantel's name mentioned as
 9   part of that?
10        A.    Most of the time, yeah.
11        Q.    All right.  Who said it?
12        A.    Who didn't?
13        Q.    All right.  Well, my question is:  Who said
14   it?
15        A.    That's a long list.
16        Q.    Give me the list.  We'll start at the top.
17        A.    "Shadow," "Pup," "Fernie," "Krazo."
18        Q.    "Crazo" being Eric Duran?
19        A.    I think it was the other "Krazo," actually.
20   I don't know his name.
21        Q.    All right.  Where were you when "Shadow"
22   made these statements?
23        A.    Oh, it was the last time I was in prison
24   before that.
25        Q.    Any idea where you were serving your time?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492
                                                       e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1         A.    Southern New Mexico Correctional Facility.
 2         Q.    Any idea the year?
 3         A.    No.
 4         Q.    What did "Shadow" say related to Gregg
 5    Marcantel?
 6         A.    I don't remember the exact words, man.
 7    Everybody talked about it.
 8              THE COURT:  Hold on.
 9              MR. BECK:  Objection, Your Honor, to
10    relevance.
11              THE COURT:  What's the relevance of going
12    this far back?  Aren't we focusing on the phone
13    recordings?
14              MR. ADAMS:  We are.  But I started asking
15    him about when he first heard about this, and he
16    indicated it was from the Government agents, and then
17    he followed up by saying, Well, I've heard about it
18    from all sorts of sources, which is news me.  So I'm
19    trying to pin him down.
20              THE COURT:  Let's go to the phone and the
21    recordings.
22              MR. ADAMS:  Yes, sir.
23         Q.    So, in October of 2015, what agent
24    contacted you about having phone calls related to
25    Gregg Marcantel?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   I believe it was Bryan Acee.
 2          Q.   And where were you when you had that
 3     conversation?
 4          A.   We had a few conversations.  I don't
 5     remember exactly where that conversation took place.
 6          Q.   Where did you have conversations with him?
 7          A.   Sheriff's Department, Bernalillo County
 8     Sheriff's Department.  Different places that we met.
 9     I don't remember where he gave me the phone, but I
10     believe that's when the conversation took place.
11          Q.   And that was after you'd been arrested?
12          A.   Yeah.
13          Q.   All right.  What had you been arrested for?
14          A.   Possession of heroin.
15          Q.   What else?
16          A.   I believe that was all.
17          Q.   No weapons charge at that time?
18          A.   No weapons charge, I don't believe.
19          Q.   And you were arrested, and then you were
20     approached by Special Agent Acee?
21          A.   Pretty much.
22          Q.   And this was in October of 2015?
23          A.   I don't remember the date.
24          Q.   Were you released on bond?
25          A.   No.  I was released on OR.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   You were released on OR.  And was that in

2  October of 2015?

3      A.   I just told you, I don't remember the date,

4  sir.

5      Q.   How long were you in custody before you

6  were released on OR?

7      A.   I don't really remember.

8      Q.   Do you not remember -- were you using drugs

9  at that time?

10     A.   Yeah.

11     Q.   What drugs?

12     A.   Heroin.

13     Q.   And was that your drug of choice?

14     A.   Yeah.

15     Q.   And when you got out, what was your

16  understanding of what you were supposed to be doing

17  with Special Agent Acee?

18     A.   Cooperating.

19     Q.   Against the SNM?

20     A.   Yes, sir.

21     Q.   And did you have telephones?

22     A.   Yes, I had a telephone.

23     Q.   One telephone?

24     A.   Yeah.

25     Q.   You had one personal telephone in October

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    of 2015?

 2        A.   I probably had about four or five.  I break

 3    a lot of phones.

 4        Q.   Why did you have so many phones?

 5        A.   Because I was using and selling drugs.

 6        Q.   What -- do you know what phone numbers you

 7    were using in October of 2015?

 8        A.   I don't remember.

 9        Q.   November of 2015?

10        A.   I don't remember the phone numbers.  I

11    don't remember my last phone number.  I've had a lot

12    of phones.

13        Q.   How did the idea come up, as best you

14    remember, that the FBI would give you a telephone?

15        A.   The best I remember, they had information

16    that somebody was going to call me and ask me to do

17    this.

18        Q.   Okay.  That's what they told you, and they

19    said:  Here, here's the phone we want you to use?

20        A.   I think, so, yeah.  I think that's how it

21    happened.

22        Q.   What were the instructions that you

23    received from Special Agent Acee, or anyone else from

24    the FBI, on how to use that phone?

25        A.   To not use it for anything else but the

SANTA FE OFFICE                                                         MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                      1-800-669-9492
PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE


BEAN & ASSOCIATES, Inc.

1    case.

2         Q.   All right.  And what did that mean to you?

3         A.   That meant:  Don't be using it for personal

4    phone calls or stuff like that.

5         Q.   All right.  And did you know that they were

6    going for a wire to record your phone calls?

7         A.   I was under the understanding that the

8    phone would be constantly monitored.

9         Q.   And for 30 days?

10        A.   I seem to remember him saying he had to

11   renew it after 30 days, if it went past 30 days.  I'm

12   not sure that it did.  I didn't really pay attention.

13   I used it for what it was supposed to be used for.

14   That's all.

15        Q.   Okay.  Do you remember when you first used

16   it?

17        A.   No.

18        Q.   All right.  If I had told you that the

19   dates for the surveillance was October 26, 2015 to

20   November 25, 2015, does that sound right?

21        A.   Possibly.

22        Q.   Were you using your other phones during

23   that time also?

24        A.   I use my phone for my personal phone calls,

25   my home phone.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                             1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1        Q.   I'm not trying to be a smart aleck with

 2   this question.  You had said before you'd used your

 3   phones for drug stuff.  Why were you using your phone

 4   after you'd been released on OR?  Why were you using

 5   your personal --

 6        A.   My personal stuff.  After I was released on

 7   OR.  I wasn't selling drugs anymore.

 8        Q.   Using?  Were you using?

 9        A.   I was on the methadone at that point.

10        Q.   You were doing methadone.  And what did

11   that do to you?

12        A.   It kept me from using heroin.

13        Q.   It's a heroin substitute, a pharmaceutical

14   substitute heroin?

15        A.   Yeah.

16        Q.   To wean you off of heroin so you can avoid

17   potentially life-threatening withdrawals, right?

18        A.   Basically.

19        Q.   All right.  And you were using that.  Who

20   helped you get that methadone?

21        A.   The methadone clinic.

22        Q.   All right.  Who sent you there?

23        A.   I did.

24        Q.   So what were you using your personal phones

25   for from October 26?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    For personal reasons, sir.  Calling my

2   wife, my kids.

3        Q.    Calling them from where?  You weren't with

4   them?

5        A.    Not 24 hours a day.  Are you with your wife

6   and kids 24 hours a day, sir?

7        Q.    If you don't mind.  I'll ask the questions.

8        A.    Oh.

9        Q.    So what else were you using your phone for?

10  Did you have any --

11       A.    Personal reasons, sir.

12       Q.    Did you have any personal reason to talk to

13  any SNM member or affiliate?

14       A.    A lot of people called my phone still.

15       Q.    People had your numbers?

16       A.    People had my number.

17       Q.    And those would be people who were SNM

18  members?

19       A.    Everybody that I know.

20       Q.    Chris Garcia had your number?

21       A.    Probably.

22       Q.    Well, you had called him a lot.  You were

23  close to Chris Garcia, weren't you?

