IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 15-4268 JB |
| | ) | |
| vs. | ) | |
| | ) | |
| **ANGEL DELEON, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' TRIAL BRIEF REGARDING INADMISSIBILITY OF INVESTIGATIVE REPORTS UNDER RULE 803(6) AND 803(8)

The Court noted today that it was inclined to admit portions of two New Mexico Corrections reports, because the Court believes they may fit within exceptions to the rule against hearsay. But Rule 803(6) of the Federal Rules of Evidence provides an exception to the rule against hearsay only if the person reporting the information contained in the business record was under a business duty to report the information (or reported the information as a regularly conducted activity within the organization), or if the information reported falls under some other hearsay exception. In both of these documents, the persons reporting the information aren't under any business duty to report the information; they're confidential informants or unknown individuals. And there's no evidence or information about any of these individuals' motives to provide the information. With regard to Rule 803(8), in neither of these documents is there any factual finding, which is a predicate for admission of a statement under Rule 803(8). Moreover, the information provided is hearsay not falling within any exception, and, because the individuals reporting it are unknown other SNM members who do not like Mr. Baca's SNM leadership, the sources and circumstances "indicate a lack of trustworthiness." Fed. R. Evid. 803(8). Finally, the Court should exclude these documents, because Rule 803(8)'s admission of

opinion-type factual findings is premised on the principles of expert testimony, and, under this Court's previous expert rulings, Mr. Baca could not elicit the hearsay within these documents through expert witnesses. Thus, these documents do not fit within any hearsay exception or exclusion. The documents are therefore inadmissible under Rule 802.

## **BACKGROUND**

Both of these reports are investigative reports. The May 16, 2011 "Ref: Anthony Baca," Bates No. 27820-22 ("Baca Report") is an investigative report authored by James Thomas, Deputy Warden.[1] The report is based on "information received" by "FBI Agent Lance Roundy," "CH#15," via "STIU Officer Corey Henn, "Source #193," through "STIU Coordinator James Mulheron," and both "Source #197," "Source #198," and "Source #199" through STIU officers "Edgar Pinon and . . . Ronald Martin." Baca Report at 1-2. Nowhere in this report is there any factual finding that the information relied on in the report is reliable. Nowhere in this report is there a factual finding that Mr. Baca was under a threat. The only assertion in this document which may be considered a factual finding is that "[i]nmate Baca meets the criteria for placement into Level VI . . . ." *Id.* at 2. However, all of the criteria met are based on other SNM members' "fe[elings]" that [Mr. Baca] was taking the SNM in the wrong direction, based on his actions." *Id.* ¶ 5, at 3. Indeed, the report states that the only way in which the information is corroborated is that "it came from several sources," *id.* ¶ 6, all of whom are SNM members apparently feeling as if Mr. Baca is taking the SNM in the wrong direction.

---

[1] Mr. Baca tried to enter these documents into evidence through Daniel Blanco. Mr. Blanco did not author these documents, and did not work for STIU on May 16, 2011. He therefore cannot say that this particular document from May 16, 2011 was "made at or near the time by -- or from information transmitted by -- someone with knowledge," nor can he say that "making the record was a regular practice of that activity" at the time. Fed. R. Evid. 803(6). Mr. Blanco, therefore, is not a proper witness to lay the required foundation under Rule 803(6)(D).

The "Supervisor's Serious Incident Report Form," Bates No. 27794 ("Incident Report Form") was submitted by Daniel Blanco on June 28, 2013. But the pertinent information contained in the Incident Report Form is quadruple hearsay. The information in the report is based on information that Mr. Blanco received from Mr. Lytle, which Mr. Lytle had received from "Lt. Mark Griego," who "had received information" from a fourth person. Even if we accept for argument that Mr. Blanco, Mr. Lytle, and Lt. Mark Griego are under a legal duty to report the information, there's no indication that whomever Lt. Griego received the information from was under any such legal duty. Moreover, the only assertion in that document may be that the information "[n]eeds further investigation," but that, again, relies only on 4th-level hearsay from an unidentified source.

