1              IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                      CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8

9         Transcript of Motion to Suppress and James
     Hearing Proceedings before The Honorable James O.
10   Browning, United States District Judge, Las Cruces,
     Dona County, New Mexico, commencing on January 26,
11   2018.

12

13   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck
14
     For the Defendants: Mr. Brock Benjamin; Ms. Cori
15   Harbour-Valdez; Mr. Robert Cooper; Mr. Jeff Lahann;
     Mr. John Granberg; Mr. Billy Blackburn; Mr. Ryan
16   Villa; Ms. Amy Jacks; Mr. Richard Jewkes; Mr. Marc
     Lowry; Ms. Theresa Duncan; Ms. Carey Bhalla; Mr.
17   William Maynard; Mr. Donovan Roberts; Ms. Lisa
     Torraco; Ms. Angela Arellanes; Mr. Jerry Walz
18

19   For the Defendants (Via telephone):  Ms. Justine
     Fox-Young; Mr. Pat Burke; Mr. James Castle; Mr.
20   Richard Sindel

21   Also present:  Mr. Gary Mitchell

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Good morning
 2    everyone.   I appreciate everyone making themselves
 3    available to me this morning.
 4              The Court will call the United States of
 5    America versus Angel DeLeon, et al., Criminal Matter
 6    No. 15-CR-4268-JB.
 7              If counsel will enter their appearances for
 8    the Government.
 9              MS. ARMIJO:  Good morning, Your Honor.
10    Maria Armijo, Randy Castellano, and Matthew Beck on
11    behalf of the United States.
12              THE COURT:  All right.  Ms. Armijo, Mr.
13    Castellano, and Mr. Beck, good morning to you.
14              And for Defendant Joe Lawrence Gallegos.
15              MR. BENJAMIN:  Good morning, Your Honor.
16    Brock Benjamin, on behalf of Mr. Gallegos.  And I
17    believe Mr. Sindel is on the phone.
18              MR. SINDEL:  Good morning, Your Honor.
19    This is Richard Sindel.
20              THE COURT:  All right.  Mr. Benjamin, Mr.
21    Sindel, Mr. Gallegos, good morning to you.
22              For Defendant Edward Troup.
23              MS. HARBOUR-VALDEZ:  Good morning, Your
24    Honor.  Cori Harbour-Valdez.  And Pat Burke is
25    joining us by phone.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BURKE:  Good morning, Your Honor.  Pat
 2    Burke, also appearing for Edward Troup.
 3            THE COURT:  All right.  Ms. Harbour-Valdez,
 4    Mr. Burke, Mr. Troup, good morning to you.
 5            THE DEFENDANT:  Good morning, sir.
 6            THE COURT:  For Defendant Billy Garcia.
 7            MR. COOPER:  Good morning, Your Honor.  Bob
 8    Cooper on behalf of Mr. Garcia, who is present this
 9    morning.  And I believe Mr. Castle was going to join
10    us on the telephone.
11            THE COURT:  All right.  Mr. Cooper, Mr.
12    Garcia, good morning to you.
13            Mr. Castle, are you there?
14            MR. CASTL:  Yes, I am, Your Honor.  Jim
15    Castle on behalf of Mr. Garcia, by phone.
16            THE COURT:  All right.  Good morning to
17    you.
18            And for Defendant Allen Patterson.
19            MR. LAHANN:  Good morning, Your Honor.
20    Jeff Lahann on behalf of Mr. Patterson.
21            THE COURT:  All right.  Mr. Lahann,
22    Mr. Patterson, good morning to you.
23            And, let's see, for Defendant Christopher
24    Chavez.
25            MR. GRANBERG:  Good morning, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    John Granberg for Mr. Christopher Chavez.

 2              THE COURT:  All right.  Mr. Granberg,

 3    Mr. Chavez, good morning to you.

 4              THE DEFENDANT:  Good morning.

 5              THE COURT:  And for Defendant Arturo

 6    Arnulfo Garcia.

 7              MR. BLACKBURN:  Billy Blackburn on behalf

 8    of Mr. Garcia.  He's present, Your Honor.

 9              THE COURT:  All right.  Mr. Blackburn, good

10    morning to you.  Mr. Garcia, good morning to you.

11              THE DEFENDANT:  Good morning.

12              THE COURT:  And for Daniel Sanchez.

13              MS. JACKS:  Good morning, Your Honor.  Amy

14    Jacks and Richard Jewkes for Mr. Sanchez.

15              THE COURT:  All right.  Ms. Jacks, Mr.

16    Jewkes, Mr. Sanchez, good morning to you.

17              And for Defendant Anthony Ray Baca.

18              MS. DUNCAN:  Good morning, Your Honor.

19    Theresa Duncan and Marc Lowry on behalf of Mr. Baca.

20              THE COURT:  All right.  Ms. Duncan,

21    Mr. Lowry, Mr. Baca, good morning to you.

22              THE DEFENDANT:  Good morning.

23              THE COURT:  And, let's see, Mr. Garcia is

24    not here.

25              So for Defendant Carlos Herrera?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. BHALLA:  Good morning, Your Honor.
 2    Carey Bhalla and Bill Maynard for Mr. Herrera.
 3            THE COURT:  All right.  Ms. Bhalla,
 4    Mr. Maynard, Mr. Herrera, good morning to you.
 5            THE DEFENDANT:  Good morning.
 6            THE COURT:  For Defendant Rudy Perez.
 7            MR. VILLA:  Good morning, Your Honor.  Ryan
 8    Villa on behalf of Mr. Perez.  And on the phone is
 9    Ms. Fox-Young.
10            THE COURT:  All right.  Mr. Villa, Mr.
11    Perez, good morning to you.
12            Ms. Fox-Young, are you there?
13            MS. FOX-YOUNG:  Good morning, Your Honor.
14    This is Justine Fox-Young for Mr. Perez.
15            THE COURT:  All right.  Good morning to
16    you, Ms. Fox-Young.
17            And for Defendant Andrew Gallegos.
18            MR. ROBERTS:  Good morning, Your Honor.
19    Donovan Roberts for Andrew Gallegos, with Lisa
20    Torraco, with counsel all present and accounted for.
21            THE COURT:  All right.  Mr. Roberts, Ms.
22    Torraco, good morning to you.  Mr. Gallegos, good
23    morning to you.
24            THE DEFENDANT:  Good morning.
25            THE COURT:  And for Defendant Shauna
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Gutierrez.

2              MS. ARELLANES:  Angela Arellanes for Ms.

3    Gutierrez, who is present.

4              THE COURT:  All right.  Ms. Arellanes, Ms.

5    Gutierrez, good morning to you.

6              THE DEFENDANT:  Good morning.

7              THE COURT:  And for Defendant Brandy

8    Rodriguez.

9              MR. WALZ:  Good morning, Your Honor.  Jerry

10   Walz for Ms. Rodriguez.  And she's present.

11             THE COURT:  All right.  Mr. Walz, Ms.

12   Rodriguez, good morning to you.

13             Anybody else on the phone that hasn't

14   entered an appearance?  Anyone in the courtroom that

15   we haven't gotten to?

16             All right.  It looks like the first motion,

17   to me, is the motion regarding shackling.  So shall

18   we take that up, Mr. Villa?  I think you took the

19   lead on it.  I know that you filed something, I

20   think, this morning, and I haven't had a chance --

21             THE CLERK:  Yesterday.

22             THE COURT:  Yesterday.  But I think it may

23   have caught us when we were traveling.  So I haven't

24   had a chance to look at it.  But I will take a look

25   at it and pull it up while you're arguing.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                          1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                        e-mail: info@litsupport.com

1          MS. ARMIJO:  Your Honor, may we take up a

2    brief issue before we get to this matter?

3          THE COURT:  All right.  What do you have?

4          MS. ARMIJO:  There was a motion to continue

5    that was filed last night.  I don't want to get into

6    the merits of it or anything else.  I'm just moving

7    the Court to seal it.  There are attachments that

8    reveal confidential informants that were pursuant to

9    a protective order.  I think it's a violation of the

10   protective order to file that for the public.  It

11   outs all of our informants.  And the letters

12   themselves are part of a protective order, not even

13   allowed to go onto the tablets.  So by filing it

14   publicly, it allows the defendants and the public

15   access to something that we clearly put in a

16   protective order and is covered by a protective

17   order.  So I would ask for immediate sealing of that

18   motion.

19          MS. JACKS:  And I join.  I'm the one that

20   filed it.  I made a mistake.  Ms. Sirignano had done

21   the motion.  And when Mr. Garcia pled, it did not get

22   filed.  I filed it last night, and did not read the

23   attachment.  And I would ask to seal it as well.

24          THE COURT:  All right.  Anybody object to

25   sealing the motion to continue?  Not hearing any, it

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                         1-800-669-9492
e-mail: info@litsupport.com

1    will be removed.

2              I'm going to pass out to you a chart.  This

3    is not a complete chart.  It is a partial one.  In

4    about two hours you're going to have a more complete

5    chart.  But this is going in the opinion that I've

6    been working on about the James statements and the

7    James hearing that we had, co-conspirator statements.

8    So it's not complete and it's not finished, and it

9    will be much longer here in a couple of hours, as we

10   pull some stuff together.

11             I'd ask the United States to send that to

12   Mr. Braun; get that over to him so that he can take a

13   look at it, and maybe we'll be a little bit better

14   prepared when we get to those issues a little bit

15   later.

16             All right.  Mr. Villa?

17             MR. VILLA:  Thank you, Judge.

18             What was filed yesterday is Document 1700.

19   It's a response.  Essentially, it's a response to

20   Document 1678, which is basically the email from the

21   United States Marshal Service.  And it has some

22   additional case law in there that I think is

23   important for the Court to take a look at before it

24   makes its decision.  It's United States v.

25   Sanchez-Gomez, 859 F.3d 649, from the Ninth Circuit,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    just in May of last year, as well as the Tenth
 2    Circuit case I found from 1988, United States v.
 3    Apodaca, 843 F.2d 421.  Both of those cases
 4    essentially talk about the limits, I guess, that the
 5    Court has in delegating its decisionmaking to the
 6    United States Marshal Service with respect to the
 7    issues of shackling.
 8            The email -- or excuse me, the response
 9    also responds to the email, pointing out essentially
10    that, with respect to the remaining Trial 1
11    defendants, that being Mr. Baca, Mr. Perez, Mr.
12    Sanchez, and Mr. Herrera, the email that's provided
13    does not give any individualized information as to
14    any one of those defendants that would suggest that
15    there is any reason they need to be shackled, such as
16    a risk that they might present individually.
17            And I think that, you know, while I
18    appreciate the work of the United States Marshals,
19    and appreciate the concerns that they have, and the
20    information that they provided in the email, it
21    simply is not sufficiently individualized for this
22    Court to make a decision that shackling is necessary.
23            THE COURT:  Looking at the 302s that have
24    been recently provided to the Court in this batch of
25    briefing, which they talk about the hit list, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    which Carlos Herrera is one of the people that's at

2    the very top of the list, it seems to me that's

3    pretty -- I don't know, that seems to me very

4    troubling that we're going to have four men together,

5    where two of the leaders may be having a hit on one

6    of the other defendants in the courtroom.

7              MR. VILLA:  Well, a few things, Your Honor:

8    That information had come out some time ago.  I think

9    Mr. Davis may have -- I don't remember if he actually

10   brought it to the attention of the Court, but -- go

11   ahead, Ms. Bhalla.

12             MS. BHALLA:  Thank you.

13             THE COURT:  Well, no, I'd like --

14             MR. VILLA:  Well, maybe not.

15             THE COURT:  I'll run my own courtroom, Mr.

16   Villa.

17             MR. VILLA:  I apologize, Judge.  Let me

18   just say this, this information came out a long time

19   ago.  There was information dating back over a year

20   about hits.  Frankly, when you read the 302s, just

21   about everybody in the room potentially has a green

22   light on them.

23             THE COURT:  Well, doesn't that in itself

24   provide the individualized analysis that you're

25   wanting?

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                               (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. VILLA:  I don't think it does, Your

 2    Honor, for a couple of reasons:  One, is the

 3    information is coming from cooperating witnesses, who

 4    I think have inherent problems with their

 5    reliability.

 6            THE COURT:  But I mean, you're even saying

 7    that everybody in the room has a green light on them.

 8            MR. VILLA:  Based on cooperator

 9    information.  And so, to me, the fact that everybody

10    is saying that --

11            THE COURT:  What about the fact we've had

12    people bringing shanks into the courtroom while we've

13    been trying to have hearings?

14            MR. VILLA:  So that's addressed in the

15    response as well, Your Honor.  That is now a

16    cooperating witness, the one individual I know that

17    allegedly brought shanks into the courtroom.

18            THE COURT:  Well, but what level of

19    individual attention?  Do I have to find a shank on

20    Mr. Perez before I can put shackles on him?  I mean,

21    what is the level of individualized analysis that I

22    need to make here?

23            MR. VILLA:  Well, I certainly think --

24            THE COURT:  Do I have to wait till it

25    occurs?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MR. VILLA:  You don't have to do that, no.
 2              THE COURT:  Then tell me, given what we've
 3      had here, what more I need to find shackles
 4      appropriate?
 5              MR. VILLA:  Well, Your Honor, I think it's
 6      not that someone who is now testifying against Mr.
 7      Perez brought shanks to the court.  I don't think
 8      that's enough.  If there was some information that
 9      perhaps Mr. Perez was going to bring shanks or some
10      other material to the court, that he's not supposed
11      to, then I think we need the opportunity to test that
12      information.  But we don't even have that.  We don't
13      have anybody saying Mr. Perez is going to bring a
14      dangerous weapon to court, or something else, or Mr.
15      Perez is planning on executing a hit on any one of
16      the other three co-defendants.
17              We just have a lot of this generalized
18      information from a lot of different sources that
19      doesn't come out until they cooperate, until they
20      have some exchange with the FBI or the United States
21      Attorney's Office about the benefits they're going to
22      get for providing information.  And we don't know how
23      it transpired.  You know, it's simply not trustworthy
24      enough that some of these folks that -- you mentioned
25      Mr. Herrera -- having a green light on them, or as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    mentioned in the United States Marshal's email, some

2    testimony that came out that maybe Mr. Sanchez and

3    Mr. Baca had a problem with each other.

4              You know, if this information is true --

5    which we doubt its reliability because of the source,

6    and because it didn't come out until they decided to

7    cooperate and got some benefit for that -- it's

8    belied by what you've seen in the last two-and-a-half

9    years of this case.  You know, if this occurred, it

10   occurred in some of the information before the

11   indictment -- some of it occurred during, according

12   to the cooperators -- but at no time throughout this

13   case have you seen anything happen in this courtroom.

14   You haven't got any information, at least that the

15   defense is aware of, that there was some plans or

16   movements occurring in the transport, on the way up

17   in the elevator or during the breaks.

18             THE COURT:  Some of these 302s suggested

19   that they would kill people in transport if they did

20   not sit at the back of the bus.

21             MR. VILLA:  Well, I think one of those may

22   have come from Mr. Rodriguez, who is one of the

23   individuals who brought shanks to court, who is now

24   testifying against all four of the Trial 1

25   defendants.  So I think we have to be skeptical of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    his testimony or his statements in the 302, and what
 2    he's saying, and how that came about, and the fact
 3    that he's not just genuinely concerned about
 4    something happening in this courtroom or something
 5    happening to his quote/unquote friends.  He's only
 6    providing this information after he's decided to
 7    cooperate and receive the benefits that he's going to
 8    receive from that.
 9            And there isn't any other information to
10    corroborate what he has said, other than, again, this
11    generalized statements from other cooperators.  If
12    the United States Marshal said, you know, I went up
13    to Mr. Perez and said, you know, Do you think someone
14    is at risk of getting attacked in the transport van,
15    and he said something, or didn't say something, or
16    had a strange reaction, or something was found in the
17    cells or another source, like a transport officer had
18    some observations that were concerning, some other
19    evidence besides just words of the cooperators, to
20    lead this Court to believe that any of that is true,
21    I think is what is required.
22            And with respect to Mr. Perez, there isn't
23    any of that information in any of these 302s.  I
24    recognize what you're saying about Mr. Herrera, and
25    what the marshals said about Mr. Sanchez and Mr.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   Baca.  But, again, there is no corroboration for any

2   of this material.  And I think, short of that, there

3   isn't any other evidence that I've seen or this Court

4   has seen that would warrant shackling.

5            So if we're just dealing with the Court's

6   concerns from some of these 302s, then I think I've

7   responded to that.  There isn't any other information

8   that the defense is aware of.  And so if there is,

9   I'd ask that we put it on the table this morning.

10  But there isn't any other information that would lead

11  to a conclusion that shackling is necessary.

12           THE COURT:  All right.  I may let you argue

13  further.  Why don't -- since we have Deputy US

14  Marshal Mickendrow in the room -- and I think he was

15  the one who put the report together -- why don't I

16  let him come to the podium and speak.  And then y'all

17  may have questions y'all want to ask him.

18           Deputy, good morning.

19           DEPUTY MICKENDROW:  Good morning, Your

20  Honor.

21           THE COURT:  Do you want to go ahead and

22  make a record as to why y'all feel that shackles are

23  necessary in this case?  And if you can break it out

24  by defendant, that would be helpful, I think, to

25  everyone.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          DEPUTY MICKENDROW:  Yes, Your Honor.  So I
 2    think the first thing that's important to know would
 3    be that the Marshal Service -- one of the Marshal
 4    Service's duties is the -- to ensure the protection
 5    integrity of the Court and all parties within the
 6    courtroom.  That includes the defendants.  So when
 7    we're considering security measures, we take the
 8    defendants, the risk to the defendants, into
 9    consideration in that decision.
10          What I would say is that I don't believe
11    the Marshal Service makes the decision, or in this
12    case, has made the decision, that the shackles are
13    required.  That's a decision of the Court.  However,
14    we do strongly urge the Court to follow the
15    recommendations of the Marshal Service.
16          And there are several reasons why.  We
17    have, in this case now, four defendants going to
18    trial that have very lengthy criminal histories.  We
19    pointed that out as one of the notable points.
20    They're in an organization that is known to be a
21    violent organization.  And that's not something that
22    we can just disregard.
23          The Marshal Service -- Mr. Villa is right,
24    the Marshal Service doesn't have to prove beyond all
25    doubt that Mr. Sanchez and Mr. Baca are looking at
```

SANTA FE OFFICE                                         MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

```
 1    trying to take each other out.  All we have to look
 2    at is, is there a probability that that's going to
 3    happen.  And there is a great probability.  That's
 4    the way these organizations run.  Everybody wants to
 5    be the Number 1 man.  And so it's understandable that
 6    there would be contention within that organization.
 7             Again, we don't need to prove that Mr.
 8    Herrera has a green light on his head.  But the facts
 9    that have been presented to us are enough to give us
10    cause -- or to give us pause, and to say that we need
11    to take extra security measures in order for the
12    protection of everyone within the courtroom.
13             I would also point out that -- I believe I
14    stated this in either the email, or it was a part of
15    the attachments, that we could find no case in which
16    any case was overturned due to security restraints
17    used by the Marshal Service in any trial.  I had --
18    and this isn't me speaking regarding this; this is my
19    Office of General Counsel providing this information.
20    I would not propose to be a legal matter expert in
21    any of this.  But what I would say is, when I was
22    writing up the information to provide to the Court, I
23    did refer to who I believed to be the legal matter
24    experts on this issue, and that was my Office of
25    General Counsel.
```

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                               Albuquerque, NM 87102
(505) 989-4949                                                                          (505) 843-9494
FAX (505) 843-9492                                                                 FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1           It's with all of that in mind that we take

2    into consideration what is the least restrictive

3    measure that we should ask for when we made our

4    presentation to the Court.

5           In addition, we took into consideration

6    many of the concerns that defense counsel raised.

7    And I believe one of the concerns was they didn't

8    want to have 100 deputies in and out of the courtroom

9    during the trial.  And if we don't use leg

10   restraints, we would have to go to a more restrictive

11   process, which would include more deputies.  And

12   that's just from a safety perspective.  We have our

13   own policies and procedures that we are required to

14   follow.  And if the leg restraints are not imposed,

15   then we have to look at alternatives.  And the

16   alternatives, I believe, are more contrary to what

17   defense counsel would want.

18          So with that, I would just turn it back

19   over to the Court, and if you have any more specific

20   questions for me.

21          THE COURT:  Let's see if any of the counsel

22   do.

23          Mr. Villa, do you have any questions that

24   you want to ask Deputy Mickendrow?

25          MR. VILLA:  I'm looking for a microphone.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                 1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                     e-mail: info@litsupport.com

```
1    I guess I'm close enough.
2              Do you have any specific information that
3    Mr. Perez presents a threat or has a threat upon him,
4    such that someone needs be shackled during this
5    trial, or else he's going to get hurt or he's going
6    to hurt somebody?
7              DEPUTY MICKENDROW:  Yes.
8              MR. VILLA:  Can you tell me what that is?
9              DEPUTY MICKENDROW:  He's a member of the
10   SNM Gang.  He provided a device that he was given to
11   be allowed to be used in the processing and making of
12   weapons.  I don't, like you, have to look at proving
13   that Mr. Perez did this.  I look at what is being
14   stated and who has stated it and the reliability of
15   their statements.  And based on the fact that I'm
16   receiving that information from other law enforcement
17   officers who have never had their credibility
18   questioned, I'm going to err on the side of caution
19   with that and believe what's going on.
20             In addition, I look at Mr. Perez' criminal
21   history, which is quite lengthy.  And those facts
22   alone, even if he was the only defendant in the
23   courtroom would cause -- would give me pause, and
24   would cause me to request additional security
25   measures to be implemented.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. VILLA:  Let's talk about his criminal

2   history.  Does he have a specific instance in his

3   criminal history that leads you to believe he's a

4   risk inside the courtroom?

5           DEPUTY MICKENDROW:  When I look at criminal

6   history, I don't look at any one specific instance.

7   I look at a whole picture.  In this case, when I look

8   at all the defendants' criminal histories, I'm

9   looking at that whole picture.

10          As far as one specific instance, I would

11  have to review his criminal history to be able to

12  answer that question.  But, again, in my opinion, I

13  don't look at a specific instance per his criminal

14  history.  I look at a whole picture.

15          MR. VILLA:  Well, let's set your opinion

16  aside for just a second.  And I just want to talk

17  about -- and if you don't have it on the tip of your

18  mind, that's fine, but something specific that Mr.

19  Perez has been convicted of, or accused of in his

20  criminal history that, for instance, was an incident

21  that happened in court, or attacking of a witness,

22  attacking of a co-defendant, a law enforcement

23  officer during court proceedings, threatening a

24  judge, anything along those lines that you can think

25  of in Mr. Perez' history?

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

```
 1              DEPUTY MICKENDROW:  I can't think of
 2    anything off the tip of my tongue.  I'd have to
 3    review his criminal history specifically.  But what I
 4    would point out is the individual -- I cited a case
 5    out of Salt Lake City, Utah.  That individual had no
 6    incidences in his past in which he acted out in court
 7    either.  However, you had a situation there, where
 8    the recommendation of the U.S. Marshals was not
 9    taken.
10              And we operate on a scale where we take
11    information that we are trying to gather from
12    multiple sources.  And so my response would be I
13    don't have any one specific piece of information for
14    you.  But taking the holistic picture, I believe, is
15    necessary.
16              And you asked to set my opinion aside.  And
17    I respect that.  But in all of this, all we are
18    providing is our opinion.  We provided our opinion to
19    the Court.  The Court ultimately makes the decision.
20              MR. VILLA:  Don't get me wrong, I respect
21    your opinion.  I'm just trying to look at objective
22    facts.
23              And so, with that in mind, let me ask about
24    the conduct of Mr. Perez.  Since he's been indicted
25    in this case, have there been any instances the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    United States Marshal is aware of where Mr. Perez
 2    presented a threat, himself, during courtroom
 3    proceedings?  And I'm not talking about the fact that
 4    he's a member of -- alleged member of a gang, or that
 5    he's alleged to have provided a piece of material
 6    that is involved in this Molina homicide.  I'm
 7    talking about while he's been in court, has he made
 8    threats towards somebody?  Has he lunged at someone?
 9    Have you seen anything like that that leads you to
10    believe he was about to commit an act of violence in
11    court?
12              DEPUTY MICKENDROW:  Yes.
13              MR. VILLA:  For Mr. Perez, specifically?
14              DEPUTY MICKENDROW:  For Mr. Perez
15    specifically.
16              MR. VILLA:  And when was that?
17              DEPUTY MICKENDROW:  That was the incident
18    with Mr. Garcia, where one of my deputies approached
19    Mr. Garcia and told him to, in essence, stop trying
20    to intimidate others.  And Mr. Garcia was placed --
21    hands on were placed on Mr. Garcia.  He was removed
22    from the courtroom.  At that time, multiple
23    defendants got up and started yelling.  And Mr. Perez
24    was one of those defendants.  I had to threaten the
25    court -- sorry, I had to threaten the defendants at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that time that I would take them all out of the court
 2   if they didn't settle down.  And it wasn't until
 3   after that that he settled down.  So, yes, there has
 4   been incidences in the courtroom where his behavior
 5   would give me pause.
 6             MR. VILLA:  So, in that particular
 7   instance, he stood up and yelled in reaction to
 8   Mr. Garcia being removed from the courtroom?
 9             DEPUTY MICKENDROW:  He yelled in reaction
10   to what was occurring with Mr. Garcia; not him being
11   removed from the courtroom.
12             MR. VILLA:  Did he say something that he
13   yelled, that you recall?
14             DEPUTY MICKENDROW:  Not that I can recall.
15   I couldn't recall a specific.  I know that he was one
16   of the individuals that did react.
17             MR. VILLA:  And when he reacted, you told
18   him to sit down or you're going to remove him from
19   court?
20             DEPUTY MICKENDROW:  There was multiple
21   times where I had to tell the defendants to sit down.
22   It was not once.
23             MR. VILLA:  Mr. Perez specifically?
24             DEPUTY MICKENDROW:  Multiple defendants.
25             MR. VILLA:  How many times did you have to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   tell Mr. Perez to sit down or you would remove him?
 2            DEPUTY MICKENDROW:  In that instance,
 3   you're asking me to refer to one defendant, when I
 4   had multiple defendants causing a disturbance within
 5   the courtroom.  And in that case, I wouldn't refer to
 6   one defendant.  I would refer to all of them.  And so
 7   there was multiple occasions where I had to tell all
 8   of them to sit down, or that I would start removing
 9   them from the courtroom.  And, in fact, I believe
10   there was another defendant that we removed.  It was
11   Mr. Sanchez.
12            MR. VILLA:  Mr. Perez did not have to be
13   removed?
14            DEPUTY MICKENDROW:  He did not.
15   Ultimately, they finally started to comply, and they
16   did sit down.
17            MR. VILLA:  Okay.  Other incidents in the
18   courtroom besides that one?
19            DEPUTY MICKENDROW:  Besides that one, I
20   can't think of any other instances.
21            MR. VILLA:  All right.  And when you were
22   responding to my question earlier about the
23   allegations, you said Mr. Perez provided a piece to
24   make a weapon, you're talking about the allegations
25   in this case?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            DEPUTY MICKENDROW:  Yes, I am.
 2            MR. VILLA:  You're not talking about a
 3    different incident?
 4            DEPUTY MICKENDROW:  No.
 5            MR. VILLA:  I think that's all the
 6    questions I have.
 7            THE COURT:  All right.  Thank you,
 8    Mr. Villa.
 9            Ms. Bhalla, Mr. Maynard, do you have
10    anything you want to ask Deputy Mickendrow?
11            MR. MAYNARD:  I don't have any questions,
12    Your Honor.  I would just like --
13            THE COURT:  Okay.  Let me see if anybody
14    has any questions, then I'll let you comment.
15    Anybody else have any questions of Deputy Mickendrow.
16            How about the Government?  Do you have any
17    questions?
18            MR. CASTELLANO:  I do have some questions
19    about a shakedown that took place.
20            THE COURT:  Let me ask y'all while y'all
21    are both there:  My understanding is that, of the
22    five defendants -- I know there is only four today --
23    but of the five defendants who are going to trial,
24    three of them had either escape charges or escape
25    convictions.  Can you tell me which three?  And are
```



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1   they two of the remaining four, or are they three of

2   the four?

3          MR. CASTELLANO:  What I have is a quick

4   reference, Your Honor, is the notice of bad acts we

5   gave to each of the defendants.  And I think the

6   Court could take judicial notice of those letters.

7   They were made part of the docket when defendants

8   filed motions to exclude any of the bad acts.  So

9   those are already something the Court can take

10   judicial notice of.

11          Let's see, in 1992, Mr. Sanchez committed

12   murder in the first degree.  In 1994, he incited a

13   riot at the inmate recreation yard.  He assaulted an

14   inmate in 1994, and a correctional officer in 1994,

15   as well as '95, in '95 and '96.

16          In '97, there was an assault of a

17   correctional officer and threatened another inmate.

18   In '97, he threatened another correctional officer.

19   He threatened --

20          THE COURT:  These are all convictions?

21          MR. CASTELLANO:  This is jail misconduct.

22          THE COURT:  Jail misconduct.

23          MR. CASTELLANO:  These are acts committed

24   within the Corrections Department.

25          In 1999, in the Corrections Department, he

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    threatened a correctional officer.  In '99, he

2    attempted to flood his cell and incite a disturbance

3    among the other inmates.  In '99, he assaulted

4    another correctional officer -- twice in 1999.

5            In 2003, he possessed a homemade weapon and

6    attempted to conceal it.

7            He received drugs in the facility that were

8    sent in by Christopher Garcia.  Then, in 2005, he

9    attempted to murder a rival gang member, and stabbed

10   him several times.  And also a correctional officer

11   was caught up in that conduct, and was also, I

12   believe, stabbed.

13           In 2010, he was appointed to the tabla,

14   making him a leader and a shot caller.  In 2010, he

15   assaulted a correctional officer in the Corrections

16   Department.

17           In 2012, he threatened a correctional

18   officer.

19           In 2013, while in custody, he conspired

20   with another gang member to kill Anthony Ray Baca for

21   poor leadership decisions.

22           Mr. Baca has also, at least one time,

23   conspired to murder Mr. Sanchez.

24           And then, of course, in 2014, the charged

25   conduct is that he called for the hit on Mr. Molina.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Regarding Mr. Baca -- I'm going to give
 2    necessary facts for the purpose of making
 3    individualized finding as to each of these
 4    defendants, because I think this is required.
 5              So, in 1982, Mr. Baca committed voluntary
 6    manslaughter.  In 1982, he committed battery on a
 7    peace officer.
 8              In '87, he conspired to receive stolen
 9    property.
10              I'll try to focus on the more aggravating
11    or violent actions.  In 1988, he committed armed
12    burglary, aggravated burglary, and aggravated
13    battery.
14              In 1989, while in the custody of the
15    Corrections Department, he murdered another gang
16    member.  He talks about that in the recordings in
17    this trial, which will be introduced.
18              In 2009, Mr. Baca sent in a covert message
19    through Jonathan Gomez, also known as "Baby G,"
20    instructing him to assault another inmate.
21              He's possessed heroin in the facility.
22              And then, of course, in 2014, we now have
23    the charged conduct, with the murder of Javier
24    Molina.
25              There is a statement here where he wanted a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   person identified as KS, in 2015, from Las Cruces, to
 2   hit a suspected informant, and who owed the SNM Gang
 3   member, Carlos Herrera, $800 for drugs.
 4            In 2015, Mr. Baca said that SNM Gang
 5   member, Carlos Herrera, and JR, a/k/a "BB," had made
 6   mistakes, and both members would be hit.  That's
 7   discussed in this case as well.  The Court has heard
 8   about that.
 9            So that would be the third member in this
10   courtroom who has something -- as Mr. Villa has
11   indicated, has had a green light on him.
12            October 24, 2015, Mr. Baca said that SNM
13   member, RB, was an informant, and he had ordered SNM
14   members to hit him.
15            In 2015, he talked about being brought into
16   the SNM Gang after he assaulted another inmate from
17   orders of another SNM Gang member.
18            And then the rest is largely the charged
19   conduct in this case.
20            The other issue with Mr. Baca was, we have
21   one cooperator who said during, I believe, the
22   Michael Astorga trial, which was an SNM member who
23   murdered a police officer, that Mr. Baca had that
24   cooperator -- he's now a cooperator -- follow jurors
25   during that trial.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Looking at Mr. Herrera's history:  In 1994,
 2    he's alleged to have contacted a victim or witness
 3    through a third party and threatened the witness'
 4    life.  In 1994, he was arrested for aggravated
 5    battery and resisting or alluding officers.  In 1994,
 6    he was arrested for aggravated assault on a police
 7    officer, and aggravated battery on a police officer.
 8    In 1994, while in custody in the Corrections
 9    Department, he threatened to assault a staff member.
10    In '94, he refused to obey a lawful order.
11              In 1996, in the Corrections Department, he
12    refused to obey a lawful order.
13              In '97, he possessed heroin.  And also in
14    '97 he used abusive words and gestures towards a
15    staff member.
16              In 1999, in the Corrections Department, he
17    engaged in and coerced other to engage in activity
18    that were a threat to the security of the
19    institution.
20              In 2001, he killed the person identified in
21    the overt acts as MV.  The police reports on that
22    incident indicate that a person was over at Mr.
23    Herrera's house, used drugs inside of the house.  Mr.
24    Herrera thought it was disrespectful, and
25    disrespecting his mother in her house.  As a result
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of him getting angry at that person, he ended up

2    shooting that person in the chest and killing that

3    person.  In 2001, in the Bernalillo County Detention

4    Center, he assaulted several correctional officers.

5             In 2005, in the Corrections Department, he

6    battered a staff member.  In 2005, on another

7    occasion, he assaulted a staff member.  And on

8    another occasion, in 2005, he assaulted a staff

9    member.

10            In 2006, he possessed shanks and assaulted

11   a staff member.  On that occasion he -- the officer

12   opened up a food port.  Mr. Herrera reached through

13   the food port and slashed the corrections officer's

14   leg.

15            In 2007, in the Corrections Department he

16   disobeyed a lawful order.  In 2007, he's alleged to

17   have threatened to burn down his ex-girlfriend's

18   house over the telephone.

19            In 2010, he threatened a staff member.

20            In 2011, he attempted to introduce

21   narcotics into a prison facility by soliciting and

22   utilizing a staff member.  And his mother was

23   involved in that incident.

24            In 2017, he threatened to blow up a federal

25   building.  I think that was a result of law

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    enforcement hitting his mother's house with a search

2    warrant.  He was very unhappy about that.

3            Mr. Perez' history goes back to a 1987

4    assault.

5            He was later convicted of burglary, and was

6    found to be a habitual offender.  There is assault on

7    a family member in 1993.

8            In 1996, he assaulted inmates TF and DM.

9            In 2003, while in the custody of

10   Corrections Department, he possessed a stinger, which

11   is a homemade weapon.

12           In 2005, he was arrested for committing

13   assault and resisting, as well as aggravated battery

14   in 2006.  That's a similar incident.

15           In 2010, he attempted to incite other

16   inmates to become disruptive by throwing food and

17   trash on the floor.

18           In 2011, he committed aggravated battery

19   with a deadly weapon.

20           And battery in 2012.

21           In 2014, while in custody, verbally

22   threatened a correctional officer, which I think is

23   another reason why he was locked down.

24           The reports on Mario Rodriguez, who was one

25   of the people who brought a shank to court -- and

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   that was corroborated -- he's one of the people who

2   told law enforcement that Carlos Herrera had a green

3   light.

4           THE COURT:  It was corroborated because the

5   next day he had the shank on him; correct?

6           MR. CASTELLANO:  He produced the shanks,

7   Your Honor.  So there was no doubt he brought shanks

8   with him to court.

9           And he also tells us that Mr. Sanchez asked

10  Mr. Rodriguez for one of his shanks.  But I think

11  that's about the time he was thinking about coming

12  over, and did not give that shank to Mr. Sanchez.

13  He's also the one who told us that Mr. Herrera had a

14  green light on him; that the other members were not

15  happy with him about certain things that he said on

16  the recordings, and thought he was being

17  disrespectful to some of the other members.

18          So Mr. Rodriguez isn't necessarily pointing

19  the finger at just the other people.  He was involved

20  with that.  And he agreed that Mr. Herrera had to go.

