IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | )   CRIMINAL NO. 15-4268 JB |
| | ) |
| vs. | ) |
| | ) |
| **ANGEL DELEON, et al.,** | ) |
| | ) |
| Defendants. | ) |

### UNITED STATES' RESPONSE TO DEFENDANT BACA'S RULE 29 MOTION REGARDING COUNT 8

Defendant Anthony Baca has moved this Court for a judgment of acquittal as to Count 8 of the Second Superseding Indictment.   In that count, the defendant is charged with 18 U.S.C. § 1959(a)(6): Violent Crimes in Aid of Racketeering (Conspiracy to Commit Assault Resulting in Serious Bodily Injury).

**BACKGROUND**

The Court has heard testimony that at the time of the offense charged in Count 8 that there was an outstanding "green light" on the victim, J.R., for more than ten years following his affair with another SNM member's wife/girlfriend.   On July 13, 2015, the New Mexico Corrections Department (NMCD) began to lift its lockdown of the SNM gang.   Conrad Villegas assaulted J.R. in their pod shortly after the inmates were released from their cells.   Consequently, J.R. suffered the injuries depicted in the government's trial exhibits.   The injuries were serious enough that J.R. could not be treated at a local hospital; instead, he was airlifted and taken to a hospital in El Paso, Texas where he was admitted.

Witness Lupe Urquizo testified at trial that in July 2015 he and Jonathan Gomez ordered Conrad Villegas to hit J.R.   Prior to that time, defendant Anthony Baca asked that J.R. be killed,

which showed his agreement with the outstanding "green light" issued by Gerald Archuleta years earlier.   Gerald Archuleta testified that he never lifted or withdrew the "green light" on J.R. Urquizo explained that J.R. was not murdered because Jonathan Gomez did not want to get locked down.   Defendant Baca was out of state, so he would not have to face the consequences of the lock down.   Consequently, Jonathan Gomez modified the order to murder J.R. and instead ordered the assault.

**ARGUMENT**

Specifically enumerated VICAR offenses, such as conspiracy to commit assault resulting in serious bodily injury, rely on the generic federal definition of the crime and need not match the state statute. *See United States v. Joseph*, 465 F. App'x 690, 696 (9th Cir. 2012).   Section 1959 does not enumerate violations of specific statutes that constitute the underlying crime of violence. Rather, the Committee responsible for Section 1959 stated that:

> While Section [1959] proscribes murder, kidnapping, maiming, assault with a dangerous weapon, and assault resulting in serious bodily injury in violation of federal or State law, it is intended to apply to these crimes in **a generic sense**, whether or not a particular State has chosen those precise terms for such crimes.

129 Cong. Rec. 22, 906 (98th Cong. 1st Sess. Aug 4, 1983) (emphasis added).

To determine whether a particular predicate violation incorporated into a federal statute, such as RICO or Section 1959, falls within the "generic definition" of a particular type of offense, the Supreme Court has examined analogous provisions of the Model Penal Code and state and federal statutes existing at the time Congress enacted the federal statute at issue to determine the prevailing definition of the offense at that time.   For example, RICO's definition of "racketeering activity" includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance . . . which is

chargeable under state law." 18 U.S.C. § 1961(1). *Scheidler v. National Organization for Women, Inc.* 537 U.S. 393 (2003) presented an issue whether a state extortion statute could constitute a RICO predicate offense. The Supreme Court ruled that Congress intended RICO's definition of racketeering activity to encompass violations under state law that fall within "generic" definitions of these types of offenses. *Scheidler*, 573 U.S. at 409-410. The Section 1959 definition of "racketeering activity" includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance . . . which is chargeable under state law." 18 U.S.C. § 1959 (b)(1) (referring to the definition set out in 18 U.S.C. § 1961).

> RICO explicitly provides that conduct that violates a state or federal criminal law is a requisite element of a § 1959 violation. Such crimes of violence constitute predicate acts under RICO. *United States v. Martino,* 648 F.2d 367, 381 (5th Cir. June 1981). RICO criminalizes "the furthering of the enterprise, not the predicate acts." *Id.* Thus, "RICO was enacted to supplement rather than replace the existing predicate crimes and penalties." *United States v. Crosby,* 20 F.3d 480, 484 (D.C.Cir.1994)

*United States v. Kehoe*, 310 F.3d 579, 588 (8th Cir. 2002).[1]

*Scheidler* presented an issue whether a state extortion statute could constitute a RICO predicate offense. The Supreme Court ruled that Congress intended RICO's definition of

---

[1] For further discussions of generic offenses under Section 1959, *see United States v. Crenshaw*, 359 F.3d 977, 988-89 n. 4 (8th Cir. 2004); *United States v. Pimentel*, 346 F.3d 285, 301-05 (2d Cir. 2003); *United States v. Kehoe*, 310 F.3d 579, 588 (8th Cir. 2002); *United States v. Marino*, 277 F.3d 11, 29-30 (1st Cir. 2002); *United States v. Carrillo*, 229 F.3d 177, 182-86 (2d Cir. 2000); *United States v. Diaz*, 176 F. 3d 52, 96 (2d Cir. 1999); *United States v. Tolliver*, 61 F.3d 1189, 1208-09 (5th Cir. 1995); *United States v. Orena*, 32 F.3d 704, 714 (2d Cir. 1994); *United States v. Cuong Gia Le*, 316 F. Supp. 2d 355, 359-64 (E.D.Va. 2004); *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 782-84 (E.D.Va. 2004); *United States v. Morales,* 881 F. Supp. 769, 770-72 (D. Conn. 1995); *United States v. Wei*, 862 F. Supp. 1129, 1138-39 (S.D.N.Y. 1994); *United States v. Cutolo*, 861 F. Supp. 1142, 1146-47 (E.D.N.Y. 1994).

racketeering activity to encompass violations under state law that fall within "generic" definitions of these types of offenses. *Scheidler*, 537 U.S. at 409-410.

The label or name of the statute violated is not relevant in seeking to prove the offense.

*See United States v. Le*, 316 F. Supp. 2d 355, 360 (E.D. Va. 2004) ("it seems clear that Congress, not wishing to unnecessarily create new crimes, sought to craft § 1959 so that it reached the generic conduct described therein, whatever label a particular state might use to criminalize that conduct.")

**CONCLUSION**

The United States requests this Court to deny defendant Baca's motion to dismiss Count 8.  The evidence at trial established that Defendant Baca conspired to murder J.R.   Consequently, the intended harm would create a high probability of death or result in serious disfigurement.   The jury could infer from the testimony that there was an agreement to commit the crime, and Rule 29 permits the Court to dismiss the charges when "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29.   A reasonable jury could infer from the evidence that Defendant Baca conspired to commit the crime charged in Count 8.   Therefore, the Court should not dismiss the count.

Respectfully Submitted,

JAMES D. TIERNEY
First Assistant U.S. Attorney

*Electronically filed on 3/1/18*
MARIA Y. ARMIJO
RANDY M. CASTELLANO
MATTHEW M. BECK
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM   88001
(575) 522-2304 – Tel.

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send electronic notification to defense
counsel of record on this date.

/s/_____
RANDY M. CASTELLANO
Assistant United States Attorney