```
 1            IN THE UNITED STATES DISTRICT COURT

 2             FOR THE DISTRICT OF NEW MEXICO

 3   UNITED STATES OF AMERICA,

 4        Plaintiff,

 5        VS.                      CR. NO. 15-4268 JB

 6   ANGEL DELEON, et al.,

 7        Defendants.

 8

 9        Transcript of Motion Proceedings before
     The Honorable James O. Browning, United States
10   District Judge, Las Cruces, Dona County,
     New Mexico, commencing on March 12, 2018.
11

12   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck
13

14

15   For the Trial 1 Defendants: Mr. Brock Benjamin, Ms.
     Cori Harbour-Valdez; Mr. Patrick Burke; Mr. Jim
16   Castle; Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
     Shattuck; Mr. John Granberg; Mr. Eduardo Solis; Mr.
17   Billy Blackburn; Mr. Donovan Roberts; Ms. Lisa
     Torraco; Angela Arellanes
18
     For the Trial 1 Defendants:  Ms. Theresa Duncan; Ms.
19   Amy Jacks; Mr. Richard Jewkes; Ms. Carey Bhalla; Mr.
     William Maynard; Ms. Justine Fox-Young; Mr. Ryan
20   Villa

21   (Trial 1 attorneys left after verdict was returned.)

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Good morning,
2    everyone.  I appreciate everybody being here and on
3    time and ready to go.
4              The Court will call United States of
5    America versus Angel DeLeon, Criminal 15-4268 JB.
6    I'll call roll here a little bit according to the way
7    I've organized things to start working on the hearing
8    for the second trial.  And so I'll call the
9    defendants that are awaiting the verdict in the Trial
10   1 at the end of this.
11             But let's start with Joe Lawrence Gallegos,
12   Defendant Joe Lawrence Gallegos.
13             MR. BENJAMIN:  Good morning, Your Honor.
14   Brock Benjamin on behalf of Mr. Gallegos, who is
15   ready.
16             THE COURT:  All right.  Mr. Benjamin, good
17   morning to you.  Is Mr. Sindel with you today?
18             MR. BENJAMIN:  He is not, Your Honor.
19             THE COURT:  All right.  So it's just you
20   today.  All right.  Mr. Benjamin, good morning to
21   you.
22             And for Defendant Edward Troup.
23             MS. HARBOUR-VALDEZ:  Good morning, Your
24   Honor.  Cori Harbour-Valdez and Pat Burke on behalf
25   of Edward Troup.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  All right.  Ms. Harbour-Valdez,

2  good morning to you.  Mr. Burke, good morning to you.

3  And Mr. Troup, good morning to you.

4           THE DEFENDANT:  Good morning, Your Honor.

5           THE COURT:  Mr. Gallegos, good morning to

6  you.  I didn't say good morning to you.

7           THE DEFENDANT:  Good morning.

8           THE COURT:  I was looking for Mr. Sindel

9  and didn't say hello to you.

10          All right.  And for Defendant Billy Garcia.

11          MR. COOPER:  Good morning, Your Honor.  Bob

12  Cooper and Jim Castle on behalf of Mr. Garcia.  And

13  he is present today.

14          THE COURT:  All right.  Mr. Cooper, Mr.

15  Castle, Mr. Garcia, good morning to you.

16          THE DEFENDANT:  Good morning, Your Honor.

17          THE COURT:  For Defendant Allen Patterson.

18          MR. SHATTUCK:  Good morning, Your Honor.

19  Joe Shattuck for Mr. Patterson, who is present as

20  well.  And Mr. Lahann will be here shortly.

21          THE COURT:  All right.  Mr. Shattuck, good

22  morning to you.  Mr. Patterson, good morning to you.

23          THE DEFENDANT:  Good morning, Your Honor.

24          THE COURT:  And for Defendant Christopher

25  Chavez.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

4

```
 1              MR. GRANBERG:  Good morning, Your Honor.
 2   John Granberg and Eduardo Solis for Mr. Chavez.
 3              THE COURT:  All right.  Mr. Granberg, Mr.
 4   Solis, good morning to you.
 5              MR. SOLIS:  I've only been on the case for
 6   two days.  I'm here to assist Mr. Granberg with
 7   whatever he instructs me to do.
 8              THE COURT:  All right.  Glad to have you
 9   here.
10              And for defendant Arturo Arnulfo Garcia.
11              MR. BLACKBURN:  Billy Blackburn on behalf
12   of Mr. Garcia, who is present, and we're ready, Your
13   Honor.
14              THE COURT:  All right.
15              MR. BLACKBURN:  Mr. Davidson will not be
16   joining us this week.
17              THE COURT:  Mr. Blackburn, good morning to
18   you.  Mr. Garcia, good morning to you.
19              THE DEFENDANT:  Good morning.
20              THE COURT:  And for Defendant Andrew
21   Gallegos.
22              MR. ROBERTS:  Good morning, Your Honor.
23   Donovan Roberts and Lisa Torraco for Andrew Gallegos.
24   We're all present and ready to proceed.
25              THE COURT:  All right.  Mr. Roberts, Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1     Torraco, Mr. Gallegos, good morning to you.

 2              And for Defendant Shauna Gutierrez.

 3              MS. ARELLANES:  Angela Arellanes with Ms.

 4     Gutierrez, who appears in person.

 5              THE COURT:  All right.  Ms. Arellanes, good

 6     morning to you.  Ms. Gutierrez, good morning to you.

 7              THE DEFENDANT:  Good morning.

 8              THE COURT:  And then for Defendant Daniel

 9     Sanchez.

10              MS. JACKS:  Good morning, Your Honor.  Amy

11     Jacks and Richard Jewkes for Mr. Sanchez.

12              THE COURT:  All right.  Ms. Jacks,

13     Mr. Jewkes, Mr. Sanchez, good morning to you.

14              And for Mr. Baca.

15              MS. DUNCAN:  Good morning, Your Honor.

16     Theresa Duncan appearing on behalf of Mr. Baca.  And

17     Mr. Lowry won't be with us this week.

18              THE COURT:  All right.  Ms. Duncan, Mr.

19     Baca, good morning to you.

20              THE DEFENDANT:  Good morning, Your Honor.

21              THE COURT:  And for Mr. Herrera.

22              MR. MAYNARD:  Good morning, Your Honor.

23     Bill Maynard for Mr. Herrera.

24              THE COURT:  All right.  Mr. Maynard, good

25     morning to you.  Mr. Herrera, good morning to you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6

```
 1              And for Mr. Perez.
 2              MS. FOX-YOUNG:  Good morning, Your Honor.
 3    Justine Fox-Young for Mr. Perez.  And Ryan Villa is
 4    on his way.  I think we'll see him about 10:00 this
 5    morning.
 6              THE COURT:  All right.  Ms. Fox-Young, good
 7    morning to you.  Mr. Perez, good morning to you.
 8              All right.  So I have been told that this
 9    is also a pretrial conference, so what I propose to
10    do is to start with some of the details of the
11    pretrial conference, and then we will fit the motions
12    in.  Ms. Wild has kept me posted with how y'all want
13    to have them argued.  I had an earlier list last
14    week.  I have a revised list.  Assuming the revised
15    list is how you want to argue it, then we'll proceed
16    that way.
17              Let me introduce you to Carol Bevel.  Many
18    of you who may know her.  She's been Judge Christina
19    Armijo's courtroom deputy for a long time.  And, of
20    course, with the Chief taking -- Judge Armijo taking
21    senior status, she's taking nothing but civil cases.
22    She's not taking any criminal cases.  So Ms. Bevel's
23    courtroom duties go way down, so she's been moved
24    over to me.  So those of you who have met Michelle
25    Behning, she's been moved to the magistrate judge's
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    division.  And I'm lucky to have such an experienced

 2    CRD starting work for me today.  So today is her

 3    first day.

 4           And as I understand things, JoAnn

 5    Standridge is going to work with me until we receive

 6    a verdict, or some resolution of the first trial, and

 7    then she'll be leaving me.  So Ms. Bevel and I will

 8    be working with you on the second trial.  So both of

 9    them will be here for at least a while.

10           All right.  What I'm going to tell the jury

11    on April 9 is that this is a six- to eight-week

12    trial.  We're in the seventh week of the Trial 1.  So

13    I think everybody estimated fairly well.  So I'm

14    going to tell them six to eight weeks on the second

15    one, to see if there is any problems with their

16    schedules.  As you know, that is what we also told

17    them both in the cover letter and in the

18    questionnaire itself.  So unless somebody sees some

19    reason to do something different on April 9, I would

20    propose that I use that six to eight weeks.

21           Does that sound good from the Government's

22    standpoint?

23           MS. ARMIJO:  Yes, Your Honor.

24           THE COURT:  Any of the second trial

25    defendants think anything else needs to be used, as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8

```
 1    we talk to the jury?  All right.  Not hearing any,
 2    then I will plan on telling them six to eight weeks
 3    for that trial.
 4              Courtroom:  I'm still a little undecided as
 5    to where we're going to have this trial.  Of course
 6    on the questionnaire we have indicated it's here.
 7    And I think presumption-wise, the case was indicted
 8    down here, I did the first trial down here.  We are
 9    looking at some rather large numbers.  And so I'm
10    trying to make it work.  There was some discussion of
11    putting it into the Sierra Blanca room.  And I'm not
12    as familiar with the courthouse here as some of y'all
13    may be, but I think that's the room right next door.
14    It's a little larger, but it's only six feet larger.
15    So it doesn't give me a lot more room.  It doesn't
16    give me the room that I have up in say, the Rio
17    Grande.  I think we've all been in the Rio Grande up
18    in Albuquerque.
19              I can't probably do the nice tables.  I
20    hope the defendants would agree that this was a nice
21    layout for them during the trial.  We worked very
22    hard to make it one that worked as far as optics from
23    the jury standpoint, from the voir dire standpoint,
24    and also for the comfort of the defendants and their
25    counsel and the paralegals.  I probably can't do that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    with these sort of numbers that we're looking at.  So
2    I'm still undecided about location.
3           Ms. Jacks has sort of educated us a little
4    bit on her experience around the country.  And we may
5    pick up one of her tips as far as building two
6    tables.  And so, what I understand Ms. Wild is
7    thinking about doing is putting a table -- just one
8    long table here for the counsel, and then behind that
9    a table for the defendants, and so you'll turn
10   around.  But I don't have anything better, and
11   Ms. Jacks says it seems to work.  So that's kind of
12   what I'm looking at doing.  And that's probably going
13   to be whether it's in this room or Rio Grande or
14   Sierra Blanca.  I don't see any other way to do any
15   sort of seating.  So probably that means paralegals
16   and other people that may sit with you may not be
17   able to sit with you.  We can probably figure out
18   places that they can go.  But right at the moment,
19   the courtroom is still open, the location is still
20   open, and the seating arrangement is probably going
21   to move toward two long tables that I will have to
22   build for this trial.
23          So I don't have a lot more to say on that.
24   I will still be working with Ms. Wild, and I'll keep
25   you posted.  But I'm concerned about the numbers that
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    we're looking at, that Las Cruces may just not be
 2    able to accommodate a trial -- I guess there is eight
 3    of you for the second trial.  So we'll just have to
 4    keep an eye on that.
 5           As in the first trial, I had closings
 6    before the instructions.  But y'all may want to do
 7    something different.  Does the Government want
 8    closings before instructions or after instructions?
 9           MS. ARMIJO:  After.
10           THE COURT:  You want closings after.  Most
11    lawyers want that.  Do I hear anybody wanting
12    something different?  Most people want to get the
13    judge out of the way so they can talk to the jury.
14           I haven't talked to Ms. Wild.  I don't know
15    if any of this has been filed or anything like this,
16    but it seems to me that we've worked through a lot of
17    details on the elements of the offense.  And so
18    normally what I would do is request that everybody
19    provide for me so I can put in the preliminary
20    instruction the elements of the offense.  What I
21    would propose is other than the name changing, go
22    ahead and use for the preliminary instruction what I
23    used in the first trial, which for those of you who
24    were not present for some of the portions, the jury
25    later asked us for a list of names and counts so that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    they could begin to match it.  Because it was a
 2    little hard for them to keep that straight.  So we
 3    ended up early in the trial giving them a copy of the
 4    preliminary instruction.  And that's not something
 5    I've normally done, but we might give it some
 6    thought.  So I'm not sure I need elements of the
 7    offense.  If I can have Ms. Bevel hand out to you a
 8    copy of the preliminary instruction we gave in the
 9    first trial and give it to the eight lawyers.  And
10    then I can also just see if anybody has any problem.
11    But other than changing the names, I would propose to
12    use those elements to give the jury.  And then just
13    think about it.  What would you think about giving
14    them the preliminary instruction right then, after
15    they -- after I read it, they see it on the Elmo, we
16    just hand them an instruction so that they can begin
17    to keep track a little bit of the defendants and the
18    counts.  What would the Government think about that
19    sort of proposal?
20            MS. ARMIJO:  Your Honor, that's a good idea
21    given the confusion in the first trial.  And this has
22    more defendants, four murders, and some different
23    incidents.  And as you know, we had a lot fewer in
24    the first one.
25            THE COURT:  Okay.  What would the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

12

```
 1   defendants think about that?  Would that work for
 2   y'all?  Mr. Cooper?
 3            MR. COOPER:  Your Honor, I haven't looked
 4   at that preliminary instruction in a while.
 5            THE COURT:  Okay.  We'll get you a copy and
 6   we'll pass it out.  And then you can take a look at
 7   it.  It's based upon the Tenth Circuit pattern
 8   instruction, and then -- it doesn't go into all the
 9   sort of -- I know this is VICAR -- I'll call them
10   racketeering acts -- it doesn't go into the elements
11   that have to be proved for murder and those things.
12   It just simply has the jury focus on the VICAR
13   elements.  And then it lists for them the counts, but
14   it doesn't define the counts.  What do you think
15   about that?
16            MR. COOPER:  I'd like to just sit tight on
17   it.
18            THE COURT:  Sure.
19            MR. COOPER:  Look at it, and talk with
20   co-counsel before we make the decision.
21            THE COURT:  All right.  Why don't we do
22   this:  I'll go ahead and preliminarily sort of rule
23   that what I'm going to do is give something that's
24   pretty close to what was in the first trial.  And
25   then let's plan on passing it out to the jury.  And I
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    won't make a final ruling on that till y'all get a
 2    copy.  So Mr. Hammond, if Ms. Bevel would sort of
 3    figure out who gets copies and get those passed out
 4    to the defendants I think.
 5            All right.  Generally in the preliminary
 6    instruction I put the jurors can take notes.  I give
 7    them cautionary instructions about notetaking and not
 8    get too hung up on notetaking.  Is that acceptable
 9    this time around as well?
10            (Mr. Lahann entered the courtroom.)
11            MS. ARMIJO:  Yes, Your Honor.
12            THE COURT:  How about from the defendants?
13    I'll say that it sure looked to me like they were
14    taking notes.  It looked like that was something that
15    they did throughout the trial.  And I think several
16    times it came up that we noted that on the record
17    that they were taking notes.  Anybody have any
18    objection to that?  All right.  Not hearing anything,
19    I'll put into the preliminary instruction they can do
20    notetaking.  And I'll caution them about not getting
21    hung up on notetaking, and leave their notes in the
22    jury room overnight.
23            I also put in a paragraph about questions
24    by jurors.  I asked them to write out questions, give
25    it to the courtroom deputy while the witness is still
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    on the stand and show them to you.  I don't typically
2    ask questions of witnesses, and I don't recall if I
3    did in this trial at all, but I don't typically do
4    that.  I'll show it to you.  If we can work it in,
5    fine; if we can't, we won't.  But anybody have any
6    problem with that being put in there?  We did get a
7    few questions from the jurors.  Some of them were
8    interesting, but I'm not sure that we did a whole lot
9    with them.  Sometimes they were just -- all right.
10   So not hearing anything --
11              MR. CASTLE:  Your Honor, with regards to
12   jury questions, is the Court going to allow us to do
13   follow-up questions?
14              THE COURT:  I'm not talking about voir dire
15   yet.
16              MR. CASTLE:  No, no, I'm talking about if
17   the juror asks a particular question, opens up a new
18   area.
19              THE COURT:  Well, I'll show it to you.  If
20   you want to go into the area, that's fine.  If for
21   some reason you want me to go into it, I'll do it.
22   But I'll show it to you before I do anything, and let
23   you kind of decide how you want to go into it.
24   Typically, what happens is the lawyers take care of
25   it.  They either say:  We can't go into that area, we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    don't want you to go into it, Judge, or we'll take
 2    care of it, we'll ask the questions.  So that's
 3    typically my experience.  Probably yours, too, right?
 4                 MR. CASTLE:  Yes.
 5                 THE COURT:  All right.  So we'll put that
 6    in there.  We used six alternates for the trial.  So
 7    we had 18.  You can see how the jury box is set up
 8    for 18.  We did lose two jurors.  I think we lost a
 9    real juror -- if I'm not mistaken, we lost one real
10    juror to the flu about the second or third week, it
11    might have been the fourth week, I can't remember.
12    And then we lost an alternate literally first day of
13    last week, Monday.  So we juggled some alternates,
14    but we now have four alternates still under charge,
15    so that's where we are.
16                 Anybody want to deviate from that?  Do you
17    want to keep the six alternates?
18                 MS. ARMIJO:  Yes, Your Honor.  Especially,
19    I think, because we'll be getting into summertime and
20    things like that, it might be wise.
21                 THE COURT:  Maybe we'll get past flu
22    season.
23                 MS. ARMIJO:  They will.
24                 THE COURT:  Maybe.
25                 MS. ARMIJO:  Although I've had flu in April
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   so --
2              THE COURT:  My grandkids were fighting it
3   again this weekend.  They just get the flu.
4              How about the defendants?  Are y'all
5   comfortable with 18?  Anybody want a different
6   number?  And how about -- do you want to discharge
7   them at the end?  Do you want to keep some under
8   charge?  Keep all of them under charge?  What's the
9   Government's preference?
10             MS. ARMIJO:  I think we keep them under
11  charge and just wait to see how many -- if we haven't
12  lost any or not.  We may not need to leave all six,
13  but certainly we can revisit that.
14             THE COURT:  Okay.  So at the beginning you
15  want to keep all under charge?
16             MS. ARMIJO:  Yes.
17             THE COURT:  How about the defendants?  Are
18  y'all comfortable with that?  All right.  So at the
19  present time, when I excuse the jurors and keep the
20  alternates here, I'll keep them under charge, as I
21  have under the first trial.
22             Let's talk about how we're going to run the
23  trial.  We ran a fairly traditional schedule this
24  last time.  We ended up work pretty much 8:30 to
25  5:30, which is pretty long days, but it allowed us to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    keep our word to the jury.  And I'd be a little
 2    reluctant to do something else.  It's going to be a
 3    little bit more logistics for the marshals to have
 4    people in here at 8:30, but Ms. Wild has talked to
 5    them and they've assured us that they'll be able to
 6    do that.  So, you know, we could try to do something
 7    different.  We could try to front-end load something.
 8    I think it's hard to get everybody in here before
 9    8:30.  So I'm not sure that we can do much more than
10    run the sort of traditional schedule that we ran
11    here.  I guess there is a possibility we could
12    front-end load the day, take a couple of breaks, no
13    lunch break, and break a little earlier in the day,
14    so you can prepare for the next day.  But I don't
15    know.  What's your thoughts?  Do you want to keep it
16    the same schedule we basically ran the last trial?
17              MS. ARMIJO:  I believe so, Your Honor.  I
18    know that we didn't have like a set lunchtime
19    depending on the days.  And I think the jury was
20    flexible with that.  But I think they definitely
21    wanted their lunch.  And the only other thing is I
22    will defer to the U.S. Marshal's Office.  I don't
23    know that we could get all the defendants here by
24    8:00.
25              THE COURT:  Yeah, that probably is true.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    It might be tough.  And it's tough to get people
 2    through doors.  So I'm not inclined to start earlier
 3    than 8:30, even if we were to try to front-end the
 4    day.
 5             How about the defendants?  Looks like the
 6    Government is saying just stay on a traditional
 7    schedule and have a lunch break.  Is that what
 8    everybody wants, rather than trying to do anything
 9    different on this case?  Everybody is kind of nodding
10    their head.  All right.  So we'll run a traditional
11    day.
12             If, by chance, we move this thing to
13    Albuquerque, I may sort of do a little bit different
14    on the lunch breaks.  In this last trial, because we
15    were starting at 8:30 -- and we were very good, the
16    counsel, the parties, the jurors were all very good
17    about being here on time.  I can't think of a day
18    that we had anyone sort of late.  We go from 8:30 to
19    about 10:00.  Sometimes we'd get started a little
20    early in here.  The counsel were great, they get on
21    in here and we started about 8:15, and that would run
22    to 9:45, and then we take a 15-minute break, and that
23    would put us at 11:30, which is a little early to
24    take lunch.  So oftentimes, we take a 15-minute
25    break, go another hour and a half, which put us about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   1:15.  The jurors seemed to like that.  They seem to

2   like the fact that didn't have such a long afternoon.

3   They kind of worked hard in the mornings, and then

4   they kind of got off the afternoon.  We might do

5   that.  I think if we're down here, we probably will

6   still work around those sort of lunch hours.  If

7   we're up there, I may actually take a little bit more

8   of a set lunch, like let y'all go at 11:45, let you

9   have an hour and 15 minutes, and I may stay on the

10  bench and work from 11:45 to noon, try to get maybe

11  some initial scheduling conferences or some

12  time-served sentences or something like that done.

13  But for the present time we'll kind of run the

14  schedule that we ran down here.

15          Openings.  All right.  Let's sort of chart

16  those out.  What does the Government expect the

17  length of its opening to be?

18          MS. ARMIJO:  No more than one hour.

19          THE COURT:  All right.  Let's then go to

20  you, Mr. Benjamin.  How long do you think your

21  opening will last?

22          MR. BENJAMIN:  Your Honor, we've been going

23  through it, but I don't think I'll be any longer than

24  an hour.

25          THE COURT:  Okay.  Ms. Harbour-Valdez, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Burke?

 2           MR. BURKE:  Less than an hour, no doubt.

 3           THE COURT:  Okay.  Do you have some

 4   estimate that I could put down?

 5           MR. BURKE:  Half hour.

 6           THE COURT:  Okay.  How about Mr. Cooper?

 7   Mr. Castle?

 8           MR. CASTLE:  Your Honor, before I tell you

 9   how much time, I want to explain a little bit about

10   how we're thinking of doing the openings.

11           THE COURT:  Okay.

12           MR. CASTLE:  It was our hope that

13   Mr. Garcia could go first in the openings, and do an

14   overview of Counts 1 and 2, then subsequent counsel

15   can borrow from and not have to repeat.  So we

16   anticipate that our opening might be longer than

17   others, but I still think it will be within an hour.

18   But I would ask the Court to consider a little

19   indulgence because we're going to try to cover areas

20   that other defendants are essentially going to be

21   able to use.

22           THE COURT:  Okay.  And that reminds me.

23   Your order is fine, y'all can just give me the order

24   of however you want to do it.  And if you want to

25   give it to me so that I can call and look like we've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    coordinated this, that would be great.  If we can't,

2    I'll just do the best I can, recognize who is

3    standing up and try to be ready.  I will assume,

4    given the comments here, that -- and you don't have

5    to tell me this, if you don't want to, but the

6    defendants, it sounds like the defendants are wanting

7    to make an opening at the beginning of the case,

8    rather than reserve it for the end of the case.

9    Okay, it looks like everybody is going there.

10            Did you have something, Mr. Burke?

11            MR. BURKE:  Yes, Your Honor, would you bump

12   me up to 45 minutes just in case.  I understand

13   you're going to hold me to that, so I don't want to

14   be stopped at 31 minutes.

15            THE COURT:  All right.  And so for the next

16   defendants, if you'll tell me, it looks like

17   everybody that's spoken so far wants to do theirs at

18   the beginning.  If you know, and you don't mind

19   saying, it just helps me sort of plan and write the

20   preliminary instructions.

21            But Mr. Shattuck, Mr. Lahann, good to see

22   you this morning.

23            MR. LAHANN:  Good morning, Your Honor.

24            MR. SHATTUCK:  Yes, we'd like to go at the

25   beginning as well, and 45 minutes at the most.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1              THE COURT:  All right.  Thank you, Mr.
 2   Shattuck.
 3              And Mr. Granberg, Mr. Solis, what are you
 4   thinking?
 5              MR. GRANBERG:  Your Honor, we'd like to go
 6   at the beginning, and ask for 30, 35 minutes.
 7              THE COURT:  All right.  How about you, Mr.
 8   Blackburn, what do you have for Mr. Garcia?
 9              MR. BLACKBURN:  Your Honor, we would prefer
10   to go at the beginning and request 45 minutes.
11              THE COURT:  Thank you, Mr. Blackburn.
12              Mr. Roberts, Ms. Torraco, what do you got
13   for Mr. Gallegos?
14              MR. ROBERTS:  I suspect 30 to 45 minutes,
15   Judge, and at the beginning.
16              THE COURT:  All right.  And Ms. Arellanes,
17   I'm so used to looking for you right here.
18              MS. ARELLANES:  30 to 45 minutes, Your
19   Honor.
20              THE COURT:  Thank you, Ms. Arellanes.
21              MS. ARMIJO:  Your Honor?
22              THE COURT:  Yes.
23              MS. ARMIJO:  I know that in the last trial
24   we were unaware that one of the parties was going to
25   have a PowerPoint.  And we would just request -- and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   certainly we would do the same thing if there is
 2   going to be any exhibits that are going to be used at
 3   trial, like pictures from the scene, maybe we could
 4   see them ahead of time just so that we can agree so
 5   it doesn't create a break.  Because I'm certain that
 6   we would probably agree to preadmission of the
 7   exhibits, if that's going to be used.  But we would
 8   just like a warning so we don't have to take the
 9   time.
10           THE COURT:  Can everybody agree to some
11   sort of amount of time?  You'll show your PowerPoint,
12   you'll show -- any exhibits you're going to show
13   during the trial, you'll show it to the other side at
14   some specified time before?
15           MR. CASTLE:  Your Honor, they're just
16   requesting the exhibits we might use?
17           THE COURT:  I think they also want
18   PowerPoints, if you'll just run them past so they can
19   make objections to it.
20           MR. CASTLE:  Well, I disagree, unless
21   they're going to show me their opening statement in
22   advance, write it out, and let me go through it and
23   parse through it and make objections to their opening
24   statement.  A PowerPoint opening is essentially just
25   a visual opening statement, just like any other
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

24

```
1    opening statement.  I don't think there is any
2    problem with exhibits, and notifying the other side
3    of the exhibits that might be used.  But those that
4    might use a PowerPoint, frankly, it's a work in
5    progress that happens all the way until it's
6    presented, essentially.  So I have a problem with
7    that generally, because I think we're going to
8    micromanage openings with objections, et cetera.
9         I know, when it came up in the first trial,
10   they raised an objection and went to the bench, the
11   Court overruled the objection and proceeded.  But
12   like I say, exhibits are fine, but I don't know of
13   any precedent to basically preview your opening with
14   opposing counsel.
15        THE COURT:  Okay.  Well, I have to agree
16   that I probably can't force this.  We can reach a
17   stipulation that -- I think that would be fine.  Do
18   be cautious.  Try to not put stuff in your
19   PowerPoints or in your openings that are going to
20   draw objections, and I've got to pull it off the
21   screen and stuff.  So try to use some good judgment
22   about that.
23        I remember I had a trial out in San
24   Francisco, and my partner had all these -- y'all
25   remember the days of juror notebooks, you remember?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I know that sounds like stone age now.  But he put a
2    bunch of exhibits in there that the other side didn't
3    agree to, and that just delayed everything, you know.
4    He sent me in -- it was a civil trial.  He sent me
5    in, he said, read some depositions while I straighten
6    this notebook out.  So I went in there and bought him
7    an hour, hour and a half, which is a horrible way for
8    a plaintiff to start a trial, and then came out.  And
9    he said:  "Do it some more."
10          I go, "I don't have any more."  So try to
11   avoid that.  Let's try to get off to a good start and
12   make sure it's pretty sanitized.
13          So I guess we have an agreement on
14   exhibits.  If you're going to use exhibits, you'll
15   show those to each other before the trial starts.
16   But as far as PowerPoints, I tend to agree, they're
17   probably a work in progress.  So all I can do is kind
18   of give you an admonition to try to think about
19   putting yourself in the shoes of the other side, and
20   not trying to do something that's going to draw an
21   objection and delay the trial, and delay your opening
22   as well.
23          Everybody -- I know the Government wanted
24   more -- but everybody agree with that from the
25   defendants' standpoint?  All right.  So we'll go with

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    that.
 2              Let's talk about voir dire.  Voir dire.  I
 3    guess some of you saw voir dire and saw how I did the
 4    voir dire in the first trial.  That was the first
 5    trial that I didn't get a jury picked the first day;
 6    did get it picked in two.  And I think we got a very
 7    good jury.  They're a wonderful group to work with.
 8    We'll see what they do, see if they finish strong.
 9    But they seem like a wonderful group.  So I think the
10    hard work that we all put into the first voir dire --
11    so you got to see how I conducted the voir dire.  And
12    I think I front loaded a lot of the questions that
13    the lawyers would be concerned about, I took it on my
14    time to ask questions and things like that.  So I
15    guess the question that I have on the voir dire is,
16    if you have questions about how I do voir dire?  And
17    some of you had multiple trials with me, or seen me
18    do it, or something.  So if you need to ask
19    questions, if you haven't, feel free to ask them.
20    But the question I'm trying to get is how long it's
21    going to take you to do your voir dire, and given the
22    way I do voir dire?
23              So let me, first of all, ask if anybody has
24    any questions about how I do voir dire that you
25    haven't learned from your co-counsel, or you haven't
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

