1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF NEW MEXICO

 3   UNITED STATES OF AMERICA,

 4        Plaintiff,

 5        VS.                    CR. NO. 15-4268 JB

 6   ANGEL DELEON, et al.,

 7        Defendants.

 8

 9        Transcript of Motion Proceedings before
     The Honorable James O. Browning, United States
10   District Judge, Las Cruces, Dona County,
     New Mexico, commencing on March 14, 2018.
11

12   For the Government:  Ms. Maria Armijo; Mr. Matthew
     Beck
13
     For the Trial 2 Defendants: Mr. Brock Benjamin, Ms.
14   Cori Harbour-Valdez; Mr. Patrick Burke; Mr. Jim
     Castle; Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
15   Shattuck; Mr. John Granberg; Mr. Eduardo Solis; Mr.
     Billy Blackburn; Mr. Donovan Roberts; Ms. Lisa
16   Torraco; Angela Arellanes

17
     For the Defendant Lucero (via phone):  Mr. Greg
18   Fallick

19
     For the Defendant Quintana (via phone):  Mr. Phil
20   Sapien

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Good morning
 2    everyone.  I appreciate everybody being back and
 3    ready to go on time.  I think we've got an attorney
 4    for each defendant.  And some of the attorneys are
 5    going to be here a little bit later, so I think we've
 6    got everybody we need to get started.
 7              Let me first go back to Ms. Gutierrez and
 8    Ms. Arellanes' bill of particulars, and then I'll
 9    pull forward to -- I gave some thought, and I'm
10    putting this -- I'm writing it right now -- probably
11    go in a footnote somewhere -- I don't know if it's in
12    the bill of particulars' footnote, or if it's going
13    to go in the chart, the James opinion, but I'll put
14    it -- since I'm thinking about it, I'm going to
15    include it.
16              I thought a lot about what an "associate"
17    means in this context in this case, and whether a
18    romantic relationship with somebody that is connected
19    with the SNM Gang would be sufficient to be an
20    associate.  If that is all the evidence that we have,
21    which I don't have any reason to think it's
22    otherwise, that that is the relationship, would that
23    be enough for aiding and abetting or some other,
24    perhaps, more rigorous standard?  And I think it
25    would.  And here are the reasons that I think a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   romantic relationship with somebody, where you're

2   trying to assist that person, you know that that

3   person is an SNM Gang member, and you know that

4   they're carrying out some activity is going to be

5   sufficient to incur liability.  If you -- you know we

6   get a little enmeshed in our case because we begin to

7   think of associations in fact.  If we think about

8   legal corporations, for example, partnerships and

9   others, and the relationship that accounting firms

10  and lawyers have with those, those are not members of

11  the enterprise, and nobody is suggesting that they

12  are.  But they are, in some cases, associates, in the

13  sense that they are assisting, aiding and abetting

14  the enterprise's criminal activities, racketeering

15  activities.

16          One analogy that we thought of was, for

17  example, hate crimes.  You certainly don't have to be

18  a racist to aid and abet a hate crime.  And so -- I

19  think that I haven't found a case that's on point,

20  but I do think that I'm going to write a footnote

21  which basically says that I think an associate in

22  this situation, as having a romantic relationship

23  with a member of the gang, knows that he's a gang

24  member and knows that he is engaged in gang

25  activities.  If they meet the standards for aiding

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

4

```
1    and abetting, which I think the evidence suggests at
2    the present time they would, then that person could
3    be aiding and abetting a VICAR criminal activity and
4    be held liable.
5            And so I'll write that footnote.  I say
6    that because I think that once I sort of get this
7    thing written down, I'll be unlikely to grant any
8    directed verdict if the evidence comes in the way
9    that it seems to be shaping up, and then -- or
10   setting aside the verdict, once the verdict comes in
11   if it's unfavorable to Ms. Gutierrez.  So I'll be
12   putting that footnote together.  Where it will go or
13   whether it will be part of the opinion on the bill of
14   particulars, I don't know.  I may get it written
15   ahead of when I get to that bill of particulars
16   opinion.  So I may sort of tuck it in somewhere else,
17   since I gave some time yesterday evening and this
18   morning to thinking about that issue.
19           All right.  I think we were at Mr.
20   Gallegos' motion for a bill of particulars, and I
21   think different people were arguing it.  Ms. Torraco,
22   were you up at the time?
23           MS. TORRACO:  Yes, I was, Your Honor, but I
24   have nothing further.
25           THE COURT:  You have nothing further.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          All right.  Does anyone else have anything
 2     they wish to add to the bill of particulars for Mr.
 3     Gallegos from the defendants' side?  I know others
 4     joined in.
 5          All right.  Ms. Armijo -- oh, Mr. Burke.
 6          MR. BURKE:  This will be the first time
 7     that I mention severance again.
 8          THE COURT:  Okay.
 9          MR. BURKE:  And then you probably will hear
10     me say that a number of times.  It seems to me there
11     is a remedy.  Instead of waiting to see if it plays
12     out that there is proper jurisdiction under VICAR for
13     the Adrian Burns homicide, that that count could be
14     severed.  It really has a devastating spillover
15     effect, because it was a bit gruesome, shall we say.
16     And so I think the remedy, rather than waiting to
17     see.  And if Mr. Benjamin is correct regarding what
18     he believes the evidence will be -- because I've not
19     seen him be so adamant about the fact that there
20     won't be the jurisdictional element met -- that if we
21     have this trial and it's not met, and yet the jury
22     hears all of this evidence about the Adrian Burns
23     homicide, it will create a spillover effect and
24     prejudice my client.
25          So I think the remedy, rather than letting
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6

```
 1   it play out and see how it goes would be to sever now
 2   rather than --
 3                THE COURT:  You know, we heard that same
 4   argument about the Marcantel murder in the first
 5   case:  Oh, don't tie us with that because that's just
 6   so sensational.  And, boy, it really didn't play out
 7   that way.  The dog was Javier Molina; it was not the
 8   tail.  That trial was about Javier Molina.  And kind
 9   of the Marcantel and Santistevan was really the tail.
10   And it was not as much of a factor in the trial.
11   Your thoughts on that?  Because I think it's very
12   hard to sometimes assess what's going to be really
13   gruesome and things in a trial.  I mean, literally a
14   man sat in that trial for about 20 straight days and
15   every day somebody would come in and talk about three
16   murders.  So one more tossed in begins to get --
17   what's more prejudicial than anything else?
18                MR. BURKE:  I do have a thought about that
19   and I'll express it for the record.  I believe that,
20   you know, the argument on Marcantel was that it was
21   Billy Cordova's idea.  And then the recordings played
22   out that Pup Baca seemed to have adopted the
23   Marcantel idea.
24                And I actually think it was good lawyering
25   by the prosecutors to emphasize the Molina homicide
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7

```
1    and drill down on that.  So the evidence ended up
2    being heavily weighted toward Molina.  And I think
3    that the prosecutors can say that that was a
4    successful strategy, because they got convictions on
5    Dan Dan Sanchez and Lazy Herrera.  And I could see
6    that same thing happening here, where we'll be
7    talking a lot about the Adrian Burns homicide because
8    it's so gruesome.  And it would be again good
9    strategy by the prosecutors to do that, in my
10   opinion.
11           So I hear what you're saying.  I watched
12   part of that trial.
13           THE COURT:  I know you did.
14           MR. BURKE:  And you're certainly correct in
15   your analysis of the weight of the evidence and how
16   the trial was conducted.  So --
17           THE COURT:  Okay.  All right.  Thank you,
18   Mr. Burke.
19           Anyone else?  Mr. Blackburn?
20           MR. BLACKBURN:  Your Honor, on behalf of
21   Mr. Garcia, I just assume that on most of these, one
22   of the lawyers, unless otherwise designated, speaks
23   for the remainder of those that have already filed
24   and joined in the other severance motions so that we
25   don't have to repeatedly do this, other than I know
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8

```
 1   we will.  And so I join Mr. Burke on behalf of his
 2   argument.
 3           Ours is a little bit different, as it
 4   relates to only Count 3.  I know that they have
 5   Counts 1 and 2, and then we have Count 3, which is
 6   the 2007 murder.  And I understand the Court's
 7   statements from the first trial, but we don't know --
 8   obviously, I think everybody going in thought that
 9   that may play out different.
10           THE COURT:  Yeah, you're right.  I take --
11   Mr. Burke's point is well taken.  We don't know what
12   the strategy is.  But you will recall, y'all will all
13   hear how they didn't want to be tied to that
14   Marcantel.  And it turned out that wasn't the big
15   show.  I mean --
16           MR. BLACKBURN:  But the reality is, they
17   all got convicted.
18           THE COURT:  You don't know what the show is
19   going to be in the next trial.
20           MR. BLACKBURN:  Yeah, but the reality is
21   they all got convicted of those counts.  And the dog
22   in that case, the big person in the case --
23           THE COURT:  You mean they all got convicted
24   on the Javier Molina?
25           MR. BLACKBURN:  Well, on the Marcantel
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    issue.
 2            THE COURT:  It was just Baca in that.
 3            MR. BLACKBURN:  Well, just Baca.  But I
 4    mean, but the emphasis, as you said, became more on
 5    the Javier Molina case.
 6            This is a little bit different, in that the
 7    way I see it -- and I don't know that all of Adrian
 8    Burns' case is, because it's not something that I
 9    focused on, but it just appears from looking at all
10    of the James statements and all that, there is a big
11    concentration on Andrew, Joe, and Shauna.  So that
12    may play out a little bit different than we think.
13    So for those reasons -- and we don't know what's
14    going to happen -- I join, again, as it relates to
15    Mr. Garcia for just the Count 3, because there is no
16    spillover from Count 3 from anybody other than just
17    him and Mr. Troup basically.
18            Thank you, Judge.
19            THE COURT:  Thank you, Mr. Blackburn.
20            Anybody else on the Joe Gallegos motion for
21    bill of particulars before I hear from the
22    Government?
23            All right.  Ms. Armijo.
24            MS. ARMIJO:  Thank you, Your Honor.
25            THE COURT:  I guess we're all waiting with
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   bated breath to see what the evidence is going to be
 2   for tying this murder with -- alleged murder -- with
 3   SNM.
 4           MS. ARMIJO:  Yes, Your Honor.  And I think
 5   that there is a lot of things to consider.  And as
 6   the Court is aware, sitting in the first trial, and
 7   Mr. Benjamin came and watched the trial, as did many
 8   of these defense attorneys, we had several
 9   cooperators testify that:  Once you are an SNM
10   member, you're an SNM member above all else, above
11   your religion, and you're an SNM member in the prison
12   and on the streets.  And I think that's very
13   important.  You know, we heard about that, especially
14   from Frederico Munoz, Billy Cordova, Jacob Armijo.
15   They talked about incidents of violence that they did
16   on the street in the name of the SNM.
17           And one of the important things that you
18   will see in this trial, as well as there was evidence
19   in the last trial, is that you cannot be
20   disrespected.  You just simply cannot be
21   disrespected, because it's a bad reflection on you,
22   it's a bad reflection on the gang, and it's just not
23   allowed.  And we know that you can't be specifically
24   disrespected when it comes from drugs.  We know that
25   from the testimony that we heard in the last trial,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    in reference -- and I'm just using this as a way of
 2    explanation to the Burns murder -- the Vasquez (sic)
 3    murder, that Anthony Baca was convicted on; that all
 4    stems from an SNM member being disrespected related
 5    to drugs.
 6              We heard Mario Rodriguez testify as to the
 7    incident where he -- I think he put soap, or a soda
 8    can in a sock and whomped somebody.  That incident
 9    was related to drugs, and you cannot be disrespected.
10              So, when it comes to the Adrian Burns
11    murder, what we have is we have two SNM Gang
12    members -- and we will have witnesses testify that
13    they are SNM Gang members -- that are out on the
14    street, that are heavily involved in drug activity --
15              THE COURT:  You'll have some who will also
16    say Andrew Gallegos is a gang member.
17              MS. ARMIJO:  We will.  We will have someone
18    say.  In fact, we will have Willie Romero -- this
19    report was disclosed in June of 2017, June 16, 2017,
20    to the defense -- who will say that Andrew Romero
21    (sic) is an SNM Gang member.  And we have others as
22    well.  But I'm specifically going to focus in on his
23    statement, because he was interviewed initially by
24    New Mexico State Police in reference to the Adrian
25    Burns murder.  And he is -- and he, himself, is an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   SNM Gang member.  And he will testify about the

2   relationship between Adrian Burns and the Gallegos

3   brothers.  Adrian Burns was a drug dealer.  And he

4   did -- and in fact, we have a witness who will

5   testify that the victim's girlfriend -- the deceased

6   victim's girlfriend -- who will testify that, in

7   fact, Adrian Burns was the supplier of drugs to the

8   Gallegos brothers, but he basically was cutting them

9   off because he was owed money to (sic) them.  We

10  certainly have plenty of evidence.

11          THE COURT:  He was owed money by the

12  Gallegos brothers?

13          MS. ARMIJO:  Yes.  And, so to speak, as I

14  said before, disrespecting him because he was saying

15  that they owed him money, so to speak.  So we have an

16  issue with a drug supplier who is not speaking

17  favorably about at least one of the Gallegoses.  And

18  the Saturday before they were killed -- and I

19  think -- Adrian was killed, I'm sorry -- Adrian, I

20  believe, was killed on a Monday.  But I believe on a

21  Saturday night before he specifically tells a person

22  that -- let me look at my notes here -- the victim

23  told the person, who is known as Sleepy -- I believe

24  his real name is Dan -- to tell Joe that if he does

25  not have my money he owes me, just have him call me.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    You don't need to be scoring drugs for Joe Gallegos.
 2             Now, we have, by Joe Gallegos' and Andrew
 3    Gallegos' own admission, when they were arrested --
 4    excuse me, Your Honor -- when they were arrested,
 5    putting the victim coming over to their house that
 6    evening and giving him drugs.  So we have admissions.
 7    We have the victim's girlfriend saying that Adrian
 8    was going over to the Gallegos house to give them
 9    drugs.  So we know that this is all drug related.  We
10    know that, and we have plenty of evidence of that
11    from other people.
12             But I think what the Court is most
13    interested in is the tie to the SNM.  And again, I
14    think it's the bigger picture of, you have somebody
15    who is disrespecting -- who is being disrespected by
16    a drug dealer, and that that just can't happen.
17             And, again, we had a lot of testimony about
18    that in the first trial.  I anticipate we will have
19    even more testimony on it, since this is going to be
20    a center issue in this trial as to this murder.  And
21    that is how we are going to tie it in.
22             And in looking at my list here, I can see
23    that at least five witnesses from the previous trial
24    testified about that.
25             And I can go into more detail about the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    defendants' statements, but obviously, I'm sure both
 2    Andrew Gallegos' and Joe Gallegos' attorneys know
 3    their client's statement, know that this is going to
 4    centralize about drugs, and we will be able to tie it
 5    in.
 6            THE COURT:  When we went through the
 7    conspiracies on 4 and 5 with Mr. Castellano, on
 8    yesterday or Monday, I don't remember exactly which
 9    day it was, this was probably -- well, I guess, maybe
10    the -- Jose Gomez might be a thinner conspiracy, but
11    we had Joe and Andrew Gallegos as the named the
12    conspirators in the indictment, and Charlene Baldizan
13    and then Jason Van Veghel.  What are those two
14    people -- are they going to be those two additional
15    co-conspirators?  Are they going to be witnesses in
16    the trial?
17            MS. ARMIJO:  We are hopeful that they are
18    witnesses.  I know for certain Jason will be a
19    witness because he's still in contact.
20            THE COURT:  Tell me Jason's role in this
21    conspiracy.
22            MS. ARMIJO:  So Jason's role in this
23    conspiracy is not so much the murder, but after the
24    fact.  Jason was asleep at the house that the murder
25    took place.  And when he woke up, he knew that there
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   was a ruckus going on, so to speak.
 2            THE COURT:  This would have been at the
 3   Gallegos house?
 4            MS. ARMIJO:  Yes.  He knew there was a
 5   ruckus occurring.  And then, later on, he was ordered
 6   by Joe Gallegos to clean up the house, to remove part
 7   of the carpet, and I believe clean up the gas tank, I
 8   believe is what it was.  And so his actions are
 9   actually more after the murder, and what he was
10   ordered to do as far as assist in cleaning up after
11   the murder and getting rid of evidence.
12            THE COURT:  What is the Government's theory
13   going to be as to how he was killed?  Was he killed
14   in the home?  Was he shot in the home?
15            MS. ARMIJO:  I believe he was beaten up in
16   the home, is our theory, is that he was beaten up,
17   and then he was taken out to the scene and --
18            THE COURT:  Shot and burned.
19            MS. ARMIJO:  -- and shot and burned there,
20   yes.
21            THE COURT:  Okay.  Is Van Veghel, is he a
22   gang member?  Are you alleging that he's an SNM Gang
23   member?
24            MS. ARMIJO:  I don't believe he's a gang
25   member.  If anything, he would be an associate
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  because he was associating with them, but I don't
 2  believe he is a documented SNM Gang member.
 3           THE COURT:  You're just saying he's part of
 4  this conspiracy?
 5           MS. ARMIJO:  Right.  I do believe he is.
 6           THE COURT:  Did he, in fact, help clean up
 7  the apartment (sic)?
 8           MS. ARMIJO:  Yes, he did.  He did.
 9           THE COURT:  And then the other person that
10  was mentioned was this Charlene Baldizan.  What was
11  her role in the conspiracy?
12           MS. ARMIJO:  If I may.
13           THE COURT:  You may.
14           MS. ARMIJO:  I don't want to give the Court
15  too much information about Charlene, because I don't
16  want to misstate exactly what she did.  But, again,
17  it would be something not -- the real conspiracy to
18  murder here is going to be between Joe and Andrew
19  Gallegos; that's going to be the real conspiracy.
20  And anybody else is just going to be side people, not
21  really involved in the murder, per se.  We're not
22  trying to say that this is a big one like all the
23  other ones, or like the Molina one that had nine, ten
24  people involved in it.  It's not.  It's limited to
25  two SNM Gang members, who are -- also started out as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   street gang members, who are very well known, and
 2   leaders, not only for SNM, once they get out of the
 3   prison and join SNM, but also for being out on the
 4   streets for their gang.  They are very well
 5   connected.
 6              THE COURT:  All right.  So when we have the
 7   jury here, and the evidence is coming in, there is
 8   not going to be sort of -- I'm likening this to the
 9   Marcantel and Santistevan counts -- there is not
10   going to be a Baca, or somebody that's higher up in
11   the SNM Gang, and we're not going to see any orders
12   of hits or any sort of paperwork or anything like
13   that?  What you're going to be relying on is
14   basically that, because these two men, in your
15   account, are SNM members, because they were
16   disrespected by a drug dealer, this had to be an SNM
17   hit because they were being disrespected?  Is that
18   pretty much the case?
19              MS. ARMIJO:  That's pretty much the case.
20   And Mr. Beck reminded me who Charlene was.  I'm
21   sorry, Your Honor.  She was with them at the hotel.
22   She's in reference to -- again, another after the
23   fact person.
24              THE COURT:  Where they were arrested?
25              MS. ARMIJO:  Yes.  So that's another after
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    the fact person.
2            But that's exactly right, Your Honor.  And
3    as I said, I don't think that this is unusual,
4    because we had testimony about these sort of
5    incidents on the street before:  You can't be
6    disrespected because we'll take things into our own
7    hands.  And I think Jake Armijo testified about an
8    incident at a party.  And so we know that it
9    continuously happens, both on the street and out, and
10   it will show again the continuation of the gang
11   activity by the Gallegoses.
12           THE COURT:  I don't have a sense that
13   Mr. Andrew Gallegos is a high ranking SNM Gang
14   member, and you're not going to try to show that;
15   correct?
16           MS. ARMIJO:  I don't think he's a high
17   ranking SNM member, but I do think --
18           THE COURT:  You're going to have to work to
19   prove that he's a gang member, right?
20           MS. ARMIJO:  I don't think we're going to
21   work too hard because we have several people that
22   will say he was.
23           THE COURT:  But he's a soldier, as they
24   said in the first one; that would be more where you
25   would place him?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. ARMIJO:  I will, with the exception

2     of -- I will say that we do have a cooperating source

3     that has told us that he has ordered several murders

4     that this source committed at the direction of Andrew

5     Gallegos.

6          THE COURT:  Now, what is your -- what

7     picture are you going to try to paint to the jury of

8     Joe Gallegos?  Given that he kind of pops up in many

9     of the alleged crimes we're going to be trying?

10    What's your picture of him and his place in the

11    organization?

12         MS. ARMIJO:  He would be more of -- he's

13    definitely higher than Andrew.  He's more leaning

14    towards a leader, more of an active role.  And I

15    certainly think that -- in this case I think you'll

16    see more with the Gallegos of the relationship

17    between feeder gangs and the SNM.  Their street gang

18    is one of the feeder gangs for SNM.  And they are

19    certainly -- and Joe Gallegos is certainly a big

20    leader of his street gang, and so that gives him a

21    lot of pull and power when it comes to his position

22    with the SNM.

23         THE COURT:  So he continued to be a member

24    of his street gang and be a member of SNM?

25         MS. ARMIJO:  Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

20

```
1           THE COURT:  Okay.  Now, I saw for the first
2   time in some of the materials I read for this trial
3   the word "captain" and "lieutenant."  I had not seen
4   those in connection with the SNM.  We had pod
5   leaders, and we had Mr. Baca, which, you know, they
6   called the ultimate leader, and things like that.
7   What are captains and lieutenants in the SNM
8   organization?
9           MS. ARMIJO:  Well, I think we did have some
10  testimony as far as Mr. Baca's -- you may recall the
11  "rayos" testimony.  And we had at least one or two
12  documents.  I know that Mario Rodriguez drew it out.
13  And remember there were lieutenants and captains.
14  And I'd have to look at that document specifically to
15  see which one is -- I'm assuming that the captain is
16  over the lieutenant.  But I think the lieutenant was
17  possibly in custody, a supervisor, and the captains
18  may have been out on the street.  So we did see some
19  of that testimony, because that was Mr. Baca's plan
20  that he wanted to set in motion.  And there was a lot
21  of talk about that.
22          And so I do think that -- this case, there
23  will be, because of the nature of the charges, the
24  Adrian Burns and the Jose Gomez, we're going to see
25  more of a mix between both prison activity and
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

21

```
 1    on-the-street activity.  And that's why we anticipate
 2    calling many more cooperators.  Not just ones that
 3    have been institutionalized, but a lot of them who
 4    have been out on the streets as well to talk about
 5    that.
 6              Like I said, we saw some picture of it with
 7    Billy Cordova; Frederico was out for a while, and
 8    with Jacob Armijo.  But I think we'll see more of
 9    that sort of picture in this trial, the relationship
10    between the streets --
11              THE COURT:  The difference we have here is
12    that the activity that was taking place was largely
13    inside the prison context; whereas, this Burns murder
14    is almost entirely outside of the prison context?
15              MS. ARMIJO:  It is outside the prison
16    context.  But it is still, as I explained, our
17    argument will be -- and then it continues, especially
18    as it pertains to Mr. Joe Gallegos -- it continues
19    even past that into 2015 and '16, and continues.  And
20    so I do agree, Your Honor, that murder is not one --
21    it's going to be different, but it's not going to be
22    so different from the testimony that we heard about
23    their activities out on the street.
24              THE COURT:  You referred to the Velasquez
25    murder.  And I took some time in the first trial
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

22

```
 1   before I made a ruling in favor of -- to allow
 2   evidence of the Velasquez murder in.  And I'll have
 3   to rethink all the evidence that was there, and why I
 4   allowed that.
 5           But I do recall -- and I expect Mr.
 6   Benjamin to get up here in a minute and say the
 7   same -- that we're probably going to hear some
 8   testimony that any prison gang, or any gang, is not
 9   going to want to be disrespected, and that you can't
10   cheat or dishonor any gang or prison gang without
11   suffering some consequences.  And so, again -- and in
12   fact, we had testimony you just couldn't do that in
13   the prison context at all without -- so what is it
14   that's going to take it from that sort of rule of
15   honor in the prison context or in the gang context,
16   particularly in a case where you're going to say that
17   Joe Gallegos was still a member of another gang?  How
18   are you going to prove beyond a reasonable doubt that
19   this is a SNM Gang-related activity?
20           MS. ARMIJO:  Well, I think because,
21   although he was still a member of the other gang, I
22   think that -- again, going back to the testimony, is
23   that when you become an SNM member, that goes above
24   God and family; that's going to be your primary
25   thing.  But I think a lot of the street gang members
```

119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    in the area of Socorro still looked up to him as an
 2    East Side Gang member.  That is what I was talking
 3    about as far as him still having influence on it.
 4    And, obviously, it's part of his gang heritage, so to
 5    speak.  But I think that the testimony would be that
 6    SNM comes above everything else and above all else.
 7    And that would be what we were targeting.  And I
 8    think the difference between just a regular -- you
 9    can't be disrespected in prison, how this is
10    different is:  With SNM, you can't be disrespected on
11    the street.  This is outside the prison.  And I think
12    that's where this comes in, and it's different from
13    maybe other prison gangs or other prison settings.
14    Because I think there was even some testimony, well,
15    just in general, you can't be disrespected sometimes
16    in prison.  But this is different.  This is a
17    reflection upon who he is and his standing.  "He"
18    being Joe Gallegos.  And who he is in the community,
19    the gang community on the street, and known in the
20    community for SNM.  And so I think it rises above
21    that.  I think that SNM, in and of itself, with its
22    wanting to be in control of in the prisons and
23    reaching out on the streets, and that's why this is
24    different, and this can be tied in, because of their
25    power and of what they expect of you once you become
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    a member, to put it before all else.
 2              THE COURT:  With Mr. Baca, he seemed to be
 3    so high up in the organization, I liken him a little
 4    bit to sometime -- I once had a case with the mayor,
 5    for example, of Albuquerque.  How does a mayor act on
 6    his own and not as a mayor?  They are so high up,
 7    they just -- anything they do is going to be seen as
 8    the mayor, the president, or something like that.  So
 9    Mr. Baca was a little bit like that.  Do we really
10    have that sort of picture, though, of Joe Gallegos?
11    Is he so integral to the SNM that he could not have a
12    private dispute or private disrespect on the side
13    that he needed to take care of, that is not the same
14    as Mr. Baca, who probably thinks every day, anything
15    I do is going to somehow reflect upon the SNM Gang?
16              MS. ARMIJO:  I think the testimony will be,
17    and has been, and will continue to be, that it
18    doesn't matter if you're a soldier or not.  I mean, I
19    think we heard from the likes of soldiers in this
20    last trial that said everything reflects upon them,
21    no matter what, and no matter where you are.  It
22    doesn't matter if you're a little soldier, or you
23    know, even for that matter, if you're a prospect
24    trying to get in.  But certainly, once you are in,
25    and you're a soldier, or if you're the Anthony Baca
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  or the Angel Munoz.  It doesn't matter who you are in

2  the gang, because you are going to be looked upon as

3  an SNM Gang member in everything that you do.  And I

4  think we heard that testimony, and we'll hear it even

5  more in this case.  It doesn't matter who you are,

6  your position, you are one and the same when you're

7  an SNM Gang member.

8       THE COURT:  A couple of questions that

9  relate particularly to the bill of particulars:  Do

10  you have any other evidence that you are going to

11  introduce on this prong of your proof that Mr.

12  Benjamin focused on, that you have not mentioned in

13  either the James hearing here today, or has been

14  disclosed in discovery?  Is there anything else that

15  the Government has that it's going to introduce or

16  advance in the trial, other than this falls into

17  those three categories?

18       MS. ARMIJO:  There isn't anything that

19  we're hiding back or purposely holding back, saying

20  we're going to wait to disclose this.  I think that

21  everything has been disclosed, like I mentioned.  I

22  mentioned specifically a lot of people by name.  And

23  I know that people -- I mean, witnesses have -- lists

24  have gone out.  I checked to make certain that, like

25  for instance, the Willie Romero thing was disclosed

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   last year, almost a year ago; I guess nine months
 2   ago.  So I believe that everything has been
 3   disclosed.
 4           Certainly, as we prepare, as we did in the
 5   last trial, as the Court is aware, when we sat down
 6   with witnesses, when there was anything new, we were
 7   quick to even write a letter to the defense attorneys
 8   to notify them, even before the 302s came out,
 9   because we wanted the information -- any new
10   information to get out as soon as possible.  I
11   anticipate that that could happen in this case.  But
12   we would certainly bring it to anybody's -- the
13   defense attorneys' attention right away, and we would
14   deal with it in court, like we did before, which even
15   caused us a couple of times to re-call witnesses, as
16   you may recall.
17           THE COURT:  But right at the moment,
18   everything that you intend to introduce on this
19   prong, which I understand you're going to try to
20   establish that the purpose of this murder was for the
21   maintaining or the enhancing of the status of Joe
22   Gallegos and Andrew Gallegos in the SNM organization;
23   correct?
24           MS. ARMIJO:  Correct, Your Honor.
25           THE COURT:  And that's the only prong:  No
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    pecuniary prong?  It's just the enhancement?

 2            MS. ARMIJO:  No, it is just the

 3    enhancement.  There is no pecuniary.

 4            THE COURT:  They have all the evidence now

 5    that they're going to see at trial on that prong.

 6            MS. ARMIJO:  They do have the evidence.  I

 7    mean, I think that they may not have the testimony

 8    from the prior trial yet.  We received some

 9    transcripts that they have ordered.  But certainly,

10    when that comes in, anything that they missed,

11    certainly in relationship to what I've previously

12    been discussing, will be there as well.

13            THE COURT:  All right.  Anything else that

14    you want to say in response to this request for bill

15    of particulars?

16            MS. ARMIJO:  No, Your Honor.

17            THE COURT:  Stand right there, if you don't

18    mind.

19            Let me ask Mr. Benjamin:  Mr. Benjamin,

20    direct your questions to the Court, but if you could

21    ask Ms. Armijo other questions about her evidence and

22    her case and her theory on the bill of particulars,

23    what would you ask?

24            MR. BENJAMIN:  Your Honor, Ms. Armijo

25    represented to the Court on May 10th, 2017, that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

28

```
 1    there was going to be specific testimony that Adrian
 2    Burns (sic) was disrespected.  I do not have that
 3    information.
 4              MS. ARMIJO:  Adrian Burns was disrespected?
 5              MR. BENJAMIN:  I'm sorry, Joe Gallegos was
 6    disrespected by Adrian Burns.
 7              I will cover what she just related about
 8    Willie Romero, and I'm intending to introduce the
 9    report of investigation by Agent Acee that discusses
10    Willie Romero.  But I don't -- I am eight, nine
11    months later, and I still do not have the information
12    that she's --
13              THE COURT:  All right.  Well, let me ask
14    Ms. Armijo:  Do you have any specific evidence that
15    Joe Gallegos was disrespected by Adrian Burns?  Is
16    that going to be an inference that they're going to
17    draw from the drug transactions, or is there any
18    specific evidence that that occurred?
19              MS. ARMIJO:  Well, your Honor, I believe
20    that, in addition to being an inference -- I think it
21    can be an heavy inference -- I think that they need
22    to look at the statements of Amber Sutton, who I
23    talked about previously, who indicated that she was
24    aware that the Gallegos' owed, and so --
25              THE COURT:  This is the girlfriend of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Adrian Burns?
 2              MS. ARMIJO:  Yes.
 3              THE COURT:  What's her name again?
 4              MS. ARMIJO:  Amber Sutton.  And then Dan --
 5    it begins with an O --
 6              MR. BENJAMIN:  Orndorff.
 7              MS. ARMIJO:  There you go, Orndorff.
 8              THE COURT:  And who is this?
 9              MS. ARMIJO:  I always want to say Olaf.
10         He is another person that Adrian Burns sold
11    drugs to, who was familiar with the Gallegos brothers
12    as well.
13              THE COURT:  So other than two people saying
14    that Adrian Burns was saying that Gallegos brothers
15    owed him money, there is no -- there is nothing else
16    in Adrian Burns -- in him -- also saying he's going
17    to cut them off, those two things are the only things
18    you have Mr. Burns saying or doing that you're going
19    to be able to argue is disrespectful of Joe and
20    Andrew Gallegos?
21              MS. ARMIJO:  I think the three primary
22    witnesses for that are Amber Sutton, Dan Orndorff,
23    and Willie Romero, would be the primary witnesses for
24    that.
25              THE COURT:  But that is the evidence, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   the Gallegoses were not paying for their drugs, and
 2   so there was a debt, and he was going to cut them
 3   off; that is the disrespect?
 4          MS. ARMIJO:  That is.  And you also have to
 5   remember -- there is one other aspect --
 6          THE COURT:  Nothing else?  They didn't say
 7   something about their mother or something like that?
 8   Those are the two things that you're going to ask the
 9   jury to draw the indifference of the disrespect?
10          MS. ARMIJO:  Yes, but there is also one
11   other thing, Your Honor.  As you recall, the SNM also
12   extorts people on the streets.  And there is evidence
13   that after -- that the jury will hear testimony,
14   again, that the Gallegoses, after -- we believe
15   Adrian Burns was already killed -- were at an
16   Allsup's, and they were in a very good mood, and they
17   were passing out money and drugs, that specifically
18   one witness will say is the type of drugs, the
19   packaging as -- and, you know, Mr. Benjamin referred
20   to it -- it's specific packaging of drugs that Adrian
21   Burns sold.  And they were there passing out drugs,
22   so to speak, and money to people.
23          And so there is also another inference that
24   they extorted and killed Adrian Burns, which is also
25   SNM activity.  So there is also that as well.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

31

```
1    there is evidence --
2           THE COURT:  That's separate from the
3    disrespect theory?
4           MS. ARMIJO:  That's separate from the
5    disrespect.  But it's with the disrespect.  It's also
6    part of extorting, which is SNM.
7           THE COURT:  Help me out with the extortion.
8    I mean, if they've already killed him, how is them
9    taking his goods, his money or his drugs, and giving
10   it to other people going to be extortion?
11          MS. ARMIJO:  Well, it could be extortion,
12   that they took the goods before they killed him, and
13   they killed him as a witness to their extortion.
14   They didn't want him to go around telling people that
15   they extorted him.
16          THE COURT:  Okay.
17          MS. ARMIJO:  So there is that aspect of it
18   as well.  And I think there is plenty in the
19   discovery as to that.
20          THE COURT:  But you don't have any
21   statements from Mr. Burns that you're going to
22   introduce, other than the two about cutting him off,
23   cutting off drugs to the Gallegoses, and that they
24   owed a debt?  Those are the only two statements that
25   you'll be --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           MS. ARMIJO:  In connection -- as to Adrian
 2   Burns, no.  But as -- hopefully, we'll hear later
 3   today, the Gallegoses both gave statements -- there
 4   is a motion to suppress as to Joe Gallegos with his
 5   statement -- they both gave statements that tie their
 6   relationship with Adrian Burns to drugs.
 7           We also have testimony about an incident
 8   after the murder with Joe Gallegos and Willie Romero,
 9   because Willie Romero, the SNM Gang member, was close
10   friends with Adrian Burns.  And so Willie Romero
11   wanted to kill Joe Gallegos over the murder of his
12   friend, and so there was an incident between the two
13   of them after the murder, where they kind of squared
14   off with each other.
15           THE COURT:  All right.  Mr. Benjamin, do
16   you have other questions -- again directed to the
17   Court -- but what else would you ask Ms. Armijo about
18   her evidence on this prong?
19           MR. BENJAMIN:  The Court asked this -- I
20   think I'll start with the easy one, Your Honor.  The
21   Court asked this question a second ago:  There are no
22   other co-conspirator statements or statements by the
23   Gallegos brothers that have not been produced?
24           THE COURT:  Is that correct, Ms. Armijo?
25           MS. ARMIJO:  I believe everything has been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    disclosed.  I don't -- the only other thing I can

2    think of, which we'll get later in discovery, if

3    there is anything that is missed like in a note, but

4    I think we're agreeing to turn over agents' notes --

5    if there is anything in there that I'm unaware of,

6    but certainly we've agreed to turn over agent notes,

7    and everything else, and Jencks.

8              There isn't anything off the top of my head

9    that I'm holding back, Your Honor.  I'm trying to

10   give the Court and defense a picture of what the

11   evidence is.  And I would not be surprised, as we

12   start talking, once we're out of court, and we're

13   able to prepare the witnesses for the next trial,

14   things coming up, and certainly we will make the

15   parties aware of any additional statements.

16             THE COURT:  Mr. Benjamin?

17             MR. BENJAMIN:  Yes, Your Honor.  And I

18   would -- I'll move to admit this in a bit, but this

19   is a supplemental report by New Mexico State Police

20   Agent Janice Madrid; it's Bates stamped 23734.  And

21   this is what I referred to in the James hearing, and

22   what I believe Ms. Armijo was quoting last year, Your

23   Honor.  So I would ask who the one member -- and I'm

24   quoting -- "the one member who is known to the FBI

25   and law enforcement officials that provided a

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   statement indicating Joe Gallegos told them they
 2   killed Adrian Burns over the drug trade, money, and
 3   because Mr. Burns disrespected them."  And I don't
 4   know who that person is.  That person has not been
 5   produced, or statements from.  And I don't know who
 6   that is, Your Honor.
 7             THE COURT:  And who is that person?
 8             MS. ARMIJO:  And, Your Honor, I would have
 9   to look at that to see what it is.  I don't have
10   that.
11             THE COURT:  Why don't you go back there and
12   look at it and see if you're able to identify that
13   person.
14             MR. BENJAMIN:  It's Janice Madrid's report.
15   Here's the one --
16             MS. ARMIJO:  If I am correct, Your Honor,
17   and I would want -- and we can certainly -- I can
18   certainly -- if we're going to be here for a few
19   days -- check into this, because I don't want to
20   speak for Agent Madrid.  As I'm looking at this right
21   now, I think we spoke to a few people that day, if
22   I'm recalling the right meeting.  And I will
23   certainly look at this and I will provide that
24   information to defense counsel, to Mr. Benjamin,
25   after speaking to her.  I think that day we spoke to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Eric Duran and maybe Tomas Clark.  I know that there
2    was a meeting in August of 2015, if it's the meeting
3    that I was present at, where we debriefed those two
4    people.  And so that's the only thing I can think of
5    as far as that.
6              But what I was relying on for this
7    particular motion was what people directly related to
8    the Gallegoses have said; not second or third hand.
9    And so --
10             THE COURT:  You're not going to be relying
11   on that, but you don't have any problem providing the
12   name after you check out --
13             MS. ARMIJO:  Correct, Your Honor.  And like
14   I said, I think that I have no problem providing the
15   name.  And if, in fact, there was a direct statement
16   that I was unaware of in reference to this, obviously
17   we would use it.  But as I stand here right now, what
18   we're relying on is what I've previously told the
19   Court, in addition to anything else that has been
20   disclosed.  But I have no problem revealing who this
21   person is and reaching out to Agent Madrid.  I have
22   her phone number, and I can reach out to her, Your
23   Honor.
24             THE COURT:  She's with State Police?
25             MS. ARMIJO:  She's a state police officer.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    So -- and this is a State Police report.

 2              THE COURT:  That's a State Police report.

 3              MS. ARMIJO:  It is.  But I believe she was

 4    at a debrief that day.  And like I said, if it is the

 5    right one -- and I don't want to commit to it because

 6    I don't have anything in front of me -- I just

 7    remember being at a meeting in August of 2015, around

 8    that time period, up in Albuquerque, where we

 9    debriefed a couple of people.

10              THE COURT:  Eric Duran -- who else did you

11    say?

12              MS. ARMIJO:  Tomas Clark was the other

13    person.  And I don't know if we had -- I can't recall

14    off the top of my head if there was anybody else.  I

15    remember those two in particular.

16              I have no problem reaching out to the

17    agent, and specifically providing her with this, and

18    providing that information, Your Honor.

19              THE COURT:  All right.  Mr. Benjamin, what

20    else would you ask?

21              MR. BENJAMIN:  I have a tendency to put my

22    foot in my mouth, Your Honor, and I've done that in

23    front of this Court.  My concern is that I have asked

24    why that name is not known?  That report was

25    referenced, and I cited the transcript from Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Armijo, in May of 2010.  I believe that this person

2    was either -- I think this person was Roy Paul

3    Martinez, and this was part of the statement that was

4    withdrawn, and essentially, "clarified," using

5    Special Agent Acee's words.  Because Agent Madrid is

6    referring to -- she's making a report for the New

7    Mexico State Police.  But she's referring to a

8    meeting and an investigation and a source that was

9    provided by Special Agent Acee.  And I would ask if

10   she could review those notes from that source, the

11   notes from that meeting, and the -- what I believe is

12   Brady material from that person who is not going to

13   be used.  Because I think something has popped up

14   that has shown that that person is not credible,

15   which is why they've fallen off the witness list.

16   And I would ask --

17            THE COURT:  Well, whose notes would it be?

18   Would it be Tapia's notes, if they exist?

19            MR. BENJAMIN:  I believe -- Agent Madrid

20   makes me believe it would be Special Agent Acee or an

21   FBI individual that interviewed them.

22            THE COURT:  Well, you're going to get --

23   Ms. Armijo has just said, if Mr. Acee was in the

24   meeting -- is he indicated as being in the meeting?

25            MR. BENJAMIN:  Agent Madrid makes me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    believe that he was there.
 2            THE COURT:  Well, you're going to get the
 3    notes.  There may not be a 302, and there may not be
 4    notes.  But you're going to get them, if they exist.
 5            MR. BENJAMIN:  Respectfully, Your Honor,
 6    though, this was information that was raised by Team
 7    Gallegos in May of 2017.  And I'm going to get those
 8    notes in an insufficient amount of time to put to use
 9    any Brady material.
10            MS. ARMIJO:  I can tell the Court it's not
11    Roy Martinez, because Roy Martinez, in August of
12    2015, was a target of ours.  We did not speak to Roy
13    -- "we" being the prosecution, law enforcement, did
14    not speak to Roy Martinez until he was indicted in
15    this case, arrested December 3.  And I think we spoke
16    to him mid December of 2015.  So I can tell the
17    Court --
18            THE COURT:  He's off the table.
19            MS. ARMIJO:  -- he's off the table.  It was
20    not him.  I can tell the Court that.
21            MR. BENJAMIN:  I don't believe it's Special
22    Agent Acee, but there is a report that Roy Martinez
23    talked to the FBI on August 5th, 2015.  That is the
24    report that is retracted.  That is the report that
25    is -- I'm sorry, not retracted -- "clarified" by
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Special Agent Acee.

2           And that is -- Your Honor, I would ask how

3   I get out of the circle that I'm in that I keep

4   coming back to a clarified, retracted report, as the

5   only source of the disrespect and the information

6   that flowed from it.  I don't know how to get out of

7   that circle.

8           THE COURT:  I guess what I'm hearing, how

9   you get out of the circle is that the Government is

10  not going to pursue those two avenues at trial.

11          MR. BENJAMIN:  And the defense attorney in

12  me wants to ask why?

13          THE COURT:  Well, I guess that's not really

14  part of a bill of particulars.

15          MR. BENJAMIN:  Your Honor --

16          THE COURT:  There may be another way to ask

17  it, and it may come up in a different way.  But it

18  seems to me that, if the Government has given you all

19  these things, and they're willing to give you some

20  more things this morning, that you may get a chance

21  with Mr. Acee, or somebody, to ask them why they

22  withdraw those theories.  But that would not be

23  probably part of a bill of particulars.

24          MR. BENJAMIN:  I stand corrected.  And the

25  Court is correct on that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        THE COURT:  So what else would you ask, if

2   you would like to ask, through me, questions of Ms.

3   Armijo about what evidence they're going to -- or

4   theories they're going to use against your -- against

5   Mr. Gallegos?

6        MR. BENJAMIN:  And am I correct in

7   understanding that a heroin user, who the testimony

8   that -- I don't have the testimony saying that he was

9   going to be cut off; I have the testimony saying they

10  believe he was cut off, because -- I will move to

11  admit this as well, Your Honor, but Romero, Willie

12  Romero, believes the Gallegos brothers were killed or

13  killed Burns over dope.  That's Willie Romero

14  providing his gut belief.  There is nothing that

15  Willie Romero is purported to have provided that says

16  he believes that was SNM related.

17       And I think -- am I missing anything

18  beside -- the question the Court asked, and the

19  question I should answer is:  If the indictment was

20  going to be changed by a bill of particulars that Joe

21  Lawrence Gallegos disrespected an individual, or was

22  disrespected by Adrian Burns over a suspected

23  personal drug debt?  And I think what I'm missing is

24  I'm supposed to take that personal drug debt, if it

25  existed, and turn that into a gang drug debt.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  Let me do this:  Let me see if
 2    I can put the question in my own words, and see if it
 3    works for you.  Read me again what you're saying Mr.
 4    Romero says that you think may leave some gap here.
 5              MR. BENJAMIN:  There's multiple things,
 6    Your Honor, I will simply limit myself to two.
 7    "After Burns was killed" -- and both come from Romero
 8    -- "Romero heard that Joe Lawrence Gallegos wanted to
 9    kill Romero."  And then "Romero believes the Gallegos
10    brothers killed Burns over dope."  And those --
11              THE COURT:  Well, let me see how I do for
12    you.  Earlier you said that -- and this is what I
13    heard -- that you had evidence that there was a drug
14    debt.  So rather than it just being "over dope," if
15    you had evidence that it was a drug debt, that the
16    Gallegoses were not paying all their bills; and, B,
17    Mr. Burns was going to cut off the Gallegos, where
18    does the evidence for those two prongs come from?
19    Start with the drug debt:  Who is going to prove
20    that, or what's the evidence going to be?
21              MS. ARMIJO:  I think the drug debt was the
22    statement that I testified -- that I stated earlier
23    that was in reference to Amber Sutton, where two days
24    before he was killed, Adrian Burns told Sleepy that
25    he did not have to be buying -- "Tell Joe if he does
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    not have my money he owes me, just have him call me.
 2    Don't you score for him."  So that's the drug debt.
 3              THE COURT:  Okay.  Anything other than the
 4    girlfriend?  Or is that the main point of the --
 5              MS. ARMIJO:  I mean, I think that's the
 6    main point.
 7              THE COURT:  She's the primary or the only
 8    evidence of debt?
 9              MS. ARMIJO:  Well, the girlfriend, and also
10    Sleepy, Dan Orndorff.
11              THE COURT:  So that's your evidence on the
12    debt.
13              What is your evidence of cutting off the
14    Gallegos brothers?
15              MS. ARMIJO:  Well, I think it would go with
16    the fact that I think that we know that on the night
17    of the incident he was -- he went over there.  I
18    don't know, necessarily, that we will have specific
19    statement that he was cutting off.  I would have to
20    talk to Ms. Sutton about that.  But I think that the
21    inference can certainly be made --
22              THE COURT:  So right at the moment we can
23    drop off the "cut off the Gallegos brothers."  We're
24    focusing on there was a drug debt?
25              MS. ARMIJO:  There was a drug debt.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   don't know that I want to say we want to cut it off,
 2   but --
 3              THE COURT:  Right now you don't have any
 4   evidence?
 5              MS. ARMIJO:  Right now, I'm not telling the
 6   Court of one specific person that will say that.  As
 7   we prepare, certainly, and I speak to these people in
 8   more detail, certainly, we can.  But --
 9              THE COURT:  All right.  Was that helpful?
10   I mean, it's not that they do have two witnesses that
11   are going to say there is a drug debt.  So instead of
12   it just being over a dope deal or dope business,
13   that's the two evidence.  What else are you looking
14   for?
15              MR. BENJAMIN:  Something that takes this
16   out of the realm of cutting off a heroin individual
17   who is relying on me personally.
18              THE COURT:  Now, do you have -- is there
19   anything in the evidence that suggests that that's
20   what's going on?  That may be what your client is
21   telling you, and it may be also what your theory is
22   going to be.  But since that's not the Government's
23   evidence of the case --
24              MR. BENJAMIN:  Under the Government's
25   evidence, Your Honor, Amber Sutton -- who I believe
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Judge Naranjo referred to as "uncredible," brought
 2    this up as a fact issue at trial.
 3              THE COURT:  What was the Judge's name
 4    again?
 5              MR. BENJAMIN:  Judge Jim Naranjo.  And I
 6    bring that up later in my motion to dismiss for
 7    delay, Your Honor.
 8              But aside from her testifying, taking that
 9    she's going to say, face value, and be credible
10    saying that Adrian was upset and went over to Joe's
11    house to cut him off and limit him, I don't know how
12    that argument that precipitates itself under the
13    Government's case, where he's beaten at the house and
14    taken out into the bosque and killed, takes anything
15    other than a straight state court murder, where I
16    walk into your house, and I say:  If you don't pay
17    me, I'm going to cut off the drugs and take away this
18    pile of heroin that I've got for you, if you can come
19    up with money, or from that to an SNM-type dispute.
20              We've seen thousands of cases where --
21              THE COURT:  Let's focus for a second on the
22    evidence, the bill of particulars here.
23              MR. BENJAMIN:  Yes, Your Honor.
24              THE COURT:  Any other questions you want me
25    to ask Ms. Armijo about the evidence or the theories
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    they're going to use against you?
2              MR. BENJAMIN:  How does the evidence of
3    being cut off translate into an organizational
4    matter?
5              THE COURT:  Well, right now, right now, she
6    says she doesn't have any evidence of cut-off.  She's
7    only going to use the prong that there was a drug
8    debt.
9              MS. ARMIJO:  Your Honor, I'm sorry, I just
10   want to make clear, Willie Romero -- going back to
11   Willie Romero -- he will state that Andrew wanted
12   free drugs from Burns.  Burns had given Andrew Romero
13   (sic) free drugs in the past, and Romero had told him
14   -- "him" being Adrian Burns -- to stop giving them
15   free drugs.
16             THE COURT:  Okay.
17             MS. ARMIJO:  That's in reference to Andrew,
18   though.  I just wanted to make clear.
19             THE COURT:  That's to Andrew?
20             MS. ARMIJO:  That's to Andrew.  I just
21   wanted to make sure that you were aware of that.
22             THE COURT:  Okay.
23             MR. BENJAMIN:  Maria, any objection to
24   moving the admittance just for this hearing?
25             MS. ARMIJO:  Yeah.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1              MR. BENJAMIN:  "This" being Willie Romero's
2    statement from March 2, 2017.
3              THE COURT:  All right.
4              MR. BENJAMIN:  I'm at 8, Your Honor.
5              THE COURT:  And it will be for the bill of
6    particulars for Joe Gallegos.  It will be Exhibit A.
7    Anybody else have any objection?  Not hearing any,
8    Defendant's Joe Gallegos Exhibit A will be admitted
9    into evidence.
10             MR. BENJAMIN:  And I'm just tendering it to
11   the prosecution.
12             And, Your Honor, I apologize, I used the
13   word "cut off."  But the drug debt, how is a personal
14   drug debt of a drug user, that he is personally
15   using -- because that's the theory that the --
16             THE COURT:  I think I have asked that.  I
17   think that's more in the nature of the argument,
18   which I'll let you do in a minute, but let's focus --
19   do you have any more questions that you want to ask
20   Ms. Armijo, through me, about either the Government's
21   evidence or theories?
22             MR. BENJAMIN:  May I consult with the
23   wiser --
24             THE COURT:  You can consult with whoever
25   you want.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            MR. BENJAMIN:  I'm working through the
2    statement in my mind, Your Honor, but I don't know
3    how the statement that Amber Sutton testifies that
4    Adrian Burns was owed money by Joe Gallegos, and told
5    me he was -- you know, there was a drug debt comes
6    in.
7            THE COURT:  Well, that's a different issue.
8    I'm trying to get you the bill of particulars here;
9    trying to give you all the evidence, and all the
10   theories that the Government is going to throw at
11   you.  But that seems to me -- you don't want me to
12   start ruling on admissibility; you want all you can
13   get at this point.
14           MR. BENJAMIN:  And setting admissibility
15   aside, is there something else along that line on the
16   drug debt?
17           THE COURT:  Well, I think she said no.  Ms.
18   Armijo has given you everything on that.  She's
19   identified the two witnesses she's going to use for
20   that.
21           MR. BENJAMIN:  And I appreciate that, Your
22   Honor.  And I think I'm coming up satisfied.
23           THE COURT:  All right.  Ms. Torraco, did
24   you want to -- did any other defendant want to ask
25   through the Court any questions of Ms. Armijo that go
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to the theories that are going to be used, or the
 2    evidence that's going to be used, kind of focusing on
 3    the Joe Gallegos 4 and 5?  Mr. Castle?
 4              MR. CASTLE:  Yes.  Is the Government going
 5    to be arguing at trial that the horrific nature of
 6    that murder speaks of the evil of the SNM and the
 7    rest of these defendants?
 8              THE COURT:  Let me put it this way:  And I
 9    don't know if they'll argue it quite that way.  But I
10    guess they are certainly going to argue that
11    certainly the jury is not going to be permitted to
12    use, as co-conspirator statements as to the Burns
13    murder 4 and 5, they can't use those statements
14    against any other defendant that's not involved in
15    that conspiracy or 4 and 5.  But I think they can
16    certainly use the Adrian Burns murder as an example
17    of racketeering activity that the enterprise engages
18    in.  Is that fair?  You'd argue that?
19              MS. ARMIJO:  We would.
20              THE COURT:  You're not going to sit here
21    and -- I don't know, maybe you're going to say
22    exactly what Mr. Castle said.
23              MS. ARMIJO:  I don't know that I would say
24    exactly what he said.  But certainly it is
25    racketeering activity, especially when it goes to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

49

```
 1   heart of what they do:  The drugs, the respect, the
 2   possible extortion.
 3            THE COURT:  Violence.
 4            MS. ARMIJO:  Violence and we heard about
 5   the violence over and over and over, and will
 6   continue to do so.  It is a racketeering activity,
 7   and that's why it was charged.
 8            THE COURT:  Anything else?  Mr. Castle?
 9   Anybody else.
10            MR. CASTLE:  I have argument, but no.
11            THE COURT:  All right.  Ms. Arellanes.
12            MS. ARELLANES:  Judge, with regard to
13   Shauna Gutierrez, we would join the motion to sever
14   Counts 4 and 5, the Burns matter, from the indictment
15   that Mr. -- someone proposed for a couple of reasons.
16   One, is that it's not really an SNM matter; two, the
17   spillover effect on the other members that are tried.
18            THE COURT:  All right.  Anything else to
19   ask the Court, anybody wants to ask, through me, of
20   Ms. Armijo about theories or evidence?
21            All right.  Thank you.  Anything else you
22   want to say, Ms. Armijo?
23            MS. ARMIJO:  No, Your Honor.  Thank you.
24            THE COURT:  Thank you.  Mr. Benjamin.
25            MR. BENJAMIN:  Do you want argument, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Honor?
 2              THE COURT:  Yeah, I guess I'd be inclined
 3   to deny the motion for the bill of particulars.  It
 4   seems to me that we have just bottomed out in a more
 5   robust way than we can by just ordering a document.
 6   I mean, I think we have thought about everything we
 7   can ask.  I think we know what we have.
 8              MR. BENJAMIN:  I think what I would ask
 9   Your Honor, is that Counts 4 and 5 be changed to read
10   that Joe Gallegos -- and to the extent that Andrew
11   Gallegos wants to request this remedy, that the
12   indictment read -- the bill of particulars, my
13   understanding, is to require the Government to plead
14   or to replead with specificity, and that they be
15   required to replead and say that Joe Gallegos killed
16   Adrian Burns over a drug debt to the SNM, or was --
17   and that, in that type of manner.
18              Because, as it stands, I can't get my hands
19   around the SNM part of this argument.  Because we are
20   constantly being told -- and will be told for
21   multiple weeks -- and the Court notes this better
22   than I do, because it sat through it -- but the
23   phrase keeps coming up with, "with the SNM, you can't
24   be disrespected; with the SNM, it's above God and
25   family; with the SNM, you can't be a rat or a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    snitch."  And then we're going to be told that the
 2    SNM rules just all fall apart when they find God or
 3    they decide that they want a better deal.  And they
 4    keep coming up with -- it's this slogan that has come
 5    up throughout this trial.  And my problem is the
 6    slogan is not something I can wrap my hands around in
 7    the indictment, that they can then hold the
 8    Government to for its burden of proof on Counts 4 and
 9    5.
10            And I have been unsuccessfully trying,
11    since last year, to confine the Government to -- as
12    the Court put it yesterday -- a small box.  And that
13    box, as the Court noted yesterday, whether it was
14    going to be empty or not, has only been filled with
15    the idea that Joe Gallegos killed Adrian Burns over a
16    personal amount of heroin.  Nobody is going to
17    testify that this was a distributable amount of
18    heroin, or anything else.
19            In fact, there is a lot of testimony -- and
20    it will come from Amber Sutton, that Adrian never
21    carried large amounts of drugs on him because he was
22    paranoid.  He never carried large amounts of cash on
23    him because he was paranoid.
24            And so there will be a lot of testimony to
25    that effect, and it will simply be over a personal
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    beef that then has to be translated into -- and I

 2    keep coming back to it -- and I think I'm probably

 3    the only one in this room that likes this argument --

 4    the jurisdiction of what the murder was about.

 5            But I think that the Government should be

 6    required to be bound by the Court's box.  And in this

 7    case, Ms. Armijo has told the Court that that box is

 8    going to be generated by a drug debt.

 9            And I would ask that the remedy for the

10    bill of particulars is that they be required to

11    plead, and plead with specificity, the drug debt

12    issue.

13            THE COURT:  All right.  Thank you,

14    Mr. Benjamin.

15            Anybody else want to speak on this issue?

16    Mr. Castle?

17            MR. CASTLE:  Yes, Your Honor.  I know this

18    is just a motion for bill of particulars, and we

19    don't really have a dog in that hunt, but I think the

20    Court probably anticipates that there is probably a

21    greater issue that might be coming before this Court

22    by the remaining defendants.  And I want to give the

23    Court a little bit of a preview of that.

24            It's going to be my intention to ask this

25    Court to bifurcate the trial:  Have one single trial,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    and try the Counts 4 and 5 afterwards.  Therefore,
2    allowing the Government the ability to use all their
3    enterprise evidence for all charges, but also
4    protecting the other defendants from what I consider
5    to be an extremely horrific stain that will impact
6    the fairness of the trial.
7             History has shown us that a single drop of
8    poison, or one single bullet can change the course of
9    a nation.  Trial work -- Your Honor has done trial
10   work -- a single horrific picture or event can
11   change, regardless of the strength of the
12   instructions this Court will give can change whether
13   the rest of these defendants get a fair trial.
14            I've seen the photo.  I think the Court
15   has, in black and white only.
16            THE COURT:  I have.  I couldn't make too
17   much out of it.  Maybe a different picture would
18   be -- but it was kind of -- I don't know, it was just
19   an ugly looking thing.  It just wasn't --
20            MR. CASTLE:  Well, we have it in color.
21   And I'm sure it will be described by the eloquent
22   voices of lawyers in a way that will send chills down
23   the spines of the ordinary citizens that will sit on
24   this jury.
25            So they seek to bring that evidence in,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   through the very thin reed of federal jurisdiction.
 2   And in this case -- we sit here, and we say, Well,
 3   the jury can maybe -- if they find that the Gallegos
 4   brothers, or one of them, participated in that
 5   horrible murder, but don't find the federal
 6   jurisdiction, they'll look beyond that, and acquit
 7   them based upon this legal concept of federal
 8   jurisdiction.
 9            You know, that takes a very impassioned --
10   lack of passion to do that as a juror.  And if they
11   did that -- let's say they did that, that's the
12   remedy -- well, we'll let them figure it out, and if
13   there is no federal jurisdiction, they're going to
14   acquit these men of Counts 4 and 5.
15            But what remains in the courtroom --
16   remains in the courtroom -- is the horror.  And I
17   don't think any of us, even the Government, can say
18   that written words, or even spoken words of
19   instruction, can overcome that horror.
20            Here is the photo.
21            THE COURT:  Don't you bring it up.  Give it
22   to Ms. Bevel right here.
23            MR. CASTLE:  This is just one of the
24   photos.
25            THE COURT:  Give to it Ms. Bevel.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. CASTLE:  And I'm sure the Court can
 2    limine out certain photographs.
 3            But if I were a prosecutor, I could look at
 4    the jury and talk about the mangled, twisted, burned
 5    body of Adrian Burns.  And it's going to scare
 6    everyone.
 7            So what's the solution?  The solution is
 8    bifurcate.  And the only prejudice to the Government
 9    would be that they don't get to use that cloud and
10    stench in the courtroom against the remaining
11    defendants, and against Mr. Joe Gallegos, in the
12    count against him in Count 1.
13            I think this Court, when I've read its
14    rulings, if Counts 4 and 5 were not charged counts,
15    but they were uncharged misconduct, this Court might
16    have said:  No, this isn't fair, I'm going to move
17    that it's 403 evidence.
18            They have piles of enterprise evidence,
19    Your Honor.  They have piles of it.  You wonder,
20    you've heard all the different crimes that have been
21    described, not just of the informants, but also of
22    these defendants, uncharged crimes.  Why did they
23    pick this one?
24            We all know why they picked this one.  It's
25    out in the streets.  It's in the community where the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    jurors live.  And it is so horrifying that it has a
 2    chance to win the day.
 3              And so I'm going to ask -- I'm not asking
 4    right now, but I'm putting this before the Court for
 5    its consideration, because we don't have a lot of
 6    time left, and it didn't occur to me to ask for
 7    bifurcation, frankly, until I heard how weak that
 8    thin reed is, that the Government seeks to bring
 9    these charges before the federal court.
10              THE COURT:  All right.  Thank you, Mr.
11    Castle.
12              Anyone else want to speak on the bill of
13    particulars?
14              MR. SOLIS:  Your Honor, I do.
15              THE COURT:  Mr. Solis.
16              MR. SOLIS:  I do have one thing to add.  At
17    some point I have to participate in this trial; maybe
18    that is good time here.
19              THE COURT:  Go right ahead.
20              MR. SOLIS:  So I've been listening, and
21    getting up to speed on the context and background on
22    the case, to supplement what I've done the last few
23    weeks.  And I'm going to support Mr. Castle's
24    petition to the Court for bifurcation.
25              And I'll offer this:  So, Mr. Chavez here,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    is in this indictment, stemming from an offense back

2    17 years ago, 2001.  And unlike other defendants, I

3    think there are not subsequent events in the

4    penitentiary, either in '06 or '07.  Just that one in

5    2001.

6            And in my read of the discovery in the

7    last, you know, three weeks, and then just in the

8    last few days, getting up to speed on what's been

9    said, and listening, and reading the pleadings, and

10   all that, it appears to me that -- and I can see this

11   coming, in kind of like the fly on the wall and just

12   observing and getting up to speed, as I mentioned --

13   but it appears to me that Mr. Chavez' role is very

14   peripheral to some of these other players of the SNM.

15           And if, indeed, they establish that

16   Mr. Chavez is an SNM member, even then, if they do

17   establish that, it seems to me a very peripheral

18   role, and certainly not a leader role, by any

19   stretch.  And I'm not even sure if it's a soldier

20   role.

21           And I think we have a reasonable shot at

22   acquittal here on Count 2.

23           However, with the spillover that Ms.

24   Arellanes discussed, and Mr. Castle, it's a real

25   concern here because of the gruesome nature of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   testimony and the evidence that will be elicited by
 2   the Government.
 3            I liken this -- I've been involved in some
 4   similar cases, similar prosecution in the Western
 5   District in Texas on the Barrio Azteca case, a
 6   capital murder with the Barrio Aztecas, where they
 7   indicted Engaging in Organized Criminal Activity --
 8   EOCA, they call it in Texas.  And that type of
 9   evidence comes in, and it's very, very prejudicial.
10   And those cases, where maybe there is one or two
11   defendants, like in one case, or in the other case --
12   the former case I discussed it was 17 defendants.
13            So in this case, with Mr. Chavez in
14   particular, where I mentioned, again, 17 years ago;
15   his role is very limited; the subsequent
16   participation is nonexistent, and peripherally he's
17   involved.
18            So that kind of horrific, gruesome evidence
19   that able prosecutors would develop in front of the
20   jury is tantamount to basically convicting
21   Mr. Chavez, based on evidence that really doesn't
22   relate to him.
23            Mr. Benjamin is addressing, ably so, the
24   particulars that he needs to defend the subsequent
25   counts in this indictment.  We're only concerned with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    one.  And, in fact, the witnesses involved in this
 2    particular count for Mr. Chavez are not that many.
 3    So the reasonable shot -- I mentioned that an
 4    acquittal is diminished, if we continue with that
 5    sort of evidence, with Counts 5, or the other
 6    subsequent counts.
 7               So I'm going to support -- and this is as
 8    good a time as any to jump in this trial and finally
 9    participate, and support Mr. Castle's motion for
10    bifurcation, Your Honor.  Thank you.
11               THE COURT:  Thank you, Mr. Solis.
12               Anyone else?
13               MR. LAHANN:  Your Honor, on behalf of Mr.
14    Patterson -- and I think the Court knows I've been
15    pretty quiet throughout most of these motions
16    hearings, because I'm in the same position as
17    Mr. Chavez.
18               There is hardly any evidence against Mr.
19    Patterson.  He was paroled, I believe, in 2003.  He
20    committed one crime since he's been paroled, and that
21    was a DWI that he had here in Las Cruces.
22               There is no physical evidence that ties Mr.
23    Patterson in to any of this.  And he wasn't
24    prosecuted, to begin with, 17 years ago, because
25    there wasn't any evidence.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              The only evidence that has developed is
 2    over the 17 years, there has been some snitches here
 3    and there that have been found.
 4              But we're in the same position, Judge.
 5    There is scant evidence.  We have a shot at acquittal
 6    here.  And to be tied in with -- as Mr. Castle so
 7    eloquently put it -- just a horrific, disgusting
 8    crime that's going to become the sensational part of
 9    this trial, we would like a chance -- if not a
10    severance, then we would ask for -- we would support
11    a bifurcation.
12              Thank you.
13              THE COURT:  Thank you, Mr. Lahann.
14              Anyone else?
15              Well, the issue I think here is narrow.  I
16    think everybody's mind is turning about where we go
17    from here, and things like that, and I understand
18    that, and I appreciate that.  But the motion that is
19    presented is fairly narrow:  It's a bill of
20    particulars.  I think that, in my view, that over the
21    last few hours we have -- and yesterday afternoon --
22    have gotten more information to Mr. Benjamin and Mr.
23    Joe Gallegos, and others, about the Counts 4 and 5
24    than I would even if I ordered a bill of particulars.
25    Because those seem to never satisfy.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              But with this vibrant, dynamic questioning
 2    process, we've gotten everything out on the table,
 3    that -- theory-wise and evidence-wise.  So I think
 4    that we've gone beyond a bill of particulars.  Even
 5    when it's typed up by Ms. Bean, it will be even in
 6    written form.  So I'm going to deny the motion for
 7    bill of particulars at this time.  I know it was
 8    filed back in early 2017, and so we've gotten far
 9    down the pike.  We've gotten assurances from the
10    Government that everything, evidentiary-wise we've
11    either spoken in here in the James hearing, it's been
12    produced.  They're willing to give more information,
13    and will try to get that information as soon as
14    possible.
15              By doing this and denying a motion for bill
16    of particulars, here's what I'm not ruling on:  I'm
17    not ruling on the sufficiency of that theory or
18    the -- if all that evidence came in, that that would
19    be sufficient either for, as Mr. Benjamin puts,
20    jurisdictional purposes, or as I put, an element of
21    the crime that it has to be racketeering activity
22    that's connected with the SNM.  It has to be
23    advancing or maintaining the position.
24              I am not ruling on any severance motions.
25    I'm not ruling on the admissibility of any evidence.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    I'm not ruling on any what I'm characterizing as sort
 2    of 403 arguments.  All those are for another day.  I
 3    just think that the purpose of what we've done has
 4    sufficed for a bill of particulars, and there is no
 5    reason at this stage to order the Government to put
 6    down in writing what they've stated here in open
 7    court, and what they're willing to give.  So I will
 8    deny Document 1143, and not require anything further
 9    from the Government at this time.
10             All right.  Shall we shift, then, to
11    Mr. Joe Gallegos' motion for a bill of particulars as
12    to Counts 13 through 16.  Mr. Benjamin?
13             MR. BENJAMIN:  If I may have just a second,
14    Your Honor, to switch to that?
15             THE COURT:  You may.
16             MR. BENJAMIN:  If I may, Your Honor.
17             THE COURT:  You may.
18             MR. BENJAMIN:  Bill of particulars for
19    Counts 13 through 16 essentially should -- I'd like
20    to deal with it in two parts, and I'd like to deal
21    with it in the two, essentially, conspiracies is the
22    way the Court addressed them.  The first one is the
23    conspiracy for Count 13.  And I have a slightly
24    different and more conventional argument on this one,
25    Your Honor.  The --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

63

```
 1          THE COURT:  And you know that Mr.
 2   Castellano says that he's not alleging any conspiracy
 3   on Count 13?
 4          MR. BENJAMIN:  And that's --
 5          THE COURT:  That's not good news for you,
 6   huh?
 7          MR. BENJAMIN:  It's excellent news, Your
 8   Honor.  And I guess I'd like to take them at their
 9   representation.  But I think the bill of particulars
10   is probably the best way to continue forward -- is
11   probably the best way to do that, so that I can have
12   my hands firmly around this idea.
13          The specific idea, though, that I need to
14   address with the Court in Counts 13 through 16 is,
15   like many "ag" assaults that we deal with in the
16   state courts, Count 13 is something that sounds
17   horrific until you listen to the 911 call of the
18   police officer who says, Yeah, I've got him, Jose
19   Tiny Gomez, standing right here in front of me.  He's
20   got a slight laceration on his hand.  And because it
21   was dispatched as a "shots fired" call against an
22   individual.
23          And so the request -- as I said, if I could
24   bifurcate this in Count 13 -- is to, one, specify the
25   serious bodily injury that occurred, and I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    think it did.  And then, two, to specify the deadly
 2    weapon that was used.  Was that a handgun, a knife,
 3    or some other implement?  And I believe I'm entitled
 4    to those two legal definitional type evidentiary
 5    issues.  And then, taking the Government at the face
 6    of the issue, I think, I also, once again, don't have
 7    anything that shows why this is a VICAR action and
 8    not a personal beef between people who live a
 9    football's throw away, as Agent Stemo stated
10    yesterday.
11              Moving to Counts 14 through 16.  This is
12    the count that, once again, Mr. Castellano yesterday
13    provided a statement that further confused myself.
14    Counts 14 through 16 is a retaliation claim against a
15    witness.  And the Court has heard this many times,
16    that there may or may not be SNM activity.  And I
17    think Mr. Gallegos is ready to concede at this point
18    in time that that's not what we're here for.  But was
19    Count 14 through 16 -- and I think this should be
20    pled an assault on Jose Gomez, based upon the March
21    15, 2015 assault, or was it -- as the statement that
22    was later clarified yesterday -- an assault on Jose
23    Gomez because he was going to testify in a state
24    murder charge?
25              I, one, don't know what state murder charge
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    he was going to testify in, and there is no -- and we
2    received, courtesy of the Government, all of the bad
3    acts that they intend to use against Mr. Gallegos.  I
4    would assume that, if Mr. Gomez was going to testify
5    against Mr. Gallegos, that would be based upon a
6    state murder that was on his bad acts list.  There is
7    no murder on his bad acts list.  And so I think I
8    have to come back to the idea that they were alleged
9    to have assaulted Jose Gomez based upon the earlier
10   March '15, March 2015, assault.
11            The last issue I have -- and this goes to a
12   request, if the Court could conduct this bill of
13   particulars much like it did the last one -- I don't
14   know how, having listened to all the phone calls,
15   this information to assault Jose Gomez was put in
16   play.  We've heard and will be told about Mario
17   Chavez, Mario Goofy Chavez, who is going to tell us
18   that there was a plan either before or after -- and
19   we don't know whether it was before or after -- that
20   was put in place, to have people in place to assault
21   Jose Gomez.  But we still don't know how that
22   happened considering all of Mr. Gallegos'
23   communications, written and oral over the telephone,
24   were monitored.
25            And I've been referred to his telephone
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    calls.  And there are reports of investigation that
 2    refer to his telephone calls.  But there is nothing
 3    on his telephone calls that can even be considered,
 4    as is noticed in his list of bad acts, conducting SNM
 5    business.
 6              And so those are my simple, I guess
 7    requests for the bill of particulars, Your Honor.
 8              THE COURT:  All right.  Thank you, Mr.
 9    Benjamin.
10              Anybody else want to add anything or
11    discuss anything related to the bill of particulars
12    for 13 through 16?
13              All right.  Ms. Armijo, are you going to
14    take the lead on this one?
15              MS. ARMIJO:  Yes, Your Honor.
16              THE COURT:  Maybe -- let's break it down.
17    And I may do a little back and forth here so that I
18    can begin to absorb a little bit more detail of these
19    alleged crimes.  Let's go to the serious bodily
20    injury that occurred.  In this case -- I know there
21    was some proof problems in the first case with Julian
22    Romero.  What do you have here?  What do you have as
23    evidence that a serious bodily injury occurred?
24              MS. ARMIJO:  Your Honor, I'm trying to find
25    my indictment.  I have down on my notes that I have
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    it as assault with a dangerous weapon.  And I can
 2    check that at break to see.
 3               THE COURT:  You mean what the indictment
 4    was?
 5               MS. ARMIJO:  Yes, as to 13.
 6               THE COURT:  I don't have it in front of me,
 7    but I think 13 is assault of Jose Gomez; then 14 is
 8    the conspiracy to murder Jose Gomez; 14, 15, and 16,
 9    I guess, all relate to the other incident.  So give
10    me the dates of these incidents, so I get those in my
11    mind.  What's the 13 -- the assault of Jose Gomez,
12    what's the date of it?
13               MS. ARMIJO:  So Count 13 is in 2015,
14    specifically.  There is no serious bodily injury
15    allegation with that.
16               THE COURT:  So it's just a pure assault?
17               MS. ARMIJO:  It is, with a dangerous
18    weapon.  And so that answers Mr. Benjamin's question
19    right there as to serious bodily injury.  We don't
20    have to prove it.
21               THE COURT:  So you will not be attempting
22    to prove and don't have any evidence of a serious
23    bodily injury that occurred in relation to the
24    assault in 13?
25               MS. ARMIJO:  Correct.  And it is March 17
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   of 2015.
 2            THE COURT:  Okay.  And then what was the
 3   weapon that was used in connection with the 13
 4   assault, the 2015 assault.
 5            MS. ARMIJO:  I believe it was a knife.
 6            THE COURT:  And what evidence do you have
 7   of it being a knife?
 8            MS. ARMIJO:  The victim's statement that he
 9   was stabbed in the hand by the knife causing injury
10   to Mr. Gomez.
11            THE COURT:  And so I guess that raises a
12   question:  Jose Gomez will be here, like Julian was,
13   and testify?
14            MS. ARMIJO:  Jose Gomez will be here.  It
15   was also witnessed by Brandon Chavez, who was driving
16   Mr. Gallegos, when they saw Mr. Gomez on the streets.
17            And the background to this incident is that
18   Jose Gomez is a documented SNM Gang member, and that
19   he was active in drug trafficking activities on
20   behalf of the SNM during that time.  And in 2015, he
21   resided at the residence of Joe Gallegos.  And Mr.
22   Gallegos was incarcerated in jail at the time, and
23   allowed Mr. Gomez to stay at the residence.  And in
24   exchange for that, Jose Gomez was selling heroin from
25   the property, and he was to be putting $50 per month
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    on Joe Gallegos' jail accounts.  So he was being
 2    allowed to live at Joe Gallegos' house, sell heroin
 3    there, and basically pay Joe Gallegos $50 a month.
 4    And he was also supposed to be supplying Joe
 5    Gallegos' girlfriend with the heroin so that she
 6    could use it or sell it.  Jose Gomez stopped paying
 7    Joe Gallegos and supplying the girlfriend with
 8    heroin, and then he moved off the property.  And,
 9    obviously, when Mr. Gallegos was released from
10    custody, he was not happy with that situation.
11            So on March 17th of 2015, Mr. Gallegos came
12    across Jose Gomez.  I believe he was driving in a car
13    when he saw him on the streets, and --
14            THE COURT:  What was Mr. Gallegos not happy
15    with?
16            MS. ARMIJO:  He was not happy with the fact
17    that Jose Gomez had stopped paying him rent, so to
18    speak, stopped paying the $50 for living in his
19    house, stop paying him the, quote -- whether you want
20    to say it's rent, or the tax for being allowed to
21    sell drugs from his residence, and supplying heroin
22    to his girlfriend.  He was not happy with Jose Gomez,
23    basically, not living up to the agreement that they
24    had while Mr. Gallegos was in custody.
25            And so when he got out of custody, there
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    was an incident which he stabbed him in the hand --
2    he was chasing him with a large knife, and eventually
3    he did cut his hands.
4              THE COURT:  All right.  There is a lot for
5    me to ask on that.  But I need to give Ms. Bean a
6    break.  Would this be an okay time for us to take
7    about a 15-minute break?
8              MS. ARMIJO:  Certainly, Your Honor.
9              THE COURT:  All right.  So we'll be in
10   recess about 15 minutes.
11             (The Court stood in recess.)
12             THE COURT:  Look around the room.  I think
13   we've got lawyers for each defendant.
14             All right.  Ms. Armijo.
15             MS. ARMIJO:  Your Honor, I spoke to Mr.
16   Benjamin at the break.  Because we are still on
17   Monday afternoon in our schedule, and we're Wednesday
18   morning, I suggested to him, and he agreed to do
19   this, that for the bill of particulars, since what it
20   is, instead of going through the process of him
21   asking the Court to ask me questions, to see if we
22   can resolve this issue during a break or at lunch.
23   And I told him I'd be more than happy to sit down
24   with him and talk to him about the evidence.  And he
25   agreed to do that.  Then any unresolved issues,
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    anything else that he had questions that we can't
 2    agree to, that we would bring to the Court maybe
 3    later on.
 4              Because I know that for the motion to
 5    suppress, that I think was scheduled yesterday, we
 6    have two witnesses here to testify.  I know there is
 7    motions regarding several inmates and other things.
 8              So I think the time is better spent with
 9    Mr. Benjamin and I trying to work this out and me
10    answer questions.  He may still come back and say he
11    doesn't think we have the evidence, and we'll argue
12    that's probably for a Rule 29.  But certainly, we're
13    not hiding anything from him, and we just thought it
14    would be a better resource of time.
15              THE COURT:  Is that agreeable to you, Mr.
16    Benjamin?
17              MR. BENJAMIN:  Yes, Your Honor.
18              THE COURT:  All right.  So we're going to
19    move from Tabs 4 and 5, which are the bill of
20    particulars.  Are we going now to 6, Joe Gallegos'
21    renewed motion to dismiss Counts 4 and 5, which also
22    has another motion for particulars or are we skipping
23    that one as well?
24              MR. BENJAMIN:  Ms. Armijo and I are
25    throwing hand signs, Your Honor.  But I think we're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    skipping that and moving to the next one.

 2              THE COURT:  Okay.  So we're going to Billy

 3    Garcia's discovery motions?

 4              MR. COOPER:  Your Honor, just to give you a

 5    little heads-up.

 6              THE COURT:  Okay.

 7              MR. COOPER:  Greg Fallick had filed a

 8    motion to quash a subpoena.

 9              THE COURT:  Right.

10              MR. COOPER:  And he's threatening to not

11    allow his client to come down here, and disregard the

12    subpoena.  He would like to have a telephonic

13    conversation at 1:00 this afternoon, if possible, or

14    he will be available by phone.  We've subpoenaed his

15    client, Leroy Lucero.  We expect him to be here.  We

16    intend to call him.  But I think we need to deal with

17    the motion to quash.

18              THE COURT:  All right.  Is it all right for

19    everybody to deal with it by phone?  Is that all

20    right?

21              MR. COOPER:  We're fine with it, Judge.

22              THE COURT:  The defendants, everybody in

23    agreement, it can be done by phone?

24              MS. ARMIJO:  Yes, Your Honor.  And I

25    believe we have a similar issue with Mr. Quintana.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Phil Sapien filed a motion to quash as well.  I know
 2   this morning he was in a depo.  I don't know what his
 3   schedule is this afternoon.  But I know that unless
 4   he can be here -- if the Court is not going to quash
 5   the subpoena, if his client is going to testify, Mr.
 6   Sapien needs to be here.  And so I think we need to
 7   deal with the motions to quash.  And if they're not
 8   going to be quashed, deal with getting these
 9   attorneys and witnesses down here because we're now
10   kind of -- Wednesday.
11           THE COURT:  So I'm taking them one step at
12   a time.  Looks like we'll have a hard break about
13   noon or quarter till noon, and then we'll come back
14   at 1:00.  Why don't we do this, why don't we plan on
15   doing this:  Why don't we take a break at quarter
16   till 12:00.  So it will be 11:45.  We'll take our
17   lunch break at 11:45; come back at 12:45, then
18   whatever we're doing, we'll stop at 1:00 and do the
19   phone call.  Does that work?
20           MR. COOPER:  That works, Your Honor.
21           THE COURT:  Tell me a little bit about Mr.
22   Sapien.  Do we need to set up something for him this
23   afternoon as well?
24           MR. COOPER:  Judge, my last communication
25   with Mr. Sapien was that he's going to be out of town
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    tomorrow and Friday, and then sometime next week or

2    the following week.  He told me that he was available

3    all day today.  I then sent him an email telling him,

4    well, let's make it in the afternoon.  I then learned

5    that he was in a deposition this morning.  I never

6    got a response from him, telling him that we would

7    attempt to put his client on this afternoon.  So

8    we're still expecting to do that.  I have not heard

9    from him in response to that email.

10            So -- and his client is presently

11   downstairs, the marshals have writted him out.

12   They've also writted out Frederico Munoz and Leonard

13   Lujan.  And we expect those two also this afternoon,

14   I think, maybe Friday, or tomorrow, Ben Clark?  So

15   Ben Clark will be here tomorrow, and somebody else

16   that we can't recall right at the present, Your

17   Honor -- oh, Baby Rob.  Actually, I think Robert

18   Martinez may be here today.  Anyway, we have a number

19   of individuals in custody.

20            THE COURT:  So we know we've got a lawyer

21   for Leonard Lujan at 1:00, and then everything

22   else --

23            MR. COOPER:  No, for Leroy Lucero.

24            THE COURT:  Leroy Lucero.

25            MR. COOPER:  Leroy Lucero.  And then we'll

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    deal with that.  So which motion -- kind of skipping
 2    ahead -- are we going to go to now?
 3            MS. ARMIJO:  Your Honor, may I just ask a
 4    question?  It appears that all these people are
 5    represented.  I know that the issue with -- Mr.
 6    Sapien will say one of his biggest issues is that
 7    they never went through him to subpoena, and they
 8    never made arrangements for him to come.  I am just
 9    assuming, since we did not know who they were
10    calling -- these were all ex parte -- that they are
11    all working through counsel of all these people, so
12    that we don't have a witness come on -- they
13    certainly have the right to have their attorneys
14    here.  So I would just ask defense counsel to be
15    working with all these defense attorneys to make
16    these things work smoothly.
17            MR. CASTLE:  Judge.  I can real quickly
18    address it.  Last Wednesday the Government filed
19    their notice of statements.  We had to quickly file a
20    responsive motion that Friday.  This deals with that,
21    1909.  We contacted the lawyers the day we filed the
22    motion.  Some of them had not been as cooperative as
23    others.  And that's why we're here.  I mean, I would
24    have loved to have had notice a long time ago time,
25    too.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  I think what you're telling me
 2    is I'm just going to take them one at a time.
 3              MR. CASTLE:  Yes.
 4              THE COURT:  So I'll just have to work
 5    through the problems.  And there is no guarantee
 6    anybody is going to testify, and no guarantee that
 7    they won't at the present time.
 8              All right.  So you and Mr. Benjamin seem to
 9    have some motion that y'all wanted to go to next?
10    What are y'all thinking of?  We're skipping over the
11    discovery motions and moving to something else.
12              MR. BENJAMIN:  I just understood we had an
13    agreement that I was going to meet with her, and move
14    my motions to clean up space, for lack of a better
15    term, Your Honor.
16              THE COURT:  All right.  So as far as what I
17    think are Mr. Gallegos' motions, it will be 4, 5, and
18    6 will be put -- these are tabs, so I'll give you the
19    numbers:  1143, 1319, and 1808; correct?  Is that
20    what we're putting aside for the present time?
21              MR. BECK:  Correct.
22              MR. BENJAMIN:  Yes, Your Honor.
23              THE COURT:  So then the next motion that's
24    up is Billy Garcia's discovery motion.  Are we ready
25    to take that one up?  Is that what people anticipated
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   coming up next?

 2              MR. BECK:  Yes.

 3              MS. HARBOUR-VALDEZ:  Yes, Your Honor.

 4              THE COURT:  Then are you ready to argue

 5   that, Mr. Cooper?  Mr. Castle?  I read it, but I'm

 6   going to have to refresh my memory.  I know it dealt

 7   with two witnesses, if I'm not mistaken, but --

 8              MR. CASTLE:  Is that motion number 1744?

 9              THE COURT:  It's motion number 1693.

10              MR. CASTLE:  Yes, Your Honor; it's not two

11   witnesses.  It's Trial 2 witnesses.

12              THE COURT:  Oh.

13              MR. CASTLE:  It was probably poorly

14   worded -- well, not probably -- obviously, it was

15   poorly worded.

16              Your Honor, basically our position is that

17   we don't believe the Government has turned over all

18   Giglio-Brady materials.  Their obligation to turn

19   over Jencks isn't until, I believe, two weeks prior

20   to trial.  But the Court, when it was dealing with

21   the intersection between Brady, Giglio, and Jencks

22   said that Brady-Giglio trumps, so that had to be done

23   immediately.

24              What we noticed in the Trial 1 process was

25   there were materials that were provided to the Trial
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

78

```
 1   1 team that were what would be properly considered to
 2   be Giglio-Brady materials.  There were inconsistent
 3   statements, there was presentence investigation
 4   reports, things of that nature.  And those were all
 5   dumped at the last minute.  But within that pile we
 6   found materials which were Brady and Giglio that
 7   dealt with Trial 2; that they had been in possession
 8   of for sometimes years that they were producing.
 9            And so we want to try to avoid some of
10   those processes.  This is a general concept.  And
11   that is, to have them certify right now that they've
12   turned everything over in their possession that's
13   Giglio-Brady, so if we find out later that they
14   haven't, then we can request sanctions from this
15   Court.
16            But we have -- if I could just have a
17   moment.  I didn't know what had been agreed on
18   between the two parties, so --
19            THE COURT:  That's all right.  Take your
20   time.
21            MR. CASTLE:  One example is that, in the
22   materials we received in January, because the
23   Government was going to be calling witness, Frederico
24   Munoz, to the stand, and he testified in Trial 1,
25   they produced materials.  And included in that was a
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   2002 interview, so approximately a year after the
 2   murders in this case, Mr. Munoz was in a cooperating
 3   relationship with the State investigating
 4   authorities, and also federal agents.  And from that
 5   time on, he worked off and on as a dual agent, in the
 6   sense that he pretended to be still a member of the
 7   SNM, and participated in SNM activities, including
 8   murders, but also at the same time he was providing
 9   information to law enforcement.  So he was acting in
10   that capacity.  And somehow the Government didn't
11   think that was necessary to turn over until they
12   turned over Jencks statements.
13           I can tell the Court what we've been in the
14   process of doing since then -- it's a laborious
15   process -- we've had to subpoena the Albuquerque -- I
16   think it's either Albuquerque Police Department or
17   Bernalillo County Sheriff's -- I can't remember -- to
18   try to get his informant records.
19           This is all relevant, not just to trial,
20   but it's to determine whether he was acting as an
21   informant at the time that he allegedly obtained a
22   confession from our client in the prison, which could
23   be -- you know, depending on the timing of it, it
24   could be an issue where we need to raise a motion
25   concerning suppression of that statement.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          All these things are causing problems.  And

2    subpoenaing those materials from the authorities in

3    Albuquerque is proving to be a difficult process,

4    because they're refusing to honor subpoenas, and

5    instead, are talking to the prosecutors and the U.S.

6    Attorneys here, to see if they can get out of them or

7    if they can produce them to them.

8          So the problems in delay are already

9    occurring.  And so, you know, in our prayer or

10   request for relief -- which I'm going to hopefully

11   scroll to as I'm talking -- is that we've asked for

12   the Court to order the Government to produce all

13   remaining materials on or before February 5th, which

14   obviously is long past.  And we've said that because

15   the Government has shown a pattern where they do not

16   recognize the difference between Giglio, Brady, Rule

17   16, or Jencks, that frankly, the Jencks requirement

18   be moved up to -- and at this point, unfortunately,

19   February 5th has come and gone -- and I understand

20   why, because the Court was busy.

21          But I suggest that they turn it over within

22   a week, so if there are problems, we can get them

23   done before trial.  I saw, at least what happened in

24   Trial 1, there were constant motions for discovery

25   violations and things of that nature.  As a court, I

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                           Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                      1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

81

```
1    know this Court probably doesn't like to deal with
2    those, and is often put in a hard position where, you
3    know, mistrial is the only other option, and that's
4    something to be avoided.
5            We can avoid some of this if we move the
6    Jencks material disclosures up.  And frankly, there
7    is no reason not to.  They've given the names of the
8    witnesses.  They've given us some reports.
9    Obviously, if there is any materials -- debriefings
10   that happened prior to witness testimony, obviously
11   they can't produce that, and they would have good
12   cause for a later disclosure, because it didn't exist
13   at the time.  But we're requesting that, at this
14   point, the Court remedy the situation and order
15   everything to be produced now.
16           And just as a caveat, Trial 1 had four
17   defendants and limited crime bases that had to deal
18   with the last-minute dump.  We have, obviously, eight
19   teams, and also more crime bases.  Frankly, I think
20   it's in everyone's interests.  I know this Court is
21   trying to shoehorn us all into a courtroom.  If we
22   get these discovery dumps now, and some of our
23   clients might realize they want to take a
24   disposition, because now they realize the full scope
25   of the Government's evidence, it might assist in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    resolution of some of these charges, and make living

2    conditions in the courtroom a lot better for

3    everyone.

4           But, frankly, at this point, this Court has

5    a body of knowledge that it didn't have before when

6    it said two weeks' notice.  I think the Court's

7    ruling was:  Look, I have to trust the Government to

8    do their job the way that they're supposed to, along

9    the lines that have been given.  And now we have

10   evidence that it hasn't happened.

11          Later in these hearings the Court is going

12   to hear a motion concerning handwritten notes.  We've

13   done an analysis of the 302s that have been done in

14   the case, and I believe there is over 800 302s, of

15   which 90 percent -- 40 of those 302s we have notes on

16   right now, 40 out of the 800.  And then there is some

17   other interviews that are not titled 302s.

18          So that's the kind -- I'm giving the Court

19   that image, because we're now going to understand

20   what's going to happen.  And we might as well get

21   this process of disclosure going right now, so that

22   if there are issues, we can resolve them prior to

23   trial.

24          If I could just have a moment, Your Honor?

25          Nothing further, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

83

```
1              THE COURT:  Any other defendant want to
2    speak on this motion that Mr. Garcia filed relating
3    to disclosure, discovery?
4              All right.  Mr. Beck, are you handling this
5    one?
6              MR. BECK:  Yes, Your Honor.
7              THE COURT:  Let me make a few comments
8    related to some of the things that Mr. Castle said,
9    and then let you then respond.
10             Working through the three -- what I'll call
11   the sanction motions -- that were filed last week of
12   the trial, I ceased working on those on Monday when
13   the verdict came down.  So I don't have this ready to
14   hand you and the parties in the first trial.  But one
15   of the things that I worked through was a ruling that
16   I had made very early in the trial.  And that -- I
17   believe, back in May, if my memory is correct, that
18   if the Government took the position that this was a
19   statement, and this was Jencks material, they then
20   had to look at it with Brady and Giglio eyes, and
21   Rule 16 eyes, and they had to make immediate
22   production; that they couldn't delay it to Jencks.
23             I made that ruling without a whole lot of
24   research at that time.  But then, in looking at it, I
25   realized that there is a bit of a split among the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    courts on that issue.  So I sat down and reanalyzed,

2    rethought whether I got it right in ordering

3    immediate production of the Brady and Giglio or

4    Jencks, and not complying with congressional language

5    in Jencks.

6             And I reconvinced myself that I was right,

7    and we are writing it up in a single opinion right at

8    the moment on the three sanction motions.  So I don't

9    have it out -- I don't have it to give to you, but I

10   have rethought that and reanalyzed it, taking into

11   account the split among the courts, and reconvinced

12   myself that I got it right.

13            So I'll apply that rule in this case as

14   well; that if you have any Brady, Giglio, Rule 16

15   stuff, you've just got to go ahead and fork it over,

16   even if it would also be Jencks material, statements

17   of witnesses.  So that's one thing I need to say.

18            Second, I would think that we are better

19   off going into the second trial, just because we had

20   to work so hard, and double and triple our efforts to

21   get everything produced in the first trial.  So I

22   would think, for example, witnesses that are going to

23   appear in this trial, we're bruised and bloodied

24   getting the discovery done on those people, because

25   of what we had to do in the first trial.  So I think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    in some ways we'll be better off.

2              Third, I guess I never envisioned what

3    occurred with Mr. --

4              MR. BECK:  Rodriguez?

5              THE COURT:  Well, no, I was trying to think

6    of the agent, but -- maybe the witness was the agent,

7    but the two agents were -- one of them was at the

8    meeting with their laptop taking four-and-a-half

9    pages of notes, and then the 302 was a single four

10   paragraphs -- I never envisioned that situation.  I

11   always envision a situation where I never could quite

12   figure out how people take notes other than take

13   verbatim notes.  I mean, you -- and maybe there is a

14   million ways to take notes, but I know the way I take

15   notes is I tend -- I'm a lousy notetaker now because

16   I've got Ms. Bean -- but when I used to take notes, I

17   used to write exactly what I heard, which I would

18   think is verbatim.  And then my memory was such that

19   when I sit down at the end of the day and created my

20   outlines or my report or my memo, simply looking at

21   the verbatim words was enough to help me then write

22   the report.  Now, I don't know if that's the way

23   everybody does it or not.  But I guess I would think

24   that few people -- there may be people that do it,

25   and they're just better notetakers, are actually

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   characterizing what the witness is saying at the very

 2   moment they're taking notes, and so they're sort of

 3   writing a report.  And that's the reason I've always

 4   been skeptical that I'm going to ever see a set of

 5   notes from an FBI agent that is not verbatim.

 6        But in any case, what we had with the two

 7   agents was just another example of why I think it's

 8   important to produce these notes.  And I've never

 9   precluded the Government from coming in and saying,

10   Judge, we're going to hand you a set of notes, and we

11   dare you to say that's verbatim.  Take a look at it.

12   It's not verbatim.  And I may see a set of notes and

13   say:  You don't have to produce those till Jencks.

14        I'm still not inclined to move up your

15   Jencks date.  But I do think that the Government is

16   going to have to maybe adjust its lenses as it goes

17   back through these before it delays producing the

18   Jencks, to make sure they don't contain Giglio, don't

19   contain Brady or Rule 16 information.

20        And as far as these notes, while that's the

21   reason they're being produced, they're Jencks

22   material, I still think they're going to have to look

23   at those a little more closely, and see if those need

24   to be produced earlier because they may contain Brady

25   or Jencks.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          So those are some thoughts I have.  You
2    wanted to respond to what Mr. Castle said or respond
3    to what I say?
4          MR. BECK:  I'll do both.  The United States
5    has produced everything it has aside from agents'
6    notes.  So we don't oppose that request.  And I think
7    we probably did it somewhere close in time to
8    February 5th, if not on that date or before.
9          With regard for the Court's classification
10   of notes as Jencks, I don't disagree.  I think the
11   situation that happened with the two agents was
12   unique.  I didn't know that happened --
13         THE COURT:  I think it surprised you,
14   right?
15         MR. BECK:  Yeah, to say the least.  Yes.
16         THE COURT:  I guess I'm wondering more and
17   more -- now we're now entering a new world, you live
18   long enough, you see enough things.  I mean, used to,
19   you never saw recordings by the FBI.  Now we're
20   beginning to see a spattering of recordings.  But I
21   guess we're also now beginning to see agents,
22   younger, sitting there with a laptop taking notes.
23   And so we're entering a new world order on that score
24   as well.  We're getting some pretty good detailed
25   information out of these 302s -- or these interviews,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   before we even get to the 302s.
2             MR. BECK:  I agree.  Your Honor.  And I
3   think what courts have done is there has been two
4   approaches.  One has been, I think, the approach that
5   Your Honor is taking, and it seems now clear that
6   Your Honor is taking this approach, which is to say
7   that verbatim notes taken by agents are Jencks, and
8   they must be produced.
9             I think there is a second approach which
10  courts have taken that say verbatim notes taken by
11  agents must be produced unless the 302 includes
12  everything in those notes, and the 302 is a more --
13            THE COURT:  And that's kind of what Judge
14  Brack does, right?
15            MR. BECK:  Right.  So in my review of
16  agents' notes, which has been a lot --
17            THE COURT:  The Tenth Circuit has never
18  added that, right?
19            MR. BECK:  No.
20            THE COURT:  Judge Brack added that, but the
21  Tenth Circuit just said "verbatim notes," right?
22            MR. BECK:  I think it depends on what you
23  mean by "add."  I agree with you that's what the
24  Tenth Circuit said.  I would say that adding
25  production of agents' notes on top of 302s, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   include everything and more would be adding
 2   something.
 3           But I see Your Honor's point in that there
 4   is a sort of qualification there that Judge Brack has
 5   added, which is, if what is in the notes is
 6   incorporated in the 302.
 7           THE COURT:  And he's not alone.
 8           MR. BECK:  He's not alone.  No, that's what
 9   I'm saying.  I have researched this issue.  And there
10   are courts that's go both ways.  And I think Your
11   Honor has made it clear in this case that you're
12   staking out the position --
13           THE COURT:  And I do that because the
14   statute, Jencks Act says "statement."  It doesn't
15   matter if it's a handwritten statement, which is what
16   we were dealing with in the old days, agents sort of
17   with their pads.  And now we're doing it with laptops
18   or with a tape recording.  It seems to me that it can
19   come in three forms.  But I think you and I would
20   agree that if you had a 302, but you also had a tape
21   recording, you've probably got to turn over the tape
22   recording and the transcript, right?
23           MR. BECK:  Sure.
24           THE COURT:  If you have one, that would be
25   a statement under Jencks.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BECK:  Sure.  Yes, I mean, I think that

2     situation is very different, right?  Because,

3     obviously, a tape recording, or I guess now a digital

4     recording -- I'm not even sure tape recordings exist

5     anymore -- would be much more verbatim of a statement

6     than even the 302 would be.

7          But I understand Your Honor's approach.  I

8     think it's a fair reading of the statute.  I think

9     it's a fair approach to take.  And it's probably a

10    prudent one, in my review of the agents' notes,

11    because what's the harm -- aside from everyone having

12    to read twice as much -- what's the harm in more

13    disclosure rather than less?

14         So I understand the Court's position there,

15    and I think it's a faithful reading of the statute.

16    Courts have come down different ways; Your Honor

17    comes down one way.

18         So we have produced -- getting back to the

19    motion -- we have produced the 302s, the 1023s, the

20    PSRs -- I think the PSRs have been redacted, and the

21    I'll just point this out for the everyone:  We read

22    through them, and we read through and made some

23    redactions based on personal information.  I think

24    everyone is familiar enough with PSRs that if they

25    think we've unfairly redacted something, I'm happy to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  field those requests, and look back at it and get
 2  back to defense counsel with any of those requests.
 3          The thing that has not been produced yet is
 4  the agents' notes.  We were holding those back as
 5  Jencks.  The Jencks deadline is after the person has
 6  testified.  We've moved that up to two weeks
 7  beforehand.  We've not discussed turning over those
 8  agents notes earlier in time.  I don't know that we'd
 9  be opposed to that.  But they're not readily at our
10  disposal, because there is teams back in Albuquerque
11  working on scanning the agents' notes in, to ready
12  them for production.  They certainly will be produced
13  by the Jencks deadline, because that's the deadline,
14  that's what we're producing.
15          THE COURT:  What's the date on that?
16          MR. BECK:  I think it's March 26, a week
17  from Monday.
18          THE COURT:  That's a Monday?
19          MR. BECK:  Right.  So that would be two
20  weeks before --
21          THE COURT:  A week from this Monday.
22          MR. BECK:  Right.  And so I know we have
23  some produced.  As they said they've gotten some.  So
24  we'll certainly talk about producing those earlier
25  if -- we'll talk about that.  I can't say that --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  It seems like you have a couple
 2    of choices, you know:  You got to start reviewing
 3    these things to see if they're Brady or Giglio, or
 4    you've just got to kick them out.
 5            MR. BECK:  I agree with you.  And I think
 6    that's the discussion we'll all have.
 7            So for purposes of this motion, I've
 8    confirmed with our -- with the people who are much
 9    better at knowing what's in there than me.  We've not
10    held back any 302s, 1023s, or PSRs as Jencks
11    material.  Those have all been produced.  So as far
12    as we're concerned --
13            THE COURT:  As far as, in your category of
14    Jencks right now, the only thing you have is agent
15    notes.
16            MR. BECK:  That's right.
17            THE COURT:  And you may produce those even
18    earlier?
19            MR. BECK:  That's right.  In the universe
20    of documents and materials that we have, the only
21    thing that we are holding back at this point is the
22    agents' notes.  So Rule 16, Brady, Giglio, Jencks,
23    that whole universe, the only thing we have right now
24    are agents' notes.
25            THE COURT:  Okay.  So if I understand, what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is being withheld is the agent notes for the present
 2    time, additional agent notes, and redacted PSRs, the
 3    redactions in the PSRs?
 4             MR. BECK:  Right.  On top of that -- it's
 5    not being held back, but it's in the process of being
 6    redacted and disclosed, is the Mario Rodriguez box of
 7    personal property that we came through in that first
 8    trial.
 9             THE COURT:  That's the thousand pages that
10    were found in the box under the agent's desk?
11             MR. BECK:  Right.  So those are being
12    redacted right now and marked for production.
13             There were jail calls that were requested
14    from Corrections.
15             THE COURT:  Those are ongoing?
16             MR. BECK:  Those are -- I mean, those are
17    ongoing, but we received some from the past, in
18    response to Mr. Castle's subpoena, that are being
19    produced, it's my expectation this afternoon, to Mr.
20    Aoki.
21             There is a file from the Bureau of Prisons
22    that was produced to our office.  I don't know really
23    why, but that is somewhere in the mail.  I'm
24    guessing, with how long it's been, it's on horseback
25    coming to Las Cruces, New Mexico.  But we've not
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    received that yet.
 2              THE COURT:  It's coming down here?  Not Mr.
 3    Aoki, it's coming here?
 4              MR. BECK:  It's coming down here.  And as
 5    soon as we get it, we're going to turn around and
 6    produce it.  Because I've spoken with the BOP
 7    attorney who provided it to us.
 8              THE COURT:  Fed Ex runs between Albuquerque
 9    and Las Cruces.
10              MR. BECK:  With the speed this is going,
11    they may actually run; they may not take a car.  They
12    may do that cross-country.  But as soon as we get
13    that, it will be turned over.
14              THE COURT:  All right.  What am I missing?
15    It sounds like there is nothing to grant here.  Do
16    you see something different?
17              MR. CASTLE:  Yes.  Your Honor, with regard
18    to the presentence investigate reports, only two have
19    been produced in discovery.
20              THE COURT:  He's admitting that; he says
21    they're redacting it now.
22              MR. CASTLE:  I know.  We filed the motion
23    in January, I filed it.  And they said they were
24    going to produce them by February 12.  They haven't
25    produced them.  They obviously contain Brady and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Giglio.  They don't give an excuse as to why they
 2    haven't turned them over.
 3              THE COURT:  Let me ask this:  When do you
 4    think the PSRs, the redacted PSRs, are going to be
 5    produced to the defendants?
 6              MR. BECK:  So I think -- I'll have to look
 7    back at it.  My memory serves me that there are
 8    three.  And so I'm surprised they don't have three.
 9              MR. CASTLE:  I was corrected.  Roy Paul
10    Martinez.
11              THE COURT:  You think that you're only
12    needing to produce three for this trial?
13              MR. BECK:  Yes.  So if they have three, the
14    have -- no, I'm not saying for this -- I'm saying
15    yes, yes, in production of those, those are the three
16    PSRs --
17              THE COURT:  You've only got three PSRs for
18    this trial?
19              MR. BECK:  Right.
20              THE COURT:  Do you have those three PSRs?
21              MR. CASTLE:  We don't.  And what's
22    interesting, Gerald Archuleta, who testified in the
23    first trial, he's due to testify in Trial 2, his PSR,
24    I assume, was given over to Trial 1 lawyers, and
25    already went through the redaction process.  The same
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    thing with Frederico Munoz.  These are just ones I'm

2    coming off the top of my head that I think testified.

3    I think -- so I don't know why those haven't been

4    produced, Judge.  I did review those.  Now, what they

5    originally requested this Court was authority to

6    redact personal identifying information.  But there

7    are entire paragraphs that are missing, they're

8    blacked out -- sometimes two-thirds of a page is

9    blacked out, which is a narrative about the person's

10   life or history and background.  We're not going to

11   have time to litigate that.

12            THE COURT:  Let me ask Mr. Beck:  My memory

13   is the same, although it's not strong, that we were

14   just going to redact Social Security numbers, and

15   maybe some addresses.  Are y'all redacting more?

16            MR. BECK:  Yes.  We have redacted -- I

17   think we've redacted height and weight as personal

18   information.  I guess I don't have a problem removing

19   that.  I'd have to look back at them.  We also

20   redacted -- in the beginning of these PSRs, as I

21   said, I thought people would be familiar -- in the

22   beginning of the PSRs, they list all of the

23   co-defendants for all of the charges in all of the

24   related matters.  And so, in discussions with defense

25   counsel in the first trial, we redacted those because

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    if they were going to want to put them in front of
 2    the jury, or ask things like that, I think they
 3    thought it was prejudicial to have everyone's
 4    information on those.
 5              So, as I said, if --
 6              THE COURT:  Do you disagree with Mr. Castle
 7    that there are like pages and three-quarters of a
 8    page redacted?
 9              MR. BECK:  No.
10              THE COURT:  So how are we coming up with
11    that, if we're doing weight and height and Social
12    Security numbers?
13              MR. BECK:  Again, I'd have to look back.
14    It may be personal information related to something
15    from Probation.  I'd have to look back at it.  But --
16              THE COURT:  It's not your intent to keep
17    what I'll call personal information; in other words,
18    marriages, children, you're not trying to just redact
19    that?
20              MR. BECK:  No, that information is all --
21              THE COURT:  You had an agreement with the
22    first group as far as that cover page, all the other
23    defendants?
24              MR. BECK:  Right.
25              THE COURT:  And then you had -- then you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    took out Social Security numbers and maybe addresses,
 2    telephone numbers, that sort of thing?
 3              MR. BECK:  Sure.  And I mean, it looks
 4    likes they have it, so they can put it in front of
 5    you and argue about it, if you want, or they can talk
 6    to me, and I can --
 7              THE COURT:  Well, if we have an agreement
 8    of what we're going to redact and not redact, my
 9    memory is that what Mr. Beck is saying -- we were
10    going to take out Social Security numbers, and I
11    think addresses, maybe telephone numbers, that sort
12    of thing.  I don't remember weight and height.  But I
13    think if you want the other defendants' at the bottom
14    for the second trial, you're willing to give it,
15    right?
16              MR. BECK:  Sure.
17              THE COURT:  That was more of a request from
18    the first ones, because they were putting it up on
19    the screen, and they just wanted it out, right?  Is
20    that the situation?
21              MR. BECK:  Right.
22              THE COURT:  So if you want it, you got it.
23              MR. CASTLE:  That's what they promised
24    before, Judge.  I can show the Court real simply an
25    example.  I mean, I know that for some of us height
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and weight might take an entire paragraph, but
 2    what -- if I could, could we turn this on real
 3    quickly.
 4              MS. ARMIJO:  Who is that?
 5              MR. CASTLE:  It's Jake Armijo.  This is a
 6    section called offense, for which he pled.  And they
 7    will put down offenses and information about it.  And
 8    when we go down, all sorts of material --
 9              THE COURT:  I know what's on that page and
10    you know what's on that page, it's all the other
11    defendants.  But he's willing to give it to you if
12    you want it.  Other defendants didn't want it.  So
13    he'll give you that, right, Mr. Beck?
14              MR. BECK:  That's right, Your Honor.
15              THE COURT:  Okay.
16              MR. CASTLE:  I'm trying to avoid -- my
17    notes, obviously are showing what my work product is,
18    but I'm trying to show more information.  Perhaps I
19    have another one.  Do you have that hard copy?
20    Perhaps, without going through all of this, Judge, if
21    they promised what -- if they deliver what they
22    promise here on the record, then I don't think we're
23    going to have a problem.
24              THE COURT:  Okay.
25              MR. CASTLE:  But their practice was to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    eliminate much more than just --
 2              THE COURT:  And I think that was an
 3    agreement they reached in the first trial.  But if
 4    you don't want it, Mr. Beck says, fine with him,
 5    he'll give it to you.
 6              MR. CASTLE:  For example, here is the
 7    benefits they're getting, what their sentencing
 8    considerations are for Mr. Clark, and we have it all
 9    blacked out.
10              THE COURT:  Yeah, I think when you go to
11    those pages, and I don't have them memorized, and I
12    haven't reviewed any PSR except what's been played
13    here in the courtroom, I think that the PSR writer
14    just plugs those in from every defendant in the deal.
15    So that's the other defendants' stuff.  So you'll get
16    it.
17              MR. CASTLE:  Okay.  That's fine.
18              THE COURT:  So let's be really clear:
19    Social Security numbers are out; everybody agree?
20              MR. CASTLE:  Yes.
21              THE COURT:  What else?  Do you want height
22    and weight?
23              MR. CASTLE:  I actually think height and
24    weight could be relevant, if they're committing a
25    violent crime.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Can you give them a height and
 2    weight?
 3              MR. BECK:  Sure.
 4              THE COURT:  So height and weight, you'll
 5    get them.
 6              What else do you want to keep out?
 7              MR. BECK:  I think there are personal
 8    addresses, Social Security numbers --
 9              THE COURT:  Personal addresses.  Is that
10    okay, keep them out?
11              MR. CASTLE:  Yes, anything that's
12    considered personal identifying information.
13              THE COURT:  Personal addresses, you can
14    redact those.
15              MR. BECK:  Dates of birth.
16              THE COURT:  Dates of birth, everybody okay?
17    Everybody is saying yes, so you can redact date of
18    birth.
19              MR. BECK:  I think we also redacted in
20    there -- there is an area in there for U.S.
21    citizenship.  I don't really care one way or the
22    other.
23              THE COURT:  Do you want U.S. citizenship or
24    not?
25              MR. CASTLE:  They're all citizens, Judge.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  You can redact or not redact,
 2     it doesn't look like it's important.
 3            MR. BECK:  I wish I had one in front of me.
 4     It may be beneficial if I see anything else that I
 5     think pops --
 6            THE COURT:  For the present moment those
 7     will be the redactions you can make.  If you want to
 8     bring up any other redactions, fine.  Otherwise,
 9     those will be the only redactions you can make.
10            MR. BECK:  And I think -- so I think Mr.
11     Castle is referring to Frederico Munoz and Gerald
12     Archuleta and those folks.  The three we have PSRs
13     for are Benjamin Clark, Roy Martinez, and Jake
14     Armijo.
15            THE COURT:  Those are the ones you have yet
16     to produce?
17            MR. BECK:  No.  Those are the three PSRs
18     that exist.  That's the universe of PSRs.  The other
19     folks don't have PSRs.
20            THE COURT:  So Archuleta doesn't have a
21     PSR, Munoz doesn't have a PSR?
22            MR. BECK:  Right.
23            THE COURT:  So there are only three.
24            MR. CASTLE:  They pled over a year ago.
25     I'm not sure the practice in this jurisdiction, but I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    guess that's what they're saying.
 2            THE COURT:  Well, I can tell you the
 3    practice, but -- I don't know in the situation, but
 4    the practice is, as soon as there is a plea, within
 5    90 days they typically start producing a PSR.  There
 6    may be some reason that one was not produced.  Either
 7    they told Probation not to produce one, or something
 8    like that.  But, typically, the process starts fairly
 9    promptly, and it's done within the 90 days.
10            MR. CASTLE:  I've been told by
11    Ms. Harbour-Valdez that both Javier Alonso and Ruben
12    Hernandez, she knows have been interviewed by
13    Probation, and that process has already occurred.  So
14    I would just ask them to redouble their efforts in
15    determining whether those presentence reports exist.
16            THE COURT:  Are you making a list of these,
17    Mr. Beck?
18            MR. BECK:  I'm listening.  I'll --
19            THE COURT:  Are you going to contact
20    somebody and see if there is a PSR that's been
21    prepared on these folks?
22            MR. BECK:  Yes.
23            MS. ARMIJO:  And, Your Honor, I'm going to
24    check.  There is only a handful of people at
25    Probation that are dealing with these.  So I will
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    reach out to that person, just to make sure that we
 2    have the ones that we believe that we do.  But there
 3    have not been a lot produced.
 4              THE COURT:  Who do you have as working on
 5    this in the probation office?  I'm having -- I'll
 6    give you the list of people I know, and you can then
 7    tell me if I'm wrong or there is more.  Amy Denise
 8    Cord being one --
 9              MS. ARMIJO:  That's going to be the one
10    that I was going to email, Your Honor.
11              THE COURT:  Diana Diaz; some of these are
12    down here and I'm not as familiar with them.  Brenda
13    Richardson, Arianna Trujillo, Daniel Maez, Denise
14    Boregas, and Rosa Ramos, Sarah Lermer?  No, none of
15    these people?
16              MS. ARMIJO:  Your Honor, I believe it's
17    primarily Amy Cord.  I think David Mills may be
18    involved, and I know somebody in Albuquerque -- I
19    think they kind of split the baby between the
20    indictments.
21              THE COURT:  Okay.  Do you feel, if you get
22    hold of Ms. Cord, you're going to know the
23    universe --
24              MS. ARMIJO:  Yes, Your Honor.  I'm fairly
25    confident about that, because they are -- they have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    them work closely together.
 2              THE COURT:  Okay.
 3              MR. CASTLE:  Mr. Lucero, as I've learned
 4    from -- Leroy Lucero -- as I've learned from his
 5    lawyer over several emails --
 6              THE COURT:  Mr. Fallick.
 7              MR. CASTLE:  Yes.  He obviously was
 8    sentenced.  He's serving a sentence right now.  And
 9    so I can't understand why he wouldn't have one.
10              THE COURT:  Who sentenced him?
11              MR. CASTLE:  It might have been Your Honor.
12    That's my memory.
13              THE COURT:  I don't remember that.
14              MR. COOPER:  Your Honor, if I may, we have
15    a pending motion with regard to that.  And he was
16    sentenced I believe in 2006(sic).  We've requested
17    transcripts of that sentencing hearing, and then also
18    there is a recent supervised release sentencing
19    hearing.  We've requested that transcript.  But we
20    don't have the presentence report for that.
21              THE COURT:  So this was not a crime
22    committed in the context of these SNM prosecutions,
23    this was for something else?
24              MR. COOPER:  Well --
25              MR. CASTLE:  No, Your Honor.  But we did
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

106

```
 1    ask the Government to look into that.  We do
 2    believe -- it hasn't been disclosed to us at all, but
 3    we do believe he had favorable treatment on his
 4    supervised release revocation in return for
 5    cooperating with the Government here.
 6              THE COURT:  When do you think that
 7    supervised release occurred?  Because the reason I'm
 8    asking is I don't think I've seen Mr. Fallick in two
 9    years.  That doesn't mean I haven't seen him.  But I
10    can't recall seeing him since these SNM cases
11    started.
12              MR. CASTLE:  I don't have a memory, Your
13    Honor.  It would have been in the last year.
14              MR. COOPER:  I believe it was about a year
15    ago, Judge.
16              THE COURT:  About a year ago.
17              Mr. Beck, first of all, have you looked --
18    there must be a PSR for the 2006.  Have you gone back
19    and looked and seen --
20              MR. BECK:  I haven't seen that one.  That
21    file would be in archives, given that it was 12 years
22    ago.  So we'll go back and order the file.
23              THE COURT:  If you need any order or
24    something to get that produced to you, then --
25              MR. BECK:  We'll check it out on our end
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                    BEAN                                  e-mail: info@litsupport.com
                    &ASSOCIATES, Inc.
                    PROFESSIONAL COURT
                    REPORTING SERVICE

1    and let the Court know.

2              THE COURT:  Do you know anything about the

3    supervised release?

4              MR. BECK:  I don't, no.  That's news to us.

5              THE COURT:  Do you know, Ms. Armijo?

6              MS. ARMIJO:  No, Your Honor.  I was going

7    to look it up on the system.  It wasn't handled by

8    us, that I recall.

9              THE COURT:  So the SNM team didn't handle

10   the supervised release?

11             MS. ARMIJO:  No, your Honor.

12             MS. HARBOUR-VALDEZ:  I've got the docket

13   here, Your Honor.  The AUSA on the case was Eva

14   Fontanez and Luis Valencia.  The case was assigned to

15   Your Honor 2016, February of 2016.

16             THE COURT:  See, that was before I got

17   these cases.

18             MS. HARBOUR-VALDEZ:  And you appointed

19   Mr. Fallick --

20             THE COURT:  Didn't I get these cases about

21   April?  And that doesn't mean somebody didn't say

22   something about the cases that were in front of us

23   on --

24             (A discussion was held off the record.)

25             THE COURT:  All right.  This is the one

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    that I think is the subject of the motion that Mr.
2    Cooper has.  It's sealed in the sense that we sealed
3    the courtroom.  Probably it was requested by the
4    defendant.  And I think the Government said, Well, we
5    don't agree to sealing the courtroom.  So it was --
6    nobody came in, so the transcript is sealed.  So I
7    need to get -- I guess I need to unseal it.  So Mr.
8    Cooper has filed a motion.  And I guess you haven't
9    gotten the consent of Mr. Fallick, right?
10           MR. COOPER:  We have not done so, Your
11   Honor.  And we've shared with the Government as well.
12           THE COURT:  So Mr. Fallick has agreed to
13   unseal that?
14           MR. COOPER:  No.
15           THE COURT:  Oh, he's opposing it.  So that
16   will probably be one of the things we argue at 1:00.
17           MR. COOPER:  We could, sure.
18           MR. CASTLE:  Your Honor, my understanding
19   is that Mr. Castellano was counsel in the Leroy
20   Lucero case for the Government, at least at one
21   point.  So I think that --
22           THE COURT:  Back in 2006, or with the
23   supervised release?
24           MR. CASTLE:  No, on the supervised release.
25           Judge, could I move just quickly to the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    witness statements, the handwritten notes?
 2              THE COURT:  Okay.  Let me sort of wrap this
 3    up.  So are you satisfied with where we are with the
 4    PSRs, other than the fact that Mr. Beck is going to
 5    now check with Ms. Cord, or Ms. Armijo is, and check
 6    with Ms. Cord, and see if there is anybody else that
 7    has got a PSR other than that we've identified here?
 8    And also Mr. Beck is going to check with the 2006 of
 9    Leroy Lucero, and see if there is a PSR from there
10    that needs be produced so we can discuss the
11    redactions.  Anything else on PSRs?
12              MR. CASTLE:  No, Your Honor.  I can't speak
13    for all the defendants --
14              THE COURT:  Mr. Burke is standing there.
15    Mr. Burke, do you want to wrap up the PSR?
16              MR. BURKE:  I couldn't hear part of it.
17    Which are the three of the witnesses in Trial 2 that
18    we are going to get?  I thought the three were going
19    to be provided:  Jake Armijo, Ben Clark, and Roy Paul
20    Martinez.  Thank you.
21              Well, my understanding of how this process
22    works, is that drafts of the PSRs will be started
23    almost immediately, because the Probation Department
24    needs to get going.  So with respect to any witness
25    who has pled, we would want whatever draft exists as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    of now, even if they are not finished.  If that's the
 2    reason that we're not getting them, there will be a
 3    draft, and it will contain Brady and Giglio material,
 4    and we want the draft as it exists.  Otherwise, I
 5    don't believe these witnesses should be permitted to
 6    testify.
 7              THE COURT:  Well, I guess you need to ask
 8    Ms. Cord that question:  Where are they?  I tend to
 9    think that if they've taken some statements, they may
10    need to produce that information.  But I don't know,
11    I just don't know if interviews have taken place.
12              MR. BURKE:  And I don't really know either.
13    But I think that they move along fairly quickly.  It
14    may not be finalized yet, but there will be
15    something.
16              MR. BECK:  I don't know.  Those would be
17    filed in the Court's possession, and not in the
18    United States' possession.
19              THE COURT:  I guess I'm probably not going
20    to get a PSR, though, until they're finished.
21              MR. BECK:  That's my understanding.  So I
22    mean, the United States can't turn over what we don't
23    have.
24              THE COURT:  Right.
25              MR. BECK:  That's pretty obvious.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BURKE:  The Probation Department is an
 2    arm of the Court, and we would ask for a court order
 3    directing the Probation Department to provide us with
 4    whatever drafts have been made, because, Mr. Beck is
 5    correct, if there is going to be a 5K, it won't be
 6    all wrapped up until later.  But there is a process
 7    underway, and we are entitled to whatever drafts
 8    exist.  And if the Government wants to take the
 9    position that they don't have it yet -- sounds right
10    to me -- somebody has it, and I believe it would be
11    an arm of the Court, so that we would be entitled to
12    that.
13            THE COURT:  Well, why don't you do this:
14    Why don't you provide Mr. Beck and Ms. Armijo, after
15    you talk to the people in Probation, figure out where
16    they are on all the people that are going to testify,
17    and then send a letter.  And then Mr. Burke, if you
18    get the letter, you don't have a PSR, and you feel
19    like there is drafts, prepare an order, run it past
20    the Government.  And then if they approve of the
21    order, then I'll enter the order and order Probation
22    to give --
23            MR. BURKE:  Thank you very much, Your
24    Honor.
25            THE COURT:  All right.  Everybody confident
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    on the PSRs, what we're doing on PSRs?

2            All right.  Mr. Castle, do you want to go

3    to the next topic?

4            MR. CASTLE:  Yeah.  And just before I do, I

5    just want you to know that in the Leroy Lucero

6    matter, Ms. Armijo actually entered her appearance

7    and appeared in that case, on Mr. Lucero's case, on

8    February 28, 2017, according to the docket report.

9            Your Honor, on the handwritten notes what I

10   understand the Government to say is they're going to

11   review them and turn them over as Jencks material.

12   What I haven't heard them say is that they've

13   reviewed those notes to see if they contain Brady or

14   Giglio.

15           THE COURT:  I think they're saying they

16   haven't.  Right, Mr. Beck, you haven't done that yet,

17   right?

18           MR. BECK:  That's not correct.  I did

19   review with Special Agent Acee notes back in May of

20   whatever that was, 2017.  I did a Brady-Giglio

21   review.

22           THE COURT:  All notes, or just his notes?

23           MR. BECK:  His notes at that time.  I'm

24   sure there are a lot more.  But we are reviewing, and

25   as I said we're going to talk about disclosing before

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the Jencks deadline.

2              MR. CASTLE:  So what they haven't done is

3    looked for Brady and Giglio, which they've been

4    instructed to do for more than a year.  I'll give the

5    Court the exact numbers.  There are 838 302s, 191

6    1023s.  Some of those might be duplicates in the

7    sense that it was a 302 and a 1023, but roughly over

8    1,000.  And they've turned over 48 sets of notes.

9              THE COURT:  Well, let me say this:  The

10   Government does need to produce immediately Giglio,

11   Brady, and Rule 16, even if it's in the agents'

12   notes.  So that's the reason you may just really have

13   to just produce them rather than holding them back

14   for the Jencks material, because that's a standing

15   order as far as Brady, Giglio, and Rule 16

16   information.

17             MR. CASTLE:  I looked at this, too, and I

18   think --

19             MR. BECK:  I should be clear.  I've

20   reviewed notes.  I have not reviewed -- nor do I know

21   whether they exist, or where to find them, but I will

22   look -- I'm guessing with the number of 302s and

23   1023s, they're referring to files other than the

24   Atonement file, which is the file for this case.  So

25   those would be notes of various special agents

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    whom -- some of whom we'll hear from today, or this
2    week.  But we have not reviewed those.  I don't know
3    where those are.  But we'll see if we can track them
4    down, if they still exist.
5              MR. CASTLE:  Just to let the Court know on
6    the notes issue, we sent a letter to the Government,
7    I think it was six months after the case started,
8    asking them to produce handwritten notes, and to
9    review those, and to preserve them.  And if they were
10   going to disagree with that, to let us know, so we
11   could file an appropriate motion.
12             They never responded, never objected to
13   that process.  What they've represented to the Court
14   in their response on the handwritten notes motion --
15   which is a different motion -- is we will produce
16   notes that were produced after this Court's order on
17   notes.  Very carefully worded.  It wasn't:  We're
18   going to produce all notes.  They're saying now they
19   will produce all notes, then we'll accept that.  But
20   it's not just after the Court's order.  I think this
21   Court has written on this many times in other
22   decisions.  They're aware of that.  They've known
23   that since they started this case -- or should
24   have -- that the obligation to preserve notes
25   occurred.  And what we've requested is not just the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   existence of notes, but if notes were destroyed,
 2   after they were on notice to preserve them, they need
 3   to advise us, so that we could file appropriate
 4   motions.  So there is another aspect of the notes
 5   motion.  And luckily, if we resolve this now, when we
 6   come up to the actual notes motion, we'll skip it.
 7   But we are -- I don't know how they're going to
 8   review 1,302 notes in 12 days for Giglio and Brady.
 9            THE COURT:  Well, I have a feeling they're
10   just going to produce them all to you as soon as --
11            MR. CASTLE:  I'm hoping.
12            THE COURT:  You're probably going to get
13   what you want.  Do you want to respond, Mr. Beck, on
14   this one issue about the notes were destroyed?  Are
15   you going to provide that information, or can you
16   assure the defendants that after you received their
17   letter or my order, that no notes were destroyed?
18            MR. BECK:  The FBI notes were not
19   destroyed.  There may be notes of non FBI persons
20   that were destroyed before the Court's order.  After
21   the Court's order, there were no notes that were
22   destroyed.  So after everyone was put on notice,
23   there were no notes destroyed from anyone.  Before
24   that date, there were no notes destroyed, no FBI
25   notes destroyed.  That's all that I know.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    know if there were any non FBI persons' notes who
2    were destroyed, who would have been at the interviews
3    or debriefs before -- whenever that was, May 2017.
4              THE COURT:  Anything else I can do on that
5    issue, Mr. Castle?
6              MR. CASTLE:  No, Your Honor.
7              THE COURT:  Okay.  All right.  Mr.
8    Blackburn.
9              MR. BLACKBURN:  Could I just have a second?
10             THE COURT:  Sure.  Take your time.
11             MR. BURKE:  Your Honor, may I take up some
12   issues?
13             THE COURT:  Yeah.  Hold on, let me sort of
14   bring closure to this one issue, and then see if --
15   then I'll take up other issues.  But let me bring a
16   little closure here so we can move on.
17             MR. BLACKBURN:  Judge, just a couple of
18   follow-ups on what Mr. Castle and Mr. Beck are
19   talking about.  As I understand, during the course of
20   the trial, there was a box of documents that were
21   found.  And during the course of the trial, those
22   notes and everything were provided to the lawyers
23   here.
24             Now, I understand, from talking with Mr.
25   Beck, what they're doing is they're going back and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   redacting those so that those can go on the
 2   computer -- or on the tablets, so that our clients
 3   can view those.  I think what he's saying is that
 4   they're going back and redacting some of the personal
 5   redactions, some of the personal information on
 6   those.  So I just want to let the Court know that
 7   that's what Mr. Beck and I talked about just now.
 8   Because we've never seen -- the clients have never
 9   seen the documents.  And in order put them on the
10   tablets -- because we'd like to get those to these
11   guys.  I mean, they weren't in trial the whole time,
12   and all they know is what we told them.
13           The second thing is, obviously, during the
14   course of the trial, all the witnesses testified.
15   Some of these witnesses are going to testify again as
16   it relates to the second trial, some of the
17   cooperators, again.  And these defendants have not
18   had the opportunity to hear or see or anything about
19   that testimony.  And again, we have to get that
20   downloaded onto the tablets in order to get that.  So
21   it has to go from somebody to Mr. Aoki and then do
22   the tablets.  And it's taking a while.
23           And the fact that we're getting close to
24   trial, we would like to see if we could expedite that
25   process as soon as possible, because otherwise, these



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   guys are -- for us to be able to meet with our
 2   clients, to go over everything that the cooperator
 3   said at the first trial, or other witnesses in
 4   general.  So those are the things that we would --
 5              THE COURT:  Do you have a suggestion or a
 6   request?
 7              MR. BLACKBURN:  Well, I don't know -- I
 8   mean, there was daily transcripts, I guess, that were
 9   given to the people in the first trial and to the
10   Government.  I mean, I would think that those could
11   just be shipped up to Aoki immediately somehow -- I
12   don't know how -- so we can get those on the tablets.
13   Because the Court knows there is a couple days
14   turnaround, obviously.
15              THE COURT:  Let me see if Ms. Bean knows --
16   and we'll have to help her out here.  I've been
17   paying a lot of CJA vouchers, but I know that Lincoln
18   Sorrell has been pushing back on certain payments of
19   certain items.  And I'm not sure who is winning on
20   this.  And Ms. Waters is also -- Ms. Bean, can you --
21   why don't you, first of all, without typing, state
22   what the current situation is with transcripts.  And
23   then we'll pause and let you type that up.  Does that
24   work for everybody?
25              All right.  So Ms. Bean is just going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    tell you what the situation with CJA vouchers are.
 2    And then we'll let her type her own words.  Okay,
 3    she'll fill it in.  Let me ask Ms. Bean this
 4    question:  What is it that Mr. Sorrell is resisting
 5    paying?
 6              THE REPORTER:  Okay.  I haven't been paid
 7    on any of it.  And what happened was -- you might
 8    recall this, you asked --
 9              MR. BLACKBURN:  Yes.
10              THE REPORTER:  -- for three stations for
11    five defendants --
12              MR. BLACKBURN:  Don't blame this on me.
13              THE REPORTER:  No, no, no.  I have you on
14    the record saying it.  And I was asked how much it
15    was going to cost, and I went by statute.  You got
16    Cari to approve it.  And then, when there was
17    another -- oh, when we had to separate the tables,
18    then Amy Sirignano asked for four stations.  And
19    that, my understanding, was approved.  I never saw it
20    in writing.
21              But now they are saying that there is a
22    dispute about what I can charge for it.  There is a
23    statutory rate that says I can charge 3.05 for the
24    first station and then 2.10 for each additional one
25    up to four, and then if it's more, then it's one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    dollar something.  They are now saying I can only
 2    charge the 1.50 per station instead of the original
 3    at 3.05 and others at 2.10.
 4            THE COURT:  Okay.  Let me ask this, though:
 5    Is the first trial being completely reduced to a
 6    final transcript?
 7            THE REPORTER:  That's a completely
 8    different thing that's going on right now.
 9            THE COURT:  And is there any dispute
10    between Ms. Waters and Mr. Sorrell -- and I don't
11    think I'm the problem -- are either one of them
12    disagreeing that the transcript of the first trial
13    should be reduced?  Is that being paid?
14            THE REPORTER:  I don't know, because I
15    can't submit a CJA to be paid until the entire
16    transcript is completed. They probably will dispute
17    it, based on my experience.
18            MS. HARBOUR-VALDEZ:  Your Honor, the Auth
19    was approved for her to prepare those transcripts.
20    My office submitted that.  And the authorization was
21    approved.
22            THE COURT:  And did Ms. Waters approve it?
23            MS. HARBOUR-VALDEZ:  Yes.
24            THE COURT:  Y'all talked to her and she
25    approved that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          MS. HARBOUR-VALDEZ:  My paralegal tells me
 2    that those Auths don't go to Ms. Waters first,
 3    because they're considered "expert services," I
 4    guess.  So we were instructed by Ms. Waters that
 5    those are submitted directly --
 6          THE COURT:  Why don't do you this:  Why
 7    don't you call Ms. Waters and Mr. Sorrell as soon as
 8    you can.  See if there is any problem with that.
 9    Assuming there is not a problem, then -- in my mind,
10    I have seen stuff, as I've approved, that Mr. Sorrell
11    is not approving, and is recommending that I reject
12    certain vouchers.  And it seemed to me it had to do
13    with the fact that, in his view, because in the first
14    trial they were getting real-time and rough drafts,
15    that they were not entitled to a final transcript.
16          So what I don't want to get in a situation
17    is where Ms. Bean is sitting here preparing a massive
18    amount of transcripts and nobody is going to pay for
19    them.
20          So I think we probably need to, during the
21    lunch hour, find out whether Ms. Waters and
22    Mr. Sorrell are on board to preparing all these
23    transcripts.  Or otherwise, we're going to run into a
24    train wreck, with her staff preparing a bunch of
25    finals and nobody paying for it.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1            MS. HARBOUR-VALDEZ:  Correct.  My paralegal
2     has just stepped out to go talk to Mr. Sorrell, and
3     we'll get this sorted.
4            One suggestion I have, Your Honor, is that
5     as the transcripts are provided to the defense team,
6     I'm happy to email those to Mr. Aoki.  What he will
7     then do is turn around and send me a flash drive.
8     And I spent my lunch break yesterday uploading new
9     discovery to the tablets.  I'm happy to do that
10     again.
11            But, obviously, we want Ms. Bean to get
12     paid for her services.  So I think that's the first
13     order of business.
14            THE COURT:  Okay.  All right.  Somebody
15     check with Ms. Waters.
16            MS. HARBOUR-VALDEZ:  Yes.
17            THE COURT:  Because if there is a dispute
18     between Ms. Waters and Mr. Sorrell, then I will need
19     to probably resolve that.
20            All right.  So let's assume for the present
21     time that you're going to get final transcripts of
22     the trial -- going back to you, Mr. Blackburn -- what
23     is it that you need on this issue?  Is this issue now
24     resolved assuming that we don't have a dispute about
25     payment?

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                             1-800-669-9492

BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1              MR. BLACKBURN:  No, Your Honor, it is
 2     because --
 3              THE COURT:  You're okay, then --
 4              MR. BLACKBURN:  I thought we needed
 5     permission from the Court or somebody to be able to
 6     get these to Aoki right away, without --
 7              THE COURT:  I guess the Government doesn't
 8     care, right?  You don't care how it gets to Mr. Aoki?
 9              MS. ARMIJO:  No.
10              MR. BLACKBURN:  That's what's going to be
11     on the tablets.
12              THE COURT:  Anybody else care?  All right.
13     So we'll handle it that way.
14              MR. BLACKBURN:  And I know that
15     Ms. Harbour-Valdez said that she would do the flash
16     drives here; otherwise, we've got to send them back
17     and forth, and we lose them.  And once Mr. Aoki does
18     that, it's a lot of time on her behalf.  But it's
19     only going to be for the ones that are in the
20     courtroom, obviously, for this trial.  So I don't
21     know what's going to happen with trial, with the
22     other people, so --
23              THE COURT:  Okay.
24              MR. BLACKBURN:  Thank you, Your Honor.
25              THE COURT:  So we've got that resolved.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Anything else?

 2              MS. HARBOUR-VALDEZ:  We'll report back

 3    after she speaks with Mr. Sorrell.

 4              THE COURT:  Okay.

 5              MR. BLACKBURN:  Thank you, Judge.

 6              THE COURT:  I'm looking for Mr. Burke.  Mr.

 7    Burke, the next issue?

 8              MR. BURKE:  Your Honor, the reason I asked

 9    to speak now is 1061 is on the list of motions to be

10    heard.  That's a motion that was filed on -- a year

11    April 6, '17; it's Document 1061.  The Government's

12    response is 1115, and our reply was 1148.  And so

13    that flows a little bit more to take it up now, and I

14    have just a few comments about.

15              Something that I have tried to do is on the

16    Elmo now, Ben Clark's 302.  There was a recording and

17    a verbatim transcript, and I asked my paralegal to

18    touch base with the prosecutors' paralegal, Roxanne

19    Castillo, to get that transcript and tape recording.

20    I found that that's a pretty good way of doing

21    things, is to have the paralegals coordinate directly

22    with each other.

23              And that request got blown off.  But we

24    really do need to get the transcript and the tape

25    recording of Ben Clark's interview.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            THE COURT:  So what you're asking is for
2    Ms. Feldman is to be able to talk to the paralegal
3    for the Government?
4            MR. BURKE:  Essentially.  Because, I mean,
5    they were in trial; no one can accuse these
6    prosecutors of not working hard, and I thought that
7    was a way to get these specific items.  Because we
8    really do need the transcript and the tape recording.
9    But I wasn't able to get it through this method.
10           THE COURT:  Would y'all prefer not to have
11   paralegal-to-paralegal communication?
12           MR. BECK:  I think -- I think that's fine.
13   I found this email searching through.  And I did
14   follow up on it somehow.  Although I think my
15   follow-up wasn't followed up on.  So I'll follow up
16   on that not following up with my following up on.
17           MR. BURKE:  May I inquire if the follow-up
18   was directing Ms. Castillo to send us the tape
19   recording?
20           MR. BECK:  It was not.  But what I'm saying
21   is, I think this is probably a fine way to go about
22   it.  I appreciate being cc'd on it.  So --
23           THE COURT:  So you don't have any problem
24   with paralegal-to-paralegal communications?
25           MR. BECK:  No, not at this time.  If my
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                           1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1    paralegal -- if our paralegal starts yelling at me,
 2    then I might bring something up.
 3              THE COURT:  Okay.  Does that help you, Mr.
 4    Burke?
 5              MR. BURKE:  It does.  I just think there
 6    are a few loose ends, and we really need to get them,
 7    and this might be the fastest way to do it.
 8              THE COURT:  Okay.
 9              MR. BURKE:  Then another one was -- I guess
10    that's three weeks ago -- I think this is Leroy
11    Lucero -- and I think he was interviewed at USP
12    Lewisburg, and he was shown a photograph.  I'm
13    guessing it's one of those a gang photographs inside
14    prison.  And I really do need to get that.  And I
15    tried this method to get that photograph, I'd like to
16    get it.
17              THE COURT:  Any thoughts on that, Mr. Beck?
18              MR. BECK:  No.  I would be surprised if we
19    have that -- from 2011, it looks like.  But I will
20    certainly make an inquiry.
21              MR. BURKE:  See, Your Honor, here at the
22    top of this page of the FBI report it says, "The CHS
23    was shown a photograph."  So somebody has it.  It was
24    shown to Smurf Lucero, and it should be available.
25    So I'd like to get it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BECK:  I don't have any thoughts other

2    than I'll follow up.

3          THE COURT:  I mean, if it exists, you don't

4    have any problem producing it or the transcript;

5    correct?

6          MR. BECK:  No.

7          MR. BURKE:  Here's one from -- this is

8    directly to Ms. Armijo.  This was three months ago,

9    and it is directly from the motion for discovery in

10   1061.  It's about DNA follow-up that -- well, they

11   did agree to do it.  But it hasn't been done.  And

12   now we're shortly before trial.

13          And the electronic -- you'll see 1, 2, 3,

14   and 4 -- the electronic data, the STR, and then

15   regarding the Sanchez homicide, the protocols.  So

16   that's three months old.  That was part of the motion

17   which is a year old.  And so I would really like to

18   get those documents, too, since we are on the eve of

19   trial.

20          And included in that is -- there is a

21   summary of the information provided, number 3, to

22   Carey Davis, that's a lab tech, from Assistant United

23   States Attorney Jack Burkhead.  There was an exchange

24   of emails back in 2013.  They were looking at the DNA

25   again.  And I'd like to get those supporting

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                           1-800-669-9492
                                        e-mail: info@litsupport.com

```
 1   documents.  I think I'm entitled to those.
 2              THE COURT:  Any thoughts on that, Mr. Beck?
 3              MR. BECK:  I mean, I think we've requested
 4   the DNA stuff multiple times.  I think we've had it
 5   trickle in, and we've trickled it out as quickly as
 6   it's trickled in.  So I guess I'll follow up on that
 7   and well, and see where we're at.
 8              THE COURT:  What do you need me to do, Mr.
 9   Burke?
10              MR. BURKE:  I'd like to do this with Ms.
11   Armijo and Mr. Beck, if at all possible.  So I'll
12   resend these emails to them, and hopefully, we can
13   work that out ourselves.  And if not, I'll come back
14   and renew the motion to compel in fairly short order.
15              THE COURT:  All right.
16              MR. BURKE:  And then I will say that in our
17   motion we asked for the bench notes of DNA testing as
18   well.  And I'm almost certain -- I don't trust my
19   memory enough to say I'm certain -- but I believe Ms.
20   Armijo said she would get us those if they still
21   exist.  Does that sound right?
22              MS. ARMIJO:  We have made numerous requests
23   for DNA.  There has been various DNA done.  I can't,
24   off the top of my head, speak as to which one this
25   is, and if we've gotten it.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              But, if he resends it to us, hopefully,
 2    while we're in court this week, I'll have answers
 3    what we've requested, what we've gotten, and what
 4    we've disclosed, Your Honor.  We have no problem
 5    disclosing it.  We're not holding back.  And we have
 6    made requests for numerous DNA bench notes throughout
 7    the case.
 8              THE COURT:  So just hold off ordering
 9    anything at this point?  You'll work with Mr. Beck
10    and Ms. Armijo, and renew your request at the
11    appropriate time?
12              MR. BURKE:  Correct.  And I hope to move
13    fast enough that while we're here this week we can
14    report back to the Court, and if I have to, renew the
15    motion to compel.
16              THE COURT:  All right.  Thank you, Mr.
17    Burke.
18              MR. BURKE:  Thank you, Your Honor.
19              THE COURT:  I think it's still your motion,
20    Mr. Castle, if I'm not mistaken.  Anything else you
21    have that you need to --
22              MR. CASTLE:  No, Your Honor.  But just to
23    let the Court know, I think the Court's rulings and
24    the parties' discussions has also resolved the next
25    motion on the list, which is 1694.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Let me find out if anybody has
 2    anything else on Mr. Castle's first motion.  Anything
 3    else?  Does the Government need to say anything else
 4    on that first motion, Mr. Beck?
 5              MR. BECK:  No, Your Honor.
 6              THE COURT:  All right.  If everybody is
 7    ready, then, to go to the next one, which is -- is
 8    that 1694, Mr. Castle?
 9              MR. CASTLE:  Yes, it was just for
10    presentence reports.  So I think we took care of
11    that.
12              THE COURT:  Okay.  All right.  So anybody
13    else have anything on presentence reports, on 1694?
14    Mr. Beck, anything?
15              MR. BECK:  No, Your Honor.
16              THE COURT:  Not hearing anything on that,
17    we move then to 1744, which I have as Tab 9.  And
18    this is Mr. Garcia's motion for immediate discovery.
19              All right.  What do you have on this?
20              MR. CASTLE:  Some of the paragraphs have
21    been resolved, either by production or independent
22    investigation.  So I'll just go through them and tell
23    the Court what I'm no longer requesting, with regards
24    to those paragraphs, and then focus the Court on the
25    ones that we are.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Okay.
 2            MR. CASTLE:  So Paragraph 1, defense
 3    obtained those on their own, so we no longer have a
 4    request there.
 5            Paragraph 2, we're satisfied at this point
 6    that no further orders are required.
 7            Paragraph 3 we are maintaining their
 8    quest -- and this is something that we brought to the
 9    Court's attention previously in motions to compel, we
10    have requested it in writing with the prosecution.
11    And what has happened is that Mr. Lujan has indicated
12    during the first interview that we have in our
13    possession that he participated in two other
14    interviews with the authorities; one being right
15    after the murders, in 2001, where -- I think the
16    Court has heard about it -- he talked about being
17    interviewed, about video, on camera, et cetera.
18    We've asked for either production or an indication
19    that it no longer exists.  Because if we're left in a
20    quandary, where we don't know whether it exists or
21    not, we can't either pursue a motion to dismiss --
22    because we don't really have proof it doesn't
23    exist -- and we don't have an actual interview.
24            And given the Government's position that
25    they don't have to turn over Jencks materials, we're
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    asking for that to be ordered.

2             There is a second interview that happened

3    in 2008.  So the one interview that we have in 2008

4    starts off with -- the beginning of it is -- well,

5    you know, we've -- essentially, we've talked to you

6    before, and as we discussed before, and things of

7    that nature.

8             So there is a prior interview.  And we've

9    asked the Government to either produce that or

10   indicate that it no longer exists, for the same

11   reasons I just stated.  They have declined to do so.

12            Does the Court want to deal with that one

13   paragraph?

14            THE COURT:  Yeah, let's deal with them one

15   at a time, and let's break it down by interview.

16            On this first one, Mr. Beck, are you

17   handling that?  Do you know now whether there is

18   anything that records, reflects --

19            MR. BECK:  I can speak to both of those.

20   And as I said, the whole universe of materials that

21   we're withholding are agents' notes.  So for both of

22   those, if they don't have them, they don't exist.

23   And I think they don't have them.

24            THE COURT:  So they don't have them --

25            MR. CASTLE:  That satisfies us, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  -- and to your understanding
 2    they don't exist?
 3              MR. BECK:  Right.
 4              THE COURT:  Both interviews?
 5              MR. BECK:  Both interviews.
 6              THE COURT:  Okay.
 7              MR. CASTLE:  Going to paragraph 4.  There
 8    is a report from a corrections officer by the name of
 9    Carl -- my best guess is Torbjins -- and there is a
10    page missing.  We asked them -- I mean, I know this
11    is minuscule, Judge, but -- you know, I don't want to
12    have to involve the Court in this, but we asked them
13    for the missing page, and their response is:  We
14    don't have to respond to you whether it exists or not
15    exists.  So we're here before the Court to resolve
16    this.
17              THE COURT:  All right.  Mr. Beck, do you
18    know about this missing page?
19              MR. BECK:  Yeah, I think the full response
20    was that we've complied with our Rule 16, Brady, and
21    Giglio disclosures.  So, if -- again, here it doesn't
22    exist --
23              THE COURT:  You're not withholding this on
24    Jencks?
25              MR. BECK:  No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  You just don't have it?
 2              MR. BECK:  Right.
 3              THE COURT:  Have you been unable to locate
 4   that page?
 5              MR. BECK:  Right.
 6              MR. CASTLE:  That satisfies us, Your Honor.
 7              Paragraph 5:  It's a fairly important
 8   transcript of a person who gave exculpatory
 9   information; namely, that it wasn't Mr. Billy Garcia
10   who ordered the hits, but it was a man by the name of
11   Leroy Lucero.
12              There are pages missing from that
13   transcript.  We've asked for those missing pages.
14   And we've been -- the response is, once again:  We've
15   complied with Rule 16.  But that doesn't tell us
16   whether the pages exist, or whether they're being
17   withheld, or whether they've even looked for those
18   pages.
19              And I think the obligation under Brady and
20   Giglio is, knowing that eight pages are missing from
21   an exculpatory transcript, they have a duty to go and
22   look for that with all due diligence.
23              And so the response is unsatisfactory at
24   this point in time, but perhaps it will be when they
25   respond.
```


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Mr. Beck, do you want to
 2   respond to number 5?
 3            MR. BECK:  Sure.  If they don't have it, we
 4   don't have it.  We're not holding it back.
 5            THE COURT:  Have you looked for this one
 6   specifically?
 7            MR. BECK:  Yes, I've looked for all these
 8   requests.
 9            THE COURT:  And you can't find them in any
10   shape, form, or fashion?
11            MR. BECK:  Everything -- yes, everything
12   that was in here I've looked for.  And if they don't
13   have it, we don't have it.
14            MR. CASTLE:  Your Honor, does that
15   include -- I don't want to ask opposing counsel a
16   question, but does that include the audiotape?
17   Because this is a transcript of an audio-taped
18   interview that obviously existed at some point in
19   time.  And I don't know the extent to which they've
20   looked for that audiotape, and talked to the officers
21   who were conducting that interview, to see if it
22   exists somewhere.
23            THE COURT:  Have you looked for the
24   audiotape, Mr. Beck?
25            MR. BECK:  Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  And you don't have -- you've
 2   been told that it doesn't exist, or they can't find
 3   it?
 4              MR. BECK:  Right.
 5              THE COURT:  Anything else, Mr. Castle, on
 6   that?
 7              MR. CASTLE:  No.
 8              That goes to paragraph 6.  In discovery, it
 9   was indicated that an informant that talked to the
10   authorities had indicated that a different person
11   confessed to being involved in the murders of Garza
12   and Castillo.
13              And I think I'm joined by all the Count 1
14   and 2 defendants in indicating that's an exculpatory
15   piece of information, that someone else confessed.
16   That has not been disclosed.
17              And I'm not sure -- if I could give it one
18   moment.  I apologize.  They provided this recently to
19   us, Your Honor, so I don't think I have to go any
20   further.
21              THE COURT:  Okay.
22              MR. CASTLE:  So we withdraw paragraph 6.
23              THE COURT:  All right.
24              MR. CASTLE:  Paragraph 7 has -- we're not
25   requesting any orders on paragraph 7.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.
 2              MR. CASTLE:  Paragraph 8 is the same kind
 3     of concept of something missing.  We're asking if it
 4     exists, it be produced, or if it no longer can be
 5     located, for them to indicate that.
 6              THE COURT:  Do you want to respond to
 7     number 8, Mr. Beck?
 8              MR. BECK:  Sure, Your Honor.  We're not
 9     holding it back.  We don't have it.  They don't have
10     it.
11              THE COURT:  Is that sufficient, Mr. Castle,
12     on number 8?
13              MR. CASTLE:  Nothing further, Your Honor.
14              THE COURT:  All right.
15              MR. CASTLE:  Paragraph 9, Your Honor,
16     requests placement records.  In a response, the
17     Government did produce placement records for those
18     individuals, except for Ray Molina.
19              But my guess is that, now that they
20     understand that that's missing, that they'll work on
21     that, to get that over to us.
22              THE COURT:  All right.  We're down to Ray
23     Molina on number 9?  Everything else has been
24     produced?
25              MR. CASTLE:  Yes, everything else has been
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    produced.
2             THE COURT:  And you're going to look for
3    Ray Molina?
4             MR. BECK:  Yes.
5             THE COURT:  All right.  So that one is
6    outstanding, but the Government is committed to
7    looking for it.  Does that satisfy you on 9?
8             MR. CASTLE:  Yes, Your Honor.
9             Number 11, this goes along with Mr. Burke's
10   request.  We have identified to the prosecution a
11   specific set of laboratory notes that are missing.  I
12   could tell the Court, just to give the Court a little
13   bit of an idea:  In the 2001 murders, they collected
14   DNA evidence.  Only one set of tests had any
15   significance, and that is, for Count 1 -- I'm sorry,
16   for Count 2, they found a cord that they obtained
17   some DNA from.  And they said that part of it matched
18   Angel DeLeon; none of the defendants here.
19            That testing was done in 2001, when DNA
20   testing wasn't as advanced as it is now.
21            When the FBI redid it, I think in 2015,
22   they were not able to reproduce those results at all.
23   The sample had been degraded enough that you couldn't
24   do any testing.  So we can't do any testing either,
25   because it's degraded so much.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            So the question is whether 2001 testing has
2    any validity.
3            We gave a detailed report to the Government
4    that indicated it wasn't that valid.  In fact, it
5    seemed to be invalid.  But our expert needed to look
6    at the bench notes to see exactly what thresholds
7    were used, and things of that nature, to determine
8    whether -- based upon current scientific knowledge,
9    whether that testing is even at all valid.
10            And that is extremely important information
11    because -- you know, and I haven't filed a challenge
12    to it, because I've been waiting for this.  And we've
13    attached as part of this motion our numerous requests
14    for this information.  And I know the Government
15    keeps saying:  We're going to try to get it.  I think
16    at this point in time we need a court order requiring
17    the New Mexico State Police to produce the bench
18    notes on this particular test to the Government.  And
19    then I'm happy to draft an order to that effect, and
20    identify the specific case number.
21            I could tell the Court, if the bench notes
22    aren't produced, we're going to have to file a motion
23    to exclude the DNA testing.  I'm not even sure if the
24    Government is going to proceed with that DNA testing,
25    given that the FBI couldn't even find -- reproduce

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the same results.  My guess is the FBI probably has

2    already given them a similar evaluation that our

3    expert has, since he advises the federal government

4    on these matters, but -- so we're requesting -- I

5    mean, the time has come.  We've got to have a date.

6              THE COURT:  All right.  Well, let's take

7    that up.  I'll hear from the Government whether they

8    oppose.  Let's go ahead and take our lunch break.

9    See you back in an hour.  We'll try to finish this

10   motion and take up Mr. Fallick.  See you in about an

11   hour.

12              (The lunch recess was held.)

13              THE COURT:  All right.  Go on the record.

14   It looks like, in this case, every attorney has a

15   client, and every defendant has a lawyer.  Missing

16   anybody?

17              All right.  It's right at 1:00.  I don't

18   know, do we have Mr. Fallick on the phone?  Let's see

19   if we can go to Meet Me Conference line -- is that

20   the way we're going to do it -- and see if he's on.

21   So we'll call in ourselves and see if Mr. Fallick is

22   there.

23              Does anyone know the number of his motion?

24   I've got it in my stack here of read materials.

25              MR. COOPER:  1900.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                  1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                  e-mail: info@litsupport.com

```
 1              THE COURT:  Just even 1900?

 2              MR. COOPER:  On the money, Judge.

 3              THE COURT:  Was that given any tab number

 4   by Ms. Wild?

 5              MS. HARBOUR-VALDEZ:  I don't think it was.

 6              THE COURT:  No?

 7              Mr. Fallick, are you there?

 8              MR. FALLICK:  Yes, sir.

 9              THE COURT:  All right.  This is Jim

10   Browning.  And I'm looking for your motion.  I don't

11   think we've given it a tab number.

12              THE CLERK:  It's 31, Your Honor, and it's

13   Document 1900.

14              THE COURT:  If you'll hold just a second.

15   I'm not sure I've seen a Tab 31, I have it as 1358.

16              THE CLERK:  I'll print it for you right

17   now, Judge.

18              THE COURT:  31 was 1898.

19              MR. CASTLE:  We could loan our copy.

20              THE COURT:  I don't need more files.  What

21   I have behind Tab 31 is not what's being told as

22   1900.  So I don't know if I was given those orally by

23   Ms. Wild.  I really don't want another copy.  I want

24   to find the one that I read.  And it's not behind Tab

25   31.  Is this motion in contention with the motion to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   suppress, 1142, by Joe Gallegos?

2              MR. FALLICK:  Your Honor, it's in

3   connection with --

4              THE COURT:  Hold on, Mr. Fallick.  Let me

5   ask the attorneys here.  Is this in connection with

6   somebody's motion here?  Is it the motion to suppress

7   that Mr. Joe Gallegos filed?

8              MR. CASTLE:  No, Your Honor.

9              THE COURT:  Okay.  Well, that may be the

10  problem.  Maybe I was told it was in connection with

11  the motion to suppress.

12             MR. CASTLE:  If I can, Your Honor, I can

13  give the Court --

14             THE COURT:  Well, let me do this:  I've got

15  the motion.  I guess I linked it up with the motion

16  to suppress.

17             All right.  I have read your motion, Mr.

18  Fallick, and I also have this morning run a copy of

19  the revocation hearing that was held before me on

20  March 14, 2017.  I had begun to review it -- I was

21  about halfway through it, then I understand that

22  there was then a sentencing hearing that I don't

23  think you were the attorney on, but it was back in

24  May of 2016.  I have not reviewed it.  So that is

25  what I have reviewed.  And so if you wish to then
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   argue your motion, Mr. Fallick.
 2             MR. FALLICK:  Yes, sir.  The motion is to
 3   suppress the subpoena that was served on Mr. Lucero.
 4   And the question is, is it unreasonable, and is it
 5   oppressive for him to appear?  And we believe that it
 6   satisfies both of those.  Number one, he will not
 7   testify substantively about anything without
 8   immunity -- we have no reason to believe that he's
 9   going to be granted immunity at this time -- based on
10   his right against self-incrimination.  So there is no
11   point in him appearing.
12             THE COURT:  Let me ask, Mr. Fallick --
13             MR. FALLICK:  In a case that we cited from
14   the Tenth Circuit case --
15             THE COURT:  Mr. Fallick, Mr. Fallick, Mr.
16   Fallick?
17             MR. FALLICK:  Yes.
18             THE COURT:  Let me ask you some questions
19   about Mr. Leroy Lucero.  His name has come up, but I
20   don't know a great deal about him.  Let me ask you
21   some questions about him.  Has he ever been charged
22   federally in any of these SNM cases, the DeLeon or
23   Baca, or any other case?
24             MR. FALLICK:  No, sir, Your Honor, he's
25   not.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  He's not been filed -- there
 2    has not been some secret indictment out there or
 3    misdemeanor charge in some separate file that he's
 4    been charged with?
 5              MR. FALLICK:  He only has the charge that
 6    he's on post-conviction release that's before Your
 7    Honor, that I was appointed to represent him in.  And
 8    that's the only current charge that I'm aware of.
 9              THE COURT:  Okay.  And remind me of what
10    that charge was.
11              MR. FALLICK:  You know, frankly, Your
12    Honor, I did not represent him in the underlying
13    proceeding.  I represented him only at the last
14    violation proceeding.  And I'm not familiar with the
15    underlying proceeding.
16              THE COURT:  All right.  Is that the one
17    that Mr. Winterbottom represented him when he was
18    sentenced, I guess by me, on May 26, 2016?
19              MR. FALLICK:  Yes, sir.
20              THE COURT:  All right.  So in this case, he
21    has not been charged with anything, so I guess the
22    other questions will probably answer themselves.  But
23    he has not pled guilty to any crime that is going to
24    require him to be sentenced in the future?
25              MR. FALLICK:  That's correct, Your Honor.
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  And so he hasn't entered into
2     any sort of plea agreement that he's agreed to
3     cooperate with the Government or anything in
4     connection with the SNM cases?
5              MR. FALLICK:  He has not, Your Honor.
6              THE COURT:  All right.  Okay.  Then what
7     you're basically saying is, if he shows up, he's
8     going to take the Fifth for all questions?  Some
9     questions?  What would he take the Fifth on?
10             MR. FALLICK:  Anything beyond his name that
11    has anything to do with the substantive charges in
12    this case, Your Honor, that would be relevant to any
13    of the charges against the defendants.  And that's
14    only one of the grounds for him -- for being quashed,
15    but to me it's a sufficient ground.
16             THE COURT:  Well, let me ask you this:  It
17    seems to me -- and I don't know a great deal about
18    Mr. Lucero, although after I began to read the
19    transcript, I did remember our hearing.  I think it
20    occurred before the SNM cases were assigned to me.
21             But it seems to me that it's going to be
22    difficult for me to intelligently determine what he
23    probably can take the Fifth on, and what he can't
24    take the Fifth on without some questioning, and him
25    being here to sort through that.  I could certainly
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                               (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                          1-800-669-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   imagine that there are things that he -- given my
 2   experience over the last two months with many
 3   witnesses -- that there may be some things that he
 4   can't testify to, and will need to invoke the Fifth.
 5   But I would also think there may be some things that
 6   he can testify to where he can't take the Fifth.  And
 7   so my experience over the last two months, and maybe
 8   even further back, has been that I can't do blanket
 9   Fifth Amendment privilege invocations, without having
10   the witness here, having the lawyer, and all of us
11   picking and choosing.  Your thoughts on that?
12           MR. FALLICK:  Well, I can understand that,
13   Your Honor, and I would say that anything that would
14   be of any significance, of any importance to the
15   defense and the charges that they're facing, would be
16   something -- certainly, there may be something that's
17   of peripheral interest, that is not really going to
18   be significant, that he might be able to answer.  But
19   nothing that's going to be of any help to the
20   defendants.  That's number one.
21           Number two, they've subpoenaed him, they
22   told me, in connection with one motion, although I
23   was told about another one last night.  But when we
24   filed the motion we were aware of one, which is the
25   motion to prevent the admission of statements of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    nontestifying co-defendants implicating Defendant

2    Billy Garcia, and that's docketed as 1307.  Number

3    one, it doesn't seek any relief.  It really is an

4    informational thing that says that it needs to wait

5    for ruling until trial anyway.  So number one, there

6    is really nothing he could say that's going to

7    advance that motion.

8           Number two, Your Honor recently entered an

9    order that, for all practical purposes, disposed of

10   that motion.  It granted it in part and denied it in

11   part.  And that was Your Honor's memorandum opinion

12   that's docketed at 1882.  So again, for that reason,

13   I don't believe that there is any real point to him

14   being there.

15          They raised another motion last night.  But

16   attached to my motion is an exhibit of our exchanges

17   of emails before we filed this motion.  Nothing was

18   identified other than 1307, and I still don't know if

19   the other one is, because it apparently has something

20   to do with a sealed motion.  And that's in terms of

21   the unreasonableness, because there is no point to

22   him attending.

23          In terms of the burdens of him attending,

24   he is under supervised release.  He's being

25   supervised by Mr. Martinez.  He's subject to a GPS

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1   device.  He's in northern New Mexico, in Las Vegas,
2   New Mexico.  And number one, it's a 700-mile round
3   trip.  He does not have transportation.  If he were
4   to use his significant other's car, she wouldn't be
5   able to go to work.  He could use it, but with a day
6   of court and the travel time, it's essentially a
7   20-hour day.  I've been told by Mr. Martinez that,
8   absent an order from Your Honor, that he can't spend
9   the night.  So he has to do a 20-hour day, you know,
10  one day of driving to go back and forth to go to this
11  is hearing.  So there is also safety concerns
12  involved, Your Honor, involved with that, so --
13          THE COURT:  Mr. Fallick.  Mr. Fallick.  Let
14  me ask you this:  I saw that in your pleadings that
15  you were saying that he couldn't spend the night
16  because of something I did, or I needed to do some
17  order.
18          MR. FALLICK:  That's what Mr. Martinez
19  tells me; that he would not be -- that Mr. Lucero
20  would not be permitted to spend the night in Las
21  Cruces.  Without an order from Your Honor, the
22  Probation Office wouldn't permit him to do that; that
23  they had not yet authorized him to travel for a day
24  trip.  But they would do that without an order from
25  Your Honor, but they wouldn't authorize an overnight
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    trip without an order from Your Honor.

 2            And then there become issues of the

 3    batteries for the GPS.  Apparently, he has batteries

 4    for the GPS and that would not allow him to be

 5    monitored.

 6            THE COURT:  Mr. Martinez -- Mr. Fallick,

 7    Mr. Martinez is his probation officer?

 8            MR. FALLICK:  That's correct, Your Honor.

 9            THE COURT:  All right.  Go ahead.

10            MR. FALLICK:  So those are the primary

11    reasons.  The other point, as I understand it, Your

12    Honor, is that in order for this subpoena to have

13    been enforced for an indigent defendant, there had to

14    be a ruling by Your Honor under 17(b), not only that

15    the defendants were indigent, but also of the

16    necessity of the witness' presence for an adequate

17    defense.  And again, given what we understand is

18    happening this week, his presence this week is not

19    necessary.  And I'm not aware of an order that Your

20    Honor said that it was necessary.  Therefore, the

21    statement in the subpoena that he would be

22    reimbursed, I'm not understanding that that's

23    accurate.  Based on the information I have, I did

24    request from the defendants an order showing that

25    Your Honor had said that Mr. Lucero's presence was



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    required.  And I have not received such an order.
 2                THE COURT:  Well, if I understand 17(b),
 3    it's that basically if the defendants secure a
 4    subpoena -- which my recollection is I signed off on
 5    ex parte application here for the subpoena to be
 6    issued for Mr. Lucero -- the defendants here are
 7    unable to pay the witness fees; that if I order the
 8    subpoena to issue, the cost and fees are going to be
 9    paid in the same manner as they are paid for
10    government subpoenas, which I can't say I cut the
11    checks or know actually how that's done, but I think,
12    basically, the fees and costs for a witness are paid
13    by the federal government in some way.
14                Now, how that is done, if it's done out of
15    the Marshal Service, or something like that, I've not
16    had that issue.  But I think that's the way it gets
17    done.  But any thoughts on that?
18                MR. FALLICK:  I didn't recognize that Your
19    Honor had entered an order.  I knew that there was a
20    general indigency order.  I didn't know there was an
21    order issuing the subpoenas under 17(b).  And if
22    there is, I withdraw that argument.
23                THE COURT:  I can't tell you -- I don't
24    have that order in front of me.  Maybe one of the
25    defendants that applied for his appearance at this
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    hearing can either produce a copy or tell us what was

 2    in there.

 3            All right.  Mr. Fallick, do you have any

 4    other arguments in support of your motion to quash?

 5            MR. FALLICK:  My only other point, Your

 6    Honor, is that Mr. Lucero's supervision is expected

 7    to expire this month.  Again, to the extent that

 8    there is any reason for Mr. Lucero to be a witness at

 9    any point, I don't believe there is a reason for him

10    to be a witness this week for anything that is

11    pending before the Court.

12            And after this month -- and I understand

13    the trial is next month -- and I can tell you that

14    we've been told by the Government they don't

15    anticipate calling him as a witness.  I know that can

16    change.  But that's what we've been advised.  But if

17    he is a witness next month, the supervised release

18    issues, the GPS issues, those issues will no longer

19    be relevant, and it would only be all the other

20    factors to talk about for a motion to quash in the

21    future.

22            So another reason we ask that Your Honor

23    grant that now is because things become simplified if

24    he is expected to appear at a later time.

25            THE COURT:  All right.  Thank you, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Fallick.

2            MR. FALLICK:  Thank you, Your Honor.

3            THE COURT:  All right.  Let me go first to

4    the defendants that subpoenaed Mr. Lucero.  That's

5    you, Mr. Castle?

6            MR. CASTLE:  Yes.  By way of history, we

7    filed motion number 1307, which asked for the

8    Government to indicate what statements they were

9    going to offer against the defendants.  They declined

10   to do that.  They announced that they were going to

11   file a James proffer, which would delineate

12   statements by individuals.  We didn't get that when

13   they promised it.  So we anticipated that they would

14   do it sometime before these hearings.

15           We anticipated that Mr. Lucero would be on

16   that James proffer, so we subpoenaed him.  Our motion

17   that deals with the James proffer objections is

18   number 1908, which was filed on March 9.  Their James

19   proffer was on March 7.  We were correct, it turns

20   out that Mr. Lucero was listed by the Government as a

21   source and witness that they would put on evidence

22   through at trial.

23           THE COURT:  Is it one statement or is it

24   more than one statement?

25           MR. CASTLE:  It's more than one statement

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1   indicating that our client is guilty.
 2            But in addition, Mr. Lucero --
 3            THE COURT:  Let me get that chart back in
 4   front of me, and you can tell me on the table which
 5   statements the Government put him on.
 6            MR. CASTLE:  Yes, Your Honor, as soon as
 7   the Court --
 8            THE COURT:  Just bear with me just a
 9   second, I need to find that table again.
10            All right.  I have it in front of me now.
11   Mr. Castle, if you'll direct me to the statements
12   where Mr. Lucero is listed.
13            MR. CASTLE:  The first one would be 10.
14            THE COURT:  And, Mr. Fallick, do you have
15   this table, or are you aware of it?
16            MR. FALLICK:  I have no information about
17   that, Your Honor.  The only thing I have is an email
18   saying that the Government didn't anticipate calling
19   him as a witness.  So this is news to me.  And, of
20   course, I would ask that the parties provide me with
21   anything that would be relevant to give me to
22   consider asserting the Fifth on anything that the
23   Government is planning to call him on.  And I can
24   alert the Court that he will not testify to anything
25   substantive without that immunity.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Give me a second to
 2     just read this so I can refresh my memory on this
 3     statement.  All right.  I have read that statement.
 4              Mr. Castle, what else do you have?
 5              MR. CASTLE:  Number 11.
 6              THE COURT:  Number 11.  All right.  I've
 7     read that one.
 8              MR. CASTLE:  Next one is number 36.
 9              THE COURT:  All right.  I read that one.
10              MR. CASTLE:  Number 71.
11              THE COURT:  All right.  I have read that
12     one.
13              MR. CASTLE:  That's the four that are in
14     that particular document.
15              Then I stand corrected, we filed a motion,
16     1909, which was a motion concerning specific
17     objections, I think target objections.
18              At paragraph 15 -- I couldn't give this to
19     Mr. Fallick because it involved identifying
20     informants, other informants other than Mr. Lucero,
21     so we couldn't give it to him.  It was under seal.
22              But in that motion, at paragraph 15, it
23     indicates that Mr. Lucero has made a statement --
24     most recent was on January 17 of this year, when Mr.
25     Fallick was representing him, Mr. Lucero sat down
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    with the agents of the FBI.  I don't know if Mr.
 2    Fallick was present during that or not, or just gave
 3    his permission for it, or what the circumstances are.
 4    But during that interview, he made a very lengthy
 5    interview, that was taped and we have a transcript of
 6    it.
 7              And in that he indicates that Christopher
 8    Chavez confessed to him his involvement in the 2001
 9    murders, and Joe Gallegos did as well, and that they
10    implicated Billy Garcia in their confessions.  And so
11    that's the subject of our inquiry about, you know,
12    the various issues:  Reliability; whether it meets
13    one of the exceptions, et cetera.  So like I say,
14    that was on January 17, during the time that Mr.
15    Fallick was representing Mr. Lucero.
16              And the Government represented, when we
17    were going through the James hearings, that their
18    entire James proffer was predicated on the fact that
19    they were going to call the witnesses that were
20    listed as the source in the column of the James
21    matter.
22              THE COURT:  They listed Leroy Lucero as a
23    co-conspirator in both the Castillo and Garza
24    murders; correct?
25              MR. CASTLE:  Yes.  The prosecution listed
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    them as both a witness and a co-conspirator.
 2            THE COURT:  I don't remember, but -- I
 3    certainly remember the co-conspirator, but they also
 4    said they would be calling him as a witness?
 5            MR. CASTLE:  Yes.  They said that the
 6    people that are called as sources were the people
 7    that were going to be the sponsoring witness that was
 8    going to bring in the co-conspirator statement of the
 9    person who is listed as the declarant.
10            THE COURT:  All right.
11            MR. CASTLE:  The issue about costs:  On
12    March 9, we sent to Mr. Fallick the information on
13    how the witnesses would get reimbursed for the cost
14    for the U.S. Marshal, so he's aware of that.
15            I have another kind of an interesting
16    thing:  From our records, Mr. Lucero was granted
17    supervised release on March 13, 2017, and that was a
18    12-month sentence, which would have expired
19    yesterday, according to our calculations, unless
20    there was some kind of an agreement to extend
21    probation that's not on the record, which sometimes
22    happens.  So I'm not sure whether Mr. Lucero is still
23    on probation or not, or whether it's about to expire.
24            I'm not sure what else I can address for
25    the Court at this point in time.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.  Hold on, Mr. Fallick.
 2   Let me see if anybody else wants to speak from the
 3   defendants' standpoint.
 4              Mr. Burke, do you want to say something?
 5              MR. BURKE:  It's sort of like what
 6   Mr. Castle was staying:  There are four different
 7   statements.  The Government represented that he was
 8   going to be a witness.  My guess is that when they
 9   drafted it, they thought he would be a witness.
10   They've evaluated their position, and now they're
11   representing to Mr. Fallick that he's not going to be
12   a witness.  And I think we can take them at their
13   word, and he's not going to be a witness.  And
14   they're not going to immunize him.  And it seems to
15   me that's an important factor in evaluating all of
16   this.  And I think we can rely on that, and maybe
17   that --
18              THE COURT:  I'm not sure that, given what
19   we did yesterday, that that's going to be their
20   position today.  But let me -- before I hear from
21   you, Mr. Beck, let me see if anybody else on the
22   defense side has anything they want to say on this.
23              Mr. Benjamin?
24              MR. BENJAMIN:  Yes, Your Honor.  And this
25   is just me:  There was a reference to four
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    statements.  There was two other statements by Mr.
 2    Lucero:  Statement 36 --
 3              THE COURT:  In the table?
 4              MR. BENJAMIN:  Yes, Your Honor.
 5              THE COURT:  Hold on.  Let me pull it back
 6    up.  I may have -- here it is.  Yeah, I think Mr.
 7    Castle mentioned 36.  I have it marked here.
 8              MR. BENJAMIN:  We were having an argument,
 9    Your Honor, as to whether that had happened, or we
10    were --
11              THE COURT:  It had.  The reason I -- it
12    sticks in my mind is, not only did I tab it, but that
13    is one of the ones that Mr. Castellano mentioned
14    yesterday he was not going to try to fit it into the
15    co-conspirator statement exception or provision, and
16    that he was going to have to rely on some other way
17    of getting it in other than a co-conspirator
18    statement.
19              MR. BENJAMIN:  And lastly, Your Honor,
20    number 71.
21              THE COURT:  And I think -- yeah, Mr. Castle
22    mentioned 71.  So I think there is only four on the
23    table, unless there is some disagreement, plus the
24    one that Mr. Castle has identified from some other
25    source that's not on the table.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Correct.  And just so
 2     they're all in one place, Your Honor, I think the
 3     Court has these, but 10, 11, 36, and 71 from Document
 4     1903's table.
 5              THE COURT:  10, 11, 36, and 71.
 6              MR. BENJAMIN:  Thank you, Your Honor.
 7              THE COURT:  Thank you, Mr. Benjamin.
 8              Mr. Solis.
 9              MR. SOLIS:  This might fall under the
10     beating a dead horse category.
11              THE COURT:  Well, some dead horses need to
12     be beaten.
13              MR. SOLIS:  That's right.  So when I heard
14     that Mr. Lucero was not immunized, and the lawyer had
15     been advised that the Government did not need him, or
16     was not going to use him as a witness, it seemed to
17     me that that was pretty much the end of that aspect
18     as far as him, instead of being a source for a
19     declarant's statement insofar as James statements are
20     concerned, especially with regard to statement 71, I
21     think, as it pertains to our defendant.  So I just
22     want to echo Mr. Burke's position on that.  And that
23     is it, Your Honor.
24              THE COURT:  All right.  Thank you, Mr.
25     Solis.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            Any other defendant wants to speak on this
 2   motion to quash the subpoena?
 3            All right.  Mr. Beck.  We look forward to
 4   your words.  Are you going to call him or not call
 5   him?
 6            MR. BECK:  We plan to call him.
 7            THE COURT:  What happened with Mr. Fallick?
 8   How did he get the impression the Government wasn't
 9   going to call him?
10            MR. BECK:  I don't think he said he has
11   that impression.  I think he has a representation
12   that the Government didn't plan to call him.
13            THE COURT:  But it didn't come from you?
14            MR. BECK:  Well, it didn't -- I mean, it
15   came from one of us.  It didn't come from me.  And it
16   wasn't recent.  That was --
17            THE COURT:  A long time ago?
18            MR. BECK:  Right.
19            THE COURT:  But currently, for the trial on
20   April 9, the Government intends to call him?
21            MR. BECK:  Right.
22            THE COURT:  And it's for the purposes of
23   the four statements that Mr. Castellano talked about
24   earlier in the week?
25            MR. BECK:  Among other purposes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            THE COURT:  Among others, okay.  All right.
2            MR. BECK:  And I think -- I mean, I knew
3    this was going to come up at some point in time, but
4    I think we should -- this may be as good as any -- I
5    think we should ask why any of these witnesses are
6    being brought into the courtroom to testify at all.
7    I don't see that there is a need for an evidentiary
8    hearing.  To the extent that these statements are
9    co-conspirator statements, they're admissible.  To
10   the extent that they can show they're not, they're
11   not admissible under the co-conspirator statement.
12   To the extent that they fit under another exception,
13   you can look at the statements and the corroborating
14   circumstances, or whatever other requirements they
15   are, to admit these statements.  I have not seen a
16   valid basis for bringing in these witnesses to
17   testify at all.
18            The only basis I can see is that perhaps
19   they're going to try to show that these witnesses are
20   not credible, which isn't a consideration for the
21   Court to make.  That's a consideration for the jury
22   to make.  So even if the Court were to find -- which
23   I don't expect -- even if the Court found that these
24   witnesses aren't credible, their stories aren't
25   credible, that's something for the jury to see on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    cross-examination, not for the Court to make.

 2           So as a baseline matter, the Court should

 3    quash all of these subpoenas and not require any of

 4    these defendants to come in and testify.  Because I

 5    don't see that there is a basis or a grounds for that

 6    under the rules.

 7           You know, if the Court looks at -- well,

 8    any number of opinions, but I could point to Michigan

 9    against Bryant, the right of confrontation under the

10    Sixth Amendment is the right to cross-examine the

11    witness, to show that the witness' testimony

12    shouldn't be credited by the jury.  And that's the

13    protection provided, and that's the way that this

14    happens.

15           So once you have the table of

16    co-conspirator statements, or you have statements

17    that are statements by party opponents or statements

18    against interests, then the method attacking those

19    are to attack the witness' credibility on the stand,

20    which is a question for the jury.  Not a pretrial

21    process where, basically, it would be a fishing

22    expedition to then use later on to attack their

23    credibility.

24           So I don't see where in this procedure

25    these witnesses, whether it be Mr. Lucero or any of

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                        1-800-669-9492
                                                            e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

163

```
1    the other witnesses downstairs that have been
2    subpoenaed, I don't see any basis for their testimony
3    at all.
4              So the United States, I guess, would join
5    Mr. Fallick.  But more importantly, would just oppose
6    the motion to exclude co-conspirator statements or
7    exclude statements, which I think is Doc 1307, just
8    on the basis -- that there is no basis for live
9    testimony to decide that motion.  It's the
10   circumstances of the statement itself, and how it
11   fits or doesn't fit within hearsay exceptions.
12             THE COURT:  Mr. Fallick referenced my
13   opinion in 1882 as dispositive of the issues here.
14   Do you recall what that opinion was?  And did it
15   dispose of the issues here?
16             MR. BECK:  No -- yes and no.  Sorry.  You
17   asked me two questions.  First, it's 1882; I can't
18   say for a hundred percent because I don't have it in
19   front of me, but my expectation is that that was your
20   memorandum opinion and order that you issued on March
21   7 of this year.  That addressed several of the
22   statements.
23             THE COURT:  That was the 133-page opinion
24   that addressed a number of issues that just kept
25   coming up?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                MR. BECK:  Yeah.  I think in the pool in
 2      the car I said I bet it was 120 pages.  So I still
 3      won that pool.
 4                THE COURT:  It's that opinion?
 5                MR. BECK:  Yes.
 6                THE COURT:  Okay.  And maybe I can ask Mr.
 7      Fallick what he thinks in that opinion resolves these
 8      issues.  But --
 9                MR. BECK:  My guess is it's probably the
10      issue that the United States put in front of the
11      Court in the motion in limine that has been raised a
12      number of times, and that would be the statements
13      against penal interests; that those statements are
14      admitted when there is sufficient corroborating
15      circumstances.
16                THE COURT:  Okay.
17                MR. BECK:  And that those statements for
18      Mr. Perez were not admissible.
19                THE COURT:  Okay.  All right.  Thank you,
20      Mr. Beck.
21                Let me go back to Mr. Castle.  And I may
22      come back to you, Mr. Beck, before I let Mr. Fallick
23      have the last word.  Mr. Fallick referenced that you
24      had told him, or somebody from the defense side had
25      told him that he was being called in connection with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    1307.  What is 1307?

2             MR. CASTLE:  1307 was a motion -- for lack

3    of a better term -- was a placeholder motion.  It was

4    filed after Your Honor said in some of the litigation

5    regarding the Rudy Perez motions, that when things

6    get closer to trial, things will be more focused, and

7    we'll be doing a more targeted litigation

8    admissibility of statements.  So we filed 1307

9    saying, in advance of the time when we get to those

10   statements, we'd like to know which statements

11   they're going to use.

12            THE COURT:  Oh, okay.  So this was your

13   James motion:  Saying give us the statements you're

14   going to use or more than that.

15            MR. CASTLE:  Right.  And not just for

16   James.  But if they're going to offer them for

17   statements against interests or admissions by a party

18   opponent, that I'd like to get that.

19            And when the Court issued its order on

20   March 7, it granted that motion in part and denied it

21   in part, I believe.  I didn't know which part was

22   granted and which was denied.  But it really made it

23   moot, because by that time, we'd gotten the James

24   proffer from the Government on the same exact day, I

25   think, the Court issued its order.  And in came the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    James proffer.  We within two days filed our
 2    objections to the James proffer, and in addition,
 3    targeted statements against interests or admissions
 4    by a party opponent, where it appeared that another
 5    co-defendant was implicating our client.
 6            We did that, in part because of what the
 7    process was in the Rudy Perez matter.  They started
 8    off with calling it a James statement, a
 9    co-conspirator statement.  But then it morphed into:
10    This is an admission by him.  And the Court's
11    analysis in 1307 was:  You have to look at and
12    actually examine whether this person would have said
13    this against his penal interests, when it really
14    wasn't against his penal interests.  It might have in
15    favor of his interests at that point because he
16    wanted to save his life.
17            And so what the Court did in Mr. Perez'
18    case is it took testimony that took quite a while
19    from different people before it can admit that
20    statement.  I looked at that and said:  That's going
21    to be impossible in the context of our case.  I mean,
22    am I going to put Mr. Garcia on the stand, like Mr.
23    Perez was put on the stand, to talk about things in
24    the middle of the trial?  We take a break?
25            So I find guidance in Federal Rule 103 that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    indicates, to the extent practicable, the Court must
 2    conduct a jury trial so that inadmissible evidence is
 3    is not suggested to the jury by any means.
 4              So what we have found, and specifically
 5    with Mr. Lucero, Mr. Lucero comes out in January of
 6    2018, and says:  These two other individuals,
 7    Mr. Chavez, Mr. Gallegos, made confessions to me at
 8    some time after the murders happened, and he
 9    implicated Mr. Garcia.  And I believe I have the
10    right to explore whether that's actually a statement
11    against interests, whether it's against their
12    interests, or whether they're trying to blame
13    Mr. Garcia, saying:  I had to do it.  You know, there
14    is a number of circumstances that could make it not a
15    statement against interests.  To the extent that it's
16    considered admission by a party opponent, my
17    client -- and I think the Court went through that
18    analysis in its March 7 order, where it said, Well,
19    it's not really an admission on behalf of a different
20    party.
21              And so that's why we brought those
22    witnesses in.  I have to tell the Court that a lot of
23    times -- it's not the case with Mr. Lucero, but a lot
24    of the witnesses, we get a one-sentence document that
25    says the person has admitted to involvement in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    2001 murders and said Billy Garcia ordered it.
 2    That's it.  So there is no way to look.
 3             I mean, if the Government wants to confine
 4    the decision on this to that one sentence, that's
 5    what we can do and avoid the witnesses and say:
 6    Here, look at this sentence.  Your Honor, can you
 7    make a determination on this one sentence?  I'd be
 8    happy to, because I don't think any of them would
 9    come in.
10             But I don't think that's their plan.  I
11    think their plan is to just have this unfold in front
12    of the jury.  And when it unfolds in front of the
13    jury, it ends up being in front of the jury before
14    the Court makes its order.  I imagine the kind of
15    proceeding it would be, where you know, they ask
16    questions, they voir dire the witness, and come back
17    and forth, back and forth.  Then we ask for a break
18    and say, "Your Honor, I want to put on additional
19    evidence that might show that this is not a statement
20    against interests."
21             THE COURT:  Well, okay.  I understand the
22    statement against interests.  But are you also
23    calling them -- or Lucero -- in connection with the
24    James hearing, to get more -- flesh out those three
25    statements that are on the table?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  No, no.  The only reason I was
 2    pointing that out, was to show the Court that there
 3    is a reason to believe the person was going to
 4    testify when we had proof of it.  We rested in the
 5    James hearing.  I think all parties rested on their
 6    presentations in the James hearing.  So that's not
 7    the purpose of it.
 8              THE COURT:  So the purpose is only that one
 9    statement that they're going to have to find some
10    other basis -- number 36 -- they're going to have to
11    find some basis for getting that in other than a
12    co-conspirator statement?
13              MR. CASTLE:  Number 36, and then the entire
14    January 17, 2018 interview, in which Mr. Lucero said
15    that Mr. Chavez and Mr. Gallegos made these
16    confessions, with implications for Mr. Garcia.
17              THE COURT:  So those are post-conspiracy
18    statements?
19              MR. CASTLE:  Yes, exactly.
20              THE COURT:  So they're going to have to
21    find some other basis to get it in.
22              MR. CASTLE:  Right.
23              THE COURT:  You think the one they're going
24    to try to use is against interests?
25              MR. CASTLE:  Right.  I think that's the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   reason behind the motion in limine that was filed
2   recently, which was also in those few days between
3   Your Honor's order and these hearings.
4             THE COURT:  All right.  And you connected
5   with Mr. Fallick some other motion, after 1307 became
6   moot, or I ruled on it.  What was the other motion
7   you referenced with him?
8             MR. CASTLE:  1909.  I sometimes call it
9   1908, but it was 1909.  And I couldn't give him a
10  copy of it because it is a sealed pleading.
11            THE COURT:  And what is 1909?
12            MR. CASTLE:  1909 is a motion that deals
13  with our objections to both James and to other
14  statements, such as statements against interests.
15            THE COURT:  Okay.
16            MR. CASTLE:  It's the one that's identified
17  as response to United States' notice of proposed --
18  well, no, that's not the name of it.  But I think the
19  word "targeted" is in the motion.
20            MR. BECK:  It's called "Defendant Billy
21  Garcia's Targeted Response to United States' Notice
22  of Proposed James Statements for Trial 2."
23            MR. CASTLE:  That sounds right.
24            THE COURT:  All right.  Anything else, Mr.
25  Castle?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  No, Your Honor.
 2              THE COURT:  All right.  Any other
 3    defendants before I hear from Mr. Beck?
 4              All right.  Mr. Beck, do you have anything
 5    further on Mr. Fallick's motion on behalf of Mr.
 6    Lucero?
 7              MR. BECK:  I do.  Just a response to that.
 8    I think that Mr. Castle's argument that we should
 9    have a hearing where we parade, basically, the same
10    evidence that will be martialled in at trial is just
11    without a basis in law or precedent whatsoever.  I
12    mean, the Court has enough to do without having the
13    exact same evidence we'll have at trial beforehand.
14              The Court is aware of these issues now,
15    with the motion in limine and with these James
16    hearings.  If, at trial, we get to the point -- and I
17    think the United States was rather good about this in
18    the first trial, when we had a statement that we
19    wanted to get in, we approached.  We made sure the
20    Court was aware and the other parties were aware of
21    what the statement was, the circumstances that made
22    it admissible.  And if the United States hadn't put
23    on those preliminary matters to make it admissible,
24    either the Court excluded it or the United States
25    just didn't seek to admit that evidence, because the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    United States conceded that evidence wasn't there.

2    And that's the proper basis in which to present this,

3    is during trial, if Mr. Lucero -- whoever else

4    testifies -- if by the time the United States gets to

5    the statement that it intends to elicit, if the

6    corroborating circumstances aren't there, or whatever

7    basis there is to admit it, if the conspiracy has not

8    been proven yet, either in the James motion or at

9    trial, then it's inadmissible, and the United States

10   realizes that, and the Court overruled that.  And

11   that's just the way these trials take place.

12          To waste everyone's time to go through this

13   in the next couple of days, is just that, it's a

14   waste.

15          Mr. Perez' situation was different.  That

16   was not on a motion to exclude statements.

17          THE COURT:  It was a motion to suppress.

18          MR. BECK:  It was a motion to suppress,

19   exactly.

20          And so, certainly, if with the motion to

21   exclude the statements -- placeholder motion,

22   Document 1307 -- I mean, if they believe that there

23   are certain circumstances that disqualify the

24   statement under corroborating circumstances, they can

25   point those out to the Court either through documents

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    or however they want.

2            But, again, to bring these witnesses up is

3    just a test of their credibility.  It doesn't go to

4    the admissibility of the evidence.  It goes to the

5    weight of the evidence.  The corroborating

6    circumstances -- again, let's take Mr. Perez'

7    situation for a minute -- what they could have done

8    to contest those statements -- again, if we're just

9    talking about statements against interests, it's not

10   the subjective belief of the declarant at all.  It's

11   the objective circumstances.  And I think that what

12   they could have done is come forth with some of the

13   documents that showed that Rudy Perez was scared, or

14   some of the documents that showed that there were

15   rumors floating around the jailhouse, and submitted

16   those documents for the Court's consideration whether

17   those corroborating circumstances made the Perez

18   admissions inadmissible under Rule 804(b)(2).

19           To the extent that we're talking about

20   statement 36, that may be admissible under -- as a

21   statement against penal interests.  It may also be a

22   state of mind under 803(3), I believe it is.  Don't

23   quote me on that.  I'm not good with numbers.

24           THE COURT:  Well, I've looked at that, and

25   I think I leaned toward agreeing with you.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Right.  And so that's what I'm
 2    saying, is that those statements are admissible or
 3    inadmissible based on the context of the statements
 4    or other evidence that we'll put on during trial,
 5    beforehand.  And if we don't make that showing at
 6    trial, they're just inadmissible.
 7              So there is no reason here to proceed any
 8    differently, aside from a James hearing, than we
 9    would in any other trial to get into statements that
10    are admissible under the rules of evidence, based on
11    the context in which they're made.
12              THE COURT:  All right.  Thank you, Mr.
13    Beck.
14              Mr. Burke, do you want to --
15              MR. BURKE:  I just want to say this:
16    Judge, you can do whatever you want to do to make a
17    determination whether these statements are going to
18    be admissible using the three prongs:  Did the
19    conspiracy exist?  Was the declarant a member of the
20    conspiracy --
21              THE COURT:  Well, if I understand what Mr.
22    Castle is saying, he doesn't need Mr. Lucero.  And
23    the evidence is closed, so it's not a James hearing.
24    It is something like what Mr. Castle and Mr. Beck are
25    saying, is it's a 104 hearing to determine the
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                   e-mail: info@litsupport.com

```
1    admissibility of evidence.
2              MR. BURKE:  And it may be.
3              THE COURT:  But I guess what Mr. Castle is
4    saying, No, he doesn't need Lucero for the James
5    hearing because the evidence is closed on that.
6              MR. BURKE:  The only point I'm making is
7    that however you want to call it, however anyone --
8    you have the right to say:  I want to see these
9    witnesses so that I can make a pretrial determination
10   whether that statement is coming in rather than
11   having the scrapping, you know, while we adjourn, and
12   so forth.  And they say you can't make a credibility
13   assessment before the jury, you know, before the
14   witness takes the stand in a jury trial, I really
15   think is wrong-headed.  You can do whatever you want
16   to do.  And that's why, when you said:  I like the
17   idea of a chart; okay, let's do that.  I like the
18   idea of having an FBI agent take the stand and lay it
19   out, so that you could see how the statement is
20   coming in, and the general place in the trial it's
21   going to be.  That's the only thing I'm saying.  If
22   you don't think we need to do that, that's fine.  But
23   you can do this, if you want to see these witnesses.
24   I mean, you can't possibly not have the jurisdiction
25   to do that.  The Government is wrong about that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Thank you, Mr.
2    Burke.
3              Do you want to say something, Mr. Castle?
4              MR. CASTLE:  Yeah, I don't like to do
5    multiple rounds, Your Honor, but it occurred to me I
6    forgot to mention something, and that is that at
7    least for two of the witness we're planning on
8    calling, there is evidence that they were acting as a
9    Government agent when they were extracting --
10   according to them -- admissions from --
11             THE COURT:  This is Phil Sapien's client?
12             MR. CASTLE:  I don't know who -- no, not
13   Mr. Sapien's client.  But Frederico Munoz and Leroy
14   Lucero both said -- many years ago they turned over,
15   started working for the Government --
16             THE COURT:  We're doing Leroy Lucero right
17   now.
18             MR. CASTLE:  Right, right.  But I think
19   they broadened their objection to all witnesses that
20   we were going to call.  So there is different issues.
21             I don't know when Mr. Lucero did.  The
22   earliest report we have is he started to work with
23   the FBI in 2011.  I think he placed approximately
24   eight phone calls from the federal prison at
25   Lewisburg, in Terra Haute prison, where he would call
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    up and say:  I've got more info for you.  I've got
2    more information.  I want to provide more
3    information.  We've got no indication of why he did
4    that, or anything of that nature.  But it certainly
5    looks like he was, on his own, providing information.
6            We don't have any information about when
7    these alleged confessions happened, whether they
8    happened in pretrial detention, when these
9    defendants, Mr. Chavez, Mr. Gallegos may have been
10   held there, being presented by counsel.  I think Mr.
11   Fallick is here in the capacity of saying, Look, I'm
12   representing my client.  Even if it's not on the
13   current matter, I have to protect him on some other
14   matter.
15           So there are issues that deal with the
16   admissibility.  I would note that in 104(c)(2) it
17   says that, "Hearings concerning the admissibility of
18   a confession" -- which is what these are -- "have to
19   be conducted outside the presence of the jury."  So I
20   don't know if that meant a confession to law
21   enforcement or if it meant a confession in general.
22   I haven't had the time to review 104.
23           But it seems to -- under 104, it also says:
24   If an issue involves a defendant, it has to be a
25   witness to that particular preliminary determination,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and also has to be done outside the jury, and it also
 2    requires it to be done, if justice so requires.
 3            We have these witnesses here.  We have Mr.
 4    Lucero here.  I just don't -- frankly, just don't
 5    understand how in January 2018, he's in cooperation
 6    with the Government, and everything is going fine,
 7    and they're doing full interviews, taped interviews.
 8    And then when the defense subpoenas them, "Oh, I'm
 9    not going to talk."  I mean, that seems like the
10    ultimate in gamesmanship to me.  And so I'm not
11    saying it's gamesmanship by Mr. Fallick by any means.
12    I'm suggesting that there is a game being played
13    where witnesses are being told they're not going to
14    have to testify, so they take the Fifth and then
15    they're going to have to testify.
16            So I would encourage the Court to have
17    these hearings, and not to have a broad-based
18    discovery hearing, but narrow in on the issue at
19    hand, to determine whether these statements are
20    admissible.
21            I can't figure out in my mind why there is
22    a difference -- why we have pretrial hearings on the
23    admissibility of co-conspirator statements, but we
24    don't have on a statement against interest that
25    implicates another defendant, where he can't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   cross-examine the declarant and he can't -- well, he
 2   can't cross-examine the declarant at all.
 3          And so the final thing I have to say is,
 4   Your Honor, it's going to completely change the
 5   complexion of the case.  Do I need to attack the
 6   credibility of Christopher Chavez, Joseph Gallegos,
 7   the co-defendants in the room?  Or do I not?  Do I
 8   even have to attack the credibility of various
 9   people, because it may turn out they're never going
10   to be allowed to say Billy Garcia's name in the
11   courtroom.  Now, do I do an opening statement saying:
12   The only two witnesses against him are Leonard Lujan
13   and Leroy Lucero, which it would be if these
14   statements weren't admissible?  Or do I have to say
15   there are seven witnesses that I have to deal with?
16   I don't even know how to do it.
17          And so what the Government's request really
18   is is a request to do trial by ambush.  And so I
19   can't imagine that the Rudy Perez issues had to get
20   litigated on the fly in the middle of the trial.  I
21   think the Court has struggled, and so has everyone
22   here struggled, with Confrontation Clause issues, and
23   the applicability of very complex rules of evidence
24   issues.  And I know this Court likes to at least give
25   everyone a full opportunity to argue those.  I don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    know how that's going to happen in the midst of the
 2    trial.
 3              So it's like the inconvenience of some of
 4    the witnesses will result in this Court being able to
 5    make a reasoned decision and the parties to be able
 6    to proceed accordingly.
 7              THE COURT:  All right.  Thank you, Mr.
 8    Castle.
 9              Mr. Beck.
10              MR. BECK:  I'll respond to a couple of
11    things.
12              THE COURT:  Let me ask you a couple of
13    questions, because when we had a few of these
14    witnesses like Mr. Lucero come in here -- they got
15    subpoenaed by the defendants to testify -- I remember
16    the Government would sort of cozy up to the attorney
17    or to the defendant and say, Hey, you're an SNM Gang
18    member, you know, you can get charged.  And while I'm
19    not certain that just being an SNM Gang member is
20    enough to get you charged, it was probably enough for
21    me to sustain their Fifth Amendment privilege not to
22    testify, which is, I think, what the Government
23    wanted.
24              What are you going to do with Mr. Lucero?
25    How are you going to get him to testify to his
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.                                      1-800-669-9492
PROFESSIONAL COURT                          e-mail: info@litsupport.com
REPORTING SERVICE

 1  statements, and yet him not come in here and take the

 2  Fifth?  How is that going to work?  Are y'all going

 3  to give him some immunity or something?

 4          MR. BECK:  Yes, we're going to debrief him

 5  pursuant to a Kastigar letter.

 6          THE COURT:  So a Kastigar letter.

 7          MR. BECK:  Right.

 8          MR. FALLICK:  And I can tell you, Judge,

 9  that's not going to happen, because we're not going

10  to agree to anything other than just statutory

11  immunity.

12          THE COURT:  Well, let me let Mr. Beck

13  finish, then I'll come to you, Mr. Fallick.

14          Mr. Beck.

15          MR. BECK:  Yes, that's the United States'

16  intention.  That's what I foresee happening.

17          THE COURT:  Okay.  So the way you're going

18  to get him to testify is to give him some immunity so

19  he gets on the stand?

20          MR. BECK:  Right.  That's our intention.

21          In response to Mr. Burke's -- that the

22  United States is just flat out wrong, I'll point you

23  to Footnote 2 of page 6 of our motion in limine that

24  we filed, Document 1912, where it says, "The district

25  court must find only the sufficient corroborating

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   circumstances exist, and then permit the jury to make
 2   the ultimate determination concerning the truth of
 3   the statements."  And that's United States against
 4   Lazado, 776 F.3d 1119, at 1132, which is a 2015 Tenth
 5   Circuit decision.
 6            And I am familiar, very familiar, with Rule
 7   104 admissions by a defendant pretrial.  That's why
 8   we have motions to suppress and suppression hearings,
 9   where the Court makes finding of fact and conclusions
10   of law beforehand.  That way, we determine whether an
11   admission to law enforcement by a defendant is
12   admissible.  And they cannot, then, contest that, at
13   least the constitutional grounds at trial.  So that's
14   what Rule 104 says.
15            THE COURT:  Thank you, Mr. Beck.
16            All right.  Mr. Fallick, if you wish to
17   have the final word here.
18            MR. FALLICK:  Yes, Your Honor.  A few
19   things.
20            I was not aware of Mr. Lucero's interview
21   in January of 2018 until after it occurred.  My
22   client did not contact me or let me know that was
23   happening, and so it happened without my presence.
24            Since I've been contacted by my client,
25   I've been -- let me back up.  I've only been in touch
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    with him periodically to make sure that he was

2    complying with his conditions of release, and trying

3    to get him through the end of his conditions of

4    release.  I heard from him when he was contacted in

5    connection with a defense attempt to interview him.

6    That was the first that I knew about any of this.

7         And all of the information factually that's

8    been represented by the various parties, and

9    specifically Mr. Castle, I'm not aware of any of

10   that.  And if going to be representing Mr. Lucero in

11   connection with a future trial, that I understand

12   he's now going to be called as a witness for, I'm

13   going to need to be educated.  And I would ask that

14   the parties provide me with whatever it is they think

15   I need in order to do that.

16        I can tell you that I have an email on

17   February 15, from the Government -- February 15 of

18   this year -- telling me, quote, "At this point, we

19   don't plan on calling Mr. Lucero in this trial.

20   Should the situation change, and we call him, then we

21   can discuss safety concerns," unquote.  That was in

22   connection with my contact to the Government saying,

23   "My client is being contacted and I would like to

24   have a discussion about safety."

25             THE COURT:  Who sent you that email, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Fallick?
 2              MR. FALLICK:  That's from Maria Armijo.
 3              MR. BECK:  And that --
 4              THE COURT:  Let me let Mr. Fallick finish,
 5   then I'll come back to you, Mr. Beck.
 6              MR. FALLICK:  Now, the motion attaches
 7   Exhibit B, an exchange of emails, where I was asking:
 8   Why are you contacting my client?  Why are you
 9   subpoenaing, because I want to file a motion to
10   quash.  And I have a response, a February 28 email
11   from defense counsel saying, quote, "We are calling
12   him in relation to our motion to prevent the
13   admission of statements of nontestifying
14   co-defendants and co-conspirators, which was filed as
15   Document No. 1307," unquote.  There was no other
16   statement to me about any other reason for calling
17   him.  Not just not providing with a sealed motion,
18   but not giving me any information whatsoever.  So we
19   relied on that, and I believe any other basis to call
20   him this week has been waived by the defendants as a
21   result of that.
22              Your Honor's opinion, at page 123, says
23   that that motion is granted in part and denied in
24   part.  I understood that to be completely resolved;
25   that is not any part kept under advisement, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

185

```
 1   therefore, that's another reason why Mr. Lucero's
 2   presence is not required this week, in my opinion.
 3            I have in my calendar as March 20 as end of
 4   Mr. Lucero's supervised release.  I have to admit
 5   that I didn't calculate it myself.  I was provided
 6   that by the probation office.  And I relied on it.
 7   And I'm assuming that it's correct.
 8            And, finally, Your Honor, because I was not
 9   aware of any of this, I had not informed the
10   Government not to contact my client; that I was
11   representing him.  But I did after I heard from him,
12   and I sent an email then to the Government saying
13   that:  In the future, no one should contact him.
14   They should only go through me.  That includes the
15   Government, its agents, the defendants.  I notified
16   the probation office when they were hearing from the
17   defendants' counsel that all inquiries had to go
18   through me.  And my intention is to advise my client
19   not to speak with anyone again about anything except
20   subject to statutory immunity.
21            THE COURT:  All right.  Mr. Beck, do you
22   have something else you wanted to say?
23            MR. BECK:  Yeah.  I was just going to say
24   that the context of that email was while we were
25   in -- February 14 or 15 -- that's while we were in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    the first trial.  That's what we were saying, is we
2    didn't have any intention of calling him in the first
3    trial, which is why we said "this trial."
4              THE COURT:  All right.  Do you have
5    anything else you want to say, Mr. Fallick?
6              MR. FALLICK:  Only that -- I'd have to go
7    back and look at my emails.  My understanding was I
8    was asking more broadly, and I was asking about the
9    context we were receiving in connection with the
10   April trial.  So that was certainly what I was
11   inquiring about.  Yes, it does say, "this trial."  I
12   had not understood it to be limited to something
13   other than what I was asking about.  And there may
14   have been some miscommunication there.
15             THE COURT:  All right.  Well, I think that,
16   taking the defendants' word that we're going to keep
17   this very targeted and limited; it's not going to be
18   used for discovery; we're going to hone in on these
19   statements to see if they are admissible, I'm going
20   to permit the defendants to call Mr. Lucero for that
21   limited purpose.  We'll not reopen the James, so it
22   won't be used for the James statements.  But it will
23   be used for any statements that the Government may
24   have to rely on, other than exceptions or sections of
25   Rule 800, to get the evidence in.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            So with that limited understanding, I'm
 2     going to deny the motion to quash.  I can't determine
 3     at this time whether he's going to invoke his
 4     privilege and block any testimony.  It may be that he
 5     does.  It may be that he can, and it may be that he
 6     can't.  But like many of the other witnesses I had in
 7     the first trial, there was testimony that was secured
 8     even when there were situations where the Fifth was
 9     invoked.  And it may be that the Government is going
10     to resolve some of those problems at some point --
11     maybe not this week, but at this point -- so that he
12     will be able to testify.
13            As far as his conditions of supervised
14     release, I will ask you, Mr. Fallick, to get hold of
15     Mr. Martinez and have him draw up the appropriate
16     order for me to sign modifying his conditions so that
17     he can come down here and stay, including overnight
18     stay.  And I'll just instruct you that if you have
19     any problems with his costs and fees being paid,
20     first check with the marshals, or maybe some of these
21     defense counsel can tell you how witnesses are
22     getting paid.  That's probably an aspect I'm not as
23     familiar with as I should be.  But it's just because
24     I don't think it's been brought to my attention
25     before and I've had to deal with it or resolve it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    So if you have a problem and you can't get some

 2    resolution of it, let me know.  I don't anticipate a

 3    problem.  So we will try to get those fees paid by

 4    the United States Government.  I use that broadly,

 5    not necessarily the U.S. Attorney's Office, but the

 6    United States Government.  As far as I know, that's

 7    what's being contemplated here in the subpoena that I

 8    ordered.  So the motion will be denied, and you'll

 9    need to work, then, with the attorneys to get Mr.

10    Lucero up here.

11              MR. FALLICK:  Thank you, Your Honor.  May I

12    explore just a few logistics with you?

13              THE COURT:  You may.

14              MR. FALLICK:  First, Your Honor, would you

15    direct in your order that the marshal's office, to

16    the extent reasonable, advance costs for Mr. Lucero.

17    That would make it more reasonably possible for him

18    to comply.  And also, depending upon how much time

19    you think he's needed, Your Honor, if it would be

20    possible to not require him to attend until after the

21    noon recess on Friday.  That would allow him to

22    travel in the morning on Friday, and hopefully still

23    be able to travel back that night, if it's not too

24    long a day.  Or if not, at least be able to travel

25    back first thing in the morning on Saturday.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  I'm seeing some nodding of
2    heads on the second one, so let me see if we can
3    accommodate that request.  I guess, he's basically
4    saying:  Can he be required to be here in the
5    afternoon, 1:00, to testify, so that he can make it a
6    one-day trip?  Is that agreeable to the defendants?
7              MR. CASTLE:  It is to me.
8              THE COURT:  Anybody else on the defense
9    side?
10             How about you, Mr. Beck?
11             MR. BECK:  Your Honor, it's my
12   understanding there has been United States Attorneys
13   subpoenaed for Friday afternoon, and they are
14   planning to arrange their travel down here for Friday
15   afternoon for the motions to dismiss, which are
16   before this.  So the United States is not inclined to
17   agree to that.
18             THE COURT:  Do y'all think that the two
19   attorneys will take the entire afternoon?  I'm
20   getting no's from the defense side.
21             Do you think otherwise, Mr. Beck?  Do you
22   think they'll take all afternoon?
23             MR. BECK:  I don't think so.
24             THE COURT:  Okay.  So you think we can
25   squeeze three witnesses in, we'll just take them out
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    of order?  Does that work, Mr. Beck?
2              MR. BECK:  To the extent the Court's
3    inclined to have his testimony, that's fine with the
4    United States.
5              THE COURT:  All right.  So we'll have an
6    agreement, Mr. Fallick, that you can have Mr. Lucero
7    here 1:00 on Friday afternoon.  We'll squeeze him in
8    at some point.  I'm not committing as to when that
9    afternoon.  But we're going to stop at 5:30.  So if
10   he wants to go back that night, he'll be free to do
11   so.
12             Let me ask the Deputy Marshal, I don't know
13   about the advancement of costs.  Is that something
14   that's possible or doable?  I'm not even sure how it
15   works.
16             MR. MICKENDROW:  Your Honor, I just spoke
17   with Rebecca Flores, who is the individual
18   responsible for paying witnesses, and she stated
19   advancement of payment to witnesses is not a
20   possibility, per the guidelines.
21             THE COURT:  I can't do that pursuant to the
22   guidelines.  So he will get paid after he's here.
23             Hold on, just a second, Mr. Fallick, Mr.
24   Cooper is speaking.  All right.  What is her name
25   again?  What is her name?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. MICKENDROW:  Your Honor, it's Rebecca
2    Flores.
3              THE COURT:  She works in your office?
4              MR. MICKENDROW:  Yes, sir.  And he can
5    contact her.  I guess there was a situation where she
6    authorized advance bus fare.
7              THE COURT:  Okay.
8              MR. MICKENDROW:  I'm not sure what all the
9    guidelines are related to that, but she would be able
10   to answer any questions.
11             THE COURT:  Okay.  So her name, if you
12   didn't hear it, is Rebecca Flores.  She works for the
13   U.S. Marshal Service.  If you want to call and
14   contact her, there may be some exceptions in the
15   guidelines, and apparently, Mr. Cooper indicated that
16   it had occurred before, where they had gotten
17   advanced funds.  It doesn't sound like something I
18   can necessarily order.  But I don't know.  You can
19   look at the guidelines and talk to Rebecca Flores,
20   and make your appeal to her.  All right, Mr. Fallick?
21             MR. FALLICK:  Thank you, Your Honor.
22             And the final thing I would ask Your Honor,
23   if -- whether it's in the form of an order or just a
24   direction to the parties -- again, I'm completely
25   uninformed about all of these issues that are going
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to be addressed on Friday.  And it is going to be

 2   difficult, if Your Honor wants to do a question by

 3   question invocation of the Fifth, for me to

 4   intelligently advise the client without more

 5   information.  So if Your Honor would direct the

 6   Government and Mr. Castle to provide me with whatever

 7   documents they think are relevant to educate me on

 8   the issues that are going to be addressed on Friday

 9   afternoon, I would appreciate it.  I think that would

10   be a more efficient and effective presentation on

11   Friday.

12            THE COURT:  What's the defendants' thought?

13   Do you want to put a little package together for Mr.

14   Fallick saying these are what you're going to cover?

15            MR. CASTLE:  I don't usually like to

16   preview.  But if the Court gives us authority to

17   allow us to provide the 302s that we've received in

18   discovery, we'll do so.

19            THE COURT:  Any objection to that, Mr.

20   Beck?

21            MR. BECK:  No, Your Honor.

22            THE COURT:  All right.  So the defendants

23   are going to put a package together of the 302s that

24   they received.  And they'll send them to you, Mr.

25   Fallick.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. FALLICK:  Thank you, Your Honor.  I'm
 2   assuming that -- based on the chart that y'all were
 3   talking about, I'm assuming that's going to include
 4   numbers 10, 11, 36, 71, and whatever occurred in
 5   January of 2018?
 6            THE COURT:  Yeah.  I don't know if that's
 7   been filed under seal.  So let me give you the
 8   document number that you can look at for that.
 9   That's Document 1903.
10            MS. HARBOUR-VALDEZ:  It's sealed.
11            THE COURT:  It is sealed.  Okay.
12            MR. CASTLE:  It's sealed, Your Honor.  But
13   I think the statements that are reflected in those
14   four are more fully fleshed out in the 302s.  They're
15   all contained in the 302s.
16            THE COURT:  All right.  So Mr. Castle is
17   saying that when you get the 302s, it's going to have
18   even a more fuller description of the statements that
19   are being covered.  So those four statements will be
20   in those 302s.
21            MR. CASTLE:  But if the Court authorizes
22   us, we will extract those four exact blocks and
23   provide them a separate document.
24            THE COURT:  Any objection to that, Mr.
25   Beck?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

194

```
 1              MR. BECK:  No, Your Honor.
 2              THE COURT:  All right.  So Mr. Castle is
 3    going to extract those blocks for you and we'll send
 4    those with the 302s.
 5              MR. BECK:  And Mr. Fallick, it's our
 6    understanding that you already have the 302 and the
 7    note from the January interview.
 8              MR. FALLICK:  I do not.  Well, I shouldn't
 9    say that.  I received something without attachments
10    that -- I'd asked for the complete document.  I
11    haven't received the complete document.  So I may
12    have received part of that.  But if you would provide
13    it to me anyway, and then I'll make sure that I have
14    everything.
15              THE COURT:  All right.  Mr. Castle.
16              MR. CASTLE:  Your Honor, there was another
17    motion for a copy of sealed transcripts of Mr.
18    Lucero's release hearings.  And we filed that.  And I
19    believe Mr. Fallick had a copy.  We'd ask -- and I
20    think he objected to it -- but we're asking for a
21    copy of those transcripts to be unsealed.
22              THE COURT:  This is 1907?
23              MR. CASTLE:  It is.
24              THE COURT:  Mr. Fallick, I think you have a
25    copy of this motion; is that correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. FALLICK:  I don't believe so, Your

2    Honor.  I got an email asking me if I would consent

3    to the relief that was requested.  And I declined.

4    But I don't believe I've seen a copy of the motion.

5          THE COURT:  Okay.  It's just a two-page

6    motion.  And when you take off signature blocks, it's

7    only a page-and-a-half.  But basically they're asking

8    for a copy of your May 26, 2016 -- that was the

9    Winterbottom sentencing, I believe, and then the

10   March 13, 2017, where the violation of supervised

11   release was given -- where we had that hearing.  Do

12   you still, given the Court's rulings, object to

13   those -- releasing those transcripts to the counsel

14   here?

15         MR. FALLICK:  I mean, obviously, Your Honor

16   is going to do what you think is best.  I'm going to

17   continue to object because I haven't seen the one

18   transcript with Mr. Winterbottom, and I don't have

19   great recollection of the March 2017.  If it was

20   sealed, I'm sure it was done for a reason.  So I

21   think it's better if I object.

22         THE COURT:  Okay.  Well, I think I'm going

23   to go ahead and enter the order on the -- I'll go

24   ahead and just grant the motion for a copy.

25         Mr. Beck, do you have a position on the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   sealed transcripts issue?
 2            MR. BECK:  No, Your Honor.
 3            THE COURT:  Okay.  Do you concur in
 4   granting it, or do you have any position, or just no
 5   position?
 6            MR. BECK:  No position.
 7            THE COURT:  All right.  I'll go ahead and
 8   grant it.  Do you have copies of these, Mr. Fallick?
 9            MR. FALLICK:  No, Your Honor.  That was
10   going to be my next request, that I get whatever the
11   defense gets.
12            THE COURT:  Do you want to include those in
13   the packet, Mr. Castle, or should I send these to --
14   should I go ahead and send these to Mr. Fallick, and
15   give him a little bit of a head start, to see if he
16   has any problem with them?
17            MR. CASTLE:  We have plenty of reading,
18   Judge, so I don't mind if Mr. Fallick gets them
19   first.  I think he's going to want the statements
20   we're sending to him a lot sooner than those
21   transcripts would be ready.
22            THE COURT:  Well, I've got copies right
23   here for me to read.  They're ready to go.
24            THE REPORTER:  One of them is not finaled
25   yet.  It can be.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Is the one from 2016?
 2              THE REPORTER:  That's final.
 3              THE COURT:  I'll tell you what, why don't
 4   y'all do this:  Can y'all provide me an envelope, and
 5   I'll make a copy and stick that in the envelope, and
 6   send it to Mr. Fallick?  So give me an addressed
 7   envelope to Mr. Fallick with the copy -- and would
 8   you be able to run over to my office in Albuquerque
 9   tomorrow, Mr. Fallick?
10              Is that Fed Ex package still back there?
11              THE CLERK:  It's not, but I have it
12   electronically so I can send it to Albuquerque, and
13   he can pick it up.
14              THE COURT:  Would you be able to run over
15   to the office and pick it up tomorrow?
16              MR. FALLICK:  Yes, sir.  I'll contact your
17   office and find out what time it will be available.
18              THE COURT:  All right.  So we will send
19   right now electronically the transcript to my
20   chambers, and we'll -- Ms. Bevel, my courtroom
21   deputy, will give instructions for it to be printed
22   out there.  So if you'll run over fairly early
23   tomorrow and get it, and pick it up.  If you see
24   anything in that 2016 sentencing that gives you
25   trouble, call me back.  Dick Winterbottom did it, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   my memory is it was just a fairly clean sentencing.
 2   But that's been a couple of years.
 3          You know what we did at the supervised
 4   release hearing, so I think you have a pretty good
 5   sense to that.  So we'll -- can we send him a draft
 6   of that?  Would you have any problem with him seeing
 7   a draft of that?
 8          THE REPORTER:  Can I final it tonight?
 9          THE COURT:  All right.  So Ms. Bean is
10   going -- are you going to file it tonight?
11          THE REPORTER:  Maybe first thing in the
12   morning.
13          THE COURT:  Okay.  So we will file it
14   tomorrow probably pretty early, and so you can also
15   get a copy of that, and just refresh your memory as
16   to what occurred.  If I don't hear anything from you
17   promptly as to some problem that you can't anticipate
18   today, the ones you can anticipate today -- I have
19   refreshed my memory by reading about half of the
20   supervised release.  And I know why you requested the
21   transcript to be sealed.  But given where we are now,
22   I'm not seeing that that transcript creates any more
23   problems for you than what I've already created for
24   you.
25          MR. FALLICK:  Understood, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  So if I don't hear from you,
 2   I'm going to go ahead and turn these transcripts over
 3   probably sometime tomorrow to the defendants.  So let
 4   Ms. Bevel --
 5            MR. FALLICK:  My understanding is that
 6   you've overruled my general objection to it, so I'm
 7   looking for something like addresses and other -- you
 8   know, identification of others, as the only sort of
 9   things that you're going to entertain in the future?
10            THE COURT:  Yeah.  If there is something
11   that I don't remember from the Winterbottom
12   sentencing, or if I didn't pick up some sensitivity
13   to something that was said at the hearing, but I
14   think we're okay.  But I'll just give you a little
15   bit of a head start in case there is something I
16   missed.
17            MR. FALLICK:  Thanks, Your Honor.
18            THE COURT:  All right.  Mr. Cooper?
19            MR. COOPER:  Your Honor, the parties in
20   this particular case will receive it?  See, we're not
21   parties to the '06 case number.  So we'll receive it
22   as an attachment somehow to this file, or what do we
23   do?
24            THE COURT:  I guess what I'm doing is I'm
25   granting your motion.  So tomorrow, if we don't hear
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.                                      1-800-669-9492
PROFESSIONAL COURT                                       e-mail: info@litsupport.com
REPORTING SERVICE

```
 1    sometime from Mr. Fallick, remind me, and I'll get
 2    you a transcript copy.
 3              MR. COOPER:  Thank you.
 4              THE COURT:  Mr. Beck.
 5              MR. BECK:  We'd ask for a copy as well,
 6    Your Honor.
 7              THE COURT:  So I'll get those to you.  So
 8    if I don't hear from you back pretty quick, Mr.
 9    Fallick -- give you a little running start --
10    otherwise, I'll turn these transcripts over tomorrow.
11              MR. FALLICK:  Thank you, Your Honor.
12              THE COURT:  All right.  Just work with Ms.
13    Bevel if you need -- what number should he call if
14    he's trying to get hold of you, the chambers number?
15              THE CLERK:  Yes, Your Honor.
16              THE COURT:  Okay.  Call 348-2289.  Ms.
17    Bevel will be checking those numbers during the day.
18    And if we don't hear from you, then we'll go ahead
19    and produce them.
20              MR. FALLICK:  Thank you, Your Honor.
21    Contact someone else in chambers about the other
22    documents I'm picking up?  Ms. Bevel is in Las Cruces
23    with you?
24              THE COURT:  Yeah, she's with me, so K'Aun
25    Wild, 348-2019.  So it's being sent to her.  She'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   be on the second floor, but you can just call her and
 2   she'll tell you where to pick it up.
 3              MR. FALLICK:  And Mr. Castle, am I
 4   expecting a package from you electronically, or some
 5   other way?
 6              MR. CASTLE:  We're in the process of doing
 7   it electronically.
 8              MR. FALLICK:  Thank you.
 9              THE COURT:  All right.  Anything else, Mr.
10   Fallick?
11              MR. FALLICK:  No, Your Honor.
12              THE COURT:  All right.  Thank you,
13   Mr. Fallick.  You have a good day.
14              MR. FALLICK:  You too, Your Honor.  Thank
15   you for hearing me by telephone.
16              THE COURT:  All right.  Bye-bye.
17              So let's return for a few minutes before we
18   take our break to finish out maybe your motion, Mr.
19   Castle, on 1744.  I think we were at number 11.  I
20   think the Government was about to respond.
21              And I think Ms. Armijo, you were going to
22   talk about these DNA desk notes or that issue; you're
23   going to produce them.
24              MS. ARMIJO:  Yes.  We have made numerous
25   requests to numerous analysts.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Do you have any problem with me
 2    going ahead and giving an order to the State Police
 3    to turn over whatever they have?
 4              MS. ARMIJO:  No.
 5              THE COURT:  All right.
 6              MS. ARMIJO:  It's not State Police, it's
 7    Department of Public Safety.
 8              THE COURT:  All right.  Mr. Castle, anybody
 9    else have any objection to that?  Mr. Castle, why
10    don't you prepare an order, and run it past Ms.
11    Armijo, and make sure the Government is on board, and
12    your co-counsel.  But assuming that nobody has any
13    objection, I'll sign it and enter it.
14              Anything else you need on 11?
15              MR. CASTLE:  No, Your Honor.
16              THE COURT:  Whatever else you need here?
17              MR. CASTLE:  Your Honor, number 12.  There
18    has been some testimony during the hearings, and
19    specifically on December 15, there was testimony from
20    Billy Cordova regarding unsuccessful attempts to
21    obtain statements from other indictees, or
22    defendants.  What had occurred to me when I heard
23    that testimony is that the Government had used
24    consensual recording devices to record various
25    defendants, to try to get inculpatory statements.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          For Trial 2, we don't have that.  And so I
2     feared that they attempted it; they had interviewed,
3     or had people talk to our clients, record their
4     statements.  And that our clients didn't admit to
5     being involved in any of the homicides.  So I asked
6     the Government if interviews -- or recordings existed
7     of attempts to get our clients to confess, if such
8     existed, would they advise us, because I'd like to
9     argue that their failure to confess is exculpatory.
10         And they have declined to notify us.  I
11    think it's a simple idea.  But no, we've not tried --
12    that's never been attempted, or we don't have
13    anything on record or in the recording of any of your
14    clients.
15         I think actually that they'd be required to
16    turn that over under Rule 16 anyway.  So but I think
17    the response essentially is not satisfactory.
18         THE COURT:  All right.  Mr. Beck?  Ms.
19    Armijo?
20         MS. ARMIJO:  We don't have any, Your Honor.
21         THE COURT:  As far as you know, Mr. Cordova
22    didn't make any unsuccessful attempts to obtain
23    inculpatory statements from any defendant?
24         MS. ARMIJO:  No, and -- I mean, Mr. Garcia
25    was out on the street.  And Billy Cordova, when he

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

204

```
1    made these recordings, was in custody.  So it would
2    be difficult for him to do so.  I mean, I could go
3    through these defendants, but I don't think he was
4    anywhere near any of these defendants.  Many of these
5    defendants were on the street.  So no, Mr. Cordova
6    was not trying to get statements from them.  We don't
7    have any.
8              MR. CASTLE:  Judge, I only used Mr. Cordova
9    as an example.  If they had other people that they
10   were doing it with -- I don't care who they are -- if
11   it's an undercover officer, or anyone trying to get
12   our clients to make inculpatory statements, and they
13   didn't do it, or the person denied, for example,
14   involvement in the murder, or whatever, I'm
15   requesting that be turned over.
16             MR. BECK:  I think I understood his
17   request.  We don't have it.
18             MR. CASTLE:  Okay.  And then when they say
19   they don't have it, does that mean the Government
20   doesn't have it, or the U.S. Attorney's Office
21   doesn't have it?  I'd like to make sure that they've
22   made attempts to find out if such exist.
23             MR. BECK:  No one has it.
24             THE COURT:  There is no --
25             MR. BECK:  No attempts, no attempts.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Against these defendants by
 2    anybody?
 3              MR. BECK:  That's right.
 4              MR. CASTLE:  Good.  That's sufficient, Your
 5    Honor.
 6              Number 13:  This deals with Mr. Lujan's
 7    mental health records.  But Mr. Lujan's lawyer is not
 8    here.  So if I could, I'd like to table 13.
 9              THE COURT:  All right.
10              MR. CASTLE:  Mr. Lujan is scheduled to come
11    here.  We've been in contact with his lawyer.  So
12    perhaps we could deal with it at that time.
13              THE COURT:  Okay.
14              MR. CASTLE:  Number 14:  We had requested
15    Mr. Lujan's jail calls.  And I have to tell the Court
16    what happened is we subpoenaed -- well, we first
17    sought them from the various facilities that Mr.
18    Lujan was held in.  We were told that because he was
19    being held during -- as a marshal's hold, that the
20    calls had been provided to the Government.
21              We finally received them late last year.
22    We noticed that there was a year-and-a-half gap in
23    his phone calls, that we had not been provided calls.
24    And Mr. Lujan is not a person who doesn't call very
25    often, unlike my sons when they go away to college,
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

206

```
1    he does make a lot of phone calls.  And so that was
2    brought to our attention.  And we brought it to the
3    Government's attention.  In their response to this
4    motion they didn't respond to paragraph 14.  I don't
5    believe they did.  So I don't know if they are
6    endeavoring to obtain those materials or object to
7    it.
8              THE COURT:  Any response, Mr. Beck?
9              MR. BECK:  Yes.  We did respond that we
10   don't oppose turning over jail calls that are in ours
11   or the Corrections Department possession.  And those
12   that have not been turned over that were in the
13   Department of Corrections possession will be turned
14   over today to Mr. Aoki.
15             THE COURT:  All right.
16             MR. CASTLE:  Except Mr. Lujan wasn't held
17   in Department of Corrections facility for much of the
18   time.  He was held in various county facilities.  So
19   that's, I think, what the gap is.
20             MR. BECK:  And so we don't have those.
21             MR. CASTLE:  Okay.  Just to reiterate,
22   Judge, we've been told by those facilities that they
23   won't give them to us even under a subpoena because
24   they've given them -- or the marshals -- they're in
25   the marshal's custody, and those are considered
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Jencks statements by the Government.  So we can't get
 2    them ourselves independently.  I think, because they
 3    are in the U.S. Marshal's custody, that it's
 4    incumbent upon the Government to obtain them.
 5              MR. BECK:  I think the U.S. Marshals have
 6    kept a distance from the Government for the purpose
 7    of this case.  They're not in our custody, control,
 8    and possession.  We don't have the jail calls when
 9    they're not in the Corrections Department.
10              THE COURT:  What if I did this, and see if
11    the Government would oppose this:  What if I just
12    gave you an order, Mr. Castle, that required whatever
13    facilities are being held to turn over the calls with
14    Mr. Lujan, and then you could use that with your
15    subpoena; you'd have a court order with it?
16              MR. CASTLE:  That would work well.  Would
17    the Court like us to draft it?
18              THE COURT:  Would you have any objection to
19    that, Mr. Beck?
20              MR. BECK:  No, Your Honor.
21              THE COURT:  All right.  So draft it, run it
22    past Mr. Beck.  Any defendants have any other
23    problems?  Would that be okay with everybody?  All
24    right.  So we'll proceed that way.
25              MR. CASTLE:  And I off the record talked to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



208

```
 1    the Government.  I'll provide a copy to them and also
 2    to all parties.
 3              THE COURT:  A copy of what you receive?
 4              MR. CASTLE:  Yes.
 5              THE COURT:  All right.  Let's do this, I
 6    know we didn't get quite done, but why don't we take
 7    about a 15-minute break, let Ms. Bean rest her
 8    fingers, and we'll come back in and finish this up.
 9              MR. CASTLE:  That motion is over with.
10    Everything else is resolved.
11              THE COURT:  All right.  We'll confirm
12    whether anybody else has anything on it.
13              MR. COOPER:  May we schedule the Phillip
14    Sapien motion to quash with regard to Fred Quintana
15    as a telephonic conference for when we come back?
16              THE COURT:  Any objection to that, Mr.
17    Beck?
18              MS. ARMIJO:  No, Your Honor.
19              THE COURT:  All right.  Anybody else have
20    any problem with that?  All right.  We'll take it up
21    in about 15 minutes then.
22              MR. COOPER:  Thank you, Judge.
23              (The Court stood in recess.)
24              THE COURT:  All right.  I think every
25    defendant has an attorney, so I think we're ready to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   go.  So we'll go back on the record.
 2             All right.  Mr. Sapien, I should tell you
 3   that the marshals have brought in Mr. Quintana, and
 4   he's sitting next to me on the witness stand.  He
 5   has -- other than talked to Ms. Bean a little bit
 6   about what his name, and who he is, nothing has been
 7   done with them.  But he is sitting next to me, so the
 8   marshals have brought him in at this time.
 9             So we're here on your sealed motion to
10   quash ex parte writ of habeas corpus for the custody
11   of Mr. Quintana, and request for emergency telephonic
12   hearing.  So I will tell you, Mr. Sapien, that I
13   started reading your motion and I got interrupted.
14   So I don't know when I got interrupted.  So I didn't
15   quite get finished at the very back of the motion,
16   when you were talking about the materiality and
17   relevance of his testimony.  So I will try to listen
18   and read the back two or three pages.  But for some
19   reason I got busy on something else, and didn't get
20   to finish your motion.  So when you argue, you may
21   want to take that specifically in mind.  But Mr.
22   Sapien, if you wish to speak in support of your
23   motion.
24             MR. SAPIEN:  Thank you, Your Honor.  I
25   appreciate that.
```





SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Let me preface that back at the end of that

2   motion, I do note to the Court that, frankly, I was

3   only available until 2:30 this afternoon.  But I'm on

4   the road right now to pick up my son due to a child

5   care issue.  But I will stay on the line as long as I

6   can so we can get this done.

7          But, essentially, Your Honor, I believe

8   that the motion -- or I'm sorry, the writ should be

9   quashed due to the fact that there was some clear

10  violations of federal rules, as well as my client's

11  due process rights, and any constitutional

12  implications that may occur from him being forced to

13  comply with this writ.

14         In terms of addressing all the threats from

15  the back forward, if you will, in terms of the

16  relevance, Your Honor, I have no idea what testimony,

17  if any, may be relevant.  Because I was never

18  provided any advance notice of the motions that were

19  filed by Mr. Garcia's counsel.  The writ was filed ex

20  parte, which as I note in my motion I believe was a

21  violation in the sense that it was not served on me,

22  as required by Rule 49 of the Federal Rules.

23         And I believe also, more importantly, that

24  it will be unreasonable and oppressive to have him

25  testify, or attempt to testify, without his counsel

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    present for these hearings.  We have not had any

2    chance to confer whatsoever about this motion, or

3    about how he was transported, as my motion states,

4    akin to a piece of livestock, for these hearings.

5    This is the first time he's hearing my voice since he

6    was transported down to Las Cruces.  It is just

7    completely unreasonable and oppressive to continue to

8    have him attempt to testify without me present.

9    That's the thing I want to emphasize the most, Your

10   Honor.

11          Now, as I stated before we got on the

12   record, you essentially have a plethora of who's who

13   of New Mexico criminal defense attorneys in this

14   case.  And many of those lawyers I've known as long

15   as I've been an attorney, a mere 26 years.  Some of

16   them -- or many of them I consider friends; some of

17   them I consider mentors.  And so the fact that this

18   type of a situation occurred, when I've represented

19   this gentleman for over two-and-a-half years, is very

20   disappointing and perplexing to me, that there would

21   not have been some communication made to me so that I

22   could have expressed my position on the motions and

23   the writ, but more importantly, had an opportunity to

24   confer with my client.

25          And so, without even having conferred with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Quintana, my advice -- I'm going to state it on
2    the record -- is that he would take the Fifth
3    Amendment because his attorney is not present for
4    these hearings.  And again, I cannot be confident --
5    his Fifth Amendment privilege will be violated if
6    this continues, because I cannot provide competent
7    counsel, one, not being present; two, not having had
8    an opportunity to even discuss or review these
9    motions with him, as I stated in my sealed motion.
10            One of the motions was filed in October.
11    And I'm not sure how that is relevant to Mr.
12    Quintana.  I haven't had any communications with any
13    counsel.  And the other motion talks about statements
14    of nontestifying co-defendants, which is not Mr.
15    Quintana.  And none of the statements referenced in
16    that motion -- I think it's 1307 -- I'm driving so I
17    can't look at the number -- but his statements -- or
18    none of his statements are even referenced in that
19    motion.  So we are at a complete disadvantage to be
20    able to try and proceed forward.
21            Given what I said earlier about my friends
22    and colleagues, sir, perhaps things are done
23    differently in other jurisdictions, but one thing I
24    firmly hope, believe, and pray that still applies in
25    the District of New Mexico is that the Federal Rules

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

213

```
1    should apply.  And that these Rules 49 and 17 were
2    both violated and will be violated if he's forced to
3    comply with this writ.  And more importantly, that
4    his due process rights and his constitutional rights,
5    specifically his Fifth Amendment and his Sixth
6    Amendment rights are still applicable there in that
7    courthouse; that they're not checked at the
8    Colorado-New Mexico border; they're not checked at
9    the steps of the courthouse in Las Cruces; and
10   they're certainly not checked in Judge Browning's
11   courtroom -- in the courtroom he's occupying in Las
12   Cruces.
13             And with that, Your Honor, I would implore
14   this Court to quash that writ, and either reset this,
15   so that I have an opportunity to be noted and appear,
16   and have time to confer with my client.  Because one
17   last thing I will point out:  These motion hearings
18   were scheduled in February, and I never received any
19   notice.
20             And that's all I have at this time, Your
21   Honor.
22             THE COURT:  All right.  Let me ask you a
23   few questions, Mr. Sapien.  I may, should be, more
24   familiar with your client than I am.  But talk to me
25   a little bit about Mr. Quintana.  I know he's an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

214

```
 1   inmate; I can see that from what he's wearing and
 2   what you said in the motion, but -- let me see how to
 3   ask the question -- has he ever been charged, either
 4   in an indictment, or with a misdemeanor or anything
 5   in connection with what I will call these SNM cases
 6   that are before me?
 7            MR. SAPIEN:  Yes, Your Honor.  He was
 8   charged, again, over two years ago, I believe.  Well,
 9   I don't specifically remember the date, because I
10   came into the case after he had had another counsel,
11   but he has been charged, they are felony charges, the
12   charges are still pending.  And so that's, obviously,
13   a concern for me, because as I stated in the motion,
14   he hasn't been granted any kind of immunity.  I have
15   no idea what the relevance or possible testimony
16   might be related to these motions that were filed.
17   And I have specific concerns as to how it could
18   implicate his own -- resolution of his own case.  But
19   yes, he has pending felony charges, Your Honor,
20   related to these indictments.
21            THE COURT:  Is it a single defendant
22   indictment or information?
23            MR. SAPIEN:  No, Your Honor.  He was
24   originally charged with another defendant and --
25   whose name escapes me at this time, but it was more
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   than one defendant.

 2            THE COURT:  And is that case assigned to

 3   me?

 4            MR. SAPIEN:  I believe it is, Your Honor.

 5   And I would also remind the Court that another

 6   attorney in one of these other related indictments

 7   had attempted to subpoena Mr. Quintana for a hearing

 8   that we had, and I believe some of the defendants in

 9   this case that you're hearing now were overlapped in

10   that other case, and were aware at that time that he

11   had counsel, that I was representing him.  And we had

12   a hearing on that subpoena, and that subpoena had

13   been quashed.

14            THE COURT:  All right.  And in the case

15   that Mr. Quintana is charged, are the allegations of

16   a VICAR nature?

17            MR. SAPIEN:  Your Honor, I need a little

18   more explanation.  I don't believe they are.

19            THE COURT:  What is he charged with?

20            MR. SAPIEN:  It was related to a murder

21   case, Your Honor.

22            THE COURT:  Is it one of the murders that's

23   involved in this trial that I'm about to have?

24            MR. SAPIEN:  I don't know, Your Honor.  I

25   think that counsel for the Government may have to



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    answer that.
2            THE COURT:  The trial -- the murders or
3    assaults that we're dealing with here are Fred
4    Castillo, Rolando Garza, Freddie Sanchez, Adrian
5    Burns, and then Jose Gomez.  Any of those in your
6    case?
7            MR. SAPIEN:  No, Your Honor.
8            THE COURT:  All right.  So I take it that
9    while he's an inmate somewhere, that he is not in any
10   federal custody; is that correct?
11           MR. SAPIEN:  That is correct, Your Honor.
12           THE COURT:  And he has not pled to any
13   federal charges?
14           MR. SAPIEN:  No, he has pled.
15           THE COURT:  To federal charges?
16           MR. SAPIEN:  Yes, Your Honor.
17           THE COURT:  And he has a plea agreement
18   with the Government?
19           MR. SAPIEN:  Yes, Your Honor.
20           THE COURT:  Does his plea agreement include
21   a request to cooperate?
22           MR. SAPIEN:  It does, Your Honor.
23           THE COURT:  Okay.  So it looks to me like,
24   looking at your case 16-3414, did he do a straight-up
25   plea to the indictment?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. SAPIEN:  Your Honor, you know, again,
 2    being in a vehicle, I don't have the file right in
 3    front of me.  And so I can't recall if we filed an
 4    information with a separate charge or if he pled
 5    straight up.
 6              THE COURT:  Okay.  If he has pled to
 7    federal charges and cooperating, then what ability
 8    does he have -- and I'm not saying we're going to do
 9    anything without you present, but what ability does
10    he have to take the Fifth in this matter?
11              MR. SAPIEN:  Well, again, Your Honor,
12    without having conferred -- and I guess having some
13    guidance or some consultation either with counsel for
14    the defendant or counsel with the Government as to
15    how his testimony might be relevant in this
16    particular case, it's difficult for me to answer
17    that.
18              At this point, I believe that he should
19    assert the Fifth mainly because I haven't had a
20    chance to confer and consult with him, and I am not
21    present for those hearings.
22              THE COURT:  So if you were present and had
23    the opportunity, it may very well be that you would
24    allow him to testify given that he has also a
25    cooperation agreement with the Government, and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

218

```
 1   probably an assurance that he's not going to receive
 2   any further federal charges?
 3            MR. SAPIEN:  Certainly, yes, Your Honor.
 4   That is part of the point that I was making in terms
 5   of not having any kind of advance notice.
 6            THE COURT:  So it may be that we're largely
 7   talking about a logistical problem, getting you and
 8   Mr. Quintana together, and then getting you down here
 9   so that you can be with him while he's testifying?
10            MR. SAPIEN:  Yes, and being able to have, I
11   guess, enough notice of a hearing, Your Honor, that I
12   can confer with him, obviously, as long as needed
13   prior to the hearing.
14            THE COURT:  I guess the question is when
15   could you get down here for meeting with Mr. Quintana
16   and possibly being here for his testimony?
17            MR. SAPIEN:  Well, Your Honor, as I
18   indicated in the motion, I'm leaving out of town on
19   an airline flight tomorrow morning very early.  I
20   won't be back in the office till Tuesday of next
21   week.  I would have to consult my calendar if it
22   would be possible for me to get down to Las Cruces
23   sometime, I guess, the middle of week.  I am -- I did
24   note in my motion that I'm also out of town starting
25   on the 23rd of March; I think it's a Friday.  That
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   might be a little flexible, but I'm certainly out of
 2   town from the 24th through the -- that week, until
 3   the following Monday, the 1st of April, or 2nd of
 4   April.
 5              THE COURT:  You're telling us that you're
 6   not going to be able to get down here this week.
 7              MR. SAPIEN:  That is correct, Your Honor.
 8   And again, Judge, as I note in my motion, since I
 9   wasn't a party to this case, and until I filed my
10   motion -- and I had to become listed as an interested
11   party before I could file the motion -- I didn't file
12   a notice of nonavailability, as I do typically in my
13   cases.  And I would have done so, but I wasn't a
14   party, so I wasn't given any notices, and I didn't
15   get notice from anyone about the motions and the
16   hearings.  And I filed my notice of nonavailability
17   on Monday in conjunction with the motion -- sealed
18   motion I filed on this hearing.
19              THE COURT:  Now, as far as the Rule 17 and
20   Rule 49 -- and you're a seasoned federal litigator
21   with me and many other judges in this court -- I
22   have -- I can't say for certain, but it's been my
23   impression that most of those motions from the
24   defense side are usually ex parte.  And they are not
25   served on the recipients of the subpoena.  And Rule
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    49 indicates that a party must be served -- that a
 2    party must serve on every other party.  But that
 3    would not suggest to me that a motion, such of that
 4    nature, would need to be served on the recipients of
 5    the subpoena.  So it would seem to me that the
 6    subpoena -- and in this case, I know it's a writ of
 7    habeas corpus -- but there is not a problem with the
 8    service; that while it's a little different, there
 9    being a writ, that the rules only require the party
10    to be served, and begin that.
11            MR. SAPIEN:  Well, Your Honor, I would
12    respectfully disagree.  And again, I had to do some
13    very quick research, having found out about this on
14    Friday, working on it on the weekend, but my
15    understanding is the writs are treated essentially
16    the same by the courts as a subpoena.  And Rule 49
17    requires that the service should be made -- when they
18    are trying to serve a represented individual, that
19    that service should be made on the attorney.
20            THE COURT:  Well, that may be.  But I
21    thought you were making the point that the motion
22    needed to be served.  You're saying the writ itself
23    should have been served on you.
24            MR. SAPIEN:  Well, yes, the writ should
25    have been served -- and I understand that -- I don't
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think the writ got filed till much closer as an ex

2    parte document.  But I guess my thinking would be

3    that, at a minimum, professional courtesy would be

4    you serve the attorney with the writ, as required by

5    Rule 49; you would then basically at least give the

6    attorney the heads-up that these are the motions that

7    we would expect your client to testify about.

8              And you know, whether that's required or

9    not, I couldn't answer in terms of the motion, Your

10   Honor.

11             THE COURT:  All right.  Anything else, Mr.

12   Sapien, in support of your motion?

13             MR. SAPIEN:  Not at this time, Judge.  I

14   appreciate you giving me the opportunity.

15             THE COURT:  Thank you, Mr. Sapien.

16             Mr. Cooper, are you going to take the lead

17   on this motion?

18             MR. COOPER:  I am, Judge.

19             THE COURT:  Mr. Cooper.

20             MR. COOPER:  And without getting personal,

21   I think that we've done everything that, under the

22   rules, we were obligated to do.  We served the writ

23   on his client.  We have no objection to setting this

24   thing tomorrow morning, or Friday; letting his lawyer

25   come in and visit with his client.  And we'll talk

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   about what it is that we need to do.  So we don't

 2   have an objection.  We're not trying to do anything

 3   here to get to Mr. Quintana without Mr. Sapien.  Mr.

 4   Sapien is not a party to this particular case.

 5            He -- from what I know -- and his case is

 6   sealed, I can't look at his case.  So I don't know

 7   the extent of that representation with regard to

 8   Sapien and Mr. Quintana.

 9            But, Judge, we think that this writ was

10   properly served.  We think that Mr. Quintana is here

11   before the Court.  I wouldn't want one of my clients

12   to be made to testify without me being there.  So we

13   certainly understand that.  But I don't believe that

14   there is anything in this particular motion to quash

15   that would allow a court to quash this writ.  I don't

16   mind extending it.  We're not set for anything next

17   week.  But if we don't get moving, we may be here

18   sometime soon.  And I suspect we're not going to

19   finish with all the motions this week.  So I would

20   have no objection with allowing Mr. Sapien the time

21   to come down to Las Cruces, or go to wherever his

22   client is being detained, visit with his client.  And

23   we will meet on another day to talk about his client.

24            The pleadings -- or certainly the pleading

25   that we're referring to, 1909, is a sealed document.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    It's a document that we can't -- that I'm sure Mr.
 2    Sapien doesn't have access to.  But we would be happy
 3    to share that if the Government doesn't have any
 4    objection.
 5              THE COURT:  Any objection?
 6              MS. ARMIJO:  No, Your Honor.
 7              THE COURT:  All right.  Anybody else have
 8    any objection?
 9              All right.  Mr. Cooper, can I put the
10    burden on you to get a copy of 1909 to Mr. Sapien?
11              MR. COOPER:  I would be happy to email a
12    copy to Mr. Sapien.  I have his address.  And I can
13    get it to him and he can review it.
14              THE COURT:  All right.
15              MR. COOPER:  Your Honor, actually, I think
16    we ought to just give him the part that deals with
17    his client.
18              THE COURT:  All right.  If you'll redact
19    it, and just get the portion to him that deals with
20    his client.
21              MR. COOPER:  Thank you, Judge.
22              THE COURT:  1909, just so I know, is the --
23              MR. COOPER:  That's the targeted response
24    to the Government's James motion.
25              THE COURT:  All right.  Are there
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    particular statements in the chart?

 2             MR. COOPER:  Yes, Your Honor.  Well,

 3    they're not in the chart, but they're in this

 4    targeted motion.

 5             THE COURT:  So it's like Mr. Castle's more

 6    recent interviews that there is something that's come

 7    up rather recently that are additional statements?

 8             MR. COOPER:  Yes, Your Honor.  This was a

 9    motion that was filed on March the 9th, after we had

10    probably already put into process the writ.

11             THE COURT:  Okay.  All right.  So we'll get

12    some information to you, Mr. Sapien, so you're more

13    knowledgeable.

14             MR. SAPIEN:  Thank you, Your Honor.

15             THE COURT:  Give me a nature of what you're

16    calling Mr. Quintana for, what --

17             MR. COOPER:  It's very, very limited, Your

18    Honor.

19             THE COURT:  Very limited.

20             MR. COOPER:  And before I forget, may we

21    also be authorized to give him the discovery that

22    goes with this particular statement?

23             MS. ARMIJO:  Yes.

24             THE COURT:  All right.  So you'll get the

25    discovery the Government produced that goes with this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   statement.  So it's a single statement?

2           MR. COOPER:  That's correct, Judge.

3           Judge, Mr. Quintana is a government

4   witness.  He indicates that at some point in time,

5   Mr. Troup and Mr. Chavez admitted to him their

6   involvement in the 2001 murders.  And there are two

7   different documents in discovery.  In one of them,

8   the original document, there is no mention of Billy

9   Garcia.  But in a subsequent document, in consecutive

10  Bates numbers, it says that Billy Garcia ordered the

11  hit.

12          And we just want to explore whether or not

13  Mr. Quintana made that statement, and whether or not

14  we are going to be able to challenge that statement.

15  I don't know that he made the statement actually.

16  But we need to make that determination.  And that's

17  one of the targeted statements in our motion.

18          THE COURT:  So to avoid this just being a

19  discovery hearing, what is the purpose of hearing

20  from Mr. Quintana?  How is he going to help you with

21  anything?

22          MR. COOPER:  We need to determine whether

23  he made that statement; whether -- we don't know if

24  he made the statement or it just came into the 302

25  that was subsequently prepared.  And we need to limit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   it.  And it's probably a situation where we're going
 2   to ask him three questions.  I think we can get to it
 3   at that point.
 4            THE COURT:  But is it just discovery, or
 5   how does it relate to any sort of pretrial work that
 6   we're doing?
 7            MR. COOPER:  No, Judge.  Like all of the
 8   other statements in that motion, it's to determine
 9   the nature of that, whether it's a statement against
10   interests, or how -- what the nature of that
11   statement is, or the -- what kind of statement that
12   is.
13            THE COURT:  All right.  Anything else, Mr.
14   Cooper?
15            MR. COOPER:  That's it, Judge.
16            THE COURT:  All right.  Anyone else on the
17   defense side have anything to say on Mr. Quintana's
18   motion to quash?
19            All right.  Mr. Beck, are you handling
20   this?  Ms. Armijo?
21            MS. ARMIJO:  Your Honor, this is much like
22   the other motion that you just heard.  We think it's
23   an improper fishing expedition.  And Mr. Quintana
24   should not have to give them the benefit of the
25   circumstances of if he made the statement.  So, to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that extent, we don't feel that they should be

2    allowed to have a free shot, a free deposition,

3    without any support of it under the law, case law or

4    rules.  And so, to that extent, we would oppose him

5    having to come and testify to this.

6              THE COURT:  Since these statements don't

7    appear on the co-conspirator, are you trying to get

8    these in on the basis of a statement against

9    interests?

10             MR. BECK:  Yes, statements against penal

11   interests.

12             THE COURT:  Is that about the only basis

13   that you got right at the moment to offer?

14             MR. BECK:  I mean, that would be one basis.

15   Obviously, to the extent that Mr. Troup and

16   Mr. Chavez go to trial, it would be a statement by a

17   party opponent as to them.  But we believe it's a

18   statement against penal interests as well.

19             THE COURT:  As to everybody?

20             MR. BECK:  Right.

21             THE COURT:  All right.  Thank you, Mr.

22   Beck, Ms. Armijo.

23             I'll give you the last word, Mr. Sapien.

24             MR. SAPIEN:  Well, Your Honor, I had

25   included in my motion that without having had an



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   opportunity to review those pleadings -- and I
 2   appreciate that I'll be given a copy of the one
 3   sealed motion Mr. Cooper referred to -- but I am not
 4   sure if it's a fishing expedition.  I do note that.
 5   But again, I was trying to cover all bases in my
 6   motion.  And I would certainly like an opportunity to
 7   confer with Mr. Quintana.
 8              I also, Judge, would need to confer with
 9   the calendar to determine -- I know Mr. Cooper
10   mentioned something about tomorrow and Friday.  But
11   that may have just been a misstatement, given that I
12   have previously advised him, and obviously the Court
13   I'm not available Thursday or Friday of this week,
14   and would have to look at the schedule for next week,
15   Your Honor.
16              THE COURT:  All right.  Well, as far as I
17   can tell from the reading of the rules, the motion
18   was properly filed, properly granted, and properly
19   served.  A copy could have been served on counsel,
20   but I'm not certain that anything requires it.  And
21   whatever occurred, it ended up giving notice to Mr.
22   Quintana's counsel.
23              So I do think that there is some relevance.
24   I am allowing some very limited and very targeted
25   elicitation of evidence regarding some statements
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    that are made so that I can properly determine under
2    Rule 104 of the federal rules of evidence whether the
3    testimony should come in.
4              So based upon the defendant's
5    representation, this is not a discovery hearing; this
6    is going to be a 104 hearing, in which we solicit
7    some information, very limited information to
8    determine and rule pretrial whether certain evidence
9    is coming in, I'm going to deny the motion to quash.
10             I'll just encourage you to get with Mr.
11   Quintana as soon as possible, and stay in touch with
12   Mr. Cooper.  And Mr. Cooper, I'll ask you to stay in
13   touch with Mr. Sapien.  It looks like we have a
14   pretty full week.  So we'll just have to see how the
15   week goes.  If I had to guess on the chart where we
16   are, we're going to be hard pressed to get what we
17   have on here.  So either we're going to have to take
18   these issues up at trial, or we're going to have to
19   schedule some other time while we're down here.  But
20   I just encourage you to get with Mr. Quintana as soon
21   as possible so you can talk to him about his
22   testimony in this trial.  And just stay in touch with
23   Mr. Cooper, and we'll proceed from there.
24             MR. SAPIEN:  Your Honor, I know the Court
25   has denied my motion.  One of the requests was to
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

230

```
 1    have him transported back to his facility.  Will that
 2    occur, or would I need to make arrangements to go
 3    where he's currently being housed?
 4              THE COURT:  I guess I'm not optimistic
 5    we're going to squeeze in his testimony this week.
 6    So any objection to the marshals transporting him
 7    back to where he is, so that Mr. Sapien can meet with
 8    him wherever he's been detained long-term?
 9              MR. COOPER:  I'm sorry, Your Honor.  I was
10    not paying attention.
11              THE COURT:  Is there any problem with --
12    since I'm not optimistic we're going to squeeze him
13    in this week, and Mr. Sapien can meet with him
14    wherever he's been meeting with him, is there any
15    objection to going ahead and having the marshals
16    transport him back to wherever he's been, and
17    Mr. Sapien can reach him, and Mr. Sapien and Mr.
18    Cooper, if you'll just stay in touch, and when we can
19    work him in, we'll work him in.
20              MR. COOPER:  I have no objection, Your
21    Honor.  I think he should be transported back to
22    his --
23              THE COURT:  Anyone else?  Any defendant
24    have any objection?  Any objection from the
25    Government?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. ARMIJO:  No, Your Honor.
 2              THE COURT:  All right.  So that request
 3    will be granted, Mr. Sapien.  And the marshals can
 4    transport him back to where he's been detained
 5    long-term.
 6              MR. SAPIEN:  Thank you, Your Honor.  If I
 7    could just put on the record, Your Honor, and again,
 8    my intent wasn't to disparage or be personal with any
 9    of my colleagues down there.  Certainly, I have a
10    different reading of the rules than the Court has
11    ruled.  But that was really the basis of where I was
12    making my argument, Your Honor.
13              THE COURT:  All right.  Anything further,
14    Mr. Sapien?
15              MR. SAPIEN:  Nothing at this time, Your
16    Honor.  Thank you.
17              THE COURT:  All right.  I appreciate your
18    participation.  And we'll send Mr. Quintana out of
19    the courtroom, and we won't conduct any hearing of
20    him without you being available.
21              MR. SAPIEN:  Thank you, Your Honor.  I
22    appreciate that.
23              THE COURT:  All right.  We were still at
24    1744.  And I think, Mr. Castle, you said you were
25    done.  You didn't need anything else from the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Government on 1744; is that correct?
2              MR. CASTLE:  Yes, Your Honor.
3              THE COURT:  Did anyone else have anything
4    they want to say or seek related to 1744 from the
5    Government?  Not hearing anything, Mr. Beck, Ms.
6    Armijo, anything further on 1744?
7              MS. ARMIJO:  No, Your Honor.  Thank you.
8              THE COURT:  All right.  So I think we've
9    disposed of the issues that were still ripe on that.
10             I am going, I think, to the motion for
11   discovery of the arrest and conviction reports of and
12   witness' criminal history.
13             You know, somebody told me I could do
14   anything I wanted to earlier today, and I wish that
15   were the rule.  But it's not.  But I don't see any
16   real basis -- this seems to me to be invading work
17   product.  I don't know -- it doesn't sound like the
18   Government has done any of this.  I don't know if
19   they planned to do any of this.  They may want to
20   make a representation they're not planning to do it.
21   But, in any case, whether they're going to do it, or
22   not going to do it, I'm not sure I really have any
23   basis to require them to disclose a witness' criminal
24   history, so I'd be inclined to deny the motion.
25             Mr. Benjamin.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Ms. Armijo and I have been
 2    emailing.  And my request to her was simply for her
 3    to say they weren't going to do that.  And I think
 4    that's what they say in the response, Your Honor.
 5    I've been told pretty much that same line from
 6    different courts at different times, and some courts
 7    have done it.  So I understand the Court's position.
 8              But as I said, I think the Government has
 9    represented that they're not going to do that.  So I
10    think it's a moot point anyway, Your Honor.
11              Thank you.
12              THE COURT:  Any other defendants want to
13    speak on this issue?
14              All right.  Mr. Beck, Ms. Armijo, are y'all
15    not going to do this?
16              MS. ARMIJO:  We aren't going to do it.  But
17    even if we did, we think that it would be work
18    product.  But we won't do it.  We think it's
19    improper.
20              THE COURT:  And you're not going to do it
21    for this trial?
22              MS. ARMIJO:  No, we didn't do it in the
23    last one and we're not doing it in this one.
24              THE COURT:  All right.  Anything else on
25    that, Mr. Benjamin?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BENJAMIN:  I was a lot more comfortable
2     with their written stipulation rather than hedging on
3     the work product argument.  But I don't think I have
4     anything, Your Honor.
5          THE COURT:  Well, they're saying that they
6     agree with my work product analysis, but they're not
7     going to do it.  Right, Ms. Armijo?
8          MS. ARMIJO:  You are correct, Your Honor.
9          MR. BENJAMIN:  Thank you, Your Honor.
10          THE COURT:  Anybody else on that?  All
11     right.  So that motion will be denied.
12          All right.  The next motion I think we have
13     is the motion for immediate production of notes, of
14     interviews of witnesses by investigating officers.  I
15     think Mr. Castle may have said earlier that we
16     probably had covered this, or somebody did.  Is there
17     anything else to this motion we need to discuss,
18     Mr. Castle?
19          MR. CASTLE:  No, Your Honor.  This is a
20     horse that doesn't need beating anymore.
21          THE COURT:  Okay.
22          MR. CASTLE:  I just wondered, though.
23     There are two inmates that were writted, and we had
24     to space them out for the marshal's purposes.  There
25     is two here today.  We'd like to get them up and out

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                     1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

```
 1    of here, if it's okay.  Could we divert from the

 2    plan?

 3                THE COURT:  Any objection to that, Ms.

 4    Armijo?  Mr. Beck?

 5                MS. ARMIJO:  Well, are their attorneys

 6    here?  Do they have attorneys?  I think their

 7    attorneys need to be notified.

 8                MR. CASTLE:  Frederico Munoz, I don't know

 9    if he has an attorney.

10                MS. ARMIJO:  He has an attorney.  And if

11    they don't know that -- he has an attorney, and his

12    attorney has not been notified, and should be.

13                THE COURT:  Do you know the name of his

14    attorney?

15                MS. ARMIJO:  I do.  It's Luis Lopez in El

16    Paso.

17                THE COURT:  In El Paso?  Do they know that

18    he's here?  Does he know that he's here?

19                MR. CASTLE:  You know, Judge, I can't

20    imagine that he'd need an attorney.  He's saying our

21    clients confessed to murders.  He's saying he didn't

22    participate in those murders.  All I'm asking is the

23    circumstances, whether it was a statement against

24    interests.

25                He's come up with a plea agreement with the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

236

```
 1   Government where he has to cooperate.  It's required.
 2   And so, you know, I understand they're saying the
 3   attorney aspect of things, but --
 4             THE COURT:  Why don't y'all give him a
 5   call.  Who is the other one?  Who is the second
 6   witness?
 7             MR. CASTLE:  Robert Martinez.
 8             MS. ARMIJO:  And that's T.J. McElhinney,
 9   who would want to -- I'm sure that they would want to
10   at least talk to their attorneys, Your Honor.  And
11   these motions are ex parte.  So it's not like we can
12   get involved.  But certainly, they should know from
13   the prior trial that these people had -- especially
14   since this were charged -- that they have attorneys.
15   Both of these persons were charged in either 4268 or
16   4269.  And they have attorneys.
17             THE COURT:  And where is Mr. McElhinney?
18             MS. ARMIJO:  He's in town.
19             THE COURT:  He's a Las Cruces lawyer.
20             MS. ARMIJO:  Yes.
21             THE COURT:  Well, why don't y'all call
22   them, and see if they want to get over here, or tell
23   them your situation, see if they want to get over
24   here.  And if we can squeeze them in this afternoon,
25   I don't have any problem.  I would feel more
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    comfortable with attorneys being present, because it
 2    probably was something that either I or Ms. Wild or
 3    somebody got them attorneys for some specific reason.
 4              MR. CASTLE:  Judge, just so the Court
 5    knows, you know, we've had to do this on the fly,
 6    because we kept waiting for the statements from the
 7    Government.  Ms. Harbour-Valdez has already left to
 8    go call them.
 9              THE COURT:  All right.  Let's see if we can
10    squeeze them in a little bit later.  All right.
11              Am I understanding, though, on this motion
12    for immediate production of notes, there is nothing
13    else to discuss, Mr. Castle?
14              MR. CASTLE:  Yes, Your Honor.
15              THE COURT:  And does anybody else on the
16    defense side have anything to say on this motion?
17    Everybody is shaking their head no.
18              Anything else, Mr. Beck, Ms. Armijo, on
19    this motion?
20              MS. ARMIJO:  No, Your Honor.  Thank you.
21              THE COURT:  All right.  So I don't know if
22    that's a grant or deny.  I'll have to go back and
23    look at the notes, but I'll work it in with the --
24    whatever we did earlier, at least we disposed of the
25    motion.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            All right.  The next motion I have up is
 2    Tab 12, which I believe is Mr. Troup and Billy
 3    Garcia's motion to compel.
 4            MR. BURKE:  And, Your Honor, this is the
 5    one that I jumped in because it was relevant.
 6            THE COURT:  Okay.
 7            MR. BURKE:  In effect, we've handled that,
 8    and we've already begun exchanging emails about the
 9    issues that were involved in that.
10            THE COURT:  Yeah, I knew it was an old
11    motion, because Ms. Wild had me read it to update me,
12    so that I wouldn't have forgotten what I had read
13    earlier.
14            MR. BURKE:  I think we're going to be good
15    on that one.
16            THE COURT:  All right.  Anybody else have
17    anything on what is Document 1061?  It's a pretty old
18    motion.
19            Anything else from the Government?
20            MS. ARMIJO:  No, Your Honor.
21            THE COURT:  All right.  The next motion
22    that I have, I think this is where we began to get
23    out of order, and we're going to motion 28.  And I'm
24    not sure I got -- I have to assemble those documents.
25    But this is notice of the gang expert, and then I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   guess Mr. Garcia's motion to exclude this testimony.
 2   I'm going to have to find this stuff.  But is this
 3   expert issue still alive?  Are y'all planning to call
 4   the experts that we had earlier?  Can the same rules
 5   that we agreed to pretrial apply?  Or is it mooted
 6   out?  What's your thoughts, Mr. Beck?
 7             MR. BECK:  They're still listed as
 8   witnesses that we'll call.  But I think it's -- I
 9   think that it's very likely we'll proceed as we did
10   in the first trial and not call them.
11             THE COURT:  Not call them.
12             MR. BECK:  But I'm not saying that we won't
13   call them.
14             THE COURT:  Okay.  We went through -- I
15   don't think I issued an opinion on this one.  But I
16   think that I laid out pretty well what the
17   Government's experts could say and not say orally.
18   Is there any more guidance on that issue that needs
19   be given, other than what I gave in the first trial?
20   And then it sounds like they're probably not going to
21   call the witnesses.  But the Government is not going
22   to give a guarantee right at this point.
23             Mr. Castle.
24             MR. CASTLE:  No, I think the Court's orders
25   were clear.  The only thing that we would add to it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is that the Court, as part of its orders, has
 2    required further information to be provided.  And in
 3    paragraph 5, we've indicated that that hasn't been
 4    done sufficiently.  But it sounds like the Government
 5    is not likely to be calling these witnesses.  If they
 6    are, we'd ask for the disclosure as set out in this
 7    motion.
 8              THE COURT:  Did I issue a written opinion
 9    or order on this?
10              MR. CASTLE:  I do not -- well, there is a
11    reference to a memorandum in my motion.  So I'm going
12    to look here.
13              THE COURT:  I just do not see your motion.
14    I don't see a Tab 28.
15              MR. CASTLE:  It appears that all the
16    Court's rulings were on the record in the November
17    hearings in 2017.
18              THE COURT:  But I did order that, if they
19    were going to call these, there was going to have to
20    be some more information?
21              MR. CASTLE:  I believe -- probably not as
22    clear as that.  I think there was discussion back and
23    forth.  And because we were kind of -- the Trial 2
24    people were on the sidelines, I think, in the final
25    analysis.  I'm not clear enough to know what Trial 1
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    attorneys agreed with the Government.
 2              THE COURT:  Well, I think this actually
 3    occurred when we were all together, because we did
 4    the hearings on the experts all together.  So
 5    whatever I did pretrial there, applied to both
 6    trials.
 7              MR. CASTLE:  Right.  And I understand.  I
 8    think at that point there was an understanding that
 9    the Government would not be calling them, with the
10    exception as to factual information or generic gang
11    kind of testimony, not specific to the SNM Gang.
12              THE COURT:  That was generally the order
13    that I gave.
14              MR. CASTLE:  Right.  And so if that's still
15    the case, I don't think we really have a fight here.
16              THE COURT:  Okay.
17              MR. CASTLE:  So I'm trying as best I can to
18    preserve our objections, because they're also
19    preserving their right to call the experts.  And we
20    kind of want to make sure it's all on the record that
21    we've objected to these kind of experts.  I don't
22    think really the Court needs to do anything right
23    now, until or unless the Government decides to call
24    these experts.  And then, if they did make that
25    decision, then perhaps we can -- we raised this issue
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

242

```
 1   before the Court.  I'd like to turn around to my
 2   colleagues and see if I'm --
 3            THE COURT:  Let me do this:  Because I
 4   think that my ruling earlier was meant to apply to
 5   all trials.  So whatever I ruled earlier, and orally,
 6   I know I haven't put it into a motion and order, it
 7   doesn't sound like I have, that will apply to this
 8   case.  And so we'll just make it the ruling on this.
 9            If you want to turn around, go ahead.
10            MR. BURKE:  May I speak on this?
11            THE COURT:  You may.
12            MR. BURKE:  Not that I have anything
13   definitive to say.  I was seated over there, and it
14   was called the Daubert Gutierrez hearing is what I
15   remember.  And I thought you said that the experts,
16   Mr. Cupit and Mr. Sapien, could not testify to the
17   breadth of what the notice was that had been filed by
18   the Government.
19            THE COURT:  That's true.  They cannot be
20   SNM experts.  They can be gang experts, and they can
21   testify about generally what gangs do.  They can say
22   gangs get tattoos; gangs, generally, if you
23   disrespect them, they're going to do something to
24   you.  And they may have initiation proceedings, gangs
25   generally.  But what I wasn't going to allow somebody
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    to do is be a conduit for hearsay, and say, Well,

2    I've talked to three or four SNM Gang members, and

3    here's what SNM Gang members do.

4              MR. BURKE:  That's the way I remember it as

5    well.  And then I remember Ms. Jacks getting up and

6    saying:  This really doesn't meet Rule 16

7    requirements.  Where did they get that knowledge to

8    be able to say -- and I thought at that point you

9    said:  If you're going to go into those areas, we may

10   need to revisit.  But --

11             THE COURT:  Well, I think what I said --

12   and the record should reflect this -- I said that an

13   expert never escapes having to tell where it gets its

14   information.  And if it's -- you know, if it's

15   probably interviewed thousands of people, and been in

16   prisons and things like that, I think that's an

17   expert.  But if they've just interviewed one or two

18   people, they're still being just a conduit for

19   information.  We all get information from all sorts

20   of sources, one of them being oral, and one of them

21   being out-of-court statements that somebody is going

22   to turn around and offer for the truth.

23             But I guess we all sort of live with

24   medical experts, sitting in lectures at medical

25   school, and we say that's okay.  I guess a gang

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

244

```
 1    expert had brought enough experience, I'll let them
 2    do that.
 3              MR. BURKE:  And that is generally what I
 4    remember:  They can talk about the tattoos or the
 5    idea of respect.  But when it gets beyond that, we
 6    might be approaching the bench.
 7              THE COURT:  Yeah.
 8              MR. BURKE:  All right.
 9              THE COURT:  If they're being -- if they're
10    SNM experts, I get very nervous.  If they're gang
11    experts -- and one of the fellows here -- I don't
12    remember which one it was -- he looked pretty
13    knowledgeable.  I think he was a former gangster, if
14    I recall.  And yeah, he probably knows about gangs,
15    and he can testify about what gangs do.  I think the
16    Government will agree that -- they don't have to say
17    so, but I mean I think the reason they didn't call
18    him in the first trial is because they got all that
19    information out through corrections officers, FBI
20    agents, and gang members.  There wasn't a whole lot a
21    gang expert could rely upon.
22              MR. BURKE:  Very well, Your Honor.
23              THE COURT:  My experience is that juries
24    don't listen to experts much anyway.  We all, as
25    lawyers, worry about them a great deal.  But they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   always -- kind of not that impressed with them.
 2            MR. BURKE:  Thank you, Your Honor.
 3            THE COURT:  All right.  Anything else from
 4   the defense?  The Government comfortable with that?
 5   Whatever I ruled earlier will govern experts.
 6            MR. BECK:  Was our expectation.
 7            THE COURT:  All right.  So now, let's go
 8   back to -- I think after 28 -- and I don't know where
 9   28 went.  I think always -- I think, when I got the
10   file, it never did have a 28.  What I did with the
11   briefing -- which I read, I don't know where it is.
12   But I don't think I ever had a Tab 28.  It just
13   skipped.
14            So going to 13:  We go to the motion for
15   imposition of January 31, 2018 deadline for the
16   Government to produce summary of statements it
17   intends to offer against Trial 2 defendants.
18            MR. CASTLE:  That's moot, Your Honor.
19            THE COURT:  Okay.
20            MR. CASTLE:  The January 31 part was moot
21   by inaction, and action happened on March 7.  So --
22            THE COURT:  All right.  So anything else
23   from any other defendant?
24            The Government have anything on that
25   motion?  Ms. Armijo?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1            MS. ARMIJO:  No, Your Honor.
2            THE COURT:  All right.  So let's go then to
3    Tab 14, which is Document No. 1142.  And this is
4    Mr. Joe Gallegos' motion to suppress.  So Mr.
5    Benjamin, are you ready to argue this motion?
6            MR. BENJAMIN:  Your Honor, may I do this:
7    I had this transcribed, and Ms. Armijo pointed out --
8    because I think this is better done with transcripts
9    than with the actual audio of the interview, may I
10   ask to have this moved back a little bit, Your Honor.
11   I need to provide the complete transcript to Ms.
12   Armijo for her review, and then we can move forward.
13           THE COURT:  All right.  Any objection from
14   the defendants on that?
15           Ms. Armijo?
16           MS. ARMIJO:  Well, the problem is it's also
17   a motion to suppress a search warrant.  I have two
18   witnesses that I brought down --
19           THE COURT:  Okay.
20           MS. ARMIJO:  -- in the event the Court
21   wanted to hear testimony.  I know it's -- as to the
22   search warrant, it's our position that it's Mr.
23   Benjamin's burden, initially as to that.  As to the
24   statements I do have a witness available, so --
25           THE COURT:  Any objection to going ahead
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and getting those witnesses out, so that they can get

2    out of here?

3              MR. BENJAMIN:  On the house?  No, Your

4    Honor.

5              THE COURT:  Okay.

6              MS. ARMIJO:  Okay, so --

7              MR. BENJAMIN:  Search warrant.

8              MS. ARMIJO:  So the search warrant -- well,

9    I believe that's their burden, because our position

10   is it's their burden since we do have a search

11   warrant.

12             MR. BENJAMIN:  And that's what I'm saying,

13   I believe, Your Honor, essentially, at this point, I

14   would abandon the search warrant part of that.

15             THE COURT:  You will abandon it?

16             MR. BENJAMIN:  Yes, Your Honor.

17             THE COURT:  All right.  So do you need

18   those witnesses?

19             MS. ARMIJO:  Well, if they're abandoning

20   the search warrant, no.  I can let that witness go.

21             There is another witness that we would

22   have -- I guess if he sends me the transcript, maybe

23   we can work out what we would present the Court with.

24   But I do have a witness available, but --

25             THE COURT:  Do you want to get him out of

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                 e-mail: info@litsupport.com

1    the way?

2              MS. ARMIJO:  No.  I mean, I think we can

3    take a break, or during a break let me see the

4    transcript.  We can see if it's accurate, and maybe

5    we can work out a presentation, so we just don't have

6    to put a witness on for no reason.

7              THE COURT:  All right.  Is everybody

8    agreeable to that?  So we'll move on.

9              MR. BENJAMIN:  Yes, Your Honor.

10             THE COURT:  All right.  So we'll put the

11   motion to suppress aside.

12             Let's then move to the motion in limine

13   regarding bad acts.  This is the one that's filed by

14   Billy Garcia.  Let me sort of rehearse the rules that

15   I think we're operating under, and see if everyone

16   agrees.

17             MR. COOPER:  May we have just a moment?

18             THE COURT:  Certainly.

19             MR. COOPER:  I'm not sure which of us are

20   arguing this.

21             THE COURT:  All right.  This is Document

22   1308.

23             MR. BENJAMIN:  Yes, sir.

24             MS. ARMIJO:  Your Honor, I think the

25   parties have agreed that they would hear your rules.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    I was telling them that since -- I know last time we
2    went through -- Mr. Castellano went through, and in
3    order to try and assist that, after we hear what Your
4    Honor has to say, I have information that -- I can
5    meet with them individually -- as to how each of our
6    purported bad acts are SNM.  And anything that we
7    still have disagreements about, that we then bring to
8    the Court, as opposed to spending hours like we did
9    before.
10            THE COURT:  Okay.
11            MS. ARMIJO:  And I believe they are
12   amenable to that.  Because I do have -- I sent
13   letters to help me and assist me, you know, charts
14   for myself, and that would assist.  But I believe the
15   parties also wanted to hear what the Court was going
16   to say as well.
17            THE COURT:  All right.  Well, let me go
18   ahead, then, if this is the time to do it.  Let's
19   just rehearse history of why we call these "bad
20   acts."
21            Remember, originally, the Government took
22   the position that anything they were going to -- and
23   I hope I'm remembering everything correctly -- they
24   were saying that they were going to take the position
25   that anything they introduced in this trial was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    either intrinsic evidence, was res gestae, or

2    something else.  It was connected with trying to

3    prove that the racketeering activities were connected

4    with the enterprise.

5           The defendants said, Well, wait a minute,

6    we might not agree that that's res gestae; that

7    that's not intrinsic evidence; it's not connected

8    with it.  It might just be some bad act that's

9    floating out there, and the Government is trying to

10   get it in.

11          So what we did is, I told the Government:

12   Do your traditional thing, which is what they usually

13   do, is they give a 404(b) notice, say, Here's all the

14   bad acts that we're going to introduce.  We don't

15   necessarily agree that they're 404(b).  But in case

16   they are, we've given the notice required by the

17   rules.

18          So they did that, and then they continued

19   to say, is my memory, that we don't intend to

20   introduce anything other than what is intrinsic or

21   res gestae, or we're offering it to prove some

22   connection with the racketeering enterprise.

23          So the letters went out with the 404(b)

24   notice, with the understanding the Government did not

25   intend to rely on 404(b) for anything in the letters

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                    1-800-669-9492
                                                          e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    or anything else at trial.  I think their attitude is

2    they've got enough bad acts with these defendants;

3    they don't need any more.  So they're going to go

4    with what they've got that's connected with intrinsic

5    evidence.

6         So when we did the hearings pretrial for

7    those four defendants -- those five defendants -- Mr.

8    Castellano stood and said:  This one is out; we can't

9    do this one; this one is 404(b); this one we're going

10   to try to prove.  And then he would then give the

11   evidence that he had.  And then the defendants --

12   some of them -- just fell by the wayside, they were

13   clearly intrinsic, they were clearly res gestae, they

14   were purposeful.  Some of the defendants came back

15   and said:  We're challenging this one, and I had to

16   make some decisions whether they were in or out.  Is

17   that everybody's memory?  Close enough for Government

18   work?

19        Okay.  So I understand what you're now

20   doing is you're going to provide this background in

21   another setting -- not here in open court -- and see

22   if you can get some information to the defendants.

23   And then the defendants may come back to me and ask

24   me to then rule on some, if y'all don't reach an

25   agreement as to them coming in?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Is that where we are, Ms. Armijo?
 2              MS. ARMIJO:  Yes, Your Honor.  That is
 3    where we are.
 4              THE COURT:  Is that where the defendants
 5    are?
 6              MR. CASTLE:  Your Honor, we'd indicated to
 7    Ms. Armijo we had agreed, but we didn't get to
 8    inquire of everyone else.
 9              THE COURT:  All right.  Anybody have a
10    problem with the Government getting with you outside
11    of the presence of the courtroom and off the record,
12    and seeing if y'all can agree, and then you come back
13    to me with this?
14              MR. BLACKBURN:  Can we just have a second,
15    because I wasn't in on the last part of this.
16              THE COURT:  Go ahead and discuss it.
17              MR. SOLIS:  Your Honor, just for
18    clarification.  I wasn't present in court whenever
19    this was discussed previously, I guess, with all
20    parties.  And I've had information that Ms. Armijo
21    may supplement the list provided already to Mr.
22    Granberg, and Mr. Mondragon, who was counsel
23    previously.  So the procedure will be that there will
24    be a hearing in the event that we have a quarrel with
25    the remaining unagreed to 404(b) type evidence?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Well, what the hearing will be
 2      is, if you're not satisfied with the evidence -- I
 3      mean, some of these, I think, will just fall by the
 4      wayside.  I'll give you an example:  The DWIs and
 5      stuff like that, some of that fell by the wayside.
 6      The drug use tended to come in because of the SNM
 7      enterprise doing lots of drugs.  So some of that came
 8      in, some of it didn't, depending on whether it was
 9      just personal use, or whether it was drug trafficking
10      or something.  So there was some fine tuning down the
11      road.
12              Using the guidance we did before the trial,
13      some of these just fell out.  The Government said
14      it's not going to bring them.  And then some of them,
15      they said:  We want these in, and here's our evidence
16      as to why it's SNM related, res gestae, why it's tied
17      to the gang.  And then if y'all agree, then probably
18      I'm going to let it in.  If it didn't come back, it
19      came in.  You want to fight, then we'll set up some
20      hearing, maybe later this week, and resolve some of
21      those.  Make sense to you?
22              MR. SOLIS:  Yes, sir.  Thank you.
23              THE COURT:  So we call these bad acts, and
24      we call them 404(b).  But it has, at this point,
25      nothing really to do except for the fact that the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    defendants may want to characterize it as 404(b), and
 2    the Government does not.  But the Government --
 3              MR. SOLIS:  I understand.  I just didn't
 4    understand what procedure we follow to have a
 5    hearing.
 6              THE COURT:  This is what I came up to try
 7    to get as much information to the defendants as
 8    possible, so we didn't have any surprises at trial.
 9              MR. SOLIS:  Thank you.
10              MS. HARBOUR-VALDEZ:  Judge, just for
11    clarification, I spoke with Ms. Armijo.  She is not
12    intending to amend or shorten the list that we were
13    previously provided.  What she intends to do is sit
14    down and tell us why she thinks all of these things
15    will come in.  If that's the process, we'd like to
16    just go forward with the hearing and let you decide.
17              THE COURT:  Okay.  Well, all right.
18              MS. HARBOUR-VALDEZ:  That's for Mr. Troup
19    only.  I haven't discussed it with anyone else.
20              MR. SOLIS:  That's the reason I approached,
21    Your Honor, because I was informed that they were
22    going to amend this list, as recently as a few days
23    ago.
24              THE COURT:  Well, in the first trial, they
25    didn't amend any list.  So I guess I'm not sure that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    any list needs to be amended.  But if they are going

2    to try to get all this information or all these,

3    quote, "bad acts" in, they may have sanitized it

4    already and taken out some of the stuff that they

5    did.  And then I guess the question is:  Do you want

6    all this information done on the record, or off the

7    record?  But they may have already gone through and

8    taken out, for example, DWIs.

9              MR. SOLIS:  What I meant, in my situation,

10   was amend as in to add to the list.

11             MS. ARMIJO:  And, Your Honor, as to Mr.

12   Chavez, that is correct, because he was recently

13   found with a shank.  He was recently charged with

14   bringing in Suboxone.

15             THE COURT:  You've got some more?

16             MS. ARMIJO:  So we may have possible

17   different things that may not have been included on

18   his list.  So I think that was specific, because I

19   think his letter went out --

20             MR. SOLIS:  Way back in May of last year.

21             MS. ARMIJO:  In May of last year.  And we

22   have witnesses that would testify that he gave

23   people -- we had testimony, an SNM tattoo since

24   they've been incarcerated -- so to that extent, I

25   think in regard to Mr. Chavez, his letter was going
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    to be revised.  And that's --
 2              THE COURT:  Okay.  So you're going to get a
 3    revised letter.
 4              MR. SOLIS:  Right.
 5              THE COURT:  Let me go through these, then,
 6    one at a time.  Mr. Cooper, Mr. Castle, do you want
 7    to take up the Government's offer of getting their
 8    evidence off the record, and seeing if you want to
 9    fight some of these or all of these?
10              MR. CASTLE:  We'll go ahead and take your
11    offer, as long as we resolve it this week.  Is that
12    what we're going to do?
13              MS. ARMIJO:  Yes.
14              THE COURT:  Okay.  So we'll put it aside
15    and let y'all talk a little bit.  Then you'll bring
16    back the ones you want to fight over?  Is that the
17    deal?
18              MR. CASTLE:  Yes.
19              THE COURT:  Is that all right with you,
20    then, Ms. Armijo?
21              MS. ARMIJO:  Yes, Your Honor.
22              THE COURT:  All right.  Ms. Harbour-Valdez,
23    if I understand your remarks, you want to proceed and
24    go on the record?
25              MS. HARBOUR-VALDEZ:  Yes, Your Honor.  Mr.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Burke is going to handle that argument.
 2              THE COURT:  Okay.
 3              MR. BURKE:  Your Honor, we did receive a
 4   bad acts letter, understanding what it really means,
 5   in terms of intrinsic evidence for racketeering
 6   enterprise on or about May 22, 2017, I believe.  And
 7   it lists many bad acts.  And we do want to contest
 8   all of those.
 9              THE COURT:  Okay.
10              MR. BURKE:  You may come down -- well,
11   anyway --
12              THE COURT:  Let's take the first one.  On
13   or about March 7, 1994, while in the custody of NMCD,
14   Mr. Troup assaulted MR.  Can you tell me a little bit
15   about who "MR" is?
16              MR. BURKE:  I can.  I did get some
17   discovery on that.  His name is Michael Ramos.  And
18   this was a personal beef.  And at that time -- and I
19   should have told my client I was going to say this --
20   but at that time, Edward Troup is 22 or 23 years old;
21   he's still a heroin addict -- because at that time
22   you could get all the heroin you wanted in prison --
23   and personal disputes would arise out of that.  It
24   wasn't gang-related.  It wasn't part of the SNM
25   enterprise.  It was a personal beef at the Northern
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   New Mexico Correctional Facility.
 2           THE COURT:  You're willing to share with
 3   me, A, are you going to be contesting that Mr. Troup
 4   was or is an SNM Gang member?
 5           MR. BURKE:  I don't believe he was at that
 6   time.  Eventually, he became one.  I mean, for the
 7   purposes of this hearing, I will agree with that.
 8           THE COURT:  Okay.  And for purposes of this
 9   hearing, can you give me about a time that he --
10           MR. BURKE:  I think it was later in the
11   '90s.
12           THE COURT:  Later in the '90s?
13           MR. BURKE:  Yes, sir.
14           THE COURT:  '98?
15           MR. BURKE:  '98 or so.  And by the way,
16   that's my best memory, and I could be corrected.
17           THE COURT:  So you're saying he was not an
18   SNM Gang member at the time of this one.
19           Anything else you can tell me about this
20   incident?
21           MR. BURKE:  That was it.
22           THE COURT:  Anything else you want me to
23   know?
24           MR. BURKE:  I've got a couple of pages of a
25   report.  And that's it, that's all I've got on that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

259

```
 1              THE COURT:  All right.  Ms. Armijo, are you
 2    going to do these?
 3              MS. ARMIJO:  Yes, Your Honor.
 4              THE COURT:  What do you have to connect
 5    this one to SNM activity?
 6              MS. ARMIJO:  Well, Your Honor, I think it
 7    kind of goes to the heart of a lot of SNM activity.
 8    As we know, a lot of things can be both personal and
 9    SNM-related.  It's not just separated, per se.  This
10    was an assault on an inmate while he was in custody,
11    and he was in possession of a shank.  It was in New
12    Mexico -- there is a New Mexico Corrections
13    disciplinary report.  And so our argument would be
14    that this is typical of what the SNM activities are.
15    And even if he was not validated at the time -- I'll
16    go back and see when he was validated -- certainly,
17    it would be something that is consistent with SNM
18    activity.
19              THE COURT:  Well, let me know when you're
20    going to argue he was validated.  When do you intend
21    to prove or establish that he became an SNM Gang
22    member?
23              MS. ARMIJO:  And, Your Honor, I will get
24    that information.  I'm checking on that information.
25              THE COURT:  Okay.  Are you going to be able
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   to provide it while we go through these?  Because I
 2   think it may --
 3              MS. ARMIJO:  Yes.  I was trying to get a
 4   copy of his -- I apologize, I thought we were going
 5   to be several hours with the motion to suppress.
 6              THE COURT:  Well, take your time.
 7              MS. ARMIJO:  So I will -- I'll have Mr.
 8   Beck request his STIU file.
 9              MR. BURKE:  And I'm happy to defer this,
10   too, Your Honor.
11              THE COURT:  Okay.  Well, let's -- is the
12   next four going to sort of depend on that validation
13   date, Mr. Burke?
14              MR. BURKE:  No, I think the next two will.
15   And then I have a separate argument on what would
16   be -- if they were numbered -- 4, 5, 6, and 7.  And
17   I'd just as soon make that; because that would be an
18   argument I would make irrespective of validation.
19              THE COURT:  All right.  Let's go with 4.
20              MR. BURKE:  Early on, Edward would
21   occasionally get out of prison.  So, in '97, Edward
22   is 26; he gets out, and does the typical petty crimes
23   that a heroin addict does.  You'll see there,
24   larceny, parole violation, transferred --
25              MS. ARMIJO:  We're not going to use that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    one.

2              MR. BURKE:  That clump of four?

3              MS. ARMIJO:  We're not going to do the

4    larceny.

5              MR. BURKE:  Okay.  And then what about the

6    2000 or 2001, when he was out, the parole violations,

7    and the stolen motor vehicle and the burglary?

8              MS. ARMIJO:  We are not going to use those

9    either.

10             THE COURT:  So we're not going to -- the

11   Government is not going to attempt to introduce 4 or

12   5?  By "4 or 5," I mean the March 14, 1997 incident,

13   and the June 28, 2000 incident?

14             MR. BURKE:  I think two more after that.

15             MS. ARMIJO:  Yes, Your Honor, that's

16   correct.

17             THE COURT:  So I was correct, it's 4 and 5

18   on the list?

19             MS. ARMIJO:  Wait, it's 4, 6, and 7, I

20   believe.

21             THE COURT:  Okay.  So 5 is still in play?

22             MS. ARMIJO:  If I may just have a moment?

23             THE COURT:  You may.

24             MS. ARMIJO:  Five as well.

25             THE COURT:  Five is out.  And 6 is out.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   And did you say 7 is out?
 2              MS. ARMIJO:  Correct, Your Honor.
 3              THE COURT:  All right.  Let me confirm
 4   these with dates, so that we're real certain here.
 5   So the one that begins, "On or about March 14, 1997,"
 6   the one that begins, "On or about June 28, 2000," the
 7   one that says, "On or about November 22, 2001," and
 8   the one that says, "On or about December 26, 2001,"
 9   all four of those the Government will not seek to
10   establish?
11              MS. ARMIJO:  Correct, Your Honor.
12              THE COURT:  Okay.  Then let's go to the one
13   "On or about June 16, 2004."
14              MR. BURKE:  Your Honor, once again, that is
15   a personal beef.  And I would add a 403 argument on
16   that.  I've been doing these kinds of cases long
17   enough to know that that's a fairly typical event.
18   But it is disgusting, nonetheless.  And on a 403
19   basis, in addition to the personal beef basis, I
20   would move that the Court not allow the Government to
21   introduce that particular bad act.
22              THE COURT:  Do you know who DS is?
23              MR. BURKE:  David Saenz, S-A-E-N-Z.  NMCD
24   number -- you don't need that.
25              THE COURT:  Who is David Saenz?  Is he an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    SNM Gang member?
 2              MR. BURKE:  Not that I know of, Your Honor.
 3    It doesn't say that he is in the report.
 4              THE COURT:  Do you know -- and these
 5    questions are all subject to you wanting to tell me,
 6    but I'll just ask my questions -- do you know why Mr.
 7    Troup did this?
 8              MR. BURKE:  I'm sorry for interrupting,
 9    Your Honor.  He denies doing this.
10              THE COURT:  He denies doing it?
11              MR. BURKE:  Yes.
12              THE COURT:  If he did do it, do you know
13    why he did it?  We'll do O.J. Simpson.
14              MR. BURKE:  Yeah, I don't have that
15    information.  I understood there was some words being
16    exchanged.  But I don't have any information to back
17    that up.
18              THE COURT:  Nothing else to give me.
19              All right.  Ms. Armijo?
20              MS. ARMIJO:  Your Honor, we will check to
21    see who Mr. Saenz is.  That is one of the ones that I
22    did not have -- if Mr. Saenz is a gang member.  So we
23    will leave that out.  And if we find out that more
24    that would make it, we will revisit before
25    introducing it.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        THE COURT:  All right.  So it's out for the
2   present time.  If the Government wants to come back
3   and pursue it, they will need to give you notice and
4   we'll need to see what evidence they have.
5        All right.  We go then to "On or about
6   October 22, 2009, threat to correctional officers."
7   What do you know or want to tell me about that one,
8   Mr. Burke?
9        MR. BURKE:  He did start yelling at a CO,
10  and said that he -- he says, "I hang for my own.  You
11  open this door.  And send that CO in here and I'll
12  kick his ass."
13       And once again, I have been doing these
14  kinds of cases for a while.  And the whole thing with
15  COs is not necessarily gang-related.  It very rarely
16  is gang-related.  It's all about respect.  And if the
17  CO respects the inmate -- and you can kind of watch
18  the interaction here -- when the marshals -- they
19  treat our clients with respect, and the clients, you
20  know, reciprocate almost all of the time.  It's a
21  respect thing, not a gang thing.
22       THE COURT:  All right.  What do you have to
23  connect this with gang activity, Ms. Armijo?
24       MS. ARMIJO:  Your Honor, I believe that
25  this is part of Mr. Troup communicating status and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



1    his ability to put in work with other SNM Gang

2    members.  I believe that one of the statements that

3    he made was, "I got some of the fucking crew, too,

4    that are down for us."  The "us," we would say would

5    be SNM, as opposed to just --

6              THE COURT:  What does "crew" mean?  What

7    does that mean?

8              MS. ARMIJO:  I'm assuming that, in the

9    context of the statement -- well, it could mean

10   several things.  But I'd have to look at the entire

11   report.  I just have, myself, a summary.  But it

12   could mean they have correctional officers as well

13   that are down for them.  It says, "crew," if I could

14   just have a moment.

15             THE COURT:  I guess maybe I'm a little

16   dense.  "Down for them" means what?

17             MS. ARMIJO:  I'm sorry.  He's talking on

18   the phone with another SNM Gang member.  And he's

19   talking about having some of the crew that are down

20   for them as well.  The crew could either be SNM Gang

21   members or correctional officers.  But he's actually

22   talking --

23             THE COURT:  So he's not yelling this at the

24   corrections officers?

25             MS. ARMIJO:  No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  He's threatening them.  And
 2   this is an intercepted phone call?
 3              MS. ARMIJO:  Yes.
 4              THE COURT:  And he uses the word "us"?
 5              MS. ARMIJO:  Yes.
 6              THE COURT:  And read me what he says about
 7   "crew," what does he say?  What's the words again?
 8              MS. ARMIJO:  "I got some of the fucking
 9   crew, too, that are down for us."  And it's a call
10   between --
11              THE COURT:  What do you interpret that
12   phrase to mean?  "Crew down with us," what does that
13   mean?
14              MS. ARMIJO:  I'm interpreting it to mean
15   correctional officers that are down for them.
16              THE COURT:  That he's got them in some
17   compromising position so that they do what he wants
18   them to do?  Is that it?  Bring drugs or something
19   in?
20              MS. ARMIJO:  That's the way I take it.  And
21   it is a call between him and another well-known SNM
22   Gang member.
23              THE COURT:  So the "us" he's using when
24   he's -- a phone call between two gang members?
25              MS. ARMIJO:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BURKE:  Your Honor, I think we have
 2      different reports.  I'll tell you about my report
 3      that's dated -- that's about October 22, '09 --
 4      that's the one we're talking about, right?
 5              THE COURT:  Yeah.
 6              MR. BURKE:  Okay.  "At approximately 6:18
 7      p.m. I, Brandon Grandling (phonetic), was conducting
 8      a unit check in housing unit 1-A.  At this time I
 9      entered C pod.  As I was conducting my unit check, I
10      heard what sounded like something sliding across the
11      floor on the top tier.  I went upstairs.  And I found
12      a cassette tape on the floor, and observed Edward
13      Troup attempting to obtain the cassette tape by
14      throwing a piece of cardboard, attached to a piece of
15      string, under the door."  So he was fishing and
16      trying to get a tape.  And the interception of the
17      tape, a music tape, ended up in this exchange of
18      comments.  And that's just not gang-related.  That's
19      personal:  I want my music, and you're not letting me
20      have it.
21              THE COURT:  Let me see if I could do this:
22      Can I say that Mr. Burke's October 22 incident is
23      out?
24              MR. BURKE:  Okay.
25              THE COURT:  And the Government's October 22
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    incident is in?
 2              MS. ARMIJO:  Yes, Your Honor, that's fine.
 3              THE COURT:  Would that work?
 4              MR. BURKE:  That's fine.  But I would like
 5    to get the discovery on their October 22 --
 6              THE COURT:  What do you have?  Do you have
 7    a number on that?  Has it been produced, or has that
 8    been produced yet?
 9              MS. ARMIJO:  I have that it's an audio
10    disk.
11              THE COURT:  Okay.
12              MS. ARMIJO:  But I'll look into it.
13              THE COURT:  And it has been produced?
14              MS. ARMIJO:  All of our audio disks have
15    been produced.
16              MR. BURKE:  Excuse me --
17              THE COURT:  Do you want to give the number
18    on it?
19              MS. ARMIJO:  I do not have the number.
20              MR. BURKE:  I'd like to get -- all the
21    audio disks have not been -- we talked about one of
22    Ben Clark's interview, which was not produced.  I
23    know they think they produced them all, but we have
24    not gotten --
25              THE COURT:  But you don't have any problem
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   producing this one?
 2            MS. ARMIJO:  If it exists, I have no
 3   problem producing it.  It looks like this was a Lance
 4   Roundy 302.
 5            THE COURT:  So there is a 302 on it?
 6            MS. ARMIJO:  I'm assuming so, based upon
 7   the fact that it said that Lance Roundy received the
 8   two calls between them.
 9            MR. BURKE:  I know about that.  That's not
10   '09.  That's the last one on there, May 24, Edward
11   Troup contacted James Garcia.  That's the Roundy
12   tape -- I mean, Roundy went over to NMCD and got an
13   audiotape.
14            THE COURT:  Could that be possible, Ms.
15   Armijo, that what we're calling the Government's
16   October 22, is really the May 24th one?
17            MS. ARMIJO:  It could be.  I have it down
18   in the chart that I had for summary, as the October
19   22.  But could it be that one, but -- so I'll check.
20            THE COURT:  Why don't we do this:  Why
21   don't, for the present time, I'll just take out
22   October 22.  And unless you have further argument, I
23   will leave in, for the Government's use at trial, the
24   May 24, 2011, assuming it's the incident that was
25   just described by Ms. Armijo.
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1              Does that work for you, Mr. Burke?

2              MR. BURKE:  Yes, Your Honor, it does.

3              THE COURT:  Does that work for the

4    Government?

5              MS. ARMIJO:  Yes, Your Honor.

6              THE COURT:  Okay.  Then we have the March

7    25, 2010 incident?

8              MR. BURKE:  I think -- you know, I look at

9    this as verbal abuse.  And I don't look at it as

10   gang-related:  CO Andrew Romero was running showers,

11   and Edward got in a verbal yelling match with him.

12   And it's interesting, because Edward is almost always

13   so self-restrained, that he would be yelling at a CO.

14   But I didn't look at it as gang-related.  And that's

15   March 25, 2010.

16             THE COURT:  Do you have anything to connect

17   this with SNM activities, Ms. Armijo?

18             MS. ARMIJO:  Well, I believe that even the

19   defense will say at this point in time he was an SNM

20   Gang member.  And, of course, the SNM used fear to

21   intimidate corrections officers.  And the note that I

22   have is that he threatened to kill Andrew Romero.

23             MR. BURKE:  That is consistent with the

24   report I have.  And that "all COs are pussies."

25             THE COURT:  But he yelled at the time that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   he was going to kill Andrew Gallegos?
 2              MS. ARMIJO:  Andrew Romero.
 3              THE COURT:  Andrew Romero.
 4              MR. BURKE:  That's accurate, Your Honor.
 5              THE COURT:  And Andrew Romero is --
 6              MR. BURKE:  CO.
 7              THE COURT:  Well, I'm going to keep it out.
 8   I'm just not -- I think we're going to have to have a
 9   little tighter connection to the SNM activities.  So
10   I will keep that out.
11              I guess if I fall into a pattern and begin
12   to question myself, I may come back to it, but --
13              MR. BURKE:  Understood, Your Honor.
14              THE COURT:  -- right at the moment I'll
15   keep it out.
16              All right.  So we've got the January 28
17   date?
18              MR. BURKE:  2010.  It's a verbal assault
19   again.  And I didn't get a report on that.  I don't
20   believe it's being withheld.  I think Mark Myers went
21   back and tried to get reports on these things.  And
22   he got several reports, but I didn't get a report on
23   January 28, 2010.
24              THE COURT:  So you don't think one exists?
25              MR. BURKE:  Well, I think Mark Myers tried
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to get the reports.  And I think they've been giving
 2    me whatever reports Mark Myers got.
 3             THE COURT:  So this one may come in, just
 4    somebody's testimony?
 5             MR. BURKE:  It may.  Or we can hold this
 6    one in abeyance.  And if there is a report, I can
 7    reraise it for the record at some further time.
 8             THE COURT:  All right.  Do you have
 9    anything more on this one, Ms. Armijo, to connect it
10    with the SNM?
11             MS. ARMIJO:  You mean the January 28?
12             THE COURT:  The January 28.
13             MS. ARMIJO:  No.  Just the same argument,
14    certainly as before.  And I think during this time
15    period, we would have testimony that not just in
16    general -- you know, war against correctional
17    officers, but particularly around this time -- as I
18    recall, this is close in time to the Sosoya and Silva
19    incident -- and I know that several cooperators we've
20    spoken to, basically saying it was kind of an all-out
21    war at that time with correctional officers,
22    especially heightened.
23             MR. BURKE:  My counter-argument:  Edward
24    was not involved in Sosoya.  He was not involved in
25    Silva.  And when there is actually a report saying
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    that he had a year's good conduct, shortly before he
2    was released in 2012, so he was not a -- by any
3    means -- on the rampage, or participating in violent
4    activities at that time.
5            THE COURT:  Well, why don't I do this:
6    I'll let the Government come back.  If they've got
7    more specific activities, if there was a period of
8    time in which there was an all-out war against
9    correctional officers, and this falls within that
10   period of time and we've got people who will say it,
11   I'd be inclined to let it in.
12           But I'm going to need a little bit more
13   evidence to establish that this falls within that
14   timeframe.  Otherwise, I can't really say that it's
15   SNM-related without more information.  So I'll keep
16   it out at the present time.
17           All right.  Anything else?
18           MR. BURKE:  The last one, May 24, 2011.
19   What I can tell the Court is that Lance Roundy did go
20   to NMCD, and did get tapes -- or we have at least the
21   transcripts -- I don't think we do have the tapes of
22   the calls -- but we do have transcripts of calls
23   purported to be between Edward Troup and James
24   Garcia.  It would take too long; we'd have to get all
25   the transcripts out to do a full-blown argument on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that.  So what I think -- co-counsel and I may have
 2   to do is to write separately on that one so that we
 3   can lay out our argument a little better.
 4           THE COURT:  Well, if it is what Ms.
 5   Armijo -- and I know she's consulted with Mr. Acee
 6   for her interpretation of that call -- if it is that
 7   one, I'm inclined to leave it in.
 8           MR. BURKE:  Understood.  I may -- we may
 9   have some foundation --
10           THE COURT:  You may want to make another
11   run at it.
12           MR. BURKE:  Exactly.  I may want to take
13   another run at it.
14           And I think that brings us back to the
15   first three.  And I would be interested myself in
16   what the STIU records say is the date of validation
17   of SNM membership for Mr. Troup.  Because I believe
18   that there will be a disparate --
19           THE COURT:  Why don't we do this:  Let's
20   take this up after the break, and maybe y'all can
21   discuss it, or give Ms. Armijo a little bit more time
22   to look at it.  So why don't we take a 15-minute
23   break, and we'll come in and go another hour.
24           MR. BURKE:  All right.
25           THE COURT:  So we'll be in recess for 15
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1   minutes.
 2              (The Court stood in recess.)
 3              THE COURT:  All right.  We'll go back on
 4   the record.  Mr. Burke, if you and Ms. Armijo have
 5   had a chance to see --
 6              MR. BURKE:  We did.  And we think we cannot
 7   complete the rest of this hearing today.  Ms. Armijo
 8   is looking at a couple of other incidents that she
 9   may add to her list of bad acts, and she also is
10   going to look for the specific date of membership.
11   So we may have to ask the Court for a very -- and we
12   do move fairly quickly through these -- but we may
13   have to ask the Court for a short hearing on the
14   remainder of the bad acts for Mr. Troup.
15              THE COURT:  Okay.
16              MR. BURKE:  Have I stated that correctly?
17              MS. ARMIJO:  Yes.  Your Honor, that is
18   correct.
19              THE COURT:  All right.  So we'll put this
20   one aside and take up another motion?
21              MR. BURKE:  Yes, thank you, Your Honor.
22              THE COURT:  So before I forget, if Deputy
23   Mickendrow is there -- or I can hand this to one of
24   the deputies to give it to him -- it says, "On 17 D
25   the server" -- it says a lot of things on 17 D -- but
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    it says, "the server must deliver a copy of a
2    subpoena to the witness and must tender to the
3    witness one day's witness attendance fee, and the
4    legal mileage allowance -- so I think you've got to
5    do a check at the same time.  That's kind of the way
6    it's done in civil cases.  So I think it has to be
7    done in criminal cases.  So I'll put that right
8    there.  If y'all would give that to Deputy
9    Mickendrow.  I don't think it's an advance, it's just
10   the way you've got to do it.  You've got to hand them
11   a check at the time.
12           All right.  So the next motion -- let me
13   put this down here -- the next motion I think we have
14   up is Tab 17, which is Arturo Arnulfo Garcia's motion
15   in limine regarding bad acts.  Do you want to take up
16   the Government's offer to meet with them?
17           MR. BLACKBURN:  Yes, Your Honor.
18           THE COURT:  All right.  So we'll put that
19   aside.
20           All right.  I'm going now to Ms. Wild's Tab
21   18, which is Mr. Chavez' motion in limine regarding
22   alleged bad acts.  Do you want to take them up now,
23   or do you want to take up the Government's offer to
24   meet with you and go over them, Mr. Granberg?
25           MR. GRANBERG:  We'll take up the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Government's offer, Your Honor.
 2              THE COURT:  All right.  So we will put that
 3    one aside.
 4              So then we go to No. 20, Tab 20, Ms. Wild's
 5    Tab 20, which is then, Joe Gallegos' motion in limine
 6    regarding alleged bad acts.  So --
 7              MR. BENJAMIN:  I'm going to add that to my
 8    list of things to talk to Ms. Armijo about, Your
 9    Honor.
10              THE COURT:  All right.  Let me see, I may
11    have these -- I skipped 19, which I think is Mr.
12    Patterson's motion in limine regarding bad acts.
13              MR. LAHANN:  I'd just as soon get it over
14    with today, Judge.
15              THE COURT:  Do you want to get it over
16    with?
17              MR. LAHANN:  Yes.
18              THE COURT:  It's not a root canal.  Some
19    things get better with age.
20              Let's see what you've got.  Let me get to
21    the letter.  It wasn't attached.  So somebody is
22    going to have to hand it to me, and I make a copy.  I
23    don't think I've got --
24              MR. HANISEE:  I don't have a hard copy.
25              THE COURT:  You didn't attach a letter to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   your motion.  So I'll need a copy.
 2            MR. LAHANN:  I didn't have a letter from
 3   the Government.  I filed a motion.  I have the letter
 4   now.
 5            THE COURT:  You do have the letter now?
 6            MR. LAHANN:  I do, yes.
 7            THE COURT:  Do you need us to make a copy?
 8            MR. LAHANN:  No, I have the electronic
 9   copy.
10            THE COURT:  So I can use this one, Mr.
11   Beck?
12            MR. BECK:  Yes, Your Honor.
13            THE COURT:  All right.  So let's take up
14   the one on December 28.  If you want to speak to
15   that, Mr. Lahann.
16            MR. LAHANN:  Yes, Your Honor.
17            Mr. Patterson had a bladder infection,
18   which ultimately resulted in him being rushed to the
19   hospital and having emergency surgery to save his
20   life.  He had been complaining about the pain and
21   discomfort and the fever for approximately a week
22   before "medical" would even see him and try to get
23   him a catheter.
24            During that time, he became very feverous.
25   He doesn't deny that he was pretty upset, and may
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    have mouthed off to a corrections officer.  But it
 2    had nothing to do with any gang-related activity,
 3    Judge.
 4              THE COURT:  All right.  Mr. Beck, Ms.
 5    Armijo, on the December 28, 2000 incident?
 6              MS. ARMIJO:  Your Honor, I believe we would
 7    have a cooperator -- I know that previously Lupe
 8    Urquizo said that during this time period especially
 9    as well, that they were fighting a great deal with
10    correctional officers.  I believe that would be a
11    great defense to this.  But given what he's saying,
12    and the verbal gestures, he was actually found guilty
13    of the verbal abuse or gestures, and disobeying a
14    lawful order, we would submit that it's SNM activity.
15              THE COURT:  Let me ask you this, Mr.
16    Lahann:  You can tell me these if you want to, and if
17    you don't, you don't have to, but are you going to be
18    contesting that Mr. Patterson was an SNM Gang member?
19              MR. LAHANN:  Absolutely.  He's never been
20    validated.
21              THE COURT:  Okay.  And what's your proof on
22    that going to be, Ms. Armijo?
23              MS. ARMIJO:  Testimony, Your Honor.
24              And, as you know that Daniel Sanchez has
25    never been validated either -- several people have
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1   not been validated.  Especially, you need to put in
2   context when the murder that he's charged with
3   occurred, which is in 2001.
4            As you may recall, 1998, 1999, STIU unit is
5   just starting; the whole validation process is just
6   starting.  And so that was all brand-new.  So it's
7   not a surprise that several people going back to that
8   time period are not technically validated.
9            But we would have testimony that he was an
10  SNM Gang member.
11           THE COURT:  So you will have testimony from
12  one or more sources saying his name, that he's a gang
13  member?
14           MS. ARMIJO:  Yes, Your Honor.
15           THE COURT:  On this timeframe, in which
16  there was -- I think you described it as a war with
17  corrections officers -- tell me a little bit more
18  about that.  What was going on that caused this war,
19  and what did the war entail?
20           MR. BECK:  I can't remember exactly what
21  was said.  My recollection from the first trial is
22  that SNM was being, I think, disrespected by the COs,
23  and they were being put in -- I want to say ICU, but
24  it's like ISU -- Intensive Supervision Unit, or
25  something to that effect.  So they were housing all
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the SNM together under restrictive conditions.  It

2    may have been the first time.  So there was sort of

3    an outstanding order to battle with, hit, assault COs

4    anytime anyone could during that time.  And that this

5    was the 1999 to 2000 time period.  And I think it

6    occurred again later in the 2010 time period.  So

7    this would have been under that first time period.

8            I know Lupe Urquizo testified about it in

9    the first trial.  I don't know if he will testify.  I

10   mean, he would testify to that again.  But I don't

11   know.

12           THE COURT:  This is very late in 2000.  Did

13   it last the entire year of 2000, or did it drop off

14   sometime in 2000?

15           MR. BECK:  You know -- I don't know.  I

16   don't know we got that precise.  So I think -- I

17   mean, I think it's fair to say that if that testimony

18   doesn't come in, and we don't have that, then we keep

19   it out.  But if that is the testimony, then I think

20   it supports that this would be an enterprise

21   activity.

22           THE COURT:  And how you intend to sequence

23   your evidence is -- is Mr. Urquizo going to testify

24   again in this trial?

25           MR. BECK:  I don't know.  He's on the list

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                             1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                             e-mail: info@litsupport.com

```
 1    of cooperators with whom we're going to meet once
 2    we're out of court.  So I can't say that right now.
 3    Next week my approach may be different.
 4              But if it's -- let me put it this way:  If
 5    that's his testimony, and we don't have that from
 6    other people, and we think it's a basis to get this
 7    bad act in, then he may.
 8              THE COURT:  I guess what I'd be inclined to
 9    do is to say this is conditional.  I'll let it in if
10    they can cover that time period.  But if they don't
11    before -- I need to hear it before -- I don't need to
12    have a promise -- I need to hear it in court -- that
13    throughout the entire period of 2000, including
14    December 28, it will need to get that specific --
15    because that's getting pretty late in the year -- if
16    they say they're at war, I will probably leave that
17    in, because he was found guilty, so it's a pretty
18    good indication that something occurred there.  And
19    so I'd let it in.  But if they don't establish it,
20    I'll keep it out.
21              MR. LAHANN:  Yes, Your Honor.
22              THE COURT:  What do you know about the May
23    7, 2001 incident?
24              MS. ARMIJO:  Your Honor, we will not seek
25    to get that one in.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

283

1          THE COURT:  All right.  So that one is out,

2     okay.

3          And what do you know, Mr. Lahann, about the

4     October 4, 2001 incident?

5          MR. LAHANN:  Your Honor, my client was

6     never found guilty of that, and he has no memory of

7     that.

8          THE COURT:  Do you have anything -- this is

9     not going to fall within that 2000 range, so do you

10    have anything that's going to link this up --

11         MR. BECK:  I think this would be

12    conditional on -- again, I don't remember what Lupe

13    Urquizo said, and how long it lasted.  So I think it

14    would be conditional on us having evidence that there

15    was that battle with the COs during this time period.

16    If we don't have that, we don't try to get this in.

17         THE COURT:  But it's not your memory that

18    he extended it to this late in October?

19         MR. BECK:  It's not, as I sit here.

20         THE COURT:  All right.  So at the present

21    time, the October 4, 2001 is out.  And if the

22    Government wants to seek to reinsert it, they'll need

23    to approach and establish it.

24         MR. LAHANN:  Thank you, Your Honor.

25         THE COURT:  All right.  Mr. Lahann, what do

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    you know about the October 4, 2016 incident?

2              MR. LAHANN:  I've heard some testimony, I

3    think, in court from Marshal Mickendrow.  But I

4    haven't seen any video.  My client denies that he did

5    this.

6              THE COURT:  Okay.

7              MR. LAHANN:  And it's out of character for

8    my client.

9              THE COURT:  Ms. Armijo?

10             MS. ARMIJO:  We would have several agents

11   who were in the room when it occurred.

12             THE COURT:  Just say it's there?

13             MR. LAHANN:  Your Honor, can we have the

14   video to that?  If it happened in the courtroom, I

15   assume there is a video.

16             MS. ARMIJO:  I don't think there is video

17   in a federal courtroom.  I don't know if there is or

18   not, but I believe that -- you know, I think that we

19   had asked, and were told that we wouldn't be able to.

20             THE COURT:  You know, I've been educated on

21   this before.  And it may have been in this case, it

22   may have been in another.  I'll have Ms. Bevel

23   contact Ms. Wild.  I have a folder or file on this.

24   I think the answer is no.  And if we do have a

25   camera, it's not trained on anything that would pick

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    up out there.  I can't remember what it's trained on.
 2    But I don't think that there is a camera.
 3            Now, I don't know what those things are up
 4    there.  Maybe I've just never been curious enough.
 5    But I've had this question come up, and I don't think
 6    it's there.  But we'll get that file.  I'll read you
 7    what I've been told.  And of course, probably it
 8    relates to the Albuquerque courthouse.  And I'll make
 9    sure that it also applies down here.  But I think
10    it's a district-wide policy.
11            MR. LAHANN:  I would still --
12            MS. ARMIJO:  And I think it happened in
13    Albuquerque, Your Honor.
14            THE COURT:  Do you think it was this case?
15            MS. ARMIJO:  It was this case.
16            THE COURT:  When I was given the
17    information, you think it's this case, and it's this
18    incident?
19            MS. ARMIJO:  It was a hearing up in
20    Albuquerque in your courtroom, Your Honor.  I don't
21    know if it was in your courtroom or in the big
22    courtroom.
23            THE COURT:  Rio Grande.
24            MS. ARMIJO:  It was in Albuquerque.
25            MR. LAHANN:  Your Honor, I would still
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    argue that, you know, if you look at the gap from
2    2001 to 2016, there is absolutely no evidence that my
3    client was involved with SNM, did anything for SNM.
4    And I think it's a common denominator of prison
5    culture to disapprove of other inmates who testify
6    against inmates.  I don't think that's unique to SNM.
7            So I don't think it proves that he's got
8    anything to do with the enterprise.  And I would
9    object to that on relevance grounds.  It's more
10   prejudicial than probative.
11           THE COURT:  Well, I'll allow it.  If he's
12   in this case, and they have evidence that he's an SNM
13   Gang member -- which it sounds like they're going to
14   introduce some evidence of that -- then him yelling
15   in a federal courthouse, "rat" about people that are
16   testifying, other SNM Gang members in this case, I
17   think it's close enough related to SNM activities
18   that I'll leave that one in.
19           MR. LAHANN:  And that's it.
20           THE COURT:  All right.  Anything else, Mr.
21   Lahann?
22           MR. LAHANN:  That's it, Judge.
23           THE COURT:  So I guess at the present time,
24   the first three are out; the last one is in; and the
25   first one is -- the Government may be able to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   establish it, but they'll have to get some evidence

2   in.

3           MR. LAHANN:  Thank you, Your Honor.

4           THE COURT:  Thank you, Mr. Lahann.

5           Give me a second.  I need to put Mr.

6   Troup's back into the correct folder.

7           So I think now we're ready for Mr. Joe

8   Gallegos'.  So Mr. Benjamin, did you tell me you

9   wanted to talk to the Government; put it in with the

10  things you need to talk to the Government about?

11          MR. BENJAMIN:  Yes, Your Honor.

12          THE COURT:  All right.  So we'll put that

13  aside.

14          MR. SOLIS:  Your Honor --

15          THE COURT:  Yes.

16          MR. SOLIS:  -- in this hearing, Mr.

17  Benjamin is going to take a couple of hours I think I

18  understood.  I do have one motion that I was going to

19  pinch hit or come in out of the bullpen for, Mr.

20  Castle, on disclosure of some mental health records

21  for at least three cooperators.  I don't think that

22  would take much longer than 10 minutes, I don't

23  suppose.  But --

24          THE COURT:  Let me see, because there has

25  been a lot of work on the schedule.  So if people are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

288

```
 1   agreeable to that, we can take Mr. Solis' issue up.
 2   If not, then I'm going to stay to the schedule that
 3   people agreed on.  How do the defendants --
 4            MR. SOLIS:  Thank you, Your Honor.
 5            THE COURT:  -- feel about it?  Okay?
 6   Defendants saying okay?  Is the Government okay?
 7            MR. BECK:  That's fine.
 8            THE COURT:  All right.  Mr. Solis, tell me
 9   the issue.  Is this a motion that's been filed, or is
10   this --
11            MR. SOLIS:  Yes, Your Honor.  It's a motion
12   that's been filed.  I thought I had filed a motion to
13   join.  I didn't realize that -- as you know, I'm
14   catching up on these pleadings -- but evidently
15   Mr. Chavez, Mr. Garcia, and Mr. Gallegos joined in a
16   motion filed by either Mr. Troup or Mr. Garcia, Billy
17   Garcia.  And so the motion, Your Honor, is --
18            THE COURT:  Let me see if somebody else can
19   help me.  Do you know what motion he's referring to?
20            MR. SOLIS:  1908, Your Honor:  Restricted
21   motion to obtain physical or mental health records.
22   Yes, 1908.
23            THE COURT:  Do you know when that was
24   filed?  Was that filed very recently?
25            MR. SOLIS:  March the 9th of 2018.  Today
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                           1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                   e-mail: info@litsupport.com

```
 1    is the 14th.
 2              THE COURT:  Is 1908 scheduled?
 3              MR. SOLIS:  It's not scheduled.  So if the
 4    Court wishes to schedule it, then maybe tomorrow or
 5    the day after, we can do that.
 6              THE COURT:  Hold on a second.  Let me look
 7    at my stack.  We can do that.
 8              MR. SOLIS:  Your Honor, Mr. Castle tells me
 9    that Mr. Lujan's lawyer will be here tomorrow, so
10    perhaps we can schedule it then.
11              THE COURT:  All right.  Everybody want to
12    just wait till tomorrow on it?
13              MR. BECK:  Yes, Your Honor.  The United
14    States does.
15              THE COURT:  All right.  So we'll wait.  But
16    it's 1908?
17              MR. SOLIS:  1908, filed March the 9th.  And
18    it's styled, as I mentioned, "Restricted Motion to
19    Obtain Physical and Mental Health Records."  I
20    believe it's Mr. Garcia and Mr. Troup's motion
21    through their counsel.  And I had an interest in it,
22    in that it pertains to at least two witnesses that
23    are critical to our case, Your Honor.
24              THE COURT:  Okay.  If it wasn't scheduled,
25    I don't think we printed that out for me.  I'm not
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

290

1   seeing 1908.

2          MR. SOLIS:  I think I saw.  It was not

3   scheduled, because I too was looking for it.  I don't

4   think it is, frankly.

5          THE COURT:  Okay.  All right.  I see it.

6   Okay.  I'll try to take a look at it and be ready for

7   it tomorrow.

8          MR. SOLIS:  Thank you, Your Honor.

9          THE COURT:  All right.  Mr. Cooper, Mr.

10  Castle, are we ready for your motion to dismiss?

11         MR. CASTLE:  Your Honor, the Court may

12  recall, after the Court gave us the comments about

13  how it was thinking about this, we'd suggested that

14  that be kind of the end of the hearings, and that we

15  try to plow ahead on the remainder.  I think, both

16  Mr. Benjamin and the Government have witnesses here

17  on a motion to suppress, that might be best queued up

18  now, so that we could get those witnesses on their

19  way.

20         THE COURT:  Okay.  Is that the way to go,

21  Ms. Armijo?

22         MS. ARMIJO:  No, Your Honor.  Actually, I

23  spoke to Mr. Brock (sic), the witnesses for the

24  motion to suppress are tomorrow.  We just --

25  Mr. Brock handed me a transcript for the motion to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    suppress the statements.  And I haven't had a chance
 2    to review it since we don't have the transcript.  We
 3    just have recordings.  And I conferred with Mr.
 4    Benjamin, and we released that witness.  And I
 5    haven't had a chance to review the transcript anyway.
 6              THE COURT:  All right.  So your motion to
 7    dismiss is the preindictment delay, right?
 8              MR. CASTLE:  Yes.
 9              THE COURT:  So is this going to also
10    apply -- Mr. Burke and Ms. Harbour-Valdez, is it
11    going to apply to yours?  Do you want to put it at
12    the end as well?
13              MR. BURKE:  That's what I thought we were
14    going to do.
15              THE COURT:  All right.  So let me put those
16    aside.
17              MR. CASTLE:  Your Honor, I just conferred
18    with the Government.  They have some motions in
19    limine.  I don't know if the Court has those in its
20    packet.  But if it wanted to use this time, it might
21    be something we could do.
22              MR. BECK:  We could also move to Document
23    1318, which is Joe Gallegos' motion to dismiss,
24    preindictment delay.  I think that's a pretty --
25              MR. BENJAMIN:  I'm just on the pleadings,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Your Honor.
 2              MR. BECK:  That one is on the pleadings?
 3              MR. BENJAMIN:  A little bit of argument,
 4    yes.
 5              MR. BECK:  I think we could move to that
 6    one, then, this afternoon.
 7              THE COURT:  Okay.  That's what I understand
 8    is marked as Tab 23, which is 1318; is that correct,
 9    Mr. Benjamin?
10              MR. BECK:  Yes, Your Honor.
11              MR. BENJAMIN:  Yes, Your Honor.
12              THE COURT:  So we'll go to that one.
13              MR. BENJAMIN:  Your Honor, I would start
14    this off by asking the Court to remember something
15    that I can't, and so I will have to go back and look
16    at the transcript of this hearing at some point in
17    time.  But we were arguing a motion, I believe, on
18    Monday afternoon; we were discussing an issue on
19    Monday afternoon.  And the issue that was raised --
20    and that's what -- in copying Mr. Castle's motion for
21    the preindictment delay -- is my attention on
22    bringing to the Court's attention -- occurred with
23    Counts 4 and 5 -- is that, during the pendency of
24    these investigations, what has been preserved has
25    been all the bad stuff, or good stuff -- depending on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

293

```
 1    which side of the line you're standing on -- but none
 2    of the good stuff or bad stuff -- depending on the
 3    other side of the line you're on.
 4              And a specific example -- and this came to
 5    me after the filing of this motion, Your Honor, so I
 6    will move to supplement the limited argument that
 7    I'll make -- is there are jail calls that have been
 8    received from Joe Gallegos that they're alleging Joe
 9    Gallegos committed for bad acts, from 1995.
10              So information has been saved and retained
11    that can only be styled as "for later use."  And that
12    is exactly what I think happened in the Adrian Burns
13    murder.  I have been attempting, and today received a
14    call from one of the witnesses and an Assistant
15    District Attorney -- and I don't know how helpful
16    he'll be -- in attempting to determine what happened
17    at the preliminary examination hearing that was held
18    on December 6, in 2012.  And that's the hearing where
19    Judge Jim Naranjo --
20              THE COURT:  Is he a district judge?  Was he
21    a district judge?
22              MR. BENJAMIN:  No, he was a New Mexico
23    State Magistrate Judge.
24              THE COURT:  A magistrate judge does
25    probable cause hearings for cases like this?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Yes, Your Honor.
 2              THE COURT:  Aren't such people, many of
 3    them in the state, not lawyers.
 4              MR. BENJAMIN:  I believe -- I don't know.
 5    Many would imply more than -- I don't know what the
 6    percentage is.  I know some are not.  I believe Judge
 7    Naranjo, I know, is a lawyer, because of some other
 8    research I've done.
 9              THE COURT:  And he was here in Las Cruces?
10              MR. BENJAMIN:  No.  He was in Socorro, Your
11    Honor.
12              THE COURT:  In Socorro.
13              MR. BENJAMIN:  And I raise that because
14    what I think is important about that is that the New
15    Mexico State Police took that quote/unquote loss, and
16    continued proceeding forward.  But nobody preserved
17    the bad information that came out of that probable
18    cause determination.  And that would be, in my
19    opinion, the transcript.  Because that's prior
20    testimony that was given by law enforcement officers,
21    that was determined to be -- not credible, I guess,
22    is the best way to put it -- and I understand there
23    was further admonishments that were made on the
24    record.
25              And that puts us in a position where the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    Government, in continuing to investigate and

 2    prosecute this case, I believe, had a duty to

 3    preserve information.

 4             I realize the case law doesn't --

 5    essentially, requires an ill motive to attach to

 6    that.

 7             But it becomes impossible to defend cases

 8    that later on, no further evidence was ever

 9    developing, but yet, I'm still going to be hauled

10    into court on a case that the State of New Mexico, as

11    late as December of 2015, based upon documents

12    produced by the United States Government, decided was

13    not worth signing a search warrant on.

14             THE COURT:  Well, let me ask how New

15    Mexico -- I assume that that judge -- a magistrate

16    judge's order could be appealed; correct?

17             MR. BENJAMIN:  Could be.

18             THE COURT:  So what must have happened here

19    is that, rather than appealing it -- which it doesn't

20    appear it was done; correct?

21             MR. BENJAMIN:  The more usual -- and I

22    believe you could appeal that, Your Honor.  But the

23    more practical position that most district attorneys

24    take is simply seeking an indictment.

25             THE COURT:  Okay.  Rather than going out

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

296

```
 1    and getting more evidence?
 2              MR. BENJAMIN:  Go out and get more evidence
 3    and return and get an indictment.  And that's the
 4    normal course, if you're lucky enough.
 5              THE COURT:  If the magistrate denies it,
 6    you immediately get a Grand Jury, and use it to
 7    investigate?
 8              MR. BENJAMIN:  No, the police officers will
 9    continue the investigation, will return to the
10    district attorney's office and say:  I fixed problem
11    A, can we go to the Grand Jury now?
12              THE COURT:  Go to the Grand Jury, okay.
13              So the fact they didn't appeal is not
14    terribly unusual?
15              MR. BENJAMIN:  That's not unusual in the
16    least, Your Honor.
17              What is unusual is that, in December of
18    2015, an assistant district attorney in Socorro
19    County and Valencia County refused to sign Agent
20    Madrid's search warrant for 4 Aaron Court, based upon
21    what she was relating to them was new information,
22    which is the Jason Van Veghel cooperator statements
23    that we're going to hear from.
24              And so the concern that I have is that I
25    have no way to know or cross-examine officers who had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    an opportunity to be cross-examined -- and I've

2    talked to the attorney who cross-examined them, and

3    he remembers they did exceedingly bad and

4    contradicted each other -- but yet, I'm going to be

5    thrown in a position where they get a do-over, for

6    lack of a better term, because that -- and my main

7    problem here, Your Honor, is the transcript.  Because

8    that was information that was recorded that should

9    have been preserved.  And so the failure to preserve

10   that transcript, or to request that transcript -- and

11   I don't think the district attorney's office

12   requested that transcript, because he didn't want

13   it -- and the defendant was appointed, and so at the

14   end of the that time that case ended, so it's allowed

15   to languish.

16           But the party that I believe should have a

17   responsibility and should not get a free pass on what

18   I believe is not credible testimony, because that's

19   the only thing I think at the time this investigation

20   occurred and it went to the magistrate, it was solely

21   based upon, essentially, a search warrant; the

22   testimony -- and it was based upon what, at that

23   time, appeared to be a fairly solid case.

24           Since that time -- and this is what I

25   believe plays into the destruction of the




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

298

1    transcript -- since that time, it's come to be

2    learned that the blood doesn't match, there is

3    multiple rifles that were recovered that don't match.

4    There is, essentially, no way to link them, and there

5    is no history of them going to that area.  There is a

6    long list of items.

7           But the United States Attorney's Office is

8    put back in the same position that the state was

9    prior to having lost, or been given a black eye when

10   their officers testified.  And so I'm put at a

11   disadvantage, because the state was there; knows what

12   occurred; knows what mistakes to fix, but I don't.

13          THE COURT:  Okay.

14          MR. BENJAMIN:  And, Your Honor, I would

15   just point the Court to --

16          THE COURT:  So it's the transcript that

17   you're really needing?

18          MR. BENJAMIN:  It's the gamesmanship that I

19   think could be fixed by the transcript.  That's the

20   only way I can phrase it, Your Honor.

21          THE COURT:  Why do you think there is

22   gamesmanship?  What is it -- I'm missing the game.

23          MR. BENJAMIN:  Your Honor, my belief from

24   my discussing this with people who attended the

25   preliminary detention hearing, is that what occurred

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    at that hearing was that the officers testified --

 2    testified and conflicted themselves -- based upon

 3    their -- and the word that was used was timeline --

 4    and I, in reviewing the evidence, can't find what

 5    they conflicted themselves on.  But their testimony,

 6    along with Amber Sutton's testimony -- and all three

 7    of these people, I believe, will testify here -- was

 8    such that it led somebody to no bill a murder

 9    charge -- or not no bill, and I'm once again using

10    the same term that Ms. Torraco used that was

11    incorrect -- but find that there was no probable

12    cause to proceed on an open count of murder, which --

13    as I assume this Court can imagine -- is not

14    something that happens on a daily basis in the State

15    of New Mexico.

16            THE COURT:  And so what you're saying is

17    the transcript would solve that problem, because you

18    would know what the same problems were that the

19    magistrate knew?

20            MR. BENJAMIN:  That the New Mexico State

21    Police knows are the problems.

22            THE COURT:  The New Mexico State Police.

23            MR. BENJAMIN:  And, Your Honor,

24    respectfully, I believe, can then fix.  And that's

25    where I believe that it becomes a prejudicial issue

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to the defense.

2            THE COURT:  How do I fix it, other than

3    denying or doing something along those lines?

4            MR. BENJAMIN:  Your Honor, as far as

5    remedies go --

6            THE COURT:  Yeah.

7            MR. BENJAMIN:  -- I think that that is a --

8    it's a tough call, because I think the term it's a

9    death knell is not appropriate -- and in thinking

10   long and hard about this, Your Honor, I think that

11   the correct remedy is that this -- I keep coming back

12   to the same remedy, Your Honor -- this should not be

13   allowed to be used solely for what I believe it is

14   being offered for, which is prejudicial effect on the

15   Gallegos brothers in this trial.  And so --

16           THE COURT:  You probably told me, and I was

17   trying to get my -- you know, understand the facts --

18   what happened to either the tape or the transcript?

19           MR. BENJAMIN:  It was just -- there is a

20   letter that's attached to this motion, Your Honor,

21   stating that it was destroyed as a matter of the file

22   retention policy.  And there is nothing -- it's the

23   preservation of that audiotape that I believe should

24   have been done; not there was nothing malicious in

25   the destruction of that audiotape.



SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                                        Albuquerque, NM 87102
(505) 989-4949                                                                       (505) 843-9494
FAX (505) 843-9492                                                         FAX (505) 843-9492
                                                                                   1-800-669-9492
                          BEAN                                       e-mail: info@litsupport.com
                          ASSOCIATES, Inc.
                          PROFESSIONAL COURT
                          REPORTING SERVICE

```
 1        THE COURT:  And who would be to blame?  The
 2   Court?  Or who is to blame for the destruction of the
 3   transcript?
 4        MR. BENJAMIN:  I think that that
 5   destruction of the -- the failure to request and
 6   preserve that transcript, Your Honor, I think
 7   ultimately that falls upon the State of New Mexico,
 8   that is then imputed to the United States Attorney's
 9   Office, because they are the ones that are choosing
10   to prosecute this.
11        THE COURT:  And you're saying that, you
12   think the problem is the standard here is so high,
13   you've got to establish the maliciousness, and those
14   sort of things, and you just don't have anything on
15   that score?
16        MR. BENJAMIN:  Yes, Your Honor.  And I
17   firmly come forward with that, Your Honor.  And so
18   that's where I come up with, that I don't think that
19   the remedy should be to prevent them from doing this.
20   I think the remedy should probably be something to
21   prevent them from doing it -- the phrase was used a
22   thinly veiled case that it is -- it's a very weak
23   case.  And I believe it's being used for prejudicial
24   effect in the Trial 2.
25        THE COURT:  All right.  Anything further,
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Benjamin?

 2              MR. BENJAMIN:  I think that's it, Your

 3    Honor.  I appreciate the Court's time.

 4              THE COURT:  All right.  Does any other

 5    defendant want to speak on this issue before I hear

 6    from the Government?

 7              Mr. Beck?

 8              Can I ask you a question, Mr. Benjamin?

 9    Come on up; it's a very simple question.  Mr.

10    Benjamin, did the United States ever possess this

11    transcript?

12              MR. BENJAMIN:  Not in my belief, Your

13    Honor.

14              THE COURT:  Did you want to say something,

15    Ms. Torraco?

16              MS. TORRACO:  Just, Your Honor, that Andrew

17    Gallegos joins in this motion.  I don't have anything

18    to add.

19              THE COURT:  All right.  Thank you, Ms.

20    Torraco.

21              All right.  Mr. Beck.

22              MR. BECK:  I think probably the first and

23    last questions are really key, and the last question

24    you asked was:  Did the United States ever possess

25    the transcript?  And the answer to that is no, it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  didn't.

2          THE COURT:  Let me ask this:  You know, a

3  lot of times I'm sitting here and I'm having a

4  suppression hearing, I've got State Police on the

5  stand, so if the State Police did something wrong,

6  the United States cannot use the evidence, even

7  though the United States didn't have any involvement

8  at all in the stop out on I-40.

9          MR. BECK:  Right.  Sure.

10          THE COURT:  How does that play into

11  something like this?

12          MR. BECK:  I think the question is whether

13  the State Police did anything wrong.  And I think the

14  answer to that --

15          THE COURT:  So the focus is still on the

16  State Police?

17          MR. BECK:  Sure.  And the answer to that is

18  no.  I mean, so the way to analyze this question here

19  is to put -- you know, let's just do a hypothetical,

20  where the New Mexico State Police isn't involved, and

21  it's just the United States, and so, say, the FBI --

22  so we don't have to look at their actions being

23  imputed to the Government, or anything like that --

24  let's just say that the FBI was doing this.  The FBI,

25  under the case law, has no obligation -- the United

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    States has no obligation to go out and collect
 2    information which it doesn't possess in its custody,
 3    possession, or control.
 4            So that would be the court file here, which
 5    would include the recording and the transcript.  The
 6    FBI would have no obligation -- the United States
 7    Attorney's Office would have no obligation to go and
 8    get that information, which is not in its possession,
 9    custody, and control.  The Court's held that many
10    times.
11            It's the same analysis here.  Certainly,
12    the state courts cannot be imputed as part of the
13    prosecution team in this case.
14            THE COURT:  Why do you think that the court
15    got rid of it?  What's going on with the court to
16    cause them to --
17            MR. BECK:  That's where I said at the
18    beginning, that the first and the last questions Your
19    Honor asked were the most important.  The first
20    question Your Honor asked was whether it was a
21    magistrate judge, who Your Honor has experience with,
22    as not being lawyers.
23            The magistrate judge in this case didn't
24    understand -- he didn't believe that he could rely on
25    hearsay in this preliminary hearing.  And so, when
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    the New Mexico State Police agents came in and

2    testified, he was unable to find probable cause

3    because he didn't think he could rely on hearsay.

4    And so he thought that the evidence that they were

5    providing to him was not competent because it's

6    hearsay.  So that's the reason that there was no

7    probable cause found.

8              So I think Mr. Benjamin's classification

9    was it was determined to be not credible.

10             THE COURT:  What was it about Mr.

11   Benjamin -- he was saying that the officers were so

12   inconsistent that it caused the magistrate to throw

13   out the case.  Is there a basis for that?

14             MR. BECK:  Not to my knowledge.

15             And this sort of goes to the preindictment

16   delay, destruction of evidence things.  That's not

17   the right box to fit this motion into.  Because the

18   magistrate judge is available, if Mr. Benjamin wants

19   to subpoena him here for trial, to testify about what

20   he found not credible.  The magistrate judge is

21   available.

22             The New Mexico State Police agents who

23   testified there are available.

24             THE COURT:  So you think there is some

25   substitutes for not having a transcript?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Sure.  Yes.  And, again, it goes
 2    to -- I mean, that goes to the preindictment delay
 3    factor.  There is no deceased witnesses.  There is no
 4    witnesses who cannot be found anymore.  There is no
 5    documents that cannot be produced anymore.  All it is
 6    is that there was a transcript that was destroyed
 7    pursuant to regular destruction.
 8              THE COURT:  Is that what they had?  They
 9    just had a regular --
10              MR. BECK:  That's my guess, a recording.
11    So I've got a couple of things that I'll enter into
12    evidence here, I'll show to Mr. Benjamin.  I'll have
13    to mark them.  The first is analogous to what he
14    attached as Exhibit B to his motion.
15              Excuse my highlighting on here, but it will
16    probably help the Court when it zooms in here.  So
17    this is the case register of actions here, the docket
18    as I would call it.  And so it says on the bottom
19    there that the file was destroyed November 13th of
20    2014.  So I'll mark that as --
21              THE COURT:  So it doesn't look like there
22    is any hanky panky here; it just looks like they were
23    routinely going through and cleaning it out?
24              MR. BECK:  That's right.
25              THE COURT:  So, in that case, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Benjamin's argument largely is the State Police
 2   should have done something affirmative to get this
 3   material?
 4           MR. BECK:  Sure.  And I would -- I mean --
 5   well, I would disagree with that.  But I don't --
 6           THE COURT:  I know you disagree, but that's
 7   what basically his argument becomes?
 8           MR. BECK:  Yes.
 9           The second is:  I'm sorry, it's not
10   anywhere near official, but it's the best I can do
11   last night.  It's a printout from Westlaw of New
12   Mexico Statutes annotated, Section 35-1-1, which
13   talks about the magistrate court.  That's where this
14   was heard.
15           I think it's helpful, because it talks
16   about the personnel being subject to all laws and
17   regulations applicable to other state offices, which
18   will become evident why that's important in a second.
19   I'll mark that as Government's Exhibit 2.
20           And I hope I'm sort of following the
21   Court's wishes here, and delineating different
22   exhibits for the different motions.
23           THE COURT:  Yeah, you are.
24           MR. BECK:  So, as I said, that was
25   important.  Because then if we move to the New Mexico
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    rules, this is repealed -- it was repealed October
 2    1st of 2015, which is important.  Because, as I said
 3    in Exhibit 1, the destruction took place November of
 4    2014.  So this was the applicable regulation for part
 5    218 of Chapter 17 of Title 1, which is New Mexico
 6    magistrate courts, the judicial records retention and
 7    disposition schedules.
 8              And so, if we go to part 1.17.218.121, the
 9    criminal case file; it says that the criminal case
10    file shall be retained for one year after case
11    dismissed, entry of judgment, final order.  And so
12    that would have only been a year after the case was
13    dismissed.  I marked this part as Government's
14    Exhibit 3.  I'll leave my sticky note on there since
15    that's part of it.
16              And then the last part, the last exhibit I
17    had is just the general government administration
18    rule.  It's the retention and disposition of public
19    records for functional records retention and
20    disposition schedules for the state government.
21              Since the magistrate court is a lower
22    court -- and I believe this is the operative New
23    Mexico Code, New Mexico Regulation, which is
24    1.21.2.613.  And again, the retention schedules
25    remain, and it should be destroyed one year from the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1   date that the file was closed.  And I'm going to mark
 2   this, as I said, as Government's Exhibit 4, which is
 3   the currently applicable New Mexico Administrative
 4   Code.
 5            I'll provide these to Mr. Benjamin to take
 6   a look at while I continue.
 7            MR. BENJAMIN:  No objection.
 8            THE COURT:  All right.  Do you want to move
 9   all those in, if he has no objection?
10            MR. BECK:  Yes, Your Honor.
11            THE COURT:  Any objection from anybody
12   else?  All right.  So Government's Exhibits 1, 2, and
13   3 -- did I miss one?
14            MR. BENJAMIN:  I thought there were 4.
15            MR. BECK:  1 through 4.
16            THE COURT:  All right. 1 through 4 will be
17   admitted into evidence.
18            MR. BECK:  So, to the extent that this
19   would be a destruction of evidence claim, I think it
20   would fit -- rather than under the preindictment
21   delay, although I guess that could be one factor, it
22   may also fit under destruction of evidence, the
23   Trombetta or Youngblood cases that the Court has
24   heard a lot about in this case.
25            And I'll cite the Court to -- when you're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   talking -- again, that looks at, once you get past
 2   apparently exculpatory evidence, you look into
 3   evidence that may have been exculpatory.
 4           And I think that's the best we can say
 5   here, because it's not apparently exculpatory that a
 6   preliminary hearing -- or especially the evidence
 7   presented at a preliminary hearing would be
 8   exculpatory.  And so this is the Tenth Circuit's
 9   decision in United States v. Bohl, 25 F.3d 904.  It's
10   a 1994 Tenth Circuit decision.  The Court has
11   recognized this as the standard for bad faith
12   destruction of evidence.  That's in the Court's Harry
13   decision -- which is probably somewhere on my desk --
14   I can cite that to the Court, but I'm sure the Court
15   is familiar.
16           And so at the 25th volume of the F.3d
17   Reporter, pages 912 to 913, it says, "Courts have
18   held that the Government does not necessarily engage
19   in bad faith conduct, when the destruction of
20   evidence results from a standard procedure employed
21   by a governmental department or agency regarding
22   disposal of like evidence, at least when there is
23   adequate documentation of the destroyed evidence."
24           So that's why I had the four exhibits there
25   was, again, to the extent that we're looking at the
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    drugs of evidence, to the extent that it may have had

2    exculpatory value, which was not apparent, because it

3    was destroyed pursuant to government retention

4    policy, and because that has been well documented by

5    the courts.  Again, I don't think it applies here,

6    because it was never in the Government's possession,

7    custody, or control.

8              But to the extent that it may have ever

9    been, this is sort of the -- I guess, the good faith

10   exception to the bad faith instruction.

11             I think that's all I've got unless the

12   Court has some other questions.

13             THE COURT:  I don't think I do at the

14   present time.  Thank you, Mr. Beck.

15             Mr. Benjamin.

16             MR. BENJAMIN:  If I could ask the Court's

17   indulgence just a couple of minutes, Your Honor.

18             THE COURT:  Certainly.

19             MR. BENJAMIN:  And, Your Honor, Mr. Beck, I

20   think, correctly related the case law to the Court.

21   I think that this -- my concerns fit within the

22   parameters of that, though, to some extent.  And

23   I'll -- just briefly addressing those, New Mexico

24   Rules for Magistrate Court 6-202 says that the rules

25   of evidence apply in a preliminary hearing.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          And so I think his response raises two
 2   concerns.  One, his response raises the fact that
 3   he's talked to the officers who were involved in the
 4   detention hearing, and their opinion is that it was
 5   dismissed because the judge -- or at least what I
 6   understood from his argument -- is that the judge
 7   incorrectly thought hearsay didn't apply.
 8          Well, the rules of evidence apply in a
 9   preliminary hearing, Your Honor.  And so, to the
10   extent that hearsay does or doesn't come in, that's
11   correct there.
12          THE COURT:  Well, tell me -- I guess I'm
13   surprised that you wouldn't be able to use hearsay.
14   What typically occurs in a New Mexico preliminary
15   hearing?
16          MR. BENJAMIN:  Your Honor, if I can be
17   blunt with the Court, I've never done a prelim in New
18   Mexico.  I would point to my counsel over here.  But
19   I haven't done a state prelim, Your Honor.  I've
20   always managed to finagle my way out of them, one way
21   or the other, so --
22          THE COURT:  I guess I know that Judge
23   Sweazea was in the next courtroom, doing a
24   preliminary hearing.  I didn't ask him whether we
25   allow it in federal court, but I'll bet we do.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  So, Your Honor, 6-202 says
 2    that you can't use hearsay in a preliminary hearing.
 3              THE COURT:  Really?
 4              MR. BENJAMIN:  But the concern that I have,
 5    Your Honor, is that --
 6              THE COURT:  No wonder they go to the grand
 7    jury.
 8              MR. BENJAMIN:  And they do, Your Honor.
 9    They run from a preliminary.  And that's been my
10    experience in the few state cases I've handled here.
11              But the issue that comes up, Your Honor, is
12    I think, Giglio.  Because the New Mexico State
13    Police, I think, had a duty to report that if there
14    was conflicting testimony, or if a judge in his
15    decision made a determination that those officers
16    weren't credible.
17              And I will not have that information.  I
18    only have what was related to me by Mr. Beck,
19    currently in the hearing, that the State Police
20    obviously believes that the judge got the rules
21    wrong, and thought that hearsay applied.  But that's
22    an argument that the New Mexico State Police, I
23    think, was required to preserve something, if in
24    fact, the individuals I've spoken with are correct,
25    and say that he found them not credible.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And, so for the record, Your Honor, we
 2    would ask for a remedy.  I think the remedy here is
 3    the oft repeated severance, simply because this
 4    case -- I don't think there is enough to necessarily
 5    to dismiss this case.  But I think there is enough,
 6    multiple times in the bill of particulars, this part,
 7    the lack of co-conspirators, and those kind of
 8    things, to -- that the Government at some point in
 9    time must acknowledge.
10              And if the Government doesn't, I think the
11    Court needs to make this case be tried separately, or
12    cut this out, or do something with this case, so that
13    if the Government wants its day in court on the Burns
14    murder, it can have it.  But it shouldn't be allowed
15    to use it solely for prejudicial effect, Your Honor.
16              THE COURT:  All right.  Well, let me ask
17    you this:  Doesn't it not get any better for you?  I
18    mean, right now you've got a magistrate judge that
19    said no probable cause; I mean, if you go look at
20    that transcript, it may get worst for you.  Right now
21    it's pretty good.  Isn't the exculpatory value of the
22    evidence at the hearing, the fact that the magistrate
23    made that no probable cause ruling, and that would be
24    obvious and valuable?  But if you go much beyond it,
25    it may not be as good.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1              MR. BENJAMIN:  Based upon the reports I've

2    heard, Your Honor, it was a lot better in person than

3    it would be simply just being "no probable cause" on

4    paper.

5              THE COURT:  I have sat here and listened to

6    New Mexico magistrate judges testify in my court.

7    I've got a few opinions out there.  It was a civil

8    case.  Some judge, I think, from Sandoval County,

9    heading out toward Cuba, was a magistrate judge, and

10   they lost the transcript and tape.  And I wrote some

11   opinions.  I made the judge show up and tell us what

12   happened.

13             So I think Mr. Beck is right:  There may be

14   a bit of a remedy here for you.

15             MR. BENJAMIN:  And, Your Honor, I'm aware

16   of that.  And I've kind of been -- I guess we've been

17   discussing that.  So that's -- I'm aware of that,

18   Your Honor.

19             THE COURT:  Two attorneys and a magistrate

20   judge; you may recreate what occurred.

21             All right.  It sounds like what you're

22   arguing is you want me to take this cumulatively with

23   some of the other arguments you've made.  I will

24   continue to do that.

25             I'll deny this motion.  I'm not going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   dismiss anything.  But I'll let you continue to talk

2   to me cumulatively about the things here, and renew

3   requests to sever down the road.

4           MR. BENJAMIN:  Thank you, Your Honor.

5           THE COURT:  All right.  Thank you, Mr.

6   Benjamin.

7           All right.  Shall we call it a night?  All

8   right.  See y'all tomorrow at 8:30.

9           (The Court stood in recess.)




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on March 21, 2018

15

16

17

18        _____
                Jennifer Bean, FAPR, RMR-RDR-CCR
19              Certified Realtime Reporter
                United States Court Reporter
20              NM CCR #94
                333 Lomas, Northwest
21              Albuquerque, New Mexico 87102
                Phone:  (505) 348-2283
22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com