1

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4                    Plaintiff,

5        vs.              NO:  CR-15-4268 JB

6    ANGEL DELEON, et al.,

7                    Defendants.

8

9        Transcript of Motions Hearing before The

10   Honorable James O. Browning, United States District

11   Judge, Las Cruces, Dona Ana County, New Mexico,

12   commencing on March 16, 2018.

13   For the Plaintiff:  Ms. Maria Armijo, Mr. Matthew
     Beck
14
     For the Trial 2 Defendants:  Mr. Brock Benjamin;
15   Ms.  Cori Harbour-Valdez; Mr. Patrick Burke; Mr. Jim
     Castle; Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
16   Shattuck; Mr. John Granberg; Mr. Edwardo Solis;
     Mr. Billy Blackburn; Mr. Donovan Roberts; Ms. Lisa
17   Torraco; Ms. Angela Arellanes.

18   For the witness:  Ms. Cody Rogers

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Good morning
2    everyone.  I think we've got an attorney for each
3    defendant.  I think we have all the defendants in the
4    courtroom now.  So we'll get started.
5              All right.  Is Mr. Garcia back today?
6              MS. ROGERS:  He is, Your Honor.  I'll go
7    get him.
8              THE COURT:  All right.  Mr. Garcia, if
9    you'll return to the witness box.  And I'll remind
10   you that you're still under oath.  All right,
11   Mr. Garcia.
12             Mr. Beck, if you wish to continue your
13   cross-examination of Mr. Garcia.
14             MR. BECK:  I do, Your Honor.  Thank you.
15             THE COURT:  Mr. Beck.
16             MR. BECK:  Ms. Bevel, I think we're on
17   Government's Exhibit 1 for this hearing?
18             THE CLERK:  For this, yes, the
19   Government -- I just have one.  That's it so far.
20             MR. BECK:  Your Honor, I'm going to move to
21   admit as Government's Exhibit 1, the FBI 302
22   interview of James Garcia on May 13, 2017.
23             THE COURT:  Any objection to that?
24             MR. CASTLE:  Yes.  I don't think there has
25   been an adequate foundation to establish that it's an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    accurate report.
 2              THE COURT:  Well, this is a 104 hearing --
 3    that's what the defendants have characterized it --
 4    so I'll need all the information I can get.  I'm not
 5    sure I'm the one that determines whether it's
 6    accurate.  I'll have to determine whether, I guess,
 7    Mr. Garcia's statements can come in.  But I'd admit
 8    Government's Exhibit -- is it 2 now -- 2 into
 9    evidence.
10              MR. BECK:  Two, yes, Your Honor.
11              THE COURT:  What's the size of that report?
12    How long did you say it was yesterday?
13              MR. BECK:  This report, the way it's been
14    filed, it's Document 1909-1, so it was attached to
15    Mr. Castle's targeted response, and it is five pages.
16                   JAMES GARCIA,
17         after having been previously duly sworn under
18         oath, was questioned, and continued testifying
19         as follows:
20              CONTINUED CROSS-EXAMINATION
21    BY MR. BECK:
22         Q.  So Mr. Garcia, I think it was late in the
23    day yesterday, we were both tired.  And I just want
24    to make sure that I understand your testimony.
25              With Mr. Burke yesterday, my understanding
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    was that you said Mr. Troup had never admitted any

2    crimes to you.  Was that your testimony yesterday?

3         A.   I don't remember.

4         Q.   So now, your testimony -- and that's what I

5    wasn't clear on -- so your testimony is that you

6    don't remember, sitting here today?

7         A.   I don't remember, and I plead the Fifth.

8         Q.   All right.  So now -- so this is what I'm

9    trying to get us certain on.  So did Edward Troup,

10   Mr. Troup, admit his involvement in SNM crimes to

11   you?

12        A.   No.

13        Q.   So you're sure that he did not?

14        A.   No.

15        Q.   And on May 13 of 2013, you were interviewed

16   by FBI Special Agent Lance Roundy, right?

17        A.   I was -- there are so many FBI agents, I

18   don't remember each of those names.

19        Q.   You were arrested on a federal indictment

20   around May 9th of 2013, right?

21        A.   Yes.

22        Q.   And during that arrest, when you were

23   arrested, you were arrested in Albuquerque, and you

24   were transported down to Las Cruces, right?

25        A.   Yes.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                      1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1        Q.   And that was with agent -- FBI Special
 2   Agent Lance Roundy and --
 3        A.   I don't know his name.  I don't remember.
 4        Q.   But you do remember that when you were
 5   arrested, you were transported from Albuquerque to
 6   Las Cruces with two FBI agents, right?
 7        A.   One FBI agent.
 8        Q.   One FBI agent.  Okay.
 9             And in that car ride you talked with the
10   FBI agent and answered his questions, didn't you?
11        A.   No.
12        Q.   And on May 9th, 2013 -- and maybe this is
13   at the federal courthouse -- you did interview with
14   an FBI agent, right?
15        A.   I plead the Fifth.
16        Q.   So you're pleading the Fifth in response to
17   my question as to whether on May 9th of 2013, you
18   interviewed with an FBI agent?
19        A.   I said I plead the Fifth.
20             MR. BECK:  And, Your Honor, I don't have it
21   with me, but I will supplement Government's Exhibit
22   2 -- hopefully before the end of the day, but perhaps
23   not -- with Government's Exhibit 2A, which will be a
24   recording of the conversation that took place on May
25   9th, 2013, with Mr. Garcia and FBI Special Agent
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Lance Roundy.

2            THE COURT:  Any objection?

3            MR. BURKE:  Yes.  Just in the interests of

4    fairness.  I believe this is the first time anybody

5    knew about a recording.  And I don't think this sort

6    of sandbagging is appropriate.  Basically, it's a

7    discovery game.  And the Government should not be

8    permitted to benefit by failing to provide a tape

9    recording, when it should have been provided years

10   ago.

11            And, in fact, yesterday, I believe it was

12   Mr. Beck who said that "We have provided all

13   recordings."  And that came up in the context of my

14   complaining about Ben Clark's recording not being

15   provided.  So, in effect, if they have a recording

16   that they are now going to produce, that would mean

17   that Mr. Beck's statement yesterday that they have

18   produced all recordings is not a true statement.  And

19   I object in the interests of fairness.

20            THE COURT:  All right.

21            MR. CASTLE:  Your Honor, I have an

22   additional objection.  Rule 16 specifically indicates

23   if they have recorded statements -- well, I

24   apologize, that's a defendant's statement.  But, Your

25   Honor, I join Mr. Burke's objection.  There is no

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   tape that's been produced to the defense -- I
2   confirmed it with our paralegals.  All the lawyers
3   were shaking their heads as soon as we heard there
4   was tape recording.
5           This witness hasn't been able to listen to
6   that tape recording, and would have been provided
7   with a copy of it in preparation for his testimony.
8   None of that has happened.  And we need to find out,
9   I guess, why that hasn't happened.
10          MR. BECK:  I don't disagree with that.
11          Last night, when I heard Mr. Garcia's
12  testimony, what I did was I called Special Agent
13  Lance Roundy.  He wasn't sure it was recorded.  He
14  thought he'd recorded some.  And I told him to go
15  back, check his files, dig to the bottom of it and
16  see if there was a recording for this.
17          This morning he called Ms. Armijo, I think
18  probably right around 8:00 a.m., told her he had
19  found a recording and that this conversation was
20  recorded.  So I've asked him to produce that to us as
21  soon as possible.
22          THE COURT:  Let me do this:  Let me admit
23  2A for purposes of this hearing.  If there are other
24  problems with it being admissible, then I can sort
25  that out.  And if there is some either misconduct or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    something I have to deal with, I can deal with that.

2    But for purposes of this hearing, of getting this

3    hearing so I can figure out whether this material is

4    going to be admissible, I'll admit 2A.  And then

5    we'll figure out what to do with any late production

6    at the appropriate time.

7             Mr. Beck.

8        Q.   Mr. Garcia, I'm showing you what's been

9    admitted as Government's Exhibit 2 now.  This is the

10   FBI report that I went over with you a little bit

11   yesterday.  And on page 5 of Government's Exhibit 2,

12   you'll see that at the bottom there it was drafted by

13   Lance Roundy, FBI Special Agent.  I'm going to go

14   ahead and use my copy, my highlighted copy.

15             You are -- or at least in 2013, you were a

16   validated member of the Syndicato de Nuevo Mexico

17   Prison Gang, right?

18             MR. BURKE:  Objection --

19        A.   No.

20             MR. BURKE:  -- asked and answered.  We went

21   over this yesterday.

22        A.   No.

23             MR. BURKE:  It shouldn't be pretended that

24   this is the first time he's seen the statement.  Mr.

25   Beck took the statement and showed it to Mr. Garcia

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    yesterday several times.  Objection.

2              THE COURT:  Overruled.

3        Q.   And so it sounds like you said "No"?

4        A.   That what?  That I was a what, a member of

5    what?

6        Q.   That you were a validated member of the

7    Syndicato de Nuevo Mexico.

8        A.   No, I'm not a member of Syndicato de Nuevo

9    Mexico.

10       Q.   And again, I know it was late last night.

11   I know you were newly appointed counsel.  But you

12   have spoken with your attorney about testifying under

13   oath, right?

14       A.   Yes.

15             MR. CASTLE:  Your Honor, I'd ask that

16   question be stricken.  Asking a person on the stand

17   what they talked to their lawyer about is improper.

18   It violates attorney-client privilege.  And it's

19   actually threatening.

20             THE COURT:  Well --

21             MR. BURKE:  Join the objection, Your Honor.

22             THE COURT:  Overruled.  I think taking the

23   oath is the first portion of competency.  So the

24   witness needs to be aware of the severity of the

25   situation, that he's under oath.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Now, again, this report, at page 2 of 5

2   here, at the bottom it starts out, "In November 2012,

3   you had a conversation with SNM Gang member Edward

4   Troup in the backyard off of" -- somewhere in

5   Albuquerque.  Did you have that conversation with Mr.

6   Troup in 2012?

7      A.   I don't remember.

8      Q.   Okay.  Was Mr. Troup in prison or on the

9   streets in 2012?

10      A.   Like I said before, me and him don't get

11   along.  I don't remember.

12      Q.   So you and Mr. Troup don't -- I'd forgotten

13   that -- you and Mr. Troup don't get along?

14      A.   No.

15      Q.   Okay.  And again, we went over this

16   yesterday, where it says -- and I just wanted to

17   refresh your memory, because if you don't remember,

18   it says that, "Troup stated that during one of the

19   murders he held Fred Dawg's legs while Wino strangled

20   him to death with a drawstring from a laundry bag."

21      A.   I don't remember saying that.

22      Q.   "Both Troup and Alonso disposed of the

23   drawstring and then took off their clothes and tore

24   up the evidence in an attempt to hide their part in

25   the murder," right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Like I said, I don't remember saying any of
 2    that.
 3        Q.    Okay.  But it's your testimony -- you said
 4    this morning that Mr. Troup had never admitted to you
 5    participation in a murder, right?
 6        A.    Right.
 7              MR. BECK:  Your Honor, the United States --
 8        Q.    Well -- and remind me, but yesterday you
 9    said that you didn't even know who Wino is, right?
10        A.    Who?
11        Q.    Wino.
12        A.    No.
13        Q.    Right.
14              MR. BECK:  Your Honor, the United States
15    moves to admit as Government's Exhibit 3 in this the
16    plea agreement of Javier Alonso, a/k/a Wino.
17              THE COURT:  Any objection?
18              MR. BURKE:  What's the purpose of this
19    exhibit?  May I inquire?
20              MR. BECK:  Sure.  The purpose of this
21    exhibit is -- it's relevance to the accuracy of that
22    statement that he claims Mr. Troup did not give him.
23              MR. BURKE:  You're going to impeach --
24    excuse me, Your Honor, I think it's improper to
25    impeach Mr. Garcia with a statement drafted by the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Government for Mr. Alonso.

2              THE COURT:  Well, I'm not sure he's going

3    to impeach.  He may try to, but I'm not sure he's

4    going to impeach.  But it sounds like that plea

5    agreement would be somewhat relevant to me

6    understanding what Wino's role in this is.  So I'll

7    admit Government's Exhibit 3.

8         Q.   Mr. Garcia, I'm now showing you what's been

9    admitted as Government's Exhibit 3 here.  Have you

10   seen a federal plea agreement before in a federal

11   case?

12        A.   No.

13        Q.   You've never seen a federal plea agreement

14   before?

15        A.   Well, I plea bargained.  But I never seen

16   one like that.

17        Q.   Fair enough.  Do you see up there where it

18   says, "Javier Alonso, a/k/a Wino"?

19        A.   Yes.

20        Q.   And do you know that Criminal No.

21   15-CR-4268 JB is the case number for the case that

22   you're testifying in today?

23        A.   I don't understand.

24        Q.   Sure.  My question to you was do you know

25   that Criminal No. 15-CR-4268 JB is the criminal case

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   number for the case that you're testifying in right
 2   now?
 3        A.   I still don't understand.
 4        Q.   Okay.  Fair enough.
 5             MR. CASTLE:  Your Honor, I'll pose a
 6   different objection.  I believe this actually
 7   violates the concept of sequestration, which says
 8   that you don't let one witness know what another
 9   witness' testimony is going to be.  What this is is
10   the testimony of Mr. Alonso but just in written form.
11   So it's essentially a violation of sequestration.  We
12   invoked the rule early on in these proceedings, and
13   it was granted.  So I think what they're doing here
14   is essentially using -- indirectly violating that.
15             THE COURT:  Well, we're a long ways from
16   the trial.  And I don't know if Wino is going to
17   testify in this hearing, so it's a little bit complex
18   to try to sort out and allow people to ask people
19   about other people's testimony to try to determine
20   whether this evidence is admissible.  Overruled.
21        Q.   I'm directing your attention to page 5 of
22   Government's Exhibit 3 here.  Do you see this
23   paragraph that I pointed to here that begins, "In
24   2007, I was an active member of the SNM," do you see
25   that paragraph?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yeah.

 2        Q.    Do you see where it says that, "I aided and

 3   abetted Edward Troup, a/k/a Huero Troup" -- and I'm

 4   going to skip to -- "others in the murder of the

 5   person"-- and I'm down here for you -- "in the murder

 6   of the person identified in the second superseding

 7   indictment as FS, who was an inmate at the Southern

 8   New Mexico Correctional Facility in Dona Ana County."

 9   Do you see that sentence?

10        A.    Um-hum.

11        Q.    Do you know that that refers to Freddie

12   Sanchez, or who I think you referred to as Fred Dawg

13   Sanchez?

14        A.    I don't know --

15              MR. BURKE:  Your Honor, I'm going to

16   object.

17        A.    I don't know him.

18              MR. BURKE:  He's impeaching Mr. Garcia with

19   a statement that they crafted.

20              THE COURT:  I don't see the impeachment,

21   Mr. Burke.  Overruled.

22        Q.    So do you know if that corresponds with

23   what at least this report says that Mr. Troup told

24   you about a strangling to death in the Southern New

25   Mexico Correctional Facility in Las Cruces?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      A.   You hear all kinds of rumors.  There were

 2   so many rumors back then.  I don't --

 3      Q.   Okay.  We'll come back to that.  Do you

 4   see -- I'm going to skip a paragraph -- or excuse

 5   me -- a sentence, and start with the sentence that

 6   says, "On June 17, 2007."

 7      A.   Okay.

 8      Q.   See where it says, "SNM member Troup and I

 9   killed FS in his cell"?

10      A.   Yes.

11      Q.   Do you see that?  And does that correspond

12   with what this report says that Mr. Troup told you

13   that he held Fred Dawg's legs while Wino strangled

14   him to death with the drawstring from a laundry bag"?

15      A.   No.

16      Q.   Okay.  That doesn't correspond?

17      A.   I don't see the --

18      Q.   Okay.  Fair enough.

19           MR. BECK:  And Your Honor, I'm going to

20   move to admit as Government's Exhibit 4, an FBI 302

21   report dated 9/7/2017, which was an FBI debrief of

22   Javier Alonso, a/k/a Wino, on August 28, 2017.

23           THE COURT:  Any objection?

24           MR. BURKE:  Same objection, Your Honor.

25           THE COURT:  All right.  Government's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Exhibit 4 will be admitted into evidence.
 2         Q.   All right.  Mr. Garcia, I'm now showing you
 3    what's been admitted as Government's Exhibit 4.  Do
 4    you see at the top of that document it says, "On
 5    August 2, 2017 and August 28, 2017 Javier Alonso,
 6    a/k/a Wino, participated in debriefing sessions"?
 7         A.   Yes.
 8         Q.   And I'm going to take you first to page 5
 9    of this document.  And right under where it says,
10    "Fred Sanchez homicide," I'll read that aloud for you
11    so you can follow along, "Alonso was incarcerated at
12    the Southern New Mexico Correctional Facility, SNMCF,
13    blue pod when Kyle Dwyer arrived with paperwork on
14    Sanchez.  The paperwork was passed around and Alonso
15    read it."  Do you see that?
16         A.   Yes.
17         Q.   Did you see that paragraph?  At least the
18    first part of that, did you follow along with that?
19         A.   Like I said, I'm illiterate so --
20         Q.   That's fine.
21         A.   -- you gotta come and check -- I don't know
22    what you mean.
23         Q.   That's fine.
24         A.   I can't read.
25         Q.   So I'm taking you back now to Government's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Exhibit 2, which is your FBI interview on May 9 of
 2    2013.  And it says that, "At this 2012 barbecue Troup
 3    also mentioned that the murder of Fred Dawg was an
 4    order from headquarters to which you interpreted the
 5    term 'headquarters' to mean the main New Mexico
 6    prison facility in Santa Fe, New Mexico, where the
 7    majority of the SNM leadership was incarcerated."  Do
 8    you see that?
 9        A.   Yes.
10        Q.   And so does that correspond with paperwork
11    being brought down to the Southern New Mexico
12    Correctional Facility by Kyle Dwyer?
13        A.   I don't --
14             MR. BURKE:  Your Honor, I'm going to
15    object --
16        A.   -- know, sir.
17             MR. BURKE:  It's improper to ask this
18    witness whether two different pieces of paper --
19        A.   Yeah, I don't know what you're talking
20    about.
21             THE COURT:  Hold on.  While the attorney is
22    making an objection, you --
23        A.   Sorry about that.
24             THE COURT:  -- be quiet until I hear the
25    objection.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BURKE:  Your Honor, I think it's
 2    improper to ask this witness whether two different
 3    pieces of paper correspond with each other.  Your
 4    Honor can make that decision.
 5              THE COURT:  Well, he can also answer the
 6    question.  Overruled, Mr. Burke.
 7         Q.   Do you remember my question?
 8         A.   Something about orders from headquarters
 9    and the paperwork.  I don't know.  I don't know.
10         Q.   Sure.  I'll ask you again.  So does this
11    sentence in your debrief, or your interview in 2013,
12    that Troup also mentioned that the murder of Fred
13    Dawg was an order from headquarters to which you
14    interpreted the term "headquarters" to mean the main
15    New Mexico prison facility in Santa Fe, New Mexico,
16    where the majority of the SNM leadership was
17    incarcerated, my question to you is:  Does that
18    sentence correspond with the sentence that "Kyle
19    Dwyer brought down the paperwork to the Southern New
20    Mexico Correctional Facility"?
21         A.   No.
22         Q.   In your opinion it doesn't?
23         A.   In my opinion, no.
24         Q.   Okay.  And then the last sentence in this
25    paragraph where it says Troup told you that Fred Dawg
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   provided information on a murder, which was against
 2   the SNM bylaws, and that that was the cause for his
 3   murder.  Do you see that sentence in your interview?
 4   It's this last highlighted sentence at the bottom.
 5        A.   I see it.  No, I don't remember.
 6        Q.   And then I'm going to take you back to
 7   Government's Exhibit 4.  And this is the same
 8   paragraph I was just reading about Mr. Alonso's
 9   debrief where it says, "The paperwork consisted of
10   four to five pages from a police report or court
11   document, and only a few sentences pertained to
12   Sanchez.  Alonso believed that Sanchez had snitched
13   on a female from Roswell and thought the paperwork
14   was pretty weak."  Does that correspond with Fred
15   Dawg providing information which is against the SNM
16   bylaws?
17        A.   I don't know.  I'm not an SNM member.  I
18   don't know what you're talking about.
19        Q.   Okay.  And so my question to you is:  Does
20   that correspond with Fred Dawg providing information
21   on a murder which was against the SNM bylaws, and
22   that was the cause for his murder?
23        A.   I'm sorry, you lost me.  Who is Fred Dawg?
24   You're losing me on all these --
25        Q.   I'm asking -- I'm asking, here in your
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    report -- I'm not asking who is Fred Dawg.

2         A.   Okay, sorry.

3         Q.   I'm asking, in your report from April 13,

4    it says that you told Special Agent Lance Roundy that

5    Troup told you that Fred Dawg provided information on

6    a murder which was against the SNM bylaws, and that

7    was the cause for his murder.

8              MR. BENJAMIN:   Judge, objection.

9              MR. CASTLE:   Objection.

10             THE COURT:   Overruled.

11             (Unintelligible cross-talk by attorneys.)

12             THE COURT:   You're going to get a chance to

13   do your redirect.  You asked for this hearing to

14   explain this piece of evidence that I guess you're

15   either wanting to get in, or not get in.  You spend

16   all of your time objecting to things that you know

17   are admissible in a 104 hearing.  So let me hear it

18   and figure out whether this is going to be admissible

19   or not admissible.

20        Q.   So my question to you was:  Does that

21   telling on a murder, which says that it was the

22   reason for Mr. Sanchez' murder, correspond with

23   paperwork consisting of four to five pages from a

24   police report or court document, with a few sentences

25   pertaining to Sanchez, which Alonso believes Sanchez

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

1   had snitched on a female from Roswell?

2        A.   I don't remember.  I don't remember none of

3   that.

4        Q.   Now, in this 302 report, your interview in

5   2013, I read this last sentence that's highlighted at

6   the top to you, where it says, "Both Troup and Alonso

7   disposed of the drawstring and then took off their

8   clothes and tore up the evidence in an attempt to

9   hide their part in the murder."  Do you see that

10  sentence there?

11       A.   Yes.

12       Q.   Okay.  Now, I'm going to direct your

13  attention again to Government's Exhibit 4, which is

14  Mr. Javier Alonso, a/k/a Wino's, debrief, at page 6.

15  And I'm going to direct your attention -- well, I

16  guess we can start a little bit further up here.  And

17  says that, "Alonso entered Sanchez' cell and looked

18  out the window.  Sanchez turned around.  Alonso

19  pulled the cord out and placed it over Sanchez' head.

20  Troup held Sanchez around the torso while Alonso

21  strangled him.  Alonso cut his shin during the

22  attack."

