1

1          IN THE UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4               Plaintiff,

5       vs.              NO:  CR-15-4268 JB

6    ANGEL DELEON, et al.,

7               Defendants.

8

9       Transcript of excerpt of testimony of

10                  BRYAN ACEE

11               March 2, 2018

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  All rise.

 2              (The jury entered the courtroom.)

 3              THE COURT:  All right.  Everyone be

 4    seated.

 5              Good Friday morning to everyone.  I

 6    appreciate everybody being back and ready to go.  I

 7    appreciate the parties and counsel getting here

 8    early so we can discuss a few things and be ready

 9    for y'all pretty much on time.  So I appreciate the

10    way you've worked for us the last five weeks.

11    You've been a remarkable group, and I appreciate

12    everything you've done for us.

13              All right.

14              THE COURT:  Ms. Fox-Young, I think you had

15    Mr. Acee on the stand in your case-in-chief, you're

16    going to complete your direct examination.

17              So, Mr. Acee, if you'll return to the

18    witness stand, I'll remind you that you're still

19    under oath.  Ms. Fox-Young, if you wish to continue

20    your direct examination of Mr. Acee, you may do so

21    at this time.

22              MS. FOX-YOUNG:  Thank you, Your Honor.

23              THE COURT:  Ms. Fox-Young.

24                        BRYAN ACEE,

25         after having been previously sworn under oath,
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

3

```
 1        was questioned and testified as follows:
 2               DIRECT EXAMINATION (Continued)
 3   BY MS. FOX-YOUNG:
 4        Q.   Good morning, Agent Acee.
 5        A.   Good morning.
 6        Q.   Agent Acee, do you recall that when you
 7   were last on the stand, you answered some questions
 8   about Mario Rodriguez?
 9        A.   Yes, ma'am.
10        Q.   Okay.  I'd like to ask you a couple more.
11   Do you remember whether or not you learned, in the
12   course of your investigation of this case, whether
13   Mario Rodriguez was in charge of blue pod?
14        A.   Yes.
15        Q.   You learned whether he was?
16        A.   I had heard things along those lines, yes.
17        Q.   In fact, you learned that he was in charge
18   of blue pod, didn't you?
19        A.   Not exclusively, but he and Mr. Sanchez
20   were.
21        Q.   You don't dispute that you learned that
22   Mario Rodriguez was in charge of blue pod?
23        A.   I don't dispute that.
24        Q.   And you also learned, through the course
25   of your investigation, that there were some specific
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

4

```
 1   reasons why Mario Rodriguez put in a lot of work for

 2   the gang, isn't that right?

 3        A.   Yes.

 4        Q.   And wasn't one of those specific reasons

 5   because of his history of sex offenses?

 6        A.   That may have played into it.

 7        Q.   Well, in fact you know it played into it,

 8   don't you?

 9        A.   I think there were a few reasons, that

10   being one of them.

11        Q.   Well, are you aware, Agent Acee, that

12   yesterday some voluminous notes that you had

13   authored were produced to the defense?

14        A.   Yes, I produced them.

15        Q.   Okay.  You produced them to the defense

16   yesterday?

17        A.   For the Government, yes.

18        Q.   Okay.  Remind me how long this

19   investigation has been going on.

20        A.   About three years.

21        Q.   All right.  And you recall that you

22   authored notes with regard to debriefs of Timothy

23   Martinez, a/k/a Red?

24        A.   Yes.

25        Q.   And you recall, do you not, that you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  learned from Timothy Martinez that Blue, or Mario

 2  Rodriguez, was highly motivated to put in work

 3  because of the hot sauce incident and the sex

 4  offenses?

 5       A.   Yes.

 6       Q.   And the Javier Molina homicide could be

 7  considered putting in work for Mario Rodriguez,

 8  right?

 9       A.   Absolutely.

10       Q.   Are you also aware, Agent Acee, that

11  nearly 1,000 pages of documents purported to have

12  been in the possession of Mario Rodriguez were

13  produced to the defense two days ago?

14       A.   Yes.

15       Q.   Have you had an opportunity -- well, have

16  you reviewed those documents?

17       A.   No.

18       Q.   Do you know how long the FBI has been in

19  possession of those documents?

20       A.   Yes.

21       Q.   And can you tell the jury how long the FBI

22  has had those documents?

23       A.   FBI Agent Joe Sainato took possession of

24  those documents in approximately June of 2017.

25       Q.   Okay.  So what is that?  Eight or nine

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492
PROFESSIONAL COURT                            e-mail: info@litsupport.com
REPORTING SERVICE



 1    months?

 2         A.    Yes.

 3         Q.    But in that eight- or nine-month period,

 4    you've never looked at those 1,000 pages of

 5    documents from Mario Rodriguez?

 6         A.    I didn't know they existed until Sunday,

 7    this last Sunday.

 8         Q.    Okay.  And you're the case agent in this

 9    case, right?

10         A.    I am.

11         Q.    And I think you told me and told the jury

12    a few days ago that -- are there three or four other

13    agents working this case with you?

14         A.    There are three other FBI agents that were

15    assigned this case upon their graduation from the

16    Academy, so they've been helping me since then.

17         Q.    Okay.  One of those agents is Agent

18    Sainato, who you just testified personally retrieved

19    these documents last summer?

20         A.    Yes, ma'am.

21         Q.    And do you know if Agent Sainato ever

22    reviewed the documents?

23         A.    Yes, but not until very recently, as in

24    Sunday.

25         Q.    Okay.  And so --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Excuse me.  I think he represented that he
 2   had done a cursory search, but he hadn't done what I
 3   would call an in-depth review of those until Sunday.
 4        Q.    Well, isn't it true that Agent Sainato's
 5   purported reason for taking those documents in the
 6   first place from the Penitentiary of New Mexico is
 7   so that he could search them?
 8        A.    Yes.
 9        Q.    Outside the Penitentiary of New Mexico?
10        A.    Yes.
11        Q.    And isn't it true that those documents in
12   fact remained, according to Agent Sainato,
13   underneath his desk for eight months?
14        A.    Yes.
15        Q.    After he did a search of them?
16        A.    They remained under his desk for at least
17   eight months.
18        Q.    And to this day, you have not looked at
19   these documents?
20        A.    No.
21        Q.    But Agent Sainato works for you on this
22   case, right?
23        A.    Yes, ma'am.
24        Q.    And so these nearly 1,000 pages of
25   documents that were produced two days ago, after the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Government rested, you don't know what they contain?
 2        A.   I think they were produced on Monday.  I
 3   have --
 4        Q.   Do you know when they were produced?
 5        A.   I believe they were produced on Monday.
 6        Q.   You don't know for certain because you
 7   don't make the production, right?
 8        A.   I'm just trying to remember what day I saw
 9   them delivered to your desks.  I thought it was
10   Monday.  It may have been Tuesday.
11        Q.   You still haven't looked at them?
12        A.   Other than what was presented yesterday
13   afternoon, no, in court.  No.
14        Q.   Would you think it would be important for
15   the FBI to look at 1,000 pages of documents that
16   came from Mario Rodriguez, that were in his personal
17   possession?
18        A.   Yes.  It's important for us to look at
19   everything that comes across our desks.
20             MS. FOX-YOUNG:  Your Honor, I'd ask for a
21   stipulation from the Government that these documents
22   were produced to the defense on Wednesday.
23             THE COURT:  Does the Government wish to
24   respond?
25             MS. JACKS:  I would ask that it be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Wednesday at 2:00 p.m.

2           THE COURT:  Well, let's let the Government

3   respond first.

4           MR. BECK:  I think it's inaccurate to say

5   that the Government produced the documents Wednesday

6   at 2:00.  I think that a document from that was

7   produced Sunday evening.  I think that the rest of

8   the documents, aside from the document produced

9   Sunday evening, were produced to the defense

10  Wednesday around 2:00 p.m.  So that would be an

11  accurate stipulation.

12          MS. FOX-YOUNG:  Let me propose a different

13  stipulation, Your Honor.  I'd ask for a stipulation

14  that pages 980 of documents, purportedly from Mario

15  Rodriguez, were produced Wednesday at 2:00 p.m. to

16  the defense.

17          THE COURT:  Do you want to accept that

18  stipulation, Mr. Beck?

19          MR. BECK:  I don't know that there were

20  980 pages produced.  And I know that 980 pages, if

21  they were produced, were not all from Mario

22  Rodriguez' property.  So no.

23          THE COURT:  All right.  So I don't believe

24  you have a stipulation, Ms. Fox-Young.

25          MS. FOX-YOUNG:  I'm sorry, Your Honor?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  You don't have a stipulation.
 2              MS. FOX-YOUNG:  Okay.  Will the Government
 3  stipulate that the only document from this set of
 4  nearly 1,000 pages that was produced to the defense
 5  on Sunday is Defendants' Exhibit FV?
 6              MR. BECK:  Yes.
 7              THE COURT:  All right.
 8  BY MS. FOX-YOUNG:
 9       Q.   All right.  In any event, Agent Acee, you
10  haven't looked at them?
11       A.   I have not looked at all of them, no.
12       Q.   Okay.  And so is it accurate to say that
13  you don't know whether these documents detail Mario
14  Rodriguez having thrived on being feared?
15       A.   I saw some writings about that yesterday.
16       Q.   I thought you hadn't looked at them?
17       A.   They were up there on the screen.
18       Q.   Okay.
19       A.   And the attorneys were -- the defense
20  attorneys were pointing those out.  They were up
21  there on the screen.
22       Q.   So you are aware of Mario Rodriguez'
23  musings that he thrived on being feared?
24       A.   I saw a writing that indicated that.
25       Q.   You don't know how many times in 980 pages
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1   there is indication that Mario Rodriguez thrived on
2   being feared?
3        A.   No.
4        Q.   And are you aware that Mario Rodriguez
5   detailed his obsession with cutting ears off in
6   these documents?
7        A.   No.  I haven't seen anything like that.
8        Q.   Okay.  You don't know how many times Mario
9   Rodriguez talked about cutting ears off in these
10  documents?
11       A.   I've not seen anything like that.
12            MR. CASTELLANO:  Your Honor, we have no
13  objection to the admission of the 980 pages that
14  were in Mr. Rodriguez' property, and the jury can
15  look through those documents if they so choose.
16            So we have no objection to the admission
17  of all of those documents.
18            THE COURT:  Do you want to introduce those
19  or not?
20            MS. FOX-YOUNG:  I'm not moving their
21  admission at this time, Your Honor.
22            THE COURT:  Okay.
23  BY MS. FOX-YOUNG:
24       Q.   And are you aware whether these 980 pages
25  detail Mario Rodriguez' obsession with sex offenses?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                     e-mail: info@litsupport.com

1      A.    No.

2      Q.    You don't know about that?

3      A.    I'm not aware of that.

4      Q.    Do you know if they detail Mario

5    Rodriguez's desire to butcher and rape other

6    individuals?

7            MR. CASTELLANO:  I'm going to object based

8    on foundation.  The agent says he hasn't reviewed

9    these, so he wouldn't know the contents of the

10   document.

11           MS. FOX-YOUNG:  Your Honor, the agent says

12   he has reviewed some of the documents, apparently.

13           THE COURT:  I think it's a mixed bag, so I

14   think I've got to let Ms. Fox-Young do this because

15   he has seen certain documents on the screen.

16   Overruled.

17     A.    I haven't seen anything related to that.

18   BY MS. FOX-YOUNG:

19     Q.    And so you don't know how many times

20   throughout these documents Mario Rodriguez talks

21   about butchering and raping people?

22     A.    No.

23     Q.    Do you know whether these documents

24   include descriptions of threats that Mario Rodriguez

25   has made against other people?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    I think I saw one or two yesterday.
 2        Q.    Okay.  So you're aware of one or two times
 3   in the documents where Mario Rodriguez talks about
 4   threatening people?
 5        A.    Yes.
 6        Q.    But you don't know how many times in these
 7   980 pages he talks about threatening people?
 8        A.    No.
 9        Q.    And how many times he was written up for
10   assaults and threats?
11        A.    He has a few write-ups for assaults.
12        Q.    And do you know whether Mario Rodriguez,
13   in these documents, associated threats with his
14   reputation for being feared?
15        A.    No.
16        Q.    You don't know that.  Are you aware, Agent
17   Acee, of whether or not Mario Rodriguez was jumping
18   out of his skin to kill Javier Molina, couldn't wait
19   to do it?
20        A.    I have not seen anything that represents
21   that.
22        Q.    You don't know anything about that?
23        A.    I know about the homicide, but
24   specifically whether or not he was jumping out of
25   his skin to participate, I've not seen anything like
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    that.

 2         Q.   So it's your testimony that you have never

 3    been informed that Mario Rodriguez couldn't wait to

 4    kill Javier Molina?

 5         A.   You're saying it in different terms now.

 6    But not off the top of my head, no.

 7         Q.   It's your testimony that you never learned

 8    that?

 9         A.   I don't dispute that he was motivated to,

10    but in the terms you're saying it, you'd have to

11    refresh my memory.

12         Q.   Do you remember debriefing Lupe Urquizo,

13    a/k/a Marijuano, on March 6, 2017?

14         A.   Yes.

15         Q.   And you took notes in that debrief, didn't

16    you?

17         A.   I did.

18         Q.   And those notes were produced to defense

19    two days ago, weren't they?  Or I'm sorry.  They

20    were produced yesterday at 9:18 in the morning,

21    weren't they?

22         A.   They were produced when I was asked to

23    produce them.  I'm not sure what time you got them.

24         Q.   Yesterday at 9:18 in the morning, right?

25         A.   I don't know when you received them.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        Q.   And some of those notes, in fact, detailed

2   that Blue -- this is from Lupe Urquizo -- Blue

3   couldn't wait to move on Javier Molina; isn't that

4   right?

5        A.   Yes.

6        Q.   Do you know who brought Mario Rodriguez

7   into the SNM?

8        A.   I don't remember all the members.  I

9   remember one right now.

10       Q.   Who do you remember?

11       A.   Arturo Garcia, Shotgun.

12       Q.   Do you remember that Billy Cordova brought

13  Mario Rodriguez into the SNM?

14       A.   No.  I just remember Arturo Garcia.

15       Q.   Would it refresh your memory if I showed

16  you your notes, also produced yesterday at 9:18

17  a.m., from a debrief of Timothy Martinez, a/k/a Red,

18  on December 29th of 2016?

19       A.   Yes.

20            MS. FOX-YOUNG:  Your Honor, may I approach

21  the witness?

22            THE COURT:  You may.

23  BY MS. FOX-YOUNG:

24       Q.   Agent Acee, are these your notes from

25  December 29, 2016, on a debrief of Red?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes.

 2        Q.   All right.  Please take a look at this

 3   page.  Did you write this page?

 4        A.   I did.

 5        Q.   And tell me whether this refreshes your

 6   recollection as to that question.

 7        A.   Yes, ma'am.

 8        Q.   Agent Acee, do you remember now whether

 9   Billy Cordova recruited Mario Rodriguez into the

10   SNM?

11        A.   Yes, according to --

12        Q.   He did, right?

13        A.   Yes.

14        Q.   Okay.  And you learned that December 29th

15   of 2016?

16        A.   Yes.  That's according to Red, Timothy

17   Martinez.  That's who brought Rodriguez in.

18        Q.   Who is Chuco?

19        A.   Mandel Parker.

20        Q.   Do you remember learning about Chuco's

21   presence at a shooting, a shooting that Billy

22   Cordova committed or engaged in?

23        A.   No.  You'd have to refresh my memory.

24   Sorry.

25        Q.   Do you know if notes from a debrief of Red
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    on January 26, 2017, were also produced to the

2    defense yesterday at 9:18 in the morning?

3         A.    I imagine they were.  Are they my notes?

4         Q.    Do you know?

5         A.    I don't know if those were my notes.

6         Q.    In any event, you don't know if Billy

7    Cordova shot somebody while Chuco was present?

8         A.    No.

9         Q.    And you don't know what shooting that was?

10        A.    No.

11        Q.    You're the agent who closed Billy Cordova

12   as a government witness, right?

13        A.    Yes.

14        Q.    Do you know when that happened?

15        A.    It happened immediately after my learning

16   that -- about the sex incidents up at PNM.

17        Q.    Do you know when he was actually closed?

18        A.    No.

19        Q.    Would it refresh your recollection if I

20   showed you a portion of his contract with that

21   indication?

22        A.    Yes.

23             MS. FOX-YOUNG:  Your Honor, may I approach

24   the witness?

25             THE COURT:  You may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. FOX-YOUNG:  And for the record, this
 2   is Bates 41665.
 3   BY MS. FOX-YOUNG:
 4        Q.    Agent Acee, is this a document indicating
 5   closure of Billy Cordova?
 6        A.    May I look at the next page?
 7        Q.    Yes, you may.
 8        A.    The source numbers are blocked out, but I
 9   think it is, because I sent this letter to the four
10   guys that were involved in sex acts up there.
11        Q.    And so does this refresh your recollection
12   on this question?
13        A.    Yes.
14        Q.    So do you know now when you closed Billy
15   Cordova?
16        A.    I closed him around January 13, 2017.  I
17   base that on the letter you just showed me.
18        Q.    Okay.  And it's your testimony that after
19   that time -- and you testified about this when I
20   asked you questions a few days ago.  Is it your
21   testimony that after that time, Billy Cordova did no
22   more work for the FBI?
23        A.    No.
24        Q.    Okay.  So he did do more work for the FBI
25   after you closed him?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   He did work for the STIU, which we're
 2   partnered with, so I'm just hesitating to say -- I
 3   understand he made an additional recording, which at
 4   the time he made the recording I didn't know about.
 5   I subsequently learned about in court here.
 6        Q.   So it's your testimony that after he was
 7   closed, he continued to do work for the team the FBI
 8   works on?
 9        A.   Yes, in a separate case.  But yes, to
10   answer your question.
11        Q.   So he wasn't really closed, right?
12        A.   No, he was closed.
13        Q.   How can a closed government witness
14   continue doing work for the FBI?
15        A.   Well, I can explain if you'd like me to.
16        Q.   Let me just ask you this:  For the work
17   that Billy Cordova did, were there FBI reports like
18   you've already described generated?
19        A.   For the work after he was closed?
20        Q.   Yes.
21        A.   Is that what you're asking?
22        Q.   Yes.
23        A.   That's a better question for Agent Stemo,
24   but I believe she submitted a report.  Because he
25   obtained a recording up at the penitentiary.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.    So after Billy Cordova was closed in

2  January of 2017, it's your testimony that he did

3  continue working and that FBI reports for his work

4  were generated, right?

5        A.    At least one.   I think there is a

6  recording and a report.

7        Q.    And you think Agent Stemo -- she's part of

8  your team of agents, right, on this case?

9        A.    Yes, ma'am.

10       Q.    And you think she did a report documenting

11  that work for the FBI?

12       A.    Yes.   Not in this case file, though.   A

13  different prison gang.

14       Q.    And so you know, then -- you would agree

15  with me, then, that in April 2017, three months

16  after you say Billy Cordova was closed, he was

17  working for the FBI?

18       A.    No, I don't agree with that.   I agree that

19  there was a recording made.   I don't believe the FBI

20  tasked him with doing that.   I think the STIU did,

21  and then they delivered to us a recording, and she

22  needed to document the fact that that was done.

23       Q.    You would agree with me that three months

24  after Billy Cordova was closed, your agent, Agent

25  Stemo, was writing -- wrote a report with regard to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Billy Cordova's work for the FBI?
 2        A.   All of that except that it was for the
 3   FBI.  I think it was for the STIU.  We just received
 4   a copy of it because it's good evidence.
 5        Q.   Is it your practice to do FBI reports for
 6   agency's work unrelated to the FBI?
 7        A.   No.  There's an open case on the prison
 8   gang that he did a recording on.
 9        Q.   Okay.  Thank you, Agent Acee.
10             Have you ever made a determination about
11   whether Billy Cordova continued to commit crimes
12   after going to work for the Government?
13        A.   As I sit here today, I have, yes.
14        Q.   What is that determination?
15        A.   He used drugs while he was an FBI
16   informant, and he brought a weapon to court.  Those
17   are, I believe, the two incidents I'm aware of.
18        Q.   Have you made a determination about
19   whether Billy Cordova will continue to commit crimes
20   today and going forward?
21             MR. CASTELLANO:  Objection, relevance.
22             THE COURT:  Well, it's a yes/no question
23   at this point, whether he's reached a conclusion.
24   BY MS. FOX-YOUNG:
25        A.   No.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    You haven't made a determination?
 2        A.    Well, I have an opinion, but I cannot tell
 3   what he's going to do in the future.
 4        Q.    And do you have information obtained
 5   through the course of this investigation, with
 6   regard to that question, as to whether or not Billy
 7   Cordova will continue with his criminal conduct on
 8   the streets?
 9              MR. CASTELLANO:  Objection, calls for
10   speculation.
11              MS. FOX-YOUNG:  Your Honor, it's a yes/no
12   question.
13              THE COURT:  Well, I think these are if
14   he's reached some conclusion.
15              MS. FOX-YOUNG:  Your Honor, my question
16   is:  Does he have information, obtained through the
17   course of this investigation, about whether Billy
18   Cordova will continue to commit crimes on the
19   streets?
20              THE COURT:  I still think the way I worded
21   it is what you're asking.  So I was overruling the
22   objection.
23              MS. FOX-YOUNG:  Thank you, Your Honor.
24              THE COURT:  Are you arguing with my
25   ruling?
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. FOX-YOUNG:  I just want to make sure
 2   that the witness understood the question.  And no,
 3   Your Honor, I'm not arguing with your ruling.
 4        A.   No.
 5   BY MS. FOX-YOUNG:
 6        Q.   You haven't obtained that information?
 7        A.   I don't believe so.
 8        Q.   So you don't recall interviewing Red and
 9   documenting in your notes on January 26, 2017, that
10   Billy Cordova still thinks he can go back to
11   Albuquerque and represent -- he still wants to be a
12   gangster, but that he's a federal rat?
13              MR. CASTELLANO:  Calls for hearsay.
14        Q.   You don't remember that?
15        A.   I do.
16              THE COURT:  Again, it's a yes/no question,
17   just whether you've done the interview?
18        A.   I did the interview, yes.
19        Q.   You don't remember that?
20              MR. CASTELLANO:  Objection, calls for
21   hearsay.
22              THE COURT:  Well, it's a different
23   question.  I'm confused.  Why don't you ask another
24   question at this point.
25   BY MS. FOX-YOUNG:
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492
                                                        e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   Agent Acee, do you remember gathering that
 2   information as to Billy Cordova in your January 26,
 3   2017, interview?
 4        A.   Yes, but you're stating it out of context.
 5        Q.   Would it refresh your memory if you saw
 6   the detail?
 7        A.   Please.
 8             MS. FOX-YOUNG:  Your Honor, may I approach
 9   the witness?
10             THE COURT:  You may.
11        Q.   Agent Acee, are these your notes produced
12   yesterday at 9:18 a.m. from a January 26, 2017,
13   interview of Red?
14        A.   These are my notes.
15        Q.   All right.  Take a look at this page and
16   tell me if that refreshes your memory?
17        A.   Yes.
18        Q.   So having looked at this document, do you
19   recall gaining the information about Billy Cordova
20   wanting to go back to the streets and wanting to be
21   a gangster and represent?
22        A.   Yes, but he's saying he wants to work for
23   us.  Like he wants to be a gangster on the street as
24   an informant.  That's what I believe that says.
25        Q.   You recall learning that Billy Cordova
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  wants to go back to Albuquerque and represent?  He
 2  still wants to be gangster, but he's a federal rat?
 3       A.   Yes, and I --
 4            MS. FOX-YOUNG:  Thank you, Your Honor.  No
 5  further questions.
 6            THE COURT:  Thank you, Ms. Fox-Young.  All
 7  right.  Do any other defendants have direct
 8  examination of Mr. Acee?
 9            MS. JACKS:  I do, Your Honor, but I think
10  I'm queued up last.
11            MS. BHALLA:  Yes, Your Honor, I have a few
12  questions.
13                    DIRECT EXAMINATION
14  BY MS. BHALLA:
15       Q.   Good morning, Agent.
16       A.   Good morning.
17       Q.   So I think what you testified to with Ms.
18  Fox-Young was that you were here yesterday for the
19  hearing where we discussed some of the property
20  belonging to Mario Rodriguez?
21       A.   I was here, yes.
22       Q.   And you saw some of the documents that
23  were put up on the screen?
24       A.   Yes.
25       Q.   Okay.  And would you agree with me that
```



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.                          1-800-669-9492
PROFESSIONAL COURT                        e-mail: info@litsupport.com
REPORTING SERVICE

```
 1   some of the documents that we put up on the screen
 2   yesterday clearly was property that belonged to
 3   other individuals?
 4        A.   I think at one time, yes.
 5        Q.   Okay.  And, in fact, the other individuals
 6   were other informants in this case; namely, Timothy
 7   Martinez?
 8        A.   I saw some property that was probably
 9   Timothy's at one time.
10        Q.   Okay.  And one of the things that you saw
11   was a letter from Timothy Martinez's -- a woman
12   named Robin.  I presume that that's Timothy
13   Martinez's wife.
14        A.   It's not.  I think it's an ex.  Could be
15   an ex-wife.  I think it was a girlfriend.
16        Q.   Okay, so an ex-girlfriend.  Thank you for
17   clearing that up.  And Robin sent that letter to
18   Timothy Martinez, correct?
19        A.   Yes.
20        Q.   And in that letter -- that letter was
21   dated after the Javier Molina murder, was it not?
22        A.   No.  I'll have to take your
23   representation.  I didn't catch the date.
24        Q.   Okay.
25             MS. BHALLA:  And, Your Honor, I apologize.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  I moved those in yesterday.  Could I possibly get a
 2  copy from Ms. Standridge?
 3           THE COURT:  You need what, Ms. Bhalla?
 4           MS. BHALLA:  I have it, Your Honor.  Thank
 5  you.  I'm sorry, Agent Acee.  Give me a second.
 6           Your Honor, may I approach the witness?
 7           THE COURT:  You may.
 8  BY MS. BHALLA:
 9      Q.   Agent Acee, do you mind just flipping
10  through and confirming that there are three letters
11  from Robin to Timothy Martinez?
12      A.   There are.
13      Q.   Okay.  And can you confirm that all three
14  letters are dated after the Javier Molina murder,
15  please?
16      A.   All three are dated after the Javier
17  Molina homicide.
18      Q.   Would you agree with me that some of the
19  information that's contained in those letters is
20  information that the statements weren't matching up
21  with the discovery; that some of the statements that
22  were made weren't matching up with the discovery?
23  Do you recall looking at statements like that in
24  those letters yesterday?
25           MR. CASTELLANO:  Objection, calls for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   speculation.

2          MS. BHALLA:  He was here yesterday, Your

3   Honor.

4          THE COURT:  Well, if he can agree, I'll

5   allow him to testify.  Overruled.

6   BY MS. BHALLA:

7      A.   I recall at least one.

8      Q.   Okay.  And would you agree with me that

9   these documents were contained in the FBI office for

10  about the last eight months?

11     A.   Yes.

12         MS. BHALLA:  May I have a moment, Your

13  Honor?

14         THE COURT:  You may.

15     Q.   And when you were here yesterday at this

16  hearing and we were going through some of the

17  property that was contained in Mario Rodriguez'

18  possession, or his property, would you also agree

19  with me that there were letters sent to the county

20  clerk's office, requesting discovery in other cases?

21     A.   I saw a letter like that, yes.

22     Q.   And you don't know what the other cases

23  were about, do you?

24     A.   I have an idea, but I can't say for sure.

25     Q.   Right.  Isn't that something that you

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                      1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   would want to know, as part of your investigation?

 2        A.   Yes, it is.

 3             MS. BHALLA:   Thank you, Your Honor.  I

 4   pass the witness.

 5             THE COURT:   Thank you, Ms. Bhalla.

 6             Ms. Jacks, do you have direct examination

 7   of Mr. Acee?

 8             MS. JACKS:   I do.

 9             THE COURT:   Ms. Jacks.

10                  DIRECT EXAMINATION

11   BY MS. JACKS:

12        Q.   So, Agent Acee, I have a number of topics

13   I want to talk to you about.  I'm just going to try

14   to direct you so that you can follow.  I can't say

15   they're organized in any logical fashion.

16             So I want to start asking you just a

17   couple of questions about Ronald Sanchez.  You

18   actually sat down and spoke with Ronald Sanchez?

19        A.   I have on two occasions.

20        Q.   And what is his relation to Daniel

21   Sanchez?

22        A.   His brother.

23        Q.   Is he the older brother?

24        A.   I don't recall.

25        Q.   Is Ronald Sanchez a validated or suspected
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    member of SNM?

2        A.    He's not validated.

3        Q.    And was Ronald Sanchez living in blue pod

4    at the time of the Molina homicide?

5        A.    Yes.

6        Q.    You were asked some questions by the

7    Government in their case about the crime that Javier

8    Molina had committed, that this paperwork was

9    supposedly related to.  Do you recall those

10   questions?

11       A.    Yes.

12       Q.    And I think, if my notes are right, you

13   said that the crime was a strong-armed robbery?

14       A.    Yes.

15       Q.    Okay.  That's terms that Government

16   witnesses have used as well, right?  Strong-armed

17   robbery?

18       A.    I'm not sure.  I've heard them describe it

19   as a robbery or a purse-snatching.

20       Q.    Can you tell us, in your mind, anyway,

21   what is a strong-armed robbery?

22       A.    It's the taking of property from a person

23   by force or fear.  I use the term "strong-armed"

24   from my law enforcement understanding, that it was

25   without a weapon, so just through intimidation or

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    physical force.
 2        Q.   Right.  So, like -- I think the key is no
 3    weapon; just the force necessary to take the
 4    property.
 5        A.   Yes, ma'am.
 6        Q.   And the typical or classic strong-armed
 7    robbery is somebody pulls a woman's purse off of her
 8    shoulder as she's walking down the street?
 9        A.   Yes.
10        Q.   And is that the crime that Javier Molina
11    was -- is that the crime Javier Molina committed
12    that was the subject of the paperwork?
13        A.   No.
14        Q.   What was the crime?  Because I thought
15    that's what you testified to, that the paperwork was
16    regarding a strong-armed robbery that Mr. Molina had
17    participated in.
18        A.   Well, the first part of that is correct.
19    The crime being investigated by the Las Cruces
20    police department was a robbery, which I described
21    as a strong-armed robbery.  Molina, I don't believe,
22    is the one that took the purse.  I believe his
23    vehicle was used and he was at the scene.
24        Q.   So your recollection is that he aided and
25    abetted that crime?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1      A.   Yes, ma'am.

