## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                      No. CR 15-4268 JB

ANGEL DELEON
JOE LAWRENCE GALLEGOS
EDWARD TROUP, a.k.a. "Huero Troup;"
LEONARD LUJAN
BILLY GARCIA, a.k.a. "Wild Bill;"
EUGENE MARTINEZ, a.k.a. "Little Guero;"
ALLEN PATTERSON;
 CHRISTOPHER CHAVEZ, a.k.a. "Critter;"
JAVIER ALONSO, a.k.a. "Wineo;"
ARTURO ARNULFO GARCIA, a.k.a. "Shotgun;"
BENJAMIN CLARK, a.k.a. "Cyclone;"
RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper;"
JERRY MONTOYA, a.k.a. "Boxer;"
MARIO RODRIGUEZ, a.k.a. "Blue;"
TIMOTHY MARTINEZ, a.k.a. "Red;"
MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts;"
DANIEL SANCHEZ, a.k.a. "Dan Dan;"
GERALD ARCHULETA, a.k.a. "Styx," a.k.a. "Grandma;"
CONRAD VILLEGAS, a.k.a. "Chitmon;"
ANTHONY RAY BACA, a.k.a. "Pup;"
ROBERT MARTINEZ, a.k.a. "Baby Rob;"
ROY PAUL MARTINEZ, a.k.a. "Shadow;"
CHRISTOPHER GARCIA;
CARLOS HERRERA, a.k.a. "Lazy;"
RUDY PEREZ, a.k.a. "Ru Dog;"
ANDREW GALLEGOS, a.k.a. "Smiley;"
SANTOS GONZALEZ;
PAUL RIVERA;
SHAUNA GUTIERREZ;
BRANDY RODRIGUEZ

     Defendants.

## COURT'S FIRST DRAFT OF TABLE TO BE INCLUDED IN THE IMPENDING MEMORANDUM OPINION AND ORDER REGARDING THE *JAMES* ISSUE
### (provided to the parties on April 4, 2018)

**FINDINGS OF FACT**

The Federal Rules of Criminal Procedure require the Court to state "its essential findings on the record" when "factual issues are involved in deciding a motion. Fed. R. Crim. P. 12(d). Accordingly, the Court makes the following findings[9]:

1.     A conspiracy to kill Frank Castillo existed.  Leonard Lujan Plea Agreement ¶ 7, at 4-5, filed March 13, 2017 (Doc. 963)(James Hearing Exhibit 11)("Lujan Plea Agreement").

2.     The Castillo conspiracy included five indicted conspirators: (i) DeLeon, (ii) J. Gallegos; (iii) Troup; (iv) Lujan; and (v) B. Garcia.  See Lujan Plea Agreement ¶ 7, at 4-5.

3.     The Castillo conspiracy included eight unindicted conspirators: (i) Angel Munoz; (ii) Leroy Lucero;  (iii) Michael Jaramillo;  (iv) Federico Munoz;  (v) Willy Amador;  and (vi) Jessie Ibarra.  [cite].

4.     The Castillo conspiracy continued until Castillo's death on March 26, 2001.  See Lujan Plea Agreement ¶ 7, at 4-5.

---

[9]The United States made several assertions at the Court's James hearing which the Court's findings of fact do not reflect.  First, the United States asserted that a conspiracy to kill Adrian Burns existed and that the conspiracy included J. Gallegos, A. Gallegos, Charlene Baldizan, and Jesse Van Veghel.  See Afternoon Tr. at 15:12-19 ("Court, Castellano); id. at 23:7-14 (Castellano).  The evidence that the United States introduced at the James hearing indicates, at most, that Baldizan and Van Veghel agreed to conceal Burns' murder after the fact.  See Mar. 13 Tr. at 34:25-36:1 (Castellano, Stemo)(describing Baldizan's alleged involvement in hiding the Gallegos brothers from law enforcement and "agreeing to getting rid of the van that the Gallegos brothers knew the police were looking for"); id. at 36:2-38:1 (Castellano, Stemo)(describing how Van Veghel allegedly assisted the Gallegos brothers by destroying evidence).  Thus, the James Hearing evidence indicates that Baldizan and Van Veghel might have joined a conspiracy to conceal the Burns murder, but it does not indicate that they joined a conspiracy to commit the Burns murder.  Second, there is no evidence indicating that J. Gallegos and A. Gallegos agreed to kill Burns as opposed to J. Gallegos killing Burns and then enlisting his brother afterwards to help conceal the murder.  Thus, the Court does not find that a conspiracy to murder Burns existed.  Third, the

- 25 -

5.      A conspiracy to kill Rolando Garza existed.   <u>See</u> Eugene Martinez Plea Agreement ¶ 9, at 3-4, filed May 5, 2017 (Doc. 1138)(<u>James</u> Hearing Exhibit 15)("E. Martinez Plea Agreement"); Lujan Plea Agreement ¶ 7, at 4-5.

6.      The Garza conspiracy included five indicted conspirators: (i) Lujan; (ii) B. Garcia; (iii) E. Martinez; (iv) Patterson; and (v) Chavez.   <u>See</u> E. Martinez Plea Agreement ¶ 9, at 3-4; Lujan Plea Agreement ¶ 7, at 4-5.

7.      The Garza conspiracy included eight unindicted conspirators: (i) Angel Munoz; (ii) Leroy Lucero; (iii) Michael Jaramillo; (iv) Federico Munoz; (v) Willie Amador; and (vi) Jessie Ibarra; (vii) Jimmy Gordon; and (viii) Geraldine Martinez. [cite].

8.      The Garza conspiracy continued until Garza's death on March 26, 201.   E. Martinez Plea Agreement ¶ 9, at 3-4; Lujan Plea Agreement ¶ 7, at 4-5.

9.      A conspiracy to kill Freddie Sanchez existed.   <u>See</u> Javier Alonso Plea Agreement ¶ 7, at 4-5, filed August 28, 2017 (Doc. 1237)(<u>James</u> Hearing Exhibit 14)("Alonso Plea Agreement"); Ruben Hernandez Plea Agreement ¶ 7, at 4, filed February 1, 2017 (Doc. 880)(James Hearing Exhibit 13)("Hernandez Plea Agreement"); Benjamin Clark Plea Agreement ¶ 7, at 4, filed November 15, 2016 (Doc. 768)(<u>James</u> Hearing Exhibit 12)("Clark Plea Agreement").

10.     The Sanchez conspiracy included five indicted conspirators: (i) Alonso; (ii) Troup; (iii) A. Garcia; (iv) Hernandez; and (v) Clark.   <u>See</u> Alonso Plea Agreement ¶ 7, at 4-5; Hernandez Plea Agreement ¶ 7, at 4; Clark Plea Agreement ¶ 7, at 4.

11.     The Sanchez conspiracy included six unindicted conspirators: (i) Javier Alonso; (ii) FNU/LNU;[10] (iii) Kyle Dwyer; (iv) Jessie Trujillo; (v)Joe Martinez; and (vi) Ernest Guerrero. [cite].[11]

12.     The Sanchez conspiracy continued until Sanchez' death on June 17, 2007.  See Alonso Plea Agreement ¶ 7, at 4-5; Hernandez Plea Agreement ¶ 7, at 4; Clark Plea Agreement ¶ 7, at 4.

