# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                         No. CR 15-4268 JB

ANGEL DELEON
JOE LAWRENCE GALLEGOS
EDWARD TROUP, a.k.a. "Huero Troup;"
LEONARD LUJAN
BILLY GARCIA, a.k.a. "Wild Bill;"
EUGENE MARTINEZ, a.k.a. "Little Guero;"
ALLEN PATTERSON;
 CHRISTOPHER CHAVEZ, a.k.a. "Critter;"
JAVIER ALONSO, a.k.a. "Wineo;"
ARTURO ARNULFO GARCIA, a.k.a. "Shotgun;"
BENJAMIN CLARK, a.k.a. "Cyclone;"
RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper;"
JERRY MONTOYA, a.k.a. "Boxer;"
MARIO RODRIGUEZ, a.k.a. "Blue;"
TIMOTHY MARTINEZ, a.k.a. "Red;"
MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts;"
DANIEL SANCHEZ, a.k.a. "Dan Dan;"
GERALD ARCHULETA, a.k.a. "Styx," a.k.a. "Grandma;"
CONRAD VILLEGAS, a.k.a. "Chitmon;"
ANTHONY RAY BACA, a.k.a. "Pup;"
ROBERT MARTINEZ, a.k.a. "Baby Rob;"
ROY PAUL MARTINEZ, a.k.a. "Shadow;"
CHRISTOPHER GARCIA;
CARLOS HERRERA, a.k.a. "Lazy;"
RUDY PEREZ, a.k.a. "Ru Dog;"
ANDREW GALLEGOS, a.k.a. "Smiley;"
SANTOS GONZALEZ;
PAUL RIVERA;
SHAUNA GUTIERREZ;
BRANDY RODRIGUEZ

     Defendants.

## COURT'S SECOND DRAFT OF TABLE TO BE INCLUDED IN THE IMPENDING MEMORANDUM OPINION AND ORDER REGARDING THE *JAMES* ISSUE
### (provided to the parties on April 9, 2018)

**DRAFT JAMES TABLE**

| Statement | Objections | Ruling |
|---|---|---|
| Statement 1: "Billy Garcia tasked Leonard Lujan with finding an inmate to carry out the murders of Garza and Castillo.   The murders were to be executed simultaneous."<br><br>Declarant: B. Garcia<br>Source: Leonard Lujan | Chavez      Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E).   See Draft Hearing Transcript at 9:13-10:8 (Castellano, Stemo)(held March 13, 2018)("Tr.")[1]  The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez Response ¶ 4, at 2; Patterson Response ¶ 5, at 2.  The Court will give a limiting instruction as to A. Garcia, A. Gallegos, and Gutierrez. |
| Statement 2: "Billy Garcia wanted Castillo and Garza 'to be taken out' by strangulation."<br><br>Declarant: B. Garcia<br>Source: Leonard Lujan | Chavez      Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E).   See Tr. at 10:9-13 (Castellano, Stemo).   The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez Response ¶ 5, at 2; Patterson Response ¶ 6, at 2-3.  The Court will give a limiting instruction as to A. Garcia, A. Gallegos, and Gutierrez. |
| Statement 3: "The Castillo and Garza murders were an order.   Anyone who did not follow that order was to be killed as well."<br><br>Declarant: B. Garcia<br>Source: Leonard Lujan | Chavez      Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E).   See Tr. at 10:14-11:2 (Castellano, Stemo).  The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez Response ¶ 6, at 2; Patterson Response ¶ 7, at 3.  The Court will give a limiting instruction as to A. Garcia, A. Gallegos, and Gutierrez. |
| Statement 4: "Billy Garcia was planning to kill everyone in the unit with a green | Chavez      Response, Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, specifically his plan, so it is admissible for its truth as |

---

[1] The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

| | | |
|---|---|---|
| light but was starting with Castillo and Garza." <br><br> Declarant: B. Garcia <br> Source: Leonard Lujan | | against all the Defendants under rule 803(3). See Tr. at 11:3-10 (Castellano, Stemo). The Court accordingly denies Chavez' and Patterson's objections. See Chavez Response ¶ 7, at 2; Patterson Response ¶ 8, at 3-4. |
| Statement 5: "These murders needed to be done because the SNM gang was losing status with other gangs." <br><br> Declarant: B. Garcia <br> Source: Leonard Lujan | Chavez     Response, Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, specifically his motive, so it is admissible for its truth as against all the Defendants under rule 803(3). See Tr. at 11:11-22 (Castellano, Stemo). The Court accordingly denies Chavez' and Patterson's objections. See Chavez Response ¶ 8, at 3; Patterson Response ¶ 9, at 4. |
| Statement 6: "Leonard Lujan tells Eugene Martinez 'I'm telling you right now where it's coming from and everything,' referring to Billy Garcia." <br><br> Declarant: Leonard Lujan (first-level) and B. Garcia (second-level). <br> Source: Leonard Lujan,     Eugene Martinez | Chavez     Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E). See Tr. at 11:23-12:7 (Castellano, Stemo). The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez Response ¶ 4, at 2; Patterson Response ¶ 10, at 4. The Court will give a limiting instruction as to A. Garcia, A. Gallegos, and Gutierrez. |
| Statement 7: "Billy Garcia ordered the murder   of   Castillo   due   to   him cooperating with law enforcement." <br><br> Declarant: B. Garcia. <br> Source: Leonard Lujan | Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, specifically his motive, so it is admissible for its truth as against all the Defendants under rule 803(3). See Tr. at 12:8-16 (Castellano, Stemo). The Court accordingly denies Patterson's objection. See Patterson Response ¶ 11, at 4-5. |
| Statement   8:   "Billy   Garcia   ordered Garza to be killed for being a former Los Carnales member." <br><br> Declarant: B. Garcia <br> Source: Leonard Lujan | Chavez     Response, Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, specifically his motive, so it is admissible for its truth as against all the Defendants under rule 803(3). See Tr. at 12:17-25 (Castellano, Stemo). The Court accordingly denies Chavez' and Patterson's objections.   See Chavez Response ¶ 10, at 3-4; Patterson Response ¶ 12, at 5. |

