# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                     No. CR 15-4268 JB

ANGEL DELEON
JOE LAWRENCE GALLEGOS
EDWARD TROUP, a.k.a. "Huero Troup;"
LEONARD LUJAN
BILLY GARCIA, a.k.a. "Wild Bill;"
EUGENE MARTINEZ, a.k.a. "Little Guero;"
ALLEN PATTERSON;
 CHRISTOPHER CHAVEZ, a.k.a. "Critter;"
JAVIER ALONSO, a.k.a. "Wineo;"
ARTURO ARNULFO GARCIA, a.k.a. "Shotgun;"
BENJAMIN CLARK, a.k.a. "Cyclone;"
RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper;"
JERRY MONTOYA, a.k.a. "Boxer;"
MARIO RODRIGUEZ, a.k.a. "Blue;"
TIMOTHY MARTINEZ, a.k.a. "Red;"
MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts;"
DANIEL SANCHEZ, a.k.a. "Dan Dan;"
GERALD ARCHULETA, a.k.a. "Styx," a.k.a. "Grandma;"
CONRAD VILLEGAS, a.k.a. "Chitmon;"
ANTHONY RAY BACA, a.k.a. "Pup;"
ROBERT MARTINEZ, a.k.a. "Baby Rob;"
ROY PAUL MARTINEZ, a.k.a. "Shadow;"
CHRISTOPHER GARCIA;
CARLOS HERRERA, a.k.a. "Lazy;"
RUDY PEREZ, a.k.a. "Ru Dog;"
ANDREW GALLEGOS, a.k.a. "Smiley;"
SANTOS GONZALEZ;
PAUL RIVERA;
SHAUNA GUTIERREZ;
BRANDY RODRIGUEZ

     Defendants.

## COURTS FOURTH DRAFT OF TABLE TO BE INCLUDED IN THE IMPENDING MEMORANDUM OPINION AND ORDER REGARDING THE JAMES ISSUE
### (provided to the parties on April 11, 2018)

| **James Proffer Statement[21]** | **Ruling** |
|---|---|
| Statement 1: "Billy Garcia tasked Leonard Lujan with finding an inmate to carry out the murders of Garza and Castillo.  The murders were to be executed simultaneous."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections:   Chavez   Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E).[22]  See Mar. 13 Tr. at 9:13-10:8 (Castellano, Stemo).  Chavez and Patterson are members of the Count 2 conspiracy, see supra FOF ¶ 6, so the Court overrules their objections, see Chavez Response ¶ 4, at 2; Patterson Response ¶ 5, at 2. |
| Statement 2: "Billy Garcia wanted Castillo and Garza 'to be taken out' by strangulation."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections:   Chavez   Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E).  See Mar. 13 Tr. at 10:9-13 (Castellano, Stemo).  The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see supra FOF ¶ 6, so the Court overrules their objections, see Chavez Response ¶ 5, at 2; Patterson Response ¶ 6, at 2-3. |

---

[21]The James Proffer lists eighty-eight statements that the United States intends to offer into evidence as coconspirator statements under rule 801(d)(2)(E) of the Federal Rules of Evidence.  The United States apparently compiled those statements from its pretrial interviews with potential witnesses, which the James Proffer denominates sources.  The Court anticipates, however, that the United States will present the James Proffer statements to the jury by calling the sources to testify before the jury and not by introducing the source's pretrial statements.

[22]When a statement is admissible against some Trial 2 Defendants and not against all of them, the Court is willing to give a limiting instruction, but the parties will need to request one both to bring the issue to the Court's attention and because the Defendants may not always want the Court to give a limiting instruction -- even when they are entitled to one -- for fear of highlighting and emphasizing testimony's impermissible uses.  See Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose -- but not against another party or for another purpose -- the court, **on timely request**, must restrict the evidence to its proper scope and instruct the jury accordingly."  (emphasis added)).

| | |
|---|---|
| Statement 3: "The Castillo and Garza murders were an order. Anyone who did not follow that order was to be killed as well."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E).  See Mar. 13 Tr. at 10:14-11:2 (Castellano, Stemo).  The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see supra FOF ¶ 6, so the Court overrules their objections, see Chavez Response ¶ 6, at 2; Patterson Response ¶ 7, at 3. |
| Statement 4: "Billy Garcia was planning to kill everyone in the unit with a green light but was starting with Castillo and Garza."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, specifically his plan, so it is admissible for its truth under rule 803(3).  See Mar. 13 Tr. at 11:3-10 (Castellano, Stemo).  The Court accordingly overrules Chavez' and Patterson's objections.  See Chavez Response ¶ 7, at 2; Patterson Response ¶ 8, at 3-4. |
| Statement 5: "These murders needed to be done because the SNM gang was losing status with other gangs."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, specifically his motive, so it is admissible under rule 803(3).  See Mar. 13 Tr. at 11:11-22 (Castellano, Stemo).  The Court accordingly overrules Chavez' and Patterson's objections.  See Chavez Response ¶ 8, at 3; Patterson Response ¶ 9, at 4. |
| Statement 6: "Leonard Lujan tells Eugene Martinez 'I'm telling you right now where it's coming from and everything,' referring to Billy | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E).  See Mar. 13 Tr. at 11:23-12:7 (Castellano, Stemo).  Chavez and Patterson are members of the Count 2 conspiracy, see supra FOF ¶ 6, so the Court overrules their |

| | |
|---|---|
| Garcia."<br><br>Declarant: Leonard Lujan (first-level) and Billy Garcia (second-level).<br><br>Source: Leonard Lujan, Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | objections, see Chavez Response ¶ 4, at 2; Patterson Response ¶ 10, at 4. |
| Statement 7: "Billy Garcia ordered the murder of Castillo due to him cooperating with law enforcement."<br><br>Declarant: Billy Garcia.<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, specifically his motive, so it is admissible under rule 803(3). See Mar. 13 Tr. at 12:8-16 (Castellano, Stemo). The Court accordingly overrules Patterson's objection. See Patterson Response ¶ 11, at 4-5. |
| Statement 8: "Billy Garcia ordered Garza to be killed for being a former Los Carnales member."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | This statement is a statement of B. Garcia's then-existing state of mind, specifically his motive, so it is admissible under rule 803(3). See Mar. 13 Tr. at 12:17-25 (Castellano, Stemo). The Court accordingly overrules Chavez' and Patterson's objections. See Chavez Response ¶ 10, at 3-4; Patterson Response ¶ 12, at 5. |
| Statement 9: "'What the fuck is going on? I sent word a long time ago to clean house.' Billy Garcia was upset Leonard Lujan had not taken charge in the facility." | This statement could be offered for a purpose other than its truth, e.g., as circumstantial evidence of B. Garcia's state of mind. If it is offered for a non-hearsay purpose, the Court will give a limiting instruction informing the jury that it can use the statement for that limited purpose and not for its truth. |

| | |
|---|---|
| Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections:  Chavez  Response, Patterson Response | This statement is also admissible for its truth against the Counts 1 and 2 Defendants under rule 801(d)(2)(E), because B. Garcia's recrimination regarding Lujan's failure to act appears calculated to spur Lujan to take further action towards the Castillo and Garza murders.  See Mar. 13 Tr. at 13:1-24 (Castellano, Stemo).  Chavez and Patterson are members of the Count 2 conspiracy, see supra FOF ¶ 6, so the Court overrules their objections, see Chavez Response ¶ 11, at 4; Patterson Response ¶ 13, at 5-6. |
| Statement 10: "Leroy Lucero received word from Billy Garcia that several hits were supposed to happen. Garcia told him he didn't need help since Lucero was getting out."<br><br>Declarant: Billy Garcia<br><br>Source: Leroy Lucero<br><br>Date: On or before March 26, 2001<br><br>Objections:  Chavez  Response, Patterson Response | Part of this statement -- "Leroy Lucero received word from Billy Garcia that several hits were supposed to happen" -- is a statement of B. Garcia's then-existing state of mind, specifically his plan, so that portion of the statement is admissible under rule 803(3).   The remainder of the statement, B. Garcia's declination of Lucero's proffered assistance, is a statement in furtherance of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E), because that declination was part of making the arrangements for the Castillo and Garza murders.  See Mar. 13 Tr. at 15:15-22 (Castellano, Stemo).     Accordingly, the statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies under rule 801(d)(2)(E). The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see supra FOF ¶ 6, so the Court overrules their objections, see Chavez Response ¶ 12, at 4; Patterson Response ¶ 14, at 6. |
| Statement 11: "Leroy Lucero confirmed the message that several hits were supposed to happen with Angel  Munoz.     Munoz  said 'Something has to happen Carnal Billy's on his way.'"<br><br>Declarant: Angel Munoz<br><br>Source: Leroy Lucero<br><br>Date: On or before March 26, 2001<br><br>Objections:  Chavez  Response, Patterson Response | This statement is admissible for its truth against the members of the Counts 1 and 2 conspiracies, under rule 801(d)(2)(E).  See Mar. 13 Tr. at 16:12-17:4 (Castellano, Stemo).  Chavez and Patterson are members of the Count 2 conspiracy, see supra FOF ¶ 6, so the Court overrules their objections, see Chavez Response ¶ 13, at 4-5; Patterson Response ¶ 15, at 6. |
| Statement 12: "Leonard Lujan met with Eugene Martinez and tasked | This statement is admissible for its truth against the Count 2 conspirators under rule 801(d)(2)(E).  See Mar. 13 Tr. at |

| | |
|---|---|
| him with the murder of Garza by strangulation and told Martinez to pick people to help.”<br><br>Declarant: Leonard Lujan<br><br>Source: Leonard Lujan, Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | 18:10-21 (Castellano, Stemo).  Chavez and Patterson are members of the Count 2 conspiracy, see supra FOF ¶ 6, so the Court overrules their objections, see Chavez Response ¶ 14, at 5; Patterson Response ¶ 16, at 6-7. |
| Statement 13: “Leonard Lujan met with Joe Gallegos, Angel DeLeon, and ‘Criminal’[23] and ordered Castillo murdered by strangulation.”<br><br>Declarant: Leonard Lujan<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: J. Gallegos Response, Patterson Response | Agent Stemo’s testimony indicates that she is aware of this statement, which Lujan made in 2001, via another out-of-court statement, which Lujan made circa 2007.  See Mar. 13 Tr. at 65:7-16 (Benjamin, Stemo).  The 2007 statement was made long after the Count 1 conspiracy ended, so it is not admissible under rule 801(d)(2)(E).  The earlier statement, however, was made during and in furtherance of the Count 1 conspiracy during and in furtherance of the Count 1 conspiracy by a member of that conspiracy.  See Mar. 13 Tr. at 17:17-24, 18:20-19:1 (Castellano, Stemo). Patterson is not a member of the Count 1 conspiracy, see supra FOF ¶¶ 2-3, so the Court sustains Patterson’s objection insofar as it requests a limiting instruction, which the Court will give at Patterson’s in-court request, see Patterson Response ¶ 17, at 7.<br><br>J. Gallegos requests the opportunity to voir dire Lujan, because “he is referred to in an audio recording by Leroy Lucero as ‘crazy Leonard, no one would believe Leonard.’”  J. Gallegos Response ¶ 1, at 3.  The Court denies that request, because voir dire is not an appropriate mechanism for testing Lujan’s credibility.  J. Gallegos is free to argue to the jury that they should not credit this statement, however.<br><br>J. Gallegos argues that this James Proffer statement is an action -- giving an order -- and not a statement for Federal Rules of Evidence purposes.  See J. Gallegos Response ¶ 1, at 3; Mar. 13 Tr. at 64:11-13 (Benjamin).  Under the Federal Rules of Evidence, all statements are assertions. |

---

[23]“Criminal” refers to Michael Jaramillo.  See Mar. 13 Tr. at 130:24-131:1 (Castellano, Stemo).

|  | <u>See</u> Fed. R. Evid. 801(a)("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.").  <u>See</u> <u>also</u> <u>id.</u> advisory committee notes ("The effect of the definition of 'statement' is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion.").  Verbal actions like orders and commands -- <u>e.g.</u>, "fetch me a shrubbery" -- as well as questions -- <u>e.g.</u>, "what do you want to eat for lunch?" -- are not always assertions, because they are neither true nor false. [24]   <u>See also</u> Fed. R. Evid. 801 advisory committee |

---

[24]At least according to Aristotle, contingent predictions are another example of utterances that are neither true nor false:

> In the case of that which is or which has taken place, propositions, whether positive or negative, must be true or false.  Again, in the case of a pair of contradictories, either when the subject is universal and the propositions are of a universal character, or when it is individual, as has been said,[] one of the two must be true and the other false . . . .

> When the subject, however, is individual, and that which is predicated of it relates to the future, the case is altered.  For if all propositions whether positive or negative are either true or false, then any given predicate must either belong to the subject or not, so that if one man affirms that an event of a given character will take place and another denies it, it is plain that the statement of the one will correspond with reality and that of the other will not. For the predicate cannot both belong and not belong to the subject at one and the same time with regard to the future.

> . . . .

