IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**
    **Plaintiff,**
v.                                              Case No. 15-CR-4268

DeLeon, et al
**EUGENE MARTINEZ**
    **Defendant.**

## RESPONSE TO ORDER TO SHOW CAUSE (DOC 2110)

### Factual Background

Martinez plead guilty to Count 2 of the Indictment in this case on May 5, 2017. The plea agreement was filed the same day. (Doc 1138). ¶9 of the plea agreement contains Martinez' admission of facts. Martinez was interviewed by the US Probation office on June 22, 2017. On April 12, 2018, undersigned counsel contacted the US Probation office and learned that there was not yet a draft PSR for Martinez, nor had the criminal history section been prepared.

Since Martinez entered his plea the following items have been disclosed to certain other defendants by agreement of the parties pursuant to stipulated orders and protective orders:

1) The BOP competency evaluation and Dr. Eric Westfried's competency evaluation. Undersigned counsel made redactions, after some inquiry by counsel for Billy Garcia regarding the scope of the redactions, undersigned counsel removed some of the redactions. Undersigned counsel is not aware of any objection made to the Court.

2) Mental health and medical records maintained by the NM Department of Corrections. Undersigned counsel reviewed those records and they were disclosed by the US Attorney without any redactions.

3) Most recently, undersigned counsel agreed to disclosure of the transcript of the competency hearing after having an opportunity to made redactions. Undersigned counsel has

reviewed and made redactions to the transcript and has emailed them to defense counsel as provided in the protective order and order to produce.

On April 11, 2018, undersigned counsel received the following email from Billy Garcia's defense team:

> We have moved for disclosure of the PSIRs or draft PSIRs of the witnesses. The judge has ordered these materials for many witnesses already but we need to inquire if you object and, if so, what are your objections. The government has agreed to redact personal identifying information and all we seek is the draft PSIR portion that includes the statement of the defendant, if he made one to probation, and the criminal history.
>
> Please be advised we need an answer in 48 hours due to urgency of trial and if we don't hear back we will assume you don't object.

Due to the inconsistency in what was being requested, undersigned counsel replied to everyone as follows:

> For clarification, you are seeking the paragraph of the PSR titled "Defendant's Version" and only that paragraph? Or, are you also seeking the Defendant's Statement of Acceptance? Or, are you seeking something else other than criminal history and the two items I refer to?
>
> I cannot agree to something that I haven't seen. I'd like to see whatever is being disclosed, and the opportunity to make my own redactions.

Undersigned counsel received two responses from Garcia's attorneys:

> We are seeking the entire PSR or draft of the PSR.
>
> Yes, the government will consult with you before turning anything over. That is the procedure.

Undersigned counsel responded as follows:

> Your request for the entire PSR or draft is far outside the scope of anything approved in Sasser, Dingle, Ventura or any of the district court cases citing those three cases.  Speaking only for Eugene Martinez, the prosecutor does not have a PSR, Eugene's PSR has not been disclosed, as of today there is not even a draft PSR for Eugene, and there will not be a defendant's version of the offense in the PSR – only a reference to the facts contained in the plea agreement.
>
> You are asking for something that does not exist, and if it did exist that is outside the scope of the case law. Therefore, I object.

2

The request for the entire PSR or draft PSR is beyond what was originally requested in Doc. 1694, where the defense "moves for production of Brady, Giglio or Jencks materials contained in presentence reports of cooperating witnesses or, in the alternative, for an in camera review on the following grounds," with citation to applicable case law.  The only specific showing is in ¶8 where the motion stated: "The presentence reports may contain statements by the witnesses as to what happened in this case which would be Jencks materials. The reports would certainly contain Giglio material such as criminal convictions, bad conduct, etc."  In ¶10, the defense proposed a procedure whereby "the government should be required to make an initial review and identify Jencks, Brady and Giglio material before the Court conducts its in camera review."  In Doc. 1717, the Government responded that it "does not oppose providing such information to the defense as a general matter and will disclose the remaining Jencks material in this case no later than February 12, 2018."  Undersigned counsel did not file a response to Doc. 1694 as a PSR for Eugene Martinez was not then available and is not to date available.  The motion followed the case law discussed below and in Docs. 2107 & 2112 filed by Frederico Munoz.

Doc. 1694 was addressed on March 14, 2018, at the Day 3 motions hearing, beginning at p. 90 and continuing thru p. 112 of the transcript.  For purposes of this response, the Court first addressed the situation of PSRs that actually existed and redactions (TR p. 96-101), with a discussion of personal identifying information, at one point the Court commenting " It's not your intent to keep what I'll call personal information; in other words, marriages, children, you're not trying to just redact that?" (TR p. 97).   Subsequently, the issue of PSR drafts was raised (TR p. 109).  The Court asked where the other not yet completed PSRs were, commenting "I tend to think that if they've taken some statements, they may need to produce that information." (TR p.

