1              IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5         VS.                        CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7         Defendants.

8

9         Transcript of 104 Hearing and Motion Proceedings
     before The Honorable James O. Browning, United States
10   District Judge, Las Cruces, Dona County,
     New Mexico, commencing on April, 4, 2018.

11

12   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck

13

14

15   For the Defendants: Mr. Brock Benjamin, Ms. Cori
     Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
16   Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
     Shattuck; Mr. John Granberg; Mr. Billy Blackburn; Mr.
17   Scott Davidson; Mr. Donovan Roberts; Ms. Lisa Torraco

18   For Fred Quintana:  Mr. Phil Sapien

19   For James Garcia:  Mr. Glazener

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1
 2              THE COURT:  All right.  Let's go on the
 3    record.  Let's everybody grab their seats.  And I
 4    think every defendant has at least one attorney here.
 5    So we'll get started.
 6              All right.  The Court will call the United
 7    States of America versus Angel DeLeon, Criminal
 8    Matter No. 15-CR-4268 JB.
 9              If Counsel will enter their appearances.
10    Let's start with Mr. Joe Lawrence Gallegos.
11              MR. BENJAMIN:  Good morning, Your Honor.
12    Brock Benjamin on behalf of Mr. Garcia.
13              THE COURT:  Mr. Benjamin, good morning to
14    you.  Mr. Gallegos, good morning for you.
15              THE DEFENDANT:  Good morning.
16              THE COURT:  And for Mr. Troup.
17              MS. HARBOUR-VALDEZ:  Good morning, Your
18    Honor.  Cori Harbour-Valdez and Pat Burke on behalf
19    of Edward Troup.
20              THE COURT:  All right.  Ms. Harbour-Valdez,
21    Mr. Burke, Mr. Troup, good morning to you.
22              THE DEFENDANT:  Good morning, sir.  Good
23    morning to you.
24              THE COURT:  And for Mr. Billy Garcia.
25              MR. COOPER:  Good morning, Your Honor.  Bob
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Cooper and Jim Castle on behalf of Mr. Garcia, who is
 2    present today.
 3              THE COURT:  Mr. Cooper, Mr. Castle, and Mr.
 4    Garcia, good morning to you.
 5              MR. COOPER:  Good morning.
 6              THE COURT:  And let's go to Mr. Shattuck.
 7              MR. SHATTUCK:  Good morning, Judge.  Joe
 8    Shattuck and Jeff Lahann for Mr. Patterson.
 9              THE COURT:  Mr. Shattuck, good morning to
10    you.  Mr. Lahann, good morning to you.  And Mr.
11    Patterson, good morning to you.
12              THE DEFENDANT:  Good morning, Judge.
13              THE COURT:  And for Christopher Chavez.
14              MR. GRANBERG:  Good morning, Your Honor.
15    John Granberg for Christopher Chavez.
16              THE COURT:  All right.  Mr. Chavez,
17    Mr. Granberg, good morning to you.
18              And for Arturo Arnulfo Garcia.
19              MR. BLACKBURN:  Billy Blackburn and Scott
20    Davidson on behalf of Mr. Garcia, Your Honor.
21              THE COURT:  All right.  Mr. Blackburn, Mr.
22    Davidson, and Mr. Garcia, good morning to you.
23              THE DEFENDANT:  Good morning.
24              THE COURT:  And for Andrew Gallegos?
25              MR. ROBERTS:  Good morning, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Donovan Roberts and Lisa Torraco for Andrew Gallegos.

2              THE COURT:  All right.  Mr. Roberts,

3    Ms. Torraco, and Mr. Gallegos, good morning to you.

4              THE DEFENDANT:  Good morning.

5              And then for the Government.  I should have

6    started there.

7              MS. ARMIJO:  Good morning, Your Honor.

8    Maria Armijo, Randy Castellano, and Matthew Beck on

9    behalf of the United States.

10             THE COURT:  All right.  Ms. Armijo, Mr.

11   Castellano, and Mr. Beck, good morning to you.

12             The first thing I want to do is me come off

13   the bench, and the attorneys come over here with

14   me -- the defense lawyers -- and I'm going to decide

15   and take a look at this arrangement.  Mr. Roberts had

16   some concerns when he came in on the other trial.  I

17   think that all the defense lawyers on the first

18   trial, they took a look at what Mr. Roberts was

19   looking at.  When the defense lawyers came in, their

20   defendants didn't see any of the things that

21   Mr. Roberts saw.  So I welcome the defense lawyers to

22   sit here in the jury box, and let's take a look.  We

23   have not used the white before, so the white is

24   different.  And I just want to make sure that the

25   light doesn't pick up anything.

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                         (505) 843-9494
FAX (505) 843-9492                                                             FAX (505) 843-9492
                                                                                      1-800-669-9492
                                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1            MR. ROBERTS:  Could I ask that the screen
 2    be turned on.
 3            THE COURT:  Are you able to do that?
 4            THE CLERK:  I'll have to figure out how.
 5            THE COURT:  Let's see if the jury -- all
 6    right.  Mr. Troup, why don't you stand up.  So
 7    anybody seeing anything there?  I'm not seeing
 8    anything.  Good.  Y'all are welcome to look here,
 9    too.  This wasn't in the first trial, and I was
10    disappointed that it was not in the first trial, but
11    it is in the second trial, and we intend to leave it
12    there throughout the trial or, certainly through voir
13    dire, so we don't have any -- Mr. Garcia, do you want
14    to stand up.  Anybody see anything?
15            MR. ROBERTS:  No.
16            MR. CASTLE:  Just his pretty face.
17            THE COURT:  The white doesn't seem to do
18    any different than the black.  Anybody else want to
19    stand up?  Just call out your client's name if you
20    want them to stand up and look.  Anybody want to take
21    a different angle?  Anybody want to see?
22            All right.  Now, gentlemen, we're going to
23    great lengths.  You know, nothing is perfect in this
24    world.  We're going to great lengths to make sure the
25    jury does not see your shackles on your feet.  You're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    not going to be handcuffed during the trial, so

2    they're not going to see handcuffs.  And your counsel

3    are really going to dress you up, so you're going to

4    look pretty good.  Don't do anything to show them the

5    ankle restraints.  I don't want them to see them.  I

6    don't think you want them to see them, and your

7    counsel doesn't want them to see them.

8            So if something happens, don't move.  We'll

9    get the jury out of here, I'll get the jury out of

10   here, and then you can move.  If something comes up,

11   don't move, and stay behind there, and don't do

12   anything to, you know, show those leg restraints,

13   okay?  Because we're working real hard to make sure

14   that you get a fair trial and they don't see those

15   leg restraints and don't start thinking about them

16   and don't start dwelling on them in any way.  So help

17   me out, because we're going to do everything we can

18   to make sure the jury never thinks about you men

19   being in custody or restraints or anything like that.

20   So we don't want them to be thinking about that.

21           We want them to be thinking about the

22   evidence.  We want them to be thinking about the

23   arguments.  And that's all we want them to be

24   thinking about.  So really work with us to try to

25   make sure that they just don't see those leg

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   restraints.  If somebody has got to move, don't move,
2   let your counsel say, "Judge," something.  And the
3   lawyers, they've been through this, they'll help me
4   and they'll help you.
5            All right.  Anything anybody else wants to
6   say or do as far as just seeing the restraints?
7            All right.  Let's everybody take our seats
8   then.
9            All right.  Now, I've got a stack of
10  motions that I know we've got to get through.  And
11  Ms. Wild and other people have tagged to these
12  motions that:  This has got to be argued first; this
13  has got to be argued first.  Well, I can only argue
14  one thing first, I can't argue them all.
15           The thing I have up for argument first,
16  just as far as batting order, is continuing with
17  these bad acts.  But if y'all have -- I think
18  Mr. Billy Garcia's bad acts are up first.  But if
19  y'all do have something you want to argue first, and
20  everybody is in agreement with it, then I'm willing
21  to go there.  Or we can just start plowing through
22  the bad acts.
23           Mr. Davidson?
24           MR. DAVIDSON:  If we could address my
25  motion to continue?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Let me talk to
 2    everybody here.  Mr. Davidson has filed a
 3    supplemental motion.  I think everybody has seen his
 4    motion that he filed on March 22.  He filed yesterday
 5    or the day before yesterday a supplemental motion
 6    that I think only the Government and the Court, and
 7    that's it -- he filed so that only those parties
 8    could see.  I guess the question is:  Does anybody
 9    have any problem with me seeing this, given that
10    other people are not seeing it?  Does anybody have
11    any objection to me seeing it but the other defense
12    lawyers and defendants not seeing it?
13              MR. DAVIDSON:  No, Your Honor.
14              THE COURT:  Not hearing any objection, then
15    how do you wish to proceed, Mr. Davidson?
16              MR. DAVIDSON:  Well, Your Honor, I just
17    want to clarify.  I don't think the Government saw
18    it.
19              THE COURT:  So the Government didn't see
20    it.  Do you have any problem then with me seeing it
21    and the Government not seeing it?
22              MS. ARMIJO:  No, Your Honor, we don't need
23    to see it.  I believe, in general, he has spoken to
24    us about it.
25              THE COURT:  Okay.  All right.  So then how
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    do you want to the proceed, Mr. Davidson?
2              MR. DAVIDSON:  I'd like to address the
3    Court.
4              THE COURT:  Okay.  Mr. Davidson, I think
5    everybody expresses their thoughts to you, and we're
6    sorry you and your family are having to go through
7    this.  So it's tough.  And I send you and your family
8    and your wife our thoughts as y'all go through this.
9              Mr. Davidson.
10             MR. DAVIDSON:  I appreciate that, Your
11   Honor.  I don't need to, I think, restate the facts.
12   But, essentially, the bottom line is for the last
13   several months, I have not been able to be a fully
14   effective member of the defense team for my client.
15   And my wife's recovery is ongoing, and there are
16   anticipated to be additional treatments that are
17   going to require me to be in Albuquerque during the
18   pendency of the trial.  And for these reasons, I feel
19   it's necessary for me to withdraw as co-counsel for
20   Mr. Garcia.  And then I would ask that the Court
21   appoint replacement counsel to assist Mr. Blackburn
22   in representing Mr. Garcia in this case.
23             The second and third related forms of
24   relief requested in the motion are to sever
25   Mr. Garcia from the trial beginning on April 9, on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Monday, and continue that to a later date, at which

2  point an effective team of two lawyers for Mr. Garcia

3  can be assembled, basically replacement counsel found

4  for me to assist Mr. Blackburn representing

5  Mr. Garcia, and continue that to a later date.

6          Alternatively, the Court could sever out

7  Count 3, which would include Mr. Troup and

8  Mr. Garcia, from the trial proceeding on Monday.

9          Those are the forms of relief that we're

10 requesting.

11         The motion to withdraw is unopposed by all

12 parties.

13         The motion to sever and continue, when I

14 sought the Government's position, the Government was

15 opposed to severing and continuing Mr. Garcia's

16 portion of the trial.  I'm not sure if the

17 Government's position on that has changed.

18         THE COURT:  All right.  I have some

19 questions.  But I may ask some of those questions up

20 here at the bench here in a moment.

21         Mr. Blackburn, do you want to address this

22 situation?

23         MR. BLACKBURN:  Sure, Your Honor.  I don't

24 think there is anyone in the courtroom that doesn't

25 understand or have their thoughts for great recovery

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    for Mr. Davidson for his wife.  Those of us who know

2    her personally, it's heartbreaking for all of us.  As

3    the Court knows, Mr. Davidson is in my office with

4    Mr. Cooper.  So we see Scott and his wife Jenny all

5    the time, and their kids.  So it's been pretty

6    nerve-racking around our office.  But as the Court

7    says, and I think everybody agrees, that we wish them

8    all the best recovery.

9            I can only relate to state a couple of

10   things in support thereof.  I think it's important

11   for Mr. Davidson to withdraw from the case.  I mean,

12   seeing him at the office and watching what is going

13   on -- just last week, he had an all-day appointment

14   with his wife.  And I needed to talk to him about

15   issues, and went down about 9:00 in the morning, and

16   they told me he wouldn't be back until 3:00 that

17   afternoon because of the number of medical

18   appointments she had.  And when I went down to talk

19   to him that afternoon, I might as well have been

20   talking to the wall, because, you know, it was

21   obvious that his concentration was not with what I

22   was trying to ask him about -- certain things that

23   relate to this particular trial, and just in life in

24   general, because of the all-day procedures that he

25   had gone through with his wife.  So, obviously, that

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    has made it very difficult for us.
 2            I know that Arturo Garcia has sent his best
 3    wishes to Mr. Davidson.  He doesn't want -- I don't
 4    think anybody wants Mr. Davidson to have to be
 5    worried about a trial while this is going on.
 6            The recovery is going to be long.  I mean,
 7    I went through this last year with my elderly mother
 8    who was in the hospital for quite some time with
 9    colon cancer, so I sort of know what he's going
10    through under the circumstances.  You just have a
11    blank mind.
12            The problem exists, though, as it relates
13    to having a second part of the team.  And
14    Mr. Davidson has been with us for 16 months.  I don't
15    think there is anybody in the courtroom that has --
16    at least on the defense side -- that could say that
17    under the circumstances, that if you lose an integral
18    part of your defense team so late in the game, that
19    the one standing person left could effectively go
20    forward.
21            Just in the last month, since
22    Mr. Davidson -- or the last three weeks -- since
23    Mr. Davidson made his decision, there is not enough
24    hours in the day for me and my staff to try and
25    handle all of this.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              I can speak for Mr. Garcia, and
 2   Mr. Garcia's position is -- and he's told me this
 3   several times -- that he wants somebody who is going
 4   to be here and he wants somebody who is going to be
 5   effective and he wants somebody to help.  And we have
 6   thought about alternatives.  I think, with all due
 7   respect, I think the only alternative is to -- the
 8   only alternative, in my opinion, is to let
 9   Mr. Davidson withdraw, and then sever us out, and
10   go -- either stick us with the case that's going in
11   July; somehow put that in the 1613 case.  Or do
12   something that would be able to -- if Mr. Davidson is
13   going to remain out, to stay out, and to get somebody
14   to be able to be involved in both of those cases.
15              I don't know if the Court wants to actually
16   talk to Mr. Garcia.  But I just express those things
17   to you.
18              And, of course, my position is, just like
19   anybody else under the circumstances, it's just
20   practically impossible.  I would probably go around
21   the room and ask every one of these defense attorneys
22   here, number one, if they thought that they could be
23   effectively going to trial on an eight-week trial,
24   knowing that the person is looking at life
25   imprisonment, with just one person.  I think that in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the motion -- and actually in the supplemental

2    motion, we sort of laid out divisions of labor, and

3    who was going to do what.  And now, that's all going

4    to change.  It's going to be impossible.  I know if

5    there was some type of alternative that Mr. Davidson

6    would come down one day a week, or that maybe he

7    would be in Albuquerque to work on stuff.  That's

8    just not going to work.  If I have to cross-examine

9    every witness that comes in here, the ability for me

10   to walk over and -- walk over and ask Mr. Lahann,

11   Hey, did I miss anything?  Can you tell me -- on this

12   cross-examination, can you tell me what I missed?

13   And Mr. Lahann doesn't know my case.  And he's going

14   to say -- he's not going to be able to help me.  You

15   know, none of the teams -- I mean, Mr. Castle and Mr.

16   Cooper, who have prepared a lot for their case and

17   knows a lot of facts as it relates to them, they're

18   not familiar with my case.  They may be familiar with

19   the enterprise, but they're not familiar with my

20   case.  So I can't walk over and ask Mr. Castle, say,

21   Hey, what did I miss?  You know, help me out here.

22          And there is no way that Mr. Davidson could

23   do that if he was in Albuquerque or participate under

24   those circumstances.

25          So I think the Court knows where we're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    coming from.  I mean, I don't think there is going to
 2    be any prejudice, if we somehow figure out how this
 3    is moved down the road, so that we can try this
 4    somehow or have somebody else come in and help under
 5    the circumstances, whether we figure out a second
 6    trial, or if there has got to be one trial just for
 7    them that's put down the road at some point in time,
 8    when -- the Court is worried about its schedule, the
 9    Court could always give that to a visiting judge or
10    something along those circumstances.
11              There is another issue that has just
12    arisen, that I think at some point in time we need to
13    address, that relates to this whole separate issue.
14    And I just want to throw that out to the Court to
15    think that we're just not -- I don't want to be in
16    the position that the Court doesn't think that we're
17    not bringing everything forth at the time that we
18    can.  Or, in the alternative, that something is being
19    held back.
20              But I think that's point one, is where
21    we're at now.  I think the second thing that at least
22    I need to tell the Court now about, and we can
23    discuss that after the Court talks to us about this
24    particular motion, is that the Government has
25    indicted James Daffy Garcia.  And as I understand
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    now, Mr. Garcia has agreed to cooperate and will
 2    testify for the Government.  In 1994, I represented
 3    Mr. Garcia in a murder case in Albuquerque.  I was
 4    his attorney.  The case went to trial in 1996.  It
 5    involves a gang matter, of which wasn't SNM, but for
 6    which he went to prison on.  So that's a separate
 7    issue, but I think the Court needs to be aware of
 8    that while we're discussing these issues with
 9    Mr. Davidson.
10              If the Court has any questions for me, I'm
11    more than happy to address those at this point in
12    time.
13              THE COURT:  Well, let me get everybody's
14    position, then I may talk to some of you up here at
15    the bench about some questions.  Thank you, Mr.
16    Blackburn.
17              MR. BLACKBURN:  Right.  And you know, and
18    Judge, in preparation for this this morning, I came
19    up with 100 scenarios as to what would happen.  Just
20    small little scenarios of just having one person
21    here.  And will just share a couple of them with the
22    Court while I'm here.  Last week, or when we were
23    down here two weeks ago, you know, I've known Mr.
24    Cooper for -- since we were in law school together.
25    And there is only one person I know that's had more
```

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                    1-800-669-9492



```
 1   kidney stones in his life than him, and that's me.
 2   So a couple of weeks ago, when we were here he turned
 3   18 shades of white, and was running around this
 4   courtroom like a chicken with his head cut off, and
 5   grabbing his back because -- and I knew exactly what
 6   was going on, because being in the same office as
 7   him, he had kidney stones like two weeks prior.  I
 8   didn't see him for two or three days.  So we sent him
 9   back to the hotel; would check on him occasionally.
10   And, of course, that's what happened, he had kidney
11   stones, so he had to leave the courtroom.
12              So at this point in time, I was already
13   aware that Mr. Davidson was working on the motion to
14   withdraw at that point in time, and I'm sitting there
15   thinking, like, okay, what am I going to do under
16   these circumstances, if I'm here by myself?  It would
17   disrupt proceedings.  All sorts of things can happen
18   that would relate under those circumstances.  I'm not
19   saying that I'm going to get kidney stones under any
20   circumstance because that's the last thing that
21   anybody ever wants to have happen, for those who have
22   had kidney stones in their life.  But that was just a
23   thought process that came in.
24              And as I said, I have several scenarios,
25   and another issue that if we need to talk about at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   the bench with the Court under those circumstances.
 2   But I was just trying to figure out how disadvantaged
 3   I would be by not having Mr. Davidson here.  And it
 4   would be impossible to have -- for us -- I called --
 5   I'm sorry I forgot to mention this.  I called Steve
 6   McCue as soon as this happened, and talked with him
 7   about finding me -- one, discussing with him:  Can
 8   you find me somebody who can help, and can you find
 9   somebody who you think would be willing to sacrifice
10   eight weeks of their life to come down here at this
11   point in time to do this case.  And he said that they
12   were tapped out completely on anybody that had the
13   experience necessary to do that.  And that he just
14   thought at that point in time it would be futile.  To
15   just have somebody that is not familiar with this
16   case, or just to have somebody who is not on the
17   complex panel to come in at this point in time to sit
18   here through trial, I think would be even far more of
19   a problem.  I, personally, do not have time to
20   baby-sit anybody now -- not baby-sit, but to be able
21   to have -- to talk to somebody about how they need to
22   get prepared for trial, by just getting prepared for
23   trial myself.
24          So I think that was an issue, so, again, I
25   don't have any further comments at this point in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    time, unless the Court wants to hear something else
 2    from us.
 3              THE COURT:  I may here up at the bench.
 4    Thank you, Mr. Blackburn.
 5              How about any of the other defendants?
 6    Anybody else want to speak on this issue here at the
 7    bench?
 8              THE COURT:  Yes.  Mr. Burke.
 9              MR. BURKE:  Your Honor, it really is
10    unfortunate that this is coming up now.  But Mr.
11    Blackburn's conflict is far more serious and severe
12    than Michael Davis' was.  So I'm not sure how to
13    handle it.  But one way would be to strike Daffy --
14    James Daffy Garcia as a witness, and then that would
15    resolve the conflict issue.
16              And I suppose another way would be to sever
17    Count 3 altogether.  I'm not sure -- ultimately, it
18    would end up with more trials, because Arturo Garcia
19    is facing a trial, 1613, and Edward Troup would still
20    be going to trial here.  I kind of doubt the
21    Government, if they achieve a conviction on Mr. Troup
22    in this trial, would need to try him again on Count 3
23    down the road.  So, as a practical matter, severing
24    Count 3 or striking Daffy Garcia as a witness would
25    solve the problem.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Thank you, Your Honor.
 2              THE COURT:  All right.  Thank you, Mr.
 3    Burke.
 4              Any other defendant want to speak on it?
 5              All right.  Ms. Armijo?  Mr. Castellano?
 6    Thoughts on this?
 7              MS. ARMIJO:  And, Your Honor, we're
 8    strictly dealing right now with the issue of
 9    Mr. Davidson; correct?
10              THE COURT:  Yes.  I mean, people are
11    beginning to raise other issues, but I've got to deal
12    with that motion.  So that's the one I'm focusing on
13    right at the moment.
14              MS. ARMIJO:  As far as that, you know, we
15    certainly understand the issue here.  We will point
16    out that Mr. Blackburn is learned counsel on this
17    case, and that he has been on this case since, I
18    think, I believe, at the beginning of this case.  And
19    so, you know, despite the luxury of all of these
20    people having two attorneys, he certainly can handle
21    this case as far as Mr. Blackburn, as far as one
22    attorney.
23              But that being said, I think that the issue
24    that needs to be resolved first is probably Mr.
25    Blackburn's issue.  Because that may change the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    course of how the Court is going to deal with

 2    Mr. Davidson.  So, in our opinion, we think that Mr.

 3    Blackburn's issue is probably the most important one

 4    to be dealt with.

 5              THE COURT:  Well, I know nothing about it.

 6    So if the Government is going to disqualify Mr.

 7    Blackburn, then, you know, it probably needs to move

 8    and educate the Court about whether he represented

 9    him on a similar interest.

10              MS. ARMIJO:  Your Honor, this matter

11    initially came up, I believe, during the December

12    hearings.  And Mr. Blackburn certainly has been aware

13    of it for a number of years, since he represented

14    Mr. Garcia.

15              THE COURT:  Sounds like the Government has

16    been aware of it, too.

17              MS. ARMIJO:  The Government was aware of

18    it.

19              THE COURT:  And y'all haven't filed a

20    motion to date, so are you filing a motion to

21    disqualify him on the eve of trial?

22              MS. ARMIJO:  We will file a motion today,

23    Your Honor.

24              What has happened is, Mr. Garcia --

25              THE COURT:  Are you moving to disqualify
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   him?
 2              MS. ARMIJO:  We will raise the conflict for
 3   the Court to --
 4              THE COURT:  You know, you've got to get off
 5   the edge of the fence.  You've got to start telling
 6   the Court what you think about these instead of just
 7   throwing your problem after every problem in front of
 8   the Court.  You've had discovery problems, you've had
 9   attorneys problems.  You just literally throw them in
10   the lap of the Court.  And you've got to start making
11   some decisions.  So make it today, and tell the Court
12   whether you want him disqualified or not.
13              MS. ARMIJO:  We feel that he has a
14   conflict, Your Honor.  The issue is -- and the reason
15   I say we're leaving it to the Court, is because we
16   felt that Marc Lowery had a conflict.
17              THE COURT:  You're not going to do what the
18   Court asked you to do?
19              MS. ARMIJO:  No, we are.  We feel that he
20   has a conflict and we feel that he should be
21   disqualified.
22              THE COURT:  You do?
23              MS. ARMIJO:  We feel that it is of a
24   nature -- we feel he should be disqualified unless
25   the Court makes a finding that the murder that he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   represented him is not going to be admitted into

2   evidence.  And that's why I say it's a little bit

3   more complex than that.  But his murder from 1990 --

4            THE COURT:  Why didn't you raise this issue

5   earlier?  If you've known about it since December,

6   why didn't you raise it earlier?

7            MS. ARMIJO:  I believe we actually raised

8   it orally before the Court.  But Mr. Garcia was not

9   Government friendly recently, and so it wasn't as

10  pressing, because we didn't believe he was going to

11  be talking to the Government.  He had not been -- as

12  the Court saw when he came, he was not exactly a

13  friend of the Government previously, when he was

14  contacted by the FBI.  Although we had statements

15  from him, I believe that when they had last contacted

16  him, he was not inclined to come forward to the

17  Government.

18            And then we started the trial, as you know,

19  a few weeks ago, when he was brought before the Court

20  by the defense, it raised all other sorts of issues.

21  He has since been indicted.  And yesterday he -- with

22  his new attorney that was familiar with criminal law,

23  sat down with the Government, and he provided a

24  statement to the Government, and is willing to

25  cooperate with the Government.  So it really isn't

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                              1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

```
 1   until yesterday that Mr. Garcia has decided to
 2   cooperate.  We anticipate him pleading guilty and
 3   testifying.
 4          At that point in time, I believe that Mr.
 5   Blackburn -- we raised this issue again with him.
 6   And he knew about the issue last week when Mr. Garcia
 7   testified as well.
 8          So to that extent, that is why it is now
 9   ripe and in our faces, so to speak, whereas
10   previously, it was not.
11          THE COURT:  Well, I'll give that some
12   thought as to whether it was any more ripe now than
13   it was in December, but -- all right.  Do you have
14   anything else you want to say on Mr. Davidson's
15   motion?
16          MS. ARMIJO:  On Mr. Davidson's motion?
17          THE COURT:  Yeah, that's what was teed up.
18          MS. ARMIJO:  No.  That's why I indicated
19   that I think the other issue --
20          THE COURT:  I know what you think.  But do
21   you want to say anything on Mr. Davidson's motion?
22          MS. ARMIJO:  No, Your Honor.
23          THE COURT:  All right.  Let me see
24   Mr. Davidson and Mr. Blackburn and the Government, if
25   they want to send somebody up here -- and I think
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I'll need Mr. Garcia up here as well -- so if the

2    marshals want to bring him up here.

3              (The following proceedings were held at the

4    bench.)

5              THE COURT:  I'm going to take these issues

6    one at a time, because there is enough complexity to

7    each one of the issues.  So I'm going to take your

8    motion up first.  I've read your motion twice.  I

9    read the motion when it came in.  And, of course, the

10   first thing I did is have Ms. Wild, and I think Ms.

11   Bevel as well, talk to Mr. Blackburn about the

12   situation.

13             My thoughts initially were that we could

14   get somebody to come into the case.  I'd be willing

15   to go to Ms. Waters and see.  I mean, we're really at

16   a luxury anyway, having two lawyers on the case.

17   That's not -- that's something I had to go to

18   Ms. Waters and see if I can get that done for the

19   defendants in this case because of some of the

20   complexity issues, because it was death penalty

21   eligible at the beginning.  But there is nothing that

22   really says that each one of these men are entitled

23   to two lawyers.  Some of the defendants have not had

24   two lawyers.

25             I do have the comfort that Mr. Blackburn is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   his other lawyer and has been in front of me a number
 2   of times, and is very good.  Everybody in this
 3   district and everybody in this courtroom knows he's
 4   very good.  So I think we've got some cushion there.
 5            It seems to me -- and it seemed to me that
 6   before I got the supplemental motion that the thing
 7   maybe to do was to see if we could get Ms. Waters to
 8   approve another lawyer to come into the case.  If you
 9   could not be in the courtroom every day, then maybe I
10   could talk to Ms. Bean, or again Ms. Waters, and see
11   if there is some feed or something that could be done
12   up into Albuquerque so that you'd be able to see the
13   trial in real-time, or at least getting some dailies.
14            My sense is Mr. Blackburn was going to
15   carry the water here in the courtroom as far as
16   cross-examination and as far as the actual trial
17   work, and that you probably were going to do most of
18   the briefing on motions and that sort of thing.  I
19   think Mr. Blackburn has indicated that he was relying
20   on you because you had looked at a lot of the
21   evidence and the record, and so that he needed you
22   for that, and that he needed you to be here, not in
23   Albuquerque.
24            So I don't think Mr. Blackburn is too
25   excited about the idea that I proposed through Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Bevel and Ms. Wild about how to deal with y'all's

2    defense team.  But I guess I still think it's a bit

3    of an option to see.

4            Now, when I got your motion yesterday and I

5    read it, I then went back and reread your initial

6    motion.  And I guess my concerns were that there

7    seemed to be some inconsistencies between the motion

8    itself that was filed on the 22nd, and then the

9    document that was filed on the 2nd.  So I went back

10   to financial and said -- because the motion itself

11   had indicated that y'all were working vigorously,

12   tirelessly -- I have two copies here, so I don't know

13   if I'm picking up the one that relies on it -- but it

14   indicated that Mr. Blackburn, Mr. Davidson have been

15   working tirelessly for approximately 16 months.

16   Then, when I got the memorandum in support, sort of

17   indicated you hadn't worked on this case really at

18   all since January.

19           And I went down, talked to financial, and

20   sure enough, you haven't billed anything for -- since

21   late January on this.  So I guess my concern is that

22   what you're telling me and what financial is telling

23   me and showing me is you haven't worked on this case

24   since January, and yet we get the motion two months

25   later in March, which seems to me to -- I mean, y'all

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have wanted a severance all along.  And by waiting
 2    two months after your wife was diagnosed, and then
 3    y'all went two months without you really doing any
 4    work on this case, that really puts the Court in a
 5    very difficult position to grant a motion, when y'all
 6    have known about this for two months, and I think I
 7    could have at least mitigated it, as I did with
 8    Michael Davis in the first trial, and didn't.  And I
 9    think he got excellent representation in that trial.
10         Here, we're trying to get out of the case
11    right here before the trial starts.  And it seems to
12    me it's a bit of a situation that you -- and if Mr.
13    Blackburn knew that you weren't working on the case,
14    then somebody should have been bringing this to the
15    attention two months ago, rather than bringing it to
16    the attention as it is now the week of the trial.
17    Because the motion I got on March 22 indicated that
18    you'd been working tirelessly on the case.  And your
19    latest filing, and my checking with financial shows
20    that you haven't been working on the case at all for
21    two months.
22         And so I guess I don't feel I can grant
23    this motion.  I feel like I'm being told different
24    things by Mr. Davidson.  And again, I'm not
25    undercutting anything I said out of sympathy for you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



1    and your family.  But I think you put the Court and

2    the parties in a very difficult position by not

3    working on this case for two months, knowing the

4    situation, and then trying to box the Court in by

5    saying that I've got to sever the case and continue

6    it.  That's what you wanted all along.  And it seems

7    to me that there is a little bit of concern that this

8    may be strategic, as well as --

9                MR. DAVIDSON:  No.

10               THE COURT:  -- as well as trying to help

11   your situation.  But I'm quite willing to work with

12   you and Mr. Blackburn, Mr. Garcia, to get you

13   somebody else to come in and help.  I'm willing to go

14   to Ms. Waters and see if we can help get some feed up

15   to Albuquerque, or something, so that you're fully

16   aware of what's going on here.  And I'm willing to go

17   to bat and see if we can get some third attorney

18   involved in this case.

19               But I'm not sure that I'm in a position to

20   grant a motion to continue the trial, and to sever

21   Mr. Garcia.  And it seems to me that that's the only

22   way he's willing to consent to your withdrawing.  And

23   so I think it means probably I'll be denying that

24   motion to withdraw.

25               One other thing I'll say -- and I guess

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1   maybe I should ask a question first.  I know that
 2   you've been in cases with me.  Have you ever tried a
 3   case?  I mean, have you ever had a jury trial in
 4   which you examined witnesses and picked a jury and
 5   done an opening and done a closing?  Have you had
 6   that sort of trial experience?
 7            MR. DAVIDSON:  I haven't picked a jury, but
 8   I've certainly examined many witnesses in evidentiary
 9   hearings, and cross-examined, and openings and
10   closings.
11            THE COURT:  How about a trial, though?
12   Have you ever participated actively in a trial?
13            MR. DAVIDSON:  I have.  The role I had with
14   Michael Davis in front of Your Honor in the Gould
15   trial -- that was, what, maybe eight or nine years
16   ago -- I think my role on that one was of a research
17   attorney role.  But since then I've had many
18   evidentiary hearings, and in a sense bench trials.
19   And I have had bench trials.  The trials that I've
20   had have not been jury trials.  So I wasn't really
21   taking the lead on the voir dire part of it.
22            If I may address some of the concerns Your
23   Honor had about financial --
24            THE COURT:  Well, I'll give you a full
25   chance to address those, I really will.  But let me
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    ask a few questions.
 2            MR. DAVIDSON:  Sure.
 3            THE COURT:  I guess one thing I'm concerned
 4    about is how much of this is driven by your wife's
 5    health and your needs with her, and just how much of
 6    it is being driven by your kind of walking in here
 7    and looking at this courtroom and thinking about what
 8    we're doing for eight months (sic)?  I'll use my
 9    language about, kind of freaking out about being down
10    here in Las Cruces and being in a courtroom for eight
11    days (sic), participating in this trial?  How much of
12    it is that?
13            MR. DAVIDSON:  That's not what it's about,
14    Your Honor.  I haven't thought of withdrawing or
15    anything like that up until recent weeks.
16            THE COURT:  Tell me about your wife's
17    schedule.  We're here now on April 4.  Tell me what
18    her schedule for radiology is going to be over the
19    next eight weeks.
20            MR. DAVIDSON:  The recommendation is that
21    it starts -- let's see, the 16th of April is when
22    they're planning on starting it, if she's well enough
23    to proceed.  There will need to be follow-up
24    appointments with the medical oncologist or radiation
25    oncologist to determine whether or not she's well
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    enough to do that.  Right now, she's not able to

2    drive.  When she walks, Your Honor, it's very slow.

3    And if she stays up from the time she wakes up in the

4    morning until 6:00 or 7:00 at night, it's an unusual

5    day.  Most days she's not awake that often for an

6    extended period of time.  She's not able to do much,

7    you know, around the house or anything like that.

8    And I understand that radiation can be very painful.

9    So that's her anticipated schedule.  And they're

10   recommending five weeks of daily radiation.  And I

11   understand it becomes very painful and a lot of

12   fatigue.  And so I feel like I need to be there in

13   Albuquerque with her those days.

14            THE COURT:  So you think the radiation is

15   going to be every day?

16            MR. DAVIDSON:  They're saying every day for

17   five weeks.  I don't know if it means seven days, but

18   certainly five days.  My understanding it's daily

19   radiation.

20            THE COURT:  And we don't know right at the

21   moment whether she's going to be strong enough to

22   start this; correct?

23            MR. DAVIDSON:  Correct.  But the current

24   thinking is it would start in mid April, on the

25   assumption that the recovery goes well.  So far, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    recovery has not gone well.
 2              May I address financial --
 3              THE COURT:  Yeah, go ahead.
 4              MR. DAVIDSON:  I don't know what they're
 5    basing that on, because I submitted one --
 6              THE COURT:  They told me for $3900 on --
 7              MR. DAVIDSON:  On the first quarter of --
 8    well, the first quarter of my participation in this
 9    case was the last quarter of 2016.
10              THE COURT:  Well, I didn't go back that
11    far.  What I told them to do --
12              MR. DAVIDSON:  That's the only one I've
13    submitted.
14              THE COURT:  You indicated that your wife
15    had been sick starting in late January, so I said go
16    back to about January 25 and tell me what his billing
17    is.  And they said you submitted one bill for $3900,
18    and it had been rejected.
19              MR. DAVIDSON:  That was not for that period
20    of time.  That was for the last quarter of 2016.
21    I've not submitted any bills for 2017 or 2018 yet.
22              THE COURT:  And what am I supposed to draw
23    from that, that you're not submitting any bills?
24    You're not working?
25              MR. DAVIDSON:  No, I'm working.  I just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    haven't submitted bills.  I'm behind on vouchers as

2    well.  Vouchers come when I have briefing and

3    preparing for trial and things like that to do with

4    the CJA billing, and sometimes take a back burner.

5              THE COURT:  But you haven't submitted any

6    bills for 2017 --

7              MR. DAVIDSON:  For 2017, correct.

8              THE COURT:  -- correct?

9              MR. DAVIDSON:  Nor for the beginning of

10   2018.  So they're -- I can address -- I have been

11   working on the case, Your Honor.  I have been working

12   diligently the whole time.

13             THE COURT:  The brief that I got yesterday

14   said you really hadn't worked on this case.

15             MR. DAVIDSON:  If I can explain.  It's not

16   that I haven't been working, that's not what the

17   supplemental says.  The supplemental says that my

18   productivity in preparing for trial over the last

19   several months has dwindled.  There are a number of

20   projects that were assigned to me and allocation of

21   responsibilities, as far as helping out with the

22   joint defense efforts, that I had to back out of, and

23   other attorneys and other teams had to step up and

24   take over those.  And the amount of time, that

25   little, to spend on Mr. Garcia's case has been

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492
                        BEAN & ASSOCIATES, Inc.
                        PROFESSIONAL COURT
                        REPORTING SERVICE                e-mail: info@litsupport.com

```
 1   dwindling.
 2          But, as I pointed out in the supplemental,
 3   at each point along the way, I thought that I could
 4   make up for lost time, and get back on top.  At the
 5   beginning, they weren't talking about radiation.
 6   When she went in for the appointment and they talked
 7   about radiation, that came kind of a blow.
 8          MR. BLACKBURN:  Judge, we can barely hear,
 9   and Ms. Bean is having a hard time.
10          (The following proceedings were held in
11   open court.)
12          THE COURT:  Guys, keep it down a little
13   bit.  You can talk, but just a little bit down.
14          MR. BLACKBURN:  Thanks, Judge.
15          (The following proceedings were held at the
16   bench.)
17          MR. DAVIDSON:  We didn't know until -- I
18   can't remember the date of that appointment.  But I
19   think it was the week before the hearings here on the
20   12th through the 16th, those hearings here.  It was
21   right before that that we got the news that they were
22   saying that they had gotten as much of the cancer as
23   they could from the surgery, but that when they take
24   out the tissue, they looked at the margins, and the
25   margins were so narrow that they're recommending
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                              1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

```
 1   radiation.  And that's -- we didn't know that until
 2   March.  So that's a significant piece of the puzzle.
 3            In late January, we knew that -- as I
 4   pointed out in the supplement, the information is
 5   constantly coming in, and it's building, but it
 6   doesn't always build in one direction.  Information
 7   is going one direction, then the other.  And at each
 8   juncture I thought that I could get back up to speed
 9   to help Mr. Blackburn and Mr. Garcia.
10            I can assure Your Honor that there is no
11   misrepresentation to the Court about the facts
12   related to this.  And whatever the information the
13   people from financial are giving you is not accurate.
14            THE COURT:  Well, it is accurate.  You're
15   not billing anything, and you haven't billed anything
16   since 2016.
17            MR. DAVIDSON:  That's right.
18            THE COURT:  So it is accurate.
19            MR. DAVIDSON:  I thought you were saying
20   they were saying that I hadn't been working in the
21   first quarter of 2018.  That's not true.
22            THE COURT:  Well, they probably can't
23   comment on whether you're working or not.  But they
24   can tell me whether you're billing.  And I guess they
25   were accurate that you're not billing us.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. DAVIDSON:  Right.  But that's not

2    because I'm not working.  It's just --

3          THE COURT:  You've got to admit it's a

4    little bit odd, though, to work on a case for a

5    year-and-a-half and not bill.

6          MR. DAVIDSON:  Not necessarily.

7          THE COURT:  I mean, we've got rules that

8    say you've got to turn in stuff -- I think it's every

9    90 days or something like that, or it's late, and you

10   may not get paid at all.  I'm pretty liberal on that,

11   and I don't think I've ever dinged anybody for being

12   late.  But I'm not sure I've ever had anybody that

13   hasn't billed for a year-and-a-half either.

14         MR. DAVIDSON:  It was 45 days after the

15   close of the case, is the rule that I'm familiar

16   with.

17         THE COURT:  Well, you're on interim billing

18   here, aren't you?

19         MR. DAVIDSON:  I believe so, yes.

20         THE COURT:  All right.  Anything else,

21   Mr. Davidson?

22         MR. DAVIDSON:  Did you want to add

23   anything, Billy?

24         MR. BLACKBURN:  It was -- although, I mean,

25   I can only echo what Mr. Davidson is saying under the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   circumstances, Judge, is that it wasn't that we

2   didn't -- that I didn't know that there was an issue

3   going on with him, but I'm not going to be the guy

4   that goes down and says, every day, like, can you do

5   this?  Can you do this?  Can you do this?  I mean,

6   you know, so I was actually pushing Scott to say I

7   need to know, I need to know.  But as a colleague and

8   as a personal friend, it wasn't like I was down there

9   saying:  If you don't do this today, you need to tell

10  the Judge.  Because I would go down and see what was

11  happening upstairs and downstairs in our office.  And

12  I didn't feel comfortable doing that.  I knew all the

13  stuff about the emergency room and everything spreads

14  in the office as you can understand.

15          So I just found a way to do what we needed

16  to do.  And then, when we were sitting in here at the

17  motions -- actually, it was the day after we got the

18  verdict, I think it was the next day that Scott sent

19  me an email saying, It's just not going to work.  And

20  Mr. Garcia was sitting next to me at the time.  And I

21  let him see the email.  And despite all the facts

22  that everybody has always asked for a severance, I

23  mean, you know, routinely, as you know, every defense

24  attorney is going to get up there -- and I'm sure it

25  probably happened at the last trial that Ms. Jacks

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  probably asked for a severance every day of the

2  trial.  I'm not saying that that's -- so we're always

3  asking for severances, one, basically, I think as an

4  experienced defense attorney is to make a record to

5  make sure that it's there.  Of course, I've had

6  judges say:  You don't have to say that anymore, Mr.

7  Blackburn.  It's repeatedly -- I got bit on appeal

8  one time.

9           So, but anyway, so you know, and we did

10  have a division of labor.  I know that Scott does a

11  lot of -- he and I may have talked about hearings --

12  he's done Racing Commission hearings, hearings in

13  front of Judge Malott, so I know that he probably

14  doesn't have the experience in picking a jury like I

15  do, or doing voir dire.  With all due respect, any

16  case I've ever done with you, I've done very little

17  voir dire anyway, because you do such a good job at

18  voir dire, so that is not something -- compliment to

19  you -- I don't know that you're going to be at Sandia

20  Prep looking at questionnaires anymore.

21           THE COURT:  We're doing it soon here.

22  We're doing it soon.

23           MR. BLACKBURN:  So you know there were

24  witnesses that we had broken up.  He was listening to

25  the phone calls, and my staff and his staff are doing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the phone calls on Benjamin Clark and stuff.  So we
2    did have a division of labor as to who was going to
3    do what.
4            You're right, I was going to probably do
5    most of the heavy hitters.  And you're right, having
6    a second counsel is a luxury.  And when I sat down
7    and talked to Scott about this, I said:  Here's one
8    of the issues, is that other people like Mr. Lahann
9    hasn't had -- he just brought Shattuck on recently.
10   But I think it's a little bit different when he
11   decided at the very beginning -- if you would have
12   told me two years ago or something that I couldn't
13   have a second attorney -- not saying you wouldn't do
14   that -- but I mean, if I was in that position when it
15   went from death penalty to nondeath, I would have
16   been focused -- I would have been saying that is my
17   responsibility, I would have been doing everything.
18           But just in the last week, the last 10
19   days, we have received tons more discovery.  And I've
20   barely even had -- because I haven't had a chance to
21   even look at that, because of just trying to get
22   ready for what was going to happen before.
23           So having two lawyers, once we made the
24   decision to have two lawyers, then I think that made
25   a different situation.  If I would have known two

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                        1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   years ago that I was going to do this case by myself,
 2   we wouldn't have this question.  I think the Court
 3   understands I would take that responsibility on.
 4   When for the longest time Mr. Linnenburger worked for
 5   me -- Paul was a great writer, he knew everything but
 6   he didn't like to get up and ask questions, but the
 7   knowledge that he had sitting next to me was just --
 8   I mean, he knew more about the case than I did.  Now
 9   he's doing trials because he likes it.  But I knew I
10   had that security blanket there, and then he's no
11   longer working for me.  So that's when I brought in a
12   second security blanket, which would be Mr. Davidson,
13   knowing that even if he wasn't going to do this
14   witness, that he could tell me:  Here's what this
15   witness is about.  So -- and losing it at the last
16   second is difficult for me.
17            I'll just -- you know, I don't want to
18   cause any controversy or anything.  You know me, I
19   try cases in front of you, and you know how we do in
20   an eight-week case if somebody is looking at life,
21   it's just really difficult for me.  There are only so
22   many hours in day I can work on this, Judge.  So --
23   and I didn't push Mr. Davidson on this.  Maybe I
24   should have.  I just didn't feel it was my -- I just
25   didn't feel -- my personal thoughts for him and his
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                        1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   family got in my way, that I didn't push him on that.
 2   And I wouldn't feel comfortable doing that.  But I
 3   did to an extent, like:  You need to let me know.
 4   And then, when the radiation came, I just knew what
 5   was going to happen.
 6            So, anyway, that's the only thing I have to
 7   say.  And I've talked to this -- talked to Mr. Garcia
 8   about this when we were coming down here for an
 9   entire week.  That was on a Tuesday.  We found out --
10   we were here till Friday -- I mean, Arturo was not
11   happy, but he also understands the circumstances.
12   And I think we all do, I mean, he was not happy
13   because he knew he wanted to have Scott here and to
14   help and assist in the case.  But this isn't like --
15   no one is claiming this -- it's not like this was
16   planned or anything.  Under the circumstance, nobody
17   would ever want this to happen to anyone.
18            My mom had cancer last September -- and
19   July -- and I didn't work for almost a month.  She
20   was 86, and had to move in with us.  My life went
21   upside down.  I couldn't think about anything but
22   that.  But you know, I did what I could do.  But that
23   was in September.  You know, had that happened in,
24   you know, May of this year, or March of this year, a
25   little bit different situation, when your 86 year old
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  mother has to move in with you because she couldn't
2  care for herself because of the surgery.  She had
3  colon cancer, and had to learn how to use a colostomy
4  bag.  And I had to move for continuances in every
5  brief, except for the Tenth Circuit.  I didn't do
6  that.
7           But anyway, I just wanted to explain that
8  to the Court.
9           THE COURT:  Does the Government have
10 anything it wants to say?  Mr. Castellano?
11           MR. CASTELLANO:  Mostly just observation.
12 I understand the situation.  I know that Mr.
13 Blackburn is an experienced attorney and is learned
14 counsel.  I just don't know the breakdown and
15 division of labor.  Maybe that's something the Court
16 can discuss separately when it deals with
17 attorney-client issues.  Ms. Torraco is a recent
18 addition to the case.  Mr. Granberg now has Mr.
19 Solis.  Joe Shattuck, if I remember correctly, they
20 moved his admission only because of the volume of
21 jail calls and recordings.  Other than that, I think
22 Mr. Lahann is ready to go.  So we have other
23 attorneys.  And the last trial we had a late addition
24 as well.  So I think it can be done.  But at the same
25 time, I understand the situation.  But I just note

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   observations that we have people who are somewhat
 2   similarly situated.  But like I said, I understand
 3   what Mr. Blackburn said.  Had this been his case
 4   alone, he would have prepared it as a sole
 5   practitioner in a case.  So I get that.  So I don't
 6   know if there is a need to talk to them separately
 7   about the division of labor, and really how much
 8   catching up he has to do, because he's had all the
 9   heavy hitters, which is what I would expect with his
10   experience in this case.  So I'm going to put that
11   out there as an example of other people who have had
12   recent changes or additions to the defense teams.
13            THE COURT:  All right.  Thank you, Mr.
14   Castellano.
15            Anything else you want to say,
16   Mr. Davidson?
17            MR. DAVIDSON:  Your Honor, Mr. Garcia wants
18   to -- did you want to address the Court?
19            THE DEFENDANT:  I've been listening to
20   everything that's going on and I understand pretty
21   much all of it.  I want to say that I empathize with
22   him and his family.  My sister had breast cancer; she
23   lost.  So I know radiation, chemo, all that.  And I
24   know it's going to be a hard process.  But keep in
25   mind, they both committed to giving me the best
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   defense that I'm entitled to have.  I'm not guilty of
 2   nothing.  And I need them to help me get through
 3   this.  I'm facing the rest of my life.  Not just for
 4   this trial, but there is another trial.  I mean, all
 5   of a sudden, things are not looking too good with my
 6   team.  Like I say, if he can't commit 100%, what good
 7   is he going to do me, Your Honor?  If I can't get --
 8   and he's 80 percent, what good is that going to do
 9   me?
10           I don't know about a severance because it
11   might affect everybody else.  Most everybody is ready
12   to go.  I mean, a continuance -- you guys are the
13   experts in that.  I don't know.  So I prayed on it
14   last night.  I'm not very religious.  But at this
15   point in my life I've got to ask somebody for help.
16   I'm going to leave it in your hands.  Whatever you
17   decide, I've got to trust that you got my best
18   interests in mind, you know.  And that's all I could
19   say.  And I hope that his wife pulls through.  What
20   else could I say?
21           THE COURT:  All right.  Thank you, Mr.
22   Garcia.
23           THE DEFENDANT:  You're welcome.
24           THE COURT:  Well, let's do this:  I'm going
25   to deny the motion without prejudice to renew it.  It

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    sounds like we've got some other issues that we have
 2    to deal with that may in some ways moot this out.
 3    You know, it does seem to me that this should have
 4    been brought to the attention of the Court earlier.
 5    And I do think that I understand what you're saying.
 6              But Mr. Garcia just points out, it's his
 7    life, it's his defense.  We're all professionals.  If
 8    we don't think we're going to be able to do the job,
 9    we've got to start alerting everybody earlier.  And I
10    think this probably should have been brought to the
11    attention two months ago, because it doesn't look
12    like a lot of work has been done by Mr. Davidson over
13    the last two months, and probably the Court should
14    have been apprised of that, and we could have made
15    some things differently.
16              I'll deny it without prejudice.  We'll see
17    how Mr. Davidson's wife does.  If she's not able to
18    do the radiation, then it may mitigate some of the
19    issues.  If it turns out that she does go into
20    radiation, we may have to do something else.
21              My offer still stands, and I think y'all
22    might think about it and let me know, going back to
23    Ms. Waters and seeing if I can get another attorney.
24    The clock is ticking on us.  I wish we were even back
25    on March 22 now, and getting somebody in play.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think that would be better than nothing.  If you

2    don't want it, I won't force it.  But if you do want

3    it, I'll start working with Ms. Waters.  We're well

4    beyond CJA panel, looking at the people that are

5    representing the witnesses are not CJA panel.  So I'm

6    looking for good state lawyers.  And they don't even

7    have to be in the state.  I'll go to El Paso, or

8    we'll fly somebody in from somewhere else, get them

9    here and pay the expenses and I'll leave it to Mr.

10   Blackburn and Mr. Davidson and Mr. Garcia to

11   determine where you're physically at.

12            As far as the Court is concerned it doesn't

13   matter.  It may matter to Mr. Blackburn that you're

14   sitting there.  It may matter to Mr. Garcia that

15   you're sitting there.  And I'll have to -- you'll

16   have to take your directions from them.  And I'm

17   willing to get somebody on board.  And I'm willing to

18   work with Ms. Bean and see what we can do about

19   either getting a feed, or some other lawyer on board.

20   But I think right now the motion to withdraw is

21   unopposed.  If it's accompanied by a continuance and

22   a severance -- and I don't think that would be fair

23   to everybody, because I do think that some of this

24   could have been mitigated greatly if we'd have gotten

25   on it a couple of months ago.  As far as those are

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    concerned, we've looked at it several times.  I've

2    continued to look at it.  I've looked at it again

3    yesterday, been looking at it today.  It just doesn't

4    seem that a severance or a continuance is appropriate

5    on that score.  It may be forced on us by other

6    issues and things.  But at least as to this one, I

7    think we can probably work around it for the present

8    time.

9              So for the present time, I'll deny that

10   motion without prejudice to renewing it, depending on

11   how things develop, and what resources and assets we

12   can bring to bear to mitigate any harm to

13   Mr. Garcia's defense.  And I've got to tell you that

14   I guess I certainly understand how we prepare for

15   trial.  I've prepared for them many times.  And I've

16   now seen over the last 15 years how they're prepared.

17   And it's no surprise to anyone that there is a

18   division of labor.  I think I have a pretty good feel

19   from y'all being in front of me how this case was

20   probably divided up.  And you know, I'm drawing a lot

21   of comfort from the fact that you've got two very

22   good lawyers here, and Mr. Blackburn can try a case,

23   no doubt about it, so I'm drawing a lot of comfort

24   from the fact that you don't just have anybody, you

25   have Billy Blackburn representing you in this trial.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                 (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                              1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

```
1            THE DEFENDANT:  I keep hearing that.
2            THE COURT:  You know what, you and I are
3    going to get a front row seat.  It will be a show.
4    He'll do a good job now.  And I think Mr. Davidson is
5    going to have to make some decisions about how much
6    he can work on this case and things like that.  And
7    if y'all get together, and here at a break or
8    sometime during the day, and you want me to start
9    trying to swing additional resources in to help, I'll
10   try to do that.
11           I think, realistically, that even if Mr.
12   Davidson is back in Albuquerque at times during this
13   trial, more than good chunks of it during the trial,
14   I know that I never got out of my mind my work, even
15   as bad as things might get in life, if I had made a
16   commitment to represent somebody and I had something
17   like this come up, you know, practicing law and being
18   a judge for 30-plus years, things just come up.
19   And -- but I was a professional, and I just never
20   wanted to let anybody down.  And I think --
21           MR. DAVIDSON:  Your Honor, if I may just
22   address what you're saying.  The Court's thought that
23   it should have been raised earlier.  It is April 4
24   now.  And I do realize that we're now on the eve of
25   trial.  But two months ago all we had was a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    diagnosis.  And the earlier indications were -- as I
 2    pointed out in the supplement, it sort of grew.  Two
 3    months ago it was just going to be -- the thoughts
 4    were that it might just be a lumpectomy.  And we had
 5    friends who had lumpectomies, and it's not that big a
 6    deal.  Then, as we got more appointments, then it
 7    became clear that it wasn't only going to be a
 8    lumpectomy; it was going to be a full mastectomy.
 9    And then the initial thought was that the nature of
10    the cancer, that a surgery would be all we would
11    have.  And then when they looked at the pathology
12    after the surgery, then it became clear that the
13    margins were very narrow, and so the cancer was right
14    into the edge of the chest wall.  And so that's the
15    reason for radiation is -- there is no real way for
16    them to know, Your Honor, whether she still has --
17    right now, whether she still has cancer in her body
18    or not.  So the radiation is to zap it, you know, to
19    increase the chances.  There is no 100%.  I've looked
20    at the medical literature that the radiologists have
21    given me.  There is no 100%.  So I guess I use the
22    analogy in the supplement of a frog in a pot of
23    water.
24              Two months ago, Your Honor, I didn't know
25    that I would be in this situation.  It really only --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    it accumulated.  And so I just want the Court to know
2    that had I known two month ago what I know now, or
3    had there been a good reason to believe two months
4    ago what I know now, I should have -- I would have
5    told the Court.
6              We're not waiting to the eve of trial to
7    gain some advantage.  This isn't gamesmanship.  We
8    didn't plan any of this.  And I didn't know -- we
9    don't know these facts until they come in.  So I just
10   wanted to let the Court know that.
11             And I also want -- it's not the case that
12   since January there hasn't been any work done in the
13   case.  It's just that my -- the number of hours per
14   day that I have been able to devote to his case has
15   dwindled over my time.  And I've seen my productivity
16   when I'm working -- just my ability to concentrate
17   has dwindled.
18             So sometimes looking back on things are
19   clearer than when you're in the middle of it.  So
20   when Mr. Blackburn put the question to me:  I need to
21   know what your decision is, I informed him about the
22   radiation coming up.  And then he said, Okay, then
23   you need to start preparing a motion to withdraw.
24   And you know, I got it, and filed it as soon as I
25   could.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              And then a couple days after I filed the
 2    motion, I started thinking about additional
 3    information that I wanted to bring to the Court's
 4    attention.  And that was the reason for the
 5    supplemental memorandum in support of that motion.
 6    And I do apologize.  I could have -- looking back, I
 7    should have filed this somewhat earlier.  I just want
 8    to alert the Court that there is no way that I could
 9    have done this two months ago, because, in fact, I
10    didn't know this information two months ago.  And
11    even the beginning of March, at the beginning of
12    March she was in the hospital, but we didn't know
13    what was going to happen.
14              So I just want to inform the Court of the
15    timeline.  Because it seems that the Court's
16    decision -- I understand you're denying it without
17    prejudice, but it seems like it's driven in part by
18    the feeling on the Court's part that I haven't been
19    doing any work on the case for two months, and that I
20    waited around till essentially today to bring it up.
21    And I just wanted to alert the Court of the timeline.
22              THE COURT:  Well, when you have a chance,
23    sit down and read your -- I know it's a bit of a
24    stream of consciousness -- the supplemental, but you
25    might ought to reread it.  Because I don't think that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    would give the Court any confidence with the fact --

2    I know you've given an explanation of no billing, but

3    if you read that document -- and in fact, we've not

4    received any bills -- I'm not sure how much

5    productive work you've done over the last two months,

6    given what's in the supplemental.

7             MR. DAVIDSON:  It certainly has been

8    difficult.

9             THE COURT:  All right.  Well, let's go back

10   on the record.  I'll announce my ruling without much

11   detail, and then we can figure out where we're going

12   to go from here.

13            MR. CASTELLANO:  Your Honor, as counsel

14   have been talking at the bench here, if you can give

15   us some time today, we're trying to work on a

16   resolution which potentially would move Mr. Garcia's

17   case into the July trial.  We haven't made a final

18   decision yet.  But if we do agree to do that, we

19   could sever him on not the entire count, and that

20   would give counsel the chance to resolve any issues.

21            I know it's kind of a play it as you go

22   deal with Mr. Davidson's wife, but it is something

23   we're contemplating.  I can tell the Court the overt

24   acts in the RICO trial set for July covers the same

25   conduct with which Mr. Garcia is charged in this

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1   case.  There are actually two murders among the overt
2   acts.  So if the Court can give us some time, we may
3   be able to come to an agreement which would buy us
4   time and potentially resolve some of these issues, or
5   at least give us some more time to let them resolve
6   themselves.  But we haven't made a decision yet,
7   since we're just talking at the bench.  But it's
8   something we're contemplating.
9            THE COURT:  Well, and you're probably going
10  to need to talk to the defendants in that case.  They
11  may not be wild about -- that's a nine-defendant case
12  as it is -- turning around and having that case get
13  bigger.
14           MR. CASTELLANO:  I can tell the Court that
15  Mr. Garcia is already charged in that case, so he
16  would not be an additional defendant.  And the
17  conduct charged in this case is in the overt acts in
18  that case.  So I don't think it would be an
19  additional amount of defendants or presentation of
20  evidence.  I think we'd be presenting the same
21  information at that trial.
22           THE COURT:  I still probably would want to
23  have those defendants' views on that.
24           MR. CASTELLANO:  Sure, because it would
25  result in a joinder.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  Because if they oppose it, I am
 2    not -- I think we'd probably have to get them in here
 3    and argue it, and create some logistical issues.
 4              MS. ARMIJO:  What I was going to suggest
 5    taking time for Mr. Blackburn -- obviously he's
 6    already a defendant in that case -- reach out to them
 7    and get their position, so we can file something.
 8    And if it's unopposed, that would make it easier.
 9              THE COURT:  If it's all unopposed, I don't
10    think these guys are going to care.  But if it's
11    unopposed and if no one sees some problems that way,
12    then I probably am not going to oppose it.  But I'm
13    not going to get my hopes up too much.  I haven't
14    seen much in this case that's unopposed.  So maybe
15    I'll be surprised.
16              MR. BLACKBURN:  Well, different people -- I
17    don't know.
18              MR. BECK:  We've got Billy going to bat for
19    us.
20              MS. ARMIJO:  That's why we're putting it on
21    him.
22              THE COURT:  Mr. Garcia is going to find out
23    right off the bat how good a lawyer he is.
24              There was something I was going to say on
25    that, but it escapes my mind.  Well, is that going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    solve, though, any of the conflict issues?  Does that
 2    go away?
 3            MR. BLACKBURN:  Judge, we don't know if it
 4    does now.  Because I wanted to sort of echo what the
 5    Government was saying this morning.  I just sort of
 6    raised that initially.  And she spoke a little bit
 7    more about it.  But it was -- even though Mr. Garcia
 8    was listed on the witness list, it was my
 9    understanding he was not going to be called because,
10    as she said, he was not being Government friendly.
11    And so things, unfortunately, changed, which I've got
12    to admit was somewhat news to me whenever the other
13    teams brought him in here.  I had read the motion,
14    but then when he came in and started to testify, I
15    wondered if I needed to say anything.  But the Court
16    got him a lawyer.
17            But sitting there watching this develop, I
18    sort of knew what was going to happen.  In fact,
19    after he testified, I'm standing over there talking
20    to Agent Acee.  And I said, "Well, I can predict
21    this:  You're going to go arrest him; you're going to
22    charge him with perjury, and then he's going to be
23    cooperating."
24            And he goes, "Yep."
25            And so -- and I spoke to Arturo,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Mr. Garcia, about that that day.  And then I know
 2   that Mr. Beck -- and they've been very honest about
 3   this -- I started asking, once the indictment came
 4   out, thinking, okay, I'm smart enough to figure this
 5   one out.  So I started sending an email to the
 6   Government saying:  What are you guys going to do?
 7   Well, he didn't have his arraignment till yesterday.
 8   Then I understand that they talked with him
 9   yesterday, and Mr. Beck talked with him for just a
10   little bit of time.  They didn't get into all the
11   issues about what he would testify about Mr. Garcia
12   in this case, or what he would testify to him about,
13   the Sammy Chavez case.
14          So this gives us an opportunity for them to
15   go back and figure that out.  And if it comes to such
16   an extent that he -- and I'm just foreseeing it --
17   but comes to such an extent that there would be an
18   actual conflict because of my ability to
19   cross-examine him or not cross-examine, to set up
20   some firewalls, because I can't set the firewalls
21   now, if Mr. Davidson is not going to be involved to
22   some extent.  It would give us time to figure this
23   out, to get another lawyer.  If I'm going to have to
24   leave of the case, that gives us plenty of time to
25   make -- for them to explore that.  I mean, I know
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  that they haven't done all of their debriefing on it,

2  because it was just a debriefing yesterday -- Mr.

3  Beck can talk to that -- because they needed to get

4  him on board.  But pretty much, I understand he will

5  testify against a majority of the people in this

6  case.

7          He can be impeached on the 1994 conviction.

8  It was based upon that that he went to custody for 24

9  years.  It was a gang deal there also.  It wasn't

10 SNM.  He was only 19 years of age or 20 years of age.

11 But I think that gives us an opportunity to figure

12 out how I can possibly stay in the case.  Because I

13 know he wants me to, because then the person that

14 needs to see the show, he's not going to be able to

15 see the show if they move to continue, if they move

16 to boot me out, and he loses myself.

17          And so that's what we're thinking.  If we

18 move into that, that gives us time to do -- and I'm

19 willing to work with them on that.  I think I can

20 convince the other people.  I just need to talk to

21 Mr. Davidson and Mr. Garcia about that.

22          THE COURT:  Okay.  Let me go ahead and

23 announce the ruling on this.  I think I made a record

24 here.  And I won't elaborate too much in open court.

25 But let me do that, then we'll probably be taking a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  break in about five minutes.

2            MR. BLACKBURN:  All right.

3            MR. DAVIDSON:  Thank you, Your Honor.

4            (The following proceedings were held in

5  open court.)

6            THE COURT:  All right.  We'll go back on

7  the record after being here at the bench.

8            You know, as I have indicated up here at

9  the bench, I've indicated in open court, it's a very

10 difficult situation for Mr. Davidson.  It's a very

11 difficult situation for Mr. Garcia's defense team.

12 It's difficult for all of us; not so much the other

13 defendants, but for the Government and their

14 planning, and the Court, and all the logistics that

15 we made to get to this point.

16            I am going to deny the motion without

17 prejudice.  I've offered some scenarios and

18 solutions, some resources that I think might mitigate

19 some of the concern.  And Mr. Garcia and Mr.

20 Blackburn and Mr. Davidson are going to look into

21 those.  And if necessary, then I'll be going back to

22 Ms. Waters to see if we can do some things, maybe

23 working with Bean also, to see if we can mitigate

24 some hardship to Mr. Davidson, also Mr. Garcia, and

25 Mr. Blackburn in preparation of their defense.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              So we'll be monitoring the situation.  I'll
 2    deny it without prejudice, and we'll see how things
 3    develop.
 4              We've got some other issues that have
 5    arisen here on the eve of trial that may also play
 6    into that.  So I'll deny that.
 7              We're getting close to a break.  There is
 8    something that we need to discuss.  Like I said,
 9    there was a number of things that I was told had to
10    be talked about first.  And I'm willing to go in your
11    order.  Otherwise, I suggest maybe we take the break
12    and come back and do bad acts for Mr. Billy Garcia, I
13    think is the first one up.
14              Anybody want to think something else ought
15    to be discussed?  Mr. Castle -- I mean, Mr. Burke?
16              MR. BURKE:  May I inquire how it was
17    resolved with regard to Mr. Blackburn's conflict?
18              THE COURT:  It hasn't been resolved.  There
19    was a bit of discussion, because I think there was
20    some -- I think y'all are all feeling like that needs
21    to be done before Mr. Davidson.  And I kept trying to
22    get back on track.  I think maybe during the break
23    y'all can talk with Mr. Blackburn and with the
24    Government.  But I tried to -- I think some of those
25    things ought to be done with everybody involved,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   because I think those are issues that I think -- I
 2   can't say they weren't discussed up here, but I tried
 3   to keep us on track of focusing on Mr. Davidson's
 4   situation.  And I think most of the other issues
 5   about Mr. Blackburn ought to be done with everybody's
 6   participation.
 7             MR. BURKE:  I understand.  I jumped the
 8   gun.
 9             THE COURT:  No, you didn't jump the gun.  I
10   did try to keep us on-track with focusing here.
11             Mr. Castle.
12             MR. CASTLE:  Yes, Your Honor.  In order for
13   us to be able to participate fully in that issue
14   concerning the conflict, what I would request is that
15   the handwritten notes or any notes that were taken of
16   Mr. Garcia's recent interview with the Government be
17   turned over to defense now.  And also, it sounds like
18   there was a previous time where Mr. Garcia -- I
19   should say which Garcia -- James Garcia -- James
20   Garcia had told the Government that he did not want
21   to cooperate.  That's obviously a Jencks statement
22   also.  If they could turn over those items to us, I
23   think we could more intelligently address conflicts
24   and whether Mr. Garcia is a necessary witness in this
25   case.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  Why don't y'all do this:  Why

2     don't y'all talk to the Government and Mr. Blackburn

3     during the break.  And then, if we need to, if the

4     Court needs to start weighing in on those issues,

5     then I will.

6          And then also, y'all kind of be prepared

7     after the break to tell the Court what you want to

8     take up first.  Otherwise, we'll take up Mr. Billy

9     Garcia's bad acts.  All right.  Let's be in recess

10    for about 15 minutes.  If you're going to need a

11    little bit more, tell Ms. Bevel, and otherwise, I'd

12    like to -- kind of since we're all down here and our

13    clock is ticking -- I'd like to kind of stay on the

14    motions and get those done, so that we can get as

15    much done before we start trial.  But if you need

16    more time or something, talk to her.  I'm not sure

17    I'll grant it.  But I'll certainly listen.

18          All right.  We'll be in recess for about 15

19    minutes then.

20          (The Court stood in recess.)

21          THE COURT:  All right.  We'll go back on

22    the record.  Is there a candidate for what's next for

23    us to hear, or we just start with Mr. Garcia's bad

24    acts motion?  Do you want to do that one, Mr. Castle?

25          MR. CASTLE:  Yes.  Your Honor.  When we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   were here last, the week of March 12, this motion

 2   came up, and we were in the midst of doing some

 3   preliminary arguments.  We moved on to other issues.

 4   At that time, the Government indicated that there

 5   were two bad acts that it was relying upon; the first

 6   being a bad act on February 25, 1992, or at least --

 7   I'm not sure they termed it a "bad act" -- they might

 8   have termed it as "enterprise evidence."  And the

 9   second being an event on March 14, 1999.  This

10   morning they've added two more.  But I'd like to

11   address at least the first two that we were advised

12   of as of last March 12.

13            THE COURT:  Do you have -- did you receive

14   a letter from the Government?

15            MR. CASTLE:  Yes, it's attached as Appendix

16   A to our 1308, our Docket 1380.

17            THE COURT:  Okay.  You're going to have to

18   maybe give me a copy of that letter.  In the folder

19   that I brought down with me, I think I didn't bring

20   that down.  So if you've got a copy, or if you can

21   let --

22            THE CLERK:  I can print it, Your Honor.

23            THE COURT:  Or have Ms. Bevel make a copy

24   from yours.  I don't seem to have your letter.

25            MR. CASTLE:  Your Honor, we do not seem to

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

```
1    have a printout.  Because it's very -- I don't know,
2    if the Court wants, I can read it.
3             THE COURT:  Let me have Ms. Bevel print
4    out -- it's attached to your 1358?
5             MR. CASTLE:  Yes.
6             THE COURT:  1308.  Okay, she'll print it
7    out.  Then if you're going to put it on the screen --
8             MR. CASTLE:  Yes, that would be great, if I
9    could figure out how to do that.  The first one is
10   highlighted in blue, Your Honor.  It's, "On or about
11   February 25, 1992, while in the custody of New Mexico
12   Corrections Department, Billy Garcia threatened a
13   correctional officer."
14            THE COURT:  This is the one we were talking
15   about, whether it was in the timeframe in which there
16   had been kind of a war declared on COs?
17            MR. CASTLE:  I don't know.  That was, I
18   think, in regard to a different defendant.  We never
19   really got into it, so I don't know what their offer
20   of proof would be for the admissibility of this.  Of
21   course, it's 26 years ago and is not in the realm,
22   really, of the focus of this indictment.
23            THE COURT:  I know that.  I don't know the
24   age of Mr. Garcia, but he looks like a little bit of
25   an older gentleman.  Was he alleged to have been a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    member of the SNM Gang at the time, in 1992?
 2              MR. CASTLE:  He was, Your Honor, but if I
 3    could remove my computer for a moment, because I want
 4    to show the Court what this is regarding.  This is
 5    the report we have of it.  And this was a -- some
 6    kind of a disciplinary report that was done right
 7    after that event.  And what it indicates is that
 8    "Mr. Billy Garcia became verbally abusive with an
 9    officer when he was serving chow in V pod by saying,
10    'Get the fuck out of here'" --
11              THE COURT:  Can you point where you're --
12              MR. CASTLE:  I'll do that rather than say
13    the words.
14              THE COURT:  That's all right.  Go ahead.
15              MR. CASTLE:  And the report indicates that
16    "Billy Garcia became abusive due to the fact that
17    Officer McReynolds refused to pass potato chips to
18    Garcia."  It's nothing to do with the SNM.  I've
19    heard many things about the SNM, but I don't know
20    anything about the rules of the SNM having to do with
21    passing potato chips.  So I don't know why they
22    believe this has anything to do with the indictment
23    in this case whatsoever.
24              That's what we have on it, Your Honor.
25              THE COURT:  Why don't we take these one at
```



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                FAX (505) 843-9492
                                                      1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                      e-mail: info@litsupport.com

```
 1    a time and let me see.  Ms. Armijo, Mr. Castellano,
 2    who is going to try to link this up with SNM?
 3            MR. CASTELLANO:  Yeah, I think we could,
 4    Your Honor.  But I think at this point, we'll just
 5    not worry about that one.  I think we have other
 6    things we can discuss.  We can forego the 1992
 7    conduct.
 8            THE COURT:  All right.  So that one is out
 9    now?
10            MR. CASTELLANO:  Yes, sir.
11            THE COURT:  Okay.  So it's out.
12            What else do you have, Mr. Castle?
13            MR. CASTLE:  The second one is also
14    highlighted in blue.  It's "On or about March 14,
15    1999" --
16            THE COURT:  I have your letter now, so if
17    you want to tell me where -- which one it is.  March
18    14?
19            MR. CASTLE:  Yes, it's on page 2 of the
20    letter, and it's "On or about March 14, 1999" --
21            THE COURT:  All right.  I see it.
22            MR. CASTLE:  -- "while in the custody of
23    New Mexico Corrections Department, Billy Garcia
24    refused to be restrained or removed from his cell,
25    and chemical agents were used to regain his
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   compliance."
 2               THE COURT:  What does that mean?  Is that
 3   teargas, something like that?  Is that what they mean
 4   by 'chemical agents'?
 5               MR. CASTLE:  Either that, or I would guess
 6   maybe Mace, or something of that nature.
 7               THE COURT:  Okay.
 8               MR. CASTLE:  Once again, I don't know what
 9   this is about.
10               THE COURT:  Do you have any 302 or prison
11   report on this incident?
12               MR. CASTLE:  I'm going to go back to my --
13   if I can -- we received these documents just a couple
14   of days ago, Judge.  So here is the incident that we
15   were able to see.  I don't know if the Court can see
16   it.  The bright lights aren't on it.  It indicates on
17   March 14, 1999 -- it goes on to indicate that
18   Mr. Garcia refused to comply with directives issued
19   by failing to respond and maintain his position in
20   the cell.  There is nothing about it being in regards
21   to the SNM.  The reason I'm scrolling down --
22               THE COURT:  Can I read a little more?
23               MR. CASTELLANO:  I'm sorry.
24               THE COURT:  I'm not quite fast enough for
25   you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           All right.  Do you want to go ahead and

2    scroll.

3           MR. CASTLE:  Your Honor, the person who is

4    the witness to that is a person by the name of

5    Stanley Moye, M-O-Y-E.  I do not believe this

6    individual is even endorsed as a witness.  The reason

7    the Government is giving us discovery now is because

8    it was ready for this hearing, but, of course, it

9    gives us no ability to do any investigation on what

10   happened 19 years ago.  But I would suggest that,

11   given this offer of proof, that there is no

12   connection whatsoever to the SNM at all.  This looks

13   like somebody, for whatever reason, didn't want to

14   come out of their cell, and the guards sprayed them.

15   That's clearly just character evidence designed to

16   make him look obstreperous, obstinate, and difficult,

17   as an inmate 19 years ago.

18           THE COURT:  All right.  Mr. Castellano,

19   anything on this 1999, March 4, incident?

20           MR. CASTELLANO:  Yes, Your Honor.  We are

21   trying to pull up the additional report for evidence

22   on that.  My understanding -- and I'm looking at the

23   report here in a second -- is that other SNM members

24   also engaged in that conduct, so as a show of

25   solidarity with other SNM Gang members, I believe

SANTA FE OFFICE                                                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                                                Albuquerque, NM 87102
(505) 989-4949                                                                                                            (505) 843-9494
FAX (505) 843-9492                                                                                               FAX (505) 843-9492
                                                                                                                        1-800-669-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                                                                               e-mail: info@litsupport.com

```
1    including Mario Montoya and Paul Rivera.  That's what
2    I'm checking right now.
3              THE COURT:  Would it have been
4    contemporaneous with this March 4 incident?
5              MR. CASTELLANO:  I believe it would.  But
6    I'm going to pull the report here in a second and
7    verify that.
8              Obviously, to say that an inmate was being
9    difficult, the Court has heard plenty of evidence
10   about SNM Gang members giving the Corrections
11   Department a hard time.  So that was -- actually, the
12   ultimate goal of the SNM was to give them a hard time
13   and also intimidate the corrections officers.
14             Your Honor, one of the reports I'm looking
15   at, I think is a disciplinary report from
16   Mr. Garcia's file.  A number of members of the
17   Penitentiary of New Mexico Emergency Response Team
18   responded to a number of inmates failing to comply
19   with orders.  They covered their cell windows and
20   refused to comply.
21             THE COURT:  Do you think that's all you've
22   got, or do you have any more?
23             MR. CASTELLANO:  The report indicates that
24   at 3:55 in the morning one of the captains began
25   issuing directives to inmates in housing unit 1 B, E
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   pod to remove the coverings from their cell doors,
 2   and back up to the cell doors, allowing themselves
 3   to --
 4             THE COURT:  What is the date of this one?
 5             MR. CASTELLANO:  It's the same date, Your
 6   Honor.
 7             THE COURT:  And that is the date, March 14,
 8   the 1999.
 9             MR. CASTELLANO:  Yes.  The report is March
10   14, 1999.
11             MR. CASTLE:  Is there a Bates number?
12             MR. CASTELLANO:  No.  This is the agent's
13   copy from the disciplinary file.
14             MR. CASTLE:  I can't do anything if I don't
15   have a copy of it, or --
16             THE COURT:  Has this one been produced, Mr.
17   Castellano?
18             MR. CASTELLANO:  I have to check, Your
19   Honor, but it should be, the disciplinary files for
20   the defendants have been turned over, so it should be
21   in there, but I will confirm that.  So the process
22   was done on an individual basis.  The inmates refused
23   to comply, and once each inmate was removed, they
24   would move on to the next inmate.  So there were a
25   number of inmates who weren't complying.  And the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   process was continued until all inmates in E pod had

 2   been removed from their cells, and their property

 3   removed.

 4            THE COURT:  Well, at least what he's

 5   reading to me, Mr. Castle, it seems like it's a

 6   coordinated event by the SNM to demonstrate some

 7   power that day.

 8            MR. CASTLE:  I didn't hear him say anything

 9   about the SNM.  It sounds like --

10            THE COURT:  He said a captain.  I assume --

11   is that a captain of SNM, or is that a captain of the

12   Corrections Department?

13            MR. CASTELLANO:  The captain was from the

14   Corrections Department.  But other members mentioned

15   are Paul Rivera, who was an SNM member; Mario

16   Montoya, who is an SNM member; Shawn Ural, who was an

17   SNM member; Billy Garcia, who is; Joe Martinez, who

18   was an SNM member.  And some of the other names I

19   don't recognize, but there are 11 names mentioned as

20   present and/or having witnessed the event.

21            THE COURT:  How many of the people that

22   participated in this demonstration, or of that 11 are

23   SNM identified members?

24            MR. CASTELLANO:  At least six, Your Honor.

25   And two of those witnesses are witnesses for the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   upcoming trial, those being Paul Rivera and Mario

2   Montoya.

3           THE COURT:  Well, seems like that's enough.

4   What do you think, Mr. Castle?

5           MR. CASTLE:  Your Honor, when Your Honor

6   entered the courtroom, all of us rose.  The majority

7   of us were defense lawyers.  That doesn't mean that

8   it's a coordinated effort of all the defense lawyers.

9           And so it sounds like half of them were SNM

10  members, half weren't.  This sounds to me like a

11  number of inmates trying to show the corrections

12  officers that they're upset about something.

13          But the reason I have this on the screen is

14  this is the superseding indictment.  They have not

15  alleged as part of the indictment that the SNM used

16  intimidation of guards in any fashion other than to

17  prevent law enforcement officers from identifying

18  offenders, apprehending offenders, or successfully

19  prosecuting and punishing offenders.

20          So what they're trying to do is go outside

21  indictment, which is why it's a bad act.  And all

22  they're trying to do is say:  These are bad guys,

23  they did some bad things, they caused problems, and

24  jury, why don't you lock them up forever.

25          That's exactly 404(b) evidence.  And they

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    alleged this indictment extremely broad.  They did
 2    not allege that the SNM had, as part of its plan, to
 3    just upset guards and intimidate guards by, I guess,
 4    refusing to come out of their cells.
 5              THE COURT:  Well, I think I've certainly
 6    heard over the last few months the testimony to that
 7    effect at various times.  So I'll overrule the
 8    objection to this incident and allow testimony.  I
 9    think there is enough SNM members participating that
10    it is a reasonable inference that it was motivated,
11    at least in part, to maintain or advance positions of
12    the SNM members.
13              Did you have another one in that, or was
14    there one more?
15              MR. CASTLE:  They told me about a third one
16    today.
17              THE COURT:  Is this still in the letter?
18              MR. CASTLE:  It is in the letter.  It says
19    "On or between 1993 to 1998, Billy Garcia sponsored
20    the admission of several people into the SNM."  I
21    believe that, given the scope of the indictment and
22    this Court's previous rulings, that that kind of
23    evidence would come in, as long as an appropriate
24    foundation is laid that they had personal knowledge
25    of that.  And so that's the only record I'm making.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  So with your
 2    reservation of those objections, which we'll have to
 3    handle as the evidence comes in, I'll permit the
 4    Government to offer that evidence.
 5              Does that take care of your motion then,
 6    Mr. Castle?
 7              MR. CASTLE:  No, Your Honor.  There is one
 8    more.  This morning, for the first time, the
 9    Government indicated to myself --
10              THE COURT:  And this is not going to be in
11    the letter?
12              MR. CASTLE:  No.
13              THE COURT:  Okay.
14              MR. CASTLE:  -- that they were going to try
15    to bring in evidence concerning the 1990 murder of an
16    individual by the name of Bobby Ortega.  And the
17    allegation is that Mr. Garcia ordered it, is what I
18    was told.
19              THE COURT:  Tell me a little bit about
20    Mr. Garcia.  Is he alleged to have been a leader of
21    the SNM Gang?
22              MR. CASTLE:  I believe that at that time he
23    was alleged to have been a leader.  I think their
24    arguments -- the few minutes I've had since they
25    announced this, I went back and looked at Mr. Robert
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Lovato -- who is the source of this information --

 2    his statement.  And what Mr. Lovato says is that

 3    Mr. Garcia ordered the hit of Mr. Ortega; that others

 4    carried it out in a different facility, and killed

 5    Mr. Ortega.

 6           I have a number of problems with that.

 7    First of all, on April 5th of 2017, ironically almost

 8    a year ago today, we filed our motion requesting

 9    disclosure of bad acts because of the very fact that

10    we needed to investigate and prepare, in the event

11    that we had to face it.  And we did it broadly.  We

12    said it was not just bad acts, but it was also res

13    gestae.

14           Because if the Government was going to

15    bring it in, as part of the enterprise evidence,

16    number one, we had a greater need to defend against

17    it, but number two, they had a greater need, under

18    Rule 16, under Giglio and Brady, to provide

19    information to us, because it's part of the elements

20    of the offense and it's going to be part of the

21    presentation of the elements of the offense.  They

22    have that duty.

23           On May 22, they gave us their notice and

24    it's right before the Court.  And the letter was

25    dated May 22, did not include the Ortega murder.  We

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    responded on October 10th.  And now, today, we find

2    out about this.

3            In the few minutes that I have had to

4    review that, what I can tell the Court is this:

5    Number one, we don't have any of the discovery from

6    that murder.  It was prosecuted.  People were

7    convicted of that murder.  People that aren't Billy

8    Garcia.  Obviously, that prosecution has exculpatory

9    information, because the jury convicted someone other

10   than Mr. Garcia as being involved in it.  And so

11   that's very concerning, if they're going to bring up

12   evidence that's part of the elements of this offense,

13   that being the criminal enterprise element, that they

14   did not go and search and perform their obligations

15   under Brady and Giglio or under Rule 16, for that

16   matter.  We don't have any of the tests done; for

17   example, the autopsy reports, things of that nature,

18   which are required, under Rule 16, to be produced

19   long ago.  So they have not performed their Rule 16

20   functions with regards to this enterprise element act

21   of this Robert Ortega murder.

22           But it even gets worse than that, and I

23   want to show the Court a few pages from discovery

24   that I discovered in the few minutes I've had.  If we

25   could pick up page 645 of discovery.  If we could

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   highlight the portion on Bobby Ortega.  This is a
 2   page of discovery dealing with a confidential
 3   informant, who has not been disclosed to the defense,
 4   indicates Bobby Ortega was killed by other SNM
 5   members, and it was ordered by Angel Munoz.  Nothing
 6   about Billy Garcia.  That's an exculpatory witness
 7   for the defense.  If the Court is going to allow this
 8   late allegation to come in, we're going to need
 9   disclosure of that person so that we can defend
10   against it.
11            THE COURT:  Now, the person you're thinking
12   needs to be disclosed is the person that's giving the
13   FBI this information?
14            MR. CASTLE:  Yes, Your Honor.  And I would
15   just --
16            THE COURT:  And you don't know who that is?
17            MR. CASTLE:  We do not know who that is.
18   But I can tell you that a lot of the people that are
19   involved, my understanding, are no longer alive.
20   Felipe Cordova, who allegedly ordered the murder, has
21   passed away.  Well, that's the one I know of.
22            THE COURT:  So, if I'm reading this
23   correctly, Felipe Cordova, who is now dead, his wife
24   provided evidence that Mr. Ortega was a snitch?
25            MR. CASTLE:  Apparently.  Also Angel Munoz
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    has passed away as well.

 2              THE COURT:  Oh, is that his situation?

 3              MR. CASTLE:  Yes.  And, Judge, there is 13

 4    of these references that I found in discovery.  So

 5    this is the first one.

 6              THE COURT:  13 that referenced the Ortega

 7    murder?

 8              MR. CASTLE:  Yes, 13 confidential

 9    informants who said other people, people other than

10    Billy Garcia committed the murder, and planned the

11    murder.

12              THE COURT:  So you're saying that it's

13    exculpatory because Mr. Billy Garcia is not listed

14    there?

15              MR. CASTLE:  Exactly.  It's contrary to the

16    theory that Robert Lovato had, not to mention the

17    fact that the Robert Lovato is not part of the

18    conspiracy or the discussions to kill Bobby Ortega.

19    So this witness not only says who actually did the

20    murder, but it also contradicts Robert Lovato.

21              And I'll go to another one.  We could

22    continue for a little while.  But if the Court would

23    like, I could go to another page.

24              THE COURT:  All right.

25              MR. CASTLE:  652.  This is another CHS
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    confidential informant.

 2            THE COURT:  And do you know the identity of

 3    this one?

 4            MR. CASTLE:  I might have the wrong page

 5    number, Your Honor.  Let's go to a different page,

 6    663.  If we could search for the word Ortega.  It's

 7    at the bottom of the page here.  This indicates that

 8    a different informant stated they overheard Mauricio

 9    Archie Varela discuss the murders, claimed that

10    Juanito Mendez carried the letter from Estancia to

11    Hobbs with the order to kill Bobby Ortega.  And it

12    goes on to the next page.  It details other people

13    that were involved with that murder, not including

14    either Mr. Garcia, Billy Garcia, or Robert Lovato.

15            If we could now go to page 2673.  This says

16    Billy Cordova, I believe, as the Government's

17    witness -- I'm sorry, Felipe Cordova is the one who

18    ordered the hit on Mr. Ortega, and that Juan Mendez

19    carried the note with instructions to kill Ortega.

20            If we could go to page 13863.  This is an

21    FBI report that details information about the murder,

22    and it talks about the fact that this murder is

23    already being prosecuted in Lea County; that an SNM

24    member by the name of Charles Aragon was testifying

25    for the prosecution; that the sources have indicated

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    the hit was ordered by Phillip Cordova; was then
 2    carried out by Juan Mendez, Michael Montoya, and
 3    Ruben Jinojos.
 4             Go to the next page.  And Felix Romo
 5    assisted by holding Ortega down.  And then it goes
 6    on.
 7             I don't know if the Court needs me to go
 8    through all of these.  But the problem here is that
 9    this is trial by ambush.  I've been able to identify
10    13 separate sources that indicate my client didn't
11    have anything to do with this murder.  And they're
12    just winging it in here five days before, or six days
13    before trial, without any discovery, without trial
14    transcripts that show what happened in this other
15    trial.
16             How am I to prepare for this, Your Honor?
17    I have no idea how I'm going to prepare for this.  I
18    don't know how to get these agents in.  I don't know
19    how to find who these CIs are.  And I'm entitled to
20    it if it is considered part of their enterprise
21    evidence, which is what they have told me.
22             THE COURT:  All right.
23             MR. CASTLE:  So I can detail the other
24    pages, or I can file a separate document, which would
25    attach that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Well, is the other 12 going to
 2    be that you got 302s talking about the -- or some
 3    document talking about the Ortega murder, and it
 4    doesn't list Mr. Garcia?
 5              MR. CASTLE:  Yes.  And it talks about
 6    confidential informants who haven't been disclosed to
 7    the defense, who say that they have evidence that
 8    indicates, number one, Mr. Billy Garcia is not
 9    guilty; and number 2, that Robert Lovato is not
10    telling the truth by saying he's part of it all.  And
11    we have a state prosecution, apparently, I'd like to
12    run down and see whether -- what that's all about.
13              If I could have just a moment, Your Honor?
14              THE COURT:  You may.
15              MR. CASTLE:  Your Honor, I'm sorry, what
16    you're going to hear this week, in the next two days
17    is a lot of us last minute throwing together items
18    that are derailing everyone's preparations for this
19    trial, whether it's a conflict that's raised at the
20    last minute, or a murder that's raised at the last
21    minute.  I'm encouraging the Court to hold the line.
22    We're going to find out in a few minutes that a
23    couple weeks ago another defendant found out they're
24    going to allege five new murders against him as part
25    of the enterprise evidence.  It's going to continue
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    to go on, and we're all going to be basically
2    scrambling to defend against allegations that should
3    have been made known to all of us many, many months,
4    if not years ago.
5              THE COURT:  All right.  Thank you, Mr.
6    Castle.
7              Mr. Castellano.
8              MR. CASTELLANO:  Your Honor, this isn't a
9    last minute disclosure.  Robert Lovato's Jencks, I
10   believe, was disclosed on January 12, 2018.  And as
11   the Court can see from the documents presented to the
12   Court, this murder was discussed early in the
13   discovery, as early as DeLeon 645.  We're now in the
14   60,000s in terms of Bates numbers.
15             And the fact that Billy Cordova isn't
16   mentioned, he's not excluded by these people; these
17   people don't say Billy Cordova had nothing to do with
18   it -- or Billy Garcia.  They say Phillip Cordova gave
19   the order to Billy Garcia, who passed it on.  And
20   that the difference between these CIs and Robert
21   Lovato, is that Robert Lovato is a trial witness, who
22   will say that he committed the murder, and that Billy
23   Garcia ordered the murder.
24             So this is much like the murder last trial
25   by Mr. Baca, who was S related.  The victim in that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  case was an SNM member.  Billy Garcia is an SNM

 2  member.  And Robert Ortega -- or Robert Lovato was

 3  also an SNM Gang member.  So this is an SNM hit.

 4  There is other documentation in the case related to

 5  this murder.  So this murder is not new news.  And,

 6  in fact, more than a few months ago, more direct

 7  evidence about that murder was presented to the

 8  defense attorneys.

 9          THE COURT:  On the -- did you say that Mr.

10  Ortega was an SNM Gang member?

11          MR. CASTELLANO:  Yes, he was.

12          THE COURT:  I guess the thing that Mr.

13  Castle is raising the most about is the notice here

14  of the -- under 404(b)(2).  Even if the discovery

15  indicated that he -- that this Lovato 302 was out

16  there, how was Mr. Castle to know that this was going

17  to be an issue in this case, since it's not on the

18  302 letter -- or on the bad acts letter?

19          MR. CASTELLANO:  Well, the bad acts letter,

20  I don't think, can cover every single act in this

21  case.  One of the reasons they ask for bad acts was

22  for purposes of 404(b).  This is evidence which

23  proves the elements in this case.  It's not 404(b).

24  As a matter of fact, all the things we've discussed

25  this morning regarding Mr. Garcia are not 404(b).



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    These are just acts that we presented to them.  And I

2    think what's happened is there has always been

3    confusion because people refer to these as bad acts.

4    These aren't bad acts pursuant to 404(b).  These are

5    racketeering acts.

6           THE COURT:  Well, we did that, though,

7    instead of allowing the Government to just decide

8    whether things were 404(b) or racketeering, to give

9    the defendants an opportunity to challenge that.

10   This one, I tend to agree with you, is probably going

11   to be more of an enterprise.  But would the

12   Government be willing, or has it already identified

13   all the CHs that are in these 12 302s, or Government

14   documents, that don't list Mr. Garcia, would you be

15   willing to disclose those?

16          MR. CASTELLANO:  Yes, Your Honor.  And if

17   the defense gives us the Bates stamp numbers that can

18   focus us on those pages and those people.  My

19   understanding this morning is that -- and I will

20   confirm this -- that the person in DeLeon 645

21   referred to is likely Leroy Lucero.  So we'll start

22   there.  But, yes, if they point us to those pages, we

23   will look for those pages.  And if we find additional

24   pages, we will also disclose that information.

25          THE COURT:  What about the trial, the

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                             1-800-669-9492
                                             e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   Ortega trial, what do we know about it?
 2            MR. CASTELLANO:  I know less about the
 3   trial itself.  I know that Robert Lovato was guilty
 4   of that crime.  And there were other people also
 5   implicated in that crime.  So he's been found guilty
 6   of it.  And he will testify to that effect, and he
 7   will testify that Mr. Garcia ordered that hit, or was
 8   one of the people that ordered that hit.
 9            THE COURT:  So Mr. Lovato was convicted.
10   Was he the only one convicted of the Ortega murder?
11            MR. CASTELLANO:  No, I believe there were
12   others, Your Honor.
13            THE COURT:  And this murder occurred in
14   1990?
15            MR. CASTELLANO:  1999.
16            THE COURT:  1999.
17            MR. CASTELLANO:  So two years before the
18   Castillo and Garza murders.  And it's similar in
19   that, once again, Mr. Garcia was not directly
20   involved in the murders, but is alleged to have
21   ordered the murders.  So it's very similar conduct,
22   and it's still racketeering and enterprise evidence.
23            THE COURT:  When do you think that Mr.
24   Lovato is going to show up as a witness for the
25   Government?  Where in this trial?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  We're going to try to

 2     check a quick order here, Your Honor.  If you give me

 3     a moment, I'll try to give you at least a basic

 4     estimate.

 5              THE COURT:  While you're looking for that,

 6     what do you think we're going to find as far as a

 7     1999 trial?  Is the State going to still have those

 8     records?  Is there going to be much still there?

 9     What's your experience with that?

10              MR. CASTELLANO:  I would be somewhat

11     surprised if those documents were still there.  I

12     know from time to time in the Bar Bulletin, not in

13     terms of docket entries, but the courts normally do

14     put out notice that they will be destroying evidence

15     and things of that nature, after a certain number of

16     years.

17              THE COURT:  Was that tried down here in Las

18     Cruces?

19              MR. CASTELLANO:  I think the murder

20     occurred in Hobbs, so it was probably in the eastern

21     part of state.  We can check those records.  We can

22     also see if it's possibly in Mr. Lovato's prison

23     file, see if there are documents in there.

24              THE COURT:  Has Mr. Lovato's prison file

25     been turned over?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. CASTELLANO:  Yes.  It should have been
2      disclosed already.  And I'll verify that as well.
3      But the witnesses' disciplinary files, and things of
4      that nature, and pen packs that have actually been
5      created should be -- should have been turned over.
6              THE COURT:  Do you have an approximate
7      estimate as to when he's going to be your witness?
8              MR. CASTELLANO:  Right now I'm checking the
9      tentative order right now, Your Honor.
10             Your Honor, we could probably put him on in
11     possibly the third week of trial.  Maybe later.  That
12     would give us an additional three weeks before the
13     defense sees him.
14             THE COURT:  Would you also agree not to
15     mention him in openings or this murder for a while?
16             MR. CASTELLANO:  We would, Your Honor.  We
17     could exclude that from opening statement.  That way,
18     the jury would not have heard anything until the
19     Court has more time to digest it.
20             THE COURT:  All right.  I guess, Mr.
21     Castle, I tend to agree, this probably -- I know
22     we've got the 404(b) list, and we know why we came up
23     with that list.  But it sounds to me like it's
24     enterprise and racketeering activity, or activity in
25     advancing the enterprise.  And you are going to get
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   names of the CHs; you're going to have some time to

 2   explore it.  The trial file is equally available to

 3   both of you.  And the Government is going to give you

 4   what they do have.  It seems like there is not much I

 5   can do on this.  It's not something that necessarily

 6   should have been disclosed.  If you come across

 7   something that indicates otherwise, then it will give

 8   us some time to digest it.

 9              MR. CASTLE:  Your Honor, it absolutely is.

10   Because if it's part of the enterprise evidence, it's

11   part of evidence they're going to use at trial, Rule

12   16 indicates the Government must permit defendant to

13   inspect and/or to copy papers, documents, et cetera,

14   that's in the Government's possession or control, if

15   it's going to be material to preparing the defense or

16   intends to use it in their case-in-chief at trial.

17   How do you prove a murder without --

18              THE COURT:  What do you think they have

19   that they haven't disclosed yet?

20              MR. CASTLE:  Everything about the murder.

21   Everything.  Other than a couple of CIs that said

22   different people committed the murder, I have

23   nothing.

24              THE COURT:  But what is it that you think

25   they have?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. CASTLE:  I'm sure they have a dead
 2    body.  I'm sure they have an autopsy report.  I'm
 3    sure they did fingerprints, DNA, and all the kinds of
 4    things that normally happen in a homicide case that
 5    are required to be done by Rule 16.  They have to
 6    have some examinations and tests that are required by
 7    Rule 16, or they should have had.  This is no
 8    different than the exact murders that Mr. Garcia is
 9    charged with.  It's part of elements of the offense.
10    And they're putting this on, and they haven't
11    disclosed it.
12            THE COURT:  Well, isn't the only thing they
13    have is Mr. Lovato testifying that Mr. Garcia ordered
14    the hit.  And the rest would be, most likely, in the
15    State's possession, would it not?
16            MR. CASTLE:  Yes.  But they have an
17    obligation, not only under Rule 16, but under the
18    Constitution to look for exculpatory information
19    concerning the allegations that they're alleging
20    against my client.  They have not represented here at
21    all today that they've looked for and disclosed
22    exculpatory information concerning the Ortega murder.
23    I've noticed that.  They purposely avoided that.
24    They have not said that they have fulfilled any of
25    their constitutional obligations in regards to that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   So even if it's not in their possession, they have an

2   obligation to go and get it.

3           THE COURT:  Well, really?  I mean, if it's

4   in the possession of the State -- I guess I have

5   looked at these Rule 16 and Brady and Giglio many

6   times, and I don't recall it putting a burden on the

7   Government to go to other state agencies and find

8   that material.

9           MR. CASTLE:  Well, then I guess they can't

10  call any of them as witnesses.  You know, if they're

11  not going to put on a pathologist, which I noticed

12  there is no pathologist that I know of that is listed

13  on their will call list concerning the death of Mr.

14  Ortega.  None of the people, other than Mr. Lovato,

15  who were apparently involved in that, are listed.

16          This is trial by ambush, Judge.  I don't

17  know how else to do it.  And I can't even do an

18  interview with a single one of these people in the

19  five days left.  I'm going to be giving them a list

20  of CIs.  They're going to tell me where they are.

21  And we're going to have to go wing it?

22          And I have a right to make an opening

23  statement that covers what's being alleged against my

24  client.  They may refrain from it.  But I have a

25  right.  My client's going to have to face an

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    allegation of another murder, and I don't say

2    anything for the jury at all about it, then I'm

3    hiding from it.  And the jury is going to know that.

4    Why didn't you talk about Mr. Ortega?  You know,

5    that's what's going to go through their mind.  Why

6    didn't you talk about it?  And I can't talk about it

7    because I don't know anything really about it.

8            I looked through Mr. Lovato's disciplinary

9    history, okay?  It doesn't have the records that

10   they're talking about.  And perhaps they can show it

11   here on the screen.  I haven't had that much time.

12   Literally, this is the morning -- right before the

13   morning break I'm being told to defend a murder

14   allegation.  I don't know how anybody can say that's

15   fair, Your Honor.

16           And it is being used to prove an element of

17   the offense.  So it is the same as the other aspects

18   of the indictment, including the allegations in 2001.

19   And if they were to have said to you, Your Honor, I

20   am now telling you on five days before trial, that

21   the 2001 murders, that was investigated by the State,

22   and we didn't turn over anything, we haven't given

23   them the autopsy reports.  We haven't given them any

24   physical evidence.  We haven't even let them go look

25   at any of the physical evidence, because they didn't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    know about it, if they were to say that, I would

2    think this Court would be issuing sanctions and have

3    problems.  It is the same as any other element.  And

4    they have the obligations under Rule 16 and the

5    Constitution to seek out and present this information

6    to us.

7         I would tell the Court right now that I

8    showed the Court one document.  I believe the witness

9    that we showed the Court at 13863, Charles Aragon,

10   who testified for the prosecution, in the prosecution

11   of, I believe it was Phillip Cordova; apparently it's

12   now also Mr. Lovato.  We don't have his statements.

13        And I would note the Court can look at

14   this -- if you could switch back to the overhead.

15   The Court has found that where the federal government

16   has worked with state officials, that they have an

17   obligation to disclose.  This is -- I'm going to

18   scroll to the top -- this is an FBI report with Trent

19   Pedersen, back in 2001, where they were dealing with

20   these homicides.  And the reason I'm showing this

21   Court is we read this, and they talk about -- I

22   apologize, I'm scrolling too fast -- they talk about

23   Rolando and Frank Castillo homicide.  So we're on

24   notice.  We read about it.  We defend against it.

25        Then we go down to Bobby Ortega.  Nothing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    is mentioned about Billy Garcia.  But the FBI here,
 2    this is part of their investigation, they're looking
 3    at all the murders, including the Bobby Ortega
 4    murder.  So it's a joint task force -- the Court had
 5    heard evidence, on a joint task force of state and
 6    federal officials looking into the SNM and their
 7    activities.  So that's where this comes up.
 8              We don't have any reports of Charles
 9    Aragon's statement.  We don't have any documents.  So
10    I believe this Court had indicated in early parts of
11    this case that it was extending the Government's
12    obligations to those state officials that it was
13    working with in these joint matters.  And there was a
14    joint task force.  So their obligations did extend to
15    this.
16              THE COURT:  Well, I certainly said that
17    about the Corrections Department.  And then about
18    task forces, I believe the Government is
19    participating in those and has an obligation to go
20    look and search those as well.  Just me reading this
21    right here is suggesting that it's being prosecuted
22    by state authorities, I'm not sure that there is in
23    anything that's really -- the federal government is
24    involved in that prosecution.
25              MR. CASTLE:  I would point out that the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    federal government is corrections sources that are

2    advising them about the Ortega murder.  So that

3    murder apparently happened inside the Corrections

4    Department.  And the fact that the State may have

5    also prosecuted it, doesn't change the fact that it

6    was -- that the FBI was working with State

7    corrections and the State Corrections has provided

8    information concerning that hit.

9              Like I said, I'm winging this, Judge.  I

10   don't have the documents.

11             THE COURT:  Let me ask Mr. Castellano.  I

12   mean, I certainly think -- and I think you would

13   agree -- that the obligation is to look for evidence

14   that the federal government possesses, no matter what

15   federal government agency has it.  And I think I've

16   already said the obligation doesn't extend to going

17   out and searching for additional evidence outside of

18   its possession.  Then we came up with these rules for

19   the Corrections Department and some of the task

20   forces.

21             Is there anything else that you need to go

22   look for from any federal government agency,

23   Corrections Department, or task force, that's going

24   to have any information about the Ortega murder that

25   you haven't already looked at and produced?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. CASTELLANO:  Not that I can think of,
 2    Your Honor.
 3            And Mr. Castle has made a point this
 4    morning with the other documents he already has in
 5    his possession.  So those are documents, some of them
 6    from the Corrections Department and other sources,
 7    that provide him impeachment information that he
 8    already needs.  So that would be considered
 9    impeachment, and possibly Brady or Giglio
10    information.  He's already highlighted that for the
11    Court this morning.  He already has that in his
12    possession, and those have already been disclosed to
13    him.
14            So in terms of us getting the records and
15    things of that nature from the Corrections
16    Department, he has those.  He showed those to the
17    Court this morning.
18            THE COURT:  Well, I just remind you of your
19    obligations.  If it's a federal government agency or
20    if it's in the Corrections Department or a joint task
21    force, you've got to look at it with the Rule 16,
22    Brady-Giglio on.  And if you say you've already done
23    that and produced everything, then I'll have to take
24    your word for it.  But you really might want to use
25    this additional time to double-check, and make sure
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    something doesn't pop up.  And you made some

2    representations about what you'll do to give

3    additional information today.

4           MR. CASTELLANO:  And I agree, Your Honor.

5    And I don't want anyone to be surprised by additional

6    information.  So we will make use of that time to

7    make additional inquiries.  But like I said, Mr.

8    Castle has documents in his possession, indicating

9    they've already been disclosed.

10          THE COURT:  And is about all your proof

11   going to be is you're just going to put Mr. Lovato

12   on, that's about it?  No forensics?  No pathologist,

13   or anything like that?  It's just going to be

14   Mr. Lovato?

15          MR. CASTELLANO:  That's correct, Your

16   Honor.  And probably his judgment related to that

17   conviction.

18          THE COURT:  Oh, yeah, okay.  And I guess,

19   as far as the opening statements, you know, the

20   Government is somewhat gagged.  I mean, you can

21   wait -- I know you probably don't want to, given what

22   you told me earlier -- wait to do your opening.  But

23   it seems to me you know what they're going to say.

24   You may not know exactly everything you want to say,

25   but you know what they're going to say at trial about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    this murder.

2            MR. CASTLE:  Yes, Your Honor.  I'll address

3    that.  But I also want to show the Court another

4    matter.

5            I have a right in my opening statement to

6    say what I believe my case will be.  I won't be able

7    to do that regarding that murder, because I will not

8    be in a position where I can, in any manner, make any

9    representations about what evidence we'll put on or

10   not put on, concerning that murder.  I will not be in

11   that position.

12           So the reason we're here is not because of

13   anything we did wrong, because the Government hasn't

14   turned over.

15           They told you just a few minutes ago that

16   those materials were likely all in Mr. Lovato's

17   corrections file.  I'm showing on the screen Mr.

18   Lovato's corrections file that we were given.  It's

19   15 pages long, 15.  And it mentions nothing about

20   this murder at all.  And I can scroll through it.

21   But it starts at page 25699.  And there are the

22   offenses, adjustment history.  Nothing about killing

23   anybody.  That's it, Judge.  Scroll through it, they

24   have some discussion about these mild "refusing

25   lawful orders," or using bad words, and things like

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    that.  Nothing about the Montoya (sic) murder.

2              THE COURT:  Ortega.

3              MR. CASTLE:  Sorry.  Ortega murder.

4              THE COURT:  But I guess I'm struggling to

5    see what the Government has done wrong.  I mean, I

6    guess that's where I'm not getting the connection is,

7    I'm not seeing that they've done anything wrong.

8              MR. CASTLE:  They haven't told us that they

9    have looked for any exculpatory information

10   concerning that murder and turned it over for the

11   defense.

12             THE COURT:  Well, I guess I thought that

13   was the representation I got from Mr. Castellano.

14   Isn't it, Mr. Castellano?

15             MR. CASTELLANO:  Yes, Your Honor.  I

16   indicated that Mr. Castle has documents, which he

17   showed to the Court this morning, indicating that he

18   could impeach Mr. Lovato by the fact that Mr. Garcia

19   is not mentioned by other people.  So there is

20   evidence he already has in his possession.  And we

21   will make additional inquiries, but like I said, he's

22   actually highlighted to the Court documents which

23   don't mention his client.  And those were disclosed

24   by the Government.

25             THE COURT:  And I guess if something pops

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   up, I'll have to reevaluate this.  But right at the
 2   moment, I'm just not seeing what the Government has
 3   done wrong.
 4             MR. CASTLE:  He carefully worded that, Your
 5   Honor.  He didn't answer your question.  He didn't
 6   answer whether they looked for exculpatory
 7   information.  He just said there has been some
 8   inculpatory information that has been disclosed.
 9   He's not said that they looked for it.
10             THE COURT:  Let me put it in my words.
11   He's just disclosed everything, so that there is not
12   anything more to kind of go look at.  Am I doing
13   it -- am I saying it right?
14             MR. CASTELLANO:  That's correct, Your
15   Honor.  If we had it, we disclosed it.  That's why we
16   have over 60,000 pages of discovery in this case.
17             MR. CASTLE:  They have an obligation to go
18   out and locate and produce exculpatory information.
19   Not just what is in their possession.  They have an
20   obligation to obtain it and to distribute it.  And if
21   they're going to allege in a federal indictment of
22   other crimes, such as a murder, they have an
23   obligation under Rule 16 to give us materials.
24             Also, I -- maybe I'm the one that's not
25   understanding.  But they haven't given us anything
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                              1-800-669-9492
                                                   e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    but a few snippets from CIs that haven't been

2    disclosed.  I mean, the fact that they haven't

3    disclosed it up until five days before trial, in and

4    of itself, is a violation, because they know that if

5    they have a CI that provides exculpatory information

6    to a defendant, they have an obligation to turn that

7    information over to the defense under the Roviaro

8    decision.  They haven't done that.  And they waited

9    so that we will be prejudiced.

10          THE COURT:  Let's do this:  You're going to

11   get all the names of the CIs, but it seems to me

12   they've all been disclosed.  I could be wrong.  There

13   may be some they haven't disclosed.  And if that's

14   the case, we'll reevaluate it.

15          MR. CASTLE:  What's interesting is they

16   gave the Court one example, which is page 645, and

17   said that was Leroy Lucero.  We have a letter from

18   the Government that was distributed to all

19   defendants, that Trial 1 relied on, and all of these

20   defendants relied on, which indicates which pages

21   relate to which informants.  And 645 is not indicated

22   as Leroy Lucero.  So now we have a new statement by

23   Leroy Lucero, supposedly.  I'm not sure it is Leroy

24   Lucero.  But we'll have to take a look at that.  But

25   once again, that's another problem.  So I'm not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    accepting that representation, that all these people
 2    have been disclosed, because when I went through
 3    those page numbers in the 13, the only reason I
 4    brought them up is because I quickly indexed it
 5    against their disclosure.  And all those 13 people,
 6    page numbers are not referenced in their CI
 7    disclosure document.  So these are all people that
 8    have never been disclosed.  Now, they might be
 9    duplicates.  I don't know.  I didn't have time to go
10    through and analyze it.
11            But I could tell the Court we're definitely
12    in a situation where they have not disclosed
13    exculpatory information.  And frankly, I'm going to
14    probably run this stuff down.  Some of these people
15    might be dead, and we'll have to file another motion
16    to dismiss, and have the Court hear it again in the
17    midst of this hearing, in the midst of the trial.
18            THE COURT:  All right.  Well, for the time
19    being, I won't pretrial exclude it.  You'll need to
20    probably do some work on this, and the Government has
21    got some work it needs to do.  And then I'll just
22    have to reevaluate it depending on what shows up.  At
23    least at the present time, I'm not seeing any reason,
24    sound reason, to exclude it from trial.
25            MR. CASTLE:  Your Honor, I'd be remiss if I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   didn't at this point in time move for a continuance
 2   because of our inability to represent and defend our
 3   client on one of the three murders that are being
 4   alleged in this case, the third of which was alleged
 5   for the first time today.  So we are moving for a
 6   continuance so we can prepare for trial.
 7              THE COURT:  All right.  Thank you, Mr.
 8   Castle.  I won't grant that at the present time, but
 9   I'll deny it without prejudice to being renewed.
10              All right.  So what I have next to go to is
11   what has been, I think on our charts, marked as
12   number 17, which is the -- Mr. Arturo Garcia's
13   alleged bad acts.  Mr. Blackburn --
14              MR. BLACKBURN:  Judge, I spoke to the
15   Government.  Could we ask that you move that down for
16   a little bit?
17              THE COURT:  All right.  Is that all right
18   with everybody?  Are y'all going to talk about it
19   some more, is that --
20              MR. BLACKBURN:  Yes, amongst other things,
21   obviously.
22              THE COURT:  All right.  So we'll move that
23   down.
24              So then the next one I have is Christopher
25   Chavez' bad acts.  Where are we on that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. GRANBERG:  Your Honor, we had discussed
 2    this at the last hearing.
 3              THE COURT:  And my pages are all marked up.
 4    Do you think we've covered everything?
 5              MR. GRANBERG:  I thought we did, Your
 6    Honor.
 7              MS. ARMIJO:  Yes, Your Honor.  You ruled on
 8    everything as to that.
 9              THE COURT:  All right.  Some stuff was just
10    given back to me because Ms. Wild may not have known.
11    But I'm looking at Document 1531-1.  I have pretty
12    extensive notes on there.  I recall the colloquy that
13    we had with each other.
14              All right.  So then I'll go to Mr. Joe
15    Gallegos' motion in limine on 404(b).  Where are we
16    on that one?  I don't see this sort of marked up
17    notes on that one that I had.
18              MS. ARMIJO:  Your Honor, I believe while
19    Mr. Benjamin is going up, we did meet in person and
20    discussed this one, and said we've narrowed it down,
21    and we can go over all of that.  There are a few
22    discrete acts.
23              THE COURT:  Okay.
24              MS. ARMIJO:  I think we knocked out
25    everything on the first page.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        THE COURT:  Let me pull the page up.  All

2   right.  So this is your letter of May 22, 2017, so

3   everything on the first page is out?

4        MS. ARMIJO:  Correct, Your Honor.

5        THE COURT:  All right.

6        MS. ARMIJO:  Then I believe the first one

7   would be the March of 1995.

8        THE COURT:  Okay.  So the very first one at

9   the top of the page is in?

10        MS. ARMIJO:  Correct.

11        THE COURT:  All right.

12        MS. ARMIJO:  It's the "Joe Gallegos

13   participated in recorded telephone calls with Rosanne

14   Perea regarding drugs."

15        THE COURT:  All right.  We've done this a

16   little bit with different -- we've done this with

17   different defendants.  I assume the purpose of this

18   is to establish that Mr. Joe Gallegos does drugs,

19   which is something that has been important for your

20   proof as to activities that the SNM Gang does?

21        MS. ARMIJO:  Correct, Your Honor.  And what

22   I was going to say -- I think we discussed it with

23   other defendants in general -- is that we will have

24   several cooperators coming in and testifying as to

25   Mr. Gallegos, either providing him drugs or being

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1    involved in drugs.  This particular one I believe is

2    a call, and that's why we have it in particular.  But

3    we have numerous witnesses that would come in and

4    testify to that extent.  And so I guess we would just

5    ask that we would do that as well.

6         And if it became -- I believe with the last

7    one, which may have been Mr. Chavez, I'm not really

8    sure -- but the Court had indicated that if, you

9    know, we felt it was being cumulative, or you know,

10   just too much information, then the Court would

11   consider at that time limiting it.  But we certainly

12   do have witnesses that would be testifying as to when

13   they were incarcerated with Mr. Gallegos, his drug

14   activities.

15         THE COURT:  Yeah.  Just looking through

16   this list, it looks like a lot of them are drug

17   activities.  I'm wondering if rather than trying to

18   prove particular ones, like the March 1995, or the

19   August 4, 1995, or -- my eyes are just going down the

20   list -- October 15, 2000, October 15, 2000, February

21   27, 2001 -- if the Government were to just put that

22   in, put that evidence in, you didn't contest that he

23   was a drug user involved in drug trafficking in and

24   out, could we maybe then dispense with all the

25   individual incidents?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  I think that's one option,
 2    Your Honor.  My concern is that, as of 2005, the New
 3    Mexico Department of Corrections lists Joe Gallegos
 4    as a nonvalidated member of the SNM.
 5              And so I think it comes -- the reliance on
 6    all the drug use and everything needs a foundation
 7    first.  I'm not willing to just agree that they get
 8    to use drug evidence for character evidence or such
 9    prior to them establishing that Mr. Gallegos is an
10    SNM member.
11              THE COURT:  Do they have him validated
12    after 2005?
13              MR. BENJAMIN:  No, Your Honor.
14              THE COURT:  Do they have him validated
15    before 2005?
16              MR. BENJAMIN:  No, Your Honor.  They're
17    going to have somebody come in, I believe, and say
18    that Mr. Gallegos is an SNM member, or some such.  I
19    guess the issue becomes what that date is.
20              THE COURT:  Let me ask Ms. Armijo:  What
21    would be your starting point for proof that Mr.
22    Gallegos was part of the SNM Gang?
23              MS. ARMIJO:  Well, he certainly was part of
24    the SNM Gang on or before 2001.  I'd have to go back
25    and look at my notes to see what different witnesses
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1  would say.  But we do have witnesses that will say he
 2  is an SNM Gang member, and his first murder did occur
 3  in 2001.  So at least as of that time he was.  And
 4  I'd have to go back and -- yes, as we know from the
 5  last trial, Mr. Sanchez was not a validated gang
 6  member.  We had lots of testimony as to him being a
 7  leader in the gang.  So this is somewhat analogous to
 8  that.  We have numerous people who will put him as an
 9  SNM Gang member.
10          THE COURT:  I guess this is what I would
11  propose to do is -- it kind of depends on your
12  strategy, how you want to attack these people.  If
13  you're not going to really attack them on the fact
14  that he's bringing in drugs and those sort of things,
15  then I would probably resist the Government bringing
16  in specific instances.  We don't need them.  If he's
17  a drug user, and he's used drugs and he brings in
18  drugs and traffics in them, then we don't need to
19  have specific instances.
20          On the other hand, if that's going to be a
21  focal point -- and then, as far as the Government is
22  concerned, they're going to have to establish if
23  they're going to go the 404(b) -- I'll call it
24  that -- although, I think these are a little bit
25  different -- we're going to go that route, then

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    they're going to have to establish when they're going
 2    to say he was a member of the SNM Gang.  And probably
 3    drug use, or 404(b) activity before that date would
 4    not be in.  And that afterwards, then it would, I
 5    would probably allow it in.  Does that make sense?
 6              MR. BENJAMIN:  It does, Your Honor.  And I
 7    don't think it will be a surprise, there is going to
 8    be testimony regarding Mr. Gallegos' drug use
 9    specifically in the Burns murder.  But so -- I don't
10    have an issue with that.
11              What I do have an issue is just the
12    glossing over of everything and alleging that
13    everything is -- and that was the way that I
14    understood the Government was going to try to do it,
15    all these acts, because they're drugs are therefore
16    SNM connected.  So I think what the Court is
17    proposing is certainly fine.  Once the Government has
18    put somebody on that talks about SNM, and
19    specifically regarding Joe.
20              THE COURT:  As a starting point.
21              MR. BENJAMIN:  Yes, Your Honor.
22              THE COURT:  Can you live with that, Ms.
23    Armijo?
24              MS. ARMIJO:  Yes, Your Honor.  I think
25    that's the way we've been operating, and that's the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    way we plan on operating.

2              THE COURT:  Okay.  So I won't necessarily

3    preclude these.  But approach the bench before you

4    try to get in the specific acts of drug use.  And,

5    otherwise, we'll see if it works out as it has with

6    other defendants.  And if it does, then I won't

7    allow, then, specific instances other than what is

8    necessary for the 2001 alleged murders.

9              MR. BENJAMIN:  I'll preserve the objection

10   at that time, Your Honor.

11             THE COURT:  Okay.

12             MR. BENJAMIN:  Two concerns that I have, I

13   think -- and Ms. Armijo didn't, I believe, whittle

14   this down immensely -- but the next one, if the Court

15   would go to the second page, "On or about December 8,

16   1996, Joe Gallegos bribed and intimidated a witness."

17             THE COURT:  All right.  So the next three

18   are out; is that correct, Ms. Armijo?

19             MS. ARMIJO:  Yes, Your Honor.

20             THE COURT:  All right.  So we're now at "On

21   or about December 8, 1996?"

22             MR. BENJAMIN:  Yes, Your Honor.  And Your

23   Honor, I have a judgment for that, I've talked to my

24   client about that.  I don't think that this is, once

25   again, there is not going to be any foundation to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    show that this is an SNM act, other than their

2    general idea that any violent crime is an SNM act.

3    Because this involved a family member.

4            So there is going to be -- I think, in

5    doing the research now, there is going to be an issue

6    regarding whether that's an act that involves a

7    family member, or whether it's an issue regarding the

8    SNM Gang.  And I think that they're going to have an

9    extremely high burden -- and this was something that

10   happened in El Paso -- where they're trying to link

11   gang members in separate acts based upon gang members

12   versus bad acts that occurred between -- in support

13   of a family member.  Did I make sense with that, Your

14   Honor?  It sounded like I was talking in circles.

15           THE COURT:  I think I understand what

16   you're saying.  I think we've seen this issue before.

17   So let me see what Ms. Armijo has to link this with

18   the SNM enterprise.  Is that your point?

19           MR. BENJAMIN:  Yes, Your Honor, versus

20   familial.

21           THE COURT:  Just a family dispute.

22           MS. ARMIJO:  And Your Honor, as to this

23   specific incident, I don't know that we would say

24   necessarily this incident is -- if it's family,

25   necessarily that it is SNM.  But if it is an SNM, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    will say that it's 404(b) in particular, given the
 2    fact that he's charged with witness intimidation.
 3    That's one of the charges that he's facing in regard
 4    to Jose Gomez.  And so to that extent, it might be
 5    relevant to that.
 6              MR. BENJAMIN:  And I would come back -- and
 7    the Court can guess -- that would be extremely
 8    prejudicial to use a 1996 act to support what would
 9    be described as a very weak witness intimidation act.
10              THE COURT:  Yeah.  I'd be a little
11    concerned just about the distance.
12              MS. ARMIJO:  And Your Honor, at this time,
13    why don't we -- can we just hold this one in
14    abeyance?
15              THE COURT:  Well, I think that's probably
16    what I'm going to say is, unless you're able to link
17    it up more strongly with SNM, I'll probably keep it
18    out.  I won't -- I'll do it without prejudice, that
19    if you can show me some better link.  But if it's
20    just a family member -- and I tend to agree with Mr.
21    Benjamin, that if it's going to be right on point
22    here, it really does begin to be the most prejudicial
23    kind of evidence.  So I'd be inclined to keep that
24    one out.
25              MS. ARMIJO:  All right, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Agreed.
 2              MR. BENJAMIN:  Your Honor, and as I said,
 3   Ms. Armijo pared this list down.
 4              The next one was a drug one, "On or about
 5   March 19, 1997," introducing heroin, and so I think
 6   that we can move -- go with that, and the Court --
 7              THE COURT:  Okay.  January 16, the next one
 8   is out, and then the next one that's in, March 19, we
 9   can treat it like the other drugs?
10              MR. BENJAMIN:  Yes, Your Honor.
11              THE COURT:  Does that work for you?
12              MS. ARMIJO:  Yes, Your Honor.
13              THE COURT:  All right.
14              MR. BENJAMIN:  April 14, 1997, I was going
15   to list them, because there is quite a few between
16   the next one that they're proposing, which is another
17   drug offense, Your Honor.  But April 14, 1997, May
18   22, 1998, April 6, 1999, July 23, 1999, October 15,
19   2000, and October 15, 2000 are all out.
20              February 27, 2001 is a drug one, and we've
21   just essentially asked, like the Court had proposed,
22   to approach, and determine where we are in evidence
23   at that point in time.
24              THE COURT:  Okay.  Was the -- I'm sorry,
25   was the April 14, 1997, were we going to treat it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  like we were the other drugs, or was it just totally

 2  out?

 3          MR. BENJAMIN:  That was out, Your Honor, is

 4  what Ms. Armijo told me.

 5          MS. ARMIJO:  Well, Your Honor, I think it's

 6  out, like we're not planning on bringing in the

 7  urinalysis test.

 8          THE COURT:  So we're going to treat it like

 9  a drug offense?

10          MS. ARMIJO:  Correct.  I think that, in

11  general, all the drug offenses, as long as we're

12  allowed to, we're planning on doing like we did with

13  the other cases, and as we mentioned before.  So to

14  the extent that there is individual things, we're not

15  planning on presenting it.

16          THE COURT:  Okay.

17          MS. ARMIJO:  Anything listed here, I think

18  we could, in general, do that.  And if for any reason

19  that changes, we, of course, would approach the

20  bench.  But that's how we would plan to proceed with

21  drug usage.

22          MR. BENJAMIN:  And, Your Honor, my

23  objection would be usage is not a RICO Act.  And so

24  there are enumerated acts under the RICO.  And

25  conspiracy to transport I know is one, but possession

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                         Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492
                                                                                  1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                                          e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.

```
 1   is not, or use is not.  And so --
 2            THE COURT:  I think it's probably going to
 3   be out.  But it kind of depends on what you argue.  I
 4   mean, if you surprise Ms. Armijo and say he never
 5   used drugs, then --
 6            MR. BENJAMIN:  I can promise the Court that
 7   that won't come up.
 8            THE COURT:  So it's probably out.  The May
 9   22, 1998 is out; is that correct, Ms. Armijo?  April
10   6 is out.  July 23 is out.  October 15 is out.  Then
11   the next one is -- the next October 15 is a drug one,
12   so we'll treat it like the drug one.  Then February
13   27 is another drug one, and we'll treat it like a
14   drug one.  Is everybody in agreement on those?
15            MS. ARMIJO:  Yes, Your Honor.
16            MR. BENJAMIN:  Yes, Your Honor.
17            THE COURT:  Is the next one, then, on March
18   9, is that another intimidation of a witness?  Is
19   that one in or out?
20            MS. ARMIJO:  And, Your Honor, that one --
21            MR. BENJAMIN:  I was told that that was
22   out, Your Honor.
23            MS. ARMIJO:  Out.
24            THE COURT:  That's out?
25            MS. ARMIJO:  Out.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Okay.  So then we're down to
2     January 25.  Is that one in or out?
3              MS. ARMIJO:  Out.
4              THE COURT:  Out.  What is the next one
5     that's in?  Maybe I'll --
6              MS. ARMIJO:  The last one that's in, but
7     it's really not a bad acts, it's just statements by
8     the defendant, is that there is a recorded call with
9     Shauna Gutierrez.  And Shauna Gutierrez is going to
10    be a witness in this case.
11             THE COURT:  Okay.
12             MS. ARMIJO:  They're just statements.
13             THE COURT:  So the September 25 is out.
14    Shauna Gutierrez statements are in.  Is that your
15    understanding as well, Mr. Benjamin?
16             MR. BENJAMIN:  I would use the term "will
17    be offered," Your Honor, but --
18             THE COURT:  Certainly.
19             MR. BENJAMIN:  I'm just being --
20             THE COURT:  Anything at this time I can
21    help you with, or we're going to have to take
22    those --
23             MR. BENJAMIN:  We're going to have to take
24    those up at a time -- I'm planning on briefing
25    something on some of those issues.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Okay.  Do y'all want to educate
2    me a second on Ms. Gutierrez?  Is she going to be
3    here and testify?
4              MS. ARMIJO:  Yes, Your Honor.
5              THE COURT:  So she has a cooperation clause
6    in her plea agreement?
7              MS. ARMIJO:  She has an addendum that I
8    believe should have been disclosed.  If it wasn't, it
9    will be disclosed this week.
10             MR. BENJAMIN:  And correct me if I'm wrong,
11   but you're going to disclose a proffer from the 29th
12   this week in the notes?
13             MS. ARMIJO:  Yes.
14             THE COURT:  All right.  So we'll just have
15   to take those -- those are recorded phone calls.  All
16   right.  So we'll just have to take those as they come
17   up, Mr. Benjamin?
18             MR. BENJAMIN:  Yes, Your Honor.
19             THE COURT:  Anything else, then, on your
20   bad acts?
21             MR. BENJAMIN:  I think they're going to say
22   that there was another issue that we discussed, and
23   it's an individual by the name of Matt Lucero, Your
24   Honor.  And it deals with five murders that they're
25   going to -- I believe, allege are the RICO acts.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    if I could ask the Court --
 2              MS. ARMIJO:  I sent him an email.  We're
 3    not going to call him.
 4              MR. BENJAMIN:  Oh, I'll withdraw that.
 5              THE COURT:  So he doesn't have the same
 6    problem Mr. Castle does?
 7              MS. ARMIJO:  No, he does not.
 8              MR. BENJAMIN:  I didn't see that email
 9    among the many thousands I've had.  I apologize.
10              THE COURT:  Anything else, Mr. Benjamin, on
11    your 404s?
12              MR. BENJAMIN:  No, Your Honor, that cleaned
13    it up very nicely.
14              THE COURT:  All right.  Let me get my
15    documents in order here.
16              All right.  So I am now going back to -- I
17    think we're going back -- is this now where we've
18    picked up Billy Garcia's motion to dismiss?  Is this
19    where we pick up this issue?
20              MS. ARMIJO:  Before we get to that issue,
21    Ms. Harbour-Valdez and I would like to address the
22    Court on some questions that we had in reference to
23    jurors, so that we can get people behind the scenes
24    working on that.
25              THE COURT:  Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            MS. HARBOUR-VALDEZ:  Your Honor, we had
2      filed joint stipulations, several documents, Document
3      1981, 82, 90, 91, and then this week we filed three
4      supplemental joint stipulations based on emails and
5      correspondence we've received from Ms. Bevel.  I
6      believe we'll be filing another one this morning
7      based on four more letters that came in.  We were
8      just wondering when the Court might have an answer,
9      so that we could get our folks --
10           THE COURT:  I think, by and large, if y'all
11     have been agreeing on these people, they've been
12     taken out.
13           THE CLERK:  That's correct, Your Honor.
14           MS. ARMIJO:  Okay.
15           THE COURT:  I spent Wednesday night on the
16     document that I filed on Wednesday night, where there
17     was disagreements on that.  And I might just say on
18     this -- and I'm not trying to interfere with
19     anybody's challenges to these people, but what I
20     noticed in looking through those things, the
21     defendants were taking a fairly hard line position
22     with hardship.  The Government was making more
23     hardship.  I didn't want to interfere with the
24     defendants' strategy, if you've got a jury consultant
25     and they're telling you that person is a great juror
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and the Government is trying to knock it out on

2    hardship, I took a little bit of a hard line.  I

3    wasn't necessarily trying to signal to anybody that

4    if everybody agreed that those people should be

5    tossed out that I wouldn't go along with it.  So I

6    say that more for the defendants' benefit.  I didn't

7    want to the necessarily -- you know, if I have to

8    tell jurors they've got to be here -- because the

9    defendants may have identified those people as people

10   that fit your profile and you want them there.  I'm

11   going to probably go to pretty good lengths to just

12   tell people they'll have to do their civic duty.  But

13   if y'all agree with the Government that some of those

14   should be tossed out, then I will also probably go

15   along with them, even though in my order I'll

16   overrule any hardship objection.  Am I making myself

17   somewhat clear?

18            MS. HARBOUR-VALDEZ:  I think so, Your

19   Honor.  So we can assume that all the ones we've

20   agreed on have been removed, and we can get started?

21            THE COURT:  I think so.

22            THE CLERK:  They've been pulled out.

23            THE COURT:  I haven't been going back and

24   undoing those, so I've just been ruling on the ones

25   where y'all couldn't agree.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MS. HARBOUR-VALDEZ:  Okay.

2           THE COURT:  You know, I'll say this, I'm

3    nervous about everything, but we are getting a little

4    bit lower numbers than what I was hoping to have for

5    you here on Monday morning, Tuesday, Wednesday.

6    We're going to stagger it a little this time.  I was

7    hoping to have 200 here, 210, something like that.

8    And we're down to -- I think yesterday Ms. Wild told

9    me 182, I think.  It doesn't do any good to worry

10   about everything.  It doesn't do any good to have 60

11   here at the beginning, and it's always Juror No. 59

12   back there that is yapping, trying to get out.  And

13   he or she is trying to get out for hardship, but

14   she's fouling up all our answers, and we're not

15   getting a good voir dire.  So that's the reason I'm

16   kind of going along with y'all.  But I'm still

17   getting a little nervous about the numbers.  But the

18   numbers are arbitrary.  I guess I still think we'll

19   get the jury picked.  I'm optimistic we'll get them

20   picked in the first batch.  And even if we don't get

21   them in the first batch, I think the first 120 or so

22   we'll still get the jury picked.  So I'm not

23   panicking yet.  That's a long way of saying that I

24   think if y'all are submitting names, you can assume

25   they're out.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. HARBOUR-VALDEZ:  Okay, your Honor.  And

2    then will Ms. Wild or Ms. Bevel send us the

3    numbering?

4          THE COURT:  Do what?

5          MS. HARBOUR-VALDEZ:  The numbering of how

6    they'll be seated.  I know the Government probably

7    has it from Trial 1, but we weren't privy to that

8    correspondence.

9          MS. ARMIJO:  We had it that morning.

10          MS. HARBOUR-VALDEZ:  For us to say it's

11   one, two, three, four -- I don't know how they are

12   going to be -- seating chart.  Thank you.

13          THE COURT:  Let me see if I can check at

14   some point, because I've got the same concern,

15   because I'm probably going to -- for those of you who

16   have picked juries with me, you know how I do it and

17   I'm probably going to -- at some point here I'm going

18   to need to focus on that first group of 70.

19   Actually, it's going to be about a group of 85.  I

20   talked to Ms. Wild about this yesterday.  And we will

21   have 60 people in the courtroom.

22          So let's say, for example, out of our first

23   85, six don't show up for some reason.  We're not

24   going to start with 54.  You'll get a seating chart

25   of the first people.  They will go ahead -- there is

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   no reason to wait till Monday to randomly select.  I
 2   don't think that does me good or you good or anybody
 3   else.  So we'll go ahead and randomly do the computer
 4   generated random list.  You'll get it.  But remember
 5   what you're getting.  If those people don't show up,
 6   I'm going to have them skip the seats so it doesn't
 7   mess our seating charts up.
 8            MS. ARMIJO:  Did you say we're going to get
 9   the random list before Monday morning?
10            THE COURT:  Yes.  Don't you think you want
11   it?
12            MS. ARMIJO:  I do, absolutely.  Very nice.
13   We've never had that before.
14            THE COURT:  It just seems that it makes
15   sense.  I mean, because of the way, the unique way we
16   have gone about this, it seems to me it makes sense
17   to go ahead and give it to everybody and me.  And I
18   probably am going to review the first 85, if you want
19   to know what I'm doing.  And that way, if six don't
20   show up, you know, we'll have -- it will look like we
21   have 66 in here, because they'll be at the back,
22   because we're going to skip those seats.  But it will
23   allow y'all to start focusing on the first bunch
24   right off the bat.
25            MS. ARMIJO:  All right.  I just assumed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   that they came up with those in the morning, but if
 2   they could do --
 3            THE COURT:  Well, they do normally on our
 4   normal trials, but there we've got one wave coming
 5   in.
 6            MS. ARMIJO:  So we know.
 7            THE COURT:  We know.
 8            MS. ARMIJO:  That's great, okay.
 9            THE COURT:  Here, we're going to have one
10   wave coming in on Monday, one wave coming in on
11   Tuesday, and then another wave coming on Wednesday.
12   And if we get done, we'll call those people and tell
13   those people they don't have to come.
14            MS. ARMIJO:  Okay.
15            THE COURT:  I will double-check.  But I
16   think when I left Albuquerque that was what we were
17   going to do.  It makes sense to me.
18            MS. HARBOUR-VALDEZ:  It makes great sense.
19   I just want to make sure we're going to get them in
20   the actual order they're going to be entering this
21   courtroom.
22            THE COURT:  I will double-check.  But
23   that's what I think I'm getting, and that's what I
24   think you're getting.
25            MS. HARBOUR-VALDEZ:  That's very helpful.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Thank you, Your Honor.
 2           MR. COOPER:  And, Judge, that may be as
 3   early as perhaps tomorrow?
 4           THE COURT:  Let me check.  Let me ask
 5   this -- y'all may know this better than me -- do you
 6   think this is about it as far as the number of people
 7   y'all may be in agreement to?  I'm not trying to
 8   pressure y'all, but I think it may be contingent on
 9   giving y'all enough time.  And then --
10           MS. ARMIJO:  I think we had more that we
11   wanted to excuse, and the defense wasn't agreeing to.
12   So I think it's the defense.
13           THE COURT:  All right.  And, again, if
14   there is people that I overrule the Government's
15   challenge, but you still want to come back and say,
16   okay for cause, we agree with the Government.  I know
17   it got rushed there because we had to meet demands of
18   Jury Services; you know, don't feel like you have to
19   protect the judge on this.  I was sort of protecting
20   y'all in the sense that I took a hard line on
21   hardship.  Because I didn't know if the defendants
22   were not agreeing to those because they may have fit
23   some profile or something.
24           So if you decide, well, even though the
25   Court overruled the Government's objection, if you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   still want to come back and say, Fine, let them go.

2           MS. HARBOUR-VALDEZ:  Why don't I do this,

3   Your Honor:  If the Government will get back to me on

4   the four that were just sent, we'll file that one, so

5   that they can get those four excused.  Those are the

6   ones we received this morning.  We'll take a look at

7   the ones that you denied for the Government at lunch,

8   and see if there are any that we can agree to, and

9   I'll --

10           THE COURT:  And I'm not tipping my hand one

11  way or another.  I'm just telling you that I'm

12  leaving them in the pool for right now.  That's fine.

13  There were a couple of them that I thought the

14  Government made some compelling cases.  But I hated

15  to kick them out without giving you a chance to talk

16  to them, rehabilitate them, or whatever.

17           MS. ARMIJO:  Your Honor, may I just ask one

18  more question, since we're getting a list ahead of

19  time.  Let's say we have 18 here, and four don't show

20  up, so then, does that mean we're going to have four

21  empty seats, or are you going to take Juror No.

22  Number 61 and 62, and move them there.

23           THE COURT:  I wasn't planning on it.  I was

24  planning on just keeping empty seats.  I'm hoping

25  there is not going to be four in the box.  That would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   be bad.  But I still think it would be better than us
 2   trying to redo our seats.
 3           MS. ARMIJO:  Correct.
 4           THE COURT:  And I think it would be better
 5   just to list them at the back.  They're not going to
 6   know.  We just leave them empty, and you know,
 7   they've never been through a voir dire.  So I'm
 8   inclined that way we all are seated -- we walk in and
 9   we kind of know where everybody is.  And if we lose
10   people, there will just be empty seats there.  I just
11   draw an X through those.  And it helps me visually.
12           MS. ARMIJO:  While we're talking on the
13   jurors -- because I don't know if we're going to pick
14   up the pretrial conference or not -- but I suggested
15   this to defense counsel, based upon our conversation
16   with the last jury, they had those really small
17   notebooks, pads of paper.  And they indicated that
18   one of the problems was trying to go back with the
19   small ones.  And they actually made a suggestion,
20   that they have bigger notebooks.
21           THE COURT:  Okay.
22           MS. ARMIJO:  You know?  And I mean, I was
23   thinking like the notebooks at school that I get for
24   my kids.
25           THE COURT:  The spiral notebooks.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. ARMIJO:  The spirals with the cover so

2     that notes are covered.  And they can write their

3     name on top.

4          THE COURT:  Well, let me see if Ms. Bevel

5     during the lunch hour can see what we have, and

6     she'll show them to you.  And if y'all agree, we'll

7     try to get them ordered, if we don't have them.

8          MS. ARMIJO:  Okay.  Thank you.

9          MS. HARBOUR-VALDEZ:  Great, thank you.

10         THE COURT:  Let's see, we're going to you,

11    Mr. Castle, Mr. Cooper, are we about to take up your

12    motion to dismiss?

13         MR. CASTLE:  Yes, Your Honor.  We have a

14    bit of an issue that we need the Court to resolve.

15    When we were last here on the motion to dismiss -- I

16    think it was March 16 -- Agent Acee was testifying,

17    and Mr. Beck was questioning him.  And the Court

18    indicated that it needed to do some CJA business with

19    defense counsel.

20         THE COURT:  Right, at 5:10 that day.

21         MR. CASTLE:  Yeah.  And so it stopped at

22    that point.  Mr. Beck had indicated he might have

23    some more questions, wanted to finish a couple of

24    questions to finish an issue which was -- I can't

25    remember what that issue was.  But the defense



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    obviously hadn't redirected him at all.  And there

2    were a number of things that we needed to redirect

3    him on.  In anticipation of that, we made some

4    inquiries with the Government.  And I don't know

5    whether it was a misunderstanding or mistake, but

6    they told Agent Acee he didn't have to be here.  And

7    they communicated with the supervising FBI agent who

8    deals with Touhy letters and subpoenas that the

9    defense had said that Agent Acee didn't need to be

10   present anymore.  And I was the one who did the Touhy

11   letter and the subpoena.  And obviously, I didn't let

12   him go.

13          So we can't present him at this time.  I

14   would ask that he be -- come back tomorrow so we

15   could finish up with that.  The Government has not

16   assured me yet, at this point in time, that they'll

17   make him available.  But I don't think that the

18   Government has the authority to finish -- you know,

19   end a witness' attendance and testimony.  Your Honor

20   does.  And so we want him back and I want to get that

21   done.  I know that Mr. Beck was aware we were going

22   to raise this today, and I think he's going to

23   address that issue.

24          THE COURT:  All right.  Mr. Beck.

25          MR. BECK:  Yeah, Your Honor, Special Agent

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Acee was done.  His subpoena was for that week.  He
2    answered all the questions in the Touhy letter.  I
3    think my questions were wide, and went to Ms. Armijo
4    and whether he heard anything about a tactical
5    advantage.  So we don't think he's under subpoena.
6    We don't think he can testify to anything else under
7    Touhy.  So I guess, to the extent the Court is going
8    to entertain bringing Special Agent Acee back today
9    or tomorrow, I would ask what questions there are for
10   redirect that are included in Touhy, or within the
11   scope of my cross-examination.
12              THE COURT:  Do you have redirect that you
13   want to ask, Mr. Castle?
14              MR. CASTLE:  Yes, Your Honor.
15              THE COURT:  And it relates to your motion
16   to dismiss rather than something else the Government
17   was questioning him about?
18              MR. CASTLE:  Yes.
19              THE COURT:  And does it fall within the
20   scope of Mr. Beck's cross-examination?
21              MR. CASTLE:  Yes, Your Honor.  And if the
22   Court recalls, when Agent Acee was on the stand, he
23   all of a sudden was revealing the identities of
24   informants that had never been disclosed previously.
25   So he said that was his disclosure, the best of his
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    ability.  And Your Honor, I think, had made some

2    comments about whether that would resolve some of the

3    various claims that we made on our motion to dismiss.

4            And since that time, we've been able to go

5    back and look at what Agent Acee said.  And we need

6    to clarify, because I think some of the informants

7    that he said that he had the identities of were not

8    actually the people he said they were.  And we want

9    to question him about that so that the record is

10   clear, and the Court can rule on the motion to

11   dismiss properly.

12           THE COURT:  So what I recall him saying is

13   that he had been sitting over here at this table

14   during the hearings that we were having, when we had

15   the defendants scattered across the room, and while

16   he was going -- he was going back to the old

17   documents.  And he thought because of the internal

18   way they were written that he could identify who they

19   were.

20           MR. CASTLE:  Right.  When Corrections

21   couldn't, he thought that maybe he could.  And I know

22   he was trying to go through it quickly in the two

23   days while he was in court.  But the problem is it

24   may leave a false impression.

25           THE COURT:  That there is no problem.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


```
1              MR. CASTLE:  Yeah, that that witness
2    exists, and here he is, and so there is no issue that
3    you've lost a witness.
4              THE COURT:  Any other areas that you intend
5    to cover on redirect with Mr. Acee?
6              MR. CASTLE:  If I could have just a second.
7              THE COURT:  You may.  While you're doing
8    that, how much of a problem is it going to be for him
9    to be here tomorrow or later today, Mr. Beck?
10             MR. BECK:  He can't be here today.
11   Tomorrow, I mean, is -- ASAC, the supervisor of his
12   FBI he works closely with is being sworn in as US
13   Marshal.
14             THE COURT:  Yeah, that's at 1:00.
15             MR. BECK:  Right.  So I think he was really
16   intending to be there, and would like to be there.
17   And that's why the United States worked hard with
18   other counsel who had subpoenaed Special Agent Acee
19   to be here this week.
20             THE COURT:  Let me ask this:  Would he be
21   able to come down here, be here at 8:30 in the
22   morning, put him on and get back up there?
23             MR. BECK:  I can ask Special Agent Acee if
24   that's a possibility.  He's not in cellphone range or
25   contact now.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Because if we can get him out
 2    of here by 10:00, he should be able to roll in the
 3    courthouse.  Is it at 1:00; that was my memory?
 4              MR. BECK:  It's at 1:00.  I think maybe a
 5    little bit before 10:00.  He would probably have to
 6    be out of here to make it by 1:00.
 7              THE COURT:  How long do you think it would
 8    last?
 9              MR. CASTLE:  I think it's going to be 15,
10    20 minutes, Your Honor.  I don't know what their
11    recross might be, but --
12              THE COURT:  Is anybody else going to have
13    anything more?  Mr. Burke?
14              MR. BURKE:  Ten minutes, max.
15              THE COURT:  Ten minutes.  Okay.  So maybe
16    we could get him out about 9:00, 9:15, depending if
17    you're going to have anything more?
18              MR. BECK:  Your Honor, I think previously
19    we've done a couple of witnesses telephonically.
20    That may be an option for Special Agent Acee, either
21    this afternoon or tomorrow morning.
22              THE COURT:  Could you finish him up by
23    phone?
24              MR. CASTLE:  I do need to show him some
25    documents, but my guess is that -- well, can I talk
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1   to the Government about what documents he needs to

 2   have available.

 3              THE COURT:  Okay.  Could you do it by

 4   phone, Mr. Burke?

 5              MR. BURKE:  Yes, Your Honor.

 6              THE COURT:  Well --

 7              MR. BECK:  I think that would work out.  I

 8   think we would have less opposition.

 9              THE COURT:  If they could give you the

10   documents, you can get them to him.

11              MR. BECK:  Sure.

12              THE COURT:  All right.  So then with the

13   motion to dismiss, we need to wait on it until after

14   the testimony, Mr. Castle?

15              MR. CASTLE:  Well, we do have some other

16   witnesses, but if we could do them after the lunch

17   hour.  I didn't know that some of the other bad acts

18   motions would be resolved.

19              THE COURT:  All right.  So we'll pick up

20   your witnesses after lunch?

21              MR. CASTLE:  Sure.

22              THE COURT:  So I need to find out during

23   the lunch hour about the seating chart, and also make

24   sure that I'm answering accurately what we're doing

25   with y'all's agreed challenges.  Is there anything

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    else I need to do during the lunch hour?

2    Ms. Torraco?

3                MS. TORRACO:  Your Honor, would you

4    consider the notion that we be able to bring our own

5    chairs?  I'm really having a hard time.

6                THE COURT:  Let me talk to Ms. Wild about

7    that.  That's something I'm having to coordinate with

8    the Marshal Service, so let me do that.  Mr. Shattuck

9    has got a request in.  You're certainly welcome to

10   bring in cushions or I think there was some idea that

11   we might be supplying cushions.  Let me find that

12   out.  I don't know where Ms. Wild is during the lunch

13   hour.  But if I can resolve those, I will.  If not,

14   we'll waive to wait till a little bit later.

15               All right.  See y'all in an hour.

16               (The lunch recess was held.)

17               THE COURT:  All right.  Let's go on the

18   record.  I think each defendant has an attorney or

19   more.  Everybody is back in.  Let me go over a few

20   things that I learned over the lunch hour.  And I

21   hope I am not making a bigger mess of this than I was

22   making before the lunch hour.  What you will receive

23   this afternoon, or in the morning -- we'll try to do

24   it this afternoon, but maybe in the morning -- is you

25   will receive a sequenced list of the way the jurors

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   will come into the courtroom.  I've been informed

 2   that it was already randomized long ago.  And I think

 3   everybody agrees with this, because the numbers that

 4   we're using at the top, that's the numbers that I

 5   guess they've gotten.  So it's already randomized.

 6   So we don't have to throw them into the computer.

 7           What you have to get now is you have to get

 8   what will be the first batch.  That is what hasn't

 9   been produced yet.  So that first group that is going

10   to come into the courtroom, you will get a list of it

11   and it will be sequenced.

12           So, for example, I don't know who the first

13   85 are going to be.  And the reason I use 85, is

14   that's what Ms. Wild tells me I better look at that

15   many resumes or questionnaires this weekend.  And

16   you'll get that sequence.  But we will wait till

17   Monday to prepare the seating chart because we don't

18   know who is going to be here.  And so that way it

19   doesn't have the holes.

20           Now, she and I are going to have to both

21   check this out because we had holes in it for the

22   trial.  And so I don't know if for some reason we did

23   it different, or we're doing it different this time,

24   we did it different last time or whatever.  But

25   anyway, you will be able to create your own seating

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    chart.  And then, if you want to revise it on Monday

2    morning, you'll get it.

3            So that's different than what I was telling

4    you in advance.  But she also said that, you know,

5    probably if you wanted to get the seating chart

6    today, you could, and then it would have gaps.  So

7    she's going to check on that.  But at the present

8    time she's telling me that the seating chart wouldn't

9    be generated until Monday morning to avoid the gaps.

10   But you would have the sequence today or tomorrow.

11           On chairs, Ms. Wild is currently in control

12   of chairs.  Chairs may be moved to Carol, Ms. Bevel.

13   So we'll see.  But right now, if you have a concern

14   about chairs, deal with Ms. Wild, although it may be

15   moving to Ms. Bevel.  We'll let you know.

16           On notepads, it's Ms. Bevel.  So she's

17   working with Lorenzo in the office, and she'll be

18   showing you different notepads and we see if we can

19   agree on them.

20           I think that's all I was supposed to

21   report.

22           MS. HARBOUR-VALDEZ:  Your Honor, will we

23   get a similar list for the group that's coming on

24   Tuesday and possibly Wednesday?

25           THE COURT:  I would assume so.  I haven't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    thought about that far ahead, so we'll probably have

2    to ask that question.  But I didn't ask that question

3    because I was focused on this first group.  But I'll

4    try to find that out.

5          What I have done is -- now, going back to

6    Mr. Blackburn's issue -- I've told Ms. Bevel to start

7    moving Mr. James Garcia this way.  And I've also told

8    her to get in touch with Jed Glazener, who I think is

9    his attorney from Albuquerque, to move him this way

10   this afternoon or tomorrow.

11         It seems to me that Mr. Blackburn or the

12   Government, somebody ought to talk to Mr. Glazener.

13   Is he going to waive this conflict?  It would seem to

14   me -- now, I don't know a great deal about this, but

15   it would seem to me that if you represented him in

16   what everybody is telling me is an SNM -- people

17   think is an SNM murder or hit, we have two options.

18   One is I declare it substantially related, which then

19   is going to kick in the disqualification rules, and

20   then require a waiver from Mr. Garcia, your current

21   client, and from Mr. Garcia, your former client.  And

22   I would need to get written waivers and oral waivers,

23   and see if everybody will waive any sort of conflict

24   of a substantial relationship.

25         Or -- and again, I'm not quite as versed in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    this conflict as, you know, I'd like to be, but if

2    everyone were agreeable to not cross-examining him or

3    direct examining him about that prior murder, then it

4    wouldn't seem to me that it would be a substantially

5    related -- it's just another murder that he did and

6    it's not related.

7            But assuming that we don't have that sort

8    of agreement, that it would seem to me we're going to

9    kick in to the disqualification rules, and it's going

10   to require a knowing and voluntary waiver, it would

11   seem that if we cannot secure either an agreement

12   that nobody is going to go into the prior murder, or

13   we can't get an agreement that it's waived, it would

14   seem to me that I'm going to have to be in a position

15   to have to disqualify you.  And if I disqualify you,

16   I don't think I can say that you're prepared to go to

17   trial.  And so I will have to probably sever you out

18   and try you at some other point.

19           So think about that.  But I'm not seeing

20   much other options than what I've laid out.  There

21   may be things I don't know.  But, Mr. Beck?

22           MR. BECK:  Yesterday my conversation with

23   Mr. Garcia and Mr. Glazener was brief, because of the

24   time pressures that we were on.  While I was there --

25   or I think maybe the night before, I was provided the

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                         e-mail: info@litsupport.com

```
 1    pleadings for Mr. Blackburn.  So I raised the issue
 2    with Mr. Garcia and Mr. Glazener.  I told them that
 3    they needed to talk about it.
 4              THE COURT:  When you said "they," you meant
 5    Mr. Blackburn and --
 6              MR. BECK:  Mr. Glazener and Mr. James
 7    Garcia.  I told them that they needed to talk about
 8    that issue.  My initial impression was that Mr. James
 9    Garcia was not inclined to waive the conflict.
10              But seeing this issue come up, as soon as
11    we got done yesterday afternoon, I contacted the U.S.
12    Marshals, and we filed a writ to get Mr. James Garcia
13    down this way, because I had a sense that the Court
14    would want to proceed that way.  And so it's my
15    understanding they are going to have him here
16    tomorrow afternoon.  I spoke to Mr. Glazener and told
17    him the same; that he should plan to be here tomorrow
18    afternoon with his client.  So I think we are getting
19    that.
20              THE COURT:  Well, if he's not going to
21    consent, is it a futile gesture bringing him?
22              MR. BECK:  It very well may be.  As I said,
23    I wasn't sure.  So out of an abundance of caution, I
24    just wanted that to be an option.
25              THE COURT:  Well, what about the first
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    option that it's off the table; everybody going into

2    the prior murder as SNM-related.  I would think that,

3    A, I think Ms. Armijo mentioned this as a

4    possibility; I guess from the Government's

5    standpoint, are y'all willing not to go into it as a

6    prior murder?

7              MR. BECK:  Yes.  And I think there is a

8    misunderstanding there.  I don't think it is an

9    SNM-related murder, in the sense that it was called

10   by or participated in by or it was an SNM-on-SNM hit,

11   anything like that.  It was a street gang murder.  He

12   was, I believe East Side San Jose, and it was a

13   Martineztown gang member.  So it was out on the

14   streets.

15             And I think that is an option.  I mean, I

16   think that it would be substantially related to the

17   extent that the defendants would want to go into it

18   as impeachment evidence.  Then it would become

19   substantially related, if there is an agreement to

20   keep out the murder conviction because it is remote

21   in time, or for whatever reason.  I agree with the

22   Court, that I think we can just do the Chinese wall,

23   and perhaps Mr. Davidson, or if Mr. Arturo Garcia is

24   appointed another attorney, that attorney

25   cross-examine Mr. James Garcia.  Then I think we may

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    be able to work with it that way.

 2         I think that under the rules, what I've

 3    looked at -- again, it's not in front of me, I'm just

 4    going to have memory and a little bit of looking into

 5    this issue -- I believe that Mr. James Garcia was

 6    released from prison on that murder in 2009.  So his

 7    release date is still within, I think, the last 10

 8    years for that murder.

 9         THE COURT:  Well, I guess there wouldn't be

10    any problem with the defendants impeaching him with

11    the murder to show that he is less credible than

12    other witnesses, without us -- and then having an

13    agreement that we won't get into the details of the

14    murder.  So at least the impeachment side would still

15    be available to either the Government or the

16    defendant, Mr. Garcia.

17         MR. BECK:  I haven't looked closely enough

18    at it.  I don't know if that's -- I don't know if

19    that's true.

20         I think there is still the concern that,

21    even if it is just the fact of the impeachment, I

22    think Mr. Blackburn's previous representation, the

23    duty to former clients, would still implicate a

24    direct conflict of interest, as opposed to a possible

25    conflict of interest, even if it's just for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    impeachment.  I think the rules are strong enough to
2    come into play with that.
3              THE COURT:  What you're saying is Mr.
4    Blackburn couldn't agree with the other defendants
5    not to go into the --
6              MR. BECK:  I think the agreement would have
7    to be that it's just -- it's not -- you just don't go
8    into it at all; you don't bring up the murder.  It's
9    just off the table for Mr. Blackburn.
10             THE COURT:  I guess another thing that I
11   should have mentioned as I was laying out the steps,
12   is the Government not calling Mr. Garcia.  Is that an
13   option, rather than granting a continuance and
14   severing Mr. Arturo Garcia from the trial?
15             MR. BECK:  That is an option.  But the
16   United States intends to call James Garcia.
17             THE COURT:  And so you would prefer that a
18   Court sever him and we have a separate trial in which
19   you call James Garcia, rather than not calling a
20   mistrial?
21             MR. BECK:  Yes.
22             THE COURT:  Okay.  How are the
23   defendants -- I just haven't thought this through, so
24   I may be proposing something or throwing something
25   out that's just not doable.  But do y'all need to --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I guess I tend to disagree with Mr. Beck that you

2    couldn't still impeach him with the conviction.  But

3    does anybody need to get in -- I tend to agree, if

4    this is what Mr. Beck was saying, that I've still got

5    to deal with Mr. Blackburn's conflict issue.  But at

6    least if everybody was agreeing we're not going to

7    get into the -- to what kind of murder it was, that

8    it was SNM-related, if that's not of anybody's

9    interests here, it would seem to me that it does

10   color the substantially related.

11            Did you have something you wanted to say,

12   Mr. Blackburn, or do you still want me to poll your

13   co-defendants here?

14            MR. BLACKBURN:  No.

15            THE COURT:  Anybody have any thoughts on

16   that?  I mean, does anybody need to go further than

17   impeaching him with the conviction?  Do you need to

18   go further, Mr. Benjamin?

19            MR. BENJAMIN:  I guess I'm not prepared to

20   say that I'm not.  Does that make sense, Your Honor?

21            THE COURT:  Yeah.  Well, here's the thing,

22   I think you're allowed to impeach him, and I think

23   you probably -- with the conviction -- and he was

24   convicted?  Mr. Blackburn, there is a conviction

25   there?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BLACKBURN:  Oh, yes.  Yes.
 2              THE COURT:  I didn't mean to rub it in.  We
 3   were talking in the vestibule, because it was just an
 4   allegation of a murder, like the Ortega one, or
 5   something like that, then I'm not sure you would be
 6   able to get it in; it would be more of a 404(b), if
 7   there is a conviction.  But I guess I'm not sure why
 8   the defendants would want to have the jury know that
 9   another murder was racketeering activity.
10              I guess -- then I began to ask what's the
11   purpose?  If the purpose is strategic to try to get
12   Mr. Blackburn out or sever or something like that,
13   then I guess I need to probe you a little more.  But
14   if there is some legitimate reason, and it's
15   admissible, then I'd certainly entertain it.  I don't
16   want to mess people's strategy up.
17              MR. BLACKBURN:  The only thing I was going
18   to say, Your Honor, is I did represent him in 1996.
19   And it wasn't an SNM murder.  It was a local street
20   murder there in Albuquerque.  And as a result, then,
21   he went to prison, and then became --
22              THE COURT:  Then allegedly became a gang
23   member?
24              MR. BLACKBURN:  Then allegedly became an
25   SNM member.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          When we were here two weeks ago, or

2    whenever it was, three weeks ago, during Mr. Beck's

3    cross-examination of Mr. Garcia, he asked him about

4    his memory.  And eventually it came out that -- Mr.

5    Beck said, Well, if you heard the recordings, would

6    you take a different posture, I guess, is what,

7    basically, he was talking about.  We indicated that

8    we had never heard any of the recordings; that there

9    wasn't -- I think Mr. Beck said, Well, I just called

10   Agent Roundy last night and found out that there was

11   these tapes.  And the Government provided those

12   tapes.  And the tapes were based upon a 2013 arrest

13   as to when he was arrested on a case that then he

14   pleads guilty to and goes to federal prison on.  It's

15   about eight hours.  And it starts in Albuquerque when

16   they arrest him.  And they sort of debrief him, and

17   then they take him to his wife's house.  And then

18   they drive him all the way down to here.  It's about

19   eight hours' worth of conversations anyway.

20          So I don't think that he's going to waive

21   the conflict, because there is a discussion about my

22   representation of him in 1996, because they're asking

23   him why he was in custody and stuff.  And he tells

24   them, and he goes through some things as to why he --

25   the issue was that he got convicted of second degree

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                              1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                    e-mail: info@litsupport.com

```
 1   murder, which was nine years.  But he had two prior
 2   convictions, so he got two habituals, so he got 24
 3   years.  So he was trying to explain to the agent as
 4   to why he got 24 years, even though he should have
 5   gotten nine.  The colloquy wasn't very pleasant
 6   listening to him talking to the agent about my
 7   representation.  So it's hard for me to imagine --
 8            THE COURT:  That he would waive it?
 9            MR. BLACKBURN:  -- that he would waive.  So
10   I just can't imagine that that's going to happen.
11            THE COURT:  Well --
12            MR. BLACKBURN:  But at the same time, I
13   don't know -- I think we're getting the notes this
14   afternoon as to basically --
15            THE COURT:  So you're saying --
16            MR. BLACKBURN:  -- what he said.
17            THE COURT:  You're saying it's not --
18   you're saying that you're not sure that this is
19   substantially related because you don't have any
20   reason to think it's an SNM gang hit, or --
21            MR. BLACKBURN:  No.  There is nothing that
22   was SNM about it.
23            THE COURT:  Is that your position as well,
24   Mr. Beck?
25            MR. BLACKBURN:  It's a street gang that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    feeds into SNM, supposedly.

2              MR. BECK:  Yes, it was a street gang, and

3    he was not SNM.  It is a street gang that feeds into

4    the SNM.  But we don't take the position that this

5    was an SNM-related murder.

6              THE COURT:  Okay.  And have you had a

7    chance to talk to Mr. Glazener?

8              MR. BLACKBURN:  No, Your Honor.  I know the

9    Court was looking for attorneys to represent him.

10   And I did not realize -- I know that some of the

11   individuals that your staff was thinking about were

12   not the individuals that showed up to represent him

13   yesterday.  So I did not know who he was until Ms.

14   Salazar or somebody told me who he was.

15             But I don't know, there may be other issues

16   concerning his cooperation and what he's going to say

17   about all of us sitting in the courtroom.

18             THE COURT:  Okay.

19             MR. BLACKBURN:  And that's an issue that I

20   don't think that we know about at this point in time,

21   until we see some of the -- until we see the

22   documentation as to what's going to happen on that.

23             At the same time, the issue -- I think it's

24   important to say this -- the same time the issue of

25   the walled off attorney, we're going to have to get

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492
                                                          e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    another walled off attorney, because Mr. Davidson and
 2    I --
 3              THE COURT:  I think I understand that.
 4              MR. BLACKBURN:  So it would have to be
 5    completely different.  Okay?
 6              THE COURT:  All right.  We'll think about
 7    whether you want to take me up on my offer of
 8    starting to try to find you somebody else, and
 9    certainly I'll take your input on it.  And, you know,
10    I'm not restricting any ideas --
11              MR. BLACKBURN:  I understand.
12              THE COURT:  -- from anywhere.  So I'd have
13    to go to Ms. Waters and talk about it.  But --
14              MR. BLACKBURN:  No, I understand.  And we
15    were talking about that.  Again, the unfortunate
16    issues that happen is that Mr. Davidson needed to go
17    back this afternoon.  So that becomes an issue, so I
18    don't know how to handle that.
19              THE COURT:  I understand.  Well, it sounds
20    like -- and this is probably what you're going to
21    tell me, Mr. Castle, but I'm not trying to cut you
22    off.  You can't say yet until you get this
23    information from the Government, and see what he's
24    going to say.  Because that's what Mr. Benjamin is
25    saying.  It may be that if nobody takes the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   position -- and I feel like I can honestly write it

 2   down as well, that the murder is not substantially

 3   related, then it may be that I don't have to

 4   disqualify Mr. Blackburn.  But then, if somebody

 5   looks at this material the Government is about to

 6   give you, and somebody says they don't think I can

 7   take that position, or the defendants, for whatever

 8   reason, don't want him to take that position, I may

 9   then have to look at it and make an independent

10   determination.  And then I think that's sketched out

11   what the consequences are.

12            Mr. Castle.

13            MR. CASTLE:  I was just going to add

14   something else.

15            I haven't fully looked at what Mr. Garcia's

16   prior conviction was all about, the facts -- the

17   underlying facts of it, but I could easily imagine

18   that those underlying facts could rise to the level

19   that we will be arguing or raising factual

20   circumstances in that case as a pertinent character

21   trait of Mr. Garcia.

22            I've noticed that a lot of the people that

23   the Government are calling have prior convictions

24   which involve them lying to the police in order to

25   try to get out of trouble.  And obviously, that would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     be a pertinent character trait in cross-examination

2     of the witness, because that's what we're alleging as

3     happening here, and it would be central to our

4     defense.  So even if we look at these notes, I doubt

5     these notes will have that kind of information in

6     them.  So I don't think we're going to get an answer.

7               And we can try to put our nose to the

8     grindstone and look into all the facts and priors.

9     But just letting the Court know that.

10              THE COURT:  I guess I'm just thinking out

11    loud, understanding you have to do that, and I don't

12    think I'm saying anything that would preclude you

13    from doing that.  But I'm also not -- it seems to me

14    that anytime you have a prior conviction, that raises

15    those questions and defense lawyers may want to go

16    into it.  But it still may not cause Mr. Blackburn's

17    prior representation to kick into being substantially

18    related to the crimes that are alleged here.

19              Do you see a flaw in that analysis?

20              MR. CASTLE:  I don't, Your Honor.  And I'm

21    not arguing the conflict motion, what is considered

22    substantially related, I think is different than what

23    is admissible.  I think what's admissible under 401

24    is a lot lower standard than what would be

25    substantial under the conflict standard.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  I tend to agree.
 2              All right.  Well, we'll leave that there.
 3    We got it set in motion, so we'll go from there.
 4              I see Mr. Sapien came in the back.  Is he
 5    related to one of the witnesses that y'all are
 6    calling here on this motion to dismiss, Mr. Castle?
 7              MR. CASTLE:  No, he was relevant to our
 8    motion, our targeted motion, concerning statements
 9    that we had taken up last time.  Mr. Sapien said he
10    wasn't available last motions hearing, so he's
11    available here today.
12              THE COURT:  Okay.
13              MR. CASTLE:  And Mr. Quintana, who is his
14    client, is in custody down -- somewhere in the
15    building.
16              THE COURT:  And this relates to -- give me
17    the number it relates to.
18              MR. CASTLE:  Docket No. 1909; paragraph 16
19    of Document 1909.
20              MR. BECK:  And, Your Honor, if we're
21    thinking about getting back into these 104-type
22    hearings again this week, the United States filed a
23    response to a supplement, Billy Garcia's supplement
24    to that targeted response, last night, which is
25    Document 2051, and the United States would ask the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Court to look over that and give it a thought before

2    the Court decides to continue with these 104-type

3    hearings if the Court is inclined to do so today.

4           THE COURT:  Well, I read your motion.  And

5    I know you're frustrated with these, and it came out

6    in your motion that you're very frustrated with the

7    Court about it.  But I think, if you think about it,

8    we have 104-type hearings all the time.  For example,

9    we had them in the middle of the trial last time,

10    where we took evidence outside the jury.  The James

11    hearing is kind of a big 104.  You mentioned

12    exceptions, suppression hearings.

13           I'm sensitive to your criticism of the

14    Court for not allowing these things to become

15    discovery motions, but we do have a little group of

16    four to six statements -- and it seems to be

17    growing -- of statements that you're trying to get

18    in, and I'm trying to script out at trial.  It seems

19    to me that -- I mean, I guess we can just start the

20    trial, and then break the trial to then have the

21    hearings, if I can't do the testimony in front of the

22    jury.  But I guess I'm -- it seems to me that while

23    you keep using the word "unprecedented, no support,"

24    things like that, but they have them all the time.

25    So it's a timing issue.  And it may be that we're

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                          1-800-669-9492
PROFESSIONAL COURT                       e-mail: info@litsupport.com
REPORTING SERVICE

BEAN
&ASSOCIATES, Inc.

```
 1    doing a lot of things to try to script out the trial.
 2              MR. BECK:  I think the distinction in this
 3    case is that the 104-type hearing that we had in the
 4    middle of the last trial was because we had the
 5    contingent relevancy issue.  And Mr. Archuleta's
 6    testimony, to get the Court to that position of
 7    whether it was admissible is inadmissible unless that
 8    contingency is met.  So that testimony from Mr.
 9    Archuleta should have properly been excluded from the
10    jury.
11              The testimony that we've seen in these
12    104-type hearings is perfectly admissible in its own
13    right.  The only question is whether that further
14    question:  When the declarant told you this, did the
15    declarant tell you that X person ordered it, or X
16    person carried it out?  That single question is all
17    that would be inadmissible or should be heard outside
18    of the jury.  So that's why I'm saying it's
19    unprecedented that all the time, in trials and
20    hearings, whatever it may be, but in trials, when we
21    come to some hearsay exception or hearsay exclusion,
22    the United States lays the foundation, and then asks
23    the question.  And if the foundation isn't properly
24    laid, it's inadmissible.  If it is, it's admissible.
25    And so what we've seen in these hearings is an
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    exact -- it's the exact same thing that would come
2    out at trial, except maybe we start with the
3    question:  Did your client implicate Billy Garcia, or
4    did you implicate -- did whoever told you this
5    implicate Billy Garcia?
6              And what the United States' position is is
7    that we have much better things to do with our time
8    than to spend our time finding out the answer to that
9    one question.  And we could just ask the question and
10   they object, or we could just agree to approach
11   before we ask that one question during trial.
12             THE COURT:  But then don't we have to take
13   a break in the trial to get that answer?
14             MR. BECK:  Sure.  But I mean, we did that.
15   And it takes one minute; five minutes at the most.  I
16   mean, the problem here is that it's been complete
17   gamesmanship.  And I am frustrated with what
18   happened, and for good reason.
19             I'm also frustrated, as I think Mr.
20   Quintana's lawyer was last week, that they have
21   deliberately attempted to get around the lawyers to
22   ask these questions.  I think that's completely
23   improper.
24             THE COURT:  I'm not tracking on that.  What
25   are you saying?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BECK:  I'm saying two weeks ago, three
 2   weeks ago, when Mr. Sapien came in here and tried to
 3   quash the subpoena, he felt like he had been
 4   deliberately avoided, instead of providing notice to
 5   him that Mr. Quintana was coming.  We heard the same
 6   thing from Mr. Fallick for Mr. Lucero; we heard the
 7   same thing from Mr. Hosford for Mr. Clark.  They just
 8   weren't provided notice that their clients were being
 9   subpoenaed to come here and testify.
10            THE COURT:  That's a separate issue that I
11   think Mr. Sapien can argue.  But I guess if we're
12   trying to have a smooth trial and trying to help the
13   Court determine what evidence is coming in, rather
14   than waiting till somewhere in week three that we ask
15   the question, and then I have to make a fairly sudden
16   decision based upon which way that goes, it seems to
17   me that to smooth it out.  It's a little bit like the
18   James hearing; it helps us to figure out whether this
19   evidence is coming in by asking them a question
20   outside the presence of the jury today, rather than
21   waiting till the middle of the trial.
22            MR. BECK:  Well -- and I don't think we
23   have that problem.  I mean, I think all the facts
24   will be laid out.  They've already been laid out in
25   the motions, they're in the reports.  They will be
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                             1-800-669-9492
                                                   e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   laid out at trial.  And it's just that one single
 2   factor:  Does the evidence come in or does it not?
 3   And I think it would be more expedient for everyone
 4   to do it at that point, compared to doing it now when
 5   we have other motions that need to be argued.
 6            THE COURT:  But would you agree with me
 7   it's going to require we excuse the jury, have a 104
 8   hearing at that point, and then bring the jury back?
 9            MR. BECK:  I don't.  I don't agree with
10   you.  I disagree with you.  I think what will happen,
11   for instance, if we take Mr. Garcia -- and I'm just
12   familiar with this -- but what would have been
13   Mr. Garcia's truthful testimony --
14            THE COURT:  Well, it's so hard for us to
15   use, I think -- and I could be wrong on this -- but
16   it seems to me it's so hard to use Mr. Garcia as an
17   example of anything.  But --
18            MR. BECK:  I can use a different example.
19   His is fresh in my mind because since we indicted
20   him, that's all I've been working on the last two
21   weeks, instead of working on this trial.
22            But if we use Mr. Benjamin Clark as an
23   example, if Mr. Benjamin Clark is going to come in
24   here, and he's going to say:  Somebody told me -- I
25   participated in a murder, and, you know, Anthony Baca
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    told me I had to do it, okay?  Well, certainly that

2    declarant, a defendant in here, that's an admission

3    against interests.  We can get into where he was

4    living; we can get into that he was an SNM member,

5    and who he was locked up with.  All those things

6    could go in front of a jury.  We can get out that the

7    defendant admitted to him his crime.  The only thing

8    is that last question whether the Anthony Pup Baca

9    ordered him to do it.  And we know that it happened,

10   that he did, because the United States has prepared

11   Mr. Clark for trial, because everyone has the 302

12   reports where he says, "Anthony Ray Baca ordered me

13   to do it."  The only question then is whether that is

14   admissible as a statement against penal interests by

15   the declarant.

16          So we can ask the question:  Who ordered

17   that?  The defendant can object.  We can approach the

18   bench.  We can say it's a statement against penal

19   interests, here's the corroborating circumstances

20   that allow it to come into the trial here.  So

21   everything else comes out.  The only thing is just

22   for the Court to make a call up or down, whether it

23   comes in as a statement against penal interests.

24          And so I think the proper way -- and I

25   think what would be expedient for everyone is to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   allow that to take place.  I think we've already

2   briefed up the statements that everyone is concerned

3   about.  So that issue is in front of the Court.  The

4   defendants are alerted to it.  The prosecution is

5   alerted to it.  It's teed up, it's ready to go.  We

6   can decide that at trial, because everything else is

7   admissible, except for perhaps that one other

8   implication from the statement.

9          And, again, we still have the motion to --

10  Billy Garcia, Edward Troup's motion to dismiss we

11  have to take evidence on in the next two days.  We

12  have to argue those motions.  I assume we're probably

13  going to argue James' motion targeted response to the

14  statements against penal interests.

15         There are a number of ways that we can

16  better use our time than just getting out the same

17  testimony we're going to get out in court.

18         THE COURT:  All right.  Thank you, Mr.

19  Beck.  Do you have something you want to say on this,

20  Mr. Castle?

21         MR. CASTLE:  Yes, Your Honor.  There is a

22  lot more to it than that.  And I think the Court had

23  the hearings in Trial 1 before the jury ever sat

24  down.  It dealt with whether a particular statement

25  was truly against the inmate's interests.  So there

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is a lot more questions that go into that.
 2              When we had those hearings the week of
 3    March 12, and there were witnesses, such as Ben
 4    Clark, who was very quick -- wasn't a discovery
 5    hearing; it was a very quick hearing.  And what we
 6    were doing was exploring whether any statement that
 7    other defendants made implicating Mr. Billy Garcia
 8    was truly against interest.  And what Mr. Clark told
 9    us was none of them implicated Mr. Garcia.  Questions
10    were terminated, it was done.
11              That statement won't come in is my guess
12    because the Government could not establish it.  But
13    other witnesses might take more, it might take more
14    questions, such as:  Tell me about this.  Was the
15    person bragging?  Was the person sitting there
16    telling war stories to try to gain, you know, some
17    higher standing in the community?  Is this a person
18    that you know that was bragging about things that
19    they obviously didn't do?  Things of that nature.
20    And we have to explore all of that in the context of
21    trial.
22              Now, I do take disagreement with the
23    Government saying we're playing a game.  What
24    happened here was on March 7 -- the Government waited
25    until March 7 to tell us what statements they were
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  going to bring in against our clients.  Two days

2  later, March 9, I filed a targeted motion, 1909.  On

3  that day we subpoenaed these witnesses, and informed

4  their lawyers, including Mr. Sapien, who is here in

5  this courtroom.  Mr. Cooper tried calling him that

6  very single day.

7          The newest motions -- we got discovery last

8  Friday talking about those statements.  That same day

9  we made efforts to subpoena the witness, or writ

10  them.  We contacted their lawyers, if they had them,

11  and spent the weekend trying to call them.  And the

12  Government knows that because those lawyers called

13  them.

14          So the fact that we turned around within

15  two days and contacted lawyers and subpoenaed

16  witnesses so we could be prepared for a hearing that

17  we should have been given notice of long before,

18  yeah, there is games being played, but it's not on

19  the defense's part.

20          But with that aside, I think the Court

21  probably wants to deal with the substance of the

22  issue.  And the substance is that, you know, we're

23  going to risk mistrials.  If you do exactly what the

24  Government just suggested, and allow them to say,

25  Well, who -- you know, who told him that information?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Well, you know, it came from Billy Garcia.

2     And then on further questioning, it turned out it

3     really didn't come from Billy Garcia, it came from

4     somebody else, and somebody else may have said that

5     they thought that Billy Garcia did it, and, you know,

6     several layers of hearsay, and they can't establish

7     personal knowledge, or all the other aspects that

8     we're going to have to look at in every layer of

9     hearsay.  And I think that really is going to happen.

10          And I'll give the Court a really great

11    example of it.  And I know the Court doesn't like

12    James Garcia as an example.  But I'm going to take

13    the Government's version.  The Government's version

14    is at a barbecue Mr. Troup said Billy Garcia ordered

15    the hit.  But their other witness, Mr. Leonard Lujan,

16    says that he didn't tell Troup who ordered the hit.

17    So how would Troup know?  So there is an issue as to

18    whether there is even personal knowledge.

19          I would note that the eight-hour interview

20    that we all had to listen to, Mr. Garcia was

21    questioned all about the barbecue; never mentioned

22    anything about Billy Garcia in the entire eight hours

23    that we had to listen to.

24          So going back to that, that's why we have

25    these hearings, so that we can establish that and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    figure out whether it's admissible before we put

 2    damaging evidence in front of jury.  We're already

 3    going to have a lot of jury instructions telling them

 4    to disregard certain evidence against certain people.

 5    But that's usually done before we hear the evidence,

 6    not after we hear the evidence.

 7          What the Government is inviting is:  Let's

 8    try -- you know, take the risk damage, then try to

 9    fix the damage afterwards through a limiting

10    instruction.  And that is just not going to work.

11          And like I say, I know the Court probably

12    saw it.  I didn't ask a lot of questions.  James

13    Garcia, I think I asked two pages.  Other ones I

14    asked less.  So I'd ask the Court to continue in that

15    process, so we don't have to take these breaks.  And

16    just to note, to give an idea how long the break is,

17    this is how long we've been arguing this issue, we're

18    going to be having kind of lengthy arguments probably

19    with regards to those individual statements.

20          THE COURT:  Well, I'm inclined to go ahead

21    and allow it.  I think that there are some unique

22    aspects to the trial.  And there is a handful of

23    these statements that I think need to be dealt with,

24    and the Court needs to have an opportunity to think

25    about them because they're fairly important

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    evidentiary issues.
 2              So is your first witness Mr. Sapien's
 3    client?
 4              MR. CASTLE:  It is, Your Honor.
 5              THE COURT:  And I believe, Ms. Bevel, I
 6    think you may need to tell them that we're ready.
 7              THE CLERK:  Yes.
 8              THE COURT:  Mr. Sapien, do you want to come
 9    up and sit next to your client up here?
10              MR. SAPIEN:  Sure, Your Honor.
11              THE COURT:  Good afternoon to you, Mr.
12    Sapien.
13              MR. SAPIEN:  Good afternoon, Your Honor.
14              THE COURT:  We're going to get Mr. Sapien
15    up here next to you, so he'll be next to you.  Before
16    you're seated, if you'll raise your right hand, Ms.
17    Bevel will swear you in.
18                       FRED QUINTANA,
19         after having been first duly sworn under oath,
20         was questioned and testified as follows:
21                     DIRECT EXAMINATION
22              THE COURT:  All right.  Why don't you state
23    your name for the record.
24              THE WITNESS:  Fred Quintana.
25              THE COURT:  All right.  Mr. Quintana.  Mr.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    Castle.
 2    BY MR. CASTLE:
 3         Q.    Mr. Quintana, I'm just going to ask you a
 4    few just preliminary questions.   In 2001, were you
 5    residing in the Southern New Mexico Correctional
 6    Facility?
 7         A.    Yes.
 8         Q.    And did you become aware at some point in
 9    time that two inmates had been murdered?
10         A.    I was released at the time that happened.
11         Q.    So you weren't present at the time that
12    happened?
13         A.    No.
14         Q.    Sometime after that event did you ever talk
15    to any of the defendants that are in this courtroom
16    about their involvement in those murders?
17         A.    Yes.
18         Q.    And who did you talk to?
19         A.    To Edward Troup and Chris Chavez.
20         Q.    Let's start with Mr. Troup.   Where did that
21    happen?
22         A.    On the streets.
23         Q.    Of?
24         A.    In Albuquerque, New Mexico.
25         Q.    And do you recall generally when?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.    No.  It was not too far back now from

2  before we got arrested on this case.

3    Q.    Okay.  And what were the circumstances of

4  you and he talking about this event?

5    A.    I ran into him at a store.

6    Q.    And was he just talking to you in a store

7  about a murder?

8    A.    No.  I ran into him, and there was a

9  discussion about his brother had gotten in trouble in

10  the federal prison, and he had asked me what the

11  situation was.  And I said that he had got in a

12  switch with Mr. Candelaria's brother.  And he stated

13  to me, "Well, I helped take out Fred Dawg, and I gave

14  squina with Pancho.  So isn't that enough to get my

15  brother out of it?"

16    Q.    So is that the whole of it; the beginning

17  and the end of that discussion?

18    A.    Yes.  I told him I would talk to Richie and

19  see what we could do.

20    Q.    So he didn't implicate anybody else in that

21  murder?

22    A.    No.

23    Q.    Let's go to Christopher Chavez.  What were

24  the circumstances behind that?

25    A.    I ran into him and Willie Amador at a gas

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                   Albuquerque, NM 87102
(505) 989-4949                                                                       (505) 843-9494
FAX (505) 843-9492                                                                   FAX (505) 843-9492
                                                                                     1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    station.  I was putting gas in my motorcycle.  And I
 2    asked Willie:  "What are you doing with Critter?"
 3              And he stated, "He's down.  I was with him
 4    when he took care of that trip with Looney."
 5              And I said, "Really?
 6              And Chris just said, "That's how I earned
 7    my bones."
 8         Q.   Okay.  I'm sorry, let me break that down a
 9    little bit.  So was it Willie that was talking to you
10    or Christopher Chavez?
11         A.   Willie.
12         Q.   Did Christopher Chavez say anything about
13    his involvement?
14         A.   All he said is, "That's how I earned my
15    bones."
16         Q.   So Willie told you exactly what?  What did
17    Willie say to you?  I'm sorry, some of the terms I
18    didn't understand.
19         A.   Willie stated to me that he was hanging out
20    with him, because he down because he helped take out
21    Looney.
22         Q.   So did Willie say anything about anybody
23    else other than Mr. Chavez being involved in that
24    murder?
25         A.   No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And so was Mr. Amador kind of pumping up
 2   Mr. Chavez; in other words, like saying, you know,
 3   giving him credibility?
 4        A.   I guess you could say so, yes.
 5             MR. CASTLE:  I don't have any other
 6   questions.
 7             THE COURT:  Thank you, Mr. Castle.
 8             Mr. Burke.
 9                      EXAMINATION
10   BY MR. BURKE:
11        Q.   Mr. Quintana, let me try to clarify.  You
12   had one conversation with Edward Troup after you got
13   out of the Southern?
14        A.   Yes.
15        Q.   And what store were you in?
16        A.   I don't recall.
17        Q.   And what year was it?
18        A.   It was 2015.
19        Q.   2015?
20        A.   Or '14.  He had just got out, finished
21   doing a parole violation.
22        Q.   So I'm sorry that I have to pursue this a
23   little bit.  You went back -- how long were you out
24   of prison?
25        A.   I was out since 2008.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   From 2008, until whenever you went back in
2  on a parole violation?
3      A.   No, I got picked up on this case in 2015.
4      Q.   Okay.  So was the conversation you had
5  before or after you got picked up on this case?
6      A.   Before.
7      Q.   Okay.  And do you believe it was 2014 then?
8      A.   I can't be exactly positive with the date.
9      Q.   It could be 2010?
10     A.   No.
11     Q.   Or '11?
12     A.   No.
13     Q.   '12?
14     A.   No.
15     Q.   '13?
16     A.   No.
17     Q.   '14?
18     A.   I cannot say.  It was closer to the end of
19  '14.  I know he had just got out on a parole
20  violation he had finished.  I'm not exactly sure of
21  the date.
22     Q.   And he had just gotten out on a parole
23  violation, or you had?
24     A.   He had.
25     Q.   He had.  And you don't remember the store;

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is that right?
 2         A.   No.
 3         Q.   And, once again, what did you say and what
 4    did he say?
 5         A.   We were having a conversation.  He asked me
 6    how his brother had gotten into a switch in federal
 7    prison.  And I told him that he had called Richie's
 8    brother a rat.
 9         Q.   I'm sorry, what did he say?
10         A.   How his brother had gotten into a switch.
11         Q.   What's a switch?
12         A.   He had gotten into trouble.
13         Q.   Okay.  And then what was the next thing
14    that was said?
15         A.   And I said that he had called Richie
16    Candelaria's brother a rat, so a hit was put on his
17    brother.
18         Q.   A hit was put on his brother?
19         A.   Yes, on Edward Troup's brother, in federal
20    prison.
21         Q.   Okay.  And then what was said?
22         A.   He stated, "Well, I helped take out Fred
23    Dawg and I gave squina with Pancho.  Isn't that
24    enough to give my brother squina?"
25         Q.   I took out Fred Dawg, and what?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   "I gave squina with Pancho.  Isn't that
 2   enough to help get my brother out of that switch?"
 3          Q.   What does that mean, "I gave squina to
 4   Pancho"?
 5          A.   I helped out.
 6          Q.   And what was the next part?
 7          A.   "Isn't that enough to help my brother get
 8   out of that switch," he said.
 9          Q.   And then what did you say to that?
10          A.   I told him, "I'll talk to Richie and see
11   what we could do."
12          Q.   And who was it you were going to talk to?
13          A.   Richie Candelaria.
14          Q.   And you were going to talk to Richie
15   Candelaria because you thought that you might be able
16   to get the hit that was on Edward's brother off of
17   him?
18          A.   No.  I was going to bring it up to him.
19   And I wasn't sure if they would or wouldn't.  I would
20   just bring it up to him.
21          Q.   And was the point of bringing it up to him
22   so that that hit on Edward's brother would come off?
23          A.   That's --
24          Q.   Or at least it would be discussed?
25          A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   All right.  So this conversation lasted, it
 2   sounds like, going back and forth, two minutes?
 3        A.   Yes.
 4        Q.   And then you went your separate ways?
 5        A.   We just bull-crapped around, just joked
 6   around a little bit.  I can't recall everything.  But
 7   we just touched base because I've known him for a
 8   long time.
 9        Q.   Yeah, before this time, when you were
10   talking to him, what was the last time before that
11   that you had seen Edward Troup?
12        A.   In prison.
13        Q.   And you left in 2001?
14        A.   Yes.
15        Q.   So the last time you would have seen him
16   was in sometime before 2001?
17        A.   Yes.
18        Q.   And then you saw him again in 2015, and you
19   started talking about this?
20        A.   Yes.
21             MR. BURKE:  All right.  Thank you.
22             THE COURT:  Thank you, Mr. Burke.
23             Any other defendant?  Mr. Granberg?
24
25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                      EXAMINATION
 2   BY MR. GRANBERG:
 3        Q.   Mr. Quintana, when did this exchange with
 4   Willie Amador and Chris Chavez take place?
 5        A.   About -- I'm going to say maybe 2012.
 6   Somewhere around there.  I'm not too sure.
 7        Q.   2012?
 8        A.   Somewhere -- that was before Willie passed
 9   away, I know that.
10        Q.   And so, from what I understand, you were
11   pumping gas at a gas station?
12        A.   Yes, I was putting gas in my motorcycle.
13        Q.   And they also just happened to be at the
14   gas station?
15        A.   They were putting gas in a vehicle on 8th
16   Street and Bridge, at the corner gas station.
17        Q.   And they approached you or you approached
18   them?
19        A.   I seen Willie, and I was talking to him.
20   At that time I seen Chris coming from the store.
21        Q.   And were you high at the time?
22        A.   No.  I was on federal parole.
23        Q.   What about, could you tell if Willie was
24   high?
25        A.   Probably.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1       Q.   Probably.  Could you tell that Chris Chavez
 2  was high?
 3       A.   Yeah.
 4            MR. GRANBERG:  Okay.  Pass the witness.
 5            THE COURT:  Thank you, Mr. Granberg.
 6            Anyone else on the defense side?
 7            All right.  Mr. Beck, cross-examination of
 8  Mr. Quintana?
 9                     CROSS-EXAMINATION
10  BY MR. BECK:
11       Q.   Mr. Quintana, when you were at the Southern
12  New Mexico Correctional Facility, in 2001, was Billy
13  Garcia there with you?
14       A.   No, he wasn't.
15       Q.   Who was -- who was sort of highest ranking
16  member of the SNM down at Southern before that?
17       A.   At the time that I got there, Lino Giron
18  had had the keys to the car.
19       Q.   Having keys to the car, that means he's the
20  highest ranking member, right?
21       A.   Yes.
22       Q.   When Billy Garcia got down to Southern, is
23  he a higher ranking member than Lino Giron?
24       A.   Yes, he is.
25       Q.   And in your experience with the -- well,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


1    when did you join the SNM?

2         A.   In 1993.

3         Q.   And in your experience in the SNM, what

4    happens when a high ranking member gets into a new

5    facility, what happens with the keys to that

6    facility?

7         A.   He takes over the yard.

8         Q.   I want to talk to you about Mr. Troup's

9    conversation with you in the grocery store.  It

10   sounds to me like he told you he gave squina with

11   Fred Dawg and Pancho, I think you said?

12        A.   Yes.

13        Q.   What does give "squina" mean?

14        A.   That he helped.

15        Q.   What do you think he meant by he gave

16   squina?  How do you think he helped?

17        A.   He helped kill him.

18        Q.   And have you heard from other SNM members

19   about the murder of Fred Dawg or Pancho?

20        A.   Yes.

21        Q.   And have you heard that Mr. Troup helped

22   kill Fred Dawg or Pancho?

23        A.   Yes.

24             THE COURT:  Hold on.  Mr. Burke, did you

25   have anything?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BURKE:  Objection, hearsay, Your Honor.
2              THE COURT:  Well, it's a 104.  Let me see
3     what the evidence is.  Overruled.
4         Q.   I don't think I heard your answer.  Have
5     you heard from other SNM members that Mr. Troup
6     helped kill Pancho and Fred Dawg?
7         A.   Yes.
8         Q.   Approximately how many other SNM members
9     have told you that?
10        A.   Several.  I've heard it from Wino, who was
11    directly involved in Fred Dawg's murder also.
12        Q.   It sounds to me like you think that Mr.
13    Troup's motivation in telling you that at that time
14    was he thought you could help -- was it Richie
15    Candelaria get his brother off?
16        A.   Yes, at that time, I was known to have the
17    keys in the federal penitentiary when I got released.
18        Q.   If that information that Troup told you
19    wasn't true, and the information that you passed on
20    to Richie Candelaria wasn't true, what would happen?
21        A.   I'd get killed myself.
22        Q.   And would Mr. Troup also get in trouble?
23        A.   Yes.
24        Q.   Would it help get his brother off if it
25    wasn't true?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No.
 2        Q.   When you talked with -- well, let me ask
 3   you this:  Was Willie Amador an SNM member?
 4        A.   He was an associate.
 5        Q.   Was Christopher Chavez an SNM member?
 6        A.   Yes.
 7        Q.   Was Edward Troup an SNM member?
 8        A.   Yes.
 9        Q.   And you're an SNM member, right?
10        A.   Yes.
11        Q.   As SNM members, do you talk about SNM
12   crimes and SNM business together?
13        A.   Yes.
14        Q.   When Mr. Troup was telling you about the
15   murder of Fred Dawg and murder of Pancho, were there
16   others involved in this conversation with you two, or
17   was it just two you?
18        A.   It was just us two.
19        Q.   Just you as an SNM member and he as an SNM,
20   right?
21        A.   Yes.
22        Q.   And he knew or he expected that you were
23   going to pass this information on to another SNM
24   member?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   How close were you to Mr. Troup?
 2        A.   I've known him from approximately since the
 3   early '90s.
 4        Q.   Since the early '90s, you said?
 5        A.   Before I went to prison.
 6        Q.   Does Mr. Troup often talk a lot to other
 7   SNM members?
 8        A.   Yes.
 9        Q.   I think you said -- I think when Mr.
10   Granberg was asking you questions about Mr. Chavez,
11   you said you thought he was high?
12        A.   Yes.
13        Q.   Was Mr. Chavez high a lot?
14        A.   Yes.
15        Q.   And have you gotten high before?
16        A.   Yes, I have.
17        Q.   And in your experience with Mr. Chavez and
18   being high, do you think Mr. Chavez was telling you
19   the truth?
20        A.   Yes, I do.
21        Q.   I think Mr. Burke and Mr. Granberg asked
22   you about the timing of these statements.  Do you
23   remember that?
24        A.   Yes.
25        Q.   Is it a little bit difficult for you to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    recall exactly what day or even exactly what year

 2    these happened?

 3         A.   Yes, it is.

 4         Q.   But these conversations did happen, right?

 5         A.   Yes, they did.

 6         Q.   And if you were presented with paperwork

 7    that showed when you were out of prison, when Mr.

 8    Troup was out of prison, when Mr. Chavez was out of

 9    prison, Mr. Amador was out of prison, would that

10    paperwork help you maybe get a better recollection of

11    when these events happened?

12         A.   Yes.

13         Q.   But you haven't looked at that before

14    coming today, right?

15         A.   No.

16              MR. BECK:  May I have a moment, Your Honor?

17              THE COURT:  You may.

18              MR. BECK:  Nothing further, Your Honor.

19              THE COURT:  Thank you, Mr. Beck.

20              Let me let Mr. Castle go first, then I'll

21    let you, Mr. Burke.  Go ahead, Mr. Castle.

22                    REDIRECT EXAMINATION

23    BY MR. CASTLE:

24         Q.   Mr. Quintana, when did you leave Southern

25    in 2001, do you know?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.    January 3.

2       Q.    So --

3       A.    Approximately the 3rd or the 6th,

4  discharged.

5       Q.    Did the murders of Looney and Pancho, did

6  the word of that spread fairly quickly through the

7  prison system?

8       A.    They knew ahead of time that Looney was one

9  of the ones going to be hit, before I even left.

10      Q.    So you knew already in the January of 2001

11 that Looney -- was it Looney or Pancho was going to

12 get hit?

13      A.    Looney.

14      Q.    Okay.  Now, did you know anything about

15 Pancho being murdered?

16      A.    No.

17      Q.    So you found -- my original question was:

18 When they were murdered, did you hear about it

19 through the prison grapevine, like, almost

20 immediately?

21      A.    Once it happened -- I was on the streets --

22 I seen it on the news.

23      Q.    Okay.  Now, how did you know that Looney

24 was going to be killed?

25      A.    Because there was many discussions about it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   before; that he was an LCer before he was an SNM
 2   member.
 3          Q.   And who did you have discussions with in
 4   the Southern facility, in 2001?
 5          A.   It wasn't in the Southern facility.  I was
 6   talking to Angel Munoz on the streets while I was out
 7   on parole.
 8          Q.   Okay.  So did you know that Angel Munoz
 9   wanted him dead?
10          A.   I didn't know that.
11          Q.   So would this have been in 2001?  When you
12   got out in January, you would have talked to him?
13          A.   1999, and I went back in in 2000, February.
14          Q.   How about when you got out in January of
15   2001, would you have talked to Angel Munoz during
16   that time period?
17          A.   No.
18          Q.   You indicated that when you left the
19   facility in 2001, the person that held the keys was a
20   person by the name of Lino; is that right?
21          A.   Yes, when I got to -- when I was in Santa
22   Rosa prison, I was instructed -- I talked to Angel on
23   the phone -- to go to Southern New Mexico
24   Correctional Facility and take the car away from Lino
25   Giron, and give it to someone else, because Wild Bill
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    was on his way over there, and it was going to be his

2    yard, so there wasn't no friction on the yard when he

3    got there.

4         Q.   So who instructed this?

5         A.   Angel Munoz did.

6         Q.   So who was it that you were supposed to

7    give the keys to?

8         A.   I give it to Tibo.

9         Q.   Who is that?

10        A.   I know his last name is Chavez.  I didn't

11   know his first name.

12        Q.   Nick Chavez?

13        A.   Yes.

14        Q.   How about Leroy Lucero, was he the

15   right-hand man of Lino Giron?

16        A.   No.

17             MR. BECK:  Objection, Your Honor.  I think

18   we're getting a little far afield.

19             THE COURT:  How is this related?

20             MR. CASTLE:  I'm just exploring what the

21   Government brought up.  It, frankly, has nothing to

22   do with our motion.  I confess that it doesn't.

23             THE COURT:  Well, why don't we rein it in

24   then.

25             MR. CASTLE:  I have no other questions
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    then.
 2              THE COURT:  Thank you, Mr. Castle.
 3              Mr. Burke.
 4                      EXAMINATION
 5    BY MR. BURKE:
 6         Q.   Mr. Quintana, Mr. Beck asked you if you had
 7    heard from other people about Edward Troup, and you
 8    said "several," but then you only mentioned one, and
 9    that was Javier Alonso, known as Wino, right?
10         A.   Yes.
11         Q.   So that's one other person you remember
12    mentioning it to you, right?
13         A.   Yes.
14         Q.   And where was it that you talked to Javier
15    Alonso that he said something about Edward Troup?
16         A.   We were at the North facility together.
17         Q.   And when was that, sir?
18         A.   Just recently.
19         Q.   And by "recently," like last week?
20         A.   No, about a few months back, a couple
21    months.
22         Q.   So two months back.  So we're in April, so
23    February he would have told you that.  And what cell
24    is he in?
25         A.   He was in cell number 9.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Are you in the same unit as he is?
 2        A.   Yes.
 3        Q.   All right.  And how is it that you two
 4   started talking?
 5        A.   We were reading our Bible together.
 6        Q.   All right.  And in the middle of some
 7   passage from Luke, he said:  By the way, let me tell
 8   you about Freddie Sanchez?
 9        A.   No, it wasn't a passage from Luke.  It was
10   just something he said he finally felt better that he
11   could get it off his conscience, because it was
12   bugging him.
13        Q.   So you're in the middle of a Bible study,
14   and his conscience is bothering him, and he just
15   wants to unburden himself, and he said:  By the way,
16   I killed Fred Dawg?
17        A.   No.
18        Q.   What did he say?
19        A.   He said that he dropped out of the SNM a
20   long time ago due to the fact that he didn't feel it
21   was right what they had him do to Fred Dawg.
22        Q.   Okay.  And then somehow he blurted out to
23   get this off of his chest, "and Edward helped me"?
24        A.   He said him and Edward Troup went in there
25   and did it together.
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   All right.  And did he mention the Rascon
 2   brothers?
 3        A.   No.
 4        Q.   All right.  Thank you.
 5             Let me go back now to the grocery store
 6   conversation.  What time of day was that?
 7        A.   I'm not sure.
 8        Q.   All right.  Was it like over the lunch hour
 9   or something?
10        A.   I'm not sure.
11        Q.   You don't know.  Was it in the morning?
12        A.   No.
13        Q.   Was it at night?
14        A.   If I told you a specific time, I'd be
15   lying.
16        Q.   And you don't want to lie?
17        A.   No.
18        Q.   Okay.  And so just trying to narrow it
19   down, when did you go back into prison?  Was it 2015
20   sometime?
21        A.   In September sometime when I got picked up
22   on this case.
23        Q.   In September of '15.  Were you out all of
24   '15, until you got picked up on this case?
25        A.   I went in on a couple of parole violations
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   back to federal prison, but that was it.
 2        Q.   In federal prison?
 3        A.   Yes.
 4        Q.   The BOP?
 5        A.   Yes.
 6        Q.   And that's where Edward's brother had the
 7   hit maybe put on him?
 8        A.   Yes.
 9             MR. BURKE:  Okay.  All right.  Thank you.
10   That's all I have.
11             THE COURT:  Thank you, Mr. Burke.  Any
12   other defendant have any questions?
13             All right.  Mr. Quintana, you may step
14   down.  Is there any reason that Mr. Quintana cannot
15   be excused from the proceedings?  Mr. Castle?
16   Mr. Burke?
17             MR. CASTLE:  No, Your Honor.
18             THE COURT:  Anyone else?  Mr. Beck?
19             MR. BECK:  He may be excused.
20             THE COURT:  All right.  You're excused from
21   the proceedings.  Thank you for your testimony.
22             Thank you for your assistance, Mr. Sapien.
23             MR. SAPIEN:  Thank you, Your Honor.
24             MR. CASTELLANO:  Your Honor, the defense
25   calls its next witness, if it's an SNM Gang member,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I'd just like to note an observation for the record,

2    that not one of the statements taken before the Court

3    this afternoon was a co-conspirator statement.  Now,

4    this was supposedly tied to Document 1909, which is

5    related to James statements.  Not one of those dealt

6    with a co-conspirator statement.

7            Now, they may have been statements against

8    interests, and other types of statements, but this is

9    the concern that we had, is that -- in this case it

10   would be like taking a deposition pretrial, and

11   getting a free shot at the witnesses.  If the Court

12   noticed, not one of those was a co-conspirator

13   statement.

14           THE COURT:  I don't think they've ever

15   contended that that was the purpose of this hearing.

16   Their purpose is they're challenging whether these

17   are statements against interests.  And there is,

18   what, six statements?  I know the list may be growing

19   a little bit, but it was four; I think it's now six.

20           MR. CASTELLANO:  Counsel referred to

21   Document 1909.  That is their filing related to the

22   Jencks.

23           THE COURT:  But I think that's where they

24   raised -- correct me if my memory is off -- isn't

25   that where you raised these -- say, while we're doing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   these, we want to challenge these statements against
 2   interests?  Isn't it at the back of that document,
 3   Mr. Castle?
 4            MR. CASTLE:  Yes, it is.  The first
 5   paragraph indicates that we're objecting to U.S.
 6   notice of James statements.  And it says, "And
 7   objections to specific target statements not
 8   referenced in the Government's notice."
 9            THE COURT:  Then you have about four there?
10            MR. CASTLE:  Yes.
11            THE COURT:  So I think that's the reason
12   it's getting referenced.  I think everybody is in
13   agreement these aren't going to come in as
14   co-conspirator statements.  These are ones that the
15   Government is trying to get in as statements against
16   interests.
17            MR. CASTELLANO:  All right.  So, as best as
18   we can, if we can have a proffer beforehand about
19   what statements they're referring to, I think that
20   would help focus the proceedings.
21            THE COURT:  Okay.  Mr. Cooper, do you have
22   the next --
23            MR. COOPER:  I do, Your Honor.  We would
24   call Josh Mirka to the stand.
25            MR. BECK:  And, your Honor, I think this is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    a perfect example.  There is no statement in there
 2    about Billy Garcia.  So the United States would ask
 3    for a proffer about what statement they're trying to
 4    attack.
 5              MR. COOPER:  Your Honor, there is a
 6    statement that Bill Garcia runs the car.  And we want
 7    to explore whether or not he was running the car.
 8              THE COURT:  Okay.
 9              MR. BECK:  And --
10              THE COURT:  All right.  Is Mr. Mirka in
11    custody?
12              MR. COOPER:  He's on his way up.
13              THE COURT:  Is he represented by counsel?
14              MR. COOPER:  She was here this morning,
15    Your Honor.  Ms. Gibson.
16              MS. ARMIJO:  She was here this morning and
17    I'm sure she wants to be here.
18              MR. COOPER:  We'll call her, Your Honor.
19              THE COURT:  All right.  If she's not in the
20    building, do you have somebody else you want to maybe
21    go to?
22              MR. COOPER:  May I have just a moment, Your
23    Honor?
24              THE COURT:  You may.
25              MR. CASTLE:  We'd call Agent Andrew Armijo,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    and it would be on the issue of the motion to
 2    dismiss, 1283, I believe is the number.  Yes.
 3              THE COURT:  All right.  Mr. Armijo.
 4              THE WITNESS:  Yes, sir.
 5              THE COURT:  All right.  Mr. Castle.  Let me
 6    have you sworn in first.
 7                   ANDREW J. ARMIJO,
 8         after having been first duly sworn under oath,
 9         was questioned and testified as follows:
10                   DIRECT EXAMINATION
11              THE CLERK:  Would you state your name and
12    spell your last name.
13              THE WITNESS:  My name is Andrew J. Armijo,
14    A-R-M-I-J-O.
15              THE COURT:  Mr. Armijo.  Mr. Castle.
16    BY MR. CASTLE:
17         Q.   Mr. Armijo, how are you employed?
18         A.   I am retired.
19         Q.   Prior to retiring, how were you employed?
20         A.   I was Special Agent for the FBI for 21 and
21    a half years.
22         Q.   And when did you retire?
23         A.   December of 2010.
24         Q.   Prior to that time, were you ever assigned
25    as an agent here in New Mexico?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.   Yes.
 2        Q.   From during what period of time?
 3        A.   It would have been 1997, I believe, to the
 4   end of my career in 2010.
 5        Q.   During that time period, did you ever work
 6   on investigations that focused on the prison gang,
 7   the SNM?
 8        A.   Yes, I did.
 9        Q.   And do you recall when you first started
10   working on investigations of that particular prison
11   gang?
12        A.   If I recall correctly, it was probably
13   early 2000, May, April, somewhere around there, I
14   guess.
15        Q.   What brought that gang to the attention of
16   the FBI at that time?
17        A.   It was a known gang that was born in the
18   prison system here in New Mexico in 1980 after a
19   riot.  It was a viable target.  We knew that they
20   were involved in some things that we were interested
21   in.
22        Q.   In 2000, 2001, where were you stationed?
23        A.   Here in Las Cruces, New Mexico.
24        Q.   So would your investigation have included
25   crimes that the SNM may have committed at the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Southern New Mexico Correctional Facility?

2         A.   Yes, it did.

3         Q.   In 2001, when you began your investigation,

4    was it just the FBI alone, or were you working with

5    the Department of Corrections, the State Police, a

6    joint task force, things of that nature?

7         A.   It was a gang task force.  And I think the

8    participants were the FBI, the Dona Ana County

9    Sheriff's Office, and the Las Cruces Police

10   Department.

11        Q.   Am I correct that the names of the task

12   forces sometimes change, or are they always the same?

13        A.   No, this one, I believe, it was the same

14   throughout.

15        Q.   What was the name of that task force?

16        A.   The New Mexico -- Southern New Mexico Gang

17   Task Force, I think.  I believe that was it.

18        Q.   Did it have a regional area in the State of

19   New Mexico that it looked at?

20        A.   Just the Southern part of the state.

21        Q.   So it wouldn't include Albuquerque and the

22   northern part of the state?

23        A.   Actually, as far as our jurisdiction, it

24   would cover the whole, since our headquarters is in

25   Albuquerque, so we would coordinate with our

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Albuquerque office as well.

2         Q.   Was there also a central New Mexico gang

3    task force?

4         A.   Not I'm aware of.

5         Q.   During the investigation, starting in 2000,

6    what was the FBI's role in, I guess, the

7    investigation of the SNM?

8         A.   Well, what we wanted to do was establish an

9    intelligence file for the SNM, the Syndicato de Nuevo

10   Mexico.  And what we were trying to do is establish

11   predicate offenses, which would include murder,

12   extortion, kidnapping, drug dealing, anything like

13   that, so that later on we could go and investigate

14   them fully, so the full extent of the law under RICO.

15        Q.   So the idea was to develop evidence that

16   could possibly be used by the United States

17   Attorney's Office in an indictment under either RICO,

18   or perhaps VICAR?

19        A.   Yes.

20        Q.   After you began your investigation in 2000,

21   did it come to your attention that a pair of murders

22   happened on the same day at the Southern Correctional

23   Facility?

24        A.   Yes.

25        Q.   I'm using the Southern Correctional

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   Facility as short for a longer name.  But it's the

 2   Southern New Mexico Correctional Facility, right?

 3        A.    Right.

 4        Q.    I just seem to always mess that name up

 5   when I say it, so I'll just call it Southern.

 6             Did you know about it fairly quickly after

 7   it happened?

 8        A.    Actually, I read about it in the paper.

 9   And then we followed up with the trying to gain some

10   intelligence.  I know the jurisdiction was with the

11   New Mexico State Police.  They had a full-fledged

12   investigation going on, the murder of two gentlemen.

13        Q.    When you said there was some intelligence

14   that you were, I guess, trying to gather; is that

15   right?

16        A.    That's correct.

17        Q.    What kind of formats would that take?

18        A.    That would take any type of reports from

19   the New Mexico Correctional Department, the local PD,

20   if possible, or the State Police.

21        Q.    Would it also include perhaps using assets,

22   informant assets of the FBI, that might have

23   information about the SNM?

24        A.    At that time, I don't think we had any

25   asset into, or informant into the Syndicato de Nuevo

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mexico.
 2         Q.   Was the New Mexico Department of
 3    Corrections reluctant to share information with the
 4    FBI during that time period?
 5         A.   No.
 6         Q.   All right.  So would you get reports?  In
 7    other words, did you get discovery?  Well, we would
 8    call it discovery, but police reports that filled you
 9    in on the details of the murders.
10         A.   Actually, we would solicit those reports.
11    As a matter of fact, I can recall traveling up to
12    Santa Fe, and picking up a couple reports.
13         Q.   Did you open up an investigation, a file, I
14    guess, on the 2001 murders?
15         A.   We opened up an intelligence file, a
16    racketeering enterprise investigation.  And we also
17    opened up a sister file for the eventual prosecution
18    of the SNM.
19         Q.   How long did those files remain open, or
20    did they ever close?
21         A.   I don't believe they have closed.  I think
22    it's still an ongoing investigation.
23         Q.   When did you say you retired?  Was it 2010?
24         A.   2010.
25         Q.   So between 2001 and 2010, if you came
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    across information related to those murders, would

2    you place that information in the files that we just

3    talked about?

4         A.   Well, I had transferred over to the other

5    side of the house -- I was working for a

6    counterintelligence and counterintelligence matters

7    about 2006, '07, somewhere around there.

8         Q.   Did a particular agent take over your job?

9         A.   I believe that would have been Bryan Acee,

10   because he was here in Las Cruces for a while.

11        Q.   And then did he leave and come back later

12   on in say, 2015, or do you know?

13        A.   I do not know.

14        Q.   He went off, and you ended up retiring in

15   2010?

16        A.   Right.

17        Q.   I take it at that point you kind of left

18   Bureau business aside and went on to enjoy your life?

19        A.   Correct.

20        Q.   Can you give us an idea -- I know we

21   subpoenaed you to bring your file, but I take it you

22   don't have a file anymore; is that right?

23        A.   No, sir, I'm not privy to any of those

24   files anymore.

25        Q.   Can you give us an idea of what the size of

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com



```
 1    the file was when you would have turned it over to

 2    Agent Acee, whenever that was, in 2006-ish?

 3         A.   I know the memo to open up or the EC, the

 4    electronic communication, to open up the file was

 5    just simply one that would identify separate

 6    subfiles.  And it would be a background 302, an

 7    insert, and then the backgrounds would include the

 8    main players.  So it could be -- and I can't recall

 9    who all we had, as far as in those background files.

10    But they were clearly labeled as BC-1 through

11    whatever it was.  I can't recall.

12         Q.   So those would be assigned to an individual

13    that might be either a target or a source?

14         A.   No, that would be a member of the SNM.

15         Q.   So the FBI, during this time period, was

16    keeping files on particular individuals who had been

17    identified as SNM members?

18         A.   Yes.  One of the things that you try and do

19    is establish who the rank and file are of the

20    Syndicato de Nuevo Mexico, and who are the leaders of

21    the organization itself.

22         Q.   So those subfiles, what did you call them?

23         A.   Background.  And B, as in Bravo, C as in

24    Charlie.

25         Q.   So B files?  I'm sorry?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    B, as in Bravo, C as in Charley.
 2   Background files.
 3        Q.    Okay.  It wasn't some secret --
 4        A.    No.  I apologize.
 5        Q.    Okay.  Then, if interviews had been
 6   conducted with confidential sources over the years,
 7   would those be in separate files?
 8        A.    I never conducted a confidential source
 9   interview of anyone.  You would have to address Bryan
10   Acee, or the other gentlemen up in Albuquerque that
11   were involved in the case.
12        Q.    Were there other agents out of the Southern
13   Task Force that were doing confidential interviews
14   with informants?
15        A.    Not that I was aware of.
16        Q.    You said there were a number of agencies.
17   How many investigators of sorts were part of this
18   task force?
19        A.    I would say probably three or four at a
20   given time.
21        Q.    Okay.  And the names might change, but that
22   would be about that number?
23        A.    Correct.
24        Q.    And those would be somebody from the FBI,
25   somebody from Corrections, and then somebody else
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   from another law enforcement agency?

2        A.   Actually, we didn't have anybody from

3   Corrections.  It would have been just from Las Cruces

4   PD and the Dona Ana County Sheriff's Office.

5        Q.   Okay.  Corrections worked outside, then,

6   outside of the task force?

7        A.   Yes, I believe so, yes.

8        Q.   But they would work cooperatively, in the

9   sense that they would pass on reports and things of

10  that nature?

11       A.   Yeah, if we solicited them, yes.

12       Q.   So if the FBI wanted anything, they'd give

13  it to you?

14       A.   Yes.

15       Q.   You don't recall any refusals by them to

16  share information?

17       A.   No.

18       Q.   During the investigation in 2012, do you

19  recall an individual by the name of Edgar Rosa being

20  a member of the task force?

21       A.   Yes I do.

22       Q.   Who was he?

23       A.   He was a Las Cruces Police Department

24  Officer, or detective, I'm not sure.  I think he was

25  just a patrol officer at the time.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   I want to show you a document, if I could.

 2        A.   Sure.

 3        Q.   Prior to coming in today, were you shown a

 4   few documents so you could familiarize yourself prior

 5   to testifying?

 6        A.   Yes.

 7        Q.   I'm hoping this was one of them, if you can

 8   look at the screen.  I don't know if you can see

 9   clear enough.  If you can't, I can let you have my

10   laptop.

11        A.   That's good.

12             MR. BECK:  Is it an exhibit?

13             MR. CASTLE:  I don't know.

14        Q.   Does that document -- did you have an

15   opportunity to look at that document?

16        A.   Yes, I did, just now.

17        Q.   And just for the record, it's marked as

18   Bates stamp 606.  Is that your name at the bottom?

19        A.   That is correct.

20        Q.   So you would have drafted that report?

21        A.   In conjunction with Mr. Rosa.

22        Q.   So when you say "in conjunction," you would

23   have drafted it, but you would have got the

24   information from Task Force Officer Rosa?

25        A.   Correct.  That would have been from
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Moore at Southern New Mexico Correctional
 2    Facility.
 3         Q.   And what's the date of the report?
 4         A.   April 10th, 2001.
 5         Q.   So this would be an example of a report
 6    where you were documenting the fact that Department
 7    of Corrections was providing information to the task
 8    force concerning the murders that happened at the
 9    facility in 2001?
10         A.   Yes, that's correct.
11         Q.   Thank you.  I'm going to show you another
12    document, which is Bates stamped 14202.  Disregard
13    the yellow highlighting, because I don't think that
14    was there before I looked at the document.  But do
15    you recognize that as an FBI document of some sort, a
16    302?
17         A.   That is correct.
18         Q.   And again, is this a document that you're
19    familiar with, at least at this point in time?
20         A.   Yes.
21         Q.   And was this an investigation that began
22    April 30, 2001?
23         A.   Let's see.  Yes, that's correct.
24         Q.   Now, would that have been a report that you
25    would have documented information that had been given
```

SANTA FE OFFICE                                                     MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1   to you from the Corrections Department about the

2   murders that happened?

3        A.   Yes.  I recall going up to Santa Fe and

4   acquiring that information.

5        Q.   Were there some meetings up in Santa Fe,

6   where they did kind of brainstorming on what to do

7   about these murders and the SNM, in general?

8        A.   As I said, the jurisdiction was held by the

9   New Mexico State Police.  And the Department of

10  Corrections was providing all that information to

11  them, as far as coordination with them.  That would

12  probably have been done between the State Police and

13  them.  As far as a preliminary investigation that we

14  had going, we really never sat down and coordinated

15  what avenue we were going to take.  We were trying to

16  develop our Intel for the SNM.

17       Q.   Do you recall whether you attended, in

18  2001, any meetings with U.S. Attorney's Office

19  members concerning a possible RICO investigation in

20  the SNM?

21       A.   No, I don't recall.

22       Q.   When you say that, do you think it didn't

23  happen, or you don't know whether -- I mean, it's

24  been a long time.

25       A.   I don't think it happened.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Okay.  That's fair enough.
 2        A.    I would have probably written a prosecutive
 3   report to the file in order for them to review.
 4        Q.    So I know -- I may have asked this
 5   earlier -- you were talking about files.  Are they
 6   paper files or are they electronic?
 7        A.    They're paper files.
 8        Q.    Okay.  So just your memory, was it an
 9   accordion file, or was it a little tiny file, or was
10   it a file drawer, or --
11        A.    Probably about that big.
12        Q.    Okay, about six to eight inches?
13        A.    Yeah.  And that would include all the
14   subfiles as well.
15             MR. CASTLE:  If I could have a moment?
16             THE COURT:  You may.
17             MR. CASTLE:  I have no other questions.
18             THE COURT:  Thank you, Mr. Castle.
19             Mr. Burke?  None?  Anybody else have
20   questions of Mr. Armijo?
21             How about you, Mr. Beck, do you have --
22             MR. BECK:  I do, Your Honor.
23             THE COURT:  -- cross-examination of Mr.
24   Armijo?
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    CROSS-EXAMINATION
 2   BY MR. BECK:
 3        Q.   I guess it's "Mr. Armijo" now, no longer
 4   Special Agent?
 5        A.   It happens.
 6        Q.   Mr. Armijo, I think I'll start from the
 7   beginning here with some of my notes.
 8             It sounds like on the Southern New Mexico
 9   Gang Task Force, the agencies involved were the
10   FBI --
11             THE COURT:  I hate to do this to you, Mr.
12   Beck, but I didn't realize that we were right up on
13   the break.  I'm sorry, I thought we had a few more
14   minutes.  I need to give Ms. Bean a break, and I need
15   to call Ms. Wild.  So we'll take about 15 minutes.
16             (The Court stood in recess.)
17             THE COURT:  All right.  We'll go back on
18   the record.  Do we have an attorney for each
19   defendant?
20             All right.  Mr. Armijo, I'll remind you
21   that you're still under oath.  Mr. Beck, if you wish
22   to begin your cross-examination of Mr. Armijo?
23             MR. BECK:  Thank you, Your Honor.
24             THE COURT:  Mr. Beck.
25        Q.   So Mr. Armijo, I just want to make sure.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

204

```
 1    The Southern New Mexico Gang Task Force in 2001
 2    included the FBI; is that right?
 3         A.   Yes.
 4         Q.   Dona Ana County Sheriff's Office?
 5         A.   Yes.
 6         Q.   And then the Las Cruces Police Department?
 7         A.   Yes.
 8         Q.   And that's all that were agencies working
 9    on the task force?
10         A.   That is correct.
11         Q.   I think you talked about, in 2000, the
12    FBI's involvement with the SNM Prison Gang was to
13    establish an intelligence file; is that correct?
14         A.   That is correct.
15         Q.   And you said -- outside of that, I think
16    you said you opened one other file into the SNM?
17         A.   Yes.
18         Q.   And maybe I'm saying that wrong.  Do you
19    open an intelligence file, or is it just a file
20    that's a placeholder for intelligence that you got?
21         A.   The file that we opened was a racketeering
22    enterprise investigation.  And so that, in itself,
23    was the intel file.  The other markings on the 302 --
24    the 166, I guess it is, the classification, 166E --
25    that is to the main file itself.  So those two are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   mirror images of the same.

2        Q.   Okay.  So mirror images; so you had two

3   files, but they contained the same documents?

4        A.   That is correct.

5        Q.   And during your work on the SNM, those were

6   the only two files or the only one file that you

7   worked on; is that right?

8        A.   That is correct.

9        Q.   And how long did you work on the

10  investigation into the SNM?

11       A.   Well, considering the other duties that I

12  had as far as other investigations, I guess until I

13  transferred over into the other side of the house

14  doing foreign counterintelligence and

15  counterintelligence, that would probably have been

16  2005, 2006, somewhere around there.

17       Q.   And from 2000 to 2005, 2006, whenever you

18  transferred over, was there anyone else in the

19  Southern New Mexico Gang Task Force -- if I have that

20  name correctly -- was there any other FBI officer

21  investigating the SNM, to your knowledge?

22       A.   To my knowledge, I know that when Bryan

23  Acee came into the Las Cruces resident agency, he may

24  have, but I'm not sure.

25       Q.   Do you know that he did, or are you sort of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   guessing?

 2        A.   I assume that he did.

 3        Q.   And when did Special Agent Acee come into

 4   the FBI?

 5        A.   That's -- I would assume probably 2005,

 6   somewhere around there.

 7        Q.   So about the time, give or take, that you

 8   moved over -- I think you said over to the other side

 9   of the house?

10        A.   Yes.

11        Q.   And if Special Agent Acee said that he

12   began investigating the SNM enterprise, or the SNM

13   Gang in 2015, for the first time, would that --

14             MR. CASTLE:  Objection, Your Honor.  I

15   don't think -- well, first of all, I think it's a

16   violation of the rule.

17             And second of all, I think there is lack of

18   foundation with this witness that he knows what Agent

19   Acee testified about.

20             THE COURT:  Well, I'll let him answer the

21   question.  I don't think it violates any of the rule

22   or anything to ask him whether he agrees or not.

23   Overruled.

24        Q.   If Special Agent Acee said that the first

25   time he began investigating the SNM was in 2015,

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    would that surprise you?

2         A.   If that's his testimony, I would assume

3    that's correct.

4         Q.   In your investigation into the SNM, from

5    2000 to 2005 or 2006, am I correct that you did not

6    ever open a confidential informant?

7         A.   No.

8         Q.   And even if you didn't open a confidential

9    informant, you didn't have a confidential informant

10   for the SNM investigation during that time, right?

11        A.   No, I did not.

12        Q.   If I understand your testimony correctly,

13   there was no one from the Corrections Department on

14   the Southern New Mexico Gang Task Force, right?

15        A.   No, there was not.

16        Q.   And as far as the FBI was concerned, the

17   New Mexico State Police was leading the investigation

18   into the double homicide at the Southern New Mexico

19   Correctional Facility, right?

20        A.   That's correct.

21        Q.   So when you talked about soliciting files

22   from Corrections, would that have been the FBI

23   soliciting files from Corrections, or New Mexico

24   State Police soliciting files from Corrections?

25        A.   I know that we solicited information from

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1    the Corrections Department.  I would assume that the
 2    State Police did so as well in their investigation.
 3         Q.   Okay.  That answers my question.
 4              And you said that when Mr. Castle was
 5    asking you these questions, you said if the FBI
 6    wanted anything, Corrections would give it to you,
 7    right?
 8         A.   Yes.
 9         Q.   If the FBI -- if you wanted anything from
10    the Albuquerque Police Department, would they give it
11    to you?
12         A.   Yes, through our Albuquerque office, with
13    our liaison up there.
14         Q.   If you wanted anything -- who did you work
15    with down here?  Maybe the Deming Police Office?  Is
16    that a thing?  I don't really know Deming.  But is
17    there a Deming police?
18         A.   Yes, there is a Deming Police Department.
19         Q.   And if you needed something from the Deming
20    Police Department for an investigation, would they
21    give it to you?
22         A.   In this case, or in any --
23         Q.   Any case, while you were working.
24         A.   Yes, absolutely.
25         Q.   If you needed something from the Hatch
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Police Department in an FBI investigation, would they
 2    give it to you?
 3          A.    Yes.
 4          Q.    If you needed something from Socorro Police
 5    Department, would they give it to you?
 6          A.    Yes.
 7          Q.    If you needed something from the Dona Ana
 8    County Jail, would they give it to you?
 9          A.    Yes.
10          Q.    And you don't consider any of those joint
11    prosecutions into the crimes that you're asking them
12    for documents generally, do you?
13          A.    No.
14          Q.    When you said -- I think you talked about
15    Special Agent Acee on direct, that he took your
16    position -- did he come to the FBI to take the
17    position that you had down here?  Is that your
18    understanding of how he was hired down here at the
19    Las Cruces?
20          A.    No, he was the first office agent down
21    here.  He was just transferred here out of Quantico.
22          Q.    Okay.  But he didn't take your place in the
23    SNM investigation, he just came to the office; is
24    that right?
25          A.    That is correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          Q.   And I think I understood you to say that as
 2    far as you were aware, no other agents on the
 3    Southern New Mexico Gang Task Force, at least that
 4    you're aware of, interviewed any confidential
 5    informants, right?
 6          A.   That I'm aware of, no.
 7          Q.   As far as you know, you never presented any
 8    SNM crimes for prosecution to the U.S. Attorney's
 9    Office, right?
10          A.   No, I did not.
11               MR. BECK:  May I have a moment, Your Honor?
12               THE COURT:  You may.
13               MR. BECK:  Nothing further, Your Honor.
14               THE COURT:  All right.  Thank you, Mr.
15    Beck.
16               Any redirect by the defendant, Mr. Castle?
17               MR. CASTLE:  No, Your Honor.
18               THE COURT:  How about you, Mr. Burke?
19    Anybody?
20               MR. BURKE:  No, Your Honor.
21               THE COURT:  All right.  Mr. Armijo, you may
22    step down.  Is there any reason Mr. Armijo cannot be
23    excused from the proceedings, Mr. Castle?
24               MR. CASTLE:  No, Your Honor.
25               MR. BECK:  No, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  You may be excused
 2    from the proceedings.  Thank you for your testimony.
 3              All right.  Do we have Ms. Gibson back?
 4    No?  Not yet?
 5              MR. COOPER:  Your Honor, she came in and
 6    apparently thought that it was okay for her to leave
 7    and go back to T or C, so that is what she has done.
 8              THE COURT:  Is she on her way back here?
 9              MR. COOPER:  She's not coming back until
10    tomorrow.  She said she's got other things to attend
11    to.  So we would call Edgar Rosa to the stand.
12              THE COURT:  All right.  And who is Edgar
13    Rosa?
14              MR. COOPER:  He's a task force officer,
15    Your Honor.
16              THE COURT:  Is this in support of your
17    motion to dismiss?
18              MR. COOPER:  It is.
19              THE COURT:  Mr. Rosa, if you'll come up and
20    stand next to the witness box on my right, your left,
21    before you're seated, my courtroom deputy, Ms. Bevel,
22    will swear you in.
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                        EDGAR ROSA,
 2          after having been first duly sworn under oath,
 3          was questioned and testified as follows:
 4                     DIRECT EXAMINATION
 5              THE CLERK:  Please be seated and please
 6     state your name for the record.
 7              THE WITNESS:  My name is Edgar Rosa.
 8     BY MR. COOPER:
 9          Q.   Mr. Rosa, can you tell me how you're
10     employed today?
11          A.   I'm a lieutenant with the Las Cruces Police
12     Department.
13          Q.   In 2001, you were a task force officer
14     member?
15          A.   That's correct.
16          Q.   And were you a Las Cruces PD assigned to
17     that task force?
18          A.   Yes, I was.
19          Q.   What was the name of that task force?
20          A.   Southern New Mexico Gang Task Force.
21          Q.   And what agencies were members of that task
22     force?
23          A.   The FBI, Las Cruces Police Department, Dona
24     Ana County Sheriff's Office.
25          Q.   And what was the name of the task force
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  again?

 2       A.    The Southern New Mexico Gang Task Force.

 3       Q.    And what was the purpose of that task

 4  force?

 5       A.    It was a joint task force put together to

 6  investigate crimes of various natures involving

 7  gangs.

 8       Q.    Okay.  At some point in time, did you ever

 9  focus on prison gangs?

10       A.    I personally did not, no.

11       Q.    Did the task force?

12       A.    Yes, they did.

13       Q.    Did you ever do any investigation, talk to

14  any sources with regard to the Syndicato de Nuevo

15  Mexico?

16       A.    I spoke with prison officials at one point

17  during the criminal investigation that was being

18  conducted by New Mexico State Police.

19       Q.    And which criminal investigation was that?

20       A.    It was a double homicide that had occurred

21  at Southern New Mexico Correctional Facility.

22       Q.    And do you remember the names of the two

23  individuals that were killed?

24       A.    No, I do not.

25       Q.    Was it Garza and Castillo; that ring a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   bell?

 2        A.   I don't know.

 3        Q.   Too long ago?

 4        A.   Yes.

 5        Q.   In connection with that investigation, did

 6   you have occasion to ever interview any confidential

 7   sources, do you recall?

 8        A.   No, I do not recall.

 9        Q.   I'd like to show you what is document Bates

10   No. 3032 for identification purposes.  Can you look

11   at that document.  It's going to come up.

12             Mr. Rosa, would you look at that document

13   for a moment.  Are you the same Edgar Rosa that's

14   identified in that document?

15        A.   I am.

16        Q.   And back in April of 2001, apparently on

17   April the 3rd, you would have interviewed a

18   confidential source; is that correct?

19        A.   A source, correct.

20        Q.   A source.  And do you know where you

21   interviewed that source?

22        A.   Unless I wrote it on this document, I don't

23   recall.

24        Q.   Do you know who that source is?

25        A.   No, I do not.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Q.   In that document it says that Billy Garcia

2     had a green light on him, right?

3          A.   Yes, it does.

4          Q.   And it also says that Garcia was

5     responsible for giving the order to have Bobby Ortega

6     killed; correct?

7          A.   That's correct.

8          Q.   Do you know where that source got that

9     information?

10         A.   I do not.

11         Q.   In there it also says that Mr. Garcia is

12    not associated with the SNM.

13         A.   Show me where that is.

14         Q.   It's next to the last line from the bottom,

15    "Source stated Garcia was not associated with the

16    SNM"?

17         A.   That's correct.

18         Q.   And it says, "Garcia did not have approval

19    of veteran members of the SNM for the hit"?

20         A.   That's correct.

21         Q.   How am I supposed to determine who that

22    source is?  Is there a method for me?  Is there a

23    place where I can go, a log or something, to tell me

24    who that source is?

25         A.   The best of my recollection, this document

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   was put together as an intel resource for --
 2   basically, to support what was going on at that time.
 3   The focus was on the Syndicato de Nuevo Mexico.  The
 4   sources I listed on the top stated that they were not
 5   in the position where they were willing to testify.
 6   So when we put together documents like this, this
 7   source could have come from inside the prison,
 8   outside the prison, so on.  And at this time I don't
 9   recall who or what that source was.
10        Q.   Okay.  But thinking back to what was going
11   on in 2001, did you put the identification of that
12   source in a separate file someplace?
13        A.   No, I did not.  I don't recall if I did or
14   not.
15        Q.   Okay.  Can you tell, looking at the
16   document, where -- what sort of distribution this
17   document had?
18        A.   No, I'm not familiar with the FBI method of
19   distributing their memos.
20        Q.   Did you prepare this document?
21        A.   Yes, I did.
22        Q.   What else did you do in 2001 relative to
23   the investigation of the double homicide?
24        A.   I was in a position just, basically, to
25   gather intel in any kind of information that may have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   been coming from the streets, or from wherever, just
 2   to make sure that it went up the pipeline to the New
 3   Mexico State Police investigators.  But other than
 4   that, I had no interaction with the actual criminal
 5   investigation itself.
 6        Q.   Did you do anything to further investigate
 7   the allegations contained in this document?
 8        A.   No, I did not.
 9        Q.   DeLeon 597, please.  Do you know Captain
10   Henry Telles?
11        A.   Yes, I do.
12        Q.   How do you spell his last name?  Is it with
13   an S or a Z?
14        A.   I don't recall, sir.
15        Q.   And who is Captain Henry Telles?
16        A.   He was an employee of the Southern New
17   Mexico Correctional Facility.
18        Q.   I'd like you to look at the monitor, if you
19   will.  And we are looking at Document 597 for
20   identification purposes.  Mr. Rosa, did you prepare
21   that document?
22        A.   I don't see my initials on it.
23        Q.   So reading the first line, do you recall it
24   says, "The Task Force Officer Edgar Rosa met with
25   Captain Henry Telles, Southern New Mexico
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Correctional Facility, and was provided the following

2    information"?

3         A.   That's correct.

4         Q.   "Telles said that an inmate, Patricio

5    Esquibel, is a validated member of SNM.  Telles also

6    stated that Alfred Giron, Sexy Walker, was relieved

7    to be transferred out of state.  Giron had a

8    difficult time controlling the younger members of the

9    SNM."  Do you recall that conversation or that bit of

10   information?

11        A.   No, I do not.

12        Q.   "Telles stated that Leroy Lucero, also

13   known as Smurf, is currently running the SNM at the

14   Southern New Mexico Correctional Facility."  Do you

15   know where Mr. Telles got that information?

16        A.   No, I do not.

17        Q.   It goes on to say that "Lucero is supported

18   by an advisory board.  The members are Alex Munoz,

19   Frank Castillo, and Joe Gallegos."  Do you know where

20   that information came from?

21        A.   No, I do not.

22        Q.   Did you do anything with that information

23   after Henry Telles gave it to you?

24        A.   No, I did not.

25        Q.   Down at the bottom it has four individuals'

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                   1-800-669-9492
                                                        e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   names:  Patricio Esquibel, also known as Pate; Leroy
 2   Lucero, Smurf; Alex Munoz, F Trooper; and Frank
 3   Castillo, Pancho.  Did you ever investigate any of
 4   those individuals?
 5        A.   No, I did not.
 6        Q.   Can you tell me what the date of that
 7   document is?
 8        A.   It's initiated November 20, 2000.
 9        Q.   It was initiated from November 20, 2000.
10   What does that mean?
11        A.   That's when the document was put together.
12        Q.   Okay.  There is a document title that says,
13   "2/27/01, Telles stated that inmate Patricio Esquibel
14   is a" -- something.  What's the difference between
15   the initiated date and the document -- the date on
16   the document title?
17        A.   As a task force officer, I was permitted to
18   put together a 302 as far as the context.  As far as
19   the other labels that are on top of that document, I
20   was not responsible for those dates.
21        Q.   Okay.  Do you know when it was that you met
22   with Captain Henry Telles by looking at that
23   document?
24        A.   It appears that it's dated 2/28 of 2001.
25        Q.   But the investigation that you were working
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                            1-800-669-9492
                                                  e-mail: info@litsupport.com



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    on was initiated back in 2000.  And that was the

2    investigation of the Syndicato de Nuevo Mexico?

3         A.   The best of my recollection, this is a

4    general file of intelligence, so I don't know when

5    that particular file number was initiated, the 281 AQ

6    up on top.

7         Q.   Okay.  Mr. Rosa, on April the 10th, 2001,

8    do you recall meeting a source, again who was not in

9    a position to testify, and that source telling you

10   that George Manzanares was responsible for ordering

11   the killing of Frank Castillo?

12        A.   I don't remember the source, sir.

13        Q.   Do you remember where that conversation

14   occurred?

15        A.   No, I do not.

16        Q.   Did you do any investigation and any

17   interviews of sources within Southern New Mexico

18   Correctional Facility back in 2001?

19        A.   I don't recall, sir.  I don't believe so.

20        Q.   You don't believe you did?

21        A.   No.

22        Q.   Do you know George Manzanares?

23        A.   I know of him from my contact as a Las

24   Cruces Police Department Police Officer.

25        Q.   Is he from Cruces?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   Yes.

2       Q.   Here in the second full paragraph it says,

3  "Source stated Billy Garcia gave the order to hit

4  Castillo.  Manzanares and Garcia will be killed for

5  their involvement in the killing of Castillo."  You

6  don't know anything about who that source is, right?

7       A.   No, I don't.

8       Q.   And you don't know where I could obtain

9  information on who that source is?

10       A.   I don't remember, sir.  It's been 17 years.

11       Q.   So like the other documents, you would not

12  have kept a log of who you talked to and their

13  identification?

14       A.   No, sir.

15       Q.   If this had happened -- if this trial were

16  occurring in 2001, 2002, it's likely that you would

17  know who the source was, right?

18       A.   More than likely, sir, yes.

19       Q.   And, likewise, same question, with regard

20  to the source in the other question?

21       A.   That's correct.

22       Q.   Did you investigate -- well, how long were

23  you a member of the task force?

24       A.   Approximately four years.

25       Q.   Ending or -- beginning and ending when?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Starting in 1997, ending in 2001.

2      Q.   Sometime after these interviews -- how long

3   after these interviews did you leave the task force?

4      A.   I got promoted back to the police

5   department just shortly thereafter; it was in that

6   same year.

7      Q.   And once you got back to the police

8   department, did you ever conduct any investigations

9   that were relevant to SNM activities?

10     A.   No.

11     Q.   So everything else --

12     A.   Everything remained within the jurisdiction

13   of the Las Cruces Police Department when I returned

14   back to the city police.

15          MR. COOPER:  Okay.  May I have a moment,

16   Your Honor?

17          THE COURT:  You may.

18          MR. COOPER:  Pass the witness.  Thank you.

19          THE COURT:  Thank you, Mr. Cooper.

20          Mr. Burke?  Anybody else on the defense

21   side?  Anyone else have any cross-examination of

22   Mr. Rosa.  Mr. Beck?

23                  CROSS-EXAMINATION

24   BY MR. BECK:

25     Q.   Lieutenant Rosa, I want to go back over a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   couple of these documents.  Would you bring up Bates
 2   3032, please.  Do you know whether this source was an
 3   SNM Gang member?
 4        A.   I don't recall.
 5        Q.   Do you see anywhere on this document that
 6   it says he was an SNM Gang member?
 7        A.   No, I do not.
 8        Q.   And I know you're not a prosecutor, but
 9   does this document generally say that Billy Garcia is
10   responsible for ordering a murder, specifically of
11   Bobby Ortega?
12        A.   In general, yes.
13        Q.   And do you know that to be an SNM Gang
14   member named Bobbalu; nicknamed Bobbalu, I should
15   say?
16        A.   Bobbalu?  Where do you get the Bobbalu,
17   sir?
18        Q.   I'm just asking if you know that.
19        A.   I don't know that.
20        Q.   That's what I figured.  And so do you know
21   who Billy Garcia is, a/k/a Wild Bill?  Do you
22   remember that from working on the SNM prosecutions?
23        A.   No, I do not.
24        Q.   So you wouldn't know if he was a leader of
25   SNM at the time of the 2001 murders?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   No, I would not know.

2        Q.   And I think you said that you didn't do

3    anything to follow up on this information, right?

4        A.   That's correct.

5        Q.   How long have you been working in law

6    enforcement?

7        A.   24 years.

8        Q.   And in your 24 years' experience, if you're

9    meeting with someone who is providing information, do

10   you go -- as a confidential informant, which -- let's

11   refer to this person as a confidential informant --

12   do you go on just their testimony alone, or do you

13   want to corroborate it before you move forward with

14   it?

15       A.   We attempt to corroborate what he's

16   stating.

17       Q.   And if this person in that last paragraph

18   says that, "Source stated that Garcia was not

19   associated with the SNM," if you interviewed other

20   SNM members, and even prison officials, and they told

21   you that Garcia was associated with the SNM, and in

22   fact he was a leader of the SNM, would that

23   corroborate or not corroborate this person's

24   statements about the SNM?

25       A.   It wouldn't corroborate what he stated.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                      1-800-669-9492
                                                            e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Q.   If you're investigating the SNM, and it

2  says this person, Garcia, is not associated with the

3  SNM, but he is actually a leader in the SNM at that

4  time, would that -- in your opinion, would you find

5  this source useful for SNM information, or would you

6  think that perhaps he doesn't have much information

7  on the SNM?

8    A.   I would second-guess everything he would be

9  sharing.

10    Q.   All right.  Can we look at Bates 597,

11  please.  So it looks to me -- I probably should have

12  paid closer attention -- but it looks to me like this

13  information came from an interview with Captain

14  Telles, and not with a specific inmate or inmates?

15    A.   That's correct.

16    Q.   And I think here in the second paragraph --

17  well, third paragraph -- sorry, I can't count --

18  right there, that I circled with red, it says that

19  "Leroy Lucero, a/k/a Smurf, is currently running the

20  SNM at the SNMCF."  Do you see that?

21    A.   Yes, I do.

22    Q.   All right.  And do you know whether that

23  was true at the time?

24    A.   I don't remember if that was true or not.

25    Q.   All right.  And I think you said you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    wouldn't know if Billy Garcia was higher or lower
 2    than --
 3         A.   I would not know.
 4         Q.   But if you talked to Mr. Lucero, and he
 5    said that Billy Garcia was higher up in the gang at
 6    that point, would you rely on his statement, at least
 7    partially for that?
 8         A.   I would have to corroborate it as well.
 9         Q.   Okay, good.  Fair enough.
10              All right.  I'm showing you now on the
11    overhead a document.  Do you see where it says,
12    "Offender Physical Location History" at the top?
13         A.   Okay, yes.
14         Q.   And underneath that, do you see where it
15    says, "Billy Lee Garcia"?
16         A.   Yes, I do.
17         Q.   Have you ever seen one of these physical
18    location history sheets before?
19         A.   No, I have not.
20         Q.   Do you recognize -- down at the bottom
21    here, around 2001, do you recognize the name under
22    location there, to Southern NMCF?
23         A.   I believe that's a reference to the
24    Southern New Mexico Correctional Facility.
25         Q.   And that's where you know that the murders
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   happened in 2001, right?

 2        A.   That's correct.

 3        Q.   And do you remember that those murders

 4   happened on or about March 25 or 26 of 2001?

 5        A.   I don't recall when the incidents occurred.

 6        Q.   Okay.  But looking at this, does this

 7   indicate to you that Billy Lee Garcia, at least

 8   according to this document, was moved to the Southern

 9   New Mexico Correctional Facility on or about March 7

10   or 8 of 2001?

11        A.   According to this document, yes.

12        Q.   And if we could have back Bates 597,

13   please.  And, again, I think you went over this in

14   your direct examination with Mr. Cooper, but it looks

15   like this interview probably happened either February

16   27, 2001 or February 28, 2001; is that fair to say?

17        A.   Yes.

18        Q.   And is that before March 8 of 2001?

19        A.   Yes, it is.

20        Q.   And so, if you found out that Billy Garcia,

21   who we saw moved down there in March of 2001, was

22   higher up in the organization than Leroy Lucero, and

23   ran the pod after he got there, would it help you

24   determine whether Leroy Lucero was running the pod in

25   March of 2001, that information help you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   It may or may not.  I won't say.  I can't
2   corroborate.
3      Q.   Fair enough.  Then, if we could go to Bates
4   605, please.  Down here in the third paragraph, does
5   that say that, "The source stated that Billy Garcia
6   gave the order to hit Castillo?
7      A.   That's correct.
8      Q.   And earlier on, it says that, "George
9   Manzanares was responsible for ordering the killing
10  of Frank Castillo," right?
11     A.   That's correct.
12     Q.   Do you know -- if you know -- the way the
13  SNM operates, that multiple people can be involved in
14  placing an order to kill another SNM member?
15     A.   I do not know.
16     Q.   And again, do you remember corroborating
17  any of this information from this source?
18     A.   I don't remember, sir.
19     Q.   Okay.  And if several inmates told you that
20  Billy Garcia gave the order to kill inmate Castillo,
21  would that help you corroborate this source's
22  information?
23     A.   It may.
24     Q.   And if several sources didn't mention it at
25  all that George Manzanares was involved, would that

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    lead you to believe that this information about

 2    George Manzanares was accurate or inaccurate, or

 3    would it --

 4         A.   Same.

 5         Q.   Fair enough.

 6              MR. BECK:  May I have a moment, Your Honor?

 7              THE COURT:  You may.

 8              MR. BECK:  Nothing further, Your Honor.

 9              THE COURT:  Anyone else?  Mr. Cooper, do

10    you have any redirect?

11              MR. COOPER:  Briefly, Your Honor.

12              THE COURT:  Mr. Cooper.

13                       REDIRECT EXAMINATION

14    BY MR. COOPER:

15         Q.   Looking at Document 3032, Mr. Rosa, about

16    in the middle of that first big paragraph it says,

17    "Veteran members of the Syndicato de Nuevo Mexico,

18    SNM, are unhappy with the activities of younger

19    members."  You'd necessarily need to be an SNM member

20    to know that; correct?

21         A.   It could come from any sources inside the

22    prison system.

23         Q.   Okay.  All right.  A minute ago you said to

24    Mr. Beck that you would second-guess this source's

25    information if you knew to be that Billy Garcia was a
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                         1-800-669-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    member of SNM; you'd think this guy really doesn't
 2    have good information, right?
 3         A.   It depends, yes.
 4         Q.   And that would hold true for all of his
 5    information, wouldn't it?
 6         A.   It may, yes.
 7              MR. COOPER:  Okay.  Thank you.
 8              THE COURT:  Thank you, Mr. Cooper.  Any
 9    other defendant have redirect?  Mr. Burke?  Anyone
10    else?
11              Mr. Rosa, you may step down.  Is there any
12    reason Mr. Rosa may not be excused?
13              MR. COOPER:  No, Your Honor.  Thank you.
14              THE COURT:  Anybody else have an objection?
15    Mr. Beck?  Are you okay?
16              MR. BECK:  No, Your Honor, he may be
17    excused.
18              THE COURT:  All right.  You're excused from
19    the proceedings.  Thank you for your testimony.
20              All right.  Mr. Castle, Mr. Cooper, any
21    other witnesses this afternoon or --
22              MR. CASTLE:  Yes, Your Honor.  We would
23    call Juan Barela.
24              THE COURT:  This will again be in support
25    of the motion to dismiss?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. CASTLE:  It will.
 2            THE COURT:  Mr. Barela, if you'll come up
 3   and stand next to the witness box on my right, your
 4   left.  Before you're seated, my courtroom deputy, Ms.
 5   Bevel, will swear you in.
 6                      JUAN BARELA,
 7         after having been first duly sworn under oath,
 8         was questioned and testified as follows:
 9                   DIRECT EXAMINATION
10            THE CLERK:  Please be seated, and please
11   state your name for the record.
12            THE WITNESS:  My name is Juan Barela.
13            THE COURT:  Mr. Barela.  Mr. Castle.
14   BY MR. CASTLE:
15         Q.  Mr. Barela, back in 2001, were you a work
16   detail supervisor at the Southern New Mexico
17   Correctional Facility?
18         A.  Yes, I was.
19         Q.  In that capacity, I take it you weren't an
20   investigating officer with the STIU, or --
21         A.  No, I wasn't.
22         Q.  -- or for the warden, for that matter?
23         A.  No.
24         Q.  But in that capacity sometimes would you
25   overhear information that you would pass on to those
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    that might be investigating crimes?

2        A.   Yes.

3        Q.   Specifically, I want to bring your

4    attention to March 7, 2001.  Prior to coming in here

5    today, did you get to take a look at a document that

6    had that date on it?

7        A.   The first subpoena did have it.  And when I

8    was told that my testimony wasn't needed, I went

9    ahead and got rid of it.

10       Q.   Okay.  I'm going to show you what has been

11   admitted as Exhibit, L and have you take a look at

12   that and see if, in fact, that's the document you

13   might have reviewed when you first received your

14   subpoena?  Is that the document?

15       A.   That is correct.

16       Q.   What is Defendants' Exhibit L?

17       A.   It is a memorandum that -- usually, when

18   individuals come in, they always talk or say

19   something.  So it's not my job to decide whether the

20   information is true or not.  So what I do is I just

21   type it down and pass it on.

22       Q.   In case it might be important?

23       A.   Correct.

24       Q.   Would you have done this report on March 7,

25   2001?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.    The date shows March 7, 2001, yes, sir.
 2          Q.    Okay.  Would you have done it even that day
 3     or the day after?
 4          A.    I can't recall exactly.
 5          Q.    Okay.  What was your practice at that point
 6     in time?  If someone said something that was
 7     concerning, would you try to write it down on that
 8     shift or the next time you --
 9          A.    Yes, I would try.
10          Q.    So if it was the end of your shift, you
11     might do it the next day, or something?
12          A.    Correct.
13          Q.    Do you recall this information that's put
14     down in this report?
15          A.    No, sir, I don't recall at all.
16          Q.    When you do a report like Exhibit L, would
17     you try to put down as much information and as
18     accurate information as you could?
19          A.    I put down information, and then I pass it
20     on.  If it's pertinent to anything that they're
21     looking into, then they'll come up and ask me for any
22     added information.
23          Q.    You certainly wouldn't put anything that
24     was inaccurate in those reports, right?
25          A.    Oh, no, no.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Did you know an inmate by the name of

2   Leonard Lujan?

3      A.   Right now I don't even know who he is.

4      Q.   Okay.  The names -- there are probably a

5   ton of inmates that came by --

6      A.   Quite a bit, yes, sir.

7      Q.   -- during your years.  Did you remember an

8   inmate by the name of Jimmie Gordon?

9      A.   Not right offhand, no.

10      Q.   So this says you received confidential

11   information.  What did you mean by "confidential

12   information"?

13      A.   The confidential information is what's

14   written right there; that I would consider

15   confidential.

16      Q.   Okay.  Well, the beginning of this report

17   says, "The informant who has provided information,

18   which has been accurate in the past," and then it

19   goes on to state what that person said.  Do you see

20   that?

21      A.   Yes.

22      Q.   So would this have been a person who you

23   had gotten in the information in the past and passed

24   on to the warden previously?

25      A.   Pretty much.  Probably information that in

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

 1    the past had been proved to be accurate.

 2        Q.   Have you ever been in law enforcement other

 3    than your role here?

 4        A.   In Corrections?  I've been in Corrections?

 5        Q.   Yes.

 6        A.   No, sir.

 7        Q.   How about in Corrections, were you -- did

 8    you ever -- were you ever in any investigative role?

 9        A.   In '99 to 2001, I didn't do any

10    investigations, but drugs were presented to me to

11    follow through and present into the district

12    attorney's office for prosecution.

13        Q.   And so this language here, "provided

14    information -- "the informant who has provided

15    information, which has been accurate in the past,"

16    that's language that we often see in the courthouses

17    as affidavits for search warrants and things like

18    that.  Where did you get that language from?

19        A.   When -- probably -- I would say probably

20    through our training that we get refresher courses

21    through the years in Corrections.

22        Q.   Okay.  So when you do a report, you want to

23    let the people that read it know that this isn't just

24    somebody who is giving you some random information,

25    it's somebody who you've relied upon previously; is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that fair?

2        A.   Correct.  Well, it's based on any

3    individual giving information.  And then it's passed

4    on.  But we were always taught never to put who the

5    person was giving the information, in case the memo

6    would get lost, or --

7        Q.   Fair enough.  But when you put down this

8    informant had provided accurate information in the

9    past, was that so that your superiors would know that

10   this is something that might be reliable?

11       A.   That would probably be their decision, if

12   there is anything pertinent that would coincide with

13   what information they have on any individual.

14       Q.   Why would you tell the warden here that the

15   informant that provided information on this instance

16   had been accurate in the past?  Why did you tell the

17   warden that?

18       A.   Probably more than likely the individual

19   had given me information in the past.

20       Q.   Okay.  That was accurate?

21       A.   Correct.

22       Q.   Would you have recorded the name of that

23   informant in some other form somewhere else?

24       A.   Not that I can recall.

25       Q.   If STIU had come and talked to you, and

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                        1-800-669-9492
                                                          e-mail: info@litsupport.com



1  asked you who that informant was, or the warden did,

2  would you have told them?

3       A.   More than likely.

4       Q.   Would you ever have withheld the name of

5  that informant from your boss, the Warden?

6       A.   No, sir.

7       Q.   I know this is probably an impossible

8  question to ask, but lawyers are fond of asking

9  impossible questions, so I'm going to ask you anyway,

10 okay?  Could you tell us how long you would have

11 remembered the name of that informant after 2001?  Is

12 that something -- you know your own memory -- is that

13 something you would have forgotten the next day, a

14 month, a year, a couple years?

15      A.   Probably after I was removed from the work

16 detail supervisor.

17      Q.   Which would have been when?

18      A.   I don't know exactly when.  And I don't

19 know if I was placed at prison industries after that.

20      Q.   Could you give us maybe a year?

21      A.   Probably 2002, 2003, somewhere around

22 there.  All supervisors are subject to rotations of

23 shifts.

24      Q.   And just go a little bit further down.  In

25 this report you say, "If it is possible to pass this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    information to the facility that inmate Gordon was
 2    sent to, in case this hit is true."  Do you see that
 3    sentence there?
 4         A.   Yes, sir.
 5         Q.   Did you write that because you were
 6    concerned for inmate Gordon's safety?
 7         A.   I may have, yes, sir.
 8         Q.   Is that what it appears to state?
 9         A.   That is correct.
10              MR. CASTLE:  If I could have a moment?
11              THE COURT:  Certainly.
12              MR. CASTLE:  No further questions.
13              THE COURT:  Thank you, Mr. Castle.  Anyone
14    else?  Mr. Burke?  Anybody?
15              MR. BURKE:  No, Your Honor.
16              THE COURT:  Any other defendant have any
17    questions of Mr. Barela?
18              Mr. Beck, Mr. Castellano, do you have any
19    in cross of Mr. Barela?
20              MR. CASTELLANO:  Yes, Your Honor.
21              THE COURT:  Mr. Castellano.
22                   CROSS-EXAMINATION
23    BY MR. CASTELLANO:
24         Q.   Good afternoon, Mr. Barela.
25         A.   Good afternoon.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.    You said you used to present cases to the

2    DA's office for prosection; is that correct?

3        A.    That is correct.

4        Q.    Did you ever present any cases to me for

5    prosecution back then?

6        A.    Mainly all of them.

7        Q.    So can we have Exhibit L back up here,

8    please.  And while we're doing that, how often would

9    you write reports like this?

10       A.    During the work detail, probably three or

11   four times, somewhere around there.

12       Q.    Three or four times during what time

13   period?  Per week?  Per month?  During your entire

14   term there?  Do you remember?

15       A.    It's hard to say.  I can't even recall how

16   many I've written, if I wrote any, or if that was the

17   only one.

18       Q.    And did you know whether or not either of

19   these people were affiliated with the SNM Prison

20   Gang?

21       A.    Not a clue.

22       Q.    Were you familiar with the SNM Prison Gang

23   from your time at the prison?

24       A.    Yes, I was.

25       Q.    And how would you describe them as a gang?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   Like individuals sticking together.   That's

2   about all I can say about that.

3       Q.   Would you consider them a violent or

4   dangerous gang?

5       A.   Yes, I would.

6       Q.   Looking at the document, can you tell the

7   Court whether this document was prepared in order to

8   prosecute anybody, or was it for the safety of people

9   at the facilities?

10      A.   Probably -- well, I don't know what they

11  used it for.   It looks like it was placed in some

12  kind of file.

13      Q.   So if it was addressed to the acting chief

14  of security, would that be important for the security

15  of the institution?

16      A.   Yes.

17      Q.   And as far as you knew, was there any crime

18  committed, or were you trying to possibly prevent a

19  crime, if this information was true?

20      A.   I would say to prevent.

21      Q.   So under these circumstances, were you

22  investigating any type of crime?

23      A.   No, I was not.

24      Q.   And is it accurate to say that you just

25  received information and forwarded it to somebody

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    else?

2         A.   That is correct.

3         Q.   And that way, at least if inmate Gordon was

4    in harm's way in some way, he could potentially be

5    protected?

6         A.   Correct.

7         Q.   Now, in terms of the information being

8    reliable, did you or the institution have a standard

9    for determining whether somebody was considered

10   reliable?

11        A.   I believe the facility had their standard

12   of reliable informants.

13        Q.   So when you indicated that the person or

14   the information provided before was reliable, were

15   you using the institution standard, or was that just

16   your own personal standard?

17        A.   No, that would be the institution standard;

18   that would tell them, you know, to at least look into

19   it, or probably find the individual.

20        Q.   Isn't it a case that if more information is

21   necessary, you could be contacted.  Do you recall

22   anybody ever following through with you regarding

23   this information?

24        A.   I don't recall if they did or not.

25        Q.   Then, as I stated here -- I'll highlight



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  for you -- where it says, "The information as

2  provided has been accurate in the past."  Do you

3  remember how many times somebody would have to give

4  you information in order for you to put that in a

5  report, for reliability purposes?

6       A.   I believe once -- well, once I would submit

7  it, if it was found to be true, then that would be

8  probably, or has given information in the past, more

9  than likely.

10      Q.   And so since you don't remember either of

11 these individuals, is it fair to say you don't know

12 whether if they were even associated with the SNM

13 Prison Gang?

14      A.   That's correct.  I wouldn't know if they

15 were.

16      Q.   And it looks -- at least from the memo you

17 wrote, there is an indication that Jimmie Gordon was

18 being moved, and so this information was supposed to

19 follow him wherever he was to keep him safe; is that

20 a fair conclusion?

21      A.   Yes, sir, that's correct.

22      Q.   Once again, since this is directed to the

23 active chief of security, was this in any way

24 prepared for purposes of litigation or for court

25 purposes?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    I wouldn't know exactly what it was going
 2   to be used for.
 3        Q.    All you knew was you had information, and
 4   it was your job to make sure you passed it on so
 5   someone could be kept safe?
 6        A.    Correct.
 7              MR. CASTELLANO:  May I have a moment, Your
 8   Honor?
 9              THE COURT:  You may.
10              MR. CASTELLANO:  Thank you, I pass the
11   witness.
12              THE COURT:  Thank you, Mr. Castellano.
13              Mr. Cooper or Mr. Castle.
14              MR. CASTLE:  Just one question.
15                    REDIRECT EXAMINATION
16   BY MR. CASTLE:
17        Q.    If you can look at Defendant's Exhibit L.
18   Just to clarify, was this addressed to the acting
19   chief of security, or was this to Lawrence Tafoya,
20   the Warden?
21        A.    The acting chief of security was my
22   supervisor.  So any memos that I would submit -- I
23   can't go directly to the warden; they have to go
24   through my immediate supervisor.
25        Q.    So it went through him, but to the warden,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   right?
 2         A.   Yes, sir, that's correct.
 3              THE COURT:  Anyone else?  All right.  Mr.
 4   Barela, you may step down.  Is there any reason Mr.
 5   Barela cannot be excused from the proceedings?  Mr.
 6   Castle?
 7              MR. CASTLE:  No, Your Honor.
 8              THE COURT:  Anyone else have any objection?
 9   Mr. Castellano, can he be excused?
10              MR. CASTELLANO:  Yes, sir.
11              THE COURT:  All right.  Mr. Barela, you may
12   be excused from the proceedings.  Thank you for your
13   testimony.
14              THE WITNESS:  Thank you, Your Honor.
15              THE COURT:  All right.  Do we have further
16   witnesses we want to take this afternoon, Mr. Castle?
17              MR. CASTLE:  We have no other witnesses
18   this afternoon.
19              THE COURT:  All right.  Do you want to --
20   let me ask, does the Government have any witnesses on
21   the motion to dismiss?
22              MR. BECK:  No, Your Honor.
23              THE COURT:  All right.  Are we ready to
24   argue the motion to dismiss?  Or do we have more
25   testimony we need to take?  I know we've got the one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    other 104 tomorrow.  We've got Mr. Acee, don't we?
 2              MR. CASTLE:  We have Mr. Acee and also
 3    Special Agent Roundy.
 4              THE COURT:  Okay.  Is that tomorrow?
 5              MR. CASTLE:  Yes.
 6              THE COURT:  Did we work out the details on
 7    Mr. Acee, how he's going to testify?
 8              MR. BECK:  I think he's preparing to
 9    testify by phone.  And I think Mr. Castle will get
10    him the documents, or I will from Mr. Castle.
11              THE COURT:  Is that acceptable, Mr. Castle?
12              MR. CASTLE:  Yes, Your Honor.
13              THE COURT:  Are all the defendants
14    comfortable with that?  Mr. Burke?
15              MR. BURKE:  Yes, Your Honor.
16              THE COURT:  All right.  We'll take his
17    testimony by phone tomorrow, we'll take Mr. Roundy,
18    then we'll argue the motion to dismiss after we take
19    that testimony?  Is that the plan?
20              MR. BURKE:  Yes, Your Honor.
21              THE COURT:  All right.  Then we may have
22    skipped around a bit, so y'all may have to get me
23    back on-track as to where we are.
24              MR. CASTLE:  If I could help the Court.
25              THE COURT:  Yes, you may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. CASTLE:  We skipped over, but I think

2     they argued it somewhat, but there was Document -- I

3     think it's 9 on your tab, Document 1871.

4          THE COURT:  Yes, that's what I had next,

5     because Mr. Troup's motion is being oral argued at

6     the same time with Mr. Garcia's, right, on the motion

7     to dismiss?  Those are all being argued together?

8          MR. BURKE:  Correct, Your Honor.

9          THE COURT:  All right.

10          MR. CASTLE:  Judge, we actually might have

11     skipped over number 8, which is the United States'

12     motion in limine to exclude extrinsic evidence.

13          THE COURT:  I'm not sure I brought that

14     back with me.  Do you want to argue that?  Are you

15     going to refresh -- I read it in preparing for the

16     last hearing, but I didn't reread it and didn't bring

17     it with me.

18          THE CLERK:  Do you want me to reprint it?

19          THE COURT:  Let's see what the motion is.

20     Maybe they can jog my memory.

21          MR. BECK:  Yeah, I think the argument can

22     be pretty quick.  This is our motion to exclude the

23     videos of our testifying witnesses who participated

24     in contact visits.  So the Court has previously

25     overruled this objection in Trial 1.  I think we were

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN
&ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    trying to get a second bite at the apple.

2            THE COURT:  Are you going to have a bunch

3    of them again this time?

4            MR. BECK:  I don't expect we'll have as

5    many this time.  I think I'd anticipate that it would

6    be Benjamin Clark, Billy Cordova again, whose videos

7    we saw from the last trial.  And I think that may be

8    it.

9            THE COURT:  And the defendants want to show

10   these to the jury?  Is that --

11           MR. BURKE:  Yes, Your Honor.

12           THE COURT:  Well, I guess my reasoning has

13   been that, just as I have under Old Chief allowed the

14   Government to put on their case, and the robustness

15   with which I think the Supreme Court has indicated it

16   should be allowed, the defendants can do the same.

17   It seems to me that the evidence is admissible.  I

18   think, if I understand the Government's point is,

19   once the witness agrees that he had sex with family

20   members, girlfriends, wives, that it's not necessary

21   to show the tape, and it's a 403 argument.  And I

22   don't know how much the jury enjoys it, but -- so

23   it's a call that I probably will leave to the

24   defendants.  But, in fairness to them, allowing them

25   to put on their case with the same robustness that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   I'm allowing the Government, it doesn't seem to me

 2   that I should be kind of stipulating away their

 3   ability to put it in.  It's relevant.  And because it

 4   goes to benefits that the cooperators may be getting

 5   in these cases, prison officials or the Government is

 6   turning an eye and letting this take place.  I

 7   thought about it several times, but I guess I'm

 8   inclined to continue to allow those.

 9            Anything else you want to say in support of

10   your motion, Mr. Beck?

11            MR. BECK:  No, Your Honor.  I think we just

12   tried to beef it up a little.  I think last time it

13   was mostly oral.  And this time we wanted to put it

14   in writing to see if we could get a hit, or maybe a

15   bunt over to first base.

16            THE COURT:  Let me see if Mr. Burke talks

17   me out of it.

18            MR. BURKE:  Oh, no, I'm not going up there.

19   I think you were right the first time, and you're

20   right this time.

21            THE COURT:  Let me ask y'all, I know some

22   of you have talked to jurors and stuff the first

23   trial.  Did you get any feedback as to whether they

24   liked that stuff?  Didn't like it?  Any reaction?

25            MS. ARMIJO:  Your Honor, as I recall, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    jurors were very vocal about it, and they disliked
 2    it, and actually thought that it was not needed, and
 3    were very vocal about how they did not want to see
 4    it, and how it was not needed, and almost -- I think
 5    the tone was that they held it against the defense.
 6    So if they want to put it on, by all means, go ahead.
 7             THE COURT:  Well, anybody want to speak?
 8    Mr. Burke, did you want to speak on the issue?
 9             MR. BURKE:  No.  Your Honor, I think that
10    we'll decide amongst ourselves.
11             THE COURT:  Anybody else want to speak on
12    it?  Well, I think I'm going to leave it to the
13    defense.  If you want to put it on, you can put it
14    on.  It may be stretching robustness to some limits
15    there, but I'll deny the motion to keep it out, and
16    allow the defendants to decide whether they want to
17    put it in.
18             All right.  The next motion that I have up
19    was 1871, which I think we may have resolved.  But it
20    may have been more with the first trial defendants
21    than with the second.  I didn't -- I know when this
22    issue came up about Agent Acee's -- some of the
23    activities up in Vancouver -- when it came up, I
24    didn't think anything there was relevant.  The
25    defendants in the first trial didn't attempt to do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    anything with it.  Anybody plan to do anything with
 2    it on the second trial?  Is this motion basically
 3    opposed to keep out unrelated conduct?  Anybody want
 4    to speak to it?  Mr. Benjamin.
 5              MR. BENJAMIN:  I would assume if they open
 6    the door, or something like that -- I didn't
 7    necessarily agree with the statement that there
 8    was --
 9              THE COURT:  I'm doing okay.  If Ms. Bean is
10    hearing you, I'm all right.
11              MR. BENJAMIN:  There was -- I think it was
12    in their motion that they stated that they didn't see
13    any actions on the part of Agent Acee or something.
14    I disagree with what was in the motion.  But I don't
15    see how I could get it in, is probably the fair
16    statement.
17              THE COURT:  Okay.
18              MR. BENJAMIN:  But if I do, I will
19    approach.
20              THE COURT:  Okay.  All right.  Does
21    everybody agree with that?  Right at the moment,
22    we're not going to?  Mr. Burke?
23              MR. BURKE:  Yes, Your Honor, I agree.
24              THE COURT:  Okay.  At the present time,
25    we'll not go into unrelated conduct that's brought up
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    in the motion.  If somebody sees the Government has

2    opened the door, then before they'll try to get into

3    it with Mr. Acee in front of the jury, then they'll

4    approach the bench.  Does that take care of your

5    motion, Mr. Beck?

6              MR. BECK:  Yes, Your Honor.

7              THE COURT:  All right.  Then we'll go to

8    32.  I have been putting behind Tab 32 is everything

9    that's been rolling in on the James statements.  So I

10   have been reading them, and I am working on it.  I

11   would say that I'm right at the halfway point on my

12   chart.  I have continued to work on this case

13   throughout the three weeks that I could -- as much as

14   I could to try to close out some stuff in

15   Albuquerque.  And the only reason the charts are not

16   completed, is because I've been looking at some other

17   issues related to the evidentiary issues.  And I'll

18   try to be sharing those with you over the next day

19   and a half, so that before you leave here, I hope to

20   have -- I would love to have every chart handed to

21   you.  I don't know if that's going to be possible.

22   But I hope to have charts handed to you.  They may be

23   rough.  And I still may be working on them as we

24   start the trial.  But I'll try to hand you something

25   physically, so that you know what I'm thinking on all

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   the James statements, on all the statements against

2   interest, and then also some of the new statements

3   that have come up here in the last round of briefing

4   that we may be arguing a little bit later.  I've

5   given some thought to those.

6           So does anybody have anything else on what

7   I'm calling the James statements, this bundle of

8   additional briefing that's been coming in?

9           MR. CASTLE:  We have witnesses tomorrow.

10  That's it.

11          THE COURT:  Okay.  And those relate to the

12  statements against interest, not any more James

13  statements; correct?

14          MR. CASTLE:  That's true.  And I told Mr.

15  Castellano I'd consult with him and let him know the

16  gist of it.

17          THE COURT:  And you've got two more of

18  those you're raising issues with, Mr. Castle?

19          MR. CASTLE:  Actually three, Judge.  Josh

20  Mirka, Joseph Otero, and Leroy Lucero.

21          THE COURT:  Okay.  Unless somebody has

22  something on that bundle of briefing that I hope to

23  hand you something sooner rather than later, we'll

24  come back to that.

25          The next motion I had up was, I think, a

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492
BEAN & ASSOCIATES, Inc.                                            e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

1   motion that's now moot, or I denied it at the last

2   hearing.  And this was Mr. Sapien's motion to quash

3   the subpoena as to Fred Quintana.  So unless anybody

4   has anything, I think I'm just denying that motion,

5   because I think I effectively did that last time when

6   we had the hearing.

7           And then I understand the next motion is

8   1936, which was the motion that was an objection to

9   proposed courtroom seating arrangement.  I understood

10  that Ms. Wild had some conversations, negotiations

11  with Mr. Castle, and the current arrangement was come

12  up with.  Let me sort of see if I can put it on the

13  record.

14          To try to assist the jury in doing their

15  duty, which they will be advised throughout the trial

16  to do, is to treat each defendant individually.  I

17  think this was Mr. Castle's suggestion, or Ms. Wild,

18  but it came out of that, was we would color code the

19  tables.  So the Government got bunting on their table

20  as well.  But the defendants have different colors.

21  And think the colors were white and black.  I think

22  there might have been some hope that there could be

23  more colors, but I think this was all we could come

24  up with.  We've looked at them; we looked at them in

25  the first trial, we've looked at them today.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   Mr. Roberts, did that screen ever come on for you
2   this morning?  Did it ever come on?
3              MR. ROBERTS:  Yes, I believe it did.
4              THE COURT:  It did.  Okay.  And did it
5   create any problems from your standpoint?
6              MR. ROBERTS:  No, I don't believe so,
7   Judge.
8              THE COURT:  All right.  Now, the good thing
9   that we got that I did not expect to give you was
10  everybody has got a microphone.  And IT went to great
11  efforts to just scrounge around and find all this --
12  monitor for each one of you.  And I don't know where
13  they found the portals.  But if you see those guys,
14  thank them, because that was really more than I
15  thought we were going to be able to deliver.
16             So, in any case, I understand that this
17  objection has been withdrawn, Mr. Castle?
18             MR. CASTLE:  Yes, Your Honor.  I filed
19  1936.  My main objections were two-fold; one, that we
20  couldn't sit with our clients; number two, the
21  separation of the two rows.  Because the Court made
22  the efforts to take care of those two concerns, I
23  filed last night motion 2053 to withdraw my
24  objections under 1936.
25             THE COURT:  And the one other thing I think
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   we were able to do is, I think you'll be able to
 2   have -- and I see it today -- you'll have paralegals
 3   that will be able to stay here.  And Ms. Gilbert will
 4   be able to stay here.  And as soon as we get through
 5   with jury selection, I think you can have that inside
 6   of the well there.  So I think you'll be able to get
 7   some people in here.  And so I didn't know if we were
 8   going to be able to do that, too.  So I'm pleased
 9   that at least we made some progress on that.
10           MR. CASTLE:  Your Honor, the other thing --
11   this isn't really part of that motion -- but some of
12   the defendants have paralegals that can't sit up
13   here.  Are we going to be free to be able to move or
14   have to ask the Court's permission?
15           THE COURT:  No, you don't need to ask my
16   permission.  The one thing you might ask is, you
17   might ask the marshals if they have any concern.  But
18   they've been pretty good to the lawyers.  I think if
19   the defendants get up and move, we might have a
20   problem.  But I think they've been pretty good about
21   the lawyers.  But you might just ask Deputy
22   Mickendrow, when he's in here, if there's any problem
23   on that.  But from my standpoint, no problem all.
24           All right.  If there is nothing else on
25   that, we then will move to the motion to bifurcate
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Counts 4 and 5 from Counts 1 and 3 and 13 through 16.
 2    And as I understand it, this is a motion that
 3    Mr. Garcia has filed.  It's not unanimous among the
 4    defendants.  I think -- do both the Gallegos brothers
 5    oppose this one?  Okay.  I knew that Ms. Torraco and
 6    Mr. Roberts' client did.  I've certainly thought
 7    about it.  I went and looked at all the pictures that
 8    anybody had given me.  I -- you know, look, they're
 9    not pictures that anybody would like to have.  I
10    guess, having just gone through this trial, after
11    hearing all the evidence, I don't think that they're
12    any more inflammatory or a problem than what I think
13    we're going to hear, is almost daily, the witness of
14    the day testifying about two or three murders, and
15    talking about how they were accomplished, whether
16    they were accomplished by some strangulation or by
17    repeated stabbings, or by shots, or I know there are
18    other burned bodies in the 302s, that I've read
19    about.  I just don't think that it should drive what
20    we're trying to do here.  I think it would
21    probably -- especially given the Gallegos brothers'
22    objections, given the Government's objections, the
23    fact that the Government would have to order theirs
24    in a certain way, the fact that the jury would have
25    to deliberate twice -- I just don't think those
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    pictures rise to the level of causing anything of

2    that nature to do.  I'll certainly listen.  I know

3    that we talked about it some at the end of the

4    hearing, and it was one of the things that y'all

5    asked me to do, that if I did not schedule these

6    hearings, to concentrate on, so it was something that

7    I spent some time looking at, and grabbing the

8    pictures from a number of exhibits, and looking at

9    them in different ways.

10           But in any case, Mr. Benjamin, do you want

11   to argue this motion?  Do you want --

12           MR. BENJAMIN:  At this point in time, Your

13   Honor, I was just going to clarify that Joe Gallegos

14   is asking for Counts 4 and 5 to be severed.  But we

15   join the bifurcation.  I want out of the main group

16   with the Burns murder.

17           THE COURT:  Yeah, fair enough.  And I think

18   that was also Andrew Gallegos' position as well;

19   correct?  Looks like you're nodding affirmatively.

20           MS. TORRACO:  Yes.

21           THE COURT:  All right.  Mr. Castle, if you

22   want to argue the motion.

23           MR. CASTLE:  Your Honor, I argued it to

24   some extent last time.

25           THE COURT:  Right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           MR. CASTLE:  And I set forth what I
 2   considered my best arguments in the pleading.  So
 3   I'll give you my worst ones probably now.  It seems
 4   to me that the weight here is between prejudice --
 5   and I think there is some belief that there is going
 6   to be a danger of prejudice; the question is whether
 7   it's undue or too much, or whether the Court can cure
 8   that prejudice, versus inconvenience.  Because I
 9   don't think the Government really, in their response,
10   really said anything other than this is just not the
11   way we'd like to do it.  The jury would have to
12   deliberate twice.  But that's just a matter of
13   convenience, and they're really going to have to
14   deliberate on each of those counts likely separately
15   anyway.  So I'm not sure it's going to save any time
16   in deliberations.  But even if it did, I don't think
17   that should be the driving force.
18           The real question is, you know, is it fair?
19   Now, I think this Court had some concerns the last
20   time whether Counts 4 and 5 are even going to make it
21   past, you know, half time, essentially, because there
22   is a very tenuous relationship for federal
23   jurisdiction here.  And I think Mr. Benjamin has
24   argued it better than I will.  And if that happens,
25   and if they haven't established it, then we've just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    had a trial where we've taken at least a week, if not

2    more spreading all these gory pictures, and all these

3    horrible crime base information with -- spreading it

4    around with a brush that's going to be tainting all

5    of our clients.  Because it's not going to be

6    limited.

7            And my understanding is the Government is

8    offering not only against these individuals

9    themselves, but also as enterprise evidence.  So how

10   do we unring that bell?  If we go back -- if the

11   Court doesn't find jurisdiction, or that there has

12   been enough evidence of that, do we then say we know

13   we admitted all this as enterprise evidence, but now

14   jury, you're going to have to, after the fact, kind

15   of undo all that?

16           I guess the other alternative is don't --

17   give an instruction and say this is not enterprise

18   evidence against the other defendants.  And so it's

19   not admissible; you shouldn't consider it whatsoever

20   against these other defendants.  I'm not sure which

21   way the Government is going.  But I thought they were

22   saying all this evidence is also enterprise evidence.

23           So I think we all have, I guess, a dog in

24   this hunt with regards to federal jurisdiction.

25   Because if there is no federal jurisdiction on 4 and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    5, then it shouldn't be admissible against any of our

2    clients.

3              With that said, I understand that I've lost

4    this motion, so I think I made my record.

5              THE COURT:  All right.  Thank you, Mr.

6    Castle.

7              Anyone else?  Ms. Torraco, do you want to

8    speak on this?

9              MS. TORRACO:  Yes, please.  And I

10   understand, Your Honor, that you have already ruled.

11   But I would just like to briefly say a couple of

12   things.  If you were to sever Counts 4 and 5, and

13   everyone else in this room has heard you loud and

14   clear that that's not what you want to do, but if you

15   were, it solves the problem of what's happening with

16   Mr. Billy Blackburn and Scott Davidson and the issues

17   that they will then be reset, and you could do Counts

18   4 and 5 first.  Counts 4 and 5 will be significantly

19   a shorter trial than the entire trials together or

20   even just with the remaining five defendants, so it

21   would be with the remaining four defendants.  So I

22   just want to throw that out there.

23             The second thing is that, when I argued my

24   severance motion, one of the questions that the Court

25   had for the Government was:  Is Andrew Gallegos a

SANTA FE OFFICE                                                         MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    validated SNM member?  Because there were some

2    concerns that I had raised that he's not a validated

3    SNM member, and there isn't any evidence to show that

4    he is.  And at that point, it was represented by the

5    Government that he is a validated SNM member.  I've

6    looked through all the discovery.  The documents that

7    we have from the Department of Corrections and Bureau

8    of Prisons do not say that he is a validated SNM

9    member.

10         I did email Ms. Armijo, who was kind enough

11   to get back to me, and I told her, where is all this

12   evidence that you were talking about?  And I wasn't

13   playing dumb.  I really can't find it.  Where is all

14   this evidence?  She did direct me to a document that,

15   again, does not say what the Government represented

16   to the Court.  Because I remember that was one of

17   your concerns.

18         And then, finally, one of the other

19   concerns when I argued severance, was that this Court

20   was saying:  Okay, Ms. Torraco, if we sever Counts 4

21   and 5, then we still have to hear all that same

22   evidence about SNM is a prison gang, and they started

23   in the 1980s, and they gained power, and they're

24   violent, and this is how they give orders and da, da,

25   da.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              Well, Counts 4 and 5 happened outside
 2    prison, when both Gallegos brothers were not inside
 3    the pen.  And as far as I can tell there is no
 4    orders, there is no paperwork.  The Government's
 5    theory, the best that I can tell, Your Honor, is that
 6    since they're validated SNM members, and there is
 7    going to be all this evidence that they're SNM
 8    members -- which there is not -- therefore, anything
 9    they do -- it's like your mayor argument:  Well,
10    because they're SNM, and therefore, they supposedly
11    did this, which I assert there is insufficient
12    evidence that either Joe Gallegos or Andrew Gallegos
13    committed this murder, or participated in any way.
14    But nonetheless, for argument's sake, since they did
15    it, and since they're SNM members, therefore, it was
16    advancing the enterprise, kind of like your mayor
17    argument.  So therefore, you don't need, and the
18    Government doesn't need all this testimony about what
19    happens in jail and how the prison orders go down,
20    because this was something that happened outside.
21              So I know you've made your ruling.  I want
22    to keep planting the seed, because I do believe that
23    justice dictates having these two counts heard
24    separately.  We could go first.  It would resolve the
25    problems with Arturo Garcia's attorneys.  And it's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   not going to be anywhere near the magnitude of trial
 2   that it would be if we sit here.  We wouldn't even be
 3   here anywhere close to eight weeks.  So thank you for
 4   hearing me.
 5              THE COURT:  Well, you're not arguing for
 6   Mr. Castle's motion.  You're going back to your
 7   motion to sever; correct?
 8              MS. TORRACO:  Right.  Because our position
 9   on Mr. Castle's motion is that the correct decision
10   is to sever.
11              You know, the other thing -- and, you know,
12   I'm wondering how many people are going to get mad at
13   me in this room after I propose this, but maybe it
14   does need to be two juries.  And then that's the
15   bifurcation is the two juries; they can hear the
16   enterprise evidence, and then we move on to Counts 4
17   and 5.  The other jury takes a recess.  I don't know
18   that Counts 4 and 5 is going to take that long.
19              THE COURT:  Tell me, if you're toying with
20   that idea, why do you not like Mr. Castle's proposal
21   of bifurcation?
22              MS. TORRACO:  I don't see what it achieves.
23   So he -- and please, by all means correct me if I'm
24   wrong or come to the podium, but -- I'm sorry, Your
25   Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1              THE COURT:  Well, it doesn't necessarily

2     help you any.

3              MS. TORRACO:  No, not at all.

4              THE COURT:  How does it hurt you?  What is

5     it that you don't like about bifurcation?

6              MS. TORRACO:  I guess it doesn't do

7     anything for us.  I suppose you're right, we could

8     remain silent on it instead of opposing.

9              THE COURT:  So it's more that you feel like

10    it somewhat undercuts your motion to sever argument?

11             MS. TORRACO:  That could be one way of

12    saying it.  But I think you're right, in that it does

13    nothing for us.  So there is no reason -- there is no

14    benefit to us.  You're right.  It's interesting that

15    no one wants to be on the Adrian Burns murder case on

16    those particular counts.  It does nothing for us, but

17    it doesn't solve our problem that we believe we're

18    prejudiced by the remaining counts.

19             And I just want to check with co-counsel if

20    there is anything to add.  I have the strong, silent

21    type over here.

22             THE COURT:  You just don't want to be in

23    the case with the other three conspiracies?

24             MS. TORRACO:  Well -- and I don't think

25    that Counts 4 and 5 are really relevant to the other

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                  Albuquerque, NM 87102
(505) 989-4949                                                                                  (505) 843-9494
FAX (505) 843-9492                                                                       FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    counts.  There is the issue on the Gomez counts.

2    Other than that, everything else happens inside the

3    penitentiary.

4             So here -- we're sitting here to hear about

5    all these penitentiary murders.  And imagine if

6    you're on the jury, and you're hearing about this --

7             THE COURT:  But isn't about half the case

8    outside of the prison, about half in?

9             MS. TORRACO:  I don't think that's --

10            THE COURT:  Gomez and Burns?

11            MS. TORRACO:  No.  I'm sorry.

12            THE COURT:  Gomez and Burns.

13            MS. TORRACO:  Gomez and Burns.

14            THE COURT:  So there are three conspiracies

15   there, and then you've got two in the prison?

16            MS. TORRACO:  If you want to take Gomez and

17   Burns, that's better.  But I was sitting there

18   thinking about this the other day.  The jury is going

19   to sit there -- as a matter of fact, let me just back

20   up.  My very best friend called me the other day and

21   thanked me for being a lawyer on this case because

22   she just got out of jury duty.  She got a letter,

23   because she listed -- it said:  Do you know any

24   attorneys?  And she listed my name, and she thinks

25   that's what got her out of it.  And she said the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   thing that was the most -- when I was talking to her,
 2   is that she thought it was kind of okay because --
 3   she was really scared, but she said that at least
 4   it's a prison gang, and everything happens in prison.
 5   And I'm like, Well, the gentleman that I'm defending
 6   is accused of doing something outside prison.  And it
 7   scared her to think that the prison gang, and you're
 8   going to hear all these awful things that happened in
 9   prison, actually reaches outside the prison.  That's
10   going to scare a jury.  And that invokes an emotional
11   response to, Oh, my gosh, now I'm in danger.
12            THE COURT:  But how is that going to change
13   if we just tried, say, the Gallegos brothers together
14   with their counts on the Burns counts?  How is that
15   going to change?  The Government is going to sit over
16   there and explain it's a prison gang; they're going
17   to explain that there is going to be a bunch of these
18   witnesses again talking about what the gang does, and
19   the violence that it has to promote, how is that
20   going to change?
21            MS. TORRACO:  Because they're not going to
22   hear -- I would hope they're not going to hear some
23   of the very horrific details of murders that have
24   occurred in the penitentiary.  They don't go into the
25   same detail, and we don't get all those photos.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  So it's the detail that is a
 2    concern to you?
 3            MS. TORRACO:  Yes, I think so.
 4            THE COURT:  Because, if I understand what
 5    the Government is going to do, they're going to put
 6    on violence to show this is what the gang does,
 7    drugs -- they're going to put those on, whether they
 8    try one of you or seven of you.
 9            MS. TORRACO:  Right.  But then they're
10    going to have to tie what happens inside to what
11    happened in Burns.  We don't think they're going to
12    make that threshold.
13            THE COURT:  But that issue is whether we
14    have it in just a trial with the Gallegos brothers or
15    in this one, they've still got that problem, right?
16            MS. TORRACO:  Right.
17            THE COURT:  That's just a problem with
18    their case.
19            MS. TORRACO:  Right.  And Mr. Castle and
20    Mr. Benjamin's points are well taken, that there is a
21    huge jurisdictional issue here.  And we might end
22    up --
23            THE COURT:  Well, I've already ruled on the
24    jurisdictional.  I don't think there is a
25    jurisdictional issue.  And I thought I --
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1              MS. TORRACO:  You did.  But you know what,
 2     things might change at directed verdict.
 3              THE COURT:  Well, it's not going to be a
 4     jurisdictional issue.  It's a federal crime.  So I'm
 5     the only person that can try them.  So we've got
 6     jurisdiction here.  They may have a problem of proof
 7     that they can't prove an element of the crime.  But
 8     they've got to establish that this, you know, that
 9     this is connected or it's advancing the defendants'
10     interests, enhancing their status in the
11     organization.  And that's the only problem they're
12     trying to go on against the Gallegos brothers,
13     maintain or enhance.  And if they don't prove that --
14     but I don't think it's a jurisdictional issue.
15              MS. TORRACO:  Okay.  And you did say that
16     before.  I apologize.
17              But may I inquire through the Court how
18     long the Government thinks Counts 4 and 5 are going
19     to take?  I mean, is that just a week case -- I meant
20     W-E-E-K; I already know it's W-E-A-K, but I'm
21     wondering how long is that particular trial going to
22     take?
23              THE COURT:  Well, I'll ask them when they
24     get up.
25              MS. TORRACO:  Because that seems to me -- I
```



269

```
1   mean, I understand the bifurcation issue.  If we have
2   to go along with the bifurcation issue, of course, we
3   go along.  I mean, that's for this Court to decide
4   the bigger things.  But I just see it as an
5   opportunity to remind you -- which I know you've been
6   thinking about it -- but I'm trying to be a zealous
7   advocate here -- that severance really is a
8   reasonable solution.  It's a much shorter concise
9   trial.  It's a cleaner trial.  It solves the problem
10  of the issues that we've got with Arturo Garcia's
11  attorneys.
12           THE COURT:  How does it solve that one?
13           MS. TORRACO:  Because you would hear Counts
14  4 and 5 right away.  We would start on Monday.  And
15  they would be reset.  And they could start after
16  Counts 4 and 5 -- the Count 4 and 5 trial closes.
17  And that --
18           THE COURT:  The problem is I've got all the
19  Baca defendants saying they're not going to waive
20  their Speedy Trial Act rights anymore, and they want
21  to go on July 9.  And the Government wants to try
22  this half of DeLeon.  They didn't want me to
23  bifurcate the trial that I just did.  And so I'm
24  running out of weeks here.
25           MS. TORRACO:  I understand.  So after we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    find out how long the Government thinks the evidence

2    on Counts 4 and 5 take, let's say that the whole

3    trial, at the most -- I can't even begin to guess; I

4    would say two weeks.  But let's just see what they

5    say.  Then, after that, you're going to start the

6    remaining -- you would start the remaining

7    defendants.  Well, they're still going to be done

8    before July 9, because we've estimated six to eight

9    weeks for this trial.  It was eight for all seven of

10   us.  We were going to be done in the middle of May to

11   the end of May.  So you've got a whole four-week

12   buffer in there of June, which if we started Counts 4

13   and 5, that allows Mr. Blackburn and Mr. Davidson a

14   reprieve.  There are conflict issues there that

15   they're going to have to sort out.  It would give Mr.

16   Davidson time, which appears to be pretty critical,

17   with his issues.

18            THE COURT:  And why you go first rather

19   than Mr. Castle going first?

20            MS. TORRACO:  Well, I was thinking that, if

21   you sever, we go first because it allows Mr. Davidson

22   time with his wife, and to kind of solve that crisis.

23            The likelihood of any type of reversal on

24   appeal is certainly less with severance.  What we're

25   really talking about is all that evidence, having to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   go over and over and over the evidence that the
 2   Government has on the enterprise.  So at least that's
 3   what I think that I heard, is that you're concerned
 4   about, it's the same testimony on enterprise evidence
 5   against Counts 4 and, 5 as it is against the rest of
 6   the group.  But I don't think that it is as complete.
 7   I believe it's going to be shorter if you only tried
 8   4 and 5 first on the enterprise evidence, and the SNM
 9   Gang evidence and do Counts 4 and 5.  Then start
10   over.  And it's clean, it's safe.  You know, and it's
11   kind of like Mr. Castle, he doesn't want to be with
12   my counts; I don't want to be with his counts.  So
13   you actually are going to have a group of happy
14   criminal defense attorneys.  And that makes for a
15   good courtroom, Your Honor.  Anyway, I've taken up --
16   unless you have questions --
17            THE COURT:  That means y'all won't object
18   for eight weeks?
19            MS. TORRACO:  Well, if you try Counts 4 and
20   5 after my trial, I will be silent.  Thank you.
21            THE COURT:  Thank you, Ms. Torraco.  Any
22   other defendants want to speak on this motion?  It's
23   the motion to bifurcate.
24            All right.  Mr. Castellano, are you going
25   to take this?  I did notice in your motion -- or your
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
                                                              1-800-669-9492
PROFESSIONAL COURT                                    e-mail: info@litsupport.com
REPORTING SERVICE

1    response to Mr. Castle's motion you mostly said,

2    Judge, you've already decided the motion to sever.

3    But I think Mr. Castle is raising another possibility

4    of bifurcation.  What is the downside to it from the

5    Government's standpoint?

6              MR. CASTELLANO:  Well, the downside is

7    trying to figure out really how to divvy up the

8    Government's case.  And it really dictates how we

9    present our evidence.

10             THE COURT:  Is that the biggest problem for

11   you?

12             MR. CASTELLANO:  That's certainly a

13   problem.  The other problem --

14             THE COURT:  Tell me what the logistical

15   problems are.  Is it getting witnesses here?  And, I

16   guess, what is being envisioned -- and Mr. Castle can

17   correct me if I'm wrong, it relates somewhat to Ms.

18   Torraco's question -- let's say the last week of the

19   eight-week trial is the Burns -- alleged Burns

20   murder.  It's hard for you put all those witnesses

21   into one week?  Is that the logistical problem?

22             MR. CASTELLANO:  It may be logistical

23   problems there, or recalling witnesses who we called

24   previously in the case to revisit the jury for

25   purposes of now talking about the Burns homicide,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    because we have multiple witnesses who have

2    information about multiple defendants.  And so what

3    we'll be doing is basically rotating the same

4    witnesses through the trial a number of times.  So

5    it's inefficient in that way, which includes all the

6    transport problems and other problems.

7              But the other issue is the way the trial

8    looks.  Because the jury, in a sense, will be fooled

9    into thinking that once they finish deliberating the

10   first time, they're done.  And then it will be just

11   like on TV, we're going to say, well, wait, there is

12   more.  And we're going to present more evidence to

13   them when they think they're going home.  And so --

14             THE COURT:  Well, I don't relish that

15   moment.  But we have -- we did have that sort of

16   issue back between Booker and Blakely.  You remember

17   where Judge Black and I would send the jury back in

18   for sentencing enhancements.  And the jury would

19   think they were done and they would have to go back

20   in and then find weights, and was the gun in the

21   possession, you know, those things beyond a

22   reasonable doubt.  They had to find those.  So

23   between Blakely and Booker, we did that.  It wasn't

24   the worst thing in the world.  I always thought the

25   Supreme Court was a little bit untrusting of juries.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    They did their job and they handled it.  I didn't
 2    think it worked as badly as it sounds in theory.
 3            MR. CASTELLANO:  I would consider that an
 4    easy task compared to the jury deliberating on a
 5    whole other set of evidence and witnesses and a
 6    second set of deliberations.  So I understand a
 7    shorter deliberation on things related to the same
 8    defendants, and largely the same evidence.  But this
 9    is going to be different evidence, potentially
10    different witnesses, some of the same witnesses.  And
11    you and I had this discussion last trial about the
12    verdict form.  And I initially wanted multiple
13    verdict forms.  And you talked me out of the notion
14    of multiple verdict forms.  And I actually ended up
15    agreeing with you that we should have one form of
16    verdict.  And that's what the instructions refer to.
17    So in this case we're going to have multiple forms of
18    verdict to submit to the jury.
19            So even logistically it's just a strange
20    looking case.  And it really interferes with our
21    ability to put on the case the way we want to put on
22    our case.
23            So it certainly interferes with the
24    prosecution's presentation of evidence, and order of
25    evidence.  So I think that's another issue.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        And then, like I said, for a jury who sat

2    through as many weeks of trial as they have, not

3    knowing that they have another deliberation after

4    this deliberation, I think potentially prejudices the

5    Government, because they're going to be fatigued;

6    thinking they're going home, and now we're going to

7    present more evidence to them.  So there is certainly

8    the issue of prejudicing the Government, when they

9    just want to go home.  And at that point, they're

10   just going to make a decision.  And so I think that's

11   another issue on top of everything else.  I know we

12   call this bifurcation.  Really, it's a severance.

13        And the Court has specifically looked at

14   Counts 4 and 5 on at least two occasions, and held

15   that Counts 4 and 5 belong with the rest of the case.

16   And I believe that's the correct ruling.

17        The Court split this case up once already,

18   which meant you considered all of the evidence, all

19   of the counts, and divided the case the way you

20   thought was proper.  And Counts 4 and 5 were part of

21   that.  So, in essence, the Court has ruled on that.

22   And all this is is trying to cut it out.  And what I

23   highlighted in my response was that even the defense

24   motion refers to Trial 1 and Trial 2.  That's, in

25   essence, what this turns out to be.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                         Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                           FAX (505) 843-9492
                                                                                  1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1           So I think it unnecessarily complicates
 2     things, and affects our ability to present our case.
 3     And I think the Court, in essence, has considered
 4     these counts.
 5           THE COURT:  To get an answer from Ms.
 6     Torraco on her question, and I'll -- you know, the
 7     defendants can correct me in rebuttal -- but it seems
 8     to me they're just worried about that picture.
 9     That's about the thing they've advanced the most.
10     The sort of things around the death of Mr. Burns
11     himself, how long do you think that that's going to
12     take?  You're going to put a pathologist on?
13           MR. CASTELLANO:  Yes.
14           THE COURT:  You're probably going to
15     probably show the pictures.  But the death itself,
16     that aspect that seems to be the biggest concern, how
17     long is that going to take?
18           MR. CASTELLANO:  We're estimating just real
19     quick at the table, maybe five trial days.  I can't
20     speak for the defense in terms of their
21     cross-examination.  But it could take a week's worth
22     of trial on that whole set.  There are a number of
23     witnesses related to the Burns homicide.
24           And I mean, these are murders, they're all
25     murders; we have four of them.  I know Ms. Torraco
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    referred to the prison gang doing things in prison.
2    But the Court knows from Trial 1 we have at least
3    three cooperators who have at least two murders.  And
4    for two of them one is in prison, and the other is on
5    the streets.  So the Burns murder is not unique in
6    that way.  And the jury is going to see pictures of
7    each of the victims in this case.  None of them are
8    pretty.  What we see in Burns is probably the
9    aftermath of his death.  I think the report is going
10   to indicate that he was killed by the gunshot wound.
11   So luckily, I don't think the jury would have to
12   conclude he was burned to death.  I think he was
13   basically burned to destroy evidence.  So he was
14   killed by shooting; others were killed by
15   strangulation.  All of those will be pictures the
16   jury is going to have to look at, including possibly
17   autopsy photos.  And none of those are pretty.  So I
18   don't see this as particularly more heinous than any
19   of the other murders.  They're going to hear four
20   murders, and an attempted murder where someone is hit
21   over the head with a machete.  That's not a pretty
22   picture.
23            So there is nothing pretty about this
24   evidence.  And so I don't think it's unduly
25   prejudicial in that way.  Like I say, they're going
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   to hear about four charged murders, plus probably six
 2   other murders at least, by cooperators.  So they're
 3   going to hear plenty about it.
 4             THE COURT:  All right.  Anything else on
 5   this motion, Mr. Castellano?
 6             MR. CASTELLANO:  No, Your Honor.
 7             THE COURT:  Thank you, Mr. Castellano.  Why
 8   don't we do this:  I don't want to cut anybody short
 9   on this.  Why don't we take about a 15-minute break,
10   and then we'll work till about 5:30.  And so let's
11   try to get back in here in about 15 minutes.
12             All right.  We'll be in recess for about 15
13   minutes.
14             (The Court stood in recess.)
15             THE COURT:  Let's go back on the record.  I
16   think all the defendants have an attorney.  They're
17   trying on some suits.  Looking good.
18             All right.  I wasn't able to talk to
19   Ms. Wild during the prior break, but I did talk to
20   her this time.  She says that all -- she's verified
21   this with jury services -- all that anybody received
22   in the first trial was a sequencing of who was going
23   to come into the courtroom.  She cannot explain at
24   the present time why we had gaps in the seating
25   arrangement.  But whatever seating arrangement --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    this is what I understand, whatever seating
 2    arrangement was created for the first trial was
 3    created that morning.  Something must have happened
 4    to a few people on there.  So you will receive -- not
 5    today, because she can't get to it today -- but you
 6    will receive in the morning, I think, the sequencing.
 7    So you'll have -- that you'll create your own seating
 8    charts from that, if you want, or you'll get one on
 9    Monday morning.  I think they're computer generated,
10    is my memory.  So you'll receive one the same time I
11    receive mine.
12            And the reason I think it's computer
13    generated is because I don't think I had my law
14    clerks scrambling, like I have in Albuquerque, to
15    write them in.  So I think you're getting the same
16    thing you got in the first trial, and I think you're
17    getting all I can really give you.  So I'll keep you
18    posted on that.
19            Mr. Glazener will be here at 10:00.  But
20    he's told Ms. Bevel he's not going to consent to any
21    waiver of conflict.  So I think we're going to have
22    to start dealing with the reality of that.  I think
23    it's almost a waste of time to get him here, if
24    that's case.  Do y'all want me to call him, tell him
25    not to come, I can.  If you want to let him come here
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1   and see if anybody can deal with it?  I'll just leave
 2   well enough alone.
 3            MR. BECK:  I mean, if his client is not
 4   going to consent, he's not going to consent.  I think
 5   that it's probably a good idea that he and his client
 6   get in a room together.  And if, at 10:00 tomorrow
 7   morning here is as good a place as any, then I think
 8   that may benefit him.  But leave it up to him.
 9            THE COURT:  Okay.  Because earlier in the
10   day he was saying he didn't know.  Now he's saying he
11   will not consent.  So I don't know if there were
12   conversations in between.  But I don't have any
13   problem with him coming up, if you want to talk to
14   him.
15            MR. BLACKBURN:  Do I get to talk to him, is
16   that what you're saying?
17            THE COURT:  I'm not putting any
18   restrictions on you.
19            MS. ARMIJO:  Your Honor, can we go back
20   real quick to the jury list.
21            THE COURT:  Yeah.
22            MS. ARMIJO:  So are we still going to get
23   who the 80 are, and the sequence, like Number 1 is
24   John Smith?  We're just not going to get the seating
25   chart.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            THE COURT:  Yeah, you're not going to get a

2    seating chart, because they will not create the

3    seating chart until Monday morning when they know who

4    is here.  Tomorrow you will receive the order.  And

5    assuming that most citizens do their job, it will be

6    the seating chart.  If you want to create one, you

7    can.  But you'll have the sequencing.  So you will

8    know who is going to be the 18 in the jury box.

9    You'll know who is going to be right behind Mr. Burke

10   back there and running that way.  I don't have my

11   numbers.  In Albuquerque I can tell you how many

12   people sit in each row.  But I don't know this

13   courtroom well enough to do that.  So you'll be able

14   to do that.  And then on Monday morning we'll create

15   the seating chart, and it shouldn't have any gaps.

16   And the reason I think that's better is at this stage

17   of life, if they get too far back, I can't really see

18   them without making them stand up and things like

19   that.  And I don't mind making them stand up, and

20   sometimes they have to.

21            Did you have something, Mr. Cooper?

22            MR. COOPER:  I was just going to ask if

23   Juror No. 7 in the sequence fails to show up that

24   morning, will there be --

25            THE COURT:  I don't think we'll have a gap.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

```
 1            MR. COOPER:  Because there was gaps.
 2            THE COURT:  I know there was gaps.  And
 3   neither Ms. Wild nor I can explain why that was the
 4   case.  And we'll try to find out.  But that's my
 5   memory, too.  And she says, I know what you're going
 6   to ask me, and I don't have an answer for you.  So I
 7   quit asking.
 8            MR. COOPER:  Great, thank you.
 9            THE COURT:  Because I'm not going to get an
10   answer.
11            MR. COOPER:  I understand.
12            THE COURT:  I asked three times, and that's
13   my limit.
14            We received a letter from Mr. Fallick about
15   tomorrow.  Everybody saw the letter.  All right.
16   It's a letter saying that Mr. Lucero is going to show
17   up.  He's agreed to meet with counsel for the
18   Government.  He didn't get statutory immunity, and
19   but he's going to meet with them anyway.  So
20   Mr. Fallick is not going to be here.  And it seems
21   that if Mr. Lucero has agreed to testify without any
22   immunity, then that's not what Mr. Fallick advised
23   him to do.  And so Mr. Fallick doesn't see any reason
24   for him to be here.  He's got oral surgery tomorrow
25   anyway, so unless somebody thinks something needs to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    be done, I'll have Ms. Bevel file this motion, and
 2    we'll see Mr. Lucero tomorrow without Mr. Fallick
 3    here.
 4              MR. CASTLE:  Anytime a lawyer's mouth is in
 5    surgery, Your Honor, it's probably a good thing.
 6              THE COURT:  All right.  I think we were
 7    about to have rebuttal from the defendant on the
 8    motion to bifurcate.  So Mr. Castle, do you have
 9    anything further you want to say?
10              MR. CASTLE:  Your Honor, the defense
11    attorneys talked at the break.  And we're not aware
12    of any lay witness that is a spillover witness
13    between Counts 4 and 5 and the other counts.  There
14    might be a couple of FBI agents, I think.  The
15    Government has been given authority in the trial --
16    I'm not sure whether they've got authority in this
17    trial yet, but I know they got authority from the
18    Court in Trial 1 to call Agent Acee multiple times so
19    that he could talk about a particular crime base,
20    then move on, and then come back later.  So that that
21    works fine.  I don't see that it would be a problem.
22    So I'm not sure what they're talking about as far as
23    the spillover witnesses that might cause problems.
24    Because the witnesses that we believe are the lay
25    witnesses for Counts 4 and 5 are completely different
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    individuals.  So that's the only thing I would add.
2             THE COURT:  Okay.  Thank you, Mr. Castle.
3             Anyone else?  Ms. Torraco?
4             Well, I'll continue to give it some
5    thought, but I'm inclined to deny the motion.  I
6    could be wrong, but I just don't think that the
7    evidence that the defendants are trying so hard to
8    separate themselves from, the pictures of Mr. Burns,
9    are any more prejudicial, and I don't think they're
10   unfairly prejudicial, and there has been other
11   evidence that is going to be seen in the case.
12            I think the next motion was Mr. Davidson's
13   motion, so I think we've taken care of that one.
14            So the next one is what I think is on my
15   tab -- and I think Ms. Wild shared with you her
16   batting order -- it's number 39, which I think is the
17   Government's motion in limine to keep out the
18   magistrate judge's finding of no probable cause.  Mr.
19   Beck, Mr. Castellano, Ms. Armijo, who is arguing this
20   motion?
21            MS. ARMIJO:  May we have a moment, Your
22   Honor?
23            THE COURT:  You may.
24            MS. ARMIJO:  Mr. Castellano is the lucky
25   person.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. CASTELLANO:  The Court has reviewed the

2    motion.  We think that the finding by the state

3    magistrate judge is not relevant to these

4    proceedings.  It doesn't address any of the elements

5    of the offense.

6          THE COURT:  Well, you would probably agree

7    with me that, given the low bar that there is for

8    401, that it's probably relevant.  I mean, it's

9    got -- it meets the low bar.  I guess the question

10   that I have is whether we ought to have anybody

11   coming into this court and saying somebody made a

12   determination that there was probable cause or not

13   probable cause in a case.

14          I mean, we're going to have to tell the

15   jury to some degree that, you know, that there is an

16   indictment in this case.  But we're not going to let

17   the Government sit here and with each defendant say:

18   This defendant has already been found to be --

19   probable cause by a Grand Jury, or other witnesses

20   that come in, we're not going to talk a great deal

21   about what other people find.  I've always tended to

22   keep out judges and administrative agencies, and

23   things like that, because it seems to me the jury

24   ought to be the one sitting there and listening to

25   the evidence; not sit there and think:  Well, a Judge

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  found there was no probable cause, or finds that

2  there was probable cause.  That's not what we want

3  these jurors to be doing.

4           But it seems to me, at least on the 401, it

5  probably meets the very low threshold for being

6  relevant.  It's just not probably a good idea to

7  start having them thinking about a magistrate judge

8  somewhere making a no probable cause determination.

9  And you're going to sit there and say:  Well, they

10 didn't have this evidence.  You're going to say,

11 Well, you had that evidence.  And then we start

12 trying a magistrate judge's finding of probable

13 cause.  So I guess I was inclined to grant the

14 motion.  But I'm not sure I can quite spit out that

15 it's not relevant.

16           MR. CASTELLANO:  And I would ask the Court

17 to grant the motion, obviously.  I think it invades

18 the province of the jury.  I think it creates a trial

19 within the trial.

20           THE COURT:  Well, that's what the defense

21 lawyers want to do, they want to invade the province

22 of the jury.  They want to tell the jury what to do.

23           MR. CASTELLANO:  That's what I'm thinking.

24 I think that's right.  What does the jury do with a

25 magistrate judge's decision regarding probable cause?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   What does the jury know about those proceedings, what

2   witnesses or evidence was presented?  And those are

3   things that the jury will have to speculate about

4   because no one is going to be there to tell them

5   about what happened there, and why the judge ruled

6   the way he did.  So it really does insert collateral

7   matters.  And it causes jury confusion and a waste of

8   time.  So I think even if it's remotely relevant

9   under 401, I think 403 keeps it out, because now the

10  jury is being asked to rely on what another judge has

11  done.

12          And, of course, as the Court knows, the

13  investigation continued even after the finding of no

14  probable cause.  Even the State Police reports

15  indicate other work that they did following that,

16  including some statements that came up, and other

17  things that certainly were more relevant.

18          And the defense points to kind of this --

19  kind of -- I don't know if I'd call it a tug of war,

20  or punting the case back and forth between district

21  attorney's offices, and so there is another part of

22  the deliberative process that happened with the two

23  different district attorney's offices.  And I don't

24  know what evidence they could present related to

25  those deliberations by each of those offices.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        So I think, when we start getting into

2   these collateral matters, we're going to have just

3   explanations for why things went the way they did, as

4   this investigation progressed.

5            And in terms of relevance, I don't know

6   what it is relevant to, or what element it might

7   address.  That's the other question.  Because this

8   evidence may have been weak at one point, but it's

9   gotten stronger since, once again, doesn't help the

10  jury.  Because, as the Court noted, all we're going

11  to say is:  That's what they had then and this is

12  what we have now, so don't worry about what happened

13  with the magistrate judge, and don't worry about what

14  you don't know about, because there is no indication

15  of what happened during those proceedings.  So at

16  that point it just causes speculation and waste of

17  time.  So I think, even if 401 covered it, I think

18  403 keeps it out.

19            THE COURT:  All right.  Thank you, Mr.

20  Castellano.

21            MR. CASTELLANO:  Thank you, Your Honor.

22            THE COURT:  Mr. Benjamin.

23            MR. BENJAMIN:  Your Honor, I don't think

24  that the issues the Government is attempting to

25  create with this order apply.  What the no probable

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   cause order -- as I said in my response, is my

2   attempt to create a substitute for testimony that was

3   destroyed.  And I think that the no probable cause

4   order is the only, and probably the strongest way to

5   address that.

6          I think two officers -- I attached to the

7   response an email from the district attorney talking

8   about preparing the pathologist to testify.  I think

9   it flies in the face of reason to assume that this

10  wasn't a robust hearing.  And to then assume that we

11  don't know what happened doesn't make sense.

12         So I don't have what I believe is probably

13  Giglio material from the officers.  I think the

14  officers said something that, quite frankly, flew in

15  the face of the magistrate's experience, or the

16  evidence.  And he threw the case.  And I think he

17  threw the case, knowing full well that in the State

18  of New Mexico, if the State wanted to, they could

19  come back and file an indictment.  So I don't think

20  that this invades the province of the jury.  What I

21  think this does is this informs the jury about issues

22  that have been destroyed or not preserved.

23         And also, I think it's very relevant to the

24  continuing argument that I've made, and the Court

25  addressed in its order in 1950.  I am going to have

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    to convince a jury that, just because there is a
 2    body, somebody should go to jail doesn't apply.
 3    That's what I learned I think the first day of my
 4    criminal law class in law school.  And juries are
 5    going to latch on to that.  This is a technical idea.
 6    And so the technical part of that idea can be
 7    explained much better as I articulated in the
 8    response:  Murder plus one element.
 9            And so the jury is going to be forced --
10    and I think this is a way to illustrate to the jury
11    that murder in New Mexico is what was presented and
12    what wasn't there.
13            Now, if they've got these cooperators --
14    which they don't have, they've got Jason Van
15    Veghel -- then that information is what they need to
16    examine to make the next leap to whether this
17    indictment in this case is a basis for a conviction
18    of either conspiracy or the murder of Adrian Burns.
19    And so I am relying on the no probable cause order
20    mainly as a cure for the lack of transcripts to
21    impeach the officers who testified or the
22    pathologist.  And I don't have that.
23            I don't think the -- I think Agent Madrid
24    is probably going to be fair game to ask her whether
25    she was -- you know, when she's investigated the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    case, what progress she's made.  I'm going to ask her

2    about the two different district attorneys.  And I

3    think she gets to tell me that, no, I believed what

4    it was; they made a decision not to do it; these

5    individuals told me that they had it under control,

6    and this is what is different.  That's their

7    presentation.  I think I get to counter that, though,

8    with my presentation, which is this is what murder

9    plus the RICO element needs to go.  And so they need

10   to be able to draw a distinction.  And I think the no

11   probable cause order helps me draw that distinction.

12          I think that, in talking with several

13   people, and somebody smarter than me suggested, I

14   think this is also admissible as an adjudicated fact

15   under judicial notice.  The jury can choose to take

16   judicial notice or not notice of this.  And I think

17   there is a curative instruction that, if the

18   Government is worried about this coming in and

19   tromping something, the Court could say:  This is

20   simply a process in normal procedure.  But it can

21   give what is essentially, and what my basis is a

22   curative instruction, because this is the cure for

23   the destruction of the officer's -- as I keep coming

24   back to -- I think what should be disclosed as Giglio

25   testimony.  But I can't prove that because I don't

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   have the transcripts.

 2          And so the attachments to the motion, I

 3   hope lay out that what we're dealing with is a weak

 4   murder that then has to rely on, as we heard two

 5   weeks ago, the drug debt.  And the drug debt has to

 6   make this jump in assumption to the murder, and it's

 7   part of the RICO elements.

 8          THE COURT:  Thank you, Mr. Benjamin.

 9   Anybody else?  Ms. Torraco?

10          MS. TORRACO:  Yes, Your Honor.

11          Your Honor, I did file a response to this

12   motion.  It's Document 2066.  And I filed it just a

13   little bit before noon today, so I apologize to the

14   Court that it wasn't filed earlier.

15          THE COURT:  I read it.

16          MS. TORRACO:  Wow.  Okay.

17          And so I just want to add a little bit to

18   what -- instead of just saying ditto to what Mr.

19   Benjamin just said, I just want to add a little bit.

20   What happened is that when a court -- and I have a

21   bad habit of calling it a no bill, but when the

22   magistrate court decides not to bind over, they

23   destroy those tapes within 90 days.  If the

24   magistrate judge binds over, which typically -- it's

25   kind of the joke in state court, because if you're
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    before a magistrate court judge on a serious charge,

2    of course they're going to bind over, because they

3    don't want to be the one that has let the bad guy go.

4    So this was an unusual situation.

5             Nonetheless, if the judge had bound over;

6    found probable cause, bound the case to district

7    court, those tapes are preserved forever.  And it

8    typically just is tapes.  We don't typically have a

9    court reporter in the magistrate courts, especially

10   in the outlying areas.  So there is audiotapes or

11   CDs.

12            Well, clearly, these CDs were not preserved

13   by anyone.  We did a request of the district

14   attorney's office.  There has been communications

15   with the U.S. Attorney.  These tapes -- or even the

16   transcripts have not been preserved at all.  So what

17   we have is an issue of lost or destroyed evidence.

18   And it wasn't the police that lost or destroyed the

19   evidence.  I tried to cite to some case law, but the

20   fact is it's the courts that lost or destroyed

21   evidence, and it puts everyone in kind of a

22   precarious position.

23            However, there had to be exculpatory

24   evidence that was presented that day.  That's common

25   sense.  Because, otherwise, there would have been a

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   bind over.  So, therefore, the defense has lost
 2   valuable testimony because for some reason this
 3   magistrate court judge didn't bind over a very
 4   serious, very gruesome, really terrifying homicide
 5   that happened in that small community.  So we've lost
 6   evidence.  And based on the fact that we have -- that
 7   the defense have lost what has to be exculpatory
 8   evidence, we should have the right to question about
 9   it when the witnesses take the stand:  Did you
10   testify at the preliminary hearing in magistrate
11   court?  Isn't it true that you said this?  I
12   believe -- I have reason to believe that there were
13   other suspects that were mentioned at that particular
14   hearing.  There was evidence about that.
15          So regardless of whether or not the actual
16   document comes in -- although I agree with Mr.
17   Benjamin that it should -- but this is an issue that
18   is important to the defense to explore -- maybe
19   explore isn't the right word -- but it's important
20   for the defense to bring out the problems that
21   happened because:  Have people changed their mind?
22   Are their memories different than they were back in
23   the day, when there was a no bill?  So those are
24   important things to bring out in our defense.
25          And I believe that's all.  Thank you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  All right.  Thank you, Ms.
 2    Torraco.  Any other defendant want to speak on this
 3    motion?
 4              All right.  Mr. Castellano.
 5              MR. CASTELLANO:  Just a few points, Your
 6    Honor.  One is that, really, they're looking for a
 7    witness to be a conduit for hearsay because that
 8    information from the Court and that document itself
 9    are going to be hearsay.  And the Court's already
10    ruled under similar circumstances, for example,
11    experts, that the expert can't just be a conduit of
12    hearsay, when he or she testifies about what
13    confidential informants told him.  And that's, in
14    essence, what any witness would be; they would be a
15    conduit.
16              And what they're seeking is a substitution
17    for hearsay testimony.  They want whatever testimony
18    was presented before the magistrate judge to be
19    summarized by one finding.  And that one finding
20    itself can't be a substitute for all the things that
21    were said before the magistrate judge.
22              And the third is that really Mr. Benjamin
23    is seeking a remedy when the Government didn't
24    destroy the evidence.  He's saying they should be a
25    substitute for this destroyed evidence.  But the
```



SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                                              Albuquerque, NM 87102
(505) 989-4949                                                                            (505) 843-9494
FAX (505) 843-9492                                                                FAX (505) 843-9492
                                                                                          1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                  e-mail: info@litsupport.com

 1    Court's already ruled that that evidence wasn't in

 2    our possession.  And so there is really no remedy for

 3    the Court to grant.  The Court, in essence, has said

 4    there is no remedy because there was no violation.

 5    But he, at this point, seems to be seeking a remedy

 6    for what happened there.

 7            I only heard this from Ms. Armijo, in terms

 8    of other problems that are created by introducing

 9    this evidence.  But apparently, the New Mexico State

10    Police had investigated that judge's wife, and he

11    hated the New Mexico State Police.  So, I mean, what

12    happens is we just go back and forth with evidence

13    related to what happened before the magistrate judge,

14    why the magistrate judge may have had a motive not to

15    find probable cause, the fact that the New Mexico

16    State Police had investigated this judge's wife.  And

17    all these collateral matters will come out before the

18    jury, when there is no need to do it.  It doesn't

19    help the case in any way.  It doesn't address any

20    elements.  And it just wastes the jury's time, and

21    creates confusion.  So I think, given all those

22    reasons, there is just no reason for this evidence to

23    come in.

24            THE COURT:  Mr. Benjamin raised this issue

25    of adjudicative fact that the Court could take

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                            1-800-669-9492



1    judicial notice of.  I'm not sure that I saw that in

2    the briefing, so it must be new.  Any thoughts on it?

3              MR. CASTELLANO:  It puts us in the same

4    position we are now.  It still injects things before

5    the jury that they shouldn't hear, and that are

6    irrelevant.

7              For example, the jury is going to be

8    instructed on a reasonable doubt standard, and

9    they're going to be hearing about a probable cause

10   standard before a state magistrate judge.  What are

11   they going to do with that, and what are they

12   supposed to conclude after they hear a different

13   standard before a different judge in a court, and

14   when they don't know what was presented to that

15   judge?  So all it does is cause them to speculate.

16             THE COURT:  I think I asked this question

17   the last time we looked at this issue.  Is Jim

18   Navarro -- is he an attorney?

19             MR. CASTELLANO:  I don't know if he is.  I

20   can tell the Court that outside of Albuquerque and

21   Dona Ana County, the only requirement for a

22   magistrate judge is a high school diploma or a GED.

23   So I can talk to the Court generally about

24   requirements for state magistrate judges.  But I

25   don't know about that judge specifically.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  I don't see a Jim Navarro in
 2    the bar directory.
 3              MR. BENJAMIN:  N-A-V-A-R-R-O, I believe is
 4    the spelling.  I'm looking on my directory right now.
 5              THE COURT:  I see three Navarros.  One is
 6    in Biloxi, Mississippi.  One is in Albuquerque and,
 7    then one is -- that's Amanda, that's a woman, and
 8    then David William Navarro is in San Antonio, Texas.
 9    So is he still on the bench?
10              MR. BENJAMIN:  Your Honor, I'm doing things
11    from memory.  That's a bad habit.  It's Jim Naranjo
12    as in orange, N-A-R-A-N-J-O.
13              THE COURT:  Oh, it's Naranjo?
14              MR. BENJAMIN:  Yes, Your Honor.
15              THE COURT:  Okay.  I'm looking at your
16    response.  You spell it as Navarro.  Do you think
17    it's Naranjo?
18              MR. BENJAMIN:  I have an order that says it
19    is Naranjo.
20              MR. BLACKBURN:  Judge, almost all of the
21    magistrates in Los Lunas and Belen are not lawyers.
22              MR. LAHANN:  Your Honor, I know Mr. Naranjo
23    personally.  He was a sheriff's' deputy when I first
24    met him in Socorro in '91.  He's never been an
25    attorney.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  There is only one Naranjo

2    that's a member of the bar, and his name is Benny

3    Naranjo.

4          All right.  Anything else?  Mr. Castellano.

5          MR. CASTELLANO:  I'm just not convinced

6    that even judicial notice covers these facts, looking

7    at the rule.

8          THE COURT:  Well, I guess the way I'd

9    analyze it is, even if you take judicial notice of a

10   fact, that's a procedural way of getting evidence in.

11   But it still doesn't solve whether it's admissible

12   evidence for some other reason, such as 401, 403, or

13   something like that.  So I'm not sure that the

14   judicial notice solves any of the problems that I'm

15   wrestling with.

16         All right.  Anything else, Mr. Castellano?

17         MR. CASTELLANO:  No, Your Honor.

18         THE COURT:  Well, I think I'm going to

19   grant Government's motion to keep it out.  I just --

20   I'm not prepared to say that it's not relevant.  But

21   do I think it's inadmissible.  I think the low bar

22   that 401 puts in probably makes it admissible.

23   That's the reason we're concerned about it.  I think

24   it makes it less likely that the Gallegos brothers

25   killed Mr. Burns.

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1          But I think that when the jury trusts the

2    judgment of another fact finder instead of forming

3    its own judgment based on the evidence presented, it

4    employs an improper -- and I think what I'm concerned

5    here is they may make it -- defer their decision or

6    not make it for the right reason.  Anytime we have

7    charging decisions and things of that nature, we have

8    to be careful, the Supreme Court said, in United

9    States v. Young, that the prosecutor is vouching for

10   the credibility of witnesses in expressing his

11   personal opinion concerning the guilt of the accused

12   poses two dangers.  Such comments can convey the

13   impression that evidence not presented to the jury,

14   but known to the prosecutor, supports the charges

15   against the defendant, can thus jeopardize the

16   defendant's right to be tried solely on the basis of

17   the evidence presented to the jury.  And the

18   prosecutor's opinion carries with it the imprimatur

19   of the Government, and may induce the jury to trust

20   the Government's judgment rather than its own view of

21   the evidence.  I think we get into a similar

22   situation here with what they would be doing with

23   Judge Naranjo's.

24          I said in a case one time that the Court

25   would be concerned that the jury would decide that

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                        1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

1    DeSantis disabled, not upon its own judgment and

2    understanding of the evidence, but on the fact that

3    an ostensibly smart person looked at some evidence,

4    quite possibly evidence that is not presented to the

5    jury, and came to that conclusion.  And thus, the

6    danger that the jury will defer to Judge Naranjo's

7    probable cause determination is a danger of unfair

8    prejudice.

9              One thing I'm concerned about is I think

10   we've determined that there is no way for the jury to

11   determine what evidence was presented to Judge

12   Naranjo.  So the jury would need to evaluate the

13   resulting probable cause determination in the

14   abstract.  And conducting such an evaluation requires

15   knowledge regarding the intricacies of New Mexico

16   criminal practice and procedure and the

17   qualifications of New Mexico magistrate judges.  I

18   had to ask questions, I had to be educated about

19   things I didn't know about in New Mexico procedure as

20   a result of this no probable cause determination.

21   And educating the jury on those matters threatens to

22   turn a trial into a law school seminar, which would

23   waste time and potentially confuse the issues.

24              In the briefing there was also some

25   argument of collateral estoppel.  That I was, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   think, in Mr. Benjamin's response.  I don't think
 2   collateral estoppel would apply against the United
 3   States, because it wasn't a party to the state court
 4   proceedings.  And I've already determined the United
 5   States had no obligation to preserve the evidence
 6   presented to June Naranjo.
 7          And there is nothing that's been presented
 8   that indicates the United States ever possessed that
 9   evidence.  And even if it did, we'd have to go
10   through the Trombetta situation.  But I don't think
11   we've got the basis for doing that.  So I'll grant
12   the motion.  I'll keep the probable cause
13   determination out.
14          Ms. Torraco.
15          MS. TORRACO:  May I ask a question of the
16   Court?
17          THE COURT:  You may.
18          MS. TORRACO:  I understand that the Court's
19   ruling is that the actual probable cause
20   determination is not admissible.  However, the
21   defense is still strapped with the problem that there
22   was testimony, and for some reason that testimony,
23   for whatever reason, didn't rise to the level of a
24   probable cause finding.  So it seems to me that we
25   should be able to still talk about the hearing, talk
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    about what these people testified to previously,

2    although we don't have their actual testimony to

3    impeach them, but based on whatever knowledge that we

4    have about what was said, without actually eliciting

5    the actual ultimate finding by the magistrate court

6    judge.  And I just would like a clarification,

7    because that seems to help us kind of remedy for the

8    loss.

9            THE COURT:  Well, I'm not circumscribing

10    the defendants' ability to impeach any witnesses

11    here.

12            MS. TORRACO:  And we can still go into the

13    hearing, then, without bringing out the actual

14    finding?  That's what I thought I heard.

15            THE COURT:  Well, I guess I don't rule it

16    out.  But I guess I don't see how you could impeach

17    somebody with evidence you don't have.

18            MS. TORRACO:  I might.

19            THE COURT:  How do you impeach -- I guess

20    if you put on the state police officer and say:

21    Didn't you say at the trial such-and-such.  You don't

22    have any good faith basis for asking that question,

23    do you?  Unless you've got something I don't know

24    about.

25            MS. TORRACO:  I'm not necessarily



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    suggesting that it's impeachment.
2            THE COURT:  Okay.
3            MS. TORRACO:  But I'm just asking:  Can we
4    go into any evidence that might have come out at the
5    hearing because there is people that are a part of
6    trial who were at the hearing, and there is witnesses
7    that are going to be called who were at the hearing.
8    So can we bring out evidence that -- things that
9    occurred at the hearing, and just not bring out
10   ultimate finding?
11           THE COURT:  Yeah, I guess so.
12           MS. TORRACO:  Okay.
13           THE COURT:  I guess in an abstract -- I'm
14   trying to think how you would do that.  I once had a
15   case where, like you said, everything was destroyed.
16   And we had to call the magistrate judge, and he had
17   to sit over here and say what occurred.  But I can't
18   remember -- I don't remember if it was his ruling or
19   what it was.  But we didn't have any evidence of it,
20   so he had to be called.  So I guess the answer is
21   yes.
22           MS. TORRACO:  Okay.  Thank you very much.
23           THE COURT:  All right.  Okay.  That takes
24   care of that motion.
25           I think the next motion is -- I think that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

305

```
 1    was 39; I think the next one is 40.  This is the
 2    motion in limine to admit the out-of-court statements
 3    made by Mr. Burns.  I think the statements that he's
 4    going to go to Mr. Gallegoses' house and collect --
 5    did he say collect money, and then sell heroin?  That
 6    sounds like 803(3) evidence to me.  So I'd be
 7    inclined to grant this motion as a then existing
 8    state of mind, particularly that it shows his plan.
 9              Mr. Castellano, are you going to argue this
10    motion?  Ms. Armijo?
11              MS. ARMIJO:  Your Honor, I think that's
12    correct.  I think it does exactly that.  It shows his
13    then existing state of mind.  And then he does
14    eventually go to the Gallegoses' house, is what the
15    United States' evidence would show.  But we also know
16    that it's verified based on statements that the
17    defendants actually made to police.
18              So we would be seeking it under 803(3).
19    It's also a statement against interests, technically,
20    because he is talking about drug activity that he's
21    going to be doing.  So it also would come in under
22    804(b)(3).
23              THE COURT:  I'd have to think about that
24    last one, but okay.
25              MS. ARMIJO:  I'm just suggesting that it
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    would potentially come in under two different

2    theories, Your Honor.

3              THE COURT:  Okay.

4              MS. ARMIJO:  Thank you.

5              THE COURT:  All right.  Thank you, Ms.

6    Armijo.

7              Mr. Benjamin, I think you filed the

8    response that I read, or was it Ms. Torraco?

9              MR. BENJAMIN:  I think it was Ms. Torraco.

10             THE COURT:  Either one of you.  Do you want

11   to go first?

12             MS. TORRACO:  Mr. Benjamin will go first.

13             MR. BENJAMIN:  Your Honor, I don't see that

14   it's a then existing state of mind, because the time

15   that's outlined allows several other possibilities.

16   And the defendants, I believe, will present -- or at

17   least Joe Gallegos -- will present that that timeline

18   is not as concrete as the Government expects it to

19   be.  And so --

20             THE COURT:  What's not as concrete?  His

21   statement?

22             MR. BENJAMIN:  Well, no.  And I'll be

23   honest, Your Honor, in that motion in limine, I think

24   it was more of a narrative than an actual statement.

25   So that would be my first request, if there was an

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                              1-800-669-9492
                                                 e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   actual statement, other than kind of the idea that he
 2   was going to Joe's house to collect.  Because that
 3   doesn't necessarily appear anywhere.  So I understand
 4   what they're getting at substantively, but I don't
 5   know what the actual statement that's being admitted.
 6           THE COURT:  Well, I thought -- let's see, I
 7   thought it was Amber Sutton's -- they said they had a
 8   statement from her, that that's what he said.  Now, I
 9   don't have any 302s or anything attached to either
10   the motion or the response.  So I'm just relying upon
11   the assertions in the motion.
12           MR. BENJAMIN:  It's been a generalized idea
13   is my problem, Your Honor.
14           THE COURT:  Okay.
15           MR. BENJAMIN:  Does the Court understand
16   what I'm getting at?  I mean, it's during the course
17   of the investigation, you heard multiple times pop up
18   that Burns was going over there to collect money.
19   But it just doesn't ever seem to actually materialize
20   as:  This is what he told me, which would be my
21   first -- and I think their first hurdle that they
22   have to cross, is to proffer an actual statement.
23           The second, and I think more important
24   issue, is the Government is reaching to get in
25   evidence that it has better modes of getting in.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    There is a witness, Daniel Orndorf, Sleepy, who is

 2    going to say that Burns was over there.  The Court's

 3    already ruled on Mr. Joe Gallegos' statement; that's

 4    going to come in to say that he was over there.  And

 5    so I think it's more prejudicial than probative to

 6    admit an idea than an actual statement.

 7              THE COURT:  All right.  I understand the

 8    distinction.  I'll probe with the Government and see

 9    if there is a statement here.

10              MR. BENJAMIN:  Thank you, Your Honor.

11              THE COURT:  Thank you, Mr. Benjamin.

12              Ms. Torraco, you did file the response?

13              MS. TORRACO:  Yes, I did, Your Honor.  And

14    I'll be brief.

15              Mr. Benjamin and I did discuss at length

16    the fact that we couldn't really identify a

17    statement.  There is a narrative in there.

18              THE COURT:  Not any 302s or anything?

19              MS. TORRACO:  No.  And I think that what we

20    have been offered is the gist of it, which is that he

21    said that he stated that he was going to go over to

22    the Gallegos home, and that they had owed him money.

23              I also want to bring to the Court's

24    attention that at the motion hearing on March 14, the

25    Government also at that point represented that they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   were going to admit other statements from Adrian
 2   Burns, what he had told Dan Orndorf about the
 3   Gallegos -- I'm not really sure if it was Joe or Joe
 4   and Andrew, or if it was the Gallegos brothers, but
 5   that they had owed him money.  Adrian Burns told Dan
 6   Orndorf, paragraph 10 of my motion, that the
 7   Gallegos -- someone in the Gallegos family owed them
 8   money, and that Dan Orndorf shouldn't do business
 9   with him anymore.  And that was a representation at
10   the motion hearing on March 14.
11            The problem that I have with the exception
12   of the then existing mental statement is, first of
13   all, it has to first -- all of the hearsay exceptions
14   have to first cross the threshold of are they
15   reliable?
16            THE COURT:  Let me do this -- I don't want
17   to rush you and I want to hear what you have to say.
18   Why don't we shut her down for today.  That way I
19   won't rush you this evening, and give the Government
20   an opportunity to respond.
21            MS. TORRACO:  Thank you.
22            THE COURT:  Tomorrow we need to find some
23   time -- Ms. Armijo I think reminded me I didn't
24   finish the pretrial conference.  There are a few
25   things.  One of the things I need to ask you about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    tomorrow, for some reason I didn't ask how long your
 2    closings were going to last.  So you can be thinking
 3    about that overnight, so I can kind of begin to
 4    schedule that.
 5              I also am not sure that I have -- we have
 6    talked about a statement of the case, and I just
 7    thumbed through the materials, so I don't think there
 8    is a statement of the case.  So it may be that we
 9    need to have y'all prepare one, if you haven't
10    prepared one.  I usually put the burden on the
11    Government.  Remember, don't kill yourselves on this.
12    It's just simply to get them talking about if they
13    know anything about this case, so we don't have to
14    state every position in it.  But anyway, we'll need
15    to find some time to do that.
16              Here is the notebook that Jury Services has
17    gotten.  Is that a winner, Ms. Armijo?
18              MS. ARMIJO:  Yes, Your Honor.
19              MS. HARBOUR-VALDEZ:  Yes, Your Honor.
20              THE COURT:  Everybody comfortable with it?
21    So we'll order 18 of those.  Maybe a few extra, if
22    they're big notetakers.
23              MS. ARMIJO:  I would say probably add some
24    extras.
25              THE COURT:  All right.  I'll do that.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     they can get more pages in there if you like a bigger

2     one.

3              All right.  Y'all have a good evening.

4     We'll see y'all tomorrow.  Appreciate your hard work.

5              (The Court stood in recess.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on April 12, 2018.

15

16

17

18   _____
     Jennifer Bean, FAPR, RMR-RDR-CCR
19   Certified Realtime Reporter
     United States Court Reporter
20   NM CCR #94
     333 Lomas, Northwest
21   Albuquerque, New Mexico 87102
     Phone:   (505) 348-2283
22   Fax:     (505) 843-9492

23

24

25

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                       (505) 843-9494
FAX (505) 843-9492                                                               FAX (505) 843-9492
                                                                                   1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                                          e-mail: info@litsupport.com