# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                      No. CR 15-4268 JB

ANGEL DELEON, JOE LAWRENCE
GALLEGOS, EDWARD TROUP, a.k.a.
"Huero Troup," LEONARD LUJAN,
BILLY GARCIA, a.k.a. "Wild Bill,"
EUGENE MARTINEZ, a.k.a. "Little
Guero," ALLEN PATTERSON,
CHRISTOPHER CHAVEZ, a.k.a. "Critter,"
JAVIER ALONSO, a.k.a. "Wineo,"
ARTURO ARNULFO GARCIA, a.k.a.
"Shotgun," BENJAMIN CLARK, a.k.a.
"Cyclone," RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper,"
JERRY MONTOYA, a.k.a. "Boxer,"
MARIO RODRIGUEZ, a.k.a. "Blue,"
TIMOTHY MARTINEZ, a.k.a. "Red,"
MAURICIO VARELA, a.k.a. "Archie,"
a.k.a. "Hog Nuts," DANIEL Sanchez, a.k.a.
"Dan Dan," GERALD ARCHULETA, a.k.a.
"Styx," a.k.a. "Grandma," CONRAD
VILLEGAS, a.k.a. "Chitmon," ANTHONY
RAY BACA, a.k.a. "Pup," ROBERT
MARTINEZ, a.k.a. "Baby Rob," ROY
PAUL MARTINEZ, a.k.a. "Shadow,"
CHRISTOPHER GARCIA, CARLOS
HERRERA, a.k.a. "Lazy," RUDY PEREZ,
a.k.a. "Ru Dog," ANDREW GALLEGOS,
a.k.a. "Smiley," SANTOS GONZALEZ,
PAUL RIVERA, SHAUNA GUTIERREZ,
and BRANDY RODRIGUEZ,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Restricted Motion to Obtain Physical and Mental Health Records, filed March 27, 2018 (Doc. 1985)("Health Records Motion"); and

(ii) the Motion in Opposition to Disclosure of the Defendant's Redacted Mental and Physical Health Records to Third Party Co-Defendants, filed April 25, 2018 (Doc. 2161)("Motion in Opposition"). The primary issue is whether several cooperating witnesses' health records, which the New Mexico Corrections Department ("NMCD") maintains, are in Plaintiff United States of America's "possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). The Court concludes that federal regulations restricting the NMCD's ability to share those health records with the United States mean that the United States does not possess those records notwithstanding the NMCD's close cooperation with the United States in this case. Consequently, the Court denies the Health Records Motion and grants the Motion in Opposition.

## PROCEDURAL BACKGROUND

In the Health Records Motion, Defendant Edward Troup and Defendant Billy Garcia ask the Court to order the United States "to disclose the New Mexico Corrections Department's physical and mental health records" of thirteen of its witnesses. Health Records Motion at 1. Troup and B. Garcia argue that the United States must disclose its witnesses' health records under rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, because those records are "'material to preparing the defense,'" and are in the United States' "'possession, custody, or control.'" Health Records Motion at 3-4 (quoting Fed. R. Crim. P. 16(a)(1)(E)). Troup and B. Garcia assert that those records are material to their defense, because "[t]he government's case hinges heavily on the testimony of cooperating witnesses" and mental health records impact those witnesses' credibility. Health Records Motion at 4-5. Troup and B. Garcia contend that the United States has possession, custody, or control over those records even though the United States cannot get those records without going through the NMCD, because the "Court has previously found that NMCD is 'closely aligned with this prosecution' given the government's

concession that this case has involved a 'joint investigation' with the 'STIU,[1] NMCD, [and] the FBI.'"  Health Records Motion at 4 (alteration in the original)(quoting Memorandum Opinion and Order at 104, 2017 WL 2271430, at *49, filed February 8, 2017 (Doc. 907)("MOO")).

Troup and B. Garcia also argue that the United States must disclose its witnesses' health records under the Due Process Clause of the Fifth Amendment to the Constitution of the United States of America.  See Health Records Motion at 8-11.  Troup and B. Garcia explain that, under Giglio v. United States, 405 U.S. 150, 153 (1972), the United States must disclose "evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory."  Health Records Motion at 8.  Troup and B. Garcia concede that the Due Process Clause does "not require the government to provide information which it does not possess," but they repeat their contention that the United States possesses those records by virtue of its relationship with the NMCD.

