1            IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4        Plaintiff,

5        VS.                    CR. NO. 15-4268 JB

6    ANGEL DELEON, et al.,

7        Defendants.

8

9        Transcript of 104 Hearing and Motion Proceedings
     before The Honorable James O. Browning, United States
10   District Judge, Las Cruces, Dona County,
     New Mexico, commencing on April, 5, 2018.

11

12   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano; Mr. Matthew Beck

13

14

15   For the Defendants: Mr. Brock Benjamin, Ms. Cori
     Harbour-Valdez; Mr. Patrick Burke; Mr. Jim Castle;
16   Mr. Robert Cooper; Mr. James Lahann; Mr. Joe
     Shattuck; Mr. John Granberg; Mr. Billy Blackburn;
17   Mr. Donovan Roberts; Ms. Lisa Torraco

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Good morning
 2    everyone.  I appreciate everybody being here and
 3    ready to go and on time.  It looks like all the
 4    defendants are here and have counsel, at least one
 5    counsel with them.  I think where we were was Ms.
 6    Torraco was up arguing in response to the motion in
 7    limine as to Adrian Burns.  Mr. Roberts, is she going
 8    to be here to continue that, or is she done?
 9              MR. ROBERTS:  Who is this?  I'm sorry.
10              THE COURT:  Ms. Torraco was up arguing when
11    we broke last night, is my memory.
12              MR. ROBERTS:  Yes, Judge.  And actually, I
13    didn't hear from her this morning.  I'm sorry.
14              THE COURT:  Do you have anything else to
15    add on the Adrian Burns out-of-court statements?
16              MR. ROBERTS:  I don't believe so, Judge.
17              THE COURT:  All right.  Mr. Benjamin, do
18    you have anything further on that?
19              MR. BENJAMIN:  No, I don't, Your Honor.
20              THE COURT:  Any of the other defendants
21    have anything on the Burns statements?
22              All right.  Let's see, Ms. Armijo.
23              MS. ARMIJO:  No, Your Honor.  I think we
24    covered it all yesterday.  I gave them some that
25    apply.  And so I'll leave it at that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  All right.  I'll give it some
 2     thought on the new exception that you mentioned.  But
 3     I think it does come in for state of mind.  And so
 4     I'll grant that motion.
 5            MR. BENJAMIN:  Your Honor?
 6            THE COURT:  Yes.
 7            MR. BENJAMIN:  If the Court is granting
 8     that motion, can the Court request them to provide
 9     what the statement was?
10            THE COURT:  You know, I wrote it down.  Let
11     me see if I got --
12            MS. ARMIJO:  Your Honor, I think that we're
13     disclosing today an additional supplement from Amber
14     Sutton.  We spoke to her on Tuesday, and so I think
15     they will have more clarity as to what her statements
16     will be.
17            MR. BENJAMIN:  Thank you.
18            THE COURT:  The statement -- Mr. Benjamin.
19            MR. BENJAMIN:  Yes, Your Honor.
20            THE COURT:  The statement that I was ruling
21     on is this statement that Burns made to Sutton that,
22     quote, "He was on his way to the residence of Joe
23     Gallegos to collect a drug debt and to sell heroin."
24     So if there is going to be more, I'll have to take
25     those and look at them.  But that is the one that I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1    studied, and felt should be admitted under 803(3).

2              MR. BENJAMIN:  Thank you, Your Honor.

3              THE COURT:  There was an additional Burns

4    statement that I think Ms. Torraco identified in her

5    response to the motion, and that was that Burns told

6    Orndorf that Joe Gallegos owed him money, and that

7    Orndorf should not do business with him.  I'll not

8    admit those statements for the truth of the matter.

9    But they are admissible to show that Burns was

10   bad-mouthing and disrespecting Joe Gallegos, such

11   that Joe Gallegos had to retaliate violently to

12   preserve his standing in the SNM; that Joe Gallegos

13   killed Burns, using the language of the statute, for

14   the purpose of maintaining or increasing position in

15   an enterprise engaged in racketeering activity.  So

16   you'll get a limiting instruction on that, to the

17   jury that they cannot use that for the truth of the

18   matter, but they can use it to show that -- what

19   Burns was doing and disrespecting Joe Gallegos.

20             MR. BENJAMIN:  Your Honor, I guess I would

21   object to a limiting instruction being phrased that

22   way, simply because I think that's a comment on the

23   evidence by the Court.  I can understand the Court

24   limiting it to:  You can't use this for the truth of

25   the matter, but you can consider it for other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    matters.  But I think if the Court goes farther than
2    that, that would be a comment on the evidence.
3              MR. ROBERTS:  We join in that objection,
4    Your Honor.
5              THE COURT:  Well, I think I can probably
6    word it -- if you want to sketch out the language
7    you're comfortable with, show it to the Government,
8    your co-defendants, I probably can word it in a way
9    that doesn't end up me commenting on the evidence.
10             MR. BENJAMIN:  Thank you.
11             THE COURT:  I do want to help the jury
12   figure out, you know, what they can use it for and
13   what they can't use it for.  So help me do it in a
14   way that doesn't hurt you, but also helps the jury do
15   their job.  I think we can probably come up with some
16   language.
17             MR. BENJAMIN:  Understood, Your Honor.
18             MS. TORRACO:  May I address the Court?
19             THE COURT:  Yeah, we started and you
20   weren't here, and so I moved on.  But if you want to
21   comment on this Burns motion, go ahead, Ms. Torraco.
22             MS. TORRACO:  Thank you, Your Honor.  And I
23   do apologize to the Court that I was running late
24   this morning.
25             I thought about this a lot last night, and
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6

```
 1    it kind of felt like I was back in law school with
 2    that question of what is a present sense impression
 3    and what is an excited utterance, and what is just
 4    pure hearsay.
 5              THE COURT:  Can I just say something to Mr.
 6    Benjamin before --
 7              MS. TORRACO:  Of course.
 8              THE COURT:  You know, if you don't want a
 9    limiting instruction, that's fine.  I mean, it's your
10    call.  Sometimes people don't like the Court
11    commenting on it.  So I won't give it unless you want
12    me to give it.  So that's an option, too.
13              MR. BENJAMIN:  I appreciate that, Your
14    Honor.  Ultimately, in the past, I think that's come
15    down to:  It depends on what the limiting instruction
16    will look like.
17              THE COURT:  All right.  Fair enough.  So
18    draft out what you want.  I think you and I can
19    probably come up with something that works.
20              MR. BENJAMIN:  Thank you, Your Honor.
21              THE COURT:  Ms. Torraco.
22              MS. TORRACO:  Thank you.  So the statement
23    that you're admitting, I'd just like the Court to
24    rethink the section of that statement that relates to
25    "because he had a drug debt."  So the Court made a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    ruling that Amber Sutton can say that Adrian Burns

2    was going to go to the Gallegos home.  Okay, that's

3    fine.

4         The part that I'm objecting to and asking

5    the Court to rethink is the part about "because he

6    had a drug debt."  So that isn't a present sense

7    impression, that clause.  And that changes the

8    character of the whole statement.  And so --

9         THE COURT:  Well, the portion about

10   collecting a drug debt and sell heroin is just as

11   much about planning, like where he's going to go;

12   it's -- he's telling us what he planned to do there.

13   So it seems to me that, if we're in agreement that

14   the plan should go -- where he planned to go, it

15   seems to me that I also should allow the statement to

16   come in of what he planned to do when he got there:

17   Collect a drug debt and sell heroin.

18        MS. TORRACO:  I hear what you're saying.

19   We're not in agreement; I mean, we're objecting to

20   that, because a plan is not a part of a present sense

21   impression.  A present sense impression, there is no

22   exception for the plans that you make, or motive.  A

23   present sense impression is a reflection on a then

24   existing emotional, physical, or mental state.  It's

25   something that just happened, like, "Oh, my gosh,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Torraco walked in late, and you know, Torraco had

2   just walked in late.  Or, Oh, look, there is a car

3   speeding by.  Those are present sense impressions;

4   slightly different than excited utterance, because

5   you're not under the stress of the event.

6             THE COURT:  Here's what 803(3) says:  "A

7   statement of the declarant's then existing state of

8   mind, (such as motive, intent, or plan.)  It's right

9   in the rule that plan is the state of mind that

10  they're looking for.  This one seems to me to be not

11  on the edges, but right there in the language of the

12  rule.

13            MS. TORRACO:  Okay.  So this is how I --

14            THE COURT:  I can't do memory and I can't

15  do beliefs.  I agree with those, that those are not

16  part of the rules.  He can't remember what he did, or

17  believe he's going to do some stuff.  But if he's

18  going to flat state that:  Here's my plan, it seems

19  to me that's what it falls -- what it -- falls within

20  the language of the rule.

21            MS. TORRACO:  Okay, Your Honor.  How I read

22  it is that those things are in parentheses; they're

23  "for examples"; they're not hard and fast that every

24  single plan comes in as a then existing mental,

25  emotional, or physical state; that the plan -- those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   are "for examples."  And the plan has to pass the

2   first guarantee of trustworthiness:  Did the person

3   have time to reflect on or lie to, or have time to

4   lie about what was happening?  So all plans don't

5   come in under a present sense impression.

6           And so the question is:  Did Adrian Burns

7   or Amber Sutton have time to lie about this

8   statement?  Because it's not a then existing present

9   sense impression.  So her present sense impression

10  was:  He's leaving the house, you know, he's going to

11  see the Gallegoses.  But the present sense

12  impression -- and I know you've made your ruling, I'm

13  just making a record -- doesn't go to the actual drug

14  deal.

15          So thank you for entertaining me.  And

16  again I apologize I was late.

17          THE COURT:  All right.  Thank you, Ms.

18  Torraco.

19          The Government put in its footnote on page

20  3, it says -- this is from Saltzburg, "if D says I'm

21  going to go to New York tomorrow because Joe stole my

22  money, and I have to get it back for him, the

23  statement cannot be used to prove that Joe stole

24  money from D.  Because that would be using the state

25  of mind statement to prove the truth of a past fact.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    But it could be used to prove that D went to New

 2    York."  It seems to me this falls kind of squarely

 3    within Saltzburg example.

 4              MS. TORRACO:  But, Your Honor, if I may

 5    just address you from the table, that goes to, yes,

 6    he went to the house, not that he owes the drug debt.

 7              THE COURT:  Okay.  You're saying present

 8    sense exception.  You know that's 803(1).  I'm not

 9    using that.

10              MS. TORRACO:  Okay.

11              THE COURT:  That's 803(3).

12              MS. TORRACO:  Okay.

13              THE COURT:  So it's present state of mind.

14    So maybe we can clear that up that I'm not relying on

15    803(1).

16              Let me just make a note to myself about

17    this limiting instruction for Mr. Joe Gallegos, and

18    then I'll be ready to go.

19              All right.  I think the next motion that is

20    up, unless y'all have something more urgent that we

21    need to go to --

22              MR. BECK:  Your Honor, we do.  The United

23    States has something it would like to bring up with

24    the Court.

25              THE COURT:  All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  So I handed out this morning,
 2    and handed up to the Court, our production of Special
 3    Agent Acee's notes from the debrief on Tuesday with
 4    James Garcia.  In the notes -- and James Garcia
 5    said -- I think it probably starts at the bottom of
 6    the second page of the notes, which is DeLeon 68434,
 7    and continues through 68435, the third page of the
 8    notes.
 9              THE COURT:  This is Mr. Acee's handwritten
10    notes?
11              MR. BECK:  Right, Your Honor.
12              We expect a 302 to be forthcoming sometime
13    day for his notes.  He was on another operation
14    yesterday.
15              What Mr. Garcia said, and what's reflected
16    in these notes, is that when he came to court on
17    March 15 and 16, he was told by attorneys not to go
18    into the courtroom; to go to their office in the bank
19    building.  The attorneys showed him the Roundy report
20    that we -- that was the basis of his testimony, and
21    that -- asked him why, if Troup is his friend, he
22    said this.  He said he was trying to make a deal with
23    the FBI.  The attorneys told him -- he told the
24    attorneys that Troup did admit those things to him,
25    and he was trying to make a deal with the FBI.  The
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    attorney told him to go into court and say that James
2    Garcia lied to the FBI then.  The attorney said it
3    would be bad for their case.  He said that testimony
4    would hurt your friend Troup.  The attorney said that
5    if Mr. Garcia didn't say that they were lies, the
6    Government would bring more charges, more SNM
7    charges, RICO stuff.
8              MR. CASTLE:  Your Honor, I'm going to
9    object unless -- are they offering this as an
10   exhibit?
11             THE COURT:  Well, let me hear what Mr. Beck
12   says.  I can imagine you've got a response here, but
13   let's see where he's going with it.
14             MR. BECK:  Then the attorney said that he
15   would only ask Mr. Garcia three questions.  He told
16   him the questions; told Mr. Garcia to answer no to
17   all three questions, and that's all Mr. Garcia would
18   have to do.  The attorney said that when the
19   Government lawyers asked questions, Mr. Garcia should
20   say that he pleads the Fifth, or say that he doesn't
21   know, "I don't remember that."
22             I think that was the extent of the issue
23   that's arose here.  The two attorneys, as Mr. Garcia
24   described them and pointed them out, would be Mr.
25   Troup's attorneys.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Then in the in-court testimony it was not

2    Mr. Troup's attorneys, it was Mr. Garcia's attorney,

3    Mr. Castle, who asked the questions of Mr. Garcia.

4          I would have brought this to the Court's

5    attention -- I think that this creates a number of

6    issues for the case.  I would have brought this to

7    the Court's attention earlier.  But when there are

8    issues of professional responsibility in our office

9    that we have a duty to report, which I felt I did in

10   this case, that has to go to the Office of

11   Professional Responsibility, and they have to give us

12   the okay to report any matters of professional

13   responsibility.

14          So when I got that approval, there was

15   discussion in our office amongst many people that we

16   should wait until Mr. Garcia pleads, and this is in

17   the factual basis, so that it's in black and white,

18   and there is -- I think it's slapping the Court in

19   the face, and there is no other option.

20          As we furthered those discussions, we

21   concluded -- our office and I concluded that that

22   would not be a prudent way to approach this at all,

23   given trial coming up Monday, and given the quick

24   turnaround.  I expect that Mr. Garcia will plead

25   tomorrow to a factual basis -- or excuse me,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    tomorrow -- what day is today, Thursday -- I expect

2    he will plead to a factual basis similar to this with

3    similar information not appearing in the pleading.

4            And so I wanted to bring this to the

5    Court's attention early on because I think it creates

6    a conflict, certainly among Troup's attorneys and Mr.

7    Troup.  It may prove to be a conflict with

8    Mr. Garcia's attorney, Mr. Castle.  And it

9    certainly -- in my opinion, I'm concerned about 2255

10   down the road, if we proceed with this trial and with

11   the attorneys that are currently representing Mr.

12   Troup, at least; possibly Mr. Garcia, I don't know

13   that.

14           I will point out for the Court -- if the

15   Court remembers this -- at a bench conference after

16   we discussed appointing Mr. Garcia an attorney, Mr.

17   James Garcia an attorney, before he was represented,

18   the first thing he said when the Court advised him

19   that he likely needed an attorney -- and the Court

20   got on the phone -- he said, "I have a question, sir.

21   I was told I was just going to come on -- up here on

22   testimony that I gave were a lie, you know what I

23   mean?  I was trying to make a deal with the FBI."

24   Certainly, when I heard that testimony in court on

25   the afternoon of March 15, 2018, it gave me pause,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  and I think it did the Court, too.  I think that's
 2  reflected on the next page.  I didn't know where
 3  that --
 4              THE COURT:  Can you go back to the prior
 5  page?
 6              MR. BECK:  Yes, Your Honor.  So at the
 7  bottom, at the bottom of this page you say, "Why
 8  don't you not say too much.  Why don't you not tell
 9  me too much."
10              I said, "Your Honor, I would say, based on
11  what I heard right there, he definitely should be" --
12              THE COURT:  Let me go back.  I'm slow
13  reading.
14              MR. BECK:  Sorry, Your Honor.  Sure, no
15  problem.  And I should point out to the Court that
16  this is my print-off of the rough notes.  And Ms.
17  Bean is going to give me a hard time about it.  This
18  is not the final.
19              THE COURT:  All right.  Go ahead and turn
20  the page.  And what did you say?  Okay.
21              MR. BECK:  So as I said, I didn't want
22  to -- I was adamant that we should bring this to your
23  attention as soon as I got approval from OPR to
24  report under my professional responsibilities, that
25  we shouldn't wait because of the trial pending
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Monday.  And I didn't want -- I was also concerned
 2    that if we didn't bring it up today while we're here
 3    in court, and then a plea agreement is filed with a
 4    factual basis similar to these, that -- these notes
 5    by Special Agent Acee -- that it would look like we
 6    were trying to play games or continue the trial or
 7    delay the trial or something of that nature.
 8              THE COURT:  Do you have -- even if it's
 9    rough, do you have the language that he's going to
10    plead to tomorrow in the factual section?
11              MR. BECK:  Yes.  It's rough.
12              THE COURT:  Do you have it with you?
13              MR. BECK:  I do.
14              THE COURT:  Can you read it to me?  And
15    I'll understand that it's rough.
16              MR. BECK:  Yes.  And just so we're clear,
17    I'm providing this to the Court.  Our office has not
18    had the final feedback on it.  Mr. Glazener, who
19    represents Mr. Garcia, has not had the final feedback
20    on it.  But since the Court asked, and I have it with
21    me, but -- would you like me to -- it's pretty long.
22              THE COURT:  Yeah, okay.
23              MR. BECK:  "On March 15 to 16, 2018, I was
24    subpoenaed and testified as a defense witness in a
25    hearing in United States versus DeLeon, et al., No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    15-4268 JB.  I previously had been a member of the

2    Syndicato de Nuevo Mexico, SNM Gang, members of which

3    are defendants in United States v. DeLeon et al., No.

4    15-4268 JB.

5              "A rule of the SNM Gang is that you do not

6    cooperate with law enforcement, including by

7    testifying.  Another rule of the SNM is that if an

8    SNM member violates that rule and cooperates with law

9    enforcement, or testifies, the SNM Gang automatically

10   places an order to kill that SNM member.

11             "On March 15, 2018, when I arrived to the

12   United States District Court for the District of New

13   Mexico Federal Courthouse in Las Cruces, New Mexico,

14   two attorneys, whose identities are known to the

15   federal government, because I provided their

16   identities to the Federal Bureau of Investigation,

17   FBI, and the Assistant United States Attorneys, told

18   me not to go into the courtroom.  Instead, they took

19   me across the street to an office" --

20             THE COURT:  Now, my memory is -- and just

21   make sure I'm correct -- they had been subpoenaed by

22   the defendants to testify at the hearing; correct?

23             MR. BECK:  Yes, Your Honor.

24             "In the office these attorneys presented me

25   with a report from an interview that I had done with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the FBI in May of 2013.  They showed me the report

2    and directed me to statements that I had provided to

3    the FBI, in which I told them about previous

4    admissions that Troup had made to me regarding two

5    murders that he had been involved in for the SNM

6    Gang.

7              "Troup and I were SNM members together, and

8    we are close friends.  The lawyers asked me why I

9    made those statements to the FBI, to which I

10   responded, 'because Troup had admitted them to me,

11   because I was trying to make a deal with the FBI.'

12   The attorneys asked me why I would say those things

13   about my friend, Troup, to which I responded that I

14   said them because they are true, and I was trying to

15   make a deal."

16             THE COURT:  Can you go back -- let me read

17   that to myself.  All right.  Go ahead.

18             MR. BECK:  "One of the attorneys, whom I

19   identified to the federal government, told me that I

20   needed to go into court that day, March 15, 2018, and

21   testify that these statements that I provided to the

22   FBI in May 2013, which were accurately reflected in

23   the report, were lies, because it would be really bad

24   for their case, meaning that testifying that the

25   statements I provided to the FBI in 2013 were lies

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                            1-800-669-9492
                    BEAN                                e-mail: info@litsupport.com
                    & ASSOCIATES, Inc.
                    PROFESSIONAL COURT
                    REPORTING SERVICE

1    would greatly damage the United States' case against

2    Troup and the other SNM members in the United States

3    v. DeLeon, et al., No. 15-4268 JB.

4              "I told the attorneys that I wasn't going

5    to do that because I did not want to get in any more

6    trouble.  I did not want to incur any more criminal

7    charges by lying under oath.

8              "The same attorney responded that, if I

9    testified truthfully and did not say that the

10   statements I provided to the FBI in May 2013 were

11   lies, that the United States would bring several

12   additional charges against me in connection with the

13   prosecution of the SNM Gang.  The attorney then

14   explained to me that I would be asked only a few

15   questions about my statement.  The attorney told me

16   those questions, and told me that I would answer

17   them, quote, 'No.'  The attorney said that would be

18   the end of the questions.

19             "The attorney said that afterwards, when

20   the Assistant United States Attorney asked me

21   questions, I should respond, quote, 'I plead the

22   Fifth,' and quote, 'I don't remember.'  The attorney

23   repeated that several times, quote, 'I plead the

24   Fifth,' quote, 'I don't remember.'

25             "Consequently, I testified on March 15 and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  March 16, 2018, in the United States v. DeLeon

2  et al., No 15-4268 JB, and I willfully made several

3  false statements under oath that I knew to be false.

4         "On March 15, 2018, under oath, I willfully

5  lied when I answered in the following exchange:

6         "Q.  Has anyone ever told you -- in a

7  conversation with you, has anyone ever told you that

8  Billy Garcia ordered the murders that happened at the

9  Southern New Mexico Correctional Facility in 2001?

10        "A.  No.

11        "Truthfully, in 2012, Troup told me that

12  Billy Garcia ordered the 2001 murders at the Southern

13  New Mexico Correctional Facility."

14        THE COURT:  All right.  Let's pause there

15  and let me reread that to myself.  Okay.

16        MR. BECK:  "On March 16, 2018, under oath,

17  I willfully lied when I answered 'no' in the

18  following exchange:  So did Edward Troup, Mr. Troup,

19  admit his involvement in SNM crimes to you?

20        "A.  No.

21        "Truthfully, Troup admitted his involvement

22  in SNM crimes to me many times, including in 2012,

23  and 2005 to 2006, when he admitted his participation

24  in the murder of Freddie Sanchez, a/k/a Fred Dawg,

25  and the murder of Frank Castillo, a/k/a Pancho,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    respectively.

2              "Thus, I made statements which I knew to be

3    false.  These false statements were material to the

4    proceedings held in federal district court on March

5    15 and 16, 2018."

6              THE COURT:  Well, you know, this is all

7    hitting me cold.  So lay out for me what you see the

8    problems with this, now that I understand what

9    Mr. Garcia -- tell me what problems it creates for us

10   going forward.

11             MR. BECK:  I think the problems are that,

12   when Mr. Garcia takes the stand, he will be

13   impeached, I anticipate, on his perjury conviction.

14   When that happens, he will explain why he committed

15   perjury under oath.  One of the reasons being what

16   happened with the attorneys in the room.  I think

17   that may be the main reason.  I don't know if he will

18   say that for sure, but that's what I anticipate,

19   based on hearing this on Tuesday.

20             At that point, there are a number of

21   problems that come up.  I think the first is that, to

22   the extent that -- to the extent that the attorneys

23   may think that this is not accurate, or not true,

24   they would become witnesses in the trial, which

25   happens sometimes.  To the extent that the jury

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                 1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                       e-mail: info@litsupport.com

1  believes this is true, I think that it creates a

2  problem for Mr. Troup, at least -- and sort of the

3  reverse -- I guess I was thinking about it last night

4  and this morning, and sort of the reverse policy

5  behind the Witness Advocate Rule.  One of the reasons

6  the Court imposes the Witness Advocate Rule, that an

7  advocate should not be a witness at trial, is because

8  it gives some -- the Court's concern is it gives some

9  bolstering effect to the testimony for the jury.

10         If the jury believes Mr. Garcia's testimony

11  about what happened about these course of events, I

12  think that that bolstering effect is turned 180

13  degrees, and the jury sees Mr. Troup in a very bad

14  light.  What I think to myself is, if Mr. Troup's

15  attorneys had to go to this length to try to protect

16  him, how guilty is Mr. Troup?  That's my concern, and

17  that's why I think it creates a conflict.  And I

18  couldn't articulate it because it's a very unique

19  conflict situation.  It's certainly very different

20  from Mr. Blackburn's conflict.

21         I also think that, if this testimony comes

22  out in any light, if Mr. Troup is convicted, I

23  anticipate that there will be a 2255, ineffective of

24  assistance of counsel down the road, based on this

25  testimony, for the reasons that I just articulated

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    about, the conflict of interest, and the light in

 2    which it paints Mr. Troup during this trial.

 3              THE COURT:  Well, okay, are you

 4    articulating that -- I assume that by the statements,

 5    what we're saying is:  Do you think that what

 6    Mr. Garcia is going to plead to tomorrow is that Mr.

 7    Burke and Ms. Harbour-Valdez were the two people in

 8    the room; correct?

 9              MR. BECK:  Correct.

10              THE COURT:  And then I guess what you're

11    also implying or surmising is that they were in some

12    collusion with Mr. Castle to limit the number of

13    questions so that it matches -- what occurred in the

14    meeting matches what occurred here in the courtroom?

15    Is that spinning out where we are?

16              MR. BECK:  Yes.

17              THE COURT:  So is your conflict that -- is

18    the conflict that what -- taking Mr. Garcia's words,

19    that that created some attorney-client relationship

20    between Mr. Garcia and Mr. Troup's counsel?  Is that

21    the conflict?

22              MR. BECK:  Honestly, I hadn't even thought

23    of that.  That is something that had never crossed my

24    mind.  That was not the conflict that I was thinking

25    of.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  All right.  Is it really a

2     conflict then?

3          MR. BECK:  That's what I don't know.

4     That's why I said I couldn't articulate it.

5          THE COURT:  If there is no allegation that

6     Mr. Burke and Ms. Harbour-Valdez were -- created some

7     de facto representation where they were giving him

8     some legal advice, and somehow got into a situation

9     where they're representing him -- if we put that

10    aside, that that's not the situation the Government

11    is raising, then it seems to me that it's more in the

12    nature of misconduct than it is a conflict situation.

13          Is that a fair analysis of where you are?

14          MR. BECK:  I think so.  As I said, the

15    conflict that I see is not the traditional conflict.

16    It is the conflict of the attorneys being the eye

17    of -- the arm of the defendant.  And, as I said, when

18    this testimony comes out, the jury believes it,

19    thinks it's true, the conflict that I see is now Mr.

20    Troup's attorneys have painted Mr. Troup in a bad

21    light, a very bad light.  And that's the conflict

22    that I see, is how can they effectively and

23    vigorously advocate for Mr. Troup?

24          I mean, the concern is always there, that

25    if Mr. Garcia takes the stand, are they -- are Mr.

SANTA FE OFFICE                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                           Albuquerque, NM 87102
(505) 989-4949                                                                                       (505) 843-9494
FAX (505) 843-9492                                                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   Troup's attorneys going to pull punches or withhold
 2   some questioning that they otherwise may question
 3   Mr. Garcia on because of what happened, because of
 4   what they know?
 5           So in that sense it is more like a conflict
 6   situation in which, you know, if someone is a former
 7   client, and you have confidential information about
 8   them, you cannot represent someone adverse to them
 9   because there is always the concern that you won't
10   vigorously advocate your current client without
11   disclosing confidential information from a past
12   client, and breaching that confidentiality, ethical
13   rule.  So that's why that conflict arises because
14   you're worried the attorney won't be a zealous
15   advocate for his current client out of concerns for a
16   past or former client.
17           THE COURT:  Well, let me -- let me ask this
18   question:  I've seen situations where, you know, the
19   defense lawyer -- well, this can go either way.  I
20   mean, y'all do the same thing as far as having an FBI
21   agent, but you're talking to him directly.  And then,
22   of course, that's the reason that we spend a lot of
23   money for investigators on the defense side, so that
24   they can have the same situation where they got
25   somebody that, if an interview blows up, it doesn't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  turn them into a witness.

2          Tell me how this one is different.  How is

3  this one different than when y'all have -- y'all

4  interview a witness, and you've got your FBI agent

5  there so he can take the stand with the 302 -- how is

6  it different here with these two attorneys?

7          MR. BECK:  The difference is the

8  investigator and the FBI agent, under the advocate

9  witness rule, divorced from just the attorneys in the

10  room.  That's why the United States doesn't take

11  statements with just the attorney in the room,

12  because there is always that danger that, you know,

13  they can say something that would make you a witness

14  in the case for the same reasons.  That's why private

15  investigators go and interview witnesses and sit in

16  on interviews with witnesses when the attorneys are

17  interviewing them, because then, if that witness

18  takes the stand and testifies inconsistently, they

19  call the investigator to impeach, so that they are

20  not the witness.  And so that's the reason that

21  private investigators sit in; that's the reason that

22  FBI agents, or whatever other, you know, law

23  enforcement agent is there, sit in on these

24  interviews, is so that we don't put an attorney on

25  the stand, given the Witness Advocate Rule.  That's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the basis of it.

2            So, in this situation, where there isn't an

3    investigator present, at least as far as Mr. Garcia

4    said -- he didn't say one way or the other.  He just

5    said he took him over there and talked to him -- I

6    don't anticipate anyone else was there -- as I said,

7    it creates a situation where now, instead of an

8    investigator that takes the stand, and maybe the

9    jury says, Man, that investigator is a pretty bad

10   person; he or she has got some questionable, you

11   know, ethics there.

12            That's different than the attorney who

13   stands up here throughout the proceedings,

14   questioning witnesses, providing opening statements,

15   talking to the defendant during trial, giving the

16   closing argument, that's what's concerning in this

17   case, is that it will be the person, you know, the

18   person with the J.D., ESQ behind their name; that I

19   think the public -- I think the public trusts.  I

20   think the public puts a certain level of trust in

21   attorneys.  And attorneys have a certain level of

22   respect that perhaps even in the courtroom, at least

23   when the jury is sitting there, I think the jury has

24   a certain level of trust and respect for attorneys,

25   that they may not have for investigators or FBI

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                           1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

```
 1    agents or DEA agents or other law enforcement agents.

 2    I think they expect that an attorney would have

 3    higher ethical standards, seek the truth.

 4           And so I think that it's very different

 5    when these statements were made by attorneys than if

 6    they had been made by an investigator.

 7           THE COURT:  All right.  Anything else, Mr.

 8    Beck?

 9           MR. BECK:  No, Your Honor.

10           THE COURT:  All right.  Thank you, Mr.

11    Beck.

12           Mr. Burke.

13           MR. BURKE:  I'd like to make a record

14    first, and then answer some questions, if the Court

15    has any.

16           THE COURT:  Could I get Mr. Beck to do

17    something:  Could he leave his statement up on the

18    screen so that you and I, maybe later on -- I'll let

19    you talk first -- but maybe you can go through some

20    of those things, and we can --

21           MR. BECK:  The notes?

22           THE COURT:  This is the one with the

23    factual section for Mr. Garcia's plea agreement.

24           All right.  Mr. Burke.

25           MR. BURKE:  I'm referring to Acee's notes
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of the meeting.  And I'm going to the bottom of page

2    68434.  Mr. Acee reports that Garcia, James Daffy

3    Garcia, said "Came to court, thought Government

4    subpoena at first."  That's a lie.

5              "He be called to court, came to court, and

6    Troup's attorneys told him to meet at the office in

7    the bank building.  Don't stay here."  That's a

8    filthy lie, a filthy lie.

9              THE COURT:  Well, let's just --

10             MR. BURKE:  No, Your Honor.  My integrity

11   has been impeached by this filthy liar, and I want to

12   make a record.

13             THE COURT:  I understand.  But let's walk

14   through it, and just see --

15             MR. BURKE:  "Troup's attorneys, one male,

16   older mustache, and female brown hair, and so forth,

17   showed me report Roundy did."  That is a filthy lie.

18             "Asked if I said all this."  A lie.

19             "If he's your friend" -- this is in

20   quotes -- 'why would you say all this?'"  A lie.

21             "2013 report when arrested, fishing Roundy

22   and Roundy fishing defendant."  A lie.

23             "Was trying to make deal with FBI."  He

24   probably was doing that.  That was what he was doing

25   when he made the statement to Roundy, that Roundy

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                           1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                           e-mail: info@litsupport.com

 1   surreptitiously tape-recorded, and then didn't

 2   acknowledge that in his 302.

 3           "Told attorneys Troup did admit, and trying

 4   to make deal with FBI."  A lie.

 5           "Male attorney told me to go into court and

 6   say I lied to the FBI then, May 2013."  A filthy

 7   despicable lie.

 8           "Said it would be bad for their case, would

 9   hurt Troup, your friend."  A despicable, filthy lie.

10           "Defendant didn't want to do this because

11   would get additional charges."  A lie.

12           "Male attorney said if I didn't say that,

13   then the gov would bring more SNM charges, RICO

14   stuff."  A filthy, despicable lie.

15           "Then said he would only ask" -- I never

16   said any such thing about what questions I would ask.

17   I never talked to him before he showed up in court

18   that day.

19           And here it is the Government who arranges

20   junk like this, and then has the nerve to come in --

21   in 45 years, Your Honor, I've never had a grievance.

22   Not one.  Ever -- and makes these allegations as if

23   they were true.

24           It's insulting.  And the level to which

25   this prosecution has gone with these informants is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    beyond belief.  It is mind boggling.  And I don't
2    know what else to say about this.
3              But I will say what the conflict is:  If
4    Mr. Garcia takes the stand, I'm a witness.  I'm a
5    witness.  I can't be both Mr. Troup's attorney and a
6    witness.  That cannot happen.  So there is a dilemma.
7              I want to speak to one other issue, if I
8    may, and that's the conflict with Mr. Blackburn.  May
9    I do that, or is that too far afield at this point?
10             THE COURT:  Well, I'm trying to get my head
11   wrapped around this.
12             MR. BURKE:  All right.
13             THE COURT:  Why don't we -- let me ask you
14   some questions so that I understand precisely what
15   your position is on these.
16             I forget whose subpoena it was.  Was it Mr.
17   Troup's, or was it Mr. Castle's?  Okay.  So Mr.
18   Castle subpoenaed him here.  When he arrived here at
19   the court, did you -- and well, let me start with
20   you, and then I'll talk to you, Ms. Harbour-Valdez --
21   did you meet with him?
22             MR. BURKE:  No, I did not.  I saw him out
23   there.  And I said, Oh, that's Daffy.  I did not go
24   up to him.  I didn't say one word to him.
25             MR. CASTLE:  Your Honor, I'm actually --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Hold on.  Let me try to get
 2   some organization here.  I know you want to speak and
 3   I'll let you speak.
 4            MR. CASTLE:  Well, I'm just objecting to
 5   this inquiry, and I'll tell the Court why:  We're
 6   going to have to defend this case.  Mr. Garcia is
 7   going to take the stand.  I want to wait until after
 8   he pleads.  The Government and Mr. Garcia have agreed
 9   that this is the set of facts so they don't change
10   over time.  And I don't want Mr. Burke and
11   Ms. Harbour-Valdez to put all their cards on the
12   table, because frankly, I believe that what is in
13   this plea agreement -- which hasn't been signed yet,
14   so they can change it -- will change, if we have to
15   go through a Q and A today.  I suggest that we wait
16   until after Mr. Garcia has pled, and then we can go
17   through this process.
18            THE COURT:  Well, the problem I'm having
19   with that is that -- well, a number of things -- but
20   one of them is, I'm very concerned about Mr. Garcia
21   signing that plea agreement, if I've got attorneys
22   telling me that the very first sentence is untrue,
23   that you never even met with him.  I mean, that --
24   that really -- I mean, I've got to -- I know how you
25   feel about Mr. Garcia -- but I also would be very
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    concerned about him signing that agreement and
 2    entering into a plea to that set of facts.  That
 3    scares me, too.
 4             Let me ask you questions.  If you decide
 5    you don't want to answer them, then I'll figure out
 6    what to do.  But you're telling me, Mr. Burke, that
 7    you did not meet with him before he testified on the
 8    stand?
 9             MR. BURKE:  I did not.
10             THE COURT:  And you never even spoke to
11    him; you saw him across the way, but you didn't --
12             MR. BURKE:  I saw him across the way.
13             THE COURT:  Outside of the courtroom here?
14             MR. BURKE:  Yes, sir, and he did go to the
15    bank building.  I was a bit surprised that he was
16    there.  He was not there at our request.  And so I
17    laid eyes on him there as well.
18             THE COURT:  But, again, didn't speak to
19    him?
20             MR. BURKE:  I did not have a conversation
21    with him.  I don't think I even said hi or nodded my
22    head to him.
23             THE COURT:  How did you know him?  How did
24    you --
25             MR. BURKE:  I knew there was a subpoena for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    him.  So when I saw this fellow out here, I'm going,

2    oh, that must be Daffy.

3              THE COURT:  But you'd never met him before?

4              MR. BURKE:  I had never met him or talked

5    to him.

6              THE COURT:  It was an assumption on your

7    part, rather than knowledge for certain that that's

8    who that was?

9              MR. BURKE:  The timing was right.

10             THE COURT:  What is over at the bank

11   building?  I know that some of you have an office

12   somewhere in Las Cruces.  Is that the locations?

13             MR. BURKE:  That's where we have our files.

14   We've had a meeting or two over there.

15             THE COURT:  And you don't know why he went

16   over to that building?

17             MR. BURKE:  I do not personally, no.  I

18   believe the part about not hanging out is probably

19   true.  But I was not part of those conversations.

