IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

  Plaintiff,

vs.                     No. CR 15-4268 JB

ANGEL DELEON
JOE LAWRENCE GALLEGOS
EDWARD TROUP, a.k.a. "Huero Troup;"
LEONARD LUJAN
BILLY GARCIA, a.k.a. "Wild Bill;"
EUGENE MARTINEZ, a.k.a. "Little Guero;"
ALLEN PATTERSON;
 CHRISTOPHER CHAVEZ, a.k.a. "Critter;"
JAVIER ALONSO, a.k.a. "Wineo;"
ARTURO ARNULFO GARCIA, a.k.a. "Shotgun;"
BENJAMIN CLARK, a.k.a. "Cyclone;"
RUBEN HERNANDEZ;
JERRY ARMENTA, a.k.a. "Creeper;"
JERRY MONTOYA, a.k.a. "Boxer;"
MARIO RODRIGUEZ, a.k.a. "Blue;"
TIMOTHY MARTINEZ, a.k.a. "Red;"
MAURICIO VARELA, a.k.a. "Archie," a.k.a. "Hog Nuts;"
DANIEL SANCHEZ, a.k.a. "Dan Dan;"
GERALD ARCHULETA, a.k.a. "Styx," a.k.a. "Grandma;"
CONRAD VILLEGAS, a.k.a. "Chitmon;"
ANTHONY RAY BACA, a.k.a. "Pup;"
ROBERT MARTINEZ, a.k.a. "Baby Rob;"
ROY PAUL MARTINEZ, a.k.a. "Shadow;"
CHRISTOPHER GARCIA;
CARLOS HERRERA, a.k.a. "Lazy;"
RUDY PEREZ, a.k.a. "Ru Dog;"
ANDREW GALLEGOS, a.k.a. "Smiley;"
SANTOS GONZALEZ;
PAUL RIVERA;
SHAUNA GUTIERREZ;
BRANDY RODRIGUEZ

  Defendants.

## COURT'S DRAFT TABLE RELATED TO WITNESS MICHAEL JARAMILLO
**(provided to the parties on May 5, 2018)**

**IV.   THE <u>JAMES</u> NOTICE STATEMENTS ARE ADMISSIBLE NOTWITHSTANDING THE RULE AGAINST HEARSAY.**

Under the Federal Rules of Evidence, only statements constitute hearsay. <u>See</u> Fed. R. Evid. 801(c)(stating that hearsay "means a statement" that satisfies certain conditions). A statement must be an assertion. <u>See</u> Fed. R. Evid. 801(a)("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."). <u>See also id.</u> advisory committee notes ("The effect of the definition of 'statement' is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion."). Verbal actions like orders and commands, <u>e.g.</u>, "fetch me a shrubbery," as well as questions, <u>e.g.</u>, "what do you want to eat for lunch?" -- are not always assertions, because they are neither true nor false. Fed. R. Evid. 801 advisory committee notes ("When evidence of conduct is offered on the theory that it is not a statement, and hence not hearsay, a preliminary determination will be required to determine whether an assertion is intended."). Consequently, orders and questions generally are not hearsay, both because hearsay must be a statement, and because something that is neither true nor false cannot be offered to prove the truth of the matter asserted. <u>See</u> Fed. R. Evid. 801(c)(defining hearsay as an out-of-court statement offered "to prove the truth of the matter asserted"). <u>See also</u> Stephen A. Saltzburg et al., <u>Federal Rules of Evidence Manual</u> § 801.02[c] ("If proffered evidence is not a 'statement' within the meaning of Rule 801(a), then it cannot be hearsay, and so cannot be excluded under the rule.").

While orders and commands are not, themselves, assertions, they may -- like questions -- contain implicit assertions. <u>See</u> <u>United States v. Summers</u>, 414 F.3d 1287, 1298 (10th Cir. 2005)(Kelly, J.)(concluding that a defendant's question -- "'How did you guys find us so fast?'" -- was an implicit assertion of "both guilt and wonderment at the ability of the police to

apprehend the perpetrators of the crime so quickly"). For example, a lawyer asking a witness whether the witness stopped beating his wife indicates both that the witness has a wife and that the witness abused his wife. Whether those two indications are assertions, however, depends on the lawyer's intent. See United States v. Summers, 414 F.3d at 1300 ("Taken together, [United States v. Jackson, 88 F.3d 845 (10th Cir. 1996)] and [United States v. Long, 805 F.2d 1572 (D.C. Cir. 1990)(Thomas, J.)] do not foreclose the possibility that a declaration in the form of a question may nevertheless constitute an assertion within the meaning of Rule 801(a) and (c). Rather, both cases properly focus the inquiry on the declarant's intent."). Thus, the verbal acts that the James Notice identifies can qualify as statements -- and, hence, as hearsay -- if they were intended to be assertions. See Fed. R. Evid. 801 advisory committee notes ("The key to the definition is that noting is an assertion unless intended to be one.").

