1

1        IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF NEW MEXICO

3   UNITED STATES OF AMERICA,

4                Plaintiff,

5       vs.            NO:  CR-15-4268 JB

6   ANGEL DELEON, et al.,

7                Defendants.

8

9        Transcript of excerpt of testimony of

10                MORGAN RAMIREZ

11               April 30, 2018

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                        I N D E X

2     EXAMINATION OF MORGAN RAMIREZ

3     By Mr. Beck                                      10

4     By Mr. Benjamin                                  37

5     By Ms. Torraco                                   62

6     By Mr. Beck                                      73

7     REPORTER'S CERTIFICATE                           76

8                    EXHIBITS ADMITTED

9     Government 427, 432, 433, and 434 Admitted       11

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Mr. Beck, does the
2    Government have its next witness or evidence?
3              MR. BECK:  Yes, Your Honor.  The United
4    States calls Morgan Ramirez.
5              MS. TORRACO:  May we approach while the
6    witness is coming up?
7              THE COURT:  You may.
8              (The following proceedings were held at
9    the bench.)
10             MS. TORRACO:  Your Honor, this is part of
11   the problem of why the defense is having a very
12   difficult time with cross-examination and we're
13   asking more and more questions and some of them
14   don't appear to be relevant.  We just got a 302.
15   Mr. Beck informed me that he emailed it to me 20
16   minutes prior to my cross-examination.  Well, as
17   this Court knows, the internet is up and down, and I
18   couldn't get it.
19             THE COURT:  This 302 just took place
20   yesterday?
21             MS. TORRACO:  Right.
22             THE COURT:  The 302 was delivered today?
23             MR. BECK:  Yeah, the interview took place
24   about 9:00 last night, and I got it this morning.
25             THE COURT:  What time was it sent over?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1           MR. BECK:  Emailed to me -- the email --
2    the FBI probably sent the email to me about -- what
3    time did we take our last break?  About 10:30.  And
4    then I immediately emailed defense counsel.
5           THE COURT:  It strikes me that this is
6    just as it is in every trial.  It's just last-minute
7    interviews of witnesses and more things forthcoming.
8    But I don't see any sort of criminal rule of
9    procedure or constitutional rule that keeps them
10   from calling Ms. Ramirez.
11          MS. TORRACO:  Well, what I would ask --
12   I'm not used to this.  This is very difficult for
13   me.  I'm used to knowing who --
14          THE COURT:  You know in state court --
15          MS. TORRACO:  It's totally different.
16          THE COURT:  -- it's different.
17          MS. TORRACO:  But I feel like it affects
18   my client's right to effective assistance of counsel
19   under the Sixth Amendment.  I don't know what she's
20   going to say.
21          THE COURT:  I think you do know what --
22          MS. TORRACO:  Due process.
23          THE COURT:  I didn't get that.  Is that
24   what Mr. Benjamin handed me?
25          MS. TORRACO:  I haven't gotten that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1          MR. BENJAMIN:  That was the email.

 2          MS. TORRACO:  I told Mr. Beck I didn't get

 3 the email because my internet -- I couldn't hook up.

 4          THE COURT:  You don't have this email?

 5          MS. TORRACO:  No.  Then Ms. Armijo asked

 6 their paralegal or their assistant to give me the

 7 printout.  So then I got two pages of handwritten

 8 notes.  I don't have anything that's -- then right

 9 before I finished my cross-examination, I was handed

10 photographs.  So I'm not even sure what they are.

11 All I'm asking is, can we call this witness later?

12          THE COURT:  Why don't we do this?  I don't

13 really know of any good reason to call them later,

14 but --

15          MS. TORRACO:  I just want to be effective.

16          THE COURT:  How long is your direct going

17 to last?

18          MR. BECK:  It's not long.  And the

19 statements in the 302 are the same as the interview.

20 She was interviewed by law enforcement on video on

21 December 2015, which I think we disclosed earlier

22 this morning, in April, when we received that from

23 the State Police.

24          THE COURT:  Let me ask you this:  Would

25 you prefer to call another witness or take a break

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   at this point and let her look at it over the lunch

 2   hour, the 302; give her a copy of the 302.  It's

 3   very short.

 4            MR. BECK:  It is.  And I know she has to

 5   be back.  And my concern is that if we call another

 6   witness in her stead right now, the way things are

 7   going, I think she'll be short -- I think we'll get

 8   two or three more witnesses today, but I would

 9   rather take a break, know that we get done with her,

10   and then we can get back to it after lunch.

11            MS. TORRACO:  I believe there are

12   photographs.  Did you discover more photographs?

13            MR. BECK:  No, these are 400 exhibit

14   numbers.

15            MS. TORRACO:  I would very much appreciate

16   that.  I also feel like it's a due process issue.

17            THE COURT:  Well, I'm not seeing the due

18   process issue.

19            MS. TORRACO:  Just right now --

20            THE COURT:  Let me ask you this, Mr. Beck.

21   Are there certain questions you're going to ask her

22   before you get into this 302?

23            MR. BECK:  Two or three.  I mean, hers is

24   short.  All she's being called for is just to get in

25   statements that Mr. Gallegos admitted to her.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Does she have more other than
 2  that?
 3            MR. BECK:  Joe Gallegos.
 4            MS. TORRACO:  If it's nothing relating to
 5  Andrew Gallegos, if I can get a limiting
 6  instruction.
 7            THE COURT:  Well, I think everything comes
 8  in against Joe Gallegos.  I think some or all of
 9  these are probably going to come in against Andrew,
10  statements against interests made by Mr. Joe
11  Gallegos.  So why don't we do this:  Call your
12  witness, swear her in.  You ask the preliminary
13  stuff.  And the minute you start going into the 302,
14  say, "Would this be a good time for us to to take
15  our break," and we'll take our break.
16            MS. TORRACO:  Can I get that report?
17            THE COURT:  You can look at it, and I'll
18  dissect -- there might be a statement or two that
19  are not against interests that I still think
20  probably should come in against Mr. Joe Gallegos.
21  And if you decide you want the limiting instruction
22  on one or two of those statements -- but I think a
23  large part of his statements are going to be against
24  interests.  So I'll dissect, make sure that if you
25  want a ruling, I'll tell you which it is.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Your Honor, I do want to
 2   raise something, but the Court -- I think we can
 3   raise that at another time.  My concern that the
 4   statements -- is what I was going into earlier --
 5   these statements are essentially information that
 6   was in the public sphere.  There is no way to
 7   corroborate and no way to cross-examine on these
 8   statements of this individual is subject to a murder
 9   prosecution, and has an ulterior motive.
10              THE COURT:  I understand the difficulty,
11   but it's probably not a basis for keeping this
12   information out.  If they've got a witness going to
13   come in and swear that Joe Gallegos said these
14   things, then I probably let them put her on.
15              MR. BENJAMIN:  Your Honor, I think I'm
16   being hampered in the truth-finding process by not
17   being able to get into -- and I've raised this, and
18   I'm not trying to irritate the Court -- in the
19   motion in limine, prohibiting me from getting into
20   the no probable cause.  Because Dr. Woo testified at
21   the hearing --
22              THE COURT:  That one is pretty settled.
23              MR. BENJAMIN:  I understand, Your Honor.
24   But the argument is that Dr. Woo testified at that
25   hearing about the means and method.  And that's what
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    this exactly is the --

 2              THE COURT:  All I've done is say the

 3    judge -- you cannot get in what the judge found.

 4    There may be other uses for the testimony at the

 5    probable cause hearing, and then maybe used for

 6    impeachment or something else.  It may have uses.

 7    But the motion in limine is about the judge.  And

 8    I'm not sure how that really hampers -- I've made a

 9    decision on it, but I'm not sure.

10              MR. BENJAMIN:  The concern is:  I don't

11    have that testimony because it was destroyed, Your

12    Honor.

13              THE COURT:  I understand.

14              MR. BENJAMIN:  Thank you.

15              (The following proceedings were held in

16    open court.)

17              THE COURT:  All right.  Is Ms. Ramirez in

18    the courtroom?

19              Ms. Ramirez, if you'll come up and stand

20    next to the witness box.  Before you're seated, my

21    courtroom deputy, Ms. Bevel, will swear you in.

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    MORGAN RAMIREZ,
 2      after having been first duly sworn under oath,
 3      was questioned and testified as follows:
 4           THE CLERK:  Please be seated.  Please
 5  state your name and spell your last name for the
 6  record.
 7           THE WITNESS:  Morgan Ramirez,
 8  R-A-M-I-R-E-Z.
 9                DIRECT EXAMINATION
10  BY MR. BECK:
11      Q.   Ms. Ramirez, good afternoon.  Do you know
12  a gentleman named Joe Lawrence Gallegos?
13      A.   Yes.
14      Q.   Do me a favor and just pull the microphone
15  just a little bit closer to you.
16      A.   Yes, I do.
17      Q.   And how do you know Joe Lawrence Gallegos?
18      A.   He's my ex-boyfriend.
19      Q.   When did you start dating Mr. Joe Lawrence
20  Gallegos?
21      A.   I think it was in -- I'm not exactly too
22  sure on the date -- about 2014 or '15.  It lasted
23  about a year.
24      Q.   I'm going to show you what's been admitted
25  as Government's Exhibit 181.  Who is that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    That's --
 2              MR. BENJAMIN:  Your Honor, I'd object.
 3   It's got his name on it.
 4              THE COURT:  Well, it's in evidence.  You
 5   can cross her on that.
 6        A.    That's Joe Gallegos.
 7   BY MR. BECK:
 8        Q.    Is that the Joe Lawrence Gallegos that you
 9   dated for approximately one year?
10        A.    Yes.
11        Q.    Where did you live when you were dating
12   Mr. Gallegos?
13        A.    In Los Chavez.
14        Q.    And did you spend time living in his
15   house?
16        A.    Yes.
17              MR. BECK:  I'm going to move to admit
18   Government's Exhibits 427, 432, 433 and 434.  I
19   think without objection, Your Honor.
20              MS. TORRACO:  That's fine.
21              MR. BENJAMIN:  No, Your Honor.
22              THE COURT:  Any objection?  Not hearing or
23   seeing any objection, Government's Exhibits 427,
24   432, 433, and 434 will be admitted into evidence.
25              (Government Exhibits 427, 432, 433, and
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   434 admitted.)

