**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                        CRIMINAL NO. 15-CR-4268-JB

BRANDY RODRIGUEZ

      Defendant.

**SENTENCING MEMORANDUM FOR DEFENDANT BRANDY RODRIGUEZ REQUESTING A SENTENCE AT THE LOW END OF THE GUIDELINE RANGE**

      COMES NOW Defendant Brandy Rodriguez, by and through counsel, Jerry A. Walz, Walz and Associates, P.C., and hereby submits this Sentencing Memorandum, requesting a sentence at the low end of the guideline range of 96 months identified in her plea agreement [Doc.1830], and respectfully requests the Court to take into consideration the information contained herein at the time of Defendant's sentencing.

**I.    PROCEDURAL BACKGROUND**

      The defendant was arrested on March 29, 2016, and released March 31, 2016, pursuant to rigid pretrial conditions of release. Defendant Rodriguez was then indicted on March 9, 2017 in a Second Superseding Indictment for violation of three counts as follows:

> **Count 14:** Violent Crimes in Aid of Racketeering (Conspiracy to Murder), 18 U.S.C. § 1959(a)(5); Not more than 10 years imprisonment/ $250,000 fine/3-year TSR/$100 SPA/(Class C Felony)
>
> **Count 15:** Violent Crimes in Aid of Racketeering (Attempted Murder, Assault Resulting in Serious Bodily Injury and Assault with Dangerous Weapon) and Aiding and Abetting, 18 U.S.C. § 1959(a)(3), 18 U.S.C. § 1959(a)(5), and 18 U.S.C. § 2; Not more than 20 years imprisonment/
> $250,000 fine/3-year TSR/$100 SPA/(Class C Felony)

**Count 16:** Witness Tampering and Aiding and Abetting, 18 U.S.C. § 1512 and 18 U.S.C. § 2/Not more than 30 years imprisonment/$250,000 fine/3-year TSR/$100 SPA/(Class B Felony)

Defendant pled guilty to Counts 14, 15 and 16 of the Second Superseding Indictment on February 23, 2018, and was taken into immediate custody following her plea. Importantly during the period that Defendant was on conditions of release, she found and maintained stable employment at Donut Mart, and for the first time in her life she received proper psychiatric services from Dr. Asha Pollem, counseling, and other services by St. Martins[1]. She was provided psychiatric and counseling services and prescription drugs including, but not limited to the following: Sertraline, Trazodone, Ambilify, Amitriptyline and Aripiprazole. She also was eligible and placed on Medicaid. She took frequent regular and unscheduled drug and alcohol tests conducted by U.S. Probation. She also served in the capacity as mother for her children, Joseph Dominguez (23), Margarito Dominguez (21), and Alexandria Estrada (17), who were still living at home and under her care and guidance. She resumed her church attendance and prayed on a daily basis. This activity was on her own.

Based on her personal history, social history, long term abuse of alcohol and drugs, this process and her willingness to get well mentally and physically is nothing short of remarkable, and shows her faith and determination to mend her life.

On February 23, 2018, Defendant plead guilty to Counts 14-16 of the Second Superseding Indictment pursuant to a formal, written Plea Agreement. Accordingly, the parties agree that pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Defendant's stipulated to sentencing range is 96-144 months should the Court accept the plea agreement. This agreement

---

[1] Two of her counselors, Blanca Montes and Jenna Dill, have offered to provide affidavits and/or sworn testimony on behalf of Ms. Rodriguez regarding her rehabilitation efforts.

takes into account Defendant's acceptance of responsibility with no further reduction to occur.  *See Plea Agreement, Doc. 1830, paragraph 15a, under the heading Stipulations.*  Further stipulations of the plea agreement are as indicated in paragraphs 5-10 of the PSR. *See presentence investigation report (PSR), Doc. 2361, paragraphs 5-10.*

The Probation and Pretrial Services Office filed a PSR on August 8, 2018 [Doc. 1830]. Pursuant to the PSR, the charges brought in Counts 14, 15 and 16 are grouped for guideline calculation purposes and the base offense level based on the charges brought against Defendant is offense level 33.  The base offense level was increased by two levels based on the injuries sustained by the victim and an additional two levels based on the victim being physically restrained in the course of the offense.  This brings the subtotal of the adjusted offense level to level 37.  After a reduction of three levels for acceptance of responsibility, the Total Offense Level is level 34. Defendant is assigned 11 criminal history points which would result in a criminal history category V.  Based on the Total Offense Level of 34 and the Criminal History Category of V, the recommended guideline imprisonment range as computed by Probation is 235 to 293 months.  The maximum statutory term of imprisonment for Count 14 is ten years, for Count 15 is 20 years and for Count 16 is thirty years.  *See* PSR ¶ 98-99, page 26.  The Probation Office believes that a sentence within the stipulated sentencing range is warranted in this case.  *See* PSR ¶ 122, page 30.

