1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4                    Plaintiff,

5        vs.            NO:  15-CR-4268 JB

6    ANGEL DELEON, et al.

7

8        Transcript of excerpt of testimony of

9                Richard Williamson

10        April 27, 2018, and April 30, 2018

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

2

1                           I N D E X

2    EXAMINATION OF RICHARD WILLIAMSON

3    By Ms. Armijo                                      46

4    By Mr. Benjamin                                    72

5    By Ms. Torraco                                    170

6    By Ms. Armijo                                     234

7                       EXHIBITS ADMITTED

8    Defendants' ED Admitted                            59

9    Government 331 Admitted                            93

10   Government 423 Admitted                           118

11   Government 428 Admitted                           121

12   Government 908, 909 and 910 Admitted               59

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                             1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                    e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Ms. Armijo, does
 2   the Government have it next witness or evidence?
 3              MS. ARMIJO:  Yes, Your Honor, Richard
 4   Williamson.
 5              THE COURT:  Mr. Williamson, if you'll come
 6   up and stand next to the witness box, my courtroom
 7   deputy, Ms. Bevel, will swear you in.
 8                   RICHARD WILLIAMSON,
 9       after having been first duly sworn under oath,
10       was questioned, and testified as follows:
11              THE CLERK:  Please be seated, state your
12   name, and spell your last name for the record.
13              THE WITNESS:  My name is Richard
14   Williamson.  W-I-L-L-I-A-M-S-O-N.
15              THE COURT:  Mr. Williamson.
16              Ms. Armijo?
17              MS. ARMIJO:  Thank you, Your Honor.
18                   DIRECT EXAMINATION
19   BY MS. ARMIJO:
20       Q.   And, sir, how are you employed?
21       A.   Currently I'm a sergeant for the New
22   Mexico State Police Department of Public Safety.
23       Q.   And how long have you worked for -- did
24   you say for the New Mexico Department of Public
25   Safety?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.
 2        Q.    Okay.  Now, is the New Mexico Department
 3   of Public Safety in any way related to the New
 4   Mexico State Police?
 5        A.    Yes.
 6        Q.    Okay.  Explain that to the jury.
 7        A.    The State Police is a bureau of the
 8   Department of Public Safety, along with different
 9   investigative bureaus.
10        Q.    And how long have you worked overall for
11   the New Mexico Department of Public Safety?
12        A.    I've been in law enforcement for 17 years.
13   All but three and a half of that have been with the
14   State Police.
15        Q.    And what was your current -- what was your
16   position back on November 12th of 2012?
17        A.    I was serving as an agent in the Criminal
18   Investigations Bureau.
19        Q.    And where were you assigned?
20        A.    The Albuquerque office.
21        Q.    And what areas did the Albuquerque office
22   cover back then?
23        A.    Bernalillo County, Valencia County,
24   Socorro County, McKinley County, Cibola County.
25        Q.    Would the calls -- and how did it work?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN &ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Would you be called out if there was an incident

2  that required investigation?

3       A.   Yes.  We were on call 24/7.

4       Q.   And would that include homicide

5  investigations?

6       A.   Yes, ma'am.

7       Q.   Do you recall if at some point on

8  November -- in the evening hours, on November 12th

9  of 2012, if you were called out to go in and

10  investigate an area?

11       A.   Yes, I was.

12       Q.   Okay.  Do you recall what time that was

13  that you received a call?

14       A.   I believe around 10:45 in the evening.

15       Q.   And who were you called by?

16       A.   My sergeant at that time.

17       Q.   And is that how it works?  That a sergeant

18  would be called first, and the sergeant would

19  determine who all would be called out?

20       A.   Yes.

21       Q.   And where did you -- or where were you

22  told to respond to?

23       A.   Near the river on Highway 60, just past

24  Bernardo.

25       Q.   And what is that area, in general?

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                        1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      A.    It's a bosque.  There is a bosque on both

2   sides of the river.

3      Q.    And what do you mean by "bosque"?

4      A.    A thickly wooded area with salt cedars and

5   cottonwoods on both sides of the river.

6      Q.    And do you know what the nature of the

7   call-out was?

8      A.    I was advised it was for a homicide

9   investigation.

10     Q.    And what time did you arrive at the scene?

11     A.    I don't recall the exact time that I

12   arrived.  I believe it took me about 40 minute to

13   get there, though.

14     Q.    When you arrived, do you normally wait for

15   other investigators to arrive with you, and then

16   assignments are made?

17     A.    Yes.

18     Q.    And is that what happened in this case?

19     A.    Yes, ma'am.

20     Q.    And what assignment were you given?

21     A.    Well, I was given the assignment to be the

22   case agent when I was called.

23     Q.    Okay.  And Sergeant, can you explain what

24   the case agent is?

25     A.    The case agent directs other agents that

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                                         Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 843-9492                                                            FAX (505) 843-9492
                                                                                1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE                                                   e-mail: info@litsupport.com

1    are there to assist them, and also to take direction

2    from his supervisor, who also gives some directions.

3         Q.   All right.  And would you have, for

4    instance, been in charge of collecting evidence, or

5    was that left to somebody else?

6         A.   That was left to somebody else, generally.

7         Q.   And would taking photographs -- would that

8    also be left to somebody else?

9         A.   Yes, ma'am.

10        Q.   But as far as the general investigation,

11   that would have been you, as far as the point

12   person?

13        A.   Yes, for gathering information.

14        Q.   Now, what did -- and I believe we -- the

15   jury has already seen at least one picture of the

16   scene.  What do you recall seeing when you arrived

17   there?

18        A.   Well, when I arrived on Highway 60, in

19   that area, there was a deputy directing us down that

20   road that went along a canal, ditch banks.  And then

21   shortly down that road, there was other units that

22   were parked, directing us down to inside the bosque,

23   down a sandy single-lane road that ended there,

24   where there was still some fire response vehicles.

25        Q.   And I'm going to display what's already

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   been admitted as 359.

 2          Are you familiar with this scene?

 3      A.   Yes, ma'am.

 4      Q.   And is this the area that you responded

 5   to?

 6      A.   Yes, ma'am.

 7      Q.   Now, in addition to New Mexico State

 8   Police, who else responded?

 9      A.   There was the volunteer fire department

10   that had responded there.  And the Socorro County

11   deputies were there, also, first on scene.

12      Q.   Do you know which volunteer fire

13   department responded?

14      A.   I want to say Veguita.

15      Q.   Veguita?

16      A.   Veguita.

17      Q.   Okay.  And do you know if they were the

18   ones that initially responded?

19      A.   Yes.

20      Q.   Yes, you know, and yes, they were, or --

21   I'm sorry?

22      A.   The ones that were still there when I

23   arrived were the ones who had initially responded.

24      Q.   Okay.  And so that included that fire

25   department and which other?  I'm sorry, you said the



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  Veguita Fire Department, and who else was there when

2  you arrived?

3      A.   The Socorro County deputy.

4      Q.   Okay.  And did you receive information

5  from them and then start your own investigation?

6      A.   Yes, ma'am.

7      Q.   Now, at some point, in general, what was

8  going on that evening for you, as far as beginning

9  this investigation?

10     A.   You mean upon my arrival?

11     Q.   Yes.  I mean, what sort of things did you

12  do to assist you with your investigation?

13     A.   Okay.  Well, first would be, I interviewed

14  two of the firefighters that had responded, to get

15  their statements.  Two of them had already been

16  interviewed by another agent.  And then we did a

17  walk-through with the -- a brief walk-through so

18  they could show us what they had seen.  We did a

19  walk-through with the crime scene team --

20     Q.   Okay.

21     A.   Other agents then began to arrive that the

22  sergeant had called out, and they needed to assist

23  in the investigation.  We had a briefing, I believe

24  about 12:45, and different assignments were given.

25     Q.   So 12:45, that would have been basically

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    at quarter to 1:00 in the morning the next day, on

2    the 13th?

3          A.    Yes, ma'am.

4          Q.    Okay.  And assignments were given?

5          A.    Yes.

6          Q.    All right.  And when you say you did a

7    walk-through, when you walked through, was that just

8    to basically get the general feel of what you were

9    looking at?

10         A.    Yes, ma'am.

11         Q.    Now, after that, did you -- what did you

12   then do after that?  I assume that then assignments

13   were made, and you already indicated that other

14   people were assigned to process the scene; is that

15   correct?

16         A.    Well, first they were -- we assigned an

17   agent to obtain a search warrant.

18         Q.    Okay.  What was the purpose of the search

19   warrant?

20         A.    For the vehicle.  And it was state

21   property, so we didn't have to have a search warrant

22   or anything to be there.  But to process the

23   vehicle, we always obtain a search warrant.

24         Q.    And was that something that was done?

25         A.    Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1      Q.   And is that something that is
 2  customarily -- did you even know, at that point in
 3  time, who owned the vehicle?
 4      A.   No.
 5      Q.   So you were unable to obtain consent from
 6  anyone to search the vehicle?
 7      A.   Correct.
 8      Q.   So did you actually receive, then, a
 9  search warrant to search the vehicle?
10      A.   Yes, ma'am.
11      Q.   And then what was the next step?
12      A.   Then the crime scene -- we began to -- we
13  did another walk-through with them, you know,
14  getting more information from the crime scene, from
15  the team.  They put down markers, identified some
16  things in order to be sure and gather...
17      Q.   And then at some point that evening -- I
18  should say, early morning, did you learn whose
19  vehicle that was?
20      A.   Not until about 8:30 next morning -- or
21  that morning.
22      Q.   And how did you learn whose vehicle that
23  was?
24      A.   The victim's girlfriend, Amber Sutton,
25  arrived at the crime scene while we were doing the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   grid search of any other evidence in the area, not

 2   right real close, but the perimeter.  And so it was

 3   Agent Lucero went up to the road and spoke with her

 4   and got information from her.  She stated, you know,

 5   that they had heard on the scanner or the news about

 6   the discovery, and her boyfriend had been missing

 7   that night.  And the description she gave us matched

 8   similarly to what we had found there.

 9        Q.   So that was 8:30, approximately, on the

10   13th of November?

11        A.   Yes, ma'am.

12        Q.   Now, had the body already been removed, if

13   you know?

14        A.   No, it had not.

15        Q.   And you said you were searching the

16   perimeter; is that correct?

17        A.   Correct.  We did that.

18        Q.   A grid search?

19        A.   A grid search.

20        Q.   Okay.  Can you explain to the jury what

21   the purpose of that was?

22        A.   Just to determine if there was any other

23   evidence that might have been thrown into the bushes

24   or the nearby areas that would be significant or

25   have any evidentiary value.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.    And then based on that information, did

2  you then try and -- did you sit down or did anyone

3  sit down and interview Amber Sutton to figure out

4  if, in fact, that was her boyfriend?

5      A.    Agent Lucero did.  I believe they met back

6  at the State Police office in Los Lunas.

7      Q.    And did you, in fact, determine that was,

8  in fact, Adrian Burns?

9      A.    Yes.

10      Q.    Based upon that information, did the

11  investigation continue?

12      A.    Yes, it did.

13      Q.    Okay.  And what happened?

14      A.    She advised us his activities --

15      Q.    I don't want to get into what she said.

16  But did she advise you of things that led to further

17  steps in your investigation?

18      A.    Well, the next steps of our investigation,

19  of course, would be to investigate the victimology,

20  who the victim was, where he had been, who he had

21  been with, what he had been doing, and that's what

22  we proceeded to do.

23      Q.    Okay.  And so did you, in fact, do that?

24      A.    Yes.

25      Q.    Okay.  And what steps did you take?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1        A.    We tried to contact the people that we

2   believed he had spent -- the last time anyone had

3   communications with him.

4        Q.    Okay.  And who did you try to contact?

5        A.    Joseph and Andrew Gallegos.

6        Q.    And by contacting -- and when was this?

7        A.    I don't recall.

8        Q.    Do you recall what day?

9        A.    I believe it would have been on that

10  Tuesday, but --

11       Q.    Okay.  So November 12 was a Monday

12  evening -- or when you were called out was a Monday

13  night?

14       A.    Yes.

15       Q.    And so then the next day would have been a

16  Tuesday.  So was it that day that you were trying to

17  contact Joe and Andrew Gallegos?

18       A.    I believe so, but I don't recall when

19  exactly we first made that attempt.

20       Q.    And what were your attempts to contact

21  them?

22       A.    To go by their residence.

23       Q.    And do you recall the address of their

24  residence?

25       A.    Number 4 Erin Court.

SANTA FE OFFICE                                                                MAIN OFFICE
119 East Marcy, Suite 110                                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                                       Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                        FAX (505) 843-9492
                                                                              1-800-669-9492
                                                                       e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   And did you, in fact, go by there?

2      A.   Yes.

3      Q.   And were they home?

4      A.   I don't believe so.

5      Q.   Okay.  And do you recall what day it was

6  that you first went by?

7      A.   I don't recall the exact day.  I'd have to

8  look at my report, I believe.

9      Q.   Did you go by -- at some point did you

10 obtain a search warrant for that location?

11     A.   Yes.

12     Q.   And when I say "you," I should actually

13 say your investigation?

14     A.   I assigned an agent to obtain a search

15 warrant, yes, ma'am.

16     Q.   And, in fact, did you receive a search

17 warrant?

18     A.   Yes.

19     Q.   Do you know when that was served?

20     A.   November 15.

21     Q.   Okay.  So that would have been Thursday?

22     A.   Okay.

23     Q.   If the 13th was a Tuesday, the 15th would

24 have been a Thursday?

25     A.   Yes.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Okay.  Now, how many times -- or how many
 2   times did you try and locate Joe and Andrew Gallegos
 3   before serving the search warrant?
 4        A.    I don't recall.
 5        Q.    Was it more than once?
 6        A.    Yes.
 7        Q.    And do you recall, in general, the
 8   attempts that you made?
 9        A.    No.  I think other agents that were in the
10   area, Agent Mowduk, Agent Cox, I had assigned other
11   people to surveil the area, or to watch for them and
12   interact with them.
13        Q.    And for purposes of your investigation,
14   were you ever able to contact them prior to
15   executing the search warrant?
16        A.    No, ma'am.
17        Q.    Now, when you served the search warrant at
18   that location, do you recall approximately what time
19   of day you started?  I mean, was it early in the
20   morning, or the afternoon, or the evening?
21        A.    Early evening.
22        Q.    In the early evening hours of the 15th?
23        A.    Yes, ma'am.
24        Q.    And were you present for that?
25        A.    Yes, ma'am.
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1        Q.   And were other agents assigned, as far as
 2   the crime scene, and collecting evidence, and taking
 3   pictures?
 4        A.   Yes, ma'am.
 5        Q.   Did you also search, besides the
 6   residence, any of the vehicles that were there?
 7        A.   Yes.
 8        Q.   And were you, in particular, looking for
 9   any vehicle?  I mean, when you were looking for the
10   Gallegoses, was there a particular vehicle that you
11   were looking for?
12        A.    Not at that time.  I think we had been
13   told what they drove.  We may have even looked that
14   up already, like, through the database and whatnot.
15        Q.   But you still had not had any contact with
16   them?
17        A.   No.
18        Q.   Now, when the search warrant was executed,
19   do you know if there was anybody there; do you
20   recall?
21        A.   There was.
22        Q.   And who was that?
23        A.   Karen Cartwright and Jason Van Veghel.
24        Q.   And they were present at the residence?
25        A.   Karen was.  Jason had just left.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Now, at any point in time -- did that
 2   execution of the search warrant last just that
 3   evening, or did it go into the next day, if you
 4   recall?  Or I should say late evening into the early
 5   morning hours?
 6        A.    I'm sure it must have gone into the late
 7   hours of the next morning -- early hours of the next
 8   morning.
 9        Q.    At any point in time, did either Joe
10   Gallegos or Andrew Gallegos come back to the
11   residence?
12        A.    Not to make contact with us, no, ma'am.
13        Q.    Now, had you received arrest warrants for
14   anybody?
15        A.    At some point in the investigation, I had.
16   I don't recall when we received those arrest
17   warrants.  Those were applied for and obtained.
18        Q.    Okay.  And after the search of the
19   residence, at some point were efforts made to try
20   and locate Joe and Andrew Gallegos?
21        A.    Yes.
22        Q.    Okay.  What efforts were made?
23        A.    We had agents that were still surveilling
24   the area, and we made attempts to locate places
25   where we had heard they had a storage room, or
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    places they might be in Belen --

2        Q.    Okay.

3        A.    -- and in Los Lunas.

4        Q.    And did you have any luck at that point?

5        A.    Locating them?

6        Q.    Yes.

7        A.    No.

8        Q.    Now, in addition to looking for those

9    different places, did you use the media in any way?

10       A.    Yes.

11       Q.    And how did you use the media?

12       A.    I believe the news release was released,

13   through the public information office, of their

14   pictures and their warrant information.

15       Q.    And when their pictures were released, was

16   it, say, in reference to what they were wanted for?

17       A.    Yes, ma'am.

18       Q.    It was specific?

19       A.    I believe so.

20       Q.    At some point in time, did you learn

21   about -- did you receive information about their

22   arrest?

23       A.    Yes.

24       Q.    Did you have information about it?  And --

25   well, why don't you tell us:  How did you learn

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   about that?
 2        A.   I was notified that the Marshals office
 3   had located them in Albuquerque at the Imperial
 4   Motel, and I was called to that location, where I
 5   found them there and placed them in custody.
 6        Q.   Now, you said the Marshals office.  Were
 7   the U.S. Marshals assisting with their location?
 8        A.   Yes.
 9        Q.   And what day was it that they were
10   located?
11        A.   November 20.
12        Q.   And you said you responded to it?
13        A.   Yes.
14        Q.   What hotel was it, again?
15        A.   The Imperial Hotel on Central.
16        Q.   And when you responded to that location,
17   were they still at that location?
18        A.   Yes, ma'am.
19        Q.   And where were they located?
20        A.   Sitting outside the room, on the walkway
21   outside the room.
22        Q.   Was there anybody else there, as far as
23   being held as part of your investigation?
24        A.   Yes, ma'am.
25        Q.   Who else was being held?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    Joe's daughter, Angela Gallegos, and

2 Charlene Baldizan, a friend of Andrew.

3      Q.    And eventually were the four of them taken

4 for questioning?

5      A.    Yes, ma'am.

6      Q.    And where were they taken to?

7      A.    To the District 5 Albuquerque State Police

8 Headquarters on Carlisle.

9      Q.    Now, much like the original crime scene

10 and the search warrant scene at Number 4 Erin Court,

11 was there a team that was assigned to search the

12 hotel room and collect any evidence?

13      A.    Yes, ma'am.

14      Q.    Were there any vehicles that were also

15 searched?

16      A.    There was two vehicles there that were

17 searched.

18      Q.    What two vehicles were those; do you

19 recall?

20      A.    A white van that Andrew and Joseph had

21 been in for -- during that time; and also a black

22 Jeep Cherokee that, I believe, belonged to Angela.

23      Q.    And were search warrants obtained for the

24 vehicles?

25      A.    Yes.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                1-800-669-9492
                                                        e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1     Q.   Was a search warrant obtained for the room

2  that they were in?

3     A.   Yes, ma'am.

4     Q.   And did other members of your team go

5  ahead and process those areas?

6     A.   Yes, ma'am.

7     Q.   The two vehicles and the hotel room?

8     A.   Yes, ma'am, the crime scene technicians.

9     Q.   Now, you indicated that Angela, Charlene,

10 and Andrew Gallegos and Joe Gallegos were then taken

11 for questioning; is that correct?

12    A.   Yes, ma'am.

13    Q.   And did you have an opportunity to

14 question, then, Joe and Andrew Gallegos?

15    A.   Yes, ma'am, I did.

16    Q.   Do you see Andrew Gallegos in the

17 courtroom today?  And if you can't see from where

18 you are, if you need to stand up, you can, and I'll

19 get out of your way.

20    A.   Not that I can recognize, unless it's this

21 gentleman here in the gray suit.

22    Q.   Okay.  You pointed to a gentleman in the

23 gray suit?

24    A.   With a gray tie.

25    Q.   Oh, okay.  A gray tie.  What color is his



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                  1-800-669-9492
                                                           e-mail: info@litsupport.com

```
 1   shirt?

 2        A.   White shirt.

 3        Q.   Okay.  And is he wearing a jacket?

 4        A.   Yes, a jacket, a dark jacket with

 5   pinstripes on the shirt.

 6             MS. ARMIJO:  All right.  May the record

 7   reflect the identification of Andrew Gallegos?

 8             THE COURT:  Is that the gentleman you're

 9   identifying?

10             THE WITNESS:  Yes, Your Honor.

11             THE COURT:  The record will so reflect.

12   BY MS. ARMIJO:

13        Q.   All right.  And did you also interview Joe

14   Gallegos?

15        A.   Yes, ma'am.

16        Q.   And do you see Joe Gallegos in the

17   courtroom?  I'm sorry.

18        A.   Yes, ma'am.

19        Q.   Okay.

20        A.   He's standing in the back there in the

21   blue tie.

22        Q.   I didn't see him.  Was he standing?

23        A.   Briefly.

24        Q.   Oh, okay.

25             MS. ARMIJO:  May the record reflect
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  identification of Joe Gallegos?

2          THE COURT:  The record will so reflect.

3  BY MS. ARMIJO:

4      Q.    Now, which one was interviewed first?

5      A.    Joseph was interviewed first.

6      Q.    And who was he --

7          THE COURT:  Hold on.  Mr. Benjamin?

8          MR. BENJAMIN:  Your Honor, I would just

9  renew my previous objection to the statement, I

10  think, if I could at this time.

11          THE COURT:  I'm not recalling what your

12  objection is.

13          MR. BENJAMIN:  There was a prior motion to

14  suppress, Your Honor.

15          MS. ARMIJO:  Should we approach, Your

16  Honor?

17          THE COURT:  Yeah.

18          (The following proceedings were held at

19  the bench.)

20          THE COURT:  What are you looking to --

21          MR. BENJAMIN:  Your Honor, we've had -- I

22  was just objecting to it for the record.  We had a

23  prior motion for suppression.

24          THE COURT:  Oh, a suppression.  I thought

25  there was some evidentiary thing.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Nothing new.

 2              THE COURT:  All right.  It's preserved.

 3              MS. ARMIJO:  Your Honor, I don't think so.

 4   Can I remind the witness not to say that

 5   Mr. Gallegos invoked, just to save us?

 6              THE COURT:  Can she?

 7              MR. BENJAMIN:  I don't have a problem with

 8   that.

 9              THE COURT:  Why don't you stop by and tell

10   him not to talk about anything like that.

11              (A discussion was held off the record.)

12              (The following proceedings were held in

13   open court.)

14              THE COURT:  All right, Ms. Armijo.

15   BY MS. ARMIJO:

16       Q.    You indicated that you started with an

17   interview with Joe Gallegos?

18       A.    Yes, ma'am.

19       Q.    And who was present with you when you

20   spoke to him?

21       A.    Agent James Mowduk.

22       Q.    And how were you dressed when you spoke to

23   him, meaning -- and I guess I should be more

24   specific.  Were you in a uniform, or were you

25   dressed like you are today, or more khakis and a
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   pullover?

 2        A.   We wore what we generally wore on a

 3   call-out, which is a polo and then battle dress

 4   pants that are like tan pants with a bunch of

 5   pockets.

 6        Q.   And did you have a weapon with you?

 7        A.   Yes.

 8        Q.   And was the other agent dressed similarly?

 9        A.   Yes, ma'am.

10        Q.   And can you describe the room that you

11   spoke to him in?

12        A.   Fairly small interview room with a table

13   and two or three chairs.

14        Q.   And was it being recorded?

15        A.   Yes, ma'am.

16        Q.   And when you went in and you spoke to

17   him -- well, you spoke to him over a period of time?

18        A.   Yes, ma'am.

19        Q.   During the entire time that you spoke to

20   him, did it ever appear you to that he could not

21   understand what you were saying?

22        A.   No, ma'am.

23        Q.   Did he appear to be coherent?

24        A.   Yes, ma'am.

25        Q.   Was there any language difficulties?   In
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  other words, did he ever indicate that he didn't

2  understand the English language?

3       A.    No, ma'am.

4       Q.    Did you ever use any force against him,

5  physical?

6       A.    No, ma'am.

7       Q.    Did you ever make any threats against him?

8       A.    No, ma'am.

9       Q.    And did you ever make him any promises in

10  order to try and get him to talk to you?

11       A.    No, ma'am.

12       Q.    Did you all advise him of his rights?

13       A.    Yes.

14       Q.    And by "rights," can you explain what that

15  is to the jury?

16       A.    Agent Mowduk read from a card directly,

17  explaining his Miranda rights, his right to an

18  attorney, his right to not speak to us, his right to

19  speak to us if he chose, but to stop at any time.

20  He was advised that if he couldn't afford an

21  attorney, one will be provided for him.  And then,

22  after we checked that he understood those rights,

23  then we asked him if he would like to speak with us.

24       Q.    And is that what you did?

25       A.    Agent Mowduk did, ma'am.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492
                                                         e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.    Okay.  And you were present for that?

 2        A.    Yes, ma'am.

 3        Q.    Is it fair to say the interview was

 4   conducted by the two of you?

 5        A.    Yes, ma'am.

 6        Q.    And after advising him of his rights,

 7   him -- I should be more specific, I apologize -- Joe

 8   Gallegos of his rights, did he agree to talk to you

 9   and actually make statements?

10        A.    Yes, ma'am.

11        Q.    As part of the -- as part of the

12   interview, is it customary to normally tell the

13   people what it is that they were arrested for, and

14   why you're questioning them?

15        A.    I always like to clarify that, yes.

16        Q.    And was that done in this case?

17        A.    Yes, ma'am.

18        Q.    And did he -- did he agree to talk to you

19   about a few things?

20        A.    Yes, ma'am.

21        Q.    Now -- and were you specific in that you

22   were talking to him about the Adrian Burns homicide?

23        A.    Yes, ma'am.

24        Q.    Now, when you first started talking to

25   him, did Joe Gallegos indicate anything as far as
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



                                                              1-800-669-9492
PROFESSIONAL COURT                                   e-mail: info@litsupport.com
REPORTING SERVICE

 1   that evening, as far as where he was and trying to

 2   say anything about a store that he had been at?

 3        A.   Yes, ma'am.

 4        Q.   And what did he say?

 5        A.   He brought up the fact that he had been at

 6   an Allsup's convenience store, where there was video

 7   surveillance, and also someone he met there, who he

 8   believed was under surveillance.

 9        Q.   And who did he say he met there?

10        A.   Leroy Gallegos.

11        Q.   Leroy Gallegos?

12        A.   I'm sorry, Leroy Vallejos.

13        Q.   And then had you -- before he made that

14   statement to you, had you said anything about an

15   Allsup's, or anything else?

16        A.   No, ma'am.

17        Q.   Okay.  That was something that he

18   volunteered to you?

19        A.   Yes, ma'am.

20        Q.   Now, did he indicate anything about his

21   interactions with Leroy as far as what occurred

22   between the two of them?

23        A.   Just that they had spoke -- I believe is

24   all the information that he had given us -- outside

25   while they were getting gas, or outside the store

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that they had seen him, spoke to him.

2         Q.   And do you recall if he indicated anything

3    as far as while there, what he had purchased?

4         A.   I believe he advised that they had got

5    some cigarettes and some toilet paper.

6         Q.   Okay.  When you say "they," who did he

7    indicate went in the store to make purchases?

8         A.   He said he did.

9         Q.   Okay.  And was there -- did he ever make

10   any indication as to Andrew Gallegos going into the

11   store?

12        A.   He advised us that Andrew did not go into

13   the store.

14        Q.   Did he indicate anything to you as far as

15   whether or not -- oh, who was with Leroy?

16        A.   I don't recall if he mentioned that he

17   knew who was with Leroy, or not, at that time.

18             MS. ARMIJO:  Your Honor, may I approach?

19             THE COURT:  You may.

20   BY MS. ARMIJO:

21        Q.   Would looking at a report refresh your

22   recollection?

23        A.   Yes, ma'am.

24             MS. TORRACO:  Your Honor, I have an

25   objection.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492
                                                                 1-800-669-9492
                                                          e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MS. ARMIJO:  It would be Bates 3441.
 2          May I approach the witness?
 3              THE COURT:  You may.
 4  BY MS. ARMIJO:
 5      Q.   All right.  Did reviewing this report
 6  refresh your recollection of his statements?
 7      A.   Yes, ma'am.
 8      Q.   And did Mr. Joe Gallegos indicate to you
 9  who was with Leroy Vallejos?
10      A.   Yes, he did.
11      Q.   And who was that?
12      A.   Michael Sutton.
13      Q.   Now, did you actually have an opportunity
14  to talk to him about Adrian Burns?  "Him" being Joe
15  Gallegos?
16      A.   Yes.
17      Q.   And what did Joe Gallegos indicate his
18  relation, if anything, was with Adrian Burns?
19      A.   That Adrian was his drug dealer, that he
20  provided him with heroin.
21      Q.   And did he indicate how much heroin he
22  would buy from Adrian at a time?
23      A.   I believe he advised about $50 at a time.
24      Q.   And did he say what he would do with that?
25      A.   He advised that sometimes he would use
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                 1-800-669-9492

PROFESSIONAL COURT                              e-mail: info@litsupport.com
REPORTING SERVICE

