1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3

4    UNITED STATES OF AMERICA,

5          Plaintiff,

6          VS.                    CR. NO. 15-4268 JB

7    ANGEL DeLEON, et al.,

8          Defendants.

9

10                    VOLUME 2

11        Transcript of Motion Proceedings before
     The Honorable James O. Browning, United States
12   District Judge, Las Cruces, Dona Ana County,
     New Mexico, commencing on December 18, 2018.
13

14   For the Government:  Ms. Maria Armijo; Mr. Randy
     Castellano
15
     For the Defendants:  Mr. Brock Benjamin; Ms. Cori
16   Harbour-Valdez; Mr. Pat Burke; Mr. Robert Cooper;
     Mr. Scott Davidson; Ms. Amy Jacks; Ms. Lauren
17   Noriega; Mr. Marc Lowry; Ms. Carey Bhalla, Mr. Bill
     Maynard; Mr. Donovan Roberts; Ms. Lisa Torraco
18
     For the Defendants Via Telephone:  Mr. James Castle
19

20

21

22        Jennifer Bean, FAPR, RDR, RMR, CCR
              United States Court Reporter
23            Certified Realtime Reporter
               333 Lomas, Northwest
24            Albuquerque, NM  87102
               Phone:  (505) 348-2283
25               Fax:  (505) 843-9492

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Why don't we go
2    ahead -- we can't get our phone system to work, so
3    we'll have to work on it during the day to get Mr.
4    Castle in.  But let's go ahead and get started.
5              Good morning.  I appreciate everybody being
6    here and ready to go on time.
7              Ms. Armijo, did you want to respond to
8    Mr. Lowry's arguments as to why that exhibit -- I
9    believe it was JJ -- is relevant?
10             MS. ARMIJO:  Yes.  I just need two of the
11   exhibits, two of the location histories.
12             THE COURT:  Do I have those?
13             THE CLERK:  Yes, they're in the folder for
14   this case.
15             MS. ARMIJO:  Yes, Your Honor.  Yesterday
16   Mr. Lowry was mentioning, in reference to Joe
17   Martinez' statement -- and more specifically Mr.
18   Calbert's statement -- he indicated that -- I believe
19   the quote -- and I don't know that Mr. Lowry put it
20   in evidence, but what he showed yesterday was that
21   Mr. Calbert indicated that this transfer had occurred
22   when he had gone up to the North, after the stabbing
23   of Paul Silva, for which he was charged.  And he was
24   showing you the location histories of Mr. Martinez
25   and Mr. Urquizo.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          And I'm showing you Exhibit No. 10, and

2    more specifically, Exhibit No. 12, where you can see

3    that after 2012, up until 2016, Mr. Martinez was not

4    at the North because he was not in custody; hence, he

5    was making the argument that's impossible because

6    2013 is what the time period you're looking for.

7          But I would refer the Court to the

8    indictment in 4269 -- the case 15-CR-4269, the

9    companion case to this one, that was indicted the

10   same day -- to Count 1 on page 8.  And it has the

11   date of the actual crime, which was in March 2011;

12   specifically March 14, 2011.

13         So the dates that Mr. Lowry was referring

14   to yesterday, saying that it was impossible to have

15   this exchange, should really be looked at, instead of

16   2013, 2011.

17         And when you look at the location histories

18   for these two people, Joe Patrick Martinez was in the

19   North in 2011.  And in fact, he said he thought it

20   happened sometime within four to five months after

21   this occurred.  This occurred in March.  And he even

22   indicates on there, I believe the quote -- I don't

23   think Mr. Lowry read it -- but he said he was bad

24   with dates, but he thought it happened after he went

25   to the North, would be in 2011.  And you can clearly

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   see that he is at the North in 2011.  And so is Mr.

 2   Calbert; he's here at the North as well.

 3           Oh.  Mr. Lowry just provided me with the

 4   cross-examination -- it's page 46 of the

 5   transcript -- and he says, "It's right after the

 6   Silva case, what happened with Silva, and they put me

 7   in 1-B, away from everybody.  And I don't know what

 8   year it was.  Like I said, I'm real bad with dates."

 9   And then he even says, "it may be within that four to

10   five months."  So this clearly puts it within the

11   time period, as Mr. Calbert indicated.  And that is

12   what I wanted to point out to the Court.

13           The rest of the argument, since that was

14   the only thing that Mr. Lowry was kind of arguing

15   yesterday, we will reserve to wait to respond to

16   theirs.

17           THE COURT:  All right.  Thank you,

18   Ms. Armijo.

19           All right.  Mr. Lowry, do you want to argue

20   your motion for new trial for Mr. Baca?

21           MR. LOWRY:  We were going to do it on

22   paper, Your Honor.  That was the agreement.

23           THE COURT:  You were going to do what?

24           MR. LOWRY:  We were going to submit paper

25   on it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              THE COURT:  All right.  And you know you
 2    owe me a stack of these exhibits?
 3              MR. LOWRY:  I do, and I'm working on that
 4    now, Your Honor.
 5              MS. ARMIJO:  And, Your Honor, do you want a
 6    copy of the indictment?  I believe it should be Doc 1
 7    or 2 of this.  But I --
 8              THE COURT:  I don't mind putting it into my
 9    folder for Mr. Baca, so I'll take it.
10              MR. LOWRY:  Your Honor, just with regard to
11    the exhibits, I may have overlooked yesterday -- we
12    spoke about it briefly -- the three conditional phone
13    calls that were going to be admitted, and there were
14    Q, R, and S, they're in the brief.  And I'll get
15    those.  We lodged them yesterday, and I'll get a copy
16    for Mr. Armijo.
17              THE COURT:  All right.  What is it that you
18    just had?  Did you want to mark what you just put up
19    here on the cross-examination?  Or do you just want
20    to rely on the transcript for that?
21              MS. ARMIJO:  I'm sorry?  For --
22              THE COURT:  Well, did you want to mark
23    something further?  You put it up on the screen
24    highlighted.
25              MS. ARMIJO:  Oh, this was just what Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   Lowry was using yesterday.  I don't think he moved to
2   admit it, but I'm sure he may be referring to it, if
3   he still uses this argument.  And so it's part of --
4   I believe we had agreed yesterday that anything in
5   the trial could be introduced as evidence.  So I'm
6   assuming he would use this.  So I don't know that he
7   was planning on moving it in.  My only point was just
8   that the location histories do match up from the
9   Silva case.
10          THE COURT:  All right.  Thank you,
11  Ms. Armijo.
12          All right.  Mr. Lowry.
13          MR. LOWRY:  Thank you, Your Honor.
14          Your Honor, that's it.  I mean, I don't
15  want to belabor the point.  I think the transcript
16  speaks for itself.  The United States and I pick out
17  different anchors in terms of what's the
18  transactional language in the transcript, and we'll
19  leave it to the Court to decide.
20          THE COURT:  All right.  Mr. Castle, are you
21  there?  Mr. Castle?
22          MR. COOPER:  Your Honor, if I may, I will
23  text him and tell him that we are now up and running.
24          THE COURT:  All right.  Did you have any
25  further argument, Mr. Lowry, on your motion?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              MR. LOWRY:  No, Your Honor.

2              THE COURT:  All right.  Ms. Armijo, do you

3     have further argument?

4              MS. ARMIJO:  No, Your Honor.

5              THE COURT:  Well, it seems to me that this

6     is just issues for the jury to decide.  It's

7     additional evidence.  But -- I'll work and look

8     closely at Mr. Baca's motion, but I'm inclined to

9     think it doesn't raise an issue that requires a new

10    trial.  It was just some additional information that

11    could have been put forward, as developed as the

12    trial went through, and then as we concluded the

13    trial.  But I'll give it a hard look, but I'm not

14    inclined to grant the motion, at least at the moment.

15             All right.  I think the next motion that we

16    are going to take up is Billy Garcia's -- excuse me,

17    Mr. Troup's motion, which Mr. Billy Garcia joined.

18    There may have been others that joined it as well.

19    So --

20             MR. BURKE:  Good morning, Your Honor.

21             THE COURT:  Good morning.

22             MR. BENJAMIN:  Your Honor, before we start,

23    Joe Gallegos also joined.

24             THE COURT:  Okay.  There may be others.  I

25    know there is one formal joinder, but there may have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   been others.

2          Are you there, Mr. Castle?

3          MR. BURKE:  Your Honor, Edward Troup was

4   released from prison, having finished his sentence on

5   May 10, 2012.  From that date until his arrest on the

6   indictment in this case, December 3, 2015, a period

7   of 43 months, he was a free man for almost three

8   years of those 43 months.  He did have a dirty urine,

9   and that led -- or two -- and that led to

10  incarceration.  But for most of the period of time,

11  for the three-and-a-half years leading up to this

12  indictment, my client was a free man.  And during

13  that time he got married, he was steadily employed,

14  he had reestablished relationships with his family,

15  he was a contributing member of society.  An argument

16  can even be made that he had paid his debt to society

17  in the large part because he lost so much good time,

18  over six years, as a result of the Freddie Sanchez

19  homicide in June of 2007.

20          At the time of his arrest, Edward Troup had

21  been under the care and treatment of Dr. Valerie

22  Carrejo.  I had the privilege of meeting her.  She is

23  a very fine, wonderful and caring doctor.  And she

24  had Edward under her care.  And they were going

25  through Suboxone treatment.  They hadn't quite

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    finished it, when he was arrested on December 3,
 2    stayed briefly in a county jail, and then was
 3    transported to Otero County.
 4              Edward finished his removal from heroin
 5    while at Otero County, in effect, sort of cold
 6    turkey.  And during the three years and two weeks
 7    that he has been incarcerated since that time at
 8    Otero County and Torrance County and the West Texas
 9    Detention Facility in Sierra Blanca, Texas, he has
10    not received a single dirty urine or incident report
11    for any other kind of behavior, thereby
12    distinguishing himself from almost every one of the
13    Government's informants in this case.
14              I mention that because Edward has become a
15    friend.  And these cold remarks about a new trial
16    don't quite capture the relationship that my
17    co-counsel and I have developed with our client.  I
18    would like to say that the reason that I was able to
19    visit Edward at Otero County and Torrance County, and
20    the West Texas Detention Facility, and the marshals
21    holding cell downstairs is because Your Honor
22    understood the importance of the attorney-client
23    relationship.  And you went out of your way to make
24    sure that this case was well funded, and that we
25    didn't have to worry about whether we would have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  enough funding to defend this case as well as we knew

2  how.

3          I want to make one or two other comments,

4  and that is that, in addition to Your Honor's great

5  respect for the process and our clients, the people

6  that you work with, including Ms. Bevel and Ms. Bean,

7  and the marshal's office, have treated my client with

8  respect.  And for that we thank you.

9          Your Honor, I begin the substance of my

10 argument with the second argument about Michael

11 Jaramillo.  Angel DeLeon and Michael "Criminal"

12 Jaramillo killed Frank "Pancho" Castillo on March 26,

13 2001, in the Southern New Mexico Correctional

14 Facility, P-1, green pod, cell 2204.

15         The DNA of both DeLeon and Michael

16 "Criminal" Jaramillo identified them as the killers.

17 Two months after Castillo was killed, a lab report

18 confirmed the presence of DeLeon's and Jaramillo's

19 DNA on a knotted white cord that was the instrument

20 of death, that came from Castillo's own laundry bag.

21         State Agent Norman Rhoades issued an arrest

22 warrant, but that was not pursued.  Nothing happened

23 in 2001 on that case.  Nothing happened in 2002.

24         Then, on July 22, 2003, Lorenzo Torres told

25 state investigators when he was, of course, trying to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   make a deal on a parole situation, that he saw Edward
 2   Troup in the upper pod that day of the Castillo
 3   homicide.  I think many of us will remember Mr.
 4   Torres at trial.  I'm an advocate, so my view is
 5   probably tainted.  But I think it would be very
 6   difficult for anyone to believe a single word that
 7   Torres said in this courtroom under oath.  He
 8   acknowledged that he was up early on March 26, 2001,
 9   looking for heroin.  The April 24 transcript reflects
10   an answer from him, "I was looking upstairs.  I was
11   looking for heroin.
12           "Q.  You were wanting to get some heroin?
13           "A.  I was wanting to get some heroin."
14           It was early in the morning, 5:30 to 6:30.
15   Torres said that he saw Angel DeLeon, but Torres said
16   that he did not remember or see the killer,
17   Jaramillo.  And aside from his inherent lack of
18   credibility, the fact that he didn't see the killer,
19   Jaramillo, confirmed that he was not a reliable
20   witness.
21           The three inmates that Torres mentioned in
22   his scatter-brained statement, in July 2003, were
23   DeLeon, Joe Gallegos, and Edward Troup, those three
24   people.  And from that moment on, that's who the
25   Government stuck with:  DeLeon, Gallegos, and Troup.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    And those are the people who were indicted 14 years

2    later, in 2015.

3           And from the time of the initial indictment

4    in December 2015, the case against Edward Troup on

5    Count 1 was Lorenzo Torres.  With regard to that

6    case, my co-counsel and I were aware of a plan and a

7    procedure where we could cross-examine him.  We knew

8    that Lorenzo Torres had refused to make any

9    statements to investigators in March, when he was

10   being interrogated at that time.  He, Torres, refused

11   to give DNA back in March of 2001.  He did not

12   provide a DNA sample.

13          We learned that the Castillo laundry bag

14   cord was the instrument of death.  So this phony

15   statement about seeing Edward Troup and Angel DeLeon

16   disabling a laundry bag was shown to be the lie that

17   it was.  And Torres said that Angel DeLeon told him

18   that Joe Gallegos strangled Castillo, when the

19   evidence shows, and we learn later that it was

20   Jaramillo.  He was not a believable witness.  But

21   that was the Government's theory.  And the three

22   actors in the indictment on the 2001 homicide were

23   Joe Gallegos, Angel DeLeon, and Edward Troup.

24          The Government never bothered to run down

25   the obvious important evidence that Jaramillo's DNA

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    was on the weapon of death.
2            Even Torres' pretrial interview on March
3    28, 2018, he didn't include Jaramillo, because the
4    prosecution team couldn't give him any information
5    that would cause him to suddenly remember Jaramillo.
6    And we conducted our voir dire based on "that" case.
7    We gave our opening statement based on "that" case.
8    We conducted our initial cross-examinations based on
9    "that" case.
10           I note also, Your Honor, because I believe
11   it is important, that my co-counsel and I filed our
12   motion to dismiss regarding the delay on October 5,
13   2017.  That's Document 1284.  It's not an elaborate
14   motion.  It was straightforward.  It alleged various
15   facts on pages 2 and 3.  And we were having a hearing
16   about that motion on April 4 and 5, as we were doing
17   the run up to trial.  And I mention that in
18   particular because we laid out our case on, and our
19   defense, on Count 1.  In that motion we were not
20   subtle, we were not holding back.  We laid out our
21   case.  And in our motion we noted that these charges
22   are based solely on the statements of Government
23   informants.  And as a result, Edward Troup is also
24   suffering prejudice because he is being victimized by
25   one of the most pernicious features of modern
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

1    prosecutions:  The Government's use of informants who

2    are seeking benefits.  The Government can provide

3    inducements to informants if they make statements

4    that are consistent with the theory selected by the

5    prosecution.

6         We noted that the prejudice becomes more

7    manifest because the prosecution plays a cat and

8    mouse game with discovery.  The Government refuses to

9    provide Jencks statements until two weeks before

10   trial, which was the state of play at the time of the

11   motion.  The Government has not provided Giglio and

12   Brady materials in good faith.

13        And thus, Edward Troup suffers ongoing

14   prejudice, the prejudice caused by the delay.  It

15   might have been ameliorated if the Government had

16   played straight with Jencks materials, or if the

17   Government had provided all Giglio and Brady

18   materials early on.  But that's not what the

19   Government has done.  The Supreme Court has made

20   clear that certain delays, due to their sheer length,

21   are presumptively prejudicial.

22        We cited Doggett v. United States, a 1992

23   case, which said "impairment of one's defense is the

24   most difficult form of Speedy Trial prejudice to

25   prove, because time's erosion of exculpatory evidence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   and testimony can rarely be shown."
 2             And, Your Honor, we went on to say that the
 3   decision was a tactical one to include the 2001
 4   homicides in the indictment.  And we even filed a
 5   supplement to that motion noting the additional
 6   discovery of the Burkhead declination letter, which
 7   had been held by the Government for so long, but
 8   finally, it was revealed.  And that was the March 26,
 9   2015 letter, in which the United States Attorney's
10   Office said that it would not be prosecuting the
11   Garza and Castillo homicides because the witnesses
12   were incredible.
13             And thus, Your Honor, the timeline on
14   Jaramillo was that on March 26, 2001, Jaramillo
15   strangled the life out of the Frank Castillo.  On May
16   23, 2001, DNA lab results showed indications of
17   Jaramillo on the cord that he used to snuff the life
18   out of Castillo.
19             On August 8, 2007, Leonard Lujan was
20   interviewed, and stated that he directed other
21   inmates, including Michael "Criminal" Jaramillo to
22   kill Frank Castillo, and thereafter, Leonard Lujan
23   repeated that several times.
24             On April 10, 2018, counsel for Edward Troup
25   conducted voir dire based on the understanding that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Jaramillo would not be a witness in the case.

2              On April 12, 2018, counsel for Edward Troup

3    gave the defense's opening statement based on the

4    understanding that Jaramillo would not be a witness

5    in the case.

6              On April 18, 2018 -- well into the trial --

7    Jaramillo is provided with a Kastigar letter.   On

8    April 19, 2018, for the first time, an FBI 302 was

9    produced.

10             Your Honor, in the interests of justice, we

11   should have a new trial on Count 1.

12             Those defending Count 2, they understood

13   that the Government's approach was to put Eugene

14   Martinez, the killer, on the stand, and they had time

15   to get ready.   And they prepared, and they worked

16   hard, and it took a long time.   And I, for one, will

17   never forget cross-examination of my colleague, Bob

18   Cooper, of Eugene Martinez on April 25 and April 26,

19   in which he brought out from the witness stand that

20   Eugene Martinez had been lying all along about

21   witnessing the deaths of his father and brother.   And

22   they were able to bring out the many times that

23   Eugene Martinez feigned incompetency, and they were

24   able to successfully persuade the jury that this

25   witness could not be trusted.   And on Count 2, the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   verdicts were "not guilty."  And that's because our
 2   colleagues defending Count 2 had enough time to go
 3   after the killer, the actual killer.
 4            And for all of those reasons, we say the
 5   interests of justice suggest that a new trial should
 6   be granted on Count 1.
 7            THE COURT:  Let me talk to you about
 8   Jaramillo.  I noticed -- and correct me if I'm
 9   wrong -- that when I read through your briefing on
10   that, you did not cite the opinion that I wrote on --
11   you remember there was this issue about Jaramillo not
12   appearing on the witness list --
13            MR. BURKE:  Right.
14            THE COURT:  -- and whether with this being
15   a death penalty eligible case, and learned counsel
16   being appointed, whether that had to be -- he had to
17   be on that list a certain number of days before
18   trial.  I did issue that opinion, right?
19            MR. BURKE:  Well --
20            THE COURT:  I mean, I've got a lot of
21   opinions in draft that need to go out on this case.
22   But I thought that one had gone out.  Am I wrong?
23            MR. BURKE:  I can't remember, because
24   the -- I know that the Government --
25            THE COURT:  The reason I say that is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   because I spent a lot of time -- I went back and
 2   worked real hard on the chronology of Jaramillo as
 3   the -- where he was in the Government's case, and on
 4   witness lists and not on witness lists, going into
 5   the trial.  Because my memory is I found there was a
 6   violation of that statute, and that statute did
 7   apply.  But that in the end, the remedy that the
 8   defendant sought was not appropriate.
 9               MR. BURKE:  It's exactly what you found,
10   Judge.  And the Government attached the transcript --
11               THE COURT:  Well, I noticed they attached a
12   transcript.  But don't I have an opinion out there on
13   this?  I need to find out if one got issued, because
14   I spent a lot of time with it.  It's possible that
15   it's in some file and I haven't issued it.  Do you
16   know?
17               MR. BURKE:  I don't believe it did get
18   issued.  But I don't trust myself on having 100%
19   grasp of the file in this case.  I remember that
20   Scott Davidson took the laboring oar on the
21   submission by the defense.  And I know that it was
22   hotly disputed.  And Your Honor took a considerable
23   amount of time.  And I do remember you hunting down
24   all of the law, and then eventually finding that the
25   three-day requirement for a death penalty case did
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   apply, and that this was a death penalty case,

2   because the findings were included in the indictment

3   that made it a death eligible case.

4           And in working on the motion for new trial,

5   I tried to look at every filing that was relevant.

6   And I didn't see the Court's opinion.  I'm going to

7   talk about one other of your opinions during trial

8   shortly, but I didn't see that.

9           THE COURT:  But we both still have to

10  grapple with the fact that on the day of venire, on

11  the Monday, we're still, I believe, now two -- almost

12  two full days ahead of opening statements -- Mr. Beck

13  was sitting over there reading the witnesses for

14  trial.  And do you remember we had the juror that

15  didn't understand why we were reading the list of

16  witnesses, and so it was reread.  And Mr. Jaramillo's

17  name was then -- I think Mr. Acee fed it to him so he

18  would get it in there.

19          MR. BURKE:  I believe that's true.  And I

20  can assure you that my co-counsel and I were huddling

21  when we heard the name.  But I will just tell you my

22  feeling.  My feeling was that that will never work;

23  that he will never be allowed to testify in this case

24  because the Government had not complied with any of

25  the rules relating to producing Jencks statements.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    And the Court knew how hard we were all preparing.

2    And I never really -- to be perfectly candid, I never

3    really believed that you would let him in.

4              THE COURT:  Well, one of the remedies that

5    I had was pushing him down, way down into the case.

6    So I wouldn't let the Government just drag him out

7    here first day of trial, but shoved him way down in

8    the case, and put him down as far as I could into the

9    case, to allow as much to be done as possible.

10             The thing is:  What do you do with a

11   witness that won't talk, and then finally talks?