24       A.    Yes, I was.

25       Q.    Very close to him; yes?

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yeah.

 2        Q.    He supplied you with drugs?

 3        A.    I believe you're his lawyer, right?

 4        Q.    And you bought drugs from him?

 5        A.    Yes.

 6        Q.    You've been to his house?

 7        A.    Yes.

 8        Q.    All right.  And during that period of time,

 9   from October 26, 2015, to November 25, 2015, you had

10   conversations with the people you knew before you had

11   been arrested, like Chris Garcia?

12        A.    I probably did.  I don't recall

13   conversations.  It was a long time ago, like I said.

14   And I was focused on getting out of there.  I was

15   tired of people wanting to kill each other and stuff.

16        Q.    But you were out there, you'd been out on

17   the street for a while.

18        A.    Out of Albuquerque, sir, out of the

19   situation.

20        Q.    So what did you do when SNM members called

21   you on your personal cellphone, during this period of

22   time where the Government had supplied you with their

23   own cellphone?

24        A.    If they were part of this case -- I don't

25   think that I talked to them anymore on personal
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    cellphones.  I might have.  I really don't remember,
 2    to tell you the truth, if I did or I didn't.  But if
 3    they were part of this case, most of the calls were
 4    directed to the cellphone that was provided to me by
 5    Bryan Acee.
 6          Q.   My question is about the calls that weren't
 7    on the wiretapped phones.
 8          A.   My answer was I don't remember.
 9          Q.   What had Bryan Acee told you to do, if you
10    received a call from Chris Garcia or any other SNM
11    member on the non FBI-given cellphone?
12          A.   I don't really remember what the
13    instructions in that case were.  My instructions were
14    to use that phone only for this case, and not to use
15    it for personal reasons.
16          Q.   So, to the best of your knowledge, if you
17    were -- received a call or called an SNM member from
18    your personal cellphones, there was no instruction
19    against that?  You were just to use the Government's
20    cellphone only for SNM calls?
21          A.   Yes.
22          Q.   All right.  How did you communicate with
23    Special Agent Acee during this period of time that
24    there was a wiretap on your phone?
25          A.   I don't really remember which phone I used.
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                               (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                          1-800-669-9492
                                                                 e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    I think I answered that question.  But, specifically,
 2    I don't remember if I called him off my personal
 3    cellphone or that phone.  I just don't remember.
 4         Q.   Did you text him?
 5         A.   Mr. Acee?
 6         Q.   Yes.
 7         A.   A few times probably, yeah.
 8         Q.   From the cellphone he gave you, or from
 9    your personal cellphone?
10         A.   I just told you.  I don't remember.  There
11    was really no instructions on talking to Mr. Acee.
12    It was -- that phone was supposed to be used for
13    these purposes, and these purposes only.  I just told
14    you that about four times.
15         Q.   I'm talking about your cellphone, sir.
16         A.    And I don't believe I was given
17    instructions on what to do with my own personal
18    cellphone, is what I keep telling you -- I keep
19    trying to tell you.  Maybe I'm not articulate enough,
20    but --
21         Q.   When you received contact from SNM members
22    on your new cellphone that had been provided by the
23    FBI, what did you do when you got those calls?
24         A.   I listened, and agreed.
25         Q.   What did you do related to Mr. Acee when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  you got off the phone?  Let's say you got a call from

2  Eric Duran --

3        A.   I talked -- I didn't talk to him every day

4  like that.  I was under the assumption that he was --

5  the phone was wiretapped and they were listening in

6  on it.

7        Q.   When the topic of Gregg Marcantel came up,

8  did you then get off the phone from the SNM-related

9  call and then call Mr. Acee to talk about it?

10        A.   I don't remember any circumstance where I

11  did.

12        Q.   Do you remember any direction that Special

13  Agent Acee gave you about what to do in these calls?

14        A.   Just told me what was going to happen.  I'm

15  going to say it again.  They told me:  Use this phone

16  for this purpose only, do not make personal phone

17  calls on this phone.  The phone is wiretapped,

18  everything is going to be recorded on it.  And

19  everything that's on that phone, you guys have it, so

20  I don't know why you keep asking me.  It's a long

21  time ago.  I had a lot of stuff going on in my life,

22  and I was trying to get out of Albuquerque.

23        Q.   So you don't remember any conversations

24  with Special Agent Acee, either on that phone or on

25  the other phones, about what to do in your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    interactions with SNM members.
 2              MR. CASTELLANO:  Objection, asked and
 3    answered.
 4              THE COURT:  Overruled.
 5        A.   Can you repeat it one more time?  Say it
 6    again.
 7        Q.   You don't remember any specific
 8    conversation or direction from Special Agent Acee
 9    about what to do in response to SNM calls to you
10    related to Gregg Marcantel?
11        A.   Let them talk, go along with it, I believe
12    is what the instructions were.  And I don't know if
13    they came specifically from Bryan Acee.  But that was
14    what I was under the impression of what I was
15    supposed to do in that situation.  I think they
16    pretty much already knew what was going on from the
17    other phone that they had in the prison.
18        Q.   From Eric Duran's phone?
19        A.   I guess.
20        Q.   That was your understanding at the time?
21        A.   That's what I thought.  That's my personal
22    thought.
23        Q.   Did you know Eric Duran was a government
24    cooperator during that time?
25        A.   I don't believe so, at first.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    In the time you were wiretapped, in October

2   and November of 2015?

3      A.    I don't believe so.

4      Q.    So when Eric Duran was calling you on your

5   cellphone that the Government had given you, you

6   didn't know that he was undercover for the

7   Government?

8      A.    No.

9      Q.    All right.  Why did you agree to cooperate?

10      A.    At one time or another everybody in this

11   courtroom right here, that's in a jail jumpsuit, has

12   asked me to kill one of the other ones.  And they

13   smile in each other's face, or kill somebody else.

14   Or -- and the minute I leave the room, I'm a snitch.

15   So I just said, You know what, I'm tired of this.

16   And so I was living my life.  Even though I was on

17   drugs, I was living my life out there in the streets.

18   And these guys brought this case on themselves, and

19   me, and everybody else in it.

20      Q.    And so that's why you decided to cooperate?

21      A.    Yeah, pretty much.

22      Q.    What did you hope to get out of

23   cooperation?

24      A.    I hoped to get away from this -- what I

25   just told you.  I'm tired of living like that.  Even

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    if it's in jail, I'm tired of living like that.

2         Q.   I'd like to talk to you a little bit about

3    what happened to the phone.  On December 3, 2015, a

4    lot of these gentlemen were arrested and a lot of

5    other SNM members were arrested, both in prison and

6    outside of prison.  Do you remember that date?

7         A.   I remember people were getting arrested,

8    and I was going to be leaving town in a hurry.

9         Q.   And they had talked to you about getting

10   out of town so nothing could come back on you, right?

11   Special Agent Acee had had that conversation with

12   you?

13        A.   I don't think he -- it was understood

14   before that I'd be leaving town, and this started to

15   be known.

16        Q.   And your phone that he had given you was

17   still working at the time of the takedown, wasn't it?

18        A.   I don't remember if it was working or not.

19   Once everything was pretty much over with, I had the

20   phone in a backpack with a couple other things,

21   laptop and tablets and just basic electronics that

22   belonged to me.