## **RELEVANT LAW**

### A. **RULE 803(6).**

Rule 803(6) provides an exception to the rule against hearsay statements for records of regularly conducted activity:

> A record of an act, event, condition, opinion, or diagnosis if:
> **(A)** the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> **(C)** making the record was a regular practice of that activity;
>
> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> **(E)** neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). But the Tenth Circuit requires that "[a]ny information provided by another person, if an outsider to the business preparing the record, must itself fall within a hearsay exception to be admissible." *United States v. Gwathney,* 465 F.3d 1133, 1141 (10th Cir. 2006). "Thus, it is well established that although entries in a police or investigating officer's report which result from the officer's own observations and knowledge may be admitted, statements made to the officer by third parties under no business duty to report may not." *United States v. Snyder*, 787 F.2d 1429, 1434 (10th Cir. 1986) (citing cases).

Likewise, the Federal Rules Advisory Committee Commentary to the 1972 amendments to rule 803(6) point out that "[i]f . . . the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." The Advisory Committee continues: "An illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course, *but the informant does not*." (Emphasis added).

Professor Stephen A. Saltzburg notes in his *Federal Rules of Evidence Manual* that the requirement that the informer be under a duty to report remains in the rule despite a drafting error, and is indeed necessary to overcome the double hearsay problem inherent in Rule 803(6):

> There is an important drafting error in Rule 803(6), which defines a business record as one "made at or near the time by—or from information transmitted by—someone with knowledge." This might be read as abolishing the business duty requirement for the person transmitting the information. The common-law business duty requirement covers the situation in which the party who prepares a business record has no personal knowledge of the underlying event record, but is relying on a source of information who does have personal knowledge. Under the business duty requirement, the record is not admissible unless the party reporting the information to the recorder of the information had a business duty to do so; i.e., was reporting the information in the regular course of regularly conducted activity. *The business duty requirement was thought necessary to address the problem of double hearsay that arises when one person*

4

*relates information offered for its truth to a person who records the information in a business record.* The business record exception guarantees that the recording party recorded reliably, but an extra guarantee is necessary to assure that the party with personal knowledge of the underlying event related it accurately to the recorder.

It is true that the rule on its face appears to suggest that the business record must be kept in the regular course of the business, but that anyone can contribute information to the record as long as the information is based on personal knowledge. However, we conclude that Congress never intended to abandon the business duty concept. It is quite clear that the Advisory Committee intended to retain the concept. It is just as clear that Congress was concerned with the breadth of the Advisory Committee's term "regularly conducted activity," not with business duty. The only reference in the legislative history to the concept is in the Report of the Senate Committee on the Judiciary, which states only that the person who supplied the information comprising the business record need not be specifically identified. There is not one word in the Report to suggest that the person need not be under a duty to the business. Moreover, nothing in the text of the rule indicates an intent to override the basic principle set forth in Rule 805—that if there is hearsay on hearsay, the hearsay rule must be satisfied for each transmission.

In light of the strong statement by the Advisory Committee, and the basic premise of Rule 805, we believe that the only correct approach is to continue to follow the business duty concept—that all those who report information included in a business record must be under a business duty to do so, or else the hearsay problem created from the report by an outsider must be satisfied in some other way. *To abolish the business duty requirement (or some other means of satisfying the hearsay problem created by information related by those outside the business) would lead to the introduction of double hearsay by way of a business record, in violation of Rule 805.*

4 Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, *Federal Rules of Evidence Manual* § 803.02[7][c] (2017) (emphasis added).

## B.  RULE 803(8)

Rule 803(8) provides an exception to the rule against hearsay for certain records or statements of a public office so long as "the source of information" doesn't "indicate a lack of trustworthiness":

**(8) Public Records.** A record or statement of a public office if:

      **(A)** it sets out:

           **(i)** the office's activities;

           **(ii)** a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

           **(iii)** in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

    **(B)** the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8).

Professor Saltzburg explains that the same concerns that underlie allowing in hearsay-within-hearsay also play into allowing into evidence a statement of a public office that sets out factual findings, which is why 803(8)(B) includes the safeguard that the underlying statements can't indicate a lack of trustworthiness. *See* 4 Saltzburg, *Fed. R. Evid. Manual* § 803.02[9][f]. Professor Saltzburg notes that the question of the scope of the term factual findings under Rule 803(8)(A)(iii) is a difficult question after *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 175 (1988). *See id.* But Professor Saltzburg points out that, among the five reasons for not categorically excluding all opinions from "factual findings" under Rule 803(8)(A)(iii) includes that Rule 803(8)(B) excludes opinions and factual findings made under untrustworthy circumstances:

    (3) The opposing party does not need an arbitrary exclusion of opinion in order to protect itself from unreliable information in a public report; protection is given by the provision that excludes evidence offered under Rule 803(8) if it was made under untrustworthy circumstances. Moreover, the requirement that the report contain "factual findings" will still exclude the most suspect investigative reports: those that do not contain any factual findings, and thus are unlikely to be based on factual investigation.