21  So it's not as if this is a situation where Mr.

22  Rodriguez is merely pointing the finger at others.

23  He's actually implicating himself.

24          The other issue, according to Mr.

25  Rodriguez' report, is that there was talk about Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Herrera being good again in the feds if he committed
2    a serious act of violence, or something else that
3    would make him good.
4            And one thing we know about the history of
5    the SNM is that Michael Astorga was not good with the
6    SNM.  He killed a law enforcement officer.  And there
7    is a dispute to this day.  Some people think that
8    made him good and some people didn't.  So someone who
9    may be in harm's way with the SNM could commit a
10   serious act of violence, and at least in some
11   member's eyes that can make them good again.
12           So I think there is plenty here, Your
13   Honor.  The Court has to make the individualized
14   decision, and the totality of the circumstances.  And
15   the Court has to make the decision in a way that
16   minimizes any prejudice to the defendants.  And I
17   think shackling, with their hands free, will do the
18   job, especially when there are things in place to
19   keep the shackles from making noise.
20           THE COURT:  But of the four remaining men
21   going to trial on Monday, am I understanding none of
22   them have an escape conviction or an escape charge?
23           MR. CASTELLANO:  I did not see that in
24   these ones.  I was reading over them pretty quickly,
25   Your Honor, looking at them real quickly again.  But

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   I did not see that.  I know that in some of the
 2   others there are allegations of attempted escapes.
 3           THE COURT:  All right.  Did you have a
 4   question of Mr. Mickendrow?
 5           MR. CASTELLANO:  I did, Your Honor.  One
 6   involved a shakedown of some of the cells of some of
 7   our defendants.  And various things were found in the
 8   cells, including what are known as things to go
 9   fishing.  It's a line with something else that they
10   can throw under the door and exchange messages.  But
11   there were also small pieces of metal in there.
12           And the reason that's important is that Mr.
13   Rodriguez in the 302 -- actually one of the
14   attachments to one of the filings in this case --
15   indicated that sometimes the inmates will take apart
16   batteries, and things of that nature.  And there is a
17   small piece of metal in there that's like the shape
18   and size of a nail.  And those things can be
19   flattened out and sometimes be used to pick the
20   handcuffs.  And that was actually corroborated
21   separately by a shakedown at the cells.  And that's
22   the question I have for Deputy Mickendrow, is whether
23   or not they found something similar to what was
24   described by Mr. Rodriguez.
25           DEPUTY MICKENDROW:  The answer would be yes
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to that question.
 2           And if the Court would permit, I also want
 3   to bring up a few facts that I had forgot to mention
 4   earlier.  The first would be that, when Mario
 5   Rodriguez initially came to court that day, he was
 6   not a cooperating witness.  And so from the
 7   perspective of the Marshal Service, just because he
 8   decided to reveal he had shanks on him because he was
 9   cooperating, that's an irrelevant fact for us.  The
10   fact is he came to court with no idea whether he was
11   going to cooperate or not.  He came to court assuming
12   that he was going to continue in his case.  So that's
13   a very important distinction for us.
14           Also, after that, when we did do a
15   shakedown of the cells because of the production of
16   those shanks, each of the defendants -- and I would
17   have to check -- with exception to Mr. Perez, I
18   believe, was found to have items within their cell,
19   and deadly items.  There was -- I believe three of
20   the defendants, Mr. Herrera, Mr. Sanchez, and Mr.
21   Baca, were all found to have razor blade shavers in
22   their cells.  And this is something that could be
23   used as a deadly weapon.
24           And, in addition, yes, we found items that
25   could be used to circumvent our security measures.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            In addition, I also wanted to cover a few
 2     of the -- go back and cover a few more incidences
 3     regarding Mr. Perez that Mr. Villa had asked about.
 4     I was just made aware of two additional incidences,
 5     which also jogged my memory about a third.  And
 6     although these are not in-court incidences, these are
 7     related to court.
 8            In the one incidence, Mr. Perez was told to
 9     head downstairs by a CO and a deputy.  And he told
10     them, pretty much, he didn't want to because he
11     wanted to go down with the Otero group.  And he was
12     told he would go down individually by himself, at
13     which point he started using profanity against the
14     deputy and the CO that was giving him instructions.
15            Another incident -- and this is while he
16     was at the jail -- he went in for a medical
17     procedure, and he convinced the CO that was
18     overseeing him during that medical procedure to
19     remove his leg irons.  Ultimately, that CO was
20     dismissed, because that's a direct violation of what
21     is supposed to happen during medical procedures.  If
22     there is no reason for the removal of leg irons,
23     they're not supposed to get removed.
24            And then finally, there has been several
25     incidences, since the Marshal Service worked very
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  diligently to get Mr. Perez transferred to Dona Ana

2  County Detention Center, that I've had to speak with

3  Mr. Perez regarding, not assaulting, verbally

4  assaulting, the Dona Ana County Detention Center

5  staff, because of what he perceives he should be

6  provided while he's there.  I have reminded him that,

7  if he has issues, he should go through us.  And that

8  he should also be respectful of the staff.

9          So with all of those additional factors at

10 play, it just again corroborates.  My stance would

11 be, as a law enforcement officer, we don't need to

12 wait for somebody to hit us to realize that something

13 is going to happen.  When we see it coming at us, we

14 can make an educated decision as to what to do.

15         And in this case, we're urging the Court,

16 based on all of the factors that we've laid out here,

17 that it would be prudent to have the defendants in

18 this case restrained with at least leg irons.

19         THE COURT:  All right.  Do you have any

20 other questions of Deputy Mickendrow?

21         MR. CASTELLANO:  No, I don't.  But I have

22 an additional disclosure that I learned this week

23 will go out in additional Giglio disclosures.  What I

24 can tell the Court is from an interview with Billy

25 Cordova a few days ago, he also admitted that he came

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    to court with a shank because he was concerned for
2    his safety.  So he brought it out of self-defense.
3    He came to court and sat on the witness stand with a
4    shank in his rectum.  So he's the third person in
5    this case, and the fourth person overall that we know
6    from the larger investigation, who has actually
7    brought a shank to court.
8              THE COURT:  All right.  There has been some
9    additional information from the Government and from
10   Deputy Mickendrow.  Anyone have any questions of
11   Deputy Mickendrow before he sits down?
12             Mr. Lahann.
13             MR. LAHANN:  Your Honor, my client has an
14   urgent need to use the restroom.  He's been waiting
15   about 10 minutes since he asked the marshals.
16             THE COURT:  All right.  Why don't one of
17   the deputies go ahead and take him there.
18             All right.  Any other questions of Deputy
19   Mickendrow?  All right.  Thank you, Deputy.  I
20   appreciate it.
21             All right.  Why don't -- let's see, Ms.
22   Bhalla, Mr. Maynard, I think you were up, you wanted
23   to speak on this issue.
24             MR. MAYNARD:  Just briefly, Your Honor.
25             THE COURT:  Mr. Maynard.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. MAYNARD:  You know, the Court has heard
 2    about information coming from cooperating witnesses.
 3    There has been -- in getting to the point of
 4    individualized considerations, I don't think there is
 5    any credible indication that Mr. Herrera, at least,
 6    poses any threat of any disruption in the courtroom.
 7    I haven't heard anything this morning about that.  I
 8    think the only basis would be pure speculation based
 9    on whatever criminal record there is.  And the
10    Marshal Service is basing it on the accusation about
11    what happened in March of 2014.  And there is really
12    not much or anything since then.
13            No shank has been found on Mr. Herrera.  No
14    one has pointed fingers at Mr. Herrera.  And, in
15    fact, if there were a green light, and -- that's
16    speculation, there is no real evidence, credible of
17    that -- there is nothing to indicate anything would
18    happen in the courtroom.
19            Your Honor, we're simply asking, and Mr.
20    Herrera is asking that the shackles -- they can
21    certainly be applied in the bus during
22    transportation, in the cell blocks outside the
23    courtroom.  We're just asking that they be removed
24    for proceedings in the courtroom.  And in spite of
25    everything that we've heard this morning, or
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                            e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    including everything that we've heard this morning,
 2    there is no indication that something is going to
 3    happen in the courtroom itself, nothing indicating
 4    that Mr. Herrera is going to do anything in the
 5    courtroom himself.  And so we would ask at least that
 6    Mr. Herrera not have to wear any shackles.  Because
 7    what's happening is they're being treated as a group.
 8              THE COURT:  All right.  Thank you, Mr.
 9    Maynard.
10              Anyone else want to speak on this motion?
11              All right.  Mr. Castellano, do you have
12    anything further from the Government's standpoint?
13              MR. CASTELLANO:  I was just reminded
14    that -- it's actually on one of the recordings that
15    Mr. Herrera threatened to blow up the FBI building.
16    So you can't say it's uncorroborated.  It is on one
17    of the recordings.
18              I think there is plenty -- I think the
19    Court is ready to make a decision on this.  We've
20    given the Court plenty of information about each of
21    these defendants.  And their histories are something
22    the Court can take into account, histories of
23    violence.
24              THE COURT:  All right.  Thank you, Mr.
25    Castellano.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Mr. Villa, it's your motion.  Do you want
 2    to -- anything further you want to say on it?
 3              MR. VILLA:  Judge, a brief housekeeping
 4    matter before I forget.  Ms. Harbour-Valdez, I
 5    believe, filed an unopposed motion to seal the 1678
 6    document, which is the email.
 7              THE COURT:  I've signed that this morning.
 8              MR. VILLA:  Thank you, Your Honor.
 9              Just by way of argument, I think I sort of
10    echo what Mr. Maynard said.  You haven't heard any
11    information that Mr. Perez presents a threat inside
12    the courtroom.
13              Now, let's talk about the incident that Mr.
14    Mickendrow told you about, in which something
15    happened with Mr. Garcia; he was taken out, and some
16    of the defendants stood up and objected, voiced their
17    problems.  But, as you heard from Mr. Mickendrow, he
18    gave Mr. Perez orders, or perhaps somebody under his
19    charge gave Mr. Perez orders, and Mr. Perez sat down.
20    He didn't have to be removed from the courtroom.  And
21    this didn't happen during court proceedings.  It
22    happened -- I think Mr. Mickendrow said during a
23    break, or something like that.
24              I think that's the information that you
25    have to -- that's what you have to look at.  There
```

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                        1-800-669-9492
                                              e-mail: info@litsupport.com



```
 1  are certain places where folks go and they behave
 2  differently.  So the way Mr. Perez or any of these
 3  defendants may have behaved in prison or in jail or
 4  with a CO during a medical visit is not necessarily
 5  the way you can judge whether they present an
 6  individualized risk here in court.
 7           And the fact that, you know, a
 8  cooperating -- a now cooperating witness, whether he
 9  intended to cooperate at the time -- brought a shank,
10  doesn't tell you anything about what Mr. Perez may or
11  may not do.
12           Certainly, I would, if I were
13  Mr. Rodriguez' lawyer, and asking you not to shackle
14  Mr. Rodriguez I'd be in a much different position,
15  because he brought shanks to court.  But there wasn't
16  any information that that was part of some
17  conspiracy; that Mr. Perez provided those, allegedly,
18  the pieces to make the shanks that Mr. Rodriguez
19  brought, or anything else.
20           And I think that it's clear that we're not
21  dealing with any risk of flight, escape, attempt to
22  get out of the courtroom.
23           So, really, all we're dealing with is
24  courtroom-specific violence.  And I don't think the
25  test can be:  You've got a criminal history that has
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    some violence and you're accused of a violent crime.
 2    I don't think that the United States Supreme Court,
 3    when it wrote Deck, thought it would be sufficient,
 4    when it spoke to individualized risk of courtroom
 5    attack, of courtroom escape, courtroom violence.
 6              I agree with Mr. Maynard, the United States
 7    Marshals can use any manner of shackling and
 8    handcuffing outside of this courtroom that they deem
 9    appropriate, and we really probably don't have any
10    say in that at all.  But while we're in the
11    courtroom, in front of the jury, that's what we're
12    talking about.  So that's the judgment that I'd ask
13    you to make is whether there is a specific risk in
14    that setting.  And I don't think there has been
15    enough information presented to suggest there is.
16              THE COURT:  All right.  Thank you, Mr.
17    Villa.
18              Any other defendants?
19              Well, I am concerned that -- the fact we're
20    in a courtroom doesn't give me complete confidence.
21    In fact, looking at the evidence on the Marcantel
22    conspiracy, it seems to me the SNM group does look to
23    make spectacular statements, and do them for fame and
24    notoriety, and nothing, I think, could probably be
25    more so than to do something here in a federal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   courtroom.  And the evidence, I think, by a
 2   preponderance of the evidence, establishes that each
 3   of the four men that are going on trial are part of
 4   this gang, and that this gang is known for doing some
 5   things that they do for notoriety.  I think each them
 6   have a history of violence.
 7            The proceedings have gone smooth, and the
 8   men have been respectful to the Court throughout the
 9   proceedings.  But I am worried still that, in the
10   heat of trial -- I'm worried about cooperating
11   witnesses; I'm worried about each other, sitting next
12   to each other in the trial.  I am concerned about
13   each one of them's safety.
14            And so I think that the Government and the
15   Marshal Service have shown that each one of them
16   should be shackled for the trial.  I think that the
17   jury will not be aware of it.  I think we've gone at
18   great lengths to position the tables and the bunting,
19   put duct tape on, to prevent the jury from seeing or
20   knowing about it.  And we'll have it on the
21   Government's table as well, so there will not be any
22   suspicion about the bunting itself.
23            I'll continue to think about this issue.
24   But at the present time, I'm inclined to think we
25   ought to keep the shackles on for the trial.  So I'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     deny the motion.  But I will deny the motion and

2     continue to give it some thought.

3           All right.  The next issue we are going to

4     take up is the defendants' motion to strike

5     surplusage from the second superseding indictment,

6     Document 1657.  I guess I was thinking that it might

7     not be necessary to strike the material that's being

8     sought.  But I wonder if it's necessary that all that

9     be put into the final set of jury instructions.  We

10    may be getting way ahead of ourselves by talking

11    about final instructions.  Although I know that

12    people want to talk a little bit about those at the

13    end of the day.

14          But I was thinking that all that really

15    might be necessary to put in the jury instructions

16    for the trial would be the counts that remain for

17    trial.  What would be the Government's thoughts about

18    that?  Not strike it from the indictment, but as far

19    as when we get to the jury instructions, we just put

20    the counts that are being tried in the jury

21    instruction?

22          MS. ARMIJO:  Your Honor, that's fine.  I

23    believe that's what you did in another case, a trial

24    that we had, with a lot of surplus language.  And

25    most of that will come out through evidence anyway.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   So we don't want it stricken from the indictment.

2   But certainly, I know that the Court has previously

3   done that in other cases.  And we can deal with that

4   issue as it comes time for jury instructions.  But we

5   were under the belief that the Court was going to

6   curtail it to the counts anyway on the jury

7   instructions.

8            THE COURT:  Okay.  Thank you, Ms. Armijo.

9            I know this was Mr. Adams' and Ms.

10  Sirignano's motion for the most part.  But I think

11  everybody else joined in it.  Does anybody not think

12  that's a good way to deal with it?

13           Mr. Maynard?

14           MR. MAYNARD:  Your Honor, I'll use this

15  microphone.

16           The most important part is, with respect to

17  jury instructions, we believe all those paragraphs

18  relating to evidentiary allegations, which are not

19  really elements, so to speak, they don't need to go

20  to the jury.  I don't think -- I mean, the

21  indictments are written by prosecutors.  They're

22  drafted by prosecutors who counsel the Grand Jury and

23  so forth.  And I think it's just too much

24  editorializing.  And one way to deal with it, at a

25  minimum, is just to take those paragraphs that are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    mentioned in the motion to strike out of any jury
 2    instructions.
 3            THE COURT:  I think that's what I'm
 4    inclined to do, and I think that's what Ms. Armijo is
 5    agreeing to.  So when you see my first draft, you'll
 6    probably see the counts, but not the prefatory
 7    language before the counts.
 8            MR. MAYNARD:  That's all.
 9            THE COURT:  Anyone else?
10            All right.  So I'm inclined to deny the
11    motion to strike, but I'll grant the motion to keep
12    it out of the jury instructions, and then we'll begin
13    to work on that.
14            All right.  Let's go to the joint motion to
15    renew motion to sever defendants charged with
16    offenses in Counts 6 and 7.
17            I'm not sure, do we have the updated chart,
18    Mr. Hammond?  Still working on it?  So you have to
19    work with what I've got there, and that is not
20    complete.  And when we get this other, it's going to
21    be much longer.
22            I don't have any second thoughts this
23    morning about the law, as I have interpreted it so
24    far.  And I've been working hard on the opinion from
25    which this chart is taken; not quite done with it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Partly because I keep getting filings.  And so it's
 2    hard to get on top of it, because I keep getting
 3    filings.  And I learn things from the filings.  Y'all
 4    are much more familiar with the evidence than I am.
 5         The Government's response, Mr. Braun's
 6    response -- is Richard Williams back over at your
 7    office?
 8         MR. CASTELLANO:  Yes, Your Honor.
 9         THE COURT:  He came back from the district
10    attorney's office?
11         MR. CASTELLANO:  No, he never left.
12         THE COURT:  Oh, okay.  I guess I'm
13    confusing him.  Who went over to the -- retired and
14    went over to the --
15         MR. CASTELLANO:  Mark D'Antonio did when he
16    retired from our office.  David Williams?
17         THE COURT:  David Williams, okay.  All
18    right.  I'm sorry, it's David Williams.
19         I didn't think it was a resounding response
20    from the Government.  And my concern is, one of the
21    reasons I wanted Mr. Braun to see the chart, and for
22    y'all to see the chart, is that I'm having to prepare
23    a chart for the trial, to turn to the jury and tell
24    them how to deal with this evidence, the number of
25    limiting instructions.  And so if I'm having to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    prepare a chart -- and that's just with the evidence

2    I know -- I'm beginning to have some concerns -- not

3    beginning to; I've had concerns since, really, Billy

4    Cordova got on the stand on December 19.  And the

5    next day, you remember, I really began to question

6    how we were going to do this.

7           Every time I see the motion, though, to

8    sever 6 and 7, it never seems to work.  It doesn't

9    seem to address the big problems.  It seems to me to

10   not deal with the big problems.  The two big problems

11   I think we have are going to be when Cordova and

12   Duran take the stand, and then all the tape

13   recordings.  That's when the limiting instructions

14   are at their highest, and when the evidence that

15   we're asking the jury not to consider most implicates

16   the other defendants.

17          For example, the reason I don't think that

18   the defendants have persuaded me that we should

19   separate out the Marcantel and the Baca counts is

20   because most of that evidence is -- it's not -- it

21   doesn't terribly implicate the other individuals.

22          And so, when I think about the case, the

23   case has a story, Counts 6 through 12:  You have the

24   Molina hit, and then you go down, security goes down,

25   and then it comes up with another murder; goes down;

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    comes up with another murder.  It tells a story.
2              But we have these two areas of evidence
3    that are going to come that we're going to have to
4    tell the jury to disregard.  And I'm concerned that
5    we're going to have a volume of limiting
6    instructions.  And also they come with evidence that
7    is incriminating of other people besides Mr. Perez
8    with Cordova, and with Mr. Herrera as far as Duran.
9    Those seem to me to be the most critical spots.
10   Severing 6 and 7 from the other counts doesn't seem
11   to solve that problem.
12             When you think about it, it seems to me
13   that it would be better to sever defendants than to
14   sever counts.  Mr. Baca and Mr. Sanchez can be tried
15   fairly well together, and Mr. Herrera and Mr. Perez
16   tried together.  Their evidence doesn't really
17   implicate each other.
18             So I haven't thought the Government has
19   really come to grips with the number of limiting
20   instructions that are going to be given, and whether
21   that would really withstand scrutiny, and would be
22   something that would, if there were convictions,
23   would be seen as good judging and good trial work by
24   us all when it got to the Tenth.
25             On the other hand, the defendants, I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  think, have really put forth a real proposal that

2  shows -- we're going to be sitting here in this room

3  listening to a lot of evidence on enterprise if we

4  sever 6 and 7.  And I don't think we get a lot by --

5  the Marcantel stuff out.  I understand why the

6  defendants want it, it's because it's the more

7  sensational evidence in the trial, but it's not

8  particularly incriminating, as you look for under

9  Bruton and the others.

10         But I do think that they have made a point

11  about the ability of the jury to really grapple with

12  the number of very proper and required limiting

13  instructions.

14         So this is what I'm thinking of doing on

15  Monday, is I'm thinking about impaneling two juries.

16  I think, if we had two juries; one for -- one I'll

17  call the Baca-Sanchez jury, and one the Herrera-Perez

18  jury, I think we could excuse them at the appropriate

19  times so that they don't hear the evidence.  There

20  will be some evidence with Mr. Baca, where I'll have

21  to give a limiting instruction, but you're entitled

22  to limiting instructions.  But the evidence is not

23  incriminating Mr. Sanchez.  And then, if a separate

24  jury hears the Perez and the Herrera evidence, that's

25  not particularly incriminating of both.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           As far as opening statements, the

2    Government would have to just avoid getting into that

3    evidence that we're keeping out of both juries, or we

4    might just have to have two openings.  But it seems

5    to me that, given the amount of limiting

6    instructions, I don't have a better solution.

7           As far as the new motion that was filed two

8    or three days ago about Mr. Herrera, you know, that's

9    new evidence.  I haven't seen that.  So I can't

10   really make the sort of detailed findings I can about

11   Mr. Cordova and his testimony about what Mr. Perez

12   said.  But it may be that it's -- you know, it's just

13   hard for me to make much comment on that without

14   having seen the evidence.

15          But, in any case, I'm not inclined to sever

16   out 6 and 7; that doesn't seem to me -- it never has

17   seemed to me to be quite the solution.  But I do

18   think that the defendants have pointed to enough

19   problems that maybe the way to do it is to pick two

20   juries, and have, at critical points, the juries

21   excused so that the number of limiting instructions

22   is greatly reduced.  Or when they are given, they're

23   given because they're allowed.  But the evidence that

24   we're asking the jury to ignore is not probative of

25   the other defendant in that case.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              I know you've been standing, Mr.
 2    Castellano.  But why don't I let -- I think this was
 3    Mr. Villa's motion this time.  So let me let him
 4    start the motion.  Mr. Villa?
 5              MR. VILLA:  Thank you, Judge.
 6              I respect what the Court is saying with
 7    respect to the issue of severing 6 and 7.  I don't
 8    want to let that one go, so I'll just say briefly for
 9    the record -- it's been said a lot already, I think,
10    but I think it does solve one problem, and that's
11    some of the things we've been talking about with
12    respect to the need for shackles, and sort of lumping
13    everybody together, is that there is this -- evidence
14    is going to be put on, of course, by the Government
15    that Counts 6 and 7 is an SNM ordered hit.  The
16    Marcantel-Santistevan piece was an SNM ordered hit,
17    and all of it was in furtherance of the SNM and their
18    racketeering.
19              So the 6 and 7 defendants' concern is that
20    the jury hearing this, and hearing the sensationalism
21    of it, and the recordings discussing it, by the same
22    person allegedly, Anthony Ray Baca, who orders the
23    Molina hit, that you have this spillover effect, and
24    that the jury lumps it all together.  Because I think
25    it's always been the contention of the 6 and 7
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    defendants, and certainly Mr. Perez, that the
2    Government's case is much stronger on the
3    Santistevan-Marcantel side than it is on the Counts 6
4    and 7 cases.  And pairing two -- these two cases
5    together because of the spillover effect, because
6    they're all allegedly SNM related activities, and the
7    defendants are all allegedly SNM members, presents
8    that issue of prejudice.
9              Now, I just want to understand -- I get
10   what the Court is proposing with respect to -- or why
11   the Court is proposing it with respect to Mr. Perez,
12   Herrera, and Baca-Sanchez.  I guess I just want to
13   explore exactly what the Court is contemplating.  Are
14   you talking about -- one potential avenue when you
15   have two juries, is Jury No. 1 comes in and they just
16   hear the evidence as to Baca-Sanchez, or however we
17   do it, and then Jury No. 2 comes and hears the
18   evidence that's Perez-Herrera?  Or are they both here
19   at the same time given instruction?
20             THE COURT:  No, I would think that we'd
21   want -- I mean, they'd be here for evidence that we
22   know is going to be duplicated in a severed trial.
23             MR. VILLA:  Yeah.
24             THE COURT:  But the evidence that we're
25   concerned about with limiting instructions, if we can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    take the jury out for those, I would see that we

2    would excuse them for that testimony.

3              MR. VILLA:  I see.  And then maybe --

4              THE COURT:  So they'd be here together

5    probably a lot of the time, and then they would be

6    excused -- for example, Baca-Sanchez would be excused

7    while we're hearing Cordova talk about his recordings

8    of Perez.  And then I don't think that the

9    Duran-Cordova stuff hurts the two of you very much,

10   but it's Baca that really gets hit by the Cordova

11   stuff.  And then there is going to be stuff that the

12   jury should not hear.  I'd be giving a limiting

13   instruction of things that Baca said.

14             MR. VILLA:  Well, I'd say Cordova certainly

15   hurts us, Your Honor.  But I understand what you're

16   saying.

17             THE COURT:  Yeah, I understand.

18             MR. VILLA:  And I think, if that's the

19   solution -- and I'm just processing this now -- it

20   seems to me -- and I'm interested to hear what my

21   colleagues say -- that we might want to consider

22   separate opening statements, separate closing

23   arguments, because of how we may characterize some of

24   the evidence that comes into play.

25             THE COURT:  Well, I would think that -- at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
1    the closings, I would definitely think that you would
2    need to have separate closings.
3              MR. VILLA:  All right.
4              THE COURT:  Now, I think on openings, it
5    would kind of depend on how detailed the Government
6    wanted to get.  I mean, if it wanted to talk about
7    Billy Cordova is going to say these statements in its
8    opening statement about Mr. Perez, and I'm going to
9    have limiting instructions that that can't be used
10   against anybody else, I'm not sure that that -- that
11   we should have joint opening statements.  I think
12   there, we'd probably have to have separate opening
13   statements.
14             MR. VILLA:  That's my concern, too, Your
15   Honor.  Because I think what we present in our
16   opening statement, if we choose to put on an opening
17   statement in the beginning, would, I think, change
18   drastically depending upon what the Court intended.
19             THE COURT:  So I think it's probably the
20   Government's call as to how general they're going to
21   get, if they're going to get specific as to the
22   evidence that I'm going to say only can be used
23   against certain people; give a limiting instruction.
24   Then we may have to have separate opening statements.
25             MR. VILLA:  And that's all I have on -- the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    motion focused on --
 2            THE COURT:  You filed a motion to sever 6
 3    and 7.  After listening to me sort of comment that it
 4    doesn't seem to solve the evidentiary problems; it
 5    may -- if you're looking at the case as a defense
 6    lawyer, it addresses the -- shall I call it the 403
 7    problem?  But would you agree with me it doesn't
 8    really solve the evidentiary problems?  It may help
 9    you a little bit on the 403 issue.
10            MR. VILLA:  I would agree that it doesn't
11    solve the internal or intra-6 and 7 problems.  I
12    agree with that.  I think -- I'm not sure Mr. Perez
13    is the one that would be requesting a severance of a
14    defendant necessarily, given the problems.  You know,
15    for instance, the statements that Mr. Cordova may
16    testify to that Mr. Perez makes, I can't keep those
17    out.  You know, after the Court's suppression ruling,
18    I don't have an evidentiary issue.  But Mr. Sanchez
19    does.  And so it might be Mr. Sanchez that needs to
20    speak to that problem.  It's not really, I think, Mr.
21    Perez' burden here.
22            THE COURT:  Okay.  Thank you, Mr. Villa.
23            Anyone else want to speak from the
24    defendants' standpoint on the motion to sever?
25            Mr. Maynard?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        MR. MAYNARD:  Your Honor, I have never

2   tried a case like that, with two juries.  And it's

3   going to involve -- I doubt if many lawyers here

4   have.  I just don't know.  It's going to involve

5   recompartmentalizing our directs and our

6   cross-examinations, and all of that.  And the juries

7   are going to be coming in and out, in and out.  I'm

8   not sure how much -- it may -- ironically, it may

9   make the trial longer even -- and in fact it probably

10  will.

11       But I would urge the Court to consider --

12  in fact, if the two cases, the 6 and 7 are severed

13  from 8 to 12, those two trials put together, each of

14  them is going to be shorter, and they may be no

15  longer than a joint trial with two juries, if the

16  Court is concerned with saving time.

17       THE COURT:  Well, but that was what I was

18  talking with Mr. Villa.  It doesn't seem to me that

19  the problems that I am most concerned about, the

20  evidentiary problems, are solved by severing 6 and 7

21  from the other counts.  It just -- the trial has a

22  story.  And you've got a murder, and then it goes

23  down; you've got a murder, it goes down; the security

24  goes down.  I mean, it tells a story.  I think we're

25  going to hear it multiple times in the trial.  So it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    doesn't seem to me that 6 and 7 is the way to --
 2    every time I look at it, I never see how that saves
 3    us anything.
 4              MR. MAYNARD:  Well, I don't think it saves
 5    a lot.  I understand that.
 6              THE COURT:  I mean, it always seems to me
 7    the problem is not the counts.  It's the individual
 8    defendants that I have to protect their rights.  And
 9    it seems to me we focused on severing counts -- and I
10    remember with Sanchez' renewed motion.  I mean, in
11    the first motion and in the second motion -- except
12    for a little bit stuff about a year-and-a-half ago,
13    where we did identify some Bruton problems with a
14    small amount of the Government's evidence -- until
15    late December, we hadn't focused on the fact -- and
16    in both those opinions I could confidently say nobody
17    has identified any evidence that's not going to come
18    in against other defendants.
19              And then, when we got Mr. Cordova on the
20    stand, I think -- and y'all did a lot of discovery --
21    it looks a lot different, in the sense that I don't
22    think we can say that statement is true any longer.
23    There is evidence coming into this trial that cannot
24    be used against all defendants.  And I think when
25    December 19 rolled around, we began to see that.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    That's been the bigger problem than splitting it
 2    along count lines.
 3             Your thoughts on that?
 4             MR. MAYNARD:  Well, I understand.  And yet,
 5    I'm not sure that having two juries -- it's going to
 6    be kind of like -- I think it's going to make the
 7    trial longer.
 8             THE COURT:  I do, too.
 9             MR. MAYNARD:  And it's going to make it
10    more complicated.  And I think we're going to have to
11    be very careful not to make, in closing argument,
12    reference to evidence that was only admitted
13    against --
14             THE COURT:  Well, that's the reason I was
15    saying to Mr. Villa.  I just think we're going to
16    have to have separate closings.  So we'll bring one
17    jury in, the Sanchez-Baca jury; we'll have closings.
18    Then we'll turn around with the Perez-Herrera jury,
19    we'll bring them in.
20             MR. MAYNARD:  I'll use a white pad for when
21    one jury is in the room and a yellow pad when the
22    other one is in the room.
23             THE COURT:  Yeah.
24             MR. MAYNARD:  Or when the witness --
25    anyway --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  I don't disagree on either
 2    point.  I think you're right.
 3              MR. MAYNARD:  I would just -- you know, I
 4    think in the interests of fair trials and efficiency,
 5    I think having two trials, and just severing them
 6    completely would be no longer and no more expensive.
 7              THE COURT:  Well, you're saying -- I mean,
 8    the motion on the table is to separate 6 and 7.
 9              MR. MAYNARD:  Yes.
10              THE COURT:  And I guess I just have not
11    figured out how that solves any problems.  What is
12    your severance proposal?
13              MR. MAYNARD:  Just to separate 6 and 7.
14              THE COURT:  Still 6 and 7?
15              MR. MAYNARD:  Yes.
16              THE COURT:  See, I just think -- I'm going
17    to still, in a 6 and 7 trial, I'm still going to give
18    all these limiting instructions.  I don't think it
19    solves the problems.
20              All right.  I think Ms. Jacks was getting
21    up.  So let me let Ms. Jacks speak.
22              MS. JACKS:  I just have a couple of
23    comments.
24              What the severance of 6 and 7 does is
25    protects the Counts 6 and 7 defendants from all of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the evidence of Counts 8 through 12 that's completely

2    inadmissible against them.

3          THE COURT:  But it's not terribly -- it's

4    not incriminating.  That's the thing.  You just don't

5    want it -- it's a 403 problem, like I was telling Mr.

6    Villa.  You don't want those in the case.  But

7    they're not incriminating.

8          MS. JACKS:  Well, I think it's

9    incriminating as to the SNM, and to the extent the

10   jury believes they're associated with that gang, I

11   think it's incriminating.

12         As the Court's noted, it's inflammatory.

13   It's the conspiracy to murder public officials.  And

14   so I don't think it's just a 403.  I think it's a

15   Fifth Amendment due process issue.  And I go back to

16   Jackson versus Denno.  I think that the Counts 6 and

17   7 defendants have a right to be tried, and to have

18   their guilt or innocence of Counts 6 and 7 determined

19   by a jury that's not polluted with weeks of

20   inadmissible evidence about plots to kill public

21   officials.  And that is what the Counts 6 and 7

22   severance does.

23         And I guess -- I'll just point out to the

24   Court, I think in a joint -- if we were to have a

25   joint trial of Counts 6 through 12, the issues within

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   the Counts 6 and 7 trial regarding the statements of
 2   Mr. Perez to Billy Cordova, or the statements of Mr.
 3   Herrera to Gerald Archuleta, those problems could be
 4   solved by just keeping those statements out.
 5              THE COURT:  Well, they could.  But that's
 6   the Government's case.  I think that's heavy-handed
 7   for me to do that.
 8              What else, Ms. Jacks?
 9              MS. JACKS:  I've tried trials with two
10   juries.  And, logistically, I think it's difficult.
11   And I guess what I'm just thinking about in my head
12   is, where is everybody going to sit?  We barely have
13   a courtroom where the defendants have a place to sit,
14   where they can work.  So I'm wondering about that.
15              I'm wondering, I -- mean, I think there are
16   going to be issues going forward about when one jury
17   is going to be excused, and how that's going to
18   happen.  I mean, I think we can work through it.  But
19   it is a complicated situation.
20              And then I guess the other thing I'm
21   thinking about is do we have enough jurors coming on
22   Monday to select two juries?
23              THE COURT:  Well, if we fail on Monday,
24   then we fail on Monday.  I guess I'd rather try, see
25   if we can get two picked.  If we don't, then I might
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have to go to some other plan B.  I'd like to plan

 2    for success rather than plan for failure.

 3           I guess, as far as seating, I don't have

 4    anything better than back here where Mr. Walz is.  I

 5    was talking to Ms. Wild a little bit about this.

 6    Those benches are not as comfortable as the ones up

 7    here, as y'all have probably all noted.  And you

 8    know, we might rotate them a little bit when they're

 9    all in here together.  Ms. Wild didn't like that idea

10    much.  But there would be some seating arrangements

11    that we'd have to work out.

12           MS. JACKS:  The other thing that concerns

13    me as, Mr. Sanchez' counsel, is just the sort of

14    unspoken optics of the situation.  Because I do

15    think, if we have two juries going at the same time,

16    and one is the Sanchez-Baca jury; then I think it

17    basically tells the jury that Sanchez is a leader.

18    And it gives the jury, I think, some information

19    that's very difficult for them to disregard, and very

20    difficult for us, as Mr. Sanchez' lawyers, to address

21    without highlighting the problem.

22           And then I also think that --

23           THE COURT:  Doesn't Mr. Sanchez want to be

24    a leader?

25           MS. JACKS:  Your Honor, there are a lot of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    things that have been said in this Court that are
 2    just simply untrue.  But I'm trying to save some of
 3    that for the trial.
 4              THE COURT:  Sure.
 5              MS. JACKS:  And just because some
 6    cooperator, looking to get a deal on his murder case
 7    says something, doesn't mean that I believe it.
 8              THE COURT:  All right.  Well, I look
 9    forward to it.  I look forward to the trial.
10              I hear what you're saying.  You don't want
11    to be grouped with Mr. Baca.
12              MS. JACKS:  Well, and I guess the other
13    thing, to me, if I were representing Mr. Perez or Mr.
14    Herrera, I'd be fighting with the Court to say, Look,
15    openings and closings have to be completely separate.
16    If I was representing Mr. Perez or Mr. Herrera, I'd
17    say:  I don't want my jury to hear anything about the
18    Marcantel-Santistevan stuff.  There is no reason for
19    them to hear it.
20              And so, if that happens, then Mr. Sanchez
21    is really getting the short end of the stick, because
22    he's not charged with the Marcantel and Santistevan
23    conspiracies, but his jury is going to hear that.
24    And I just don't think that's fair.
25              THE COURT:  Well, I'm not thinking the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Marcantel stuff is going to stay out of either trial.
 2   I mean, that, to me, is the 403 stuff.  And I've not
 3   been convinced that's the biggest problem.
 4            MS. JACKS:  I hear you.
 5            THE COURT:  I think the real problem is
 6   Duran and all his testimony, and the tapes that are
 7   associated with that, and Mr. Cordova and all the
 8   tapes associated with him.  I think those are the
 9   ones that really are incriminating other people
10   besides Mr. Perez and Mr. Herrera.
11            MS. JACKS:  I hear you.  But the Marcantel
12   in the severed-two-jury situation, the evidence of
13   the Marcantel-Santistevan conspiracies is
14   inadmissible against Herrera and Perez.
15            THE COURT:  It is, but it's not terribly
16   probative of any incriminating activities.
17            MS. JACKS:  I would disagree.  But I'll
18   leave that for them to argue.  But I think it would
19   be unfair to Mr. Sanchez for his jury to hear that,
20   when he's not charged with it, especially if other
21   defendants, who are charged in the same counts as Mr.
22   Sanchez, are not going to have their jury polluted by
23   that information.
24            THE COURT:  All right.  I understand the
25   point.  I'll give it some thought.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Do you want to speak again, Mr. Maynard?
 2              MR. MAYNARD:  Just briefly, Judge, to
 3    suggest a plan B, I guess.  You know, thinking about
 4    this -- and I'm still trying to get all of the facts
 5    in this case, or at least enough of the facts in the
 6    case for my working memory.  I've only been here for
 7    about two months, not even.  But I think perhaps the
 8    most efficient break should be a break of defendants.
 9    So you could try 6 and 7, just Perez and Herrera, and
10    the other counts, the other defendants could be
11    severed.  It might be even more efficient.  And it
12    might be even less evidentiary problems.  So I would
13    suggest that to the Court as another option.
14              THE COURT:  Well, there is no doubt, you
15    know, you sever, sever, sever, it reduces problems.
16    But it also starts creating a lot of inefficiencies
17    in the case, as well to just hear the same evidence
18    over and over.
19              But I hear your point.  But it does sound
20    like you're now looking at severance from defendants'
21    standpoint, rather than counts standpoint.
22              MR. MAYNARD:  I think so.  I think that
23    resolves more of those issues.  And it's no more
24    inefficient -- I think having two juries is going to
25    invite potential error, because of some unintentional
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1    mistakes by counsel for either party.

 2          THE COURT:  Well, there is always potential

 3    error.  I guess I'm trying to avoid the error that's

 4    kind of setting with us right at the moment, of a lot

 5    of limiting instructions.  I think it does -- it

 6    could greatly reduce that.  It's not going to

 7    eliminate it, but it's going to greatly reduce it.

 8          All right.  Mr. Lowry.

 9          MR. LOWRY:  Your Honor, I don't want to

10    belabor the point.  But I, too, would echo the

11    sentiments of my colleagues, and look for either

12    separate trials.  And I still would adhere to the

13    division -- I know that this is not the Court's

14    preference -- between 6 and 7, and 8 and 10.

15          Your Honor, looking at the jury

16    instructions we proposed, I think Your Honor made the

17    comment that the Marcantel information is not

18    necessarily incriminating on Mr. Sanchez.  You know,

19    I agree with Ms. Jacks.  I would even take it a step

20    further.  I think, frankly, the jury is going to

21    easily interpret that as 404(b) propensity evidence,

22    in terms of the Marcantel-Santistevan allegations.