27

```
 1    observed or seen me do?  Do you have a pretty good
 2    feel as to what I'm going to do and take on my time,
 3    and stuff?  Anybody got any questions?  All right.
 4    So the question is going to be how long is your voir
 5    dire going to last.  So Ms. Armijo, what do you
 6    think?
 7              MS. ARMIJO:  No more than one hour.
 8              THE COURT:  No more than one hour.
 9              How about you, Mr. Benjamin?
10              MR. BENJAMIN:  Mr. Sindel will be doing it,
11    Your Honor.  But in speaking with him, I believe an
12    hour, because we're going to try to coordinate.
13              THE COURT:  I'll probably put pressure on
14    everybody to try to keep it under an hour.  It was
15    hard enough to kind of just do it.  I'm not giving
16    everybody a flat cutoff that I won't consider more
17    than an hour.  But let's plan, for planning purposes,
18    keeping it under an hour, shoot for 55 minutes or
19    something like that.
20              See what we've got here.  This is a note
21    dated here at Las Cruces on 3/12/18.  The time is
22    9:30.  It looks like it's still signed by the
23    Foreperson, Juror No. 34, Mr. Laroche.  It says,
24    "Your Honor, could we please have some creamer for
25    the coffee.  Thank you."  Do I hear any objection
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   from the four defendants in the first trial?
 2            MS. JACKS:  No.
 3            THE COURT:  Not hearing any objection.  How
 4   about from the Government?  So I will -- I'm going to
 5   put "yes," here, and then we'll track down some
 6   creamer.  Ms. Standridge, we got a note from the
 7   jury.  They want some creamer for the coffee.  Could
 8   you make that happen?
 9            THE CLERK:  Yes, sir.
10            THE COURT:  What exhibit number is this
11   going to be?  I'm going to mark this note AQ to Ms.
12   Standridge's clerk's minutes.  She'll make a copy,
13   take the note to the jury, and get the creamer to the
14   jurors.
15            All right.  So then, let's go to
16   Ms. Harbour-Valdez and Mr. Burke.  What do you think
17   your voir dire -- how long do you think yours will
18   last?
19            MS. HARBOUR-VALDEZ:  We'd like an hour,
20   Your Honor.
21            THE COURT:  Okay.  Shoot for 55 minutes,
22   sort of make a plan on that.
23            MS. HARBOUR-VALDEZ:  Yes, Your Honor.
24            THE COURT:  I'm not giving you a hard
25   deadline.  But let's try to keep it at 55; then we'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    just play it by ear, depending upon how the questions

 2    are coming in.

 3              Mr. Cooper?  Mr. Castle?  What are you

 4    looking at?

 5              MR. CASTLE:  Your Honor, if I ask for two

 6    hours will you give me an hour and a half?

 7              THE COURT:  Well, shoot for 55.  I'm going

 8    to be consistent.  I'm not going to say flat no.

 9    We've got to get a feel for it.  I mean, every voir

10    dire is a little different.  And I'll be flexible.

11              MR. COOPER:  That's right.  Sometimes

12    jurors start talking and they talk more than other

13    jurors.  And I know when to sit down time.

14              THE COURT:  All right.  I know you do.

15              All right.  Mr. Shattuck, Mr. Lahann, what

16    are y'all thinking?

17              MR. LAHANN:  Your Honor, we expect an hour,

18    but probably much less.

19              THE COURT:  All right.  In your planning

20    shoot for 55.

21              MR. LAHANN:  Yes, Your Honor.

22              THE COURT:  Mr. Granberg, Mr. Solis.

23              MR. GRANBERG:  Your Honor, we'll shoot for

24    the hour as well.

25              THE COURT:  Draft up for 55, because I may
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    have to sort of enforce it at some point.
2              MR. GRANBERG:  Your Honor, one additional
3    matter.  If you would excuse Mr. Chavez, he needs to
4    use the restroom.  He needs to cross over and --
5              THE COURT:  All right.  Let's go ahead
6    while I'm getting this.  I'm not going to be dealing
7    directly with him, so maybe he can get in and out
8    pretty quick, and we can keep going here.
9              Let's see.  Mr. Blackburn, what do you have
10   for Mr. Garcia?
11             MR. BLACKBURN:  Judge, do you think I can
12   do anything under two hours?
13             THE COURT:  You can't?
14             MR. BLACKBURN:  Not with you.  You've seen
15   that before.
16             THE COURT:  All right.  So you're at the 55
17   minute mark?
18             MR. BLACKBURN:  Yes, Your Honor, how about
19   57 and a half?
20             THE COURT:  All right.  Mr. Roberts, Ms.
21   Torraco, what do you think?
22             MR. ROBERTS:  Judge, 42 minutes.
23             THE COURT:  All right.  You're like my son.
24   When he was a little boy, he came in and asked me to
25   wake him up "at approximately 5:46."  He didn't know
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   exactly what the word approximately meant yet.
 2            All right.  Ms. Arellanes, what are you
 3   looking at?
 4            MS. ARELLANES:  About 40 minutes.
 5            THE COURT:  All right.  So I'll -- after I
 6   get all those totals, I'll look at it, and begin to
 7   see what we have as far as what we're looking at.
 8   But it looks like we're going to be probably crawling
 9   into that second day, given the math y'all are
10   putting there.
11            MS. ARMIJO:  Your Honor, may I ask one
12   other question with reference to voir dire?
13            THE COURT:  Yeah.
14            MS. ARMIJO:  As you know now, down here in
15   Las Cruces, the clerk's office and the judges here
16   use numbers as opposed to names.  Regardless of where
17   the trial is, we would make that request.  Because as
18   you saw what happened the second day, we had to
19   excuse a few jurors who were uncomfortable with their
20   personal information and their name being used.
21            THE COURT:  What I have done for the second
22   trial to avoid any sort of issue there is Mr. Sorrell
23   has sent out a note to his staff saying they are not
24   to tell the jurors anything about how I'm going to
25   conduct this trial or how this trial will be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    conducted other than what is public information;

2    i.e., what is in the cover letter, what is in their

3    standard information, and what is in the sort of

4    standard information.  They're not to tell the jurors

5    that I'm going to use numbers.  They're not going to

6    say I'm going to use numbers for security purposes.

7    They're not going to do anything that gets off script

8    so that we don't have it.

9             I have seen the memo, discussed it with

10   Ms. Wild.  We feel like it was an adequately strongly

11   worded, sternly worded memo that should solve the

12   problem.  I think they're aware of the issues that

13   they created for us in voir dire, and that they're

14   not going to do that again.

15            But let me hear from the defendants.  Do

16   the defendants prefer that I use numbers or you

17   prefer I use names?

18            MR. COOPER:  Names always.

19            THE COURT:  Well, I think I'm going to use

20   names.  If there are people that are fearful of being

21   on this jury, we need to know about it, and we need

22   to deal with it.  I think this is just a part of this

23   process.  We got some questions embedded into the

24   questionnaire that actually is going to probably kick

25   up some responses that, you know, we're going to have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to deal with on the 9th, just as we had to deal with
 2    answers in the questionnaire.  I understand that the
 3    first round of jury questionnaires went out to
 4    counsel on Friday.  Affirmative nods there, so y'all
 5    got the first --
 6              MS. ARMIJO:  The United States did not get
 7    them.
 8              THE COURT:  You didn't get them?
 9              MS. ARMIJO:  We got nothing.  All three of
10    us.
11              THE COURT:  Well, hold on.
12              MS. ARMIJO:  Did the defense get them?
13              MS. HARBOUR-VALDEZ:  We got a link on
14    CM/ECF.
15              MS. ARMIJO:  No, the United States was left
16    out.
17              THE COURT:  All right.  Let me tell
18    Ms. Wild.  All right.  So I sent a note to Ms. Wild.
19    Maybe I'll get you an answer here pretty quick.
20              Let's see where I was on -- oh, I was going
21    to tell you that I may, and most likely will, and
22    probably have already made the decision -- I hope I
23    remember this exactly right -- I'm going to do
24    bringing in jurors a little bit differently for the
25    trial than I did the first trial.  Just because,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    heretofore, I'd always been able to pick a jury out
2    on the first day.  So this was the first trial that I
3    had had where I had not been able to pick a jury the
4    first day.  Sometimes it was long days, we went to
5    6:00, 6:30, but I'd always gotten it done.  Given
6    what you've just told me about voir dire, given that
7    we've got more defendants, I don't think I'm going to
8    be able to speed it up.  So what I'm probably going
9    to do is bring in the first wave on Monday, and I'm
10   not going to bring in the second and third wave.  So
11   I think what I'm going to do is bring in the first
12   wave.  We will still bring in 60 into the courtroom.
13   I'll probably have a handful, 10 or so people, 10, 15
14   people in the jury assembly room that will be part of
15   wave one.  We'll bring 60 in.  So I'll try to get 60
16   people in the seats.  And then we'll start it there.
17   And if we -- I think we were able to get our jury out
18   of that 60 in this last trial.  So I think we've got
19   a good shot at doing that again.  I think any more
20   than that just makes it very hard to do voir dire
21   because, as you know, it's always Juror No. 59 back
22   there that raises their hand on every question.  So
23   if you start getting 70 in here, it just makes it
24   longer.  So I think I'd rather work with that 60,
25   like we did the first trial and then see if we can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   get it.  If we can't, then we'll bring in some
 2   number, we'll agree to some number in advance, or at
 3   the time, to try to complete the jury selection.  And
 4   then I'll bring the second wave in the next day.  So
 5   if we don't get it done the first day, we're sort of
 6   guaranteeing that we'll go into the second wave.  I
 7   don't know about the third wave.  I don't know if Ms.
 8   Wild has decided to bring in the third wave on
 9   Wednesday or bring them in sometime the next day, or
10   on Tuesday.  But I am going to make that adjustment
11   to try to just help us with having so many people
12   waiting that first day.  We'll have a large number of
13   people waiting probably the second day, but I don't
14   know if we can avoid it.
15           All right.  I think that covers those
16   aspects.  Like I said, we're going to have to figure
17   out the logistics of the courtroom.  And we'll work
18   with you on that.  I think we were all very good --
19   we didn't have any mishaps in the first trial, but I
20   would ask everybody, the Government, my staff, me,
21   certainly defense lawyers, help me out.  We don't
22   need to have a mistake with an increased number of
23   defendants.  Make sure we've got everybody seated at
24   the table before we bring that jury in.  We don't
25   want the jury to ever see a defendant shuffling in or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    out of the courtroom.  I just don't want to try to
 2    raise that issue.  So try to help everybody out by
 3    looking around, make sure that everybody is here.
 4    But we did it the first trial, but we're going to
 5    have probably a little higher numbers here, so we'll
 6    have to work together.
 7            MR. ROBERTS:  Judge, may I just make an
 8    observation.  Sitting here in the jury box, I can see
 9    through the paneling there.  So, I mean, if there is
10    a concern with ankle bracelets and so forth, I can
11    see right through the cloth.  So the Court may want
12    to consider changing what's there, using a
13    different --
14            THE COURT:  We'll look.  I mean, we went to
15    great lengths, and nobody could see anything.  So
16    I'll relook.  But we had a lot of people sitting
17    where you were for the first trial.  I think all the
18    defense lawyers came in.  We had the defendants come
19    in.  We had them stand, we had them walk, and nobody
20    could see anything.  So we'll do a real careful
21    check.  It may be a little worn down after seven
22    weeks but we started off real strong.  So we'll take
23    a look at that.
24            MR. ROBERTS:  I understand, Judge.  I think
25    partly the lighting, because the lighting reflects
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    back.  And this cloth over here is different
2    material.  You can't see through this one, but you
3    can see through that one.
4           THE COURT:  All right.  We'll take a look
5    at that, and we'll do a lot of checks before we start
6    the second trial.  And probably it's going to be
7    different tables and everything.
8           All right.  So probably at this point let
9    me say this on exhibits:  Again, the Government gets
10   numbers, so it's kind of easy for them, 1 through
11   whatever.  The defendants get the letters, and again
12   it's A through Z, and then after that, it's AA and AB
13   and AC.  If it's more than that it's BA, BB, BC.
14          I was a little uncomfortable, I've got to
15   tell you, about the defendants' numbering system.
16   But Ms. Wild kept telling me to settle down, so I let
17   it go.  But that was -- seemed crazy to me.  But I
18   think we made a good record.  All our exhibits
19   matched up.  So I'm not going to get too worked up
20   about that.
21          I know we probably need to get started on
22   these motions to decide some of the exhibits, but is
23   there any issues about exhibits that I can help you
24   with that's independent of the motions?  And if there
25   is a motion there that we need to deal with exhibits,
```

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                       1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                      e-mail: info@litsupport.com

38

```
 1    then I'll just stop and start going to the motions.
 2              But how about from the Government's
 3    standpoint?  Are there any issues with exhibits that
 4    I can help you with this morning?
 5              MS. ARMIJO:  No, Your Honor.
 6              THE COURT:  Okay.  How about from the
 7    defendants' standpoint?  Is there any issues with
 8    exhibits?
 9              MR. CASTLE:  Your Honor, we don't have any
10    issues with the exhibits, but I'm wondering if I
11    could raise two matters concerning the pretrial
12    conference.
13              THE COURT:  Okay.
14              MR. CASTLE:  Your Honor, we had filed a
15    motion for additional peremptory challenges.  And at
16    the time the Court denied it without prejudice to
17    reconsider that at the eve of trial.  I believe, but
18    I don't know for certain, that the Court had granted
19    some extra peremptories to Trial 1.
20              THE COURT:  No, I didn't.
21              MR. CASTLE:  Oh, you didn't.  Okay.
22              THE COURT:  I did not.  What we did is
23    there were additional peremptory challenges, whatever
24    it is under the rule.  And I'd have to refresh my
25    memory as to alternates, because we had six
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  alternates.  And I forget, was it three?  That's my

2  memory as to what the statute or the rule requires.

3  Do you remember?  You looked it up.  I think it's

4  three.  So when we get the jury confirmed, I'll then

5  give you the first six tentative alternates, and then

6  I'll give each side three challenges.  If that's what

7  I did the first trial, I'll do it the second trial.

8  So you get three challenges as to the alternates.

9  But with this number of people and the number of

10  defendants, I didn't feel like I could give really --

11  I just didn't feel like I'd ever get a jury picked if

12  I started giving additional peremptory challenges.

13  And it was difficult enough the first time with four

14  defendants.  And I don't think I'll be giving extra

15  peremptory challenges to the defendants the second

16  trial.

17        MR. CASTLE:  I understand.  I'll just make

18  a brief record.  I think that the fact that we have

19  double the number of defendants is actually a factor

20  that should militate towards additional peremptory

21  challenges.  Because if you start taking the number

22  that we have per defendant, and if you divide it by

23  the number of defendants, if that's the way the

24  defense has to do it, essentially, we're getting one

25  or two per defendant.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              There are four different crime bases -- or
2      five, is it -- I can't even keep track of the number
3      on the second trial.  But it's five different crime
4      bases; whereas, there weren't that many in Trial 1.
5      So I know that the law is it's completely in your
6      discretion.  It's frankly almost unchallengeable on
7      appeal.  I understand that.  But I would encourage
8      the Court to at least consider it, given the
9      complexities that Trial 2 presents.
10              THE COURT:  Well, the reason I'm saying
11     without prejudice is, if the numbers were to reduce
12     dramatically, then I'd certainly take another look at
13     it.  But at the present time, I just think it's going
14     to be impossible for us to give additional
15     peremptories and pick a jury.  So it will be denied
16     without prejudice to you renewing it if we look at
17     some different number of defendants as we get closer
18     to the trial.
19              MR. CASTLE:  The second issue is the
20     seating arrangement the Court discussed, I'm not sure
21     I understand it completely, but it sounded like the
22     defendants would not be sitting with counsel.
23              THE COURT:  Well, you'd be sitting with
24     counsel, but the counsel would be in front of the
25     defendants.  So the defendants would be behind the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   counsel.  The counsel would be in a table immediately
 2   in front, and then defendant immediately behind, so
 3   you'd have your defendant right behind you.
 4              MR. CASTLE:  Your Honor, I would prefer to
 5   be with my client so that we could have contact
 6   without having to turn our back to the witness and to
 7   the jury.  A lot of times we have to have
 8   communications with our client while evidence is
 9   being presented.  And that process prevents counsel
10   from paying attention both to what's happening in the
11   courtroom and their client.  And so that's one issue.
12              The second is, I understand the first jury
13   had some difficulty at least figuring out who
14   everybody is.  When we put all the defendants in a
15   line-up, essentially a row together, they're lumped
16   together as a unit.  I think the visual actually
17   favors the prosecution's theory in the case, frankly.
18              And so I think the idea of the separate
19   tables for Trial 1 was very good because it
20   essentially told the jury:  These are separate
21   defendants, and you need be analyzing in a distinct
22   way.  This is not just one big group.
23              And so I think I speak -- we didn't confer,
24   but I think I speak on behalf of all the defendants
25   that we would prefer an arrangement where we would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have separate tables.  And if that means going to
 2    Albuquerque for a larger courtroom, I think the
 3    rights of the defendants in getting a fair trial
 4    trump the particular location of the trial itself.
 5    It still is in the district.  And as the Court knows,
 6    this is one district; we don't have southern and
 7    northern district of New Mexico.  So we would prefer
 8    that.  I know the Court is working hard to try to
 9    figure out what's fair for everyone.
10            But I do think, I don't know what
11    Ms. Jacks' experience is, but my experience is we
12    want to be able to have confidential communications
13    with our client.  We want to be considered
14    independently of the guilt of the other defendants.
15            And frankly, our theory of the case is our
16    client didn't have anything to do with the crimes in
17    Counts 1 or 2, independent of whether the other
18    defendants did.  And so I don't want the jury to
19    think we're all in this as a big defense team, where
20    all the defendants are in it together.
21            So those are my thoughts for the Court to
22    consider when it's considering the courtroom
23    arrangements.
24            THE COURT:  Well, I'll take those into
25    account.  And I don't think I can do what I've done
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   here, unless the numbers drop dramatically.  I don't
2   think you're going to get individual tables.  I think
3   we're going to have to look at two tables.  If there
4   is other things we can do with the two tables, like
5   put some defendants together on one row, and with
6   their counsel, or something like that -- I'll talk to
7   Ms. Wild about that, if that helps with the optics.
8   So we'll have a dialogue about this.
9           I do think that right at the moment with
10  these numbers, whether I have the trial in
11  Albuquerque or here, it's going to be two tables.  So
12  start working with that concept.  If there is
13  something I can do to help with the optics, I'm all
14  for it.  I want you to get the same benefit that the
15  first group got of having, you know, the optics of
16  being separate, forcing the jury to consider each
17  separately.  So I'll work with you as much as I can
18  on that.  But start thinking of two tables.  Because
19  just logistically we can't get eight defendants'
20  tables in here.  And I can't do it in the Rio Grande
21  up there.  So I'm going to build two tables.  So
22  think about that, the present numbers, how can I get
23  you there.
24          MR. CASTLE:  Severance is one way.
25          THE COURT:  I figured I might hear that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

44