23            Now, I'm going to skip down here to the

24  paragraph where it says, "Alonso slammed Sanchez on

25  the ground and 'busted his face.'  Alonso and Troup

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                      1-800-669-9492
                                                               e-mail: info@litsupport.com



```
1   checked Sanchez to ensure he was dead by looking for
2   signs of breathing and placing a mirror underneath
3   Sanchez' nose.  Alonso thought Sanchez defecated on
4   himself.  Troup kissed Alonso on the cheek and told
5   him he was proud of him."
6             The next paragraph says, "Alonso flushed
7   the cord down Sanchez' toilet, and he and Troup
8   placed Sanchez on his bunk."  Does that last sentence
9   about Alonso flushed the cord down Sanchez' toilet,
10  and he and Troup placed Sanchez in his bunk
11  correspond with this sentence in your interview that
12  says, "Troup and Alonso disposed of the drawstring
13  and took off their clothes and tore up the evidence
14  in an attempt to hide their part in the murder"?
15       A.   It seems different.
16       Q.   All right.  I want to talk about the next
17  paragraph here in this report.  It says that you
18  stated that "Troup told you about Sanchez' murder in
19  approximately 2008, when you violated your
20  probation/parole and were incarcerated in the New
21  Mexico prison system."  Do you see that sentence
22  there?
23       A.   Yes.
24       Q.   Do you remember us talking about this
25  yesterday?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes, you were.
 2        Q.   And I think it was your testimony that you
 3   and Mr. Troup had never been incarcerated together
 4   after 2008, right?
 5        A.   Not that I remember.
 6        Q.   Okay.  Well, I think yesterday you said it
 7   was impossible because you'd never been incarcerated
 8   together.  Do you remember that?
 9        A.   I was always at the North, incarcerated,
10   you know what I mean?  But at the North you're in the
11   same prison, different cells, locked down 24 hours a
12   day.
13        Q.   Sure.
14        A.   So you've got to make yourself -- let me
15   know what you mean by that.
16        Q.   Let me ask this question:  In the North,
17   when you're incarcerated, you still go out to the
18   prison yard, right?
19        A.   Yes.
20        Q.   Fair enough.  At any time after 2008, after
21   you violated parole, were you and Edward Troup
22   incarcerated together at the North?
23        A.   I was at the North, but I don't know if he
24   was there.
25        Q.   Okay.  And so yesterday -- and so are you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    saying that -- I think yesterday you said this
 2    couldn't have happened.  Are you now saying that Mr.
 3    Troup could have told you about this if you both were
 4    incarcerated at the same time?
 5         A.   Like I said before, he never told me
 6    nothing.  We do not like each other.  I told you that
 7    like about six times, sir, right?  So --
 8         Q.   Sure.  So my question to you is:  If you
 9    were incarcerated together after 2008, did you have
10    this conversation with Mr. Troup?
11         A.   No, I didn't have no conversation with him.
12         Q.   After 2008, if you violated your probation
13    and parole, were you incarcerated with Mr. Troup at
14    the North?
15         A.   No.  I just answered that question.
16         Q.   I'm asking you again.
17         A.   No.  I was at the North.  It was a long
18    time ago.  I don't remember.
19         Q.   Okay.  Fair enough.  Would it help refresh
20    your memory if I showed you yours and Mr. Troup's
21    Offender Physical Location Histories?
22         A.   I don't need to see it because I don't
23    remember.
24         Q.   All right.  Fair enough.
25              MR. BECK:  At this time the United States
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    moves to admit Government's Exhibits 5 and 6.

2    Exhibit 5 will be Edward Troup's Offender Physical

3    Location History, and 6 will be Mr. Garcia's Offender

4    Physical Location History.

5                THE COURT:  Any objection?

6                MR. CASTLE:  I need to take a look at it

7    first.

8                MR. BURKE:  Your Honor, may we approach?

9                THE COURT:  Yeah, come on up.

10               (The following proceedings were held at the

11   bench.)

12               MR. BURKE:  Your Honor, I asked to approach

13   as an officer of the Court.  The first time I ever

14   laid eyes on Daffy Garcia was yesterday.  I've never

15   spoken to him, and I don't think most of the rest of

16   us have.

17               THE COURT:  Who is that?

18               MR. BURKE:  The witness.  I'm sorry, his

19   nickname is Daffy.  Just as an officer of the Court,

20   what's going on here is just to set up the perjury.

21   And I find it offensive.  And I know you appointed

22   him a lawyer, but the lawyer is not protecting him.

23               And he needs to listen to the tape that

24   Lance Roundy apparently has, and take a deep breath

25   and be more prepared for Mr. Beck's very aggressive

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   cross-examination, which I believe is either a setup
2   for perjury or something along those lines.  And it
3   is a very aggressive prosecution team.  If Your Honor
4   is saying that this is appropriate, I certainly
5   understand and will obey the Court's order.  But I'm
6   very concerned about Daffy Garcia.  And I really
7   believe that what's happening here could be an
8   injustice to him, simply because he didn't do what
9   the Government wanted.
10          THE COURT:  Well, let's go back to the
11  beginning of this.  Tell me why I'm listening to
12  Mr. Garcia at the beginning?  Why are you offering --
13  you subpoenaed him.  You fought hard.  We got an
14  attorney over y'all's objections.  Y'all did not want
15  him to have an attorney.  So this is striking me a
16  little bit interesting that the defense is now saying
17  let's suspend the hearing so he can get either a
18  better attorney or a more prepared attorney.
19          Hold on.  What are we doing with this guy?
20  I now have gotten to the point where I don't remember
21  why you're trying to call this guy.
22          MR. CASTLE:  Your Honor, I represent Billy
23  Garcia, and the reports indicated that Mr. Garcia --
24  this Mr. Garcia, James Garcia -- had made a statement
25  to law enforcement back in 2008, in which he said
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1  that Mr. Troup made a confession to him at a
 2  barbecue, and in that confession he implicated my
 3  client.
 4          THE COURT:  Is this the same statement that
 5  Mr. Beck is going over, Mr. Garcia's statement?
 6          MR. CASTLE:  No -- well, there is two
 7  statements that Mr. Beck is going through.  One is
 8  concerning the 2001 murders.  But then the majority
 9  of his exam deals with a separate homicide of Mr.
10  Sanchez that happened in 2007, which is Count 3.  But
11  I had no dog in that hunt, and I --
12          THE COURT:  This is Government's Exhibit 1
13  here that we're talking about, that's the interview.
14          MR. CASTLE:  Yes, allegedly Mr. Garcia
15  made -- Mr. Troup made statements to Mr. James Garcia
16  about the homicides during that barbecue.  And I was
17  only asking about the one that involves my client,
18  because that's all I have standing to do.  What I was
19  attempting to -- frankly, what I was wanting --
20  really wanting to apply to James Garcia, what were
21  the circumstances behind Mr. Troup saying that Billy
22  Garcia is behind the murders, whether that was a
23  bragging circumstances, those kinds of things.  When
24  Mr. Garcia took the bench -- or took the witness
25  stand and said he never made that, my questions went
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   from 13 to, like, 6.

 2              THE COURT:  Here's my concern:  Here's my

 3   concern that you asked for a 104, and I still -- now

 4   am trying to remember why, what the evidentiary issue

 5   was that I allowed it to come -- but here's the

 6   problem:  Once he did that, once he said that, then

 7   what you're going to do is say that guy can't take

 8   the stand because then Mr. Beck can't impeach him at

 9   trial, because that would just be statements that

10   he's going to testify to.  And, you know, you sealed

11   off this witness, which calls into question whether I

12   should have allowed a 104 in the first place, which

13   was the Government's position.

14              So now we're in this position of you asking

15   three questions and sealing him off, so the

16   Government is in the position that they've got five

17   pages of his statement and a recording to impeach him

18   with.  They've got to get this guy into some sort of

19   shape so that you're not at trial saying, Judge, they

20   can't put him on the stand because all they're going

21   to do is impeach their own witness.  And all we're

22   going to hear is Mr. Beck testifying.  So it's a very

23   difficult problem.

24              So remind me again of the evidentiary rule

25   that you wanted to call this witness for.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          MR. CASTLE:  I requested a 104 hearing on

 2   whether they could establish that the statement

 3   implicating my client was actually a statement

 4   against Mr. Troup's interests, against his penal

 5   interests at the time that he made it.  That was

 6   where I was going.

 7          Obviously, this has expanded to something

 8   completely different.  But that was where I was

 9   going.  But when the witness said he never made that

10   statement --

11          THE COURT:  You're good lawyers, you know

12   what you're going to do with this.  You ask three

13   questions, seal him off, and the Government -- I

14   think I probably ought not to have any more 104

15   hearings.  We'll get in this situation.

16          MR. CASTLE:  I understand.  My objections,

17   which the Court overruled, and after the Court

18   admonished us, there haven't been any further

19   objections.  My objections were all based upon rules

20   of evidence.  The last one was the Government had

21   indicated to Mr. Garcia that it was his report, but

22   it's obviously not his report.  It's Agent Roundy's

23   report.  That was my objection.  I probably won't

24   object too much.  I'm not objecting to the process

25   taking place that the Government is doing.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  Look, we are where we are.  I
 2   think you've established enough.  This guy has got
 3   serious problems.  I think you've established that.
 4   I agree with Mr. Burke.  I don't want to dig his
 5   grave any deeper than where he is now.  He's got
 6   serious problems.  I don't know what we're going to
 7   do with him at trial, but I don't think I need to see
 8   a guy dying any more this morning.  I think you've
 9   established your point.
10          MR. BECK:  Your Honor, there are a few more
11   things that will tie up his testimony, but they're
12   just documents that I can put in.  I don't need to go
13   over them with him.  I'll seek to admit those, then
14   I'll finish my questioning.
15          MR. BURKE:  Your Honor, may I respond to
16   one thing.  If it's a confession, You're right, I did
17   it, was part of the group.  He says he didn't need a
18   lawyer.  I really thought it would be ten questions,
19   and boom.
20          I've watched Mr. Beck and Ms. Armijo enough
21   to know they would be aggressive.  I just thought we
22   would be in and out of here.  I made a mistake.  He
23   should have had a lawyer from the beginning, and I --
24          THE COURT:  I don't know who is surprised
25   by what he did.  Once he did it, you know, then you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    know, I could see what you two are going to do with
2    that, and seal him off and say:  You can't put the
3    guy on the stand.  You're sitting here with a stack
4    of evidence.  I don't know what we're going to do
5    with that.  But I have to give the Government a
6    little bit of leeway to say, you know:  Did you make
7    any of these statements?
8         MR. BURKE:  There was a point at which I
9    was switching from being Edward's Troup's lawyer -- I
10   never abandoned this -- but I just wondered about the
11   hole being dug.  I just want the Court to know that
12   up here at the bench.
13        MR. CASTLE:  One thing I'd note, when we
14   were at the bench talking about whether Mr. Garcia
15   should have a lawyer, one of the things that was
16   probably persuasive was Ms. Armijo's statement that
17   Mr. Garcia is all over the place; that he has changed
18   his testimony from time to time.  We have not had any
19   of that in our discovery, only the one statement of
20   they knew -- I think the Government was less
21   surprised that apparently he's all over the place
22   than maybe it appears to be.
23        MR. BECK:  And, Your Honor, I will say that
24   I read over a 3-inch binder full of Bates numbered
25   discovery of Mr. Garcia's statements last night.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MR. CASTLE:  Not implicating my client is
 2    what I'm talking about.
 3              THE COURT:  Well, I don't know what we're
 4    going to do with him.  But he has -- he potentially
 5    has dug a deep hole for himself this morning.  And I
 6    think we better stop it.  And so --
 7              MR. CASTLE:  That goes as well for
 8    redirect?
 9              THE COURT:  Well, I still guess I've got to
10    deal with this, you know, I think statement against
11    interests issue.
12              MR. BECK:  Probably do it by argument on
13    the motions.
14              THE COURT:  I'm not going to cut you off.
15    I wasn't cutting Mr. Beck off, so I don't want to cut
16    y'all off.  Do what you want.  But I'm going to tell
17    the Government to bring it to a close because this is
18    painful to watch.
19              MR. BECK:  Okay.
20              (The following proceedings were held in
21    open court.)
22              THE COURT:  All right.  Mr. Beck.
23              MR. BECK:  Your Honor, I'm not sure I ever
24    got a ruling on my motion to admit Government's
25    Exhibit 5 and 6 for this hearing.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1              THE COURT:  Any objection on 5 and 6?
 2              MR. CASTLE:  Judge, if I could have just a
 3    moment?
 4              MR. BECK:  And I'm going to highlight for
 5    the Court's attention --
 6              MR. CASTLE:  No objection.
 7              THE COURT:  Anybody else?  Not hearing any
 8    objections, Government's Exhibits 5 and 6 will be
 9    admitted into evidence.
10              MR. BECK:  I don't have my glasses on, so I
11    can barely see that.  But Government's Exhibit --
12    I'll make it a little better for everyone here --
13    Government's Exhibit 5 is Edward Troup's Offender
14    Physical Location History.  Government's Exhibit 6 is
15    Mr. Garcia's Offender Physical Location History.
16              And what I want to highlight for the Court
17    is that in 2009, there was an intake, which means
18    that Mr. Garcia was brought back into custody.  And
19    then from June 2009, till October 2009, he was housed
20    at the North 1-A pod, cell 102.
21              If you look at Mr. Troup's physical
22    location history from July 9, 2009, till February 18,
23    2010, Mr. Troup was also housed in North 1-A pod
24    facility, C pod 108.
25              MR. CASTLE:  Just a correction.  One was in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   A pod, one was in C pod.
 2              THE COURT:  Is that correct, Mr. Beck?
 3              MR. BECK:  That's correct.  They were in
 4   the same housing unit, just in different pods.  I
 5   think the Court is familiar with that from the first
 6   hearing, how the pod system works.
 7              The United States would move to admit
 8   Government's Exhibit 7 first, which is an FBI 302
 9   dated 8/30/2011, Bates numbered DeLeon 15650?
10              THE COURT:  All right.  Are these being
11   offered in lieu of further testimony?
12              MR. BECK:  Yes, Your Honor.
13              THE COURT:  All right.  Any objection?
14              MR. BURKE:  Your Honor, this actually came
15   up when we were talking about bad acts.
16              Lance Roundy went to the Department of
17   Corrections and got a tape.  And this was the last
18   bad act that was listed on the letter.  And I
19   mentioned at that time that we would need to, at some
20   point, listen to the calls to establish a foundation
21   for the speakers.  But I have no objection to -- for
22   the purpose that it's being offered today, but I just
23   wanted to sort of give a heads-up to the Court that
24   at some point we'll have to listen to the calls.
25              THE COURT:  This is on your bad acts?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        MR. BURKE:  Remember, when we turn the

2   page, the last one.  So no objection for the purposes

3   of the hearing today, but just to highlight.

4        THE COURT:  Anyone else?  All right.  Then

5   Government's Exhibit 7 will be admitted for this

6   hearing.

7        MR. BECK:  And Government's Exhibit 7 is a

8   302 regarding a taped conversation between an

9   individual known as Daffy and an inmate known as

10  Edward Huero Troup.  And is says that Daffy is

11  identified as Syndicato de Nuevo Mexico Gang member,

12  James Garcia.

13        The Government moves to admit Government's

14  Exhibit 8, which is an FBI 302, Bates numbered 15647

15  through 15648.  And then there is a rough report of

16  the same matter, which is Bates No. 2694 and 2695.

17        THE COURT:  That's 8?

18        MR. BECK:  Yes, Your Honor.

19        THE COURT:  All right.  Mr. Burke?

20        MR. BURKE:  Same objection.  And to explain

21  one of the reasons we're making that objection, Your

22  Honor, if you look at the first sentence of the third

23  full paragraph, "Troup told Garcia that his, Troup's

24  daughter, was dating an individual who was

25  disrespecting her."  Edward Troup doesn't have a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  daughter, now -- so that's why I was curious about
 2  the foundation.  And at some point we'll have to
 3  listen to those calls.
 4            THE COURT:  So for the limited purpose of
 5  this hearing, no objection?
 6            MR. BURKE:  Exactly so.
 7            THE COURT:  All right.  Understanding there
 8  may be other issues with it, at least in this hearing
 9  we'll admit it.  So Government's Exhibit 8 will be
10  admitted into evidence.
11            MR. BECK:  And then, Your Honor, just out
12  of an abundance of caution, to establish foundation,
13  I'm going to mark here as Government's Exhibit 2C,
14  which I will ask the Court to file under seal.  It is
15  a redacted -- excuse me, it is an unredacted copy of
16  2A.
17            THE COURT:  Remind me.  2A was the
18  transcript --
19            MR. BECK:  Exhibit 2 is the redacted
20  report, where the names and date of birth, the
21  identifying information, is redacted from who the
22  person interviewed was.
23            THE COURT:  And this is a transcript of the
24  interview that is reflected in the 302 that's
25  Government's Exhibit 1?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Right.
 2              THE COURT:  All right.  Any objection?
 3              MR. BURKE:  No objection.
 4              THE COURT:  All right.  So Government's
 5    Exhibit -- is this 8?
 6              MR. BECK:  This is Exhibit 2C.
 7              THE COURT:  Okay.  This will be 2C.
 8              MR. BECK:  Right.  As I said, the United
 9    States would file that under seal.
10              THE COURT:  All right.  It will be admitted
11    into evidence.
12              MR. BECK:  Then, finally, Government's
13    Exhibit 9, the United States will move to admit and
14    file under seal Government's Exhibit 9, which is --
15    and I don't have more copies here.  I didn't expect
16    to do this.  But it is a presentence investigation
17    report from Criminal No. 13-CR-02729-001 RB, United
18    States of America versus James Johnny Garcia.  And it
19    is unredacted because it has personal information, so
20    the United States is moving to file that under seal.
21              THE COURT:  Any objection?
22              MR. BURKE:  No objection, Your Honor.
23              THE COURT:  Anybody else?  Not hearing any,
24    Government's Exhibit 9 will be admitted into
25    evidence.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  Your Honor, I don't really
 2    have an objection, but this is the kind of
 3    presentence report that we haven't gotten in
 4    discovery of the Government's witnesses, but
 5    apparently, they can access it when necessary.  So at
 6    the break I'm going to ask that they make that effort
 7    with regard to all their witnesses.
 8              THE COURT:  Presentence reports?
 9              MR. CASTLE:  Yes.
10              MR. BECK:  I don't know how we got that
11    one, but I will find out and make the same endeavors
12    for other witnesses.
13              THE COURT:  All witnesses?
14              MR. BECK:  Yes, I'm happy to do that.
15              THE COURT:  What was 9?  Whose PSR was
16    that?
17              MR. BECK:  It's Mr. Garcia's PSR from his
18    2013 federal case down here in Las Cruces.  Excuse
19    me, James Garcia.
20              With that, Your Honor, no further
21    questions.
22              THE COURT:  All right.  Thank you, Mr.
23    Beck.
24              Mr. Castle?
25              MR. CASTLE:  I have no further questions,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Your Honor.
 2              THE COURT:  All right.  Mr. Burke?
 3              MR. BURKE:  No questions.
 4              THE COURT:  Anybody else have any questions
 5   of Mr. Garcia?
 6              All right.  Before I excuse Mr. Garcia, let
 7   me just make sure the statement that I'm looking at
 8   is located in Exhibit 1; is that correct, Mr. Castle?
 9   That's where it's located?
10              MR. CASTLE:  Yes.
11              THE COURT:  And your briefing on this is
12   located where?
13              MR. CASTLE:  It's 1909.
14              THE COURT:  1909.  From a format
15   standpoint, you know, I'm working on the chart for
16   the James hearings.  I may just put another chart
17   separate apart for these evidentiary -- additional
18   evidentiary issues, just sort of --
19              MR. BECK:  And --
20              MR. CASTLE:  Your Honor, there are several
21   defendants who filed nearly identical --
22              THE COURT:  The targeted ones?
23              MR. CASTLE:  Yes.  If the Court would like,
24   we can have a paralegal prepare that chart with all
25   the different motions, with the statement and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   motion that it belongs to, and a space next to it, if
2   the Court --
3                THE COURT:  This would be the additional
4   statements that you need ruling on?
5                MR. CASTLE:  Yes, non James.
6                THE COURT:  What is the total number of
7   those?  I had a sense it was fairly small.  Am I
8   fooling myself, or is it more?
9                MR. CASTLE:  I think for us it was five, I
10  think.
11               MR. BECK:  I think it's a small universe.
12  I think Mr. Castle's 1909 doc does a good job of
13  laying out those.
14               THE COURT:  Let me think about it a little
15  bit before you do anything.  I may ask for it, I may
16  not.
17               MR. BECK:  And I think this is probably
18  just the way these hearings have gone, there has been
19  some confusion.  The report with the statements that
20  you're looking at is Government's Exhibit 2.  So
21  Government's Exhibit 1 doesn't exist for this
22  hearing.  So there is no Government's Exhibit 1 yet.
23  So the statements that you're looking in what is --
24               THE COURT:  The 302 that you put up there?
25               MR. BECK:  That's Government's Exhibit 2,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1   right.
 2              THE COURT:  So 2; 2A is the transcript; 2B
 3   is the recording; and then 2C is the unredacted
 4   transcript?
 5              MR. BECK:  No.  I think I mismarked them.
 6   And I can mark exhibit -- there is no transcript.
 7   There is the report which is 2; there is the
 8   recording which we'll supplement as 2A; and then I
 9   just marked the sealed document.  And that was my
10   fault -- I'm sorry, Ms. Bevel -- as 2C.  I can change
11   that to 2B if we would like.
12              THE COURT:  So for Mr. Castle's statement,
13   I need to look at 2?
14              MR. BECK:  2.
15              THE COURT:  All right.  I'm going to take
16   you up, Mr. Castle.  Why don't you prepare that
17   chart, and if you'd just pull everybody's together.
18   And if I understand what we're doing then, I've got
19   the James statements that I need to rule on, and I've
20   got this cluster of five-plus statements that I need
21   to rule on.  And then coming out of this week, those
22   are the statements that y'all need some rulings and
23   guidance on, right?
24              MR. CASTLE:  That's correct, Your Honor.
25              THE COURT:  Anything else?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  I think just to note that our
 2     pleading, which would be directed at these
 3     statements --
 4              THE COURT:  This would be the one you filed
 5     early this week or sometime over the weekend --
 6              MR. BECK:  Yes.
 7              THE COURT:  -- on statements against
 8     interests you'd want me to consider at the same time?
 9              MR. BECK:  That's right, Your Honor.
10              THE COURT:  All right.
11              All right.  Mr. Garcia, you may step down.
12     Is there any reason that Mr. Garcia cannot be excused
13     from the proceedings?  Mr. Castle?  Mr. Burke?
14              MR. CASTLE:  No, Your Honor.
15              MR. BURKE:  No, Your Honor.
16              THE COURT:  Mr. Beck?
17              MR. BECK:  No, Your Honor.
18              THE COURT:  All right.  You are excused
19     from the proceedings.  Thank you for your testimony.
20              Okay.  All right.  Are we still on what I'm
21     calling 1292, which I guess is one of the old
22     motions, but we're using it a bit as a placeholder
23     here to get some additional statements in either
24     James or otherwise?
25              Mr. Castle.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  Yes, we were going to take the

 2    telephone testimony of those two --

 3              THE COURT:  Oklahoma people?

 4              MR. CASTLE:  Yes, exactly, and it just

 5    takes a few minutes to set it up.

 6              THE COURT:  Are they calling in?  Tell them

 7    to call the Meet Me conference line.  Unless I'm

 8    saying something I shouldn't, it seems to me that's

 9    the way to do it.  Tell them to call -- that number

10    is, Ms. Bevel?

11              THE CLERK:  (505) 348-2041.

12              THE COURT:  That's mine up in Albuquerque?

13    Mine here?

14              THE CLERK:  They're the same.

15              THE COURT:  And I read their motion last

16    night or here recently, but remind me again, this is

17    testimony for what motion and what purpose?

18              MR. CASTLE:  It's for the motion to

19    dismiss.

20              THE COURT:  Motion to dismiss.

21              MR. CASTLE:  Okay.

22              THE COURT:  Who were these two people?  Are

23    both of them corrections officers that got married?

24              MR. CASTLE:  Yes, they were STG officers

25    who found love at work.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            THE COURT:  It will probably be quicker for
2    you to give me that motion, which I think we already
3    resolved.  But what's their names, again?
4            MR. CASTLE:  Jim Moore will be the first.
5            THE COURT:  Cheryl Moore?
6            MR. CASTLE:  No, Cheryl Lackey.
7    L-A-C-K-E-Y.
8            Your Honor, it's going to be a few minutes
9    because the exhibits that they're going to look at
10   are on their email because we sent them that way, and
11   that's the same line they have to access to make the
12   phone call.  So they're going to take a minute or two
13   to be on the internet.
14           THE COURT:  Okay.  Do you want to wait for
15   them, or do you want to go to something else and come
16   back to them?  What do you prefer?
17           MR. CASTLE:  I think we should wait for
18   them, because we have another witness who has an
19   attorney that's coming at 10:00, so we're going to
20   try to squeeze these people in beforehand.  These are
21   short witnesses.
22           THE COURT:  All right.
23           MR. GRANBERG:  Your Honor, while we're
24   here, maybe we might be able to squeeze in a short
25   hearing on Mr. Chavez' Bad Acts.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Any objection to
 2   doing that?  Is that all right from the Government's
 3   standpoint?
 4              MS. ARMIJO:  Yes, Your Honor, I just have
 5   to find where -- I'm having computer issues, the
 6   email I sent him on what the last ones were.
 7              THE COURT:  Any objection to that, Mr.
 8   Castle?
 9              MR. CASTLE:  No objection.
10              THE COURT:  Let me see if I can reconstruct
11   what I did with your motion there.
12              MR. GRANBERG:  It was document 1531.
13              THE COURT:  All right.  I think I have it
14   in front of me.  What I don't think I have, though,
15   is the Government's letter.  I don't think it was
16   attached.  So -- oh, here it is.
17              MS. ARMIJO:  We may have some extra copies.
18              THE COURT:  I got it.  I found it.
19              MR. GRANBERG:  And I believe the Government
20   were going to amend their letter.
21              MS. ARMIJO:  Yes, Your Honor, I believe --
22   we met yesterday and we narrowed it down to six
23   incidents plus some additional ones.  So I will
24   send -- I sent that in an email just because I'm
25   having difficulties with my laptop here in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    courtroom, but I was able to send an email updating
 2    the list.  So I believe Mr. Granberg has what exactly
 3    it is that we would be seeking.
 4              THE COURT:  Okay.  Tell me, Mr. Granberg,
 5    just go through them here on the letter that you
 6    attached, and tell me which ones the Government has
 7    taken off the table, which are still in.
 8              MR. GRANBERG:  Your Honor, the Government
 9    took most of them off the table.
10              THE COURT:  Okay.
11              MR. GRANBERG:  I think it would be better
12    to tell you which ones are still on the table.
13              THE COURT:  Okay.
14              MR. GRANBERG:  It would be on page 2 of the
15    letter.
16              THE COURT:  So the first page is totally
17    off?
18              MR. GRANBERG:  The first page is totally
19    off.  Page 2 of the letter, "On or about August 13,
20    2000," is the first paragraph.  That's still in.
21              THE COURT:  August 13.  So everything above
22    that is out?
23              MR. GRANBERG:  Everything above that is
24    out, Your Honor.
25              The next paragraph, "On or about September
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    13," is still in.

2             The next paragraph, "On or about October

3    8," is still in.

4             The next paragraph, "On or about October

5    15," is still in.

6             The next paragraph, "On or about December

7    21," is still in.  "On or about October 25, 2001,"

8    still in.  "On or about" --

9             MS. ARMIJO:  Not the 25th.

10            MR. GRANBERG:  Not the 25th.  Okay.

11            THE COURT:  October 25th is out?

12            MR. GRANBERG:  Okay.  And "On or about

13   March 17, 2006," is still in.  And I believe the date

14   is January 2.

15            MS. ARMIJO:  Third?

16            MR. GRANBERG:  January 3, 2018, is a new

17   amended paragraph that the Government was going to

18   allege.  Does that sound right?

19            MS. ARMIJO:  This one?

20            MR. GRANBERG:  I thought it was the shank.

21            MS. ARMIJO:  Oh, yeah.  Those are separate.

22   Yeah.

23            MR. GRANBERG:  Right.  So those are going

24   to be --

25            MS. ARMIJO:  On the letter, it is January

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   3, 2012.  It is the second-to-the-last entry on the
 2   third page.
 3            THE COURT:  So there is not a new entry of
 4   January 3, 2018.
 5            MR. GRANBERG:  No, Your Honor, not on
 6   January 3.  I believe there is going to be a new
 7   allegation.
 8            MS. ARMIJO:  So the new allegations include
 9   three different activities.  And so we would have
10   testimony that while he was -- Mr. Chavez was in
11   Torrance, he was tattooing inmates, including Timothy
12   Martinez, giving him his S for earning his Huesos.
13   So there would be that.
14            There would also be the fact that the
15   incident involving his new charge -- that there is a
16   complaint on -- regarding the Suboxone.  It's a
17   conspiracy to distribute -- I'll have to go look to
18   see exactly what the charge is, but it's an incident
19   that involved him getting a new attorney.
20            THE COURT:  Oh, yeah.
21            MS. ARMIJO:  And Suboxone.  And then we
22   also have recently, within the last two weeks, even
23   less, maybe, where he was found to be in possession
24   of a shank at this facility.
25            So those would be the three new incidents
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  that I informed Mr. Granberg about that we would be

2  seeking to get into.

3          And I believe, with that, we have kind of

4  narrowed it down to activities while he was in the

5  custody of New Mexico Corrections or with the U.S.

6  Marshals, and most of them are drug-related, with the

7  exception of the September 13, 2013, incident which

8  is an assault that he committed with another SNM Gang

9  member.

10         MR. GRANBERG:  So Your Honor --

11         THE COURT:  Let me make sure, though, that

12  I understand on this letter.  We crossed out the

13  incident on October 25, 2001; correct, Ms. Armijo?

14         MS. ARMIJO:  Yes.  And also, I don't know

15  if he said it because I was trying to check.  We also

16  crossed out December 21, 2000.

17         MR. GRANBERG:  That is crossed out.

18         MS. ARMIJO:  That is crossed out, as well.

19         THE COURT:  Give me -- oh, the one right

20  above it.

21         MS. ARMIJO:  Yes.  So on this page we

22  should have five incidents.

23         THE COURT:  Okay.  That's August 13, 2000;

24  September 13, 2000; October 8, 2000; and October 15,

25  2000.  What's the fifth one on this letter?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                 1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1           MS. ARMIJO:  March 17, 2006.

2           THE COURT:  And then everything below that

3    is taken out.

4           MS. ARMIJO:  Correct, Your Honor.  And then

5    the only other thing is, on the last page is the

6    January 3, 2012, which I believe you have.

7           THE COURT:  So everything but January 3 is

8    out?

9           MS. ARMIJO:  Correct.

10          THE COURT:  And then we've got these three

11   incidents.

12          MS. ARMIJO:  Correct.

13          THE COURT:  All right.  Are you going to

14   challenge any of those, Mr. Granberg?  Do they look

15   like things that probably are coming in?

16          MR. GRANBERG:  Well, Your Honor, I would

17   challenge the August 13, 2000, allegation, the

18   October 8, 2000, allegation, the October 15, 2000,

19   allegation, the March 17, 2006, allegation, and the

20   January 3rd, 2012, allegation because all my

21   arguments on those allegations are very similar, the

22   same; that being that these allegations relate to

23   possession of drug paraphernalia or possession of

24   drugs or testing positive for drugs.

25          And I would submit to the Court that simply

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    by virtue of testing positive or possession of

2    paraphernalia -- or testing positive for drugs is not

3    in and of itself indicative of the pattern of

4    behavior associated with the SNM.  I would submit to

5    the Court that probably half the jail, the inmates in

6    the jail, are possessing drugs or testing positive

7    for drugs.  That's not just members of the SNM that

8    are.  I would submit to the Court that a far greater

9    percentage of the population also does, as well.  So

10   I would submit to the Court there is not a

11   sufficiently close link or nexus alleging -- linking

12   these bad acts to SNM activity.

13           THE COURT:  Ms. Armijo, I might have to

14   have my memory refreshed on this, but here was what I

15   thought we sort of did in the first trial with some

16   of these.  I may not exactly remember for sure the

17   mechanism, but I thought we agreed that if the

18   defendant wasn't going to challenge the fact that he

19   had used drugs or possessed drugs, then what we would

20   do is not necessarily go act by act, but we would let

21   you do something to establish that, and then it would

22   be unnecessary to just add it one on top of the

23   other.

24           Does anyone remember exactly what we did on

25   this drug issue?  Because there was testimony and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    there has been testimony either in the hearings or in
2    the trial, people describe SNM different ways, but
3    some of them described it as it's all about drugs,
4    and so to establish either membership or they
5    participate in something that was central to SNM, I
6    was going to allow some evidence, but maybe not
7    everything.  So you see where I'm going, Mr.
8    Granberg?
9              MR. GRANBERG:  Yes, Your Honor.
10             THE COURT:  Could you live with not
11   challenging, pick one or so of these acts, and then
12   we don't have to have them all in; they get a little
13   cumulative at some point.  If you're not going to
14   challenge he doesn't do drugs, there is going to be
15   evidence he does drugs, and we can move on.
16             MR. GRANBERG:  So is the Court saying for
17   me to pick one allegation and the rest are thrown
18   out?
19             THE COURT:  I hadn't gotten that specific,
20   but that might be a good one that --
21             MS. ARMIJO:  And Your Honor, I think you
22   are correct.  I think, in general, the way it worked
23   out in the first trial -- and I think you are
24   correct -- SNM and drugs and controlling it was a
25   very important part of SNM, controlling the drugs in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    prison, without how much they used drugs.  And I
 2    think the way it generally played out was, we didn't
 3    specifically say, "On this day this person" -- well,
 4    that's because we could have done that a lot, but we
 5    have several cooperators, and I anticipate we will
 6    have in this trial, as well, who will say that
 7    Christopher Chavez -- "Yes, I supplied him with drugs
 8    or I knew he used drugs," and that's the way we took
 9    care of it.
10              THE COURT:  Yeah.
11              MS. ARMIJO:  As long as we're going forward
12    with that, they don't have to prove all these
13    individual acts, as long as that can be the way we go
14    forward.
15              THE COURT:  Could you live with that?  That
16    way, we don't have to go and just establish each one
17    of these for a fairly limited point.
18              MR. GRANBERG:  I could live with that, Your
19    Honor.
20              THE COURT:  So why don't we try to do that,
21    just doing it like we did in the first trial.  You'll
22    have some witness that says Mr. Chavez uses drugs,
23    and then that will come in uncontested and then we
24    won't go act by act here.
25              All right.  So that takes care of the drug
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   ones, which I think is just about everything in the
 2   letter, with the exception of the assault, which
 3   you're not challenging.  Any challenges to the new
 4   three?
 5             MR. GRANBERG:  Yes, Your Honor.  In regard
 6   to the new three, we would challenge the shank
 7   allegation.  And in that particular instance,
 8   Mr. Chavez had received a new -- a cell mate in
 9   Lordsburg, had been his cell mate for about a month
10   prior to the discovery of the shank.  His cell mate's
11   name was Misha or Mishka or some variation thereof.
12   I'm not entirely sure of his name.
13             His cell mate actually gave the shank to
14   Mr. Chavez, and Mr. Chavez didn't really want it.
15   But on the particular day it was found -- it was
16   found, from what I understand, on a weekend day --
17   Mr. Chavez was transported for some sort of medical
18   procedure and when he came back, his cell mate was
19   gone, Mirnar or Misha, whoever that is; but also, in
20   the interim, while he's out getting his medical
21   evaluation, they find the shank in the cell.
22             So we would argue to the Court that the
23   shank was not Mr. Chavez's and it belonged to his
24   cell mate.  His cell mate just left it in the cell
25   when he was transported out of the cell, and it just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   so happened that Mr. Chavez was also out of the cell
 2   at the time because he was getting his medical
 3   treatment, whatever that may be.
 4           THE COURT:  All right.  Your link to SNM
 5   activity on this shank?
 6           MS. ARMIJO:  Your Honor, I think it's
 7   directly related to the charges in this case, because
 8   our evidence was that he told a correctional officer
 9   that he was actually going to use it on a
10   correctional officer because he didn't want to go
11   down.
12           And I was finding the exact email, but
13   something to the effect of:  He wasn't going to take
14   a plea to 30 years, and he was going to use it on --
15   or 50 years, something like that, and he was going to
16   use it on a correctional officer.  That's what I
17   recall.  The email that I first received about that
18   incident indicated that he had made statements that
19   he was going to use it on a correctional officer.
20   I'm sorry, to a CI; not a correctional officer.  He
21   didn't make the statement to the correctional
22   officer.  He made that statement to a cooperating
23   source.
24           MR. GRANBERG:  And Your Honor, we
25   believe --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Let me ask Ms. Armijo a

2    question.

3          Tell me again how that's linked, though, to

4    this case.  What's the connection between "I'm not

5    going to take a plea deal" and "I'm going to shank a

6    corrections officer"?

7          MS. ARMIJO:  Well, one, the important part

8    would be shanking a correctional officer.  Because as

9    we know, the SNM does shank correctional officers.

10   That's one of their signature things that they do.

11   We also know that they bring them to court.  We know

12   that even during the trial, I think Baca was found as

13   to have one in his cell.  And so it would be

14   consistent with SNM activity to always have a shank

15   and carry a shank, which is what we've heard

16   testimony about.  But he did make the statement to a

17   cooperating source about what he was going to do with

18   it.  And I guess that's --

19          THE COURT:  How does shanking an officer

20   help him not take a plea deal?  I guess it looks like

21   it would make his condition worse rather than help

22   him out.

23          MS. ARMIJO:  I would agree that it's a

24   little bit inconsistent or it could be seen as he was

25   not going to take a plea deal; he wanted to do --

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                   e-mail: info@litsupport.com

```
1    possibly do suicide by correctional officer.  I'm not
2    really sure.  And I haven't spoken to the cooperating
3    person that made the statement.  But the fact that he
4    does have a shank is relevant, given -- and you may
5    recall there were even shanks found where he was
6    housed in Torrance.  Throughout the pendency of this
7    case, there have been shanks found at the different
8    facilities throughout the time pending with this case
9    with the SNM Gang members, and we have the
10   cooperators talking about the shanks and their
11   possible use.
12              THE COURT:  All right, Mr. Granberg.
13              MR. GRANBERG:  A couple points in response
14   to that, Your Honor.  One, while we do not know
15   definitively, it's our belief that his cell mate
16   Mishka was, in fact, the cooperating source.  And I
17   find it ironic that, one, this cooperating source
18   alleges a statement that Mr. Chavez made saying that
19   he was going to either shank a correctional officer
20   or shank himself, commit suicide, but that this
21   also -- this cooperating source supplied him that
22   same shank.
23              Second, I have not sat through the entire
24   Trial 1, but I don't believe it's alleged that
25   shanking correctional officers is part and parcel of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    being an SNM.

2            THE COURT:  Here's what I do recall of the

3    testimony either during one of the hearings or at the

4    trial, was that one of the things that SNM members

5    did was always have a shank, and always carry a

6    shank.  And so I guess I think I was fairly liberal

7    with the Government on shanks in the first trial.  I

8    guess I'd be inclined to think that that was a little

9    bit more of a signature thing of the SNM, that you

10   just always had a shank.

11           MR. GRANBERG:  Your Honor, if it is a

12   signature of the SNM, then this would be the first

13   and only bad act of Mr. Chavez having a shank.

14           THE COURT:  Or he got caught.  Might be

15   pretty good at it.

16           MR. GRANBERG:  Mr. Chavez has been in

17   custody quite a bit throughout the years, and it's

18   just ironic that the same cooperating source that

19   alleges the statement to the CO or the suicide is

20   also the same person that we alleged supplied him

21   that shank.

22           THE COURT:  Well, I'll give it some

23   thought, but I think at the present time I'm going to

24   allow that evidence in.

25           (Mr. Solis entered the courtroom.)

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Anything on the other two?
 2              MR. GRANBERG:  No, Your Honor.
 3              THE COURT:  All right.  So anything else,
 4    Mr. Granberg, you need guidance on?
 5              MR. GRANBERG:  No, Your Honor.
 6              THE COURT:  I'll give it some thought, but
 7    let's plan on that one coming in.  I'll give it some
 8    thought.
 9              MR. GRANBERG:  And in reference to the drug
10    use, there would just be one sort of global
11    allegation made as far as the bad act is concerned on
12    that?
13              THE COURT:  I guess what you do is, at some
14    point you just ask to establish that; correct, Ms.
15    Armijo?
16              MS. ARMIJO:  Yes, Your Honor.  I think
17    that, like I said, it would be witness testimony
18    about, in general, the SNM.  And then if there's
19    specific cooperators that would say, "Yes, I supplied
20    Mr. Chavez with drugs," or, "I did drugs with
21    Mr. Chavez," that's the testimony that came in in the
22    first trial, and which I would envision coming in in
23    the second trial.
24              THE COURT:  There is going to be a lot of
25    evidence -- if you hear it twice and you think it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    getting cumulative, alert me, and I'll try to have my
 2    antennas up.  But it may be hard for me alone to
 3    catch eight people's drug use.  But I think it's
 4    better for you than having five, six separate
 5    incidents so...
 6              MR. GRANBERG:  Very well, Your Honor.
 7              THE COURT:  So if that works for you, we'll
 8    go with that.
 9              MR. GRANBERG:  Thank you, Your Honor.
10              THE COURT:  Thank you, Mr. Granberg.
11              Do we have the Moores?  Heard from them
12    yet?
13              MR. COOPER:  They probably are on the
14    phone, Judge.
15              THE COURT:  We're going to have to bring IT
16    up.  And they're going to have to take the system
17    down and then take it up.  If that's just an instant
18    thing, then we'll just let them do it.  If it's not
19    going to be an instant thing, we may take a break and
20    let him do it and then come back.
21              MR. COOPER:  Thank you.  I'll go sit down,
22    Judge.
23              THE COURT:  Well, you're welcome to stand.
24    I just don't know the answer.  I can't tell you how
25    long it's going to take to do that.  It's your call,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   Mr. Cooper.
 2              (A discussion was held off the record.)
 3              MS. ARELLANES:  Your Honor, Ms. Gutierrez
 4   requires a break.
 5              THE COURT:  All right.  Let's just go ahead
 6   and take our break.  We'll be in recess for about 15
 7   minutes and that will give everybody time to get set
 8   up.
 9              (The Court stood in recess.)
10              THE COURT:  All right.  I think we've got
11   everybody back into the courtroom.  So every
12   defendant has an attorney, and all the defendants are
13   here.  I think we have the telephone system working,
14   so let's see if we can bring Mr. Moore and Ms. Lackey
15   up on the phone.
16              All right.  Mr. Moore, are you going to go
17   first?  Is that what's going to happen?
18              All right.  Mr. Moore, if you'll raise your
19   right hand to the best of your ability there, and my
20   courtroom deputy, Ms. Bevel, will swear you in.
21              THE WITNESS:  Okay.
22
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    JIM MOORE,
 2       after having been first duly sworn under oath,
 3       was questioned, and testified as follows:
 4            THE CLERK:  Give your full name and spell
 5  your last name.
 6            THE WITNESS:  Jim Moore.  M-O-O-R-E.
 7            THE COURT:  Do you want to try that once
 8  again, Mr. Moore?  You cut out on us.
 9            THE WITNESS:  Jim Moore.
10            THE COURT:  All right.  Mr. Moore.
11            Mr. Cooper.
12            MR. COOPER:  Thank you, Judge.
13                      DIRECT EXAMINATION
14  BY MR. COOPER:
15       Q.   Good morning, Mr. Moore.  This is Bob
16  Cooper.  I represent Billy Garcia, and we're going to
17  ask you a few questions today.  We -- Mr. Garcia is
18  the person who subpoenaed you to testify today.  Have
19  you had occasion to review the documents that we sent
20  you?
21       A.   Yes, I did.
22       Q.   Now, Mr. Moore, back in 2001, you were the
23  coordinator of the Security Threat Group at Southern
24  New Mexico Correctional Facility; isn't that correct?
25       A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   And how long were you so employed?

 2          A.   As coordinator, I was since 1998.

 3          Q.   1998?

 4          A.   Yes.

 5          Q.   Until when?

 6          A.   2006.

 7          Q.   Is that when you got to retire?

 8          A.   Yes, in a roundabout way.

 9          Q.   Okay.  And you're presently living in

10     Oklahoma, I take it?

11          A.   Correct.

12          Q.   So Mr. Moore, I'd like to direct your

13     attention to the document that has Bates No. DeLeon

14     606 at the bottom of it.  You have it marked?  It's

15     Defendants' Exhibit G for identification purposes.

16     Do you have that document in front of you?

17          A.   Yes.  Let me pull it up.  Okay, I have it.

18          Q.   Okay.  So that document, up at the top,

19     there are some numbers that says Primary Case Number

20     281 D-AQ-54711-302.  Is that the same document you're

21     looking at?

22          A.   Yes, it is.

23          Q.   Now, do you recognize that document?  Or do

24     you recognize the content of that document, I should

25     say?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    This is the first time I've seen the

2   document.

3        Q.    Okay.  So in this document, it was prepared

4   on April 4, 2001, and the document appears to set

5   forth the details of a conversation that you had with

6   Task Force Officer Edgar Rosa, down at Southern.  Do

7   you know Edgar?

8        A.    Yes, I do.

9        Q.    How do you know him?

10       A.    Through work.

11       Q.    In 2001 there was a meeting that you had

12   with Mr. Rosa, and in that meeting you told -- you

13   stated that New Mexico State Police investigators

14   Norman Rhoades and Felipe Gonzalez were in charge of

15   the double homicides that occurred at Southern during

16   the evening of March 24, 2001.  Do you recall having

17   that conversation with him?

18       A.    It's been such a long time.  I know I met

19   with him at the briefing.

20       Q.    Okay.  The part that I'm concerned with

21   here is that in the next paragraph it says that you

22   stated there were several suspects in the murder of

23   Frank Castillo linked through trace evidence.  Task

24   Force Officer Rosa confirmed this information with

25   the investigator Rhoades, and then you stated that a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Southern New Mexico Correctional Facility source
 2   advised that the killings were ordered by Angel
 3   Munoz.  You stated that Leroy Lucero, a validated SNM
 4   member, had paroled to Las Vegas, New Mexico.
 5         Now, the source who said that the killings
 6   were ordered by Angel Munoz -- do you know who that
 7   source was?
 8         A.   I couldn't even remember.
 9         Q.   Okay.  And in reading this document,
10   nowhere on that document is the source identified;
11   isn't that correct?
12         A.   Correct.
13         Q.   So you don't know who it was back on
14   April -- or sometime between the murder and April
15   4 -- stated that the murder was called by Angel
16   Munoz, do you?
17         A.   No.
18         Q.   Okay.  I'd like you to turn next to Exhibit
19   H for identification purposes, if you will.
20         A.   I'll pull it up.
21         Q.   Let me know when you have it in front of
22   you?
23         A.   The computer takes a moment.
24         Q.   I understand.  So did you watch that
25   Oklahoma basketball game yesterday?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.    No, I didn't.

 2          Q.    Probably just as well.

 3          A.    Yeah.  All kinds of things going on.

 4                I have a hard copy.  What's the title?

 5          Q.    This is the document --

 6          A.    Here it is.  I got it now.

 7          Q.    Okay.  So you have Defendants' Exhibit H in

 8    front of you.  At the bottom U.S. versus DeLeon, et

 9    al., 716?

10          A.    Yes.

11          Q.    That's a memorandum from you to Lawrence

12    Tafoya, the warden down at Southern, concerning the

13    murders of a couple of inmates, Mr. Garza and Mr.

14    Castillo, that was prepared on April 2, 2001, by you;

15    correct?

16          A.    Correct.

17          Q.    I'd like you to scroll to page 722 if you

18    will.

19          A.    Okay.  I have it.

20          Q.    That first paragraph says that "A

21    confidential source was interviewed last night and he

22    stated that inmate Castillo was killed because he had

23    called ex-inmate George Manzanares' girlfriend, and

24    George had answered the telephone.  At one time his

25    girlfriend, Cindy Garza, was involved with inmate
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Frank Castillo."

 2           Now, can you tell us who that confidential

 3   source was on that particular day?

 4       A.   I have no idea.  It didn't come from us.

 5       Q.   Did you ever learn who that source was?

 6       A.   No, I never did.

 7       Q.   And why don't you read the rest of that

 8   page and see if you can tell whether or not the

 9   identity of that source is set forth in that report?

10       A.   No, I don't see where it was revealed.

11       Q.   Okay.  Now, I'd like for you to go to

12   Exhibit G, if you will.  Or excuse me, I'm sorry, go

13   to Exhibit N as in Nancy.

14       A.   I have E, G, and H.

15       Q.   Okay.  You don't have an N?

16       A.   No.

17       Q.   Okay.  Well, let me tell you what -- N

18   appears to be another version of G.  We're at DeLeon

19   606.  It states that on April 4, 2001, an inmate

20   provided to law enforcement information that Angel

21   Munoz ordered these murders.  So it's another -- it's

22   a different version of that same statement.  So you

23   would have the same answer with regard to whether or

24   not you knew who the source was who told -- or gave

25   information that Angel Munoz called the hit; right?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                    1-800-669-9492
                                                            e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1         A.    Right.
 2         Q.    So can you tell me, please, what a task
 3    force officer is -- and what sort of task force was
 4    it?
 5         A.    (Unintelligible) Edgar.
 6         Q.    I'm sorry, what was that?
 7         A.    Which task force are you referring to?
 8         Q.    The task force that existed in 2001, Edgar
 9    Rosa was a task force officer.
10         A.    Okay, I don't really know all their job
11    duties.  I know that they track and identify gang
12    members and investigate them, their dealings.
13         Q.    And that was a federal task force, wasn't
14    it?  Or a task force involving various agencies,
15    including the federal government?
16         A.    Correct.
17         Q.    Okay.  Now, why were you providing
18    information to the task force officer?
19         A.    Part of my job as the coordinator there was
20    to act as the liaison to the outside law enforcement
21    agencies.
22         Q.    I'm sorry, I didn't quite get all of that,
23    Mr. Moore.  Can you repeat that for me?
24         A.    My job was to act as a liaison to the
25    outside law enforcement agencies.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And you did that in this particular case?
 2        A.   Correct.
 3        Q.   So in the last couple of years or since,
 4   oh, maybe the beginning of 2015, has anybody from the
 5   United States Attorney's Office or the FBI or a task
 6   force contacted you with regard to this case?
 7        A.   No.
 8        Q.   Going back to your duties as STG
 9   coordinator, in the operation of the Security Threat
10   Group, how would you keep track of confidential
11   sources or people who gave you information with
12   regard to gang members or other security threat
13   groups?
14        A.   There's two different ways.  One, you can
15   create a list of inmates that you -- provide you with
16   information that is proven to be confidential and
17   true.  And that list is maintained in the warden's
18   office.
19             Another way --
20        Q.   And so if you would, if you would receive
21   information from an individual that you felt belonged
22   on that list, how often would you place that
23   information on the list that was maintained in the
24   warden's office?  Would you do it on a daily basis,
25   weekly basis, whenever you got it?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    About whenever I got it.

2        Q.    And would you do it that day?

3        A.    Yes.

4        Q.    And you would prepare a memo --

5        A.    Right.

6        Q.    -- setting forth the information?   Then

7    that memo would be filed -- was it kept in a notebook

8    or a file folder?

9        A.    I don't know.   I just turned the memo over

10   to them.

11       Q.    To who?

12       A.    The warden's office.

13       Q.    The warden himself, or somebody there in

14   his office?

15       A.    Not the warden, but there is another -- I'm

16   talking slow because the phone is repeating itself.

17       Q.    Okay.

18       A.    Another source list can be maintained with

19   each incident, such as this case.

20       Q.    So there would have been a file just on the

21   murders of Garza and Castillo?