 2      Q.   Now, that's based on a review of some

 3 police reports or something?

 4      A.   Yes.

 5      Q.   Have you looked at any court documents

 6 regarding Javier Molina?

 7      A.   I don't believe I have.

 8           MS. JACKS:  Your Honor, I have a Grand

 9 Jury indictment for Javier Molina regarding a

10 robbery that took place on July 28, 2009.  May I

11 approach the witness?

12           THE COURT:  You may.

13           MS. JACKS:  Why don't we mark this defense

14 next in order, F as in Frank, Z as in zebra.

15           Your Honor, I just conferred with the

16 Government.  I don't believe there is an objection.

17 I move to admit this Exhibit FZ.

18           THE COURT:  Any objection, Mr. Castellano?

19           MR. CASTELLANO:  No objection.  I just ask

20 that the personal information be redacted.  I think

21 there's a date of birth and a Social Security

22 number.

23           MS. JACKS:  Correct.  Page 2 has some

24 personal information regarding Mr. Molina, and I'll

25 redact that after my examination, and I won't be
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    showing that to the jury.

2              THE COURT:  All right.  Anybody else have

3    any objection?  Not hearing or seeing anything,

4    Defendants' Exhibit FZ will be admitted into

5    evidence.

6              (Defendants' Exhibit FZ admitted.)

7    BY MS. JACKS:

8         Q.   Agent Acee, this is a court document, an

9    indictment of Mr. Molina for robbery on July 28,

10   2009.  Do you see that?

11        A.   Yes, ma'am.

12        Q.   And this doesn't charge a strong-armed

13   robbery, does it?

14        A.   No.

15        Q.   What kind of robbery does it charge?

16        A.   Armed robbery with a firearm.

17        Q.   And I think you testified to the jury, or

18   told the jury when the Government asked you

19   questions, that in connection with the case that

20   this paperwork was supposedly on, that the object of

21   the theft was a purse; is that right?

22        A.   I said that I thought it was, yes.

23        Q.   Do you know?

24        A.   I don't.

25        Q.   And, in fact, the object of the armed

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                      1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                         e-mail: info@litsupport.com

1    robbery was a deposit bag, a business deposit bag

2    that had the bank deposits for the day in it, wasn't

3    it?

4        A.   Wasn't that in the purse?  I thought

5    that's how I remembered reading it.  But yes.

6        Q.   A woman leaving World Finance with the

7    day's deposits was robbed of the bank bag?

8        A.   Of the bank bag which I think was in her

9    purse.

10       Q.   So when Government witnesses have used the

11   term "strong-armed robbery" and said that the

12   paperwork was regarding a strong-armed robbery,

13   that's not consistent with the robbery that Mr.

14   Molina was convicted of, is it?

15       A.   I'm the only one, I think, that I've heard

16   say "strong-armed robbery."  But a strong-armed

17   robbery is not the same as a robbery with a firearm.

18       Q.   And Mr. Molina was convicted of a robbery

19   with a firearm?

20       A.   That, I'm not sure of.

21       Q.   Well, as part of your investigation did

22   you examine any court documents to see?

23       A.   No.  I just read Javier Molina's

24   statements and the reports, the police reports.  I

25   didn't track his case through the court system.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Q.    Well, you'll agree that the exhibit I just

2 showed you shows that he was indicted by the Grand

3 Jury for robbery with a firearm?

4    A.    I agree with that.

5    Q.    And he subsequently ended up in New Mexico

6 State Prison?

7    A.    Yes.

8    Q.    Now, you were asked some questions, when

9 the Government was questioning you at the end of

10 their case, about the process of interviewing

11 Government witnesses?

12    A.    Yes.

13    Q.    And I think you talked about how you -- I

14 think the term you used was that you "laser focused"

15 on the events as the trial got closer?

16    A.    I think I said that the Assistant U.S.

17 Attorneys laser focused, yes.

18    Q.    But you would agree with me that, first of

19 all, when you interview somebody that's a potential

20 government witness, one of the things you want to do

21 is document what they knew and when they knew it?

22    A.    Yes.

23    Q.    And you want to get as much information as

24 possible out of them before corrupting influences

25 could affect their testimony?

SANTA FE OFFICE                                                                MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492

1-800-669-9492
PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

```
 1        A.    I want to get as much information out of
 2   them.
 3        Q.    And when you sit down with these
 4   witnesses, you actually block out a large portion of
 5   the day so that you can go through, in an unhurried
 6   fashion, as many questions that you have about what
 7   you think it is they know?
 8        A.    That's ideal.  That's not always possible.
 9        Q.    But you've done that in this case?
10        A.    In some cases we were able to do that,
11   yes.
12        Q.    And one of the things that you actually
13   used when you questioned potential Government
14   witnesses, you had a list of 213 questions, didn't
15   you?
16        A.    My questionnaire, yes.
17        Q.    And you used that questionnaire when you
18   talked to the witnesses, to try to cover every topic
19   that you thought was important when you debriefed a
20   witness?
21        A.    Yes.
22        Q.    And some of those questions include
23   question 107:  Did Daniel Sanchez ever talk to you
24   about the Molina homicide; and if so, what did he
25   say?
```



SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                Albuquerque, NM 87102
(505) 989-4949                                                                              (505) 843-9494
FAX (505) 843-9492                                                                    FAX (505) 843-9492
                                                                                          1-800-669-9492
                                                                                 e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.    That was one of the questions.
 2        Q.    So that's one of the questions that you
 3  regularly asked a potential government witness when
 4  you sat down with them to debrief them?
 5        A.    Yes.
 6        Q.    And question 142:  Do you have any
 7  knowledge of Daniel Sanchez committing or planning
 8  any assaults or murders; and if so, provide details?
 9        A.    Yes.
10        Q.    And question 146:  What role did Daniel
11  Sanchez play in the murder of Javier Molina?
12        A.    Yes.
13        Q.    And finally, question 213:  Do you have
14  any additional information that you think FBI case
15  agents should be aware of?
16        A.    Yes.
17        Q.    So the bottom line is, when you sit down
18  with a potential Government witness to try to find
19  out what they know, you approach those interviews in
20  a methodical and organized manner?
21        A.    Try to.
22        Q.    And you try to cover all the topics that
23  might be relevant to the case, in particular this
24  case that you were investigating?
25        A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   After you speak to the witness, you
 2   prepare what's called an FBI-302, a report of the
 3   interview?
 4        A.   Yes.
 5        Q.   When you make those reports, do you try to
 6   include everything that's significant that the
 7   witness says about the offense that you're
 8   investigating?
 9        A.   Yes.
10        Q.   And part of the reason -- part of the
11   reason for that is to document, officially document
12   everything of significance that a witness told you
13   at a particular point in time?
14        A.   Yes.
15        Q.   So that if later a defense lawyer says,
16   "Wait a second, he never said that," you can prove
17   that in fact he did?
18        A.   Yes.
19        Q.   All right.  I want to move to some topics
20   or some discussions that you had with some of the
21   Government witnesses and just ask you some
22   particular questions that focus on statements they
23   made at trial that were perhaps inconsistent with
24   what I'm asking you.  Okay?  And the first witness I
25   want to talk about is David Calbert.  Okay?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Okay.

 2        Q.    And Mr. Calbert is somebody that told --

 3   that claimed that he received paperwork from Cheech

 4   and ultimately passed that to Lupe Urquizo?

 5        A.    Yes.

 6        Q.    And this was the paperwork that he claimed

 7   had something to do with Javier Molina being an

 8   informant or providing information to law

 9   enforcement?

10        A.    Correct.

11        Q.    Now, when you first interviewed Mr.

12   Calbert, was that on August 22nd of 2017?

13        A.    I don't remember.

14        Q.    All right.  You don't have the 302 up

15   there, do you?

16        A.    No, ma'am.

17        Q.    Let me get the document.

18              MS. JACKS:  Your Honor, I have a 302 dated

19   August 22, 2017, Bates stamped 41860, regarding an

20   interview with David Calbert.  May I approach the

21   witness?

22              THE COURT:  You may.

23   BY MS. JACKS:

24        Q.    Agent Acee, is that the report of your

25   August 22, 2017, interview with David Calbert?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes, it is.

 2        Q.    And do you think if you reviewed it, that

 3   might refresh your recollection as to whether that

 4   was your first interview with Mr. Calbert?

 5        A.    Yes, ma'am.

 6        Q.    Just let me know when you're done and

 7   ignore my writing on there.

 8        A.    Agent Neale wrote the report, but I think

 9   this is -- I don't think this is the first

10   interview.

11        Q.    You don't?

12        A.    I think my 302 was the first one.

13        Q.    Let me ask you this:  Was the first time

14   that you spoke with Mr. Calbert the day that you

15   brought him down to the FBI office in Albuquerue

16   and allowed him to meet with Lupe Urquizo?

17        A.    Yes, I think that was the first time.

18        Q.    And if Lupe Urquizo and David Calbert were

19   both interviewed on August 22, 2017, would that have

20   been the first time that you met with David Calbert?

21        A.    Yes.

22        Q.    And when you talked to David Calbert after

23   that meeting with Lupe Urquizo, did you ask him some

24   questions about this paperwork he claimed that he

25   provided to Urquizo?  Do you need to refresh your
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  memory with the report?

2      A.   Yes, please.

3      Q.   Go ahead.

4      A.   Thank you.  Yes, we did ask him questions

5  about that.

6      Q.   And Mr. Calbert told you that this

7  paperwork he claimed to have gotten was one single

8  page, didn't he?

9      A.   Yes.

10      Q.   And you had a chance to talk with Mr.

11  Calbert again on September 28, 2017, when he came to

12  court to plead guilty, right?

13      A.   Yes.

14      Q.   And he didn't change his story about the

15  paperwork on that day, did he?

16      A.   No.

17      Q.   And you had another chance to talk to him

18  on January 12, 2018, in preparation for his

19  testimony here at trial, right?

20      A.   That occurred.  I just don't recall if I

21  was there.

22      Q.   Do you think if you saw the 302 that you

23  prepared in connection with that interview that

24  might refresh your memory?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Actually, to be fair, there's two 302s

 2   from that day, so I'll show you both.  One is

 3   authored by you, and one appears to be authored by

 4   Ms. Stemo.

 5             MS. JACKS:  Your Honor, may I approach the

 6   witness?  I have two 302s, Bates stamped 51471 and

 7   51474.

 8             THE COURT:  You may.

 9             MR. CASTELLANO:  I have no objection to

10   her asking questions about his report, but Agent

11   Stemo's report would be hearsay.

12             MS. JACKS:  I don't intend to ask him

13   questions about Agent Stemo's report.

14   BY MS. JACKS:

15        A.    Thank you.

16        Q.    So does that refresh your memory, Agent

17   Acee?

18        A.    Yes.

19        Q.    And did you participate in a pretrial

20   interview with Mr. Calbert on January 12, 2018?

21        A.    Yes.

22        Q.    And Mr. Calbert didn't change his story

23   about the paperwork during the course of that

24   interview, did he?

25        A.    No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Were you here at trial on February 5th of

2    2018, when Mr. Calbert testified?

3    A.   Yes.

4    Q.   And during his trial testimony, he

5    testified about this paperwork he claimed to have

6    seen, and he said for the first time it was two

7    pages, right?

8    A.   I believe so.

9    Q.   So that was inconsistent with all of his

10   prior statements to law enforcement?

11   A.   Yes.

12   Q.   Now, I want to ask you some questions on

13   the same topic, but about Lupe Urquizo.

14   A.   Okay.

15   Q.   And Lupe Urquizo -- you were here for his

16   trial testimony, right?

17   A.   Yes.

18   Q.   And Mr. Urquizo testified on February 6th

19   of 2018 that the paperwork that he claims to have

20   gotten from Mr. Calbert was one page?

21   A.   I'd have to take your representation.  I

22   don't recall.

23   Q.   You don't recall what he said about that?

24   A.   No.

25   Q.   But previously Mr. Urquizo had told you



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  that the paperwork was in fact two pages, right?

2      A.   I do recall that, yes.

3      Q.   And that was what he told you during his

4  first interview on March 6, 2017?

5      A.   Yes.  That was not my first time talking

6  to him, but he did say that on that date.

7      Q.   On March 6, 2017, he told you the

8  paperwork that he claims to have gotten was two

9  sheets of paper?

10     A.   Yes.

11     Q.   And he very specifically said it was a

12 police report?

13     A.   I believe so.

14     Q.   And then after that, Mr. Urquizo was

15 interviewed on August 22, 2017?

16     A.   Yes.

17     Q.   January 3, 2018?

18     A.   Yes.

19     Q.   January 22, 2018?

20     A.   Yes.

21     Q.   He came to court and you had some sort of

22 contact with him when he pled guilty on January 26,

23 2018?

24     A.   I don't know if I was at his plea, but he

25 did come to court, yes.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                         1-800-669-9492
                                                    e-mail: info@litsupport.com



```
 1        Q.   And then he had some sort of contact with
 2   the STIU at the Penitentiary of New Mexico on
 3   February 2nd of 2018 before he came down to testify;
 4   is that right?
 5        A.   Yes.
 6        Q.   And during all those interviews, he never
 7   changed his story that the paperwork was two pages,
 8   did he?
 9        A.   I don't believe so.
10        Q.   So the first time he said the paperwork
11   was one page was here in court on February 6th?
12        A.   If he said that on February 6th, then yes.
13        Q.   That's right.  You don't remember what he
14   testified to in court, right?
15        A.   Correct.
16        Q.   So if I'm understanding the situation
17   correctly, David Calbert initially said the
18   paperwork was one page, but then changed it to two
19   pages during his testimony?
20        A.   Yes.
21        Q.   And Lupe Urquizo originally said the
22   paperwork was two pages, but changed it to one page
23   during his testimony?
24        A.   If that's what he testified to, then yes.
25        Q.   And what sort of contact did Mr. Calbert
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   have with Mr. Urquizo just prior to their testimony
 2   in this trial?
 3        A.   I'm not sure.
 4        Q.   They were housed together, weren't they?
 5        A.   Yes.
 6        Q.   And have you asked either Mr. Calbert or
 7   Mr. Urquizo how it was that they both changed their
 8   testimony?
 9        A.   I haven't talked to either man since they
10   testified.
11        Q.   Don't you think it's kind of odd that one
12   of them -- well, that Calbert changed his testimony
13   to match what Urquizo previously said, and that
14   Urquizo changed his testimony to match what Calbert
15   previously said?
16        A.   No.
17        Q.   With respect to Mr. Urquizo, he testified
18   here in court, I believe, and these are my notes,
19   that when you first met with him, that he felt that
20   he was facing the death penalty?
21        A.   I'm sorry?  Which man said that?
22        Q.   Lupe Urquizo.  So I guess that would have
23   been -- you met with him for the first time in
24   February of 2017?
25        A.   I believe so.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And during that first meeting, did you
 2   threaten Mr. Urquizo with the death penalty?
 3        A.   No.
 4        Q.   Did you tell him that if he didn't become
 5   a government witness, he was going to become a
 6   defendant and face the federal death penalty?
 7        A.   Part of that is true, but I didn't mention
 8   the death penalty.
 9        Q.   What part is true?
10        A.   I have made statements to these guys, and
11   I think Urquizo was one of them, that:  You're
12   either a cooperator or you face prosecution if you
13   stay with the S.
14        Q.   So essentially, either you become a
15   witness or you're going to become a defendant?
16        A.   Essentially.
17        Q.   But if Mr. Urquizo said to anybody or
18   testified that you threatened him with the death
19   penalty, that's a lie?
20        A.   Yes.  I didn't do that.
21        Q.   And Mr. Urquizo has also made statements
22   that in that first encounter with you, you
23   threatened to prosecute his brother.
24        A.   No, I did not do that.
25        Q.   So if Mr. Urquizo said that, that's also a
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   lie?
 2              THE COURT:  Well, that's for the jury to
 3   determine.
 4        Q.   Did you threaten Lupe Urquizo's brother
 5   with prosecution?
 6        A.   No.
 7        Q.   Okay.  And Lupe Urquizo does have a
 8   brother, right?
 9        A.   Yes.  He has -- I think he has a couple
10   brothers.
11        Q.   Did you threaten any of them with
12   prosecution?
13        A.   No.
14        Q.   All right.  I want to move on to just a
15   few questions about Mario Rodriguez.  First of all,
16   did Mario Rodriguez get convicted of raping a young
17   man at the Grant County jail?
18        A.   I don't think he was convicted of rape.
19        Q.   Well, he was convicted of some sort of
20   criminal sexual penetration, wasn't he?
21        A.   Yes.
22        Q.   And that involved a young man at the Grant
23   County jail?
24        A.   Yes.
25        Q.   And the offense -- does the offense that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Mr. Rodriguez -- was the offense that he was

2  convicted of an offense that would require him to

3  register as a sex offender if and when he's released

4  from prison?

5      A.   I'm not completely familiar with New

6  Mexico State law, but I think it would.

7      Q.   Okay.  Did you talk to Mr. Rodriguez about

8  it?

9      A.   That incident?

10      Q.   Well, I'm more meaning about the

11  registration requirement.

12      A.   I think I brought it up before.

13      Q.   And Mr. Rodriguez, certainly in your

14  discussions, knew that he had to register as a sex

15  offender, right?

16      A.   I'm not sure.

17      Q.   Well, didn't he discuss it with you in the

18  sense that he was concerned and upset about that

19  registration requirement?

20      A.   Yes.

21      Q.   It was something he didn't want to have to

22  do, right?

23      A.   I agree with you.

24      Q.   And Mr. Rodriguez has claimed at different

25  points in time that the person that he assaulted in

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1  the Grant County jail was a child molester?

2       A.   Yes.

3       Q.   He has said that, right?

4       A.   I have heard that repeatedly, but I don't

5  recall if he specifically told me that.

6       Q.   Okay.

7       A.   That's rumor.

8       Q.   But the fact is, that's not true?  The

9  person he assaulted wasn't accused of child

10 molestation, was he?

11      A.   Not based on that current incarceration,

12 no.

13      Q.   He was in there for driving while

14 intoxicated?

15      A.   Yes.

16           MS. JACKS:  Can we have F as in Frank, C

17 as in Charlie?  May I have the hard copy of the

18 exhibit, Ms. Standridge?

19      Q.   It's my mistake, Agent Acee.  Exhibit FC

20 was shown.  All right.  I have what's been marked as

21 Exhibit FC, and this is a letter that Mr. Rodriguez

22 wrote for somebody to give to Mr. Sanchez.  Do you

23 recall that?

24      A.   Yes.

25      Q.   And this happened, and he brought this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   letter to the meeting that you had with Mr.

2   Rodriguez and Ronald Sanchez in November of 2017,

3   correct?

4        A.   Yes.

5        Q.   And I just want to show you -- I just want

6   to direct you to the PS and ask you some questions.

7   Well, before I do that, let me just ask you a few

8   questions.   In dealing with Mr. Rodriguez as a

9   government witness, did you tell Mr. Rodriguez that

10  if he became a government witness, that the

11  Government would be able to give him a new identity?

12       A.   No, not in those terms.

13       Q.   Well, did you say -- in what terms did you

14  tell him something like that?

15       A.   When I initially met him, I discussed the

16  various options, one of which was, I talked about

17  wit sec before, or witness security, and that

18  there -- in my presentation of that, I talk about

19  relocation and a new identity.   I certainly don't

20  promise that, and I make it clear that the FBI

21  doesn't run that program.

22       Q.   But you did talk to Mr. Rodriguez about

23  the program and about the fact that if he got the

24  program, he could get a new identity?

25       A.   That it was a possibility, yes.



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                       1-800-669-9492
         PROFESSIONAL COURT                     e-mail: info@litsupport.com
         REPORTING SERVICE

1    Q.   And did you also tell him that this new

2  identity would come with a clean criminal record?

3    A.   No, because that's not true.

4    Q.   So if he thought that, he didn't think it

5  because of something that you said?

6    A.   I certainly hope not, because I wouldn't

7  have represented things that aren't true.

8    Q.   Well, I want to just ask you a couple of

9  questions about Eric Duran.  We've heard a lot about

10 Mr. Duran.  And he's a government witness, right?

11   A.   Yes.

12   Q.   He is a government witness that actually

13 got out of jail early because of his cooperation

14 with the Government?

15   A.   He got out of prison early because

16 Corrections gave him a lump sum, yes.

17   Q.   And he got out of prison, and he got a job

18 working for the FBI up in Portland?

19   A.   Yes.

20   Q.   And he was doing that until, I guess, he

21 got arrested by Police Officer Snodgrass who

22 testified yesterday?

23   A.   Correct.

24   Q.   Now, Mr. Duran, as part of his

25 participation in this case as a government witness,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  did he get a new identity?

2       A.    No.

3       Q.    Did he get a clean criminal history?

4       A.    No.

5       Q.    Do you know whether he bragged about

6  getting a new identity or a clean criminal history

7  to Mr. Rodriguez?

8       A.    I don't know about that.

9       Q.    Okay.  I want to show you this letter, FC,

10  and I'm just going to direct your attention to the

11  last page, the PS.

12       A.    Okay.

13       Q.    Agent Acee, this is the letter that Mr.

14  Rodriguez wrote for you or for somebody to provide

15  to Mr. Sanchez, right?

16       A.    Yes.

17       Q.    And tell us what the PS on that letter

18  says.

19       A.    "PS.  A new identity record means you guys

20  can go hunting" -- I think there is a smiley face

21  there -- "again legally.  Think of a real life and

22  all its perks and pleasures.  Serio, happy birthday,

23  Dan."

24       Q.    And when Mr. Rodriguez is referring to you

25  guys, he's talking about Daniel and Daniel's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  brother, Ronald, right?

2       A.   I think so.

3       Q.   And he's telling them that if he became a

4  government witness, that both he and his brother

5  could get a new identity and a clean criminal

6  record?

7       A.   Well, he says, "A new identity record

8  means you guys can go hunting again."

9       Q.   Right.  Because if someone is a felon,

10  they're not supposed to possess a firearm, right?

11       A.   Right.

12       Q.   So if they get a clean criminal record,

13  then they could again legally possess a firearm?

14       A.   Correct.

15       Q.   And that's what Mr. Rodriguez is saying to

16  Mr. Sanchez in the PS of that letter?

17       A.   I think that's what he meant, yes.

18       Q.   That becoming a government witness comes

19  with a new identity and a clean record?

20       A.   Yes.

21       Q.   I have, I think, just one question

22  regarding your interactions with Jerry Armenta.  And

23  Mr. Armenta testified in this trial on February 12th

24  of 2018?

25       A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.    Were you present during that testimony?

2    A.    I was.

3    Q.    And did you hear Mr. Armenta -- he was

4  asked whether Timothy Martinez -- he told the story

5  about the passing of the paperwork, right, between

6  the pods, between yellow pod and blue pod?

7    A.    I believe so.

8    Q.    And in the trial, Mr. Armenta testified

9  that he never said Timothy Martinez was with Mario

10 Rodriguez when this paperwork was allegedly passed,

11 right?

12   A.    I'm sorry.  I just don't remember --

13   Q.    That's okay.

14   A.    -- all his testimony.

15   Q.    Well, in the past when you interviewed Mr.

16 Armenta about that story, he told you that it was

17 Timothy Martinez and Mario Rodriguez that received

18 this paperwork that was supposedly passed under the

19 door, right?

20   A.    I believe.

21   Q.    And he told you that on September 17th of

22 2015, right?

23   A.    Yes.  I was going to say, it's been a long

24 time since I interviewed him.

25   Q.    When you say you believe, do you want to

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1   look at your 302 just to make sure, so that you're
 2   accurate in this trial?
 3        A.   If you're going to ask me more questions
 4   about it, yes.
 5        Q.   I'm just going to ask you that one
 6   question, but I'm happy to show you the 302.
 7        A.   I do believe that's what he told me.
 8        Q.   Let's make sure.
 9             MS. JACKS:  Your Honor, I have a 302 dated
10   September 17, 2015, for an interview with Jerry
11   Armenta.  It's Bates stamped 2249 and 2250.  May I
12   approach the witness?
13             THE COURT:  You may.
14   BY MS. JACKS:
15        Q.   Agent Acee, I'll just ask you to refresh
16   your memory with that report and see if you can't
17   answer the question with more certainty?
18        A.   Could you repeat the question?
19        Q.   Yes.  The question is whether he told you
20   during that interview that Timothy Martinez was with
21   Mario Rodriguez when this paperwork was supposedly
22   passed under the door between yellow pod and blue
23   pod?
24        A.   Thank you.
25        Q.   And can you answer the question?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Yes, he puts Timothy Martinez, Red, there
2 with other people at that time.
3      Q.   Okay.  So if he testified otherwise during
4 the trial, that's inconsistent with his trial
5 testimony, right?
6      A.   It would be inconsistent, yes.
7      Q.   Sorry.  My files are a mess.  Sorry.  I
8 wanted to ask you some questions about Billy
9 Cordova.  I'm just trying to locate that file.  Let
10 me ask you the question and see if I actually have
11 to find the file.
12           Did you participate in an interview with
13 Billy Cordova on December 15, 2017?
14      A.   Yes.
15      Q.   And during that interview, did he tell you
16 for the first time that -- thank you, Richard --
17 that while living in yellow pod in March 2014, he
18 had a shank, and about a week before Urquizo and
19 Varela came to Southern New Mexico Correctional
20 Facility, that Daniel Sanchez asked Cordova for his
21 shank?
22      A.   Yes, I remember that.
23      Q.   So he told you in that interview that Mr.
24 Sanchez asked him for a shank?
25      A.   Yes.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492
                                                                              1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

 1      Q.   But he said the timing of that was a week

 2  before Urquizo got to Southern New Mexico

 3  Correctional Facility?

 4      A.   I assume you're reading from my 302.

 5      Q.   Don't assume.  I have it.  I found it.

 6  Mr. Jewkes found it.

 7           MS. JACKS:  So, Your Honor, I have a 302

 8  dated December 15, 2017, Bates stamped 41728.  It's

 9  three pages.  May I approach?

10           THE COURT:  You may.

11  BY MS. JACKS:

12      Q.   Agent Acee, if you review the 302 from

13  that interview, do you think that would refresh your

14  memory as to what Mr. Cordova specifically told you

15  on that date?

16      A.   Yes.  Thank you.

17      Q.   So the question, I think, was about the

18  timing.  So on December 15th of 2017, what did Mr.

19  Cordova tell you about the timing of Mr. Sanchez

20  supposedly asking him for a shank?

21      A.   He said it was about a week before Urquizo

22  and Varela arrived.

23      Q.   So if he testified in trial that that

24  happened on March 6th or 7th, 2014, that's

25  inconsistent with what he previously told you?

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                        FAX (505) 843-9492
                                                                              1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                         e-mail: info@litsupport.com

```
 1        A.   It's a little bit off, yes.  He said about
 2   a week.
 3        Q.   And he also said -- if it was the week
 4   prior, it's before any sort of paperwork supposedly
 5   came down regarding Javier Molina, right?
 6        A.   Yes.
 7        Q.   Now, Agent Acee, when you're trained as an
 8   FBI agent, are you trained at all about the
 9   circumstances or how it is that you should interview
10   witnesses?
11        A.   Yes.
12        Q.   I mean, let me ask you, when you interview
13   a witness, do you interview that witness alone and
14   outside the presence of other witnesses?
15        A.   Generally not.  Excuse me.  You said with
16   other witnesses?
17        Q.   Yeah.  I mean, would you interview -- if
18   you're investigating a crime, and you have, say,
19   five or six witnesses, what's the preferred
20   procedure in interviewing those five or six
21   witnesses?
22        A.   Interviewing them one at a time.
23        Q.   And why is that?
24        A.   So that we can get an independent
25   assessment of their recollection of the event.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And there is a danger, isn't there,
 2   when -- I mean, even if you interview honest
 3   credible people, if you interview them in a group,
 4   sometimes people adopt portions of other people's
 5   statements, right?
 6        A.   That's a possibility, yes.
 7        Q.   Or later, think that they observed or
 8   heard or saw something that another witness actually
 9   said they heard or saw?
10        A.   That could happen, as well.
11        Q.   I mean, it's a natural occurrence even if
12   somebody is not actively trying to provide false
13   evidence?
14        A.   I agree with you.
15        Q.   Okay.  And then there is also the risk
16   that if somebody was affirmatively trying to
17   provide -- if somebody was affirmatively trying to
18   create a story or provide false evidence, that
19   interviewing them in a group would just give them
20   more ammunition, right?
21        A.   Yes.
22        Q.   So the preferred procedure of every law
23   enforcement officer is to separate witnesses and
24   interview them independently, isn't it?
25        A.   That's my preferred procedure, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Right.  And in this case, where you're
 2   investigating a homicide that occurred in a prison,
 3   you have control over the conditions of when and how
 4   you interview witnesses?
 5        A.   I usually do.
 6        Q.   I mean, it's not like you're responding to
 7   an emergency where there might be 15 people that
 8   need to be immediately interviewed or they might
 9   disappear?
10        A.   Are we talking about the Molina homicide?
11        Q.   Correct.
12        A.   Well, we're going back to me responding to
13   that incident, which I didn't do.  I agree with you
14   that they're inmates and we could certainly control
15   how they were interviewed.
16        Q.   And you've done that in this case?
17        A.   I've interviewed inmates in this case,
18   yes.
19        Q.   Right.  And you control the circumstances
20   under which those interviews occur?
21        A.   As much as I can.
22        Q.   And on December 2nd of 2016, did you
23   conduct a group interview of four witnesses?
24        A.   I'm not sure.
25        Q.   Let me see if I can refresh your memory.
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1  Do you recall interviewing Benjamin Clark, Jerry
 2  Armenta, Robert Martinez, and Roy Paul Martinez
 3  together in a group setting?
 4      A.   Vaguely.
 5      Q.   And the topic of that interview was the
 6  Molina homicide, right?
 7      A.   I don't think so.
 8      Q.   You don't think so?
 9      A.   I'm not sure.
10      Q.   If you saw a 302 that you prepared
11  regarding that group interview, do you think that
12  might refresh your memory --
13      A.   Please.
14      Q.   -- about who was there and about the topic
15  of the conversation?
16      A.   It would.
17           MS. JACKS:   Your Honor, I have a 302 dated
18  December 2nd of 2016, Bates stamped 2163.  May I
19  approach the witness?
20           THE COURT:   You may.
21      A.   Thank you.
22  BY MS. JACKS:
23      Q.   Agent Acee, after reviewing the report,
24  does that refresh your memory about what happened on
25  December 2nd of 2016?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes.
 2        Q.   And can you tell us, who did you interview
 3   on that day?
 4        A.   Well, the numbers are blocked out.  I see
 5   that you've written the names in, and I think that
 6   could be accurate.
 7        Q.   When the Government has produced discovery
 8   to the defense in this matter, they block a lot of
 9   stuff out, right?
10        A.   Yes.
11        Q.   That's called redactions?
12        A.   Yes.
13        Q.   And that document that I provided you,
14   that's a redacted document?
15        A.   It is.
16        Q.   So it shows that you interviewed people
17   together on December 2nd of 2016, right?
18        A.   No.
19        Q.   Oh, it doesn't show that?
20        A.   No.
21        Q.   Did you interview them separately?
22        A.   Yes.
23        Q.   And then you just prepared one 302 with
24   all four people's names and statements in there?
25        A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    And what was the topic of the interviews?