13.     A conspiracy to murder Jose Gomez and to prevent him from testifying existed. See Santos Gonzalez Plea Agreement ¶ 10, at 4-5, filed June 5, 2017 (Doc. 1180)(James Hearing Exhibit 18)("Gonzalez Plea Agreement"); Brandy Rodriguez Plea Agreement ¶ 13, at 5-6, filed February 23, 2018 (Doc. 1830)(James Hearing Exhibit 17)("B. Rodriguez Plea Agreement"); Paul Rivera Plea Agreement ¶ 8, at 4-5, filed February 1, 2017 (Doc. 877)(James Hearing Exhibit 16)("Rivera Plea Agreement").

---

[10]FNU/LNU stands for First Name Unknown/Last Name Unknown. [cite].

[11]The United States identified Brian Rascone and Raymond Rascon as Sanchez conspiracy members, but at the testimony at the Court's James hearing indicates that the Rascon brothers refused to kill Sanchez.  See Mar. 13 Tr. at 24:3-11 (Stemo).

> The Rascon brothers were tasked to do the hit [on Sanchez] originally but when Javier Alonso approached them Raymond Rascon said they didn't want to do it because they were short to the door, meaning they were going to get out of prison shortly therefore Javier Alonso instructed Edward Troup and they both went into the cell and took care of business.  When they were doing that, the Rascon brothers came to offer their aid as a way to save face with the gang.

Mar. 13 Tr. at 24:3-11 (Stemo).  That the Rascon brothers refused to kill Sanchez indicates that they did not agree to kill Sanchez, i.e., that they were not members of the Sanchez conspiracy. That they subsequently offered their assistance in cleaning up the murder scene indicates, at most, that the Rascon brothers joined a conspiracy to conceal the Sanchez murder and not a conspiracy to commit the Sanchez murder.  Consequently, the Court concludes that the Rascon brothers were not members of the Sanchez conspiracy.

- 27 -

14.     The Gomez conspiracy included five people: (i) Paul Rivera; (ii) J. Gallegos; (iii) Santos Gonzales; (iv) Shauna Gutierrez; and (v) Brandy Rodriguez.  <u>See</u> Gonzalez Plea Agreement ¶ 10, at 4-5; B. Rodriguez Plea Agreement ¶ 13, at 4-5; Rivera Plea Agreement ¶ 8, at 4-5.

15.     The Gomez murder conspiracy began on or about February 1, 2016 and continued until on or about February 27, 2016.  Gonzalez Plea Agreement ¶ 10, at 4-5.  B. Rodriguez Plea Agreement ¶ 13, at 4-5; Rivera Plea Agreement ¶ 8, at 4-5.

III.   **THE COURT MAKES PARTICULARIZED JUDGMENTS REGARDING THE**
       <u>**JAMES**</u> **PROFFER STATEMENTS' ADMISSIBILITY UNDER THE FEDERAL**
       <u>**RULES OF EVIDENCE.**</u>

The Court is able to make general determinations regarding the existence of conspiracies and their membership.  <u>See</u> FOFs.  The Court is also able to make general determinations regarding whether the <u>James</u> Proffer statements are testimonial.  <u>See supra</u> § 1.  A statement-by-statement approach is necessary, however, when determining whether statements were made during and in furtherance of a conspiracy.  <u>See</u> Fed. R. Evid 801(d)(2)(E).[17]

| <u>**James**</u> **Proffer Statement** | **Ruling** |
|---|---|
| Statement 1: "Billy Garcia tasked Leonard Lujan with finding an inmate to carry out the murders of Garza and Castillo.  The murders were to be executed simultaneous."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001 | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E).  <u>See</u> Mar. 13 Tr. at 9:13-10:8 (Castellano, Stemo).  The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, <u>see</u> FOF, so the Court denies their objections, <u>see</u> Chavez Response ¶ 4, at 2; Patterson Response ¶ 5, at 2.  The Court will give a limiting instruction as to A. Garcia and A. Gallegos. |

---

[17]While the Court must make individualized determinations regarding whether -- and against whom -- individual statements are admissible under rule 801(d)(2)(E), the Court can make general determinations regarding the Defendants requests for "a continuing objection."  B. Garcia Response ¶ 21, at 9; A. Gallegos Response ¶ 7, at 3; Troup Response ¶ 23, at 6; Patterson Response ¶ 31, at 12.  The Court will not grant that request for two reasons.  First, the parties will need to make oral objections and not rely on continuing objections to apply the Court's evidentiary analysis to witness testimony.  Second, the Court's pretrial determinations are somewhat tentative, because evidence introduced at trial or variances between witness testimony and the <u>James</u> Proffer may alter those determinations.  Oral objections will bring those issues to the Court's attention.  Consequently, the Court will require the Defendants to make oral objections to evidence that they believe is inadmissible, and if the Court overrules those objections, the Defendants will need to determine whether they wish the Court to provide a limiting instruction.  <u>See</u> Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose -- but not against another party or for another purpose -- the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

| | |
|---|---|
| Objections: Chavez Response, Patterson Response | |
| Statement 2: "Billy Garcia wanted Castillo and Garza 'to be taken out' by strangulation."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E).  <u>See</u> Mar. 13 Tr. at 10:9-13 (Castellano, Stemo).  The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, <u>see</u> FOF, so the Court denies their objections, <u>see</u> Chavez Response ¶ 5, at 2; Patterson Response ¶ 6, at 2-3.  The Court will give a limiting instruction as to A. Garcia and A. Gallegos. |
| Statement 3: "The Castillo and Garza murders were an order. Anyone who did not follow that order was to be killed as well."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E).  <u>See</u> Mar. 13 Tr. at 10:14-11:2 (Castellano, Stemo).  The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, <u>see</u> FOF, so the Court denies their objections, <u>see</u> Chavez Response ¶ 6, at 2; Patterson Response ¶ 7, at 3.  The Court will give a limiting instruction as to A. Garcia and A. Gallegos. |
| Statement 4: "Billy Garcia was planning to kill everyone in the unit with a green light but was starting with Castillo and Garza."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, specifically his plan, so it is admissible for its truth as against all the Defendants under rule 803(3). <u>See</u> Mar. 13 Tr. at 11:3-10 (Castellano, Stemo).  The Court accordingly denies Chavez' and Patterson's objections. <u>See</u> Chavez Response ¶ 7, at 2; Patterson Response ¶ 8, at 3-4. |
| Statement 5: "These murders needed to be done because the SNM gang was losing status with | This statement is a statement of B. Garcia's then-existing state of mind, specifically his motive, so it is admissible for its truth as against all the Defendants under rule 803(3). |