| | | |
|---|---|---|
| Statement 9: "'What the fuck is going on? I sent word a long time ago to clean house.' Billy Garcia was upset Leonard Lujan had not taken charge in the facility."<br><br>Declarant: B. Garcia<br>Source: Leonard Lujan | Chavez Response, Patterson Response | This statement could be offered for a non-hearsay purpose, _i.e._, as circumstantial evidence of B. Garcia's state of mind.<br><br>This statement is also admissible for its truth against the Counts 1 and 2 Defendants under rule 801(d)(2)(E), because B. Garcia's recrimination regarding Lujan's failure to act appear calculated to spur Lujan to take further action towards the Castillo and Garza murders. See Tr. at 13:1-24 (Castellano, Stemo). The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez Response ¶ 11, at 4; Patterson Response ¶ 13, at 5-6. If the statement is offered for its truth, the Court will give a limiting instruction as to A. Garcia, A. Gallegos, and Gutierrez. |
| Statement 10: "Leroy Lucero received word from Billy Garcia that several hits were supposed to happen. Garcia told him he didn't need help since Lucero was getting out."<br><br>Declarant: B. Garcia<br>Source: Leroy Lucero | Chavez Response, Patterson Response | Part of this statement is a statement of B. Garcia's then-existing state of mind, specifically his plans, so that portion of the statement is admissible as against all of the Defendants under rule 803(3). The remainder of the statement, B. Garcia's direction to Lucero, is a statement in furtherance of the Counts 1 and 2 conspiracies, because B. Garcia, in declining Lucero's help, is arranging the details of the Castillo and Garza murders. See Tr. at 15:15-22 (Castellano, Stemo). Accordingly, the statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E). The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez Response ¶ 12, at 4; Patterson Response ¶ 14, at 6. The Court will give a limiting instruction as to A. Garcia, A. Gallegos, and Gutierrez. |
| Statement 11: "Leroy Lucero confirmed the message that several hits were supposed to happen with Angel Munoz. | Chavez Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies, under rule 801(d)(2)(E). See Tr. at 16:12-17:4 (Castellano, Stemo). The Court's findings of fact |

| | | |
|---|---|---|
| Munoz said 'Something has to happen Carnal Billy's on his way.'"<br><br>Declarant: Angel Munoz<br>Source: Leroy Lucero | | indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez Response ¶ 13, at 4-5; Patterson Response ¶ 15, at 6. The Court will give a limiting instruction as to A. Garcia, A. Gallegos, and Gutierrez. |
| Statement 12: "Leonard Lujan met with Eugene Martinez and tasked him with the murder of Garza by strangulation and told Martinez to pick people to help."<br><br>Declarant: Leonard Lujan<br>Source:   Leonard   Lujan,   Eugene Martinez | Chavez        Response, Patterson Response | This statement is admissible for its truth against the Count 2 conspirators under rule 801(d)(2)(E).   See Tr. at 17:4-16 (Castellano, Stemo).   The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see FOF, so the Court denies their objections, see Chavez Response ¶ 14, at 5; Patterson Response ¶ 16, at 6-7. The Court will give a limiting instruction as to A. Garcia, A. Gallegos, J. Gallegos, Gutierrez, and Troup. |
| Statement 13: "Leonard Lujan met with Joe   Gallegos,   Angel   DeLeon,   and 'Criminal'[2]   and   ordered   Castillo murdered by strangulation."<br><br>Declarant: Leonard Lujan<br>Source: Leonard Lujan | J. Gallegos Response, Patterson Response | The James Proffer lists Leonard Lujan as both this statement's declarant and its source.   See James Proffer at 8.   Agent Stemo's testimony indicates that she is aware of the this out-of-court Lujan statement via another out-of-court statement, which Lujan made circa 2007.   See Tr. at 65:7-16 (Benjamin, Stemo).   The latter statement was made long after the Count 1 conspiracy ended with Castillo's death, so it is not admissible under rule 801(d)(2)(E). The   initial   statement,   however,   was   made   during   and   in furtherance of the Count 1 conspiracy was made during and in furtherance   of   the   Count   1   conspiracy   by   a   member   of   that conspiracy.   See Tr. at 17:17-24, 18:20-19:1 (Castellano, Stemo). Patterson is not a member of the Count 1 conspiracy, see FOF, so the Court grants Patterson's objection insofar as it requests a limiting instruction, see Patterson Response ¶ 17, at 7.<br><br>J. Gallegos requests the opportunity to voir dire Lujan, because "he is referred to in an audio recording by Leroy Lucero as 'crazy |

---

[2]"Criminal" refers to Michael Jaramillo.  See Tr. at 130:24-131:1 (Castellano, Stemo).