> [T]o say that neither the affirmation nor the denial is true, maintaining, let us say, that an event neither will take place nor will not take place, is to take up a position impossible to defend.  In the first place, though facts should prove the one proposition false, the opposite would still be untrue.  Secondly, if it was true to say that a thing was both white and large, both these qualities must necessarily belong to it; and if they will belong to it the next day, they must necessarily belong to it the next day.  But if an event is neither to take place nor not to take place the next day, the element of chance will be eliminated.  For example, it would be necessary that a sea-fight should neither take place nor fail to take place on the next day.

> . . . .

> A sea-fight must either take place to-morrow or not, but it is not necessary that it

notes ("When evidence of conduct is offered on the theory that it is not a statement, and hence not hearsay, a preliminary determination will be required to determine whether an assertion is intended."). Consequently, orders and questions generally are not hearsay both because hearsay must be a statement, see Fed. R. Evid. 801(c)("'Hearsay' means a statement . . . ."), and because something that is neither true nor false cannot be offered to prove the truth of the matter asserted, see Fed. R. Evid. 801(c)(2). See also Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 801.02[c] ("If proffered evidence is not a 'statement' within the meaning of Rule 801(a), then it cannot be hearsay, and so cannot be excluded under the rule.").

While orders and commands are not, themselves, assertions they may -- like questions -- contain implicit assertions. See United States v. Summers, 414 F.3d 1287, 1298 (10th Cir. 2005)(Kelly, J.)(concluding that a defendant's question -- "'How did you guys find us so fast?'" -- was an implicit assertion of "both guilt and wonderment at the ability of the police to apprehend the perpetrators of the crime so quickly"). For example, a lawyer asking a witness whether the witness stopped beating their wife indicates both that the witness has a wife and that the witness abused their wife. Whether those two indications are assertions, however, depends on the lawyer's intent. See United States v. Summers, 414 F.3d at 1300 ("Taken together, [United States v. Jackson, 88 F.3d 845 (10th Cir. 1996)] and [United States v. Long, 805 F.2d 1572 (D.C. Cir. 1990)(Thomas, J.)] do not foreclose the possibility that a declaration in the form of a question may nevertheless constitute an assertion within the meaning of Rule 801(a) and (c). Rather, both cases properly focus the inquiry on the declarant's intent."). Thus, the verbal acts that the James Proffer identifies can qualify as statements -- and, hence, as hearsay -- if they

should take place to-morrow, neither is it necessary that it should not take place, yet it is necessary that it either should or should not take place to-morrow. Since propositions correspond with facts, it is evident that when in future events there is a real alternative, and a potentiality in contrary directions, the corresponding affirmation and denial have the same character.

Aristotle, On Interpretation § I, Pt. 9, available at http://classics.mit.edu/Aristotle/interpretation.html.

|  | were intended to be assertions. See Fed. R. Evid. 801 advisory committee notes ("The key to the definition is that noting is an assertion unless intended to be one."). The Court, when it comes across verbal actions listed in the James Proffer will, thus, assess whether those verbal acts contain implicit assertions. |
|  | That the United States lists, in the James Proffer, verbal acts is useful even if those verbal acts do not contain implicit assertions, because people often take verbal actions and make statements in quick succession and people who are not lawyers do not always scrupulously distinguish between verbal actions and statements. For instance, Statement 13 indicates that Lujan ordered others to kill Castillo, but Lujan may testify that he told people that "I want you to kill Castillo," which is a statement regarding Lujan's desires. Alternatively, Lujan may testify that he gave the order that Statement 13 describes and immediately followed that order with an explanation regarding why Castillo should be killed. That the United States included Statement 13 in the James Proffer puts the Defendants on notice that Lujan may testify regarding this sort of statements associated with the order that Statement 13 describes. It also allows the Court to make findings that will permit it to rule quickly on unexpected statements closely associated with those orders, e.g., if an order was made during a conspiracy by a conspirator then statements made by the same person at much the same time were also made during a conspiracy by a conspirator.[25] |
| Statement 14: "Billy Garcia wanted knowledge of the plan kept to very few individuals."<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | This is a statement of B. Garcia's then-existing state of mind, so it is admissible for its truth under rule 803(3). See Mar. 13 Tr. at 19:2-9 (Castellano, Stemo). The Court accordingly overrules Chavez' and Patterson's objections. See Chavez Response ¶ 15, at 5; Patterson Response ¶ 18, at 7-8. |
| Statement 15: "Once alarms were | This statement was made after Castillo and Garza died, so |

---

[25]Whether a statement is made in furtherance of a conspiracy, however, depends on the statement's content.

| | |
|---|---|
| sounded and the murders discovered, Billy Garcia congratulated Leonard Lujan with 'Amor.'"<br><br>Declarant: Billy Garcia<br><br>Source: Leonard Lujan<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | it was not made during the Counts 1 and 2 conspiracies. Accordingly, it is not admissible under rule 801(d)(2)(E). It is admissible, however, as an implicit statement of B. Garcia's then-existing state of mind, i.e. that he approves of the job Lujan. See Fed. R. Evid. 803(3). |
| Statement 16: "Frederico Munoz part of the committee that sanctioned the hit on Garza and Castillo.   Munoz wanted Garza killed for being Los Carnales."<br><br>Declarant: Billy Garcia<br><br>Source: Federico Munoz<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | The testimony at the Court's James hearing indicates that Federico Munoz admitted to the information contained in this statement. See Mar. 13 Tr. at 19:25-20:7 (Castellano, Stemo).   Federico Munoz testifying and repeating that admission raises no hearsay issues, because Munoz has personal knowledge regarding his own motives and regarding whether he was part of a group that ordered the Castillo and Garza murders. See Fed. R. Evid. 602. |
| Statement 17: "Arturo Garcia placed hit on Sanchez because he was suspected to be cooperating with law enforcement."<br><br>Declarant: Arturo Garcia<br><br>Source: Eric Duran<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This is a statement of A. Garcia's then-existing state of mind, so it is admissible for its truth against all the Defendants under rule 803(3).   See Mar. 13 Tr. at 20:16-21:1 (Castellano, Stemo). |
| Statement 18: "Ben Clark passed around paperwork on Sanchez's cooperation with police.   Stating 'everyone who needs to see it has | The statement that "everyone who needs to see it has seen it" is admissible against the Count 3 conspirators under rule 801(d)(2)(E).   See Mar. 13 Tr. at 21:2-13 (Castellano, Stemo).   The act of passing around paperwork is not a statement, so it is admissible against all the defendants. |

| | |
|---|---|
| seen it, get rid of it.'" <br><br> Declarant: Ben Clark <br><br> Source: Ruben Hernandez <br><br> Date: On or before June 17, 2007 <br><br> Objections: None | See supra Statement 13 (analyzing the relationship between acts and statements). |
| Statement 19: "Arturo Garcia wrote to Frankie Gonzales that Brian and Raymond Rascon were to take care of the next murder for SNM." <br><br> Declarant: Arturo Garcia <br><br> Source: Javier Alonso <br><br> Date: On or before June 17, 2007 <br><br> Objections: None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E). See Mar. 13 Tr. at 23:1-12 (Castellano, Stemo). |
| Statement 20: "Ben Clark put Javier Alonso in charge of making sure Sanchez was killed and told the Rascon brothers to complete the hit." <br><br> Declarant: Ben Clark <br><br> Source: Javier Alonso <br><br> Date: On or before June 17, 2007 <br><br> Objections: None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E). See Mar. 13 Tr. at 23:13-21 (Castellano, Stemo). |
| Statement 21: "Word was sent from the green pod that if Sanchez was not killed, others in the Blue pod would be killed." <br><br> Declarant: FNU [First Name Unknown] LNU [Last Name Unknown] | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E). See Mar. 13 Tr. at 23:22-24:7 (Castellano, Stemo). |

| | |
|---|---|
| Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | |
| Statement 22: "Edward Troup was told to go help with Sanchez's murder."<br><br>Declarant: Javier Alonso<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Mar. 13 Tr. at 25:2-8 (Castellano, Stemo). |
| Statement 23: "While Edward Troup and Javier Alonso were finishing killing Sanchez, Brian and Raymond Rascon came and asked if they could help."<br><br>Declarant: Brian Rascon and/or Raymond Rascon<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: Troup Response | This statement is a verbal action -- specifically an offer -- and not an assertion, so it cannot be hearsay.  See Mar. 13 Tr. 25:9-26:2 (Castellano, Stemo).<br><br>       The Rascon brothers were tasked to do the hit originally but when Javier Alonso approached them.  Raymond Rascon said they didn't want to do it because they were short to the door, meaning they were going to get out of prison shortly therefore Javier Alonso show instructed Edward Troup and they both went into the cell and took care of business.  When they were doing that, the Rascon brothers came to offer their aid as a way to save face with the gang.<br><br>Mar. 13 Tr. at 25:15-24 (Stemo).  See supra Statement 13 (discussing the relationship between actions and statements).  The Rascon brothers were not members of the Count 3 conspiracy, so none of the statements that they made are admissible for their truth under rule 801(d)(2)(E).  See supra n.14.<br><br>Troup argues that this statement lacks a sufficient foundation, because the James Proffer identifies the declarant as "'Brian Rascon and/or Raymond Rascon.'"  Troup Response ¶ 4, at 2 (quoting James Proffer at 13).  This statement's admissibility does not depend on whether the person who offered assistance is Brian Rascon, |

| | Raymond Rascon, or both. <u>See</u> <u>United States v. Brinson</u>, 772 F.3d 1314, 1321-22 (10th Cir. 2014)(concluding that an unidentified declarant's statements were admissible, because they were not offered to prove the truth of the matter asserted). Accordingly, the Court overrules Troup's objection. <u>See</u> Troup Response ¶ 4, at 2. |
|---|---|
| Statement 24: "Javier Alonso told the Rascon brothers to keep a look out when the brothers asked if they could help."<br><br>Declarant: Javier Alonso<br><br>Source: Javier Alonso<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is an action -- giving the Rascon brothers an order -- so it is not hearsay. <u>See</u> Mar. 13 Tr. at 26:3-10 (Stemo, Castellano). <u>See</u> <u>also</u> <u>supra</u> Statement 13 (discussing the relationship between actions and statements). That Alonso gave this order after Sanchez' death indicates that any associated statements were not made during the Sanchez conspiracy, so those statements are not admissible for their truth against the Count 3 conspirators under rule 801(d)(2)(E). <u>See</u> <u>United States v. Alcorta</u>, 853 F.3d at 1139. |
| Statement 25: "Edward Troup kissed Javier Alonso on the cheek and told him he was proud of him."<br><br>Declarant: Edward Troup<br><br>Source: Javier Alonso<br><br>Objections: None | This is a statement of Troup's then-existing state of mind, so it is admissible against all Defendants under rule 803(3). <u>See</u> Mar. 13 Tr. at 26:11-19 (Castellano, Stemo). |
| Statement 26: "After Sanchez was murdered, Edward Troup began telling Ruben Hernandez that he was next."<br><br>Declarant: Edward Troup<br><br>Source: Javier Alonso; Ruben Hernandez<br><br>Date: On or before June 17, 2007<br><br>Objections: None | Stemo's testimony indicates that this <u>James</u> Proffer statement is several closely associated statements:<br><br>Q.    Following the murder in statement number, was an indication that Edward Troup began telling Ruben Hernandez that he was next?<br><br>A.    Yes.<br><br>Q.    And what was the indication about Ruben Hernandez at or around the time -- at or around the time of the murder?<br><br>A.    I believe Mr. Hernandez did not cover the cameras properly.<br><br>Q.    At    that    point,    according    to |

| | statements by Javier Alonso and others was Ruben Hernandez seen as possibly scared and weak? |
|---|---|
| | A.      Yes, he was actually on crutches at the time. |
| | Q.      Related to the statement is there another statement related to Edward Troup stating in part that Ruben Hernandez failed to cover the camera because he was scared? |
| | A.      Yes. |
| | Mar. 13 Tr. at 26:20-27:13 (Stemo, Castellano). |
| | The portion of this statement that articulates Troup's plan, i.e., a plan to assault or kill Hernandez, are admissible as statements of Troup's then-existing state of mind under rule 803(3).  To the extent that these statements are offered for their effect on Hernandez, i.e., intimidation, they are not offered to prove the truth of the matter asserted, so they are not hearsay, and the Court will give a limiting instruction. |
| Statement 27: "Arturo Garcia sent word about Sanchez to Ben Clark."  Declarant: Arturo Garcia  Source: Ben Clark, Eric Duran  Date: On or before June 17, 2007  Objections: None | This statement is admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Mar. 13 Tr. at 27:24-28:7 (Castellano, Stemo). |
| Statement 28: "Ben Clark and Arturo Garcia sent several letters about Sanchez to each other."  Declarant: Arturo Garcia  Source: Ben Clark  Date: On or before June 17, 2007  Objections: None | Sending letters is an action and not a statement, but the statements in those letters regarding the Sanchez murder are admissible against the Count 3 conspirators under rule 801(d)(2)(E).  See Mar. 13 Tr. at 27:24-28:7 (Castellano, Stemo). |