3

110).  AUSA Beck commented "the United States can't turn over what we don't have." (TR p. 110).  The discussion concluded with the Court directing the Government to "figure out where they are on all the people that are going to testify, and then send a letter. And then Mr. Burke, if you get the letter, you don't have a PSR, and you feel like there is drafts, prepare an order, run it past the Government. And then if they approve of the order, then I'll enter the order and order Probation to give --." (TR p. 111).

At 4:47 PM on April 13, 2018, all counsel received a disclosure from the discovery coordinator.  In the materials were completed PSRs for six (6) cooperating witnesses.  Each PSR states that the defendant is relying on the factual basis of the plea for his version of the offense.  A review of those PSRs reveals that the <u>only</u> redactions made were of personal identifying information of the respective defendant.  The following types of information was not redacted, although not necessarily in each PSR: 1) names of spouses, parents, siblings and children; 2) city and state of residence of family members; 3) occupation and in some instances the specific name/place of employment of family members; in one case the name and exact location of a child's employment as a correctional officer; 4) <u>specific</u> physical and mental health information about spouses, parents and children.  None of this information could possibly be considered *Brady* or *Jencks* material, or impeachment material.

**<u>Legal Authority</u>**

Doc. 1694 requested production of PSRs, with citation to applicable case law. Undersigned counsel did not file a response to that as a PSR for Eugene Martinez is not available.  The Order to Show Cause goes far beyond the request in Doc. 1694 as it extends to draft PSRs as well as the probation officer's notes, does not provide for *in camera* review by the

4

Court, was entered without a proper showing by the requestors and does not provide for review/redaction by defense counsel.

Prior to addressing applicable case law, it is important to state what Martinez' objection is <u>not</u> about. It is not about whether the Jencks Act is applicable or if Jencks material exists; Eugene did not give a version of the offense to the Probation Office, rather counsel indicated that the Defendant would direct the probation officer to the admission of facts in the plea agreement. Counsel has no objection to disclosure of a statement(s) about the offense, if one was made, however, counsel should have an opportunity to review it, just as counsel would have an opportunity to object if a PSR had been disclosed.

Similarly, this is <u>not</u> about criminal history. Undersigned counsel learned from the Probation Office that the criminal history section of the PSR had not been prepared. Martinez' criminal history has been disclosed in discovery in several forms, including a pen pack and in the competency reports to some degree. Most importantly, Martinez' history, at least as it pertains to cases in which he has been charged in New Mexico is available through New Mexico's Secure Odyssey. Therefore, Martinez does not have an objection to the Probation Office providing his criminal history, however, counsel should have an opportunity to review it, just as counsel would have an opportunity to object if a PSR had been disclosed. This is significant, as counsel informed the Probation Office at the PSI that there would be objections to at least two of Martinez' juvenile cases wherein dispositions were entered in violation of New Mexico law, namely an adult sentence was imposed after a finding of amenability to treatment as a child, and another adult sentence imposed after waiver of the amenability hearing.[1] These issues are

---

[1] New Mexico law is clear now that amenability cannot be waived in a situation such as Martinez', however, at the time Martinez entered his plea this issue may not have been as clear. ***See State v. Jones, 148 N.M. 1; 2010 NMSC 12***.

apparent in documents available in Secure Odyssey. Nor does Martinez object to disclosure of "Other Criminal Conduct," as possible Brady/impeachment material.

What is at issue is the scope of the Court's Order to Show Cause, the lack of a proper showing by the requestors and the proposed procedure for disclosing information to the requestors, all of which are contrary to case law. Martinez joins in and incorporates by reference the arguments and case law cited by Frederico Munoz in Docs. 2107 & 2112, while adding additional authority against the disclosure and procedure suggested by the Court's Order to Show Cause.

1. The PSR is a "unique" document of the court. *United States v. Pendleton, 12–06012–01–CR–SJ–GAF, 2014 WL 12703282 \*2, (W.D. Missouri, Magistrate Robert E. Larsen)* (the requirements of Brady apply only to the prosecution, not to the courts). Here, there is not even a report or draft of a report, nor does the prosecution have any such document. A court may in its discretion make an *in camera* inspection when a defendant alleges that the report contains Brady material, or rely on an examination of the report by a probation officer. *Id*.

2. An *in camera* review is not required without a threshold showing of a good faith belief that the report contains exculpatory evidence not available elsewhere, and requests for PSIs should not be used as a groundless fishing expedition. *Pendleton, \*3* (it is simply asking too much of district court judges to require that they review the presentence reports of all witnesses when there is no particular indication that the reports contain Brady material). The requestors here make only one specific threshold showing and that is for Martinez' version of the offense, a statement that does not exist beyond the admission of facts in the plea agreement. Requestors already have significant information about Martinez in the disclosed competency reports and

competency transcripts; the Court should require some showing that there is something more that is exculpatory or impeachment material in probation's materials.