According to Troup and B. Garcia, they cannot "effectively cross-examine the government's central witnesses" without access to their health records.  Health Records Motion at 11.  Again, according to Troup and B. Garcia, that inability implicates their "rights to confrontation and a fair trial under the Sixth Amendment of the United States Constitution."  Health Records Motion at 11.  Troup and B. Garcia conclude by observing that producing the health records of the United States' witnesses do not violate those witnesses' rights under the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 ("HIPAA"), because HIPAA permits disclosure in accordance with a court order.  See Health Records Motion at 12-13.

---

[1] STIU refers the NMCD's Security Threat Intelligence Unit, which investigates prison gang activity.

To get the adversarial process going, the Court granted the Health Records Motion in part, and directed Troup and B. Garcia to "contact the attorneys for the witnesses and [to] see if there is any objection to the production" of their health records[2] and the Court ordered the United

---

[2]On April 25, 2018, B. Garcia notified the Court that he had contacted, through counsel and via email, Javier Alonso, Manuel Jake Armijo, Gerald Archuleta, Ben Clark, Ruben Hernandez, Robert Martinez, Steven Morales, Federico Munoz, and Fred Quintana. See Notice Regarding Defendants' Contact with Witnesses' Attorneys Concerning the Disclosure of Mental and Physical Health Records at 1-2, filed April 25, 2018 (Doc. 2153)("Notice"). B. Garcia states that he "requested that each witness or attorney provide his position" regarding the Health Records Motion. Notice ¶ 2, at 2. "Attached to each e-mail correspondence was the Order regarding the mental and physical health records (Doc. 2075) and the Stipulated Protective Order (Doc. 2076)." Notice ¶ 2, at 2. B. Garcia asserts that he "copied AUSAs Maria Armijo, Matt Beck and Randy Castellano" on those emails.

B. Garcia summarizes those witnesses' attorneys response, or lack thereof:

> 5. As of this filing, only Todd Hotchkiss, counsel for witness Manuel Armijo, has returned a signed protective order regarding these records . . . .
>
> 6. The status and position of the remaining witnesses and their counsel is as follows:
>
>> a. Nate Chambers, counsel for Javier Alonso, indicated on April 7, 2018, that they are unable to waive any objection without first reviewing the materials in question.
>>
>> b. George Harrison, counsel for Gerald Archuleta, indicated on April 9, 2018, that he does not oppose the disclosure of these materials, however, has not yet returned a signed protective order to the defense.
>>
>> c. Stephen Hosford and JD Herrera, counsel for Ben Clark, have yet to respond to the defense's email request.
>>
>> d. Pedro Pineda, counsel for Ruben Hernandez, has yet to respond to the defense's email request.
>>
>> e. CJ McElhinney, counsel for Robert Martinez, indicated on April 8, 2018, that he would need to discuss the matter with his client.
>>
>> f. Jason Bowles, former counsel for Steven Morales, directed the defense to Mr. Morales' current attorney of record, Leah Stevens-

States to disclose those records, "if the witnesses or their attorney[s] consent to their disclosure."[3]  Order at 2, filed April 5, 2018 (Doc. 2075)("Order").  On April 17, 2018, the United States notified the Court that it contacted Sammy Griego and that he "opposed the release of any of his mental health records in possession by the NMCD and any subsequent disclosure." United States' Sealed Notice Objecting to the Release of Sammy Griego's Medical Records, filed April 17, 2018 (Doc. 2128).  On April 23, 2018, Defendant Javier Alonso, who has pled guilty and is now one of the United States' witnesses, notified the Court that he objects to his health records' disclosure.  See Notice of Objection at 1, filed April 23, 2018 (Doc. 2145).  Two

---

> Block.  Ms. Stevens-Block requested the referenced attachments [to the original email] on April 9, 2018, and has yet to respond to the defense.
>
> g.  Louis Lopez, counsel for Frederico Munoz, indicated on April 9, 2018, that he would be willing to review the materials for redaction.
>
> h.  Phillip Sapien, counsel for Fred Quintana, indicated on April 9, 2018, that he would need to review the issue with Mr. Quintana.