20             THE COURT:  So you think somebody told

21   him --

22             MR. BURKE:  I do.

23             THE COURT:  -- to go over to the bank

24   building?

25             MR. BURKE:  I do.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Now, I won't go through this in
 2     any detail, because you're saying you never spoke
 3     with him at the bank building.  But all these
 4     statements that he attributes to a male, older, with
 5     a mustache, you never had made any of these
 6     statements?
 7              MR. BURKE:  Fiction; it is fiction, Your
 8     Honor.
 9              THE COURT:  Did you see anybody meeting
10     with him at the bank building or otherwise?
11              MR. BURKE:  I saw someone sitting with him.
12              THE COURT:  And did you meet with anybody
13     in preparation for somebody to meet with him?  For
14     example, did you talk to somebody on the defense side
15     and say:  You go meet with Mr. Garcia and show him
16     this document, and tell him what questions we're
17     going to ask?
18              MR. BURKE:  No.  I did not do that.
19              THE COURT:  So you had no knowledge what
20     anybody was meeting with him about, and what
21     documents they may or may not have been showing him?
22              MR. BURKE:  I don't know that anybody
23     showed him any documents.  I know why he was
24     subpoenaed.
25              THE COURT:  But even to this day, you don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

 1   know what conversations anybody had on the defense
 2   team with him?
 3           MR. BURKE:  Oh, I know the conversations.
 4   They were shared with me under a JDA.  But they
 5   weren't with Ms. Harbour-Valdez or me.
 6           THE COURT:  And you did not know that
 7   anybody was going to meet with him or talk to him, or
 8   what they were going to talk to him about before it
 9   occurred?
10           MR. BURKE:  I'm not sure that they -- I
11   know that they talked to him.  I know they talked to
12   him about that FBI report.  That was the issue.  But
13   I don't know if they showed it to him.  I don't
14   know -- I don't know how long they met with him.  I
15   know the purpose of it.  Somebody was doing their job
16   about -- with a witness.  And I know supposedly what
17   he said on the stand is what he was telling them.
18           THE COURT:  Ms. Harbour-Valdez, why don't I
19   give you a chance to speak.  And then I may have some
20   similar questions for you.
21           MS. HARBOUR-VALDEZ:  Thank you, Your Honor,
22   I was notified that Mr. Garcia had shown up, was
23   outside the courthouse with one of the defense team
24   investigators.  And I went outside, because I had not
25   yet had a chance to talk to him.  It was suggested --

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                                             Albuquerque, NM 87102
(505) 989-4949                                                                          (505) 843-9494
FAX (505) 843-9492                                                               FAX (505) 843-9492
                                                                                          1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                                      e-mail: info@litsupport.com

```
 1              THE COURT:  How did the defense team
 2    investigator figure out it was Mr. Garcia?  How did
 3    they make a connection with each other?
 4              MS. HARBOUR-VALDEZ:  His number was on the
 5    return of the subpoena, so he called him.
 6              THE COURT:  He had the subpoena --
 7              MS. HARBOUR-VALDEZ:  He called him when he
 8    got here.  And so he was outside, and met him, and I
 9    left the courtroom.  Mr. Burke never left the
10    courtroom.  He did not meet Mr. Garcia.  He did not
11    see Mr. Garcia until he was here at the courthouse,
12    was my recollection.
13              But the investigator and I went to the
14    office.  And I have -- these are my notes from that
15    meeting, and I will gladly give them to the Court --
16    it was maybe 15 minutes.  No reports were shown to
17    Mr. Garcia.  He asked why he was there.  He said he'd
18    already answered their questions a couple of weeks
19    earlier.
20              THE COURT:  When he says "they," who was he
21    referring to?
22              MS. HARBOUR-VALDEZ:  The members of the
23    other defense team, and investigator that he met with
24    apparently, or spoke to.  We were not privy to that
25    meeting.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          THE COURT:  So some other defense team met
2     with him earlier?
3          MS. HARBOUR-VALDEZ:  Yes, I know that for
4     sure.  I wasn't privy to that meeting.  I -- but,
5     yes, they met with him previously, and they
6     subpoenaed him.
7          No documents were shown to him.  I
8     certainly did not provide any legal advice to him.
9     And while I haven't been practicing as long as Mr.
10    Burke, I've been doing this 21 years, and I've never
11    had a grievance filed against me.  And I'm shocked
12    that this is the allegation that's being made.
13    Because -- I mean, I'm shocked.  It was maybe 15
14    minutes.  He said exactly -- and I'll -- like I said,
15    I'll gladly turn these over to the Court.
16         He said that he was told by Agent Roundy
17    that he talked, the case would be dismissed.  He said
18    "I pled.  I did my time.  I renounced on paper.  I
19    don't know why I'm here.  I was scooped up, but I
20    didn't think" -- or it says "scooped up, but didn't
21    think he was a member, so he lied to get popular.
22    Lied to get out of jail.  He was on heroin" -- excuse
23    my language -- "would shit on anyone to get out, even
24    his own mom."  He said Edward Troup didn't confess.
25    Never.  We don't even like each other.  I lied.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    was addicted to drugs.  I was facing prison, et

 2    cetera, and I was trying to work a deal.

 3              And I said, well --

 4              THE COURT:  You said you didn't mind me

 5    seeing these.  Do you mind anybody else seeing them?

 6              MS. HARBOUR-VALDEZ:  We can make it an

 7    exhibit.

 8              THE COURT:  Would you put it on the

 9    overhead and walk me back through what -- so your

10    investigator brought him to you, or --

11              MS. HARBOUR-VALDEZ:  An investigator.

12              THE COURT:  -- brought him to you, and then

13    you walked him over to the bank building?

14              MS. HARBOUR-VALDEZ:  We all went to the

15    bank building.  It was very windy that day.

16              THE COURT:  When you say "we all" --

17              MS. HARBOUR-VALDEZ:  The investigator and

18    I, Mr. Garcia and his wife.

19              THE COURT:  Okay.  And then you sat in the

20    bank building; you sat in an office --

21              MS. HARBOUR-VALDEZ:  In our office.

22              THE COURT:  -- over there?

23              MS. HARBOUR-VALDEZ:  Correct.

24              THE COURT:  And then these are the notes of

25    your conversation.  And you said it lasted about 15
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   minutes.  Was your investigator present for this

 2   meeting?

 3            MS. HARBOUR-VALDEZ:  Yes, and I rarely

 4   spoke during this meeting.  It wasn't my

 5   investigator.  But the investigator that was present,

 6   who had previously interviewed him was my

 7   understanding --

 8            THE COURT:  So you had an investigator with

 9   you throughout this meeting.

10            MS. HARBOUR-VALDEZ:  Yes, the one who

11   had --

12            THE COURT:  And so there is -- I was going

13   to ask about his wife.  Was his wife also present?

14            MS. HARBOUR-VALDEZ:  She was there the

15   entire time.

16            THE COURT:  So the four of you were there.

17            MS. HARBOUR-VALDEZ:  Yes, Your Honor.

18            THE COURT:  Okay.  Then, if you'll walk me

19   through -- these are the full extent of your notes of

20   that meeting?

21            MS. HARBOUR-VALDEZ:  Yes, Your Honor.

22            THE COURT:  Why don't you tell me what they

23   say.

24            MS. HARBOUR-VALDEZ:  He said, "The deal was

25   you talk, it's dismissed."  And I'm assuming this is

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                                 1-800-669-9492



```
 1   when he was picked up back in 2011, 2012.  He said,
 2   "I pled.  I did my time.  I renounced on paper.  I
 3   don't know why I'm here."  And that's because he
 4   didn't understand the subpoena, because he had
 5   previously talked to this defense team, and thought
 6   he had answered their questions.
 7            "Scooped up but didn't think he was a
 8   member."  On that he's saying others didn't think he
 9   was a member of SNM.  So he lied, "lied to get
10   popular, lied to get out of jail," said was "on
11   heroin, would shit on anyone to get out, even his
12   mom.
13            "Edward Troup didn't confessed" -- should
14   have said "didn't confess," never.  We don't like
15   each other.  He said, "I lied.  I was drug addiction,
16   facing prison, et cetera.  I was trying to work a
17   deal."
18            And that was the extent of it.  He said --
19   wife said, "Well, does he have to testify?"  And the
20   investigator said, Well, you're here under a
21   subpoena, so you need to -- it's up to you, but we
22   did subpoena you here.  And that's why he was, like:
23   I don't understand why I'm here because I already
24   told you everything.  And that's what he told us:
25   That I lied to get a deal.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            And so they asked for some time to go and
 2    talk about it.  They were going to have lunch
 3    somewhere and discuss it.  That was it.  That was the
 4    end of the meeting.  And the next time I saw him was
 5    when he came into the courtroom.
 6            I certainly, Your Honor, did not give him
 7    any legal advice.  The investigator didn't give him
 8    any legal advice.  He was just -- like I said, he
 9    wanted to know:  I've already talked to you.  Why am
10    I here?  I already told you everything.
11            THE COURT:  And you said that the
12    investigator did most of the talking, all the
13    talking, or was it kind of a tag team?
14            MS. HARBOUR-VALDEZ:  He had previously met
15    with him, so he -- I guess he was asking some of the
16    same questions that he had asked him previously.  I
17    asked a few questions -- I mean, obviously, I asked
18    about Mr. Troup.  I mean, that's my client.  And
19    that's when he said he didn't confess.  It was a lie.
20            THE COURT:  And by "confess," the things
21    that were in Mr. Roundy's 302, he was saying those
22    were not true?
23            MS. HARBOUR-VALDEZ:  We did not show him
24    that 302 at that meeting.  What I took from that is
25    that when they had previously spoken to Mr. Garcia,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that they had discussed that 302.  But there were no
 2    documents shown to him at that meeting.  In fact, I
 3    left the courtroom with the notepad and my pen, and
 4    that was it.  I didn't have any documents with me.
 5              THE COURT:  And so these things he said to
 6    Mr. Acee, such as somebody is going to only ask you
 7    three questions, none of that was --
 8              MS. HARBOUR-VALDEZ:  No, Your Honor.  I
 9    didn't have those questions.  It wasn't my witness.
10              THE COURT:  And Mr. Burke was not involved
11    in this.
12              MS. HARBOUR-VALDEZ:  Mr. Burke was not
13    present, Your Honor.  The hearing was still ongoing.
14    He stayed in the hearing.  And I left.  And like I
15    say, it was maybe 15, 20 minutes.  And during that
16    time the Court broke for lunch.
17              THE COURT:  And no other attorney met with
18    Mr. Garcia?
19              MS. HARBOUR-VALDEZ:  No, Your Honor.  Not
20    to my knowledge.  At that meeting it was the
21    investigator, myself, Mr. Garcia, and his wife.  And
22    it was very brief.  I mean, none of these things in
23    these notes occurred.
24              THE COURT:  All right.  Anything else you
25    want to tell me about this, Ms. Harbour-Valdez?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. HARBOUR-VALDEZ:  No.  And that was the

2    first time I'd ever seen him, Your Honor.  We had

3    attempted to contact Mr. Garcia back in March of

4    2016, very early in this case.

5          I sent a certified letter to him.  He was

6    in BOP custody.  And we received a response back from

7    him that he did not wish to talk to our defense team.

8    His exact words were:  "I don't know anything.  Don't

9    involve me in this.  I have no knowledge of this

10   case." So we left it alone.  And we never tried to

11   contact him again.  We figured he would probably be a

12   trial witness.  But based on that, we did not try to

13   reach him again.

14          In fact, it was a surprise to us when we

15   learned that another defense team had, in fact,

16   talked to him, and was going to subpoena him, so --

17          THE COURT:  All right.

18          MS. HARBOUR-VALDEZ:  Thank you.

19          THE COURT:  Thank you, Ms. Harbour-Valdez.

20          Mr. Castle.

21          MR. CASTLE:  Yes, Your Honor.  I'm not

22   quite sure what this hearing is about, or what the

23   request is here.  It sounds like it's multi-fold.

24   First, the Government seems to be raising ethical

25   violations on a number of attorneys based upon a

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   statement that Mr. Garcia made, I believe, 48 hours

2   ago.

3            In fact, to the extent that they've done a

4   plea agreement, in fact, because they believe all of

5   this information from a convicted murderer, who is

6   apparently pleading tomorrow to perjury, without any

7   kind of vetting of this information.

8            I asked Mr. Beck if I could have the rest

9   of the plea agreement, so that I could look at it in

10  its entirety.  He's refused to do that.  I would

11  initially ask the Court to order that to be produced

12  to the parties, because certainly they're making very

13  serious allegations against respected members of

14  various bars.  And I think, as a matter of fairness,

15  they should turn over that plea agreement, even if

16  it's under a protective order that we not share it.

17  I can't imagine why we wouldn't be able to share it.

18  They've spread on the record all the nasty little

19  details that they want to infect this Court with.

20           So that's really one issue is I think

21  they're making some kind of an ethical allegation.

22  Number two, I think they're trying to conflict the

23  attorneys off the case.

24           I think the Court has its own inquiry,

25  which is is there something wrong with letting

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Garcia plead tomorrow?  And I understand that,

2    and I hadn't thought about that until the Court

3    raised that issue.

4            I'm happy to discuss this with Your Honor

5    based on that third issue, but in an ex parte

6    proceeding.  I can shed more light on that than

7    either of the two counsel that appeared at this

8    podium.

9            It was my team that subpoenaed him.  It was

10   my investigator who was with Mr. Garcia throughout at

11   the time.  And I can share that information.  But I'm

12   not going to sit here and let the prosecution make

13   allegations based upon a very cursory review of a

14   convicted murderer, and allow them to use that to

15   invade the defense process, and obtain defense work

16   product.

17           So I'm happy to do that, if Your Honor

18   wants to make that inquiry, but I think that's the

19   proper method.  We've talked to witnesses that have

20   said that the Government has done very improper

21   tactics, put severe pressure on them.  I don't come

22   in here and argue that the Government needs to be

23   kicked off the case, or there is a conflict.  And the

24   reason is is I've been doing this many, many years as

25   well.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            And if the Government had checked on any of
2     our histories before making an allegation sufficient
3     that they were going to do an indictment, and indict
4     not only Mr. Garcia, but lawyers in this case, in
5     essence, if they looked into that, they'd see that we
6     all have clean, clean, long-standing records of
7     ethical conduct and defense representation.
8            But during my time that I've been doing
9     this, I can't tell the Court -- I can count on one
10    hand how many times I've heard from witnesses who
11    want to wiggle out of their problems; that one side
12    or the other has done something improper as an excuse
13    for their personal conduct in the case.  I can't
14    imagine how many times.  I've never raised ethical
15    allegations like this, based on that kind of
16    unsubstantiated information.
17           I'll share one thing that's a matter of
18    public record with this Court.  Before the Government
19    came into court here and made these allegations, and
20    wrote up this plea agreement, that I'm hoping to get
21    a full copy of, if they even looked at the transcript
22    April 15 (sic), where Mr. Garcia testified, they'd
23    see that the witness that went on before him was an
24    agent by the name of Pedersen.  And Mr. Burke, who is
25    being impugned here, was involved in the questioning
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of him, and he was on the stand for a long period of

2    time.  And Mr. Garcia was the next witness.  So if

3    they'd even looked at the hard transcripts, they'd

4    realize that the very facts that Mr. Garcia spills on

5    the record, or spills in this report, 302, weren't

6    true.  If they bothered --

7               THE COURT:  Explain that.  I'm missing the

8    point.  Because what you're saying is that Mr. Burke

9    was here in this courtroom, not across the street?

10              MR. CASTLE:  Yes.  Yes.

11              But I don't want to go into it any further,

12   because I have an obligation to my client here to

13   defend him.  And apparently, they're going to put

14   this man on the stand, and I need to be in a position

15   where I can cross-examine him, not give them a

16   roadmap so that they can dance around it and recreate

17   a new story for Mr. Garcia.  I'm sorry, I should

18   always say this -- Mr. James Garcia -- so they can

19   then change his story once more, to try to impugn

20   counsel.

21              I can tell the Court I'm an experienced

22   litigator, so is Mr. Burke, so is Ms. Harbour-Valdez.

23   And I think that the Government is very naive to

24   think that we'd have conversations with a witness

25   without an investigator present.  Quite naive.

SANTA FE OFFICE                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                          Albuquerque, NM 87102
(505) 989-4949                                                                                        (505) 843-9494
FAX (505) 843-9492                                                                            FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1              And so, if they want to put that man on the

2     stand -- and if this is what they're going to put

3     their names on right here -- then let them do that.

4     But I don't think this should be a vehicle to expose

5     what it is we've developed regarding Mr. Garcia,

6     James Garcia.

7              THE COURT:  All right.  Thank you, Mr.

8     Castle.

9              Any other defendant want to speak on this

10    issue?

11             MR. CASTLE:  Would the Court order the rest

12    of the plea agreement to be produced to the defense

13    counsel?

14             THE COURT:  Let me talk to the Government

15    about that.

16             Let me ask some questions, though, before

17    I -- Mr. Beck comes back up.

18             Let me direct this first one to Mr. Burke

19    and Ms. Harbour-Valdez.  It seems to me that, if you

20    get into the trial and this issue comes up in some

21    way, your position is you have an investigator you

22    can put on that will validate what you've just said,

23    does that not solve -- you raised this issue, Mr.

24    Burke -- doesn't that solve your conflict problem, in

25    the sense that you will not be a witness in this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   case; you will?

2           MR. CASTLE:  Excuse me, Your Honor.  I was

3   just trying to read the document that they put on the

4   screen for the Court to review, and it was grabbed

5   out of my hands by Mr. Beck.  I have at least the

6   right to read the document that he put into the

7   record here.  This is really unprofessional --

8   speaking of unprofessional -- grabbing documents out

9   of people's hands.

10          THE COURT:  Well, let me deal with one

11  thing at a time.  Sit down, Mr. Beck, and leave the

12  document on the Elmo.

13          MR. CASTLE:  Both pages.

14          THE COURT:  Leave everything there on the

15  Elmo.

16          Let me talk to Mr. Burke here.  Doesn't,

17  under New Mexico rules which govern this proceeding,

18  16-307, given that you've told me and

19  Ms. Harbour-Valdez that someone other than an

20  attorney was in the room when Mr. Garcia was

21  interviewed, why doesn't that solve any sort of issue

22  here?  Because your testimony and Ms. Harbour-Valdez'

23  will not be necessary.  Why isn't it just a normal

24  situation where a witness goes astray and doesn't

25  stick to what they said at the interview; you put

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   your investigator up there, and takes care of it.

 2   That's the way the Government deals with it with an

 3   agent.  Why doesn't it solve your problem, too?

 4           MR. BURKE:  I actually thought Mr. Beck's

 5   comments about how a jury might view Edward Troup's

 6   lawyers -- that struck a cord with me -- that they

 7   might be looking over at Ms. Harbour-Valdez and I,

 8   and thinking, you know, what kind of lawyers are

 9   these?  And yet, we would then be standing up asking

10   them to trust us, when we summarized evidence or made

11   particular arguments.  And it's a concern that it

12   would rub off on our client.

13           THE COURT:  Yeah.  But you've probably been

14   in this situation before, where a guy -- you know,

15   you interview him, and then he goes off the

16   reservation and does something else.  You just deal

17   with it, with your investigator, don't you?

18           MR. BURKE:  Except that the accusations

19   were personal to Ms. Harbour-Valdez and I.  So, if

20   James Daffy Garcia just changed his story, but hadn't

21   put us into his fabrication, then you're right.  But

22   he put us into his story.

23           And the investigator might be able to put

24   the lie to it.  But I'm just concerned that a jury,

25   some members of the jury might be looking over:

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Typical lawyer, typical lawyer.  And then maybe even
 2   go into the jury deliberation room and say, Did you
 3   see those lawyers, what they did?  And I'm just
 4   concerned.
 5             THE COURT:  Well, I can understand the
 6   concern.  When we enter a trial like this, as
 7   lawyers, we're concerned about everything.  But what
 8   do you want to do?  What do you want to do now?
 9             MR. BURKE:  I want to go to trial without
10   Daffy Garcia as a witness.  And I think he shouldn't
11   be a witness in this case.  And I want to defend my
12   client with my co-counsel in a trial without Daffy
13   Garcia.
14             THE COURT:  Well, what basis do I have,
15   though, to exclude him?  I mean, it seems to me
16   that -- I mean, I think the guy is a bit of a mess.
17   But isn't this just an area where for
18   cross-examination you're protected with your
19   investigator?  I don't know what the basis of me
20   excluding him would be.  Tell me what it would be.
21             MR. BURKE:  Here's what it would be:  If
22   you look at -- and I'm sure you already have -- the
23   Government's pleading regarding Billy Blackburn's
24   conflict, you will see that on November 5, my
25   co-counsel alerted the Government to the conflict.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  I saw that.
 2              MR. BURKE:  And alerted Mr. Blackburn as
 3    well.  Not that he needed to be alerted, because, of
 4    course, he knew there was a conflict.
 5              THE COURT:  I didn't see that.  I did see
 6    that in November that Ms. Harbour-Valdez told the
 7    Government about it.
 8              MR. BURKE:  They wait and wait and wait to
 9    notify the Court of the conflict, till the eve of
10    trial.
11              When I raised that issue with Government
12    counsel yesterday, they said, Well, you could have
13    raised it.  So apparently my co-counsel alerting
14    Government counsel to the conflict wasn't enough.  I
15    was supposed to bring it to the Court's attention,
16    not just alert the people who were most directly
17    involved.  And if that is true -- and that's what has
18    been represented to me -- then I have let my client
19    down by not doing something that effective
20    representation required.  And that is something that
21    I feel very bad about, that I should have raised it,
22    not just let my co-counsel alert people to it.  But
23    now that it has come upon us on the eve of trial, I
24    think it would be appropriate to say, you know,
25    Government counsel, you waited too long to bring this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to our attention.  You don't get to use him, because

 2    I have a right, as an Article III Judge to run my

 3    trials in an efficient and proper way.  I think that

 4    would be an appropriate way to deal with this

 5    dilemma, so that Ms. Harbour-Valdez and I can stay on

 6    this case and see it through and represent our

 7    client.  I believe you have the right to do that.

 8              THE COURT:  Well, that's pretty

 9    heavy-handed.  If I don't do that, what then are you

10    wanting to do?

11              MR. BURKE:  I need to confer with my

12    co-counsel.  I hadn't -- you know, I'm trying to play

13    it out in my mind, if we put the investigator on, and

14    then that puts the lie to Daffy Garcia, after they

15    were so happy to impugn my integrity.  I don't know.

16    I have to talk to my co-counsel.

17              THE COURT:  Fair enough.

18              Ms. Harbour-Valdez, I guess the same

19    question -- you may say you need to think about it --

20    what do you want to do?

21              MS. HARBOUR-VALDEZ:  If I can have a chance

22    to discuss it.  This kind of caught us off guard this

23    morning.

24              THE COURT:  I understand.

25              And Mr. Castle, what do you want to do?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1           MR. CASTLE:  Your Honor, I think the Court
2   earlier talked about its concern about whether
3   Mr. Garcia should enter into a plea agreement.
4           THE COURT:  Well, I think when Mr. Glazener
5   gets here -- in some ways I wished he had been here
6   for this, because if I were in Mr. Glazener's shoes,
7   I think I would be shaken by this conversation, and
8   then might be very hesitant to have my client put his
9   signature on this plea agreement.
10          So I'm going to maybe see if I can work
11  with Ms. Bean or something to generate some draft
12  transcript so he can take a look at it.  Because --
13  and I'm going to talk to the magistrate judge and
14  say, If you're going to take a plea on this thing,
15  you ought to know that I probably don't believe what
16  he's pleading to is truthful.
17          MR. CASTLE:  Well, the reason I bring that
18  up is because that's an exhibit of the Court's
19  supervisory powers, to make sure that the integrity
20  of the fact finding is to the level it needs to be in
21  a court of law.  And I think it's from that same
22  source that comes the authority to say that, in a
23  particular instance a witness just isn't going to be
24  called.
25          I look at Mr. Garcia's testimony.  None of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    it is -- well, I don't think any of it is
 2    corroborated.  But it's going to add probably very
 3    little value.  And here, we risk removing counsel for
 4    Mr. Arturo Garcia because of it, or creating a
 5    conflict that the appellate courts and this Court
 6    have to deal with.  We have a problem for lawyers who
 7    have sterling records having to perhaps operate with
 8    a cloud over their head, and needing to consult
 9    counsel to defend them.  All of these things go into
10    the mix.
11            And I know the idea of striking a witness
12    is normally very heavy-handed.  But in this instance,
13    given the constellation of events and the Court's
14    perhaps concern that Mr. Garcia, whatever he says is
15    questionable in its truth and accuracy, I think
16    that's where the authority comes from, if the Court
17    wishes to do that.
18            And so I know we've been protecting
19    Mr. Garcia a lot in this case, whether it be
20    providing him counsel, or attempting to.
21            THE COURT:  I'm not sure I've done
22    enough --
23            MR. CASTLE:  I understand.
24            THE COURT:  -- but I think I tried.
25            MR. CASTLE:  I understand.  And frankly, if
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    we had understood that in February of this year, that

2    the Government knew that Mr. Garcia had decided to

3    refuse to cooperate and was backtracking from his

4    story, I think maybe some of this could have been

5    avoided.  That wasn't disclosed.

6              But, in any event, I think it's from that

7    authority that it rests.  So --

8              THE COURT:  All right.  Thank you, Mr.

9    Castle.

10             Mr. Beck, after you heard what Mr. Burke

11   and Ms. Harbour-Valdez and Mr. Castle have said, does

12   it concern you now what Mr. Garcia is planning to

13   plead to?

14             MR. BECK:  Yes, certainly.  I mean, I

15   brought it to the Court's attention because I felt

16   like I had a duty to, and I didn't want to end up

17   here Monday morning doing this.

18             I had -- I've looked at things.  I looked

19   at the testimony from court, and the information that

20   was apparent to me from his testimony and from things

21   that I knew and from the way he said it, I believe

22   triggered my duties.  And that's why I proceeded the

23   way I did.  I also have professional responsibility,

24   duties not to put someone on the stand who I don't

25   think will tell the truth.  And I'm cognizant of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    those and aware of those.

 2            And what I've heard today does cause me

 3    great concern.  It may -- I'm not sure that -- I'm

 4    not sure that a conversation of this nature didn't

 5    take place.  But it certainly seems to me it did not

 6    take place with Ms. Harbour-Valdez, Mr. Burke, or Mr.

 7    Castle.  That's just the way that -- I think everyone

 8    in this room probably agrees with that.  I don't know

 9    what else happened there.

10            THE COURT:  Would I be better off from

11    everybody's standpoint, including the Government's,

12    to just say, Send Mr. Garcia home, and we're not

13    going to see him at trial?

14            MR. BECK:  I don't know.  I mean -- I don't

15    know.  He has -- it seems like here he has

16    information.  As I said, it could be that something

17    of this nature took place.  But it seems to me from

18    the proceedings here today that it wasn't with

19    Mr. Burke, Ms. Harbour-Valdez, or Mr. Castle.  That

20    may be.  So my memory of this is pretty certain who

21    it was.  He described him and her.  But I don't know

22    exactly how it happened.  And that's why I'm

23    reluctant, and that's why I'm opposing giving the

24    plea agreement to opposing counsel, because as I said

25    to you before I put it up here, it's a work product.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    It's a work in progress.  We haven't distributed it

 2    outside of our office.  But I was doing that so you

 3    could see what -- number one, what was in the factual

 4    basis based on the notes and based on the interview;

 5    and number two, so that the Court could see that we

 6    weren't just trying to malign attorneys.  There is a

 7    reason in there that attorneys aren't named.  It just

 8    says two attorneys.  It doesn't even say two defense

 9    attorneys in this case.  It just says two attorneys.

10    We were cognizant of that when we were drafting it,

11    and it was a draft.  And so that's why I'm -- based

12    on what's happened with statements by the Government

13    in this case, and the prior case, and entering those

14    in evidence, this is not a statement of the

15    Government.  This is simply a draft based on what

16    took place and discussions in my office of how to

17    approach this.

18              THE COURT:  On this draft, why don't you

19    run off a copy, and let me -- give it to the Court,

20    so it's kind of frozen in time.

21              MR. BECK:  Sure.

22              THE COURT:  Because if Mr. Garcia

23    testifies, then I think that the defense is entitled

24    to the draft.  Because it probably is --

25              MR. BECK:  Well, I think the Court should
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    think about that, because it's not -- it's not

2    Giglio, it's not Brady, it not Jencks.  It's not his

3    statement.  Right now, this is a draft -- work

4    product draft of the Government, which we disclosed

5    limited to the Court, so the Court could see where we

6    were coming from.  But it is not Giglio, Brady; he

7    has not signed it.  Mr. Garcia has not read it.  The

8    statements in there are reflected probably more

9    directly in the notes.

10           And Brady and Giglio is very clear that

11    it's the substance of the disclosure and not the form

12    that matters.  And so they have Special Agent Acee's

13    notes on what Mr. Garcia -- this is simply the

14    Government's work product that we intend to present

15    to Mr. Garcia, and then allow Mr. Garcia's counsel to

16    make changes with Mr. Garcia.

17           THE COURT:  Why don't you run it off and

18    give it to the Court?

19           MR. BECK:  Sure.

20           THE COURT:  I'll let you argue about it

21    before it's turned over, but at least the current

22    draft of the plea agreement, so it's kind of frozen

23    in time.

24           How do you feel about me meeting with Mr.

25    Castle ex parte to see what he says about the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    meeting?  Do you have any objection to that?
 2              MR. BECK:  We don't object to that, Your
 3    Honor.
 4              I just want to reiterate that I disclosed
 5    this to the Court.  It is work product.  It is
 6    deliberative process privilege.  I disclosed it to
 7    the Court to be frank with the Court.  But I did not
 8    intend to fully disclose this and waive our work
 9    product and deliberative process privilege on this
10    document.  I want to make that clear.
11              THE COURT:  I understand.  I'm not going to
12    look at it.  Just give it to Ms. Bevel, and she can
13    hold it until we --
14              MR. BECK:  And if we're going through that
15    process, I don't have a problem giving the entire
16    plea agreement.
17              THE COURT:  Yeah, why don't you freeze it;
18    run off the plea agreement, give to it her, and
19    she'll hold it.  I'm not going to look at it at the
20    present time.
21              MR. CASTLE:  Your Honor, I know the Court
22    has already ruled on this, but the problem is --
23              THE COURT:  Let me do this:  Mr. Blackburn
24    has been standing up, and probably are going to tell
25    me that Mr. Glazener is here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BLACKBURN:  Yes.
 2              THE COURT:  We need to take a break.  Why
 3    don't -- let's take a break and we'll come back in
 4    about 15 minutes.  And I'm going to talk to Ms. Bean,
 5    and see if we can get a transcript, so maybe he can
 6    start looking at that.
 7              MS. HARBOUR-VALDEZ:  Your Honor, before we
 8    do that, could we mark my notes as an exhibit,
 9    please?
10              THE COURT:  Yes.  We'll mark it -- let's
11    just run a new hearing exhibit.  So we'll mark this
12    as Exhibit A.  Mr. Beck, I'll mark yours as
13    Government's Exhibit 1, just so it has an
14    identification here.
15              MR. BECK:  And my understanding is that
16    this will be ex parte, sealed, no in camera review?
17              THE COURT:  Yeah.  I'm not even sure I'm
18    going to file it yet.  But Ms. Bevel will have it.
19    But it will have an exhibit number.  And we'll run a
20    separate set of numbers and exhibits for this
21    hearing.
22              All right.  We'll be in recess for about 15
23    minutes.
24              (The Court stood in recess.)
25              THE COURT:  All right.  We'll go back on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the record.  I think we have an attorney for the
 2    defendants in the room, and each of the defendants.
 3                Mr. Glazener is sitting here at Ms.
 4    Bevel's --
 5                MR. BECK:  Your Honor, before we begin, the
 6    United States should have done this beforehand, but
 7    we'll ask that whichever investigator was with
 8    Ms. Harbour-Valdez be excluded from these portions of
 9    the proceedings, and will not talk with
10    Ms. Harbour-Valdez about what happens during this
11    portion.
12                THE COURT:  All right.  Agree --
13                MS. HARBOUR-VALDEZ:  He's not present, Your
14    Honor.
15                THE COURT:  He's not present.  And will you
16    not relay any of the testimony or things -- the
17    evidentiary portions to the investigator?
18                MS. HARBOUR-VALDEZ:  I have not spoken with
19    him.
20                THE COURT:  All right.  So Mr. Glazener is
21    sitting at Ms. Bevel's chair.  And he has the
22    transcript up from this morning.  I started him when
23    I asked what we should go to next.  And Mr. Beck, I
24    think you then said you had something to raise with
25    the Court.  So he's reading it right now.  And if my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   eyes are good, he's at about 9:17 on the screen, so

2   he's read about a half hour of the talk.  So I'm

3   going to let him go ahead and look at that.

4           I have also supplied to Mr. Glazener the

5   document that you raised, Mr. Beck, which is Mr.

6   Acee's handwritten notes dated April 3 at the top,

7   and pointed out to Mr. Glazener where on page 2 you

8   directed the Court's attention to Mr. Garcia coming

9   to the courthouse, and told him to read from that to

10  the end.  And that has been marked as Government's

11  Exhibit 2.

12          The proposed plea agreement has been marked

13  as Exhibit 1, and it is in Ms. Bevel's possession at

14  the present time.

15          Then I also pointed him to Defendant's

16  Exhibit A, which is Ms. Harbour-Valdez's handwritten

17  notes of her meeting with Mr. Garcia on, I believe,

18  March 15.  And so those have been handed to him as

19  well.  So as he reviews the transcript, he'll have a

20  good sense -- it's a rough transcript -- but he'll

21  have a good sense of what we discussed this morning.

22          All right.  I think when we left off, Mr.

23  Beck, I recall you were speaking.  I think Mr.

24  Blackburn had pointed out that we were getting close

25  to the break.  Did you have anything further you want

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                              1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                    e-mail: info@litsupport.com

1    to say?

2            MR. BECK:  I don't think so, Your Honor.

3    You know, the debrief was short on time.  As I said

4    earlier, I know my professional responsibility

5    obligations about putting witnesses on the stand, and

6    I intend to be faithful to those as we proceed.

7            THE COURT:  And you have not made a

8    decision yet as to Mr. Garcia?

9            MR. BECK:  At this point -- I mean, at this

10   point we intend to call him in this trial.  We intend

11   to call him at trial, if we can do so in compliance

12   with our professional rules of conduct.

13           THE COURT:  All right.  Thank you, Mr.

14   Beck.

15           Well, let me say a few things, and then

16   we'll see how we want to proceed, if anything, after

17   this.  It does seem to me that, given that Mr. Burke

18   and Ms. Harbour-Valdez had an investigator from the

19   defense team present at the conversation with

20   Mr. Garcia that will testify consistent with their

21   version of what occurred, or in most cases what

22   didn't occur, it seems to me that there is no basis

23   for disqualifying Mr. Burke or Ms. Harbour-Valdez.

24   Because, as we have in many situations, we have an

25   independent witness that can testify as to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    version of events for Mr. Troup.  So I don't see a
 2    basis for disqualifying.
 3            I am going to take you up, Mr. Castle, on
 4    your offer.  And the Government doesn't seem to
 5    object.  And if I don't hear any objection from any
 6    of the defendants, I will talk to you ex parte.  I
 7    will make a record of it, but it will be sealed.  So
 8    you can tell me what you want.  But I'm not seeing
 9    anything as to you.  You may reveal something to me
10    that implicates you in some way.  I know you are the
11    one that subpoenaed Mr. Garcia, and you're the one
12    that questioned him.  But at least at the moment I
13    don't see any basis.  So unless something I'm missing
14    or not evaluating properly, I don't see a basis to
15    disqualify.
16            If Ms. Harbour-Valdez and Mr. Burke feel
17    like something needs to be done from their
18    standpoint, then I'll have to deal with that at the
19    present time.  I have grown to respect Mr. Burke and
20    Ms. Harbour-Valdez and Mr. Castle during the time
21    that we've worked together.  We've worked together a
22    long time.  And when I saw the story, it seemed
23    incomprehensible to me that that would be something
24    that any one of the three would be involved in.  And
25    so I took it with a heavy grain of salt and caution
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    when I saw it.  And after now listening to the
 2    representations of these counsel whom the Court has
 3    appointed -- and they came heavily recommended by
 4    lots of people, including Steve McCue, the Federal
 5    Public Defender -- I have grave doubts about Mr.
 6    James Garcia's version of what occurred, and I'm not
 7    inclined to believe it.  So at least from a
 8    misconduct or ethical standpoint, I don't think it
 9    occurred, so I don't see any misconduct.
10              As to -- and these words are primarily for
11    you, Mr. Glazener -- as you know, there was another
12    counsel here, Ms. Cody Rogers, that was here on March
13    15.  And after that occurred, I think there was a
14    sense that we needed to bring in more seasoned
15    counsel.  You and I have not worked together.  I
16    think this is the first time you and I have met.  But
17    I do know that Ms. Wild passed on to me, before I
18    appointed you, high recommendations from some people
19    that I respect in the bar.  I can't remember the
20    two -- I do remember one, one was from Ahmad Assed,
21    and I do have great respect for him, and I think he's
22    seasoned counsel.  You're younger, he made that
23    clear, but he also had high respect for you, and so
24    that gives me some confidence that Mr. James Garcia
25    is being represented by somebody with criminal
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   experience.  And if this is an area where you haven't

2   been before -- and I'm not sure everybody in the

3   room, everybody has been here before -- you'll know

4   who to talk to and seek out their wisdom and counsel.