      Even if an out-of-court utterance qualifies as a statement and is offered for its truth, it is not hearsay if it "is offered against an opposing party," and "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The Court finds, by a preponderance of the evidence, that a conspiracy to kill Frank Castillo existed, and the conspiracy persisted until Castillo died on March 26, 2001. See Jaramillo 302 at 2-3. Jaramillo, B. Garcia, Lujan, J. Gallegos, and Troup were members of the conspiracy. See Jaramillo 302 at 2-3. The Court conducts a statement-by-statement analysis of the United States' James Notice statements to determine whether they qualify as statements for hearsay purposes and, if so, whether they are not hearsay -- even if offered to prove the truth of the matter asserted -- under rule 801(d)(2)(E). The Court sets out that analysis in the following table.

| Statement | Ruling |
|---|---|
| Statement 1: Leonard Lujan told Michael Jaramillo, a.k.a., "Criminal," that Billy Garcia told Lujan to find people to murder Frank Castillo and Lujan chose Jaramillo, Joe Gallegos, and Angel Deleon<br><br>Declarant: Leonard Lujan<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | Statement 1 presents a potential hearsay-within-hearsay issue, because it is an out-of-court Lujan statement describing an out-of-court B. Garcia statement. See Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."). B. Garcia's directions to Lujan are commands and not assertions, so they are not hearsay. The Court will not give a limiting instruction regarding this portion of the statement. Lujan's statements relaying B. Garcia's directions were made in furtherance of the conspiracy to kill Castillo, because Lujan made those statements to convince Jaramillo to participate. Consequently, those statements are admissible under rule 801(d)(2)(E). The Court will give a limiting instruction, upon request, regarding this portion of the statement as to Defendants other than B. Garcia, J. Gallegos, and Troup. |
| Statement 2: Leonard Lujan told Michael Jaramillo, a.k.a., "Criminal," to discuss details with Joe Gallegos.<br><br>Declarant: Leonard Lujan<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | Lujan's directions to Jaramillo are commands and not assertions. Consequently those directions are not hearsay, so they are admissible. The Court will not give a limiting instruction. |
| Statement 3: Leonard Lujan told Michael Jaramillo, a.k.a., "Criminal," that Jaramillo was going to have to "put in work" for the SNM, and to speak with Joe Gallegos and Angel DeLeon about it.<br><br>Declarant: Leonard Lujan<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | Lujan's directions to Jaramillo -- go speak with Joe Gallegos and DeLeon -- are commands and not statements, so they are admissible. Lujan's statements to Jaramillo, i.e., that Jaramillo was going to have to put in work for the SNM, were made in furtherance of the conspiracy to kill Castillo, because Lujan made those statements to convince Jaramillo to participate. Consequently, those statements are admissible under rule 801(d)(2)(E). The Court will give a limiting instruction, upon request, as to Defendants other than B. Garcia, J. Gallegos, and Troup. |
| Statement 4: Joe Gallegos told Michael Jaramillo and Angel DeLeon that they would wait for an anticipated heroin delivery before killing Castillo. | Statement 4 is a statement of the declarant's then-existing state of mind, i.e., J. Gallegos' plan to kill Castillo. Consequently, statement 4 is admissible hearsay. See Fed. R. Evid. 803(3). Because |

- 21 -

| | |
|---|---|
| Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | statement 4 is admissible against all the Defendants under rule 803(3), the Court will not give a limiting instruction. J. Gallegos made the statement to explain when he, Jaramillo, and DeLeon were going to kill Castillo, so J. Gallegos made the statement in furtherance of the conspiracy to kill Castillo. Consequently, statement 4 is admissible for its truth under rule 801(d)(2)(E). Additionally, it is admissible against J. Gallegos as an admission of a party opponent under rule 801(d)(2)(A). |
| Statement 5: Leonard Lujan told Michael Jaramillo the order was coming from Billy Garcia so Jaramillo knew it was serious.<br><br>Declarant: Leonard Lujan<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | Lujan made statement 5 to convince Jaramillo to participate in the Castillo murder. Consequently, Lujan made statement 5 in furtherance of the conspiracy to murder Castillo, so it is admissible under rule 801(d)(2)(E). The Court will give a limiting instruction, upon request, as to Defendants other than B. Garcia, J. Gallegos, and Troup. |
| Statement 6: Once the heroin came in, Joe Gallegos called Michael Jaramillo and Angel DeLeon to his cell to order the murder of Castillo to take place in the morning.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | That J. Gallegos called Jaramillo and DeLeon into his cell is an action and not an assertion, so it is not hearsay, and it is admissible. That J. Gallegos ordered Jaramillo and Deleon to murder Castillo in the morning is an order and not an assertion, so it is not hearsay, and it is admissible. The Court will not give a limiting instruction. |
| Statement 7: Joe Gallegos told Michael Jaramillo and Angel DeLeon that the plan was go [sic] the Castillo cell when the doors open in the morning and use heroin with Castillo and then "take him out."<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | Statement 7 is a statement of the declarant's then-existing state of mind, i.e., J. Gallegos' plan to kill Castillo. Consequently, statement 7 is admissible hearsay. See Fed. R. Evid. 803(3). Because statement 7 is admissible against all the Defendants under rule 803(3), the Court will not give a limiting instruction. J. Gallegos made statement 7 to explain to Jaramillo and DeLeon what they are supposed to do vis-à-vis the Castillo murder, so J. Gallegos made the statement in furtherance of the conspiracy to kill Castillo. Consequently, statement 7 is admissible for its truth under rule 801(d)(2)(E). Additionally, it is admissible against J. Gallegos as an admission of a party opponent under rule 801(d)(2)(A). The |