2   BY MR. BECK:

3       Q.   I'm going to show you what's now been

4   admitted as Government's Exhibit 427, Ms. Ramirez.

5   Do you recognize what's depicted in that photograph?

6       A.   Yes.

7       Q.   What is that?

8       A.   That is the house that we used to live in.

9       Q.   And when you say you, you and Mr. Gallegos

10  lived in that house?

11      A.   Yes.

12      Q.   All right.  I'm going to show you what's

13  been admitted as Government's Exhibit 421.  Is that

14  another photograph of Mr. Gallegos' house?

15      A.   Yes.

16      Q.   I'm going to show you Government's Exhibit

17  432.  What's depicted in this photograph,

18  Ms. Ramirez?

19      A.   That is inside of the house.

20      Q.   And looking at this picture, is this the

21  way Mr. Gallegos' house looked when you lived there

22  with him, or has anything changed since the time

23  this picture was taken before you lived with him?

24      A.   That's about what it looked like when I

25  moved in, yeah.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Okay.  And I'm going to show you
 2   Government's Exhibit 433.  What's in this
 3   photograph?
 4        A.    The living room.
 5        Q.    And Government's Exhibit 434.  This is
 6   also Mr. Gallegos' house that you lived in with him?
 7        A.    Yes.
 8              MR. BECK:  Your Honor, this might be an
 9   opportune time for our lunch break.
10              THE COURT:  All right.  I'm going to talk
11   to the parties a little bit before we take our lunch
12   break, so I'm going to let y'all go now.  So we'll
13   be in recess about an hour.  If you want to take a
14   little bit longer, go ahead.  We may take a little
15   bit longer.  But we'll be in recess for at least an
16   hour, so take your time.
17              (The jury left the courtroom.)
18              THE COURT:  All right.  Ms. Ramirez, if
19   you'll step out of the courtroom, I'm going to talk
20   to the lawyers a little bit.  Everybody be seated.
21              Let's see if I can -- all right.  Let me
22   see if I can dissect this 302 just a little bit.
23   And Mr. Beck, if there are statements that I'm not
24   covering, then let me know.  These are the ones that
25   I think would be admissible, and how.  Starting with
```

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                  201 Third NW, Suite 1630
Santa Fe, NM 87501                          Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.                          1-800-669-9492
PROFESSIONAL COURT                e-mail: info@litsupport.com
REPORTING SERVICE

1    the "Ramirez would rather go to jail than to

2    confront Joe Gallegos."  That doesn't seem to me

3    that raises any hearsay issues.  She'd just be

4    testifying about her own feelings.

5              Then skipping on down to the very bottom

6    of the page, that Gallegos told Ramirez that there

7    is a bone in the ear that can deflect a bullet.  I

8    don't think that's being offered to prove anything

9    about ear anatomy.  So it isn't hearsay.

10             That Mr. Gallegos told Ramirez that he

11   shot Burns in the ear.  That's admissible as a

12   declaration against penal interests.

13             That Ramirez cannot recall -- so it looks

14   to me like those statements on the first page,

15   Ms. Torraco, you wouldn't be entitled to a limiting

16   instruction on.

17             MS. TORRACO:  Would not?  I'm sorry, I

18   didn't hear you.  Would not be entitled to?

19             THE COURT:  Would not be.

20             The second page:  That Gallegos told

21   Ramirez that he shot Burns in the ear.  Well, we

22   covered that one.

23             That Ramirez cannot recall if it was in

24   the bedroom that it happened.  I don't think that

25   raises any hearsay problems.  I assume those are --

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

PROFESSIONAL COURT
REPORTING SERVICE

1   that those are statements -- that she's saying she

2   can't recall if Mr. Joe Gallegos told her that,

3   assuming that's what that statement means.  She's

4   saying she can't recall, so I don't think that

5   raises a hearsay problem.  If it deviates some, I

6   may have to relook at it.

7           Then the next statement:  That in

8   Gallegos' house Gallegos showed Ramirez a walk-in

9   closet and stated, "No one ever got killed in this

10  room.  Someone may have gotten shot here, but no one

11  died."  That's -- I think that's admissible against

12  Joe Gallegos.  There is a statement against -- as a

13  statement of a party opponent.  But I don't think

14  that would be admissible against Andrew Gallegos.

15          So, Ms. Torraco --

16          MS. TORRACO:  I was talking to my client.

17          THE COURT:  I'm doing this for your

18  benefit.

19          MS. TORRACO:  I know you are.  I'm sorry.

20          THE COURT:  So please listen.  I'll repeat

21  it.  That in Gallegos' house, Gallegos showed

22  Ramirez a walk-in closet and stated, "No one ever

23  got killed in this room.  Someone may have gotten

24  shot here, but no one died."

25          I think that's admissible against Joe

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Gallegos under Rule 801(d)(2)(A), but it would not

2   be admissible against Andrew.  So if, at that point,

3   on those statements, you want a limiting

4   instruction, I will give it.

5           MS. TORRACO:  Yes, please.

6           THE COURT:  If Joe Gallegos told

7   Ms. Ramirez that the gun he used to hit her was not

8   the gun that he used to kill Burns, do you know what

9   she's saying here, Mr. Beck?

10          MR. BECK:  Yes.  I don't think that's a

11  statement from Mr. Gallegos, the way that it's

12  written there.  I think that what she's saying is

13  that the gun that Mr. Gallegos, Mr. Joe Gallegos,

14  hit her with is not the gun that Mr. Gallegos --

15          THE COURT:  How is she going to know that?

16          MR. BECK:  Because of statements that

17  Mr. Gallegos, Mr. Joe Gallegos, made to her, I

18  anticipate.  I don't know the answer to that

19  question definitively, I don't know if she's --

20  assuming, but my assumption is that it's statements

21  that Mr. Joe Gallegos made to her at some point

22  about what gun was used to kill Mr. Burns.

23          THE COURT:  Well, we're going to have to

24  be careful.  You might ask her exactly what she's

25  going to say, script it out, and let me look at it,

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492

**BEAN
&ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   so that I can make a determination on that.  If Joe

2   Gallegos told her that the gun he used to hit her

3   was not the gun he used to kill Burns, then I think

4   that statement would be admissible under 804(b)(3)

5   and so no limiting instruction there.

6           Then the statement that Gallegos told

7   Ramirez that there was a gun buried in his yard,

8   that's admissible under 804(b)(3) because it tends

9   to expose Joe Gallegos to criminal liability as a

10  felon in possession of a firearm.

11          And then keep reading here, let me grab

12  two statements here.  Gallegos did not tell Ramirez

13  if it was a .22 caliber gun but that he, Gallegos,

14  did -- it says "shot," but I think it means shoot

15  Burns.  "Gallegos did not say exactly who did what,

16  but Gallegos made it clear that he was part of it.

17  Gallegos told Ramirez that Jason Van Veghel helped

18  move out the carpet.  Gallegos mentioned something

19  about tying up loose ends."

20          I think Joe Gallegos' statement that he

21  shot Burns is admissible under 804(b)(3).  The other

22  statements I think are admissible against Joe

23  Gallegos under 801(d)(2)(A).  So those statements,

24  then, I'll let him testify that he shot Burns

25  without a limiting instruction, but I don't think

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                 1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                       e-mail: info@litsupport.com

1   the rest of that implicates Andrew Gallegos.  So I

2   don't think there would be -- they wouldn't be

3   admissible under 804(b)(3) of the statement against

4   interest, so you'd be entitled to instruction.

5           So I'll let you decide.  We'll have to

6   take these very slowly, and then I'll try to be

7   prepared to give the instruction, but that would be

8   how to script it out.

9           MS. TORRACO:  May I address the Court?

10          THE COURT:  You may.

11          MS. TORRACO:  Would it be possible during

12  the lunch break for us to somehow talk to our

13  clients?  Because some of this is obviously -- well,

14  all of this is new information, and I really need to

15  talk to my client.  I'd also like to meet with

16  Mr. Benjamin and get some information from Joe

17  Gallegos, and it's difficult when we only get to see

18  them a few minutes in passing.  Can that somehow be

19  worked out?  Fifteen minutes.

20          THE COURT:  Can that be worked out?

21          MR. MICKENDROW:  Yes, Your Honor.  We'll

22  make it happen.

23          THE COURT:  I understand Mr. Beck can talk

24  to her at the present time; correct?  That's the

25  rule of engagement we agreed to?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                    1-800-669-9492
                                                         e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1            MS. TORRACO:  No, no, my client.

 2            THE COURT:  I just said that Mr. Beck

 3   should talk to her, and let us know if she's going

 4   to say something different here.  So unless somebody

 5   objects, I think that was rules of engagement.  They

 6   could talk during direct.  It's when cross starts

 7   that they're limited.

 8            MS. TORRACO:  I understand what you're

 9   saying.

10            MR. BECK:  There is one other statement I

11   anticipate at least currently that will come from

12   her.  In discussions with Mr. Joe Gallegos he said

13   that once or twice -- or maybe more times, I don't

14   know how often; I think more than once -- "Oh,

15   Adrian Burns, yeah, he sure does."

16            THE COURT:  He what?