While Defendant agrees with Probation's computations and is precluded from seeking downward departure or variance, pursuant to the terms of the plea agreement [Doc. 1830], Defendant does respectfully request this Court to sentence Defendant at the low end of the stipulated guideline range pursuant to *United States v. Booker*, 543 U.S. 220, 234 (2005) and the sentencing goals as set forth in 18 U.S.C. § 3553.  A sentence at the low end of the guideline range of 96 months will meet the requirements and not be more than what is necessary to meet the

sentencing goals as set forth in 18 U.S.C. § 3553.  While Defendant has what appears to be a lengthy criminal history, a closer examination of that criminal history shows this conduct was incurred by Defendant when she lived on the streets without assistance and treatment for psychiatric illness, and as a result did not make sound decisions or associate with individuals who could keep her out of trouble, however she is not a violent criminal.

In order to assist the Court in determining why the Court should sentence Defendant at the low end of the guideline range, attached as Exhibit A filed under seal are the medical records and evaluations performed by St. Martin's Hospitality Center, Presbyterian, and Agave Health. However, it is believed there are additional medical records, but are unavailable despite defense counsel's continuing efforts to obtain them, but the St. Martins records provide a good overview of her medical and psychological conditions.

## II.  ARGUMENT

The U.S. Sentencing Guidelines are advisory. *See United States v. Booker*, 543 U.S. 220, 234 (2005). Under the Supreme Court ruling in *United States v. Rita*, 2007 WL 1772146 (June 21, 2007), for appellate purposes, a reviewing court may accord a properly calculated sentence to have a presumption of reasonableness, *Id.*, 2007 WL 1772146 at *11.  A district court, on the other hand, cannot presume reasonableness, but in determining a sentence, it must conduct an analysis using both the Guidelines and the sentencing statutes.  To wit: both the sentencing judge and the (Sentencing) Commission "are carrying out the same basic § 3553(a)'s objectives." *Id.*, at *9-*11. Hence, the district court should impose sentences within the calculated Guideline range when a departure is not appropriate because Guideline sentences prevent unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) and the Sentencing Commission policies articulated in

the Guidelines are sound and reasoned. However, the Guidelines are not the end of the analysis and further factors must be taken into account.

After both *Booker* and *Rita,* the Supreme Court left intact all other provisions of the Sentencing Reform Act, including 18 U.S.C. § 3553(a). Section 3553(a) continues to require sentencing judges to take certain factors into account when imposing sentence, including "the kinds of sentence and the sentencing range established" by the Guidelines. 18 U.S.C. § 3553(a)(4).

### A. DEFENDANT SHOULD BE SENTENCED TO THE LOW END OF THE SENTENCING RANGE

Taking into account the provisions of 18 U.S.C. § 3553, a reasonable sentence under *Booker* is one that "reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence to criminal conduct" and "protect[s] the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B), (C); *Booker*, 543 U.S. at 261-62. However, pursuant to Federal Rules of Criminal Procedure Rule 11(c)(1)(C) the prosecutor and the Defendant may agree that a specific term of sentence or sentencing range may be appropriate. *Freeman v. United States*, 564 U.S. 522, 529, 131 S. Ct. 2685, 2692, 180 L. Ed. 2d 519 (2011), *holding modified by Hughes v. United States*, 138 S. Ct. 1765 (2018) Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion. "In deciding whether to accept an agreement that includes a specific sentence, the district court must consider the Sentencing Guidelines. The court may not accept the agreement unless the court is satisfied that (1) the agreed sentence is within the applicable guideline range; or (2)(A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity. United States Sentencing

the Guidelines are sound and reasoned. However, the Guidelines are not the end of the analysis and further factors must be taken into account.

After both *Booker* and *Rita,* the Supreme Court left intact all other provisions of the Sentencing Reform Act, including 18 U.S.C. § 3553(a). Section 3553(a) continues to require sentencing judges to take certain factors into account when imposing sentence, including "the kinds of sentence and the sentencing range established" by the Guidelines. 18 U.S.C. § 3553(a)(4).