```
 1   some of it, and then he would save some of it that
 2   he would sell to others for some income.
 3        Q.   Now, did you ask him about a timeline for
 4   that evening?  Being specific, the evening of
 5   November 12, 2012?
 6        A.   Yes, ma'am.
 7        Q.   And what was Joe Gallegos' reaction
 8   whenever you would ask about a timeline for that?
 9             MR. BENJAMIN:  Objection, speculation,
10   Your Honor.
11             THE COURT:  Well, is it verbal or is it
12   just what he observed?
13             MS. ARMIJO:  No, no, no, I'm sorry.  I'll
14   rephrase it.  It was probably a poorly worded
15   question.  It's getting to be late in the day for
16   me.  Sorry.
17   BY MS. ARMIJO:
18        Q.   Did you ask him for his whereabouts for a
19   certain time period on November 12, 2012?
20        A.   Yes, ma'am.
21        Q.   And what time period were you interested
22   in?
23        A.   From 7:30 p.m. until 9:00 p.m.
24        Q.   And why was it that you were interested in
25   that time period?
```



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                       1-800-669-9492
                                              e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    A.   We had information that that's when Adrian

2    was at the residence to deliver their drugs for that

3    day.  And then at 9:15 or so was when the fire in

4    the bosque was reported.

5    Q.   So was that a time period that you were

6    interested in learning about?

7    A.   Yes, ma'am.

8    Q.   And was Joe Gallegos forthcoming about

9    what he did during that time period?

10    A.   No, ma'am.

11    Q.   Did you ask Joe Gallegos about whether or

12    not Adrian -- where he would purchase the drugs from

13    Adrian Burns?

14    A.   I don't believe we discussed that at that

15    time.  Just the events of that evening.

16    Q.   Okay.

17    MS. ARMIJO:  Let me have a moment here.

18    Let's see.  If I may approach the witness, it's

19    3442, Bates.

20    MS. TORRACO:  Thank you.

21    MS. ARMIJO:  May I approach the witness,

22    Your Honor?

23    THE COURT:  You may.

24    MR. BENJAMIN:  Your Honor?

25    THE COURT:  Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  I object.  He doesn't
 2    remember, he said they didn't discuss that.
 3              MS. ARMIJO:  Well, I'm asking him to
 4    review.
 5              MR. BENJAMIN:  The witness hasn't asked
 6    for assistance.
 7              THE COURT:  Well, what is the question
 8    you're going to refresh his memory on?
 9              MS. ARMIJO:  On whether or not Joe
10    Gallegos made a statement about Adrian going to his
11    house that evening.
12              THE COURT:  Well, the immediate question
13    before us, I don't believe we discussed that at that
14    time; just the events of that evening.  Is there
15    something that you think --
16              MS. ARMIJO:  I'm sorry, I thought he had
17    not answered it.  Let me just ask the question.
18    BY MS. ARMIJO:
19         Q.   Do you recall if Joe Gallegos indicated
20    anything to you about Adrian coming to his house?
21              MS. TORRACO:  Objection, leading.
22              THE COURT:  Well, this is the question
23    that I understand that Mr. Williamson asked Joe
24    Gallegos; correct?
25              MS. ARMIJO:  Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1            THE COURT:  So you're formulating the
2   question that he asked.
3            MS. ARMIJO:  Correct.
4            THE COURT:  So overruled.
5   BY MS. ARMIJO:
6       Q.   Did you ask Joe Gallegos about whether or
7   not Adrian Burns came to his house that evening?
8       A.   Yes, ma'am.
9       Q.   And what did he indicate?
10      A.   He indicated that Adrian came to his home,
11  stayed in his car, parked outside his front gate,
12  where they'd made their drug transaction.
13      Q.   And did he give you an approximate time
14  for that?
15      A.   7:30.
16      Q.   And did he indicate to you whether that
17  was something that would happen normally?
18      A.   That Adrian would stay in his car?
19      Q.   Yes.
20      A.   Yes.
21      Q.   Okay.  What about go into the residence?
22      A.   Never.
23      Q.   Never what?
24      A.   He never generally went into their
25  residence.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   Now, did you ask him what vehicle Adrian

2  Burns was driving?

3     A.   Yes.  He advised that he was in the white

4  Mitsubishi.

5     Q.   And was that the vehicle that was found at

6  the scene?

7     A.   Yes, ma'am.

8     Q.   Did you ask Joe Gallegos again as far as

9  what he did after Adrian Burns was at his house?

10     A.   Yes, ma'am.

11     Q.   And what did he indicate?

12     A.   He gave no information, couldn't remember.

13  I believe he advised they used their drugs and then

14  cruised around that night.  But no details as to

15  anything, other than the information that he had ran

16  into Leroy at the Allsup's.

17     Q.   Who did he say went into the Allsup's that

18  evening?

19     A.   In our interview, he said that he had.

20     Q.   Okay.  He had -- "in our interview," are

21  you referring to Joe Gallegos?

22     A.   Yes.

23     Q.   And did he ever indicate to you whether or

24  not his brother Andrew went into Allsup's?

25     A.   He did not.

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                       1-800-669-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1        Q.    He said --
 2        A.    He said he did not.
 3        Q.    Okay.  He said "he," being Andrew
 4   Gallegos, did not go in?
 5        A.    Right.  That Joe went in and bought toilet
 6   paper.
 7        Q.    Now, did you also have an opportunity to
 8   talk to Andrew Gallegos that evening?
 9        A.    Yes, ma'am.
10        Q.    I guess I'm saying that evening.  Do you
11   know what time, approximately, it was you spoke to
12   Andrew?  Was it nighttime by then?
13        A.    It was evening, yes.
14        Q.    And where was he questioned?
15        A.    At the same location, the State Police
16   office in Albuquerque.
17        Q.    Were you dressed the same way?
18        A.    Yes.
19        Q.    When you spoke to him, did you advise him
20   of his rights?
21        A.    Yes, Agent Mowduk did.
22        Q.    And the same rights that you had given to
23   Joe Gallegos?
24        A.    Correct, right off the card.
25        Q.    And after advising him of his rights, did
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   he agree to talk to you?

 2        A.   Yes, ma'am.

 3        Q.   At any point in your conversation, did it

 4   ever appear you to that he did not understand what

 5   you were saying?

 6        A.   No, ma'am.

 7        Q.   Did it ever appear to you that he was

 8   having any difficulties understanding what you were

 9   saying?

10        A.   No, ma'am.

11        Q.   Did you ever feel that there was a

12   language barrier of any type?

13        A.   No, ma'am.

14        Q.   Did you ever use any force or threats

15   against him?

16        A.   No, ma'am.

17        Q.   Did you ever make him any promises in

18   order to get him to talk to you?

19        A.   No, ma'am.

20        Q.   Now, what was his demeanor when he --

21   overall, when you spoke to him?

22        A.   He was fairly relaxed, and he wanted to

23   speak to us so he could find out what was going on.

24        Q.   I guess I should have asked you, when you

25   spoke to Joe Gallegos, what, for the most part, was
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492
                                                                   e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    his demeanor?

2         A.   Also fairly relaxed and compliant.

3         Q.   Now, when you spoke to Joe Gallegos, was

4    it apparent to you that he knew you had been at his

5    residence?

6              MR. BENJAMIN:   Objection, Your Honor,

7    speculation.

8              THE COURT:   Well, you may have to lay some

9    foundation to get that as to --

10   BY MS. ARMIJO:

11        Q.   Did Joe Gallegos ask you questions about

12   the search warrant that was done at his house?

13        A.   Yes, ma'am.   He was concerned about his

14   pets.

15        Q.   Okay.   And was he asking you specific

16   information indicating that he had heard something

17   about the search warrant that was conducted at his

18   house?

19        A.   Yes, ma'am.

20        Q.   And so was that prior to you indicating to

21   him anything about the search warrant that was

22   conducted, or about his pets?

23        A.   Yes, ma'am.

24        Q.   Now -- so I guess to follow up on that,

25   what did you take that to mean, if you didn't talk

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    to him about the search warrant, but he's asking you

2    specific information about things that occurred at

3    the search warrant?

4         A.    That he knew we had served a search

5    warrant at his home and --

6         Q.    Okay.  Now --

7         A.    -- had taken items out.

8         Q.    I'm sorry?

9         A.    And taken items out.

10        Q.    Now, when you spoke to Andrew Gallegos,

11   did he indicate to you that he knew who Adrian Burns

12   was?

13        A.    Yes.

14        Q.    Did you ask him any questions specifically

15   about whether or not Adrian Burns was upset with

16   him?

17        A.    Yes.

18        Q.    And what did he tell you?

19        A.    He said he wasn't upset with him over

20   owing him any money.

21        Q.    Okay.  You said a couple of "he's."  Who?

22   Adrian Burns was not upset?

23        A.    Correct.  Andrew stated that he did not

24   believe Adrian was upset with him, if they owed him

25   any money.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Now, did he tell you whether or not Adrian

 2   Burns had come over to their residence on November

 3   12th of 2012?

 4        A.    Yes, ma'am.

 5        Q.    What did he say?

 6        A.    He indicated Adrian came over there, came

 7   inside their residence where they took care of their

 8   drug transaction.

 9        Q.    Now, did he say how it came to be that

10   Adrian arrived at their residence?

11        A.    I believe he said he arrived in his white

12   car that he usually drove.  I'm not real sure how he

13   stated it, but -- I'm not sure he clarified to me at

14   that time.

15        Q.    Do you know if arrangements were made?

16   Did he indicate anything about whether or not

17   somebody called him to come over to the house?

18        A.    Yes, that Joe had called him.

19        Q.    Now, did you ask Andrew Gallegos anything

20   about a camo jacket?

21        A.    Yes, ma'am.

22        Q.    Okay.  Why did you ask him about -- and by

23   "camo," I should say a camouflage jacket.

24        A.    Yes, ma'am.

25        Q.    Okay.  Why did you ask him questions about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   a camouflage jacket?
 2         A.   On the night the search warrant was
 3   served, we located a camouflage jacket in the living
 4   room on the floor that had "Burns" on it.
 5         Q.   And had you done any investigation on that
 6   jacket?  Or during the course of your investigation,
 7   was that jacket associated with anybody?
 8         A.   Yes, ma'am.
 9         Q.   And who did you associate that jacket
10   with?
11         A.   With Andrew.
12              THE COURT:  Ms. Armijo, is this a good
13   time for us to take our break for the weekend?
14              MS. ARMIJO:  Certainly, Your Honor, thank
15   you.
16              THE COURT:  Well, I think I'm going to
17   stay and watch the draft, and go back tomorrow, see
18   if the Cowboys did any better than they did
19   yesterday.
20              Y'all be safe.  We've worked real hard
21   this week, and I haven't thanked you enough for all
22   you've done for us.  You've been a great bunch to
23   work with.
24              Be safe in your travels and we'll see you
25   on Monday morning at 8:30.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Have a good weekend.

 2              (The jury left the courtroom.)

 3              THE COURT:  Remember, you owe me a couple

 4   of letters to help me do the jury instructions, and

 5   I did file something today.  We get it typed in

 6   Albuquerque as far as what we got here, so I'll have

 7   more for you on Monday, and show the blanks, but

 8   I've also told you orally about the blanks.

 9              Get together, try to script out the rest

10   of the trial, and be ready to give me something

11   together on Monday morning saying, "Here's how we're

12   going to get it done."  Or if you can't agree, let

13   me know what your criticisms of the other side are,

14   because I'm going to start working to get it into

15   the timeframe.

16              Have a good weekend.  Be safe.  Appreciate

17   your hard work.

18              (The Court stood in recess.)

19

20

21                        April 30, 2018

22              THE COURT:  Good morning, everyone.  Looks

23   like all the defendants are here and each has an

24   attorney.  Is there anything we need to discuss?  We

25   got all the jurors in, they're back from the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

44

```
1    weekend.  Is there anything we need to discuss
2    before we bring the jury in?  Ms. Armijo, Mr. Beck?
3              MS. ARMIJO:  No, Your Honor.
4              THE COURT:  How about from the defendants?
5    Anything we need to discuss?
6              MR. LAHANN:  Your Honor --
7              THE COURT:  Let me take Mr. Lahann first.
8    Mr. Lahann?
9              MR. LAHANN:  Mr. Shattuck is at a medical
10   appointment this morning, so he may not be here
11   until hopefully after lunch.
12             THE COURT:  Do we want to say anything or
13   just let it go?
14             MR. LAHANN:  Let it go.  I think the jury
15   is used to people popping in and out.
16             THE COURT:  Who else was going to stand
17   up? Do you have something, Mr. Benjamin?
18             MR. BENJAMIN:  If I could have just a
19   second, we do, Your Honor.
20             THE COURT:  Certainly.
21             MR. BENJAMIN:  We're good, Your Honor.
22             THE COURT:  Anybody else have anything?  I
23   may just go ahead and get everybody started, then,
24   if everybody is ready to go.
25             All rise.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                (The jury entered the courtroom.)
 2                THE COURT:  Good morning, ladies and
 3     gentlemen.  I hope you had a good weekend.  Some of
 4     you did some traveling, got some rest.  I hope your
 5     NFL teams got their players they wanted.
 6                I took my wife back on Saturday, and she
 7     didn't come back on Sunday.  She's headed over to
 8     Dallas to play grandma.  I'll catch up with her on
 9     Mother's Day.
10                Thank y'all for all you've done, being
11     back and everything.  I appreciate so much the way
12     you've been working so hard.  I know the counsel and
13     the parties do, as well.  You've been a great bunch
14     to work with.
15                All right, Mr. Williamson, I'll remind
16     you're still under oath.
17                THE WITNESS:  Yes, sir.
18                THE COURT:  Ms. Armijo, if you wish to
19     continue your direct examination of Mr. Williamson,
20     you may do so at this time.
21                MS. ARMIJO:  Thank you, Your Honor.
22                THE COURT:  Ms. Armijo?
23
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    RICHARD WILLIAMSON,
 2        after having been previously duly sworn under
 3        oath, was questioned, and continued testifying
 4        as follows:
 5               CONTINUED DIRECT EXAMINATION
 6   BY MS. ARMIJO:
 7        Q.   Sergeant Williamson, I believe when we
 8   ended on Friday, we were talking about the interview
 9   you conducted of Mr. Andrew Gallegos?
10        A.   Yes, ma'am.
11        Q.   Getting back to that, did you have a
12   chance to talk to him about whether or not he had a
13   camo jacket?
14        A.   Yes, ma'am.
15        Q.   And -- you know what, let me put that up a
16   little bit.
17             And why is it that you asked him about a
18   camo jacket, specifically?
19        A.   Two reasons:  The first was reference a
20   video that we had where he was wearing the camo
21   jacket; and secondly, that we seized the camo jacket
22   with burns on it from their residence.
23        Q.   And so did you ask him about the camo
24   jacket, and if he was wearing it on November 12th of
25   2012?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    I asked him if he had one that he usually
 2   wore.
 3        Q.    And what did he say?
 4        A.    He had one, but not one that he
 5   specifically wore, he just wore a hoodie, or
 6   whatever.
 7        Q.    And did you ask anything -- did you
 8   explain anything about why you were asking him about
 9   it?
10        A.    Yes.  Because of the burned camo jacket
11   that we found in their residence.
12        Q.    And did he have an answer for that after
13   you explained it?
14        A.    He said due to their work, cutting up
15   metal, that sometimes their clothing would catch on
16   fire and burn.
17        Q.    Did he admit to wearing a camo jacket that
18   night?
19        A.    No, ma'am.
20        Q.    Did you continue to ask him about whether
21   or not he had been wearing a camouflage jacket that
22   night?
23        A.    No, ma'am.
24        Q.    Did you continue to ask him questions
25   about that evening, in general, and his whereabouts?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes, ma'am.

 2        Q.   And what, in general, was his responses to

 3   you?

 4        A.   He was vague about that evening, other

 5   than being at the Allsup's to buy some cigarettes,

 6   and after they had purchased their drugs from Adrian

 7   Burns that evening, and that he had run into a

 8   friend, Leroy Vallejos.

 9        Q.   And did he ever admit to you that he had

10   even ever been inside the Allsup's, or just that

11   they, being he and Joe Gallegos, had been at

12   Allsup's?

13        A.   Correct.  He did not.  He stated that his

14   brother went in and paid for the gas.  But he did

15   not say that he went inside the Allsup's.

16        Q.   Now, towards the end of the interview, did

17   you ask him, and kind of put things together with

18   him, about the Giant video, and the camouflage

19   jacket, and buying gas?

20        A.   Yes, ma'am.

21        Q.   Did you have a time of when a person that

22   you believe was Andrew Gallegos was buying gasoline?

23        A.   Approximately 5:30 that evening of the

24   12th.

25        Q.   And did you confront him with that?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492



```
 1        A.    Yes, I did.

 2        Q.    And what did he indicate?

 3        A.    He did not recall purchasing any gas.  He

 4   stated sometimes he gives his brother money for gas.

 5   That if he had bought gas that day, that it was for

 6   his truck.

 7        Q.    Did he indicate whether or not he had an

 8   opinion as to how it appeared with that -- if, in

 9   fact, you had that evidence?

10        A.    Yes, he did.  He stated, "I know this

11   looks bad."

12        Q.    Now, did he indicate -- did he say

13   anything as far as if he had purchased gas, what it

14   would have been for?

15        A.    His personal truck.

16        Q.    And did you say anything about the

17   condition of his truck that evening to him?

18        A.    I reminded him that his truck was parked

19   in front of his residence, and had not been moved in

20   quite some time, because it had two flat tires.

21        Q.    And what was his response to that?

22        A.    I believe he said, "I don't know about

23   that."

24        Q.    Did you ask him anything about handcuffs

25   that were found during the search warrant?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    Yes.

2      Q.    What did he say?

3      A.    He stated that his brother had bought them

4  at a flea market previously.

5      Q.    Did you ever get an answer from him as to

6  his whereabouts that evening, other than the

7  information that he gave you as to Adrian Burns

8  coming out to the residence, and being at Allsup's?

9      A.    No, ma'am.

10     Q.    How many times did Andrew Gallegos tell

11 you that they had been to Allsup's?

12     A.    I believe during the first initial

13 questioning, and then also after a break so he could

14 use the restroom and smoke a cigarette, he mentioned

15 it again, and that he had run into his friend that

16 they believe was being surveilled by police.

17          MS. TORRACO:  Your Honor, I'm sorry, I

18 couldn't hear the witness.  Could you repeat that,

19 please?

20     A.    He stated in the first interview, before

21 the break, that he didn't remember all of his

22 activities that evening, other than being at the

23 Allsup's, and where they ran into their friend Leroy

24 Vallejos.  Then after the break, the same thing, he

25 repeated that he didn't remember all of his

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  whereabouts that evening, except running into his

2  friend Leroy at the Allsup's that evening.

3  BY MS. ARMIJO:

4      Q.   And did you give him an opportunity or any

5  alternative stories to explain the events, but --

6  and not receive a response from him?

7      A.   That is correct.  We tried to clarify

8  anything that he might have remembered.  We gave him

9  some alternative theories and themes, and he didn't

10 agree with any of those or remember much about that

11 period of time, other than after they had their

12 meeting to buy their drugs from Adrian, that they

13 drove around and went to the Allsup's, where they

14 ran into Leroy.

15     Q.   Did either Joe Gallegos or Andrew Gallegos

16 ever say anything about whether or not they listened

17 to police --

18          MS. TORRACO:  Objection, leading.

19          THE COURT:  Overruled.

20 BY MS. ARMIJO:

21     Q.   -- about whether or not they were

22 listening that evening to scanners?

23     A.   One of them did, I don't recall which;

24 that they have an app on their phone that has the

25 access to the police scanners.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And can you explain to the jury how that
 2   works?
 3             MR. BENJAMIN:  Objection, speculation.
 4             THE COURT:  He probably knows how a
 5   scanner works.  Overruled.
 6        A.   There is an app.  I've had it on my own
 7   phone previously, to monitor public transmissions of
 8   police scanners.  You can select scanners from many
 9   different police departments or emergency response
10   channels, and listen to those over your telephone
11   through this application.
12   BY MS. ARMIJO:
13        Q.   All right.
14             MS. ARMIJO:  And, Your Honor, may I
15   approach the witness to refresh his recollection?
16   And Counsel, I am referring to page 26 of Joe
17   Gallegos' interview.
18             MS. TORRACO:  Your Honor, I don't think he
19   said he couldn't remember.
20             THE COURT:  What does his memory need to
21   be refreshed about?
22             MS. ARMIJO:  He couldn't remember if it
23   was Joe Gallegos or Andrew Gallegos.
24             MS. TORRACO:  Okay, thank you.
25             THE COURT:  You may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  BY MS. ARMIJO:
 2       Q.   And just -- you can look at page 1 and 2
 3  of the interview, and then I'm directing you to page
 4  26.
 5            All right.  Reviewing that transcript,
 6  does that refresh your recollection?
 7       A.   Yes, ma'am.
 8       Q.   And who was it that indicated they had an
 9  app?
10       A.   Joe Gallegos.
11       Q.   And did he indicate when he was reviewing
12  that scanner?
13       A.   The evening of the 15th, when we served a
14  search warrant on his residence, and on the 12th,
15  when they were driving around.
16       Q.   And what sort of information is on the
17  police scanners?
18       A.   Generally, officers being dispatched to
19  calls, emergency response vehicles, paramedics,
20  fire, depending on which channel they're listening
21  to, and how their dispatch works for that area.
22  Names of victims, license plate numbers, VINs,
23  things like that, that dispatchers have the
24  resources to check for officers in the field.
25       Q.   All right.  Now, prior to Joe and Andrew
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  Gallegos being arrested, did you go to -- or let me

 2  ask this:  At some point, did you go to Allsup's and

 3  to a Giant in order to obtain videotape?

 4      A.   Yes, ma'am.  Initially, I assigned an

 5  agent to gather any surveillance video of the route

 6  that we believe they traveled from the residence to

 7  the crime scene.  And I went back a day or so later

 8  to collect the one video that we understood might

 9  have a view of the roadway.

10      Q.   Okay.  And did you go to the Allsup's to

11  obtain the video, or did another agent go on your

12  behalf?

13      A.   Correct.  I sent another agent to collect

14  that video. Allsup's corporate headquarters are in

15  Clovis, New Mexico, where all their video feeds are

16  directed.  So we ended up having a lieutenant from

17  Clovis relay that video to us in Albuquerque to

18  Lieutenant Tim Johnson.

19      Q.   And which Allsup's were you interested in

20  getting the video feed from?

21      A.    The one on Highway 47, and I believe it's

22  Riverside.

23      Q.   Okay.  And when did you obtain that video?

24  I don't mean a specific date -- I guess I should put

25  it in reference to your investigation:  Was it

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492

PROFESSIONAL COURT                       e-mail: info@litsupport.com
REPORTING SERVICE

1   before Joe and Andrew Gallegos were arrested and

2   interviewed, or after?

3         A.   Before.

4         Q.   Okay.  And so you had it, then, by

5   November 20th -- or I'm sorry, yes?

6         A.   Yes.

7         Q.   Okay.  2012?

8         A.   Correct.

9         Q.   And did you get that video -- since Joe

10  and Andrew Gallegos had not been arrested, had you

11  spoken to other individuals that evening, and based

12  upon what they told you, you went and got that?

13        A.   Yes, ma'am.

14        Q.   And have you had an opportunity to look

15  over the video to see whether or not there was

16  anything of evidentiary value?

17        A.   From the Giant or from Allsup's?

18        Q.   I'm sorry, from the Allsup's video.

19        A.   Yes, ma'am.

20        Q.   All right.  In addition to that, you

21  mentioned another part -- did you also have an

22  opportunity to get a video from Giant?

23        A.   Yes, ma'am.

24        Q.   And which Giant store was it?

25        A.   Sits on the highway between 313, I

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                      Albuquerque, NM 87102
(505) 989-4949                                                                    (505) 843-9494
FAX (505) 843-9492                                                        FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1  believe, between Los Lunas and Los Chavez and Belen.
 2       Q.   And when you went there to receive that,
 3  when was that in your investigation that you went to
 4  the Giant?
 5       A.   That was the 13th or the 14th.
 6       Q.   And did you speak to an individual?
 7       A.   Yes.
 8       Q.   Who did you speak to?
 9       A.   Christyn Collins.
10       Q.   And did Ms. Collins provide you with a
11  videotape?
12       A.   She did.
13       Q.   And, in part, was that the videotape that
14  you were referring to when you had an interview with
15  Andrew Gallegos?
16       A.   Yes.
17       Q.   Now, as far as the Allsup's video, you
18  indicated you had an opportunity to review it more
19  recently, as well?
20       A.   Yes, ma'am.
21            MS. ARMIJO:   And, Your Honor, the United
22  States is going to move to admit 908, 909 and 910,
23  which are portions of that.  My understanding is the
24  defense may want the whole video in, and so we don't
25  have any objection to either them admitting the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   whole video or the United States can move in the

2   entire video.

3           THE COURT:  Any preference, Mr. Benjamin?

4           MR. BENJAMIN:  I'd prefer it all to come

5   in at one time, Your Honor.  I don't have a problem

6   with them designating essentially shortcuts in 908

7   -- whatever the numbers that were just used, but I

8   prefer the entire video come in.

9           THE COURT:  That looks like what you

10  prefer, Ms. Torraco.

11          MS. TORRACO:  Yes, Your Honor.  Thank you.

12          THE COURT:  So I'll admit Government's

13  Exhibits 908, 909, 910.  Now, you want to move the

14  admission of the entire transcript?

15          MS. ARMIJO:  We can move in -- we'll get a

16  copy of the entire one.  And if I may have a moment.

17          THE COURT:  Certainly.

18          MS. TORRACO:  I don't think there is a

19  transcript.

20          THE COURT:  I shouldn't have said

21  transcript, I meant the video.

22          MS. ARMIJO:  The problem, Your Honor, is

23  it won't play on the Court system.  That's why we

24  had to do the snippets.  And so we can certainly

25  provide the CD, and have that marked, and provide

SANTA FE OFFICE                                               MAIN OFFICE
119 East Marcy, Suite 110                               201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1   the entire one, but it's difficult to play, and

2   that's why we purposely have 908, 909, and 910.  But

3   we will provide a CD that has the entire video on

4   it.

5           THE COURT:  Does that work for you, Mr.

6   Benjamin?

7           MR. BENJAMIN:  I can put it all on one

8   DVD, Your Honor.  It's been converted to MP4.

9           THE COURT:  You can do it?  Do you have

10  your number?  Then we'll go ahead and get it

11  admitted.

12          MR. BENJAMIN:  I don't have any --

13          THE COURT:  Why don't we do this:  If

14  nobody has any objection, we'll go ahead and admit

15  908, 909, and 910 into evidence, and it will also

16  mean that when the defendants have theirs marked, it

17  would come in.

18          MS. TORRACO:  Yes, Your Honor.  Exhibit

19  ED.

20          THE COURT:  Defendants' Exhibit ED will be

21  admitted into evidence.  Is that acceptable, Ms.

22  Armijo?

23          MS. ARMIJO:  Yes, Your Honor.

24          THE COURT:  Anybody else have any

25  objection with that?  Not hearing anything, ED, 908,
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

**BEAN**
**&ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   909, and 910 will be admitted into evidence.
 2              (Defendants' Exhibit ED admitted.)
 3              (Government's Exhibits 980, 909 and 910
 4   admitted.)
 5              THE COURT:  Ms. Armijo?
 6              MS. ARMIJO:  Thank you.  I believe now we
 7   will play Exhibit 908, or at least bring it up
 8   before we start playing it.
 9              (Tape playing.)
10   BY MS. ARMIJO:
11       Q.   And Sergeant, we have on the screen -- it
12   says 11/12/2012, and the time is 9:05:09 p.m.
13              Now, with each of these video clips that
14   you've had an opportunity to review, can you say
15   with any certainty whether or not you know it is Joe
16   Gallegos or Andrew Gallegos?
17       A.   Yes, ma'am.
18       Q.   Okay.  And you have a belief that you know
19   which one it is?
20       A.   Yes, ma'am.
21       Q.   Okay.  And which -- on this video clip,
22   specifically the one that's 9:05, who do you believe
23   that we are looking at?
24       A.   Andrew Gallegos.
25       Q.   All right.  And if we can go ahead and
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    play it.

2            And while it's playing, what is the person

3    that you believe is Andrew Gallegos wearing?

4        A.   A light-colored jacket, a black baseball

5    cap, and a black shirt with, I believe, it looks

6    like a sport shirt with a number on it.  And also it

7    may have been another black T-shirt.

8        Q.   And are we about to see that individual

9    come up to the -- right there?

10       A.   Yes, ma'am.

11       Q.   And can you tell from the video what it is

12   that is being purchased?

13       A.   A bottle of oil and cigarettes, I believe.

14       Q.   Do they appear to be paying with cash?

15       A.   Yes, ma'am.

16       Q.   All right.  And then did you review this

17   and see if there are later times in this video that

18   also have a person that appears to have similar

19   features, as well?

20       A.   Yes, ma'am.

21       Q.   And if we now could go to the 909.  Okay.

22   The date on this one is 11:14 -- not the date, the

23   time is 11:14:43 p.m.; is that correct?

24       A.   Yes, ma'am.

25       Q.   And in this video, who is it that we

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                    1-800-669-9492
                                         e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1 | should be looking for?

2 |     A.   The same individual, Andrew Gallegos.

3 |     Q.   And is he wearing the same type of

4 | clothing?

5 |     A.   Except for the sport shirt with the number

6 | on it.  I believe he's still wearing the light

7 | colored jacket with the black shirt underneath.

8 |     Q.   At 43 seconds, did we see an individual

9 | with a light-colored jacket come in?

10 |     A.   Yes, ma'am.

11 |     Q.   And just to be clear, this is the same

12 | Allsup's?

13 |     A.   Yes, ma'am.

14 |     Q.   Do we have some items that are being

15 | purchased now, at 36 seconds, the person that's at

16 | the counter?

17 |     A.   Yes, ma'am.

18 |     Q.   Can you tell what's being purchased, or

19 | no?

20 |     A.   Not really at this time.  Looks like a

21 | drink and some snacks.

22 |     Q.   And is that different clothing

23 | underneath -- underneath the tan jacket?

24 |     MR. BENJAMIN:  Objection, speculation,

25 | Your Honor.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1                THE COURT:  Well, ask him if he can
 2   determine it, first.
 3   BY MS. ARMIJO:
 4       Q.   Can you determine whether or not he has
 5   the same clothing on underneath the tan jacket?
 6                MR. BENJAMIN:  Objection, foundation, Your
 7   Honor.
 8                THE COURT:  If he can look at it and
 9   determine it, I'll let him answer.
10                MR. BENJAMIN:  Objection, Your Honor, it
11   invades the province of the jury.
12                THE COURT:  Overruled.
13       A.    In this video, it doesn't appear that the
14   athletic shirt with the large numbers on it was
15   being worn at the time.
16   BY MS. ARMIJO:
17       Q.   And then it ends at 11:16:29 p.m.; is that
18   correct?
19       A.   Yes, ma'am.
20       Q.   All right.  And then can we go on now to
21   Exhibit 910.
22                (Tape playing.)
23   BY MS. ARMIJO:
24       Q.   This exhibit starts at 11:24 p.m.; is that
25   correct?
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                 1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1       A.    Yes, ma'am.

2       Q.    Same date?

3       A.    Yes, ma'am.

4       Q.    And who is it that we're going to be

5  looking for in this video?

6       A.    Again, Andrew Gallegos.

7       Q.    And clothing items, is it the same from

8  the video that we just saw?

9       A.    Yes, ma'am.

10      Q.    All right.  It's 11:25, starting 23

11 seconds.  Is that the person that you're referring

12 to?

13      A.    Yes, ma'am.

14      Q.    At the counter now?

15      A.    Yes, ma'am.

16      Q.    What is that that's being purchased?

17      A.    A four-pack of toilet paper.

18      Q.    Does it appear that this person has

19 something on his hands?  Can you tell?

20      A.    It looks like he's wearing light colored

21 gloves, but it's not real clear.

22      Q.    All right.  And are those the three clips

23 that you reviewed?

24      A.    Yes, ma'am.

25           MS. ARMIJO:  May I approach the easel,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

64

```
 1  Your Honor?