12             MR. BURKE:  Well, I have an answer to that.

13             This case was turned over to the feds in

14   2003.  You give him a Grand Jury subpoena.  And you

15   say, Come on in here.  And if you're interested in

16   pursuing the truth in 2003, when the feds took over

17   the case, you give him 6001 immunity, and you say:

18   You are talking.  And if he doesn't talk then, you

19   find him in contempt.  And you then have a series of

20   six months in contempt, like they did with Susan

21   McDougal during the Clinton Whitewater investigation.

22             Oh, there are ways to do this if you're a

23   responsible investigator.  That absolutely could have

24   been done.  You certainly don't wait for a trial

25   subpoena, when people have been working for years to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   get ready for trial, and pretend that that's a fair
 2   way to proceed.
 3            The Government had remedies to force
 4   Mr. Jaramillo to come forward.  And if they wanted to
 5   give the killer immunity, they could have done it in
 6   2003, and probably should have.
 7            THE COURT:  All right.  Mr. Burke, anything
 8   further on your motion?
 9            MR. BURKE:  Oh, yes.
10            THE COURT:  All right.
11            MR. BURKE:  I'm going to turn to severance.
12   When I think about severance, Your Honor, the first
13   thing I think about was the hearing on February 7,
14   2017.  Everyone at that point, particularly the
15   Court, was struggling with what to do with this
16   unwieldy indictment.  And just before lunch that day
17   you instructed the prosecutors and the defense
18   lawyers during the recess to figure out how the case
19   could best be divided into three trials.  It's the
20   transcript on pages 141 and 142, February 7, 2017.
21   Your Honor:  "All right, well, let's take our lunch
22   break.  Here's the assignments for lunch,
23   Mr. Castellano, Mr. Cooper.  Give me three
24   single-digit defendant trials."
25            We, the defense, then convened and yelled
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    at each other for about an hour.  And Mr. Cooper,

2    like herding cats, got enough of a consensus to come

3    back in, and he said "This is what we could do."  He

4    came back in.  And among the things he said,

5    Mr. Cooper, "And then the last trial would be eight

6    defendants in the 2001 and 2007 murders at Southern,

7    Counts 1, 2, and 3.  So those are the proposals that

8    we've worked on in the last hour.  And again, Judge,

9    we don't have a consensus."  And that was an

10   understatement.  Because I remember

11   Ms. Harbour-Valdez and I saying you can't put 1 and 3

12   together; that's not fair to Edward Troup.  But

13   that's what we came up with, and we submitted it to

14   the Court.

15          And then it was the prosecution's turn, and

16   Mr. Castellano said, "Given the posture," he says,

17   "we still object regarding severance," as if we could

18   have had a trial with that crowd.  "But given the

19   posture, we'll give you a breakdown of two trials."

20          Your Honor, I have never seen anything like

21   that.  I had never seen a prosecutor defy a judge,

22   especially Your Honor.  But that's what happened.

23   The prosecution would not give a suggestion of three

24   trials with single-digit defendants.  And that's an

25   illustration of what became even more apparent of the

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                         1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                        e-mail: info@litsupport.com

1    "win at all costs" approach to the case.

2            And as I've said before and will say again

3    now, about these prosecutors, they are not afraid of

4    hard work.  They are among the hardest working

5    prosecutors I've ever seen.  And if the Court had

6    said:  We're going to have three trials in 4268, they

7    would have done three trials.  And there should have

8    been three trials, as the Court initially felt.

9            And I recognize the tremendous burden on

10   all of us, particularly Your Honor.  And I also

11   recognize that Congress has given prosecutors this

12   tremendous weapon, VICAR.  One cannot complain or

13   find fault with Agent Acee investigating allegations

14   that Department of Corrections officials were being

15   targeted for murder.  But it didn't make sense ever

16   for Counts 1 and 3 to be linked up with those more

17   recent allegations.

18            And so I say to Your Honor, your initial

19   instinct was right.  It should have been smaller

20   trials.  And Edward Troup ended up going to trial,

21   having to, in effect, defend against the Adrian Burns

22   homicide, so that throughout the trial we saw

23   pictures of his burned body.  And it was dismaying,

24   and the jury would turn away from the photographs.

25            The homicides in 2001 and 2007 being

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    linked, those at least were at the same environment.
 2    But the more recent actions, the Burns homicide, was
 3    not of the same type.  It wasn't of the same time.
 4    And we asked that the trial be separated.
 5              And we noted that the Court had originally
 6    said that it was going to have two juries in the
 7    first trial, and then that changed on the weekend
 8    before trial.  But we had heard that the Court was
 9    considering that.  We read, and we tried to stay up.
10    And we suggested the bifurcation procedure as well.
11    And we believe that the Court's initial instinct on
12    having three trials was correct, and the Court's
13    initial instinct on having a separate jury for the
14    different sorts of allegations was correct.  And we
15    believe that the interests of justice would be served
16    if there was a new trial based on the inadequate
17    severance.
18              Your Honor, I now turn to jury
19    instructions.  And I will apologize again for not
20    raising many of these issues during the trial.  I was
21    working pretty hard.  Ms. Harbour-Valdez was working
22    hard.  No one was working harder than you.  When I
23    left at 6 p.m. you were here.  When I would arrive at
24    the courtroom the next day at 7:30, you were here.
25              But it's not as though we were idle at
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   night.

 2            I also want to say to my client and to the

 3   Court that I really can't relate to how Edward was

 4   raised.  I didn't have to worry about food being on

 5   the table, or clothing, or those sorts of things.

 6   But there was one recent event in my life wherein I

 7   can relate to Edward Troup.  And that happened on

 8   April 5, when the prosecution came in to court and

 9   accused my co-counsel and I of suborning perjury.

10            And the Government was only too happy to

11   take the false statements of Daffy Garcia to try to

12   end Cori Harbour-Valdez' and my lives as we knew it.

13   They were only too happy to take his false

14   statements, to make public accusations of criminal

15   behavior by my co-counsel and I.  So on that I can

16   relate to being the victim and the target of false

17   statements.

18            And the person who put a stop to that was

19   Your Honor.  Because you said in so many words:

20   Whoa, whoa, whoa, let's take a deep breath, let me

21   understand this more.  And by the time that the Court

22   finished its inquiry, the prosecution backed off, and

23   the prosecution acknowledged that Daffy Garcia was --

24   and pardon me for once again saying this -- a filthy

25   liar, who was willing to ruin lives, including the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    legal careers of my co-counsel and I.  And if anyone
2    were to think that we've ever received an apology for
3    that horrible event, think again.
4            But every night during trial or in the
5    morning of trial we would get a new statement, and
6    then lo and behold, Billy Cordova or Blue Rodriguez
7    or Styx Archuleta had remembered something new, and
8    lo and behold, it filled the gap in the prosecution's
9    case.  And that's because the "win at all costs"
10   approach was still pervading how this trial was being
11   conducted.
12           And I do criticize that approach.  And I
13   criticize it because -- and quoting, "The United
14   States Attorney is the representative not of an
15   ordinary party to a controversy but of a sovereignty
16   whose obligation to govern impartially is as
17   compelling as its obligation to govern at all.  A
18   prosecutor can prosecute with earnestness and vigor,
19   indeed he should do so.  But while he may strike hard
20   blows, he is not at liberty to strike foul ones.  It
21   is as much his duty to refrain from improper methods
22   as it is to use legitimate means to bring about a
23   just one."
24           The ABA Code talks about the responsibility
25   of a public prosecutor, that it's different from us,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    it's different from usual advocates.

2            I note your opinion, Your Honor, in United

3    States v. Ballou, 59 F.Supp. 3d 1038, "The United

4    States' goal in all cases is to do justice and not to

5    just secure a conviction."  And that was in the

6    context of a 404(b) issue.

7            And with regard to instructions in a

8    criminal case it is the duty of the court to instruct

9    properly on all essential questions of law, whether

10   requested or not.

11           I remember early on, as well, in discovery,

12   when you said both in open court and in your opinion

13   to the prosecutors:  Please put yourselves in the

14   shoes of the defense.  And that, by the way, is the

15   law.  With regard to Brady, they have to hunt it

16   down.  That is the law.  But as we saw so many

17   times -- as recently as yesterday -- this Government

18   team is incapable -- incapable -- of putting itself

19   in the shoes of the defense.  Their "win at all

20   costs" attitude trumps Brady, it trumps Jencks, and

21   it trumps every other constitutional requirement.

22           And with regard to jury instructions, I

23   know I let the Court down and I let my client down.

24   But I did raise some issues, and I will talk about

25   those primarily.  I raised the issue of misprision.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    And it was a perfectly legitimate instruction.  But
 2    the prosecutors fought it tooth and nail, consistent
 3    with their "win at all costs" attitude.  And the
 4    misprision instruction, which might have given us a
 5    little bit of balance in the instruction was not
 6    given.
 7              I talk in our papers --
 8              THE COURT:  Refresh my memory on that,
 9    because my memory is not distinct on that.  Did you
10    submit an instruction on misprision?
11              MR. BURKE:  I did.
12              THE COURT:  And where would it have gone?
13    Would it have gone in that Fifth Circuit VICAR
14    instruction as one of the things that Mr. Troup could
15    have committed to satisfy the -- one of the elements?
16              MR. BURKE:  It would not have been a lesser
17    included offense.  It would have been a lesser
18    similar offense.
19              THE COURT:  Of the murder?
20              MR. BURKE:  Yeah.  And the theory that we
21    were advancing was, particularly with regard to Count
22    1, because the most that was ever said about Edward
23    Troup is that he may have been on the steps, and
24    Torres said:  Don't come up here.
25              And then Jaramillo said:  Well, when I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    left, I saw Troup downstairs, and he was, you know,

2    magically keeping everybody else in their cells.

3            And I said, what that fits is not telling

4    people, misprision; not conceding.  And I said the

5    facts support that.

6            THE COURT:  But -- maybe some of this is

7    coming back and I'm just going to have to review

8    it -- but how does that help you?  That was -- I

9    think my memory at the time was that the Government

10   did not want to go to the jury on that theory, which

11   is a lesser or, as you say, a similar but lesser

12   theory.  But they wanted to put on their shoulders

13   the burden of going to the jury just on murder.  How

14   did it help you to --

15           MR. BURKE:  We were advancing it not as a

16   subset of VICAR, but as a standalone offense.  So

17   that as to Count 1, the jury would have had the

18   option of finding him not guilty as to VICAR murder,

19   but then proceeding to say on that offense he is

20   guilty of misprision.

21           THE COURT:  But you would agree with me

22   that Blockburg (phonetic) doesn't require -- and I

23   may have the Supreme Court case wrong -- but it

24   didn't require the Court or the Government to go to

25   the jury on that, and therefore --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BURKE:  It was discretionary, Your

2    Honor.

3          THE COURT:  And so it's not a theory that

4    they wanted to advance.  They didn't want to convict

5    Mr. Troup of that offense.  They only wanted to

6    convict him on the VICAR.  So --

7          MR. BURKE:  I believe you had the

8    discretion to give the misprision instruction.

9    That's what I believe.  And I believe you should have

10   given it.

11         THE COURT:  Well, it's just an unindicted

12   free-standing felony to throw into the case.  Is

13   there any authority for me being able to just pick

14   another crime and say:  Let's go to the jury on that?

15         MR. BURKE:  Your Honor, in my filing there

16   is plenty of authority that you had.  And in my

17   filing --

18         THE COURT:  But I thought those were lesser

19   included offenses, not similarly but lesser offenses.

20         MR. BURKE:  No, it wasn't just lesser

21   included.  It was not just lesser included.  And I

22   don't have that filing in front of me.  But it was --

23         THE COURT:  I'll go back and look at it.

24         MR. BURKE:  It gave you the authority to

25   give that instruction.  And I believe the instruction

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                             (505) 843-9494
FAX (505) 843-9492                                    FAX (505) 843-9492
                                                          1-800-669-9492



1    should have been given.

2            THE COURT:  And I didn't write anything on

3    this?

4            MR. BURKE:  No.

5            THE COURT:  Okay.  Let me go to the heart

6    of the jury instruction -- and I'll hear anything you

7    want to say on the jury instructions -- but the

8    heart, the thing that struck me as I read through

9    yours, was this issue on the murder conviction.  It

10   seemed to me there was an internal inconsistency --

11   and correct me if I'm wrong -- in your argument.  On

12   one side it seemed to me you were saying later in

13   your briefing that there should have been no

14   instruction on murder given at all; that just the

15   inclusion of that at all was wrong, and that I should

16   have followed the Fifth Circuit pattern instructions.

17   And they do not include that, and therefore, I

18   shouldn't include it at all.  And in another place

19   earlier in the briefing you say I gave the wrong

20   murder charge.  I shouldn't have looked at New Mexico

21   law either for first degree or second degree, and I

22   should have given some generic murder charge.  Isn't

23   there a tension between those two?

24           MR. BURKE:  I believe that there was a

25   tension in your rulings.  And what I said --

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                          e-mail: info@litsupport.com

1          THE COURT:  That may be.  But isn't there a

2    tension in your argument?

3          MR. BURKE:  No.  And here is the

4    distinction.  I did not say that the New Mexico

5    material elements of the New Mexico first degree

6    murder statute are wrong in any instance.  In fact,

7    we conceded that first degree may fit.  The argument

8    was you can't have the murder statutes of 50

9    different states.  You had to have a general

10   recognized murder instruction.  And first degree in

11   New Mexico fits it.  And so we did not complain about

12   New Mexico's first degree murder statute or the

13   elements.

14          And so what we had done was we said:  You

15   cannot give second, because it's beyond the statute

16   of limitations for second in New Mexico, which is a

17   six-year statute.  You found law that said the

18   state's procedural rules are not necessarily adopted

19   when we are going to bring -- and you wrote an

20   opinion, and I put it in my papers.  I argued that

21   the statute of limitations was jurisdictional and not

22   procedural.  And you gave the second.