23        Q.   Did Special Agent Acee talk to you about

24   staying -- keeping the phone close by, in case you

25   got some calls after the arrests started going down?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.   I don't remember that conversation.
 2        Q.   Did you have the phone with you in early
 3   December of 2015?
 4        A.   I had the phone with me almost to the day I
 5   left town.
 6        Q.   And when was that day?
 7        A.   Late December.  I didn't have it until the
 8   day I left, until maybe a week or two before, maybe.
 9        Q.   So sometime in mid December is when you got
10   rid of the phone?
11        A.   Sometime between the time everybody was
12   arrested and the time I left town, I turned in the
13   phone.
14        Q.   So when everybody was arrested, you still
15   had the phone?
16        A.   I believe so.
17        Q.   And it was still in working order?
18        A.   I believe so.
19        Q.   And were your instructions at that time to
20   continue using the phone?
21        A.   My instructions were not to use that phone
22   for anything else except for this case.
23        Q.   Thank you for that.
24             So was your instruction to continue using
25   the phone for this case?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No.

 2        Q.   -- until --

 3        A.   After everybody was arrested, I believed

 4   the case was over at that point, the talking on the

 5   phone stuff anyway.

 6        Q.   All right.  But on December 3, were you

 7   being asked to keep the phone on, so if you got any

 8   calls from any of the SNM members --

 9        A.   I don't remember.  I don't remember.

10        Q.   Was the phone still working --

11        A.   I don't know.

12        Q.   -- on December the 3rd?

13        A.   I don't know.

14        Q.   Well, the wiretap was over November the

15   25th?

16        A.   I don't know when.

17        Q.   Do you recall if you used the phone after

18   November 25?

19        A.   I don't remember.

20        Q.   Why were you carrying it around, if you

21   weren't using it?

22        A.   I wasn't carrying it around.  It was in a

23   backpack with other electronics that -- I think I

24   just told you that.

25        Q.   You said you were carrying around the
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492

 

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   backpack.
 2        A.   No.  I was packing my stuff actually to
 3   leave town.  And it was in the backpack with other
 4   electronic items that I had.
 5        Q.   You were leaving town with Special Agent
 6   Acee's telephone?
 7        A.   No.  I was packing my stuff to leave town.
 8   I was leaving, so I had everything that I was
 9   responsible for, including that cellphone, in the
10   backpack with other electronic items that belonged to
11   me, my wife, my son, and my daughter.
12        Q.   Did you have a phone call at some point
13   with Mr. Baca, on --
14        A.   Numerous.
15        Q.   -- on the FBI cellphone?
16        A.   Numerous conversations.  I think there was
17   a few.
18        Q.   Was there a conversation about destroying
19   the cellphone?
20        A.   I'm not really sure if we had that
21   conversation or not.  I vaguely remember it.
22        Q.   Well, if you vaguely remember it, what are
23   your vague recollections?
24        A.   I remember that I really didn't have to
25   keep track of this stuff, because most of this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

94

```
 1    recordings was wiretapped.  So I pretty paid much
 2    attention to as little of it as I could, to tell you
 3    the truth.  Yes, okay, okay, I'm going to do that
 4    right now.
 5        Q.   Do you remember saying that, okay, okay,
 6    okay, I'm going to go get rid of this cellphone?
 7        A.   I remember specifically the conversation
 8    where he wanted me to -- after I killed Gregg
 9    Marcantel or Santistevan, to kill "Chuco."  And I'm
10    pretty sure, yeah, that he did ask me to destroy the
11    cellphone and get rid of the gun and kill "Chuco."
12    Yeah, I'm pretty sure.
13        Q.   And did you agree to do that?
14        A.   Yeah.
15        Q.   To get rid of the cellphone?
16        A.   I agreed to do everything he asked me to
17    do.
18        Q.   And what happened to the cellphone?
19        A.   I turned it back in to Bryan Acee.
20        Q.   How was it working then?
21        A.   I had ran over the whole backpack.
22        Q.   How did that happen?
23        A.   I was packing an RV, getting ready to leave
24    town.  And it was left in the back, in-between the
25    trailer and the RV.  And when I pulled out, ran over
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   something, and it was the backpack.
 2       Q.   So you had a backpack with all your
 3   family's electronics in it behind the wheel of the
 4   RV?
 5       A.   Actually on a trailer, and I was putting
 6   stuff on top of the RV, inside the cars and stuff,
 7   and I missed it.
 8       Q.   And you ran over the bag?
 9       A.   I ran over the whole bag.
10       Q.   And what happened to the cellphone?
11       A.   It was damaged.
12       Q.   Did you try to turn it on after that to see
13   if it would still work?
14       A.   I didn't.
15       Q.   Was it still powered up?
16       A.   I don't even know if it was powered up.  I
17   don't think it was.
18       Q.   What day was that?
19       A.   I don't remember.
20       Q.   Did you contact Special Agent Acee to
21   report that you'd run over his cellphone?
22       A.   I don't think I specifically contacted him.
23   I didn't even think they wanted that phone back.  I
24   thought that --
25       Q.   You thought it was a gift?
```

SANTA FE OFFICE                                                   MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                  1-800-669-9492
                                                              e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.   No, I thought it was off, and I thought it
 2   was done, and I thought they had the wiretaps, didn't
 3   think that phone was very important.  Actually, I was
 4   more concerned with my daughter's laptop and her
 5   stuff.
 6        Q.   So when did you turn that phone back over
 7   to Special Agent Acee?
 8        A.   I seen him before I left town, I think
 9   maybe on the day I went to court.  I don't know what
10   day it was.  Maybe it was that day.  And I think it
11   might have been, and --
12        Q.   The same day you ran over it?
13        A.   No, the day I went to court.
14        Q.   How many days after running over the phone
15   was that?
16        A.   I don't remember.
17        Q.   Was it two days?
18        A.   I don't remember.
19        Q.   A week?
20        A.   I don't remember.
21        Q.   Two weeks?
22        A.   It could have been a year.  I don't
23   remember.
24        Q.   And is it your testimony that it was an
25   accident to run over a bag of electronics?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   Yeah.   Yeah.

 2          Q.   I'd like to ask you about the body

 3   recorder.   Were you asked to wear a wire on November

 4   29, 2015, and go to Chris Garcia's house?

 5          A.   Yeah.

 6          Q.   How did that conversation --

 7          A.   I don't remember the date, but I remember I

 8   was asked to wear a recording device and go to Chris'

 9   house.

10          Q.   Who asked you?

11          A.   Agents.

12          Q.   Which agents?

13          A.   I believe it was Bryan Acee.  Most of my

14   conversations were with Bryan Acee.

15          Q.   Were those in-person conversations or on

16   the telephone?

17          A.   In person.

18          Q.   Did you have his cellphone number?

19          A.   Bryan Acee's?

20          Q.   Yes.

21          A.   Yes.

22          Q.   Did you call him up on the cellphone from

23   time to time?

24          A.   No.

25          Q.   Did you text him on the cellphone from time
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to time?
 2        A.   I would wait for him to contact me.
 3   Usually, like I said, I was really busy.  I was
 4   trying to get out of town.  I didn't want to be
 5   involved in none of this stuff, sir.  I was dragged
 6   into it.
 7        Q.   So how -- where were you when the
 8   conversation happened about you wearing a wire?
 9        A.   I believe it might have been in the parking
10   lot to a church near Chris' house, I believe, maybe.
11        Q.   How did you know to go there to meet Bryan
12   Acee?
13        A.   Either came to my house or I talked to him,
14   he called me.  I don't remember.
15        Q.   Did he come by your house -- during that
16   time period, October, November, December of 2015,
17   would he drop by your house from time to time?
18        A.   I don't really remember, like specifically
19   him coming to my house.  I remember this case was
20   going.  I remember -- yeah, I had phone contact with
21   him.  I don't remember which phone it was on.  I've
22   already told you that.  It was either in person or on
23   the phone he asked me to meet him at the church on
24   that day.  I don't remember which.
25        Q.   Which church?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   I don't know the name of the church.  It's

2    on Central, near 98th Street.