(4) The line between fact and opinion is exceedingly hard to draw, and is essentially arbitrary. There is no policy reason for drawing such a line; if the concern is that an opinion is untrustworthy, that concern can be addressed on a case-by-case basis under the trustworthiness clause.

*Id.*

Professor Saltzburg also points out that, like the hearsay-within-hearsay problem that business records under Rule 803(6) present, "[w]here the official who prepared the report receives his or her information from persons outside the government, a hearsay-within-hearsay problem exists similar to that found with business records." *Id.* § 803.02[9][g].

## ANALYSIS

### A. THE DOCUMENTS ARE NOT ADMISSIBLE UNDER RULE 803(6), BECAUSE THE UNIDENTIFIED SOURCES OF THE INFORMATION WERE NOT UNDER ANY DUTY TO REPORT THE INFORMATION, AND THEIR STATEMENTS DO NOT FALL WITHIN ANOTHER HEARSAY EXCEPTION.

There's no doubt that these documents are out-of-court statements that Mr. Baca offers for the truth of the matters asserted therein: that he was in danger of being removed from his leadership position by force or death. So the only doubt is whether all of the layers of hearsay in these documents fall within an exception to the hearsay rule. *See* 4 Saltzburg et al., *Fed. R. Evid Manual* §§ 803.02[7][c] & 803.02[9][g]. Mr. Baca intends to offer these documents only for the information provided by CH#15, and Sources #193, 197, 198, and 199 in the Baca Report, and for the unidentified 4th layer of hearsay in the Incident Report Form.

With regard to admission under Rule 803(6), the Advisory Committee Notes, the Tenth Circuit, and Professor Saltzburg's commentary make clear that these documents do not come within that exception, because the underlying sources providing the information to the corrections officers weren't NMCD officials, nor were they providing that information in the course of any regularly conducted activity. *See id.* § 803.02[7][c] ("Under the business duty requirement, the

7

record is not admissible unless the party reporting the information to the recorder of the information had a business duty to do so; *i.e.*, was reporting the information in the regular course of regularly conducted activity."); *Gwathney,* 465 F.3d 1133, 1141 ("Any information provided by another person, if an outsider to the business preparing the record, must itself fall within a hearsay exception to be admissible."). Thus, neither the Baca Report nor the Incident Report Form are admissible under Rule 803(6).

### B.   THE DOCUMENTS ARE NOT ADMISSIBLE UNDER RULE 803(8), BECAUSE THE SOURCES AND CIRCUMSTANCES OF THE INFORMATION INDICATE A LACK OF TRUSTWORTHINESS, AND BECAUSE THE COURT ALREADY ORDERED THAT NEITHER PARTY MAY USE EXPERT-TYPE TESTIMONY AS A CONDUIT FOR HEARSAY.

The only assertions that may be considered factual findings in the Baca Report are that "Inmate Baca meets the criteria for Placement into Level VI as stated . . . ." While that may be a factual finding, or an opinion that the Supreme Court in *Rainey* concluded may be considered a factual finding for purposes of Rule 803(8), as Professor Saltzburg recognized: "[E]ven after *Rainey*, there are several limitations on the admissibility of opinions, as well as factual findings, contained in investigative reports. Most of these limitations are imposed by the courts pursuant to the trustworthiness clause of Rule 803(8)." 4 Saltzburg et al., *Fed. R. Evid. Manual* § [9][f]. The problem is that these statements are untrustworthy, as the "source of the information . . . indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B).