23    And the reason is, the Government's -- my

24    understanding is that the Government will use Counts

25    8 and 10 as enterprise evidence.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          And if you look at the jury instructions

2     that were proposed, you can see how, through that

3     instruction, they're going to have to demonstrate the

4     pattern of racketeering activity.  And my guess is

5     that they're going to want to pick that particular

6     allegation to use that in their pattern of

7     racketeering activity, because it is sensational,

8     because it is attention grabbing, and because it is,

9     frankly, inflammatory.

10          And I think that that is absolutely the

11    reason the Court should look at the severance along

12    those lines, if not anything else under the 403

13    analysis that you just mentioned.

14          THE COURT:  Let do this:  I don't want to

15    rush your comments, but I do need to let Ms. Bean

16    rest her fingers.  Why don't we go ahead and have our

17    recess for about 15 minutes, then we'll come back in.

18          (The Court stood in recess.)

19          THE COURT:  All right.  Mr. Lowry, I think

20    you were --

21          MR. LOWRY:  Your Honor, I think where we

22    left off is the type of severance proposed by the

23    Court really doesn't resolve the 403 problem, because

24    the Marcantel-Santistevan material will still be

25    inadmissible as to Defendant Sanchez, and we're still

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    going to have a parade of limiting instructions.
 2          THE COURT:  It's a limiting instruction,
 3    but it's not terribly probative against them.  That's
 4    the problem.  I'll give the limiting instruction
 5    because it will be requested, and he's entitled to
 6    it.  But it's not incriminating of him.
 7          MR. LOWRY:  But this dovetails back into
 8    the issue that I wanted to raise -- and Ms. Jacks
 9    wisely pointed out to the Court -- the optics of this
10    are going to be terrible.  You're going to have Mr.
11    Sanchez and Mr. Baca separated from Mr. Perez and Mr.
12    Herrera.  They get their own jury.  And their jury is
13    going to be left with the tacit impression that, Oh,
14    my God, here are these alleged leaders of the SNM,
15    and even the Court is treating them drastically
16    different than the rank and file alleged members of
17    the SNM, and we have to be on guard to the heightened
18    sensitivity to that.  And there is no limiting
19    instruction.  There is no way to divorce the optics
20    from the 403 issue.  And, in fact, the optics
21    reinforces the 403 problem, and reinforces the
22    magnitude of the problem, that they're going to
23    consider the inadmissible evidence as to Mr. Sanchez
24    that the Court has instructed them not consider.  And
25    this is why Ms. Jacks cited the case law, that you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    once throw the skunk into the jury box, you just
 2    can't pull it back out.
 3            THE COURT:  That's the reason I'm trying to
 4    prevent the skunk from going into the jury box.
 5            MR. LOWRY:  And I applaud the Court's
 6    efforts, Your Honor.  I don't want the Court to think
 7    otherwise.  But I think the safest and most
 8    reasonable means to avoid appellate error would be to
 9    have two separate trials.
10            THE COURT:  Of what?  I mean, the proposal
11    from Mr. Villa on the table is 6 and 7.  And I've
12    just stared at that, and it just never seems to solve
13    the problems I'm most concerned about.
14            MR. LOWRY:  You know, this is -- well, in
15    my mind --
16            THE COURT:  So what's your severance
17    proposal?
18            MR. LOWRY:  I think you could still sever 6
19    and 7.  And to the extent the Government wants to use
20    the Marcantel-Santistevan allegations as evidence of
21    the enterprise, I think maybe the parties ought to
22    talk about Old Chief'ing that evidence somehow, to
23    sanitize it, so that you don't have this limiting
24    instruction issue, and we don't have the host of
25    problems that we've been talking about.  That would
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   be one thought, as I sit here this morning, Your
 2   Honor.  But I see the logistics of two jury panels
 3   handling two separate defendants is going to heighten
 4   the problems with, you know, Jeez, the Court has
 5   treated Mr. Sanchez and Mr. Baca differently.  And
 6   the implicit assumption is they're being treated
 7   differently because they've been determined to be the
 8   alleged leaders of the SNM.
 9         Your Honor, the Tenth Circuit has looked at
10   this issue -- I was just going to cite these cases
11   for the Court -- in United States versus McVeigh, the
12   Tim McVeigh case.  You know, Judge Matsch looked at
13   this and considered the possibility of separate
14   juries at a single trial.  And gave up on that as
15   impractical for a whole host of reasons.  And that is
16   at 169 Federal Rules Decision 362, at pin cite 371,
17   District of Colorado in 1996.  And, of course, that's
18   the trial where Mr. McVeigh was going to be tried
19   with Terry Nichols.  The Court declined to do that in
20   a single trial with separate juries.
21         Also, the Tenth Circuit has looked at this
22   in Wilson v. Simmons, at 536 F.3d 1064.  That's a
23   Tenth Circuit opinion from 2008.  And the Court has
24   considered that, and found it to be relatively
25   impractical.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Well, but it noted in Wilson --
 2    now, Wilson was a habeas case that was coming out of
 3    the state system.  But it did, I think, say that
 4    every court that had considered it had found it to be
 5    constitutional.  I mean, anything can be used in an
 6    unconstitutional way, but -- I am looking for the
 7    sentence that said what it said.  I don't see the
 8    quote I was looking at from that case.  But you've
 9    got a number of Tenth Circuit cases that approve it.
10    They certainly point out difficulties with it, but
11    they --
12              MR. LOWRY:  I don't know, Your Honor.  But
13    I think you --
14              THE COURT:  Here it is, "Indeed every
15    federal appellate court that has considered a dual
16    jury system has upheld the procedure."
17              MR. LOWRY:  And I'm not saying that it's
18    unconstitutional, Your Honor.  What I am saying is
19    there is going to be an ongoing, daily, from witness
20    to witness argument between the parties of how we
21    impanel a specific jury for that specific witness.
22    Like Mr. Duran, for instance.  I'm sure he'll have
23    one chapter of common evidence that's relevant to
24    both juries.  And then we're going to have to decide
25    between the parties which jury gets the break, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    which jury hears which evidence first.  And I just
 2    think it's going to invite a host of tactical issues
 3    that the parties are going to have to litigate on a
 4    daily basis.
 5              This is going to continue the length of the
 6    trial.  And I know the Court has been sensitive about
 7    the length of this trial already.  And I think we've
 8    run well past the eight-week period, which is going
 9    to be an issue now not for one jury, not for 18
10    jurors, but perhaps 36.
11              And I think it's going to heighten the
12    level of tension in the courtroom between the parties
13    and the Court, of how we handle the trial.  And
14    everybody wants to have this done in a fair and level
15    headed manner that doesn't prejudice the rights of
16    anybody else in the courtroom.  And I just foresee
17    ongoing daily problems with just the mechanics of
18    making this work in a way that everybody can agree
19    with.
20              THE COURT:  All right.  Thank you, Mr.
21    Lowry.
22              Anyone else from the defense side want to
23    speak?
24              Ms. Jacks?
25              MS. JACKS:  I actually do have a couple of
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1     comments.  One is the Court said that the evidence of

2     the Marcantel-Santistevan stuff is not terribly

3     probative as to Mr. Sanchez.

4                THE COURT:  I meant incriminating.

5                MS. JACKS:  Right.  Incriminating.  And I

6     would agree with you if this was just a murder case.

7     But this is a VICAR case.  And some of the elements

8     of the Violent Crime in Racketeering is that the SNM

9     was a racketeering organization that engaged in

10    racketeering activity.  So the evidence of the

11    Marcantel-Santistevan murder conspiracies goes

12    directly to elements of the crime.  So it is terribly

13    incriminating as to Mr. Sanchez.

14                And in a joint trial with Mr. Baca, what's

15    going to happen -- a joint trial of Sanchez and

16    Baca -- the Court is going to be telling the jury:

17    You can consider this evidence for all purposes as to

18    Mr. Baca, but you can't consider it for any purpose

19    as to Mr. Sanchez.

20                And that puts a juror in a really untenable

21    position of taking evidence of the racketeering

22    organization and the racketeering activity, and using

23    it against one defendant and completely just ignoring

24    its existence as to the other.  Jurors aren't

25    computers.  They're people.  And I think that's a

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                  e-mail: info@litsupport.com

```
 1    really hard thing to tell a jury not to consider.
 2              THE COURT:  Well, I certainly agree with
 3    the procedure.  I guess I'm thinking that's less of a
 4    problem than the problems we have.
 5              MS. JACKS:  We're kind of at a Sophie's
 6    Choice.  Neither choice that we have, at least
 7    neither choice that's being presented to Mr. Sanchez,
 8    is something that he would want.
 9              And then I just want to point out something
10    else.  And this is in discussions that I had in the
11    hall during the recess.  But I just want to give you
12    an example of an issue that's going to come up with
13    two juries.  And there may be a way to solve it.  But
14    there is a tension here.
15              And let's just consider for a minute the
16    anticipated testimony of Mario Rodriguez.  Mario
17    Rodriguez is a government cooperator, and I believe
18    that on his direct examination Mr. Rodriguez is going
19    to testify that he took Mr. Perez' -- a piece of Mr.
20    Perez' walker after Mr. Sanchez threatened Mr. Perez.
21    And the cross-examination of Mr. Rodriguez, from Mr.
22    Sanchez' perspective, is going to be one thing.  But
23    I think, from the perspective of Mr. Perez, it's
24    possible that his counsel is going to actually adopt
25    that, and claim that Mr. Rodriguez is actually
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    telling the truth about that.  So in terms of --

2    maybe the direct could be presented to both juries.

3    But the cross-examination is going to bring out, I

4    think, a tension or a conflicting -- potentially

5    conflicting defenses, where Mr. Sanchez is going to

6    take the position that Mario Rodriguez is an

7    unmitigated liar.  And Mr. Perez is going to take the

8    position that Mario Rodriguez is telling the truth,

9    and Sanchez threatened Perez.

10            And I think issues like that, at least in

11   my experience with two juries, issues like that come

12   up every day with every witness.

13            The other just couple of comments I have is

14   the trials that I've had with two juries have been in

15   large downtown Los Angeles court building, where

16   there is plenty of room to keep them apart, separate

17   jury rooms, separate bailiffs to take charge of them

18   and make sure they don't intermingle.  I'm not

19   sure -- even in spite of that -- I've been involved

20   in a case where one jury was hung -- this is on a

21   capital case, multiple murders -- one jury is hung 10

22   to 2 for not guilty -- this is during deliberations;

23   the other is hung 11 to 1 for guilty.  And hold-out

24   on that jury held out because she was friends with

25   jurors on the not guilty jury.  And the case ended up

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    being mistried.  I think in another instance a case
 2    ended up being mistried because of the inadvertent
 3    presentation of evidence to one jury that shouldn't
 4    have been presented.  So on a daily basis, it just
 5    increases the amount of unforeseen issues that can
 6    pop up.
 7              So, I mean -- I would just argue that if
 8    the Court is inclined to sever, I think that it would
 9    be better just to have one jury, one trial, and do
10    the second trial sequentially.
11              THE COURT:  Well, but what -- the proposal
12    that's on the table from the defendants is severing 6
13    and 7 -- is that still where you are? -- which
14    doesn't really solve a lot of the problems that
15    you're addressing.
16              MS. JACKS:  Where I am, if you're asking me
17    how I would want the trial to be:  I'd want 6 and 7
18    severed and Perez --
19              THE COURT:  I'm sorry, I didn't hear that.
20              MS. JACKS:  I would want Counts 6 and 7
21    severed.  And that would be for the due process issue
22    of the Santistevan-Marcantel evidence that's
23    inadmissible against the 6 and 7 defendants coming in
24    before their jury.  So to prevent that due process
25    violation, and to prevent -- well, due process and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    403.  So sever 6 and 7.  And any statements that
2    Perez or Herrera made to informants that are not
3    admissible against Mr. Sanchez don't come in at a
4    joint trial.
5              THE COURT:  You don't ask much, do you?
6    Thanks, Ms. Jacks.
7              All right.  Any other defendant wish to
8    speak on the severance issue?
9              All right.  Mr. Castellano.
10             MR. CASTELLANO:  For starters, I have to
11   disagree with the two-jury system.  I think, if we do
12   that, rather than having limiting instructions, we're
13   going to have curative instructions throughout the
14   trial.  I agree with some of the other comments by
15   defense counsel that these are all capable attorneys
16   in this room, but there are going to be mistakes made
17   about which evidence should go to which jury.  We're
18   going to be tripping over the evidence, and trying to
19   get it all straight.  That's going to be more
20   complicated than anything else.
21             So, in addition to any other instructions
22   we have, we're going to be constantly trying to fix
23   evidence that went before the jury that wasn't
24   supposed to go before the jury.
25             The problem also, from the Government's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   perspective, is there will be disagreements about
 2   what is racketeering evidence, for example.  So if
 3   the Court excuses one jury and says there are certain
 4   things that shouldn't go before that jury, but we
 5   disagree, what's happened is that jury is now not
 6   hearing evidence which they think should be heard,
 7   which is really a suppression of the evidence.  So,
 8   by having the jury leave the room and not hear
 9   evidence, which it should, the Court will be, in
10   essence, suppressing evidence during trial.  And, of
11   course, for us, that creates issues for appeals.
12             THE COURT:  Hold on just a second.
13   Somebody on the telephone doesn't have their mute
14   button on.  We're getting a lot of feedback from one
15   of the call-in people.
16             Mr. Castellano.
17             MR. CASTELLANO:  So if the evidence
18   continues not to come in, which we think is being
19   suppressed, because we think the right jury is
20   leaving the room to hear the evidence, then we have
21   to deal with issues of suppression and interlocutory
22   appeals during trial.
23             So when it gets to a point of disagreeing
24   with the Court, to the extent that evidence isn't
25   coming in before a certain jury, then we have our own
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    problems that evidence not coming in, which we think
 2    should come in.
 3            So I think two juries is going to overly
 4    complicate things.  I think the movement will
 5    complicate things.
 6            And I guess the other thing we really need
 7    to figure out is, if we have one jury, we really have
 8    to figure out which -- what evidence are we worried
 9    about?
10            THE COURT:  Well, could you live without
11    Cordova and Duran in this case, and those phone
12    calls?
13            MR. CASTELLANO:  No.  No, because the other
14    thing the Court has to understand --
15            THE COURT:  It seems those are the two
16    biggest packages that are going to really generate
17    the most limiting instructions.  They're the ones
18    that I think the defendants are most concerned about
19    incriminating people that they can't be admitted
20    against.
21            MR. CASTELLANO:  They should be concerned
22    about those witnesses.
23            THE COURT:  But they can't be used against
24    them.
25            MR. CASTELLANO:  Well, that's not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    necessarily true.  Because what the Court is focusing
 2    on is what the Court knows about now.  But these
 3    witnesses can talk about --
 4              THE COURT:  I think that's a good point.
 5    I've got a long list of limiting instructions.  And
 6    it doesn't -- and that's just what I've seen.  That's
 7    just what was generated from the James hearing --
 8              MR. CASTELLANO:  Right.
 9              THE COURT:  -- and some other testified
10    that came up.
11              MR. CASTELLANO:  Right.  Witnesses like
12    that can talk generally about drug trafficking on
13    behalf of the enterprise.  That meets the element as
14    to all defendants:  Robberies, murders.  The jury is
15    going to hear about other murders in this case other
16    than what's charged, and that's permissible, and
17    that's actually required if we want to get a
18    conviction in this case, because we have to put on
19    racketeering activity on behalf of the enterprise.
20    So the jury is going to hear about other murders,
21    other assaults, other drug activity.
22              THE COURT:  But they can't hear it from Mr.
23    Perez' statements coming through Cordova.  That's the
24    problem.
25              MR. CASTELLANO:  Right.  I mean, what we're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    focusing on are Mr. Perez' statements.  And the jury

2    is going to hear that he's admitted to at least two

3    other people that the shanks came from his walker.

4    So that is not the only source of the evidence where

5    he made admissions to him giving up his walker.

6    That's coming in through other witnesses as well, at

7    last two.

8           So I think we have to -- rather than just

9    taking this as a whole, we have to cut it in pieces

10   and see what is it that we're worried about.  So

11   we're worried about Mr. Perez' statements, it looks

12   like.  After that we have --

13          THE COURT:  And Herrera's through Duran.

14   Those are the two that, when you look at that chart,

15   and the chart that I'm still working on, you're going

16   to get the biggest number of limiting instructions.

17          MR. CASTELLANO:  So in a single trial, it

18   seems to me that's where the instructions come from,

19   is two witnesses.  Mr. Perez has eight statements.

20          THE COURT:  Two witnesses and the

21   audiotapes that are associated with it.

22          MR. CASTELLANO:  Right.  The Court knows

23   Mr. Perez has eight audio recordings.  So that's what

24   the limiting instructions come in there, and then

25   with Mr. Herrera, same thing, we have to sort through

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   which statements to bring in there.  But I think
 2   that's about it.
 3             THE COURT:  That's pretty big.
 4             MR. CASTELLANO:  It's pretty big.  Like I
 5   said, eight statements from Mr. Perez.  And the other
 6   question becomes what is the limiting instruction to
 7   the jury?  Is it:  Ladies and gentlemen of the jury,
 8   this information, statements by Mr. Perez, are to be
 9   admitted only against Mr. Perez in your determination
10   of your finding of guilt, and no other defendant?  Is
11   there anything else that they should be instructed
12   on?
13             THE COURT:  I think that would be the
14   instruction.  But I think listening to those tapes,
15   that's -- that does incriminate Mr. Baca -- I'm
16   talking about the Perez ones --
17             MR. CASTELLANO:  Right.
18             THE COURT:  -- and others.  And it seems to
19   me that we're asking a lot of the jury to not
20   consider that evidence.
21             MR. CASTELLANO:  With each instruction we
22   can ask the jury:  I've instructed you that this
23   evidence only comes in against Mr. Perez.  Does
24   anyone have a problem following that instruction?
25   And it's basically a polling of the jury each time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        And the other question is:  Does the Court

2   instruct before and after each statement is

3   introduced?  And by that I mean each recording.  Or

4   is the Court thinking about interrupting each of the

5   recordings to instruct along the way?

6        THE COURT:  Well, I probably will do it as

7   often as the defendants want it to be asked.  But if

8   you look at the chart, at the places where I'm going

9   to probably have to be giving the instruction or

10  saying they can't consider it, I anticipate it's

11  going to be a lot.

12       MR. CASTELLANO:  Right.  And if they

13  request an instruction, they should get an

14  instruction.  And I think, then, they have their

15  pulse on the trial.  And when they think it's

16  necessary, and the Court can give those instructions

17  as they deem necessary.  And that protects them and

18  it protects the trial.

19       Now, I've cited to the Court before U.S.

20  versus Diaz.  It's a Second Circuit case, 176 F.3d

21  52.  And it says -- I understand this is a Second

22  Circuit case, but it says, "Refusal to sever a joint

23  trial with federal defendants is virtually

24  unreviewable.  A district court's denial of a

25  severance motion will be reversed only if a defendant

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    can show prejudice so severe that his conviction

2    constituted a miscarriage of justice and that the

3    denial of his motion constituted an abuse of

4    discretion."  This is the case I've discussed with

5    the Court before.  And the argument for severance was

6    spillover.

7            So in that case, the complaining defendant

8    was implicated in one of nine murders.  He was tried

9    over a three-month period before the same jury, which

10   heard volumes of evidence that his co-defendants,

11   among other things, committed eight unrelated murders

12   and other acts of violence, sold narcotics, and

13   maintained and shared weapons for use in their

14   criminal activities.  They say, "First, the evidence

15   in dispute is relevant to the charges against all

16   RICO defendants because it tended to prove the

17   existence and nature of the Latin Kings and their

18   RICO enterprise, and a pattern of racketeering

19   activity on the part of each RICO defendant, by

20   providing the requisite relationship and continuity

21   of illegal activities."  It then cites to a case

22   called Brady, at 26 F.3d, at 287, holding that "there

23   was no prejudice from admission of evidence regarding

24   murders as background evidence."

25            So this is not the first time that any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    court has been in the situation.  In this case, they
 2    complained about being involved in one out of nine
 3    murders.  And I think if a court of appeals can hold
 4    a case together like that, when you're one out of
 5    nine murders -- he sat there the whole time while
 6    other murder evidence was introduced against other
 7    defendants, and it was upheld on appeal -- so I think
 8    this has been contemplated before, and I think it can
 9    be done.
10            As the Court has said, it's going to take
11    work with limiting instructions.  But as often as
12    defense requests them, the jury can be instructed
13    accordingly.
14            But I think one jury is certainly better
15    than two.  I think two just invites more error to the
16    record.
17            Related to the Court's question about the
18    rulings on appeal, the statements were -- obviously,
19    unless there is a change in the statement of law, our
20    position stands for purposes of appeal.
21            The other issue the defense raised was, if
22    the anticipated evidence at trial is different --
23    we're talking about recordings here, so I don't think
24    we have a concern about the evidence being different
25    at trial.  The recordings are what they are.  And so
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    that evidence will come in as it is.  So I think that
2    is obviously less of a concern in terms of any change
3    in position by the Government.
4              I don't have anything else unless the Court
5    has questions.
6              THE COURT:  If -- getting back to the
7    motion on the table -- you're opposed to that
8    motion -- if I were to sever, how would the
9    Government propose I sever?
10             MR. CASTELLANO:  Certainly not the proposal
11   of Counts 6 and 7.  I agree with the Court, that
12   doesn't solve any problems.  We're faced with the
13   same exact issues regarding jury instructions.
14   Obviously, we would oppose it.  But the better option
15   is severing defendants, as opposed to severing --
16             THE COURT:  How would you do it?  The way
17   I'm thinking of Sanchez and Baca, and then Perez and
18   Herrera?
19             MR. CASTELLANO:  If I was forced into a
20   decision, that would be the decision; would be Mr.
21   Perez and Mr. Herrera in their trial, and the other
22   two in the other trial.
23             THE COURT:  And who would you try first?
24             MR. CASTELLANO:  I'm not sure.  I haven't
25   thought that far ahead.  I know one who wants to go
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   first, but I'm thinking separately from that.  I'm
 2   not sure.  I'd have to think about that in terms of
 3   witness availability, and who we have lined up, and
 4   who we wouldn't be calling if the Court were to do
 5   that.
 6              THE COURT:  All right.  Thank you, Mr.
 7   Castellano.
 8              Mr. Villa, anything else you want to say on
 9   your motion?
10              MR. VILLA:  Your Honor, nothing more with
11   respect to why I think 6 and 7 ought to be separate.
12   I'll stick to that.
13              But if the Court were going to consider as
14   a remedy to the concerns it has with the intra-counts
15   6 and 7 issues, or statements and things like that, I
16   would echo what some others have said, that rather
17   than a two-jury setup, that we have two separate
18   trials.
19              I think that I understand the Court would
20   get some efficiency from the duplicative evidence
21   that could be put on.  But I think that I would agree
22   that would it take just as long, and be just as
23   difficult.  And there is much less chance of
24   prejudice if we do it that way.  But, again, I think
25   that the Court ought to -- I know you've looked at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   it -- but consider why we're asking that 6 and 7

 2   ought to be severed in the way we are.

 3            That's all I have.

 4            THE COURT:  All right.  Thank you,

 5   Mr. Villa.

 6            Let me ask you one other thing, Mr.

 7   Castellano:  If I do feel that I need to have two

 8   juries, rather than trying to deal with the

 9   evidentiary problems particularly Duran and Cordova

10   present, would you prefer to have joint juries or two

11   separate trials?

12            MR. CASTELLANO:  I mean, if I can kind of

13   think this through.  If we have two separate trials,

14   we have to figure out where to fit the next trial.

15   We already have trials lined up for April and July.

16   Mr. Baca and Mr. Sanchez are also in the July trial.

17   So we have to figure out whether we put them back to

18   back, or try them first, get them out of the way, and

19   come back and revisit them in July.  Mr. Herrera and

20   Mr. Perez, I don't believe they're in any other

21   trial.  So the question is who we keep waiting.

22   Because at this point there is no other time.

23            I know the July trial, the RICO case, those

24   defendants have previously said -- I don't know if

25   their position has changed -- but they're not moving.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   That's a fixed date for them, and they will not agree

2   to any other continuances.  I don't know what the

3   April trial people will say.  But now we're going to

4   have to fit in a fourth trial somewhere.

5           THE COURT:  It sounds like you would prefer

6   to have -- given the choices the Court's putting to

7   you, that you'd rather have two juries than two

8   separate trials?

9           MR. CASTELLANO:  I think that's right, as

10  I'm thinking through it.  Because, otherwise, there

11  is nowhere else to fit these cases.  And we might as

12  well get it over with.  I think it will be difficult.

13  But I think between those choices and thinking it

14  through now, two juries maybe is better.  I certainly

15  don't like it.  But given the choices, I would pick

16  that choice over a separate trials, especially given

17  the other trials lined up.

18          THE COURT:  Thank you, Mr. Castellano.

19          I've jumped to Mr. Castellano to ask him

20  those questions.

21          Anybody else have any comments, arguments?

22          Well, I'm going to deny the motion to

23  sever.  I just have looked at it repeatedly, and it

24  doesn't seem to solve any problems to me, and it

25  doesn't seem to me to create the problems that the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    defendants propose.  I've thought about that a long
 2    time, written two opinions on it, relooked at it.
 3    And it just doesn't seem to raise the problems that I
 4    think has more recently arisen with the evidence and
 5    the discovery that we've had over the last month.  So
 6    I'm going to deny the motion to sever.
 7              At the present time, I'm planning on
 8    picking two juries on Monday.  And I don't minimize
 9    the difficulties.  But we've known we're going to
10    have some difficulties with limiting instructions
11    once we began, on December 19, to start listening to
12    informants and tapes and things like that.
13              And so, I think, given the choices, I would
14    rather work hard to have two juries hearing this
15    evidence than to have juries listening to some of
16    this evidence and trying to deal with the amount of
17    limiting instructions that I know I'm going to have
18    to give.  So I think we'll give it a try.
19              All right.  Then the next motion is the
20    motion to compel Brady and the Giglio materials
21    pertaining to cooperating defendants.  Let me pull
22    that up here.  I believe that Mr. Villa, Ms.
23    Fox-Young, that's your motion.  I think it's joined
24    by Mr. Troup and Mr. Arturo Garcia.
25              What -- y'all probably have had some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   discussion, since this was filed a few days ago.
 2   Where are we on it?  What needs to be -- what hasn't
 3   been worked out and what needs to be addressed?
 4              MR. VILLA:  Your Honor, just taking it in
 5   order, I believe, with respect to Number 1 and 2,
 6   it's sort of the same thing; that I believe these
 7   defendants, the cooperating co-defendants listed in 1
 8   and 2, are housed in the same area.  And there is
 9   some sort of shakedown, and a cellphone was
10   confiscated, as well as drugs.  And I may be wrong
11   about whether they're housed in the same area.  But
12   we've asked for the cellphone information as well as
13   the results of the drug testing.  I think -- I'm not
14   a hundred percent sure if that information is
15   available or not.  I think the United States said
16   they would provide it when it's available.  It has
17   not been provided.  So they'll have to speak to that.
18              THE COURT:  Let me -- let's take these one
19   at a time.  Is there anybody -- any other defendant
20   that needs or wants to speak on this before we hear
21   from the Government?  Ms. Bhalla?
22              MS. BHALLA:  Thank you, Your Honor.
23              And you may want to address this issue
24   later.  But we did file a sealed supplemental to this
25   motion based on some evidence that we reviewed in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   new discovery.  And I don't know if the Court -- it
 2   may benefit me to bring that up so that the
 3   Government can address that in one fell swoop.  Or we
 4   can wait, Your Honor.
 5           THE COURT:  I have read everything other
 6   than what came in yesterday.  When did you file that?
 7           MS. BHALLA:  It was filed on -- I think it
 8   was filed on Wednesday, Your Honor; Tuesday or
 9   Wednesday.  When did I leave?  Yeah, it should have
10   been filed on Wednesday, Your Honor.  I think it's
11   1688.
12           THE COURT:  I had it right behind the
13   motion.  So we'll just take those motions then
14   together, okay.
15           MS. BHALLA:  Did Your Honor want to hear
16   from me now?
17           THE COURT:  Do you have anything from the
18   Government on the cellphone?
19           MS. BHALLA:  No, Your Honor.
20           THE COURT:  Why don't we hold up and hear
21   the Government on that.  But I'll take your motion up
22   at the same time.
23           Do you want to speak before the Government
24   does, Mr. Lowry?
25           MR. LOWRY:  Your Honor, just in terms of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    one additional bit of the Brady information.  In

2    terms of the Jencks Act disclosures, there is a 302

3    with Lupe Urquizo that talks about a telephone call

4    that he had with Gerald Archuleta, that hasn't been

5    disclosed.  And I would consider that Brady because

6    he's responding to Mr. Archuleta for calling the hit.

7              THE COURT:  Does that 302 indicate that

8    it's the contents of a cellphone?

9              MR. LOWRY:  No, it's not the contents.

10             THE COURT:  Let's take the cellphone first.

11   Anybody else on the cellphone issue?

12             All right.  Mr. Beck, are you going to

13   handle this?

14             MR. BECK:  Yes, Your Honor.  Items 1 and 2

15   are not in the United States' possession.  Those are

16   in a local drug task force possession.  They're

17   investigating the crimes.  We will have -- I mean, I

18   anticipate, with some new Giglio disclosures based on

19   discussions we've had in the last weeks, Jerry

20   Montoya and Eugene Martinez and Roy Martinez will

21   give their portions of what occurred with those.  But

22   we don't have possession of those items.

23             THE COURT:  Are they a joint task force

24   with the federal government?

25             MR. BECK:  They're not, no.  It's local.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                              1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1              THE COURT:  They're just local drug task
 2     force?
 3              MR. BECK:  Local, like local drug
 4     trafficking agencies.  So it's a state government,
 5     not part of the federal government.  We've asked
 6     for -- and I anticipate that we will receive
 7     information as it becomes available.  And when we do,
 8     we will turn that information over to the defense.
 9     But it's not part of the federal government.  We
10     don't have it in our possession.  We can't get that.
11              THE COURT:  Would you have any opposition
12     if we were to issue a subpoena for those phones, see
13     if we can move it along?
14              MR. BECK:  No.
15              THE COURT:  Would that help you out, Mr.
16     Villa, on those two, both that and the drug test, I
17     guess?  That's what you mean by number 2, right?
18              MR. BECK:  That's right, Your Honor.
19              THE COURT:  What if we issued subpoenas
20     out, and maybe that would move them along, to give to
21     the Government, so they could turn them over to you
22     whatever they got.
23              MR. VILLA:  I think that would be a good
24     solution, Your Honor.  If the Government would
25     identify the right agency or individuals to send that
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                     e-mail: info@litsupport.com

```
 1   subpoena to.  And I do think that those paragraphs
 2   one and two, the drug tests and the cellphone, are
 3   all part of one investigation.  But Mr. Beck may
 4   correct me on that.
 5           THE COURT:  Can you supply enough
 6   information to help Mr. Villa put a subpoena
 7   together?
 8           MR. BECK:  I think so, yeah.  I can't do it
 9   right now.  I don't have it in front of me.  But I
10   think we can by the end of the day.
11           THE COURT:  Okay.  Does that work for
12   everyone on one and two?  Not hearing any objection,
13   then we'll put a subpoena together.  And if that
14   doesn't do it, we'll come back to it.
15           MR. VILLA:  So, Your Honor, I don't know
16   how this ends up playing out.  I don't believe Mr.
17   Gallegos is on the Government's -- or Mr. Eugene
18   Martinez is on the Government's will call list for
19   Trial 1.  But Mr. Montoya is.  And I think Mr.
20   Martinez, Roy Martinez, might be a may call -- no,
21   he's a will call, excuse me.  So, if the subpoena
22   gets issued, and the agency says, Great, we'll have
23   it to you Friday, but the Government wants to put on
24   these two witnesses Thursday, or something, I mean, I
25   guess I would ask for some sort of relief in that, or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    notice about what's going to happen in terms of who

 2    the Government is going to call.

 3              THE COURT:  I'm not sure the question I

 4    should ask you.  But do you have a response?

 5              MR. BECK:  Yeah.  I think -- I mean, I

 6    think we go forward.  It's not -- I know at least the

 7    phone is not Jerry Montoya's phone.  It's Richard

 8    Gallegos' phone.  The drugs -- I don't know whose

 9    they are.  I think -- as I said, I think there will

10    be new Giglio disclosures about drug use by some of

11    our will call list in the past couple weeks and

12    months.  Other than that, I don't see a remedy here.

13    I mean, they can inquire and ask them about what that

14    is.  But I mean, I don't see that there is a basis

15    for a remedy.

16              THE COURT:  So the two people that you're

17    calling, that you're calling are --

18              MR. BECK:  Jerry Montoya in Number 1, and

19    Roy Martinez in the Number 2.

20              THE COURT:  Roy Martinez in the second.

21              MR. BECK:  Right.

22              THE COURT:  Do you know if they're coming

23    up in the next week, witness-wise?

24              MR. BECK:  Roy certainly is not.  I don't

25    anticipate Jerry Montoya would be either.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                               FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  All right.  Well, that will
 2    give you a few days to get it going.  Let's see if we
 3    can get the subpoenas out and avoid a problem.
 4            What else do you have on your motion?
 5            MR. VILLA:  So I'll move to number 3, Your
 6    Honor.  This is a legible copy of Mario Rodriguez'
 7    notes.  It can came -- in production to us it's
 8    Exhibit 2 to the motion, and it's sort of attached,
 9    or part of a 302.  And the notes are not legible.  As
10    soon as we got them, we inquired of the discovery
11    coordinating folks if they had a better copy.  They
12    said they didn't.  They said they would follow up
13    with the United States.  We haven't heard back.
14            I think it's important because it may or
15    may not be other information that we're looking for.
16    There is a recording that was recently disclosed, in
17    which Mr. Rodriguez is with Mr. Acee and some others,
18    and he's talking about corrections that he's made to
19    Mr. Acee's 302.  And I don't know if that's what this
20    document is, or if it's a different document.
21            And so, again, with Mr. Rodriguez'
22    testimony imminent, we'd like a legible copy of his
23    notes.  And to the extent there is something else
24    that Mr. Rodriguez is referring to on this recording,
25    of making corrections to Mr. Acee's 302, we would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    want the draft 302 that Mr. Rodriguez made

2    corrections on, and any other notes that there are.

3              THE COURT:  Is this a curable problem, Mr.

4    Beck?

5              MR. BECK:  Is it a what, Your Honor?  I'm

6    sorry.

7              THE COURT:  Curable.

8              MR. BECK:  Yes.  We have the notes.  They

9    should be going out today or tomorrow.

10             THE COURT:  Are they legible?

11             MR. BECK:  I mean, I don't know how much

12   better they are than what we've got.  But I think

13   they will be a better copy.

14             THE COURT:  Do you have the original?

15             MR. BECK:  We do.  I think we do.

16             THE COURT:  Do you have it with you today?

17             MR. BECK:  No.  I think we have the

18   original.

19             MR. CASTELLANO:  I think I saw a copy of

20   the notes.  I think what they tried to do was

21   photocopy them with a different contrast or a darker

22   one.  So I think the copy picked it up, and it's

23   going out in the disclosure today.  I know that they

24   were trying to make copies on the copy machine to

25   bring out the writing from the notes.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                              1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1              THE COURT:  And when it goes out today, is
 2   it going directly to defense counsel or is it going
 3   to --
 4              MR. CASTELLANO:  It will go to Mr. Aoki,
 5   the discovery coordinator.
 6              THE COURT:  Okay.  Would it be possible if
 7   somebody in your office could give one copy to Mr.
 8   Villa, and Mr. Villa could be responsible for getting
 9   it to anybody else that wanted it?
10              MR. CASTELLANO:  I think so.  I think
11   they're numbered.  We could disclose it under the
12   normal disclosure rules, and then disclose it as well
13   to Mr. Aoki.
14              THE COURT:  Would that work?
15              MR. VILLA:  That would, Your Honor.  And
16   I'd also ask if you would ask, order the Government,
17   if we're still unable to read the copy we get, if I
18   could inspect the original.
19              THE COURT:  Do you have any problem with
20   that, Mr. Beck?
21              MR. BECK:  That's fine.  I mean, my
22   understanding they're with FBI in Albuquerque.  So it
23   can't be done immediately.  But we would figure out
24   how to get that done.
25              MR. VILLA:  We can give them six hours.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          We'll see if the copy we get is workable,

2   Your Honor.  But I appreciate it.

3          Number 4, there is two exhibits we've

4   attached to the motion, Exhibits 3 and 4.  They are

5   confidential informants.  They're listed by number so

6   we don't know the identities of those informants.

7          The Government, when it produced its

8   Jencks, produced a letter identifying the majority of

9   individuals who weren't identifiable on whatever the

10  report was, or if they were redacted.  But these two

11  specific informants I don't believe were disclosed.

12  So we're asking for their identities pursuant to

13  previous orders and agreements of the parties on

14  these issues.

15          THE COURT:  Do you have any problem giving

16  these names?

17          MR. BECK:  I think we gave those to Mr.

18  Lowry and Ms. Duncan, so I think they have those

19  names.

20          MR. LOWRY:  Your Honor, I've been working

21  with Ms. Armijo.  And regretfully, she's not in the

22  courtroom.  We gave her a list, and it's on our

23  witness list.  I don't know if they're called CIs on

24  this particular document.  But my recollection, Your

25  Honor, is there is about six or seven names on that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    list.  And so far we've only gotten two.  And I'm

2    happy to share those with my colleagues.

3          But I've been in discussions with Ms.

4    Armijo over the last week to try to collect those

5    other names.  And I wanted to augment the motion to

6    compel with those names.  Despite our best efforts

7    and repeated requests, we still don't have the list.

8    And they're of particular import to Mr. Baca's

9    defense.

10         THE COURT:  Well, am I understanding

11   correctly, you don't have any objection to producing

12   the names, right?

13        MR. BECK:  That's right.  I mean, there are

14   certain CIs throughout New Mexico Corrections

15   Department documents that -- we've said over and over

16   again we don't have -- Corrections doesn't have those

17   names anymore, we don't have those names anymore.  So

18   those won't be produced because they don't exist.

19   We've tried to track those down.  But to the extent

20   that we have them, it sounds like we're going to

21   produce them.  And I don't have a problem

22   double-checking, making sure that happens.