```
 1    today.
 2              All right.  Mr. Burke?
 3              MR. BURKE:  Yes, Your Honor.  I'm sensing
 4    that you've already thought about the motions for
 5    severance.  And it doesn't sound like that's too
 6    optimistic for the defendants.  That would be one
 7    way.
 8              THE COURT:  Yeah.
 9              MR. BURKE:  And I do want to endorse
10    Mr. Castle's comments about the idea of separation.
11    It's very critical to having the jury independently
12    evaluate each defendant.
13              But that's not why I'm up here.  I did have
14    a logistical question of a pretrial nature.  In your
15    order granting the joint motion to amend the fourth
16    scheduling order, which is Document 1626, you set
17    deadlines for jury instructions, proposed voir dire,
18    and exhibit lists.  And I am guessing that the date
19    for objections to the exhibits would be a week after
20    that, judging from what the practice was in the prior
21    orders.  Is that correct, Your Honor?
22              THE COURT:  Does that work for the
23    Government?
24              MS. ARMIJO:  Yes, Your Honor.
25              THE COURT:  All right.  Does that work for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   all the defendants?
 2               MR. BURKE:  So that's a firm date for
 3   objections.  All right, thank you, Your Honor.
 4               THE COURT:  Ms. Harbour-Valdez
 5               MS. HARBOUR-VALDEZ:  Your Honor, we'd also
 6   request that, like you did in the first trial, that
 7   you order the Government to provide a may call and a
 8   will call witness list two weeks prior to the start
 9   of the trial, which would be March 26.
10               THE COURT:  Is the Government agreeable to
11   that?
12               MS. ARMIJO:  I think that we have narrowed
13   it down to will call.  The first list is pretty much
14   a significant long list.  But we have it narrowed
15   down, and so I think that everyone we put on there
16   has a pretty good chance of being called.  If there
17   is people that we're going to add in that are just
18   potentials, we will do it.  But right now the list
19   that we're working on will be a list that is pretty
20   significant.
21               THE COURT:  So your will call list that you
22   have now and that you probably will have on May (sic)
23   26 is probably the list, and then you may have a
24   shorter may call list that --
25               MS. ARMIJO:  Yes.  If after we meet -- as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    you know, we've been busy -- if after we're able to
 2    meet and decide on additional people to put in there,
 3    then we would put in the list that we filed potential
 4    witnesses.
 5              THE COURT:  Okay.  Does that sound like
 6    what you need?
 7              MS. HARBOUR-VALDEZ:  Just for
 8    clarification, so this is your will call?  The 16
 9    pages?
10              MS. ARMIJO:  No.
11              MS. HARBOUR-VALDEZ:  So when are we going
12    to get that one?
13              MS. ARMIJO:  Well, I believe we haven't
14    gone through the deadlines yet.
15              THE COURT:  Well, she's asking for May
16    26 --
17              MS. HARBOUR-VALDEZ:  March.
18              THE COURT:  I mean, March 26 to give a --
19              MS. ARMIJO:  We could, but we would ask for
20    a reciprocal date before -- I don't have the order in
21    front of me, but I believe previously we had dates
22    that both parties gave witness lists.  So as long as
23    the defense wants to give their witness list on March
24    26, that's fine.
25              THE COURT:  Do y'all want to do a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    reciprocal exchange of witness lists?
 2              MS. HARBOUR-VALDEZ:  I think we need to see
 3    the Government's prior to us providing ours.
 4              THE COURT:  Let's do this:  Let's just -- I
 5    mean, I think it's most important to give -- to get
 6    the Government's into your hands.  So I will set
 7    March 26 as the date.  Sounds like the Government is
 8    pretty far along in figuring out who their will call
 9    people may be, and they will have a short list of may
10    call.  So I think you're going to get what you want.
11              Why don't the defendants do the same thing.
12    And I understand you may have to revise it after you
13    see the Government's list.  So you'll have a chance
14    to do it.  But at least at the present time you'll
15    have a reciprocal exchange, with the understanding
16    that after the Government shows you their list, you
17    may have to revise your list.
18              MS. HARBOUR-VALDEZ:  And Your Honor, Mr.
19    Cooper pointed out that the prior deadline would have
20    been March 23 for the will call list.  The Jencks
21    deadline was March 26.
22              THE COURT:  All right.  So the Government
23    is shaking their head yes.
24              MS. ARMIJO:  That's fine, Your Honor.  We
25    can do the 23rd.  And then if the defense wants file
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                    BEAN                                          1-800-669-9492
                    &ASSOCIATES, Inc.
                    PROFESSIONAL COURT              e-mail: info@litsupport.com
                    REPORTING SERVICE

```
 1    their witness list on the 26th, have the weekend,
 2    that's fine, too.  We'll provide ours the 23rd.
 3              THE COURT:  All right.  So let's do that.
 4              All right.  Mr. Blackburn.
 5              MR. BLACKBURN:  Your Honor, I know that you
 6    were -- I agree with Mr. Castle and Mr. Burke's
 7    comments about the optics.  The Court keeps talking
 8    about two tables.  Have you -- do you have something
 9    in mind?  Have you started?  Is there -- are we
10    talking two tables like this?  You keep talking about
11    building something, so I'm just  --
12              THE COURT:  I think it's going to be taking
13    a table like this and building it.  I don't know
14    about the width, but it's going to have to be built
15    to fit two tables in either place, so instead of sort
16    of running them like this, it will run lengthwise.
17    And it will just be two tables lined up rather than
18    separate tables for counsel and paralegals and
19    parties.
20              MR. BLACKBURN:  There was some discussion
21    about construction.  I didn't know if the Court was
22    saying you've already started doing that, or if it's
23    something we could look at in the meantime.
24              THE COURT:  I don't know the answer to
25    that.  I don't know where Ms. Wild is on that work.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   So whoever is sort of -- maybe Ms. Harbour-Valdez is
 2   the liaison.  Maybe you can check with Ms. Wild as to
 3   where you are on the tables.  But I don't know at the
 4   present time.
 5            MS. HARBOUR-VALDEZ:  Your Honor, I'll be
 6   happy to do that.
 7            One more item.  In the first trial you
 8   signed an order allowing the defense staff to bring
 9   their cellphones in.  I submitted a similar order to
10   Ms. Standridge and Ms. Wild this morning.  I believe
11   Ms. Bevel has it now.
12            THE CLERK:  I have that.
13            MS. HARBOUR-VALDEZ:  We would request, Your
14   Honor, that you sign that this week.  Some of the
15   defense witnesses that have been subpoenaed have our
16   staff members' cellphone numbers on them as the
17   contact, since we would not able to step out and
18   answer those.  So we would ask you sign that.
19            THE COURT:  Is there any objection from the
20   Government on that order?
21            MS. ARMIJO:  No, Your Honor.
22            THE COURT:  Any other objections from the
23   defendants?  All right.  So when that order is
24   presented to me, I'll sign it and get it entered.
25            MS. HARBOUR-VALDEZ:  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Any other issues on
 2   exhibits?  And can anybody think of any motions that
 3   raise any exhibit issue?
 4              If not, I'm going to move to witnesses.
 5   And this may trigger up some of the motions, so maybe
 6   I'll need to stop and deal with motions.  But is
 7   there any issues or disputes with witnesses that I
 8   need to deal with or can deal with today?
 9              MS. ARMIJO:  No, Your Honor.
10              THE COURT:  The Government is shaking their
11   head no.  How about from the defendants?  Any issues
12   other than -- is there anything in the motions that I
13   need to address?
14              MR. CASTLE:  There was a motion filed by a
15   witness' attorney.
16              THE COURT:  Yeah.
17              MR. CASTLE:  The witness being Leroy Lucero
18   by Mr. Fallick.  And Mr. Fallick says he can be here,
19   I believe, at 1:00 --
20              MR. COOPER:  Yes.
21              MR. CASTLE:  -- to address that issue.
22              THE COURT:  Well, if that's the only issue
23   on witnesses --
24              MR. COOPER:  There is another one, Your
25   Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Let me see what Mr. Cooper has,
 2   then Mr. Castle.  I'll come back to you, Ms. Armijo.
 3            MR. COOPER:  Your Honor, I just saw that
 4   Phil Sapien has filed a motion to quash the writ with
 5   regard to Fred Quintana.
 6            THE COURT:  Is that another one of the
 7   people you've subpoenaed on the motion to dismiss?
 8            MR. COOPER:  That's correct.  He just filed
 9   a motion just five minutes ago, maybe.
10            THE COURT:  Okay.  Well, I don't have a
11   copy of that, and I haven't read it.  But I'll take a
12   look at it, we'll get it.
13            MR. COOPER:  Neither have I.
14            THE COURT:  I guess at some point I want to
15   talk to you about the motions to dismiss.  And maybe
16   that's the time to talk about these witnesses.
17            Mr. Burke, did you have anything?
18            MR. BURKE:  No, my comment was --
19            THE COURT:  The same one?  All right.  So
20   if there is no other issues and disputes other than
21   those connected with the witnesses as to the motions
22   to dismiss, why don't I --
23            MR. COOPER:  Your Honor, excuse me.  May we
24   have one second to confer?
25            THE COURT:  Certainly.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN &ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BENJAMIN:  Your Honor, while they're
 2   conferring on that, can I raise a purely
 3   administrative --
 4            THE COURT:  You may.
 5            MR. BENJAMIN:  I think Trial 1 was able to
 6   get the courtroom opened up at 7:30 in the morning so
 7   that counsel could come in and out, and kind of prep
 8   for the day, Your Honor.  I would just ask that that
 9   continue.
10            THE COURT:  Yeah.  Let me ask Ms.
11   Standridge:  Do you see any problem with that from
12   the logistics standpoint?
13            THE CLERK:  We have to get it cleared by
14   the U.S. Marshal.
15            THE COURT:  All right.  I'll work to get
16   that done.  I don't anticipate any problems with the
17   marshals.  I'll get back with you, or Ms. Bevel will
18   get back with you on it.  But the rules were that I
19   can't let in jurors before 8:00.  But they can start
20   letting them in.  But so that y'all don't have to
21   stand in line, we'll let y'all in early, if you want
22   to be here early.  You don't have to be here early.
23   But let you in.  And my understanding was there was a
24   key given to one of the paralegals, that had a key to
25   then this room that was designated, and if y'all want
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to just tell us who.  So unless you hear otherwise,

2    plan on that being also the case in the second trial.

3    If I run into problems with the marshals, we'll let

4    you know and we'll work those out.

5            MR. BENJAMIN:  One second issue, Your

6    Honor.  The Court has mentioned Albuquerque multiple

7    times this morning, and that makes me a little

8    nervous, simply because at this point in time, Your

9    Honor, we've made funding requests and are getting

10   close to deposit deadlines on the properties.

11           THE COURT:  Right.  I understand.  I

12   actually thought about having this hearing in

13   Albuquerque because of the numbers we were looking

14   at.  But because I had already funded you guys to be

15   here, I already had subpoenas out for this week, I

16   decided not to try to do anything with this week.

17           So Ms. Wild told me I was probably okay if

18   I wanted to do something down the road, but I didn't

19   try to mess around with this week because I knew that

20   exact problem.  And I know that I'm going to have to

21   probably make some decisions sooner rather than

22   later, if I don't want to avoid the same problems

23   April 9.

24           MR. BENJAMIN:  The 15th would make me less

25   nervous than the 16th for funding, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  What would make you --
 2                MR. BENJAMIN:  It's just I have a week for
 3     residence that we've put, and essentially the way we
 4     structured the agreement, Your Honor.
 5                THE COURT:  Well, I'll try to work with
 6     Ms. Wild as soon as I have some time, and try to make
 7     some final decisions on that.
 8                MR. BENJAMIN:  Thank you, Your Honor.
 9                THE COURT:  All right.  Did you have
10     something else, Mr. Cooper?
11                MR. COOPER:  I do, Your Honor.  Thank you.
12                Judge, we have subpoenaed Jim Moore and
13     Cheryl Lackey, two former Department of Corrections
14     employees who are presently living in Oklahoma.  They
15     are now married; they have a four-year-old child that
16     has some fairly significant issues.  And anyway,
17     they've requested to appear telephonically with
18     regard to the subpoena that we've issued.
19                And also Reeve Swainston we have
20     subpoenaed, and he would like to appear
21     telephonically.  And we told them, all three of them,
22     that we would discuss with the Court whether or not
23     that is something that they could do.  And we would
24     like to get back with them today, if the Court will
25     allow their appearances to be had telephonically.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Well, are all the defendants in
 2     agreement on that, that would be okay with them?  All
 3     right.  So not hearing any objections, I don't have a
 4     problem, if the defendants don't.  I guess, if it
 5     were the other -- Government trying to bring people
 6     here and you not have people to confront, I might
 7     have a little concern.  But if the defendants have
 8     subpoenaed these people and want them here, and
 9     they're comfortable having them by telephone, I don't
10     have a problem.
11              How about the Government?  Are y'all
12     comfortable with that as well?
13              MS. ARMIJO:  Yes, Your Honor.
14              THE COURT:  All right.  So it would make me
15     a little nervous if it was the other way because of
16     confrontation issues.  I'm not sure they cover it,
17     but it would just make me pause.  But I think if
18     defendants are calling them and comfortable with
19     that, I think I'm okay with it.
20              MR. COOPER:  Okay.  Thank you, Judge.
21              One final matter:  I think we will
22     designate Cindy Gilbert to be the llavera, the
23     keyholder.
24              THE COURT:  Were you at the first trial?
25              MS. GILBERT:  Yes, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  I didn't quite know what

2    paralegal had the keys.

3          MR. COOPER:  She's going to have the keys.

4          THE COURT:  She's got the keys.  We heard a

5    lot about having the keys in the first trial.  So it

6    has different meanings, doesn't it?

7          MR. COOPER:  She's our leader.

8          THE COURT:  Okay.  All right.  Any other

9    issues or disputes on witnesses or exhibits?

10         All right.  I think, then, the next issue I

11   was going to go into is discovery.  And I know we

12   have motions on discovery, so I think I'm going to

13   stop, now, the pretrial conference.  We, obviously,

14   will have to come back to it and finish it up.  But I

15   think it would be wise for us now to go to the

16   motions themselves.

17         So, if I understand -- let me look at the

18   new list that was given to me.  What Ms. Wild

19   prepared as Tab 32 for me was Document 1903, which is

20   the notice of James statements for Trial 2.  And she

21   says "Corrected," and that means that I think 1901,

22   is my memory, was the first document that was filed.

23   And there was some changes to it.  I'm not sure what

24   happened.  But anyway, it was designated as filed in

25   error, so the document that was filed on 3/8/18,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Document 1803, Notice of James statements for Trial 2
 2    Corrected, I think is the operative document.
 3            So what I understand -- let's just review
 4    for a second -- in the first trial we had the
 5    Government provide a witness that -- Mr. Acee, I
 6    think, primarily, but I think it was also some other
 7    FBI agents that testified, and so they were subject
 8    to cross-examination; so that we could get through
 9    that and get to the preparation of the first trial,
10    the Government agreed to the defendants' request to
11    provide a list of James statements for Trial 2.  So
12    they were treated differently.
13            Now, my understanding was that that was to
14    facilitate what we were doing today, so the
15    defendants would have in hand all the James
16    statements.  And then what we would be focusing on
17    today would be maybe statements that defendants
18    wanted me to look at more closely, that they felt did
19    not fall within the co-conspirator exception to the
20    hearsay rule.
21            So, if the James hearing is proceeding
22    differently than what I understand it to be, if we're
23    going to do the same thing we did the first trial,
24    y'all can let me know.
25            Mr. Castellano, you were going to rise and
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    speak.  So do you want to tell me how close I am to
 2    understanding what we're doing on the James hearing
 3    for this trial?
 4              MR. CASTELLANO:  The first order of
 5    business, Your Honor, is that there were two filings
 6    regarding the James statements.  And they should
 7    be -- the tables themselves should be identical.
 8    What happened was, when I filed the first table, the
 9    clerk's office called because there is a difference
10    between landscape or portrait formatting for the
11    first page.  And so what happened was the second
12    filing is basically the same as the first, but the
13    cover page is just in a different format.  So I don't
14    think anybody should have to look at the two tables
15    for different statements.
16              THE COURT:  We can use 1903 as the
17    governing document?
18              MR. CASTELLANO:  Yes, sir.  So that's just
19    a bit of housekeeping.  The only difference was the
20    way the cover page was filed, that was changed.  The
21    other part is -- my understanding is that the table
22    is now, in essence, supposed substitute for the
23    testimony, so that we have the James statements in an
24    easier to read and easier to understand format than
25    what we did the first time by merely putting on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   testimony.  If our agents were to testify, I think
 2   they would testify consistently with the statements
 3   in the table.  So we could do that, but I think
 4   really that's what the table does, it substitutes for
 5   the testimony of those statements.
 6           THE COURT:  I guess two questions, then:
 7   What was your expectation of the defendants in
 8   response to your notice of James statements?  And
 9   then what -- are they going to have somebody such as
10   Mr. Acee available to cross-examine?  You might not
11   put on any direct evidence, but are you going to
12   present any agents or witnesses for them to
13   cross-examine?
14           MR. CASTELLANO:  I think that's up to the
15   defendants, Your Honor.  But, yes, I think if there
16   was a request for cross-examination, then it would
17   come through the agents who would testify in a
18   summary fashion to summarize the statements which we
19   have here in court, and in the table.
20           THE COURT:  So you don't have anything else
21   to present; you're ready to hear from the defendants
22   as to either their agreement as to your table or
23   areas where they disagree or their desire for
24   cross-examination?
25           MR. CASTELLANO:  That's correct, with one
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    exception, Your Honor.  I have Government's Exhibits
2    11 through 18.  And I'm following a similar format as
3    the last time we did the James statements.  These
4    exhibits are each of the plea agreements of various
5    people who have pled guilty in this case.  And so in
6    terms of establishing the existence of the
7    conspiracy, and tying various defendants to the
8    conspiracy, what I've done is submitted -- or I'm
9    proposing to submit, at this point, Government's
10   Exhibit 11 through 18.  And I'll give the Court the
11   names of each of the exhibits:
12             Government's Exhibit 11 is the plea
13   agreement for Leonard Lujan.
14             Exhibit 12 is the plea agreement for
15   Benjamin Clark.
16             Exhibit 13 is the plea agreement for Ruben
17   Hernandez.
18             Exhibit 14 is the plea agreement for Javier
19   Alonso.
20             Exhibit 15 is the plea agreement for Eugene
21   Martinez.
22             Exhibit 16 is the plea agreement for Paul
23   Rivera.
24             Exhibit 17 is the plea agreement for Brandy
25   Rodriguez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          And Exhibit 18 is the plea agreement for

2    Santos Gonzalez.

3          And I would move their admission at this

4    time for purposes of the James hearing.

5          THE COURT:  All right.  As I did in the

6    first -- the hearings before the first trial, many of

7    which dealt with issues for the second trial, I would

8    be inclined to just have exhibits for each hearing,

9    so that when I go back with some orders or opinions

10   as much as I can on this case, I'll just use those.

11         So you're not admitting these in any way

12   for trial or for any other hearing in this case; it

13   will just be for the James hearing.  Any objections

14   to the Government's introduction of Exhibits 11

15   through 18?

16         MR. CASTLE:  Yes, Your Honor.

17         THE COURT:  Mr. Castle.

18         MR. CASTLE:  Yes, if I could look at them

19   first.

20         THE COURT:  You may.

21         MR. CASTLE:  Judge, these are documents

22   drafted, I believe, by the Government.  They all

23   appear to be the same typeset, same language, et

24   cetera.  So these are documents that the Government

25   wrote up in a fashion.  So I don't believe that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    satisfies the requirements under 801 to show the
 2    establishment of the conspiracy.  I mean, it has to
 3    be something more than the Government's statements
 4    that there is a conspiracy; there has to be some
 5    evidence and foundation of that.
 6              THE COURT:  Well, correct me if I'm wrong,
 7    I'm not sure I've looked at these, but these are plea
 8    agreements that were signed, under oath, by the
 9    defendants that have been identified; correct?
10              MR. CASTLE:  They are.
11              THE COURT:  And, Mr. Castellano, is each
12    one of these people going to testify at trial to the
13    facts that are set forth in the plea agreement?
14              MR. CASTELLANO:  Yes, I believe, with the
15    exception of two -- Brandy Rodriguez and Santos
16    Gonzalez are not -- but for purposes of preliminary
17    questions before the Court to find whether or not a
18    conspiracy exists, I believe the Court can look at
19    these for purposes of making the initial
20    determination under James.
21              THE COURT:  All right.  You don't have any
22    reason to think that those two individuals would
23    testify in this hearing, or any other hearing or
24    trial, differently than what they have in their --
25    what they have in their plea agreement?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. CASTELLANO:  That's correct, Your

2    Honor.  It would be supported not only by the reports

3    in this case, but each of these defendants had to

4    give a factual basis to the Court to even plea, so

5    typically, in addition to the factual basis written

6    into the plea agreements, the Court, for each of

7    these individuals asked in their own words why they

8    were guilty of these offenses under oath.

9           THE COURT:  But as far as evidence here for

10   the determination of the conspiracy, these are signed

11   under oath by the seven individuals that have been

12   identified?

13          MR. CASTELLANO:  Yes, sir.

14          THE COURT:  All right.  Mr. Castle?

15          MR. CASTLE:  They are signed under oath.

16   But what they don't say is:  This is a full and

17   complete statement of the facts as they know it

18   concerning the conspiracies.  And so they're partial

19   statements drafted by the Government for signature by

20   the defendants, so they're not complete.  But those

21   are our objections.

22          Specifically, the two people that are not

23   going to testify at trial, I don't think the Court

24   should take that into account, because all we're

25   doing, preliminarily here, is what you would have to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   do during trial.  So I don't believe that they should
 2   be admitted, although they're not relevant to my
 3   client at all.  But I would make that general
 4   objection also.
 5            THE COURT:  All right.  Anybody else have
 6   any objections to Government's Exhibits 11 through
 7   18?  Mr. Benjamin?
 8            MR. BENJAMIN:  Mr. Gallegos would join the
 9   objections to the exhibits specifically regarding
10   Santos Gonzalez and Brandy Rodriguez, Your Honor.
11            THE COURT:  All right.  Mr. Burke, same
12   thing?
13            MR. BURKE:  Yes.  Mr. Troup joins, and
14   particularly objects to the idea that these documents
15   drafted by the Government could be the evidence
16   that's required to show that conspiracy existed for
17   the purposes of the James hearing.
18            THE COURT:  And remember, I'm not
19   determining whether they're sufficient or not.  The
20   only question is whether I should admit this
21   evidence.
22            Ms. Arellanes?
23            MS. ARELLANES:  Yes, Your Honor.  With
24   regard to Paul Rivera, I have gone over that plea
25   agreement, and there are some errors in the factual
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  basis.  So the factual basis that was provided to Mr.
 2  Rivera -- he just simply signed it -- really, is
 3  based on what I've read in the discovery -- is
 4  clearly in error.  So you have to take his statement,
 5  factual basis, with a little bit of a grain of salt.
 6              THE COURT:  All right.  Thank you, Ms.
 7  Arellanes.
 8              Anybody else?
 9              MR. SOLIS:  Mr. Chavez, Your Honor, would
10  join in that objection, but in particular Exhibit 11
11  and Exhibit 15, as it pertains to Mr. Chavez.
12              THE COURT:  All right.  Anybody else?
13              All right.  So I'm going to admit
14  Government's Exhibits 11 through 18.  I'm not making
15  a determination whether the Government has
16  established a conspiracy or conspiracies as to any of
17  the counts.  I'm simply determining that I think I
18  can -- that's competent evidence I can consider for a
19  James hearing, so I'll admit it into evidence.
20              All right.  How do the defendants want to
21  proceed?  I have reviewed -- I only did 1903; I never
22  went back and looked at 1901, after I was told that
23  1903 was the operative document.  So how do y'all
24  want to proceed on the James hearing?  Do you have
25  specific statements that you've identified that you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    want to have the Court focus on in making a
 2    determination?  Do you want to have any
 3    cross-examination of a government witness as to any
 4    of the statements?  How do you wish to proceed?
 5              Mr. Benjamin?
 6              MR. BENJAMIN:  Not seeing anybody else jump
 7    up, Your Honor, there was a document filed at
 8    about -- well, after midnight last night -- it was
 9    Document 1981, which was Mr. Gallegos' response to
10    the James hearing --
11              THE COURT:  Okay.  I'm not sure that I was
12    alerted to that, and I don't believe I have a copy of
13    it.  So we'll -- they handed it to me now, so -- all
14    right.
15              MR. BENJAMIN:  And I understand that one of
16    the dangers in filing something that late, Your
17    Honor, was I'd be in this position, but having had
18    the Government just proffer 11 through 18, one of the
19    requests that Mr. Gallegos has is that the James
20    hearing serve its purpose of -- for lack of a better
21    term, locking the Government into what it intends to
22    prove for a conspiracy.
23              (Ms. Bhalla entered the courtroom.)
24              THE COURT:  Let's do this, let me ask
25    this -- I think this is what we did for the first
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   trial:  If I understand what we're doing here with

2   this, Mr. Castellano, is that these statements that

3   are in your table are the only statements that you

4   are trying to get in through the co-conspirator

5   exception to the hearsay rule.  You will not use any

6   other statements, you will not use that exception for

7   any other statements; and if you at any other time

8   attempt to bring in another statement, you will

9   immediately alert the defendants to the fact that you

10  have identified another statement that you want to

11  use the co-conspirator exception for; and if they

12  don't hear from you, or I don't hear otherwise from

13  you, you are locked in with this table, and that will

14  be the universe of statements that you will attempt

15  to get in through the co-conspirator exception.

16          You may have other exceptions and other

17  ways of getting other statements in, but these will

18  be the statements that you'll be locked into as far

19  as the co-conspirator exception; am I correct?

20          MR. CASTELLANO:  That is correct, Your

21  Honor.

22          And I've noticed in the pleading itself,

23  statements from Trial 1.  And if we do come across

24  other statements in preparation for trial, we will

25  also notice up those statements in a similar fashion

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    as to what we prepared in the table.

2           THE COURT:  All right.  When you say Trial

3    1, you're not saying just all the statements in Trial

4    1, are you?

5           MR. CASTELLANO:  Yes.  I don't intend -- we

6    don't intend to introduce all co-conspirator

7    statements from Trial 1, but I think those are fair

8    game if they come up in the context of this trial.

9           THE COURT:  Well, I think we need to get

10   those identified.  So I'm going to -- I think, you

11   know, the way I do a James hearing is I want to push

12   as much up pretrial as I possibly can.  So let's

13   agree on a deadline by which you'll think about the

14   first trial.  And if you want to get in other

15   statements from the first trial, you'll send a

16   letter, or file some document that identifies other

17   statements from the first trial that you want to get

18   in with the co-conspirator.

19           Do you want to propose a date?

20           MR. CASTELLANO:  May I have a moment, Your

21   Honor?

22           THE COURT:  You may.

23           THE COURT:  Am I doing what you're wanting

24   me to do, Mr. Benjamin?

25           MR. BENJAMIN:  Yes, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
1          MR. CASTELLANO:  We're shooting for Monday
2   the 26th, Your Honor.  That way we can also look at
3   the transcripts from Trial 1.  I'm not sure when
4   those will be finalized.  But that will give us time
5   to pull those from the transcript, if necessary.
6   That would be March 26.
7          THE COURT:  Could you live with that, Mr.
8   Benjamin?
9          MR. BENJAMIN:  For additional production
10  of --
11         THE COURT:  What they're going to do is
12  they're going to get -- I guess, maybe Ms. Bean can
13  tell us, but they're going to get the final
14  transcript; they're going to scrutinize it, and see
15  if there is anything in the first trial that they
16  want to add to the list.  And they'll notify you by
17  March 26, if there is additional statements that they
18  want to use the co-conspirator exception to the
19  hearsay rule, to use that as the basis for getting
20  the statement in.
21         MR. BENJAMIN:  My gut reaction is:
22  respectfully no, Your Honor, because we had a James
23  hearing in December for those statements, and we know
24  what those statements are, or how the Government
25  intends to use those statements in this case.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    then I think that dovetails into my concern with the
 2    statements that came out in 1901 and 1903, and we're
 3    working off 1903, Your Honor.
 4              There is multiple items in the table -- and
 5    the Government was overexclusive -- and I appreciate
 6    that in this table -- but I guess it concerns me that
 7    we've been waiting essentially since November for the
 8    James hearing on Trial 2, and there is other
 9    statements out there.  And that's the way that my --
10    and I realize the Court hasn't had the opportunity to
11    read my pleading.
12              But that's the way that my pleading begins,
13    Your Honor, that in May 10th of 2017, Ms. Armijo
14    promised that there was a cooperator who was going to
15    identify the reason that Joe Gallegos was here in
16    Counts 4 and 5.  And that didn't materialize.  And
17    that hasn't materialized.  And it's the shifting --
18    we promise to prove federal jurisdiction for the
19    murder -- and Your Honor, I don't know if the Court
20    remembers this, but we had a discussion with Ms.
21    Armijo and the Court regarding whether or not there
22    was any jurisdiction to lock Mr. Joe Gallegos into
23    Counts 4 and 5, and quite frankly, Count 13 -- which
24    is 4 and 5, is the murder of Adrian Burns, and Count
25    13 is the assault that's alleged on Jose Gomez, or
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    Tiny.
 2            And at this point in time, those three
 3    counts have no federal jurisdiction.  They are
 4    straight -- for lack of a better term -- violent
 5    crimes alleged by the Government that are only
 6    punishable in the State of New Mexico.  There is
 7    nothing that ties those three counts to the
 8    indictment, to the VICAR actions.
 9            And so my concern is that we keep getting
10    this shifting target that I've been looking for for
11    two years now, Your Honor.
12            THE COURT:  I understand those, and I'm not
13    trying to run away from any of those issues.  But
14    hang in with me for a second on the James hearing and
15    the co-conspirator -- you've got their table?
16            MR. BENJAMIN:  Yes, Your Honor.
17            THE COURT:  We'll figure out how to
18    proceed, from the defendants' standpoint on that in a
19    moment, but can you live with the fact that they will
20    give you, by March 26, any additional statements out
21    of the first trial?  I know we already had a hearing,
22    and so it may be that everybody is kind of aware of
23    what they're going to do -- but can you live with a
24    March 26 date for them to get -- I guess, a final
25    transcript -- go through it, and add any sort of
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    statements out of the first trial onto this list?

2    Could you live with that deadline?

3              MR. BENJAMIN:  When the Court phrases it

4    that way, Your Honor, I think, selfishly, for Mr. Joe

5    Gallegos, I can, be cause none of those statements

6    will affect Mr. Gallegos.

7              I see Mr. Burke out of the corner of my

8    eye --

9              MR. BURKE:  We cannot live with that.  That

10   is absurd in my view, Your Honor.  They've known

11   about these statements, basically for years.  We

12   don't need a transcript for them to identify them.

13   And when I read this sentence, "The United States

14   also reserves the right to introduce co-conspirator

15   statements introduced in Trial 1," I was thinking:

16   What right?  There is no right.  Reserving what right

17   was my question?

18             And really, if they're going to try to do

19   this, then the deadline should be Wednesday of this

20   week.  So that they just tell us what the James

21   statements are that they're now going to try to slip

22   in with this sentence of:  Reserving the right to

23   introduce statements introduced in Trial 1.  And I

24   was here for a bunch of the trial, so I have a feel

25   for it.  But most of my colleagues were not.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   we've been trying to keep up, and we've trying to
 2   keep everybody up to speed.  But it's very difficult.
 3   And it was a massive -- I'm telling you.  So those
 4   are my comments.
 5            THE COURT:  Well, I am concerned, Mr.
 6   Castellano, about this.  I do think today is the
 7   James hearing, so I do need to put pressure on the
 8   Government to identify its statements.
 9            Could you live with a date, end of business
10   Wednesday, and if you need to supplement, then I'll
11   probably put an additional burden on the Government
12   to start justifying why it couldn't identify, but at
13   least give the defendants something by the end of
14   business on Wednesday as to statements out of the
15   first trial that you intend to use, the
16   co-conspirator.
17            MR. CASTELLANO:  Your Honor, Mr. Benjamin
18   just agreed that he was here for the hearings in
19   December, and he's aware of the co-conspirator
20   statements.  So it's not as if counsel wasn't here
21   for that hearing.  They were here for that hearing so
22   they did hear the statements back in, I believe,
23   December.
24            He's acknowledged that.  But I understand
25   the Court's ruling.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          THE COURT:  I'm going to put a deadline:
 2    End of business on Wednesday for the Government to
 3    either file a letter, send a letter, or file a
 4    pleading identifying additional statements out of the
 5    trial, and really any other statements you're going
 6    to give.
 7          And after that deadline, if you're going to
 8    try to get it in, if you find some other statements
 9    you're going to have to start justifying why it
10    wasn't produced earlier.
11          The reality is that this is a trial, and I
12    try to put deadlines on the Government, but there may
13    be statements that come up that we have to deal with,
14    and of course, the Tenth Circuit recognizes that you
15    can do that in a trial -- and trying to front-end
16    load this as much as possible for the Court and the
17    Defendants' benefit, but you are going to have to
18    start rolling a little bit and being flexible to --
19    but I will require the Government to start justifying
20    why it wasn't identified before.
21          MR. BENJAMIN:  Your Honor, I understand
22    that.  And my concern is that Mr. Gallegos -- and I
23    think Mr. Andrew Gallegos' counsel wants to address
24    this -- we're not concerned about a statement and
25    whether he said that we got in the car or we got in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the car with four kilos or got in the car with

2    something else like we normally deal with.  I'm

3    talking about individuals, whole individuals, and/or

4    statements, that are tied to the jurisdiction for

5    three counts.

6             THE COURT:  I understand that.  I'm trying

7    to work through the James issue.  I'm not running

8    away from the jurisdictional issue.  But I guess I

9    need to deal with this James issue first.  And then

10   I'll let you argue fully before, you know, we get

11   done about these jurisdictional issues.  But they may

12   involve non James statements, they may involve

13   something else.  So I'll put that aside just for a

14   second and try to work through this James issue.

15            MR. BENJAMIN:  And, Your Honor, I

16   understand, and appreciate that.  And once again, I

17   realize the Court has that -- but that's how my James

18   response opens up, is tying the James hearing to the

19   investigating individuals.

20            THE COURT:  Okay.  Ms. Torraco.

21            MS. TORRACO:  Thank you, Your Honor.  And

22   I'll be very brief, but I want to --

23            THE COURT:  Let's do this:  I've got to

24   give Ms. Bean a break.  We've been going an hour, and

25   so I don't cut you short, why don't we be in recess

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    for about 15 minutes, and we'll come back in and
 2    resume the James hearing.
 3              (The Court stood in recess.)
 4              (The Court took the verdict from Trial 1
 5    and a lunch break.)
 6              THE COURT:  All right.  We'll go back on
 7    the record.  I left my robe somewhere in the
 8    building.  I won't be Bob Schwartz.  We all like Bob.
 9    I think I left it up in the visiting judges'
10    chambers.
11              MR. BURKE:  Are you open for business, Your
12    Honor?
13              THE COURT:  Yes.
14              MR. BURKE:  I had a chance to look at the
15    plea agreements over the break.  And just the
16    addendum need to be added to them, because the
17    document and any addenda become the complete
18    statement.  So these will have to get the addenda.
19              THE COURT:  Any objection to providing the
20    addendum, Mr. Castellano?
21              MR. CASTELLANO:  No, Your Honor.  The
22    addendum doesn't have any statements to it.  We're
23    happy to add that if necessary.
24              THE COURT:  If there is no objection, we'll
25    add those.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BURKE:  Thank you, Your Honor.
 2            THE COURT:  Is there any objection?  All
 3   right.  I know that the defendants didn't want them
 4   in, but if they're coming in, then we'll add the
 5   addendum to it.
 6            All right.  Well, let's continue to take up
 7   the -- I've been reading during the lunch hour, and
 8   this morning, so while the jury was meeting with the
 9   attorneys I was continuing to read on some of the
10   latest motions.  But let's go back to the James
11   hearing.  Where do the defendants want to go on this?
12   I mean, I guess I could do this.
13            Oh, Ms. Torraco, why don't you go ahead.
14   You were up.
15            MS. TORRACO:  That's okay.  I like hearing
16   what you have to say first.
17            THE COURT:  Well, I was going to say, as a
18   general rule, what I did in the first trial is I
19   said -- and I've read everything -- is let me go
20   ahead and say I think that the Government has
21   established a conspiracy.  I probably need to be
22   enlightened a little bit, and see if there is any
23   argument on who the members of the conspiracy are, so
24   that I have each conspiracy down, I have who the
25   Government contends is in each conspiracy.  And then
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    it looks to me like they've made at least a prima

2    facie case that the statements that are being offered

3    were in the conspiracy, or done in furtherance of the

4    conspiracy, and during the conspiracy.  But then

5    allow the defendants to come in and tell me that, no,

6    that the one is not.  And then I can focus on it a

7    little bit more.  Would be the approach that I would

8    propose.

9           But your thoughts, Ms. Torraco?

10          MS. TORRACO:  Thank you very much, Your

11   Honor.  And before the break I think there were two

12   issues.  And I know you ruled on one of them, and

13   that was that the Government had represented that it

14   now wants to bring in statements that were offered

15   for Trial 1, and they kind of left that caveat to

16   also enter those statements in Trial 2.

17          And I would like to note Andrew Gallegos'

18   objection to that.  And I believe Mr. Beck had said,

19   Well, you guys heard them all, everyone was here, so,

20   you know, you were on notice.  And I would just like

21   to remind the Court that that was the first day that

22   I was on this case, is when we did that James

23   hearing.  And at that time, the way that I recall it,

24   it was very clearly represented that it was a Trial 1

25   James hearing.  And regarding Andrew Gallegos, there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   were times that we felt like we had something to
 2   question, but refrained from cross-examination
 3   because it was very clearly a Trial 1 issue.  So I
 4   want to just make that note for the record.
 5           THE COURT:  Well, I think you're entitled
 6   to a body up here in the witness box to
 7   cross-examine.  So if you want it, the Government, I
 8   think, is basically saying they agree.  So they'll
 9   put somebody up here if you want to cross-examine on
10   the table.
11           MS. TORRACO:  Okay.  Terrific.  Because I
12   know that we do.
13           THE COURT:  So if you want to do that now,
14   we can do that now.  If the way I proposed to go
15   about is a good way to approach it, then for your
16   planning purposes, I can plan to have these
17   statements coming in.  I can plan on there being a
18   conspiracy.  We can agree on who the members are.  I
19   can just make a finding, is probably the best way to
20   do it.  But you can tell me where the real issues
21   are.  I think -- and then you can have a witness to
22   question to -- I assume what the questions are going
23   to be directed to are:  What is your evidence that
24   this is during and in furtherance of the conspiracy?
25           MS. TORRACO:  Yes, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Or there may be other issues.
 2              MS. TORRACO:  And I think to some extent,
 3    at least from Andrew Gallegos' perspective, we are
 4    not as clear -- I think the Court made a statement
 5    that you're clear that the Government has made a
 6    prima facie case.  We are not as clear as to the
 7    separate conspiracies, and we ask that the Government
 8    make that showing, as long as, and in addition to
 9    which of the defendants are members of which
10    conspiracy.
11              THE COURT:  Yeah.  What I mean by -- it
12    seems to me that, if you take what's in the plea
13    agreement, probably there is enough there to find a
14    conspiracy.  And I would group them around the
15    different murders.  So I would assume those are the
16    conspiracies the Government is going to prove is the
17    murder to kill Mr. Burns, the murder to kill Mr.
18    Castillo, you know, that those would be the
19    conspiracies.  And then we need to be clear, that
20    means I have to find who is a member of that
21    conspiracy.  And then we begin to focus then on the
22    statements to make sure that the declarant was a
23    member of that conspiracy, and that the statement was
24    made during and in furtherance of the conspiracy.
25              MS. TORRACO:  Thank you, Your Honor.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    the last thing is I just want to plant the seed, as
2    the Court goes through the evidence.  I am very
3    concerned, as is co-counsel and Mr. Andrew Gallegos,
4    as to why he has been indicted on a 2012 racketeering
5    charge.  And the Court is going to hear a lot of
6    evidence, or a lot of statements, depending on the
7    stage of the proceedings about 2001 murders.  And I
8    am very concerned that Andrew Gallegos is going to be
9    tarnished by all of these past bad acts of the
10   co-defendants.  And I just want to plant that seed
11   before we move on.  Thank you.
12             THE COURT:  Okay.  Thank you, Ms. Torraco.
13             All right.  So how do the defendants want
14   to proceed?  If we're sort of in agreement on the
15   ground rules, tell me how the defendants would like
16   to proceed on this James hearing.  Mr. Castle?
17             MR. CASTLE:  Judge, just initially, I know
18   that when the Court had done James hearings in the
19   Trial 1, it also spilled into not just co-conspirator
20   statements, but issues concerning statements against
21   interests, and admissions by a party opponent.  I
22   take it the Court only wants to deal with the James
23   right now.
24             THE COURT:  Yeah.  What I would propose to
25   do, if this would work for everybody, let's focus on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

82

```
 1    the James statements, let's figure out what evidence
 2    is going to come in as a co-conspirator.  It's not
 3    really an exception.  But it's nonhearsay.  So
 4    fitting it in to Section E, and let's figure that
 5    out.  And then, if the Government still wants that
 6    statement in, and y'all want me to rule, I will, but
 7    you'll have to identify it.  I assume -- I have not
 8    finished reading Mr. Beck's brief that he filed
 9    either yesterday or tonight or this morning involving
10    the statement against penal interests.  But I had
11    ruled against the Government the first trial as to
12    Mr. Perez' statements.  And so I didn't allow some of
13    that to come in that way.  And it didn't -- about the
14    only effect I think it had was it didn't come in
15    against the other defendants.  Because if it had been
16    nonhearsay there, it would have come in against
17    everybody, and I didn't allow that.  I only allowed
18    the statements to come in against Mr. Perez.  But
19    they're making another run at it to, I think, try to
20    get statements by some of the defendants to be
21    against all the defendants.
22            So what I would propose is let's focus on
23    the statements they've identified so far, statements
24    they're going to identify this week.  And then, if
25    there are other statements, let's take them up one at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    a time, and I'll try to give you rulings on them.
 2              MR. CASTLE:  That makes sense, Your Honor.
 3              The only thing I would request so we can
 4    all proceed orderly, is that if they do have specific
 5    statements against interests or admissions by party
 6    opponent, that they want to introduce against a
 7    defendant that isn't the declarant, that we have a
 8    list of those so that we can work orderly through it
 9    later this week.  And I don't know if they could do
10    it by Wednesday, or if they can even identify the
11    pages that the stuff is on, so they don't have to do
12    anything formal.  We'd asked for that informally from
13    them, but I'm not sure they've had the opportunity to
14    look at that.
15              THE COURT:  Well, what do y'all think about
16    that, to make as many pretrial rulings as I can on
17    this, do you want to provide such a list?
18              MR. BECK:  No, Your Honor.  I think we
19    responded to this initially Halloween of last year,
20    as I'm looking at my chart, with Document 1389, that
21    we were not going to provide such a document.  We
22    didn't do that in Trial 1, and it worked just fine.
23    I think the defendants know what's out there, and so
24    does the Government.  And so, if we have problems, we
25    bring them up and there can be a ruling on it.  If
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    not, then we just go through trial.  I think probably
2    a motion in limine that you're reading through right
3    now will give us good headway as to what's going to
4    happen there.
5            THE COURT:  I think that I really don't
6    have a good basis other than -- I can probably order
7    anything, but I don't have a good basis other than
8    just brute judicial force to force the Government to
9    disclose those statements.  But I do think that we're
10   probably going to have a pretty good list.  If I
11   don't allow something in the co-conspirator
12   exception, I would bet you the Government is still
13   going to try to squeeze it into something.  So we can
14   make a little list there and come back to it.
15           If y'all have identified any statements you
16   can bring it up and say:  Would you rule on this one,
17   and I'll rule on them.  But I probably -- you got a
18   lot because I did force them to do the James
19   statements, and I'm continuing to force them to get
20   those statements out.  So you've got a pretty good
21   list.
22           MR. CASTLE:  Your Honor, on behalf of Billy
23   Garcia, we attempted to do that.  It's a targeted
24   motion which lists the statements.  The only thing I
25   would just communicate, this trial is going to be a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    lot different than Trial 1.  There are a lot of these
2    kind of statements out there.  And if the Government
3    wants to just proceed on the fly, then we're going to
4    be stopping proceedings to voir dire a witness, to
5    find out is this really a statement against interests
6    or is this bragging.  And it's really unfair to the
7    defense to have to do that in front of the jury,
8    because they'll wonder why you're asking all these
9    questions, open-ended question.
10            And so I'm not asking for anything right
11   now.  But perhaps the Government might think about
12   that.  And it would make the trial go a lot smoother
13   if we had rulings and we all knew these specific
14   statements.  And I would just, you know, a remark
15   that the record on these statements are going to have
16   to be pretty significant because we're going to have
17   to talk about the confrontation arguments that we
18   brought up and reiterate those.  We have to bring up
19   any of the hearsay objections, et cetera.  So that's
20   what I was trying to do.  We do have discovery, so we
21   do know what statements.  Unless they are holding
22   anything back at this point, we pretty much know it.
23   And I thought while we're here -- but I understand
24   the Court's ruling.  I'm just saying --
25            THE COURT:  Do this for me:  I'll try to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    make as many rulings -- I would prefer, just like
 2    you, I'd prefer to have a moment to think about it.
 3    I'd like to do it as much as I can in advance.  So if
 4    you see a statement, write it down, send me a letter,
 5    I'll rule on it.  If the Government says, Well, you
 6    didn't have enough information and stuff, then, you
 7    know, we might have to do some stuff out of the
 8    presence of the jury or something like that.  But
 9    I'll give you every ruling I can.  And you'll just
10    alert me to the statement, and try to keep it moving.
11            MR. CASTLE:  That makes sense, Your Honor.
12    Yeah, as far as the procedure on the James motions
13    what the defense suggests is the Government first
14    address the Court, tell the Court what the various
15    conspiracies are, who the participants are.  And some
16    of those participants are not going to be defendants
17    here.  I noticed in their proffer, it might be people
18    that aren't defendants.  So they would have to
19    identify not only defendants, but other participants
20    in the conspiracy that they're going to rely upon to
21    get statements in, and then tell us a bit of what the
22    time period is of this conspiracy, and whether
23    they're going to try to bring in evidence in the
24    course of, furtherance portion of it.
25            Once they define that, then we're going to