22       A.    Yes.

23       Q.    And who maintained that file?

24       A.    The warden's office.

25       Q.    So he would have that file and the list of

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                    1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE                                      e-mail: info@litsupport.com

```
 1    information from confidential sources?

 2         A.   Correct.

 3         Q.   And would you share the list of

 4    confidential sources with the task force officers?

 5         A.   No.  I just turned it over to him, and he

 6    forwarded it to Central Office.

 7         Q.   Oh, okay.  So would the warden at Southern

 8    maintain a list of confidential information and then

 9    forward a copy to the Central Office?  Is that how it

10    worked?

11         A.   I'm not sure.  It's per policy.

12         Q.   So whatever the policy states, that's what

13    should have been done?

14         A.   Correct.

15         Q.   And the policy provides that a logbook is

16    kept at the warden's office; correct?

17         A.   Correct.

18         Q.   Have you ever seen the logbook at the

19    warden's office?

20         A.   I don't believe so.

21         Q.   You never had occasion to go in and see

22    what was submitted prior to any submission that you

23    made?

24         A.   No.  I don't think it had sources.

25         Q.   So did you keep a separate file for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   yourself?

 2        A.   No.

 3        Q.   So if you had Johnny, for instance, who

 4   gave you information in 1998 and three other guys

 5   gave you information the next month, and it was about

 6   a particular incident, then six, eight months later

 7   somebody else gives you information, do you have any

 8   way of going back to see what Johnny said and what

 9   the other three guys have said?

10        A.   If I need to, I could access my information

11   by asking the warden to give me the information that

12   I need or I provided before.

13        Q.   So these confidential sources who would

14   give information -- would each of them have an

15   alphabetical file?  This is Johnny, this is Billy,

16   this is Joey, and all of the information that Johnny

17   gave in one file for Johnny?

18        A.   I'm not sure how it's filed up there.

19        Q.   Okay.  What about your computer?  When you

20   would generate a report, a document, to send to the

21   warden, what would happen to your computer file?  Did

22   you keep it?

23        A.   No, I wouldn't save it.

24        Q.   You would not save it at all?

25        A.   If it was confidential information, I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   wouldn't save it on my computer.  I would not save it
 2   on my computer.  Are you there?
 3       Q.   I'm here.  I'm sorry, Mr. Moore, I'm just
 4   thinking.
 5            So if we needed information about a
 6   confidential source, there would be two places to
 7   obtain that information:  One would be in the
 8   warden's office; and the second place would be at the
 9   Central Office; correct?
10       A.   Correct.
11       Q.   Now, what about information that is shared
12   to task force officers?  Do you have a logbook as to
13   what was shared with them?
14       A.   I never kept one.
15       Q.   So you never kept a logbook at all?
16       A.   Not of confidential information.
17       Q.   Well, Mr. Moore, I really appreciate you
18   taking time to talk with us this morning.  I don't
19   believe that I have any further questions of you.
20   There may be other individuals that are going to come
21   up and ask some questions of you, but that's all I
22   have, so thanks again.
23            THE COURT:  Thank you, Mr. Cooper.
24            THE WITNESS:  Thank you.
25            THE COURT:  Mr. Burke, did you have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    anything?  Any other defendants have any direct
 2    examination of Mr. Moore?
 3              Mr. Beck?  Do you have cross-examination of
 4    Mr. Moore?
 5              MR. BECK:  I do, Your Honor.
 6              THE COURT:  Mr. Beck.
 7                      CROSS-EXAMINATION
 8    BY MR. BECK:
 9         Q.   Good morning, Mr. Moore.
10         A.   Good morning.
11         Q.   My name is Matt Beck, and I'm an assistant
12    U.S. Attorney.  I want to talk to you about
13    Defendants' Exhibit G, which was the FBI 302 report
14    that you hadn't seen.  I think the Bates No. on the
15    bottom is DeLeon et al., 606.  Let me know when you
16    see that.
17         A.   I see it.  I still have it.
18         Q.   All right.  So I want to talk to you about
19    what's the third paragraph in there where it starts
20    out with, "Moore stated that there were several
21    suspects in the murder of Frank Castillo."  Do you
22    see that?
23         A.   Yes.
24         Q.   It says here that -- in that second
25    sentence, I think, Mr. Cooper talked to you about, it
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    says, "Moore stated that an SNMCF source advised that

 2    the killings were ordered by Angel Munoz."  Do you

 3    see that?

 4         A.    Yes.

 5         Q.    Now, was that your personal source, or was

 6    that just a source from Southern New Mexico

 7    Correctional Facility?

 8         A.    I don't recall.

 9         Q.    Now, moving on there, I'm going to skip a

10    couple sentences, and I'm going to go to that last

11    sentence where it says that "Moore stated that a

12    vacancy was created upon Lucero's departure, causing

13    a struggle for control of the drug trade."

14              Is that your information, or is that

15    information based on a source, or do you know?

16         A.    I don't recall.

17         Q.    Now, in that next paragraph I'm going to

18    talk about the third and last sentence in there.  Do

19    you see where it says, "Moore stated that Garcia was

20    believed to have been involved in the killing, but

21    there was no evidence linking him to the killings."

22    Do you see that sentence?

23         A.    Yes.

24         Q.    And do you know whether -- and again, it

25    looks like, from the first sentence, this is still
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



 1    referring to Billy Garcia.  Is that your

 2    understanding of this sentence?

 3         A.   Yes.

 4         Q.   And where it says, "Garcia was believed to

 5    have been involved in the killing but there was no

 6    evidence," is that your belief or a belief based on a

 7    source, if you know?

 8         A.   It's based on a source, I believe, but it's

 9    just not my words.

10         Q.   And that makes sense; right?  Because a lot

11    of the information you get about the SNM is from

12    sources; isn't that true?

13         A.   Correct.

14         Q.   And so is this the same source as the

15    source in the last paragraph that advised it was a

16    hit by Angel Munoz, who said that that source

17    believed that Garcia was involved in the killing?

18         A.   I wouldn't know.

19         Q.   And then that last sentence, "Moore stated

20    a prison source informed him that Castillo was killed

21    because he didn't follow through with an order to

22    kill."

23              It sounds like in that sentence, at least,

24    that may have been your source.  Is that fair to say?

25         A.   It may have been, but like I said, I don't

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                         e-mail: info@litsupport.com

```
 1   recall.
 2        Q.   Sure.  I understand that.  I want to take
 3   you to the other exhibit that you looked at, which
 4   was Defendants' Exhibit H.  It's a memorandum about
 5   the Garza and Castillo murders, which starts on what
 6   I call Bates No. DeLeon 716.  Let me know when you
 7   have that in front of you.
 8        A.   Is it dated Monday, April 2?
 9        Q.   That's the one.
10        A.   Okay.  I got it.
11        Q.   All right.  And I want to turn back to the
12   page that you went over with Mr. Cooper, page 7
13   there.  Let me know when you've got that page in
14   front of you.
15        A.   722?
16        Q.   Yes.
17        A.   Okay.
18        Q.   And so I think Mr. Cooper went over that
19   first paragraph.  Is the confidential source in that
20   paragraph your source, an STG source, or is it a New
21   Mexico Gang Task Force source?
22        A.   Gang task force.
23        Q.   And do you know whether that's a state gang
24   task force or a federal gang task force, if you know?
25        A.   I'm not sure.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And then so if we read that paragraph, it
 2   says that "That source said that inmate Castillo was
 3   killed because he had called ex-inmate George
 4   Manzanares' girlfriend, and George had answered the
 5   telephone."  Do you see that?
 6        A.   Yes.
 7        Q.   And that last sentence in the paragraph
 8   says, "This information is in the process of being
 9   verified by the STG unit to see if a telephone call
10   was placed."  Do you see that sentence?
11        A.   Yes.
12        Q.   And as the STG coordinator, is this
13   something that the STG would do, is follow up on
14   inmate sources about gang activity?
15        A.   Yes.
16        Q.   And I want you to turn now to the next page
17   in that Bates No. DeLeon 723 and page 8.  Are you
18   there?
19        A.   I'm here.
20        Q.   And then the last paragraph on that page,
21   page 8, do you see where it says, "SNM task force
22   contacted STG Unit, the number blank belonging to
23   Cindy Garza, George Manzanares' girlfriend.  The
24   number was checked back to January of 2000.  No
25   attempts were made to dial this number from SNMCF."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Do you see that?

2         A.   Yes.

3         Q.   So does that indicate to you that STG did

4    follow up and found that the information about the

5    call was actually not accurate?

6         A.   Yes.  Correct.

7         Q.   And Edgar Rosa -- do you know whether he

8    was on a state or a federal task force, or both, if

9    you know?

10        A.   I don't know for sure.

11        Q.   I think you said on direct -- I wrote it

12   down here -- that you acted -- as the STG

13   coordinator, you acted as a liaison to outside law

14   enforcement.  Do you remember that?

15        A.   Correct.

16        Q.   Was that a liaison to all outside law

17   enforcement, or just some particular group?

18        A.   All.

19        Q.   And I think you said all; right?

20        A.   Yes.

21        Q.   All right.

22             MR. BECK:  No further questions, Your

23   Honor.

24             THE COURT:  Thank you, Mr. Beck.

25             Mr. Cooper, do you have redirect of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Moore?

 2              MR. COOPER:  I do.

 3              THE COURT:  Mr. Cooper.

 4              MR. COOPER:  Thank you, Judge.

 5                  REDIRECT EXAMINATION

 6    BY MR. COOPER:

 7         Q.   Mr. Moore, I'd like to direct your

 8    attention to document Exhibit G, please.  Let me know

 9    when you have that up again.

10         A.   Okay.  I have it.

11         Q.   Okay.  The next-to-the-last paragraph says

12    that "Task Force Officer Rosa advised Moore that

13    inmate Billy Garcia was being targeted by the SNM";

14    is that correct?

15         A.   I see it, yes.

16         Q.   And do you know who the individual was that

17    gave that information?

18         A.   No, I don't.

19         Q.   I'd like to take you back to the line of

20    questioning from Mr. Beck with regard to Cindy Garza,

21    the girlfriend, okay?  And he says that -- or you

22    indicated to Mr. Beck that a search of phone records

23    did not show what -- or that there was a call to a

24    particular number.  But you don't know what number --

25    you don't know all of the numbers, or if Cindy Garza
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    was using a particular number at that time, do you?

 2         A.   Just one particular number was searched.

 3         Q.   Okay.  And that's all that was searched;

 4    correct?

 5         A.   As far as I know.

 6         Q.   Okay.  Thank you, sir.

 7              MR. COOPER:  I have no further questions.

 8              THE COURT:  Thank you, Mr. Cooper.

 9              Does any other defendant have any redirect?

10    Mr. Burke?  Anybody?  All right.

11              MR. GRANBERG:  I do.

12              THE COURT:  All right.  Mr. Granberg.

13                   CROSS-EXAMINATION

14    BY MR. GRANBERG:

15         Q.   Mr. Moore, do you have Exhibit G still in

16    front of you?

17         A.   Yes.

18         Q.   On the third paragraph, in the middle of

19    the third paragraph, it says that Leroy Lucero had

20    paroled to Las Vegas, New Mexico.  Do you see that

21    sentence?

22         A.   Yes, I do.

23         Q.   Do you know when he had paroled to Las

24    Vegas, New Mexico?

25         A.   No, I don't.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Do you know if it was before the murders or
 2   after the murders?
 3        A.   I can't remember.
 4             MR. GRANBERG:  All right.  Pass the
 5   witness.
 6             THE COURT:  Thank you, Mr. Granberg.
 7             Any other defendant have any redirect?
 8             All right, Mr. Moore.  Thank you for your
 9   testimony.
10             Is there any reason Mr. Moore cannot be
11   excused in the proceedings, Mr. Cooper?
12             MR. COOPER:  No, Your Honor.
13             THE COURT:  Mr. Beck?
14             MR. BECK:  No, Your Honor.
15             THE COURT:  All right.  You are excused
16   from the proceedings.  Thank you for your testimony,
17   Mr. Moore.
18             Is Ms. Lackey now going to come on the
19   phone?
20             MR. MOORE:  Yes.
21             THE COURT:  Thank you, Mr. Moore.
22             Ms. Lackey, this is Judge Jim Browning in
23   Albuquerque -- or we're actually in Las Cruces, down
24   here.  I'm going to have my courtroom deputy, Ms.
25   Bevel swear you in.  So if you'll stand and raise
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    your right hand, we'll swear you in at this time.
 2            MS. MOORE:  Yes, sir.
 3                       CHERYL MOORE,
 4        after having been first duly sworn under oath,
 5        was questioned, and testified as follows:
 6            THE CLERK:  Please state your name and
 7    spell your last name for the record.
 8            MS. MOORE:  My name is Cheryl Moore.
 9    M-O-O-R-E.
10            THE COURT:  All right.  Ms. Moore.
11            Mr. Castle.
12            MR. BECK:  Your Honor, before we get into
13    this document, I don't want to cut anybody off, but
14    it might short-circuit it.  Last night in preparing
15    for his testimony, Special Agent Acee went through
16    this document and believes he identified the three
17    sources at issue in Mr. Garcia's motion to dismiss
18    for this source.
19            THE COURT:  All right.  Do you want to give
20    that information to the defendants?
21            MR. BECK:  Sure.  Yes.
22            MR. CASTLE:  I'd still like to follow up
23    with a few questions.
24            THE COURT:  You're welcome to.  Do you want
25    the information after or before?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  I just got it.

 2              THE COURT:  You just got it?  All right.

 3              Mr. Castle.

 4                    DIRECT EXAMINATION

 5   BY MR. CASTLE:

 6         Q.   Ms. Moore, was your maiden name Lackey?

 7         A.   Yes, sir.

 8         Q.   In 2001, were you working at the Southern

 9   New Mexico Correctional Facility as an STG officer?

10         A.   Yes, sir.

11         Q.   In that regard, do you recall a murder --

12   two murders happening on March 26 of 2001?

13         A.   Yes, sir.

14         Q.   Before you do you have an exhibit that is

15   labeled Exhibit E?

16         A.   Just a second.  It's dated July 11, 2001?

17         Q.   Yes.

18         A.   To Mr. Moore?

19         Q.   Yes, to Mr. Moore from Cheryl Lackey?

20         A.   Yes, sir.  I have it.

21         Q.   Is that document a list of various

22   confidential sources that you interviewed in relation

23   to the March 26, 2001, murders?

24         A.   This is a compilation of interviews

25   conducted by multiple interviewers and officers.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                   1-800-669-9492
                                                        e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Sources were turned over to Mr. Moore, who then

2    turned them over to the warden's office.

3        Q.   Do you recall whether you interviewed an

4    inmate by the name of Jimmie Gordon?  I don't know if

5    you could hear that.  Jimmie Gordon.

6        A.   Yeah, I --(unintelligible).

7        Q.   Could you start over on that one?  We had a

8    little sound in the courtroom that made it impossible

9    for us to hear you.

10       A.   I may have interviewed the inmates, but if

11   I didn't supply a memo, it probably didn't happen.

12       Q.   Could you repeat that again?  I'm not sure

13   I could hear you.  And if you can just speak slowly

14   because I think our connection is not very good.

15       A.   Okay.  I note the inmate this is referring

16   to.  I had interviewed him, but I don't remember

17   interviewing him for this murder.

18       Q.   Okay.  Was he a reliable source of

19   information?

20       A.   I had interviewed him before, and he had

21   given us information that was corroborated.

22       Q.   Okay.  So he provided information in the

23   past that you deemed reliable because you were able

24   to corroborate its accuracy?

25       A.   Yeah.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   When you interviewed sources, would you

2   create a report that would use some kind of a numeric

3   designation for that source instead of their name?

4        A.   Yes.

5        Q.   What would you do to record the actual name

6   of the source?

7        A.   I gave the name and the number that I

8   assigned to him to my boss, who gave it to the warden

9   for his list.

10        Q.   Okay.  Let me see if I can repeat that

11   using a question of mine.  Does it sound like you

12   would record the name of the individual on a separate

13   document and then provide that to your supervisor,

14   who would then give it to the warden?

15        A.   Yeah.  I would write it down in print form,

16   yes.

17        Q.   Would you use a logbook, or would these be

18   separate documents?

19        A.   It was just a separate document given to

20   him.  We didn't keep a log of the informant in the

21   office.

22        Q.   In the last few years until you received

23   this subpoena, had you been contacted by any

24   individuals at all about this 2001 murder, murders?

25        A.   No, sir.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1          Q.   Is that no, sir?

 2          A.   Yes.  No.

 3          Q.   I apologize.  That's a bad question.  Was

 4     your answer no, you haven't been interviewed by

 5     anyone?

 6          A.   No, I have not.  I have not.

 7               MR. CASTLE:  Your Honor, given the

 8     Government's statement that they have identified the

 9     sources in question, I have no other questions for

10     this witness.

11               THE COURT:  Thank you, Mr. Castle.

12               Any other defendant have any

13     cross-examination of Ms. Moore?

14               Mr. Beck, do you have cross-examination of

15     Ms. Moore.

16               MR. BECK:  I don't.  Thank you, Your Honor.

17               Thank you, Ms. Lackey.

18               THE COURT:  All right.  Ms. Moore, thank

19     you for your testimony.

20               Is there any reason that Ms. Moore cannot

21     be excused from the proceedings, Mr. Castle?

22               MR. CASTLE:  Yes, Your Honor.

23               THE COURT:  Mr. Beck?

24               Not hearing any objection, Ms. Moore, you

25     are excused from the proceedings.  Thank you for your
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    testimony.

2              MS. MOORE:  Thank you.

3              THE COURT:  All right.  Where are we going

4    next?  Do we have some witnesses we need to take care

5    of, Mr. Castle?

6              MR. CASTLE:  Yes, Your Honor, we have some

7    inmate witnesses that the marshals would like us to

8    call and get on their way.

9              THE COURT:  All right.  Give me the first

10   one.

11             MR. CASTLE:  The first one is Frederico

12   Munoz, and he is relevant to the motion regarding

13   statements 1909.

14             THE COURT:  All right.  And is it one

15   particular statement, or all of them, or which one is

16   he relevant for?

17             MR. CASTLE:  I apologize, Your Honor, I

18   was --

19             THE COURT:  Is it a particular statement

20   he's relevant for?

21             MR. CASTLE:  Yes, it's several statements.

22   He had indicated that he had talked to a number of

23   the defendants about the 2001 murders; and when he

24   talked to them, they had confessed to their

25   involvement and also implicated or possibly

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    implicated Mr. Garcia.  I was not intending to ask

2    about any other homicides; just that.

3             Judge, if I could have a moment, Mr.

4    Benjamin has some information.

5             THE COURT:  You may.

6             MR. CASTLE:  Your Honor, Mr. Munoz's

7    attorney was down in the holding cell, so it might be

8    a minute.  I can fill the time.

9             THE COURT:  Okay.

10            MR. CASTLE:  Your Honor, Billy Garcia's

11   motion concerning bad acts is number 1308.

12            THE COURT:  All right.  I have it in front

13   of me.

14            MR. CASTLE:  The Government has indicated

15   they're limiting themselves to two acts.

16            THE COURT:  Okay.

17            MR. CASTLE:  The first one is on page 6 of

18   that -- well, it's the sixth page, but it's the first

19   page of their letter, which is an act dated February

20   25, 1992.

21            THE COURT:  The very last one on that page?

22            MR. CASTLE:  Yes.

23            THE COURT:  The ones above it they're not

24   going to seek to introduce?

25            MR. CASTLE:  That's correct, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1           THE COURT:  All right.
2           MR. CASTLE:  Your Honor, we would object to
3   that on a number of grounds.  First of all,
4   remoteness.  In our Bad Acts motion we provided a
5   citation to Tenth Circuit case law that talked about
6   remote acts not being admissible.  And I understand
7   that the Government would be offering this as
8   enterprise evidence, but I believe the bad acts under
9   404 are the same as direct evidence.  Under 404,
10  you're allowed to bring in bad acts for a particular
11  purpose including identification, which is an element
12  of the offense.  So enterprise evidence should be
13  analyzed in the same fashion because it's just a way
14  to prove an element, the enterprise element.
15          So going back to 1992 is remote in time,
16  and we believe for that reason it should not be
17  admitted.
18          The second reason is:  The defense has not
19  been provided with any real discovery on this, any
20  discovery, and it's just a note in his STG file with
21  a date and a finding that he had threatened a
22  correctional officer.  No indication of who that is,
23  and obviously, no discovery about what had happened
24  there, what the circumstances were, whether it was
25  gang-related, anything of that nature.  It's just
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                             Albuquerque, NM 87102
(505) 989-4949                                         (505) 843-9494
FAX (505) 843-9492                                FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   that he threatened a correctional officer.
 2           Because they're offering this as evidence
 3   of enterprise of the element of the crime itself,
 4   their obligations to produce extend to that, and so
 5   we would argue against that.
 6           Does the Court want me to take a break?
 7           THE COURT:  What would you prefer?  Do you
 8   want to go ahead and take the witness?
 9           MR. CASTLE:  Yeah, go ahead and take the
10   witness.
11           THE COURT:  All right.  We'll come back to
12   that, then.
13           All right, Mr. Munoz.  I know you've just
14   got seated, but if would you stand again, raise your
15   right hand to the best of your ability, my courtroom
16   deputy, Ms. Bevel, will swear you in.
17                   FREDERICO MUNOZ,
18       after having been first duly sworn under oath,
19       was questioned, and testified as follows:
20           THE CLERK:  Be seated and spell your last
21   name for the record.
22           THE WITNESS:  Frederico Munoz.  M-U-N-O-Z.
23           THE COURT:  Does your attorney want to
24   enter and appear as well?
25           MR. LOPEZ:  Louis Lopez on behalf of Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Munoz.  I'm present.
 2             THE COURT:  All right, Mr. Lopez, good
 3   morning to you.
 4             MR. LOPEZ:  Good morning.
 5             THE COURT:  All right, Mr. Munoz.
 6             Mr. Castle.
 7                       DIRECT EXAMINATION
 8   BY MR. CASTLE:
 9        Q.   Good morning, Mr. Munoz.
10        A.   Good morning.
11        Q.   I'm Jim Castle.  I represent Billy Garcia,
12   who is here in the courtroom.  The questions I'm
13   going to direct to you are related to a pair of
14   murders that happened in March of 2001 at the
15   Southern New Mexico Correctional Facility.  Do you
16   know what murders I'm talking about?
17        A.   Yes, I do.
18        Q.   You weren't at the facility when that
19   happened; is that right?
20        A.   I was at the State Penitentiary in Santa
21   Fe, New Mexico.
22        Q.   So in regards to those murders, if you
23   could look in the courtroom here at the defendants
24   and tell us if any of the defendants other than
25   Mr. Garcia have had conversations with you at any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  time about their involvement, potential involvement,

2  in those murders.

3           MS. ARMIJO:  And Your Honor, I'm going to

4  object.  This is clearly a fishing expedition.  If he

5  wants to -- my understanding is, he wanted to

6  confront him with a statement, a specific statement

7  that Mr. Munoz made regarding his client.  This

8  clearly is a fishing expedition to just get out what

9  Mr. Munoz would be testifying about.

10          THE COURT:  I'm a little concerned about

11  the breadth of it, Mr. Castle.  How is this relevant

12  to the statements?

13          MR. CASTLE:  Well, it would be statements

14  of co-defendants.  The follow-up question would be:

15  If they made a statement, did they implicate my

16  client?  And then I would focus in on those.

17          THE COURT:  Well, why don't we target it

18  more to the statements that you have in your document

19  1909?  Why don't you focus it more on that, rather

20  than the other one, which is a little bit broader,

21  more discovery-related.

22  BY MR. CASTLE:

23     Q.   Mr. Munoz, do you know an individual by the

24  name of Christopher Chavez?

25     A.   No, sir, not that I can remember.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Did you know an individual by the name of

2  Joe Gallegos?

3      A.   Vaguely, yes.

4      Q.   Did Mr. Gallegos make a statement about his

5  potential involvement in the 2001 murders?

6      A.   Not that I'm aware of.

7      Q.   But Mr. Garcia, Billy Garcia, did make one

8  to you?

9      A.   No, sir.

10     Q.   Okay.  Thank you very much.

11          MR. CASTLE:  I have no other questions.

12          THE COURT:  Thank you, Mr. Castle.

13          Any other defendants?  Mr. Burke, do you

14  have questions?

15                    DIRECT EXAMINATION

16  BY MR. BURKE:

17     Q.   Good morning.  My name is Pat Burke.  I'm

18  co-counsel for Edward Troup.  It has been alleged

19  that you had a conversation with Mr. Troup at some

20  point regarding the Freddie Sanchez homicide.  Do you

21  ever recall talking to Mr. Troup about that?

22     A.   Yes, I do.

23     Q.   Where were you and where was he?

24     A.   He and I were at the Level 6 at The State

25  penitentiary in Santa Fe, New Mexico.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    And I have not there been, but I understand
 2    that is a facility that has a lot of buildings and
 3    different pods and different units.  And so what I
 4    would like you to do, Mr. Munoz, is tell me exactly
 5    where you were and exactly where he was, so that it
 6    would be more specific than just saying "PNM."
 7        A.    Okay.  He and I lived in the same housing
 8    unit.  We were in different pods --
 9        Q.    Which housing unit was that?  I'm sorry for
10    interrupting, because I really want this to be quick
11    just like you do?
12        A.    Housing unit 1-A.
13        Q.    Where was he?
14        A.    I don't know which pod he was in, but we
15    both had access to the same recreation yard,
16    irrespective of the pod in which we lived, and we
17    were both outside in the rec yard at one point and we
18    had a conversation.
19        Q.    So one conversation?
20        A.    Yes.
21        Q.    Correct.  And do you know the month and
22    year of that conversation?
23        A.    It was immediately after the homicide of
24    Freddie Sanchez occurred, and he was returned back to
25    Level 6.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Okay.  So within a week of the homicide?
 2        A.   I would say more or less, yes.
 3             MR. BURKE:  That's all I have for you.
 4   Thank you.
 5             THE COURT:  Thank you, Mr. Burke.
 6             Any other defendant have direct examination
 7   of Mr. Munoz?
 8             All right, Ms. Armijo.
 9                  CROSS-EXAMINATION
10   BY MS. ARMIJO:
11        Q.   Good morning, Mr. Munoz.
12        A.   Good morning.
13        Q.   Now, in regard to the murders of Frank
14   Castillo and Rolando Garza, you indicated that you
15   were up at PNM; correct?
16        A.   Yes.
17        Q.   Were you at the North or the South?
18        A.   I was at the North.
19        Q.   At the North.  Prior to those murders, you
20   had information that those murders were going to
21   occur; correct?
22        A.   Yes.
23        Q.   And in fact, in reference to Garza, did you
24   actually have a role or sanction that?
25        A.   I believe I did, yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Now, you previously -- and I'm going to

2  show you --

3           MS. ARMIJO:   May I approach the witness,

4  Your Honor?

5           THE COURT:   You may.

6  BY MS. ARMIJO:

7      Q.   And I'm showing you Bates 41986 which is a

8  report in reference to a debrief that you made, and

9  you made a statement regarding Billy Garcia.

10     A.   Yes.

11          MR. CASTLE:   Your Honor, actually, this is

12  improper.   I think they have to ask a question first

13  before they refresh a witness' memory.

14          THE COURT:   Well, I don't know if he's

15  refreshing -- or if she's refreshing or not.   She can

16  show him the exhibit.   Let's see what the question

17  is.   Overruled.

18  BY MS. ARMIJO:

19     Q.   Did you make a statement in reference to

20  Billy Garcia's role in those murders?

21     A.   Yes, I did.

22     Q.   Okay.   And what is -- what information do

23  you have about Billy Garcia in reference to, just so

24  we're specific, the Frank Castillo and the Rolando

25  Garza murders?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I was aware that Mr. Garcia was classified
 2   to be released from the Level 6 to go down to the
 3   State Penitentiary in Las Cruces, and I immediately
 4   began lobbying him and telling him that there was a
 5   guy over there that needed to get killed.
 6        Q.   Okay.  And who was that guy?
 7        A.   Rolando Garza.
 8        Q.   And what did Mr. Garcia say to you when
 9   you, quote, lobbied him for the murder of Garza?
10        A.   That he would handle it.  He already knew
11   the reasoning behind my effort to have Looney,
12   Rolando Garza, killed, and it wasn't an issue for
13   him.
14        Q.   And was that reason because Mr. Garza was
15   previously a Los Carnales?
16        A.   Yes.  He had dual membership in the SNM and
17   the Los Carnales gang.
18        Q.   Now, in regard to the timing of the Edward
19   Troup statement that you were asked about, did you
20   rely on the offender location history for that, or
21   how do you recall that?
22        A.   I just remember as soon as he and his
23   co-defendant were returned to the Level 6, shortly
24   after that we were all in the yard and we had a
25   conversation.  The three of us were out there
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   together.

 2        Q.   And did you know what the purpose of them

 3   returning to Level 6 was?

 4        A.   Oh, yeah.  Everybody knew.  Everybody,

 5   meaning all of us, knew what was up, what was going

 6   on.

 7        Q.   And was that related to the Freddie Sanchez

 8   murder?

 9        A.   Yes, ma'am.

10             MS. ARMIJO:  All right.  Thank you.  No

11   further questions.

12             THE COURT:  Thank you, Ms. Armijo.

13             Mr. Castle, do you have redirect of Mr.

14   Munoz?

15             MR. CASTLE:  Yes.

16             THE COURT:  Mr. Castle.

17                  REDIRECT EXAMINATION

18   BY MR. CASTLE:

19        Q.   Mr. Munoz, you were just talking to Ms.

20   Armijo about a conversation you had with Billy Garcia

21   at PNM?

22        A.   Yes.

23        Q.   Where did that occur at PNM?

24        A.   Housing unit 3-B.

25        Q.   And you were both living in the same unit?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    Yes.

2        Q.    Was it in a common area?

3        A.    Yes, outside and in the pod; we were very

4    close.

5        Q.    Okay.  And it sounds like you were part of

6    the decision-making to kill Mr. Garza; is that right?

7        A.    I was certainly asking for it.

8        Q.    Okay.  But were you just passing on orders

9    from someone else, or were you part of the -- were

10   you the one that was making --

11       A.    I was advocating for a set of rules that

12   existed from the very beginning of the SNM that if

13   somebody was a rival gang member, he had to be

14   targeted.  Rolando Garza was a known member of the LC

15   gang for years and he was protected.  I knew that

16   when your client was going there, he had enough

17   authority and wherewithal to make sure that it

18   happened, and I relied on my friendship with him and

19   asked him to take care of it, and he said he would.

20       Q.    So it was your idea?

21       A.    It was the SNM's idea.

22       Q.    Okay.  But no one told you to tell

23   Mr. Garcia to do that?

24       A.    There were, I would say, a consensus of

25   brothers, SNM members, who wanted Rolando Garza taken

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    out, yes.

 2        Q.   Who were those brothers that had that

 3    consensus?

 4        A.   Anybody who was a serious member of the SNM

 5    Gang.

 6        Q.   So you said this happened in a common area

 7    at the facility?

 8        A.   Yes.

 9        Q.   Was anyone else present when you told

10    Mr. Garcia these --

11        A.   There were conversations that we had in the

12    yard.

13        Q.   And how soon after that did Mr. Garcia

14    leave the facility and go to Southern?

15        A.   I would say around a month or so.

16        Q.   So everyone knew that Mr. Garcia was going

17    to be moved to another facility a month before he

18    moved?

19        A.   Oh, yes.

20        Q.   And were those orders to kill Mr. Garza --

21    were those given to anyone else?

22        A.   Not that I'm aware of.

23        Q.   How about Jake Armijo?

24        A.   I don't know, sir.

25        Q.   It sounds like what you're talking about is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that a number of people wanted Mr. Garza dead; is

2    that right?

3         A.   Yes.

4         Q.   And Mr. Garza -- is this a number of people

5    at PNM North?

6              MS. ARMIJO:  Your Honor, I'll object as far

7    as -- we're past the statement itself, and this is

8    now a fishing expedition.

9              THE COURT:  How do you tie this to the

10   statements that I've got to review?

11             MR. CASTLE:  Your Honor, I can honestly say

12   I can't, but I didn't open up this door.  The

13   Government did.  I didn't even challenge the

14   statement that Mr. Garcia made at PNM.  The

15   Government decided to put that at issue.  I'm not

16   sure why, but they did.

17             THE COURT:  Well, let's bring it to a

18   conclusion.  I'm not sure what I'm going to do with

19   the information, but at the present time I don't see

20   what the relevance is, so I'll sustain.

21   BY MR. CASTLE:

22        Q.   What were the exact words you said and what

23   were the exact words that Mr. Garcia said?

24        A.   I asked him if he would take care of

25   Looney, take him out, and he said he would take care

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

```
 1    of it.
 2        Q.   That was the end of it?
 3        A.   They were euphemisms for killing him and
 4    he'll get it done, yes.
 5        Q.   I'm sorry, "taking care of it" is a
 6    euphemism for killing someone?
 7        A.   Yes.
 8        Q.   But that wasn't the words you said.  You
 9    said, "Will you take care of it," and he said he
10    would?
11        A.   Yes.
12        Q.   Was that the last time you discussed the
13    murder of Mr. Garza with Mr. Billy Garcia?
14        A.   We spent some time after the fact.  He got
15    returned to the Level 6.  Not explicitly, but it was
16    an implicit understanding that, good job, I had a lot
17    of love and respect for him for that.
18            MR. CASTLE:  Thank you.
19            THE COURT:  Thank you, Mr. Castle.
20            Mr. Burke, do you have anything?
21            MR. BURKE:  No, Your Honor.
22            THE COURT:  Do any of the other defendants
23    have any redirect of Mr. Munoz?
24            All right, Mr. Munoz, you may step down.
25            Any reason Mr. Munoz cannot be excused, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Castle?
 2               MR. CASTLE:  No objection, Your Honor.
 3               THE COURT:  Any objection from the
 4   Government?
 5               MS. ARMIJO:  No, Your Honor.  Thank you.
 6               THE COURT:  Anyone else?  Mr. Burke?
 7   Anybody?
 8               All right.  Have a good day, sir.  You're
 9   excused from the proceedings.  Thank you for your
10   testimony.
11               MR. LOPEZ:  Your Honor, may counsel be
12   excused?
13               THE COURT:  You may.
14               All right.  Do you have your next witness
15   or evidence that you need to put on, Mr. Castle, Mr.
16   Cooper?
17               MR. COOPER:  Judge, we call Robert
18   Martinez.
19               MS. ARMIJO:  And Your Honor, while we're
20   waiting, can we get a proffer as to what they're
21   calling Mr. Martinez for?  Which motion?
22               THE COURT:  Let me get the entry of counsel
23   first.
24               MR. McELHINNEY:  C.J McElhinney on behalf
25   of Robert Martinez.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Mr. Cooper, do you want to
2    indicate what the purpose of Mr. Martinez is and what
3    I should be looking and listening for?
4              MR. COOPER:  Yes, Your Honor.  This goes to
5    our motion for statements document 1909.
6              THE COURT:  All right.  Do you have a
7    specific statement?
8              MR. COOPER:  I do, Judge.  On May 15, 2015,
9    he was debriefed by Bryan Acee and Mark Myers, and I
10   wanted to talk to him about that debriefing and the
11   statements he made.
12             MS. ARMIJO:  This is a supplement?  I mean,
13   an exhibit, a specific exhibit?
14             MR. COOPER:  No.
15             MS. ARMIJO:  Then, Your Honor, we would
16   oppose, because it's not even really tied.  If it
17   wasn't an exhibit or specifically listed in their
18   motion as a statement, this clearly seems like a
19   fishing expedition to just talk to him about his
20   debrief.
21             THE COURT:  Is this a specific statement in
22   1909?
23             MR. COOPER:  May it please the Court.
24   Judge, we failed to include this statement in our
25   motion and have not submitted an exhibit, so we will
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   withdraw our request to have Mr. Martinez testify
 2   with regard to this motion.
 3           THE COURT:  Okay.  All right.  So what is
 4   your next witness you need to get on today?
 5           MR. COOPER:  Good question.  May we have a
 6   moment?
 7           THE COURT:  You may.
 8           MR. McELHINNEY:  Your Honor, may I be
 9   excused?
10           THE COURT:  Yes, you can.  Thank you, Mr.
11   McElhinney, for your assistance.
12           MR. COOPER:  May it please the Court?
13           THE COURT:  You may.
14           MR. COOPER:  Judge, we had two witnesses
15   that had just left for lunch, but we've contacted
16   them and they're on their way back.
17           THE COURT:  The witnesses are not in
18   custody?
19           MR. COOPER:  No, sir, they're law
20   enforcement types.
21           THE COURT:  All right.
22           MR. COOPER:  And they just notified us that
23   they are turning around and coming back.
24           THE COURT:  Okay.
25           MR. BECK:  Your Honor, I'll just point out
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   to the Court for the record that I think Mr. Munoz's

2   testimony that inmates in the same housing unit but

3   in different pods go to rec together, that's where he

4   had the conversation he just testified.  I think that

5   evidence for the 1909 hearing is probative of

6   Mr. Garcia's testimony and Exhibits 5 and 6 from Mr.

7   Jameson Garcia's testimony in the 1909 hearing a

8   minute ago.

9               THE COURT:  I'm not tracking.  Tell me what

10  you're doing?  Oh, you want to admit 5 and 6?

11              MR. BECK:  Exhibits 5 and 6 are admitted.

12  I just thought while we had a minute, I would point

13  out that Mr. Munoz' testimony that he had a

14  conversation with an inmate in the yard at the North

15  when they were in the same housing unit but in

16  different pods is probative of Exhibits 5 and 6.

17              THE COURT:  As to Garcia.

18              MR. BECK:  As to Garcia and Mr. Troup.

19              THE COURT:  Well, let me ask this.  That

20  brings up an issue about how we're doing motions.  In

21  all these 104s, are we taking -- I guess we don't

22  have any more 104s; right?  We're just going to have

23  the one now, and that was with Mr. Garcia.  So the

24  next two witnesses go to the motions to dismiss?

25              MR. CASTLE:  Yeah, it goes to the motion to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    dismiss.  But there are other 104s.  I think it's
2    Quintana.  It might just be Mr. Quintana.  Oh,
3    Mr. Leroy Lucero.  His lawyer is coming back at 1:00,
4    Mr. Fallick.
5              THE COURT:  Mr. Fallick indicated to
6    somebody -- it might have been Ms. Wild, it might
7    have been Ms. Bevel -- that he wanted to redact some
8    portions of the transcript.  Does anybody know where
9    that stands?  I never saw any further redaction.
10             MR. CASTLE:  I told Mr. Fallick that I
11   didn't have any problem with personal identifying
12   information being redacted, but I wasn't speaking on
13   behalf of all defendants.  It was just on a phone
14   call with him last night.  He has prepared a redacted
15   transcript if the Court grants his request.
16             THE COURT:  Are y'all comfortable with
17   that?
18             MR. CASTLE:  I am, Your Honor.
19             THE COURT:  Has anyone seen it?  Is it here
20   so we can redact it and get it in your hands?  Y'all
21   might give a call to Mr. Fallick if he can tell
22   somebody, the Government, since they were at both
23   hearings, or if he can orally or send us an email or
24   something -- I don't know where he is right at the
25   moment -- so we can make a redaction and get you a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   copy, so you can look at it before he testifies.
 2            MR. CASTLE:  I think he has a copy of a
 3   redacted one.  I think he emailed it to me.  I
 4   haven't opened it.
 5            THE COURT:  If you're comfortable with
 6   that, then that will be fine with me.  I just didn't
 7   know if he was taking out a few words or taking out
 8   pages, but if you're comfortable with it, I'll be
 9   comfortable with it.
10            MR. CASTLE:  I would prefer to wait until
11   he makes his record, because there have been a number
12   of emails asking us not to open it, and things like
13   that.
14            THE COURT:  We just don't have anything
15   back from him after he said he was going to redact
16   it.
17            Mr. Burke, do you have something?
18            MR. BURKE:  I think I would be remiss in
19   not responding to Mr. Beck's remarks.  The fact that
20   there may have been a situation which we dispute with
21   regard to Frederico Munoz in 2007 regarding whether
22   inmates in one pod went to rec at the same time as an
23   inmate at another time, whether that's applicable to
24   the James Daffy Garcia situation, I would debate that
25   and ask that it not be considered as further
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   corroboration.

 2              THE COURT:  Thank you, Mr. Burke.

 3              MR. BURKE:  Thank you, Your Honor.  Your

 4   Honor, the next two witnesses are state police

 5   officers who did some investigation of the 2001

 6   homicides, and this will go to the motion to dismiss,

 7   just to show there was a continuity of investigation

 8   and interplay between the feds and the State.

 9              THE COURT:  Do you have their names?

10              MR. BURKE:  Yes, it's Felipe Gonzalez and

11   Norman Rhoades.  And to some extent, their testimony

12   will overlap, except that Mr. Gonzales was focusing

13   on Rolando Garza and Norman Rhoades was focusing on

14   Mr. Castillo.

15              THE COURT:  Mr. Rhoades, if you'll come up

16   and stand next to the witness box on my right, your

17   left, before you're seated, my courtroom deputy, Ms.

18   Bevel, will swear you in.

19                     NORMAN RHOADES,

20        after having been first duly sworn under oath,

21        was questioned, and testified as follows:

22              THE CLERK:  If you'll state your name and

23   spell your last name for the record.

24              THE WITNESS:  Norman Rhoades.

25   R-H-O-A-D-E-S.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            THE COURT:  Mr. Rhoades.  Mr. Burke.
2                    DIRECT EXAMINATION
3    BY MR. BURKE:
4         Q.   Mr. Rhoades, how are you employed?
5         A.   I'm employed with the -- as a investigator
6    with the New Mexico State Police.
7         Q.   How long have you been an investigator with
8    the State Police?
9         A.   I went into investigations in around
10   February of 1999.
11        Q.   And prior to February of 1999, had you had
12   other positions with the State Police?
13        A.   Yes.
14        Q.   Would you tell us what they were?
15        A.   I came on as a commissioned state police
16   officer in 1980, and from 1980 to 1999 I was on
17   patrol.
18        Q.   And so that would make it 38 years?
19        A.   Coming on to it, yes, sir.
20        Q.   And as an investigator 19 -- is that what
21   it is?
22        A.   Yes, sir.  And since 2005 I've been
23   assigned to the full-time crime scene unit.
24        Q.   Okay, I actually recognize you're a bit of
25   a historical person in this case, because you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    investigated Javier Molina and Freddie Sanchez, as

2    well as the Castillo and Garza homicides, did you

3    not?

4         A.   Yes, sir.

5         Q.   I'm going to ask you just a few questions

6    about Castillo and Garza.  Would you tell us your

7    role in those homicides?

8         A.   The Castillo investigation, I was assigned

9    as a lead investigator on that.  Agent Gonzalez at

10   the time was assigned to Garza, so we assisted each

11   other, you know, where we could.

12        Q.   And because you were working with Agent

13   Gonzalez, did you meet with him occasionally to see

14   how he was doing on his investigation, so that you

15   would work together?

16        A.   Yes, sir.

17        Q.   And just generally speaking, by way of

18   narrative, tell us what you did in order to

19   investigate those homicides and the Castillo homicide

20   in particular.

21        A.   Of course, after arriving to the

22   correctional facility, we met with the correctional

23   officers, and there were several of them.  Assistant

24   wardens and wardens, what have you, and just gathered

25   some intel information as to, in my case, who was

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                            1-800-669-9492

BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                              e-mail: info@litsupport.com

```
1    assigned to the G-1 green pod where Frank Castillo
2    was housed.  And then we conducted some interviews of
3    the inmates assigned to that, plus the correctional
4    officers that were assigned to that pod during the
5    time of the death of Mr. Castillo.  And a lot of it
6    was just getting evidence, submitting it to the lab
7    and things like that.
8         Q.   So you wanted to interview both the inmates
9    and the correctional officers who might have
10   information relating to the homicide?  Is that a fair
11   statement?
12        A.   Yes, sir.
13        Q.   And did you focus primarily on the day of
14   the homicide, or would you go back in time to take a
15   look at what other information might have been
16   available leading up to the homicide?
17        A.   I pretty much was focusing on that date.  I
18   didn't have really any knowledge prior to responding
19   out there of any of the involved parties, if you
20   will, or any of the history of the inmates or how
21   even the corrections facility was ran, so...
22        Q.   And how do you go about gathering that
23   information?
24        A.   That comes from the correctional staff.
25        Q.   Okay.  And do you look at any records, as
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    well, to gather information?