 2        A.    One question:  Who called the green light

 3   on Javier Molina?

 4              Excuse me.  Two questions:  Who called the

 5   green light on Javier Molina?  And when was it

 6   called?

 7        Q.    All right.  So it was regarding the Molina

 8   homicide?

 9        A.    Yes.

10        Q.    Now, is there anything in that report that

11   indicates that the witnesses were interviewed

12   separately?

13        A.    No.

14        Q.    And where did that interview or those

15   interviews take place on December 2, 2016?

16        A.    L pod at PNM North facility.

17        Q.    So in a prison setting in the pod?

18        A.    Yes.

19        Q.    And did you actually enter the pod and

20   speak with the witnesses while they were in their

21   cells?

22        A.    I entered the pod, and then I ask which

23   ones I wanted to speak to, to come down, and I sat

24   at the table downstairs.

25        Q.    So you sat at the table, and then you had
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                        1-800-669-9492



65

1  the witnesses come out one by one?

2      A.   Yes.

3      Q.   And you spoke to the witnesses at the

4  table in the housing pod?

5      A.   Right.

6      Q.   And do you know -- so in terms of being

7  separate, everybody was in the same room, but you

8  interviewed them one at a time?

9      A.   Well, they're in the same pod.  It's a

10  large pod.  The other men were in their cells.

11      Q.   Well, it's a pod of what?  Twelve cells,

12  right?

13      A.   Yes, but this was the cooperator pod, L

14  pod, and they weren't full at that time.

15      Q.   I mean the pod, itself, was a total of 12

16  cells, the physical structure?

17      A.   Yes, somewhere between 12 and 16 cells.  I

18  can't remember what it is at the North.  It seems a

19  little different?

20      Q.   It's half on the top and half on the

21  bottom, right?

22      A.   Yes.

23      Q.   And prior to conducting the interviews in

24  the pod, did you do any sort of test to see whether

25  the conversation that you had at the table in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  pod could be heard by people in the cells?

 2      A.   I didn't do any testing, but I don't

 3  believe it is.  I certainly wasn't shouting.

 4      Q.   We heard some testimony regarding -- I

 5  want to go back to some questions about Eric Duran,

 6  because we heard some testimony about Mr. Duran's

 7  employment with the FBI up in Portland.

 8      A.   Okay.

 9      Q.   Do you recall that?

10      A.   Yes.

11      Q.   And I think that we also heard a little

12  bit of testimony about the fact that he was engaged

13  in some sort of undercover operation?

14      A.   Yes.

15      Q.   And what he was doing was, he was being

16  asked to buy drugs, right?

17      A.   Among the things he was being asked to do,

18  yes.

19      Q.   Okay.  Now, there were some questions

20  asked of Mr. Duran by one of the prosecutors about

21  this undercover operation, and you know a little bit

22  about it?  I'm not going to go into the operation,

23  but you know a little bit about it, right?

24      A.   Yes.

25      Q.   And you saw the Facebook post that

SANTA FE OFFICE                                                MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1  Mr. Duran had made, I think Ms. Duncan questioned

2  him about?

3        A.   Yes.

4        Q.   Okay.  Those don't have anything to do

5  with his undercover work as an FBI informant, do

6  they?

7        A.   I disagree.

8        Q.   Oh, you do?

9        A.   Yes.

10       Q.   So it's your position that the FBI had

11  Mr. Duran make those Facebook posts?

12       A.   I spoke to the agents and supervisor after

13  that hearing to find out, because I wasn't part of

14  that investigation.

15       Q.   Let me stop you right there.  Mr. Acee,

16  have you provided any sort of discovery reports to

17  the defense about that part of your investigation?

18       A.   No.  That's not my investigation.  I

19  just --

20       Q.   I mean about those interviews that you

21  made with respect to Mr. Duran's Facebook posts?

22       A.   I asked.  I inquired.  I didn't interview

23  any other agents.

24       Q.   My question is this:  Have you provided --

25  since Mr. Duran's testimony, have you provided any

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   information to the defendants about that aspect of
 2   your investigation?
 3        A.   No.
 4        Q.   I want to ask you some questions about
 5   this holiday party that was requested by several of
 6   the government witnesses.
 7        A.   Okay.
 8        Q.   And you recall when you were first -- I
 9   think you were first shown the letter.  You were the
10   Government's first witness, right?
11        A.   Yes.
12        Q.   And during that testimony, I think you
13   were shown the letter that the government witnesses
14   had prepared and sent to the warden of the
15   Penitentiary of New Mexico?
16        A.   I was.
17        Q.   Right.  And do you recall what your
18   response was about that when being shown that letter
19   about that party?
20        A.   It was the first time I'd seen it.
21        Q.   The first time you'd seen the letter?
22        A.   Yes.
23        Q.   Do you recall what your response was about
24   the party?
25        A.   I was asked a lot of questions.  No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Well, you acted like it was something you
 2   didn't really want to participate in, right?
 3        A.    Oh, that's correct, yes.
 4        Q.    Was that true?
 5        A.    That I didn't want to participate in it?
 6        Q.    Yes.
 7        A.    Yes.
 8        Q.    Do you know an individual named Bob
 9   Robinson from the New Mexico Department of
10   Corrections?
11        A.    Yes.
12        Q.    And did you talk to him about the letter
13   requesting the holiday party that was written by the
14   government witnesses?
15        A.    I'm not sure.
16              MS. JACKS:  Your Honor, I have an email
17   that Mr. Robinson prepared on Friday August 26,
18   2016, addressed to Warden Franco, Bates stamped
19   51433.  May I approach the witness?
20              THE COURT:  You may.
21              MS. JACKS:  Yeah, I guess I'd better mark
22   it.  I'm going to mark it defense next in order, and
23   that's going to be G as in giant, A as in apple.
24   BY MS. JACKS:
25        Q.    And Agent Acee, I'm going to show you this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   document to see if it refreshes your memory about

 2   conversations you had with Mr. Robinson about that

 3   party?

 4        A.   Thank you.  Okay.

 5        Q.   Does that refresh your memory?

 6        A.   Not really.

 7        Q.   So you don't remember telling Mr. Robinson

 8   that you thought the party was a good idea?

 9        A.   No.

10        Q.   So is it your testimony that he's making

11   that up?

12        A.   No.

13        Q.   You might have told him that?

14        A.   I think I might have agreed to go.  I

15   don't believe I commented on whether or not it was a

16   good idea or not.

17             MS. JACKS:  Your Honor, I'd move to admit

18   Exhibit GA.

19             THE COURT:  Any objection, Mr. Castellano?

20             MR. CASTELLANO:  Yes, Your Honor.  It's

21   hearsay.

22             THE COURT:  Well, I do think it probably

23   is being offered for the truth, so I will sustain

24   the objection.

25   BY MS. JACKS:
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1         Q.    Now, Agent Acee, you were asked a bunch of
2    questions, I think by both sides, about these
3    computer tablets that various people were given.  I
4    just have a few sort of follow-up questions about
5    that.  Okay?  First of all, were some of the
6    computer tablets compromised?
7         A.    Yes.
8         Q.    And they were actually reset, right?
9         A.    Yes.
10        Q.    And once they were reset, the individuals
11   that possessed the tablets could access the internet
12   and do all sorts of things they weren't supposed to
13   be able to do with them?
14        A.    Correct.
15        Q.    And that was a violation of this Court's
16   order about possessing the tablets?
17        A.    I'm sure it was.
18        Q.    And that happened -- those tablets were
19   seized once those individuals violated the court
20   order, right?
21        A.    Yes.
22        Q.    And I think you said that that happened
23   sometime in April 2017?
24        A.    That sounds right.
25        Q.    And they were held -- they were seized by
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   the United States Marshal Service?
 2        A.   I think under their authority.  They were
 3   technically seized by whatever facilities the guys
 4   were at.
 5        Q.   And then the facilities provided them to
 6   the Marshal Service?
 7        A.   I think.
 8        Q.   All right.  Well, I think you knew -- you
 9   knew when the tablets were seized, right?  Or
10   shortly thereafter?
11        A.   Shortly thereafter, yes.  We had some
12   hearings about it, and I was at those.
13        Q.   So if the tablets were seized sometime in
14   April of 2017, you became aware they were seized in
15   April of 2017, right?
16        A.   Yes.
17        Q.   And the FBI has a forensic computer unit,
18   right?
19        A.   Yes.
20        Q.   And the FBI is certainly capable of doing
21   an analysis of those tablets and figuring out what
22   sort of nefarious things, purposes they were used
23   for, right?
24        A.   Yes.
25             THE COURT:  Ms. Jacks, would this be a
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  good time for us to take our morning break?

2          MS. JACKS:  Sure, that's fine.

3          THE COURT:  Let me remind the jury of a

4  few things.  We're clicking along and making some

5  transitions here, so I want to remind you of a few

6  things that are especially important.

7          Until the trial is completed, you're not

8  to discuss this case with anyone, whether it's

9  members of your family or people involved in the

10  trial or anyone else, and that includes your fellow

11  jurors.  If anyone approaches you, let me know about

12  it immediately.  Also, you must not read or listen

13  to any news reports of the trial.  Again, don't get

14  on the internet and do any research for purposes of

15  this case.

16          And finally, remember that you must not

17  talk about anything with any person who is involved

18  in the trial.  If you need to speak with me, simply

19  give a note to one of the court security officers or

20  Ms. Standridge.

21          You may hear these a little bit more

22  frequently today than we have for a number of weeks,

23  but if I don't repeat them, do keep them in mind

24  each time we take a break.

25          All right.  We'll be in recess for about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   15 minutes.

 2            All rise.

 3            (The jury left the courtroom.)

 4            THE COURT:  All right.  We'll be in recess

 5   for about 15 minutes.

 6            (The Court stood in recess.)

 7            THE COURT:  All right.  Let's go on the

 8   record.

 9            Let me talk a little bit about some jury

10   instructions.  I've been focusing on the defendants'

11   since theirs was filed first, their objections.  Did

12   the Government get a chance to look at the

13   defendants' objections and have comments on those?

14   I guess one thing -- I have tried to be very

15   careful, and I'm going back through and I'm trying

16   to be doubly careful in making some changes so that

17   I don't treat the defendants as a unit.  I don't

18   want to do that.  But at the same time, sort of our

19   tradition in the Tenth Circuit is to use names when

20   we can so that it's not quite as impersonal as just

21   always referring to the gentleman as a "defendant."

22   So I've picked and choose, and I'm doing more and

23   more, going toward "defendant" to make sure that I

24   don't treat anybody as a unit.

25            What's the Government's position?  If the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   defendants want to be called "defendant" or
 2   "defendants" throughout, do you want me to just
 3   change it to do what they're wanting?  Or do you
 4   want me to kind of pick and choose, and we'll see
 5   where we are at the end, to make sure I don't treat
 6   the defendants as a unit?
 7            What's your thoughts on that?
 8            MR. CASTELLANO:  Your Honor, I did look at
 9   the instructions last night, and I filed our
10   response.  And a few times I did comment on their
11   request.  Other times, I didn't because, frankly, I
12   was just indifferent about whether they were there
13   or not.  But I do agree that sometimes adding all
14   four names just kind of makes it wordy.  So I think
15   it would actually streamline the instructions to use
16   the term "defendant" or "defendants" throughout.
17   I'm fine with that.
18            There are a couple of instructions
19   specifically where I asked that the word "or" be
20   inserted.  That was on the aiding and abetting, and
21   I think conspiracy.  Because that required either of
22   them -- any of them conspire with someone else, not
23   all four of them.  So the way it read, it read all
24   four had to agree with someone else, or had to have
25   aided and abet someone else.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            So under those circumstances, I asked for
 2   an "or" so that any one of them could conspire with
 3   another or aid and abet another.
 4            THE COURT:  Well, I guess my question is,
 5   and maybe you answered it.  I think they just want
 6   to eliminate names and just go with "defendant" and
 7   "defendants."  Do you have any objection to that?
 8            MR. CASTELLANO:  I don't, Your Honor.
 9            THE COURT:  All right.  So I'll just go
10   that way.  It seems to me it's a little different
11   than what we're used to in the Tenth Circuit, and it
12   makes them a little more impersonal.  But if that's
13   what everybody wants, I'll just go with it.
14            Did you have any other comments?  Would
15   you be able to do this at some point, just take
16   their instruction, just say -- if you'd just write
17   beside it "no objection" or something just real
18   cryptic, it might help me sort of eliminate some
19   stuff.  If y'all don't care about some of this
20   stuff, I don't care either.  I just haven't had,
21   sometimes, the feedback from that red line copy that
22   they gave me on Monday morning.  I believe it was
23   Monday morning.
24            MR. CASTELLANO:  Right.  What I would say
25   is, when I cared, I commented.  And generally when I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   didn't care, I did not comment.

 2             THE COURT:  So I can make their change

 3   unless I see something very substantive about it?

 4             MR. CASTELLANO:  I think so.  I'll try to

 5   look it over, Your Honor.

 6             THE COURT:  All right.  So if I hear you

 7   don't care, I'm going to assume -- if I don't see

 8   something in yours, you don't care.  And unless I

 9   see something substantive, I just may go along with

10   the defendant and try to get these things to a

11   conclusion.

12             MR. CASTELLANO:  I think for the most

13   part, that's correct.  I may catch something, but

14   generally I would say yes.

15             THE COURT:  Okay.

16             MR. VILLA:  Your Honor, there are a couple

17   of places where we specifically said we wanted to

18   use names, like number 43.  But it's outlined in the

19   document we filed last night.

20             THE COURT:  Okay.

21             All rise.

22             (The jury entered the courtroom.)

23             THE COURT:  All right.  Everyone be

24   seated.

25             All right, Mr. Acee, I'll remind you,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    you're still under oath.

2            Ms. Jacks, if you wish to continue your

3    direct examination of Mr. Acee, you may do so.

4    BY MS. JACKS:

5        Q.   I forgot to make a note of exactly where I

6    was.  Were we talking about the tablets?

7        A.   Yes.

8        Q.   We were talking about the fact that the

9    FBI has the capability to look at that, to download

10   the tablets and determine what the various

11   government witnesses did with them?

12       A.   Yes.

13       Q.   But you never made a request for the

14   tablets to be submitted to the FBI; is that right?

15       A.   I discussed it with the U.S. Attorney's

16   Office.

17       Q.   And then it was decided that you would not

18   make a request for the Court to release the tablets

19   to you, to send to the FBI?

20       A.   Are you asking if I made that decision?

21       Q.   No.  I'm just asking:  The decision was

22   made, correct?

23       A.   The decision was made.

24       Q.   And the decision was a conscious one?  It

25   wasn't like you forgot about the fact that the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   marshals had the tablets?

 2        A.   No.

 3        Q.   You consciously decided:  Let's not get

 4   the tablets; we're not going to send them to the FBI

 5   forensic lab?

 6        A.   I mean, that's what I wanted to do.

 7        Q.   But it was decided that you wouldn't do

 8   it, right?

 9        A.   It was decided that I wouldn't write a

10   search warrant.

11        Q.   The tablets remained in the marshals'

12   custody until the defendants were able to get a

13   court order to release them so that they could

14   provide them to Mr. Bryan, right?

15        A.   I don't know who requested the court

16   order, but they were provided to Mr. Bryan.

17        Q.   And at the time that they were released

18   and provided to Mr. Bryan, they had been seized for

19   at least nine months?

20        A.   I believe so.

21        Q.   And I just want to follow up on a few

22   questions that Ms. Bhalla asked you this morning

23   regarding the property that was seized by the FBI,

24   the Mario Rodriguez property.

25        A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1       Q.   That was seized by the FBI and remained in

 2   the possession of, I guess, FBI Agent Sainato from

 3   June 2017 until last Sunday?

 4       A.   Correct.

 5       Q.   And one of the things that she asked about

 6   were the letters that were in Mario Rodriguez --

 7   some of the letters that were in Mario Rodriguez's

 8   property?

 9       A.   Yes.

10       Q.   And specifically, she asked you about a

11   letter or letters that were written to Timothy

12   Martinez, another government witness?

13       A.   Yes.

14       Q.   And I think she -- first of all, those

15   letters that were written to Timothy Martinez were

16   found in the property of Mario Rodriguez?

17       A.   Yes.

18       Q.   And there was more than one?

19       A.   I saw three this morning.

20       Q.   And the letters specifically referenced

21   the fact that certain individuals' statements that

22   people had made, government witnesses had made,

23   didn't match up with the discovery in the case?

24       A.   I saw one letter like that yesterday.

25       Q.   And so do you have any understanding about

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                     (505) 843-9494
FAX (505) 843-9492                                                                 FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   why Mario Rodriguez had letters that were written to

2   Timothy Martinez that contained information about

3   people matching statements to discovery in this

4   case?

5        A.   You're asking if I know why?

6        Q.   Yes.

7        A.   I have some ideas, but I definitively

8   don't.

9        Q.   And you didn't question Mr. Rodriguez

10  about it, right?

11       A.   Since the discovery, no, I have not.

12       Q.   Right.  Because, I mean, you just became

13  aware of this on Sunday or Monday of this week,

14  right.

15       A.   On Sunday evening.

16       Q.   And those letters -- well, the defense

17  attorneys weren't permitted to question Mr.

18  Rodriguez about those Timothy Martinez letters

19  because we didn't have them when Mr. Rodriguez was

20  on the stand?

21       A.   The second part of your answer is correct,

22  yes.

23       Q.   And she also asked you some questions

24  about the letters that Mr. Rodriguez had in his

25  possession that were sent to courthouses to try to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  get court documents or police reports on cases?

2      A.   I saw a letter addressed to the clerk here

3  in Las Cruces.

4      Q.   And in those letters, Mario Rodriguez

5  falsely represented that he was trying to get the

6  court materials because it affected his case?  Like

7  his appeal, I think he said?

8      A.   I have an idea what he was asking for, but

9  I can't say if he -- he may have had an appeal.

10 He's certainly been arrested a lot of times.

11     Q.   But the documents he was requesting had

12 nothing do with any sort of legal proceeding against

13 him, did they?

14     A.   I'm not sure.  It listed a cause number.

15 I just don't remember if it said a person's name

16 related to that.

17     Q.   Well, did you investigate what he was

18 trying to get?

19     A.   No.

20          MS. JACKS:  If I can have a moment, Your

21 Honor, I think I'm done.

22          THE COURT:  You may.

23          MS. JACKS:  I have nothing further, Your

24 Honor.  Thank you.

25          THE COURT:  Thank you, Ms. Jacks.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Mr. Castellano, do you have
 2    cross-examination of Agent Acee?
 3              MR. CASTELLANO:  Yes, Your Honor.  Thank
 4    you.
 5              THE COURT:  Mr. Castellano.
 6    BY MR. CASTELLANO:
 7        Q.   Agent Acee, let's start where counsel left
 8    off here.  The paperwork that was found in
 9    Mr. Rodriguez's personal effects, you became aware
10    of that this weekend?
11        A.   Yes, sir.
12        Q.   Were they basically discovered in a box
13    that had another agent's SWAT gear in it?
14        A.   Yes.
15        Q.   And were you made aware that once he
16    initially perused them, looking for evidence of
17    court documents, things of that nature, that he put
18    it under there, and then it was forgotten about?
19        A.   Yes.
20        Q.   And is it approximately 960 documents?  Is
21    that what you think?
22        A.   It's a large stack.
23              MR. CASTELLANO:  Your Honor, I move the
24    admission of all those documents at this time.
25              MS. FOX-YOUNG:  Your Honor, may we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  approach?

2         THE COURT:  You may.

3         (The following proceedings were held at

4  the bench.)

5         MS. FOX-YOUNG:  I'd like to voir dire the

6  witness in the presence of the jury.  He doesn't

7  know what's in there or what the evidence is.  We

8  honestly want for the Government to be able to admit

9  this is documents that were just produced to us

10 after they've been in the possession of the FBI

11 since last summer, and held back, and therefore

12 prejudicing the defense.

13        And the Court shouldn't allow it on the

14 Government's motion.  And I don't think this is the

15 right witness to do it with.  We have not had an

16 opportunity to review all 1,000 pages.

17        THE COURT:  All right.  That was going to

18 be my question.  Have the defendants collectively

19 been able to divide it up and go through it and see

20 what's in there?

21        MS. BHALLA:  Your Honor, I did try to go

22 through and look through, and my paralegal and I

23 split it up.  The reality is, you take a page like

24 this, it is tiny writing.  It's hard to read.  Some

25 of the copies aren't legible, due to poor photo

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    quality.

2          It has -- there is personal information

3    belonging to other people in the documents like we

4    talked about with the address book, and it's got

5    Social Security numbers in it.  We've got what we

6    believe to be family members' names, addresses, and

7    dates of birth.  That's one of the reasons we

8    haven't moved it in evidence, because we haven't

9    been able to continue the review to see what other

10   kind of information is in there.  It would take us a

11   week to go through all that stuff because it is

12   thousands and thousands of pages, handwritten notes

13   from Mr. Mario Rodriguez, that are tiny and long,

14   and it's a Herculean task, which is why the proposal

15   for us to re-call Mario and question him on this is

16   impossible for the defense to do.  It's just

17   impossible.

18          THE COURT:  All right.  Mr. Lowry.

19          MR. LOWRY:  Your Honor, you just sustained

20   the objection from the Government on the email

21   because it's hearsay.  And frankly, all this

22   material is hearsay.

23          THE COURT:  Have you looked at it enough

24   to see if there is hearsay in this material?

25          MR. LOWRY:  Well, it's statements about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   him.  It's his diaries.  It's everything that's been

 2   described.  I haven't looked at it enough, Your

 3   Honor.  We divided it up, a certain portion that

 4   looked more applicable, a diary portion.  But there

 5   is pornography in there.  There is all kinds of

 6   stuff in there that has no business going to the

 7   jury.

 8            To put it in wholesale is just -- it's not

 9   called for.

10            THE COURT:  Mr. Jewkes, do you have

11   thoughts on this?

12            MR. JEWKES:  After what everyone else has

13   said, I haven't looked at four or five documents.

14            THE COURT:  What did you see?

15            MR. JEWKES:  Hearsay.  And I have a

16   question about materiality, relevance as to some of

17   these documents.  But without going through them, we

18   would object.

19            MR. CASTELLANO:  The Court can offer a

20   limiting instruction, but the defense counsel made

21   it an issue, asked questions:  Do you know how many

22   times he's talked about violence?  Do you know how

23   many times?  Leaving the impression that they had

24   gone through the documents and they knew how many

25   times it was.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              So clearly, they wanted to use it to
 2    create an impression that Mr. Rodriguez had lots of
 3    things in there, and this is not for the jury to
 4    decide.  And these are regarding his statements
 5    according to what the defense represented to the
 6    witness on the stand, and so those documents are now
 7    squarely at play here.
 8              And, I mean, they use the line of
 9    questioning prejudicial information against Mr.
10    Rodriguez in those documents, and I'm welcome to let
11    the jury have that information.
12              THE COURT:  Hold on.  Let me see if I can
13    say something here and see if everybody can -- it
14    seems to me that whatever prejudice the Government
15    has endured from that questioning was fairly
16    minimal.  It seems to me that doing a document dump
17    on the jury right here toward the end of the case
18    can be problems for everybody, the Court,
19    Government, all the defendants, and their lawyers.
20              I would suspect, without having seen much,
21    that there is going to be hearsay statements.  I do
22    think that it is very likely to be some 403
23    problems, and I think there may be some 401
24    problems.  So I think we're going to run into
25    problems if we just have a document dump.  So I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think we'd be better off denying it.

2            I think that without the Court having an

3    opportunity, and the defendants particularly

4    engaging in an adversarial process that helps the

5    Court make informed decisions about the documents, I

6    don't think that this is the way to proceed.

7            So I'm going to sustain the objections and

8    not allow the documents to come into evidence.

9            MR. BECK:  Your Honor, I'm just providing

10   a copy of the agent's notes, asked for this morning

11   to each defense counsel.

12           MS. FOX-YOUNG:  For the record, is the

13   Government representing that this constitutes the

14   remainder of the agent's notes that are relevant to

15   the cooperating witnesses that testified in this

16   case?

17           MR. BECK:  Yes.

18           THE COURT:  All right, everybody.  Live

19   with that.

20           MS. FOX-YOUNG:  Thank you, Your Honor.

21           (The following proceedings were held in

22   open court.)

23           THE COURT:  All right.  Mr. Castellano.

24           MR. CASTELLANO:  Your Honor, I understand

25   the Court's ruling.  I'll just note my objection for

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                     1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                                   e-mail: info@litsupport.com

```
 1   the record.

 2            THE COURT:  I understand.

 3   BY MR. CASTELLANO:

 4       Q.   Okay.  Now, Agent Acee, you were asked

 5   whether or not the defense counsel was permitted to

 6   question Mr. Rodriguez about these documents.  Do

 7   you remember that?

 8       A.   Yes.

 9       Q.   And isn't it true that the Government

10   agreed to make Mr. Rodriguez available as a witness

11   once again so that defense could question him about

12   those documents?

13       A.   Yes.

14       Q.   And the United States offered to bring

15   Mr. Rodriguez to court today so they could ask him

16   questions if they wanted to?

17       A.   Correct.

18       Q.   And did they refuse that offer?

19       A.   Yes.

20            MS. FOX-YOUNG:  Your Honor, may we

21   approach?

22            THE COURT:  You may.

23            (The following proceedings were held at the

24   bench.)

25            MS. FOX-YOUNG:  Your Honor, I have a
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                1-800-669-9492
                                                          e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   couple of objections.  First of all, I think there
 2   is a foundational problem with Agent Acee is not the
 3   person to make any representations as to whether or
 4   not a witness could be provided.  But I think we're
 5   also getting into burden shifting here.
 6             THE COURT:  The Court knows, and the jury
 7   needs to know and is about to be instructed that the
 8   defense has no burden to put on any witness or any
 9   evidence in this case in this line of questioning.
10   I'll remind them at this point of that.
11             Let's move along.  I think you made the
12   point.  I do think he was a witness, he saw it all
13   yesterday, so it's not like he didn't have personal
14   knowledge.  But I will remind the jury.  And I'll
15   tell them in our final instructions; I'll give a
16   fuller instruction about that.
17             (The following proceedings were held in
18   open court.)
19             THE COURT:  All right.  Let me remind the
20   jury, and I'll give you full instructions on this
21   when I give my final instructions, but I told you at
22   the beginning of the trial and I'm telling you now
23   and I'll tell you at the end of the trial, the
24   defendants don't have any burden to put on any
25   evidence at all.  So keep that in mind.  They have a
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492

**BEAN**
**& ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  presumption of innocence.  They don't have to

2  testify, they don't have to put on any witnesses or

3  anything like that.  So they don't have a burden

4  here of producing any witnesses, and I'll talk to

5  you more fully about that when we get to the final

6  instructions.  All right.

7          Mr. Castellano.

8  BY MR. CASTELLANO:

9      Q.   Agent Acee, you were asked about a letter

10 in Blue's paperwork regarding Timothy Martinez.  Do

11 you remember that?

12     A.   Yes.

13     Q.   And do you recall that the letter was

14 dated October of 2015?

15     A.   Yes.

16     Q.   And that was the time when the state case

17 was still pending, correct?

18     A.   Correct.

19     Q.   And so to say government witnesses, those

20 would have actually been state witnesses and not

21 witnesses for this case?

22     A.   Correct.

23     Q.   And you're aware of this scheme they tried

24 at the state level, correct?

25     A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    About Mr. Armenta trying to take the rap

2    for everybody?

3      A.    Yes.

4      Q.    And it was at this timeframe that that

5    letter was written?

6      A.    Yes.

7      Q.    Now, turning to the tablets, were you able

8    to seize those tablets, or was there a court order

9    in place protecting those tablets?

10     A.    There was a court order in place that did

11   not allow me or other law enforcement to take the

12   tablets.

13     Q.    And is it your understanding that if there

14   was -- at the facility, if there is an issue of

15   tampering or suspected tampering, all that could be

16   done was the tablet would be seized and inspected

17   briefly to see if it had been tampered with?

18     A.    By corrections staff, yes.

19     Q.    And did that order allow you to seize the

20   tablets otherwise?

21     A.    It did not allow me or other law

22   enforcement to seize the tablets.

23     Q.    And are you aware that Ms. Jacks was one

24   of the persons that helped put that protective order

25   together with the United States?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1       A.   Yes.
 2       Q.   And when you talked about not being able
 3  to obtain a search warrant even though the tablets
 4  had been tampered with, were you aware if they were
 5  used in any crime?
 6       A.   They were not.  I couldn't find one.  I
 7  researched it.  I talked with attorneys at your
 8  office and we couldn't find a crime where I could
 9  request it from a judge.
10       Q.   So you knew it was tampered with, but you
11  don't know if it was involved in any crime
12  whatsoever?
13       A.   Correct.
14       Q.   Without evidence of a crime, would you be
15  able to obtain a search warrant?
16       A.   No.
17       Q.   Now, you're aware that actually for months
18  there was discussion in court at hearings about the
19  best way to get these tablets to somebody for
20  inspection?
21       A.   Yes.
22       Q.   And those tablets, there is also concern
23  because there might be attorney-client information
24  on those tablets for those --
25            MS. JACKS:  Objection to the leading
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   nature of this questioning.

 2            THE COURT:  Let's not lead.

 3            MS. JACKS:  And also, Your Honor, the

 4   tablets were a one-way street.  They only had

 5   discovery.

 6            THE COURT:  Well, I'll let you work with

 7   that on redirect.  Let's not lead, Mr. Castellano.

 8            MR. CASTELLANO:  Okay.  I would just ask

 9   for a little leeway since this is cross-examination.

10            THE COURT:  I understand it's cross, but I

11   think Mr. Acee has pretty much identified with your

12   table.

13            MR. CASTELLANO:  Understood, Your Honor.

14   BY MR. CASTELLANO:

15       Q.   Agent Acee, do you remember there being

16   talk of people being able to put attorney-client

17   information on those tablets?

18       A.   Yes.

19       Q.   And so was that also a concern?

20       A.   Yes.

21       Q.   Are you able, without a court order, to

22   look at something that is privileged?

23       A.   I'm not able to, and I should not.

24       Q.   So, for example, would you be able to,

25   without suspicion, be able to look at defendants'
```



SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

 1   tablets?  Because there might be protected material

 2   on there?