| | |
|---|---|
| other gangs." <br><br> Declarant: Billy Garcia <br><br> Source: Leonard Lujan <br><br> Date: On or before March 26, 2001 <br><br> Objections: Chavez Response, Patterson Response | See Mar. 13 Tr. at 11:11-22 (Castellano, Stemo). The Court accordingly denies Chavez' and Patterson's objections. See Chavez Response ¶ 8, at 3; Patterson Response ¶ 9, at 4. |
| Statement 6: "Leonard Lujan tells Eugene Martinez 'I'm telling you right now where it's coming from and everything,' referring to Billy Garcia." <br><br> Declarant: Leonard Lujan (first-level) and Billy Garcia (second-level). <br><br> Source: Leonard Lujan, Eugene Martinez <br><br> Date: On or before March 26, 2001 <br><br> Objections: Chavez Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E). See Mar. 13 Tr. at 11:23-12:7 (Castellano, Stemo). The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez Response ¶ 4, at 2; Patterson Response ¶ 10, at 4. The Court will give a limiting instruction as to A. Garcia and A. Gallegos. |
| Statement 7: "Billy Garcia ordered the murder of Castillo due to him cooperating with law enforcement." <br><br> Declarant: Billy Garcia. <br><br> Source: Leonard Lujan <br><br> Date: On or before March 26, 2001 <br><br> Objections: Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, specifically his motive, so it is admissible for its truth as against Patterson's under rule 803(3). See Mar. 13 Tr. at 12:8-16 (Castellano, Stemo). The Court accordingly denies Patterson's objection. See Patterson Response ¶ 11, at 4-5. |
| Statement 8: "Billy Garcia ordered Garza to be killed for being a former Los Carnales member." | This statement is a statement of B. Garcia's then-existing state of mind, specifically his motive, so it is admissible for its truth as against all the Defendants under rule 803(3). See Mar. 13 Tr. at 12:17-25 (Castellano, Stemo). The Court accordingly denies Chavez' and Patterson's |

- 71 -

| | |
|---|---|
| Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | objections.  <u>See</u> Chavez Response ¶ 10, at 3-4; Patterson Response ¶ 12, at 5. |
| Statement 9: "'What the fuck is going on? I sent word a long time ago to clean house.'  Billy Garcia was upset Leonard Lujan had not taken charge in the facility."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | This statement could be offered for a non-hearsay purpose, <u>i.e.</u>, as circumstantial evidence of B. Garcia's state of mind.<br><br>This statement is also admissible for its truth against the Counts 1 and 2 Defendants under rule 801(d)(2)(E), because B. Garcia's recrimination regarding Lujan's failure to act appear calculated to spur Lujan to take further action towards the Castillo and Garza murders.  <u>See</u> Mar. 13 Tr. at 13:1-24 (Castellano, Stemo).   The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, <u>see</u> FOF, so the Court denies their objections, <u>see</u> Chavez Response ¶ 11, at 4; Patterson Response ¶ 13, at 5-6.  If the statement is offered for its truth, the Court will give a limiting instruction as to A. Garcia and A. Gallegos. |
| Statement 10: "Leroy Lucero received word from Billy Garcia that several hits were supposed to happen.  Garcia told him he didn't need help since Lucero was getting out."<br><br>Declarant: Billy Garcia<br><br>Source: Leroy Lucero<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | Part of this statement is a statement of B. Garcia's then-existing state of mind, specifically his plans, so that portion of the statement is admissible as against all of the Defendants under rule 803(3).   The remainder of the statement, B. Garcia's direction to Lucero, is a statement in furtherance of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E), because B. Garcia, in declining Lucero's help, is arranging the details of the Castillo and Garza murders.  <u>See</u> Mar. 13 Tr. at 15:15-22 (Castellano, Stemo). Accordingly, the statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E).   The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, <u>see</u> FOF, so the Court denies their objections, <u>see</u> Chavez Response ¶ 12, at 4; Patterson Response ¶ 14, at 6.  To the extent that the statement is admissible against the Counts 1 and 2 Defendants under rule 801(d)(2)(E), the Court will give a limiting instruction as to A. Garcia and A. Gallegos. |
| Statement 11: "Leroy Lucero | This statement is admissible for its truth against the |

| | |
|---|---|
| confirmed the message that several hits were supposed to happen with Angel Munoz. Munoz said 'Something has to happen Carnal Billy's on his way.'" | members of the Counts 1 and 2 conspiracies, under rule 801(d)(2)(E).  See Mar. 13 Tr. at 16:12-17:4 (Castellano, Stemo).  The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez Response ¶ 13, at 4-5; Patterson Response ¶ 15, at 6.  The Court will give a limiting instruction as to A. Garcia and A. Gallegos. |
| Declarant: Angel Munoz | |
| Source: Leroy Lucero | |
| Date: On or before March 26, 2001 | |
| Objections:  Chavez   Response, Patterson Response | |
| Statement 12: "Leonard Lujan met with Eugene Martinez and tasked him with the murder of Garza by strangulation and told Martinez to pick people to help." | This statement is admissible for its truth against the Count 2 conspirators under rule 801(d)(2)(E).  See Tr. at 17:4-16 (Castellano, Stemo).  The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez Response ¶ 14, at 5; Patterson Response ¶ 16, at 6-7.  The Court will give a limiting instruction as to A. Garcia, A. Gallegos, J. Gallegos, and Troup. |
| Declarant: Leonard Lujan | |
| Source: Leonard Lujan, Eugene Martinez | |
| Date: On or before March 26, 2001 | |
| Objections:  Chavez   Response, Patterson Response | |
| Statement 13: "Leonard Lujan met with Joe Gallegos, Angel DeLeon, and 'Criminal'[18]   and   ordered Castillo   murdered   by strangulation." | The James Proffer lists Leonard Lujan as both this statement's declarant and its source.  See James Proffer at 8.  Agent Stemo's testimony indicates that she is aware of this out-of-court Lujan statement via another out-of-court statement, which Lujan made circa 2007.  See Mar. 13 Tr. at 65:7-16 (Benjamin, Stemo).  The 2007 statement was made long after the Count 1 conspiracy ended with Castillo's death, so it is not admissible under rule 801(d)(2)(E).  The earlier statement, however, was made during and in furtherance of the Count 1 conspiracy during and in furtherance of the Count 1 conspiracy by a member of that conspiracy.  See Mar. 13 Tr. at 17:17-24, 18:20- |
| Declarant: Leonard Lujan | |
| Source: Leonard Lujan | |
| Date: On or before March 26, 2001 | |
| Objections: J. Gallegos Response, | |

---

[18]"Criminal" refers to Michael Jaramillo.  See Mar. 13 Tr. at 130:24-131:1 (Castellano, Stemo).

| Patterson Response | 19:1 (Castellano, Stemo).  Patterson is not a member of the Count 1 conspiracy, see FOF, so the Court grants Patterson's objection insofar as it requests a limiting instruction, see Patterson Response ¶ 17, at 7. |
| | J. Gallegos requests the opportunity to voir dire Lujan, because "he is referred to in an audio recording by Leroy Lucero as 'crazy Leonard, no one would believe Leonard.'"  J. Gallegos Response ¶ 1, at 3.  The Court denies that request, because voir dire is not an appropriate mechanism for testing Lujan's credibility. |
| | J. Gallegos argues that this statement is an action -- giving an order -- and not a statement.  See J. Gallegos Response ¶ 1, at 3; Mar. 13 Tr. at 64: 11-13 (Benjamin).  Under the Federal Rules of Evidence, a statement must be an assertion.  See Fed. R. Evid. 801(a)("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.").  J. Gallegos is correct insofar as orders and commands -- e.g., "fetch me a shrubbery" -- like questions -- e.g., "what do you want to eat for lunch?" -- are not assertions, because they are neither true nor false.  Consequently, orders and questions cannot be hearsay both because hearsay must be a statement, see Fed. R. Evid. 801(c)("'Hearsay' means a statement . . . ."), and because an utterance that is neither true nor false cannot be offered "to prove the truth of the matter asserted," Fed. R. Evid. 801(c)(2). |
| | While orders and commands are not, themselves, assertions they may -- like questions -- contain implicit assertions.  See United States v. Summers, 414 F.3d 1287, 1298 (10th Cir. 2005)(Kelly, J.)(concluding that a defendant's question -- "'How did you guys find us so fast?'" -- was an implicit assertion of "both guilt and wonderment at the ability of the police to apprehend the perpetrators of the crime so quickly").[19]  As an example, |