Leonard, no one would believe Leonard.'"  J. Gallegos Response ¶ 1, at 3.  The Court denies that request, because voir dire is not an appropriate mechanism for testing Lujan's credibility.

J. Gallegos argues that this statement is an action -- giving an order -- and not a statement.  See J. Gallegos Response ¶ 1, at 3; Tr. at 64: 11-13 (Benjamin).  Under the Federal Rules of Evidence, a statement must be an assertion.  See Fed. R. Evid. 801(a)("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.").   J. Gallegos is correct insofar as orders and commands -- e.g., "fetch me a shrubbery" -- like questions -- e.g., "what do you want to eat for lunch?" -- are not assertions, because they are neither true nor false.   Consequently, orders and questions cannot be hearsay both because hearsay must be a statement, see Fed. R. Evid. 801(c)("'Hearsay' means a statement . . . ."), and because an utterance that is neither true nor false cannot be offered "to prove the truth of the matter asserted," Fed. R. Evid. 801(c)(2).

While orders and commands are not, themselves, assertions they may -- like questions -- contain implicit assertions.  See United States v. Summers, 414 F.3d 1287, 1298 (10th Cir. 2005)(Kelly, J.)(concluding that a defendant's question -- "'How did you guys find us so fast?'" -- was an implicit assertion of "both guilt and wonderment at the ability of the police to apprehend the perpetrators of the crime so quickly").[3]  As an example, ordering

_____

[3]At least according to Aristotle, contingent predictions are another example of utterances that are neither true nor false:

In the case of that which is or which has taken place, propositions, whether positive or negative, must be true or false.  Again, in the case of a pair of contradictories, either when the subject is universal and the propositions are of a universal character, or when it is individual, as has been said,[] one of the two must be true and the other false . . . .

|  |  | someone to "give me one pound of your best marijuana" implicitly asserts that the person to whom the order is addressed possess a controlled substance.   Likewise, asking someone whether they stopped beating their wife is implicitly an assertion both that the person questioned is married and an assertion that, at one point, they abused their wife.  Thus, the orders that the <u>James</u> Proffer identifies can qualify as hearsay if those orders contain implicit assertions. |
|  |  | Listing orders in the <u>James</u> Proffer is useful, even if those orders do not contain implicit assertions, because people often make |

---

When the subject, however, is individual, and that which is predicated of it relates to the future, the case is altered.  For if all propositions whether positive or negative are either true or false, then any given predicate must either belong to the subject or not, so that if one man affirms that an event of a given character will take place and another denies it, it is plain that the statement of the one will correspond with reality and that of the other will not. For the predicate cannot both belong and not belong to the subject at one and the same time with regard to the future.

. . . .

[T]o say that neither the affirmation nor the denial is true, maintaining, let us say, that an event neither will take place nor will not take place, is to take up a position impossible to defend.  In the first place, though facts should prove the one proposition false, the opposite would still be untrue.  Secondly, if it was true to say that a thing was both white and large, both these qualities must necessarily belong to it; and if they will belong to it the next day, they must necessarily belong to it the next day.  But if an event is neither to take place nor not to take place the next day, the element of chance will be eliminated.  For example, it would be necessary that a sea-fight should neither take place nor fail to take place on the next day.

. . . .

A sea-fight must either take place to-morrow or not, but it is not necessary that it should take place to-morrow, neither is it necessary that it should not take place, yet it is necessary that it either should or should not take place to-morrow. Since propositions correspond with facts, it is evident that when in future events there is a real alternative, and a potentiality in contrary directions, the corresponding affirmation and denial have the same character.

Aristotle, <u>On Interpretation</u> § I, Pt. 9, <u>available at</u> http://classics.mit.edu/Aristotle/interpretation.html.

| | | |
|---|---|---|
| | | orders in quick succession, and -- if they are not lawyers -- they do not always scrupulously distinguish between the two. Statement 13 indicates that Lujan ordered others to kill Castillo, but Lujan may unexpectedly testify that he told those people that he wanted them to kill Castillo, which is a statement regarding Lujan's desires and not, technically, an order.  Alternatively, Lujan may testify both that he gave the order that Statement 13 describes and he may indicate that he also made statements regarding the reasons for that order or other associated statements.<br><br>That the United States lists orders in the <u>James</u> Proffer is prudent, because it permits the Defendants and the Court to consider and argue, respectively, whether those orders contain implicit assertions.  It also permits the Court to make findings that will permit it to quickly rule on unexpected statements closely associated with those orders, <u>e.g.</u>, if an order was made during a conspiracy by a conspirator then statements made by the same person at much the same time were also made during a conspiracy by a conspirator.[4]  Further, if the United States did not list orders in the <u>James</u> Proffer, the Defendants could complain at trial -- perhaps legitimately -- regarding unfair surprise.  Accordingly, the Court denies J. Gallegos' objection that "this is not a statement." J. Gallegos Response ¶ 1, at 3. |
| Statement 14: "Billy Garcia wanted knowledge of the plan kept to very few individuals."<br><br>Declarant: B. Garcia<br>Source: Leonard Lujan | Chavez Response, Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, so it is admissible for its truth against all the Defendants under rule 803(3).  <u>See</u> Tr. at 19:2-9 (Castellano, Stemo).  The Court accordingly denies Chavez' and Patterson's objections.  <u>See</u> Chavez Response ¶ 15, at 5; Patterson Response ¶ 18, at 7-8. |
| Statement 15: "Once alarms were sounded and the murders discovered, | Chavez Response, Patterson Response | This statement was made after Castillo and Garza died, so it was not made during the Counts 1 and 2 conspiracies.  Accordingly, it |