| | |
|---|---|
| Statement 29: "Javier Alonso and Edward Troup were expected to oversee the murder, and Troup told the Rascon brothers to hit Sanchez."<br><br>Declarant: Ben Clark<br><br>Source: Ben Clark<br><br>Date: On or before June 17, 2007<br><br>Objections: Troup Response | Troup argues that Benjamin Clark's expectations circa 2007 are not statements. See Troup Response ¶ 5, at 2. Troup is correct, expectations are not statements, but Clark can testify about what his expectations were at that time if he remembers. |
| Statement 30: "Leonard Lujan told Willie Amador and Jesse Ibarra to 'handle that' and told Eugene Martinez that 'I'm running this prison now.'"<br><br>Declarant: Leonard Lujan<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections:   Chavez   Response, Patterson Response | Stemo's testimony indicates that "statement number 30 is incorrect" and that "[w]hat it actually says is, Lujan told Martinez to tell SNM members, Willie Amador and Jesse Martinez to handle that." See Tr. at 173:25-174:3 (Stemo). Lujan's order to E. Martinez is an action and not an assertion, see supra Statement 13 (discussing the relationship between actions and statements), but any associated statements would be admissible for their truth against the Count 2 Defendants under rule 801(d)(2)(E). The Court's findings of fact indicate that Chavez and Patterson are members of the Count 2 conspiracy, see supra FOF ¶ 6, so the Court overrules their objections, see Chavez Response ¶ 18, at 6; Patterson Response ¶ 21, at 8-9. |
| Statement 31: "Christopher Chavez heard about the hit on Garza and volunteered to participate in the operation."<br><br>Declarant: Chris Chavez<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: B. Garcia Response, Patterson Response | That Chavez volunteered is an action and not a statement. See supra Statement 13 (discussing the relationship between actions and statements).<br><br>This statement is not hearsay, because Chavez' act, volunteering to participate in the Garza murder, is neither true nor false. The Court anticipates that there are other statements associated with Chavez' act which could be offered for their truth. For example, it would have been natural for Chavez to state that he wanted to participate in the Garza murder, which would be a statement of then-existing state of mind under rule 803(3). Any statements made by Count 3 conspirators attempting to induce Chavez to volunteer would have been made during and in furtherance of the Count 3 conspiracy, so they would be admissible for their truth under rule 801(d)(2)(E) as to the Count 3 conspirators. |

| | |
|---|---|
| Statement 32: "Willie Amador told Eugene Martinez to be lookout during the Garza murder and stated, 'If something happens, you already know.'"<br><br>Declarant: Willie Amador<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: Chavez Response, Patterson Response | This statement was made during and in furtherance of the Count 2 conspiracy and it was made by Willie Amador, a member of that conspiracy. It is not testimonial. Accordingly, the statement is admissible for its truth against the Count 2 conspirators under rule 801(d)(2)(E). |
| Statement 33: While strangling Garza someone in the room yelled 'Close the door!'<br><br>Declarant: Allen Patterson or Christopher Chavez<br><br>Source: Eugene Martinez<br><br>Date: On or before March 26, 2001<br><br>Objections: B. Garcia Response | B. Garcia argues that, because the James Proffer lists this statement's declarant as "Allen Patterson or Christopher Chavez," James Proffer at 18, "[t]here is no ability to properly attribute or authenticate the statement to any particular declarant." B. Garcia ¶ 5, at 2-3.<br><br>This statement -- "Close the door!" -- is a command, so it is neither true nor false. See supra Statement 13 (analyzing the relationship of actions and statements). Associated statements are probably admissible against the Count 2 conspirators under rule 801(d)(2)(E).<br><br>As to authentication, rule 901 states that "the proponent [of an item of evidence] must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 609(a). Accordingly, so long as the United States claims only that this statement was made by either Patterson or Chavez, it only needs, under rule 609, to introduce evidence sufficient to support a finding that one of those two individuals made the statement. See Fed. R. Evid. 609(a). The testimony of the witness who relates this statement to the jury -- assuming that the witness has knowledge -- satisfies that requirement. See Fed. R. Evid. 609(b)(1)(stating that the testimony of a witness with knowledge satisfies rule 609's authentication requirement). Accordingly, the Court overrules B. Garcia's objection. B. Garcia ¶ 5, at 2-3. |
| Statement 34: "Leonard Lujan approached Eugene Martinez and told him to talk to Willie Amador | This statement is admissible against the Counts 2 Defendants under rule 801(d)(2)(E). See Mar. 13 Tr. at 30:20-31:1 (Castellano, Stemo). The Court accordingly overrules Chavez' and Patterson's objections. See Chavez |

| | |
|---|---|
| about the murders." <br><br> Declarant: Leonard Lujan <br><br> Source: Eugene Martinez <br><br> Date: On or before March 26, 2001 <br><br> Objection: Chavez Response, Patterson Response | Response ¶ 20, at 6-7; Patterson Response ¶ 24, at 10. |
| Statement 35: "Eugene Martinez asked Billy Garcia and Garcia confirmed the order and said 'it's coming from me' and 'make sure it happens.'" <br><br> Declarant: Billy Garcia <br><br> Source: Eugene Martinez <br><br> Date: On or before March 26, 2001 <br><br> Objections: Chavez Response, Patterson Response | This statement is admissible against the Counts 2 Defendants under rule 801(d)(2)(E). See Mar. 13 Tr. at 31:2-12 (Castellano, Stemo). The Court accordingly overrules Chavez' and Patterson's objections. See Chavez Response ¶ 21, at 7; Patterson Response ¶ 25, at 10. |
| Statement 36: "Joe Gallegos later informed Leroy Lucero that Lawrence Torres saw and was concerned Torres might snitch." <br><br> Declarant: Joe Gallegos <br><br> Source: Leroy Lucero <br><br> Date: On or before March 26, 2001 <br><br> Objections: B. Garcia Response, Chavez Response, A. Gallegos Response, J. Gallegos Response, Patterson Response | The United States orally conceded that this statement is not admissible under rule 801(d)(2)(E) of the Federal Rules of Evidence, because it was made four or five years after the Castillo and Sanchez murders. See Mar. 13 Tr. at 32:5-13 (Castellano) The United States suggested, however, that the statement is admissible against Troup under rule 801(d)(2)(A). The statement also appears to be a statement of then-existing state of mind under rule 803(3) to the extent that it expresses J. Gallegos' concerns and as circumstantial evidence of J. Gallegos' state of mind, i.e. consciousness of guilt. . It is not admissible under rule 803(3), however, to show that Lawrence Torres saw anything, because rule 803(3) doesn't permit a statement of belief to be used to show the fact believed. See Fed. R. Evid. 803(3). <br><br> The Court accordingly overrules Patterson's objection. See Patterson Response ¶ 26, at 10-11. <br><br> That this statement is nontestimonial means that its admission does not offend the Confrontation Clause, so the |

| | Court overrules J. Gallegos' objection "on confrontation grounds." J. Gallegos Response ¶ 2, at 4. |
|---|---|
| Statement 37: "Edward Troup told Lawrence Torres, 'This has nothing to do with you. Don't come up here.'"<br><br>Declarant: Edward Troup<br><br>Source: Lawrence Torres<br><br>Date: On or before March 26, 2001<br><br>Objections: B. Garcia Response, Chavez Response, Patterson Response | The United States provided additional context for this statement at the Court's <u>James</u> hearing:<br><br>    On the morning of the murder, March 26, 2001, Lawrence Torres woke up. As he walked out to heat up water for his coffee, he saw Angel DeLeon and Edward Troup, and it looked like to him that they were disassembling a laundry bag. He put his water into the microwave, went back to his cell. He heard a struggle, so he looked out to see what was happening, and he saw Mr. Edward Troup sitting at a table. Mr. Torres tried go upstairs to see what was happening, and that's when Mr. Troup made that statement.<br><br>Mar. 13 Tr. at 33:20-33:5 (Stemo). This statement is admissible against the Count 1 Defendants under rule 801(d)(2)(E), because Troup was a member of that conspiracy and he made the statement to prevent outside interference with the Castillo murder. The Court accordingly overrules B. Garcia's, Chavez', and Patterson's objections. <u>See</u> B. Garcia Response ¶ 7, at 3; Chavez Response ¶ 23, at 7-8; Patterson Response ¶ 27, at 11. |
| Statement 38: "Angel Deleon had a scratch on his finger and told a female CO that he cut himself."<br><br>Declarant: Angel Deleon<br><br>Source: Lawrence Torres<br><br>Date: On or before March 26, 2001<br><br>Objections: B. Garcia Response, Chavez Response | The <u>James</u> hearing testimony indicates that Deleon made this statement after the Castillo murder, so it was not made during the conspiracy to commit that murder. <u>See</u> Mar. 13 Tr. at 33:9-21(Castellano, Stemo). Consequently, it is not admissible for its truth under rule 801(d)(2)(E). The statement is admissible, however, as circumstantial evidence of DeLeon's state of mind, specifically his consciousness of guilt.<br><br>The Court accordingly overrules Chavez' objections. <u>See</u> Chavez Response ¶ 24, at 8.<br><br>Offering a hearsay statement for a purpose other than its truth does not implicate the Confrontation Clause, <u>see</u> <u>Tennessee v. Street</u>, 471 U.S. 409, 417 (1985), so the Court overrules B. Garcia's objection that "this is a testimonial statement made to a CO during the process of an investigation and therefore is inadmissible," B. Garcia |

| | Response ¶ 8, at 4. |
|---|---|
| Statement 39: "Kyle Dwyer came to SNMCF with 'paperwork' on Sanchez."<br><br>Declarant: Kyle Dwyer<br><br>Source: Ben Clark<br><br>Date: On or before June 17, 2007<br><br>Objections: None | That Dwyer brought the Sanchez paperwork to SNMCF is an action and not a statement. See supra Statement 13 (analyzing the relationship between actions and statements). |
| Statement 40: "The 'paperwork' came from the Crazy Town Roswell gang."<br><br>Declarant: Ben Clark<br><br>Source: Ben Clark<br><br>Date: On or before June 17, 2007<br><br>Objections: None | Clark likely does not have personal knowledge regarding the paperwork's origins; he probably knows that the paperwork came from the Crazy Town Roswell gang because somebody told him about the paperwork's origins. See Fed. R. Evid. 602. The Court has no information regarding that out-of-court statement to Clark, so it cannot analyze whether that statement is admissible for its truth. |
| Statement 41: "Joe and Andrew Gallegos just pulled 'a job' and had to go 'clean up.' They were giving money and heroin to friends to 'help them out.' Joe Gallegos said, 'I just came up.'"<br><br>Declarant: Joe and/or Andrew Gallegos<br><br>Source: Leroy Vallejos, Michael Sutton<br><br>Date: On or about November 12, 2012<br><br>Objections: A. Gallegos Response, J. Gallegos Response | This statement is not admissible under rule 801(d)(2)(E), because the Court has not concluded that a conspiracy to murder Adrian Burns existed.<br><br>The James Proffer is not entirely clear regarding which statements A. Gallegos made and which statements J. Gallegos made. Rule 801(d)(2)(A) permits the statement to be admitted against whichever Gallegos brother made the statement. If one Gallegos brother made a statement, it may be admissible against the other under rule 801(d)(2)(B), which permits a statement to be introduced a party that "manifested that it adopted or believed [the statement] to be true." Fed. R. Evid 801(d)(2)(B). See id. advisory committee notes ("Adoption or acquiescence may be manifested in any appropriate manner. When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue."). Additionally, the statement might be admissible as an excited utterance. See Fed. R. Evid. 803(2).<br><br>A. Gallegos objects to this statement, because "there is a |

| | lack of personal knowledge and an overall inability to properly attribute or authenticate the source for those statements that are simply identified with both Joe and Andrew Gallegos, or simply the 'Gallegos brothers.'" A. Gallegos Response ¶ 5, at 3. At trial, the witness who relates these statements to the jury will probably identify the declarant with more specificity, and the parties can address personal knowledge and authentication at that point. It is worth noting, however, that a party offering a statement for its truth under rule 801(d)(2) need not establish that the declarant had personal knowledge. See Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 602.02[2]("The exception to the rule is a statement admissible under Rule 801(d)(2) as a statement of a party-opponent, where the declarant need not have personal knowledge for the statement to be admissible."). |
|---|---|
| | J. Gallegos objects to this statement and Statement 42, because admitting them "is probably in-violation [sic] of the holding in *Bruton v. United States*, 391 U.S. 123 (1968). That this statement is nontestimonial indicates that admitting it for its truth does not offend the Confrontation Clause. Further, if rule 801(d)(2)(A) and rule 801(d)(2)(B) both apply, the statement is admissible against both Gallegos brothers. The Court accordingly overrules J. Gallegos' objection. See J. Gallegos Response ¶ 3, at 4. |
| Statement 42: "Joe and Andrew Gallegos were covered in blood and advised they were 'cleaning the house.' Joe Gallegos later went by Leroy Vallejos' house and tried to give Vallejos his and Andrew Gallegos' truck."<br><br>Declarant: Joe and/or Andrew Gallegos<br><br>Source: Daniel Orndorff, Michael Sutton, Leroy Vallejos<br><br>Date: On or about November 12, 2012<br><br>Objections: A. Gallegos Response, J. Gallegos Response | The Court has not found that a conspiracy to murder Adrian Burns existed, so this statement is not admissible under rule 801(d)(2)(E).<br><br>A. Gallegos objects to this statement, because "there is a lack of personal knowledge and an overall inability to properly attribute or authenticate the source for those statements that are simply identified with both Joe and Andrew Gallegos, or simply the 'Gallegos brothers.'" A. Gallegos Response ¶ 5, at 3. At trial, the witness who relates these statements to the jury will probably identify the declarant with more specificity, and the parties can address personal knowledge and authentication at that point. It is worth noting, however, that a party offering a statement for its truth under rule 801(d)(2) need not establish that the declarant had personal knowledge. See Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 602.02[2]("The exception to the rule is a statement admissible under Rule 801(d)(2) as a statement of a party-opponent, where the declarant need not have |