      3.  Case law appears to distinguish between two circumstances, one where the PSR is in the possession of the prosecution and the other where it is not. *See United States v. Sasser, 971 F.2d 470, 480 (10th Cir. 1992)* (most other circuits permitted review under the Jencks Act if the PSR was in the hands of a prosecutor as distinguished from the probation officer, or have ordered production of parts of the report that contain impeaching material after in camera review by the court); *United States v. Ventura, 132 F.3d 44, 1997 WL 774750, *2 (10th Cir. Dec. 7, 1997) (unpublished)* (Other circuits that have addressed this issue have similarly concluded that a defendant may be entitled to a witness's PSR if it is in the hands of the prosecutor as distinguished from the probation officer, see, e.g., United States v. Trevino, 556 F.2d 1265, 1271 & n. 7 (5th Cir.1977), or, in the alternative, have approved of in camera review of the report by the court and subsequent production of any impeaching material); *United States v. Stipe,  No. CR-07-59-RAW, 2008 WL 346091 *1 (E.D. Oklahoma, Ronald A. White, District Judge)* (the Court has conducted an in camera review of the PSR and finds no "statements" for purposes of the Jencks Act nor any material discoverable under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972)).  In *Ventura*, the 10th Circuit concluded that, "The district court should have reviewed Holguin's PSR in camera." *Id. *3*.  Here, because there is no PSR and therefore the Government does not have a PSR in its possession, the only alternative supported by the case law is for an *in camera* review by the Court for impeachment material. The Court's suggestion here that the probation officer's notes should be disclosed with only the Government being required to redact "personal identifying information," has no precedent in the case law, and is contrary to the 10th Circuit's direction to District Judges in the *Ventura* opinion

that the Court "should" have reviewed the PSR *in camera*. Moreover, as illustrated by the already disclosed PSRs, the failure to allow redaction by counsel for each defendant resulted in the release of personal as well as health information about families of the cooperators.

    4.  Martinez reiterates the arguments contained in Doc. 2112 at ¶3 and ¶7.  First, the District Court's opinion in ***United States v. Adams***, identifying two concerns regarding releasing PSRs to third parties: (1) "the fear that disclosure of the reports will have a chilling effect on the willingness of various individuals to contribute information that will be incorporated into the report" and (2) "the need to protect the confidentiality of the information contained in the report." ***United States v. Abram, No. 07-CR-00366-WDM, 2009 WL 1588006 \*1 (D. Colorado)***. There, the Court noted that the Government was in possession of the PSRs for the cooperating witnesses prior to the defendant's trial, and ordered disclosure of "Parts A ("The Offense") and B ("Defendant's Criminal History")." ***Id. \*2***.  The Court continued:

> To protect confidentiality and willingness to disclose, as well as potential risk, the balance of the reports will not be disclosed as Defendant has not demonstrated any special need to compel such disclosure. Furthermore, I have made an in camera review of the remaining sections and conclude that it does not contain any exculpatory or obvious impeachment material.

***Id***.

Here, the items disclosed in ***Abram*** do not exist yet, and a statement by Martinez about the offense was not submitted so will never exist.  As stated above, Probation's information about other charges is readily available on Secure Odyssey and Martinez has no objection to disclosure of that information or other criminal conduct that will eventually be included in a PSR. However, Martinez remains opposed to any other disclosure without a threshold showing by the requestors and subsequent *in camera* inspection by the Court for "any exculpatory or obvious

8

impeachment material."  The "chilling" effect of the already disclosed PSRs is obvious given the type of information that was included.

Due to the nature of the proposed disclosure, undersigned counsel requests an opportunity to review/propose redactions to any proposed disclosure beyond any statement by Martinez about the offense or his criminal history, and the entry of a protective order for anything disclosed beyond Jencks material or criminal history.  Undersigned counsel carefully redacted similar information from the competency reports, the Court's order finding competency and the competency transcript, all without objection from other defendants, and protective orders were entered as agreed by the parties.

Respectfully submitted,

/s/ Douglas E. Couleur
Douglas E. Couleur
1640 Old Pecos Trail, Suite A
Santa Fe, NM 87505
(505) 984-1962
(505) 819-0522 (fax)
doug@couleurlaw.com

I certify that on April 15, 2018, I filed the foregoing pleading electronically through the CM/ECF system, which caused counsel of record for the United States and co-defendants to be served with a copy of this pleading by electronic means.

*Electronically filed* /s/ Douglas E. Couleur