Notice ¶¶ 5-6, at 3-4.  B. Garcia avers that:

> For witnesses Robert Lovato, Brian Rascon and Raymon[d] Rascon, the defense sent communication directly to the witnesses by USPS at their last known address, as defense had no knowledge of counsel of record for such witnesses.  Mr. Lovato's attorney, Charles Fisher has since reached out to the defense regarding Mr. Lovato's receipt of the materials sent by mail.  In his email, Mr. Fisher indicated that he objected to the disclosure of these records due to privacy requirements of HIPAA . . . .  Additionally, the defense was informed today by AUSA Maria Armijo that the Rascons are now represented by counsel.  The defense has not yet had a chance to reach out to those attorneys for their clients' position on the matter.

Notice ¶ 4, at 2-4.

[3]The Order directs the NMCD to provide the relevant health records to the United States within ten business days.  See Order at 2.  The United States' oral representations to the Court indicate, however, that it has not received those records from the NMCD.

days later, Defendant Federico Munoz notified the Court -- via the Motion in Opposition -- that he does not consent to his health records' disclosure.  See Motion in Opposition at 1-2.

In the Motion in Opposition, Munoz argues that, under HIPAA, the NMCD cannot disclose his health records to Troup and B. Garcia without his consent unless the Court orders that disclosure or the NMCD "receives satisfactory assurance from the party seeking the information [Troup and B. Garcia] that reasonable efforts were made to obtain a qualified protective order."  Motion in Opposition at 3-4.  According to Munoz, "[n]either has been done."  Motion in Opposition at 4.

Munoz also argues that Troup's and B. Garcia's "Sixth Amendment right to confrontation will not be violated by this Court's denial of" their health records request.  Motion in Opposition at 5 (citing United States v. LaVallee, 439 F.3d 670 (10th Cir. 2006)).  Munoz supports that argument by quoting United States v. LaVallee at length:

> "[C]onfrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.  The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony.  Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses.  In short, the Confrontation Clause only guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

Motion in Opposition at 5 (citations, internal quotation marks, and footnote omitted by Munoz)(quoting United States v. LaValle, 439 F.3d at 692).

Finally, Munoz argues that Troup and B. Garcia "are not entitled to an exhaustive list of every medical record for any type of mental and/or physical ailment," even if they are entitled to receive some of Munoz' health records.  Motion in Opposition at 4 (citing Brigham v. Coyler, No. CIV 09-2210, 2010 WL 2131967, at *3 (D. Kan. May 27, 2010)(Waxse, M.J.)).

Accordingly, Munoz asks:

> that if the Court does enter a disclosure order, that the disclosure order (a) limit access to MR. MUNOZ'S relevant medical records, (b) specifically identify the specific medical information are sought, [sic] (c) limit access to MR. MUNOZ'S medical records to those falling within a relevant time period, (d) require the requestors to advise MR. MUNOZ'S counsel of the materials sought and the information's relevancy, and (e) require the requestors to advise the treating physician of his or her right to decline to participate in any ex parte communications and to provide the treating physician with a copy of the disclosure order stating this fact.

Motion in Opposition at 4.

## ANALYSIS

In its MOO, the Court stated that if the United States "can pick up the telephone and get information from a third-party, the documents are effectively" in the United States' possession, custody, or control. MOO at 105, 2017 WL 2271430, at *50. The Court observed that "[t]he New Mexico Corrections Department is jumping at the chance to help the prosecution." MOO at 105-06, 2017 WL 2271430, at *50. The United States probably would not have brought this case if several Defendants had not tried to kill two NMCD officials, then-New Mexico Corrections Secretary Gregg Marcantel and then-STIU Director Dwayne Santistevan. Once the United States became involved, NMCD was willing to do what it takes to help the United States do what state officials have been unwilling or unable to do: take the SNM down. The Court accordingly determined that it could "confidently say that the New Mexico Corrections Department's records, under the unique facts of this case, are under the [United States'] control." MOO at 106.