5           MR. GLAZENER:  Yes, sir.

6           THE COURT:  I don't want to interrupt your

7   reading, but I will say this, that I have strong

8   reservations and concerns about Mr. Garcia signing

9   the plea agreement that Mr. Beck put on the screen

10  with the factual section.  I'm very concerned -- we

11  terminated the hearing on March 15 -- maybe it should

12  have been terminated earlier -- because I thought he

13  was getting himself into problems and trouble in

14  front of the Court.  And I have the same feeling

15  about this plea agreement; that if he enters into it,

16  he's digging himself in a further hole.

17          And then he's also now talked to Mr. Acee,

18  and said things to an FBI agent, which can be a crime

19  as well.

20          So I'm not here to give you legal advice.

21  You're representing Mr. Garcia, but I can tell you

22  that, after looking at this thing this morning for an

23  hour and a half, I have very grave concerns about him

24  signing that plea agreement with that factual

25  section, and him saying that under oath, or saying it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1    to a magistrate judge.  I'm going to try to -- do you
 2    know which magistrate judge was taking his plea
 3    tomorrow?
 4               MR. GLAZENER:  I thought it was Judge
 5    Molzen.
 6               THE COURT:  Judge Molzen?
 7               MR. BECK:  I believe it was Judge Garza.
 8               THE COURT:  Judge Garza.  Oh, here in Las
 9    Cruces.
10               MR. BECK:  Yes.
11               THE COURT:  Okay.  I'm going to try to
12    provide her with copies of these exhibits and with a
13    transcript as best we can of today's proceedings that
14    cover Mr. Garcia, just so that if you and Mr. Garcia
15    persist in wanting to plead guilty -- and that's your
16    business and y'all's decision -- I sure want her to
17    understand that I have a real concern about the
18    truthfulness of those statements he's going to be
19    making tomorrow, so that she -- I know Judge Garza
20    always does a good job with her plea colloquies.  But
21    that her antennas be up very high tomorrow to be sure
22    this is something Mr. Garcia really wants to do, and
23    do it under oath.
24               MR. GLAZENER:  I'll relay your concerns to
25    him.  Thank you, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.  You just continue to
 2    read and let me find out if there is anything else we
 3    need to deal with on this issue, or are you ready to
 4    move on to other issues, Mr. Castle?
 5              MR. CASTLE:  Your Honor, I just want to
 6    make one last record on the draft plea agreement.
 7    The argument that it shouldn't be disclosed is that
 8    it's work product.  But it was used here in open
 9    court, so it lost any protections under the Work
10    Product Doctrine.  We have a right to investigate it.
11              We just heard a new minutes ago the
12    Government is still intending to call Mr. Garcia as a
13    witness, so we would be entitled at trial to expose
14    the changing stories of Mr. Garcia, whether they be
15    from the original draft plea agreement that the
16    Government was willing to sign with him or the
17    changed one that might come tomorrow.
18              And so we would ask for -- I don't
19    understand what the harm would be in producing that.
20    If the suggested harm might be that they don't want
21    the defendants to read the entire content of
22    Mr. Garcia's statement, we're happy to wait, do this
23    under a protective order, although it was on the
24    screen.  And so I would ask that we get a copy of
25    that.  I wasn't able -- as the Court can imagine,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    when your ethics are being called into question,

2    you're scrambling quite quickly to look between

3    handwritten notes and something on a screen, and

4    everything else, that the other side is probably well

5    prepared to do and we weren't, there is a need to

6    really examine that document and see what it is.  Not

7    to mention the fact that when today they mention

8    things like -- I think it was attorney regulation or

9    professional responsibility counsel, things of that

10   nature, it was going to be a filed document in a

11   federal court matter alleging, in part, unethical

12   conduct of two or three lawyers here today.  I think

13   as a matter of fairness we should have a copy of that

14   so that we can analyze that, and perhaps provide it

15   to counsel of our choice as well.

16            THE COURT:  Do you want speak to that, Mr.

17   Beck?

18            MR. BECK:  I do, Your Honor.  I agree with

19   Mr. Castle that he and the other defendants have the

20   right and the ability to provide it to them under the

21   rules and Constitution to investigate Mr. Garcia's

22   statements.  And they have those, at least Special

23   Agent Acee's interpretation of those in his notes.

24   They will have those, Special Agent Acee's

25   interpretation in the 302.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           The plea agreement is work product,

2    deliberative process.  It's the Government's

3    statement.  Mr. Garcia hasn't seen that.  That is

4    internal to our office.  That's not his statements.

5    I'm sure -- the Court is familiar with negotiations,

6    what happens in negotiations is someone makes an

7    offer, someone makes a counteroffer.

8           So I can see in some cases -- and I think

9    the first trial they made this argument that Mr.

10   Christopher Garcia is now, revisions or proposed

11   revisions to his plea agreement may be Giglio or

12   Brady for Mr. Garcia, if he testified -- Mr.

13   Christopher Garcia, if he testified -- because those

14   are his statements or at least his attorney's

15   representations of his statements.

16          This is only a statement of the Government,

17   and it's not even a statement.  As I said to the

18   Court -- the Court asked me to disclose it.  I did

19   disclose it for the limited purpose of the Court.

20   Federal Rule of Evidence 502 talks about inadvertent

21   disclosures.  This wasn't an inadvertent disclosure

22   It was an intentional disclosure based on the Court's

23   question.  But you can disclose something in a

24   limited fashion for a limited purpose, and not waive

25   the privilege elsewhere.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1        And so that's my -- that's my position, is

2    that it has no worth.  I mean, it's just -- all it is

3    is the Government's proposal within our office of

4    what we believe Mr. Garcia may testify to.

5        THE COURT:  Try this on, and see if this

6    would work:  I won't order immediate disclosure of

7    anything at the present time.  I'll give you -- and

8    these dates are somewhat negotiable, or flexible, or

9    I'll stab one -- by the end of the day, let the Court

10   know whether you're going to call Mr. James Garcia as

11   a witness in the case.  If you're not going to call

12   him, I think probably there is no reason to have any

13   sort of disclosure, and the issue will just be at an

14   end.  If the Government persists in its need to call

15   him, then I will order the immediate disclosure of

16   the factual portions that were on the screen; just

17   that portion, not the entire plea agreement, and that

18   should be disclosed.

19       If at the point you then hand Mr. Glazener

20   the draft plea agreement that you want him to sign,

21   that one should also then be produced to the

22   defendants.  And I'm a little more flexible on the

23   timing of it.  But that could be given to the

24   defendants when and if he executes the plea

25   agreement.  How does that work?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  The latter portions are fine.
 2    The beginning portion I don't think is workable,
 3    because I think, given that we're going to be in
 4    court all afternoon today, I don't think that the
 5    Government will intentionally --
 6              THE COURT:  Will the end of business
 7    tomorrow work?
 8              MR. BECK:  I think that's fine.
 9              THE COURT:  All right.  Can you live with
10    that, Mr. Castle?
11              MR. CASTLE:  Yes, Your Honor.
12              (Mr. Lahann entered the courtroom.)
13              MR. BECK:  And I don't want the Court to
14    think that the United States is agreeing to this.
15    I'm still objection to the privilege.
16              THE COURT:  I understand.
17              MR. BECK:  And I'm going to object to any
18    attempt to introduce or use it at trial.
19              THE COURT:  I understand.  All objections
20    will be preserved.  I do think that it does contain
21    Giglio material if he's on the stand.  It's probably
22    rich with material to cross-examine him.  And at
23    least it's a version, much like Mr. Acee, it's a
24    version of what the Government understands Mr. Garcia
25    to be saying.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Mr. Glazener?

2          MR. GLAZENER:  Yes, Your Honor.  I had a

3    third question, or a third hypothetical, which is:

4    Let's say I review the Government's draft of the

5    agreement with him, and let's say he makes certain

6    changes to that, which I would anticipate based on

7    the draft being an understanding of what the

8    Government may have interpreted his statements to be,

9    versus what his actual factual predicate would be for

10   a plea.  What happens in that scenario, where if he

11   makes changes, or -- you know, that's a possibility.

12         THE COURT:  It is a possibility.  And I

13   think probably it's going to end up in these

14   defendants' hands.

15         MR. GLAZENER:  Okay.

16         THE COURT:  It will be used probably in

17   cross-examination.  But it seems to me you've got to

18   do your job.  You can't worry about that.  You can't

19   have him sign something that is not accurate.

20         MR. GLAZENER:  And I guess where I was

21   going with it is, kind of based on what you had just

22   indicated, as far as these portions would be turned

23   over, as far as the facts go, that would be something

24   different than ultimately what the facts are, if he

25   makes changes to it.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                        (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492
                                                                                        1-800-669-9492
                                                                                e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1            THE COURT:  That's correct.

 2            MR. GLAZENER:  So they will get both, so I

 3    can explain that to him.

 4            THE COURT:  Yes.

 5            MR. GLAZENER:  Thank you.

 6            MR. BECK:  And, Your Honor, I want to point

 7    out, based on Mr. Glazener's comments there, why this

 8    draft plea agreement is not a statement, and it's not

 9    Brady, it's not Giglio, it's none of the above.  And

10    the problem with it, is that if the Court is inclined

11    to think it's Brady and Giglio, it could be

12    impeachment material, then it puts whomever drafted

13    that -- me -- as a witness to why that was drafted.

14    Because Special Agent Acee didn't draft that.

15    Special Agent Acee drafted his notes and drafted the

16    302, and he can talk about why he drafted that

17    language.

18            But for that draft plea agreement to come

19    in and talk about why it was my understanding that I

20    put these things in there based on his conversation,

21    puts me as a witness.  Because there -- because

22    whoever drafted that, that's their statements, that's

23    not Mr. Garcia's statements.  Just like a 302 or

24    notes are Jencks material for the FBI agent, not for

25    the witness.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Well, I don't think anybody is

 2    going to dispute that you drafted the factual

 3    section.  And I think Mr. Acee can on the stand

 4    confirm he didn't write those; you put those in based

 5    upon the notes you had with him.  Were you at the

 6    meeting with Mr. Garcia?

 7            MR. BECK:  Yes.

 8            THE COURT:  So you were there, and you

 9    drafted those up.  But I don't think it puts you in a

10    serious witness position, because you have Mr. Acee

11    to say, yeah, Mr. Beck as the attorney drafted up the

12    plea agreement, and here was the one that he offered

13    Mr. Glazener and Mr. Garcia.  I think we're okay on

14    that.  I think we can probably walk through that

15    problem.

16            All right.  Anything else before we go to

17    the next motion?  I think the next motion I have up

18    is Mr. Billy Garcia and Mr. Troup's motion to obtain

19    physical and mental health records.  Y'all may have

20    made some progress on that.  There may be something

21    else you want to go to.  Mr. Castle.

22            MR. CASTLE:  I'm sorry, Judge, I was --

23            THE COURT:  This is Document 1985.  This is

24    the one that was filed on March 27.  I think it's

25    yours and Mr. Troup's motion for physical and mental
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   health records.  Mr. Burke.
 2             MR. BURKE:  Your Honor, we explained our
 3   position in the motion itself, and have very little
 4   to add except this comment.  Your Honor has signed
 5   orders allowing us to get various records.  For
 6   example, we recently received some mental health and
 7   physical health records relating to Lawrence Torres
 8   and Mr. Lujan and Mr. Lucero.  And they do, in fact,
 9   as we predicted, have Giglio and Brady material in
10   them.  I'm not making any accusations.  It just so
11   happens that there is impeachment material in there,
12   which is why we would ask for a similar order with
13   respect to these other witnesses.
14             THE COURT:  Do you have any objection to
15   this, Ms. Armijo?
16             MS. ARMIJO:  Well, I do because, one,
17   several of these people have attorneys to them; and
18   two, as to the people that we agreed to give them to,
19   Leonard Lujan and Eugene Martinez, those persons --
20   specifically I believe there has been information
21   about their mental health or claims they have made
22   about their mental health.  I don't believe that
23   there has been any such making -- if they can make
24   specific allegations as to certain people, then maybe
25   so.  This is just a fishing expedition.  It's very
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   personal; it's protected by HIPAA.  I think that with
 2   other persons -- or if they could make a specific
 3   showing, maybe so.  But just for a blanket request on
 4   numerous people that they have, without any showing
 5   of why they believe there is anything in the
 6   records -- and like I said, several of these people
 7   have attorneys, and I think that may be one starting
 8   place.  They have a right to weigh in as well.
 9           THE COURT:  Well, has the Government
10   attorney looked at each one of these files at the
11   Corrections Department, the physical/mental health
12   records, and reviewed those for Brady, Giglio, Rule
13   16 information?
14           MS. ARMIJO:  We have not because they are
15   covered by HIPPA, without an order of the Court, not
16   even Corrections.  So the mental health records are
17   part of -- and the medical records, mental -- mental
18   and medical records are held by a different entity,
19   is my understanding, than Corrections.  And they're
20   protected by HIPAA.  And so that's why we've gone
21   through all the trouble of the Court orders before --
22   and having the personal information reviewed by their
23   defense attorneys before it's disclosed.  It's not
24   something that we can just go, Hey, Corrections, give
25   us all the mental health records of these people.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   no, we have not, Your Honor.
 2           THE COURT:  What if I did this:  What if I
 3   entered an order -- I'm not sure it's the one the
 4   defendants proposed; maybe it can be marked up --
 5   what if I went ahead and ordered it, because if it
 6   does contain Rule 16 or Giglio or Brady, I think you
 7   probably are going to have to get it in a position
 8   where somebody can review it.  What if I ordered
 9   their production to the Government?  You don't have
10   to look at them, and you can represent that you won't
11   look at them, and then put the burden on somebody
12   to -- these people that have attorneys -- to tell the
13   attorneys, if they want to come and look at the file,
14   do it in a certain period of time, look at it and see
15   if they have any objection to it being produced to
16   the defendants and to the Government.  And then, if
17   there is no redactions or anything on behalf of that,
18   then the Government could go ahead and do its review,
19   or make a decision just to let it go, and turn it
20   over to the defendants and let them review it.  Would
21   such an order be acceptable to the Government?
22           MS. ARMIJO:  Well, I think that's the more
23   cautious way to go.  I still believe that it's --
24   Your Honor, we don't believe that there is a basis to
25   believe that anything exists.  So we're still opposed
```

SANTA FE OFFICE                                                     MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   to it, because there is no basis to believe.  Again,

2   we had specific reason as to other people, but not as

3   to these people, and not just a blanket reason.  So I

4   don't think, without a basis to believe that

5   Brady-Giglio exists in these documents, without

6   specific information, I don't think that the United

7   States is under obligation to go look at them.

8            And I can say that number 12 and 13, they

9   do not have counsel.  And if we're talking about

10  Government friendly people, the Rascons are not

11  Government friendly.

12            THE COURT:  Well, let's do this:  Let's get

13  this process started.  I am concerned about there

14  being a fairly big stack of documents somewhere that

15  nobody has reviewed for Rule 16, Giglio.  And I'll

16  accept Mr. Burke's representation that when they have

17  gotten records, they have found things that are going

18  to be useful to their defense.  That doesn't surprise

19  me, having looked at many physical and mental health

20  records over the years, or witnesses.

21            So let me see if I can take the order here

22  that's marked up, that was attached to the

23  defendants' -- Mr. Burke, what would you think about

24  putting the burden on the defendants to contact the

25  attorneys and see if they -- I'll get the process

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   rolling by getting them in the possession of

2   Government.  It would seem to me that if the

3   attorneys don't care, then probably the Government

4   will just produce them to you, rather than them go

5   through them.  Would that -- can I put the burden on

6   you to contact the attorneys?

7          MR. BURKE:  Yes, Your Honor.  And I will

8   just tell you the instructions or the requests I made

9   to my legal assistant of 17 years:  I said scour

10  Pacer, scour the records.  If any of these people

11  have an attorney that you can find anywhere, make

12  sure they get a copy of this restricted motion.  I

13  know one attorney did, Javier Alonso's lawyer, Nathan

14  Chambers, because I got an earful from him about it.

15         And we will accept the burden -- and I

16  think Ms. Armijo is correct, we couldn't find anybody

17  for the Rascons.  And we mailed this motion -- I

18  believe we mailed a copy of this motion to their last

19  known addresses.  But I wouldn't swear to it because

20  I wasn't in charge of the mailing.

21         MS. ARMIJO:  Your Honor, I have great

22  concerns, then, for the Rascons, because they do have

23  a right under HIPAA, certainly, and I don't think

24  that Corrections would even feel comfortable without

25  knowing that somebody is advocating for them as far

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                          1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1    as privacy or any other rights.  And so I guess I

2    would challenge defense counsel on at least those

3    two, to show what information they have that they

4    believe there is anything in the Rascons' records.

5    For that matter, I would say as to all of them.  As

6    you may recall, we went through this with Eric Duran.

7    And Eric Duran has an extensive amount of records.

8    But I don't think any of it was ever used against

9    him.

10            THE COURT:  Well, why don't we do this:

11   Let's get -- I'll order the production of the Rascons

12   to you.  And then I think I can draft something here

13   that will protect them.  Why don't you -- are the

14   Rascons the only ones that are not represented by

15   counsel, Mr. Burke?

16            MR. BURKE:  That's what I remember having

17   reported back to me.

18            THE COURT:  And you think you have an

19   address that they could be served?

20            MR. BURKE:  We had the Rascons --

21            THE COURT:  Your paralegal is saying yes.

22   Why don't you do this:  Why don't you draft up a

23   order to show cause to the Rascon brothers,

24   indicating that they need to show cause within --

25   pick a period of time.  We're working with a 10 and a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   five here -- to show cause why the Court should not
2   order the United States to go ahead.
3            MR. BURKE:  A week.
4            THE COURT:  Why don't y'all draft up an
5   order, show it to Ms. Armijo, and then the other
6   defense counsel, and I'll enter it and we'll get them
7   involved in this.
8            MR. BURKE:  Thank you, Your Honor.
9            MR. CASTELLANO:  Your Honor, just related
10  to the stipulated protective order, which is document
11  1985-2, just looking at it quickly, I noticed that it
12  still refers only to Eugene Martinez' attorney.  So
13  that will need to be changed appropriately.  It's on
14  page 2 of that order.  I think this was probably used
15  for Eugene Martinez, but it needs to be adapted to
16  the additional people.
17           THE COURT:  Which order are you looking at,
18  Mr. Castellano?
19           MR. CASTELLANO:  It's document 1985-2.  It
20  was attached, I believe, to the motion.  So any
21  subsequent version just needs to accurately reflect
22  who it will go to or who will review the documents.
23  And then on page 4 of that document it still lists
24  John Anderson as counsel for Frederico Munoz.  I
25  believe that's now Louis Lopez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Give me the first
 2    change that you had.
 3              MR. CASTELLANO:  On page 2 of the proposed
 4    order, paragraph 2 B lists Eugene Martinez' attorney
 5    only.
 6              THE COURT:  Okay.
 7              MR. CASTELLANO:  So that has to be
 8    adjusted.  And then the last page, I think the only
 9    change is John Anderson, I believe is now Louis
10    Lopez.
11              MR. BURKE:  May I make one additional
12    correction?  I think that Sammy Griego, number 5,
13    also does not have an attorney, and I believe that he
14    should go into the Rascon group.  And I believe that
15    was mailed to him.  I believe his last known address
16    is some prison facility.
17              MS. ARMIJO:  We will accept service for
18    Sammy Griego.
19              MR. BURKE:  Okay.
20              MS. ARMIJO:  And provide it to him.  So
21    whatever you have, provide it to us.
22              MR. BURKE:  Fair enough.
23              MS. ARMIJO:  Your Honor, Sammy Griego does
24    not have an attorney either.
25              THE COURT:  Mr. Castellano, who did you say
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    was representing him now?
 2              MR. CASTELLANO:  I believe it's Louis
 3    Lopez.  He's out of El Paso, L-O-U-I-S is the
 4    spelling of it.
 5              THE COURT:  And was there other changes to
 6    this you needed?
 7              MR. CASTELLANO:  Those are the only two I
 8    saw right offhand, Your Honor.
 9              THE COURT:  What was the other one?
10              MR. CASTELLANO:  Oh, the first was a
11    reference only to Eugene Martinez' attorney on page
12    2.  And the other one would be counsel.
13              THE COURT:  All right.  I'm going to step
14    down to the podium, so give me just a second to get
15    around here.  So on the order itself, this is the way
16    I structured it.  See if this works.  So I'll grant
17    it in part, then I put:  "The defendant shall contact
18    the attorneys for the witnesses and see if there is
19    any objection to the production to the witnesses."
20    And then here, "if the witnesses or their attorney
21    consent to their disclosure," so you don't have any
22    obligation to disclose until there is a consent by
23    the witness.  That will take care of the Rascons and
24    Sammy Griego, or their attorneys.  Does that work?
25              MR. BURKE:  That's fine.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                MS. ARMIJO:  Yes.
 2                MR. BURKE:  Thank you, Your Honor.
 3                THE COURT:  On this one right here, Mr.
 4    Castellano -- he may have stepped out -- that was the
 5    change.  So it would be, "As defined above, the
 6    witnesses' attorneys, the witnesses, and the United
 7    States Attorneys," and I made the one change, and
 8    sign it here.  Then the one change to Louis Lopez.
 9    Does that look all right?
10                MS. ARMIJO:  Yes, that's correct.
11                THE COURT:  Is everybody else on board with
12    this?
13                MR. CASTLE:  Yes, Your Honor.
14                THE COURT:  So Ms. Bevel, if you'll get
15    those filed, get those entered.
16                All right.  Anything else on that motion,
17    Mr. Burke?  Mr. Castle?
18                MR. BURKE:  No, Your Honor.
19                MR. CASTLE:  No, Your Honor.
20                THE COURT:  Any other defendants?  The
21    Government?
22                MS. ARMIJO:  No, Your Honor.
23                Your Honor, as far as the next issue -- and
24    I don't know, but I know that Special Agent Acee was
25    ready to go this morning.  And he had a conflict
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    at -- and I don't know what he's doing right now, but
 2    I know that the conflict was going to be at 1:00.  So
 3    if they anticipate his testimony, they should go
 4    ahead and do that.
 5              THE COURT:  Is that agreeable with
 6    everybody?
 7              MR. CASTLE:  Yes, Your Honor.
 8              THE COURT:  So do we need to call him?  He
 9    probably needs to call in the "Meet Me Conference
10    Line," and I don't know the number here.  Am I
11    reading it right above you?
12              THE CLERK:  No, Your Honor.  I have it
13    right there.
14              (A discussion was held off the record.)
15              MR. BECK:  He should be calling now.
16              THE COURT:  Mr. Acee.
17              THE WITNESS:  Yes, sir.
18              THE COURT:  This is Judge Browning.  I'll
19    remind you that you are still under oath.  I think
20    that you were being questioned by Mr. Burke, was it,
21    when we had to break at about -- it was Mr. Beck that
22    was questioning you about 5:10 on March 15, I think
23    somewhere around there.  And we had to break to have
24    a CJA meeting.  So Mr. Beck, if you wish to continue
25    your -- I think it's your cross-examination.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  It is.  I'll pass the witness,
 2    Your Honor.
 3              THE COURT:  All right.  Mr. Burke, if you
 4    wish to redirect Mr. Acee.
 5              MR. BURKE:  Thank you, Your Honor.
 6              THE COURT:  Mr. Burke.
 7                    REDIRECT EXAMINATION
 8    BY MR. BURKE:
 9         Q.   Special Agent Acee, are you there?
10              THE COURT:  Mr. Acee, are you hearing us?
11              THE WITNESS:  Yes, sir, I am.
12              THE COURT:  Did you hear Mr. Burke?  Are
13    you hearing him?
14              THE WITNESS:  I can't hear him.
15    BY MR. BURKE:
16         Q.   Special Agent Acee, I wanted to follow up
17    on a couple of questions that Mr. Beck asked, and I
18    will launch right into that.  Okay?
19         A.   Yes, sir.
20         Q.   You will recall that in the FBI file number
21    that ends 62017, that was the one that sort of ended
22    with the Burkhead letter.  Do you recall that?
23         A.   Yes, sir.
24         Q.   And there was an Exhibit P, going back to a
25    meeting that former FBI Agent Sonya Chavez and others
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    had with Mr. Burkhead in 2013.  You may remember the

2    phrase the meeting was to "discuss the United States

3    Attorney's Office efforts, or lack thereof," do you

4    recall that Exhibit P?

5         A.   Yes, sir.

6         Q.   And then Exhibit R was the letter of

7    declination, and we discussed that at some length?

8         A.   Yes.

9         Q.   Exhibit U was the PowerPoint slide wherein

10   Agent Rhoades -- very detailed PowerPoint --

11   indicated that the file was being turned over to

12   former FBI Special Agent Sonya Chavez.  Do you recall

13   that as well, the slide from the PowerPoint at the

14   end, where the file got turned over?

15        A.   Yes, sir.

16        Q.   And we discussed your Exhibit V, which was

17   your report on your review of the various FBI files,

18   and that was generated by the some of the back and

19   forth during the discovery arguments and discussions

20   that we were having earlier in the case.  You recall

21   that as well?

22        A.   I do.

23        Q.   I'm now going to ask you a question about

24   your Grand Jury testimony on December 1, 2015.  Are

25   you with me?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes, sir.

 2             MR. BECK:  And, Your Honor, I'm going to

 3   object as to outside the scope of cross.

 4             THE COURT:  How does it connect with cross?

 5   Mr. Burke, you'll have to help me a little bit on

 6   that.

 7             MR. BURKE:  Your Honor, it does tie

 8   directly into the Troup motion to dismiss, which is

 9   1284.  One of the points that I had alleged, and

10   Ms. Harbour-Valdez, is what evidence was there really

11   that was new going into the probable cause for the

12   indictment that was presented to the Grand Jury.  So

13   this is actually something that was specifically

14   mentioned in 1283.

15             THE COURT:  Well, I'm going to give Mr.

16   Burke some leeway here.  I'm trying to remember the

17   testimony and where we were, but I'll give you some

18   leeway.  Overruled.

19        Q.   Special Agent Acee, I'm looking at page

20   113, and I know for a fact, having observed you on

21   the witness stand, that you have a good memory.  And

22   that is where this question at line 5, Ms. Armijo

23   asked you:  "And is Billy Garcia -- at the time was

24   he -- did he call the shots, and was he the highest

25   one in a position to call that?"
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Answer by you, line 9:  "Yes."
 2              And then moving down to line 12:  "And what
 3      else did some of your cooperators say?
 4              Answer, line 14:  "The informant known as
 5      Jovan, I called him "Baby Rob" throughout this, also
 6      served time with Billy Garcia.  And they were
 7      actually pretty good friends.  And Billy related the
 8      details of the murder, why they were going to get him
 9      and how they did it."
10              Next question, line 20:  "And do you have
11      another cooperator that talked about Troup?"
12              Answer:  "Yes."
13              Question by Ms. Armijo:  "What did that
14      cooperator say?"
15              Answer:  "That cooperator served time with
16      Edward Troup.  And Troup related his participation in
17      the murder, why they did it, and how it went down."
18              Do you recall that testimony?
19      A.    Yes, sir, I think I do.
20      Q.    And who was that informant?
21      A.    The second informant?
22              MR. BECK:  Objection, Your Honor.
23              THE COURT:  Hold on, Mr. Burke.  Mr. Beck?
24              MR. BECK:  Foundation:  Does he know who
25      that informant was who he was presenting the Grand
```

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                      1-800-669-9492
                                                      e-mail: info@litsupport.com

1    Jury transcript about?

2    BY MR. BURKE:

3        Q.   Special Agent Acee, would I be correct in

4    assuming you know who that informant was?

5        A.   I think I can give the answer.  I'm only

6    hesitating because, as you know, there is so many

7    informants.  I did want to have a little bit of time

8    to make sure I'm giving you an accurate answer as to

9    which one.

10       Q.   This really is -- I'm really not trying to

11   trick you in any way.  If you, later on, determine

12   that the answer you give was inaccurate, then by all

13   means, we'll amend the record.  I'm just wondering if

14   you know who it was where you described that person

15   as "That cooperator served time with Edward Troup,

16   and Troup related his participation in the murder,

17   why they did it, and how it went down"?

18       A.   Yes, sir.  I understand the question.  Will

19   you give me just a moment, please?

20       Q.   Sure.

21       A.   I'm just looking over some of my notes.

22   What helped me is I know they started cooperating at

23   different times.  I think at that time who I may have

24   been referring to was Flaco, Fred Quintana.

25           THE COURT:  Can you repeat that, Mr. Acee,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    repeat that name?

2         A.   Yes, sir.  Fred -- I think who I may have

3    been referring to at that time was Fred Quintana,

4    a/k/a Flaco.

5         Q.   I know who you're talking about.  You're

6    talking about Fred Flaco Quintana.  His other

7    nickname sometimes is Football Head?

8         A.   Yes, sir.

9         Q.   And you didn't interview him in person in

10   2015, according to the 302.  Have I read your 302

11   correctly?

12        A.   Did I indicate it was over the telephone?

13        Q.   It says "telephonic."

14        A.   Yes, sir.  I arrested Mr. Quintana.  I

15   don't remember the exact date, but he may have been

16   in custody at that time.  I'm not quite sure.  But I

17   do remember doing an interview over the telephone,

18   though.

19        Q.   Yeah.  And in that interview -- this is

20   where it will get difficult, but it's a very short

21   302 -- and you simply say, "Troup admitted and Chavez

22   admitted."  Does that ring a bell?

23        A.   Yes, sir.

24        Q.   And you provided recently some handwritten

25   notes, and your handwritten notes are consistent with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that, "Troup admitted and Chavez admitted"; correct?

2         A.   Yes, sir.

3         Q.   And that's the extent of the interview.

4    Where were you when you called him?

5         A.   Home.

6         Q.   And where was he when you reached him?

7         A.   I think he was at a facility.  Otherwise, I

8    would have talked to him in person.  I'm thinking he

9    was at a facility.

10             And Mr. Burke, as I'm looking over my

11   notes, I do have two other subjects that, if you'd

12   like me to mention their names as well, provided

13   information.

14        Q.   No.  Actually I'm really -- and I'll be

15   specific, so as to telegraph what my argument is

16   here.  I'm looking for the time period between the

17   Burkhead declination and your testimony on December

18   1, 2015.  That would be the new investigation.  And I

19   believe the extent of it is Fred Football Head

20   Quintana.

21        A.   Well, there may be two others I was going

22   to mention.  I don't have to, if you don't want me

23   to.

24        Q.   Once again, if it turns out later that

25   there is an additional interview between the Burkhead

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    declination and your testimony on December 1, 2015,

2    by all means, we can amend and supplement the record.

3    But I think you will find that the only interview

4    relating to Castillo and Edward Troup was Fred

5    Quintana.

6         A.   I'm sure you have researched that well,

7    sir.  If there is not a question pending, I'll be

8    quiet.

9         Q.   Correct.  You're a seasoned witness.  And

10   that is the only one that you can think of as we're

11   having this telephonic examination today; is that

12   correct?

13        A.   No, sir, I think there may be two others

14   given the timeline you're talking about.

15        Q.   Okay.  Well, as I said, this isn't an

16   attempt to be tricky.  So if you can come up with

17   some later, you can even call one of the prosecutors

18   and they can make a proffer.  Fair enough?

19        A.   Yes, sir.  Did you not want me to give you

20   the names now?

21        Q.   Oh, if you have them now, sure.

22        A.   Okay.  Sammy Griego, known as Sammy G.  I

23   know that I met him early on in the investigation,

24   provided to information on Mr. Troup.

25        Q.   Yes.  And if you look at the Sammy Griego

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   302s, you'll see that he only discussed the Fred Dawg

2   Sanchez homicide.  He did not discuss the Castillo

3   homicide.  Do you want to look at that now?

4        A.   I'll trust your representation.

5        Q.   Okay.  Yeah, I'm focused on Castillo and

6   Edward Troup here; that's the focus of my motion to

7   dismiss.

8        A.   Okay.  Then the other name probably won't

9   have anything to do with it.

10        Q.   We lost you there for a second, Special

11   Agent Acee.

12        A.   Given what you just said, Mr. Burke, the

13   second informant name would not have anything to do

14   with it.

15        Q.   Okay.  And when you had your telephonic

16   with Fred Quintana, he gave you no details regarding

17   the alleged admission by Mr. Troup, did he?

18        A.   I believe you're correct.

19        Q.   Because you would have put that in your

20   302, or you would have written it down in your

21   handwritten notes; correct?

22        A.   Yes, sir.

23             MR. BURKE:  All right.  That's all I have,

24   Your Honor.

25             THE COURT:  All right.  Thank you, Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Burke.

2             Mr. Castle, do you have any redirect of Mr.

3    Acee?

4             MR. CASTLE:  Yes, I do, Your Honor.  Thank

5    you.

6             Mr. Acee, can you hear me?

7             THE WITNESS:  Yes.

8                      REDIRECT EXAMINATION

9    BY MR. CASTLE:

10        Q.   This is Jim Castle, Mr. Billy Garcia's

11   attorney.

12        A.   Good afternoon.

13        Q.   When we last spoke at the motions hearing,

14   do you recall that you attempted to identify the

15   names or identities of certain informants that the

16   Department of Corrections could no longer identify?

17   Do you recall that process?

18        A.   Yes, sir.

19        Q.   And I believe when you did that, you

20   indicated that this was your attempt to identify; is

21   that correct?

22        A.   Yes, sir.  It was in response to your Touhy

23   letter.

24        Q.   Did you say that was in response to our

25   Touhy letter?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         A.   Yes.

 2         Q.   I want to ask you just a couple of

 3   questions about those particular informants you

 4   identified.  Do you have discovery in front of you?

 5         A.   I do, sir.  I have my notes.  And then I

 6   can look up Bates numbers on -- the computer is a

 7   little slow.

 8         Q.   I'm going to reference Exhibit M, which for

 9   your purposes is page 133 of the DeLeon discovery.

10         A.   I have that in front of me.

11         Q.   Okay.  I have that pulled up on the screen

12   here for the people in the courtroom.  And I'm going

13   to go to page 3 of that exhibit, if we could.  So I

14   want you to go to page 133.

15         A.   I'm there.

16         Q.   Now, in the third paragraph -- I think we

17   talked last time about this -- this informant in the

18   third paragraph -- and I believe you indicated that

19   was Jimmie Gordon.  Do you recall testifying to that?

20         A.   Yes, sir.

21         Q.   There is a New Mexico correctional staff

22   officer by the name of Will Jaramillo that's

23   mentioned there.  Do you see that?

24         A.   Yes.

25         Q.   And where was Mr. Jaramillo assigned in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      2001?

2           A.   Off the top of my head, I'm not sure.

3           Q.   Well, let's perhaps look at the previous

4      program.  Do you see that in this report there was a

5      briefing done at Southern New Mexico Correctional

6      Facility, where the investigation was discussed, and

7      statements were obtained, and things of that nature?

8           A.   Yes, sir.

9           Q.   So does that help you that the correctional

10     staff, Will Jaramillo and Daniel Lucero, that

11     interviewed this informant were, in fact, officers at

12     the Southern New Mexico Correctional Facility?

13          A.   That's correct.

14          Q.   Now, Mr. Gordon, on March 29, 2001, he

15     wasn't in the Southern New Mexico Correctional

16     Facility, was he?

17          A.   I'm not sure.

18          Q.   Do you recall that he had been moved out of

19     that facility due to some threats against his life --

20     do you recall that -- prior to the day of the

21     homicide?

22          A.   I don't, sir.  I think I'm limited to -- I

23     was trying to compare reports with sources.  I didn't

24     do a ton of research on it.

25          Q.   So why do you believe this informant then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   was Jimmie Gordon?

2       A.   Well, I made some notes here, which I'm

3   looking over now.  I think that he is Source 13 on

4   Bates 19128.

5       Q.   Okay.

6       A.   And when I'm comparing the name of the

7   people he's talking about, he is the only source that

8   mentions Jesse Ibarra, so that was the first thing

9   that caught my eye.  A couple of guys talk about

10  Leroy Lucero, but he was the only one I would find

11  that talked about both Lucero and Ibarra.

12      Q.   So you're making an assumption that only

13  one person was capable of talking about those two

14  people?

15      A.   No, sir, I'm just -- in my review of all

16  the materials that are in those murder books, the

17  Bates numbers, that was my best guess at trying to

18  identify that source for you.  And I did it, and I'm

19  just explaining how I did it.  I don't know these

20  men, and I haven't talked to them.

21      Q.   Okay.  So let's try to break that down a

22  little bit.  Have you interviewed Jimmie Gordon?

23      A.   No, sir.

24      Q.   Have you reviewed interviews of Jimmie

25  Gordon?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   I have read interviews of Jimmie Gordon.

2       Q.   And do you recall in those interviews he

3   indicated that he was removed from the Southern

4   Correctional Facility before the homicides ever took

5   place?

6       A.   That sounds familiar, yes.

7       Q.   Okay.  So knowing that now, would you agree

8   with me that this must be a different informant who

9   informed them on March 29, at the Southern

10  Correctional Facility of the information contained in

11  paragraph 3 on page 133 of discovery?

12      A.   No.

13      Q.   Okay.  How was Jimmie Gordon then

14  interviewed at the Southern Correctional Facility on

15  March 29, if he was not there?

16      A.   Well, I don't know that we agree that he

17  wasn't there.

18      Q.   Okay.  Are you telling us with any level of

19  certainty that the informant in paragraph 3 on page

20  133 is Jimmie Gordon?