- 22 -

| | |
|---|---|
| | Court will give a limiting instruction, upon request, as to Defendants other than B. Garcia, J. Gallegos, and Troup. |
| Statement 8: Joe Gallegos told Michael Jaramillo and Angel DeLeon that Gallegos's family would pay for an attorney if they got in trouble.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | J. Gallegos made statement 8 to convince Jaramillo and DeLeon to participate in the Castillo murder, so J. Gallegos made statement 8 in furtherance of the conspiracy to kill Castillo. Consequently, statement 8 is admissible for its truth under rule 801(d)(2)(E). |
| Statement 9: Joe Gallegos told Michael Jaramillo and Angel DeLeon to refuse DNA testing if the police requested it.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | Statement 9 is a command -- refuse DNA testing -- and not an assertion, so it is not hearsay. It is admissible, and the Court will not give a limiting instruction. |
| Statement 10: Joe Gallegos told Angel DeLeon, in the presence of Michael Jaramillo, that he was to hold Castillo down as he took a hit of heroin.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | Statement 10 is a command -- hold Castillo down as he takes a hit of heroin -- and not an assertion, so it is not hearsay. It is admissible, and the Court will not give a limiting instruction. . |
| Statement 11: Joe Gallegos told Michael Jaramillo, in [the] presence of Angel DeLeon, that he was to "choke out" Castillo while Gallegos and DeLeon held Castillo down.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | Statement 11 is a command -- choke out Castillo -- and not an assertion, so it is not hearsay. It is admissible, and the Court will not give a limiting instruction. |
| Statement 12: Joe Gallegos, in the presence of Michael Jaramillo and Angel | J. Gallegos' directions to Troup are commands -- be the lookout and keep everyone in their cells -- and |

- 23 -

| | |
|---|---|
| DeLeon, called Edward Troup, a.k.a., "Huero Troop," over to Gallegos's cell and told Troup to be the lookout during the murder and to keep everybody in their cell during the murder.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | not assertions, so they are not hearsay; they are admissible. That J. Gallegos called Troup over to his cell is an action and not an assertion, so it is not hearsay; it is admissible. The Court will not give a limiting instruction |
| Statement 13: Joe Gallegos, in the presence of Michael Jaramillo and Angel DeLeon, told Jaramillo that he was going to have Edward Troup, a.k.a., "Huero Troop," act as a lookout during the murder.<br><br>Declarant: Joe Gallegos<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | Statement 13 is a statement of J. Gallegos' then-existing state of mind, specifically his plan, so it is admissible hearsay. <u>See</u> Fed. R. Evid. 803(3). J. Gallegos made the statement to explain to Jaramillo and DeLeon how the Castillo murder would proceed, so J. Gallegos made the statement in furtherance of the conspiracy to murder Castillo. Consequently, statement 13 is admissible under rule 801(d)(2)(E). Additionally, it is admissible against J. Gallegos as an admission of a party opponent under rule 801(d)(2)(A). |
| Statement 14: Edward Troup voiced his agreement to be the lookout during the murder and to keep everybody in their cell during the murder.<br><br>Declarant: Edward Troup<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | Statement 14 is admissible against Troup as an admission of a party opponent under rule 801(d)(2)(A). Troup made statement 14 to inform J. Gallegos, DeLeon, and Jaramillo that he would do his part in committing the Castillo murder, so Troup made the statement in furtherance of the conspiracy to kill Castillo. Consequently statement 14 is admissible for its truth under rule 801(d)(2)(E). The Court will give a limiting instruction, upon request, as to Defendants other than B. Garcia, J. Gallegos, and Troup. |
| Statement 15: Joe Gallegos gave Michael Jaramillo the heroin.<br><br>Declarant: Edward Troup<br><br>Source: Michael Jaramillo<br><br>Date: On or before March 26, 2001 | This is an action and not an assertion, so it is not hearsay, and it is admissible. The Court will not give a limiting instruction. |