17            MR. BECK:  "Yeah, he sure does.  Oh,

18   Adrian Burns" -- ellipses -- "yeah, he sure does."

19            THE COURT:  What does that mean?

20            MR. BECK:  I think it means that Mr. Burns

21   does burn.  So I anticipate that --

22            THE COURT:  Well, you'll be entitled to a

23   limiting instruction on that.

24            MR. BECK:  That's what I think, yeah.

25            THE COURT:  So if that comes in, you can
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    get a limiting instruction on that.

2             MS. TORRACO:  And we would request that.

3             THE COURT:  All right.  Tell me, though,

4    okay?  Help me make them all.

5             MS. TORRACO:  Yes, Your Honor.

6             THE COURT:  But you're going to want them

7    on all those that I said you can have them on?

8             MS. TORRACO:  I want them on all of them,

9    even the ones you said I couldn't have them on, but

10   the ones you'll give me, I'll take.

11            MR. BENJAMIN:  Your Honor, I wanted to

12   confirm the Court is going to admit -- for lack of a

13   better term, the statements on the last paragraph on

14   page 2?  "Gallegos told Ramirez that Van Veghel

15   helped rip out the carpet," et cetera.

16            THE COURT:  Yes.  But those are ones I'll

17   give a limiting instruction to Mr. Andrew Gallegos.

18            MR. BENJAMIN:  Your Honor, so that the

19   bench conference is clarified, Mr. Beck represented

20   at the bench conference that this 302 tracks the

21   interview that was done by the State Police in

22   December of 2015.  It does not, in my opinion, in

23   any way, shape, or form.  And I just want to put

24   that on the record.

25            THE COURT:  All right.  Have everybody

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   bring you a meal.  I'll be in the vestibule.  I'll
 2   leave.  So if something comes up, you can come get
 3   me.  Why don't you start scripting out this trial.
 4   Because I really want something in the morning
 5   that's scripted out.  The Government is going to
 6   have to start showing its case; otherwise, we're not
 7   going to get this thing tried.
 8              All right.  We'll be in recess for an
 9   hour.
10              (The Court stood in recess.)
11              THE COURT:  All right.  I think we've got
12   an attorney for each defendant now.
13              When you get to that statement of Burns
14   burns, why don't you approach?  Because I'm still
15   trying to think whether you're entitled to a
16   limiting instruction on that.  What are you trying
17   to prove with that?
18              MR. BECK:  I mean, the intent, the
19   admission that -- I see it as really an admission
20   that they know that Adrian burns because they burned
21   him.
22              THE COURT:  So it's the physical burning,
23   that he knows that?  Is that what you're trying to
24   prove?
25              MR. BECK:  Right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Just approach, and
 2    then maybe I'll -- I'm not sure that's a hearsay
 3    statement at all.  Let me give that some thought.
 4    So just approach when you get to that.  The rest of
 5    them, I feel pretty comfortable with what I gave you
 6    before the lunch hour.  All rise.
 7              (The jury entered the courtroom.)
 8              THE COURT:  All right.  Everyone be
 9    seated.
10              All right.  Ms. Ramirez, if you'll return
11    to the witness box.  And Ms. Ramirez, I'll remind
12    you that you're still under oath.
13              THE WITNESS:  Okay.
14              THE COURT:  Mr. Beck, if you wish to
15    continue your direct examination of Ms. Ramirez, you
16    may do so at this time.
17              MR. BECK:  I do.  Thank you, Your Honor.
18    BY MR. BECK:
19         Q.   Ms. Ramirez, I'd like to talk to you about
20    some discussions you had with Joe Lawrence Gallegos
21    during the time you dated him.  Did you and
22    Mr. Gallegos ever discuss a man known as Babylon, or
23    Adrian Burns?
24         A.   Yeah, we did briefly.
25         Q.   All right.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Your Honor, may I ask the
 2    witness to slide forward?
 3              THE COURT:  She's about as far as she
 4    can --
 5              MR. BENJAMIN:  I couldn't hear the answer,
 6    Your Honor.
 7    BY MR. BECK:
 8        Q.   Try to speak up just a little bit, Ms.
 9    Ramirez.
10              THE COURT:  The answer was, "Yeah, we did
11    briefly."
12        Q.   And that's what I'd like talk to you
13    about.  The nature of this conversation -- was it
14    sort of comfortable in passing, or was there
15    something significant about the way Mr. Joe Gallegos
16    was talking to you about Mr. Burns?
17              MR. BENJAMIN:  Objection, speculation,
18    vague.
19              THE COURT:  Overruled.
20        A.   It was kind of casual, in passing, at one
21    point.  At that point, I wasn't exactly too sure he
22    was talking about Mr. Burns until later on,
23    actually.  But at one point it was like kind of a
24    fixed conversation.
25              MS. TORRACO:  Objection, nonresponsive.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Overruled.
 2   BY MR. BECK:
 3        Q.   Sorry, at one point it what?
 4        A.   It was like a conversation.  We were kind
 5   of talking just about that.
 6        Q.   Did that surprise you, that he was talking
 7   about Mr. Burns in that casual conversation?
 8        A.   Yes, it did.
 9        Q.   And why is that?
10        A.   Because that's kind of not usually the
11   thing that you just talk about like it's an everyday
12   thing.
13        Q.   And the thing that you don't talk about
14   like an everyday thing is that -- what is the thing
15   you don't talk about like an everyday thing?
16        A.   Killing somebody.
17        Q.   Did Mr. Joe Gallegos tell you that "We
18   shot Adrian Burns"?
19              MS. TORRACO:  Objection, leading.
20              THE COURT:  Sustained.
21   BY MR. BECK:
22        Q.   What did Mr. Gallegos, Joe Gallegos, tell
23   you about shooting Mr. Burns?
24        A.   He told me one day -- I don't remember the
25   exact words, if he said "We shot Mr." -- or "shot
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Babylon," or if it was -- I don't remember his exact

2  words, to be honest.  But I know at one point it was

3  just, like, a random thing.  I didn't really know

4  what he was talking about.  And he said, "It's crazy

5  that -- that the bone in your ear could stop a

6  bullet."  I didn't really know what he was talking

7  about at the time.

8       Q.   What did you later come to believe he was

9  talking about?

10      A.   It came up in another conversation, that

11  he was saying that when Adrian Burns got shot, that

12  the bullet got stopped by a bone in his ear.

13      Q.   You're pointing to your ear while you're

14  saying that.  Did you and Joe Lawrence Gallegos talk

15  about Adrian Burns, or Babylon, being shot in the

16  ear?

17      A.   He didn't say that he got shot in the ear.

18  He said, like, they shot him, I guess, trying to,

19  like, shoot him in the head, basically, but it got

20  stopped by the bullet in his ear -- I mean, by the

21  bone in his ear.  Shit.

22      Q.   Where did Joe Lawrence Gallegos tell you

23  that Babylon was shot?

24      A.   Like where as in place-wise?

25      Q.   Right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Somewhere in his house.  He -- I don't
 2   know.  I had asked him a question one day -- kind of
 3   joking, but really not -- about the room that was,
 4   like, added onto his room, because it was like a
 5   closet thing, and it used to creep me out a lot.
 6   So, like, we were talking about it.  And he told me,
 7   "Don't worry.  No one has actually died in here.
 8   Someone may have got shot in here, but they didn't
 9   die."
10             MS. TORRACO:  Your Honor?  Your Honor?
11             THE COURT:  Yes.
12             MS. TORRACO:  Is Mr. Andrew Gallegos
13   entitled to a limiting instruction on that
14   statement?
15             THE COURT:  I think so.  So I'm going to
16   instruct on that last statement that Ms. Ramirez
17   made that that's admissible only against Mr. Joe
18   Gallegos, but you may not consider it in any way in
19   your deliberation of the charges against Andrew
20   Gallegos.
21             Mr. Beck.
22   BY MR. BECK:
23        Q.    What did Mr. Joe Lawrence Gallegos tell
24   you about why he shot Babylon, or Adrian Burns?
25        A.    Well, I had heard that he -- that it was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to rob him.
 2            MS. TORRACO:  Objection, hearsay.
 3            THE COURT:  Sustained.
 4       A.   I'll finish my sentence.
 5   BY MR. BECK:
 6       Q.   Hold on one second, Ms. Ramirez.
 7            THE COURT:  We don't want you to.
 8       Q.   Ms. Ramirez, when that happens, and the
 9   Judge sustains it, I'll just go ahead and ask you a
10   different question.
11       A.   Okay.
12       Q.   So without telling us what you had heard
13   or what anybody else told you, what did Joe Lawrence
14   Gallegos tell you about why he had shot Babylon, or
15   Adrian Burns?
16       A.   Well, that's why I asked him the question
17   about that, because that was unsure.
18       Q.   And what did he --
19            MR. BENJAMIN:  Nonresponsive.
20       A.   And I asked him --
21       Q.   Hold on one second, Ms. Ramirez.
22            THE COURT:  Overruled.
23       Q.   So when you asked him the question about
24   why he shot --
25            THE COURT:  Let me make sure the court
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    reporter -- did you get my ruling on that?  It was

2    overruled.

3             All right, Mr. Beck.

4        Q.   Let me ask you:  So you asked him a

5    question about why he shot Babylon, or Adrian Burns.

6    And what did he say in response to you?

7        A.   "Because motherfuckers with big mouths,

8    that's what happened"; that he didn't get robbed,

9    that he died with all his money in his pocket.

10       Q.   When Mr. Joe Lawrence Gallegos said that

11   he did it because motherfuckers have big mouths, was