### A. DEFENDANT SHOULD BE SENTENCED TO THE LOW END OF THE SENTENCING RANGE

Taking into account the provisions of 18 U.S.C. § 3553, a reasonable sentence under *Booker* is one that "reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence to criminal conduct" and "protect[s] the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B), (C); *Booker*, 543 U.S. at 261-62. However, pursuant to Federal Rules of Criminal Procedure Rule 11(c)(1)(C) the prosecutor and the Defendant may agree that a specific term of sentence or sentencing range may be appropriate. *Freeman v. United States*, 564 U.S. 522, 529, 131 S. Ct. 2685, 2692, 180 L. Ed. 2d 519 (2011), *holding modified by Hughes v. United States*, 138 S. Ct. 1765 (2018) Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion. "In deciding whether to accept an agreement that includes a specific sentence, the district court must consider the Sentencing Guidelines. The court may not accept the agreement unless the court is satisfied that (1) the agreed sentence is within the applicable guideline range; or (2)(A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity. United States Sentencing

Commission, Guidelines Manual § 6B1.2(c) (Nov. 2016) (USSG)." *Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018). Further, "Rule 11(c)(1)(C) makes the parties' recommended sentence binding on the court 'once the court accepts the plea agreement.'" *Freeman*, 564 U.S. *at* 529.

Federal sentencing law requires the district judge in every case to impose "a sentence sufficient, but not greater than necessary, to comply with" the purposes of federal sentencing, in light of the Guidelines and other § 3553(a) factors. 18 U.S.C. § 3553(a). *Id.* The other sentencing factors of 18 U.S.C. § 3553(a)(2) that the Court shall consider are the need for the sentence imposed:

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) To afford adequate deterrence to criminal conduct;

(C) To protect the public from further crimes of the defendant; and

(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

### a. NATURE AND CIRCUMSTANCES OF THE OFFENSE

The nature and circumstances of the current offense are well documented in the Admission of Facts in the Plea Agreement as well as the PSR and it is clear that this entire offense revolves around co-defendant Joe Gallegos. Defendant as a youth was taken off the streets from time to time by co-defendants Joe Gallegos and his brother, Andrew Gallegos, and was provided basic food and shelter. In fact, she and Andrew had a child together who was placed for adoption. However, she continued primarily with her street living, and referred to Joe Gallegos as "Pappa

Joe". He became the closest to a father figure that she ever had. If Joe Gallegos did anything good in his life, it was trying to take Brandy Rodriguez off the streets.

### b. THE HISTORY AND CHARACTERISTICS OF DEFENDANT

The PSR sets forth significant history about Ms. Rodriguez. See paragraphs 73 through 97. However, this history on cold type does not really capture the personal hardships that Ms. Rodriguez has endured throughout her life. Many of her situations were caused by her mere station in life and she has had to live in circumstances almost unimaginable to most of us who live in the mainstream.

Ms. Rodriguez was born on May 8, 1977. Her father, a Mexican National, was arrested often and would constantly drag the family back and forth to Mexico between stints in prison. She had a very unstable home life attending more than ten different elementary schools before she left home for good at 12 years of age. Defendant's father was an alcoholic and a mean and jealous drunk, often physically abusing Defendant's mother in front of Defendant and her siblings, though he did not abuse the children. Defendant's mother was also an alcoholic often being associated with different men or imprisoned for various minor crimes, mostly shoplifting. Defendant's mother was killed in an auto accident. At one point, because of jealousy and alcohol, Defendant's father was shot in the face by one of her mother's boyfriends when Defendant's father had returned to pick-up the children. Defendant's father was in a coma for 6 months. Defendant's father now resides in Mexico.

There was continuous drug and alcohol abuse within her family that she did not create. She could not choose her parents or family.

It was during a period of incarceration of her mother, and her father being in Mexico, that Defendant and her younger sister first ran away and began life on the streets. Even though only

7

12, she and her younger sister, Maggie, ran away from home to live on the streets in the Los Lunas and Belen, New Mexico area. At times they would beg for money, break into and sleep in vacant homes and/or homes for sale, or sleep at the homes of various friends they met on the street. They would accept and take commodities and services from various church groups. When things got really rough, they were forced to steal food, at times alcohol, and other basic commodities including feminine hygiene products and even toilet paper.

Defendant has had no consistent schooling, no real friends other than street people, and a shared closeness with her younger sister who also lived with her on the streets but who was tragically killed in an auto accident in 2016. Living on her own, Ms. Rodriguez did not attend or graduate from high school, nor did she ever receive her GED or receive any other form of education.

She fell through the cracks and no one really cared with the exception of "Pappa Joe" to help her who would offer food and shelter and at times send people to find her when she disappeared on an alcohol fueled bender.

As Defendant continued her life's journey, her drug of choice became alcohol, and by the time of the incident for which she plead, she was consuming daily at a minimum three fifths of alcohol to numb the mental and physical pain she was enduring.

Defendant was married to David Rodriguez for two years. During this time, they moved to Phoenix, Arizona and both worked at Northern Arizona University in the cafeteria. They had no children and were constantly fighting. Defendant's only marriage ended in divorce after two years. Defendant moved back to Los Lunas and she returned to the streets living in Los Lunas, Belen, and at times Albuquerque and staying with friends as she could and working various jobs.