 2           THE COURT:  You may.

 3  BY MS. ARMIJO:

 4      Q.   Now, did you ask -- and just so that we're

 5  clear, what did Joe tell you as far as whether or

 6  not he or his brother Andrew went into the Allsup's?

 7      A.   Joe stated that he went into the Allsup's.

 8      Q.   And did he give you -- and how many times

 9  did he say he went in?

10      A.   Just the once, to pay for the gas and to

11  buy toilet paper.

12      Q.   Okay.  So Joe.  Okay.  And did he only say

13  that they went one time?

14      A.   Yes, ma'am.

15      Q.   Okay.  And then Andrew, did he indicate

16  how many times they went to Allsup's?

17      A.   Just the one time, when they ran into

18  their friend Leroy Vallejos.

19      Q.   And did he tell you what was purchased?

20      A.   Gas and toilet paper, I believe, he also

21  said.

22      Q.   And did he say who went in?

23      A.   I don't believe so.

24      Q.   All right.  And when you questioned them,

25  did you know -- did you give them plenty of
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   opportunities to talk about other times --
 2            MR. BENJAMIN:  Objection,
 3   characterization, Your Honor.
 4            THE COURT:  Overruled.
 5   BY MS. ARMIJO:
 6        Q.   Did you give them, both Joe and Andrew
 7   Gallegos, an opportunity to explain the -- to give
 8   you -- well, let me go by each person.  Did you give
 9   Joe Gallegos an opportunity to explain his
10   whereabouts that evening?
11        A.   Numerous times.
12        Q.   And did you give Andrew Gallegos an
13   opportunity to explain his whereabouts that evening?
14        A.   Also many times.
15        Q.   Now, at some point after their arrest on
16   November 20th, do you recall assigning Agent Liz
17   Whitfield --
18            MS. ARMIJO:  Your Honor, may we approach?
19            THE COURT:  You may.
20            (The following proceedings were held at
21   the bench.)
22            MS. ARMIJO:  I'm just seeking permission
23   to lead him.  I'm not going to get into the nature
24   of the investigation, but I am just going to ask him
25   if he assigned Liz Whitfield to look further into an
```

SANTA FE OFFICE                                         MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                           1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

 1   investigation on a date.  And what it involves is

 2   attempted escape by Joe Gallegos from the facility

 3   when he was being detained pending his charges.

 4            I'm not going to get into it with him,

 5   because he did not investigate it.  I'm just going

 6   to simply ask him the leading question of:  Did you

 7   assign her to do further investigation?

 8            THE COURT:  Sounds like it would be better

 9   if she led him, rather than him say something about

10   what some other officer or somebody said.

11            MR. BENJAMIN:  Respectfully, Your Honor,

12   this has nothing to do with SNM racketeering or

13   other actions.  And more importantly, it wasn't on

14   the 404(b) notice of bad acts.  So I don't see, one,

15   how it comes in; or, two, what the relevance is to

16   this.  It's after the arrest in this matter.  And so

17   I received in the dump that was the basis of my

18   continuance -- I received all the reports for that,

19   but it's not on the notice, it's not on the notice

20   of our bad acts or anything else, Your Honor, and so

21   certainly isn't tied to the SNM.

22            THE COURT:  How is it related to the SNM?

23            MS. ARMIJO:  Your Honor, it was disclosed.

24   The Bates stamps is 3891, this initial part of it,

25   and since we're in the 70,000s, that was probably

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

 1  disclosed very early in 2017.

 2           THE COURT:  But how is it --

 3           MS. ARMIJO:  Not specifically related to

 4  the SNM, but it's related to this crime, as far as

 5  consciousness of guilt to this crime, specifically.

 6  And so I think it's related to the underlying crime

 7  itself.  We're not saying necessarily that the

 8  escape is part of SNM, but consciousness of guilt.

 9           MR. BENJAMIN:  Your Honor, I'm not sure --

10  as to Mr. Torres, I'm not sure it's consciousness of

11  guilt.  It's more of a he popped a lock in his cell,

12  which would have gotten into a secured pod.  So it's

13  not like he was running a bed sheet out the window

14  to escape.  The lock would have led him into a

15  secured pod.

16           THE COURT:  I probably am not going to

17  comment about consciousness of guilt.  But do I

18  think this is traditional evidence that's offered

19  for consciousness of guilt, so I'll let you make

20  your arguments, and I'm not inclined to comment on

21  it in my final instruction.  But I do think that

22  it's usually relevant evidence, and people can argue

23  both sides of it.

24           MR. BENJAMIN:  Your Honor, we're here, and

25  if we're talking about consciousness or problems or

SANTA FE OFFICE                                                                          MAIN OFFICE
119 East Marcy, Suite 110                                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                              Albuquerque, NM 87102
(505) 989-4949                                                                              (505) 843-9494
FAX (505) 843-9492                                                                   FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1  consciousness of guilt, that is a specific document

 2  that was produced in that dump, which is Agent

 3  Richard Williamson's notes, which is dated -- are

 4  damage control of Jim Naranjo's decision.

 5          And I would urge that I'm allowed to get

 6  back into the no probable cause.  Because when I

 7  cross him, I will deal with that based upon the

 8  motion in limine.  But I think that what's good for

 9  the goose is good for the gander, Your Honor.

10  Essentially, my entire investigation was built upon

11  no probable cause, that they know didn't exist.  And

12  the only way I can deal with that, because of the

13  way that the State (sic) produced this, is to be

14  able to discuss that no probable cause.

15          THE COURT:  I think they're very different

16  pieces of evidence, so I'm not going to conflate

17  them here.  We'll take them one at a time.  And I've

18  ruled on the probable cause.

19          MR. BENJAMIN:  Understood.

20          THE COURT:  You can ask -- and I think it

21  would be better to lead so we don't get in

22  statements from the other officer.

23          MS. TORRACO:  Your Honor, does this

24  warrant a limiting instruction in that any evidence

25  that is derived from that applies only to Joe

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   Gallegos and not Andrew Gallegos?
 2           THE COURT:  I certainly will give limiting
 3   instructions on statements.  So if you want a
 4   statement that they haven't found any conspiracy
 5   here -- so if y'all want statements limiting as to
 6   each one of your defendants, when the other comes
 7   in, I'd be glad to give those.  I think you're
 8   entitled to those.  If you don't, it's your call.
 9   So you let me know.
10           MS. TORRACO:  Okay, but not as to the
11   issue --
12           THE COURT:  Not just the evidence.  But as
13   far as statements, if you want a limiting
14   instruction as to Joe, you can have it.  And if Joe
15   wants one as to Andrew, then I'll give those.
16           MS. TORRACO:  I think what the Government
17   is trying to do is compare -- that their statements
18   are inconsistent and they don't match each other.
19   If you'll give the limiting instruction that
20   Andrew's statement can only apply to Andrew, of
21   course, we want that.
22           THE COURT:  Okay.
23           MS. TORRACO:  But that means they can't
24   use that comparison to Joe.  What are the Court's
25   thoughts?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            THE COURT:  Well, I don't think it would

2   be proper for them -- if I'm going to give a

3   limiting instruction that you can only use the

4   statements of each defendant in considering the

5   crime against them, they need to compare them.  I

6   think that would violate limiting instruction, and

7   they are entitled to it under the rules of hearsay,

8   so I don't think I can make that call.

9            MS. TORRACO:  I would ask the Government

10  to flip that paper so the comparison doesn't stay up

11  for the jury.

12           THE COURT:  Okay.  Why don't you flip it,

13  then?

14           MS. ARMIJO:  Okay.

15           (The following proceedings were held in

16  open court.)

17           THE COURT:  All right.  As Mr. Williamson

18  states -- gives the statements of Mr. Joe Gallegos

19  and then gives the statements of Mr. Andrew

20  Gallegos, you can only use Mr. Joe Gallegos'

21  statements against him.  You can't use those against

22  Mr. Andrew Gallegos.

23           And the same with Mr. Andrew Gallegos.  He

24  talks about the statements of Mr. Andrew Gallegos,

25  you can use those in the consideration of the

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492

**BEAN
& ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1  charges against Mr. Andrew Gallegos, but not against
 2  Mr. Joe Gallegos.
 3          All right.  Ms. Armijo?
 4  BY MS. ARMIJO:
 5      Q.   Agent Williamson, did you assign Agent Liz
 6  Whitfield to do a follow-up investigation in
 7  reference to the Socorro Police Department, and did
 8  she do that at your behalf?
 9      A.   Yes, ma'am.
10          MS. ARMIJO:  And if I may just have a
11  moment, Your Honor?
12          THE COURT:  You may.
13  BY MS. ARMIJO:
14      Q.   And lastly, did you obtain -- did you get
15  a search warrant to obtain DNA samples from Joe
16  Gallegos and Andrew Gallegos?
17      A.   Yes, ma'am.
18      Q.   And was that part of your ongoing
19  investigation?
20      A.   Yes, ma'am.
21      Q.   Did you also submit various items for DNA
22  comparison that had been found at various places
23  that we'll hear about through other agents?  Did you
24  submit those for DNA comparison?
25      A.   Yes, ma'am.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Thank you.
 2              MS. ARMIJO:  I pass the witness.
 3              THE COURT:  Thank you, Ms. Armijo.
 4              Mr. Benjamin, are you going to go first?
 5              MR. BENJAMIN:  It appears that way, Your
 6   Honor.
 7              THE COURT:  All right.  Mr. Benjamin?
 8              MR. BENJAMIN:  May I have a brief
 9   discussion with Ms. Armijo?
10              THE COURT:  Certainly.
11                      CROSS-EXAMINATION
12   BY MR. BENJAMIN:
13        Q.    Good morning, Agent.
14        A.    Good morning.
15        Q.    I apologize.  You generated a lot of
16   information, so I'm just trying to get it straight
17   as I get up here.
18              Did you have a chance to review your
19   reports before testifying today?
20        A.    Yes, sir.
21        Q.    Okay.  Do you know Agent Kiersten -- and
22   I'm going to butcher her last name --
23        A.    Harzewski.
24        Q.    Harzewski.  Thank you.  And I didn't ask
25   her this because I was lazy, and just referred to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  her as Agent, but if I refer to her as Agent H,
 2  would that be okay with you?
 3       A.   Sure.
 4       Q.   Because I know I'm going to butcher that
 5  name.
 6            She testified, and she was working this
 7  case under you; correct?
 8       A.   Correct.
 9       Q.   One of the things that she had been tasked
10  with doing was securing different pieces of
11  information?
12       A.   Yes, sir.
13       Q.   Okay.  She secured cell phone records for
14  a phone number that was believed to be Adrian Burns?
15       A.   And used by Adrian, yes, sir.
16       Q.   Okay.  And for clarification, that was
17  Amber Sutton's phone number -- or phone, but Adrian
18  Burns was using it?
19       A.   Correct.
20       Q.   She also testified that she did not get
21  the results back?
22            MS. ARMIJO:  Your Honor, I'm going to
23  object to what another witness testified to.
24            THE COURT:  Well, can you do it without a
25  lead in, so that you can ask questions without
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  yourself testifying?

 2            MR. BENJAMIN:  I can try, Your Honor.

 3            THE COURT:  All right.  Let's give it a

 4  try.

 5  BY MR. BENJAMIN:

 6       Q.   Did you see the results of that search

 7  warrant?

 8       A.   I haven't reviewed any of the attachments

 9  that went with all of the reports, just the reports

10  I was able to review.  So I don't recall if I saw

11  that -- the results from that search warrant, or

12  not, at this time.

13       Q.   She issued that search warrant?

14       A.   Yes, sir.

15       Q.   Whose responsibility is it to follow up on

16  the results of that search warrant?

17       A.   The agent that requested it, and then it

18  would be my responsibility to follow up and review

19  those as they pertain to the case.

20       Q.   Would it surprise you if she was -- if

21  Agent H said that you were responsible for following

22  up on those results?

23       A.   No, sir.

24       Q.   Okay.  So who is responsible for finding

25  those result?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    For finding those results?

 2        Q.    Yes.

 3        A.    I guess the buck would stop with me.

 4        Q.    Fair.  Because you're the case agent;

 5   correct?

 6              Do we have those?

 7        A.    I don't.  I don't have any attachments.

 8        Q.    Okay.  Did you see those?

 9        A.    I don't recall now.

10        Q.    Those would be useful?

11        A.    They would have been at the time, yes,

12   sir.

13        Q.    Will they be now?

14        A.    Yes, sir.

15        Q.    One of the reasons they'd be useful is

16   they would provide a timeline, to some extent?

17        A.    Yes.

18        Q.    You based a lot of information on what you

19   believed that timeline was; right?

20        A.    Yes, sir.

21        Q.    Can I have T2?  This was admitted on

22   Friday.

23              Do me a favor and take a look at that,

24   Agent, and let me know when you've had a chance to

25   review it.
```

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1            MR. BENJAMIN:  And for the record, Your
 2   Honor, I understand that T2 is Government's 916.
 3            THE COURT:  Okay.
 4   BY MR. BENJAMIN:
 5      Q.   This was a report that was based upon
 6   evidence Agent H provided to the New Mexico
 7   Department of Public Safety, and then she received
 8   the results back; correct?
 9      A.   Correct.
10      Q.   Are you aware of how many entry wounds
11   were on Adrian Burns?
12      A.   Yes, sir.
13      Q.   How many?
14      A.   Just one entry wound.
15      Q.   Okay.  And that leads me into my next
16   question, which is, how many projectiles were found
17   in the skull?
18      A.   Two.
19      Q.   Okay.  And those two projectiles, if you
20   add up their weights, don't equal a .22 caliber
21   bullet, do they?
22      A.    I understood that the average .22 short or
23   .22 long rifle weighs about 27 to 29 grains.
24      Q.   Okay.
25      A.   And each of these were 26.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Correct.   Roughly; is that fair?

2      A.   26 and somewhat, since they were

3  fragmented.

4      Q.   But we only have one entry wound?

5      A.   Correct.

6      Q.   Did you follow up -- did you follow up on

7  how that could have happened?

8      A.   Well, we discussed it.

9      Q.   There is no reports explaining how that's

10  possible, right?

11      A.   No, just the OMI's findings of one entry

12  wound and the two projectiles, yes, sir.

13      Q.   But there is no reports discussing how you

14  could have two projectiles in his head; correct?

15      A.   I don't believe we would report on that.

16      Q.   Well, you receive an OMI report back?

17      A.   Right.

18      Q.   And then you document the discussions that

19  you have back and forth with OMI?

20      A.   Correct.

21      Q.   And nobody ever asked the question or

22  documented the answer to the question, how do we get

23  two projectiles and one entry wound?

24      A.   No, sir, I don't believe so.

25      Q.   Could I have 915, please?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              Agent, I'm going to show you what's been
 2   admitted as 915.  If you can take a look at that
 3   one, I'd appreciate it.
 4              This is the report for the handcuffs and
 5   plastic bag that was found; correct?
 6        A.   Correct.
 7        Q.   Okay.  And it essentially said that there
 8   was no fingerprints found on those items?
 9        A.   No latent prints that they could process,
10   correct.
11        Q.   Well, no latent prints that they could
12   process means no fingerprints that they could use;
13   correct?
14        A.   That they could use?
15        Q.   Correct.
16        A.   Doesn't mean there are no prints on it,
17   but none that they could process and use, correct.
18        Q.   Okay.  And what follow-up did you conduct
19   on this report?
20        A.   I believe I added it, along with Agent
21   Harzewski's supplemental report, to my folder on the
22   investigation.
23        Q.   Did you send the bag out for DNA testing?
24        A.   I believe we requested latents and DNA
25   testing on all those items that were submitted to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  the lab.

 2       Q.   You did.  But did you follow up on that

 3  DNA request?

 4       A.   Well, I probably did.  But usually

 5  those -- the DNA part takes quite a while.  So I

 6  don't recall, now, the timeline, or when we ever

 7  heard anything as far as DNA results.  The latents

 8  come back pretty quick.  But the DNA takes a while.

 9       Q.   The DNA came back essentially at the end

10  of November on the other items; right?

11       A.   I don't recall.

12       Q.   But would it surprise you that there is no

13  DNA follow-up --

14            MS. ARMIJO:  Objection, calls for hearsay.

15  BY MR. BENJAMIN:

16       Q.   Are you aware of any DNA follow-up on

17  these two items?

18       A.   No, sir.

19       Q.   Did you conduct any DNA follow-up on those

20  two items?

21       A.   No, sir.

22       Q.   That would be important to have, right?

23       A.   Yes, sir, that's why we requested it.

24       Q.   But you didn't follow up on it?

25       A.   I don't recall.  I may have contacted the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   labs to see if there were any response from the DNA,

 2   how we were doing on the waiting list, as it were.

 3   But I don't recall now as far as ever obtaining any

 4   other results.

 5        Q.   Okay.  So we don't have any results?

 6        A.   Not that I'm aware of.

 7        Q.   You're the case agent, though, right?

 8        A.   Yes, sir.

 9        Q.   Okay.  And you received DNA back -- you

10   received DNA results back while you were still

11   assigned to this case?

12        A.   I don't recall.

13        Q.   Did you request a search warrant or did

14   you have a -- did you assign an agent to request a

15   search warrant of other phone numbers?

16             MR. BENJAMIN:  May I approach, Your Honor?

17             THE COURT:  You may.

18   BY MR. BENJAMIN:

19        Q.   Would it refresh your memory if I showed

20   you?

21        A.   Yes, sir.

22        Q.   Does that help, Agent?

23        A.   Yes, sir.

24        Q.   And this is a search warrant for one, two,

25   three, four, five additional phone numbers; right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.    Correct.

 2        Q.    Okay.  And the search warrant was issued?

 3        A.    Yes, sir.

 4        Q.    Okay.  And Alvino Vigil is another agent

 5   that was working for you on this case; correct?

 6        A.    Correct.

 7        Q.    Okay.  And did you receive the results

 8   back from that search warrant?

 9        A.    Yes, sir.

10        Q.    Okay.  What did those results show?

11        A.    The times of calls between Joseph Gallegos

12   and Adrian Burns.

13        Q.    Would it surprise if you none of those

14   phone numbers are Joseph Gallegos?

15        A.    No, sir.

16            MR. BENJAMIN:  May I approach?

17            THE COURT:  You may.

18   BY MR. BENJAMIN:

19        Q.    To the extent you can, Agent, can you tell

20   me what phone number on there is Joseph Gallegos'?

21        A.    No, sir, it doesn't clarify that in the

22   results of this search warrant.

23        Q.    And when you say, "It doesn't clarify,"

24   just so we're on the same sheet of music, it lists

25   phone numbers, but it doesn't provide that Jeff is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    the owner of 505, whatever the number is; right?
 2         A.    In the return, I think they are --
 3         Q.    Bad example.
 4         A.    -- they are listing the phones registered
 5    to Andrew Gallegos -- Andrew Gallegos and Joe
 6    Gallegos that were received by Mr. Burns.  But it
 7    doesn't clarify who those phone numbers -- which
 8    phone numbers go to which person.  I'm on page 2.
 9         Q.    All right.  Thank you, Agent.
10              MR. BENJAMIN:  May I approach, Your Honor?
11              THE COURT:  You may.
12    BY MR. BENJAMIN:
13         Q.    I think you were saying it says on
14    there -- no, those are times that it's assigning to
15    those; correct?
16         A.    Correct.
17         Q.    It doesn't say that any of these phone
18    numbers --
19         A.    No, sir, it doesn't clarify any of those
20    phone numbers, who made those calls, just phones
21    registered to those individuals on Mr. Burns' phone.
22         Q.    Correct.
23         A.    It doesn't tie them to any --
24              THE COURT:  When you're testifying, you'll
25    need to get closer to the mic.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

83

```
 1        A.   It doesn't clarify which phone numbers on
 2   the search warrant made those phone calls.
 3   BY MR. BENJAMIN:
 4        Q.   Okay.  And I'm showing you what's been
 5   marked for identification purposes -- I apologize,
 6   it's on a laptop.  That's what happens when we have
 7   800 or 900 exhibits -- as Government's Exhibit 761.
 8             Have you seen this document before?  I'll
 9   get you to the part that maybe that will help you.
10        A.   Yes, I believe we did.
11        Q.   Okay.  And this document that -- for the
12   purposes our questioning, is referred to as 3793,
13   which is a Bates number, you're saying identifies
14   phone numbers that called Adrian Burns; correct?
15        A.   This is the affidavit for the search
16   warrant.
17        Q.   Okay.
18        A.   They're requesting that information.
19        Q.   They're requesting that information?
20        A.   Correct.
21        Q.   And they're referencing two different
22   calls.  Can you see if the number that's in 761 is
23   one of those five numbers?
24        A.   No, sir, I don't see any of these numbers
25   here that corresponds to the numbers on the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    affidavit.

 2         Q.   And do you remember being provided the

 3    information that I showed you in 761 by Ms. Amber

 4    Sutton?

 5         A.   Yes, sir.

 6         Q.   And she said that that number --

 7              MS. ARMIJO:  Objection, hearsay.

 8              THE COURT:  Well, sounds like you are

 9    trying to elicit it for the truth.  So sustained.

10    BY MR. BENJAMIN:

11         Q.   Did Ms. Sutton identify a phone number

12    that she said was Adrian Burns' to you?  Excuse me.

13    She probably did that, thank you, I appreciate the

14    --

15              Did she identify a phone number that she

16    thought was Joe Gallegos' to you?

17         A.   Not the number specifically, just that she

18    recognized the number that called as Joe's number.

19         Q.   Okay.  And that number that she recognized

20    that called is Joe's number, is not on Agent Vigil's

21    application for a search warrant?

22         A.   I couldn't say.  I don't recall what that

23    number was that she recognized.

24         Q.   And looking at -- would looking at

25    Government's 761 help you remember what that number

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                                FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    was?
 2         A.   No, sir, I only remember the number of the
 3    phone that Adrian was using.
 4         Q.   As we stand here, do you believe that you
 5    received the phone records for Joe Lawrence
 6    Gallegos?
 7         A.   No, sir.
 8         Q.   Okay.  Those would have been important,
 9    wouldn't they?
10         A.   They could have been helpful, yes, sir.
11         Q.   Well, phone records are requested because
12    they can be very helpful.  They show who called who.
13    I apologize, Agent, you nodded your head?
14         A.   I'm sorry, you didn't ask a question.  You
15    were making a statement.
16         Q.   Phone records can show who called who?
17         A.   Yes.
18         Q.   They can show the length of a call, and a
19    short call or a long call can be helpful; right?
20         A.   Yes.
21         Q.   Okay.  And the normal affidavit for a
22    search warrant that you have requests items for
23    incoming, outgoing, missed calls, times and dates of
24    calls, and then also any and all cellular repeater
25    site information; right?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    Yes, sir.

2        Q.    Why do you want cellular repeater

3   information?

4        A.    To help us locate the individuals that we

5   were looking for.

6        Q.    Right.  Did you get that?

7        A.    It's not as helpful as it could have been.

8   But I believe we did have some general information

9   from the marshal's office, yes.

10       Q.    Would it surprise you, you had none?  No

11  location information?

12       A.    I remember getting some information from

13  the marshal's office.  I don't recall if it was in a

14  document or just from their data.

15       Q.    Would it surprise you that the New Mexico

16  State Police reports reference no location

17  information?

18       A.    No, sir.

19       Q.    That would not surprise you; correct?

20       A.    Correct.

21       Q.    Okay.  And that location information could

22  not only tell you where Adrian Burns is, it could be

23  helpful in telling you where Joe Lawrence was not;

24  right?

25       A.    No, sir.  It wasn't significant enough to

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   really help us out, as far as where the repeaters

2   are located, narrowing it down to any helpful

3   locations.

4        Q.   How can you say that, not having even

5   received the records?

6        A.   Because I know I looked at that data from

7   the marshal's office.  And the information they have

8   is too vague to be able to -- it just shows you what

9   repeater towers are near.  It doesn't -- not like on

10  TV, it doesn't show you right here, or you are at

11  certain locations.  It gives you a general area of

12  where the phones are hitting off different repeater

13  towers.  And in that area, it wasn't specific.

14       Q.   Agent, you didn't even try?

15       A.   I did, I looked at it.

16       Q.   You can't even say that you didn't even

17  request any cell phone records for Joe's phone?

18       A.   I was provided with that information from

19  the marshal's office.

20       Q.   And we're just going to go with your

21  blanket statement that I was provided that

22  information, and I looked at it, and it wasn't

23  helpful?

24       A.   Yes, sir.

25       Q.   You're smirking, Agent.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                      1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

88

```
 1        A.   Well, sometimes I have a hard time when
 2   people don't -- I'm under oath, and you don't
 3   believe when I tell you something, just because I
 4   don't have digital data proof of it.  I'm telling
 5   you, I looked at that data, it had no significance
 6   to be able to help us in locating the individuals.
 7   So that's my word.
 8        Q.   Your word.  And we're taking this word
 9   based upon the fact that we don't have any cell
10   phone records for the ones that were even requested
11   produced?
12        A.   Well, you were asking about --
13        Q.   I was asking about -- the first answer, or
14   the first question is you requested cell phone
15   records, and didn't get response to those search
16   warrants?
17        A.   Not that I recall.
18        Q.   The second question is, you did not
19   request any location data?
20        A.   That is not true.
21        Q.   Okay.  You did not receive any location
22   data?
23        A.   Also not true.
24        Q.   Agent, where is the location data?
25        A.   I viewed this data on the U.S. Marshal's
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  computers.

 2          MR. BENJAMIN:  Objection, nonresponsive.

 3          THE COURT:  Sustained.

 4  BY MR. BENJAMIN:

 5      Q.   Did you request a receipt -- did you

 6  receive a receipt from Allsup's in this matter,

 7  Agent?

 8      A.   Yes, sir.

 9      Q.   Okay.  And we heard you say that Adrian

10  went to Allsup's at 9:06?

11      A.   No, sir.

12      Q.   I'm sorry?

13      A.   No, sir.

14      Q.   I'm sorry, Andrew.  Andrew went to -- good

15  catch, Agent.

16          Andrew went to Allsup's at 9:06?

17      A.   Yes, sir.

18      Q.   Okay.  And what did he buy at that time?

19      A.   A quart of some type of automotive oil and

20  a pack of cigarettes.

21      Q.   Okay.  And you recovered the receipt for

22  that transaction; correct?

23      A.   Yes, sir.

24      Q.   Where did you recover that?

25      A.   From the suspect's vehicle.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.    Okay.  You didn't request that?

2     A.    No.

3     Q.    You could have requested that?

4     A.    I probably could have, yes.  I imagine

5  they keep those records, yes, sir.

6     Q.    Okay.  And that receipt was found in

7  December for -- that was found in the December

8  vehicle, correct?  In December of --

9     A.    I remember the two different searches.  I

10  don't recall which truck it was found in.  I believe

11  it was found in the December search.

12     Q.    December 2013 (sic), there was -- Joe

13  Gallegos' truck had been impounded, and you received

14  it, and executed a search warrant on it; correct?

15     A.    Correct.

16     Q.    Okay.  And as part of that search warrant,

17  that's where you recovered the receipt?

18     A.    You'd have to refresh my memory on that

19  one, because we searched two of his trucks.

20     Q.    Two trucks and a van?

21     A.    Yes, sir, and a Jeep.

22     Q.    Well, the Jeep was Ms. Gallegos'; correct?

23     A.    Correct.

24     Q.    Give me one second, Agent.  I apologize.

25          MR. BENJAMIN:  May I approach, Your Honor?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492



**BEAN & ASSOCIATES,** Inc.

PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  You may.
 2    BY MR. BENJAMIN:
 3         Q.   And Agent, once again, we're going to have
 4    to refer to my laptop.
 5         A.   Okay.
 6         Q.   And did that help refresh your memory on
 7    whether the receipt was recovered in December 2013
 8    (sic)?
 9         A.   Yes, sir, it did.
10         Q.   Okay.  And that receipt was recovered from
11    Joe Gallegos' vehicle in December of 2013 (sic);
12    correct?
13         A.   Correct.
14         Q.   December 2012?
15         A.   Yes, sir.
16         Q.   I'll go back to the receipt.  Andrew
17    Gallegos is seen again at Allsup's at 11:16, we saw?
18         A.   Yes, sir.
19         Q.   Okay.  Did you request a receipt for that
20    purchase?
21         A.   No, sir.
22         Q.   Okay.  And there was not another receipt
23    in the vehicle for that purchase, right?
24         A.   Right.
25         Q.   Okay.  And then at 11:26, Andrew Gallegos
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   is buying toilet paper; correct?

 2        A.   Correct.

 3        Q.   Okay.  And you were told by Joe Gallegos

 4   that they bought toilet paper at the store that

 5   night?

 6        A.   Yes, sir.

 7        Q.   Okay.  Let me ask you this:  You were

 8   asked about the gloves on Andrew Gallegos' hands?

 9        A.   Yes, sir.

10        Q.   Okay.  And he looks like he's wearing

11   gloves on his hands?

12        A.   Yes, sir.

13        Q.   Did you see the lady right behind him,

14   what she was wearing?

15        A.    I don't recall.  I remember looking closer

16   at the lady in front of her, but I don't recall.

17        Q.   It was cold that night?

18        A.   Oh, yeah.

19        Q.   And I think at one point in time during

20   the interview, you said it was real cold that night?

21        A.   It was.

22        Q.   Would it surprise you if she had gloves

23   on?