23          This additional argument is that New

24   Mexico's second degree murder statute, by talking

25   about probability, probability is a bad statute to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    use in VICAR.  And we focused on second.
2             THE COURT:  You would agree with me that
3    that was never argued at the trial, that argument?
4             MR. BURKE:  Yes.
5             THE COURT:  And it's taken until your
6    reply, until today, to get there.  So that one is
7    going to be judged by plain error.
8             MR. BURKE:  I agree.
9             THE COURT:  What -- it seemed to me you
10   were relying a lot on some district court cases for
11   that.  Is there anything more substantive than
12   district court on that issue?
13            MR. BURKE:  You know, I believe United
14   States v. Frumento, the Third Circuit case in '77,
15   which is on page 10 of the filing on December 14,
16   where it says, "The federal statute does not punish
17   the same conduct as that reached by state law.
18   Rather, reference to state law is necessary only to
19   identify the type of unlawful activity in which the
20   defendant intended to engage," quoting U.S. v.
21   Cerone, another Seventh Circuit case, 1971.
22            So in the reply, there are some circuit
23   cases, Your Honor.
24            THE COURT:  Has either the Supreme Court or
25   the Tenth Circuit gone this direction?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. BURKE:  I've not seen it.  I mean --
 2              THE COURT:  Here's my thought -- and I
 3    looked at the age of those cases and the fact that
 4    they were district court cases -- one thing that it
 5    seemed to me those cases were doing -- and I've got a
 6    lot of studying to do on this, because this is being
 7    raised in replies and fairly late -- it seemed to me
 8    that we've had a vigorous debate in the sentencing
 9    area, on crimes of violence.  And, of course, the
10    Supreme Court has pulled in this generic definition.
11    And that has been heavily criticized.  I don't know
12    if you noticed that this week the Sentencing
13    Guideline Commission has now come out -- bless their
14    heart, they're trying to deal with a Supreme Court
15    that has constitutionalized this area, and makes it
16    very difficult for anybody to do anything with the
17    area, because once they constitutionalize it, we
18    can't change it.  But they're going to try.  They're
19    going to try to come back in with a guideline
20    definition of crime of violence.
21              And the reason I bring that up is I'm
22    wondering if these cases were influenced by the
23    Supreme Court going down that path, which I think has
24    been heavily criticized, and they've sort of drawn
25    back a little bit.  And whether that's good law to
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                       201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 843-9492                                 FAX (505) 843-9492
                                                       1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

```
 1    say that when Congress says "state" in the VICAR
 2    statute, it doesn't incorporate the state law, but
 3    instead, you've got to go to generic.  It seems to me
 4    that's adding something to the statute.  It may be
 5    that that's the law.
 6                MR. BURKE:  May I respond?
 7                THE COURT:  Sure.
 8                MR. BURKE:  I am familiar with that Johnson
 9    line of cases on crime of violence.  And it's been a
10    mess, and the Tenth Circuit has had a heck of a time
11    trying to sort that out.  But I believe, with regard
12    to VICAR, at least insisting that it be -- the sort
13    of require the intent that is required in a first
14    degree murder, intentional act.  Because what
15    happened with the New Mexico statute, it --
16                THE COURT:  Tell me why.  Give me -- that's
17    a good way to put it, but tell me why from a policy
18    standpoint, you've got Congress passing a statute and
19    then we've got courts coming in and saying no, no,
20    no, let's ignore the statute, let's go to a generic
21    model penal code, or something like that.  Tell me
22    why that is a good separation of powers issue.
23                MR. BURKE:  Because the Congress, in its
24    wisdom, said that if it's a VICAR murder, you've got
25    a life sentence.  Because Congress said you get a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   life sentence.  For VICAR first degree murder that
 2   makes some sense.  It does not make sense with a
 3   lesser second degree murder where language such as
 4   "probability" is being used.
 5            THE COURT:  But the congressional statute,
 6   the VICAR statute, doesn't say first degree murder
 7   and second degree murder.  It says --
 8            MR. BURKE:  It says murder.
 9            THE COURT:  It says murder.
10            MR. BURKE:  It says murder.  And that's
11   where -- I mean, at least there are some court cases
12   and some district court cases that say, Let's not
13   have this far ranging --
14            THE COURT:  I'm not saying that's not good
15   policy.  I'm not disagreeing with you on the policy.
16   But just tell me from a power standpoint why the
17   courts get to say:  No, a state murder means not New
18   Mexico murder, but it means some model penal code or
19   some restatement or some other definition.  It
20   doesn't really mean state, it means some model
21   generic code.
22            MR. BURKE:  Well, I can't do better than
23   what -- we have given you those district court cases.
24   And one was that Lee case.  United States --
25            THE COURT:  Is that from the Eastern
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   District of Virginia?
 2            MR. BURKE:  Exactly.  Observing that this
 3   would lead to the nonsensical result of treating
 4   differently defendants who engaged in the same
 5   conduct in different states.
 6            THE COURT:  But why is that wrong?  I mean,
 7   if, in fact, Congress is going to pull up state law,
 8   isn't that -- weren't they saying, Yeah, that's the
 9   reality of it?
10            MR. BURKE:  Your Honor, that's the argument
11   we make in defending capital cases all the time,
12   where the death sentences all come from the Death
13   Belt, also known as the Old South.  And we say:  You
14   can't have that, and everybody goes, You got to have
15   national law, you've got to be consistent throughout
16   the United States.  So you just made the argument we
17   make as capital case defenders sometimes, is that it
18   should be uniform.  And so that's -- I'm not saying
19   it's crystal clear.  And to be perfectly candid, I
20   thought the statute of limitations argument was --
21            THE COURT:  Was your better argument?
22            MR. BURKE:  Yeah, was a better argument.
23            THE COURT:  Okay.  Well, I will take a hard
24   look at that.  It's an interesting issue.  And I've
25   always thought Alito had the better argument on that
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   crime of violence issue at the Supreme Court, and to
 2   some degree Scalia was not the best on that issue.
 3   But it may be that it's been incorporated over --
 4              MR. BURKE:  Well, Scalia was an
 5   originalist, and he somehow knew what they were
 6   thinking.  So I don't know what else to say.
 7              THE COURT:  At least on that issue he
 8   wasn't going back to 1702.  He was at least going in
 9   our lifetime.
10              MR. BURKE:  Your Honor, I was going to make
11   some additional remarks about instructions, but I'm
12   not going to do that, because --
13              THE COURT:  Go ahead.
14              MR. BURKE:  No, I really --
15              THE COURT:  That one intrigued me, and it
16   seemed to be the gut of your argument.
17              MR. BURKE:  It was -- the lead argument was
18   on 31 and 33, instructions 31 and 33.  But the
19   remaining arguments you've obviously read.  And we
20   feel strongly about them.  I apologized already.  I
21   apologize again.  I feel like I broke the bond
22   between a trial lawyer and a trial judge.  But I --
23              THE COURT:  Well, most of the ones that are
24   there are pattern instructions.
25              Now, Ms. Jacks got me to modify a bunch of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the pattern instructions in the first trial.  And I

2    normally don't do that.  But I didn't think they were

3    terribly helpful to the defendants.  But I didn't

4    have any problem if that was -- if that helped the

5    appearance of doing justice to those four men.  But

6    these pattern ones --

7              MR. BURKE:  I'm sure you saw our law in

8    there that pattern instructions aren't to be given

9    automatically.

10              THE COURT:  Yeah.  And there is one in the

11    drug area, I just reject routinely and have to

12    change.  But it changes in favor of the Government.

13    It doesn't change in favor of the defendants on that

14    one.

15              MR. BURKE:  That seems to be the pattern.

16              Your Honor, I am going to wrap up here,

17    because I know you have pored over and read

18    everything we've submitted.

19              Your Honor, ultimately, all of these

20    discussions really are about justice.  I recognize

21    that the law seeks finality.  But Rule 33 is an

22    unusually flexible rule.  It says, "If the interests

23    of justice so requires."  I know what the interests

24    of justice would require from my perspective.  I know

25    what the interests of justice would mean to my



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    colleagues on the prosecution side.  But it doesn't
 2    matter what my view is or what the prosecution's view
 3    is.  It only matters whether you think that the
 4    interests of justice requires a new trial for Edward
 5    Troup.
 6            I can think of some things that don't go
 7    into deciding that.  One is whether it will be more
 8    hard work.  I think that it has been demonstrated
 9    that no one works harder than this Court.  And I
10    believe that the prosecution and the defense work
11    hard.  So hard work is not part of this.
12            Funding it is not part of it.  Whether it's
13    costly to do it again, that's not a factor, because
14    that has nothing to do with justice.  We are a
15    country of laws; we believe in the rule of law.  And
16    if the law indicates that the interests of justice
17    must be served by a new trial, then so be it.
18            I don't even think that it means that it's
19    an acknowledgment of some sort of error.  I think,
20    just in the calm aftermath, when you look at it and
21    you say:  This could be done more fairly, the
22    interests of justice could be served by doing this
23    again, then I believe that gives you the discretion
24    to give us a new trial.
25            Ms. Harbour-Valdez and I hope that we've
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   given you a basis on which you might decide, upon
 2   reflection, that Edward Troup deserves a new trial.
 3   And if you do reach that conclusion, I ask that it be
 4   without Counts 4 and 5; that it be with a true
 5   discovery cutoff date; that it be with a binding
 6   Jencks rule; and that it be in a case where Brady
 7   violations will not be tolerated at all.
 8             Thank you, Your Honor.
 9             THE COURT:  Thank you, Mr. Burke.
10             Mr. Castellano -- let me see, there were
11   some people that joined Mr. Burke on that.  Anybody
12   want to say anything on that issue?  Mr. Cooper?
13             MR. COOPER:  Your Honor, I don't believe
14   that we have anything to add.  I know that Mr. Castle
15   has joined, and has been on the line for quite some
16   time.  But Billy Garcia joins in all of the arguments
17   that were advanced by Team Troup.  I don't think that
18   I could articulate those arguments half as good as
19   Mr. Burke did.  And we would ask as well for a new
20   trial on behalf of Billy Garcia.
21             THE COURT:  Thank you, Mr. Cooper.
22             Mr. Benjamin.
23             MR. BENJAMIN:  Your Honor, if -- I can do
24   it now or I could do it later -- my motion for Count
25   1 tracks on some points and plagiarizes Mr. Burke's
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    motion.  But there are some issues that the Court
 2    raised that I would like to address now, or in Count
 3    1.
 4              THE COURT:  Do you want to go ahead and
 5    just take his motion up at the same time?
 6              MR. CASTELLANO:  That's fine, Your Honor.
 7              THE COURT:  All right.  Any objection to
 8    doing that, Mr. Burke?
 9              MR. BURKE:  None whatsoever, Your Honor.
10              THE COURT:  All right.  So Mr. Benjamin, if
11    you want to go ahead and argue Mr. Gallegos' motion,
12    Mr. Joe Gallegos.
13              MR. BENJAMIN:  And, Your Honor, as
14    Mr. Cooper said, I can't begin to say some of the
15    things as eloquently as Mr. Burke did.
16              But if the Court will remember specifically
17    dealing with -- and Mr. Gallegos' motion is Document
18    2453 -- or, excuse me, not 2453, that's the
19    Government's response to Mr. Gallegos' document,
20    which was 2419.
21              But there is a specific issue that has
22    bugged me personally about the Michael Jaramillo
23    aspect.  Because if the Court will remember from when
24    this came up during trial at the beginning of April,
25    that it was our investigator that went out and tried
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    to talk to Mr. Jaramillo.
 2              THE COURT:  When did you do that?  Remind
 3    me when that occurred.
 4              MR. BENJAMIN:  Summer of '16, Your Honor.
 5              THE COURT:  Summer of '16?
 6              MR. BENJAMIN:  Yes, Your Honor.  Or
 7    essentially very early on.
 8              THE COURT:  So early on you went out there
 9    and tried to get him to talk?
10              MR. BENJAMIN:  And that was --
11              THE COURT:  My memory is he blew you off,
12    he didn't want anything to do with you.
13              MR. BENJAMIN:  He did.  And that was a
14    suggestion that was made by Troup's team, Your Honor,
15    Ms. Valdez had an investigator that was handy, and
16    she suggested that, and it worked to both of our
17    benefits.
18              But the Court had a specific phrase
19    earlier, you said:  What do you do when witnesses
20    don't want to talk to you?  And that's the problem
21    that is presented by the whole Michael Jaramillo
22    argument.
23              Because the Government in its response on
24    page 5 says, the second paragraph, "But things went
25    differently.  The United States learned of the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    significance of Jaramillo's role in the offense after

2    the trial began."  And I don't want to belabor the

3    points that Mr. Burke pointed out.  But that's

4    entirely false, Your Honor.  There was DNA evidence

5    on -- or in the file and in the disclosures about

6    Michael Jaramillo.  And so this isn't just, Oh, we

7    were doing witness interviews, and somebody's name

8    came up, and we decided that they didn't rank very

9    high on our order of priority, we didn't go talk to

10   them.

11          They have that ability.  They have the

12   ultimate ability that, as a defense attorney, I long

13   for, which is the ability to issue unlimited number

14   of Grand Jury subpoenas to go out and talk to

15   individuals.

16          And so to say the fact that -- and this is

17   from their response -- the fact that Jaramillo did

18   not come forward with the truth until that day is

19   understandable, it doesn't make any sense, Your

20   Honor.  Because the defense, when we go talk to

21   somebody, when Bill went and talked to Michael

22   Jaramillo, and he says:  I don't remember anything,

23   we, whether we like it or not, have no power to

24   compel that.  But the Government who brought this

25   case has every bit of power to do that.  After that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    they could have indicted Michael Jaramillo if he was
 2    not talking to them.  They have lots of tools at
 3    their disposal.  We don't have the power to indict
 4    him for failing to talk to us, or giving us --
 5              THE COURT:  Isn't it a dangerous doctrine
 6    for the Court to try to fashion something that puts
 7    pressure on the Government to indict more people?  I
 8    mean, that doesn't seem like a good idea.  I mean, we
 9    don't want more people indicted unless they have to
10    be indicted.  So to fashion some sort of doctrine
11    that encourages more people indicted, I don't know,
12    I'm not sure that's getting us to justice.  Do you?
13              MR. BENJAMIN:  I agree wholeheartedly with
14    the Court's impression.  I apologize, I think I've
15    been going at this the wrong way.
16              This is all going towards the argument that
17    the Government, when it produced its witness list,
18    omitted a star person who was going to testify.
19              They dealt with Count 1 for -- we dealt
20    with it from December 3rd of '15 to the date of
21    trial.  And at no point in time did --
22              THE COURT:  I need to track down this
23    opinion that I'm not certain whether it was entered
24    or it's still in one of my folders.  But I thought
25    that they were always on the may call list --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Jaramillo; he was just a wild card out there.  He
 2    wouldn't talk to you, he wouldn't talk to the
 3    Government, so he was appearing on may calls.  Is my
 4    memory off on that?
 5              MS. HARBOUR-VALDEZ:  Yes.
 6              MR. BENJAMIN:  Your Honor, I believe he
 7    was -- no, I'm being told he was not.
 8              Respectfully, Your Honor, in dealing with
 9    seven counts, I had hundreds of people on a may call
10    list that then, ultimately, the Court thankfully
11    whittled down.
12              But the idea that this was a person who we
13    omitted accidentally, and then all of a sudden
14    just -- on I think it was April 9th or 10th read his
15    name, because that's when we just came up with it, I
16    don't think rings true, Your Honor.
17              And so the issue, I think, that comes up is
18    what I discussed in my motion regarding Count 1,
19    which is that Mr. Gallegos was able to successfully
20    defend an allegation where a victim took the stand
21    and testified.  We had -- after all this time I'm
22    drawing a complete blank standing up here.  We had an
23    individual come in and testify and take the stand
24    that Joe Gallegos chased him down and was trying to
25    attack him.  But that was able to be successfully
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    defended because I was able to investigate those

2    claims and deal with those claims.

3           I think that's entirely different when we

4    get blindsided with an individual who, prior to the

5    Jencks deadline, we don't get a statement from,

6    because they chose not to do that.  The Government

7    should not be allowed to lay behind the law, and just

8    surprise us with:  Oh, well, he just showed up and

9    dropped in our laps, and he hasn't been cooperative

10   with us.

11          THE COURT:  But how do you draft a doctrine

12   that says that?  I mean, how do you say a witness

13   can't show up and us have to deal with it, all of us,

14   them, me, you.  We just deal with somebody that's

15   come in and raises their right hand and swears to

16   tell the truth, how do you deal with that, other than

17   just dealing with it?

18          MR. BENJAMIN:  Well, Your Honor, the Court

19   set a deadline.  And the Government complied with

20   that deadline.  The Government didn't come forward

21   and say:  You know what, in reviewing the document we

22   filed Friday, we made a mistake.  He's not on there.

23   And the Court's remedy is exclusion of that witness.

24   You knew that this was a witness who was vital,

25   vital, absolutely vital to your case.  You didn't put

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   him on your witness list --
 2            THE COURT:  I'll go back and look and see
 3   if it's in the opinion.  But I thought that he was on
 4   may call list fairly late, and then, of course, he
 5   was announced as a witness in this trial to the jury
 6   before the trial began.
 7            MR. BENJAMIN:  Your Honor, I'm going to
 8   deal with this more on Counts 4 and 5, but the issue
 9   that comes up is a witness that is that vital to
10   their case, that there is no statements produced on,
11   or that they never even --
12            THE COURT:  They didn't have any
13   statements, right?  There is nothing to produce.
14            MR. BENJAMIN:  I don't think it rings true
15   that they didn't go talk to Michael Jaramillo at some
16   point in time from when we were able to talk to him
17   from 2016 on, a person whose DNA was on the murder
18   weapon.  And the Court asks how does it do that?  I
19   think it excludes a witness.  That was the purpose --
20            THE COURT:  Is that just raw judicial
21   power, or is there some doctrine that sort of backs
22   that up?
23            MR. BENJAMIN:  Your Honor, I would have to
24   stick with raw judicial power.  I think that's what
25   the Court --
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. HARBOUR-VALDEZ:  Sorry, Your Honor.
 2              THE COURT:  That's all right.
 3              MR. BENJAMIN:  I'm being told Document
 4    1968, which is the Government's supplemental witness
 5    list from March 23, didn't list him either.
 6              And so the -- what I'm struggling with,
 7    Your Honor, is the idea that, genuinely, we
 8    overlooked Michael Jaramillo.  Can I say that for an
 9    officer who is a sideline officer, who --
10              THE COURT:  Here's the way I would
11    characterize what I was reading from the defendants
12    was, you know, he's out there, he's kind of floating
13    in orbit.  He could be a wild card.  But you've got
14    to make strategic professional decisions.  I
15    understand that.  And it didn't look like he was
16    going to be in this case.  I get that.  But, you
17    know, he's out there.  Anything can happen.  I mean,
18    it doesn't seem to me that anybody criticized your
19    decisions to say:  Right now he's not on our radar,
20    we've got enough to worry about, but also he's a
21    person out there.  I mean, you knew he was out there
22    because you were trying to interview him.  They were
23    trying to do things with him.  And he's out there.
24    Isn't that just the reality?  And you have to make a
25    professional decision, which you did -- and it's a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   good one -- like I've got enough bodies that I know
 2   are going to be here, I'm not going to go set a
 3   strategy and try to work with somebody that may never
 4   show up.  That seems to me to be good defense work.
 5             MR. BENJAMIN:  Your Honor, I appreciate the
 6   praise.  I disagree with the way the Court
 7   articulated.  Because they knew he was out there.
 8   And their position is that they didn't do anything
 9   knowing he was out there.
10             And so discovery in criminal cases drives
11   most of us crazy, because when we're arguing about
12   money, any amount of money, or even just a judgment,
13   we get told what we need; we are able to challenge
14   things.  We're left with the criminal discovery
15   system that we have, though.  And that criminal
16   discovery system is limited.  And I'm looking for the
17   very limited benefits that I believe that that
18   criminal discovery system provides to me.  And I
19   think that, one, it provides to me the ability to
20   have Jencks statements provided to me two weeks prior
21   to trial, as the Court ordered.  I think it provides
22   to me the ability to have, even if it is ultimately
23   very last second, the ability to have a witness list
24   that I can rely on.  It's those type of things that,
25   respectfully, the Court is right, I have to focus my
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    energies and ideas on certain things.  And when, at

 2    the very last second, something else has changed, I

 3    can't do that.

 4         And one of the things that I think the

 5    Court tried to do -- and from my perspective it's not

 6    something I was able to do -- is try to give us time

 7    by having Michael Jaramillo testify later in the

 8    trial.

 9         Respectfully, Your Honor, Mr. Sindel and I

10    were up till every night about 12:00 or 1:00 o'clock

11    in the morning prepping for the next witnesses.  So

12    yes, we had three weeks or -- I don't have the number

13    off the top of my head -- amount of time.  But we did

14    not have time to devote to creating or identifying a

15    new theory of our defense, such that we were able to

16    deal with a witness, even if that witness was pushed

17    later.

18         And so I think that the Court is right, I

19    don't want to fashion a remedy where the Government

20    is required to indict everybody.  But I think I do

21    want to fashion a remedy where the Government is

22    stuck with what they chose to do, and is not able to

23    change at the last second based upon their whim and

24    disregard, the Court's raw judicial power of a

25    witness list that -- and also the Jencks idea.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              Thank you, Your Honor.
2              THE COURT:  Thank you, Mr. Benjamin.
3              Mr. Davidson, you wanted to say something
4    on this issue?
5              MR. DAVIDSON:  A few words, Your Honor.  As
6    you may recall, I did the briefing on this.  I just
7    wanted to point out in my --
8              THE COURT:  I think you found one of the
9    old Supreme Court cases that I relied on heavily in
10   finding there had been a violation, correct?
11             MR. DAVIDSON:  Correct, Your Honor.
12             And I just wanted to clarify for the
13   record, as stated in my filing, Document 2139, that
14   the none of the Government witness lists include the
15   name and address of Michael Jaramillo.  And I cited
16   Documents 1968, 2089, and 2091.
17             I also pointed out the Government conceded
18   that Michael Jaramillo was omitted.  And that was on
19   page 1 of their brief, Document 2138.  The Government
20   also conceded that it knew of its inadvertence as
21   early as the first day of voir dire for the second
22   trial -- that was at page 6 -- and it did not file a
23   supplemental witness list at that time.
24             With respect to Your Honor's questions
25   about a remedy, I don't think the remedy that's being
```



SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 843-9492                                                   FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    sought is that the Government should indict more

2    people.  It's that either this should be adjournment,

3    which was asked for, or exclusion, which was asked

4    for.  And so that would be the remedy that would be

5    appropriate when you have a late disclosed witness in

6    a case like this.  And neither of those remedies, as

7    I recall, were afforded.  I just wanted to clarify

8    that.

9            THE COURT:  All right.  Thank you, Mr.

10   Davidson.

11           Any other defendant want to speak on either

12   Mr. Joe Gallegos' motion or Mr. Troup's motion before

13   I hear from Mr. Castellano?

14           MR. COOPER:  Your Honor, I've been notified

15   by Mr. Castle that he has additional argument on this

16   issue.

17           THE COURT:  All right.  Mr. Castle.

18           MR. CASTLE:  Yes, good morning, Your Honor.

19           THE COURT:  Mr. Castle.

20           MR. CASTLE:  The issue seems to be, in

21   analyzing this particular matter, is what is fair.

22   And that's kind of always a hard thing for the Court

23   to struggle with.  And when we look at the parties

24   and try to analyze what's fair, I would start with

25   the defense.  And the defense clearly was put at a

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 843-9492                                                  FAX (505) 843-9492
                                                                        1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

 1  disadvantage in this trial with the last-minute
 2  witness.  And three days -- three or four or five
 3  days really didn't cure that unfairness.  Because the
 4  kind of investigation that is needed to analyze a
 5  witness who comes forward some 15-17 years later,
 6  that kind of investigation is really significant and
 7  it takes a lot of time.  And it's essentially going
 8  back and unearthing years and years of information,
 9  including in a fashion that could be digested by the
10  jury.  And clearly that didn't happen.
11         We know a lawyer was unable to unearth that
12  information and present that to the jury.  So
13  Mr. Jaramillo became somewhat of a super witness,
14  because he was one of a few, if not the only witness,
15  who didn't have a vigorous cross-examination against
16  him, other than that he was an admitted murderer.
17         Then we analyze the fairness to the
18  prosecution.  They were in a much different situation
19  than the defense.  Where the defense tried to
20  interview Mr. Jaramillo to see if he was going to
21  even be a percipient witness in the case, and were
22  turned down, and they'd exhausted all of their
23  abilities to call or interview that witness, the
24  Government did not.  The Government had the Grand
25  Jury power to put him on as a witness; not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   necessarily to indict him but to put him on as a

2   witness.  That's an important tool that the

3   Government is provided before they have to make

4   decisions on indictments.  They can reconvene grand

5   juries even after indictment, as we saw in this case.

6   They had plenty of opportunity to do so.

7             So the idea is if one party or the other

8   has to bear the burden on this problem, which party

9   has less, I guess, equity in their favor regarding

10  the late endorsement of the witness?  And I would

11  argue that the Government certainly has less equity

12  in their favor.

13            But I understand what the Court is

14  struggling with.  And it is just a raw use of

15  judicial power to have prevented a witness who

16  apparently had information relevant to a serious

17  charge, is that just raw use of power?  And I think

18  the answer may very well have been yes at the time.

19            So what do we do about it?  Well, there are

20  two other avenues -- three other avenues that

21  fairness militated in favor of.  One was a

22  substantial adjournment, as Mr. Davidson suggested.

23  One was a mistrial, which the only downside on that

24  is cost and finding court time.  But those are not

25  available anymore.  So we're left with the third

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1    alternative, which is to grant a new trial on Count
 2    1.
 3            And as Mr. Burke better laid out, it does
 4    not appear to be any aspect of fairness that would be
 5    offended by granting a new trial.  But in fact, the
 6    very issue of fairness would be supported by a new
 7    trial, which Mr. Jaramillo would be subject to the
 8    kind of vigorous cross-examination that the
 9    Constitution anticipates.
10            Thank you, Your Honor.
11            THE COURT:  Thank you, Mr. Castle.
12            One thing I would ask you -- and this
13    relates a little bit to what Mr. Davidson was arguing
14    about adjournment at the time -- I guess the reason
15    that I didn't think that adjournment was going to be
16    of any help was because, as Mr. Benjamin pointed out,
17    y'all had been trying to talk to this guy for two
18    years, and he wasn't talking to you.  And I didn't
19    know what adjournment was going to do.  It looked to
20    me like the only thing I could really do for the
21    defendants is tell the Government:  Don't put him on
22    as witness one; push him way down, give you some time
23    to prepare.  But all you were going to be able to
24    prepare from, in a reality sense, was not your own
25    investigations, but really from what Mr. Jaramillo
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    was telling Mr. Acee.  That was it.  There wasn't

 2    going to be any other real source of information.

 3         Your thoughts on that?  That's my memory as

 4    to why I didn't think adjournment was --

 5         MR. CASTLE:  Yes, Your Honor.  If trial in

 6    this case -- without disclosing work product, in

 7    essence, but if a new trial in this case were to be

 8    granted, the defense would be doing background

 9    investigation on Mr. Jaramillo that went beyond just

10    talking to him.  In fact, almost every one of these

11    witnesses in this case refused to talk to the

12    defense.  And so we didn't use that as a primary

13    investigative tool.  We talked to neighbors, we

14    talked to family members.  We pulled records on prior

15    convictions.  We looked at whether they had a history

16    of dishonesty.  We subpoenaed their records from the

17    Department of Corrections, which the Court had

18    granted on numerous occasions.

19         We didn't have Mr. Jaramillo's Department

20    of Corrections records to see, you know, where his

21    cell block, where his cell was, who he'd been with,

22    whether he had other infractions, those kinds of

23    things.  We weren't able to look to see if he had

24    mental health issues at all.

25         So those are the kinds of investigative

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    tools that would have been used, and were used at
2    trial to effectively cross-examine people.  For
3    example, like Eugene Martinez was used, not a single
4    part of examination of Eugene Martinez was based upon
5    a voluntary interview that Mr. Martinez had with the
6    defense.  Same thing with Mr. Lujan.  That was -- the
7    cross-examination there was based upon his Department
8    of Corrections records and his performance there at
9    the Department of Corrections, his mental health
10   history, and things of that nature.
11           So the effective cross-examinations are
12   often independent of the witness' statements.  And so
13   that's the kind of material that we would have been
14   able to obtain with an adjournment.  The reason I
15   said three days is not, it wouldn't have been
16   sufficient, is I think that number was in a normal
17   case, where someone is indicted within a reasonable
18   time, like a year, of a crime, and there are very few
19   witnesses.
20           Given the fact that this case happened so
21   many years before, the need for a longer adjournment
22   was apparent.
23           THE COURT:  All right.  Thank you, Mr.
24   Castle.
25           Did anybody else have anything they want to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   say on the defense side?  I see you standing up,
 2   Mr. Burke.  Did you have anything further?
 3            MR. BURKE:  No, Your Honor.
 4            THE COURT:  All right.  Mr. Castellano, if
 5   you wish to respond to Mr. Joe Gallegos' and
 6   Mr. Troup's motions for a new trial.
 7            MR. CASTELLANO:  Yes, Your Honor.
 8            THE COURT:  Mr. Castellano.
 9            MR. CASTELLANO:  Addressing real quickly
10   Mr. Castle's comments about remedies and the things
11   of that nature --
12            THE COURT:  Can I ask Mr. Castle a
13   question?
14            MR. CASTELLANO:  Sure.
15            THE COURT:  This has nothing to do with the
16   motion for new trial.  But it was something you said
17   at the beginning about the resources.  And you were
18   kind enough, Mr. Castle, to spend some time on this
19   new proposal for us to have someone over at the
20   Federal Public Defender's office reviewing bills and
21   things.  How is that working out?  We now have --
22   this case has lasted long enough to be under my
23   regime, where I reviewed every voucher.  And now
24   we've got Marc Robert over there.  How is it working
25   out?  Does anybody have any sense of that?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTLE:  It started off rough, but it's
 2    much better.  I can tell the Court, in Albuquerque,
 3    in New Mexico, is so much better than the Central
 4    District of California that prides itself on its, I
 5    guess, status in the country.  So I have no problems
 6    with it over the last year or two.
 7              THE COURT:  How about you, Mr. Burke?
 8    Weren't you the one that wrote me a letter, and I
 9    shared it with all my colleagues?
10              MR. BURKE:  I did.
11              THE COURT:  And how -- comparing regimes,
12    what do you think?
13              MR. BURKE:  I believe that Mr. Castle's
14    comments are the same as mine.  I think it has worked
15    out.  It seems to be working out better.
16              THE COURT:  Okay.
17              MR. BURKE:  And I've always -- I just don't
18    know judges that really want to be doing it,
19    personally.
20              THE COURT:  Yes.  I certainly have
21    colleagues that feel that way.  I mean, I guess I
22    don't walk into each day and say:  Well, these are
23    the ten things I want to do and the ten things I
24    don't want to do, and then act accordingly.  I mean,
25    we all have stuff we've got to do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           Okay.  I appreciate that.  I wondered what

2    you thought about -- now that -- and I relied heavily

3    on your comments to vote on that issue.  I keep

4    wondering if it's a new fangled thing, and wonder

5    where we'll be five years from now, if we'll all

6    still be thinking it's a good idea.  But anyway, I

7    looked at your comments, and I appreciate them again,

8    and used them to vote.  And let's give it a try.

9           Thank you, Mr. Burke.

10          THE COURT:  All right.  Mr. Castellano.

11          MR. CASTELLANO:  Thank you, Your Honor.

12          Starting with Mr. -- some of Mr. Castle's

13   comments regarding what's fair and what options we

14   have at this point.  The case law typically tells us

15   that, as the Court mentioned earlier, finality is

16   something that we need in criminal cases and in other

17   cases.  And at this point I would ask the Court not

18   to grant the new trial, because finality is what

19   we're looking for.  New trials are disfavored.  And

20   the defendants have a right to appeal.  So this isn't

21   the last step for them or the last chance they have

22   at any remedy.  The real remedy in this case will be

23   an appeal.  And I think these arguments this morning

24   really aren't addressed towards this Court.  I think

25   they are addressed to the appellate court.  Which is

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                       201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                       (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                      1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1   appropriate.  I think that's ultimately where the
 2   decision needs to be made on this based on finality
 3   and the fact that new trials are disfavored.
 4              To answer your question earlier, I think
 5   you did file an order which was Doc 2207.
 6              THE COURT:  Is it just an order, or was it
 7   a memorandum opinion?  Because I've got, floating
 8   around somewhere --
 9              MR. CASTELLANO:  I think it's a shorter
10   opinion.  It's an order, it's a short order.  And
11   then the Court also filed a chart with James
12   statements related to Mr. Jaramillo, which was Doc
13   2206.
14              THE COURT:  Yeah, I need to find -- I
15   worked -- it just may not have gotten filed.  I spent
16   a long time on Jaramillo.  And I've got an opinion
17   out there.  So I need to get it out to you, and then
18   review it to refresh my memory of exactly where I was
19   in allowing him to go forward.
20              MR. CASTELLANO:  And, Your Honor, Mr. Burke
21   had a good point.  Ultimately, I mean, obviously,
22   he's coming from an advocate position, we're coming
23   from an advocate position, but what matters is what
24   the Court thinks.  And the Court has already told us
25   what the Court thinks on each of these issues.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        The Court has ruled previously on

2   severance.  So unless the Court is willing to take a

3   different direction on severance at this point, we

4   have the Court's decision on severance.  The Court

5   did sever the case, made a couple of severances over

6   all the cases.  So the Court thought about these

7   issues, and I think ruled appropriately.  There was a

8   question, or a comment by Mr. Burke earlier about the

9   Court giving us an hour over lunch to come up with

10  options for the Court regarding possible severance.