3    Q.   Where did you meet him at the church?

4    A.   In the parking lot.

5    Q.   Did you get there first or did he get there

6    first?

7    A.   I believe I did.

8    Q.   Okay.  And how long did you wait on him to

9    show up?

10    A.   Not long.

11    Q.   Did you know when you went over there that

12    you were going to be asked to wear a wire?

13    A.   I don't remember, but -- I probably would

14    assume I did.  But I don't remember.

15    Q.   So what happened when he showed up, when

16    Bryan Acee showed up to the parking lot of the

17    church?  What did he say to you?

18    A.   It kind of refreshed my memory a little

19    bit.  I believe I was there -- I believe I did know I

20    was going to wear a wire.  I believe the phone

21    conversation had been with Baca asking me to go get a

22    weapon from Chris.  And I believe that's why I was

23    there, to get the wire, to get to Chris' to pick up a

24    weapon.

25    Q.   Did you report to Special Agent Acee or any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   other of your handlers that you had been asked to go
 2   get a weapon from Garcia?
 3        A.   No.  I believe it was on the wiretaps.  I
 4   believe they knew.
 5        Q.   So you had that conversation allegedly with
 6   Mr. Baca, and then you just waited to hear from the
 7   special agents?
 8        A.   We were in contact about that, yeah, pretty
 9   much.
10        Q.   All right.  So then, when you got there,
11   what was the conversation about the wire?  So now you
12   think you remember that you knew you were going to be
13   asked to wear a wire.  What did the agent say when he
14   pulled up next to you in the parking lot?
15        A.   Asked me if I was ready.  Told me I'll be
16   all right.  And just go and do what I had to do.
17        Q.   What do you mean "be all right"?  What did
18   that mean to you?
19        A.   I worry about my safety, my family's safety
20   a lot.  Because, like I said, every one of them has
21   asked me to kill the other one at one time or
22   another.
23        Q.   So how -- what does being all right mean?
24   What did you think that meant?  That they were going
25   to be there watching the whole time?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.    Yeah.
 2        Q.    And did you talk to them about that, like:
 3   Are you guys going to be close by, in case anybody
 4   finds a wire on me?
 5        A.    I didn't specifically.  I don't think I
 6   did.
 7        Q.    And so what was the plan when they were
 8   putting this wire on you?
 9        A.    The plan was I was going to go and pick up
10   a weapon from Chris.
11        Q.    Were you talked to about what conversations
12   to try to get Mr. Garcia to say onto the wire?
13        A.    No, I was never told to get anybody to say
14   anything.  I was told to --
15        Q.    What were you told to do?
16        A.    To go and let them talk.
17        Q.    Where was the wire?  How did it get put on
18   you?
19        A.    I believe it was a small box.  I don't
20   think it got put on me, or anything like that.
21        Q.    Did it get taped to your body?
22        A.    I don't remember.  I could tell you what it
23   looked like, a small box, rectangular shape.
24              MR. BECK:  Objection, Your Honor.
25              THE COURT:  Do you need any more
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    information than that?

 2           MR. ADAMS:  I do, Judge, because of his

 3    ability to control what's recorded.

 4           THE COURT:  Well, ask him about his ability

 5    to control.  But let's don't get into a description

 6    of the device.

 7       Q.   Let me try this one and see if it helps.

 8    Was there a microphone separate from the box?

 9       A.   I don't think so.  I think it was all one

10    unit.

11       Q.   What part of your body was this placed on?

12           MR. BECK:  Objection, Your Honor.

13           MR. ADAMS:  Judge, I had a case that was

14    similar, many years ago, and they put a wire between

15    the thighs of the sister-in-law of my client.  And

16    there were inaudible parts of the tape.  And our

17    theory was that she knew how to manipulate the wire

18    by ruffling her legs together during the part of the

19    case that she didn't like.  We had experts to testify

20    to that, and that was a quick acquittal.  I think

21    it's important to understand where the wire was and

22    how he may have the ability to manipulate what was

23    recorded.

24           THE COURT:  What do you feel comfortable

25    asking, Mr. Beck?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BECK:  I feel comfortable if he wants
 2    to ask whether he can --
 3            THE COURT:  Why don't you do this:  Why
 4    don't you ask these questions right here, and we'll
 5    see if -- just stand right there, Mr. Adams.  He can
 6    ask them from there.  Just stand there and we'll see
 7    if we can get it out.
 8            MR. BECK:  Mr. Montoya, could you somehow
 9    manipulate with your body the quality of what was
10    recorded on that recording device?
11            THE WITNESS:  I don't know.  It never
12    crossed my mind.  I thought it recorded the whole
13    time.  And I'm naturally paranoid.  Even if I turn my
14    cellphone off, I think it can record what I'm saying.
15            MR. ADAMS:  It can.
16            THE WITNESS:  I'm not that paranoid then.
17            MR. BECK:  Did you -- were you able to turn
18    on and off this recording device?
19            THE WITNESS:  I don't know.
20            MR. BECK:  Were you able to start and stop
21    the recording device?
22            THE WITNESS:  I don't know.
23            THE COURT:  What else do you need?
24            MR. ADAMS:  Well, Judge, I will point out
25    there are large portions of the tape that are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    inaudible.  So I'd like to follow up on this.  I
 2    mean, I get that the Government likes what they
 3    elicited.  But I think we still have our questions
 4    about what he thought and what he did.
 5              THE COURT:  Well, I think you've gotten
 6    enough of a description of the device.  Let's move
 7    on.
 8    BY MR. ADAMS:
 9         Q.   What was your understanding about how the
10    device recorded?
11         A.   It's a recording device that records.
12         Q.   Okay.  Did you ask Special Agent Acee
13    anything about how it worked?
14         A.   I really didn't care how it worked.  I
15    really didn't care about any of this stuff.
16         Q.   You didn't care if it got an accurate
17    recording or an inaccurate recording?
18         A.   I don't know how you can get an inaccurate
19    recording.  People say what they say.  It's not like
20    I can say yes, and the recorder said it said no.  I
21    didn't really care.  I carried the recorder there to
22    talk to Chris about a weapon, and I carried it back.
23         Q.   And then what happened after that
24    conversation?
25         A.   Well --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Well, let me ask this first.  When you went

2  to meet Chris Garcia, where was he?

3      A.   I believe he was at his house.

4      Q.   Inside -- did you go inside the house?

5      A.   I don't remember.  I talked to him inside

6  his house sometimes, sometimes in the garage, and

7  sometimes in the driveway, sometimes in my car,

8  sometimes in his car.

9      Q.   I'm talking about the day you left his

10  house with a gun that you gave to Special Agent Acee.

11  Let's focus on that day, November 29, 2015.  Do you

12  know where you were at Chris Garcia's house?