In the Baca Report, the first source asserts that Mr. Baca will be hit because of "Baca's inability to control the SNM members at SNMCF and *other influential members of the SNM are wanting to step up to a leadership role and are willing to assault and kill Baca to obtain status*." Baca Report at 1 (emphasis added). Similarly, the second source -- Source #193 -- also asserted that the removal of Baca was "due to Baca's lack of enforcing rules in a more violent manner." *Id.*

at 2. The rest is more of the same, which leads to the assertion on page 3 that "[t]he details of the information was that Inmate Baca was going to be killed by fellow members of the SNM, as they felt that he was taking the SNM in the wrong direction, based on his actions." *Id.* at 3.

Throughout this trial and pretrial hearings, the Court has heard many times that there were several allegations of hits being out on SNM members that weren't true. In addition, over the last 5 days of testimony, the Court has heard from every SNM member witness that a way to remove SNM members is to "drop a kite" about a SNM member being in danger to remove that SNM member from the pod, regardless whether that's true. Indeed, the questions about that on cross-examination from Mr. Baca elicited that members "dropped kites" when the information wasn't true simply to remove an inmate from a facility. And here in Mr. Baca's case, he was removed from SNMCF after these unknown sources provided this information. That alone shows the untrustworthiness.

Professor Saltzburg points out that Rule 803(8) still presents "a hearsay-within-hearsay problem . . . similar to that found with business records." 4 Saltzburg et al., *Fed. R. Evid. Manual* § [9][g]. "As applied to secondhand information contained in public reports, Rule 805 requires that the statements by private persons to public officers must be found independently admissible if offered to prove the truth of the fact asserted by the outsider." *Id.*

For the statements of the confidential sources in the Baca Report (as well as in the Incident Report Form"), those hearsay-within-hearsay statements do not fit within any exception to or exclusion from hearsay. And this is important. Professor Saltzburg points out that the basis for allowing in opinions and factual findings under Rule 803(8)(iii) finds support in the expert opinion rules of 702-704, which allow an expert to rely on hearsay statements to form opinions if they're sufficiently reliable and the types of statements other experts in the field would rely on: "An

opinion, to be admissible, must be made by a qualified person using reliable methods, and must be based upon sufficient information and investigation. As applied to opinions of public officials, the standard of trustworthiness in Rule 803(8) is parallel to those contained in Federal Rules 702–704, which regulate the opinions of experts testifying at trial." *Id.* § [9][f]. But Professor Saltzburg also instructs that "[t]he reason for imposing these requirements is that the opinion of a government investigator is likely to be treated by the factfinder as tantamount to an expert opinion." *Id.* And importantly, "[t]he proponent should not be better off by introducing the report instead of live testimony from an expert. If the government official would not be able to satisfy the standards for expert testimony at trial, there is little reason to admit the official's hearsay statement." *Id.*

That the reliability and trustworthiness basis for allowing in factual findings and opinions within public reports or statements finds support in the expert rules is particularly important in the context of this SNM gang prosecution. The Court already ordered, based on the Defendants' objections, that experts would not be used in this trial as conduits for hearsay testimony. Even if Mr. Baca seeks to admit only just the factual finding in the Baca Report that he qualified for Level VI basement based upon meeting the criteria of facing a serious assault, that assertion is based solely on hearsay. Under the Court's ruling, an expert -- such as Mr. Blanco or Mr. Thomas in this report, or even Messrs. Martin, Cupit, and Sapien, whom the United States proffered as gang experts in this case -- could not read the underlying reports and conclude that Mr. Baca met the criteria, because that would run afoul of the Court's order not to parrot hearsay through expert opinion.

Professor Saltzburg notes that "[t]he proponent [of the evidence under Rule 803(8)(A)(iii)] should not be better off by introducing the report instead of live testimony from an expert." *Id.* Mr. Baca could not offer expert testimony to testify to the assertions -- or factual findings or opinions

-- that he intends to admit via the Baca Report. Allowing Mr. Baca to admit this Baca Report under Rule 803(8)(A)(iii) would therefore run afoul of the policy reasons for admitting public reports under Rule 803(8). The Court, therefore, properly should exclude this report, which is based *solely* on hearsay statements of unidentified and untrustworthy sources, as hearsay

## **CONCLUSION**

For these reasons, the United States asks the Court to exclude the inadmissible hearsay evidence.

Respectfully Submitted,

JAMES D. TIERNEY
Acting United States Attorney

**Electronically filed on 2/6/2018**
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM  88001
(575) 522-2304 – Tel.

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record on this date.

/s/
MATTHEW M. BECK
Assistant United States Attorney