23        THE COURT:  On the ones that you do have

24   the ability to produce and you are willing to

25   produce, can you propose a deadline by which to do

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    it?
 2              MR. BECK:  We can do that Monday, by the
 3    end --
 4              THE COURT:  Would that work for you?
 5              MR. VILLA:  Yes, Your Honor.
 6              THE COURT:  Okay.  All right.
 7              MR. LOWRY:  Do we know how many that have
 8    fallen between the cracks here?
 9              THE COURT:  Do you know at the present
10    time?
11              MR. BECK:  I don't.  I mean, I'm guessing,
12    if you give us names and they don't come back, we'll
13    tell you.
14              MR. LOWRY:  If I could give them names that
15    would be a problem solved.
16              MR. BECK:  If you give us numbers.
17              THE COURT:  You mean the exhibit numbers?
18              MR. BECK:  No.  What he's saying is giving
19    us a list of, like, CI 136.  And if we have who CI
20    136 is, we give him a name back.  If we don't give
21    him a name back, we don't have that information.
22    We're not withholding CIs' names we have.
23              THE COURT:  Does that work for you?
24              MR. LOWRY:  Yes, Your Honor.  And I've
25    given them that list.  But I'll do that again.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Does that take care
2    of number 4 then, Mr. Villa?
3              MR. VILLA:  It does, Your Honor.  Number 5
4    is field notes.  And Exhibit 5 explicitly identifies
5    field notes taken by Special Agent Neale regarding an
6    interview of David Calbert, who is going to testify.
7    It says that they're digitally attached to the -- I
8    think it's 1A file -- I think we put IA in the
9    motion.  But those notes have not been produced.  And
10   it appears from the 302 that they still exist and are
11   attached digitally to a file.
12             THE COURT:  Both of these are going to be
13   witnesses, Mr. Beck?  Duran and Calbert?
14             MR. BECK:  David Calbert will be a witness.
15   Eric Duran will be a witness, yes.  But I don't
16   believe their notes would be -- I mean, I don't
17   believe Special Agent Neale's notes of those would be
18   Giglio, as long as the notes -- or I mean, they
19   wouldn't be David Calbert's Jencks unless they are
20   substantially verbatim.  And as long as their notes
21   are reduced to writing in the 302s, then the notes --
22   I mean, there is no requirement that they're
23   produced.
24             THE COURT:  Well, you know what I've
25   written on FBI agent notes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1            MR. BECK:  If they are substantially

 2    verbatim, then they're to be produced.  I believe

 3    that's Your Honor's ruling.

 4            THE COURT:  Well, how else do people take

 5    notes?  They try to be as verbatim --

 6            MR. BECK:  I can tell you that the

 7    agents -- and oftentimes agents do, and in this case

 8    agents do take shorthand notes, and then, when we

 9    reduce their notes to writing, the actual 302 is more

10    lengthy than the notes would be.

11            THE COURT:  Well, if you want me to make a

12    call on them, you can.  You can give them to me in

13    camera.  But, generally, I'm going to require those

14    notes to be produced.  So either produce them or send

15    them to me in camera for review.

16            MR. BECK:  Okay.

17            THE COURT:  Anything else on that?

18            MR. VILLA:  Is the same deadline okay, Your

19    Honor, end of business Monday?

20            THE COURT:  Does that work for you, Mr.

21    Beck?

22            MR. BECK:  That will work, Your Honor.

23            MR. VILLA:  The last thing on the motion is

24    paragraph 6.  I think the Court just recently issued

25    an order related to this inspection of the tablets of

SANTA FE OFFICE                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                         Albuquerque, NM 87102
(505) 989-4949                                                                                        (505) 843-9494
FAX (505) 843-9492                                                                              FAX (505) 843-9492
                                                                                                   1-800-669-9492
                                                                                         e-mail: info@litsupport.com



PROFESSIONAL COURT
REPORTING SERVICE

 1   the cooperating defendants.  But May 11, when the

 2   Court ruled on this tablet issue and returning it to

 3   the defendants, it also ordered the Government to

 4   review for Brady and Giglio the cooperating

 5   defendants' tablets, because there was an issue of

 6   perhaps whether they tampered with them, access to

 7   the internet, communicated with individuals outside

 8   of the detention center where they were.  And we have

 9   not received anything from the Government one way or

10   another about that.

11              THE COURT:  Mr. Beck, did you conduct those

12   reviews?

13              MR. BECK:  No.  The Court issued the

14   written order yesterday.  We've forwarded that to the

15   FBI.  The FBI would not inspect the tablets without

16   the actual court order.  So now not that they have

17   it, they will inspect the tablets.  I don't know how

18   quickly that will be done.  It's towards the top of

19   their things to do list.  But it may not be at the

20   very top because they have other pressing matters

21   that they're inspecting at this time.  So I don't

22   know when that will be done.  But I know that, as of

23   last night, the FBI is moving forward with that

24   because they now have the order.

25              MR. VILLA:  Your Honor, we can have our

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    expert do it immediately.  We don't need to get in
2    the way of pressing business of the FBI.
3             The Court signed the order for inspection
4    recently.  But on May 11th of 2017, it ordered the
5    Government to conduct the Brady-Giglio review.  So I
6    think that's a good solution.  Let the defense do it.
7             THE COURT:  What's your thoughts on that,
8    Mr. Beck?
9             MR. BECK:  I don't see a problem with that,
10   as long as the marshals are okay with it.  The Court
11   has ordered the inspection.  So it sounds fine to me.
12   Obviously, they have reciprocal discovery
13   obligations, but I don't have any problem with that.
14            THE COURT:  Do the marshals have any
15   problem with that?
16            DEPUTY MICKENDROW:  I apologize, Your
17   Honor.  There was a disturbance in the hallway that I
18   was dealing with.  What was the request?
19            THE COURT:  Well, they're just going to
20   turn over some cellphones.  I've ordered that those
21   be produced, rather than the Government having to do
22   a Brady and Giglio review and the FBI dealing with
23   it, I just wonder if we can go ahead and have it
24   produced to the defendants, and let the defendants do
25   that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. VILLA:  Tablets, Your Honor.  You said
 2    cellphones.
 3              THE COURT:  I did.  And it's tablets.
 4              DEPUTY MICKENDROW:  And these tablets are
 5    in the Marshal Service's possession right now?
 6              THE COURT:  Well, they're in the prisons.
 7              DEPUTY MICKENDROW:  We can accommodate it,
 8    and be able to get those.
 9              MR. CASTELLANO:  Those tablets were in the
10    Marshal Service's custody.  They were turned over to
11    FBI.  So they would then go from the FBI to the
12    defense expert.
13              MR. BECK:  Half of them.  Some of them are
14    still with marshals in Albuquerque.  But we will all
15    work together to coordinate to get them to the
16    defense so that they can do that.
17              THE COURT:  Okay.
18              DEPUTY MICKENDROW:  I would just put on the
19    record that I know there is one tablet that we're
20    searching for.  I guess it's been missing since May
21    of 2017.  I have inherited the problem.  I'm looking
22    for it right now, and I'm not sure where it is.  I
23    just want to make it clear we're not trying to keep
24    that tablet at all.  We are searching for that
25    tablet.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.  All right.  Does that
 2    deal with it then, Mr. Villa?
 3              MR. VILLA:  I think that deals with it.
 4    But a couple of things is -- it's Mr. Lowry's expert,
 5    just so Mr. Beck knows who to deal with; deal with
 6    Mr. Lowry rather than going through me.
 7              And then, I guess, if there is a missing
 8    tablet from a cooperating defendant who is going to
 9    testify, there may be some more information that the
10    Government needs to turn over to us.
11              THE COURT:  Mr. Lowry.
12              MR. LOWRY:  Your Honor, I'm just curious of
13    which tablet, which witness the missing tablet is
14    associated with.  And I just want to make sure that
15    this request includes the correspondence that was
16    sent to the jail alerting them about the problem to
17    begin with.
18              THE COURT:  Mr. Mickendrow, do you know
19    which tablet it is?
20              DEPUTY MICKENDROW:  If Your Honor would
21    give me a few minutes, I could get the name of the
22    defendant that we're looking for his tablet on.
23              THE COURT:  Okay.  And do you have any
24    problem producing correspondence you've had with the
25    jail, with the detention facilities to try to locate
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    this?
 2              DEPUTY MICKENDROW:  I would have to clear
 3    that through my agency.  But me personally, no.  I've
 4    made several attempts to locate it.  So I have no
 5    issue with that.  But as long as --
 6              THE COURT:  Let's do this:  I'll
 7    conditionally order that you produce the
 8    correspondence as well as -- that goes along with
 9    this, as well as the tablets themselves, getting the
10    ones that are in your custody over.  If you talk to
11    your superiors, and they have problems with it, then
12    we can revisit it.  But for the present time let's
13    plan on that being part of the production.
14              DEPUTY MICKENDROW:  Yes, sir.
15              THE COURT:  Anything else on that, Mr.
16    Lowry?  Mr. Villa?
17              MR. VILLA:  Nothing on that issue.
18              THE COURT:  Anything else on your motion?
19              MR. VILLA:  I don't have anything else on
20    the motion.  I have a similar discovery request, if
21    the Court would be so inclined.
22              THE COURT:  Okay.
23              MR. VILLA:  I was informed by Ms. Armijo,
24    maybe just a couple days ago -- and you heard Mr.
25    Castellano tell you a little bit earlier that the two
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1 individuals were saying similar things, that Mr.

2 Perez admitted to providing pieces from his walker.

3 And I know that one of them is Timothy Martinez, who

4 was apparently reinterviewed, or interviewed again a

5 couple days ago, and made a statement, and I believe

6 a 302 is being prepared on that.  But he's going to

7 be testifying very soon, I suspect, and we don't have

8 that.

9          THE COURT:  Who is the witness on this?

10          MR. VILLA:  Timothy Martinez.

11          THE COURT:  Timothy Martinez.  Okay.

12          MR. VILLA:  So, to the extent, you would

13 order the Government to produce that 302 immediately,

14 we would ask you to do that.

15          THE COURT:  Your thoughts, Mr. Beck?  Ms.

16 Armijo?

17          MR. BECK:  I think we have forthcoming a

18 number of both Giglio and James productions.  So some

19 more James statements and more Giglio that we just

20 discovered in preparing for trial with our witnesses.

21 Those 302s are in the works.  I expect that they will

22 be disclosed Monday to the defendants.  So they'll

23 have all that.

24          THE COURT:  Does that work for you, Mr.

25 Villa?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. VILLA:  We'll take Monday, yes, Your

2    Honor.

3           THE COURT:  Anything else?

4           MR. VILLA:  That's all I have.

5           THE COURT:  Ms. Bhalla, you have issues you

6    want to raise on your motion?

7           MS. BHALLA:  Thank you, Your Honor.

8           You know, we've talked a little bit about

9    the phone calls that were disclosed and the number of

10   phone calls.  And we've all been scrambling to listen

11   to these phone calls as quickly as possible.

12          One of the things that we discovered when

13   listening to the phone calls, and Lupe Urquizo -- I

14   mean, just honestly within the last week, Your Honor,

15   Lupe Urquizo made a phone call to his brother.  And

16   in that phone call, and in more than one phone call

17   he disclosed that Gerald Archuleta, also known as

18   "Styx," had a wire -- I assume it was one of those

19   recording devices -- and made recordings of him.  And

20   the Government showed him copies of the transcripts

21   of those recordings.  And that was what was used to

22   gain his cooperation.

23          I did reach out to the Government to ask if

24   we could have those.  The Government responded that

25   they had no recordings or transcripts of that -- of

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                         1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                     e-mail: info@litsupport.com

```
 1    those conversations.  So --

 2            THE COURT:  They're saying there was no

 3    recordings?

 4            MS. BHALLA:  They're saying, I think -- and

 5    I may ask the Government to give a better answer --

 6    is that I don't know if they meant that no such

 7    recordings were ever made, or that no such recordings

 8    exist; that they don't have possession of those.  I'm

 9    not totally clear.

10            THE COURT:  All right.  Mr. Beck?

11            MR. BECK:  I hope I'm not overstepping my

12    grounds in revealing intimate trial strategies, but

13    cooperators and other SNM members lie on phone calls.

14    So Lupe lied to his brother on a phone call to

15    justify why he was cooperating.  You'll probably see

16    that again this afternoon in another motion.  But he

17    lied to his brother.

18            THE COURT:  But you don't know of any

19    transcripts?

20            MR. BECK:  Yeah, as far as we know -- and I

21    think this is pretty darn certain -- I don't deal in

22    certainties -- but Archuleta never recorded Lupe

23    Urquizo.

24            MS. BHALLA:  If that's the case, Your

25    Honor, this sort of dovetails into Marc Lowry's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   motion, which is Document 1701.  And I'm going to say

2   something briefly about that.

3           If it's their position that there were no

4   recordings, then we want to know whether or not the

5   Government indicated to Lupe Urquizo that such

6   recordings existed.  Those are, you know, specific

7   threats or promises that would certainly get into

8   Giglio material.

9           Now, the Government may say that no such

10  threats or promises were made.  If that's their

11  position, that's fine.  But I think that we are going

12  to ask for clarification on that, and maybe we deal

13  with that in -- and I did make a request for that in

14  number 4 in our supplemental, Your Honor.  And maybe

15  we can deal with that when we get to it.

16          If you want me to go ahead and move on to

17  number 2, or do you want me to go straight to that

18  issue?

19          THE COURT:  Well, since you brought it up,

20  we can go ahead and do number 4.  You're putting

21  together a list of all the benefits that the

22  cooperators are getting; correct, Mr. Beck?

23          MR. BECK:  Yes, Your Honor.  I think we've

24  disclosed that.

25          THE COURT:  So that covers the promises
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    side.  Do you have any evidence or knowledge that

 2    there were threats to Mr. Urquizo?

 3            MR. BECK:  Well, I think that -- I mean,

 4    I'm just thinking -- it sounds like they have

 5    evidence that there was.  And they may use that in

 6    cross-examination of a couple of folks.  I don't know

 7    what else they want from the United States.

 8            THE COURT:  Well, I guess, here's the thing

 9    is, if there were threats, and then the Government

10    didn't act on those threats, I guess I would put that

11    on the side of a benefit.  Would you agree with my

12    analysis, that if you're -- I'm not saying it was Mr.

13    Acee -- but Mr. Acee is sitting there and he is

14    making threats, and then he doesn't do those things,

15    that would seem to be a benefit to the cooperating

16    witness that ought to go on your list.

17            MR. BECK:  I mean, I think if the United

18    States was targeting someone, and then part of a

19    cooperator's agreement was that that target would go

20    away, I think that's been included.

21            I mean, threats -- as Your Honor will hear

22    this afternoon, and I think Your Honor has heard

23    before, associates of the SNM include some of the

24    defendants' wives and girlfriends and mothers who

25    sent in drugs into the prison.  And you'll hear this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    in each one of the trials.  So that would be
 2    racketeering by SNM.  I think it will come out that
 3    the United States targeted folks who they didn't
 4    prosecute.  I can't -- I mean, I can't think --
 5              THE COURT:  I guess what my solution for
 6    this is that you ask about threats, and if there were
 7    threats, they go on the -- on your list for each
 8    cooperating witness that that's a promise, that's a
 9    benefit.  Because if it didn't take place, then I
10    think that is a benefit.
11              MR. BECK:  Okay.
12              THE COURT:  Does that deal with number 4
13    then?
14              MS. BHALLA:  It does, Your Honor.
15              And I would like to point out to the Court
16    that this did happen with more than one cooperating
17    witness.  We can certainly meet with the Government
18    and indicate how many we think that that occurred
19    with, that haven't been disclosed yet.  And I think,
20    Your Honor, that this is going to be a continuing
21    issue, as we continue listening to the phone calls.
22    We're doing the best we can to process them, but
23    there is just a lot of them.
24              The other issue, Your Honor, on number 2 is
25    in one of the Lupe Urquizo phone calls he mentions
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    that Special Agent Acee wanted him to have a
2    conversation with Mario Rodriguez, and that he was
3    going to set up a phone call for -- or set up a way
4    for Mr. Urquizo to be able to speak with Mario
5    Rodriguez on the phone.  We would like documentation,
6    recordings, whatever the Government has on that
7    particular issue.
8              THE COURT:  Do any recordings or
9    transcripts of those conversations exist, Mr. Beck?
10             MR. BECK:  I apologize.  I missed it.
11             THE COURT:  This is between Mario Rodriguez
12   and Mr. Urquizo.  I guess Mr. Acee was setting up --
13   there is some indication in the record that Mr. Acee
14   set up a phone call between them.  I guess the
15   question is, are there any recordings or transcripts
16   of the conversation between Mr. Rodriguez and Mr.
17   Urquizo?
18             MR. BECK:  Again, this is just SNM members
19   lying about what they're doing on the phones.  So
20   that didn't happen.
21             THE COURT:  Well, you mean -- so where did
22   you get this information?  Did it come out of a 302?
23             MS. BHALLA:  No, Your Honor.  Lupe Urquizo
24   made a phone call to a family member.
25             THE COURT:  Oh, okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. BHALLA:  And explained to -- and this

2    goes into some of what we want in terms of benefits,

3    it sort of goes into the same category of what we

4    were dealing with before, Your Honor.  But it was a

5    phone call from September 11th of 2017.  And Mr.

6    Urquizo stated that he -- the more cooperators he

7    brought in, the more time he got off his sentence.

8    So the more people that he could get to cooperate for

9    the Government, the less time he would have to serve.

10   And in that spirit, he was going to try to gain Mario

11   Rodriguez' cooperation.

12          THE COURT:  But it doesn't sound like the

13   Government has any record of any call between Mario

14   Rodriguez and Mr. Urquizo.  Is that your position,

15   Mr. Beck, is you just don't even know about this

16   call?

17          MR. BECK:  That's accurate, Your Honor.

18          THE COURT:  All right.

19          MS. BHALLA:  And if that's the case, Your

20   Honor, I think if there is no recording of the

21   conversation, I think what we would like is -- if

22   Agent Acee did, in fact, have that conversation with

23   Lupe Urquizo, and did, in fact, provide a phone to

24   Lupe Urquizo, or facilitated a phone call --

25          THE COURT:   I think Mr. Beck is saying

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    they don't know anything about it.

2              MS. BHALLA:  Nothing?

3              THE COURT:  Is that right, Mr. Beck?

4              MR. BECK:  That's right, Your Honor.

5              MS. BHALLA:  Okay.  That's fine, Your

6    Honor.  Thank you.

7              THE COURT:  And I guess, just to tie it

8    down, you don't have any transcript or recording of

9    this call, because you don't know that the call ever

10   took place?

11             MR. BECK:  That's right, Your Honor.

12             MS. BHALLA:  Thank you, Your Honor.

13             And the answer to number 3 may be the same.

14   When we reviewed these Lupe Urquizo calls, we started

15   wondering if the cooperators were recording each

16   other.  If there are any recordings between

17   cooperators, we would like those disclosed.

18             MR. BECK:  The only one we have everyone

19   already knows about; that's when Mario Montoya and

20   Eric Duran were cooperating during the investigation.

21   Neither knew that either was cooperating so both

22   thought that they were recording each other covertly.

23   That's the only recorded conversation between

24   cooperators.

25             MS. BHALLA:  Okay.  Thank you, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          The only other thing I'd ask the Court is

2     we have some sort of deadline imposed for the Giglio

3     material regarding promises.

4               THE COURT:  Are you done with that work, or

5     is that ongoing?

6               MR. BECK:  That's done.  It was disclosed.

7               THE COURT:  Do you want to do it this way:

8     Do you want to give Mr. Beck a list of those that you

9     think there were threats?

10              MS. BHALLA:  Yes, we can do that, Your

11    Honor.

12              THE COURT:  Do that.  And how long would it

13    take you after you get that list, Mr. Beck?

14              MR. BECK:  There is a lot of the principal

15    agents and task force officers -- I mean, Special

16    Agent Acee, obviously, has much of the information.

17    But a lot of the other agents are out-of-pocket

18    today, so we may not be able to get that today.

19              THE COURT:  Can we put end of business on

20    Monday?

21              MR. BECK:  We can.

22              THE COURT:  Does that work for you, Ms.

23    Bhalla?

24              MS. BHALLA:  Yes, Your Honor.

25              And I will do my best to compile a list of



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    who we think the promises were made to based on our
2    review of the phone calls.  But I would also ask that
3    if the Government discovers any threats or promises,
4    or can speak with Agent Acee about that, if anything
5    that hasn't been disclosed, they disclose it, so that
6    we're not dealing with this in the middle of trial,
7    Your Honor, as we continue listening to phone calls.
8              THE COURT:  Do you assume --
9              MR. BECK:  I understand that's what the
10   Court already ordered.
11             THE COURT:  All right.  So they have a
12   continuing duty to update and supplement if they come
13   across new evidence.
14             MS. BHALLA:  Thank you, Your Honor.
15             THE COURT:  Anything else on your motion,
16   Ms. Bhalla?
17             MS. BHALLA:  No, Your Honor.
18             I would just say that I think that Mr.
19   Lowry's motion also addresses some of these issues.
20   And I don't -- the arguments sort of complement each
21   other, Your Honor.
22             THE COURT:  Okay.  Does anybody else have
23   anything on those two motions, Mr. Villa's and Ms.
24   Bhalla's, anything else on those?  Were you getting
25   up to talk, Mr. Villa?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. VILLA:  I was being summoned by Mr.
2    Mickendrow.
3              THE COURT:  Were you getting up to talk?
4              MS. DUNCAN:  I am, Your Honor.  It's not in
5    the motion, but it's related to discovery.
6              THE COURT:  Okay.
7              MS. DUNCAN:  On January 8, the Court
8    ordered the Government to review and produce Eric
9    Duran's medical records to the defense in 11 days.
10   And we haven't got than yet.  So I'm wondering what
11   the status of those records are.
12             MS. ARMIJO:  I believe the Court ordered
13   Mr. Del Valle to review them in 11 days, and then
14   provide information to the Court if he needed some
15   information from the Court.  We have not heard back
16   from Mr. Del Valle, but I will check up.  It wasn't
17   for the Government to review, because --
18             MS. DUNCAN:  That's right.  It was a
19   two-step; he was going to review them, tell the
20   Government what they were, and then we were going to
21   move forward.  So I would say, if Mr. Del Valle
22   failed to object to anything in those 11 days, I'd
23   ask the Court to order the Government to turn over
24   those records in toto today.
25             THE COURT:  Well, why don't we do this:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Why don't you put an order together ordering Mr. Del

2    Valle -- let's see if we can get him here this

3    afternoon, and let's see what the deal is.  So I'll

4    talk to Ms. Wild here in a little bit, and see if we

5    can get him to come over.  And maybe that would be

6    the best way to deal with it.  We'll see if he's

7    available.

8             MS. DUNCAN:  Okay.  Thank you, Your Honor.

9             THE COURT:  Maybe y'all have a phone number

10   or something, and you can call him, tell him the

11   Court wants him over here sometime to talk about

12   those medical records, that would be great.

13            All right.  Shall we start with the bad

14   acts?  We want to take Mr. Sanchez' -- Mr. Villa?

15            MR. VILLA:  I'm not trying to interrupt Mr.

16   Sanchez, but Mr. Mickendrow has some information for

17   the Court regarding the missing tablet that probably

18   is better for him to just convey that to you.  It

19   concerns the identity of whose tablet is missing and

20   what he's done to locate it and that sort of thing.

21            THE COURT:  All right.  Deputy Mickendrow,

22   do you want to go ahead and put that on the record?

23            DEPUTY MICKENDROW:  Yes, Your Honor.  I was

24   contacted by AUSA -- too many names running through

25   my head -- I was contacted by AUSA Armijo regarding

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Robert Martinez' tablet, and where the current

2    location of that tablet is.  I wasn't aware that it

3    had been lost.  I found out after that email that the

4    tablet had went missing sometime back in May of 2017,

5    when Robert Martinez was at Sandoval County.

6    Apparently, it had been sent to the Russ Aoki, and

7    Jennifer Oh for some updates.

8           According to the information that we've

9    tracked down, Mr. Aoki says that he sent it back to

10   Sandoval.  I've also spoken with Mr. Martinez'

11   attorney, CJ, and he states that his staff also

12   looked into it.  And Sandoval was stating that it was

13   sent to PNM.  I've reached out to PNM, and the

14   Marshal Service up in Albuquerque, to inquire if they

15   can search the offices and the areas, to see if they

16   can locate that tablet.  So we're make endeavors to

17   locate that tablet.

18           THE COURT:  Okay.  Anybody got any

19   questions or additional comments of Deputy

20   Mickendrow?  All right.  Thank you, Deputy.

21           DEPUTY MICKENDROW:  Just one final note,

22   Your Honor.  I did put up through the chain of

23   command the request for my emails regarding locating

24   the tablet.  And I just want to be clear that's what

25   the Court was requesting from me is my correspondence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    with reaching out to the different facilities in
 2    attempts to locate that tablet?
 3              THE COURT:  Correct.
 4              DEPUTY MICKENDROW:  Okay.  And I don't have
 5    a response as of yet, but --
 6              THE COURT:  Okay.  All right.  Thank you,
 7    Deputy.
 8              Let me ask the Government, with Del
 9    Valle -- is Eric Duran floating around here?
10              MS. ARMIJO:  Well, I don't want to say
11    where his whereabouts are.  But we could try to make
12    attempts to get him here.  I just texted Mr. Del
13    Valle.  I haven't heard back from him yet.
14              THE COURT:  All right.  I don't want you to
15    disclose if you don't want to, and it's not
16    necessary.  But if he can try to get Mr. Duran here,
17    so maybe we can cut through these medical records.
18    If not, I'll take Mr. Del Valle.  But it would be
19    better if his client were here.
20              All right.  Ms. Jacks, were you -- just
21    standing there?
22              MR. VILLA:  Just making sure, in case I
23    need to come back.  I think that's all I have.
24              THE COURT:  All right.  Ms. Jacks, do you
25    want to begin to tackle the Rule 404(b)?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            If I recall where we were is that the
 2   Government produced a long list of bad acts that they
 3   were going to assert.  Many of those we ruled could
 4   be used as either res gestae or part of the proof of
 5   enterprise's activity.  And then we required the
 6   Government -- y'all can correct me if I'm wrong -- to
 7   come back and see if there was anything that was --
 8   they wanted to try to get under 404(b).  And if
 9   they -- and the documents that we had earlier, we
10   decided that, even though they were labeled as bad
11   acts, to put defendants on notice, they were not
12   going to try to use any of that evidence under
13   404(b).
14            And so then, if they wanted to, they had to
15   come back and specifically highlight bad acts that
16   they wanted to get in that they -- that were not
17   evidence that they were going to use to establish
18   enterprise or racketeering activity or those things.
19   And these are the list.  These are the ones that now
20   they're using these under 404(b).
21            Have I now set the stage for these motions,
22   Ms. Jacks?
23            MS. JACKS:  I guess you have.  I'm just
24   confused because they're being called 404(b), but
25   they're also not 404(b).  I don't know.  I mean, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   don't know how they're coming in.  If they're coming
 2   in as part of the crime, then I wouldn't think they'd
 3   be 404(b).  If they're coming in as 404(b), I think
 4   the Government's notice is inadequate, because it
 5   doesn't state the purpose, or link it up in any way
 6   so the Court could make a ruling whether it is or is
 7   not 404(b).
 8             THE COURT:  Are these yours,
 9   Mr. Castellano?
10             MR. CASTELLANO:  They are, Your Honor.  And
11   this is not 404(b).  So the last time we did this, we
12   had a longer list of items.
13             THE COURT:  Right.
14             MR. CASTELLANO:  I told the Court this was
15   not 404(b) evidence.  I think only Christopher Garcia
16   had a prior drug act that would be 404(b).  So what
17   we did is we went through the acts.  The Court said
18   which ones were fair game.  And then by the 22nd of
19   January, we were supposed to tell the defense which
20   ones we were using.  The list before the Court is the
21   list that we're using from that longer list.  And
22   they're not 404(b).  They're intrinsic to the crime
23   charged.
24             THE COURT:  These are?
25             MR. CASTELLANO:  Yes -- well, they're part
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    of racketeering activity.

 2              The fourth one is related to the Javier

 3    Molina murder, and the others are all related to SNM

 4    activity, the structure of the organization and

 5    racketeering acts.

 6              THE COURT:  So, once again, these are not

 7    being used -- these are not 404(b) as to Mr. Sanchez.

 8    These are bad acts that you think that are res gestae

 9    or part of the proof of racketeering activity?

10              MR. CASTELLANO:  That's correct.

11              THE COURT:  Okay.

12              MR. CASTELLANO:  That's going to be the

13    same for each of the shorter lists we submitted to

14    each of the defendants.

15              THE COURT:  All right.  Let's take them one

16    at a time and link them up for me.  Do you want to go

17    first on providing crack cocaine?  Do you want to go

18    first, Ms. Jacks?  Or do you want to hear Mr.

19    Castellano give the justification first as the

20    proponent of the evidence?

21              MS. JACKS:  I think, based on what Mr.

22    Castellano just said, I understand number one.

23              THE COURT:  All right.

24              MS. JACKS:  But it has been brought to my

25    attention that based on plea negotiations with
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                          (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492
                                                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                    e-mail: info@litsupport.com

1    Mr. Garcia that took place over the past few days,

2    the Government may have some potentially Brady

3    information regarding this alleged act.

4            MR. CASTELLANO:  I'm unaware of any Brady

5    activity related to that act, Your Honor.

6            MS. JACKS:  My understanding, there were

7    several versions of plea agreements that were

8    negotiated with Mr. Garcia, in which this act was

9    actually -- I guess, originally contained in the plea

10    agreement, and later stricken because Mr. Garcia

11    apparently provided some information that he was

12    unaware that this situation did actually not occur.

13    He did not provide drugs to Mr. Sanchez in 2005.

14            MR. CASTELLANO:  Mr. Garcia is not the

15    source of that information, Your Honor.

16            MS. JACKS:  But information that would

17    impeach whatever the source of this information is

18    would be Brady information.

19            MR. CASTELLANO:  The statement says

20    Mr. Garcia provided crack cocaine to another person,

21    who, in turn took the drugs into the facility.  So if

22    Mr. Garcia doesn't know what that person did it --

23    we're not focusing on Mr. Garcia.  We're focusing on

24    the person who brought them into the facility, and

25    gave the drugs to Mr. Clark and Mr. Sanchez.  So that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is not just focused on Mr. Garcia.
 2              THE COURT:  I guess I'm having a hard time
 3    seeing how that would be Brady material.
 4              MS. JACKS:  Maybe I'll file a motion on it.
 5    We can go forward.  I mean, I think if during plea
 6    negotiation Mr. Garcia gives information that
 7    undermines the credibility of this assertion in this
 8    first paragraph, that that is favorable evidence to
 9    Mr. Sanchez that should be immediately disclosed to
10    him by the Government.
11              MR. CASTELLANO:  Your Honor, I don't have
12    that information.  If Ms. Jacks can tell us what that
13    information is, that Mr. Garcia claims related to
14    this, we might be --
15              THE COURT:  So you don't have any knowledge
16    that during plea negotiations anything was taken out
17    of the plea agreement?
18              MR. CASTELLANO:  I can tell the Court that
19    a number of versions went back and forth.  And I
20    don't specifically recall what Mr. Garcia said about
21    it.  So I'm asking Ms. Jacks to refresh my
22    recollection about what exactly that was.
23              MS. JACKS:  Well, my understanding is in
24    one version of the plea agreement that was sent to
25    Mr. Garcia, this paragraph was contained.  And in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  final plea agreement it was not.  So I'm assuming

2  there are marked-up versions and there were

3  discussions regarding this specific situation.

4          MR. CASTELLANO:  We can check for drafts if

5  they're out there.

6          THE COURT:  If that's the case, do you have

7  any problem producing those?

8          MR. CASTELLANO:  No.  Mr. Garcia wanted a

9  few things removed from the factual basis for his own

10 reasons.  So that's --

11         THE COURT:  But you'll look at these to see

12 if this specific allegation was removed?

13         MR. CASTELLANO:  Yes.  If Mr. Garcia had

14 something to say through his attorney about that act,

15 we can do it.  But I seriously doubt Mr. Garcia will

16 know -- he won't claim what the other person said

17 that other person did when he brought it into the

18 facility.  But we'll look.

19         THE COURT:  Okay.

20         MS. JACKS:  I would make the same request

21 as to all plea negotiations with any individual who

22 has pled.  If there are draft plea agreements that

23 were edited, I think those are fair game for

24 discovery to the defense for potential

25 cross-examination, investigation, impeachment.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Well, I do think those would

2   probably fall under Brady, if in fact, things were

3   taken out.

4          MR. CASTELLANO:  They may not be Brady at

5   all.

6          THE COURT:  They may not.

7          MR. CASTELLANO:  We may negotiate over

8   certain facts, and certain things people don't want

9   to admit in the plea agreement going out to the

10  public.  So there are any number of reasons in plea

11  negotiations why things might be added or taken away

12  from documents.

13         THE COURT:  There may be.  But if the

14  defendant was insisting they take out -- I do think

15  they could fall under Brady.  So you may need to

16  either just produce the drafts or look at them to see

17  if they could be Brady material.

18         All right.  So on the first one, you're not

19  contesting the intrinsic nature of that?

20         MS. JACKS:  Well, I understand the theory

21  of admissibility.  It's not 404(b).  They're arguing

22  it's part of racketeering activity.  So I do contest

23  the truth of it.  But in terms of the concept, I get

24  it.  And I understand as to paragraph 2.  Paragraph 3

25  I don't understand how that is any sort of evidence

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    of racketeering activity or res gestae on the

2    offense.

3              THE COURT:  All right.  Do you want to hear

4    from Mr. Castellano, then, first on that?

5              MS. JACKS:  Sure.

6              THE COURT:  All right.  Mr. Castellano?

7              MR. CASTELLANO:  Your Honor, you've heard a

8    long list of bad acts this morning related to the

9    shackling of the defendants.  And so the defense --

10   or the SNM is constantly exerting its power in the

11   corrections system.  And assaulting correctional

12   officers is one of those things.  Especially if they

13   feel disrespected.  They're not going to take the

14   disrespect, they're going to respond in kind.

15             THE COURT:  How are you going to argue, if

16   this evidence comes in, that it goes to either

17   enterprise or to racketeering activity, this

18   particular incident?  How do we know this one was in

19   furtherance of the enterprise, or was just a beef he

20   had that day with a correctional officer?

21             MR. CASTELLANO:  It's in the opening

22   statements to each of the indictments that the SNM

23   exerts its power and authority.  And if they don't do

24   so, they lose respect.  And so that's their place in

25   the prison system.  So it's a system ruled by threats

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1   and exertion of power and violence.  And that is
2   contained in the indictment.
3              THE COURT:  Well, if we don't have
4   something more that tells us whether this is related
5   to SNM activity, I'm going to exclude that bad act.
6              MR. CASTELLANO:  Well, Your Honor, I don't
7   have that report with me.  I'll take a look at it.
8   But the problem is we continue to litigate these
9   things.  The Court has already ruled this was fair
10  game.  The defense objects, and they file another
11  motion that says I strenuously object.  And then
12  we're talking about it again.  The Court has already
13  ruled.  I've already shortened that list.  This goes
14  to the defendants, and now we're taking a second bite
15  at the apple.
16             I can go back and pull reports, and if I
17  have evidence to show that it's SNM-related, I'll
18  move its admission at trial and ask the Court before
19  I do so.
20             THE COURT:  All right.  Approach before you
21  do.  And if there is something that you can bring out
22  that ties it to the SNM, then I'll reconsider.  But
23  right at the moment, let's plan on keeping it out.
24             All right.  Do you want to go to number 4?
25             MS. JACKS:  No, I'm done.  Thank you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  The rest of them you understand
 2    the theory?
 3              MS. JACKS:  I do.
 4              THE COURT:  All right.  So I'm going to
 5    deny the motion except that one issue, the one issue
 6    of the assault, I'll keep out.
 7              All right.  Let's go to Mr. Perez' motion.
 8    I think we now understand with precision what we're
 9    doing here now.
10              Mr. Villa?
11              MR. VILLA:  Thank you, Judge.  So with
12    respect to the first two, I don't have any idea how
13    these are related to the SNM or the SNM enterprise.
14    The information we have from the United States is
15    that Mr. Perez was allegedly validated in the SNM
16    sometime in 2009.
17              The first two acts are crimes, assault, and
18    resisting arrest, which I believe was a misdemeanor;
19    the second was an aggravated battery -- I think that
20    one was misdemeanor, too.  They both occurred in Eddy
21    County on the streets.  I've looked at the Bates
22    numbers that the Government refers to, and they
23    appear to be -- one incident, Mr. Perez is at a bar,
24    and he's got a warrant, and a police officer comes to
25    arrest him and he resists arrest, and has to be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

```
 1   tased.  It doesn't say anything at all about any SNM
 2   activity whatsoever.
 3           So with respect to the first two, I'd ask
 4   you to exclude those, because I don't think they have
 5   any bearing on the enterprise.  And I don't think
 6   there is any evidence that Mr. Perez submitted those
 7   in furtherance of the SNM enterprise.
 8           Number 3 is sort of --
 9           THE COURT:  Let me get Mr. Castellano's
10   response on the first two.  Mr. Castellano?
11           MR. CASTELLANO:  I'd like to do the same
12   thing here, Your Honor, approach first at trial, if
13   I'm going to move the admission.
14           The officer who tased Mr. Perez grew up
15   with him, so he may -- I haven't been able to dig
16   down further into what the officer recalls about Mr.
17   Perez, and what he knew about him as an SNM member.
18   But the person who tased him actually knows him very
19   well, grew up with him.  So I will inquire further
20   and seek to approach first, if I try to introduce
21   either number 1 or number 2.  I think they stem from
22   the same incident.
23           THE COURT:  Because those are pretty early,
24   as far as Mr. Perez is concerned, are they not?
25           MR. CASTELLANO:  I didn't hear Mr. Villa.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Did he say before Mr. Perez was validated, or did he

2   say before he became a member?

3          MR. VILLA:  Well, the information I have is

4   that he was validated by the STIU in 2009.  When he

5   became a member, I don't know what evidence the

6   Government intends to put on.

7          But, again, this is something that happened

8   at a bar in Carlsbad, you know, with an officer

9   arresting somebody who has a warrant, and that person

10  resisting arrest.  Maybe the officer did know him,

11  but I don't know what that has to do with the

12  racketeering.