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                            e-mail: info@litsupport.com

87

```
 1  have a lot better understanding and ability to refine
 2  our questions to Agent Acee, which is who we would
 3  put on to ask about this initially.
 4          Just so the Court knows, we have been
 5  informed over the weekend that the Government was
 6  going to put on Agent Acee, instead of putting us in
 7  this position of calling him.  But I think it's just
 8  another way to skin the cat, I guess.
 9          THE COURT:  All right.  Well, let me talk
10  to Mr. Castellano a little bit and see.  It would
11  seem to me, Mr. Castellano, it's a reasonable
12  request, both from the Court and from the defendants
13  for you to -- let's take these, tell me how many
14  conspiracies that you're going to try to establish in
15  the case, who you allege the members to be.  Yeah, I
16  guess that's it.  And that might help educate the
17  Court as well.  I'm trying to get the counts,
18  defendants, and victims -- alleged victims -- down in
19  my head as well, so -- does that sound reasonable?
20          MR. CASTELLANO:  Sure, Your Honor.  Let's
21  give it a shot.
22          Let me start with the indictment, because
23  as we go through any reports or anything else, there
24  will be additional members of the conspiracy.  For
25  example, someone may have passed the paperwork.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Starting with the indictment, just in terms of
 2    branding some of these conspiracies, so Count 1
 3    involves the Castillo murder, and it's currently
 4    charged as Angel DeLeon, Joe Gallegos, Edward Troup,
 5    Leonard Lujan, and Billy Garcia.  And I'll go back
 6    and fill in the other blanks.  But in terms of laying
 7    out the framework, I'll give the Judge the initial
 8    names.
 9              So Count 2.
10              THE COURT:  Let me get -- it was Joe
11    Gallegos.
12              MR. CASTELLANO:  I'm happy to repeat any
13    names or go slower.
14              THE COURT:  But it's Joe Gallegos; correct?
15              MR. CASTELLANO:  That's correct.  It's Joe
16    Gallegos.
17              THE COURT:  Then Edward Troup.
18              MR. CASTELLANO:  Yes.
19              THE COURT:  And then, let's see, Leonard
20    Lujan.
21              MR. CASTELLANO:  Yes.
22              THE COURT:  So Mr. Lujan is the only one
23    that's not a defendant, and of course, Angel DeLeon
24    is a fugitive.
25              MR. CASTELLANO:  That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  And you don't have any other
 2    conspirators, either parties or nonparties, that will
 3    be part of Count 1?
 4              MR. CASTELLANO:  I'm sure that we will,
 5    I'll come back to those.  I'm going to just get the
 6    framework, then I'll go through some of the reports,
 7    which will indicate additional people who, for
 8    example, may have passed paperwork.
 9              But nonetheless, the defendant in that
10    conspiracy as charged or that murder as charged is
11    Billy Garcia.
12              THE COURT:  Right.  Okay, then for Count 2?
13              MR. CASTELLANO:  Count 2 is the Garza
14    murder.
15              THE COURT:  So basically what you're doing
16    me is giving me indictment information here?
17              MR. CASTELLANO:  I am for starters.
18              THE COURT:  This is Mr. Garza; remind me
19    what Mr. Garza's first name is.
20              MR. CASTELLANO:  Rolando, R-O-L-A-N-D-O.
21              THE COURT:  And Mr. Castillo's first name?
22              MR. CASTELLANO:  Frank.
23              THE COURT:  All right.
24              MR. CASTELLANO:  Frank Castillo was also
25    known as Pancho, in case that comes up on any of your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   reports.
 2              THE COURT:  Okay.  Mr. Garcia, did he have
 3   a name?
 4              MR. CASTELLANO:  Garza was Looney.
 5              THE COURT:  Okay.
 6              MR. CASTELLANO:  For starters, we have
 7   Leonard Lujan.
 8              THE COURT:  I'm not looking at the
 9   indictment.  Does he appear as somebody's name is not
10   darkened, bold?  It's just a co-conspirator?  Is that
11   the way he's listed?
12              MR. CASTELLANO:  Yes, Leonard Lujan was
13   initially charged in Counts 1 and 2.  And he's now
14   pled guilty and the Court has his plea agreement.
15              THE COURT:  Okay.
16              MR. CASTELLANO:  Billy Garcia.
17              THE COURT:  Okay.
18              MR. CASTELLANO:  Eugene Martinez, who has
19   also pled guilty.
20              Allen Patterson.
21              THE COURT:  All right.
22              MR. CASTELLANO:  And Christopher Chavez.
23              THE COURT:  Okay.
24              MR. CASTELLANO:  Count 3 is Freddie
25   Sanchez.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  Okay.
 2                MR. CASTELLANO:  Javier Alonso is the first
 3      person there, and he's pled guilty.
 4                THE COURT:  Okay.
 5                MR. CASTELLANO:  Next is Edward Troup.
 6                THE COURT:  All right.
 7                MR. CASTELLANO:  Arturo Garcia.
 8                THE COURT:  Okay.
 9                MR. CASTELLANO:  Benjamin Clark, who has
10      pled guilty.
11                THE COURT:  Okay.
12                MR. CASTELLANO:  And Ruben Hernandez, who
13      has also pled guilty.
14                THE COURT:  All right.
15                MR. CASTELLANO:  The next in Counts 4 and 5
16      is the conspiracy and the murder of Adrian Burns.
17                THE COURT:  So these are going to be the
18      same?
19                MR. CASTELLANO:  Yes.  And those counts
20      involve Joe and Andrew Gallegos.
21                THE COURT:  All right.
22                MR. CASTELLANO:  That takes us to -- Count
23      13 does not have a conspiracy charge, so we can skip
24      that one for now.  That's the assault with a
25      dangerous weapon of Jose Gomez.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              But Count 14 is a conspiracy --
2              THE COURT:  Let me write that down so I
3     kind of begin to memorize these counts.
4              MR. CASTELLANO:  So Count 13.
5              THE COURT:  Is assault of Jose Gomez?
6              MR. CASTELLANO:  Yes, assault with a
7     dangerous weapon upon Jose Gomez.
8              THE COURT:  All right.  So there is no
9     conspiracy connected with it?
10             MR. CASTELLANO:  Correct.
11             THE COURT:  All right.  Then 14.
12             MR. CASTELLANO:  14 is conspiracy to murder
13    Jose Gomez.  And in that count is Joe Gallegos;
14    Santos Gonzalez, who has pled guilty; Paul Rivera,
15    who has pled guilty; Shauna Gutierrez; and Brandy
16    Rodriguez, who has pled guilty.
17             THE COURT:  Okay.
18             MR. CASTELLANO:  And in Count 15 is the
19    attempted murder of Jose Gomez, which also includes
20    allegation of assault with a dangerous weapon
21    resulting in serious bodily injury.
22             THE COURT:  Has that got the same cast of
23    characters as far as the alleged conspiracy?
24             MR. CASTELLANO:  That's correct.
25             THE COURT:  All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  And the same applies to
 2   Count 16, which is -- for shorthand, I'll just call
 3   it "witness tampering."
 4              THE COURT:  And this is related to Jose
 5   Gomez, the assault on him?
 6              MR. CASTELLANO:  Yes, sir, that's correct.
 7              THE COURT:  So it's the same conspiracy
 8   there?
 9              MR. CASTELLANO:  Yes.  Counts 14, 15, and
10   16 can be grouped together.
11              THE COURT:  Okay.  Tell me for my
12   edification what's the difference between 13 and 14
13   and through 16?  What's the difference?
14              MR. CASTELLANO:  Count 13 is an assault on
15   a different occasion.
16              THE COURT:  Okay.
17              MR. CASTELLANO:  That was on March 17th of
18   2015.
19              THE COURT:  Okay.
20              MR. CASTELLANO:  Then Counts 14, 15, and 16
21   are in February of 2016.
22              THE COURT:  Okay.  Those are the ones that
23   involve the machete?
24              MR. CASTELLANO:  Yes.
25              THE COURT:  All right.  So now, going back,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    are there additional people -- as far as the Freddie
 2    Castillo, are there additional co-conspirators that
 3    you may use to get statements in other than the
 4    people that are identified in the indictment?
 5              MR. CASTELLANO:  Yes, Your Honor.  There
 6    should be additional people.  And some of those are
 7    outlined in the table.
 8              So let me start with the table.  I'm
 9    looking at statement number 11.
10              THE COURT:  So you've got a declarant,
11    Angel Munoz?
12              MR. CASTELLANO:  Yes.
13              THE COURT:  And Angel Munoz, are you
14    alleging that he is a co-conspirator?
15              MR. CASTELLANO:  Yes.  Leroy Lucero
16    confirmed the message, and that's regarding the
17    Castillo and Garza murders.
18              THE COURT:  Now, I wrote down that what was
19    in the indictment was Leonard Lujan.  Is it Leonard
20    or Leroy?
21              MR. CASTELLANO:  There are two people.
22    There is Leonard Lujan and then there is Leroy
23    Lucero, who is not listed.
24              THE COURT:  Sorry, yeah.  So is Leroy
25    Lucero a co-conspirator on this count?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  I don't recall if he's a
 2     co-conspirator.  He is the one who confirms the
 3     message, though, with Angel Munoz.
 4              THE COURT:  Why don't for the present
 5     time --
 6              MR. CASTELLANO:  We should list him.
 7              THE COURT:  Should list him or should not?
 8              MR. CASTELLANO:  Let's list him for now.
 9              THE COURT:  Okay.
10              MR. CASTELLANO:  Statement number 13 on the
11     table, Leonard Lujan met with Joe Gallegos, Angel
12     DeLeon, and someone identified as Criminal.
13              THE COURT:  Is that Mr. Folse, Kevin Folse?
14              MR. CASTELLANO:  I think he is known by
15     that, but this is probably a different person.  Let
16     me see if I can find the name.  He's identified by
17     the name or moniker of Criminal.
18              THE COURT:  You don't think that's Folse?
19              MR. CASTELLANO:  I don't think so.  Let me
20     double-check.  That person is Michael Jaramillo, Your
21     Honor.  Frederico Munoz should be identified as a
22     co-conspirator in the Garza and Castillo murders.
23     That's statement number 16 on the table.
24              THE COURT:  Okay.
25              MR. CASTELLANO:  Two more possible people
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    are the Rascon brothers, Brian and Raymond.  And this
2    is for the Freddie Sanchez murder.
3              THE COURT:  Okay.  So you don't have any
4    more co-conspirators for Count 1, other than stopping
5    with Frederico Munoz?
6              MR. CASTELLANO:  I may have some more as I
7    move through the table, Your Honor.  I tried to group
8    these as best as possible, but I know there are some
9    stragglers.
10             THE COURT:  Okay.  But the one you're
11   adding to Freddie Sanchez, Count 3, is Brian Rascon,
12   is that what you said?
13             MR. CASTELLANO:  Yes, Brian and Raymond
14   Rascon.
15             THE COURT:  And is Brian spelled B-R-I-A-N?
16             MR. CASTELLANO:  Yes.
17             THE COURT:  Then who is the other Rascon
18   brother?
19             MR. CASTELLANO:  Raymond.  I think for that
20   count we can also add possibly Benjamin Clark and
21   Javier Alonso.  Benjamin Clark -- sorry, I've already
22   given you that name.  But then you have Javier
23   Alonso.
24             THE COURT:  Ben Clark is in the indictment;
25   correct?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. CASTELLANO:  That's correct.  Also

2   related to the Freddie Sanchez murder, in statement

3   number 21 on the table, it's an unidentified person,

4   so I put "first name unknown, last name unknown."

5   That person sent word from green pod to the blue pod

6   that if the murder wasn't carried out, other people

7   in blue pod would be killed.  So that's an unknown

8   person who passed word from one pod to the next.

9          Okay.  Going back to the Castillo and Garza

10  murders, there are two other possible names.  One is

11  Willie Amador, spelled --

12          THE COURT:  Let me ask you this:  All the

13  names that you gave me:  Munoz, Leroy Lucero,

14  Jaramillo, and Munoz, were those intended to be both

15  part of the conspiracy for Freddie Castillo and

16  Rolando Garza?

17          MR. CASTELLANO:  I know that Munoz'

18  statements are.  And generally they were grouped

19  together.  I'll have to double-check that.

20          THE COURT:  Should I be listing Leroy

21  Lucero as somebody the Government thinks was part of

22  the Garcia (sic) conspiracy?

23          MR. CASTELLANO:  Castillo and Garza,

24  G-A-R-Z-A.

25          THE COURT:  Yeah, I'm sorry, I can't read



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   my writing.  Garza.  So I need to move Leroy Lucero
 2   over to Garza as well?
 3            MR. CASTELLANO:  Yes.
 4            THE COURT:  And Michael Jaramillo?
 5            MR. CASTELLANO:  Yes.
 6            THE COURT:  Hold on just a second.
 7            (A discussion was held off the record.)
 8            THE COURT:  And how about Frederico Munoz?
 9            MR. CASTELLANO:  For both.
10            THE COURT:  He's for both.  All right.  So
11   you were about to add, I think, somebody to, I guess,
12   the bottom of both Mr. Castillo and Mr. Garza's
13   conspiracies?
14            MR. CASTELLANO:  Yes.
15            THE COURT:  Who are those people?
16            MR. CASTELLANO:  The first one is Willie,
17   W-I-L-L-I-E.
18            THE COURT:  Willie, okay.
19            MR. CASTELLANO:  Yes, Willie Amador,
20   spelled A-M-A-D-O-R.  And Jesse, spelled J-E-S-S-E.
21            THE COURT:  Hold on just a second.  Let me
22   get it in both columns here.  Then the next one is
23   Jesse --
24            MR. CASTELLANO:  Jesse Ibarra, spelled
25   I-B-A-R-R-A.  And that's for Castillo and Garza.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.
 2              MR. CASTELLANO:  These are all spelled out
 3     on the table, Your Honor.
 4              Next is we have a more specific statement
 5     as to the Garza murder by Willie Amador.  That's in
 6     statement number 32.  In that one Willie Amador tells
 7     Eugene Martinez to serve as a lookout during the
 8     Garza murder.
 9              Now, there is, turning to the Freddie
10     Sanchez murder, there is a person named Kyle Dwyer,
11     K-Y-L-E, D-W-Y-E-R.  He's one of the people who is
12     alleged to have passed paperwork regarding the
13     Sanchez murder.  I noticed that one up because
14     passing the paperwork is an act; however, I image
15     there are some words relating to that act.  I'm at
16     those words right now.  I have to double-check with
17     the witness who gives us that information.  But I'll
18     give the Court that in order to add him to the
19     conspiracy at least.
20              Okay.  Turning to the Burns homicide.  That
21     is a person known as Charlene, C-H-A-R-L-E-N-E; last
22     name, Baldizan, B-A-L-D-I-Z-A-N.
23              Someone -- I'm not sure he would be
24     considered a conspirator, but I will give the Court
25     another name as maybe potentially guilty of maybe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   helping to cover up the conspiracy.  That person is
 2   Jason; the next name is Van, V-A-N, and the next name
 3   is Veghel, V-E-G-H-E-L.
 4           THE COURT:  Are you saying B as in boy, or
 5   V as in --
 6           MR. CASTELLANO:  V as in Victor.  Both
 7   names have V as in Victor in them.
 8           You have the names already, but statement
 9   number 63 on the table, there are two people
10   identified as Cheeky and Coquito.  I believe those
11   are the Rascon brothers.
12           MR. COOPER:  Sorry, I didn't hear that last
13   part.
14           MR. CASTELLANO:  In statement number 63
15   Cheeky and Coquito are identified in that statement,
16   but those are the nicknames for the Rascon brothers.
17           MR. COOPER:  Which is which?
18           MR. CASTELLANO:  I don't remember.  Let me
19   check.
20           THE COURT:  So the two Rascon brothers,
21   Brian and Raymond should be listed both under Freddie
22   Sanchez and Adrian Burns?
23           MR. CASTELLANO:  No, in statement 63, those
24   are the Freddie Sanchez murder.
25           THE COURT:  Oh.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. CASTELLANO:  When the Court sees those

2     names on the table, for example, on statement number

3     63, those two names refer to the Rascon brothers and

4     the Freddie Sanchez murder.

5           THE COURT:  Okay.  So don't move them over

6     to Mr. Burns?

7           MR. CASTELLANO:  That's correct.

8           THE COURT:  Just Freddie Sanchez?

9           MR. CASTELLANO:  That's correct, Your

10    Honor.

11          THE COURT:  Okay.  Did you give everybody

12    the monikers for those two, and I just didn't hear

13    it?  Who is Brian?  Is he Cheeky, or --

14          MR. CASTELLANO:  I always get them

15    confused, Your Honor.  Let me check with the agent

16    and see if I can get the names lined up.  Okay, Your

17    Honor, Cheeky is Raymond Rascon, and Coquito is Brian

18    Rascon.

19          THE COURT:  Okay.  And these are Freddie

20    Sanchez?

21          MR. CASTELLANO:  That's correct.  Related

22    to the -- in statement number 67, that's related to

23    the Garza murder.  Potential names, not

24    necessarily -- one is Jimmie Gordon.  I'm not quite

25    sure I'd quite call him a conspirator, but let's list

SANTA FE OFFICE                                                                                MAIN OFFICE
119 East Marcy, Suite 110                                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                      Albuquerque, NM 87102
(505) 989-4949                                                                                       (505) 843-9494
FAX (505) 843-9492                                                                          FAX (505) 843-9492
                                                                                                      1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                     e-mail: info@litsupport.com

 1    him for now.

 2             And the other one is Geraldine Martinez.

 3             THE COURT:  We're going back to Count 2,

 4    the Garza murder?

 5             MR. CASTELLANO:  Yes.

 6             THE COURT:  So we're adding two names here,

 7    we're adding Jimmie Gordon, and we're adding

 8    Geraldine Martinez?

 9             MR. CASTELLANO:  Correct.

10             Another one, statement number 68 is not

11    tied directly to any of the charged homicides.  The

12    Court actually heard this testimony in Trial 1.  It's

13    that Billy Garcia had put a hit out on Gerald

14    Archuleta through Baby Zack.  So it would count as

15    enterprise evidence.  It wouldn't count towards any

16    of the charged -- well, it is related to the Castillo

17    and Garza murders.  I should say the Castillo murder.

18             THE COURT:  All right.  So who is the

19    co-conspirator that you're relating to statement 68?

20             MR. CASTELLANO:  Statement 68 is a

21    conversation where Baby Zack informs Gerald Archuleta

22    he's there to kill him at Billy Garcia's request.

23             THE COURT:  So is Baby Zack a

24    co-conspirator --

25             MR. CASTELLANO:  Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  -- in the Castillo murder?
 2              MR. CASTELLANO:  No.
 3              THE COURT:  He's -- Baby Zack is a
 4    conspirator in what?
 5              MR. CASTELLANO:  In a separate conspiracy
 6    to murder Gerald Archuleta.  It's a noncharged
 7    conspiracy, but I went ahead and put it on the table
 8    anyway.  It's a co-conspirator statement, but it's
 9    not a statement charged in this indictment.
10              THE COURT:  Okay.  So there is a new
11    conspiracy, and we'll call it the Archuleta?
12              MR. CASTELLANO:  Yes, that's correct, also
13    known as Styx.
14              THE COURT:  And his first name is Gerald,
15    Gerald Archuleta?
16              MR. CASTELLANO:  Yes, Your Honor.
17              THE COURT:  And this is uncharged.  And
18    Baby Zack, remind me what his name is.
19              MR. CASTELLANO:  I forget his first name.
20    He's Billy Garcia's nephew.  And the Court heard
21    testimony at trial that part of this was a
22    confrontation at the methadone clinic.
23              THE COURT:  Is his name -- last name also
24    Garcia?
25              MR. CASTELLANO:  I don't remember.  I will
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    get that name to the Court.

2              THE COURT:  All right.

3              MR. CASTELLANO:  But it was related to the

4    Castillo murder, as it related to a disagreement over

5    Castillo getting murdered.

6              Now, related to the Sanchez murder, the

7    Freddie Sanchez murder --

8              THE COURT:  Okay.

9              MR. CASTELLANO:  -- another person

10   identified there is Jesse Trujillo.  That person is

11   identified in statement 73 and 74 of the table.

12             Your Honor, let me check on one other name

13   right here.

14             THE COURT:  You may.

15             MR. CASTELLANO:  Thank you, Your Honor.  I

16   was checking on another name.

17             Those are additional names I have on the

18   table.  And all those statements will be on or about

19   the date alleged in the indictment.

20             THE COURT:  All right.  It looks to me

21   like, then, you're alleging there were six

22   conspiracies.  If you want to quibble about the

23   number, go ahead, educate me.  But it sounds like

24   you're alleging six conspiracies.  I'll call that

25   Castillo, Garza, Sanchez, and then I'll put the 2, 4



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   and 5s together, and that's Burns.  And I'll put,

 2   then, the Gomez three counts as one, and then you've

 3   got the uncharged Gerald Archuleta.  Is that a

 4   fair -- six conspiracies?

 5            MR. CASTELLANO:  I think that's right, Your

 6   Honor.

 7            THE COURT:  Can you think of any other

 8   names that you will be advancing as co-conspirators

 9   for any of these six conspiracies?

10            MR. CASTELLANO:  I know that Joe Martinez

11   is one of them.

12            THE COURT:  And where will he go?

13            MR. CASTELLANO:  I think he may be part of

14   Freddie Sanchez.  He's part of the Freddie Sanchez

15   murder, as someone who also passed or potentially

16   passed paperwork.

17            THE COURT:  So his name is Joe Martinez?

18            MR. CASTELLANO:  Yes.  You heard about him

19   in Trial 1, also known as Cheech.

20            THE COURT:  Okay.  Any other

21   co-conspirators that can you think of?

22            MR. CASTELLANO:  Not right offhand, Your

23   Honor.  Once defense counsel gets up here, if I find

24   other names, I will tender those to the Court.  But

25   that's what I have for right now.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  It seems to me then
 2    we've laid the groundwork.  These are the
 3    Government's allegations.  It would seem to me that
 4    now is the time for Mr. Acee to take the stand, and
 5    then the defendants cross-examine him, A, about
 6    whether -- what evidence he has that these names have
 7    now been identified and the conspiracies that have
 8    been identified; what the evidence is that the
 9    Government is going to use to produce to prove that.
10    And then, if y'all want to tackle some of these
11    statements, go into those statements to see if you're
12    comfortable that they were during and in furtherance,
13    or do you want to get some information so you can
14    challenge it?  Is that --
15              MR. CASTELLANO:  Yes, Your Honor.  We're
16    actually tendering Agent Stemo for purposes of the
17    James hearing testimony.  She'll be the witness.
18              THE COURT:  All right.  Does that sound the
19    way we should proceed, Mr. Castle?
20              MR. CASTLE:  So they're going to put --
21              THE COURT:  They're going to give Ms. Stemo
22    to you.
23              MR. CASTLE:  That's fine.
24              THE COURT:  Then you can cross-examine her
25    about the conspiracies, whether these people are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    members, what the evidence is.  And then, if you want
 2    to take on some of these statements, then you can
 3    question her about that.
 4            MR. CASTLE:  That's fine, as long as we can
 5    call a witness, if we need to.
 6            THE COURT:  You're welcome to do that.  All
 7    right.  Ms. Stemo, I think you're up.  If you'll come
 8    up -- you know where the witness box is.  And, Ms.
 9    Bevel, will swear you in before you're seated.
10                       NANCY STEMO,
11        after having been first duly sworn under oath,
12        was questioned and testified as follows:
13                    DIRECT EXAMINATION
14            THE CLERK:  Please state your name and
15    spell your last name for the record.
16            THE WITNESS:  Nancy Stemo, S-T-E-M-O.
17            THE COURT:  Ms. Stemo.
18            Which one of the defendants are going to
19    lead off?  Mr. Benjamin?  Mr. Castle?  Who wants to
20    go first?
21            All right.  Mr. Benjamin.
22            MR. BENJAMIN:  May I proceed, Your Honor?
23            THE COURT:  You may.
24            MR. BENJAMIN:  Thank you.
25    BY MR. BENJAMIN:
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

108

```
 1        Q.    Agent Stemo, I think I'm going to -- and
 2   this is just kind of for orientation, I'm going to
 3   leave Counts 1 or 2 to some of the other counsel.  So
 4   I'm going to jump right to what the Court referred to
 5   as the Adrian Burns conspiracy, okay?  And that's
 6   Counts 4 and 5 for the record; correct?
 7        A.    Correct.
 8        Q.    And that was a conspiracy to murder Adrian
 9   Burns; correct?
10        A.    Correct.
11        Q.    And there were statements that were
12   produced by Charlene Baldizan, and did you take that
13   statement from her?
14        A.    I did not.
15        Q.    Are you aware of what that statement is, I
16   guess, or alleged to purport?
17        A.    I have read it before.
18        Q.    Okay.  And the first one of those
19   statements is in Document 1903, essentially, the
20   attachment, the table, is what we referred to as
21   statement 43.  That's says, "Charlene Baldizan agreed
22   to get rid of the van because the Gallegos brothers
23   knew the police were looking for it"; correct?
24        A.    Yes.
25        Q.    Who said that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Without looking at the report, I can't tell
 2   you that.
 3        Q.   Okay.  But it's attributed -- we -- do you
 4   have the report with you?
 5        A.   I do not.
 6        Q.   Okay.
 7             MR. BENJAMIN:  Do you have a copy of the
 8   report?  Your Honor, may we take a break so she can
 9   refer to the report?  The statement, and if the Court
10   will refer to 43, is "Gallegos brothers."
11             THE COURT:  Yeah, do you need somebody to
12   make a copy or something so she can look at it?
13             MR. BENJAMIN:  Yes, Your Honor.
14             THE COURT:  If you'll give it --
15             MR. BENJAMIN:  I don't have -- my report is
16   digital, Your Honor.  It's in the hard drive.
17             THE COURT:  Anybody got a hard copy of the
18   report so I can copy it and give it to Ms. Stemo?
19             MR. CASTELLANO:  I don't mind if he
20   refreshes her recollection from his computer, Your
21   Honor.  I think he said he had it digitally.
22             MR. BENJAMIN:  Your Honor, this is a new
23   one for me.  And a James hearing is something where
24   she's the witness that's been proffered with
25   knowledge of this.  The report doesn't state which
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    brother.

2            THE COURT:  Well, the Government has got

3    the burden of proof here.  If they don't establish

4    that these people have -- are co-conspirators, then

5    they're going to lose.  What do you need?  Do you

6    need to get a copy to her?  Does anybody have a hard

7    copy?  If not, do you need to go down and print one?

8            MR. CASTELLANO:  Let me see if I have it.

9            MR. BENJAMIN:  Your Honor, there would be

10   multiple reports I'm going to print.  I can think of

11   probably about six or seven in there.

12           THE COURT:  Okay.  It's your call.  If you

13   want to take a break and go down and print them and

14   then give them to Ms. Stemo, we can.  Or looks like

15   Mr. Castellano has got one.  We can make copies.

16           MR. CASTELLANO:  May I approach the

17   witness, Your Honor?

18           THE COURT:  You may.

19           MR. BENJAMIN:  Your Honor --

20           THE WITNESS:  I've read the portion

21   regarding Ms. Baldizan.

22   BY MR. BENJAMIN:

23       Q.  Okay.  And that was one of the New York --

24   not New York -- New Mexico State Police supplements

25   that you referred to; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes.

 2        Q.   And who authored that report?

 3        A.   I believe that was Mr. Alvino Vigil.

 4        Q.   And the statement, "Charlene Baldizan

 5   agreed to get rid of the van," and the rest of it was

 6   made by which individual?

 7        A.   It does not clarify as to which Gallegos

 8   brother told her that.

 9        Q.   Okay.  And so she was never asked that?

10        A.   I wasn't there, so I don't know.

11        Q.   Okay.  She has an hour and a half recorded

12   interview; correct?

13        A.   She does.

14        Q.   And that's not contained on that interview?

15        A.   No, it's not.  Agent Vigil refers to

16   another agent's report.

17        Q.   Right.  But we don't know -- this statement

18   is attributable to an individual; correct?

19        A.   Correct.

20        Q.   And so it's not that they made the

21   statement and parroted each other; it's one of the

22   two individuals?

23        A.   I don't know.

24        Q.   Right.  And the -- do you know when the

25   statement was made?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Tuesday, November 20, 2012.
 2        Q.   And it was made one time or multiple times?
 3        A.   I believe they spoke to her twice.
 4        Q.   But was it made one time or both times?
 5        A.   I don't know.
 6        Q.   And Charlene Baldizan, the Court referred
 7   us to the conspiracy to murder Adrian Burns; correct?
 8        A.   Yes.
 9        Q.   She was not part of that conspiracy, was
10   she?
11        A.   I don't think so.
12        Q.   Okay.  And her statement, she doesn't
13   actually ever say that she knew the police were
14   looking for the van, does she?
15        A.   I don't think so.
16        Q.   Okay.  She refers generally to the idea
17   that she understood they were looking for the
18   Gallegos brothers?
19        A.   Yes.
20        Q.   And that's from news testimony -- not
21   testimony, from the news?
22        A.   Yes.
23        Q.   Okay.  So to sum up, Charlene Baldizan
24   agreed to get rid of the van because the Gallegos
25   brothers knew the police were looking for it is not
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   an accurate rendition of a statement that Charlene

2   Baldizan made?

3        A.   I don't know.  I'd have to watch the video

4   again.

5        Q.   Have you listened to the audio?

6        A.   I think I have.

7        Q.   And that's not contained on it, is it?

8        A.   No, not in this report.

9        Q.   No, no.  That statement is not contained on

10  the audio interview of Charlene?

11       A.   I'd have to listen to it again.

12       Q.   Do you know?

13       A.   Not off the top of my head.

14       Q.   Did you know you were going to testify

15  today to these statements?

16       A.   I did not.

17       Q.   That's the only statement that's being

18  attributable to Charlene Baldizan; correct?

19       A.   That's in front of me, yes.

20       Q.   Are you aware of any other statements that

21  Charlene Baldizan made in relation to the Adrian

22  Burns murder?

23       A.   I am.

24       Q.   Okay.  Have you been offered -- do you know

25  if you're planning on using any other statements that

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   were made by Charlene Baldizan?
 2        A.   I don't know that.
 3        Q.   Did you have any input in creating the
 4   table that we've referred to?
 5        A.   I did not.
 6        Q.   And the entirety of Charlene Baldizan's
 7   interview never mentions a gang; correct?
 8        A.   I don't think she mentions anything.
 9        Q.   And she specifically doesn't mention the
10   SNM or the Syndicato de Nuevo Mexico?
11        A.   I don't think she does.
12        Q.   And you're familiar with the Adrian Burns
13   investigation; correct?
14        A.   Yes.
15        Q.   There is no mention of the SNM in the
16   entire 36 supplements for -- actually, let me take
17   that back.  In the first 35 supplements is there is
18   any mention of the Adrian Burns murder?
19        A.   I'd have to check and get back to you.
20        Q.   Okay.  I think I misspoke.  I said murder,
21   I meant SNM Gang.
22        A.   I'd have to check and get back to you.
23        Q.   Okay.  Would you agree with me that it's
24   not mentioned, the SNM Gang is not mentioned up until
25   2015?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1        A.    I'd have to check and get back to you.