2         A.   Yes, sir.

3         Q.   What kinds of records do you look at?

4         A.   What I obtained were the logs where

5    primarily correctional officers checked in and

6    checked out during the time of the death and a little

7    before.  Any reports that any of the correctional

8    officers may have written and any copies or

9    transcripts of statements of interviews.

10        Q.   Okay, do you look for -- I think it was

11   called the STG back then.  Do you look for phone

12   calls or mail or any of those sorts of things?

13        A.   They -- I think the correctional officers,

14   probably the STG guys, were obtaining that and going

15   through that.  They had access to it.  If there was

16   anything pertinent, then they would call me and we

17   would meet on it.

18        Q.   Thank you, sir.  I now want to jump to the

19   physical evidence.  Was there any physical evidence

20   that helped you perhaps even solve the Castillo

21   homicide?

22        A.   I believe there was, yes.

23        Q.   Would you tell the Court what that was?

24        A.   Yes, sir.  It was -- Castillo had a

25   ligature, looked like part of the laundry bag, maybe

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                                        Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                        FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   the -- and the cord that tied it up tied around his
 2   neck, and that was submitted to the lab and they came
 3   back for DNA testing, and it came back with the
 4   results of DNA from Frank Castillo and Angel DeLeon.
 5        Q.   And as a result of that, did you submit an
 6   affidavit for the arrest of Mr. DeLeon?
 7        A.   Yes, I did.
 8        Q.   And did you seek the prosecution of
 9   Mr. DeLeon from the district attorney?
10        A.   Yes, I did.
11        Q.   And what happened to your request?
12        A.   They took it under review and several
13   months later sent the decline to prosecute letter.
14        Q.   And you continued to investigate the case
15   for some time notwithstanding the declination; is
16   that a fair statement?
17        A.   It was kind of -- after that, it was kind
18   of dead in the water as far as my part goes.  Just
19   waiting for the information until 2003.  The criminal
20   investigation sergeant then reassigned it to another
21   agent.
22        Q.   Let me ask you to look at Exhibit D.  If
23   you'll look at that, Agent Rhoades, is that the
24   reassignment to Agent Venegas?
25        A.   Yes, it is.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   And one of the reasons it was being

2   reassigned to Agent Venegas is that he was part of

3   the FBI Gang Task Force; is that a fair statement?

4        A.   Yes, sir.

5        Q.   And let me jump forward to 2007.  There was

6   another piece of evidence in the case because Mr.

7   Lujan decided to talk to law enforcement authorities.

8   Is that a fair statement?

9        A.   Yes, sir.

10       Q.   And you got involved in the interviews of

11   Mr. Lujan; is that a fair statement?

12       A.   Yes, sir.

13       Q.   Would you tell us about that?  How you got

14   reinvolved at that point?

15       A.   This case had been reassigned from Agent

16   Venegas, then went to Agent Christiansen, and I'm not

17   sure where it went, who else had involvement in it.

18   But it was pretty much idle, and I had worked prior

19   with an Albuquerque police detective, Rich Lewis, on

20   other cases, so we had a network going.  He contacted

21   me and knew that I was involved in this case

22   originally, and told me about an interview he had had

23   with Lujan.  He offered to set up an appointment to

24   where myself and Agent Gonzalez could go up and

25   interview him, since we had a lot of information on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    both these cases, so we did.

 2         Q.   So at this point, you're coordinating with

 3    other law enforcement people, and you did, in fact,

 4    get an opportunity to interview Mr. Lujan; is that

 5    true?

 6         A.   Yes.

 7         Q.   And when was that?  I notice that you did

 8    bring your binder, so you boned up a little bit.

 9    Tell us a little bit about that, please.

10         A.   I forgot the month now.  It was, I believe,

11    2007, mid to late part of the year, maybe, and it was

12    set up in Albuquerque, I believe at the DA's office

13    up there.  And we went and met with Lujan and

14    conducted that interview.

15         Q.   Okay.  And so that breathed new life into

16    the investigation.  Is that a fair statement?

17         A.   Yes, I believe that did.

18         Q.   All right.  Now, I'd like you to take a

19    look at Exhibit U.  Agent, my guess is you will

20    recognize this as a concluding page of a long

21    PowerPoint that had been prepared.

22         A.   Yes, sir.

23         Q.   Tell us about the PowerPoint, then I'll be

24    asking you a couple of questions about this

25    particular exhibit.  What happened when you guys got

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   back to work and you developed a PowerPoint?  Why

2   don't you tell us what you were doing.

3        A.   The PowerPoint kind of helped to simplify

4   the case.  It was kind of fragmented, I felt, and

5   scattered out, and I thought a way to visually

6   present it would be through a PowerPoint format.  So

7   I went through and gathered pretty much the high

8   spots of the investigation, and tried to keep it in

9   chronological order as to the investigation.  So

10  that's why the PowerPoint was created.

11       Q.   And what sorts of things were in the

12  PowerPoint?  And I understand you just gave us an

13  abbreviated synopsis, but did it have some physical

14  evidence, photographs?

15       A.   Yes, it did.  It had some of the crime

16  scene photographs; I think the photograph of the

17  ligature was in there, if I remember correctly.  I

18  don't think I put a copy of the lab report in there.

19  But I think I had referred to it.

20       Q.   Yes.  And then so what was the conclusion

21  of the PowerPoint and that phase of the

22  investigation, referring now to Exhibit U?

23       A.   We had met with the district attorney at

24  that time at their office with the new information

25  coupled with the DNA I had at least on the Castillo

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    case to see if they would now file charges, realizing

2    that Angel DeLeon had been released.

3            At that time, they requested that we go

4    reinterview everybody.  At some point in there, the

5    FBI was thinking about taking it and ultimately did

6    take the case over, several of the cases, so...

7        Q.  So they had grouped together some other

8    homicides and the FBI took over the case?

9        A.  Yes.

10           MR. BURKE:  Those are all my questions,

11   Your Honor.

12           THE COURT:  Thank you, Mr. Burke.

13           Mr. Castle, do you have direct examination

14   of Mr. Rhoades?

15           MR. CASTLE:  I do, Your Honor.

16                  DIRECT EXAMINATION

17   BY MR. CASTLE:

18       Q.  Could we pull up Exhibit D?  I guess it's

19   still good morning.

20       A.  Good morning.

21       Q.  Exhibit D was shown to you a few minutes

22   ago.  Is that an email from -- is it Steven Libicer?

23       A.  Libicer.

24       Q.  That's to you and to Felipe Gonzalez; is

25   that right?

SANTA FE OFFICE                                                                   MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492
                                                                                1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                    e-mail: info@litsupport.com

```
 1        A.   Yes.
 2        Q.   And the first part of it indicates that "I
 3   realize you've been carrying these cases on an
 4   inactive basis for some time, since the AUSA's office
 5   has apparently shelved them."
 6             And it's dated April 28, 2003.  So had
 7   there been an attempt prior to that to see if the
 8   United States Attorney's Office would take over
 9   perhaps the prosecution of these cases?
10        A.   To my understanding of this email, prior to
11   that, I don't recall.  Maybe there was talk.  I don't
12   recall.  But we had the investigations.  I had -- I
13   was still assigned to Castillo and I still at this
14   point was waiting.  I had been meeting with
15   Corrections and they had an official intel, but
16   nothing they could release to me.  So I was kind of
17   waiting to see if that would get resolved out to
18   where it would be useful.
19             So at that time I was still -- the case was
20   inactive, but I was still active with it.
21        Q.   What was the United States Attorney's
22   Office involved in prior to this email?
23        A.   I don't know if they were just reviewing
24   it.  I don't remember even being aware of anything
25   specific about it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   Over the years, as different violent acts

2  occurred at the prison by suspected SNM members, was

3  there debate about whether the federal government

4  ought to take it over versus the State prosecuting?

5     A.   During each time of the investigation, not

6  that I recall, no.

7     Q.   Would you work with the Southern New Mexico

8  Gang Task Force to exchange information and perhaps

9  even informant information concerning these murder

10  investigations through the years?

11     A.   Only on the Castillo investigation, because

12  I was assigned as a lead on the subsequent ones, and

13  at that time I was doing crime scenes, so my

14  involvement would be limited to just that.

15     Q.   So with regards to the Castillo

16  investigation, would you have shared information with

17  the task force and vice versa in 2001 and thereafter?

18     A.   Yes, sir.

19     Q.   If we can move to Exhibit F.  Do you

20  recognize what this document is or at least the

21  format?

22     A.   This is going to be the cover sheet on our

23  reports, and this one is going to be by Agent Bobby

24  Duncan.

25     Q.   And it was provided to you as the case

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    agent -- or the agent, I'm sorry, as an agent?
 2         A.   Yes, sir.
 3         Q.   And if we could go to the next page.
 4              THE COURT:  Let me ask you, Mr. Castle.
 5    Let's do a little planning here.  We can do a couple
 6    of things.  I do need to give Ms. Bean a break, so if
 7    we wanted to take a 15-minute break, come back,
 8    finish up, get these guys out of here.  If you want
 9    to take a full lunch break, we can do that and come
10    back.  What's your preference?
11              (A discussion was held off the record.)
12              MR. CASTLE:  Sounds like there's going to
13    be quite a few questions left for this agent.  So
14    maybe we should take the lunch break.  I know that --
15    yes, I think that makes sense.
16              THE COURT:  Do you want to ask Mr. Burke?
17    He might have a different view.
18              MR. BURKE:  I do have a different view.  I
19    wanted to get Felipe Gonzalez on and off, but it
20    really does depend.  If you're going to go a bit --
21              MR. BECK:  I don't think I'm going to go
22    long with Mr. Rhoades.  I'd be inclined -- they
23    already left and had to come back once.  I'd be
24    inclined to just take a later lunch and work through.
25              THE COURT:  Is that all right with
```

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    everyone?  So we'll take a 15-minute break, come
 2    back, and try to get you guys out of here.
 3              All right.  So we'll be in recess about 15
 4    minutes.
 5              (The Court stood in recess.)
 6              THE COURT:  All right.  I think everybody
 7    has got an attorney.  All the defendants are back in.
 8              So Mr. Rhoades, I'll remind you that you're
 9    still under oath.  And Mr. Castle, if you wish to
10    continue your direct examination of Mr. Rhoades, you
11    may do so at this time.
12    BY MR. CASTLE:
13        Q.   I think when we left, Agent Rhoades, we
14    were on Exhibit F -- or is this Exhibit F?  On page
15    2.  Actually if we could scroll to page 3.  I want
16    you to look at the fourth paragraph down, if we
17    could.  There is an indication here that the crime
18    scene was documented with a 35-millimeter camera and
19    that also an Agent LaCuesta videotaped the scene.  Do
20    you see that?
21        A.   Yes.
22        Q.   Was Agent LaCuesta a crime scene detective?
23        A.   Yes.
24        Q.   And do you recall that he had videotaped
25    the scene?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   No, I don't recall being present when they

2   were processing the scene.  I think I was doing

3   interviews or something at that time.

4      Q.   When the file was turned over to the FBI,

5   was it just the paper file, or did they get other

6   items, like photographs and videotapes and things of

7   that nature?

8      A.   I believe they got copies of all of the

9   photographs and videotapes and stuff.  I know we kept

10  the collected evidence, physical evidence.

11     Q.   Okay.  So if it was collected as physical

12  evidence, you maintained it as a custodian at

13  whatever part of the state patrol that keeps those

14  things; right?

15     A.   Yes, sir.

16         MR. CASTLE:  I have no other questions.

17         THE COURT:  Thank you, Mr. Castle.

18         Do any other defendant have direct

19  examination of Mr. Rhoades?  Mr. Solis.

20         MR. SOLIS:  I do, Your Honor, very briefly.

21                  DIRECT EXAMINATION

22  BY MR. SOLIS:

23     Q.   Mr. Rhoades, I know Felipe Gonzalez is

24  outside the door, so I'll be very brief.  But you did

25  mention that you were the assigned case agent to the

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492
                                                    e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Castillo murder; right?

2         A.   Yes.

3         Q.   And I think you said that Mr. Felipe

4    Gonzalez was the Garza murder?

5         A.   Yes.

6         Q.   But nonetheless, you coordinated the

7    investigations somewhat?

8         A.   We exchanged information and talked about

9    it and assisted, maybe sitting in on interviews or

10   whatever.

11        Q.   And you and he were aware of the progress

12   of your respective investigations?

13        A.   Yes, sir.

14        Q.   Okay.  So that's my focus, then.  Being

15   coordinated and aware of the respective

16   investigations, do you know -- a follow-on to a

17   question asked of you a little while ago -- do you

18   know if there was any physical evidence that helped

19   solve or at least advance the Garza murder?

20        A.   Not to my knowledge, no.

21        Q.   Had there been, you would have been aware

22   of it, obviously; right?

23        A.   Yes, sir.

24        Q.   And I think you said since 2001 and

25   certainly since 2003, for lack of a better word, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Castillo investigation was cold; that is, it was

2    shelved; it was just not advancing or going anywhere.

3    Is that pretty much accurate?

4        A.   Yes, sir.

5        Q.   Up until, I think you said, 2007 when Mr.

6    Lujan started reaching out and talking; is that

7    right?

8        A.   Yes, sir.

9        Q.   Does that go for the Garza murder, to your

10   knowledge?

11       A.   Yes, sir.

12       Q.   So both investigations were pretty much, to

13   use your words, idle up until 2007, when Mr. Lujan

14   was made available as a witness?

15       A.   Yes, sir.

16       Q.   And just to conclude on the photos and

17   video of the Castillo scene, was the same procedure

18   done on the Garza scene?  That is, was it somehow

19   documented with photographs or 35-millimeter video?

20       A.   Yes, sir.

21       Q.   That was done?

22       A.   I'm not -- I know photographs were.  I'm

23   not sure about the crime scene video.

24           MR. SOLIS:  Thank you, sir.  Nothing

25   further.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Thank you, Mr. Solis.

 2              Any other defendant?

 3              Mr. Beck, do you have cross-examination of

 4   Mr. Rhoades?

 5              MR. BECK:  Yes, Your Honor.

 6              THE COURT:  Mr. Beck.

 7                   CROSS-EXAMINATION

 8   BY MR. BECK:

 9       Q.   Good afternoon, Agent Rhoades.

10       A.   Good afternoon.

11       Q.   I want to take you back to Exhibit F, which

12   was the supplemental police report for your

13   investigation into Frank Castillo.

14              So this is the supplemental report that you

15   were shown earlier.  It's Defendants' Exhibit F and

16   it says that a copy was sent to you, Agent Rhoades.

17   Do you remember seeing the video that this report

18   says that Agent LaCuesta took?

19       A.   No, I don't.

20       Q.   And I think you said that copies -- at

21   least copies of photographs were given over to the

22   FBI; right?

23       A.   To my knowledge, yes.  I know on the

24   Castillo case, I did.

25       Q.   And in 2001 when this report was written --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    let me see.  There we go.  Just finding the date, so

 2    we're on the same page.  It looks like -- was this

 3    report written on 5/3/2001?

 4         A.   Yes, sir.

 5         Q.   At that time, this was a State Police

 6    investigation; right?

 7         A.   Yes.

 8         Q.   And there were no FBI agents joining the

 9    investigation with you at that time?

10         A.   No.

11         Q.   When you provided copies of the photographs

12    to -- I think you said you provided those to the

13    federal authorities, I'm guessing the FBI, at some

14    point?

15         A.   Yes, and I don't recall who it was at that

16    time, but --

17         Q.   Okay.  And I guess my question was:  What

18    time are we talking about?  When did you provide

19    these photographs to the FBI?

20         A.   I don't remember, actually, and I don't

21    know if I even documented it.

22         Q.   Sure.  You provided the photographs to the

23    FBI sometime around 2015; right?

24         A.   That could be, yes.

25         Q.   And so I guess that's another couple
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    questions I have here.  Did you ever testify before a
 2    federal grand jury in connection with your
 3    investigation of the Castillo murder?
 4         A.   Yes, I did.
 5         Q.   And when was that?
 6         A.   It was twice, actually.  One time in
 7    Albuquerque, and one time here in Las Cruces.  And
 8    again, I don't recall the time or the date of it.
 9         Q.   Okay.  And those -- the times that you
10    testified, was that within, let's say, sometime after
11    2014?
12         A.   I believe it was, yes.
13         Q.   All right.  And the first time that you
14    testified in Federal Court in relation to, let's say,
15    your investigation into any SNM crimes, was that in
16    the last month or two here in Las Cruces?
17         A.   Yes, it was.
18         Q.   And if you know, was your testimony in
19    front of the federal grand jury part of this case
20    that we're sitting here today for?
21         A.   Yes.
22         Q.   I think you said with Mr. Solis -- and
23    sorry, I'm kind of working backwards here; it's a
24    little bit fresher -- that there was no physical --
25    or at least you weren't aware of any physical

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                       (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1   evidence to advance the Garza murder; is that right?

 2        A.   That's correct.

 3        Q.   And in prosecuting -- well, I guess you

 4   wouldn't be prosecuting.  In investigating crimes,

 5   including murders, in your experience, if they're

 6   adopted for prosecution by either the district

 7   attorney's office or the U.S. Attorney's Office, is

 8   physical evidence an important aspect in the

 9   investigation?

10        A.   It could be.  Usually it is important.

11        Q.   And with Mr. Burke, he asked you about the

12   Corrections Department monitoring phone calls and

13   mail after the Castillo murder.  Do you remember

14   that?

15        A.   Yes, I do.

16        Q.   And I think you said that the Corrections

17   Department or STG or STIU would call you if they

18   found anything pertinent.  Do you remember that?

19        A.   Yes.

20        Q.   Did they call you?

21        A.   I don't recall them calling me relating to

22   phone messages or mail.  They did call with

23   information, verbal intelligence, that they had

24   received; and we met on that.

25        Q.   I'm going to show you what's been admitted

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    as Exhibit D.  And do you remember going over this
 2    email on your direct examination from 2003?
 3         A.   Yes, sir.
 4         Q.   All right.  In that first sentence, does it
 5    say that these cases have been on an active basis for
 6    some time since the AUSA's office has apparently
 7    shelved them?
 8         A.   Yes.
 9         Q.   And do you know if the AUSA's office
10    shelved them?
11         A.   No, I don't.
12         Q.   And I'm guessing, then, you don't know why
13    the AUSA's office shelved them, if they did?
14         A.   No, I don't.
15         Q.   And in that second paragraph, the second
16    sentence there, and it's referring to Agent Venegas,
17    it says, "He will be in a better position to try and
18    develop some prison gang leads and/or deal with the
19    AUSA's office on them."
20              Did I read that right?
21         A.   Yes, sir.
22         Q.   So does that mean -- does that indicate to
23    you that at this time, according to Steven Libicer,
24    at least, he thought that they had not been in a good
25    position with leads to present it to the AUSA's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    office?

2         A.    It kind of left an indication that the

3    federal agents, FBI, had been working it and there

4    had been something submitted to the AUSA's office.

5         Q.    But does it say where he will be -- my

6    question is:  Does it say where he will be in a

7    better position to try and develop some prison gang

8    leads and/or deal with the AUSA's office on them --

9    does that indicate to you that he at that point was

10   not in a good position to deal with the AUSA's

11   office?  Does that indicate to you that at that

12   point, they had not been in a position to develop

13   some prison gang leads or deal with the AUSA's

14   office?  I'm just asking your opinion.

15        A.    Yes, sir.

16        Q.    And you talked about -- I think it was a

17   2008 interview of Mr. Leonard Lujan.  Do you remember

18   that?

19        A.    Yes, I do.

20        Q.    And you said -- I think you said this a

21   couple of times, but your words were:  These cases

22   had been idle for some time before that.  Were those

23   your words?

24        A.    Could have been.  They had been idle.

25        Q.    And what do you mean by "the cases had been

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                          1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    idle"?

2        A.   Really no movement or investigation, to my

3    knowledge, going on them; pretty much just waiting

4    for new information.

5        Q.   And with Exhibit U, I don't have a copy of

6    that, but it sounds like that was a PowerPoint that

7    you helped prepare to -- I think you said it helped

8    simplify the case.  Was that the PowerPoint's idea?

9        A.   Yes, sir, and I think I did prepare that

10   PowerPoint.

11       Q.   Okay.  And so I think you also said that up

12   until that point, the case had been scattered and

13   fragmented.  Is that fair to say?

14       A.   Yes, sir.  In terms of what was assigned to

15   it, hands it's gone through, the case file went

16   through some hands, you had various agencies,

17   Corrections, State Police, conducting interviews

18   independent, it appears, of each other.

19       Q.   Sure.  It sounds like at some point during

20   this period or maybe during another period you had

21   some involvement with the Southern New Mexico Gang

22   Task Force; is that right?

23       A.   No, I've never been involved with the task

24   force like that.

25       Q.   Okay.  I must have misunderstood.  I think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    you were talking with Mr. Castle and he asked you

2    about that task force.  But we'll move on.  That's

3    fine.

4            Did Mr. Lujan tell you that he participated

5    in the murder of Mr. Castillo or Mr. Garza?

6        A.   Not -- not -- how do I word it?  Not

7    physically participated.

8        Q.   What did he tell you he'd done?

9        A.   That he was told to facilitate the hits.

10       Q.   Okay.  And in your work in this case, have

11   you spoken with FBI Agent Bryan Acee?

12       A.   Yes.

13       Q.   Have you spoken with any other FBI agents

14   over the years?

15       A.   Yes, I have.

16       Q.   Do you recall who any of those agents were?

17       A.   I recall one of them was Lance Roundy,

18   maybe, and there were others in the room; and I think

19   on other occasions.  I don't recall or remember what

20   their names are.

21       Q.   Okay.  Do you remember, have you ever

22   spoken with Sonya Chavez about these cases?

23       A.   I think she was one of many at a meeting we

24   had in Albuquerque at their office.

25       Q.   So you had a meeting in Albuquerque with a

SANTA FE OFFICE                                         MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
1-800-669-9492
PROFESSIONAL COURT                    e-mail: info@litsupport.com
REPORTING SERVICE

1    number of FBI agents?

2         A.   Yes, and the U.S. Attorney's Office.

3         Q.   And the U.S. Attorney's Office was there?

4         A.   And I think a representative from the Third

5    Judicial District Attorney's office was there, as

6    well.

7         Q.   All right.  And I probably should have

8    asked, but in Exhibit U, your PowerPoint, it

9    indicated that you'd spoken with the Third Judicial

10   District Attorney's Office and that at that time it

11   looked like the case was going to be accepted at

12   least for federal authorities to investigate; right?

13        A.   At some point in there, yes, it did.

14        Q.   So does that indicate to you that up until

15   that time, it had been primarily a state

16   investigation?

17        A.   Yes, other than Agent Venegas working with

18   the FBI Gang Task Force.

19        Q.   Sure.  And so my question to you is:  In

20   any of these discussions with Special Agent Acee,

21   with Special Agent Lance Roundy, with any of the

22   special agents you've met with or with anyone from

23   the U.S. Attorney's Office, has anyone indicated to

24   you that it would be -- or have you ever heard that

25   it would be a good idea to delay prosecution of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Castillo and Garza murders for tactical reasons?

 2        A.   No.

 3             MR. BECK:  Nothing further, Your Honor.

 4             THE COURT:  Thank you, Mr. Beck.

 5             All right, Mr. Castle.  Do you have any

 6    redirect of Mr. Rhoades?

 7             MR. CASTLE:  No, Your Honor.

 8             MR. BURKE:  No, Your Honor.

 9             THE COURT:  Anybody else?

10             All right.  Mr. Rhoades, you may step down.

11             Is there any reason that Mr. Rhoades cannot

12    be excused from the proceedings?  From the

13    defendants?

14             MR. BURKE:  No, Your Honor.

15             MR. CASTLE:  No, Your Honor.

16             THE COURT:  Any objections, Mr. Beck?

17             MR. BECK:  Not from the Government, Your

18    Honor.

19             THE COURT:  You're excused from the

20    proceedings.  Thank you for your testimony.

21             All right, Mr. Burke, do you have Mr.

22    Gonzales you want to call?

23             MR. BURKE:  Yes, Your Honor.  Thank you.

24             THE COURT:  Mr. Burke.

25             Mr. Gonzalez, if you'll come up and stand
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

```
 1    next to the witness box on my right, your left,
 2    before you're seated, my courtroom deputy, Ms. Bevel,
 3    will swear you in.
 4                    FELIPE GONZALEZ,
 5        after having been first duly sworn under oath,
 6        was questioned, and testified as follows:
 7               THE CLERK:  Please state your name and
 8    spell your last name for the record.
 9               THE WITNESS:  Felipe Gonzalez,
10    G-O-N-Z-A-L-E-Z.
11               THE COURT:  Mr. Gonzalez.  Mr. Burke.
12                  DIRECT EXAMINATION
13    BY MR. BURKE:
14        Q.   Mr. Gonzales, did you have a career in law
15    enforcement?
16        A.   Yes, sir.
17        Q.   Would you please tell us about that?
18        A.   I'm a retired state police officer,
19    investigator, supervisor.  I retired in 2013.
20        Q.   Tell us about your career.  What sorts of
21    things did you do as a state police officer?
22        A.   You know, I did patrol, I did
23    investigations.  All kinds of duties involving law
24    enforcement.  Yes, sir.
25        Q.   How many years total was that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1         A.    Just over 20 years.

 2         Q.    Going back to 2001, what was your position

 3    with the State Police at that time?

 4         A.    At the time I was assigned as a criminal

 5    agent.

 6         Q.    And as criminal agent back in 2001, were

 7    you involved in the investigation of two homicides

 8    involving a Mr. Garza and a Mr. Castillo?

 9         A.    Yes, I was.

10         Q.    Would you tell us what you did?  And you

11    can use a narrative at this point.

12         A.    It's been a long -- it's been a while.  It

13    was in 2001, I believe it was, we had got a call of a

14    possible homicides at the penitentiary.  And I went

15    out there, and shortly thereafter, we got information

16    that there was actually two homicides.  And so I got

17    assigned one of the homicides, which was Rolando

18    Garza.  I believe Agent Rhoades got assigned the

19    other homicide, which was Mr. Castillo.

20         Q.    And what did you do as the lead

21    investigator from the State Police on the Garza

22    homicide?

23         A.    My role was to interview witnesses, look at

24    the crime scene, see what we had; but mainly doing

25    interviews and investigating, talking to the
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                              1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1    correctional officers, inmates out there at the

2    facility, going over the crime scene at the time, as

3    well; and follow-up with investigation on that

4    particular homicide.

5        Q.   Was the gathering of documents part of your

6    investigation?

7        A.   Yes, sir.

8        Q.   Tell us what you would do in terms of

9    gathering documents.

10       A.   Anytime we did interviews, we'd have to

11   document we were at the scene.  Just arriving at the

12   scene, we would have to document that; you know, the

13   time, the location who we met with, what we did.

14   What we did regarding that particular case was all

15   documented in reports.

16       Q.   Okay.  Did there come a time when the level

17   of activity slowed down because you weren't able to

18   close the case or solve it?

19       A.   Yes.  At some point it becomes, like, an

20   inactive case with, you know, follow-up if we

21   determine to be -- get more leads on the case.

22       Q.   All right.  Thank you, sir.  Let me ask you

23   to look at Exhibit D and see if you recognize that

24   email.  You are a recipient of it.  And see if that

25   is a document you remember.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

 1        A.    Yes.

 2        Q.    And so what happened in 2003 with respect

 3   to those two homicides?

 4        A.    What happened was:  I believe we had an

 5   agent -- Albert Venegas was assigned to the FBI task

 6   force, and he was reassigned those cases to -- since

 7   he was going to be working with the FBI and see if he

 8   could develop some more leads.

 9        Q.    Thank you very much.  So the level of your

10   activity at that point would have slowed down, I take

11   it, in 2003?

12        A.    Correct.

13        Q.    Did there come a time in 2007 when you had

14   some new activity with regard to a Mr. Lujan?

15        A.    Yes, I did.

16        Q.    Would you tell the Court about that,

17   please?

18        A.    At the time, I was back in patrol here in

19   Las Cruces, as well.  And we had got information

20   regarding an individual in Albuquerque that had

21   provided some information to one of the detectives up

22   in Albuquerque -- I think it was Rich Lewis -- and

23   had given him information on some other cases, other

24   homicides up in Albuquerque, and also indicated that

25   there was information regarding our two possible

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1    homicides here in Las Cruces in the 2001 cases.

 2         Q.   And as a result of that, was there an

 3    increase in activity on the homicides?

 4         A.   Was there a what, again?

 5         Q.   An increase in investigative activity as a

 6    result of the interviews with Mr. Lujan.

 7         A.   Yes.  What we did is:  We did some more

 8    follow-up.  We went up -- I went with Agent Rhoades

 9    to Albuquerque.  We met with Mr. Rich Lewis and Mr.

10    Lujan, and we did pretty much an interview between

11    all of us and his attorneys, I believe, at the time.

12         Q.   All right.  I'm going to show you the first

13    page and last page of a PowerPoint that was developed

14    by your colleague Agent Rhoades and just see if you

15    recall that PowerPoint.  I believe it's page 543.  Do

16    you remember this PowerPoint to any degree?  I know

17    you weren't the drafter of it, but do you remember?

18         A.   Yes.

19         Q.   Let me ask you now to turn to Exhibit U,

20    which is the final page of that PowerPoint, and ask

21    you to see in the top bullet point you had this

22    meeting.  I think you just referred to it.  Do you

23    recall that meeting?

24              THE COURT:  Is U up there?  Do you have U,

25    or is there a U up there on the shelf?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE CLERK:  I don't have a U.

 2              MR. BURKE:  Here you go.

 3              THE COURT:  I don't want to steal your

 4   copy.

 5              MR. BURKE:  Oh, I know what's on it.

 6              MR. BECK:  We should probably move that

 7   into evidence.  The United States doesn't object to

 8   that.

 9              MR. BURKE:  Thank you.  I actually thought

10   I had already done that.

11              THE COURT:  Any objection?  Not hearing

12   any, Defendants' Exhibit U will be admitted into

13   evidence.

14              (Defendants' Exhibit U admitted.)

15              MR. BURKE:  Thank you, Your Honor.

16   BY MR. BURKE:

17        Q.  And so this was a good meeting with a

18   number of people up there actually in the DA's

19   office?

20        A.  That's correct.

21        Q.  All right.  And then did you relinquish

22   control of the investigation to the FBI Agents

23   Monarko and Chavez?

24        A.  Yes, we did.

25              MR. BURKE:  Thank you.  Those are my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    questions.

 2              THE COURT:  Thank you, Mr. Burke.

 3              Any other defendant?  Mr. Solis?

 4              MR. SOLIS:  Thank you, Your Honor.

 5              THE COURT:  Mr. Solis.

 6                    DIRECT EXAMINATION

 7    BY MR. SOLIS:

 8         Q.   Mr. Gonzalez, good morning.

 9         A.   Good morning.

10         Q.   So -- you'll have to -- well, I'm rather

11    new to the case so I neglected to ask -- or maybe I

12    just hadn't looked into -- Mr. Rhoades -- he was your

13    counterpart or your colleague in the investigation.

14    What is his agency back then?  What was the agency he

15    was working for?

16         A.   He's always been a state police officer, as

17    well.

18         Q.   So you and he have similar training, I

19    guess.

20         A.   Yes, sir.  He's got a lot more training

21    because he's been on the department a lot longer.

22         Q.   Right.  And some of that training involved

23    basic Law Enforcement Academy stuff?

24         A.   Right.

25         Q.   And on-the-job training.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Right.

 2        Q.    And periodic seminar training along that

 3   career?

 4        A.    Right.   Criminal investigations techniques

 5   and interrogation.   Yes, sir.

 6        Q.    And some of that involves knowing how to

 7   preserve a scene?

 8        A.    Yes.

 9        Q.    And memorialize evidence; right?

10        A.    Yes, sir.

11        Q.    And you would rather do that close in time

12   to the event; is that right?

13        A.    That's correct.

14        Q.    And you'd rather obtain statements close in

15   time to the event; is that right?

16        A.    Correct.

17        Q.    And you'd rather memorialize or record

18   those statements for future use; right?

19        A.    Correct.

20        Q.    Okay.   And there is a reason for wanting to

21   memorialize or record, preserve evidence close in

22   time to the event, isn't there?

23        A.    Yes.

24        Q.    Why is that?

25        A.    You get more of an accurate picture of what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    happened, and everything is fresh in everybody's

2    mind.

3         Q.   And if there's any suspect changes that

4    come down the pike, then you've got that recorded

5    already close in time to the event; right?

6         A.   Right.

7         Q.   Okay.  So tell me if you agree with Mr.

8    Rhoades where he says -- and he might have and Mr.

9    Burke might have covered it already -- where he says

10   right around from 2001 and certainly by 2003, up

11   until the Lujan incident later, this case had

12   basically gone cold and not much was happening; it

13   was idle; is that right?

14        A.   That's correct.  Yes, sir.

15        Q.   So up until -- well, when Mr. Burke asked

16   you about your information on Lujan, your words were

17   "got active again" were your exact words, was that

18   about 2007?

19        A.   Yes, it was.

20        Q.   So prior to 2007, when you compiled,

21   preserved, gathered, memorialized evidence in '01,

22   was there any attempt to present the case to the

23   grand jury on the state side here with Susana

24   Martinez back then?

25        A.   Actually, what I recall is:  We did have a

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com




BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1    meeting with them.  I'm trying to remember if it was

2    before the Lujan or after, as well.  I think we might

3    have done both.  I'm sure.  However, I don't believe

4    they wanted to pursue the case at the time.

5        Q.   Well, I'll have to press you on that.

6    Before Lujan, was there an attempt to present it to

7    the grand jury with Susana Martinez, Third Judicial

8    District in New Mexico?

9        A.   I'm not sure if it was going to be

10   presented, sir.  We just met with the attorneys to

11   review the cases.  Right.  Yes, sir.

12       Q.   And so your intent was never to present it

13   to the grand jury if you met with the district

14   attorney or assistant district attorneys?

15       A.   Well, we would be ready.  It would just be

16   a matter of the attorneys wanting to pursue the case,

17   and looking at all the reports and interviews and

18   evidence.

19       Q.   And that was a big no, I guess; right?

20   They decided not to pursue indictment?

21       A.   That's correct.

22       Q.   Mr. Rhoades indicated that he was --

23   although not the lead investigator in the Garza

24   murder, like you were, he was certainly aware of your

25   efforts in that murder because he was kind of

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    coordinating the Castillo murder with your efforts in

 2    the Garza murder.  Do you agree with that?

 3         A.    That's correct.

 4         Q.    And he indicated to me that as far as he

 5    knew, the Garza murder did not result -- the

 6    investigation did not result in any -- there wasn't

 7    any physical evidence that was located or preserved

 8    to further that investigation for that murder; is

 9    that right?

10         A.    That's correct.

11         Q.    And having agreed or having related to me

12    the training that you've had, that you say you were a

13    participant in over the years, as a good investigator

14    you'd want more than just witness statements.  You'd

15    want physical evidence; is that right?

16         A.    You always want physical evidence.

17         Q.    And you'd want reliable witness statements;

18    is that true?

19         A.    That's correct.

20               MR. SOLIS:  I'll pass the witness.

21               THE COURT:  Thank you, Mr. Solis.

22               Any other defendant have direct examination

23    of Mr. Gonzales?

24               Mr. Beck, do you have cross-examination of

25    Mr. Gonzales?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                 MR. BECK:  I do, Your Honor.
 2                 THE COURT:  Mr. Beck.
 3                      CROSS-EXAMINATION
 4    BY MR. BECK:
 5          Q.   Good afternoon, Agent Gonzalez.
 6          A.   Good afternoon.
 7                 MR. BECK:  Ms. Gilbert, would you bring up
 8    Exhibit U for me, please?
 9          Q.   Do you remember talking about this exhibit
10    just a few moments ago?
11          A.   Yes, sir.
12          Q.   And I think you said that in 2003 the
13    investigation had slowed down.  Do you remember that?
14          A.   Yes, sir.
15          Q.   And you thought that Agent Venegas, who
16    was, I guess -- your understanding was, he was on the
17    task force with FBI agents; is that right?
18          A.   That's correct.
19          Q.   And let me ask you this first.  Did you
20    produce this PowerPoint?
21          A.   No, I believe that was produced by Agent
22    Rhoades.
23          Q.   Did you help him make it?
24          A.   I think we shared the information and we
25    looked at it.  I reviewed it at the time, yes, sir.
```

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Okay.  So based on this, it looks like in

2    2008, July 30, 2008, that would have been after your

3    interview with Mr. Lujan; right?