 3        A.   It's protected.  I don't want anything to

 4   do with the tablets without a court order.

 5        Q.   You were asked about Eric Duran and the

 6   investigation he was involved in once he left New

 7   Mexico.  Do you remember that?

 8        A.   Yes.

 9        Q.   Did that involve drugs and money

10   laundering?

11        A.   Yes.

12        Q.   Related to Mr. Duran's Facebook post, did

13   you learn that --

14             MS. JACKS:  Objection, hearsay.  This

15   information has also been withheld from the

16   defendants to this moment.

17             THE COURT:  Well, let's do this.  I didn't

18   quite get the question, so ask the question.  Try

19   not to put in the question any sort of out-of-court

20   statement.  And, Mr. Acee, if you'll give me a

21   second to hear the question before you answer it.

22             MS. JACKS:  Well, Your Honor, if the

23   Government is going to elicit testimony about an

24   investigation, the defense requests discovery of

25   that investigation.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. CASTELLANO:  I'm not seeking --
 2            MS. JACKS:  We're at a disadvantage
 3  because that hasn't been provided to us.
 4            MR. CASTELLANO:  I'm not seeking that
 5  information, Your Honor.  I'm talking about the
 6  Facebook post which she asked about.
 7            THE COURT:  All right.
 8            MS. JACKS:  Right.  But my understanding
 9  was that Agent Acee conducted an investigation into
10  those Facebook posts, and that has not been provided
11  to the defendants.
12            THE COURT:  Let's hear the question, and
13  then we'll see if you still have an objection to
14  this one question.
15  BY MR. CASTELLANO:
16     Q.   I'll pose this as a yes or no, Agent Acee,
17  so we don't have to worry about that.  Were you made
18  aware of whether or not Eric Duran's Facebook post
19  was authorized by law enforcement?
20            MS. JACKS:  Objection, hearsay and lack of
21  discovery.
22            THE COURT:  Sustained.
23  BY MR. CASTELLANO:
24     Q.   And I don't need to know the answer, but
25  did you do a follow-up -- well, don't tell me what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  anyone said.  Did you follow up on the issue with

 2  the people in that state?

 3       A.   Yes.

 4       Q.   Once again, without telling us what was

 5  said, did you get an answer responsive to your

 6  question about the Facebook page?

 7       A.   Yes.

 8       Q.   You were asked about a report which was

 9  Bates stamped 20163.  Do you remember that?

10       A.   Which report is it?

11       Q.   I'll show it to you in a second, but

12  referring to these numbers, including another

13  report, March 6, 2017, regarding Lupe Urquizo, do

14  you remember being asked about that?

15       A.   Yes.

16       Q.   And do you recall the Bates stamp number

17  was 43,638?

18       A.   No, but I believe you.

19       Q.   Does that number indicate how many

20  documents have been disclosed in this case?

21       A.   Yes.

22       Q.   So at least as far as this is concerned,

23  over 40,000 documents?

24       A.   Correct.

25       Q.   Are you familiar with all those documents

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1  without reviewing them?

 2       A.   No.

 3       Q.   The document here with the number 20,163

 4  is the report you were asked about regarding a

 5  December 2, 2016, interview with four inmates.  Do

 6  you recall that?

 7       A.   Yes.

 8       Q.   And do you recall asking people who called

 9  the green light on Javier Molina and when was it

10  called?

11       A.   I do.

12       Q.   And did those people each answer your

13  questions separately and alone with you?

14       A.   Yes.

15       Q.   And did those people each give you

16  information about who called that hit?

17       A.   Yes.

18       Q.   And approximately how long before Javier

19  Molina was hit?

20       A.   Yes.

21       Q.   And were those people, if you remember,

22  Benjamin Clark?

23       A.   Yes.

24       Q.   Roy Martinez?

25       A.   Yes.


SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                              1-800-669-9492
                                                      e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.    Robert Martinez?

 2        A.    Yes.

 3        Q.    And I'm forgetting the fourth one, but

 4   were they witnesses in this case?

 5        A.    They are.  And if you need me to recall

 6   the fourth one, I think I can.

 7        Q.    And independently, did they each tell you

 8   who called the hit on Javier Molina?

 9        A.    Yes.

10        Q.    And who was that person?

11              MS. JACKS:  Objection, hearsay.

12              THE COURT:  Sounds like it's being offered

13   for the truth.  Sustained.

14        Q.    I don't need to know the name, but

15   independently did they provide a name of who called

16   the hit?

17              MS. JACKS:  Objection.  It also calls for

18   hearsay.

19              THE COURT:  Sustained.

20   BY MR. CASTELLANO:

21        Q.    I didn't ask for a name, Agent Acee, but

22   I'll move on.  Regardless, did you talk to these

23   four people independently?

24        A.    Yes.

25        Q.    Not as a group?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    Not as a group.  Independently.

2        Q.    I'm going to go back a little bit now.

3   You first started your examination at the beginning

4   of the week.  Do you remember that?

5        A.    On Monday, yes.

6        Q.    It seems like a long time ago now.  Okay.

7   You were cross-examined by Mr. Baca's attorney about

8   Mr. Baca being eager to kill Mr. Marcantel.  Do you

9   remember that?

10        A.    Yes.

11        Q.    And do you recall from the investigation

12   that initially Mr. Baca, on the recordings, wanted

13   to kill Mr. Santistevan and Adam Vigil?

14        A.    Yes.

15        Q.    And then over the course of the

16   investigation, do you recall that he also focused on

17   Mr. Marcantel?

18        A.    Yes.

19        Q.    And you were asked about what Christopher

20   Garcia knew at the time that he turned over the

21   firearm to Mario Montoya on November 29th of 2015?

22        A.    Yes.

23        Q.    So would that recording give us a pretty

24   good idea of what that conversation was about?

25        A.    Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          MR. CASTELLANO:  Your Honor, at this time
 2  I'm going to play one or two clips from Government's
 3  Exhibit 396 related to that issue.
 4          THE COURT:  All right.
 5          (Tape played.)
 6      Q.   So this part of investigation, do you
 7  recall that Mr. Garcia is discussing Mr. Marcantel?
 8      A.   Yes.
 9      Q.   And I think I have a second clip from that
10  exhibit, which is Exhibit 396.
11          (Tape played.)
12      Q.   Hearing that conversation, is it your
13  understanding that Christopher Garcia was providing
14  a suggestion or advice to Mario Montoya on how he
15  could plant evidence, making it look like someone
16  else was at the crime scene?
17      A.   Yes.
18          MS. JACKS:  Your Honor, can we request a
19  limiting instruction regarding this?
20          THE COURT:  Yes.  These are conversations;
21  again, you've heard them earlier with Mr. Baca.  So
22  you can only use these conversation and then this
23  testimony that Mr. Acee is giving about these
24  recordings, in your deliberations against Mr. Baca.
25  They can't be used by the jury in its deliberations
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  as to any other defendant.
 2          MR. LOWRY:  Well, Your Honor, they're not
 3  conversations with Mr. Baca, either.  We'd ask a
 4  limiting instruction be applied here, as well.
 5          THE COURT:  Well, but it's evidence
 6  against Mr. Baca, unless I'm confused here.
 7          MR. CASTELLANO:  It is, Your Honor.
 8          THE COURT:  All right.  So overruled as to
 9  that.
10  BY MR. CASTELLANO:
11      Q.   Now, you were also asked about your Grand
12  Jury testimony related to these conspiracies to
13  murder Mr. Marcantel and Mr. Santistevan.  Do you
14  remember that?
15      A.   Yes.
16      Q.   And during the Grand Jury, did you lay
17  this out for them?
18      A.   Yes.
19      Q.   And when Adam Vigil was mentioned, do you
20  recall why Adam Vigil was particularly important at
21  that time when the recordings were taken?
22      A.   Yes.
23      Q.   Why was he important?
24      A.   Mr. Vigil is an STIU administrator, and he
25  had been identified as an expert witness in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    state homicide case against Javier Molina.

2         Q.   So at that point he was not only an STIU

3    investigator, but he was a witness?

4         A.   He was going to be a witness and a gang

5    expert.

6         Q.   And that's the Javier Molina murder at the

7    state level?

8         A.   Yes, sir.

9         Q.   Now, you were asked the question also, a

10   phrase you've used before, something you tell

11   cooperators:  If it's not recorded, it didn't

12   happen.

13           Do you remember that?

14         A.   Yes.

15         Q.   And remind us again why you tell

16   cooperators that.

17         A.   I'm emphasizing that I want recordings;

18   that I'm placing them with a recording device and

19   they're to use it.

20         Q.   Is it your position that if it was

21   recorded, it did happen?

22         A.   No.

23         Q.   So just because something is a recording,

24   does it still need to have context and meaning in

25   light of other evidence that you know?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                            e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1       A.   Exactly.  Yes.
 2       Q.   And once again, is it actually a true
 3  statement to say if it wasn't recorded, it didn't
 4  happen?
 5       A.   No.
 6       Q.   Do you recall when Mr. Baca returned to
 7  New Mexico?
 8       A.   Yes.
 9       Q.   Go ahead and give me a month and year, for
10  starters.
11       A.   October 2015.
12       Q.   And if you recall, is it your recollection
13  that within a week he was seeking the murder of Mr.
14  Santistevan and Mr. Vigil, for starters?
15       A.   Yes.
16            MR. CASTELLANO:  Your Honor, at this time
17  I'd like to move the admission -- or actually replay
18  portions of Government's Exhibit 356.
19            THE COURT:  All right.
20            MS. JACKS:  Again, we'd ask for a limiting
21  instruction, Your Honor.
22            THE COURT:  All right.  Remind me what 356
23  entails.
24            MR. CASTELLANO:  356 is a recording.  I
25  think it includes Mr. Duran and Mr. Baca and Mr.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Montoya, if I'm not mistaken.

 2              THE COURT:  All right.  So, again, the

 3   limiting instruction is that you can only use this

 4   in your consideration of the charges against Mr.

 5   Baca.  You cannot use it in your consideration or

 6   deliberations as to the charges against any of the

 7   other gentlemen.  All right.

 8              Mr. Castellano.

 9              MR. CASTELLANO:  Thank you, Your Honor.

10              MR. LOWRY:  Your Honor, can we lay a

11   little bit of foundation on this, when this

12   recording was made?

13              THE COURT:  Do you wish to do that, or do

14   you want to leave that for redirect?

15              MR. CASTELLANO:  Actually, Your Honor, the

16   recording itself will state when it was made, in the

17   second clip.

18              THE COURT:  All right.  I'll let you go

19   into further on it, Mr. Lowry, but let me let Mr.

20   Castellano put it on how he wishes.

21              (Tape played.)

22   BY MR. CASTELLANO:

23      Q.   There are some unintelligibles here.  Did

24   you hear him say that Santistevan and Adam Vigil are

25   making desmadre?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      A.   Yes.

 2      Q.   Okay.  Thank you.  Let's continue, please.

 3           (Tape played.)

 4      Q.   Now that the recording has concluded, do

 5 you recall that this is a conversation including Mr.

 6 Baca, Mr. Duran, and Mario Montoya?

 7      A.   Yes.

 8      Q.   Let me play the next clip.

 9           (Tape played.)

10      Q.   Okay.  For the record, the transcript is

11 also on the screen, and I'm circling -- actually,

12 I'm underlining the words, "But they just brought

13 Pup back last week"?

14      A.   Yes.

15      Q.   So does that give you an indication that

16 this happened within a week of Mr. Baca arriving

17 back in New Mexico?

18           MR. LOWRY:  Objection, Your Honor.  It

19 misstates the facts.  This witness has testified

20 that these telephone recordings didn't initiate

21 until November 4, 2015, and it's much longer than a

22 week after Mr. Baca returned.

23           THE COURT:  Well, let Mr. Acee testify

24 what his understanding is, and then you can go into

25 it on redirect.  Overruled.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BY MR. CASTELLANO:

    Q.   Is that what it says, at least?

    A.   Yes.

    Q.   You were asked whether Eric Duran was a
skilled manipulator or has the gift of gab.  Do you
remember that?

    A.   Yes.

    Q.   And how is he a skilled manipulator, if he
is?

    A.   I observed him have several girlfriends,
get them to put money on his books.  Over time, I
believe he's convinced some of them to bring drugs
into the facility.  And he's able to -- over time,
I've observed through my investigation where he's
been able to get prison staff to do stuff for him,
too, that they shouldn't be doing.

    Q.   When it came to Roy Martinez and Robert
Martinez, do you recall whether or not he was able
to ask them to put their ideas to paper in terms of
the murder conspiracy?

    A.   Yes, he was.

    Q.   And did they do that against their own
will, as far as you know from the evidence?

    A.   No.

        MR. LOWRY:  Objection, Your Honor.  It



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    calls for speculation and conclusion he's not in a
 2    position to make.
 3              THE COURT:  Sustained.
 4    BY MR. CASTELLANO:
 5        Q.   Were you here for Roy Martinez' and Robert
 6    Martinez' testimony?
 7        A.   I was here for Robert's.
 8        Q.   And did he give any indication that he was
 9    tricked into doing that?
10        A.   No.
11        Q.   Or that it was something he didn't want to
12    do?
13        A.   No.
14        Q.   And when it came to Jerry Armenta, what
15    was your understanding of what happened with Mr.
16    Armenta and Mr. Duran?
17        A.   Mr. Duran encouraged Armenta to cooperate,
18    initially with the state authorities, if I remember
19    correctly.
20        Q.   You were asked about a November 3, 2015,
21    text message between yourself and Eric Duran,
22    indicating -- the question to you was whether or not
23    you should let Pup know about the phone that
24    Mr. Duran had.  Do you remember that?
25        A.   Yes.
```



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                                FAX (505) 843-9492
                                                     1-800-669-9492
                                          e-mail: info@litsupport.com

1      Q.   So under those circumstances, was

2  Mr. Duran seeking advice from you about the

3  investigation?

4      A.   Yes.

5      Q.   And consequently, then, was Mr. Baca let

6  known -- did he find out about the phone?

7      A.   Yes.

8      Q.   And is that how he got some of the

9  recordings?

10     A.   Yes.

11     Q.   You were asked about a report regarding

12 Roy Martinez and Mr. Duran approaching him about the

13 hit on -- I think on Mr. Marcantel and

14 Mr. Santistevan.  Do you remember that?

15     A.   Yes.  I think I was shown another agent's

16 notes.

17     Q.   And do you remember whether or not --

18 well, from your understanding of the notes, did

19 Mr. Duran make Mr. Martinez do that, or did he

20 approach him and remind him of the prior

21 conversations they had about those murder

22 conspiracies?

23          MR. LOWRY:  Objection, calls for

24 speculation.  He doesn't know what was in that

25 witness' mind.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Well, right at the moment,
 2    it's just a yes or no question.  Let me hear his
 3    answer to this, and then I'll take the next
 4    question.
 5        A.   Yes.
 6            THE COURT:  Why don't you ask your next
 7    question and let me see if I'm going to allow it, if
 8    you have a follow-up.
 9    BY MR. CASTELLANO:
10        Q.   Was it your understanding that what
11    Mr. Duran did was remind Mr. Martinez, Roy Martinez,
12    about prior conversations they had about these
13    murder conspiracies?
14            THE COURT:  Do you have an objection?
15            MR. LOWRY:  Objection.  This is hearsay.
16    And, Your Honor, the evidence will show that the
17    prior conversations didn't -- may we approach?
18            THE COURT:  Well, I'm going to sustain the
19    objection.
20    BY MR. CASTELLANO:
21        Q.   Regarding those notes, you were asked
22    about your notes, correct?
23        A.   I was asked about my notes and other
24    agents' notes.
25        Q.   So notes including a discussion with Roy
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   Paul Martinez on December 17th of 2015?

 2       A.   Yes.

 3       Q.   Was that just a couple of weeks after the

 4   roundup in this case?

 5       A.   Yes.

 6       Q.   And was Mr. Martinez cooperating already

 7   at that point?

 8       A.   Yes.

 9       Q.   You were sitting down and taking notes

10   from him?

11       A.   Correct.

12       Q.   And in addition to what he told you about,

13   you were asked a question about your notes.  Oh, the

14   question, I think, was regarding the Marcantel hit,

15   whether Crazo, or Eric Duran, approached Shadow,

16   saying that Santistevan needed to be hit.  That was

17   the question?

18       A.   Yes.

19       Q.   And that's what my question referred to,

20   was when it says Crazo approached Shadow, was it

21   that he approached him with the idea or to remind

22   him of prior conversations?

23       A.   It was a reminder.

24       Q.   In addition to that, did you learn from

25   Shadow, or Roy Paul Martinez, that he had actually

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   tasked somebody else with the murder of agent --

 2   Secretary Marcantel, that person being someone

 3   called Smurf?

 4            MR. LOWRY:  Objection, beyond the scope of

 5   direct.

 6            THE COURT:  Overruled.

 7   BY MR. CASTELLANO:

 8       A.   Yes.

 9       Q.   So was that a further indication to you

10   that Roy Paul Martinez, by his own admission, had

11   tasked somebody else with killing Marcantel?

12       A.   Yes.

13            MR. LOWRY:  Your Honor, I think the

14   response called for hearsay.  We move to strike.

15            THE COURT:  Well, what do you want?  What

16   is it that you want?

17            MR. LOWRY:  I would actually like a chance

18   to object.  But he's soliciting out-of-court

19   statements by somebody who is not present and hasn't

20   testified to that effect.  And I'd like the answer

21   to be stricken.

22            THE COURT:  I think we are getting into

23   just him commenting on evidence that is being,

24   through the government's witnesses, offered for the

25   truth.  So I'll sustain and strike the answer.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           MR. CASTELLANO:  Your Honor, as I move
 2    through these, I'll let the Court know ahead of time
 3    for questions like that.  He was asked about his
 4    notes, so I am seeking to impeach his testimony on
 5    cross-examination.
 6    BY MR. CASTELLANO:
 7        Q.   You were asked about your notes regarding
 8    Lupe Urquizo and holding up something to the window.
 9    Do you remember that?
10        A.   Yes.
11        Q.   And on direct examination, you said you
12    may have gotten that wrong?
13        A.   Yes.  I think I indicated where I saw the
14    point of contention.
15        Q.   What do you think that was, from
16    remembering, looking at your report and the
17    circumstances?
18        A.   It's the last sentence, I think page 2,
19    and it has to do with Urquizo's describing the
20    sequence of communications with Mario Rodriguez.
21    And in that 302, in that sentence it says -- I'd
22    have to look at it to know exactly what it said, but
23    it's a discussion about how the note or how the
24    communication went between those two men.
25        Q.   So the report didn't say which door
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                                             Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1    Urquizo put the note -- held the note up to?

 2         A.   No.

 3         Q.   Regarding Mr. Urquizo, I'll see if we can

 4    pull up Defendants' V4.  It should be Mr. Baca's

 5    location history.  And do you recall from Mr.

 6    Urquizo's testimony about him having a discussion

 7    with Mr. Baca in the summer of 2012?  If you don't

 8    remember, I can also refresh your recollection.

 9         A.   Yes, sir.

10              MR. CASTELLANO:  May I approach the

11    witness, Your Honor?

12              THE COURT:  You may.

13         Q.   Just to refresh your recollection --

14    before I show this to you, this has to do with Mr.

15    Baca's location history in the summer of 2012.

16         A.   Okay.  Do I need to read it all?

17         Q.   And you recall, as we pull up that exhibit

18    again, Mr. Urquizo's testimony about Mr. Baca being

19    housed in the Q pod in the summer of 2012?

20         A.   Yes.

21         Q.   I'll circle a portion here, make it

22    smaller.  Okay.  So do you see Mr. Baca's location

23    history as far as June 29, 2012, he was in Q pod?

24         A.   I see that.

25         Q.   And do you recall him being asked

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1  questions with a diagram of the facility and where

2  the cages were?

3       A.   The overview, yes.  Like an aerial view,

4  yes.

5       Q.   Do you recall him indicating where the

6  cages were and where Mr. Baca's cell was?

7       A.   Yes.

8       Q.   When you initially asked him that

9  question, do you know if he'd seen his location

10  history?

11       A.   If Urquizo had seen it?

12       Q.   Yes.

13       A.   No.

14       Q.   And do you recall the testimony about --

15  you were asked about David Calbert's indication that

16  he'd received the paperwork through the cages?

17       A.   Yes.

18       Q.   And there was an indication that according

19  to him, he and a person known as Cheech, or Joe

20  Martinez, were at a place where they could cross

21  paths?

22       A.   Yes.

23       Q.   If we can pull them up side by side, we'll

24  display Government's Exhibits 788 and 789.  For the

25  record, on the screen are two exhibits, 788 and 789.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  On the left is 788.  It's Joe Patrick Martinez'

2  location history, and 789 is David Calbert's

3  location history.  I've tried to block off a portion

4  of Joe Patrick Martinez' location history, showing

5  location at PNM North, showing dates 9/30 of '11 and

6  ending 4/11 of 2013.  Do you see that?

7       A.   Yes, sir.

8       Q.   And for Mr. Calbert, I basically blocked

9  off the dates July 14, 2011, all the way up to March

10 7th of 2014.  Do you see that?

11      A.   Yes.

12      Q.   And in that time period, there is an

13 indication that both gentlemen were at the North

14 facility?

15      A.   Yes.

16      Q.   At one point, Mr. Calbert's -- touching

17 next to the date 5/2 of '13, do you see where he's

18 in Housing Unit 3-A?

19      A.   Yes, at the north, North 3-A.

20      Q.   And on the left with Mr. Martinez, do you

21 see he's at Housing Unit 3-B?

22      A.   Yes.

23      Q.   Was it your understanding that among other

24 times where they overlapped, that when people were

25 in the same housing unit, sometimes they would be at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   rec at the same time?

 2       A.   Yes.

 3       Q.   And then on David Calbert's, is there an

 4   indication after this time where he moved from the

 5   North to the South facility?

 6       A.   Yes.

 7       Q.   That is February 13th of 2014?

 8       A.   Yes.

 9       Q.   And is it your understanding that that's

10   where he passed the paperwork to Lupe Urquizo, at

11   the South facility?

12       A.   Yes.

13       Q.   Regarding the passing of the paperwork,

14   you testified on direct examination that you talked

15   to correction officers, and they said that was

16   possible?

17       A.   Correct.

18       Q.   You were also asked about Robert Martinez'

19   61-page statement that he wrote.  Do you remember

20   that?

21       A.   Yes, sir.

22       Q.   And there was a question about 167 people

23   named as SNM members by Robert Martinez?

24       A.   Yes.

25       Q.   Do you know if Robert Martinez knew who

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   all SNM members were?
 2        A.   No, he didn't.
 3        Q.   And as far as the investigation goes, how
 4   many -- approximately how many SNM members have you
 5   been aware of?
 6        A.   Around 500.
 7        Q.   So is it your testimony that Mr. Martinez
 8   gave you a portion of those who he knew?
 9        A.   He did.  And he put question marks and
10   blanks, too, like he was having trouble remembering
11   other members.
12        Q.   And you were asked by Mr. Perez' attorney
13   if Rudy Perez's name was on that list.  Do you
14   remember?
15        A.   I do.
16        Q.   Your response was that he was not on that
17   list.
18        A.   That's right.
19        Q.   So do you know if Robert Martinez knew
20   Rudy Perez?
21        A.   I don't.
22        Q.   Would that surprise you?
23        A.   Would that surprise me?
24        Q.   Correct.
25        A.   No.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Do you recall if other people's names were
 2   on that list?
 3        A.   Yes.
 4        Q.   Including Daniel Sanchez?
 5        A.   His name is on the list.
 6        Q.   As well as Carlos Herrera?
 7        A.   Yes.
 8        Q.   And is Daniel Sanchez listed as a shot
 9   caller on that list?
10        A.   Yes.
11        Q.   As well as -- well, to be fair to Mr.
12   Herrera, what do you recall about --
13             MR. MAYNARD:  Your Honor, objection.  This
14   is beyond the scope of any direct examination.  The
15   Government is just repeating its case.
16             MR. CASTELLANO:  Your Honor, this is in
17   response to --
18             THE COURT:  Yes, I see the connection.
19   Overruled.
20        Q.   Okay.  So to be fair to Mr. Herrera, what
21   was Mr. Martinez' indication about who Carlos
22   Herrera was?
23        A.   Possible shot caller.
24        Q.   So as far as he knew, he could only say
25   possible shot caller?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                1-800-669-9492
                                                        e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.    That's what he wrote.

 2        Q.    And you were also asked about Blue or

 3  Mario Rodriguez being on there.  And according to

 4  Robert Martinez, he indicated that Mr. Rodriguez was

 5  a shot caller?

 6        A.    He did.

 7        Q.    And when you asked this information of

 8  Mr. Martinez, was this before or after the Molina

 9  murder?

10        A.    After.  Well after.

11        Q.    Was there an occasion following the Molina

12  murder that Mr. Rodriguez had gained some additional

13  stature in the gang?

14        A.    Yeah.  Not only that, but the assault on

15  Sosoya, so both incidents.

16        Q.    You were also asked about Defendants' EV.

17  Can we have Defendants' EV, please?  And while

18  that's coming up, we'll ask you some questions about

19  that.  That involves the shanks that Mr. Rodriguez

20  turned over?

21        A.    I remember.

22        Q.    Was that following his debrief, basically,

23  with us?

24        A.    Yes.

25        Q.    And do you remember him sitting in that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    debrief with us, with shanks in his rectum?

2         A.   Yes.

3         Q.   Did we find out about that only through

4    him?

5         A.   Yes.

6         Q.   What significance did it have to you that

7    Mr. Rodriguez was basically laying down his arms and

8    turning over his weapons?

9         A.   It was done.  There was no turning back.

10        Q.   In fact, you said on direct examination

11   that when he came to court, he even brought those

12   with him?

13        A.   Several times, yes.

14        Q.   You also were asked -- actually, on direct

15   examination this morning you indicated that

16   Mr. Billy Cordova had used drugs, and he'd also

17   brought a shank to court.  Do you remember that?

18        A.   He sat right here in this very chair with

19   a shank.

20        Q.   On the witness stand?

21        A.   Yes.

22        Q.   Do you recall why he brought a shank to

23   court?

24        A.   Yes.

25        Q.   Why?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   He thought he was in danger, was going to
 2   be attacked by SNM members.
 3        Q.   Was that for self-protection?
 4        A.   Yes.
 5        Q.   Okay.  Now up on the screen is Defendants'
 6   EV.  So that was turned over to the Marshal Service
 7   following Mr. Rodriguez' debrief?
 8        A.   Yes.
 9        Q.   And if you recall -- I don't want to go
10   through all the exhibits, but if you recall, what is
11   inside what's pictured in Defendants' EV?
12        A.   There's two shanks inside that photo, in
13   the wrapping.
14        Q.   Okay.  And the same question regarding
15   these letters by Mr. Rodriguez regarding the state
16   court proceedings and the letters by Jerry Armenta
17   to Jerry Montoya's attorney.  Do you remember those
18   things?
19        A.   Yes.
20        Q.   And did that happen during the state
21   proceedings?
22        A.   Yes, it did.
23        Q.   Did you see those guys do that in the
24   federal case?
25        A.   No.  I want to back up on something.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   haven't seen them write letters to attorneys.  I've
 2   seen them write letters to non-cooperators that are
 3   their friends.  So I just want to make that clear,
 4   that some of the guys have written letters, but not
 5   where they're swearing under penalty of perjury, you
 6   know, trying to make a record of it in the case.
 7       Q.   So that's fair.  So you can say that
 8   people have communicated with each other?
 9       A.   Yes.
10       Q.   Were they similar communications to them,
11   trying to basically put a fraud on the Court?
12       A.   No.  They're quite the opposite.  It's --
13   I'll just leave it at that.  It's the opposite.
14       Q.   Going back to the meeting with Mr.
15   Rodriguez and Ronald Sanchez, you were asked about
16   it a few times now?
17       A.   Yes.
18       Q.   Remind us who wanted that meeting.
19       A.   Who is -- I'm sorry.
20       Q.   Who wanted that meeting?
21       A.   Ronald Sanchez asked to meet with us.
22       Q.   What were the three questions he asked
23   you?
24       A.   That was a long meeting, but the three
25   premises were what kind of plea deal could Daniel
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    get; could Ronald and Daniel do their time together,

2    either in the feds or in the state; and what could

3    we do for Ronald Sanchez's sentence that he was

4    currently in prison on.

5        Q.   So was Mr. Sanchez' -- was Daniel

6    Sanchez's brother trying to negotiate a deal for his

7    brother?

8        A.   Yes.

9        Q.   And they're brothers, right?  So you'd

10   think they would talk?

11       A.   I know that they talked.

12       Q.   And, in fact, when the Molina murder went

13   down, can we see Ronald Sanchez standing next to

14   Daniel Sanchez?

15       A.   Yes.  He's to the left of him in the

16   video, sometimes standing, sometimes seated.

17       Q.   Now, you don't know about the

18   conversations between the two of them, right?

19       A.   Only the ones that have been recorded.

20       Q.   But you do know that Ronald Sanchez was

21   trying to get a deal for his brother?

22       A.   Yes.

23       Q.   You've been asked about Billy Cordova and

24   his murders or his bragging?  Do you remember that?

25       A.   Yes.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE                      e-mail: info@litsupport.com

1      Q.   Now, what evidence did you have that Billy

2   Cordova killed Sammy Chavez?  Well, let me ask you

3   this:  Was Billy Cordova in jail at the time Sammy

4   Chavez was murdered?

5      A.   He was.

6      Q.   Would you have threatened --

7      A.   He was actually in prison.  A small

8   distinction, but he was in prison.

9      Q.   Would you threaten Billy Cordova, over

10  something like that, with the death penalty?

11     A.   No.

12     Q.   What about this discussion about any

13  indication that he was involved with the Shane Dix

14  murder?

15     A.   Did I threaten him with that?

16     Q.   Correct.

17     A.   No.  I didn't believe he participated in

18  it.

19     Q.   Could you prove it if you tried today?

20     A.   No.

21     Q.   Now, you were asked about there's an

22  indication about Rudy Perez and his statements.  So

23  if you look at the evidence against someone like

24  Billy Cordova --

25          MS. FOX-YOUNG:  Your Honor, may we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  approach?

2          THE COURT:  You may.

3          (The following proceedings were held at

4  the bench.)

5          MS. FOX-YOUNG:  Your Honor, I'm not sure

6  which statements.  The Government says:  You were

7  asked about statements by Rudy Perez.

8          I'm not sure what statements the

9  Government is referring to.

10          THE COURT:  Which statements are you

11  referring to?

12          MR. CASTELLANO:  This will be referring to

13  the recordings, Your Honor.

14          MS. FOX-YOUNG:  And, Your Honor, I have

15  not brought that up at all in my direct.  This is

16  not the Government's closing.  It's not an

17  opportunity to rehash their case-in-chief.  It's

18  beyond the scope.  And I've looked through the

19  transcript.  I can't find anywhere where anything on

20  the subject was elicited in direct of Agent Acee.

21  They did this ad nauseam in their case-in-chief.

22          THE COURT:  If you're referring to the

23  tape recordings, what was asked about to start with,

24  Ms. Fox-Young, what was asked about those recordings

25  of Mr. Acee --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          MR. CASTELLANO:  It was well within the

 2    scope.  They asked about Billy Cordova bragging

 3    about things he didn't do.  And so they're trying to

 4    imply that Rudy Perez, also Red, bragged about

 5    things he didn't do, and he talked about his

 6    involvement in the murder of Javier Molina.

 7          MS. FOX-YOUNG:  But I never asked those

 8    questions.

 9          THE COURT:  Here's what I'd be inclined to

10    do.  If you want to ask questions about Billy

11    Cordova bragging, I think that would be fair game.

12    But why don't we not go back into the statements on

13    Mr. Perez, and leave that for closing arguments.

14          MR. CASTELLANO:  Sure.

15          THE COURT:  I think that's probably where

16    that should be.

17          MR. CASTELLANO:  Sure, Your Honor.

18          MS. FOX-YOUNG:  Thank you.

19          (The following proceedings were held in

20    open court.)

21          THE COURT:  All right.  Mr. Castellano.

22    BY MR. CASTELLANO:

23       Q.   When it comes to proof against Billy

24    Cordova, did you have recordings of Billy Cordova?

25       A.   In the homicide?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                 (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Yes.  Because we've been talking about

2    Sammy Chavez and Shane Dix.  Did you have any

3    recordings of his involvement?  For example, did

4    somebody record him talking about his involvement in

5    those murders?

6      A.   No.

7      Q.   To law enforcement?

8      A.   No.

9      Q.   Did you have any indication that he was in

10   the area of either of those murders?

11     A.   No.

12     Q.   So would information like that be

13   important to you in helping them make a charging

14   decision?

15     A.   Absolutely.

16     Q.   You were asked about phone calls.  You

17   heard some of the phone calls played in court, of

18   the cooperators.  Do you remember that?

19     A.   Yes.

20     Q.   Do you remember there being two basic

21   themes?  One is lying to family about how much time

22   they're going to get; and lying to family about why

23   they're cooperating?

24     A.   Yes.

25     Q.   And how was that significant?

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                               1-800-669-9492
                                                      e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          MS. FOX-YOUNG:  Your Honor, I think in

2    accordance with your previous rulings, it's up to

3    the jury to determine when and if the government

4    witnesses are lying.

5          MR. CASTELLANO:  They admitted they lied

6    on the stand, Your Honor, in the phone calls.

7          THE COURT:  Well, I think that this is a

8    lead-in question, or at least a lead-in comment.

9    Why don't ask you the question and let me hear what

10   your question is going to be, rather than trying to

11   characterize or remind the witness of the evidence.

12         MR. CASTELLANO:  Sure.

13         THE COURT:  Maybe that will avoid that

14   problem.

15   BY MR. CASTELLANO:

16      Q.   Do you remember hearing conversations

17   played in court for some of the cooperators?

18      A.   Yes.

19      Q.   And did some of those conversations, maybe

20   all of them, involve family members?

21      A.   Yes.

22      Q.   And what do you recall -- from your own

23   recollection, what do you recall them saying when it

24   comes to the topics of how much time they're going

25   to get or why they're cooperating?



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                            1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                          e-mail: info@litsupport.com

1    A.   They minimized the time that they were

2    facing greatly, very significantly.  And then in

3    terms of why they were cooperating, they made it

4    sound as if they were doing it to protect their

5    families from prosecution, from us, the FBI.

6    Q.   And so for someone talking to a family

7    member, what's your impression of why they would

8    tell someone they would be home sooner rather than

9    later?

10   MS. BHALLA:  Objection, speculation.

11   THE COURT:  Well, I think at this point

12   you've laid out what he's seen, but do I think that

13   the jury can make its own conclusion about that, so

14   I'll sustain.

15   BY MR. CASTELLANO:

16   Q.   You were asked about trusting Billy

17   Cordova to a certain extent.  Can you elaborate on

18   that, please?

19   A.   Yes.

20   Q.   Go ahead.

21   A.   Would you like me to talk about the areas

22   where I wouldn't trust him, or don't?

23   Q.   Absolutely.  I want to talk about where

24   you trust him, and where you don't.

25   A.   Billy Cordova is alone in the room with

SANTA FE OFFICE                                            MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                              1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

 1    his wife.  I don't trust what he's going to do.  If

 2    Billy Cordova is offered drugs, I'm not sure what

 3    decision he's going to make, to use them or not use

 4    them.  If I task Billy Cordova with doing a specific

 5    task, I trust that he'll do it and he'll follow my

 6    instructions.

 7         Q.   Now, when it goes to the tablets, you

 8    indicated that two people actually emailed you from

 9    the facility?

10         A.   Yes.

11         Q.   Who were those people?

12         A.   The first one was Benjamin Clark, because

13    I asked him to.  I didn't believe he could access

14    the internet from the tablet, so I said, "Send me an

15    email.  Here's my address."  We had that

16    conversation at the jail.  He wasn't able to bring

17    his tablet in at that time, but his attorneys were

18    there.  So that's the only person I asked to email

19    me.  He did some hours later, though?  And when that

20    happened, I notified the prosecution.

21              And then when I woke up the next morning,

22    I had a second email of Jerry Armenta, and attached

23    to that was a photo where he somehow was able to

24    take a selfie with his tablet, and he was just kind

25    of standing there like that, and attached that to

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