[19]At least according to Aristotle, contingent predictions are another example of utterances that are neither true nor false:

In the case of that which is or which has taken place, propositions, whether positive or negative, must be true or false.  Again, in the case of a pair of contradictories, either when the subject is universal and the propositions are of a universal character, or when it is individual, as has been said,[] one of the two must be true and the other false . . . .

| | |
|---|---|
| | ordering someone to "give me one pound of your best marijuana" implicitly asserts that the person to whom the order is addressed possess a controlled substance. Likewise, asking someone whether they stopped beating their wife is implicitly an assertion both that the person questioned is married and an assertion that, at one point, they abused their wife.  Thus, the orders that the <u>James</u> Proffer identifies can qualify as hearsay if those orders contain implicit assertions. |
| | Listing orders in the <u>James</u> Proffer is useful, even if those orders do not contain implicit assertions, because people often make orders in quick succession, and -- if they are not lawyers -- they do not always scrupulously distinguish between the two.   Statement 13 indicates that Lujan ordered others to kill Castillo, but Lujan may unexpectedly |

---

When the subject, however, is individual, and that which is predicated of it relates to the future, the case is altered.  For if all propositions whether positive or negative are either true or false, then any given predicate must either belong to the subject or not, so that if one man affirms that an event of a given character will take place and another denies it, it is plain that the statement of the one will correspond with reality and that of the other will not. For the predicate cannot both belong and not belong to the subject at one and the same time with regard to the future.

. . . .

[T]o say that neither the affirmation nor the denial is true, maintaining, let us say, that an event neither will take place nor will not take place, is to take up a position impossible to defend.   In the first place, though facts should prove the one proposition false, the opposite would still be untrue.  Secondly, if it was true to say that a thing was both white and large, both these qualities must necessarily belong to it; and if they will belong to it the next day, they must necessarily belong to it the next day.  But if an event is neither to take place nor not to take place the next day, the element of chance will be eliminated.  For example, it would be necessary that a sea-fight should neither take place nor fail to take place on the next day.

. . . .

A sea-fight must either take place to-morrow or not, but it is not necessary that it should take place to-morrow, neither is it necessary that it should not take place, yet it is necessary that it either should or should not take place to-morrow.  Since propositions correspond with facts, it is evident that when in future events there is a real alternative, and a potentiality in contrary directions, the corresponding affirmation and denial have the same character.

Aristotle, <u>On Interpretation</u> § I, Pt. 9, <u>available at</u> http://classics.mit.edu/Aristotle/interpretation. html.

| | |
|---|---|
| | testify that he told those people that he wanted them to kill Castillo, which is a statement regarding Lujan's desires and not, technically, an order. Alternatively, Lujan may testify both that he gave the order that Statement 13 describes and he may indicate that he also made statements regarding the reasons for that order or other associated statements. |
| | That the United States lists orders in the <u>James</u> Proffer is prudent, because it permits the Defendants and the Court to consider and argue, respectively, whether those orders contain implicit assertions. It also permits the Court to make findings that will permit it to quickly rule on unexpected statements closely associated with those orders, <u>e.g.</u>, if an order was made during a conspiracy by a conspirator then statements made by the same person at much the same time were also made during a conspiracy by a conspirator.[20] Further, if the United States did not list orders in the <u>James</u> Proffer, the Defendants could complain at trial -- perhaps legitimately -- regarding unfair surprise. Accordingly, the Court denies J. Gallegos' objection that "this is not a statement." J. Gallegos Response ¶ 1, at 3. |
| Statement 14: "Billy Garcia wanted knowledge of the plan kept to very few individuals." <br><br> Declarant: Billy Garcia <br><br> Source: Leonard Lujan <br><br> Date: On or before March 26, 2001 <br><br> Objections: Chavez Response, Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, so it is admissible for its truth against all the Defendants under rule 803(3). <u>See</u> Mar. 13 Tr. at 19:2-9 (Castellano, Stemo). The Court accordingly denies Chavez' and Patterson's objections. <u>See</u> Chavez Response ¶ 15, at 5; Patterson Response ¶ 18, at 7-8. |
| Statement 15: "Once alarms were sounded and the murders discovered, Billy Garcia congratulated Leonard Lujan with 'Amor.'" <br><br> Declarant: Billy Garcia | This statement was made after Castillo and Garza died, so it was not made during the Counts 1 and 2 conspiracies. Accordingly, it is not admissible under rule 801(d)(2)(E). <br><br> The United States could offer this statement as circumstantial evidence of B. Garcia's state of mind, however. Consequently, the Court grants Chavez' and Patterson's objections to admitting this statement for its |

---

[20]Whether a statement was made in furtherance of a conspiracy, however, will depend on the content and content of the statement.

| | |
|---|---|
| Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | truth under rule 801(d)(2)(E), <u>see</u> Chavez Response ¶ 15, at 16; Patterson Response ¶ 19, at 8, but the Court may admit this statement for a non-hearsay purpose. |
| Statement 16: "Frederico Munoz part of the committee that sanctioned the hit on Garza and Castillo.   Munoz wanted Garza killed for being Los Carnales."<br><br>Declarant: Billy Garcia<br><br>Source: Federico Munoz<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | The testimony at the Court's <u>James</u> hearing indicates that Federico Munoz admitted to the information contained in this statement. <u>See</u> Mar. 13 Tr. at 19:25-20:7 (Castellano, Stemo).   Federico Munoz testifying and repeating that admission raises no hearsay issues, because Munoz has personal knowledge regarding his own motives and regarding whether he was part of a group that ordered the Castillo and Garza murders. <u>See</u> Fed. R. Evid. 602. |
| Statement 17: "Arturo Garcia placed hit on Sanchez because he was suspected to be cooperating with law enforcement."<br><br>Declarant: Arturo Garcia<br><br>Source: Eric Duran<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This is a statement of A. Garcia's then-existing state of mind, so it is admissible for its truth against all the Defendants under rule 803(3). <u>See</u> Mar. 13 Tr. at 20:16-21:1 (Castellano, Stemo). |
| Statement 18: "Ben Clark passed around paperwork on Sanchez's cooperation with police.   Stating 'everyone who needs to see it has seen it, get rid of it.'"<br><br>Declarant: Ben Clark<br><br>Source: Ruben Hernandez<br><br>Date: On or before June 17, 2007 | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E). <u>See</u> Mar. 13 Tr. at 21:2-13 (Castellano, Stemo).   The act of passing around paperwork and any associated statements -- <u>see</u> <u>supra</u> Statement 13 (analyzing the relationship between acts and statements) -- furthered the Sanchez conspiracy, because the paperwork indicated that the Sanchez murder was a legitimate SNM hit, which induced further action on the part of conspirators.   Destroying the paperwork afterward furthered the conspiracy by preventing law enforcement from learning of -- and potentially preventing -- the |