---

[4]Whether a statement was made in furtherance of a conspiracy, however, will depend on the content of the statement.

| | | |
|---|---|---|
| Billy Garcia congratulated Leonard Lujan with 'Amor.'"<br><br>Declarant: B. Garcia<br>Source: Leonard Lujan | | is not admissible under rule 801(d)(2)(E).<br><br>The United States could offer this statement as circumstantial evidence of B. Garcia's state of mind, however. Consequently, the Court grants Chavez' and Patterson's objections to admitting this statement for its truth under rule 801(d)(2)(E), see Chavez Response ¶ 15, at 16; Patterson Response ¶ 19, at 8, but the Court may admit this statement for a non-hearsay purpose. |
| Statement 16: "Frederico Munoz part of the committee that sanctioned the hit on Garza and Castillo.  Munoz wanted Garza killed for being Los Carnales."<br><br>Declarant: B. Garcia<br>Source: Federico Munoz | Chavez Response, Patterson Response | |
| Statement 17: "Arturo Garcia placed hit on Sanchez because he was suspected to be cooperating with law enforcement."<br><br>Declarant: A. Garcia<br>Source: Eric Duran | None. | This is a statement of A. Garcia's then-existing state of mind, so it is admissible for its truth against all the Defendants under rule 803(3).  See Tr. at 20:16-21:1 (Castellano, Stemo). |
| Statement 18: "Ben Clark passed around paperwork on Sanchez's cooperation with police.  Stating 'everyone who needs to see it has seen it, get rid of it.'"<br><br>Declarant: Clark<br>Source: Ruben Hernandez | None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Tr. at 21:2-13 (Castellano, Stemo). The act of passing around paperwork -- see supra Statement 13 regarding the relationship between acts and statements -- because the paperwork indicated that the Sanchez murder was a legitimate SNM hit, which induced further action on the part of conspirators. Destroying the paperwork afterward furthered the conspiracy by preventing law enforcement from learning of -- and potentially preventing -- the planned Sanchez murder. |
| Statement 19: "Arturo Garcia wrote to Frankie Gonzales that Brian and Raymond Rascon were to take care of | None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Tr. at 21:14-22:1 (Castellano, |

| | | |
|---|---|---|
| the next murder for SNM."<br><br>Declarant: A. Garcia<br>Source: Javier Alonso | | Stemo). |
| Statement 20: "Ben Clark put Javier Alonso in charge of making sure Sanchez was killed and told the Rascon brothers to complete the hit."<br><br>Declarant: Clark<br>Source: Javier Alonso | None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Tr. at 22:2-10 (Castellano, Stemo). |
| Statement 21: "Word was sent from the green pod that if Sanchez was not killed, others in the Blue pod would be killed."<br><br>Declarant: FNU LNU<br>Source: Javier Alonso | None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Tr. at 22:11-23:1 (Castellano, Stemo). |
| Statement 22: "Edward Troup was told to go help with Sanchez's murder."<br><br>Declarant: Javier Alonso<br>Source: Javier Alonso | None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E). See Tr. at 23:15-21 (Castellano, Stemo). |
| Statement 23: "While Edward Troup and Javier Alonso were finishing killing Sanchez, Brian and Raymond Rascon came and asked if they could help."<br><br>Declarant:   Brian   Rascon   and/or Raymond Rascon<br>Source: Javier Alonso | Troup Response | This statement is actually an action -- specifically an offer -- and not an assertion, so it cannot be hearsay.  See Tr. 23:22-24:14 (Stemo).<br><br>The Rascon brothers were tasked to do the hit originally but when Javier Alonso approached them   Raymond Rascon said they didn't want to do it because they were short to the door, meaning they were going to get out of prison shortly therefore Javier Alonso show instructed Edward Troup and they both went into the cell and took care of business.  When they were doing that, the Rascon brothers came to offer their aid as a way to |

<table>
<tr>
<td></td>
<td></td>
<td>save face with the gang.

Tr. at 24:3-11 (Stemo). <u>See</u> <u>supra</u> Statement 13 (discussing the relationship between actions and statements). That the Rascon brothers offered their aid after Sanchez' death indicates that the conspiracy to kill Sanchez no longer existed, so any associated statements are not admissible for their truth against the Count 3 conspirators under rule 801(d)(2)(E). <u>See</u> <u>United States v. Alcorta</u>, 853 F.3d 1123, 1139 (10th Cir. 2017)("To be sure, to qualify for the coconspirator exception a statement must have been made during the conspiracy. Statements made after the objectives of the conspiracy have either failed or been achieved are not made during the conspiracy and must be excluded."). Further, that the Rascon brothers refused to kill Sanchez when Alonso approached them indicate that they did not join the Sanchez conspiracy. <u>See</u> Tr. at 24:3-11(Stemo).