| | personal knowledge for the statement to be admissible."). |
|---|---|
| | J. Gallegos objects to this statement's admission, because it is an action and not a statement.  <u>See</u> |
| Statement 43: "Charlene Baldizan agreed to get rid of the van because the Gallegos brothers knew police were looking for it."<br><br>Declarant: Gallegos brothers<br><br>Source: Charlene Baldizan<br><br>Date: On or about November 12, 2012<br><br>Objections: A. Gallegos Response, J. Gallegos Response | The Court has not found that a conspiracy to murder Adrian Burns existed, so this statement is not admissible under rule 801(d)(2)(E).<br><br>A. Gallegos objects to this statement, because "there is a lack of personal knowledge and an overall inability to properly attribute or authenticate the source for those statements that are simply identified with both Joe and Andrew Gallegos, or simply the 'Gallegos brothers.'"  A. Gallegos Response ¶ 5, at 3.  At trial, the witness who relates these statements to the jury will probably identify the declarant with more specificity, and the parties can address personal knowledge and authentication at that point.  It is worth noting, however, that a party offering a statement for its truth under rule 801(d)(2) need not establish that the declarant had personal knowledge.  <u>See</u> Stephen A. Saltzburg et al., <u>Federal Rules of Evidence Manual</u> § 602.02[2]("The exception to the rule is a statement admissible under Rule 801(d)(2) as a statement of a party-opponent, where <u>the declarant need not have personal knowledge for the statement to be admissible.").</u> |
| Statement 44: "Joe and Andrew Gallegos asked Jason Van Veghel to clean up the living room and pull the carpet up and gave him 2-3 hits of heroin for it.  Joe Gallegos also asked Van Veghel to clean blood off air compressor."<br><br>Declarant: Joe Gallegos<br><br>Source: Jason Van Veghel<br><br>Date: On or about November 13, 2012<br><br>Objections: A. Gallegos Response, J. Gallegos Response | United States orally struck "and Andrew" from statement 44.<br><br>J. Gallegos objects to this statement, because Van Veghel "has never been alleged or identified as a co-conspirator."  J. Gallegos Response ¶ 5, at 4.  After J. Gallegos filed his response, the United States orally identified Van Veghel as a conspirator at the Court's <u>James</u> hearing.  Additionally, whether a statement is admissible under rule 801(d)(2)(E) depends on whether the statement was made by a conspirator and not on whether the statement was made to a conspirator.<br><br>Rule 801(d)(2)(E) does not apply to this statement, however, because the Court has not found that a conspiracy to murder Adrian Burns existed.  Nonetheless, Van Veghel can testify regarding the actions he took and any instructions he received without running afoul of the rule against hearsay.  <u>See</u> Fed. R. Evid. 801(c). |
| Statement 45: "The next day, at Joe Gallegos request, Andrew Gallegos | The Court has not found that a conspiracy to murder Adrian Burns existed, so this statement is not admissible |

| | |
|---|---|
| threw a set of keys and a wrist watch into a field." <br><br> Declarant: Andrew Gallegos <br><br> Source: Jason Van Veghel <br><br> Date: On or about November 13, 2012 <br><br> Objections: A. Gallegos Response, J. Gallegos Response | under rule 801(d)(2)(E).  Van Veghel can testify regarding the actions he observed, such as A. Gallegos throwing a set of keys and a wrist watch into a field, without running afoul of the rule against hearsay, however.  <u>See</u> Fed. R. Evid. 801(c). |
| Statement 46: "Joe Gallegos found out the police were coming to search the house and he gave several guns and other stolen goods to Jason Van Veghel to store elsewhere." <br><br> Declarant: Joe Gallegos <br><br> Source: Jason Van Veghel <br><br> Date: On or about November 13, 2012 <br><br> Objections: A. Gallegos Response, J. Gallegos Response | The Court has not found that a conspiracy to murder Adrian Burns existed, so this statement is not admissible under rule 801(d)(2)(E). <br><br> Van Veghel can testify regarding actions he observed -- such as J. Gallegos giving him several guns and stolen goods -- without running afoul of the rule against hearsay.  Statements indicating why J. Gallegos was giving Van Veghel those guns and goods are admissible as circumstantial evidence of J. Gallegos' state of mind or as statements of J. Gallegos' then-existing state of mind under rule 803(3). <br><br> J. Gallegos argues that this statement is "inconsistent with the discovery provided."  J. Gallegos response ¶ 7, at 5.  J. Gallegos can impeach this statement based on that inconsistency, but it does not render the statement inadmissible. |
| Statement 47: "Santos Gonzales told Gomez 'You remember me?' They then told Gomez that Joe Gallegos put a hit out and they were there to kill him." <br><br> Declarant: Santos Gonzales <br><br> Source: Jose Gomez <br><br> Date: On or about February 27, 2016 <br><br> Objection: J. Gallegos Response | J. Gallegos argues that this statement is inadmissible, because "Santos Gonzalez is not expected to testify and this statement is contained in the factual portion of his plea agreement."  J. Gallegos Response ¶ 8, at 5.  The United States probably reused language from Gonzalez' plea agreement when drafting the <u>James</u> Proffer, but that does not render Jose Gomez' testimony relating the substance of Gonzalez' out-of-court statement inadmissible. <br><br> Any statements that J. Gallegos made ordering others to kill Gomez are admissible against J. Gallegos under rule 801(d)(2)(A).  Statements that those others made to Gomez are either circumstantial evidence of the declarant's state of mind or statements of then-existing state of mind, specifically their motive for assaulting Gomez. |

| Statement 48: "Shauna Gutierrez said 'they didn't finish him' when Gomez ran away."<br><br>Declarant: Shauna Gutierrez<br><br>Source: Brandy Rodriguez<br><br>Date: On or about February 27, 2016<br><br>Objections: J. Gallegos Response | United States orally indicated that this statement will only come in if Brandy Rodriguez testifies to it. See Mar. 13 Tr. at 41:7-12 (Castellano)("Brandy Rodriguez is not cooperating with the Government at this time, but I am submitting this statement for the Court's consideration in case that changes."). Consequently, J. Gallegos' assertion that "neither the declarant nor the source is expected to testify" creates no admissibility issues. J. Gallegos Response ¶ 48, at 5. If B. Rodriguez testifies, then J. Gallegos' assertion is false. If B. Rodriguez does not testify, this statement will not be offered into evidence, so whether it is admissible is moot. |
| | J. Gallegos also asserts that "there is no indicia of trustworthiness based on the multiple versions of statements given by" B. Rodriguez and Gutierrez. J. Gallegos ¶ 9, at 5. J. Gallegos can argue to the jury that this statement is untrustworthy, but that does not render the statement inadmissible unless the United States relies upon an exception to the rule against hearsay that has indicia of trustworthiness -- or the lack of indicia of untrustworthiness -- as an element. See, e.g., Fed. R. Evid. 803(6)(E). |
| Statement 49: "Santos Gonzalez and Paul Rivera knocked on the door and asked for Gomez. They then told Charlene Parker-Johnson that she should leave the house."<br><br>Declarant: Santos Gonzalez and/or Paul Rivera<br><br>Source: Charlene Parker-Johnson<br><br>Date: On or about February 27, 2016<br><br>Objections: J. Gallegos Response | J. Gallegos "objects to this statement to the extent that it may have come from Santos Gonzales who probably will not testify. Defendant further objects as this statement does not appear trustworthy as the source is not provided ostensibly because he/she remains unknown." J. Gallegos Response ¶ 10, at 5. Contrary to the J. Gallegos Response, the James Proffer identifies the source of this statement as Charlene Parker-Johnson and not as Santos Gonzales or unknown. See James Proffer at 26. See also Mar. 13 Tr. at 42:2-11 (Castellano, Stemo). |
| Statement 50: "Santos Gonzalez and Paul Rivera yelled, 'He's running!' and 'He's getting away!' when Gomez started to run."<br><br>Declarant: Santos Gonzales and/or | J. Gallegos "objects to this statement to the extent that it may have come from Santos Gonzales who probably will not testify. Defendant further objects as this statement does not appear trustworthy as the source is not provided ostensibly because he/she remains unknown." J. Gallegos Response ¶ 10, at 5. Contrary to the J. Gallegos Response, the James Proffer identifies the source of this statement as |

| | |
|---|---|
| Paul Rivera<br><br>Source: Charlene Parker-Johnson<br><br>Date: On or about February 27, 2016<br><br>Objections: J. Gallegos Response | Charlene Parker-Johnson and not as Santos Gonzales or unknown. <u>See</u> <u>James</u> Proffer at 26. <u>See also</u> Mar. 13 Tr. at 42:12-43:2 (Castellano, Stemo).<br><br>These are admissible as excited utterances, <u>see</u> Fed. R. Evid. 803(2), or present-sense impressions, <u>see</u> Fed. R. Evid. 803(1). |
| Statement 51: "Joe Gallegos placed a hit on Gomez because Joe Gallegos feared Gomez would testify against him on a state murder charge."<br><br>Declarant: Shauna Gutierrez and Brandy Rodriguez<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: A. Gallegos Response, J. Gallegos Response | J. Gallegos "objects to this statement to the extent that its source is unidentified." J. Gallegos Response ¶ 11, at 5. The source of this statement is not unidentified, however. <u>See</u> <u>James</u> Proffer at 27.<br><br>This statement is admissible against J. Gallegos under rule 801(d)(2)(E). B. Rodriguez and Gutierrez were both members of the Courts 14-16 conspiracy. <u>See</u> <u>supra</u> FOF ¶ 14. The statement was made in furtherance of that conspiracy, because it enlisted Rivera's assistance in the conspiracy. This statement is not, however, admissible against A. Gallegos, because he was not a member of the Counts 14-16 conspiracy, and the Court will -- at A. Gallegos' request, give the jury a limiting instruction. <u>See</u> A. Gallegos Response ¶ 4, at 2-3. |
| Statement 52: "Upon learning where Gomez was staying, Shauna Gutierrez and Brandy Rodriguez agreed they needed to go after Gomez."<br><br>Declarant: Shauna Gutierrez and Brandy Rodriguez<br><br>Source: Paul Rivera, Brandy Rodriguez<br><br>Date: On or about February 27, 2016<br><br>Objections: J. Gallegos Response | This statement is admissible against J. Gallegos under rule 801(d)(2)(E) as a statement made during and in furtherance of the Counts 14-16 conspiracy. <u>See</u> Mar. 13 Tr. at 44:2-7 (Castellano, Stemo). |
| Statement 53: "Paul Rivera agreed to help with the hit on Gomez." | Paul Rivera's testimony stating that he agreed to help with the hit on Gomez is not a statement offered "to prove the truth of the matter asserted," so it raises no hearsay issues. Fed. R. Evid. 801(c). That Rivera's testimony may be |

| | |
|---|---|
| Declarant: Paul Rivera<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: J. Gallegos Response | "self-serving" does not render it inadmissible.  J. Gallegos Response ¶ 13, at 6. |
| Statement 54: "You better not testify against my Jefe, or I'll kill you!"<br><br>Declarant: Brandy Rodriguez<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: None | This statement is admissible to as circumstantial evidence of B. Rodriguez' state of mind. |
| Statement 55: "Santos Gonzales also stated he was going to kill Gomez."<br><br>Declarant: Santos Gonzalez<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: J. Gallegos Response | This statement is admissible as a statement of the declarant's then-existing state of mind, specifically his plan.  See Fed. R. Evid. 803(3).  J. Gallegos asserts that this statement is inaccurate, because it is not consistent with Santos Gonzalez' plea agreement.   J. Gallegos Response ¶ 14, at 6.  J. Gallegos can use that inconsistency to impeach this statement, but it does not render this statement inadmissible. |
| Statement 56: "Told Shauna Gutierrez they had completed their mission.  Shauna Gutierrez laughed and said she was 'happy to hear' Gomez was likely dead."<br><br>Declarant: Brandy Rodriguez, Paul Rivera, Santos Gonzales<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, | The Gutierrez statement is admissible as a statement of the declarant's then-existing emotional condition.  See Fed. R. Evid. 803(3).<br><br>B. Rodriguez', Rivera's, and Santos Gonzalez' statements occurred immediately after the assault on Gomez.   See Mar. 13 Tr. at 45:6-13(Castellano, Stemo).     These statements are, accordingly, admissible as excited utterances.  See Fed. R. Evid. 803(2).<br><br>J. Gallegos objects to this statement, because "[t]here individuals are listed as the source."  J. Gallegos Response ¶ 15, at 6.  Three individuals can make the same statement, |