That analysis -- which largely employed a legal fiction for discovery expedition that was, in this unique case, reality -- does not apply, however, to inmate health records that the NMCD possesses. Under HIPAA regulations, disclosing those health records requires a court order or

patient consent.[4]  Consequently, the United States cannot obtain health records that NMCD

---

[4]Generally, a healthcare provider cannot use or disclose a patient's healthcare information without the patient's authorization.  See 45 C.F.R. § 164.508(a)(1)("Except as otherwise permitted or required by this subchapter, a covered entity may not use or disclose protected health information without an authorization that is valid under this section.").  While HIPAA applies to all health care providers -- including the components of prisons that provide medical care, see 45 C.F.R. § 160.102(a)(3); id. § 164.504(a) -- inmate health records can be used and disclosed in several circumstances where using or disclosing the records of someone who is not an inmate would not be permissible absent their consent:

> (A) The provision of health care to such individuals;
>
> (B) The health and safety of such individual or other inmates;
>
> (C) The health and safety of the officers or employees of or others at the correctional institution;
>
> (D) The health and safety of such individuals and officers or other persons responsible for the transporting of inmates or their transfer from one institution, facility, or setting to another;
>
> (E) Law enforcement on the premises of the correctional institution; or
>
> (F) The administration and maintenance of the safety, security, and good order of the correctional institution.

45 C.F.R. 164.512(k)(5)(i).  None of those circumstances apply to Troup's and B. Garcia's requests in the Health Records Motion.  Consequently, Troup and B. Garcia must rely on a different exception to 45 C.F.R. § 164.508(a)(1).  That exception is 45 C.F.R. § 164.512(e).

> (e) Standard: Disclosures for judicial and administrative proceedings.
>
>> (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>>
>>> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>>>
>>> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

> (A) The covered entity receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>
> (B) The covered entity receives satisfactory assurance . . . from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order . . . .

45 C.F.R. § 164.512(e).

   Psychotherapy notes -- "notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session . . . that are separated from the rest of the individual's medical record," but not "medication prescription and monitoring" or summaries of "[d]iagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date," 45 C.F.C. § 164.501 -- are held to a higher standard, so 45 C.F.R. § 164.512(e) does not permit their disclosure, see 45 C.F.R. § 164.508(a)(2). Healthcare providers can disclose psychotherapy notes without patient consent in very few circumstances, see 45 C.F.R. § 164.508(a)(2), and the only circumstance that potentially applies in this case is 45 C.F.R. § 154.512(a):

> (a) Standard: Uses and disclosures required by law.
>
> > (1) A covered entity may use or disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law.
> >
> > (2) A covered entity must meet the requirements described in paragraph (c), (e), or (f) of this section for uses or disclosures required by law.

45 C.F.R. § 164.512(a).

> Required by law means a mandate contained in law that compels an entity to make a use or disclosure of protected health information and that is enforceable in a court of law. Required by law includes, but is not limited to, court orders and court-ordered warrants; subpoenas or summons issued by a court, grand jury, a

possesses by picking up the telephone, so those records are not within the United States' "possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). Accordingly, those records are not discoverable under rule 16 of the Federal Rules of Criminal Procedure.[5] Likewise, the

---

governmental or tribal inspector general . . . .

45 C.F.R. § 164.103. Even if rule 17(c) subpoenas qualify as "issued by a court," 45 C.F.R. § 164.103, and not by the clerk or by attorneys, see Fed. R. Crim. P. 17(a)("The clerk must issue a blank subpoena -- signed and sealed -- to the party requesting it, and that party must fill in the blanks before the subpoena is served"), a rule 17(c) subpoena cannot be used to obtain psychotherapy notes -- unless the patient waives the psychotherapist patient privilege -- because "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence," Jaffee v. Redmond, 518 U.S. 1, 17 (1996). Professor Stephen A. Saltzburg cautions that "the *Jaffee* Court's promulgation of an 'absolute' privilege must be tempered by constitutional considerations in criminal cases; a case-dependent balance between the need for the privilege and the defendant's need for the evidence will have to be conducted," Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 501.02[6] (11th ed. 2017), but the Tenth Circuit does not recognize that any such considerations exist, see United States v. LaVallee, 439 F.3d at 692 (concluding that a criminal defendant's "Sixth Amendment rights were not implicated" -- much less violated -- by denying the defendant's motion seeking production of a prosecution witness' "psychiatric records to be used during cross-examination as impeachment evidence").