21      A.   No, sir.  I was trying to be helpful.  And

22  you asked me to attempt to identify him, and that is

23  my best guess.  I'm not definitively saying that's

24  definitely him.

25      Q.   If we can move back to paragraph 3 for a

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

1    second.  Now, the informant on page 133, paragraph 3,

2    which for the record is Exhibit M, this individual

3    provided some pretty specific information to Officers

4    Jaramillo and Lucero concerning the murders.  Would

5    you say that's correct?

6         A.   Yes.

7         Q.   And that's information that there were

8    three assailants for each hit?

9         A.   Yes.

10        Q.   And only eight subjects knew of the hit; is

11   that right?

12        A.   Yes.

13        Q.   And they also indicated that the people

14   that called the hits were Leroy Lucero and Jesse

15   Ibarra; is that correct?

16        A.   Yes.

17        Q.   Did you interview Leroy Lucero in the last

18   couple of months?

19        A.   Yes, sir.

20        Q.   And did Mr. Lucero indicate that he had

21   made a phone call with a person by the name of Angel

22   DeLeon prior to the murders?

23        A.   He had phone calls with Angel Munoz.

24        Q.   Angel Munoz, I'm sorry.  And that he

25   confirmed with Mr. Munoz that the murders should

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    happen of these two individuals?

2         A.   Yes.

3         Q.   So Mr. Lucero at least corroborates a

4    portion of this statement that's in paragraph 3 on

5    page 133; is that correct?

6         A.   That the hits were to take place, yes.

7         Q.   If we could, let's go to page 1222, which

8    for your purposes it's page 1222 of DeLeon discovery,

9    but for our purposes it's Exhibit K that's already

10   been admitted.  Let me know when you've reached that

11   page.

12        A.   1222 was not one of the ones in the Touhy

13   letter, so I need to look it up.

14        Q.   I know it's been a little while, but you

15   might recall that when you last testified you

16   indicated that the individual that was at page 1222

17   was an individual by the name of Augustine Saenz.

18        A.   Yes, I remember talking about him.

19        Q.   Did you interview Augustine Saenz?

20        A.   I have not.  I believe other agents have.

21        Q.   Okay.  So is it based upon your comparison

22   of the interview by other agents, and then comparing

23   to it this particular document that you made the

24   assumption that it was Mr. Saenz that made the

25   statement?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes, sir, I think it was.  Although, when I
 2   was last with you there at the courtroom, I don't
 3   believe -- I don't know if I had my -- I don't know
 4   if I had 302s.  I may have only been looking at
 5   Corrections and police reports.
 6        Q.    Well, you're probably not surprised that
 7   the defense doesn't have those 302s yet of Mr. Saenz'
 8   interview.  But that aside, did Mr. Saenz -- was he
 9   shown that page 1222, and the subsequent page in his
10   interview?
11        A.    I'll check our 302s, if you want me to.  I
12   can't answer that question off the top of my head.
13        Q.    That's fine.  Take your time.
14        A.    I believe that Mark Myers, one of our
15   former TFOs interviewed Mr. Saenz on July 7.  I'm
16   reviewing that now.
17        Q.    July 7 of what year?
18        A.    July 7 of 2016.
19        Q.    I'm sorry, I couldn't hear that.  July 7 of
20   what year?
21        A.    2016.
22        Q.    Is that 2016?
23        A.    Yes, sir.
24              Your question, sir, is what?
25        Q.    Does your review of that 302 indicate that
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492
                                                        e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Mr. Saenz was shown page 1222, and the next page, and

2    identified that as his statement?

3        A.   I'm checking now.  No, sir, it doesn't

4    indicate that he was shown any documents.

5        Q.   Now, when we were last here, you had

6    indicated that a dolly full of information or

7    materials were -- had just been delivered from the

8    Department of Corrections.  Do you recall that?

9        A.   From the State Police.

10       Q.   From the State Police, okay.  Do you recall

11   that testimony?

12       A.   Yes.

13       Q.   When we last talked, I believe you said

14   that some of the missing material, for all you know,

15   might be on that dolly?

16       A.   I don't know.  I just wanted to be very

17   candid with you all and let you know that I received

18   some information, and I hadn't had time to look

19   through it yet.

20       Q.   Have you had an opportunity to look at that

21   material since then?

22       A.   I have reviewed it.  And I signed for it.

23   And then I believe Agent Neale, who is in the

24   courtroom there today, actually reviewed some of that

25   as well.  But to answer your question, yes, the FBI

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    has reviewed that.

 2         Q.    On the dolly of materials, or any other

 3    materials that have come in since we were last in

 4    court, did you locate the video from the prison cells

 5    of Garza, Castillo, the Polaroid photos of inmate

 6    Allen Patterson, the physical examinations of inmates

 7    in the various pods for injuries, the daily logs and

 8    correctional officer logs, the inmate mail or the

 9    inmate phone calls that we discussed last time?

10         A.    I have received no new information.  The

11    dolly contained entirely State Police evidence on

12    Adrian Burns.

13              THE COURT:  Would you repeat that, Mr.

14    Acee?

15         A.    Yes, sir.  To answer Mr. Castle's question,

16    I have not received anything new related to the

17    things he asked.  The boxes on the dolly contained

18    Adrian Burns evidence only, and that was what the

19    State Police had.

20         Q.    Agent, what I'd like you to do at this

21    point in time is pull up DeLeon page 43684, if you

22    could.

23         A.    43684.  Mr. Castle, which homicide is that?

24    That would make it quicker for me.

25         Q.    It's a report dated January 22, 2002, of an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    interview that Frederico Munoz had with the FBI, it

2    appears.  Are you familiar with that interview that

3    Mr. Munoz had back in January of 2002?

4         A.   I believe so.  I'm searching for the

5    document now.  There is a lot of evidence in the

6    murder book, and it goes a little quicker, but I'm

7    searching.

8         Q.   Well, if you're familiar with the

9    interview, perhaps you don't need to really see the

10   report.  But let me ask you whether there was any

11   file opened up on Frederico Munoz as an FBI source in

12   2002, that you found.

13        A.   I can answer that question because I

14   believe I noted when Mr. Munoz was an informant, and

15   he was not opened as an informant for the FBI until

16   2009.  I do know from my conversations with retired

17   Detective Robert Martinez that he was an informant

18   for the sheriff's department back in the day.  I'm

19   not sure exactly what years, though.

20        Q.   There is a file number on -- at least on

21   the document that we're looking at, which is Exhibit

22   AA, page 43684.  It has a file number on the bottom,

23   an FBI file number that ends in 55402.  Do you know

24   what file that is?

25        A.   I'm looking through my notes.  What page?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.    The page is 43684.

2        A.    And the FBI case number.

3        Q.    55402.   That's at least the last five

4    digits of the case number or file number.

5        A.    As I sit here today, I'm not in front of my

6    FBI computer, so I'm actually checking to see what

7    case that is.

8        Q.    Okay.   I'm going to try to read from this

9    document, just so we could get through this.   On the

10   document, do you recall that during the January 22,

11   2002 interview that Mr. Munoz said he has information

12   on the murders of Orlando Garcia a/k/a Looney, and

13   Frank Castillo, that occurred at the Southern New

14   Mexico Correctional Facility, and that it was rumored

15   that first name unknown, last name unknown, a/k/a

16   Baby Rob carried the hit?

17       A.    No, that doesn't sound familiar.   I did

18   find that case number.   So let me just --

19       Q.    And what is that case number for?

20       A.    It looks like it's a closed -- it's a

21   historical closed FBI case.   The title of it is

22   "Syndicato de Nuevo Mexico, Joe Barros, B-A-R-R-O-S.

23       Q.    And have you looked in that file to see if

24   there are materials that are relevant to prosecution

25   in this case?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


1      A.   Yes, sir, we've searched this database many

2   different ways.  I think I've testified about that

3   before.  But I'm just reviewing the file.  Various

4   files are closed.  It's electronically scanning to

5   see what it contains.

6      Q.   Do you recall that in 2002, Mr. Munoz,

7   Freddie Munoz, had told the FBI that he believes he

8   may have already been burned and on the outs with the

9   gang?  Do you recall that?

10      A.   I remember reading something like that,

11   yes.

12      Q.   Do you know whether this interview was

13   tape-recorded?

14      A.   I think I'm looking at the same report,

15   sir.  Do you have a serial number on it by chance?

16      Q.   I'm sorry, I couldn't hear you.

17      A.   I was asking if you had a serial number on

18   your copy by chance.

19      Q.   We don't have a serial number.

20      A.   Okay.  Was the date of the interview on

21   January 22, 2002?

22      Q.   It is.

23      A.   I'm looking at the same report now.

24      Q.   Was that interview recorded?

25      A.   It does not indicate it was recorded.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Have you talked to Jennifer Sparks or Agent
 2   Daniel Howington to determine whether they recorded
 3   that interview?
 4        A.   I have not.  Daniel Howington still works
 5   in our office and I can ask.  I know in my historical
 6   conversations with him he didn't have very much
 7   knowledge of the SNM, and didn't recall doing any
 8   significant interviews.
 9        Q.   Do you know whether Mr. Munoz was opened up
10   as a -- I'm not sure what you call it -- a --
11        A.   Informant.
12        Q.   Yeah, it's an informant for the FBI?
13        A.   I contacted our confidential human source
14   staff that's in charge of doing the database, and I
15   asked them to tell me the first time Munoz was opened
16   as an informant.  And it was February 6, 2009, by
17   Agent Mackenzie Monarco.  And I think I previously
18   mentioned to you that she was a new agent under the
19   supervision of Sonya Chavez.
20        Q.   Do you know why Mr. Munoz was not opened as
21   an informant in 2002?  Because, according to this
22   document, he offered to be an informant for the FBI.
23   Do you know why they rejected that offer?
24        A.   Are you asking my opinion?
25        Q.   Yes, sir.  Did you learn why?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   I don't think the FBI was at all interested

2   in pursuing the SNM in 2002.  There is no significant

3   investigative activity.

4      Q.   Is that your conclusion, or did you have

5   conversations with specific agents that indicated

6   that the FBI was not at all interested in pursuing

7   the SNM?

8      A.   Yes to both.  It's my conclusion, based on

9   conversation and my review of these files, being an

10  investigator myself, and in talking with agents who

11  are either here or now retired, that they didn't take

12  a serious shot at these guys until Agent Roundy

13  opened his case.

14     Q.   Well, let me ask you, in the materials that

15  you've reviewed prior to Agent Roundy becoming

16  involved, did you ever see or review files on various

17  SNM members?

18     A.   If I'm understanding correctly, since I've

19  become the case agent in Atonement, I've reviewed all

20  that stuff.  Prior to that, I had very little

21  knowledge of the SNM.

22     Q.   No, what I'm asking is have you seen,

23  physically seen any files on individual SNM members

24  that were put together by the FBI prior to Agent

25  Roundy being assigned?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.    Yes, I've reviewed all of his files.

2    Q.    And what are the pre Roundy files?  What do

3    they look like?  And how many of them were there

4    concerning the SNM?

5    A.    At the last hearing, I testified about

6    that, and shared all the case numbers.  I'm looking

7    for those notes now.  But there were approximately a

8    half a dozen cases.  None were very significant, in

9    that, I mean, they didn't contain material --

10    Q.    Can you repeat that again?  They didn't

11    have what material?

12    A.    I think I cut you off.

13    Q.    Actually, I think I cut you off, because we

14    didn't hear what you said.  So if you could just

15    repeat what you said.

16    A.    Yes, I was saying that the older files

17    don't contain very many materials, SNM materials, the

18    sequential number of the documents in the file.  Now,

19    the Atonement, which we opened three years ago, there

20    are around 1600 documents already.  So when I look at

21    these old files, there is only a dozen or maybe 50

22    serials.  That's not very significant.

23    Q.    In these older materials, did you find

24    separate files on individual SNM members?

25    A.    Well, I guess I don't know what your

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492
                                                                        1-800-669-9492
                                                          e-mail: info@litsupport.com



PROFESSIONAL COURT
REPORTING SERVICE

1    definition of separate files would be.  There is

2    information on different members in there.  It

3    largely looks like it's information from the

4    Corrections Department.  So memorandum, or escape

5    flyers, also known as information sheets.  I see a

6    lot of those in there.  So it's -- most of it is

7    information from either the Department of Corrections

8    or the Bernalillo County Sheriffs.

9         Q.   Okay.  So you didn't see any files that

10   were prepared by the FBI, looking into the background

11   of specific SNM members; is that correct, in these

12   older materials?

13        A.   Well, I would say the FBI keeps files.  I

14   mean, they ran criminal history checks.  They -- at

15   times, I can remember somebody, I think, applying for

16   a pin to concentrate on Styx, on Gerald Archuleta.  I

17   don't recall what year that was.  But in my opinion,

18   as a senior agent, they're not very good files.

19   There is not much to them, not much investigative

20   activity.

21        Q.   Let me ask you kind of a different area.

22   Did you, prior to working on Operation Atonement, did

23   you do any other work on the SNM in a previous stint

24   here in Las Cruces?

25        A.   No, sir.  I was assigned -- when I was down

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    there I worked -- I was on a squad that focused on

2    the Juarez Cartel, the Mexican drug cartel.  And I

3    worked exclusively drug trafficking organizations.  I

4    did not work the SNM.

5           As a member of the FBI SWAT Team, I was

6    present on an arrest or two on Agent Roundy's case.

7    But I don't recall ever interviewing anyone, and

8    didn't know too much about it.

9      Q.    Agent Roundy (sic), last time under

10   questioning by the prosecution you indicated that

11   prior to your involvement, you'd only located two

12   witnesses that had been previously opened as FBI

13   sources, who would testify in the trials involving

14   the 2001 murders.  Do you recall that?

15     A.    I think so.

16     Q.    Now, when you used the term "opened as FBI

17   sources," what do you mean by that?

18     A.    They had to be numbered to be opened as a

19   an FBI informant.

20     Q.    But would it be fair to say that a number

21   of people had been interviewed concerning what

22   happened in 2001, that were not labeled an FBI

23   source?

24     A.    Probably.

25     Q.    Well, for example, Jimmie Gordon had been

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    interviewed by State authorities and provided

2    information as to who had ordered and carried out the

3    murders in 2001; is that right?

4         A.   Mr. Castle, I'm sorry, I think we may have

5    spoke over each other.

6         Q.   Okay.  I'll repeat the question.

7              Prior to Operation Atonement witnesses,

8    such as Jimmie Gordon, Augustine Saenz, Joseph Otero,

9    and many other witnesses had discussed what they

10   observed, and who they knew were responsible for the

11   2001 murders with State officials; is that right?

12        A.   Yes.

13        Q.   They just weren't opened as FBI sources?

14        A.   True.  And I don't think they were

15   interviewed by the FBI.  I think they were

16   interviewed by Corrections and/or State Police.

17        Q.   Was Jimmie Gordon ever opened as an FBI

18   source on any matter?

19        A.   No.

20        Q.   I want you to look at page 61829 of the

21   DeLeon discovery, which we have marked as Exhibit AB.

22   And maybe I can just tell you what this document is,

23   because it's pretty fresh, and you may not have to

24   look at it.  It's a document dated March 21, 2018.

25   And what it's regarding is whether the FBI was able

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to locate a particular custodial interview tape of a
 2    person by the name of Benjamin Clark.  Are you
 3    familiar with that document?
 4         A.   I've seen it, and I spoke with the author
 5    of that document, yes.
 6         Q.   And do you recall that the conclusion was
 7    that the tape can no longer be found?
 8         A.   That is what the agent told me, yes.
 9         Q.   And do you believe that was a thorough
10    search for that recording?
11         A.   Yes.  We had a pretty heated conversation
12    about it.  And I trust that agent, and he's actually
13    a very good agent.  And he drove -- not only did he
14    search there in Las Cruces, but he drove up here to
15    Albuquerque to specifically look for it.  He talked
16    to the transcription supervisor and the ELSUR
17    technician in his search of it.  So I think he tried
18    hard to find it.
19         Q.   I'm hoping there is not a second open desk
20    over at the FBI these days.  Am I right there?
21         A.   His office is down there in Las Cruces.
22    I'm happy to look over it, but I'm sure he did.
23         Q.   For our help, if there are any open desks,
24    we could use them here in the courtroom.
25              MR. CASTLE:  I have no further questions,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    but if I could move for the admission of AA and AB at
 2    this time, Your Honor.
 3              THE COURT:  Any objection, Mr. Beck?
 4              MR. BECK:  No, Your Honor.
 5              THE COURT:  Any objection from any other
 6    defendants?  Not hearing any, Defendants' AA and AB
 7    will be admitted into evidence.
 8              MR. CASTLE:  Judge, I missed a question.
 9    May I ask it?
10              THE COURT:  You may.
11    BY MR. CASTLE:
12         Q.   Agent Acee, when you were last here, the
13    prosecution asked you some questions about whether
14    you were -- whether you found any documents that
15    indicated the United States Attorney's office made a
16    conscious decision to refrain from charging the 2001
17    murders for tactical reasons.  Do you recall those
18    questions?
19         A.   Yes.
20         Q.   Did you find detailed reports about the
21    U.S. Attorney's Office's decisionmaking process
22    through the years regarding why or why not they
23    pursued the 2001 murders?
24         A.   I did not find any documents that detail
25    that, no.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  I have no other questions.
 2              THE COURT:  All right.  Thank you, Mr.
 3    Castle.
 4              Do any other defendants have any redirect
 5    of Mr. Acee?  Were you going to ask some more, Mr.
 6    Beck?
 7              MR. BECK:  A couple, Your Honor.
 8              THE COURT:  Okay.
 9                    CROSS-EXAMINATION
10    BY MR. BECK:
11        Q.   Good morning, Special Agent Acee.
12        A.   Good morning, sir.
13        Q.   I want to take you back to DeLeon 133 Bates
14    No., which is Exhibit N.  Do you have that in front
15    of you?
16        A.   What was the Bates number?
17        Q.   133?
18        A.   Yes, I have it.
19        Q.   I want to direct you to the paragraph you
20    were going over with Mr. Castle, where it says, "New
21    Mexico Corrections Staff, Will Jaramillo."  Do you
22    see that?
23        A.   Yes.
24        Q.   Does that paragraph indicate that that
25    interview actually happened on March 26 or 25, or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1   does that indicate when that interview informed him
 2   of anything?
 3        A.   No, it doesn't.
 4        Q.   Okay.  And so in your review of this
 5   document, is there anything that suggests -- well,
 6   can you conclude that this informant provided him
 7   information even in March of 2001?
 8        A.   No.
 9        Q.   And, if I understand how you -- you
10   identified this person, if memory serves me, as
11   Jimmie Gordon; is that right?
12        A.   Yes.
13        Q.   And I think you did that by looking at
14   other statements Jimmie Gordon provided, right?
15        A.   Yes.
16        Q.   And if I'm right, it's because he mentions
17   Jesse Ibarra?
18        A.   Yes.
19        Q.   And how many other documents do you think
20   you reviewed with other CI's information about the
21   Garza and Castillo murders, just in a range?  Or can
22   you even give me a range?
23        A.   Hundreds of pages.
24        Q.   Hundreds of pages, maybe -- how many
25   hundreds?  Close to 1,000?  Close to 500?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   Closer to 1,000.  If you recall, I had a

2  couple large binders there.  They probably measured

3  two or three feet high when I stacked them up.

4      Q.   I recall them well.  I just wanted to make

5  sure you recalled the same thing.

6      A.   Yes.

7      Q.   And in your review of that, the statement

8  in this, which says that this person learned through

9  their source that inmate Leroy Lucero called the hits

10  of inmate Castillo and Garza, and that inmate Jesse

11  Ibarra orchestrated the hits, was that information

12  only correspondent to information that you found from

13  Jimmie Gordon?

14      A.   Yes.

15      Q.   And is that substantially the same

16  information you found from Jimmie Gordon?

17      A.   Yes.

18      Q.   Is that pretty much the same information

19  that is found in Bates No. 19128, which you reviewed

20  in preparation for this hearing?

21      A.   Yes.

22      Q.   And so I know you said you can't say for

23  certain that this is Jimmie Gordon.  And I understand

24  that.  But do you anticipate that Jimmie Gordon would

25  provide substantially the same testimony as we see

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    here in this report that the informant gave?
 2         A.   Yes.
 3         Q.   And for Exhibit K, which is DeLeon Bates
 4    1222, I understand that you attributed that to
 5    Augustine Saenz, if I'm right?
 6         A.   Yes.
 7         Q.   And did you go about the process in the
 8    same way, corresponding the statements in there to
 9    other statements Augustine Saenz had given?
10         A.   Yes.
11         Q.   So like I asked you with the last document,
12    would you anticipate that whoever gave that
13    testimony, Augustine Saenz, would come in and testify
14    to the same or substantially the same information
15    attributed to the source in that report?
16         A.   Yes, sir.  And I would add that when Mr.
17    Castle and I were speaking a few minutes ago, I
18    reviewed that 302, from 2016, by Mark Myers, and that
19    information corroborates what I see in these reports
20    here in this document here.
21         Q.   Okay.
22         A.   Further corroborated.
23         Q.   Did you say further corroborates it?
24         A.   Yes.
25         Q.   Okay, thank you.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          The dolly that we talked about last time, I

2    know you were being safe, but is it safe to say that

3    was mostly physical evidence for the Burns murder?

4          A.   Yes, I believe there was 122 items, all

5    related to the Adrian Burns murder.

6          Q.   Mr. Castle was asking you about informants

7    who are not FBI sources.  If you open an informant,

8    if you open them as an FBI source, is that in

9    anticipation that they would be ready and willing to

10   testify at trial?

11         A.   Some don't want to testify; the majority of

12   my informants, that's one of the reasons I talk about

13   when I open them.

14         Q.   Let me ask you this:  When you started

15   investigating the SNM Prison Gang, were members that

16   you talked to, just freely open out on the streets,

17   were they ready and willing to come and testify at

18   trial without any -- what I may call encouragement?

19         A.   The majority were.  Some weren't.

20         Q.   Let me ask that question a different way,

21   Special Agent Acee.  I understand -- and I can't

22   remember if it was testimony in this hearing or

23   elsewhere -- part of your investigation into the SNM

24   included filing several stand-alone criminal actions

25   against them for things in the nature of felon in

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                 1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    possession of a firearm or drug trafficking crimes.
 2    Do you remember that?
 3         A.   Yes.
 4         Q.   Approximately how many of those what I'm
 5    calling one-off proceedings did you and the other
 6    persons working with you on Atonement file so far, or
 7    investigate?
 8         A.   Between 40 and 50.
 9         Q.   And what was the purpose of doing that?
10         A.   To keep pressure on the SNM, develop
11    informants, and just keep dismantling the
12    organization.
13         Q.   In your review of the other files that
14    you've reviewed so far, did other FBI agents go
15    through the same process of investigating and
16    prosecuting one-off crimes with the intention to,
17    number one, prosecute crimes, but number two, develop
18    informants who may testify in court?
19         A.   Yes.
20              THE COURT:  Mr. Beck, is this a good time
21    for us to take our break?
22              MR. BECK:  I'm just concerned about Special
23    Agent Acee making this.  So let me just hit one or
24    two more points, then I'll be done with him.
25              THE COURT:  All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Q.   Special Agent Acee, did you develop

2    Robert -- this is going to Mr. Burke's questioning

3    earlier -- did you develop Mr. Robert Martinez as an

4    informant in this case before you filed the

5    indictment?

6    A.   Yes.

7    Q.   And I know you didn't file it -- I'm sorry,

8    I shouldn't have said that.  But was he a member of

9    the tabla and one of the leaders of the SNM?

10    A.   Yes.

11    Q.   Before you developed Robert Martinez, in

12    your review of the files, had any other leaders of

13    the SNM, members of the tabla, come on board to

14    cooperate and potentially testify for the Government

15    at any time in this case?

16    A.   With the exception of maybe Leroy Lucero,

17    when he was in the feds, is the only one I can think

18    of, when Agent Roundy initially developed him.

19    Q.   And Fred Quintana, was he previously

20    willing to cooperate and testify before you developed

21    him in 2015?

22    A.   No.

23    Q.   And although he provided information on

24    Troup, were there others that he developed in

25    anticipation of the indictment, and provided

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    information about the Garza and Castillo murders?

 2        A.   Yes.

 3             MR. BECK:  No further questions, Your

 4    Honor.

 5             THE COURT:  Thank you, Mr. Beck.

 6             Are the defendants going to have further

 7    questions?

 8             MR. BURKE:  No, Your Honor.

 9             THE COURT:  Mr. Castle, anything?

10             MR. CASTLE:  No, Your Honor.

11             THE COURT:  All right.  Is there any reason

12    Mr. Acee cannot be excused at this time, Mr. Burke?

13    Mr. Castle?  Anybody else?

14             MR. BURKE:  No, Your Honor.

15             MR. CASTLE:  No, Your Honor.

16             THE COURT:  Mr. Beck?

17             MR. BECK:  No, Your Honor.

18             THE COURT:  All right.  You are excused

19    from the proceedings.  Thank you for your testimony.

20             All right.  Let's go ahead and take our

21    lunch break, and we'll get together a little bit

22    after 1:00 clock.  All right.  See you then.

23             (The lunch recess was held.)

24             (An ex parte proceeding was held with Mr.

25    Castle regarding James Garcia and the investigator.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    (The following proceedings were held in open court.)
2              THE COURT:  All right.  We'll go on the
3    record.  Deputy Gunter?
4              THE MARSHAL:  Yes, sir.
5              THE COURT:  I was wondering a couple of
6    things.  The defense lawyers have asked in the first
7    trial -- this is the way I remember it, and correct
8    me if I'm wrong -- in the first trial the defense
9    lawyers were allowed to be here in the courtroom at
10   7:30 in the morning, get through the gates.  The
11   jurors themselves can't come through until 8:00.  And
12   that allowed them to get through before the jurors
13   came through, and whatever daily stuff.  Is that
14   going to be a possibility for the second trial as
15   well, that y'all could let the defense lawyers
16   through the front door so they can get in here at
17   7:30?
18             THE MARSHAL:  I don't see a problem with
19   it, Judge.  I'll get with the GSA, and make sure the
20   CSOs are aware.
21             THE COURT:  If you find out there is a
22   problem, get back with us.  Otherwise, we'll just
23   assume they can get through at 7:30.  And I'll tell
24   the jurors that they will not be able to come in
25   until 8:00.  Is that -- I think that was the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    arrangement the first trial.  And correct me if I'm
2    wrong.
3              THE MARSHAL:  Yes, sir.
4              THE COURT:  The second thing is just a
5    reminder, if this is -- we can do this the second
6    trial -- last night, when I was leaving, the van was
7    pulling out, had its lights flashing, and those sort
8    of things.  I think the agreement was that that's
9    okay, of course now.  But once the trial starts,
10   because of the jurors leaving and maybe seeing that,
11   y'all would not have lights flashing or something,
12   and there wouldn't be any stopping of traffic and
13   things like that, so that they knew the men were in
14   custody and leaving in vans.  If you could just
15   confirm that whatever agreement we had earlier will
16   stay in place for this trial as well.  I'm not saying
17   anything was wrong last night, because that's fine,
18   the jury is not here, but it kind of shifts on
19   Monday.
20             THE MARSHAL:  Yes, sir.
21             THE COURT:  Is there anything else while
22   we're talking to the Marshal Service about anything?
23   The Government?  Mr. Castle?  Anything?
24             MR. CASTLE:  Yes, I'm wondering if we could
25   get a room key for the defense room.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Is that this little room right
 2   outside?
 3              THE CLERK:  I'll get that for them.
 4              THE COURT:  Okay.  I think there is one
 5   key.  You've got the key.
 6              THE CLERK:  I'll get it for her.
 7              THE COURT:  There is one key, and Ms. Bevel
 8   will get it and get it to Ms. Gilbert.
 9              MR. CASTLE:  The record should reflect my
10   client is not the key holder.
11              THE COURT:  I'll let you make your own
12   record on that.
13              Anything else while we've got the Marshal
14   Service here?
15              On the chairs -- I'll go ahead and say this
16   in front of you -- the chairs are what they are.  Let
17   me tell you a little bit of history.  Most of you
18   know this.  Of course, Ms. Wild and Mr. Castle sort
19   of negotiated.  And in Ms. Wild's view, and I guess
20   therefore the Court's view, this was agreed to.  Did
21   y'all agree to these chairs?  These were rented.  The
22   Court had to endow some money, or I don't know what
23   the procedure is, so that it puts money in there, and
24   went and spent it.  So you're stuck with it.  We will
25   deal with requests on chairs on a case-by-case basis,
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                         1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

1  so no mass request.  That's not going to work.  Mr.

2  Shattuck, we will work with him.  He made the first

3  request and we will work with him.  I can't promise

4  anything right now.  But he's made his request, and

5  we'll work with him.  If others of you have case by

6  case, and it would have to be a case-by-case basis,

7  continue to work with Ms. Wild on that.  It hasn't

8  been shifted over to Ms. Bevel yet.

9            Okay.  That's all I can kind of think of.

10  Thank you so much, Deputy.

11            THE MARSHAL:  No problem.

12            THE COURT:  I appreciate it.

13            I did, at 1:05, have Mr. Castle address the

14  Court ex parte.  And I understand why he wanted to do

15  it ex parte.  I think there was some work product

16  that he revealed to me.  I can -- I will say this

17  much:  That I'm even more convinced that Mr. James

18  Garcia is not being accurate with Mr. Acee, or with

19  the Government, and that that story, while it matches

20  what occurred here in the courtroom, it doesn't match

21  anything that I've seen or heard from the defense

22  counsel.  So I'm cautious here, because I want to be

23  fair and impartial.  But to the extent whatever

24  conclusion I make is helpful to anybody, it's just

25  that I think he knows what occurred here in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   courtroom, and he has invented a story that matches
 2   what occurred in the courtroom.  But that story
 3   doesn't match, in my view, anything that occurred
 4   with the defense counsel on this first table here or
 5   with their investigator.
 6           Okay.  The next motion I have up is
 7   Document 1993.  Y'all may want to go in a different
 8   direction.  We're at 1:30 on the last day before
 9   trial.
10           And while you're coming up here, Mr.
11   Cooper, let me say to you that on the jury, y'all may
12   know this more than I do, but I am going to receive a
13   box this afternoon.  Probation is bringing it down
14   from Albuquerque, there is a probation officer.  So
15   I'm going to receive my questionnaires.  I understand
16   there will be 69, so that 85 number that I've been
17   using is 69.  What concerns me a little bit about
18   that is that remember I was always using the figure
19   85.  So I thought I probably wasn't going to have 25
20   down in the jury room, but I was probably going to
21   have 10, 15.
22           Now, you know, let's say six don't show up,
23   I've got three or four down there.  I would hate for
24   us to -- let's say we really pick up speed on the
25   first day of the jury selection for some reason, like
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the Journal published an article on the front page of

2    the paper, and I've gotten the local people here and

3    the Jury Services trained not to anticipate how I

4    select juries, and not to tell them anything about

5    security or anything like that.  So let's say we have

6    a smoother first day, and we're picking up steam, but

7    we don't get our people out, and we don't have any

8    additional jurors.  So I guess I'm talking with

9    Ms. Wild a little bit about bringing some of the

10   people we are scheduled to bring on Tuesday, just to

11   cushion a little bit, so that if we're moving along,

12   but we run out of jurors, we can start bringing in

13   those additional groups in on Monday afternoon rather

14   than waiting till Tuesday.  But that's kind of where

15   we are.

16          I'm not sure I have a whole lot more to

17   say, because I did meet with Judge Garza, expressed

18   my concerns to her.  She's going to review a

19   transcript of the March 15 hearing, she's going to

20   review what we did this morning.  And Mr. Castle's ex

21   parte portion, the two exhibits I have, and of

22   course, I guess by the time the 1:30 plea colloquy

23   occurs, she'll have a copy of the plea agreement.

24   She'll be more informed than I will be at that point.

25   But I did express to her my concern that, you know,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    she needed to do -- I know she'll do an excellent job
2    taking the plea, and I don't need to tell her how to
3    do her job.
4            But I just wanted her to be aware that at
5    least I have come to the conclusion that if he signs
6    that same plea agreement, and swears to it tomorrow
7    at 1:30, I do not think it's an accurate story.  And
8    she really may want to convince herself before she --
9    she's not going to accept the plea agreement, of
10   course, but she will be accepting the plea of guilty,
11   if he pleads that way.  And I thought it was fair for
12   her to know that she really may want to make sure
13   that he is voluntarily and knowingly making that
14   plea.  And I talked to her a little bit about Mr.
15   Glazener, and why he was selected, and who
16   recommended him to the Court, and that she might want
17   to make sure that he's comfortable with the
18   representation that he has.
19           All right.  Mr. Cooper.
20           MS. HARBOUR-VALDEZ:  Your Honor, before Mr.
21   Cooper comes up, do we still get that sequential list
22   today of the 69 jurors?
23           THE COURT:  Y'all don't have it yet?
24           MS. HARBOUR-VALDEZ:  No, Your Honor.
25           THE COURT:  Let me just call and see where
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   it is, because I did promise it to you this morning.
 2               (A discussion was held off the record.)
 3               THE COURT:  Ms. Harbour-Valdez, Ms. Wild's
 4   computer has crashed.  As soon as she gets it back up
 5   and running, she'll get it to you here shortly.
 6               MS. ARMIJO:  And, Your Honor, since there
 7   is 69, are you going to be bringing what show up of
 8   those 69 up?  I realize before when it was 85, if --
 9               THE COURT:  I will just bring 60 in.
10               MS. ARMIJO:  Okay.
11               THE COURT:  But what I'm concerned about is
12   what if 10 don't show up, then I don't have what I
13   promised you and what I promised myself I'd have in
14   here.  So I may bring some of the people that we were
15   going to tell -- we've already, in fact, told them --
16   that's a bit of a problem, we've told that Tuesday
17   group they don't have to show up on Monday.  So if I
18   have them do it, but I may have them do it for 10,
19   15, 20 people.  I need to spend a little bit of time
20   with Ms. Wild at some point.  So I may call some of
21   those people and say, 10, 15 of them, you have to
22   show up, so we have them in reserve.
23               MS. ARMIJO:  I was just going to suggest
24   that if 61 show up, instead of having one down, maybe
25   we could squeeze one extra person.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  We can squeeze them in.  The
 2    more people we get in here, the longer it takes.
 3              MS. ARMIJO:  Right.  I was going to say, if
 4    it's a number that close to 60 that show up, maybe we
 5    try to get them in here; in the event we run out, it
 6    would save time if we don't have to start --
 7              THE COURT:  I may get you 85, so they won't
 8    probably be alone.
 9              MS. ARMIJO:  Oh, okay.
10              THE COURT:  I'll probably have a group of
11    20 or something down there.  That's what I'm leaning
12    toward doing, have 60 in here.  We got them picked
13    the first time with 60, and assuming we don't have,
14    you know, some of the things we had going on last
15    time, maybe it will go a little bit smoother.
16              MS. HARBOUR-VALDEZ:  Will we receive the
17    names of the additional ones, the Tuesday group?
18              THE COURT:  I'll try to make sure that
19    happens.
20              MS. HARBOUR-VALDEZ:  Okay.  Thank you, Your
21    Honor.
22              THE COURT:  Mr. Cooper.
23              MR. COOPER:  Thank you, Judge.
24              Judge, with regard to our targeted response
25    with regard to the statements, Document 1909, we are
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    going to call Josh Mirka.  And his lawyer, Ann

 2    Gibson, is present in the courtroom, Judge.  He's

 3    downstairs.  And I think we've already advised the

 4    Marshal Service to bring him up.

 5            THE COURT:  All right.  Ms. Gibson, if you

 6    want to come up and sit next to Mr. Mirka up here,

 7    there is a seat right there, and you just move it

 8    wherever you want.  I don't have a law clerk over

 9    here, if you want to be more comfortable, pull that

10    around, take whatever you want.

11            MS. GIBSON:  Thanks.

12            MR. COOPER:  And Judge, Mr. Castle has

13    reminded me that it's Document 2009, our supplement

14    to that document that I had talked about.

15            THE COURT:  All right.  Mr. Mirka, if you

16    would stand again, and I'm going to have Ms. Bevel

17    swear you in.  She's right in front of you here.

18            THE CLERK:  Right here.

19            THE COURT:  You'll raise your right hand to

20    the best of your ability.

21            THE WITNESS:  Yes.

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                      JOSHUA MIRKA,
 2        after having been first duly sworn under oath,
 3        was questioned and testified as follows:
 4                    DIRECT EXAMINATION
 5             THE CLERK:  Please be seated, and please
 6   state your name.  And would you spell your last name
 7   for the record.
 8             THE WITNESS:  Joshua Mirka, M-I-R-K-A.
 9             THE COURT:  Mr. Mirka.  Mr. Cooper.
10             MR. COOPER:  Thank you, Your Honor.
11   BY MR. COOPER:
12        Q.   Good afternoon, Mr. Mirka.
13        A.   Good morning.
14        Q.   Mr. Mirka, you know Chris Chavez, don't
15   you?
16        A.   Yeah.
17        Q.   And Chris Chavez is seated in the courtroom
18   here today?
19        A.   Yes.
20        Q.   And you met Mr. Chavez when you two were
21   housed at the Hidalgo County Detention Center?
22        A.   Yes, sir.
23        Q.   And how long were you at Hidalgo?
24        A.   I was only there for -- I've been there for
25   a little over a month, maybe two weeks with him.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Two weeks with him.  Okay.  And when you

 2   arrived at Hidalgo, you had previously been at

 3   Deming?

 4        A.   Yes.

 5        Q.   Okay.  When you got to Hidalgo, you met

 6   Chris, and you were housed right next to his cell;

 7   correct?