12   this the conversation in which he was talking about

13   the bedroom, or was this the conversation in which

14   he was talking about the bone in the ear?

15       A.   About the bed -- in the bedroom.

16       Q.   The bedroom.  What did Joe Lawrence

17   Gallegos tell you about rolling up the carpet after

18   he shot Babylon, or Adrian Burns?

19            MR. BENJAMIN:  Objection, leading, Your

20   Honor.

21            THE COURT:  Overruled.

22       A.   He said that they had rolled up the

23   carpet, and they had it outside.

24   BY MR. BECK:

25       Q.   And who is "they"?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1      A.   Him and Jason.

 2      Q.   Do you know Jason's last name?

 3      A.   I do not.

 4      Q.   Did he ever --

 5           MS. TORRACO:  Excuse me, Your Honor.  Is

 6  the Defendant Andrew Gallegos entitled to a limiting

 7  instruction?

 8           THE COURT:  Yes.  This statement can only

 9  be used against Joe Gallegos.  It cannot be used

10  against any of the other defendants in the

11  courtroom.

12           Mr. Beck.

13  BY MR. BECK:

14      Q.   After Joe Lawrence Gallegos told you about

15  he and Jason rolling up the carpet, did it come up

16  again with Joe Lawrence Gallegos, the discussion

17  about Jason removing the carpet from the house?

18           MR. BENJAMIN:  Objection, leading, Your

19  Honor.

20           THE COURT:  Overruled.

21      A.   The only time that came up was when it was

22  announced on the news that it was turning into a

23  cold case.  And we were unsure about what was going

24  on with it, and he was nervous about Jason.  And I

25  didn't know what Jason's part in it was until that
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1  day, like.
 2  BY MR. BECK:
 3       Q.   Is that when he told you that he and Jason
 4  rolled up the carpet after shooting Adrian Burns?
 5       A.   Yes.
 6       Q.   What did you do with that information?
 7  Did you ever try to go talk to Jason?
 8       A.   I did talk to Jason shortly after that.
 9       Q.   Why?
10       A.   Well, I went over there, and Jason asked
11  me --
12            MS. TORRACO:  Objection, hearsay.
13            MR. BENJAMIN:  Objection, hearsay.
14            THE COURT:  Sustained.
15  BY MR. BECK:
16       Q.   Without getting into the statements that
17  Jason said, why did you go over there to talk to
18  Jason about this?
19       A.   I was just trying to see what was going
20  on, and --
21       Q.   Were you concerned about Jason?
22       A.   Yes, I was.
23       Q.   Is that one of the reasons you went over
24  there to talk to him about this?
25            MR. BENJAMIN:  Objection, leading, Your
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  Honor.
 2            THE COURT:  Overruled.
 3       A.   Yes, it is.
 4  BY MR. BECK:
 5       Q.   In that conversation with Joe Lawrence
 6  Gallegos about Jason, did he say anything about
 7  tying off --
 8            MS. TORRACO:  Objection, leading.
 9            THE COURT:  Let him finish his question.
10  BY MR. BECK:
11       Q.   Did he say anything about tying off loose
12  ends?
13            MS. TORRACO:  Objection, leading.
14            THE COURT:  Overruled.
15            MR. BENJAMIN:  Your Honor, Joe Gallegos
16  would join.
17       A.   Yes, he did.
18  BY MR. BECK:
19       Q.   What did he say?
20       A.   He said he was unsure if he -- what to do;
21  that if he had to tie off loose ends, because --
22  well, apparently, Jason was loose ends.
23            MS. TORRACO:  Your Honor, I believe that's
24  hearsay.  So I would ask that either that statement
25  be disregarded or not used against Andrew Gallegos.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  Well, I think the statement is
 2    from Mr. Joe Gallegos; correct?
 3                MR. BECK:  Yes, Your Honor.
 4                THE COURT:  Clarify that on the record.
 5                MS. TORRACO:  I thought it was testimony.
 6    May I?
 7                THE COURT:  Well, the testimony is from
 8    Mr. Joe Gallegos.
 9                MS. TORRACO:  I thought it was from
10    Mr. Van Veghel.
11                THE COURT:  No, I think you're incorrect
12    on that.  So overruled.
13                MS. TORRACO:  Okay.  Thank you.
14                MR. BENJAMIN:  Your Honor, I was going to
15    object to vague, and it sounds like conclusion, as
16    opposed to an actual statement.
17                THE COURT:  Overruled.
18                Let me -- I will, though, give a limiting
19    instruction as to anything that Mr. Joe Gallegos
20    told Ms. Ramirez about tying up loose ends.
21    Anything along those lines, you can only use that
22    against Mr. Joe Gallegos.  You cannot use it against
23    any other defendants in the courtroom.
24                Mr. Beck.
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   BY MR. BECK:

 2        Q.   I'm going to show you, Ms. Ramirez,

 3   Exhibit 432 one more time.  Is this Joe Lawrence's

 4   house again?

 5        A.   Yes.

 6        Q.   And does it appear to you in the picture

 7   that the carpet has been torn up here at the bottom

 8   of that?

 9             MS. TORRACO:  Objection, leading.

10             THE COURT:  Overruled.

11        A.   Yes, it does.

12   BY MR. BECK:

13        Q.   Is that how the house appeared when you

14   dated Joe Lawrence Gallegos?

15        A.   Yes, it was.

16        Q.   And is this picture of his bedroom?

17        A.   No.

18        Q.   Was the carpet also torn up in his

19   bedroom?

20        A.   Yeah, it was pretty much through the whole

21   house.

22        Q.   Did Joe Lawrence Gallegos tell you

23   anything about them, what they did with Babylon, or

24   Adrian Burns, after they shot him?

25        A.   Yes.  After they shot him, because the
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                  1-800-669-9492
                                                                  e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1  bullet was stopped and it didn't -- apparently it

 2  didn't kill him, they put a bag over his head.  And

 3  after that, they ended up burning him and his car.

 4       Q.   Do you remember if he said whether they

 5  burned him inside or outside of the car?

 6       A.   Outside the car.

 7       Q.   Ms. Ramirez, are you currently -- are you

 8  currently under indictment for an open count of

 9  murder?

10       A.   Yes, I am.

11       Q.   Are you currently on conditions of

12  pretrial release before the trial for that?

13       A.   Yes, I am.

14            MR. BECK:  May I have a moment, Your

15  Honor?

16            THE COURT:  You may.  And y'all may want

17  to approach, as well.

18            (The following proceedings were held at

19  the bench.)

20            THE COURT:  I guess on this "Adrian burns"

21  statement, that's what she's going to say?

22            MR. BECK:  That's what I'm going to get

23  into now.

24            THE COURT:  This statement, you know, is a

25  pun, I guess, based upon Burns' surname, the fact

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                      1-800-669-9492
                                                             e-mail: info@litsupport.com



1  that now Burns has been set afire.  If I understand,

2  Mr. Beck, you're not intending to offer that

3  statement to show what happened to Mr. Burns' body,

4  but you're intending it to show that Mr. Joe

5  Gallegos knew that Mr. Burns' body was burned, and I

6  just don't think that's a hearsay statement.  So --

7          MR. BECK:  Right.

8          THE COURT:  I'm going to -- not going to

9  have any limiting instruction on this.  Just ask it.

10  I don't think it's a hearsay statement.

11          MR. BECK:  For the record, we're not

12  offering it for the truth of the matter asserted

13  that Adrian Burns does indeed burn.  We're offering

14  it for the fact that it was made and it exhibits

15  consciousness of guilt.

16          MR. BENJAMIN:  Your Honor, I would argue

17  that it's 403, essentially, and 404.  I'll cross on

18  it, but --

19          THE COURT:  I just think for the hearsay

20  purpose -- I'm going to let it in.  But for the

21  hearsay purpose, I'm not going to give a limiting

22  instruction.  I think it's coming in as that

23  nonhearsay purpose.

24          MS. TORRACO:  Can I move on to another

25  topic?  I'm concerned about her competency.  She

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    appears to be under the influence of some sort of
2    drugs.  I'm wondering if the Court needs to do a
3    drug test on her.  She's a mess.
4              THE COURT:  She's a mess because of Joe
5    Gallegos.  You can ask her about whatever you want,
6    and ask her about her drug problem, and everything
7    like that.  Obviously, if she was under the
8    influence of drugs, I would be very concerned about
9    that.  But given the 302, given some of the other
10   statements she's made, I would tend to bet it's more
11   the fear factor than it is the drugs.  But it's fair
12   game.
13             MR. BENJAMIN:  And I understand that the
14   Court is making observations.  I do feel -- and I
15   will bring this out on cross -- but I do feel, since
16   she's charged with an open count of murder and that
17   she led --
18             THE COURT:  That's fair game, too.
19             MR. BENJAMIN:  That was more directed at
20   the fear and the Court's observations.
21             THE COURT:  No, that's exactly right.
22   That's fair game.
23             MS. TORRACO:  Thank you very much.
24             (The following proceedings were held in
25   open court.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right Mr. Beck.
 2  BY MR. BECK:
 3      Q.   And Ms. Ramirez, are you charged or
 4  indicted in state court or federal court?
 5      A.   State court.
 6      Q.   In conversations with Mr. Joe Lawrence
 7  Gallegos, did he ever talk about Adrian Burns in
 8  sort of a pun or cliche about Adrian Burns?
 9      A.   Yes, he did.
10      Q.   What did he say?
11      A.   Whenever Adrian Burns' name would get
12  mentioned, he was, like, "Yeah, he sure does."