Defendant has had four children with three different fathers as identified in the PSR in paragraphs 77-80. Defendant has a close relationship and maintains constant contact with her three older children. She lost custody of her youngest child during a period of incarceration when the child was age three and the child has subsequently been adopted. Defendant has no contact with her youngest child.

By her own admission, Defendant was consuming up to three fifths of alcohol daily, and as noted in the PSR, also commenced using other drugs. The seriousness of her mental health and practice of self-medication truly came to light when she started receiving services from St. Martins while on conditions of release. Defense counsel obtained, and forwarded to U.S. Probation nearly 75 pages of records relating to defendant generated at St. Martins, Presbyterian, and Agave, which are filed under seal as Exhibit A.

She was diagnosed and treated for the following: alcohol dependence, stimulant dependence, chronic post-traumatic stress disorder, borderline personality disorder, among others. Her medication list included, but was not limited to: Sertraline, Trazodone, Ambilify, Amitriptyline and Aripiprazole.

For the first time in her life, her psychiatric illness, acute alcoholism, drug abuse, bipolar illness, among others, had been diagnosed and treated. Even those familiar with alcohol abuse find it hard to fathom that a woman of her age, build and weight, could consume three fifths of liquor per day and still function at any level. As Ms. Rodriguez has indicated to counsel, she would need the first fifth to just get up, the second fifth to feel normal, and the third fifth to get high.

It should be noted that she was under the influence of alcohol at the time of the crime to which she pled. She was involved in that event, in part, because the victim, had been having a relationship with a female co-defendant, and Brandy was upset that this person was involved with

9

the victim. This provided personal motivation for her to get involved, as this victim was having a relationship with "Pappa Joe's" woman, as Pappa Joe was then incarcerated. Again, she viewed Pappa Joe as one of the more stable persons in her life, and viewed him as a father figure. The government as agreed in her plea agreement, could have proven beyond a reasonable doubt, that this assault on the victim was gang related, but there were many other significant factors at play.

### c. THE NEED FOR THE SENTENCE IMPOSED TO PROMOTE RESPECT FOR THE LAW, PROVIDE JUST PUNISHMENT, ADEQUATE DETERRENCE, AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT

Defendant has been in continuous custody since she plead guilty on February 23, 2018. She has been separated from her children during this time, except for limited visitations in Las Cruces. This isolation from the few people she loves and who love her in itself has been horrific punishment and more than an adequate deterrence for future criminal conduct. Defendant has not had this long of an incarceration period in the past and does not need to serve more than eight years to make this point. It is not necessary to sentence Defendant to more than 96 months incarceration to meet these goals in sentencing.

### d. THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES BETWEEN DEFENDANTS WHO HAVE COMMITTED SIMILAR CRIMES

The individual Santos Gonzales, who actually struck the victim with a machete was sentenced to 96 months. The primary wound to the victim was solely from the machete strike. No specific physical damage to the victim can be attributed to Defendant Rodriguez even though she admitted to kicking the victim. While the assault was ongoing, she actually exited the area to go into the back yard to speak with a woman who was present with the victim, and was surprised

when she learned of the gravity of the assault as the victim was able to escape the assault from the two male assailants and ran through the yard where Ms. Rodriguez was present.

### III.   CONCLUSION

Defendant Brandy Rodriguez has demonstrated while on pretrial release that while acknowledging the seriousness of her crime, a sentence of more than 96 months is more than what is necessary or warranted to meet the sentencing goals as set forth in Section 3553 based on the facts of this case and her life's history.

Defendant Rodriguez requests this Court impose a sentence of 96 months. Certainly, a sentence of eight years is a substantial enough sentence to fulfill the sentencing goals of 18 U.S.C. § 3553.

Should Defendant Rodriguez be given a lengthier sentence, there is a good probability that she will lose close contact with her three older children. Defendant Rodriguez would have no realistic prospect to be successfully re-integrated into society. Eight years is a long time, especially given the fact the primary assault and battery resulted from the actions of acknowledged SNM gang member Santos Gonzales as previously described.

Brandy Rodriguez has lived a very hard life. Her most stable life period occurred while on conditions of release when she held a job, received counseling, and received prescribed medications for her mental issues.

Respectfully, Defendant Rodriguez requests a sentence at the low end of the guidelines per her plea agreement.

Respectfully Submitted,

WALZ AND ASSOCIATES, P.C.

*/s/ Jerry A. Walz*
Jerry A. Walz, Esq.
*Attorney for Defendant*
133 Eubank Blvd. NE
Albuquerque, NM 87123
(505) 275-1800
jerryawalz@walzandassociates.com

   **I HEREBY CERTIFY** that on the 7th day of September, 2108, I filed the foregoing electronically through the CM/ECF system, which caused all concerned parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

/s/ Jerry A. Walz
Jerry A. Walz, Esq.