24        A.   No, sir.

25             MR. BENJAMIN:  May I approach Your Honor?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  You may.
 2              MR. BENJAMIN:  Your Honor, I'm showing the
 3   agent Government's Exhibit 331.
 4   BY MR. BENJAMIN:
 5      Q.   Go ahead and take a look at that, Agent.
 6           Are you able to identify that?
 7      A.   Yes, sir.
 8      Q.   Okay.
 9              MR. BENJAMIN:  Your Honor, I would move
10   for the admission of Government's 331.
11              THE COURT:  Any objection, Ms. Armijo?
12              MS. ARMIJO:  No, Your Honor.
13              THE COURT:  Is that just 331, or is there
14   any letter beside it, or anything?
15              MR. BENJAMIN:  I think it's just 331.
16              THE COURT:  Anybody else have any
17   objection?  Government's Exhibit 331 will be
18   admitted into evidence.
19              (Government Exhibit 331 admitted.)
20   BY MR. BENJAMIN:
21      Q.   Can you tell me what it is, Agent?
22      A.   It's an Allsup's receipt.
23      Q.   Okay.  Date?
24      A.   November 12, 2012.
25      Q.   Time?
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492
                                                          1-800-669-9492
                                            e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      A.   9:06 p.m.

2      Q.   Okay.  And there is two items on there,

3  right?

4      A.   Yes, sir.

5      Q.   The second item is easy to identify;

6  what's that?

7      A.   A box of Marlboros.

8      Q.   And you were told by Andrew Gallegos that

9  he bought Marlboro cigarettes, or that he bought

10  cigarettes?

11     A.   Right.

12     Q.   And so we know that Andrew went in the

13  store; right?

14     A.   Yes, sir.

15     Q.   And Andrew told you he went in the store?

16     A.   In his interview, I believe so, yes.

17     Q.   Do you remember testifying this morning

18  that he said he didn't go in the store?

19     A.   Well, he said that we bought cigarettes.

20  He didn't tell me he went in the store and bought

21  them.  Joe said that he went in and bought

22  cigarettes, so I don't believe that he specifically

23  said, "I went in the store and bought cigarettes."

24     Q.   And if you were talking to two individuals

25  who told you that they were high that night?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                               1-800-669-9492



PROFESSIONAL COURT
REPORTING SERVICE                               e-mail: info@litsupport.com

```
 1        A.    Yes, sir.
 2        Q.    And when we say "that night," we're
 3   talking about November 12?
 4        A.    Yes, sir.
 5        Q.    They told you they were high that night?
 6        A.    Um-hum.
 7        Q.    Other people told you they were high that
 8   night?
 9              MS. ARMIJO:  Objection, calls for hearsay.
10              THE COURT:  Sustained.
11   BY MR. BENJAMIN:
12        Q.    During the course of your investigation,
13   did you learn that other people believed that they
14   were high that night, based upon their actions?
15              MS. ARMIJO:  Objection, Your Honor.
16              THE COURT:  That sounds like it's going to
17   come from the same source.  Sustained.
18   BY MR. BENJAMIN:
19        Q.    And you have no reason to doubt that they
20   were high that night?
21        A.    No, sir.
22        Q.    That is the first item on that receipt?
23        A.    For a quart of Dexron oil.
24        Q.    ATF, right?
25        A.    MER-ATF.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      Q.   Would it surprise you that that's

 2  automatic transmission fluid?

 3      A.   No, sir.

 4      Q.   Okay.  And when you have a vehicle that's

 5  leaking transmission fluid, that's not ordinary

 6  maintenance, that's I'm putting fluids in so that my

 7  truck keeps moving; correct?

 8      A.   Correct.  It's generally sealed.

 9      Q.   I'm sorry?

10      A.   That's correct, it's generally sealed.

11      Q.   It's generally sealed.  And you probably

12  only put that in when it gets low to a point that

13  you notice the transmission is sticking, or

14  something; right?

15      A.   Right.

16      Q.   Okay.  Did you happen to notice, did

17  anybody report that they found automatic

18  transmission fluid at the scene in the bosque?

19      A.   No, sir.

20      Q.   And you testified earlier that you thought

21  that was just oil.  You didn't identify that as

22  automatic transmission fluid.  Did you ever identify

23  what that item was that was purchased?

24      A.   No, sir, I don't believe so.

25      Q.   That would be important to do?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   I don't know what vehicle that was for, so

2  it could have been.  Someone may have suggested that

3  ATF stood for automatic transmission fluids, but I

4  don't recall.

5      Q.   If it's not in the reports, they probably

6  didn't discuss that, right?

7      A.   Probably not.

8      Q.   Agent, I'm going to direct you to the

9  Allsup's video at about 9:01:30, would be perfect,

10 probably.

11          MR. BENJAMIN:  This would be what was

12 marked and entered as ED, or will be supplemented

13 into the record.  This is the complete -- the

14 Government was kind enough to play this for us, Your

15 Honor.

16          (Tape played.)

17 BY MR. BENJAMIN:

18     Q.   Could you pause it, please?  Did you ever

19 identify who that person was?

20     A.   I don't believe so.

21     Q.   Okay.  Do you know what?  And we can

22 replay if you'd like, but do you know what kind of

23 beanie he's wearing?

24     A.   No, sir.

25     Q.   Okay.  It's a dark colored beanie with a



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  white band on it.  Does that look correct?

2      A.   I can tell it's a dark colored beanie.  I

3  can't tell if that's his face or a white band on it.

4      Q.   I know this is difficult, but can you go

5  back?

6           And I think he's going to come back in a

7  couple of seconds, Agent.  Pause it.

8      A.   Yes, sir.

9      Q.   Were you able to see at that time that it

10 appears to be a white band?

11     A.   Yes, sir.

12     Q.   Okay.  Did you see a star on the front of

13 that?

14     A.   No, sir.

15     Q.   Okay.  Do you know who that person is?

16     A.   No, sir.

17     Q.   Have you ever looked at this portion of

18 the video?

19     A.   Yes.

20     Q.   Okay.  Does that look like Joe Gallegos?

21     A.   A little bit, but I mean, as far as

22 build -- a little build and height, yes, sir.

23     Q.   Okay.  Can I have 11:19.  While she's

24 getting that queued up, looking at videos is

25 extremely tedious and challenging, isn't it, Agent?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes, sir, it is, hours and hours.

 2        Q.   Can you pause it?  Do you see that person?

 3        A.   Yes, sir.

 4        Q.   And if you'd like to go forward or

 5   backward, we can do that.  Do you see the beanie on

 6   his head?

 7        A.   Yes.

 8        Q.   A dark beanie with a white band?

 9        A.   Yes, sir.

10        Q.   Would it surprise you if it had a star on

11   the front of it?

12        A.   No, sir.

13        Q.   Okay.  And last time we saw a sweatshirt

14   that was open with a shirt underneath, right?  Is

15   that what it looked like, some kind of jacket with a

16   shirt underneath?  We can go back.

17        A.   I don't recall.  I was looking at the hat.

18        Q.   Okay.  And to the extent you can just go

19   back -- oops.  Okay.  We can go back to 9:02, I'm

20   sorry.

21             Are you able to see that he's got a shirt

22   on underneath the jacket?

23        A.   Yes, sir.

24        Q.   And when we went to 11:19, we have the

25   same individual with a dark jacket, hat, white
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    stripe on the beanie?

2        A.   Yes, sir.

3        Q.   And it was probably colder at 11:00 than

4    it was at 9:00.  And he made the motion of him

5    zipping up his jacket?

6        A.   He zipped it up, yes, sir.

7        Q.   Okay.  Do you know who that was at 11:19?

8        A.   No, sir.

9        Q.   Okay.  Did it look like Joe Lawrence

10   Gallegos to you?

11       A.   Yes, sir.

12       Q.   Earlier you testified that Joe didn't go

13   in the store.

14       A.   Did I?

15       Q.   Yes.

16       A.   I believe I testified that we had video of

17   Andrew in the store three times.

18       Q.   Okay.  And I believe you testified, but at

19   least the impression was, that Joe didn't go in the

20   store at all then, right?

21       A.   That could have been the impression that

22   you received, yes, sir.

23       Q.   And is that a correct impression based on

24   these two videos?

25       A.   No.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1            MR. BENJAMIN:  May I have a second?
 2            THE COURT:  You may.
 3  BY MR. BENJAMIN:
 4       Q.   Did you go to the Giant?
 5       A.   Yes, sir.
 6            THE COURT:  Mr. Benjamin, would this be a
 7  good time for us to take our morning break?
 8            MR. BENJAMIN:  Yes, Your Honor.
 9            THE COURT:  All right.  We'll be in recess
10  for about 15 minutes.
11            (The jury left the courtroom.)
12            THE COURT:  I got something from the
13  defense, the road map for the remainder of the
14  trial, but I didn't receive anything from the
15  Government.
16            MS. ARMIJO:  We should have filed it this
17  morning by 8:30, Your Honor.  When I left at 8:05,
18  it was getting ready to be filed.
19            THE COURT:  All right.  I'll take a look
20  at it.
21            MS. ARMIJO:  And if you want it in memo
22  form, we can do that.
23            THE COURT:  No, I think that's fine.  I'll
24  have to file the defendants' anyway.  So I'll get it
25  filed, and then I'll respond to it.  Let me see if I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   can find it.

2           All right.  We'll be in recess for about

3   15 minutes.

4           (The Court stood in recess.)

5           THE COURT:  All right.  I think all the

6   defendants are in, and each defendant has at least

7   one attorney.

8           Mr. Castle has written an email to me and

9   I got it this morning -- it was over the weekend --

10  on three motions that had been filed:  A motion to

11  dismiss, supplement, and then a motion which I don't

12  know exactly the title, but it's basically where I

13  relax the Federal Rules of evidence.  All three of

14  those motions are denied.  I thought I had made that

15  clear pretrial, but if I haven't, they are all

16  denied.

17          I do intend to write an opinion on that.

18  I will probably combine those three motions into one

19  opinion.  If the gentlemen are convicted, I think

20  that that will be an appealable issue.  So I want to

21  spend some time with it.  But for purposes of your

22  planning, you should plan on those three motions

23  being denied.

24          All right.  Is there anything else we need

25  to discuss before we bring the jury in?  Anything

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   else I can do for you?  From the Government, Ms.
 2   Armijo?
 3            MS. ARMIJO:  No, Your Honor, and it was
 4   filed at 8:15 this morning.
 5            THE COURT:  I now have it.
 6            MR. BENJAMIN:  When you ask it that
 7   broadly, Your Honor --
 8            THE COURT:  I'm sorry?
 9            MR. BENJAMIN:  When you ask, is there
10   anything I can do for you, that broadly --
11            MR. BURKE:  Your Honor, may I make a brief
12   record?  I think that you just said the motion to
13   dismiss, is that the one on Trombetta?
14            THE COURT:  Yeah.
15            MR. BURKE:  I don't think you ever gave us
16   an opportunity to argue that orally.
17            THE COURT:  Well -- and that's been the
18   problem.  I was a little surprised by his request,
19   because I thought y'all might want to come post
20   trial and do some stuff, but if you're wanting an
21   answer, it's denied.
22            MR. BURKE:  Troup doesn't; I wasn't in on
23   that letter.  You said that maybe this is something
24   that can be informed by evidence that comes in
25   during trial.  That's where Troup is at, Judge, just
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   so you know, so don't be denying our --

 2            THE COURT:  Okay.  Well, let me do this:

 3   Let me tell you it's denied, but I am going to write

 4   an opinion on it, so if you want to say something

 5   else, you're welcome to say it.

 6            MR. BURKE:  Well, I do, but not now.

 7            THE COURT:  Okay.  I understand.  No, I

 8   understand that.  All right.

 9            All rise.

10            (The jury entered the courtroom.)

11            THE COURT:  All right.  Mr. Williamson,

12   I'll remind you that you're still under oath.

13            THE WITNESS:  Yes, Your Honor.

14            THE COURT:  Mr. Benjamin, if you wish to

15   continue your cross-examination of Mr. Williamson,

16   you may do so at this time.

17            MR. BENJAMIN:  Thank you, Your Honor.

18            THE COURT:  Mr. Benjamin?

19   BY MR. BENJAMIN:

20       Q.  Agent, I'm going to ask you to review

21   what's on the screen, and it's been marked as

22   Defendant's AV.

23            MS. ARMIJO:  Is this admitted?

24   BY MR. BENJAMIN:

25       Q.  Do you recognize who is in that photo?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes, sir.

 2        Q.   And who is wearing the jersey?

 3        A.   Joe Gallegos.

 4        Q.   Okay.  And do you see what he's wearing on

 5   his head?

 6        A.   A Cowboys beanie.

 7        Q.   Okay.  And I think I said a star, but the

 8   letters are white on that beanie; right?

 9        A.   Yes, sir.

10        Q.   Does that look like the beanie he could

11   have been wearing at 11:19?

12        A.   Yes, sir.

13        Q.   Agent, you probably did this multiple

14   times, but at one point in time you timed a drive

15   from 4 Erin Court, which is whose address?

16        A.   Joe and Andrew Gallegos.

17        Q.   To the scene -- and we'll call it the

18   bosque -- if I refer to it as the bosque, we're

19   talking about the crime scene down by Bernardo;

20   right?

21        A.   Yes, sir.

22        Q.   Okay.  And you, at least at some point in

23   time in your report, noted that it took how long to

24   get from 4 Erin Court to the bosque?

25        A.   It's either 34 or 27 minutes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Okay.  Would -- 34 minutes from 4 Erin

2  Court to the bosque; 27 minutes from the bosque to

3  the Allsup's on 47?

4    A.   Correct.

5    Q.   And there is two routes that you can take

6  to go from Los Chavez -- Los Lunas to the bosque;

7  right?

8    A.   At least two, yes, sir.

9    Q.   Okay.  And -- well, I guess one would be

10  on I-25?

11    A.   Yes, sir.

12    Q.   And the second would be down Highway 340,

13  which becomes 116, and then you would have to take

14  probably a right on U.S. 60; is that right?

15    A.   Left.

16    Q.   If you're going south, you're going to be

17  on the east side of the river, so you're going to go

18  right; right?

19    A.   Correct.  I thought that was 304 that went

20  down there.

21    Q.   I apologize.  Essentially back roads or

22  the interstate?

23    A.   Correct.

24    Q.   And your times take into account the

25  interstate?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   No, sir.  I drove down 313, the road that

2    goes past all the businesses through Belen, through

3    Veguita, that way.

4         Q.   Would it surprise you if it took almost 45

5    minutes to go that way?

6         A.   I don't drive that fast, but no, I don't

7    believe it would.  Depending on the time of day, I

8    guess it might.

9         Q.   Well, I mean, it's not so much time of

10   day, and you're going through -- you mentioned

11   Veguita?

12        A.   Belen.

13        Q.   Belen.  La Joya.  And La Joya is -- and I

14   don't want to say town, but it's a marked

15   settlement, for lack of a better term, in between

16   Veguita and Belen; right?

17        A.   Yes, sir.

18        Q.   Okay.  And those all are little

19   communities where you have to slow down dramatically

20   to go through there?

21        A.   Yes, sir.

22        Q.   Or you should?

23        A.   Yes, sir.

24        Q.   So your testimony is those could be done

25   at 34 minutes, as opposed to I-25 at 34 minutes?

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    A.   I believe that was the route that I drove

2  was through the towns, not on the interstate.  But I

3  don't recall now.

4    Q.   Okay.  Because, I mean, if you drove from

5  Los Lunas to Bernardo on I-25, it would take you 34

6  minutes, at least, if you're doing 80 on I-25; is

7  that fair?

8    A.   It could be, I'm not real sure.

9    Q.   Joe and Andrew, we covered -- both say

10  they go to Allsup's; right?

11    A.   Yes, sir.

12    Q.   And during their interviews, you told them

13  multiple -- both of them -- or -- and each of them

14  multiple times, that we're trying to pin down a

15  small amount of time that night; right?

16    A.   Yes, sir.

17    Q.   But then you said an hour and a half at

18  one point, and you said four hours at one point.  Do

19  you remember that?

20    A.   No, sir.  I thought we were talking about

21  7:30 to 11:30.

22    Q.   Okay.  So we're talking about them being

23  unaccounted for from 7:30, which we'll come back

24  to -- how that's a starting point, to 11:30; right?

25    A.   Yes, sir.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1      Q.   Because the report says that they were at
 2 Allsup's sometime between --
 3           MS. ARMIJO:  Objection, calls for hearsay.
 4           THE COURT:  That sounds like you're trying
 5 to offer it for the truth, so sustained.
 6           MR. BENJAMIN:  Your Honor, I'm offering it
 7 for impeachment, because we've seen the video, and
 8 it's the --
 9           THE COURT:  It's not his statement.
10           MR. BENJAMIN:  It is.  Let me lay a
11 foundation.
12 BY MR. BENJAMIN:
13      Q.   Do you remember -- you generated reports
14 in this matter; right?
15      A.   Yes, sir.
16      Q.   And in those reports, you mention that you
17 talked to two different people, specifically Michael
18 Sutton and Leroy Vallejos.
19      A.   Yes, sir.
20      Q.   Okay.  And you -- in there, came to the
21 conclusion that between 11:30 and 12:30 is when the
22 Gallegos brothers were at Allsup's?
23      A.   Yes, sir.
24      Q.   Okay.  And each of the Gallegos brothers
25 gave you -- let's call at it huge varying timeframe
```



SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    of sometime that night they were at Allsup's; right?

 2        A.   Yes, sir.

 3        Q.   Okay.  And that was each brother that was

 4    high; right?

 5        A.   Yes, sir.

 6        Q.   And Michael Sutton is not a drug user?

 7        A.   I'm not aware, I couldn't say.

 8        Q.   Did he tell you he used drugs that night?

 9             MS. ARMIJO:  Objection, calls for hearsay.

10             THE COURT:  Sustained.

11    BY MR. BENJAMIN:

12        Q.   During the course of your investigation,

13    do you believe that Michael Sutton uses drugs?

14        A.   No, sir.

15        Q.   He gave you a time that you used as a

16    starting point, right?

17        A.   For their meeting at Allsup's?

18        Q.   Yes.

19        A.   Yes, sir.

20        Q.   Okay.  And in your report, you said that

21    that time was from 11:30 to 12:30.

22             MS. ARMIJO:  Your Honor, still hearsay.

23             THE COURT:  Well, I think probably what is

24    in his report is being offered for the truth of it,

25    so it would be sustained.
```



SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                   201 Third NW, Suite 1630
Santa Fe, NM 87501                           Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                    1-800-669-9492
                                          e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Your Honor, I'm offering it
 2   for impeachment purposes, Your Honor, based upon his
 3   attention to detail.  And if I could have one more
 4   question, Your Honor, I think I'll clear it up.
 5              THE COURT:  Well, let me -- I'm reluctant,
 6   but let me hear the question, then I may make a
 7   ruling on it.
 8   BY MR. BENJAMIN:
 9      Q.   We see -- 15 minutes before the earliest
10   time in your report is when we see Andrew in the
11   store at 11:16; right?
12      A.   Yes, sir, 11:15, 11:16.
13      Q.   Okay.  Your report never mentions that
14   that initial time block of 11:30 to 12:30 is
15   inaccurate?
16      A.   Um.
17      Q.   You never retract that statement?
18      A.   No, sir.
19      Q.   Okay.  You never clarify that statement?
20      A.   No, sir.  Just that they were at the
21   Allsup's.
22      Q.   Right.  And so that's the important part,
23   that they were or were not at the Allsup's; right?
24      A.   Correct.
25      Q.   And we know they were at the Allsup's at
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492
                                                 e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    two different times?

2         A.    Correct.

3         Q.    Right?

4         A.    9:00, and again after 11:00.

5         Q.    Okay.  Michael Sutton was interviewed

6    fairly quickly in this matter?

7         A.    Yes, sir.

8         Q.    Okay.  In his initial interview, he

9    wouldn't comment on who he was with?

10        A.    Right.

11        Q.    Okay.  I'm going to refer to them as the

12   brothers, both told you initially who he was with,

13   right?  Leroy?

14        A.    After we already knew, yes, sir.

15        Q.    Well, the first time you talked to them,

16   they freely told you that they talked to Leroy?

17        A.    Yes, sir.

18        Q.    And they told you multiple times they

19   talked to Leroy at Allsup's?

20        A.    Yes, sir.

21        Q.    And you kept asking them, "Well, during

22   this period of time, can you tell me where you were

23   at?"  And they kept telling you that they were at

24   Allsup's; right?

25             Let me rephrase that, I apologize.  When

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  you interviewed the brothers on November 20 -- and

2  that interview started at 6:00 at night, right?

3      A.   Yes, sir.

4      Q.   And that interview continued past

5  midnight, until about 1:00 a.m.?

6      A.   With both brothers, yes, sir.

7      Q.   With both brothers.

8      A.   Yes.

9      Q.   And you spoke to both brothers after

10  midnight?

11      A.   I believe some of the breaks pushed it

12  past.

13      Q.   Right.  You spoke to Joe Gallegos first?

14      A.   Right.

15      Q.   For a good amount of time.  And at about

16  9:00, started speaking to Andrew Gallegos, took a

17  break, and then went back and talked to each of them

18  after midnight?

19      A.   Yes, sir.

20      Q.   And so that's over six hours of

21  questioning.  Is that fair?

22      A.   Well, no, sir, they weren't being

23  questioned that entire time.

24      Q.   Well -- but when we go to work for eight

25  hours a day, we take a lunch break, and we don't get

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492
                                                        e-mail: info@litsupport.com



1  to say that I was only at work for seven hours,

2  they'd ask you whether you worked your full day

3  because we include, essentially, the start and stop

4  time; right?

5       A.   Generally, yes, sir.

6       Q.   Okay.  That's where we're at.  They were

7  in an interview room for over six hours -- or New

8  Mexico -- I don't want to quibble, Agent -- they

9  were in New Mexico State Police agent custody for

10  questioning purposes for well over six hours?

11       A.   Yes, sir.

12       Q.   And during that time, you asked them where

13  they were at, and they told you, we were high;

14  right?

15       A.   Yes, sir.

16       Q.   They told you they drove around; yes?

17       A.   Yes, sir.

18            MS. ARMIJO:  Your Honor, if we could be

19  specific as to which brother is making --

20  BY MR. BENJAMIN:

21       Q.   Let's stick to Joe right now.  Okay.  Joe

22  told you he was high?

23       A.   Yes, sir.

24       Q.   Joe told you he was driving -- he and his

25  brother were driving around?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      A.   Yes, sir.

2      Q.   He gave you addresses and intersections

3 that they went to?  Vivian?  Do you remember that,

4 in Belen?

5      A.   Yes.

6      Q.   Okay.  He told you he went to Ross Street

7 in Belen?

8      A.   I think he told us where they went.  I

9 don't know if he gave us the street.  I don't recall

10 exactly that part.  But they went to go see this

11 person or that person.  They were looking for a

12 party.  And they clarified where the Allsup's was.

13      Q.   Okay.

14      A.   They may have, but I don't recall.

15      Q.   Okay.  And then they told you they came

16 back to -- we went to the Allsup's, and Joe told you

17 that they'd purchased a four-pack of toilet paper --

18 they purchased toilet paper, and then you asked, was

19 it an eight-pack, a 12-pack?  And Joe said it was a

20 four-pack; right?

21      A.   Yes.

22      Q.   Okay.  And then he told you that they

23 purchased beer; right?

24      A.   I don't recall.  I remember them

25 mentioning toilet paper and the gas.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Right.  And then, do you remember

2   discounting that nobody sees you purchasing beer;

3   right?

4      A.   I don't believe they were the ones that

5   told us that they bought beer.  I remember seeing

6   them buy the toilet paper.  And that evening he said

7   he bought toilet paper.  And I think maybe Andrew

8   had said they bought cigarettes.  So cigarettes and

9   toilet paper, I believe, was all we got from them.

10     Q.   Okay.  And those were two items that we

11  can verify that they purchased; right?

12     A.   Yes, sir.

13     Q.   Okay.  You went out to the scene on

14  November 14th of 2012 and conducted a search at the

15  bosque; correct?

16     A.   Yes, sir.

17     Q.   And that was for shell casings with a

18  metal detector.  Do you remember generating a report

19  that said you searched for shell casings with a

20  metal detector and didn't find any?

21     A.   No, sir, I don't recall that.

22     Q.   And that was on November 14.  On November

23  15, you directed Agent Vigil to generate a search

24  warrant for 4 Erin Court; right?

25     A.   Yes, sir.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And that search warrant was generated

 2   based upon the idea that you wanted to see what was

 3   inside the Gallegos -- or Joe Gallegos' house?

 4        A.   Yes, sir.

 5        Q.   Okay.  And you had been outside that house

 6   for quite a while, observing it; right?

 7        A.   In the neighborhood, yes, sir.

 8        Q.   Okay.  Do you remember observing it on the

 9   14th?

10        A.   No, sir.

11        Q.   When I say you, did you have agents

12   observing it on the 14th?

13        A.   I don't recall.  I remember observing his

14   mother's home.

15             MR. BENJAMIN:  Your Honor, may I approach

16   the witness?

17             THE COURT:  You may.

18   BY MR. BENJAMIN:

19        Q.   Do you recognize that photo?

20        A.   Yes, sir.

21        Q.   Okay.

22             MR. BENJAMIN:  And, Your Honor, I move to

23   admit it, Government's 423.

24             THE COURT:  Any objection?

25             MS. ARMIJO:  No, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  Any objection from anyone
 2    else?
 3                MS. TORRACO:  No.
 4                THE COURT:  Government's Exhibit 423 will
 5    be admitted into evidence.
 6                (Government Exhibit 423 admitted.)
 7                MR. BENJAMIN:  And Your Honor, I'd request
 8    permission to publish.
 9                THE COURT:  You may.
10                MR. BENJAMIN:  The Bates number is -- I
11    retract my permission to publish.  We don't have
12    that -- there was a rule laid out by Ms. Gilbert,
13    and I'm not following it, and I apologize, Your
14    Honor.
15    BY MR. BENJAMIN:
16        Q.   Agent?
17        A.   Yes.
18        Q.   When you look at that video -- or, excuse
19    me that picture, that picture has a couple vehicles
20    in it; correct?
21        A.   One prominently, yes, sir.
22        Q.   Okay.  And then another one less
23    prominently, kind of off to the left?
24        A.   Yes, sir.
25        Q.   Okay.  Did you see the date that was in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the lower right-hand corner of that photo?

2         A.    I believe it said November 14.

3         Q.    Right.  And that photo was taken by one of

4    your agents during the course of that investigation?

5         A.    Okay.

6         Q.    Okay.  You said, "Okay."  Is that correct,

7    or not?

8         A.    Could be, yes, sir.

9         Q.    Well, you recognize the photo; right?

10        A.    Yes, sir.

11        Q.    Okay.  And that wasn't a note taken by the

12   Gallegos brothers?

13        A.    No, sir.

14        Q.    Okay.  That was a photo taken by New

15   Mexico State Police?

16        A.    I believe so, yes, sir.

17        Q.    Okay.  And do you know when the police

18   were observing the house on that day?

19        A.    No, sir, but I believe it's in the late

20   afternoon, early evening.

21        Q.    Well, it gets dark in November, I think,

22   probably around 5:30 or so; right?

23        A.    Could be, yes, sir.

24        Q.    Roughly, more or less?

25        A.    Okay.



SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492
                                                         1-800-669-9492
                                                e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1      Q.    That looks like pretty bright out, right?

 2      A.    A long shadow cast by the truck, yes, sir.

 3      Q.    Okay.  Did anybody knock on their door

 4 that day?

 5      A.    I don't recall, but I don't believe so.

 6      Q.    Right.  It would be noted in a report if

 7 somebody knocked on their door that day?

 8      A.    Correct, if they were attempting to make

 9 contact, yes, sir.

10      Q.    I'm sorry?

11      A.    If they were attempting to make contact,

12 yes, sir.

13      Q.    Okay.  Because agents like to note on

14 such-and-such date at such-and-such time, I

15 attempted to make contact, and made contact, or no

16 contact; right?

17      A.    Correct.

18           MR. BENJAMIN:  Your Honor, may I approach

19 the witness?

20           THE COURT:  You may.

21           MR. BENJAMIN:  May I approach, Your Honor?

22           THE COURT:  You may.

23 BY MR. BENJAMIN:

24      Q.    Do you recognize that photo, Agent?

25      A.    Yes, sir.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         Q.    That's the complete photo; correct?

 2         A.    Yes, sir.

 3               MR. BENJAMIN:  Your Honor, move to admit

 4    Government's 428.

 5               THE COURT:  Any objection?

 6               MS. ARMIJO:  No, Your Honor.

 7               THE COURT:  How about from any other

 8    defendant?  Not seeing or hearing any, Government's

 9    Exhibit 428 will be admitted into evidence.

10               (Government Exhibit 428 admitted.)

11    BY MR. BENJAMIN:

12         Q.    And what do we see in this photo, Agent?

13         A.    Three vehicles.

14         Q.    Okay.  And you -- during the course of

15    your investigation, you identified the van as

16    belonging -- that blue and white van -- as belonging

17    to Joe Gallegos?

18         A.    Yes, sir.

19         Q.    You identified the truck that's just

20    behind that, and the one than we can only see one

21    headlight of, as belonging to Joe or Andrew

22    Gallegos?

23         A.    Yes, sir.

24         Q.    And you identify the other truck off to

25    the left that we can barely see, as belonging to the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    other brother.   They each had one truck; right?

2         A.    The truck outside the fence is Andrew

3    Gallegos', yes.

4         Q.    Okay, thank you.   We can't tell which is

5    which, but the other truck is Joe Gallegos'?

6         A.    Yes.

7         Q.    And this was on November 15?

8         A.    Yes, sir.

9         Q.    What time of day did the agents execute

10   the search warrant on November 15?

11        A.    It was after 10:00 in the evening, 10:45,

12   I believe.

13        Q.    Okay.   2245 would be 10:45; correct?

14        A.    Correct.

15        Q.    At this point in time everybody was home,

16   weren't they?

17             MS. ARMIJO:   Objection, calls for

18   speculation.

19             MR. BENJAMIN:   To the extent he knows,

20   Your Honor.

21             THE COURT:   Well, lay some foundation

22   whether he even knows this, before we ask him.

23   BY MR. BENJAMIN:

24        Q.    Okay.   Agent, did anybody -- did the

25   person or the agents that were with the person who

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                          1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

1    took the photo, approach and knock on the door that

2    day?

3         A.   No, sir.

4         Q.   Okay.  Is anybody noted as having knocked

5    on the door that day?

6         A.   No, sir.

7         Q.   Okay.  Do you remember testifying on

8    Friday that you guys approached -- you tried to

9    approach Joe  Lawrence Gallegos multiple times?

10        A.   No, sir, I remember stating that we were

11   looking for them.

12        Q.   Do you remember on Friday testifying that

13   you tried to make contact with Joe Gallegos multiple

14   times?

15        A.   No, sir.

16        Q.   Okay.  You did not try to make contact

17   with Joe Gallegos before executing the search

18   warrant?

19        A.   On this day, no, sir.

20        Q.   At all?

21        A.   No, sir.

22        Q.   When you searched the house -- actually,

23   let me withdraw that.  During the course of the

24   interviews, you were told that the brothers scrapped

25   metal; right?

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                 Albuquerque, NM 87102
(505) 989-4949                                                                     (505) 843-9494
FAX (505) 843-9492                                                                 FAX (505) 843-9492
                                                                                   1-800-669-9492
PROFESSIONAL COURT                                                                 e-mail: info@litsupport.com
REPORTING SERVICE



```
1        A.   Yes, sir.