11        And it was actually Mr. Potolsky who made

12  the same argument that Mr. Burke did today.  You gave

13  us time to come up with three options.  And I

14  explained to the Court today that we only had an

15  hour, and that was the best we could come up with in

16  that time.  So certainly it wasn't in violation of

17  any order of the Court.  We explained that that was

18  the best option we could come up with in that period

19  of time.  Everyone was pressed for time.  And

20  ultimately, the option we came up with was the best

21  option, because everybody had his or her day in

22  court, and everybody had one trial.  And that

23  ultimately was the best conclusion we could reach.

24        THE COURT:  All right. Mr. Castellano,

25  before we go on, would this be a good time for me to

SANTA FE OFFICE                                         MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    give Ms. Bean a break and let her rest her fingers?

2              MR. CASTELLANO:  Sure.

3              THE COURT:  All right.  We'll be in recess

4    for about 15 minutes.

5              (The Court stood in recess.)

6              THE COURT:  Let's go back on the record.  I

7    think we've got all the defendants and attorneys in.

8    Mr. Castle, are you back on the phone?  Mr. Cooper,

9    you might want to see if he's going to join us.  Mr.

10   Castle, are you there?

11             MR. CASTLE:  I am, Your Honor.

12             THE COURT:  All right.  Mr. Castellano, if

13   you wish to continue your argument on Mr. Troup and

14   Mr. Joe Gallegos' motions for new trial, you may do

15   so at this time.

16             MR. CASTELLANO:  Thank you, Your Honor.

17             THE COURT:  Mr. Castellano.

18             MR. CASTELLANO:  I won't argue anymore on

19   severance.  The Court has ruled on that.  So unless

20   the Court is inclined to change direction, I will

21   rely on the Court's prior ruling.

22             My next is Michael Jaramillo.  And the

23   Court has also ruled on that.  What I can tell the

24   Court is that he didn't debrief ultimately until

25   April 18, which is when we learned that he would be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    willing to testify in the case.

2         The pen pack had been disclosed on him on

3    October 18 of 2016, so a year-and-a-half earlier.  So

4    in anticipation of the chance that he might testify,

5    we disclosed the STIU file on April 13, 2018, and his

6    location history on April 16, 2018.  And if I

7    remember correctly, the defense did impeach him from

8    the STIU file, including a run-in he had with someone

9    else in the prison.

10        So I understand it may not be what they say

11   they ultimately would have preferred, but they

12   certainly had impeachment material on him, including

13   the fact that he denied those charges, even to their

14   investigator.  So he gave them something to impeach

15   him with, even then.

16        And I liken Mr. Jaramillo to DNA or DNA

17   evidence with fingerprint that's found on the eve of

18   trial.  In those circumstances, any court has to

19   figure out the best remedy for what the court will

20   do:  Whether that's a continuance, whether it's a

21   mistrial, whether the evidence can be used at trial

22   after a delay with the chance for the defense to get

23   its ducks in a row to address that.  And the Court

24   did that in this case.

25        I attached part of the Court's reasoning to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    our response.  And the Court indicated, as it says,

2    "I indicated on Friday -- I think it was Friday --

3    the thing we're struggling with Mr. Davidson -- and I

4    pointed out to him what the remedy is.  As we know

5    from the face of the statute there is no remedy to

6    the violation.  And I therefore have to consider what

7    remedy should be.  I concluded that exclusion is not

8    an appropriate remedy in this case.  I think that's

9    too Draconian in this case.  I know the defendants

10   have made arguments that they would have approached

11   certain things in the case differently.  But I don't

12   think they would have approached it differently.

13   Because even if the Government had put Mr. Jaramillo

14   on a witness list as a may call, they still at that

15   time didn't know what his testimony would be.  So I

16   don't think that they would have done anything than

17   much differently than what they had, in fact, done.

18           "I think the remedy that is appropriate

19   here is what I've done so far, and what I will

20   continue to do, if that's necessary and the defense

21   requests it, is push this evidence down so the

22   defendants have more time to deal with Mr. Jaramillo.

23   I don't think we're probably to the point that we've

24   done all we can.  But I think that the situation is

25   that this is too high of a cost to the seeking

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   function to exclude this witness, and that the

 2   violation of the statute can be dealt with by pushing

 3   the testimony down to make sure that the defendants

 4   are fully prepared to deal with it.  And I think

 5   we've probably dealt with that situation.  If the

 6   defendants think they need more time or want more

 7   time, I'll probably bend over backwards to try to

 8   accommodate that.  But I don't think exclusion is the

 9   appropriate remedy."

10          And the Court did that, the Court bent over

11   backwards to accommodate the defendants.

12   Mr. Jaramillo was pushed back late in the trial, and

13   testified a month later, on May 14th, 2018.

14          And so I think all that was addressed.

15          One other passing comment was there was an

16   allegation that the Government knew Mr. Jaramillo

17   from DNA evidence.  And actually Agent Acee was

18   cross-examined on that at trial by Mr. Burke.  And

19   Mr. Acee indicated that none of the DNA reports

20   themselves had any indication that Mr. Jaramillo was

21   listed, and was not listed on the DNA reports.

22          Over my objection, Mr. Burke put on the

23   visualizer a document that was not admitted into

24   evidence, and those were the field notes by the DNA

25   analyst.  And the field notes said there was some

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                   1-800-669-9492
                                                           e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   indication or trace evidence of DNA submitted for

 2   Mr. Jaramillo.  It's simply not true to say we knew

 3   about him that far back, unless you went into the

 4   minute details of the notes in this case.  So

 5   Mr. Jaramillo did not show up on an actual DNA lab

 6   report.

 7           That's all I have regarding Mr. Jaramillo,

 8   Your Honor.  Once again, you have ruled on this.

 9   And, once again, unless the Court is inclined to

10   change its position, the Court should deny the motion

11   on that basis, leaving us only the jury instructions.

12           And Mr. Troup's team, I think this morning

13   is in the unenviable position of effectively arguing

14   that they were ineffective at trial.  And that's a

15   tough position to be in, I think, to now argue to the

16   Court that you were ineffective, and today to

17   convince the Court of that.