13      A.   I think I might have went into his house.

14      Q.   Do you know?  Are you clear on that?

15      A.   No, I'm not clear on it.

16      Q.   Where was the gun?

17      A.   I don't know where it was.  I think --

18           MR. CASTELLANO:  Objection, relevance, Your

19  Honor.  This has nothing to do with the recordings at

20  all.  It's basically defense counsel trying to

21  collect evidence for purposes of trial.

22           MR. ADAMS:  This is defense counsel

23  actually trying to fill in the blanks on inaudible

24  parts of the recording, Your Honor.

25           THE COURT:  Well, I doubt you're going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    be able to do that with this witness.  So let's --
 2    sustained.  Who is defending this?
 3              MR. BECK:  Sorry.  I objected to the first
 4    one on accident.  It's Mr. Castellano.  I apologize
 5    for that.  And then I --
 6              THE COURT:  Pick one.
 7              MR. BECK:  -- I apologize to Mr. Adams.
 8              THE COURT:  You can't double tag team here.
 9              MR. ADAMS:  Judge, I tell you I have no
10    problem with that.  But I'm going to tag in Ms.
11    Sirignano any second, and we'll just get it on right
12    here.
13              THE COURT:  Well, not in my courtroom.
14              MS. SIRIGNANO:  Come on, Judge.
15    BY MR. ADAMS:
16         Q.   Okay.  What did you do with the recording
17    after you left Garcia's house?
18         A.   I believe I gave the device and the weapon
19    back to the agents.  And I don't remember which
20    agents I gave it to, to tell you the truth.  There
21    was a heavyset black gentleman that I hadn't seen too
22    often.  As a matter of fact, now that you refresh my
23    memory a little bit, he was supposed to be watching
24    me the entire time.  I think he was following.
25         Q.   Did you ever see him?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I didn't really pay attention.  Like I told
 2   you, I just did what I was supposed to do, and took
 3   it back.  I wasn't looking over my shoulder or acting
 4   suspicious or nothing.
 5        Q.   Where did you give -- did you give the gun
 6   back to Special Agent Acee or to this gentleman who
 7   was following you?
 8        A.   I don't remember which one I gave it to.
 9        Q.   Did you go back to the church, or did you
10   go somewhere else?
11        A.   I kind of want to say the church, but I'm
12   not exactly sure.
13        Q.   Were you on methadone all during this time?
14        A.   Yes, I was.
15        Q.   How did that impact your memory or your
16   ability to take stuff in?  Would you get high on
17   methadone?
18        A.   I've been high most of my life, or on some
19   type of medication.  I would say it affects people's
20   functioning.  But like I said, it's recorded, so --
21        Q.   Did you ever sit down with Special Agent
22   Acee, or anyone else, and go over the recording?
23        A.   No.
24        Q.   Did you ever talk to them about the parts
25   of the recording that were inaudible; fill in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    blanks about what wasn't recorded?

2         A.   I never had any conversations about the

3    recordings with anybody.  Once it was done, I pretty

4    much put it out of my head.  I told you, I think, I

5    don't even want to participate in this stuff.  I got

6    drug into it pretty much by your clients.

7         Q.   Was the recording device, to your

8    knowledge, on the entire time, or was this something

9    you could turn on and off?

10        A.   I assume it was on the entire time.  Like I

11   said, I think my cellphone can record when it's off;

12   you said that you also agreed.  Remember?

13        Q.   Yes.  Did you ever -- backing up to your

14   cellphone calls on the cellphone Bryan Acee gave you,

15   did you ever go over those calls?

16        A.   I never went over any of the conversations

17   with anybody.  It was what it was.  It speaks for

18   itself.  I don't know what's on the recordings.  But

19   if those conversations are on the recordings, they

20   speak for themselves.  I didn't think I had to

21   remember any of that stuff.

22        Q.   When you ran over the cellphone, were there

23   any witnesses to that?

24        A.   No.  Actually, I was planning on leaving

25   town, and I had the RV parked somewhere else.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    didn't want nobody to see the RV with my car and a

2    trailer and bags packed.  So, pretty much, I would go

3    and I would pack and get stuff ready.

4         Q.   All right.  But that day you actually

5    cranked the engine and moved the vehicle?

6         A.   I cranked it and moved it on a couple of

7    different occasions.  But it wasn't parked at my

8    house.

9         Q.   Did your wife see you run over the bag?

10        A.   No.

11        Q.   Your daughter?

12        A.   No.

13        Q.   How did it come about that you handed that

14   broken phone or runover phone or cracked screen phone

15   back to Bryan Acee?

16        A.   I was leaving town.  I went to court.  The

17   last time I spoke to him -- I'm not positive, but I

18   think it was at the courthouse in Albuquerque.

19        Q.   And he asked for the phone, or you

20   volunteered to give it?

21        A.   He asked for it.

22        Q.   And what did you say?

23        A.   I said, "The screen is broken."

24        Q.   And that was it?  Just a cracked screen.

25        A.   I don't even know how damaged the phone



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   was.  Like I said, I never tried to turn it on.  That
 2   was not my phone.  I didn't really care about that
 3   phone.
 4        Q.   To your knowledge, was the back of the
 5   phone still attached?
 6        A.   I don't remember.
 7        Q.   You remember a cracked screen?
 8        A.   I remember the phone was broken.  I
 9   remember all the electronics in that bag were broken.
10   The things I was paying attention to was my
11   daughter's laptop, her tablet, and my wife's Nook.
12        Q.   Why were you still carrying around a bag of
13   broken electronic equipment?
14        A.   It didn't belong to me.
15        Q.   Well, the laptop did, the Nook did, and
16   other items in the backpack did.
17        A.   I didn't carry them around.  Like I said,
18   it was in preparation for leaving.  It was in the
19   bag.  He asked me for it.  It was still in the bag.
20   I gave it to him.
21        Q.   All right.  So what did he say when he saw
22   it?  What did he tell you when you gave him back
23   broken equipment, that he had paid for, from the FBI?
24        A.   I don't really remember.
25        Q.   You have no recall of his reaction to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    receiving back a broken item?

 2        A.   I don't think it was very much of a

 3    reaction, because now, if I remember, I didn't think

 4    he was too upset about it.  I don't know.

 5        Q.   Have you been in communication with Special

 6    Agent Acee lately?

 7        A.   No.

 8        Q.   Have you been in communication with him

 9    since you were recently arrested?

10        A.   I don't really remember, no.  No.

11        Q.   You're just allowing your lawyers to

12    interact with the Government on your behalf?

13        A.   I spoke to him here yesterday.

14        Q.   Did they take a DNA swab from you?

15        A.   No.

16        MR. ADAMS:  Judge, since we're only allowed

17    to have one lawyer, let me go confer quickly with Ms.

18    Sirignano.

19        THE COURT:  Well, I'm not that hung up on

20    it, if nobody else is.  But we might establish some

21    rules of engagement before we get to trial so that

22    people don't complain about each other.

23        MR. ADAMS:  Thank you.  We don't have

24    anything further.