13         THE COURT:  Well, I guess on the present

14  record, Mr. Castellano is willing to approach the

15  bench.  And if he doesn't have any more evidence than

16  that, I'd be inclined to exclude it.  Does that work

17  for you?

18         MR. CASTELLANO:  It does, Your Honor.  And

19  I will note there is a distinction between when

20  Corrections validates somebody and when somebody

21  becomes a member.  Those are two different things.

22         THE COURT:  That's true.  That's true.  And

23  we recognize that as well.

24         MR. COOPER:  Excuse me, Your Honor.  People

25  on the phone cannot hear Mr. Castellano.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          THE COURT:  Do you want to grab that mic,

 2   Mr. Castellano.

 3          MR. VILLA:  And I recognize there is a

 4   difference.  But I certainly think, if the Government

 5   is going to approach, they should have some evidence

 6   to put on that Mr. Perez was even potentially a

 7   member of the gang at that point in time, while he's

 8   on the streets of Carlsbad.

 9          And number 3, I guess I'd ask for the same

10   ruling, Your Honor.  What's been provided, referenced

11   in the Bates number there, is an incident report from

12   the Corrections Department about Mr. Perez throwing

13   some food out of his sally port -- or excuse me, the

14   food port on door, and telling some other inmates to

15   do that.  There is nothing associated with that

16   discovery that the Government identifies that

17   suggests this was an SNM-related activity, or done in

18   furtherance of the SNM, as opposed to something is

19   that happens in prison maybe every week.

20          THE COURT:  Thoughts on that, Mr.

21   Castellano?

22          MR. CASTELLANO:  Yes, Your Honor.  There

23   will be testimony by other cooperators that they have

24   done things like this in the past, once they get

25   upset -- let's say the SNM gets locked down or they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   get disciplined in some way, there is often a

2   reaction by SNM members to -- basically, to mess with

3   the corrections officers, and fight back if they

4   disapprove of anything.

5          So the Court will also hear that members

6   often use the rules against the corrections officers,

7   and often do what they can to manipulate the system.

8   And this is one of the things they do.

9          THE COURT:  Focusing on the words "incite

10  other inmates," were there other inmates -- were

11  there other SNM members that were in Mr. Perez'

12  facility or pod, or would that have included other

13  SNM members?

14         MR. CASTELLANO:  I don't have that

15  information.  I gave the Bates stamp number to Mr.

16  Villa.  So the information has been provided to him.

17  If it's in 2010, I'm assuming it's an SNM pod.  But

18  I'd have to go back and look at that report.  But

19  that was provided to Mr. Villa.

20         THE COURT:  I guess I would think, if the

21  other inmates included SNM members, that would be

22  enough to allow the Government to bring that one in.

23  If it doesn't -- and there is no -- if it's just

24  other inmates, then I lean toward not including it.

25         MR. VILLA:  I think that's right, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Honor.

2           But I think we have to be a little more

3    detailed.  I think Mr. Castellano just said that

4    cooperating witnesses will say sometimes, you know,

5    We were SNM members and sometimes we did that.  And

6    if someone is going to testify to this specific

7    incident was that or could have been that, or there

8    is some evidence to suggest that's it, that's fine.

9    But I think we have to be careful the cooperating

10   witness saying:  We do this stuff sometimes, and then

11   the Government puts this evidence on without any

12   information that this specific incident was because

13   of that.  Then I think the Court needs to exclude the

14   evidence.

15           THE COURT:  Well, I think, if Mr. Perez --

16   if Mr. Castellano establishes that Mr. Perez and the

17   other inmates that are being talked about include SNM

18   members, I think that would be enough for me to allow

19   this to come in.

20           MR. VILLA:  I think if there is testimony

21   of someone with personal knowledge that that's what

22   was going on at this period of time, I guess I would

23   just like to hear the foundation that the Government

24   lays.

25           THE COURT:  How is this evidence going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    be presented, Mr. Castellano?  Is it --
 2              MR. CASTELLANO:  I'm not sure.  I'd have to
 3    go back and look at that document, Your Honor.
 4              THE COURT:  It may be a corrections officer
 5    or something?
 6              MR. CASTELLANO:  Yes.  If this is a report
 7    from the New Mexico Corrections Department, it should
 8    be a corrections report.  And like I said, Mr. Villa
 9    has the Bates stamp number.  I pointed him directly
10    to the report.
11              THE COURT:  But the actual evidence at
12    trial will be a corrections officer?
13              MR. CASTELLANO:  Corrections officer and/or
14    an SNM Gang member.
15              THE COURT:  All right.  We'll just have to
16    maybe ask him what the source of his information is.
17    But if there is SNM people that are properly included
18    under "other inmates," I'd be inclined to allow it.
19    Otherwise, probably keep it out.
20              MR. VILLA:  All right.
21              THE COURT:  All right.  Anything else on
22    your motion then?
23              MR. VILLA:  That's all.
24              THE COURT:  Thank you, Mr. Villa.
25              All right.  Why don't we take our lunch
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    break.  Be back in about an hour, and see if we can

2    get a good afternoon done.

3              (The Court stood in recess.)

4              THE COURT:  All right.  Let's go on the

5    record.  Every client has got a lawyer.  Look around

6    the room, make sure that everybody has got an

7    attorney.

8              All right.  I understand there is a

9    conflict, potential conflict issue with Mr. Mitchell

10   having represented Mr. Sanchez.  So who should go

11   first?  Do you want to go first, Mr. Jewkes?

12   Ms. Jacks?

13             Let's wait till Mr. Armenta gets here.

14             (A discussion was held off the record.)

15             THE COURT:  All right.  Mr. Jewkes,

16   Ms. Jacks, do you want to explain the issue for me?

17             MR. JEWKES:  Yes, Your Honor.  The

18   Government raised the issue that, years ago, Gary

19   Mitchell, who now represents Jerry Armenta, a

20   cooperating witness for the Government, represented

21   Mr. Sanchez for a period of a few years handling

22   Daniel and Ronald Sanchez' appeal to the state court

23   in New Mexico, appellate court.  And that's why the

24   Government brought this to the attention of the Court

25   regarding whether or not there is a conflict of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Mitchell representing Jerry Armenta.

2              THE COURT:  All right.  And I understand

3    that Mr. Sanchez will not waive any conflict?

4              MR. JEWKES:  He says he does not want to

5    waive the conflict -- potential conflict.

6              THE COURT:  Have you evaluated in any way

7    the conflict and determined whether one exists or

8    not?

9              MR. JEWKES:  Yes, Your Honor.  Quite

10   frankly, I don't see a major conflict there.

11   Although Mr. Sanchez and Mr. Mitchell did have

12   privileged communications, confidential

13   communications, where they discussed, I understand,

14   facets of Mr. Sanchez' life.

15             THE COURT:  All right.  Anything further,

16   Mr. Jewkes?

17             MR. JEWKES:  No, sir.

18             THE COURT:  All right.  Thank you,

19   Mr. Jewkes.

20             Ms. Armijo, I probably should have started

21   with you.  I had forgotten that y'all were raising

22   this issue.

23             MS. ARMIJO:  Your Honor, we did issue -- we

24   did make defense counsel aware of it years ago,

25   because we believed that, if anybody feels that they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have a conflict, then they should be the ones to
 2    raise the issue in a timely manner.  And that wasn't
 3    done.  Our belief was that -- what was told was it
 4    was a nonissue, so to speak.
 5            Mr. Sanchez, amazingly, waived the issue as
 6    to the same case that Billy Blackburn represented him
 7    on.  And he waived that issue as to Billy Blackburn.
 8    But now, as to Mr. Mitchell, he doesn't want to waive
 9    the issue.
10            I don't believe -- the incident I don't
11    believe, but I'll let Mr. Mitchell speak to that --
12    is SNM related.  I believe he represented him on
13    appellate issues.  It's nothing that we're going to
14    be bringing in.  So it's our contention that it's not
15    the same subject matter, so that there is no
16    overlapping for the Court to decide, much like the
17    Court made the decision with the Marc Lowry conflict,
18    we think that this issue is a potential issue to
19    bring to the Court's attention to make a ruling on
20    for any 2255 issues.  But we don't feel that it is
21    the same subject matter which would warrant a waiver
22    from Mr. Sanchez.  But I will let Mr. Mitchell speak
23    on that.
24            THE COURT:  All right.  Thank you, Ms.
25    Armijo.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Mr. Mitchell.

 2              MR. MITCHELL:  Good afternoon, Your Honor.

 3              THE COURT:  Mr. Mitchell.

 4              MR. MITCHELL:  Thank you.

 5              Twenty-three years ago, after Mr. Daniel

 6   Sanchez and his brother, Ronald Sanchez, were

 7   convicted in a jury trial of first degree murder and

 8   attempted first degree murder, I was asked to handle

 9   the appeal, which is a direct appeal to the New

10   Mexico Supreme Court.  I was not the trial attorney.

11   And in 1994, I was requested to begin that action,

12   and did by obtaining the record, the pleadings filed

13   in the district court case, which was out of -- Judge

14   Pope was the district judge.  It was out of Valencia

15   County.  And venue had been changed to Cibola County,

16   in Grants, where the trial was held.

17              So, in reviewing the pleadings and

18   obtaining the record, we perfected a notice of

19   appeal.  For whatever reason, I think I was the one

20   who ended up filing it.  And then, in those days, the

21   rule hadn't changed, so I did the docketing statement

22   as well from the record of the trial.

23              The issues raised centered around the

24   district attorney's victim advocate's sister sitting

25   on the jury was one major issue.  Another issue was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the demand for an expert witness by the defense.

2    Even though they didn't have one, they wished to have

3    one and obtain a continuance.  And a third issue was

4    prosecutorial misconduct during closing argument.

5    And, of course, a fourth one raised was ineffective

6    assistance of counsel.

7            So I took that issue to the Supreme Court,

8    filed the brief in chief, and filed the reply brief

9    to the State's answer brief.  And in July of 1995,

10   the New Mexico Supreme Court issued a decision.  The

11   Court can find that at 901 P.2d 1995 -- or I mean,

12   178 -- or 1995 NMSC 53.

13           The opinion of the Supreme Court sets forth

14   the facts in rather good detail.  It did not involve

15   a gang shooting.  It involved a fight at a local bar,

16   and an uncle of Daniel and Ronald's, perhaps being in

17   that fight, and the repercussions of what took place

18   with a family named Lovato after that evening.

19           Their defense rested upon an alibi defense.

20   And according to the record in this case, they called

21   a number of witnesses, particularly familial

22   witnesses, that gave them an alibi.  And it went to

23   the jury.  The defense attorneys representing at

24   trial filed a motion for a new trial which set forth

25   the major issues, that we ended up litigating before

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                     1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1    the Supreme Court.

2              So after 1995, because of the decision,

3    which gave a pretty subtle hint that perhaps at some

4    point in time some more evidence would be obtained,

5    and a writ of habeas corpus filed, another attorney

6    took that over -- I believe, Mr. Blackburn -- and

7    that's an issue that you've decided, and that's been

8    before you already.  As I recall, Mr. Blackburn took

9    that over and handled that writ.

10             I lost contact with everybody after 1995,

11   when another attorney took over the petition for writ

12   of habeas corpus.  So my last contact in this case,

13   frankly, I believe was in 1995.

14             I attempted to go back and search my files

15   to see what contact I had, if any, directly where I

16   sat down and went over the facts with anybody.  But

17   to be perfectly honest, what I have left in my files

18   are the appellate pleadings that I did, and the

19   decision of the Supreme Court, things of that

20   particular nature, which are on record before the

21   Supreme Court.  That's what I can indicate to the

22   Court.

23             As to any conversations directly with

24   either client, I don't have a record one way or the

25   other.  In 1995, it was the year that we switched

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    everything over to -- in my office -- to computerized

2    systems, and started to go paperless after that,

3    except for the hard copies of the files that were

4    used for court, which we destroy after we've scanned

5    those files in.  This file was not scanned into that

6    computer system.  So that's the big break.  So I have

7    no information one way or the other of any calls, or

8    any conversation or notes regarding conversations,

9    nor do I, frankly, recall those conversations.

10            But the opinion of the Supreme Court tracks

11    what I said in the docketing statement, as it relates

12    to the facts, and it discusses each issue that I

13    raised on appeal for both Daniel and Ronald Sanchez.

14            THE COURT:  So it was a bar fight and that

15    was the conviction?

16            MR. MITCHELL:  It was.  It involved -- I

17    can tell you by looking at the -- I don't want to get

18    the uncle's name incorrect.  It involved an uncle

19    that had been at a bar in Los Lunas.  Yes, his name

20    is immaterial at this time, but it did not involve --

21    these were all young men at the time -- and it did

22    not involve gang affiliation.  It involved, according

23    to the State's representation, an incident with the

24    Lovatos at a bar called Red Carpet, where they got

25    into a fight.  And then, according to the State, they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  claimed that Ronald and Daniel then came over in a

2  car -- there was a dispute about the car -- but came

3  over in a car to the Lovatos' house, and a gunfight

4  ensued.

5          THE COURT:  Did it ever come up -- was

6  there any discussion -- was there anything to

7  indicate it was SNM related?

8          MR. MITCHELL:  No, sir.  There is nothing

9  in any document that I have with any indication on

10  that, and there is nothing in the record, and there

11  is nothing in the Supreme Court decision either.

12          THE COURT:  And you don't recall any

13  conversations with Mr. Sanchez that's not in the

14  court pleadings or filings?

15          MR. MITCHELL:  The facts that I've given, I

16  do not.  That doesn't mean -- I'm not saying they

17  didn't have it, because I normally talk to my

18  clients.  But, frankly, I just don't recall anything.

19  This was a -- what I would call a family type

20  dispute, and, of course, Ronald and Daniel claimed

21  that they were not there.  But the State's witnesses

22  said otherwise.

23          THE COURT:  All right.

24          MR. MITCHELL:  I guess I should add that I

25  have advised my client, Jerry Armenta, of this issue,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and he and I talked about it some time ago, and more

2    recently.  He didn't see a conflict.  The Government

3    knew about this.  Mr. Blackburn and I knew about it.

4            The first time I'd seen Daniel again after

5    1995, I believe, was here in Las Cruces in the first

6    time we all gathered together in the courtroom.  And

7    he greeted me by just nodding his head and waving,

8    and I did the same, and that was the extent of it.

9            THE COURT:  But you recalled representing

10   him as soon as you saw his name or saw him in the

11   courtroom?

12           MR. MITCHELL:  No.  What happened is, in

13   the state case -- which most of the attorneys are

14   familiar with, the way this started out -- I was

15   representing Mr. Armenta, court-appointed through the

16   New Mexico Public Defender Department in a murder

17   case out of Southern New Mexico Penitentiary.

18           And during that time period, part of that

19   file included an interview of Mr. Daniel Sanchez by

20   authorities.  And in that interview there was nothing

21   to indicate that he saw or heard anything, even

22   though he was in the pod and in a particular

23   position.  We had not -- because of the way we were

24   working on that case, we had not conducted an

25   interview of him.  So at the time, I didn't think too

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   much about it, although we keep an extensive client

 2   list -- because I do so much work in the criminal

 3   world -- keep an extensive client list.  But we had

 4   nine Daniel Sanchezes listed.  So at that time, I

 5   didn't give much thought to it, until the federal

 6   case came about, and then, in conversations with the

 7   counsel, I realized I better go back and check and

 8   see if this was the same Daniel Sanchez that I

 9   represented, and indeed it was.

10          THE COURT:  But when you made that

11   realization, you underwent an analysis and determined

12   that you didn't --

13          MR. MITCHELL:  There was no conflict.  I

14   did.  I went back and pulled everything I could get

15   my hands on that we had; reread the Supreme Court

16   decision; reread my docketing statement, which is

17   generally what everything stems from; reread the

18   motion for a new trial that had been filed.

19          And in those days, I don't believe there

20   was a transcript of that trial.  It meant I had to

21   listen to tapes, which is the way we were doing it in

22   state court at the time.  And if there was a

23   transcript, I don't have that transcript of that

24   trial anymore.  So I suspect it was tapes,

25   audiotapes, which is the way I would have done it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          But that's what I was hired for was to
 2   perfect the appeal, which I did.
 3          THE COURT:  All right.  Stand right there,
 4   Mr. Mitchell.  And Mr. Sanchez, you need to listen to
 5   your counsel here.  They may not want you to speak,
 6   and if they don't, I think they are the ones that
 7   should make that call, but I do give you an
 8   opportunity to say anything that you want to say to
 9   the Court.
10          MS. JACKS:  Your Honor, I would like to say
11   something to the Court.
12          THE COURT:  You may.
13          MS. JACKS:  I'd like to ask Mr. Mitchell a
14   few questions.
15          I'll say right from the start, we don't
16   contest the issue about the homicide, it had nothing
17   to do with any sort of gang activity, and that was
18   never our position.  So do you want me to ask him
19   from here?
20          THE COURT:  Yeah, direct them to the Court.
21   And, Mr. Mitchell, if you'll answer the questions.
22          MR. MITCHELL:  I certainly shall.
23          MS. JACKS:  Mr. Mitchell, during the time
24   that you represented Mr. Sanchez, was he housed in
25   New Mexico State Prison?
```



SANTA FE OFFICE                                                                        MAIN OFFICE
119 East Marcy, Suite 110                                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492
                                                                                        1-800-669-9492
                          PROFESSIONAL COURT                          e-mail: info@litsupport.com
                          REPORTING SERVICE

```
1              MR. MITCHELL:  I do not know for sure.
2              MS. JACKS:  Well, he was convicted of
3    murder in the State of New Mexico, right?
4              MR. MITCHELL:  That's correct.
5              MS. JACKS:  Where else would he be housed
6    but the state prison?
7              MR. MITCHELL:  Well, let me point out that
8    I've done a lot of that work over the years, and
9    there was a time period when we were transferring
10   people out of the penitentiary, and making trades
11   with other states.  And I would assume, but I do not
12   know enough specific facts to remember, but I would
13   assume he was housed in the New Mexico State
14   Penitentiary.
15             MS. JACKS:  Or some other prison.
16             MR. MITCHELL:  Yes.  He was in custody.
17             MS. JACKS:  He was in custody.
18             MR. MITCHELL:  Oh, yes.
19             MS. JACKS:  And did you meet and confer
20   with him on multiple occasions while he was in
21   custody to discuss his case?
22             MR. MITCHELL:  I do not think so.  If we
23   talked, it was one time in person.  But this was an
24   appeal that depended upon the record.  As I recall,
25   certain family members contacted me.  And that's the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   way I became involved.  And in those days, we tried
 2   to make arrangements to visit with one another,
 3   either in person or via the telephone.  It was a
 4   little bit more lax in those days, so we could get
 5   more things done than we can today.
 6           MS. JACKS:  Did you continue to represent
 7   Mr. Sanchez, after the appeal, on the petition for
 8   habeas corpus?
 9           MR. MITCHELL:  I have nothing in my files
10   to indicate I continued to represent him.  And I
11   honestly believe that they contacted Mr. Billy
12   Blackburn, and he did the writ or he worked on that
13   aspect.
14           MS. JACKS:  Mr. Mitchell, do you recall
15   that, in fact, you did agree to file a habeas
16   petition for Mr. Sanchez and missed the filing
17   deadline?
18           MR. MITCHELL:  There was no filing deadline
19   on a writ of habeas corpus in the State of New
20   Mexico.  And there hasn't been ever, not at least
21   during modern times, a deadline.
22           But talking about a writ of habeas corpus
23   would not have been unusual for me after we got the
24   decision from the Supreme Court, because I would have
25   recommended that they pursue that, and that they file
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    a petition for writ of habeas corpus because of

 2    language contained in the Supreme Court decision.

 3              MS. JACKS:  Did you interview witnesses to

 4    the homicide that had not been interviewed by trial

 5    counsel?

 6              MR. MITCHELL:  I cannot speak to that one

 7    way or the other, because I do not have those

 8    records, and I do not have a personal recollection of

 9    interviewing witnesses.  Most of the time, I would

10    assign an investigator to do that, so that I don't

11    end up with a conflict with these witnesses.  And if

12    I had an investigator at the time, that would have

13    been one of two people.  And I haven't contacted them

14    to see if they remember doing -- well, one is

15    deceased, and the other still works as an

16    investigator.  But I haven't contacted him to see if

17    he did any work on the case.

18              MS. JACKS:  Specifically, Mr. Mitchell, did

19    a third suspect come to your office and confess to

20    committing the homicide that Mr. Sanchez and his

21    brother were convicted of?

22              MR. MITCHELL:  I do not recall that, no.  I

23    do not recall that.  I mean, if -- frankly, I would

24    have to rely upon the person that filed the writ,

25    because if that had occurred, I would have given them
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that information, had I had it.  I just don't have
 2    enough in the background to tell you one way or the
 3    other.
 4              MS. JACKS:  During the time that you
 5    represented Mr. Sanchez, and Mr. Sanchez was in
 6    prison, did Mr. Sanchez ever confer with you about
 7    any sort of incident in the prison where he was
 8    charged with a new case?
 9              MR. MITCHELL:  I do not have a recollection
10    of that.  And my files at my office do not reflect
11    that I represented him again except in this case.
12              MS. JACKS:  Did Mr. Sanchez, in fact,
13    confer with you and attempt to retain you on a case
14    filed in Los Lunas, New Mexico, sometime during the
15    period of your representation of him -- oh, sorry,
16    Las Cruces -- sometime during the period of your
17    representation?
18              MR. MITCHELL:  A civil rights action?  Was
19    it a criminal case or a civil rights action?
20              MS. JACKS:  A criminal case.
21              MR. MITCHELL:  He may have or he may not
22    have.  I simply do not have anything in my files to
23    indicate that.  That doesn't mean he didn't talk to
24    me about it.  It means I just don't have any record
25    of it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MS. JACKS:  I don't have anything further
 2   right now.
 3              THE COURT:  Anything further, Ms. Jacks?
 4              MS. JACKS:  No, not right now.
 5              THE COURT:  Does Mr. Sanchez want to say
 6   anything?
 7              MS. JACKS:  If I may just have a moment.
 8              THE COURT:  Certainly.
 9              MS. JACKS:  I have one more question for
10   Mr. Mitchell, I'm sorry.
11              Mr. Mitchell, with respect to the habeas, I
12   asked you about a State filing deadline.  Did you
13   miss a federal filing deadline from the ADPA Act on
14   Mr. Sanchez' habeas that expired in 1996, one year
15   after his appeal was over?
16              MR. MITCHELL:  I have nothing in the files
17   to indicate one way or the other.
18              MS. JACKS:  And when you stopped
19   representing Mr. Sanchez, did the representation then
20   go directly to Mr. Blackburn?
21              MR. MITCHELL:  I know Mr. Blackburn took
22   over representation at some point in time, and I
23   thought he worked on the habeas.  But that's just
24   from memory.
25              MS. JACKS:  And he took the case over from
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    you?

2            MR. MITCHELL:  That's what my memory

3    reflects.  I do not have a file to verify that one

4    way or the other.

5            MS. JACKS:  Thank you.

6            THE COURT:  Anything else, Ms. Jacks?

7            MS. JACKS:  What I would represent to the

8    Court, based on my conversations with Mr. Blackburn,

9    is that Mr. Blackburn took the case over sometime in

10   2002, and filed the federal habeas in 2002, and he

11   took that representation over from Mr. Mitchell.  So

12   it's our information that Mr. Mitchell continued to

13   represent Mr. Sanchez until that time period.

14           The other thing is that one of the claims

15   in the habeas was, in fact, ineffective assistance of

16   Mr. Mitchell, based on the fact that the habeas

17   petition was not filed within one year of the appeal

18   being finalized, and therefore, missing the

19   federal -- the new federal deadline under the ADPA.

20           The other thing, is I think during that

21   time period, Mr. Sanchez' recollection is that he did

22   confer with Mr. Mitchell during the entire time

23   period of that representation that lasted well past

24   1995.

25           And the Court -- all the Court has to do is

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1   look at the indictment in 1613 case, charging the
 2   racketeering conspiracy.  There are numerous acts
 3   that are alleged in that indictment regarding prison
 4   misconduct.  And, specifically, one of them was
 5   actually filed as a case here in Las Cruces.
 6           THE COURT:  Well, is there anything in your
 7   mind, though, that indicates that this matter, and
 8   those matters, even if you extended them beyond what
 9   Mr. Mitchell's memory is, are the same matters or
10   substantially related?
11           MS. JACKS:  Well, it's my understanding
12   that Mr. Sanchez conferred with Mr. Mitchell
13   regarding certain prison misconduct that is, in fact,
14   at issue in this -- in the related case, 1613, which
15   is alleged, at least by the Government, to be SNM
16   racketeering activity.
17           So I think that's the problem we have.  I
18   mean, every time Mr. Sanchez has done anything wrong
19   in prison, the Government claims that that's
20   racketeering activity in furtherance of the SNM
21   enterprise.  And based on the information that
22   Mr. Jewkes and I have, Mr. Sanchez conferred with Mr.
23   Mitchell in attorney-client conversations about
24   certain of that misconduct that is, in fact, alleged
25   in the indictment.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Well, that's a little bit
2    different, though, the question of substantially
3    related.  I mean, it doesn't seem that the matters in
4    which Mr. Mitchell did testify -- or did represent
5    Mr. Sanchez are the same or substantially related.
6              MS. JACKS:  Well, if you are talking about
7    the appeal of the murder case, I would agree with
8    you.  But I also think that, when somebody is
9    represented by an attorney, and then confers with
10   that attorney confidentially about representation on
11   some new matter, that that is protected by
12   attorney-client privilege, and that is substantially
13   related, based on what my information is and what the
14   indictment is.
15             THE COURT:  Well, I think that's a
16   different test.  I mean, whether it's -- there is the
17   component of confidential information.  But I'm
18   not -- but that's not the same as the substantially
19   related test.
20             MS. JACKS:  And I agree.  And I think
21   that's for the Court to determine.  All I can do is
22   provide the Court with information about the nature
23   of the reason that the conflict -- or what Mr.
24   Sanchez is not going to waive, or what we believe to
25   be a conflict.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And to respond to Ms. Armijo's point, Mr.
 2    Sanchez did not have confidential communications with
 3    Mr. Blackburn.  And that was why -- and Mr. Blackburn
 4    is not representing a cooperator.  And that's why Mr.
 5    Sanchez felt comfortable in waiving that conflict.
 6    But it is a different light with Mr. Mitchell.
 7              THE COURT:  All right.  Does Mr. Sanchez
 8    want to say anything?
 9              MS. JACKS:  No.
10              THE COURT:  All right.  Ms. Armijo.
11              MS. ARMIJO:  Your Honor, I guess they're
12    not contesting that the matter that he represented
13    him on, from 1992, is not SNM.  And there is clearly
14    a difference of opinion as to the conversations.
15              But the important thing here, which is
16    different from the Mike Davis situation, is that that
17    team -- and Mr. Davis was going to be -- and
18    initially he said he personally wanted to
19    cross-examine his former client.  In this situation
20    Mr. Mitchell is not going to be cross-examining Mr.
21    Sanchez at all.  His client has pled.  And so there
22    is no issued as to him using any information he
23    obtained to cross-examine his former client, because
24    it's just not going to exist.
25              But we believe that it's not substantially
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   related, and also given the fact that his client pled

2   and is not going to be cross-examining him, that it

3   is -- that the Court should not excuse Mr. Mitchell.

4   And additionally -- I guess that's all I have, Your

5   Honor.

6           THE COURT:  All right.  Thank you, Ms.

7   Armijo.

8           Ms. Jacks.

9           MS. JACKS:  I just have one thing to add

10  that I forgot to bring to the Court's attention.  I

11  think there has been some insinuation that somehow

12  Mr. Sanchez has sat on this, or didn't bring it to

13  the attention of the prosecution.  It's my

14  recollection -- and I just conferred with

15  Mr. Jewkes -- that prior to my appointment on this

16  case, in February of 2016, Mr. Jewkes had brought the

17  issue to Ms. Armijo, I believe very shortly after the

18  arraignment in December of 2015.

19          THE COURT:  All right.

20          MS. JACKS:  So it wasn't brought to the

21  Court.  But the prosecution team was made aware of

22  situation.

23          THE COURT:  All right.  Anyone else on this

24  issue?

25          Well, I'm going to glance at the rules on

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

 1    confidential information.  But it doesn't seem to me

 2    that they are the same matters -- that Mr. Mitchell

 3    did not represent Mr. Sanchez on the same matter or

 4    matters that he's representing Mr. Armenta.  And they

 5    don't seem to be substantially related.

 6              I'll have to look at the confidential

 7    information prong of that.  But it seems to me that

 8    we're not in any danger of Mr. Mitchell using any

 9    confidential information in an unfair way, or any way

10    that would prejudice Mr. Sanchez, because he simply

11    doesn't, at the present time, have any of that

12    information.  He's not going to be cross-examining

13    him.  So it's hard to imagine a situation where Mr.

14    Sanchez would be prejudiced.

15              So at the present time, I'm going to deny

16    any request to disqualify Mr. Mitchell.  I'll take a

17    little bit of look at the rules on the confidential

18    information side, but I think that my analysis will

19    be sufficient to satisfy that prong.

20              I do want to engage in a colloquy with Mr.

21    Armenta to make sure that he doesn't have concerns.

22    So, Mr. Armenta, I'm going to ask you some questions

23    here to make sure that you're comfortable with Mr.

24    Mitchell continuing to represent you.  Do you

25    understand that you have a right to a conflict-free

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    counsel?  By that I mean that you have a right to a

2    counsel that represents only you, doesn't have any

3    divided loyalty, or anything that would keep him from

4    being a fully zealous advocate for you?

5              THE DEFENDANT:  Yes, I do.  I understand.

6              THE COURT:  And do you understand, you've

7    listened here in the courtroom to the facts

8    surrounding Mr. Mitchell's previous representation of

9    Mr. Sanchez, which I've determined was in an

10   unrelated criminal case.  Do you understand all those

11   facts?

12             MR. ARMENTA:  Yes, sir.

13             THE COURT:  Is there anything you need to

14   talk or find out or ask about to make an informed

15   decision about what that prior case was?

16             MR. ARMENTA:  No, I do not.  I don't see

17   any conflict or anything that would get in the way

18   there.

19             THE COURT:  All right.  But you understand

20   Mr. Mitchell's prior representation of Mr. Sanchez?

21             MR. ARMENTA:  Yes.

22             THE COURT:  And do you understand that Mr.

23   Mitchell may have duties of loyalty stemming from his

24   previous representation of Mr. Sanchez?  I mean, he

25   was a former client, so he has some duties of loyalty



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to him?

2              MR. ARMENTA:  Yes, I do.  I understand.

3              THE COURT:  And do you understand that Mr.

4    Mitchell's duties to Mr. Sanchez may impact -- I

5    don't see how they would at the present time, but we

6    don't know how things develop -- may impact his

7    representation of you, should he recall some

8    pertinent information that he learned during the

9    course of his representation of Mr. Sanchez; do you

10   understand that something like that could happen?

11             MR. ARMENTA:  Yes, sir.

12             THE COURT:  And do you understand there is

13   a risk that Mr. Mitchell will have to choose at that

14   time between his loyalty to Mr. Sanchez and his duty

15   to zealously advocate for you?  He may have to make a

16   decision if something pops up in his head or some

17   information comes to the attention of the Court.

18             MR. ARMENTA:  I understand.

19             THE COURT:  And if Mr. -- I'm trying to

20   think of any scenario here.  There is not going to be

21   a point where I can see that Mr. Mitchell may be

22   forced to cross-examine Mr. Sanchez.  But if, for

23   some unforeseen reason that scenario occurred, do you

24   understand his duty of loyalty to Mr. Sanchez might

25   affect his performance on your behalf?

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                     (505) 843-9494
FAX (505) 843-9492                                                                 FAX (505) 843-9492
                                                                                   1-800-669-9492
                                                                                   e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1              MR. ARMENTA:  Yes, sir, I do.

2              THE COURT:  Additionally, Mr. Mitchell's

3    duty to Mr. Sanchez may affect some strategies,

4    arguments regarding relative culpability, or

5    something like that.  I'm just trying to think

6    through with you how it could come about.  Do you

7    understand that something like that could come about?

8              MR. ARMENTA:  Yes, sir.

9              THE COURT:  Mr. Mitchell, I had floating

10   around a waiver, a written waiver.  Do you have that

11   waiver?  Has anybody given you a copy of it?

12             MR. MITCHELL:  I do not have that waiver.

13   I can obtain one or procure one myself.

14             THE COURT:  Several have the waiver that I

15   used here, and they're on file.  Maybe Ms. Standridge

16   can dig one up before you leave, and you can go over

17   it and have Mr. Armenta sign it.

18             MR. MITCHELL:  Yes, sir.

19             THE COURT:  Mr. Armenta, knowing that a

20   conflict may arise in the future, and the risk

21   associated with such a conflict, do you still wish to

22   waive that conflict and continue with Mr. Mitchell as

23   your attorney?

24             MR. ARMENTA:  Yes, I do.

25             THE COURT:  So the form that I'll ask you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to look at is going to basically say that.  And, if

 2   you agree that's the case, if you'll sign that

 3   document, and Mr. Mitchell will then file it with the

 4   Court.  Okay?

 5           MR. ARMENTA:  Okay.

 6           THE COURT:  All right.  Anything else on

 7   that matter?  All right.  Thank you, Mr. Mitchell.

 8           MR. MITCHELL:  Thank you, Your Honor.

 9           THE COURT:  All right.  I think we were

10   about to take up the motion in limine to exclude

11   purported 404(b) evidence that Mr. Herrera had filed.

12   And I believe that is two incidents.  I don't have

13   the letter, but it's in the body of the motion.

14           Mr. Maynard, are you going to argue these?

15           MR. MAYNARD:  Yes, Your Honor.

16           THE COURT:  All right.

17           MR. MAYNARD:  And I think that the issues

18   are similar to another motion that was heard just a

19   while ago --

20           THE COURT:  Okay.

21           MR. MAYNARD:  -- this morning.

22           First of all, the letter, the notice that

23   we got from the Government the other day referred to

24   bad acts.  It didn't say specifically 404(b).  But

25   since it just said generically bad acts in the motion
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that I drafted, and that was filed, I referred to

 2   404(b).

 3           THE COURT:  It looks like they're saying

 4   they're not coming under 404(b).  They're going to

 5   use this evidence to prove racketeering activity and

 6   enterprise.

 7           MR. MAYNARD:  From what I was hearing this

 8   morning, and in thinking about it, I'm thinking

 9   that's the theory.  I'm not sure.  And that can be

10   clarified this morning.  But it involves an act --

11   alleged possession of a shank, and assault on a

12   corrections officer in 2006 -- which is about eight

13   years before the charged offense -- and attempting to

14   introduce drugs into the prison facility in 2011.

15           And attached to the notice that we received

16   from the Government pursuant to our earlier request

17   for notes -- and of course, this was discussed in

18   December at another juncture, when there was a long

19   list.  The Government responded with a shorter list.

20   And it was accompanied by documentation from the

21   Department of Corrections.  And from my review of the

22   documentation, I don't see any connection or mention

23   of the words or initials Syndicato de Nuevo Mexico,

24   or SNM.  And I just don't see how this could be

25   shown -- I don't see any showing of foundation that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    it's an enterprise act.  So it's that issue again.

2         THE COURT:  Mr. Castellano, do you want to

3    address those two?

4         MR. CASTELLANO:  Yes, Your Honor.  Let me

5    find the specifics here.  That particular act, if I

6    recall correctly, the corrections officer opens up

7    the -- I think the food port, and Mr. Herrera strikes

8    out at the corrections officer, and ends up cutting

9    the officer on the leg, which would be consistent

10   with our theory about violence in the SNM and

11   corrections officers.

12        But also on the paperwork there is an

13   indication that the advocate for Mr. Herrera on that

14   incident was Robert Martinez, who is an SNM Gang

15   member.  So usually in the Corrections Department,

16   when there is disciplinary action, the inmates can

17   have an advocate for them.  There is another inmate

18   who, in essence, serves as an attorney to represent

19   them.  And in that case, he picked another gang

20   member who was Robert Martinez, also known as "Baby

21   Rob."  So there is another tie there regarding the

22   SNM.

23        In addition, I think, if I recall

24   correctly, Mr. Martinez and Mr. Herrera, on another

25   occasion, agreed to assault corrections officers.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    They spoke together, and each one said, I'll assault

2    one, you assault the other one.  And that's an

3    occasion different from the one on June 30th of 2006.

4    So they knew each other.  They associated together.

5    And on another occasion agreed to assault corrections

6    officers.

7              THE COURT:  Well, I guess I would be

8    inclined to let you bring out the -- the

9    representation by an SNM Gang member was number 1, or

10   was that number 2?

11             MR. CASTELLANO:  That was the first one.

12   So the June 30, 2006 allegation regarding possession

13   of shanks, I believe Mr. Herrera had shanks under his

14   desk, and hidden in his shoes.

15             And the other issue was shanks in the SNM,

16   is that they were routinely required or expected to

17   carry shanks in order to basically do battle; either

18   defend themselves or attack other inmates.  So it is

19   not unexpected that SNM Gang members would have

20   shanks.

21             And then, in that same incident, he elected

22   to have Mr. Martinez serve as his advocate.  I can

23   tell from the paperwork it looks like Mr. Herrera may

24   have waived the hearing.  So I don't believe that Mr.

25   Martinez actually ever did show up as an advocate,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    because I think the disciplinary hearings were

 2    waived.

 3          But then there is -- on another occasion

 4    those two were together and each agreed to assaults,

 5    assault a corrections officer.

 6          MR. MAYNARD:  If I may --

 7          THE COURT:  Yeah, it sounds like that might

 8    be enough for this to come in, if they're going to

 9    get that evidence in that all SNM members are

10    required to carry a shank.

11          MR. MAYNARD:  Well, now, there is a big

12    leap in terms of some implications or inferences to

13    be made from that allegation.  And I don't see a

14    showing in this particular case that the possession

15    of the shank was an SNM activity on his part.

16          What I am hearing is that the bad act, or

17    rather the enterprise act, was choosing another gang

18    member to be representing him.  That is another

19    stretch entirely, and brings in, by reference, a bad

20    act that is probably not an SNM activity.  I mean, I

21    haven't yet heard this theory.  And it may come out

22    in testimony, I guess, if the Court allows it.  But

23    is it an SNM activity or an enterprise activity to

24    have another member of the SNM or a member of the SNM

25    to represent you in a disciplinary proceeding?  I

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   think not.