 2        Q.    But Charlene Baldizan does not make any

 3   statement to induce enlistment or further

 4   participation in a group activity; correct?

 5        A.    I don't think she does.

 6        Q.    Or to prompt further action on the part of

 7   the conspirators?

 8        A.    I believe she mentions helping them get a

 9   motel room.

10        Q.    Helping -- she shows up at a motel room;

11   correct?

12        A.    She does.

13        Q.    But she specifically says that Loretta

14   Apodaca rented the room?

15        A.    That could be true, yes.

16        Q.    She gets very animated when she finds out

17   that she's the only one being charged, doesn't she?

18        A.    I don't think that's true.  I believe

19   Loretta Apodaca was also charged.

20        Q.    Okay.  But she gets -- she's upset that

21   Angela Gallegos is not charged; correct?

22        A.    I believe she was also charged and the

23   charges were dismissed.

24        Q.    The audio -- I'll skip that.

25              Are you familiar what the term "accessory

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                           1-800-669-9492
                                               e-mail: info@litsupport.com



 1    after the fact" would mean?

 2         A.   Yes.

 3         Q.   That is the best way to describe Charlene

 4    Baldizan primarily; correct?

 5         A.   I suppose so.

 6         Q.   Because she comes into this on the 20th of

 7    November.

 8         A.   I believe she comes in earlier than that,

 9    because this is the date they were arrested.  I don't

10    know what she did or did not do prior to their

11    arrest.

12         Q.   She doesn't come in on the day of the

13    murder or any other time other than when she says she

14    got called to go to the hotel in Albuquerque;

15    correct?

16         A.   Not that I know of.

17         Q.   Jason Van Veghel is the other individual

18    that we were told was a co-conspirator in the Adrian

19    Burns case; correct?

20         A.   Yes.

21         Q.   And he, essentially, has made several

22    statements regarding the murder; correct?

23         A.   Yes.

24         Q.   Okay.  The first one, statement 44 says,

25    Joe and Andrew Gallegos asked Jason Van Veghel to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    clean up the living room and pull the carpet up and

 2    gave him two to three hits of heroin for it.  Joe

 3    Gallegos also asked Van Veghel to clean the blood off

 4    the air compressor; correct?

 5         A.   To that effect, yes.

 6         Q.   Okay.  What do you understand his statement

 7    to be, if it's not to that effect?

 8         A.   I believe Joe Gallegos actually woke up

 9    Mr. Van Veghel, and gave him two to three BBs of

10    heroin, and asked him to clean up the living room and

11    clean up the carpet.

12         Q.   Okay.  And did Jason describe that carpet?

13         A.   Not that I can recall.

14         Q.   Okay.  He doesn't describe that carpet to

15    the FBI?

16         A.   He might have.  It's not something that I

17    remember off the top of my head.

18         Q.   Okay.  And at that point in time, when that

19    statement -- do you know who took that statement?

20         A.   Not off the top of my head.

21         Q.   Do you know when that statement was first

22    made?

23         A.   Not off the top of my head.

24         Q.   Would it help you if you were to refer to

25    your notes?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.    I don't have any notes.
 2        Q.    Would it help you if you were to refer to
 3   the offense report?
 4        A.    Yes.
 5        Q.    Okay.
 6              MR. BENJAMIN:  Your Honor, I'd ask that the
 7   agent be given an opportunity to refer to an offense
 8   report.
 9              THE COURT:  She can.  I don't have any
10   problem with her seeing it, but -- I'm sorry, what is
11   the defense (sic) report?
12              MR. CASTELLANO:  Well, if the question is
13   when was that statement made, I believe Mr. Van
14   Veghel was awoken the day following the murder, so
15   that would be November 13.  If that's Agent Stemo's
16   testimony.
17              THE COURT:  All right.  What are we
18   referring to when you say "defense report," what is
19   that?
20              MR. BENJAMIN:  Offense report, not defense
21   report.
22              THE COURT:  All right.  And do you have
23   copies of that?
24              MR. BENJAMIN:  They've been produced, yes,
25   Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  I don't have a problem with her
 2    reviewing it.  This is a James hearing, so I don't
 3    think there is any problem with her referring to
 4    whatever she needs to get you the information you
 5    need.
 6              MR. BENJAMIN:  The two issues I have first,
 7    Your Honor, is that I understood that the agent that
 8    was going to be proffered for the James hearing was
 9    going to be prepared to testify about the statements
10    that were --
11              THE COURT:  Yeah.  I'm not impressed with
12    the preparation.  So it may be the Government is not
13    going to meet their burden of proof.  This is not
14    what we did in the first hearing.  So I'm not being
15    overwhelmed by the Government's proof so far.  But if
16    this is what they want to offer, it may work to your
17    benefit in the end.
18              MR. BENJAMIN:  May I have a second, Your
19    Honor?
20              THE COURT:  You may.
21              MR. BECK:  Your Honor, I can respond to
22    that while they're taking a minute.  It was our
23    understanding, based on my conversations with defense
24    counsel, Ms. Harbour-Valdez, with Mr. Castle, that
25    what we would do was argue today.  It was our
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   understanding that the table was going to be in lieu

 2   of agent testimony.  It was also our understanding

 3   that if they were going to require the Government to

 4   put on affirmative evidence in a James hearing, other

 5   than the table, that would be done tomorrow, or this

 6   afternoon, at the latest.  But it was our

 7   understanding that we were going to have notice if

 8   they were going to require us to put on evidence.

 9              THE COURT:  Why don't you do this:  I'll go

10   off the record in a second.  I won't move.  Why don't

11   y'all talk.  If y'all had some agreements, I don't

12   want to upset those.  But why don't y'all talk just a

13   second, you and Mr. Beck talk, and if you had an

14   agreement, fine; if you didn't have an agreement you

15   can tell me you don't have an agreement and I'll

16   rule.  But I don't want to upset any carts here.  So

17   why don't y'all talk a second, then let me know if

18   there is a disagreement.

19              MR. BECK:  Sure.

20              (A discussion was held off the record.)

21              THE COURT:  Let's go back on the record.

22              MR. CASTLE:  Judge, in November, when the

23   first James hearings happened, the defense and the

24   prosecution agreed that we'd try to do something a

25   little more orderly for Trial 2.  The prosecution was



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   going to list the potential James statements well in
 2   advance of the hearings.  I think that they said they
 3   were going to do it by February 20.  We asked for
 4   earlier.  It didn't come in till March 7.
 5           The defense teams have been scrambling to
 6   go through those, and almost all of us, I think, have
 7   filed motions indicating which ones we object to, the
 8   grounds for that.
 9           We were told over the weekend that one of
10   the prosecutors couldn't be here after Wednesday,
11   that had to be involved in this James litigation.
12   Because we had planned on having it later in the
13   week.  I was asked if that could be pushed up forward
14   so that we could accommodate that person and the
15   prosecution team.  We said we would.  We were all
16   prepared, because we were told they were going to put
17   on their agent this morning, or today -- it could
18   have been this afternoon -- we didn't specify a
19   specific time.  And in our motion -- the order that
20   we jointly submitted to the Court, we indicated that
21   the James presentation would be today.
22           So the Government doesn't agree with that.
23   They think that we agreed to some other process.  But
24   we've been scrambling to make up for their lack of
25   diligence throughout this proceeding.  I understand
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    they had another trial, but they decided to prosecute
 2    this case with this many defendants.  And they
 3    decided during that first trial that they would
 4    abandon their obligations for Trial 2.  And now they
 5    come here today not prepared to proceed, and I think
 6    we just need to proceed at this point on these
 7    matters.  And so that's our position.
 8           I talked to them to try to work out a
 9    resolution so we wouldn't have two different
10    proposals to the Court on behalf of all the other
11    defendants.  But I can tell the Court we were all
12    surprised when the Government said they weren't
13    calling a witness today because we expected that to
14    happen on the specific statements that we were
15    objecting to, and we all outlined those objections in
16    the last week or so.
17           So that's the record we'll make.  I like to
18    make agreements with people, but I would never have
19    agreed that they wouldn't have to put on any
20    evidence, Judge.  I think the Court has seen my style
21    throughout these proceedings.  I don't think my style
22    is:  Don't put on any evidence, just bring the
23    evidence in wholesale.
24           THE COURT:  All right.  Any other -- before
25    I hear from you, Mr. Beck, any other defendant want
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to speak on the agreement, so can I figure out how to
 2    proceed?
 3            All right.  Mr. Beck.
 4            MR. BECK:  So this is the proposed
 5    scheduling order that I think was sent to Ms. Wild
 6    Friday afternoon, and then again Friday evening.  I
 7    think Ms. Koch supplemented that at some point.  So
 8    we have the initial nonevidentiary arguments on
 9    Monday morning.
10            THE COURT:  So what I'm looking at is an
11    email from Laura Koch who, I guess, is Mr. Castle's
12    paralegal.  Is that Koch or Coke?
13            MS. KOCH:  Koch.
14            THE COURT:  And it's dated at 1:13 p.m.
15    Are we looking at the same thing, Mr. Beck?
16            MR. BECK:  I'm looking at the attachment to
17    that email.
18            THE COURT:  But that's what we're all
19    looking at?
20            MR. BECK:  That's right, Your Honor.
21            So the first thing:  Nonevidentiary
22    arguments is the notice for James hearing.  So that's
23    nonevidentiary.  Then, again, we have a lot of
24    arguments that come through the day, none of which
25    we've gotten to.  And then on page 2 -- and I'll zoom
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    in on this language, where it says, "Any presentation
 2    of Government James evidence here."  And so --
 3              THE COURT:  "Any presentation of Government
 4    James evidence here," and that would follow --
 5              MR. BECK:  That would follow, I think, the
 6    arguments and the motions to sever.
 7              THE COURT:  To sever.
 8              MR. BECK:  So I believe that the agreement
 9    was -- and certainly my subjective part of the
10    agreement was -- if the defendants were going to
11    require us to put on, quote, "any presentation of
12    Government James evidence" --
13              THE COURT:  That's where it was going to
14    go?
15              MR. BECK:  That's where it was going to go.
16              THE COURT:  And they had the ability to put
17    on their presentation later in the week?
18              MR. BECK:  Right.
19              THE COURT:  Is that because of getting
20    witnesses here?
21              MR. BECK:  Right, Your Honor, yes.
22              So, to the extent that they were going to
23    ask us to put on evidence, I anticipated that they
24    would ask us.  And I think to be fair, I think Mr.
25    Castellano is ready to do that with Special Agent
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Stemo, to go through direct examination and provide
 2   her with these reports so that she can testify to the
 3   same information on the table.
 4            There was no table provided in the first
 5   trial.  And that way, we just presented all the
 6   information through Special Agent Acee.
 7            And in this trial we agreed to put a table
 8   together in lieu of having examinations, having
 9   affirmative evidence from Special Agent Acee, or
10   Special Agent Stemo.  But again, if we're going back
11   on that, we can, that's fine; Special Agent Stemo can
12   testify to the information that we've provided in the
13   table.
14            So I just don't want there to be any
15   confusion what at least the United States'
16   expectation of this agreement, filed by Mr. Castle in
17   the scheduling order, was.
18            THE COURT:  Well, tell me how you
19   envisioned the James hearing taking place.  I guess
20   I'm trying to figure out how we can have a James
21   hearing legal arguments before we have the
22   evidentiary portion of it.  I guess I'm not seeing
23   how you have arguments before you have the evidence.
24   So what were you envisioning?
25            MR. BECK:  I think, sort of, we
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   short-circuited it a little bit before we started the
 2   James hearing by asking whether the Court was going
 3   to make us produce a list of 804(b)(3) statements
 4   against interests, admissions by party opponents,
 5   things like that.  I think that was going to be the
 6   argument with the motion in limine, was whether those
 7   things come in.  I think what we envisioned here, if
 8   necessary, was that we would argue those things out.
 9   If the Court was inclined to make us produce that
10   list, we would do that, so that later on they could
11   present their witnesses whom they wanted to call to
12   rebut the James statements, the admissions against
13   party opponent, the admissions against penal
14   interests.  And that's why we put their witnesses
15   down the road because of subpoenas and things like
16   that.
17             I think -- I guess --
18             THE COURT:  Did I do something that
19   short-circuited what y'all were trying to do?
20             MR. BECK:  No, not necessarily.  I mean, I
21   think we're getting there.  I think where things got
22   caught up is that Your Honor was asking to just go
23   straight forward with the James hearing, which is
24   fine.  I think the parties just had a little
25   misunderstanding of how that was going to play out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I think that -- I think that from our perspective,

2    what Mr. Benjamin was doing was according to the

3    agreement, and proper, was that he was looking at

4    statement, for instance 43, and saying:  There is

5    nothing in the reports that indicates which Gallegos

6    brother she's referring to, and it's not even clear

7    that this witness was part of the conspiracy.  And so

8    he is attacking what we put forth on the table as

9    proper evidence.  And it's perfectly proper for him

10   to do so.  I just think that maybe we weren't -- all

11   counsel weren't ready with the reports that the

12   witnesses would have needed to look at to refresh

13   their recollection.  So I think that it's just the

14   case of not having the documentary evidence.

15           And I think the intention from everyone on

16   both sides was admirable and right, that we put this

17   list out so that they could attack the statements

18   they didn't believe came in.  And I think we're

19   proceeding about that in a fine way.  I just think

20   that we weren't quite ready to -- at least for us to

21   provide the reports to Special Agent Acee -- excuse

22   me, Special Agent Stemo.  Sorry.