4      A.   Yes, sir.

5      Q.   And so if -- looking at the second bullet

6    point, if the Third Judicial District attorney Susana

7    Martinez and Chief Deputy District Attorney Amy

8    Orlando advised they would agree to have both

9    investigations relinquished to the FBI, does that

10   tell you whether the State was still investigating

11   and looking at maybe prosecuting these on the State

12   side, at least before July 30?

13     A.   I think we kind of met with them after we

14   got the interview with Mr. Lujan, and that was the

15   reasoning to meeting with them again.  And I think at

16   that point, that's when a meeting was -- decided to

17   meet with the FBI again and pursue that.

18     Q.   Did you attend a meeting in Albuquerque

19   related to -- I think in this time period where there

20   were FBI agents and assistant U.S. Attorneys talking

21   about, I guess, this case and other SNM cases.  Were

22   you at that meeting?

23     A.   I believe I was at one meeting.  I'm not

24   sure how many or how -- I do remember attending one

25   meeting, yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And do you remember the FBI agents who were

2    there?

3    A.   I think the lead on it was a lady by the

4    name of Sonya.  I'm not sure of her last name.

5    Q.   Was it Sonya Chavez?

6    A.   Yes.  Yes, sir.

7    Q.   Do you remember anyone else that was there?

8    A.   And also Mackenzie.  She was also there, as

9    well.

10   Q.   If you remember, were there other FBI

11   agents there?

12   A.   It's hard to say.  It's been a while.

13   Q.   I'm not testing you.

14   A.   I'm sure there was.  I'm not too -- I can't

15   remember, to be honest with you.

16   Q.   And are you sure there was, or you just

17   don't remember?

18   A.   I just don't remember.

19   Q.   I just want to be fair.

20   A.   No, that's fine.

21   Q.   Were there assistant U.S. Attorneys in the

22   room at this meeting, if you remember?

23   A.   I would have to say there was, but I just

24   don't remember, to be honest with you.

25   Q.   In your investigation of the Garza murder

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

```
 1   or your connection with this case at all, did you --
 2   and "you" being the New Mexico State Police -- did
 3   you cultivate any cooperators who would testify in
 4   the Castillo and Garza murders?
 5        A.   I think there was a gentleman that I had
 6   interviewed.  He was also, you know, at the prison at
 7   the time of the incident.  I believe it was a Mr. Ray
 8   Molina and, I remember interviewing him, and I
 9   believe he was willing to testify at the time to what
10   he observed and what he heard.
11        Q.   Okay, so Ray Molina.  And then I guess
12   Leonard Lujan would be a second?
13        A.   Correct.
14        Q.   So anyone else -- in the whole time you
15   worked on this case, anyone else besides Ray Molina
16   and Leonard Lujan?
17        A.   No.  They were the only two.
18        Q.   So anytime in your investigation in this
19   case, including your meetings with the district
20   attorney's office and your meeting with the FBI where
21   there may have been AUSAs there, did you ever hear
22   anyone say that you should intentionally delay
23   prosecution of the Garza and Castillo murders to gain
24   a tactical advantage?
25        A.   No.  Of course not.  Never.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.    Did you ever hear anything like that?

 2          A.    No, sir.

 3                MR. BECK:  No further questions, Your

 4    Honor.

 5                MR. BURKE:  No redirect.

 6                THE COURT:  Okay.  Nobody else has any

 7    redirect?

 8                All right, Mr. Gonzalez.  You may step

 9    down.

10                Is there any reason that Mr. Gonzalez

11    cannot be excused from the proceedings?

12                MR. BURKE:  He can be excused, Your Honor.

13                THE COURT:  Mr. Beck, can he be excused?

14                MR. BECK:  He may.

15                THE COURT:  Not hearing any objection,

16    you're excused from the proceedings.  Thank you for

17    your testimony.

18                All right.  Where do we want to go next?

19    We've still got a couple of witnesses, 104s, left?

20                MS. ARMIJO:  Your Honor, I know that Mr.

21    Lucero and his attorney, Mr. Fallick, are here.

22                THE COURT:  Yes, I saw Mr. Fallick come in

23    the back of the courtroom.

24                MS. ARMIJO:  They are here.

25                THE COURT:  Do you want to do that next?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  That makes sense, Your Honor.
 2              THE COURT:  Does that sound right?
 3              So I keep my records together, the Exhibit
 4    C that the defendants introduced on its motion to
 5    dismiss -- that's a big exhibit; right?  That's a big
 6    one?
 7              MR. CASTLE:  Yes.
 8              THE COURT:  All right.  Mr. Fallick, why
 9    don't you come on in the well here a second and we'll
10    talk a bit and get everybody on the same page.
11              What I understand is that you've sent a
12    redacted transcript to Mr. Castle.  Can you tell
13    me -- I don't want you to reveal the redactions, but
14    is it like just a few things?  Is it big things?
15    What, kind of, is the nature of the redactions that
16    you had?
17              MR. FALLICK:  The redactions all had to do
18    with family members and locations, discussions during
19    sentencing about those.
20              THE COURT:  Would you say it's like a few
21    lines, or is it pages and pages?
22              MR. FALLICK:  It's pages and pages.  There
23    are discussions where Mr. Winterbottom was in the
24    courtroom with Your Honor about the options for Mr.
25    Lucero's release, you know, where he was going to be
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                      1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    released to, under what conditions; is it going to be
 2    with family, is it going to be with the halfway
 3    house?  And there were some extensive --
 4              THE COURT:  It was more on the 216 than on
 5    the supervised release on 217?
 6              MR. FALLICK:  And there were things on the
 7    317, as well.  There were discussions about location.
 8              THE COURT:  Let me see -- that nature of
 9    stuff, defendants okay with those redactions?
10              MR. CASTLE:  Yes, Your Honor.
11              THE COURT:  So y'all had the transcript,
12    you felt like you got what you needed out of the
13    transcript?
14              MR. CASTLE:  I haven't looked at it, but --
15    until we had a decision I didn't want to look at it.
16    But I trust that Mr. Fallick has made appropriate
17    redactions.
18              THE COURT:  So the nature of those are okay
19    with everybody?  All right.
20              So anything else we need to discuss before
21    we put Mr. Lucero on the stand?
22              MR. FALLICK:  No, sir.
23              THE COURT:  All right.  Mr. Beck?
24              MR. BECK:  I think we need to know what
25    he's being offered for, and what is proffered.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  All right.  Why don't, Mr.
 2    Castle, you educate me a little bit or remind me a
 3    little bit as to what Mr. Lucero's testimony goes to.
 4              MR. CASTLE:  I'm going to do this in a way
 5    that I don't make a statement that might influence
 6    the witness.
 7              THE COURT:  All right.  Mr. Lucero, why
 8    don't you do this?  Why don't you step right behind
 9    that door right there, so we can have a robust
10    discussion here about your possible testimony without
11    you hearing it.
12              You can go either place, Mr. Fallick.  You
13    can go with him or stay here.
14              (Mr. Lucero left the courtroom.)
15              MR. CASTLE:  Your Honor, in motion number
16    1909 we indicated in paragraph 15 the basis of our
17    calling Mr. Lucero.  Mr. Lucero had participated in
18    some interviews with law enforcement.  During those
19    interviews, or at least some of those interviews, he
20    indicated that Christopher Chavez and Joseph Gallegos
21    admitted their involvement in the murder of Mr. Garza
22    after the murders happened, sometime afterwards.  I
23    can't place a date on it because the 302s are not
24    very specific as to when that happened.
25              My questions will be whether he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    implicates -- whether they implicated Billy Garcia;

 2    and if not, then my questioning ends.  If the answer

 3    is, yes, they did implicate Billy Garcia, then I'm

 4    going to explore the circumstances surrounding it to

 5    determine whether it meets the 804(b)(3) exception.

 6              THE COURT:  Okay.  All right.  So this is

 7    one you're trying to squeeze into a statement against

 8    interest, Mr. Beck?

 9              MR. BECK:  I don't know what the statements

10    are, but it sure sounds like it.

11              THE COURT:  Okay.  All right.  So anything

12    else?  If not, why don't we go ahead and bring Mr.

13    Lucero back in and put him on the stand.

14              (Mr. Lucero entered the courtroom.)

15              THE COURT:  All right, Mr. Lucero, if

16    you'll come on up to the witness box, before you're

17    seated, Ms. Bevel, my courtroom deputy, will swear

18    you in.

19                   LEROY LUCERO,

20        after having been first duly sworn under oath,

21        was questioned, and testified as follows:

22              THE CLERK:  Please be seated.  Would you

23    state your name and spell your last name for the

24    record?

25              THE WITNESS:  Leroy Lucero.  L-U-C-E-R-O.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  All right.  Mr. Lucero, Mr.
 2   Castle.
 3                    DIRECT EXAMINATION
 4   BY MR. CASTLE:
 5       Q.   Mr. Lucero, my name is Jim Castle.  I'm one
 6   of the attorneys for Billy Garcia.  I just have a few
 7   questions about a pair of murders that happened back
 8   in 2001 at the Southern New Mexico Correctional
 9   Facility.  Specifically, do you know an individual by
10   the name of Christopher Chavez?
11       A.   I decline to answer based on the
12   constitutional right not to be a witness against
13   myself.
14            MR. CASTLE:  Okay.  May I inquire if the
15   Government has given him immunity at this point?
16            THE COURT:  All right.  Mr. Beck, does he
17   have any immunity?
18            MR. BECK:  I don't believe at this point we
19   have provided him a Kastigar letter and adequately
20   debriefed him to have the protection.
21            THE COURT:  So there is neither a Kastigar
22   or any other type of immunity that has been given to
23   him yet?
24            MR. BECK:  He does not.
25            THE COURT:  Mr. Fallick, why don't you talk
```

SANTA FE OFFICE                                             MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                           1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1    to him just a second and see if there's any problem
 2    with this particular question.  If there is, then
 3    I'll make a call.  But why don't you talk and see if
 4    on this particular question there is any problem.
 5              MR. FALLICK:  We have talked about --
 6              THE COURT:  You have talked, and you are
 7    instructing him not to answer this question?
 8              MR. FALLICK:  Yes, Your Honor.  The
 9    discovery that we've been provided shows that there
10    is at least some evidence of Mr. Lucero having
11    communications that could be viewed as
12    conspiratorial.  We deny that there is any criminal
13    activity, but at the same time, any answer to knowing
14    any of these defendants or anything involving the
15    gang could be a brick in the wall towards
16    incrimination of Mr. Lucero, and I would ask him not
17    to answer that question.
18              THE COURT:  You're going to follow that
19    advice, Mr. Lucero?
20              THE WITNESS:  Yes, sir.
21              THE COURT:  Well, I don't know the
22    intricacies enough of this particular issue, but I
23    guess I could see how, having read enough 302s, that
24    this might incriminate him.  So I'm inclined to
25    sustain the privilege.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        MR. CASTLE:  Your Honor, I'm a criminal

2   defense lawyer.  I understand why the Fifth Amendment

3   is being interjected at this point, and I would do

4   the same, and I think it's a fair claim at this

5   point.

6        THE COURT:  All right.  Do you have other

7   questions you want to pose to make a record?

8        MR. CASTLE:  No, they're all going to be

9   the same.  I'm just going to ask that we do the 104

10  hearing with Mr. Lucero after he is given immunity.

11       THE COURT:  All right.  We'll put that on

12  hold.

13       Anyone else need to do anything as far as

14  Mr. Lucero?  Mr. Burke?  Anybody else?

15       MR. SOLIS:  It all depends, for us.

16       MR. BENJAMIN:  Mr. Gallegos would simply

17  join Mr. Castle's request, Your Honor.

18       THE COURT:  Mr. Beck, I assume there's

19  nothing you need to ask him?

20       MR. BECK:  No, Your Honor.

21       THE COURT:  All right, Mr. Lucero, you

22  may -- hold on just a second.

23       MR. CASTLE:  Yes, Judge, I've been tipped

24  off by a colleague, Mr. Blackburn, I should ask one

25  follow-up question.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.
 2    BY MR. CASTLE:
 3         Q.   Mr. Lucero, if I were to ask you any more
 4    questions that related at all to the 2001 murders,
 5    would you be reading the same document that you just
 6    read claiming the Fifth Amendment?
 7         A.   Yes, sir.
 8              MR. CASTLE:  Thank you.
 9              THE COURT:  All right.
10              Mr. Lucero, you may step down.
11              Is there any reason Mr. Lucero cannot be
12    excused from the proceedings at this point?
13              MR. CASTLE:  At this point --
14              THE COURT:  Today.
15              MR. CASTLE:  -- I think his attorney said
16    that he would accept subpoenas, but I don't know if
17    that still exists.
18              THE COURT:  Is that still an offer on the
19    table, Mr. Fallick?
20              MR. FALLICK:  What I said was Mr. Lucero
21    was -- personal service wasn't required.  I'm
22    assuming if I'm going to be his counsel throughout,
23    I'll do it.  But otherwise, Mr. Lucero had agreed --
24    actually that was if he didn't have to come here
25    today.  But let me ask him about it.  I don't think
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    there is going to be a need to personally serve him
 2    again, but we hadn't discussed it in this context;
 3    only in the context of not having to appear today.
 4              THE COURT:  Do you want to talk to him
 5    right now?
 6              (Mr. Fallick and Mr. Lucero conferred.)
 7              MR. BECK:  Your Honor, the United States
 8    would request, based on earlier things that we've all
 9    been party to in the last week here, that Mr. Lucero
10    be provided an attorney by the Court.
11              THE COURT:  Well, Mr. Fallick is his
12    attorney.
13              MR. BECK:  Or stay on as his attorney.
14              MR. FALLICK:  As long as the Court will --
15              THE COURT:  After Mr. Winterbottom got off,
16    I put Mr. Fallick on.  That's my memory; right?
17              MR. FALLICK:  Yes.
18              MR. BECK:  I just wanted to make sure.  I
19    know we had discussions about his supervision
20    terminating here, either this week or in the next
21    couple of days, and that Mr. Fallick should probably
22    stay on.
23              THE COURT:  You agree to stay on in the SNM
24    cases?
25              MR. FALLICK:  Yes.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                              1-800-669-9492
                                                    e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1                  THE COURT:  So we'll continue to pay any
 2       vouchers or anything for his continued
 3       representation.
 4                  MR. FALLICK:  Yes, I'll agree to accept
 5       service.
 6                  MR. CASTLE:  Thank you.
 7                  THE COURT:  All right.  Anything else?
 8                  All right.  Mr. Lucero, you are excused
 9       from the proceedings.  Thank you for your testimony.
10                  All right.  What else do we want to take
11       up?  Mr. Castle?
12                  MR. CASTLE:  We don't have any more
13       witnesses for the morning session.
14                  THE COURT:  So are you done with witnesses?
15                  Goodbye, Mr. Fallick.
16                  Do you have any more witnesses today?
17                  MR. CASTLE:  We do have more witnesses
18       today.
19                  THE COURT:  We've got one more 104?
20                  MR. CASTLE:  We have -- I'm not sure,
21       Judge.
22                  THE COURT:  But you don't have any
23       witnesses right at the present time?
24                  MR. CASTLE:  Well, we could call Detective
25       Acee -- I mean Agent Acee.  It's going to take a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    while with him.
 2              THE COURT:   What's your pleasure?
 3              MR. CASTLE:   I think we should take a lunch
 4    break and come back fresh.
 5              THE COURT:   Is that what you want, Mr.
 6    Beck?
 7              MR. BECK:   I would be just as inclined to
 8    have Agent Acee go on the stand and see if we can
 9    push through.   I'll leave it at the pleasure of the
10    Court.
11              THE COURT:   We're not going to push more
12    than 1:30.   Is that what you wanted?
13              MR. BECK:   Yes, Your Honor.   Yes.
14              THE COURT:   And you're hungry, Mr. Castle?
15              MR. CASTLE:   That is one thing I enjoy.   I
16    know that comes as shock to everyone in the
17    courtroom.
18              THE COURT:   Well, it's hard to get
19    everybody assembled here.   Why don't we plow out a
20    little bit more?   It will make the afternoon a little
21    bit more pleasant.   So we'll get you in the routine
22    of what the jury liked in the last trial.
23              So, Mr. Acee, it looks like you're next.
24    If you'll let Ms. Bevel swear you in before you're
25    seated.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                      BRYAN ACEE,
 2         after having been first duly sworn under oath,
 3         was questioned and testified as follows:
 4                      DIRECT EXAMINATION
 5              THE COURT:  All right.  Mr. Acee, Mr.
 6    Castle.  And this is for purposes of the motion to
 7    dismiss?
 8              MR. CASTLE:  It is, Your Honor.
 9              THE COURT:  All right.
10    BY MR. CASTLE:
11         Q.   Agent, were you the lead agent on an
12    operation called Operation Atonement?
13         A.   Yes, sir.
14         Q.   And did that operation lead to the
15    indictments, one of which is the matter that we are
16    now hearing?
17         A.   Yes, sir.
18         Q.   There is an FBI case number assigned to
19    Operation Atonement?
20         A.   Yes.
21         Q.   A number that ends in 6239655?
22         A.   It is.
23         Q.   Do you recall when that was initiated, that
24    particular operation?
25         A.   March of 2015.  I think I did the official
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1 opening the first few days of April.  But I would

2 tell you that I opened the case in March of 2015, and

3 then got around following up with the official

4 write-ups in April.

5   Q. And the case number starts 281D; is that

6 right?

7   A. No, sir -- well, it may have.  And I can

8 tell you that the last digits you focused on are the

9 important ones.  Those first three have to do with --

10 it was a 281, before I went to the OCDETF process for

11 funding; once I obtained OCDETF approval from the

12 U.S. Attorney's Office and the Department of Justice,

13 it became a 245.

14   Q. Okay.  So, basically, those initial numbers

15 correlate to the status of the case as it goes along?

16   A. Yes, sir.

17   Q. When that operation started, was the focus

18 on some information that had come to the FBI

19 concerning a threat to certain corrections officials?

20   A. Yes, sir.

21   Q. And then did it expand after that?

22   A. Yes.

23   Q. As part of your work on that operation, did

24 you access prior FBI investigations of the SNM?

25   A. Eventually, yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   When you say "eventually," when do you
 2   think you first started to access prior FBI
 3   investigations?
 4        A.   Well, if I may, I'd classify the case in
 5   three phases:  The initial threats you mentioned.  My
 6   next focus was developing informants and doing street
 7   buys.  I put those together because, of course, the
 8   street buys lead to informants.  And then the third
 9   prong would be the historical look.  So I started the
10   historical look last -- to give you a specific date
11   is tough to do, but I will tell you that I spent
12   several months kind of pounding the pavement and
13   doing buys.  And I think we did somewhere around 80
14   or 90 drug and gun buys.
15        Q.   So the first stage was dealing with the
16   current threat, it sounds like?
17        A.   Yes, sir.
18        Q.   Then the second stage was casting the net
19   wider to develop informants?
20        A.   Yes.  And charges, yes.
21        Q.   And the drug buys were used primarily to
22   have some leverage over people who you wanted to
23   perhaps turn into informants?
24        A.   It's a secondary reality.  But I'll be
25   clear, my primary objective was to put charges on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    anybody that was S or affiliated with the S.

 2        Q.   But the end result was that because of the

 3    drug buys, you were able to develop some informants?

 4        A.   In many cases, yes.

 5        Q.   Now, in that third stage, was that when you

 6    start to access the historical investigations that

 7    both the FBI had conducted and also state and local

 8    authorities?

 9        A.   Yes, sir.  I asked for anything and

10    everything anyone had.

11        Q.   Was there a temporal scope, or was it just

12    everything on the SNM you could find?

13        A.   Dating back to 1980.  I even tried to get

14    documents related to the riot.

15        Q.   I want to focus specifically on FBI

16    investigations.  Do you recall how many separate

17    investigations you were able to access concerning the

18    SNM prior to Operation Atonement?

19        A.   Yes, sir.  And if you'll allow me to refer

20    to my notes.  In response to your Touhy letter, I

21    took a bunch of notes to answer those questions.

22        Q.   I understand.

23        A.   Would you like me to name the various FBI

24    cases?

25        Q.   Yes, that would be good.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Sure.

 2        Q.    And you don't have to give the initial

 3   lettering.   I think just the last set of numbers

 4   would probably be sufficient.

 5        A.    So the earliest case I found was the one

 6   that ends in 707:   54707.   And that was opened in

 7   2000, and closed in 2003.

 8        Q.    Let's stop there on that one.   What was the

 9   focus of that investigation?

10        A.    That is a control file, or what you heard

11   my colleague yesterday testify about as an intel

12   file.   Simply stated, it's a box for us to be able to

13   file our reports into.   So it's an intelligence file

14   on prison gangs.   And what I found in there was

15   Pedersen's reports.   I think there were 41 reports in

16   all.   And it was just a lot of adoption, him and the

17   agents then adopting what other agencies had done.

18   It looked to me like they had one informant and they

19   filed one federal case.

20        Q.    So you said it's kind of "a box."   I know

21   it's not a physical box.

22        A.    Sure.

23        Q.    But I think you're using that as a

24   metaphor.

25        A.    Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   So was this an SNM box, or was it an all
2   prison gang box?
3      A.   That was a -- that's a good question.
4   There were other gangs there.  I remember seeing Los
5   Padillos.  And I just looked at this box again the
6   other day.  I think Los Carnales, and a few other
7   gangs that I'm not as familiar with.  But there
8   definitely was an SNM component to it.
9      Q.   And you gave a specific number of reports
10   that were in that file or box?
11      A.   Yes, sir, I counted 41.
12      Q.   How many of them dealt with SNM?
13      A.   Maybe a dozen.  I'm estimating.  Many of
14   which we saw in the last couple of days in these
15   proceedings.
16      Q.   In the early litigation in this case some
17   of these boxes or files were identified for the
18   Government by the defense.  Do you recall that
19   process happening?
20      A.   I think I was responsible, or somewhat, for
21   that, yes.
22      Q.   And then after the defense was able to
23   identify certain files, then you went and located
24   them, and reviewed the contents of those to see if
25   there was anything relevant to the case at hand?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Yes, sir.   I recall driving down at least a

2   couple of times with lots of boxes for these

3   attorneys to go through.

4      Q.   Okay.   Why don't go to the next number.

5      A.   Sure.   The next one I have ends in 54711.

6   This is one of Lance Roundy's files.   And that was

7   opened also in November of 2000.

8      Q.   What was the focus of that investigation or

9   file?

10      A.   SNM, purely SNM.   And so this one starts

11   with 281, like you pointed out earlier.   So this is

12   actually a dedicated investigative file, as opposed

13   to an intelligence file.   There is a focus now.

14      Q.   Do you know how long that particular

15   investigative -- is it plan or investigative object,

16   target -- I mean, is the file open for a certain

17   length of time, I guess?

18           (Ms. Harbour-Valdez entered the courtroom.)

19      A.   It's up to the Bureau.   But I can tell you

20   that it was closed on January 11, 2007.

21      Q.   And in that file did you count how many

22   documents?

23      A.   No, sir.

24      Q.   Was there a lot of reports in there?   Or

25   can you estimate?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   I believe there was.  I know your next

2   question.  But I do want to tell you that I now have

3   all the SNM files together and all the boxes are

4   together.  And it's a lot -- it's difficult for me to

5   say how much was in that file.  I could follow up and

6   get you a specific number, though.

7        Q.   My next question is who is going to win the

8   Bucknell/Michigan State game.  So if you could

9   provide your answer to that, please?

10            So you indicated that was a dedicated SNM

11   file?

12        A.   Yes, sir.  And what I see is Roundy opens

13   up a -- subsequently opens up a new file.  My guess

14   is he hadn't been an agent for very long, so he

15   inherited that SNM file from someone else.  So then

16   he opened a new case, much like I did in 2015.

17        Q.   And that new case had a number, right, a

18   different number?

19        A.   Roundy's?  Yes, sir.

20        Q.   What number would that be?

21        A.   62017.  And that was opened September 15,

22   2008.  And that has a lot of information in it.

23        Q.   So let's go back to 54711.  Were there

24   reports in that file that focused on the 2001 murders

25   at the Southern facility?

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1        A.   Yes.  Safe to say there would have been,

2    just given the date range.

3        Q.   Now, before we move on to the other files,

4    when there is an investigation that has been

5    undertaken, does that box or that file contain

6    everything, or are there tape recordings and other

7    kinds of items that are placed somewhere else?

8        A.   I'll try to give you a real short, simple

9    answer.  Anything we, as agents, turn in has got to

10   have a case number on it.  So while the drugs may go

11   to one place, a recording may go someplace else,

12   there should be a record of all that under that case

13   number.

14       Q.   So there will be a record, like a receipt

15   or something in the file that would tell you that

16   there is something that might be in evidence

17   somewhere else?

18       A.   Yes.  All kinds of scenarios are jumping up

19   at me where there could be an exception.  But

20   generally, yes.

21       Q.   Well --

22       A.   Mr. Castle, I guess the hesitation might be

23   because so many of these cases deal with adoptions,

24   where -- I'm sure you understand that term -- where

25   we're simply taking someone else's work and putting a

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                  Albuquerque, NM 87102
(505) 989-4949                                                                              (505) 843-9494
FAX (505) 843-9492                                                                     FAX (505) 843-9492
                                                                                          1-800-669-9492
                                                                              e-mail: info@litsupport.com



1    complaint on it.

2         Q.    Right.

3         A.    Sometimes we can't always find perhaps what

4    you're referring to.

5         Q.    The best way to go about it then would be

6    to contact the agent you adopted it from and ask him

7    if there is anything that might be located at

8    different places?

9         A.    Yes.  I'll give you an example:  If I

10   adopted a drug case on a defendant, I'll keep the

11   drugs and all that stuff with the original agency so

12   I don't have to handle it.

13        Q.    So during your collection of information

14   concerning SNM, for each of the investigations that

15   the FBI had, did you follow up with the agents that

16   had done those investigations to see if there was

17   additional information, some other location other

18   than the file or the box that we're talking about?

19        A.    Eventually, yes.  Not initially when I

20   opened my case, no.  As it became apparent that

21   certain things were being sought after, as a result

22   of these hearings, then I would often do that.

23        Q.    So based on the nagging of the defense?

24        A.    Yes, sir.

25        Q.    You didn't have to so readily agree with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that characterization.
 2          Okay.  After 62017, what was the next
 3   investigation?
 4       A.  I'm actually going to go backward, because
 5   I skipped ahead to give you both of Roundy's.
 6          So the third case ends in 57713.  That case
 7   was opened in 2003 by Sonya Chavez, and closed in
 8   2011.
 9       Q.  What was the focus of that investigation?
10       A.  That was one of these intel files on all
11   gangs in New Mexico.  And there was an SNM component
12   to that file.
13       Q.  Before you go any further, would all, some,
14   or none of these investigations that we've talked
15   about and will talk about, were they part of the --
16   one of the task forces that we've heard about?
17       A.  Yes.  And I have dates of start and stop of
18   task forces for you, too.
19       Q.  Okay.  I'd asked a compound question:  All,
20   part, or none, and then your answer was yes.  So were
21   they all part of a task force investigation or focus?
22       A.  What I can say -- I'm not sure -- but I can
23   say that they were FBI investigations, and that we
24   often invite other agencies in.  But they were
25   definitely FBI investigations.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   If we could -- well, we already heard from

2   Pedersen that his was?

3     A.   Yes, sir.

4     Q.   With regard to Roundy's investigations,

5   were they part of the task force, to your knowledge?

6     A.   No.  Roundy's second case file, the one

7   that he actually opened definitely was, yes.

8     Q.   And have you contacted the task forces to

9   see if they maintained files on the SNM?

10     A.   Yes.

11     Q.   Do you feel comfortable that everything

12   they had in regard to the SNM investigations has been

13   turned over to you?  Have you gone down there and

14   looked to see?

15     A.   That's an interesting question.  I never

16   feel comfortable that we have everything, because no

17   disrespect to the Department of Corrections, but I'm

18   always finding new things with them.  I have

19   physically gone to the Department of Corrections and

20   searched with other agents, similar to serving a

21   search warrant, in order to find everything.  And I

22   always find -- thus far, I've always found additional

23   things.

24          I had to do the same thing with the

25   Bernalillo County Sheriff's Department, where we went



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   into their old file room.  And that's where I found
 2   some old letters from Angel Munoz.  I'd like to think
 3   we have everything, but unfortunately, as you well
 4   know, it's an ongoing process.
 5        Q.   Sometimes boxes are even under tables?
 6        A.   I think we remedied that with that agent.
 7        Q.   So you looked under all the tables now, the
 8   desks?
 9             (Laughter.)
10        A.   His desk was empty when he got home from
11   here.  He had nothing on his desk when he got back to
12   the office.
13        Q.   I guess there are many kinds of
14   indictments, aren't there?
15             Okay.  The next file, if we could.
16        A.   The next file ends in 59388.  That was
17   opened in July of 2005; closed a year later, April of
18   '06.  That also was a Sonya Chavez case.
19        Q.   Was that a task force focus also?
20        A.   Yes.
21        Q.   And what was the focus of that
22   investigation?
23        A.   That was purely SNM.
24        Q.   Before we go in the additional
25   investigations, it sounds like the SNM was a focus of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  the FBI since at least 2000; is that right?

2      A.   Yes.  I'd guess they probably came up on

3  their radar in the '80s and '90s.  But, as you may

4  recall from media coverage years ago, the Bureau

5  struggled with their inadequate computer system for a

6  long time.  And I think we have one now.  But I've

7  only been able to go back to -- I've only been able

8  to find these files.

9      Q.   Okay.  The reason for so many different

10 file numbers, it sounds like has something to do with

11 the various number of agents who may have worked on

12 SNM investigations over the years?

13     A.   Yes, and you'll see that, as I'm seeing,

14 that these cases overlap.

15     Q.   So it wouldn't be, I guess, accurate to

16 consider these completely separate investigations of

17 the SNM, but rather, all part of an investigation of

18 the SNM over the years?

19     A.   I think we agree that the focus was the

20 SNM.  The Bureau definitely wanted to focus on them.

21 How well we organized and shared that is maybe

22 another question.

23     Q.   But it sounds like throughout that -- at

24 least up to 2015, it seems like at least one

25 investigation or another was opened by the FBI on the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    SNM; is that right?  Does there seem to be any gaps?

2         A.   No, sir.  Because I absorbed Roundy's

3    case -- would be the one -- the second Lance Roundy

4    case, 62017, was opened in 2008.  And to this day,

5    it's technically open.  I've assigned it to Agent

6    Nancy Stemo, but we've absorbed it into Atonement.

7         Q.   And it sounds like from 2000 to 2015, there

8    was an FBI investigation open on the SNM, in which

9    one of the task forces was also involved?

10        A.   That's compound.  So I agree with the first

11   part.  There were case numbers, and they were listed

12   as open.  Whether or not somebody was actually

13   working them, I would probably disagree with that

14   part.

15        Q.   You can't work on a case every day,

16   although this one probably has been an exception for

17   you?

18        A.   I agree.

19        Q.   After the 5938 investigation, was there

20   another one that was opened?

21        A.   Yes, sir.  That would be what I just

22   mentioned, Mr. Roundy's case, 62017.  And again,

23   that's open to this day basically under Atonement.

24   Much of this has to do with the disposition of

25   evidence.  It's tough for us to close cases, so they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   stay open.  But --

 2       Q.   So if a future investigation, like

 3   Atonement, wants to access it, they'll gather the

 4   materials from a previous file, but leave the

 5   originals, or whatever, a copy behind in that

 6   previous file?

 7       A.   I took all the originals.  In this case, we

 8   made exceptions, and so we filled up filing cabinets,

 9   and we're up to eight now.  We're just moving

10   everything over so that we can respond to your

11   nagging as quickly as we can.

12       Q.   Okay, thank you.  I always appreciate it

13   when the opposition accepts my characterizations, but

14   this might be an exception.

15           Was there an investigation ending in the

16   number 62462?

17       A.   Yes, sir.  That's my next one.

18       Q.   Okay.

19       A.   That was opened in '09, closed in '12.  And

20   that's not exclusively the SNM.  That case was opened

21   down here in Las Cruces, and it was an intelligence

22   file, and it would be given dash SNM for any SNM

23   work -- should be given that.

24       Q.   So there might be the same number dash Los

25   Carnales?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        A.    Yes, sir, exactly.
2        Q.    And who is the case agent on that?
3        A.    That was a control file.  So any agent --
4    let's say you're the duty agent and someone calls in
5    a tip about the SNM, you write up a report and send
6    it to that file.  It's a catch-all file, if you will.
7        Q.    And is that file still opened, did you say?
8        A.    No, sir, it closed in 2012.  That was, I
9    think, a policy decision by the Bureau to get rid of
10   these intel files.
11       Q.    If we were to look into each of the files
12   that we've discussed, would we see records that
13   touched on the 2001 murders?
14       A.    I believe you would.
15       Q.    So would it be fair to say that the 2001
16   murders were at least a partial focus of each of
17   these investigations from 2001, I guess, till 2015?
18       A.    No, I don't think they were a focus.  I
19   just think that there is intelligence there.  Because
20   oftentimes what will happen is somebody gets
21   arrested, they want to give us information, they'll
22   say "I know who committed this murder," they'll tell
23   us about the 2001 murder, and we'll send it to that
24   file.  But I wouldn't make that file the focus, no.
25       Q.    Did the FBI -- well, in your review of the
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                            1-800-669-9492
                                                    e-mail: info@litsupport.com



 1    materials, did the FBI present the 2001 murders to

 2    the United States Attorney's Office on a number of

 3    occasions prior to the indictment in this case?

 4         A.   I know of one for sure, which I'll call the

 5    "Jack Burkhead denial" that came from Roundy.  I know

 6    other AUSAs have been involved in the case, but I

 7    don't know if we've ever actually got a formal

 8    declination.

 9              THE COURT:  I may have some of them up

10    here, Mr. Castle.  What are you looking for?