```
 1   the email.
 2        Q.   Was each of those two people, I guess, in
 3   essence, indicating to you that they had tampered
 4   with their tablets?
 5        A.   Yes.
 6        Q.   And you learned that from them?
 7        A.   Yes.  I had no idea until that happened.
 8        Q.   You were also asked about cutting people
 9   off as confidential human sources, right?
10        A.   Yes.
11        Q.   And as a result of this conduct and other
12   people's misconduct, you cut them off?
13        A.   Right away.  I'm looking for a reason most
14   of the time.
15        Q.   So what --
16             MS. FOX-YOUNG:  Your Honor, I think this
17   mischaracterizes his testimony.  They weren't cut
18   off after the tablets.
19             THE COURT:  I'll let you deal with that on
20   redirect.
21             MR. CASTELLANO:  I'll clarify
22   "misconduct," Your Honor.
23   BY MR. CASTELLANO:
24        Q.   Following misconduct, Agent Acee, were
25   people cut off as confidential human sources?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.    They were closed as confidential human

2   sources.

3       Q.    And did that relieve them of their

4   obligations to be witnesses at trial?

5       A.    Those are two distinctly different

6   categories.

7       Q.    Regarding Billy Cordova being cut off and

8   still recording somebody, at whose request was that?

9       A.    The Department of Corrections.

10      Q.    So even though the FBI provided the

11  equipment, was it the FBI's operation, or did you

12  aid them in recording someone else?

13      A.    An FBI agent in this case, Agent Stemo,

14  aided them.  They don't have their own recording

15  devices; we provided that.  And it was on an active

16  open FBI investigation.  It's also not against

17  policy to do so.

18      Q.    The question is:  Can somebody help the

19  FBI without being a confidential human source?

20      A.    Yes.  Anyone can.

21      Q.    Is that significant, whether he was a

22  source or not when he aided law enforcement?

23      A.    No.

24      Q.    You were also asked about Billy Cordova's

25  statement in December of 2017, where he indicated

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1   that Daniel Sanchez asked for a shank a week before
2   the Molina murder?
3        A.   Yes, it was about a week.
4        Q.   And do you remember him actually
5   correcting that statement in January of 2018,
6   indicating that it was on March 6th or 7th?
7        A.   Yes.
8        Q.   So did he actually correct his previous
9   statement?
10       A.   He did.
11       Q.   Now, I'd say virtually every cooperating
12  witness in this case at some point has admitted to
13  drug use, and a long history of drug use.  Are you
14  aware of that?
15       A.   Yes.
16       Q.   So for people like Billy Cordova, were you
17  surprised when each of them used drugs even while
18  they were cooperating witnesses?
19       A.   Not surprised, but disappointed.
20       Q.   Why were you not surprised?
21       A.   Substance abuse grips a lot of people, and
22  it affects our whole country.  It's difficult,
23  particularly for these guys who have used drugs, in
24  some cases, since they were in middle school.
25       Q.   Okay.  And so can you just tell someone,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   "Don't use drugs," and automatically they never use

2   drugs again?

3        A.   I wish I could, but no.

4        Q.   You were also asked about whether or not

5   certain cooperators were able to basically write

6   their own indictments.  Do you remember that?

7        A.   Yes.

8        Q.   Including people like Freddie Munoz and

9   Lupe Urquizo?

10       A.   I recall that.

11       Q.   Did they get to write their own

12  indictments?

13       A.   No.

14       Q.   Did they actually participate in telling

15  you things they had done criminally so we could put

16  that into their charging documents?

17       A.   Yes, they did.

18       Q.   Did they volunteer that information?

19       A.   They volunteered it.

20       Q.   I think Lupe Urquizo was impeached with --

21  what did he say? -- maybe like 29 or maybe more?

22       A.   Yes, that sounds right.  I think it was 29

23  overt acts in his RICO conspiracy.

24       Q.   Is that how someone like Lupe Urquizo or

25  Freddie Nunez helped write their indictments, is by

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                 (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                            1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                      e-mail: info@litsupport.com

1    telling you about their past misdeeds?

2         A.   Yes.

3         Q.   You've been asked about Billy Cordova and

4    at least one other cooperator not being charged in

5    this case.  Do you remember that?

6         A.   Yes.

7         Q.   Does the fact that someone else hasn't

8    been charged mean that other people aren't guilty of

9    offenses?

10        A.   No.

11        Q.   Including the men sitting in this court?

12        A.   Correct.

13        Q.   In a meeting with David Calbert and Lupe

14   Urquizo, you were asked about that, as well, and the

15   time they got to meet?

16        A.   Yes.

17        Q.   Were there attorneys in the room with

18   them?

19        A.   Yes.

20        Q.   And so if those two had basically agreed

21   to make up a story, would they have had to do so

22   with their lawyers in the room?

23        A.   Yes.

24        Q.   And are those lawyers bound by ethical

25   rules?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes, they are.

 2             MS. FOX-YOUNG:  Your Honor, foundation.

 3             THE COURT:  Overruled.

 4             MS. FOX-YOUNG:  And this also goes to

 5   attorney-client privilege.

 6             THE COURT:  Overruled.

 7   BY MR. CASTELLANO:

 8        Q.   And regarding those two gentlemen, you

 9   were asked about their stories about whether there

10   was one paper or two pages, one or two pages.  Okay?

11   Would the difference of one page between them, off

12   and on, do you recall if they each told you it was

13   an LCPD report?

14        A.   Yes, they thought that it was.

15        Q.   Regarding some sort of robbery?

16        A.   Yes.

17        Q.   And do you know if people, just anyone on

18   the street, know the difference between a robbery

19   and a strong-armed robbery?

20        A.   No.  They often confuse burglary and

21   robbery, too.

22        Q.   So if someone tells you a strong-armed

23   robbery, does that --

24             MS. JACKS:  Your Honor, I object to this

25   line of questioning.  It's irrelevant what someone
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  on the street knows.  The witnesses have testified

2  about their knowledge.

3           THE COURT:  He can testify about what he

4  thinks strong-armed robbery is since that term has

5  been used and it has been used by him, but probably

6  that's about it.

7  BY MR. CASTELLANO:

8      Q.   Go ahead, Agent Acee.

9      A.   I need you to repeat the question.

10          THE COURT:  Yeah, I don't think he needs

11 to answer that question.  If you want to talk about

12 his understanding of what a strong-armed robbery is

13 and what he meant by it and why he used that term, I

14 think that's fair game because that's what he

15 testified.  But as far as probably the public or

16 people in general, I don't think that has much

17 benefit.

18     A.   So I use that term because I focused on

19 Molina's statement to the police, which was

20 recorded.  There was a transcript.  Molina claims

21 there was no gun involved.

22          MS. JACKS:  Objection, hearsay.

23          THE COURT:  Well, I'm not remembering the

24 statement, but if it's being offered for the truth,

25 then I need to sustain.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          MS. JACKS:  Can we strike the answer,
 2   please?
 3          THE COURT:  Okay.  I'll strike the answer.
 4   BY MR. CASTELLANO:
 5      Q.   You don't have to tell us what you read in
 6   the reports, but are you generally aware of that
 7   investigation?
 8      A.   Yes.
 9      Q.   Are you aware it's an LCPD investigation?
10      A.   It is.  Or it was.
11      Q.   And are you aware of whether or not
12   Mr. Calbert and Mr. Urquizo also indicated it was an
13   LCPD investigation?
14      A.   They did.
15          MR. CASTELLANO:  May I have a moment, Your
16   Honor?
17          THE COURT:  You may.
18          MR. CASTELLANO:  Thank you, Your Honor.  I
19   pass the witness.
20          THE COURT:  Thank you, Mr. Castellano.
21          Who would like to go first with redirect?
22   Mr. Lowry.
23          MR. LOWRY:  Well --
24          MS. BHALLA:  Can we have just a moment,
25   Your Honor?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  You may.
 2              MR. CASTELLANO:  Your Honor, I'm sorry.  I
 3   did have one more question.  I apologize.  It's
 4   here, waiting for me at the podium.
 5   BY MR. CASTELLANO:
 6       Q.   Agent Acee, you were asked about Mario
 7   Rodriguez and his prior sex offenses.  Do you
 8   remember that?
 9       A.   Yes.
10       Q.   I'm going to show you on the visualizer,
11   if I can, paperwork related to that offense.  And
12   for the record, this is from Mario Rodriguez's,
13   what's called pen pack of his prior convictions.
14       A.   Yes, sir.
15       Q.   Beginning on Bates stamp 8778.
16              MS. JACKS:  Has this been admitted as an
17   exhibit?
18              MR. CASTELLANO:  I think it has.  I can
19   double-check.
20              THE COURT:  Why don't you give the exhibit
21   number.
22              MS. FOX-YOUNG:  Your Honor, I'd ask, if
23   we're not sure it's been admitted, that it be taken
24   down.
25              THE COURT:  It's already off.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1              MR. CASTELLANO:  Thank you, Your Honor.
2   It has been admitted as Government's Exhibit 238.
3   BY MR. CASTELLANO:
4        Q.   So once again, Agent Acee, I'm going to
5   show you beginning on page -- well, first of all, on
6   8781, can you see that this is a judgment and
7   commitment for Mario Rodriguez?
8        A.   Yes.
9        Q.   And then on the next page of his judgment,
10  8782, these are the charges we discussed already,
11  correct?
12       A.   Yes.
13       Q.   Including his criminal sexual penetration
14  convictions?
15       A.   Yes.
16       Q.   I'm going to have you look carefully at
17  this document, each page.  I'm going to ask you if
18  there is an indication in here that he must register
19  as a sex offender?  So that's what I'm asking you to
20  look for.
21       A.   Okay.
22       Q.   Turning to that page, do you see anything
23  on there?
24       A.   No.
25       Q.   Turning to page 8783, I'll make it larger
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  for you.  I apologize.

 2       A.   No, I got through it.  In the language

 3  here where it's indicating what must happen, it

 4  doesn't indicate about registration.

 5       Q.   So right now, this page indicates how much

 6  time he's supposed to get for each of the charges?

 7       A.   Correct, and how much time he'll serve on

 8  post supervision.

 9       Q.   Correct.  So, for example, you make a good

10  point here.  I'm going to circle just one portion

11  which says he gets a basic sentence of 18 months

12  followed by one year of parole?

13       A.   Correct.

14       Q.   So when he gets out of prison, he has an

15  idea of whether or not he's going to be supervised

16  or not?

17       A.   Yes, what his post-prison conditions are.

18       Q.   That's 8783.  I'm going to show you page

19  8784.

20       A.   This continues with what his sentencing

21  will be, but there's no indication of registering as

22  a sex offender.

23       Q.   Final page of that documents, 8785.

24       A.   This is on the top just in terms of appeal

25  and cost and then signatures, so no indications of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  registering as a sex offender.

2       Q.   So if Mr. Rodriguez pled guilty and he

3  wasn't advised in his judgment of having to register

4  as a sex offender, do you understand why he would be

5  upset about that?

6            MS. JACKS:   Objection, Your Honor.   First

7  of all, it's irrelevant what this witness

8  understands.

9            THE COURT:   Sustained.

10      Q.   Are you aware that Mr. Rodriguez is upset

11  about that?

12      A.   Yes.

13      Q.   And do you recall defense counsel

14  impeaching him with things he's filed with the

15  Court, trying to get that overturned because he was

16  not aware of that?

17      A.   Yes.

18      Q.   Have you seen judgments before, where

19  people are notified of certain things that are

20  expected of them following their conviction?

21      A.   Yes.

22      Q.   I'm going to show you Government's Exhibit

23  777 which has already been admitted.   Do you

24  recognize this document?

25      A.   Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   After this document was admitted did you

2   notice one or two mistakes in your entries?

3      A.   Yes.

4      Q.   And have you prepared an updated,

5   corrected version so we have the accurate

6   information in the table?

7      A.   Yes, I did.

8           MR. CASTELLANO:  Your Honor, at this time

9   I move either to substitute the update of the

10  Exhibit 777, or I can label it 777-A so we can see

11  the differences between the two.

12          THE COURT:  Defendants' thought?  Mr.

13  Lowry?

14          MR. LOWRY:  Yes, Your Honor.  This exhibit

15  was not admitted.  There was conditional admittance.

16  I would ask that the Court refrain from ruling on

17  its admission until after we question the agent

18  about it.

19          THE COURT:  All right.  Let's wait until

20  they've had a chance to voir dire the witness on it.

21          MR. CASTELLANO:  Just for purposes of

22  identification, Your Honor, so there is no mistake

23  between the two documents, I'm going to label the

24  updated version Exhibit 777-A, and I'll move its

25  admission pursuant to the Court ruling on it.

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492
                                                      1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                              e-mail: info@litsupport.com

```
 1              THE COURT:  All right.

 2              MR. CASTELLANO:  And I'll leave it here at

 3   the podium for counsel.

 4              THE COURT:  All right.

 5   BY MR. CASTELLANO:

 6       Q.   Agent Acee, how did the updated version of

 7   the table come about?

 8       A.   I created the first one here in court

 9   while I was seated at the table, and I was only able

10   to use hard copies of reports that I had in one of

11   my boxes there.  I created the second one when I

12   went back to the actual FBI office.  I was able to

13   get on the computer and verify what we actually had,

14   where the official reports were stored.  I noticed a

15   couple dates were wrong, and I noticed some

16   additional reports that I didn't have here in the

17   courtroom.

18       Q.   So you updated the document now with

19   information from the computer?

20       A.   Yes, sir.

21              MR. CASTELLANO:  I pass the witness, Your

22   Honor.

23              THE COURT:  All right.  Thank you, Mr.

24   Castellano.

25              Ms. Bhalla, did you want to go next?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. BHALLA:  Thank you, Your Honor.
 2                    REDIRECT EXAMINATION
 3  BY MS. BHALLA:
 4      Q.   Agent Acee, are you aware that the defense
 5  requested field notes from you and other FBI agents
 6  on the case, in regards to the prosecution of this
 7  case?
 8      A.   Yes, ma'am.
 9      Q.   And you are aware that those were ordered
10  to be produced in 2017?
11              MR. CASTELLANO:  Objection, Your Honor.
12  That misstates the facts.
13              THE COURT:  Well, I'll let him testify as
14  to his understanding.  Overruled.
15  BY MS. BHALLA:
16      Q.   Thank you.
17      A.   Do you want me to answer?  Or no?
18      Q.   Yes, please.  I think you already answered
19  it, didn't you?
20      A.   No.
21      Q.   Okay.  Then go ahead and answer it,
22  please.
23      A.   I recall some pretrial hearings on that.
24  But I was asked to review my notes, but not produce
25  them.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Okay.  So you were asked to review them,
 2   but not produce them, and that's your understanding
 3   of it?
 4        A.    No, there's more to that.  I'm sorry.
 5        Q.    Okay.
 6        A.    We were asked to review them, and if
 7   they contained material facts or exculpatory
 8   information --
 9        Q.    Okay.
10        A.    -- not in the 302, that we should bring
11   those over.
12        Q.    Okay.
13        A.    Then yesterday I was asked -- or I was in
14   the courtroom when the Court ordered that we turn
15   the rest of them over, so myself and four other
16   agents did that all night, last night.
17        Q.    Okay.  And you put them on a disc?
18        A.    I didn't.  I gave my original notes to a
19   paralegal at the U.S. Attorney's office, who still
20   has them.
21        Q.    Okay.  Would you agree with me that we got
22   a disc today?
23        A.    Yes.
24        Q.    And would you agree with me that for the
25   most part, you know what's on this disc?
```



SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                  201 Third NW, Suite 1630
Santa Fe, NM 87501                         Albuquerque, NM 87102
(505) 989-4949                                   (505) 843-9494
FAX (505) 843-9492                           FAX (505) 843-9492
                                               1-800-669-9492

BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1        A.   For the most part, yes.

2        Q.   And would you agree with me that this

3   summarized the contents of what was on the disc that

4   was produced to the defendants this morning in court

5   after the Government rested their case-in-chief?  Do

6   you want to look at them?

7        A.   Based on the size of the documents you're

8   holding, that looks about right.

9        Q.   Thank you.

10            MS. BHALLA:  Your Honor, I pass the

11   witness.

12            THE COURT:  Thank you, Ms. Bhalla.

13            Mr. Lowry, do you have redirect?

14            MR. LOWRY:  Yes, Your Honor.

15            THE COURT:  Mr. Lowry.

16                    REDIRECT EXAMINATION

17   BY MR. LOWRY:

18        Q.   Good morning, Agent Acee.

19        A.   Good morning.

20        Q.   Agent, I want to start off with asking you

21   a few questions following up with Eric Duran.  I

22   think Mr. Montoya -- you understand what a

23   controlled buy is, correct?

24        A.   Yes, sir.

25        Q.   The protocol for a controlled buy is --



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   well, it's a highly scripted event, is it not?
 2        A.   No, but we control it.
 3        Q.   Well, when I say "highly scripted," you
 4   just don't send somebody out and say, "Go buy some
 5   drugs and come back and talk to me," do you?
 6        A.   I don't, no.
 7        Q.   And probably nobody that's working with
 8   the FBI would do it that way?
 9        A.   They shouldn't be.
10        Q.   Right.  And that's because there is a
11   series of steps you take to make sure about the
12   accuracy of the drugs that are obtained, and the
13   target and how they're obtained, correct?
14        A.    We do our best to control that environment
15   and that interaction, yes.
16        Q.   Right.  And you do that by meeting with
17   the individual you're working with, either the
18   undercover agent or a confidential human source?
19        A.   Yes, sir.
20        Q.   And you completely search them to make
21   sure they don't have any drugs or contraband on
22   them?
23        A.   Correct.
24        Q.   Then you provide them with the controlled
25   buy funds to purchase the drugs?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     A.   Yes.

2     Q.   And then you send them to the target who

3  has the drugs that they're going to buy, correct?

4     A.   Yes, all the while under surveillance.

5  Exactly.

6          THE COURT:  Mr. Lowry, let's talk to the

7  jury a little bit about what they'd like to do.  Our

8  break is kind of coming a little later this morning

9  because I met with the attorneys this morning.  Do

10  y'all want to take a 15-minute break and then come

11  back, and have a late lunch?  How many of you want

12  to do that, like we've been doing?  All right.  It

13  looks like most people.  Does that work for the

14  parties and for the lawyers?  All right.

15          So why don't we take about a 15-minute

16  break, and we'll come back in and we'll do a late

17  lunch.

18          All rise.

19          (The jury left the courtroom.)

20          THE COURT:  All right.  We'll be in recess

21  for about 15 minutes.

22          (The Court stood in recess.)

23          THE COURT:  All right.  We'll go back on

24  the record.  Is there anything we need to discuss

25  before we bring the jury in?  Anything I can do for

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                                1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

```
 1  you?  From the Government, Mr. Castellano, Ms.

 2  Armijo?

 3            MS. ARMIJO:  No, Your Honor.  Thank you.

 4            THE COURT:  How about you, Ms. Fox-Young?

 5            MS. FOX-YOUNG:  Your Honor, just as part

 6  of the record of the hearing the Court conducted,

 7  I'd like to move the admission of the agent notes

 8  that we just received while Agent Acee has been on

 9  the stand.  And I'm not sure what the next exhibit

10  number is.

11            THE COURT:  You want it to be --

12            MS. FOX-YOUNG:  For yesterday's hearing.

13            MR. VILLA:  That's what we want.

14            THE COURT:  All right.  I've got it as GA,

15  was the last one that was --

16            MS. JACKS:  Your Honor, I think that's a

17  trial exhibit.

18            MR. VILLA:  Yesterday.

19            MS. JACKS:  And I think what Ms. Fox-Young

20  is asking is to number, or to letter the exhibit

21  pursuant to the hearing yesterday.

22            THE COURT:  So I think that the last one

23  was Exhibit H.

24            MS. GILMAN:  I have T.

25            THE COURT:  Well, you're correct.  I mean,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   they were out of order, so I guess if you're asking
 2   for that, T would be the last one.
 3              MS. GILMAN:  So this one would be U.
 4              THE COURT:  All right.  Any objection from
 5   the Government?
 6              MS. ARMIJO:  No, Your Honor.
 7              THE COURT:  All right.  Does any other
 8   defendant have any objection?
 9              All right.  Defendants' Exhibit U will be
10   admitted to the, I guess what we're calling the
11   Brady hearing.
12              (Defendants' Exhibit U admitted.)
13              MS. FOX-YOUNG:  Okay.  And, Your Honor,
14   I'd just like to note that it was received, I think
15   it was approximately 11:00 today, by the defense.  I
16   don't have the exact time, although I guess the
17   record will reflect that.  Thank you, Your Honor.
18              THE COURT:  Did you have some things,
19   Ms. Jacks?
20              MS. JACKS:  Your Honor, I just wanted to
21   add to that.  I used my computer to count the pages.
22   That's 482 pages of agent notes.  So that, by my
23   calculation, probably would require something along
24   the lines of six to eight hours to actually review,
25   and probably double that to compare that to the 302s
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that they correspond to.
 2            THE COURT:  All right.
 3            MS. JACKS:  And these notes are
 4   handwritten, so you can't use OCR or any sort of
 5   computer tricks to search them for important
 6   materials.  I mean, it's ridiculous to have this
 7   amount of material dumped on us the last day of
 8   evidence in this trial.
 9            THE COURT:  All right.
10            All rise.
11            (The jury entered the courtroom.)
12            THE COURT:  All right.  Please be seated.
13            Mr. Acee, I'll remind you that you're
14   still under oath.
15            Mr. Lowry, if you wish to continue your
16   redirect of Mr. Acee, you may do so at this time.
17            MR. LOWRY:  Thank you, Your Honor.
18   BY MR. LOWRY:
19       Q.   So we were talking about the mechanics of
20   a controlled purchase, and I think we left off, you
21   send your undercover to the house or to the
22   location, correct?
23       A.   Yes, sir.
24       Q.   And they would -- and they're under
25   observation as best as you can perform it all the
```