| | |
|---|---|
| Objections: None | planned Sanchez murder. |
| Statement 19: "Arturo Garcia wrote to Frankie Gonzales that Brian and Raymond Rascon were to take care of the next murder for SNM."<br><br>Declarant: Arturo Garcia<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Tr. at 21:14-22:1 (Castellano, Stemo). |
| Statement 20: "Ben Clark put Javier Alonso in charge of making sure Sanchez was killed and told the Rascon brothers to complete the hit."<br><br>Declarant: Ben Clark<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Tr. at 22:2-10 (Castellano, Stemo). |
| Statement 21: "Word was sent from the green pod that if Sanchez was not killed, others in the Blue pod would be killed."<br><br>Declarant: FNU [First Name Unknown] LNU [Last Name Unknown]<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Tr. at 22:11-23:1 (Castellano, Stemo). |
| Statement 22: "Edward Troup was told to go help with Sanchez's | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Tr. at 23:15-21 |

| | |
|---|---|
| murder."<br><br>Declarant: Javier Alonso<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | (Castellano, Stemo). |
| Statement 23: "While Edward Troup and Javier Alonso were finishing killing Sanchez, Brian and Raymond Rascon came and asked if they could help."<br><br>Declarant: Brian Rascon and/or Raymond Rascon<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: Troup Response | This statement is actually an action -- specifically an offer -- and not an assertion, so it cannot be hearsay. <u>See</u> Tr. 23:22-24:14 (Stemo).<br><br>    The Rascon brothers were tasked to do the hit originally but when Javier Alonso approached them   Raymond Rascon said they didn't want to do it because they were short to the door, meaning they were going to get out of prison shortly therefore Javier Alonso show instructed Edward Troup and they both went into the cell and took care of business.  When they were doing that, the Rascon brothers came to offer their aid as a way to save face with the gang.<br><br>Tr. at 24:3-11 (Stemo). <u>See</u> <u>supra</u> Statement 13 (discussing the relationship between actions and statements).  That the Rascon brothers offered their aid after Sanchez' death indicates that the conspiracy to kill Sanchez no longer existed, so any associated statements are not admissible for their truth against the Count 3 conspirators under rule 801(d)(2)(E).  <u>See</u> <u>United States v. Alcorta</u>, 853 F.3d 1123, 1139 (10th Cir. 2017)("To be sure, to qualify for the coconspirator exception a statement must have been made during the conspiracy.  Statements made after the objectives of the conspiracy have either failed or been achieved are not made during the conspiracy and must be excluded.").  Further, that the Rascon brothers refused to kill Sanchez when Alonso approached them indicate that they did not join the Sanchez conspiracy.  <u>See</u> Tr. at 24:3-11(Stemo).<br><br>Troup argues that this statement lacks a sufficient foundation, because the <u>James</u> Proffer identifies the declarant as "'Brian Rascon and/or Raymond Rascon.'" Troup Response ¶ 4, at 2 (quoting <u>James</u> Proffer at 13). |

| | This statement's admissibility does not depend on whether the person who offered assistance is Brian Rascon, Raymond Rascon, or both. See United States v. Brinson, 772 F.3d 1314, 1321-22 (10th Cir. 2014)(concluding that an unidentified declarant's statements were admissible, because they were not offered to prove the truth of the matter asserted). Accordingly, the Court denies Troup's objection. See Troup Response ¶ 4, at 2. |
|---|---|
| Statement 24: "Javier Alonso told the Rascon brothers to keep a look out when the brothers asked if they could help."<br><br>Declarant: Javier Alonso<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is actually an action -- giving the Rascon brothers an order -- so it is not hearsay. See Tr. at 24:15-21 (Stemo, Castellano). See also supra Statement 13 (discussing the relationship between actions and statements). That Alonso gave this order after Sanchez' death indicates that any associated statements were not made during the Sanchez conspiracy, so those statements are not admissible for their truth against the Count 3 conspirators under rule 801(d)(2)(E). See United States v. Alcorta, 853 F.3d at 1139. |
| Statement 25: "Edward Troup kissed Javier Alonso on the cheek and told him he was proud of him."<br><br>Declarant: Edward Troup<br><br>Source: Javier Alonso<br><br>Objections: None | This is a statement of Troup's then-existing state of mind, so it is admissible against all Defendants under rule 803(3). See Tr. at 24:22-25:5 (Castellano, Stemo). |
| Statement 26: "After Sanchez was murdered, Edward Troup began telling Ruben Hernandez that he was next."<br><br>Declarant: Edward Troup<br><br>Source: Javier Alonso; Ruben Hernandez<br><br>Date: On or before June 17, 2007<br><br>Objections: None | Agent Stemo's testimony indicates that this statement stands in for several closely associated statements:<br><br>Q.     Following the murder in statement number, was an indication that Edward Troup began telling Ruben Hernandez that he was next?<br><br>A.     Yes.<br><br>Q.     And what was the indication about Ruben Hernandez at or around the time -- at or around the time of the murder?<br><br>A.     I believe Mr. Hernandez did not |

| | |
|---|---|
| | cover the cameras properly.<br><br>Q.    At  that  point,  according  to  statements by Javier Alonso and others was Ruben Hernandez seen as possibly scared and weak?<br><br>A.    Yes, he was actually on crutches at the time.<br><br>Q.    Related to the statement is there another statement related to Edward Troup stating in part that Ruben Hernandez failed to cover the camera because he was scared?<br><br>A.    Yes.<br><br>Tr. at 25:6-24 (Stemo, Castellano).<br><br>To the extent that this is a statement of Troup's plans or a statement regarding how other inmates viewed Hernandez, it is a statement of then-existing state of mind, so it is admissible for its truth under rule 803(3).  To the extent that these statements are offered as circumstantial evidence of Troup's state of mind, they are not offered to prove the truth of the matter asserted, so they are not hearsay. |
| Statement 27: "Arturo Garcia sent word about Sanchez to Ben Clark."<br><br>Declarant: Arturo Garcia<br><br>Source: Ben Clark, Eric Duran<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This  statement  is  admissible  against  the  Count  3 conspirators under rule 801(d)(2)(E).  See Tr. at 25:25-26:9 (Castellano, Stemo). |
| Statement 28: "Ben Clark and Arturo Garcia sent several letters about Sanchez to each other."<br><br>Declarant: Arturo Garcia<br><br>Source: Ben Clark<br><br>Date: On or before June 17, 2007 | Sending letters is an action and not a statement, but the statements in those letters regarding the Sanchez murder are admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Tr. at 26:10-18 (Castellano, Stemo).. |