Troup argues that this statement lacks a sufficient foundation, because the <u>James</u> Proffer identifies the declarant as "'Brian Rascon and/or Raymond Rascon.'" Troup Response ¶ 4, at 2 (quoting <u>James</u> Proffer at 13). This statement's admissibility does not depend on whether the person who offered assistance is Brian Rascon, Raymond Rascon, or both. <u>See</u> <u>United States v. Brinson</u>, 772 F.3d 1314, 1321-22 (10th Cir. 2014)(concluding that an unidentified declarant's statements were admissible, because they were not offered to prove the truth of the matter asserted). Accordingly, the Court denies Troup's objection. <u>See</u> Troup Response ¶ 4, at 2.</td>
</tr>
<tr>
<td>Statement 24: "Javier Alonso told the Rascon brothers to keep a look out when the brothers asked if they could help."

Declarant: Javier Alonso</td>
<td>None</td>
<td>This statement is actually an action -- giving the Rascon brothers an order -- so it is not hearsay. <u>See</u> Tr. at 24:15-21 (Stemo, Castellano). <u>See</u> <u>also</u> <u>supra</u> Statement 13 (discussing the relationship between actions and statements). That Alonso gave</td>
</tr>
</table>

| | | |
|---|---|---|
| Source: Javier Alonso | | this order after Sanchez' death indicates that any associated statements were not made during the Sanchez conspiracy, so those statements are not admissible for their truth against the Count 3 conspirators under rule 801(d)(2)(E).   See United States v. Alcorta, 853 F.3d at 1139. |
| Statement 25: "Edward Troup kissed Javier Alonso on the cheek and told him he was proud of him." <br><br> Declarant: Edward Troup <br> Source: Javier Alonso | None | This is a statement of Troup's then-existing state of mind, so it is admissible against all Defendants under rule 803(3).  See Tr. at 24:22-25:5 (Castellano, Stemo). |
| Statement 26: "After Sanchez was murdered, Edward Troup began telling Ruben Hernandez that he was next." <br><br> Declarant: Edward Troup <br> Source:   Javier   Alonso;   Ruben Hernandez | None | Agent Stemo's testimony indicates that this statement stands in for several closely associated statements: <br><br> Q.      Following the murder in statement number, was an indication that Edward Troup began telling Ruben Hernandez that he was next? <br><br> A.      Yes. <br><br> Q.      And what was the indication about Ruben Hernandez at or around the time -- at or around the time of the murder? <br><br> A.      I believe Mr. Hernandez did not cover the cameras properly. <br><br> Q.      At that point, according to statements by Javier Alonso and others was Ruben Hernandez seen as possibly scared and weak? <br><br> A.      Yes, he was actually on crutches at the |

| | | time. |
|---|---|---|
| | | Q.     Related to the statement is there another statement related to Edward Troup stating in part that Ruben Hernandez failed to cover the camera because he was scared? |
| | | A.     Yes. |
| | | Tr. at 25:6-24 (Stemo, Castellano). |
| | | To the extent that this is a statement of Troup's plans or a statement regarding how other inmates viewed Hernandez, it is a statement of then-existing state of mind, so it is admissible for its truth under rule 803(3).  To the extent that these statements are offered as circumstantial evidence of Troup's state of mind, they are not offered to prove the truth of the matter asserted, so they are not hearsay. |
| Statement 27: "Arturo Garcia sent word about Sanchez to Ben Clark." <br><br> Declarant: A. Garcia <br> Source: Ben Clark, Eric Duran | None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Tr. at 25:25-26:9 (Castellano, Stemo). |
| Statement 28: "Ben Clark and Arturo Garcia sent several letters about Sanchez to each other." <br><br> Declarant: A. Garcia <br> Source: Ben Clark | None. | Sending letters is an action and not a statement, but the statements in those letters regarding the Sanchez murder are admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Tr. at 26:10-18 (Castellano, Stemo).. |
| Statement 29: "Javier Alonso and Edward Troup were expected to oversee the murder, and Troup told the Rascon brothers to hit Sanchez." | Troup Response | Troup argues that the portion of this statement referring to Benjamin Clark's expectations circa 2007 is not a statement at all. See Troup Response ¶ 5, at 2.  Troup is correct -- expectations are not statements.   Clark can, however, testify about what his |

| | | |
|---|---|---|
| Declarant: Ben Clark<br>Source: Ben Clark | | expectations were at that time.  If, however, this statement refers to expectations that belong to someone other than Clark, the United States would need to establish how Clark knows about those expectations.  If that foundation is statements of someone's then-existing state of mind, then those statements are admissible under rule 803(3).   If that foundation is statements that are circumstantial evidence of the declarant's state of mind then those statements are not offered to prove the truth of the matter asserted, so they are not hearsay.  In any event, the Court denies Troup's objection.  See Troup Response ¶ 5, at 2.<br><br>That Troup told the Rascon brothers to hit Sanchez is an order and not a statement, see supra Statement 13 (discussing the relationship between actions and statements), but any associated statement that Troup made are admissible against the Count 3 conspirators under rule 801(d)(2)(E), see Tr. at 26:19-27:1 (Castellano, Stemo).  That the Rascon brothers refused to murder Sanchez indicates that they did not join the Count 3 conspiracy.  See Tr. at 24:3-11 (Stemo).   A rule 801(d)(2)(E) statement, however, needs to be made by a conspirator, but it does not need to be made to a conspirator.  See Fed. R. Evid. 801(d)(2)(E).  Consequently, that the Rascon brothers did not join the Count 3 conspiracy does not affect whether Troup's statements are admissible under rule 801(d)(2)(E). |
| Statement 30: "Leonard Lujan told Willie Amador and Jesse Ibarra to "handle that" and told Eugene Martinez that 'I'm running this prison now.'"<br><br>Declarant: Lujan | Chavez      Response, Patterson Response | |
| Statement 31: "Christopher Chavez heard about the hit on Garza and volunteered to participate in the | B.  Garcia Response, Patterson Response | This statement is not hearsay, because Chavez' act, volunteering to participate in the Garza murder, is neither true nor false.  The Court anticipates that there are other statements associated with |