| | |
|---|---|
| 2016<br><br>Objections: J. Gallegos Response | however. For example, one person can make an oral statement and two others can make the same statement nonverbally by nodding their heads. <u>See</u> Fed. R. Evid. 801(a)("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."). |
| Statement 57: "Shauna Gutierrez told Santos Gonzalez to move the truck they used to another location and leave it for a few days."<br><br>Declarant: Shauna Gutierrez<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: J. Gallegos Response | Gutierrez' giving orders to Santos Gonzales is an action and not a statement. It is also a statement of the declarant's then-existing state of mind, if Rivera testifies that Gutierrez elaborated regarding her plans, <u>e.g.</u>, to tell someone to retrieve the truck in a few days.<br><br>J. Gallegos argues that this statement is inadmissible, because "it is apparent that it was not made by the claimed declarant." J. Gallegos Response ¶ 16, at 6. J. Gallegos is free to argue to the jury that it should not credit the evidence that the United States introduces to show that this statement was made, but such an argument does not render this statement inadmissible hearsay. |
| Statement 58: "'How come you guys didn't do the job more fully?' after she previously told Rivera, Gonzalez, and Rodriguez to 'Go get him.'<br><br>Declarant: Shauna Gutierrez<br><br>Source: Brandy Rodriguez, Paul Rivera<br><br>Date: On or about February 27, 2016<br><br>Objections: J. Gallegos Response | The <u>James</u> hearing testimony indicates that this is a two-part statement. First, before the Gomez assault, Gutierrez "told Paul Rivera, Santos Gonzalez to go get him." Mar. 13 Tr. at 46:9-16 (Castellano, Stemo). Second, after the<br><br>Gutierrez' pre-assault orders -- and any associated statements, <u>see</u> <u>supra</u> Statement 13 (analyzing the relationship between verbal actions and statements) -- were made during and in furtherance of the conspiracy to assault Gomez, so they are admissible against J. Gallegos under rule 801(d)(2)(E). <u>See</u> Mar. 13 Tr. at 46:9-16(Castellano, Stemo). The post-assault statement is admissible as circumstantial evidence of Shauna Gutierrez' state of mind, <u>i.e.</u>, to show that she expected and intended Gomez to be killed or hurt more seriously. |
| Statement 59: "Don't Testify"<br><br>Declarant: Paul Rivera<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016 | This statement is admissible against J. Gallegos under rule 801(d)(2)(E) as a statement made during and in furtherance of the Counts 14-16 conspiracy, because it was made to induce Gomez not to testify against J. Gallegos. <u>See</u> Mar. 13 Tr. at 46:25-47:5 (Castellano, Stemo). |

| Objections: J. Gallegos Response | |
| --- | --- |
| Statement 60: "Brandy Rodriguez and Shauna Gutierrez had people in place for an attack on Gomez."<br><br>Declarant: Brandy Rodriguez<br><br>Source: Mario Chavez<br><br>Date: On or about March 29, 2017<br><br>Objections: J. Gallegos Response | The United States orally indicated that the date refers to Mario Chavez' interview with the FBI and not to the date the statement was made.  See Mar. 13 Tr. at 47:6-12 (Castellano, Stemo).<br><br>According to the United States, Mario Chaves "would pass letters between Joe Gallegos, who was in county jail at the time, and Brandy Rodriguez and Shauna Gutierrez."  See Mar. 13 Tr. at 47:15-18 (Stemo).  That Mario Chavez passed letters back and forth between J. Gallegos, B. Rodriguez, and Gutierrez is an action and not a statement. Statements ordering or arranging the Gomez assault that were made before the assault took place are admissible against J. Gallegos under rule 801(d)(2)(E).<br><br>At the <u>James</u> hearing, the United States conceded that if B. Rodriguez made this statement after the assault on Gomez then it would not be admissible under rule 801(d)(2)(E). See Mar. 13 Tr. at 49:4-10(Castellano)(addressing statement 61); <u>id.</u> at 49:20-21 (Castellano)("But the same applies, I would say, with Statements 60 and 61").  The United States argued that the statement "would then be considered a statement against interests or an admission by Brandy Rodriguez." Mar. 13 Tr. at 49:8-10 (Castellano). The United States has not, however, shown that B. Rodriguez -- who has already pled guilty -- is unavailable, which is a prerequisite to admitting an out-of-court statement as a declaration against interest.  See Fed. R. Evid. 804(b)(3).  That B. Rodriguez made the statement means that it is admissible for its truth against B. Rodriguez under rule 801(d)(2)(A), but B. Rodriguez is not a Trial 2 Defendant, so the statement would not be admissible at Trial 2 under rule 801(d)(2)(A). |
| Statement 61: "Joe Gallegos ordered the hit on Gomez, and Shauna Gutierrez planned the hit."<br><br>Declarant: Shauna Gutierrez<br><br>Source: Mario Chavez<br><br>Date: On or about March 29, 2017<br><br>Objections: A. Gallegos Response, | United States orally indicated that the declarant should be Brandy Rodriguez and that it doesn't know whether the statement was made before or after the assault on Gomez. The United States also orally indicated that it does not know whether this statement was made before or after the assault on Gomez.<br><br>At the <u>James</u> hearing, the United States conceded that if B. Rodriguez made this statement after the assault on Gomez then it would not be admissible under rule 801(d)(2)(E). <u>See</u> Mar. 13 Tr. at 49:4-10(Castellano).  The United States |

| | |
|---|---|
| J. Gallegos Response | argued that the statement "would then be considered a statement against interests or an admission by Brandy Rodriguez." Mar. 13 Tr. at 49:8-10 (Castellano). The United States has not, however, shown that B. Rodriguez -- who has already pled guilty -- is unavailable, which is a prerequisite to admitting an out-of-court statement as a declaration against interest. See Fed. R. Evid. 804(b)(3). That B. Rodriguez made the statement means that it is admissible for its truth against B. Rodriguez under rule 801(d)(2)(A), but B. Rodriguez is not a Trial 2 Defendant, so the statement would not be admissible at Trial 2 under rule 801(d)(2)(A). |
| | Even if B. Rodriguez made this statement before the Gomez assault, it would not be admissible against J. Gallegos under rule 801(d)(2)(E), because the statement does not appear to have been made in furtherance of the Counts 14-16 conspiracy. Mario Chavez was not a member of this conspiracy and the United States has not introduced evidence showing that divulging details to this non-member advanced the conspiracy's goals. |
| Statement 62: "'Paperwork' on Sanchez was delivered from Arturo Garcia to Ben Clark, approving the murder."<br><br>Declarant: Arturo Garcia<br><br>Source: Samuel Gonzalez, John Montano, Javier Rubio<br><br>Date: On or before June 17, 2007<br><br>Objections: None | That the paperwork was sent is an action and not a statement. See supra Statement 13. Associated statements approving the Sanchez murder or conveying that approval to other members of the Sanchez conspiracy were made during and in furtherance of the conspiracy, so they are admissible against the Count 3 Defendants under rule 801(d)(2)(E). |
| Statement 63: "'Cheeky' and 'Coquito' were tasked with the murder of Sanchez but did not want to carry it out."<br><br>Declarant: Cheeky and Coquito<br><br>Source: Samuel Gonzales<br><br>Date: On or before June 17, 2007 | Cheeky and Coquito are Raymond and Brian Rascon, respectively. See Mar. 13 Tr. at 50:15-21 (Castellano, Stemo). The Rascon brothers conveyed the information contained in this statement to Samuel Gonzales. See Mar. 13 Tr. at 50:22-24 (Castellano, Stemo). The Court has concluded that the Rascon brothers are not members of the Count 3 conspiracy, so their statements to Samuel Gonzales are not admissible under rule 801(d)(2)(E). No other exception to the rule against hearsay applies, so the Rascon brothers' statement is not admissible for its truth. Samuel Gonzales apparently lacks personal knowledge as |

| | |
|---|---|
| Objections: Troup Response | to the substance of the Rascon brothers' statement -- as opposed to that they made that statement -- so he cannot testify that the Rascon brothers were tasked with the Sanchez murder even if Samuel Gonzalez does not relate that statement to the jury.  See Fed. R. Evid. 602. |
| Statement 64: "Javier Alonso asked how to get rid of the marks on his hands from strangling Sanchez."<br><br>Declarant: Javier Alonso<br><br>Source: Samuel Gonzales<br><br>Date: On or before June 17, 2007<br><br>Objections: None | Javier Alonso made this statement after Sanchez' death, so it was made after the conspiracy to kill Sanchez ended. That this statement was not made during the conspiracy to kill Sanchez indicates that it is not admissible for their truth against the Count 3 conspirators under rule 801(d)(2)(E).  That Alonso asked how to get rid of the marks from strangling Sanchez is a question, but it implicitly asserts that he strangled Sanchez.  See United States v. Summers, 414 F.3d at 1298.<br><br>If Samuel Gonzales actually saw marks on Alonso's hands, Samuel Gonzales could testify to that fact, as opposed to Alonso's statement regarding that fact.  If, additionally, Samuel Gonzales is sufficiently familiar with the sort of marks that stranglers typically have on their hands, he could testify to his opinion regarding whether those marks could have been caused by strangling someone.  See Fed. R. Evid. 701. |
| Statement 65: "'That'd be messed up if the paperwork on the guy I just got showed up.'  Ben Clark also sent Arturo Garcia a list of names of people in the pod."<br><br>Declarant: Ben Clark<br><br>Source: John Montano<br><br>Date: On or before June 17, 2007<br><br>Objections: None | The James hearing testimony indicates that Clark's oral remark referred to Sanchez, but the Court does not have enough context regarding that remark to determine whether it was made in furtherance of the conspiracy to kill Sanchez, as opposed to being an off-hard remark made for no particular purpose.<br><br>The James hearing testimony indicates that Clark provided the list of names to A. Garcia, "[s]o that he would know who was present at the pod and who would be next, or who hasn't put in work."  See Mar. 13 Tr. at 51:18-23 (Castellano, Stemo).  Clark's statement to A. Garcia was, thus, made during and in furtherance of the Count 3 conspiracy, so it is admissible for its truth against the Count 3 conspirators under rule 801(d)(2)(E). |
| Statement 66: "Edward Troup and Javier Alonso attempted to hide in John Montano's cell after lock down after the murder of Sanchez."<br><br>Declarant:  Edward  Troup  and | United States orally indicated that this statement is actually just an action, but it indicated that it is uncertain whether there were statements made that are associated with that act.  See Mar. 13 Tr. at 52:5-16 (Castellano, Court).  See also supra Statement 13 (analyzing the relationship between actions and statements). |

| | |
|---|---|
| Javier Alonso<br><br>Source: John Montano<br><br>Date: On or about June 17, 2007<br><br>Objections: Troup Response | |
| Statement 67: "Jimmie Gordon was asked to get information on Garza from Geraldine Martinez."<br><br>Declarant: Jimmie Gordon<br><br>Source: Jimmie Gordon<br><br>Date: On or before March 26, 2001<br><br>Objections: None | Geraldine Martinez was a prison librarian, and that Jimmie Gordon was asked to get information about Garza from Geraldine Martinez is a verbal action and not a statement. See supra Statement 13 (analyzing the relationship between verbal actions and assertions). Accordingly, Gordon's testimony about the request to obtain information about Garza does not relate hearsay. See Fed. R. Evid. 801(c). |
| Statement 68: "Billy Garcia put a hit on Archuleta which was communicated to Archuleta through 'Baby Zac' over a disagreement about Castillo's murder."<br><br>Declarant: Baby Zac.<br><br>Source: Gerald Archuleta<br><br>Date: None<br><br>Objections: B. Garcia Response | This statement is not admissible under rule 801(d)(2)(E), because Baby Zac did not tell Archuleta about the conspiracy to murder him in furtherance of that conspiracy. |
| Statement 69: "Brandy Rodriguez kicked Gomez and said, 'This is a message from Joe!'"<br><br>Declarant: Brandy Rodriguez<br><br>Source: Paul Rivera<br><br>Date: On or about February 27, 2016 | This statement is admissible as an excited utterance, see Fed. R. Evid. 803(2), and as a statement of the declarant's then-existing state of mind, specifically her motive, see Fed. R. Evid. 803(3). |