[5]That these health records are not discoverable under rule 16 does not mean that they are not discoverable via a rule 17(c) subpoena duces tecum. See Fed. R. Crim. P. 17(a)("A subpoena must state the court's name and the title of the proceeding, include the seal of the court, and command the witness to attend and testify at the time and place the subpoena specifies."); id. 17(c)(1)("A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates."). Unlike rule 16(a)(1)(E), which imposes a disclosure obligation on the United States, see Fed. R. Crim. P. 16, a rule 17(c) subpoena duces tecum can compel witnesses to produce documents that the United States does not possess, see Fed. R. Crim. P. 17(c).

Production under rule 17 is more limited than production under rule 16 in several respects, however. First, production under rule 16 generally occurs before trial begins. See United States v. Hernandez-Muniz, 170 F.3d 1007, 1010 (10th Cir. 1999)("Rule 16 is designed to provide the defendant with sufficient information to make an informed decision about a plea, to allow the court to rule on admissibility motions before trial, to minimize prejudicial surprise at trial, and to generally increase the efficiency of litigation."). Rule 17, however, has been "consistently interpreted . . . to permit the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials." United States v. Villa-Chaparro, 115 F.3d 797, (10th Cir. 1997). While rule 17(c) permits the Court to "direct the witness to produce the

designated items in court before trial or before they are to be offered into evidence," Fed. R. Crim. P. 17(c)(1), the Supreme Court of the United States of America has indicated that,

> in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

United States v. Nixon, 418 U.S. 683, 699-700 (1974)(Burger, C.J.)(footnote omitted). "Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." United States v. Nixon, 418 U.S. at 701.

Second, defendants can obtain rule 16 disclosure regarding an item of evidence that "is material to preparing the defense," Fed. R. Crim. P. 16(a)(1)(E)(i), i.e., an item for which "there is a strong indication that it will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal,'" United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993)(quoting United States v. George, 786 F. Supp. 56, 58 (D.D.C. 1992)(Lamberth, J.)). Obtaining rule 17(c) disclosure is more difficult, because a defendant "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." United States v. Nixon, 418 U.S. at 700. See United States v. Abdush-Shakur, 465 F.3d 458, 467 (10th Cir. 2006)(applying United States v. Nixon's analysis regarding to pretrial production under a rule 17(c) subpoena duces tecum to all rule 17(c) subpoenas).

Third, while rule 16 disclosures go directly to the defendants, see Fed. R. Crim. P. 16(a)(1)(E)(requiring the United States to permit the defendants "to inspect and to copy" certain documents), but production under a rule 17(c) subpoena takes place at the Court and not at a defense attorney's office, see United States v. Vigil, No. CR 10-2310, 2013 WL 3270995, at *21 (D.N.M. June 3, 2013)(Browning, J.)(denying a defendant's request to have rule 17(c) production occur at her attorney's office and instead ordering production at the Court); see also United States v. Begay, No. CR 14-0747, 2018 WL 401265, at *11 (D.N.M. Jan. 12, 2018)(Browning, J.)("The Court should have ordered [rule 17(c)] production at the courthouse.").

Fourth, under rule 17(c), unlike under rule16, "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). See United States v. Nixon, 418 U.S. at 698 ("A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." (quoting Fed. R. Crim. P. 17(c)(2))).

The Court concludes that, if Troup and B. Garcia seek to use a rule 17(c) subpoena to obtain the health records of witnesses -- such as Griego, Alonso, and Munoz -- who do not authorize disclosure, their request for "the New Mexico Corrections Department's physical and mental health records" associated with those witnesses is insufficiently specific. Health Records Motion at 1. Production under such a rule 17(c) subpoena would occur at the Court; ex parte production to Troup and B. Garcia directly would not be permissible. Additionally, a rule 17(c)

- 11 -

United States has no obligation to provide those records to Troup and B. Garcia under the Due Process Clause, because the United States does not possess those records. See MOO at 104, 2017 WL 2271430, at *49. Finally, United States v. LaVallee indicates that Troup's and B. Garcia's rights under the Sixth Amendment to the Constitution do not demand disclosure of the health records that they seek.