 8        A.   Yes.

 9        Q.   And you guys talked through the vent?

10        A.   Yes.

11        Q.   And during those discussions you were able

12   to talk with him about a case involving the Syndicato

13   de Nuevo Mexico?

14        A.   Yes.

15        Q.   And some murders that occurred in 2001?

16        A.   Yes.

17        Q.   And during those conversations, did you

18   have occasion to view discovery and photographs, what

19   have you, of that particular prosecution?

20        A.   Yes.

21        Q.   And in the course of viewing that discovery

22   and talking with Chris, he told you that -- about his

23   involvement in the murders?

24        A.   Yes, briefly.

25        Q.   Okay.  Now, at some point in time, you made
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  a statement to Special Agent Thomas Neale, to Maria

2  Armijo, prosecutor for the Government, and I believe

3  your lawyer was present during this statement, back

4  on March 22, 2018.  Do you remember that day?

5       A.   Yeah.

6       Q.   And on that day, that's when you relayed

7  all of this information to the Government agents and

8  to Ms. Armijo?

9       A.   Yes.

10      Q.   You talked about how you heard that "Bill

11  runs the car"?

12      A.   Yes.

13      Q.   Do you remember making that statement?

14      A.   Yes.

15      Q.   And why is it that you made that statement,

16  and who were you talking about?

17      A.   Mr. Chavez made a statement of -- he had

18  mentioned Wild Bill or something.  And I said, Wild

19  Bill?  Just the name stuck with me.  "Yeah, he ran

20  the Syndicato car."

21      Q.   Okay.  Did he say anything else with you

22  about him running the car?

23      A.   Just that he said -- he stated that Wild

24  Bill had made some decisions in the past that he

25  didn't agree with, but that's just the way it was.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        Q.   Did he tell you what decisions those were?

2        A.   Just some good people got hurt.

3        Q.   Did he tell you what good people got hurt?

4        A.   No.

5        Q.   And how they got hurt?

6        A.   No.

7        Q.   And he told you that he didn't agree with

8   that?

9        A.   Yeah.

10       Q.   Did he tell you that all of the defendants

11  planned to stick together?

12       A.   Yeah.

13       Q.   And what was he talking about?

14       A.   He said that they were the last of the

15  people that weren't ratting on anybody.

16       Q.   Okay.

17       A.   About the only ones that were sticking

18  together, staying true to who they were.

19       Q.   And did he talk about some of the rats?

20            MR. BECK:  Objection, Your Honor.  I think

21  this is going outside the context of the statement.

22            THE COURT:  Tie it to the statement.

23            MR. COOPER:  I will, Your Honor, thank you.

24       Q.   Did he talk to you about whether or not

25  anybody in this particular case had made any
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   statements with regard to these rats?

 2       A.   Yes.

 3       Q.   And can you tell me what he said?

 4       A.   He just -- because I got acquainted with

 5   some of them at Deming, one of them, so he knew who I

 6   was talking about, which was Mr. Lujan.

 7       Q.   Okay.

 8       A.   And just stated that, yeah, he was ratting

 9   on them.  And that's when he handed me his discovery

10   on Lujan to read.

11       Q.   And isn't it a fact that the reason you

12   went to the Government is because Leonard Lujan told

13   you how to cooperate and how to seek out an agreement

14   from the Government?

15       A.   No.

16       Q.   No?  Okay.

17       A.   No.

18       Q.   Did you have those sorts of discussions

19   with Mr. Lujan?

20       A.   No.

21       Q.   You went to the Government on your own?

22       A.   Yes.

23       Q.   So Mr. Chavez didn't say anything else

24   about Billy, Wild Bill's involvement with regard to

25   the 2001 murders?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No.
 2        Q.   And the entire time that you were housed
 3   with him, there were no other statements with regard
 4   to Wild Bill or Billy Garcia?
 5        A.   No.
 6        Q.   Okay.
 7             MR. COOPER:  Your Honor, I pass the
 8   witness.  Thank you.
 9             THE COURT:  All right.  Mr. Cooper.
10   Anybody else?  Mr. Castle?  Anyone?  Mr. Burke?
11             MR. BURKE:  No, Your Honor.
12             THE COURT:  Anybody have any direct
13   examination of Mr. Mirka?  Mr. Beck, are you going to
14   cross-examine Mr. Mirka?
15             MR. BECK:  Yes, Your Honor.
16             THE COURT:  Mr. Beck.
17                   CROSS-EXAMINATION
18   BY MR. BECK:
19        Q.   Good afternoon, Mr. Mirka.  When you
20   reviewed discovery with Mr. Chavez, was that paper
21   discovery or was that on the tablet?
22        A.   It was just paper discovery.
23        Q.   And it was paper discovery about Mr. Lujan?
24        A.   Yeah, it was a whole stack of -- I only
25   went to Lujan.  He handed me a whole stack, but I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    only just read the top one.  I only read a part of
2    it.  And then I slid it back under the door to him.
3    I wasn't really, at the time, interested in any of
4    it.
5         Q.   And I guess, what -- if you know, what was
6    it?  Was it sort of a transcript of a court
7    proceeding, or was it --
8         A.   To me it looked like a -- like a witness
9    statement, or like a -- it was a court transcript,
10   but it looked like it was a -- like something that
11   was like he was talking, and they were typing while
12   he was talking, is what it looked like to me.
13        Q.   Okay.  Did he show you his computer tablet?
14        A.   Yeah.
15        Q.   And did he show you any of the documents on
16   that tablet?
17        A.   No, just -- just pictures of --
18        Q.   And if you remember -- well, Ms. Bevel, may
19   I have the overhead, please.  I'm showing you a
20   document.  And the document is not really important.
21   Did the documents that he showed you of Mr. Lujan's,
22   or that had Mr. Lujan's name on them, did they have
23   the Bates stamp number like that if you remember?
24        A.   Oh, I don't remember.
25        Q.   Okay.  Mr. Mirka, are you a member of the
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    SNM?

2         A.    No.

3         Q.    And did you review discovery from this

4    case -- I think you said you knew other people that

5    may be involved in this case.  Did you review

6    discovery from anyone else involved in the case?

7         A.    No.

8         Q.    So when he said that Wild Bill runs the

9    car, before he told you about Wild Bill, did you know

10   who that was?

11        A.    No.

12        Q.    And when he told you about the murders that

13   he was involved in, did you know about those murders

14   beforehand?

15        A.    No.

16        Q.    Why do you think he told you?  Why do you

17   think he told you about that stuff?

18        A.    I don't even know, other than we just

19   talked all the time from cell to cell.

20        Q.    Do you think you guys were sort of, I guess

21   friendly, because you were housed next to each other?

22        A.    Yes.

23        Q.    So did you and Mr. Chavez engage in just

24   friendly conversation together?

25        A.    Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Was it in that context of the friendly

 2   conversation that he made those statements to you?

 3        A.   Yeah.

 4             MR. BECK:  Nothing further, Your Honor.

 5             THE COURT:  Thank you, Mr. Beck.

 6             Anyone else?  Mr. Cooper, do you have

 7   redirect of Mr. Mirka?

 8                    REDIRECT EXAMINATION

 9   BY MR. COOPER:

10        Q.   What kind of pictures did he show you?

11        A.   Just pictures of all the people of the

12   Syndicato Gang, and the videos of people getting beat

13   down, and I guess people going into houses and doing

14   whatever they were doing.  Some, I guess, were

15   getting murdered.  Videos that they have on the

16   tablet, is what he was showing me.

17        Q.   And they came from the tablet?

18        A.   Yeah.

19        Q.   Did Lujan share any discovery with you

20   anything from his tablet, or --

21        A.   No.

22        Q.   -- any paper?

23             MR. COOPER:  Okay.  Thank you.

24             THE COURT:  Thank you, Mr. Cooper.

25             Anybody else on the defense side have any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   redirect?  Anybody else?

2           All right.  Mr. Mirka, you may step down.

3   Is there any reason that Mr. Mirka cannot be excused

4   from the proceedings?  Mr. Cooper?

5           MR. COOPER:  He may, Your Honor.

6           THE COURT:  All the defendants agree with

7   that?  Mr. Beck?

8           MR. BECK:  He may, Your Honor.

9           THE COURT:  All right.  You are excused

10  from the testimony.  Thank you for your testimony.

11  You're excused from the proceedings.  Thank you, Ms.

12  Gibson.  I appreciate your assistance this afternoon.

13          All right.  Mr. Castle, do you have another

14  witness?

15          MR. BECK:  Your Honor, before we get there,

16  it's concerning to me that what sounds like a

17  transcript of Mr. Lujan amongst the stack of papers

18  was in the prison cell with Mr. Chavez.  I think the

19  point of the tablets is that there is not paper

20  discovery in the cells with the defendants.  I don't

21  know what it is.  It sounds like it's probably a

22  2007, 2008, whatever time period that was,

23  transcript, which we've talked about in connection

24  with this motion.  But I don't know that we've been

25  provided -- I don't know what we've been provided in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   reciprocal discovery.  But I'll note for the record,
2   and for everyone here, that that concerns me, because
3   it seems like it would be -- particularly a
4   transcript of Mr. Lujan being interviewed by police,
5   seems like the exact reason we have the tablets and
6   not paperwork in this case.
7            THE COURT:  Does anybody on the defense
8   side know anything about this?  Was that news to you,
9   Mr. Cooper?
10           MR. COOPER:  It is, Your Honor.
11           THE COURT:  I'm not sure what to do about
12  it.  Do you, Mr. Beck?  I don't know how to proceed,
13  unless we want to have, maybe the marshals talk to
14  the detention facility and check, and have them check
15  with Mr. Lujan and see what he's got.  What do you
16  think?
17           MR. BECK:  I think that's probably best.  I
18  mean, there is a lot of procedures, and a lot of work
19  has gone into those procedures to ensure there is not
20  paperwork in the cells, and for good reason.  So if
21  we have evidence that there is paperwork in the
22  cells, I think maybe the U.S. Marshals or whomever is
23  at the jail may look into that.
24           And I realize it may create some
25  consternation, because there may need to be some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    system in place for the marshals to connect with the

 2    attorneys to see if there may be attorney-client

 3    privileged paperwork that the marshals or whomever it

 4    is --

 5              THE COURT:  Refresh my memory as to who

 6    represents Mr. Lujan.

 7              MR. BECK:  I believe that's Dean Clark,

 8    Your Honor.

 9              THE COURT:  That's Dean Clark.

10              Well, do the defendants have any problem

11    with me asking the marshals properly -- I mean, not

12    rush in and do everything to disrupt any sort of

13    attorney-client communications -- but talk to -- see

14    what he's got, and however they would go about

15    determining what he has?

16              MR. COOPER:  And, Your Honor, this is just

17    as regards the Chavez cell; correct?  Well, Chavez

18    and Lujan maybe.  But --

19              THE COURT:  I was thinking just Mr. Lujan.

20    But do you think there is any reason for it to be

21    Mr. Chavez?

22              MR. COOPER:  I think --

23              MR. BECK:  It's Mr. Chavez who had

24    Lujan's -- a stack of paperwork in his cell, so it is

25    Mr. Chavez.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.
 2              MR. COOPER:  And, Your Honor, there
 3    probably ought to be a taint team.  I'm not sure, but
 4    I think there ought to be some protection, basically,
 5    as to what is there, what the individual sees and
 6    reads.  And I don't think that should be shared with
 7    anybody.
 8              THE COURT:  You've got one in place, right?
 9              MR. BECK:  I agree with that.  We do
10    have -- we have in the past, we can set that up
11    easily again.
12              THE COURT:  If this is all right, Mr.
13    Cooper, why don't I ask Mr. Beck to talk to the taint
14    team.  Let the taint team be in communication with
15    the marshal.  So they just take it from there, make
16    the request on behalf of the Court, that they start
17    procedures to see what he has.  And then the
18    attorneys are here, and they can talk to the
19    attorneys about any sort of attorney-client
20    communications that they've left, or something like
21    that.  Does that work for everybody?
22              MR. COOPER:  Judge, it works for me, but
23    I'm not sure I have standing.  It's not my client.
24              MR. BECK:  You are standing, Mr. Cooper.
25    That works for the Government, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Does that work for Mr. Chavez'
 2   team to work that way?  We'll take it out of the
 3   hands of these U.S. Attorneys, turn it over to the
 4   taint team.  They'll be in communication with the
 5   marshals.  And y'all can be in communication with the
 6   marshals, too, and it just be normal facility
 7   procedures?  Will that work?
 8            MR. GRANBERG:  Yes, Your Honor.
 9            THE COURT:  All right.  So we'll go with
10   that, and deal with that.
11            Okay.  Ms. Armijo.
12            MS. ARMIJO:  Your Honor -- and I think that
13   this may be more something that's a bigger issue.  I
14   know that there was an operation yesterday at NMCD.
15   And Mr. Rudy Perez was in possession of a lot of
16   materials that he should not have been in possession
17   of, in violation of the Court's order.  And so I
18   think this is probably more widespread.  So
19   certainly, I think we may be addressing that issue
20   with the U.S. Marshal.
21            And we certainly would provide a taint team
22   and a taint agent to deal with these issues.  But
23   we've been hearing about this issue through numerous
24   sources, about people, defendants that are pending
25   charges, having things that they shouldn't have.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that was confirmed yesterday, at least as to one

2    former defendant.

3            THE COURT:  All right.  Well, if you turn

4    it over to the taint team, then they can make their

5    request to the marshals, and then the marshals can

6    just do their normal thing.  I think they've been

7    pretty good throughout the proceedings of coming up

8    with contraband and alerting us that they've got

9    problems.  So unless the Government thinks anything

10   different, we'll just -- the taint team will alert

11   the marshals, and they'll do their thing.

12           Mr. Cooper.

13           MR. COOPER:  I'm a little concerned about

14   the communication from this table to the taint team.

15   Because there is no reason to believe whatsoever that

16   my client has done anything; that Edward Troup has,

17   or anybody else sitting here.  So, I mean, because

18   Rudy Perez did it, everybody should -- I mean, I

19   understand that the Marshal Service and the facility

20   can do what they need to do for security purposes.

21   But I would hate for the people who sit at this table

22   to tell their taint team, "Go roust everybody."

23           THE COURT:  Is a member of your taint team

24   here in Las Cruces?

25           MS. ARMIJO:  No.  They are in Albuquerque.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BECK:  Yeah.  It's attorneys in our

2    office in Albuquerque.  And I think there is good

3    reason for that.  I think that they've just wanted to

4    keep the taint team separate from our -- I won't say

5    our team, but my colleagues and I here.

6          THE COURT:  What if we did this:  Do you

7    suppose you could email them and ask them to call in

8    at a particular time this afternoon, and see if this

9    would work, Mr. Cooper, and then I talk to them.  And

10   if anybody wants to talk, they can talk, but we at

11   least have it on the record?

12         MR. BECK:  Sure.  Yeah, and I think the

13   taint team is a proper process.  I mean, I think

14   given what was found with Mr. Perez, and given what

15   was found -- or at least what we've heard testimony

16   about from Mr. Chavez, I think there is reason to

17   believe -- I respectfully disagree with Mr. Cooper --

18   I think there is reason to believe that it may be

19   more widespread.  But I think that the marshals and

20   the jails and the taint team have ways to deal with

21   that.  And we're not privy to their conversations

22   with the taint team.  But would I hope that the taint

23   team would be responsive, at least to them if they

24   had -- I mean, I could envision a case where the

25   attorneys certainly know that they provided their

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                   1-800-669-9492
PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

BEAN
&ASSOCIATES, Inc.

1    clients with attorney-client privileged materials,

2    and, obviously, they don't need to disclose that.

3    But I would think that -- I would think that this --

4    I'm just hoping it doesn't create a big huge process.

5    It gave me concern when I heard it today.

6              So I think I'll send an email out and see

7    if we can get the taint team on the phone.

8              THE COURT:  Would that work for you, Mr.

9    Cooper?

10             MR. COOPER:  Works fine, Judge.

11             THE COURT:  So we'll see if we can get them

12   on the phone, and we can communicate with them here

13   on the record.

14             MR. COOPER:  Thank you.

15             THE COURT:  All right.  You had your next

16   witness, Mr. Castle?

17             MR. CASTLE:  Yes, Your Honor.  Joseph

18   Otero.

19             THE COURT:  See if he's behind that door.

20             MR. BECK:  And, Your Honor, if we may have

21   a proffer of -- I'm guessing this is going to the

22   statements, the targeted response.  If we just may

23   have a proffer of what's expected.

24             THE COURT:  Before you bring him in, Ms.

25   Bevel -- do you want make a proffer, Mr. Castle?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. CASTLE:  That's fine.  And I provided

2     this information yesterday, but not to Mr. Beck, the

3     Government.

4           On March 21, 2018, the Government met with

5     Mr. Otero, and he made a statement which we've been

6     now provided with a 302 on.  They questioned him

7     about the murders of Rolando Garza and Frank

8     Castillo.  During the interview, Mr. Otero says what

9     he observed.  But then there is a singular statement

10    here that says, "Billy Garcia gave the orders to kill

11    Garza."  It's not attributed to anyone; whether he

12    overheard someone saying that; whether someone has

13    told him after the homicides that that happened, or

14    whether that's, you know, conjecture, I don't know.

15    Because the FBI agent that did this didn't attribute

16    it.  So that's where I'm going.

17          THE COURT:  All right.  Is that a

18    sufficient --

19          MR. BECK:  I just want to note -- I know

20    where the Court stands on this, but this is not a

21    statement against interests of some other defendant.

22    We don't know where this comes from.  So with all

23    other statements, it's hearsay, and we can't get it

24    in, we won't admit it at trial.  If it's not, then we

25    would get it in.  It sounds like a Rule 15 deposition

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is about to take place in front of the Court.

 2              THE COURT:  Well, are you going to try to

 3    admit this statement?

 4              MR. BECK:  The statement that's in there,

 5    if he heard it, and it's admissible, then yes, we'll

 6    get it in.  If the source of that makes it

 7    inadmissible under the rules of evidence, then we

 8    won't.

 9              THE COURT:  Well, let me see if I can make

10    a determination of that now.  So I'll allow the

11    testimony.

12              All right, Ms. Bevel.

13              Mr. Otero, if you'll come up and stand next

14    to the witness box right here in front of you.

15    Before you're seated, my courtroom deputy, Ms. Bevel,

16    will swear you in.  If you'll raise your right hand

17    to the best of your ability there.

18                    JOSEPH NESTOR OTERO,

19         after having been first duly sworn under oath,

20         was questioned and testified as follows:

21                    DIRECT EXAMINATION

22              THE CLERK:  Please be seated.  Please state

23    your name for the record.

24              THE WITNESS:  Joseph Nestor Otero.

25              THE COURT:  Mr. Otero.  Mr. Castle.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  Your Honor, may we approach?
 2              THE COURT:  You may.
 3              (The following proceedings were held at the
 4      bench.)
 5              THE COURT:  Does he have an attorney?
 6              MR. BECK:  That was my question.  That's
 7      why I wanted to approach.
 8              MR. CASTLE:  He doesn't have an attorney,
 9      but he indicates he's not a member of the SNM, is my
10      understanding, and that he just was a witness and
11      oversaw things and heard things.  That's it.  He's
12      unlike the other witnesses.  He's not saying he was
13      involved.  He's not saying that he was a member of
14      the SNM whatsoever.  So he's never been appointed an
15      attorney.  He's never been indicted on any of these
16      offenses at all.  And there is nobody who has
17      identified him.
18              MR. BECK:  I think you're right.
19              MR. CASTLE:  Nobody has identified him as
20      being a participant in any of these murders.
21              MR. BECK:  I think that's right.  That's
22      probably why it didn't raise red flags for us.  I
23      didn't know who they were going to call.  I think
24      that's my -- I saw he and Mr. Mirka were in the
25      targeted response.  It's been a busy couple days for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  me, and I apologize for that.  I just wanted to make

 2  sure.  It sounds to me -- I think if we -- after what

 3  happened a couple weeks ago, obviously, I'm keenly

 4  aware of the unforeseen possibilities and the

 5  foreseeable possibilities of how this could go array.

 6        But my understanding of his involvement is

 7  along the lines of what Mr. Castle represents.  My

 8  understanding of his involvement in the SNM or not is

 9  along the lines of what Mr. Castle represents.  And I

10  don't -- I think --

11        THE COURT:  Here's the thing:  We can

12  always have a witness that commits perjury.  We don't

13  appoint a lawyer to every witness.

14        MR. BECK:  Sure.

15        THE COURT:  So, you know, y'all probably

16  know everything better than anybody, if this guy is

17  not a target of anything, you're not going to target

18  him at the present time, I guess what I would

19  propose -- see if this works -- is let's start it,

20  and if anybody, you're all officers of the court --

21  the minute we think this guy may be going somewhere,

22  let's just stop it.

23        MR. BECK:  That's fair.

24        THE COURT:  I'll get on the phone and try

25  to find him an attorney, and do it some morning or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    lunch hour before the trial.
2            MR. BECK:  And, again, I wasn't the one
3    that interviewed him on the 21st, but -- I think it
4    was an FBI agent.  And as far as I know it didn't
5    raise any red flags to us that we needed to get him
6    an attorney, right off the bat at least.  So I think
7    that's a fair way --
8            MR. CASTLE:  With the permission of the
9    Court, I'd like to use some leading questions, so I'd
10   like to get to the meat of the matter rather than --
11           MR. BECK:  We don't object to that.
12           THE COURT:  And I may just ask him if he's
13   comfortable here without an attorney.  We don't know
14   of any reason at the moment that he needs one.  But
15   you know, does he feel he needs one, and see what his
16   response is.
17           MR. BECK:  It's up to the Court, if the
18   Court is inclined.  I don't know if that's necessary,
19   if we keep it brief and lead him through questions.
20           THE COURT:  I won't ask it then.  But
21   Mr. Burke, okay?  Mr. Burke?  Is that row trapping
22   you?  Are you able to get by there, or are you just
23   stiff like me when I get up to walk after sitting
24   there?
25           MR. BURKE:  I apologize.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  Is it too close, or is it --
 2                MR. BURKE:  No, it's fine.
 3                THE COURT:  I've hurt everything possible
 4      playing college football, so it has to work for a few
 5      seconds.
 6                MR. BURKE:  When the broke parts start
 7      moving.
 8                THE COURT:  We're making an agreement up
 9      here that we're going to go ahead and let this guy
10      testify without an attorney.
11                MR. BURKE:  Oh.
12                THE COURT:  And we're all making an
13      agreement if anybody -- if he's about to say or get
14      himself in trouble -- and you were my conscience last
15      time with Mr. Garcia -- so everybody is going to
16      agree to speak up, and we'll stop this thing and
17      regroup when I can get him an attorney.  But we've
18      talked it through up here, and we don't see any
19      reason -- the Government is not targeting the guy and
20      we don't have any reason to think he's going to do
21      anything to hurt himself.  We're all making an
22      agreement, so --
23                MR. BURKE:  Yes, sir.
24                THE COURT:  Everybody fine?  And we'll
25      regroup up here if we think the guy is getting into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   trouble.  All right.  Let's see how it goes.
 2            (The following proceedings were held in
 3   open court.)
 4            THE COURT:  All right.  Mr. Otero.  Mr.
 5   Castle.
 6   BY MR. CASTLE:
 7       Q.   Good afternoon, Mr. Otero.  I'm just going
 8   to ask you some questions about some matters that
 9   happened in 2001 at the Southern New Mexico
10   Correctional Facility, okay?  Is that fine with you?
11       A.   (Witness nods.)
12       Q.   You have to say out loud so they can report
13   it.
14            THE COURT:  Why don't we move the chair up
15   a little bit and maybe bend that microphone a little
16   bit so it's close to your mouth, Mr. Otero.  There
17   you go.
18       A.   That's fine.  That's fine with me.
19       Q.   Mr. Otero, do you recall talking to law
20   enforcement types about what you observed or
21   overheard the night that Lujan and Garza were
22   killed -- or Looney and Pancho were killed?
23       A.   Yeah.
24       Q.   And do you remember when you talked to
25   them?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   That was right after the incident.

2        Q.   Okay.  And then after that incident, did

3   you also talk to them again recently in March, late

4   March of this year?

5        A.   As a matter of fact, I don't know the date,

6   but yeah.

7        Q.   Okay.  And so there was the time right

8   after the incident and then here this year; is that

9   right?

10       A.   (Witness nods.)

11       Q.   You have to say out loud.

12       A.   Yes, sir.

13       Q.   And nothing in between?

14       A.   No.

15       Q.   Okay.  I just want to make sure we're

16   talking about the same statements.

17            Now, when you talked to the agent in 2018,

18   do you recall it being an FBI agent you talked to?

19       A.   Yes, sir.

20       Q.   And was it a woman?

21       A.   Yes, sir.

22       Q.   And did she ask you some questions about

23   what you saw happen either the day before or the day

24   of the murders?

25       A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Now, did you hear individuals talking about
2  the planning of the murder?
3      A.   No.
4      Q.   Did you hear individuals talking about how
5  they were going to commit the murder?
6      A.   No.
7      Q.   Did you hear people talking after the
8  murders were committed about how they had actually
9  done the murder?
10     A.   Yes.
11     Q.   Okay.  And who was that that you heard
12  talking about that?
13     A.   Critter and Eugene, and -- I know him by
14  Trigger; I don't know his name.
15     Q.   Okay.  So when you heard those three people
16  talking, it was after the people had been killed?
17     A.   Yes.
18     Q.   And you hadn't heard them talking before
19  that, about the murders at least?
20     A.   No.
21     Q.   So when they're talking after the murder,
22  were they talking about how the whole thing was
23  planned, or were they talking more about how it
24  happened, or how they were going to get away with it,
25  or things of that nature?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   They were talking about -- they were joking
 2   about it.
 3        Q.   Okay.  And can you tell us what they said
 4   and who said it?
 5        A.   From what I remember, when we were locked
 6   down, Critter was talking about:  "Hey Looney, hey
 7   Looney; oh, yeah, you're dead, you're gone already,"
 8   like in a fucking joke.
 9        Q.   Okay.  And then who else made statements?
10        A.   Eugene.
11        Q.   Okay.  And what did Eugene say?
12        A.   Pretty much the same thing, joking around
13   about it.
14        Q.   And then I take it this happened within the
15   day or two, or the week after the murders?
16        A.   I think it was about maybe an hour.
17        Q.   Okay.  Same day as the murders?
18        A.   Yeah.
19        Q.   And then after that, did you ever talk to
20   any of the people involved in the murders again?
21        A.   No.
22        Q.   So did you hear some rumors afterwards
23   about what happened, and things of that nature?  Was
24   there like jailhouse talk?
25        A.   It was all over through the penitentiaries.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   So I want to talk to you about a particular
 2   statement that you may have made to the agents in
 3   2018.  It says here that, "Nick Chavez, a/k/a T Bone,
 4   was the one that received the orders to kill Garza."
 5   Is that something you had heard by rumor?
 6        A.   I heard that through rumors.
 7        Q.   Okay.  And there is another statement here
 8   that Billy Garcia gave the orders to hit Garza.  Was
 9   that what you heard through rumors?
10        A.   Yes.
11        Q.   So you didn't hear Billy Garcia make that
12   statement to him?
13        A.   No.
14        Q.   And you didn't hear anybody else say that's
15   who gave the orders?
16        A.   No.
17             MR. CASTLE:  I don't have any other
18   questions.
19             THE COURT:  Thank you, Mr. Castle.
20             Anyone else want to do a direct -- Mr.
21   Burke, anybody -- of Mr. Otero?
22             All right.  From the Government, Mr. Beck,
23   cross-examination of Mr. Otero.
24             MR. BECK:  Yes, sir, thank you.
25             THE COURT:  Mr. Beck.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    CROSS-EXAMINATION
 2   BY MR. BECK:
 3        Q.   Good afternoon, Mr. Otero.
 4        A.   Yeah.
 5        Q.   You said you heard rumors about Nick
 6   Chavez, T Bone, I think receiving the orders.  Do you
 7   remember that?
 8        A.   Yes.
 9        Q.   Who did you hear those rumors from?
10        A.   Different individuals, people that weren't
11   even part of the clickas, or people just on the
12   compounds.
13        Q.   And rumors that Mr. Garcia was the one who
14   called the orders, who did you hear those rumors
15   from?
16        A.   The same thing, just through the grapevine
17   on the penitentiaries.
18        Q.   So would you say it was widespread, a lot
19   of people around the prison were saying that Billy
20   Garcia called the orders -- or ordered the orders to
21   murder Garza and Castillo?
22        A.   You could say a lot of people were saying
23   it.
24        Q.   Okay.  Now, I think you said what Critter
25   and Eugene said.  I think you mentioned that Trigger
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   also said something to you.
 2        A.   They said that if I ran my mouth, then I
 3   would be the next one in line.
 4             MR. BECK:  Nothing further.
 5             THE COURT:  Thank you, Mr. Beck.
 6             Mr. Castle, do you have redirect of Mr.
 7   Otero.
 8             MR. CASTLE:  Yes, very briefly.
 9                  REDIRECT EXAMINATION
10   BY MR. CASTLE:
11        Q.   Mr. Otero, I think there was a question
12   about whether you heard a lot of people say that
13   Billy Garcia ordered the hits.  Do you remember that
14   question?
15        A.   Yeah.
16        Q.   I think your answer, you went, "Hmm, yeah,
17   a lot of people."  Were there people that said other
18   people ordered the hits?
19        A.   What?
20        Q.   Were there different, like, rumors about
21   different people having ordered the hits?
22        A.   Not really.
23        Q.   What do you mean "not really"?
24        A.   Not really.  It came from the same people
25   that were around the compound.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    Okay.  Were some people saying it came from

2   Angel Munoz?

3      A.    Possibility.

4      Q.    Okay.  Were some people saying it came from

5   Lino?

6      A.    I don't know.

7      Q.    Were some people saying it came from Leroy

8   Lucero?

9      A.    I don't even know the people.

10      Q.    Okay.  Do you remember all the people that

11   these rumors identified as being involved in the

12   murders?  I mean, can you list all the people whose

13   names were bandied about by the various inmates, as

14   to who participated in the murders of these two

15   people?

16           MR. BECK:  Objection, Your Honor.  I think

17   we're getting a little far afield.

18           THE COURT:  Can you tie this to the

19   statement?  It looks like it might be getting far

20   afield.

21           MR. CASTLE:  It was just they opened the

22   door to it.  It doesn't have anything to do with the

23   statement, Your Honor, I confess to that.

24           THE COURT:  Let's probably bring it to a

25   close, then.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  Okay.  One last question.
 2       Q.   Is it a wise thing as an inmate to believe
 3   everything that you hear via the rumors?
 4       A.   Yeah, if you want to stay alive.
 5       Q.   I mean, you just be cautious, right?
 6       A.   Yeah, you look over your fucking shoulder
 7   every day.
 8              MR. CASTLE:  No more questions.
 9              THE COURT:  Thank you, Mr. Castle.  Anyone
10   else on the defense side?
11              All right.  Mr. Otero, you may step down.
12   Is there any reason Mr. Otero cannot be excused from
13   the proceedings?  Mr. Castle?
14              MR. CASTLE:  No, Your Honor.
15              THE COURT:  Everybody on the defense side
16   comfortable with that?
17              How about you, Mr. Beck, can he be excused?
18              MR. BECK:  He may, Your Honor.
19              THE COURT:  All right.  You are excused
20   from the proceedings Mr. Otero.  Thank you for your
21   testimony.
22              THE WITNESS:  All right.
23              THE COURT:  All right.  How do we proceed
24   next, Mr. Castle?
25              MR. CASTLE:  We'd like to call Leroy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1     Lucero.  He's out in the hallway.
 2               THE COURT:  All right.  Mr. Lucero, if
 3     you'll come up and stand next to the witness box on
 4     my right, your left, before you're seated, my
 5     courtroom deputy, Ms. Bevel, will swear you in.
 6                         LEROY LUCERO,
 7          after having been first duly sworn under oath,
 8          was questioned and testified as follows:
 9                       DIRECT EXAMINATION
10               THE CLERK:  Please be seated.  Would you
11     state your name for the record.
12               THE WITNESS:  Leroy Lucero.
13               THE COURT:  Mr. Lucero.  Mr. Castle.
14     BY MR. CASTLE:
15          Q.   Good afternoon, Mr. Lucero.  You and I have
16     never met; is that right?  You have to speak out
17     loud.
18          A.   No, sir.
19          Q.   Mr. Lucero, I want to talk to you a little
20     bit about a situation that happened at the Southern
21     New Mexico Correctional Facility in 2001, okay?  Were
22     you housed in that facility in 2001?
23          A.   Yes, sir.
24          Q.   And do you know when you were housed there?
25          A.   I don't remember the exact date.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   Were you at that facility from the

2   beginning of the year, all the way until three days

3   before Pancho and Looney were killed?

4        A.   Yes, sir.

5        Q.   And did you -- do you recall just so we

6   could get the time straight -- when Pancho and Looney

7   were killed, were you outside the prison facility,

8   you know, in the community?

9        A.   Yes, sir.

10       Q.   And had you been there -- you'd been there

11  for three days; is that right?

12       A.   Yeah.  Yes, sir.

13       Q.   And so it sounds like to me that you heard

14  about the murders the day they happened?

15       A.   I heard about them like two days after.  I

16  seen it in the newspaper.

17       Q.   You were looking in the newspaper and saw

18  that they'd been killed?

19       A.   Yes, sir.

20       Q.   Now, my understanding is you knew that that

21  was going to happen before you left the facility; is

22  that right?

23       A.   I really don't feel comfortable answering

24  that without my lawyer present.  I'll answer this for

25  trial.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1        Q.    Sir, do you know what a Kastigar letter is?

2        A.    I think so.

3        Q.    Right.  You and your attorney signed a

4    letter with the Government that said that you

5    wouldn't be held responsible for the words you said,

6    as long as you were truthful.  Do you recall that?

7        A.    Yes, sir.

8        Q.    And that includes your testimony today,

9    right?

10        A.    Yes, sir.

11        Q.    So I'm asking you again, you knew those

12    murders were going to happen before they happened; is

13    that right?

14        A.    I don't feel comfortable answering this.

15              MR. CASTLE:  I'd ask the Court to direct

16    the witness to answer the question.  He had the

17    opportunity to have counsel here.  And they do

18    have -- I could give the Court a copy of the Kastigar

19    letter, which protects him in this instance.

20              THE COURT:  Well, I did get a letter from

21    Mr. Fallick yesterday.  He said y'all had discussed

22    this.  I can get the letter out.  I don't have it in

23    front of me, but it basically said you and he had

24    discussed this.  You wanted to cooperate with the

25    Government, you wanted to testify, and that you

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  didn't need him to be here.  Have you seen that

2  letter?

3          THE WITNESS:  Yes, sir.

4          THE COURT:  Are you aware?

5          THE WITNESS:  Yes, sir.

6          THE COURT:  Are you having a change of

7  heart about that, or what is your concern?

8          THE WITNESS:  I just -- you know, I'd like

9  my counsel, you know, to guide me.  I don't know.

10          THE COURT:  It puts the Court and the

11  parties here in a difficult position, because we did

12  allow Mr. Fallick not to show up, because of his

13  letter indicating that y'all had talked and you

14  wanted to cooperate, and didn't need him.

15          THE WITNESS:  Yeah, I thought I would be

16  cooperating for trial.

17          MR. BECK:  Your Honor, maybe -- I don't

18  know if Mr. Fallick is reachable.  Maybe we could

19  take a break and call Mr. Fallick, and we could join

20  him.

21          THE WITNESS:  No, I'll answer it.  I'll

22  answer it.

23          MR. BECK:  Okay, that may resolve it.

24          THE COURT:  Let me just make sure I

25  understand the situation.  I guess I'd understood

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   from Mr. Fallick's letter -- and maybe I
 2   misunderstood -- that he was going to testify without
 3   the benefit of any immunity.  But it sounds like what
 4   Mr. Castle is saying is that he was provided a
 5   Kastigar letter.
 6            MR. BECK:  Sure, Your Honor.  I think
 7   Mr. Fallick was correct, in that I don't exactly know
 8   what he means by statutory immunity, but we did
 9   provide him with a Kastigar letter.  He is under
10   protection of the Kastigar letter.
11            THE COURT:  So if he testifies here today
12   truthfully, he has no danger of prosecution for
13   anything he says?
14            MR. BECK:  That's right.  That is the
15   intent and the language and the effect of the
16   Kastigar letter that he signed with his attorney.
17            THE COURT:  So as long as you testify
18   truthfully today --
19            THE WITNESS:  Yes, sir.
20            THE COURT:  -- even if you make statements
21   here today that would incriminate you that you could
22   be prosecuted for, you will not be prosecuted because
23   you're under immunity from the Government if you
24   testify truthfully.  Do you understand what I'm
25   saying?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE WITNESS:  Yes, sir.
 2              THE COURT:  So I think, as long as you are
 3    truthful here, even though you may make statements
 4    that would incriminate you, you will not be
 5    prosecuted for them.
 6              THE WITNESS:  All right.
 7              THE COURT:  Mr. Castellano.
 8              MR. CASTELLANO:  I just want to add for the
 9    record, Your Honor, that I believe Mr. Lucero has
10    been here since 9:00 this morning.  He told us he's
11    been suffering from food poisoning and has thrown up
12    a few times today.  So he's not feeling his best.  So
13    I just want to let the Court know that may be part of
14    the problem.
15              And of course because his attorney is not
16    here, I want to make sure these are limited questions
17    related directly to the motion.
18              THE COURT:  All right.  Do you need a candy
19    bar or something like that?
20              THE WITNESS:  I tried eating -- no, I had
21    something bad on the way down, so --
22              THE COURT:  You don't need anything to get
23    your sugar up or anything?
24              Do you still want to try to reach
25    Mr. Fallick, Mr. Beck, or are you comfortable with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   him proceeding if Mr. Lujan (sic) is comfortable?
 2           MR. BECK:  I think as long as Mr. Lucero is
 3   comfortable, which it seems like --
 4           THE COURT:  Mr. Lucero is comfortable.
 5           MR. BECK:  I think, as long as he's
 6   comfortable, we may proceed.
 7           THE COURT:  All right.  Let's try it again.
 8   If you get uncomfortable -- we're getting close to
 9   break, we can take a break.
10           All right.  Mr. Castle.
11   BY MR. CASTLE:
12       Q.   Mr. Lucero, is there a roadside stand we
13   should all avoid?
14       A.   Yeah.
15       Q.   I'm just trying to relax you a little bit
16   here.
17           Mr. Lucero, the question was:  Did you know
18   that those murders were going to happen before they
19   occurred?
20       A.   Yes, sir.
21       Q.   And did you play a role in that?
22       A.   No, sir.
23       Q.   You didn't play a role in that in any way
24   whatsoever in the planning or the --
25       A.   No, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   -- carrying out of those murders?