13              MR. BECK:  No further questions, Your
14  Honor.
15              THE COURT:  Thank you, Mr. Beck.
16              Mr. Benjamin, do you have
17  cross-examination of Ms. Ramirez?
18              MR. BENJAMIN:  Yes, Your Honor.
19              THE COURT:  Mr. Benjamin.
20                   CROSS-EXAMINATION
21  BY MR. BENJAMIN:
22      Q.   Ms. Ramirez, you have an individual
23  sitting next to you today; correct?
24      A.   Yes.
25      Q.   Who is that?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    That is my lawyer.

 2        Q.    Okay.  And do me a favor.  Just so the

 3   record is clear, can you provide his last name,

 4   please?

 5        A.    It's Juarez.

 6        Q.    Okay.  And he represents you on the

 7   Eastwood murder that you're charged with currently;

 8   correct?

 9        A.    No, he does not.

10        Q.    Okay.  He represents you in this matter?

11        A.    Yes, sir.

12        Q.    And solely this matter?

13        A.    Yes.

14        Q.    Okay.  And -- but you are charged, and

15   Chico Gallegos represents you in the Eastwood

16   murder?

17        A.    Yes.

18        Q.    Okay.  And that's the murder that you're

19   alleged to have led and directed six other people in

20   robbing an individual; correct?

21             MR. JUAREZ:  Objection, Your Honor.

22             THE COURT:  Well, I'm trying to think how

23   to characterize this other case for -- what do you

24   suggest, Mr. Juarez?  How should we talk about this

25   other matter?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. JUAREZ:  I think "alleged."
 2              THE COURT:  Just add the "alleged."
 3              MR. BENJAMIN:  Thank you, sir.
 4              THE COURT:  There we go.  Thank you,
 5    Mr. Juarez.
 6    BY MR. BENJAMIN:
 7         Q.   Let me rephrase the question.  Are you
 8    alleged to have led and directed six other people in
 9    the Eastwood murder?
10         A.   No, sir.  I was not alleged to lead
11    anybody.
12         Q.   You were -- in that murder, you're alleged
13    to have robbed somebody with a deadly weapon for
14    $45?
15         A.   No, that wasn't me, neither.
16         Q.   It's funny?
17         A.   No, it's not.  It's funny that you don't
18    got your facts right, but --
19         Q.   You're alleged to have tampered with
20    evidence in that case, as well; correct?
21         A.   Allegedly, yes.
22         Q.   Okay.  You were also, on January 7 of
23    2018, alleged to have committed a felony forgery.
24         A.   Yes, sir.
25         Q.   You're alleged to have tampered with
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    evidence.

2         A.    Yes.

3         Q.    You're alleged to have conspired to commit

4    forgery.

5         A.    Yep.

6         Q.    You're alleged to have committed two

7    counts of identity theft.

8         A.    Yes, I was.

9         Q.    You're on pretrial release for that, as

10   well; correct?

11        A.    Yes, sir.

12        Q.    On January 7, 2016, you're alleged to have

13   committed a forgery, felony forgery.

14        A.    Yes.

15        Q.    That's still pending?

16        A.    Yes, it is.

17        Q.    On November 25, 2016, you are alleged to

18   have committed the offense of receiving or

19   transferring a stolen vehicle.

20             MR. BECK:   Objection, Your Honor.  May we

21   approach?

22             THE COURT:   You may.

23             (The following proceedings were held at

24   the bench.)

25             MR. BECK:   Your Honor, I can see how the

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1  forgery could be offered for impeachment.  But these

2  are not convictions; these are arrests.  They're

3  alleged bad acts.  They're not 609.  And so to the

4  extent --

5           THE COURT:  That's why I allowed the

6  question on the forgery.  I know that could go to

7  truthfulness.

8           MR. BECK:  The receiving stolen

9  property -- these are arrests, not convictions, so

10  they're not 609.

11          THE COURT:   Well, nobody so far has

12  indicated that she's been convicted of these, so

13  these are more falling into 608 category; correct?

14          MR. BECK:  Right.

15          THE COURT:  And so given that the

16  Government either didn't have convictions or didn't

17  choose to impeach her with that, it seems like it's

18  a 608 circumstance, and it seems like a little bit

19  more leeway is allowed either under 404(b) --

20          MR. BENJAMIN:  I've got three more

21  questions, as well, Your Honor, on that subject.

22          THE COURT:  I'd be inclined to allow it.

23  I don't think I'm going to restrict by the 609

24  contours.  I think I'm more into the 404(b) and 608

25  contours.  So I'll allow the questions.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Thank you, Your Honor.
 2   I'll be brief.
 3              (The following proceedings were held in
 4   open court.)
 5              THE COURT:  Mr. Benjamin.
 6              MR. BENJAMIN:  Thank you, Your Honor.
 7   BY MR. BENJAMIN:
 8       Q.   And on November 20, 2016, you were alleged
 9   to have committed four counts of identity theft.
10       A.   Yes.
11       Q.   And you're on pretrial release for this;
12   correct?  You're on bond?
13       A.   No, I'm on pretrial.
14       Q.   Bond, pretrial you're pending a
15   determination?
16       A.   Yes.
17       Q.   And you're alleged to have committed
18   conspiracy theft?
19       A.   Not that I'm aware of.
20       Q.   Okay.  You were arrested -- and correct me
21   on the date, because the date doesn't appear on the
22   audio -- but you were arrested in December of 2015,
23   correct, and spoke to a Detective Harris?
24       A.   Yes.
25       Q.   I'm sorry, you're going to have to speak a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   little louder.

 2        A.   Yes.

 3        Q.   Thank you.  Do you remember him starting

 4   off, about half -- well, I shouldn't say "starting

 5   off."  About a third of the way through the

 6   interview saying, "Let's cut to the chase.  I know

 7   you want to do what you can do to help yourself"?

 8        A.   Yes, I remember that.

 9        Q.   Okay.  And it was at that point that you

10   made one of the statements that you've made here

11   today; correct?

12        A.   Yes.

13        Q.   And only one statement.

14        A.   Yes.

15        Q.   The rest of that interview doesn't -- go

16   ahead.

17        A.   Actually, I believe a few of the

18   statements were made in that video.

19        Q.   Okay.  Nowhere near the statements that

20   were provided today?

21        A.   Actually all of the statements that were

22   provided today.

23        Q.   Okay.  When did -- and am I correct in

24   understanding from the direct that these statements

25   were made on two different days?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    A.   I believe so.

2    Q.   Mr. -- I mean, how many days were these

3  statements made on?

4    A.   It was just the two, I believe.

5    Q.   Mr. Beck referred to those as the bedroom

6  and the bone-in-the-ear conversations; is that

7  right?

8    A.   Yes, he did.

9    Q.   Okay.  The bedroom conversation is where

10 Mr. Gallegos supposedly tells you, and I think you

11 said casually in passing --

12   A.   No, that was not the bedroom, when we were

13 talking in the bedroom.  That was -- the

14 bone-in-the-ear was the casually in passing.

15   Q.   Okay.  So let's start with that one.

16 Casually in passing he just says, "I shot somebody

17 in the ear"?

18   A.   No, he did not.

19   Q.   Did you notice that when you were talking

20 about your ear, which ear were you touching?

21   A.   I was touching my right ear.

22   Q.   Okay.  And Joe Gallegos at that time had

23 all the discovery in his house for this 2012 case;

24 right?

25   A.   I would imagine so, but I never came

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   across it.
 2       Q.   That discovery had a pathology report that
 3   talked about this; right?
 4       A.   I would believe so.
 5       Q.   Okay.  Would it surprise you that there's
 6   nothing in there that talks about a bone getting
 7   stopped in an ear, but that sounds like a nice
 8   story, doesn't it?
 9       A.   Not really.
10       Q.   Because a bone didn't stop a bullet.
11   There were two bullets found in Mr. Burns' head.
12       A.   I wouldn't know that.  I'm not the cop.
13       Q.   You wouldn't know that when you're making
14   up this statement against Joe Gallegos.
15       A.   If you assume that I'm making it up,
16   that's whatever.
17       Q.   It's not factually correct?
18       A.   Actually, it is.  It's what he told me.  I
19   don't know what really happened, but I do know what
20   he told me, and that's what he told me.  So that's
21   all I could testify to.
22       Q.   So he made up facts admitting to a murder
23   that's not factually correct?
24       A.   I don't know if he did or not.  Like I
25   said, all I know is what he told me.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Right.  And think about that when somebody
 2   starts talking about how you allegedly led and
 3   directed.  You reacted to that statement, didn't
 4   you?
 5        A.   Reacted as in answering you, yes, I did.
 6        Q.   You got upset about it.
 7        A.   No, I was correcting you.
 8        Q.   Okay.  So your position is:  Having a
 9   little bit of information, you got the facts wrong,
10   or Joe, having essentially all the discovery in the
11   case, told you the facts wrong?
12        A.   I don't know if he told me the facts wrong
13   or not.  I didn't go over his discovery, so I can't
14   say that.
15        Q.   But we have your word to take for that;
16   right?
17        A.   Well, yeah.  What he told me?  Yeah.
18        Q.   No, we have solely your word to take for
19   that, that you didn't read the discovery in the
20   case?
21        A.   Well, why would I need to read the
22   discovery in the case?
23        Q.   Because you're about as close to the news
24   appears to be on your case, is what you're telling
25   me; that these facts are just close, but not right;
```