2        Q.   Okay.  And one of the places that they

3   scrapped metal at was Weiss Recycling; right?

4             MS. ARMIJO:  Objection, calls for hearsay.

5             THE COURT:  Well, ask him how he knows

6   this, whether it's something was told to him or

7   whether he personally observed it, and then I'll

8   allow.

9   BY MR. BENJAMIN:

10       Q.   Did you observe a receipt in the house for

11  scrap metal?

12       A.   Yes, sir.

13       Q.   Okay.  Did that receipt come from Weiss

14  Recycling?

15       A.   I believe so.

16       Q.   And both brothers told you that they

17  scrapped metal?

18            MS. ARMIJO:  Objection, hearsay.

19            THE COURT:  Well, these are the brothers.

20            MS. ARMIJO:  I know, but it's party

21  opponent.  It's not his.

22            THE COURT:  Well, I don't think you can

23  elicit it.  Sustained.

24            MR. ROBERTS:  Judge, may we approach?

25            THE COURT:  You may.
```



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                              1-800-669-9492
PROFESSIONAL COURT                       e-mail: info@litsupport.com
REPORTING SERVICE

BEAN & ASSOCIATES, Inc.

```
 1              (The following proceedings were held at
 2    the bench.)
 3              MR. ROBERTS:  Judge, I'm a little
 4    confused.  It seems a little inconsistent that when
 5    they offer their statements and the brothers'
 6    statements in, it's okay, but when we offer the same
 7    statements in, it's  not.
 8              THE COURT:  That's the rules of evidence.
 9    It's a party opponent.
10              MS. TORRACO:  But if it's the same
11    statement that's already been admitted --
12              THE COURT:  You want to cross-examine
13    about what it was, but I don't know.  This one is
14    brand-new.
15              MS. TORRACO:  I think what Mr. Roberts is
16    saying, it's not that the statement has already been
17    said; it's already in evidence.
18              THE COURT:  You can cross-examine about
19    what was said, what the Government brought out.  But
20    if it's a brand new area, you probably can't solicit
21    it.
22              MS. TORRACO:  Since we're here, can I also
23    ask you, so if some of the previous witnesses gave a
24    statement, we can ask of him if that statement was
25    inconsistent with something that had already been
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    testified to; right?

2              THE COURT:  I guess I'd have no --

3              MS. TORRACO:  Because I thought that had

4    happened before.  And we were getting confused about

5    the ruling.  So just, for example, if there was a

6    previous witness and that witness gave a statement,

7    we can now ask Agent Williamson?

8              THE COURT:  Not necessarily.

9              MS. TORRACO:  It just depends.

10             THE COURT:  It depends on the -- I think

11   Mr. Benjamin thinks that any statement that's in

12   evidence can be used to impeach another witness.  I

13   don't think that's correct.  I don't think that's

14   impeachment.  The statements of this witness that

15   are being used to impeach this witness are for

16   classic impeachment.  So I'll just have to take it

17   one at a time.

18             MR. BENJAMIN:  And I understand, Your

19   Honor.  I would move to offer the statement that was

20   just offered, and I think there's a lot of other

21   statements that I've got in my cross under the Rule

22   of Completeness.  They are the individuals that

23   brought out --

24             THE COURT:  That only applies to witness

25   statements.  I realize the Tenth Circuit has

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  expanded it some.  But I do think on this particular

2  statement, this is just a new area.

3          MR. BENJAMIN:  And Your Honor, I

4  understand, but the problem with this being a new

5  area and not being allowed to explore that area

6  thoroughly, the statements that were brought out by

7  the Government were not specific; they were just

8  general broad, sweeping statements, which the only

9  way to rebut effectively are with specific

10  statements.  And so I would liken it to character

11  evidence.

12          THE COURT:  But with all due respect, you

13  know, there are other ways to admit these

14  statements.  It's your strategic call.

15          MR. BENJAMIN:  I understand that.

16          THE COURT:  I don't think this is for

17  completeness.  If there are some that are, I'll

18  consider it, and broaden the rule, but I think this

19  is going into a new area.

20          MR. BENJAMIN:  Continued.

21          MS. ARMIJO:  And, Your Honor, he has

22  indicated that he has a lot of questions for

23  cross-examination on it.  We would ask that he not

24  read the question purposely to get it out in front

25  of the jury, just to have it sustained.  "Did Joe

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  say," if it's not anything he got into, he's not
 2  going to be able to.
 3            THE COURT:  Just be careful.
 4            MR. BENJAMIN:  I will, Your Honor.  I
 5  won't try to blow through it.
 6            (The following proceedings were held in
 7  open court.)
 8            THE COURT:  All right.  Mr. Benjamin?
 9  BY MR. BENJAMIN:
10       Q.   Agent, you were present when the house
11  (sic) was conducted; correct?
12       A.   When the search warrant was conducted on
13  the house?  Yes, sir.
14       Q.   Thank you, Agent.  And it was requested to
15  be a nighttime search for specific reasons?
16       A.   Yes, sir.
17       Q.   And one of the reasons was that you wanted
18  to search for DNA with a black light, and it's
19  easier to do that at night than it was in the
20  daytime?
21       A.   Yes.
22       Q.   And in fact, that was listed as a specific
23  reason you wanted to do it at night; correct?
24       A.   Correct.
25       Q.   Okay.  And that search was done with a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   black light?

 2        A.    Yes, sir.

 3        Q.    And you had access to the property from

 4   essentially 10:45 until sometime whenever you guys

 5   decided to stop, the morning of the 16th?

 6        A.    Yes, sir.

 7        Q.    Okay.  Because both brothers weren't

 8   there; right?

 9        A.    Right.

10        Q.    And essentially, once you had taken

11   possession of property, there was no rush or

12   anything else, because this was a preplanned

13   operation?

14        A.    Correct.

15        Q.    So I think that's a way of saying you were

16   able to thoroughly inspect the property?

17        A.    Yes, sir.

18        Q.    Okay.  And this wasn't essentially a

19   property that looked like it had been cleaned?

20        A.    No, sir.

21        Q.    Right.  I apologize, let me -- I seem to

22   have written down incorrectly an exhibit number.

23              And when we say it's a house that hadn't

24   been cleaned, that's because there was things all

25   over the place; right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.

 2        Q.    There was items on the floor?

 3        A.    Yes, sir.

 4        Q.    There was items on -- essentially, there

 5   is a bookshelf that I'm picturing in one of your

 6   pictures that has just hundreds of things on it;

 7   right?

 8        A.    Yes, sir.

 9        Q.    And there was dust all over the place?

10        A.    Yes, sir.

11        Q.    So it's fair to describe this property as

12   not having been cleaned in any way, shape, or form

13   before -- I mean, you've -- let me back up a little

14   bit.  You've searched many properties?

15        A.    Yes, sir.

16        Q.    Okay.  And you're always searching a

17   property for some form of evidence, whether it's

18   physical evidence -- and physical being,

19   essentially, a jacket, physical being DNA, or some

20   other form of item; right?

21        A.    Yes, sir.

22        Q.    And at the point in time of this search,

23   you'd probably been doing this for 10 years?

24        A.    Um --

25        Q.    I'm trying to remember the math.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1       A.   Yes, sir.

 2       Q.   You've been doing this for a long time?

 3       A.   Yes, sir.

 4       Q.   Okay.  And you've gone through hundreds of

 5  properties?

 6       A.   Yes, sir.

 7       Q.   And fair to describe this as probably one

 8  of the messier and less clean properties that you've

 9  ever been in?

10       A.   No, sir.

11       Q.   Well, okay.

12       A.   Unfortunately.

13       Q.   Okay.  But this certainly wasn't one

14  that -- you've been in properties that have been

15  cleaned up, and you can tell that somebody was aware

16  that they were going to be searched; right?

17       A.   Yes, sir, I believe so.

18       Q.   And you wouldn't describe this property as

19  that?

20       A.   No, sir.

21       Q.   Okay.  And during the search -- actually,

22  subsequent to the search of the house, you recovered

23  all of the items that were of interest to you; is

24  that fair to say?

25       A.   That the crime scene techs discovered or
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that we found, yes, sir.

2         Q.   That the geeks were interested in?

3         A.   Yes, sir.

4         Q.   Okay.  And I say that because they come in

5    and kind of get to pick and choose what they want?

6         A.   Yes, sir.

7         Q.   They're not limited in any way?

8         A.   No.

9         Q.   Okay.  And so if they see something they

10   want, they tag it and then put it in the evidence

11   bag for testing later on?

12        A.   Correct.

13        Q.   And you recovered essentially 17 different

14   items from that house; right?

15        A.   I believe so.

16        Q.   Okay.  And then had the opportunity to

17   test all of those items if you wanted?

18        A.   Yes, sir.

19        Q.   And none of those 17 items generated any

20   additional information; is that fair?

21             Let me rephrase this:  I showed you some

22   reports earlier today, essentially 915 to 916, do

23   you remember, for the handcuffs and for the two

24   bullets; correct?

25        A.   Yes, sir.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    And those came back, and those -- no other

2   information was done -- no other work was done on

3   those items after those reports.   Okay?

4      A.    Not by our direction.   I don't believe so.

5      Q.    Not by your direction.   Okay.   Seventeen

6   items were pulled out of the house.   Some of them,

7   or as many as you had requested, were tested; right?

8      A.    Yes, sir.

9      Q.    Okay.   And I apologize, when you nod your

10  head, Ms. Bean gets mad at both of us.

11     A.    Okay.

12     Q.    And you had the opportunity to test those

13  items; right?

14     A.    Yes, sir.

15     Q.    Okay.   And none of those items then

16  generated any additional information?

17     A.    No, sir, not that I recall.

18     Q.    Okay.   Do you remember who was at the

19  house when you arrived that night?

20     A.    Yes, sir.

21     Q.    Who was at the house that night?

22     A.    Karen Cartwright.

23     Q.    For lack of a better question, who is she?

24     A.    A felon, acquainted with the subjects.

25     Q.    Okay.   And did she say somebody else had

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  been at the house?
 2       A.   Yes, her boyfriend.
 3            MS. ARMIJO:  Objection, calls for hearsay.
 4            THE COURT:  Sustained.
 5  BY MR. BENJAMIN:
 6       Q.   Is it fair to say the next major thing you
 7  did in this case, Agent, is ended up with a location
 8  for the brothers?
 9       A.   This was on the 15th, and they were
10  located on the 20th, so there was quite a bit that
11  got done in between.
12       Q.   Okay.  I guess I'm not trying to make
13  light of it.  Probably a lot of administrative and a
14  lot of other essentially running of leads and
15  everything else, but the reports essentially jumped
16  from the 15th, 16th to the arrest at the hotel; is
17  that fair?
18       A.   Yes, except for maybe noting I think we
19  had a tip they were at their mother's.  We
20  surveilled all night there, and the gathering of
21  evidence.
22       Q.   Okay.  But they weren't at the mother's?
23       A.   No.
24       Q.   Okay.  And so that was just one of those
25  things that somebody probably called, and then you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  ended up and ran down a rabbit trail; is that fair

2  to describe what that was?

3       A.   Yes, sir.

4       Q.   So ultimately you locate them in

5  Albuquerque at the Imperial Motel, I think is what

6  the name is; right?

7       A.   Yes, sir.

8       Q.   And executed the arrest warrants that were

9  issued essentially a day or two before; right?

10      A.   They were issued on the 15th, yes, sir.

11      Q.   Okay.  And so the arrest warrants were

12 issued before you searched the house?

13      A.   Yes, sir, they were.  Well, I'm not sure.

14 I know they were -- the affidavits were submitted

15 the same time, I'm not sure.  I would imagine the

16 arrest warrants and the search warrants were all

17 done together, but --

18      Q.   Okay.  Let me back up so the ladies and

19 gentlemen of the jury know what we're talking about.

20           An arrest warrant is where you lay out

21 facts that you have, that you believe satisfy

22 probable cause?

23      A.   Yes, sir.

24      Q.   And that's your opinion, all right?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    All right.  And that you take to a judge,
 2   and a judge then decides whether or not to sign that
 3   document; is that fair?
 4        A.    Correct.
 5        Q.    Okay.  And that's essentially the same
 6   process for a search warrant, generally, yes?
 7        A.    Yes, sir.
 8        Q.    Okay.  And so at that point in time, when
 9   you ask for that search warrant to be issued, you
10   were relying on mainly this four-hour block of time
11   that you asked the brothers about many days later;
12   is that fair?
13        A.    Yes, sir.
14        Q.    Okay.  Because you didn't have any DNA
15   results?
16        A.    Correct.
17        Q.    You didn't have any fingerprints?
18        A.    Correct.
19        Q.    You didn't have any cell phone records?
20        A.    Correct.
21        Q.    Fair to say, you didn't have any physical
22   evidence, period?
23        A.    At the time of the arrest or at the time
24   of the search warrant?
25        Q.    At the time you asked for the issuance of
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  the arrest warrant, you had no physical evidence,

2  period?

3        A.   No, sir, I don't believe so.  I believe

4  you're right.

5        Q.   Thank you.  Sorry, when we're asking

6  double negatives, it gets confusing.  And we know

7  that based upon the 17 items that were recovered at

8  the house, that there was no additional physical

9  evidence that was generated from the search warrant?

10       A.   Just corroborating evidence was seized,

11  yes.

12       Q.   Well, okay.  And when you're talking about

13  corroborating evidence, you're suggesting the

14  jacket -- the camouflage jacket that was seized at

15  the house?

16       A.   And some other things, yes, sir.

17       Q.   But the one that comes to mind for me is

18  you're suggesting a camouflage jacket; correct?

19       A.   Yes, sir.

20       Q.   And did you request that camouflage jacket

21  to be checked for -- and I'm going to say fuel, but

22  what I'm talking about is an accelerant; right?

23       A.   Yes.

24       Q.   Okay.  Did you request that jacket to be

25  checked?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        A.    I don't recall if we did or not.

2        Q.    Would it surprise you if there is no

3   request and no report?

4        A.    No, sir.

5        Q.    Okay.  And you found evidence when you

6   searched the house at 4 Erin Court of -- I'm going

7   to screw up the name, probably, but cutting torches;

8   right?

9        A.    Yes, sir.

10       Q.    Okay.  And you were told and saw evidence

11  that there are cutting torches and items being --

12  metal items being cut up at that residence?

13       A.    Yes, sir.

14             MS. ARMIJO:  Objection.  Move to strike

15  because it calls for the hearsay.  "You were told."

16             MR. BENJAMIN:  That doesn't call for

17  hearsay.  That's his observation at the house.

18             THE COURT:  Let's make sure it is.  Lay a

19  foundation to see if it is.

20  BY MR. BENJAMIN:

21       Q.    Agent, you were present at the house?

22       A.    Yes, sir.

23       Q.    You saw cutting torches at the house?

24       A.    Yes, sir.

25       Q.    You saw vehicles -- or a vehicle that was
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   in the process of getting cut at the house?
 2        A.   I believe so.
 3        Q.   You saw other metal items that were in the
 4   process -- that were, shall we say, just cut up, not
 5   in their natural state?
 6        A.   I don't recall.
 7        Q.   Okay.  Did you have any reason to doubt
 8   that they -- when they told you that they cut up
 9   items and they had a torch, that they cut up items?
10             MS. ARMIJO:  Objection, Your Honor, that's
11   the part that's hearsay, when they told you that
12   they did.
13             THE COURT:  Sustained.
14             MR. BENJAMIN:  Your Honor, optional
15   completeness, that was one of her direct questions.
16             THE COURT:  Give me the direct question
17   she asked.
18             MR. BENJAMIN:  She asked about whether
19   they explained what they did at the house.
20             THE COURT:  All right.  I'll let you ask
21   the question.
22             MR. BENJAMIN:  May I have a second, Your
23   Honor?
24             THE COURT:  You may.
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   BY MR. BENJAMIN:
 2        Q.   You don't have any reason to doubt that
 3   they cut items up with torches?
 4        A.   No, sir.
 5        Q.   Thank you.  And I jumped around, but let's
 6   go back to Albuquerque on the 20th.
 7        A.   Okay.
 8        Q.   And we're going back to the hotel.  When
 9   you -- you were not present when the -- and I'm
10   going to describe it as the warrant was executed,
11   essentially, people going through the door; is that
12   fair?
13        A.   Correct.
14        Q.   Okay.  You responded probably 45 minutes
15   or an hour later?
16        A.   A few minutes later, I'm not sure how
17   long.
18        Q.   Okay.  Not a long time, not a short time,
19   just enough time to probably get to that side of
20   town?
21        A.   Correct.
22        Q.   Okay.  And one of the items that was --
23             MR. BENJAMIN:  836 has already been
24   admitted, ma'am?  Essentially -- it has not?
25        Q.   One of the items, excuse me -- you
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1 essentially encountered, ultimately, and I believe

2 you spoke to all of these individuals, a Charlene

3 Baldizan?

4      A.   Yes, sir.

5      Q.   A Loretta Apodaca?

6      A.   I don't believe I spoke to Loretta, no.

7      Q.   Okay.  Angela Gallegos?

8      A.   Yes.

9      Q.   And Andrew Gallegos?

10      A.   Yes, sir.

11      Q.   And Joe Gallegos?

12      A.   Yes, sir.

13      Q.   Okay.  And essentially, based upon your

14 investigation, you ended up charging Charlene

15 Baldizan and Loretta Apodaca with a criminal offense

16 out of that; correct?

17      A.   I know that Charlene had warrants, but I

18 believe -- I don't recall if we charged them with

19 the aiding and abetting or not.

20      Q.   Well, harboring?

21      A.   Harboring.

22      Q.   Okay.  And so that everybody understands,

23 harboring doesn't -- we have what's called

24 substantive offense, which in this case was a

25 murder; right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

142

1      A.   Yes, sir.

2      Q.   And then we have -- harboring would be

3  something that occurred later on.  I give you food,

4  car, money, or something along that lines; right?

5      A.   Other than a family member, as I

6  understand it, yes.

7      Q.   Okay.  And that was why Angela Gallegos

8  was never charged; right?

9      A.   Yes, sir.

10      Q.   And you told her that?

11      A.   Yes, sir.

12      Q.   And that made Charlene Baldizan very

13  upset, didn't it?

14      A.   Yes, sir.

15      Q.   But so it's fair to say that your

16  investigation, even though it resulted in them

17  getting charged, you don't believe that they had any

18  knowledge or anything about anything before, say --

19  they didn't have any knowledge of the murder.

20          MS. ARMIJO:  Objection, foundation,

21  speculation.

22          THE COURT:  He did an investigation.  I'll

23  allow the question.  Overruled.

24      A.   I believe they did.

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    BY MR. BENJAMIN:

2         Q.    You believe they did have involvement?

3         A.    No, I believe they had knowledge.  I

4    thought your question was if I believed they had

5    knowledge of the crime that had been committed.

6         Q.    Let me break that up, because I think you

7    and I are talking about two different things, but

8    probably almost the same thing.

9         A.    All right.

10        Q.    Charlene and Loretta and Angela knew that

11   they're wanted; is that fair?

12        A.    Yes.

13        Q.    That the brothers were wanted?

14        A.    Yes, sir.

15        Q.    But they didn't have any knowledge about

16   the murder, other than what had been probably

17   broadcast.  They were not parties to the murder;

18   right?  Based upon your investigation?

19             MS. ARMIJO:  Your Honor, compound

20   question.  It has several different --

21             MR. BENJAMIN:  Let me withdraw it.  It's

22   getting too compound.  She's right.

23   BY MR. BENJAMIN:

24        Q.    You and Agent Mowduk -- is that how you

25   pronounce his name?

SANTA FE OFFICE                                                                MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                                  (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492
                                                                                1-800-669-9492
PROFESSIONAL COURT                                        e-mail: info@litsupport.com
REPORTING SERVICE



BEAN & ASSOCIATES, Inc.

```
 1        A.   Yes, sir.

 2        Q.   Okay.  Essentially you and Agent Mowduk

 3   were the ones that interviewed Joe Gallegos?

 4        A.   Yes.

 5        Q.   You were also the same two that

 6   interviewed Andrew Gallegos?

 7        A.   Yes.

 8        Q.   During the course of that investigation,

 9   do you remember Agent Mowduk telling Andrew Gallegos

10   that he and his brother were the only two that they

11   could not verify the location of?

12             MS. ARMIJO:  Objection, calls for hearsay.

13             MR. BENJAMIN:  Your Honor, I would submit

14   it as basis of the admission of a party opponent,

15   statement of a party opponent.  They're directly

16   party opponents based upon the fact that this can be

17   verified and rebutted through redirect or other

18   means.

19             THE COURT:  The objection is sustained.

20             MR. BENJAMIN:  As to any statement by a

21   law enforcement individual that's offered under the

22   same theory, Your Honor?

23             THE COURT:  If you're just offering

24   out-of-court statements for the truth of the matter,

25   I'll sustain the objection.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  Your Honor, may I approach?
 2              THE COURT:  You may.
 3              (The following proceedings were held at
 4   the bench.)
 5              MR. BENJAMIN:  A permitted investigation
 6   technique, Your Honor, is obviously for officers to
 7   tell statements -- tell defendants whatever they
 8   want.  I've got about ten different questions that
 9   are based upon the idea that Agent Mowduk, who was
10   sitting next to Agent Williamson when they're doing
11   the interview -- and he's the one that for some
12   reason did the majority of the talking -- made
13   multiple misrepresentations to Andrew Gallegos.
14              Now, there is nothing that -- as I said,
15   part of an investigation technique, but those, I
16   believe, are admissions of a party opponent because
17   they directly contradict the evidence that was
18   generated, and they had at that point in time, and I
19   think it's for the jury to say that even after he
20   heard that there was no admission.
21              THE COURT:  He's a State Police officer.
22   I'm just not seeing an exception that lets this in.
23              MR. BENJAMIN:  I guess, directing
24   specifically that -- I'm suggesting he was the party
25   opponent.  The Government is the person, and the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   party that he is working for, and working
 2   hand-in-hand, and the New Mexico State Police --
 3              THE COURT:  I'd be glad to look at some
 4   case law on that, but I'm not going to permit it at
 5   the present time.
 6              MR. BENJAMIN:  I apologize, Your Honor, I
 7   haven't been -- thank you, Your Honor.
 8              (The following proceedings were held in
 9   open court.)
10              THE COURT:  Mr. Benjamin?
11   BY MR. BENJAMIN:
12        Q.   Agent Mowduk (sic), did you not request
13   the phone records of Amber Sutton; correct?  And
14   when I say "Amber Sutton," Amber Sutton's phone?
15        A.   The one that she used?
16        Q.   Correct.
17        A.   I don't recall, sir.
18        Q.   Okay.  And if there weren't any phone
19   records, that would probably be the case?
20        A.   Yes, sir.
21        Q.   Okay.  So without those phone records, we
22   can't see that the first time she calls a police
23   agency is at 8:30 a.m. on the 13th of November;
24   correct?
25        A.   Yes, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Okay.  We can't deal with that there were

 2   no calls made on November 12th to Adrian Burns'

 3   phone?

 4        A.    Correct.

 5        Q.    We don't have any call logs, and I should

 6   have -- that was kind of an abbreviated question, I

 7   apologize.  In fairness, we don't have any call logs

 8   showing that Amber Sutton called or did not call

 9   Adrian Burns' cell phone Monday November 12?

10        A.    That we requested?

11        Q.    Correct.

12        A.    No, sir.

13        Q.    Okay.  We don't have any cell phone

14   information, and when I say "we," New Mexico State

15   Police, does not, in its investigative file in this

16   case, have any cell phone information showing where

17   Amber Sutton's cell phone was that night, either?

18        A.    Her personal cell phone?

19        Q.    Correct.

20        A.    Correct.

21        Q.    And for that matter, we don't have that

22   for Adrian Burns' cell phone?

23        A.    I believe she provided us documents that

24   she obtained since she's the account holder.

25        Q.    Right.  She provided you documents, but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  those documents do not provide you the location of

2  that cell phone, they're only a call printout from a

3  website?

4      A.   Correct.

5      Q.   Okay.  And as we said, as we agreed

6  earlier, the New Mexico State Police investigative

7  file doesn't contain that information?

8      A.   Correct.

9      Q.   And it's important to get those cell phone

10 records early, right, because --

11     A.   You have to preserve them early.

12     Q.   Okay.  Fair.  And your agency sent out

13 multiple preservation letters to cell phone

14 carriers; correct?

15     A.   Yes.

16     Q.   And what is a preservation letter?

17     A.   That's just a request for the company to

18 not -- because of so much data being transmitted by

19 these cellular phones, if they don't hold onto it or

20 keep it as long as maybe we would like them to.  So

21 they know if they get a preservation letter, they

22 need to maintain those or keep those -- the

23 information for that phone call.

24     Q.   Right.  And so that, for instance, text

25 messages can be deleted in as little as -- when I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    say text message, the content of those text messages

2    on a cell phone carrier server, can be deleted in as

3    little as 30 days?

4        A.   A little quicker on some.

5        Q.   Okay.  And that varies from carrier to

6    carrier?

7        A.   Yes.

8        Q.   Okay.  And so that's one of the reasons

9    why it's important to get this information early or

10   it disappears?

11       A.   Correct.

12       Q.   Okay.  And the same thing is true for

13   location data, that disappears sooner than, for

14   instance, just simply the outgoing and incoming

15   calls; right?

16       A.   I'm not aware of how long they keep it.

17       Q.   Okay.  Would it surprise you if that

18   information, the cell phone repeater cite location,

19   disappears before the call log information,

20   incoming, outgoing calls?

21       A.   No, sir.

22            MR. BENJAMIN:  May I approach the witness,

23   Your Honor?

24            THE COURT:  You may.

25



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  BY MR. BENJAMIN:

2      Q.   I'm showing you what's been admitted and

3  marked as 354.

4      A.   Yes, sir.

5      Q.   What are those, Agent?

6      A.   Those are the handcuffs that were found on

7  Adrian Burns.

8      Q.   And those are, for lack of a better term,

9  a name brand; correct?

10     A.   Yes, sir.

11     Q.   They're Smith and Wesson handcuffs, and

12 when I say "name brand," that's as opposed to

13 unmarked or unnamed, just generic handcuffs; right?

14     A.   Yes, sir.

15     Q.   And those have a serial number?

16     A.   Yes, sir, they do.

17     Q.   Did you attempt to run that serial number?

18     A.   I don't believe there is a database for

19 running handcuffs.  But I don't believe I did, no.

20     Q.   Did you make -- do you remember making a

21 to-do list in this case that a portion of the title

22 was called "damage control"?

23     A.   No, sir.

24     Q.   Would it help your memory if I approached?

25     A.   Sure.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1          MR. BENJAMIN:  May I approach, Your Honor?

2          THE COURT:  You may.

3  BY MR. BENJAMIN:

4      Q.   For the record, Agent, I'm showing you a

5  document Bates stamped 71707.  And I don't want you

6  to read from this, obviously, but do me a favor and

7  take a look at this and see if looking at this

8  appears to be a to-do list, if it would refresh your

9  memory on some of the items you were looking into.

10         Don't read from it, Agent, but you're

11  welcome to read it and refresh your memory.

12     A.   No, sir, I don't know if I would really

13  consider that notes to myself as a to-do list.  They

14  were more notes from that trial.

15     Q.   Well, one of the items was "serial number

16  on cuffs, in S.F."; right?  In Santa Fe?

17     A.   Yes.

18     Q.   Okay.  Did you try and run the serial

19  number on the handcuffs?

20     A.   I don't recall.

21     Q.   Okay.  Would it surprise you if there is

22  no note in the file that says you tried to run -- "I

23  ran the handcuffs and came up with no database or no

24  database entry"?

25     A.   No, sir.

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                      1-800-669-9492
                                          e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Q.   Okay.  And do you remember trying to put

2  pressure on Charlene Baldizan?

3    A.   No, sir.

4    Q.   Okay.  That's one of the items on your

5  to-do list, isn't it?

6    A.   It's one of the items on that list, yes,

7  sir.

8    Q.   That's a document 1 through 8 with

9  different specific what appear to be tasks.  Would

10  you agree with me on that?

11    A.   No, sir.  I'd agree some of those notes,

12  maybe some of them are tasks.

13    Q.   How can you interpret "pressure on

14  Charlene Baldizan" as anything other than a to-do

15  item?

16    A.   It might have been a note to myself as to

17  how the agents interviewed Charlene, or what

18  pressure had been put on her prior; not necessarily

19  a note to myself to apply pressure later on.

20    Q.   Irrespective, nothing came of that

21  pressure on Charlene Baldizan for the investigation

22  of this murder?

23    A.   Not that I recall, this was post pretrial.

24         MR. BENJAMIN:  Your Honor, may I approach?

25         (The following proceedings were held at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  the bench.)

2          MR. BENJAMIN:  Your Honor, because of the

3  rule and because I'm not trying to blow through it,

4  essentially that's a note that was taken by -- I

5  believe that's a note -- I think I can lay the

6  foundation for this.  That was a note that was taken

7  during the interview of Daniel Orndorff, who is

8  known as Sleepy.  Throughout the entire statement it

9  doesn't say never said they did it.

10          That is a conclusion in the statement by

11  Agent Williamson of the then-existing state of mind,

12  and so I'm going to move to -- not the document, but

13  I'm going to move to admit that statement as an

14  exception to the hearsay rule, because that's --

15  this is a note that I think he took, and I think I

16  can lay the foundation for that during the

17  interview.

18          MS. ARMIJO:  And it's based on hearsay.

19          THE COURT:  I think it's going to be

20  difficult for you to do that.  I won't preclude a

21  particular question.  Don't ask the question that

22  reveals the statement of, but I'll let you see if

23  you can make it a state of mind.  It sure looks to

24  me like he's writing down what other people didn't

25  do or did do.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                        1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                             e-mail: info@litsupport.com