18           THE COURT:  Well, putting that predicament

19   aside, they make a point in their reply where they

20   really have the heart of their instruction argument

21   that you're conceding that I made some errors in the

22   jury instructions.  Are there any errors that the

23   Government thinks the jury instructions contained?

24           MR. CASTELLANO:  No, Your Honor.  And what

25   the defense alleges is that because we didn't address

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

```
 1   certain points, we were conceding those points.  But
 2   we weren't.  Because the main point was that the
 3   burden is on them under the plain error standard.
 4   And so I made --
 5              THE COURT:  But after looking at
 6   Mr. Burke's reply and all the instructions that he
 7   lays out there, is there any one that you're going to
 8   go up to the Tenth and say:  You know what, the judge
 9   got it wrong, but it's plain error -- it doesn't
10   satisfy the plain error test?  Or are you going to
11   argue substantively that every one of those is
12   correct?
13              MR. CASTELLANO:  I won't have the final say
14   on that, because I'm not in the appellate division.
15   But I don't foresee us conceding error.
16              What I can tell the Court is, in response
17   to the reply, I did only a short amount of research
18   regarding the murder instruction.  The case from the
19   Tenth Circuit, or at least the one case I was able to
20   find is U.S. v. Pearson.  It's at 203 F.3d 1243.
21   It's from the Tenth Circuit in 2000.  What it states
22   is -- this is at Headnote 22 of the case, "Although
23   commission of a specified felony supplies the
24   constructive malice necessary to satisfy the malice
25   aforethought element of Section 1111 for felony
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    murder" -- there it's talking about felony murder,

2    and then moves on to second degree murder -- "second

3    degree murder, malice aforethought element is

4    satisfied by, one, intent to kill without the added

5    ingredients of premeditation and deliberation; two,

6    intent to do serious bodily injury; three, a depraved

7    heart; or four, commission of a felony when the crime

8    does not fall under the first degree murder

9    paragraph, Section 1111(a)."

10            And so the theory of second degree murder

11   in New Mexico was the intent to do serious bodily

12   injury.  So the instruction for second degree murder

13   the Court gave says that "the defendants knew their

14   acts created a strong probability of death or great

15   bodily harm to Mr. Castillo."  So that's where the

16   great bodily harm is mentioned.

17            So the Tenth Circuit has spoken on the

18   requirements for second degree murder, and that's

19   what I found related to their reply, Your Honor.

20            I do --

21            THE COURT:  What do you think of this

22   theory that Mr. Troup is advancing that it has to be

23   a generic murder charge there?  It can't be first

24   degree, second degree; it's just got to be a generic

25   murder charge for that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  I think he's right about
 2      that.  I think that generally the generic or a
 3      generic definition of murder applies.  And so you can
 4      use the law of any of the states, if it generally
 5      meets those requirements.  So what Congress said was:
 6      You can't just rely on all 50 states; you need to
 7      figure out whether or not the statute being used
 8      meets the requirements of a murder.
 9              And that's actually the reason why we
10      submitted two theories of murder, first and second,
11      because we thought both of those met the generic
12      definition of murder.  And that's actually why we had
13      two theories there.
14              THE COURT:  And the case that you're citing
15      here -- I'm just slow so bear with me -- you're
16      citing this Tenth Circuit case for what proposition?
17              MR. CASTELLANO:  Well, what qualifies as --
18      what intent is required for second degree murder in
19      the Tenth Circuit.
20              THE COURT:  So you're saying because this
21      satisfies the definition in the Tenth Circuit, it
22      would satisfy a generic definition of just murder for
23      the VICAR purposes?
24              MR. CASTELLANO:  I believe it would.
25              THE COURT:  What's the name of this case?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1              MR. CASTELLANO:  It's Pearson.  Again, it's

 2    at 203 F.3d 1243, Tenth Circuit, 2000.  In that case

 3    Pearson actually could not be convicted of second

 4    degree murder because the robbery and accidental

 5    killing didn't satisfy the types of implied malice

 6    required because he testified that he had

 7    accidentally fired and shot and killed the victim.

 8    So an accidental killing in that case did not meet

 9    the requirements for second degree murder.

10              So in terms of the jury instructions, I

11    only gave passing comments on each of those as

12    additional reasons why the Court should deny the new

13    trial.  But ultimately, the burden is on the defense

14    for plain error.  And so that's why there isn't more

15    argument on each of those, because it's not our

16    burden related to the instructions.  And as the Court

17    knows, you look at the instructions in the context of

18    the entire trial to determine whether or not the jury

19    had the right law on the right facts to apply to come

20    to a verdict.

21              So that's my short argument.  Because I am

22    relying on the Court's rulings, and as I said, unless

23    the Court is willing to change direction on any of

24    these, the Court should, therefore, deny the new

25    trial motions.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  What would you think about a

2     request from me to you to talk -- who is going to do

3     the appeal?  Mr. Richardson?

4          MR. CASTELLANO:  Maybe Richard Williams,

5     possibly.

6          THE COURT:  Richard Williams.  All right.

7     What if you ask him to look now at this jury

8     instruction, the reply, and see if he's going to

9     confess error on any one of those instructions and

10    then just rely on plain error review, or whether he's

11    going to defend substantively each one of those jury

12    instructions, and then just send me a letter and tell

13    me how the Government is going to proceed.

14          MR. CASTELLANO:  I'll do that, Your Honor.

15          I also disagree with the argument by

16    Mr. Burke that misprision was an option.  Because

17    misprision not only requires not reporting the crime,

18    it requires an affirmative act to cover up that

19    crime.  And I just don't see there is any evidence in

20    the record where that happened.

21          THE COURT:  Well, is -- and my memory is

22    vaguer on that than some of the other issues that are

23    raised here, but my memory is that you did not want

24    to go to the jury on that theory; you didn't want --

25    either you wanted a conviction on VICAR or nothing at

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                     1-800-669-9492

BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1   all.
 2            MR. CASTELLANO:  I don't recall that
 3   specifically either, but that's certainly a decision
 4   we would have made.  We would have not agreed to
 5   submit that instruction.
 6            THE COURT:  And it's not technically a
 7   lesser included offense, because the elements are
 8   different.
 9            MR. CASTELLANO:  I agree.
10            THE COURT:  All right.  Anything else,
11   Mr. Castellano?
12            MR. CASTELLANO:  No, Your Honor.
13            THE COURT:  All right.  Thank you,
14   Mr. Castellano.
15            Mr. Burke.
16            MR. BURKE:  Thank you, Your Honor.
17            THE COURT:  Mr. Burke.
18            MR. BURKE:  I just want to -- the Court has
19   fleshed out some discussion about Jaramillo, so I
20   won't be too long on that.  But I would point out
21   that what happened was, somehow or another, Sonia
22   Salazar was able to IPRA some files from the
23   Department of Corrections on Jaramillo, and we were
24   able to -- and they arrived on May 8.  So we had a
25   very short period of time to use those.  And we did
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    do some things with those records, although I believe

2    that the cross-examination was not terribly

3    effective.  But what did show up as a result of that

4    IPRA request -- those are records we got, the

5    Government didn't provide those to us, those were

6    Department of Corrections records.  And

7    Mr. Castellano is correct, we did use those to

8    impeach him.  But what it pointed out was -- for

9    example, there was a video that was referenced in

10   those records.  And we were unable to get the video

11   promptly.  So we were unable to cross-examine him

12   from the video.  And there are very few things that

13   are more dramatic for a jury than to have a witness

14   under oath being proven to be a liar by a video.  So

15   that's one example.

16          And I would point out concretely that the

17   Billy Garcia investigative team, they're the ones

18   that finally ran to ground that Eugene Martinez had

19   been lying all these years about witnessing his

20   father's and brother's murder.  That was just hard

21   rock mining that was done.

22          And you know, I'm an advocate, so I don't

23   know whether I'm reliable on this.  But I remember

24   looking at the jury, and when they figured out that

25   Eugene Martinez was lying about witnessing his

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    father's death, I think that was it for Eugene
 2    Martinez.  But that's the kind of thing that you need
 3    months and longer to develop.
 4              And so the Court makes a legitimate point
 5    about what else would you have done.  But there
 6    really were things that we would have done to be more
 7    effective in our cross-examination of Jaramillo.
 8              And I wasn't sure exactly what
 9    Mr. Castellano was saying about the Jaramillo DNA.
10    But the discovery that they provided us, 13063, says
11    "indications of Jaramillo."  I believe it's a trial
12    exhibit.  There is nothing vague about it.  We got it
13    from them.  And so the suggestion that somehow -- and
14    in the top right corner it's dated May 23, 2001.  And
15    it says it's on the cord.  So I'm not real clear what
16    that argument was.  But beginning May 23, 2001, there
17    is a DNA document in the DPS crime lab file that we
18    got from them saying "indications of Jaramillo."
19              And finally, I did note that when there was
20    the discussion of the Pearson case, there was no
21    language similar to the language in the second degree
22    murder statute of New Mexico talking about a strong
23    probability, which is very loose, and not the sort of
24    thing that goes with a general idea of murder.
25              And that's all I have, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Thank you,
 2    Mr. Burke.
 3              MR. BURKE:  Thank you.
 4              THE COURT:  Mr. Benjamin, do you have
 5    anything you want to add related to your motion,
 6    or --
 7              MR. BENJAMIN:  No, Your Honor.
 8              THE COURT:  -- anything else?  How about
 9    any of the other defendants?  Anybody want to say
10    anything?
11              Well, I want to track this opinion down
12    that I know that I worked very hard on to try to
13    satisfy myself.  But while there was a violation of
14    the statute, he should not be excluded.  So if I did
15    not issue that, then I will try to find it and get it
16    issued.  I thought I completed work on it, but it may
17    not have gotten out the door.  But in any case, I
18    think I have probably done everything I can do on
19    Jaramillo.  I'll review that opinion to try to put
20    myself and my thinking back into where I was that
21    first week of trial.  But I think I have done
22    everything I can on Jaramillo.  I think I pushed him
23    down.  I thought there was a lot of things that he
24    was impeached about.  And so I thought, given the
25    limited amount of information that everybody had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    about Jaramillo, we did what we did with -- had to do

2    with him at trial.

3           As far as severance, I recall -- I've got a

4    big work table in my chambers back in Albuquerque,

5    and I remember spreading out all the defendants early

6    on, and just staring day after day as I'd walk by,

7    and playing with different combinations.  And because

8    of the experience of the district judges in the

9    Second Circuit, and mostly there in the Eastern

10   District of New York, the Southern District of New

11   York, they handle some big defendant cases a little

12   bit more often than we do here.  I did want to push

13   these numbers down into single digits.  I was

14   somewhat guessing who might be at trial, who wasn't

15   going to be at trial, what we were all hearing about

16   different defendants, and then staring at the

17   combinations of counts and defendants.  At the time

18   you didn't know exactly how that was going to play

19   out, and so I always left open the possibility of

20   further severances.  But as it came down to trial

21   time, I actually thought that I got it about right.

22   And so I feel somewhat comfortable going into both

23   trials.

24           I remember -- certainly I thought about the

25   first trial, four defendants; got that about right.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I was still sort of thinking as I went through that

2    trial where we were going to be on the second trial,

3    and thought it was about right.  And then on the

4    third trial, which isn't DeLeon, but it was Mr.

5    Baca's case, I thought we got it about right.

6           So given the number of defendants we

7    started with and the amount of counts we had, those

8    things of that nature, I think the severance was a

9    good break.  I think it needed to be break -- I still

10   believe it needed to be broken up once.  But I'm not

11   convinced that it didn't work out fairly well with

12   that.

13          So I'm not inclined to revisit the

14   severance.  I think probably that is an issue the

15   Tenth Circuit ought to look at.  Because I guess I'm

16   feeling, both before the trials and then after the

17   trials and during the trials, it was working out

18   pretty well given the decisions that had to be made.

19          On the jury instructions, I want to look a

20   little bit more at the jury instructions, but I'm

21   inclined to think that almost all of them I can say I

22   don't feel there is any error there.

23          I want to look a little bit closer at this

24   new issue in the reply about the murder charge and

25   the arguments that are made there, because those are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1     new.  And I just need to study the law.  It may be
2     that I got it right; it may be that there is error
3     there, but I think it's going to be a plain error.  I
4     don't think it substantively infected the trial.  And
5     so I'm not inclined to grant a new trial on that.  I
6     do want to see what the Government has to say, and I
7     want to look at some of these cases that have been
8     brought to my attention.  But it seems to me that,
9     even if there is some error there, under a plain
10    error review, it's pretty difficult if we didn't get
11    around to it until we found it in the reply, I think
12    it's a little hard to say it's plain error, given as
13    hard as we worked on those instructions.
14              So I'm inclined to not grant any motion for
15    a new trial on the basis of the arguments that
16    Mr. Troup and Mr. Joe Gallegos have raised.  But I'll
17    look at it and I'll give you an opinion on that.
18              All right.  Let's move then to, I guess
19    it's Arturo Garcia's motion for acquittal.  Mr.
20    Davidson, if you wish to argue that motion.  I know
21    that's been joined by a couple other defendants,
22    including Mr. Billy Garcia and Mr. Troup, and maybe
23    others.
24              MR. DAVIDSON:  Thank you, Your Honor.
25              THE COURT:  Mr. Davidson.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                    MR. DAVIDSON:  You'll recall that at
 2         trial --
 3                    THE COURT:  When I was reading your motion,
 4         it looked to me like you were giving a document
 5         number which struck me as how incredibly high a
 6         number that is, a four-digit number, and it had a 2
 7         in front of it, if I recall.  That is the opinion I
 8         did get out on the interstate commerce here?
 9                    MR. DAVIDSON:  Yes, Your Honor, it was --
10                    THE COURT:  Give me the date on that
11         opinion.
12                    MR. DAVIDSON:  -- 2378.
13                    THE COURT:  And it came out when?  I think
14         it came out after I got back to Albuquerque, right?
15                    MR. DAVIDSON:  It came out -- I want to say
16         in August or September.  I'm not sure exactly the
17         date.
18                    THE COURT:  I think it's August, because --
19                    MR. DAVIDSON:  I know you had not issued it
20         as of the June 14 hearing on the Baca matter.
21                    THE COURT:  That is true.
22                    MR. DAVIDSON:  And I had filed my written
23         motion on, I believe, October 16.  So somewhere in
24         the middle there.
25                    THE COURT:  Now, it's my memory in that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    opinion I dealt with the issues that you raised, both
 2    when you were making the oral directed verdict and
 3    the motions during trial.  It dealt with those, and
 4    it dealt with those that were in the written
 5    document.  But I think I held out -- did I end up
 6    holding some option that you could come back and
 7    argue on the connection between Mr. Garcia's -- the
 8    crime here, and interstate commerce, because he was
 9    coming under the prong of trying to advance his
10    position within the enterprise rather than with drugs
11    or drug transaction?  I think I ended up --
12              MR. DAVIDSON:  Correct.
13              THE COURT:  -- after thinking about it
14    overnight saying:  The drugs, if that's the way
15    you're going, I'm going to deny motion for summary
16    judgment interstate commerce, but I want to think
17    more about whether advancing yourself in an
18    enterprise without any sort of drug connection,
19    whether that would satisfy it.
20              MR. DAVIDSON:  Correct.  And so --
21              THE COURT:  In the opinion did I leave that
22    open, or did I end up foreclosing that?
23              MR. DAVIDSON:  Well, in the opinion -- the
24    opinion didn't deal with anything I had submitted in
25    writing.  It was just dealing with the oral
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    arguments.

 2            THE COURT:  And that was because this issue

 3    that I'm talking about right now was not part of your

 4    oral motion, right?

 5            MR. DAVIDSON:  I believe it was part of the

 6    oral motion.  So what we argued in the oral motion

 7    were three things, Your Honor.  One was for dismissal

 8    under Rule 12 (b)(2) for lack of jurisdiction.  And

 9    that kind of dovetails with a facial challenge to the

10    constitutionality of VICAR's exceeding Congress'

11    authority under the Commerce Clause.  And the third

12    argument was the as applied challenge, which Your

13    Honor is just referring to.  So I think at this point

14    I'll stand on the briefing that we already have with

15    respect to the 12(b)(2) lack of jurisdiction and the

16    facial challenge to VICAR, and focus on the as

17    applied.

18            And what Your Honor wrote in the memorandum

19    opinion and order, Document 2378, was that --

20            THE COURT:  What did I say specifically

21    about this one, where your client was -- the theory

22    the Government was going to the jury on was that he

23    did the crime to advance his position in the SNM

24    organization?

25            MR. DAVIDSON:  You didn't address that in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    depth, Your Honor.  What you said in the order was

2    that an as applied challenge on Commerce Clause

3    grounds to VICAR is a contradiction in terms.  And

4    there were three cases that you cited there:

5    Perez --

6              THE COURT:  So didn't I -- by making that

7    comment, wasn't I rejecting the argument that you

8    could say, because of the theory here -- that you

9    could argue that because of the theory that the

10   Government chose, you couldn't say that then the

11   VICAR statute was unconstitutional as applied?

12   Wasn't I, in the end, rejecting this issue that I had

13   left open?

14             MR. DAVIDSON:  Yes, I think that's correct.

15             THE COURT:  That's what I meant by -- I

16   don't think there is -- I don't think you get to

17   argue this.  There is not a doctrine out there that

18   really allows you to make this argument.

19             MR. DAVIDSON:  And so I guess what I'd like

20   to focus on this morning is why I think that you

21   should reconsider that line of reasoning, that

22   proposition, and to see if I can convince you that

23   there is an opening for an as applied challenge to

24   VICAR, particularly with the facts regarding Count 3

25   for Arturo Garcia in the Freddie Sanchez murder.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          The first point there, Your Honor, is that

2    the murder of Freddie Sanchez is unlike the types of

3    activities in the cases cited by the Court in the

4    memorandum opinion and order.  One of the cases was a

5    U.S. Supreme Court case Perez, which involved a

6    statute that criminalized loan sharking, extortion in

7    credit transactions.  Well, loan sharking is

8    obviously a form of economic activity.  And so the as

9    applied challenge was rejected there because the

10    activity is economic.

11          The second case cited was Taylor.  It was

12    also a U.S. Supreme Court case.  And that involves

13    Hobbs Act robbery.  In that case, the defendants

14    attempted to steal or stole drugs or drug proceeds.

15    And the court noted there that the market for illegal

16    drugs is commerce over which the federal government

17    has jurisdiction.  Again, Hobbs Act robbery is

18    involved with economic activity and commerce.

19          The third case cited, and I believe it was

20    cited by the Government or relied on in their brief

21    in response to my brief was Farnsworth, which was a

22    922(g) felon in possession case.  And again, Congress

23    chose to, with 922(g)(1) regulate interstate commerce

24    in firearms, and wanted to exclude felons from that.

25    And the way they did that under the necessary and

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                               1-800-669-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                              e-mail: info@litsupport.com

1    proper clause was to then ban possession as well.

2    And courts have held that banning possession, even

3    though possession per se is not commerce, it was an

4    effective way for Congress to regulate the market in

5    firearms, and exclude felons from that.

6           So those three examples:  A felon in

7    possession of a firearm, Hobbs Act robbery, and loan

8    sharking are all very much more connected to economic

9    activity than the Freddie Sanchez homicide, and

10   anything, construing the evidence in the light most

11   favorable to the Government, Arturo Garcia was shown

12   at trial to have done.

13          In the Government's briefing it does not

14   dispute, and in fact tacitly concedes that Freddie

15   Sanchez was not involved in drug trafficking, in any

16   drug trafficking activity of the SNM.  In the

17   Government's answer brief there was no dispute of the

18   noneconomic nature of the Freddie Sanchez homicide.

19   And their brief is Document 2435.

20          The only statements regarding drug

21   trafficking anywhere in their brief is to the effect

22   that the SNM itself engaged in drug trafficking, not

23   that Freddie Sanchez did, or that the Freddie Sanchez

24   homicide was related in any way to the drug

25   trafficking activity of the enterprise.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          The Freddie Sanchez homicide and my

2    client's involvement in it, again construing the

3    evidence in the light most favorable to the

4    Government, has less of a connection to interstate

5    commerce or activity of an economic nature than the

6    Court's hypothetical.

7          Now, in Your Honor's memorandum opinion and

8    order at page 8, Footnote 4, the Court identified as

9    a scenario where commercial activity does not affect

10   more than one state, the following hypothetical:

11   Your Honor said:  "Imagine a small group of people

12   become stranded in a remote location, Alaska perhaps,

13   with no realistic possibility of escape.  Bartered

14   transactions with that group would qualify as purely

15   intrastate commerce."

16         Now, taking that hypothetical that Your

17   Honor proposed in the memorandum opinion and order,

18   Document 2378, and comparing the evidence that came

19   out at trial regarding the Freddie Sanchez homicide,

20   there is less of a connection to economic activity

21   for anything interstate involving economic activity

22   than in the hypothetical.  Barter is obviously

23   economic activity.  The Freddie Sanchez is

24   noneconomic.  The only way you could connect the

25   Freddie Sanchez murder to interstate commerce is to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    pile inference upon inference to meet the commerce

 2    element.

 3            And there is a very well-reasoned opinion,

 4    Your Honor, from the Eastern District of Michigan in

 5    1999.  My research indicates that it's still good

 6    law.  It has been disagreed with by other courts.

 7    And I have a couple copies of that opinion, if you'd

 8    like to see it.  And I have one for the Government as

 9    well.

10            THE COURT:  Sure, I'd like to see it.

11            MR. DAVIDSON:  In the Garcia case -- this

12    is from the Eastern District of Michigan 1999, Judge

13    Nancy Edmunds, a Bush appointee for 1992, she noted,

14    "The Court here" -- referring to the U.S. Supreme

15    Court in Lopez, in which U.S. Supreme Court struck

16    down the Gun-free School Zones Act as overreaching

17    commerce clause power of Congress.  She noted that,

18    "The Lopez court rejected the Government's argument

19    that crime in general has a negative effect on

20    interstate commerce, and cautioned against piling

21    inference upon inference in a manner that would bid

22    fair to convert Congressional authority under the

23    Commerce Clause to a general police power of the sort

24    retained by the states."

25            The only way you can connect the Freddie

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Sanchez homicide to interstate commerce is by

2    engaging in that sort of inferential piling upon

3    inference that the U.S. Supreme Court in Lopez

4    forbade.

5            So the three cases that I would argue, Your

6    Honor, that you could rely on in getting to the

7    relief we're requesting are the following:  The Lopez

8    case in 1995, where they struck -- the U.S. Supreme

9    Court struck down the Gun-free School Zones Act;

10   Morrison, in 2000, where they struck down the civil

11   remedy provision of the Violence Against Women Act;

12   and the third is this district court case from the

13   Eastern District of Michigan, from 1999, the Garcia

14   case.

15           Under these three cases, Your Honor, I

16   think that the Court should interpret Section

17   1959(a)(1), the critical provision of the VICAR

18   statute that's implicated here, that section should

19   be interpreted to require a substantial effect on

20   interstate commerce.

21           In the Government's briefing I understand

22   them to be arguing that only a minimal or de minimis

23   effect on interstate commerce is needed.  So their

24   argument, as I understand it -- and Mr. Castellano

25   can certainly ably speak for the Government -- but as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I understand their argument and their theory of the

2    case, they don't need to show any connection between

3    the Freddie Sanchez homicide and any economic

4    interstate activity.  All they have to show is that

5    it was done in furtherance, for Mr. Garcia to

6    maintain or further his position within the gang.

7    And then because the next inference is that because

8    the SNM Gang was involved in drug trafficking

9    activity -- which certainly the evidence at trial

10   showed -- their argument is that that's how you get

11   to jurisdictional hook for Congress to regulate this

12   sort of activity, and for this Court to have the

13   authority to punish it.

14            THE COURT:  What do you think -- I mean,

15   granted, I've now put it into an opinion -- about my

16   thought that you can't raise these?  You know, I

17   understand what she's saying, and I left it open for

18   another day.  But what do you think about my argument

19   or my conclusion that you just can't raise an as

20   applied challenge to -- in an interstate commerce

21   case?  And that's not what's going on in the Supreme

22   Court cases.  They're not saying as applied to this

23   defendant it's unconstitutional.  They're saying the

24   statute is unconstitutional.

25            MR. DAVIDSON:  I thought that in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Gonzales against Raich case involving the

2    constitutionality of the Controlled Substances Act,

3    Justice Stevens' opinion he explained "as applied

4    challenges are available to statutes regulating an

5    economic class of activities, because when a general

6    regulatory statute bears a substantial relation to

7    the commerce, the de minimis character of

8    individual's instances arising out of that statute is

9    of no consequence."

10            So my understanding is, if you take the de

11   minimis standard as being the standard, then we can

12   bring an as applied challenge, but it's going to

13   lose, because all you need is a de minimis standard.

14   But I think, if you look at the logic of Lopez,

15   Morrison, and I would argue this well-reasoned

16   opinion --

17            THE COURT:  But that is -- I mean, I don't

18   criticize the reasoning of the Garcia case from

19   Michigan.  But I'm just saying you don't go down that

20   path at all.  You just don't go there, because you

21   can't raise -- you can't pick out one defendant and

22   say:  I get to raise an as applied.  You just don't

23   have that ability with the Commerce Clause.

24            MR. DAVIDSON:  Except they did that in the

25   Raich case.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  I'm not sure they did.  I'm not
 2    sure they did.  Now, Stevens might have said
 3    something, but I'm not sure that's what they did in
 4    that case.  They struck that statute down.
 5            MR. DAVIDSON:  They had raised a -- well,
 6    no, the Supreme Court upheld the CSA, the Supreme
 7    Court upheld the Controlled Substance Act, and said
 8    that that trumped the California medical marijuana
 9    regime.  So that's one where the facial challenge was
10    rejected by the Supreme Court.  And then my
11    understanding of the Raich case is that Justice
12    Stevens then went on to look at the as applied
13    challenge.  And clearly, Judge, Garcia --
14            THE COURT:  Was he the writer of the
15    majority opinion?
16            MR. DAVIDSON:  Correct, Your Honor.
17            And, of course, Justice Rehnquist wrote
18    Lopez and Morrison.  And those statutes were struck
19    down facially.  But I do think you still do get to an
20    as applied challenge.  In each of the cases where the
21    court has said:  All you need to do is have a minimal
22    connection were cases where the underlying activity
23    was already economic.  Let me see if I can find those
24    cases.  So the Tenth Circuit in Bolton, which is
25    relied upon -- that's a Tenth Circuit case from 1995,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    68 F.3d 396.  At page 3999, the court said, "If a
2    statute regulates an activity which the repetition in
3    aggregate has a substantial effect on commerce, then
4    the de minimis character of individual instances
5    arising under that statute is of no consequence."
6    But the antecedent of that condition isn't met here.
7    Because here, the statute, VICAR, doesn't regulate
8    activity which the repetition in aggregate has a
9    substantial effect on interstate commerce, because
10   that line of reasoning has been ruled out by Lopez.
11   Because as the Court said in Lopez:  If you go down
12   that road of saying Congress gets to regulate crime
13   because crime in aggregate has a negative impact on
14   the economy -- which no one would dispute -- the
15   Supreme Court has said:  Then you're going to have a
16   centralized government, and that destroys Federalism.
17   So that's against the very structure of the
18   Constitution; it's against the Tenth Amendment; it's
19   against Article 1, Section 8, where the Commerce
20   Clause is; it's against everything that is in the
21   structure of our government.
22           So the Government in their brief, I think,
23   cites some cases that have the last part of that
24   conditional from Bolton.  But you don't get there
25   unless you're talking about a statute that already
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    regulates economic activity.

2          But clearly, a murder that occurs within a

3    state is not economic activity.  So the problem is,

4    if Congress is regulating noneconomic activity, then

5    the only way you get to interstate commerce nexus

6    that would allow Congress to regulate individual

7    crime is to show a connection between the crime and

8    interstate commerce.  And you can't get there in this

9    case.

10          Under the Government's theory of the case,

11   Your Honor, the connection would be that my client

12   was trying to maintain or increase his position in

13   the SNM by ordering the hit on Freddie Sanchez.  And

14   because that was the gang-related act, and then the

15   gang itself is involved in something that impacts the

16   economy, that via those inferences that gets you to

17   interstate commerce.  But I don't think -- Lopez

18   basically doesn't allow you to do that.

19          The case, Your Honor, that's very analogous

20   to my client's situation is this Garcia case from

21   Michigan.  There, the Court said, "Even if the

22   Government proves beyond a reasonable doubt that

23   Garcia murdered Evan Ison -- who was the victim in

24   that case -- "to enhance the power and authority of

25   the Cash Flow Posse" -- that's his gang in that case

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 843-9492                                  FAX (505) 843-9492
                                                          1-800-669-9492
                                              e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    -- "and his role within it, that murder still in the

2    end is a street crime committed by a thug as part of

3    a local turf war in southwest Detroit."

4              Your Honor, what the Government has done in

5    this case in Count 3 is to attempt to regulate and

6    punish a local crime that has no interstate commerce

7    nexus.

8              If Your Honor has no further questions,

9    that's all I have.

10             THE COURT:  Well, let me hear from the

11   Government, and then I may have some further

12   questions.

13             Anybody else want to argue, comment on this

14   motion?  I know there was some joinders and have been

15   in the past on this interstate commerce issue.  I

16   know that I kind of foreclosed it on those defendants

17   that were connected to the enterprise by drugs, but I

18   had this one little issue that I was continuing to

19   look at.

20             Mr. Benjamin.

21             MR. BENJAMIN:  Your Honor, we joined, but

22   I'm not going to be able to compare to what Mr.

23   Davidson said.  So I join it.

24             THE COURT:  All right.  Mr. Cooper.

25             MR. COOPER:  Your Honor, the same arguments

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that are made with regard to the Freddie Sanchez

2    murder are applicable, I believe, to the

3    Castillo/Garza murders alleged in Counts 1 and 2.

4            THE COURT:  All right.  Thank you,

5    Mr. Cooper.

6            Anyone else?

7            All right.  Mr. Castellano.

8            Let me ask Mr. Davidson one question before

9    I hear from you.  Was there any appeal of this Garcia

10   opinion from the judge in the Michigan case?

11           MR. DAVIDSON:  Not that I could see, Your

12   Honor.  When I looked at the key cite, I was

13   wondering the same thing:  Why did that not get

14   appealed?  Perhaps, there was some deal that was made

15   or something after the convictions went away.  There

16   were also RICO convictions and other things going on

17   in that case.  But when I Shepardized it, that's what

18   I found.

19           And in candor to the Court, it has been

20   criticized by other courts.  But I find it to be more

21   persuasive than those other courts.

22           THE COURT:  Did the defendant that won this

23   particular motion, did this defendant get convicted

24   on other charges in this case?  I mean, that might

25   have been the reason the Government didn't do

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    anything with it because the defendant got convicted
2    on other charges.
3              MR. DAVIDSON:  I believe so, Your Honor.
4    Like I said, there were RICO -- it was a single
5    defendant case at this point -- and there were RICO
6    counts as well.
7              THE COURT:  I guess -- help me think
8    through this.  I mean, in your particular motion,
9    it's not really a motion for a new trial.  There is
10   nothing else to be done with a new trial.  There is
11   nobody saying:  We've got more evidence or a new
12   theory or anything like that.  So there is no reason
13   to grant a new trial.  The best I could do for you is
14   to set aside the verdict as to Mr. Garcia, and then
15   the Government appeal it.  Or I leave it in place and
16   you appeal it.  But it looks to me like it's headed
17   to the Tenth Circuit on this issue regardless.  But
18   it's not a new trial issue.  Would you agree with
19   that?
20             MR. DAVIDSON:  Correct, Your Honor.  We
21   didn't ask for a new trial.  We asked for acquittal
22   under --
23             THE COURT:  It's just a legal issue that
24   either I'm getting right or I'm not getting right.
25             All right.  Mr. Castellano.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. CASTELLANO:  Your Honor, I like it

2     better when Mr. Davidson does the appeal.  So I like

3     that option better of the two.  So if you leave

4     things as they are, then Mr. Davidson can get started

5     on the appeal.

6           I think that what I'm looking at -- I had a

7     short time to digest the Garcia case, but it seems to

8     me that the Court, even in that case, indicates that

9     the activities of the Cash Flow Posse seemed to have

10    weak ties to commerce.  And so I think we're in a

11    slightly different posture with that case than this

12    case.

13          There was another part I looked at.  The

14    court, on page 811 of that opinion, in the upper

15    right-hand corner says, "In this case the

16    enterprise's connection to interstate commerce is

17    weak.  The government merely alleges that some of its

18    members drove within the state on an interstate

19    highway in order to commit acts of murder.  It also

20    alleges that the gun used in connection with the

21    Racketeering Act alleged in Count 1 may have crossed

22    state lines."

23          And so, once again, this is a focus on the

24    enterprise and the court is saying that it's pretty

25    weak on -- under VICAR and the substantial effect.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                 201 Third NW, Suite 1630
Santa Fe, NM 87501                                        Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 843-9492                                         FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1              But I do agree that the case law says that
2    only a de minimis amount or effect on commerce is
3    necessary.
4              But one of the other cases I cited, which
5    was the Miller case, on page 5 of my response, which
6    states, "Courts have also held that where the
7    racketeering enterprise's business is narcotics
8    trafficking, that enterprise must be viewed as
9    substantially affecting interstate commerce."
10             So even though the case law supports a de
11   minimis effect on commerce, in this case the SNM was
12   involved in drug activity, which means there was a
13   substantial effect on commerce.
14             And they also cite to Congress' findings at
15   21 USC Section 801(3), once again indicating that
16   even Congress recognizes the effect on commerce that
17   drug trafficking has.
18             And in this case, specifically as to
19   Mr. Garcia, there is evidence that he, himself, was
20   involved in narcotics activity.  And so in this case
21   we have an example of not only the enterprise itself
22   engaged in commerce, but the defendant himself, not
23   necessarily the victim, but that the defendant
24   himself engaged in drug trafficking activity.  So I
25   think we're pretty solid on that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          The other examples the Court heard were

2     that members traveled in commerce through interstate

3     compacts.  Their activities caused them to be moved

4     out of state by the Corrections Department.  There

5     was travel.  There is also sending narcotics through

6     commerce.  Gerald Archuleta is an example of someone

7     who received drugs in Tennessee from New Mexico.

8          So I think, even if you look at the Garcia

9     case, really what we have here is the judge in

10    Garcia, or the court in Garcia, alleging that the

11    enterprise's effect on commerce was pretty thin.  In

12    this case we have much more evidence than that.

13         THE COURT:  Well, are you not excited about

14    defending my theory on the case that I just don't

15    think that you can get an as applied challenge:  One

16    defendant can't raise it; it's got to go to the

17    entire statute or none at all?

18         MR. CASTELLANO:  I actually do like that

19    theory.  I can't say I thoroughly investigated that

20    theory by the Court.  But it seems to me that's the

21    way the statute is written.

22         And I cited also to the -- I believe the

23    Torres case on page 3 of my opinion.  And even in

24    Torres, after addressing the facial challenge, the

25    statute indicates what the Court has addressed, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    it says, "Specifically, Section 1959 prohibits the

2    commission of a violent crime as consideration for

3    the receipt of, or as consideration for a promise or

4    agreement to pay anything of pecuniary value from the

5    enterprise engaged in racketeering activity."  And

6    then enterprise as an entity is an enterprise that

7    engages in activity.

8             So I actually do like the Court's theory.

9    I don't know much more about it.  But it makes sense

10   to me that you can't take a piecemeal approach to a

11   gang that is in -- by itself, engaged in racketeering

12   activity, and try to isolate that particular member

13   and say:  Government, you must prove that this person

14   himself did.

15            But I think, even if that were the case,

16   Mr. Garcia himself was engaged in activity.  So the

17   Court's opinion aside, which I do like, I think we

18   could prove it even if there was an applied -- as

19   applied challenge specifically to the defendant.

20            But I like the Court's reasoning,

21   certainly.

22            THE COURT:  All right.  Anything else,

23   Mr. Castellano?

24            MR. CASTELLANO:  No, sir.

25            THE COURT:  Thank you, Mr. Castellano.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Mr. Davidson, do you have anything further

2     on your motion?

3          MR. DAVIDSON:  Your Honor, one of the

4     arguments relied upon by the Government is the fact

5     that Congress in the statute found an interstate

6     connection.  But the U.S. Supreme Court noted in

7     Morrison that the question whether interstate

8     activity affects interstate commerce sufficiently to

9     come under the commerce clause power is a judicial

10    determination.  Congress can't just evade judicial

11    review by the judiciary by just putting whatever it

12    wants to in the statute.

13         Now, the reason that sometimes that gets

14    noted that Congress made that finding was because one

15    of the problems in the Lopez case, the Gun-free

16    School Zones Act, was that Congress had made no

17    jurisdictional -- they had made no findings of any

18    connection to interstate commerce.

19         But our claim is not that gang activity

20    that involves drug trafficking doesn't have an

21    interstate commerce element.  Our claim is that the

22    evidence that was produced at trial regarding the

23    murder of Freddie Sanchez and my client's involvement

24    in it, again construing evidence in the light most

25    favorable to the verdict (sic), even when you do

SANTA FE OFFICE                                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                                                              Albuquerque, NM 87102
(505) 989-4949                                                                                            (505) 843-9494
FAX (505) 843-9492                                                                                  FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
1    that, you still don't get a connection to interstate
2    commerce.  You have to pile inferences upon
3    inferences in ways that the U.S. Supreme Court has
4    said are forbidden if we are going to maintain a
5    federal system of government, where you have states
6    which have traditional police power to regulate crime
7    and things of that nature.
8              With respect to the point that, in the
9    Garcia case out of the Eastern District of Michigan,
10   that that particular gang activity -- the activity of
11   that gang may have had a weak connection to
12   interstate commerce, that doesn't suffice to
13   distinguish that case from our case.  Because the
14   analysis of the judge there was that the Government
15   needs to show a substantial connection between the
16   individual conduct and the interstate commerce.
17             This is what the court said about that:
18   "VICAR has no jurisdiction element which ties either
19   the violent act or the conduct of the defendant to
20   interstate commerce."
21             And that's unlike RICO.  For instance, in
22   the RICO statute, RICO says, Section 1962(c), "It
23   shall be unlawful for any person employed by or
24   associated with any enterprise engaged in, or the
25   activities which affect interstate or foreign
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    commerce, to conduct or participate directly or

2    indirectly in the conduct of such enterprise's

3    affairs through a pattern of racketeering and

4    collection of unlawful debt."  That express

5    connection to interstate activity of the individual's

6    conduct is not in the VICAR statute.  What VICAR

7    says, in Section 1959(a)(1)is, "Whoever has

8    consideration for the receipt of, or as consideration

9    for promise or agreement to pay anything of pecuniary

10   value from an enterprise engaged in racketeering

11   activity, or for the purpose of gaining entrance, or

12   to maintain or increase position in an enterprise

13   engaged in racketeering activity, where" -- et

14   cetera, "commits assault resulting in serious bodily

15   injury upon, or threatens to commit a crime of

16   violence against any individual" --

17            THE COURT:  You're reading from the Garcia

18   case?

19            MR. DAVIDSON:  This is from Section

20   1959(a)(1), correct.

21            The point is that the VICAR statute doesn't

22   have the close tie to interstate commerce that RICO

23   has, which is why all the RICO cases cited by the

24   Government are easily distinguishable.  The problem

25   under VICAR, is that it criminalizes activity that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   has the intent of maintaining or increasing position
 2   of a gang.  But as the court in Garcia noted, the
 3   statute itself doesn't have a connection to --
 4   doesn't require a connection to individual -- doesn't
 5   require in the statute a connection between the acts
 6   of the individual and interstate commerce.
 7           So what you have happening is it allows you
 8   in a way that's unconstitutional to criminalize a
 9   purely state activity that's criminal in nature,
10   without there being a sufficient interstate commerce
11   connection.
12           So for these reasons, Your Honor, as
13   applied challenges under the Commerce Clause are
14   definitely allowed.  And I'd be happy to provide
15   further briefing to the Court on that element.  It
16   seemed in the research that I did in preparing for
17   today's argument that I didn't find any cases that
18   stood for the proposition that you can't bring an as
19   applied Commerce Clause challenge to VICAR.  The
20   cases that had a de minimis requirement were cases
21   where the statute already regulated economic
22   activity, which of course this statute doesn't.
23           If there are no further questions, that's
24   all I have.
25           THE COURT:  All right.  Thank you,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Davidson.

2           Any other defendant want to speak on this

3    issue?

4           Ms. Jacks.

5           MS. JACKS:  Your Honor, I never understood

6    this issue until this morning.  And I join the

7    arguments on it.  We had not joined, and I'd ask the

8    Court's permission to join Mr. Davidson's motion on

9    behalf of Mr. Sanchez.

10          MR. LOWRY:  Same for Mr. Baca.

11          MS. BHALLA:  Same for Mr. Herrera as well,

12   Your Honor.

13          THE COURT:  You know, on the people who had

14   drug connections early on, I thought about it one

15   night and I didn't see that.  I think that's pretty

16   tough for the defendants that -- where they -- where

17   the Government went to the theory on the drug issue.

18   The one that I thought was intriguing was the

19   defendants' that only -- the Government was going to

20   the jury on the theory that they were advancing their

21   position within the organization.  So I think it's a

22   really tough hold to try to make the argument on

23   drugs.

24          But I think it's an interesting issue on

25   those that are only committing a crime to advance

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                 (505) 843-9494
FAX (505) 843-9492                                       FAX (505) 843-9492
                                                            1-800-669-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                              e-mail: info@litsupport.com

1    their position in the organization.

2            I guess my thoughts are that I've probably

3    done the best I can on this.  It's going up to the

4    Tenth Circuit in this case one way or another,

5    whether I set aside Mr. Garcia's conviction, or I

6    leave it in place.  And I think I probably thought

7    about it, and I will think about it again.  I'll take

8    it as a motion to reconsider the opinion I got out in

9    August.  But I did take it back to Albuquerque, gave

10   it a little bit more thought, and came up with that

11   theory.

12           I could be wrong.  It could be that they

13   can raise these issues.  And even if you can raise

14   them, then you've got the issue of whether there is a

15   de minimis or lack of substantial impact on

16   interstate commerce.  But I'm still somewhat -- maybe

17   I persuaded myself on this issue.  But I'm not

18   inclined to run away from it right at the moment.

19   But I'll take a look at it, and look at this district

20   judge's opinion and see.

21           But I'm inclined to deny the motion, just

22   leave it in place, and let the Tenth Circuit deal

23   with it.  Because it's not really a new trial issue.

24   It's more of a legal issue, that we have a nice

25   robust record for them to look at.  If they're going



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to decide this issue, this might be a good one for

2    them to decide it, rather than me not giving them an

3    opportunity, or me saying something that really

4    doesn't make any difference, because it's probably an

5    issue for the appellate courts.

6              MR. DAVIDSON:  Your Honor, could I speak to

7    that briefly?

8              THE COURT:  You may.

9              MR. DAVIDSON:  It's my understanding -- and

10   my colleagues at the U.S. Attorney's Office can

11   correct me if I'm wrong -- but if you were to rule in

12   favor of my client, there may not be an appeal,

13   because it would have to be -- it would have to go

14   through the Solicitor General's Office to approve an

15   appeal by the Government, and oftentimes, I

16   understand the Solicitor General's Office would

17   reject that application, so they might not actually

18   have an appeal if you rule in our favor.  Whereas, if

19   you rule in their favor, you will have an appeal.

20             THE COURT:  Seems like they've got my name

21   on the wall this year, because I sure am getting a

22   lot of appeals from the Government.  So it may help

23   you if I just leave it in place rather than setting

24   it aside.  But in any case, I'll take a look at it.

25             MR. DAVIDSON:  Thank you.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  So let's go to

2    Andrew Gallegos' motion for a new trial.  Ms.

3    Torraco, are you going to argue this motion?

4              MS. TORRACO:  Yes, Your Honor.

5              THE COURT:  Ms. Torraco.

6              MS. TORRACO:  What exhibit number are we

7    on?

8              THE COURT:  Well, for your motion we're

9    going to start over.  So if you have exhibits, let's

10   start with A, for purposes of Mr. Andrew Gallegos'

11   motion.

12             MS. TORRACO:  I believe the Government is

13   going to stipulate to the admission of Exhibit A,

14   which is a trial transcript from Morgan Ramirez.

15             MS. ARMIJO:  No objection, Your Honor.

16             THE COURT:  All right.  Any objection from

17   anyone else?  All right.  Andrew Gallegos' Exhibit A

18   for purposes of his motion for new trial is admitted

19   into evidence.

20             (Defendant A. Gallegos Exhibit A admitted.)

21             MS. TORRACO:  And I have a hard copy, if

22   the Court would like that.

23             THE COURT:  I would.  Thank you.

24             MS. TORRACO:  And as Exhibit B, I believe

25   the Government will also stipulate to the admission
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    of a partial transcript of Richard Williamson.  And I

2    have given the Government hard copies of each of

3    these exhibits.

4              THE COURT:  All right.  Any objection?

5              MS. ARMIJO:  No, Your Honor.

6              THE COURT:  Any objection from any other

7    defendant?  Not hearing or seeing any, Andrew

8    Gallegos' Exhibit B will be admitted into evidence

9    for purposes of his new trial motion.

10             (Defendant A. Gallegos Exhibit B admitted.)

11             MS. TORRACO:  Thank you, Your Honor.  And I

12   have a hard copy for the Court as well.

13             THE COURT:  I would like that.

14             MS. TORRACO:  May it please the Court.

15             THE COURT:  Ms. Torraco.

16             MS. TORRACO:  I have repeatedly heard from

17   the Government that the Court has ruled on severance.

18   But hindsight is 20/20.  And in reviewing a lot of

19   the evidence, and especially the statements and the

20   testimony given by Morgan Ramirez, I believe that the

21   Court will want to take another look at the

22   statements made by Morgan Ramirez that came in.  And

23   we believe that they came in as a violation of United

24   States v. Bruton.

25             And in doing my research in preparing for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1    oral argument today, I did come across an important
2    case for the Court, which is Lilly versus Virginia.
3    And in Lilly versus Virginia -- I can give the Court
4    the cite to that case, if you do not have it.
5              THE COURT:  Go ahead and put it on the
6    record.
7              MS. TORRACO:  That's 483 U.S. 171.  It's a
8    1999 decision.  The court in Lilly versus Virginia
9    says, "Even if the trial court finds that a statement
10   falls within a hearsay statement, that does not mean
11   that that particular statement can still be admitted
12   against a co-defendant."
13             And so what I would like to do is go
14   through some of the statements that were admitted.
15             Now, I would like to refresh the Court's
16   memory.  What happened in this case is, we
17   received --
18             THE COURT:  But isn't that case -- I mean,
19   that was a confrontational -- I mean, isn't the law
20   just totally different after Crawford and after
21   Small?  I mean, we just can't even rely on it, can
22   we?
23             MS. TORRACO:  Well, I think Crawford
24   completely supports the position that I'm going to
25   assert today, which is that, even if a statement is
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   found to fall into a hearsay exception, it still

2   doesn't.

3              THE COURT:  But isn't the problems with

4   your statements, they're just not testimonial?

5   You're struggling with statements that were not

6   testimonial.  And that's the problem that you have

7   with those statements.  And they're just -- they just

8   fall outside of the Confrontation Clause today

9   because of that.

10             MS. TORRACO:  No, because -- okay, the

11  statements that Morgan Ramirez made on the stand, for

12  example --

13             THE COURT:  But once she's on that stand,

14  the Confrontation Clause is out the door.

15             MS. TORRACO:  No, because she said "Joe

16  said."  So her testimony was everything that Joe

17  Gallegos had told her.  So the confrontation that

18  we're missing --

19             THE COURT:  But how is she -- how is

20  anything that Joe Gallegos said to her testimonial?

21  I mean, she was not preparing for trial.  She wasn't

22  taking those statements as a police officer.  Those

23  were not made in anticipation of a VICAR trial.  It a

24  seems to me they just do not fit any definition of a

25  testimonial statement.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. TORRACO:  Under Lilly versus Virginia,

2     or just in general?  Because my client does have the

3     right to --

4          THE COURT:  Well, in 2018, given the

5     development of the Confrontation Clause, it just

6     doesn't fit any definition.  They weren't even using

7     the words "testimonial" back in 1999.

8          MS. TORRACO:  Right.

9          THE COURT:  So it's just not going to work

10    any longer, that case, is it?

11         MS. TORRACO:  I hear what the Court is

12    saying.

13         Let me back up and start over.  Morgan

14    Ramirez made several statements on the stand that

15    were used against Andrew Gallegos.  She made

16    statements that Joe Gallegos had told her certain

17    things.  My client is denied the Sixth Amendment

18    confrontation right to confront Joe about those

19    statements and to test their veracity.  So when

20    Morgan Ramirez says things like, "Joe Gallegos told

21    me that he shot Adrian Burns," Andrew Gallegos was

22    denied the right to cross-examine Joe Gallegos on

23    that statement.

24         THE COURT:  And didn't I give a limiting

25    instruction on that under the hearsay rules?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MS. TORRACO:  In some cases, yes, you gave

2     a limiting instruction.

3          THE COURT:  When requested, I gave it.

4          MS. TORRACO:  Yes.

5          THE COURT:  And so, if it falls outside of

6     the Bruton problem and outside of the testimonial,

7     and just falls under the rules of hearsay, then I

8     think the Small case and others indicate that

9     limiting instructions can be enough.  So it doesn't

10    violate the Constitution.

11         MS. TORRACO:  Some statements did not get

12    limiting instructions, and some statements I have a

13    concern that the limiting instruction was

14    insufficient.  And if the Court will just indulge me,

15    I would like to go through a few of those statements.

16    And it sounds like you have a good grasp and memory

17    of what happened, probably better than I do.

18         But, as I recall, we went up to the bench.

19    We had a bench conference and discussed when these

20    limiting statements would come in, when they apply,

21    and when they don't apply.

22         My concern is that there is a couple of

23    statements that did not get limiting instructions.

24    When we alerted the Court that the 302 just came out

25    that morning on Morgan Ramirez, and we approached the

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                   Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                   FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    bench, and I explained to the Court that I was really

2    concerned because we had just received that

3    information, and Ms. Ramirez was on the stand.  And

4    we asked the Government at the bench conference what

5    were the statements that were going to be coming in

6    from Morgan Ramirez.  And the statements, as we

7    understood, were different, as it turns out, than

8    what Ms. Ramirez actually said.  So when she got on

9    the stand, she actually gave a statement saying that

10   Joe Gallegos told her that he put a bag over Adrian

11   Burns' head; that he shot him at the house; that the

12   bullet got stuck in his ear; that he put a bag over

13   his head, and then proceeded to burn him in the car.

14           That was not in the 302, and so that was

15   not discussed at the bench conference as to whether

16   or not you were going to give a limiting instruction.

17   So that statement came in without a limiting

18   instruction, and therefore, it was applied to Andrew

19   Gallegos.  My understanding is that sometimes

20   statements can come in without limiting instructions,

21   if there is harmless error.  But I don't see that a

22   statement like that, because it's so damaging, that

23   it indeed was harmless error.

24           THE COURT:  Well, two thoughts on that

25   particular one:  B, did you request a limiting

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1    instruction, and was it denied?

 2            MS. TORRACO:  I requested a limiting

 3    instruction as to all the statements at the bench.

 4    At the time that the statement came out, another

 5    statement came out, and then I requested the limiting

 6    instruction.  So a limiting instruction was not

 7    requested as to that specific statement.

 8            THE COURT:  And was Andrew Gallegos in any

 9    way mentioned in that testimony?

10            MS. TORRACO:  Yes, because he said "they,"

11    they put a bag over his head and they took him out

12    to -- and they took him out and burned him.  So I

13    think it's plain error.  And we can either say it's

14    plain error because I didn't object, or we can say

15    it's plain error because the statement shouldn't have

16    come in against Andrew Gallegos.  And I don't know

17    which the Court follows.  But the evidence against

18    Andrew Gallegos was not overwhelmingly strong, absent

19    this particular statement made by Joe Gallegos,

20    supposedly, that Ramirez said that Joe Gallegos had

21    made.  Does the Court follow me?

22            THE COURT:  I do.  But what you're

23    basically saying is this is a plain error?

24            MS. TORRACO:  That's correct.  So there

25    were several statements made by Morgan Ramirez; some
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that came in; some that had a limiting instruction.

2    But because of this particular statement -- and if

3    the Court will recall, there were actually two

4    supposed confessions.  The defense doesn't believe

5    the confessions and doesn't believe that the

6    testimony was true.  But, nonetheless, there were two

7    confessions.  Taking them in the light most favorable

8    to the state, one of the confessions was when Morgan

9    Ramirez testifies and says that Joe had admitted

10   shooting Adrian Burns; that they put a bag over his

11   head, and they burned him.

12          The other confessionary statement was when

13   Billy Cordova testified and said that my client,

14   Andrew Gallegos, had told him that he shot Adrian

15   Burns, and that he and his brother had done it.  And

16   Billy Cordova assumed the brother was Joe Gallegos.

17   So that was another statement that came in, and that

18   one came in against Joe Gallegos without a limiting

19   instruction.  And I believe Joe Gallegos is joining

20   in this part of the argument.

21          The reason that it's problematic is because

22   the confessions are very different.  If the Court

23   will recall, Billy Cordova said that Adrian Burns was

24   shot in the back of the head, which the evidence does

25   not support.  And Billy Cordova said that he was

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                                         (505) 843-9494
FAX (505) 843-9492                                                              FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   burned inside the vehicle, which the evidence does

2   not support.

3           The statements made by Morgan Ramirez,

4   whether or not Joe Gallegos actually said this, are

5   factually consistent with the evidence; that he was

6   shot in the ear; that it didn't kill him; he was shot

7   at the home; that they put a bag over his head, and

8   then they took him out and burned him.  That's why

9   the statement by Morgan Ramirez is so damaging,

10  because it was the only thing that was factually

11  consistent.

12          Our argument is that, if indeed that

13  statement had not come in, then the only

14  confessionary statement that Andrew Gallegos would

15  have to deal with is the statement made by Billy

16  Cordova, who I believe everyone in the courtroom has

17  gone over and over and over about how discredible

18  Billy Cordova is.

19          So our first concern is that particular

20  statement.

21          And what I would like to do, if the Court

22  would indulge, is go over some of the other

23  statements that came in that I am concerned about and

24  that I do not believe are harmless error.

25          So if I may, Your Honor, when Morgan

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    testified to comments -- and this is going back to

2    where I started from the beginning -- such as saying

3    that Joe Gallegos shot Adrian Burns, that

4    testimony -- that came in, and I did request a

5    limiting instruction.  And when it came in anyway

6    without the limiting instruction, that is damaging to

7    Andrew Gallegos' defense.

8           The other thing that I would like to

9    address Your Honor, is the issue of the opposing

10   defenses.  And I think this is important in light of

11   the fact that Mr. Troup's counsel, Mr. Burke,

12   addressed the issue of being tried with the Adrian

13   Burns murder.  And, really, no one wanted to be tried

14   with the Adrian Burns murder.

15          One of the problems that we had throughout

16   the entire case is the conflicting defenses with the

17   Adrian Burns Counts 4 and 5 for Andrew Gallegos, and

18   the defense of the other members, the other

19   defendants.  Mr. Burke was very much a gentleman when

20   he said:  We don't want to be tried with Adrian Burns

21   because of the horrific murder and all of the

22   pictures.

23          The fact is that Andrew Gallegos had a

24   conflicting defense as far as the other criminal

25   defendants.  And that conflicting defense started out

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    with the very first witness.  And with that witness,
2    the defense -- when I got up and cross-examined him,
3    we made statements and questions to the effect that
4    the SNM Gang was violent, the SNM Gang bragged about
5    their accomplishments, bragged about the things that
6    they did.  We asked questions -- or I asked questions
7    about the drug dealers, and that they were drug
8    dealers and not users, in an attempt to try to
9    establish that the behaviors of Andrew Gallegos were
10   vastly different than the behaviors of the SNM
11   members, trying to separate Mr. Andrew Gallegos from
12   the SNM Gang.  Because our defense has always been
13   that he is not a member of the SNM Gang, nor was any
14   of this accomplished or any -- or him being accused
15   of anything to further or to gain admission to SNM.
16            This type of defense was in direct
17   opposition, and actually hurt all of the other
18   defendants.  So I think, not only when Mr. Troup's
19   counsel says that they don't want to be tried with
20   Adrian Burns because of the horrific and grotesque
21   nature of the murder, they don't want to be tried
22   with Adrian Burns also because of the conflicting
23   defenses that we had.  I outlined most of that in our
24   motion.  But do I believe this is something that I
25   didn't outline in the motion.  And it caused conflict
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    because our position was very different than other

2    positions, because there were certainly people who

3    admitted that they were members of the gang.

4              The other thing that I want to bring the

5    Court's attention to -- and I believe that Ms. Armijo

6    does not object -- is that in her brief, the

7    Government misstated something critical as to Andrew

8    Gallegos, and that is that -- let me get that

9    particular document.  The Government stated that

10   there was substantial evidence as to Andrew Gallegos

11   as far as the VICAR conspiracy, and then as well as a

12   motive for the murder.  And they put in their brief

13   that Andrew Gallegos stated that he knew that Adrian

14   Burns was upset at him.  And in fact, that was a

15   misstatement.  And if I may direct the Court's

16   attention to page 12 of their Document 2450, and the

17   bottom of page 11 of Document 2450, wherein they say

18   that, "Andrew Gallegos stated that Burns was upset

19   with him, if they owed him money."  And, in fact,

20   when we look at Exhibit B that I tendered to the

21   Court, starting on page 40, the actual statement that

22   was made by the witness is:  "Andrew stated that he

23   did not believe Adrian was upset with him, if he owed

24   him money."

25             And the importance of that is because,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    while I don't think that -- I like it best when you
 2    say that you're going to take a hard look at
 3    something.  And I have a feeling that you're not
 4    going to say that you're going to take a hard look at
 5    this issue.  But the reason that it's relevant is, if
 6    I can get you to say that you're going to take a hard
 7    look at this issue, then the inquiry is if there was
 8    a Bruton error, and statements did come in contrary
 9    to Bruton, and a limiting instruction was not
10    requested, the next question is:  Is was it harmless
11    error?  And that's why it's important to know that --
12    a clarification on that statement, because Andrew
13    Gallegos' statements to Williamson clearly gave no
14    motive for Andrew Gallegos to participate in or
15    commit the murder of Adrian Burns.  And, therefore,
16    we do not believe that the particular error was
17    harmless.
18              THE COURT:  Well, but harmless error
19    applies to one in which, even if you're jumping up
20    and down and screaming that I'm about to commit
21    error, it can still apply, it can just be harmless
22    error.  But when we have plain error, the standard is
23    much more difficult, isn't it, than just -- I mean,
24    harmless error is always a doctrine out there.  But
25    isn't there another standard for the plain error?
```