25        THE COURT:  All right.  Thank you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Adams.
 2            Does anybody else on the defense side have
 3    any questions of Mr. Montoya?  Mr. Lowry?
 4            MR. LOWRY:  Yes, Your Honor.
 5                     EXAMINATION
 6    BY MR. LOWRY:
 7        Q.  Good morning, Mr. Montoya.
 8        A.  Good morning.
 9        Q.  Mr. Montoya, if I understood you correctly
10    on your testimony just now, you said the recording
11    speaks for itself; is that right?
12        A.  Yeah.
13        Q.  Okay.  And if I understood your testimony
14    correctly, you've never reviewed this recording?
15        A.  Never heard it.  I'm just assuming it
16    recorded everything that was said.
17        Q.  Do you have any reason to doubt that if I
18    told you there were gaps in this recording where you
19    can't hear the conversation?
20        A.  I don't have any reason to believe or doubt
21    it.  Like I said, I really don't care.  I took it,
22    and I brought it back.
23        Q.  Well, I'm a little -- and this is not on
24    you, this is on me -- but when you say the recording
25    speaks for itself, but there is nothing on the
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492



                                                         1-800-669-9492
PROFESSIONAL COURT                            e-mail: info@litsupport.com
REPORTING SERVICE

1    recording, so the recording is not speaking for

2    itself.

3         A.   It has nothing say, I guess.

4         Q.   Well, is there any reason why the recording

5    wouldn't pick up the conversation or the ambient

6    background sounds?

7         A.   I don't know, man.

8         Q.   You don't know.

9         A.   It was a long time ago.  I don't really

10   remember what was going on with that recording.  I

11   don't remember any instructions on it.  I don't

12   remember any of that.  I just remember I took it and

13   I brought it back.

14        Q.   Okay.  And I realize it was a long time

15   ago.  But can you recall anything you might have even

16   inadvertently done to inhibit or stop the recording

17   from picking up sounds?

18        A.   I really don't remember.  Like I told you,

19   like I told him, I don't remember.  I followed the

20   instructions I was given at the time.  That's all I

21   can say.

22        Q.   Okay.  I don't want you talking about where

23   the recording device was on your body, or anything

24   like that.  But is there any body movement you could

25   have done that would have stopped or covered up that

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

1    recording to keep it from capturing the sounds?

2        A.    I wasn't really paying attention to it,

3    man.  I wasn't trying to be -- can you say that

4    again -- or anything like that -- I just kind of

5    remember where it was, you know what I mean?

6        Q.    Sure.  You said you didn't really want to

7    be there.

8        A.    No.

9        Q.    Why were you there, then?

10       A.    Because my name was mentioned somewhere

11   along the way on another wiretap, where a bunch of

12   morons were in their cells trying to act like -- I

13   don't know what -- and trying to get people to do

14   things for them on the streets.  And I ended up

15   pulled into this case.

16       Q.    Do you feel like you've -- what I'm hearing

17   you say is your participation wasn't voluntary.