 2            THE COURT:  Well, it may just show

 3   membership, how they work together, those things.  I

 4   think it might be marginal evidence of that.

 5            MR. MAYNARD:  But it is going to make it

 6   difficult to put in the enterprise act of having an

 7   SNM member represent you, without making reference to

 8   the alleged bad act, bad enterprise act.

 9            THE COURT:  I well, I guess I'm inclined to

10   think that if the Government is going to put on

11   evidence that everybody is required to carry a shank,

12   and there is evidence that Mr. Herrera carried a

13   shank, that that's enough for that evidence to come

14   in, that incident.

15            MR. MAYNARD:  Now, I know this is territory

16   for cross, arguably, but does that mean if he doesn't

17   have a shank, he's not a member?  I mean, that's a

18   very broad claim on the part of the Government.

19            THE COURT:  All right.  Do you want to talk

20   about the second incident any?

21            MR. MAYNARD:  That involves allegations of

22   introducing drugs into the facility.  Again, I don't

23   have any information from the specifics that were

24   disclosed, that is the Department of Corrections'

25   documentation that accompanied that disciplinary
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    proceeding, that it was gang related.

2              And, again, this is getting very slippery

3    here, where the Government is going to allege,

4    without a clear foundation, I believe, that every

5    time a bad act is committed, there is a clear green

6    light to make the inference that it's a gang

7    activity.  But I'm in the dark about the connection.

8              THE COURT:  Well, I think they're going to

9    prove that's a major activity of the SNM members is

10   their drug activity.  So I'm going to allow those two

11   occurrences, the Government to prove those up.

12             MR. MAYNARD:  Your Honor, I would just ask

13   that the Court insist on a foundation before the

14   evidence of the acts themselves start to occur.

15             THE COURT:  All right.  Lay some foundation

16   for them.  But I'm inclined to allow them, if you

17   represented accurately what you're going to do with

18   them.

19             MR. CASTELLANO:  We will, Your Honor.

20             And as a preview for the Court, Carlos

21   Herrera was known be someone who could bring drugs

22   into the facilities.  And one of the people who

23   helped him bring drugs in was his mother.  She was

24   known to many gang members to be somebody who would

25   help supply the gang with drugs.  And on this

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   occasion, his mother was implicated at the facility.
 2   So she was also there at the time.  So it's
 3   consistent with what other people will say about Mr.
 4   Herrera bringing drugs in for the organization, and
 5   his mother also being involved.
 6            In addition, in the bad acts I mentioned
 7   earlier regarding Mr. Baca, he, himself, comments
 8   that another member owed Mr. Herrera $800 for drugs.
 9   And in that conversation he's identified as "Lazy,"
10   his a/k/a in this case.  So Mr. Baca himself also
11   acknowledges that Mr. Herrera is somebody to whom
12   others owe money for drug dealings.  That would be
13   corroborated through a foundation, and as well as
14   through other evidence in the case.
15            THE COURT:  All right.  Well, I'm inclined
16   to deny the motion to exclude the incidences as to
17   Mr. Herrera.
18            MR. MAYNARD:  Your Honor, would the Court
19   at least ask that the Government approach the bench
20   before actually going into this chapter?
21            THE COURT:  Do you have any problem with
22   that, Mr. Castellano?
23            MR. CASTELLANO:  No, I don't think so.  But
24   the issue may be the order of presentation of
25   witnesses.  I need to see where this witness is.  It
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   may actually be backwards.  But we can approach
 2   first.  But it may be that the other witnesses later
 3   confirm that Mr. Herrera is responsible for drug
 4   dealing on behalf of the enterprise.  But we can
 5   certainly try to approach first.
 6           THE COURT:  All right.  I'm inclined to let
 7   them in.  So the Government can approach, but I've
 8   seen and heard enough evidence here to think that
 9   that evidence should come in.
10           All right.  It's not next on the list, but
11   I think that the next -- the last 404(b) is Mr.
12   Baca's.  Do you want to go ahead and tackle that one,
13   Ms. Duncan?
14           MS. DUNCAN:  Thank you, Your Honor.
15           THE COURT:  Some of these look much more
16   tied to SNM activities, and there are some here that
17   you're not contesting and others that you are.
18           MS. DUNCAN:  So, yes, Your Honor, so we
19   deny all of them.  But for purposes of today, we're
20   objecting to just a handful.
21           THE COURT:  Okay.
22           MS. DUNCAN:  The very first one we object
23   to this, as relates to a murder for which Mr. Baca
24   was convicted in 1989.  The Government's letter
25   suggests that it was Mr. Baca, another SNM Gang
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    member, who murdered another inmate.  That's not what

2    the evidence shows at all, Your Honor.  It shows that

3    Mr. Baca and another person were accused of killing

4    an inmate.  That other person was acquitted of the

5    crime.  There is no evidence that it was at all gang

6    related.  It appears to have been a disrespect issue,

7    and may have even been in self-defense, according to

8    some of the Government's own witnesses.  So this is

9    horribly prejudicial because it's a prior murder

10   conviction.  And it has no connection to any of the

11   charges here.  So this is really pure 404(b)

12   evidence, not substantive evidence, and it should be

13   excluded.

14           THE COURT:  Mr. Castellano, are you going

15   to be able to tie both Mr. Baca and the other

16   defendant to the SNM Gang on this?

17           MR. CASTELLANO:  I'm less sure about the

18   other inmate.  I think we can tie Mr. Baca into it.

19   He actually has a conversation with Eric Duran on the

20   recordings where he admits to the murder, and lays it

21   out.  So it's actually an admission by him, where

22   he's telling another SNM Gang member about the prior

23   murder.

24           And going back to something I didn't cover

25   with Mr. Herrera, because we moved past it.  But "an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    association-in-fact enterprise requires a purpose,

2    relationships among those associated with the

3    enterprise, and longevity sufficient to permit the

4    associates to pursue the enterprise's purpose."  So

5    it's important to note people tell certain people in

6    the SNM, who are other members, about things they've

7    said and done before.  So that goes to the

8    relationship among those associated with the

9    enterprise.  And the age of the conduct also helps to

10   establish the longevity of the enterprise sufficient

11   for them to pursue their purposes.

12           So there are at least two parts of an

13   association-in-fact enterprise that are covered by

14   this type of conduct.

15           THE COURT:  Well, going back to the Baca

16   1989 murder, what evidence are you going to have that

17   ties this to the gang and its activities?

18           MR. CASTELLANO:  I have to go back and look

19   more closely at it.  But one of them includes

20   disrespect by itself.  Respect is a big deal in

21   prison.  It's a big deal with the SNM.  And it's not

22   uncommon for people to disrespect others and suffer

23   the consequences for it.  And even if it was merely

24   about disrespect, this is one gang member telling

25   another gang member that someone disrespected him,

SANTA FE OFFICE                                            MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                       (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

```
 1   and he killed him over it.  So that would certainly
 2   be covered there.
 3            And, once again, in terms of membership
 4   among those in the enterprise, this is a conversation
 5   between two SNM Gang members about prior acts of
 6   violence.
 7            THE COURT:  Well, if there was no other
 8   proof by the Government other than the conversation
 9   that Mr. Baca had, so it's not tied to a specific
10   incident, dates or times, other than what Mr. Baca
11   said, do you have any problem with that?
12            MS. DUNCAN:  Absolutely, Your Honor.  I
13   think bringing in irrelevant evidence of a murder
14   that Mr. Baca was found guilty of, is horribly
15   prejudicial.  And it has no relevance to anything in
16   this case.  I've read through that conversation.  He
17   does talk about it.  He's been convicted of it.  And
18   it has nothing to do with the SNM.  It has nothing to
19   do with the allegations here.  So, yeah, absolutely,
20   it should not be admitted.  It's just pure 404(b) to
21   show that he's a violent person.
22            THE COURT:  Well, do you need to refresh
23   your file to see if there is any more here to tie it
24   to the SNM?  Because I'm just not hearing it at the
25   present time.  If it was two SNM Gang members, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
1    might be inclined to allow it.  But it seems that he
2    may be backing off of saying it was another SNM Gang
3    member that did it with him.
4              Let's keep it out at the present time.  If
5    you come back with stronger evidence showing the tie,
6    I'll take another look at it.  But right now, I don't
7    have a lot to link it up with SNM.
8              MR. CASTELLANO:  We'll approach first, Your
9    Honor.  We will revisit that issue.  Mr. Beck
10   believes maybe some of the witnesses he spoke to know
11   that to be an SNM hit.  But we will approach first.
12   I understand the nature of this.  But, of course, a
13   murder is racketeering activity.  So if we can tie it
14   to the SNM, we'll bring that up with the Court.
15             THE COURT:  I think if you've got witnesses
16   that say it's an SNM hit, I'll probably allow it.
17             MS. DUNCAN:  Your Honor, so far, that
18   evidence has not been disclosed to us.  I would just
19   note that Mr. Lowry and I have the transcripts from
20   Mr. Baca's trial, and there is no mention of gang
21   activity.  There is no mention of the SNM.  We talked
22   to Mr. Baca's trial counsel.  She said there was no
23   evidence or mention of the SNM.  That wasn't the
24   prosecution's theory.  The prosecution's theory was
25   it was just a prison murder over disrespect and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    drugs.

2              THE COURT:  Do you know about this other

3    fellow, this other inmate?  Was he an SNM Gang

4    member?

5              MS. DUNCAN:  I do not believe that he was,

6    Your Honor.  I don't know if he became one later.

7    But I think at the time he was not.  And as I

8    mentioned before, he was acquitted of this particular

9    crime.

10             THE COURT:  Well, we'll keep it out at the

11   present time.  But I indicated what kind of evidence

12   I'm looking for to get it in.

13             MS. DUNCAN:  Your Honor, we also challenge

14   admission of the second paragraph.  This is an

15   allegation that, in 2009, Mr. Baca possessed heroin.

16   The reports that were disclosed to support this are

17   reports of law enforcement who say that they found

18   Mr. Baca in his cell incoherent, and appeared to be

19   under the influence of heroin.  This evidence has no

20   relevance to a fact in dispute in this case.  Again,

21   it's just intended to portray Mr. Baca as a bad

22   person, as someone who uses drugs.  This has nothing

23   to do with the SNM or the charges.  So we'd ask you

24   exclude it.

25             THE COURT:  Is there evidence that's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    clearly coming that is going to show Mr. Baca's drug
 2    use?
 3            MS. DUNCAN:  There is another allegation
 4    here in the Government's 404(b) letter about his drug
 5    use.  I think it's actually the very next paragraph.
 6    So, on December 15, 2009, that he possessed heroin,
 7    and on December 28, 2009 that he possessed heroin,
 8    and attempted to destroy it.  So his use of heroin or
 9    being under the influence of heroin -- so five years
10    before any of the acts alleged in this case just has
11    no relevance, and those acts are not alleged to be
12    drug-related, so this is just pure bad acts.
13            THE COURT:  Well, I guess I get a little
14    concerned about a sanitized view of Mr. Baca that
15    doesn't tell the jury in one form or another of his
16    drug use.
17            MS. DUNCAN:  My point about his drug use --
18    if he was testifying, and he was using drugs at the
19    time when he was testifying, I could see that as
20    being relevant.  But the fact that he used heroin
21    five years before any of the charged conduct in this
22    case, it's not relevant.  And all it does is
23    prejudice the jury against Mr. Baca.
24            THE COURT:  Well, so much of the SNM Gang
25    activity is drug related.  To not have any evidence
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that he used or possessed drugs concerns me some.
 2              MS. DUNCAN:  But I think this evidence
 3   isn't that he was dealing drugs for the SNM.  This is
 4   just evidence that Mr. Baca was found under the
 5   influence of heroin.  So I understand the point that
 6   Your Honor is making, but it's not relevant to a fact
 7   at issue in the case.
 8              THE COURT:  Mr. Castellano.
 9              MR. CASTELLANO:  I'm looking at the defense
10   filing.  If you'll give me one second, Your Honor.
11              THE COURT:  Sure.
12              MR. CASTELLANO:  I believe the defense
13   itself is going to make his drug use relevant.  I'll
14   return to this in a second.  But in their filing
15   where they wanted us this morning to disclose certain
16   CIs in Document 1673-3, I think one of their defenses
17   is that people were trying to kill Mr. Baca, and
18   therefore maybe he was or wasn't a leader.  But in
19   that document it says that people complained about
20   him, because they thought all he was concerned about
21   was getting high.  And so in terms of his leader and
22   other people's views of him as a leader, his drug
23   issue was certainly an issue, and had to do with the
24   power struggles from time to time when people
25   criticized him.  So that would be an issue that I
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                         1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    think the defense themselves are going to raise.
 2              Going back to the December 28, 2009
 3    possession of heroin.  On that occasion, what
 4    happened was Mr. Baca, I think, was in his cell.  The
 5    corrections officers were going to confiscate
 6    materials.  And I believe it was three other SNM Gang
 7    members were starting to run interference for Mr.
 8    Baca.  And it was obstructing.  He told them to stand
 9    down because it wasn't worth it and they all
10    complied.  So this is an issue where he's about to
11    get busted by COs, other SNM members run interference
12    for him, and then they follow his orders to stand
13    down.
14              THE COURT:  This incident, this drug --
15              MR. CASTELLANO:  Yes.  December 2009, I
16    believe, is the incident.
17              And the other issue with drugs in prison is
18    that the SNM largely controlled the drug trade in
19    prison.  So if you had substances or a large amount
20    of substances, it often reflected that you had access
21    to drugs.  And many times for those who brought drugs
22    in, they were expected to give a cut of those drugs
23    to higher ups in the organization.
24              THE COURT:  Well, it seems to me that one
25    probably ought to come in.  I may not allow them to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     bring in the other one, unless it's as robust with

2     SNM connections as that one.  But it seems that one

3     probably ought to be allowed to come in.

4           MS. DUNCAN:  Your Honor, I just would like

5     to clarify.  I think the Government is putting too

6     much weight on that second incident.  The reports

7     indicate that Mr. Baca was getting busted, and other

8     inmates came in, and Mr. Baca was telling other

9     inmates, "Back off, don't touch the officer; leave

10     the officer alone."  So I don't know how that's

11     evidence of gang membership or leadership, that he's

12     telling people to stop -- you know, to not harm or

13     interfere with the correctional officer.  So I don't

14     think the evidence can support the weight that the

15     Government is putting on it.  But, you know, it is

16     very prejudicial to Mr. Baca given that marginal

17     probative value.

18           THE COURT:  All right.  I'm inclined to

19     allow that one.

20           What's your next one?  Which one, Mr.

21     Castellano, is the one that you just described where

22     he told them to back off?  Was it the 28th or was it

23     the 15th?

24           MR. CASTELLANO:  That's the December 28,

25     2009 incident, and the December 15, 2009.  I believe

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Billy Cordova was one of the other people who was

2    there and suspected of using drugs.  So that was,

3    once again, another SNM Gang member.

4              THE COURT:  If you don't have the

5    robustness on number 2, let's take 2 out, and let's

6    do 3.  That will make your point.  All right.

7              MS. DUNCAN:  The next one we challenge,

8    Your Honor, is number 5.  This is the allegation.

9    This is taken from a recording between Mr. Baca and

10   Eric Duran regarding -- some people wanted to hit an

11   inmate named KS for a variety of reasons.  They were

12   talking about other inmates protecting KS, and sort

13   of offering -- Mr. Duran and Mr. Baca offering

14   opinions about it.  The Government characterizes it

15   as Anthony Ray Baca said he wanted KS hit because he

16   was a suspected informant.  I think that, again, is

17   put too strongly.  This evidence is really

18   prejudicial, and it's not incredibly probative.

19   Because it's two people talking about something that

20   didn't happen, offering opinions about the merits of

21   it.  So we would ask the Court to exclude it.

22             THE COURT:  Mr. Castellano?

23             MR. CASTELLANO:  It is probative.  There is

24   talk of informants and hits and drug debts.  Those

25   are all SNM activity.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          It also identifies Mr. Herrera, as I stated

2     earlier, as somebody who is owed a drug debt for as

3     much as possibly $800, which is no small amount in

4     prison.  And so all of that would be clearly

5     relevant.  It would also refer to racketeering

6     activity, because any murders or attempts to murder

7     or conspiracies to murder would be racketeering

8     activity, in addition to drug trafficking.

9          THE COURT:  Well, I guess I'm inclined to

10    agree that has enough of connection to the

11    Government's story of the SNM Gang to allow that.  So

12    I'll overrule objection to it.

13          MS. DUNCAN:  The next is paragraph 6.  This

14    is again, from a recording of Mr. Baca with Eric

15    Duran.  And in that recording Mr. Baca is talking

16    about an incident where Benjamin Clark, who is one of

17    the Government's witnesses, wanted to get at another

18    inmate whose name is "Scooby."  And so Benjamin Clark

19    was supposed to send Suboxone into the next pod, and

20    he expected "Scooby" to get it.  So he was going to

21    pass it under the door, and "Scooby" was supposed to

22    pick it up.  Instead of "Scooby," it was this guy

23    name "Psycho."  "Psycho" takes the Suboxone, hands it

24    off to someone other than Mr. Baca.  It turns out

25    that there wasn't enough Suboxone in the envelope for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   everyone.  So, ultimately, this person, "Psycho,"
2   gets hit.  I think he got cut, or his throat was cut
3   by someone else.  So Mr. Baca is simply relaying this
4   story to Mr. Duran.  It's not Mr. Baca ordering this.
5   This wasn't Mr. Baca's drugs.  I mean, he's just
6   telling Duran something that happened in prison.  But
7   it's a prejudicial story.  It doesn't have any
8   relevance to things that Mr. Baca did, other than
9   witness this and tell the story.  So we'd ask the
10  Court to exclude it.  This is really a prior bad act
11  for Benjamin Clark, not for Anthony Ray Baca.
12           THE COURT:  Well, then how does it hurt
13  you?
14           MS. DUNCAN:  I think it's a violent story.
15  I mean, it's Mr. Baca relaying this violent story.
16  It has no probative value, but it's linking him to
17  violence in an unfair way.
18           THE COURT:  Mr. Castellano.
19           MR. CASTELLANO:  Mr. Baca is laying out the
20  rules of the game.  Here we have an issue where one
21  gang member, Mr. Clark, is giving drugs to Mr. Baca,
22  which is Suboxone.  That alone is relevant.  And then
23  when the drugs are short, there is a dispute, and one
24  member hits another member.  So this is violence
25  within the gang.  It shows a dispute over drugs.  And
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   it also reflects a violation of the rules.  And

2   because somebody had been shorted, there were

3   consequences for that action.  So that is a

4   reflection of the SNM Gang.

5           THE COURT:  Well, I tend to agree.  It

6   looks to me like it's connected to enterprise

7   activities and to racketeering activities.

8           MS. DUNCAN:  I think by people other than

9   Mr. Baca, Your Honor.

10          And I would also note that at the very

11  beginning of this Mr. Baca tells Mr. Duran that he

12  thought this was all for nothing; that this was a

13  great injustice that was perpetrated on "Psycho"

14  because of the lies or the manipulations of Benjamin

15  Clark.  So, in essence, it's not what Mr. Baca did,

16  it's what other people did.  It is really

17  prejudicial.  It will consume some time for us to put

18  this into proper context for the jury so that they

19  don't unfairly hold it against Mr. Baca.  So whatever

20  probative value it might have is substantially and

21  unfairly outweighed by that prejudice.

22          THE COURT:  I'm going to overrule the

23  objection to number 6.

24          MS. DUNCAN:  The next objection, Your

25  Honor, we have is to paragraph 7.  It's, again, an

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492
                                                      1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

1    Eric Duran recording.  And the allegation is that Mr.

2    Baca said that SNM member Carlos Herrera and JR, "BB"

3    had made mistakes and both members would be hit.  As

4    a preliminary matter, it's not Mr. Baca who made the

5    comments about SNM member, Carlos Herrera.  That

6    would be Eric Duran.  It was Eric Duran talking about

7    Mr. Herrera making mistakes and needing to be

8    disciplined.  So for that reason, I mean, we would

9    exclude it because it's about Eric Duran and not

10   Anthony Ray Baca.

11           And with respect to "BB," the recording

12   isn't that -- it's not -- the recording is not Mr.

13   Baca saying I'm ordering that these people be hit.

14   Again, he's talking about something that had

15   happened, that he had heard was going to happen to

16   "BB".  So it's dragging Mr. Baca into other people's

17   actions and seeking to hold those actions against him

18   unfairly.  And we'd ask the Court to exclude it.

19           THE COURT:  Mr. Castellano.

20           MR. CASTELLANO:  Once again, there is a

21   discussion of SNM, the SNM Gang, the relationship

22   among its members, and consequences for violation of

23   any rules.  And the fact that it's a discussion

24   between members, once again, goes to the

25   association-in-fact enterprise and relationships

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    among those associated with the enterprise.  It's

2    actually a requirement that we have to prove.

3          And, actually, I know Mr. Herrera wants

4    that type of testimony to come in, because then it

5    makes it look like he s not involved in the Molina

6    murder, because any mistakes he made according to

7    their defense, that Mr. Herrera was not involved in

8    the Molina murder.

9          But other than that, this is once again

10   discussion of SNM Gang rules, and if people make

11   mistakes, they get hit.

12         MS. DUNCAN:  Your Honor, Mr. Castellano

13   keeps saying this is a conversation between two gang

14   members.  That's just not true.  It's a conversation

15   between Mr. Baca and a government informant who is

16   soliciting information from Mr. Baca, trying to get

17   Mr. Baca pumped up, and -- right, so I think there is

18   that part.  This is not two guys just talking.  This

19   is an informant intentionally trying to elicit

20   incriminating information from Mr. Baca and asking

21   him questions intended to pump him up to make him

22   seem more like a leader.

23         And with respect to Carlos Herrera -- and

24   I'm not going to speak for his team, but I think that

25   also goes to the severance that we were discussing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   this morning.
2            But, ultimately, this is a really
3   prejudicial portion of the conversations.  It's
4   relevance is minimal, and we'd ask the Court to
5   exclude it.
6            THE COURT:  Well, I think it's relevant and
7   I do think it's probative, and I don't think it's
8   unfairly prejudicial.  So I'll overrule objection to
9   number 7.
10           MS. DUNCAN:  Our next objection would be to
11  paragraph 11.  It's, again, a conversation between
12  Mr. Baca and Eric Duran.  They're talking about a hit
13  on an alleged SNM member, RB.  This inaccurately
14  summarizes the conversation between Mr. Duran and Mr.
15  Baca.  In fact, what they discuss is that this hit
16  was ordered by Angel.  So it's not relevant to any --
17  to Mr. Baca's conduct this case, and for that reason
18  we'd ask the Court to exclude it.  It's just dragging
19  in a conversation about general -- about other
20  people's conduct in a way to paint Mr. Baca in a
21  negative light.
22           THE COURT:  All right.  Mr. Castellano.
23           MR. CASTELLANO:  This is the same argument,
24  Your Honor, regarding violation of SNM rules and
25  consequences for violations.  And we had discussions
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of informants being hit.  I mean, it's alleged in the

2    indictment that the SNM engages in violations of 18

3    USC Section 1512 and 1513, as well as 1503.  1512 and

4    1513 relate to interfering or influencing witnesses,

5    or retaliating against witnesses.  And 1503 deals

6    with the obstruction of justice.  So any time the

7    gang is doing anything against an informant, it's

8    consistent with what we allege in the indictment and

9    what we have to prove as part of the racketeering

10   activity.  So, once again, it's a violation of gang

11   rules and consequences.

12            MS. DUNCAN:  Your Honor, I would just

13   respond.  If it is a violation of gang rules and

14   consequences, it's by someone else.  I mean, it's

15   conduct alleged by Angel, Leonard Lujan, and

16   "Football Fred," not by Mr. Baca.

17            THE COURT:  Well, the allegation is that,

18   Mr. Castellano, is that Mr. Baca ordered this;

19   correct?  That's what you're going to prove is that

20   he told RB that this was -- that RB was an informant,

21   and ordered an SNM Gang members to hit him?

22            MR. CASTELLANO:  That's the allegation we

23   have as an overt act in the RICO indictment.  It's

24   Overt Act 226, I believe.

25            THE COURT:  I'm inclined to allow that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MS. DUNCAN:  And, Your Honor, I would just
2     ask that the Government re-review -- I believe that
3     this is from the transcript at 0730, or the recording
4     is 0730.015.  The transcript is page -- it's DeLeon
5     6064.  It's clear from this transcript that they're
6     talking about Angel calling this alleged hit, and
7     ordering Mr. Lujan and "Football Fred" to do the hit.
8     So I would ask the Court, I'd ask the Government that
9     before this be played, that we revisit this issue.
10    Because I would certainly don't want this to come in
11    if it's not Mr. Baca, which it's not.
12             THE COURT:  Well, you'll review it before
13    trial?
14             MR. CASTELLANO:  We'll review it, Your
15    Honor.
16             THE COURT:  And if it is Mr. Baca, then you
17    can admit it.  But if it's not Mr. Baca, then alert
18    the Court, and we'll revisit it.
19             All right.  Ms. Duncan.
20             MS. DUNCAN:  Let's see, Your Honor, there
21    were a couple more that we had objections to, I think
22    based on the Court's earlier rulings.  I'll just
23    point them out.  The first is paragraph 16, which is
24    an allegation about a conversation between Mr. Baca
25    and his girlfriend.  I think -- well, partly the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   summary by the Government is inaccurate between
 2   what's being discussed.  But the allegation is he's
 3   discussing a hit on someone, and something about
 4   narcotics.  We would argue that -- we'd ask that this
 5   be excluded based on its incredible prejudicial value
 6   and it's low relevance to the allegations in this
 7   case.
 8           And the same would be true of paragraph 20,
 9   which is an allegation that Mr. Baca ordered another
10   SNM Gang member to threaten the family of a
11   cooperating witness in a murder investigation.  It's
12   an extremely prejudicial evidence, and its probative
13   value is substantially outweighed by the danger of
14   that unfair prejudice.
15           THE COURT:  Anything you want to say for
16   the record on those, Mr. Castellano?
17           MR. CASTELLANO:  No, I don't think there is
18   much to say about those, Your Honor.  Especially the
19   one regarding the -- well, basically hitting or
20   threatening a cooperator in this case, who was Mr.
21   Armenta, according to the recordings.  So I think
22   that speaks for itself.
23           THE COURT:  I'll overrule the objections to
24   16 and 20.  Others, Ms. Duncan?
25           MS. DUNCAN:  That's all we have, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Honor.

2           THE COURT:  All right.  Thank you, Ms.

3    Duncan.  So I think I granted in part and denied in

4    part, but largely denied the objections to those.

5           All right.  Let's go to the objections to

6    the Government's proposed voir dire.  Let me see if I

7    can find the Government's voir dire.  Let me look at

8    my notes here.  I guess, as to the allegations here,

9    I'm going to ask you at the beginning about the case.

10   I think y'all agreed on a statement of the case that

11   I'm going to read.  I'm going to ask them if they

12   know anything about this case.  I guess the

13   Government is wanting to go a little further on that,

14   and see if, after they give more information about

15   the indictment, whether anybody knows anything about

16   the case.  I guess, if the Government wants to use

17   its time for that purpose, I guess I don't see an

18   objection to that.  It's kind of their business

19   whether they want to spend it on trying to plumb a

20   little deeper and see whether anybody knows anything

21   about the case.  I think we're going to probably

22   spend a good chunk of time here at the bench going

23   over with some of the jurors that have had some

24   exposure to this case.  So I guess I'm not inclined

25   to sustain the objections to paragraph 1 through 13.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I know you've got a separate one as to 12, but I'm

2    inclined to overrule the objection.

3            MR. VILLA:  Your Honor, I think if the

4    Government wants to recite the charges to some

5    degree, we might be able to live with that.  But the

6    way that it's drafted is, you know, reading the --

7    each count, the co-defendants charged in each count,

8    the monikers of each defendant and co-defendant.  I

9    mean, it's almost essentially a complete recital of

10   the second superseding indictment.

11           And I don't think it's proposed, but I

12   certainly would suggest that the Government not be

13   permitted to dive into some of the things that were

14   the subject of a motion to strike surplusage.

15   They're not proposing to do that in their voir dire.

16           But, for instance, if you look at paragraph

17   7, it essentially reads the entire Count 6 as it

18   would read in the indictment.  And I suppose the

19   Government is entitled to read the nature of the

20   charge, or reiterate the nature of the charge.  But

21   including all the defendants and the co-defendants

22   and their monikers, I think the Government should be

23   limited to just the defendants.  If it wants to ask

24   about co-defendants who might testify, I think they

25   can do that, when it comes to naming witnesses.  But

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                         e-mail: info@litsupport.com

 1   I think just rereading each count in the indictment

 2   is unnecessary to get to where the Government wants

 3   to go.

 4            THE COURT:  All right.  Who is handling for

 5   the Government?  Mr. Beck.

 6            MR. BECK:  That's me, Your Honor.

 7            THE COURT:  Mr. Beck.

 8            MR. BECK:  I think that's fine.  We don't

 9   intend to get into any of the surplusage in the

10   indictment.  We might read some of the charges and

11   some of the defendants' monikers.  There are only

12   four defendants.  We'll read some of the other

13   defendants just to make sure that -- I mean,

14   depending on what Your Honor does, just to make sure

15   that no one knows any of the other co-defendants.

16            THE COURT:  Here's what I'll do, is I'll

17   let you introduce your clients at the beginning of

18   the voir dire.  And then, at some point, we're --

19   pretty shortly thereafter, each side should be

20   prepared to mention any witnesses that they're going

21   to be calling or may be calling, so we can find out

22   if any of the jurors know any of the potential

23   witnesses.  So that's what I'll do I guess on that

24   score.  Doing that, then, what do you need out of

25   these 12 paragraphs?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          MR. BECK:  As I said, I think really what
 2   we need is to talk about, you know, the other
 3   defendants, make sure they don't know, and just
 4   orient the jury to the charges.
 5          THE COURT:  When you say "the other
 6   defendants," who are you talking about?
 7          MR. BECK:  The defendants in the Trial 2.
 8   I expect we will have weeded out anyone who knows the
 9   SNM by this point.  But, if not, I think we may want
10   to do that, just to make sure that at some point one
11   of the jurors doesn't stand up and say, Oh, I know
12   that person.  I think that's a good thing to do.  And
13   I can tell you that a lot of these defendants don't
14   even know -- a lot of defendants and SNM members
15   don't even know the other defendants and SNM members'
16   names, as opposed to just their monikers.
17          So I know the defense takes the position
18   that those may be inflammatory, or what have you, but
19   that's just how those folks are known in the
20   communities in which they run.  So --
21          THE COURT:  Well, I guess I'm still not
22   seeing how to really keep it out.  It may be that, if
23   they want to use their time to explore:  Does anybody
24   know anything about this case, that's helpful to us
25   all.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. VILLA:  I think it is to a degree.  I
 2   mean, with respect to the defendants who are on
 3   trial, I don't think their monikers need to be read.
 4   If the Government is concerned that someone in the
 5   venire knows them, they're going to be able to see
 6   them, and so I think they can ask does anybody know
 7   any of these four defendants?
 8              With the people who aren't in the room,
 9   Trial 2 folks, or cooperating witnesses, that sort of
10   thing, if the Government wants to use monikers, I
11   mean I guess to some extent it's okay.  But the
12   concern that I think we have is the way it's
13   presented.  So in Counts 6 and 7, these nine
14   defendants are charged.  Well, all but one is not on
15   trial is a cooperator.  And so I don't know if it
16   needs to be presented in the way the Government wants
17   to, rather than when they list their witnesses,
18   asking the venire if they know any of these
19   witnesses.
20              Now, the one defendant who was charged in 6
21   and 7, who isn't cooperating, is not on trial,
22   Mauricio Varela, if the Government wants to ask if
23   anybody on the venire knows him, I think that's okay.
24              But the general idea of basically telling
25   the jury all the counts, all the co-defendants, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

202

1  the monikers and the defendants and their monikers

2  twice is a little bit over the top.

3         THE COURT:  Well, I guess what you're

4  saying is at least when they're listing out their

5  witnesses at trial, you don't have any problem with

6  them identifying -- well, you're saying it's okay for

7  them to mention monikers for everybody but the four

8  defendants.

9         MR. VILLA:  I think, yes, if the concern is

10  do they know the person.  Because the defendants are

11  in the room that solves the defendants' problems.  If

12  it's those not in the room, and they think maybe

13  somebody knows them by a moniker, unless somebody

14  else has a different idea, I guess the Government can

15  ask that question, in the context of this witness or

16  this person that may be involved in the case.

17         THE COURT:  Could you live with not

18  mentioning the monikers of the four defendants?

19         MR. BECK:  Honestly, I think that's a bad

20  way to go.  If they're going to have problems with

21  these defendants having monikers, we don't want them

22  on the jury.  I mean, everyone who takes the stand as

23  a cooperator is going to call these defendants by

24  their monikers.  That's going to be evidence that's

25  going to come out in trial.  If that creates a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    problem for anyone or someone at some point says, Oh,

2    my gosh "Lazy," I know "Lazy."  I didn't know him as

3    Carlos Herrera, I didn't notice him there.  But I've

4    heard my friends talk about him.  That causes

5    problems for everyone.  I think it's a good idea to

6    mention them by their monikers, and that one way we

7    know who may have a problem with people having

8    monikers or who might not.

9              THE COURT:  Well, I tend to agree.  If they

10   want to spend their time trying to make sure nobody

11   knows the people involved in this case, I think

12   that's going to be to the benefit to all of us to

13   explore that.

14             MR. VILLA:  I understand the Court's

15   ruling.  Perhaps with --

16             THE COURT:  Why don't we do this:  I think

17   it's time for our afternoon break.  So we'll be in

18   recess for about 15 minutes.  Then we'll come back

19   and pick up your specific objection to number 12.

20             MR. VILLA:  Yes, Your Honor.

21             (The Court stood in recess.)

22             THE COURT:  All right.  Do we have

23   everybody?  Every defendant has a counsel?

24             MR. COOPER:  Now we do.

25             THE COURT:  Anybody else missing a counsel?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492
                                                          e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1              All right.  Mr. Villa, if you wish to --
2              MR. COOPER:  We're missing Brock.
3              THE COURT:  All right.  We'll go back on
4   the record.  It looks like every defendant has an
5   attorney.  I'm going to mark the chart so the record
6   is clear.  The partial table of statements that I
7   passed out this morning will be marked as Exhibit A
8   to the clerk's minutes for today.  And then I'm going
9   to have Ms. Standridge pass out to all of you the
10  more expanded one that we've been working on during
11  the day, so you'll have it.  We'll mark that as
12  Exhibit B.
13             Now, objection to paragraph 12 is relating
14  to Mr. Garcia.  Do you still want to do anything with
15  12?  Is that one you want to use, Mr. Beck?
16             MR. BECK:  No.
17             THE COURT:  So we'll sustain that objection
18  and not hear it.
19             Objection to number 15.  These sort of
20  objections -- here's my proposed solution to them, is
21  if the Government could just simply say:  During the
22  trial, you will hear evidence concerning alleged
23  conspiracies to murder Javier Molina and to assault
24  Julian Romero, the Government -- both members whom
25  Government believes were part of the SNM prison gang.
```

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    So you just add that "the United States contends or

2    believes to be part of SNM prison gang."  Could you

3    live with that, Mr. Beck?

4              MR. BECK:  Yes, Your Honor.

5              THE COURT:  And I think that would maybe --

6    instead of saying "alleged," it gives them a little

7    bit to say that's what they believe.  But it also

8    takes care of them just making flat statements to the

9    jury.

10             Is that all right with you, Mr. Villa?

11             MR. VILLA:  I think that's fine, Your

12   Honor.

13             THE COURT:  All right.  Is number 16 the

14   same way?

15             MR. VILLA:  I believe it is.

16             THE COURT:  Same thing, Mr. Beck?

17             MR. BECK:  Yes, Your Honor.

18             THE COURT:  17 the same way?

19             MR. VILLA:  No, 17 is a little different.

20   I think the first sentence of 17 should be stricken.

21   And the Government is certainly free to ask:  Do any

22   of you belong to an organization that seeks to

23   promote the rights of prisoners?  But the first

24   sentence --

25             THE COURT:  If they added in front of it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



1   that it's their belief, they're going to have

2   evidence of it, and they made that, and then ask

3   about it, would that be all right with you?

4           MR. VILLA:  Well, I still think the terms

5   "powerful and violent prison gang operating in

6   federal prisons throughout United States," I'm not

7   sure that's even relevant to our case.  If they have

8   to say that at any point that the Syndicato de Nuevo

9   Mexico is a prison gang, we certainly think it should

10  be couched in the terms that the Court has just

11  stated.  But the terms "powerful and violent" and

12  operating inside and outside the prisons throughout

13  the United States, I'm not sure that's necessary

14  during voir dire.

15          THE COURT:  Your thoughts, Mr. Beck?

16          MR. BECK:  Your Honor, I mean, I think

17  there will be proof to that effect in the case.  I

18  anticipate there will be.  And I anticipate a number

19  will say that Syndicato operates in federal prisons

20  throughout the United States.  So I think Your

21  Honor's proposal is right, if we're going to say that

22  we say the Government believes that.