23           And so, if that's the way we're going to

24   proceed, I think that that's a fine way to do it.  I

25   think that it's an expedient way to do it.  I think

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                         e-mail: info@litsupport.com

```
 1    it's a proper way to do it.  But I just don't want
 2    the impression here from the Court to be that the
 3    United States didn't put on some affirmative evidence
 4    for a James hearing purpose, and that the United
 5    States is in some way unprepared or underwhelming the
 6    Court.  I don't want that impression.
 7              THE COURT:  Well, I guess here's the
 8    impression I have:  It seems to me that the
 9    Government has given a fair amount of information as
10    to statements, conspiracies, and as members of these
11    conspiracies.  And they put in evidence to establish
12    the conspiracies.  I'm a little shaky on whether it's
13    been established that all these people are members of
14    the conspiracy.  And some of the statements, when I
15    read them, I'm struggling to see how they were during
16    or in furtherance of the conspiracy.
17              But I do think the Government has put a
18    fair amount in.  It's done differently than the first
19    trial and done differently than some of the James
20    hearings I've had.  What I guess I'm concerned about
21    is I'm not hearing the sort of familiarity with the
22    evidence that I heard with Mr. Acee from Ms. Stemo.
23    And I'm wondering if we're going to get a sort of
24    robust record here that I think you need to get this
25    stuff in, and I need to make a decision, and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    defendants feel like they're getting information.  So

2    I think that's -- I'm speaking for myself, that seems

3    to be the sticking point, that we're not getting the

4    sort of familiarity of the record from Ms. Stemo that

5    we got from Mr. Acee in the first trial.

6               MR. BECK:  Right.  And that's why I was

7    going back and showing what brought us here.

8               But what I'm also saying to the Court is, I

9    don't think that's necessary a reflection on all the

10   James statements.

11              THE COURT:  Let me ask this:  If the

12   defendants get what they want from her, whatever she

13   can give them, and they call, then, Mr. Acee, any

14   problem with that?

15              MR. BECK:  I don't think so.  I don't know

16   that he'll have more familiarity with it.  I think

17   that the way it's proceeding here is, as I said, an

18   expedient way to deal with this process.  Because

19   they have the statements in front of them.  Mr.

20   Benjamin has now picked out one or two that he thinks

21   don't meet the exception, and he's attacking those.

22   And so when Special Agent Stemo says, "I'm not

23   familiar with whether she was a member of the

24   conspiracy, when she joined.  I'm not familiar with

25   whether SNM is mentioned in those," that's something

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   for us to clean up on redirect.  And if we don't, it
 2   seems like it's not admissible as a co-conspirator
 3   statement.
 4            So I understand the Court's concern because
 5   it's different than how we did it in the first one,
 6   but I don't think it's necessarily a bad thing.  I
 7   think that we're getting to the heart of where the
 8   contentions on these are.  So, as I said, I think
 9   it's more of, just a question of having the documents
10   ready to go, and we can do that now that we've got an
11   idea of where they're attacking these.
12            But I just don't want the Court to think
13   it's a reflection on the United States not preparing
14   its case or anything like that.  I think the
15   procedure that we worked out in the beginning is
16   actually working here.  And so I think, based on what
17   I just saw from Mr. Benjamin, he's looked at the
18   statements, he's prepared some that he thinks he can
19   attack and exclude as co-conspirator statements.  And
20   I think we're getting to the heart of that.  So I do
21   think that this process is working.
22            THE COURT:  Okay.  All right.  Thank you,
23   Mr. Beck.
24            Mr. Castle.
25            MR. CASTLE:  Yes, Your Honor, the burden to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   show the applicability of an exception to the hearsay
 2   rule is on the proponent of the evidence.  The
 3   Government came here today -- and by the way, that
 4   indication of presentation of evidence, that's on the
 5   Monday schedule, so it was scheduled for today, even
 6   though it was on page 2, it was still Monday.  But
 7   they came here and they said, We're going to do that,
 8   Your Honor.
 9            THE COURT:  But it seems to me that the
10   agreement that was reached, if I just look at it,
11   they don't have an obligation to put on, I guess,
12   their interpretation of -- which may be even more
13   narrow than what the language is.  They don't have to
14   present a live witness until after we argue the
15   motions to sever.  They don't have any problem with
16   you having Ms. Stemo up here, but they don't have any
17   obligations to put up any witnesses until later.  So
18   they've done more than what it seems they've agreed
19   to do on the paper.
20            MR. CASTLE:  I'm a bit confused, because I
21   think motions to sever are something completely
22   different.  I think the Court said at the beginning
23   of the hearing --
24            THE COURT:  When you look at this chart, it
25   says at the top, "Any presentation of Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    James evidence here," which would be after the

2    motions to sever.  And then it says, "With defense

3    James presentations later in the week."

4              MR. CASTLE:  The defense presentations.

5    And so what I think has happened here is they did do

6    their presentation.  They presented the Court with, I

7    think, eight exhibits that they wanted the Court to

8    rely on.  Then they made a statement on the record

9    about the different conspiracies.  And at that

10   point --

11             THE COURT:  Well, they also gave us a

12   table.

13             MR. CASTLE:  They gave us a table, right.

14             THE COURT:  I mean, that's pretty huge,

15   isn't it?

16             MR. CASTLE:  It's helpful.  I think it is.

17   I'm not sure it satisfies all the elements.

18             THE COURT:  That was originally what the

19   defendants wanted.  They wanted that table.  And so,

20   unlike the Trial 1 defendants who wanted Acee on the

21   stand, and got him promptly, y'all got the statement.

22             MR. CASTLE:  Well, I think if the Court

23   goes back in time, what happened was the Government

24   wasn't ready for those James hearings either.  So the

25   defendants in Trial 1 didn't want to delay
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    admission -- didn't want to have rulings much later

2    in the proceedings, in January, or whenever they

3    might be, so they elected to go ahead and go forward

4    with it.

5            What I'm just saying, if this is what the

6    Government is going to rest on, then we can proceed

7    in that fashion.  And we may not have any questions

8    for Agent Stemo.  I find it ironic they said:  We're

9    ready to present this evidence through Agent Stemo,

10   but yet she testified a few minutes ago she wasn't

11   prepared to testify in this matter today.  So if

12   they're going to rest on that, I think the defense

13   can then decide whether they want to put on any

14   evidence.

15           THE COURT:  Let me do this:  I'll give

16   y'all the choice, and we're coming up on the break,

17   so y'all can spend a little bit of time discussing

18   it.  It seems to me that, given the agreement as I

19   see it, you can continue to take Ms. Stemo and do

20   what you want with her.  And it sounds like, if you

21   want to call witnesses, you can.

22           If you want to not do that at this time,

23   then we can go to the other motions that we set for

24   Monday.  And then I guess, after we get through with

25   the motion to sever, whenever that's going to occur,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                               1-800-669-9492
BEAN & ASSOCIATES, Inc.                        e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   then the Government does have an obligation to put on
 2   whatever it wants, and that probably is where it's
 3   frozen.  I'm a little reluctant to freeze it at the
 4   present time given that in bold on page 2.  But I'll
 5   freeze it after we get through with the motions to
 6   sever.  And then y'all can call witnesses then or
 7   call them later.  And whenever y'all are done, I'll
 8   give the Government a chance for any rebuttal, and
 9   then we'll have arguments.
10          So it seems to me it's y'all's call.  If
11   y'all want to still talk to Ms. Stemo, that's fine.
12   It doesn't sound like the Government may call anybody
13   but her, and they may not even call her, they may
14   just rest on what they've done.
15          MR. BENJAMIN:  And, Your Honor, at this
16   point in time, based upon the way that this has been
17   moving forward this morning -- or sorry, this
18   afternoon, I guess -- I believe -- I don't know if I
19   can speak for all the defendants, but we would rather
20   move on to the rest of what's on the docket for --
21   and then could we have a minute to talk?
22          THE COURT:  Yeah.  And I assume if they
23   decide to move on, y'all don't have any objection
24   from the Government, Mr. Castellano?
25          MR. CASTELLANO:  That's correct, Your
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Honor.

2              THE COURT:  Mr. Beck?  All right.

3              MR. BENJAMIN:  Did the Court suggest it was

4    going to take a break, we could talk during the

5    break, and then --

6              THE COURT:  If y'all want to let me know,

7    and then if y'all know what you're going to do.  Talk

8     a second here, then if we need to take a break,

9    we'll take a break.

10             (A discussion was held off the record.)

11             MR. BENJAMIN:  Thank you, Your Honor.  The

12   defendants as a group would prefer to move on to any

13   motions and then let the Government, on their

14   schedule, resume and put on their testimony.

15             THE COURT:  All right.  So we will do that.

16   So when we come back in, we will take up -- I'm a

17   little confused by this motion, so it will be what

18   Ms. Wild had tabbed as 27.  But it is Mr. Garcia's

19   motion to prevent admission of statements of

20   nontestifying co-defendants implicating Mr. Garcia,

21   and for an order for the Government to specify such

22   statements prior to trial.

23             I guess I'm trying to figure out how we're

24   getting in statements of nontestifying co-defendants.

25   Maybe that was through -- it would seem to me if all

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    the statements are identified in the James statement,

2    if they're trying to get them as co-conspirator

3    statements, then they're going to have to already be

4    identified in the James statement.

5           So I'm not sure what else I'm being asked

6    to order.  And then I guess I can't blanket deny

7    their admission.  So I'll need to be educated on this

8    motion.  But it seems to me that once they have

9    identified with the James statement all the

10   statements, they've done half of what's requested,

11   then I'm not inclined to require them to produce

12   anything other than James statements.

13          But let's take it up after the break.  So

14   we'll be in recess for about 15 minutes.

15          (The Court stood in recess.)

16          THE COURT:  All right.  So I guess we have

17   the motion from Mr. Garcia.  Let me -- before you

18   speak, Mr. Castle, let me make just a couple more

19   comments, and I may have a question of the

20   Government.  While I'm not inclined to require the

21   Government to create some new document specifying

22   statements before trial other than what we already

23   have with the table on the James statements, can I

24   have this representation from the Government that you

25   do not intend to elicit any other statements other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    than what is in the discovery or in this chart?

 2              I mean, it would seem to me that I might

 3    run into some Bruton problems.  I might run into just

 4    problems, evidentiary problems, or something, if I

 5    don't have the universe nailed down.

 6              MR. BECK:  So I think you have the

 7    universe, with a small exception to that.  And that

 8    is, as the Court's well aware in the first trial, as

 9    we start preparing for these trials, and meeting with

10    our anticipated cooperating witnesses --

11              THE COURT:  They tell you more stuff.

12              MR. BECK:  -- they oftentimes --

13              THE COURT:  Could we have this agreement,

14    then, that if it's not on your table, your James

15    table, and if it has not been produced in discovery,

16    we will not hear it in trial unless you send a letter

17    to the attorneys for the defendants.  And then we can

18    argue at that point whether it's timely, should be in

19    or out as far as that.  But I think everybody has to

20    recognize that, as we get closer to trial, testifying

21    witnesses are going to say more things, and that's

22    just the reality of it.  But you will send a letter

23    promptly listing those statements that are not in the

24    current discovery.

25              MR. BECK:  Yeah.  I think what we'll do --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    I would assume most are familiar with this, but some
 2    aren't.  What happens when we run into new statements
 3    when we're talking to cooperating witnesses, what
 4    we've done is put them in a letter, and provide that
 5    letter to all defense counsel as soon as possible,
 6    and file a notice attaching that letter on the
 7    docket, so that the Court also has notice of that.
 8    And that way we can bring it to -- anyone who wants
 9    to can bring it to the Court's attention as soon as
10    possible if the parties can't work it out.  But we
11    will endeavor to provide notice to defense counsel as
12    soon as we are on notice of those new statements, if
13    there are any.
14              THE COURT:  Okay.  All right.  Thank you,
15    Mr. Beck.
16              Mr. Castle, it would seem to me that I
17    probably will not require any other creation, because
18    it seems to me that gives safeguards as to giving me
19    some time to think about any particular statement,
20    but it also gives you some protection.  And then I
21    guess the -- and I'm not trying to cut you off.  You
22    can argue whatever you want -- but then on the motion
23    to prevent the admission of statements of
24    nontestifying, it would seem to me that then the
25    burden shifts to the defendants:  Tell me what you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    want me to consider, either list for me or tell me
2    orally:  Here's a statement that the Government is
3    trying to get in, and we don't think it should come
4    if, and here's the reason.  What do you think about
5    that procedure?
6              MR. CASTLE:  I think that that's what the
7    Court had anticipated a long time ago.  I think when
8    Mr. Chambers was arguing about just generally Bruton
9    issues, the Court had indicated that when we got
10   closer to trial, that it would look at statements
11   individually.  If the defendants, you know, had more
12   targeted litigation, I think that was the term,
13   that's why we put it in our motion.
14             So I think that even though I'd like the
15   list, I know the Court has already ruled on that, I'm
16   not going to reargue it, but I think the defendants
17   are on notice now to file motions to suppress, or
18   whatever you want to call it, concerning specific
19   statements.  And I think some of them are on the
20   agenda for this week.  So I'm not going to reargue
21   the issue.
22             THE COURT:  Okay.  All right.  So I'm
23   willing and eager to handle and decide as many
24   statements as I can pretrial.  Just bring them to my
25   attention, and I'll try to work with you on getting
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   those out.
 2           MR. BURKE:  Your Honor, I did want to say
 3   something about these pretrial interviews with the
 4   government witness.  And although the Court just said
 5   that's the reality, that they'll remember something
 6   new, and Mr. Beck said:  We don't know what else
 7   they're going to say, I personally have never seen so
 8   many additional things being remembered during the
 9   last-ditch pretrial meetings.  And I -- so it's not a
10   reality to me that something new will come up a week
11   before trial because, you know, they're now
12   interviewing the informants again.
13           I suppose, if they get the 213-question
14   questionnaire, which is really a script for how they
15   might get additional points for cooperation, then
16   they might think of something else to say.  And I'm
17   wondering if the defense could be present during the
18   pretrial interviews with the informants, so we're
19   right there at the time that new remembrances occur.
20           THE COURT:  Well, I don't think there is
21   probably anything that really allows me or requires
22   me to do that.  And I'm sure the Government is going
23   to object.  I should ask, I guess, first.
24           MR. BURKE:  But they're here to do justice.
25           MR. BECK:  Yes, Your Honor, the United
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   States objects.  And it's not that they're
2   remembering new things.  It's that they haven't been
3   asked about it before.
4           THE COURT:  Well, I'm afraid I really don't
5   have anything other than just shear judicial brute
6   force to order it, and I've declined to do that.
7           MR. BURKE:  Yes, sir.
8           THE COURT:  Thank you, Mr. Burke.
9           All right.  Okay.  Anything else anybody
10  wants to say then on the motion 1307?  I've laid out
11  a procedure how we're going to proceed, and I'm eager
12  to help you deal with that.  But I think we're going
13  to have to be real specific, so -- all right, not
14  hearing anything, does the Government want to say
15  anything on that motion?  Comfortable with the
16  procedure I'm laying out?
17          MR. BECK:  Yes, Your Honor.  I'm assuming
18  we're going to save the discussion of the motion in
19  limine you were reading this morning for later.  I
20  thought that that might come up in this.  But we can
21  do that later.
22          THE COURT:  I've been reading it off and
23  on.  But I went to some other stuff.  I started
24  reading the defendant's, Mr. Gallegos', response to
25  your motion on the proposed Jencks statements.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   refresh my memory as to what I was reading this

2   morning.

3            MR. BECK:  That's the admissions against

4   penal interests.  But as I said, it was a motion in

5   limine that was filed over the weekend.  The

6   defendants haven't responded.  So I think if it

7   didn't come into play yet, it's probably better set

8   at the end of the hearing so that if people do want

9   to respond in a written fashion, they can.

10           THE COURT:  And I'd like to read it a

11  little better.

12           MR. BECK:  I would like for you to do so

13  also.

14           THE COURT:  I was trying to read it while a

15  lot of stuff was going on this morning, and I'm not

16  sure I was doing it justice.

17           All right.  So I think the next motion that

18  is up is what I understand the United States' notice

19  of request to proceed with the hearings on the

20  motions to dismiss.  And I think this is largely, if

21  I understand it, a request to basically grant a

22  protective order as to two U.S. attorneys.

23           This might be a good place for me to just

24  give you my thoughts on the motions to dismiss, and

25  then we can begin to break it down.  Because, if I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    understand from Ms. Wild, the -- let me put these
2    down so I don't get my papers out of order -- my
3    understanding from Ms. Wild is that the motions to
4    dismiss are going to take about four days, so they're
5    a big item, big ticket item for everybody.
6          I am not ruling, but I did read everything.
7    I read every attachment related to the motion to
8    dismiss.  And so unless it's some material that came
9    in just recently that's been handed to me -- and a
10   fair amount has kind of roared in here at the very
11   end, so there is a stack here to read -- I feel like
12   I have read everything on the motions to dismiss.
13         Let me give you my impression of this case,
14   because I'm not precluding any evidence, and I'm not
15   ruling, but I do think it's fair to give everybody my
16   thinking after reading all this.  I do think the
17   defendants have an uphill battle in trying to get me
18   to dismiss the counts here for preindictment delay.
19   The standards are very high, as the parties point
20   out.  Here's my perception of what took place, and so
21   if you want to use your time in the hearings to
22   disavow.
23         And this goes back to my very earliest
24   involvement in the case, when Judge Gonzales decided
25   to come off the case.  At that time, I was -- as I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   was coming into the case about the only thing I had
 2   to read were motions to disqualify him.  And attached
 3   to that was all the motions in the U.S. Attorney's
 4   Office of their investigation over the years, during
 5   the time that Judge Gonzalez was at the U.S.
 6   Attorney's Office.  So my earliest impressions of
 7   this case were formed, and to a certain degree I
 8   think the defendants, if they're going to succeed on
 9   their motions to dismiss, are going to have to
10   overcome my earliest impressions of reading in this
11   case.
12            My impressions from reading those earlier
13   302s, reports that the attorneys were doing, the
14   things that the Assistant U.S. Attorneys, that Mr.
15   Gonzales was seeing -- Judge Gonzales now -- was that
16   the United States didn't want to have anything to do
17   with the SNM Gang.  They went out of their way to try
18   to tell the State of New Mexico:  No; it was their
19   problem.  And that the State of New Mexico, I think,
20   felt like that they couldn't handle the gang, and
21   they couldn't handle, from either resource standpoint
22   or whatever, they couldn't handle the SNM Gang.  They
23   kept coming back to the United States to try to get
24   them to take this case.  And it seems to me that
25   there is a fairly consistent thread through the file
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of the Government that they didn't want to do this.

2    They did not want this case.  They didn't want SNM.

3    They didn't want to put the resources to it.  They

4    thought it was a State of New Mexico problem, until

5    Mr. Baca and others ordered the hit on

6    Mr. Santistevan and Mr. Marcantel.

7              And at that point, there was a recognition

8    by the United States that the State of New Mexico

9    could not control the situation.  It didn't have the

10   resources.  It was -- I'll use my words:  Out of

11   control.  And they stepped in and they brought this

12   racketeering case.

13             And the decisions that they made in

14   bringing the racketeering case, we can call them

15   tactical, we can call them strategic, but it is the

16   way you put together a racketeering case.  They

17   didn't have any interest in bringing murder cases.

18   They wanted to -- but once they bit, once they

19   decided that they needed to come in and help with the

20   state, then they began to put together a racketeering

21   case.

22             I certainly have ruled for discovery

23   purposes that since Marcantel and Santistevan were

24   part of this case, that the State of New Mexico

25   clearly wanted the feds to bring this case, that for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    discovery purposes, they were one and the same from
 2    the time I got the case.  They were melded together,
 3    and that they needed to be treated that way for
 4    discovery purposes.  And nothing has changed on that
 5    score.  Although, now that the verdicts came in this
 6    morning, there may be a lessening of their desires on
 7    that.  But I probably will not reconsider anything
 8    that I've done.  I think for purposes of production,
 9    we made our rulings, and we'll stick with them on
10    their part.
11              But I think it's unfair to go back into
12    pre-2015 -- I don't know where exactly the cutoff
13    is -- and treat the Corrections Department and the
14    Department of Justice as one and the same.  And so,
15    to me, to tell the Government that they have engaged
16    in preindictment delay is not something that I'm
17    inclined to do.  And the State just didn't prosecute
18    it.  So there is not a delay on their part, they just
19    didn't prosecute it.  And we can all look at the
20    names of the people that made those decisions not to
21    prosecute at that time.
22              So that's what I'm inclined to do.  I
23    understand that the defendants want to make a record,
24    and that they are entitled to that.  But I do think
25    it's an uphill battle to try to convince me to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    dismiss these counts, and not allow them to proceed
2    to trial.  So we'll be making a record, but I think
3    that the Government may -- the defendants may want to
4    take into account what I have said.
5             Now, having said that, the motion then to
6    quash the subpoenas against the two Assistant U.S.
7    Attorneys, it seems to me that the Government has got
8    to prove what I just said.  They may sit there and
9    go:  That's not our case at all.  We disagree with
10   the judge.  That's not the way we read it.
11            But if they agree with what I think the
12   history is, then you're going to have to come forward
13   with something, I think, to indicate that.  I'm
14   reading what the Assistant U.S. Attorneys and the
15   Attorney General and the FBI were thinking at the
16   time.  And so, absent some problem, such as a Touhy
17   request, or something like that, which I didn't see
18   in the notice here, and it seems to me that we ought
19   to -- I should not quash these subpoenas.  I can't
20   make a determination at the present time as to what
21   an Assistant U.S. Attorney would have that the FBI or
22   other witnesses would not have.  It may be that it's
23   clear to everybody, but it's not clear to me that
24   these Assistant U.S. Attorneys may be the only source
25   of some of this information.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          I realize that there may be work product

2     objections.  There may be -- I'm not sure what's

3     really attorney-client, but I do think that this is

4     probably ancient history in connection with this

5     case, so it may be that there is not as much that can

6     be protected or should be protected in explaining why

7     the Government didn't bring these cases until

8     recently.

9          There also seems to me to be some waiver.

10    I have held in cases -- and you can review some of my

11    discovery opinions that on privilege, attorney-client

12    privilege, a party has to be very careful that they

13    do not try to selectively waive any work product.

14    But I've said on attorney-client privilege, it's very

15    difficult to selectively waive that privilege without

16    waiving it all.

17         But on work product, if you think about it,

18    we selectively waive work product all the time.  And

19    we're always doing it.  We get something, if it's

20    useful to us we use it.  If it's not useful to us, or

21    we don't want to use it, we don't use it, or we may

22    hold it.  That's what attorneys do.

23         But it seems to me the stuff that's in

24    302s, the stuff that I have seen in connection with

25    the disqualification of Judge Gonzales, some of the

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
1    stuff that's here, it seems to me that that work
2    product has been largely waived as to that.  I'm not
3    saying that it's waived as to everything, because I
4    think the Government can selectively waive -- any
5    party can selectively waive.  And we'll just have to
6    take it one at a time.
7            But on the specific request that we have in
8    front of me, I guess I was not inclined to not admit
9    the testimony, and somewhat encourage the Government
10   to explain better why we're here.  I think that my
11   explanation is the one that I'm inclined to agree
12   with.  But I do -- I'm going to have to have evidence
13   to support it, and a record to support it, if I'm
14   going to ultimately deny these motions.  So those are
15   comments I make for everybody on the motions to
16   dismiss.
17           Is this your, basically, motion, Mr. Beck,
18   that you want to argue?
19           MR. BECK:  Your Honor, it's not a motion to
20   quash the subpoena.  It's a notice for reasons that I
21   agree with Your Honor, that there may be situations,
22   and this may be one, where it is proper to have
23   previous AUSAs, not assigned to the case, in front of
24   the Court, testify.
25           And I agree that there can be -- I mean,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    I'm familiar with the attorney-client privilege and
 2    the Work Product Doctrine from my practice in civil
 3    law.  And I will grant the Court that that area is
 4    much more developed on that side of the legal arena
 5    than it is in the criminal arena.
 6              But I do think the intent of this notice
 7    was to alert the Court to a couple issues.  The first
 8    is that I think that there will be overlapping
 9    evidence from the FBI agents that the defendants
10    subpoenaed and intend to call.  They intend to call
11    it's my understanding Special Agent Acee, Special
12    Agent Trent Pedersen, and then Special Agent Sonya
13    Chavez.  Right, that's the right name?  Thank you.
14              THE COURT:  Well for my edification, of
15    course I know Mr. Acee, but Chavez and Pedersen, were
16    they agents that had investigated things earlier on?
17    Is that it?
18              MR. BECK:  Yes.
19              THE COURT:  What is their sort of
20    timeframe?
21              MR. BECK:  I can't say that exactly,
22    because I don't know.  Special Agent Pedersen was, I
23    believe, April of 2001, until September 11th of 2001.
24    And so he was at a meeting where they discussed some
25    of the SNM's activities in 2001, including the Garza
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and Castillo murders, which are Counts 1 and 2 in
 2    this case.
 3              THE COURT:  Okay.  Is what you're
 4    suggesting is that let's get those people, get their
 5    evidence out, and then --
 6              MR. BECK:  Exactly.
 7              THE COURT:  -- maybe the questioning of the
 8    Assistant U.S. Attorneys would be more targeted?
 9              MR. BECK:  Right.  I think that's the
10    issue.
11              THE COURT:  Is it fair to say that those --
12    the attorneys made the decision on whether to
13    prosecute here or not, not the FBI?
14              MR. BECK:  Well, I mean certainly, right.
15    An FBI agent --
16              THE COURT:  Somebody made the call that was
17    an attorney?
18              MR. BECK:  Yeah.  And I don't know that
19    there even was a call made.  It just --
20              THE COURT:  Didn't happen?
21              MR. BECK:  There was no prosecution.  And,
22    obviously, it's not the FBI making those calls 90
23    percent of the time.  So I think, given the case law,
24    I think the Court can rely on what it hears from the
25    special agents.  And to be frank with the Court, I
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    don't know exactly what that testimony will be.

 2              THE COURT:  What did you think about my

 3    reading -- and I don't think we've discussed it in

 4    the two years we've had the case -- what is your

 5    impression of my reading of the file, particularly

 6    the portions that dealt with the motion to disqualify

 7    Judge Gonzales?  Are you in agreement, or are you

 8    saying, no, that's not the theory we want to defend?

 9              MR. BECK:  I think it's spot on.  Yeah.  I

10    think that, very honestly, the federal government,

11    the FBI --

12              THE COURT:  If there hadn't have been a

13    Marcantel, we wouldn't be in court?

14              MR. BECK:  I think that's probably right.

15    I think that's what this case bears out.

16              And so Your Honor's take on this is exactly

17    right.  I want to see how the evidence plays out.

18    And if it comes to Thursday and Friday --

19              THE COURT:  Fight it out then.

20              MR. BECK:  Right.  And I do want to alert

21    the Court, as I'm sure the Court is well aware, but

22    just to keep this in mind as we go through, that to

23    meet their burden for preindictment delays, it's two

24    prongs.  The first is that there is actual prejudice

25    resulting from preindictment delay.  And that's

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   actual, not just speculative, and it's material

2   prejudice.  The second is that the delay was

3   purposefully designed to gain a tactical advantage.

4           So the United States' position is that once

5   we hear from the special agents, once we hear from

6   the other witnesses, we will see that there was not

7   actual prejudice, and we will definitely see that

8   there is not a hint of actual purposeful design in

9   any preindictment delay, to the extent that there was

10  preindictment delay.

11          So I think, given the precedent and given

12  the clear guidance on disfavor and AUSA's testimony

13  in court, I think that the Court should look at that

14  point and decide whether it's prudent to have the

15  AUSA's testimony.  Because even if they came in,

16  would it matter?  And I think it will be a "no" at

17  that point.

18          THE COURT:  Here's the problem -- and y'all

19  have probably known me long enough on this.  I'll

20  probably decide both prongs.  And so I've probably

21  got to create a record for both.  And the reality is

22  I'll probably tell you what I -- you know, probably

23  at the end of the day, I'm going to do what I'm

24  saying I'm doing today.  I'm not granting these

25  motions, at least for the present time.  And I may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    have to spend my judicial energies on things that are
2    necessary to get ready for trial, and maybe come back
3    to these at the appropriate time, either -- if I get
4    caught up on my work getting ready for trial, or
5    during trial, or maybe even after trial.  But I think
6    that while we're here, I probably am going to have to
7    build a record.  And so that may include -- I'm just
8    giving you a heads-up, I probably am going to let
9    them put them on the stand and protect your work
10   product for this trial.  I'm not going to let them
11   get into work product for this trial, but let them
12   talk to the people about who made the decisions at
13   the time, so that there is a solid record for me to
14   use when I get around to writing the opinion and
15   order.
16            MR. BECK:  I think that's the Court's
17   discretion.  I think I anticipated that's how the
18   Court was going to come down on this.  I just wanted
19   to alert the Court to this issue, that's why I wanted
20   to set the notice for today.  That's why the notice
21   asked to set the hearing for tomorrow, although we
22   have worked that out amongst each other by having the
23   argument today, and just alerting the Court to these
24   issues.  And I'll probably bring it up at the
25   appropriate time.  But I think we'll probably operate

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    under the understanding that you're probably going to
 2    require these gentlemen to take the stand.
 3              THE COURT:  Okay.  And maybe it was in your
 4    notice, who are the Assistant U.S. Attorneys?
 5              MR. BECK:  It's Assistant U.S. Attorney
 6    James Braun from Albuquerque, and it's former
 7    Assistant U.S. Attorney Reeve Swainston.
 8              THE COURT:  How is Reeve doing?  He's been
 9    in very poor health, isn't he?
10              MR. BECK:  Yeah, he has.  And I think we
11    took this up this morning, although now it feels like
12    ages ago.  I think it sounds like the Court's given
13    leave for Mr. Swainston to appear telephonically to
14    the extent that he will be required to appear.
15              THE COURT:  Okay.  All right.  Anything
16    else on your request, Mr. Beck?
17              MR. BECK:  No, Your Honor.
18              THE COURT:  All right.  How about from the
19    defendant on this request?
20              MR. CASTLE:  Well, it doesn't sound like
21    they're requesting anything at this time.
22              THE COURT:  I guess, if I understand -- and
23    maybe y'all had some discussions -- they're asking:
24    Can they push these witnesses to a little later in
25    the hearing, maybe the last, so that we can protect
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    them a little bit as attorneys, rather than having
 2    them first, and maybe we can see what we get out of
 3    the other people?
 4              MR. CASTLE:  That was our plan all along,
 5    was to call them at the end, because that's kind of
 6    the final assessment.
 7              If I could share a couple of thoughts with
 8    the Court?
 9              THE COURT:  Sure.
10              MR. CASTLE:  And I appreciate the Court
11    giving us an outline of its thinking right now.
12              The issue is not just preindictment delay.
13    In fact, the case law on preindictment delay sets up
14    the hardest standard for -- of the standards the
15    Court is going to have to apply.  The easiest
16    standard is Roviaro.  In Roviaro, they said if you
17    had an informant that could provide exculpatory
18    information, the Government doesn't provide the
19    identity, the case gets dismiss.  There is no
20    requirement of purposeful or bad faith at all in
21    Roviaro.  And Trombetta and Youngblood are also in
22    play.  But I think in some ways they end up tracking
23    some of the requirements in the preindictment delay.
24    So I bring that up to the Court --
25              THE COURT:  Is your argument on this, on
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    Roviaro, is it that even if the Government doesn't

2    know the identity of the witness, that standard still

3    applies?

4              MR. CASTLE:  Well, I don't have to go there

5    because the FBI, the Government -- not necessarily

6    the U.S. Attorney's Office -- the FBI -- the evidence

7    is going to show the FBI was involved in this

8    investigation within two weeks of the murders in

9    2001.  They were interviewing witnesses, they had an

10   open file.  They contemplated going to the -- well,

11   they did go to the U.S. Attorney's Office and asked

12   for Grand Jury indictments on a couple of occasions.

13   They took possession of the file from the New Mexico

14   State Police.

15             THE COURT:  But if we are at this point, it

16   seems like Roviaro is going to say that if the

17   Government has the name of the witness, the identity,

18   and is not disclosing it, that's when you get into a

19   dismissal situation.  Are you saying it also applies

20   in this situation, where they might have known at

21   some point that that same standard is going to apply?

22             MR. CASTLE:  I believe it does.

23             THE COURT:  Do you have any case law that's

24   similar to our situation, where the Government is

25   saying that they don't know who these informants are,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   and we apply that standard?
 2            MR. CASTLE:  Well, I don't think they're
 3   saying they don't know.  They no longer remember.  So
 4   there is a difference.  But Roviaro itself didn't
 5   require it.  It says, "Where the disclosure of an
 6   informant's identity or the contents of his
 7   communication is relevant and helpful to the defense
 8   of an accused, or is essential to a fair
 9   determination of a cause, the privilege must give
10   way.  In these situations the trial court may require
11   disclosure.  And if the Government withholds the
12   information dismiss the action."
13            THE COURT:  Well, it sounds to me, though,
14   if I were to order the Government to produce it,
15   they're not going to resist that order.  They'll say,
16   Yeah, but they're going to say, We don't have
17   anything to disclose.  And then they're in a
18   situation where they're not withholding any
19   information.
20            MR. CASTLE:  Well, what our position is,
21   Your Honor, is the focus of Roviaro is due process.
22   And the focus is on whether a defendant is going to
23   have a fair trial.  The fairness of the trial in this
24   case is going to be impacted whether they negligently
25   lost it, forgot about it, or decided to delay
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    indictment for 15 or 17 years, and therefore, no
2    longer can produce it.  The problem rests with them.
3    What the problem that we have here, you know,
4    assuming we have some evidence that shows that there
5    is something lost that had value, but assuming that,
6    that loss sits at that side of the room, not the
7    defense side.
8              And so what would due process require?
9              THE COURT:  So you're not trying to tag the
10   United States with the problems of the State; you're
11   trying to tag them with the problems of the FBI's
12   involvement early on?
13             MR. CASTLE:  No, I think --
14             THE COURT:  You're also trying to get at
15   the United States?
16             MR. CASTLE:  Yes, because they were part of
17   the joint --
18             THE COURT:  The State of New Mexico?
19             MR. CASTLE:  Yes, they were on a joint task
20   force with the State of New Mexico investigating
21   these murders.  So they worked together as joint task
22   force.  They had meetings.  U.S. Attorneys would
23   appear at the meetings.
24             THE COURT:  Look at the record at the end
25   of the day, or four days, whenever it is, at the end
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    of the day is nobody can establish that the FBI ever
2    knew the names of these informants; that it was only
3    the State of New Mexico that knew them.  What then?
4              MR. CASTLE:  Then I think you have a
5    Trombetta situation.  It's recklessness.  And if we
6    can show that it was actually exculpatory, then the
7    standard isn't willful or bad faith, it's --
8              THE COURT:  What if you've got an FBI
9    sitting in on these task forces, and the FBI agent is
10   sitting there, and he's going, "I hate that I'm
11   sitting here because we're not going to bring this
12   case, we don't want this case," so they kind of
13   halfway out of the case because they don't want it?
14             MR. CASTLE:  I don't think that's what the
15   evidence is going to show, Judge.
16             THE COURT:  Okay.  What do you think it's
17   going to show?  Do you think the FBI was really
18   interested in looking at this case?
19             MR. CASTLE:  Yes.  And I think they went to
20   the U.S. Attorney's Office on numerous occasions to
21   get it indicted, and was considered for indictment.
22   I'm not sure that it wasn't subject of Grand Jury
23   proceedings in both 2008 and 2013, because it's
24   referenced.
25             THE COURT:  Federal?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. CASTLE:  Yes.  There is reference to

2    that in the discovery in some places.

3          So I think, as we unfold, what we're going

4    to find out is that in 2001, Agent Pedersen was the

5    agent that was assigned to this particular

6    investigation.  They had an investigation that was

7    kept open all the way until 2009, where at different

8    times it got transferred to a different agent, like

9    Sonya Chavez, et cetera.

10         The other thing that I want to kind of give

11   the Court some thought about is this:  In this

12   Court's attempt to create a fair trial for the

13   defendants, even if dismissal is not granted, there

14   might be other remedies the Court can fashion to make

15   sure that the case is done fairly.

16         For example, if the Court were to find an

17   informant gave a completely exculpatory statement for

18   one of the defendants, and the loss of that evidence

19   was on the Government's side with perhaps even pure

20   negligence, the Court, as a remedy, could say that

21   the defense doesn't have to present that witness.

22   You could present the statement.  I'm not saying

23   that's a satisfactory result.  We're asking for

24   dismissal.  But at some point in time, this Court

25   might be faced with the position where it might relax

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                     (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                   1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                   e-mail: info@litsupport.com

```
 1   certain rules of evidence to allow the admission of
 2   that kind of evidence before the jury for the truth
 3   of the matter asserted.  I think we can get it in not
 4   for the truth of the matter asserted to show that
 5   they didn't pursue a lead or something of that
 6   nature.  But there are other remedies the Court can
 7   do short of dismissal.  And like I say, I'm not
 8   asking for those right now, but I think that is
 9   something the Court needs to think about as it
10   listens to the evidence that we're going to be
11   presenting.
12            The other thing that is of interest is the
13   law on delayed indictment seems to -- at least for
14   one factor, fall on the side of whether something is
15   tactical or investigative.  If it's investigative
16   delay, then that's sanctioned.  If it's tactical,
17   that's not.  But then the case law doesn't really
18   tell us how to define what's investigative versus
19   tactical.
20            We believe -- I believe what the Court just
21   outlined about, Look, we don't want this case, we
22   don't want to put our resources on it, we've now
23   decided that we're going to do it in 2015 to send a
24   message to the SNM members, that's tactical to me.
25   That's not investigative.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           And so, now the Court --

2           THE COURT:  Here's where I'm thinking the

3   line is, and you're welcome to disagree with it.

4   There is no investigative delay, because they just

5   weren't investigating anymore.  It kept popping up

6   occasionally, but they kept beating it down.  But

7   when they got to -- when they finally decided they're

8   going to bring something, then there were tactical

9   decisions.  But I'm having a hard time seeing the

10  tactical decisions until the Marcantel -- until they

11  decided after Marcantel that they would bite on it

12  and take this case.  It seems up to that point it is

13  investigative delay.  They just don't want it, they

14  just don't want it.  At the minute that it's

15  Marcantel, that's when the tactical decisions begin.

16          MR. CASTLE:  Well, actually, all the

17  statements that are in the James table here, these in

18  regards to Counts 1 and 2, all of them are in the

19  possession of the United States Government as of

20  2008, every one of them.  And only one of them wasn't

21  in their possession after 2001.  So I don't think it

22  was an investigative delay at all, even during that

23  time period.  It was just a decision.  It was a

24  tactical decision that the United States Government

25  said:  We don't want to mess with this.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Isn't a tactical decision just

2     saying:  Let's delay this thing 12 years, 13 years,

3     however many years, so that we put the defendants at

4     a disadvantage, not we're just continually telling

5     the State of New Mexico:  Go away, we don't want to

6     bring these cases?

7          MR. CASTLE:  No, where I think the line

8     actually is, is that investigative delay is necessary

9     delay, because it's necessary to build a case.  We

10    have to keep working on it until we get enough

11    evidence to indict.  Whereas, tactical is we're going

12    to wait until we want to do it, and the conditions

13    are sufficient for us to do it.  And it makes sense

14    that sanctions would not be imposed in a situation

15    where the delay was necessary.  Even if it caused

16    damage to a defendant, if it was necessary, then the

17    Constitution authorizes it.  But if it wasn't

18    necessary, then the burden essentially shifts.

19          The Government then in some fashion has to

20    make up for the loss of evidence that they caused

21    because they made a noninvestigatory decision to put

22    this off.

23          And so I would just note that throughout

24    these times, the evidence will show the Department of

25    Corrections was cooperating with the joint task force

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    and these particular FBI agents.  So apparently it's
2    a joint decision not to.  Both New Mexico and the
3    federal government decided not to indict on these
4    older charges.  And I'm only addressing 2001 and '02.
5    I think the 2007 folks are going to say the same
6    thing.
7              But I just want the Court to give that some
8    thought, especially on lesser sanctions, or lesser
9    remedies.  You know, those might be things that the
10   Court can deal with in its power, as the rules of
11   evidence can be relaxed at times by the Court,
12   depending on the circumstances, at least the Court
13   can consider that.
14             THE COURT:  Can you give me an example?
15   I'm not sure I've had this situation before.  Can you
16   give me an example where I would relax the rules in
17   your favor?  What would be an example?
18             MR. CASTLE:  Your Honor, there is a network
19   of rules that kind of talk about this.  For example,
20   804, where there is an unavailable witness, if the
21   opposing party was responsible for the
22   unavailability, the Court then finds it's unavailable
23   and certain materials come in.  807, the residual
24   hearsay exception.  The Court could say, you know,
25   these statements are corroborated enough that we
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    should present them to the jury and the jury could
 2    decide their ultimate credibility.  So there is kind
 3    of a network of those kinds of rules that all go to
 4    the concept of fairness.  Or another concept is 106.
 5    Rule 106 says -- it's often called the Rule of
 6    Completeness, but it's actually broader than that.
 7    It says that when a party introduces a statement, the
 8    Court can require any other statement that ought to
 9    be in fairness considered.  Okay.  Once again, it's a
10    concept of allowing evidence in that otherwise
11    wouldn't come in as a basic tenet of fairness.
12              And so I think the rules of evidence, when
13    you look at them all together, they're not designed
14    to allow a party to profit because they lost
15    evidence.  They're designed to promote the
16    introduction of evidence.
17              And so I filed an 807 notice for the
18    Court's consideration.  But I think those network of
19    rules are ways to do it.  Another concept is the
20    evidentiary concept of opening the door.  If the
21    Government is going to get in evidence that says:
22    We're going to look at who conspired to commit this
23    murder, and have they opened the door to us bringing
24    in statements that -- from individuals who are no
25    longer present?  I'd like to say that we could bring
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    them in as co-conspirator exceptions, but I did do
2    some research on that, Your Honor, and it's only for
3    the Government.  However, when they open the door to
4    a particular conspiracy, my argument would be that we
5    don't then look at 801.  We look to the concepts of
6    401, 403, and the other rules I've cited.
7              So these are some considerations that I'd
8    like the Court to think about.  It sounds like I
9    might lose, and I'm just guessing I was going to lose
10   the motion to dismiss at some point anyway, because I
11   haven't won too many over my career.  But there are
12   sanctions, I think, are lesser than that, and these
13   are just some thoughts.
14             THE COURT:  All right.  I appreciate it.
15   Thank you, Mr. Castle.
16             MR. CASTLE:  Oh, Judge, one other thing.
17   Mr. Tierney was the third U.S. Attorney that was
18   listed, and I think they may have just overlooked
19   that.
20             THE COURT:  There was three subpoenas?
21             MR. BECK:  Our office does not have a
22   subpoena for Mr. Tierney.
23             THE COURT:  Okay.  All right.  We'll look
24   into that.  All right.  Let me let Mr. Benjamin, he
25   stood up.  Mr. Benjamin.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  And, Your Honor, this is one
 2     of the reasons why we had joined that was, and the
 3     Court had asked for a specific instance of how this
 4     might have come into play, and want to dovetail into
 5     Mr. Castle's argument.  One of the problems with the
 6     way that this case has been -- and our position, as
 7     Mr. Castle articulated, investigated is that, in
 8     2001, Mr. Gallegos was working in the kitchen.  There
 9     would have been logs normally for those type of
10     things, documents leaving the pod, going into the
11     kitchen, so forth, so forth.
12              What has been preserved has been positive
13     statements for the Government.  What has not been
14     preserved is documents is that we would rely on in
15     this case, for instance, to go -- logs going to and
16     from the kitchen, and those kind of things.  And
17     those would be useful against Leroy Torrez and
18     Leonard Lujan.
19              And so the preservation has been done on
20     the investigative side with the statements, but it
21     has not been done on the other side with the
22     exculpatory documents, or possibly exculpatory
23     documents.
24              And so that's in response to the Court's
25     request for a specific item.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  All right.  I appreciate that.

2     Thank you, Mr. Benjamin.

3          Anybody else want to speak on this?

4          All right.  Mr. Beck.

5          MR. BECK:  I don't want to take a lot of

6     time here, because I think this is going to be

7     rehashed later on.  I will just point out a couple of

8     things.  I think the Court's reading of Roviaro is

9     correct.  I would be surprised to find out that there

10    are sort of an interplay between the rules for some

11    other sort of relief.  And I would caution how

12    much -- how useful --

13          THE COURT:  Well, isn't there a Supreme

14    Court case, though, that talks about -- I don't know

15    the name off the top of my head, but I thought I had

16    seen the Supreme Court talking about there may be

17    some situations where you can have, and should have

18    relaxed evidentiary rules?  I don't know if it's this

19    situation or not, but I have seen that.

20          MR. BECK:  Right.  I mean, I think that

21    does sound familiar in the hundreds of cases I've

22    read preparing for this.  But, again, I would caution

23    how much weight to give that to this case.  And this

24    is why I said at the beginning, I don't think we're

25    going to get to the AUSAs' testimony, because I don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    think there will be any evidence of actual prejudice.

 2              And, for instance, one of the sources

 3    attached to the motion is this -- attached to

 4    Mr. Garcia's motion is this FBI -- well, it would be

 5    a 302.  This is actually the sentinel working copy.

 6    But it's DeLeon Bates 605.  And so if you're talking

 7    about 804, the Government, you know, procuring the

 8    unavailability of the witness, or something like

 9    that, and that we should allow this piece of evidence

10    in under 804, or even 106, the problem with doing

11    that under 106 is that where we say here -- where

12    this source, whomever it may be -- says in that

13    second paragraph, "Manzanares is in debt to the SNM

14    because of the killing.  Manzanares required the hit

15    through Cheech.  Cheech and Angel Munoz are close

16    friends."

17              In the very next sentence it says, "Source

18    stated that Billy Garcia gave the order to hit

19    Castillo.  Manzanares and Garcia will be killed for

20    their involvement in the killing of Castillo."

21              So it's not exculpatory as to Mr. Garcia.

22    It says right there -- so if the intention of

23    bringing this into evidence for the truth of the

24    matter asserted in there is that it pointed to

25    Manzanares.  Well, the way the Government rebuts that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   is that there is not only one person who says ordered

2   the hit here, it also says Billy Garcia ordered the

3   hit.  And so --

4           MR. CASTLE:  Your Honor, I could make a

5   quick -- we weren't going to offer that.

6           MR. BECK:  I figured you probably weren't

7   going to offer that.  But what I'm pointing out here

8   is that these statements are not clearly exculpatory,

9   as the defense would like to believe.  So there is

10  that danger.  And the cases talk about the prejudice

11  to both sides, balancing the prejudice.  And this

12  statement, losing this source is certainly more

13  prejudicial to the United States, equally

14  prejudicial.  I would argue more.

15          Mr. Castle referred to the James statements

16  as being in the Government's possession since 2001

17  and 2008.  That may be true, but the evidence was not

18  in the Government's possession at that time.  And

19  that's what the Court will see is that these

20  statements were out there, but the United States

21  couldn't just offer the police reports into

22  custody -- into evidence at a trial, because that

23  would be rank hearsay.

24          What the United States didn't have until

25  2015, and later in some cases, is the evidence, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    means through which we could put somebody up on the
2    stand who would testify to these James statements.
3    That's what the Government now has.  So where Mr.
4    Castle was talking about we don't have preindictment
5    delay to dismiss a case where the delay was necessary
6    to the case.  Well, that's this case.  The delay was
7    necessary because we didn't have the evidence until
8    we had all these new sources who were coming through
9    to testify as witnesses.
10            So that motion to dismiss precedent that
11   says it must be necessary to the investigation weighs
12   in favor of allowing us to present this case, and not
13   dismissing it.  Because the United States -- and to
14   that extent the State of New Mexico -- only got this
15   evidence that has certainly been on written paper in
16   2001, but the United States only got this evidence --
17   this evidence only existed in 2015 or later, once we
18   had the sources who would come testify.
19            And I'll leave it that, because, as I said,
20   I think we're going to be hearing a lot of this the
21   next couple of days.
22            THE COURT:  All right.  Thank you, Mr.
23   Beck.
24            Mr. Burke, do you have anything to add?
25            MR. BURKE:  Yes.  What Mr. Beck just said
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    is just not true.  All of the evidence for the 2001
2    homicides existed prior to this investigation, Mr.
3    Acee's, the March 2015 investigation, except for a
4    statement or two from the new snitches.  So the key
5    statements on the 2001 homicide long existed.  You
6    just heard about Ruben Hernandez.  That's always been
7    there.  Lujan from 2007.  So I just want to say
8    that's not true.  I think you hit the nail on the
9    head.  It just didn't get indicted until later.  And
10   it was all practical considerations.  It was not
11   because of, you know, what Mr. Beck is saying now.
12   And I don't know if we can ever get to the burdens
13   that we have --
14             THE COURT:  What he's saying is he didn't
15   have all the evidence.
16             MR. BURKE:  Yeah, they had the evidence.
17   It's just that they didn't do it.  And I think you
18   hit nail on the head.
19             THE COURT:  They didn't want to do it.
20             MR. BURKE:  Yeah, they didn't want to do
21   it, the money, working together.
22             THE COURT:  Well, the Government has
23   probably got to be consistent.  If they didn't have
24   the evidence, that's one thing.  But if they didn't
25   want to bring the investigation, which has been my
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    sort of take on it, they didn't want to bring the

2    prosecution; seems to me those are two different

3    stories.