11              MR. CASTLE:  I don't know which number --

12    letter it is.

13              THE COURT:  Do you want me to just hand you

14    the exhibits and you can look at them?

15              MR. CASTLE:  Yes, Your Honor.

16              THE COURT:  Which one are you looking for?

17              MR. CASTLE:  It's the Roundy one.

18              THE COURT:  I've got them out of order.

19    I've been up here looking at them, so I apologize for

20    that.

21              MR. CASTLE:  It's R.

22              THE COURT:  Exhibit R is in there.

23              Mr. Castle, do you mind just handing that

24    stack to me?  I'm kind of looking at them.

25              MR. CASTLE:  I'm an exhibit thief from way

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    back, Your Honor, so I think that's a safe plan.
 2              THE COURT:  No, you take what you need.
 3         Q.   Let me show you what's been admitted as
 4    Exhibit R.  Do you recognize that document?
 5         A.   Yes.
 6         Q.   And is that in relation to the Burkhead
 7    declination that you were talking about?
 8         A.   Yes, sir.  And that's Agent Roundy's file.
 9         Q.   So this would have been a declination as of
10    when?  They declined to take it to the Grand Jury as
11    of when?  Or, I'm sorry, declined to indict.
12         A.   This indicates March 26, 2015.
13         Q.   So would that have been at the same time
14    you were opening up Operation Atonement?
15         A.   Yes.  I was not aware of this until later.
16         Q.   So Operation Atonement had already started?
17    Strike that.
18              When you started Operation Atonement did
19    the United States Attorney's Office know about the
20    circumstances concerning the threat to corrections
21    officials?
22         A.   If I understood you correctly, did I
23    communicate to them that that's why I was opening it?
24         Q.   No.  I'm just wondering whether the U.S.
25    Attorney's Office and the FBI both knew about this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    threat, and were proceeding together?

2         A.    Yes.   As soon as I learned about it, I

3    called Ms. Armijo, told her about it.   It does me no

4    good to open a case that they're not interested in.

5    So I wanted to make sure there was interest first.

6         Q.    So that would have been sometime in the

7    middle to early March?

8         A.    I called her from the penitentiary after I

9    read the letters, so same day.

10        Q.    Do you know when that would have been?

11        A.    That was in March of 2015.   I think mid

12   March.   And I'll be honest with you, sir, I knew very

13   little about the SNM at that point in time.

14        Q.    Had you already been in contact with Lance

15   Roundy?

16        A.    No, sir.

17        Q.    Did you know that Lance Roundy had done any

18   kind of work on the SNM?

19        A.    I did.   We had as a, like a SWAT guy, I'd

20   helped serve some search warrants on some SNM guys

21   over the years.   Roundy, though, had transferred from

22   Albuquerque -- I think -- excuse me, from Las

23   Cruces -- I think when he actually wrote this it was

24   from his new duty station.

25        Q.    If you could look at page 2 -- well,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492
                                                          e-mail: info@litsupport.com



```
 1    actually, hold on, let's stay on page 1.  There is an
 2    indication here that, "Based on discussions with AUSA
 3    Burkhead, Lujan changed his mind and decided not to
 4    cooperate after approximately seven years of
 5    cooperation."  Do you see that?
 6         A.   I do see that.
 7         Q.   In your work on the case, have you found
 8    any reports, other than this document, that reflect
 9    Mr. Lujan stating to FBI, or anyone else, that he did
10    not want to cooperate anymore?
11         A.   No, sir.  And in fact Lujan will maintain,
12    I believe, if you ask him, that that's a
13    misunderstanding, or that's not true.
14         Q.   This report, is this from Lance Roundy?
15         A.   I believe it is.  I'm going off memory.  If
16    I could look at the original, or if we could scroll
17    down, maybe on the bottom of page, 2 perhaps.
18         Q.   I think, yes.
19         A.   It certainly looks like it is.  But the
20    next page will tell us.  It was written by Lance
21    Roundy, yes.
22         Q.   So have you followed up with Agent Roundy
23    on this concept that Mr. Lujan had, I guess, backed
24    out of his agreement to --
25         A.   No, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.    -- cooperate?
 2          A.    I have talked to Mr. Lujan, but not
 3    Mr. Roundy about that.
 4          Q.    Let's go to page 3, if we could.  Are you
 5    familiar with that letter as well?
 6          A.    Yes, sir.  This was the Burkhead letter I
 7    was referring to.
 8          Q.    If we can go down to the sentence that
 9    begins with "Unfortunately" --
10                THE COURT:  This is still R?
11                MR. CASTLE:  It is still R, yes.
12          Q.    In this letter, "Unfortunately Mr. Lujan's
13    credibility is in serious doubt due to the
14    combination of his long and troubled criminal
15    background, his history of malingering, and otherwise
16    manipulating the penal system for personal gain, his
17    receipt of past consideration, and ongoing demands
18    for future consideration as quid pro quo for
19    cooperation in this case," and then it goes on.  Do
20    you see that?
21          A.    Yes, sir.
22          Q.    So in your investigation, can you tell us
23    what Mr. Lujan's history of malingering is?
24          A.    Well, I mean, that sentence describes the
25    SNM.  If you want me to be specific to him, I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    he's -- you're going to get my opinion, but I think

2    he's -- I don't want to say faked, but he's

3    malingered some medical conditions to get better

4    treatment over the years.  I don't think that's

5    unusual.

6         Q.   Has he malingered about mental health

7    conditions over the years?

8         A.   My opinion, yes.  He probably has some.

9    I'm certainly no expert, but-

10        Q.   Well, this letter says there is a history

11   of malingering.  Are there documents or materials

12   that the FBI collected that demonstrated malingering?

13        A.   Perhaps.  I mean, I'm basing that on my

14   conversations with him largely.

15        Q.   How about the part about receipt of past

16   consideration, ongoing demands for future

17   consideration?  What do you know, in your

18   investigation in this case, about Mr. Lujan's demands

19   and receipt of consideration, his quid pro quo?

20        A.   He's made no demands of me.  And I'm not

21   sure what Mr. Burkhead is saying there.

22        Q.   Your investigation ended up in Mr. Lujan's

23   indictment, right?

24        A.   I charged Mr. Lujan, yes.

25        Q.   And he's getting consideration for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    cooperating with that plea agreement; is that right?

 2         A.   Yes, sir.

 3         Q.   So he did get consideration -- perhaps

 4    didn't ask it of you, but asked it of the U.S.

 5    Attorney's Office.

 6         A.   Sure.  Much later he did, yes.

 7         Q.   So I want to concentrate on what

 8    consideration he received prior to March 26, 2015 for

 9    a second.  What -- in your investigation, what

10    consideration did he receive prior to 2015, prior to

11    March 2015?

12         A.   Sure.  Based on my review of the file, he

13    got a one-time payment of $500.

14         Q.   Okay.  And then what were his ongoing

15    demands -- let me go back a bit.  When it says

16    "ongoing commands," it sounds like he made demands in

17    the past, and also were continuing to make them as of

18    March 26, 2015; is that right?

19         A.   I don't believe so.  Better question for

20    Mr. Burkhead.  But I don't believe so.

21              One of the questions you asked me was to

22    identify the history of some of the sources.  And I

23    think one of them was Mr. Lujan.  And he has a

24    history of being open and closed.  So that might

25    address it as well.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        Q.   So in your view, all the materials that
2   have been provided to the defense, have you found any
3   evidence that says that he was making demands for
4   future consideration as a quid pro quo?
5        A.   No, sir.  I'm not sure what Mr. Burkhead is
6   saying there.
7        Q.   When did you first see this exhibit?
8        A.   In my review of the file, probably -- I
9   don't really start the historical review until into
10  the end of 2015, kind of late 2015, fall of 2015; I
11  start focusing more on the historical aspects of the
12  SNM.  And that's in preparation for writing --
13  helping prepare the language in the indictment.
14       Q.   So you received this about the end of 2015?
15       A.   I can't represent that.  I was surprised to
16  see this when I saw, it but I'm not sure when exactly
17  I saw it.  It could have been late 2015.
18       Q.   Or early 2016?
19       A.   Yes, sir.
20       Q.   Would it surprise you that the defense
21  didn't receive this until yesterday?
22       A.   Well, nothing surprises me, particularly in
23  this case.
24       Q.   And are you aware that we didn't receive
25  this until after the Court had ruled that the U.S.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Attorneys might need to come in and testify that it

 2   had analyzed this case?

 3        A.   I wasn't part of those conversations, sir.

 4             THE COURT:  Is it a good time for our lunch

 5   break, Mr. Castle?

 6             MR. CASTLE:  It always is.

 7             THE COURT:  See you in about an hour.

 8             (The Court held a lunch break.)

 9             THE COURT:  All right.  So it looks like

10   we've got all the defendants back in, all the

11   attorneys -- at least got an attorney for each

12   defendant.

13             So Mr. Acee, I'll remind you that you're

14   still under oath.  Mr. Castle, if you wish to

15   continue your direct examination of Mr. Acee, you may

16   do so at this time.

17   BY MR. CASTLE:

18        Q.   We're going to go back to Exhibit R, if we

19   can.  The last part of that sentence concerning

20   Mr.Lujan's credibility says one of the

21   characteristics that made him not a good witness was

22   that -- his history of mental health issues.  Do you

23   see that?

24        A.   Yes, sir.

25        Q.   What are, to your knowledge, his history of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  mental health issues?

2      A.   I just know that he has them.  I don't know

3  the specifics.

4      Q.   You don't know any specifics?

5      A.   No, sir.

6      Q.   And you looked at Lance Roundy's files; is

7  that right?

8      A.   I have.

9      Q.   Earlier today we heard about an audio tape

10  of an interview with James Garcia.  Do you recall

11  that?

12      A.   Yes, sir.

13      Q.   And was that a witness that was handled by

14  Agent Roundy?

15      A.   An arrestee, a defendant.

16      Q.   But the interview that we were talking

17  about that was on tape, that was with Lance Roundy;

18  is that right?

19      A.   Yes, sir.

20      Q.   Have you contacted Agent Roundy to see if

21  he recorded any other interviews that haven't been

22  turned over?

23      A.   My colleagues have.

24      Q.   Okay.  Recently?

25      A.   Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   We haven't heard back, I take it?

2        A.   I think you'll be getting some additional

3   stuff.

4        Q.   Did we finish all the various open file

5   investigations?

6        A.   I think the only one we didn't talk about

7   is mine; that would be the next sequential one.

8        Q.   In your review of the materials, when was

9   the first time that the FBI obtained reports and

10  documents from the State Police concerning the 2001

11  murders?

12       A.   At least in Roundy's 62017 file.  That one

13  is pretty robust.  And that's where I have collected

14  most of the State Police stuff.

15       Q.   With respect to the joint task forces --

16  let's start with the Southern one -- when did the

17  Southern Task Force first get materials, such as

18  reports, police reports, investigative reports on the

19  2001 murders?

20       A.   In the year 2001.

21       Q.   When your investigation encompassed the

22  2001 murders, did you take possession of the physical

23  evidence that was held?

24       A.   No, sir.  I've made efforts not to.  Where

25  I verify that it's in good hands at the state or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    local agency, I leave it there.

 2         Q.   Is that generally FBI policy?

 3         A.   It's not a specified area in policy.  It's

 4    in -- I'll just leave it at that.  It's at my

 5    discretion.  Policy doesn't dictate one way or

 6    another.

 7         Q.   I take it, then, when you don't take

 8    possession, the reason is you have a certain level of

 9    trust with the State Police to be able to maintain

10    the integrity of the evidence?

11         A.   Yes.  I will reach out and I'll verify they

12    do have it.  And I will let them know to not dispose

13    of it, if it will be needed in the future.

14         Q.   The Central New Mexico Task Force, did

15    they -- when did they first start collecting records

16    and documents concerning the 2001 murders, if ever?

17         A.   I made some more notes, again, in response

18    to your Touhy letter.

19         Q.   You may look at them.

20         A.   Thank you.

21         THE COURT:  While he's looking at that, can

22    I ask a question, on Exhibit C, the transcript that

23    is attached, is that -- do we know the name or

24    identity of that CW?

25         MR. CASTLE:  Yes, it was Toby Romero.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And actually, while we're doing that, the
 2    Government informed us he had passed away in 2009.
 3              THE COURT:  Okay.  So this, then, is more
 4    just historical for the fact when the FBI began to do
 5    its investigation --
 6              MR. CASTLE:  Yes.
 7              THE COURT:  -- and other things?
 8              MR. CASTLE:  It's just for prejudice on the
 9    concept of delay.
10         A.   So what we've been calling the Central Task
11    Force made references.  But I didn't see -- I didn't
12    find -- and I'll represent to this day that there are
13    no actual New Mexico State Police reports in that
14    file.  There are just summaries, which leads me to
15    believe they interviewed them, but didn't maintain --
16         Q.   Does that make sense because crimes that
17    occur in the Southern facility would be in the
18    jurisdictional area of the Southern task force?
19         A.   Yes, sir.
20         Q.   Are you familiar with a task force officer
21    by the name of Edgar Rosa?
22         A.   I don't believe I've ever met him.  But
23    through this case, I've become aware of who he is.
24         Q.   And what was his role in this case, meaning
25    the 2001 murders?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   I don't want to sound disrespectful to him,
2  but I don't think he had a role.  He was a Las Cruces
3  police officer assigned to the FBI.  He wrote very
4  few reports.  And I didn't note any arrests.
5    Q.   Did he develop some -- well, did he conduct
6  some interviews and develop some confidential
7  sources?
8    A.   I think he had at least one source, based
9  on the Bates numbers you asked me to review, and I
10  think that source -- and I've identified as many of
11  them as I can, but I think that he's -- twice -- it
12  sounds like it's two sources, but I think it may be
13  the same person.
14    Q.   Were you able to identify who that person
15  was?  Do you want to take a look at the document?
16    A.   Sure.  So I did all the Bates numbers you
17  sent me, I've taken a bunch of notes on, and I think
18  I've identified maybe 90 percent of the sources that
19  are talked about in here.
20    Q.   Okay.
21         THE COURT:  And this timeframe is what?
22         MR. CASTLE:  2001, I believe.
23         THE COURT:  Back to 2001.
24    Q.   Let's go to -- are these -- the identities
25  of some of these sources, have they made it through

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492
                                                         e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    the channels to the defense yet, or do you know?

2         A.   Sir, I've been working on this the last two

3    days while I've been at the table.  These were

4    previously represented to me that Corrections

5    couldn't identify them.

6         Q.   Okay.

7         A.   And I won't tell you that I have a positive

8    identification, but I can point you, based on other

9    Bates numbers in the discovery, I think you'll agree

10   with me that it's the same person.

11        Q.   Maybe to short-circuit this, to make it

12   quicker, if you could just tell us the page numbers

13   of informants that you've now identified, and the

14   Government can give us those names off the record?

15        A.   I'll read them out loud if you want.

16        Q.   Okay, that's fine.

17        A.   So you'd like me to tell you the Bates

18   number?

19        Q.   Yes, please.

20        A.   Okay.  The first one you asked me to look

21   at was Bates 133.

22        Q.   Who is that?

23        A.   I believe that's Jimmie Gordon.  I'll go

24   slowly here.  You also asked me to look at Bates

25   19128.  And he's listed as Source 13.  I think that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   is also Jimmie Gordon.
2       Q.   And --
3            MR. SOLIS:  I didn't hear the source
4   number.  I beg your pardon.
5            THE WITNESS:  Source at Bates 19128.  He's
6   called Source 13.  I think that's Jimmie Gordon.
7            MR. CASTLE:  Before we go any further, just
8   for the Court's knowledge, I'm going through this
9   process because it may alter where we go in these
10  hearings.
11           THE COURT:  So if I understand what is
12  taking place, looks like Mr. Acee has spent some
13  time, and he may be able to identify some of the
14  people that y'all have identified, or you had said
15  could no longer be identified as CIs and CWs in some
16  of the old materials.
17           MR. CASTLE:  Yes, exactly.  And I don't
18  know if the Court wants us to do this off the record.
19  But I'm not going to want to call a CO that their
20  sole purpose is to establish the exculpatory nature
21  of a particular piece of paper, when --
22           THE COURT:  It's your call.  Looks like
23  we're making some progress, whether it can be made
24  outside or off.  But it's your call.  Do what you
25  want.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. CASTLE:  We'll just go forward then.

 2       A.   I think you can verify that.  Look at Bates

 3   507.  I'll submit to you that that's where I found

 4   that this is the same person.

 5       Q.   Okay.  Who is the next one?

 6       A.   Bates 600.  This is Augustine Saenz.  And

 7   he comes up quite a bit in here, so we'll come back

 8   to that.  I'll also point out that the redaction at

 9   the top of that page is not a source number.  It's

10   the date; it just doesn't have dashes in it.  So the

11   date is 4/30 of 2001.

12            On Bates 605 -- I saw this on the screen

13   earlier -- this is Rosa's source.  I don't know who

14   this is, and I don't believe it's a good source.

15   Everything else in here is unfounded.

16            And then they cite this same source again

17   in 722.  Bates 722 is the next one you asked me to

18   look at.  This is largely unfounded information the

19   source is providing.

20       Q.   Well, right now, if you can, just confine

21   to the identities of sources.  Then we can go back

22   and we can ask some questions about the unidentified

23   ones.

24       A.   Sure.  You got it.

25            There was a lot of discussion at Bates
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    14210 about Source A, or Source 1-A, this is

2    Augustine Saenz.  It closely relates to Ray Molina's

3    statement and Willie Amador's.  But I rule those guys

4    out because he lists them as suspects, so he wouldn't

5    put himself in there.  And this statement matches

6    Augustine Saenz.

7        Q.  Well, just for a moment, many times I've

8    seen in various 302s or interviews where the source

9    is unidentified, and then they put the name of the

10   source as -- in the statement, so as to not reveal

11   who the source is; is that correct?

12       A.  We definitely do that.  I've not seen

13   Corrections Department do that.  And I will point you

14   to the Bates numbers where -- what I think added to

15   the Corrections -- the misunderstanding here -- is

16   you'll find in discovery -- which I found just in the

17   last few days, where the Department of Corrections

18   interviews these guys' true inmate name, inmate

19   identification.  Then, when they want to do

20   disciplinary on one of the defendants, they call them

21   Source 1, 2, 3, 4.  But the statements match up

22   verbatim.

23       Q.  So at least the FBI -- let's go through

24   kind of an example.  If I'm a confidential source and

25   I've committed a crime with Mr. Cooper --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. COOPER:  No.
 2       Q.    -- and I come forward and blame him for it,
 3  and you put that in a report, you might say:  The
 4  source said Mr. Cooper and Mr. Castle were involved
 5  in a crime, and he blamed Mr. Cooper, right?
 6       A.    I don't like that scenario.  But, yeah,
 7  essentially.  It would be more if you guys could
 8  figure it out too quickly.  But we do that to buy
 9  time because, as you well know, they're going to read
10  the complaint, and we want to just buy more time
11  before -- but yes.
12       Q.    And you haven't seen an example of that in
13  the Department of Corrections' reports that you're
14  aware of?
15       A.    Not the ones you asked me to review, no.
16       Q.    Or any that you can recall?
17       A.    No.  They're just not that sneaky, or
18  they're not thinking that far ahead.  They're simply
19  putting a source number down when they want to give
20  one of these guys a disciplinary justification.
21       Q.    Let's go to the next one.
22       A.    The next one is going to have a bunch of
23  them.  It's at Bates 19127.  I'll start at the top of
24  the page.  Source 5 is Joseph Otero.
25       Q.    How did you determine that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1       A.   His statement matches verbatim, that he

2   gives to Corrections.

3       Q.   Which statement of his?

4       A.   The post-homicide statement.  And

5   everywhere else on the page I've noted where you can

6   find it on the Bates, but I just found this one just

7   before the lunch break, so I didn't know where the

8   Bates number is.  I think it's going to be around

9   Bates 500, in that area.  There is a bunch of

10  interviews with inmates in the Bates 500 series.

11      Q.   Well, let me show you Bates page 1222.  If

12  we can pull that up.  Does that appear to be the

13  interview you're talking about with Mr. Otero?

14      A.   No.  But that's Otero, too, because he says

15  he's his neighbor and he's not SNM, but he's from Los

16  Padillas, and that's Otero.  He was the only Los Pa

17  guy in there.

18      Q.   And in this report of Mr. Otero's statement

19  does he indicate that he knows anyone who committed

20  the murder of Garza, or can provide information on

21  who killed Garza?

22      A.   No, the material I'm reading does not.

23      Q.   Have you talked to Joseph Otero?

24      A.   No.

25      Q.   Let's go ahead and pull up 19127 that

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    you've identified as Joseph Otero, if we could, on

2    the screen.

3         A.   Mr. Castle, do you want me to find where it

4    correlates?

5         Q.   I may in a minute.

6         A.   I was going to say I have it over there.

7         Q.   I believe you said Source No. 5, which is

8    the top here, was Mr. Otero; is that right?

9         A.   Yes, sir.

10        Q.   And that was disclosed to the defense this

11   morning?

12        A.   I think I'm telling you now.  I don't know

13   if you knew before this.

14        Q.   Whoever Source 5 was says he knows who

15   killed Garza:  Patterson, Eugene Martinez, and

16   Christopher Chavez; is that right?

17        A.   Yes.

18        Q.   So how did you look at this statement and

19   correlate it to the previous Otero statement which

20   didn't identify anyone?

21        A.   If you'll show me -- excuse me, if you'll

22   allow me, I have it in my materials.  But it doesn't

23   relate to the one you just showed me.

24        Q.   Okay.  So using this same kind of concept

25   that we used with James Garcia, those two statements

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    don't correlate, do they?

2         A.    Those two do not, no.

3         Q.    Why don't you go ahead and retrieve the one

4    that --

5         A.    I'm sorry.  I didn't tab all these.  I've

6    just been flipping through them the last few days.

7              THE COURT:  Do you need some stickers?

8              THE WITNESS:  Yes, sir, thank you.

9         A.    What I can tell you, if it helps, is that

10   it is a memo similar to the one that you provided.

11   Just -- I was kind of jotting my notes down as I was

12   sitting there, not sure when I'd be coming up here.

13        Q.    Was it an FBI 302?

14        A.    No, sir.  It was a Corrections' memo, and

15   he's clearly identified on it as Joseph Otero;

16   somebody has taken a statement from him.  The key

17   thing that helped me is the Los Padillas reference.

18        Q.    That's a street gang, right?

19        A.    Yes, sir.

20        Q.    There are lots of people in that street

21   gang?

22        A.    There is, but not in that pod.  And so I

23   had narrowed it down to two guys based on a

24   friendship; two different inmates say they were

25   friends with him.  And then he's giving a debrief

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   where he's saying that he's not SNM, he's a neighbor
 2   and he's Los Pa.  And then I found this same verbatim
 3   statement, this Source 5 statement.
 4          Q.   And are there any 302s by Mr. Otero that
 5   exist?
 6          A.   Not yet.
 7          Q.   Not yet.  Let's go to the next statement if
 8   we can, the next informant.
 9          A.   Sure.  Source 9 is Salvador Jaramillo.  And
10   you can find that at Bates 1216, the confirmation.
11          Q.   And when you were giving us Bates numbers,
12   you're saying that we should look there to see if the
13   information correlates with the information that is
14   listed under a particular source's identifier?
15          A.   To be clear, to see if you agree with me,
16   yes, this is my -- I'm not telling you absolutely,
17   but this is, based on my review, who I think the
18   sources are.
19          Q.   But that's the process you're going
20   through?
21          A.   Yes, sir.
22          Q.   Thank you.
23          A.   Source 10 is Fred Neri.  And look at Bates
24   1217.
25               Source 11 is going to be Mark Gillete.  You
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    can see Bates 1217 as well.

2            Source 12 is F. Denton Jones, D-E-N-T-O-N

3    Jones, see Bates 1217.

4            Now, we're talking about the Frank

5    Castillo -- we're at the middle of the page and it's

6    talking about Source 1 for Frank Castillo, is going

7    to be Ricardo Lopez.  Look at Bates 504.

8            Source 2 is Gabriel Sanchez, Bates 503 and

9    504.

10           Source 3 is going to be Mr. Troup.

11           Source 4 is Chris Pacheco.

12           Source 5 is Thomas Madrid.

13           Source 6 is Ralph Romero.

14           And those can all be found at Bates 505.

15           Source 7 is Michael Jaramillo.  And I'm

16   sorry, I don't list where the Bates is, but I think

17   it's also at that 500 range.

18           The next Bates number you asked me to look

19   at, or to try to determine who the source is, is 521.

20   These are the ones that Mr. Santistevan was talking

21   about.  These are a little tougher.  I've been

22   working on these this week.  And I think the first

23   one at the top of the page -- it doesn't indicate a

24   source number, but I think that's Lawrence Torres.

25       Q.   Okay.  Let's stop for just a second.  Did

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    you access Mr. Santistevan's logbook?

2         A.   I'm purely going off what I had in these

3    binders which is discovery, Bates number discovery.

4         Q.   Did you hear his testimony?  Were you here

5    when he testified?

6         A.   I was.  I was really digging in this stuff,

7    though.

8         Q.   Would you accept my representation that he

9    indicated that he kept logbooks, and he had them all

10   the way to 2016 that would give you the identity of

11   his informants?

12        A.   I'll trust you, sir.

13        Q.   And I take it that probably, after hearing

14   that, you're going to try to see if you can find

15   those logbooks?

16        A.   And we've asked for them.  To be clear, Mr.

17   Myers, Mark Myers, led that portion up, and we've

18   asked for that stuff time and time again.

19        Q.   Okay.  Let's go ahead.

20        A.   It would save me a lot of time, too,

21   looking through all this stuff.

22             So at the top of Bates 521, I think that's

23   Lawrence Torres, and that's just based on me studying

24   his statements over the years.  I can't certify that

25   that's him.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              The next three on this page are guys that
 2    I'm unable to identify.
 3         Q.   Okay.
 4         A.   So turning to Bates 19128, at the top of
 5    the page, Source 9 is Ruben Romero.  And I would
 6    suggest you would look at Bates 503 and 504.  That
 7    will match.
 8              Source 8 is going to be Ruben Garcia, also
 9    at Bates 504.
10              Source 5 -- actually, I guess the next one
11    under Allen Patterson, it's talking about the
12    suspects.  Under Allen Patterson, Source 7 is going
13    to be Ray Molina.
14         Q.   So who would Source 5 be?
15         A.   Source 5 would be Joseph Otero.  This is
16    that same -- yeah.
17         Q.   I'm sorry, who was Source 7?
18         A.   Ray Molina, Boxer.
19         Q.   Now, in confirming that was Ray Molina,
20    have you interviewed Mr. Molina?
21         A.   Not yet.
22         Q.   And is there a 302 on Mr. Molina?
23         A.   Not by my team.  I'm expecting one, but not
24    yet.
25         Q.   If it occurred, it would have happened
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    prior to 2015?

 2         A.   Yes, sir.  I'm not certain that I've seen a

 3    302.  I've seen State Police transcripts and

 4    statements.  But I don't know that I've seen an FBI

 5    one.

 6         Q.   Okay.  Let's continue.

 7         A.   Source 13, Jimmie Gordon again.  I think I

 8    mentioned him at Bates 133.

 9         Q.   Actually, let's stop with Mr. Gordon.  Do

10    you recall that Mr. Gordon indicated that an

11    individual by the name of Leroy Lucero approached him

12    with some New Mexico Corrections Department inmate

13    master record entry flyers?  Do you recall that?

14         A.   No.  Is that one of the Corrections

15    reports?

16         Q.   Yes.

17         A.   I can't say that sounds familiar.

18         Q.   Do you recall him indicating that those

19    flyers contain information on people that were

20    informants?  Do you remember any of this?

21         A.   No.  Did we talk about that this week?

22         Q.   No.

23         A.   Okay.

24         Q.   So you have never followed up on that

25    information, you don't recall it; would that be fair
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    to say?

 2         A.   Yes.

 3         Q.   Let's go ahead.

 4         A.   Source 15 has alluded me, as has Source 10.

 5    Those were the two I was working on before I got

 6    called up here.  So I'd be turning the page now.  At

 7    Bates 1253 there is not much information here, and I

 8    can't tell who it is, so I'd go on to the next page.

 9              So in this stack, sir, I'm not sure who you

10    wanted me to ID, so I just tried to ID all of them.

11    I think you asked me to review Bates 1254 through 59.

12    So I can go through each page if you want.

13         Q.   I'm just going to ask some specific

14    questions.

15         A.   Sure.

16         Q.   With regard to Jimmie Gordon, I want to

17    show you -- if we can go to page 607 of the

18    discovery -- yes, 607 -- if we can briefly go through

19    this and tell us when you want to get to the next

20    page or scroll down.

21         A.   Okay.

22         Q.   Let's go to the next page.  Do you recall

23    this being a 302 of Jimmie Gordon?

24         A.   No -- well, this is a -- this is a -- well,

25    I was trying to determine if this was a 302 or 1023.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Because of the formatting here, you can't tell.  But
 2    it's probably a 302.
 3           Q.    Shall we go back to the front page?
 4           A.    Not if it's not important to you, doesn't
 5    matter to me.
 6           Q.    This is a federal FBI form?
 7           A.    It's one of our forms, yes.
 8           Q.    And who conducted the interview, do you
 9    know?
10           A.    Can we look at the last page?  It's a 302.
11           Q.    If we go back to page 1 of -- 607 is the
12    Bates stamp number.  This appears to be an interview
13    in 2001, August 13th of 2001, does that look right?
14           A.    Yes.
15           Q.    And at that time who would have been the
16    FBI agent in this Southern Task Force that would have
17    been conducting interviews on the SNM?
18           A.    I don't know, sir, because this is Agent
19    Roundy's file.  I believe that -- because he wasn't
20    an FBI agent in 2001, he inherited it when he got
21    here.  So I couldn't tell you whose this is.  I was
22    still a parole officer in South Central LA at this
23    time.
24           Q.    I think earlier you indicated that you had
25    contacted the case agents who handled the various SNM
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    investigations over the years from the FBI.

 2         A.    As best I could, yeah.

 3         Q.    So were you able to determine who was doing

 4    the SNM investigation in 2000, 2001, all the way up

 5    until Lance Roundy took it over?

 6         A.    For the most part, but that doesn't tell us

 7    who wrote the report.   That just tells us whose case

 8    file it was.

 9         Q.    Who had the case file 54711 in 2001?

10         A.    I think it was Andrew Armijo.

11         Q.    Let's go back to the next page of this.   If

12    we can, up here at the top where it begins, "Leroy

13    Lucero," do you see that the FBI collected

14    information that Leroy Lucero was obtaining flyers on

15    other inmates and making copies of them, or having

16    this source make copies of them, and then return the

17    originals to Mr. Lucero?   Do you see that?

18         A.    I do.

19         Q.    Then it goes on to say some other things

20    about Mr. Lucero's possible involvement?

21         A.    Yes.

22         Q.    And that would be in regards to the 2001

23    murders; is that right?   Or do you want look back at

24    page 1?

25         A.    It could be in regard to the 2001 murder.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     It's good intelligence information.

2          Q.   So would it be correct that, at least as of

3     August of 2001, the FBI had some evidence, or at

4     least a source of information that indicated that

5     Leroy Lucero, at or about the times of the murders,

6     or before the murders, had been collecting at least

7     data on other inmates; is that right?

8          A.   According to this source, yes.

9          Q.   Tell me about the Southern's Task Force's

10    files on the 2001 murders.  Are we talking ten pages,

11    a hundred pages, thousands of pages?

12         A.   Probably closer to thousands, because

13    that's where Roundy was assigned to the Southern New

14    Mexico Gang Task Force, and based on my review of his

15    files, had good liaison with Corrections and State

16    Police.

17         Q.   When exactly did you say Roundy took over

18    down there?

19         A.   I think he became an FBI agent in 2008.  So

20    at that time.

21         Q.   So how many documents in the Southern Task

22    Force's files predate when Agent Roundy took over the

23    investigation?

24         A.   Seven years' worth.  I couldn't tell you

25    though.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Lots?

2    A.   Seven or eight years' worth.  Well, he more

3  than quadrupled it.  I mean, he put a lot of work in.

4  The agents before that -- again, no disrespect to

5  them, but I didn't see much work being done.

6    Q.   Okay.  If we can go to page 598.  Do you

7  recognize this document?

8    A.   I think so.  I've been looking through a

9  lot of Mr. Sprunk's stuff based on your Touhy later.

10    Q.   Mr. Sprunk was a Special Agent from the New

11  Mexico Corrections Department that was deputized and

12  made part of the FBI Task Force; is that correct?

13    A.   I don't think so.  I think he was an STIU

14  officer.  I don't know who gave him that title, and I

15  don't know that he was part of the task force.

16    Q.   Do you know one way or the other?

17    A.   Well, Corrections has told me he was an

18  STIU officer.

19    Q.   Okay.  But at least the task force was

20  collecting information from Mr. Sprunk?

21    A.   That's fair to say.

22    Q.   If we could scroll down a little bit.

23  Great.  So this is an indication at least that the

24  FBI was collecting information concerning the 2001

25  murders as early as August 13th of 2001?

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                       (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492

 

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.    I agree with you.
 2          Q.    In your review of the case, did you
 3   determine or learn that the formal investigation or
 4   the state cases against or concerning the two murders
 5   was reassigned to an Agent Venegas on April 28th of
 6   2003?
 7          A.    I've seen that.
 8          Q.    And that the reason it was reassigned to
 9   Agent Venegas was because he was going to the FBI's
10   Gang Task Force?
11          A.    That seems to be the justification.
12          Q.    In your review of the materials, does it
13   appear to you that a lot of the reports we talked
14   about, the State Police reports, had been copied and
15   made available to the FBI Task Force in 2003?
16          A.    I imagine they would have.  I've not seen
17   them in -- I don't see them until Roundy's case file.
18   But I imagine, if they've got a state police officer
19   on the task force, they'd be available.
20          MR. CASTLE:  Just taking a moment, Your
21   Honor.  I'm passing by informants we now know the
22   identity of.
23          THE COURT:  Sure.  That's fine.
24          Q.    Agent, in your review of the materials from
25   the task force -- the Southern Task Force, did you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    find that -- actually, even before the 2001 murders

2    ever occurred that the Southern Task Force was

3    provided security threat assessments for the SNM

4    Gang, specifically a 309-page document which detailed

5    the members of the gang and things of that nature?

6         A.   That doesn't jump out at me, but I can tell

7    you that the task force wasn't created until 2001, at

8    Southern.

9         Q.   Well, let's take a look at Exhibit B, if we

10   could, page 2.  Do you see here where it indicates