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                      Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                       FAX (505) 843-9492
                                                                            1-800-669-9492



```
 1   time?

 2        A.   Yes.

 3        Q.   And if they go inside the house or

 4   something like that, obviously you can't be inside

 5   the house?

 6        A.   No, but we could have a live -- a live

 7   wire or something like that.

 8        Q.   You have a button camera or something?

 9        A.   A live wire or something like that.  But

10   yes, we don't go in with them.

11        Q.   And then the controlled buy takes place,

12   and they exchange money for drugs or contraband or

13   weapons or whatever?

14        A.   Sure.

15        Q.   And then hopefully, they exit the

16   structure or the location?

17        A.   Yes.

18        Q.   And return to a prearranged meeting place,

19   while you're observing them the whole time, like a

20   church, a parking lot, where you can rendezvous with

21   the undercover, correct?

22        A.   Yes.

23        Q.   And at that time you re-search the

24   undercover to see what they have on them, that

25   individual, correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   Yes, sir.  We should clarify we're talking

2  about an informant.  If it's an actual FBI agent,

3  we're not searching them.

4    Q.   Not going to do that?  Okay.  An

5  informant.  An informant would be someone like Mario

6  Montoya?

7    A.   Yes, sir.

8    Q.   Or Eric Duran?

9    A.   Correct.

10    Q.   And you would search them?

11    A.   Yes.

12    Q.   And recover the controlled substance or

13  whatever elicit contraband you're looking for?

14    A.   Yeah, in addition to making sure there is

15  no left-over money.

16    Q.   Correct.  You keep a strict accounting of

17  all the cash and everything?

18    A.   Yes, sir.

19    Q.   And all of that is a fairly meticulous

20  process that you supervised from beginning to end?

21    A.   Correct.

22    Q.   So it wouldn't be the case where you would

23  leave your informant passed out in a car?

24    A.   No.  That doesn't help my investigation.

25    Q.   And, in fact, when Mr. Duran was picked

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  up, passed out in a car, he wasn't on an FBI

2  investigation, was he?

3          MR. CASTELLANO:  Objection, calls for

4  hearsay.

5          THE COURT:  It would.

6          MR. LOWRY:  Okay.

7          THE COURT:  Sustained.

8  BY MR. LOWRY:

9      Q.   To your knowledge, was Mr. Duran -- in

10  your understanding was Mr. Duran ever authorized to

11  engage in controlled buys?

12          MR. CASTELLANO:  Objection, calls for

13  hearsay.

14          MR. LOWRY:  I'm asking for his

15  understanding.

16          THE COURT:  If he knows.  He's an FBI

17  agent, and he was supervising him.

18          MR. CASTELLANO:  I'd object to hearsay.

19  He's asking about the other state's investigation in

20  which he was not involved.

21          THE COURT:  Well, right now it's a yes or

22  no question.  Overruled.

23  BY MR. LOWRY:

24      A.   Yes.

25      Q.   Yes, you have an understanding?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.

 2        Q.    And is it your understanding that

 3   Mr. Duran, in November of 2017, wasn't authorized to

 4   make controlled purchases?

 5              MR. CASTELLANO:   Objection, calls for

 6   hearsay.

 7              THE COURT:   Overruled.

 8        A.    I need to explain.

 9        Q.    I'm just asking.  Mr. Castellano is

10   concerned about hearsay.  I just want a simple yes

11   or no.

12        A.    In early November he was still an FBI

13   informant and he could have been used to make buys.

14   I think he was.  I'm just not clear on the dates.

15              MR. LOWRY:   May I approach, Your Honor?

16              THE COURT:   You may.

17        A.    Yes, sir, I've read the first paragraph.

18        Q.    Did that refresh your recollection about

19   whether Mr. Duran was authorized to purchase drugs?

20        A.    That was helpful, yes.

21        Q.    And was he authorized to purchase drugs,

22   in your understanding, in November of 2017?

23        A.    The answer is yes.  But in that email you

24   showed me, that's related to his arrest.  He was

25   not.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   He was not authorized in that situation?

2     A.   Correct.

3     Q.   Nor was he authorized to possess any kind

4  of firearm?

5     A.   Not unless it was part of an FBI

6  operation.  Outside of that, no.

7     Q.   Which is why you testified in this case

8  about getting DNA off the weapon, to analyze the

9  weapon for potential future prosecution?

10    A.   Correct, sir.

11    Q.   He's not being prosecuted today?

12    A.   We're pursuing it.

13    Q.   Now, Mr. Duran -- we've heard

14  conversations just today, the audio conversations

15  between Mr. Duran and others.  It's fair to say that

16  that clip, the audio clip we heard between Chris

17  Garcia and Mario Montoya was November 29, 2015,

18  correct?

19    A.   In one of the clips, it was during that

20  controlled meeting, yes.

21    Q.   And that controlled meeting is the one

22  where Mr. Montoya recovered a weapon, the Phoenix

23  pistol, the .22 caliber pistol, for the plot, if you

24  will?

25    A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   And that, again, was a very structured

2   moment in the investigation in this case, wasn't it?

3      A.   Yes.  It was a controlled FBI operation.

4      Q.   Correct.  And so you're familiar with that

5   date, November 29, 2015?

6      A.   Yes, sir.

7      Q.   And that was the date that Mr. Montoya

8   picked up the weapon?

9      A.   Correct.

10      Q.   And that was the date we talked about on

11   your direct, where you instructed Mr. Montoya to

12   discuss with Mr. Garcia the purpose of the weapon?

13      A.   Yes.

14           MR. LOWRY:  Your Honor, could we play that

15   clip?  I believe it's Government's -- is it 238?

16           THE COURT:  Is this one of the ones that

17   Mr. Castellano --

18           MR. LOWRY:  Yes.

19           THE COURT:  -- played this morning?  So

20   it's in evidence.  You may play it.

21           (Tape played.)

22   BY MR. LOWRY:

23      Q.   There is no mention of Gregg Marcantel in

24   that clip, is there?

25      A.   No, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        MS. JACKS:  Your Honor, could we ask for a
2  limiting instruction regarding these clips?
3        THE COURT:  Yes.  This evidence can only
4  be used against Mr. Baca.  You can't consider it in
5  your deliberations as to the charges against the
6  other three gentlemen; just as to Mr. Baca, as well
7  as Mr. Acee's comments on the tape here.
8  BY MR. LOWRY:
9      Q.   So you testified on direct, and I just
10  want to make sure the jury understands.  This audio
11  that we heard is a conversation between Eric Duran,
12  who is Crazo, correct?
13      A.   Yes.
14      Q.   And Pup, who is Mr. Baca, correct?
15      A.   Yes.
16      Q.   And the CHS in this case would be Mario
17  Montoya, correct?
18      A.   Yes.
19      Q.   So it's fair to say, based upon the
20  testimony you gave on direct, that any telephone
21  conversation in this case that the jury is going to
22  hear took place after November 4, 2015?
23      A.   My direct with you on Monday, I think
24  that's what we covered, yes.
25      Q.   And you agreed with me, based on your text

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                        1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                            e-mail: info@litsupport.com

1    messages with Eric Duran, that's when the telephone

2    conversations started being recorded?

3         A.   Yes.

4         Q.   And so any time this jury is listening to

5    one of these recordings that involves anybody

6    outside of the facility, that's after November 4,

7    2015?

8         A.   If it's on Eric Duran's cellphone, yes.

9    There, of course, were like nine wiretaps, but --

10        Q.   Right.  Or even if it's on Mario Montoya's

11   phone, like this one?

12        A.   In this case, yes.

13        Q.   Right.  Because Mario Montoya would have

14   to call Eric Duran to get Mr. Baca on the telephone?

15        A.   That's true.

16        Q.   I mean, he didn't call the STIU Captain,

17   did he?

18        A.   No.

19        Q.   So I just want the jury to understand that

20   any of these calls, any of the telephone calls with

21   somebody outside of the facility, is after November

22   4th?

23        A.   If they're involving Mr. Baca, yes.

24        Q.   And I think you would agree with me, Agent

25   Acee, that at one point Mr. Duran actually asked Mr.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1   Baca point blank if he was interested in murdering

2   Mr. Marcantel?

3        A.   Early on.

4        Q.   And that conversation happened on October

5   24, 2015, didn't it?

6        A.   I believe so.

7        Q.   Do you need to refresh your recollection

8   with FBI reports?

9        A.   No, sir.

10       Q.   So you agree with me that that

11  conversation was on October 24, 2015?

12       A.   Yes.

13       Q.   And once Mr. Baca said he wasn't

14  interested in that, Mr. Duran stopped recording Mr.

15  Baca with the electronic recording device we've

16  referred to as the ELSUR device?

17       A.   No.

18       Q.   Well, I mean for a period of days?

19       A.   I need to look at the records.  I'm not

20  sure.

21       Q.   Absolutely.

22            MR. LOWRY:  May I approach, Your Honor?

23            THE COURT:  You may.

24       Q.   And it's fair to say the FBI kept

25  meticulous records on the times and dates of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  electronic recordings?

 2       A.   Yes.

 3       Q.   And based on your review of the recording

 4  time signatures after October 24th, Mr. Duran didn't

 5  record Mr. Baca again for a period of days?

 6       A.   I don't think that's right, based on what

 7  I saw in the records.

 8       Q.   Okay.

 9            MR. LOWRY:  May I approach again, Your

10  Honor?

11            THE COURT:  You may.

12       A.   It goes on again on the 26th and the 28th.

13       Q.   Now, the recording on the 26th was an

14  8-second recording?

15       A.   That's correct.

16       Q.   And do you remember what that recording

17  was?  The recording on the 26th was an 8-second

18  recording.

19       A.   Off the top of my head, I think it was

20  just the date; he's recording the date.

21       Q.   Right.  And that's Mr. Duran, himself,

22  speaking into the microphone, saying "Today's date"?

23       A.   Yes.

24       Q.   And Mr. Duran said, "Today's date is

25  10/26/2015"?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Correct.

 2        Q.    So that wasn't a recording with Mr. Baca,

 3   was it?

 4        A.    It was not.

 5        Q.    So you would agree with me, then, after

 6   Mr. Baca says, "I'm not interested in Mr. Marcantel

 7   being murdered," on October 24th.  The next

 8   recording involving Mr. Baca was October 28, 2015?

 9        A.    I agree with the second part, just not the

10   first.

11        Q.    Would it refresh your recollection to

12   listen to the audio clip?

13        A.    No. I remember what Mr. Baca said.

14        Q.    Okay.  And, in fact, the FBI reports

15   memorializing that conversation indicated that Mr.

16   Baca was not interested in murdering Mr. Marcantel?

17        A.    Could you be more specific?  Which report?

18        Q.    Sure.  Do you recall the FBI report -- and

19   in fairness, this was one of your subordinates that

20   you directed to memorialize these conversations and

21   dictate the times, wrote a report that said for the

22   19th phone call, Pup tells CHS to have Mario, Poo

23   Poo, hit Santistevan and/or Adam Vigil, not

24   Marcantel?

25        A.    Yes.  Thank you.  I remember that.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1      Q.    And would you agree with me that that

2  phone conversation happened on October 24, 2015?

3      A.    Yes, sir.

4      Q.    And it happened late in the evening?

5      A.    Yes.

6      Q.    And after that recording, Mr. Duran didn't

7  record Mr. Baca for a period of almost four days?

8      A.    Correct.

9      Q.    You touched briefly upon about Mr. Duran

10  once he left New Mexico, and you said once you

11  learned about his legal troubles, you initiated an

12  investigation?

13      A.    Yes.  Limited, but yes.

14      Q.    And I believe you said last week that you

15  had issued search warrants for his Google account,

16  his Facebook account, his telephone accounts?

17      A.    When he had went off the rez, yeah.

18      Q.    Right.

19      A.    When we couldn't locate him, yes.

20      Q.    And he wasn't responding to your calls?

21      A.    No, for a couple weeks.

22      Q.    And he didn't respond to subpoenas to

23  appear in this court, did he?

24      A.    Well, in fairness to him, I think the

25  Government accepted it on his behalf.

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                           1-800-669-9492
                                            e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   But when you called him to say, "Your

2  presence is requested, you have an RSVP for the New

3  Mexico Federal District Court" --

4      A.   Crickets.

5      Q.   And the work product of that

6  investigation, the fruits of your search warrant for

7  the Google, the Facebook pages, all of that, that

8  was never shared with defense counsel in this case?

9      A.   I don't think so, sir.  I think they're

10 sealed.  I did do a 302, just to be clear, that I

11 did turn over, describing that I did that.

12     Q.   You know, I want to move on from the

13 Marcantel and pick up with the concern with Mr.

14 Urquizo.  After looking at your field notes -- well,

15 I've looked at your field notes since the last time

16 you testified.  But the agents were confident after

17 his March 6, 2017, debrief that Mr. Baca didn't want

18 Mr. Romero to be killed?

19     A.   That's what I recall.

20     Q.   Okay.  And you drafted a report stating

21 just that?

22     A.   Yes.

23     Q.   That he wasn't to be killed?

24     A.   Or stabbed.

25     Q.   Or stabbed?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      A.    Beat up.

 2      Q.    Roughed up?

 3      A.    Yes.

 4      Q.    And so multiple agents that sat with him

 5 during the March 6, 2017, debrief wrote the same

 6 thing in their notes, didn't they?

 7      A.    I don't know, sir.  I can tell you what --

 8 I can represent what's in my notes and my 302.  I'd

 9 want to look them over.  But I'm not sure what the

10 other agents wrote.

11      Q.    Sure.

12           MR. LOWRY:  May I approach, Your Honor?

13           THE COURT:  You may.

14           MR. CASTELLANO:  Your Honor, I have no

15 objection to questioning on his notes.  I do object

16 to the other notes as hearsay.

17           THE COURT:  All right.  Let's take them

18 one at a time.

19      A.    These are my notes, sir, and I think these

20 are Agent Stemo's.

21 BY MR. LOWRY:

22      Q.    And your notes are completely consistent

23 with the conversation you had with Julian Romero,

24 where you told Mr. Romero that Mr. Baca didn't want

25 him hurt too bad, that he didn't want him stabbed,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   and didn't want him killed.

 2       A.    Yes.

 3       Q.    And, in fact, what Mr. Urquizo conveyed to

 4   you on March 6, 2017, was that it was the younger

 5   guys wanted to remove the older generation?

 6       A.    That's what I recall, yes.

 7       Q.    So they could create more room for them to

 8   maneuver within the organization?

 9       A.    Yeah, like a takeover, I guess.

10       Q.    And so that's completely inconsistent with

11   Mr. Urquizo's testimony here in court?

12       A.    I think he testified that Pup wanted him

13   killed.

14       Q.    But that's not what your notes say from

15   your --

16       A.    My notes from March 6th say differently,

17   correct.

18       Q.    So you would agree with me that based on

19   your initial debrief with him, his statements to you

20   are completely at odds with his testimony before

21   this jury?

22       A.    Just that statement regarding Mr. Baca's

23   intention, yes.

24       Q.    Correct.

25            MR. LOWRY:   May I approach, Your Honor?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  You may.
 2       Q.    Now I want to move away from the Romero
 3  thing to Javier Molina.  And I'd asked you on direct
 4  at the beginning of the week if you'd ever attempted
 5  to verify any potential for these two gentlemen,
 6  being David Calbert and Joe Martinez, Cheech, to be
 7  present in the rec yard at the same time?
 8       A.    You asked me about that, yes.
 9       Q.    And you indicated -- I asked you why
10  didn't you check the rec yard records, and you said
11  that they rarely, if ever, exist.  Or I don't want
12  to put words --
13       A.    I said it depends on the officers how well
14  the notes are taken.
15       Q.    Did you actually get the notes from the
16  time period in question?
17       A.    No.
18            MR. LOWRY:  May I approach, Your Honor?
19            THE COURT:  You may.
20       Q.    In the course of your investigation, did
21  anybody with the Department of Corrections ever
22  share with you rec yard records?
23       A.    Yes.  I've seen them before, so my answer
24  would be yes.
25       Q.    Okay.  And do the rec yard records look
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    like what I've handed you, which I can mark for

2    identification purposes as Defendants' Exhibit next

3    in order, GB?

4         A.   Yes.

5         Q.   And would documents like that fairly and

6    accurately represent what the rec yard records would

7    look like?

8         A.   Yes.

9         Q.   And those are for PNM North, the housing

10   unit, the housing units there?

11        A.   All three of these are for the North.

12             MR. LOWRY:  Your Honor, at this time I'd

13   like to move for admission of Defendants' Exhibit

14   GB.

15             THE COURT:  Any objection, Mr. Castellano?

16             MR. CASTELLANO:  Was that GB?

17             THE COURT:  GB.

18             MR. LOWRY:  GB.

19             MR. CASTELLANO:  May I see the records

20   again, Your Honor?  I thought he was just going to

21   refresh him with them.

22             No objection, Your Honor.

23             THE COURT:  Anybody else have any

24   objection?  Not seeing or hearing anything,

25   Defendants' Exhibit GB will be admitted into

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  evidence.

2            (Defendants' Exhibit GB admitted.)

3  BY MR. LOWRY:

4       Q.   And just by way of an example, for the

5  outdoor recreation unit at the PNM North, you would

6  actually have listed the inmate's name over here?

7       A.   Yes, sir.

8       Q.   And then actually have the Department of

9  Corrections -- this is the inmate number, NMCD

10 number?

11      A.   Yes.  For that inmate, yes.

12      Q.   And that's the number that they carry with

13 them the day they step in the facility as a

14 convicted felon in New Mexico until -- for the rest

15 of their life?

16      A.   Yes.

17      Q.   And even if they return, they have that

18 same number?

19      A.   Yes.

20      Q.   And this would actually have the

21 recreational pen, the run that they would be placed

22 inside?

23      A.   Yes.

24      Q.   And the time they entered it?

25      A.   Yes.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1    Q.   And the time that they left it?

2    A.   Correct.

3    Q.   And the officer who took them from their

4  living quarters to the rec yard?

5    A.   Yes, sir.

6    Q.   And if things were done correctly, you'd

7  be able to document with specificity whether these

8  two individuals were in the rec cage at the same

9  time?

10    A.   Or about, yeah.  Maybe in passing.  But

11  yes.

12    Q.   But no such records exist for David

13  Calbert and Joe Martinez in this case?

14    A.   That's what Corrections represented to me.

15    Q.   Now, Ms. Jacks asked you a little bit on

16  her direct about this meeting that happened between

17  Lupe Urquizo and David Calbert.  And it happened

18  where?  Was it at the courthouse?  The FBI office?

19    A.   It was at the FBI office in Albuquerque,

20  in the inmate booking area in our office on the

21  first floor.

22    Q.   And that was August 22, 2017?

23    A.   Yes.

24    Q.   Now, were you present when Mr. Urquizo

25  testified?



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                1-800-669-9492
PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

BEAN & ASSOCIATES, Inc.

1          A.    Yes.

2          Q.    And you heard the phone conversations,

3    which you commented with Mr. Castellano about the

4    credit he thought he was going to get?

5          A.    I think so, yes.

6          Q.    And part of that, he was under the

7    impression he was going to get five years off his

8    sentence for lining up other cooperating people to

9    testify or to assist you in this case?

10         A.    I recall generally him saying those kinds

11   of things.

12         Q.    But was this a false impression on his

13   part?

14         A.    To an extent, yeah.

15         Q.    And what do you mean "to an extent"?

16   Would he get credit, like he told his family members

17   in the phone call, for signing up other people?

18         A.    No.    I mean to an extent, because I don't

19   make those decisions, but I certainly pay attention

20   to it.    If a cooperator brings in another

21   cooperator, I take note of that.

22         Q.    As does everybody involved in the

23   prosecution?

24         A.    Yes, sir.

25         Q.    And that would be one of the factors both

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  law enforcement, the FBI, and the U.S. Attorney's

2  office would consider when they move for the 5K

3  reduction in the sentence at the end of that

4  particular person's case?

5      A.   Yes.  And I have represented to them and

6  their attorneys if they call me at a future

7  sentencing, the reason I make note of that kind of

8  stuff is that I'll be prepared to answer questions

9  about it.

10     Q.   And testify favorably, or at least

11 participate in their sentencing proceedings in a way

12 that would reflect more beneficially to their final

13 disposition?

14     A.   I'll testify honestly about whatever

15 questions I'm asked.

16     Q.   And if they were successful in recruiting

17 on behalf of your investigation, they would get

18 credit for that?

19     A.   Well, ultimately I guess that's up to the

20 judge, but I believe the United States -- and I

21 don't speak for the attorneys -- but I believe that

22 information could come out and would be favorable.

23     Q.   And so when Lupe Urquizo went into that

24 room with David Calbert, he was motivated to

25 convince David Calbert to cooperate?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    I witnessed the initial interaction, and I
 2   think that that's fair.  He spoke favorably about
 3   us, and me personally, and the process.  So I agree
 4   with you.  I just don't know what his attorney told
 5   him about the process.
 6        Q.    And since then, as Ms. Jacks pointed out,
 7   they've been housed together for extended durations
 8   of time?
 9        A.    No.  They were at different facilities up
10   until the trial started and then -- wait a minute.
11   I just know that Urquizo was held at a different
12   facility for quite some time.  He was out at Otero,
13   and I think he testified about that.  And as I sit
14   here today, I'm not sure he's -- I'm not sure he's
15   left there.  So I may have testified incorrectly to
16   Ms. Jacks.  I don't know if they're together right
17   now.
18        Q.    But they had ample opportunity, at least
19   on August 22nd, the 23rd, to compare notes?
20        A.    If you consider 10 minutes ample
21   opportunity, or their attorneys.
22        Q.    It depends on who's keeping the time,
23   according to the testimony?
24        A.    I think our times were consistent.
25        Q.    You've testified before in this case about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   this moment when Mr. Urquizo enters the Southern
 2   facility, correct?
 3        A.   I think so.
 4        Q.   At pretrial hearings?
 5        A.   I'm sure you'll remind me if I did.
 6        Q.   And I asked you about it on direct, and
 7   you said that there seemed to be a little confusion
 8   about that; that you thought maybe you misreported
 9   that in your 302?
10        A.   Oh, I think I brought that up on Monday
11   and mentioned it again today.  Yeah, there's a
12   sentence in there that I was trying to point out on
13   Monday and wasn't able to.
14        Q.   And so you think that there was no
15   communication through a window?
16        A.   No, I think that there was initially.  I
17   think that we're talking about communication at two
18   different places in the facility, and that's where
19   it gets confusing.  Because I think there's
20   interaction at two different times and at two
21   different places.  And I'll admit, that was hard for
22   me to process when I was first hearing it.
23        Q.   Can I pull up Defendants' Exhibit E-10.
24   And do you recognize this at all?  This has been
25   admitted into evidence.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.   I've seen this photo a bunch of
 2   times.
 3        Q.    If I represented to you this is the
 4   interior of the blue pod, looking at the main door
 5   coming in and out of the blue pod?
 6        A.    That leads out to what we've been calling
 7   the horseshoe area.
 8        Q.    Exactly.   So if there is a communication
 9   through the window of this, through the front door
10   of blue pod, it would have to be through that
11   window?
12        A.    If we're talking about a window, yes.
13        Q.    Correct.   And apparently in your 302, you
14   were talking about a window?
15        A.    At one point, I am.
16        Q.    Well, right.   You wrote in your 302 that
17   there was communication between Mario Rodriguez and
18   Lupe Urquizo as he entered the Southern facility
19   through a window?
20        A.    You'll have to show me the 302.
21        Q.    Sure.
22              MR. LOWRY:   May I approach, Your Honor?
23              THE COURT:   You may.
24        Q.    And that's what you wrote in your reports,
25   that they held a note up to the door?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.

 2        Q.    But this would be as Mr. Urquizo is

 3   getting escorted into the facility from the North?

 4        A.    I believe so.

 5        Q.    Now, Mr. Urquizo testified that nobody --

 6   for this jury, he said there was no communication

 7   through the window?

 8        A.    You're right.   I think he said it went

 9   under the door.

10        Q.    And could I pull up Defendants' Exhibit

11   E-17.   And do you recognize this as the top tier

12   door?

13        A.    Yes, sir.

14        Q.    And you would agree with me that this tier

15   door doesn't have a window?

16        A.    I agree.

17        Q.    And you would agree with me that this tier

18   door is virtually identical to the tier door on the

19   lower level?

20        A.    Yes.

21        Q.    Could we pull up Government's Exhibit 162.

22   And, again, the photo we just looked at would be the

23   tier door that separates the blue pod from the

24   yellow pod, correct?

25        A.    Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    And that tier door is right there?

 2        A.    It is on both levels.

 3        Q.    Right.  So the 302 apparently -- well, Mr.

 4   Urquizo thinks, as of today, that there was no

 5   communication through the window?

 6        A.    I think that's right.

 7        Q.    And that would, again, be inconsistent

 8   with what you believed after your interview with him

 9   on March 6, 2017?

10        A.    It could be inconsistent with what I

11   understood him to be telling me.

12        Q.    And, in fact, in the pretrial hearings in

13   this case, when you testified on November 27, 2017,

14   you testified at length about this conversation that

15   Mr. Urquizo had, apparently had, through a window?

16        A.    I testified to what I wrote in my report,

17   yes.

18        Q.    Right.

19        A.    What I recalled.

20        Q.    And that's the testimony that today Mr.

21   Urquizo said never happened?

22        A.    No, just one area.  There is one point of

23   contention there.  It's that sentence at the bottom

24   of the paragraph.

25        Q.    But --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   I think I said held up to the door, and he

2   said it went under the door.

3    Q.   Right.  Well, in November 2017 you

4   testified at length about -- and we went through

5   this on your direct -- that you were under the

6   belief that Mr. Martinez and Mario Rodriguez were

7   out here in the horseshoe, doing maintenance work.

8    A.   They were, and I think Mr. Urquizo agrees

9   with that in his testimony, when he was coming into

10  the facility.

11   Q.   That they were out here in the horseshoe,

12  doing maintenance work?

13   A.   I don't want to represent he said the

14  horseshoe specifically, but from my recollection --

15  and I defer to the Court's record -- but that he

16  testified, which was consistent with my memory and

17  my 302, that he did encounter them coming into the

18  facility.

19   Q.   In the horseshoe area?

20   A.   I think so.

21   Q.   And, in fact, you testified at a pretrial

22  hearing that Mr. Rodriguez and Mr. Martinez were out

23  in the horseshoe area, possibly painting?

24   A.   Painting or cleaning or something like

25  that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           MR. LOWRY:  May I have a brief moment,
 2    Your Honor?
 3           THE COURT:  You may.
 4      Q.    Now, Mr. Acee, the United States had
 5    offered Exhibit 777 in evidence.  And I believe
 6    you've modified that initial summary, correct?
 7      A.    Yes, sir, the chart.
 8      Q.    The chart?
 9      A.    Yes.
10      Q.    Now, in fairness, you've revised this
11    summary chart twice now, have you not?
12      A.    On the 27th, and again last night at about
13    10:30 or 11:00 p.m.
14      Q.    Now, would you explain to the jury the
15    revisions you did between the first and the second
16    revision?  Or do you recall?
17      A.    There were a couple of dates that I
18    changed, the date of the debrief.  Because I think I
19    found somewhere they were mislabeled, based on when
20    the report was approved, kind of what I would
21    classify as misreads; just that the approval date
22    and the date we write are sometimes different.
23           And then I found a couple additional
24    debriefs that I wanted to include, that weren't on
25    the first one.
```



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Okay.  And was this a similar revision

2  between the second and the one you produced

3  yesterday?

4    A.   Yes.  Because yesterday, following Court,

5  I'd been instructed to collect all agent notes

6  related to all those debriefs, so I spent about

7  eight hours at the Las Cruces office, pulling all

8  that up.  So then I had additional revisions on the

9  chart based on the time I spent in-depth studying

10  that stuff.

11    Q.   And if I understood your testimony last

12  week when this exhibit was conditionally introduced

13  into evidence, the purpose of this summary was sort

14  giving an overview of all of the FBI debriefs that

15  were done in this case?

16    A.   For Mr. Castellano.  I didn't know we'd be

17  talking about it in here.  I was trying provide Mr.

18  Castellano with a summary.

19    Q.   But that was the purpose of the summary?

20    A.   Yes.  It was a little hurried because I

21  thought it was just for him.

22    Q.   But your intention was to capture all of

23  the debriefs with the individuals that testified in

24  this case?

25    A.   Yes, sir.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1       Q.   And while you might not have known that

2  Mr. Castellano was going to make it an exhibit last

3  week, by the time of yesterday you certainly

4  understood that?

5       A.   Yeah.  I should have written a draft on

6  it.

7       Q.   But your goal as of yesterday was to

8  capture everything?

9       A.   Yes, sir.

10      Q.   Okay.  And you obviously had the luxury of

11 having all of your field notes that were just

12 disclosed to the defense this morning?

13      A.   No.  Many of those were up in Albuquerque.

14      Q.   Well, there's no electronic database where

15 you could access those notes?

16      A.   No, not necessarily, unless you're saving

17 them electronically, which I don't.  I retain my

18 original notes.

19      Q.   Between last week and this week, you've

20 been in Albuquerque and have had access to those

21 notes?

22      A.   That's fair to say.

23      Q.   I'm going to put on the Elmo what's been

24 conditionally entered.  This says right here, this

25 was your analysis as of yesterday, March 1, 2018,

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1  correct?

 2       A.    Last night.  Yes, sir.

 3       Q.    And everybody had a long night last night.

 4             Now, if I understand your chart correctly,

 5  you had six debriefs from Manuel Jacob Armijo,

 6  correct?

 7       A.    Yes.

 8       Q.    Now, you didn't include in your list the

 9  debrief that took place with the arrest, when you

10  had to arrest Mr. Armijo for his drug violation?

11       A.    No, this is just debriefs.

12       Q.    Did you talk to Mr. Armijo on that day,

13  which was November 16, 2017?

14       A.    He's a big guy.  I try to keep him happy.

15  But he's got an attorney.  So, no, I didn't debrief

16  him.

17       Q.    Okay.

18       A.    We had some conversation, but not about

19  debriefing.

20       Q.    So the FBI 302 that you wrote, indicating

21  that you drove Mr. Armijo to the U.S. courthouse for

22  his initial appearance -- I mean, no actionable

23  information arose during that transport?