| | |
|---|---|
| Objections: None | |
| Statement 29: "Javier Alonso and Edward Troup were expected to oversee the murder, and Troup told the Rascon brothers to hit Sanchez."<br><br>Declarant: Ben Clark<br><br>Source: Ben Clark<br><br>Date: On or before June 17, 2007<br><br>Objections: Troup Response | Troup argues that the portion of this statement referring to Benjamin Clark's expectations circa 2007 is not a statement at all.  See Troup Response ¶ 5, at 2.  Troup is correct -- expectations are not statements.  Clark can, however, testify about what his expectations were at that time. If, however, this statement refers to expectations that belong to someone other than Clark, the United States would need to establish how Clark knows about those expectations.  If that foundation is statements of someone's then-existing state of mind, then those statements are admissible under rule 803(3).   If that foundation is statements that are circumstantial evidence of the declarant's state of mind then those statements are not offered to prove the truth of the matter asserted, so they are not hearsay.   In any event, the Court denies Troup's objection.  See Troup Response ¶ 5, at 2.<br><br>That Troup told the Rascon brothers to hit Sanchez is an order and not a statement, see supra Statement 13 (discussing the relationship between actions and statements), but any associated  statement that Troup made are admissible against the Count 3 conspirators under rule 801(d)(2)(E), see Tr. at 26:19-27:1 (Castellano, Stemo). That the Rascon brothers refused to murder Sanchez indicates that they did not join the Count 3 conspiracy. See Tr. at 24:3-11 (Stemo). A rule 801(d)(2)(E) statement, however, needs to be made by a conspirator, but it does not need to be made to a conspirator.   See Fed. R. Evid. 801(d)(2)(E).  Consequently, that the Rascon brothers did not join the Count 3 conspiracy does not affect whether Troup's statements are admissible under rule 801(d)(2)(E). |
| Statement 30: "Leonard Lujan told Willie Amador and Jesse Ibarra to 'handle that' and told Eugene Martinez that 'I'm running this prison now.'"<br><br>Declarant: Leonard Lujan<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections:    Chavez    Response, | Stemo's testimony indicates that "statement number 30 is incorrect" and that "[w]hat it actually says is, Lujan told Martinez to tell SNM members, Willie Amador and Jesse Martinez to handle that."  See Tr. at 173:25-174:3 (Stemo). Lujan's order to E. Martinez is an action and not an assertion, see supra Statement 13 (discussing the relationship between actions and statements), but any associated statements would be admissible for their truth against the Count 2 Defendants under rule 801(d)(2)(E). The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez |

| Patterson Response | Response ¶ 18, at 6; Patterson Response ¶ 21, at 8-9.  The Court will give a limiting instruction as to |
|---|---|
| Statement 31: "Christopher Chavez heard about the hit on Garza and volunteered to participate in the operation."<br><br>Declarant: Chris Chavez<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: B. Garcia Response, Patterson Response | That Chavez volunteered is an action and not a statement. See supra Statement 13 (discussing the relationship between actions and statements).<br><br>This statement is not hearsay, because Chavez' act, volunteering to participate in the Garza murder, is neither true nor false.  The Court anticipates that there are other statements associated with Chavez' act which could be offered for their truth.  For example, it would have been natural for Chavez to state that he wanted to participate in the Garza murder, which would be a statement of then-existing state of mind under rule 803(3).  Any statements made by Count 3 conspirators attempting to induce Chavez to volunteer would have been made during and in furtherance of the Count 3 conspiracy, so they would be admissible for their truth under rule 801(d)(2)(E) as to the Count 3 conspirators. |
| Statement 32: "Willie Amador told Eugene Martinez to be lookout during the Garza murder and stated, 'If something happens, you already know.'"<br><br>Declarant: Willie Amador<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | This statement was made during and in furtherance of the Count 2 conspiracy and it was made by Willie Amador, a member of that conspiracy.  It is not testimonial. Accordingly, the statement is admissible for its truth against the Count 2 conspirators under rule 801(d)(2)(E). |
| Statement 33: While strangling Garza someone in the room yelled 'Close the door!'"<br><br>Declarant: Allen Patterson or Christopher Chavez<br><br>Source: Eugene Martinez | B. Garcia argues that, because the James Proffer lists this statement's declarant as "Allen Patterson or Christopher Chavez," James Proffer at 18, "[t]here is no ability to properly attribute or authenticate the statement to any particular declarant." B. Garcia ¶ 5, at 2-3.<br><br>This statement -- "Close the door!" -- is a command, so it is neither true nor false.  See supra Statement 13 (analyzing the relationship of actions and statements). |

| | |
|---|---|
| Date: On or before March 26, 2001<br><br>Objections: B. Garcia Response | Associated statements are probably admissible against the Count 2 conspirators under rule 801(d)(2)(E).<br><br>As to authentication, rule 901 states that "the proponent [of an item of evidence] must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 609(a). Accordingly, so long as the United States claims only that this statement was made by either Patterson or Chavez, it only needs, under rule 609, to introduce evidence sufficient to support a finding that one of those two individuals made the statement. <u>See</u> Fed. R. Evid. 609(a). The testimony of the witness who relates this statement to the jury -- assuming that the witness has knowledge -- satisfies that requirement. <u>See</u> Fed. R. Evid. 609(b)(1)(stating that the testimony of a witness with knowledge satisfies rule 609's authentication requirement). Accordingly, the Court denies B. Garcia's objection. B. Garcia ¶ 5, at 2-3. |
| Statement 34: "Leonard Lujan approached Eugene Martinez and told him to talk to Willie Amador about the murders."<br><br>Declarant: Leonard Lujan<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objection: Chavez Response, Patterson Response | This statement is admissible against the Counts 2 Defendants under rule 801(d)(2)(E). <u>See</u> Mar. 13 Tr. at 30:20-31:1 (Castellano, Stemo). The Court accordingly denies Chavez' and Patterson's objections. <u>See</u> Chavez Response ¶ 20, at 6-7; Patterson Response ¶ 24, at 10. |
| Statement 35: "Eugene Martinez asked Billy Garcia and Garcia confirmed the order and said 'it's coming from me' and 'make sure it happens.'"<br><br>Declarant: Billy Garcia<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, | This statement is admissible against the Counts 2 Defendants under rule 801(d)(2)(E). <u>See</u> Mar. 13 Tr. at 31:2-12 (Castellano, Stemo). The Court accordingly denies Chavez' and Patterson's objections. <u>See</u> Chavez Response ¶ 21, at 7; Patterson Response ¶ 25, at 10. |