| | | |
|---|---|---|
| operation." <br><br> Declarant: Chavez | | Chavez' act which could be offered for their truth.  For example, it would have been natural for Chavez to state that he wanted to participate in the Garza murder, which would be a statement of then-existing state of mind under rule 803(3).  Any statements made by Count 3 conspirators attempting to induce Chavez to volunteer would have been made during and in furtherance of the Count 3 conspiracy, so they would be admissible for their truth under rule 801(d)(2)(E) as to the Count 3 conspirators. |
| Statement 32: "Willie Amador told Eugene Martinez to be lookout during the Garza murder and stated, 'If something happens, you already know.'" <br><br> Declarant: Amador | Chavez Response, Patterson Response | This statement was made during and in furtherance of the Count 2 conspiracy and it was made by Willie Amador, a member of that conspiracy.  It is not testimonial.  Accordingly, the statement is admissible for its truth against the Count 2 conspirators under rule 801(d)(2)(E). |
| Statement 33: While strangling Garza someone in the room yelled 'Close the door!'" <br><br> Declarant: Patterson or Chavez | B. Garcia Response | B. Garcia argues that, because the <u>James</u> Proffer lists this statement's declarant as "Allen Patterson or Christopher Chavez," <u>James</u> Proffer at 18, "[t]here is no ability to properly attribute or authenticate the statement to any particular declarant."  B. Garcia ¶ 5, at 2-3. <br><br> This statement -- "Close the door!" -- is a command, so it is neither true nor false.  Accordingly, it is not a statement offered for its truth.  Additionally, it is nontestimonial. <br><br> As to authentication, rule 901 states that "the proponent [of an item of evidence] must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 609(a).  Accordingly, so long as the United States claims only that this statement was made by either Patterson or Chavez, |

| | | it only needs, under rule 609, to introduce evidence sufficient to support a finding that one of those two individuals made the statement.  See Fed. R. Evid. 609(a).  The testimony of the witness who relates this statement to the jury -- assuming that the witness has knowledge -- satisfies that requirement.  See Fed. R. Evid. 609(b)(1)(stating that the testimony of a witness with knowledge satisfies rule 609's authentication requirement). |
|---|---|---|
| Statement 34: "Leonard Lujan approached Eugene Martinez and told him to talk to Willie Amador about the murders."<br><br>Declarant: Lujan | Chavez Response, Patterson Response | |
| Statement 35: "Eugene Martinez asked Billy Garcia and Garcia confirmed the order and said 'it's coming from me' and 'make sure it happens.'"<br><br>Declarant: B. Garcia | Chavez Response, Patterson Response | |
| Statement 36: "Joe Gallegos later informed Leroy Lucero that Lawrence Torres saw and was concerned Torres might snitch."<br><br>Declarant: J. Gallegos | B. Garcia Response, Chavez Response, A. Gallegos Response, J. Gallegos Response, Patterson Response | The United States orally conceded that this statement is not admissible under rule 801(d)(2)(E) of the Federal Rules of Evidence.  The United States suggested, however, that the statement is admissible against Troup under rule 801(d)(2)(A). The statement also appears to be a statement of then-existing state of mind under rule 803(3). |
| Statement 37: "Edward Troup told Lawrence Torres, 'This has nothing to do with you. Don't come up here.'"<br><br>Declarant: Troup | B. Garcia Response, Chavez Response, Patterson Response | |
| Statement 38: "Angel Deleon had a scratch on his finger and told a female | B. Garcia Response, Chavez Response | |

| | | |
|---|---|---|
| CO that he cut himself." <br><br> Declarant: Deleon | | |
| Statement 39: "Kyle Dwyer came to SNMCF with 'paperwork' on Sanchez." <br><br> Declarant: Dwyer | None | |
| Statement 40: "The 'paperwork' came from the Crazy Town Roswell gang." <br><br> Declarant: Clark | None | |
| Statement 41: "Joe and Andrew Gallegos just pulled 'a job' and had to go 'clean up.' They were giving money and heroin to friends to 'help them out.' Joe Gallegos said, 'I just came up.'" <br><br> Declarant: Joe and/or Andrew Gallegos | A. Gallegos Response, J. Gallegos Response | |
| Statement 42: "Joe and Andrew Gallegos were covered in blood and advised they were 'cleaning the house.' Joe Gallegos later went by Leroy Vallejos' house and tried to give Vallejos his and Andrew Gallegos' truck." <br><br> Declarant: J. Gallegos and A. Gallegos | A. Gallegos Response, J. Gallegos Response | |
| Statement 43: "Charlene Baldizan agreed to get rid of the van because the Gallegos brothers knew police were looking for it." <br><br> Declarant: J. Gallegos and A. Gallegos | A. Gallegos Response, J. Gallegos Response | |
| Statement 44: "Joe and Andrew Gallegos asked Jason Van Veghel to | A. Gallegos Response, J. Gallegos Response | United States orally struck "and Andrew" from statement 44. |