| Objections: A. Gallegos Response | |
|---|---|
| Statement 70: "Shauna Gutierrez stated she is 'ride or die' with Joe Gallegos, after admitting that she and Joe Gallegos put a hit on Brandy Rodriguez based on the belief Rodriguez was a cooperator." <br><br> Declarant: Shauna Gutierrez <br><br> Source: Paul Rivera <br><br> Date: On or about November 2016 <br><br> Objections: A. Gallegos Response, J. Gallegos Response | The United States intends to offer this statement dicates that this statement was made in furtherance of an uncharged conspiracy to harm B. Rodriguez premised on an erroneous belief she was cooperating with law enforcement. See March 13 Tr. at 55:9-14 (Castellano); id. at 55:19-56:16 (Court, Castellano)   The Court has not found that such a conspiracy existed, however, so this statement is not admissible under rule 801(d)(2)(E).   See supra note 9. <br><br> Gutierrez' statement that she is ride or die with J. Gallegos is admissible as a statement of the declarant's then-existing emotional condition. See Fed. R. Evid. 803(3). |
| Statement 71: "Christopher Chavez asked 'Is this right?' in reference to the Garza murders and Leroy Lucero said 'you got to do what you got to do.'" <br><br> Declarant: Christopher Chavez <br><br> Source: Leroy Lucero <br><br> Date: On or before March 26, 2001 <br><br> Objections: B. Garcia Response, Patterson Response | When Chavez indicated that he "wasn't sure about the murder, [he was] clarifying whether or not there was, in fact a green light on Mr. Garza." Mar. 13 Tr. at 57:16-20 (Castellano, Stemo). Consequently, both Chavez' question and Lucero's response were made during and in furtherance of the Count 2 conspiracy, so they are admissible against the Count 2 conspirators under rule 801(d)(2)(E). |
| Statement 72: "Javier Alonso asked if the marks on his hands were noticeable." <br><br> Declarant: Javier Alonso <br><br> Source: John Montano <br><br> Date: On or about June 17, 2007 <br><br> Objections: None | Alonso asked Montano this question after the Sanchez murder.   See Mar. 13 Tr. at 57:21-58:5 (Castellano, Stemo).   Consequently, this statement was not made during the conspiracy to kill Sanchez, so it is not admissible under rule 801(d)(2)(E). Alonso's question implicitly asserts that he has marks on his hands, but that implicit assertion is admissible as a present-sense impression.   See Fed. R. Evid. 803(1). |
| Statement 73: "Ordered the | Ruben Hernandez and Jesse Trujillo were both supposed to |

| | |
|---|---|
| surveillance cameras covered."<br><br>Declarant: Edward Troup and/or Jesse Trujillo<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: Troup Response | cover the surveillance cameras during the Sanchez murder, so corrections officers could not watch what was happening.  <u>See</u> Mar. 13 Tr. at 58:15-24 (Castellano, Stemo).   In separate statements to the United States, Hernandez mentioned both Trujillo and Troup.  <u>See</u> Mar. 13 Tr. at 58:11-14 (Castellano, Stemo).   Statements directing Hernandez to cover the surveillance cameras -- no matter whether Troup or Trujillo made those statements -- were made by a Count 3 conspirator during and in furtherance of that conspiracy, so they are admissible under rule 801(d)(2)(E) against the Count 3 Defendants. |
| Statement 74: "'Now hurry Bolo now you know what time it is.' (In reference to covering the cameras.)"<br><br>Declarant: Jesse Trujillo<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement was made by a Count 3 conspirator during and in furtherance of the Count 3 conspiracy, so it is admissible against the Count 3 Defendants.  <u>See</u> Mar. 13 Tr. at 58:25-59:8 (Castellano, Stemo). |
| Statement 75: "Just stay there and don't let no one in, use your crutch to block the door if you have to."<br><br>Declarant: Jesse Trujillo<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objection: None | This statement was made by a Count 3 conspirator during and in furtherance of the Count 3 conspiracy, so it is admissible against the Count 3 Defendants.  <u>See</u> Mar. 13 Tr. at 59:9-21 (Castellano, Stemo). |
| Statement 76: "'Ya stuvo (all done) take them off.' (In reference to the camera covers.)"<br><br>Declarant: Jesse Trujillo<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007 | This statement occurred after Sanchez' death, so it was not made during the conspiracy to kill Sanchez, so it is not admissible under rule 801(d)(2)(E).  <u>See</u> Mar. 13 Tr. at 59:22-60:5 (Castellano, Stemo).   The statement is admissible, however, as an excited utterance.  <u>See</u> Fed. R. Evid. 803(2). |

| | |
|---|---|
| Objections: None | |
| Statement 77: "Kyle asked Ruben Hernandez to take something to Samuel Gonzales and to tell Samuel Gonzales 'that was all he had.'"<br><br>Declarant: Kyle Dwyer<br><br>Source: Ruben Hernandez<br><br>Date: On or before June 17, 2007<br><br>Objections: Troup Response | The James hearing testimony indicates that Hernandez took a single folded piece of paper to Samuel Gonzales and that the contents of that piece of paper are unknown. See Mar. 13 Tr. at 221:19-222:3 (Blackburn, Stemo). Kyle Dwyer's statement to Hernandez is not admissible for its truth, but it is potentially admissible as circumstantial evidence of Dwyer's state of mind and for its effect on Samuel Gonzales. |
| Statement 78: "Samuel Gonzales asked if Sanchez was dead, then again asked 'For real is he dead?'"<br><br>Declarant: Samuel Gonzales<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | Samuel Gonzales asked Hernandez this question immediately after he delivered a piece of paper to Gonzales from Kyle Dwyer. See Mar. 13 Tr. at 61:1-3 (Castellano, Stemo). Gonzales' questions are not statements, so they are not hearsay. See supra Statement 13 (describing the relationship between verbal actions and statements). Those questions are admissible, however, as circumstantial evidence of Gonzales' state of mind. |
| Statement 79: "'Chicky' was cutting his sleeves off and asked Ruben Hernandez to hang up his wet sleeves."<br><br>Declarant: "Chicky"<br><br>Source: John Montano<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement was made after Sanchez died, so was not made during the conspiracy to kill Sanchez. See Mar. 13 Tr. at 61:12-14 (Castellano, Stemo). Accordingly, it is not admissible against the Count 3 Defendants under rule 801(d)(2)(E).<br><br>Chicky refers to Raymond Rascon. See Mar. 13 Tr. at 4-7 (Castellano, Stemo). That Rascon was cutting up his sleeves and his request to Hernandez are actions and not hearsay. See supra Statement 13 (analyzing the relationship between actions and statements). That there was "an indication or concern that Raymond Rascon was cutting off his sleeves because there might be something incriminating on the material," Mar. 13 Tr. at 61:15-19 (Castellano, Stemo), might be admissible as a present-sense-impression, an excited utterance, or a statement of the declarant's then-existing state of mind. See Fed. R. Evid. 803(1)-(3). |

| Statement 80: "Edward Troup told 'Chicky' to cut his sleeves in small pieces or give the sleeves to someone next door."<br><br>Declarant: Edward Troup<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: Troup Response | This statement was made after Sanchez died, so was not made during the conspiracy to kill Sanchez.  See Mar. 13 Tr. at 61:12-14 (Castellano, Stemo); id. at 61:20-24 (Castellano, Stemo).  Accordingly, it is not admissible against the Count 3 Defendants under rule 801(d)(2)(E).  It is, however, admissible as circumstantial evidence of Troup's state of mind, e.g., consciousness of guilt.<br><br>Troup's statement is admissible against him for its truth under rule 801(d)(2)(A). |
|---|---|
| Statement 81: "First thing in the morning we need you to move the body in the fetal position and wipe down the toilet."<br><br>Declarant: Brian Rascon and/or Edward Troup<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: Troup Response | The United States indicated, at the James Hearing, that both Brian Rascon and Troup made this statement at different times.  See Mar. 13 Tr. at 62:15-18(Castellano, Stemo).  This statement is admissible for its truth as a statement of the declarants' then-existing state of mind, i.e., their plan to have Hernandez clean the cell.  See Fed. R. Evid. 803(3).  It is also admissible to show its effect on Hernandez.  Further, Troup's statement is admissible against him for its truth under rule 801(d)(2)(A).  It is not, however, admissible for its truth under rule 801(d)(2)(E), because it was made after Sanchez' death, so it was not made during the conspiracy to kill Sanchez. |
| Statement 82: "'That's what we are all asking of you.' (Told to Ruben Hernandez when he didn't want to clean the cell.)"<br><br>Declarant: Brian Rascon<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: Troup Response | This statement is admissible for its effect on Hernandez and as circumstantial evidence of the declarant's state of mind.  It is not, however, admissible for its truth under rule 801(d)(2)(E), because it was made after Sanchez' death, so it was not made during the conspiracy to kill Sanchez. |
| Statement 83: "'Not [sic] that's an order, you already know what time it is.' (Told to Ruben Hernandez when he continued to not want to clean the cell.)" | This statement is admissible for its effect on Hernandez and as circumstantial evidence of the declarant's state of mind, i.e., Rascon's plan to have Hernandez clean the cell.  See Fed. R. Evid. 803(3).  It is not, however, admissible under rule 801(d)(2)(E), because it was made after Sanchez' death, so it was not made during the conspiracy |

- 106 -

| | |
|---|---|
| Declarant: Brian Rascon<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: Troup Response | to kill Sanchez. |
| Statement 84: "Ruben Hernandez asked if he was next for refusing to clean the cell and Brian Rascon said 'no, if the door is closed what can you do?'"<br><br>Declarant: Brian Rascon<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: Troup Response | Hernandez' question and Rascon's reply are admissible as circumstantial evidence of Hernandez' state of mind. The assertion implicit in Rascon's reply -- that Hernandez was not able to enter Sanchez' cell -- is not admissible for its truth unless Hernandez' testimony indicates that Rascon's implicit assertion is a present-sense impression. <u>See</u> Fed. R. Evid 803(1). |
| Statement 85: "'Your next mother fucker.' Said to Ruben Hernandez as they passed each other."<br><br>Declarant: Edward Troup<br><br>Source: Ruben Hernandez<br><br>Date: On or before June 17, 2007<br><br>Objections: None | This statement is admissible either for its truth as a statement of the declarant's then-existing state of mind, <u>i.e.</u>, as a statement of Troup's plan, <u>see</u> Fed. R. Evid. 803(3), or as circumstantial evidence of Troup's state of mind and not for its truth, <u>see</u> Fed. R. Evid. 801(c).<br><br>This statement is admissible for its truth against Troup under rule 801(d)(2)(A). |
| Statement 86: "We better be ready for hell cause we're fixing to go through hell."<br><br>Declarant: Jesse Trujillo<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: None | This statement -- indicating that the Trujillo expects law enforcement scrutiny, <u>see</u> Mar. 13 Tr. at 64:19-22 (Castellano, Stemo) -- is admissible as a statement of declarant's then-existing state of mind, <u>see</u> Fed. R. Evid. 803(3). |
| Statement 87: Edward Troup stated | Troup -- and not Rascon -- made this statement. <u>See</u> Mar. |

| | |
|---|---|
| that it was every man for themselves and if you can get a plea bargain for 15 or less do it but 'no fucking ratting,' 'that's a no no.'"<br><br>Declarant: Brian Rascon<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: Troup Response | 13 Tr. at 65:1-4 (Castellano, Stemo). This statement is admissible for its truth against Troup under rule 801(d)(2)(A). |
| Statement 88: "Go wipe down the toilet, don't worry about moving the body."<br><br>Declarant: Brian Rascon<br><br>Source: Ruben Hernandez<br><br>Date: On or about June 17, 2007<br><br>Objections: Troup Response | This statement is admissible notwithstanding the general rule against hearsay, because it is a verbal action and not an assertion. See supra Statement 13. |

reasonable prison-gang member might make self-inculpatory statements even if those statements were not true," so in-prison statements that one SNM member makes to another "are not typically admissible under rule 804(b)(3)." James MOO at 104.

The United States correctly argues that, when applying rule 804(b)(3), "the Court must look at each statement individually and assess whether the factors that courts look to for the required corroboration apply to each of the offered statements." 804(b)(3) MIL at 2. The Court's generalization about in-prison statements that one SNM member makes to another is not contrary to that principle, because the Court's generalization is a heuristic, a rule of thumb. Under some circumstances, an in-prison statement that one SNM member makes to another is such that "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true." Fed. R. Evid. 804(b)(3)(A). For example, in the James MOO, the Court applied its analysis to the particular facts surrounding the statements at issue:

> [W]hen Perez made his statements to Cordova, prison-yard rumors indicated, falsely, that Perez cooperated with the United States regarding the Molina murder. Perez' statements to Cordova suggest that those life-threatening rumors are false, because they demonstrate loyalty to the SNM, and because, if Perez helped carry out the Molina murder, then providing information to law enforcement would expose him to criminal liability. Consequently, a reasonable person in Perez' position might make self-incriminating statements regarding the Molina murder to another SNM member to combat life-threatening prison-yard rumors, even if those self-incriminating statements were not true.