> The Confrontation Clause is not a "constitutionally compelled rule of pretrial discovery." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51 . . . (1987). In rejecting the defendant's claim that the trial court's refusal to permit discovery of privileged communications by his accuser to be used during cross-examination violated his right to confront witnesses against him, the Court in *Ritchie* stated:
>
>> [T]he right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses. In short, the Confrontation Clause only guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.
>
> *Id.* (citations, quotation marks, and footnote omitted). There is no indication in this case that the Appellants did not have the opportunity to cross-examine Ms. Gutierrez effectively. Indeed, the District Court did not appear to limit the scope of questions that the defendants could ask Ms. Gutierrez on cross-examination. Thus, there has been no Sixth Amendment violation.

---

subpoena cannot reach "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment," because those communications "are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." Jaffee v. Redmond, 518 U.S. at 17. See supra note 4.

The Court would, however, order disclosure, pursuant to a rule 17(c) subpoena, regarding: (i) psychotropic medications prescribed to witnesses; (ii) summaries of witness diagnoses and prognoses; and (iii) witness treatment plans and progress to date. The Court's order would direct NMCD to produce documents subject to the subpoena "before trial or before they are to be offered in evidence," Fed. R. Crim. P. 17(c)(1), in accordance with the Stipulated Protective Order, filed April 5, 2018 (Doc. 2076).

United States v. LaVallee, 439 F.3d at 692 (all alterations, except the first, in the original).[6] Accordingly, the Court denies the Health Records Motion and grants the Motion in Opposition in part.

**IT IS ORDERED** that: (i) the Restricted Motion to Obtain Physical and Mental Health Records, filed March 27, 2018 (Doc. 1985), is denied; and (ii) the Motion in Opposition to Disclosure of the Defendant's Redacted mental and Physical Health Records to Third Party Co-Defendants, filed April 25, 2018 (Doc. 2161), is granted in part.

_____
UNITED STATES DISTRICT JUDGE

---

[6]The United States Court of Appeals for the Tenth Circuit erroneously attributes its Pennsylvania v. Ritchie quotation to the Supreme Court of the United States of America.  Justice Powell delivered the Supreme Court's opinion, "with respect to Parts I, II, III-B, III-C, and IV," Pennsylvania v. Ritchie, 480 U.S. at 42, but the Tenth Circuit's quotation comes from Part III-A, see id. at 52-53, an opinion "in which THE CHIEF JUSTICE, Justice White, and Justice O'CONNOR join," id. at 42.  Justice Blackmun joined "Parts I, II, III–B, III–C, and IV of the Court's opinion," but he wrote separately, because he did "not accept the plurality's conclusion, as expressed in Part III-A of Justice POWELL's opinion that the Confrontation Clause protects only a defendant's trial rights and has no relevance to pretrial discovery."  Pennsylvania v. Ritchie, 480 U.S. at 61 (Blackmun, J., concurring in part and concurring in judgment).  The Court is bound, however, by the Tenth Circuit's decision to treat the Pennsylvania v. Ritchie plurality opinion as authoritative.

*Counsel:*

Fred Federici
  Attorney for the United States
    Acting Under Authority Conferred by 28 USC § 515
Albuquerque, New Mexico

--and--

Maria Ysabel Armijo
Randy M. Castellano
Matthew Beck
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