 2        A.   No, sir.

 3        Q.   Okay.  Now, after the murders took place,

 4   did you ever have an opportunity to discuss what

 5   happened with an individual by the name of Angel

 6   DeLeon?

 7        A.   No, sir.

 8             MR. CASTLE:  No, Angel DeLeon.  The peanut

 9   gallery corrected me.  They were wrong.

10        Q.   So did you ever have an opportunity to talk

11   to an individual by the name of Joe Gallegos?

12        A.   Just one time, brief, brief conversations.

13        Q.   Okay.  So let's just put a timeframe on

14   that.  When did that occur?

15        A.   I was at the North.

16        Q.   You were at PNM North?

17        A.   Yes, sir.

18        Q.   And Mr. Gallegos was there, obviously,

19   right?

20        A.   Yes, sir.

21        Q.   Did you know him from before?

22        A.   Yes, sir.

23        Q.   Were you close friends?

24        A.   No.

25        Q.   Had he shared secrets with you in the past?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   We've talked.

2        Q.   Okay.  What do you mean by that; you

3   talked?

4        A.   We belong to the same, same, same group.

5        Q.   I know, okay.  So you're both members of

6   the SNM at that time?

7        A.   Yes, sir.

8        Q.   And so what kinds of information would you

9   exchange?  Would it be like:  Hi, how are you doing?

10  Maybe a group handshake or something like that?  Or

11  what would you exchange?

12       A.   It depends what was going on.  Sometimes it

13  got serious, sometimes it didn't, you know what I

14  mean?

15       Q.   Well, prior to this time at the PNM, had

16  Mr. Gallegos and you ever had a conversation where

17  either you or he admitted to each other that you'd

18  done something illegal?

19       A.   Yeah, a few times.

20       Q.   Okay.  Tell me a little bit about that.

21       A.   Just street talk:  I did this, we did this.

22  You know, it doesn't -- nothing, nothing.  I don't

23  remember what, but we discussed.

24       Q.   Okay.  So no specifics that you can recall?

25       A.   No specifics, no specifics.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                          1-800-669-9492
                                                  e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1         Q.   Because it's been a long time, right?
 2         A.   It's been 17, 18 years.
 3         Q.   So would it be pretty serious stuff you
 4    guys talked about, like something as serious as
 5    assaults or murders or things like that someone
 6    committed?
 7         A.   We discussed that.
 8         Q.   Okay.  But you can't remember the details
 9    of those?
10         A.   I can't remember the details.
11         Q.   Now, let's talk about the 2001 murders.  It
12    sounds like you had a brief discussion with him
13    sometime at the PNM where those murders came up; is
14    that right?
15         A.   Yes, sir.
16         Q.   And for those murders, as opposed to the
17    ones you can't remember any of the details on, for
18    the 2001 murders, can you remember any details of
19    what Mr. Gallegos told you?
20         A.   Yeah.  He asked me one time we were at the
21    North -- I know where you're going with this, I'll
22    tell you -- we were at the North, and we were in the
23    rec pens, and he asked me that day -- we were next to
24    each other, and there is other people around -- he
25    asked me if I would think that if Lorenzo would tell.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    And I said:  Where is this coming from?  And he told
 2    me that he seen him coming out of the cell.
 3         Q.   Okay.  Was that the whole conversation?
 4         A.   It's blurry, you know what I mean?
 5         Q.   Is that all you can remember about the
 6    conversation?
 7         A.   That's all I can remember.
 8         Q.   So who is Lorenzo?
 9         A.   An older guy.  He was in the unit where
10    this happened at.
11         Q.   Okay.  Is he an SNM member?
12         A.   Yes, sir.
13         Q.   So he asked you whether he would tell; is
14    that right?
15         A.   Yeah, if he would tell.
16         Q.   And what was your response?
17         A.   I wasn't too sure.
18         Q.   Okay.  And what did you think he was
19    talking about?
20         A.   I know what he was talking about.
21         Q.   Why did you know -- tell me how you knew
22    what he was talking about?
23         A.   The whole system knew what he was talking
24    about, you know.  If you would ask that question, he
25    would know.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   Okay.   Was that the only bad thing that had
 2   ever happened in that cell block during the time that
 3   Mr. Gallegos had ever been there?
 4        A.   Yeah, that was pretty much one of the most
 5   bad things.
 6        Q.   So he didn't know to tell you it was about
 7   the 2001 murders, but you assumed that, it sounds
 8   like?
 9        A.   Yeah.
10        Q.   Did he then give you details about how the
11   murder happened?
12        A.   No.
13        Q.   Did he tell you who he committed the
14   murders with?
15        A.   No.
16             MR. BENJAMIN:  I apologize, Your Honor.  I
17   think that was a nonverbal answer, at least a low
18   answer.  That was a no, I understand.
19             THE COURT:  It showed up as a no.  Are you
20   talking the question:  Did he give you details about
21   what happened?
22             MR. BENJAMIN:  Yes, Your Honor.
23             THE COURT:  That one came with a "no."
24   It's on the transcript.
25        Q.   Did he tell you if anyone ordered him to do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    it?
 2         A.    No.
 3         Q.    Did he tell you he did it alone or with
 4    someone else?
 5         A.    We didn't discuss that.
 6         Q.    Okay.  Did he tell you that he was
 7    concerned about Lorenzo telling on others, or on him?
 8         A.    On that situation.
 9         Q.    Okay.  So he didn't say:  Do you think
10    Lorenzo is going to tell on me?
11         A.    He just said "tell."
12         Q.    Okay.
13         A.    And I knew what he was talking about.
14         Q.    Well, we're just going to talk about words
15    themselves, okay?  So he didn't say:  Is he going to
16    tell on me, meaning Joe?
17         A.    No.
18         Q.    Okay.
19               THE COURT:  Mr. Castle, is this a good time
20    for us to take our afternoon break?
21               MR. CASTLE:  Yes.
22               THE COURT:  Because of our ex parte
23    meeting, Ms. Bean has been here longer than everybody
24    else here in the room, so I need to give her a break.
25               MR. CASTLE:  Yes, Your Honor.  And because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Lucero is unrepresented, it would make sense for
 2    all the parties to just leave him alone during the
 3    break.
 4              THE COURT:  All right.  Everybody agree not
 5    to talk to him during the break?  Everybody agree
 6    with that, agree on the defense side?
 7              How about you, Mr. Beck?
 8              MR. BECK:  Yes, Your Honor.
 9              THE COURT:  All right.  So no attorneys
10    will talk to you during the break.  Don't talk to
11    anybody during the break about your testimony.
12              All right.  We'll be in recess for about 15
13    minutes.
14              (The Court stood in recess.)
15              THE COURT:  All right.  Let's go back on
16    the record.  I think that we've got an attorney for
17    each defendant, all the defendants back in the
18    courtroom.  I think we're going to try to squeeze in
19    the taint attorney.  Ms. Armijo, did we give you the
20    Meet Me Conference Line to call?
21              MS. ARMIJO:  I did, Your Honor.  And I just
22    emailed it to him, and I told him to email me as soon
23    as he's on the line.
24              THE COURT:  Okay.
25              MS. ARMIJO:  While we're waiting for him --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   oh, yeah, Mr. Lucero.
 2            THE COURT:  I don't think it will take too
 3   long.  If we can get the taint attorney on real
 4   quick, shouldn't take us too long, then bring in Mr.
 5   Lucero.
 6            MS. ARMIJO:  Your Honor, would it be
 7   possible -- and I think that in order to make this
 8   work, and not allow the defendants in this case to go
 9   back to their cells and destroy any evidence, we
10   would request that the marshal's office today, this
11   afternoon, do a search of the cells.  Because
12   otherwise these defendants know the issue, and
13   whether or not defense attorneys have emailed other
14   defendants who are pending trial have called and let
15   them know, so evidence could be destroyed.
16            THE COURT:  Well, let me do this:  Let's
17   let the taint attorneys make the request.  I'll let
18   you make your pitch to the taint attorneys, so
19   defendants can make their pitch; I may have a few
20   things to say, and then we'll let them communicate
21   with the marshals.
22            Does that satisfy you, Mr. Benjamin?
23            MR. BENJAMIN:  Yes, Your Honor.  I'll take
24   it up another time.
25            MS. ARMIJO:  And he's on the line.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              (Mr. Peter Eicker called in to the

2     courtroom.)

3              THE COURT:  All right.  Mr. Eicker, how are

4     you today?  Mr. Eicker, how are you today?

5              MR. EICKER:  Fine, Your Honor.

6     BY THE COURT:

7         Q.   I have been informed that you are the taint

8     team, or at least the communication for the taint

9     team, and so -- is that correct?

10        A.   That is, Your Honor.

11        Q.   So Mr. Eicker, what is taking place at the

12    moment is, rather than having the Government that's

13    here in the courtroom come back and advise you what

14    we're going to tell you, we're going to tell you in

15    open court on the record, and then you can make an

16    independent decision without either pressure from the

17    Government that's in the courtroom, or any

18    miscommunication.  And so you'll probably hear from a

19    number of us that are going to make some statements

20    and/or requests.  And then you can do with them what

21    you feel like you need to do with them.  Does that

22    seem fair?

23             MR. EICKER:  Yes, Your Honor.  I'm having a

24    little bit of difficulty hearing you.  So I want to

25    make sure I'm able to hear what everyone says.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  We're not doing real well
 2    hearing you either.  All right.  Well -- all right.
 3    Let's -- testing, testing.
 4              All right.  So I'm going to go first.  We
 5    just had some testimony from one of the witnesses
 6    this afternoon, who indicated that he had seen some
 7    material that I think everyone is in agreement would
 8    normally be on the tablets, and would not be
 9    circulating around freely in the detention facility.
10              The Government has made the request that
11    the Marshal Service -- or wants you to make the
12    request to the Marshal Service that all the
13    defendants and all the -- I guess, all the potential
14    witnesses, anyone connected with this case, that
15    their cells be searched to see if there is some
16    material that's floating around that relates to this
17    case that shouldn't be in hard copy, but should be on
18    tablets.
19              One of those that is particularly
20    implicated is Mr. Chavez', because the testimony was
21    that Mr. Chavez had the material in his cell.  So it
22    implicates one of the defendants.  And it, of course,
23    may implicate attorney-client information, if they
24    start going in and getting material.  So we have to
25    be mindful that many of the men that the Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

186

1    is requesting their cells be searched are represented

2    by counsel, and so they may have materials there.

3            The Government is also concerned that if

4    it -- that the search take place immediately so that

5    nobody destroys any of this sort of material, so that

6    they have a sense as to what's floating around in

7    violation of the Court's orders and procedures for

8    this case.

9            I think the defendants -- I'll see if I can

10   state the defendants' position -- is that just

11   because they found some material in Rudy Perez' cell

12   recently that shouldn't have been there, that doesn't

13   mean that their cells should be suspected of

14   containing similar material.  And they don't feel

15   that the search that's being requested should be as

16   broad.

17           Maybe Mr. Chavez', we now have some sworn

18   testimony that his cell contains some materials.  So

19   some limited searches are a possibility, but not the

20   broad ranging that the Government here in the

21   courtroom is requesting.

22           I think I felt, defendants felt, and I

23   think the Government agreed, that it would be better

24   if we communicated directly with you rather than them

25   coming back and telling you what they wanted and what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the Court wanted.  It was better for you to hear it

2    from us, and then you make an independent decision as

3    to what you want to communicate and request of the

4    Marshal Service.

5          So let me stop and see how well I've done.

6    So, Ms. Armijo, if you want to now go ahead and make

7    your request of the taint team, as to what you'd like

8    for them to do and express your concerns about it;

9    then I'll give the defendants an opportunity to do

10   the same.

11         MS. ARMIJO:  Certainly, Your Honor.  I

12   believe that, at a minimum, we would want Christopher

13   Chavez' cell to be searched immediately this

14   afternoon.  If he could reach out to Joe Castro, or

15   whomever.  I don't know even know if Joe is working

16   today.  I'm trying to look at the deputy marshals who

17   are in the courtroom.  I'm not getting an answer.

18   But Joe Castro, about searching his cell.

19         We had information from an operation

20   yesterday that was conducted at Corrections, that one

21   of the defendants in the case that we just went to

22   trial on, Rudy Perez -- he was acquitted -- his cell

23   was searched.  And he had documents that he shouldn't

24   have had.  And I believe his statements in reference

25   to them was that he thought Maria had given them to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    him, Maria being me, during the course of the trial.

2    But they were clearly items that in the agent's

3    estimation contained two confidential informants that

4    he shouldn't have.

5           And so there have been other informants

6    that have said they have heard that the defendants

7    that are pending trial have documents that they

8    shouldn't have.

9           So based upon those two, what we are

10   requesting is that a search be done, at a minimum, of

11   the defendants that are here pending trial to start

12   on Monday.  But more extensive, maybe even all of the

13   defendants that are pending trial or sentencing, that

14   cells be searched by the marshal's office this

15   afternoon, to determine if there are any documents

16   that they have they should not be in possession of.

17          And that would entail -- and I think you

18   have previously done that in reference to Joe

19   Gallegos' cell and Andrew Gallegos' cell.  I think

20   the FBI was involved in that, but maybe the marshals

21   took some of that.  So it would be similar to that

22   sort of review.  Our concern is immediately, with the

23   defendants that are here, that have now heard that

24   their cells may be searched.  And obviously most

25   importantly with Mr. Christopher Chavez' cell.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Thank you, Ms.
 2    Armijo.
 3              Mr. Benjamin, do you want to make your
 4    point to Mr. Eicker?
 5              MS. ARMIJO:  And, Your Honor, maybe we
 6    should have -- and I hate to do this again -- oh, I
 7    would ask that the marshals that are here pass this
 8    information along as to that, because that may, it
 9    may be that Mr. Eicker needs to confer with them, and
10    their advice as to what should be done.
11              THE COURT:  All right.  Mr. Benjamin.
12              MR. BENJAMIN:  May I have a second, Your
13    Honor?
14              THE COURT:  You may.
15              MR. BENJAMIN:  Thank you, Your Honor.
16              I think the first thought that comes to
17    mind, Your Honor, is I spoke with my client.  I
18    understand that he's at Dona Ana Detention Facility,
19    just for orientation purposes.  He tells me his cell,
20    I think, was subject to a -- probably a fairly
21    regular or somewhat scheduled search yesterday.  So I
22    think that my concern that I hear coming from the
23    Government table is, I believe, I think, therefore I
24    want a blanket search done across everybody, which
25    strikes me as exceedingly overreaching.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            So I would ask that, one, if Mr. Eicker
 2    determines that some individual should be searched,
 3    that he contact the detention facility.  Because I
 4    think there has to be particularized, I guess, facts
 5    for each individual.
 6            I think the second thing that comes to
 7    mind -- and I point this out solely because of the
 8    way that the request is made by the Government --
 9    Rudy Perez is the only individual that this Court
10    probably doesn't have jurisdiction over at this point
11    in time, because, having been acquitted, he's now
12    back subject to the custody of, I think, the State of
13    New Mexico, or whoever else he is, unless there is
14    something I don't know about.  And so, as I said, I
15    bring that up solely because I think that we're
16    losing sight of the fact that these individuals are
17    in jail cells; the jails should be in charge of
18    determining when and how to search them, and not the
19    Government that is a party opponent at this point in
20    time.
21            Thank you, Your Honor.
22            THE COURT:  All right.  Thank you, Mr.
23    Benjamin.
24            Anybody else on the defense side want to
25    communicate anything to Mr. Eicker?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. EICKER:  Your Honor, I've got to
2    clarify since I'm not there, questions directed to
3    Ms. Armijo.  Who are the individuals who are in court
4    today?
5              MS. ARMIJO:  I couldn't hear him, Your
6    Honor.
7              THE COURT:  He's asking who the defendants
8    are who are at court today?
9              MS. ARMIJO:  Oh, does he want to write down
10   or can I send an email and include all the
11   defendants?
12             THE COURT:  Why don't you just go ahead and
13   state them on the record for Mr. Eicker.
14             MS. ARMIJO:  We have Andrew Gallegos,
15   Christopher Chavez, Arturo Garcia, Allen Patterson,
16   Billy Garcia, Edward Troup, and Joe Gallegos.  I
17   believe I already got Arturo Garcia.
18             MR. EICKER:  Thank you.
19             THE COURT:  All right.  Mr. Cooper.
20             MR. COOPER:  Judge, I don't think there is
21   any reason to believe that any defendants presently
22   sitting in this room have any such documents in their
23   possession.  And I would object to a blanket search
24   of all individuals.
25             I recognize that the facility and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    Marshal Service has an obligation to keep the place

 2    safe, you know, so if they're looking for something

 3    else, then that would be fine.

 4          But in this particular instance, just

 5    because one defendant is accused by somebody else of

 6    showing some discovery, doesn't mean that everybody

 7    else in this room has discovery.

 8          But in any case, Judge, there is a

 9    protective order in place allowing us to have

10    pleadings, letters, other items.  And I think the

11    only thing that they should not have is discovery

12    with a Bates number.  If it doesn't have a Bates

13    number, then it would not have come from the

14    Government, and I think they're allowed to have it.

15          So I would object to the taint team seizing

16    anything other than those items that have Bates

17    numbers on them.

18          And the protective order in this case, Your

19    Honor, was entered as Document 589.

20          THE COURT:  All right.  Did you hear all

21    that, Mr. Eicker?

22          MR. EICKER:  Yes, Your Honor.

23          THE COURT:  All right.  Anyone else on the

24    defense team that -- defense side that wants to speak

25    to Mr. Eicker?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        All right.  Mr. Eicker, those are our

2   concerns.  So I think we're going to leave it to you

3   in communication with the marshals.

4        Mr. Cooper.

5        MR. COOPER:  Your Honor, I think that given

6   the testimony he had talked to Leonard Lujan, I

7   think, at a minimum, Leonard Lujan's cell ought to be

8   searched as well.  And if we're going to do a blanket

9   search of all these guys, probably ought to do a

10  blanket search of the cooperators as well.  They're

11  still defendants in this case.  So what's good for

12  the goose is good for the gander.

13       THE COURT:  All right.  Do you have

14  something further, Ms. Armijo?

15       MS. ARMIJO:  I do, Your Honor.  I don't --

16  as far as discovery, I think we should go by the

17  protective order, and that maybe Mr. Eicker should be

18  provided with the protective order.  The protective

19  order does not say Bates stamps.  It's information

20  that's provided by the Government.  And I know that

21  in the last trial, specifically when we were in a

22  hurry to get information to the defense quickly, we

23  provided information that did not have Bates stamps

24  on it.  We were just sending it to them without Bates

25  stamps, but with the agreement that it would still be



SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                       1-800-669-9492
                                                               e-mail: info@litsupport.com

1  covered by the protective order.  So that's my

2  concern about the Bates stamps thing.  Because there

3  has been discovery that has gone out without Bates

4  stamps.

5         For instance, the thousand pages that we

6  had discovered from Joe Sainato -- there is another

7  reference to Joe Sainato box -- I think that we

8  copied that here in court, and gave it to the

9  defense, and it did not have any Bates stamps, but

10  clearly that's subject to discovery.

11         THE COURT:  All right.

12         MR. COOPER:  And I stand corrected with

13  regard to that, Your Honor.  Those items are covered

14  by the protective order.  But unsealed pleadings,

15  correspondence from lawyers, correspondence between

16  family members and the defendants, none of that

17  should be seized.  They have a right to have all of

18  that information.

19         And Judge, we'd be happy to send Mr. Eicker

20  the list of cooperators, and maybe -- I don't know if

21  we know where they're all located, but we can send

22  them by email later today, a listing of the

23  cooperators, if the Court will include that in your

24  order to the taint team.

25         MS. ARMIJO:  And, Your Honor, if we're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    doing that, then we need to include everybody.  And
2    that opens it up quite wide.  I think the most
3    important part is the defendants that are here
4    pending trial.  But I think that we would have to
5    then include everybody.  And Mr. Eicker is not privy
6    to the status of everybody, who they are, or where
7    they are at.  And, as you know, between the two
8    cases, that would be over 40 people.
9              THE COURT:  Why don't we do this:  You
10   prepare your list, Mr. Cooper, and send it to
11   Ms. Bevel.  She'll send it to Mr. Eicker.  And if you
12   have additional people you want to send -- or I
13   guess, you're not going to have any additional
14   people, right?
15             MS. ARMIJO:  Well, yes.  If we're going to
16   do all of the United States' cooperators, I would
17   have all the people that are pending sentencing, that
18   were just convicted:  Mr. Baca, Mr. Sanchez, all
19   those people, and plus the people in the RICO case.
20   So we would have an extensive list.
21             THE COURT:  All right.  Well, if you want
22   an additional list, send it to Ms. Bevel, and Ms.
23   Bevel will send it to Mr. Eicker.  So y'all can route
24   any additional names through her.
25             All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. COOPER:  Thank you, Judge.
 2              THE COURT:  All right.  If there is nothing
 3     else for Mr. Eicker, Mr. Eicker, we appreciate it.
 4     And thank you for your assistance on this matter.
 5              MR. EICKER:  Thank you, Your Honor.  And
 6     I'll follow up and act accordingly.
 7              THE COURT:  All right.  Thank you, Mr.
 8     Eicker.
 9              All right.  Let's bring Mr. Lucero back in,
10     and see if we can finish his direct examination.
11              I am at the present time, editing a memo
12     that's going to come from Ms. Wild.  Her computer is
13     working again, but it did crash for two hours, so I'm
14     trying to get that edited, so that we can get that to
15     you, and it will have some details of how we're going
16     to select the jury.  And you can then see if you have
17     any further questions after I get this to you.
18              All right.  Mr. Lucero, if you'd return to
19     the witness box.  I'll remind you that you're still
20     under oath.
21              All right.  Mr. Castle, if you wish to
22     continue your direct examination of Mr. Lucero, you
23     may do so at this time.
24
25
```

SANTA FE OFFICE                                                                              MAIN OFFICE
119 East Marcy, Suite 110                                                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                       Albuquerque, NM 87102
(505) 989-4949                                                                                    (505) 843-9494
FAX (505) 843-9492                                                                        FAX (505) 843-9492
                                                                                                  1-800-669-9492
                                                                                         e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

197

```
 1                    LEROY LUCERO,
 2        after having been first duly sworn under oath,
 3        was questioned and testified as follows:
 4                 DIRECT EXAMINATION (Continued)
 5   BY MR. CASTLE:
 6        Q.   Mr. Lucero, you indicated that you'd also
 7   spoken to an individual by the name of Christopher
 8   Garcia, otherwise known as Critter, after the
 9   murdered happened?
10        A.   Yes.
11        Q.   When did that happen?
12        A.   At the North.
13        Q.   When, though?  When did it happen?
14        A.   Years -- I'm not going to remember years.
15   I don't remember.
16        Q.   Well, when did you go back into prison
17   after you were released?
18        A.   I've been back and forth, back and forth
19   for a lot of years, you know.
20        Q.   Okay, so --
21        A.   I remember the incident, but I can't
22   remember the year.
23        Q.   Okay.  Do you recall where at the North?
24        A.   N pod, 2B.
25        Q.   N pod, as in Nancy, and then 2B?
```

 

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.   2B; N pod, 2B.
 2          Q.   And tell us a little bit about the
 3     discussion you had with Mr. Chavez.
 4          A.   We just talked.
 5          Q.   Okay.  But what did you say and what did he
 6     say?  Give us some details, if you could.
 7          A.   I don't -- I don't remember.
 8          Q.   Well, do you know who started the
 9     conversation?
10          A.   No.
11          Q.   Do you know why you guys had this
12     conversation?
13          A.   Hum-um.
14          Q.   Is that a no?
15          A.   That's a no.
16          Q.   Did Mr. Chavez -- was it about the 2001
17     murders even?
18          A.   No.
19          Q.   Okay.  So you never had a conversation with
20     Christopher Chavez about the 2001 murders at all?
21          A.   I don't think so.
22          Q.   That would be something you'd remember; is
23     that right?
24          A.   Yes.
25          Q.   What's that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.
 2        Q.    I mean, murders are a pretty big thing; is
 3   that right?
 4        A.    Yes.
 5        Q.    Mr. Lucero, did you ever know that you were
 6   a suspect in the murders, the 2001 murders?
 7        A.    No, sir.
 8        Q.    You never learned that at all, ever, from
 9   day one until today?
10        A.    No, sir.
11        Q.    No one has ever said that anybody suspected
12   you of being involved?
13        A.    No, sir.
14        Q.    Were you ever worried about being accused
15   of being part of the murder?
16        A.    No.
17        Q.    Did you say no?
18        A.    I said "no."
19        Q.    Have you ever had a conversation with
20   anyone in which they said that Billy Garcia ordered
21   the murders, the 2001 murders?
22             MR. BECK:  Objection, Your Honor.  I think
23   we're getting away from the statements that we're
24   trying to see about, and getting into a fishing
25   expedition.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  How does this tie to the
 2    admissibility of the statements, Mr. Castle?
 3              MR. CASTLE:  If the answer was yes, I was
 4    going to ask if it was anybody in this room.
 5              THE COURT:  All right.  Overruled.
 6         Q.  Did you have a conversation with anyone
 7    after the murders, after the 2001 murders, in which
 8    an individual told you that Billy Garcia ordered the
 9    murders?
10         A.  No, sir.
11         Q.  And just -- so just to be clear, did you
12    ever have a discussion with a person by the name of
13    Allen Patterson about what happened in the 2001
14    murders?
15         A.  No, sir.
16         Q.  I know sometimes you know what I'm going to
17    say before I finish, but you have to wait, because
18    it's a really hard job up here, she can only type
19    down what one of us is saying, okay?
20              Edward Troup, do you know a person by that
21    name?
22              MR. BECK:  Your Honor, objection.  I mean,
23    this is a deposition.  This is a quintessential
24    deposition.
25              THE COURT:  How do you tie this to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    statement I've got to consider?
 2              MR. CASTLE:  I just want to make sure --
 3    well -- I'll withdraw the question.
 4              THE COURT:  All right.
 5              MR. CASTLE:  I have no other questions.
 6              THE COURT:  Thank you, Mr. Castle.  Anyone
 7    else on the defense side that has -- Mr. Benjamin?
 8              MR. BURKE:  No, Your Honor.
 9              THE COURT:  Mr. Burke?
10                        EXAMINATION
11    BY MR. BENJAMIN:
12        Q.   Good afternoon, sir.  My name is Brock
13    Benjamin.  I represent Mr. Joe Gallegos.
14              You had said that in the rec pens Mr.
15    Gallegos had said -- I'm sorry, let me start over
16    because I'm confusing myself.  You had said that you
17    and Mr. Gallegos, Mr. Joe Gallegos, were in the rec
18    pens one day; correct?
19        A.   Yes.
20        Q.   And he told you you think Lawrence Torres
21    would tell; correct?
22        A.   He asked me if I thought Lorenzo Torres
23    would tell.
24        Q.   Okay.  And I apologize if I butchered that
25    on that.  This was at the North; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.
 2        Q.    And what pod were you in at the North at
 3   this time?
 4        A.    I was in, I think 2B, somewhere in 2B.
 5        Q.    And do you know what year this was?
 6        A.    No, sir, I don't remember years.  It's so
 7   long ago I won't remember years.
 8        Q.    What years were you at the North?
 9        A.    A lot of years.
10        Q.    Okay, but --
11        A.    I don't remember.  I just can't remember
12   the year.
13        Q.    Do you know what year you went to the
14   North?
15        A.    I've always been at the North.
16        Q.    Okay.  But you don't know -- and when you
17   say you've always been at the North, is that the only
18   Department of Corrections facility you've been in?
19        A.    No, I've been in other ones, but it seems
20   like we always land up there.  So, you know, years --
21   I don't look at years.  I never thought of years.
22   You know, I know I'm there.
23        Q.    Okay.  So were you always in 2B when you
24   were at the North?
25        A.    I've been in all -- in almost every unit.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   Okay.  Was it summer or winter, do you

2   think?

3        A.   I don't remember.

4        Q.   Did Billy Garcia -- was Billy Garcia with

5   you at the North?

6        A.   Yeah.

7        Q.   Okay.  And do you know where you were at

8   when Billy Garcia was at the North?

9        A.   No.

10        Q.   Was Billy Garcia in the same pod with you

11   at the North?

12        A.   We would the run into each other in the rec

13   pens.  That's about it, you know.  I don't know where

14   he lived or what, or no, I don't remember.

15        Q.   Okay.  And did Billy Garcia make any

16   statements like the one that you're saying Mr.

17   Gallegos made?

18        A.   No, sir.

19        Q.   Okay.  And was Lorenzo Torres with you at

20   the North when Joe Gallegos made this statement to

21   you?

22        A.   I don't recall.

23        Q.   I apologize, but what I'm going to ask you

24   for is, do you think he was there, or do you think he

25   was not there?

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492
                                                                     1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE

BEAN
&ASSOCIATES, Inc.

e-mail: info@litsupport.com

```
 1        A.   I don't remember.

 2        Q.   If Joe Gallegos was asking you that

 3   question -- and you said that he just asked you this

 4   question, right?

 5        A.   Yes.

 6        Q.   Do you know why he just brought that up?

 7        A.   Probably on his mind.

 8        Q.   Okay.

 9        A.   I don't know why he brought it up.

10        Q.   I'm sorry?

11        A.   I don't know why he brought it up.

12        Q.   Okay.  And I guess what I should have asked

13   probably is, do you think he saw Lorenzo Torres that

14   day when he asked you that then?

15        A.   No, I don't -- I can't say if he did or

16   didn't.  I'm not -- you're asking me a question, and

17   I answered it.

18        Q.   And you had said you -- and correct me if

19   this is wrong -- but you had said that you assumed

20   that Joe Gallegos -- or you assumed Joe Gallegos was

21   talking about the 2001 murder because the whole

22   system knows, I think was your wording, right?

23        A.   What?

24        Q.   Correct me if I'm wrong, but I understood

25   you to say that the statement that Joe told you, you
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    assumed that that was about the 2001 murder, because
 2    the whole system knows.
 3         A.   The whole system knew, you know, it's --
 4    that's it.
 5              MR. BENJAMIN:  Pass the witness, Your
 6    Honor.
 7              THE COURT:  All right.  Thank you, Mr.
 8    Benjamin.
 9              Any other defendant have direct examination
10    of Mr. Lucero?
11              MR. BURKE:  No, Your Honor.
12              THE COURT:  All right.  Mr. Beck.  Do you
13    have cross-examination of Mr. Lucero?
14              MR. BECK:  Yes, Your Honor.
15              THE COURT:  Mr. Beck.
16                      CROSS-EXAMINATION
17    BY MR. BECK:
18         Q.   Mr. Lucero, before you left the Southern
19    New Mexico Correctional Facility in 2001, were you
20    looked upon as maybe one of the higher ranking SNM
21    members at that time?
22         A.   I was one of the older ones there that had
23    been in the system longer than most of them.
24         Q.   And did you know that Billy Garcia was
25    coming down to the Southern New Mexico Correctional
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Facility?

 2         A.   Yes, sir.

 3         Q.   Was Billy Garcia going to be the leader,

 4    the highest ranking SNM member at the Southern New

 5    Mexico Correctional Facility when you got down

 6    there -- when he got down there?

 7              MR. CASTLE:   Objection, lack of foundation,

 8    Your Honor.

 9              THE COURT:   Well, let's see what he has to

10    say.  I hope at some point somebody will provide a

11    foundation for this.

12         A.   Yes, sir.

13         Q.   As an older SNM member, in 2001, were you

14    well aware of the ranks of the other SNM members

15    around the state?

16         A.   Yes, sir.

17         Q.   Were you well aware of Billy Garcia's rank

18    as one of the leaders of the SNM at that time?

19         A.   He's been in it for a lot of years.

20         Q.   And is that how you knew that he would be

21    the highest ranking member at the Southern New Mexico

22    Correctional Facility when he got down there?

23         A.   Yes, sir.  We know -- everybody knows who

24    Billy is.

25         Q.   I think you said that when Mr. Gallegos
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    asked you about Lorenzo Torres, you knew he was
 2    talking about the 2001 murders; is that right?
 3         A.   Yes, sir.
 4         Q.   Did you know Frank Castillo or Rolando
 5    Garza?
 6         A.   Yes, I did; I knew both of them.
 7         Q.   Did you know what might happen to them when
 8    you left?
 9         A.   Yes, sir.
10         Q.   And after you left, did you find out what
11    happened to them?
12         A.   Yes, I did.
13         Q.   And is that why you knew what Joe Gallegos
14    was saying when he said:  Do you think Lorenzo Torres
15    will tell?
16         A.   I did.
17              MR. BENJAMIN:  Objection, speculation.
18              THE COURT:  Overruled.
19         Q.   Was Lorenzo Torres an SNM member?
20         A.   Yes, sir.
21         Q.   And it sounds to me like -- at least from
22    this statement, it sounds like you thought Joe
23    Gallegos was worried that Lorenzo Gallegos (sic)
24    might tell what happened with the murder; is that
25    right?
```



SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                          1-800-669-9492
BEAN & ASSOCIATES, Inc.                         e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

```
 1            THE COURT:  Mr. Benjamin?
 2            MR. BENJAMIN:  Your Honor, I think he
 3   misspoke as he was asking his question.  It was
 4   Lorenzo Torres or Lawrence Torres, I'm sorry.
 5            MR. BECK:  Let me re-ask that.  It was a
 6   bad question anyway.  I don't mean to confuse you.
 7       Q.   Sounds to me like you thought Mr. Gallegos
 8   was asking you about Lorenzo Torres, or Lawrence
 9   Torres, because he thought he might tell?
10       A.   Yeah.
11       Q.   He thought he might tell about what
12   happened with the 2001 murders, right?
13       A.   Yes, sir.
14       Q.   Because, as an SNM member, although you're
15   not supposed to tell, sometimes that can happen,
16   right?
17       A.   Yes, sir.
18       Q.   So is it fair to say that he ran a risk
19   even asking you if Lawrence Torres would tell, he ran
20   a risk that some day you might go ahead and say that
21   he asked you that question?
22       A.   Yeah, it could happen.
23       Q.   Because although you don't expect SNM
24   members to tell, you know that there is a possibility
25   they will?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

209

 1        A.    Possibility.
 2        Q.    Now, I know Mr. Castle asked you about
 3   talking with, I think you said Christopher Garcia,
 4   Critter, but it's Christopher Chavez, Critter, right?
 5        A.    Yes.
 6        Q.    And it sounds like at least you don't
 7   recall right now talking with him after the murders;
 8   is that fair to say?
 9        A.    It's -- it comes and goes.  Like I said, I
10   blocked it out of my mind for a lot of years.  You
11   know, didn't have no part of it, so I didn't -- I
12   forgot.
13        Q.    And I'm not testing your memory.  We
14   haven't provided you any documents to refresh your
15   memory in the last couple of days, have we?
16        A.    No, sir.
17        Q.    And so when you're trying to remember these
18   things, even remembering what pod you're in when,
19   that's pretty difficult for you; is that fair to say?
20        A.    Yes, sir.
21        Q.    But if we looked at a document that would
22   show your location history in the New Mexico
23   Corrections Department, would that help you?
24        A.    Yeah, then I could probably go and, you
25   know -- because I've been through the federal system,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    I've been through the state system, here, there.  I

2    just -- a lot of things have happened.

3         Q.   And I guess in recalling these

4    conversations it's much easier to think about who was

5    there and what was said, than where you were and what

6    day or what year; is that fair to say?

7         A.   Yes.

8         Q.   So getting back to Mr. Chavez, is it fair

9    to say that, as we sit here right now, you don't

10   remember talking to him after the murder, right?

11        A.   I do recall him saying something one time

12   that he thought I was going to tell on them guys,

13   Looney, that they were going to do it.  And then he

14   asked me one time, he asked me, he asked me if I

15   thought he was going to -- if he thought I was going

16   to tell Looney before I left that they were going to

17   get him.

18        Q.   And I guess that was the sort of question

19   that I was getting to.  Did you talk with Mr. Chavez

20   about -- and not even about the murders, but did you

21   and Mr. Chavez --

22        A.   Yeah.

23        Q.   -- interact about the murders before you

24   left?