 1  right?

 2       A.   I wouldn't know.

 3       Q.   Would it surprise you the jury has heard

 4  testimony already about the murder that contradicts

 5  what you're saying?

 6            MR. BECK:  Objection, Your Honor.

 7            THE COURT:  Sustained.

 8  BY MR. BENJAMIN:

 9       Q.   Was it the bedroom conversation or the

10  bone-in-the-ear conversation where Joe said that

11  Adrian was burned with a lot of money on him?

12       A.   That was when we were talking in the

13  bedroom.

14       Q.   Okay.  And so that's the same -- that's a

15  different conversation than the bone in the ear?

16       A.   Yes.

17       Q.   Okay.  And so if you're correct, the

18  police should have found money on Adrian Burns?

19       A.   Honestly, I do not know that.  I know Joe

20  got upset whenever I had went at him saying that it

21  was done because he had robbed him.  And that was

22  the reaction that I got, when he got upset, was

23  saying that the money was in his pocket when he

24  got --

25       Q.   Or it could have been the reaction of



SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                   201 Third NW, Suite 1630
Santa Fe, NM 87501                          Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                  1-800-669-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                    e-mail: info@litsupport.com

1    somebody accusing him of a murder he didn't commit.

2         A.   I wasn't accusing him of a murder.

3         Q.   When was the bone-in-the-ear conversation?

4         A.   I don't exactly remember.  That's been a

5    couple of years.  I don't know dates, or -- I don't

6    know.  I don't usually keep a calendar of all that.

7         Q.   That's not -- it's trivial to you for the

8    date, but it's okay for you come into court and

9    accuse somebody of confessing to a murder?

10        A.   I'm not accusing nobody of nothing.  I'm

11   giving you the statement that was told to me.

12        Q.   When was that statement made?

13        A.   When I was with him.

14        Q.   And when were you with him?

15        A.   In 2014.  Sometime in between that whole

16   year I was with him, it was made.  I don't usually

17   keep track of every conversation I have.  I don't

18   know if you do, but I don't.

19        Q.   I don't usually have conversations where I

20   say somebody admitted a murder to me, and kind of

21   blow it off and say I can't keep track of it.

22             MR. BECK:  Objection.

23             THE COURT:  Sustained.  Let's not argue

24   closing yet.

25

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                               (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    BY MR. BENJAMIN:
 2         Q.    How many times have people -- according
 3    to -- you say Joe admitted two different
 4    statements -- or different statements on two
 5    different dates to you regarding this murder; right?
 6         A.    Like I said, the one where he was talking
 7    about the bone in the ear, he didn't admit nothing.
 8    It was just in a passing conversation.
 9         Q.    So we can strike that one as an admission,
10    is what you're saying?
11         A.    I'm not saying anything.  I'm just telling
12    you exactly what was told to me.
13         Q.    When?
14         A.    When I was with him.
15         Q.    You were with him in 2013, weren't you?
16         A.    '13 and '14.
17         Q.    Well, earlier you've testified '14 and
18    '15.  So now it's '13 and '14?
19         A.    I'm not exactly sure.  Like I say, I don't
20    keep dates.  I'm not really much of a date-keeper on
21    everything I do and everyone I do it with.  Like I'm
22    not -- it's not really in my --
23         Q.    Is this a trivial statement you're making
24    about Joe Gallegos?
25         A.    No, it's not.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Okay.  So when was this statement made?
 2        A.    I'm not exactly sure on the month or day.
 3   I do not know.
 4        Q.    When was the bedroom statement made?
 5        A.    Sometime when I was with him, because we
 6   were in his bedroom when it got made.
 7        Q.    You were in his bedroom when he made that
 8   statement to you?
 9        A.    Yes, I lived with him the whole time I was
10   with him.
11        Q.    How far apart were these statements?
12        A.    I'm not exactly too sure.  Not very far
13   apart.
14        Q.    Same day?
15        A.    No.
16        Q.    Two days?
17        A.    It was in two different conversations.  I
18   don't exactly keep track of that.
19        Q.    Two different conversations about a murder
20   that you're saying he admitted to, and you don't
21   know or have any idea how important that is?
22        A.    I could imagine how important is, but it's
23   not exactly something that you just write down in
24   your journal because somebody told you something.
25        Q.    It didn't leave an impression on you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     A.   No, it did leave an impression on me,

2     obviously.

3     Q.   When did it happen?

4     A.   I'm not exactly sure.

5     Q.   You said casually in passing is when the

6     first statement, the bone-in-the-ear statement,

7     happens.

8     A.   Yes.  Because we weren't exactly talking

9     about anything in specific at that time.  It was

10    just something kind of, I guess, popped in his head.

11    I don't know.

12    Q.   Something that doesn't track with what the

13    State has said or that -- how the body was found

14    just popped into his head?

15    A.   I'm not too sure what goes on in his head.

16    Q.   "We shot Babylon," and then I think you

17    said, "I don't remember the exact words, but it was

18    something like that"?

19    A.   I don't remember as in I don't remember if

20    he said "we" or if he said "I."  I don't remember

21    the exact wording.  I don't keep track of that.

22    It's not something that anybody normally does in

23    life is just write down every conversation they

24    have.

25    Q.   A conversation admitting a murder is an

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  important item, isn't it?

2      A.   Yeah, it is.

3      Q.   It makes an impression on you?

4      A.    It does make an impression.

5      Q.   And so if it didn't make an impression, we

6  can attribute it to the fact that it's probably not

7  an impressionable statement -- that doesn't make a

8  lot of sense -- but if it doesn't leave an

9  impression on you, it's something that's just not

10  important to you?

11      A.   No, I did not say that it didn't.  I said

12  it did make an impression on me, but it still isn't

13  something that you write down every date.  Like I

14  don't usually keep track of every conversation I

15  have with everybody and anybody.

16      Q.   Right, but you'd agree with me that there

17  are certain things that happen to us that we can

18  remember when they happen.

19      A.   More or less when they happen.

20      Q.   Somebody proposes to you, you remember it?

21      A.   I don't know.  I'm not married.

22      Q.   In the bedroom statement, you said, "No

23  one's died in here," or Joe allegedly said, "No one

24  has died in here.  Someone has been shot."

25      A.   He said, "Maybe shot, but not died."



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                      1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

 1    Q.   Okay.  So somebody has maybe been shot in

 2  here, but nobody died?

 3    A.   Yes.  That's what he said.

 4    Q.   Okay.  In your understanding of what he's

 5  telling you, that would tend to leave blood or some

 6  other residue; right?

 7    A.   I would think so.

 8    Q.   Okay.  And that was a closet that that

 9  happened in; right?

10    A.   It was kind of a closet.  It was like

11  another room that was completely dark, and there was

12  never no light in it.  There was no rug in there.

13  It was like a little shack added onto his room.

14    Q.   There was no rug in the entire -- there

15  was no carpet in the entire house.  There was a rug

16  in the living room; is that fair?

17    A.   Yeah.

18    Q.   And this room, though, going back to it,

19  it's small?

20    A.   Pretty small.

21    Q.   Okay.  Well, the whole house is not very

22  big.  It's a trailer; right?  But this is a smaller

23  room attached to the bedroom?

24    A.   Yes.

25    Q.   Did Joe tell you that Adrian Burns, or

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                             1-800-669-9492
                                                    e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   Babylon, died with all his money in his pocket?
 2        A.   Yes, he did tell me that.
 3             MR. BENJAMIN:   Can I have Government's
 4   433, ma'am?
 5        Q.   Do you know when this picture was taken?
 6        A.   No, I don't.
 7        Q.   Okay.  But the house looked like this when
 8   you moved in; right?
 9        A.   Pretty much, yeah.
10        Q.   More or less?  And there's a lot of items
11   on the floor; right?
12        A.   Yes.
13        Q.   There's a lot of items just spread out
14   on --
15        A.   Everything.
16        Q.   -- everything?
17        A.   Yes.
18        Q.   Okay.  And I'm specifically pointing at a
19   coffee table; correct?
20        A.   Yes.
21        Q.   Okay.  Would you say that the items are on
22   that coffee table have been there a long time or a
23   short time?
24        A.   By looking at the picture, I wouldn't
25   know.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    Okay.  Did Joe Gallegos regularly clean up

2  his house?

3      A.    His house, no.  The coffee table did get

4  used a lot, yes.

5      Q.    Okay.  Let's go to the bookshelf.  There

6  are a lot of items on this bookshelf, aren't there?

7      A.    Yes.

8      Q.    Did this bookshelf get --

9            MR. BENJAMIN:  This is 433.  May I have a

10  second, Your Honor?

11            THE COURT:  You may.

12            MR. BENJAMIN:  Your Honor, for the record,

13  I'd just like to make sure, I think the Government

14  moved without objection 433, but if not --

15            THE COURT:  It's admitted into evidence.

16            MR. BENJAMIN:  Thank you, Your Honor.

17  That's my mistake.  I'm just trying to catch my

18  notes.

19  BY MR. BENJAMIN:

20      Q.    I think I was asking you if the items on

21  this bookshelf changed a lot.

22      A.    Not a lot, no.

23      Q.    Okay.  Is it fair to describe what we see

24  in the center console right here as probably dust?

25      A.    Probably.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492
                                                            e-mail: info@litsupport.com


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.    Okay.  I think you said this, but I'd like
 2   to be clear.  You did not record in any way the
 3   statements that were made in the bedroom or the
 4   statement about -- the statements that were made at
 5   the-bone-in-the-ear time?
 6        A.    No.
 7        Q.    Okay.  And you said that you don't know
 8   Jason's last name; correct?
 9        A.    No, I don't.
10        Q.    Okay.  You know Jeremy Kaiser?
11        A.    Yes, I do.
12        Q.    You know Karen Cartwright?
13        A.    Yes, I do.
14        Q.    And Jason and Karen are married, aren't
15   they?  Or were married?
16        A.    I'm not sure if they were married or just
17   together.
18        Q.    But that was in the 2013-through-2015
19   timeframe when you were hanging out with them?
20        A.    It was more about 2012, because they used
21   to be my neighbors before I met Joe.
22        Q.    Okay.  And you stick to you didn't know
23   Jason's last name?
24        A.    No.
25        Q.    Did Jason roll up the carpet and pull it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   out himself?

 2        A.    I don't know.  I wasn't there.

 3        Q.    When were you watching the news that you

 4   said this was turning into a cold case?

 5        A.    I wasn't watching the news.  We got a

 6   phone call or a text message from somebody telling

 7   Joe that there was something on the news about it.

 8   And they didn't say it was a cold case.  We actually

 9   had to look it up ourselves to figure that out,

10   because we were unsure of what it was.

11        Q.    Okay.  When was that?

12        A.    I don't know.  You would have to go back

13   in the records and see when it came on the news.