```
 1              MR. BENJAMIN:  I'm not sure, actually, I
 2    guess.  Okay, I think I know how.
 3              MS. ARMIJO:  Then I'll also note the date
 4    is 11/29/12, so this is clearly more than 14 days
 5    after the incident, and it's just a typical
 6    interview where you're interviewing somebody.  And
 7    if Daniel says that they didn't do it, it's clear
 8    hearsay, and his then-existing state of mind is not
 9    relevant, nor is this statement.
10              MR. BENJAMIN:  This is Agent Williamson's
11    state of mind, based upon who is --
12              THE COURT:  I think it's hard to fit it
13    into a state of mind.  That's more --
14              MR. BENJAMIN:  It's a conclusion.
15              THE COURT:  -- conclusions that he's
16    reaching, rather than his plans or his thoughts.
17    But you know, I'll let you see if you can ask some
18    foundation question, but again, don't reveal the
19    conclusion --
20              MR. BENJAMIN:  I understand.
21              THE COURT:   -- in the foundation
22    questions.
23              MS. TORRACO:  Your Honor, just so -- it
24    might come up on my cross, as well.  But the problem
25    is that Amber Sutton testified that Sleepy told her,
```

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                        1-800-669-9492
                                               e-mail: info@litsupport.com



BEAN &ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  "Don't go there, don't go there," implying that

2  something really bad was happening inside the

3  Gallegos home.  And she was forbidden for exploring

4  that any further; that when Sleepy's interviewed by

5  Agent Williamson, he doesn't give that information.

6  And so it goes to show that there is a conflict in

7  the testimony and it goes to show -- impeach Amber

8  Sutton for her prior statement, because there is no

9  collaboration that that actually happened, and

10  that's what I believe also is an important part of

11  the agent's notes.

12          THE COURT:  I just have to take them a

13  question at a time.  I'm skeptical they're going to

14  get into that note, but I'm not precluding it.  I'll

15  have to see what the questions are.

16          Did you have something, Mr.  Beck?

17          MR. BECK:  I was going to respond to that,

18  that the rules of evidence don't bend one way or the

19  other.  The remedy is for Daniel Orndorff to come in

20  and testify whether they did it or not.

21          MS. TORRACO:  Is he on your witness list?

22  I thought you guys were calling him.

23          THE COURT:  Let's determine that some

24  other time.

25          MS. TORRACO:  Yes, sir.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              (The following proceedings were held in
 2   open court.)
 3              THE COURT:  All right.  Mr. Benjamin?
 4              MR. BENJAMIN:  May I approach, Your Honor?
 5              THE COURT:  You may.
 6   BY MR. BENJAMIN:
 7       Q.   For the record, I'm approaching with a
 8   document Bates stamped 71681.  Do you recognize the
 9   handwriting on the document, Agent?
10       A.   Unfortunately, yes.
11       Q.   The unfortunately, yes, would translate to
12   what?
13       A.   It's mine.
14       Q.   Agent, I need to lay a foundation.  Okay?
15       A.   Okay.
16       Q.   Who is Daniel -- or who is Sleepy?
17       A.   Daniel Orndorff.
18       Q.   And he was an individual that you
19   interviewed during the course of this investigation?
20       A.   Yes, sir.
21       Q.   Okay.  Do you remember what day you
22   interviewed him?  Did you interview him on November
23   29, 2012?
24       A.   I don't recall if it was.  He was rather
25   difficult to locate.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   If I approached with this document again,
 2   would that be able to help you?
 3        A.   Yes, sir, it probably could.
 4        Q.   Does that appear like a note that you took
 5   at or during the time interview of Daniel Orndorff?
 6        A.   Yes.
 7        Q.   Otherwise known as Sleepy?
 8        A.   Yes, sir.
 9        Q.   Okay.  And you asked him a myriad of
10   questions during that interview; correct?
11        A.   Correct.
12        Q.   Okay.  And during your interviews, is it
13   fair to say that a lot of times you tell
14   individuals, as New Mexico State Police Officers,
15   you're required, or you do -- and I guess I'm still
16   not sure -- but you're required -- or you do record
17   all of your interviews; correct?
18        A.   We are required, yes.
19        Q.   Okay.  As part of your policy, you're
20   required to record them?
21        A.   Yes, sir.
22        Q.   Okay.  And you guys then record all your
23   interviews.  And you say that at the beginning of
24   the interview; right?
25        A.   Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    It's November 29, this is Agent Rich
 2   Williamson and Agent Mowduk, and we're interviewing
 3   Daniel Orndorff, or whoever you're interviewing?
 4        A.    Correct.
 5        Q.    Okay.  And you read the statement that was
 6   in your notes; correct?
 7        A.    Yes.
 8        Q.    That I showed you?
 9        A.    Yes.
10        Q.    And if you'd like to refer to it again,
11   you're able to refer to it again.  Does that appear
12   to be a note that you made to yourself, based upon
13   your thought process, while you were hearing Mr.
14   Orndorff?  Or does that happen to be something that
15   Mr. Orndorff said?
16        A.    I believe that's something that I thought.
17        Q.    Okay.
18             MR. BENJAMIN:  Your Honor, I move to admit
19   the statement based upon the then-existing state of
20   mind.  It was made at or during the time of the --
21             THE COURT:  He can give his conclusion,
22   after talking to him.
23   BY MR. BENJAMIN:
24        Q.    And what was your conclusion that you
25   wrote down after speaking to Daniel Orndorff?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1      A.   I would have to look at my report.  I
 2 don't know if that note was the conclusion of the
 3 whole interview.
 4      Q.   Well, Agent, that's --
 5           MR. BENJAMIN:  And Your Honor, I think I
 6 can -- I think that's inconsistent.
 7           THE COURT:  Well, I think instead of
 8 asking questions about his statements, or statements
 9 he made in the past, you can ask him what his
10 conclusion was.
11           MR. BENJAMIN:  Okay.
12           MS. ARMIJO:  But Your Honor, that's going
13 to be asking what a conclusion was as to another
14 person's statement.  Still calling for hearsay.
15           THE COURT:  Well, his conclusion may be
16 based on hearsay.  But he has a conclusion.  He can
17 state his conclusion.
18 BY MR. BENJAMIN:
19      Q.   What was your conclusion you wrote down,
20 Agent?
21           THE COURT:  No, that's not the question.
22           MR. BENJAMIN:  Okay.
23           THE COURT:  Ask him what his conclusion
24 was.
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   BY MR. BENJAMIN:
 2        Q.   What was your conclusion after hearing
 3   Sleepy or Daniel Orndorff's testimony?
 4        A.   That Daniel Orndorff said --
 5             THE COURT:  No, don't get into statements.
 6   Tell him what your conclusion was.  You said you had
 7   one.  Give it.
 8        A.   That he wasn't going to tell us that they
 9   did it.
10             MR. BENJAMIN:  Your Honor, I think I can
11   impeach him with an inconsistent statement.
12             THE COURT:  No, let's move on.  Let's go.
13             MR. BENJAMIN:  Your Honor, for purposes of
14   the record -- actually, this is the document that I
15   was supposed to --
16             THE COURT:  Denied.
17             MR. BENJAMIN:  No, I understand.  I was
18   just -- for the purposes of the record, Your Honor,
19   I move to admit that.
20             THE COURT:  It's denied.  Let's try to
21   move along, Mr. Benjamin.  There are a lot of gaps
22   here.
23             MR. BENJAMIN:  I apologize, Your Honor.
24   BY MR. BENJAMIN:
25        Q.   You spoke to a Christyn Collins during the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   course of your investigation?
 2        A.   Yes, sir.
 3        Q.   Okay.  Did you -- and she's an employee at
 4   Giant; correct?
 5        A.   Correct.
 6        Q.   Did you obtain a receipt from Giant?
 7        A.   We obtained a computer printout of their
 8   receipt, yes.
 9        Q.   Did that make it into the file?
10        A.   Yes, sir.
11        Q.   I would assume it did, based upon -- do
12   you remember her telling you that she bought -- that
13   somebody came in and bought $2.63 worth of the gas?
14             MS. ARMIJO:  Your Honor, calls for
15   hearsay.
16             THE COURT:  Sustained.
17             MR. BENJAMIN:  Your Honor, it's based upon
18   his investigation.
19             THE COURT:  Sustained.  Let's not argue
20   with the rulings.
21             MR. BENJAMIN:  Understood, Your Honor.
22   BY MR. BENJAMIN:
23        Q.   She was showing -- when you interviewed
24   her, you didn't provide her with a name.  You showed
25   her a photo and asked if she knew who that person
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   was?

2       A.   No sir.

3       Q.   No, sir?

4       A.   No, sir.

5       Q.   Do you have that photo still?

6       A.   Unless it's in the file, I don't have it.

7       Q.   During the course of your investigation,

8   how many times did the name or word "SNM" come up?

9       A.   Um --

10      Q.   Fair to say none?

11      A.   I don't recall any.

12      Q.   Okay.  You would have noted it if it had;

13  right?

14      A.   Yes, sir.

15      Q.   Where was Amber Sutton at from -- and I

16  think the time that you used earlier was 7:30 to

17  11:30 that night?

18      A.   Looking for her husband -- her boyfriend.

19      Q.   And what did you do to verify that?

20      A.   She advised that she had spoken with

21  Daniel Orndorff in the neighborhood, and Daniel also

22  confirmed that he had made contact with her.

23      Q.   And are you aware if she went to Joe

24  Gallegos' house?

25      A.   No, sir.



SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                          1-800-669-9492
                                                  e-mail: info@litsupport.com

1    Q.   Okay.  Are you aware that she did not go

2  to Joe Gallegos' house that night?

3    A.   That was my belief, yes, sir.

4    Q.   Okay.  Aside from that, what other

5  verification do you have of what Amber Sutton was

6  doing that night?

7    A.   As I recall, that was the only significant

8  thing that we noted, that she, in the midst of her

9  search, went to the neighborhood where she believed

10 they lived, and made contact with Daniel Orndorff.

11   Q.   Right.  But --

12   A.   I don't recall any other documentation or

13 anything, of her whereabouts.

14   Q.   Okay.  And where are -- and before 11:30

15 that night, where was Michael Sutton?

16   A.   Also out looking for Daniel (sic) at his

17 sister's request.

18   Q.   Where?

19   A.   I mean, looking for Adrian.  Well, they

20 were all over the place, I guess.  The area, places

21 they thought they might go, but mainly the Allsup's.

22   Q.   But you asked Joe Gallegos and Andrew

23 Gallegos specifically where they went during that

24 time block; right?  And they told you, "We're on

25 video," or "We believe we went to the Allsup's";

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                         (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

 1   right?

 2        A.   Correct.

 3        Q.   But where did Michael Sutton go during

 4   that timeframe?

 5        A.   That I know of, the Allsup's.

 6        Q.   Well, we know that he was there at some

 7   point in time with Joe and Andrew, at 11:19, or so;

 8   right?

 9        A.   Correct.

10        Q.   Where was he before that?

11        A.   I do not know.

12        Q.   Okay.  Did you pull his phone records?

13        A.   I don't believe we did.

14        Q.   Okay.  Do you have anything to show that

15   Amber and Michael talked that night?

16        A.   No, sir, I don't believe so.

17        Q.   Where was Leroy Vallejos that night, other

18   than at Allsup's at 11:19?

19        A.   I believe he was picked up at his sister's

20   residence.

21        Q.   Okay.

22        A.   He may live there, actually.

23        Q.   And he's related by marriage, or

24   essentially a relationship to Michael Sutton; right?

25        A.   I believe so.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                     FAX (505) 843-9492
                                                                         1-800-669-9492
                                                              e-mail: info@litsupport.com



 1      Q.   Okay.  And they live essentially almost on

 2  the same property; is that fair?

 3      A.   Yeah.  He lives adjacent.

 4      Q.   Okay.  What time did he get picked up at

 5  his sister's house?

 6      A.   I don't --

 7           MS. ARMIJO:  Objection, calls for hearsay.

 8           THE COURT:  Well, lay a foundation as to

 9  how he knows.

10  BY MR. BENJAMIN:

11      Q.   Do you have any idea what time -- whether

12  Leroy Vallejos got picked up that night?

13           THE COURT:  Well, that doesn't help me

14  any.  Sustained.

15           MR. BENJAMIN:  Okay.  Let me try again,

16  Your Honor.

17  BY MR. BENJAMIN:

18      Q.   During the course of your investigation,

19  were you able to determine whether or not Leroy

20  Vallejos got picked up at his sister's house?

21      A.   Yes.

22      Q.   Okay.  And do you know what time that was

23  at?

24           MS. ARMIJO:  Objection.

25           THE COURT:  Well, sustained.  I mean,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   you're not laying any foundation.  Sustained,
 2   Mr. Benjamin.
 3           MR. BENJAMIN:  Moving on, Your Honor.
 4   BY MR. BENJAMIN:
 5       Q.  Daniel Orndorff was interviewed; correct?
 6       A.  Yes, sir.
 7       Q.  And he said that he --
 8           MS. ARMIJO:  Objection, hearsay.
 9           MR. BENJAMIN:  Withdrawn.  Let me rephrase
10   it.
11   BY MR. BENJAMIN:
12       Q.  During the course of your interview, you
13   believe Daniel Orndorff went to the Gallegoses'
14   house and they were at the house?
15           MS. ARMIJO:  Objection, foundation; calls
16   for hearsay.
17           THE COURT:  Well, he can answer this
18   question, overruled.
19       A.  Yes, sir.
20   BY MR. BENJAMIN:
21       Q.  And then he left and he ran into Amber
22   Sutton?
23           MS. ARMIJO:  Objection, hearsay.
24           THE COURT:  Well, are you observing these
25   things, or is somebody telling you these things?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

     1              THE WITNESS:  Someone told me those

     2    things.

     3              THE COURT:  Then you can't answer.

     4              MR. BENJAMIN:  Your Honor, he's the case

     5    agent.

     6              THE COURT:  You're arguing with the Court,

     7    Mr. Benjamin.  Stop.

     8              MR. BENJAMIN:  I apologize, Your Honor.

     9    BY MR. BENJAMIN:

    10         Q.   Where was Adrian Silva (sic) at that

    11    night, on November 12?

    12         A.   I don't believe I have any information for

    13    that.

    14         Q.   Where was Willie Romero at that night?

    15         A.   No information.

    16         Q.   Who is Willie Romero?

    17         A.   A childhood friend of the Gallegos

    18    brothers.

    19         Q.   Do you know what Willie Romero's

    20    relationship was to Adrian Burns?

    21         A.   No, sir.

    22         Q.   Okay.  Who is Joe Portio?  And the

    23    spelling would be P-O-R-T-I-O; correct?

    24         A.   I believe so.

    25         Q.   Okay.  Who is that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   I believe that's -- I'm not certain, but I

2  believe that's a police officer from Los Lunas.

3    Q.   Belen?

4    A.   Belen, could be.

5    Q.   Okay.  And that was an individual who,

6  during the course of your investigation, individuals

7  pointed at him as having issues with Adrian Burns;

8  right?

9         MS. ARMIJO:  Objection, Your Honor.  This

10  calls for hearsay.

11         THE COURT:  Ask him how he knows, if he

12  knows at all.  Ask him first how he knows, if he

13  knows.

14  BY MR. BENJAMIN:

15    Q.   Do you know if Joe Portio is an individual

16  who had problems with Adrian Burns?

17    A.   No, sir.

18    Q.   Did you investigate Detective Joe Portio?

19    A.   I believe I assigned someone to gather

20  reports or any contact that he had with them.

21    Q.   Did anybody review those reports?

22    A.   I don't recall.

23    Q.   Sitting here now, can you tell me that you

24  thoroughly reviewed or investigated Joe Portio?

25    A.   Myself, no, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   Who is Mark Torres?

2      A.   That name doesn't ring a bell.

3      Q.   Detective Mark Torres from the Los Lunas

4  Police Department?

5      A.   Okay.

6      Q.   Okay.  Does that ring a bell?

7      A.   Not from my investigation.  From

8  subsequent investigations, yes, sir.

9      Q.   Do you remember telling -- withdraw.

10         Who were Adrian Burns' main buyers?  And

11  when I say "buyers," you knew that during the course

12  of your investigation, you determined that Adrian

13  Burns was selling heroin; correct?

14     A.   Correct.

15     Q.   Okay.  Who were his main buyers?

16     A.   I was advised that his three main

17  customers --

18         MS. ARMIJO:  Objection, calls for hearsay.

19         THE COURT:  Sustained.

20  BY MR. BENJAMIN:

21     Q.   Did you learn that he had more than three

22  buyers?

23     A.   No, sir.

24     Q.   Who was Burns' supplier?

25     A.   I did not ever gather that information.

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. BENJAMIN:  May have one second, Your

2    Honor.

3              THE COURT:  You may?

4              MR. BENJAMIN:  Pass the witness, Your

5    Honor.

6              THE COURT:  Thank you, Mr. Benjamin.

7              Ms. Torraco?

8              MS. TORRACO:  Thank you, Your Honor.

9              May it please the Court.

10             THE COURT:  Ms. Torraco?

11             MS. TORRACO:  Thank you, Your Honor.

12                       CROSS-EXAMINATION

13   BY MS. TORRACO:

14        Q.   Good afternoon -- morning, Agent.

15        A.   Good morning.

16        Q.   Good afternoon, Agent.  Is that the proper

17   title, Agent Williamson?

18        A.   Actually, I'm a sergeant now.

19        Q.   Sergeant.  Congratulations.  Were you

20   promoted after this investigation?

21        A.   Yes, ma'am.

22        Q.   Congratulations.

23             What I'd like to do is start in

24   chronological order, and I think that might be the

25   easiest way to walk through your investigation and
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the different things that you did.

2         A.    Okay.

3         Q.    So let me start with the day that you were

4    called out, and that was November 12 of 2012;

5    correct?

6         A.    Correct.

7         Q.    And you were actually called out because

8    there was body found that apparently had been a part

9    of this fire; correct?

10        A.    Yes, ma'am.

11        Q.    And when you arrived on scene, you talked

12   to the Fire Chief?

13        A.    A firefighter and then the fire chief,

14   yes, ma'am.

15        Q.    Okay.  And it was obviously a homicide.  I

16   mean, that conclusion was easy to draw right from

17   the beginning; correct?

18        A.    That was my belief.

19        Q.    Yes.  And that was also the firefighter's

20   belief, and that's why they called out for police;

21   correct?

22        A.    Well, they found a body, so that's why

23   they called us.

24        Q.    Okay, fair enough.  And so once you were

25   there, you took a look at the body; right?

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                      FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes, ma'am.

 2        Q.    And the body still had identifiable

 3   clothes on it; correct?

 4        A.    Correct.

 5        Q.    And it had identifiable socks; right?  The

 6   socks weren't completely burned?

 7        A.    Right.

 8        Q.    They were only partially burned; correct?

 9        A.    Yes, ma'am.

10        Q.    And the pants, those were only partially

11   burned too; correct?

12        A.    Yes, ma'am.

13        Q.    And there was a shirt or a hoodie on the

14   decedent?

15        A.    Yes, ma'am, I believe so.

16        Q.    Was it a hoodie, I believe?

17        A.    I think it was.

18        Q.    Okay.  And that, too, was only partially

19   burned; correct?

20        A.    Correct.

21        Q.    But the decedent didn't have any shoes on;

22   correct?

23        A.    Correct.

24        Q.    Did you make note of that anywhere in your

25   report?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   I would imagine in our investigation, in

2   our observations, that we stated he was in his

3   socked feet.

4       Q.   Okay.  But you would imagine that -- but

5   are you surprised to learn that I didn't see

6   anywhere in any of the reports that people were

7   concerned that he didn't have any shoes.

8       A.   I don't know if it was a concern.

9       Q.   Okay.

10      A.   It was something we probably observed --

11      Q.   Okay.

12      A.   -- and noted.

13      Q.   Okay.  Well, wouldn't you want to, as

14  you're putting the puzzle pieces together, to figure

15  out what happened, don't you want to find out where

16  he lost his shoes?

17      A.   It apparently didn't seem like a priority,

18  compared to the whole crime scene.

19      Q.   I understand that at that time it was not

20  a priority, but today, I'm asking you, did you ever

21  find out where his shoes are?

22      A.   No, ma'am.

23      Q.   Did you ever find the shoes in the

24  vehicle?

25      A.   No, ma'am.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

 

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1      Q.   So through the course of your

2   investigation, did you understand that when he left

3   home that night, that he was wearing shoes?

4      A.   No, ma'am.  I don't believe that question

5   came up.

6      Q.   Okay.  So you never asked Amber Sutton if

7   he was wearing shoes?

8      A.   Not that I recall.

9      Q.   And you never tried to find out where the

10  last place was that he wore shoes; correct?

11     A.   Correct.

12     Q.   Because he clearly was not wearing shoes

13  when his body was found?

14     A.   Correct.

15     Q.   And there were no shoes in the vicinity;

16  correct?

17     A.   Correct.

18     Q.   And there were no shoes in the vehicles;

19  correct?

20     A.   Correct.

21     Q.   And all the rest of his clothes were not

22  burned in their entirety, so it would be reasonable

23  to think that his shoes were also not burned in its

24  entirety; correct?

25          MS. ARMIJO:  Objection, calls for

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   speculation.
 2   BY MS. TORRACO:
 3        Q.   Based on your training and experience.
 4             THE COURT:  He can give what his
 5   conclusion was.  Overruled.
 6   BY MS. TORRACO:
 7        Q.   Do you think that the shoes just burned up
 8   in the fire?
 9        A.   Yes.
10        Q.   You think the shoes burned up in the fire
11   but the socks didn't?
12        A.   I don't believe the shoes were on him.
13        Q.   Oh, okay.  Where, based on your
14   investigation, do you believe the shoes are?
15        A.   Well, he wasn't wearing his shoes,
16   obviously, and so I guess my thoughts were --
17        Q.   No, no, no, no, no.  I can't have you
18   guess.
19        A.   Okay.
20        Q.   Okay.  So if you remember what your
21   thoughts were, that's great.  If you don't remember
22   what your thoughts were, that's fine, too.
23        A.   I don't recall actually spending much time
24   thinking about his shoes.  So no, I don't recall.
25        Q.   Okay.  So after you take a look at the
```

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                     201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                       (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492



PROFESSIONAL COURT                           1-800-669-9492
REPORTING SERVICE                        e-mail: info@litsupport.com

```
 1   burned body, I think at some point in your direct

 2   testimony with Ms. Armijo, you said that you learned

 3   that Amber Sutton was on her way to the crime scene?

 4        A.   She had arrived at the crime scene.

 5        Q.   Oh, okay.  She had arrived.  Did you talk

 6   to her prior to her arriving at the crime scene?

 7        A.   No, ma'am.

 8        Q.   Okay.  And when she arrived at the crime

 9   scene, was she allowed to go up to the body?

10        A.   No, ma'am.

11        Q.   And how did you know that that body was --

12   I don't know if they're husband and wife, or

13   boyfriend/girlfriend -- I don't know --

14        A.   I assigned Agent Nathan Lucero to go and

15   meet with her up at the road, a ways away from the

16   crime scene.  And he gathered information about

17   clothes' descriptions and tattoos.

18        Q.   Okay.  And so the tattoos that she

19   described, did she describe one on the neck, on the

20   back of his neck?

21        A.   I believe so.

22        Q.   And were you able to confirm that that

23   tattoo, in fact, was still visible on the back of

24   his neck?

25        A.   I don't recall that one.  I recall the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    basketball one on his leg.  That was, for me, more

2    memorable.

3            THE COURT:  Ms. Torraco, can I talk to the

4    jury about --

5            MS. TORRACO:  I'm sorry.

6            THE COURT:  -- how they want to break out

7    the day?  Do y'all want to take a 15-minute break

8    and then do lunch a little bit later today, or do

9    you want to -- how many of you want to do that?

10           Okay.  Looks like everybody kind of came

11   around.  Let's take a 15-minute recess and then

12   we'll come back and work through the lunch hour.

13           All rise..

14           (The jury left the courtroom.)

15           THE COURT:  All right.

16           Everyone be seated.  I guess if I were

17   interested in more of what y'all had to say, I might

18   ask some questions and get some information.  But I

19   do have questions, but I'm not going to answer them

20   now.

21           These two documents that you gave me this

22   morning were not what I asked you to do.  I asked

23   you to get together and script out this trial.  I

24   don't see how anybody in this room could think that

25   that's a script.  And you know it's not.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        So as far as the Court is concerned, it

2    feels kind of blown off this morning.  I gave you a

3    weekend.  I didn't try to put a pressure cooker on

4    you, but I tried to give you a weekend to script it

5    out.

6            This trial will be done by June 1st.  If

7    you think there is any doubt, get it out of your

8    mind.  And when I say June 1st, that doesn't mean

9    you hand it to the jury at 6:00 on June 1st.  It

10   means we give them some decent amount of time to

11   deliberate and be done with this trial by June 1st,

12   just like we told them we were and you told me.

13   That was the representations that were given to the

14   Court.

15           I cannot imagine how many times I or

16   Ms. Wild did not ask you that.  So we have to keep

17   our word, you to the Court, and us to the jury.  So

18   get it in your head, we're going to get this case

19   done by June 1st.  Don't think otherwise.  Because

20   if you're not going to get it done by June 1st, I'll

21   get it done for you.

22           When I come back from my break, I want a

23   one-word answer from the defendants.  If the United

24   States is done by the end of business on May 18 --

25   it looks to me in the communication that was made to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  me that they were saying that the defendants could

2  get their case done -- then that may solve a lot of

3  problems.  But I need to know if that's true.

4          Then the Government.  You know where I'm

5  going.  You're going to be done by the end of

6  business on June 18 (sic).  You come back and say,

7  "Yes, we can get this thing done."  You'll just have

8  to figure out how to get it done.

9          MR. SINDEL:  Your Honor, for

10 clarification --

11         THE COURT:  No, no, no, no.  I am talking.

12         MR. SINDEL:  I'm sorry.

13         THE COURT:  I am inclined to require the

14 United States to disclose all its witnesses, right,

15 in a reasonable time here or tomorrow, so that the

16 defendants can script out what's about to occur.

17         To the U.S., I need to know this

18 information:  By the end of this week, are we going

19 to be done with Counts 4, 5, 13, 14, 15, and 16, as

20 you seem to suggest in your memo?  Or are the

21 defendants correct, that it's going to take all week

22 to do the Gallegos brothers, and then FS will be

23 four days of next week?

24         Brace yourselves, but I'm inclined to

25 agree that we should limit to direct,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    cross-examination, and brief redirect.  And I do

2    mean brief.

3            Questions for the United States:  How long

4    to put on the rest of Counts 1 and 2 and the

5    witnesses?  The defendants are saying it's going to

6    take a week.  Is that true?  And then how long to

7    put on Count 3?  The defendants are again saying

8    it's a week.

9            I want a script.  And that's what I mean.

10   You call this witness, how long is direct going to

11   take?  How long is cross?  So on that script, I want

12   to know if the Government going to call Archuleta,

13   Baby Rob Martinez, Frederico Munoz, Clark, Timothy

14   Martinez, Billy Cordova, Leroy Lucero.  I'll want to

15   know on that script how long the direct will take,

16   how long cross will take, and how long the redirect

17   will take.

18           No more enterprise evidence.  We're done

19   with it.  The Government has to start disclosing its

20   witnesses on this script and giving it to me so I

21   can look at it and start holding the Government and

22   holding the defendants to that script.

23           Tell Mr. Castle that that long

24   supplemental witness list that he's going to spend

25   five witnesses talking to Eugene Martinez' health

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                   1-800-669-9492
                                                           e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   care providers -- we're not going to do that.

2          I also want you to draft out a

3   statement -- if you can't agree on it, then I'll

4   draft one out -- and I'll take competing versions of

5   what we're going to tell this jury.  This jury

6   doesn't believe that they're about to get done on

7   June 1st, and so I want us to come up with a

8   statement to tell them, and right now, you can't

9   tell me that you think you can get done by June 1st.

10         Tell your paralegals to bring in lunch.

11  So at 1:15, when we break, counsel will remain

12  here -- the defendants are welcome to leave -- and

13  y'all start working on this script.  See how much

14  you get done.

15         And this evening, plan on having dinner

16  with each other, or meeting here, or whatever is

17  necessary to get it done.  I want a script in the

18  morning for the rest of the trial.  It needs to lay

19  out exactly how long everybody is going to spend in

20  examination.  The Government doesn't need to

21  withhold its witnesses.  Let's just get on with it.

22  And I need a script.  I don't need two competing

23  briefs.

24         All right.  We'll be in recess for 15

25  minutes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              (The Court stood in recess.)
 2              MR. BENJAMIN:  Your Honor --
 3              THE COURT:  All right.  It looks like each
 4   of the defendants is in the room with counsel.  Mr.
 5   Benjamin?
 6              MR. BENJAMIN:  Thank you, Your Honor.
 7              Your Honor, right before the break, I was
 8   handed a 302 for an individual who is expected to
 9   testify immediately after Agent Williamson.  That
10   would be a Morgan Ramirez.  There is some
11   information that, as the 302 says, may have not been
12   previously provided.
13              The issue that I have, Your Honor, is that
14   the statement that's going to be attributed to Joe
15   Gallegos I think is information that will be offered
16   presumably that she could only have come into
17   possession with by this statement.  I don't think
18   that's correct, because this statement will have
19   followed a detention hearing that the Court has
20   heard a lot about.
21              And I think that the Court's ruling on the
22   motion in limine, and therefore restricting, as Mr.
23   Beck said, my only ability to impeach Ms. Ramirez,
24   who is pending a murder charge -- a different murder
25   charge, but is pending a murder charge, is going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   be limited to cross-examining her, not impeaching

2   with extrinsic evidence.  There is specific

3   testimony --

4           THE COURT:  Let me do this:  We've got the

5   jury lined up.  Before any evidence is introduced,

6   y'all can approach the bench.

7           All rise.

8           (The jury entered the courtroom.)

9           THE COURT:  Mr. Benjamin, why don't you

10  get a couple of copies of the document you're

11  talking about, and let me take a look at it, so can

12  you just give to it Ms. Bevel.  Okay?

13          MR. BENJAMIN:  Thank you, Your Honor.

14          THE COURT:  All right.  Mr. Williamson,

15  I'll remind you that you're still under oath.

16          Ms. Torraco, if you wish to continue your

17  cross-examination, you may do so at this time.

18          MS. TORRACO:  Thank you, Your Honor.

19          THE COURT:  Ms. Torraco?

20  BY MS. TORRACO:

21      Q.   Let me just back up a little bit.  We were

22  about to talk about when you talked to Amber Sutton,

23  but let me back up a little bit.

24          Was there anything that you initially

25  noticed about the decedent's body that was in the

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                    e-mail: info@litsupport.com

1   bosque?

2        A.   Just his position, handcuffs, and I think

3   everything else has been discussed.

4        Q.   Okay.  So the handcuffs are a little

5   unusual; would you agree?

6        A.   Yes, ma'am.

7        Q.   And as Mr. Benjamin pointed out, the

8   handcuffs actually have serial numbers to them;

9   correct?

10       A.   Yes.

11       Q.   Did you ever make note of that serial

12   number?

13       A.   At that time, no, ma'am.  They weren't

14   really -- they weren't able to do that at that time.

15       Q.   So you did that later in the

16   investigation?

17       A.   I believe so.  The numbers were provided

18   later on.

19       Q.   Okay.  And did you ever follow up with

20   Smith & Wesson to find out who they sold those

21   handcuffs to?

22       A.   No, ma'am.

23       Q.   Are you aware that Smith & Wesson is the

24   ones who stamp each handcuff with a unique serial

25   number?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                     (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                   1-800-669-9492

e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1        A.    No, ma'am, but I would assume that.

2        Q.    Okay.  And don't you think that would be

3  important, to find out to whom Smith & Wesson sold

4  those handcuffs?

5        A.    That could have been helpful, yes.

6        Q.    It could have been helpful, correct.  Did

7  you also notice that the decedent had a diamond

8  earring in his ear?

9        A.    I believe so, yes, ma'am.

10        Q.    Okay.  And that diamond earring was also

11  of a considerable size, would you agree?  It was not

12  just a little chip?

13        A.    I don't recall, but I believe it was

14  fairly substantial.

15        Q.    Okay.  And is that also important in your

16  investigation?

17        A.    I think it was information given to us

18  that helped us identify him.  I believe she noted

19  that, also.

20        Q.    Could it be important for any other

21  reasons?

22        A.    Other than identification?  Not that I'm

23  aware of.

24        Q.    Okay.  Okay, so then -- we'll move ahead.

25              At some point you have contact with Amber
```