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 843-9492                                      FAX (505) 843-9492

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1          MS. TORRACO:  Yes, Your Honor.  But I think
 2    that the standard for the plain error is the Bruton
 3    statement coming in, the statement coming in against
 4    Andrew Gallegos.  That was the plain error.
 5          And so then -- what I remember happening --
 6    I don't want this to come across like I'm saying
 7    that, you know, this was just -- it happened so fast.
 8    You know, we did this bench conference, and the Court
 9    clearly said:  There is a lot here.  We need to take
10    this slow.  And then the Court took a while, made
11    some rulings on some of the statements, and at one
12    point turned to the Government and said:  We've got
13    to take this slow.  But it didn't go slow.
14          Morgan Ramirez was on the stand.  You'll
15    recall that she was upset.  She was shaken.  I said
16    at the bench conference, I said that I thought she
17    wasn't being truthful.  But the Court commented, and
18    said, no, it's because -- the Court thought it was
19    because she was afraid of Joe Gallegos.  But the
20    statements were coming so fast.  And she was saying
21    things that were different than in the 302.  The 302
22    there is no statement, nor did we anticipate -- and I
23    don't know if the Government anticipated the
24    statement about "they" put a bag over Adrian Burns
25    head and took him out and burned him.  But that
```



SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                      201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                    1-800-669-9492
                                             e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    statement kind of came out of nowhere, rambling on

2    with her other statements about "Joe Gallegos said

3    that he shot him."  And for that reason, I think -- I

4    don't even know how it happened, Your Honor, because

5    I thought that I objected to every single statement

6    that came out.  And that was not one of the

7    statements that we addressed at the bench.  So I

8    don't know how it happened, but it came out.  And it

9    was extremely damaging.

10           THE COURT:  Well, she wasn't just sitting

11   there reading a 302.  She was being a live witness.

12   They don't always testify like the 302 is written.

13           MS. TORRACO:  No, she didn't.

14           THE COURT:  Don't you like trial work?

15           MS. TORRACO:  Yes, I love it, Your Honor.

16           THE COURT:  Just all sorts of things

17   happen, don't they?

18           MS. TORRACO:  But I'm concerned about the

19   Bruton argument.

20           THE COURT:  Well, I'm not seeing a Bruton

21   argument.  I mean, it seems to me the best you got is

22   a hearsay argument that more should have been done to

23   give limiting instruction of hearsay.  But what Joe

24   Gallegos is saying to Morgan is -- I'm not seeing a

25   Bruton problem.

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                                              Albuquerque, NM 87102
(505) 989-4949                                                                             (505) 843-9494
FAX (505) 843-9492                                                                    FAX (505) 843-9492
                                                                                           1-800-669-9492
                                                                                    e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1              MS. TORRACO:  Well, Joe Gallegos said that
 2    "they," implying Andrew, put a bag over Adrian Burns'
 3    head and burned him.
 4              THE COURT:  But that's old -- that's old
 5    days.  That's just not a confrontation problem.  It's
 6    a hearsay problem.  And maybe a limiting instruction
 7    should have been given.  But it wouldn't have been
 8    under the Constitution.  It would have been under the
 9    hearsay rules.
10              MS. TORRACO:  So since I prefer trial work,
11    and am not as eloquent in oral argument, Your Honor,
12    would you allow me just to brief this for the Court?
13              THE COURT:  Certainly.
14              MS. TORRACO:  I have other cases that I'd
15    like to cite for the Court as well, and I think I
16    could do that better in writing.
17              THE COURT:  Okay.
18              MS. TORRACO:  Thank you very much.
19              THE COURT:  Thank you, Ms. Torraco.
20              Anyone else want to join or have anything
21    to say on Ms. Torraco's motion?
22              All right.  Ms. Armijo, are you going to
23    take this?
24              MS. ARMIJO:  Yes, Your Honor, I guess I'm
25    just confused.  Is she going to submit a reply?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Because I believe that she had asked me before, and
 2   my position was that I would be opposed unless we
 3   just put it off.  But if she is going to put
 4   something new in writing, then obviously we would
 5   like a surreply.
 6              THE COURT:  I don't think she has any
 7   problem with that.  Do you, Ms. Torraco?
 8              MS. TORRACO:  No, Your Honor.
 9              THE COURT:  All right.  So that's fine.
10              Let's talk a little bit about scheduling.
11   What do y'all want to do?  Do you want to take a
12   15-minute break and come in and keep going, or do you
13   want to take our lunch break, as we did yesterday
14   now, and come back at about a quarter till?  What's
15   your preference, Ms. Armijo?
16              MS. ARMIJO:  I'd prefer that we just take a
17   15-minute break and then keep going.  Because I think
18   that, after this, we only have one more motion left,
19   and that, potentially, we could get done before
20   lunch.  Maybe I'm just being a little bit optimistic.
21              THE COURT:  What's your thoughts, Ms.
22   Harbour-Valdez?
23              MS. HARBOUR-VALDEZ:  With the Court's
24   permission, we did order lunch for our clients.  And
25   it is ready.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

127

```
 1            THE COURT:  It is ready.  Okay.  Well,
 2   let's go ahead and just take our normal lunch break,
 3   and then we'll come back at about a quarter, ten
 4   till.  We'll break then.  All right.  We'll be in
 5   recess for about an hour.
 6            (The lunch recess was held.)
 7            THE COURT:  Is Mr. Castle going to be on?
 8            MR. COOPER:  I just texted him, told him we
 9   were getting ready to start so --
10            THE COURT:  Well, I hate to ask everybody:
11   Did you invite Mr. Acee to your pizza party?  I'm
12   sorry.
13            All right.  Ms. Armijo, do you have
14   response to Mr. Gallegos' motion for a new trial?
15            MS. ARMIJO:  Well, I will say that we would
16   not be here if it wasn't for a phone call that I
17   received from Special Agent Acee back in March of
18   2015.  So I think you are right, Your Honor.
19            Your Honor, I talked to Ms. Torraco, and
20   she indicated that her reply is actually going to
21   contain her arguments.  So I will be responding to
22   her.  And so, to save everybody's time, I think,
23   unless the Court has specific questions, I will be
24   replying in writing to her arguments, because I
25   believe she's going to be making arguments -- and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

**BEAN**
**& ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    I've checked with her -- not just supplementing with

2    additional case law, but also arguing.  So I will do

3    that.