18   Would you agree with me?

19       A.    My participation was voluntary after I was

20   already drug into the case.  But, no, I didn't want

21   nothing do with most of these guys.  I would talk to

22   them, keep it cordial.  I don't think very highly of

23   most of them -- some of them, I believe they're

24   decent guys if they weren't involved in this.  But

25   most of them just sit in their cells and fantasize,



SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492
                                                                                   1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                        e-mail: info@litsupport.com

```
 1    and think of ways to mess anybody up that they can,

 2    trying to make themselves feel better, get what they

 3    can out of them.  So that's my personal opinion.

 4              MR. LOWRY:  I have no further questions,

 5    Your Honor.  Thank you.

 6              THE COURT:  Thank you, Mr. Lowry.

 7              Any other defendant has cross-examination

 8    of Mr. Montoya?

 9              All right.  Mr. Castellano.

10                        EXAMINATION

11    BY MR. CASTELLANO:

12        Q.   So, Mr. Montoya, was it difficult for you

13    to cooperate in this case?

14        A.   Yes, it was.

15        Q.   And do you find it difficult to testify on

16    the stand?

17        A.   Yes, I do.

18        Q.   If you had your choices, would it be

19    something you would rather not do?

20        A.   Yes, it would.

21        Q.   And do you understand the situation you're

22    in now, in terms of your agreements with the

23    Government, and are you willing to continue with that

24    agreement?

25        A.   Yes.  I gave my word.  That's one thing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I --

2         Q.   But if you had your choice in life, you

3    would rather not be doing it; isn't that fair to say?

4         A.   I would rather not be here.  I would rather

5    be going on with my life.

6         Q.   So let me just ask you a few questions

7    here.  Okay.  So you were told to use the cellphone

8    only -- the wired cellphone, only for SNM business;

9    is that correct?

10        A.   Yes, sir.

11        Q.   Now, you mentioned you had at least one

12   other phone that you used for personal business.  Do

13   you remember that?

14        A.   Yeah.

15        Q.   Okay.  So when we talk about personal

16   business, is it talking to friends, talking to your

17   wife, things that people do with phones regularly?

18        A.   I was talking to my wife and my kids

19   mostly.

20        Q.   Now, at that time, did other SNM members

21   have your personal cellphone?

22        A.   I don't really recall, to tell the truth.

23   I remember that I was told to use that phone just for

24   that case.  I can't say for sure, one hundred

25   percent, whether I used that phone to talk to anybody

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   else, or if they had my number still.  I changed my
 2   numbers a lot.  I'm really clumsy with cellphones.  I
 3   break them all the time.  They're on my lap, I get
 4   out of the car, they fall out.  The screen breaks.  I
 5   change phones a lot.  And before that, like I said,
 6   was selling drugs, so I would change phones out of
 7   paranoia.  I don't remember if I used the other phone
 8   for anything else, my personal phone was mostly
 9   after.  After I was arrested, my personal phone was
10   mostly for my kids and my wife, and that was it.
11        Q.   And then, if somebody called you on your
12   phone, and it had to do with SNM business, would you
13   try to call them to get them to use the phone that
14   was being monitored, if you remember?
15        A.   I would assume, yeah.  I don't really
16   remember.  But everything to do with the case, or
17   anybody -- I would assume anybody from SNM, their
18   calls would probably go to that phone.  I'd probably
19   tell them I'll call you back, or something like that,
20   or tell them, "I changed my number."
21        Q.   And if it was anything to do with criminal
22   activity, would you try to talk to them on the phone
23   that was being monitored?
24        A.   Yeah.
25        Q.   You mentioned you weren't quite sure when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    you quit using the phone.  So let me ask you this, in

2    terms of -- since it was December, and the holidays

3    were during that month, do you remember if you

4    finished using the phone maybe before or after

5    Christmas?

6         A.   It was way before Christmas.  I believe I

7    left on Christmas Eve -- or not way before Christmas.

8    It was probably right before Christmas sometime.

9         Q.   So around the Christmas holidays?

10        A.   Before Christmas.

11        Q.   Now, when you were done with the

12   recordings, and people were being arrested, did you

13   have any other reason to use the monitored phone?

14        A.   No.  I didn't want contact with anybody

15   else.  So at that point I was avoiding contact with

16   people.  I don't even think I was using my own phone

17   that much other than just making plans to get out of

18   town.

19        Q.   Is that because you were getting out of

20   town to avoid anybody -- the fact that people might

21   know that you were cooperating at that point?

22        A.   Yeah.

23        Q.   And at that point, then, did you want to

24   have anything to do with this case or the

25   investigation?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                  1-800-669-9492
                                                             e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.   As little as possible.  I fulfilled my
 2   obligation and move on with my life.
 3        Q.   As far as you can recall, after getting the
 4   gun from Chris Garcia, were you aware of any other
 5   reasons why you might need to use that phone?
 6        A.   No.  I think that was pretty much the end
 7   of it.
 8        Q.   You mentioned that the agents told you that
 9   you would be all right.  Were there discussions about
10   safety?
11        A.   Yeah.
12        Q.   And did they give you any assurances that
13   they would be watching you and keeping you safe?
14        A.   Yeah.  I believe the other agent, the one I
15   mentioned earlier -- I didn't know who he was -- I
16   believe -- I'm pretty sure that was the reason why he
17   was there.  I'm pretty sure somebody said that.  I'm
18   pretty sure that he was going to be watching me
19   pretty much most of the time that he could.
20        Q.   Was it your understanding, then, that
21   somebody would be watching you, as best as you knew,
22   throughout that operation when you picked up the gun?
23        A.   I assume that.  And I want to say I was
24   told that.  But, like I say, it was a long time ago.
25   And I was, like, doing what I was pretty much told:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Take it, bring it back.  And I'm pretty sure the guy

 2    was -- yeah, that's what his purpose was, he told me

 3    that.

 4         Q.   And what were your concerns about safety on

 5    that particular day?

 6         A.   Man, I'm going to go get a gun from

 7    somebody to kill the Secretary of Corrections.  I was

 8    pretty worried about my safety.

 9         Q.   You mentioned earlier that Mr. Baca told

10    you to do at least three things:  One was get the

11    phone; kill "Chuco" -- no, destroy the phone; kill

12    "Chuco."  And there was one other thing.  Oh, get rid

13    of the gun; is that correct?

14         A.   Yeah.  And the more we talk about it, I

15    remember a little bit more, yeah.  Yeah, I definitely

16    remember the conversation a little bit better.  Get

17    rid of the gun, get rid of the phone, and take care

18    of that guy.

19         Q.   Even though you told him you were going to

20    do those things, did you really intend to kill

21    "Chuco," get rid of the gun, and get rid of the

22    phone?

23         A.   No, I didn't.  As a matter of fact, "Chuco"

24    is one of the people that I mentioned earlier that

25    probably got drug into this, just like I did.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  May I have a moment, Your
 2    Honor?
 3              THE COURT:  You may.
 4              MR. CASTELLANO:  Thank you, Your Honor.  I
 5    pass the witness.
 6              THE COURT:  Thank you, Mr. Castellano.
 7              Mr. Keefe, do you need anything?  Clear up
 8    anything.
 9              MR. KEEFE:  No, Your Honor.
10              THE COURT:  All right.  Mr. Adams.
11              MR. ADAMS:  Thank you.  I have some brief
12    follow-up to Mr. Castellano's questions.
13                      REDIRECT EXAMINATION
14    BY MR. ADAMS:
15         Q.   You had told the prosecutor that you just
16    wanted to get out of state, to be going on with your
17    life.  What do you mean by going on with your life?
18         A.   Getting out of the situation with these
19    guys.  I'm telling you, I don't know how many
20    times -- it's like living in a snake pit.  I'm tired
21    of it.
22         Q.   So you wanted to get away from the snake
23    pit?
24         A.   Yes.
25         Q.   Get away from criminal behavior?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          A.    To the best of my ability, yes.

2          Q.    Get away from drugs?

3          A.    Yes.

4          Q.    What do you mean to the best of your

5     ability?

6          A.    I'm a drug addict.  I've been a drug addict

7     of my life.

8          Q.    Have you spoken to Mr. Castellano today

9     before the witness stand?

10         A.    Briefly.

11         Q.    He was in the room with you when you were

12    with your attorneys?

13         A.    Yes.

14         Q.    And is it your memory today, as you're

15    here, that you believe you left the state, in 2015,

16    on Christmas Eve?

17         A.    Thereabouts.

18         Q.    And is that the day or the time you gave --

19    the day you left, was that the day you gave Mr. Acee

20    back his phone?

21         A.    No.  I believe I gave it back to him the

22    day I went to court.

23         Q.    Do you happen to know what day that was?

24         A.    Really?

25         Q.    Fair enough.  Do you happen to know if that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   was immediately before you left the state?
 2        A.   It wasn't immediately before I left the
 3   state.  I don't think it was immediately before I
 4   left the state.  I think it was -- I had about maybe,
 5   I don't know how long, a week or so, to finish
 6   getting ready after everything was wrapped up.
 7             Like I said, it was a while back.  A lot of
 8   stuff was going on.  I'm trying to figure out where
 9   I'm going.  What I'm doing.  Stuff happened pretty
10   fast.  And I don't know what else to tell you, man.
11   I don't really remember the day.
12             MR. ADAMS:  Thank you.
13             THE COURT:  Thank you, Mr. Adams.
14             Did you have something, Mr. Lowry?
15             MR. LOWRY:  Just very briefly, Your Honor.
16                         EXAMINATION
17   BY MR. LOWRY:
18        Q.   Mr. Montoya, were all of your recordings,
19   were all of your conversations with Mr. Baca on the
20   FBI phone that was being recorded?
21        A.   From the time I got that phone to the time
22   I turned it back in, all the conversations I had
23   regarding this case were on that phone.
24        Q.   Including every conversation you had with
25   Mr. Baca?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yeah, from the time I got the phone.
 2        Q.    So -- and just to clarify, so you had never
 3   used your personal phones, no matter --
 4        A.    From the time I got the phone, to the time
 5   I gave the phone back, all the conversations
 6   regarding this case, that I'm aware of, came on that
 7   phone, they're on that phone.
 8        Q.    On the FBI phone?
 9        A.    On the FBI phone.
10              MR. LOWRY:  No further questions, Your
11   Honor.
12              THE COURT:  Thank you, Mr. Lowry.
13              All right.  Mr. Montoya, you may step down.
14              THE WITNESS:  Thank you.
15              THE COURT:  Does anybody need Mr. Montoya
16   further for this hearing?  Can he be excused?
17              MR. CASTELLANO:  Yes, Your Honor.
18              THE COURT:  Excused, Mr. Adams?
19              Anybody else?  All right.  Is there any
20   objection?  Mr. Montoya, you're excused from the
21   proceedings.  Thank you for your testimony.
22              THE WITNESS:  Thank you, Your Honor.
23              THE COURT:  All right.  Mr. Adams, do you
24   have further witnesses or evidence you wish to
25   present?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. ADAMS:  No, sir, that's it.

2           THE COURT:  All right.  Do you want to

3    argue your two motions then?

4           Does the Government have any further

5    witnesses or evidence on these motions, Mr. Beck?

6           MR. BECK:  No, Your Honor.

7           THE COURT:  Mr. Adams, do you want to argue

8    them?

9           MR. ADAMS:  Judge, I want to stand,

10   basically, on our motion, and -- but I do think a

11   credibility determination from you about whether it's

12   credible that the phone was accidentally broken or

13   not is important.  I am, I guess, a little

14   suspicious, naturally, when I'm trying to protect a

15   client from charges, and I own that.

16          But it seems amazingly suspicious and

17   convenient to me that there was a phone call where an

18   SNM person told him to break the phone, and he

19   agreed -- although he didn't immediately remember

20   that, he later remembered that -- but he didn't mean

21   it, and yet the phone was broken before he turned it

22   in, where a bag of electronics is placed behind a

23   trailer wheel, with no witnesses around, and is run

24   over.  That seems uncredible to me, but -- so I think

25   that credibility determination -- you may find him

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   believable, and I may -- we may have a difference of
 2   opinion on that.  But that strikes me as not worthy
 3   of belief in this courtroom, that it happened the way
 4   Mr. Montoya suggested it happened.  I think, if you
 5   find him to not be credible on that, then you have a
 6   government agent intentionally destroying evidence
 7   that could be used by the defense.
 8             And we stand by our pleading.  Thank you.
 9             THE COURT:  All right.  Is that for both
10   motions, Mr. Adams, or do you want to take them
11   separately?
12             MR. ADAMS:  I think they both basically
13   have been rolled into 1529, once 1330 was filed, then
14   we got more information back.  So I think everything
15   has been incorporated into 1529.
16             THE COURT:  All right.  Thank you,
17   Mr. Adams.
18             Anybody else want to say anything in
19   support of Mr. Garcia's motions?
20             All right.  Mr. Beck, are you going to do
21   the legal argument on it?
22             MR. BECK:  I think, given Mr. Montoya's
23   testimony, I think we can -- I think his statement
24   appears objectively credible.  He said that he was
25   really concerned with his wife's laptop, her
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  tablet -- or his daughter's tablet, and his wife's
2  Nook.  He also said that he thought it fell off the
3  trailer.  He didn't place it on the ground.  He
4  didn't do any of those things.  It seems to me
5  credible that, in a rush to leave town, a backpack
6  with electronics could fall off his RV or his
7  trailer.  So those things appear credible.
8            It's also corroborated by Agent Acee's
9  testimony.  It's exactly what Mr. Montoya said to him
10 when Mr. Montoya didn't have any reason to lie or to
11 make up a story or to destroy the phone.
12           Mr. Montoya's testimony also is the same as
13 Agent Acee's, that he had multiple personal
14 cellphones, and he used that cellphone only to
15 converse with SNM members.
16           There is -- so where there is a burden to
17 show that the phone was apparently exculpatory under
18 Trombetta, there is no evidence of that presented
19 today where, under Youngblood, it must be possibly
20 exculpatory.  I'm not sure that that's there.
21           But, regardless, there was not evidence
22 today of any bad faith destruction.  At best, it may
23 have been negligence for Agent Acee to throw the
24 phone away.  And it may have been negligent of Mr.
25 Montoya to run over the phone, along with the other

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.                              1-800-669-9492

PROFESSIONAL COURT                    e-mail: info@litsupport.com
REPORTING SERVICE