23          THE COURT:  Well, I think that will be my

24  solution.  They need to qualify it that it's their

25  position.  They need to own it, rather than stating

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    it as a fact.  But if they do, I think it's fine.
 2              All right.  Let's go to 28.  Let me get 28
 3    in front of me.  You're planning to go through the
 4    38, correct, that's your witness list for trial?
 5              MR. BECK:  I think -- it's not --
 6              THE COURT:  I'm sorry.  It was more than
 7    that, wasn't it?
 8              MR. BECK:  I think it's around 40.  I mean,
 9    I think we've got 38, and then maybe a couple that
10    are like in between will call and may call, probably
11    call.  So I think we intend to go through at least
12    that list of about 40 people that we will --
13              THE COURT:  It's the second list, not the
14    first list.
15              MR. BECK:  That's right, Your Honor.
16              THE COURT:  Anything else on that?
17              MR. VILLA:  No, Your Honor.
18              THE COURT:  I guess on 29, what if we
19    rewrote it a little bit?  You may hear testimony in
20    this case by expert witnesses.  I think that's fine.
21              Let's take out the "let me advise you,"
22    because it makes it sound like you're kind of
23    instructing the jury.  Let's just say, "The use of
24    expert testimony" --
25              MR. BECK:  That's fine.  I wouldn't say it
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



1-800-669-9492
PROFESSIONAL COURT                          e-mail: info@litsupport.com
REPORTING SERVICE

BEAN & ASSOCIATES, Inc.

```
 1    like that anyway, the United States wouldn't say it
 2    like that anyway.  So that's fine, Your Honor.
 3            THE COURT:  How about the next sentence be
 4    "the use of expert testimony may be proper in the
 5    context of this case," and then I think the rest of
 6    that was unobjected to.  Could you live with that,
 7    Mr. Beck?
 8            MR. BECK:  Yes, Your Honor.
 9            THE COURT:  Does that work for you, Mr.
10    Villa?
11            MR. VILLA:  Yes, Your Honor.
12            THE COURT:  And 32, I guess what the
13    defendant's main objection is they want you to add a
14    little bit more to it.  Would you have any problem
15    with it, because it --
16            MR. BECK:  Well, I think we'll probably
17    talk about this in connection with the jury
18    instructions.  I'm not sure that the cooperators'
19    agreement provides a benefit from the Government's
20    witness.  I think in many cases it may.
21            THE COURT:  Well, could we do that, that we
22    say "may" there?  So the last part would read
23    "because he's testifying pursuant to a Government
24    cooperator's agreement, that may provide a benefit
25    from the Government to the witness"?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BECK:  I mean, I think that's fine.
2    There is some folks who are testifying without an
3    agreement, and that wouldn't -- so I may say
4    someone -- you know, I mean I don't anticipate
5    reading this sentence.  So I'm not sure that it will
6    come out exactly the way they want it.
7              THE COURT:  I think it's okay for you to
8    say "he has pled guilty to an offense, or because he
9    is testifying pursuant to an agreement that" -- how
10   about just "that may provide a benefit from the
11   Government to the witness"?
12             MR. BECK:  Well, I'm worried that -- I'm
13   worried about agreeing to that, because I'm not sure
14   it adds anything.  And I don't want to run afoul of
15   the Court's order.  So what I'm saying is I don't
16   think it will be lost on the jury if someone is
17   testifying pursuant to an agreement, what that means.
18   I think they have all the right in the world, and I
19   anticipate they will clarify for the jury what they
20   believe an agreement does.  So I think it's proper
21   for them to do that in their voir dire, and for them
22   to do that in their arguments.
23             But I anticipate that the United States
24   would say, "You may hear from witnesses who are
25   testifying pursuant to a plea agreement, or you know,
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                          1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   testifying under an agreement with the Government.

 2   Will that affect your" -- and so my concern is that

 3   in the course of voir dire, where whomever is doing

 4   it doesn't read from a script, that I would run afoul

 5   of the Court's order on that.

 6            THE COURT:  Well, I think you're not going

 7   to run afoul of the Court's order.  To me, I'll just

 8   give you my opinion.  I'm not telling you I'm going

 9   to keep it.  When you say "agreement," that may work

10   for us, but for jurors who don't have the lingo down,

11   I would think you'd get more of a response if you

12   added what it is.  But I'm not going to tell you to

13   do it.

14            MR. BECK:  Okay.

15            THE COURT:  And I'm not going to script out

16   exactly what you say, because I don't want you to

17   feel like you've got to read it.  Because that's not

18   effective voir dire.  And I don't want you to think

19   you're going to get in trouble, because you're not.

20   But I will say that I think adding "agreement that

21   may provide a benefit from the Government to the

22   witness" may get you a little bit more specificity,

23   and a little better.

24            MR. BECK:  I will heed that advice and

25   commit it to memory, but if it doesn't come out --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  That's fine.
 2              I guess on number 42, I didn't have a
 3    problem with it.  This is something the Government --
 4    if I read their jury instructions, certainly assumes
 5    the burden of beyond a reasonable doubt.  But they
 6    talk to them a little bit about other things they may
 7    say.  So I didn't have a big problem with it.  Did
 8    you like the formulation, Mr. Beck, that the
 9    plaintiffs -- the defendants proposed, beyond all
10    possible doubt, or do you still like your beyond a
11    shadow of a doubt?
12              MR. BECK:  I don't have a problem -- that's
13    not the jury instruction as I understand it.  So I
14    don't anticipate that I will give them a definition
15    other than what they will be hearing from the Court.
16    So I think what Mr. Villa proposes there is closest
17    to what the jury instruction language will be.  That
18    is an area where I will be a little bit more delicate
19    what I'm saying to the jury.
20              THE COURT:  Okay.  So you're not planning
21    to use a "shadow of a doubt"?
22              MR. BECK:  No, Your Honor.
23              THE COURT:  That was your objection.
24              MR. VILLA:  Yes, Your Honor.
25              THE COURT:  Let's look then, you've got a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1     cluster here 46, 47, 48, 49, 50, and 51.  These are

2     all the CSI ones, aren't they?

3               MR. VILLA:  For the most part.

4               THE COURT:  "Notwithstanding what you see

5     on" -- do you agree that -- I never heard "beyond a

6     CSI doubt," but that's interesting.

7               The only one that sort of troubles me, Mr.

8     Beck, is 51.  "If traditional evidence of guilt in

9     this case is strong enough," I guess I don't think

10    that's the standard, "strong enough."  "Be strong

11    enough to prove the defendant guilty beyond a

12    reasonable doubt," I think if you added that, that

13    would be all right with me.  The rest of them, I

14    think are pretty typical in modern cases that they

15    explore this CSI effect with juries.

16              So I guess I'm not inclined to sustain any

17    other objection.

18              What do you think, Mr. Villa?

19              MR. VILLA:  Well, Your Honor -- and I

20    certainly think they can explore the jury's views on

21    the "CSI effect," as we call it.  I think some

22    questions I did have a problem with, "Do you agree

23    that the Government can prove its case without

24    presenting any physical evidence?"  I'm not sure

25    that's an accurate statement.  It depends on the type
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of crime and the evidence.  For instance, if all you

2    have is uncorroborated confession, you don't have any

3    other evidence, you know, that sort of covers that

4    area.  And I think it's primarily the language and

5    not the subject matter that the Government uses that

6    I think is objectionable.

7         Let's see.  You know, I agree with the

8    Court on, I think it was 51, stick to the language of

9    the Government's burden.  But, you know, for

10   instance -- let's see.

11        THE COURT:  I guess I'm a little troubled

12   by the word "traditional" in that sentence.  I don't

13   know what really traditional evidence is.  I think

14   I'd knock that out, too.

15        MR. BECK:  Your Honor, this stuff is all

16   getting into the weeds and a bit more semantic than I

17   think is necessary.  I understand -- I mean, I'm not

18   going to give the Court -- I'm not going to give the

19   venire jury instructions that are inconsistent with

20   the Court's jury instructions.  So I don't have a

21   problem taking out "traditional," and I don't have a

22   problem saying our burden is beyond a reasonable

23   doubt.

24        THE COURT:  I think the rest of those are

25   probably okay.  I think they get to explore this CSI

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    effect.  It's a pretty important issue.  I think in
 2    Albuquerque they show CSI 119 times a week now.
 3              MR. VILLA:  It's one of my wife's favorite
 4    shows.
 5              THE COURT:  Okay.  I wasn't going to say
 6    anything.
 7              MR. VILLA:  I can't watch it with her.
 8              THE COURT:  That's if you're on cable.
 9    You've got be on cable.  But isn't that remarkable?
10              All right.  Let's go to 52 and 53.  You did
11    just put there, Mr. Beck, discussion of aiding and
12    abetting, and then I think you may have done the same
13    with conspiracy.  Yeah.  What do you want to do
14    there?
15              MR. BECK:  I anticipate a hypothetical with
16    the jury, walking them through a hypothetical
17    conspiracy.  They commit a crime, and asking them if
18    they understand that those folks who maybe weren't at
19    the crime scene would be implicated in the
20    conspiracy, or aid and abet the person who robbed the
21    bank.
22              THE COURT:  Well, as long as he uses the
23    language of the Tenth Circuit's pattern instructions
24    on aiding and abetting and conspiracy, do you see any
25    problem with that, Mr. Villa?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1          MR. VILLA:  No, Your Honor.  If that's the

2     intention of what was meant in these paragraphs,

3     that's fine.

4          THE COURT:  Can you kind of track those

5     when you ask that question --

6          MR. BECK:  Yes.

7          THE COURT:  -- use the Tenth Circuit

8     language?

9          MR. BECK:  I think I've said I'll do that.

10    Yeah.

11         THE COURT:  Anything else on the

12    Government's voir dire, Mr. Villa?

13         MR. VILLA:  No, Your Honor.

14         THE COURT:  Go ahead.

15         MR. VILLA:  No, go ahead.

16         THE COURT:  Anybody else have any problems

17    they want to raise with the Government's voir dire?

18         And I didn't see any objections to the

19    defendants' voir dire; is that correct, Mr. Beck?

20         MR. BECK:  That's right, Your Honor.

21         THE COURT:  Anything else, Mr. Villa?

22         MR. VILLA:  I had a couple of matters I

23    just wanted to either flag for the Court or raise

24    now.  One is the Government filed a supplemental

25    expert notice, 1656.  And the defendants filed a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    joint response, 1671.  I know it's not noticed up for

 2    today, but it is something that we'd ask the Court to

 3    take a look at, so we can address it before the

 4    Government calls any of its experts.

 5            THE COURT:  Okay.  What we've got left

 6    is -- we could plunge into exhibit lists, we could

 7    plunge into witness lists.  We could plunge into jury

 8    instructions.  I do want to get any feedback on my

 9    proposed preliminary jury instruction before we

10    leave.  And then we've got the motions that were

11    filed yesterday, the motion to strike cooperating

12    witnesses, motion to continue the trial, and then --

13    I don't know if we've covered Mr. Sanchez'

14    supplemental memorandum sufficiently.

15            Does anybody have a problem, given what we

16    have, of going to Mr. Villa's motion, or does

17    somebody feel like we need to go to what's next, and

18    that's exhibit list?

19            MR. VILLA:  And I didn't necessarily need

20    to raise it now.  I think the Court ought to read it.

21    It was filed by Mr. Castle.  The Trial 1 defendants

22    are certainly prepared to address it.  But I just

23    wanted to put that on the Court's radar for -- if not

24    later this afternoon or early next week --

25            THE COURT:  What number is your motion?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. VILLA:  You're talking about the
 2    response on the expert notice?
 3              THE COURT:  Well, the one that you're
 4    talking about Mr. Castle filed.
 5              MR. VILLA:  1671.
 6              THE COURT:  Okay.  I'm not sure I have that
 7    and am familiar with it.  1671.
 8              MR. VILLA:  Yes, Your Honor.  It's not on
 9    the agenda.  I just wanted it to be on the Court's
10    radar.  I do have a copy if you'd like.
11              THE COURT:  Okay.  Let's maybe -- let's go
12    to the Government's objections to the exhibit list
13    first, and we might take something else up.
14              MR. VILLA:  One other issue I wanted to
15    flag before I surrender the podium, Your Honor, is we
16    understand another cooperating witness pled guilty,
17    Lupe Urquizo, and the Court has previously ordered
18    that sealed proceedings like that -- we think it may
19    be sealed, because it just happened, we haven't been
20    able to see it.  Sealed proceedings, such as the plea
21    hearing, the plea agreement, and those sorts of
22    things, the Court has already ordered those to be
23    produced in response to motions that were filed in
24    the spring.  So we're asking that the Court give us
25    the same order for Mr. Urquizo.  He is a will call in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   this trial.
 2            THE COURT:  Do you intend to produce those
 3   materials, Ms. Armijo?
 4            MS. ARMIJO:  I'm sorry, I was listening to
 5   Ms. Duncan.
 6            THE COURT:  I guess --
 7            MR. BECK:  We do.
 8            THE COURT:  Is that good enough?
 9            MR. VILLA:  That does it.  I don't think I
10   have any exhibit list.
11            THE COURT:  All right.  Ms. Duncan, if you
12   want to --
13            MS. DUNCAN:  Your Honor, I'm sorry that I
14   was distracting Ms. Armijo from what was happening in
15   the Court, but I was hoping to save some time this
16   afternoon.  Your Honor, we filed objections to the
17   exhibit list, somewhat to identify general categories
18   of objections that we have.  I haven't had a chance
19   to confer with the Government.  I know some of these
20   exhibits they're not intending to introduce, they're
21   just going to be with their witnesses.  I think if we
22   can sit down with some of the general categories, for
23   example, autopsy pictures that we objected to, that
24   we may be able to eliminate some of those objections
25   without the Court's -- I don't mean to burden the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Court.  So I was discussing with the Government
 2   perhaps over the weekend, we can confer, and then
 3   figure out what we can work out, what we can't.  And
 4   then bring up the outstanding issues to the Court as
 5   they arise.  That's just -- I think that's a better
 6   use of our time.
 7            THE COURT:  Okay.  Is that agreeable to the
 8   Government?
 9            MS. ARMIJO:  Yes, Your Honor.  I think that
10   there is a lot of things on there, as she said, we're
11   not planning on having go back to the jury
12   necessarily, but that for the record, we would be
13   referring to, and so we obviously put it on our
14   exhibit list.
15            THE COURT:  Well, you know we're going to
16   use this JERS system.  So if it's admitted, they can
17   press the button and pull it up.
18            MS. ARMIJO:  And we already provided that
19   disk today.
20            THE COURT:  You're thinking about pulling
21   some of these exhibits out, not introducing them at
22   all?
23            MS. ARMIJO:  Correct.  I think there is a
24   lot there that may not necessarily be admitted.  But
25   that instead of, if a witness is on the stand and it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   is used to refresh their recollection, or add it to
 2   the exhibit list, we already have it on there.
 3          THE COURT:  Okay.  Does anybody have any
 4   problem with letting Ms. Duncan talk to Ms. Armijo
 5   and see if they can work these out?  Ms. Jacks?
 6          MS. JACKS:  I don't have a problem with it.
 7   I guess I'm just thinking, given the Court's two
 8   juries, and essentially two trials going on at the
 9   same time, are we going to -- I think we have to keep
10   track of which exhibits go to which jury, so I don't
11   know how the JERS system works, but do we need to
12   redo the exhibit list so there is an exhibit list for
13   the Baca-Sanchez trial and then an exhibit list for
14   the Herrera-Perez trial?
15          THE COURT:  I would think the answer is
16   yes.
17          MS. JACKS:  So I guess I would also think
18   then the Government has to produce two separate
19   exhibit lists, one for the Baca-Sanchez trial, and
20   one for the Perez-Herrera trial.
21          THE COURT:  Yeah.
22          MS. JACKS:  So it probably makes sense to
23   put this off till next week.
24          THE COURT:  All right.  Seems like we have
25   an agreement to put it off, so I'll -- I will do that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    then.  So we'll put the exhibit issue back in.

2           MS. ARMIJO:  Your Honor, I'm not sure that

3    we have to have two lists, because the juries are

4    going to be very limited on what one jury will hear

5    and what one jury won't.  So I think that it would

6    be -- and I don't know, maybe that is one thing for

7    Ms. Wild to consider, if it's more confusing to have

8    two different -- an exhibit with two different

9    exhibit numbers, or just as to the items that apply

10   to one jury, we can specially mark those or note

11   those other.  But I think two exhibit lists may be

12   more cumbersome, given the limited amount of evidence

13   that's going to be separated between the juries.  So

14   I think that may be something Ms. Wild wants to weigh

15   in.  But I'm not sure.  I'll leave it to the Court.

16          THE COURT:  Well, we can talk to her about

17   it.  The thing, I guess, I would ask is the

18   defendants may have a preference on this, as to how

19   we designate that.  I mean, do you care, Ms. Jacks?

20   I mean, if we were to have -- I think what Ms. Armijo

21   is saying is we have a common witness list, and then

22   for those exhibits that are exclusive for one jury,

23   we designate those a different way.  Do you have a

24   preference?

25          MS. JACKS:  I just think at that point then

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                        1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                      e-mail: info@litsupport.com

1   what we're going to end up is having three witness

2   lists.  We're going to have the witness list, the

3   overall witness list, and then we're going to have

4   the special Sanchez-Baca exhibits and the special

5   Herrera-Perez exhibits.  I'm just thinking this

6   through.  It just seems --

7              THE COURT:  Do you have a problem with that

8   or --

9              MS. JACKS:  I just think that's sort of

10  more confusing than just having an exhibit list for

11  the Sanchez-Baca trial and an exhibit list for the

12  Perez-Herrera trial.  Then there is only two.

13             THE COURT:  Well, let me think about it.

14             MS. JACKS:  I don't know how the JERS

15  system operates, so I don't know --

16             THE COURT:  Well, there will be in

17  different jury rooms, so they will be on different

18  systems.  So I don't think we'll have a problem with

19  the JERS.  Let me give it some thought, and I'll come

20  back to you with a proposal on that.

21             All right.  Mr. Villa, I think you're

22  taking the lead on the objections to the witness

23  list.

24             MR. VILLA:  Your Honor, I think this would

25  be quick.  The objection was primarily to preserve

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                         1-800-669-9492



1   the issue that we were just discussing with exhibits,

2   that some of these witnesses are only admissible to

3   Counts 8 through 12, and some of them are only 6 and

4   7, so we were essentially just objecting to the

5   witnesses that were providing testimony in 8 through

6   12, that isn't admissible to us.  The Court has ruled

7   on the severance issue, and we'll have to probably

8   deal with the witness issue the same way we deal with

9   the exhibit issue, if we get two juries.  So it's

10  sort of a preservation placeholder.

11              THE COURT:  All right.  Do you need

12  anything from me this afternoon on that?

13              MR. VILLA:  I don't think so, Your Honor.

14              THE COURT:  Anybody else need anything?

15  How about --

16              MS. JACKS:  I think we need some guidance

17  from the Court as to whether it's going to allow the

18  testimony regarding Counts 8 through 12, which is

19  inadmissible against the Counts 6 and 7 defendants.

20              THE COURT:  Here's what I'm thinking are

21  the big categories:  The Marcantel will come in.

22  I'll give limiting instructions on that.  So I'll not

23  exclude either jury from that.  The categories that

24  Baca and Sanchez will not -- your jury will not be

25  sitting through will be the Herrera, Duncan (sic),

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    and Perez, Cordova.  Those are the big categories.
2              MS. JACKS:  Right.  I just end up saying
3    the same thing over and over.
4              THE COURT:  I know.
5              MS. JACKS:  But my only observation about
6    that is  least for the trial of Herrera and Perez, if
7    they have a separate jury, there is no reason for
8    that jury to be present when the Marcantel-
9    Santistevan testimony is presented, you know what I
10   mean?  There is no reason for them to be hearing it,
11   and then be told to disregard it.
12             THE COURT:  Well, I think the Government
13   does have problem with that.
14             MR. BECK:  Yeah, I think those are all
15   racketeering activities, and so they're all relevant
16   and admissible in the trial.  What's not admissible
17   against some defendants is hearsay.  So that's
18   inadmissible evidence.
19             MS. JACKS:  Right.
20             MR. BECK:  The counts are admissible.  What
21   I understand the Court's ruling to be is that, when
22   we play -- at least right now -- when we play the
23   recordings with the transcripts of certain statements
24   that will come in only against one or the other,
25   that's when we'll exclude the juries.  They will hear
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the admissible testimony of that evidence.  So I

2    think that's what Ms. Armijo was referring to

3    earlier, that there would be a limited portion of the

4    trials, when we will have only one jury or the other.

5             MS. JACKS:  I guess what I was referring to

6    was co-conspirator statements, because it seems like

7    the primary evidence of the Marcantel-Santistevan

8    conspiracy is co-conspirator statements that would be

9    inadmissible hearsay as to --

10            THE COURT:  If I can limit it that

11   precisely, I would be inclined to do that.  If I can

12   get away with a limiting instruction, I will.  Is

13   that -- are we saying the same thing, Mr. Beck?

14            MR. BECK:  I think so.  I mean, I think

15   that will be --

16            THE COURT:  There will be times in your

17   presentation of the Marcantel case where the evidence

18   is not -- I mean, let me see if I can put it in my

19   words, and then we'll see if everybody is agreeing.

20   You are allowed, the Government is allowed to prove

21   the Marcantel conspiracy, and use that as evidence of

22   enterprise and racketeering activity.  But there may

23   be portions of that proof that we would be saying, if

24   we were having the trial all together, that this

25   could not be considered, and that particular evidence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    we may excuse the jury so I don't have to give a
2    limiting instruction.
3              MR. BECK:  Yes.
4              THE COURT:  That's your understanding?
5              MR. BECK:  Yes.
6              MS. JACKS:  I think we're on the same page.
7              And I guess the other thing I would like
8    some ruling on is, I would argue that the opening
9    statements should be presented to the jury -- I guess
10   I think they should be separate.  So, in other words,
11   I don't think the Sanchez-Baca jury should be hearing
12   the Perez-Herrera opening statements.  And I think
13   there is potentially some tension, particularly as to
14   whether either Mr. Perez or Mr. Herrera are going to
15   pursue some idea of duress caused by Mr. Sanchez.
16   And so I think, if we're going to go forward with
17   this on Monday or Tuesday, it would be nice to know
18   that now.
19             THE COURT:  Your thoughts?
20             MS. ARMIJO:  Your Honor, I'm doing opening,
21   and I have already tailored my opening to not deal
22   with the evidence that's excluded from the one jury.
23   So our preference is that we do one -- at least the
24   United States will do one opening statement.
25             If the defense wants to do different
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  openings, then that's their -- I guess they could do

2  it.  But the United States is presenting one opening

3  statement that will not include testimony that the

4  one jury cannot hear.

5          THE COURT:  Do you see any problem with

6  that, Ms. Jacks?  If the Government wants to tailor

7  theirs to make it more general and not get into the

8  evidence that they make theirs --

9          MS. JACKS:  It's hard to just rule -- I

10  mean to give an opinion just based on that

11  representation.  But I think the concern is -- I

12  mean, what Ms. Armijo is saying is that there is

13  evidence one jury is not going to hear.  But really

14  there is evidence that -- the Baca-Sanchez jury is

15  not going to hear certain stuff, and the

16  Herrera-Perez jury is not going to hear different

17  things, right?  So I don't know that it's just one

18  jury that's only going to hear certain evidence the

19  other is not.

20          MR. BECK:  I think I can interpret that and

21  clear it up.  Sorry, I don't mean to step on your

22  toes.

23          MS. JACKS:  That's all right.

24          MR. BECK:  I think Ms. Armijo was

25  misspeaking a little bit.  My understanding of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Court's ruling is that there may be statements also
 2   in Mr. Herrera's recordings and Mr. Perez' recordings
 3   during which the Baca and Sanchez jury will be
 4   excused.  Just like there may be portions of Eric
 5   Duran's recordings and Mr. Baca's recordings --
 6   Mr. Duran recording Mr. Baca, during which Mr.
 7   Herrera and Mr. Perez' jury would be excluded.  So I
 8   think there may be -- based on this, and obviously,
 9   we'll take -- this being the Court's chart, Exhibit B
10   to the clerk's minutes -- once we take a closer look
11   at that, I think we'll have more guidance of when one
12   jury or the other may be excluded.  But I think there
13   may be times --
14               THE COURT:  Let's assume that will be the
15   case.  I haven't quite thought it out.  But it sounds
16   like everybody is in agreement that is the case.
17   Y'all are more familiar with the evidence.  I took a
18   shot at it from what I heard in the James hearings
19   and co-conspirators, and again played with the
20   evidence.
21               So assuming that's the case, do you have
22   any problem with letting Ms. Armijo do her opening,
23   and then if y'all want to have tailored ones, and
24   only have it to your specific juries, do that?
25               MS. JACKS:  I mean, it would depend upon
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   what's in her opening.  So I mean, I don't know --
 2             THE COURT:  I don't need to know today.
 3   You can decide that at the time.
 4             MS. JACKS:  Okay.
 5             THE COURT:  But we'll let the Government do
 6   theirs, and we'll take their representations that
 7   they're going to keep it general, and not get into
 8   specific as to evidence that's going to be excluded,
 9   or might be excluded from the other jurors.  And then
10   y'all can decide how y'all want to do your opening.
11             MS. JACKS:  Okay, great.
12             THE COURT:  Mr. Villa?
13             MR. VILLA:  I just want to say I agree with
14   Ms. Jacks.  I think the defense openings, at least
15   have to be separate, and if we want to get into
16   specific detail, I mean, that's my preference.  We
17   sort of talked about it this morning, and I thought
18   about it more.
19             THE COURT:  Well, you know more what you're
20   going to be arguing.  To some degree, I don't know
21   what you're going to be arguing.
22             MR. VILLA:  Yes.  We don't argue in
23   opening, Judge.
24             THE COURT:  That's right.
25             MR. VILLA:  But, yes, I think we would ask
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    for separate.

2            THE COURT:  That's fine.  It doesn't seem

3    Ms. Armijo cares what y'all do on that.

4            Let me see what Ms. Bhalla -- and then I'll

5    come back to Mr. Castellano.

6            MS. BHALLA:  Your Honor, it was just about

7    the witness lists.  I can -- if we want to keep

8    talking about opening statements, I can wait.  I just

9    didn't want to climb in and out.

10           THE COURT:  Hold on.  Let me finish up on

11   the openings, since Mr. Villa who filed this

12   primarily is using it to preserve his position.  Let

13   me get Mr. Lowry.  Are you on openings, Mr. Lowry?

14           MR. LOWRY:  No, Your Honor.  I wanted to

15   talk about the motion to strike.

16           THE COURT:  Mr. Castellano, did you have

17   anything else on the openings?

18           MR. CASTELLANO:  Kind of, Your Honor.  And

19   this is -- it kind of overlaps with the two juries.

20   Is the Court going to instruct the juries that we

21   have two of them, because there are certain things

22   that one jury can hear that the other can't, based on

23   the Court's pretrial rulings, and that there are

24   things they can hear together?  Is that the idea?

25           THE COURT:  I haven't -- let me ask you

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                          1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                        e-mail: info@litsupport.com

1  this:  I may have to go back.  I got Mr. Garcia out

2  yesterday afternoon.  Is the preliminary instruction

3  that I have, is that sufficient to begin the case?

4  And then I'll start looking at the final

5  instructions.

6          MR. BECK:  Do you want to hear from the

7  United States on that, Your Honor?

8          THE COURT:  Yes.

9          MR. BECK:  It is.

10          THE COURT:  Okay.  Did the defendants have

11  any problem with the preliminary?  Okay.

12          MR. LOWRY:  No, Your Honor.

13          THE COURT:  Let's plan, then -- on that

14  instruction, let me do that together.  Okay?

15          Mr. Maynard.

16          MR. MAYNARD:  Your Honor, on the

17  preliminary instructions, in general, I have no issue

18  with them.  But at a juncture just before the Court

19  starts talking about the elements, I really think it

20  would be appropriate, in fact I think it's necessary,

21  to explain to the juries that there is going to be,

22  in a way one trial, two juries, but four individuals

23  are independently on trial.  And that the Court is

24  going to -- the jury is going to be instructed to

25  assess the evidence independently as to each

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                         e-mail: info@litsupport.com

```
1    defendant in each count, just a couple of sentences,

2    before the Court transitions into the elements.

3              THE COURT:  Does the Government have any

4    problem with that?

5              MR. BECK:  No, Your Honor.

6              THE COURT:  All right.  Anybody else?

7              Mr. Maynard, why don't you draft it up and

8    send it around, and then tell me where you wanted to

9    insert it.  If there is an agreement on that, get an

10   agreement, and we'll stick it in there.

11             All right.  So other than what Mr. Maynard

12   is going to draft up, I'll use the preliminary

13   instruction, and I will instruct the jury all at the

14   same time, swear them in at the same time, and then

15   we'll go to Ms. Armijo, who will argue -- or who will

16   make her opening statement, and then we'll see where

17   we are with the defendants at that point.

18             MS. JACKS:  I think the other instruction

19   that probably should be given is for the juries not

20   to interact with each other.  Because at least, in my

21   experience, that's the biggest problem with multiple

22   juries.

23             THE COURT:  Do you want to put that in

24   there, Mr. Maynard?  Do you want to draft out

25   something and put it in your paragraph?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. MAYNARD:  They're not to talk to each
 2    other.
 3              MS. JACKS:  Or interact, or discuss the
 4    case.
 5              THE COURT:  Well, y'all haven't had --
 6    well, some of you have had trials with me.  But I
 7    talk to the jury till all of you are sick --
 8    everybody about not talking to each other.  And I'll
 9    start during voir dire.  So I don't mind them putting
10    it in there.  And if fact, if you look at my jury
11    instruction, that last paragraph, I do say that.  I
12    don't say it as to two juries.  But you can put that
13    in, Mr. Maynard, and if everybody agrees, we'll put
14    it in there.  But we'll all get sick of it.  I'll get
15    sick of saying it, and they'll get tired of hearing
16    it, and y'all will be bored as well.  So we'll work
17    hard to make sure they don't do that.  Maybe won't
18    have the problem, since it's a statewide venire, of
19    what Ms. Jacks had, of people knowing each other on
20    the jury.  And I'll try to ask that.  I will try to
21    ask that in my voir dire.  I'll try to ask if anybody
22    in the jury knows each other.  If we end up bringing
23    in multiple groups, then obviously, I'll need to do
24    that multiple times.  But we'll do that.
25              All right.  Anything else on sort of the
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                             1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                            e-mail: info@litsupport.com

```
 1   mechanics of the opening preliminary instruction?  If
 2   not I'm going to go to --
 3            MS. ARMIJO:  I just wondered, are they all
 4   going to be in the same room?  Is there enough room
 5   in the jury room?
 6            THE COURT:  We'll get two jury rooms.
 7            MS. ARMIJO:  Okay.  If they're in the same
 8   room, that's awfully hard not to.
 9            THE COURT:  When they go to one jury room,
10   they'll go to one, and another one to another.  Isn't
11   that right, Ms. Wild?
12            THE CLERK:  Correct.
13            MS. JACKS:  Your Honor, when I've done two
14   jury trials, two trials with two juries, what I've
15   seen is generally the juries are like designated like
16   with a color or some easily identifiable designation
17   like the red jury and the blue jury, whatever it is.
18   So that they know that they go to a different place,
19   and with a different group, and they actually have
20   different color juror identification badges.  So just
21   a thought.
22            THE COURT:  Okay.  We typically in New
23   Mexico don't put badges on our jurors.  But we can
24   certainly think about that.
25            MS. JACKS:  I think the issue is so that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    they know -- I guess the issue is, not only do we
2    need to know who the jurors are, but they need to
3    know who the other jury is, so that they don't
4    accidentally start engaging with them.
5              THE COURT:  We'll give that some thought
6    and make sure that they don't.
7              Do you have something on this issue?
8              MS. DUNCAN:  I do, Your Honor, a related
9    issue.  I know earlier we had talked about the order
10   in which the defense would go for voir dire and
11   openings.  And you had asked for that information.
12   We had come up with a preliminary plan, and then with
13   the plea of Christopher Garcia yesterday and the two
14   juries, I think it may change.  I'd like to confer
15   with my colleagues about the openings before we give
16   that order.  But I was wondering if the Court would
17   like to know -- we've come up with an order for voir
18   dire, if that would be helpful to the Court.
19             THE COURT:  Yeah.  You handed this to me.
20   All right.  What are you proposing as your order?
21             MS. DUNCAN:  Ms. Jacks is asking are we
22   doing the voir dire all groups at once?  How are you
23   anticipating.
24             THE COURT:  I think so, don't you?
25             MS. JACKS:  This is just how I was thinking
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    about it.  I would think it would be sequentially,
 2    that Jury A would be selected and voir dired by the
 3    lawyers for that jury.  And then Jury B would be
 4    selected after that.  Right?  Like, why would lawyers
 5    who aren't involved in the Sanchez-Baca trial be voir
 6    diring, or doing anything with the Sanchez-Baca
 7    jurors?
 8              THE COURT:  Is that all right with
 9    everybody?
10              MS. DUNCAN:  Yes.
11              THE COURT:  It's not going to affect the
12    Government at all, but --
13              MS. ARMIJO:  Yeah, but I'm wondering with
14    numbers, because I think our numbers are precious so
15    to speak.  And let's say the first group has -- and
16    I'm just throwing out number 70, and we all know we
17    only need 40 after excusals.  Then let's say we have
18    leftover jurors.  What's going to happen to the
19    leftover jurors?  Shouldn't those leftover jurors
20    that we don't use for the first panel go into the
21    second panel for consideration?  So that's where I
22    think it gets messy.  We can't just simply divide the
23    numbers up.  So that's something to consider,
24    given -- and if we have 400 jurors -- and we don't --
25    I think we keep getting lower and lower numbers.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    That's my concern.

2           THE COURT:  We're going to have to conserve

3    jurors.

4           Let Ms. Wild -- she's thought about this --

5    let her tell you what we're proposing on the jurors,

6    how we're going to use them.

7           THE CLERK:  So instead of bringing up

8    groups of 20, necessarily, when we get through the

9    first 60, we'll have a feel, do we need 20 more?

10   Maybe we don't need that many.  So we'll bring up

11   incrementally smaller groups to try to preserve our

12   resources.  And I think that that's the way we handle

13   it in terms of making the best use of folks' time and

14   seating the jurors.

15          THE COURT:  But I guess the question

16   they're asking is --

17          (A discussion was held off the record.)

18          THE COURT:  Is everybody in agreement and

19   I'll ask you as well.  Is everybody in agreement that

20   we should just pick the first jury, and that would

21   mean that two of the defense teams don't ask any

22   questions in that.  And like Ms. Wild says, we may

23   have to be a little bit flexible.  When we're picking

24   that first jury, we may not want to bring 20 in, if

25   we only need one person.  We might just bring five in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    so we leave more for that second group.  Everybody
2    live with that?
3              MS. JACKS:  I think so.
4              MS. DUNCAN:  I think that makes sense.
5              THE COURT:  If, in fact, we have some
6    leftover jurors from the first one, what -- I'm
7    thinking out loud, so everybody can tell me if this
8    is a bad idea -- go ahead and send them back to the
9    jury room, and if we don't need them, we never see
10   them again, they don't see us, and we pick our new
11   jury, the second jury out of a fresh batch.
12             MS. JACKS:  I think that's right.
13             MS. DUNCAN:  I would agree.  I think that
14   makes sense.
15             THE COURT:  But we'll leave them down there
16   in case we need 10, 15 that we didn't use from the
17   first one.  We might bring them back up, and we might
18   need one or two or something.
19             MS. JACKS:  I'm just thinking out loud.
20   But the one other thing I was thinking is, to the
21   extent that the Court's voir dire is the same for
22   Trial A and Trial B, or Jury A and Jury B, maybe
23   there is some sort of way to -- for the Court to do
24   its voir dire of the whole panel.
25             THE COURT:  I just think it would take us
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    forever.

2              THE CLERK:  There is no room.

3              THE COURT:  There is no room.  And there is

4    just no room.  We don't even have -- I think we'll

5    have to just pick two juries.  And I'll have to do it

6    twice.  And everybody -- the Government will have to

7    do it twice, and the new defendants will have to -- I

8    just don't think we have enough room here.

9              MS. DUNCAN:  We're whispering about

10   figuring out who is going first in terms of planning

11   for the two.

12             THE COURT:  I'll tell you, if I were

13   defendants -- well, it would apply to the Government,

14   too -- I think you're going to want to do it all

15   over, because you're going to want to look over at

16   this jury box, the 18 that are going to be in the

17   jury box, because, you know, if nobody strikes down,

18   they're your jury.  I think, visually, if I were a

19   trial lawyer here, I wouldn't want to be trying to

20   figure out -- well, you're just saying for the

21   general stuff, aren't you?

22             MS. DUNCAN:  Yes.

23             THE COURT:  Well, I probably will let the

24   Government select who they want the first jury to be.

25   Because if I don't get two juries on Monday, then I

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                    1-800-669-9492
                                                             e-mail: info@litsupport.com



```
1    probably have to go to plan B.

2             So who do you want to be the first jury

3    selection to be, Mr. Castellano?

4             MR. CASTELLANO:  Mr. Baca, Mr. Sanchez,

5    Your Honor.

6             THE COURT:  All right.  So Baca-Sanchez

7    will be Jury A.  And then we'll go with Perez-Herrera

8    will be Jury B.

9             MR. CASTELLANO:  Your Honor, maybe we can,

10   in the meantime, think about what size groups we'd

11   want to come in.  We may actually end up doing voir

12   dire more than twice.  So, for example, as the Court

13   said, we might need one juror and only call in five.

14   There is a chance we could extend this into multiple

15   voir dires.

16            The other kind of strange thing -- maybe

17   it's not a real issue -- is the group dynamics.  If

18   we pull in a group of 5, there is a weird dynamic as

19   opposed to a group of 40.  I'm just putting it out

20   there to think about in the meantime.  I know we're

21   not there yet, but it's coming up.