4              MR. BURKE:  That's all -- I don't know if

5    we can ever get there to have a motion that should be

6    granted.  But that's really the situation.  The 2001

7    homicides were just there.  And then this prosecution

8    said:  Let's just throw them into this thing after

9    the Marcantel allegations.

10             THE COURT:  Well, I don't want to get too

11   far down the pike on motions to dismiss.  But I guess

12   one of the things that is of interest to me was the

13   fact the State of New Mexico didn't prosecute these

14   things either.

15             MR. BURKE:  No.  I mean, you obviously did

16   look at the attachments.

17             THE COURT:  So you're looking at a

18   situation where just nobody is bringing these things.

19             MR. BURKE:  Correct.

20             THE COURT:  Which way does that cut?  It

21   would seem to me that cuts against the defendants,

22   because it's like nobody wants this case.

23             MR. BURKE:  And the reason we did that was

24   to bring up Mr. Castle's point about it was a

25   tactical decision.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.
 2              MR. BURKE:  That's why we brought that up.
 3              THE COURT:  Tactical rather than
 4    investigative?
 5              MR. BURKE:  Exactly.  Thank you, Your
 6    Honor.
 7              THE COURT:  Thank you, Mr. Burke.
 8              All right.  Anything else, Mr. Beck?
 9              MR. BECK:  Not at this time.
10              THE COURT:  All right.  So we will -- I'm
11    not precluding the defendants from calling the AUSAs,
12    and I most likely will allow it.  But I'll probably
13    liberally protect the Government's work product in
14    this case.  And we will not hear from those attorneys
15    until the end of the evidence on the motions to
16    dismiss.  They'll be the final witnesses on that.
17              All right.  Let's then go to what Ms. Wild
18    has tabbed 1, which is a motion to sever by Andrew
19    Gallegos, which has been joined in by Joe Gallegos,
20    Edward Troup, Shauna Gutierrez.
21              As we were talking a little bit earlier
22    today, I'm not inclined to sever.  I've stared at
23    this chart for now a couple of years as to how to try
24    these things.  I'm not excited about trying eight
25    defendants.  I feel like I worked pretty hard to try
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    four, and trying eight doesn't excite me.  But I'm

2    having a hard time, even after we went through all

3    the conspiracies this morning, to figure out a better

4    way to proceed.  There is a lot of overlapping

5    defendants among these five indicted conspiracies,

6    and it's hard for me to come up with another way to

7    go.  So I guess I'm inclined to deny it.

8              I guess if the Government got up after

9    they've been through a trial, two-month trial with

10   four defendants, if they said they feel like it ought

11   to be severed, I'd probably take a hard look at that.

12   But we have lined these things up on a runway.  And

13   it's kind of difficult to figure out how to try

14   folks, given the way we've lined them up.  So I'm not

15   inclined to grant this motion.  But, Ms. Torraco, if

16   you wish to argue in support of it.

17             MS. TORRACO:  Thank you, Your Honor.  I

18   appreciate the fact that you're going to take a

19   second look at it and allow me to argue it.

20             THE COURT:  And I did read everything, so I

21   have read all your briefing on this issue.

22             MS. TORRACO:  Well, since Mr. Roberts

23   drafted and filed this back in October, and since

24   that time, now we have more discovery and more

25   information, which makes it, to us, more compelling
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    that the severance should be granted.
2            THE COURT:  We also got fewer defendants.
3            MS. TORRACO:  That's true.
4            THE COURT:  So it's a little better
5    situation than when it was filed.
6            MS. TORRACO:  If I may, Your Honor, the
7    case that -- there is a couple of cases that were
8    cited by Mr. Roberts in the brief.  The one that I
9    particularly like, because it's very close to on
10   point to the issues here, is the Gallo case, United
11   States v. Gallo.  That's the case of the Gambino
12   Crime Family in New York, and they were indicted on
13   racketeering charges.  And so a lot of those issues
14   of severance are outlined in that particular case.
15   And in that particular case, they talk about -- and
16   I've been referring to this kind of as a nice diagram
17   as I've been going through the case -- they talk
18   about this wheel, where they in the Gambino case have
19   identified kind of the head guy, and the head guy
20   being the center of and the focus of the entire case.
21   And then there are all these different conspiracies,
22   if I may, that are the spokes of this wheel.  So
23   there is, you know, these different conspiracies.
24   And of course, the racketeering is what ties it all
25   together, and that's the hub.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            The problem is that in this particular case
 2   against our client Andrew Gallegos, in a lot of ways
 3   Joe Gallegos is at the hub of Trial 2.  And Joe
 4   Gallegos is involved in several different
 5   conspiracies.
 6            So couple that with the statements that we
 7   received in the Document 1903.  So Joe Gallegos makes
 8   a lot of statements, or is purported to have made
 9   several statements that refer to or there are
10   statements made about Joe Gallegos that refer to the
11   SNM conspiracy and the racketeering charge.  The
12   problem is because there is one spoke, one very small
13   conspiracy between -- that's alleged between our
14   client, Andrew Gallegos, and Joe Gallegos, all of
15   those statements are going to be used against Andrew
16   Gallegos, even though they have nothing to do with
17   Counts 4 and 5, which are the Andrew Gallegos counts.
18            So, for example, there are statements, such
19   as number 13, has nothing to do with the Adrian Burns
20   murder.  And that's Counts 4 and 5.  But in that
21   statement it's alleged that Joe Gallegos ordered a
22   hit.  So that statement comes in against Joe
23   Gallegos -- may or may not come in -- but that
24   statement comes in against Joe Gallegos.  Well, guess
25   what?  They have established through a hearsay
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   statement by a co-conspirator that has nothing to do
 2   with my client, that now my client is working with
 3   someone who has ordered a hit on another case.  In a
 4   trial, a sole trial against Andrew Gallegos, that
 5   information would never be admitted.
 6              And we can go through several more of the
 7   statements where, for example, on the Jose Gomez
 8   issue, and those assaults and that conspiracy, again,
 9   Joe Gallegos put a hit out on him.  That testimony
10   should not be admissible against Andrew Gallegos.
11   And I'm asking the Court to take a good look at the
12   fact that I don't think that Andrew Gallegos is going
13   to get a fair trial so long as he is tried with these
14   other cases.
15              Because it's not just the center and the
16   spokes.  What's happening is it's becoming a huge
17   weave, kind of a web, where statements that have
18   nothing do with the counts that are alleged on the
19   Adrian Burns murder, nothing to do with Andrew
20   Gallegos are going to be attributed to him because
21   he's associated as a co-conspirator with Joe
22   Gallegos.  Did that make sense?
23              THE COURT:  Oh, yeah, yeah.
24              MS. TORRACO:  And so that's the concern of
25   the defense.  The problem is, now in the Gambino
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   racketeering case, the court ultimately had to sever

2   what they kind of considered the smaller players,

3   because what happens is:  When you throw out this

4   wide net, you pick up many of the small players.  The

5   Gallo case, which is the Gambino murders, outlined

6   several factors which I want to add to the brief that

7   was already done.  And one of them is the

8   disportionality of the evidence.  When there is only

9   a small portion of the evidence that goes to one of

10  the accused, it is not appropriate for them to be

11  tried in the larger picture.  And it's not just the

12  spillover effect or the inevitable prejudice, but we

13  can take, again, a look at some of these very

14  specific statements.  Not only is there a statement

15  that's going to come in -- let's just assume that

16  they're trying to get in -- that Joe Gallegos put a

17  hit on Gomez.  There is also statements that Joe

18  Gallegos is the jefe, that he ordered another hit,

19  that people are protecting him, that this message is

20  from Joe.  And the problem is the more and more that

21  that we get into statements, not necessarily by

22  Andrew Gallegos' alleged co-conspirator, but by the

23  other co-defendants in the case, not even relating to

24  the case, not even relating to the counts of Adrian

25  Burns.  They are still going to reflect negatively

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  on, and tie Andrew Gallegos closely to Joe Gallegos

2  and inferring guilt on the Adrian Burns trial.

3          And I don't know how this Court can always

4  enter limiting instructions without at some point

5  it's clear that Joe Gallegos is the boss.  And Andrew

6  Gallegos does hang out with his brother.  And at some

7  point, Your Honor, there is no fair trial left for

8  Mr. Andrew Gallegos.

9          THE COURT:  Well, let me give you my

10 impressions, just having finished the other, is that

11 pretrial we focused tremendously on these statements.

12 And we just stare at them and they just obsess us.

13 But the thing that I kept being worried about and the

14 reason I didn't sever more last year than this is

15 because I was fearful that the great bulk of the

16 evidence that was coming in was going to be going to

17 establishing enterprise, racketeering activity, and

18 those things, which go against all the defendants.

19 Having now sat through seven weeks of that testimony,

20 it seems to me to have played though the way.  But

21 the statements, they're important, I'm not

22 minimizing.  But they were not a great bulk of the

23 trial.  The great bulk of the trial was all this

24 enterprise activity, all this racketeering activity

25 and those sort of things, so that there is an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   overwhelming amount of information that's going to
2   come in as to Mr. Andrew Gallegos and all the
3   defendants to establish racketeering activity and
4   enterprise.
5           MS. TORRACO:  So this case is different
6   than the first trial, Your Honor.  And if I may, I
7   know the Court is familiar with the facts, but if I
8   can just back up a little bit.  This is a case where
9   our client is charged with a murder.  And what
10  happens is the fire department sees way out in the
11  bosque that there is smoke coming up, and there is
12  flames, and the fire department rushes out and sees
13  that, in addition to a car burning, there is also a
14  body burning.
15          Okay.  The evidence against our client, Mr.
16  Andrew Gallegos, there are allegations that there was
17  blood all over him, which the evidence shows that
18  there was not blood all over him.  There is
19  allegations that there was accelerant.  Our clients,
20  Mr. Andrew Gallegos and Joe Gallegos, were seen at a
21  gas station buying gas sometime earlier.  There is
22  absolutely no accelerant found on our client.  There
23  is no accelerant found on the decedent.  There was no
24  blood found on our client.  There was no blood found
25  at the house.  The blood that was found was not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    consistent with Adrian Burns.  There is no motive in

2    this case for our client to have killed Adrian Burns.

3    The fact of the matter is there is plenty of evidence

4    that Adrian Burns, in fact, was a drug dealer; that

5    they had gotten drugs from Adrian Burns.  And there

6    is no reason why anyone would want to kill their drug

7    dealer.

8            There is no footprints.  There is no tire

9    prints at the scene.  Some of the blood that was

10   found is not consistent with human blood and it's

11   more consistent with the Matanza that the family had

12   just a few days prior.

13           So the evidence against Andrew Gallegos is

14   not strong.  However, there is a very large Bruton

15   issue that also supports severance, because according

16   to this chart in 1903, there are several statements

17   that are going to be attributed to Joe Gallegos

18   regarding Andrew Gallegos.  For example, statement

19   number 44.  It says that Joe Gallegos says that he

20   and Andrew asked Jason to clean up their carpet.

21           The statement that Mr. Benjamin just asked

22   in the earlier hearing, statement number 43, the

23   declarant is alleged to have been the Gallegos

24   brothers.  There is reason to believe that that

25   statement was actually made by Joe, that he knew the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    police were looking for them.  There are more Joe

 2    Gallegos statements that -- we can't cross-examine

 3    Joe Gallegos as to his statements, but they're going

 4    to come in against Andrew Gallegos.  And if I can

 5    have just a minute, I'll pull some of those

 6    statements.

 7              THE COURT:  You may.

 8              MS. TORRACO:  So right now we have 43 and

 9    44 regarding Joe Gallegos.  There is statement number

10    41, which it's not clear who it's attributable to.

11    We believe that it's going to be attributed to Joe

12    Gallegos, statement number 41, that he and Andrew

13    just pulled a job.  They had to go clean up.  I mean,

14    there is a clear Bruton issue with that particular

15    statement.

16              Statement number 42, we also believe that

17    will be attributed to Joe Gallegos.  And again,

18    that's Joe Gallegos saying he and his brother.  It

19    says they were covered in blood.  The evidence in the

20    case is actually contrary.  There was a little bit of

21    blood found, but like I said, it was consistent with

22    animal blood, not human blood.  Advised that they

23    were cleaning the house.  Gallegos later went by.

24    Looks like the statement is that they were cleaning

25    the house.  That goes -- and that would be a Joe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Gallegos statement against he and Andrew.
2              And then we have 43 and 44.  And statement
3    number 46 which is attributable to Joe Gallegos.  Joe
4    Gallegos found out the police were coming to search
5    the house, and he gave several guns and other stolen
6    goods to Jason to store elsewhere.  And the reason
7    that's also against Andrew Gallegos is because they
8    were living together.  Joe Gallegos and Andrew
9    Gallegos at the time, it's represented that they were
10   roommates.  So we have a Bruton problem.
11             We also have admissions by Joe Gallegos in
12   other conspiracies, or not admissions, I'm sorry,
13   statements made about Joe Gallegos in other
14   conspiracies, which there is no evidence that Andrew
15   Gallegos is a member of the SNM.  But the more that
16   the Government hammers that Joe Gallegos was a member
17   of SNM; that Joe Gallegos is involved in all of these
18   alleged acts; that Joe Gallegos is guilty; that Joe
19   Gallegos admitted this.  What's happening is Andrew
20   Gallegos is going to get pulled into it just guilt by
21   association.
22             The threshold is really:  Can Andrew get a
23   fair trial?  And I don't know if he can, Your Honor,
24   with all of these statements.
25             Statement number 54, Brandy Rodriguez makes
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   a statement and it says, You better not testify

 2   against my jefe."  Is the jefe Joe Gallegos?  And so

 3   does that also infer that that's Andrew Gallegos'

 4   jefe?

 5           Does the Court -- I know you understand.  I

 6   don't mean it like that, but are you following my

 7   Bruton concerns?

 8           THE COURT:  I am.

 9           MS. TORRACO:  Should I keep talking?  I'm

10   just not used to you being quiet, I'm sorry.

11           THE COURT:  Well, I guess maybe I should

12   have done this earlier, but I need to probably find

13   out how the Government is going to propose to deal

14   with some of these Bruton issues.  Some we dealt

15   with -- my words, not probably the defendants'

16   words -- but the Government was fairly generous in

17   Brutonizing a lot of statements that for which I had

18   found there was no Bruton violation, to try to reduce

19   the number of limiting instructions.  So that even

20   though a number of limiting instructions were given,

21   they were given for evidence that didn't have

22   anything to do with the other defendants.  I mean, I

23   was giving limiting instructions that the evidence

24   didn't have anything to do with the other defendants.

25   It only had to do with the one defendant who was a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   declarant.  If we're going to have that sort of trial
2   where we not only do Bruton, which I'm required to
3   do, but we also go further and Brutonize statements
4   that are not admissible against other people -- so
5   there is not a constitutional problem, but there is
6   an admissibility problem -- and clean that up.  It
7   seems to me that you're going to have less to worry
8   about.
9           MS. TORRACO:  So can we hold this severance
10  in abeyance, address the issue of the admissibility
11  of some of these statements.  Because if some of
12  these statements are still coming in, then I think
13  our motion for severance is still ripe.  Because if
14  there are statements made by -- allegedly made by Joe
15  Gallegos incriminating his brother, Andrew Gallegos,
16  we have an admissibility problem.  If those
17  statements are going to come in, I don't see how a
18  limiting instruction can help that.
19          THE COURT:  Well, I can't limiting
20  instruction a Bruton problem.
21          MS. TORRACO:  Right.
22          THE COURT:  So I'm not attempting to do
23  that.  But if the Government sanitizes the statements
24  the way they did in the first trial, then there may
25  be a limiting instruction.  But it's hard to imagine
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   how anybody would use the evidence against other

 2   defendants anyway.

 3            MS. TORRACO:  Right.  I would suppose we

 4   need to wait and see how they're going to sanitize

 5   these statements.  The problem is, is that there is

 6   really only two people really in this conspiracy, and

 7   that is Andrew and Joe, on the Adrian Burns murder.

 8   So I don't know how --

 9            THE COURT:  I don't think that they're

10   going to probably want to sanitize those.  And I'm

11   not sure how you sanitize those, if those are going

12   to come in as co-conspirator statements, which is the

13   James hearing, they're just coming in.  But I don't

14   think a severance helps you there.

15            MS. TORRACO:  Are you talking about not the

16   Bruton statements, not the statements that Joe says,

17   my brother and I, we just did a job, we'll take

18   that --

19            THE COURT:  That's going to probably come

20   in.  I imagine what the Government is going to say is

21   that's going to come in under the co-conspirator

22   statement.

23            MS. TORRACO:  But there is still a

24   confrontation problem.

25            THE COURT:  Well, correct me if I'm wrong,

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    I think the Supreme Court has said:  If you satisfy

2    the co-conspirator exception, you satisfy the

3    Constitution.

4            MS. TORRACO:  And the right to confront and

5    cross-examine?

6            THE COURT:  Correct.

7            MS. TORRACO:  So the bigger threshold is,

8    is there a due process violation?  Does the client

9    get a fair trial?

10           THE COURT:  Well, I think the Supreme

11   Court, though, has said that if you satisfy -- that's

12   one reason that we're going to work real hard on this

13   James hearing, because it's very important.  But if

14   it comes in under co-conspirator, it satisfies, if I

15   remember the language of the Supreme Court, the

16   constitutional problems.  It doesn't say just

17   confrontation or Sixth Amendment or due process.  I

18   think it says constitutional problem.

19           MS. TORRACO:  So there was another case

20   that was cited in our brief, U.S. versus Lujan, which

21   came out of New Mexico.  And in that particular case

22   there was one defendant who was charged with two

23   murders, and two defendants who were charged with

24   only one of those.  And the Court found that they

25   cannot be tried together because the prejudicial

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    effect of hearing of the other murders of their
 2    co-conspirator was far too prejudicial for the people
 3    who were only accused of being involved in one
 4    murder.
 5            THE COURT:  But that was not a VICAR case.
 6            MS. TORRACO:  No, it wasn't.
 7            THE COURT:  So that's the problem that you
 8    have here, is that certain evidence as a rather
 9    generous amount of information can come in as
10    relevant to the enterprise and to the racketeering
11    activity to establish it as to all the defendants.
12            And that's the problem that I see with
13    severance; continuing to slice and dice this further
14    is that we just sat through a huge amount of evidence
15    on the racketeering and enterprise side, and that
16    will have to be repeated in any trial that we do.  I
17    mean, the Government can try their cases differently,
18    depending upon the defendants in the case.  And I
19    expect that this case will look a little different.
20    But at least pretrial I'm not sure I can really tell
21    the Government how to prove racketeering, or how to
22    prove the enterprise, that they get to kind of be
23    cleared of that.
24            MS. TORRACO:  So I understand the Court's
25    concern.  And in the Gambino racketeering case --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    well, actually, let me back up.  Most of the murders
2    in Trial 2 took place in 2001.  That's all these
3    motions to dismiss.  My client is charged and accused
4    of participating in a murder that took place in 2012.
5    So he's being tied in to past bad acts of all of the
6    other co-defendants going back all the way to 2001.
7    There is no evidence that he was an SNM Gang member
8    back in 2001.  But 11 years later, there is another
9    murder, and they're associating that as an SNM
10   murder.  I'm still at a loss for how they're going to
11   do that, but they're still tying that together.
12            THE COURT:  But isn't the Government going
13   to stand up and say:  Your Honor, one of the things
14   that we have to establish as far as enterprise is
15   continuity and continuing racketeering activities.
16   And it's a little difficult to tell them that they
17   are tasked with proving those beyond a reasonable
18   doubt:  Continuity, structure, racketeering activity,
19   and then say, Well, we get to pick the timeframe in
20   which they produce or select the evidence.
21            MS. TORRACO:  But Andrew Gallegos shouldn't
22   be punished for that.  They have a burden.  Andrew
23   Gallegos wasn't involved at all in 2001.  That's not
24   his fault that they have to prove something that may
25   not be provable as to Andrew Gallegos.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            THE COURT:  I don't think that they have to
2    say the racketeering activity -- that the enterprise
3    didn't exist until Andrew Gallegos joined the SNM
4    Gang.  I think they can establish that the enterprise
5    existed before he did, and continues to exist up to
6    the time of the indictment.  And so his joining the
7    SNM, I don't think, really limits the Government's
8    proof as to racketeering activity or enterprise.
9            MS. TORRACO:  I hear what you're saying,
10   but the prejudice there is actually --
11           THE COURT:  If we were to try Andrew
12   Gallegos alone --
13           MS. TORRACO:  That's my hope.  I would like
14   that.
15           THE COURT:  -- they could still bring in
16   all that evidence.
17           MS. TORRACO:  They wouldn't be able to
18   bring in all those statements.  And here's --
19           THE COURT:  That's a different issue.
20           MS. TORRACO:  Right.
21           THE COURT:  But as far as going back in
22   time and proving racketeering activity and
23   enterprise, they could bring it all in.
24           MS. TORRACO:  Well, they can't bring it all
25   in.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          But this is my concern with him being tried

2     with Joe Gallegos, and all the other defendants for

3     that matter.  If Joe was doing things in 2001, with

4     whatever co-defendant, and then Joe was doing

5     something in 2001 with another co-defendant, and if

6     Joe was doing something in 2001 with another

7     co-defendant, now, everyone is going -- now the jury

8     is going to be misled to think that because Joe was

9     accused of all these other things, therefore, he must

10    have done this in 2012.

11          And if Andrew was with him -- see Andrew

12    was with him this time.  What's happening is, with

13    Joe Gallegos, it appears to me that there is a theory

14    that Joe Gallegos always has an accomplice.  There is

15    one alleged murder that Joe was involved in and he

16    has a buddy.  There is another alleged murder that

17    Joe Gallegos was involved in and he has another

18    buddy.  And there is another murder that Joe Gallegos

19    was accused in, and he has another buddy.

20          So the Government brings that out, and so

21    now, when they're accusing him of a murder of Adrian

22    Burns, and they're going to lump Andrew Gallegos, and

23    say, well, Andrew must have been with him, because

24    Andrew was seen with him at the gas station.  Andrew

25    lives with him and was there that night.  Andrew was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   found with him later on in a hotel.  He was with
 2   Andrew.
 3            So, therefore, because Joe went out with
 4   Troup and because Joe went out with the other
 5   defendant, and on and on and on, therefore when Joe
 6   was found with Andrew, Andrew must be guilty, because
 7   Andrew was with Joe Gallegos, and Joe Gallegos has a
 8   pattern of always taking a buddy.  And that's
 9   supported by Document 1903, where there are many
10   statements made by Joe Gallegos to say that he was
11   the leader, and the other guy was the buddy.
12            Now he's found with Andrew Gallegos.  Joe
13   is a suspect in this murder.  Andrew must have been
14   involved.  I guess I'm stuck on the bigger principle
15   of:  Is my client really getting the due process that
16   he deserves, or is he going to be thrown together
17   with a guilt by association?
18            I know the Court has already heard all of
19   this.  I appreciate you listening to me, because I
20   know that -- you already told me that you pretty much
21   had your mind made up.  If the Court will hold this
22   in abeyance and not issue an order.  Let's go through
23   the James hearing -- there are several Bruton
24   statements -- and then reevaluate it again at the end
25   when the Court makes a ruling on the statements, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