11   the details section the bottom of the page.  "In

12   October 2000, task force officers Andres Nevarez and

13   Edgar Rosa were provided the security threat

14   assessment on the above captioned gang."  And it

15   talks about the 309-page document?

16        A.   Yes, sir.

17        Q.   And that's an FBI form?

18        A.   This is what we call an EC, or an

19   electronic communication, yes.

20        Q.   So after seeing that now, if you look up

21   here, does it say to Albuquerque, from Albuquerque,

22   and then it says SNMGTF?

23        A.   Yes.

24        Q.   What does that stand for?

25        A.   Southern New Mexico Gang Task Force.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   So does that perhaps refresh your memory

2    that that task force was in existence in 2000?

3    A.   What this does is tells me that the agents

4    I relied upon to tell me when the task force started

5    are off.

6    Q.   Okay.

7    A.   I wasn't here then or a member of that task

8    force.

9    Q.   I understand.  I'm not blaming you.  I'm

10   just asking if that now changes your opinion of

11   what --

12   A.   Good evidence that it was in existence in

13   2000.

14   Q.   So, in essence, the SNM was already a

15   target of the FBI in 2000?

16   A.   Yes.  I mean, that's indicated to me by the

17   title of the case.  So they've opened a case on them.

18   And it's the second serial, sir, so this is the

19   second document in that file.

20   Q.   And 54711, I think you said that continued

21   for a while; is that right?

22   A.   Yes, this is the one that I said Roundy,

23   I'm assuming, inherited because it's clearly opened

24   well before he's even an agent.  Ultimately, what our

25   files show is he was the last agent assigned to it.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                            Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Now, at one point were the files on these
 2   murders given over to the New Mexico State Police
 3   Cold Case Unit?
 4        A.   The FBI files weren't, but I believe State
 5   Police's files were internally transferred.
 6        Q.   And did you or someone at your direction
 7   review the New Mexico State Police Cold Case Unit
 8   files?
 9        A.   Yes.
10        Q.   And was that a different detective over at
11   New Mexico State Police that then had the files and
12   took over the investigation?
13        A.   I'm not sure who the detective was.  I just
14   asked for everything they had on -- on my homicide
15   board I have, I think, 37 murders we're looking at.
16   So I reached out to the agencies and said, "Send us
17   everything on these cases."
18        Q.   If we can pick up at page 1215 of
19   discovery.  I think this was also represented as
20   Exhibit U.  This indicates that the murder case files
21   were relinquished to Special Agents Mackenzie Monarko
22   and Sonya Chavez, and appears to be around July 30 of
23   2008; is that right?
24        A.   Yes.
25        Q.   Were one of those files open under Sonya
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Chavez in 2008?

2         A.    She had two files open under her.

3         Q.    What about Mackenzie Monarko?

4         A.    That was her new agent.  Sonya was the

5    training agent.

6         Q.    Like Agent Stemo?

7         A.    Or Sainato or Neale, yes, similar.

8         Q.    So they don't open up their own file, they

9    just work with the lead agent?

10        A.    Yes.  She had a file open in 2008, yes.

11        Q.    At some point in time in your investigation

12   did you find out that STG files on various witnesses,

13   as well as defendants, had been destroyed on the

14   basis of the file retention policies of the

15   Department of Corrections?

16        A.    I don't think so.

17        Q.    And do you know how many years the

18   Department of Corrections keeps STG files?

19        A.    No.

20        Q.    When did you start to look for -- well, any

21   of the prior investigations, prior to Atonement, did

22   they result in the collection of records such as STG

23   files on various suspects and witnesses?

24        A.    I don't think what I would call the full

25   STG file, which shows how they were validated.  But

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                         (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492
                                                                                      1-800-669-9492
                                                                           e-mail: info@litsupport.com




BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1    there definitely was I'll it call escape flyers, or

2    the information sheets.  I noticed a lot of those.  I

3    think in Atonement was the first time we actually got

4    the actual STG files, from my recollection.

5        Q.   I think you indicated -- I know you

6    indicated that you'd interviewed or at least spoken

7    with the various agents that previously investigated

8    the SNM?

9        A.   As many as I could find, about half of

10   which are retired.  So it took a little time.

11       Q.   Did that include Andrew Armijo?

12       A.   No.  I have not --

13       Q.   He's retired?

14       A.   Sometimes these retired FBI guys are hard

15   to find.

16       Q.   That's the nature of the business.

17            So then I guess you didn't ask him if he

18   has any other materials or there would be another

19   location for materials that he had collected?

20       A.   To answer your question, I have not talked

21   to him about any of his cases.  But I can also

22   represent that he should not have them at home with

23   him or at any other place than the Bureau.

24       Q.   I understand.  But I think you said earlier

25   that if you don't talk to the actual agent, you may

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    not know where everything is, because it's not always

2    necessarily kept in that one file; is that right?

3         A.   No.  Maybe you misunderstood me, sir.  If

4    the agent does a good job documenting -- I mean, I'm

5    going to look at the 302, and if it says it was

6    recorded, then I know I'll look for a recording and I

7    know where to look.

8              But as was the case with Daffy that was in

9    here earlier, that 302 didn't say there was a

10   recording.  So I wouldn't know to go look for a

11   recording.  I can't go to a central place and just

12   say, Give me all the recordings.  If the agents

13   aren't taking the time to specify that there is one,

14   I don't know what's out there.  Does that help?

15        Q.   I understand.  So with regard to Agent

16   Armijo, without talking to him, we don't know whether

17   there is a set of audio recordings of confidential

18   informants and other witnesses that might exist

19   somewhere?

20        A.   I'll agree with you.

21        Q.   And is there some kind of central database

22   that you can access to find that out?

23        A.   No.  And I will tell you that, given the

24   computer changes we've had, finding the stuff from

25   2001 electronically has been a challenge.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                              1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1        Q.    Needle in a haystack?

 2        A.    No.  I mean, we just have to search it 10

 3   different ways to try to make sure we get everything.

 4   And that's why I think I've turned over stuff four

 5   and five times, we're seeing repetitive stuff in

 6   discovery.

 7        Q.    In your review of the 2000 investigation

 8   that Agent Armijo had for several years, did you find

 9   any audio recordings?

10        A.    I think that's the one that the -- yes,

11   that the Leonard Lujan tapes, cassette tapes, were

12   in.  Because I had to send those off to Quantico to

13   get turned into DVDs so we wouldn't have to mess with

14   cassette tapes.

15        Q.    That would have been the interview

16   conducted in August of 2007?

17        A.    Yes.  And that case file, I think, closes

18   in '07.  So I also came across some of Frederico

19   Munoz had given some recorded debriefs.  And again, I

20   sent all that stuff off for DVDs, so I did come

21   across some stuff.

22        Q.    But that would have been all in 2007,

23   towards the end of that investigation, or that file

24   at least?

25        A.    Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   So none from 2001, '02, that time period

2    that you recall?

3        A.   Not that I recall, no.

4        Q.   In your investigation of the 2001 murders,

5    did you learn that there had been videos taken of the

6    two crime scenes, the two cells where the two murders

7    occurred?

8        A.   I've seen photographs, but I don't believe

9    I've seen a video.

10       Q.   If we could pull up Bates stamp page 90.

11   Do you see that this is a report concerning the Garza

12   murder?

13       A.   Yes, sir.

14       Q.   Do you see in the second to the last

15   paragraph, "I began progressing the scene by

16   videotaping the cell's location."  And the videotape

17   being described as going through the cell's interior,

18   et cetera?

19       A.   Yes, sir.

20       Q.   In your collection of evidence did you ever

21   locate that video?

22       A.   I have not seen a video of footage of the

23   cells, and the FBI does not have that video based on

24   the material I've reviewed.

25       Q.   You would look at the video of the crime



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    scene in your investigation if you had it?
 2         A.   Yes, sir.
 3         Q.   If we can look at page 94.  And is this for
 4    the investigation of the other murder scene?
 5         A.   Yes, sir.
 6         Q.   The fourth paragraph down, do you see where
 7    it says that the second crime scene was videotaped?
 8         A.   Yes.
 9         Q.   And in your collection of materials on this
10    case did you ever locate that videotape?
11         A.   Am I missing it?  I think he just took
12    photos.
13         Q.   It says "Agent La Cuesta videotaped the
14    scene."
15         A.   I'm sorry.  Yes, it does.  I have not seen
16    that, no.
17         Q.   And the reason you'd want to review those
18    is to see if it gave you some clues as to what
19    happened?
20         A.   Yes.
21         Q.   Do you know what happened to those
22    videotapes, or the videotaped evidence?  I don't know
23    if it was digital or actual videotape back then,
24    but --
25         A.   No, not exactly.  But I want to be very
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    candid with you.  The State Police has recently

2    delivered some evidence to us that I need to review.

3    And they've also represented that -- if I heard the

4    sergeant correctly, they're still trying to locate

5    some.  And so to answer your question again, very

6    candidly, I still need to look through those

7    materials.  I have not yet seen them.

8         Q.   Can you estimate the quantity of materials

9    we're going to be receiving?

10        A.   Well, they brought it in on a dolly, and I

11   believe it's material that is in their reports.  But

12   again, I'm hesitant to tell you what's in there

13   because I haven't cracked that open.

14        Q.   Very well.  So you don't know whether there

15   is any videotapes in that crate or whatever it is

16   that's on the dolly?

17        A.   No, but it may all just be Adrian Burns

18   stuff, too.

19        Q.   Okay.

20        A.   Because I've been sitting in here with you

21   all, and I'm hesitant to dig into their evidence

22   until I can get a good chain of custody and transfer

23   it into mine.

24        Q.   And as we're sitting here today, you don't

25   know whether those videos -- well, to your knowledge

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    they don't exist anymore?

2         A.    To my knowledge, I have not seen them.

3    Whether they exist, I'm hesitant because, I mean, I'm

4    physically going out and searching these locations so

5    that I can answer these questions.  I'm taking a team

6    of agents.  I described it earlier it's like serving

7    a search warrant.

8         Q.    For our purposes, if they're not in your

9    hands, they're not in anyone's hands that's in this

10   room?

11        A.    I take responsibility for turning stuff

12   over, and I have not turned those over to the U.S.

13   Attorney's Office.

14        Q.    Would you be able -- assuming that they're

15   not to be found, is there any way you'd be able to

16   tell us whether they existed in 2002, 2003, or any

17   time all the way up to today?

18        A.    Realistically, sir, I don't think so.  I'd

19   have to open a case on it.  I'd probably have to get

20   court orders and subpoenas and search warrants, and

21   search buildings.  So I don't see that happening.

22        Q.    So if we were going to try to -- the reason

23   I'm asking this, Agent, is we're trying to figure

24   out -- the purpose of this motion is when certain

25   evidence was lost or destroyed, whether it was when

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    there was an FBI investigation, or when it was just a
2    state investigation.  I take it you can't give us any
3    information on where these tapes kind of fell off
4    from being accessed?
5         A.   I'm trying my best to, but no.
6         Q.   Have you interviewed an individual by the
7    name of Leonard Lujan?
8         A.   I have.
9         Q.   And prior to the interview with him, did
10   you review his prior interviews, the ones that he had
11   done with -- I think you said the previous agents and
12   also State Police?
13        A.   I do recall doing that with him in the
14   library of one of the facilities with his attorney,
15   yes.
16        Q.   Do you recall in one of the interviews that
17   Mr. Lujan indicated there was a videotape he was
18   shown by Warden Tafoya that showed him out in the
19   yard?
20        A.   No.  It may have happened.  I just don't
21   recall that portion.
22        Q.   Would you like it if I could pull up a
23   document to refresh your memory?
24        A.   If you have more questions about it,
25   probably.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       Q.   Okay.  Could we go to page 262.  Do you

2   recognize this as a page from a transcript of an

3   interview that Leonard Lujan had with Detective Rich

4   Lewis?

5       A.   Yes.

6       Q.   And do you see where he discusses being on

7   camera and video, and that was shown to him at around

8   the time of the murders, or actually after the

9   murders it would be.  If you need to scroll down, let

10  us know.

11      A.   Thank you.  That's good.

12      Q.   Okay.  In your investigation did you ever

13  obtain any videotape from the yard that was

14  preserved?

15      A.   No.

16      Q.   Did you investigate whether that prison

17  there, Southern prison, had video cameras in 2001?

18      A.   Yes.

19      Q.   And what did you learn?

20      A.   I talked to seven former Corrections

21  officials that worked there at that time.  Six of

22  them told me there were no cameras.  One gentleman

23  thought they had cameras, but they were live only,

24  that they didn't record.

25      Q.   Is that for the pods or for the whole

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                              1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    prison?

2         A.   Prison-wide.

3         Q.   No individual cameras at all?

4         A.   Six out of seven said none, and one thought

5    we might have had cameras, but they were just live,

6    like they didn't record.

7         Q.   Were you here when Mr. Lujan testified this

8    week?

9         A.   Yes.

10        Q.   And did you hear him -- I think it might

11   have been him who said that individuals from the

12   Department of Corrections would be on the roofs

13   taking photographs down below.  Did you hear that?

14        A.   Yes, I think so.

15        Q.   Did you find a collection of photos that

16   were taken from the Department of Corrections

17   officials in that time period?

18        A.   Not like you're describing.  The only

19   photos that I have, or have come across, are in the

20   STG files.  Or in some cases, I'll just say STIU

21   officers have had them.  They seem to be more

22   ground-based, where the guys are posing together.

23   That's the only kind of photos I've seen.  I've not

24   seen a rooftop-type photo.

25        Q.   In any of your review of discovery or any

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    kind of materials, have you ever come across

2    information that that was a practice of Department of

3    Corrections at Southern in 2001?

4         A.   No.

5         Q.   I think Mr. Lujan also said they would take

6    rooftop video down below.  Do you recall that?

7         A.   I don't.  But if they did, I've not seen

8    anything like that.

9         Q.   And you haven't seen any reports that such

10   a practice existed back in 2001; is that correct?

11        A.   Correct.  And to be clear, Mr. Castle, when

12   I asked about cameras in the facility, I didn't just

13   say wall-mounted, I was asking about the existence of

14   videos, period.

15        Q.   Top to bottom?

16        A.   Yes, sir.

17        Q.   Did the investigating officers in 2001

18   conduct examinations of inmates in the two pods where

19   the murders occurred to see whether inmates showed

20   physical signs that they'd been involved in a

21   struggle?

22        A.   In some cases, yes.

23        Q.   Well, do you recall that they did it with

24   regards to all the inmates in the two pods where the

25   murders occurred?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1      A.   Based on my review of the material, again,
2  from your Touhy letter, I'm not seeing that all of
3  the inmates were reviewed.
4      Q.   If we could go to page 18961.  About
5  two-thirds down, do you see here where -- it starts
6  here.  Well, actually, "Inmates assigned to P 1
7  green," and then if you could read down below that?
8      A.   Yes, sir.  I agree with you, Corrections is
9  saying they did it.  What I'm saying is I don't see
10  the results of it consistently.
11      Q.   So they said photos were taken of any
12  injuries identified and secured as evidence.  Did you
13  ever get those photos?
14      A.   I think we have a few in discovery, but
15  definitely not for everyone, based on my going
16  through the material.
17      Q.   And do you know what happened to those
18  photos?
19      A.   No, sir.
20      Q.   Do you recall that, at least in one report,
21  it indicated that Allen Patterson did have some
22  injuries?
23      A.   Yes, and I've seen some photos.
24      Q.   You said the photos are in evidence?
25      A.   Yes, sir.  I wrote the Bates numbers down.

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                       201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Polaroids of Patterson, I wrote, start at 19441.

2         Q.   So do you have the actual Polaroids, or

3    just a xerox copy of them?

4         A.   I'm not sure.  I'd have to get back to you

5    on that.  The quality of the photocopies is decent,

6    so maybe we have the originals.

7         Q.   I'll do some searching.

8         A.   I'll pull it up as well.  I don't think

9    that we have the originals.

10        Q.   If I could, let me show you what I have.

11        A.   Sure.

12        Q.   Is that what you're referring to, page

13   19441?

14        A.   Yes, sir.

15        Q.   Can you make out the injuries at all that

16   they're talking about?

17        A.   That's not very good picture quality.

18        Q.   I know you're not a forensic pathologist to

19   be able to look at injuries and determine what the

20   cause of them are or age or anything of that nature.

21   But would you be surprised if such an expert could do

22   that based upon a photocopy like that?

23        A.   I'd be pretty impressed.

24        Q.   You didn't collect the Polaroids; is that

25   right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   I'd like to get back to you on that.  Based

2   on the -- looks like they already had hole punches in

3   them and stuff, I'm thinking we probably didn't.  I

4   can't say for certain, though.

5        Q.   Assuming they no longer exist, and assuming

6   that the defense has gone over and looked at the

7   physical evidence that's been collected and kept by

8   the State Police, would you be able to tell us

9   that -- when those actual Polaroids might have been

10  lost or misplaced?

11       A.   No.

12       Q.   And do you know whether those actual

13  Polaroids ever made it into FBI custody prior to you

14  being on this case in 2015?

15       A.   I don't believe they have, but I can't say

16  for certain.  They were contained within the

17  materials we got from the Corrections Department.

18       Q.   Polaroids like that are actual physical

19  items of evidence; is that right?  Would they be kept

20  as physical items of evidence?

21       A.   I would.

22       Q.   And so if Agent Armijo, between 2001 to

23  2008, came into possession of them, we wouldn't know

24  where they are unless we contacted him?

25       A.   True.  However, when his case was closed,

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    as is the practice, if he's closing the case and no

2    one is getting prosecuted, they may not have been

3    retained.

4         Q.   He didn't close the case; I think you said

5    Agent Roundy adopted it?

6         A.   And then that one got closed, and he opened

7    up a new one.  So it's difficult to say.  I just want

8    to make sure I'm being real candid with you what the

9    practice is.

10        Q.   In the investigation of the 2001 murders,

11   was there evidence developed that indicated Ray

12   Molina may have been involved in the murders?

13        A.   There is some informant and early informant

14   and inmate statements to that effect.

15        Q.   Were you done?  I'm sorry, I didn't mean to

16   cut you off.

17        A.   You said "evidence," so the answer is no,

18   but there were some early-on statements.

19        Q.   Okay.  So there had been some information?

20        A.   Yes.

21        Q.   Any information that Ray Molina was an

22   enforcer for the SNM?  Do you recall that?

23        A.   Every one of these guys at one time or

24   another says they're an enforcer.  I don't know.

25        Q.   Do you recall in your investigation -- I

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                         1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                          e-mail: info@litsupport.com

1   think it came up earlier -- that there had been a

2   black shoelace that was fashioned into a noose that

3   was found in inmate Martin Chacon's cell?  Do you

4   recall that?

5       A.   Yes.

6       Q.   Have you been able to locate that --

7       A.   No.

8       Q.   -- evidence?

9            Do you recall an individual that was at the

10  Southern facility in 2001, at the time of the

11  murders, by the name of Jesse Ibarra?

12      A.   Yes.

13      Q.   Was he a Mexican national?

14      A.   I don't recall.

15      Q.   Have you interviewed him?

16      A.   No.

17      Q.   Do you recall that there was evidence -- I

18  think you now identified it as from Jimmie Gordon --

19  that said -- where Mr. Gordon overheard Mr. Ibarra,

20  Leroy Lucero, and Eugene Martinez talking about

21  assaulting other inmates shortly before the murders?

22      A.   Yes.

23      Q.   And also in that -- I think by that same

24  source, Mr. Gordon, indicated that Mr. Ibarra and Mr.

25  Lucero were part of the board at Southern.  Do you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    recall that?

2         A.    I do.

3         Q.    What did you take "the board" to mean?  Is

4    that the board of the SNM, kind of the ruling people?

5         A.    Kind of.  Yes, his understanding of that.

6    I think -- I think Lucero was a llavero.  I think he

7    was a key holder.  I think he had influence.

8         Q.    Somebody who could call shots?

9         A.    Yes.

10        Q.    And he had that power until he left the

11   facility; is that right?

12        A.    To some degree.

13        Q.    He left the facility three days before the

14   murders; is that right?

15        A.    Yes.

16        Q.    And I think -- well, in your view of the

17   reports from 2001, did you find that facility

18   logbooks and daily logbooks were collected for the

19   day of the homicide and the day before the homicide,

20   or homicides?

21        A.    There are a lot of daily logbooks in there.

22   I'm not sure if they cover both days.

23        Q.    Were you able to locate all of the logbooks

24   that were collected?

25        A.    I think I know what you're asking.  And I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     am unable to collect anything that wasn't preserved,

2     if that makes sense.  Corrections doesn't have it

3     anymore.

4          Q.   Right.  In your view of what was preserved,

5     did it appear to you that everything had been

6     preserved?

7          A.   Facility-wide, no.

8          Q.   Such as, I think there was an Officer

9     Pedraza who testified earlier in these hearings that

10    he kept a daily log of movements and things of that

11    nature.  Do you recall that?

12         A.   I'd have to look closer at them.  There are

13    a lot of logs in there.  But based on the Touhy

14    letter, I wasn't sure exactly what you were looking

15    for.  So I verified there are some there, but --

16         Q.   We were looking for what was missing.  So I

17    don't think you can locate them.

18         A.   I trust that you probably know what's

19    missing.  And I can't fill in those gaps.

20         Q.   Did you find, in 2001, that the Department

21    of Corrections were scanning and collecting mail that

22    might be suspicious at all?

23         A.   There is some evidence that they were doing

24    that, yes.

25         Q.   Did you find any that had been collected

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1    and copied?

2         A.   Yes.

3         Q.   From that time period, time of the murder?

4         A.   Depends on your definition of time period.

5    But I saw some all the way out as far as -- maybe

6    three or four months later I think there is a couple.

7    I read one this morning, again, while I was in here,

8    I think was shortly thereafter.

9         Q.   Do you recall there being a report where

10   STG Coordinator Jim Moore indicated that information

11   received through mail scans was able -- they were

12   able to develop a source that was able to provide

13   firsthand knowledge about inmate deaths at the

14   Southern facility?

15        A.   I think Moore and that crew back then did

16   develop sources who had firsthand knowledge.  But are

17   you asking was it through the mail?

18        Q.   Yes.

19        A.   I'm not aware of that.

20        Q.   I'll see if I can refresh your memory.

21   Page 725.  Do you see what we're pointing out?

22        A.   Sure.  I think that's -- do you want me to

23   comment on it, or just --

24        Q.   Well, it's not a great sentence, I

25   understand that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   I mean, that's true today, isn't it?  I

2   mean, inmate deaths at the hands of the SNM are going

3   to keep happening.  What's changed?

4      Q.   Well, I understand.  But did you find any

5   mail scans in letters that discuss murders that were

6   going to happen at Southern New Mexico Correctional

7   Facility?  Did you find any that was preserved as of

8   April 9, 2001, when this note was written?

9      A.   No, I have not.

10      Q.   So whatever mail they're talking about

11   doesn't exist at this point, at least in your

12   possession?

13      A.   Correct.

14      Q.   Do you know whether Mr. Garcia's mail was

15   scanned?

16      A.   Billy Garcia?

17      Q.   Billy Garcia's.

18      A.   I've seen letters to and from Mr. Garcia.

19   None jump out as having to do with the two homicides,

20   though.

21      Q.   How about from 2001?

22      A.   I don't believe so.

23      Q.   Phone calls were collected, or at least

24   reviewed by the Department of Corrections, the

25   recorded calls at the time leading up to and the day

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of the murder; is that right?

2          A.   They represent that, yes.

3          Q.   Did you receive any discs, tapes, or

4    anything of that nature where the phone calls were

5    preserved?

6          A.   No.

7          Q.   Now, in your investigation, was Mr. Leroy

8    Lucero interviewed this year?

9          A.   Yes.

10         Q.   Were you part of that interview?

11         A.   I was.

12         Q.   And during that interview did he talk about

13   being on the phone prior to the murders with an

14   individual by the name of Angel Munoz?

15         A.   Yes.

16         Q.   And did he indicate that during that phone

17   call he discussed the murders that were going to

18   occur?

19         A.   Yes.

20         Q.   So I take it you'd love to get ahold of

21   that phone call?

22         A.   I would.

23         Q.   But it doesn't exist?

24         A.   I've never seen anything like that.  I only

25   know about it from Mr. Lucero.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   That's the only person that confirmed that
 2   call existed?
 3        A.   Yeah, he's the only party alive still that
 4   was part of the phone call.
 5        Q.   Okay.  I think he said it was a three-way
 6   call; is that right?
 7        A.   It was.
 8        Q.   Was it through his wife or girlfriend or
 9   anything like that?
10        A.   No, I think it was another member who was
11   on the streets.
12        Q.   Okay.
13        A.   You know the transcript better than me.
14   I've got to go back and look at it.  But I thought --
15   he tells me who the guy was, but I thought it was a
16   male.
17        Q.   But not someone you've tracked down or
18   anything like that?
19        A.   The phone call?  No.
20        Q.   The third party.
21        A.   No.  I think this was before cellphones,
22   too.
23        Q.   Now, if we could go to Exhibit A.  If we
24   could go to Bates page 13866 of that, I think it's
25   five pages after the first one here.  I might be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    wrong, but do you recall that as early as 2001, the

2    Department of Corrections had agreed to make

3    available to the FBI recorded phone calls of SNM

4    members?

5          A.   Yes.

6          Q.   And did you find that the FBI followed up

7    on the collection of those phone calls?

8          A.   I don't believe they did.

9          Q.   And actually in 2001, the Department of

10   Corrections essentially said:  We'll cooperate with

11   the FBI fully, and provide whatever they need

12   regarding the SNM investigation, including the 2001

13   murders?

14         A.   Correct.

15         Q.   And the FBI didn't follow up on that?  At

16   least --

17         A.   I don't believe -- yeah, I'm going to speak

18   terribly about my agency, but I don't believe anyone

19   really cared.  I don't see the work put into the

20   case.

21         Q.   If we could go to the next page.  Do you

22   see paragraph 1 where they talk about all the things

23   that should be collected like letters, calls,

24   incident reports, prior prosecutions, et cetera,

25   Corrections' records?  Do you see all that?

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes.

 2        Q.   Do you know whether the FBI followed

 3   through on that?

 4        A.   I don't believe they did.

 5        Q.   Because you don't find it in the files?

 6        A.   That, and in talking to the agents assigned

 7   to the team back then.

 8        Q.   Did you find a copy of this Exhibit A in

 9   the Southern Task Force's materials?

10        A.   This document?

11        Q.   The plan, the investigative plan.

12        A.   I believe so.  Isn't that how we have it?

13        Q.   I have no idea.

14        A.   They would had to have turned it over.

15        Q.   I think we got it from Agent Pedersen.

16        A.   And I gave him his file, so --

17        Q.   He was at Central, not Southern.

18        A.   Right.  But I got all of the FBI files, to

19   include from archives, and I have them now.  And I

20   gave Pedersen -- he was worried about responding to

21   your subpoena, so I gave him those documents.

22        Q.   Do you recall in your review of the

23   materials that the personal data sheets of all

24   inmates assigned to the pods when the homicides

25   occurred were collected by Norman Rhoades of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    State Police?

2          A.    Yes.

3          Q.    Have you been able to see those, the ones

4    that existed in 2001?

5          A.    I think so, yes.

6          Q.    You think you have those?

7          A.    Those are what I'd call the escape flyers.

8    Are we talking about the same thing?

9          Q.    I don't know what --

10         A.    Yes.  And the reason I believe is Rhoades

11   wouldn't otherwise be able to get all the

12   biographical data that he puts on the first couple

13   pages of his report without them.  So I think they're

14   in there.

15         Q.    I want to the switch to informants that

16   were developed over the years.

17         A.    I have some notes on that, sir.

18         Q.    So you can go ahead and access your notes.

19   Were you able to identify the source at page 14210?

20         A.    Yes.

21         Q.    Who was that?

22         A.    Augustine Saenz.  Source 1A, is that who

23   you're asking about?

24         Q.    Yes.

25         A.    Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And how were you able to determine that was

2  Augustine Saenz?

3    A.   I compared his statements:  Being from the

4  same neighborhood, the same gang; that he's not SNM.

5  And then there is an FBI 302 -- I don't know what the

6  Bates number is, but it's dated 7/18/2016 -- Saenz is

7  interviewed by somebody on my team, and it matches up

8  with this information.  So I believe that that's who

9  this informant is.

10    Q.   If we could go to page 521 of discovery.  I

11  think you indicate you were able to determine who

12  source number 1 was, but not 2, 3, or 4; is that

13  right?

14    A.   Correct.

15    Q.   So specifically DFS #3?

16    A.   Yes.  I can tell you what's redacted, but

17  that doesn't tell us who the source is.

18    Q.   It's an identifier that they use; is that

19  correct?

20    A.   Yes, sir.

21    Q.   So this is an informant that stated to

22  Dwayne Santistevan that three or four days prior to

23  the killings, Leroy Lucero was telling inmates in the

24  compound they better get ready because the SNM was

25  going to clean house; is that right?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                      1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1        A.    Yes, sir.
 2        Q.    And Mr. Lucero was there at least four days
 3   before the homicides?
 4        A.    Correct.
 5        Q.    I think he might have been there for part
 6   of the third day before the homicides; is that
 7   correct?
 8        A.    Then I think he caught a bus to
 9   Albuquerque.
10        Q.    He was released?
11        A.    Yes, sir.
12        Q.    And his job then was supposed to be to take
13   over the SNM drug business on the streets?
14        A.    It depends who you -- yeah, maybe.
15        Q.    I guess there were many that wanted to take
16   over the drug business on the streets?
17        A.    Well, and -- I mean, I just say it like
18   that because it depends whose version you believe.
19        Q.    Were you able to determine who the
20   informant was at page 1257?
21        A.    Yes.
22        Q.    And who was that?
23        A.    Neri, N-E-R-I.  Mostly because it says he's
24   from New York; that's the only guy in the pod from
25   New York.  And then the information lined up as well.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   The inmate at page 27899?

 2        A.   I may be mistaken, but I don't think that

 3   was in the Touhy letter, was it?  I'm happy to look

 4   at it, but I only researched the ones you gave me.

 5             MR. BECK:  No, it's not -- we identified

 6   this is the same report and a different version as

 7   that at Bates 606.

 8             MR. CASTLE:  Okay.  Thank you.

 9        Q.   And 606 is who?

10        A.   I have 605; I don't believe I have 606.

11        Q.   Let's go ahead and pop 606 up.  Well, this

12   is the same page.  Let's just go ahead and take a

13   look at that?

14        A.   This is Rosa's mysterious guy.

15        Q.   Did you call him a mysterious guy?

16        A.   I have trouble with this informant.  I

17   mean, most of the stuff he talks about is unfounded.

18   I never see it again.  So it's hard for me to tell

19   you who this guy is because I'm ruling them out over

20   the years against other people who have given

21   statements.  Where they match up, I can tell you who

22   it is.  But in Bates 605, this is largely stuff that

23   is contradictory and unfounded.

24             THE COURT:  Mr. Castle, would this be a

25   good time for us to take a break?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1            MR. CASTLE:  Could I just finish this
 2    particular exhibit?
 3            THE COURT:  That's fine.  Go ahead.
 4        Q.  Let's look at this.  It says here that the
 5    source indicated that the killings were ordered by
 6    Angel Munoz.  Do you see that?
 7        A.  Yes.  This is not a document you had me
 8    look at.  I'm looking at 605.  I thought we said it
 9    was the same as --
10            MR. BECK:  606.
11        A.  I don't know what that is.  That's not on
12    the Touhy list.  This is 606?
13        Q.  It's the same as 606.  We'll just pull up
14    606 to be clear.  You see this is a report drafted by
15    Andrew Armijo?
16        A.  Yes, sir.
17        Q.  And this source, do you know who that is?
18        A.  I do not.
19        Q.  And is this information that you indicated
20    was not verifiable, or was that in reference to 605?
21        A.  My reference was to 605.  I'm sorry.
22        Q.  Okay.  We're going to take a break now.
23        A.  I'll look at this, sure.
24            THE COURT:  Before anybody goes, let me do
25    some speaking here.  I'm going to do a lot of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    speaking after the break so that we can use the rest

2    of the afternoon to work.  Before we leave today I've

3    been working on this James chart which has now

4    expanded into what we'll call the non James

5    statement, these sort of five plus categories.  So

6    I'll probably put them all in the same opinion,

7    because y'all used the James statement to be the

8    target.

9              So I'm putting that together.  It's not

10   done.  But why don't y'all talk, and you don't have

11   to let me know now, whether you want to see what I've

12   got.  I won't file it.  I'll simply pass it out to

13   you and we can attach it to Ms. Bevel's court

14   exhibits to her clerk's minutes, so we know what

15   we're talking about.  If you want to see what I'm

16   doing, see the progress I've made, probably the first

17   portion of it is pretty good, pretty tight.  The

18   further you get along, it's a little more ragged.

19   I'm still working on it but it will show you where

20   I'm going.  So let me know after the break if you

21   want it.

22             Second, I'm going to need to know by the

23   end of the day what it is that you want me to work on

24   when I leave for Albuquerque, that's going to help

25   you get ready for trial.  So if y'all would talk and



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                1-800-669-9492
PROFESSIONAL COURT                          e-mail: info@litsupport.com
REPORTING SERVICE