24       A.    No.  I respect the attorney-client

25  privilege.  I mean, I'm not going to tell you it was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

185

```
 1    a silent ride.  We talked.  I think I allowed him to

 2    call his wife.  But I did not question him about the

 3    case, no.

 4         Q.   And some attorneys will give you authority

 5    to do that in their absence, will they not?

 6         A.   Yes, sir, and his attorney usually prefers

 7    to be there.

 8         Q.   Now, the next line down, for Javier Rubio,

 9    you have three entries?

10         A.   I do.

11         Q.   Correct.  And you don't have the entry for

12    the debrief that took place on January 24th of this

13    year?

14         A.   Is that the one on the 23rd?  Because this

15    might be where I had to change some dates because

16    the reports, the way we interpret them, might be

17    different.

18         Q.   Okay.

19         A.   So I would want to look at them a little

20    closer.  I suspect it's the one on the 23rd.

21              MR. LOWRY:  May I approach, Your Honor?

22              THE COURT:  You may.

23         Q.   Does that refresh your recollection?

24         A.   Yes, sir.  You need to put the 24th up

25    there.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    So your third revision let's just say

2  didn't quite capture the correct date, then?

3      A.    No.

4      Q.    Now, let's move down to Mr. Urquizo.

5      A.    I just wonder what the notes say on that

6  one.

7      Q.    Do you want to see them?

8      A.    No, I'll take your representation.  It

9  wouldn't be the first time an agent put the wrong

10  date on the 302, but the notes have the correct

11  date.  But I'll concede that I have an error there.

12      Q.    Now, Mr. Urquizo.  You have five.  But

13  your records seem to indicate that when Mr. Urquizo

14  came down to Las Cruces to the district courthouse

15  here, for I guess his initial appearance, that you

16  spent breakfast and maybe a lunch with him?

17      A.    Yes, when he was meeting with his

18  attorney.  If there's expenses there, that's what

19  they were for.  I didn't sit and eat with him, but

20  we bought him food.

21      Q.    Right.  And your expense report says that

22  there were CHS meal expenses during debrief sessions

23  in support of the captioned matter.

24      A.    Okay.

25      Q.    So would you consider your meetings with

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                         Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                          FAX (505) 843-9492
                                                                                 1-800-669-9492
                                                                          e-mail: info@litsupport.com



1   him to be debrief sessions that could be included in

2   this witness summary?

3       A.   No.   The more accurate document is going

4   to be the 302.   This is done two months after the

5   fact, when I get a credit card bill on my undercover

6   credit card.

7       Q.   So you didn't debrief with him?

8       A.   No, sir.

9       Q.   So you just mistakenly wrote in your

10  expense report that these were debrief sessions?

11      A.   It's a play on words.   I mean, I should

12  have said during -- see, my finance office, it

13  limits what they want to see on our forms.

14      Q.   Right.

15      A.   So I'm pushing the form through.   I'm

16  accurate.   I'm being honest with you.   We didn't

17  debrief him.   I'm getting my credit card paid in the

18  language that my office wants to see on my

19  paperwork.

20      Q.   And this was for the breakfast that you

21  had at the Crane Cafe in Lemitar, New Mexico?

22      A.   That's a gas station.   It's off that exit.

23  I think I got him a breakfast burrito and coffee.

24  We didn't stay and eat.   He's in shackles and in the

25  back of an STIU van.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                     (505) 843-9494
FAX (505) 843-9492                                                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1        Q.    And then Rasco's Barbecue on the way home?

2        A.    Across the street here.  Again, I went in

3   and I ordered, brought his food out to him.  He ate

4   it in the back of a Corrections van.

5        Q.    But despite the characterization of them

6   being debrief sessions, you didn't debrief him?

7        A.    I did not debrief him.

8        Q.    Mario Rodriguez.  You have on your report

9   four debriefs with Mario Rodriguez.  And my review

10  of your records indicates that there was another

11  meeting between you and Mr. Rodriguez on November

12  16, 2017.

13       A.    Is that the one at the pen, with Mr.

14  Sanchez, Ron Sanchez?

15       Q.    At the North facility in Santa Fe, yes.

16       A.    That's not a debrief.  That's the meeting

17  with Mr. Sanchez then, Ronald Sanchez.

18       Q.    Okay.  But Mario Rodriguez was present

19  during that debrief?

20       A.    Yes, sir.  I recorded it.

21       Q.    And that's the debrief when you said, "And

22  you've got to testify truthfully," and Mr. Rodriguez

23  laughed?

24       A.    No.  First of all, it's not a debrief.

25       Q.    Well, the interview, I guess, or the

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                     (505) 843-9494
FAX (505) 843-9492                             FAX (505) 843-9492
                                                   1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1    meeting with Ronald Sanchez.

2         A.   And somebody said -- I said, "You've got

3    to testify truthfully," and he laughed at me?

4         Q.   He laughed at the notion.

5         A.   I don't remember that.  I don't think it's

6    funny, either.

7         Q.   No, it wouldn't be funny, would it?

8         A.   No.

9         Q.   Yeah.  I don't think he laughed.

10        A.   I wouldn't support that.  Or if I heard

11   that correctly, I wouldn't -- we'd have a

12   confrontation over it.

13        Q.   Now, your summary chart doesn't include

14   the December 12, 2017, meeting with Mario Rodriguez.

15   And this is, again, at the PNM North facility with

16   Captain Sergio Sapien and Chris Cupit.

17        A.   Yeah, that's not a debrief.  The FBI

18   didn't participate in that.  That's a meeting that

19   they have with him about institutional security.

20        Q.   And so even though there's a 302 written

21   on it with information that was obtained from Mario

22   Rodriguez, you don't consider that a debrief related

23   to this case?

24        A.   I don't believe that's true.  My

25   understanding of that meeting, what was represented

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  to me, is they were talking to him about lax

2  security at the institution, which doesn't have to

3  do with this case, in my opinion.

4      Q.   So you don't think that all of the

5  information we've heard about shanks and the

6  creation of shanks and all the security issues

7  involved in this case was related to this

8  conversation?

9      A.   Well, in a roundabout way it is.  But they

10 were talking about right here, right now,

11 improvements that need to be made at the facility.

12 I think they even talked about putting a camera on

13 him and having him try escape from a cell or

14 something. but we weren't part of that.

15     Q.   Okay.  Let's drop down to the next line

16 with Mr. Armenta, Kreaper.  You have two debriefs

17 here, but you've testified extensively today about a

18 meeting you had with Mr. Armenta on December 2,

19 2016.

20     A.   Was that the one where I was asked if I

21 met with the group?

22     Q.   Correct.

23     A.   Yes.

24     Q.   And that generated a 302 drafted by you?

25     A.   It did.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   So that's not on your list?

 2        A.   I guess you and me are going to disagree

 3   on what a debrief is, then.  I asked one question.

 4        Q.   It was a question related to this case,

 5   was it not?

 6        A.   It was, yes, sir.

 7        Q.   And it was a question you really wanted to

 8   know the answer to, was it not?

 9        A.   That's accurate.  I just don't consider it

10   a debrief.

11        Q.   Let explore this.  How do you define a

12   debrief?  If a debrief isn't obtaining information

13   from an individual, what is it?

14        A.   A debrief, we're going to sit down, and

15   their attorneys are going to be there, and we're

16   going to get into the weeds on stuff.  We're going

17   to -- they may last hours, where I ask a series of

18   questions and they have long extensive answers.  I

19   mean, we're debriefing something.  I'm not asking a

20   mere question.

21        Q.   Sometimes a single question could bear an

22   answer that you desperately want to know, does it

23   not?

24        A.   Sure.  But that doesn't make it a debrief.

25        Q.   Well, with Mr. Armenta, you also met with
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492
                                               e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  Mr. Armenta on the -- let's see.  This would be his
2  plea hearing on the 13th of 2016.
3      A.   Okay.
4      Q.   Would you have debriefed him at the
5  courthouse after that?
6      A.   Not if I don't have a 302 saying I -- with
7  a bunch questions and answers, no.
8      Q.   Okay.
9      A.   Sometimes the attorneys don't have time
10 for us to do it.
11     Q.   And so in your mind's eye, a debrief isn't
12 a debrief unless it generates a 302?
13     A.   No, that's not true.  I think a debrief --
14 in my mind, a debrief is when I sit down with a
15 defendant, a cooperator, whatever, and I sit down
16 and we take out my notebook and we go through a
17 series of questions, debriefing them on what they
18 know.
19     Q.   Okay.  So if we skip down to Jerry
20 Montoya, you have five sessions here, but you don't
21 include May 16, 2017, when again you expensed
22 chimichangas for what you described in your expense
23 account as food expenses during a debrief session.
24     A.   I already explained that.  Yes.
25     Q.   So you think even though you called it a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    debrief session, it's not a debrief session?

 2        A.   On the expense report, yeah, I'm limited

 3    in what I can call it to get the bill paid.

 4    Otherwise, I'm paying out-of-pocket.

 5        Q.   So you misrepresent what it is, to get

 6    paid?

 7        A.   No.   That's clever.   I do what the finance

 8    office tells me to put on the form so it gets

 9    approved.

10        Q.   I'm not trying to be clever.   I'm trying

11    to understand what a debrief is.

12        A.   I think I've explained it.

13        Q.   Well, I mean, it seems to have very

14    mercurial definitions, depending on the

15    circumstances.

16        A.   I'll introduce you to our finance people.

17        Q.   Let's talk about Julian Romero.   You would

18    agree with me that in your initial exhibit, you

19    didn't even include -- if I can find it here.

20    Julian Romero.   You didn't even include the trip

21    that you took to the Old Main with him when you

22    recorded him for hours?

23        A.   Yes, sir.   As I sat here, I didn't have

24    that material in front of me.

25        Q.   And so I don't want to belabor this, but

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                      1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  the times that you purchased food for Mr. Romero,

2  and Mr. Romero wasn't in custody?

3       A.   No.

4       Q.   And he didn't have an attorney, did he?

5       A.   He did at one time.  Because I've arrested

6  him before.

7       Q.   Okay.  But when you met with him on July

8  16, 2016, to eat, that wasn't a debrief session?

9       A.   I'm not sure.  But to be clear, Mr. Romero

10 made controlled buys for us on other cases, so we'd

11 have to look at the case number.  I'm just not sure.

12      Q.   Okay.

13      A.   That could be Agent Neale who is using him

14 on another case.

15      Q.   And that leads into my next questions.

16 These situations where you're working with Mr.

17 Romero on other cases that generate 302 reports, you

18 don't consider that part of this case to include in

19 your witness summary?

20      A.   No.  If we're not talking about this case

21 and we're talking about an ongoing case, I certainly

22 don't want to provide that in this for everyone here

23 to see.

24      Q.   Well, I mean, you wrote this -- well, it's

25 not a 302, and I think you made a distinction in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    your earlier testimony the difference between a 1023

2    report and a 302?

3         A.   Yes, sir.

4         Q.   But many times they're almost identical,

5    the substance of the report, correct?

6         A.   Many times we cut and paste from the 302,

7    put it in the 1023, and take the informant's name

8    out of it.

9         Q.   Exactly.  So substantially, there is not a

10   real difference?

11        A.   No.  The 1023, you shouldn't see their

12   name.

13        Q.   It's a matter of how you file them in the

14   FBI records?

15        A.   Yes, sir.

16        Q.   But in this report, you indicated that on

17   9/30 of 2016, this was information pertaining to SNM

18   Gang threats?

19        A.   I need to look at it.

20        Q.   Sure.

21             MR. LOWRY:  May I approach, Your Honor?

22        A.   I've done a lot of Julian's 1023s.

23        Q.   Sure.

24        A.   What was the question, sir?

25        Q.   This is related to the SNM?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492

PROFESSIONAL COURT                                                 e-mail: info@litsupport.com
REPORTING SERVICE

 1    A.    Yes.  I use this material to write search
 2  warrants.
 3    Q.    Right.  And so you didn't -- and it was an
 4  opportunity for you to spend, or at least the case
 5  agents working with you to spend time with
 6  Mr. Romero?
 7    A.    Yes.
 8    Q.    But yet, you didn't want to include it in
 9  your summary of significant exchanges with Mr.
10  Romero?
11    A.    Is this different than the May one?
12    Q.    Yes, it is.
13    A.    Okay.  I just noticed that.  Okay.
14    Q.    Likewise, you met with Mr. Romero on July
15  24, 2017, to discuss activity and that's not
16  included in your witness summary.
17    A.    Is that also prep for a search warrant?
18  I'd need to look at it.
19    Q.    Sure.
20         MR. LOWRY:  May I approach?
21         THE COURT:  You may.
22    A.    Okay.  Yes, this is where he helped me
23  arrest a sex offender who was an SNM member.
24    Q.    Now, would you agree with me that it's
25  hard for me to discern or understand what the nature

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    of the reports are, without any field notes to give

 2    me some kind of contemporaneous mental impressions

 3    of the agents working the case?

 4         A.   I don't think it's that difficult.

 5         Q.   You don't?  I'm supposed to know that

 6    that's to prepare a search warrant?

 7         A.   That, you should, because it says it in

 8    the first sentence.  And this one says that I used

 9    his information, indicating this gang member was

10    wanted as failure to register as a sex offender, and

11    he told me where he was at, and I did surveillance,

12    and I arrested him.

13         Q.   And you did that based on information you

14    obtained from Julian Romero?

15         A.   Yes.

16         Q.   And Julian Romero assisted you with that?

17         A.   Not the arrest, but the information.  Mr.

18    Lowry, I don't think it's a debrief.

19         Q.   I understand that.  But I guess what I'm

20    trying to demonstrate is that in the course of your

21    investigation, there are numerous opportunities for

22    you to get information from the individuals that are

23    cooperating, cooperating with you?

24         A.   It's easier if they don't have attorneys,

25    but yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   Right.  Even in some instances when they

 2   have the attorney, you can call the attorney and

 3   say, "Hey, I'm going up to the North.  I want to sit

 4   down and talk with your client.  Is that okay?"

 5        A.   Yes, and I've done that.

 6        Q.   And most attorneys, when their client is

 7   cooperating with you and you've established a

 8   rapport with the attorney and the client over the

 9   course of years, correct -- like this case?

10        A.   Yes.

11        Q.   Many attorneys will just say, "That's

12   fine"?

13        A.   Some do.  They want to know what the

14   questions are ahead of time.

15        Q.   Some, but not all?

16        A.   Not all.

17        Q.   In fact, some attorneys will let their

18   clients be videotaped in extensive debriefs without

19   even being there?

20        A.   If they know about it, yes.  I think I

21   know which one you're talking about.  I don't know

22   if he knew about it.  But in any case, when I go, I

23   ask permission before.

24        Q.   Okay.  So all of these instances I'm

25   looking at, then, you're more than happy to say,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  "Look, that's not a debrief," as you've defined it?

2       A.   I made the chart, yes.  I tried to do it

3  to be helpful.  But this isn't a debrief.

4       Q.   Okay.  But let's be plain about it.  You

5  had to revise this chart not once, but twice?

6       A.   Yes.  And it looks like I need to do it a

7  fourth time.

8       Q.   Okay.  No, you do need to do it a fourth

9  time.

10      A.   Well, you pointed out that I was a day off

11  on one of them.

12      Q.   Okay.  I guess we're going to agree to

13  disagree, then, on the meaning of a debrief because

14  I think if you're going to ask an individual

15  questions, even if it's a single question about the

16  case, and you're writing a 302 on it, how is that

17  not -- well, I know what you're going to say:  It

18  wasn't hours on end.

19      A.    No, that's not the only definition.  I

20  mean, what we have in front of us here in this

21  exhibit is my historical debriefs of the cooperators

22  pertaining to this case right here.  Me arresting a

23  sex offender on the streets is not the same thing.

24  But I also provided this to the defense, so it's not

25  like I just turned it over yesterday.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                          1-800-669-9492
                                               e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1        Q.   Right.

2        A.   I just don't consider it a debrief related

3   to this.

4        Q.   Well, let's take Gerald Archuleta, for

5   instance.  You don't have the March 18, 2016,

6   meeting with Mr. Archuleta.  And on this, you were

7   at the facility with Mark Myers, yourself, Special

8   Agent Thomas Neale, Special Agent Joseph Sainato,

9   and you interviewed Gerald Archuleta about this

10  case?

11       A.   May I see that, please?

12       Q.   Absolutely.  And that document says he was

13  asked about SNM activities.

14       A.   That's the first time I've seen that

15  document, but you're correct.

16       Q.   Well, you were there.

17       A.   It says I was there.  This is a Department

18  of Corrections memo.

19       Q.   Right.

20       A.   I don't believe we have a 302 on this.

21       Q.   I don't believe you do either, but it

22  sounds like a debrief.

23       A.   I'd agree with you.

24       Q.   And on September 20, 2016, you wrote a 302

25  about meeting with Gerald Archuleta when you



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    recovered, I guess, or fetched -- I don't know how

2    you want to describe it -- but some writings he had

3    made about this case?

4        A.   Yes.

5        Q.   And when you went to engage Mr. Archuleta

6    to recover those writings, it's not on here, but was

7    that a debrief?

8        A.   No.

9        Q.   It was just a recovery?

10       A.   Yes.  Did I get it from him or his

11   attorney?

12       Q.   It says that Styx provided FBI Special

13   Agent Bryan Acee with a 24-page written statement

14   concerning Archuleta's history in the Syndicato

15   Nuevo Mexico gang.

16       A.   Yes.  His manifesto, yes.

17       Q.   That you encouraged him to write?

18       A.   I encouraged all the cooperators to write

19   them.

20       Q.   So at the time, did you get to talk to Mr.

21   Archuleta about what he had written?

22       A.   No.  And I think that staff actually gave

23   it to me.  I don't know that I got it from him

24   directly.

25           MR. LOWRY:  May I approach, Your Honor?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  You may.

 2        A.    Thank you.

 3        Q.    The 302 doesn't indicate there was anybody

 4  but you on that endeavor, does it?

 5        A.    It just says that he provided it to me at

 6  my request.

 7        Q.    Anybody reading that would have no

 8  understanding that there was anybody other than you

 9  meeting with Gerald Archuleta on that occasion,

10  would they?

11        A.    No, and I'm not representing that there

12  was.

13        Q.    So if we drop down on your list to Robert

14  Martinez, it doesn't appear that you have the July

15  1, 2015, debrief with Mr. Martinez on here either?

16        A.    What was the date?

17        Q.    July 1, 2015.

18        A.    I'd have to look at the document.  I

19  suspect this may be the June 30th one.

20        Q.    Is that just a typo in the report?

21        A.    I don't know.  I'd want to see the report,

22  because this is a 1023.

23        Q.    But that describes a debrief session here

24  in Las Cruces, does it not?

25        A.    Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   And with Eric Duran I noticed -- and we've

2 talk about this repeatedly throughout this

3 litigation -- you left off the August 5, 2015,

4 meeting where you initially met Mr. Duran and took

5 over his case from his former handler with the FBI,

6 correct?

7      A.   August 5, 2015, is when I met Mr. Duran.

8      Q.   And that generated a series of reports

9 from you?

10      A.   On that date.

11      Q.   Correct.  I mean, there is at least a

12 1023, but that would have generated a 302, would it

13 not have?

14      A.   Perhaps.  But I believe I did do a 1023.

15      Q.   And that would have been a debrief?

16      A.   Yes, sir.

17      Q.   And that's not on your summary here,

18 correct?

19      A.   No, it is not.

20      Q.   And we were just handed your field notes.

21 There was a handwritten field note from you, from

22 August 14, 2015, concerning Eric Duran?

23      A.   I think there's two.

24      Q.   Okay.  And Mr. Duran never had an

25 attorney?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Back then, no.

 2        Q.    And he referred to you as his attorney?

 3        A.    I don't know.

 4        Q.    You don't know he called you his lawyer?

 5        A.    I don't know what he called me.

 6        Q.    But these telephone conversations you had

 7   with Mr. Duran when you were obtaining information,

 8   they weren't debriefs because you weren't

 9   face-to-face, sitting down for hours, having lunch?

10        A.    No.

11        Q.    But you would agree that the August 5,

12   2015, debrief session you did have isn't on here?

13        A.    Mr. Lowry, I don't have any excuses.  You

14   got me on that one.

15        Q.    I'm not trying to get you.  I'm just

16   trying to explain to the jury that despite your best

17   efforts, this summary chart is not accurate?

18        A.    I'll say it.  I make mistakes and I

19   sometimes miss things, as hard as I try not to.

20        Q.    You would agree with me it's not accurate?

21        A.    I agree with you.  I'll make some

22   revisions, and I'm happy to do that as soon as I sit

23   back down, if you like.

24              MR. LOWRY:  Your Honor, at this time we'd

25   move to strike Government's Exhibits 777, 777-A, or
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   even 777-B if it's offered.

2           THE COURT:  What do you want to do with

3   these charts at this point, Mr. Castellano?

4           MR. CASTELLANO:  Make the corrections and

5   move their admission, Your Honor.  I think it would

6   be helpful to the jury.

7           MR. LOWRY:  Well, Your Honor, we'd ask for

8   time to go through the FBI -- through Mr. Acee's

9   notes, to see.  I mean, I think we might be on a

10  semantic disagreement about what a debrief is.  But

11  if any of his notes are extensive and indicate an

12  extended conversation that resulted in actionable

13  information in this case, I would characterize that

14  as a debrief.  But we might have an honest

15  disagreement about that.

16          THE COURT:  Well, I'm not going to admit

17  them at the present time.  If we come up with a

18  chart that there is more consensus on, I'll

19  reconsider it.  But right at the present time, I

20  won't admit either chart.

21          Mr. Lowry.

22          MR. LOWRY:  No further questions, Your

23  Honor.

24          THE COURT:  Thank you, Mr. Lowry.

25          Ms. Fox-Young, do you have redirect of Mr.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

1-800-669-9492
PROFESSIONAL COURT                    e-mail: info@litsupport.com
REPORTING SERVICE

```
 1   Acee?

 2              MS. FOX-YOUNG:  Your Honor, I just didn't

 3   catch it.  What time does the Court intend to take

 4   the lunch break?

 5              THE COURT:  Oh, in about six or seven

 6   minutes.

 7              MS. FOX-YOUNG:  Okay.  Thank you, Your

 8   Honor.

 9              THE COURT:  Does that get you started?

10                   REDIRECT EXAMINATION

11   BY MS. FOX-YOUNG:

12       Q.   Agent Acee, you would agree with me that

13   the nearly 1,000 pages of documents produced on

14   Wednesday from Mario Rodriguez' belongings were

15   written before July of last year, right?

16       A.   Yes.

17       Q.   And so they were written before Mario

18   Rodriguez testified in this case.  You were asked

19   some questions about Mario Rodriguez' understanding

20   about whether he had to register as a sex offender.

21   Do you remember that?

22       A.   Yes.

23       Q.   And I think you said it was his

24   understanding that he didn't need to, right?

25       A.   At one point in time, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. FOX-YOUNG:  Your Honor, may I approach
 2   the witness?
 3              THE COURT:  You may.
 4              MS. FOX-YOUNG:  Thank you.
 5   BY MS. FOX-YOUNG:
 6        Q.   Agent Acee, do you see here in the
 7   writings of Mario Rodriguez where he says, "When I
 8   leave from talking to you, before I go see the rest
 9   of my family, I'm going to the police station to
10   register as a sex offender"?
11              MR. CASTELLANO:  Objection, Your Honor.
12   Counsel is reading the document into the record.  It
13   hasn't been introduced.
14              MS. FOX-YOUNG:  It's impeachment, Your
15   Honor.
16              THE COURT:  Hold on.  What?
17              MS. FOX-YOUNG:  It's impeachment, Your
18   Honor.
19              THE COURT:  What is that document you're
20   having him look at?
21              MS. FOX-YOUNG:  This is from the 981
22   pages.
23              THE COURT:  What is it?
24              MS. FOX-YOUNG:  It's a writing of Mario
25   Rodriguez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  And how is that going to

2     impeach Mr. Acee?

3          MS. FOX-YOUNG:  Agent Acee said that he

4     believed that Mario Rodriguez did not know that he

5     had to register as a sex offender.

6          THE COURT:  And what is this document,

7     though?  I'm still not certain I understand what

8     this is.

9          MS. FOX-YOUNG:  Well, Your Honor, not

10    having had a chance to authenticate everything that

11    was produced on Wednesday, I can't say who it was

12    written to, but it's a writing of Mario Rodriguez.

13         MR. CASTELLANO:  Your Honor, how does she

14    know that?  So first of all, foundation.  And second

15    of all, if we're going to trade documents, I again

16    move the admission of all documents.

17         THE COURT:  Well, let's just, first of

18    all, lay some foundation as to whether he knows this

19    document, has seen it, and what it is.  Because I

20    don't want you to get a situation where you're

21    testifying about what it is.

22         MS. FOX-YOUNG:  I can do that, Your Honor.

23         THE COURT:  No, you can't.  You're an

24    attorney, not a witness.

25         MS. FOX-YOUNG:  I'll lay some foundation.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                 THE COURT:  So you can't testify about it.
 2                 MS. FOX-YOUNG:  I'll lay some foundation.
 3                 THE COURT:  So you're going to have to lay
 4     a foundation through Mr. Acee.
 5                 MS. FOX-YOUNG:  Yes, Your Honor.
 6     BY MS. FOX-YOUNG:
 7           Q.    Agent Acee, do you want to just take a
 8     look at this document?  And you can take your time.
 9     It's two pages.  If you want to take a look at it
10     before I ask you questions about it?
11                 MR. CASTELLANO:  Your Honor, I'd also like
12     to see the document beforehand.  That wasn't shown
13     to me by counsel.
14                 MS. FOX-YOUNG:  Yes, Your Honor.
15                 MR. CASTELLANO:  Thank you, Your Honor.
16                 THE COURT:  All right.  Ms. Fox-Young.
17     BY MS. FOX-YOUNG:
18           Q.    All right.  Agent Acee, you had a chance
19     to take a look at this document.  Do you recognize
20     the handwriting to be that of Mario Rodriguez?
21           A.    I think that it is.
22           Q.    Okay.  And you recall my question to you,
23     then, about whether or not it in fact says something
24     about --
25                 MR. CASTELLANO:  Objection, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  Calls for hearsay, and he said he thinks it's his
 2  writing.  He's not laid the foundation.
 3          THE COURT:  Well, I think it's sufficient.
 4  So these are out-of-court statements being offered
 5  to help you determine the credibility of Mr.
 6  Rodriguez when he was in the courtroom.  So you
 7  can't consider it for the truth of the matter; you
 8  can only consider it in determining -- making a
 9  credibility determination as to Mr. Rodriguez'
10  testimony.
11          Ms. Fox-Young.
12          MS. FOX-YOUNG:  Thank you, Your Honor.
13  BY MS. FOX-YOUNG:
14      Q.   Agent Acee, I showed you two pages, right?
15      A.   Yes.
16      Q.   And on both pages, you believe that's the
17  handwriting of Mario Rodriguez?
18      A.   I do.
19      Q.   And so then on the first page, you saw
20  where it says, "When I leave from talking to you,
21  before I go see the rest of my family, I'm going to
22  the police station to register as a sex offender"?
23      A.   I saw that.
24      Q.   And then on the next page it talks about
25  how, "I have to go register as a sex offender, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  my picture will be next to child molesters and

 2  rapists, victimizers of women and children"?

 3          You saw that?

 4      A.   I did see that.

 5      Q.   Thank you, Agent Acee.  And so do you know

 6  if, when Mario Rodriguez gets out of the custody, if

 7  he's going to have to go register as a sex offender?

 8      A.   I'm not really familiar with the state

 9  law, but it wouldn't surprise me.

10          THE COURT:  All right.  Ms. Fox-Young,

11  would this be a good time for us to take our lunch

12  break?

13          MS. FOX-YOUNG:  Yes, Your Honor.

14          THE COURT:  All right.  Let me instruct

15  the jury here, because I do want everybody to be

16  very careful here, of a few things that are

17  especially important.

18          Until the trial is completed, you're not

19  to discuss this case with anyone, whether it's

20  members your family, people involved in the trial,

21  or anyone else, and that includes your fellow

22  jurors.  If anyone approaches you and tries to

23  discuss the trial with you, please let me know about

24  it immediately.

25          Also, you must not read or listen to any
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  news reports of the trial.  Again, don't get on the

2  internet and do any research for purposes of this

3  case.

4          And finally, remember that you must not

5  talk about anything with any person who's involved

6  in the trial, even if it doesn't have anything to do

7  with the trial.

8          If you need to speak with me, simply give

9  a note to one of the court security officers or Ms.

10 Standridge.  Again, I may be repeating these this

11 afternoon as we make transitions in this case; but

12 if I don't, do keep them in mind each time we take a

13 break.

14         All right.  We'll be in recess for about

15 an hour.

16         (The jury left the courtroom.)

17         THE COURT:  All right.  We will be in

18 recess for about an hour.

19         (Lunch recess.)

20         THE COURT:  All right.  Let's go on the

21 record.  I received a note right when we were coming

22 in before the last segment from one of the jurors.

23 It's Juror Number 17, Anastasia Wolfe.

24         It says, "Judge Browning, lady in gallery

25 in orange sweater watching me.  Have I done

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  something wrong?  Anastasia Wolfe."

2          Now, the only person I can see in the back

3  that's had any sort of orange is, I think, the

4  paralegal that sits behind you, Ms. Bhalla.  But

5  every time I look at her, she's looking down.  So I

6  don't know if there's -- what?

7          MR. VILLA:  I'm sorry, Judge.  On the

8  bench, this side of the well?

9          THE COURT:  Yes.

10          MR. VILLA:  That's Ms. Anderson.  She's an

11  associate attorney that works with me.

12          THE COURT:  That's the only person I've

13  seen back there with any orange on.  Have y'all

14  noticed anybody in orange that's been back there?

15          MR. LOWRY:  Your Honor, there's a student

16  sitting back here that's doing some criminology

17  paper.

18          THE COURT REPORTER:  I can't hear what's

19  going on.

20          THE COURT:  Hey, hey.  We've got to be on

21  the record.  We're on the record, so everybody talk

22  one at a time, and loudly.

23          MR. LOWRY:  I don't know her name.  I just

24  know she's an student at NMSU, but I don't know what

25  she's wearing.



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                    1-800-669-9492
                                                          e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  I'm going to ask the marshals
 2  or if you want to assign one of the court security
 3  officers.  If she comes back in, would you just tell
 4  her to be a little careful.  I'm not trying to tell
 5  her what to look at, but don't stare at Juror Number
 6  17.
 7              I'll tell one war story here.  My partner
 8  had a case, and I worked on it, but he ended up
 9  trying it in front of Judge Burciaga.  And K'Aun
10  Wild, as y'all know, I started working with her when
11  she was 18 years old, and she went with him to help
12  him on this case.  My partner said, "Keep an eye on
13  the judge.  See what he's doing."  And so she stared
14  at the judge.
15              Juan Burciaga motioned my partner, Chuck
16  Peifer, "Tell your paralegal to quit looking at me."
17              So fast-forward to -- y'all remember that
18  little Walgreen's?  It was downtown for a while.
19  Ms. Wild was walking into Walgreen's, Judge Burciaga
20  was walking out, and he looks at her and he goes,
21  "Those eyes."
22              So I'm going to have Ms. Standridge mark
23  that as exhibit whatever is next in her clerk's
24  minutes.  And unless y'all think of something to do,
25  I haven't had that experience before.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           Let me ask y'all one question as I'm

2    putting these jury instructions together.  Since

3    y'all have sort of agreed on this note, instruction

4    number 3 that the defendants have put in, this is

5    the language that I'm a little bit concerned about

6    adding.  It says, "Proof beyond a reasonable doubt,

7    therefore, is proof of such a convincing character

8    that you would be willing to rely and act upon it

9    without hesitation in making the most important

10   decisions of your own affairs."