| Patterson Response | |
|---|---|
| Statement 36: "Joe Gallegos later informed Leroy Lucero that Lawrence Torres saw and was concerned Torres might snitch."<br><br>Declarant: Joe Gallegos<br><br>Source: Leroy Lucero<br><br>Date: On or before March 26, 2001<br><br>Objections: B. Garcia Response, Chavez Response, A. Gallegos Response, J. Gallegos Response, Patterson Response | The United States orally conceded that this statement is not admissible under rule 801(d)(2)(E) of the Federal Rules of Evidence, because it was made four or five years after the Castillo and Sanchez murders. See Mar. 13 Tr. at 32:5-13 (Castellano)   The United States suggested, however, that the statement is admissible against Troup under rule 801(d)(2)(A).  The statement also appears to be a statement of then-existing state of mind under rule 803(3) to the extent that it expresses J. Gallegos' concerns and as circumstantial evidence of J. Gallegos' state of mind, i.e. consciousness of guilt. .  It is not admissible under rule 803(3), however, to show that Lawrence Torres saw anything, because rule 803(3) doesn't permit a statement of belief to be used to show the fact believed.  See Fed. R. Evid. 803(3).<br><br>The Court accordingly denies Patterson's objection.  See Patterson Response ¶ 26, at 10-11.<br><br>That this statement is nontestimonial means that its admission does not offend the Confrontation Clause, so the Court denies J. Gallegos' objection "on confrontation grounds." J. Gallegos Response ¶ 2, at 4. |
| Statement 37: "Edward Troup told Lawrence Torres, 'This has nothing to do with you.  Don't come up here.'"<br><br>Declarant: Edward Troup<br><br>Source: Lawrence Torres<br><br>Date: On or before March 26, 2001<br><br>Objections: B. Garcia Response, Chavez Response, Patterson Response | The United States provided additional context for this statement at the Court's James hearing:<br><br>    On the morning of the murder, March 26, 2001, Lawrence Torres woke up. As he walked out to heat up water for his coffee, he saw Angel DeLeon and Edward Troup, and it looked like to him that they were disassembling a laundry bag.  He put his water into the microwave, went back to his cell. He heard  a struggle, so he looked out to see what was happening, and he saw Mr. Edward Troup sitting at a table.  Mr. Torres tried go upstairs to see what was happening, and that's when Mr. Troup made that statement.<br><br>Mar. 13 Tr. at 33:20-33:5 (Stemo).   This statement is admissible against the Count 1 Defendants under rule 801(d)(2)(E), because Troup was a member of that conspiracy and he made the statement to prevent outside |

| | |
|---|---|
| | interference with the Castillo murder. The Court accordingly denies B. Garcia's, Chavez', and Patterson's objections. <u>See</u> B. Garcia Response ¶ 7, at 3; Chavez Response ¶ 23, at 7-8; Patterson Response ¶ 27, at 11. |
| **Statement 38:** "Angel Deleon had a scratch on his finger and told a female CO that he cut himself."<br><br>Declarant: Angel Deleon<br><br>Source: Lawrence Torres<br><br>Date: On or before March 26, 2001<br><br>Objections: B. Garcia Response, Chavez Response | The <u>James</u> hearing testimony indicates that Deleon made this statement after the Castillo murder, so it was not made during the conspiracy to commit that murder. <u>See</u> Mar. 13 Tr. at 33:9-21(Castellano, Stemo). Consequently, it is not admissible for its truth under rule 801(d)(2)(E). The statement is admissible, however, as circumstantial evidence of DeLeon's state of mind, specifically his consciousness of guilt.<br><br>The Court accordingly denies Chavez' objections. <u>See</u> Chavez Response ¶ 24, at 8.<br><br>Offering a hearsay statement for a purpose other than its truth does not implicate the Confrontation Clause, <u>see</u> <u>Tennessee v. Street</u>, 471 U.S. 409, 417 (1985), so the Court denies B. Garcia's objection that "this is a testimonial statement made to a CO during the process of an investigation and therefore is inadmissible," B. Garcia Response ¶ 8, at 4. |
| **Statement 39:** "Kyle Dwyer came to SNMCF with 'paperwork' on Sanchez."<br><br>Declarant: Kyle Dwyer<br><br>Source: Ben Clark<br><br>Date: On or before June 17, 2007<br><br>Objections: None | That Dwyer brought the Sanchez paperwork to SNMCF is an action and not a statement. <u>See</u> <u>supra</u> Statement 13 (analyzing the relationship between actions and statements). |
| **Statement 40:** "The 'paperwork' came from the Crazy Town Roswell gang."<br><br>Declarant: Ben Clark<br><br>Source: Ben Clark<br><br>Date: On or before June 17, 2007<br><br>Objections: None | Clark likely does not have personal knowledge regarding the paperwork's origins; he probably knows that the paperwork came from the Crazy Town Roswell gang because somebody told him about the paperwork's origins. <u>See</u> Fed. R. Evid. 602. The Court has no information regarding that out-of-court statement to Clark, so it cannot analyze whether that statement is admissible for its truth. |

| | |
|---|---|
| Statement 41: "Joe and Andrew Gallegos just pulled 'a job' and had to go 'clean up.' They were giving money and heroin to friends to 'help them out.' Joe Gallegos said, 'I just came up.'"<br><br>Declarant: Joe and/or Andrew Gallegos<br><br>Source: Leroy Vallejos, Michael Sutton<br><br>Date: On or about November 12, 2012<br><br>Objections: A. Gallegos Response, J. Gallegos Response | This statement is not admissible under rule 801(d)(2)(E), because the Court has not concluded that a conspiracy to murder Adrian Burns existed.<br><br>The James Proffer is not entirely clear regarding which statements A. Gallegos made and which statements J. Gallegos made. Rule 801(d)(2)(A) permits the statement to be admitted against whichever Gallegos brother made the statement. If one Gallegos brother made a statement, it may be admissible against the other under rule 801(d)(2)(B), which permits a statement to be introduced against a party that "manifested that it adopted or believed [the statement] to be true." Fed. R. Evid 801(d)(2)(B). See id. advisory committee notes ("Adoption or acquiescence may be manifested in any appropriate manner. When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue."). Additionally, the statement might be admissible as an excited utterance. See Fed. R. Evid. 803(2).<br><br>A. Gallegos objects to this statement, because "there is a lack of personal knowledge and an overall inability to properly attribute or authenticate the source for those statements that are simply identified with both Joe and Andrew Gallegos, or simply the 'Gallegos brothers.'" A. Gallegos Response ¶ 5, at 3. At trial, the witness who relates these statements to the jury will probably identify the declarant with more specificity, and the parties can address personal knowledge and authentication at that point. It is worth noting, however, that a party offering a statement for its truth under rule 801(d)(2) need not establish that the declarant had personal knowledge. See Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 602.02[2]("The exception to the rule is a statement admissible under Rule 801(d)(2) as a statement of a party-opponent, where the declarant need not have personal knowledge for the statement to be admissible.").<br><br>J. Gallegos objects to this statement and Statement 42, because admitting them "is probably in-violation [sic] of the holding in *Bruton v. United States*, 391 U.S. 123 (1968). That this statement is nontestimonial indicates that admitting it for its truth does not offend the Confrontation |