| | | |
|---|---|---|
| clean up the living room and pull the carpet up and gave him 2-3 hits of heroin for it.  Joe Gallegos also asked Van Veghel to clean blood off air compressor." <br><br> Declarant: J. Gallegos | | |
| Statement 45: "The next day, at Joe Gallegos request, Andrew Gallegos threw a set of keys and a wrist watch into a field." <br><br> Declarant: A. Gallegos | A. Gallegos Response, J. Gallegos Response | |
| Statement 46: "Joe Gallegos found out the police were coming to search the house and he gave several guns and other stolen goods to Jason Van Veghel to store elsewhere." <br><br> Declarant: J. Gallegos | A. Gallegos Response, J. Gallegos Response | |
| Statement 47: "Santos Gonzales told Gomez 'You remember me?' They then told Gomez that Joe Gallegos put a hit out and they were there to kill him." <br><br> Declarant: Gonzales | Gutierrez Response, J. Gallegos Response | Gutierrez argues that the James proffer, this statement's de |
| Statement 48: "Shauna Gutierrez said 'they didn't finish him' when Gomez ran away." <br><br> Declarant: Gutierrez | Gutierrez Response, J. Gallegos Response | United States orally indicated that this statement will only come in if Brandy Rodriguez testifies to it. |
| Statement 49: "Santos Gonzalez and Paul Rivera knocked on the door and asked for Gomez.  They then told Charlene Parker-Johnson that she should | Gutierrez Response, J. Gallegos Response | |

| | | |
|---|---|---|
| leave the house."<br><br>Declarant: Santos Gonzalez and/or Paul Rivera | | |
| Statement 50: "Santos Gonzalez and Paul Rivera yelled, 'He's running!' and 'He's getting away!' when Gomez started to run."<br><br>Declarant: Gonzales and/or Rivera | Gutierrez Response, J. Gallegos Response | These are admissible as excited utterances, <u>see</u> Fed. R. Evid. 803(2), or present-sense impressions, <u>see</u> Fed. R. Evid. 803(1). |
| Statement 51: "Joe Gallegos placed a hit on Gomez because Joe Gallegos feared Gomez would testify against him on a state murder charge."<br><br>Declarant: Gutierrez and B. Rodriguez | Gutierrez Response, A. Gallegos Response, J. Gallegos Response | |
| Statement 52: "Upon learning where Gomez was staying, Shauna Gutierrez and Brandy Rodriguez agreed they needed to go after Gomez."<br><br>Declarant: Gutierrez and B. Rodriguez | Gutierrez Response, J. Gallegos Response | |
| Statement 53: "Paul Rivera agreed to help with the hit on Gomez."<br><br>Declarant: Rivera | J. Gallegos Response | |
| Statement 54: "You better not testify against my Jefe, or I'll kill you!"<br><br>Declarant: B. Rodriguez | None | |
| Statement 55: "Santos Gonzales also stated he was going to kill Gomez."<br><br>Declarant: Gonzalez | Gutierrez Response, J. Gallegos Response | |
| Statement 56: "Told Shauna Gutierrez they had completed their mission. | Gutierrez Response, J. Gallegos Response | The Gutierrez statement is a statement of then-existing state of |

| | | |
|---|---|---|
| Shauna Gutierrez laughed and said she was 'happy to hear' Gomez was likely dead." <br><br> Declarant: B. Rodriguez, Rivera, Gonzalez | | mind. See Fed. R. Evid. 803(3). |
| Statement 57: "Shauna Gutierrez told Santos Gonzalez to move the truck they used to another location and leave it for a few days." <br><br> Declarant: Gutierrez | Gutierrez Response, J. Gallegos Response | |
| Statement 58: "'How come you guys didn't do the job more fully?' after she previously told Rivera, Gonzalez, and Rodriguez to 'Go get him.' <br><br> Declarant: Gutierrez | Gutierrez Response, J. Gallegos Response | |
| Statement 59: "Don't Testify" <br><br> Declarant: Rivera | J. Gallegos | |
| Statement 60: "Brandy Rodriguez and Shauna Gutierrez had people in place for an attack on Gomez." <br><br> Declarant: B. Rodriguez | Gutierrez Response, J. Gallegos Response | United States orally indicated that the date refers to Mario Chavez' interview with the FBI. |
| Statement 61: "Joe Gallegos ordered the hit on Gomez, and Shauna Gutierrez planned the hit." <br><br> Declarant: Gutierrez | Gutierrez Response, A. Gallegos Response, J. Gallegos Response | United States orally indicated that the declarant should be Brandy Rodriguez and that it doesn't know whether the statement was made before or after the assault on Gomez. If the statement was made before the assault then it would be a coconspirator statement under rule 801(d)(2)(E). If it was made after the assault, it would be an admission[5] under rule 801(d)(2)(A) or a statement against |

---

[5]But Brandy Rodriguez has pled guilty, so even if it is an admission as to her, it would not be admissible in this trial on that basis.