James MOO at 104. The Court accordingly assesses individually each of the out-of-court statements that B. Garcia identifies to determine whether that statement is admissible for its truth against all the Defendants under rule 804(b)(3).[27]

---

[27]While the Court analyzes whether the statements that B. Garcia has identified are admissible for their truth under rule 804(b)(3) of the Federal Rules of Evidence, but the United States can attempt to admit statements under rule 804(b)(3) even if the Defendants had no pretrial notice regarding those statements. The United States has no obligation to provide

| Co-Defendant Statement[28] | Ruling |
|---|---|
| Statement 1: Alleged statement made by Edward Troup to James "Daffy" Garcia in which he allegedly indicates that B. Garcia ordered the hits.<br><br>Declarant: Edward Troup<br><br>Source: James Garcia<br><br>Date: 11/2012 | According to the J. Garcia 302, the FBI interviewed J. Garcia on May 9, 2013.  See J. Garcia 302 at 1.  In this interview, again according to the J. Garcia 302,<br><br>      In late November 2012, [J. Garcia] had a conversation with SNM gang member EDWARD TROUP in [redacted] back yard off of [redacted] in Albuquerque.  During the conversation, TROUP confessed to being a part of two murders in which two people were strangled to death at the Southern New Mexico Correctional Facility (SNMCF) in Las Cruces, New Mexico.  Troup stated that during one of the murders, he held 'Fed Dawg's' (agent note: identified as FREDDIE SACHEZ . . . ) legs while 'Wino' (agent note: identified as SNM gang member JAVIER Alonso, Jr. . . . ) strangled him to death with a drawstring from a laundry bag.  Both TROUP and ALONSO disposed of the drawstring and |

---

pretrial notice regarding the identities of its non-expert witnesses before trial.  See United States v. Russell, 109 F.3d 1503, 1510 (10th Cir. 1997)("In noncapital cases, moreover, there is no constitutional right to pretrial disclosure of witnesses."); id. ("Rule 16 does not require pretrial disclosure of nonexpert witnesses . . . .").  See also United States v. Tarango, 760 F. Supp. 2d 1163, 1170 (D.N.M. 2009)(Browning, J.)("The Court will not order the United States to reveal its witness' identities or disclose those witness' FBI 302s before trial.").  But see United States v. Russell, 109 F.3d at 1510 ("There is no constitutional barrier to trial courts requiring the mutual pretrial disclosure of witnesses. . . .  And we have long recognized the power of district courts to sanction violations of reciprocal discovery agreements.").  It would be incongruous if the United States were obliged to provide pretrial notice regarding the rule 804(b)(3) statements that its witnesses will relate at trial when it does not -- absent an agreement of the parties -- have to provide pretrial notice about who those witnesses will be.  That B. Garcia chose to identify out-of-court statements that he anticipates the United States will offer under rule 804(b)(3) allows the Court to provide pretrial guidance to the parties that will -- hopefully -- facilitate trial, but it does not accelerate the United States burden to establish -- under rule 804(b)(3) or otherwise -- that its evidence is admissible.

[28]The Court draws its list of Co-Defendant statements from a table that B. Garcia submitted at the Court's request.  The Court supplements that list of codefendant statements with entries for Joseph Otero and Josh Mirka; B. Garcia did not identify statements that those two individuals made until he filed the B. Garcia Supplement.  See B. Garcia Supplement ¶¶ 2-3, at 1-3.

then took off their clothes and tore up the evidence in an attempt to hide their part in the murder.    TROUP told [J. Garcia] that CHICKIE LNU [Last Name Unknown] and his brother cleaned up the mess that was made during the murder, to include Sanchez' urine.   TROUP also said that an unknown Corrections Officer (CO) thought that the inmates were giving each other tattoos, and did not respond to the area of the commotion, despite the fact that tattooing was considered contraband inside the prison facility.  As a result, the SNM gang members were able to carry out the murder without any CO intervention.  TROUP also mentioned that the murder of Fred Dawg was an order from headquarters, to which [J. Garcia] interpreted the term ' headquarters' to mean the main New Mexico Prison Facility in Santa Fe, New Mexico, where the majority of the SNM leadership was incarcerated.   [J. Garcia] stated that TROUP was remorseful and was crying during much of the conversation. TROUP told [J. Garcia] that Fred Dawg provided information on a murder, which was against the SNM by-laws, and that was the cause for his murder.

[J. Garcia] stated that TROUP had told him about SANCHEZ's murder in approximately 2008 when [J. Garcia] violated his probation/parole and was incarcerated in the New Mexico Prison System. Additionally, during the same conversation, TROUP provided [J. Garcia] with information regarding his role in the murder of [Frank Castillo] in approximately 2001 at the SNMCF.  TROUP told [J. Garcia] that that BILLY GARCIA, aka Wild Bill, gave the order to kill [Castillo], and that TROUP walked [Castillo] into his ([Castillo's]) cell where ANGEL DELEON and and [sic] others were waiting for [Castillo].  Once inside the cell, TROUP slammed the door, while DELEON and another SNM gang

- 113 -

member/associate strangled [Castillo] to death.

J. Garcia 302 at 2-3.

Assuming that Troup invokes his right to remain silent, he is unavailable for rule 804 purposes. See Fed. R. Evid. 804(a). Troup's statements indicating that he killed Sanchez and Castillo are sufficiently against Troup's penal interest admissible under rule 804(b)(3). See United States v. Smalls, 605 F.3d 765, 783 (10th Cir. 2010)("We may safely surmise that from time immemorial, only on the rarest occasion, if ever, has one of sound mind—even one of sound mind who is not particularly honest—falsely confessed a murder to an apparent acquaintance or friend."). Troup's statement indicating that B. Garcia ordered the Castillo murder is not, however, sufficiently self-inculpatory. See Williamson v. United States, 512 U.S. 594, 599 (1994)(stating that rule 804(b)(3) "cover[s] only those declarations or remarks within the confession that are individually self-inculpatory"); id. ("The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts."). Additionally, Troup's statements are admissible against him as admissions of a party opponent. See Fed. R. Evid. 801(d)(2)(A).

Whether Troup's statements are "supported by corroborating circumstances that clearly indicate [their] trustworthiness" is an issue that the Court will need to assess in light of the other evidence introduced at trial. Fed. R. Evid. 804(b)(3)(B).

> We believe that a showing of corroborating circumstances is sufficient if it gives the judge some assurance—when added to the fact that the statement was against the declarant's interest—that the declarant was telling the truth. And in determining corroborating circumstances, the court should consider all the factors listed in the draft Advisory Committee Note—not just the additional circumstantial guarantees of reliability but also the **amount of independent evidence supporting the truth of the declarant's statement**. All the listed

factors are pertinent to whether the declarant made an accurate statement; and figuring out whether the declarant gave an accurate account is, after all, the point of the enterprise.

Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 804.02[9] (emphasis added).

When J. Garcia testified at the Court's hearing on March 15-16, 2018, however, he disavowed portions of the J. Garcia 302:

> Q.     Has anybody ever admitted to you in a conversation with you that they were involved in those murders that happened at the Southern New Mexico Correctional Facility in 2001?  Has anyone ever told you that they did it?
>
> A.     No, not that I remember, no.
>
> . . . .
>
> Q.     Now, have you heard rumors about what happened there in 2001, from other inmates, or other people?
>
> A.     Yeah.
>
> Q.     But no one has personally said to you, "I did it," or "I was part of it"?
>
> A.     No.
>
> Q.     Or say out loud, "I was part of it"?
>
> A.     No.

J. Garcia Tr. at 3:16-4:9 (Castle, J. Garcia).  J. Garcia's hearing testimony is inconsistent with the J. Garcia statements that the J. Garcia 302 memorializes, which renders those statements -- including J. Garcia 302 statements relating Troup statements -- less credible.  See Fed. R. Evid. 612 (stating that a hearsay declarant's credibility may be attacked via "evidence of the declarant's inconsistent statement or conduct, regardless of when it

- 115 -

occurred").   J. Garcia's hearing testimony does not, however, make the Troup statements -- as opposed to the J. Garcia 302 statements relating the Troup statements -- any more or less credible, so that testimony is irrelevant to whether the Troup statements are "supported by corroborating circumstances that clearly indicate [their] trustworthiness." Fed. R. Evid. 804(b)(3)(B).  Put another way, J. Garcia's testimony is relevant to whether Troup made the statements that the J. Garcia 302 describes, but it is not relevant to whether those statements -- if Troup made them -- are trustworthy.  While the Court must determine, by a preponderance of the evidence, whether those statements are admissible for their truth, see Fed. R. Evid. 104(a), whether the statement was made at all is a conditional-relevance question which the jury decides if "proof [is] introduced sufficient to support a finding" that the statement was made, Fed. R. Evid. 104(b).  See id. advisory committee notes (listing, as a conditional relevance example,

If J. Garcia does not testify that Troup made the statements that the J. Garcia 302 describes, then the J. Garcia 302 is the only evidence indicating that Troup actually made such a statement, and the J. Garcia 302 is not admissible for its truth.  Hearsay within hearsay "is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.  See Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 805.02[2] ("[A] statement admissible under Rule 801(d) can be admitted when included in another hearsay statement if the other hearsay statement qualifies as an exception.").  The J. Garcia 302 is hearsay within hearsay within hearsay, because the J. Garcia 302 is a collection of out-of-court statements memorializing J. Garcia's out-of-court statements to the FBI, which relate Troup's out-of-court statements.

The first hearsay level -- the J. Garcia 302 itself -- is not admissible for its truth unless its author, Special Agent Lance Roundy, testifies, because "the primary purpose for which the [J. Garcia 302] was made was that of establishing or proving some fact potentially relevant to a criminal prosecution," so the J. Garcia 302 is testimonial.  United States v. Smalls, 605 F.3d at 778.  See Crawford v. Washington, 541 U.S. at 68 ("Where testimonial evidence is at issue [and the declarant does not testify], the Sixth

Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.").  Further, the Federal Rules of Evidence do not permit the J. Garcia 302 to be admitted for its truth as a public record, because it is a record setting out "a matter observed by law-enforcement personnel," which do not qualify as public records "in a criminal case."  Fed. R. Evid. 803(8)(A)(ii).  See supra, Federal Rules of Evidence Manual § 803.02[d] ("Under the predominant view, the exclusionary language [of rule 803(8)(A)(ii) and 803(8)(A)(iii)] covers only those police-generated reports that are prepared under adversarial circumstances -- in anticipation of litigation -- and so are subject to manipulation by authorities bent on convicting a particular criminal defendant.").  But see id. ("Courts have held, correctly we think, that the law enforcement exclusion in the rule is inapplicable if the public official who prepared the report actually testifies at trial.   The confrontation concerns that give rise to the statutory exclusions are allayed where the declarant is subject to cross-examination at trial.").  For the same reason, the J. Garcia 302 is not admissible as a record of a regularly conducted activity;

> In criminal cases, the argument has sometimes been made that a law enforcement report that is inadmissible due to the exclusionary language of Rule 803(8)(A)(ii) and (iii) can nonetheless be admitted as a record of regularly conducted activity under Rule 803(6). However, if the exclusionary language is properly applied so as to exclude only those law enforcement reports that are subjective and made under adversarial circumstances—which is the position taken by most courts, as discussed above—then there is no conflict between the rules. This is because records that are prepared in anticipation of litigation are excluded under the trustworthiness criterion of Rule 803(6); and those are, in effect, the only records that are excluded under the prevailing view of Rule 803(8).

Supra, Federal Rules of Evidence Manual § 803.02[e].  None of the other exceptions to the rule against hearsay

apply, so the J. Garcia 302 is admissible only if Roundy testifies.

Even if the United States renders the J. Garcia 302 admissible for its truth by calling Roundy as a witness, the second hearsay level -- the J. Garcia statements that the J. Garcia 302 contains -- is not admissible its truth.   No exception to the general rule against hearsay, <u>see</u> Fed. R. Evid. 802, applies; those statements are not excited utterance, for example, <u>see</u> Fed. R. Evid. 803(2). Additionally, J. Garcia's statements in an FBI interview are testimonial, so the Confrontation Clause permits their introduction only if J. Garcia takes the stand or if J. Garcia is unavailable.   of Evidence, even if J. Garcia testifies and thereby satisfies the Confrontation Clause.[29]   <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. at 68.

The third level of hearsay -- the Troup statements that the J. Garcia statements relate -- are admissible for their truth against Troup, <u>see</u> Fed. R. Evid. 802(d)(2)(A).  They are not admissible against any other Defendant under rule 802(d)(2)(A), however.