    *Attorneys for the Plaintiff*

Richard Sindel
Sindel, Sindel & Noble, P.C.
Clayton, Missouri

--and--

Brock Benjamin
Benjamin Law Firm
El Paso, Texas

    *Attorneys for Defendant Joe Lawrence Gallegos*

Patrick J. Burke
Patrick J. Burke, P.C.
Denver, Colorado

--and--

Cori Ann Harbour-Valdez
The Harbour Law Firm, P.C.
El Paso, Texas

    *Attorneys for Defendant Edward Troup*

Russel Dean Clark
Las Cruces, New Mexico

 *Attorney for Defendant Leonard Lujan*

James A. Castle
Castle & Castle, P.C.
Denver, Colorado

--and--

Robert R. Cooper
Albuquerque, New Mexico

 *Attorneys for Defendant Billy Garcia*

Douglas E. Couleur
Douglas E. Couleur, P.A.
Santa Fe, New Mexico

 *Attorneys for Defendant Eugene Martinez*

Joseph E. Shattuck
Marco & Shattuck
Albuquerque, New Mexico

--and--

Jeffrey C. Lahann
Las Cruces, New Mexico

 *Attorneys for Defendant Allen Patterson*

John L. Granberg
Granberg Law Office
El Paso, Texas

--and--

Eduardo Solis
El Paso, Texas

 *Attorneys for Defendant Christopher Chavez*

Nathan D. Chambers
Nathan D. Chambers, LLC
Denver Colorado

--and--

Noel Orquiz
Deming, New Mexico

  *Attorneys for Defendant Javier Alonso*

Scott Moran Davidson
Albuquerque, New Mexico

--and--

Billy R. Blackburn
Albuquerque, New Mexico

  *Attorneys for Defendant Arturo Arnulfo Garcia*

Stephen E. Hosford
Stephen E. Hosford, P.C.
Arrey, New Mexico

--and--

Jerry Daniel Herrera
Albuquerque, New Mexico

  *Attorneys for Defendant Benjamin Clark*

Pedro Pineda
Las Cruces, New Mexico

  *Attorney for Defendant Ruben Hernandez*

Gary Mitchell
Mitchell Law Office
Ruidoso, New Mexico

  *Attorney for Defendant Jerry Armenta*

Larry A. Hammond
Osborn Maledon, P.A.
Phoenix, Arizona

--and--

Margaret Strickland
McGraw & Strickland
Las Cruces, New Mexico

    *Attorneys for Defendant Jerry Montoya*

Steven M. Potolsky
Jacksonville Beach, Florida

--and--

Santiago D. Hernandez
Law Office of Santiago D. Hernandez
El Paso, Texas

    *Attorneys for Defendant Mario Rodriguez*

Jacqueline K. Walsh
Walsh & Larranaga
Seattle, Washington

--and--

Ray Velarde
El Paso, Texas

    *Attorneys for Defendant Timothy Martinez*

Joe Spencer
El Paso, Texas

--and--

Mary Stillinger
El Paso, Texas

    *Attorneys for Defendant Mauricio Varela*

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

--and--

Richard Jewkes
El Paso, Texas

    *Attorneys for Defendant Daniel Sanchez*

George A. Harrison
Las Cruces, New Mexico

    *Attorney for Defendant Gerald Archuleta*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

    *Attorney for Defendant Conrad Villegas*

Theresa M. Duncan
Duncan, Earnest, LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli, LLP
Albuquerque, New Mexico

    *Attorneys for Defendant Anthony Ray Baca*

Charles J. McElhinney
McElhinney Law Firm, LLC
Las Cruces, New Mexico

    *Attorney for Defendant Robert Martinez*

Marcia J. Milner
Las Cruces, New Mexico

    *Attorney for Defendant Roy Paul Martinez*

Christopher W. Adams
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Christopher Garcia*

William R. Maynard
El Paso, Texas

--and--

Carey Corlew Bhalla
Law Office of Carey C. Bhalla, LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Carlos Herrera*

Justine Fox-Young
Albuquerque, New Mexico

--and--

Ryan J. Villa
Albuquerque, New Mexico

    *Attorneys for Defendant Rudy Perez*

Lisa Torraco
Albuquerque, New Mexico

--and--

Donavon A. Roberts
Albuquerque, New Mexico

    *Attorneys for Defendant Andrew Gallegos*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Santos Gonzalez*

Angela Arellanes
Albuquerque, New Mexico

    *Attorneys for Defendant Shauna Gutierrez*

Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

    *Attorneys for Defendant Brandy Rodriguez*