25        A.   Yeah.  He asked me one time if it was

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   right.

 2        Q.   He asked you if it was right?

 3        A.   He said, "What should I do, carnal?"

 4             I said, "You know what you have to do."

 5        Q.   And is that because you all knew about the

 6   murders that were going to happen once Billy Garcia

 7   got down there?

 8        A.   Yes, sir.

 9        Q.   And as SNM members, do you all talk with

10   each other out in the yard in casual conversation

11   often?

12        A.   Yes.

13        Q.   Just like maybe now you talk with other

14   friends or associates, or people like that?

15        A.   Yes.

16        Q.   And in those, do you sometimes talk about

17   gang business?

18        A.   The majority of time that's what it is.

19        Q.   The majority of time you talk about gang

20   business?

21        A.   Yes.

22             MR. BECK:  May I have a moment, Your Honor?

23             THE COURT:  You may.

24             MR. BECK:  Nothing further, Your Honor.

25             THE COURT:  Thank you, Mr. Beck.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Mr. Castle, do you have redirect of Mr.
 2    Lucero?
 3                    REDIRECT EXAMINATION
 4    BY MR. CASTLE:
 5         Q.   The prosecutor just asked you some
 6    questions about you knowing whether Billy Garcia was
 7    going to come to that facility before he got there.
 8    Do you recall that question?
 9         A.   Yeah.
10         Q.   How did you learn that?
11         A.   Angel Munoz told me.
12         Q.   And how did you get that information from
13    Angel Munoz?
14         A.   I spoke to him on the telephone.
15         Q.   And so when would this have occurred in
16    relation to the murders?
17         A.   Prior to them.  I don't remember.  I can't
18    remember exact dates.  I'm not good with dates.
19    Dates, times, I don't remember.  It happened.
20         Q.   Would it have been a month before, a day
21    before, a week before, a year before?
22         A.   Could have been two weeks, a week.
23         Q.   And why was Mr. Munoz having a conversation
24    with you about the murder -- or about Mr. Garcia
25    coming down?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   He never mentioned nothing about murders.

2  He just mentioned that he was going down there.

3      Q.   Well, do you recall being on the phone with

4  Mr. Munoz, and asking him about whether these two

5  people should be killed --

6      A.   No.

7      Q.   -- and him telling you to get it done?

8      A.   No.

9      Q.   That never happened?

10      A.   Never happened.

11      Q.   Do you know a man by the name of Lino

12  Giron, Avelino Giron, known as Lino?  His nickname is

13  Sexy Walker?

14          MR. BECK:  Your Honor, I'm going to object

15  to outside the scope of cross and getting away from

16  the statements.

17          THE COURT:  How is this related to the

18  statements, Mr. Castle?

19          MR. CASTLE:  Well, it's related to what

20  they opened the door to, Your Honor.  And they're

21  trying to create an atmosphere here.  And you know,

22  all I'm doing is confining it to the questions they

23  asked him.  So it's not beyond the scope of cross.

24          THE COURT:  Well, I guess I think I've got

25  a pretty good picture of the context for the



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    statements, so I'm going to sustain the objection.

2        Q.   Well, were you the shot caller at Southern

3    before you left?

4        A.   No.

5        Q.   You indicated that one of the problems

6    you're having is that after these murders happened,

7    you blocked them out of your mind; do you recall

8    that?

9        A.   There is no need for me to remember shit

10   like that, unless you -- you know, I remember it,

11   then I'll remember.

12       Q.   Okay.  Well, you've had an opportunity in

13   the last month to read all your statements, haven't

14   you?

15       A.   I don't have no statements.

16       Q.   Your lawyer didn't go through them with

17   you?

18       A.   I don't have no statements.

19       Q.   Okay.  I'm asking you, the written

20   materials -- excuse me, let me finish -- the written

21   materials where people wrote down what you said, no

22   one showed you them or talked to you about them at

23   all?

24       A.   No, sir.

25       Q.   Do you recall being interviewed by any FBI

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                         e-mail: info@litsupport.com

1    agents in January of this year?

2        A.   Yeah, but they never -- they never showed

3    me documents.  I just told them what I told them.  As

4    I remember it, I'll say it, you know.

5        Q.   Do you recall them saying:  You told us

6    this before, and is this still true?

7        A.   Yeah, because I remembered it, and then,

8    you know, I remember and then I'll forget.  Because I

9    don't have -- you know, it doesn't suit me.

10       Q.   You don't have what?  I'm sorry?

11       A.   I don't remember.

12       Q.   Okay.  Is there a particular reason?

13       A.   I just don't.  I just -- I forget things.

14       Q.   Now, you made the statement that when you

15   talked to Mr. Chavez, he said to you -- or he said to

16   you that he thought you were going to tell on him.

17   Do you recall him saying that?

18       A.   He thought I was going to tell Looney that

19   something was going to happen to him.

20       Q.   Okay.  Did he tell you he thought you were

21   going to tell on him about the murders, you know, to

22   authorities, police, things like that?

23       A.   No.

24       Q.   Why did he want to know if you -- did he

25   tell you why he wanted to know, or why -- I'm sorry,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    let me rephrase that.

2           Did he tell you why he wanted to know

3    whether you had told Looney before you left?

4        A.   I didn't say that.

5        Q.   Okay.  Tell us in your own words.  What was

6    the conversation?

7        A.   I already said what I -- I already told you

8    what I said.

9        Q.   Okay.

10       A.   How it went down.

11       Q.   Just bear with me.  Say it just one more

12   time.  What did he say to you?

13       A.   What?

14       Q.   What did Mr. Chavez say to you?

15       A.   He just -- he just -- it was a

16   conversation.  He came and asked me, he told me, "I

17   thought you were going to tell Looney that we were

18   going to do it."  All right.  And that was it.  That

19   was the end of the conversation.

20       Q.   Okay.  So you knew --

21       A.   I didn't know.

22       Q.   Well, let me ask you then, okay?  So you

23   knew that Mr. Garza was going to be killed before you

24   left the prison?

25       A.   They all knew, everybody knew, except them

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                    1-800-669-9492

BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                            e-mail: info@litsupport.com

 1    two.

 2         Q.   And Mr. Chavez was saying:  Did you tell

 3    him about this before you left?

 4         A.   Mr. Chavez didn't say that.  He just -- the

 5    word -- what he says was:  "I thought you were going

 6    to tell Looney."

 7         Q.   Okay.

 8         A.   And that was it.

 9         Q.   But regardless of what Mr. Chavez told you,

10    he didn't tell you the specifics of how the murder

11    happened, did he?

12         A.   No.

13         Q.   Or how the plan was hatched?

14         A.   No, no, no, no.

15         Q.   Or who hatched the plan?

16         A.   No.

17         Q.   And at no time were you told how the plan

18    was hatched; is that right?

19         A.   No.

20         Q.   Or the details about how it was going to

21    occur?

22         A.   No.

23         Q.   Or who was going to carry it out?

24         A.   No.

25         Q.   Or who was going to plan it?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    No.

 2              MR. CASTLE:  Thank you.

 3              THE COURT:  Thank you, Mr. Castle.

 4              Any other defendant have redirect of Mr.

 5   Lucero?  All right.  Mr. Lucero, you may step down.

 6   Is there any reason that Mr. Lucero cannot be excused

 7   from the proceedings?  Mr. Castle?

 8              MR. CASTLE:  No, Your Honor.

 9              THE COURT:  Any other defendant object?

10   Mr. Beck?

11              MR. BECK:  No, Your Honor.

12              THE COURT:  Can he be excused?

13              MR. BECK:  He may, Your Honor.

14              THE COURT:  All right.  Mr. Lucero, you are

15   excused from the proceedings.  Thank you for your

16   testimony.

17              All right.  Do we want to go back to our

18   motion, or is there something else we need to address

19   before we keep plowing ahead on the motions?

20              MR. CASTLE:  We're through with witnesses,

21   Judge.

22              THE COURT:  All right.  Then let's go to

23   the notice to the Court and a request for order

24   compelling disclosure and motion to strike certain

25   witnesses.  This is a motion that I think all the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    defendants filed.  But it looked like Mr. Cooper, Mr.
 2    Castle, you took the lead on this motion, if I'm not
 3    mistaken.
 4              MR. CASTLE:  Yes, Your Honor.
 5              THE COURT:  All right.  Mr. Castle.
 6              MR. CASTLE:  Some of this has been
 7    resolved, and so if it's all right with the Court,
 8    I'd like to go paragraph by paragraph so we can cover
 9    it all.
10              THE COURT:  All right.
11              MR. CASTLE:  Does the Court want me to stop
12    at the end of the paragraph?
13              THE COURT:  Yeah, that would probably be a
14    good idea.
15              MR. CASTLE:  Paragraph 1 talks about an
16    interview that Mr. Lujan had two years ago, which was
17    tape-recorded on December 3.  After the filing of
18    this motion, I believe the Government at least tried
19    to produce that to us.  It was in a format we
20    couldn't use, and I think that's being worked out or
21    has been worked out.  The person that knows is not
22    here.
23              THE COURT:  Is it Mr. Acee?  That's the one
24    that --
25              MR. CASTLE:  Well, I was speaking more of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    the people that helped me in this case, whether it's
2    been worked out, and we can now listen to it and
3    review it.  It's been produced.  I would just note
4    that it's an hour-and-a-half interview, and it's
5    going to be very difficult for us to put it in usable
6    format, if Mr. Lujan is an early witness in the case.
7              THE COURT:  Any comments on that, Mr. Beck?
8              MR. BECK:  Your Honor, I think that's
9    accurate.  I don't know if any kind of technical
10   difficulties have been resolved, but we did turn that
11   over.
12             THE COURT:  All right.  Do you want to skip
13   over that and come back to it before the end of the
14   day when you get your people here?
15             MR. CASTLE:  Yes, Your Honor.  I would just
16   note that, you know, if there is a problem, I'm not
17   going to ask for the Court to do anything on
18   paragraph 1 at all.  The only thing I would note is
19   that if we're not able to get it transcribed in time
20   for Mr. Lujan's testimony, and it has exculpatory
21   information, then that's going to be a problem.  But
22   that hasn't occurred yet.  So I don't need to raise
23   anything as far as an issue at this point.
24             THE COURT:  All right.
25             MR. CASTLE:  Paragraph 2 is handwritten
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
1    notes.  I've been advised that we've received some
2    handwritten notes, but not all of the handwritten
3    notes of the witnesses that have had 302s in this
4    case.  And that's all I can report at this time.
5              THE COURT:  All right.  Mr. Beck.
6              MR. BECK:  I think all the handwritten
7    notes for the 302s that are in the Government's
8    possession have been turned over, and I think
9    disclosed.  I can't think of any that have not been
10   disclosed.  There may be notes for recent interviews
11   in the last couple of days that have not been turned
12   over because 302s are still being worked on.
13             THE COURT:  So they're using the notes for
14   the 302s.
15             MR. BECK:  Otherwise, they will be turned
16   over.  For example, like Leonard Lujan and Leroy
17   Lucero, my guess is those were in the 302s written a
18   long time ago.  And I don't know if those notes
19   exist, or if they do, where they are.  But --
20             MR. CASTLE:  I have a specific issue,
21   because Mr. Lucero did a Kastigar letter on March 23.
22   Presumably there was an interview at that time.  We
23   don't have a 302 or handwritten notes of Mr. Lucero,
24   if there was an interview done at that time.  There
25   may not have been, there may just be a Kastigar
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  letter.

 2          THE COURT:  Can you make a specific

 3  inquiry?

 4          MR. BECK:  Bates No. 61951 through 952, and

 5  the notes were attached as Bates No. 61953.

 6          THE COURT:  All right.  Is that specific

 7  enough?

 8          MR. CASTLE:  Yes.  I think Mr. Cooper was

 9  writing those numbers down.

10          THE COURT:  All right.  Anything else on

11  that one, Mr. Castle?

12          MR. CASTLE:  No, Your Honor.

13          THE COURT:  All right.

14          MR. CASTLE:  My next one is regarding

15  statements of our client.  At the time we drafted

16  this motion, we had not received our client's

17  recorded statements.  Since that time they have

18  produced that.  What they have not produced is there

19  was a second interview conducted with our client a

20  year-and-a-half ago.  And on the board I'm showing

21  the Court the 302 on it.  And we've asked for the

22  unredacted information.  I know some of it was

23  redacted for the purposes of personal identifying

24  information, home address.  But I've indicated to the

25  Government if they would just share that with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Garcia's defense, we would appreciate that.  But

2    there is also substantive information, and it's been

3    redacted.  We've asked for that to be unredacted and

4    provided to us.  I don't care about his date of

5    birth, because I think he wishes he was younger, and

6    he doesn't want to be reminded of it.

7              On page 2 is information which is just FBI

8    indexing information.  I do not request that.  But I

9    am requesting -- and I believe I'm entitled to the

10   full content of the statement by my client.

11             THE COURT:  I'm not sure I picked up all

12   that.  But do you have any disagreement with Mr.

13   Castle as to producing it in the limited redaction

14   form that he's requesting?

15             MR. BECK:  Without knowing what's on there,

16   I don't.  I mean, my concern is that, for instance,

17   it doesn't look like that's an address, but if it is

18   an address for Billy Cordova, that would cause me

19   concern.

20             THE COURT:  Can he leave off the address

21   for Billy Cordova?

22             MR. CASTLE:  I don't know.

23             MR. BECK:  What I would propose to do is

24   find out what's on there and speak with Mr. Castle

25   about it, if I think it's properly redacted.  If not,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    then we don't have any problem unredacting those

2    three lines.

3            MR. CASTLE:  I'll work with them on that.

4    The only thing I would note is this particular

5    document, they list here, the paper, it wasn't in

6    property when we reviewed the property at all.  And

7    they've marked it as an exhibit that they're going to

8    use at trial.  So there is even a greater need for us

9    for review it.  If they're representing it was

10   Mr. Cordova's address, who was a cooperating witness

11   in this case, we have a right to go find out if it

12   actually was his address.  If it was somebody else's

13   completely, then obviously, it may not have any

14   probative value in this case, but they're going to

15   use it for some reason as an exhibit at trial.

16           So I'll work with Mr. Beck, and I'll take

17   his assurances.  And if we have an issue, we can

18   reraise it at some break on Tuesday.

19           MR. BECK:  We can work that out.  Mr.

20   Castle, what's the Bates number on the bottom of

21   that?

22           MR. CASTLE:  Page 3273.

23           THE COURT:  All right.  What else, Mr.

24   Castle?

25           MR. CASTLE:  In paragraph 4 we asked for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    information as to whether the United States

2    Attorney's Office declined to prosecute any of the

3    counts for Trial 2 or inform the defense of any prior

4    Grand Jury return a no true bill concerning the

5    charges involved in the indictment.

6         As the Court has seen already, at one point

7    in time there was a declination letter that was

8    provided.  But also in another exhibit provided to

9    the Court, and that was admitted, there was an

10   indication that the FBI may have presented this case

11   for at least review by the United States Attorney's

12   Office in 2008 or '09 -- I can't remember the exact

13   year.  I believe that a no true bill was issued.

14   Obviously, I think there is some legal issues there.

15   But also if there is any more declination letters

16   that may be an admission by a party opponent that we

17   can use at trial.  And I've requested this for quite

18   some time and have not had a response.

19         THE COURT:  Mr. Beck.

20         MR. BECK:  These -- there is nothing there

21   that exists.

22         THE COURT:  So you have no documents or

23   even information that falls within the scope of this

24   request?  Anything that falls within the scope of

25   this request has already been produced or disclosed?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MR. BECK:  Right, yes.
 2              THE COURT:  All right.  Does that
 3   representation work for you, Mr. Castle?  Is that
 4   sufficient?
 5              MR. CASTLE:  I'm sorry, Judge, I was trying
 6   to confer.
 7              THE COURT:  Well, the question I asked Mr.
 8   Beck, was there any documents or information that
 9   fell within the scope of this request that had not
10   already been disclosed or produced.  And he said he
11   has no other information or documents that fall
12   within the scope.  Is that representation sufficient?
13              MR. CASTLE:  It is, Your Honor.
14              THE COURT:  Okay.
15              MR. CASTLE:  Photograph 5 requests
16   presentence reports.  Since the filing of this motion
17   to the Court, I believe the Government has produced
18   those presentence reports.  There might be one
19   missing.  But if so, we will confer with the
20   prosecution.
21              THE COURT:  All right.  Anything else on
22   your motion?
23              MR. CASTLE:  That's it, Your Honor.
24              THE COURT:  All right.  Anything else from
25   the Government on this motion, Mr. Beck?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BECK:  No, Your Honor.
 2              THE COURT:  Any other defendants?  Mr.
 3    Benjamin?
 4              MR. BENJAMIN:  Just two issues, Your Honor.
 5    One has been dealt with and that's regarding recent
 6    302s, or notes; and that would be Ms. Gutierrez.  But
 7    that was March 29, so I understand that they're
 8    working on that, and those will be produced, is what
 9    the Government has represented.
10              The second one is one that, I guess, just
11    occurred this week.  And that's regarding a Matt
12    Lucero.  And that was something that was told to me
13    was going to be used as part of enterprise evidence,
14    and that was represented during our last hearings,
15    the 12th through the 16th.  And then at this hearing
16    it was represented that that wouldn't.  The skeptic
17    in me believes that something must have changed and
18    there must have been an interview or something, and
19    so I'm requesting any notes or anything that made
20    that change, or raised those issues.
21              THE COURT:  Any response on that, Ms.
22    Armijo?
23              MS. ARMIJO:  Your Honor, there was no
24    additional interview.
25              THE COURT:  But you just changed your mind?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. ARMIJO:  We did.

 2              THE COURT:  Okay.  So there is no

 3    additional interviews, 302s, or information?  Just

 4    changed your mind?

 5              MR. BENJAMIN:  I appreciate that, Your

 6    Honor.  But I can only go with the representation

 7    that was made.  But thank you.

 8              THE COURT:  Anything else I can help you

 9    with?

10              MR. BENJAMIN:  No, Your Honor.  Thank you.

11              THE COURT:  Any other defendants have

12    anything on this motion?

13              Anything further, Mr. Beck, Ms. Armijo, on

14    that motion?

15              MR. BECK:  No, Your Honor.

16              THE COURT:  The next motion I have up is

17    the United States motion, or it's notice of other

18    crimes or bad acts.  And I think this relates to Mr.

19    Troup, if I'm not mistaken.  Is there an issue here

20    that needs to be resolved?  Mr. Burke, is there an

21    issue to be resolved here?

22              Mr. Castellano?

23              MR. CASTELLANO:  The objection defense

24    counsel had was that there were no specific

25    statements in the first filing by the Government.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    The Government --
 2              THE COURT:  You filed a reply; correct?
 3              MR. CASTELLANO:  We filed a reply including
 4    statements in this case.  I think it could be either
 5    404(b), or could also be substantive evidence of
 6    racketeering acts.  Because the racketeering statute
 7    does include witness intimidation under 18 USC,
 8    Section 1512 and 1513.  So I think it could be 404(b)
 9    or substantive evidence.
10              And that's all I have.  I think the motion
11    speaks for itself.  I know the Court heard testimony
12    from two witnesses last trial about statements by Mr.
13    Troup.  And there are two additional statements now.
14              THE COURT:  Okay.  Mr. Burke.
15              MR. BURKE:  Your Honor, the statements that
16    I have, even with the reply are not intimidation.
17    There are statements that -- about --
18              THE COURT:  Point me on the reply to where
19    the statements are.  Is this Mr. Troup saying -- I
20    guess, telling everybody at the detention facility
21    that there is another FBI informant -- or he pointed
22    to somebody and said that, and started disrespecting,
23    and saying that "Dan Dan" Sanchez and Carlos Herrera
24    came back from court and said:  "All you FBI
25    informants need to stop doing what you're doing.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1     Have some respect for each other and stop doing what
2     you're doing."  That's the statement?
3               MR. BURKE:  Yes.
4               THE COURT:  The first statement?
5               MR. BURKE:  Yes, Your Honor.
6               THE COURT:  Okay.  This is an allegation
7     that Mr. Troup was making.  He's saying there is
8     another FBI informant right there.  Started
9     disrespecting the -- I guess the only thing I paused
10    on is the word "disrespecting."  I don't know -- I
11    know there wasn't any elaboration at the first trial
12    on that.  But I guess I'm inclined to agree with
13    Mr. Burke that that's not about intimidation or
14    attempt to scare.  But if you've got more flesh on
15    the disrespecting, I guess I might hear that.  If
16    he's going to -- Mr. Urquizo can flesh out
17    disrespecting, it might cross the line into witness
18    intimidation.
19              MR. CASTELLANO:  Sure, Your Honor.
20              And disrespect in the SNM is a big deal.
21    And by disrespecting the gang's rules, that alone is
22    a communication to somebody that you're violating the
23    Court's rules.  And we usually just say witness
24    tampering.  But the statute itself refers to an
25    attempt to influence, delay, or prevent the testimony
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  of any person in an official proceeding.  So even

2  attempts to influence are counted under the 1512

3  statute.

4          MR. BURKE:  Your Honor, one of the things I

5  said in the objection, which is Document 1994 -- and

6  I assume Lupe Urquizo will be here -- is you also

7  need to see it on a case by case basis to see if it

8  goes over into something that might be 404(b)

9  material.

10          I don't mean to be crass, but if you call a

11  rat a rat is not necessarily, you know, the sort of

12  404(b) intimidation.  And the Tenth Circuit case U.S.

13  v. Smith, 629 F.2d 650, a 1980 case, and that's where

14  somebody pulled into the driveway -- there, Young

15  testified that two weeks prior to trial, Smith

16  followed him home in his car; pulled into the

17  driveway, and made intimidating remarks and gestures.

18  Now, that's threatening a witness.

19          But to call a rat a rat is not intimidating

20  or threatening a witness, in my view.  But I think

21  that it really will have to be decided on an ad hoc

22  basis.  And I cited the Romine case for that

23  proposition in my paper.

24          THE COURT:  Well, I may need to hear Mr.

25  Urquizo tell me in more detail what was said.  I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   don't know.  I think I disagree with you.  If
 2   somebody starting calling somebody a rat, that to me,
 3   might be intimidation.  But for some reason saying --
 4   calling them FBI informants seems different to me.
 5   And so the statement that's here, I think probably is
 6   right up to the line, but not there.  But I need to
 7   hear a little bit more about what he said that he is
 8   now characterizing as disrespectful.  That might
 9   cross the line.
10           So I guess I'm inclined right at the moment
11   not to allow that.  But maybe you can flesh it out
12   for me outside of the presence of the jury, or if you
13   talk to him and get a 302, I can look at what he's
14   going to say.  But I think it may come up to the
15   line.  It doesn't quite cross over, but I can see how
16   it would.
17           MR. CASTELLANO:  Your Honor, we can work on
18   fleshing it out.  Of course, calling someone a rat in
19   a jail facility --
20           THE COURT:  I kind of disagree with Mr.
21   Burke on that, when you start using that sort of
22   language.  But if he said -- like he does here:  "All
23   you FBI informants" -- I don't know.
24           MR. CASTELLANO:  The rest of the statement
25   is:  "All of you FBI informants need to stop doing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   what you're doing."  So when you tell an informant to
 2   quit being an informant, that is an indication that
 3   you are trying to influence their testimony, and any
 4   other cooperation that they're engaged in.
 5          MR. BURKE:  Well, the next statement is:
 6   "Have some respect for each other."
 7          THE COURT:  Yeah.
 8          MR. CASTELLANO:  "And stop doing what
 9   you're doing."
10          THE COURT:  Well, I think I agree with -- I
11   guess for the first sentence -- I guess, for the
12   first clause there, saying there is another FBI
13   informant right there and started disrespecting, and
14   saying "Dan Dan" Sanchez and Carlos Herrera came back
15   from court -- is he quoting what they're saying, is
16   that what he's doing?  He's quoting what "Dan Dan"
17   and Carlos said?  Is that what he's doing?
18          MR. CASTELLANO:  That's the way I read it,
19   Your Honor.  From the testimony, that's the way I
20   understood.
21          THE COURT:  That's the reason it came in to
22   the first trial, he was quoting what they said?
23          MR. CASTELLANO:  Correct.
24          THE COURT:  Well, it seems to me we run
25   into problems having Mr. Urquizo testifying what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    Troup said, and Troup saying what Mr. Sanchez and Mr.
 2    Herrera said.  We're getting -- we're at least
 3    getting hearsay through hearsay.  It's orders, I
 4    guess.
 5              MR. CASTELLANO:  It's also used for the
 6    impact on the listener.  I mean, when you repeat
 7    someone's phrases to somebody regarding other SNM
 8    members it is intended to have an effect.
 9              THE COURT:  But I do have -- it is being
10    offered for the truth of the matter that Mr. Troup
11    made those remarks.  I guess that would come in
12    against him.  Well, I think it fits the hearsay
13    exception, and then the rest of it is going to come
14    in as nonhearsay, because I think it's orders.
15              And if the Government wanted me to say it's
16    for the impact upon the hearer, then I could give a
17    limiting instruction on that.  But I do think that,
18    that being said, stop doing it would be interference
19    with a witness.  So I guess I'm inclined to leave it
20    in the trial.
21              All right.  Let's look at the second
22    statement, Mr. Burke.
23              MR. BURKE:  So there is Mario Montoya
24    testified that Troup was yelling out that, "All of us
25    cooperators think that the FBI and the US Government
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1    is our friend.  But we're going to find out in the
 2    end that, as soon as they're done prosecuting these
 3    guys, February 20, 2018" -- so I'm getting that's the
 4    first trial -- "they're going to line us up and
 5    prosecute us next; that we're probably going to end
 6    up with more time than them."  He went on to say, "I
 7    thought he was just trying to plant the seed of doubt
 8    for us to come here today and cooperate."  So I
 9    believe that last part is Mario Montoya's thought
10    about a statement that could very well be true.
11              THE COURT:  Well, I'll give it some
12    thought.  I'm inclined to leave it in.  I'll think
13    about it a little bit more.
14              MR. BURKE:  All right.  Then should I move
15    on, Your Honor?
16              THE COURT:  Okay.
17              MR. BURKE:  Number three, I think that's
18    where we would need a 302 to -- what is that?  I
19    mean, I've looked at the statements of Benjamin
20    Clark.  He's one of these fellows who I think will
21    say anything at this point.
22              And then number four, "Troup was also a
23    member of a group who called Samuel Gonzales a rat."
24    And I don't know the context of that.  So I think we
25    would need a 302, or some sort of flesh on those
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    bones before we could argue it.
2              THE COURT:  Do you have anything more on
3    three and four, Mr. Castellano?
4              MR. CASTELLANO:  On three, I don't, Your
5    Honor.  I agree that we have to flesh that out.
6              On four, I do have some background.  So
7    Samuel Gonzales in the last trial was subpoenaed by
8    Mr. Perez.  And so he was back in holding with a
9    number of the defendants, including Mr. Troup.  And
10   they were giving him hard time about being there, and
11   having a conversation about him being a rat.  He
12   explained to them that -- he told them he wasn't
13   going to testify, and he, in fact, refused to
14   testify, and did not.  But when he was down there the
15   people were referring to him as a rat, including
16   Mr. Troup.
17             THE COURT:  So are you going to try to call
18   Mr. Gonzales in this trial?
19             MR. CASTELLANO:  Yes.
20             MR. BURKE:  Do we have a date, or do we
21   have any other witnesses, or --
22             MR. CASTELLANO:  I don't recall the
23   specific date.  It would have been probably in the
24   defendants' case, because it was at the point when
25   Mr. Gonzales was brought at the defendants' request.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    He was subpoenaed by the defense.  So I think it

2    would have been after the Government rested.

3              THE COURT:  Okay.  Well, let's then keep

4    out three for the present time.  One, two, and four

5    will come in.  I'll give it some further thought --

6              MR. BURKE:  Your Honor, I'm sorry for

7    interrupting.  But if Mr. Castellano is correct about

8    the timing, Edward Troup wouldn't have been here

9    during the first trial.

10             MR. CASTELLANO:  I'm not sure when there

11   was overlap.  I know that when the trial ended, there

12   was overlap between the hearings and the trial

13   itself.  But I'm only guessing that it would have

14   been after our case, because he was called as a

15   defense witness.  But I don't know the exact date.

16   So that's my best guess.

17             MR. BURKE:  I think there was an overlap

18   when the jury was out.  We came in here one day, and

19   we had a hearing, but there wouldn't have been

20   witnesses.  The jury had been out -- I think that

21   Monday after closings, a week after closings, we were

22   in here.

23             But I mean, I guess I'm renewing my request

24   for more flesh on the bones of that one as well.

25             THE COURT:  I just can't think of when Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    Troup and Mr. Gonzales would have been here at the
2    same time.  So I will require more information on
3    four.  So right at the moment three and four are out.
4    I'll think about one and two.  But right now they're
5    in.
6               MR. BURKE:  Got it.  Understood.
7               THE COURT:  Okay.  Anything else on that,
8    Mr. Castellano?
9               MR. CASTELLANO:  No, Your Honor.
10              THE COURT:  Any other defendant?
11              All right.  Let's, then, move for the
12   restricted motion to strike government witnesses
13   Brian Rascon and Raymond Rascon.  And I believe this
14   is also -- you took the lead on this one, and it may
15   be solely your motion, Mr. Burke, Ms. Harbour-Valdez.
16              MR. BURKE:  I think we had some joiners,
17   Your Honor.
18              THE COURT:  Okay.
19              MR. BURKE:  I made such a stink about
20   trying to get the Rascons' pen packs, the Court might
21   even remember that.  I was pressing pretty hard for
22   those pen packs, and made a nuisance of myself.
23              THE COURT:  And I guess they didn't have
24   one, but they got this STIUG packet, but they don't
25   have a pen pack?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BURKE:  Well, I don't know.  They

2     listed pen packs as exhibits.  And I'm guessing there

3     is a simple explanation for this.  But I haven't

4     heard it.  If they have found the pen packs now, I

5     think that would be a rather stunning --

6          THE COURT:  I think Mr. Beck is about to

7     tell you what the situation is.  Mr. Beck.

8          MR. BECK:  Yeah, since the beginning, what

9     we've said, and what's always been the case, is that

10    pen packs exist or they don't.  Corrections creates

11    them at some point in time, if they want to for some

12    reason.  And so for some people they exist.  What

13    we've said since the beginning is they don't for the

14    Rascon brothers.  So we've said from the beginning --

15         THE COURT:  So even if you accidentally, or

16    something, put it on an exhibit list, there are no

17    pen packs for the Rascons?

18         MR. BECK:  We intentionally put it on an

19    exhibit list, because we asked Corrections to produce

20    a pen pack.

21         THE COURT:  And they don't have one?

22         MR. BECK:  And they did not have one when

23    we put it on the exhibit list.  They have one now,

24    which we received today, which we're disclosing today

25    or tomorrow.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                             1-800-669-9492

PROFESSIONAL COURT                                           e-mail: info@litsupport.com
REPORTING SERVICE

1           MR. BURKE:  Then they could have done it a
2    year-and-a-half ago.
3           THE COURT:  Well, let me make sure I
4    understand what the situation is.  So there is no pen
5    pack, but they have now prepared one?
6           MR. BECK:  Right.  And that was the offer I
7    made early on, is that New Mexico Corrections, if the
8    defendants wanted to, could reach out and ask them to
9    produce a pen pack.  And I think they would if they
10   had one.
11          THE COURT:  Is the material that's going to
12   be in this pen pack substantially similar or
13   identical to what's been in the STIUG file?
14          MR. BECK:  No.  What a pen pack is, is it's
15   publicly available J & Cs.  That's what a pen pack
16   is.  So if the Court remembers, throughout the trial,
17   when we called witnesses, we entered their pen pack
18   into evidence, which contained their prior J & Cs,
19   and then for some we walked through -- for some the
20   defense entered those as exhibits and walked through
21   them.  So it's just J & Cs, and then photos and
22   fingerprints.
23          And so, I mean, we've had a consistent
24   position on this from the beginning, is that, if they
25   existed in Corrections' custody or control, that we