14        Q.    When did you have that conversation?

15        A.    I don't know.  The day it came on the

16   news.  Again, I do not keep track of days and

17   everything that happens in my life every day, like

18   in a record and write it down.

19        Q.    But you can't tell me when he's having

20   these important conversations with you?

21        A.    Can I tell you the exact date?  No, I

22   cannot.

23        Q.    You can't give me a year, is what it

24   sounds like.

25        A.    I'm not too sure.  I was with him for a
```

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492



1-800-669-9492
PROFESSIONAL COURT                                      e-mail: info@litsupport.com
REPORTING SERVICE

```
 1  year.
 2       Q.   And that year was '13 to '14, '14 to '15?
 3       A.   No, it was '13 to '14, and off and on in
 4  '15.
 5       Q.   You'd agree with me that definition is
 6  different than the definition you gave on direct?
 7       A.   No, that's not different.
 8            MR. BENJAMIN:  May have a second, Your
 9  Honor?
10            THE COURT:  You may.
11  BY MR. BENJAMIN:
12       Q.   Ms. Ramirez, tell me if I'm wrong, but you
13  have one, two, three, four, five, six, seven, eight,
14  nine, ten, eleven felony counts plus a first-degree
15  murder charge that are currently pending?
16       A.   Yeah.
17       Q.   Okay.
18       A.   I do.
19       Q.   And you started this by saying the first
20  time you mentioned this was when a detective --
21  "Detective Harris told me, 'You know how to help
22  yourself,'" and you at that point in time decided to
23  make a statement against Joe Gallegos.
24       A.   Actually, I think that was the second time
25  I had talked to Detective Harris, was -- that was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the second time.

2        Q.   Well, as I said, this audio that I have

3    doesn't have a statement, but in direct response to

4    "You know how to save yourself," you started

5    providing essentially a story about Joe Gallegos.

6        A.   Like I said, this was the second time I

7    had talked to Detective Harris.  And the cops were

8    constantly harassing me and Joe.  They were raiding

9    his house about three times a week, like, seriously.

10   So yeah.

11       Q.   And you are here to testify today fully

12   expecting assistance on your 12 pending felonies.

13       A.   No, sir, I'm not.

14       Q.   You're testifying in front of these people

15   as the only person who has come in and said that

16   they're not expecting a benefit?

17       A.   I'm not.

18       Q.   On any of your cases?

19       A.   On any of my cases.  I'm taking care of my

20   cases, doing what I can on my part to get my stuff

21   right.

22       Q.   Well, some of your cases have been pending

23   a year and a half.  You're not taking care of them

24   at all.

25       A.   Actually, I am.  Not on my part but on the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   State's part, they didn't have their stuff right,

2   which is why they've been pending so long.

3        Q.   You are in a position to send that man to

4   jail and receive a benefit.

5        A.   No, I'm not in that position.

6             MR. BENJAMIN:  Pass the witness, Your

7   Honor.

8             THE COURT:  Thank you, Mr. Benjamin.

9             Ms. Torraco, do you have cross-examination

10  of Ms. Ramirez?

11            MS. TORRACO:  Thank you, Your Honor.  May

12  we approach before I start, please?

13            THE COURT:  Certainly.

14            (The following proceedings were held at

15  the bench.)

16            MS. TORRACO:  Your Honor, Ms. Ramirez did

17  say on cross-examination that she wasn't sure if the

18  statements made were "they did this," "we did this,"

19  or "I did this."  And along those lines, I was

20  wondering if the Court would be inclined to give a

21  limiting instruction depending on what the jury

22  decides what the statements were.

23            THE COURT:  Well, if you, through your

24  cross, limit these statements just to if she ends up

25  saying that it was only Joe Gallegos that said it,

SANTA FE OFFICE                                         MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                        1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   which is all I think it is, then you're entitled to

 2   a limiting instruction.  I'm not sure you're getting

 3   a limiting instruction.  That was the reason I did

 4   what I did.  Certain things that didn't fall in the

 5   hearsay exception or within the hearsay, then I

 6   thought such things as statements against penal

 7   interests that Joe Gallegos made, and I've got to

 8   leave those just for everybody to sort out.  But the

 9   ones that are just his party opponent statements,

10   then I think you're entitled to it.

11             MS. TORRACO:  Okay.

12             THE COURT:  So I think it -- it's not

13   necessarily the evidence can't be used because of

14   the "we."  I think it's more it can't be used

15   depending on whether it's hearsay, nonhearsay, or

16   comes into a hearsay exception.

17             MS. TORRACO:  Okay.

18             THE COURT:  So I'll listen.  There may be

19   more instructions that you're entitled to, but right

20   at the moment I can't think of anything else I can

21   and should do.

22             MS. TORRACO:  Thank you very much.

23             (The following proceedings were held in

24   open court.)

25             THE COURT:  Ms. Torraco.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          MS. TORRACO:  Yes, Your Honor.  Just a
 2   moment.
 3                    CROSS-EXAMINATION
 4   BY MS. TORRACO:
 5        Q.   Hey, good afternoon.
 6        A.   Good afternoon.
 7        Q.   How well did you know Andrew Gallegos?
 8        A.   Not very well.
 9        Q.   And in fact, you guys aren't really
10   friends at all; isn't that true?
11        A.   Yes, that is true.
12        Q.   And you and Andrew never hung out; true?
13   Never partied together?
14        A.   No.
15        Q.   No, you never partied together?
16        A.   No, I didn't.
17        Q.   And you really had no friendship with him
18   whatsoever; isn't that true?
19        A.   Yeah.
20        Q.   And you could probably count on one time
21   (sic) the amount of times that you've actually seen
22   him; isn't that true?
23        A.   I've seen him a couple of times, maybe
24   talked to him briefly, like once; that was it.
25        Q.   That brief conversation would be "Hi"?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yeah, pretty much.
 2        Q.    Okay.  So you have nothing against Andrew
 3   Gallegos; isn't that true?
 4        A.    No, I don't.
 5        Q.    Really, this is between you and Joe
 6   Gallegos; isn't that true?
 7        A.    No, this isn't between me and nobody.
 8   This is between you guys and them.  I'm just giving
 9   my statement on what was said.
10        Q.    Okay.  Well, let's go through that
11   statement.  You made some very serious allegations,
12   and then on cross-examination you cleared it up that
13   you weren't really sure if the statement that Joe
14   made was "whether I" or if it was a "they"
15   statement.  Do you remember saying that?
16        A.    Yes, I do remember saying that.
17        Q.    Okay.  So explain to me how you don't
18   remember something that important.
19        A.    Because it's a simple, like, "we" or "I."
20   I'm not too sure -- like I said, I don't usually
21   write down every conversation I have with everybody.
22        Q.    No, I got that.
23        A.    It's been years and I'm --
24        Q.    I got that.  But it's important -- don't
25   you agree that it's important to know if this was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  something that one person was involved in, or more

2  than one person?  Don't you agree with that?

3       A.   I do agree with that.

4       Q.   And at the time, for your personal safety,

5  don't you think it would be something you'd want to

6  know if this was one person involved or more than

7  one person involved?  Isn't that true?

8       A.   What would you mean by my personal safety?

9       Q.   If you are with someone who confesses to a

10  murder, don't you agree that that is scary?

11      A.   Yeah.

12      Q.   Okay.  And don't you agree that you would

13  want to know who was involved in this murder?

14      A.   Not really.

15      Q.   You don't want to know who was involved in

16  the murder?

17      A.   The least I know, the better.  Like, it's

18  not really something you pry about.

19      Q.   Okay.  So did you tell anybody else when

20  he made the statement?

21      A.   No, I didn't.

22      Q.   And I believe on either cross-examination

23  or direct, there was some comment that you made, I

24  think it was to Mr. Benjamin, that the statement of

25  the bullet in the bone -- that it really -- you

SANTA FE OFFICE                                                                      MAIN OFFICE
119 East Marcy, Suite 110                                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                                             Albuquerque, NM 87102
(505) 989-4949                                                                       (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    didn't know if it had anything to do with Mr. Burns?

2        A.    At the time, no, I didn't.

3        Q.    Okay.  So at the time, nothing has changed

4    between then and now?  Isn't that true?

5        A.    No, that is not true.

6        Q.    So your statement earlier that it had

7    nothing to do with Burns, now you're changing that

8    statement?

9        A.    No, I'm not.  At the time I did not know

10   it had anything to do with Burns, but I learned

11   later on that it did.

12       Q.    No, you put together on your own that you

13   thought it had something to do --

14       A.    No, I didn't.

15       Q.    Okay.  So you understand that a crime such

16   as forgery and concealing identity -- those are

17   considered to be crimes of dishonesty?

18       A.    Yes, I understand that.

19       Q.    And I want to focus a little bit on this

20   relationship that you had with Joe Gallegos.  It was

21   an off-and-on relationship; isn't that true?

22       A.    Toward the end, yes.

23       Q.    Okay.  When was the beginning?

24       A.    The beginning -- I'm not exactly too sure

25   on dates.  I don't really keep dates of that.  But

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

66

1   for the first -- almost the first year, I was living

2   with him.  It wasn't off and on.

3        Q.   Did you start going out in the summer or

4   the fall?

5        A.   It was in the fall.  It was right after he

6   got out of jail.

7        Q.   In the fall of what year?

8        A.   2003, I believe.

9        Q.   2003?

10       A.   I mean 2013.  Sorry.

11       Q.   2013?

12       A.   Yeah.

13       Q.   So it was in the fall of 2013 you moved in

14   right away?

15       A.   Yes.

16       Q.   And at that time, did you use drugs?

17       A.   Yes, I was.

18       Q.   And what was your drug of choice?

19       A.   Methamphetamine.

20       Q.   And you used methamphetamine.  Were you

21   also using cocaine?