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                     Albuquerque, NM 87102
(505) 989-4949                                                (505) 843-9494
FAX (505) 843-9492                                        FAX (505) 843-9492
                                                         1-800-669-9492
                                                    e-mail: info@litsupport.com



```
 1  Sutton; correct?
 2       A.   Yes, ma'am.
 3       Q.   And when you contact Amber Sutton, isn't
 4  it true that she points you in the direction of Joe
 5  and Andrew Gallegos?
 6       A.   Yes, ma'am.
 7       Q.   And it was her thought, initially, that
 8  they were the people that should be suspects in this
 9  case; isn't that true?
10       A.   I believe her information was that's where
11  he was headed when he left their home.
12       Q.   Okay.  And isn't it true that she also at
13  that time thought that they should be suspects?
14            MS. ARMIJO:  Objection, calls for hearsay.
15            THE COURT:  Well --
16            MS. TORRACO:  It goes --
17            THE COURT:  I think it's -- sustained.
18  BY MS. TORRACO:
19       Q.   So does she give you other information
20  about Joe and Andrew Gallegos?  And you don't say
21  what she said.  I'm just asking you:  Did she give
22  you other information about Joe and Andrew Gallegos?
23       A.   Yes, ma'am.
24       Q.   And did she give you any other persons
25  that might be suspects in this case?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1       A.    Not that I recall at that time, no, ma'am.
2       Q.    So is it fair to say that starting right
3  from the very beginning, Joe and Andrew Gallegos
4  were identified as suspects in this murder?
5       A.    No, ma'am.
6       Q.    That's not true?
7       A.    That's not true.
8       Q.    Okay.  Would you please tell the jury who
9  else you investigated?
10      A.    Well, in the course of our investigation,
11 we looked at any possible person that had contact
12 with him.
13      Q.    Okay.  Did you investigate Amber Sutton as
14 a possible suspect?
15      A.    No, ma'am.
16      Q.    Did you -- and you never considered Amber
17 Sutton as a possible suspect; isn't that true?
18      A.    That's correct.
19      Q.    And you were aware that they had marital
20 problems; correct?
21      A.    No, ma'am.
22      Q.    You didn't do any research on that?
23      A.    Well, we interviewed all the parties
24 involved.
25      Q.    Did you pull previous police reports?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    For --

 2        Q.    Did you --

 3        A.    -- cases?

 4        Q.    Did you pull police reports relating to

 5   Amber Sutton and Adrian Burns?

 6        A.    Adrian only, not Amber and Adrian.

 7        Q.    Okay.  So -- and like Mr. Benjamin pointed

 8   out, you also didn't get Amber Sutton's phone

 9   records; correct?

10        A.    Correct.

11        Q.    So when and if she claims that she called

12   the police because she was worried the night before,

13   did you ever confirm that?

14        A.    I don't recall.  I don't believe so,

15   though.

16        Q.    No.  And, in fact, you could have

17   confirmed that through her phone records; correct?

18        A.    Or dispatch, yes.

19        Q.    Or through dispatch's records?

20        A.    Yes, ma'am.

21        Q.    Did you ever do that?

22        A.    No, ma'am.

23        Q.    Okay.  Would it be important to know if

24   she, indeed, was worried and looking for her

25   husband?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    I'm not sure.
 2        Q.    You don't know if that would be important?
 3        A.    She was out looking for him?
 4        Q.    Yeah, if she was worried?
 5        A.    She told us she was, documenting the proof
 6   of that.
 7        Q.    Well, my client also told you that he
 8   didn't know anything about the murder.
 9              MS. ARMIJO:  Objection.
10              THE COURT:  Hold on.  Hold on.  Sustained.
11   BY MS. TORRACO:
12        Q.    Isn't it true that you don't believe
13   everyone's word in this case?
14        A.    Yes, ma'am.
15        Q.    But you chose to believe that -- Amber
16   Sutton's; correct?
17        A.    Yes, ma'am.
18        Q.    What is her relationship with Michael
19   Sutton?
20        A.    Her brother.
21        Q.    Isn't it true that they are cousins?
22        A.    Oh, I don't know.  I thought they were
23   brother and sister.
24        Q.    And what did you rely on for that
25   information?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    They have the same last name.

 2        Q.    Because they have the same last name;

 3   isn't it true that you're relying on that because

 4   that's what Amber Sutton told you?

 5        A.    I don't recall.

 6        Q.    Okay.  So you interviewed Amber Sutton at

 7   the scene, and you take some brief information;

 8   correct?

 9        A.    Another agent did that for me, yes, ma'am.

10        Q.    Okay.  And then what did you do?

11        A.    Well, I stayed on scene.  It was the case

12   agent's responsibility to stay there while the crime

13   scene is processed, which takes quite a while.

14        Q.    Okay.  And then what was the next step in

15   your investigation?

16        A.    I made assignments for surveillance.  I

17   think we had assistance from the U.S. Marshals

18   office that were also helping with phone pings and

19   surveillance.

20        Q.    And so -- and that was the overhead

21   surveillance video that you gave to the United

22   States Government; correct?

23        A.    No, that was just our department's

24   documentation of the crime scene.

25        Q.    Okay.  And then what happened?  What did
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    you do next?

2         A.   I got called out to a homicide in Grants.

3         Q.   Okay.  But we're just talking about this

4    case.

5         A.   Yeah.

6         Q.   What was the next step of your

7    investigation?

8         A.   Well, we had -- I believe I had people

9    assigned to attempt to locate.

10        Q.   And who were you attempting to locate?

11        A.   Andrew and Joe.

12        Q.   And was that based on the information that

13   you got from Amber Sutton?

14        A.   No.

15        Q.   Okay, well --

16        A.   Why we were looking for them?  Yes, I

17   guess that's why we were looking -- we'd like to

18   talk to them, yes.

19        Q.   Right.  Because Amber Sutton directed you

20   immediately to Joe and Andrew Gallegos; correct?

21        A.   Correct.

22        Q.   But at that point, you had no reason to

23   think that Andrew or Joe Gallegos were the

24   murderers; correct?

25        A.   Correct.



SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                        1-800-669-9492
BEAN & ASSOCIATES, Inc.                          e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

1        Q.    Because when you went out to the scene,

2   there was no autograph on the side of the car, was

3   there?

4        A.    No.

5        Q.    And there certainly wasn't anything at the

6   scene of the crime that would say that Andrew or Joe

7   Gallegos were there; correct?

8        A.    Not that I recall, no.

9        Q.    No.   There was no evidence at the scene of

10  the crime that indicated that Andrew or Joe Gallegos

11  were the murderers; isn't that true?

12       A.    From the crime scene?

13       Q.    Yes.

14       A.    Correct.

15       Q.    Okay.   So Amber tells -- Amber directs you

16  to the Gallegoses.   And then what do you do?   You

17  put the BOLO out, right, be on the lookout?

18       A.    I think we had received information from

19  Michael about his contact with them.

20       Q.    Okay.   When did you receive that

21  information from Michael Sutton?

22       A.    I believe that was probably on the 13th or

23  the 14th.

24       Q.    Okay.

25       A.    It was fairly quick.



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                1-800-669-9492
                                                          e-mail: info@litsupport.com

1    Q.   And that you received that information,

2    personally?

3    A.   No, it was relayed to me by another agent.

4    Q.   Okay.  And -- so now Michael Sutton was

5    giving you information or the other agent that

6    pointed the finger at Joe and Andrew Gallegos?

7    A.   Yes, ma'am.

8    Q.   Okay.  And so then what did you do?

9    A.   I believe we put a BOLO out, be on the

10   lookout for the vehicles that we know that were

11   registered to them, that we thought they were in.

12   Q.   Okay.

13   A.   I think Amber was reinterviewed by agent

14   Lucero, as was Michael, was reinterviewed.  We began

15   to gather any surveillance from video cameras on

16   what we believe was the route from their residence

17   to the crime scene.

18   Q.   Okay.  So let's talk about the

19   surveillance video.  Is that when you gathered the

20   surveillance video at the Allsup's?

21   A.   The agent that requested it, I believe it

22   was Agent Cox, advised us that they had some that

23   pointed out towards the street.  As to me, I had

24   spent that night, I believe, doing surveillance on

25   their mother's home, to no avail.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      Q.   Okay.  And you were given more information

 2   that Joe and Andrew Gallegos might be at the

 3   mother's house, but that turned out to be true;

 4   correct?

 5      A.   Correct.

 6      Q.   And in fact you learned that Joe and

 7   Andrew Gallegos were actually at their house; right?

 8           MS. ARMIJO:  Objection, calls for hearsay.

 9           MS. TORRACO:  I'm sorry, I thought he

10   testified to that on direct.

11           THE COURT:  You probably need to lay some

12   foundation to see whether it's coming from hearsay

13   sources.

14           MS. TORRACO:  Okay.  Yes, Your Honor.

15   BY MS. TORRACO:

16      Q.   At some point was there surveillance set

17   up on Joe Gallegos' home?

18      A.   Yes, ma'am.

19      Q.   And at some point did you confirm that Joe

20   and Andrew Gallegos were seen there?

21      A.   I think we had a report that they were

22   seen there, but it wasn't -- no contact was made.

23      Q.   Okay.  But law enforcement confirmed that

24   they were at the home, and that was on the 13th of

25   November?

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                            1-800-669-9492
                                              e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      A.   I believe that's 13th or 14th, I believe

2  so.

3      Q.   Okay.  And you -- isn't it true that the

4  information that you received included that they

5  were chopping a vehicle?

6           MS. ARMIJO:  Objection, calls for hearsay.

7           MS. TORRACO:  No, I'm just going to the

8  officer's state of mind, based on what he did or did

9  not do next.  Not that Joe and Andrew Gallegos were

10  chopping a vehicle.

11          THE COURT:  That's not the question,

12  though.  I have to sustain it to the question you

13  asked him.

14          MS. TORRACO:  Okay.  I'll try to rephrase

15  that.

16  BY MS. TORRACO:

17     Q.   Did you learn that Joe and/or Andrew

18  Gallegos were welding a vehicle?

19     A.   No, ma'am.

20          MS. ARMIJO:  Objection, calls for hearsay.

21          THE COURT:  Sustained.

22          MS. TORRACO:  Okay.  So I believe there's

23  two pictures that were admitted, Government's 423

24  and 428.  I would request to publish these photos.

25          THE COURT:  Those are already admitted?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1            MS. TORRACO:  Yes, Your Honor.
 2            THE COURT:  You may.
 3  BY MS. TORRACO:
 4       Q.   So we'll put up 423.
 5            And did you oversee this surveillance?
 6       A.   I probably assigned it.  I don't believe I
 7  was there overseeing it.
 8       Q.   Okay.  And if I'm correct, as we look at
 9  the picture, the vehicle on the far left, is that
10  the vehicle that you identified as Andrew Gallegos'
11  vehicle?
12       A.   Yes, ma'am.
13       Q.   And can you see a flat tire in that
14  photograph?
15       A.   I don't believe so, but --
16       Q.   Okay.  Let's go to 428.
17            And in 428, do you see the two flat tires
18  you had previously discussed on direct?
19       A.   Well, the vehicle seems to be leaning the
20  wrong way.  But I can't really see the tires.  I
21  think we noted that there were two flat tires,
22  though.
23       Q.   Okay.  Do you see three of the four tires?
24       A.   I see two of the four.  I can see three of
25  the four on this one.  The left rear appears to be
```

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492
                                                      1-800-669-9492
                                               e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1  flat.

 2      Q.   And does it happen to be so flat that the

 3  vehicle is immobile?

 4      A.   That was my impression.

 5      Q.   Is that your impression today?

 6      A.   Yes.

 7      Q.   Okay.

 8      A.   The vehicle had been sitting there for

 9  quite a while.

10      Q.   And when you say had been sitting there

11  for quite a long period of time, based on your

12  personal knowledge, how long do you believe that

13  vehicle was there, based on what you personally

14  know?

15      A.   Are you asking for my observations?

16      Q.   Yes.

17      A.   I believe it had been there for weeks.

18      Q.   So had you been watching that vehicle for

19  weeks?

20      A.   No.

21      Q.   Well, this photograph was the 15th of

22  November.

23      A.   Um-hum.

24      Q.   And so who was watching this vehicle on

25  the 10th of November or the 5th of November?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          A.    Not anyone under my direction.

 2          Q.    Okay.  Well, Sergeant, you just said that

 3   based on your personal observation, the vehicle had

 4   been immobile and been sitting there for weeks, and

 5   you hadn't been watching the for weeks; isn't that

 6   correct?

 7          A.    That's correct.

 8          Q.    You started watching the vehicle on or

 9   about the 13th of November; isn't that true?

10          A.    Yes, ma'am.

11          Q.    And so the truth of the matter is that you

12   only observed the vehicle for two days?

13          A.    Correct.

14          Q.    So you don't know that the vehicle was

15   immobile for weeks?

16          A.    No, that was just my impression.

17          Q.    So when I ask you, based on your

18   observations and your personal observations, you

19   just stick to what you personally know.

20          A.    I personally observed a vehicle that

21   appeared to me to have been sitting there for a long

22   period of time.  So that's why I said that.

23          Q.    But what you know is that it was there for

24   two days.

25          A.    Yes.  That's a different question.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      Q.    Okay.  So as long as we're clear, we both
 2  know we're talking about two days; right?
 3      A.    Yes.
 4      Q.    Because you didn't observe it beforehand?
 5      A.    Correct.
 6      Q.    And you also don't know that that vehicle
 7  is mobile or immobile; isn't that true?
 8      A.    Correct.
 9      Q.    It's not up on blocks; correct?
10      A.    Correct.
11      Q.    And it's not -- the tires aren't so flat
12  that the rims are on the ground?
13      A.    I don't recall the condition of the right
14  front, but --
15      Q.    The tires that you can see.  Isn't it true
16  that they do not appear to be immobile?
17      A.    The left rear is pretty flat.  But the
18  other tires seem okay.
19      Q.    Okay.  So we can take that down, thank
20  you.
21            So after that -- after the surveillance,
22  at some point, you get -- or of surveilling the
23  home, you get the actual video surveillance from
24  Allsup's; correct?
25      A.    Yes, ma'am.

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                           Albuquerque, NM 87102
(505) 989-4949                                     (505) 843-9494
FAX (505) 843-9492                             FAX (505) 843-9492
                                                  1-800-669-9492
                                          e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Q.   And you spend a considerable amount of
2    time reviewing that video; correct?
3    A.   Yes, ma'am.
4    Q.   And that whole time that you reviewed the
5    video, you never recognized Joe Gallegos in there;
6    isn't that true?
7    A.   I believe I had noted Joe Gallegos inside
8    the store.
9    Q.   But when the video was played for you by
10   Mr. Benjamin, you denied that that was Joe Gallegos.
11    At first you said you didn't know who it was?
12   A.   No, ma'am.  I said it could be Joe.  But
13   that wasn't what I remember him.
14   Q.   Okay.  So one of the things that you did
15   note is that Andrew Gallegos, from the first time to
16   the second time, had put on gloves; correct?
17   A.   He was wearing gloves at the time the
18   attorney asked me if it looked like he was wearing
19   gloves.
20   Q.   Was he wearing gloves in the first video?
21   A.   I don't recall.
22   Q.   Would that be something important to note?
23   A.   Yes.
24   Q.   Okay.  And what was the temperature that
25   evening?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    It was cold.
 2        Q.    And do you know what the temperature was
 3  at 9:00?
 4        A.    No, ma'am.
 5        Q.    And do you know what the temperature was
 6  at 11:00 or 11:15?
 7        A.    I was out in it, but I don't recall the
 8  actual temperature.
 9        Q.    Okay.  So would you agree that those
10  temperatures would be very important in your
11  investigation?
12        A.    No, ma'am, it was just cold.
13        Q.    You don't think it's important to try to
14  understand why Andrew Gallegos might have put on
15  another hoodie underneath his jacket?
16        A.    No, ma'am, it was cold.
17        Q.    Okay.  Well, it seems to me that you're
18  drawing suspicion on the fact that he has on another
19  hoodie underneath his jacket at 11:00 that he didn't
20  have on at 9:00.
21        A.    No, ma'am, he just layered his clothing, I
22  would imagine, because it was cold.
23             MS. TORRACO:  Okay.  So if I may approach
24  the exhibits, Your Honor?
25             THE COURT:  You may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  BY MS. TORRACO:

 2       Q.   I wish to show you an exhibit that's been

 3  marked as EB.

 4            MS. TORRACO:  If I may approach the

 5  witness?

 6            THE COURT:  You may.

 7            MS. TORRACO:  Thank you, Your Honor.

 8  BY MS. TORRACO:

 9       Q.   Does that look similar or identical to the

10  jacket that was worn by Andrew Gallegos in that

11  video?

12       A.   I believe it does look similar.

13       Q.   Okay.  And it could very well be the

14  jacket that he was wearing in the video both at 9:06

15  and at 11:17; isn't that true?

16       A.   Yes, ma'am.

17       Q.   Did you ever ask the family if Andrew had

18  a jacket like that?

19       A.   No, ma'am.

20       Q.   Would it be important to confirm the

21  clothing of the people in the video?  Therefore, you

22  could solidify that that, indeed, actually is them?

23       A.   Well, his family wasn't being very

24  forthcoming.

25       Q.   Okay.  But did you ask them for the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   jacket?

 2        A.    No, ma'am.

 3        Q.    Okay.  Thank you.

 4              Now, the second video, at 11:17, isn't it

 5   true that what is worn underneath is zipped all the

 6   way to the top; isn't that true?

 7        A.    I couldn't say.  You mean, the shirt that

 8   was underneath the coat?

 9        Q.    Correct.

10        A.    I couldn't say.  It looked like he

11   changed, maybe removed a layer.

12        Q.    Is it possible that he put on a layer?

13        A.    Sure.

14        Q.    Okay.  And it's also possible that he

15   didn't change; that he still has the jersey that was

16   shown at the 9:00 video on, and he added another

17   layer; isn't that true?

18        A.    That's possible.

19        Q.    So you're jumping to a conclusion that he

20   somehow changed, when, in fact, he may have had the

21   same clothes on; isn't that true?

22        A.    He didn't present the same, so he added

23   clothing.

24        Q.    He added clothing?

25        A.    Um-hum.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

204

1    Q.   And based on the video, we can't tell if

2  he was covering up the previous jersey?

3    A.   Actually, the first video looks like he

4  may have a black shirt on underneath the jersey.  So

5  he may have just removed the jersey.  I can't say if

6  he removed the jersey or added a piece of clothing

7  to cover the jersey.  But the numbers weren't

8  visible anymore.

9    Q.   And you would agree that it was very cold,

10 and therefore, it would be reasonable to put on

11 another layer of clothing?

12   A.   Yes, ma'am.

13   Q.   Okay.  Now, did you interview the people

14 at Allsup's?

15   A.   I didn't.  I believe Agent Whitfield may

16 have.

17   Q.   Okay.  And would you agree that would it

18 be very important to find out whether or not Andrew

19 Gallegos smelled like fire when he walked into the

20 Allsup's at 11:17?

21   A.   Yes, ma'am.

22   Q.   That would be a very important fact;

23 correct?

24   A.   Yes, ma'am.

25   Q.   And you don't have that fact, do you?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    No, ma'am.

2      Q.    So the other video that you got was the

3  video which we have not yet seen from the Giant gas

4  station; correct?

5      A.    Yes, ma'am.

6      Q.    And you, in fact, talked to Ms. Collins

7  from the Giant gas station; correct?

8      A.    Correct.

9      Q.    And you got the information that on

10 Veterans Day, he came in wearing a camouflage

11 jacket; correct?

12     A.    Yes, ma'am.

13     Q.    What day is Veterans Day?  What day was it

14 in 2012?

15     A.    I don't know if she said Veterans Day, but

16 she said on the 12th.

17     Q.    Would you like to see your report?

18     A.    Sure.

19           MS. TORRACO:  May I approach the witness,

20 please?

21           THE COURT:  You may.

22 BY MS. TORRACO:

23     Q.    I'm going to hand you your report, which

24 is Bates No. 3886.

25           I don't want you to read it out loud, but

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                           FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1   did you take a look at that?

2        A.   Yes.

3        Q.   And isn't it true that Ms. Collins

4   indicated the date was Veterans Day?

5        A.   Yes, ma'am.

6             MS. ARMIJO:   Your Honor, I'm going to

7   object to what Ms. Collins told him.

8             THE COURT:   Sustained.

9   BY MS. TORRACO:

10       Q.   So based on the information that you

11  received from Ms. Collins, wouldn't it be important

12  to make sure that you have your dates correct?

13       A.   Yes, ma'am.

14       Q.   And isn't it true that all of the

15  information points to the fact that the fire

16  occurred on November 12th of 2012; correct?

17       A.   It does.

18       Q.   And that the fire did not occur on

19  Veterans Day; isn't that true?

20       A.   I don't recall when Veterans Day was that

21  year, ma'am.

22       Q.   Okay.  And so when you did your

23  investigation based on what Ms. Collins told you,

24  you searched for a camo jacket; isn't that true?

25       A.   No, ma'am.

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Q.   You didn't search for a camo jacket?

2    A.   No, ma'am.

3    Q.   Okay.  Tell me how it is that -- well,

4  actually, let's back up.  Based on the information

5  you got from Ms. Collins, were you able to ascertain

6  what type of camo jacket might be relevant to this

7  investigation?

8    A.   No, ma'am.

9    Q.   You don't think it makes a difference if

10  it's a military camo or a hunter's camo?

11   A.   She didn't provide us that information;

12  just a camouflage jacket.

13   Q.   Did you ask?

14   A.   I saw pictures of it, so I didn't ask.

15   Q.   And did you verify that you had the

16  correct date when you saw these pictures?

17   A.   Yes, ma'am.

18   Q.   And what date did you think that you were

19  looking at?

20   A.   November 12.

21   Q.   Which may or may not be Veterans Day;

22  correct?

23   A.   Yeah, I don't know about the Veterans Day.

24   Q.   Wouldn't that be an important fact,

25  because that gives a sense of time for people to

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                     FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   remember things?
 2         A.   It could be, but the events really
 3   revolved around her recalling having seen Andrew,
 4   not necessarily that it was Veterans Day.  For me,
 5   anyway.  She recalled seeing him that night.
 6         Q.   But you would agree that you did put in
 7   your report that it was Veterans Day?
 8         A.   Put in my report that she said it was
 9   Veterans Day.
10              MS. ARMIJO:  Objection, calls for hearsay.
11              THE COURT:  Sustained.
12   BY MS. TORRACO:
13         Q.   All right.  And then what was the next
14   step of your investigation?
15         A.   I believe the next step was the
16   preparation of the search and arrest warrants.
17         Q.   Okay.  And so were you present when Andrew
18   Gallegos was arrested at the Imperial Motel?
19         A.   No, ma'am.
20         Q.   You weren't there when they were arrested?
21         A.   No, ma'am.
22         Q.   Did you ever get information that Andrew
23   Gallegos was fully cooperative?
24         A.   No, ma'am.
25         Q.   And who was present when he was arrested?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    The Marshals office.  And we have an agent

 2   that's tasked to work with them, and I believe

 3   Sergeant Tom Christian was also present, I believe.

 4        Q.    Okay.  And so after that, you did your

 5   interview of Andrew Gallegos; correct?

 6        A.    Yes, ma'am.

 7        Q.    And you interviewed him for over an hour;

 8   isn't that true?

 9        A.    Most likely, yes.

10        Q.    And at no time during that interview did

11   he tell you that he --

12              MS. ARMIJO:  Objection, calls for hearsay.

13              THE COURT:  Sustained.

14   BY MS. TORRACO:

15        Q.    Andrew Gallegos told you a lot of

16   things --

17              MS. ARMIJO:  Objection.

18              THE COURT:  I just don't think you can

19   solicit your own client's statements.  So sustained.

20              MS. TORRACO:  Thank you, Your Honor.

21   BY MS. TORRACO:

22        Q.    Isn't it true that many of the things that

23   Andrew Gallegos told you, you could actually confirm

24   that they were true?

25              MS. ARMIJO:  Objection, still --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. TORRACO:  No --

 2            MS. ARMIJO:  -- hearsay.

 3            THE COURT:  Well, it's general enough.

 4  Overruled.

 5  BY MS. TORRACO:

 6      Q.   Okay.  Isn't it true that you can confirm

 7  that many of the things he told you were true?

 8      A.   No, ma'am.  Just that he met Leroy at the

 9  Allsup's.

10      Q.   Okay.  So you confirmed that he went to

11  the Allsup's?

12      A.   Yes, ma'am.

13      Q.   Isn't it true you confirmed that he bought

14  cigarettes?

15      A.   Yes.

16      Q.   Isn't it true that he confirmed that he

17  had done heroin that night?

18            MS. ARMIJO:  Your Honor, I'm going to

19  object.