4          I will say she is correct, I did misquote

5    in my response the statement, because initially, when

6    I wrote it, I did not have the final transcript.  And

7    I looked at the real time transcript.  And the

8    real-time transcript gives a different view, it kind

9    of -- it's rough, but it makes it seem like he said

10   that he did know about it.  And so that is why, when

11   we got the real transcript in, we put it in.  And I

12   apologize to the Court that I didn't triple check it.

13   So that is what happened with that.

14          So with that, Your Honor, since we are

15   going to be doing this in writing, unless the Court

16   has anything specific --

17          THE COURT:  Well, let me ask you some sort

18   of general questions.  Are you agreeing with my

19   analysis, it looked like most of the -- the handful

20   of questions -- and it did seem to me a handful of

21   questions -- that Mr. Andrew Gallegos was relying on

22   for his motion for new trial were not testimonial

23   statements?  They fell into the category of wrestling

24   with hearsay.  And was there anything in there that

25   you thought there was -- error occurred?

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 843-9492                                               FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. ARMIJO:  No, Your Honor.  We agree with
 2      your analysis.  And I have even pointed out in the
 3      transcript, because you asked the specific question
 4      about whether or not they asked for a limiting
 5      instruction.  And on the transcript, on page 24 is
 6      where the questions start about what Ms. Ramirez says
 7      that Joe Gallegos told her.  And there is a series of
 8      about five questions that she answers.  And then it's
 9      at that point that Ms. Torraco says, "Is Mr. Gallegos
10      entitled to a limiting instruction on that
11      statement?"
12              THE COURT:  And what did I say?
13              MS. ARMIJO:  And you said yes.  The last
14      statement is --
15              THE COURT:  So I did give one on that?
16              MS. ARMIJO:  Yeah.  So the questioning
17      starts on 24, at the bottom.  And this is where she
18      says -- she being Ms. Ramirez -- "He told me one day,
19      I don't remember the exact words, if he said we shot
20      Mr. -- or shot Babylon, or if it was -- I don't
21      remember his exact words to be honest."
22              And then she goes on to say, "He said it's
23      crazy that -- that the bone in your ear could stop a
24      bullet.  I don't really know what he was talking
25      about at that time."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              And then she goes on to say, "It came up in
 2    another conversation that he was saying that when
 3    Adrian Burns got shot, that the bullet got stopped by
 4    a bone in the ear."
 5              Then Ms. Ramirez -- there is more questions
 6    by Mr. Beck.  And then she says, "He did say that he
 7    got shot in the ear.  He said, like, they shot him, I
 8    guess trying to shoot -- shoot him in the head,
 9    basically, but it got stopped by the bullet in his
10    ear -- I mean, by the bone in his ear."
11              And then the answer -- the question that
12    she then asked for a limiting instruction is:  "Where
13    did Joe Lawrence Gallegos tell you that Babylon was
14    shot?"
15              And she says, "Like where in place wise?"
16              "Right.
17              "Somewhere in his house, he -- I don't
18    know, I asked him a question one day, kind of joking,
19    but really not, about the room that was, like, added
20    onto his house, because it was like a closet, and
21    used to creep me out a lot.  So like we were talking
22    about it.  And he told me, 'Don't worry, no one has
23    actually died in here.  Someone may have been shot in
24    here, but they didn't die.'"
25              And that's the part where she initially
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    asked for a limiting instruction.  And I believe
 2    there is more limiting instructions later on.  But
 3    that's the part where there is a series of four
 4    questions.  And then I think on the fifth one is
 5    where she requests the limiting instruction.
 6              And yes, Your Honor, to answer you, we do
 7    agree with your analysis.  We agreed with your
 8    analysis back then, and we agree with your analysis
 9    today.
10              THE COURT:  So you're not seeing, in
11    looking at that, that there is anything that you're
12    going to tell the Tenth is error?
13              MS. ARMIJO:  No.
14              THE COURT:  And then if it is error, you're
15    going to argue it's harmless?  Is that --
16              MS. ARMIJO:  No.  We're not seeing any
17    error.
18              THE COURT:  No error at the present time?
19              MS. ARMIJO:  No error.  I agree, we --
20              THE COURT:  Was a limiting instruction
21    given each time it was requested?  I don't remember
22    turning one down here at the bench when we were going
23    back and forth, but --
24              MS. ARMIJO:  I don't remember you ever
25    turning one down either.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  I didn't think the Government

2    objected to any limiting instruction as to Andrew

3    Gallegos.  I don't recall any.

4          There were some at other points in the

5    trial where there was state of mind, and I allowed it

6    to come in as to everyone.  But on --

7          MS. ARMIJO:  There is one here where -- on

8    page 35 -- where -- I think we're up at the bench,

9    where you say, "I'm not going to give a limiting

10   instruction on this.  Just ask it.  I don't think

11   it's hearsay."

12         THE COURT:  And what was that related to?

13         MS. ARMIJO:  Let me go back there.  That

14   was when -- I think it's the Adrian Burns statement,

15   like, Yeah, he really does burn.  And that was the

16   statement that Joe Gallegos made about, you know, the

17   pun on his last name.  And I think that on that

18   occasion --

19         THE COURT:  Well, that can hardly be

20   offered for the truth of the matter.

21         MS. ARMIJO:  And so I think you went into

22   analysis for that.  But that's the only one that I

23   see, as I'm going through.  But anything that you

24   would have denied -- I think you did an analysis and

25   you spent some time going through the statements,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   so --
2              THE COURT:  Yeah, I think my memory is I
3   did a little James opinion on that one, on the
4   statements that were going to come in against
5   Mr. Andrew Gallegos.
6              MS. ARMIJO:  Correct.
7              THE COURT:  All right.  Anything further on
8   this motion?
9              MS. ARMIJO:  No, Your Honor.  Thank you.
10             THE COURT:  Any other defendant have any
11  responses before I hear from Ms. Torraco?
12             All right.  Ms. Torraco, do you have
13  anything further on your motion?
14             MS. TORRACO:  No, Your Honor.  Thank you.
15             THE COURT:  Well, I'll take a look at it
16  and I'll go through, and I'll wait for your reply and
17  maybe the Government's surreply.  But I don't
18  think -- and I didn't think at the time -- there was
19  any confrontation problem.  We just had to be careful
20  with the rules of hearsay.  And I thought we handled
21  those with, my instructions well.  You know, I made a
22  decision pretrial that if I were going to try people
23  together, I could rely on limiting instructions.  And
24  we'll see if that holds up at the Tenth.  I assume
25  that's going to be an issue that somebody might raise
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

134

1    with them.  And if they do, that's something that

2    they'll have to wrestle with.  But I think, given the

3    structure that I put in place going into trial, I

4    think it worked pretty well for your clients.  I'll

5    take a look at it.  But I'm inclined to deny the

6    motion, at least on a review that we've done so far.

7            All right.  Let's see, we now go to -- was

8    that motion 8?  So I'm going to motion 9, which is --

9            THE CLERK:  No, that was 9.  I think that

10   was Andrew Gallegos'.

11           THE COURT:  Was that motion 9.  Did we

12   cover the Gallegos' joint motion?  Did we skip one?

13           MR. BENJAMIN:  Yes, Your Honor.

14           THE COURT:  Okay.  I'm sorry, so we need to

15   take --

16           MR. BENJAMIN:  And I don't know if we

17   skipped it, Your Honor, because I don't know what the

18   final order was.

19           THE CLERK:  It was just out of order.

20           THE COURT:  I did take it out of order.

21   And I apologize.

22           THE CLERK:  It's number 8.

23           THE COURT:  I think the Gallegoses together

24   had the joint motion, which is 8, which you're about

25   to argue, which I think puts you up to 9 for Andrew

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Gallegos'.
 2            All right.  Mr. Benjamin.
 3            MR. BENJAMIN:  If it makes the Court feel
 4   better, Your Honor, I think there was error in this.
 5
 6            THE COURT:  In the what?
 7            MR. BENJAMIN:  I was just responding to the
 8   Court's last question.
 9            Your Honor, my reply for Counts 4 and 5 --
10   and that is what the Court noted is a joint motion,
11   was Document 2467, the Government's, their response
12   was 2452, and my original motion was Doc 2415.  And I
13   think I probably did that backwards.  I apologize.
14            And their response, I thought was extremely
15   interesting, Your Honor, because their response --
16   and I made a chart out of this -- had a statement
17   that could only have been offered for the truth, and
18   then a statement that was not offered for the truth.
19   And that statement is cut out of the testimony -- was
20   uniquely, not word for word -- but it was the same
21   statement.  It's the statement that was, for lack of
22   a better term led -- Ms. Amber Sutton was led on --
23   and it was to tell Joe Gallegos to quit being a bitch
24   and pay his debt, or to tell Joe Gallegos if he
25   doesn't have my money to stop being a bitch and give
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  me a call.  And that statement, I think, fulfills
2  what the Court said -- or doesn't fulfill what the
3  Court said the Government was going to have to do in
4  Document 1950, which was, at the end of the week of
5  hearings before trial, in March of 2018, that the
6  Government was going to have to prove that for -- one
7  of two things -- the second one is what they were
8  going to try and prove, the purpose of gaining or
9  increasing membership in the SNM, some evidence from
10  which the jury could find that this was done on
11  behalf of the SNM.
12            And I need to go back to May 10, 2017.  And
13  that was our omnibus hearings, where I was requesting
14  a copy of the transcripts for Counts 4 and 5.  And
15  that started with me guessing as to what they were
16  going to show.  And not ever being told that, but
17  ultimately ending with a promise by the Government
18  that:  We're going to show something.  The Court may
19  remember that was where I started with -- there was a
20  statement that had been produced early on that Roy
21  Martinez talked about Joe Gallegos killing Adrian
22  Burns on a wire, essentially on a wiretapped
23  conversation.  That was retracted by the Government
24  March 9th of 2017.  And just for the record, in
25  Document 21822.  But we never got any further

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   clarification on how we were going to do this.  And
 2   the Government, Ms. Armijo in that motions hearing
 3   said:  We're going to do it, we're going to do it.
 4              And we didn't find out until April 3, 2018,
 5   that Amber Sutton was going to parrot a statement
 6   that she supposedly overheard Daniel Orndorf told by
 7   Adrian Burns.  And this is the statement that
 8   occurred at Walmart.  The tell Joe to stop being a
 9   bitch and call me statement that was referenced in my
10   motion, their response, and my reply.
11              And that -- I think there is multiple
12   arguments.  The first of which is the Court did
13   provide a limiting instruction.  And so we're there.
14   But I don't think that suffices for several reasons.
15   The first being that a statement can't be offered for
16   the truth and not offered for the truth at the same
17   time.  And that's exactly what the Government
18   outlines in its response that statement was for.  If
19   it was offered to prove disrespect, as is in the very
20   beginning portion of their motion, Document 2452,
21   page 6, showing that Joe Gallegos was disrespected,
22   and therefore, was doing this on behalf of the SNM,
23   that's being offered for the truth.  That's the only
24   thing that can be offered for, is that Joe was
25   disrespected.  There is not any way that that can't
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    be.

2           And so this is different than, essentially,

3    what the Court analyzed in Skyline Potato versus

4    Highland Potato, 2013 Westlaw 311846, where "The

5    testimony is not hearsay when it's offered only to

6    prove that the statement was made."

7           This wasn't offered to prove that Adrian

8    had a statement with Daniel.  This was offered to

9    show that Joe Gallegos was being disrespected by

10   Adrian Burns.  And so Amber Sutton's parroting of

11   Adrian Burns' statement that was made to Daniel

12   Orndorff required the content or the truth of the

13   matter, which was the disrespect.  That was objected

14   to.  We had a long conference at the bench, and

15   actually there was a motion in limine prior to that

16   even starting, and the Court provided a limiting

17   instruction.  And Mr. Castellano came back and said,

18   Well, it's not hearsay because it's a command.

19           I don't think -- I objected at the time.  I

20   think the transcript reflects that.  And I don't

21   think that holds true, even after the long review

22   that I've done of this.  Because the command, if any,

23   was directed at Daniel Orndorf.  It was not directed

24   at Joe Gallegos.  The disrespect is what the

25   Government all along has said was directed at

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Mr. Gallegos.  So it's not a command, or the only

2     command could have been "call me."  It was the

3     disrespect portion, which was "stop being a bitch,"

4     which I think is an insult, disrespect, or anything

5     else.

6            THE COURT:  But how can that be hearsay?  I

7     mean, that --

8            MR. BENJAMIN:  It's an out-of-court

9     statement to prove that Joe Gallegos is being a

10    bitch, Your Honor, respectfully.  That's the only way

11    that I think that comes in.  It's disrespectful.  And

12    that's what the Government relied on; that that

13    statement has to carry some weight.  I hope I'm

14    making sense, Your Honor.  But that's the idea that,

15    if that statement is meaningless, there is no

16    evidence of the SNM increasing or maintaining

17    membership.  If that statement carries weight, and is

18    disrespect, then it has to be for the truth of the

19    matter.

20            So I don't think that that statement is a

21    command under U.S. v. Oguns, 921 F.2d 442.  I don't

22    think this is new case law.  I think this is the case

23    law that we were talking about.  Specifically, in

24    that case, Your Honor, they were talking about

25    hearsay and nonhearsay statements.  They were a drug

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    conspiracy case:  Individual calls the residence and
 2    the agent picks up the phone and the question is:
 3    "Have the apples arrived?"  Well, that was offered
 4    for circumstantial evidence that they were trying to
 5    have coded transactions.  But this is not what we're
 6    doing with the statement of "stop being a bitch."
 7    That is content-necessary.  And so the call regarding
 8    the apples, whether it's a question, a statement, or
 9    a declaration, or different words that the Court
10    used, is solely the existence of an act.
11             What's important here is the interaction
12    that Adrian Burns had at Walmart with Daniel Orndorf,
13    who, as the Court will recall, was not called to
14    testify -- and I think the Government represented
15    that he was wanted was the main reason.  But that
16    interaction at Walmart between Adrian and Daniel is
17    content-necessary.
18             And so, I think that two things:  One, the
19    statement can't be both hearsay and nonhearsay.  But,
20    two, after reviewing this, Your Honor, I think I have
21    to stand by the confrontation request, which is that
22    statement, the admission of that statement prevented
23    me from confronting Adrian Burns on that statement
24    that goes to the heart of the matter.
25             And I think that the Government -- and they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    can disagree with me, Your Honor -- but their

2    response doesn't show that there was any other

3    statement that linked that VICAR murder to a federal

4    jurisdiction.  And the Court provided a long,

5    detailed opinion in Document 1950 right before trial.

6    But I don't think they got there, Your Honor.  And

7    so, respectfully --

8               THE COURT:  Got there on the nexus?

9               MR. BENJAMIN:  Correct.

10              And one of the things I pointed out is some

11   of the statements, for instance, that Ms. Torraco is

12   having issues with I think are very prejudicial.

13   They don't help the Government at all.  The fact that

14   Morgan may have testified that Joe said that he shot

15   somebody in the head, that doesn't help them at all

16   on this question of whether or not that is a VICAR

17   murder.  That goes to whether or not there is a

18   murder.  But there is no nexus in the statement, "I

19   shot Adrian Burns" or "Adrian Burns really does

20   burn," or the statement that was brought up about

21   Andrew and Billy Cordova.  None of those

22   statements -- and I said that in my reply, Your

23   Honor -- connect this to the SNM or any -- in the

24   Court's word, "nexus."

25              So I do feel like the Court was correct,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   I'm essentially arguing to a court of appeals, I
 2   think, but the Court made its ruling, and I'm asking
 3   it to review that.
 4              THE COURT:  Isn't your argument on nexus
 5   ultimately a sufficiency of the evidence on this
 6   particular point, it's a sufficiency of the evidence?
 7   I gave a pretrial ruling and I said:  Here's the
 8   line.  You've got to get it across, Government.  And
 9   so the question is the more that the Government is
10   pointing to, is that sufficient evidence?  Isn't it
11   kind of a sufficiency of the evidence?
12              MR. BENJAMIN:  No, Your Honor, not at all,
13   because the line -- it's 4th and inches, and the
14   Government had to get the ball across the line.  And
15   the Government says that the statement that comes in,
16   "tell Joe to stop being a bitch and call me," that is
17   the only thing, for lack of a better term, we get
18   into a rule that I've never understood which is, I
19   think it's any part of the football, but much of the
20   football needs to get across that line.
21              And so that's where we're at.  This is the
22   only statement that does that, or comes close to
23   doing that.
24              So no, Your Honor, I disagree with
25   sufficiency.  I think this is either in or out.  And
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    it's either done or not done.
 2              THE COURT:  All right.  Anything else on
 3    your motion, Mr. Benjamin?
 4              MR. BENJAMIN:  No, Your Honor.
 5              THE COURT:  All right.  Thank you,
 6    Mr. Benjamin.
 7              Anybody else want to argue in support?
 8              Ms. Torraco.
 9              MS. TORRACO:  I don't want to argue, Your
10    Honor, but I want to bring the Court's attention that
11    we joined in writing on this motion.
12              THE COURT:  All right.  Anyone else have
13    anything on the defense side to say on this issue?
14              All right.  Mr. Armijo.
15              MS. ARMIJO:  Your Honor, I'm going to put
16    up on the Elmo -- and I'm referring to -- I believe
17    it was Ms. Torraco's exhibit from the last one --
18    it's Morgan Ramirez's testimony.  And this is why you
19    can't just take one statement at point.  Because the
20    statement about "tell him to" --
21              MR. BENJAMIN:  What page?
22              MS. ARMIJO:  I'm on 28 of the transcript.
23              THE COURT:  Tell him to call me, right?
24              MS. ARMIJO:  Yeah, where he said, "Tell him
25    to quit being a bitch and to call me."  That
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   statement.  It's not being offered to show whether or

2   not Joe Gallegos is a bitch or not.

3          THE COURT:  Well, that's the problem I'm

4   having with it being a hearsay statement.

5          MS. ARMIJO:  And Daniel Orndorf could have

6   said:  Tell Joe Gallegos to quit being a little girl.

7   We're not offering that to prove that he's a little

8   girl.  I mean, clearly he's a man.  So we were not

9   offering it to show that he was a bitch.  We were

10   offering it to show the impact that it had on him.

11          And how we know that it had an impact on

12   him is where Morgan Ramirez testified that he told

13   her, "Because motherfuckers with big mouths, that's

14   what happened.  That he didn't get robbed and that he

15   died with all of his money."  And so that is

16   something that we used into showing that.

17          And then it goes on talking about that.

18   But that's why that statement is important, because

19   we have -- the statement about him being a little

20   bitch was offered to show, one, it was a command, and

21   two, the impact that it had on Joe Gallegos.  It

22   provides a motive for the murder.  And we see that

23   years later when he tells Morgan Ramirez that it

24   wasn't a robbery; that at least for his motive it was

25   "because motherfuckers with big mouths and that's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   what happens."  And so we do have the connection
 2   there.
 3            I know that I do agree with the Court that
 4   I think the argument that Mr. Benjamin is trying to
 5   make is a sufficiency --
 6            THE COURT:  What you're saying is you have
 7   other evidence besides this.  I mean, he's attacking
 8   this, and saying if he wins here, you've got nothing
 9   else.  But your argument is this was good evidence,
10   it should have come in, and --
11            MS. ARMIJO:  Correct.
12            THE COURT:  -- and it wasn't -- and you've
13   got other stuff, right?
14            MS. ARMIJO:  Correct.  I mean, I think
15   that's it.  I mean, I think they're very upset about
16   the statement that came in.  And I think it was never
17   a secret that our whole theory, even from opening
18   statement to well before, when they asked what our
19   theory was, was about disrespect, and about the
20   impact that it had, and all of that.
21            So I think that there was a great deal
22   more.  Certainly, there was a great deal about
23   respect of the SNM at the trial.  And I laid that out
24   in our response.  But also, as you may recall with
25   Andrew Gallegos and his statement from -- to Billy
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Cordova, it was about the bulldogging of the drugs,

2    basically.  And I laid that out.  So we also have

3    that they were -- the drug aspect of the murder as

4    well, and that's referenced as well.

5             So we have two different theories, I think,

6    that we ultimately went on, which was it was the

7    bulldogging and the disrespect as far as a motive

8    being strong for SNM.  In addition to, there was

9    significant evidence as to the Gallegos brothers and

10   SNM, apart from these people, you know, with Andrew

11   Gallegos -- speaking off the top of my head, I know

12   Ms. Baldizan came in and testified.  We had jail

13   calls.  We had letters.  We had several people come

14   in and talk about their ties to the SNM.