```
 1   electronics.  But even if that were true, that
 2   doesn't meet the Trombetta or Youngblood standard.
 3           I guess I'll answer any questions the Court
 4   has.  But I think that's probably sufficient for the
 5   argument.
 6           THE COURT:  All right.  Thank you, Mr.
 7   Beck.
 8           Mr. Adams, I'll give you the last word.
 9           MR. ADAMS:  Thank you.  I do appreciate
10   that because I had a couple of little things that --
11   this is an impulse I sometimes should resist, saying
12   them out loud, but I can't resist this one:  In the
13   rush to leave town, this gentleman accidentally ran
14   over a bag of electronics.  He was very hard to pin
15   down on dates, and I think that was probably honest;
16   he has no idea what the dates were.
17           But sometime between December 3, 2015, when
18   everything -- when the arrests were made, and his
19   court appearance, when he turned over the broken
20   equipment to Special Agent Acee -- which wasn't
21   photographed and later thrown away -- the rush to
22   leave town seemed to be over a couple of weeks where
23   he was packing.  In his haste to leave town -- he
24   didn't leave again, after his court date, for several
25   days, maybe a couple of weeks.  So I don't think it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    really was a rush to leave town.  It might have a

2    rush to break the phone, but it wasn't a rush to

3    leave town.

4             And the Government's position is

5    interesting.  They're saying he's credible.  But he

6    doesn't remember anything except that he doesn't like

7    the SNM guys, and that they're to blame for

8    everything wrong with him.  So he says, essentially,

9    the Government's position is:  He's a credible

10   junkie.  And I just don't think anything about his

11   testimony suggested there was any credibility at all

12   to anything he asserted.  He couldn't give dates,

13   timelines.  He hadn't reviewed the tapes to see if

14   they were accurate.  It doesn't suggest credibility.

15            Now, we may be a little weak on

16   demonstrating the significance of our prejudice.  I'm

17   happy to stand on the pleadings on that, because I

18   think we have some vulnerability on those points.

19   But the points about his haste being believable, I

20   just don't think it is.  And that him being

21   believable is a whole -- I just think there are a

22   lot, a lot of -- I think you have to really bend over

23   backwards to find that he was credible about the

24   destruction of the phone.

25            And I'll say, if he were honest about it,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492
                                                         e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    he probably would have called Acee from his other

2    array of cellphones immediately after the destruction

3    saying, Oh, oh, sorry about that.  And he didn't do

4    that.  He was carrying around a bag of broken phones

5    for an unspecified period of time.  I mean, it's just

6    bizarre and not worthy of belief, respectfully.

7             Thank you for indulging my last points.

8             THE COURT:  After that, I'm reluctant to

9    find him credible.  But I am.  I do think it needs a

10   credibility determination, and I do think he was

11   credible.  I had an opportunity to observe his

12   demeanor.  And it happened -- I do think it happened

13   the way that Mr. Montoya described it.  It is an

14   objectively credible story that he gives.  And the

15   fact that he destroyed some other electronics at the

16   same time; that he destroyed his wife's and

17   daughter's at the same time, I think does add some

18   credibility to it.  There is not something specific

19   as to this phone, dropping it down a toilet, or just

20   this phone got destroyed.

21            Also, the stories between the testimony of

22   Mr. Acee and Mr. Montoya were consistent.  There

23   seems to be a consistency over time.  Also, in

24   details.  I do think that we're not dealing with a

25   great risk of any sort of evidence, much less

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    exculpatory evidence, because it was only this phone

2    that was used to call SNM members.  So I think we

3    'have a high degree of assurance that all the

4    evidence from it has been obtained.

5              I don't see any evidence of bad faith on

6    behalf of Mr. Montoya or Mr. Acee that would meet the

7    Trombetta or Youngblood standards.  I think that in

8    both situations, at most, you saw negligence by Mr.

9    Acee in throwing away a phone, and by Mr. Montoya in

10   running over the phone.

11             So I'm going to deny both motions and not

12   suppress any of the evidence, or dismiss any portion

13   of the case against Mr. Garcia, or any other

14   defendants.

15             Well, by my account, that concludes our

16   motion work.  Is there anything else before we take

17   our leave and head back to -- get ready for the

18   trial?  Anything else I can do for you?  Anything

19   else you'd like to discuss with me?  Any more

20   guidance?  Evidentiary rulings?

21             Ms. Armijo?  Mr. Castellano?

22             MS. ARMIJO:  No, Your Honor.  I don't

23   believe so.  Thank you.

24             THE COURT:  How about from the defendants?

25             All right.  Well, everybody be safe.  We'll

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    see you at 8:30 -- the five defendants, we'll see you

2    and your counsel, the Government, 8:30 on Monday,

3    January 29.

4           Contact Ms. Wild if we need to be of any

5    further assistance.  I'm going to keep cranking out

6    these opinions.  If there is something special you

7    want, let us know.

8           Otherwise, I appreciate your hard work

9    pretrial.  Look forward to trying the case with you

10   on Monday the 29th.  Be safe.

11           (The Court was adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7          I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13         In testimony whereof, I have hereunto set my

14   hand on January 18, 2018.

15

16

17

18   _____
     Jennifer Bean, FAPR, RMR-RDR-CCR
19   Certified Realtime Reporter
     United States Court Reporter
20   NM CCR #94
     333 Lomas, Northwest
21   Albuquerque, New Mexico 87102
     Phone:   (505) 348-2283
22   Fax:     (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com