22            THE COURT:  I'll work with you.  I

23   understand what you're saying.  I'll work with you,

24   we'll kind of see if we're -- you know, let's see how

25   many show up.  I hope we get a good return rate and
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

241

```
 1   everything.
 2            All right.  If there is nothing else on
 3   mechanics right at the moment -- I know there will be
 4   more things on mechanics -- but if there is nothing
 5   else, why don't we go to -- I think, Ms. Bhalla, you
 6   wanted to talk about what -- the motion that's up,
 7   the actual exhibit witness list.
 8            MS. BHALLA:  If that's okay, Your Honor.
 9            THE COURT:  Certainly.
10            MS. BHALLA:  Your Honor, I don't think it's
11   a major issue.  I just -- when I started thinking
12   about whether or not we separate out the witness
13   lists, some of the witnesses that the Government may
14   be calling that provide testimony to Mr. Sanchez and
15   Mr. Baca, we may want to question in our
16   case-in-chief.  But because of the joint witness
17   list, we didn't necessarily identify them because the
18   other parties had identified them.  I just ask that
19   maybe the way we could deal with that is if we decide
20   at that time that we want to be able to re-call them,
21   we alert the Court, just depending on what comes up.
22   And hopefully, that won't be too big of an issue.  I
23   don't think it will happen with that many witnesses.
24   But I see that happening.
25            And I know that some people sent Agent Acee
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    a Touhy letter.  We didn't necessarily do that,
2    because we weren't going to have to do that in order
3    to question about those issues.  Do you see what I'm
4    saying, Your Honor?  I want to make sure we can maybe
5    have a little bit of flexibility in how we handle
6    that.
7              THE COURT:  Any objection from the
8    Government on that?
9              MS. ARMIJO:  Depends on who the witness is.
10   If it's an FBI agent, or somebody like that that's
11   subject to Touhy, they will have to file Touhy
12   letters.  So we're not going to waive on the Touhy
13   letters or the witness' right to Touhy.  If it's
14   somebody -- and some of these witnesses are close by,
15   some of them are in custody.  So I think -- I mean,
16   we'll try and be as flexible as we can.  But we still
17   are going to require Touhy letters, if that's an
18   issue.
19             THE COURT:  Okay.
20             MS. BHALLA:  And if that's the case, maybe
21   to expedite things, would the Government have any
22   objection to us sending those to the Government to
23   try to speed up the process a little bit?
24             MS. ARMIJO:  We're not accepting service,
25   but certainly if it's a Touhy letter, we'll send it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to the appropriate authorities.

2              MS. BHALLA:  Okay.

3              THE COURT:  Anything else on that, Ms.

4    Bhalla?

5              MS. BHALLA:  No.  And I just, just that we

6    have the ability to re-call some of the cooperators

7    if something comes up in the Baca-Sanchez matter that

8    would be relevant to the Perez-Herrera matter.

9              THE COURT:  Do you have any problem with

10   that?

11             MS. ARMIJO:  It's going to depend on the

12   issue and why they call them.  They can't have -- so

13   it may, depending on why they're re-calling them and

14   what the issue is.

15             MS. BHALLA:  I mean, I think it would be

16   directly related to -- some of the witnesses, Your

17   Honor, have information on all four defendants that

18   are going to trial.  And --

19             THE COURT:  Maybe I'm being very simplistic

20   here, but you're going to know who the witnesses are

21   in the Baca/Sanchez trial.

22             MS. BHALLA:  I hope so.

23             THE COURT:  So can't you, at that point,

24   just say:  Can I get some testimony here?

25             MS. BHALLA:  That's what I was asking, if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    we can handle that it way --
 2              THE COURT:  Is that a problem if while
 3    they're here they ask, or is there something special
 4    about these witness lists that create some problem
 5    for the Government?
 6              MR. BECK:  You mean asking them questions
 7    on cross-examination that may be out of the scope of
 8    our direct may be subject to re-call?  Is that what
 9    we're asking?
10              THE COURT:  No, I think they're asking in
11    your case-in-chief, right, you want to be able to
12    re-call people that other defendants have called?  Am
13    I misunderstanding.
14              MS. BHALLA:  No.  For example, Your Honor,
15    let's say one of the cooperating witnesses, you
16    know -- and some of the cooperating witnesses they
17    may provide statements that are exculpatory for Mr.
18    Herrera, but the Government doesn't call them in the
19    Herrera-Perez line of questioning.  They call them in
20    the Sanchez-Baca line of questioning.  And we want to
21    get out that information.  Does the Court want us to
22    re-call them in our case-in-chief.
23              THE COURT:  Well, I've got to observe the
24    American Rule.
25              MS. BHALLA:  Right.
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                    1-800-669-9492
                           PROFESSIONAL COURT          e-mail: info@litsupport.com
                             REPORTING SERVICE

```
 1              THE COURT:  If they're not using anything
 2      against you with that witness --
 3              MS. BHALLA:  Then we need to re-call them.
 4      And we didn't have that issue before this morning.
 5      So I'm just trying to figure out the most --
 6              THE COURT:  Tell me why not.  If they're
 7      not using any of the witnesses against you, you
 8      wouldn't be able to get that information out anyway,
 9      would you?
10              MS. BHALLA:  Well, I think that the way
11      that we thought our witness list -- all of those
12      parties are on the witness list.  But it was a joint
13      witness list.  So that's my question.  Do we need to
14      delineate out the witness lists now because there are
15      two juries.  Do you see what I'm saying?
16              THE COURT:  Now, you're talking about your
17      case-in-chief?
18              MS. BHALLA:  Yes, Your Honor.
19              THE COURT:  Okay.  Well, do they need to do
20      that?  If they did a joint defense witness list, now
21      they don't need to break it out, do they?
22              MS. ARMIJO:  Well, I think if they're going
23      to be putting them separate, and not in front of
24      another group, we would like to know that.
25              I mean, I think -- and maybe I'm mistaken,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  but I think there is going to be very little evidence

 2  that is not going to both juries as far as witnesses.

 3  It's not going to be, you know, over 10 witnesses.  I

 4  think it's going to be -- unless I'm missing

 5  something, it's going to be very limited about what

 6  one jury will hear and what doesn't hear.  And the

 7  defense already knows that.

 8         If the defense is going to be putting forth

 9  the same thing, and only wants some witnesses to one

10  jury or not, I think we have a right to know that.

11  And I think they do have to file their own witness

12  list that just pertains to them.  I think we would

13  request that.

14         MR. CASTELLANO:  And related to that, I

15  guess, Your Honor, is -- so the witness is going to

16  be on the stand --

17         THE COURT:  Isn't this easily solved by you

18  just filing a witness list?  I mean, if you want to

19  list all the witnesses that are on there, if the

20  Government wants to know what your witness list is

21  going to be, there is going to be some overlap.

22         MS. BHALLA:  I think that's fine, Your

23  Honor.  We can certainly try to do that.  I'm just

24  trying to figure out how we need to handle this the

25  most efficiently.  So I can certainly talk to the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                   1-800-669-9492
                                                         e-mail: info@litsupport.com



1    Government about that, Your Honor, and see what we

2    can do.  Get something filed separate.

3              MR. MAYNARD:  Your Honor, if I may, some

4    of -- we anticipated Mr. Herrera's case was going to

5    be elicited on cross of the Government's own

6    witnesses.  But now we're not sure which witnesses,

7    and we're not sure about the scope of direct in our

8    aspect of the case, as the Government presents that

9    testimony.

10             MR. CASTELLANO:  I think --

11             THE COURT:  That problem is always there.

12   You never know.  They may just say I'm going to

13   ignore Herrera on this witness.  And if you do, then

14   you've got to fight the American Rule to see if you

15   get to cross-examine to save time.  I mean, it's --

16   you always got that problem, right?  Unless we have

17   an agreement that if somebody is called by the

18   Government, we're going to get their

19   cross-examination done.  If the Government agrees to

20   that, then we can move that along.

21             MR. MAYNARD:  I'm just wondering if we're

22   going to have to scramble, and ask for some writs and

23   some subpoenas in a hurry.  It may not be likely, but

24   it --

25             THE COURT:  Well, let me ask the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Government -- I think I know the answer from what you
 2   just said -- but do you want to -- if you have a
 3   witness here, allow the defendant to get their
 4   cross-examination done of that witness, and not stand
 5   on the American Rule, and get witnesses in and out,
 6   so they're not subject to re-call, or do you want to
 7   insist on the American Rule in your case-in-chief?
 8            MR. CASTELLANO:  I think it's going to
 9   depend.  But I think, for the most part, we're going
10   to present our case, and so we're going to present
11   all of our evidence.  So our presentation doesn't
12   change.  It's which jury gets to hear which evidence,
13   which I think is largely evidence which is the
14   hearsay the Court doesn't want each jury to hear.
15   But we're going to go through all of our evidence and
16   put on all our witnesses.  So they should have the
17   opportunity to cross-examine all the witnesses that
18   they want.
19            THE COURT:  Let's say you put on a witness,
20   and it doesn't implicate Herrera at all.  Are you
21   going to stand on the American Rule and say, if Ms.
22   Bhalla wants to cross-examine him about something
23   that really is not within the scope of your cross,
24   you want to insist that she call her in her case?  Or
25   do you want to get the witness up and out?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            MR. CASTELLANO:  The answer is maybe, it

2    depends.  Because, for example --

3            MS. BHALLA:  This is why I brought it up.

4            MR. CASTELLANO:  Because the objection is

5    that it's beyond the scope of direct.  And so if

6    somebody is going to go that far afield of our

7    presentation of our case, and takes us off on a

8    tangent in front of a jury who needs to hear this

9    evidence we're presenting, that changes the

10   complexion of the case and the presentation.

11           THE COURT:  Let's do this:  I think we need

12   to break the witness list out.  You send a letter to

13   the Government saying:  Here's my witnesses.  And

14   then, if the Government looks at that and tell them:

15   You need to subpoena these people or you don't need

16   to subpoena them.  And then tell them that you may

17   dig in your heels on some and not on others.  And

18   it's your call.  I mean, if you want them to -- but I

19   think they need to know which ones to get subpoenas

20   out for.  Does that make sense?

21           MR. CASTELLANO:  It makes sense, Your

22   Honor.  Then the issue, for purposes of

23   cross-examination, is what they elicit -- I guess may

24   not matter if it's going to the right jury.  Let's

25   say we have two juries sitting here, the Court may

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1   have to give a limiting instruction even for

 2   cross-examination to say this information is only

 3   pertinent to this jury, and not for this jury because

 4   you're going to pull out hearsay or some other --

 5           THE COURT:  Or we let that jury go for the

 6   cross.

 7           MR. CASTELLANO:  Possible.  So that means

 8   we're going to have to have at least some preview --

 9   not the entire cross laid out, but some preview about

10   the subject matter of the cross-examination to decide

11   whether or not it's for one jury or both juries.

12           THE COURT:  Well, can we live on the

13   witness list, so they can know who to subpoena?  Each

14   defense team will send a letter to the Government

15   saying:  Here is our witnesses, and then you'll

16   respond by saying -- you can do it either way, you

17   don't need subpoenas with these people or you do need

18   them?  And if you say no subpoenas for those people,

19   the rule will be that we won't enforce the American

20   Rule for those witnesses, and they get their

21   cross-examination done and get the witnesses out of

22   here.  And if you say they do need a subpoena, that

23   will mean, if you want to at the time, you can insist

24   on the American Rule, and they'll have to re-call

25   them in their case-in-chief?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          MR. CASTELLANO:  It's all kind of abstract

2     right now.  I think it's worth a try to do that.  I

3     think they know who our witnesses are for the most

4     part.  But if we think we're not calling someone on

5     our witness list, and they want that person, then

6     that's when they need to issue subpoenas.  And for

7     law enforcement witnesses, they also need Touhy

8     letters and subpoenas.

9          THE COURT:  Okay.  Well, can you live with

10    that?

11         MS. BHALLA:  I think so, Your Honor.  And I

12    don't think it's going to be that many witnesses.  I

13    really don't.  And I don't think that it's going to

14    necessarily be that far outside.  I don't really

15    think -- honestly, when I think about it, I don't

16    know that it's necessarily going to be outside the

17    scope of the direct.  But --

18         THE COURT:  I think that's what Mr.

19    Castellano was saying.  It may not be that big of a

20    problem.

21         MS. BHALLA:  Right.

22         THE COURT:  Because I have a fairly large

23    strike zone anyway on the American Rule.  So as long

24    as it's got something tied to it, I'll probably allow

25    it.



SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                              1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                           e-mail: info@litsupport.com

```
1              MS. BHALLA:  Okay.  Thank you, Your Honor.
2              THE COURT:  Anyone else on witnesses, which
3    is the motion that's on the table?  Ms. Armijo?
4              MS. ARMIJO:  I do.  One of our -- well, two
5    of our witnesses are victims in this case.  And I'm
6    wondering what the Court's position is on the
7    victim's -- crime victim's rights, the act of 2004,
8    which allows them to attend court proceedings?  Is
9    the Court going to require them -- and the witnesses
10   that we're talking about victims is Gregg Marcantel
11   and Dwayne Santistevan -- is the Court going to
12   require them to stay out until they testify?  Or is
13   the Victim's Rights Act of 2004 enough for the Court
14   to allow them to, for instance, hear opening
15   statements, or if they want to watch part of the
16   trial, be in part of the trial?
17             THE COURT:  Any thoughts on that, Mr.
18   Lowry?
19             MR. LOWRY:  Yes, I do, Your Honor.  I've
20   looked at this issue before, and I've briefed it.
21   And the Court has the authority under the rules of
22   evidence to dictate the order of witnesses at the
23   trial.  If either of the victims want to attend the
24   trial, rather than break the rule of attendance, the
25   Court can say if they want to attend the trial, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   need to call them first, so their testimony gets out
2   of the way.  And so, if Mr. Santistevan or Mr.
3   Marcantel want to sit through the trial and watch the
4   trial, then the Government would have to call them
5   first.  It's just that plain and simple.
6              THE COURT:  I mean, are they -- are they
7   planning to be here the whole time?
8              MS. ARMIJO:  One of them, I know will not
9   be.  Mr. Santistevan, I don't believe he will be
10  here.  But I know --
11             THE COURT:  Could you live with this:  That
12  when they show up, they don't sit in the jury room --
13  in the courtroom until they're called?  And then
14  after y'all work them in, then we'll excuse them and
15  they can remain?
16             MS. ARMIJO:  Well, if that's the Court's
17  ruling.  I mean, we came up with an order of
18  witnesses, and that's not our preference.  But if
19  that's the Court's ruling, then we will do that.
20             THE COURT:  Well, I'm shooting from the
21  hip.  I've had some similar stuff, but not this exact
22  question.  Let's make it the ruling for the time
23  being, if somebody wants to submit something to me to
24  tell me that I'm doing it wrong, I'll be glad to take
25  a look at it.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           MS. ARMIJO:  What about opening statements?
 2           THE COURT:  Opening statements, all fact
 3   witnesses need to remain outside of the courtroom,
 4   both sides.
 5           All right.  Let's see anything else on
 6   witnesses?  All right.  So I'm going to put this
 7   witness material back in.
 8           All right.  The next issue I have up -- and
 9   if somebody is watching the clock, and wants to do
10   something else, I think we better break at 5:15.  So
11   we've got about 30 minutes.  Does anybody want to do
12   anything before we go to objections to jury
13   instructions?
14           MR. LOWRY:  Yes, Your Honor.
15           MR. VILLA:  Your Honor --
16           THE COURT:  Was that you, Mr. Maynard, or
17   Mr. Villa?
18           MR. VILLA:  I think Mr. Lowry said yes,
19   Your Honor.  But I think what I have might be
20   slightly less substantive than what he has.  But can
21   I confer with Mr. Lowry?
22           THE COURT:  Sure.  Mr. Beck?
23           MR. BECK:  Your Honor, while you're doing
24   that, the Court asked for an update on the promises
25   and benefits information.  The United States -- all
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   the law enforcement officers who were sitting in on

 2   the debriefs and discussions with cooperators were

 3   contacted, and they have all reported that they did

 4   not threaten or induce any cooperation by threatening

 5   other family members.  So what we talked about

 6   earlier today, there won't be any update from that.

 7   I'm just putting that on the record so we don't have

 8   to disclose that later.

 9             THE COURT:  All right.  Mr. Villa?

10             MR. VILLA:  Mr. Lowry has got it.

11             THE COURT:  All right.  Mr. Lowry.

12             MR. LOWRY:  After conferring with Mr.

13   Villa --

14             THE COURT:  Hold on just a second.

15             Okay.  So you're going to ask me to take up

16   1701?

17             MR. LOWRY:  Yes, Your Honor.

18             THE COURT:  All right.  Just so there is no

19   confusion, we're still going to have 18 jurors on the

20   second trial.  Everybody gets three peremptory

21   challenges, each side, to the alternates.  Same

22   number.  So nothing changed on the jury.  So I think

23   those are the mechanics.

24             All right.  Mr. Lowry, if you want to

25   discuss 1701.  You may have to educate me a little

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                      1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1    more on this one, because it's been in my stack

2    today, but I haven't been able to get to it other

3    than look at the title.

4              MR. LOWRY:  I appreciate that, Your Honor.

5    And I can do that very briefly.

6              Your Honor -- and the reason this was just

7    filed yesterday is we discussed at the last hearing,

8    and as the Court knows well, there was this huge

9    volume of telephone calls that was released to the

10   defense teams in December, late -- well mid November,

11   December.  And we've been culling through the 16,000

12   hours' worth of telephone calls.

13             And in the process of doing that, we

14   mentioned one -- at the very last hearing, I think,

15   on December 10th, about Mr. Cordova.  And we've

16   identified three separate government witnesses who

17   have made phone calls out to their family members,

18   either their wives, mothers, talking about how it

19   came to be that they cooperated with the United

20   States Government.

21             And the substance of those are set out in

22   the motion on page 3 for Mr. Clark.  But Mr. Clark

23   talks about -- he's talking to his mother, and he's

24   telling his mother, essentially, that if he didn't

25   cooperate, that they were going to charge her, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   his -- I don't know if it's his wife or his
 2   girlfriend, but let me just say his significant
 3   other.  And the recording goes through that.  And
 4   he's explaining to her why he did what he did.  And
 5   at the end of the conversation he says, "I ain't
 6   gonna let you guys fall for my bullshit," meaning
 7   that he wasn't going to let them get prosecuted for
 8   involving them in the three-way calls, and things
 9   like that, that would have put them at risk of
10   prosecution for aiding and abetting, or part of a
11   conspiracy to distribute drugs, or what have you.  So
12   Mr. Clark is telling his mother, Look, I had to do
13   what I did because of the pressure that was put on me
14   by federal agents.  Otherwise, you and my wife would
15   be prosecuted.
16          Now, the same thing goes to the next
17   defendant, if you look at Billy Cordova.  And on
18   September 4, 2016, Billy Cordova calls his
19   significant other, Crystal.  And Mr. Cordova tells
20   her during the course of a conversation, "And then
21   the fucking feds come in and they say, 'Look, we're
22   going to fucking tax your wife, we're going to tax
23   your fucking mom.  This is what we have on you.'
24   Boom, they slap a file on me.  And I'm like, What,
25   and I'm like, they're coming after everybody."
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          And then he asks his wife, "What would my

2   daughter do right now, babe," implying that what

3   would his daughter do if he didn't have her mother or

4   her grandmother to take care of her.  In that

5   context, Mr. Cordova is telling her, Look, you should

6   appreciate the sacrifice I made for you.

7          Then we move on to Lupe Urquizo.  And on

8   March 12, 2017, Lupe Urquizo was in a call with his

9   brother, Daniel.  And they're talking about the same

10  thing.  This is March -- I believe if you look at the

11  FBI 302s, the first contact we can see in the

12  discovery is on February 24th of 2017, with Mr.

13  Urquizo.  In this conversation he's talking to his

14  brother about being visited by federal agents.  And

15  he tells his brother point-blank -- they're talking

16  about different apparently criminal activity that

17  they had been involved in.  And he says, "They came

18  to see me about two months ago, and they're asking me

19  about you.  No, I told him.  Sheesh, why are you

20  asking about Daniel," his brother.

21          And then his brother asks him after some

22  back and forth, "But did you tell them not to fuck

23  with me, or what?"

24          And then Lupe Urquizo tells his brother,

25  "Fuck, yeah, I told them."

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          And then this is the block quote.  "Then
2     they told me, they were asking me, 'How much time
3     does Daniel still have?'  And I told them I believe
4     he still had some years left and all that, you see.
5     I told them, 'Well, you know, if I do all that, I
6     want to make sure my bro is all good, too, and all
7     that, you see.'
8          "And they said to me, 'Yeah, as long as
9     you're truthful and all that, we'll fucking take --
10    we'll take care of everything.'"  Meaning that he
11    didn't have to worry about his brother being
12    prosecuted if Mr. Urquizo would cooperate.
13         Now, we've identified a few other calls,
14    but involving the three witnesses corroborating the
15    same theory, the same pattern, where they're saying,
16    Look, we chose to cooperate so our family members
17    wouldn't be prosecuted.  And really, the essence of
18    this motion is, and the reason I filed it as a motion
19    to strike, Your Honor, is you've heard us -- I
20    believe at the last set of hearings, I raised an
21    issue on behalf of Ms. Sirignano on a motion to
22    compel the Brady and discovery.  I had filed a motion
23    to compel Brady and discovery.  And Your Honor said,
24    Well, it sounds like you're complaining, Mr. Lowry.
25    And I believe at the time I said, Yeah, I am

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                         1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                   e-mail: info@litsupport.com

1    complaining.  And I was.

2           But we got the Jencks Act disclosures on

3    the 12th of January.  And may I use the Elmo?  And,

4    unfortunately, the Jencks Act disclosures were

5    essentially Brady and Giglio disclosures.  Because

6    the vast majority, in my view, as a defense attorney,

7    were impeachment evidence that the defense could use.

8           And just, for instance, I'm looking at --

9    and Your Honor knows, we've been asking for the field

10   notes, the rough notes, from the FBI for -- since the

11   very first hearing we had in front of the Court.  And

12   I'm looking at a document that's a DeLeon Bates No.

13   42976, and it's the field notes of an FBI agent, and

14   they're dated December 17, 2015.

15          THE COURT:  Ms. Standridge, I need some

16   screen, either put that one on, or --

17          MR. LOWRY:  And the reason I bring this up,

18   Your Honor, about the Brady information is because

19   Your Honor had a very detailed and specific colloquy

20   with the parties in 2016 about your view of Brady.

21   And you told the United States, Look, I think if

22   you're doing a Brady review, you can't use a computer

23   algorithm.  You need to get a real human, and not the

24   case agent, not an FBI official.  You need to have an

25   attorney from the United States Attorney's Office lay

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                              1-800-669-9492
                                                                     e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    eyes on this evidence, and examine it and screen it

2    as if you were a defense attorney.

3            And why I bring up this particular set of

4    field notes, while we're trying to get the Elmo up,

5    is that on DeLeon Bates No. 42981, it's discussing

6    the agent who is interviewing Roy Paul Martinez, asks

7    him about the Marcantel hit.  And the very first note

8    under the heading Marcantel hit says, "'Crazo'

9    approached 'Shadow' saying Santi need hit," meaning

10   that "Crazo," Eric Duran, approached Roy Paul

11   Martinez, and explained to Mr. Roy Paul Martinez that

12   Dwayne Santistevan needed to be murdered.

13           Now, we've been before for you some time

14   saying that Mr. Duran was the moving force behind the

15   Marcantel-Santistevan allegations.  And here you have

16   a document that was created in December 2015, the

17   Government concealed until January 12, 2018.  Now,

18   why they sat on it for that long, I don't know.  The

19   Government -- Your Honor, instructed them in October

20   and November 2016 how to do a Brady review.  And here

21   we are on the eve of trial.  And the reason I bring

22   this up and styled this as a motion to strike, Your

23   Honor, is because this has been a systematic and

24   uniform effort to undermine the ability of the

25   defense to present a meaningful and effective case.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1              And there is no reason -- because the

 2      Court, in I believe in Document 907 -- I can't

 3      remember the filing date right offhand, Your Honor,

 4      but I think it was in April of 2017 -- said that the

 5      Brady and Giglio disclosures had to be done

 6      immediately.  And in October you gave them a 14-day

 7      window to do the review.

 8              So I'm a little disappointed -- more than

 9      disappointed -- that here we are on the eve of trial,

10      and what we predicted happened, happened.  We got all

11      the Brady and Giglio materials that were supposed to

12      have been disclosed throughout the case at the last

13      minute.  And here we are scrambling to follow up.

14              Just another example that was disclosed in

15      the Brady-Giglio material, Lupe Urquizo tells -- and

16      so this -- it's still booting up.

17              May I approach, Your Honor?

18              THE COURT:  You may.

19              MS. ARMIJO:  Can we get the Bates stamp

20      numbers?

21              MR. LOWRY:  Your Honor has it.

22              THE COURT:  It's 42981.

23              MR. LOWRY:  I've highlighted the relevant

24      portion there, Your Honor.

25              If you go in and look through the, quote,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Jencks disclosures that were provided on --
 2              THE COURT:  Let me give all the numbers to
 3   Ms. Armijo.  42981, 42982, 42976, 42977, 42978,
 4   42979, and 42980.
 5              MR. LOWRY:  And Your Honor, I'd like to
 6   tender that as Anthony Baca's Exhibit A for the
 7   purpose of this hearing.
 8              THE COURT:  All right.  Any objection, Ms.
 9   Armijo?
10              MS. ARMIJO:  No objection.
11              THE COURT:  Anyone else?  All right.  Then
12   Anthony Baca Exhibit A to this hearing will be
13   admitted into evidence.
14              MR. LOWRY:  So, Your Honor, I mean, I think
15   it's fairly obvious from looking at that, that that
16   was a defense friendly impeachment.  And in fact,
17   more than impeachment, that is exculpatory; that it's
18   Eric Duran wanting Dwayne Santistevan hit.  And at
19   that time he's operating as an agent of the United
20   States Government.  And so there is really no excuse
21   for not having that, not disclosing that earlier.
22   And there is really no excuse to call that Jencks Act
23   material.
24              Now, if we go through -- and I don't have
25   all day, because we're at the end of the day -- but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    there are plenty of examples like this in the

2    allegedly Jencks Act material.  And another example

3    is Lupe Urquizo in a 302 says that after Julian

4    Romero was assaulted, he makes a call.  He doesn't

5    call Mr. Baca.  He doesn't try to write a letter to

6    Mr. Baca.  He calls Gerald Archuleta, and explains to

7    Gerald Archuleta, Hey, we finally did the Julian

8    Romero takedown.  And according to the FBI 302, Lupe

9    Urquizo gets disillusioned because Gerald Archuleta

10   is exceedingly disappointed, and, in fact, upset with

11   him because he wanted Julian Romero murdered, not

12   just beaten up.

13          And again, what you see is evidence that

14   the hit is the responsibility of Gerald Archuleta,

15   another cooperating witness for the United States,

16   and not Mr. Baca.  So given the scope of the problem,

17   and given the depth of the problem -- and by the way,

18   that call that Mr. Urquizo references has never been

19   disclosed.  We've looked for it in the disclosures.

20   But we don't have a copy of it at all.

21          So here we are on the eve of trial, and

22   exactly what I predicted was going to happen, we have

23   to do a massive investigatory effort to look at this

24   material, and follow up on it.

25          And I know Your Honor doesn't want to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    postpone this trial.  So if you don't want to

2    postpone the trial, so we can have an effective

3    defense, then the only remedy left is to strike these

4    witnesses.  And I think it's a fair and adequate

5    remedy.  And I think it's well within this Court's

6    authority to do.

7            And I think, if you look even just recently

8    in the news, the Cliven Bundy matter, the judge in

9    that case had to dismiss that criminal prosecution

10   because of the Brady violations in that case.  And I

11   know this is a drastic remedy, but given the

12   circumstances here, we're on the eve of trial, and

13   we're trying to still sort out thousands of hours of

14   telephone calls that have exculpatory information.

15           My concern here, Your Honor, is we're, you

16   know, heading into trial -- and I think we'll

17   probably get through a trial -- but I think at the

18   end of the trial, we're going to find that there has

19   been significant Brady violations in this case, and

20   we'll all be looking at a do-over down the line.  And

21   nobody needs that.  I mean, I don't mind trying the

22   case once.  But I don't want to try it twice.

23           Your Honor, the United States, if I

24   understand their position correctly, is that, Okay,

25   you have these calls, but this is all hogwash, and

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    these calls are all lies.  And I think that's the

2    position of the United States.

3            But I'm not quite so sure that's the case.

4    And the reason I say that is one of the Lupe Urquizo

5    calls -- and I have it queued up if you want to

6    listen to it -- but Mr. Urquizo is talking about all

7    the benefits he's going to get in exchange for his

8    cooperation.  And he says, Look, they're going to

9    charge me.  But once these trials are over, I'm only

10   going to have to serve a few years, like one to

11   three.  And they're going to let me out.  And they're

12   going to get me a house, and they're going to do

13   this, and get me a job, and do all these grand

14   things.  And in the context of one of these calls

15   he's talking about his girlfriend getting traffic

16   tickets.  And he says very clearly, Don't worry,

17   don't worry about that because the people I'm working

18   with, they're going to take care of that for us.

19   They've told me that they'll fix these tickets for

20   us.  And again, I need an investigator to go find out

21   whether this individual actually had tickets and

22   whether they were dropped.

23           But what I can tell you is that we know

24   that that happened.  And here's how we know that:

25   Just after his release from incarceration, Eric Duran

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                      1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                        e-mail: info@litsupport.com

1    was driving north of Santa Fe, and he got pulled over

2    and he got traffic tickets.  And they're minor,

3    they're really petty:  No driver's license, expired

4    registration of a motor vehicle.  Frankly, Your

5    Honor, I've been there, I've done that, you know.

6    And what's interesting about this, Your Honor -- I'd

7    lining to tender this as Anthony Baca Exhibit B --

8    the interesting thing about this -- may it be

9    admitted, Your Honor?

10             THE COURT:  Any objection, Ms. Armijo?

11             MR. BECK:  No, Your Honor.  No objection.

12             THE COURT:  Anthony Baca Defendant's

13   Exhibit B will be admitted into evidence.

14             MR. LOWRY:  But what is really interesting

15   about this is how these really petty traffic tickets

16   disappeared.  They disappear on a nolle prosequi

17   signed by a prosecutor out of the County of Rio

18   Arriba.  Now, I've practiced criminal defense for

19   almost 20 years.  And I have never, ever seen a

20   prosecutor file a nolle, a notice of dismissal, on a

21   minor traffic ticket.  Ever.

22             And so this makes me think that this

23   chatter we're hearing on these phone calls, this

24   isn't idle chatter, these aren't lies.  This really

25   happened.  And the kicker, Your Honor, is this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    dismissal of a traffic ticket isn't on the notice of
 2    benefits we got on January 17th of 2018, from the
 3    United States Government.  And Your Honor, this is a
 4    confidential document, so I'm not going to put it up
 5    on the Elmo.  But I would like to tender it, under
 6    seal, as Anthony Baca's Exhibit D -- after Anthony
 7    Baca's Exhibit C.  May I move for the admission?
 8            THE COURT:  Are you skipping C?
 9            MR. LOWRY:  Pardon me.  I think I
10    skipped -- well, A is the handwritten notes; B is the
11    actual ticket, and the notice is C.  So D would be --
12            THE COURT:  Any objection to C, Mr. Beck?
13            MR. BECK:  No, Your Honor.
14            THE COURT:  All right.  Defendant's Anthony
15    Baca Exhibit C will be admitted into evidence.  And
16    now you're doing D?
17            MR. LOWRY:  Yes, Your Honor.
18            THE COURT:  Any objection?
19            MR. BECK:  Is this the sealed --
20            MR. LOWRY:  D would be the sealed.
21            MR. BECK:  No objection to D sealed.
22            THE COURT:  Not hearing any objection,
23    Anthony Baca's Exhibit D will be admitted into
24    evidence.
25            MR. LOWRY:  So Your Honor, I mean, it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1   very convenient for the United States to say, Judge,

2   don't worry about this.  This is all lies.  But I'm

3   not so sure that that's the case.  And I'm not so

4   sure we can sit down and come to that conclusion

5   without actually listening or calling in Mr. Urquizo,

6   Mr. Cordova, and Mr. Clark to really tell us about

7   what transpired.  Because you can say they're all

8   lying.  But they had a unique quality to the pattern

9   of being confronted with evidence, with being

10  confronted with how their family members were going

11  to be prosecuted, and given a period of time to think

12  about what their next move was going to be.  And then

13  they called their family members and say, Here's what

14  happened, and here's how I got pinched.

15          And Your Honor, I just don't think it's a

16  trivial matter.  And I'm mindful of one of the

17  Court's admonitions -- I think it was in the

18  beginning of November, when we started the hearings,

19  it's like, Look, we're going to have a trial on

20  January 29.  And if we don't have your motions heard,

21  I'm going to deem them denied.  And I don't think

22  this is the kind of motion we can just deem denied

23  because of the timeliness.  Because the timeliness is

24  not the fault of the defendants.

25          Your Honor, we have been complaining about

SANTA FE OFFICE                                                                MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                                   (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492
                                                                              1-800-669-9492


PROFESSIONAL COURT
REPORTING SERVICE

BEAN
& ASSOCIATES, Inc.

e-mail: info@litsupport.com

1  this for some time.  You have instructed the United

2  States how to review Brady and Giglio information.

3  And, Your Honor, they know how to review Brady and

4  Giglio information.  And this is Brady and Giglio

5  information.  And there is absolutely no compelling

6  reason why this was disclosed on January 12th of

7  2018, and not sometime during the year of 2016 or

8  2017.

9           So, Your Honor, in light of the egregious

10  violations of this Court's orders, I would move to

11  strike Benjamin Clark, Billy Cordova, and Lupe

12  Urquizo as witnesses in this case.

13           Or in the alternative, we can have an

14  evidentiary hearing to see what the actual

15  individuals say about the pressure that was put on

16  them, and not take the representations of counsel.

17           THE COURT:  All right.  Thank you, Mr.

18  Lowry.

19           Any other defendant want to say anything on

20  this?  Mr. Villa?

21           MR. VILLA:  Judge, I want to just speak to

22  the disclosure of Jencks and echo what Mr. Lowry

23  said.  We've joined his motion.  Mr. Castle filed

24  this motion, this Document 1693, related to Trial 2.

25  It's a motion for immediate production of all the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    remaining materials in the Government's possession

 2    regarding Trial 2 witnesses.  And he filed it

 3    because, as we reviewed the Jencks material, we

 4    thought:  This isn't Jencks, this is Giglio.  This is

 5    Brady.  This is stuff that should have been disclosed

 6    when the Court ordered it disclosed, back in May.

 7    And by way of example, attached to Mr. Castle's

 8    motion is Document 1693-1 which I'd ask the Court to

 9    consider as evidence to this motion.  This is a 302

10    from July 12, 2016 of Billy Cordova.  It's disclosed

11    January 12th with the Jencks material.

12              If you look -- Mr. Castle highlighted it --

13    it discusses the murder of an unknown Los Carnales

14    Gang member.  And what this goes on is Mr. Cordova's

15    role in murdering this individual in the streets of

16    Albuquerque, and dumping his body.  And as you heard

17    from Agent Acee and Mr. Cordova, one of the benefits

18    that Mr. Cordova received was he didn't get

19    prosecuted in the RICO case.  Agent Acee specifically

20    testified -- and the Court can take notice of that

21    for its decision here -- that he told Agent Neale to

22    stop writing overt acts on Mr. Cordova because Mr.

23    Cordova was going to cooperate.  And that was one of

24    the benefits Mr. Cordova received.

25              Well, this is information that Agent Acee

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and his team learned that Mr. Cordova did on behalf

2    of the SNM.  It goes into detail about how they're

3    told to kill this Los Carnales Gang member because

4    he's Los Carnales, and they're SNM, and that's what

5    they do allegedly.  And Mr. Cordova is proceeding to

6    describe how he did it, and how he dumped the body in

7    San Jose, in Albuquerque.  And this wasn't disclosed

8    until January 12.

9              This is isn't Jencks, Judge.  This is

10   Brady.  This is Giglio.  And the Government knew

11   about it not just recently, but according to this

12   document, in July of 2016.  So I think on the

13   discovery violation alone, you could strike Billy

14   Cordova's testimony as the appropriate remedy now

15   that we're on the eve of trial, before you ever have

16   to get into the coercion part.  This document -- and

17   Mr. Castle refers to another one in here, which the

18   Court can look at -- are just one example of many,

19   when you review this Jencks material.  It isn't

20   Jencks.  It's Giglio.  It's Brady.  And it should

21   have been produced as soon as these reports were

22   available.

23              THE COURT:  All right.  Thank you, Mr.

24   Villa.

25              Any other defendant have anything to say on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    this motion?

2              All right.  Mr. Beck?

3              So you dropped the bow tie for trial, and

4    going with a bolo tie?

5              MR. BECK:  Yeah, just today.

6              THE COURT:  That surprises me, Mr. Beck.

7    There is a leap, you know; just go with a straight

8    tie.

9              MR. BECK:  From the bow tie to the bolo

10   tie.  I figured I'd try it out today.

11             THE COURT:  What do you think at the end of

12   the day?

13             MR. BECK:  You know, it's feeling pretty

14   comfortable.  This was my great uncle's, this was

15   his.

16             THE COURT:  Some juries don't like bolo

17   ties.

18             MR. BECK:  I guess I'll add that to my voir

19   dire.

20             THE COURT:  They don't like bow ties

21   either.  And they don't like beards.

22             MR. BECK:  I have heard that before.  I

23   have heard that.

24             Your Honor, I will start with Exhibit C

25   from the motion to strike.  This is the call in which

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    a person talks to his brother, Daniel, about what
 2    they were going to do to him.  Mr. Urquizo does not
 3    have a brother named Daniel.  And it says that the
 4    party calling is Marty, and not Mr. Urquizo.
 5              THE COURT:  I'll tell you what, given the
 6    time we're here, do you plan on filing a written
 7    response to this?
 8              MR. BECK:  Sure.  We can.
 9              THE COURT:  All right.  Well, you've heard
10    the arguments today, and you've seen the brief.  Why
11    don't you file a response and take a look at it?
12              All right.  We need to bring it to an end.
13    There is an issue that Ms. Wild was out of the room
14    on as far as exhibits.  So I might suggest that Ms.
15    Jacks, maybe you and Mr. Beck can come up and talk a
16    little bit about the -- Ms. Wild wants to talk to
17    each trial team.  So if y'all come up after it's over
18    and talk to her.  And Ms. Wild, the topic that we
19    need to discuss is going to be how we number
20    exhibits.  Do we want one set of exhibits?  Do we
21    want one for each jury?  I think the Government
22    thinks there should just be one.  The defendants are
23    leaning toward separate ones.  But if you'll add that
24    to the list.
25              All right.  I appreciate everybody's hard
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     work.  We'll see you at 8:30 on Monday morning, and

2     look forward to working with you.

3                (The Court was adjourned.)

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                              C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7              I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13             In testimony whereof, I have hereunto set my

14   hand on February 2, 2018.

15

16

17

18                         _____
                           Jennifer Bean, FAPR, RMR-RDR-CCR
19                         Certified Realtime Reporter
                           United States Court Reporter
20                         NM CCR #94
                           333 Lomas, Northwest
21                         Albuquerque, New Mexico 87102
                           Phone:  (505) 348-2283
22                         Fax:    (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com