195

```
1    would be appreciated by Andrew Gallegos' counsel.
2              THE COURT:  All right.
3              MS. TORRACO:  Thank you.
4              THE COURT:  Any other defendants -- I know
5    several defendants joined Andrew Gallegos' motion.
6    Does the hub of, the center of the spoke want to
7    speak on this motion?
8              MR. BENJAMIN:  The hub does not.
9              THE COURT:  The hub is going to remain
10   silent.
11             How about the Government?  Ms. Armijo?  I
12   guess the first question was, the one I was
13   discussing with Ms. Torraco is, are we going to try
14   this case the same way we did the first one, with the
15   same sort of limiting instructions, Brutonizing
16   statements that don't necessarily fall under Bruton,
17   but we're going to use the same sort of rules for
18   that -- for this trial that we used in the first
19   case?
20             MS. ARMIJO:  I think that those are several
21   questions.  Are we going to try this case the same
22   way?  Yes, we'll have cooperators who will get on the
23   stand and who will say -- who will establish the
24   enterprise, the racketeering activities, and talk
25   about the SNM.  So to that extent, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          As far as Brutonizing, all the statements

2    that she listed, defense counsel listed, do not fall

3    under Bruton, because they were made to individuals,

4    and the Court has it correctly that they are

5    co-conspirator statements.

6          THE COURT:  What about statements that I

7    determine under the rules of evidence only can be

8    admitted against that person?  One of the things that

9    gave me comfort in the first trial was the

10   Government's offer that in those situations, while

11   they're not required to be Bruton, that they would go

12   ahead and Brutonize those statements.

13         MS. ARMIJO:  Well, that was a different

14   situation because, as you recall, we had a lot of

15   recordings.  And some of the recordings were very

16   damning against co-defendants, you know.  And so I

17   think we took that approach, given the nature of the

18   recordings.  In this case, a lot of the statements

19   that she was talking about were statements made

20   during the course of the murder, not during

21   recordings that were two years later, that were done.

22   And they were made -- they were nontestimonial; they

23   were made to people who were involved as far as

24   witnesses, or that they were spoken to afterwards

25   near the time of the murder.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              So I guess to the extent that we're going
2     to be dealing with the individual statements, we do
3     need to deal with that later.  But I don't think, as
4     to the statements that were mentioned, we at this
5     point plan to sanitize them.
6              THE COURT:  And I wouldn't expect you to
7     sanitize, for example, co-conspirator statements.
8     I'm not talking about that.
9              MS. ARMIJO:  Right.
10             THE COURT:  I am talking about, if we have
11    statements -- for example, statements that are party
12    admission that would implicate more than one person,
13    more than one defendant, that those statements, that
14    we Brutonized those in the first case, and we would
15    Brutonized them here.  And we would say to the jury
16    that they could only use parties' statements against
17    the party that made them.
18             MS. ARMIJO:  I think we would have to see
19    what it is.  Like, again, the statements that she was
20    referring to, I believe we all feel they're
21    co-conspirator statements.  If there are other ones
22    that are identified, that we would -- certainly we
23    would relook at that.
24             THE COURT:  You don't or do think?
25             MS. ARMIJO:  I do think the ones that she
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   identified are co-conspirator.  If there are others
 2   out there, and Mr. Castellano is handling the
 3   statements, or anything else that we come across,
 4   certainly, we would look if it falls under Bruton,
 5   and we would look it over.
 6              THE COURT:  I'm talking about a situation
 7   where it doesn't fall under Bruton.  I've got to do
 8   my job under Bruton.
 9              MS. ARMIJO:  I guess I'm just trying to
10   think of what statements it is.  We certainly would
11   be open to it.
12              THE COURT:  Well, but here's the problem.
13   I've got to make a decision on the severance now.  So
14   here is the reality:  And this is what -- let's go
15   back a little bit in history.  When I denied Mr.
16   Sanchez' motion, sitting back there where Mr. Burke
17   is, when we were doing these hearings earlier, his
18   renewed motion to sever, I was able to put
19   confidently into the opinion for the second time that
20   I had not been presented any evidence that was going
21   to be used by one defendant against -- one
22   defendant's statements that were going to be used
23   against another defendant.
24              Then, right before the Christmas holidays,
25   those last two days, we began to identify some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   statements, as we did the James hearings.  We began
 2   to identify statements that were going to be coming
 3   in as parties' admission, but they can only be
 4   admitted against that defendant.  And there was no
 5   other hearsay exception that I could see.  That was
 6   when I began to be concerned that, while I could
 7   constitutionally give legal limiting instructions, I
 8   was uncomfortable with the ability of the jury to
 9   absorb the ones that I was going to have to make
10   there.  And so that was the reason I began to think
11   about two juries and more severance, or something
12   like that.
13          It seems to me now is the time for us to
14   think about:  Is this trial going to look exactly
15   like -- on these issues -- as it did in the first
16   trial, where I was comfortable with not granting
17   further severance and not doing multiple juries, or
18   is the Government presenting a different scenario?
19   Because then it's different than what I was looking
20   at in December when I could confidently say:  So far
21   nobody has identified any evidence that's going to be
22   used.
23          So I'm not sure just taking a look at it
24   down the road is going to do it for me.  I'm going to
25   have to have some commitment from the Government.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    And if I don't get it, then I think we need to take a
 2    harder look at these severance motions.
 3              MS. ARMIJO:  Well, I think there is a
 4    couple of things.  And one is I believe that the
 5    whole issue with the statements and everything else,
 6    I mean we -- I haven't seen a statement that was
 7    identified, at least as to this severance, that would
 8    come in; that would be different than the
 9    co-conspirator.  And so it's kind of hard --
10              THE COURT:  It seems to me that the
11    Government is giving up even less evidence in this
12    trial than it was willing to give up in the first
13    trial.
14              MS. ARMIJO:  Not necessarily.  I just can't
15    think of it.  Because this trial is a little bit
16    different, because we had recordings in there that
17    were quite damning.  So we were able to do it.  In
18    this case, we do not have the recordings, so I think
19    it's different.  And I think Mr. Beck has filed his
20    motion in limine to get the Court to look at the
21    statements a little bit differently, which it still
22    has to do.  So that's one thing that we would ask the
23    Court to do.
24              And I think that -- I mean, I'm sure that
25    we would probably, if confronted with that, we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   certainly would look at it.  But the Court did an

 2   excellent job as far as limiting instructions, too.

 3          And as you heard the Government talk about

 4   how they certainly got the point of the limiting

 5   instructions as they applied.  I think the Court can

 6   certainly give limiting instructions as well.  And I

 7   expect the Court to do so.

 8          THE COURT:  But I think that the limiting

 9   instructions were very clean to the jury, in the

10   sense that they quickly picked up that if one of the

11   defendants said something, they were going to be

12   either told or they knew:  Don't use it against

13   anybody else.  And I'm not getting that assurance

14   from the Government that it's going to play ball as

15   it did in the first trial, and so then I think I have

16   to sit down and look harder at the severance motions

17   because I now can't say what I said in December, and

18   in the earlier motion where I actually severed these

19   cases, that no evidence is going to be used against

20   one defendant that can't be used against another.

21          MS. ARMIJO:  And I guess, then, I just

22   think it's apples and oranges.  I think that the

23   recordings were different than statements we have

24   now.  And the reason why I just don't want to say

25   fully, say, Yes, we will do all that, is because it's

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    different.  The statements that were identified do

2    not fall under -- do not fall under Bruton, fall

3    under the co-conspirator, and I don't believe --

4    quite honestly, we don't have the recordings -- I

5    don't think that there is anything out there for the

6    Court to have to deal with that issue or for the

7    United States to deal with that issue.

8            THE COURT:  It seems like it's very little

9    for you to give up, then.

10           MS. ARMIJO:  May I just have a moment, Your

11   Honor?  Mr. Beck is dealing with the statements.

12           MR. BECK:  Your Honor, I think, ultimately,

13   it comes down to how you're going to rule on the

14   motion in limine.

15           THE COURT:  See, I guess I don't.  I mean,

16   if you've got an ability to get the evidence in

17   another way, it's just like state of mind.  I mean, I

18   allowed state of mind in the first trial.  But we

19   still did not allow statements that were coming in

20   under 801(a), we weren't allowing those to come in,

21   if that was it.

22           MR. BECK:  Right.  And so I think that's

23   true.  I mean, I think -- I think the Court came to

24   that conclusion because of the damning nature of the

25   recordings.  As Ms. Armijo said, we don't have those
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   in this case.  So I think the Court should take a

2   different view; it's apples and oranges.  If the

3   Court doesn't, and the Court would be inclined to

4   grant severance if we don't Brutonize the evidence,

5   then we do that.  I mean, if it's an admission by a

6   party opponent --

7            THE COURT:  The problem is -- I can't

8   say -- I don't know all the evidence.  I can't say

9   right at the time what I was able to stay twice in

10  opinions on motions to sever earlier, that I was

11  unaware of any evidence that could not be used

12  against everybody.

13           And, as I went through the James hearings,

14  and we began to really look at some of the evidence,

15  I couldn't say that anymore.  And so that was the

16  reason I began to say, Hey, I'm concerned.  I don't

17  know if the jury can absorb all these limiting

18  instructions.  I think it may get too confusing.  And

19  began to think that I had to do something else.

20           MR. BECK:  Right.  And so what I'm saying

21  is that I think, if the Court is inclined to relook

22  at severance -- again, there is no recordings that we

23  would Brutonize, it would just be statements by a

24  witness up on the stand.  So, if the Court doesn't --

25  I mean, if the Court finds that there are statements

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                         e-mail: info@litsupport.com

1    against penal interests that come in in this case,

2    those statements against penal interests would come

3    in against every defendant regardless whether it's

4    just Mr. Andrew Gallegos in trial, or if all of these

5    eight defendants in trial.  So those are just like

6    the co-conspirator exception statements.

7            Now, it's different as the party opponent

8    statements.  So when we don't have recordings, there

9    is nothing to Brutonize.  If somebody is going to get

10   on that stand and say --

11           THE COURT:  Why not just give it up?

12           MR. BECK:  That's what I'm saying.  I'm

13   saying we are giving it up.  I'm saying I disagree

14   with the Court.  But if push comes to shove, we're

15   giving that up and it's fine.  If someone can't sit

16   on that stand and say, you know, Mr. Joe Gallegos

17   told me "I did it with the candlestick in the library

18   and, oh, by the way, Mr. Andrew Gallegos gave me that

19   candlestick yesterday," I mean, if that statement is

20   only coming in against Mr. Joe Gallegos, then it's

21   not relevant, you know.  And certainly, you know --

22   don't hold me to this, but it seems to me, that if I

23   were sitting in the chair up there, in the robe, I

24   would say substantial prejudice, the danger of unfair

25   prejudice substantially outweighs the probative value

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of that statement for him.

2            So I think, when push comes to shove, we're

3    willing to give on those statements by party

4    opponents, because we'd rather just leave that out

5    than sever the trials.

6            THE COURT:  Well, the co-conspirator

7    statements can certainly be used against the

8    co-conspirators.

9            MR. BECK:  Right.

10            THE COURT:  But they can't be used against

11    anyone else in the -- that's not part of that

12    conspiracy.  So even though they may be part of the

13    SNM Gang, or they may be part of the enterprise, or

14    they just may be somebody in another conspiracy,

15    they're entitled to a limiting instruction on

16    co-conspirator evidence, but they can't be used

17    against anyone in the other conspiracies.

18            MR. BECK:  Right.

19            THE COURT:  Now, the thing we had in the

20    first trial that made that simpler is the Javier

21    Molina conspiracy was the big co-conspirator

22    statements, and so the bulk of those came in against

23    everybody.

24            MR. BECK:  Right.

25            THE COURT:  Whereas, the conspiracies that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Baca had on the other three counts, and two that
 2    went to the jury, were fairly limited.  And I think
 3    we did give limiting instructions as to those
 4    co-conspirator statements as to the other three
 5    defendants.  I think the other three defendants were
 6    fairly vigilant in asking for limiting instructions
 7    on that.
 8              Here, on the other hand, we're going to
 9    have six conspiracies; five conspiracies that are
10    indicted.  Is it really possible to give limiting
11    instructions that are going to be able to be followed
12    given that some of these statements can't be used,
13    these conspiracies can't be used against other
14    people?
15              MR. BECK:  Sure.  I think it's just like
16    the Marcantel and Santistevan case.
17              THE COURT:  Those ended up -- I know
18    everybody thought that was going to be the dog
19    wagging the tail.  But it turned out to be the tail,
20    as far as evidentiary issues were concerned.
21              MR. BECK:  Right.  And I think it's the
22    same thing in this case.  I mean, when we have these
23    co-conspirators giving the statements about Burns, I
24    think a limiting instruction is appropriate to give
25    against everyone else.  And it's not going to make --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  It just seems to me it's going
 2    to multiply the number of limiting instructions that
 3    are going to have to be given, much more than what we
 4    had in Trial 1.
 5            MR. BECK:  I don't think so.  I don't think
 6    there is as many statements coming in in this case,
 7    because we don't have those recordings.  Given the
 8    number of conspiracies and separate conspiracies, it
 9    may be close to that number.  But I don't think it
10    will be more, because with the recordings we had, you
11    know, instructions before and after each different
12    clip that was played.  And as the Court heard, I
13    mean, the jury got those instructions.  They'll get
14    them here.
15            When you hear evidence about, you know, the
16    Burns case, for example, and it only involves two
17    people out of eight, there is not really anything to
18    Brutonize or any prejudice, because it doesn't
19    involve the other six people in the room.
20            THE COURT:  All right.  Let's do this:
21    Let's take a recess for about 15 minutes.  Let me let
22    Ms. Bean rest her fingers, and I'll come back in and
23    hear you, Ms. Armijo.
24            One of the things I need to know by the end
25    of the day -- I'm going to have to shift from Trial 1
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to Trial 2, so -- I owe a bunch of work in Trial 1,
 2   but I've got to start focusing on you guys.  Would
 3   y'all sort of think -- the Government get together,
 4   the defendants get together.  If there is things that
 5   we've argued in the past that you want opinions on,
 6   rulings on, or something like that, or if there is
 7   something here you want an opinion, an order, more
 8   thought-out analysis sooner rather than later, tell
 9   me, so I know kind of what to work on.  I'd like to
10   start shifting to your case, rather than the other.
11   I got plenty of time to work on their case.  So let
12   me help y'all get ready for trial.
13             So think about that and as soon as we're --
14   maybe by the end of the day try to give that, so I
15   can walk out of here knowing exactly what you want to
16   work on.  All right.  15 minutes, we'll be back.
17             (The Court stood in recess.)
18             THE COURT:  All right.  Let's go on the
19   record.  Everybody look around, make sure every
20   defendant has an attorney.  Looks to me like they do.
21             All right.  So Ms. Armijo, Mr. Beck, do
22   y'all have anything further on the motion to sever
23   you want to say?
24             MS. ARMIJO:  Your Honor, not as to the
25   statements.  I will just address some of the other
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    issues.

 2              This case does involve four murders, but

 3    only two occurred in 2001; the other occurred in

 4    2007; and then, of course, the Burns in 2012.  Even

 5    the trial that we just had, which is the Javier

 6    Molina case that happened in 2014, we had testimony

 7    about the 2001 murders, and we had testimony about

 8    the 2007 murders.  So the Court is correct, in that

 9    we would be showing a continuum of racketeering

10    activity throughout it.

11              This case is different from the Larry Lujan

12    case, not only that it's not racketeering, but it's

13    not a death penalty case either.  Larry Lujan was

14    facing the death penalty.  And that was one of the

15    Court's primary concerns in that case as to the

16    co-defendant.

17              We do have, in this case, plenty as to

18    Andrew Gallegos.  As the Court knows --

19              THE COURT:  Let me ask, on Mr. Andrew

20    Gallegos, are y'all going to try to establish that he

21    is an SNM Gang member?

22              MS. ARMIJO:  That's exactly where I was

23    going.  As you know, with Daniel Sanchez, he was only

24    suspected, not validated.  And I believe that Andrew

25    Gallegos is only suspected in the State system.  But
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    we do have a witness that would say that Andrew was a
 2    validated SNM Gang member when he went to federal
 3    prison.
 4              He was prosecuted federally, which is
 5    important in a wiretap case that involved his
 6    brother, Frank Gallegos, who the Court may recall
 7    testimony; Frank Gallegos is an SNM member in the
 8    federal system.  And so he was -- and one of his bad
 9    acts, when we get to bad acts, is actually with his
10    brother as well.  So we will be saying that he is a
11    member.
12              I'm sorry, Your Honor, I was distracted
13    with noise behind me.  We will have testimony that he
14    was --
15              THE COURT:  So your theory is he's an SNM
16    Gang member?
17              MS. ARMIJO:  That is our theory.  And he is
18    suspected.  But, as you know, we only have to prove
19    associate.  But we will be saying he is an SNM Gang
20    member.  And we certainly have plenty of evidence
21    that he was a street gang member, which is a feeder
22    gang to the SNM.  So we have plenty of gang evidence
23    as to Mr. Andrew Gallegos.  And I believe that's it,
24    Your Honor.
25              THE COURT:  Okay.  Thank you, Ms. Armijo.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Before I hear from Ms. Torraco or
 2    Mr. Roberts, again, anybody else want to say anything
 3    on this motion?  Mr. Castle?
 4              MR. CASTLE:  Yes, Your Honor.  Regarding
 5    this concept of Brutonizing, there is really three
 6    kinds of statements, categories of statements, that I
 7    think the Government is going to be seeking to admit.
 8    One is co-conspirators, and we're going to be dealing
 9    with that through the James.
10              The second is admissions by a party
11    opponent.  And I think the Court, in its previous
12    order, read that as what that party is admitting
13    about itself, not necessarily other people.
14              But there is the third category that is the
15    subject of the Government's motion in limine, which
16    is the statements against interests.  If they're not
17    going to agree to categorically Brutonize those
18    statements, there is numerous statements where people
19    say -- 10 years after the murders -- say that one of
20    these defendants admitted to involvement, and he
21    implicated somebody else.  And so if that's the case,
22    then, we're going to need to litigate it -- I mean,
23    statement by statement.  I know it's kind of almost
24    ironic -- it might shock the Court a little bit.  But
25    I think we had kind of a cowabunga moment, when I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   looked at Mr. Beck's motion about that, and he said:
 2   You have to deal with it one by one.  I think that is
 3   what the alternative is going to be.  If we have to
 4   do -- we have to go through it one by one, and we
 5   have --
 6            THE COURT:  Well, like I said, it's been
 7   hard for me to focus today on a motion that just came
 8   rolling in.  But what I think Mr. Beck is saying --
 9   and everybody can tell me if it's not -- with Mr.
10   Perez I made some decisions that, because of him
11   being on this stand, we all witnessed it, which he
12   was saying:  I just said those things to try to
13   protect myself, that's not what I meant.  I did the
14   opposite, it was hard for me for say that was
15   irrational and provides context so that it satisfied
16   all the prongs of the statement against interest, and
17   so said that it couldn't be used against him.
18            What I understand Mr. Beck to be saying
19   here is, Judge, you gave it an individualized look
20   with Mr. Perez; you've got do the same thing here.
21   You can't just throw them all out.  And I think
22   that's fair.  I mean, I don't really know what the
23   statements are the Government is going to try to use.
24   But it seems to me that it worked for Mr. Perez for
25   me to make that call.  And I think it was a good
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   call.  It may work to your advantage, it may work for
 2   the Government's.  I don't know.  I don't know the
 3   statements well enough.  Is he saying more than that?
 4            MR. CASTLE:  I was hoping he was going to
 5   say more than that, Your Honor.  I mean, I think when
 6   it comes to a statement against interests, it has to
 7   be against that person's interests.
 8            THE COURT:  Well, let's see if that's the
 9   case.  Show me --
10            MR. CASTLE:  It's 804(3)(a), it says, "A
11   reasonable person in the declarant's position would
12   have made the statement."
13            THE COURT:  But I don't think -- and you're
14   welcome to educate me on this -- I don't think that's
15   going to be limited as to the declarant.
16            MR. CASTLE:  It says it is not only
17   contrary to the declarant's proprietary or
18   pecuniary --
19            THE COURT:  Well, but once it's established
20   that it's not -- once it's established that it was
21   against the declarant's position, there is nothing
22   that limits its use against every one of the
23   defendants.
24            MR. CASTLE:  I think where the Court is
25   going is the Smalls case.  But at the end of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Smalls case, they remanded it back to see if
 2    redaction was necessary, because portions of these
 3    statements weren't against that particular person's
 4    interests.
 5              But what we're going to have to do -- I'll
 6    let the Court know, because I anticipated that this
 7    is what the Government wanted to do -- we've
 8    subpoenaed these declarants in, and that's what we
 9    had to do with Mr. Perez' statements, and put them
10    through the crucible of examination, to determine all
11    the circumstances surrounding it.
12              You know, I think that, ultimately, if the
13    Court were to allow it, then we're still dealing with
14    the same issue the Court had, which is you're still
15    going to have to do limiting instructions.  I thought
16    that the Court's order said that it would allow it
17    in.
18              THE COURT:  We never had any evidence in
19    the first trial come in under 803 -- 804(b)(3), that
20    I can remember.
21              MR. CASTLE:  There was one statement
22    that -- at least it was in the Court's opinion, the
23    Court's opinion that it issued I think about a
24    week-and-a-half ago.  One of them was listed as
25    804(b)(3).  I don't know the circumstances, but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that's what the Court ordered it was admissible
 2    under.  It may have been only admissible against that
 3    individual, so it might not have been a litigated
 4    statement in any kind of degree.
 5              THE COURT:  Probably if I said -- I don't
 6    remember the statement -- if I said it was 804(b)(3),
 7    it came in against everybody.
 8              MR. CASTLE:  I think that would be
 9    problematic, because of the fact that we don't get
10    to, once again, to cross-examine, et cetera.  I think
11    it has to be limited.  I think that was what the
12    Court was indicating previously that it would issue a
13    limiting instruction to say --
14              THE COURT:  Was it on one of the charts
15    that I said 804(b)(3)?
16              MR. CASTLE:  Yes, it was the chart.
17              THE COURT:  Did I say I'd give a limiting
18    instruction or not on that chart?
19              MR. CASTLE:  I don't believe the Court
20    indicated -- well, I can't remember, Your Honor, to
21    be honest with you.  It was the section where the
22    Court said that the parties hadn't litigated these
23    issues, but I'm making findings on these particular
24    statements.  So I guess they didn't litigate it.
25              THE COURT:  I'll just go back and look at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1   them.  Sometimes the parties can correct me -- or
 2   here it's going to be the Government -- I have
 3   decided a lot more issues that ended up evidence
 4   coming in.  So I can't even tell you now whether that
 5   one came in.  It may have been -- or it may have been
 6   the defendants accepting my ruling.  I don't know
 7   which.  We'll just have to go back and look.
 8           But I guess the answer to your question,
 9   right at the moment, I'm going to have to be
10   convinced that if it comes in on an 804(b)(3), that
11   it doesn't come in against all the defendants.
12           MR. CASTLE:  Well, I think in this Court's
13   previous decisions -- and I'm trying to remember
14   which one -- it discussed the statement against
15   interest exception, and indicated that it wasn't just
16   all or nothing, you know, the statement -- the whole
17   statement doesn't come in necessarily.  It's that
18   portion which is against the declarant's interest.
19           THE COURT:  I think that would be true.
20           MR. CASTLE:  So using the example of Andrew
21   and Joe, I think that Mr. Beck gave, which was, you
22   know, Joe is saying, yeah, I committed this murder,
23   and then, oh, by the way, Andrew helped me, I don't
24   know how that part about, "Oh, Andrew helped me," is
25   against his interests.  In fact, it might be trying
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    to share the blame with somebody else.  And there is

2    case law that talks about that.  Or shifting the

3    blame, or who knows what the basis of it is.

4              So if the Court is considering it, then

5    we're going to have to bring in -- luckily, we've

6    writted these folks, and subpoenaed them.  But we're

7    going to have to litigate those under that

8    circumstance.

9              If the Government is going to make a

10   decision, I would hope that we could find out in the

11   next day if they're going to --

12             THE COURT:  Well, it sounds like they're

13   not.  I think you and I have to assume that the

14   agreement that they made in the first trial they did

15   for the tactical reasons of getting the two juries

16   off the table, and they didn't think they were giving

17   up anything, because it ended up -- I mean, this is

18   the thing that gives me some confidence in what we

19   did in the first trial -- not some, but a lot -- is

20   that we guessed correctly that a lot of the limiting

21   instructions were for evidence that it was very

22   difficult to figure out how it could be used against

23   anybody else.

24             And I guess that's -- this is more a

25   question or a comment more for Ms. Torraco.  I guess
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I'm getting -- kind of convincing myself a little bit
2    that that's the situation here, that we're not going
3    to see a lot of evidence.
4            For example, take the conspiracy that we
5    have with Mr. Burns, which is the one that she's most
6    concerned about.  I'm having a hard time figuring
7    out -- she's entitled to a limiting instruction that
8    you can't use the conspiracies against Mr. Castillo
9    and Mr. Garza, or Mr. Gomez, you can't use those
10   against her client.  She's entitled to that.  But how
11   would they use them anyway?  I mean, they are so far
12   in time, and distant, I don't know how they would use
13   it.
14           MR. CASTLE:  And I understand.  I think --
15   I'm thinking more --
16           THE COURT:  So she's entitled to a limiting
17   instruction, but the evidence -- the evidence is
18   not -- it would be hard for anybody to use it anyway.
19           MR. CASTLE:  I'm thinking more in the
20   context of our counts, where in one count they say
21   there is 10 co-conspirators; another there is 11.
22   And in the context of not co-conspirator statements,
23   but statements against interests, you know, any one
24   of these people make some kind of a statement
25   implicating themselves, and then they decide to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    implicate someone else.  I think there is going to be
2    a problem.  And we're going to have to do a limiting
3    instruction.  I'm not sure why we'd do a limiting
4    instruction when we could excise that out or redact
5    it, and --
6              THE COURT:  Well, I can't force the
7    Government.  I do have -- I can take it into
8    consideration in a motion to sever, but if they don't
9    want to give it up, I can't really force them to give
10   up good evidence.
11             MR. CASTLE:  I actually think the Court
12   can.  Under Smalls, the last part of Smalls says they
13   have to be remanded to see whether there was
14   redaction necessary.
15             THE COURT:  But the Court has to make a
16   good determination, which I will, as to whether it
17   comes in under 804(b)(3).
18             MR. CASTLE:  I understand.
19             THE COURT:  If I make that decision, I'm
20   not sure I run into problems with Smalls; do you?
21   Because it doesn't look to me like the district court
22   did that going into the trial.  It didn't do it.
23   That's the reason it had to get sent back.  I agree
24   with you that it's got be a statement against
25   interests.  Not one sentence in a 302, and the whole
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                    BEAN                                          1-800-669-9492
                    & ASSOCIATES, Inc.              e-mail: info@litsupport.com
                    PROFESSIONAL COURT
                    REPORTING SERVICE

```
 1   302 -- I know 302s aren't coming in, but it doesn't
 2   open it up to everything the declarant said.  So I
 3   agree with you, I've got to scrutinize.  And I think
 4   I demonstrated that I was willing to do that in the
 5   first trial.  Because I did it on those recordings
 6   and everything else.
 7           One thing, looking at these charts, I don't
 8   see an 804(b)(3) statement in the chart.  There is an
 9   803(3) statement.  Now, I've been including state of
10   mind, we had that come up a handful of times.  But
11   I'm not seeing an 804(b)(3).  If you have one, just
12   tell me where it is, and I'll take a second look at
13   it.  But again, I just don't think anything came in
14   under 804(b)(3).  I do think some things came in
15   under 803(3), both orally -- I remember that -- and
16   then it also came up -- I think it was in the chart
17   once.  Same issue.  It's not a different issue, but
18   different exception.
19           Anything else, Mr. Castle?
20           MR. CASTLE:  Well, I think you're right.
21   It was an 804(b)(2).  I apologize.  That was a
22   statement.
23           THE COURT:  Yes, I did do an 804 -- I did
24   let a statement in under 804(b)(2).
25           MR. CASTLE:  Well, Your Honor, I think it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   still an open question whether the statement against
 2   interests needs to be excised under the due process
 3   concerns.  And we've briefed that probably as much as
 4   it can be briefed.  And I think that's where the
 5   Court's concern was finally in Trial 1, when it
 6   thought about doing separate trials.
 7            THE COURT:  Well, I tell you it was just
 8   the reality that I thought I was going to have to
 9   give too many limiting instructions on testimony that
10   was going to come in under 801(d)(2)(A), the party
11   admissions, because of the number of tapes that we
12   were going to have.  And I guess, taking the
13   Government at its word, they're just not going to
14   have that many statements.
15            I think one of the reasons they're
16   reluctant to give up, and do it like the first trial,
17   is because they can't think of any statements they're
18   giving up, but they don't want to give them up.
19   Under the first trial, they knew what they were
20   giving up.  And they were willing to give it up,
21   because they knew they were going to get a limiting
22   instruction, they knew it couldn't be used against
23   anybody, so why not just Brutonize the very few
24   statements that were in there that mentioned somebody
25   else's name or something?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MR. CASTLE:  Your Honor, what
 2    essentially -- how the Government is interpreting the
 3    statements against interest exception is that it
 4    broadens the co-conspirator exception.  You no
 5    longer -- if a co-conspirator makes an admission
 6    outside the context of the conspiracy, now you get it
 7    in under this other rule.
 8              THE COURT:  Like you say, you've read it
 9    closer than I.  If they're doing that, I have no
10    opinion on that.  I'm a blank slate.
11              MR. CASTLE:  I think that rules, the
12    authors of the rules of evidence, when they came up
13    with the co-conspirator exception, limited it to
14    statements within the context of the conspiracy, was
15    explicitly saying statements that co-conspirators
16    made outside the context of the conspiracy should not
17    come in.  Otherwise, they wouldn't have that
18    limitation under 801.
19              And so, I think logically, when we look at
20    that, and look at the constraints of 804(b)(3), where
21    it says it has to be against the declarant's
22    interests, I think the answer might lie in combining
23    those two rules.
24              THE COURT:  Your argument has force.  I'll
25    have to take a look at it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  Okay.

 2              THE COURT:  All right.  Anybody else want

 3    to comment on this before I hear Ms. Torraco?

 4              Ms. Torraco.

 5              MS. TORRACO:  Thank you, Your Honor.

 6              I'm just going to ask that the Court review

 7    the Gambino case, it's actually called Gallo, the

 8    Gallo case, before you make a final decision.

 9    Because I think that that case is rich with facts

10    that are really on point to this case.

11              I do want to bring to the attention of the

12    Court that the State did have jurisdiction over this

13    murder case, regarding Counts 4 and 5, and they did

14    choose to prosecute the case, and that was no billed,

15    as against Andrew and Joe Gallegos.  The --

16              THE COURT:  Was that the one that was no

17    billed, or was that the magistrate judge that

18    determined that -- it wasn't a Grand Jury, I thought

19    there was a magistrate judge or a district judge that

20    held a hearing and determined there was no probable

21    cause.

22              MS. TORRACO:  Right, that's correct.  For a

23    bindover.  And I apologize, but I use the term no

24    bill consistently with he chose not to bind it over.

25    But it was a magistrate judge that heard the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    evidence.  And then after that the DA's office closed

2    the case.  The DA's office had the choice to then

3    take it to the Grand Jury if they thought the

4    magistrate was wrong, and made the improper decision.

5            But I do appreciate the Government making a

6    commitment to give us the statements.  The last thing

7    I think any of us want is a mistrial or reversal on

8    appeal, which, while this Court is trying to be very

9    efficient in trying all of the defendants together,

10   the last thing that we want is a mistrial -- or I'm

11   sorry, a reversal on appeal, because there should

12   have been severance.

13           So I'm still asking for severance.  I'm

14   still asking for you to wait until we have litigated

15   some, if not all of the statements.  But I appreciate

16   the Government making a commitment.  And I'm asking

17   the Court to hold them to that.  We don't know all of

18   the statements that are going to come in.  And the

19   last thing that we want is a statement coming in that

20   can't come in, and that this Court can't give a

21   limiting instruction after it is already brought into

22   evidence.  And so part of this motion to sever comes

23   with it.  What's the evidence?

24           I also want to point out that the

25   Government said there is plenty of evidence against

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    my client, Mr. Andrew Gallegos, that he's a member of

2    SNM.  If that is the case, that supports the argument

3    for severance, because what I think I heard was the

4    Court was concerned that we're going to spend just as

5    much time on one defendant as we would if we try four

6    defendants or five defendants or eight defendants.

7              However, if --

8              THE COURT:  But like Ms. Armijo said, we

9    heard about your murders in the first case.

10             MS. TORRACO:  Say that again.  I'm sorry.

11             THE COURT:  We heard about your murders in

12   the first case.  So we're probably going to hear

13   about those other murders in this case.  I mean,

14   that's the problem with severance.  I and the

15   Government and the juries are going to hear the same

16   evidence in both cases.

17             MS. TORRACO:  Why is that a problem?

18             THE COURT:  Well, why sever then?  What

19   efficiencies do we get out of severing if everybody

20   is going to hear the same evidence twice?

21             MS. TORRACO:  Because the murders in this

22   case that are being litigated, and those are the

23   questions before the Court, are hearing all of

24   evidence as to Mr. Andrew Gallegos is a violation of

25   his due process rights.  I know it's been litigated
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and the severances and the legal arguments have
 2    already been done, but this defendant is in a very
 3    different position than all of the other defendants.
 4    And the Court earlier, with Ms. Armijo, said
 5    something about, Well, I can give a limiting
 6    instruction as to these other murders, that they
 7    can't take those into consideration.  But what's
 8    going to happen is --
 9                THE COURT:  They can't use co-conspirator
10    statements in those other conspiracies.  I'd have to
11    think -- I probably will not give a limiting
12    instruction on other murders.  But it would be
13    co-conspirator statements cannot be used against
14    other defendants outside of the conspiracy.
15                MS. TORRACO:  Yes, Your Honor.  And I'm --
16                THE COURT:  But at the same time, I guess
17    the reason I think that's a minimal, or I can
18    minimize any problem is I don't know how anybody
19    views the evidence of a 2001 murder against somebody
20    being charged with a 2007 murder.
21                MS. TORRACO:  Because there is a common
22    co-defendant, and that's Joe Gallegos.  That's how
23    they're going to use it against Andrew Gallegos,
24    because there is a common co-defendant.  And that's
25    why I'm saying, if the Government is conceding that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    they already have sufficient evidence that he's an

2    SNM member, then there is no harm in trying him

3    separately.  There is harm in trying him with Joe

4    Gallegos, because Joe Gallegos is the common

5    denominator amongst three of the four cases.

6    Especially, when some of those statements are Bruton

7    statements.  And I would direct the Court to

8    statement number 46, which the declarant is Joe

9    Gallegos.

10            And my bigger concern is that when we

11   started the day, the Government conceded that, well,

12   there is other statements, and we're also going to

13   use the statements from Trial 1.  And there is other

14   statements, and, you know, we're just now

15   interviewing people, and they might remember more

16   things.

17            And so the magnitude of the Bruton

18   statements we don't know right now.  And I don't know

19   how many bench conferences -- I was one of the few

20   people that didn't get to watch any of the last

21   trial -- but the number of bench conferences and the

22   confusion to the jury and the potential for mistrial

23   is great.

24            THE COURT:  All right.  Anything else, Ms.

25   Torraco?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. TORRACO:  No.  And I appreciate your

2     listening to me.  Thank you, Your Honor.

3          THE COURT:  All right.  Well, I'm going to

4     orally deny the motion.  I won't pick this up and

5     write an opinion on it or put an order in place.  If

6     you want to pick it up and renew it, you can.  But I

7     think I've plowed this ground a fair amount of times.

8     And probably every time I come back to it, it seems

9     to me it's the right thing to do.

10          So I'm going to deny the motion orally.

11     And because I've got some other things I'm going to

12     need to do, I won't pick it up and try to write an

13     opinion or order on it.  But we won't plan on

14     severing it at the present time.

15          The next motion we have up -- we're almost

16     at 5:30, and I need to let everybody go -- will be

17     Mr. Garcia's joint motion to sever defendants based

18     on practical grounds.  And so, unless somebody wants

19     to try to squeeze it in today, I suggest we take it

20     up tomorrow.

21          Does anybody have anything they'd like for

22     me to start moving to?  Either things that we argued

23     in the fall, getting ready for this trial, anything

24     that Christopher Garcia had that you're joining here?

25     Is there things that we're going to be arguing this

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                         1-800-669-9492
                                              e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    week, the 33 motions that we're arguing this week,

2    that you'd like me to start focusing on?  What do you

3    need sooner, and what do you need the most from me so

4    I make sure I serve you the best?

5              Mr. Castle?

6              MR. CASTLE:  Your Honor, first of all,

7    1743, we would rest on the record.  We have no other

8    record.

9              THE COURT:  Which is that?

10             MR. CASTLE:  That's the motion to sever on

11   practicality grounds.

12             THE COURT:  All right.  You don't have

13   anything further on that?  All right.

14             MR. CASTLE:  I think the defense would

15   prefer that we start up with the James motions

16   tomorrow, and that the Government make their

17   presentation.  And then the defense can decide to

18   cross or not to cross based on that.

19             THE COURT:  Looking forward to the trial is

20   what you need the most is what I did for the

21   defendants in the first case, is that chart, kind of

22   on the James?  Is that what's going to help you the

23   most?

24             MR. CASTLE:  Yes.  I think the

25   time-intensive matters that are left on this document
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is going to be James, motion to dismiss, and the
 2    individual statements that people are going to raise
 3    for Your Honor's consideration.
 4            I think, based upon the majority of the
 5    motion to dismiss was Mr. Garcia's motion.  Mr. Troup
 6    joined.  I think, if we do that last, we get -- well,
 7    based on some of the Court's indications on the
 8    motion to dismiss, that seems like it might be better
 9    as the last motion that we focus on.  Get rid of the
10    vast majority of everything else.
11            THE COURT:  Okay.  So it sounds like the
12    thing I can work on the most that's going to help you
13    is start creating charts, and an opinion on the James
14    statements?
15            MR. CASTLE:  Yes.
16            THE COURT:  Does the Government have any
17    disagreement with that?
18            MS. ARMIJO:  No.
19            THE COURT:  Are all the other defendants
20    sort of in that boat, too?  That would be the most
21    helpful to you, if I kick out a James opinion?
22            MR. BENJAMIN:  James.  And then we're going
23    to work on the bill of particulars, Your Honor.  That
24    would be my order, yes.
25            THE COURT:  All right.  Let me ask the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

231

```
 1   marshals.  Is it 9:00 in the morning or is it 8:30?
 2            A MARSHAL:  We were able to have them up
 3   here by 8:30 this morning, Your Honor.  I believe we
 4   could do that again.  If you would just allow us a
 5   little leeway.
 6            THE COURT:  Sure.  Let's shoot for 8:30.
 7   Does that work?  So we'll see y'all at 8:30.  And
 8   we'll do the best we can to get everybody in here.  I
 9   appreciate the marshals' hard work.  I appreciate
10   y'all's hard work.
11            Y'all have a good evening.  See you at 8:30
12   in the morning.
13            (The Court stood in recess.)
14
15
16
17
18
19
20
21
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

232

1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on March 20, 2018.

15

16

17

18                    _____
                      Jennifer Bean, FAPR, RMR-RDR-CCR
19                    Certified Realtime Reporter
                      United States Court Reporter
20                    NM CCR #94
                      333 Lomas, Northwest
21                    Albuquerque, New Mexico 87102
                      Phone:   (505) 348-2283
22                    Fax:     (505) 843-9492

23

24

25



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com