```
 1    let me know.  It doesn't have to be one thing, you

 2    don't have to agree, but just let me know what I can

 3    do when I leave here that would be most helpful to

 4    you.

 5              And third, Mr. Benjamin, is that your son

 6    back there, or was that him?

 7              MR. BENJAMIN:  That is him.

 8              THE COURT:  Is he still around?

 9              MR. BENJAMIN:  I think he's in the

10    conference room.

11              THE COURT:  Well, I'm going to take a

12    break.  If he'd like to, Ms. Bevel can bring him up

13    and he can sit in the seat, maybe give him a tour of

14    the jury room.

15              And for those of you who want to take a

16    look sometime, if you haven't done anything with

17    JERS, Jury Electronic Retrieval System, you might

18    want to take a look at it.  And it may be that even

19    the exhibits from the last trial are on there, so Ms.

20    Bevel can maybe show you that, if you haven't,

21    because we're going to use it for this trial as well

22    and if you haven't seen it -- but tell him to come on

23    up and sit in my seat, and tell him if he touches

24    anything, he has to do the work, okay?

25              MR. BENJAMIN:  There you go.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  See you in about 15 minutes.
 2              (The Court stood in recess.)
 3              THE COURT:  All right.  Looks like
 4    everybody is back and every defendant is in the room
 5    and everybody has got an attorney.  Look around, make
 6    certain.
 7              All right.  Let me go over a few things.
 8    One is let me see if y'all want the -- what I have so
 9    far, a draft of the James chart, and it will also
10    pick up the other five, although it will probably be
11    a separate chart, so you wouldn't see my work on
12    that, because I haven't worked really much on that.
13    Do the defendants, the Government, want to see it?
14    Or do you want me to just wait and get the opinion
15    out and look at it then?
16              MS. HARBOUR-VALDEZ:  The defendants would
17    like to see it, Your Honor.
18              THE COURT:  Is that all right with you, Mr.
19    Beck?
20              MR. BECK:  Yes, Your Honor.
21              THE COURT:  All right.  So I will have
22    either Mr. Hammond or Ms. Bevel make 10 copies; eight
23    will go to the defendants, and the Government will
24    get one, and then we'll attach one to the clerk's
25    minutes as exhibit.  Ms. Bevel, what will the
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                       e-mail: info@litsupport.com

```
 1   clerk's --
 2              THE CLERK:  Just call it Court's Exhibit 1.
 3              THE COURT:  Is this the first one for this
 4   hearing?
 5              THE CLERK:  I think it would be better if
 6   we call it Court's Exhibit 1.
 7              THE COURT:  All right.  For this hearing it
 8   will be Clerk's Exhibit 1 -- Court's Exhibit 1.  The
 9   first 12, 13, I've really had time to work on.  The
10   next 16 are a little ragged.  So about a third.  And
11   then after that it's very spotty, it's a lot of
12   blanks.  But some of it is stuff that's come up
13   during the hearing, and we've typed it in so we'll
14   remember it, rather than having to review all the
15   transcript.  Although we'll probably get that done,
16   even when we get that.  So remember that it's a work
17   in progress.  But it will show you what I'm doing.
18   And then, if you want to start shooting at it, you
19   can.  I know time is beginning to run out.
20              So send me letters, or however you want to
21   communicate with me about what you disagree, or what
22   you can kind of live with, expect it, or something
23   like that.
24              When I leave here tonight, what is it
25   that -- did y'all get a chance to talk about what you
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   want me to work on, continue to work on?

 2              MS. HARBOUR-VALDEZ:  I'll take that.

 3              THE COURT:  Okay.  Ms. Harbour-Valdez.

 4              MS. HARBOUR-VALDEZ:  We would like the

 5   Court to look at the bifurcation motion that was just

 6   filed.  I know the Government probably hasn't

 7   responded to that yet.  But we'd like you to look at

 8   that, as well as the motion that was filed earlier

 9   this week regarding the configuration of the

10   courtroom.

11              I understand there is going to be a meeting

12   in Albuquerque on Monday regarding the trial

13   location.  So we understand that some of those

14   decisions may have to wait.  But we'd obviously, for

15   various reasons, like to know as soon as possible

16   where we're going to be sitting and how we're going

17   to be sitting.

18              THE COURT:  Okay.

19              MS. HARBOUR-VALDEZ:  Regarding -- did you

20   want to know about future hearings, what we think is

21   outstanding?

22              THE COURT:  Well, I'll probably just leave

23   that for another day.  Y'all can talk to Ms. Bevel

24   and Ms. Wild about future hearings, and what we're

25   going to put there.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            As far as heavy lifting, what do you want
 2    me to do?  Continue to work on the evidentiary
 3    opinion?
 4            MS. HARBOUR-VALDEZ:  Yes.
 5            THE COURT:  Anything ahead of that?
 6            MS. HARBOUR-VALDEZ:  No one told me
 7    anything else.
 8            THE COURT:  All right.  Does that seem to
 9    be where you are, too, Mr. Beck?
10            MR. BECK:  Yes, Your Honor.
11            THE COURT:  The thing I can do that will
12    help y'all most get ready for trial is to finish out
13    that -- I'll call it James/probably statement against
14    interests opinion.
15            MS. HARBOUR-VALDEZ:  Yes, Your Honor.
16            THE COURT:  I'll continue to work on that.
17            All right.
18            MS. HARBOUR-VALDEZ:  Your Honor, one more
19    thing on the radar, some of us have already had
20    travel approved to come down here on March 26.  So if
21    we have follow-up hearings, it would be great if we
22    could tie them in that week so that we all don't have
23    to get another round of travel logs.
24            THE COURT:  Yeah, don't hold your breath on
25    that.  Ms. Wild told me that if I did need to come
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492
                                                                 1-800-669-9492
BEAN & ASSOCIATES, Inc.                          e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    back down here, it was most likely going to be that
 2    last week, which would be the week of the 2nd, 3rd,
 3    4th and 5th.  So I will not be available on Friday.
 4    So I will -- one of my very first law clerks is being
 5    sworn in as a Court of Appeals Judge in Arizona.
 6              MS. HARBOUR-VALDEZ:  Nice.
 7              THE COURT:  So the Governor has appointed
 8    her there, so I'm going to go over there and speak at
 9    her investiture.  So I'm not be available on Friday,
10    but those four days were what Ms. Wild had indicated
11    to me were the most likely.  But y'all can talk to
12    her about that.
13              MS. HARBOUR-VALDEZ:  Yes, Your Honor.
14    Thank you.
15              THE COURT:  All right.  Let me talk about a
16    few other things that I have thought about today as
17    we have heard evidence.  Let me talk a second about
18    Leonard Lujan.  Two things about him:  One is that if
19    you will look at the conspiracy chart that was
20    created on Tuesday or Monday, whenever Mr. Castellano
21    did it, everybody that is in the indictment is a
22    defendant in this case or a fugitive, with the
23    exception of Leonard Lujan.  And there is no evidence
24    of anybody else that has been introduced in this case
25    for a conspiracy other than his plea agreement.  So I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have been focusing this week on the statements
 2    themselves and the chart.  But before I get to that
 3    chart, I've got to make findings of fact as to a
 4    conspiracy existed and who is in that conspiracy.  I
 5    have not studied the plea agreement to figure out if
 6    all the people that were identified by Mr.
 7    Castellano -- and there were six unindicted people
 8    that were listed -- so there would be a total of 11
 9    in that conspiracy, but the problem I'm having now is
10    given the letter that we've seen from Mr. Burkhead,
11    I'm pausing about whether I can find by a
12    preponderance of the evidence that a conspiracy
13    existed, and who is a member of it.  Because all I've
14    got is his plea agreement.
15            And I've got a letter from the U.S.
16    Attorney's Office indicating that he is incredible,
17    so -- and unreliable.  So I'm pausing whether I can
18    now -- I'll go ahead and make my chart, but I don't
19    know where the evidence is for me to establish, A,
20    that a conspiracy existed on Count 1, or who are the
21    members of that conspiracy.  And it would seem that
22    that letter may come into evidence, so -- as an
23    admission, party admission.  So I think we're on
24    shaky ground right now as to the co-conspirator
25    statements that, at least on the record that I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have -- now, it may be that, you know, there are
 2    other people that are listed in the conspiracy, like
 3    Angel Munoz and Leroy Lucero and Frederico Munoz,
 4    some other people, but, you know, I -- that might be
 5    able to salvage the case.  But anyway, there is a
 6    problem there.  So as I work toward finalizing the
 7    opinion, I can continue to work on the chart, but I
 8    may have to go back, and it may get more difficult
 9    to, in the end, find the essential elements of
10    conspiracy and who was a member of the conspiracy.
11            As far as Counts 4 and 5 as to Adrian
12    Burns, like I said, I'm still in the middle of this
13    chart.  And it may be that there is a quick answer
14    for this.  But nothing has been introduced, that I
15    know of, as to a conspiracy on 4 and 5.  Now, it may
16    not be a problem because there may be no statements
17    on 4 and 5.  And so, if that's the case, it's a
18    phantom problem.  But I just point it out because, as
19    I work through the chart, if I run across any
20    statements there, I don't have any evidence of a
21    conspiracy, or who the members of the conspiracy are,
22    other than the representations of Mr. Castellano.  So
23    I'm without evidence on that.  But it may be it's not
24    a problem.
25            As to the document that was filed by the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Government last night or this morning, I know, Mr.

2    Beck, you said that it had fallen between the cracks;

3    it was something that Mr. Castellano had committed

4    to.  But I think I'm going to have to just say for

5    purposes of the James hearing, I'm going to ignore

6    it.  I don't think the Government put much effort

7    into it, so I'm not sure I ought to put much effort

8    into it, or the defendants ought to put much effort

9    into it.

10           We agreed that we were going to identify

11   additional statements by the end of the day on

12   Wednesday, I think it was.  And this came down either

13   last night or this morning.  And it just simply

14   identifies all that was in the first trial.  And like

15   I said, I don't see how any of those -- none of the

16   standards for the James hearing can be satisfied by

17   what we did in the first trial.  They're different

18   conspiracies, there is different members.  And it

19   requires an entirely new evaluation.  I don't see how

20   it can be used against these defendants.

21           So, for the present time -- and you'll

22   probably see this in the opinion -- I'm just going to

23   not evaluate those, and I will exclude those from

24   trial.  If the defendants want -- if the Government

25   wants to come back belatedly and try to insert new

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    James statements in, it can do so, but I'm not going
 2    to consider that document for trying to figure out --
 3    I'm not going to go through each one of those
 4    statements and try to figure out if they should come
 5    in.  So they will not appear on the chart.  And I'm
 6    just going to exclude all that evidence.  And if you
 7    want to come back and try to get some of those
 8    statements in, then I'll take a look at it.
 9              Let me just see if I can read my notes
10    here.  It might be good for the defendants to
11    consider sending me -- I know -- in your motions to
12    dismiss you have a chart of what evidence you don't
13    have.  It seems to me that you're picking up some
14    evidence, and that chart needs to be maybe modified.
15    Give it some thought.  I'm certainly not ordering it.
16    But it may be wise for you to look at that chart and
17    tell me what's still in and what's still out.  It
18    seems to me that we made some progress in identifying
19    some things.  And it might be helpful to me before I
20    sit down and start working on that opinion to have
21    your latest and best offer as to what you think you
22    don't have, and what your prejudice portion is.
23              I will say this:  I don't have a great
24    inclination to change my opinions earlier about the
25    motions to dismiss.  And I don't think that probably
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  I'm going to be in any position to grant those

2  motions to dismiss before trial.  So I think we're

3  looking at a trial.  But those motions to dismiss may

4  be an ongoing work and project for me as I get closer

5  to trial, and during trial, and maybe even after

6  trial.

7          But I will say this:  That I have been

8  impressed as I have looked at the documents here,

9  that there may be more meat on the bones than I was

10  giving the defendants that filed those motions credit

11  for by looking at their motions.  It seems to me that

12  the defendants have, with the hearing, made their

13  case a little stronger than what I had perceived from

14  the papers.

15          All right.  I have been alerted about the

16  bifurcation motion, and I will take a look at it.

17  But don't hold your breath.  I think I'm sort of

18  locked into, you know, trying to get us to the

19  promised land with the defendants that we have.

20          Configuration:  I will still work -- I

21  talked to Ms. Wild, and we do not have anything

22  better right at the present time.  I'll certainly

23  look at your pictures and things.  I need to study

24  your motion.  But I don't have anything better at the

25  present time.  So we'll continue to look at the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    possible arrangements.

2            I guess at the present time -- you know,

3    I've been up here paying lots of CJA vouchers, I

4    guess I think it may be a little bit late to

5    unscramble being down here.  So I do appreciate Ms.

6    Harbour-Valdez sort of giving me till Monday, because

7    I do want to meet with some people up there, and get

8    some more information and input.  But I think for the

9    present time, I certainly have seen that,

10   particularly on the defense side, where I'm looking

11   at CJA vouchers, that a lot of you have made some

12   fairly significant efforts to plan.  And so I want to

13   be sensitive to not throwing y'all into turmoil.

14           And it may just be that what I can do in

15   this space over here is about what I can do in the

16   Rio Grande courtroom.  It may be that I can't change

17   a whole lot.  So at least for the present time, I

18   think I'm planning to be down here, and you probably

19   can plan to be down here as well, just because I

20   don't want to really upset the defendants' plans,

21   which I have seen are quite considerable.

22           Now, I've seen some of them kind of being

23   thrown in turmoil by Ms. Waters and some others, so

24   it may be that it's not as difficult to unscramble,

25   and that's one thing I want to look at over the

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   weekend, is exactly what y'all's plans are.  And if I
 2   feel like I'm throwing you into turmoil, I don't want
 3   to do that.  You've got enough things to think about,
 4   rather than where you're going to be.  So for the
 5   present time plan on being here, continue to make
 6   your plans.  And chances are what I'm going to learn
 7   up in Albuquerque early next week is not going to
 8   change things.  But I do think I owe it to a lot of
 9   different levels of the court, who have worked very
10   hard to make what we do here work.  I owe it to them
11   to listen and talk, stuff like that.  So if you'll
12   give me that much of an out, I'd appreciate it.  But
13   for your planning purposes, I'm continuing to sign
14   CJA vouchers.  So I think I know that we're going to
15   be down here.
16            If you would like to speak on anything I've
17   said, or anything like that, you're welcome to do so.
18   if you want to pick up Mr. Acee, again, we can go.
19            Ms. Harbour-Valdez.
20            MS. HARBOUR-VALDEZ:  Your Honor, I spoke
21   with Agent Acee at the break about the dolly of
22   evidence that he referenced.
23            THE COURT:  He didn't say that.  I didn't
24   hear that.  There is no dolly of additional evidence.
25            (Laughter.)
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          MS. HARBOUR-VALDEZ:  We all heard it.  He
 2   anticipates that he might have an answer by Tuesday
 3   to Ms. Armijo on what it contains.  So if we could
 4   have at least until Wednesday to update that chart,
 5   we would certainly appreciate that.
 6          THE COURT:  Oh, certainly.  That's really
 7   optional on your part.  I thought it might help your
 8   motion if it was accurate.  So, yeah -- I mean -- and
 9   don't kill yourself on that, because, as you can
10   tell, I'm just -- after a week here, I'm only about a
11   third on those James charts.  And if that's my
12   primary task, then it's going to take a while.
13          When you get the chart, it will not look
14   this way probably in the opinion because I'm going to
15   probably paginate and turn around a little bit more,
16   and you'll receive an opinion, and it may be
17   formatted differently.  I need to -- I've been
18   reading the defendants' objections, but as you know,
19   a lot of those were boilerplate.  And I've been
20   trying to pick out the ones that are specific.  But I
21   need to probably do something to indicate to the
22   reader where it's boilerplate, where it's specific.
23   So when you see this chart, it may be formatted
24   differently in the opinion when I get it out.  This
25   is a draft chart.  So don't kill yourself on that,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1   because unless you tell me the motions to dismiss --
 2   but I don't think we probably ought to go there.  I
 3   think we've got to get ready for trial.  So I think
 4   you're making the right choice by sending me back
 5   working on the evidentiary issues.
 6            MS. HARBOUR-VALDEZ:  Okay.  Thank you, Your
 7   Honor.
 8            THE COURT:  All right.  Ms. Torraco first,
 9   then I'll come back to you.  Ms. Torraco.
10            MS. TORRACO:  Thank you, Your Honor.
11            I just briefly want to address the very
12   exciting topic of this dolly.  And I want to put it
13   in terms of we've asked you to take a look at the
14   bifurcation motion, which Mr. Andrew Gallegos and
15   Mr. Joe Gallegos have opposed, because we're still
16   rooting for severance.  But with the --
17            THE COURT:  Maybe I missed something.
18   What's the difference between bifurcation and
19   severance?  I guess I've been lumping those in.  Is
20   somebody making a real distinction between those?
21            MR. CASTLE:  Yes, Your Honor.  I'm talking
22   of bifurcation in the context of, we seek one jury;
23   we tell them there is going to be two portions to the
24   trial.  And we try Counts 1 through 3, and 13 through
25   16.  We tell them that Mr. Andrew Gallegos is here
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   and participating in the first trial, but there is

2   not going to be a verdict on him in the first part of

3   the trial.  We finish, we get a verdict.  And then

4   you put Counts 4 and 5, the evidence on 4 and 5,

5   instruct the jury that they can take into account all

6   the evidence in the first trial in the second part of

7   the trial.  And we get verdicts.  That would allow us

8   to have one jury, one proceeding.  The Government

9   would have not to duplicate its evidence concerning

10  enterprise, but still, for the defendants in those

11  other counts, the prejudicial damage from the 4 and 5

12  counts --

13          THE COURT:  So it's the first group that's

14  not prejudiced, not the second group?

15          MR. CASTLE:  The second group is charged

16  with 4 and 5.  So the prejudice that would inure, I

17  think, under the law, if the Court is going to

18  proceed and allow federal jurisdiction to try that

19  case, that's not unfair prejudice under the concept

20  of 403, and things of that nature.  It's prejudice

21  from the alleged acts that they're saying you did.

22          So that's the concept that I have proposed

23  for the Court.  And normally we see it in cases where

24  there is a gun aggravator that there needs be a jury

25  finding with.  But I think that same process could

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   work, and still provide the efficiencies to the
 2   Government and to the Court.  I think the only thing
 3   you would add is an additional opening or additional
 4   closing argument.  There wouldn't have to be any
 5   other evidence.
 6             THE COURT:  Okay.  Before you speak, Ms.
 7   Torraco, or I'm going to forget it:  I have pulled
 8   out of your targeted response to the James motion,
 9   Mr. Benjamin, your argument about this jurisdictional
10   issue.  Mr. Castle just mentioned it.  Is that
11   circulating?  All right.
12             (A discussion was held off the record.)
13             THE COURT:  All right.  We're about to send
14   an email to Ms. Bevel, and you're about to receive an
15   opinion here quickly on those issues.  So I pulled
16   that out because I was interested in them.  Anytime
17   people say "jurisdiction," my ears perk up.  So
18   you'll get an opinion on the three arguments you
19   raised about that, one of which is jurisdiction.
20             MR. BENJAMIN:  Thank you, Your Honor.
21             THE COURT:  I didn't know it was -- where
22   it was.  We meant to get it out this morning.  But I
23   knew it hadn't gotten out, so I wanted to tell you
24   it's coming out so you can be on the lookout.
25             MR. BENJAMIN:  I appreciate that.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  All right.  So I understand
 2     now.  You just want severance, you don't want this
 3     bifurcation?
 4          MS. TORRACO:  Right.  But I wanted to bring
 5     up the fact that we have just been informed, just
 6     learned that there is more information going to the
 7     FBI that is most likely related to the Adrian Burns
 8     matter.  And I'm concerned about my ability and my
 9     co-counsel's ability to go through what's been
10     described as a dolly.  And I can only think that if
11     the Court is one-third of the way through the James
12     chart, you can imagine how much work that we have
13     when we finally get the rest of the Adrian Burns
14     information.  So when you're looking at the fact that
15     we're about to get another huge discovery dump, for
16     lack of a better term, I do believe that goes to the
17     severance motion.
18          Thank you, Your Honor.
19          THE COURT:  All right.  I guess my
20     inclination is, let's see what's in the dolly, or the
21     materials before we change course.  Ms. Armijo?
22          MS. ARMIJO:  Your Honor, I don't think it's
23     a big mystery as to the dolly.  Defense counsel for
24     Mr. Joe Gallegos asked to see the evidence.  We made
25     inquiries with New Mexico State Police as to where
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the Adrian Burns evidence is.  We told them that the
 2    defense wanted to see it, since Agent -- I guess he's
 3    Sergeant Williamson, the former case agent, was
 4    coming down to Las Cruces, he brought the evidence
 5    from the Burns murder down here, and turned it over
 6    to the FBI.  And so that was at the request of the
 7    defense to view it, to make it easier.  Mr. Benjamin
 8    is in El Paso.  So that is the evidence that's here.
 9    I informed Mr. Benjamin about it, and it was turned
10    over to the FBI.  So I don't believe there is going
11    to be a big dolly of new evidence.  It's just the
12    evidence from the Burns case.
13              MR. BENJAMIN:  I appreciate that, because
14    that wasn't how we understood the statement.  We
15    understood it to be documents, not handcuffs and
16    stuff like that.
17              MS. ARMIJO:  I think the new dolly is the
18    evidence in the Burns case turned over to the FBI,
19    and they've already been talking to them about
20    viewing this evidence this Friday.
21              So this is not a "Joe Sainato new box of
22    evidence coming in."  This is the evidence from the
23    New Mexico State Police to the Burns murder, Your
24    Honor.
25              THE COURT:  So we're always going to refer,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the rest of our lives, to "the Joe Sainato box."
 2    Well, if we didn't have war stories, right, we
 3    wouldn't have much of a life, would we?
 4              MR. CASTLE:  Up there with Al Gore's box.
 5              THE COURT:  I don't want to make any
 6    rulings on any motions until we get a feel for what's
 7    in the dolly, the boxes.
 8              All right.  Anything else before we resume?
 9    Mr. Castle?
10              MS. ARMIJO:  Your Honor, the only other
11    thing I would add is in reference to the James
12    statements, we would ask you to consider -- I believe
13    we put more than one plea agreement in, like we did
14    last time.  Mr. Castellano put, I think, several plea
15    agreements in.
16              THE COURT:  He did, but none of them were
17    people that were -- I think, we looked at this during
18    our lunch hour.  None of them relate to the Castillo
19    murder, Count 1.  So --
20              MS. ARMIJO:  That may be true.  That may be
21    true.  But we would also ask you to take into
22    consideration, as far as the Garza, Frederico Munoz'
23    testimony today.
24              THE COURT:  Whose?
25              MS. ARMIJO:  Frederico Munoz, when he came
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   in and he testified about his conversation with Billy
 2   Garcia, and he indicated that he had wanted Mr. Garza
 3   killed as well, and that his concern was as to
 4   Mr. Garza.  But I believe his testimony referenced
 5   both murders.
 6            THE COURT:  I think you're okay on Garza.
 7   If you've got some pages on Castillo, you might get
 8   with Ms. Bean, and pull those out and send them to
 9   me.  Because I think with Garza you still got, don't
10   you have Eugene Martinez' plea agreement in there?
11            MR. BECK:  Right.
12            THE COURT:  So I think you're okay on his,
13   because of that plea agreement.
14            Now, here's the thing I don't know about
15   any of these, I just haven't had time -- and be
16   cautious.  I do work faster than one-third of the
17   James agreement, Ms. Torraco.  I've had some other
18   things going on this week --
19            MS. TORRACO:  I'm sorry.
20            THE COURT:  -- as Mr. Benjamin will find
21   out in a few minutes, he's got another opinion.  So
22   I've been working on some footnotes for Shauna
23   Gutierrez.  So I've been doing some other things.  So
24   I think -- the only reason I say that is I think I
25   can pick up speed.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MS. TORRACO:  I didn't mean that.

2              THE COURT:  No, I didn't take it that way.

3              MS. TORRACO:  I didn't mean it in a

4    disparaging way.

5              THE COURT:  I didn't take it that way.  The

6    only reason I said it is I think I can pick up speed.

7    But I have been looking back at these two.  And I was

8    going to say to Mr. Beck what I'm concerned about is,

9    I'm not sure that these plea agreements are going to

10   give me all the co-conspirators that Mr. Castellano

11   said.

12             So what you may get is you may get findings

13   of fact at the beginning of the opinion that will get

14   you a conspiracy, although I'm concerned about Count

15   1, and I'm concerned about Counts 4 and 5.  But that

16   may not be a problem, if there is no statements.  And

17   I haven't run across any yet.  But it's not going to

18   pick up all these other conspirators.  So if you are

19   going to go to trial, and these people are going to

20   testify, or you're going to try to get their

21   statements in, there is a gap.  I may have to say:  I

22   don't have any evidence of that.  Do you see what I'm

23   saying?

24             MR. BECK:  I do.  And I think we can -- I

25   mean, to the extent that that evidence doesn't come
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    in through the chart of James statements, through Mr.
 2    Lujan's plea agreement, I think it will come in at
 3    trial, through the testimony of other witnesses
 4    before any of those statements are offered.
 5            THE COURT:  Well, I think I'm going to have
 6    to put pressure on the Government to give me
 7    something in advance of that.  I think you're going
 8    to have to supplement this record in some way.
 9    Because it's not only a problem on 1, it's a problem
10    on 2, it's a problem on Freddie Sanchez as well, and
11    it's a problem on -- well, those are the big
12    problems.  On 1 it's fatal right now; 2 and 3, I just
13    don't know.  I'll have to study the plea agreements.
14    But I'll bet you they don't mention every name that
15    Mr. Castellano mentioned.
16            MR. BECK:  Right.  And I'll take a look at
17    that.  I think we've got -- I think that they're
18    identified in the other statements by Mr. Lujan.
19    That would be my expectation as to why those folks
20    are identified as co-conspirators, because they're
21    identified in Lujan's statements or in conversations
22    with other co-conspirators.
23            THE COURT:  But I don't recall -- and
24    correct me if I'm wrong -- that Ms. Stemo gave us any
25    evidence on the co-conspirators.  She gave us
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    information on the co-conspirator statements.  Do you
 2    see the difference I'm making?
 3              MR. BECK:  I do.  And I think the
 4    co-conspirator statements tied up who was in the
 5    conspiracy.  And so I'll have to go back and look at
 6    who maybe was left out there.  But I'll go back and
 7    take a look at that.
 8              THE COURT:  All right.
 9              MR. BECK:  I think that -- I mean, I
10    think -- I think the Court had a chance to see Mr.
11    Lujan yesterday.  And to the extent that the Court
12    may be entertaining the idea that Mr. Burkhead's
13    letter somehow disqualifies him as a witness, I think
14    if we take a close look at Exhibit R, we'll see --
15              THE COURT:  I guess I'm more thinking that
16    it doesn't disqualify him as a witness.  But the
17    letter may come in as an admission of a party
18    opponent, so it's going to be evidence against him.
19    But I think right at the moment what concerns me is
20    that's all I have.  And I guess I'm pausing about
21    whether I can find by a preponderance of the
22    evidence, just based on him, without any
23    corroborating evidence at all.
24              MR. BECK:  Well, I think -- I mean, I think
25    to the extent that this letter is -- it's in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   reference to a different motion.  It's not in the
 2   James evidence.
 3              THE COURT:  It's not.  But I guess we're
 4   all kind of -- we've got a bit of a stand-off here.
 5   If I allow the defendants to sort of supplement the
 6   record with Mr. Burkhead's letter, which I bet they
 7   will want me to do, I'm probably going to let you
 8   supplement the James record --
 9              MR. BECK:  Understood.
10              THE COURT:  -- to fill in these problems.
11              MR. BECK:  Understood.  I will --
12              THE COURT:  Am I presuming too much on the
13   defendants?  Do y'all want me to consider the
14   Burkhead letter as part of your James record?
15              MR. BURKE:  Yes, Your Honor.  And if it
16   would have been produced in a timely fashion, it
17   would have been attached to the motion to dismiss as
18   well.
19              THE COURT:  So I guess I feel like I
20   probably need to let them, if they want to.  Since
21   we're supplementing the record, they'll have less
22   reason to object to your supplementation.
23              MR. BECK:  Anticipating that was the case,
24   that's why I think it would be wise to look closely
25   at the letter from Mr. Burkhead.  It says -- in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    second paragraph, it says, "That a federal

2    prosecution of these homicides would in large part

3    hinge on the testimony of former SNM member Leonard

4    Lujan.  Unfortunately, Mr. Lujan's credibility is in

5    serious doubt."  So that is -- I mean, that is not

6    Mr. Burkhead's -- he's just saying that it is in

7    serious doubt.  And if we look at the reasons,

8    they're not surprising.  As Special Agent Acee just

9    testified:  A long and troubled criminal background;

10   that's the SNM.  His history of malingering and

11   otherwise manipulating the penal system for personal

12   gain; that's the SNM.  His receipt of past

13   consideration and ongoing demands for future

14   consideration as quid pro quo for cooperation in this

15   case; that's every defendant who enters a plea

16   agreement with a 5K or is opened as a federal FBI

17   source.  And the FBI pays people for their time.

18   They paid Mr. Lujan $500 for his time.  His sustained

19   use of narcotic drugs; the Court's jury instruction

20   in the last trial listed almost every single person

21   who testified from the prison as an abuser of drugs.

22   And a history of mental health issues; several people

23   in the prisons have histories of mental health

24   issues.  You heard testimony that every week they

25   visit people in segregation in the Level 6 to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   determine how their mental health is doing because
 2   they're in segregation.
 3              So none of these things are surprising.
 4   And what we heard from the jury last week --
 5              THE COURT:  Keep reading.
 6              MR. BECK:  "He is quite simply unusable as
 7   a witness, because all these concerns would be fodder
 8   for what would inevitably be a long and tortuous
 9   cross-examination that would leave him incredible in
10   the eyes of a rational fact finder."  And I think
11   that that -- I think that that is contradicted in
12   this case.  If it is a single witness with Mr.
13   Leonard Lujan, maybe that's the case.
14              THE COURT:  I think you've got to sort of
15   face the reality, that thing is going to be on that
16   screen.
17              MR. BECK:  And that does not concern me in
18   the least.  It doesn't concern me.
19              THE COURT:  Well, all I'm trying to tell
20   you is I'm pausing over whether I can find by a
21   preponderance of the evidence a conspiracy, and who
22   is in it, given the only evidence I have at the
23   present time is Leonard Lujan's evidence --
24   testimony.
25              MR. BECK:  Sure.  And I can supplement with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   his -- and what I was planning to do -- Your Honor
 2   said we should take it at a different time.  I asked
 3   at the end of Mr. Lujan's testimony whether I could
 4   supplement with entering into evidence the two
 5   recorded conversation transcripts.  Your Honor said:
 6   Wait for a separate time.  So I'll enter those in,
 7   and the Court can see that they are coherent, they're
 8   consistent, and that he tells the story that paints
 9   the picture of why the conspiracy exists.
10          THE COURT:  Well, I may need something
11   other than Leonard Lujan, if the U.S. Attorney's
12   Office is going to write a letter and say a witness
13   is "simply unusable."  Before I make findings of fact
14   based upon that, I probably need somebody else's
15   testimony.
16          MR. BECK:  And that's fine.  But what I'm
17   saying is I think that the U.S. Attorney's Office
18   could have written this for any single witness in any
19   of these trials.  Because they all have that same
20   background.  And because -- that's why I would
21   gather, I think, this has borne that out.  This
22   motion to dismiss has borne that out.  I would gather
23   that's why these cases haven't gone to trial before.
24   And perhaps -- I think we may elicit this from
25   Special Agent Acee, but --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  I guess I think it's of a
 2     different magnitude, when a U.S. Attorney says he is
 3     "quite simply unusable as a witness."  That seems to
 4     me to have -- that's just of a different magnitude.
 5              MR. BECK:  And I don't think so.  And I
 6     think we can get that testimony out.
 7              THE COURT:  All right.  Well, we've
 8     identified the problems.
 9              All right.  Anything else before we finish,
10     probably, the day with Mr. Acee?
11              MR. CASTLE:  No, Your Honor.
12              THE COURT:  All right.  Mr. Acee, I'll
13     remind you you're still under oath.
14              Mr. Castle, if you want to finish the day
15     with Mr. Acee.
16              MR. CASTLE:  Yes, Your Honor.  I have no
17     more questions, on the motion to dismiss, of Agent
18     Acee.  But I did talk to the Government -- I have
19     four exhibits that are related to the motion to --
20     the statements issue, 1909.  I think I finally got
21     the right number.
22              THE COURT:  The motion, the James motion?
23              MR. CASTLE:  Yeah, James-related motion.
24     So I want him to identify the four exhibits, because
25     a lot of the names are blacked out, so when the Court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    reads it, you'll know what the exhibits are.

 2              THE COURT:  All right.

 3    BY MR. CASTLE:

 4         Q.   Agent Acee, I told you I had no more

 5    questions.  I was wrong.  If you could look at

 6    Exhibit Z.  What is that?

 7         A.   It's a 302 that I wrote.

 8         Q.   Do you know who it relates to?

 9         A.   Yes, sir, Julian Romero.

10         Q.   It's an interview of Julian Romero?

11         A.   It is.

12         Q.   Can you look at Exhibit Y?

13         A.   A 302 that I wrote.  Do you want me to

14    figure out who I'm talking to?

15              MR. BECK:  What's the Bates number on that,

16    Special Agent Acee?

17              THE WITNESS:  It starts at 28271.

18         A.   "He pulled the paper from his sock," this

19    is Timothy Martinez.

20         Q.   Can you read the Bates page?

21         A.   42522.  Too many redactions here.

22              MR. BECK:  Is that Robert Lovato, Special

23    Agent Acee?

24              THE WITNESS:  Yes.

25    BY MR. CASTLE:

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492
                                                                   e-mail: info@litsupport.com


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

278

```
 1        Q.   And Exhibit W, is that Samuel Gonzalez?

 2        A.   Yes.

 3        Q.   And I think it's a 302 -- or, I'm sorry, a

 4   report of an interview with Samuel Gonzalez?

 5        A.   Yes, Bates 24278.

 6             MR. CASTLE:  Your Honor, I believe the

 7   parties agree that Exhibits W, X, Y, and Z would be

 8   admitted by stipulation.

 9             THE COURT:  Any objection, Mr. Beck?

10             MR. BECK:  No, Your Honor.

11             THE COURT:  Any other defendant have any

12   objection?  If not, Defendant's Exhibits W, X, Y, and

13   Z will be admitted into evidence.

14             MR. CASTLE:  No further questions.

15             THE COURT:  Anything else, Mr. Castle?

16             MR. CASTLE:  No, Your Honor.

17             THE COURT:  All right.  Mr. Burke, do you

18   have direct examination of Mr. Acee?

19             MR. BURKE:  I do.

20             THE COURT:  Mr. Burke.

21             MR. BURKE:  Thank you, Your Honor.

22                       EXAMINATION

23   BY MR. BURKE:

24        Q.   I'd like you to take a look at Exhibit V.

25   I want to go through this with you because you
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    remember that some time ago this was an important
 2    issue, and I just want to be clear on what happened.
 3    We were asking for the old FBI files.  And it looks
 4    like -- and I'm focused on the last paragraph.  It
 5    looks like you, Agent Stemo, Agent Sainato, Agent
 6    Neale, Task Force Officers Myers and Cupit, and an
 7    FBI staff operations specialist, J. Baca, accompanied
 8    the files to the U.S. Attorney's Office and conducted
 9    a complete review; that's correct, right?
10        A.   Yes, sir.
11        Q.   So you took them all down there, and
12    basically your whole team was there?
13        A.   Yes, sir.
14        Q.   And now, I'm focused primarily on
15    281D-AQ-62017.  And that was Lance Roundy's primary
16    file?
17        A.   It was.
18        Q.   And you looked through all of them, and
19    then you state, "All of the reports pertaining to the
20    SNM Gang were turned over to Assistant U.S. Attorneys
21    Matthew Beck and Maria Armijo for review"; correct?
22        A.   Yes.
23        Q.   And there is no doubt in your mind, is
24    there, that the letter from Jack Burkhead was perhaps
25    the last document in the file, wasn't it?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1       A.   Toward the end.  I think there may have

 2  been some plea or conviction stuff.  But --

 3       Q.   So the letter of declination was right

 4  there for anybody to see; correct?

 5       A.   Yes, sir.

 6       Q.   Makes no sense, does it Agent, that it

 7  would be produced to us yesterday?

 8       A.   I'm not aware of a reason.

 9       Q.   Thank you.

10            Now, when did you open your investigation,

11  which I think is 6395 or something?  When did you

12  open that one?

13       A.   Late March, early April 2015.

14       Q.   Do you think you opened your investigation

15  before this was declined and closed?

16       A.   Yes.

17       Q.   And I'm guessing, but you tell us, you

18  hadn't even seen the letter of declination, had you?

19       A.   I had not.

20       Q.   Have you seen language like "he's

21  incredible" in a letter from a U.S. Attorney before?

22       A.   No, I had not seen.

23       Q.   Yeah.  And even with respect to Timothy

24  "Red" Martinez, or "Playboy" Munoz, did you see U.S.

25  Attorneys write a letter saying that this witness is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    incredible, so the jury could be looking at it when
 2    they were testifying?
 3         A.   No.
 4              MR. BURKE:  All right.  That's all I have.
 5              THE COURT:  Thank you, Mr. Burke.
 6              Any other defendants have direct
 7    examination of Mr. Acee?
 8              All right.  Mr. Beck, if you have
 9    cross-examination of Mr. Acee.
10                   CROSS-EXAMINATION
11    BY MR. BECK:
12         Q.   Special Agent Acee, I won't hold the best
13    for last.  We should probably talk about the letter
14    from Mr. Burkhead first.  Why did you -- well, let me
15    get to this:  When you were opening this
16    investigation, March of 2015, were you working at FBI
17    in Las Cruces or in Albuquerque?
18         A.   Albuquerque.
19         Q.   Are there AUSAs in Albuquerque?
20         A.   Yes.
21         Q.   Are the majority of AUSAs in New Mexico in
22    Albuquerque?
23         A.   Yes.
24         Q.   Why didn't you open this case in
25    Albuquerque?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No one there wanted it.

 2        Q.   In your experience, are AUSAs reticent to

 3   take a case that rests primarily on cooperator

 4   testimony?

 5        A.   No.  Almost impossible.

 6        Q.   So AUSAs don't want to take cases that rest

 7   primarily on cooperator testimony, do they?

 8        A.   Nor do they want to take cases that have 80

 9   or 90 defendants in them.

10        Q.   So why did you come to Ms. Armijo with this

11   case?

12        A.   She's crazy enough to do it.  I'd worked

13   with her in the past, and we'd taken on similar type

14   challenging projects.

15        Q.   In preparing for your testimony today, did

16   you go back and review SNM FBI sources?

17        A.   Yes.

18        Q.   And how many FBI sources did you find, who

19   had been opened previously by the FBI, who would

20   testify in these cases?

21        A.   I'll refer to my notes, if that's all

22   right.

23        Q.   Yes, please.

24        A.   Four.

25        Q.   And who are those?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      A.   Excuse me, that's not true.  Two.  I made

 2  notes on four in reference to a request by defense,

 3  but I only found two.

 4      Q.   So you only found two witnesses that had

 5  been previously opened as FBI sources who would

 6  testify in these trials; is that right?

 7      A.   Yes, sir.

 8      Q.   And who were those?

 9      A.   Leonard Lujan and Frederico Munoz.

10      Q.   When was Leonard Lujan first opened as an

11  FBI source, and by whom?

12      A.   In 2009, by Sonya Chavez.

13      Q.   And when was he closed?

14      A.   2011.

15      Q.   Was he opened again?

16      A.   He was opened again in 2011, six months

17  later by Agent Roundy.

18      Q.   And was he closed by Agent Roundy?

19      A.   He was closed one year later in September

20  of 2012.

21      Q.   And then has he been reopened in this case?

22      A.   I told Agent Stemo to open him on January

23  5, 2017.

24      Q.   And does he remain an open FBI source?

25      A.   Yes.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                          1-800-669-9492
                                               e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   I think you said the next one was Frederico

 2   Munoz?

 3        A.   Yes.

 4        Q.   When was he first opened by the FBI, and by

 5   whom?

 6        A.   He was opened in February of 2009 by Agent

 7   Monarko.  You'll recall that was Agent Chavez' new

 8   agent, so really opened by Agent Chavez in 2009.

 9        Q.   And was he subsequently closed?

10        A.   Yes, he was closed December of 2010.

11        Q.   And then was he reopened for this case?

12        A.   I opened him January of 2016, six years

13   later.

14        Q.   And what is his current status as an FBI

15   source?

16        A.   He's currently open.

17             THE COURT:  Mr. Beck, the defense lawyers

18   have sent me a note saying they need to talk to me

19   about CJA matters.  And so I think I better bring

20   this to an end.

21             MR. BECK:  Sure.  May I have one

22   question -- I may not be done.

23             THE COURT:  I know you're not done.  I'm

24   not trying to tell you when to be done, but I do

25   think to squeeze it in before we leave, I better --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BECK:  Your Honor, I will not hesitate
 2   to leave you all to do your thing and go home early
 3   to my family.
 4            THE COURT:  Go ahead.
 5       Q.   Special Agent Acee, in all of your work in
 6   this case, and everything you've done, going back
 7   historically, into the future, have you ever heard
 8   anyone say, or heard anything related to:  That we
 9   should delay prosecution of the 2001 murders or
10   even -- or any murders for that matter -- delay
11   prosecution of them for tactical gain?
12       A.   No.
13            THE COURT:  All right.  Thank you, Mr.
14   Beck.
15            Sorry to interrupt that.
16            MR. BECK:  Please don't apologize.
17            THE COURT:  One thing, I was going to get
18   back to you -- do you remember that day -- it may
19   have been Monday -- about the jury questionnaires.
20   The defendants got theirs, you didn't.
21            MR. BECK:  That has been resolved.
22            THE COURT:  I know it has, and it's
23   inexplicable what happened.  I do understand it's
24   been resolved.  But I wanted to tell you, as far as I
25   can figure out, it wasn't intentional.  I don't have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

286

```
 1    an explanation for that.
 2              MR. BECK:  Sure.
 3              Your Honor, before I leave, I know I
 4    said -- you said you'd cut me off there, and that's
 5    fine -- I was just going to seek to admit related to
 6    the 1909 motion -- well, and maybe the James
 7    motion -- Mr. Lujan's transcripts from August 8, 2007
 8    and September 12, 2007, as Government's Exhibit 1.
 9    And then I think we're on 10.
10              THE COURT:  Well, if you're doing it for
11    the James hearing, it's going to be different
12    numbers.  Well, it may not be, because Mr. Castellano
13    started --
14              MR. BECK:  Oh, I can do it for the James
15    hearing, and then we can cross-reference.
16              THE COURT:  What are you primarily doing it
17    for?  This --
18              MR. BECK:  I guess now I'm primarily doing
19    it for the James hearing.  I guess that makes sense.
20    So I think for the James hearing we're probably on
21    12, if memory serves; is that correct?
22              THE CLERK:  12 is right here --
23              THE COURT:  What Mr. Castellano did was
24    Government's Exhibit 11 through 18 were the plea
25    agreements.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BECK:  All right, 11 through 18.  So
2    why don't I do -- should I do 19 and 20?  Does that
3    sound good?
4              THE COURT:  All right.
5              MR. BECK:  So as 19 I will mark the August
6    8, 2007.  And for 20, I will do the September 12,
7    2007.
8              THE COURT:  Any objections to these?
9              MR. BURKE:  No objection, Your Honor.
10             THE COURT:  All right.  Mr. Castle, do you
11   have any objections?
12             MR. CASTLE:  No objection.
13             THE COURT:  Anybody else?
14             All right.  So Government's Exhibits 19 and
15   20 will be admitted for purposes of only the James
16   hearing?
17             MR. BECK:  The James hearing, and then
18   they'll go to -- yeah, it's fine.  They will be for
19   1909.  But really they're just going to the James
20   hearing.  And the Court will have some familiarity
21   with them when it looks at 1909.  So just for the
22   James hearing is fine.
23             MR. BURKE:  Your Honor, I think Defendant's
24   Exhibit V was admitted.  But if it wasn't, I'll move
25   the admission of V for the motion.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1            MS. GILBERT:  It was.

2            THE COURT:  Are we pretty sure V is in?

3            MR. BECK:  Yes.

4            THE COURT:  All right.  So we'll conclude

5    the hearing.  Let me thank everybody for their hard

6    work.  If I don't see you again, be here at 8:30 on

7    Monday, April 9.  And I just can't promise anything

8    going out of here.  But be in communication with Ms.

9    Bevel or Ms. Wild, and we'll see where we are.  But I

10   appreciate your hard work.  Be safe.

11           I'll let the Government clear out of the

12   room.  We'll close this hearing down, and we'll then

13   have a CJA hearing before we leave.

14           MR. BECK:  I think, in the interests of

15   time, we might just leave a little stuff here and

16   come and get it next week.

17           THE COURT:  All right.  The CJA hearing

18   will be on the record.

19           (An ex parte CJA hearing was held,

20   transcript not included.)

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   UNITED STATES OF AMERICA

2   STATE OF NEW MEXICO

3

4                   C-E-R-T-I-F-I-C-A-T-E

5       I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

6   Official Court Reporter for the State of New Mexico,

7   do hereby certify that the foregoing pages constitute

8   a true transcript of proceedings had before the said

9   Court, held in the District of New Mexico, in the

10  matter therein stated.

11      In testimony whereof, I have hereunto set my

12  hand on this 23rd day of March, 2018.

13

14      _____

15      Jennifer Bean, FAPR, RMR-RDR-CCR
        Certified Realtime Reporter
16      United States Court Reporter
        NM Certified Court Reporter #94
17      333 Lomas, Northwest
        Albuquerque, New Mexico 87102
18      Phone:          (505) 348-2283
        Fax: (505) 843-9492
19      License expires:  12/31/18

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com