11          My pause about that, and I didn't pull

12   this off the internet; I'm just using my little book

13   here, but I think the comment note is the same.  It

14   says, "The Tenth Circuit has repeatedly criticized

15   instructions which define reasonable doubt in terms

16   of substantial doubt combined" -- and I'm quoting

17   here -- "an abiding conviction of the defendant's

18   guilt such as you would be willing to act upon it in

19   the more weighty and important matters relating to

20   your own affairs."

21          And then it gives a long list of Tenth

22   Circuit instructions, including Justice Ginsburg's

23   concurring opinion in Victor versus Nebraska, where

24   she suggested a fundamental difference between

25   decisions people normally make and jury decisions.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            So I guess I'm pausing a little bit.  I
 2   know everybody is giving me a green light and are
 3   requesting that, but do you really want it?  I guess
 4   I'm a little surprised the defendants want it
 5   because usually I get resistance from the defendants
 6   on that type of language.
 7            MS. JACKS:  It's interesting.  I think we
 8   talked about that quite while on Saturday.  I think
 9   we pulled it from the Fifth Circuit instruction.
10   And I don't feel strongly about it.  I was unaware
11   of the law in the Tenth Circuit about that.
12            THE COURT:  Can I leave that sentence out?
13   Everybody agree to leave it out, just so we don't
14   get into a situation?  I'll make all the other
15   changes on that instruction.  Everybody agree to
16   leave it out?
17            MS. JACKS:  Yes.
18            MR. CASTELLANO:  Can you tell us that
19   sentence one more time, please, Your Honor?
20            THE COURT:  Do you want the one that the
21   defendants had asked?  Or what do you want, Mr.
22   Castellano?  What do you want me to read?  Are you
23   asking the sentence the defendants want?
24            MR. CASTELLANO:  Yes, sir.
25            THE COURT:  Okay.  This is in their red
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1 | line version, 1827-1, page 5.

 2 |         It says, "Proof beyond a reasonable doubt,

 3 | therefore, is proof of such a convincing character

 4 | that you would be willing to rely and act upon it

 5 | without hesitation in making the most important

 6 | decisions of your own affairs."

 7 |         And the sentence that comes up, Tillman, I

 8 | think it is, Tillman versus Cook, says, "The Tenth

 9 | Circuit has repeatedly criticized instructions which

10 | define reasonable doubt in terms of substantial

11 | doubt."  We don't have that; you're not asking for

12 | that.  Combined with, and here's the language that

13 | gives me pause, "an abiding conviction of the

14 | defendant's guilt such as you would be willing to

15 | act upon it in the more weighty and important

16 | matters relating to your own affairs."

17 |         MR.MAYNARD:  Your Honor, for Mr. Herrera,

18 | I think we prefer -- maybe this is because I'm from

19 | the Western District of Texas.  I prefer that

20 | language from the Fifth Circuit because it

21 | communicates more, not just the burden of proof and

22 | the reasonable doubt notion, but the seriousness of

23 | the decision the jury has to make.

24 |         THE COURT:  Well, what do you think about

25 | Ginsburg's criticism of it?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1        MR. MAYNARD:  Well, I mean, I don't quite

2   agree with it, and maybe it's again because I'm used

3   to that in the Fifth Circuit.

4        THE COURT:  I mean, it always seemed to

5   me, the way the defense lawyers usually protested

6   is, they say:  No, this is a more important decision

7   than whether they buy their house or not.

8        And you're free to argue however you want

9   reasonable doubt in your closings, within reason.

10  But I just wonder if a Court ought to be saying,

11  "Think about the most important decision in your

12  life," and them pick one.  They might pick a house

13  or a car, maybe they'll pick marriage, or maybe

14  they'll pick a medical decision.

15        I don't know.  Let's see a show of hands

16  here.  How many people want the language that is in

17  the red line version added?  How many of you want to

18  keep it out?  All right.

19        Does the Government have a position?  Keep

20  it out?  You don't care.  Looks like it's three to

21  one on the defense side.  I'm going to keep it out

22  just because in the Tenth Circuit, I've read enough

23  of those cases, and my experience has been the

24  defense lawyers usually don't like that in there.

25        So I'm going to keep it out at the present

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   time.
 2           MS. JACKS:  Since we're talking about that
 3   instruction, which I guess it's number 3 --
 4           THE COURT:  Yes.
 5           MS. JACKS:  -- I think the language that
 6   we were probably most concerned about was in the
 7   last sentence where it says, "If, on the other hand,
 8   you think there's a real possibility they are not
 9   guilty."
10           THE COURT:  And I've taken that out.
11           MS. JACKS:  Okay.
12           THE COURT:  The Government seemed to agree
13   with you, so I've taken that out.  You'll get a
14   chance to look at it and see how I worded it, but I
15   took that out.
16           MS. FOX-YOUNG:  Your Honor?
17           THE COURT:  Yeah.
18           MS. FOX-YOUNG:  So that I don't do this in
19   front of jury, if the Court would like any argument
20   on it, we had talked about a stipulation on Mario
21   Rodriguez' plea addendum.  The Government couldn't
22   find a signed copy.
23           I have some proposed language, and I just
24   would like to work it out if the Government is going
25   to have some objection to it.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1             THE COURT:  Okay.  Why don't you --
 2             MS. FOX-YOUNG:  I asked --
 3             THE COURT:  Why don't you give them a copy
 4  and let them look at it, and you can approach at the
 5  appropriate time.
 6             All rise.
 7             (The jury entered the courtroom.)
 8             THE COURT:  All right.  Everyone be
 9  seated.
10             All right.  Mr. Acee, I'll remind you that
11  you're still under oath.
12             Ms. Fox-Young, if you wish to continue
13  your redirect of Mr. Acee, you may do so at this
14  time.
15             MS. FOX-YOUNG:  Thank you, Your Honor.
16             THE COURT:  Ms. Fox-Young.
17  BY MS. FOX-YOUNG:
18      Q.   Agent Acee, do you recall testifying with
19  the Government about Billy Cordova and the bragging
20  that he did about the Sammy Chavez murder?  Do you
21  recall that line of questioning from Mr. Castellano?
22      A.   Yes.
23      Q.   And it's your testimony, isn't it, that
24  Billy Cordova was in custody at the time that Sammy
25  Chavez was killed?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.

 2        Q.    And so you don't believe that he committed

 3   that murder?

 4        A.    Correct.

 5        Q.    And you recall discussing in front of the

 6   jury a couple days ago your testimony about the

 7   statements of Freddie Quintana and Sammy Griego,

 8   that Billy Cordova had in fact told them that he had

 9   bragged to them about committing the murder, right?

10        A.    Yes.

11        Q.    And you also heard Benjamin Clark's

12   testimony this week along the same lines, right,

13   that Billy Cordova made him believe that he had

14   killed Sammy Chavez, right?

15        A.    Yes.

16        Q.    And given that you don't believe that

17   Billy Cordova actually did kill Sammy Chavez, those

18   three men all have presented -- or there has been

19   evidence from the statements to those three men that

20   Billy Cordova was in fact bragging about something

21   he didn't do; isn't that right?

22        A.    Yes.  Each of those men said that Billy

23   told them that, yes.

24        Q.    Bragged about a murder he didn't commit?

25        A.    I don't think he bragged about a murder he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  didn't commit.  To them, he made it sound like he

 2  had committed it.  I just don't have enough to prove

 3  that he did.

 4      Q.   All right.  Well, let's talk about the

 5  Shane Dix homicide.  You don't believe that Billy

 6  Cordova killed Shane Dix, right?

 7      A.   No, and I never have.

 8      Q.   Okay.  And how do you know Billy Cordova

 9  didn't kill Shane Dix?

10      A.   Through my debriefings of Mario Montoya,

11  as well as Christopher Garcia's plea in that and

12  other charges.

13      Q.   Okay.  So you know it to be true that

14  Billy Cordova did not kill Shane Dix?

15      A.   That is what I believe, yes.

16      Q.   And you heard the testimony of Benji

17  Montano that Billy Cordova bragged about killing

18  Shane Dix, right?

19      A.   Yes.

20      Q.   Given your knowledge and belief, that's

21  also an instance where Billy Cordova bragged about a

22  murder he didn't commit, right?

23      A.   I guess so.  That guy's testimony was a

24  little hard to follow.

25      Q.   Agent Acee, since you've been on the stand

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  today, you know that nearly 500 documents have been

2  produced to the defense, and those documents are

3  agent notes from this case?

4      A.    I wasn't sure of the count, but we have

5  turned over a lot of documents, yes.

6      Q.    And that's the disc that was produced

7  while you were sitting up there?

8      A.    Yes.

9      Q.    And you looked at a stack?  I think Ms.

10  Bhalla showed you a stack of documents that were

11  printed from that disc, right?

12      A.    She did.

13      Q.    So are you aware whether those documents

14  contain any information that would tell you anything

15  else about Billy Cordova bragging about the murder

16  of Shane Dix?

17      A.    Gosh, there's a lot there, as you pointed

18  out, so it's possible.

19      Q.    If I showed you a page from those notes

20  with respect to an interview of Eric Duran on August

21  14, 2015, might that refresh your memory?

22      A.    Yes.

23          MS. FOX-YOUNG:  Your Honor, may I approach

24  the witness?

25          THE COURT:  You may.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. CASTELLANO:  Could I see the document,
 2   please?
 3            MS. FOX-YOUNG:  This is Bates 54621.
 4   BY MS. FOX-YOUNG:
 5       Q.   All right.  Agent Acee, take a look at
 6   this document and see if this refreshes your
 7   recollection?
 8       A.   Yes.
 9       Q.   Are these your notes, Agent Acee?
10       A.   I believe so.
11       Q.   And I think you testified, in response to
12   questions from Mr. Lowry, that you did actually -- I
13   think you said it was a telephone debrief, right, on
14   August 14, 2015, that you did with Eric Duran?
15       A.   I thought he asked me if there was some
16   notes that didn't have corresponding 302s regarding
17   Duran.  I don't know if it was telephonic.
18       Q.   I'm just asking, do you recall -- I think
19   this document refreshed your memory.  Do you have an
20   independent recollection of talking to Eric Duran on
21   August 14, 2015?
22       A.   Not really, but I think that those notes,
23   when you show me those notes, I think that's a good
24   indication that I talked to him.
25       Q.   Okay.  Because these are your notes?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.
 2        Q.    Which were just produced this morning to
 3   the defense, right?
 4        A.    If they're off the disc, yes.
 5        Q.    And in the course of that conversation
 6   with Eric Duran, did you learn something about the
 7   Shane Dix murder?
 8        A.    Yes.
 9        Q.    Did you learn that Billy Cordova had
10   actually told Eric Duran that he murdered Shane Dix?
11        A.    That's what my notes indicate.
12        Q.    Any reason to dispute that that's what you
13   learned from Eric Duran?
14        A.    No.
15        Q.    So wouldn't you say this is another case
16   of another person telling the FBI that Billy Cordova
17   had bragged about a murder he didn't commit?
18        A.    I'm not sure how Duran learned it, though,
19   but it's Duran relating to me his take or his
20   opinion on that murder.
21        Q.    Eric Duran told you that Billy Cordova
22   bragged to him that he murdered Shane Dix, right?
23        A.    I think it says he admitted it, yes.
24        Q.    But you know he didn't kill Shane Dix,
25   right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        A.   Correct.

2        Q.   You testified about certain times when you

3   don't trust Billy Cordova.  Do you remember that?

4        A.   Yes, ma'am.

5        Q.   Do you trust Billy Cordova to testify

6   truthfully on the stand, given that he admitted that

7   he testified under oath to Judge Browning on

8   December 12, 2017, that he hadn't used drugs in two

9   years; when in reality, he had used drugs just two

10  weeks before that testimony?

11       A.   Yes, I remember that.

12       Q.   No, I'm asking if you trust him to testify

13  truthfully, given that he's told this jury that he

14  took the stand and didn't testify truthfully?

15       A.   I do.

16       Q.   You've never stopped trusting Billy

17  Cordova, have you?

18       A.   No, there are some circumstances I don't

19  trust him in, definitely.

20            MS. FOX-YOUNG:  Your Honor, no further

21  questions.

22            THE COURT:  All right.  Thank you, Ms.

23  Fox-Young.

24            Ms. Jacks, do you have redirect?

25            MS. JACKS:  Just in a very limited area.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Ms. Jacks.
2                   REDIRECT EXAMINATION
3    BY MS. JACKS:
4         Q.   Agent Acee, I think I just have a few
5    questions on sort of two topics.  The first is, Mr.
6    Castellano asked you some questions about this
7    meeting that you had with Mario Rodriguez and Ronald
8    Sanchez.  Do you recall those questions?
9         A.   I do.
10        Q.   That meeting happened after Mario
11   Rodriguez agreed to become a witness for the
12   Government, right?
13        A.   Yes.
14        Q.   And like other witnesses, other government
15   witnesses in this case, you let Mario Rodriguez know
16   that he might get additional time off his sentence
17   if he was able to bring other people to the table?
18        A.   I think we generally talked about that
19   sort of thing, yes.
20        Q.   And what happened was, at the time he was
21   housed at the Penitentiary of New Mexico, right?
22        A.   Yes.
23        Q.   And another person that was in his pod
24   happened to be Ronald Sanchez?
25        A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And so after Mario Rodriguez signed up to
 2   become a government witness, he began talking with
 3   Ronald Sanchez, trying to get him to get his brother
 4   to somehow strike a deal to become a government
 5   witness?
 6        A.   I know that they were talking.  I don't
 7   know all the background of it.
 8        Q.   Wasn't it Mario Rodriguez that contacted
 9   you and let you know that Ronald Sanchez was willing
10   to meet with the FBI?
11        A.   That wanted to meet with the FBI.  Yes, he
12   called me.
13        Q.   Mr. Rodriguez called you?
14        A.   Yes.
15        Q.   So the meeting was really arranged through
16   Mr. Rodriguez?
17        A.   Yes.
18        Q.   And so that meeting -- well, the fact --
19   let me just go back.  There was something in it for
20   Mario Rodriguez to set up that meeting with you and
21   Ronald Sanchez, potentially?
22        A.   Potentially.
23        Q.   The other topic I wanted to talk to you
24   about was the interviews of Billy Cordova.  And
25   specifically, Mr. Castellano asked you about an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   interview with Billy Cordova on January 24, 2018.
 2   Do you recall those questions?
 3       A.   I think so.
 4       Q.   Well, he asked you about what Mr. Cordova
 5   said about Mr. Sanchez asking for a fierro or a
 6   knife?
 7       A.   Oh, yes.
 8       Q.   On that particular day, January 24, 2018?
 9       A.   I do remember.
10       Q.   Did you interview Mr. Cordova on that day?
11       A.   I'd have to look at the 302.
12       Q.   Okay.  You don't have any personal or
13   independent recollection that you actually spoke
14   with him on that day, do you?
15       A.   We did a lot of interviews that day.  I'm
16   not sure, ma'am.
17       Q.   Do you think if you saw a 302, that would
18   refresh your memory as to whether you participated
19   in that interview?
20       A.   Yes.
21            MS. JACKS:  Your Honor, I'm holding a 302
22   regarding a January 24, 2018, interview with Billy
23   Cordova, Bates stamped 51473.  May I approach the
24   witness?
25            THE COURT:  You may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        Q.    Just let me know when you're done.

2        A.    Thank you.

3        Q.    So the question, I think, that's pending

4   is:  Did you interview Billy Cordova on that day,

5   which is January 24, 2018?

6        A.    No.

7        Q.    You didn't?

8        A.    No.

9        Q.    So you don't know what he said on that

10  day?

11       A.    That's not true.

12       Q.    Let me go back.  You did not personally

13  hear what he had to say that day?

14       A.    I did at times, yes.

15       Q.    I'm sorry?

16       A.    I did at times, yes.  I spent quite a bit

17  of time in the room with him.

18       Q.    I thought the question was:  Were you

19  present during that interview?

20       A.    Did I say I wasn't?  I didn't think I said

21  I wasn't.

22       Q.    Maybe I jumped ahead.  Did you write the

23  302?

24       A.    No.  Thomas Neale did.

25       Q.    Okay.  And according to the 302, who was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  present during the interview of Mr. Cordova on

2  January 24, 2018?

3       A.   Mr. Cordova, his attorney, AUSA Randy

4  Castellano, and the FBI personnel.

5       Q.   Okay.  So were you -- so FBI personnel.

6  That could be you?

7       A.   Well, it was primarily Mr. Neale, but I

8  spent a lot of time in there with Cordova.  We were

9  at the office all day, and different cooperators

10 were coming in, and I met with each of them.

11      Q.   So the 302 that you just looked at, that's

12 less than a page long, right?

13      A.   Yes, ma'am, about a half a page.

14      Q.   It's about half a page?  And were you

15 present when Mr. Cordova was asked questions

16 specifically about what Daniel Sanchez said or asked

17 him about getting a fierro or a shank?

18      A.   I don't have independent recollection of

19 that, no.

20           MS. JACKS:  So, Your Honor, at this point

21 I would move to strike that testimony.  It appears

22 to be hearsay.

23           THE COURT:  Well --

24           MS. JACKS:  The questions that Mr.

25 Castellano asked Agent Acee about that statement.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Do you have any thoughts, Mr.
 2   Castellano?  If it's all based on something else --
 3              MR. CASTELLANO:  He said he was aware of
 4   the correction to Billy Cordova's statement.  He
 5   didn't say how.
 6              MS. JACKS:  Well, counsel elicited that
 7   with a leading question to this agent, and he did it
 8   knowing full well this agent didn't write the
 9   report.
10              THE COURT:  Let's do this.  Let me give
11   Mr. Castellano a chance to voir dire the witness on
12   this point, and if he doesn't establish that he has
13   any evidence for this other than hearsay, then I'll
14   strike the testimony.
15              Mr. Castellano.
16                   VOIR DIRE EXAMINATION
17   BY MR. CASTELLANO:
18       Q.   Agent Acee, were you present when people
19   were being interviewed in preparation for a trial in
20   this case?
21       A.   Yes, sir.
22       Q.   And did that include January 24th of 2018?
23       A.   I was.
24       Q.   And were you present at a time or times
25   when Billy Cordova was giving statements about the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  case?

2      A.   Yes.

3      Q.   And were those additional statements,

4  because it's only one page, statements that provided

5  new information?

6      A.   Yes.

7      Q.   And are you aware of whether or not he

8  corrected his prior statement from a month earlier,

9  indicating that the shanks were -- that Daniel

10  Sanchez asked for the shanks on or about March 6th

11  or 7th?

12          MS. JACKS:   Objection, Your Honor.   The

13  way Mr. Castellano is asking the question, it

14  permits an answer based on hearsay, and that's

15  exactly the objection that I'm making.   The issue is

16  whether Mr. Cordova told him and he has a

17  recollection of that.

18          THE COURT:   I think that's the question I

19  need to hear, so do formulate your question along

20  those lines.

21          MR. CASTELLANO:   I'll get right to it,

22  Your Honor.

23  BY MR. CASTELLANO:

24      Q.   Do you remember Billy Cordova making that

25  statement on that day?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I talked to him about it, but I think it
 2   was after the fact.
 3        Q.   So when you say you talked to him about
 4   it, did he convey that information to you on that
 5   day or at some point close in time when he shared
 6   that information with you?
 7        A.   It was the same day.
 8             MR. CASTELLANO:  I don't have any other
 9   questions, Your Honor.
10             THE COURT:  All right.  Thank you, Mr.
11   Castellano.
12             MS. JACKS:  I have a few follow-ups.
13             THE COURT:  Ms. Jacks.
14             REDIRECT EXAMINATION (Continued)
15   BY MS. JACKS:
16        Q.   So when I asked you a few minutes ago
17   about whether you had a recollection of Mr. Cordova
18   saying that, you said you didn't?
19        A.   I thought you said it in context to the
20   debrief with the attorneys.  I'm sorry if I
21   misunderstood you.
22        Q.   So your testimony is that you talked to
23   Mr. Cordova about that statement?
24        A.   Yes.
25        Q.   And you would agree that the statement was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  inconsistent with what he told you approximately a

2  month prior?

3       A.   He reduced the number of days.

4       Q.   Right.  He originally said that Mr.

5  Sanchez asked him for a fierro or shank about a week

6  prior to Mr. Urquizo arriving at Southern, right?

7       A.   Yes.

8       Q.   And then right before trial, he changed it

9  up and said it was either the day before or the day

10 of the Molina homicide?

11      A.   He remembered it being closer to the

12 homicide.

13      Q.   He remembered it when he was -- in January

14 of 2018, he made the date after Mr. Urquizo got to

15 Southern New Mexico Correctional Facility, right?

16      A.   Yes.  He provided a shorter timeline on

17 when that incident took place.

18      Q.   And do you know what other cooperators Mr.

19 Urquizo had access to in the time period prior to

20 trial?

21      A.   I think the only other cooperator at the

22 facility he was at was Mario Montoya.  They were at

23 Otero.

24      Q.   At the time that this interview took place

25 in January of 2018?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1     A.    In January of 2018 I think he was still at

 2 the North, at PNM.

 3     Q.    So he was still housed in Santa Fe?

 4     A.    You know, ma'am, I'd have to go back and

 5 check some records.  He went from Santa Fe to Otero,

 6 and then I think he went back to Santa Fe.

 7     Q.    So I guess that --

 8     A.    I'm trying to remember what color he was

 9 wearing when he was here.

10     Q.    I guess the answer to my question, then,

11 is that you really don't know?

12     A.    I'm not positive, no.

13     Q.    All right.

14          MS. JACKS:  Thank you.  I have nothing

15 further.

16          THE COURT:  Thank you, Ms. Jacks.

17          All right.  Did you have something

18 further, Mr. Castellano?

19          MR. CASTELLANO:  Yes, Your Honor.

20             FURTHER CROSS-EXAMINATION

21 BY MR. CASTELLANO:

22     Q.    Agent Acee, for starters, Exhibit 777.

23 I'm sorry, but I also want to let you know that you

24 misspelled Marijuano's name, so that would be

25 another correction for you.  I just wanted to point

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   that out to you, if that helps.

 2       A.   Thank you.

 3       Q.   You're welcome.  You were asked about this

 4   document 54621, a telephone statement regarding Eric

 5   Duran?

 6       A.   Yes.

 7       Q.   There's an arrow on here.  I want to make

 8   sure I understand your notes.

 9            MR. CASTELLANO:  May I approach the

10   witness, Your Honor?

11            THE COURT:  You may.

12       Q.   It's kind of cryptic.  It's one page.  I

13   just want to ask you, because there's an arrow on

14   there pointing to another person, what you recall

15   about those notes or that statement?

16            MS. FOX-YOUNG:  Your Honor, I think this

17   is beyond the scope.

18            THE COURT:  How do you tie it to the scope

19   of the redirect?

20            MR. CASTELLANO:  This is the statement

21   that was shown to Agent Acee just a moment ago, Your

22   Honor.  It's the exact same document.

23            MS. FOX-YOUNG:  Your Honor, may we

24   approach?

25            THE COURT:  By Ms. Fox-Young?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1                 MR. CASTELLANO:  I believe so.

 2                 THE COURT:  All right.  You may.

 3                 (The following proceedings were held at

 4      the bench.)

 5                 MS. FOX-YOUNG:  Your Honor, I'd just ask

 6      that the Government not go beyond the questioning

 7      about the Shane Dix homicide and Billy Cordova's

 8      involvement in it.  I don't know what else they want

 9      to ask about this document.  I don't think it's the

10      proper time to elicit hearsay.  The only questions I

11      asked were:  Did you learn from Eric Duran that

12      Billy Cordova admitted or bragged about the Shane

13      Dix homicide?

14                 THE COURT:  What are you going to ask?

15                 MR. CASTELLANO:  I'm trying to clarify.

16      It's not clear from the note.  I'm asking about what

17      the arrow means.

18                 THE COURT:  I think that's fair game.

19                 MS. FOX-YOUNG:  I do too, Judge.

20                 (The following proceedings were held in

21      open court.)

22                 THE COURT:  All right.  Mr. Castellano.

23                 MR. CASTELLANO:  Thank you, Your Honor.

24      BY MR. CASTELLANO:

25          Q.  I just want to make sure we're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  understanding your note there, because there is an

2  arrow pointing to something else, and I wasn't sure

3  if you recall what the source of the information was

4  or how that came about?

5       A.   I believe the source of that information

6  is Eric Duran, because I've labeled the top of the

7  paper with that, and then the date.  And then it

8  appears as though Mr. Duran is giving me information

9  about the Shane Dix murder, and he lists three

10 people in a street gang as being involved in it.

11      Q.   So --

12      A.   Excuse me.  Four people in a street gang.

13      Q.   So that was the information that he had or

14 believed, and he provided that to you?

15      A.   Yes.

16      Q.   So on that occasion, Eric Duran is

17 providing information which may be helpful to the

18 FBI?

19      A.   Yes.

20      Q.   And did he know whether it's true or not,

21 or was he just conveying something to you that might

22 help you further any part of investigation?

23      A.   In my investigation, I was trying to find

24 out.  That was one of the homicides I was working

25 on, so just about everybody I talked to I asked

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                     (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    about that particular homicide because it was an

2    unsolved homicide.

3          MR. CASTELLANO:  May I retrieve the

4    exhibit, Your Honor, the document?

5          THE COURT:  You may.

6    Q.   I just want to clarify this with you.  On

7    the statement that Urquizo, Lupe Urquizo talked to

8    you about when it came to on the door or over the

9    door, was it your understanding from him that Mario

10   Rodriguez and Timothy Martinez were out doing

11   cleaning?

12   A.   Yes.

13   Q.   And at that point, whenever they're out,

14   are they outside of their pod?

15         MS. JACKS:  Objection, calls for

16   speculation.  I mean, Agent Acee wasn't there.

17         THE COURT:  Well --

18         MS. JACKS:  And there is no testimony from

19   the witnesses that they were cleaning outside the

20   pod.

21         THE COURT:  Well, there was some

22   testimony.

23         MR. CASTELLANO:  Correct, Your Honor.

24         THE COURT:  But the testimony was by whom?

25         MR. CASTELLANO:  Well, I'm trying to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  clarify how Lupe Urquizo relayed this information

2  about how these people were able to communicate.

3          THE COURT:  So as long as he's just

4  limited to what Mr. Castellano is probing, what

5  exactly was told to Mr. Acee, then I'll allow that.

6          MS. JACKS:  Your Honor, I'd ask that the

7  questions be phrased in that manner, rather than,

8  "What was your understanding?"  Or "What actually

9  happened?"

10          MR. CASTELLANO:  I'm fine with that, Your

11  Honor.  That's fair.

12          THE COURT:  That's fair.

13  BY MR. CASTELLANO:

14      Q.   Okay.  So what did he tell you about Red

15  and Blue in terms of where they were?  Were they out

16  of the pod?  How is it they were able to

17  communicate?

18      A.   They were out of the pod, cleaning or

19  painting.

20      Q.   And have you experienced that yourself

21  with inmates who are out of their pods, painting and

22  cleaning?

23      A.   Yes.

24      Q.   Who do you remember seeing out of the pod?

25          MS. JACKS:  Objection, vague as to time,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                          1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   and irrelevant.

 2           THE COURT:  Overruled.

 3       A.   Yeah, it happens frequently when I'm up at

 4   the North or South.  Sometimes some of the inmates

 5   that I've gotten to know yell, and they're out

 6   cleaning, and they want to talk to me from across

 7   the prison grounds or something.  Sometimes they're

 8   closer to me.

 9       Q.   And do you know, when Red and Blue were

10   out of the pod, meaning Rodriguez and Martinez,

11   whether they were porters or not?

12           MS. JACKS:  Objection to the phrasing of

13   the question.  The issue is what Mr. Urquizo said,

14   not what Agent Acee knows about Red and Blue being

15   out of the pod.

16           THE COURT:  Are you willing to tie it

17   directly to what Mr. Urquizo said?

18           MR. CASTELLANO:  Sure.  Yes, sir, that's

19   fine.

20   BY MR. CASTELLANO:

21       Q.   From his statement, do you know whether he

22   was communicating to you -- did he tell you whether

23   they were out because they were porters or why they

24   were out, doing cleaning or painting?

25       A.   Because they were on a work detail, which

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                             201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                            1-800-669-9492
                                               e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    would mean they were porters.

2              MR. CASTELLANO:  May I have a moment?

3              THE COURT:  You may.

4              MR. CASTELLANO:  Thank you, Your Honor.  I

5    pass the witness.

6              THE COURT:  All right.  Thank you, Mr.

7    Castellano.

8              Ms. Fox-Young, do you have further

9    redirect?

10             MS. FOX-YOUNG:  Just very briefly, Your

11   Honor.

12                  FURTHER REDIRECT EXAMINATION

13   BY MS. FOX-YOUNG:

14       Q.   Agent Acee, with respect to what you

15   learned from Eric Duran on August 14, 2015, I think

16   you just testified that you learned that three

17   people in a street gang were apparently involved in

18   the murder of Shane Dix, right?

19       A.   I think four people in a street gang.

20       Q.   Okay.  And that fourth person who Eric

21   Duran told you about was Billy Cordova, who admitted

22   to the murder to Eric Duran, correct?

23       A.   Yes.

24       Q.   And if in fact Billy Cordova did not

25   murder Shane Dix, that is bragging about something

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

245

```
1    STATE OF NEW MEXICO

2

3                    C-E-R-T-I-F-I-C-A-T-E

4        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

5    Official Court Reporter for the State of New Mexico,

6    do hereby certify that the foregoing pages

7    constitute a true transcript of proceedings had

8    before the said Court, held in the District of New

9    Mexico, in the matter therein stated.

10       In testimony whereof, I have hereunto set my

11   hand on this 2nd day of March, 2018.

12

13            _____

14            Jennifer Bean, FAPR, RMR-RDR-CCR
             Certified Realtime Reporter
15           United States Court Reporter
             NM Certified Court Reporter #94
16           333 Lomas, Northwest
             Albuquerque, New Mexico 87102
17           Phone:           (505) 348-2283
             Fax: (505) 843-9492
18           License expires:  12/31/18

19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com