| | |
|---|---|
| | Clause.  Further, if rule 801(d)(2)(A) and rule 801(d)(2)(B) both apply, the statement is admissible against both Gallegos brothers.  The Court accordingly denies J. Gallegos' objection.  See J. Gallegos Response ¶ 3, at 4. |
| Statement 42: "Joe and Andrew Gallegos were covered in blood and advised they were 'cleaning the house.' Joe Gallegos later went by Leroy Vallejos' house and tried to give Vallejos his and Andrew Gallegos' truck."<br><br>Declarant:  Joe  and/or  Andrew Gallegos<br><br>Source: Daniel Orndorff, Michael Sutton, Leroy Vallejos<br><br>Date: On or about November 12, 2012<br><br>Objections: A. Gallegos Response, J. Gallegos Response | The Court has not found that a conspiracy to murder Adrian Burns existed, so this statement is not admissible under rule 801(d)(2)(E).<br><br>A. Gallegos objects to this statement, because "there is a lack of personal knowledge and an overall inability to properly attribute or authenticate the source for those statements that are simply identified with both Joe and Andrew Gallegos, or simply the 'Gallegos brothers.'"  A. Gallegos Response ¶ 5, at 3.  At trial, the witness who relates these statements to the jury will probably identify the declarant with more specificity, and the parties can address personal knowledge and authentication at that point.  It is worth noting, however, that a party offering a statement for its truth under rule 801(d)(2) need not establish that the declarant had personal knowledge.  See Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 602.02[2]("The exception to the rule is a statement admissible under Rule 801(d)(2) as a statement of a party-opponent, where the declarant need not have personal knowledge for the statement to be admissible.").<br><br>J. Gallegos objects to this statement's admission, because it is an action and not a statement.  See |
| Statement 43: "Charlene Baldizan agreed to get rid of the van because the Gallegos brothers knew police were looking for it."<br><br>Declarant: Gallegos brothers<br><br>Source: Charlene Baldizan<br><br>Date: On or about November 12, 2012<br><br>Objections: A. Gallegos Response, J. Gallegos Response | The Court has not found that a conspiracy to murder Adrian Burns existed, so this statement is not admissible under rule 801(d)(2)(E).<br><br>A. Gallegos objects to this statement, because "there is a lack of personal knowledge and an overall inability to properly attribute or authenticate the source for those statements that are simply identified with both Joe and Andrew Gallegos, or simply the 'Gallegos brothers.'"  A. Gallegos Response ¶ 5, at 3.  At trial, the witness who relates these statements to the jury will probably identify the declarant with more specificity, and the parties can address personal knowledge and authentication at that point.  It is worth noting, however, that a party offering a statement for its truth under rule 801(d)(2) need not establish that the declarant had personal knowledge.  See Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 602.02[2]("The exception to the rule is a |

| | statement admissible under Rule 801(d)(2) as a statement of a party-opponent, where the declarant need not have personal knowledge for the statement to be admissible."). |
|---|---|
| Statement 44: "Joe and Andrew Gallegos asked Jason Van Veghel to clean up the living room and pull the carpet up and gave him 2-3 hits of heroin for it.  Joe Gallegos also asked Van Veghel to clean blood off air compressor."<br><br>Declarant: Joe Gallegos<br><br>Source: Jason Van Veghel<br><br>Date: On or about November 13, 2012<br><br>Objections: A. Gallegos Response, J. Gallegos Response | United States orally struck "and Andrew" from statement 44.<br><br>J. Gallegos objects to this statement, because Van Veghel "has never been alleged or identified as a co-conspirator." J. Gallegos Response ¶ 5, at 4.  After J. Gallegos filed his response, the United States orally identified Van Veghel as a conspirator at the Court's <u>James</u> hearing.  Additionally, whether a statement is admissible under rule 801(d)(2)(E) depends on whether the statement was made by a conspirator and not on whether the statement was made to a conspirator.<br><br>Rule 801(d)(2)(E) does not apply to this statement, however, because the Court has not found that a conspiracy to murder Adrian Burns existed.  Nonetheless, Van Veghel can testify regarding the actions he took and any instructions he received without running afoul of the rule against hearsay. |
| Statement 45: "The next day, at Joe Gallegos request, Andrew Gallegos threw a set of keys and a wrist watch into a field."<br><br>Declarant: Andrew Gallegos<br><br>Source: Jason Van Veghel<br><br>Date: On or about November 13, 2012<br><br>Objections: A. Gallegos Response, J. Gallegos Response | The Court has not found that a conspiracy to murder Adrian Burns existed, so this statement is not admissible under rule 801(d)(2)(E).  Van Veghel can testify regarding the actions he observed, such as A. Gallegos throwing a set of keys and a wrist watch into a field, without running afoul of the rule against hearsay, however. |
| Statement 46: "Joe Gallegos found out the police were coming to search the house and he gave several guns and other stolen goods to Jason Van Veghel to store elsewhere."<br><br>Declarant: Joe Gallegos | The Court has not found that a conspiracy to murder Adrian Burns existed, so this statement is not admissible under rule 801(d)(2)(E).<br><br>Van Veghel can testify regarding actions he observed -- such as J. Gallegos giving him several guns and stolen goods -- without running afoul of the rule against hearsay. Statements indicating why J. Gallegos was giving Van Veghel those guns and goods are admissible as |

- 89 -

| | |
|---|---|
| Source: Jason Van Veghel<br><br>Date: On or about November 13, 2012<br><br>Objections: A. Gallegos Response, J. Gallegos Response | circumstantial evidence of J. Gallegos' state of mind or as statements of J. Gallegos' then-existing state of mind under rule 803(3).<br><br>J. Gallegos argues that this statement is "inconsistent with the discovery provided." J. Gallegos response ¶ 7, at 5. J. Gallegos can impeach this statement based on that inconsistency, but it does not render the statement inadmissible. |
| Statement 47: "Santos Gonzales told Gomez 'You remember me?' They then told Gomez that Joe Gallegos put a hit out and they were there to kill him."<br><br>Declarant: Santos Gonzales<br><br>Source: Jose Gomez<br><br>Date: On or about February 27, 2016<br><br>Objection: J. Gallegos Response | J. Gallegos argues that this statement is inadmissible, because "Santos Gonzalez is not expected to testify and this statement is contained in the factual portion of his plea agreement." J. Gallegos Response ¶ 8, at 5. The United States probably reused language from Gonzalez' plea agreement when drafting the <u>James</u> Proffer, but that does not render Jose Gomez' testimony relating the substance of Gonzalez' out-of-court statement inadmissible.<br><br>Any statements that J. Gallegos made ordering others to kill Gomez are admissible against J. Gallegos under rule 801(d)(2)(A). Statements that those others made to Gomez are either circumstantial evidence of the declarant's state of mind or statements of then-existing state of mind, specifically their motive for assaulting Gomez. |
| Statement 48: "Shauna Gutierrez said 'they didn't finish him' when Gomez ran away."<br><br>Declarant: Shauna Gutierrez<br><br>Source: Brandy Rodriguez<br><br>Date: On or about February 27, 2016<br><br>Objections: J. Gallegos Response | United States orally indicated that this statement will only come in if Brandy Rodriguez testifies to it. <u>See</u> Mar. 13 Tr. at 41:7-12 (Castellano). Consequently, J. Gallegos' assertion that "neither the declarant nor the source is expected to testify." J. Gallegos Response ¶ 48, at 5. If B. Rodriguez testifies, then J. Gallegos' assertion is false. If B. Rodriguez does not testify, this statement will not be offered into evidence, so whether it is admissible is moot.<br><br>J. Gallegos also asserts that "there is no indicia of trustworthiness based on the multiple versions of statements given by" B. Rodriguez and Gutierrez. J. Gallegos ¶ 9, at 5. J. Gallegos can argue to the jury that this statement is untrustworthy, but that does not render the statement inadmissible unless the United States relies upon an exception to the hearsay rule that has indicia of trustworthiness -- or the lack of indicia of untrustworthiness -- as an element. <u>See</u>, <u>e.g.</u>, Fed. R. Evid. 803(6)(E) |
| Statement 49: "Santos Gonzalez and Paul Rivera knocked on the | |