| | | interest under rule 804(b)(3).[6]  This all applies to statement 60 also. |
|---|---|---|
| Statement 62: "'Paperwork' on Sanchez was delivered from Arturo Garcia to Ben Clark, approving the murder."<br><br>Declarant: A. Garcia | None | |
| Statement 63: "'Cheeky' and 'Coquito' were tasked with the murder of Sanchez but did not want to carry it out."<br><br>Declarant: Cheeky and Coquito | Troup Response | |
| Statement 64: "Javier Alonso asked how to get rid of the marks on his hands from strangling Sanchez."<br><br>Declarant: Alonso | None | |
| Statement 65: "'That'd be messed up if the paperwork on the guy I just got showed up.'  Ben Clark also sent Arturo Garcia a list of names of people in the pod."<br><br>Declarant: Clark | None | |
| Statement 66: "Edward Troup and Javier Alonso attempted to hide in John Montano's cell after lock down after the murder of Sanchez."<br><br>Declarant: Troup and Alonso | Troup Response | United States orally indicated that this statement is actually just an action, but it indicated that it is uncertain whether there were statements made that are associated with that act. |
| Statement 67: "Jimmie Gordon was asked to get information on Garza from | None | |

[6]But there has been no indication that Brandy Rodriguez is unavailable.  That she has already pled guilty indicates that

| | | |
|---|---|---|
| Geraldine Martinez." <br><br> Declarant: Gordon | | |
| Statement 68: "Billy Garcia put a hit on Archuleta which was communicated to Archuleta through 'Baby Zac' over a disagreement about Castillo's murder." <br><br> Declarant: Baby Zac. | B. Garcia Response | |
| Statement 69: "Brandy Rodriguez kicked Gomez and said, 'This is a message from Joe!'" <br><br> Declarant: B. Rodriguez | A. Gallegos Response | |
| Statement 70: "Shauna Gutierrez stated she is 'ride or die' with Joe Gallegos, after admitting that she and Joe Gallegos put a hit on Brandy Rodriguez based on the belief Rodriguez was a cooperator." <br><br> Declarant: Gutierrez | Gutierrez Response, A. Gallegos Response, J. Gallegos Response | The United States indicates that this statement was made in furtherance of a new uncharged conspiracy to harm Brandy Rodriguez for suspected cooperation. Shauna Gutierrez and J. Gallegos are, according to the United States, the members of this conspiracy. United States intends to call this the "conspiracy to hit Brandy Rodriguez." |
| Statement 71: "Christopher Chavez asked 'Is this right?' in reference to the Garza murders and Leroy Lucero said 'you got to do what you got to do.'" <br><br> Declarant: Chavez | B. Garcia Response, Patterson Response | |
| Statement 72: "Javier Alonso asked if the marks on his hands were noticeable." <br><br> Declarant: Alonso | None | |
| Statement 73: "Ordered the surveillance cameras covered." <br><br> Declarant: Troup or Trujillo | Troup Response | |

| | | |
|---|---|---|
| Statement 74: "'Now hurry Bolo now you know what time it is.' (In reference to covering the cameras.)"<br><br>Declarant: Trujillo | None | |
| Statement 75: "Just stay there and don't let no one in, use your crutch to block the door if you have to."<br><br>Declarant: Trujillo | None | |
| Statement 76: "'Ya stuvo (all done) take them off.'   (In reference to the camera covers.)"<br><br>Declarant: Trujillo | None | |
| Statement 77: Kyle asked Ruben Hernandez to take something to Samuel Gonzales and to<br>tell Samuel Gonzales 'that was all he had.'<br><br>Declarant: Kyle Dwyer | Troup Response | |
| Statement 78: "Samuel Gonzales asked if Sanchez was dead, then again asked 'For real is he dead?'"<br><br>Declarant: Gonzales | None | |
| Statement 79: "'Chicky' was cutting his sleeves off and asked Ruben Hernandez to hang up his wet sleeves."<br><br>Declarant: "Chicky" | None | |
| Statement 80: "Edward Troup told 'Chicky' to cut his sleeves in small pieces or give the sleeves to someone | Troup Response | |

| | | |
|---|---|---|
| next door." Declarant: Troup | | |
| Statement 81: "First thing in the morning we need you to move the body in the fetal position and wipe down the toilet." Declarant: Brian Rascon and/or Edward Troup | Troup Response | |
| Statement 82: "'That's what we are all asking of you.' (Told to Ruben Hernandez whenhe didn't want to clean the cell.)" Declarant: Brian Rascon | Troup Response | |
| Statement 83: "'Not that's an order, you already know what time it is.' (Told to Ruben Hernandez when he continued to not want to clean the cell.)" Declarant: Brian Rascon | Troup Response | |
| Statement 84: "Ruben Hernandez asked if he was next for refusing to clean the cell and Brian Rascon said 'no, if the door is closed what can you do?'" Declarant: Brian Rascon | Troup Response | |
| Statement 85: "'Your next mother fucker.' Said to Ruben Hernandez as they passed each other." Declarant: Troup | None | |
| Statement 86: "We better be ready for hell cause we're fixing to go through | None | |

| | | |
|---|---|---|
| hell."<br><br>Declarant: Trujillo | | |
| Statement 87: Edward Troup stated that it was every man for themselves and if you can get a plea bargain for 15 or less do it but 'no fucking ratting,' 'that's a no no.'"<br><br>Declarant: Brian Rascon | Troup Response | |
| Statement 88: "Go wipe down the toilet, don't worry about moving the body."<br><br>Declarant: Brian Rascon | Troup Response | |