---

[29]Showing that J. Garcia is unavailable satisfies the Confrontation Clause, because J. Garcia testified at a pretrial hearing, so the Defendants have had "a prior opportunity for cross-examination."  <u>Crawford v. Washington</u>, 541 U.S. at 68.

| Statement 2: Leroy Lucero is a government witness. Lucero indicates Chavez and Joe Gallegos admitted involvement in the murder of Garza to him as did others. It is unknown whether Chavez and Gallegos implicated B. Garcia.<br><br>Declarant: Christopher Chavez, Joe Gallegos<br><br>Source: Leroy Lucero<br><br>Date: unknown | Chavez' statements are admissible against him for their truth as admissions of a party opponent under rule 801(d)(2)(A) of the Federal Rules of Evidence. J. Gallegos' statements are likewise admissible against him for their truth as admissions of a party opponent under rule 801(d)(2)(A) of the Federal Rules of Evidence.<br><br>When Lucero testified on March 16, 2018, he invoked his right to remain silent regarding the Castillo and Garza murders. See Mar. 16 Tr. at 160:3-7 (Castle, Lucero). The Court sustained that invocation, because Lucero had not been afforded any kind of immunity. See Mar. 16 Tr. at 157:18-20 (Beck)("I don't believe at this point we have provided him a Kastigar letter[30] and adequately debriefed him to have the protection."); id. at 158:24-25 (Court)("I'm inclined to sustain the privilege."). The Court is, thus, unable to make a pretrial determination regarding whether Lucero will testify at trial regarding statements that Chavez or J. Gallegos made or whether those statements will be admissible for their truth under rule 804(b)(3) of the Federal Rules of Evidence. |
| Statement 3: Fred Quintana is a government witness. Quintana indicates both Troup and Chavez admitted to involvement in the 2001 murders. It is unknown whether Chavez and Gallegos implicated B. Garcia.<br><br>Declarant: Edward Troup, Christopher Chavez<br><br>Source: Fred Quintana<br><br>Date: unknown | Chavez' statements are admissible against him for their truth as admissions of a party opponent under rule 801(d)(2)(A) of the Federal Rules of Evidence. Troup's statements are likewise admissible against him for their truth as admissions of a party opponent under rule 801(d)(2)(A) of the Federal Rules of Evidence.<br><br>The Quintana 1023 states:<br><br>2001 Murder of Frank Castillo and Rolando Garcia at the Southern New Mexico Correctional Facility in Las Cruces were called by BILLY GARCIA ("Wild Bill"). Several members participated in the double homicide and EDWARD TROUP and CHRISTOPHER CHAVEZ admitted to the |

---

[30]In Kastigar v. United States, 406 U.S. 441 (1972)(Powell, J.), the Supreme Court concluded that "the United States Government may compel testimony from an unwilling witness, who invokes the Fifth Amendment privilege against compulsory self-incrimination, by conferring on the witness immunity from use of the compelled testimony in subsequent criminal proceedings, as well as immunity from use of evidence derived from the testimony." 406 U.S. at 443.

| | |
|---|---|
| | murders during conversations with [Quintana]. |
| | Quintana 1023 at 2. The Quintana 1023 does not provide enough details about the statements that Troup and Chavez allegedly made to Quintana for the Court to make the fine-grained inquiry that <u>Williamson v. United States</u> requires. Consequently, the Court does not now conclude that those statements are admissible under rule 804(b)(3) of the Federal Rules of Evidence. The Court is willing to reconsider whether Troup or Chavez made statements that are admissible under rule 804(b)(3) when it has more information. |
| Statement 4: Ben Clark is a witness for the government. Clark indicated Angel Deleon, Troup and Joe Gallegos confessed their involvement in the 2001 murders to him and that one or both may have indicated that B. Garcia called the hit.<br><br>Declarant: Angel Deleon, Edward Troup, Joe Gallegos<br><br>Source: Ben Clark<br><br>Date: 2004 | Troup's statements are admissible against him for their truth as admissions of a party opponent under rule 801(d)(2)(A) of the Federal Rules of Evidence. J. Gallegos' statements are likewise admissible against him for their truth as admissions of a party opponent under rule 801(d)(2)(A) of the Federal Rules of Evidence. Deleon's statements, however, are not admissible under rule 801(d)(2)(A), because Deleon is not a Trial 2 Defendant.<br><br>Clark testified on March 15, 2018, and indicated that he had spoken with four individuals about the Castillo and Garza murders: "Eugene Martinez, Leonard Lujan, Edward Troup, and Joe Gallegos." Mar. 15 Tr. at 159:6-7(Clark). Clark indicated that E. Martinez, Troup and J. Gallegos did not say that B. Garcia ordered the Castillo and Garza murders. <u>See</u> Mar. 15 Tr. at 159:9-12 (Cooper, Clark)(discussing E. Martinez' statements); <u>id.</u> at 159:25-16:2 (Cooper, Clark)(discussing Troup's statements; <u>id.</u> at 160:9-12 (Cooper, Clark)(discussing J. Gallegos' statements). Clark indicated, however, that "Leonard Lujan did tell me Billy Garcia had something to do with it." Mar. 15 Tr. at 159: 13-17 (Cooper, Clark). According to Clark, Lujan told him "multiple times from '03 to '04 that Billy Garcia called those hits." Mar. 15 Tr. at 162:14-16 (Beck, Clark).[31] That B. Garcia ordered the Castillo and Garza murders does not, |

---

[31]Clark's testimony regarding Lujan's statements indicates that B. Garcia's recent assertion that "[w]itnesses Munoz, Clark, Lucero, Quintana, and Otero all testified that none of Billy Garcia's codefendants made any statements to them which implicated Billy Garcia" is false. Brief in Support of Inapplicability of [sic] Fed. R. 803(b)(3) (Doc. Nos. 1909 and 2009) ¶ 5, at 3, filed April 6, 2018 (Doc. 2085).

|  | taken alone, tend to subject Lujan to criminal liability, so those statements are not admissible for their truth under rule 804(b)(3).  See Williamson v. United States, 512 U.S. at 599.[32]<br><br>Additionally, the United States has not established that Lujan or E. Martinez is unavailable, which is a prerequisite for introducing any of Lujan's statements under rule 804(b)(3).  See Fed. R. Evid. 804(b)(3).  See also United States' Sealed Supplemental Witness List for Trial II at 2, filed April 9, 2018 (Doc. 2089)(listing Lujan and E. Martinez as witnesses). |
|---|---|
| Statement 5: Samuel Gonzales is a witness for the government. He indicates Troup made statements about the 2001 murders.  It is unknown whether Gonzalez indicates Troup implicated Billy Garcia<br><br>Declarant: Edward Troup<br><br>Source: Samuel Gonzales<br><br>Date: unknown | Troup's statements are admissible against him for their truth as admissions of a party opponent under rule 801(d)(2)(A) of the Federal Rules of Evidence.<br><br>According to the Samuel Gonzales 302:<br><br>Edward TROUP spoke to GONZALES about the 2001 murder of Rolando GARZA. TROUP did not provide details, but told GONZALES that he was there.  GARZA was killed because he was a known member of the rival prison gang Los Carnales.  Francisco CASTILLO was killed in 2001 because he "messed up" with Billy GARCIA.<br><br>Samuel Gonzales 302 at 5.  Those statements do not incriminate Troup, so they are not admissible as declarations against Troup's penal interests under rule 804(b)(3).  See Williamson v. United States, 512 U.S. at 599. |

---

[32]The Court can imagine, however, Lujan statements indicating that B. Garcia ordered the Castillo and Garza murders that would incriminate Lujan, e.g., "I obeyed B. Garcia's order to kill Castillo."

| | |
|---|---|
| Statement 6: Robert Lovato is a government witness. Lovato indicates that Christopher Chavez admitted involvement in the 2001 murder of Garza.<br><br>Declarant: Christopher Chavez<br><br>Source: Robert Lovato<br><br>Date: 2012 | Chavez' statements are admissible against him for their truth as admissions of a party opponent under rule 801(d)(2)(A) of the Federal Rules of Evidence.<br><br>The Lovato 302 indicates that "CHAVEZ talked about the murder of Rolando Garza and was paranoid that he might get caught for it. CHAVEZ was under the impression that law enforcement might be making some arrests in the case and was worried." Lovato 302 at 2. This statement is sufficiently inculpatory that a reasonable person in Chavez' position would not have made it if it were false. See Fed. R. Evid. 804(b)(3). The Lovato 302 indicates that that Chavez was very fearful when he talked to Lovato, which is a circumstance that corroborates the substance of Chavez' statement. See Fed. R. Evid. 804(b)(3)(B). |
| Statement 7: Julian Romero is a government witness. Romero indicates that Christopher Chavez confessed to his role in the 2001 murders.<br><br>Declarant: Christopher Chavez<br><br>Source: Julian Romero<br><br>Date: unknown | Chavez' statements are admissible against him for their truth as admissions of a party opponent under rule 801(d)(2)(A) of the Federal Rules of Evidence.<br><br>According to the Romero 302, "CHAVEZ admitted to Romero that he killed Garza." Romero 302 at 7. This statement is sufficiently inculpatory that a reasonable person in Chavez' position would not make the statement unless that person believed it to be true. See United States v. Smalls, 605 F.3d at 783 ("We may safely surmise that from time immemorial, only on the rarest occasion, if ever, has one of sound mind -- even one of sound mind who is not particularly honest -- falsely confessed a murder to an apparent acquaintance or friend."). |

| | |
|---|---|
| Statement 8: Timothy Martinez is a government witness.  T. Martinez claims that Christopher Chavez confessed to his involvement in the murders and during such confession implicates Allen Patterson in the murder.<br><br>Declarant: Christopher Chavez<br><br>Source: Timothy Martinez<br><br>Date: unknown | Chavez' statements are admissible against him for their truth as admissions of a party opponent under rule 801(d)(2)(A) of the Federal Rules of Evidence.<br><br>The T. Martinez 302 indicates Chaves told T. Martinez that Garza "'was getting up and was gonna escape and then Allen PATTERSON came in and tackled him (GARZA).  PATTERSON wasn't even in on the hit. He just gave skina and helped.'"  T. Martinez 302 at 5.  This statement only incriminates Patterson and not Chavez, so it is not admissible under rule 804(b)(3).  See Williamson v. United States, 512 U.S. at 599.<br><br>Under rule 801(d)(2)(A), the jury can use Chavez' statement to T. Martinez against Chavez and not against any other Defendant.    The portion of that statement describing Patterson's actions has little probative value vis-à-vis Chaves, but the jury may improperly use that portion of the statement against Patterson even if the Court gives a limiting instruction.  Consequently, serious rule 403 issues would attend any attempt to introduce that portion of Chavez' statement to T. Martinez. |
| Statement 9: "The defense is objecting to an alleged statement made by an unidentified declarant to Joseph Otero in which he allegedly indicates that Billy Garcia ordered the hits."   B. Garcia Supplement ¶ 2, at 1-2. | In a March 21, 2018 interview, Otero told the FBI that "Billy GARCIA gave the orders to kill GARZA." 3/21/2018 Conversation with Joseph Otero (drafted March 22, 2018) at 1, filed March 31, 2018 (Doc. 2009-1)("Otero 302").  The Otero 302 does not indicate whether Otero has personal knowledge regarding whether B. Garcia ordered the Garza murder, e.g., Otero could have overheard B. Garcia giving the order to kill Garza.  If, on the other hand, Otero lacks personal knowledge and believes that B. Garcia ordered the Garza murder because of someone else's out-of-court statement, Otero cannot testify that B. Garcia ordered the Garza murder.  See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  Otero could testify regarding the statements that he heard, notwithstanding rule 602, because Otero would have personal knowledge that the statements were made, but those out-of-court statements are potentially excluded by the rule against hearsay, but the limited record before the Court does not permit it to make a definite determination one way or the other. |

| Statement 10: "Josh Mirka is a witness for the government. He has made statements about who was responsible for the 2001 murders and recounts statements Christopher Chavez allegedly made to him which implicate Billy Garcia. | In a March 22, 2018 interview with the FBI, Mirka indicated that "CHAVEZ said that he was 'Sindicato,' that 'Bill runs the car' and all of the defendants planned to stick together." 3/22/2018 Interview of Josh Mirka (drafted March 23, 2018) at 1, filed March 31, 2018 (Doc. 2009-2). The United States indicates that it does not intend to offer the statements that Chavez made to Mirka under rule 804(b)(3). <u>See</u> Response Brief at 9. The United States intends, instead, to offer those statement as statements of the declarant's then-existing state of mind under rule 803(3), because Chavez' statement to Mirka "shows Defendant Chavez's intent in making statements to Josh Mirka at all: he intends to stick together with the SNM and Defendant B. Garcia is the leader of those in the SNM currently." Response Brief at 9-10.<br><br>Chavez' statement to Mirka is not, however, admissible for its truth under rule 803(3) of the Federal Rules of Evidence. That Chavez believes that B. Garcia is an SNM leader, <u>i.e.</u>, that B. Garcia runs the car, cannot be offered under rule 803(3) to show that Chavez' belief is true. <u>See</u> Fed. R. Evid 803(3)(stating that the then-existing state of mind exception to the rule against hearsay does not apply to "a statement of memory or belief to prove the fact remembered or believed"). Chavez' told Mirka that all of the Defendants plan to stick together, but rule 803(3) only applies to a statement of the declarant's then-existing plan. <u>See</u> Fed. R. Evid. 803(3). Thus, to the extent that Chavez' statement refers to the plans of Defendants other than Chavez, rule 803(3) does not apply. |
| --- | --- |