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE                        1-800-669-9492
                                          e-mail: info@litsupport.com

```
 1    would -- that we would turn those over.  If they
 2    didn't exist, there was nothing to turn over.
 3            And then when we asked Corrections to
 4    produce one, getting ready for this trial, to create
 5    one for us --
 6            THE COURT:  What do they do?  Do they go
 7    out and search all the records of state convictions
 8    and put it together?
 9            MR. BECK:  Yes, that's my understanding.
10            THE COURT:  And they don't do that for
11    every prisoner?
12            MR. BECK:  No.
13            THE COURT:  So it's something that -- these
14    aren't documents that are lying around the
15    Corrections facility?  They have to go look for them.
16            MR. BECK:  Right.  Yes, they produced those
17    to us.
18            So, for instance, at some point I think
19    during the last trial -- during the first trial --
20    someone was called last minute by the defense; we got
21    notice of someone last minute by the defense.  And
22    they didn't have a pen pack for that person.  So we
23    had to go out and search for all of the documents
24    because it just didn't exist at that time.
25            THE COURT:  Okay.  And you're about to hand
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the defendants the pen packs for the Rascon brothers?
 2              MR. BECK:  Right.
 3              THE COURT:  All right.  Mr. Burke.
 4              MR. BURKE:  I don't remember anything about
 5    this statement -- that doesn't mean it didn't
 6    happen -- but that we would have to create it.  The
 7    statement in Mr. Beck's email is, "Pen packs don't
 8    exist for the Rascon brothers and Trujillo."  There
 9    is nothing there about:  We can create one, or we may
10    have one and we will provide it to you.  Rather, it
11    says, "but we've agreed to provide you the STIU
12    files."
13              And your question was, of course, a good
14    one:  Is that the same?  But it isn't.  The
15    intelligence information is different than the
16    convictions.  And they had pen packs for all of the
17    other people, or most of the other people in the pod.
18    So why didn't they produce the pen pack -- create one
19    then a year-and-a-half ago when I was squawking about
20    it, and give it to us then, so that we could do the
21    work that we need to do to prepare to cross-examine
22    the Rascons?  It makes no sense to me.
23              THE COURT:  Well, I think it's mostly
24    publicly available information.  It's just whether
25    it's all -- who pulls it together and then labels it.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    So I'm inclined to deny your motion on pen packs, and

2    we'll see if it contains anything that raises any new

3    issues.

4              MR. BURKE:  Fair enough, Your Honor.

5              THE COURT:  Anything else from the

6    defendants on that motion?

7              Mr. Beck?

8              All right.  So I'll deny that motion.

9              All right.  Let's see if we can squeeze in

10   the restricted motion to strike Government's witness

11   Benjamin Clark.  And I think this is also your

12   motion.

13             MR. BURKE:  Yes, Your Honor.  This is

14   another one of the issues I've been clamoring about,

15   is to get that transcript and the tape of the

16   interview of Ben Clark.  And it turns out that the

17   transcript and the tape do not exist.  In fact,

18   Special Agent Acee mentioned it today as well.  And

19   it seems to me the problem with they're not being

20   able to produce it is that they will not be able to

21   comply with the Jencks Act.  And I believe that he

22   should be stricken as a witness based on the

23   Government's projected failure to comply with the

24   Jencks Act.

25             THE COURT:  By not keeping these documents?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BURKE:  No.  The statement itself is
2       the Jencks statement.  So, yes, their summary -- and
3       we've seen enough about whether the FBI 302s are
4       really complete or thorough -- but in any event, the
5       statement is the transcribed or tape-recorded
6       statement itself, not the FBI agents' summary of what
7       the statement --
8              THE COURT:  And they can't find either one
9       of those?
10             MR. BURKE:  That's correct, Your Honor.
11      And I think it was the source of some frustration by
12      Mr. Acee, and he expressed that today.  They just
13      can't find it.
14             THE COURT:  All right.  Thank you, Mr.
15      Burke.
16             Mr. Beck.
17             MR. BECK:  I don't know if I can be as
18      quick as you want me to, Your Honor.
19             It's not a question of Jencks.  The
20      recorded statement isn't in the Government's
21      possession.  There was no verbatim transcript.  And
22      so what it falls into then --
23             THE COURT:  When he was saying the
24      transcript, wasn't it a transcript of the recording
25      that was made?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. BECK:  No.  What happened is -- no,
2     what happened is -- my understanding is that Agent
3     Dougherty recorded the conversation, or recalls that
4     he did -- I think that he probably did, because it's
5     in his notes, and his notes say something to the
6     effect:  For all of the details provided during the
7     interview, refer to the recording of this interview,
8     verbatim transcript of the same.  And it's that
9     paragraph that I was reading.
10          So what happened -- and I think this -- I
11    think this 302 was what Mr. Burke was referring to
12    that Mr. Castle asked Special Agent Acee about this
13    afternoon.  Agent Dougherty said because he recorded
14    it, he thought a verbatim transcript should be made.
15    But he looked through his file, and he never
16    requested a verbatim transcript, and the recording
17    doesn't exist.
18          So for there to be a Jencks violation, we
19    would have to possess the recording or the
20    transcript, which we don't.
21          That moves us into, then --
22          THE COURT:  Bear with me.  I guess I'm
23    still not quite understanding.  What was then the
24    transcript of, if it wasn't of the recording?
25          MR. BECK:  That's what I'm explaining to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   you, is that there is no verbatim transcript.  He

2   recorded it, and he intended to make a transcript of

3   the recording.

4               THE COURT:  And he never made it?

5               MR. BECK:  And he never did.

6               THE COURT:  So the verbatim transcript,

7   your information, it was never made?

8               MR. BECK:  It never existed.

9               THE COURT:  But there was an audio

10  recording?

11              MR. BECK:  Yes.

12              THE COURT:  So that's what is lost?

13              MR. BECK:  Right.  So the key word there at

14  the end is, of course, "lost."  That takes us out of

15  Jencks and takes us into, as we're all familiar with

16  at this point, the Trombetta and Youngblood standard,

17  for lost or destroyed evidence.  Probably the key

18  here -- again, we start with Trombetta, which is

19  whether there was apparent exculpatory value.  There

20  isn't apparent exculpatory value in this interview.

21  It's inculpatory.  But even setting that aside, under

22  Trombetta, if there was apparent exculpatory value,

23  the second prong for that inquiry even under

24  Trombetta, before we get to Youngblood, is that the

25  defendant remains unable to "obtain comparable

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    evidence by other reasonably available means,"

2    unquote.

3              So there is comparable evidence easily

4    obtained, because they already have it, which is the

5    302 from that conversation, which is five pages.  So

6    they have five pages of the 302 report from that

7    interview, and then they also have then a ten-page

8    follow-up interview from May 16, 2016, which goes

9    more in-depth.  It covers the same material as the

10   first, but it goes more in-depth into the material.

11             And so this is what the courts are looking

12   for when they say not able to obtain comparable

13   evidence by other reasonable and necessary means.  It

14   means it was just lost.

15             And that's not the case here.  They have

16   the 302 report -- five-page 302 report -- then they

17   have a ten-page follow-up, which covers the same

18   material, but more material.  And they, of course,

19   have Agent Dougherty, who was present for the

20   interview, to ask him questions about it.

21             And so there was no Jencks violation.  It

22   doesn't meet the Trombetta standard, let alone, once

23   we get to that, there is nothing apparently

24   exculpatory about the inculpatory nature of this

25   interview.  Once we fall under Youngblood, there has

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

248

 1  to be bad faith.  And I think if the Court looks

 2  at -- my understanding is was Exhibit AA to the

 3  motion to dismiss, which is Agent Dougherty's report

 4  about trying to look for the recording.  That report

 5  standing on its own will show that certainly there

 6  wasn't any bad faith on the Government's behalf in

 7  negligently, I would say, losing this recording.

 8          THE COURT:  All right.  Thank you, Mr.

 9  Beck.

10          Mr. Burke, why don't I hear you after we

11  take a break, then I'll not be pressuring you to

12  finish up.  So why don't we take about a 15-minute

13  break.  That's going to leave us about an hour.  So

14  we need to think about what needs to be done before

15  we leave here.  I've got a few issues I need to go

16  over from a pretrial standpoint.

17          Did y'all get the memo from Ms. Wild?

18          MS. HARBOUR-VALDEZ:  We did.  We have

19  questions about that, and we'll take it up after the

20  break.

21          THE COURT:  All right.  We'll be in recess

22  for about 15 minutes.

23          (The Court stood in recess.)

24          THE COURT:  All right.  Let's go on the

25  record.  I'm going to -- hold your thought, Mr.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
1    Burke, because I need to probably get Ms. Wild on the
2    phone, and deal with these jury issues so that she
3    can get out of here.  So let's see if she's on the
4    line.  Let me say a couple of things while we're
5    getting her on the line.  You do have the list of the
6    jurors as they are going to come into the room.  So
7    those are in the number that they're going to come.
8    If they do not show up, then you will -- they don't
9    show up, and you'll have to generate -- or the Court
10   will generate a seating chart, but we'll have to wait
11   till Monday to see who they are.  Same way with the
12   strike list.  We can't do a strike list now because
13   we don't know who is going to show up.
14              I can tell you, though, in the first trial
15   because of the intensive questionnaires, the
16   intensive strikes that we've already done, the
17   appearance rate was quite high.  I'm not as familiar
18   with appearance rates down here in Las Cruces,
19   because I don't try as many cases as I did earlier in
20   my career down there, but it was quite higher than
21   the standards, or what I'm used to in Albuquerque,
22   and it was a quite high appearance rate.  So I don't
23   expect too many of the people that are early on the
24   list not to appear.  But you do have the order, the
25   sequencing of the way they're going to come into the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   courtroom on Monday.
 2           Ms. Armijo.
 3           MS. ARMIJO:  I haven't seen that.  I don't
 4   have an order.  And I don't believe
 5   Ms. Harbour-Valdez has.
 6           THE COURT:  All right.  Ms. Wild, are you
 7   there?  Can you hear what I said?  We've going to get
 8   IT to come up here.  We've had trouble with this
 9   phone all day.  We can't get the thing to work.
10           What I was telling them is they've got the
11   sequencing sheet.  They say they do not have a
12   sequencing sheet.  They do not have a sequencing
13   order.
14           THE CLERK:  Sure they do, because the range
15   was provided, and the numbers associated with the
16   juror on the face of the questionnaire.
17           MS. ARMIJO:  I guess, I don't know.  I
18   guess we were expecting a list or something.  I guess
19   maybe we need to figure out what we have.  Because I
20   don't think that -- or maybe there is an email that
21   we didn't get, because --
22           THE COURT:  I think what she's telling you
23   is in the email, which you did get, there is a range
24   next to Group 1 and a range next to Group 2; is that
25   what you're saying, Ms. Wild?  Ms. Wild?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1              THE CLERK:  I don't think she can hear you,
2    Judge.
3              THE COURT:  Well, this isn't going to work.
4    I'm not sure what to do.  But I guess y'all will just
5    have to talk to Ms. Wild separately, but that's all I
6    can really do.  We're continuing to have problems
7    with this phone, and right now we can't even make the
8    person on the other end hear us.
9              MS. ARMIJO:  Your Honor, I guess my concern
10   is it says jurors 21 through 844, the numbers that
11   were given -- the batches that we got had juror
12   numbers that were longer.  So I guess I see where she
13   said --
14             THE COURT:  Let's do this:  I can't answer
15   this question.  So without her, this is just useless.
16   So let's don't use our time on that.
17             MS. ARMIJO:  Would it be possible maybe for
18   the two of us to step outside and just call her?
19             THE COURT:  You're welcome to do that.
20             MS. ARMIJO:  And trying to figure it out.
21   And then we can come back and report to the Court,
22   and maybe you all can continue without us.
23             THE COURT:  Okay.  Deputy Gunther, I was
24   going to put on the record, you're going to try to
25   have all the -- I can't even get my -- just confirm
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   you're going to have the defendants here way before
 2   8:30, but you'll have them in the courtroom ready to
 3   go by 8:30 each day.
 4              THE MARSHAL:  Yes, sir.
 5              THE COURT:  And do you have any plans that
 6   you need to tell the defendants or the defendants'
 7   lawyers so they know what to kind of expect each day
 8   as far as the routine?
 9              THE MARSHAL:  There is going to be no
10   change, Judge.  We're going to get them over here in
11   plenty of time, and we'll have them up here between
12   8:00 and 8:15 usually.
13              THE COURT:  All right.  And I assume that
14   we'll try to make sure that the jurors -- like we did
15   in the prior trial, y'all are going to dress in
16   suits?
17              THE MARSHAL:  Yes, sir.
18              THE COURT:  And that the jurors will not
19   see the defendants coming into the courtroom or the
20   courthouse in any sort of jumpsuits or shackles or
21   anything like that.
22              THE MARSHAL:  We bring them into the sally
23   port each morning, sir.  But we get here plenty
24   before they do at 8:00.
25              THE COURT:  Before they do.  Any more
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    issues for Deputy Gunter?  So your people will be
 2    here and we'll try to start promptly at 8:30 every
 3    day.  So everybody needs be here lawyer-wise here at
 4    8:30.  But we'll have the defendants in the courtroom
 5    probably about 15 minutes earlier than that, right?
 6              THE MARSHAL:  Yes, sir.  The only other
 7    thing, Judge, they requested 7:30 to come in.
 8              THE COURT:  Yes.
 9              THE MARSHAL:  The jurors are also allowed
10    to come in early on Mondays and Tuesdays, is what
11    we've been apprised by --
12              THE COURT:  So it's just Monday and
13    Tuesday.
14              THE MARSHAL:  They will be early also, and
15    able to come in at the same times.  Is that an issue
16    with anybody?
17              THE COURT:  Well, I just need to get these
18    lawyers through before we get 80 jurors coming
19    through, because I need them in here earlier.  Is
20    there a way that, if they come up, can they cut in
21    the line, and y'all get them in here earlier, so they
22    can be here at 8:30?
23              THE MARSHAL:  Judge, I would say for them
24    to be here at 7:30 on the dot, and that would
25    probably be the best way to get in and out without
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    issues.
 2              THE COURT:  All right.  For those two days,
 3    you need to be here -- you need to somehow be here at
 4    8:30.  You don't have to be here earlier than that.
 5    But remember that I had some problems getting defense
 6    lawyers through the front door.  They showed up at
 7    the same time all those jurors did, so -- all right.
 8              MR. BLACKBURN:  Do you mean 7:30?
 9              THE COURT:  Well, that's what they're
10    saying.
11              MR. BLACKBURN:  You just said 8:30.
12              THE COURT:  Well, you need to be in here at
13    8:30.  But you may not be able to get through the
14    front door and be here at 8:30 if you show up at
15    8:15.  So you may need to show up at 7:30, so you're
16    at the front of the line.  Just for those two days,
17    or just how long it takes us to get the jury
18    selected.
19              All right.  Anything else for Deputy
20    Gunter?  All right?  Thank you, Deputy.  Appreciate
21    it.
22              THE MARSHAL:  Yes, sir.
23              THE COURT:  All right.  Let's finish up,
24    Mr. Burke, on yours then, and I then probably need to
25    move to some of the things I need to discuss with
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    you.

2            MR. BURKE:  Your Honor, Mr. Beck said that

3    that tape recording is not a Jencks statement.  And

4    it absolutely is a Jencks statement that was in the

5    custody of the Government at one time.

6            What the 302 said regarding the December 3,

7    2015 statement was:  "For all of the details provided

8    during the interview, refer to the recording of this

9    interview and a verbatim transcript of same."  I

10   understand that the verbatim transcript was never

11   prepared.  But the tape did exist.  The tape was in

12   their custody.  That is the Jencks statement.  And

13   they lost it.

14           The cases that are actually right on point

15   are set forth on pages 5 and 6 of Document 2012.  And

16   it's not altogether different from Trombetta, the

17   language.  It talks about -- so here is one case,

18   Muwwakkil, holding that "the appropriate sanction for

19   loss of Jencks Act statements requires weighing the

20   degree of negligence or bad faith involved and the

21   prejudice to the defense."  And so it is a balancing

22   test.  They lost it, we should have it.  The 302s

23   have been very unreliable.

24           We would like to hear the statement from

25   Ben Clark's voice.  And there is some cases that I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   put in the pleading that even talk about how it's

2   much more impactful when the jury hears the voice

3   from a tape recording than a cold, hard piece of

4   paper.

5            Mr. Beck also said that we have more of the

6   same in I think it's a May 2016 statement so 17

7   months after this.

8            Ben Clark's statements get worse and worse

9   for Mr. Troup, the longer he stays in jail, because

10  that's how this case has been built.  It's all about

11  what these manipulative snitches can get for saying

12  the things that please the Government.  So to offer

13  as help to the defense a statement by Ben Clark 17

14  months after the statement that we want doesn't

15  really seem reasonable to me.

16           So I would like you to fashion a remedy for

17  their loss of the Jencks statement that we would have

18  liked to have used in the trial of this case.

19           THE COURT:  All right.  Thank you, Mr.

20  Burke.

21           MR. BURKE:  Thank you, Your Honor.

22           THE COURT:  Well, I think I have to find a

23  wrong before I start fashioning a remedy.  And I just

24  don't see any evidence at the present time that there

25  was any bad faith, deliberativeness, intent.  The

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Tenth Circuit is pretty clear that that's required.
 2              So I'm not inclined to try to fashion a
 3    remedy.  I'm also not inclined to strike any
 4    witnesses.  We are further ahead on this one.  We do
 5    have a 302.  And many times we don't have anything
 6    more than the 302, and we have to go with that.  So I
 7    think we're old school, we're back to where we are.
 8    We don't have the recording, but we don't have any
 9    indication that the 302 is unreliable here.  So I'm
10    not going to strike Benjamin Clark or fashion any
11    other remedy on the basis of the lost recording.  So
12    I will deny that motion.
13              All right.  Let me go through -- did y'all
14    have something you want to report,
15    Ms. Harbour-Valdez?  Ms. Armijo?
16              MS. ARMIJO:  We had our questions answered.
17    So we have it figured out now.
18              THE COURT:  All right.  Okay.  Let me go
19    through a few things here.  I think Ms. Wild said
20    before I leave here I need to find out y'all's times
21    for closings.
22              Ms. Armijo, how long do you think the
23    Government's closings will be?
24              MS. ARMIJO:  Combined, three.
25              THE COURT:  Let me start with you,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Mr. Benjamin.  How long do you think your closing
 2    will be?
 3            MR. BENJAMIN:  Your Honor, considering I
 4    have, I think it's five different acts, I think I'm
 5    going to ask for -- I wouldn't say five hours, but I
 6    would say probably an hour and a half, Your Honor.  I
 7    believe I have the most ground to cover.  And I will
 8    try not to be duplicative of other content, Your
 9    Honor.  But at this point in time, I have a written
10    closing.  I'm getting started on it.
11            THE COURT:  All right.  How about you, Mr.
12    Burke?  Ms. Harbour-Valdez?  How long do you think
13    your closing will last?
14            MS. HARBOUR-VALDEZ:  An hour and 15
15    minutes, Your Honor, but I anticipate doing it under
16    an hour.
17            THE COURT:  Okay.  Mr. Cooper?  Mr. Castle?
18            MR. CASTLE:  Your Honor, because we don't
19    really know the scope of that third murder, we're
20    going to ask for two hours, and hope to go way under
21    that.
22            THE COURT:  All right.  Mr. Lahann?
23    Mr. Shattuck?
24            MR. LAHANN:  One hour 15.
25            THE COURT:  All right.  Mr. Granberg?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. GRANBERG:  Your Honor, I figure 45
 2    minutes.
 3              THE COURT:  All right.  Mr. Blackburn?
 4              MR. BLACKBURN:  At least an hour and 15
 5    minutes, Your Honor.
 6              THE COURT:  All right.  Ms. Torraco?  Mr.
 7    Roberts?
 8              MS. TORRACO:  One hour, Your Honor.
 9              THE COURT:  Did I get everybody?  I think
10    so.
11              All right.  The case description.  Do we
12    have a case description yet?
13              MR. CASTELLANO:  We don't, Your Honor.  We
14    can largely fashion the same description of this case
15    as we did last case, I think.  We did prepare one for
16    the last trial that the parties agreed to.
17              THE COURT:  Why don't you do this, we're
18    getting down to the wire, let me see if I can impose
19    some deadlines:  How about by 10:00 tomorrow the
20    Government send over a proposed statement of the
21    case.  So I don't read the indictment, I simply read
22    them the statement of the case.  Defendants look at
23    it.  Get back to the Government by 3:00.  And then
24    either file me something y'all agree to by the end of
25    business tomorrow, or send me your competing
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    statements of the case, indicating what your

2    differences are.  And then I'll try to prepare one

3    over the weekend.

4              I know I'm a little behind on this.  I have

5    started working on it.  I'll try to get the

6    preliminary instruction out to you tomorrow.  It may

7    be over the weekend.  And if you would communicate to

8    the Court in some way, either Ms. Wild, Ms. Bevel

9    about whether you concur or don't concur, and that

10   way, if you've got changes to make, tell me what they

11   are so I can try to have a preliminary instruction

12   that's ready to go.

13             Let me just quickly look over my list and

14   see if there is anything else.  I have a folder here

15   I'm going to take with me of proposed voir dire.  Is

16   there disputes on proposed voir dire that I need to

17   iron out today?  I'm seeing shaking heads no, so --

18   all right.

19             Where are we then with Mr. Blackburn's

20   situation?  Is Mr. -- his name escapes me, the young

21   man, the lawyer representing Mr. Garcia.

22             MR. BLACKBURN:  Mr. Glazener.

23             THE COURT:  Mr. Glazener here?

24             MR. BLACKBURN:  No, Your Honor.  But I

25   talked with him during one of the breaks, because I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   know that he had indicated to the Court and to the
2   Court staff and to Mr. Beck yesterday that he was not
3   going to waive.  I talked with him just briefly this
4   morning, and then again this afternoon and --
5            THE COURT:  He confirmed that?
6            MR. BLACKBURN:  -- yeah, he confirmed that.
7            THE COURT:  I guess the thing I was hoping
8   to do this afternoon -- I should have done it
9   earlier -- is to see what his concerns were.  I'm not
10  trying to talk him out of not waiving his conflict.
11  But it might inform me a little bit more what he
12  thinks his concern but you is.  Do you have -- or
13  what his concerns are.
14           MR. BLACKBURN:  I saw in Acee's notes he
15  thinks I'm a snake or something like that.  Maybe
16  charged him too much money.  I was sort of shocked to
17  know I didn't charge that case.
18           THE COURT:  He was concerned that he thinks
19  you have confidential information?
20           MR. BLACKBURN:  Oh, yes.  I mean, I
21  think -- I don't have the notes in front of me, but
22  he basically said that I know him quite well -- I
23  know too much about him.  I know him quite well.
24  Although I did do a good job for him.  He changed his
25  mind on that one.  I could push his buttons.  Don't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    want Billy, he knows me too good.

 2              THE COURT:  Let me ask you about what your

 3    thoughts about his -- from what I have read, I did

 4    get through the Government's motion.  I looked at all

 5    the attachments, and I've tried to understand the

 6    prior representation.  I feel fairly comfortable

 7    about getting close to going in and declare that

 8    they're not substantially related.  Do you have any

 9    reason to think that if I were to make that finding

10    that that would be incorrect in any way?  Is there

11    anything about the representation that I don't know

12    that you think would --

13              MR. BLACKBURN:  Yes.  And I discussed that

14    with the Government.  The situation happened to me a

15    few years ago where -- sort of in the same

16    position -- and ironically, the judge basically made

17    me go back to the chambers and talk to him ex parte,

18    and I explained the situation.  Ironically, the case

19    got reversed on appeal:  Judge Lucius Bunton, III.

20              So yes, I do believe -- and I would like to

21    have an ex parte situation with you so I can explain

22    why I think that is.  I can't say this in open court

23    because of the confidentiality that exists between --

24              THE COURT:  Well, but do you think -- when

25    you say you think it is, do you think this case and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   his prior case are substantially related?
 2            MR. BLACKBURN:  I think -- well, it was a
 3   gang-related case.  It's not an SNM Gang, but it was
 4   a gang-related case in 1996, that involved two rival
 5   gangs, and issues that are similar in that particular
 6   situation relate to matters in this case that are
 7   also the same.  Does that make sense?
 8            THE COURT:  I think I better hear, but I
 9   think what you're telling me is that they are
10   substantially related.  And if they're substantially
11   related, that is going to create some problems, isn't
12   it?
13            MR. BLACKBURN:  Absolutely.
14            THE COURT:  Is your position that if the
15   Government continues to want to call Mr. Garcia, that
16   you're going to have to withdraw?
17            MR. BLACKBURN:  Unless the Court can
18   fashion out a Chinese wall situation, which could be
19   difficult.
20            But as we were proposing yesterday, a
21   different scenario that would take care of that both
22   ways in the 1613 matter, and the Court was asking
23   us -- and I'm just throwing it out again -- the Court
24   was asking us to talk to the 1613 people.  I know the
25   Court was concerned about adding another defendant or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    not having enough room but Mr. Garcia is already
2    charged in 1613 in the overt acts, the two overt
3    acts, as it relates to -- the overt act that relates
4    to the murder in 2007 is in 1613.  So the Government
5    would have to do the same thing, prove everything in
6    1613, and use the same amount of witnesses in 1613 as
7    they would in 4268.  That was the reason why we were
8    saying that they could move that to the 1613.
9            For some reason, as I've tried to explain
10   to the other 1613 people that this does not add
11   anything new; it's the same thing, we maybe add one
12   verdict form, but they're concerned about a
13   severance, which you can file a severance.  But a few
14   of them said that they would not agree to a joinder
15   of this.  Although I think I talked to the
16   Government; they can do it themselves.  But that's
17   one alternative.
18           The other alternative is, if there would be
19   walled-off lawyers, because -- and it would have to
20   be a different lawyer completely.  But there are
21   issues with having a walled-off lawyer, as it relates
22   to my participation in openings and closings, and
23   situations like that, would have to bring in a
24   brand-new lawyer all over.  And so that's another
25   issue.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            But I think that the only alternative is
 2    to -- well, obviously, if Mr. Garcia doesn't testify,
 3    this is all moot.
 4            THE COURT:  Well, how long do you think
 5    your ex parte explanation to me will take?
 6            MR. BLACKBURN:  Me?
 7            THE COURT:  Yeah, you, Mr. Blackburn.
 8            MR. BLACKBURN:  I can get it done in maybe
 9    10, 15 minutes, Judge.  How long did you give Castle?
10            THE COURT:  I gave him 10, and he only took
11    10.  All right.  Well, let's do this:  Any objection
12    to me hearing this, Ms. Armijo?  Any other defendant
13    hearing, a problem?
14            MR. CASTLE:  As long as we don't have to
15    listen to it.
16            THE COURT:  All right.  So we'll plan on
17    breaking then at 10 after, and I'll take that, and
18    then, at 10 after, I'll take five minutes for ex
19    parte, and then I'll end the day with you,
20    Mr. Blackburn.
21            MR. BLACKBURN:  Pardon me?
22            THE COURT:  I said we will break at 5:10.
23    I will have a five-minute CJA meeting with everybody
24    else, then I'll end the day by listening to you for
25    15 minutes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BLACKBURN:  Okay.
 2              THE COURT:  All right.
 3              (A discussion was held off the record.)
 4              THE COURT:  All right.  Let's go back on
 5      the record.  What Deputy Gunter was saying -- he was
 6      wondering if I'm going to do any more.  I'm not going
 7      to do any more on the searches.  We've given all of
 8      our thoughts to the taint team.  And the taint team
 9      is going to talk to the marshals.  And then the
10      marshals do what they're going to do.  But I'm not
11      going to give any more direction.  I think that was
12      what our understanding was.  We'll leave it to them
13      to try to do their jobs, and just leave it with them.
14      We'll see what they do.
15              All right.  So before we begin, I'm going
16      to have Mr. Blackburn, if you and Mr. Gallegos would
17      come up here to the podium, so if the marshals want
18      to come up with you, I am going to do a colloquy here
19      and see -- if I can't get a waiver from Mr. James
20      Garcia, let's at least see that Mr. Gallegos (sic) is
21      comfortable with your representations.
22              MR. BLACKBURN:  Mr. Arturo Garcia?
23              THE COURT:  Yeah.  So we'll make sure that
24      he's comfortable with the representations.
25              MR. BLACKBURN:  So we've got three Garcias:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Billy Garcia, Arturo Garcia, and Daffy Garcia.  So --
 2    this is Arturo Garcia.
 3              THE COURT:  All right.  Mr. Arturo Garcia,
 4    I'm going to explain a couple of things to you.  And
 5    if you have questions at all during anything I
 6    explain to you -- or I'm trying to explain to you,
 7    don't hesitate to ask, okay?
 8              DEFENDANT ARTURO GARCIA:  All right.
 9              THE COURT:  All right.  You understand you
10    have a right to a conflict-free counsel; in other
11    words, you have a right to have a counsel that has
12    loyalty only to you.  Do you understand you have that
13    constitutional right?
14              DEFENDANT ARTURO GARCIA:  Yes, I do.
15              THE COURT:  And do you understand the facts
16    surrounding Mr. Blackburn's previous representation
17    of Mr. James Garcia?
18              DEFENDANT ARTURO GARCIA:  Yes.
19              THE COURT:  Has he talked to you about
20    that?
21              DEFENDANT ARTURO GARCIA:  Yes.
22              THE COURT:  Now, I haven't fully talked to
23    Mr. Blackburn.  I'm going to do that later this
24    afternoon to determine whether it was related or
25    unrelated criminal case.  But has he talked to you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    about that case so that you have a full sense of
 2    whether it's related, unrelated, or how it relates?
 3              DEFENDANT ARTURO GARCIA:  Yeah, we spoke.
 4              THE COURT:  All right.  But I mean --
 5              DEFENDANT ARTURO GARCIA:  I understand.
 6              THE COURT:  I know you've spoken, but do
 7    you understand the facts?  Do you need any more
 8    information from Mr. Blackburn, or to a certain
 9    extent the Court?
10              DEFENDANT ARTURO GARCIA:  I'm just waiting
11    to see what you're going to decide.
12              THE COURT:  Okay.  All right.  That's part
13    of what I'm doing here, is trying to get some
14    information from you at this point.
15              Do you understand that Mr. Blackburn may
16    have some duties of loyalty stemming from his
17    previous representation of Mr. James Garcia?  In
18    other words, even though he represented him 20-plus
19    years ago, he still has some duties of loyalty about
20    confidentiality and some other things.  Do you
21    understand he has those?
22              DEFENDANT ARTURO GARCIA:  Yes.
23              THE COURT:  And do you understand that
24    Mr. Blackburn's duties to Mr. James Garcia may impact
25    his representation of you?  Do you understand it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  could happen that it could impact you?

2            DEFENDANT ARTURO GARCIA:  Yes.

3            THE COURT:  And one way it might occur is

4  that Mr. Blackburn might recall some pertinent

5  information that he learned during the course of his

6  representation of Mr. James Garcia.  Do you

7  understand that something he's not even thinking

8  about today, he might all of a sudden remember in the

9  middle of the trial, or at some later point, and

10  there he'd be with some information that he remembers

11  from that.  And he might have an obligation not to

12  disclose it in any way.  Do you understand that could

13  occur?

14            DEFENDANT ARTURO GARCIA:  Yes, like some of

15  the witnesses.

16            THE COURT:  You think Mr. Blackburn's

17  memory might be like some of the witnesses?

18            DEFENDANT ARTURO GARCIA:  It could happen.

19            THE COURT:  All right.  But you understand

20  that could happen?  You've seen it happen in the

21  courtroom, right?

22            DEFENDANT ARTURO GARCIA:  Yeah.

23            THE COURT:  You understand that there is a

24  risk that Mr. Blackburn will have to then choose

25  between his loyalty, duty of loyalty to Mr. James



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                                  1-800-669-9492
BEAN & ASSOCIATES, Inc.                    e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   Garcia, and his duty to zealously advocate for you?
 2   Do you understand that that point might come?
 3              DEFENDANT ARTURO GARCIA:  Yes.
 4              THE COURT:  And if Mr. Blackburn chooses --
 5   or if Mr. James Garcia chooses at some point, which
 6   it looks like he is going to at some point cooperate
 7   and testify in this case, which looks like it really
 8   may happen, that Mr. Blackburn may be forced to
 9   cross-examine Mr. James Garcia.  And then his duty of
10   loyalty to him may affect his performance in that
11   cross-examination?  Do you understand that could
12   occur?
13              DEFENDANT ARTURO GARCIA:  Yes.
14              THE COURT:  Additionally, Mr. Blackburn's
15   duties to Mr. James Garcia may -- they may affect
16   some trial strategies, things that you and I can't
17   even really predict at this point, but do you
18   understand that that could happen?
19              DEFENDANT ARTURO GARCIA:  Yes.
20              THE COURT:  It could happen about --
21   including some arguments regarding relative
22   culpability about some things in this trial, so that
23   he has to argue, you know that, you know, so and so
24   more liable, less liable, or something like that; he
25   might make some arguments like that.  Do you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    understand that could happen, so there could be some
2    comparisons between you and Mr. James Garcia?
3              DEFENDANT ARTURO GARCIA:  Yes.
4              THE COURT:  I have a waiver form that I'm
5    going to ask Ms. Bevel to copy for me.  And I'm going
6    to ask you to look it over with Mr. Blackburn.  And I
7    would really like for you to look it over with Mr.
8    Davidson; kind of put it -- independent counsel
9    here -- if he could look at it and talk to you about
10   it.  And if you and Mr. Blackburn are prepared to
11   tell me an attorney to track down for you, a third
12   one, I'd be glad to do that.  But I would like for
13   you to look at it with Mr. Davidson, if you can.  And
14   if you can't, you'll have to review it with Mr.
15   Blackburn.  But I'll give you this form.
16             Will you promise to sit down and review
17   this with one or both of your attorneys --
18             DEFENDANT ARTURO GARCIA:  Yes.
19             THE COURT:  -- and look at it?  And then,
20   if you feel comfortable executing it, you can execute
21   it and we'll file it in the court.  If you don't feel
22   comfortable executing it, then have Mr. Blackburn or
23   Mr. Davidson contact me immediately and say you're
24   not willing to waive any sort of conflict here, okay.
25             DEFENDANT ARTURO GARCIA:  Okay.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Now, knowing that a conflict
2     may arise in the future, and the risk associated with
3     such a conflict, do you still wish to waive that
4     conflict and continue with Mr. Blackburn as your
5     attorney?
6              DEFENDANT ARTURO GARCIA:  Yes, I would.
7              THE COURT:  All right.  So you think at the
8     present time you know enough to make a voluntary
9     waiver and a knowing waiver, and that you still want
10    Mr. Blackburn to be your attorney.
11             DEFENDANT ARTURO GARCIA:  Yeah, he's pretty
12    much explained everything to me.
13             THE COURT:  You feel you have a pretty good
14    grasp on things?
15             DEFENDANT ARTURO GARCIA:  Yeah.
16             THE COURT:  Other than me making a
17    decision, is there any questions you want to ask me?
18             DEFENDANT ARTURO GARCIA:  No.
19             THE COURT:  Okay.  All right.  So I'm going
20    to have you look at this form.  Ms. Bevel, if you'll
21    make a copy of those two forms.  One of them doesn't
22    apply to Mr. Garcia, but -- Mr. Arturo Garcia -- but
23    it would apply to the other, but I'll let you look at
24    the forms and figure out which one it is.
25             MR. BLACKBURN:  Sure.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1          THE COURT:  Rather than me trying to sort
2   it out, I'll give you both forms.
3          MR. BLACKBURN:  Do you want him to take it
4   with him or -- I don't want it to get seized.
5          THE COURT:  Well, why don't you tell him to
6   make two copies; make one for Mr. Blackburn and make
7   one for Mr. Arturo Garcia, and we'll -- if he can
8   take it with him, great; if not, when you meet, y'all
9   can go over it.
10          DEFENDANT ARTURO GARCIA:  And you'll talk
11   with Scott.
12          MR. BLACKBURN:  Yes.
13          THE COURT:  All right.  Thank you, Mr.
14   Blackburn.
15          All right.  We've got five minutes.  Do
16   y'all want to go back to -- is there anything as far
17   as pretrial?  I know we never, believe it or not,
18   kind of did a complete pretrial, but we started doing
19   a lot of the motions.  I don't see anything else,
20   very quickly going through my pretrial list, that
21   looks like it needs to be covered.
22          If I don't hear anything, let's go to Mr.
23   Troup's restricted response to the motion in limine
24   regarding 404(b), the penal interests.  Hold on just
25   a second.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            Before you leave today, I will have a chart
 2    that begins the penal interests.  I only got one
 3    analyzed.  So you'll get that one.  You'll also get
 4    the -- my sort of principles for applying that.  So
 5    you'll see those there as well.  Again, this is a
 6    draft, so it's not going to be complete.  I'll try to
 7    get these out to you over the weekend.  But at least
 8    at the present time, that's about all I can give you.
 9            Is there anything else you want to say on
10    the penal interests?  I think you filed the motion,
11    Mr. Beck.  I have read it, and I got the response
12    from Mr. Troup.  I am looking at these individually,
13    and will take the testimony that's been taken into
14    account.  But anything else on those 804(b)(3)
15    statements you want to say?
16            MR. BECK:  No, I think it can probably
17    stand on the briefing and what the Court's said here.
18            THE COURT:  All right.  Does that work for
19    you as well, Mr. Burke?
20            MR. BURKE:  It does, Your Honor.  But I
21    just have to note the irony that the two statements
22    that were attached to the motion were James Daffy
23    Garcia's and Frederick Football Head Quintana's.  It
24    just happened to be that those were the two
25    statements, and you heard a lot about those.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.  So I'll try to get y'all
 2    a chart.  This list has grown a little bit.  I think
 3    it was six when we started.  It's grown a little bit.
 4    I'll try to get the chart out to you.  But you'll get
 5    the beginning of the chart, and you'll have my
 6    analysis of one, and it will kind of give you an idea
 7    of where I'm going on the others.
 8              Anything else, then, on the penal
 9    interests, Mr. Beck?
10              MR. BECK:  I think Mr. Castle and I are
11    talking, I think a claims chart that was emailed to
12    Your Honor, after the request to kind of figure out
13    what was still in play.  I think we have a couple
14    disagreements that he and I might work out.  And it
15    probably makes more sense just to submit sort of a
16    second draft of this.  I don't know.
17              THE COURT:  A claims chart?
18              MR. CASTLE:  That's from the motion to
19    dismiss.  I think he switched over to the motion to
20    dismiss.
21              THE COURT:  Okay.  Anything else on the
22    penal interests.
23              MR. BECK:  No.
24              THE COURT:  Anything else from the
25    defendants you want to tell me before I finalize the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN
&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

```
 1    chart and get it to you over the weekend?
 2              MR. CASTLE:  I don't know if the Court -- I
 3    probably filed enough for the Court to read, but --
 4              THE COURT:  I have read it all.  I think --
 5    yes, I read everything.
 6              MR. CASTLE:  I'm wondering, in lieu of
 7    making an argument, I can put together a small, less
 8    than five-page summary argument about the application
 9    of 804(b)(3) to the specific statements that we're
10    talking about.
11              THE COURT:  I don't have any problem with
12    that.
13              I am going to probably accelerate my chart
14    work over the weekend.
15              MR. CASTLE:  I can file it by tomorrow,
16    Judge.
17              THE COURT:  Okay.  That would be fine.
18              And if you have anything else you want to
19    say on it, Mr. Beck, you're welcome to as well.  You
20    don't have to.  I'm just leaving you an opportunity.
21              MR. BECK:  I've probably got bigger fish to
22    fry and things we can talk about later.
23              THE COURT:  All right.  So if there is
24    nothing else on penal interests, then I will try to
25    get that out over the weekend, and complete my James
```

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    chart as well.
 2            Did you have something you wanted to go to,
 3    Mr. Beck?
 4            MR. BECK:  Well, you told us you were going
 5    to kick us out at 5:10.  And I don't want to stand in
 6    the way of you kicking us out.
 7            THE COURT:  You have two minutes.
 8            MR. BECK:  So, as I said, I think this was
 9    a chart emailed to the JOB proposed text email
10    address in relation to the motion to dismiss.
11            THE COURT:  Okay.
12            MR. BECK:  I think we probably have
13    differing opinions on how some of this stuff is
14    outstanding.  But, as I said, I'm going to get with
15    Mr. Castle and kind of talk about those issues, and
16    see if we can resolve them.
17            THE COURT:  So this will be after Mr. Acee
18    did his review over here, and after we've had some
19    witnesses, the list of unknowns is smaller; is
20    that --
21            MR. BECK:  Yes.  I think that's the
22    position of both parties.
23            THE COURT:  So this will tell me where we
24    are currently?
25            MR. BECK:  I think so, yeah.  So my
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1 understanding is that the video of the prison cells,

2 we just disclosed that, because first thing that

3 happened when we opened up the physical evidence

4 Garza and Castillo box was there is a videotape

5 sitting there.  So the State Police said that that

6 video was presented when the defense teams looked at

7 that evidence prior.  I don't know whether it was.

8 But what we did is we converted it to DVD and just

9 provided that to the defense in the last couple of

10 weeks.  I think March 30 stands out in my mind.

11          So, as I said, Mr. Castle and I will email

12 about this, and we'll get something back to the

13 Court.

14          THE COURT:  All right.  Thank you,

15 Mr. Beck.

16          All right.  We probably better bring it to

17 a close unless somebody has got something pretty

18 urgent.  Otherwise, I will ask the Government to

19 leave.  I'll have a five-minute CJA meeting.  Then

20 I'll hear from Mr. Blackburn.

21          And everybody be here at 8:30 on Monday,

22 and we'll try to see if there are some issues before

23 we bring the jury in at 9:00.

24          Y'all have a good weekend.  I've been in

25 your shoes before and I'm going to be working hard



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                      1-800-669-9492
BEAN & ASSOCIATES, Inc.                         e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

1    too.  I know it's harder on you than it is on me.

2    But we'll work together.  We'll get it through.  Have

3    a good weekend.  See you on Monday.

4              (Ex parte CJA meeting was held.)

5              (Ex parte hearing regarding Blackburn

6    potential conflict was held.)

7
               (The Court stood in recess.)
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2

 3    UNITED STATES OF AMERICA

 4    DISTRICT OF NEW MEXICO

 5

 6

 7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

 8    Official Court Reporter for the State of New Mexico,

 9    do hereby certify that the foregoing pages constitute

10    a true transcript of proceedings had before the said

11    Court, held in the District of New Mexico, in the

12    matter therein stated.

13         In testimony whereof, I have hereunto set my

14    hand on April 14, 2018.

15

16

17

18                    _____
                      Jennifer Bean, FAPR, RMR-RDR-CCR
19                    Certified Realtime Reporter
                      United States Court Reporter
20                    NM CCR #94
                      333 Lomas, Northwest
21                    Albuquerque, New Mexico 87102
                      Phone:   (505) 348-2283
22                    Fax:     (505) 843-9492

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com