22       A.   No, I was not.

23       Q.   Any pills?

24       A.   No.

25       Q.   Have you ever used cocaine?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    I have before, yes.

 2        Q.    And have you also used pills?

 3        A.    No.

 4        Q.    You've never used any uppers?

 5        A.    Methamphetamines.

 6        Q.    Okay.  And what about heroin?  Did you

 7   ever use heroin?

 8        A.    No.

 9        Q.    So methamphetamines are your drug of

10   choice?

11        A.    Yes.

12        Q.    When is the last time you used meth?

13        A.    Three months ago.

14        Q.    And so it's your testimony today that

15   you're not under the influence of methamphetamines?

16        A.    No, I am not.

17        Q.    And isn't it true that you are the person

18   that introduced Joe Gallegos to methamphetamines?

19        A.    Yes, it is.

20        Q.    And you thought that that would be fun or

21   good for your relationship?

22        A.    At first we weren't in a relationship.  It

23   was a friendship.

24        Q.    So after meeting him in the fall of 2013,

25   when did you move in?
```

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                       FAX (505) 843-9492
                                                                             1-800-669-9492
                                                                    e-mail: info@litsupport.com


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.    I moved in right away.   I was going

 2   through a breakup, and my ex was literally kicking

 3   people's doors down looking for me, and Joe offered

 4   me a place to stay, so I was safe and --

 5        Q.    And was that ex Abraham Perea?

 6        A.    Yes, it was.

 7        Q.    And so after -- you moved in about just a

 8   couple of weeks after getting to know Joe Gallegos,

 9   or within the first week?

10        A.    It was within a couple of weeks.

11        Q.    And how long did you guys stay before you

12   had your first breakup?

13        A.    Not exactly sure.   It was a good couple of

14   months.

15        Q.    Did you stay together through Christmas?

16        A.    Yes, we did.

17        Q.    And then what about in the spring?  Were

18   you together in the spring of 2014?

19        A.    I think in the spring is around when we

20   had our breakup.

21        Q.    Okay.   And you guys had breakups, and you

22   would break up and you'd move out, and then you'd

23   get back together, and you'd move back in; isn't

24   that true?

25        A.    Yes.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                 1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1        Q.    And about when did you start doing
 2   methamphetamines with Joe Gallegos?
 3        A.    When I moved into his house.
 4        Q.    So almost immediately you introduced him
 5   to meth; isn't that true?
 6        A.    Yes.
 7        Q.    And there are other people who know that
 8   you do meth; isn't that true?
 9        A.    Yeah.
10        Q.    And that would explain why -- during the
11   period of time that you were with Joe Gallegos, why
12   the police were always knocking at the door; isn't
13   that true?
14        A.    No.
15        Q.    Okay.  So after the spring of 2014, you
16   moved out.  Did you go back to Abraham Perea?
17        A.    Yes, I did.
18        Q.    And that caused problems with you and Joe
19   Gallegos; isn't that true?
20        A.    Actually, at first, no, it didn't.
21        Q.    And as a matter of fact, he drove you
22   home; isn't that true?  Back to Abraham?
23        A.    Yes, he did.
24        Q.    And at some point, isn't it true that Joe
25   Gallegos told you that he loved you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes, he did.

 2        Q.    And in fact, he wanted to marry you,

 3   didn't he?

 4        A.    Yeah, he did.

 5        Q.    And he asked you to marry him?

 6        A.    (Witness nods.)

 7        Q.    And at some point you cheated on him;

 8   isn't that true?

 9        A.    No, I did not.  I left him before I went

10   with Abraham.

11        Q.    And isn't it true that he cheated on you?

12        A.    I'm not exactly too sure on that.

13        Q.    Okay.  So there was a period of time when

14   you were in jail.  Do you remember that?  And you

15   were concerned that he was with a woman named Rayna?

16        A.    No.

17        Q.    You weren't jealous over Rayna?

18        A.    Rayna was my best friend.

19        Q.    Were you jealous over Rayna?

20        A.    No.  I was upset about the fact that he

21   basically moved into her house, yes.  But that was

22   after me and him broke up.

23        Q.    Well, that would still be a reason to

24   cause pain; right?

25        A.    No.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Q.   You weren't in pain over the fact that he
2  hooked up with your best friend?
3    A.   He told me that he didn't, and I actually
4  believed him, because he gave me no reason not to.
5    Q.   Okay.  What about a woman named Dejani?
6    A.   Yeah, I know Dejani.
7    Q.   Do you know who she is?
8    A.   Yeah.
9    Q.   And isn't it true that you guys got into
10  fights over Dejani?
11    A.   We got in arguments.
12    Q.   Okay.  And didn't you get in arguments
13  over Green Eyes?
14    A.   No, we did not.
15    Q.   Okay.  Were you ever jealous that Green
16  Eyes maybe wanted Joe's affection?
17    A.   No.
18    Q.   Okay.  And what about Leticia?  Do you
19  know that woman?
20    A.   Leticia?
21    Q.   Leticia.
22    A.   Yeah, I know her.  Was I jealous over her?
23  No.
24    Q.   Did you have a volatile relationship,
25  where you loved him, and then you'd leave him; then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  you loved him, then you'd leave him?

 2       A.   No, it wasn't that I loved him and leave

 3  him.  We had our issues, like every other couple.

 4       Q.   Well, isn't it true that you were very

 5  jealous of him?

 6       A.   No.

 7       Q.   And isn't it true that he really hurt you?

 8       A.   No.  Actually, he really didn't.

 9       Q.   And isn't it true that this is one way of

10  you getting back at him?

11       A.   No, it is not true.

12       Q.   Because the pain cut very deep; isn't that

13  true?

14       A.   No, it's not.

15       Q.   Well, he was the only man that was going

16  to marry you, and you loved him; isn't that true?

17       A.   No, it's not.

18            MS. TORRACO:  Thank you, Your Honor.  I

19  have no further questions.

20            THE COURT:  Thank you, Ms. Torraco.

21            Any other defendant have any further

22  cross-examination of Ms. Ramirez?

23            All right.  Mr. Beck, you have redirect of

24  Ms. Ramirez?

25            MR. BECK:  I do, Your Honor, thank you.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Mr. Beck.
 2                   REDIRECT EXAMINATION
 3  BY MR. BECK:
 4       Q.   Ms. Ramirez, Mr. Benjamin asked you
 5  whether it's true that you came here fully expecting
 6  a benefit.  Do you remember that?
 7       A.   Yes, I do remember that.
 8       Q.   Why are you here testifying today?
 9       A.   Because I got subpoenaed.  And because I
10  am trying to take care of my stuff on my own, and I
11  am going to pretrial and checking in four times a
12  week trying to get my stuff right.  I'm doing
13  everything I can to cooperate with everything that's
14  asked of me so I can get my stuff right and get my
15  life figured out.
16       Q.   And who subpoenaed you to come and
17  testify?
18       A.   I'm figuring the Court did.
19            MR. BENJAMIN:  Objection, Your Honor,
20  misstatement of the issue.
21            THE COURT:  Why don't you make it clear
22  for the jury.
23  BY MR. BECK:
24       Q.   Did the federal government subpoena you?
25       A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Being the prosecution?

 2        A.    Yes.

 3        Q.    So when you're subpoenaed, are you forced

 4   to come and testify?

 5        A.    I wouldn't say forced.  But I mean, it is

 6   required to testify, and I'm not trying to get any

 7   more warrants or in any more trouble than I already

 8   got myself into.

 9        Q.    Do you expect to receive any kind of

10   benefit for testifying here today?

11        A.    No, I don't.

12        Q.    Ms. Torraco asked you a lot of questions

13   about your relationship with Mr. Gallegos.  Why did

14   you --

15              MS. TORRACO:  Objection.  I ask for

16   clarification of which Gallegos you're talking

17   about.

18              MR. BECK:  Sure.

19   BY MR. BECK:

20        Q.    Did you have a relationship with Andrew

21   Gallegos?

22        A.    No.

23        Q.    A romantic relationship?

24        A.    No.

25        Q.    So did she ask you about your relationship
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    with Joe Gallegos?

 2         A.   Yes.

 3         Q.   And why did you break up with

 4    Mr. Gallegos, Mr. Joe Gallegos?

 5         A.   In the end, I broke up with him, and I --

 6    I tried hard to make it work with him, because he

 7    really did take care of me.  He did.  In the end I

 8    broke up with him because I was scared of him.

 9              MR. BECK:  No further questions, Your

10    Honor.

11              THE COURT:  Thank you, Mr. Beck.

12              All right.  Ms. Ramirez, you may step

13    down.

14              Is there any reason that Ms. Ramirez

15    cannot be excused from the proceedings?  Mr. Beck?

16              MR. BECK:  No, Your Honor, she may be

17    excused.

18              THE COURT:  Any defendant object to her

19    being excused?

20              MR. BENJAMIN:  No objection.

21              THE COURT:  All right.  You are excused

22    from the proceedings.  Thank you for your testimony.

23

24

25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  UNITED STATES OF AMERICA

2  STATE OF NEW MEXICO

3

4                    C-E-R-T-I-F-I-C-A-T-E

5      I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

6  Official Court Reporter for the State of New Mexico,

7  do hereby certify that the foregoing pages

8  constitute a true transcript of proceedings had

9  before the said Court, held in the District of New

10 Mexico, in the matter therein stated.

11     In testimony whereof, I have hereunto set my

12 hand on this 17th day of May, 2018.

13

14                    _____

15                    Jennifer Bean, FAPR, RMR-RDR-CCR
                       Certified Realtime Reporter
16                    United States Court Reporter
                       NM Certified Court Reporter #94
17                    333 Lomas, Northwest
                       Albuquerque, New Mexico 87102
18                    Phone:        (505) 348-2283
                       Fax: (505) 843-9492
19                    License expires:  12/31/18

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



 , Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com