20            THE COURT:  Well, I think if she asks the

21  questions without reference to what Mr. Gallegos

22  says, I think some of these are okay -- for example,

23  when you said you confirmed that he went to

24  Allsup's, I think that's an appropriate question.

25  You can ask him what he confirmed.  But you need to
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                          FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1  be a little careful about asking what Mr. Gallegos
 2  said.
 3              MS. TORRACO:  Yes, Your Honor.
 4  BY MS. TORRACO:
 5      Q.   You confirmed that he ran into his friend,
 6  Leroy?
 7      A.   Yes, ma'am.
 8      Q.   And you confirmed that the jacket in the
 9  Allsup's video was not the camo jacket?
10              MS. ARMIJO:  Objection.
11              THE COURT:  Overruled.
12  BY MS. TORRACO:
13      Q.   You confirmed that the jacket that he was
14  wearing in the Allsup's video was not the camo
15  jacket?
16      A.   Correct.
17      Q.   And isn't it true that you went into the
18  interview of Andrew Gallegos thinking that Andrew
19  Gallegos was involved in this murder; isn't that
20  true?
21      A.   Yes, ma'am.
22      Q.   You did not go into this interview just
23  trying to find facts and gather more information;
24  isn't that true?
25      A.   No, ma'am.
```

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                    Albuquerque, NM 87102
(505) 989-4949                                                                (505) 843-9494
FAX (505) 843-9492                                                       FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Q.   In fact, you were trying to get Andrew

2  Gallegos to confess to the crime; isn't that true?

3    A.   We advised him from the beginning this was

4  his opportunity to set everything straight and tell

5  us his side of the story.  If that included a

6  confession, then that would have been documented and

7  recorded.

8    Q.   But isn't it true that you were -- that

9  the purpose of the interview was to get a confession

10  because you believed he was a suspect; correct?

11    A.   What I believed wasn't relevant.  It just

12  directed my investigation somewhat.  What he had to

13  say, yay or nay, on his involvement, was what we

14  were trying to get at, the truth.

15    Q.   Okay.  So I'll just rephrase the question

16  a different way.  And I would appreciate it if you

17  would just tell me yes or no.

18    A.   Okay.

19    Q.   Isn't it true that you were trying to get

20  a confession?

21    A.   Yes.

22    Q.   When you interviewed Amber Sutton, did you

23  try to get a confession?

24    A.   I did not interview Amber Sutton.

25    Q.   Did you interview Michael Sutton?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com



1      A.   I did not.

2      Q.   Did you ever confirm if, in fact, Andrew

3  Gallegos lived at 4 Erin Court?

4      A.   I believe we had statements to the effect,

5  yes, ma'am.

6      Q.   Did you personally confirm whether or not

7  he lived there?

8      A.   I don't recall if I ever personally saw

9  documents with his name on any bills, or address, or

10  other than his car being parked out front, and him

11  renting a room there.  I don't believe I confirmed

12  it by any documentation or anything like that.

13      Q.   And at some point, isn't it true that

14  someone told you that there was a weapon in the

15  river?

16          MS. ARMIJO:  Objection, hearsay.

17          THE COURT:  Sustained.

18  BY MS. TORRACO:

19      Q.   Was your attention ever directed to more

20  evidence at the scene?

21      A.   Yes, ma'am.

22      Q.   And could you please tell the jury how

23  that happened?

24          MS. ARMIJO:  If it calls for hearsay, I'm

25  going to object.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. TORRACO:  Well, it goes to -- it's not

2   offered for the truth of the matter.  It's offered

3   to show what he did in his investigation and why he

4   did it.

5          THE COURT:  Well, you can certainly ask

6   him those questions.  What did he do, and without

7   telling us what was said.  If somebody got the

8   information from some source, that will be

9   sufficient, and focus on what he did.

10  BY MS. TORRACO:

11      Q.    Okay.  So we're just going to your state

12  of mind, like, why you did any more investigation at

13  the bosque.

14      A.    We had two additional events.

15      Q.    Okay.

16      A.    The first was a search of the ditch bank,

17  because we had information that the weapon had been

18  thrown.

19      Q.    I can't hear you.

20      A.    I'm sorry.  We had information that the

21  weapon had been thrown into the ditch.

22      Q.    Okay.

23      A.    So we did a search of the irrigation

24  ditch.

25      Q.    Okay.  And so when did that information



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    come in?

2        A.   I don't recall.

3        Q.   And who did that information come from?

4             MS. ARMIJO:  Your Honor, calling for

5    hearsay.

6             MS. TORRACO:  It goes to motive to lie.

7             THE COURT:  I'm going to allow just enough

8    information so the jury knows that Mr. Williamson

9    did a search.

10            You can't consider any information that's

11   coming to Mr. Williamson about this gun for the

12   truth of the matter.  You can only consider it for

13   the reasons that Mr. Williamson did his

14   investigation.

15            So now, with that instruction, ask your

16   question, Ms. Torraco.  Let me see where it goes.

17   BY MS. TORRACO:

18       Q.   Isn't it true that Amber Sutton is the one

19   that directed you to the murder weapon?

20       A.   I don't recall if that information come

21   from her -- came from her or not.

22       Q.   Isn't that important information you

23   should know?

24       A.   There is a lot of information I should

25   probably know, but I don't recall that particular

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  detail without reading my report.
 2       Q.   Okay.  What part of your report would you
 3  like?
 4       A.   The part that clarifies why we did a
 5  search.  I think it was on a supplemental report
 6  that we did, or it might have even been toward the
 7  end of my first initial report, I don't recall.
 8       Q.   Okay.  I will hand you what I've got,
 9  which is Bates 3876 through 38 -- 3918.
10            MS. TORRACO:  May I approach?
11            THE COURT:  You may.
12  BY MS. TORRACO:
13       Q.   I want to keep things moving.  So is it
14  possible to ask you questions while you're looking,
15  or do you need a few minutes to look through the
16  report?
17       A.   I found it.  Page 19.
18       Q.   Okay.
19       A.   I'm sorry.  Was there a question before I
20  answered?
21       Q.   You answered it by not answering me.  It's
22  fine.
23       A.   I'm sorry.
24       Q.   So did, indeed, Amber Sutton tell you that
25  the murder weapon was in the lake or the river?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No, in an irrigation ditch.

 2        Q.   In an irrigation ditch.  Okay, my

 3   apologies.

 4             Was it Amber Sutton that directed your

 5   attention for that search?

 6        A.   Yes, ma'am.

 7        Q.   And did you, indeed, conduct that search?

 8        A.   Yes.

 9        Q.   Based on the information that she gave

10   you?

11        A.   The dive team did, yes, ma'am.

12             MS. TORRACO:  I'd like to move into

13   evidence, I believe it's Defendants' Exhibit Y12 and

14   Y13.

15             THE COURT:  Any objection to these, Ms.

16   Armijo?

17             MS. ARMIJO:  Only if the foundation can be

18   laid that this was as a result of that information

19   and the search that he is talking about.  I'm not

20   sure.

21             MS. TORRACO:  May I approach the witness?

22             THE COURT:  You may.

23   BY MS. TORRACO:

24        Q.   I'm going to hand you what's been marked

25   as Y12 and Y13, and I'll take the police report
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    back.  Do you recognize those photographs?

2         A.   Yes, ma'am.

3         Q.   And how do you recognize them?

4         A.   It was a weapon that was found.

5         Q.   And was that the weapon that was found in

6    the irrigation ditch?

7         A.   No, ma'am.

8         Q.   Okay.  What weapon was found in the

9    irrigation ditch?

10        A.   No weapon was found in the irrigation

11   ditch.

12        Q.   Okay.  And the weapon that I handed you,

13   what's that from?

14        A.   This was spotted next to another crime

15   scene, or another homicide that we were

16   investigating that was adjacent to the same area.

17        Q.   And what day was that found?  Close in

18   time to November 12?

19        A.   Yes, ma'am.

20        Q.   And is that why you thought it was

21   relevant to this investigation?

22        A.   Yes, ma'am, it's a .22.

23        Q.   And in fact, isn't it true that it had no

24   relevance to this investigation?

25        A.   Yes, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   Yes, there is no relevance?

 2        A.   Correct.

 3        Q.   I just had to make that clear, because I

 4   asked an awkward question.

 5        A.   Yes, ma'am.

 6        Q.   So the information Amber Sutton gave did

 7   you not prove fruitful; correct?

 8        A.   Correct.

 9        Q.   And the one weapon that was found nearby

10   also did not match the ballistics -- did not match

11   the weapon that was used to shoot Mr. Burns; isn't

12   that true?

13        A.   Correct.

14        Q.   Okay.

15             MS. TORRACO:  May I take the photographs

16   back, Your Honor?

17             THE COURT:  You may.

18   BY MS. TORRACO:

19        Q.   And after you interviewed -- let's just

20   talk a little bit more about the interview with

21   Andrew Gallegos.  He was polite to you; isn't that

22   true?

23        A.   Yes, ma'am.

24        Q.   And he was cooperative; isn't that true?

25        A.   Yes, ma'am.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

220

1     Q.   And -- but he did not give you the
2  information that you sought; isn't that true?
3     A.   Correct.
4     Q.   And isn't it also true that he maintained
5  that he didn't know?
6          MS. ARMIJO:   Objection, hearsay.
7          THE COURT:   Sustained.
8  BY MS. TORRACO:
9     Q.   Okay.   So then after that, what was the
10 next part of your investigation?
11    A.   That was after the 20th?
12    Q.   Yes.
13    A.   Well --
14    Q.   At some point you timed the distance --
15    A.   Oh, yeah.
16    Q.   -- from the crime scene to the Allsup's;
17 isn't that true?
18    A.   I did that when I was -- I was filing the
19 search warrant returns.   So, yeah, I timed the
20 distance from their home to the crime scene, and
21 also on another date from the crime scene to the
22 house.
23    Q.   Okay.   And those would be important times?
24    A.   I thought so.
25    Q.   Okay.   And isn't it true that the distance

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  from the home to the crime scene is approximately 27

2  minutes?

3       A.   Yes, ma'am.

4       Q.   And the distance from the crime scene to

5  the Allsup's was approximately 32 minutes?

6       A.   34, yes, ma'am.

7       Q.   34.  Thank you for the correction.  But

8  isn't it true that you don't know the route that you

9  went?

10      A.   On the trip from their home to the crime

11 scene, I believe I went down the state highway, not

12 on the interstate.

13      Q.   Did you document that?

14      A.   I think I just documented that I timed it

15 and measured it.  But I don't remember.

16      Q.   But you did not document the route;

17 correct?

18      A.   I don't remember now what I wrote up.

19      Q.   And did you also fail to document the

20 route that you took from the crime scene to the

21 Allsup's?

22      A.   No, ma'am.

23      Q.   You're saying you documented that route?

24      A.   Yes, ma'am, I did.

25      Q.   In your report?

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492
                                                       1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

222

1    A.   Yes, ma'am, I did.

2    Q.   Well, while we keep talking, so I can keep

3 moving, I'll take a look at that.

4    A.   Okay.

5    Q.   Isn't it true that you knew that the

6 Gallegos brothers use scrap metal; that that's one

7 of the ways that they earned a living?

8    A.   That was discovered in the course of our

9 investigation, yes, ma'am.

10    Q.   And when you were out at the home, did you

11 ever see the welding machine that Mr. Joe Gallegos

12 owns?

13    A.   No.  But I believe I saw a cutting torch.

14    Q.   Okay.  Would that have been important

15 evidence to document by photographs?

16    A.   Yes, I believe it was.

17    Q.   And why is that important evidence?  Isn't

18 it true, because when you weld, fire comes up and

19 sparks fly?

20    A.   With a cutting torch, yes.  I believe

21 that's why the crime scene techs document everything

22 outside and inside the residence.

23    Q.   Okay.  And so you agree that the fact that

24 they do welding means that they could have holes in

25 their clothing from sparks of welding; isn't that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   true?

2        A.   I don't understand that they weld.   I

3   understand they use cutting torches, which is quite

4   different.

5        Q.   Okay.   And is it your testimony that

6   welding torches -- isn't it true that welding

7   torches -- I'm sorry, say the term again?

8        A.   Cutting torches.

9        Q.   What are they called?

10       A.   Cutting torches.

11       Q.   Isn't it true that the cutting torches can

12   throw out sparks?

13       A.   Yes, ma'am.

14       Q.   And the sparks can burn material?

15       A.   Yes, ma'am.

16       Q.   But there are no pictures of the actual

17   welding machine; correct?

18       A.   I don't recall seeing a welding machine.

19   But I did see a cutting torch.

20       Q.   So going back, you said that you did

21   document the route that you timed from the bosque to

22   Allsup's?

23       A.   Yes, ma'am.

24       Q.   And would you be surprised if I pointed

25   out to you Bates No. 3895 (sic) in your report where

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                        1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                          e-mail: info@litsupport.com

224

```
1   the exact route is not documented?

2       A.   Yes, ma'am.

3           MS. TORRACO:  May I approach the witness?

4           THE COURT:  You may.

5           MS. ARMIJO:  Did you say 3895?

6           MS. TORRACO:  I meant to say 3885.  I'm

7   sorry, I should have shown it to you.

8       A.   That's not correct.

9   BY MS. TORRACO:

10      Q.   That's not correct?  Do I have the wrong

11  report?

12      A.   Yes, ma'am.  This is documenting the

13  distance from the crime scene to the residence, not

14  from the crime scene to the Allsup's, which we

15  documented the route on.

16      Q.   So the crime scene to their residence was

17  34 minutes?

18      A.   Okay.

19      Q.   Is that correct?

20      A.   Yes.

21      Q.   Okay.  I don't know how to work his

22  computer.

23      A.   Just take two fingers.

24      Q.   Yes.

25      A.   Is that right?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.    No, that's not.  I have a feeling my
 2   colleague will continue looking for it, but we'll
 3   move on, in the meantime.
 4              I believe I am winding to a close.  I just
 5   have some final questions and concerns.  Do you
 6   think that it was odd that they have a police
 7   scanner?
 8        A.    No, ma'am.
 9        Q.    In fact, you have a police scanner?
10        A.    No, ma'am.
11        Q.    Yeah, you said that you had the app.
12        A.    I had.  I had that and I tried it before.
13   I hear it enough at work, I didn't want to listen to
14   it at home.
15        Q.    But a lot of people have a police scanner
16   app; isn't that true?
17        A.    I believe so.
18        Q.    And a lot of people go for gas; isn't that
19   true?
20        A.    Yes, ma'am.
21        Q.    There's a lot of people at the Allsup's
22   every day; isn't that true?
23        A.    Yes, ma'am.
24        Q.    And the mere thought that someone is going
25   to be a suspect because they purchase gasoline -- a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    lot of people purchase gasoline; right?

2         A.   Yes, ma'am.

3         Q.   And so, therefore, everyone that purchased

4    gas that evening is not a suspect; isn't that true?

5         A.   Correct.

6         Q.   Now, I want to go through what you believe

7    Andrew Gallegos looked like on November 12 of 2012.

8    Isn't it true that he did not have sideburns?

9         A.   I don't recall.

10        Q.   Well, that would be an important fact if,

11   indeed, sideburns were shown at the Giant earlier

12   that day; isn't that true?

13        A.   It would have, I just don't recall if he

14   did or not.

15        Q.   Okay.  Is it unreasonable to think that a

16   pair of handcuffs could be bought at a place other

17   than a police supply store?

18        A.   No, ma'am.

19        Q.   And isn't it true that zip ties were found

20   at the scene of the crime?  Do you remember from

21   your report, or from the photographs, that zip ties

22   were found?

23        A.   I don't recall zip ties.  I remember the

24   handcuffs.

25        Q.   Okay.  And what would the relevance be of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   the zip ties?

 2            MS. TORRACO:  May I have just a moment,

 3   please?

 4            THE COURT:  You may.

 5   BY MS. TORRACO:

 6        Q.   On November 12th of 2012, did Andrew

 7   Gallegos have long hair?

 8        A.   Longer than it is now, but not really

 9   long, I don't believe.

10        Q.   Certainly not as long as mine?

11        A.   No, ma'am.

12        Q.   And not as long as most of the women in

13   this room?

14        A.   Well, close to some of them, yes.

15        Q.   You think so?

16        A.   I think it was a little bit longer than it

17   is now, but not that long.

18        Q.   Did he have a goatee?

19        A.   I don't recall.

20        Q.   Okay.  Well, the identification of Andrew

21   Gallegos, wouldn't you agree, is very important?

22        A.   Yes.  That's why I have pictures taken of

23   him, that we used for comparison at the time.

24        Q.   Okay.  And so you used those comparison

25   pictures to identify him at the Allsup's; correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Yes.

 2        Q.    Did you use those same identification

 3   pictures to identify him at the Giant?

 4        A.    Yes, ma'am.

 5        Q.    And isn't it true that the person at the

 6   Giant has longer hair and a goatee?

 7        A.    I couldn't say.

 8        Q.    Why can't you say?

 9        A.    Because I don't recall.  In the video the

10   person has a hoodie on, so it would cover the bottom

11   part of their hairline.  And I don't recall if a

12   goatee was even visible on that video, now.

13        Q.    Okay.  Let's take a look, if we may at --

14   we can't take a look at it.

15            MS. TORRACO:  I'd like to move Exhibit 373

16   into evidence.

17            THE COURT:  Any objection, Ms. Armijo?

18            MS. ARMIJO:  I'm just trying to see what

19   373 is.  If it's obviously one of our exhibits, I

20   don't oppose what this witness knows about it.

21            MS. TORRACO:  May I approach the witness?

22            THE COURT:  You may.

23   BY MS. TORRACO:

24        Q.    Sergeant, I'm going to show you on this

25   laptop Government's Exhibit 373.  Do you recognize
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  that photo?

2      A.   No, ma'am.

3      Q.   You don't?  Were you at the crime scene?

4      A.   Yes, ma'am.

5      Q.   And that's not a picture of anything that

6  you saw when you were at the crime scene?

7      A.   I just don't recognize it.  I recognize

8  the salt cedars from that area, and so -- this is

9  one of our crime scene cones, but I don't recall

10 this specific picture.

11     Q.   Okay.  Do you recall seeing a zip tie at

12 the scene?

13     A.   No, ma'am, I don't recall seeing a zip tie

14 at the scene.

15     Q.   And would you agree that the fact that

16 there is a zip tie at the scene is suspicious?

17     A.   No, ma'am.  If it had been on his person,

18 it would have been suspicious.

19     Q.   Okay.  And was it on his person?

20     A.   No, ma'am.  He was handcuffed.

21     Q.   Who handcuffs with zip ties?

22     A.   Those type of zip ties?  No one that I

23 know of.

24     Q.   Just in general.  Who uses zip ties to

25 handcuff?

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. ARMIJO:  Objection, foundation.
 2              THE COURT:  Overruled.
 3   BY MS. TORRACO:
 4         Q.   Do you know who handcuffs with zip ties?
 5         A.   Not those type of zip ties.
 6         Q.   I understand that.
 7         A.   Police use zip ties.
 8         Q.   Police use zip ties?
 9         A.   But they're different.
10         Q.   Okay.  That's fine.  I got it.  And the
11   jury has it, too.  Three times.  But it is true that
12   police use zip ties to handcuff people?
13         A.   A type of zip tie, yes, ma'am.
14         Q.   Were the police ever a suspect in this
15   investigation?
16         A.   We had information about people who were
17   antagonizing Adrian that we investigated.
18         Q.   So the answer is yes?
19         A.   I don't know if they were.  They were a
20   person of interest.
21         Q.   Okay.  And isn't it true that one of those
22   people that was concerned about the police was
23   Adrian Burns' mother?
24              MS. ARMIJO:  Objection, calls for hearsay.
25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   BY MS. TORRACO:

 2        Q.   Do you know, as a basis of your

 3   investigation?

 4             MS. TORRACO:  In order for him to know his

 5   state of mind for what he did next and why he

 6   directed the investigation.

 7             THE COURT:  Well, I'm not sure how

 8   important it is for him -- for the jury to know that

 9   and why he does everything he does.  If you can

10   explain to me a little better why it's important

11   where this information is coming from, I think it's

12   more important as to what he did next.

13   BY MS. TORRACO:

14        Q.   Okay.  Did you follow up on or did you

15   direct any of your staff to follow up on some leads

16   regarding the police?

17        A.   Yes, ma'am.

18        Q.   And was there ever information about

19   perhaps rocks being thrown -- or is a rock being

20   thrown through Adrian Burns' window?

21        A.   No, ma'am.  A brick was thrown through the

22   window.

23        Q.   It was a brick?

24        A.   Yes.

25        Q.   Was there a reason to believe that the
```

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                   Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                    FAX (505) 843-9492
                                                                          1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  police had thrown that brick?

2       A.   I believe that's what Adrian's mother

3  believed.

4       Q.   Okay.  And was that important in your

5  investigation?

6       A.   Yes, ma'am.

7       Q.   And did you follow through on that and --

8  or direct your staff to follow through on the police

9  harassment?

10      A.   I did.

11      Q.   And who did the lion's share of that

12 investigation?  Because that wasn't you; correct?

13      A.   It was not me.

14      Q.   Do you remember?

15      A.   Who I assigned to follow up on that?

16      Q.   Um-hum.

17      A.   I do not.

18      Q.   Do you know what agencies you requested

19 the officers to look into?

20      A.   Los Lunas PD.

21      Q.   I'm sorry?

22      A.   Los Lunas PD.

23      Q.   Okay.  And were there concerns at any time

24 of corruption within the Los Lunas Police

25 Department?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    I beg your pardon?

2      Q.    Were there concerns of corruption within

3  the Los Lunas Police Department?

4      A.    Not that I was aware of.

5      Q.    Okay.  So during the course of your

6  investigation, did you interview any witness who

7  said that they saw the murder?

8      A.    No, ma'am.

9      Q.    And isn't it true that no one has come

10 forward to say that they saw the murder; isn't that

11 true?

12         MS. ARMIJO:  Objection, calls for hearsay.

13         MS. TORRACO:  It's just a basis of how he

14 did the investigation.

15         THE COURT:  Well, I think we probably

16 better limit it to him.  Does he know of anybody.

17         MS. TORRACO:  Okay.  Yes, Your Honor.

18 BY MS. TORRACO:

19     Q.    Do you know if anybody -- or did anybody

20 come forward to you saying that they saw the murder?

21     A.    No, ma'am.

22     Q.    Okay.  And certainly no one has said that

23 they saw Andrew or Joe Gallegos shoot Adrian Burns;

24 isn't that true?

25         MS. ARMIJO:  Same objection.

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                               Albuquerque, NM 87102
(505) 989-4949                                           (505) 843-9494
FAX (505) 843-9492                               FAX (505) 843-9492
                                                      1-800-669-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

```
 1            THE COURT:  Overruled.
 2  BY MS. TORRACO:
 3      Q.   Isn't that true?
 4      A.   There was no question there.  What was
 5  your question?
 6      Q.   Isn't it true that no one came forth and
 7  said that they saw Andrew and Joe Gallegos shoot
 8  Adrian Burns?  Isn't that true?
 9      A.   Yes, ma'am.
10            MS. TORRACO:  I believe that's all the
11  questions I have.  Thank you very much, Your Honor.
12            Thank you, Sergeant.
13            THE COURT:  Thank you, Ms. Torraco.
14            Any other defendant have any
15  cross-examination of Mr. Williamson?
16            All right.  Ms. Armijo, if you have
17  redirect of Mr. Williamson.
18                    REDIRECT EXAMINATION
19  BY MS. ARMIJO:
20      Q.   Sergeant Williamson, was this case -- was
21  this investigation reassigned to another agent in
22  the New Mexico State Police Department when you were
23  promoted?
24      A.   Yes, ma'am.
25      Q.   And who was that?
```



SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492
                                                                   1-800-669-9492
BEAN & ASSOCIATES, Inc.                       e-mail: info@litsupport.com
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.    Agent Janice Madrid.

 2        Q.    And when was that?

 3        A.    That was in August of 2014.

 4              MS. TORRACO:  Objection, beyond the scope.

 5              THE COURT:  Overruled.

 6   BY MS. ARMIJO:

 7        Q.    And then are you aware of whether or not,

 8   then, the FBI also took over part of investigation?

 9        A.    Yes, ma'am.

10        Q.    And was that after you had an active role

11   in this investigation?

12        A.    Yes, ma'am.

13        Q.    Now, did Amber Sutton show you part of

14   her -- the T-Mobile history regarding the phone that

15   Adrian Burns used?

16        A.    Yes, ma'am.

17              MR. BENJAMIN:  Objection, hearsay, Your

18   Honor.

19              THE COURT:  Well, just whether it was

20   shown.  It may be after this, but --

21   BY MS. ARMIJO:

22        Q.    I was just asking you if she provided it.

23        A.    Yes, ma'am.

24        Q.    And are you aware of -- Mr. Benjamin asked

25   you about whether or not you went to Giant and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   obtained a receipt.  Do you recall that?

 2        A.   Yes, ma'am.

 3             MS. ARMIJO:  May I approach the witness?

 4             THE COURT:  You may.

 5   BY MS. ARMIJO:

 6        Q.   Showing you Government's Exhibit 338.

 7             MS. TORRACO:  May I see the exhibit before

 8   you show it to him, please?

 9             I object to her approaching the witness

10   with this.  Can we approach the bench?

11             THE COURT:  You may.

12             (The following proceedings were held at

13   the bench.)

14             MS. TORRACO:  Thank you, Your Honor.  I'm

15   not clear why she would show this to the witness.

16   We don't believe that this was the receipt that was

17   identified by the clerk.  So I don't see how it's

18   relevant.

19             MS. ARMIJO:  This is -- well, this is

20   clearly what was -- Mr. Benjamin asked him if he got

21   a receipt, and he said yes, and he said, "You did?"

22   And he was very surprised, and then handed Mr.

23   Benjamin this item, which we will have the witness

24   come in and say that she gave the receipt to this

25   witness.  And so now I'm not moving it into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   evidence; I'm having him say who he got this from.

2           THE COURT:  So you said to me, looks like

3   just part of the Government laying the foundation to

4   the document to get in later.

5           MR. BENJAMIN:  Your Honor, may I respond?

6   The witness -- and I just listened to her interview

7   this morning -- said that the gas was $2.63.  That's

8   $4.23.

9           THE COURT:  That sounds like

10  cross-examination.  If the Government wants to try

11  to establish the foundation to get this in, they

12  can.  So I'll allow the question.

13          MR. BENJAMIN:  I guess the concern is, I

14  don't have any recross on this witness, Your Honor.

15          THE COURT:  I think we start to -- start

16  bringing recross to a close.

17          MR. BENJAMIN:  I'm saying that my problem

18  is the surprise, Your Honor, was that this receipt

19  is not for the amount that was in Christyn Collins'

20  statement.

21          THE COURT:  What are you going to ask him

22  about?

23          MR. BENJAMIN:  I'm going to ask him if

24  Ms. Collins told him the amount of fuel purchased

25  was $2.63.

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                       Albuquerque, NM 87102
(505) 989-4949                                                   (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                              1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1              THE COURT:  That probably wouldn't be
 2    admissible.  Objection overruled.  You can ask your
 3    question.
 4              (The following proceedings were held in
 5    open court.)
 6              THE COURT:  Ms. Armijo?
 7    BY MS. ARMIJO:
 8         Q.   Sergeant Williamson, do you recognize that
 9    item?
10         A.   Yes, ma'am.
11              MR. BENJAMIN:  Objection, Your Honor,
12    foundation and lack of personal knowledge.
13              THE COURT:  He recognizes it.  So let's
14    see what the next question is.
15    BY MS. ARMIJO:
16         Q.   How do you recognize that item?
17         A.   I collected this from the Giant clerk at
18    the Giant in Belen.
19         Q.   Just so that we're clear, who was the
20    clerk that you collected it from?
21         A.   Christyn Collins.
22              MR. BENJAMIN:  Same objections, and
23    hearsay.
24              THE COURT:  Overruled.
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   BY MS. ARMIJO:

 2        Q.   And I'm sorry, I didn't hear your answer.

 3        A.   Christyn Collins.

 4        Q.   And when did you collect it?

 5        A.   I believe it was on the 16th.

 6        Q.   Okay.  Of November of 2012?

 7        A.   Yes, ma'am, sometime that week.

 8        Q.   Okay.  And was that as part of your

 9   investigation in this case?

10        A.   Yes, ma'am.  We went there to pick up

11   video recording.

12        Q.   Did she also provide you with video

13   recording?

14        A.   She did.

15        Q.   And is that the video recording that

16   people were referring to, and you've talked about,

17   where you believe Andrew Gallegos was wearing a

18   camouflage jacket?

19        A.   Yes, ma'am.

20        Q.   And that video was given to you by the

21   same person?

22        A.   Yes, ma'am.

23        Q.   And is that the receipt that Ms. Collins

24   gave you?

25        A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   All right.  And how many times did Joe

2  Gallegos tell you that he went into the Allsup's?

3     A.   I don't believe he really clarified.  He

4  just said that he got cigarettes and toilet paper,

5  paid for his gas.

6     Q.   Okay.  How many times did he say that

7  he -- that they stopped at Allsup's?

8     A.   He just referenced the one time where they

9  ran into Leroy Vallejos.

10     Q.   Okay.  And when a person is conducting

11  surveillance, we saw photographs taken on the

12  November 14th and 15th, I believe at the Gallegos'

13  residence; is that correct?

14     A.   Yes, ma'am.

15     Q.   And was that in preparation for a search

16  warrant?

17     A.   Yes, ma'am.

18     Q.   And would it be prudent -- or would you

19  expect a person doing surveillance to go up and

20  contact persons inside?

21     A.   No, ma'am.

22     Q.   Why is that?

23     A.   Because of the danger for just two

24  officers.  The warrant was served with the

25  assistance of the TAC team, if that clarifies it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

241

```
 1        Q.   And do you know if there is even a
 2   database for handcuffs?
 3        A.   No, ma'am, I'm not aware of one.
 4        Q.   And Andrew Gallegos -- did he disagree
 5   with your statement about his truck being -- looking
 6   like it had not been operated?
 7        A.   I think he just expressed confusion, like
 8   I don't know about that, or I don't know anything
 9   about that, or something to that correct.
10        Q.   And you indicated when Ms. Torraco was
11   asking you questions about not being able to ask the
12   family about a jacket, why was that?
13             MS. TORRACO:  Objection.  That's
14   mischaracterizing the evidence.  I asked, did you
15   ask the family, and he responded no.
16             THE COURT:  Well, I'll allow this
17   question.  Overruled.
18   BY MS. ARMIJO:
19        Q.   Why did you not ask the family about that
20   jacket?
21        A.   I don't recall now why we didn't ask them
22   about that specific jacket.
23        Q.   Was the family very forth- --
24             MS. TORRACO:  Objection, leading.
25             THE COURT:  Overruled.
```

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                       201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                         (505) 843-9494
FAX (505) 843-9492                                                 FAX (505) 843-9492
                                                                     1-800-669-9492
                                                            e-mail: info@litsupport.com



```
1   BY MS. ARMIJO:

2        Q.   Was the family forthcoming with you?

3             MS. TORRACO:  Objection, hearsay.

4             THE COURT:  Overruled.

5        A.   Not at all.

6   BY MS. ARMIJO:

7        Q.   And do you know whether or not Veterans

8   Day -- whether or not the federal holiday was

9   observed on November 12?  Have you checked it?

10       A.   No, ma'am, I have not.

11            MS. ARMIJO:  No further questions.  Thank

12  you.

13            THE COURT:  Thank you, Ms. Armijo.

14            All right.  Mr. Williamson, you may step

15  down.

16            Is there any reason Mr. Williamson cannot

17  be excused from the proceedings?

18            MR. BENJAMIN:  Your Honor, we'd ask that

19  he be subject to recall.

20            THE COURT:  All right.  You're subject to

21  being recalled.  That means you have to stay outside

22  of the courtroom and not discuss your testimony with

23  anyone, but you are subject to recall.  Thank you

24  for your testimony.

25            THE WITNESS:  Thank you, sir.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    UNITED STATES OF AMERICA

2    STATE OF NEW MEXICO

3

4                  C-E-R-T-I-F-I-C-A-T-E

5        I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

6    Official Court Reporter for the State of New Mexico,

7    do hereby certify that the foregoing pages

8    constitute a true transcript of proceedings had

9    before the said Court, held in the District of New

10   Mexico, in the matter therein stated.

11       In testimony whereof, I have hereunto set my

12   hand on this 18th day of November, 2018.

13

14       _____

15       Jennifer Bean, FAPR, RMR-RDR-CCR
         Certified Realtime Reporter
16       United States Court Reporter
         NM Certified Court Reporter #94
17       333 Lomas, Northwest
         Albuquerque, New Mexico 87102
18       Phone:        (505) 348-2283
         Fax: (505) 843-9492
19       License expires:  12/31/18

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com