15             So you can't just take one statement out

16   and say that there is no tie, and that we just didn't

17   make that nexus, when, in fact, there was a great

18   deal of testimony about a member being disrespected

19   from the SNM.  And we connected the ties as to Joe

20   and Andrew both and the SNM, and showed it.

21             And I can still remember Mr. Benjamin going

22   up to jurors after the verdict in this case and just

23   telling them:  I can't believe you found my client

24   guilty.  What was your nexus?

25             And the foreman even was telling him:  What

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   do you mean?  There was plenty of evidence.  So

 2   clearly the jury had no problems with this.  And we

 3   know that it was a very -- the jury in this case

 4   acquitted him on other counts.  So it wasn't like

 5   there is just a broad sweeping, yeah, Gallegos is

 6   charged with two murders and other things, let's just

 7   find him guilty of everything, because they acquitted

 8   him on other contact, which we had telephone calls

 9   on, too.

10            So I think the verdict should stand in this

11   case.  There was plenty of evidence in this case.

12   And the Court made the correct ruling at the time on

13   these statements coming in.  And we don't disagree

14   with the Court.  We're not going to disagree with the

15   Court on appeal.

16            THE COURT:  All right.  Anything else,

17   Ms. Armijo?

18            MS. ARMIJO:  No, Your Honor.  Thank you.

19            THE COURT:  Any other defendant before Mr.

20   Benjamin argues?

21            All right.  Mr. Benjamin, do you have

22   rebuttal?

23            MR. BENJAMIN:  And, Your Honor, the phrase

24   I'm going to have to agree to disagree with the

25   Government, I think comes to mind here, because I

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 843-9492                                             FAX (505) 843-9492
                                                                 1-800-669-9492
                        BEAN                               e-mail: info@litsupport.com
                        &ASSOCIATES, Inc.
                        PROFESSIONAL COURT
                        REPORTING SERVICE

1  think she made some better points than I could hope

2  to.  Because she talks about a great deal of

3  evidence, but she has done a very good job of not

4  pointing any of that out.  Because the theory that

5  anything Joe does bad is related to the SNM, I think,

6  is overarchingly broad and doesn't work.

7         But she listed off several words that I

8  think are very important.  The statement about --

9  that Adrian Burns made was offered for impact, was

10  offered for motive.  Neither one of those gets them

11  there.  The statement about bulldogging for drugs, I

12  don't understand how a pure and simple theft becomes

13  an SNM crime.  That's not -- they didn't charge

14  bulldogging or that.  They charged increasing or

15  enhancing -- I'm screwing up the words -- but the

16  indictment language is very specific in relation to

17  the enterprise.

18         So with the absence of any enterprise

19  evidence, what we're left with is the adage that I

20  remember the first day of criminal law in law school:

21  "If there is a body, somebody is going to jail."

22         Mr. Gallegos was acquitted on Counts 14 --

23  I apologize, it was 13 through 16 -- and that was

24  where a live witness testified.  But there was not a

25  burned body that they flashed up there multiple times

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   saying:  This is bad; this is bad; this is bad.  And
2   Ms. Armijo's recitation of what I remember happening
3   in the jury room is what they said.  They said that
4   there was just -- there was a body, is kind of what I
5   remember getting out of that.
6           And so I asked; I haven't received.  In May
7   of 2017, I asked again; I haven't received.  So, as I
8   said, I think we respectfully just need to disagree
9   that there is any evidence that connects them to the
10  nexus.
11          So I appreciate that, Your Honor.
12          THE COURT:  All right.  Thank you, Mr.
13  Benjamin.
14          Well, I still think I've got the
15  evidentiary call correct there.  I don't think it's a
16  hearsay statement.  I think it is commands.  And so I
17  don't think there is hearsay in there.  So I think
18  that came in.  But I know, when I wrote the pretrial
19  opinion on this, I was concerned, given what I was
20  hearing from the Government, about the nexus issue.
21  That's one reason I wrote the opinion.  I wanted to
22  draw a line so that the Government knew what they had
23  to cross.  I wanted you to know that I was taking
24  seriously the nexus argument.  And I also wanted to
25  hold my feet to the fire.  If they didn't cross that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    line, I wanted to tell myself, Okay, I've already

2    promised you I'm going to dismiss it.

3          I thought there was other evidence that

4    came in through the trial.  And I was listening

5    carefully to it because of the Gallegoses'

6    connections with SNM.  And so I listened to that.  I

7    thought there was some more and sufficient evidence

8    for it to go to the jury.

9          And so I'm inclined -- I'll relook at it.

10   I'll bottom out on the evidentiary issue, if I didn't

11   at trial.  But I'm inclined to think I got that

12   right.  And I'm inclined to think that, as the trial

13   developed, there was more evidence than what I knew

14   about pretrial.  And I thought they got it across the

15   line.

16         MR. BENJAMIN:  Thank you, Your Honor.

17         Respectfully, may I ask one more question,

18   Your Honor?

19         THE COURT:  Certainly.

20         MR. BENJAMIN:  And the Court has done a

21   very good job of articulating a lot of different

22   things at different times.  Would the Court -- and

23   this is just a request from counsel, Your Honor --

24   would the Court consider telling us what or how they

25   got across the line?  And I'm not asking the Court on

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                       (505) 843-9494
FAX (505) 843-9492                              FAX (505) 843-9492
                                                    1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                  e-mail: info@litsupport.com

1    the spot now.  I'm saying later in this motion -- or

2    in its order.

3             THE COURT:  I'll try.  It may be that I'm

4    going to need a little help from the Government to

5    refresh my memory as to the circumstances that were

6    there.  But there was some evidence -- I think

7    Mr. Castellano brought it out with some witnesses --

8    that I had not heard pretrial.  And so I may need a

9    little assistance from the Government to refresh my

10   memory as to what evidence they had that they did not

11   show, or maybe even didn't have pretrial, that I was

12   wrestling with when I did that memo.  But I'll try to

13   do that.  I'll do it the best I can from a review of

14   the transcript.

15            MR. BENJAMIN:  Thank you, Your Honor.

16            THE COURT:  All right.  So I guess we've

17   got one more motion left.  And this is also, I think

18   yours, Mr. Benjamin, if I'm not mistaken.  This is

19   the Rule 29 motion.  Or have we taken care of that?

20            MS. ARMIJO:  I think he did that earlier,

21   Your Honor.

22            MR. BENJAMIN:  That was --

23            THE COURT:  That was the one we argued

24   with --

25            MR. BENJAMIN:  I don't want to bore the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    Court for another 15 minutes.  I'm done, Your Honor.
 2            THE COURT:  That's the one we argued with
 3    Mr. Burke, right?
 4            MR. BENJAMIN:  Yes, Your Honor.  Unless
 5    Ms. Armijo wants me to go again.
 6            MS. ARMIJO:  Okay.
 7            THE COURT:  Well, are we done?  We don't
 8    have -- I know I need some exhibits from Mr. Lowry.
 9            MR. LOWRY:  Yes, Your Honor.
10            MS. ARMIJO:  And I just wanted to put on
11    the record, Your Honor, that I know there was an
12    issue on the very first motion with Mr. Castle about
13    when we disclosed an item.  And I told him yesterday
14    that we had disclosed it February 6th of 2018.  So
15    just to put that on the record, that was kind of
16    hanging out there.  He wanted to put something in
17    writing saying he had not ever received it before.
18    And we actually had supplied it and gave him the date
19    that we supplied it.
20            MR. COOPER:  And that document --
21            MR. CASTLE:  Judge, can I be heard on that?
22            THE CLERK:  Mr. Castle is on the phone,
23    Judge.
24            THE COURT:  Let's get Mr. Castle, because
25    it's just hard for people on the phone to break in.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              Mr. Castle.
2              MR. CASTLE:  Yes, Your Honor.  The
3    testimony was that Agent Acee, after the first wave
4    of the arrests in this case, in the year 2016,
5    conducted a recorded interview of Leroy Lucero --
6    part of it was recorded, part of it was not -- in
7    which, among other things, Mr. Lucero talked about
8    having -- not wanting to be charged in the RICO.  I
9    do not believe that we received anything from 2016,
10   or 2017, for that matter.  We had a gap between the
11   year of 2012 and 2018.
12             The prosecution identified a document from
13   February 6th of 2018, which said -- essentially a
14   cover letter for discovery.  And we have reviewed
15   those tapes and those reports.  Those are all
16   concerning an interview that Mr. Lucero made, I
17   believe, on January 17, 2018.  It was in January of
18   2018.  So it did not contain a reference or
19   information concerning any 2016 interview with Mr.
20   Lucero.
21             And so we argued -- I will send
22   documentation in to the Court concerning that, and a
23   request that that be ordered to be produced as a --
24   under the Jencks Act.
25             So I think that Ms. Armijo is mistaken -- I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    know she's mistaken -- that that letter in February
 2    identified anything -- any statement that Mr. Lucero
 3    made in 2016.
 4                THE COURT:  All right.
 5                MS. ARMIJO:  I don't think that there is
 6    going to be anything else to produce.  If there is an
 7    issue as to any other statements, it's just that we
 8    had the wrong date.  My understanding is what was
 9    produced is all that we have.  There isn't another
10    outstanding statement out there.  But certainly, I
11    can work with Mr. Castle to make sure he has
12    everything.  But I don't think there is anything left
13    to be disclosed.  And I will work with him.
14                THE COURT:  All right.
15                MR. CASTLE:  Judge, just to put on the
16    record, I believe there is.  And the reason is that,
17    in 2016, Mr. Lucero was arrested on a probation
18    violation for matters which often are considered
19    technical:  Urinalysis.  That was one of the tactics
20    the FBI used in their matters in which to try to get
21    cooperation of individuals who were SNM members.  Mr.
22    Lucero, it turns out -- we reviewed the transcripts
23    last night -- in 2017 -- in which it was indicated
24    that Agent Acee, in 2017, before Your Honor at
25    sentencing, was ready and able to take the stand and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    testify that Mr. Lucero's life was in danger because

2    of his cooperation.

3         So it's pretty clear there was some

4    communications and statements made in 2016, and

5    perhaps continuing in 2017.  So those are the 302s

6    that we need to have produced.  And certainly there

7    was at least information during that, in which Mr.

8    Lucero indicated he was afraid of being charged in

9    the RICO after the first wave of indictments.

10        The Court is aware that the indictments

11   before this Court right now was from December of

12   2015, which was considerably before the 2018

13   statements that we were provided.

14        And so I believe they do need to redouble

15   their efforts, because it was testified very clearly

16   yesterday that it was a recorded interview, or part

17   of it was recorded, and that it was done after the

18   first wave of indictments.

19        So I will go ahead and file a written

20   motion to that effect, but there was no hesitation in

21   the testimony yesterday to the temporal portion of

22   when that interview was conducted.

23        THE COURT:  Anything else on that,

24   Ms. Armijo?

25        MS. ARMIJO:  No, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

156

1           THE COURT:  Anybody else have anything on

2     that?

3           All right.  Mr. Lowry, you have some

4     documents to give me?

5           MR. LOWRY:  Well, your Honor, the Court is

6     in possession of them.  I just wanted to clear up the

7     record.  In going through the exhibit list with

8     Ms. Bevel earlier this morning, I just -- when we're

9     doing our housekeeping at the beginning of this

10    motion, I neglected to move in evidence the exhibits

11    that were attached to the reply brief.  And I've

12    consulted with Ms. Armijo, and I don't think there is

13    any opposition to that.

14          THE COURT:  Can you put those on the

15    record, or --

16          MR. LOWRY:  Yes, Your Honor, I can.

17    Defendant's Exhibit O would have been the Prisoner

18    Location History for Anthony Ray Baca.

19          THE COURT:  All right.  Any objection,

20    Ms. Armijo?

21          MS. ARMIJO:  No, Your Honor.

22          THE COURT:  Any other defendant?

23          All right.  Not hearing or seeing any,

24    Baca's Exhibit O will be admitted for purposes of his

25    Document 2421.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1                (Defendant Baca Exhibit O admitted.)
 2                MR. LOWRY:  Exhibit P is a partial
 3     transcript of the Lupe Urquizo testimony that was
 4     quoted and cited in the reply brief.
 5                THE COURT:  Any objection, Ms. Armijo?
 6                MS. ARMIJO:  No, Your Honor.
 7                THE COURT:  How about from any other
 8     defendant?
 9                Not hearing or seeing any, Baca Exhibit P
10     will be admitted into evidence for purposes of his
11     new trial motion 2421.
12                (Defendant Baca Exhibit P admitted.)
13                MR. LOWRY:  Your Honor, I'd move in Q, R,
14     and S.  These are three audio files of telephone
15     jailhouse recordings between Lupe Urquizo and various
16     friends and family members regarding his viewing of
17     the tablets.
18                THE COURT:  All right.  Any objection to
19     those, Ms. Armijo?
20                MS. ARMIJO:  Are they full transcripts or
21     audios?
22                MR. LOWRY:  They are full audio, the
23     jailhouse recordings.
24                MS. ARMIJO:  I thought you said
25     transcripts.  No objection.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  All right.  Anybody else have

2   any objection?

3          Not seeing or hearing any, Baca's Exhibits

4   Q, R, and S will be admitted for purposes of his new

5   trial motion, 2421.

6          (Defendant Baca Exhibits Q, R, S admitted.)

7          MR. LOWRY:  And, Your Honor, the final one

8   would be Baca Exhibit T.

9          THE COURT:  Any objection, Ms. Armijo?

10          MS. ARMIJO:  No, Your Honor.

11          THE COURT:  All right.  Not hearing or

12   seeing any, Baca Exhibit T will be admitted for his

13   new trial motion.

14          (Defendant Baca Exhibit T admitted.)

15          MR. LOWRY:  And, Your Honor, you should

16   have a complete set of Defense Exhibits A through FF,

17   with the exception of Exhibit W, which was a

18   duplicate of Exhibit I, which we struck.  So we

19   skipped Exhibit W, Your Honor.

20          THE COURT:  All right.  So I have -- I

21   think I have all those.

22          All right.  Anybody else have anything?

23   Mr. Davidson?

24          MR. DAVIDSON:  Just for the record, Your

25   Honor, if I may, Defendant Arturo Garcia joins Mr.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                            FAX (505) 843-9492
                                                                        1-800-669-9492
                                                            e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   Herrera's motion for a new trial, Document 2413, and

2   Mr. Troup's motion for new trial, Document 2420.  I

3   don't believe we previously indicated anything about

4   that.  If you'd like me to file a notice for the

5   record, I could do that.

6          THE COURT:  Well, I'm not requiring it, but

7   if it is convenient, it will help me; I know I'll

8   catch it and put that into the opinion.  But I don't

9   want to make you do a bunch of work.  And probably

10   I'll pick it up by reviewing this transcript.  But it

11   does help.

12          Anybody else have anything else we need to

13   cover with these motions?

14          Well, let me say this:  As I read the

15   motions, I wasn't seeing that I was probably going to

16   grant any new trials or grant any acquittals as I

17   went through them.  I'm not convinced, leaving here

18   today, that I'm going to do that.  I will work and

19   give you opinions, and work through it.  There is

20   some stuff that's new here that I haven't thought

21   much more than in preparation for the hearing, and

22   being at the hearing.  But I'm not seeing anything

23   that gives me a sense that fundamentally new trials

24   or convictions need to be set aside.  So I think we

25   need to take that into account, that I'm leaving here

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    not thinking I'm going to grant any of the motions.

2            In some of the -- I don't want to give away

3    too much here, but in some of the CJA letters and

4    stuff I received, I think I am holding the show up,

5    because people are not being sentenced, as far as

6    cooperators, because of the Government waiting to see

7    what I'm going to do with new trial motions; maybe

8    the same way for the men that have been convicted in

9    the two DeLeon trials.  I'm not telling y'all what to

10   do, but I'm saying this because it makes sense to me

11   that maybe we go ahead and start moving forward on

12   those things.

13           I know I have been out-of-pocket.  I don't

14   know if everybody in this room knows I've -- when I

15   got done with Mr. Cordova's trial in July, I went

16   into a 21-day trial.  And that actually, if you think

17   about it, that's about a five-week trial.  It drifted

18   over.  Plus, I've done two jury trials since then.

19   So the last two weeks I've just completed two trials,

20   so I had two going on at the same time.  So I know

21   that part of the problem has been my scheduling.  I

22   just simply haven't had days to devote to it.  But

23   that should clear up a little bit.  A trial that I

24   had in January for two weeks, the defendant pled.  So

25   I'm probably going to start filling it.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1         But I think we can move forward with

2    sentencings.  If I change my mind -- if I think that

3    I'm going to be doing something -- and I don't plan

4    to stop working on this; I plan to continue to plow

5    ahead, because I think I'm not giving everybody

6    comfort in proceeding to sentencing.  And so I'm

7    going to continue to work on opinions, and try to

8    crank those out so that you can get assured that I'm

9    not changing my mind, and I'm going to proceed to

10   sentencing.  Perhaps that will give everybody some

11   comfort to go ahead and set those sentencings up and

12   get them done.  And I will continue to try to work to

13   get the opinions out, to give you even more comfort

14   as we go along.

15         There was something else related to that I

16   wanted to say.  But in any case, if I run into a bump

17   in the road, I'll alert you, so that if people need

18   to adjust on the sentencings, they can.

19         One reason I also encourage you to go ahead

20   and let's set the sentencings, let's move them

21   forward, is because it will keep my feet to the fire.

22   If we start moving those sentences, or we don't set

23   them, other things come up, and I start, you know,

24   sort of dealing with the most immediate thing, the

25   thing that's right in my face that I have to deal

SANTA FE OFFICE                                                            MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 843-9492                                              FAX (505) 843-9492

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

```
 1   with.  And if you're right in my face, and you're the

 2   next thing, chances are I'm going to get your

 3   opinions and rulings out before I see you again.

 4            All right.  Let me again express my

 5   appreciation to everybody.  It's probably the last

 6   time we're all going to get together in this case.

 7   And let me express my appreciation for everybody's

 8   hard work and good nature, and you were a good bunch

 9   to work with.  You'll certainly always be something

10   I'll remember, and I appreciate everybody's courtesy

11   and respect for the Court and everything you did.  So

12   I appreciate everything everybody did for the Court.

13            Is there anything else we need to discuss

14   while we're together?  Anything else I can do for

15   you?  Ms. Armijo?  Mr. Castellano?

16            MS. ARMIJO:  Your Honor, just along those

17   lines, I know that you want to move forward with the

18   sentencings.  I think we still have a couple of

19   briefs out there.  Are we going to put, like a time

20   limit when we get the initial one, so that then we're

21   not just kind of waiting to see if one is going to be

22   filed or not?

23            THE COURT:  I know we're looking for one

24   from Ms. Torraco.

25            MS. ARMIJO:  Torraco, and Mr. Lowry, and
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1    Mr. --
 2              THE COURT:  When do you think you may have
 3    that ready, Ms. Torraco?
 4              MS. TORRACO:  I think that depends on
 5    Christmas.  Will you give me some grace for Christmas
 6    and let it be due in January?
 7              THE COURT:  Why don't you propose a
 8    deadline for yourself?
 9              MS. TORRACO:  January 15.
10              THE COURT:  Does that work for you?
11    January 15?
12              MS. ARMIJO:  Yes, that's fine.
13              THE COURT:  All right.  Who else was going
14    to -- Mr. Lowry.
15              MR. LOWRY:  I was considering January 4,
16    Your Honor.
17              THE COURT:  All right.
18              MR. LOWRY:  I was sensitive to Ms. Armijo's
19    trial coming up.
20              MS. ARMIJO:  I think have a trial the 8th,
21    so I'll probably need maybe a little bit additional
22    time.  But that's fine.
23              THE COURT:  All right.  Was there somebody
24    else that was going to submit anything additionally?
25              MR. COOPER:  Probably Mr. Castle.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Mr. Castle.  What do you want
 2   to propose as your deadline, Mr. Castle?
 3              MR. CASTLE:  Hold on.  There, I got off
 4   mute, I think.
 5              I was hoping to look at the transcript, and
 6   make sure I have all of what Agent Acee said down
 7   correctly.  I don't know if we could just get his
 8   transcript somehow expedited.  And I wouldn't need
 9   much time after I received that to be able to file my
10   motion.
11              THE COURT:  All right.  Do you want to
12   propose a date?  If we have to move it, we can.  But
13   do you want to propose a hard deadline?
14              MR. CASTLE:  Could we inquire of Ms. Bean
15   what she thinks it might take?
16              THE REPORTER:  I think it's already been
17   ordered expedited, right?
18              THE COURT:  Okay.  So she's thinking she
19   can get it to you in seven days.
20              MR. CASTLE:  Then can I have till the
21   1st -- well, January 2nd, Your Honor?
22              THE COURT:  Does that work for you,
23   Ms. Armijo?
24              MS. ARMIJO:  Yes, Your Honor.
25              THE COURT:  All right.  So January 2.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              Anybody else you want deadlines for,
 2    Ms. Armijo?
 3              MS. ARMIJO:  No, Your Honor, that's it.  I
 4    just wanted to make sure.  If people need additional
 5    time during the holidays, that's fine, I just wanted
 6    to make sure that we weren't in March still waiting
 7    for something.
 8              THE COURT:  All right.  Anything else that
 9    we need to discuss?  Anything else I can do for you,
10    Ms. Armijo?
11              MS. ARMIJO:  No, Your Honor.  Thank you.
12              THE COURT:  How about for the defendants?
13    Anyone else?  Anything else we need to discuss?
14    Anything else I can do for you?  Mr. Castle?
15    Mr. Cooper?  Anybody?
16              MR. COOPER:  No, Your Honor.  And thank
17    you --
18              MR. CASTLE:  No, Your Honor.
19              MR. COOPER:  And thank you for all that
20    you've done in these trials.  And we appreciate
21    everything you've done as well.
22              THE COURT:  All right.  I appreciate it.  I
23    appreciate your hard work.  I'll probably see the
24    Government fairly frequently; see you gentlemen here
25    when we get your sentencings set up.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           Everybody have good holidays.  Be safe.

2    Thank you for being here this week.  I appreciate

3    everybody kind of pushing everything and getting it

4    done.

5           All right.  Y'all have a good one.  Good to

6    see you.

7           (The Court was adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 843-9492




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                    C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES OF AMERICA

4    DISTRICT OF NEW MEXICO

5

6

7         I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

8    Official Court Reporter for the State of New Mexico,

9    do hereby certify that the foregoing pages constitute

10   a true transcript of proceedings had before the said

11   Court, held in the District of New Mexico, in the

12   matter therein stated.

13        In testimony whereof, I have hereunto set my

14   hand on December 22, 2018.

15

16

17

18    _____
                          Jennifer Bean, FAPR, RMR-RDR-CCR
19                        Certified Realtime Reporter
                          United States Court Reporter
20                        NM CCR #94
                          333 Lomas, Northwest
21                        Albuquerque, New Mexico 87102
                          Phone:   (505) 348-2283
22                        Fax:     (505) 843-9492

23

24

25

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                     201 Third NW, Suite 1630
Santa Fe, NM 87501                              Albuquerque, NM 87102
(505) 989-4949                                         (505) 843-9494
FAX (505) 843-9492                                FAX (505) 843-9492
                                                     1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE          e-mail: info@litsupport.com