6427

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4                 Plaintiff,

5        vs.            NO:  CR-15-4268 JB

6    ANGEL DELEON, et al.,

7                 Defendants.

8                    VOLUME 20

9      Transcript of Jury Trial before The Honorable

10   James O. Browning, United States District Judge, Las

11   Cruces, Dona Ana County, New Mexico, commencing on

12   February 26, 2018.

13   For the Plaintiff:  Ms. Maria Armijo, Mr. Randy
     Castellano, Mr Matthew Beck
14

15   For the Trial 1 Defendants:  Ms. Amy Jacks, Mr.
     Richard Jewkes, Ms. Theresa Duncan, Mr. Marc Lowry,
16   Ms. Carey Bhalla, Mr. Bill Maynard, Mr. Ryan Villa,
     Ms. Justine Fox-Young.
17

18

19          Jennifer Bean, FAPR, RDR, RMR, CCR
               United States Court Reporter
20             Certified Realtime Reporter
                 333 Lomas, Northwest
21             Albuquerque, NM  87102
               Phone:   (505) 348-2283
22             Fax:    (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6428

```
 1                        I N D E X
 2   EXAMINATION OF TIM BRYAN
 3   By Mr. Lowry                              6462
 4   By Ms. Jacks                              6493
 5   By Mr. Villa                              6504
 6   By Mr. Beck                               6505
 7   By Mr. Lowry                              6519
 8   EXAMINATION OF EDWARD URTIAGA
 9   By Ms. Duncan                             6522
10   By Ms. Armijo                             6533
11   By Ms. Duncan                             6540
12   By Ms. Armijo                             6544
13   By Ms. Duncan                             6551
14   EXAMINATION OF BRYAN ACEE
15   By Mr. Lowry                              6554
16   By Ms. Fox-Young                          6605
17   EXAMINATION OF JAMES BREWSTER
18   By Ms. Jacks                              6745
19   By Mr. Beck                               6759
20   By Ms. Jacks                              6765
21   By Mr. Beck                               6780
22   By Ms. Jacks                              6781
23   By Mr. Beck                               6783
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6429

| | | |
|---|---|---|
| 1 | REPORTER'S CERTIFICATE | 6791 |
| 2 | EXHIBITS ADMITTED | |
| 3 | Defendants' FT Admitted | 6476 |
| 4 | Defendants' FU Admitted | 6481 |
| 5 | Defendants' FV Admitted | 6629 |
| 6 | Defendants' T Admitted | 6756 |
| 7 | Defendants' U2 Admitted | 6781 |
| 8 | Defendants' W8 Admitted | 6753 |
| 9 | Government 781 Admitted | 6515 |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  All right.  Good morning,
2     everyone.  Everybody take their seats.  Thank you
3     for being here on time, ready to go.
4          Let's see if we can use this time to get
5     our Rule 29 motions completed so we keep our
6     schedule with the jury.  I'll try to articulate this
7     a little better as the day goes on, but I'm
8     beginning to have some questions on the conspiracy
9     to assault resulting in great bodily harm.  I'm not
10    seeing that in the VICAR Statute.
11          So I think I may have to have a little
12    briefing on that, because I think you've got murder
13    covered, but I'm not seeing how you -- when I look
14    at the New Mexico UJI, it doesn't have an intent
15    requirement to commit the aggravated battery with
16    the definition of serious bodily injury.  So take a
17    look at that.  I may need a pocket brief on that,
18    because I'm struggling a little bit to see how that
19    crime that's alleged violates VICAR, so take a look
20    at that.  I'll try to flesh that out as I go through
21    the day.
22          Who wants to go next?  Ms. Bhalla, were
23    you going to go next on your Rule 29?
24          THE COURT:  Mr. Maynard?
25          MR. MAYNARD:  Thank you, Your Honor, yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           Judge, I know with Rule 29 the Court can't
 2   make credibility decisions with respect to the
 3   testimony.  Although if the testimony just really
 4   borders on the incredible, it reaches a point
 5   sometimes where it may be insufficient to prove a
 6   case to a reasonable jury beyond a reasonable doubt.
 7           And what we have here, dealing with Count
 8   6, the conspiracy to murder, and 7, the murder, we
 9   have a situation where the witnesses have all been
10   impeached for various reasons which have been -- are
11   referred to in the jury instructions, as well, if we
12   get to that juncture -- drug abuse, prior
13   inconsistent statements, criminal record, character
14   issues, and so forth.
15           And the evidence is also very
16   circumstantial, at best, given that there is no
17   direct evidence that Mr. Herrera had any control
18   over those people who were in the blue pod that
19   actually carried out the murder -- the four people
20   who carried out the murder were not acting under his
21   instructions.  There is no such evidence, and I
22   would ask the Court to consider a judgment of
23   acquittal under Rule 29, because the evidence is
24   just not there beyond a reasonable doubt on either
25   of the two counts.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Thank you, Mr.
 2   Maynard.
 3              Mr. Castellano, do you have a response on
 4   Mr. Herrera's motion?
 5              MR. CASTELLANO:  Yes, Your Honor.
 6              The one thing that hasn't been mentioned
 7   yet is the recordings themselves, so that would be
 8   Mr. Herrera's own words indicating that he ordered
 9   the hit.  So that's captured by recordings.
10              Also, Mr. Armenta indicated that in the
11   yard Mr. Herrera told him that he had ordered the
12   hit, as well, because he -- because Armenta and
13   Montoya had not earned their bones yet.  And then
14   when Mr. Rodriguez and Mr. Sanchez were speaking to
15   Carlos Herrera through the door, there is some
16   indication that this might be delayed a little bit,
17   and Mr. Herrera said that they just needed to get it
18   done.
19              So there is, in addition to the
20   recordings, there is plenty of other evidence out
21   there.  In addition to Carlos Herrera's position as
22   a llavero in yellow pod, he was duty bound to make
23   sure that happened.  So circumstantially and direct,
24   we have evidence of his involvement in that crime.
25              THE COURT:  All right.  Thank you, Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Castellano.

2          Mr. Maynard, do you have anything further

3   on your motion you want to say?

4          MR. MAYNARD:  Your Honor, basically, of

5   course, this -- these -- part of the problem with

6   the statements that are recorded is that the

7   statements that were recorded and the transcripts,

8   recordings that the jury heard, they really don't

9   say explicitly much, if anything.  They dance around

10  the issue a lot, a lot of politics dealing with the

11  SNM, internal politics, and so forth.

12          I think the closest one of the witnesses

13  came was -- and I can't remember exactly -- I think

14  this was Mr. Cordova saying that in the final

15  analysis, if you believe Mr. Cordova's testimony,

16  and that's a stretch, there is a statement that he

17  attributes to Mr. Herrera, basically saying, "Let

18  the blue pod deal with it."  So that's basically our

19  response, Your Honor.

20          THE COURT:  All right.  Thank you, Mr.

21  Maynard.

22          Well, as Mr. Maynard points out, at this

23  stage the burden is quite high for a defendant to

24  avoid this issue going to the jury.  And I do think

25  that when he argues that some of the evidence is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   incredible, I do think that's probably a

 2   determination that the jury should make rather than

 3   the Court should make.

 4            I realize, having now looked at all these

 5   transcripts, there is a lot of politics and a lot of

 6   discussions in there, and, you know, there is not

 7   that just flat statement that's a confessional

 8   statement in the recordings.

 9            But there is a lot of circumstantial

10   evidence, particularly with the recordings, where

11   Mr. Herrera says some very incriminating things,

12   combined with the statements from Armenta and Mr.

13   Rodriguez.  And I do think there has been evidence

14   establishing Mr. Herrera's position in the SNM

15   organization.

16            So I'm inclined to think this is an issue

17   the jury ought to decide that I shouldn't take away

18   from the jury.  So at the present time, I'm going to

19   deny the Rule 29 motion as to Mr. Herrera, and allow

20   the case to proceed to the jury.

21            All right.  Mr. Villa, do you want to go

22   next?

23            Ms. Jacks?

24            MR. VILLA:  Unless Ms. Jacks wants to.

25            MS. JACKS:  I'll go last.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  All right.  Mr. Villa?

2              MR. VILLA:  Your Honor, pursuant to Rule

3    29, I move for a directed verdict with regard to

4    both Count 6 and Count 7 for Mr. Perez, the

5    conspiracy to commit murder and the murder of Javier

6    Molina.

7              With respect to the conspiracy, the

8    evidence that we have that Mr. Perez actually knew

9    the object of the conspiracy, which was to kill

10   Javier Molina, and agreed in some way, essentially

11   comes from Mario Rodriguez.

12             Now, I know we've got Mr. Perez'

13   statements two years later, and I'll deal with

14   those, but the testimony of Mario Rodriguez is that

15   he saw Dan Sanchez standing by the door of Mr.

16   Perez.  It appeared like they were having a

17   conversation.  He didn't hear what any of those

18   words were.

19             And that then he came over, asked --

20   himself asked the CO to open Mr. Perez' door.  The

21   door was opened, and Mr. Sanchez said, "Take that,"

22   or "We need that."  And Mr. Rodriguez testified that

23   he recognized right away what he was pointing to,

24   the piece on the walker, that he then took the

25   walker, started to turn it upside down, looked for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6436

1  something to take the piece off, found some nail

2  clippers.

3         And it was in that point of the event that

4  Mr. Perez allegedly says, "I'm down for whatever, as

5  long as it's not me."  And I just don't think, Your

6  Honor, that that rises to the level of the agreement

7  to kill Javier Molina.  He's not doing anything

8  except making a statement.  You know, they didn't

9  ask him for permission, from the testimony we heard

10 from Mario Rodriguez.  And I'm not sure that it

11 matters, given what the testimony was.  There wasn't

12 any objection or, you know, agreement, if you will.

13 Essentially, Mario Rodriguez did everything.

14         Now, if we fast-forward to the statements

15 made to Billy Cordova, at best, there is some -- you

16 know, there is certainly some evidence I think the

17 Government would point to that Mr. Perez says he

18 agreed.  But I think there are certain other

19 statements in there that kind of balance those out a

20 little bit.

21         He didn't -- in the statements to Billy

22 Cordova, he didn't know about the paperwork.  There

23 is statements where Mr. Perez says, referring to the

24 information about Mr. Molina, that came out

25 afterwards.  And so those statements are not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    sufficient in conjunction with what Mario Rodriguez

2    testified to, to demonstrate to a jury, even in the

3    light most favorable to the Government, that Mr.

4    Perez made some sort of agreement before Mario

5    Rodriguez took the walker and started to take the

6    piece off of it.

7           With respect to the murder, he's certainly

8    not on the hook, if you will, for killing

9    Mr. Molina.  I think, at best, the evidence is that

10   he may have aided and abetted the murder.  And I

11   think when we look at the aiding and abetting law

12   and the proposed instruction, Mr. Perez had to have

13   known the target of the murder, he had to have the

14   specific intent to kill Javier Molina.  And we just

15   don't have the evidence that that was so.

16          And I also think that he has to take -- do

17   more than what the evidence is that I just went

18   over, to actually have aided and abetted as it's

19   required under both the state law and the federal

20   law with respect to aiding and abetting.

21          And so for those reasons I would ask you

22   to direct a verdict on both Counts 6 and 7.

23          THE COURT:  All right.  Thank you, Mr.

24   Villa.

25          Mr. Castellano, you have a response to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6438

1    this motion?

2           MR. CASTELLANO:  Yes, Your Honor.  I think

3    Mr. Villa basically conceded that there is

4    information in the transcripts and the recordings by

5    which a jury could make these findings, and rule

6    against him or vote for guilty under the

7    circumstances.  So viewed in the light most

8    favorable to the United States, even Mr. Villa

9    acknowledges that there is evidence in the

10   transcripts.  And so the Court doesn't have to make

11   those findings.  The Court has to leave it to the

12   jury at this point.

13          In addition, Mr. Perez admitted to Lupe

14   Urquizo and to David Calbert that he provided his

15   shanks -- his walker to be made into shanks.  And he

16   has said on more than one occasion that, "We all

17   have to do our part, no matter how large or small."

18   So he is indicating that he did his part.  And the

19   murder doesn't happen without the weapons.  So

20   clearly he provided the materials in this case which

21   did aid and abet that murder.

22          THE COURT:  All right.  Thank you, Mr.

23   Castellano.

24          Mr. Villa, do you have anything further on

25   your Rule 29 motion?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          MR. VILLA:  Yes, Your Honor.  The reason
 2   why I think Mr. Perez' post-crime statements that
 3   are -- the earliest of which is June 2015, to Mr.
 4   Urquizo on the van to PNM -- are not reliable in and
 5   of themselves or are not enough, in and of
 6   themselves, for the Government to overcome directed
 7   verdict.  In addition to the times that it
 8   contradicts what we know actually happened, Mr.
 9   Perez didn't provide the pieces of the walker.
10   Mario Rodriguez took them.  And there is no
11   information that we have that at the time Mr. Perez
12   assisted or aided in any way other than, perhaps,
13   not to say anything to authorities.  And that we
14   know is not enough.
15          THE COURT:  All right.  Thank you, Mr.
16   Villa.
17          Well, here we do have much stronger
18   statements and information in the record that Mr.
19   Perez provided his shank (sic) to the conspiracy to
20   be used to murder Mr. Molina.  There is evidence in
21   the transcripts.  The transcripts aren't going to be
22   part of the evidence, but the audios are.  And when
23   you look at those and listen to those, there are
24   statements of -- I know that Mr. Perez is taking the
25   position that he was not being truthful when he was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6440

1  making those statements on the transcripts, but they

2  are there.  And that's a conflict as to whether he

3  was lying then, or was telling the truth then.

4         In addition, we do have the testimony of

5  Calbert, Urquizo, and they also provided multiple

6  statements that corroborate the version that the

7  Government is giving to Mr. Perez' transcribed and

8  audio-recorded conversations.  So these statements

9  that are being provided with Mr. Perez' own

10 statements, I realize they're post-crime, but I

11 don't think I'm the one that should determine the

12 reliability of that issue.  I think that's an issue

13 that the jury ought to make a determination.

14         I don't think the defendant has overcome

15 the strong standard that the Court is required to

16 exercise at this time under Rule 29.  And I have to

17 view all evidence in favor of the Government.  And

18 if I take the -- just the statements Mr. Perez made,

19 I think that those would overcome it.  But there is

20 some -- and quite a bit of corroborating information

21 to the theory that on those tapes Mr. Perez was

22 telling the truthful version at that point.

23         So I'm going to deny the Rule 29 motion as

24 to Mr. Perez, and allow the jury to make the

25 determinations of reliability and when Mr. Perez was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  telling the truth and when he wasn't.  I think those

2  are issues for the jury to decide.

3         All right.  Ms. Jacks, you have your

4  motion?

5         MS. JACKS:  I do.  I'll be brief because I

6  think, basically, I don't want to repeat the

7  arguments of others.

8         I would second the comments of Mr.

9  Maynard, and just note that, at least as to Mr.

10  Sanchez, the Government's case is really the

11  uncorroborated testimony of accomplice informants

12  that are actually liable for the Molina homicide.

13         We also know that these individuals have

14  previously colluded to make up false stories about

15  the Molina homicide.  And this is just one in a

16  series of false stories that they've told.

17         Unlike some of the other defendants, there

18  are not recordings of Mr. Sanchez that work to

19  corroborate the stories of these informants.  So I

20  think to that extent, he has a stronger -- a

21  stronger motion with respect to Rule 29.

22         THE COURT:  All right.  Thank you, Ms.

23  Jacks.

24         Mr. Castellano, do you want to speak to

25  Mr. Sanchez' Rule 29 motion?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1         MR. CASTELLANO:  Yes, Your Honor.  Ms.

2  Jacks' comments are really better suited for closing

3  arguments to the jury.  And if that's the case, then

4  clearly there is sufficient information to go to the

5  jury for their determination.  So she's asking the

6  Court make credibility determinations based on the

7  evidence.  But Mr. Armenta indicated that Daniel

8  Sanchez ordered him to murder Mr. Molina, and Mr.

9  Rodriguez indicated the same, that he agreed with

10  Mr. Sanchez, that Mr. Sanchez gave the orders, and

11  that Mr. Rodriguez carried out those orders by

12  talking to other members.

13         So based on that information, clearly

14  there is sufficient evidence to give this to the

15  jury, and those arguments don't overcome the Rule 29

16  standard.

17         THE COURT:  Anything further, Ms. Jacks?

18         MS. JACKS:  No, Your Honor.  Although I do

19  have another motion after this.

20         THE COURT:  All right.

21         Well, I think that we knew this day was

22  coming when we would be at this point, and

23  particularly with -- as to Mr. Sanchez, a great deal

24  of the evidence against him is from accomplices and

25  informants, and so as we've all worked on these jury

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   instructions over the weekend, and as I worked on

2   them, there is a lot of safeguards in the jury

3   instructions.

4            But as we all know, they also say that

5   this is admissible testimony; it's proper for plea

6   bargaining; it's proper to record things.  I know he

7   doesn't have as much recordings, but we do have the

8   statements of Mr. Armenta and Mr. Rodriguez that,

9   with the safeguards that we're going to put in about

10  accomplices and informants and plea agreements and

11  those sort of things, this is all proper evidence,

12  and it's been admitted.  And I do think it's

13  sufficient to -- when viewed in the light most

14  favorable to the Government, and be sufficient for

15  it to go to the jury.

16           So I'll deny Mr. Sanchez' Rule 29 motion.

17  And I do agree that there is a lot of grist there

18  for the closing arguments, but I do think that those

19  issues are for the jury to decide, and not for the

20  Court to take away from the jury.

21           So other than that, I'm going to come back

22  and continue to visit this Julian Romero count, the

23  legal sufficiency of it -- I mean, once we establish

24  that there is not a serious bodily injury, there is

25  not really a factual issue.  So it comes down to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6444

1   just being a legal issue.  And I'm still trying to

2   figure out how that count fits into the VICAR.  So I

3   might want to focus on that.  But I'll try to do

4   that and give you my thoughts as the day develops.

5           Y'all may have submitted the letters this

6   morning.  I haven't seen them yet.  So I'll have Ms.

7   Standridge and my law clerk look for them, but I was

8   hoping that I'd be able to spend the day looking at

9   your letters.  So I hope they were sent, but I

10  haven't seen them yet.

11          MS. JACKS:  Your Honor, we filed it at

12  8:30 last night, and surprisingly we were able to

13  agree on, I think, everything.

14          We also submitted a red-lined version of

15  the Court's sixth jury instructions, some of which

16  you'll see we've agreed to.  The rest we are working

17  through.  We may have some disagreements, but as of

18  now, we're attempting to agree.

19          THE COURT:  Okay.  Well, good.  I thought

20  there might be a good shot.  I thought that -- I

21  hope what I have done was helpful in narrowing the

22  issues.  And I thought that probably we were at a

23  point where we might be able to get over the hump

24  together, and have a pretty good set for the jury.

25  But I'll take a look at what you sent here, and try

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    to get something in your hands so you can look at it

2    and we can figure out where the gaps are.

3              Before we bring the jury in, is there

4    anything we need to discuss while we're together?

5    Anything I can do for you?

6              How about from the Government's

7    standpoint?  Ms. Armijo?  Mr. Castellano?  Mr. Beck?

8              MR. BECK:  I think the Government filed a

9    motion in limine yesterday regarding one of Rudy

10   Perez' witnesses that the Court may look over.  I

11   don't think this person -- I don't think Dr.

12   Brislen, or any of the other witnesses implicated by

13   that motion, are being called as witnesses today.

14   So I don't think it's immediate, but I just wanted

15   to alert the Court.

16             THE COURT:  All right.  Ms. Standridge

17   just handed it to me, so I'll start taking a look at

18   it.

19             How about from the defendants?  Anybody

20   have anything?  Ms. Jacks?

21             MS. JACKS:  Your Honor, I do.  I have a

22   renewed motion to sever Mr. Sanchez at this time.

23             THE COURT:  All right.  Do you want to

24   argue it?

25             MS. JACKS:  Briefly.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6446

```
 1            THE COURT:  All right.
 2            MS. JACKS:  Your Honor, based -- first of
 3   all, I just want to sort of review where we are.
 4   Because prior to the start of trial, the Friday
 5   before trial, the Court had ruled that there would
 6   be two juries, and that the jury that was hearing
 7   the case against Mr. Sanchez would not hear the
 8   audio recordings of Carlos Herrera and Rudy Perez, I
 9   think through witnesses Gerald Archuleta and Billy
10   Cordova.
11            And then on Sunday, the Court changed its
12   mind after the Government represented that it would
13   redact or essentially Brutonize those statements so
14   that they wouldn't directly refer or implicate Mr.
15   Sanchez, making it more likely that a jury might be
16   able to follow the Court's instructions not to
17   consider that evidence against Mr. Sanchez.
18            And I think, really, most -- most acutely
19   in the testimony of Billy Cordova last Thursday and
20   Friday, the Government, while they may have excised
21   some of the direct references to Mr. Sanchez in the
22   portions of the recordings that they played for the
23   jury, they certainly elicited testimony from Mr.
24   Cordova that directly implicated Mr. Sanchez by
25   name.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6447

1          And so I -- I think at this point, based
2    on -- I feel likes it's kind of a bait and switch.
3    We're going to take out the references to him, and
4    then, when we've got him on the stand, we're going
5    to have him talk about Mr. Sanchez.  And I think at
6    this point, it's really impossible for the -- for
7    even the most conscientious juror to follow the
8    Court's instructions not to consider that evidence
9    against Mr. Sanchez.
10          And I think it -- it's aggravated by the
11    fact that the same cooperating witnesses that are
12    going to be -- the jury is going to use in assessing
13    the credibility of the Government's case against Mr.
14    Perez and Mr. Herrera, those are the same witnesses
15    they're going to have to evaluate as to Mr. Sanchez.
16          And so we're, essentially, asking them to
17    look at the evidence and find the evidence
18    corroborated as to some defendants, but yet ignore
19    that corroboration when they are evaluating the
20    truth or the credibility of the Government's charges
21    against Mr. Sanchez.
22          And I would reassert that Mr. Sanchez has
23    a Fifth Amendment right to be tried with evidence
24    that's admissible against him, and not to be
25    convicted based on inadmissible evidence.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6448

```
 1          And he also has the Sixth Amendment right
 2  to confrontation.  And I think what's happened here,
 3  through the way that the Government has dealt with
 4  these recordings, in particular the Billy Cordova
 5  recordings, is at this juncture, that can't happen.
 6  I think it's impossible.  I mean, I -- I think it's
 7  asking too much of even your most conscientious
 8  jurors.
 9          So what I would request is basically a
10  mistrial as to Mr. Sanchez, and a de facto severance
11  based on that.
12          THE COURT:  All right.  Thank you, Ms.
13  Jacks.
14          Mr. Beck?  Mr. Castellano?  Do you want to
15  address that issue?
16          MR. CASTELLANO:  Your Honor, Ms. Jacks has
17  not defined what those statements are, so it's hard
18  to take those out of context.  So I think it might
19  be more important for her to indicate what those
20  statements were, whether they were statements from
21  Billy Cordova, generally, or statements extracted
22  from the recordings.
23          But the issue with the recordings -- and
24  one of the reasons we basically Brutonized them,
25  even though it's not truly a Bruton problem, is that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6449

1  under Bruton you can't cross-examine those

2  statements.  But with Billy Cordova on the stand, he

3  could be cross-examined.

4          So I think that's a different issue when

5  you have information coming from a witness, and

6  that's a witness who can be tested and who can be

7  cross-examined by defense counsel.  So I don't think

8  we're even close, based on that.

9          THE COURT:  Any further thoughts on that,

10  Ms. Jacks?

11          MS. JACKS:  Well, yeah, because I think it

12  would be ridiculous for a lawyer representing Mr.

13  Sanchez to cross-examine a witness about testimony

14  that the Court has instructed the jury is

15  inadmissible against Mr. Sanchez.  So I -- I think

16  there is a disconnect as to what is going on here in

17  this trial.

18          And the other thing I would point out is

19  the declarant -- the declarant is not Billy Cordova.

20  The declarant was, in the statements I'm thinking

21  about, Mr. Perez.  And I was actually -- there is, I

22  think, the most blatant example of what I'm calling

23  the Government's bait and switch occurred at the end

24  of the day on Thursday.  And if I can just grab my

25  computer, I'll read the testimony.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6450

```
 1            By my recollection, they not only -- they

 2   not only ended the day Thursday with it, but they

 3   started the day Friday with it.  And it's going to

 4   take me a minute to find it, so I'm not going to

 5   stand up here. I'll provide the cites to the Court

 6   from the real-time transcripts.

 7            THE COURT:  Okay.  I'll take a look at

 8   them.

 9            Well, I think we have handled the ones on

10   the transcript.  I mean, we worked very hard, and I

11   ruled on every objection that was made to the

12   transcripts.  I tried very hard to make sure that

13   the Government lived up to its commitment to

14   Brutonize those transcript statements.

15            So I feel that I've done everything I said

16   I would do, and the Government has said what they

17   said they would do, and then I made them do more.

18   So I think on the transcripts, we're pretty safe.

19            As far as the testimony of Mr. Cordova,

20   every time he was trying to testify what Mr. Perez

21   said, and there was any implication, I did the same

22   thing, I applied the agreement on the Brutonization

23   really to the testimony here, which was beyond what

24   the agreement was.  So every time there was a

25   request for a limiting instruction as to what Mr.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Perez was saying to Mr. Cordova, the instruction was

2  given.  And I think there were times when I just

3  sustained the objection and said it couldn't come

4  in, because we couldn't kind of Brutonize it like we

5  could a transcript or an audio.  So I think great

6  effort was made.

7        If there is a statement or two that got

8  through, I'm quite willing -- and I bet the

9  Government would agree with me, that we can give a

10 limiting instruction that they not consider certain

11 testimony.  But I'm not sitting here thinking of

12 things that slipped through.  But I'd be glad to

13 look at whatever transcripts you have.  Show it to

14 the Government; if there is a way we can say

15 something to the effect of:  "Any statement that Mr.

16 Perez made through Mr. Cordova cannot be considered

17 against Mr. Sanchez," I'm willing to go the extra

18 length on this to try to make sure that there is no

19 prejudice.  But I think we've done a good job.

20       And there is a lot of testimony.  We're in

21 our fifth (sic) week, here, and a lot of testimony

22 out there.  But I think we've done a pretty good job

23 of keeping the record clean.  And I can -- with the

24 closing instructions, I can make more effort, if

25 that's necessary and appropriate.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6452

```
 1            So I'm going to deny the motion to sever
 2   at the present time, and we'll take a look at any
 3   particular transcripts that come up.
 4            MS. JACKS:  Your Honor, I did find the
 5   cite.  I was looking at the wrong transcript.
 6            THE COURT:  All right, that's fine, go
 7   ahead.
 8            MS. JACKS:  So what I'm looking at is the
 9   end of the day on Thursday, and it's at the
10   real-time transcript, page 256, beginning at line
11   16 -- or line 15.  And what happened -- and this
12   occurred repeatedly -- I think this is just one of
13   the more egregious examples -- but what happened is
14   Mr. Castellano played a clip of a portion of a
15   conversation between Billy Cordova and Rudy Perez,
16   and then he asked the witness to interpret what was
17   discussed, and he asked, question:  "Okay, who is
18   supposed to dispose of what?"
19            And the answer by Mr. Cordova,
20   interpreting the conversation with Rudy Perez, was
21   answer: "Dan Dan was supposed to dispose of the
22   shanks after the Molina murder, and Blue and him
23   were having a confrontation over that."
24            And then I don't have the real-time from
25   Friday morning downloaded yet, but I believe that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   then on Friday morning that same conversation was

 2   then again directly inquired into.  And once again,

 3   Billy Cordova was asked to interpret what Mr. Perez

 4   was saying.  And again, the interpretation directly

 5   implicated Mr. Sanchez.

 6           And what I'm saying is that is a backdoor

 7   run-around of what the Government said they were

 8   going to do with respect to these conversations

 9   which were admissible only against Mr. Perez.

10           And I think it only highlights the tension

11   and the problems with what this Court has proposed

12   to do, which is try to limit that testimony, and

13   have it -- have the jury not use it against Mr.

14   Sanchez.  I think at the present time it is an

15   impossible task.

16           I think the skunk has been thrown into the

17   jury box.

18           THE COURT:  Well, if it's just these

19   transcripts, why don't you, Mr. Beck, get with Ms.

20   Jacks and see if you can isolate it, and maybe we

21   can put it in a jury instruction.  And if the

22   Government doesn't have any objection, I can add it

23   as a limiting instruction that these particular

24   things -- Mr. Cordova was, you know, was difficult

25   to control, because he would often be asked one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6454

1  question and would maybe answer it and then go

2  further.

3          But a couple of these that Mr. Perez is

4  stating, just under the rules of evidence, should

5  not be used against someone else.  And so I'd be

6  inclined to give further limiting instructions on

7  that.

8          Your thoughts?

9          MR. BECK:  I'll look at it and consider

10  it.  I think -- I think this all started because the

11  Court was concerned about the damage of the

12  transcripts referencing a co-defendants' name, and

13  the transcripts don't do that.

14          Mr. Cordova's testimony about what he took

15  that to mean is his opinion.  And it also -- I mean,

16  several other witnesses testified to the exact same

17  thing, so -- we took it out of the transcripts

18  because of the prejudice of it being in the recorded

19  conversations in the transcripts.  That prejudice is

20  certainly lessened to a great extent when it comes

21  from the witness's mouth, as it did from Billy

22  Cordova, but as it did from several others.

23          THE COURT:  But if Mr. Cordova is just

24  relaying a conversation -- his impression of a

25  conversation with Mr. Perez, I don't think you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  necessarily have a testimonial problem under the

2  Constitution.  But you do have an evidentiary

3  problem that it's a statement that Mr. Perez is the

4  party opponent, not Mr. Sanchez.

5          MR. BECK:  Right.

6          THE COURT:  So get with her, get the

7  statements.  Let's look at them, see if we can put

8  an instruction together, because the jury shouldn't

9  be considering party opponent statements against

10  other defendants.  That would be my concern.

11          So I'm putting it more in my language than

12  maybe Ms. Jacks'.  But I think we get to the same

13  point.

14          MR. BECK:  And -- and I get that.  But

15  I -- I would assume -- and I'll look back at the

16  transcript -- but I would assume that before that

17  recording was played in which that happened, the

18  Court gave the instruction that this is --

19          THE COURT:  Well, I think she's not saying

20  that it's the transcript.  I feel pretty comfortable

21  with you on the transcript, and she's made her point

22  on the transcript.

23          But I think today she's saying that what

24  happened is, after the transcript was played, which

25  was sanitized, then Mr. Cordova got on and started

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6456

1  giving his opinion about what was said.  And then

2  he, then, becomes a -- somebody that's now saying

3  what Mr. Perez said.  He's on the stand, he can be

4  cross-examined about that.  The problem is he, then,

5  began to make some statements that I think maybe he

6  used the word "Mr. Sanchez."

7          So get with Ms. Jacks, find all the

8  statements that she has, and let's put together --

9  let's think about putting a limiting instruction

10  together.  Because I think just under the rules of

11  evidence, that cannot be used against Mr. Sanchez.

12  And if we didn't give an instruction at the time,

13  there was no objection at the time, then we can do

14  something in the closing instructions to nail that

15  down.

16          Because I don't think it's a Bruton

17  problem.  I don't think it's a confrontational

18  problem.  It's not testimonial.  What he's saying,

19  because he's on the stand, but as to what Mr. Perez

20  is saying, if he's not going to testify, then it's

21  going to be an out-of-court statement that was being

22  offered for the truth against Mr. Sanchez.  And I

23  think we ought to clear that up.

24          All right.  Mr. Villa?

25          MR. VILLA:  Judge, just quickly.  I know

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6457

```
1   you need to read Mr. Beck's motion.  It's concerning
2   the medical doctor that defendants want to call.
3   And we're probably going to have to call her
4   tomorrow, the way evidence is going, or maybe
5   Wednesday.  But the argument is it's not relevant,
6   in part because the Court made decisions on
7   suppression already.
8            So, obviously, we think it's relevant for
9   two periods of time, the time when the piece was
10  taken from Mr. Perez' walker, and the time when he
11  gave statements to Billy Cordova.
12           And I can have further argument on that.
13  I know the jury is probably getting close to ready.
14  But I'd ask you to look at proposed Jury Instruction
15  Number 15 in the sixth version, and it's Pattern
16  Instruction 1.26, which is the voluntariness of the
17  statements.  And in the second paragraph it says,
18  "One of the factors to consider in whether a
19  statement is voluntary is the physical and mental
20  condition of the declarant."  So I think that Dr.
21  Brislen's testimony about Mr. Perez' condition at
22  that time is relevant.
23           THE COURT:  Well, I haven't read the
24  motion, but I think I know what it's probably going
25  to say, and what it's saying.  I agree tentatively
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that -- that the UJI -- not the UJI, but the Tenth

2    Circuit pattern instructions are quite broad as to

3    the evidence that can come in as to determining

4    voluntariness.  And so while I determine

5    constitutional voluntariness, they still get to

6    judge the weight by which to give the evidence.

7    That instruction is quite broad, and includes a lot

8    of factors.

9             So I'd be inclined to think that, if you

10   want to put on some medical testimony -- I've done

11   this with cases off the reservation, where we're

12   dealing with mental capacity.  Obviously, the

13   psychiatrist or doctor can't come on the stand say,

14   "He was credible that day and not credible today,"

15   or something like that.  But he can talk about the

16   psychological conditions that plague or hamper the

17   defendant.  And I've allowed that testimony.  So I'm

18   likening it to that.  And my inclination would be

19   that I would allow you to put on your medical

20   expert.

21             MR. VILLA:  Sounds good, Your Honor.

22             MR. BECK:  And I don't believe they've

23   noticed a psychologist.

24             THE COURT:  No, I wasn't saying they were.

25   But I'm likening it to cases off the reservation,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    where we have a sex offender, or there is an

2    allegation of a sex offense, and they've made a

3    number of statements to the FBI agents or BIA

4    agents.  And the psychologist can't come in and say,

5    "Oh, yes, he was not credible that day in making the

6    statements."

7              But I do allow the doctor to come in and

8    say, "Well, he had bipolar, or suffered depression,"

9    or something like that.  So the jury does get some

10   sense as to his mental condition.  And so likening

11   it to that, there is constitutional voluntariness,

12   and then there is factual voluntariness.  And I

13   think it may go to the factors that the Tenth

14   Circuit pattern instructions allow the jury to

15   consider in determining how much weight to give to

16   the defendant's statements.

17             MR. VILLA:  And we certainly don't intend

18   to elicit any opinions about the voluntariness of

19   the statement.  It's simply what his medical state

20   was at the time, as well as his medical state at the

21   time of March 7, 2014.

22             You'll see the Government's arguments with

23   respect to that concerning duress, and that sort of

24   thing.  One of the things that came up with Mr.

25   Cordova was I asked him about Mr. Perez' physical

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  state at the time, March 7, when, you know, the

2  walker pieces were taken, and whether he was capable

3  of physically stopping somebody from doing that or

4  physically defending himself.  And Mr. Cordova said,

5  yes.

6           And I think that Dr. Brislen's testimony

7  about Mr. Perez' medical state at that time is also

8  relevant.

9           THE COURT:  Well, I've noted that you've

10  been careful and diligent in trying to lay the

11  groundwork to his medical health being at issue

12  here.  And so I'm inclined to allow the testimony.

13           All right.  Ready to go?

14           All rise.

15           (The jury entered the courtroom.)

16           THE COURT:  Well, good morning, ladies and

17  gentlemen.  I appreciate you being back and ready to

18  go on time.  I know 30 minutes isn't a lot, but I

19  hope it was of some help to you in getting back here

20  on Monday morning.

21           We've been in here for a while, so we may

22  take what looks like an early break to you, but

23  we've been in here working, and the counsel and the

24  parties have been great about being here and trying

25  to work very diligently.  They worked over the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   weekend on some stuff.

2            So everybody has worked very hard and I

3   appreciate it, and I appreciate the counsel and the

4   parties, and especially appreciate the jury.  I

5   think we all just have marveled at the way you've

6   gone about your task and what a great group you've

7   been.

8            So I got in and out of Yale and back.  So

9   I did my little bit of traveling.  My wife and I

10  have been part of a scholarship fund for many years,

11  even before I was a lawyer, and now you look up one

12  day, and you're the oldest board member on there.

13  So this was an occurrence for me.  But it's been

14  something that we've done for many years.

15           So it was good to be back on campus and

16  see it.  There was a lot of rain.  And my boys found

17  a place in Queens, so I had barbecue with them and

18  got back.  So it was a good weekend for me, and I

19  hope it was a good weekend for you.

20           All right.  We didn't discuss before we

21  came in, but the defendants have their next witness

22  and evidence, and who they're going to call.

23           Mr. Lowry?

24           MR. LOWRY:  We do, Your Honor.  The

25  defense would like to call Tim Bryan to the stand.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.
 2              Mr. Bryan, if you'll come up and stand
 3  next to the witness box, my courtroom deputy, Ms.
 4  Standridge, will swear you in.
 5                        TIM BRYAN,
 6      after having been first duly sworn under oath,
 7      was questioned, and testified as follows:
 8              THE CLERK:  State and spell your name for
 9  the record.
10              THE WITNESS:  My name is Tim Bryan.
11  T-I-M; last name, B-R-Y-A-N.
12              THE COURT:  Mr. Bryan.
13              Mr. Lowry?
14              MR. LOWRY:  May it please the Court?
15              THE COURT:  Mr. Lowry.
16                    DIRECT EXAMINATION
17  BY MR. LOWRY:
18      Q.   Good morning, Mr. Bryan.
19      A.   Good morning.
20      Q.   How are you employed?
21      A.   I'm a partner at Crowe Horwath, LLP.
22      Q.   And how long have you held that position
23  as a partner at Crowe Horwath?
24      A.   Approximately one year.
25      Q.   And did you work with Crowe Horwath before
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   you became a partner?

2          A.   Yes, I did.

3          Q.   For how long?

4          A.   Since approximately 2011.

5          Q.   And what field are you employed in with

6   Crowe Horwath?

7          A.   Crowe Horwath is an accounting CPA firm,

8   and I personally am in the investigation practice.

9          Q.   And what is your specialty within that

10  practice?

11         A.   I lead our national practice around

12  forensic technology, which includes computer

13  forensics investigations, E discovery, litigation

14  support.

15         Q.   So I want to back up and talk about that

16  field.  What kind of education did you have to get

17  to qualify to work in that field?

18         A.   My formal education from the university is

19  a Bachelor's of Science Degree with an accounting

20  emphasis, with a minor in computer science.

21         Q.   And after you obtained your degree, what

22  other training did you accomplish to forward your

23  career plans?

24         A.   Sure.  Well, I -- I'm a Certified Public

25  Accountant, so I've sat for that exam.  Also

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6464

```
 1   obtained a few other certifications related to
 2   financial forensics, as well as related to digital
 3   forensics itself, and have a certification called NK
 4   Certified Examiner, which is specifically related to
 5   computer forensics.
 6        Q.   Have you published in the field of
 7   computer forensics?
 8        A.   Yes, I have.
 9        Q.   And could you describe for the jury what
10   those publications entailed?
11        A.   Yes.  I've prepared and written many
12   articles -- many publications that have been
13   published in various law journals, law publications.
14        Q.   And have you also lectured in the area of
15   computer forensic science or forensic technological
16   services?
17        A.   Yes, I have.
18        Q.   And what kind of audiences would you
19   lecture to?
20        A.   Oftentimes it's for attorneys for
21   Continuing Education, CLE for attorneys.  I have
22   also presented at peer conferences, so conferences
23   for computer forensics about the latest techniques,
24   latest technology.
25        Q.   Now, since your graduation, have you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6465

 1   devoted your career to the forensic technological

 2   services and computer forensic sciences?

 3        A.   Not completely.

 4        Q.   Okay.  How much of your career has been

 5   devoted to that?

 6        A.   From about 2000 to 2003, I was doing more

 7   along the lines of technology auditing.  From 2003

 8   to 2005, is when I began computer forensics

 9   investigations.  And since 2005, has been fully

10   dedicated to doing investigations.

11        Q.   What types of investigations have you been

12   involved with that specialize in your forensic

13   technological services?

14        A.   Really, it's been anything.  I've worked

15   in assisting prosecution.  I've worked in defense

16   cases.  I've worked on behalf of plaintiffs.  Quite

17   a variety of cases.  Anything that involves evidence

18   that exists on some sort of digital or technical

19   device, whether it be a computer, a cloud service, a

20   phone, something along that lines.

21        Q.   Would that include servers or all manner

22   of electronically digitally-stored material, or

23   information, rather?

24        A.   Yes, it would.

25        Q.   How many times can you estimate that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6466

1   you've been qualified as an expert in the field?

2       A.   I would estimate I've been disclosed as an

3   expert hundreds of times.

4       Q.   Have you been qualified by a Court as an

5   expert?

6       A.   Yes, I have.

7            MR. LOWRY:  At this time, Your Honor, we'd

8   tender Tim Bryan as an expert in the field of

9   Computer Forensic Science and Forensic Technological

10  Services.

11           THE COURT:  All right.  Any objection, Mr.

12  Beck?

13           MR. BECK:  No objection.

14           THE COURT:  All right.  The Court will

15  allow Mr. Bryan to offer opinion testimony in the

16  field of Computer Forensics and Forensic

17  Technological Services.

18  BY MR. LOWRY:

19      Q.   Mr. Bryan, how did you become involved in

20  this case?

21      A.   I was contacted by Amy Sirignano, who is

22  an attorney for, I believe, a defendant in this

23  case.

24      Q.   And since then, have you worked with other

25  defense attorneys involved in this case?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6467

```
 1        A.    I have, yes.

 2        Q.    And at some point in your work with

 3   them -- well, let me back up for a second.  You're

 4   an expert in computer forensic science; correct?

 5        A.    Yes.

 6        Q.    I take it you get paid for your work?

 7        A.    Yes, I do.

 8        Q.    Could you describe for the jury your

 9   hourly rate and who it is that you bill for your

10   services?

11        A.    Sure.  So in the world of consulting and

12   expert services work, we work by the hour.  And so

13   we often provide estimates of what it would take to

14   conduct an investigation.  We have different staff

15   and different levels of experience.  So our hourly

16   rates range anywhere from $250 an hour to in excess

17   of $500 an hour.

18        Q.    And are you familiar with how many hours

19   you've billed in this case?

20        A.    Roughly 100 hours since inception of

21   working in this case.

22        Q.    And what do you think to date your total

23   invoice would be for the work performed from

24   beginning to the present day?

25        A.    We've currently invoiced approximately
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   $25,000.

2       Q.   Okay.  And how does that fare compared to

3   your annual, I guess, net for the types of services

4   you provide for Crowe Horwath?

5       A.   I mean, it's certainly less than one

6   percent of what we would do in a given year.

7       Q.   And what would your revenue be for a given

8   year, roughly?

9       A.   Millions of dollars in a year.

10      Q.   Okay.  So let's talk about the work that

11  you did in this case.  At some point you were sent

12  five Dell tablets to analyze?

13      A.   Yes.  I received a shipment of five

14  tablets.

15      Q.   And those five tablets were very similar,

16  if not identical, to this?

17      A.   It looked very similar.  If it's a Dell --

18  I believe they were Dell tablets.

19           MR. LOWRY:  May I approach, Your Honor?

20           THE COURT:  You may.

21  BY MR. LOWRY:

22      Q.   Was this a make and model of tablet you

23  received?

24      A.   Yes, very similar to that.

25      Q.   And what services were you asked to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   perform on the five tablets that you received?

2        A.   The initial request from defense counsel

3   was to do what we call a triage of those tablets.

4   So we start by actually making a -- what's called a

5   bit-by-bit or forensic image, so we never actually

6   work on the original so as to not tamper with any

7   potential evidence.  So we make a copy,

8   forensically, and confirm that that copy is an exact

9   duplicate of the original.  And then I was asked to

10  provide an overview of what we saw, what kind of

11  information was contained on the tablets, and then

12  awaited further instructions.

13       Q.   And your initial -- what did your initial

14  overview reveal about the usage of these five

15  tablets?

16       A.   Well, number one, I was a little surprised

17  there really was no content of what I was expecting

18  to see.  I was expecting to see some PDF documents

19  or files related to this particular case on these

20  five tablets, and I did not see any of that.

21            But I did find that games had been loaded,

22  I found a lot of internet history, I found a lot of

23  like Facebook messaging, Facebook activity, email

24  activity, and a lot of web browsing activity.

25       Q.   Is it fair to say from your conversations

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   with counsel that you understood that these tablets

2   were supposed to have the discovery related to this

3   criminal case loaded on them?

4       A.   Yes, that was my understanding.

5       Q.   And did you find any of that type of

6   material at all?

7       A.   I did not.

8       Q.   Did you -- were you able to observe that

9   the tablets had been used to connect to the

10  internet?

11      A.   Yes, they had been.

12      Q.   And was that something you had expected to

13  see with tablets that were given to people who were

14  incarcerated?

15      A.   No.  In my experience, when an individual

16  is incarcerated, they do not have access to the

17  internet or to Wi-Fi on tablets.

18      Q.   Could you identify the source of the

19  internet that was used, or the -- I guess the portal

20  that allowed these tablets to access the internet?

21      A.   Yes, I did.

22      Q.   And what was that?

23      A.   So any web access using a Wi-Fi, there's

24  something called an SSID, and it's really the name

25  of the connection that you're going to use.  So, for

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   example, at your home, you might have your browser
2   or your internet router has a name, and that's what
3   you connect to.  And in this case it connected --
4   these tablets were connected to an SSID called
5   Walmart.
6        Q.   And I take it Walmart is not your typical
7   county jail?
8        A.   No.
9        Q.   What was the date range, if you recall,
10  that these tablets had been used to connect to the
11  internet, roughly?
12       A.   They were roughly connected -- I mean,
13  each of them are a little bit different.  But
14  roughly February of '17, some of them March of '17,
15  and continued roughly to April of 2017.
16       Q.   And then you talked about this briefly,
17  but what could you tell that the tablets had been
18  used for on the internet?
19       A.   There was -- the most common internet
20  browsing that I saw was pornography.
21       Q.   Were there other uses that were less
22  prevalent with the tablets?
23       A.   There was some web mail, also Gmail; for
24  example, there was some Facebook activity, as well.
25  But a lot of Facebook and a lot of pornography.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6472

1      Q.   Did you ask counsel if they wanted a

2  second tier of analysis?

3      A.   Yes, I did.

4      Q.   And what did the second tier of analysis

5  involve?

6      A.   What counsel had asked for, after this

7  initial triage, was to actually provide an

8  overview -- the details of what actual websites were

9  visited, what searches had actually been conducted.

10 So if you were to go to Google and type in a search

11 into Google, and then see the result, and then click

12 on those links, ultimately what was -- what kind of

13 activity related to the web searching had been

14 conducted.

15     Q.   In that second tier analysis, were you

16 able to discern whether particular tablets were used

17 to try to gain access to proxy sites?

18     A.   Yes.  There was one tablet, specifically,

19 that had proxy searching done.

20     Q.   Would you explain to the jury what a proxy

21 site is?

22     A.   Yeah.  Proxy is really a service.  It's

23 much like if anyone has ever used a VPN to connect

24 to the internet.  Basically, what it does is it's

25 going to obfuscate or make it difficult for the true

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   identity of an individual to be known to the website

 2   for which it's visiting.

 3         So, for example, every -- every computer,

 4   when it connects to the internet, is given what's

 5   called an IP address.  And if you were to go to,

 6   let's say Google, for example, Google would track

 7   what IP address the computer that requested the

 8   search was.

 9         And what these proxy services will do is

10   actually it will be an intermediate stop on its way

11   from your computer to the end website you're trying

12   to go to.  And it changes that IP address, so that

13   the website can't track who actually was or what

14   computer or what location was actually conducting

15   that web browsing history or activity.  So it's just

16   a way of hiding your true identity.

17         Q.   And you used the term in there, and just

18   for us that aren't as familiar with computers as you

19   are, what does an EPN connection mean?

20         A.   A VPN.

21         Q.   Pardon me?

22         A.   Victor.  So it's a Virtual Private

23   Network.  It basically creates kind of a tunnel, if

24   you will, so nobody can see the activity that's

25   going on during that web browsing session.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 820-6349                                               FAX (505) 843-9492
                                                                    1-800-669-9492
                                                          e-mail: info@litsupport.com


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    Q.   How many of these five tablets had

2    accessed these proxy sites that you identified?

3    A.   There was just one tablet that I could

4    identify that was attempting to use or search for

5    web proxies.

6    Q.   And let me back up for a second.  When you

7    received the tablets, could you tell -- the tablets

8    were assigned to individuals.  Could you tell which

9    tablet was assigned to which individual involved in

10   the case?

11   A.   Yes.  I received, along with the tablets

12   itself from the FBI directly, and they were

13   accompanied with a device -- with the tablets was a

14   standard chain of custody form.  And each tablet

15   also had a label associated or attached to it that

16   indicated who the tablet was assigned to.

17   Q.   And I just want to emphasize, those

18   tablets were sent to you directly from the FBI?

19   A.   That is correct, yes.

20   Q.   So who was assigned to the tablet that had

21   the proxy websites on it?

22   A.   Jerry Armenta.

23   Q.   And were you able to tell whether that

24   tablet ever successfully engaged proxy sites?

25   A.   I was not able to determine if it actually

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   had engaged or had traffic go through a web proxy.
 2            MR. LOWRY:  May I approach, Your Honor?
 3            THE COURT:  You may.
 4            MR. LOWRY:  Your Honor, I'm going to mark
 5   for identification purposes Defendant's Exhibit F as
 6   in Frank, T as in Thomas.
 7            May I approach?
 8            THE COURT:  You may.
 9   BY MR. LOWRY:
10        Q.   Mr. Bryan, do you recognize that document?
11        A.   Yes, I do.
12        Q.   And could you describe it?
13        A.   This is a document that I prepared.  It's
14   really a subset of web browsing or Google search
15   activity that I was requested to provide the defense
16   counsel.
17        Q.   And does this document reflect the
18   attempts to access these proxy websites?
19        A.   Yes, it does.
20        Q.   And this was the document that was
21   associated with the tablet that was assigned to
22   Jerry Armenta?
23        A.   Yes, it was.
24            MR. LOWRY:  Your Honor, at this time we'd
25   move for the admission of Defendant's Exhibit FT.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6476

```
1            THE COURT:  Any objection, Mr. Beck?
2            MR. BECK:  No objection.
3            THE COURT:  All right.  How about from any
4  other defendant?  Not seeing any objection,
5  Defendants' Exhibit FT will be admitted into
6  evidence.
7            (Defendants' Exhibit FT admitted.)
8  BY MR. LOWRY:
9       Q.   Now, looking at the dates of this exhibit,
10 can you tell us, was this -- what stage of the
11 internet use for Mr. Armenta's computer was this?
12      A.   This particular subset of searching
13 history shows that the search term -- and you can
14 see the third column says, "Search Term," you can
15 see exactly what was searched by this user, and the
16 date and time for which they searched it.  So we're
17 looking at April 4 of 2017, and then it goes through
18 April 8 of 2017.
19      Q.   Do you have a sense of when Mr. Armenta
20 was able to access the internet?
21      A.   Most of the activity was in April.  It did
22 appear that this device was connected to the Wi-Fi
23 Walmart network maybe in March, but most of the web
24 activity was in April.
25      Q.   Did any -- you may have answered this, but
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  did any of the other tablets have any attempts to

2  access proxy sites?

3       A.   Not that I can locate.

4       Q.   Now, in addition to the proxy sites, what

5  other forensic work did you perform in the second

6  tier of your analysis?

7       A.   I was also asked to provide a list of --

8  or recover as much of the Google Gmail that I could,

9  as well as a list of all the pornography sites

10 visited.

11      Q.   And did the Google and Gmail include

12 social media sites, as well?

13      A.   There was some -- yeah, there was some

14 Facebook sites being visited.

15      Q.   Anything unusual in the email activity

16 that you could tell?

17      A.   No, it was -- I believe just on one or two

18 of the tablets, a pretty small quantity.

19      Q.   What was the bulk of the use of the

20 tablets involving?

21      A.   Pornography.

22      Q.   Now, what type of pornography was

23 associated with this particular tablet, the one that

24 attempted to access the proxy sites?

25      A.   That tablet was assigned to, I believe,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6478

1   Jerry Armenta.  There was a lot of pornography, and

2   specifically there was a lot of searching for teen

3   pornography.

4           MR. BECK:  Objection, Your Honor, hearsay.

5           THE COURT:  Well, isn't this on the

6   report?

7           MR. LOWRY:  Yes, Your Honor.

8           MR. BECK:  It's not on the report that was

9   entered into evidence.

10          THE COURT:  Well, if it's not, then,

11  probably sustain that objection and stick with

12  what's on the report.

13          MR. LOWRY:  Sure.

14  BY MR. LOWRY:

15      Q.   So you did a second tier of analysis?

16      A.   Yes.

17      Q.   And you documented that second tier in a

18  subset analysis, as well?

19      A.   Yes, I did.

20      Q.   And you placed that into an Excel

21  spreadsheet format?

22      A.   Yes, I did.

23          MR. LOWRY:  Your Honor, I'm marking for

24  identification purposes Defendant's Exhibit FU.

25          May I approach, Your Honor?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  You may.

 2   BY MR. LOWRY:

 3       Q.   Mr. Bryan, without discussing in detail

 4   the substance of that -- well, the actual

 5   information on that report, can you just give us an

 6   overview of the substance of what that report is?

 7       A.   This is a subset of the Google searches.

 8   There were certain terms specifically identified

 9   that was contained in this subset, approximately 85

10   pages of searches.  Again, that's just a subset of

11   Google searches performed by the tablet assigned to

12   Jerry Armenta.

13       Q.   And this was information that you found

14   embedded in the digital guts of that tablet?

15       A.   Yes.  This directly comes from the search

16   history, the cache, if you will, the C-A-C-H-E,

17   cache, internet history, off that tablet.

18       Q.   And this is a document that you created

19   via the mirror image of the tablet that you spoke

20   about earlier?

21       A.   Yes.  And I moved it into an Excel

22   spreadsheet for ease of -- for all of us to view.

23            MR. LOWRY:  Your Honor, at this time, I'd

24   move for the admission of Exhibit FU.

25            THE COURT:  Any objection, Mr. Beck?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6480

```
 1            MR. BECK:  May we approach?

 2            THE COURT:  You may.

 3            (The following proceedings were held at

 4   the bench.)

 5            MR. BECK:  Your Honor, under the Rule of

 6   Completeness, I understand that this exhibit he

 7   wants to be offered, but under the Rule of

 8   Completeness, I think that the entire search

 9   history, at least for Mr. Armenta, should be offered

10   into evidence.

11            THE COURT:  Do you have any objection to

12   that?

13            MR. LOWRY:  We can do that.  We can move

14   the search history for all five tablets into

15   evidence.  As I sit here, I don't have all of the

16   search history for Mr. Armenta, in particular.  The

17   reason we did this particular exhibit is I'm going

18   to walk through with Mr. Bryan how he attributes the

19   use of this computer to this one particular

20   individual.  But I don't have any problem working

21   with the Government to augment the record with a

22   complete set.

23            THE COURT:  Are you in agreement, Mr.

24   Beck?

25            MR. BECK:  Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Everybody else in agreement?
 2   So we'll augment it to Defendants' FU, and admit it.
 3              (The following proceedings were held in
 4   open court.)
 5              THE COURT:  All right.  So Defendants'
 6   Exhibit FU will be admitted into evidence.
 7              (Defendants' Exhibit FU admitted.)
 8   BY MR. LOWRY:
 9        Q.   Mr. Bryan, based on the overall searches
10   that you've done on all the tablets, would you be
11   able to complete another subset of the usage just
12   pertaining to Mr. Armenta?
13        A.   In its entirety?
14        Q.   Yes.
15        A.   Yes, I could.
16        Q.   Okay.  So -- but let's focus on this
17   exhibit for the moment.
18              Now that it's been admitted, what kind of
19   internet usage did you see in general with Mr. --
20   this tablet that was assigned to Mr. Armenta?
21        A.   Primarily pornography.
22        Q.   And what type of pornography?
23        A.   There was quite a variety of pornography.
24   This particular exhibit calls out and highlights
25   the -- any pornography related to teen -- searching
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   for teen pornography.
 2        Q.   Do you have a sense of how many sites
 3   Mr. Armenta visited that were related to
 4   pornography?
 5        A.   I don't have the total number of sites
 6   visited.  But I do know that there were in excess of
 7   six --
 8             MR. BECK:  Objection, Your Honor.  I think
 9   that that question is improper.  I don't think we
10   can say that this is Armenta's search.
11             MR. LOWRY:  Sure.  Let me back up, Your
12   Honor.  I withdraw the question.
13             THE COURT:  Okay.
14   BY MR. LOWRY:
15        Q.   Do you know how many searches that were
16   related to this particular tablet involved
17   pornography?
18        A.   Yes.  This tablet assigned to Jerry
19   Armenta had approximately 650 individual searches
20   done that utilized the term "teen" within the search
21   for pornography.
22        Q.   And could you give us a sense of what the
23   names of those sites were, just two or three, for
24   example?
25        A.   They are fairly vulgar, but if you'd like
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  me to --

2      Q.   So everybody knows the genre of material

3  he was searching for.  It's not -- as you say, it's

4  not a very polite subject matter, but --

5      A.   Teeny Bopper, Camel Toes, Hot Thick Teens,

6  Teen Tits.

7      Q.   That's sufficient, Mr. Bryan.

8           In your review of the other four tablets,

9  did any of the other four tablets -- the users of

10 those tablets -- look for teen pornography?

11     A.   Not that I could locate.

12     Q.   Now, when we're talking about teen

13 pornography, do you have a sense that there are

14 actual teenagers depicted on those websites?

15     A.   Maybe I can make a distinction of 18 and

16 19 year-old versus under 18?

17     Q.   Sure.

18     A.   My professional experience would tell me

19 that there were probably, through using Google

20 searches, that a user would not actually be able to

21 find or be presented through Google, underage or,

22 you know, 18 and under teens.

23     Q.   And is that just an artifact of how the

24 internet functions?  Or why would that be the case

25 that you'd be unable to actually locate illicit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6484

 1    child pornography, if you will?

 2         A.    There is tools that have been developed in

 3    the large technology companies, in particular your

 4    Googles and Microsofts, have created some tools

 5    specifically to address the issue of exploited

 6    individuals -- young individuals.

 7              And they have actually created databases

 8    and tools to try to limit individuals' ability to be

 9    presented results for underage minors.  That's

10    primary.  There is a couple of different methods in

11    which they do it.  But based on my experience, it's

12    a little more difficult than just doing a Google

13    search to actually find these underage images.

14         Q.    What kinds of search engines did you see

15    employed with this particular tablet?

16         A.    Primarily Internet Explorer, using Bing or

17    using the Google search within Google Chrome.

18         Q.    And when you said "Internet Explorer,"

19    what company develops the software for Internet

20    Explorer?

21         A.    That comes installed on Windows devices,

22    so it's a Microsoft product.

23         Q.    And are you aware of Microsoft's position,

24    in terms of the corporate community, in terms of

25    their role at keeping child pornography off the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    internet?

2         A.    My understanding is they are one of the

3    primary sponsors of the program to keep that

4    information off the internet.

5         Q.    So if you're using that type of web

6    interface, it would make it unlikely that you could

7    actually find real child pornography?

8         A.    It's possible, but it's unlikely, in my

9    opinion.

10        Q.    Okay.  Now, are you familiar with the term

11   "attribution" in the field of computer forensic

12   science?

13        A.    Yes, I am.

14        Q.    Would you explain to the jury what

15   attribution is?

16        A.    Sure.  Attribution is something that just

17   about every investigation I'm asked to do.  And the

18   reason behind that is -- let me educate on the

19   process -- so when these searches were conducted

20   back on -- I'm not certain about the date and time

21   they were conducted, roughly in April of 2017.  But

22   I was not there with the individual that was at the

23   keyboard typing these search terms in.

24             So what we often are asked to do, as

25   forensic examiners, is to attribute an activity or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   attribute some action on the computer to an

2   individual.  So in a lot of cases, maybe if it's a

3   fraud case, for example, we might look at web

4   activity and see that an individual maybe logged

5   into their bank account information, and then maybe

6   a minute later, then, they conducted a search that

7   was something like this -- maybe inappropriate.

8           We're trying to attribute the

9   inappropriate search to an individual, say, look,

10  about a minute before, or in the rough timeframe

11  before, an individual just logged onto something

12  that's probably pretty personal to them that they

13  wouldn't share with somebody else.  So it's this

14  method of using corroborating activity on a computer

15  to attribute actual activity, even though I was not

16  there.  So that is generally the idea behind

17  attribution.

18      Q.   And is this exhibit --

19           MR. BECK:  Objection, Your Honor, may we

20  approach?

21           THE COURT:  You may.

22           (The following proceedings were held at

23  the bench.)

24           MR. BECK:  So I anticipate Mr. Bryan is

25  going to talk about attributing certain searches to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6487

1   a certain person on this tablet.  And the expert

2   witness notice that I have there says nothing about

3   Tim Bryan testifying about attributing searches to

4   certain individuals.  There is nothing about him

5   testifying about the search of tablets.

6          There is mirror image to ascertain all

7   evidence retrieved from the devices, but the devices

8   in this notice are the telephones, specifically from

9   Eric Duran and Mario Montoya.

10          MR. LOWRY:  Your Honor, I'm not going to

11  dispute that, but I would point out that the defense

12  asked for these tablets back in May of last year

13  after the breach of the protocol for their usage

14  became apparent.  And the Government didn't even

15  make these available until after the trial in this

16  case began.  And we had no idea what was there.  So

17  we were hitting a moving target.  So I won't

18  disagree with Mr. Beck at all, that as a practical

19  matter the Rule 16 notice was filed well in advance

20  of trial didn't contain this information.

21          THE COURT:  Let me ask this:  Can we do it

22  this way -- and correct me if I'm wrong, but he

23  can't testify that a particular person did the

24  actual search or retrieval of information.  He can

25  only say that this computer, whoever was using this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6488

```
 1   computer, this is what they retrieved; correct?
 2           MR. LOWRY:  Well, correct.
 3           THE COURT:  So he wasn't there, he doesn't
 4   know who was using the computer.  Can we just ask
 5   generally, whoever was using this equipment, this
 6   tablet, this is the information they drew.  And
 7   would that satisfy your objection?
 8           MR. BECK:  It wouldn't, Your Honor.  And I
 9   understand Mr. Lowry's position, and that's why I've
10   allowed the testimony so far on what he retrieved,
11   whether it was mirror image and what it showed,
12   because that's what this notice said he would
13   testify about with regard to the cell phones.  So I
14   thought it proper.  It does not say anything about
15   attributing particular searches to a particular
16   user.  So to the extent that this isn't anywhere in
17   the Rule 16 notice --
18           THE COURT:  Can he actually do that?
19           MR. LOWRY:  Yes, he can, Your Honor.  And
20   that's what he'd walk through right now.  And there
21   is a couple of dates -- and one is mid afternoon,
22   like at 1:00 p.m.; one is in the wee hours of the
23   morning when Mr. Armenta would have been locked in
24   his cell.
25           THE COURT:  But he can actually say it was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  Mr. Armenta?
 2            MR. LOWRY:  He can say in his opinion that
 3  an attribution can be fairly made to Mr. Armenta,
 4  because there were searches for his ex-wife within
 5  minutes of these searches for teen porn.
 6            THE COURT:  That's in evidence?  So he can
 7  testify -- that's on the report.  So he can go ahead
 8  and do that.  But let's draw the line.  He can't
 9  really --
10            MR. LOWRY:  He'll admit, if Mr. Beck wants
11  to cross-examine him, he's not sitting at the
12  keyboard looking at who searched it.  He'll be frank
13  about that.
14            THE COURT:  But can he testify that
15  whoever was using this, these are the searches that
16  he made, this is the information they found?  Can we
17  just leave it at that, and not have him draw the
18  conclusion it was Mr. Armenta?  We'll leave that to
19  argument.
20            MR. LOWRY:  Okay.
21            THE COURT:  That comes right close to the
22  line of what they did as far as notice.
23            MR. BECK:  All right.
24            THE COURT:  Live with that?
25            MR. LOWRY:  Have to, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6490

```
 1              THE COURT:  I mean, I think you can get a
 2  lot out.
 3              MR. LOWRY:  All right.
 4              (The following proceedings were held in
 5  open court.)
 6              THE COURT:  All right.
 7              Mr. Lowry?
 8  BY MR. LOWRY:
 9       Q.   So let's back up for a second and talk
10  about the search -- searches that were done on this
11  tablet.  Were there certain searches that appear to
12  be personal for an individual?
13       A.   Yes, there were.
14       Q.   And what did those searches involve?
15       A.   Found some searches for some specific
16  cities, some addresses, specific individuals' names
17  that were searched.  There were not just generic
18  search terms.
19       Q.   And what was one of the names that you saw
20  in the searches?
21       A.   There is one that stuck out to me.  I
22  believe it was Cheryl Martinez, I believe.
23       Q.   And why did that name stick out to you?
24       A.   Well, just compared it to all the other
25  search terms, it was a very targeted -- you know, a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  person's name.

2        Q.   Were you aware of Cheryl Martinez'

3  relationship with anyone involved with the tablets?

4        A.   My understanding is that Cheryl Martinez

5  may have been a spouse or an ex-spouse of Jerry

6  Armenta.

7        Q.   So at what times were searches for that

8  individual made?

9        A.   I'd have to refer to the exhibit.  My

10  belief is, it was -- let me just look real quick.

11  There is a series of searches conducted for the

12  search term of Cheryl Martinez on April 7, 2017.

13        Q.   At what time were those searches done?

14        A.   Most of these were done in the 1:00 hour

15  in the afternoon.

16        Q.   Now, were there other searches related to

17  teen porn sites that were close in time to those

18  particular searches?

19        A.   Yes, there were.

20        Q.   And in terms of clock time, what's the

21  difference between a search for, say, Cheryl

22  Martinez, and a search for a teen porn site?

23        A.   An example would be there is one within

24  five minutes.

25        Q.   Okay.  And were there any other examples

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6492

1    of that kind of proximity with a personal search and

2    a search for a teen porn site that you're aware of?

3         A.   That's the primary.  There were some other

4    search terms that were very personal -- that were,

5    again, personal in nature.

6         Q.   Were there any searches that were done in

7    the wee hours of the morning similar to that?

8         A.   Yes.

9         Q.   And again, what would be the time

10   differential between a search for personal

11   information and a teen porn site?  And take your

12   time.

13        A.   I don't have the exact time,

14   unfortunately, but I do see that there were some

15   searches conducted for like a Rio Rancho, New

16   Mexico, you know, in the 1:00 -- 1:00 a.m. hour time

17   block.  But what I don't have is the resulting teen

18   pornography searches.  I know they were conducted, I

19   just don't have the exact times on some of them.

20        Q.   And again, out of all five tablets, how

21   many had searched terms related to teen pornography?

22        A.   Just the tablet assigned to Jerry Armenta.

23             MR. LOWRY:  May I have a moment, Your

24   Honor?

25             THE COURT:  You may.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6493

```
 1   BY MR. LOWRY:
 2        Q.   So, Mr. Bryan, as far as can you tell
 3   sitting here, just that one example, I believe, it
 4   was on -- when did you say -- the 17th?
 5        A.   The one example that I highlighted for you
 6   was on April 7.
 7        Q.   April 7?
 8        A.   2017.  And there may have been others.
 9   But this is the one that I can recall right now.
10        Q.   Okay.
11             MR. LOWRY:  No further questions, Your
12   Honor.
13             THE COURT:  All right.  Thank you, Mr.
14   Lowry.
15             Any other defendant have direct
16   examination at this time?
17             MS. JACKS:  Your Honor, I have a few
18   follow-up.
19             THE COURT:  All right.
20             Ms. Jacks?
21                  DIRECT EXAMINATION
22   BY MS. JACKS:
23        Q.   Good morning, Mr. Bryan.
24        A.   Good morning.
25        Q.   I just have a few follow-up questions.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  When was it that you actually received the five

2  computer tablets from the FBI?

3       A.   I received these tablets this month.  I

4  don't recall the exact date.

5       Q.   So February of 2018?

6       A.   Yes.

7       Q.   And when you got the tablets, you said you

8  had some sort of chain of custody form that was

9  provided?

10      A.   Yes.

11      Q.   Did it indicate when the tablets had been

12  seized from the five individuals?

13      A.   It likely did.  I don't recall off the top

14  of my head when it was, but it would have likely

15  contained that.

16      Q.   Do you recall, generally, when it

17  indicated the tablets were seized, like was that

18  also in February of 2018, or was it sometime in

19  2017?

20      A.   I believe it was 2017.

21      Q.   And do you have any recollection of when

22  in 2017?

23      A.   I believe it was approximately April of

24  '17, but I don't recall exactly.

25      Q.   So between April or when the tablets were

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   seized and February of 2018, those tablets were in

 2   the possession of the Federal Bureau of

 3   Investigation?

 4       A.   My understanding is it was either the FBI

 5   or maybe the US Marshal Service.  I don't recall

 6   which had it.

 7       Q.   But you got the tablets from the FBI?

 8       A.   I did, directly, yes.

 9       Q.   And are you familiar with the type of

10   computer forensics analysis that the FBI is capable

11   of performing?

12       A.   Yes, I am.

13       Q.   And to your knowledge, did the FBI perform

14   any sort of search on the five computer tablets that

15   were sent to you?

16       A.   I'm not aware that they did any computer

17   forensics on these tablets.

18       Q.   And you said that the tablets, when they

19   were shipped to you, were associated with five

20   different individuals?

21       A.   Yes.

22       Q.   One of whom was Mr. Armenta?

23       A.   Yes.

24       Q.   Can you list the other four individuals?

25       A.   Yeah.  There was Roy Martinez, Ruben

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6496

1  Hernandez, Benjamin Clark, and a gentleman named

2  Gerald Archuleta.

3      Q.   And did I understand you correctly that

4  all five tablets that you examined forensically

5  showed evidence that they had been used primarily to

6  access pornography?

7      A.   There was definitely heavy pornography

8  usage on each -- each of those five tablets, yes.

9      Q.   Mr. Lowry asked you some questions about

10 your -- the hours that you spent and the billing in

11 this case.  Are all of those hours, and is all of

12 that billing related to this examination of tablets,

13 or did it also relate to other work you were asked

14 to perform by Ms. Sirignano?

15     A.   It also related to other work that I was

16 asked to perform.

17     Q.   So the work on the tablets is a portion of

18 the amount of work that you've billed for in this

19 case?

20     A.   Yes.  Approximately a third --

21     Q.   Okay.

22     A.   -- I would say.

23     Q.   You anticipated my next question.  I want

24 to follow up about the proxy -- the proxy sites.  Is

25 it illegal -- is it a federal crime for somebody to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6497

 1  access child pornography?

 2      A.   I'm not an attorney, but my layman's --

 3           MR. BECK:  Objection, Your Honor,

 4  foundation.

 5           THE COURT:  Well, if he knows what the

 6  federal law is, he can go ahead and say.  If he

 7  doesn't, then he'll have to say he doesn't know.

 8      A.   My understanding is yes, it is a crime,

 9  federal crime.

10  BY MS. JACKS:

11      Q.   And you've been -- well, you're aware that

12  computer forensic experts are frequently hired on

13  cases involving individuals who have accessed child

14  pornography on the internet?

15      A.   Yes, I am.

16      Q.   And you -- am I understanding you

17  correctly when you're talking about these proxy

18  sites, is a proxy site a way that somebody who wants

19  to access child pornography, but wants to conceal

20  that from the federal government, is that what they

21  would use, or attempt to use?

22      A.   It is clearly a method that could be used

23  to conceal the searching for child pornography, yes.

24      Q.   Okay.  So if -- if I wanted to access

25  child pornography, and I didn't want to get caught,



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    one way I could try to do that is by using a proxy

2    site?

3         A.   It's a very rudimentary way, yes, to do

4    it.

5         Q.   And you talked about these Google searches

6    involving searches for teenage pornography.

7              First of all, is that -- let me go back

8    for a second, because Mr. Lowry asked you some

9    questions about Google and Internet Explorer.  Is it

10   fair to say that Google and Internet Explorer have

11   built-in safeguards so people can't use their sites

12   to access illegal child pornography?

13        A.   That is my understanding, yes, they have

14   those safeguards in place.

15        Q.   So you could perform the search, but you

16   wouldn't get the return of illegal -- illegal child

17   pornography?

18        A.   That's most likely correct, yes.

19        Q.   But would you agree that someone that

20   types in, for example, a search of "Teen Camel Toe"

21   is searching -- is an attempt to search for illegal

22   child pornography?

23             MR. BECK:  Objection, Your Honor,

24   foundation and relevance.

25             THE COURT:  Well, if he can answer it,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6499

1  given his expertise, I'll allow it.  Overruled.

2      A.   Based on my expertise, I would say that it

3  is an attempt to search for teen or underage

4  pornography.

5  BY MS. JACKS:

6      Q.   And maybe an attempt that is somewhat

7  unsophisticated?

8      A.   Yes.

9      Q.   Because if the person really knew about

10 Google and Internet Explorer, they'd know that they

11 couldn't use those sites to actually access illegal

12 materials?

13     A.   That is correct.

14         MS. JACKS:  Thank you.  I have nothing

15 further.

16         THE COURT:  Thank you, Ms. Jacks.

17         Ms. Duncan?  Mr. Villa?  Did you have

18 something?

19         MR. VILLA:  I do, Your Honor, but I think

20 we need to approach before I do that.

21         THE COURT:  All right.

22         (The following proceedings were held at

23 the bench.)

24         MR. LOWRY:  Your Honor, I want to start

25 out with an apology to the Court.  I had represented

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6500

1  to the Court and to the United States that I would

2  turn over the reports from Mr. Bryan as soon as I

3  got them.  He had turned over two reports for

4  Timothy Martinez and Frederico Munoz during the

5  litigation the Friday before last.  And just out of

6  the inadvertence, I completely forgot about it,

7  because those witnesses had already testified, and

8  it never came up.

9          Friday night Ms. Armijo emailed me and

10 said, "Are you sure there are no other reports?"  I

11 went back in my email and checked.  She was right, I

12 disclosed them to her right away.  And given my

13 mistake, I made a personal agreement with Ms. Armijo

14 that I wasn't going to get into those other two

15 tablets.  So just a professional mistake.

16          And I apologize to the Court, I apologize

17 to the United States.  But I thought I might have

18 had a global agreement.  But Mr. Villa wants to

19 raise, I think, an issue with Mr. Bryan, but --

20          THE COURT:  Have you had a chance to look

21 at these additional reports?

22          MR. BECK:  No.  They came in on Friday.

23          MR. LOWRY:  I emailed them to Ms. Armijo

24 at 2:00 a.m.

25          MR. VILLA:  I don't want to get into the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  content, but I want to honor Mr. Lowry's agreement.

2  I was aware when he made it.

3         I want to say a couple things.  Again,

4  we've been talking about the tablets for a long

5  time, and didn't get them until mid trial.  And I

6  want to ask whether he received tablets from Timothy

7  Martinez and Frederico Munoz, without referring to

8  what the content was, so that isn't left hanging.

9         MR. LOWRY:  Or just confirm that they had

10 pornography on them.  Mr. Timothy Martinez did

11 testify that he used that tablet to access

12 pornography.

13        MR. VILLA:  So I don't think we're getting

14 into this agreement that Mr. Lowry had.

15        THE COURT:  How lengthy are these reports?

16        MR. VILLA:  They are spreadsheets.

17        MR. BECK:  I can say based on the fact

18 that we just saw was 770 searches, approximately 84

19 pages.  Timothy Martinez is similar.  It should be

20 approximately 80, whatever, pages.  I believe

21 Frederico Munoz had approximately 50,000 searches.

22 So to do 750 times 100, that would be approximately

23 800 pages and I would say 6/8 of that, we're looking

24 at approximately 500-something pages.

25        THE COURT:  Do you have any problem with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6502

1   the two questions that Mr. Villa wants to ask?

2           MR. BECK:  If the questions are:  Did you

3   receive tablets from Timothy Martinez and Frederico

4   Munoz, if that's the question, I don't have any

5   problem with that.

6           THE COURT:  Do you want to ask a second --

7           MR. LOWRY:  Could it be confirmed whether

8   they had pornography on them?

9           MR. BECK:  I do have a problem with that.

10          THE COURT:  Why don't we do this:  Why

11  don't you give the Government a chance -- why don't

12  you ask your first question, let's go ahead and get

13  that out there.  And then if you want to ask the

14  second question, let's keep him around and you can

15  re-call him and ask the second question.

16          And if Mr. Beck doesn't disagree with it,

17  then, after he's had a chance to look at these two

18  reports, you can ask the second question, and he'll

19  have a chance to look at the reports and either

20  object to it to allow the question to be asked.

21          MR. VILLA:  I guess I would suggest -- it

22  sounds like Mr. Beck has the reports, since he was

23  able to recite the number of searches done by

24  Mr. Munoz.

25          THE COURT:  Not these two.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        MR. BECK:  No.  So I opened them up, and I

2   looked at how many entries there are, to see if it

3   was something I could digest.  And I did it just

4   now.  And talking about how many tablets were being

5   looked at, I realized there were two others I hadn't

6   looked at.

7        THE COURT:  Why don't you go ahead and ask

8   your first question, and then y'all can re-call him,

9   and I'll give the Government a chance to look at

10  them.  I'd be inclined to let you ask the second

11  question, but I think I'd like to have the

12  Government look at the reports first, and see if

13  there is something we don't know about here.

14       MR. BECK:  I'll also object to getting

15  into whether there was pornography, because both

16  Frederico Munoz and Timothy Martinez admitted that

17  they searched for pornography, admitted they looked

18  at pornography, admitted they compromised their

19  tablet.

20       THE COURT:  I don't think they're offering

21  it to impeach, but as substantive evidence.  And I

22  let the Government put on a robust case, so I'll let

23  defendants do it, as well.

24       MR. VILLA:  What about this question

25  instead, whether he's aware whether Mr. Timothy

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  Martinez and Mr. Munoz admitted to searching for

 2  pornography?

 3          MR. BECK:  That's fine.

 4          THE COURT:  Why don't you get in and get

 5  out, and then we're done with this witness.

 6          (The following proceedings were held in

 7  open court.)

 8          THE COURT:  All right.  Mr. Villa?

 9          MR. VILLA:  Thank you, Your Honor.

10              DIRECT EXAMINATION

11  BY MR. VILLA:

12      Q.  Mr. Bryan, I just have a couple follow-up

13  questions.  Did you also receive -- without getting

14  into what you did -- did you receive a tablet

15  from -- that was from Timothy Martinez?

16      A.  I believe I did, yes.

17      Q.  And that was in sort of a second wave of

18  tablets, after the first five?

19      A.  Correct.

20      Q.  And did you also receive a tablet from --

21  that was from Frederico Munoz, the second wave?

22      A.  I believe that is also correct.

23      Q.  And are you aware that both of these men

24  have testified that they used their tablets to

25  search for pornography?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6505

```
 1        A.   I was not aware of that testimony, no.

 2             MR. VILLA:  Okay.  That's all the

 3   questions I have.

 4             THE COURT:  Thank you, Mr. Villa.

 5             Mr. Maynard, Ms. Bhalla, do y'all have any

 6   cross-examination -- or direct examination of Mr.

 7   Bryan?

 8             MS. BHALLA:  No, Your Honor.

 9             THE COURT:  Thank you, Ms. Bhalla.

10             Mr. Beck, do you have cross-examination of

11   Mr. Bryan?

12             MR. BECK:  I do, Your Honor.

13             THE COURT:  Mr. Beck?

14                     CROSS-EXAMINATION

15   BY MR. BECK:

16        Q.   Mr. Bryan, I think you said just a few

17   moments ago that you received these tablets in

18   February, I guess, this month; is that right?

19        A.   I believe it was February.

20        Q.   Had the FBI sent them to you on January

21   30, 2018?

22        A.   I don't recall the date they sent them.  I

23   believe we received them in early February.

24        Q.   So it's possible that they received them

25   January 30, 2018?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6506

```
 1        A.   I'd have to look at the chain of custody
 2   to those documents.
 3        Q.   All right, sure.  And you said that you
 4   don't remember whether they were in US Marshal
 5   custody from 2017 to 2018 or FBI custody; is that
 6   right?
 7        A.   I do not recall.
 8        Q.   Would it refresh your memory if I showed
 9   you a receipt for property?
10        A.   It could, yes.
11             MR. BECK:  May I approach the witness,
12   Your Honor?
13             THE COURT:  You may.
14   BY MR. BECK:
15        Q.   I'll hand you the receipt of property.  Go
16   ahead and review the top and bottom and let me know
17   if that refreshes your recollection where those
18   tablets were kept until January of 2018 -- of this
19   year.
20        A.   I've never seen this before, but it does
21   appear as though they were in the US Marshal's
22   custody.
23        Q.   So now do you remember that they were in
24   US Marshal custody until January of this year?
25        A.   I do.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6507

```
 1        Q.   And I just want to make sure I'm clear on

 2   your direct testimony.  It sounds like you don't

 3   think Jerry Armenta, or whoever had his tablet,

 4   could have accessed child porn from those searches;

 5   is that right?

 6        A.   From the Google searches directly, I do

 7   not believe that that would have been a method,

 8   correct.

 9        Q.   Then I wasn't sure -- I thought you did

10   searches of proxy servers, you testified that on

11   direct; is that right?

12        A.   Yes, I did.

13        Q.   Did he access those proxy servers?

14        A.   It does appear that the searches were

15   conducted to go to those proxy servers, yes.

16        Q.   But I guess my question was, did he access

17   those?

18        A.   I don't recall if he directly accessed the

19   web proxies in order to conduct subsequent web

20   browsing activity or not.  That was not part of my

21   request.

22        Q.   So sitting here today, you can't say

23   whether or not he accessed those proxy servers; is

24   that correct?

25        A.   That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And, in fact, you can't say definitively

2  that it was actually Jerry Armenta who searched for

3  any of those searches on his tablet, can you?

4    A.   I would say, based on my opinion, based on

5  doing this a long time, what I would tell you is --

6    Q.   Well, I'm not asking for your opinion,

7  what I was asking for is definitively can you say

8  100% that it was Jerry Armenta who searched on the

9  tablets?

10    A.   I can't say by 100%.  I can tell you based

11  on the subsequent searches that are conducted for

12  individual names, individual addresses, that that

13  would have likely been Jerry Armenta doing those

14  searches.

15    Q.   So I guess my question was definitively.

16  And it sounds like the answer is no.

17    A.   With 100% certainty, no.

18    Q.   Okay.  And then I want to talk to you

19  about exhibit -- and I think I remember the name of

20  this.  It was Exhibit FU; is that right?

21    A.   It was.

22         THE COURT:  Can we take this up after the

23  break, Mr. Beck?

24         MR. BECK:  That would be fine, Your Honor.

25         THE COURT:  Ms. Bean has been going for a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6509

1  while, so I need to give her a rest.  I know the

2  jury has not been in very long, but let's go ahead

3  and take our morning break.

4           All right, we'll be in recess for about 15

5  minutes.

6           (The jury left the courtroom.)

7           THE COURT:  All right.  We'll be in recess

8  for about 15 minutes.

9           (The Court stood in recess.)

10          MS. DUNCAN:  So, Your Honor, I was just --

11  Mr. Baca joins in Mr. Sanchez' motion to sever, and

12  for mistrial on similar grounds raised by Mr.

13  Sanchez.  And that was -- although the Court had

14  ordered the Government to redact out mentions of Mr.

15  Baca during particularly Billy Cordova's testimony,

16  reference was made to him, and made to him --

17  references were made in connection to statements

18  that Mr. Perez was making.  And, in particular, it

19  was a statement that "Baby G" had told Mr. Perez he

20  didn't need to worry about the rumors, that he was

21  an informant.

22          And Mr. Castellano elicited information --

23  or testimony that Mr. Baca was close to "Baby G," so

24  suggesting to the jury that that came from Mr. Baca,

25  which was in contravention of the Court's order.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   And also that the testimony that was elicited,

2   particularly the recordings, corroborated some of

3   the informant testimony in a way that was unfair to

4   Mr. Baca, because he could not cross-examine those

5   statements.

6            THE COURT:  Well, I'm going to need

7   specifics.  So get the specific sites, give the

8   quotes, give me a copy.  Ms. Jacks, give me yours.

9   And then work with Mr. Beck, so let's see if we can

10  do a limiting instruction.  I'm not quite tracking

11  yours.  But I'll take a look at it.  But I'm going

12  to need specific stuff.

13           MR. CASTELLANO:  I agree, Your Honor,

14  because it came to Baby G, Jonathan Gomez, I didn't

15  reference the transcript when I asked that question

16  to Mr. Cordova.  I just said:  "Who is Jonathan

17  Gomez, and what's his relationship to Mr. Baca?"

18  And those are facts outside of transcripts.

19           THE COURT:  Yeah, but I'm going to need to

20  see the transcript, exactly what it said.  So find

21  the hits, work with Mr. Beck, Mr. Castellano.  I

22  think Ms. Jacks may have a stronger argument on a

23  couple of them that are, you know, going to be party

24  opponents, but I'm not sure yours are going to

25  qualify.  But I'll take a look at them.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. DUNCAN:  And we will do that, Your
 2    Honor.  Just for the record, we would argue that
 3    that is not a sufficient remedy for the error with
 4    regard to Mr. Baca, but I will do it.
 5              THE COURT:  Let's see -- first of all, if
 6    there is no objection, it's hard for me to do things
 7    if I don't get an objection and ask for limiting
 8    instructions.  So if you're -- I'm trying to help
 9    the defendants, here, by putting together a limiting
10    instruction.
11              But let's see if there is even a problem.
12    So get the material, get it to the Court, and get it
13    also to Mr. Beck.
14              So Ms. Jacks, if you'll give me your exact
15    cites, I'll take a look at those.
16              MS. JACKS:  I'm happy to do that.  I just
17    want to point out that it was my impression, and I
18    believe Ms. Duncan's impression, that the testimony
19    about the recordings was --
20              THE COURT:  Well, let's don't do
21    impressions at this point.  I understand the point.
22    Let's get transcript cites, and let's take a look at
23    them.
24              All rise.
25              (The jury entered the courtroom.)
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6512

```
 1            THE COURT:  All right.  Mr. Bryan, I'll
 2   remind you that you're still under oath.
 3            Mr. Beck, if you wish to continue your
 4   cross-examination of Mr. Bryan, you may do at this
 5   time.
 6   BY MR. BECK:
 7       Q.   Mr. Bryan, over the course of your work on
 8   this case, how many times did you talk to the
 9   defense attorneys about your involvement with these
10   tablets?
11       A.   I can't give you an exact number, but 10
12   to 12, probably.
13       Q.   Is that in person, on the phone, both?
14       A.   It was on the phone.
15       Q.   Did they alert you when you should expect
16   to receive the tablets?
17       A.   I believe they did, yes.
18       Q.   And did they tell you what they thought
19   you might find on there?
20       A.   No.
21       Q.   They didn't tell you to look for searches
22   for pornography?
23       A.   No, they asked me to conduct a triage.
24   Based on that triage, they then -- which I
25   identified what the contents of it were -- they then
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   asked for specific additional investigation.

2       Q.   All right.  Did they tell you that the

3   tablets had been -- I guess you said triage, but did

4   they say compromised or dealt with?  What did they

5   tell you about that?

6       A.   I believe they indicated that some of them

7   may have been reset, I think was the term they used.

8       Q.   And did you find that they'd been reset?

9       A.   Yeah.  It appears as though they were

10  repurposed or reset from their original purpose of

11  housing discovery.

12      Q.   And I think you testified earlier, right,

13  that you didn't expect that they'd be able to access

14  the internet on these?

15      A.   I did not, correct.

16      Q.   And you also testified you were surprised

17  when they -- when there wasn't, I think you said,

18  discovery or PDFs; is that right?

19      A.   Yeah, it's my understanding that was what

20  was supposed to be on them.

21      Q.   But, I mean, as a forensics expert, when

22  they reset the tablets to gain internet access,

23  wouldn't you expect all that stuff would be gone?

24      A.   I was not clear as to what method they

25  used to do a reset, or if they even needed to do a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  reset  in order to gain access to the internet.  So

2  I had no expectation going in.

3        Q.   Fair enough.

4             Now, I think you said with Armenta, you

5  performed specific Google searches; is that right?

6        A.   Yes, I did.

7        Q.   And these were specific terms that Mr.

8  Lowry gave you?

9        A.   Yes.  There were some specific terms he

10  asked me to search for.

11        Q.   And I think when we looked at FU, which I

12  don't have in front of me, that was about -- I think

13  you said 750 -- what did you say, 750 searches you

14  found that corresponded to that?

15        A.   Approximately, correct.

16        Q.   And I think that did not include 750 --

17  that did not include the 12 searches for proxy;

18  right?

19        A.   That is correct.  And then there is an

20  additional set of searches, as well, that's not

21  included in FU or FT.

22        Q.   Right.  Yeah, we'll get to that.  So 750,

23  so that's 12, so that's around 762; right?

24  Somewhere approximately?  I'm not going to hold you

25  to that exact number.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1       A.   Between 750 and 800, I think is a fair
2   number.
3       Q.   750 to 800.  All right.  Well, if I look
4   through them and I found 758 searches and 12
5   proxies, for a total of 770, would you disagree with
6   that number?
7       A.   That's approximately correct, yes.
8            MR. BECK:  So now, I'm going to -- the
9   United States will move to admit Government's
10  Exhibit 781, which I've discussed with counsel,
11  which is the search -- which is the total searches
12  for the tablet that belonged to Jerry Armenta.
13           THE COURT:  Any objection to that, Mr.
14  Lowry?
15           MR. LOWRY:  No, Your Honor.
16           THE COURT:  Anybody else have any
17  objection?  Not hearing or seeing any objection,
18  Government's Exhibit 781 will be admitted into
19  evidence.
20           (Government Exhibit 781 admitted.)
21  BY MR. BECK:
22      Q.   And I know you didn't prepare this, but
23  you did prepare a spreadsheet in Excel that
24  contained all of the searches from all of the
25  tablets; is that right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes, I did.
 2        Q.   And so for this, what we did was we
 3   searched through that Excel spreadsheet and found
 4   all the searches for the tablet that was identified
 5   as belonging to Jerry Armenta.  And you and I sort
 6   of discussed how to do that; right?
 7        A.   Correct.
 8        Q.   And now I'm going to show you what's at
 9   the end -- I don't know how quick or how long this
10   will be -- but at the end of Jerry Armenta's
11   searches.
12             And so it looks to me like judging on the
13   Excel spreadsheet that you provided us, there were
14   about 2,223 searches; right?
15        A.   Yes, there were 2,223 searches conducted
16   using the Google browser -- the Google search tool
17   on Jerry Armenta's tablet computer that we were able
18   to recover.
19        Q.   Okay.  Great.
20             And to be fair, all these Google searches,
21   all the information you got from these tablets, I
22   think you said they ended in April; right?
23        A.   Yes.
24        Q.   And that's when the Government found out
25   about them using their tablets for nefarious
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6517

```
 1  reasons; right?
 2       A.   That I don't know.
 3       Q.   Okay.  Fair enough.  So I'm going to do
 4  some math here, and I'm not good at this either, so
 5  I'm going to use my handy-dandy calculator.  But you
 6   said there is about 770 searches for either proxy
 7  or based on the terms that Mr. Lowry gave you;
 8  right?
 9       A.   Correct.
10       Q.   So I'm going to do 770 divided by -- I
11  think we saw there were about 2,223 searches total;
12  right?
13       A.   Yes.
14       Q.   And so that -- we get .346, which is about
15  34.6 percent; would you agree with me on that?
16       A.   I would agree.
17       Q.   And so that's about one-third of all the
18  searches; is that right?
19       A.   Yes, one third of all the searches would
20  be contained in FU and FT.
21       Q.   Okay.  And so that means that two-thirds
22  of the searches didn't respond to anything that Mr.
23  Lowry asked you to search for; is that right?
24       A.   That is correct.  And I guess maybe I can
25  explain what those searches were.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   I think you'll probably have an
 2   opportunity to do that.  So I won't ask you about
 3   that.  And the -- I just want to go into -- well --
 4             MR. BECK:  May I have a moment, Your
 5   Honor?
 6             THE COURT:  You may.
 7   BY MR. BECK:
 8        Q.   I think you said with Ms. Jacks that the
 9   FBI didn't do any forensic examination of these
10   tablets; right?
11        A.   That's what I was told.
12        Q.   But again, you just -- we talked about the
13   FBI only received them from the US Marshal service
14   in January of this year; right?
15        A.   That's what that document showed, yes.
16        Q.   Okay.  And did you know that -- did you
17   know that there was a court order in place that
18   prohibited anyone except for the person to whom the
19   tablets were registered from actually accessing
20   those tablets?
21        A.   No.
22             MR. BECK:  Nothing further, Your Honor.
23             THE COURT:  All right.  Thank you, Mr.
24   Beck.
25             Defendants have redirect of Mr. Bryan?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6519

1          Mr. Lowry?

2                    REDIRECT EXAMINATION

3     BY MR. LOWRY:

4          Q.   Good morning.

5          A.   Good morning.

6          Q.   Mr. Beck asked you if you could be 100%

7     certain that Mr. Armijo was operating the tablet at

8     the time the teen searches were performed, didn't

9     he?

10         A.   Yes, he did.

11         Q.   In your professional opinion, how certain

12    are you that Mr. Armenta performed those searches?

13         A.   I am more certain than not that Mr.

14    Armenta, based on my understanding of Cheryl

15    Martinez, based on my understanding of some of the

16    addresses, and the relationship of those addresses

17    to Mr. Armenta and former family members, former

18    spouses, that he would have been the one to conduct

19    those searches.

20              So I'm certainly more certain than not

21    that he also conducted these other searches that

22    are, at a minimum, in close proximity to the dates

23    and times in which he searched more personal items.

24         Q.   And based on the search terms that were

25    used -- and you described a few of those like -- and



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6520

```
 1   I'm begging the pardon of the Court, but we're
 2   talking Young Teenage Camel Toes and Young Teen.  Do
 3   you think that the person performing those searches
 4   had a desire to locate child pornography?
 5        A.   I can say solely based on the search term,
 6   that why would you use those search terms unless you
 7   were looking for it?
 8        Q.   Now, I want to move on.  Mr. Beck talked
 9   about the 2,223 searches.  Was there a particular
10   search that encompassed the vast majority of
11   those -- well, the significant amount of the
12   searches that were done?
13        A.   Yeah, I would say that pornography, in
14   general, was the majority of them.
15        Q.   And there was another search term used,
16   "Hecho in Mexico?"
17        A.   Yes, there was, I believe, a search for a
18   logo.  I think the search term was "Hecho in Mexico"
19   logo.  That was a large portion.
20        Q.   If you took away that search for the
21   "Hecho in Mexico," what percentage of the remainder
22   would be child pornography, do you think?
23             MR. BECK:  Objection, Your Honor,
24   speculation.
25             THE COURT:  Well, if he can give a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6521

1  percentage, he can state it.  If he can't, he'll

2  have to say he can't do it.

3       A.   I can't give you a precise percentage, but

4  I'd say the majority.

5  BY MR. LOWRY:

6       Q.   In terms of the five tablets that we

7  talked about, do you have a sense of how many images

8  were on the tablets, in general?

9       A.   There were thousands of images.  There

10  were, in particular, like in Facebook, for example,

11  there were over 10,000 Facebook images across those

12  five tablets that I examined.

13       Q.   And of the images you looked at, how many

14  were related to pornography?

15       A.   Almost all of them.

16            MR. LOWRY:  No further questions, Your

17  Honor.

18            THE COURT:  Thank you, Mr. Lowry.

19            Anyone else on the defendants' side have

20  redirect?

21            All right.  Mr. Bryan, you may step down.

22  Thank you for your testimony.

23            All right.  Do the defendants have their

24  next witness or evidence?

25            MS. DUNCAN:  Yes, Your Honor.  The defense

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  calls Edward Urtiaga.
 2          THE COURT:  Mr. Urtiaga, if you'll come up
 3  and next to the witness box on my right, your left.
 4  Before you're seated, my courtroom deputy, Ms.
 5  Standridge, will swear you in.
 6                  EDWARD URTIAGA,
 7      after having been first duly sworn under oath,
 8      was questioned, and testified as follows:
 9          THE CLERK:  State and spell your name for
10  the record.
11          THE WITNESS:  My name is Edward Urtiaga,
12  U-R-T-I-A-G-A.
13          THE COURT:  Mr. Urtiaga.
14          Ms. Duncan?
15          MS. DUNCAN:  Thank you, Your Honor.
16                  DIRECT EXAMINATION
17  BY MS. DUNCAN:
18      Q.   Good morning, Mr. Urtiaga.
19      A.   Good morning, ma'am.
20      Q.   Mr. Urtiaga, where were you employed in
21  February of 2015?
22      A.   New Mexico Corrections Department.
23      Q.   And what was your position in the New
24  Mexico Corrections Department?
25      A.   At the time, a sergeant.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6523

1     Q.   How long had you worked for the Department

2  of Corrections in 2015?

3     A.   Probably about nine years, approximately

4  nine years at that time.

5     Q.   So when did you start working for the

6  Department of Corrections?

7     A.   2006, February.

8     Q.   And so beginning in February 2006, what

9  positions have you held within the department?

10     A.   I've been a correctional officer, I've

11  worked in the gang unit for approximately two years.

12  I was a sergeant, and I'm currently a lieutenant.

13     Q.   You said you worked in the gang unit.  Is

14  that known by another name?

15     A.   STIU, Security Threat Intelligence Unit.

16     Q.   So I'd like to talk to you about an

17  incident that occurred on February 18, 2015.  Do you

18  know a man by the name of Eric Duran?

19     A.   Yes, ma'am.

20     Q.   And did you have a run-in with Mr. Duran

21  on February 18, 2015?

22     A.   Yes.

23     Q.   So can you tell us, how did that come

24  about?

25     A.   I was doing shakedowns with the shakedown

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6524

1    crew.  And I had found pieces of metal missing from

2    their light plates, so the inmates were placed on

3    PHD in X pod at the time.  And they had all been put

4    in there -- there were missing pieces of metal from

5    their light plates.

6         Q.   So let me back up and ask you a few

7    things.

8         A.   Yes.

9         Q.   So you said that you all had done a

10   shakedown and found pieces -- metal pieces missing

11   from inmates' cells; is that correct?

12        A.   Yes, ma'am.

13        Q.   Do you recall who those inmates were?

14        A.   Eric Duran, Robert Martinez, Roy Martinez,

15   I believe.  I don't remember the rest, ma'am.

16        Q.   Then you said, as a result of Corrections

17   finding those pieces of metal, they were put on PHD;

18   is that correct?

19        A.   Yes.  At that time we didn't find the

20   piece of metal.  We just knew they were missing.  So

21   the inmates were placed on PHD.

22        Q.   What is PHD?

23        A.   Prehearing detention.

24        Q.   And what does prehearing detention entail?

25        A.   The department puts inmates on PHD, I mean

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6525

1  if they're -- they're kind of pending investigation,

2  kind of in limbo, I guess you would say.  Their

3  property is taken, and stuff like that.

4       Q.   And you said that this happened in X pod;

5  is that correct?

6       A.   Where the metal was missing?

7       Q.   Yes.

8       A.   I don't recall.  They were in different

9  pods, these inmates at the time.  They were moved to

10  X pod.

11       Q.   And X pod, is that -- where is that

12  located?

13       A.   In Housing Unit 3B at the North facility.

14       Q.   And that is at the Penitentiary of New

15  Mexico?

16       A.   Yes, ma'am.

17       Q.   Is it also known as Level 6?

18       A.   At the time it was, yes, ma'am.

19       Q.   Okay.  So these inmates were in prehearing

20  detention when you encountered Mr. Duran.  So why

21  did you have an interaction with Mr. Duran?

22       A.   The inmates were placed on PHD and none of

23  their property was taken.  I was a sergeant.  I had

24  to do go in there and take their property.  It

25  wasn't done, it should have been done.  Eric Duran



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6526

```
1   was mad because -- I mean, I enforce the rules
2   there.  He was mad at me.  And --
3        Q.   And so at that point, did Mr. Duran make
4   any threats against you?
5        A.   Yes, ma'am.
6        Q.   What did he say to you?
7        A.   I mean, he said a bunch of things.  He
8   said that he knew where I lived.  He had told me my
9   address in front of other SNM members in that pod,
10  my license plate number on my car, told me he was
11  going to kill me.  And the SNM, anyway, the whole
12  SNM, that they were going to get me.
13       Q.   So you said that he told you your address.
14  And did he tell you your correct address at that
15  time?
16       A.   Yes, at the time, yes.
17       Q.   And did he also describe your license
18  plate number?  Did he say your correct license plate
19  number at that time?
20       A.   Yes.  He said the color of my car at the
21  time, also.
22       Q.   How did you feel?
23       A.   It was scary.  I've never --
24            MS. ARMIJO:  Objection, relevance.
25            THE COURT:  What is the relevance, how he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6527

1   feels about it?

2           MS. DUNCAN:  Well, Your Honor, I think

3   what Mr. Urtiaga is going to testify to is that,

4   although he'd been threatened by other inmates in

5   the past, but I think after this incident, what

6   sticks out in his mind is that Eric Duran disclosed

7   his home address and his vehicle information.

8           And so the Government has alleged that

9   Eric Duran just made these threats because he was

10  trying to cover up that he was an informant.  This

11  goes beyond that.  And this witness can testify how

12  that goes beyond what would you expect just to be a

13  cover-up.

14          THE COURT:  Well, I think it has some

15  relevance.  Overruled.

16  BY MS. DUNCAN:

17      Q.   So how did you feel when Mr. Duran blurted

18  out your home address?

19      A.   I was scared, ma'am.

20      Q.   And why were you scared?

21      A.   I'd never been told that before from

22  inmates.  I'd been threatened before, but never my

23  address and stuff like that, my -- a description of

24  my car, my license plate number.

25      Q.   How many other inmates were in the pod

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6528

1  when Mr. Duran disclosed your address and your

2  license plate number?

3       A.   I don't know exactly how many, but there

4  was -- it was all SNM members in good standing at

5  the time.  And that's -- you know, it's scary.

6  There were hit men in the pod, SNM hit men also.

7       Q.   How many cells are in X pod?

8       A.   Twelve.

9       Q.   And I think you said that no one had ever

10 blurted out your address or your personal

11 information before Eric Duran?

12      A.   Nothing like that.

13      Q.   And since then, has anyone ever made that

14 kind of particularized threat to you?

15      A.   No.

16      Q.   When Mr. Duran was threatening to kill you

17 and telling you he knew where you lived, did he also

18 refer to then Secretary of Corrections, Gregg

19 Marcantel?

20           MS. ARMIJO:  Objection, leading.

21           THE COURT:  Overruled.

22      A.   Yes.

23 BY MS. DUNCAN:

24      Q.   And did he tell you, "You're a bitch, just

25 like Marcantel"?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6529

```
 1      A.    Yes, ma'am.

 2      Q.    And at that time, what was the

 3  relationship between then Secretary Marcantel and

 4  inmates like Eric Duran?

 5      A.    They didn't --

 6            MS. ARMIJO:  Objection, foundation.

 7            THE COURT:  Well, lay some foundation as

 8  to whether he knows.

 9            MS. DUNCAN:  Sure.

10  BY MS. DUNCAN:

11      Q.    Are you aware of the relationship between

12  inmates like Eric Duran and then Secretary Marcantel

13  at that time in 2015?

14      A.    Somewhat, of what I saw.

15      Q.    If you could tell us, then, what you

16  observed of the relationship?

17            MS. ARMIJO:  Objection, foundation.  He

18  wasn't in STIU at the time.  He was a correctional

19  officer.  And he said somewhat, from what he could

20  see.

21            THE COURT:  Well, if he can relate what he

22  saw, he can relate what he saw.  Overruled.

23      A.    Well, Marcantel used to go talk to the

24  SNMers.  He used to go to the pods and actually talk

25  to them in the pods.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6530

```
 1   BY MS. DUNCAN:
 2        Q.   This was in 2015?
 3        A.   Yes.
 4        Q.   And how would they react when Mr.
 5   Marcantel would come into the pod?
 6        A.   They didn't like him at all.
 7        Q.   Did that include Eric Duran?
 8        A.   Yes.
 9        Q.   And do you know if Eric Duran was ever
10   disciplined for the threat he made against you?
11        A.   No.
12        Q.   You don't know or he wasn't?
13        A.   I don't know if he was disciplined.  I
14   don't know if he was disciplined.  I mean, from what
15   the --
16             MS. ARMIJO:  Objection, there is no
17   question before the witness.
18             THE COURT:  Overruled.  If Ms. Duncan
19   wants to solicit further, she can.
20   BY MS. DUNCAN:
21        Q.   Do you know when -- in the Department of
22   Corrections, is a threat against the life of a
23   correctional officer taken seriously?
24        A.   Yes.
25        Q.   And would you expect if an inmate had
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6531

```
1    threatened to kill a correctional officer and

2    disclosed personal information, that that inmate

3    would be disciplined?

4         A.   Yes.

5         Q.   Did you observe any evidence that

6    Mr. Duran suffered consequences for the threat he

7    made against you?

8         A.   No.

9         Q.   Now, after Mr. Duran threatened your life,

10   did you write a report to the administration

11   documenting that threat?

12        A.   Yes, ma'am.

13        Q.   Do you write reports every time an inmate

14   threatens you?

15        A.   No.

16        Q.   Is there a reason why you documented this

17   one?

18        A.   Because it stood out.  I took it serious.

19        Q.   And why did it stand out?

20        A.   He told me my address.  And I have a son.

21   I was scared.  I have a family.

22        Q.   Did you write your report the same day

23   that Eric Duran made those threats against you?

24        A.   Yes, ma'am.

25             MS. DUNCAN:  Your Honor, if I could have a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   moment?
 2           THE COURT:  You may.
 3   BY MS. DUNCAN:
 4       Q.  I just have a few more questions, Mr.
 5   Urtiaga.
 6           When Eric Duran threatened to kill you, I
 7   think you said that Roy Martinez was in the pod with
 8   him; is that right?
 9       A.  Yes.
10       Q.  Do you recall who else was in that pod
11   with him at the time?
12       A.  Eric Duran, Roy Martinez.  Robert Martinez
13   I think was in there, also.  I can't recall the
14   SNMers that were in that pod.
15       Q.  Do you recall if David Calbert was in the
16   pod?
17       A.  Oh, yes, he was.  He was on the top tier.
18       Q.  Anthony Ray Baca, was he in the pod?
19       A.  I don't remember.
20       Q.  Did you know in February of 2015, Mr. Baca
21   was out of state?
22       A.  I know he went out of state.  I don't know
23   the times.
24       Q.  Okay.  Fair enough.
25           Mr. Urtiaga, so you're currently on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6533

```
 1   administrative leave from the Department of
 2   Corrections; is that right?
 3        A.   Yes, ma'am.
 4        Q.   At the time, February of 2015, however,
 5   you were an active member of the Department of
 6   Corrections?
 7        A.   Can you repeat --
 8        Q.   I'm sorry.  You were an active employee in
 9   February 2015; correct?
10        A.   Yes.
11        Q.   That's when you documented this report of
12   the statements that Eric Duran had made against you?
13        A.   Yes, ma'am.
14             MS. DUNCAN:  Your Honor, I have no further
15   questions.  Thank you.
16             THE COURT:  Thank you, Ms. Duncan.
17             Does any other defendant have direct
18   examination of Mr. Urtiaga?
19             All right.  Ms. Armijo, do you have
20   cross-examination?
21                    CROSS-EXAMINATION
22   BY MS. ARMIJO:
23        Q.   Good morning, Mr. Urtiaga.
24        A.   Good morning, ma'am.
25        Q.   I guess you indicated that you are aware
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that Mr. Baca was moved out of state; correct?

2        A.   Yes.

3        Q.   Because he was leader of the SNM Gang;

4    correct?

5        A.   Yes.

6        Q.   And you indicated that you worked in STIU

7    for two years; is that correct?

8        A.   Approximately, yeah.

9        Q.   Okay.  And I believe that you previously

10   testified at a hearing it was because it was too

11   dangerous, it wasn't worth the pay increase?

12       A.   Yes.

13       Q.   Okay.  And that was approximately when,

14   that you were in STIU?

15       A.   I'm trying to think.  I can't give you the

16   dates.  I don't remember.

17       Q.   All right.  Well, how long have you been

18   with Corrections?

19       A.   Twelve years approximately, now.

20       Q.   And how long has it been since you've been

21   there?

22       A.   In STIU?

23       Q.   Yes.

24       A.   I think 2009, I believe.  I can't recall.

25       Q.   Okay.  You previously testified that it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   was approximately 2010.  Would that be correct?

 2        A.   Yeah, yeah, it was around that time,

 3   ma'am.

 4        Q.   Okay.  And so being in STIU -- and did you

 5   work as an STIU officer at that PNM?

 6        A.   Yes, ma'am.

 7        Q.   So you were intimately familiar, then,

 8   with the SNM, correct?

 9        A.   Yes.

10        Q.   And I believe you had indicated that you

11   were afraid of threats, especially from SNM Gang

12   members, because they are dangerous?

13        A.   Yes.

14        Q.   And the persons that -- specifically that

15   you recall that were -- you were taking their

16   property from them -- let's talk -- there's three

17   people you mentioned:  Robert Martinez; correct?

18        A.   Yes, ma'am.

19        Q.   What is his nickname?

20        A.   Baby Rob.

21        Q.   Roy Martinez, was that one of the

22   individuals?

23        A.   Yes, ma'am?

24        Q.   And what is his nickname?

25        A.   I can't recall his right now.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6536

1        Q.    Shadow?

2        A.    Shadow, there you go.

3        Q.    And what about Eric Duran, what was his

4   nickname?

5        A.    Eric Duran's, I don't remember his, ma'am.

6        Q.    Okay.

7        A.    We called him a bunch of different things.

8        Q.    Okay.  Well, I'm sure you probably did.

9   But going specifically to Baby Rob and Shadow, now,

10   those two, at the time -- and we're going back to

11   2015, specifically February 2015, those two were

12   leaders of SNM; correct?

13        A.    Yes, ma'am, at the time.

14        Q.    And Eric Duran was not a leader in the

15   SNM; correct?

16        A.    No.

17        Q.    And so if he was housed with other members

18   of SNM and he'd wanted to cooperate with law

19   enforcement, you would agree that he had to act

20   consistent with being an active SNM member; correct?

21        A.    Yes.

22        Q.    Okay.  So he wouldn't want to act any

23   differently, especially since he was in the presence

24   of two of the big leaders that were in state at the

25   time; correct?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6537

```
 1        A.   Yes.

 2        Q.   Now, you indicated that in 2015, they

 3   hated him.  And the "they" -- were you referring to

 4   SNM hated Gregg Marcantel?

 5        A.   Yes.

 6        Q.   All right.  And now, you were -- and you

 7   were unaware that Eric Duran had reached out to STIU

 8   to cooperate before the incident that you're

 9   testifying about; correct?

10        A.   Yes, I wasn't aware, ma'am.

11        Q.   All right.  And do you recall meeting with

12   the prosecution team, Mr. Castellano, Mr. Beck, and

13   myself back in October of this year up in Santa Fe?

14        A.   At the State Pen?

15        Q.   Yes.

16        A.   Yes.

17        Q.   And do you recall telling us that the

18   defense investigators were stalking you at your

19   house?

20             MS. DUNCAN:  Objection, Your Honor.  May

21   we approach?

22             THE COURT:  You may.

23             (The following proceedings were held at

24   the bench.)

25             MS. DUNCAN:  This is irrelevant, first of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  all.  I can absolutely clear it up on redirect.  I'm
 2  not sure why we're getting into it.
 3              THE COURT:  I don't think we ought to
 4  get -- these aren't prior inconsistent statements
 5  because he hasn't said them.  So I don't think there
 6  is any need to bring in the statements.  If you want
 7  to ask him if the investigators were talking to him,
 8  you can get into those.  But I don't think you need
 9  to get into prior inconsistent statements, because
10  he's not --
11              MS. ARMIJO:  I was just going to ask
12  him --
13              THE COURT:  Don't ask him about prior
14  statements, just asked if he's been stalked.
15  Because he's not been impeached and asked those
16  questions, out-of-court statements.  I don't know
17  what they're being offered for.  Let's just ask him
18  and you can deal with it on redirect.
19              MS. DUNCAN:  My objection is to the
20  stalking part, because it's irrelevant.  But I can
21  clear it up on redirect.
22              THE COURT:  All right.
23              (The following proceedings were held in
24  open court.)
25              THE COURT:  All right.  Ms. Armijo?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  BY MS. ARMIJO:

 2       Q.   Were you approached by defense

 3  investigators at your house?

 4       A.   By a private investigator, that's what she

 5  said.

 6       Q.   Okay.  And were you uncomfortable with the

 7  manner in which that person was waiting around your

 8  house?

 9       A.   Yeah, I was scared, ma'am.  I was -- I was

10  scared.

11       Q.   All right.  And you are currently still on

12  administrative leave; correct?

13       A.   Yes, ma'am.

14       Q.   For an incident that occurred in November;

15  correct?

16       A.   Yes, ma'am.

17       Q.   All right.  And that allegation involves

18  excessive force; correct?

19       A.   Yes, ma'am.

20            MS. ARMIJO:  All right.  Nothing further.

21            THE COURT:  Thank you, Ms. Armijo.

22            Ms. Duncan, do you have redirect of Mr.

23  Urtiaga?

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6540

```
 1                    REDIRECT EXAMINATION
 2   BY MS. DUNCAN:
 3        Q.   Mr. Urtiaga, you testified about your
 4   first meeting with the defense investigator.  Do you
 5   remember that?  Just -- Ms. Armijo just asked you
 6   about meeting with a female investigator from the
 7   defense?
 8        A.   Yes.
 9        Q.   And that you were uncomfortable during
10   that first meeting?
11        A.   Yeah, I was.
12        Q.   And since then you have met with myself
13   and other investigators for the defense; correct?
14        A.   Yes, ma'am.
15        Q.   And were you uncomfortable during any of
16   those meetings?
17        A.   No.
18        Q.   And do you have a concern that you will be
19   retaliated against for testifying on behalf of the
20   defense in this case?
21        A.   I already am.  They are retaliating
22   against me -- the department -- right now.
23        Q.   And when you say "they" and "the
24   department," you mean the Department of Corrections?
25        A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   You were asked about the members of -- the

2    people of the SNM who had the antagonistic

3    relationship with Mr. Marcantel in 2015.  Do you

4    remember that?

5    A.   Yes, ma'am.

6    Q.   I just want to show you what has been

7    admitted into evidence as Defendant's Exhibit V4.

8         Officer Urtiaga, have you ever seen a

9    report like this?

10   A.   That's his location history.

11   Q.   And does this show where Mr. Baca has been

12   housed over a period of time?

13   A.   Yes, ma'am.

14   Q.   And if you could look about halfway down

15   the page.  Do you see the entry, March 12, 2014?

16   A.   Yes, ma'am.

17   Q.   Does that show that from March 12, 2014,

18   to October 22, 2015, that Mr. Baca was in the

19   Colorado Department of Corrections?

20   A.   Yes, ma'am.

21   Q.   So he was not in Level 6 during that

22   period of time; correct?

23   A.   Yes, ma'am.

24   Q.   And with respect to the statements that

25   Mr. Duran made to you in 2015, did Mr. Duran tell

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   you he got that information from his girlfriend?

2       A.   Yes, he said his --

3            MS. ARMIJO:  Objection, hearsay.

4            THE COURT:  Well, what are you trying

5   prove with this statement?

6            MS. DUNCAN:  Your Honor, that Mr. Duran

7   represented to this witness that he got the

8   information from his girlfriend, who worked for an

9   attorney named Ron Bell.

10           THE COURT:  I think that is for the truth

11  of the matter.  Sustained.

12  BY MS. DUNCAN:

13      Q.   Did you ever retain lawyer Ron Bell to

14  represent you in an automobile accident?

15      A.   Yes, ma'am.

16      Q.   And during the course of that

17  representation, did you provide Attorney Bell and

18  his staff personal information about yourself?

19      A.   Yes, ma'am.

20      Q.   And did that include information like your

21  home address?

22      A.   Yes, ma'am.

23      Q.   And your vehicle information?

24      A.   Yes, ma'am.

25      Q.   Finally, you mentioned you were unsure if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Mr. Duran was sanctioned for the threats he made

2   against you.  Do inmates sometimes negotiate with

3   the administration or STIU to avoid sanctions when

4   they've incurred a disciplinary infraction?

5           MS. ARMIJO:  Objection, beyond the scope

6   of cross.

7           THE COURT:  Overruled.

8       A.   Yes.

9   BY MS. DUNCAN:

10      Q.   And so they'll provide -- try to provide

11  information in order not to get into trouble for

12  those infractions?

13      A.   Yes.

14      Q.   And does the administration of STIU

15  sometimes dismiss infractions based on the inmates

16  willingness to provide information?

17          MS. ARMIJO:  Objection, leading.

18          THE COURT:  Overruled.

19      A.   Yes, they do.

20  BY MS. DUNCAN:

21      Q.   Or do they sometimes also find -- they

22  discipline the inmate, but then reduce the penalty?

23      A.   Yes.

24          MS. DUNCAN:  Thank you very much, Mr.

25  Urtiaga.  I have no further questions.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6544

```
 1            THE COURT:  Thank you, Ms. Duncan.

 2            Do you have anything further, Ms. Armijo?

 3            MS. ARMIJO:  Yes, Your Honor.

 4            THE COURT:  Let me see if anybody else --

 5  any defendant has redirect.

 6            Not seeing any, Ms. Armijo?

 7                 RECROSS-EXAMINATION

 8  BY MS. ARMIJO:

 9      Q.   You just indicated that you felt that

10  Corrections is retaliating against you; is that

11  correct?

12      A.   Um-hum.

13      Q.   Yes?

14      A.   Yes, ma'am, I'm sorry.

15      Q.   You've been on administrative leave from

16  Corrections since an incident in November; correct?

17      A.   Yes.

18      Q.   And that incident involves two inmates --

19  at least two inmates?

20            MS. DUNCAN:  Your Honor, I'm going to

21  object to this line.  This is hearsay.

22            THE COURT:  Well, don't get into hearsay.

23  But let's see if we can ask questions that avoid

24  hearsay.

25
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1  BY MS. ARMIJO:
 2       Q.   This incident -- initially, you reported
 3  the incident because you had indicated that somebody
 4  had spit on you -- an inmate; correct?
 5       A.   Yes, ma'am.
 6       Q.   And then as the matter was being
 7  investigated by State Police, that matter actually
 8  turned into an investigation against you and another
 9  officer; correct?
10       A.   Yes.
11       Q.   Yes?
12       A.   I don't understand your question.
13       Q.   Well, initially you had reported an
14  incident involving inmates, and you reported it as
15  you were a victim; correct?
16       A.   Yes.  On my report, yes.
17       Q.   Okay.  And then New Mexico State Police
18  came out and investigated that incident; correct?
19       A.   The department called State Police.
20       Q.   Correct?
21       A.   Yes.
22       Q.   The department called State Police and
23  State Police came out.  And just so that we're
24  specific, did this occur on November 10th of 2017?
25       A.   Yes, ma'am.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6546

1      Q.   And then once New Mexico Police started

2   investigating it, would you agree that the

3   investigation then turned actually into an

4   investigation on you and another correctional

5   officer for excessive force?

6      A.   I don't understand that question.  That

7   question you're asking, did it turn into --

8      Q.   Yes.  Did the investigation that you

9   initially said you were a victim --

10     A.   It wasn't just me, ma'am.  This whole --

11  this was a big incident with a bunch of staff.

12     Q.   Okay.  Listen to my question.  I'm being

13  very specific.  And if you don't understand it, then

14  let me know.

15     A.   Okay.

16     Q.   Okay.  I think we've already established

17  that you indicated and wrote probably a memo, is

18  that correct, indicating that you were a victim of

19  someone spitting on you -- an inmate; correct?

20     A.   Yes.

21     Q.   Okay.  And then, as a result of that, New

22  Mexico State Police was called in to investigate it;

23  correct?

24     A.   It wasn't a result of that.

25     Q.   Okay.  New Mexico Police was allowed --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


1    came in to investigate the matter?

2         A.    Yes.

3         Q.    Correct?

4         A.    Yes.

5         Q.    And then -- I'm going to fast-forward now

6    to February.  New Mexico State Police has been

7    investigating both you and potentially another

8    correctional officer for excessive use of force;

9    correct?

10        A.    I guess.  I don't know if they're still

11   investigating us.  I don't know how that works.

12        Q.    Oh, really?  Because back when you

13   testified --

14        A.    You're the one that told me they were

15   investigating me, ma'am.

16        Q.    Okay.  Well, when did you testify

17   previously before the Judge?

18        A.    Here?

19        Q.    Yes.

20        A.    Well, what was it, in January?

21        Q.    Okay.  And then at that time you were --

22   you've been on administrative leave this whole time;

23   correct?

24        A.    Yes.

25        Q.    And then, when you were questioned last

SANTA FE OFFICE                                    MAIN OFFICE
119 East Marcy, Suite 110                    201 Third NW, Suite 1630
Santa Fe, NM 87501                            Albuquerque, NM 87102
(505) 989-4949                                        (505) 843-9494
FAX (505) 820-6349                               FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

6548

```
 1   time, I believe I asked you questions specifically
 2   that the case has been submitted to the Santa Fe
 3   District Attorney's Office; correct?
 4       A.   You didn't tell me that.
 5            MS. DUNCAN:  Objection, Your Honor,
 6   misstating his testimony.
 7            THE COURT:  I'll let you work with him on
 8   redirect.  Overruled.
 9   BY MS. ARMIJO:
10       Q.   Well, let's see, you indicated that you
11   had been placed on administrative leave pending
12   possible misconduct -- pending possible misconduct;
13   correct?
14       A.   Yes.
15       Q.   And you've been on that since that time;
16   correct?
17       A.   Since November, yes.
18       Q.   And I asked you the question:  "But you
19   were aware that there is allegations against you,
20   that New Mexico State Police is investigating you;
21   correct?"
22            And you said, "Yes," correct?
23       A.   Yes.
24       Q.   Okay.  And then it was brought to your
25   attention that there were allegations of excessive
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6549

1   force; correct?

2       A.   Yes.

3       Q.   And you knew that before you testified;

4   correct?

5       A.   Yes, from the department.

6       Q.   Okay.  And are you saying that you still

7   don't know what's going on with that case, even

8   after you testified?

9       A.   I don't know what's going on right now,

10  yes.

11      Q.   Okay.

12      A.   The State Police, they don't come to you

13  and tell you, "You're cleared, we cleared you."  If

14  they're investigating something, they can keep you

15  in limbo for up to like two years.

16      Q.   Okay.  But if you were cleared, the

17  Corrections Department would have brought you back;

18  correct?

19          MS. DUNCAN:  Your Honor, I'm going to

20  object.  This calls for speculation.

21          THE COURT:  Well, if he knows the answer,

22  he can answer.  If he doesn't, he can say so.

23      A.   No.  The department has retaliated against

24  me, ma'am.  Hold on, hold on.

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  BY MS. ARMIJO:

 2      Q.   No, sir.  I'm the one asking the

 3  questions.

 4      A.   Okay, ma'am.  I'm trying to answer your

 5  question.

 6      Q.   Okay.  You've been placed on leave since

 7  November 10, 2017; correct?

 8      A.   Yes.

 9      Q.   Okay.  Now, why don't you tell us how the

10  department is retaliating against you.

11      A.   Because there has been other incidents, a

12  bunch, that there is actual use of force on camera.

13  The department has covered it up.  They haven't put

14  any of the staff -- just a week ago, an officer went

15  in an inmate cell and beat him up, on camera,

16  unjustified.  They did not put the officer on

17  administrative leave.  The department -- they're

18  retaliating against me for testifying.

19           I was scared to do this whole thing

20  because I knew this was going to happen to me.

21      Q.   Okay.  Who in the department do you think

22  is retaliating?

23      A.   Anthony Romero.  He doesn't like me.

24      Q.   So if we call Anthony Romero to testify

25  and ask him that, do you think that he's going to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   say --
 2        A.   Of course, he's going to lie, ma'am.
 3        Q.   Okay.
 4             THE COURT:  Well, let's just say -- we
 5   don't need to have people speculating about lying.
 6   So I'm going to strike that answer.  And if you say
 7   that you would disagree with his statement, I think
 8   you can say that.  But let's leave it for the jury,
 9   the determination.
10             MS. ARMIJO:  No further questions, Your
11   Honor.
12             THE COURT:  Thank you, Ms. Armijo.
13             Ms. Duncan?
14               FURTHER REDIRECT EXAMINATION
15   BY MS. DUNCAN:
16        Q.   Just a few questions, Mr. Urtiaga.  You
17   were contacted by the defense investigator in
18   October of 2017; correct?
19        A.   Yes.
20        Q.   And at that point you alerted both the
21   prosecution and the Department of Corrections that
22   the defense was seeking to interview you?
23        A.   Yes.
24        Q.   So you were placed on administrative leave
25   in October -- I mean November of 2017; correct?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   Yes.

2    Q.   And so that was after the Department of

3 Corrections learned that you might be called as a

4 defense witness in this case?

5    A.   Yes, ma'am.

6    Q.   And you testified that you've been on

7 administrative leave since November of 2017.  But

8 you've been on paid administrative leave; correct?

9    A.   Yes, ma'am.

10   Q.   And you're still being paid by the

11 Department of Corrections?

12   A.   Yes, ma'am.

13        MS. DUNCAN:  Thank you.  I have no further

14 questions, Your Honor.

15        THE COURT:  Thank you, Ms. Duncan.

16        Any other defendants have any redirect of

17 Mr. Urtiaga?

18        All right.  Mr. Urtiaga, you may step

19 down.  Is there any reason that Mr. Urtiaga cannot

20 be excused from the proceedings?

21        MS. ARMIJO:  We'd like to keep him on

22 standby.

23        THE COURT:  You'll be subject to re-call,

24 but you'll have to remain outside of the courtroom.

25 You are free to leave the building.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6553

1          Thank you, Mr. Urtiaga.  Thank you for
2  your testimony.

3          Mr. Lowry, do the defendants have their
4  next witness or evidence?

5          MR. LOWRY:  Yes, Your Honor.  Just one
6  point of clarification.  Can Mr. Urtiaga return to
7  Santa Fe?

8          THE COURT:  You don't have any objection
9  to that?

10          MS. ARMIJO:  No, Your Honor.

11          THE COURT:  All right.  You can return to
12  Santa Fe at this time.

13          MR. LOWRY:  Your Honor, the defense would
14  call Bryan Acee to the stand.

15          THE COURT:  All right.  Mr. Acee, if
16  you'll return to the stand, I'll remind you that
17  you're still under oath.

18          Mr. Lowry.

19          MR. LOWRY:  May it please the Court.

20              BRYAN ACEE,
21      after having been previously duly sworn under
22      oath, was questioned, and continued testifying
23      as follows:

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6554

```
 1                    DIRECT EXAMINATION
 2   BY MR. LOWRY:
 3        Q.   Good morning, Agent Acee.
 4        A.   Good morning.
 5        Q.   Agent Acee, I just want to follow up on
 6   that last testimony we heard, real quickly.  You've
 7   participated in undercover operations, haven't you?
 8        A.   Yes, sir.
 9        Q.   And you know what it's like to have
10   family?
11        A.   I do.
12        Q.   And you know what it's like to cherish
13   your children?
14        A.   Yes, sir.
15        Q.   If you were involved in an undercover
16   operation, and say you were working with a fellow
17   agent that had children --
18        A.   Yes, sir.
19        Q.   Would you tell the targets of your
20   investigation -- let's say -- let me back up for a
21   second.  You've investigated other drug
22   organizations?
23        A.   Yes, sir.
24        Q.   You're an expert in the Juarez Cartel,
25   correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6555

```
 1        A.   Yes.
 2        Q.   So if you were employed, and you were
 3   interfacing with the Juarez Cartel, would you share
 4   the personal home address, license plate number of a
 5   fellow FBI agent with the cartel?
 6        A.   No, sir.
 7        Q.   You wouldn't think that that would be in
 8   the line of duty as your role as an undercover
 9   agent, would you?
10        A.   No.  I think that would be a terrible
11   thing to do.
12        Q.   Now, I want to talk to you about your
13   relationship with Eric Duran.  Can you pull up AE1.
14   And you know this to be Eric Duran, correct?
15        A.   Yes.
16        Q.   You didn't sign Mr. Duran up as a
17   confidential human source of information, did you?
18        A.   No, sir.
19        Q.   But you inherited him as a source of
20   information?
21        A.   That's right.
22        Q.   And that transfer probably happened in
23   August 5, 2015?
24        A.   Yes.
25        Q.   And at the time of that transfer, you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN &ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6556

 1   wrote a report detailing the transfer and your

 2   impressions of Mr. Duran?

 3        A.   I'd call it just my first debrief.

 4        Q.   Okay.  But your report indicated that

 5   Mr. Duran was -- well, your report indicated that my

 6   client, Anthony Ray Baca, was eager to kill the

 7   Secretary of Corrections, Gregg Marcantel?

 8        A.   Yes, sir.

 9        Q.   And that's what you believed at that time,

10   correct?

11        A.   Well, that's what Mr. Duran told me, so

12   that's what I wrote down.

13        Q.   Now, in follow-up on that investigation,

14   you had Duran record Mr. Baca at Level 6 in Santa

15   Fe, correct?

16        A.   Yes, sir.

17        Q.   And as part of that, as signing him up,

18   you give him certain admonishments, correct?

19        A.   Yes, sir.

20        Q.   But you really didn't give him much in the

21   way of instruction on how to use the recording

22   device?

23             MR. CASTELLANO:  Objection to leading

24   questions on direct, Your Honor.

25             THE COURT:  Overruled.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6557

```
 1        A.   I didn't give him a tremendous amount of
 2   instruction, no.
 3   BY MR. LOWRY:
 4        Q.   But the one instruction you did give him
 5   is that -- and we're talking about the recorded
 6   conversations, and I'll quote you from a pretrial
 7   hearing:  "If it's not recorded, the conversation,
 8   in my mind, didn't happen."
 9        A.   I often say that, yes.
10        Q.   But that was an instruction you gave to
11   Mr. Duran?
12        A.   I believe so.
13        Q.   Because you wanted him to tape Mr. Baca
14   and others about what you perceived to be their
15   criminal activities?
16        A.   Yes, sir.
17        Q.   And you also testified -- you've testified
18   a number of times in this case, have you not?
19        A.   I have.
20        Q.   Probably too many to count at this point?
21        A.   A lot of hours, yes.
22        Q.   And on a different occasion under oath,
23   you testified that you instructed Mr. Duran, quote:
24   "If the informant tells me a conversation happened
25   and it's not there, then they're going to have to do
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1 it over.  They don't get credit for it, or we don't

2 use it in terms of asking for prosecution."

3          Is that right?

4     A.   Yes, that's generally what happens.

5     Q.   And that's what -- I mean, you told this

6 Court that under oath?

7     A.   Yes, sir.

8     Q.   Now, you were responsible for

9 strategically placing my client, Mr. Baca, next to

10 Mr. Duran in October of 2015?

11     A.   Ultimately, Corrections did it, but at my

12 request, yes.

13     Q.   Right.  And actually, the whole setup when

14 Mr. Baca returned to New Mexico from Colorado was a

15 strategic placement on your part?

16     A.   Yes, sir.

17     Q.   And you had Mr. Baca in the cell next to

18 Eric Duran?

19     A.   Yes.

20     Q.   And you had Roy Martinez very close by?

21     A.   I don't remember that.  I didn't make that

22 request.  I do believe he was in the same area.

23     Q.   Right.  But the purpose was so Mr. Duran

24 could record Mr. Baca?

25     A.   That was my primary objective, yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6559

1      Q.   And he did record Mr. Baca?

2      A.   Yes, sir.

3      Q.   But the initial recordings in October of

4   2015 didn't reveal any desire on Mr. Baca's part to

5   murder the Secretary of Corrections, did they?

6      A.   I don't believe they did.

7      Q.   And, in fact, it took well into November

8   for Mr. -- well, are you aware of any recording

9   where Mr. Baca says affirmatively, "I want to kill

10   the Secretary of Corrections"?

11      A.   Not in those exact words.

12      Q.   And, in fact, all of the summaries of the

13   conversations that the FBI developed for you to

14   review, they really don't indicate that kind of

15   affirmative declaration on behalf of Mr. Baca?

16      A.   I think they demonstrate that he does want

17   to kill Mr. Marcantel.  Not in the exact phrase you

18   used, though.

19      Q.   But that was much later on into November?

20      A.   Into November, yes.

21      Q.   And during the pretrial hearings, again,

22   you've testified a number of times; correct?

23      A.   Yes, sir.

24      Q.   Each time, you took the oath of a witness

25   to tell the truth?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   Yes, sir.

2    Q.   And in prior testimony you've agreed that

3  Mr. Duran was a skilled manipulator?

4    A.   I think he is.

5    Q.   And you've said that he has, I think in

6  your words, "the gift of gab"?

7    A.   Did I say that?

8    Q.   Yes, you did.

9    A.   Okay.

10   Q.   Would you like to see the transcript?

11   A.   No.  I believe you.  He's a talker, I

12 agree.

13   Q.   You also testified at pretrial hearings

14 that any indication that this conspiracy to murder

15 the Secretary of Corrections wasn't captured until

16 after Mr. Duran disclosed to Mr. Baca that he had a

17 cellular telephone?

18   A.   I guess the answer is "Yes."  I mean, he

19 had the recording device and the phone at the same

20 time.

21   Q.   But do you recall that testimony where you

22 said that anything that was captured was captured

23 after the cellphone?

24   A.   How else would we capture it?  Yeah, I

25 guess that's true.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6561

1    Q.    Well, you had an electronic ELSUR device,

2    right?

3    A.    Yes.  They were introduced at the same

4    time.

5    Q.    Right.  But in theory you could -- well,

6    let me back up for a second.  Mr. Duran didn't

7    reveal that he had a cellphone to Mr. Baca until

8    much later, correct?

9    A.    I don't know that that's true.

10   Q.    Do you recall exchanging text messages

11   with Mr. Duran, where Mr. Duran asked you if he

12   could let Mr. Baca know that he had a cellphone?

13   A.    I don't recall texting about that, no.

14         MR. LOWRY:  May I approach, Your Honor?

15         THE COURT:  You may.

16   A.    Thank you.

17   BY MR. LOWRY:

18   Q.    Does that refresh your recollection?

19   A.    Yes.

20         MR. LOWRY:  May I approach?

21         THE COURT:  You may.

22   BY MR. LOWRY:

23   Q.    Now, the intercepts.  You were responsible

24   for getting the intercepts on the phone to capture

25   the text messages?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6562

1      A.    Yes, sir.

2      Q.    And the intercepts captured the date and

3  the time and the content of the text messages back

4  and forth?

5      A.    Yes.

6      Q.    And it's fair to say that on November 3,

7  2015, Mr. Duran asked you if he could tell Mr. Baca

8  that he had a cellphone?

9      A.    Yes.

10     Q.    And that you responded affirmatively and

11 you said, "Let's do it.  We'll be all over the

12 streets"?

13     A.    Yes, sir.

14     Q.    And that response from you was on November

15 4, 2015, at approximately 8:15 a.m.?

16     A.    Yes.

17     Q.    So up until November 4th, Mr. Baca wasn't

18 aware that Mr. Duran had a cellphone?

19     A.    That's correct.

20     Q.    And so between October 22nd, when Mr. Baca

21 arrived at the North facility, and November 4, 2015,

22 any recording that Mr. Duran obtained was obtained

23 using solely the ELSUR device?

24     A.    I think he arrived October 24th.  But

25 you're correct.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6563

 1          Q.   Well, we could go back and look, but --

 2          A.   I don't need to argue that point.  I'll

 3     take your representation, sir.  I thought he arrived

 4     the 24th.

 5          Q.   Would it refresh your recollection if you

 6     looked at the HAWK data report?

 7          A.   Well, does that tell us that he recorded

 8     Baca earlier than the 24th?

 9          Q.   Yes, sir.

10          A.   Yes, sir.

11               MR. LOWRY:  May I approach, Your Honor?

12               THE COURT:  You may.

13     BY MR. LOWRY:

14          Q.   Now, Mr. Acee, it's fair to say that this

15     is an electronic report that captured all the

16     information when Mr. Duran used a covert electronic

17     recording device with Mr. Baca?

18          A.   Yes.

19          Q.   And the first recording indicated on here

20     is October 22, 2015?

21          A.   Yes.

22          Q.   And it's approximately -- it's 19:29

23     hours, so that's what?  7:30 p.m.?

24          A.   Yes, sir.

25          Q.   So that would indicate when Mr. Baca

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   arrived sometime on the 22nd?

2       A.   It indicates that Duran started recording

3   on the 22nd.

4       Q.   All right.  But Mr. Baca had to be in the

5   building for him to record him with the covert

6   electronic device?

7       A.   That makes sense.

8       Q.   And so there were at least 13 days

9   transpired between the 22nd, when he arrived, and

10  November 2nd, when this cellphone activity is

11  engaged?

12      A.   Yes.

13      Q.   And I believe you agreed with me earlier

14  on that during that period of time there was no

15  indication whatsoever that Mr. Baca wanted to kill

16  the Secretary of Corrections?

17      A.   There is no recorded information.

18      Q.   Right.  And according to your instructions

19  to Mr. Duran, if it wasn't recorded, it didn't

20  happen?

21      A.   Correct.

22      Q.   Now, when I asked you at the pretrial

23  hearings, you indicated in sworn testimony that it

24  took six to eight weeks for Mr. Baca to open up with

25  Mr. Duran about his plans?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6565

```
 1        A.    Again, I'll take your representation, but
 2   I don't remember saying that.
 3        Q.    Would you like to see the transcript?
 4        A.    Sure.
 5              MR. LOWRY:  May I approach, Your Honor?
 6              THE COURT:  You may.
 7        A.    Okay.  Thank you.
 8   BY MR. LOWRY:
 9        Q.    Does that refresh your recollection, Agent
10   Acee, that that was your testimony, that Duran eased
11   his way into the conversation over a six- to eight-
12   week period?
13        A.    Yes, sir.
14        Q.    Pardon me?
15        A.    Yes, sir.
16        Q.    And when you were at the hearing
17   testifying under oath, you were doing your best to
18   give us the truth?
19        A.    I always do, sir.
20        Q.    Okay.  And that's part of your duties as a
21   sworn FBI agent?
22        A.    Yes, sir.
23        Q.    The reason I ask, Agent Acee, is because
24   I'm a little flummoxed, because your Grand Jury
25   testimony in this case indicated that Mr. Baca, upon
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6566

```
 1  his return to New Mexico, within 48 hours expressed

 2  the desire to kill the Secretary of Corrections.  Do

 3  you recall that testimony?

 4      A.   You'd have to refresh my memory.

 5      Q.   Sure.  Do you recall testifying in front

 6  of the Grand Jury on December 1, 2015?

 7      A.   Yes, sir.

 8           MR. LOWRY:  May I approach, Your Honor?

 9           THE COURT:  You may.

10      A.   Do you want me to turn the page, or is

11  it --

12  BY MR. LOWRY:

13      Q.   No, I just want you to refresh your

14  recollection.  Please read it.

15      A.   Just what you've highlighted, sir?

16      Q.   Yes.

17      A.   Okay.

18      Q.   So if that testimony is correct, you said

19  immediately upon his return --

20      A.   I was asked the question, "Upon his

21  return, did he immediately start putting out hits?"

22  And my answer was, "Yes."

23           And I stand by that as I sit here today.

24  I didn't see any reference to 48 hours or anything

25  like that.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6567

```
1        Q.   Bear with me.  I'll get to that one.
2             MR. LOWRY:  May I approach, Your Honor?
3             THE COURT:  You may.
4        A.   Okay.  Thank you.
5   BY MR. LOWRY:
6        Q.   So you would agree with me that was your
7   testimony to the Grand Jury, that as soon as Mr.
8   Baca got back, within I think the first 48 hours he
9   renewed the order to hit Marcantel?
10       A.   Yes, sir.
11       Q.   And so both "immediately" and "48 hours"
12  is much sooner than the 13 or two weeks between the
13  22nd and the 4th.  Would you agree with me?
14       A.   I do agree with your question about the
15  timeliness of this, but I also mentioned the other
16  people that he renewed or that he talked about
17  hitting.  I mentioned Santistevan and Vigil.  And I
18  think he did talk about Santistevan before
19  Marcantel.
20       Q.   Right.  But in the exhibit I just showed
21  you, you say he renewed the order to hit Marcantel?
22       A.   I think.  Is that in there?
23       Q.   I think.
24       A.   Yes.  I did say that, yes.
25       Q.   But according to your directions to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Mr. Duran, you didn't have any recording indicating

2  that?

3       A.   Not within 48 hours, no.  It wasn't until

4  in November, as you pointed out earlier.

5       Q.   Okay.  So did you get the 48 hours -- I

6  mean, is that something Eric Duran told you?

7       A.   Well, Duran would give me updates, yes,

8  but I tried to rely more on the recordings.  I put

9  more emphasis on what was actually recorded.

10      Q.   You did more than that.  You actually

11 affirmatively told everyone that if it wasn't

12 recorded, it didn't happen?

13      A.   Well, I often tell the informants that,

14 yeah.  It's important that they get recordings.  I

15 want to emphasize that with the informants in any

16 case.

17      Q.   But when you were in front of the Grand

18 Jury, you didn't have any recording that that had

19 happened?

20      A.   Regarding Marcantel, no.

21      Q.   But nonetheless, that was your testimony

22 to the Grand Jury, that that had happened with

23 regard to Marcantel?

24      A.   I said I thought that that had happened.

25      Q.   Now, unlike a situation today where we

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                Albuquerque, NM 87102
(505) 989-4949                                          (505) 843-9494
FAX (505) 820-6349                                  FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

6569

```
 1   have a full Court, or even a pretrial hearing, at a
 2   Grand Jury, the only people there are yourself and
 3   the prosecutors and authorized staff like the court
 4   reporter, correct?
 5        A.   Yes, sir.
 6        Q.   So nobody else is in the room to correct
 7   testimony that could be off?
 8        A.   Like an adversarial?
 9        Q.   Correct.
10        A.   No.
11        Q.   You're placed under the same oath that you
12   are today, to be honest with the Grand Jury?
13        A.   Yes, sir.  As soon as you walk in, you're
14   placed under oath.
15        Q.   Now, I want to talk about sort of your
16   comments -- well, your testimony last week when we
17   left off.  You've heard all the testimony in this
18   case?  Well, most of it?
19        A.   I have, sir.
20        Q.   And you testified that initial debriefs
21   with an informant, it's a 30,000-foot view, correct?
22        A.   Yes, sir.
23        Q.   And you testified that you might not get
24   all of the information relevant to what you're
25   looking for in that initial debrief?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6570

```
 1        A.   I think I almost never do in the initial
 2   one.
 3        Q.   But it's fair to say in your initial
 4   debriefs, you know what you're looking for?
 5        A.   Yes.
 6        Q.   And you ask the individual about what
 7   you're looking for?
 8        A.   Well, I don't always know what they know,
 9   so I want to make that distinction.  I'm trying to
10   gauge how much.  In the context of the SNM, there is
11   30-plus years of stuff I was looking at.  So I know
12   the overview of what I want to ask, but to really
13   drill down on it, it takes a little longer.
14        Q.   Right.  But in the context of those 30
15   years of FBI investigation, it's fair to say that
16   until this conspiracy to murder the Secretary of
17   Corrections, no FBI agent had been successful at
18   convincing the Department of Justice to mount a RICO
19   prosecution?
20        A.   That's true.
21        Q.   Because it was tried in 2009, and it was
22   rejected by the U.S. Attorney's Office, wasn't it?
23        A.   Did they want a RICO?  I think they were
24   just charging -- trying to charge for a specific
25   couple of homicides.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   But the point being, the Department of

2 Justice turned it down?

3     A.   The United States Attorney's Office for

4 the District of New Mexico turned it down.

5     Q.   That's part of the Department of Justice,

6 is it not?

7     A.   It is.

8     Q.   Now, you, from the very beginning of this

9 case, based on what Mr. Duran was telling you, were

10 focused on this Marcantel conspiracy?

11     A.   It was one of many areas, yes.

12     Q.   And it was a primary area, was it not?

13     A.   It was a very important area.

14     Q.   In fact, it was so important, Mr. Duran

15 got lump sum awards for purportedly saving the

16 secretary's life?

17     A.   He did receive those from the Department

18 of Corrections.

19     Q.   So, I mean, that's sort of an indication

20 of the value that law enforcement put on the case?

21     A.   That the Department of Corrections put on

22 it, yes.

23     Q.   And you asked about the Marcantel

24 conspiracy every time you debriefed an individual

25 that came to you that knew about the SNM?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6572

1       A.   I often did.  I mean, I've debriefed
2   between 50 and 100 SNM members.  You know, guys
3   getting out of the federal prison I don't typically
4   ask because I don't think they know anything.  But I
5   would ask that question a lot of people that I think
6   might know about it.
7       Q.   And I know you weren't at Mr. Duran's
8   February 19, 2015, initial interview with the FBI
9   agent that landed him, but have you looked at the
10  transcript of that conversation?
11      A.   I have.
12      Q.   And even then, the FBI asked Mr. Duran
13  about Mr. Marcantel?
14      A.   Correct.
15      Q.   And at that point in time, Mr. Duran said
16  he didn't know anything about a hit on the
17  secretary?
18      A.   I believe that's correct.
19      Q.   Even other individuals like Roy Martinez,
20  who has testified before this jury, his first
21  interview with you, he said that it was Eric Duran
22  that approached him about killing Santistevan, not
23  vice versa?
24      A.   I don't recall that.
25      Q.   Okay.  Do you recall meeting with Roy Paul

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Martinez on December 17, 2015?
 2        A.   You'd have to refresh my memory.
 3        Q.   Sure.
 4             MR. LOWRY:  May I approach, Your Honor?
 5             THE COURT:  You may.
 6        A.   These aren't my writing.  But I'm happy to
 7   review it.  These are another agent's notes.  Would
 8   you like me to review?
 9   BY MR. LOWRY:
10        Q.   Sure.  Do you recognize the writing?
11        A.   I think it's Agent Sainato.  Did I guess
12   correctly?  The 302 should indicate who --
13        Q.   It's -- Sainato wrote the 302.
14        A.   These are his notes, then.
15        Q.   But you were at that debrief, correct?
16        A.   Yes, sir.
17        Q.   And is there anything in Agent Sainato's
18   notes you would disagree with?
19        A.   I assume that he took the notes as the
20   conversation was happening, and that he would have
21   accurately -- nothing jumps out at me.  He would
22   have accurately written his notes.
23             MR. LOWRY:  May I approach, Your Honor?
24             THE COURT:  You may.
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   BY MR. LOWRY:
 2       Q.   You would agree that's Agent Sainato's
 3   present sense impression of the conversation?
 4       A.   Yes.
 5       Q.   And his impression -- I mean, it says
 6   "Marcantel hit."  That's his -- that's the way he
 7   captioned it, correct?
 8            MR. CASTELLANO:  Objection.  This is going
 9   to call for hearsay, Your Honor.
10            THE COURT:  Are you trying to solicit
11   these out-of-court statements?
12            MR. LOWRY:  Your Honor, actually what I
13   would like to do is show that the exculpatory
14   information in the notes never made it into the
15   formal report.
16            THE COURT:  Well, I think I'd better
17   instruct the jury that these statements that you're
18   going to be referring to are not being offered for
19   the truth of the matter; simply for the purpose of
20   showing what statements got in what report.
21            So the jury will not consider these
22   statements for the truth of the matter, but simply
23   for purposes of determining what statements got into
24   what reports.
25            MR. CASTELLANO:  I also object because
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



1  it's hearsay within hearsay.  This isn't Agent

2  Acee's report.  He's asking him to comment on

3  another agent's report.

4          THE COURT:  Whether it's hearsay or within

5  hearsay, it's hearsay.  You're not to consider it

6  for the truth of the matter.  You can only consider

7  it for the purpose of whether they made it into the

8  report.  Mr. Lowry.

9          MR. LOWRY:  Thank you, Your Honor.  May I

10 approach?

11         THE COURT:  You may.

12 BY MR. LOWRY:

13     Q.   Agent Acee, I gave you the 302 that goes

14 along with those field notes, and take your time to

15 review it.  But my question is:  Would you agree

16 with me that the comment about Mr. Martinez being

17 approached by Mr. Duran and asked to kill Dwayne

18 Santistevan does not appear in the report?

19     A.   Could you ask me that question again,

20 please?

21     Q.   Sure.  The field notes indicate that Mr.

22 Martinez was approached by Eric Duran, and Eric

23 Duran asked him to kill Dwayne Santistevan?

24     A.   I see what you're saying, sir, but I don't

25 know if I agree with that.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6576

```
 1        Q.    Okay.  Well, do you mind reading the notes
 2   out loud?
 3        A.    Yes.  Under "Marcantel hit"?
 4        Q.    Yes.
 5        A.    "Crazo approached Shadow saying Santi
 6   needed hit."
 7        Q.    Okay.  So Eric Duran is Crazo?
 8        A.    Yes.
 9        Q.    Shadow is Mr. Martinez?
10        A.    Correct.
11        Q.    So Mr. Duran approached Mr. Martinez and
12   said, "Santi" -- meaning Santistevan -- "needed to
13   be hit"?
14        A.    It does say that.
15        Q.    Now, where is that notion reflected in the
16   302?
17        A.    The 302 doesn't reflect that sentence.
18             MR. LOWRY:  May I approach, Your Honor?
19             THE COURT:  You may.
20   BY MR. LOWRY:
21        Q.    Now, as the lead case agent, did you
22   review the reports of the FBI agents that you work
23   with?
24        A.    The majority of the time.  And at this
25   point in time, Agent Sainato is one of my agents
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6577

```
 1  assigned that I'm training, so I probably actually
 2  approved that report in the system, yes.
 3       Q.   But you would have approved that report,
 4  and you were there for the interview?
 5       A.   Yes, sir.
 6       Q.   So you know what was said?
 7       A.   Yes, sir.
 8       Q.   But you didn't think it important to
 9  include information that appeared to be, on its
10  face, exculpatory?
11       A.   To be clear, all exculpatory information
12  should be included.  I just hesitate because we're
13  basing this on the way Sainato wrote a single
14  sentence, and I don't know if it was said that way.
15       Q.   Well, you were at the meeting?
16       A.   I was at the meeting.  My testimony is, I
17  don't recall -- I was going to say Shadow -- Roy
18  Martinez talking about that.
19       Q.   That's essentially what Mr. Martinez
20  testified to on the stand, that he was approached by
21  Mr. Duran?
22       A.   That may be the case, sir.  Although I've
23  been here, I wasn't here the day Mr. Roy Martinez
24  testified.
25       Q.   And I believe that was on a Friday.
```

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                   201 Third NW, Suite 1630
Santa Fe, NM 87501                          Albuquerque, NM 87102
(505) 989-4949                                     (505) 843-9494
FAX (505) 820-6349                             FAX (505) 843-9492
                                                   1-800-669-9492
                                            e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
1        A.    Yeah, I had an inventory, a mandatory
2   thing I had to be up in Albuquerque for.
3        Q.    You weren't prepping Eric Duran
4   downstairs?
5        A.    No, sir.  I was in Albuquerque.
6        Q.    It's fair to say that the confidential
7   human sources under your supervision, you instructed
8   them what to do?
9        A.    Well, in terms of the recording?
10       Q.    Well, just in terms of -- I mean, not in
11  every particular aspect of their daily life, but you
12  would say:  Here's what we're trying to accomplish;
13  let's make it happen?
14       A.    Yeah, I'd give them the marching orders,
15  the objectives, whether it be in the prison or if we
16  were doing buys on the street.
17       Q.    Right.  Now, on November 29th, I mean, you
18  helped orchestrate the controlled buy of the pistol
19  from Chris Garcia?
20       A.    Yes.  But that wasn't a buy, but yes.  The
21  undercover acquisition of it, yes.
22       Q.    Fair enough.  I apologize for using the
23  wrong language.  But yes, the acquisition of the
24  weapon?
25       A.    Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6579

1    Q.   And during that time, I mean, you were

2  concerned -- and I think you've testified about this

3  in the pretrial hearings -- you were concerned

4  because Christopher Garcia really didn't know what

5  the gun was going to be used for?

6    A.   Well, I don't know what he knew, but I

7  know or had an idea what makes good evidence.  And

8  any time we pick up a firearm, you know, we're going

9  to try to instruct the undercover agent or the

10  informant to elicit statements about the gun.

11  That's just good evidence.

12    Q.   Right.  But, again, you testified in front

13  of the Grand Jury, and do you recall telling the

14  Grand Jury that, you know, Baca called on Chris

15  Garcia and told him, "Get guns, we've got a

16  mission," but he didn't tell him what it was for?

17  And while Chris Garcia is a felon and he is

18  prohibited from possessing firearms, for us to be

19  able to go to the house and pick up guns wouldn't

20  necessarily be fair to charge Garcia with

21  racketeering because he didn't know what the guns

22  were for?

23    A.   Well, he knew they were for a mission, but

24  I think what I'm saying there is, he didn't know who

25  the target was of the mission.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   Right.  And that's why you had to

2  affirmatively instruct Mario Montoya to tell him who

3  the target was?

4     A.   Yeah.  I would want that information

5  recorded, that Garcia -- I think it's good evidence.

6  Garcia is acknowledging who it is and is still

7  providing the gun.

8     Q.   Right.  But up until that point, it was

9  your understanding Chris had no idea what the gun

10  was for?

11     A.   I'm not sure if it was; but either way, I

12  would ask that that conversation, that the informant

13  mention that.

14     Q.   Well, you testified to the Grand Jury that

15  Mr. Garcia didn't know what it was for?

16     A.   Well, I want to clarify that I believe

17  Mr. Garcia knew there was a mission.  I don't know

18  that he knew -- I didn't have information that

19  Garcia at that time knew exactly whom was going to

20  be the target, but that there was a mission to kill

21  somebody.

22     Q.   Right.  But, I mean, what you told the

23  Grand Jury was, and I'm quoting your testimony, "He

24  didn't know what the guns were for"?

25     A.   May I review that, sir?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6581

```
1        Q.    Absolutely.

2              MR. LOWRY:  May I approach, Your Honor?

3              THE COURT:  You may.

4        A.    Thank you.

5   BY MR. LOWRY:

6        Q.    And because you were concerned about that,

7   you instructed Mr. Montoya to tell him, right, what

8   the gun was for?

9        A.    In no uncertain terms, yes.

10       Q.    Now, I want to move away from the

11  Marcantel allegations to the Julian Romero.  We're

12  going to go backwards in time.

13       A.    Okay.

14       Q.    Now, you recall taking Mr. Romero to the

15  Old Main to take a tour?

16       A.    A tour, yes.  I asked him to do a

17  recording in which he described his history in the

18  SNM and how the riot started.  He turned 21 the

19  first night of the riot.  And I asked him to walk me

20  around and explain that and the history of the SNM.

21       Q.    And that was last March 31, 2017?

22       A.    That sounds right.

23       Q.    And even though you spent the better part

24  of probably half a day with him, you didn't produce

25  a 302 on that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6582

1      A.   I don't think that's correct.

2      Q.   Okay.  And I could be wrong.

3      A.   I think I did.

4      Q.   Okay.  But during that trip, you told Mr.

5  Romero that Mr. Baca didn't want him killed?

6      A.   Yes, that's my understanding.

7      Q.   Right.  And you told Mr. Baca that Lupe

8  Urquizo wanted Julian Romero killed?

9      A.   I haven't talked to Mr. Baca in a while.

10      Q.   You told Mr. Romero?  Pardon me.

11      A.   Mr. Romero, yes.

12      Q.   So on that trip, on the way home, you told

13  Mr. Romero, "Lupe Urquizo was the one that wanted

14  you dead"?

15      A.   And some other guys, but that Baca just

16  wanted him beat up.  You're right.

17      Q.   Right.  And you said, "And Mario Rodriguez

18  wanted him dead"?

19      A.   I don't know if I said that, because Mario

20  left.  Mario was down there, but I think he got

21  transferred before the actual assault.

22      Q.   We can play the recording if you like.

23      A.   I don't think you've ever lied to me, Mr.

24  Lowry.  If you're representing that that's what I

25  said --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6583

```
 1       Q.   I try not to.
 2       A.   -- I believe you.
 3            THE COURT:  Mr. Lowry, can we talk to the
 4  jurors and see when they want to take their lunch
 5  break?
 6            MR. LOWRY:  Absolutely, Your Honor.
 7            THE COURT:  Do y'all want to do like we
 8  did on Friday and take about a 15-minute break, and
 9  then go another hour and a half, and take a late
10  lunch?  Is everybody in agreement with that?  It
11  looks like everybody's hands are kind of going up.
12  Does that work for the counsel and the parties?
13            All right.  Why don't we take a 15-minute
14  break.  And the jury did come in a little bit later,
15  so we'll do that.
16            All rise.
17            (The jury left the courtroom.)
18            THE COURT:  All right.  We'll be in recess
19  for about 15 minutes.
20            (The Court stood in recess.)
21            THE COURT:  All right.  Let's go on the
22  record.  While Ms. Standridge is bringing the jury
23  in, let me continue to talk a little bit about this
24  Count 8.  I know it's Count 3, I think, in our
25  current drafting.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN &
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6584

1        But on Friday, the Court orally denied Mr.

2   Baca's motion for a judgment of acquittal under Rule

3   29 of the Federal Rules of Criminal Procedure as to

4   Count 8, or Count 3 now in our current instructions.

5   It's the conspiracy to commit assault resulting in

6   serious bodily injury.

7        What I understood Mr. Baca to be arguing

8   is that the uncontroverted evidence indicated that

9   Mr. Romero did not actually suffer a serious bodily

10  injury.  And what the United States replied is that

11  the Romero conspirators intended to inflict serious

12  bodily injury to Mr. Romero, or perhaps to kill him.

13       And then the Court denied Mr. Baca's

14  motion, reasoning that the intent of the

15  conspirators and not the result of the actual

16  assault provides the relevant inquiry.

17       Now, here is my concern, is that

18  committing and conspiring to commit assault with

19  intent to inflict serious bodily injury, I'm not

20  sure it violates 28 USC Section 1959 of the VICAR

21  statute.  What VICAR prescribes, instead, is

22  racketeering motivated -- and I'm going to quote the

23  language of the statute.  "Assaults" -- it says

24  "assault," but put a plural on it.  "Assaults" --

25  and here's the key language -- "resulting in" --



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6585

```
 1  that's the language I think we need to focus on --
 2  "resulting in serious bodily injury that also
 3  violates state or federal law."  So that's right out
 4  of Section 1959(a).
 5          Accordingly, my concern is that if the
 6  Court concludes that the evidence presented in the
 7  United States' case-in-chief would not permit a
 8  reasonable juror to infer that Julian Romero
 9  suffered serious bodily injury, then the Court needs
10  to enter a judgment of acquittal on Count 8, which
11  is Count 3 in our instructions.
12          Mr. Baca is charged with conspiring to
13  commit assault resulting in serious bodily injury in
14  violation of New Mexico law.  But the details of New
15  Mexico's assault statute I don't think determine the
16  elements of that offense -- this is kind of an
17  interesting area -- establishing that Mr. Baca
18  violated VICAR by conspiring to commit assault
19  resulting in serious bodily injury in violation of
20  New Mexico law requires the United States to prove
21  that, one, Mr. Baca's conduct constitutes generic
22  conspiracy to commit assault resulting in serious
23  bodily injury; and two, that Mr. Baca's conduct also
24  violated New Mexico law.
25          So it looks like the jury is ready.  I'll
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6586

1  give you some cites maybe before you go to lunch or

2  after you get back from lunch, some cases that I'd

3  like for you to look at and comment on.

4          But that's the language I'm sort of

5  hanging up on.  It's out of the federal statutes.

6  So I'll give you some cites so that you can get a

7  fuller sense of what I'm thinking.

8          All rise.

9          (The jury entered the courtroom.)

10         THE COURT:  All right.  Mr. Acee, I'll

11 remind you, you're still under oath.

12         Mr. Lowry, if you wish to continue your

13 direct examination of Mr. Acee, you may do so at

14 this time.

15         MR. LOWRY:  Thank you, Your Honor, I do.

16         THE COURT:  Mr. Lowry.

17 BY MR. LOWRY:

18     Q.   Agent Acee, we left off talking about the

19 Julian Romero assault, and I just wanted to -- we

20 were talking about your conversation with Mr. Romero

21 on your way home from visiting Old Main, and the

22 things you told Mr. Romero.  You told Mr. Romero

23 that it was the younger guys that wanted to kill Mr.

24 Romero?

25     A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6587

1    Q.   And that essentially Mr. Baca intervened

2  and said:  I don't want him killed.  He can't be

3  stabbed.  If anything happens to him, you could beat

4  him up, but that's it?

5         That's not exactly what he said.  He said,

6  and I'll quote, "He didn't want you to get hurt too

7  bad"?

8    A.   That sounds more like it, yes.

9    Q.   So essentially, Mr. Baca was calling off

10 the dogs, so to speak?

11   A.   Calling it down.

12   Q.   Because, again, this generational

13 difference between the thinking, if you will?

14   A.   I don't know what Mr. Baca's thinking was,

15 but that's how it was related to me by at least one

16 of the guys involved.

17   Q.   And that was your understanding?

18   A.   That was my understanding based on my

19 conversation with him.

20   Q.   Right.  Now, I'm just more than idly

21 curious, but when Mr. Urquizo was here, he testified

22 that Mr. Baca ordered Mr. Romero to be killed?

23   A.   Did he?

24   Q.   Yes.

25   A.   Okay.  I thought it was someone else that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6588

 1  said that, Baby G, Jonathan Gomez.

 2       Q.   Well, bear with me for a second.

 3            MR. LOWRY:  May I approach, Your Honor?

 4            THE COURT:  You may.

 5       A.   Do you want me to read beyond the first

 6  page?

 7  BY MR. LOWRY:

 8       Q.   If you care to.  I just want you to be

 9  comfortable with the testimony.

10       A.   Okay, sir.

11       Q.   So did I understand his testimony to this

12  Court and this jury correctly that when Mr. Urquizo

13  testified, he said that he wanted -- that Mr. Baca

14  had ordered Julian Romero to be killed?

15       A.   Yes.

16       Q.   But that's not what you understood?

17       A.   No.  And in that, that you just had me

18  review, it looks like he's saying either he

19  misstated it or we miss-recorded it, recorded it in

20  our report.

21       Q.   And that's what I was just getting ready

22  to show you, your report of one of your interviews

23  with him.  This would be on March 6th.  So you would

24  have gone to visit Mr. Urquizo on the 24th.  He

25  says, "I need an attorney," and then that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6589

1    precipitated this initial debrief.

2         A.   That time line sounds correct.

3              MR. LOWRY:  May I approach, Your Honor?

4              THE COURT:  You may.

5         A.   Yes, sir.

6    BY MR. LOWRY:

7         Q.   And this is where in his trial testimony

8    he said -- he tried to blame you on -- my

9    understanding was, he was trying to blame you on

10   sloppy report writing, if you will?

11        A.   No, that's not what I read.

12        Q.   Okay.  What did you read?

13        A.   That either he made a mistake or we got

14   the names wrong.

15        Q.   Right.  And -- but he certainly said in

16   his trial testimony that Mr. Baca wanted to murder

17   Mr. Romero?

18        A.   Yes.

19        Q.   And that's not what he told you on March

20   6, 2017?

21        A.   No, I don't believe that's what he told

22   me.

23        Q.   In fact, he told you the exact opposite?

24   He told you the story, the same version of events

25   that you told Mr. Romero?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6590

```
 1        A.   Yes.

 2        Q.   Was the United States going to do anything

 3   to correct Mr. Urquizo's testimony that Mr. Baca

 4   wanted Mr. Romero dead?

 5        A.   I don't know.

 6        Q.   Mr. Urquizo -- it's fair to say this

 7   report also, he makes a comment in his report, as

 8   you reported it.  I want to move on from the Julian

 9   Romero thing, and actually this is going to be --

10   while we're on Mr. Urquizo, I want to clean this up.

11             But Mr. Urquizo had informed you that when

12   he initially got to the Southern facility here in

13   Las Cruces, that he was communicating with Timothy

14   Martinez and -- who was it? -- Mario Rodriguez, and

15   they were communicating by holding up notes to a

16   glass window.

17             Do you recall that?

18        A.   I do recall him telling me about that.

19        Q.   And you relied on those statements of Mr.

20   Urquizo when you testified at the pretrial hearings,

21   didn't you?

22        A.   Yes.

23        Q.   And you took the same seat you're sitting

24   in today and testified under oath that when Mr.

25   Urquizo got to Southern, he was trying to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    communicate with everyone by holding up notes to his

2    cell door?

3         A.   I testified that that's what he

4    represented to me, yes.

5              MR. LOWRY:  And can we get Government's

6    Exhibit 162?  It's that overview.

7         Q.   Are you familiar with this diagram by now?

8         A.   Yes.

9         Q.   And Mr. Urquizo's cell was right here?  Do

10   you recall?

11        A.   I don't.

12        Q.   Okay.  Would you accept my representation

13   that that was Mr. Urquizo's cell?

14        A.   Yes.

15        Q.   Okay.  And this is the door, would be

16   right here between the pods, that we've talked about

17   repeatedly?

18        A.   Yes.

19        Q.   But what you testified at the pretrial

20   hearing is that Mr. Urquizo was holding up notes to

21   his door that Mr. Martinez and Mr. Rodriguez were

22   reading out in the hallway?

23        A.   Correct.

24        Q.   And that Mr. Martinez and Mr. Rodriguez

25   were out there cleaning or painting?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6592

```
 1        A.   Something like that.
 2        Q.   Now, we've seen photographs of the pods.
 3   I mean, do you honestly think that's possible, that
 4   anybody could have read a handwritten note from that
 5   distance?
 6        A.   It would be a pretty big note.
 7        Q.   And I think everybody would be reading it;
 8   correct?
 9        A.   I'm sorry?
10        Q.   Everybody would be reading it, including
11   the guards up here in the tower?
12        A.   A note that big, yeah, I guess everybody
13   would be able to see it.
14        Q.   Right.  So at this point in time, do you
15   credit that idea?
16             MR. CASTELLANO:  Objection, Your Honor.
17             THE COURT:  Yeah.
18             MR. LOWRY:  Fair enough.  I'll withdraw
19   the question, Your Honor.
20   BY MR. LOWRY:
21        Q.   When Mr. Urquizo testified, he testified
22   that didn't happen at all?
23        A.   I thought he talked about communicating
24   with those guys at the -- I don't know what door we
25   want to call it, but the door, the entryway into the
```

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 820-6349                                                 FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1   pod.

2       Q.   Right.  Both doors?  This door here, and

3   then this door here, correct?

4       A.   We've talked about those two doors, but I

5   don't know if you want me to explain what my

6   understanding was.

7       Q.   No.  My question is this.  Mr. Urquizo

8   dropped all the pretense that he communicated to

9   anybody by holding a note up to the window when he

10  testified to this jury at this trial?

11      A.   I thought he testified about holding a

12  note up at a different door, but I'm going off

13  memory here.

14          MR. LOWRY:  May I approach, Your Honor?

15          THE COURT:  You may.

16      A.   I think I see what might be the problem.

17  BY MR. LOWRY:

18      Q.   Okay.  Well, the problem was, he says

19  nobody -- at trial, he says nobody is communicating

20  with notes through a window, correct?

21      A.   He does say that.

22          MR. LOWRY:  May I approach?

23          THE COURT:  You may.

24  BY MR. LOWRY:

25      Q.   And he says that your report was wrong

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6594

1   when it said that they were communicating with notes

2   through the window?

3       A.   Yes.

4       Q.   I have more confidence in your report

5   writing than Mr. Urquizo.  Do you think you got it

6   wrong in your report?

7       A.   I think I may have.  I appreciate the

8   confidence but, I mean, I do make errors, and I

9   think I see the sentence in my report where it may

10  be wrong.

11      Q.   Okay.  Which brings us to another issue

12  that, you know, Ms. Armijo had even raised with the

13  investigator, Mr. Filipiak.  Why don't you record

14  these interviews with these witnesses so everybody

15  can understand what's being said?

16      A.   Well, I like to.  A lot of times the

17  defense attorneys don't allow me to.

18      Q.   Well, if they're there under your Kastigar

19  letter, I mean, you can demand that you get to

20  record, correct?

21      A.   Can I?  They're not my Kastigar letters.

22      Q.   Well, fair enough.  But the United States

23  has the ability to record these conversations, does

24  it not?

25      A.   We have recording devices but, I mean,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6595

```
1    we're obviously at kind of the whim of the
2    defendant's attorney.
3         Q.   Were you aware that the defendants in this
4    case wrote a letter to the Department of Justice,
5    including the prosecutors in this case, asking that
6    all of the pretrial interviews be recorded?
7         A.   I'm not sure.
8              MR. LOWRY:  May I approach, Your Honor?
9              THE COURT:  You may.
10        A.   I wasn't aware of this.  I only hesitate
11   because it could have come up at a pretrial hearing
12   that I was at, but I'm not part of this.
13   BY MR. LOWRY:
14        Q.   But that letter actually requested the
15   prosecutors in this case to alert you of the
16   request, so I'm assuming from your testimony that
17   did not happen?
18        A.   So what is this letter, sir?
19        Q.   It was a letter -- it was a formal request
20   from the defense counsel in this case, asking that
21   your pretrial interviews with witnesses in this case
22   be audio-recorded so we don't have to have these
23   debates about whether you could write a report
24   correctly.
25        A.   Okay.  I don't know that I was part of any
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6596

1   of those conversations.

2        Q.    Okay.  And my question to you is:  Even

3   though that letter asked for you to be notified

4   about this request, what I'm understanding you to

5   testify to is, you never heard about it?

6        A.    I'm not sure I did, but I can represent

7   that I was not directed to do so.

8        Q.    Okay.  And when the United States is

9   making charitable plea offers --

10       A.    Charitable plea offers?

11       Q.    -- charitable plea offers -- they get to

12  set the terms, don't they?

13       A.    I think there is some wrangling between

14  the defense attorneys and the United States.  I'm

15  oftentimes not part of those meetings.

16       Q.    But recording the interviews wouldn't be a

17  big heartburn for anybody?

18       A.    I don't typically record informant

19  interviews.  We're, in fact, kind of discouraged

20  from doing that.  A subject interview is different.

21       Q.    Right.  And, in fact, you emphatically

22  told Mr. Duran you don't like being recorded?

23       A.    As the agent in a wiretap, no, I don't.

24       Q.    Right.  And so it's your preference not to

25  have an audio recording of you working with your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6597

```
 1   agents?

 2       A.   In the operational context, no.  I have no

 3   problem interviewing subject interviews, and usually

 4   do.

 5       Q.   But suffice it to say, you had the

 6   capability of recording these interviews?

 7       A.   I have a couple recording devices in my

 8   bag all the time.

 9       Q.   All the time?

10       A.   Yes.

11       Q.   Now, just moving on to the Molina count,

12   which is the oldest counts, while we're on Mr.

13   Urquizo, you were here when Mr. Urquizo testified

14   that on the day he left PNM North to go to PNM

15   South, he had a conversation with Mr. Baca through

16   the window while he was in the rec yard?

17       A.   He was in the yard, and Mr. Baca was

18   inside the facility.

19       Q.   Right.

20       A.   Yes.

21       Q.   You recall we had Mr. Urquizo mark this

22   exhibit.  These are his initials, that he had this

23   conversation somewhere in this area over here?

24       A.   I remember that.

25       Q.   Okay.  Now, if you recall correctly, he
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6598

```
 1  said that happened on the very last day he was
 2  there, before he went to the South facility at PNM?
 3       A.   I don't remember that part, but I'll go
 4  with you on it.
 5            MS. ARMIJO:  Your Honor, may we approach?
 6            THE COURT:  You may.
 7               (The following proceedings were held at
 8  the bench.)
 9            THE COURT:  This is an exhibit here?
10            MR. LOWRY:  It's been admitted.
11            THE COURT:  What is the number on it?
12            MR. LOWRY:  EQ.
13            MS. ARMIJO:  Your Honor, their medical
14  expert doctor is here and is in the courtroom.  And
15  my understanding is -- I would understand if they
16  had a medical expert testifying something with
17  relationship to Rudy Perez.  But the defense has
18  been keeping others outside, and she hadn't been
19  noticed for today.
20            THE COURT:  Isn't she an expert?
21            MS. ARMIJO:  She's medical, reviewing
22  records.
23            THE COURT:  She's not a factual witness?
24            MS. FOX-YOUNG:  No, Your Honor, she's not.
25  We alerted the Government she's an expert.  She's
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6599

```
 1   not a treating physician at all.

 2            THE COURT:  Well, I can't remember.  I

 3   think when the rule was invoked -- I can look at

 4   what I usually say, but I think I usually say

 5   experts can remain in the courtroom.  So if she's a

 6   pure expert, I don't see any problem with her being

 7   in the courtroom.

 8            MS. ARMIJO:  Thank you, Judge.

 9            (The following proceedings were held in

10   open court.)

11            THE COURT:  For the record, this is EQ.

12            MS. JACKS:  Your Honor, for the record,

13   the area that Mr. Lowry was asking about appears to

14   be marked Q in the photograph.

15            MR. LOWRY:  That's correct.

16   BY MR. LOWRY:

17      Q.   I'll set this up.  If you recall, this is

18   housing unit 3, and this is Q, R, S, T, U, V, W, X.

19   You can faintly see the letters on the top, X, W, V,

20   U, and it goes around in alphabetical order on the

21   top of the buildings.

22      A.   I just see the Q and the R.

23      Q.   And that's what Mr. Urquizo handwrote on

24   there?

25      A.   Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6600

1      Q.   Now, Mr. Acee, you testified in pretrial

2  proceedings that you tried to corroborate people's

3  story by working with the Department of Corrections

4  to verify where they were at certain periods of

5  time?

6      A.   I have done that.

7      Q.   And are you familiar with what we've

8  looked at repeatedly, these prisoner location

9  histories?

10     A.   Yes, sir.

11     Q.   And this has been previously marked, I

12 think, as V24, and it's not been admitted.  Pardon

13 me.  V29.

14         MR. LOWRY:  May I approach, Your Honor?

15         THE COURT:  You may been.

16 BY MR. LOWRY:

17     Q.   I just wanted to verify the last day, the

18 day he moved from PNM North to PNM South, would have

19 been September 13, 2012, correct?  We're looking at

20 a photograph of the North facility.  We're looking

21 at a photograph of PNM North.

22         And the testimony was, on his last day at

23 the North facility, when he transferred to the South

24 facility, not to be confused with Southern, but PNM

25 South Level 5 in Santa Fe, he had this conversation

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 820-6349                                               FAX (505) 843-9492
                                                                    1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

6601

```
 1   with Mr. Baca, and that he was in the rec yard,

 2   according to his testimony, and Mr. Baca was here in

 3   the Q pod.

 4        A.   Okay.

 5        Q.   Would you agree with me that the last day

 6   that Mr. Urquizo was here at the North facility was

 7   September 13, 2012?

 8        A.   Yes.  For that year.  It looks like he's

 9   at the North again in '14.  But yes.

10        Q.   So that was after -- he's back in the

11   North, after the Molina murder?

12        A.   Yes.

13             MR. LOWRY:  May I approach, Your Honor?

14             THE COURT:  You may.

15   BY MR. LOWRY:

16        Q.   Let me show you what's been admitted into

17   evidence as Defendants' Exhibit V4.

18             Now, if we look at this and locate -- it's

19   fair to say on September 13, 2012, Mr. Baca is

20   housed at the North 3A in the S unit, correct?

21        A.   Yes, North 3A, Cell S101.  Yes.

22        Q.   So he's in the S pod?

23        A.   That's what's indicated here.

24        Q.   So he's not in the Q pod?

25        A.   No.  He's in the Q pod prior to that.  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6602

1    don't see the date because it's got the line through

2    it.

3        Q.   No, but my question is very specific.  On

4    this day that Mr. Urquizo testified that he is

5    waving to Mr. Baca, saying goodbye, and Mr. Baca is

6    housed in the Q pod, and he's having his rec time

7    out here in the cage on his last day, which was

8    September 12, September 13, 2012, that couldn't have

9    happened because Mr. Baca is housed in the S pod

10   over here?

11       A.   I agree.  Mr. Baca is housed in the S pod.

12       Q.   Now, the whole thing that starts off this

13   paper trail is, according to the testimony this jury

14   has heard, this hand-off of paperwork between Joe

15   Martinez and David Calbert in the same facility,

16   Level 6 in Santa Fe?

17       A.   Yes.

18       Q.   And Mr. Calbert described this paper being

19   rolled up longways and placed in the rec cage yard;

20   correct?

21       A.   Yes.

22       Q.   And as -- well, Mr. Martinez did that.

23   And according to Mr. Calbert, he came by and grabbed

24   it as he was cuffed behind his back?

25       A.   Wasn't Calbert in the cage at the time?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6603

1    Q.   No, Calbert -- well, pardon me.

2    A.   And Cheech was walking?

3    Q.   That's how -- well, the paper goes,

4  Cheech, according to the Government's theory, the

5  paper goes Cheech, Calbert, Calbert, Urquizo,

6  Urquizo to Southern; correct?

7    A.   Yes, sir.

8    Q.   So the paperwork gets to Calbert in the

9  rec yard?

10    A.   Yes.

11    Q.   And he says he's walking by the cage, he's

12  handcuffed behind his back?

13    A.   I thought Cheech was handcuffed and handed

14  it to Calbert, who was in the rec cage.  I may have

15  misheard that, but I thought that's what I heard.

16    Q.   My larger point is:  Did you try to

17  attempt to verify whether that meeting or that

18  exchange was even possible?

19    A.   I believe it is.

20    Q.   Do the recreation sheets, where people

21  sign out to go to the rec yard, verify that they

22  were in the rec yard at the same time?

23    A.   I don't know that any sheets like that

24  exist.

25    Q.   Did you ask to see if they existed?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6604

1      A.   Not in that specific circumstance, but in
2  others, and there weren't.
3      Q.   So you don't know?  Because when we looked
4  at the sheets for Southern, they very clearly
5  demarcated when people went to rec and when they
6  didn't.
7      A.   It depends on the officer.  But the ones
8  that we looked at were very good.  I was surprised.
9      Q.   So, in your mind, it really depends on
10 who's working the unit that day, of whether things
11 are fairly documented?
12     A.   Unfortunately, yes.
13     Q.   Did you do anything to try to verify with
14 the Department of Corrections that that meeting
15 could have taken place as described by David
16 Calbert?
17     A.   Yes.
18     Q.   What was that?
19     A.   I asked officers what they thought of
20 that; basically, if that was possible.
21     Q.   And they just said generally it was
22 possible?
23     A.   Of course.  I mean, the same guards can
24 bring drugs in, or cellphones.
25          MR. LOWRY:  May I have a moment, Your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  Honor?

 2            THE COURT:  You may.

 3            MR. LOWRY:  No further questions.

 4            THE COURT:  All right.  Thank you, Mr.

 5  Lowry.

 6            Ms. Fox-Young.

 7            MS. FOX-YOUNG:  Thank you, Your Honor.

 8                    DIRECT EXAMINATION

 9  BY MS. FOX-YOUNG:

10      Q.   Agent Acee, you are currently an FBI

11  Special Agent?

12      A.   Yes, ma'am.

13      Q.   And you have worked in that capacity for

14  about nine years; is that right?

15      A.   Yes, ma'am.

16      Q.   And before that, you were a police

17  officer?

18      A.   Yes.

19      Q.   For how many years?

20      A.   About 10.

21      Q.   So would it be accurate to say that you've

22  been trained in law enforcement practices for almost

23  20 years?

24      A.   Yes, ma'am.

25      Q.   And as an officer, and as an FBI agent,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6606

1  you've been trained to be very thorough in

2  documenting information in your investigations,

3  right?

4      A.   Yes.

5      Q.   Maybe even more so in your work with the

6  FBI than as a police officer?

7      A.   I have become more thorough, yes.

8      Q.   And you conducted a number of interviews

9  in this case; isn't that right?

10     A.   I did.

11     Q.   Can you quantify how many?

12     A.   More than 50.

13     Q.   Okay.  And some of those interviews were

14  also attended by other personnel from the FBI,

15  right?

16     A.   Yes.

17     Q.   Including Agent Nancy Stemo?

18     A.   Yes.

19     Q.   And Agent Neale?

20     A.   Thomas Neale.

21     Q.   And Agent Roundy?

22     A.   No.

23     Q.   Roundy wasn't there?

24     A.   No.  Agent Sainato.

25     Q.   Agent Sainato.  And others, other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6607

 1  personnel?

 2       A.   STIU, mostly.

 3       Q.   And as the jury has heard, on many

 4  occasions those interviews, prosecutors are present,

 5  right?

 6       A.   Yes.

 7       Q.   Not all of them?

 8       A.   Sometimes not the initial one, but usually

 9  after that they are.

10       Q.   And for each of these interviews that you

11  conduct or attend, you take notes, right?

12       A.   If I'm the primary interviewer, I do.  If

13  I'm not, I don't.

14       Q.   Okay.  And in the instance that you were

15  discussing a little while ago, where Agent Sainato

16  was the primary interviewer, those were his notes

17  from that interview, right?

18       A.   Yes, ma'am.

19       Q.   So sometimes you take copious notes when

20  you're the primary interviewer?

21       A.   Sometimes, yes.

22       Q.   And is it from those notes that you, as

23  the primary interviewer, then develop what's called

24  a 302 report?

25       A.   It's from -- the notes are helpful.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   They're a reference, yes.

2       Q.   So you use those notes as a reference.

3   You don't have a recording, as you just testified,

4   so you have to rely on the notes?

5       A.   Sometimes I have a recording.  Sometimes I

6   have both.

7       Q.   In this case, did you record some of those

8   interviews?

9       A.   Some interviews have been recorded, yes.

10      Q.   Do you recall which ones?

11      A.   Ma'am, I said I interviewed over 50

12  people.

13      Q.   If you don't recall, it's okay.

14      A.   I don't.  I can think of maybe a few off

15  the top of my head, but I'd want some time to

16  prepare something a little more accurate.

17      Q.   And so you take the -- as the primary

18  interviewer, you take your notes and you develop a

19  302 report, and that report then is relied on by the

20  prosecution, right?

21      A.   Yes.

22      Q.   It's relied on by the FBI?

23      A.   It is.

24      Q.   And in some instances, it's relied on by

25  this Court, by Judge Browning?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6609

```
 1        A.    Judge Browning has looked at some of our
 2   302s.
 3        Q.    And the information in your reports is
 4   relied on by this jury through the course of this
 5   trial, right, as it comes out in the testimony?
 6        A.    Yes.
 7        Q.    And so I want to ask you about a specific
 8   interview, one of the ones that I think you'll
 9   recall conducting, and there has been testimony
10   about it.  I don't know if you testified about it.
11   Do you remember interviewing Robert Martinez in
12   December 2015?
13        A.    The SNM member?  Or the ex-BCSO detective?
14        Q.    Baby Rob.  Do you remember that?
15        A.    Yes.
16        Q.    And I think you were in the courtroom
17   earlier today when the prosecutor referred to him as
18   a "big leader."  Do you remember that?
19        A.    I think he was a leader.
20        Q.    Do you remember hearing her call him the
21   "big leader"?
22        A.    No.
23        Q.    And would you consider him to be somebody
24   who was influential in the organization?
25        A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6610

1    Q.   Pretty high up?

2    A.   Yes.

3    Q.   And when you met with him, he prepared a

4  61-page written statement for you, didn't he?

5    A.   He did.

6    Q.   You asked him to do that?

7    A.   Yes.

8    Q.   And that statement or the substance of

9  that statement ultimately became part of a report

10 that you generated, right?

11   A.   Did I?

12   Q.   Do you remember that?

13   A.   I remember that incident.  I remember

14 talking to him.  Did I generate the report?

15   Q.   Well, I'll show it to you, and you can see

16 what you think.

17        MS. FOX-YOUNG:  Your Honor, may I

18 approach?

19        THE COURT:  You may.

20 BY MS. FOX-YOUNG:

21   Q.   Agent Acee, do you remember whether this

22 report dated July 12, 2016, the December of 2015

23 interview of Robert Martinez, is yours?

24   A.   Yes and no.  So the report is mine.  I

25 think it indicates I cut and paste in there, an

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  intern transcribing it.  Did I say that correctly?

2      Q.   Okay.  And I'm not trying to catch you in

3  some sort of technicality.  I just want to know if

4  this is your report.

5      A.   Yes, ma'am.

6      Q.   And I know you have staff who work with

7  you to help you complete these things.  Do you

8  remember that as part of that 61-page written

9  statement from Baby Rob, there was provided to you

10 and the FBI a list of 167 individuals that Baby Rob

11 said were in the SNM?

12     A.   Yes.

13     Q.   I don't expect you to recite all 167.  I

14 know you have a good memory, but I don't expect you

15 to recite all the individuals today.  But do you

16 remember that list?

17     A.   Yes.

18     Q.   And you remember, do you not, that Rudy

19 Perez is nowhere on that list?

20     A.   I don't know.

21     Q.   Do you want to take a look?

22     A.   Sure.

23          MS. FOX-YOUNG:  May I approach?

24          THE COURT:  You may.

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6612

1   BY MS. FOX-YOUNG:

2       Q.   If you'll just turn to the third page,

3   that's where it starts.  You can take your time.

4       A.   I don't see his name listed.

5       Q.   And why don't you just hold on to that

6   document for a minute, Agent Acee.  Do you remember

7   that Baby Rob did include Mario Rodriguez on that

8   list as a shot caller?

9       A.   Yes.

10      Q.   And you see that there today?

11      A.   I do.

12      Q.   And you remember that Baby Rob also

13  included for you and the FBI's consideration Billy

14  Cordova on that list?

15          MR. CASTELLANO:  Your Honor, objection to

16  hearsay at this point because these aren't prior

17  inconsistent statements.

18          MS. FOX-YOUNG:  Your Honor, Mario

19  Rodriguez being a shot caller is impeachment of

20  Mario Rodriguez's testimony.

21          THE COURT:  Let me do this:  What's in and

22  out of these reports, I'll allow the jury to know

23  what's in and out of those reports.  But you can't

24  consider these for the truth of the matter.  These

25  are only to determine why certain things were in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6613

```
 1  reports and what wasn't in other reports in your
 2  determining the credibility of witnesses, but you
 3  can't consider these statements for the truth of the
 4  matter.
 5  BY MS. FOX-YOUNG:
 6      Q.   Can you answer the question, Agent Acee?
 7      A.   Billy Cordova is listed.
 8      Q.   Okay.  Thank you.
 9           Just as a followup, you were in court when
10  Baby Rob testified, right?
11      A.   Yes, ma'am.
12      Q.   You remember he never identified Rudy
13  Perez at all?  Do you recall that?
14      A.   That sounds familiar.
15      Q.   So let's talk about Mario Rodriguez.  And
16  you remember that Baby Rob identified him
17  specifically as a shot caller to you, and you
18  documented that in your report?
19      A.   Yes.  I think he did in his written
20  statement we were talking about, yes.
21      Q.   And that was then published in this FBI
22  302?
23      A.   Yes, ma'am.
24      Q.   Let's take a look at Government's Exhibit
25  586, and let's just pick up where you left off
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6614

1   talking about Mario Rodriguez last Friday.  It's

2   been a few days.

3           I think you testified that in a meeting

4   with Mario Rodriguez sometime in the last several

5   months, you learned about some other shanks that he

6   told you about, and I think you said they were at

7   the North and South facilities?

8       A.   Yes.

9       Q.   And when you said the North and South

10  facilities, did you mean in Santa Fe at PNM?  Or did

11  you mean in Santa Fe and also the Southern New

12  Mexico Correctional Facility?

13      A.   Both were in Santa Fe at the PNM.

14      Q.   Okay.  And we're looking at a picture of

15  Mario Rodriguez up here, Government's Exhibit 586?

16      A.   Yes.

17      Q.   So this is the same person that told you

18  about the additional shanks?

19      A.   Yes.

20      Q.   Did he tell you if those were his shanks?

21      A.   No, but I assumed they were.

22      Q.   You assumed that they were and that he had

23  hidden them, had secreted them somewhere in the

24  North and South facilities?

25      A.   Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6615

```
 1        Q.   Where were they actually recovered?

 2        A.   I wrote a report on it, and so did STIU.

 3   Off the top of my head, I think one was in a heating

 4   vent.  Is that what you're asking me, where

 5   specifically?

 6        Q.   Exactly.

 7        A.   They were difficult to locate.  I think

 8   one was in a heating vent, some kind of crevice.

 9   And the other was inside a bed mattress.  And that's

10   why I assumed they were his, because he knew where

11   they were.

12        Q.   And what were they made of, if you know?

13        A.   They were either Plexiglas or metal.

14        Q.   Do you know if either or both of those

15   weapons had been used in the assault on Mr. Sosoya

16   that Mario Rodriguez described?

17        A.   I don't believe that they were.  Because I

18   remember asking him if there was DNA on them besides

19   his, something to that effect.  And he said

20   something that he had them but they weren't used on

21   people, something along those lines.

22        Q.   You don't remember exactly?

23        A.   I don't remember the exact words, but I

24   remember thinking:  Do I need to send these to the

25   lab?  Is there a victim attributed to these?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6616

```
 1              And these were unused, but carried by him
 2   at one time, was my impression.
 3        Q.   So based upon that impression, you took
 4   his word for it and you didn't send them to the lab?
 5        A.   No, they're still -- I'm not sure if we
 6   have them or if STIU has them.  They may have been
 7   transferred to us.
 8        Q.   So you don't know whether there is any
 9   forensic evidence connecting those weapons to any of
10   Mario Rodriguez' past assaults or killings?
11        A.   I don't believe there is, no.
12        Q.   You don't know because you didn't send
13   them to the lab, right?
14        A.   Well, the lab wouldn't tell me that.  The
15   lab wouldn't just give me that type of an answer.
16        Q.   Let me ask a different question, then.
17        A.   Sure.
18        Q.   You don't know if Mario Rodriguez' DNA or
19   the DNA of the victim is on those shanks, because
20   they haven't been processed, right?
21        A.   Well, the second part of your question,
22   it's true they haven't been processed.  I don't
23   believe they were used in any assaults on people.
24        Q.   But you don't know?  You believe they
25   weren't?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6617

```
 1        A.   I believe they weren't.  I don't have any
 2   victims left that I would attribute it to.
 3        Q.   Let's talk about Mr. Esparza.  Do you
 4   remember Mario Rodriguez testified that he stabbed
 5   Mr. Esparza, and that he bit his ear off?  Do you
 6   remember that testimony?
 7        A.   Yes.
 8        Q.   Do you know what weapon was used to
 9   stab -- I mean, I understand that Mario Rodriguez
10   used his teeth to bite Mr. Esparza's ear off, but do
11   you know what weapon was used to stab Mr. Esparza?
12        A.   Yes.
13        Q.   What weapon was that?
14        A.   A shank.
15        Q.   Do you know where that shank is?
16        A.   I believe it broke in the victim.
17        Q.   Okay.  So you think that shank was
18   recovered and is not here today?
19        A.   Yes.
20        Q.   And do you know what weapon, sitting here
21   today, was used to assault Mr. Sosoya, what weapon
22   Mr. Rodriguez used to assault Mr. Sosoya?
23        A.   Yes.
24        Q.   Which weapon was that?
25        A.   It was a crudely made one.  He didn't have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6618

1  enough time to finish it.  And it also broke.

2      Q.   So that is not one of the two weapons that

3  you've recovered from Santa Fe?

4      A.   Correct.

5      Q.   And you were aware, and I think

6  participated in the recovery of a shank that Mario

7  Rodriguez told you he had in his shoe, right?

8      A.   Yes.  I watched.  Yes.

9      Q.   Okay.

10     A.   I watched the shoe opened here in court.

11     Q.   Like we all did?

12     A.   Yes.

13     Q.   So do you know when -- if and when Mario

14 Rodriguez used that shank on any victims?

15     A.   I don't believe he did.

16     Q.   Do you know?  This is based on what Mario

17 Rodriguez told you.

18     A.   That, and the lack of any other assaults.

19 We would need a victim to assume that he used it on

20 the person.

21     Q.   Okay.  So you don't have a victim with an

22 unknown assailant, so you're just presuming that

23 Mario Rodriguez didn't use that weapon?

24     A.   To assault a person, yes.

25     Q.   Okay.  Let's take a look at Defendants'

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6619

1   Exhibit EV.  Do you recognize this image, Agent
2   Acee?
3        A.   Yes.
4        Q.   What is that?
5        A.   That's two shanks wrapped in what I
6   believe is cellophane, that Mario Rodriguez removed
7   from his rectum during an interview here at the
8   courthouse on October 24th of 2017.
9        Q.   Okay.  And did you actually -- I'm not
10  trying be gross, but how do you know he removed them
11  from his rectum?  Did you see those shanks emerge?
12       A.   No.
13       Q.   He did it himself?  The FBI was not
14  involved?
15       A.   The Marshal Service was involved.
16       Q.   Okay.
17       A.   He told us they were there, and then the
18  marshals removed him and took him to an area that
19  they wanted the weapons produced.
20       Q.   Okay.  And let's take a look at Exhibit
21  EW.  Are these the same weapons, but just unwrapped?
22       A.   Yes.
23       Q.   And let's also look at EX.  Same weapons,
24  right?
25       A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6620

1      Q.   And so on that day that Mr. Rodriguez

2  presented you with these weapons, you took them into

3  evidence?

4      A.   Eventually.  That day, the Marshal Service

5  took them into their evidence, and I later caused

6  that to be transferred to the FBI's evidence.

7      Q.   Okay.  And so sitting here today, do you

8  know where these weapons are?  They're not in the

9  courtroom, right?

10     A.   I didn't bring them, no.  I believe

11 they're still in our evidence --

12     Q.   Okay.

13     A.   -- in Albuquerque.

14     Q.   They have not been processed for any

15 forensic evidence, have they --

16     A.   No.

17     Q.   -- to your knowledge?

18          And you don't know whether or not these

19 weapons were used on any victim, do you?

20     A.   Again, I don't believe they were.

21     Q.   You don't know?

22     A.   Do you want me to put a percentage on it?

23     Q.   No.

24     A.   I mean, I don't believe they were used on

25 any people.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6621

1    Q.   Because that's what Mario Rodriguez told
2    you?
3    A.   And we don't have a victim.
4    Q.   Okay.  And on the same day that Mario
5    Rodriguez retrieved these weapons that he had been
6    keistering and provided them to the FBI, he also
7    told you about his desire to kill other defendants
8    in this case in the courtroom, right?
9    A.   Yes.
10   Q.   And, in fact, he told you that he had a
11   specific plan for how he was going to carry out
12   those executions; isn't that right?
13   A.   Yes.
14   Q.   And --
15   A.   Just one.
16   Q.   Just one?  He only told you about one?
17   A.   Just one execution he had planned.
18   Q.   And so you met with Mario Rodriguez on
19   November 1, 2017; isn't that right?
20   A.   I'm not sure.  One of the debriefs of him
21   I was not present at.  I did the follow-on.  I think
22   Agent Stemo did the first.  So I was there the 24th.
23   There was a second debrief that I wasn't at.  And
24   the third one, I did.
25   Q.   Okay.  So I'm just talking -- we don't

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6622

1  have to get the specific date.  And we'll talk about

2  the one Agent Stemo did.  But the one that you did,

3  you took a lot of notes, right?

4       A.   Yes, ma'am.

5       Q.   You were the primary investigator?  I'm

6  sorry.  What was the word?  Primary agent?

7       A.   Or interviewer, yes.

8       Q.   Interviewer on that one.  And so you took

9  a lot of notes.  And you actually produced a draft

10 302 that you then presented to Mario Rodriguez for

11 his commentary; isn't that right?

12      A.   I wanted to make sure -- not so much

13 commentary.  I wanted to make sure I got details

14 correct.

15      Q.   Okay.

16      A.   I had noticed in some prior 302s, where we

17 didn't get the details exactly correct.

18      Q.   Okay.  And so sometimes it has been your

19 practice to draft a report, and then provide it to

20 the government witness so the government witness can

21 annotate or make changes or additions to that

22 report; is that right?

23      A.   No.  That was actually -- I think that was

24 the first time I've done that.  I'll go over it with

25 them and their attorney.  But it was the first

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6623

1  time -- I think it had to do with some time
2  constraints, where I gave an actual physical copy.
3  I can't think of another circumstance where I've
4  done that.
5      Q.  But in this case with Mario Rodriguez, you
6  thought it was important enough to get the details
7  right, and you had the time, right?
8      A.  Yes, I definitely want to get the details
9  right.
10      Q.  And you didn't have any time constraints
11  that you were just talking about, so you provided
12  Mario Rodriguez with a draft?
13      A.  I'm saying that we did have the time
14  constraints, and that's why I did provide it, so it
15  left with him.
16      Q.  Okay.
17      A.  Then I picked it up at a later date.
18      Q.  So Mario Rodriguez took your typewritten
19  draft report and made some additions to it, right?
20      A.  Correct.
21      Q.  And with respect to his plan to execute
22  one of the co-defendants during the course of the
23  trial, he provided you more detail, right?
24      A.  I assume so, if you're looking at it.
25      Q.  Would you like to see it, and would it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6624

1   refresh your memory to look at his notes?

2       A.   Yes.

3            MS. FOX-YOUNG:  Your Honor, may I

4   approach?

5            THE COURT:  You may.

6   BY MS. FOX-YOUNG:

7       Q.   Agent Acee, you see right here?

8       A.   Yes.

9       Q.   And so Mario Rodriguez gave you a little

10  bit more detail.  Do you remember now what he told

11  you about how he was going to kill one of his

12  co-defendants in trial?

13      A.   Yes.

14      Q.   What did he say?

15      A.   During a lunch break, he was going to

16  retrieve -- I think what he said was, he was going

17  to stash the knife back there, behind that door,

18  during a bathroom break.  And then take a break, and

19  either during a lunch break or one of the court

20  recesses, he was going to stab Mauricio Varela, one

21  of his -- one of the co-defendants in the larger SNM

22  case.

23      Q.   Okay.  And the knife that he was going to

24  stash, is that the one that he was carrying in his

25  rectum?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1         A.   It would have been one of those two

 2    knives.

 3         Q.   Okay.  So he made this change for you, but

 4    you didn't actually adopt his language and include

 5    it in your final report, did you?

 6         A.   I'm not sure.

 7         Q.   So let's back up a little bit with Mario

 8    Rodriguez.  You explained that you did not

 9    participate in the first debrief of him, that Agent

10    Stemo was there, but you were not there; isn't that

11    right?

12         A.   I think that was the second one.  I just

13    know that she wrote the report.  I don't think I was

14    at that one.  Or I may have had to leave for some

15    reason.

16         Q.   Have you had occasion to review that

17    report?

18         A.   I have seen it, yes.

19         Q.   Okay.  So you remember that it was at that

20    debrief that Mario Rodriguez told the FBI that when

21    he went into Rudy Perez' cell to take pieces off of

22    Rudy Perez' walker, Rudy Perez looked scared?  Do

23    you remember that?

24         A.   I do recall reading that, yes.

25         Q.   Okay.  And that was Agent Stemo's -- that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   was included in Agent Stemo's report, and then

2   provided to you as the case agent, right?

3        A.   Yes, ma'am.

4        Q.   And you looked at that report before you

5   debriefed Mario Rodriguez on the occasion that we

6   just talked about?

7        A.   I did.

8        Q.   And on that occasion, when Mario Rodriguez

9   removed the shanks and told you about the other

10  shanks, you gave him an opportunity to review Agent

11  Stemo's earlier report, didn't you?

12       A.   Yes.

13       Q.   And you gave him an opportunity to clarify

14  anything that he wanted to clarify in that report,

15  right?

16       A.   Yes.

17       Q.   And he testified about that.  Do you

18  remember that?

19       A.   Yes.

20       Q.   And he never changed his observation or

21  the fact that when he entered Rudy Perez' cell on

22  March 7, 2014, to take shanks off of Rudy's walker,

23  Rudy looked scared?  He never changed that in the

24  report, right?

25       A.   Agent Stemo didn't change that in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


6627

```
 1   report, and he didn't request that that be changed.
 2       Q.   Okay.  And so subsequent to his review of
 3   that earlier report, I think you testified you
 4   completed a report, and then you sent him back to
 5   his cell with that report to annotate, right?
 6       A.   My draft, yes.
 7       Q.   And you took notes on it, and you looked
 8   at some of those notes.
 9           MS. FOX-YOUNG:  What is defense next in
10   order?  Your Honor, I am marking Defendants' Exhibit
11   FV.  And I would just like to approach the witness.
12           THE COURT:  You may.
13   BY MS. FOX-YOUNG:
14       Q.   Agent Acee, do you know what this document
15   is?
16       A.   I believe so.  Did you just receive this?
17       Q.   Do you recognize it?
18       A.   Yes.
19       Q.   And I'm also going to show you the report
20   we looked at a few minutes ago with Mario Rodriguez'
21   handwritten annotations.  Do you see how they're in
22   caps?
23       A.   Yes.
24       Q.   And you see how this document has caps on
25   it?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6628

```
 1        A.   Yes.
 2        Q.   Can you tell me if that handwriting looks
 3   similar to you?
 4        A.   It looks similar.
 5        Q.   Okay.  Agent Acee, you said it looks
 6   similar?
 7        A.   Yes.
 8        Q.   Okay.  I think it just might have been we
 9   moved the mic, and it was a little hard to hear.
10        A.   It looks similar.
11        Q.   And having looked at this document, can
12   you tell me what it is?
13        A.   Yes.  It's a letter written by Mario
14   Rodriguez.  I asked if that was a new document,
15   because I think it was just produced to the
16   Government and the defense yesterday.
17        Q.   Last night, right?
18        A.   Yes.
19        Q.   And you think this is a document that
20   Mario Rodriguez authored in 2014?
21        A.   I do.
22        Q.   All right.
23             MS. FOX-YOUNG:  Your Honor, I move the
24   admission of Defendants' Exhibit FV.
25             THE COURT:  Any objection, Mr. Castellano?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1           MR. CASTELLANO:  No objection, Your Honor.
 2           THE COURT:  Any objection from any other
 3  defendant?  Not seeing or hearing any, Defendants'
 4  Exhibit FV will be admitted into evidence.
 5           (Defendants' Exhibit FV admitted.)
 6  BY MS. FOX-YOUNG:
 7      Q.   All right.  And so you will recall that
 8  when Mario Rodriguez testified a number of days ago,
 9  Ms. Armijo asked him how Rudy Perez seemed when he
10  came in and he took the piece from the walker.  And
11  at first he said that Rudy Perez had no expression,
12  something along those lines.  Do you remember that?
13      A.   Vaguely.
14      Q.   Ms. Armijo asked him that.  And then Mr.
15  Villa got up, and he asked him about this prior
16  statement to Agent Stemo, that actually when he had
17  gone into Rudy Perez' cell, Rudy looked scared.  Do
18  you recall that?
19      A.   In the statement, yes.
20      Q.   Yes.  And you'll also recall that he was
21  asked about having the chance to correct Agent
22  Stemo's report, right?
23      A.   Yes.
24      Q.   And he testified, just as you just have,
25  that he had the opportunity to correct that report,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6630

```
 1  right?

 2       A.    Correct.

 3       Q.    And that he never changed that statement,

 4  right?

 5       A.    Right.

 6       Q.    Okay.  So it wasn't until he testified

 7  before this jury that he tried to change that

 8  statement a little bit.  Do you remember that?

 9       A.    I know that his testimony and the

10  statement are different.

11       Q.    Okay.  And Mario Rodriguez made a number

12  of annotations on this draft 302.  I'm sure -- it's

13  been a few months; it's been since November of last

14  year.  But you have reviewed at some point all of

15  those changes, right?

16       A.    Yes.

17       Q.    And you took them to heart?

18       A.    I wouldn't say that.  I mean, I reviewed

19  them.

20       Q.    Do you remember when you debriefed him

21  that you asked him, as you ask all of these

22  government witnesses, why he wanted to cooperate

23  with you, right?

24       A.    Yes.

25       Q.    And do you remember what you included in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6631

```
1   your report as the answer to that question?

2        A.   No.  I have an answer off the top of my

3   head, but I don't recall exactly what I said in my

4   report.

5        Q.   What's the answer off the top of your

6   head?

7        A.   He was fatigued.  He was tired.

8        Q.   Do you remember that you wrote that he

9   cooperated because he wanted to change his life?

10        A.   Yes.

11        Q.   And that he was tired and out of energy?

12        A.   Yes.

13        Q.   And you think that's accurate?

14        A.   I do.

15        Q.   And you recall that when you gave Mario

16   Rodriguez the chance to change or correct or add to

17   that answer, he changed it?  Do you remember that?

18        A.   No.

19             MS. FOX-YOUNG:  Your Honor, may I

20   approach?

21             THE COURT:  You may.

22        A.   Yes.

23   BY MS. FOX-YOUNG:

24        Q.   Do you see that, Agent Acee?

25        A.   Are you going to ask me to read it?  I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6632

 1   need to look at it longer, if I could.

 2        Q.   You could read it.

 3        A.   Just what he added?

 4        Q.   Yeah.  What did he add?

 5        A.   I think the first word is "and."  Yes.

 6   "And the SNM was so fucked up, no loyalty!"

 7   exclamation point.

 8        Q.   So when you gave Mario Rodriguez the

 9   chance to put in his report his reason for becoming

10   a government witness, he said because "the SNM was

11   fucked up, no loyalty," right?

12        A.   He added that.

13        Q.   Okay.  But that didn't go into your final

14   report?

15        A.   Did it not?

16        Q.   No.

17        A.   Okay.

18        Q.   You also had what appears to be a lengthy

19   conversation, dialogue, with Mario Rodriguez about

20   what it was like to be in solitary confinement at

21   PNM, didn't you?

22        A.   I don't know how lengthy it was, but he's

23   talked about his experiences there.

24        Q.   You remember talking to him about that?

25        A.   I remember him making some comments about

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   that, yeah.  I don't know how interested I was in

2   it, but he did talk about it.

3        Q.   And he talked about all the increased

4   violence and the paranoia that comes from being in

5   solitary?

6        A.   Yes.

7             MR. CASTELLANO:  Calls for hearsay.

8             THE COURT:  Well, are you trying to elicit

9   out-of-court statements?

10            MS. FOX-YOUNG:  It's impeachment.

11            THE COURT:  Well, let me do this:  Let me

12   once again instruct the jury that you cannot

13   consider these for the truth of the matter.  These

14   are only to determine the credibility of the

15   witnesses that you've heard, not for the purposes of

16   considering these statements for the truth of the

17   matter.

18            MR. CASTELLANO:  And I object because this

19   isn't impeaching any statement by Mario Rodriguez,

20   Your Honor.

21            THE COURT:  Well, why don't y'all

22   approach.

23            (The following proceedings were held at

24   the bench.)

25            THE COURT:  So what statement by Mr.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6634

1    Rodriguez are you impeaching?

2           MS. FOX-YOUNG:  Your Honor, I don't have a

3    direct quote, but his testimony about solitary was

4    along the lines of:  It's not bad.

5           Mr. Villa asked him about it.  And I'm not

6    going any further on this.  I want to get into his

7    change, and what he added to it.  But he did not

8    talk about the extreme paranoia when Mr. Villa tried

9    to elicit that from him, and the violence that comes

10   from locking these guys in solitary.  So it's

11   impeachment of that testimony.

12          THE COURT:  I don't have a transcript

13   where I can dispute what Ms. Fox-Young says.  Is

14   your memory so different that I should not go ahead

15   and allow this?

16          MR. CASTELLANO:  Yes, Your Honor.  Even

17   from his statements, he said that's not that bad.

18   That isn't necessarily impeachment.  That statement,

19   even if the recollection is true, his opinions, it's

20   not bad, regardless of the result.  So it's clearly

21   trying to get in a hearsay statement to help Rudy

22   Perez, obviously, but it doesn't impeach the

23   statement.  It's not contradictory to his prior

24   statement.

25          MS. FOX-YOUNG:  I think it is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  contradictory, and it's for the jury to decide.

2         THE COURT:  I think there is enough

3  tension there.  I'll go ahead and allow the

4  statement.  But I'll remind again, the jury, that

5  they're not to consider this for the truth.  They

6  can only use it to determine Mr. Rodriguez'

7  credibility.

8         (The following proceedings were held in

9  open court.)

10         THE COURT:  All right.  Again, I'll remind

11  you that you can't consider this testimony for the

12  truth of the matter, what Mr. Rodriguez said.  You

13  can only use it to determine how credible Mr.

14  Rodriguez is when he testified.  So you can use it

15  only for that purpose, but not for the truth of the

16  matter.

17         Ms. Fox-Young.

18         MS. FOX-YOUNG:  Thank you, Your Honor.

19  BY MS. FOX-YOUNG:

20      Q.   Agent Acee, I think you were saying you

21  did recall Mario Rodriguez talking to you about how

22  paranoid people get in solitary confinement, right?

23      A.   Yes.

24      Q.   And the violence that ensues as a result?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    The plotting and the scheming?

2      A.    Yes.

3      Q.    And do you remember that that is another

4   area of your draft report that Mario Rodriguez

5   actually added to when you gave him the opportunity?

6      A.    That sounds familiar, yes.

7      Q.    Okay.  Do you remember what he said?

8      A.    No.

9           MS. FOX-YOUNG:  Your Honor, may I

10  approach?

11          THE COURT:  You may.

12     A.    Do you want me to read it?

13  BY MS. FOX-YOUNG:

14     Q.    Sure.

15     A.    Just what's highlighted?  Or everything?

16     Q.    What's highlighted.

17     A.    It's a little difficult to read.

18     Q.    How about I'll read it, and you tell me if

19  you think this is inaccurate.  He says it's --

20          THE COURT:  Well, I think put it in front

21  of him to refresh his memory.  I think that's where

22  we are.

23     Q.    You can take your time.  It's a little bit

24  hard to read the writing.

25     A.    I think I can get everything but one word.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                    (505) 843-9494
FAX (505) 820-6349                                           FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1    He says, "It's so fucked up that it will never

2    amount to what it was" -- and then I'm not sure what

3    the next word is; oh, it's parentheses -- "SNM being

4    what it used to be."

5         Q.    Thank you.

6              So Mario Rodriguez told you -- he added

7    this to the report.  He said, "It's so fucked up

8    that it will never amount to what it was, SNM being

9    what it used to be."

10             Do you think he meant that SNM would never

11   be what it used to be again?

12        A.    Yes.

13        Q.    But you didn't include that in your final

14   report, did you?

15        A.    I may not have.

16        Q.    You didn't include any F-words in your

17   final report, did you?

18        A.    Did I not?  I'll sometimes put them in

19   quotations.  But I don't word my reports that way,

20   no.

21        Q.    And did Mario Rodriguez tell you anything

22   about -- anything more about how different things

23   had become with the SNM as compared with the old

24   days?

25        A.    I'm not sure.  He may have.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6638

1       Q.   You don't remember him telling you that

2  the tabla used to be really powerful and meaningful,

3  but it wasn't anymore?

4       A.   Not off the top of my head, no.  Forgive

5  me.  I've just talked to so many of these guys.

6       Q.   I understand, Agent Acee.  Would you like

7  to just take a look to refresh?

8       A.   Sure.

9       Q.   Agent Acee, it starts right here on this

10 page and just goes to the very beginning of the next

11 page.

12      A.   And the question is:  Did he add anything?

13      Q.   The question is:  Do you recall Mario

14 Rodriguez, when you debriefed him, telling you about

15 the tabla, how it used to be powerful and

16 meaningful, and this wasn't true anymore?

17      A.   Yes.  Yes.

18      Q.   And that's actually what you documented in

19 the report, isn't it?

20      A.   Yes, ma'am.

21      Q.   Okay.  Thank you.  And so the truth is

22 that Mario Rodriguez gave you at least three big

23 reasons in his annotations to this report for why he

24 cooperated?  He added those in, didn't he?

25      A.   I don't know that he gave me big reasons.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6639

1  The second part of your question is, yes, he

2  obviously added some information to my draft.

3      Q.   You don't dispute that he added the

4  information that there was no loyalty anymore in the

5  SNM, right?

6      A.   Correct.

7      Q.   And that it's "so fucked up"?

8      A.   Yes.

9      Q.   And that the tabla used to be meaningful,

10 but it isn't anymore?

11     A.   Yes.  That wasn't an addition.  That was

12 something he told me, and is in there.

13     Q.   That's right.  And that "SNM wasn't what

14 it used to be"?

15     A.   Yes.

16     Q.   Okay.  And so the truth is that Mario

17 Rodriguez told you in his own words that there was

18 no loyalty anymore in this gang, and that's why

19 he -- at least one of the reasons he wanted to

20 cooperate; isn't that right?

21     A.   Yes.  He was -- he felt that way, yes.

22     Q.   Yeah.  And he also told you on more than

23 one occasion that he wanted to work for the

24 Government because he felt that was his best option,

25 right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6640

1      A.   No.  I think he came to that conclusion.

2  I don't know that he put it in those words.

3      Q.   He never told you it was his best option?

4      A.   I assume you're going to refresh my memory

5  with something.  I don't recall that, though, no.

6      Q.   You remember meeting -- well, I think

7  you've testified about a meeting with Mario

8  Rodriguez and Ron Sanchez --

9      A.   Yes.

10      Q.   -- and Mark Myers, who was with the New

11  Mexico Corrections Department?

12      A.   Yes.

13      Q.   And you had -- actually, this is one of

14  the occasions on which you recorded the interview,

15  isn't it?

16      A.   It is.

17      Q.   Okay.  So you had a long recorded -- well,

18  I think it was long.  Maybe you don't think it was

19  long.  You had a recorded interview with these

20  gentlemen, in which you discussed a variety of

21  topics, right?

22      A.   Two.  A couple topics.

23      Q.   And do you remember when that happened?

24      A.   November of 2017.  I don't remember the

25  exact date.  Maybe the 16th, November 16th.  Going

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6641

1  off memory here, though.

2      Q.   Okay.  And you don't remember Mario

3  Rodriguez telling you then that he thought best

4  option was to go into the feds and become a witness?

5      A.   I imagine he must have said that to Ronald

6  Sanchez.  Did he say it to me?  I don't remember it

7  that way.

8      Q.   Well, you testified that you were there,

9  right?

10     A.   I was there, yes.

11     Q.   I mean, you all were sitting in a small

12  room, right?

13     A.   Yes.

14     Q.   Were you sitting around a table?

15     A.   Yes.

16     Q.   Were you sitting next to Mario Rodriguez?

17     A.   He was nearby at the other end of -- yeah.

18     Q.   And was Agent Stemo also there?

19     A.   She was.  So at the table it was Ronald

20  Sanchez, Mario Rodriguez, and myself.  Mark Myers

21  and Nancy Stemo were just kind of standing along the

22  wall.  And then Captain Sergio Sapien from the STIU

23  was seated elsewhere in the office, in a chair.

24     Q.   Okay.  So you and Agent Stemo were there

25  representing the Federal Bureau of Investigation?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6642

1       A.   Yes.

2       Q.   And then the other personnel that you've

3   talked about, you said Sapien and Myers, they were

4   there from the New Mexico Corrections Department,

5   right?

6       A.   That's who they were employed by.

7       Q.   And Ron Sanchez was there?

8       A.   Yes.

9       Q.   And who else was there?

10      A.   Mario Rodriguez.

11      Q.   And Mario Rodriguez was there.  And so you

12  were sitting at a table with Mario Rodriguez and Ron

13  Sanchez?

14      A.   Yes.

15      Q.   Okay.  And that was when Mario Rodriguez

16  said to the two of you, "I think the best option is

17  to go into the feds and become a witness."  Right?

18      A.   Yes.  I think what I'm struggling with is,

19  I don't know if he's saying that to Ron, though,

20  like, "Hey, Ron, the best option is to do this," or

21  if he's representing that's his best option.

22      Q.   Okay.  But you don't dispute that he said

23  it was the best option?

24      A.   Yes.

25      Q.   You do dispute it?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6643

```
 1        A.   I don't dispute it.

 2        Q.   Okay.

 3        A.   I agree with you.

 4        Q.   Okay.  And you also discussed with Mario

 5   Rodriguez that as a result of his work for the

 6   Government, telling stories on behalf of the

 7   Government, that he was going to be able to do easy

 8   time, didn't you?

 9        A.   Well, no.

10        Q.   You don't think you talked about that at

11   this meeting?

12        A.   No.  Because I wouldn't say to somebody,

13   telling stories.  I'm not interested in their

14   stories.  I don't want to be told stories.

15        Q.   All right.  Let me put it this way, Agent

16   Acee:  At that meeting, where the three of you are

17   at the table, do you remember discussing the subject

18   of doing easy time?

19        A.   Easier time.  I probably might have said

20   something like that, yes.

21        Q.   Okay.  And do you remember Mario Rodriguez

22   saying, "It's going to be easy time"?

23        A.   Compared to going to a gang yard, I

24   believe that's correct, yes.

25        Q.   Do you remember that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6644

1      A.   I don't remember it verbatim, but I

2   remember talking about doing easy time versus going

3   and representing the SNM and the feds.  Yes, I

4   remember talking about that.

5      Q.   You remember that?  Do you recall that

6   Mario Rodriguez didn't like being in solitary

7   confinement?  He told you about the paranoia and the

8   violence and the plotting and the scheming, right?

9      A.   Yes.  He gave me examples of what it was

10  like, and he used me in one of his examples.

11     Q.   Okay.  And you remember that at this

12  meeting, where the three of you were at the table,

13  when he said, "It's going to be easy time in the

14  fed," he also talked about finally getting out, not

15  having to be in solitary anymore, right?

16     A.   Yes.

17     Q.   Wouldn't have to be in the hole no more?

18     A.   Yes.

19     Q.   You remember that?

20     A.   I do.

21     Q.   And he was -- you were -- the three of you

22  were having this group conversation, I think you

23  testified, at the request of Ron Sanchez, right?

24     A.   Yes.

25     Q.   And so this conversation came to be --



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    these statements from Mario Rodriguez were

2    descriptions of how good it could be if you become a

3    government witness, right?  That's what he's trying

4    to tell Ron Sanchez?

5        A.   He injected a lot of his opinion, yes.

6        Q.   Right.

7        A.   And I didn't stop him.

8        Q.   You didn't stop him because it's true,

9    right?

10       A.   I don't know.  I mean, I've never been in

11   a prison gang or in solitary confinement.  So I have

12   heard other prison gang members represent, you know,

13   PC yards and WITSEC as being easier time than being

14   on a gladiator yard or a gang yard, yes.

15       Q.   Well, you would agree with me that Mario

16   Rodriguez is pretty excited about the fact that

17   whatever time he's got do -- and we'll talk about

18   that -- is going to be easy time in Tucson or in

19   Florida, right?  You remember him saying that?

20       A.   Something like that.  He's excited he

21   doesn't have to pick up a shank anymore and be a

22   gang member.

23       Q.   Well, that's not what I asked you.  I

24   asked you if he was excited about going to Tucson or

25   to Florida?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6646

```
 1        A.   For those reasons.
 2        Q.   Yeah.  Because he's going to get contact
 3   visits, right?  He said that?
 4        A.   I don't know.
 5        Q.   You don't remember that?
 6        A.   He may have said something like that.
 7        Q.   I know it's been a little while, but you
 8   don't remember how excited he was, and how he was
 9   trying to pump Ron Sanchez up, telling him, "You go
10   to Tucson or Florida, you get contact visits.  You
11   don't have to be in the hole.  It's a whole other
12   deal"?
13        A.   Well, Mr. Rodriguez is pretty stoic.  I
14   don't know that I'd say he's excited.  I agree with
15   you that he talked about that kind of stuff.  Maybe
16   he was excited.  I don't know him real well.
17        Q.   You'd agree with me that as part of his
18   pitch, he said, "I'm going to get contact visits
19   when I go to Tucson or Florida"?
20        A.   I believe he did say that.
21        Q.   Would you like to see the transcript?
22   Would that help you remember?
23        A.   I'll take your representation.
24        Q.   All right.  So Mario Rodriguez is not even
25   close to the only government witness on Baby Rob's
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6647

1   list that you looked at earlier, right?  There were

2   a bunch?

3       A.   There were a bunch.

4       Q.   And we talked about Billy Cordova, that

5   he's on that list?

6       A.   Yes.

7       Q.   Can you tell me when you first learned

8   about Billy Cordova's involvement in the criminal

9   activity?

10      A.   Early on in the investigation I put, or

11  caused the Bureau to put together an organizational

12  chart, or not even an organizational, just who do we

13  know that's SNM.  And I had faces, names, and dates

14  of birth.  I think he was in on some of the original

15  stuff.  Because we were targeting everybody SNM.

16      Q.   Okay.  And when you talk about some of the

17  original stuff, and making that chart, did you use

18  this list of 167 people from Baby Rob in your chart?

19      A.   No.

20      Q.   Okay.  So are you going back farther in

21  time?

22      A.   Yes.

23      Q.   So when did you make that chart?

24      A.   I initiated the investigation in March

25  2015.  Within weeks or a month, we would have had a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6648

```
1   group of analysts already populating charts and
2   target lists and target packets.
3       Q.   Okay.
4       A.   Right away.
5       Q.   Okay.  Was Billy Cordova on your radar in
6   March 2015?
7       A.   I think we knew him as SNM, but he wasn't
8   on my radar in the first phase.  I had him in a
9   later phase.
10      Q.   Okay.  And the first indictment comes in
11  at the end of 2015, right?
12      A.   Correct.
13      Q.   And that's when you testified that you and
14  Agent Sainato and others sat down with Baby Rob's
15  brother, Roy Martinez, right, December 17, 2015?
16      A.   You use that term loosely, right?  Because
17  they're not brothers.  Carnals?  Is that what we're
18  saying?
19      Q.   Do you want to call them carnals?
20      A.   I don't, but that's the only way they're
21  going to be brothers.
22      Q.   You sat down with Roy Martinez in December
23  of 2015.  Do you remember?
24      A.   I don't.  I remember meeting him, but
25  after the takedown.  I interviewed him sometime
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6649

1  after the takedown.

2      Q.   Okay.  But it is your testimony that you

3  were present when Agent Sainato took copious notes

4  at that interview with Roy Martinez, right?

5      A.   I was present.

6      Q.   And Roy Martinez is known as Shadow?

7      A.   Yes.

8      Q.   And you heard the prosecutor earlier this

9  morning call him a "big leader"?

10     A.   I might have missed that part where she

11  said about Baby Rob and him, but he's a leader.

12     Q.   Okay.  It's your testimony that he's a

13  leader.  And is he a leader on a par with Baby Rob,

14  real high up in the organization?

15     A.   Yes.  I don't think he was as well liked,

16  but he was a leader at one time.

17     Q.   And he disgorged a lot of information with

18  you and Agent Sainato, didn't he?

19     A.   Yes.

20     Q.   And if you hadn't already had Billy

21  Cordova on your radar in 2015, you certainly did

22  after you met with Shadow, Roy Martinez, right?

23     A.   To be clear, there is a lot of people on

24  the radar.  I mean, all SNM was on the radar.  So

25  Billy was on the radar in the earliest stages, as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6650

1  were probably 100 or 150 guys.

2       Q.   167 guys on Baby Rob's list, right?

3       A.   I didn't count them, but that's what you

4  said.

5       Q.   And so when the FBI sat down, was this the

6  first time that you talked to Shadow, Roy Martinez,

7  December 17, 2015?  And I'll represent to you -- let

8  me just represent to you, Agent Sainato's notes that

9  you looked at reflect a date of December 17, 2015.

10 Do you have any reason to dispute the accuracy of

11 that date for that interview?

12      A.   No.

13      Q.   Do you know if that's the first time that

14 you sat down with Shadow?

15      A.   It's the first time I did.

16      Q.   Do you know if the FBI talked to him

17 before that?

18      A.   Everybody was interviewed or attempted to

19 be interviewed on December 3rd, when we did the

20 takedown.

21      Q.   Okay.  So two weeks later, you and Agent

22 Sainato debriefed Roy Martinez?

23      A.   Yes.

24      Q.   And part of your -- part of that debrief

25 covered Billy Cordova rather extensively, didn't it?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6651

1      A.   I don't recall.

2      Q.   Do you remember learning anything about

3  Billy Cordova during the course of that debrief?

4      A.   I've learned a lot about Billy Cordova in

5  a lot of debriefs.  I don't know exactly what was

6  talked about in that one.

7      Q.   If you took a look at Agent Sainato's

8  notes, would that help you recall the specifics of

9  what you discussed about Billy Cordova with Roy

10 Martinez?

11     A.   I prefer the 302, if I have a choice.

12     Q.   I'm asking about the notes.

13     A.   If that's all you're going to let me look

14 at, I'll look at them.

15     Q.   And I can definitely provide the 302 for

16 you, as well.

17     A.   I just prefer the 302, because it's going

18 to be more in-depth in detail.

19          MS. FOX-YOUNG:  Your Honor, may I

20 approach?

21          THE COURT:  You may.

22 BY MS. FOX-YOUNG:

23     Q.   Agent Acee, first, I'm just going to have

24 you take a look at these notes.  Does this refresh

25 your memory as to your discussion about something

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6652

```
 1   involving Billy Cordova?

 2        A.   Yes.

 3             MR. CASTELLANO:   Could we get a Bates

 4   stamp for this document, please?

 5             MS. FOX-YOUNG:   42980, and 42974 to 42975.

 6   BY MS. FOX-YOUNG:

 7        Q.   All right.   Agent Acee, I'm also showing

 8   you the report generated by Agent Sainato,

 9   presumably with the assistance of these notes that

10   you've looked at.

11        A.   Okay.

12        Q.   Agent Acee, having looked at these

13   documents, do you have some recollection now of what

14   the FBI learned about Billy Cordova on December 17,

15   2015?

16        A.   Yes.

17        Q.   What was that?

18        A.   That Billy Cordova and Roy Martinez did

19   some time together when they were incarcerated

20   together.   Billy Cordova, according to Roy Martinez,

21   told Roy that he shot Sammy Chavez over $100 drug

22   debt owed to Gerald Archuleta.   In the notes,

23   there's an indication that was highlighted that

24   said -- what I interpret from the notes is that it

25   said who's on the streets that might be able to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6653

```
1   conduct the hit.  And Billy Cordova was one of the
2   names.
3        Q.   Okay.  And so Roy Martinez told you and
4   Agent Sainato that Billy Cordova shot Sammy Chavez,
5   right?
6        A.   He told us that Billy told him that.
7        Q.   Right.  And so Agent Sainato's notes
8   reflect, "Billy shot him, told Shadow," right?
9        A.   Yes.
10       Q.   Okay.  And you remember -- I think it was
11  Friday of last week -- that Billy Cordova testified
12  that he didn't shoot Sammy Chavez, right?
13       A.   Correct.
14       Q.   And Billy Cordova also told you that he
15  didn't shoot Sammy Chavez?
16       A.   Correct.
17       Q.   Okay.  But you learned in December 2015
18  that he apparently told somebody else that he shot
19  Sammy Chavez?
20       A.   According to that person, yes.
21       Q.   Okay.
22            THE COURT:  Ms. Fox-Young, would this be a
23  good time for us to take our lunch break?
24            MS. FOX-YOUNG:  Yes, Your Honor.
25            THE COURT:  Be patient with me, ladies and
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  gentlemen of the jury.  We're taking our first lunch

2  break during the defendants putting on evidence in

3  this case, so I'm going to remind you of a few

4  things that are especially important.

5          Until the trial is completed, you're not

6  to discuss this case with anyone, whether it's

7  members of your family, people involved in the

8  trial, or anyone else, and that includes your fellow

9  jurors.  If anyone approaches you and tries to

10  discuss the trial with you, please let me know about

11  it immediately.

12          Also, you must not read or listen to any

13  news reports of the trial.  Again, don't get on the

14  internet and do any research for purposes of this

15  case.  And finally, remember that you must not talk

16  about anything with any person who is involved in

17  the trial, even if it doesn't have anything to do

18  with the trial.

19          If you need to speak with me, simply give

20  a note to one of the Court Security Officers or

21  Ms. Standridge.

22          I am going to repeat these a little bit

23  more as we transition in this case this week, but if

24  I don't, do keep them in mind each time we do take a

25  break.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              All right.  We'll be in recess for about
 2  an hour.
 3              All rise.
 4              (The jury left the courtroom.)
 5              THE COURT:  All right.  We'll see y'all in
 6  about an hour.
 7              (The Court stood in recess.)
 8              THE COURT:  All right.  Let's go on the
 9  record.  I think Ms. Standridge said that you,
10  Ms. Jacks, wanted to call some witnesses out of
11  order and you need to talk to the Government here?
12              MS. JACKS:  I haven't had a chance to ask
13  them.  Yes.
14              THE COURT:  All right.  Why don't you do
15  that now.  That would probably be the best use of
16  time.  So is everyone agreeable?  Is the Government
17  agreeable?
18              MS. JACKS:  I think they're thinking about
19  it, Your Honor.
20              THE COURT:  They're thinking about it?
21  All right.  While they're huddling, I did get to
22  finish the Government's brief on Mr. Perez' medical,
23  and I'll continue to think about it, but I'm
24  inclined to deny the motion.  So I think there are
25  more useful purposes for this information than just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6656

1  sympathy or jury nullification.

2           I haven't had a chance to look through the

3  jury instructions.  Whether anybody is interested in

4  a duress, I am sort of skeptical that anybody wants

5  that, but I haven't looked to see.  I mean, once you

6  sort of go that direction, you're kind of signaling

7  to the jury that:  I did it, but here's the reason I

8  did it.

9           But I can think of other reasons why it

10  goes to the factual voluntariness of the statement.

11  And those factors that we're going to put in the

12  jury instructions.  So I'm inclined to allow it.

13  But I'll think about it.

14           MS. ARMIJO:  Your Honor, we did think

15  about it, and we just would rather continue and

16  finish with Bryan Acee because, if not, it's just

17  going to give them -- he's already stopped one

18  cross-examination.  This would be stopping another

19  cross-examination, just continue to drag him on.

20  We'd rather just finish with him.

21           THE COURT:  Well, I think this is largely

22  the defendants' case at this time, so I'm going to

23  defer to them.  If they've got witnesses and they're

24  in agreement -- if there is disagreement, then I'll

25  resolve it among the defendants.  But if they're

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6657

 1  agreeable to culling him down, and getting some

 2  witnesses out of here, I'll defer to the defendants.

 3  Y'all got a disagreement among yourselves, or --

 4          MS. FOX-YOUNG:  I think the agreement is

 5  just that I was going to finish examining Agent Acee

 6  and then --

 7          THE COURT:  And that's when the break

 8  would occur?

 9          MS. FOX-YOUNG:  Yes, Your Honor.

10          MS. JACKS:  Correct, Your Honor.  My

11  understanding is we are all in agreement, and I

12  appreciate that.  I think we've put these witnesses

13  through quite a bit of inconvenience already.

14          THE COURT:  All right.  We'll let Ms.

15  Fox-Young finish up, and then we'll take a break,

16  and then we'll come back and finish up Mr. Acee at

17  another point.

18          Let me, while -- well, we're out of time.

19  I was going to give you a few case cites to looking

20  at this Count 8 on Mr. Baca, but I'll try to find

21  another time to do that.

22          All rise.

23          (The jury entered the courtroom.)

24          THE COURT:  All right.  Mr. Acee, I'll

25  remind you that you're still under oath.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6658

```
 1          Ms. Fox-Young, if you wish to continue
 2   your direct examination of Mr. Acee, you may do so
 3   at this time.
 4          MS. FOX-YOUNG:  Thank you, Your Honor.
 5          THE COURT:  Ms. Fox-Young.
 6   BY MS. FOX-YOUNG:
 7      Q.   Agent Acee, before we went to lunch, I
 8   think you had just testified that you became -- you
 9   were made aware by Roy Martinez, the information
10   that Billy Cordova had told him that he shot Sammy
11   Chavez.  Do you remember that?
12      A.   Yes.
13      Q.   And that that was over a $100 debt to
14   Gerald Archuleta or Styx?
15      A.   Yes.
16      Q.   And you also -- you were made aware of
17   information having to do with Billy Cordova and the
18   murder of Sammy Chavez before that interview with
19   Roy Martinez, weren't you?
20      A.   Yes.
21      Q.   You remember that you did a debrief with
22   Freddie Quintana in the summer of 2015 in August?
23      A.   Yes.
24      Q.   You learned something similar from him,
25   didn't you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.   I believe so.

2        Q.   Do you remember exactly what you learned

3   from Freddie Quintana?

4        A.   No, ma'am.

5        Q.   Well, if I represented to you that your

6   report indicated that Mr. Quintana told you that

7   Billy Cordova participated in the killing of Sammy

8   Chavez at a park in Albuquerque, would you think

9   that's the truth?

10            MR. CASTELLANO:  Your Honor, I object.  If

11   she's going to refresh recollection, she can show

12   the witness the document.

13            THE COURT:  Why don't you do it the

14   traditional way?

15            MS. FOX-YOUNG:  I'm happy to refresh him,

16   Your Honor.

17            THE COURT:  All right.

18   BY MS. FOX-YOUNG:

19        Q.   So you recall this interview in August of

20   2015.  Do you remember talking to Freddie Quintana

21   about Billy Cordova?

22        A.   No.

23        Q.   Okay.  Will it help you remember if I show

24   you your 1023 form?

25        A.   Yes, ma'am.  Thank you.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6660

1      Q.    So, Agent Acee, just take a look at that

2  section that I've highlighted with regard to Billy

3  Cordova.

4      A.    Okay.

5      Q.    Does that help you remember the

6  conversation that you had with Freddie Quintana

7  about Billy Cordova and the Sammy Chavez murder?

8      A.    Yes.

9      Q.    What did you learn about Billy Cordova's

10  involvement in the murder?

11      A.    Quintana told me that he believed Cordova

12  killed Sammy Chavez and left him in a park in

13  Albuquerque.

14      Q.    And he told you a little bit more than

15  that, didn't he, about what Cordova told him?

16      A.    Could you point it out to me, ma'am?

17      Q.    Did he tell you that Cordova actually

18  admitted the murder to him?

19      A.    Yes.

20      Q.    And you included that in your report.

21  Now, I don't want to confuse anybody.  I told you

22  this is a 1023 report.  That's different than a 302

23  report, right?

24      A.    It is.

25      Q.    In layman's terms, can you tell me what

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the difference is?

2       A.   Sure.  Once a person is opened as an

3   informant, we'll still write it in a 302.  But we

4   also include it in a specific report that's just

5   attributed to that informant, and that form happens

6   to be a 1023.  So oftentimes you'll see where I have

7   a 302, and the 1023 matches it exactly.  And we're

8   just duplicating it so that -- it's just a Bureau

9   procedure to make sure that it's also listed under

10  that informant, in their informant file.

11      Q.   Okay.  And this information happened to be

12  contained in your 1023, right?

13      A.   Yes, ma'am.  Yes.

14      Q.   And you also learned from at least one

15  other person -- maybe more -- but at least one other

16  person in the course of your investigation in 2015,

17  about how and why Billy Cordova was involved in the

18  murder of Sammy Chavez.  Do you recall there was

19  another person?

20      A.   No.

21      Q.   You don't recall discussing Billy Cordova

22  and the Sammy Chavez murder with anyone?

23      A.   I've done that with a lot of people.  But

24  I'm just not sure which one you're referring to.

25      Q.   Tell me who else you remember talking to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    about Billy Cordova's involvement in the murder of

2    Sammy Chavez.

3         A.   Well, in trying to sort out the Sammy

4    Chavez murder, which is still unsolved, there are

5    usually three or four names that I bring up when I

6    talk to SNMers.  Billy is one of them.

7         Q.   And I'm just asking specifically.  You

8    have ascertained information from sources about

9    Billy Cordova's involvement in the Sammy Chavez

10   murder, correct?

11        A.   Yes.

12        Q.   And one of those sources is Shadow, Roy

13   Martinez?

14        A.   Correct.

15        Q.   And one of those sources is Freddie

16   Quintana, who told you and the FBI that Billy

17   Cordova admitted to murdering Sammy Chavez, right?

18        A.   Yes.

19        Q.   And do you remember -- and I know it's

20   been a while, but do you remember any other specific

21   source who told you that Billy Cordova killed Sammy

22   Chavez?

23        A.   Not off the top of my head, no.

24        Q.   Do you remember any specific source who

25   told you that Billy Cordova bragged about killing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Sammy Chavez?

2       A.   Not off the top of my head.

3       Q.   If I showed you a report based upon your

4  meeting with Sammy Griego in December 2015, would

5  that help refresh your memory?

6       A.   Yes, ma'am.

7            MS. FOX-YOUNG:  Your Honor, may I

8  approach?

9            THE COURT:  You may.

10      A.   Okay.

11 BY MS. FOX-YOUNG:

12      Q.   So having looked -- and this is your

13 report, right?

14      A.   I just need to look at that second page.

15 I think so.  It's an FBI report.

16           THE COURT:  While he's looking at that,

17 let me see counsel up here at the bench.

18             (The following proceedings were held at

19 the bench.)

20           THE COURT:  When I'm looking at these jury

21 instructions, is the red line version the one that

22 y'all agree on?  Those changes you agree on?

23           MS. JACKS:  Here's the situation:  The

24 instructions outlined in the letter, in answer to

25 your question, we all have agreed on.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6664

```
1            THE COURT:  The ones in the letter and the
2   red line is what?
3            MS. JACKS:  The additional instructions --
4   there are red lines throughout.  The numbers we've
5   agreed on in the letter we've agreed on.  The other
6   red-lined ones, ones that we haven't agreed on,
7   we're in the process of reviewing and attempting to
8   agree.
9            THE COURT:  Okay.
10           MR. CASTELLANO:  So there is no current
11  agreement on the other red-lined items that are not
12  in the letter.
13           THE COURT:  Okay.
14           MS. JACKS:  And the reason we left the red
15  line in there is so that the Court could see the
16  changes that are being proposed.
17           THE COURT:  Okay.  And do you think that
18  y'all may agree to some of those?
19           MR. BECK:  I think we may.
20           THE COURT:  But the red lines are largely
21  the defendants' proposals?
22           MS. JACKS:  They are.
23           MR. CASTELLANO:  They are the defendants'
24  proposed changes.
25           MR. VILLA:  The defendants all agree.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6665

```
 1    It's just getting the Government --
 2              MS. JACKS:  That was Saturday's work.
 3              THE COURT:  Thank you.
 4                 (The following proceedings were held in
 5    open court.)
 6              THE COURT:  All right.  Ms. Fox-Young.
 7              MS. FOX-YOUNG:  Thank you, Your Honor.
 8    BY MS. FOX-YOUNG:
 9         Q.   Agent Acee, you took a look at this report
10    from December 15, 2015.  And it's your report,
11    right?
12         A.   Yes, it is.
13         Q.   And this was based upon a debrief that you
14    did with Sammy Griego?
15         A.   Yes.
16         Q.   And having looked at it now, you remember
17    talking to Sammy Griego about Billy Cordova's
18    involvement in the murder of Sammy Chavez?
19         A.   Yes.
20         Q.   And what did you learn from Sammy Griego?
21         A.   Griego reported to me that, while housed
22    with Billy Cordova at the RDC, which is the Central
23    New Mexico Correctional Facility in Los Lunas, I
24    believe in 2011, that Cordova said that he killed
25    Sammy Chavez, because Chavez had messed with some of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6666

1  Cordova's girls.  I'm not sure what that means.

2      Q.   Right.  So Sammy Griego told you that

3  Billy Cordova actually bragged to him that he had

4  killed Sammy Chavez for a personal reason, because

5  he'd messed with one of his girls, right, or some of

6  his girls?

7      A.   All of that is correct, except I don't

8  know if it's personal or not.

9      Q.   Okay.  You don't know if it's personal

10  that it was one of Cordova's girl, correct?

11      A.   Everything else I would agree with.

12      Q.   You might not characterize that as

13  personal?

14      A.   Correct.

15      Q.   But you do agree that Billy Cordova --

16  according to Sammy Griego, Billy Cordova bragged

17  about killing Sammy Chavez?

18      A.   Yes.

19      Q.   And you remember that when Billy Cordova

20  took the stand last week, he absolutely denied

21  shooting Sammy Chavez?  Do you remember that?

22      A.   Yes.

23      Q.   And he also said something along the lines

24  that he would never take credit for something he

25  didn't do.  Do you remember that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6667

```
1        A.    I think he said that.

2        Q.    With regard to murders, right?

3        A.    Yes.

4        Q.    It was his testimony that he wouldn't brag

5   about murdering Sammy Chavez if he hadn't done it,

6   right?

7        A.    Yes.

8        Q.    But you had information -- sitting here

9   today, you and the FBI have information from sources

10  like Sammy Griego that apparently Billy Cordova did

11  brag about murdering Sammy Chavez, right?

12       A.    According to Griego, yes.

13       Q.    Right.  And, in fact, in your experience,

14  you said you've done at least 50 interviews related

15  to this case, right?

16       A.    At least.  Maybe closer to 100.  I'm not

17  sure.

18       Q.    And some of these sources you've talked to

19  upwards of half a dozen times, right?

20       A.    Yes.

21       Q.    Some many more times than that?

22       A.    I don't think so.

23       Q.    In any event, you've become awfully

24  familiar with how things work among these gang

25  members in the New Mexico prison system, right?
```

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                                          Albuquerque, NM 87102
(505) 989-4949                                                                      (505) 843-9494
FAX (505) 820-6349                                                              FAX (505) 843-9492
                                                                                1-800-669-9492
                                                                          e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.   Yes.
 2        Q.   And you've actually learned that it's not
 3   terribly uncommon to brag about criminal conduct
 4   that you didn't participate in, right?
 5        A.   I can think of a couple of situations
 6   where guys have done that; and then, when I later
 7   interviewed them about it, to include playing the
 8   recordings, they said they were bragging about
 9   something they hadn't done.
10        Q.   Right.  But you heard Billy Cordova's
11   testimony that that doesn't happen, right?
12        A.   Did he say that?  He said that --
13        Q.   I'm asking what you remember him saying
14   about bragging about murders that he didn't do.
15        A.   I believe he said that wasn't a good idea,
16   that people shouldn't do that, and that he wasn't
17   involved in -- he didn't brag about Sammy Chavez.
18        Q.   But that's not what Sammy Griego says,
19   right?
20        A.   Correct.
21        Q.   And that's not what Freddie Quintana says,
22   right?
23        A.   Right.
24        Q.   And are you also aware, based upon FBI
25   reports and work that the FBI has done in this case,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


**BEAN & ASSOCIATES**, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
**1-800-669-9492**
e-mail: info@litsupport.com

6669

1 that some people also say Billy Cordova bragged
2 about killing Shane Dix?
3      A.   I recall that coming up at least one time,
4 yes.
5      Q.   At least one source told you, "Billy
6 Cordova bragged to me, or to somebody, that he
7 killed Shane Dix"?
8      A.   I just remember that that rumor was out
9 there and that was something that we looked at.
10      Q.   Do you think Billy Cordova killed Shane
11 Dix?
12      A.   No.
13      Q.   How do you know that?
14      A.   In summary, through the totality of our
15 investigation.  But another -- the person who called
16 it has pled guilty to that.  And Mario Montoya took
17 me out to the scene of where that murder was, and
18 walked us through it.  So that's two people that
19 have admitted their responsibility in it.  And then
20 a third one is still facing trial.
21      Q.   So in your estimation, if Billy Cordova is
22 talking -- is telling people that he killed Shane
23 Dix, he's bragging about a murder he didn't do?
24      A.   If he's out there doing that, yeah.  I
25 don't put him at the scene.  In fact, I think he's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6670

1  in custody at the time.

2       Q.   And with respect to Sammy Chavez, do you

3  think Billy Cordova shot Sammy Chavez?

4       A.   I did for a long time.  But the problem

5  is, Corrections has him in custody at the time of

6  the murder.

7       Q.   Right.  So if Sammy Griego and Freddie

8  Quintana have him telling them that he bragged about

9  the murder, and has taken ownership for it, he'd be

10  bragging about a killing he didn't do, right?

11       A.   If all of that is correct, yeah.

12       Q.   Okay.  And I think I asked you, through

13  the course of your investigation you have learned

14  that people do -- people in the SNM, people in the

15  New Mexico prison system, do lay claims to things

16  that they didn't do, right?

17       A.   It has happened, yes.  It's not really

18  common.

19       Q.   Oh, it's not common?

20       A.   I don't think it's common.  But I do agree

21  with you that it's happened.

22       Q.   Okay.  And you're aware that sometimes

23  people do that, brag about doing things they didn't

24  do, for self-preservation?

25       A.   That's probably a reason, yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   You know that you've testified before

2  today, and answered questions along these lines with

3  regard to people in the SNM bragging about things

4  they didn't do, right?

5     A.   I've testified a whole bunch in this case.

6  I've probably talked about that.  I'm not sure.

7     Q.   Let me ask you this:  Do you remember

8  testifying in front of Judge Browning in this case

9  on questioning by Marc Lowery, where Marc Lowery

10  asked you:  You had mentioned about consequences for

11  taking credit for something you didn't do?

12          And you answered, "Yes."

13          Do you remember that?

14     A.   Yes.

15     Q.   And then you were asked:  And what are

16  some of the types of consequences?  You said there

17  were beatdowns, or what else?

18          Do you remember that question?

19     A.   Yes.

20     Q.   And you remember that you answered, "Well,

21  in some cases some of the members told me they

22  didn't really see it as a problem, and that it's a

23  common occurrence to take credit for something they

24  didn't do, or to brag."

25          Do you remember that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.    Yeah, I agree with that.

2       Q.    You're not walking back that testimony

3   today?

4       A.    No.  I think we should clarify --

5       Q.    Thank you, Agent Acee.

6             So we're talking about Sammy Chavez and we

7   talked about Shane Dix, and Billy Cordova bragging

8   about those murders.  Are there any other murders

9   that you know of that Billy Cordova bragged about,

10   that he didn't do, other than those two?

11       A.    I can't think of any, no.

12       Q.    And so I think you testified that at the

13   end of 2015, the first indictment in this case came

14   down, right?  That was the first phase?

15       A.    Yes.

16       Q.    And at the end of 2015, you went to see

17   Billy Cordova at the Metropolitan County Detention

18   Center, right?

19       A.    I thought it was early 2016.

20       Q.    January 2016?

21       A.    Yes, ma'am.

22       Q.    Okay.  And so at the time that you went to

23   see Billy Cordova, you testified that you were at

24   MDC to see somebody else?

25       A.    Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And you happened to engage with Billy
 2   Cordova on that same day?
 3        A.   Yeah.  We didn't plan it, but we needed to
 4   salvage -- the way in which the correctional
 5   officers pulled out an informant we had up there,
 6   comprised the informant.  So I asked them to pull
 7   everybody in the SNM pod, so it looked like we were
 8   talking to everybody.
 9        Q.   And you had Agent Neale with you?
10        A.   Yes, I believe.
11        Q.   And you had tasked Agent Neale with
12   writing up what are called overt acts for the RICO
13   case, right?
14        A.   Yes, ma'am.
15        Q.   And how many overt acts got ultimately
16   written up for that case?  Do you know?
17        A.    In the superseding indictment, I think
18   there is -- actually, I don't remember off the top
19   of my head -- 256 maybe, 254.
20        Q.   More than 250?
21        A.   Yes.
22        Q.   And as of the time, the day that you met
23   Billy Cordova, in January 2016, one of those overt
24   acts that you were looking at was on Sammy Chavez,
25   right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6674

1     A.   Yes.  I was looking at Billy Cordova for

2  that.

3     Q.   And one was Shane Dix?

4     A.   I'm not sure it was.  We ruled him out

5  pretty quick.

6     Q.   Let's go back to Sammy Chavez.  I know

7  it's your testimony that Billy Cordova did not pull

8  the trigger and kill -- as far as you know -- and

9  kill Sammy Chavez, but you think he was involved in

10  that murder, right?

11     A.   Yes, I think he gave some advice to the

12  person that shot him.  I mean, it's still open.

13  We're looking at a lot of angles on that.

14     Q.   And you were looking at charging him; that

15  was one of the overt acts for the RICO case, was the

16  Sammy Chavez murder?

17     A.   You mean that loosely, like in planning

18  it?  Those could be overt acts, and we would

19  definitely include those.

20     Q.   I think you've previously testified that

21  you were looking at Billy Cordova on the Sammy

22  Chavez murder, in terms of that RICO case and those

23  overt acts.  I'm just confirming that.

24     A.   I have always looked at Billy Cordova in

25  that homicide, yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And you were also looking at Billy Cordova
 2   for his assault on his wife, Crystal Salas, which
 3   you thought was gang-related, right?
 4        A.   Yes.
 5        Q.   And that was also an overt act?
 6        A.   Yes.
 7        Q.   And that's the case where Mr. Cordova
 8   punched Crystal Salas repeatedly, broke ribs, caused
 9   internal bleeding; is that right?
10        A.   I don't know what the specific injuries
11   were, but he beat her up pretty good.
12        Q.   Well, you heard his testimony.
13        A.   I heard him say "Yes" a lot to the
14   questions he was asked, yes, about that.  I don't
15   actually know what the injuries to her were.
16        Q.   Okay.  Well, you heard him admit that he
17   inflicted those injuries?
18        A.   Yes.
19        Q.   On the stand last week?
20        A.   Yes.
21        Q.   So Agent Neale had included that as one of
22   the overt acts that you were looking at?
23        A.   Yes.
24        Q.   And you also knew, didn't you, that Billy
25   Cordova had waterboarded people?  He described for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6676

 1  the jury what that consisted of?

 2        A.   I didn't know that until he told us that.

 3        Q.   Okay.  You learned that later?

 4        A.   Yes.

 5        Q.   And you learned that he had wanted Javier

 6  Molina hit?

 7        A.   That was not something I knew when we were

 8  working on the overt acts.

 9        Q.   What other criminal conduct did you know

10  about with regard to Billy Cordova in January 2016?

11  How many other murders?

12        A.   I wanted to include the murder that he was

13  at MDC on, which he went to trial, and I think it

14  was a manslaughter.  I considered that gang-related,

15  based on what I knew about it at the time.

16        Q.   And who was the victim in that case?

17        A.   I don't recall the man's name, but it was

18  someone that was in a feud with one of Billy's

19  family members.

20        Q.   Was that Ray Gurule?

21        A.   I'm sorry, I don't --

22        Q.   So Sammy Chavez and that murder.  What

23  others?

24        A.   Anything that was in his criminal history

25  we were looking at including as overt acts, if we

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   thought they were gang-related or could further his
 2   status in the gang.
 3        Q.   Crystal Salas' assault, correct?
 4        A.   Yes.
 5        Q.   Do you remember any others specifically?
 6        A.   Some drug dealing.  But if you're asking
 7   me specifically about murders, I think that's it.
 8        Q.   What drug dealing activity were you going
 9   to include in the RICO case with regard to Billy
10   Cordova?
11        A.   Any drug dealing we could prove.
12        Q.   Did you have some?
13        A.   Yes.
14        Q.   And what was that?
15        A.   I'd have to look at his NCIC, his criminal
16   history again.
17        Q.   But you know that, in January 2016, you
18   were going to go after him for dealing drugs in this
19   RICO case?
20        A.   As well as other crimes.
21        Q.   What else?
22        A.   Any assaults that we could articulate.
23   And this is just the FBI presenting this.  Of
24   course, it goes through a bunch of approvals.  But
25   what I had tasked Neale with was any crime that we
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6678

1   reasonably could tie to gang activity or furthering

2   his reputation to either join the gang or stay in

3   the gang, mainly.

4       Q.   Okay.  And so we talked about one assault,

5   that was beating up his wife, and that you

6   considered furthering his reputation, right?

7       A.   Given the circumstances, yes.  Normally,

8   we wouldn't include a domestic violence, but this

9   was specific because his wife had engaged in a

10  romantic relationship with another member.  We knew

11  that historically had great significance to the SNM,

12  and we believed that he beat her up because of that.

13      Q.   So you were writing that up as one of the

14  overt acts?

15      A.   Yes.

16      Q.   Were there other assaults?  And if you

17  don't remember specifically, that's fine.  But do

18  you remember if there were others?

19      A.   I think that there were quite a few overt

20  acts.  We were also looking at letters, inter-prison

21  letters with other members.

22      Q.   Okay.  And at that point, in the course of

23  this case, the RICO case, death penalty was on the

24  table, right?  At the beginning of 2016, it was a

25  death case?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6679

1    A.    For other -- for VICAR defendants?  I

2  believe it was.

3    Q.    The RICO case.

4    A.    Well, no, ma'am.  I mean, the RICO case

5  hadn't been charged, so death penalty is not on the

6  table.

7    Q.    The VICAR case was a death penalty case?

8    A.    Yes, it was still on the table.

9    Q.    And you were getting ready to charge the

10  RICO case the same way?  I understand that you and

11  the FBI don't make the charging decision.

12    A.    So in the RICO case, yes, any allegation

13  where there's death, where there's a murder, the

14  death penalty could be applied.

15    Q.    So, in January 2016, you were looking at

16  Billy Cordova for at least two murders, multiple

17  assaults, drug dealing, and other criminal conduct

18  for this RICO case, for which the death penalty was

19  on the table, correct?

20    A.    No.  All of that is correct except the

21  death penalty part.

22    Q.    Because it hadn't been charged yet?

23    A.    Right.  And, I mean, that decision is made

24  by the Attorney General himself or herself.

25    Q.    I understand that you don't make that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6680

1    decision.  But at that time, there were SNM

2    defendants facing the death penalty?

3        A.   Yes.

4        Q.   And so you went with Billy Cordova, and I

5    think your testimony at a prior hearing was that,

6    upon meeting with him and talking about what he

7    might be able to do for the Government in this case,

8    you directed Agent Neale to stop writing up overt

9    acts in the RICO case on Billy Cordova.  Do you

10   remember that testimony?

11       A.   At some point I did.  I don't know that it

12   was at the initial meeting.  But at some point I

13   definitely did.

14       Q.   Maybe soon after?

15       A.   Yes.

16       Q.   And so is it your testimony today, to this

17   jury, that even though the death penalty was on the

18   table for the SNM defendants, you never mentioned

19   that to Billy Cordova?

20       A.   I don't think I've ever said that.

21       Q.   You don't think you have?  You heard Billy

22   Cordova's calls last week with his family, where he

23   told the people he's closest to in the world that

24   the federal government did threaten him with the

25   death penalty?  You heard that, right?

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 820-6349                                                  FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6681

```
 1        A.    I did.
 2        Q.    And the death penalty was on the table in
 3   January 2016, but it's your testimony you never said
 4   anything about that?
 5        A.    Well, I think you're telling me I never
 6   said that.
 7        Q.    I'm just asking you what your testimony
 8   is.
 9        A.    I don't know that I came out and said
10   that.
11        Q.    Is it also your testimony that you never
12   mentioned a life sentence, the possibility of a life
13   sentence to Billy Cordova?
14        A.    I'm not sure.
15        Q.    And you heard those calls where he told
16   his family that, right?
17        A.    I think -- yes, I think he did say that.
18        Q.    Wouldn't it be pretty important to
19   remember whether or not you told a government
20   witness that they could be facing the death penalty
21   or a life sentence?
22        A.    Not necessarily.
23        Q.    It's not an important detail?
24        A.    Well, if Billy Cordova were the only
25   person I interviewed, I'd probably remember a lot
```

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 820-6349                                             FAX (505) 843-9492
                                                                  1-800-669-9492

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                                         e-mail: info@litsupport.com

```
 1    more about my conversation.  But, as I said, I've

 2    interviewed somewhere between 50 and 100 of these

 3    guys.  And each time one of them gets out of prison,

 4    I'm at their parole office to meet them and talk to

 5    them.

 6         Q.    Okay.  But you heard what he told his

 7    family soon after the meeting with you, right; that

 8    you did threaten him with the death penalty and with

 9    a life --

10         A.    I --

11         Q.    No, I'm just asking if you heard that

12    call.

13         A.    Where I threatened him?  No, I didn't hear

14    that.

15         Q.    The federal government threatened him?

16         A.    He did mention that.

17         Q.    And is it your testimony that you never

18    threatened to charge his wife, Crystal Salas?

19         A.    No, I've never mentioned at all anything

20    like that.

21         Q.    But you heard his testimony last week, and

22    you heard the call where he said he was doing what

23    he was doing because of threats on his -- partly

24    because of threats on his wife, his family?  Do you

25    remember that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6683

1       A.   Not real clearly.  But he mentioned

2  something like that.  I don't know if that was

3  threats from us or threats from the gang.

4       Q.   I'm just asking if you remember hearing

5  that telephone call?

6       A.   I remember hearing a telephone call, yes.

7       Q.   So even though you had evidence that Billy

8  Cordova was implicated in multiple murders and

9  assaults and drug dealing and other criminal

10  activity, it all was washed away after you met with

11  him in January 2016, right?

12       A.   No.

13       Q.   You didn't tell him that you weren't going

14  to charge him in the RICO case?

15       A.   Not at that time, no, because I still

16  pushed to charge him.  Nor did I have evidence at

17  that time of the homicides you just mentioned.  I

18  had informants saying that they'd heard that.

19  That's not evidence.

20       Q.   Do you remember your earlier testimony

21  that you told Billy Cordova -- that you told Agent

22  Neale in front of Billy Cordova to stop writing up

23  overt acts because he wouldn't be charged in the

24  RICO case based upon his work for the Government?

25  You don't remember that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    That's not how I said it, no.

2        Q.    How did you say it?

3        A.    I introduced him to Agent Neale, and I

4    told him, "This is the guy I've assigned to work the

5    RICO on you."

6        Q.    And you certainly left Billy Cordova with

7    the impression that if he were to work for the

8    Government, all that would wash away, didn't you?

9        A.    No.  I got Billy Cordova an attorney

10   because I wanted to charge him.

11       Q.    Okay.  And so after that meeting at the

12   Metropolitan Detention Center, you later met with

13   him at the FBI office in Albuquerque, right?

14       A.    Yes.

15       Q.    And who was at that meeting?

16       A.    MDC staff brought him there; STIU staff

17   took him to the prison.  So those two entities were

18   there, as well as FBI agents.

19       Q.    Okay.  And that's when you talked to him

20   in greater detail about what he might be able to do

21   for the federal government, right?

22       A.    When I tasked him with doing recordings at

23   the penitentiary.

24       Q.    Okay.  And that's when you made

25   arrangements to place Billy Cordova in a cell in

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                                 (505) 843-9494
FAX (505) 820-6349                                                     FAX (505) 843-9492
                                                                              1-800-669-9492
                                                              e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   solitary confinement right next to Rudy Perez,

 2   right?

 3        A.   No.

 4        Q.   You didn't make those arrangements?

 5        A.   Not the way you're categorizing it, no.

 6        Q.   When did you make the arrangements?

 7        A.   I asked that he be placed near Herrera and

 8   Perez.  And that's the extent of it.  How the

 9   Department of Corrections maneuvered that, I didn't

10   have input on.

11        Q.   Okay.  And you recall testifying earlier

12   today that Eric Duran's placement was at your

13   request, right?

14        A.   No.  The return of Anthony Ray Baca.

15        Q.   But my question is:  Do you remember

16   testifying that Eric Duran's placement was at your

17   request?

18        A.   No.

19        Q.   Well, I can go back and pull the

20   transcript.

21        A.   Baca's was, not Duran's.  Duran was

22   already there.

23        Q.   The placement of Baca next to Duran was at

24   your request?

25        A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6686

1    Q.   Okay.  And the placement of Billy Cordova

2  next to Rudy Perez was at your request, right?

3    A.   Yes.

4    Q.   Okay.  So two days after that second

5  meeting with Billy Cordova at the FBI office, Billy

6  Cordova lands at the Penitentiary of New Mexico in a

7  cell next to Rudy Perez, right?

8    A.   Correct.

9    Q.   And that was in February 2016, right?

10   A.   Yes.

11   Q.   Did you talk -- you heard Billy Cordova

12 use the phrase "pressure points" in court, right?

13 The pressure points he used on Rudy Perez?

14   A.   I have heard him talk about that.

15   Q.   Is that a phrase he got from you, or is

16 that his own language?

17   A.   That's his own language.

18   Q.   So that's when Billy Cordova used the

19 pressure points on Rudy Perez, right, that period of

20 time?  This is Billy Cordova's own testimony.  You

21 remember that?

22   A.   Yes.  I'm just struggling to remember what

23 the pressure points were.

24   Q.   Well, I'll remind you.  Billy Cordova

25 testified at this trial, and also previously at a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6687

```
 1  hearing where you were present, that he took

 2  advantage of the fact that Rudy Perez thought the

 3  SNM was going to move on him.  And Billy Cordova

 4  said he used that -- he used those rumors, he used

 5  that information, as a pressure point to extract the

 6  information that he wanted from Rudy Perez.

 7          Do you remember that?  I'm just asking if

 8  you remember that testimony; not what you think of

 9  it.

10      A.   I remember him talking about that.

11      Q.   So that happened in February 2016, right?

12      A.   That Rudy and Billy were next to each

13  other, yes.

14      Q.   And those recordings were made in February

15  2016?

16      A.   Yes.

17      Q.   Several months later, Billy Cordova was

18  caught having sex with his wife during contact

19  visits, right?

20      A.   Yes.

21      Q.   That was at the end of 2016 and the

22  beginning of 2017?

23      A.   Yes.

24      Q.   And we don't know how many times he had

25  sex with his wife while he was in custody with the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6688

```
 1  Department of Corrections, right?
 2       A.   I think we do.
 3       Q.   How many times?
 4       A.   I think it was six.
 5       Q.   We know six were recorded on camera?
 6       A.   How else would they have -- I believe it
 7  was six.
 8       Q.   We know there were at least six, right?
 9       A.   I believe it was six.
10       Q.   Well, we don't know what wasn't recorded,
11  right?  I think Billy Cordova testified that he did
12  it all the time.  They'd find a way.  They'd go to a
13  bathroom.  He had all kind of ways of having sex
14  with his wife.  Do you remember that?
15       A.   I remember him saying that inmates had sex
16  with people in the bathroom.  I don't know that he
17  said that he did with his wife.
18       Q.   Okay.  But you know about six times that
19  you can verify because there is video of it, right?
20       A.   Yes.
21       Q.   And were all six times in front of his
22  children?
23       A.   No.
24       Q.   How many times in front of his children?
25       A.   At least four.  I'm just going off
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6689

```
 1    recollection of watching the videos.
 2         Q.    Okay.  When did you learn about this
 3    misconduct?
 4         A.    When the Department of Corrections called
 5    me and told me about it.  And I drafted a 302.  I
 6    just didn't know I'd be asked about this today, so I
 7    don't have it in front of me.
 8         Q.    Okay.  Well, you ultimately closed him as
 9    your government witness on January 13, 2017, right?
10         A.    Yes, ma'am.
11         Q.    And why did you close him?
12         A.    He didn't follow instructions.
13         Q.    Which instructions did he fail to follow?
14         A.    I'd gone up and met with the CHSs, and I
15    told them I didn't want any more problems up at the
16    penitentiary between each other or between the
17    staff.  That instruction specifically.  There's not
18    an instruction, you know, in the FBI confidential
19    source manual about having sex with your wife while
20    you're in custody.  It doesn't get that specific.
21    But the specific instruction is not to -- to go with
22    the program, and not cause any problems up there.
23         Q.    And he didn't do that, right?
24         A.    No.
25         Q.    And it's important that your informants,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  that your witnesses do follow instructions, right?

2      A.   Yes.

3      Q.   It's important that they follow your

4  instructions in the course of carrying out their

5  duties as government witnesses, right?

6      A.   Yes.

7      Q.   And it's important because you have to be

8  able to rely on the information that they give you,

9  right?

10     A.   Yes.

11     Q.   Because that's how you build your case,

12 right?

13     A.   One of the tools.

14     Q.   Because you want to go after people who

15 have done wrong, right?  And then you're trying to

16 collect the information that you need to do that,

17 right?

18     A.   Yes.

19     Q.   And you knew that information would be

20 reliable, right?

21     A.   Otherwise, we're wasting our time.

22     Q.   And so you didn't want to waste your time

23 anymore with Billy Cordova after January 13, 2017,

24 because he'd broken the rules, right?

25     A.   I didn't want to give him any more money.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6691

1   That's why I closed him.

2       Q.   Okay.  You couldn't trust him anymore

3   after that, right?

4       A.   I don't agree with that.

5       Q.   Okay.  Sitting here today, can you still

6   say that you trust Billy Cordova?

7       A.   Yes, to a certain extent.

8       Q.   To a certain extent?

9       A.   Yes.

10      Q.   So you say that you trust Billy Cordova

11  and find him to be reliable?

12      A.   Depends what the circumstance is.

13      Q.   All right.  Well, how about given the

14  circumstance that Billy Cordova did not tell you the

15  truth about -- did not tell you or the prosecutors

16  in this case the truth about his drug use, and

17  continued drug use until just before this trial?

18  And does that cause you to question your trust in

19  him?

20      A.   That's one of the areas that causes me

21  concern.

22      Q.   Okay.  And does it cause you concern to

23  know that Billy Cordova testified last week that his

24  statements before this Court in December about his

25  drug use were untrue, and that he made those

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    statements under oath?

2         A.   Yes.  Anytime somebody lies under oath,

3    that's a significant problem.  It sounded like to

4    me, from what I witnessed, that he was confused

5    about the question, or he had some -- he had some

6    difficulty with that question and understanding it,

7    and only he would know what that was.  I don't know.

8         Q.   Well, I mean, if you want, we can go back

9    and look at his testimony under oath at the end of

10   last year.  But I'll represent to you that he was

11   asked about his drug use, and he testified that he

12   hadn't used drugs in two years; and then we

13   subsequently learned, during the course of this

14   trial, that that was untrue, and that he had been

15   using drugs only weeks before he made those

16   statements in court.

17            Do you remember that?

18        A.   If what you're representing is true, then

19   that's a problem.

20        Q.   Pretty simple questions, right?

21        A.   The way you phrased it, yes.

22        Q.   But that's not enough to break your trust

23   in him?

24        A.   Ma'am, I have some -- you asked me if I

25   thought he's reliable.  In some areas I think he is;

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6693

1    and in some areas he's not.

2         Q.   Sure.  And you have discovered information

3    during the course of your investigation that

4    contradicts a lot of things Billy Cordova has told

5    you, right?  Let's just talk about the murder of

6    Sammy Chavez, and what Billy Cordova told this judge

7    and this jury last week, that he'd never brag about

8    it.  You learned from other individuals that he did,

9    right?

10        A.   According to those people, yes.

11        Q.   Okay.  Billy Cordova was not the only

12   government witness who declined to follow your

13   rules, right?

14        A.   Oh, no, no, he was not.

15        Q.   And you, as the case agent in this case,

16   cannot snap your fingers and assure that these

17   government witnesses will not continue to commit

18   criminal conduct, right?

19        A.   Absolutely not.

20        Q.   And, in fact, that many of them have,

21   right?

22        A.   Yeah.

23        Q.   I understand that you had already closed

24   Jerry Armenta as a government witness for having sex

25   in the contact room before this trial, right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6694

1    A.   Yes.  All the guys that were caught doing

2    that, I closed right away.

3    Q.   Is that the only reason Jerry Armenta was

4    closed?

5    A.   At that time, yes.

6    Q.   At any time?

7    A.   Well, if he wasn't already closed when the

8    tablet thing came out, I would have closed him then.

9    And I closed people for that.

10         If it was drugs, anytime I discover a

11   reason to close them, I close them, because I don't

12   want to give them money if they're not following

13   directions.

14   Q.   Okay.  So upon learning that Jerry

15   Armenta's tablet was used to search child porn,

16   would that be enough for you to close him?

17   A.   If he searched child porn and there was

18   child porn, I would have charged him with it.  But

19   yes, not only would I have closed him, but I would

20   have charged him.

21   Q.   When did you learn about that?

22   A.   I learned that the tablets were

23   compromised when Benjamin Clark's attorneys emailed

24   me and said as much.  And then I asked to meet in

25   person so I could verify that, and have them explain

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6695

1  it to me.  So I wrote a report on it.  I don't

2  recall the exact date.

3      Q.   Okay.  Do you remember that Mark Myers

4  with the Department of Corrections summarized those

5  details and filed something in this court with

6  respect to the compromised tablets?

7      A.   I'm not sure what he might have written.

8      Q.   Okay.  Well, I know you said you don't

9  remember when you actually learned that these

10 government witnesses were accessing the internet and

11 searching for child porn.  Would it refresh your

12 memory if I showed you the document that Mark Myers

13 generated for the court on that subject?

14     A.   It might.  I don't know that I've seen it

15 before.  I can try it, sure.

16          MS. FOX-YOUNG:  Your Honor, may I approach

17 the witness?

18          THE COURT:  You may.

19 BY MS. FOX-YOUNG:

20     Q.   Agent Acee, have you ever seen this

21 document?

22     A.   No.

23     Q.   All right.  It's pretty short.  Why don't

24 you take a minute to look at it and see if it

25 refreshes your memory as to when this all happened?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    It does.  Thank you.

 2        Q.    Okay.  Having looked at it, can you tell

 3   me when you learned that government witnesses were

 4   misusing their tablets and accessing the internet?

 5        A.    On April 17, 2017.

 6        Q.    Okay.  So that's almost a year ago, right?

 7        A.    Yes.

 8        Q.    And you said you learned this because one

 9   of the government witnesses' lawyers contacted you

10   and told you, on April 17, 2017, that his client had

11   actually been able to compromise the tablet?

12        A.    I don't know that the attorney said it

13   like that.  The gist of it is, the attorney

14   contacted me and asked that I go to the detention

15   center with the attorneys -- there were two of

16   them -- and meet with their client to talk about

17   something.

18        Q.    So you did that, right?

19        A.    I did.

20        Q.    On the same day?

21        A.    That they asked me?  No, it took a couple

22   weeks to schedule it on their part.  They had court

23   and stuff.

24        Q.    And in order to prove that the tablets had

25   been compromised by these government witnesses, this
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6697

1   witness actually sent you an email from his tablet,

2   right?

3         A.   Yeah.  I didn't believe him, so I asked

4   him to send me an email.

5         Q.   Okay.  So on that same day, on April 17,

6   2017, you got an email that was sent from one of

7   these tablets, right?

8         A.   Yes.  I got two emails.

9         Q.   So the next day you got another email with

10  a picture of one of the government witnesses inside

11  his cell, right?

12        A.   I think it was the same day.  It was just

13  like at three or four in the morning, yes.

14        Q.   Was that Jerry Montoya?

15        A.   No, I think it was Armenta.

16        Q.   It was Jerry Armenta?

17        A.   Yes.

18        Q.   So Jerry Armenta told you, "Hey, look, I

19  took a picture of myself with my tablet, and I can

20  send it to you," right?

21        A.   No.  Benjamin Clark sent me an email.  I

22  didn't ask Armenta for anything.  I just woke up and

23  had an email from the guy with a selfie.  So, yeah,

24  I deduced that he would do it, too.

25        Q.   Okay.  And so having learned that last

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  April, what, if anything, did you do?

 2      A.   I notified the U.S. Attorney's Office.

 3  The Sandoval County Detention Center wanted to give

 4  me the tablets.  But I didn't think I could take

 5  them because they belonged to defendants, and there

 6  was attorney-client protection.  So I didn't take

 7  them.  I consulted with the U.S. Attorney's Office

 8  about it.

 9           I started preparing search warrants for

10  the tablets.  But then the decision was made that we

11  should bring it up to Judge Browning and have the

12  Court make a determination.  And there were some

13  pretrial hearings about that.

14      Q.   That's right.  And in the course of those

15  pretrial hearings, defense counsel actually asked

16  that these tablets be looked at, right, to see what

17  it meant that they'd been compromised; isn't that

18  right?

19      A.   Yes, but not by the FBI.  By the

20  Department of Corrections.

21      Q.   Well, the FBI, in fact, never looked at

22  these tablets, right?

23      A.   The FBI wasn't allowed to look at these

24  tablets.  It requires a court order.

25      Q.   Well -- and there was a court order that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    the tablets ultimately be sent to an expert, to look

2    at them, because the FBI hadn't looked at them;

3    isn't that right?

4         A.   That is not right, no.  The Court ordered

5    that they could be looked at.  I visited with

6    defense attorneys, and I said the FBI can do it or

7    their expert can do it.  They requested that their

8    expert do it, and I turned them over to the expert.

9         Q.   Well, do you recall the representation by

10   the prosecutors in this case that the FBI didn't

11   have enough time, and it wasn't a priority to look

12   at these tablets?  Do you remember that?

13        A.   What I represented to the prosecutors

14   was --

15        Q.   I'm just asking -- you've sat through

16   court as the case agent in this case, right -- and

17   I'll let you finish, Agent Acee -- but I want to

18   know first, do you remember the prosecutors in this

19   case representing to this Court that the FBI didn't

20   have time to look at these tablets, and there were

21   just too many other resource needs, and they weren't

22   going to look at them?

23        A.   No.

24        Q.   You don't remember that?

25        A.   Not the way you're saying it, no.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6700

```
 1        Q.    It's your testimony that the FBI couldn't
 2   look at them?
 3        A.    Not without legal process, no.  The RCFL
 4   won't accept them without a warrant or a court
 5   order.
 6        Q.    Okay.  And so the FBI never did look at
 7   them?
 8        A.    No.  The decision was made to send them to
 9   the defense expert, who could get them done much
10   quicker.
11        Q.    Okay.  Much faster than the Federal Bureau
12   of Investigation.
13              So having learned on April 17, 2017, that
14   government witnesses in this case were accessing the
15   internet at the Walmart in Sandoval County and
16   getting on Facebook, right --
17        A.    That's what he said, yes.
18        Q.    -- and trying to communicate with people
19   outside of the prison?
20        A.    I learned that today.
21        Q.    Well, they communicated with you, right?
22        A.    Yes.
23        Q.    And you learned through the course of this
24   trial about all the searches for porn and child
25   porn, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6701

1        A.   I don't believe there has been any
2   searches for child porn.   There has been searches of
3   porn.
4        Q.   Teen porn.  Excuse me.
5        A.   There is a significant difference between
6   the two.
7        Q.   Okay.  You don't classify teen porn as
8   child porn?
9        A.   I don't make the classifications.  But
10  child porn is illegal to possess, to distribute.
11  Pornography is not.  There is a significant
12  difference between the two.
13       Q.   I'll recharacterize that.  You learned
14  about the teen porn during the course of this trial?
15       A.   Yes.
16       Q.   And you also recall that as a result of
17  Mr. Myers' filing, all of the defendants in this
18  room had their tablets checked, and it was learned
19  that they were not compromised.  Do you remember
20  that?
21       A.   The four gentlemen in here's tablets were
22  not compromised.
23       Q.   That's right.
24            All right.  So getting back to Billy
25  Cordova, you recall his testimony under oath, on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6702

```
1   December 15, 2017 -- and we've already talked about
2   this -- that the SNM was going to move on Rudy Perez
3   in February 2016, right?  You told me that you
4   remember that testimony?
5        A.   I remember that there was a rumor, yeah.
6   I don't know that it was that they were going to
7   move on him, but there were concerns about it.
8        Q.   You remember his testimony that he thought
9   the SNM was going to move on him, right?
10       A.   Rudy's testimony, or --
11       Q.   Billy Cordova's testimony.
12       A.   I don't remember.
13       Q.   You don't remember that?
14            MR. CASTELLANO:  At this point, I'm going
15   to object about referring to other testimony in the
16   case.  If she has specific questions, I recommend
17   she do that.  But not referring to other people's
18   testimony throughout this testimony.
19            THE COURT:  Well, she can ask him if he
20   remembers.  If he says "No," then he'll have to say
21   "No."  If he does remember, then she can build some
22   question off of it.  So I'm not going to make a
23   blanket ruling that she can't refer to other
24   testimony, because at times that's been helpful; and
25   other times we're not getting anywhere.  But I can't
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6703

1    make a blanket decision on that.

2    BY MS. FOX-YOUNG:

3        Q.    And Agent Acee, you'll remember quite

4    clearly that two days after that testimony, Billy

5    Cordova had a phone interview with you which was

6    memorialized in another 302, right?

7        A.    I remember doing a phone interview with

8    Mr. Cordova in his attorney's office.

9        Q.    And he testified about that last week,

10   too, right?

11       A.    Yes.

12       Q.    So this is two days after his testimony

13   that the SNM was going to move on Rudy Perez, and he

14   talks to you on December 15, 2017, over the phone,

15   right?

16       A.    I talked to him over the phone on that

17   date.

18       Q.    And he never said, during the course of

19   that phone interview, that his testimony was

20   inaccurate with respect to the SNM moving on Rudy

21   Perez, right?

22       A.    I don't recall him telling me anything

23   about inaccurate testimony.

24       Q.    Right.  He did, however, tell you

25   something about the SNM suspecting that Rudy Perez

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   had talked to the STIU, right?

2       A.   I'd need to look at my report.

3       Q.   He actually added to his testimony and

4   gave some more information on that.

5            MS. FOX-YOUNG:  Your Honor, may I

6   approach?

7            THE COURT:  You may.

8   BY MS. FOX-YOUNG:

9       Q.   Agent Acee, I'm showing you your report

10  from that day, December 15, 2017.  Do you see the

11  area I've marked?

12      A.   The highlighted portion, or the blue?

13      Q.   The highlighted portion.  Does this

14  refresh your memory about that interview?

15      A.   Yes.

16      Q.   And that was the interview where Billy

17  Cordova didn't tell you, "No, I was wrong.  I didn't

18  really mean it when I said the SNM was going to move

19  on Rudy Perez"?  He didn't say that.  He said

20  something about the SNM suspecting that Rudy Perez

21  had talked to the STIU, didn't he?

22      A.   He explained why he thought that, yes.

23      Q.   Then last Friday, when Billy Cordova was

24  on the stand, he tried to say something a little bit

25  different, didn't he?  Do you remember that?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1        A.    I do not.

 2        Q.    Were you in here for Billy Cordova's

 3   testimony?

 4        A.    I was seated right there, yes.

 5        Q.    You don't remember him trying to back off

 6   those statements?

 7        A.    I don't.

 8        Q.    Okay.  At any point in the course of your

 9   investigation, have you investigated why Rudy Perez

10   was transferred to PNM in Santa Fe?

11        A.    I haven't investigated that.  I'm aware of

12   why he was transferred.

13        Q.    Have you looked into the reasons?

14        A.    No.

15        Q.    Okay.  That hasn't been a part of your

16   investigation?

17        A.    If I understand you correctly, you're

18   asking me if I investigated why Rudy was moved from

19   one corrections facility to another?

20        Q.    Have you looked into that?

21        A.    No.

22        Q.    No.  Have you looked into why Rudy Perez

23   was not transferred back to the Southern New Mexico

24   Correctional Facility in the fall of 2015 or the

25   spring of 2016?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No.

 2        Q.   Okay.  Do you know if anybody else has

 3   looked into that?

 4        A.   Not from the standpoint of the FBI

 5   investigating a crime, no.

 6        Q.   Well, let me put this way:  Rudy Perez'

 7   location has been something of a focus for you in

 8   this case, right?  I mean, you cared about where

 9   Rudy Perez was at PNM, because you made a request

10   that Billy Cordova be placed next to him.

11        A.   I've never cared where Rudy Perez is.  I

12   just wanted an informant next to him with a

13   recorder.  Doesn't matter to me.

14        Q.   It's your testimony that you never looked

15   into why Rudy Perez was not transferred to the

16   Southern New Mexico Correctional Facility?

17             MR. CASTELLANO:  Objection; asked and

18   answered.

19             THE COURT:  Overruled.

20        A.   No, I don't care where Rudy Perez is

21   housed.  It doesn't matter to me.  The objective is

22   to get the recordings.

23   BY MS. FOX-YOUNG:

24        Q.   So you don't know why he wasn't moved to

25   the Southern New Mexico Correctional Facility?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   That's a different question.  I know why
2  he was moved to PNM.
3    Q.   I'm asking if you know why he wasn't moved
4  to the Southern New Mexico Correctional Facility in
5  the fall of 2015?
6    A.   No, I have no idea.
7    Q.   Since Rudy Perez was charged in this case,
8  have the prosecutors asked you to look into why Rudy
9  Perez was not moved to the Southern New Mexico
10 Correctional Facility in the fall of 2015?
11    A.   No.  Not in the way you're phrasing it,
12 no.
13    Q.   In any way?
14    A.   Yes.  There has been some conversation as
15 to why he was moved to the Level 6.  But I've never
16 been asked, nor have I heard anyone discuss why he
17 wasn't moved to Southern.  I don't understand that.
18    Q.   I just want to be clear, because I know
19 there has been a lot of movement.  After he went to
20 Level 6, since that time, have you ever looked into
21 why he was not moved back to the facility in Las
22 Cruces?
23    A.   No.
24    Q.   Nobody has asked you to do that?
25    A.   No.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 820-6349                                                 FAX (505) 843-9492
                                                                      1-800-669-9492
                                                              e-mail: info@litsupport.com



6708

1    Q.   And you don't know if any other FBI

2    personnel have done that?

3    A.   No.  Normally, when there is a request

4    from the prosecutors, it comes to me, and I either

5    do it or I assign it to someone else.  And I don't

6    recall assigning anything like that to anyone, nor

7    do I recall doing it.

8    Q.   Okay.  I asked because you're the case

9    agent, and you know what all the FBI personnel are

10   doing in the Main, with regard to this case, right?

11   A.   I try to.  Not always.

12        MS. FOX-YOUNG:  Your Honor, may I approach

13   the witness?

14        THE COURT:  You may.

15        MS. FOX-YOUNG:  Your Honor, I'm marking

16   what I'm going to call Defendants' Exhibit FW.  And

17   I'm going to show it to the witness.

18        MR. CASTELLANO:  May I see the exhibit,

19   please?

20   BY MS. FOX-YOUNG:

21   Q.   Agent Acee, I'm showing you Defendants'

22   Exhibit FW.  I'll represent to you that this is

23   information that was contained in a filing made by

24   the prosecutors in this case.  Have you seen this

25   language before?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   I've seen the first half of it.  I'm aware

2    of the first half of it.  I haven't seen the

3    language.  I don't know that I saw the filing, but

4    I'm aware of this information about disciplinary.

5    Q.   And you're aware that this information was

6    contained in a filing that the prosecutors made in

7    this case?

8    A.   No.

9    MS. FOX-YOUNG:  Your Honor, I'd like to

10   move Defendants' Exhibit FW.  This is an admission

11   by the United States.

12   THE COURT:  Any objection, Mr. Castellano?

13   MR. CASTELLANO:  Yes, Your Honor.  May we

14   approach?

15   THE COURT:  All right.

16   (The following proceedings were held at

17   the bench.)

18   MS. FOX-YOUNG:  Your Honor, this is a

19   direct quote, but for the fact that "Defendant" has

20   been replaced with the words "Rudy Perez."  This is

21   from the Government's response to our motion to

22   suppress, in which the Government argued that Rudy

23   Perez was not transferred to the Southern New Mexico

24   Correctional Facility for reasons of his own safety.

25   I would cite to the Court the Ganadonegro

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6710

1  opinion, in which this Court held that a statement

2  made by the prosecution -- and I can pull the case

3  if the Court would like to see it -- a statement

4  made by the prosecution in closing argument was an

5  admission that could be used in the next trial.  And

6  a number of circuits have held that while statements

7  by case agents are not necessarily statements by a

8  party opponent, statements by Government lawyers

9  certainly are.

10          This is a direct quote from their pleading

11  filed in December of last year, I believe, or

12  November.

13          THE COURT:  If you want to do that, I

14  think you've got to get the document.  And we can

15  redact it and mark it up, and then I can admit it.

16  But I don't think you enter admission by the

17  Government and change the quote, is the right way to

18  do it.

19          MS. FOX-YOUNG:  Can we use Exhibit FW as a

20  placeholder?  I have the document, and I can redact

21  it at the --

22          THE COURT:  I want to see it before you

23  do.

24          MR. CASTELLANO:  There is a rule of

25  completeness.  And that may then cause us to file

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6711

```
 1   their motion as part of pleadings in this court as
 2   an admission by party opponent to --
 3           THE COURT:  I'll take a look at what
 4   you've got.  I probably will let you admit something
 5   if it's an accurate statement.  You can put in a
 6   document that says that.  But I'm not going to let
 7   you create a document and say, "Well, this is what
 8   they admitted," because that's not quite what
 9   they've said.
10           MS. FOX-YOUNG:  We can prepare a redacted
11   document for the Court to look at.
12           MR. VILLA:  Just for clarification, I
13   don't know how long the response was.
14           MS. FOX-YOUNG:  Seven pages.
15           MR. VILLA:  You want us to redact
16   everything?
17           THE COURT:  I think you probably need to
18   show it to the Government, and let's see how much
19   the Government wants in and how much -- if they
20   don't want anything in, probably I need a page.  If
21   they're going to want more, I'm going to have to
22   list it out and see what you can work out.
23           MR. CASTELLANO:  Another issue, Your
24   Honor, is one of the bad acts noticed up was a bad
25   act by Rudy Perez, I think in 2000 -- I forget the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6712

```
 1   year, I'll bring it to the bench -- which would be a
 2   further reason why he was also disciplined and
 3   remained possibly in segregation.  So I think it's
 4   also going to bring in a bad act with it.  I can
 5   bring the bad act to the bench if we need to discuss
 6   it later.
 7            THE COURT:  All right.
 8            (The following proceedings were held in
 9   open court.)
10            THE COURT:  All right.  Ms. Fox-Young.
11            MS. FOX-YOUNG:  Thank you, Your Honor.
12   BY MS. FOX-YOUNG:
13       Q.   All right.  Agent Acee, we've talked about
14   several of the government witnesses in this case,
15   and specifically Mario Rodriguez.  Mario Rodriguez
16   told you, in the context of your meeting with Ron
17   Sanchez and other personnel, that becoming a
18   government witness and going into the fed was the
19   best option for him.  You talked about that earlier,
20   right?
21       A.   For him or for Ronald.  I'm not sure which
22   he was referring to.
23       Q.   Well, Mario Rodriguez described it as the
24   best option, right?
25       A.   In his opinion, yes.
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   And you also heard Billy Cordova testify

2   that it was the best option for him, did you not?

3      A.   He did say things like that, yes.

4      Q.   And you've also testified just a few

5   minutes ago that, although these witnesses can say

6   that they've dropped out of the gang, and they've

7   abandoned criminal conduct, there is nothing that

8   you or the FBI can do to stop them from continuing

9   to commit criminal conduct, right?

10     A.   No.

11     Q.   And, in fact, a number of these government

12  witnesses have continued for months and months and

13  months while the Government has been paying them to

14  commit criminal conduct, right?

15     A.   No.

16     Q.   Shall we reflect on Tim Martinez'

17  continuing drug dealing?  Do you remember that

18  testimony?

19     A.   Yes.

20     Q.   That was after he became a government

21  witness, right?

22     A.   I think he's been a drug dealer most of

23  his adult life.

24     Q.   That wasn't my question.  Was he dealing

25  drugs after he became a government witness, by his

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6714

1   own admission?

2       A.   Yes.

3       Q.   And that was in Sandoval County?

4       A.   Yes.

5       Q.   And Mr. Billy Cordova has continued to use

6   drugs, as we learned when he was on the stand, since

7   he became a government witness, right?

8       A.   He has.

9       Q.   And Jerry Montoya had sexual relations

10  with a correctional officer, right?

11      A.   Yes.

12      Q.   That's also criminal conduct, right?  It

13  was his response that it was criminal conduct.  I'm

14  not asking you to opine on the law.

15      A.   I didn't know that was a question.  I'm

16  sorry.

17      Q.   Was it criminal conduct when Jerry Montoya

18  had sexual relations with a correctional officer?

19      A.   I can't think of what law that might have

20  been a violation of, but he shouldn't have been

21  doing it.

22      Q.   You know that it is a violation for a

23  correctional officer to have sex with an inmate,

24  right?

25      A.   I'm not that familiar with PREA, but

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that's the only one I can think of that it might

2    fall under.

3        Q.   And it was criminal conduct when Jerry

4    Montoya used that same correctional officer to bring

5    in contraband, including drugs for him, right?

6        A.   That is a violation of the law.

7        Q.   And, if in fact Mr. Jerry Armenta accessed

8    teen porn, that's a criminal violation, too, right?

9        A.   Depends on the age of the child.  I mean,

10   18 and 19 is not.

11       Q.   Oh, okay.  So if some of the individuals

12   pictured in the porn were 17, it would be a criminal

13   violation, correct?

14           MR. CASTELLANO:  Your Honor, that

15   misstates the law.

16           THE COURT:  Well, if he knows, he can

17   answer.  If he doesn't know, he can just say he

18   doesn't know.

19       A.   I'm not certain of that.

20   BY MS. FOX-YOUNG:

21       Q.   So we just asked a few of the government

22   witnesses.  But you're aware that there has been a

23   pattern of ongoing criminal activity by these

24   witnesses working for the Government since the FBI

25   opened them as informants, right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6716

```
 1        A.   I am now, yes.

 2        Q.   When did you start to become aware?

 3        A.   Which informant do you want to talk about?

 4        Q.   Well, when did you become aware of the

 5   pattern of criminal activity of these government

 6   witnesses?

 7        A.   These guys have never stopped committing

 8   crimes or doing bad things.

 9        Q.   Okay.  All right.  Now, some of the

10   government witnesses only have a short time

11   remaining on their state sentences, right?

12        A.   Yes.  And some have completed their state

13   sentences.

14        Q.   And we heard about that from Jerry

15   Montoya, right?

16        A.   Yes.

17        Q.   And we heard Jerry Montoya talking to

18   family members about the prospect that he might just

19   get time served in this case, right?  Do you

20   remember Jerry Montoya's testimony and the phone

21   calls in which he told his family the Government

22   was -- that the prosecutors were going to come in

23   and ask for time served?

24        A.   No, I don't remember it like that.  He

25   talked about that, but I don't know that that's what
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6717

 1  he said.

 2      Q.   Do you remember that that's what he told

 3  his family on the phone?

 4      A.   Like I said, he said something about that,

 5  but I don't know that he said the prosecutors

 6  represented that.

 7      Q.   He said the Government was going to come

 8  and ask for time served, didn't he?

 9      A.   Again, he talked about that.  I just don't

10  know that that's exactly what he said.

11      Q.   And he's not the only one for whom you

12  heard these calls.  These men, one after another,

13  told their families about the promises that you and

14  the prosecutors have made to them, right?

15      A.   No, that's not true.

16      Q.   You didn't hear other calls like that?

17      A.   I heard other telephone calls where these

18  guys represented something as fact that was not.

19      Q.   Well, that's my question, if you remember

20  hearing those calls where they told their friends

21  and family about these promises?

22      A.   They represented to their family that

23  certain things were going to happen that weren't

24  discussed by us.

25      Q.   I'm just asking if you remember hearing

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6718

1  those calls in this court, in this trial.

2       A.  You're asking me, and you'll ask two

3  questions in one.  So part of that is "Yes," and

4  part of it is "No."  I remember that there were

5  phone calls.  You also said that the Government

6  promised things.  And we didn't.  And I didn't hear

7  them say that the Government promised anything.

8       Q.  You didn't hear Jerry Montoya say that the

9  Government was going to come in and ask for time

10 served, and so were his lawyers?

11      A.  He said something along those lines.

12      Q.  Okay.  And you didn't hear Lupe Urquizo

13 say that the more people he brought to the table,

14 the more time would be taken off his sentence?

15      A.  I don't remember that.

16      Q.  In any event, you would agree with me that

17 the government witnesses who got on board and began

18 cooperating early on sort of had the ability to

19 write their own tickets in this case, right?

20      A.  Absolutely not.

21      Q.  Nobody could write their own ticket?

22      A.  Defendants don't write their own ticket,

23 no.

24      Q.  So defendants in this case didn't have the

25 option to decide whether they want to be charged

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6719

```
 1   federally or not?
 2        A.   I can think of two that did.
 3        Q.   Oh, you can.  Who are those?
 4        A.   Frederico Munoz and Lupe Urquizo.
 5        Q.   Okay.  I thought you just said that they
 6   didn't get to write their own ticket?
 7        A.   They don't.  What does that mean, to write
 8   your own ticket?
 9        Q.   All right.  Well, do they get to write
10   their own indictments?
11        A.   No.
12        Q.   Do they get to decide what charges were
13   going to be brought against them?
14        A.   Not exclusively, no.  They -- those two
15   specifically that I mentioned helped me determine
16   what overt acts to charge them with, which ones they
17   would admit to.
18        Q.   Do you remember in the context of that
19   meeting that you had, the one that was recorded with
20   Mario Rodriguez and Ron Sanchez, discussing this
21   very issue?
22        A.   Yes.
23        Q.   And do you remember that you actually
24   said, "I think the easiest charge would be a
25   racketeering conspiracy, where it was -- there was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6720

```
1   some agreement with the Government that it would be

2   capped at whatever time you owed the state."

3          Do you remember saying that?

4     A.   Yes.

5     Q.   And then do you remember saying, "So it's

6   not like you -- I'll tell you who did that.  Playboy

7   did it.  He can tell you all about it."

8          Do you remember that?

9     A.   Yes.  Playboy is Frederico Munoz.

10    Q.   Playboy is Frederico Munoz.  And then do

11  you remember Mario Rodriguez saying, "Right, he

12  wrote his own, his own" --

13         Do you remember that?

14    A.   Yes.

15    Q.   And then your immediate response, "He

16  wrote it.  Yeah, pretty much."

17         Do you remember that?

18    A.   I do.

19    Q.   And then do you remember going on to

20  discuss Lupe Urquizo, and that Mario Rodriguez

21  agreeing that Lupe Urquizo had implicated himself

22  just so he could do his time in the feds?  Do you

23  remember that?

24    A.   Yes.

25    Q.   So when you talked about Playboy,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Frederico Munoz, "writing his own -- yeah, pretty

2  much writing it," what was he writing for himself,

3  if it wasn't the charges?

4       A.   Well, to be clear, Frederico Munoz doesn't

5  write any legal documents.  When I'm sitting talking

6  with SNM Gang members, versus testifying in court,

7  my language is sometimes very different.

8            So what I was telling Ronald is that

9  Frederico wrote his own indictment, meaning he sat

10  down with the FBI and he confessed all of his

11  crimes, to be used as overt acts.

12           So my representation to gang members was

13  that this guy rose his hand.  And Frederico did.  I

14  mean, he wanted to be charged in the feds.  He

15  wanted out of the state.  That is true.  But he

16  didn't write his own indictment.

17       Q.   Okay.  But he got to make the decision

18  about how he was going to be charged in the feds,

19  right?

20       A.   Did you say he got to?

21       Q.   Yes.

22       A.   He wanted to be charged in the feds, and

23  he participated with his attorney in what overt acts

24  we used.

25       Q.   And that's what you meant when you said,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    "He wrote it, yeah, pretty much," right?

2         A.   Yes.

3         Q.   Okay.  And with respect to Lupe Urquizo,

4    you and Mario Rodriguez agreed he pretty much did

5    the same, because he wanted to serve time in the

6    feds, right?

7         A.   Yes.

8         Q.   And the reason that he wanted to serve

9    time in the feds was the same reason Mario Rodriguez

10   wanted to, right?  He wanted to be in Tucson or

11   Florida, he wanted contact visits, and he wanted to

12   do easy time, right?

13        A.   Well, there's a lot of questions there.  I

14   don't know -- their interpretation is it's easy

15   time.  I don't know if they get contact visits.  And

16   the defendants certainly don't pick what prison they

17   go to.

18        Q.   Do you remember during Billy Cordova's

19   testimony, he talked about conversations with you

20   about where he would make the decision whether he

21   was going to be in the state or the fed?  Do you

22   remember that?

23        A.   No.

24        Q.   You don't remember him saying that, yes,

25   he was going to meet with you, and it would be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN &
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6723

```
 1  his -- he had to decide whether he wanted to go to

 2  the state or the fed?

 3       A.   You're saying he testified to that?

 4       Q.   Do you remember his testimony?

 5       A.   I don't remember that discussed.

 6       Q.   Well, he did.  He testified that --

 7            MR. CASTELLANO:  Your Honor, she's

 8  testifying.

 9            THE COURT:  Ms. Fox-Young, hold on.

10            MS. FOX-YOUNG:  Your Honor -- oh, I'm

11  sorry.

12            THE COURT:  You can't do that.  You're not

13  testifying.

14            MS. FOX-YOUNG:  I understand.  I was just

15  going to say, I'll move on, Judge.

16            THE COURT:  All right.

17  BY MS. FOX-YOUNG:

18       Q.   Agent Acee, do you recall questioning

19  about whether Mr. Cordova talked on the phone about

20  meeting with you and telling you whether he was

21  going to be going to the state or the fed?

22       A.   I'm confused by your question.  Could you

23  say the first part again?

24       Q.   Sure.  You recall Billy Cordova testifying

25  last week?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6724

1      A.   Yes.

2      Q.   And you recall him being asked about

3  conversations he had on the phone about his charges?

4      A.   Yes.

5      Q.   And he was also asked, was he not, about

6  conversations that he had about meeting with you

7  about those charges, right?

8      A.   Yes.  Attorneys asked him questions about

9  that.

10      Q.   And he was also asked whether ultimately

11  it was going to be his decision whether he would go

12  to the state or the fed, and he was going to tell

13  you that, right?

14      A.   I believe part of that is true, but I

15  don't remember that line of questioning.

16      Q.   Okay.  With respect to all these

17  government witnesses, a lot of promises and benefits

18  have been afforded; would you agree with me?

19      A.   No.

20      Q.   Well, let's go through them.  Tens of

21  thousands of dollars have been paid to these

22  government witnesses; isn't that right?  Eric Duran

23  alone received over $40,000, right?

24      A.   46, yes.

25      Q.   Do you know the sum total of monies that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   have been paid collectively to all the government

2   witnesses in this case?

3       A.   I could estimate.  I don't know the exact

4   amount.

5       Q.   Is it accurate to say that it's tens of

6   thousands of dollars?

7       A.   It's more accurate to say it's around,

8   probably, 70,000, 75,000.

9       Q.   Do you know if the government witnesses

10  have been issued 1099s in this case?

11      A.   We don't do that.

12      Q.   You don't issue 1099s?

13      A.   The FBI does not.

14      Q.   You don't know if they're going to pay

15  taxes on that money?

16      A.   They're advised that they're responsible

17  to, but the FBI doesn't give informants 1099s.

18      Q.   You've testified some about lump sum

19  benefits, right?

20      A.   I've answered some questions about it.

21  The Department of Corrections lump sum?  Because the

22  FBI has a lump sum, and they mean different things.

23      Q.   Well, Agent Acee, I just want to ask you

24  about lump sum benefits in this case.

25      A.   I just want to answer honestly.  I need to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  know which one we're talking about.

2      Q.   So I don't know whether -- why don't you

3  tell me, would you characterize the lump sum

4  benefits that have already been given in this case

5  as Department of Corrections lump sum benefits?

6      A.   During the course of this investigation, I

7  learned that the Department of Corrections has a

8  lump sum award.  I understand it to be for

9  lifesaving.  And that Eric Duran received two of

10 those.  The Department of Corrections felt that he

11 earned them for saving the lives of Gregg Marcantel

12 and Dwayne Santistevan.

13     Q.   Agent Acee, would you just answer my

14 question?  Are they Department of Corrections lump

15 sum or FBI lump sum benefits?

16     A.   What I just explained was the Department

17 of Corrections lump sum.  The FBI has a lump sum,

18 which means something entirely different.

19     Q.   Okay.  Have you afforded any FBI lump sum

20 benefits in this case, or has the FBI afforded any

21 of those benefits in this case?

22     A.   Yes.  But not to any of the individuals

23 we've talked about.

24     Q.   Who has received an FBI lump sum benefit

25 in this case?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Off the top of my head, I can think of
 2   one, but I'm hesitant to give the name.  I'd need to
 3   consult with the U.S. Attorney's Office before I do
 4   that, because the Department of Justice has some
 5   rules on that.
 6             MR. CASTELLANO:  I would object, Your
 7   Honor.  If it's a dollar amount, that's one thing.
 8   But to protect the person's identity, I would ask
 9   that he not have to answer that.
10             MS. FOX-YOUNG:  Your Honor, I think if the
11   Court wants to consider it at the bench --
12             THE COURT:  Let me hear what's going on.
13   I'm not quite sure.
14             MS. FOX-YOUNG:  We can do a voir dire at
15   the bench.
16             THE COURT:  Well, just come up and explain
17   to me what the issue is first.
18                (The following proceedings were held at
19   the bench.)
20             THE COURT:  What were you expecting the
21   answer to be?
22             MS. FOX-YOUNG:  I just want to go through
23   all the benefits that have been afforded the
24   witness.
25             THE COURT:  No, you asked the question
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6728

```
1   here:  Who has received an FBI lump sum in this
2   case?
3            MS. FOX-YOUNG:  I didn't know there had
4   been any.  And the witness brought it up.  I want to
5   know who received one.  I think if it's one of the
6   witnesses testifying in this case --
7            THE COURT:  Mr. Acee, come here.
8            MR. BECK:  Your Honor --
9            MR. CASTELLANO:  The real-time is playing
10  on the tables.
11           MR. BECK:  -- the real-time is playing on
12  all the tables.  We're worried about if a name is
13  said at this point.  That's the concern.
14           MR. VILLA:  Only for the jury.
15           MS. FOX-YOUNG:  Maybe we shouldn't do it
16  in front of the jury.  I don't want the jury to see.
17  We're worried about the jury seeing the defendants'
18  real-time. I don't think it's appropriate.
19           THE COURT:  Turn off the mute button.
20           (The following proceedings were held in
21  open court.)
22           THE COURT:  All right.  Ladies and
23  gentlemen, let me meet with counsel and the parties
24  here in a minute.  All right.  We'll be in recess
25  for a few minutes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              All rise.

 2              (The jury left the courtroom.)

 3              THE COURT:  All right.  Everyone be

 4    seated.  How does this solve the other problem?  It

 5    doesn't.  We solved one problem.  How do we solve

 6    the other?

 7              MR. VILLA:  We can close the real-time

 8    now.

 9              THE COURT:  Are you able to shut down

10    real-time without a great deal of effort?  Are you

11    able to?

12              MS. JACKS:  We closed ours, but now it's

13    broken.

14              THE COURT:  All right.  Well, put a paper

15    in front of it.

16              MS. JACKS:  We all closed them.  That's

17    what we were told to do.

18              THE COURT:  Are y'all satisfied now?

19              THE COURT REPORTER:  I can't hear you.

20              THE COURT:  Well, I'm going to mute the

21    button up here at the front.

22                  (The following proceedings were held at

23    the bench.)

24              MR. CASTELLANO:  We also have a reporter

25    in here.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              I think what he's going to tell the Court
 2  is that he's not certain he can answer that question
 3  as to this lump sum afforded without breaking FBI
 4  rules.
 5              THE COURT:  Well, advise me whether he's
 6  breaking the FBI rules.
 7              MR. CASTELLANO:  He knows.  We don't know.
 8              THE COURT:  All right.  Here's the
 9  question that's on the table, Mr. Acee:  Who has
10  received an FBI lump sum benefit in this case?  So
11  you must have said something earlier that indicated
12  the question before is "Yes."  But not any
13  individual that we talked about.  So let me ask
14  this -- and maybe we can cut through this.
15              Have you -- has there been anybody that's
16  been a witness in this case, anybody that's been an
17  accomplice in this case, that received a lump sum
18  benefit?
19              THE WITNESS:  I can think of one.  That's
20  the one witness that is on the witness list that
21  wasn't called.
22              THE COURT:  Wasn't called?  The
23  defendants' list or the Government's?
24              THE WITNESS:  The Government's.
25              THE COURT:  And you didn't call them?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6731

```
 1                THE WITNESS:  Didn't call them.
 2                THE COURT:  With that, do you need
 3    anything further?
 4                MS. FOX-YOUNG:  I think, if he implicates
 5    the defendants in this room, I'm comfortable with
 6    the Court hearing it in camera.
 7                THE COURT:  I guess I'm wondering what
 8    benefit is a name?  Has that person been, to your
 9    knowledge, even identified in this courtroom by
10    anybody's testimony?
11                THE WITNESS:  No.
12                THE COURT:  Do you recall the name coming
13    up or anything in front of the jury?
14                THE WITNESS:  No.
15                MS. FOX-YOUNG:  Well, Your Honor, I could
16    proceed with questioning without the name, and then
17    I think --
18                THE COURT:  Because it sounds like --
19                MS. FOX-YOUNG:  We're entitled to know if
20    he's on the Government's witness list.
21                THE COURT:  I think he said he is.
22                MS. FOX-YOUNG:  I think we're entitled to
23    know the answer to the question as to what the
24    federal lump sum --
25                THE COURT:  The answer is "Yes."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6732

```
 1              MS. FOX-YOUNG:  -- and who received it.
 2              THE COURT:  You're asking a bunch of new
 3    questions now.
 4              MS. FOX-YOUNG:  No, the question on the
 5    table --
 6              THE COURT:  Well, the question was who has
 7    received.  So now you're asking for the identity of
 8    this one witness.
 9              MS. FOX-YOUNG:  Who has received an FBI
10    lump sum benefit in this case.  That's the question.
11    Who received one.
12              THE WITNESS:  I can't remember all the
13    names.  I think there have been three.  And I was
14    trying to define what a lump sum is.
15              THE COURT:  Let's do this:  You go back
16    and talk to your FBI people, see if you can disclose
17    these three names, and let's deal with this down the
18    road.
19              MR. BECK:  Sounds like one way to get
20    through it, just have people involved in the
21    investigation, the SNM, receive lump sum.
22              THE COURT:  How do you know?  And then we
23    move on.  I don't think the names are important.
24    And if you say they're connected with this FBI
25    investigation --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6733

```
 1              MS. FOX-YOUNG:  Well, Your Honor --

 2              THE COURT:  Well, that's not their

 3    question.  She wants the answer.  So Mr. Acee can

 4    find out the answer.  And if he can give it, he'll

 5    give it, and we'll move on.  If he can't give it,

 6    then I'll figure out what to do.

 7              All right.  Let's tell the jury we're

 8    going to take our afternoon break at this time, and

 9    we'll be in recess until 4:00.

10              (The following proceedings were held in

11    open court.)

12                   (The Court stood in recess.)

13              THE COURT:  All right.  Let's go on the

14    record.  I'd ask the Government's attorneys to be

15    involved with these discussions that Mr. Acee is

16    going to have.  Don't just leave Mr. Acee out there,

17    trying to figure out a legal issue.  So I need the

18    Government to get involved in that discussion and

19    see if this can be released; and if not, tell me why

20    not, and try to be lawyers in this thing, and argue

21    it, either agree that it can be disclosed or not.

22    But don't just leave Mr. Acee out there, having to

23    deal with legal counsel and trying to interpret it

24    here.  So I'll ask the Government to get involved in

25    those discussions.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        MS. FOX-YOUNG:  Your Honor, I've talked

2   with Mr. Beck, and I think I can move on.  I think

3   there was some confusion as to what the benefit was,

4   and who the three individuals are who we're talking

5   about.  But I think I understand now from Mr. Beck,

6   and I don't intend to elicit any more on this line

7   of questions.

8        THE COURT:  Okay.  So Mr. Acee doesn't

9   need to do anything?

10        MS. FOX-YOUNG:  I think we can just leave

11   it, Your Honor.  I'll move on to the next question.

12        THE COURT:  All right.

13        Let me -- Ms. Duncan, on your transcript

14   that you sent to Ms. Standridge, I don't think a

15   limiting instruction on that testimony is necessary.

16   Because Mr. Cordova's testimony that Baby G and Mr.

17   Baca are close isn't hearsay, and doesn't suggest

18   that the Perez' statements should be used against

19   Baca.  So I'm not going to do anything further on

20   that one.

21        I'll still wait for yours, Ms. Jacks,

22   because yours is the one that I think concerned me a

23   little bit more.

24        MS. JACKS:  I'm sorry.  I didn't have time

25   at lunch because I was meeting with witnesses, but

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 820-6349                                                  FAX (505) 843-9492
                                                                         1-800-669-9492

PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1    I'll get it tonight.
 2            THE COURT:  Just get it to me.  But I'm
 3    not going to add your limiting instruction on that.
 4            Let me see if I can get -- before the jury
 5    comes in -- let me repeat something, so what I'm
 6    then about to say makes sense.  Establishing that
 7    Mr. Baca violated VICAR by conspiring to commit
 8    assault resulting in serious bodily injury, in
 9    violation of New Mexico law, requires, as I said
10    before we took the break, the United States to
11    prove, one -- and Mr. Baca's conduct constitutes
12    generic conspiracy to commit assault resulting in
13    serious bodily injury; and two, that Mr. Baca's
14    conduct also violated New Mexico law.  That
15    structure, identifying conduct that falls within a
16    generic category, and also violates a state or
17    nonracketeering federal law, features prominently in
18    federal racketeering statutes.
19            So when I have a chance, I'll give you the
20    cases.  But that's the setup for what I'm about to
21    give you.  So next time you hear from me, I'm just
22    going to give you cases instead of talking.  All
23    right.
24            All rise.
25            (The jury entered the courtroom.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6736

 1          THE COURT:  All right.  Everyone be

 2   seated.

 3          All right.  Mr. Acee, I'll remind you that

 4   you're still under oath.  Ms. Fox-Young, if you wish

 5   to continue your direct examination of Mr. Acee, you

 6   may do so at this time.

 7          MS. FOX-YOUNG:  Thank you, Your Honor.

 8   BY MS. FOX-YOUNG:

 9      Q.   Agent Acee, before the break we talked a

10   little bit about benefits that some of the

11   government witnesses in this case have received;

12   isn't that right?

13      A.   Yes.

14      Q.   And you agree with me that a number of

15   witnesses received a huge benefit, in that they were

16   never prosecuted for murders in which they were

17   implicated, right?

18      A.   I can think of one person, yes.

19      Q.   You can think of Billy Cordova right off,

20   right?

21      A.   No.

22      Q.   You don't recall that Billy Cordova was

23   not prosecuted in the RICO case for multiple

24   murders, assaults, and other criminal conduct that

25   you had been compiling?

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 820-6349                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      A.   The evidence didn't suggest he did it, so
2  I can't charge him.
3      Q.   I thought it was clear from your testimony
4  earlier in this case and earlier today that you
5  think Billy Cordova absolutely was implicated in the
6  murder of Sammy Chavez, right?
7      A.   I agreed with you that informants told me
8  that Billy told them.  That doesn't constitute
9  evidence, probable cause for me to charge him on
10 that alone.
11     Q.   Based on Billy Cordova's statements to you
12 and his testimony to this jury, and if this is all
13 he did, that he gave instructions as to how to
14 commit the murder, you think he's implicated on that
15 basis, don't you?
16     A.   I think I can use those as overt acts,
17 yes.
18     Q.   And you were compiling those overt acts?
19     A.   Yes.  That particular overt act I didn't
20 know about until I interviewed him, though.
21     Q.   Okay.  But you elected not to charge him?
22 You elected not to pursue him as a defendant in that
23 RICO case?
24     A.   No, I didn't.  In fact, I pushed to charge
25 him.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6738

1      Q.   Wasn't it your prior testimony that you

2  instructed Agent Neale to stop compiling overt acts

3  on Billy Cordova?

4      A.   I did.  And then we resumed.  I said that

5  in front of Billy Cordova, but we resumed.

6      Q.   But ultimately, Billy Cordova was not

7  charged, right?

8      A.   He was not.

9      Q.   And isn't that something of a significant

10  benefit?

11      A.   It could be.

12      Q.   Okay.  In addition, the jury has heard,

13  and you have heard, and you have witnessed numerous

14  other benefits that these witnesses received:  The

15  ability to have sex and other contact visits with

16  their families, right?

17      A.   They -- a few of them were able to do

18  that, four of them.

19      Q.   And parties where they could all get

20  together around the holidays, right?

21      A.   The pizza party, yes.

22      Q.   And in Mario Rodriguez' words, the

23  opportunity to serve easy time in the fed, right?

24      A.   Mario has never been in the feds.

25      Q.   But those are his words?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    Those were his words.

 2        Q.    And Frederico Munoz and Lupe Urquizo got

 3   to make that choice, right?

 4        A.    They made the choice to get charged in the

 5   feds, yes.

 6        Q.    And Billy Cordova had the same choice,

 7   right, but ultimately was not charged at all?

 8        A.    Yes.

 9        Q.    All right.  Agent Acee, you're aware that

10   a number of these government witnesses were housed

11   together during the course of the investigation of

12   this case, right?

13        A.    Yes.

14        Q.    And you, in fact, yourself sometimes

15   facilitated having them confer with one another,

16   right?  I'll give you an example.  You remember

17   testifying that in August 2017, Lupe Urquizo and

18   David Calbert had the opportunity to confer together

19   about their testimony for the Government?

20        A.    Yes, at the FBI office.

21        Q.    And then after that time, David Calbert

22   magically started telling the same story that --

23        A.    My last answer is not correct.  Because

24   you said to get their stories straight, or to

25   confer.  They conferred, but it wasn't about their
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6740

 1  stories.

 2       Q.   Okay.  You agree that they conferred?

 3       A.   I agree that they met in front of me at

 4  the FBI office, and they met for 10 minutes with

 5  their attorneys.

 6       Q.   And you don't know what was said when they

 7  met for 10 minutes behind closed doors, right?

 8       A.   No.

 9       Q.   And then magically, after that time, David

10  Calbert started telling the same story that Lupe

11  Urquizo was telling, right?

12       A.   Their stories are for the most part

13  similar.

14       Q.   And after that time, Lupe Urquizo was

15  tasked with bringing Mario Rodriguez on board, was

16  he not?

17       A.   No.  No, I don't agree with that.

18       Q.   Do you remember Lupe Urquizo's testimony

19  and the call that he made -- we talked about getting

20  five years off if he could get that guy, Blue, to

21  come on board?

22       A.   Yeah, but to say he was tasked, he wasn't

23  by me, because Blue was represented.

24       Q.   Okay.

25       A.   I'm not able to task an informant and send

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   an informant after someone who has an attorney.

 2        Q.   So these government witnesses, where they

 3   were housed together, they had months and months to

 4   study the electronic materials, the discovery in

 5   this case, right?

 6        A.   Not all the witnesses, cooperating

 7   defendants, had tablets.

 8        Q.   Those who were charged had tablets, right?

 9        A.   For a period of time.  And then they were

10   taken.

11        Q.   And that gave them time to figure out just

12   exactly what they needed to say that would qualify

13   as substantial assistance to the Government, right?

14        A.   No.

15        Q.   Because they all wanted the Government to

16   reach that same magic conclusion for them that they

17   had provided substantial assistance?

18        A.   I don't know what they want.  But they

19   gave their statements to me, many of them before

20   they had tablets.

21        Q.   Okay.  Well, you gave some witnesses a

22   roadmap as to where to look to find the information

23   for their testimony, didn't you?

24        A.   No.

25        Q.   Did you ever tell them that all the truth
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6742

 1  is in the tablet?

 2      A.   That's the truth about the SNM, guys dry

 3  snitching and turning their backs on each other.

 4  I've made that kind of a statement before.

 5      Q.   Did you make the statement to witnesses in

 6  this case that "All the truth is in the tablet"?

 7      A.   I think I just answered that.  What I'm

 8  telling them -- for example, Angel Munoz ratted.  A

 9  lot of these guys didn't know that.  I said, "Look

10  at the tablets.  I've turned everything over."

11          Let me be clear, though.  I've never

12  looked through the tablet.  I just know --

13      Q.   My question is just if you made that

14  statement to the witnesses in this case?

15      A.   And I'm saying I may have.

16      Q.   Well, would you like me to show you a

17  transcript to refresh your memory?

18      A.   Sure.

19      Q.   Agent Acee, do you see here on this

20  transcript where your response to Mario Rodriguez,

21  with Ron Sanchez in the room, was "All the truth is

22  in the tablet"?

23      A.   Yes.

24      Q.   The truth is that a whole lot of what the

25  witnesses in this case have said isn't true at all,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6743

```
 1   is it?
 2        A.   No, I don't agree.
 3        Q.   That's not the truth?
 4        A.   No.
 5        Q.   In fact, in your own words, half the
 6   people who talk to you are bullshitting.  Haven't
 7   you said that?
 8        A.   I don't know that that's fair.
 9        Q.   Well, are those your words?
10        A.   Yes.
11        Q.   So in speaking about the witnesses in this
12   case, you did say, "We know half the people that
13   talk to us are bullshitting," right?
14        A.   I'm saying, in my line of work, half the
15   people --
16        Q.   I'm just asking if you made that
17   statement.
18        A.   I did.  And I'm explaining what I meant by
19   it.  I don't have to explain, though.
20        Q.   And you went on to say, "But we have to
21   write it down anyway," didn't you?
22        A.   When I'm taking someone's statement, I
23   write down what they say.
24        Q.   Are those your words:  "Half the people
25   that talk to us are bullshitting, but we've got to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  write it down anyway"?

2       A.    They may be.

3       Q.    Would you like me to show you the

4  transcript?

5       A.    Please.

6       Q.    Agent Acee, do you see here where those

7  statements are?

8       A.    Yes.

9             MS. FOX-YOUNG:  No further questions, Your

10  Honor.

11            THE COURT:  Thank you, Ms. Fox-Young.

12            Other defendants -- or is this where we're

13  going to take a break and call some other witnesses?

14            MS. JACKS:  This is where we requested to

15  call other witnesses.

16            THE COURT:  The defendants have some

17  witnesses they need to get on and off, so we're

18  going to ask Mr. Acee to step down.

19            Thank you for your testimony, Mr. Acee.

20            And we'll resume the direct examination of

21  Mr. Acee, probably not today, but later this week.

22            So, Ms. Jacks, you have a witness that you

23  need to call out of order here?

24            MS. JACKS:  I have two, so I'm happy to

25  get started.  We would call James Brewster.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  I'll get him.  He's sitting right outside.
 2           THE COURT:  Mr. Brewster, if you'll come
 3  up and stand next to the witness box on my right,
 4  your left, before you're seated, my courtroom
 5  deputy, Ms. Standridge, will swear you in.
 6                     JAMES BREWSTER,
 7       after having been first duly sworn under oath,
 8       was questioned, and testified as follows:
 9           THE CLERK:  Please be seated.  State and
10  spell your name for the record.
11           THE WITNESS:  My name is James Brewster,
12  J-A-M-E-S; Brewster, B-R-E-W-S-T-E-R.
13           THE COURT:  Mr. Brewster.
14           Ms. Jacks?
15           MS. JACKS:  Thank you.
16                   DIRECT EXAMINATION
17  BY MS. JACKS:
18       Q.   Good afternoon, Mr. Brewster.
19       A.   Good afternoon.
20       Q.   Thank you for being here.  Can you tell
21  the jury how you're employed?
22       A.   I work for the New Mexico Corrections
23  Department.
24       Q.   And what is your position there?
25       A.   I'm the General Counsel for the agency,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1 and I also act as the Records Custodian for purposes

2 of the Public Records Act.

3        Q.    Okay.  Can you tell us what the Public

4 Records Act is, and is it called IPRA for short?

5        A.    It's called the Inspection of Public

6 Records Act, which is known as IPRA, and it's a

7 state law that requires agencies to provide public

8 documents within certain timeframes.

9        Q.    And they're provided -- what happens is

10 the party makes a formal request to your office --

11        A.    That's correct.

12        Q.    -- in writing, specifying the types of

13 records that they're looking for?

14        A.    That's correct.

15        Q.    And then do you have people that work with

16 you that you cause to search the records of the

17 Department of Corrections?

18        A.    Yes.

19        Q.    And they -- what do they do?

20        A.    They check with people that would know

21 where the records are.  They call various

22 institutions.  We talk to various people at all the

23 different institutions to gather responsive public

24 records.

25        Q.    And then once you gather the records that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6747

1    are responsive, do you provide them to the party or

2    person who is requesting then?

3         A.   I do, after I review them.

4         Q.   To make sure that they're accurate and

5    responsive to the request?

6         A.   And public.  And not somehow private or

7    confidential.

8         Q.   Now, with respect to the New Mexico

9    Department of Corrections, are you familiar with the

10   various policies about what sorts of records are

11   supposed to be kept on a daily basis?

12        A.   I'm generally familiar, yes.

13        Q.   And I guess I want to talk to you about

14   two types of records.  The first is records

15   regarding the transportation of inmates between New

16   Mexico penal institutions.

17             Are there requirements that the

18   individuals that drive those transportation vehicles

19   keep certain records during the course of that

20   transport?

21        A.   Yes.

22        Q.   And can you tell us the type of records

23   that they're required to keep?

24        A.   Generally speaking, they're required to

25   keep a record of when an inmate goes from one

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6748

```
 1  facility to another facility.  Both the sending and
 2  receiving facility should keep some sort of an
 3  inventory or other related record that shows,
 4  generally, what kind of property they had.
 5       Q.   So that's a particular record called a
 6  Property Inventory form?
 7       A.   I believe it is, yes.
 8       Q.   And there is a requirement that prior to
 9  an inmate being -- let me go back:  There is a
10  requirement that when an inmate is about to be
11  transferred, that his property is inventoried at the
12  institution where he starts out?
13       A.   That's correct.
14       Q.   And there is a particular form for that;
15  Is that right?
16       A.   I believe there is, yes.
17       Q.   And then is that form supposed to be kept
18  at the sending institution?
19            MR. BECK:  Objection, Your Honor, leading.
20            THE COURT:  Overruled.
21  BY MS. JACKS:
22       Q.   Where is that form supposed to be kept?
23       A.   I believe it's supposed to be kept at the
24  receiving institution.
25       Q.   Is there a requirement for a form to be
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  completed and kept at the sending institution, as

2  well?

3      A.   I believe there is, yes.

4      Q.   Okay.  Do you want to -- we've discussed

5  the New Mexico Department of Corrections inmate

6  property and laundry policy CD-150200; have we not?

7      A.   Yes.

8      Q.   And do you think if you reviewed that,

9  that would allow you to be more certain about what

10 the requirements were?

11     A.   Yes.

12          MS. JACKS:  Your Honor, I have a copy of

13 that policy that's actually dated September 4 of

14 2013.  May that be marked as Defense W7?

15          THE COURT:  All right.

16          MS. JACKS:  May I approach?

17          THE COURT:  You may.

18 BY MS. JACKS:

19     Q.   I'll just ask you, is there a section in

20 that policy that deals with the property inventory

21 forms that are required to be kept -- completed and

22 kept at the sending and receiving institution?

23     A.   There is.  I'm not sure exactly where it

24 is because it's a lengthy policy, but it's in here.

25 I've seen it.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. JACKS:  Okay, may I approach again,
 2  Your Honor?
 3            THE COURT:  You may.
 4  BY MS. JACKS:
 5       Q.   I should have tabbed it.  Specifically,
 6  Mr. Brewster, I'm going to direct you and counsel to
 7  Section L -- it starts on page 8 -- regarding
 8  property inventory for inmate transfers.  And I'm
 9  just going to give you a chance to review that.
10       A.   Thank you.
11       Q.   Have you had a chance?
12       A.   Yes.
13       Q.   So I'm just going to ask you a few
14  questions about that particular section.  So does
15  that section require the inspection and inventory of
16  inmate property whenever an inmate enters,
17  transfers, or is released from a New Mexico
18  Correctional Institution?
19       A.   That's correct.
20       Q.   And with respect to a transfer between
21  institutions, is a property inventory form supposed
22  to be completed prior to the inmate's transfer?
23       A.   It's called a Property Inventory List, but
24  yes.
25       Q.   Okay, thank you.  And is that property
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   inventory list supposed to be held at the sending

2   institution?

3        A.   It is.

4        Q.   And then after the inmate is transferred

5   to a new institution, is there also a requirement

6   that a new property -- property inventory list be

7   completed at the receiving institution?

8        A.   That's correct, yes.

9        Q.   And where is that supposed to be held?

10       A.   They should keep it at the receiving

11  institution.

12       Q.   And is there -- I think in the back of

13  that policy a -- just a sample form of this property

14  inventory list.

15       A.   I'm not seeing it.  I'm pretty sure it's

16  in here, but give me a moment.  I'm just not seeing

17  it.

18       Q.   That's okay.  It's hidden.  So Mr.

19  Brewster, showing you that page, I think it's

20  stamped on the bottom, 53415.  Is this a property --

21  a sample property inventory list?

22       A.   Yes.

23       Q.   And is that the type of list that's

24  supposed to be completed both before and after the

25  transfer of a Department of Corrections inmate?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   Yes.
 2        Q.   And is it supposed to be completed at the
 3   time that the inmate is transferred?
 4        A.   As soon as it can be, yes.
 5        Q.   And is that completed during the regular
 6   course of activity within the New Mexico
 7   Correctional Department?
 8        A.   I'm not sure I understand your question.
 9        Q.   Well, is that something that happens every
10   day when inmates are transferred, pursuant to the
11   policies of the Department of Corrections?
12        A.   Yes.
13        Q.   And is it a regular practice of the
14   Department?
15        A.   It is a regular practice.
16             MS. JACKS:  I'd ask that that property
17   inventory list -- just the sample -- be marked as
18   W7 -- I'm sorry, W8.
19             Excuse me, Your Honor, can we mark that
20   property list as W8, the sample list?
21             THE COURT:  You may.
22             MS. JACKS:  Thank you.  And I'd ask that
23   it be admitted at this time.
24             THE COURT:  W8.  Any objection, Mr. Beck?
25             MR. BECK:  No objection.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6753

```
1              THE COURT:  All right.  Defendants'
2    Exhibit W8 will be admitted into evidence.  Assuming
3    there is no objection from any other defendants?
4    Not hearing any, then I'll admit it.
5              MS. JACKS:  Could we publish this for the
6    jury?
7              THE COURT:  You may.
8              (Defendants' Exhibit W8 admitted.)
9    BY MS. JACKS:
10       Q.   Okay.  And showing you what's been marked
11   W8, is this the property list that's supposed to be
12   completed for the transfer of inmates?
13       A.   Yes, it is.
14       Q.   All right.  And I -- I'm assuming over
15   time this form has changed?
16       A.   It has changed over time, yes.
17       Q.   But basically, the idea is to take a
18   complete inventory of all the property that the
19   inmate is moving from institution one to institution
20   two?
21       A.   That's what the policy says, yes.
22       Q.   I want to ask you some questions -- not
23   about property inventory lists, but about the
24   transport of inmates between institutions.  Are
25   there -- well, first of all, does the New Mexico
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6754

1  Department of Corrections transfer inmates between

2  institutions?

3       A.   It does.

4       Q.   And do they do that using their own

5  correctional officers and their own transport

6  vehicles?

7       A.   They do.

8       Q.   And are the correctional officers required

9  to keep some sort of logs and records of the inmates

10 they transfer and the times and places they drive

11 to?

12      A.   They are.

13      Q.   And is that also part of the policies and

14 procedures of the New Mexico Department of

15 Corrections?

16      A.   It is.

17      Q.   And are those records maintained in the

18 ordinary course of business at the Department of

19 Corrections?

20      A.   Yes.

21      Q.   As part of the employee's duties?

22      A.   That's correct.

23      Q.   Okay.  Now, specifically, I want to ask

24 you about an Inspection of Public Records Act

25 request that was submitted to your department on or

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  about April 13 of 2017 in connection with this case.

 2          First of all, on that date, were you

 3  requested to search your records and provide any and

 4  all documentation regarding the transportation of

 5  inmates Lupe Urquizo, Mauricio Varela, and Reynaldo

 6  Enriquez from the Penitentiary of New Mexico to

 7  Southern New Mexico Correctional Facility on or

 8  about March 6, 2014?

 9      A.   Yes.  I received a public records request

10  from your office, I believe it was sometime in

11  April.

12      Q.   And after some months of work and

13  gathering those records, did you actually gather and

14  provide those records to me by way of email?

15      A.   My office did, yes.

16      Q.   And I want to show you what's been marked

17  as Defendants' Exhibit T.  And I'm going to ask you

18  if that's a true and correct copy of the records

19  that you provided, pursuant to that Inspection of

20  Public Records Act request?

21          Have you had a chance to look at it, Mr.

22  Brewster?

23      A.   I looked at T1.  Do I need to look at the

24  rest of them?

25      Q.   Just T.  I think the rest are photographs,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    so I'm just asking you to look at T.

2        A.   Yes, I did look at T, and I did produce

3    those documents to you.  I don't think that's the

4    only documents I produced to you, but I did produce

5    those.

6        Q.   Okay.  And those were documents produced

7    with respect to the request about the transportation

8    records created by officers who actually drove the

9    transport on March 6, 2014?

10       A.   That's correct.

11       Q.   And is that a true and correct copy?

12       A.   As best I can tell, yes.

13            MS. JACKS:  Your Honor, at this time we'd

14   ask that Defendants' Exhibit T be admitted into

15   evidence.

16            THE COURT:  Any objection?

17            MR. BECK:  No objection.

18            THE COURT:  Any objection from any other

19   defendant?  Not hearing or seeing any, Defendants'

20   Exhibit T will be admitted into evidence.

21            MS. JACKS:  Thank you.

22            (Defendants' Exhibit T admitted.)

23   BY MS. JACKS:

24       Q.   I'm going to move on to another request

25   that we made.  Based on -- in that same IPRA request

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6757

1  from April 13, 2017, did we request property

2  inventory lists from the sending institution and the

3  receiving institution for inmate Lupe Urquizo, New

4  Mexico Department of Corrections No. 50572?

5       A.   Yes, you did.

6       Q.   And did you cause your people in your

7  office to search for those particular documents?

8       A.   Yes, I did.

9       Q.   And let's start with the property

10 inventory list from the second institution, the

11 Penitentiary of New Mexico.  Were you able to locate

12 that property inventory list for Lupe Urquizo?

13      A.   At this point in time, I can't recall

14 exactly which documents I was able to find and which

15 ones I could not find.

16      Q.   Okay.  Do you agree with me that one of

17 them -- there should be two, right?  One from the

18 Penitentiary of New Mexico where he was -- where he

19 started off, and one from Southern New Mexico

20 Correctional Facility where he ended up?

21      A.   That's correct.

22      Q.   And so you recall that you were able to

23 find one, but not the other?

24      A.   I don't recall that right this second,

25 because, you know, I work with a lot of documents

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6758

1   every day.  I do recall that we found some

2   documents, and we did not find some.  But I don't

3   recall which ones, at this point.

4       Q.   Okay.  Well, the response to the IPRA

5   request was provided to me; correct?

6       A.   That's correct.

7       Q.   And a copy of it was also provided to the

8   Government prosecuting attorneys; right?

9       A.   Yes.

10           MS. JACKS:  And, Your Honor, I have a

11  document property inventory list for Lupe Urquizo.

12  It's entitled "Penitentiary of New Mexico."  Can

13  that be marked Defendants' U2?

14           THE COURT:  You may.

15           MS. JACKS:  May I approach the witness?

16           THE COURT:  You may.

17  BY MS. JACKS:

18      Q.   Mr. Brewster, showing you Exhibit U2, does

19  that happen to be a true and correct copy of the

20  property inventory form completed on March 6, 2014,

21  for Lupe Urquizo at the Penitentiary of New Mexico?

22      A.   It does appear so, yes.

23           MS. JACKS:  Your Honor, I'd ask that that

24  be admitted.

25           THE COURT:  Any objection?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6759

 1            MR. BECK:  Yes, Your Honor, hearsay.

 2            May I voir dire the witness?

 3            THE COURT:  You may.

 4                 VOIR DIRE EXAMINATION

 5   BY MR. BECK:

 6       Q.   Good afternoon, Mr. Brewster.

 7       A.   Good afternoon.

 8       Q.   Now, you have in front of you, I believe,

 9   what's been marked as Defendants' Exhibit U2; is

10   that right?

11       A.   It doesn't have any designation on it.

12       Q.   Okay.  That's one page of a property

13   inventory list from Lupe Urquizo; is that right?

14       A.   Yes, sir.

15       Q.   Well, let me see if I can do this more

16   quickly.  You provided more -- in response to

17   Ms. Jacks' IPRA request, you provided more than one

18   page of Lupe Urquizo's property in the property

19   file, didn't you?

20       A.   I believe that I did.  I don't know

21   exactly how many pages I provided, but yes, sir, I

22   believe I did.

23            MR. BECK:  May I approach and show the

24   witness what's been marked as Government's Exhibit

25   779?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  You may.
 2            MS. JACKS:  May I see it?
 3   BY MR. BECK:
 4       Q.   Mr. Brewster, I've provided you what's
 5   been marked for identification purposes as
 6   Government's Exhibit 779.  Does that look to you
 7   like the document you provided in response to
 8   Ms. Jacks' IPRA request for Lupe Urquizo's property?
 9       A.   Give me just one second to review it,
10   please.
11       Q.   Sure thing.
12       A.   Yes, it does appear to be that.
13       Q.   Now, I think earlier with Ms. Jacks you
14   said that -- well, and you testified earlier that
15   under the policy, there should be two property
16   inventory forms, each time an inmate is transferred
17   from the receiving and sending institution?
18       A.   Yes, sir.
19            MS. JACKS:  I'm going to object at this
20   point in time.  I don't think this is going to the
21   issue of whether it's hearsay.  And I would submit
22   to the Court that the foundation under 803(6) has
23   been established as an exception.
24            THE COURT:  Well, are you just
25   objecting -- do you have any objection to the entire
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  document coming in?

2      MR. BECK:  I do, Your Honor, yes.  And I'm

3  getting there.  I think that part E of Rule 803(6)

4  is that the opponent does not show that the source

5  of the information or the method or circumstances of

6  preparation indicate a lack of trustworthiness.  So

7  I don't think that the foundation has been shown

8  yet.

9      THE COURT:  Well, go ahead and ask your

10  question.

11  BY MR. BECK:

12      Q.   I'll direct your attention, then, Mr.

13  Brewster, to page 2 -- Bates stamp 28612 on that

14  exhibit.

15      MS. JACKS:  Your Honor, since I haven't

16  been provided a copy of this exhibit, may I stand by

17  the witness so I can read over his shoulder?

18      THE COURT:  You may.

19  BY MR. BECK:

20      Q.   Now, is that the same document that's in

21  front of you which isn't marked, but I think was

22  identified as Defendants' Exhibit U2?

23      A.   Yes, it is.

24      Q.   And in the policy that you went over with

25  Ms. Jacks, according to the policy regulations, both

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   the property officer and the inmate are supposed to

 2   sign that document; is that right?

 3        A.   Yes, sir.

 4        Q.   And is the inventory officer's signature

 5   there on either of those documents, the same

 6   document?

 7        A.   It does not appear to be on there, no.

 8        Q.   Can you say with certainty that the

 9   property officer, as opposed to the inmate, filled

10   out this form?

11        A.   Sitting here today, no, I can't say that.

12        Q.   And in that file there that you

13   provided -- you can go ahead and look at it -- but

14   did you find a second property inventory list from

15   March 6 of 2014, or anytime around there?

16        A.   No, sir, I did not.

17        Q.   And did you find -- when you received the

18   IPRA request, and you had people go out and get back

19   property files from the facilities, did you find any

20   other property file for Lupe Urquizo except for that

21   one in front of you?

22        A.   No, sir.

23        Q.   And in your review of these -- in review

24   of these documents responding to Ms. Jacks' IPRA

25   request, did you find that there were several
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  documents you expected would be in there that were

2  not?

3      A.    I did find that there were several

4  documents I expected to be in there that were not,

5  yes.

6      Q.    And let me ask you -- if we go back to

7  what's been marked Defendants' Exhibit U2.  The top

8  of that document, it says, "Southern New Mexico" --

9  excuse me, it says, "Penitentiary of New Mexico

10  Property Inventory List"; is that right?

11      A.    Yes, it does.

12      Q.    And can we bring up what's been admitted

13  as Defendants' Exhibit -- well, the inventory list.

14          MS. JACKS:  W8.

15          MR. BECK:  Thank you.  W8.

16  BY MR. BECK:

17      Q.    And this document, under the policy, is

18  that labeled "New Mexico Corrections Department

19  Property Inventory List"?

20      A.    Yes, it is.

21      Q.    And in 2014, if an institution was abiding

22  by the New Mexico Corrections Department policy, in

23  March of 2014, would they be using this New Mexico

24  Corrections Department Property Inventory List or

25  the Penitentiary of New Mexico Property Inventory

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 820-6349                                              FAX (505) 843-9492
                                                                   1-800-669-9492
                                                            e-mail: info@litsupport.com



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

6764

 1   List?

 2       A.   They should have been using the New Mexico

 3   Corrections Department list.

 4       Q.   Now, I think you already said you cannot

 5   say, for sure, who filled out that form.  After

 6   reviewing these documents that you provided in the

 7   IPRA request, can you say definitively that making

 8   these property inventory lists was a regular

 9   practice of the New Mexico Corrections Department?

10       A.   I can say that it was supposed to be a

11   regular practice.

12       Q.   I understand that.  My question was, can

13   you say it was a regular practice?

14       A.   I'm not sure I can.

15       Q.   That sounds like a no; is that right?

16       A.   That's a no, yes.

17       Q.   And can you say definitively whether

18   keeping these property inventory lists was a regular

19   conducted activity of the New Mexico Corrections

20   Department in March of 2014?

21       A.   Again, I can't say that it was, but it

22   should have been.

23       Q.   So is that a no, you can't say it was a

24   regularly conducted activity?

25       A.   I would have to say, no, I can't say that.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BECK:  Thank you, Your Honor.  So we

2   object to Defendants' Exhibit U2.

3          THE COURT:  All right.  Thank you, Mr.

4   Beck.

5          Well, I do think that the Government has

6   probably established 803(6)(E), and with that, I'll

7   deny the admission of the document.

8          MS. JACKS:  Your Honor, I'd like to ask

9   some more questions of Mr. Brewster, if I may.

10          THE COURT:  You may.

11              FURTHER DIRECT EXAMINATION

12   BY MS. JACKS:

13      Q.   First of all, Mr. Brewster, are inmates

14   provided New Mexico Department of Corrections

15   Property Inventory lists to keep in their cells?

16      A.   Not to my knowledge.

17      Q.   Are they provided -- are they given those

18   to complete by themselves?

19      A.   I don't think so.

20      Q.   And you are acting as the Custodian of

21   Records for the New Mexico Corrections Department;

22   correct?

23      A.   For purposes of the Public Records Act in

24   responding, yes.

25      Q.   And in responding to the -- to our request

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   for the production of public records, did you

2   represent that the documents, including

3   defendants -- we have two exhibits up there, so let

4   me just see them.

5          Did you produce the documents in both

6   Defendants' Exhibit U2 and Government's Exhibit 779

7   as documents maintained by the New Mexico Department

8   of Corrections, pursuant to the requirement to

9   maintain property inventory for the transport of

10  inmates both before and after transit?

11     A.   I provided all the documents I could find

12  that I thought were responsive to the public records

13  request.

14     Q.   And were these documents recovered in the

15  possession of the department -- the New Mexico

16  Department of Corrections?

17     A.   Yes.

18     Q.   And were they recovered from the property

19  officer at both the second institution, the

20  Penitentiary of New Mexico, and the receiving

21  institution, Southern New Mexico Correctional

22  Facility?

23     A.   I can't tell you today which person at

24  those institutions gathered the documents or found

25  them; I can only tell you that I provided what was

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  provided.

 2       Q.   Okay.  And I want to ask you a couple of

 3  questions comparing Defendants' Exhibit U2 to

 4  Government's Exhibit 779, if I may.

 5            MS. JACKS:  Has 779 been admitted?

 6            MR. BECK:  Yes.

 7            MS. JACKS:  May I approach, Your Honor?

 8            THE COURT:  You may.

 9  BY MS. JACKS:

10       Q.   Looking at page 1 of Government's Exhibit

11  779, can you tell us what date is on that exhibit --

12  or on that property inventory list?

13       A.   At the very top of the page there is a

14  date.  I can't see a date at the bottom because

15  there is an exhibit sticker on the -- where the date

16  might be.  But at the top it looks like it says

17  1/28/16.

18       Q.   1/28/16.  So regarding a property

19  inventory completed January 28, 2016; right?

20       A.   The date is 1/28/16.  I --  you know,

21  that's what it says.

22       Q.   Okay.  Now, the IPRA request that we made

23  on behalf of Mr. Sanchez was for property inventory

24  list on or about March 6 and 7, 2014; correct?

25       A.   That's correct.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   So would you agree with me that the

2  document, on page 1 of Government's Exhibit -- I

3  forgot the number again -- is it 779 --

4      A.   Yes.

5      Q.   -- is a document that you provided, but it

6  wasn't directly responsive to our IPRA request?

7      A.   That would be correct.

8      Q.   And can you read the top of that property

9  inventory list?

10     A.   It says "Penitentiary of New Mexico

11 Property Inventory List."

12     Q.   So just like the document U2 that the

13 defense has offered, that document page 1 of the

14 Government's exhibit says that -- it's entitled

15 "Penitentiary of New Mexico Property Inventory

16 List."

17     A.   It is entitled that, yes.

18     Q.   Can we go to the next property inventory

19 list in the Government's exhibit?

20          And Mr. Brewster, is that page -- the next

21 property inventory list, is that page Bates stamped

22 28611?

23     A.   Yes, it is.

24     Q.   And is that regarding a property inventory

25 completed on or about December 10th of 2015?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6769

```
 1        A.    That's what it says at the top, December

 2   10, 2015.

 3        Q.    Okay.  And again, is this responsive to

 4   the IPRA request that was made on behalf of Mr.

 5   Sanchez in this case?

 6        A.    I believe your request was for 2014, so

 7   technically speaking, it's not responsive.

 8        Q.    And can you tell me what the top of that

 9   property inventory form reads?

10        A.    "Penitentiary of New Mexico Property

11   Inventory List."

12        Q.    So again, it reads exactly the same as

13   Defendants' Exhibit U2 that's been offered into

14   evidence.

15        A.    Yes.

16        Q.    Okay.  The third one is actually -- let me

17   go back, Mr. Brewster.  You're looking at the one I

18   left with you, I'm sorry about that.  The third one.

19              So if you turn back to the one before

20   that, that's actually the one that's identical to

21   Defendants' Exhibit U2; right?

22        A.    Which one are you talking about?  I'm not

23   sure.

24        Q.    So the third one contained in that

25   package, Government's Exhibit 779, at Bates Page
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  28612, is that dated 3/6/2014?

2       A.   Yes, it is.

3       Q.   And that's the one that's identical to the

4  one that the defense has offered as Exhibit U2; is

5  that correct?

6       A.   That's correct.

7       Q.   Can you turn to the fourth one?  I think

8  it's -- if you just flip through a few more pages,

9  it's Bates page 28621.

10      A.   I'm looking at it.

11      Q.   Okay.  And can you tell me the date on

12  that one?

13      A.   September 14 of 2012.

14      Q.   And can you read the top of that property

15  inventory form?

16      A.   It says Penitentiary of New Mexico.

17      Q.   So, again, that form is identical to the

18  form that was used in Defense Exhibit U2?

19      A.   It appears that way, yes.

20      Q.   So Mr. Brewster, directing you on to the

21  next one in Exhibit 779, that would be Bates stamped

22  28622; do you see that?

23      A.   I do.

24      Q.   It's a poor copy, isn't it?

25      A.   The signature at the bottom, that's poor

SANTA FE OFFICE                                        MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 820-6349                                   FAX (505) 843-9492
                                                            1-800-669-9492

PROFESSIONAL COURT                      e-mail: info@litsupport.com
REPORTING SERVICE

```
 1  quality, yes.
 2       Q.   Can you read the date?  It's difficult,
 3  but can you read it?
 4       A.   It appears to say 3/6 something.  I can't
 5  read the year.
 6       Q.   3/6/2014?
 7       A.   It could be that.  I can't read it on the
 8  page, though.
 9       Q.   Can you compare that to the property
10  inventory list that's contained in Defendants'
11  Exhibit U2 and tell me if it doesn't look like it's
12  just a duplicate?
13       A.   Yes, it appears to be the same form, a
14  copy.
15       Q.   Just a poorer copy of the same form?
16       A.   Yes.
17       Q.   Okay.  Let me ask you to turn to the next
18  and last property inventory listing in Government's
19  Exhibit 779, and I think that's at 28627.
20       A.   I'm there.
21       Q.   And does that appear to be a property
22  inventory list completed on or about March 14, 2017?
23       A.   It does appear that way, yes.
24       Q.   And can you tell us what the top of that
25  form reads?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        A.    Penitentiary of New Mexico.

2        Q.    And then the next line?

3        A.    Property Inventory List.

4        Q.    Is so it fair to say that every single

5   property inventory list contained in Government's

6   Exhibits 779 is completed on exactly the same form?

7        A.    They're all completed on the Penitentiary

8   of New Mexico form or list, here.

9        Q.    And the form on every property inventory

10  list in Government's Exhibit 779 is identical to the

11  form completed and offered by the defense in Exhibit

12  U2?

13       A.    Can you ask that again?  I'm not sure I

14  followed your question.

15       Q.    Is every property inventory form in

16  Government's Exhibit 779 identical to the property

17  inventory list offered by the defense in Exhibit U2?

18  In terms of the form, not the entries in it.

19       A.    Yes.  The form appears to be the same,

20  yes.

21       Q.    So every single form is entitled

22  "Penitentiary of New Mexico Property Inventory

23  List?"

24       A.    That's correct.

25       Q.    And every single form was located by you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   or employees working under your direction within the
 2   custody and control of the Penitentiary of New
 3   Mexico?
 4        A.   That's correct.
 5        Q.   And showing you what's been marked as
 6   Defendants' W8, did you locate any property
 7   inventory forms completed on this particular form
 8   entitled New Mexico Corrections Department?
 9        A.   I'd have to look at the forms again, to
10   tell you that for sure.
11        Q.   Well, you'd have to look at the forms in
12   that exhibit?  Take your time.  779?
13        A.   Yes.  There is one form, Bates stamped
14   28620, that says, "New Mexico Corrections Department
15   Receipt for Confiscated Property."  But all the
16   other forms in this packet that I'm looking at,
17   Government's Exhibit 779, have Penitentiary of New
18   Mexico, other than that one.
19        Q.   Well, and the form that you pointed out at
20   28620, it's entitled "Receipt for Confiscated
21   Property"; is that right?
22        A.   That's correct.
23        Q.   It's not entitled a Property Inventory
24   List?
25        A.   That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6774

1    Q.   And according to the New Mexico Department

2  of Corrections policies and procedures, if at the

3  time of a property inventory, an inmate is found to

4  be in possession of property he's not entitled to

5  have, is there a procedure for confiscating that

6  property?

7    A.   There is.

8    Q.   And is there a form that the correctional

9  officer is required to fill out documenting the

10 confiscation of the property?

11   A.   There is.

12   Q.   Now, let me just go back and review with

13 you a little bit about the previous -- the previous

14 questions that I asked you.

15        According to the New Mexico Department of

16 Corrections policies and procedures, is a

17 correctional officer supposed to complete a property

18 inventory list prior to submitting an inmate for

19 transport?

20   A.   Yes.

21   Q.   And is a copy of that form supposed to be

22 held at the penitentiary where the transport is

23 initiated?

24   A.   It is supposed to be held there, yes.

25   Q.   Okay.  And are correctional officers

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  employed by the New Mexico Department of Corrections

2  required to do that as part of their regular

3  activity as a correctional officer?

4      A.   They are.

5      Q.   And are these records -- making and

6  maintaining these records, part of the business of

7  the New Mexico Department of Corrections?

8      A.   They are.

9      Q.   And every document that you've been shown

10 today in Government's Exhibit 779 and Defendants'

11 Exhibit U2, were all of those documents found by

12 people working for you, in the possession of the New

13 Mexico Department of Corrections?

14     A.   They were.

15     Q.   And specifically where in the New Mexico

16 Department of Corrections were they located?

17     A.   They were located, I believe, at the

18 Penitentiary of New Mexico.  We also looked at the

19 Southern facility.  I don't recall right this second

20 what we found there, but we looked in both places.

21     Q.   But I mean, are they stored in an office?

22 Are they stored in a filing cabinet?  Are they

23 stored in a trash can?  Where were the records

24 actually physically located?

25     A.   At the Penitentiary of New Mexico.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   In a property office?

2      A.   In some sort of a property officer unit,

3  yes.

4      Q.   In a filing cabinet that's maintained by

5  correctional officers?

6      A.   I don't know if it's a filing cabinet, but

7  it's some sort of a location where they keep these

8  sorts of documents.

9      Q.   And in conducting its business on a

10  day-to-day basis, does New Mexico Department of

11  Corrections rely on the records it keeps to document

12  its activities?

13      A.   It does.

14           MS. JACKS:  Your Honor, I would submit

15  that Defendants' Exhibit U2 should be admitted.

16           THE COURT:  Well, I'm still not convinced

17  that it meets some of the standards given Mr.

18  Brewster's testimony of 803(6)(A) and (6)(B) and

19  (6)(E), so I'll exclude the document.

20  BY MS. JACKS:

21      Q.   Mr. Brewster, I just have a couple more

22  questions.  Assuming that Government's Exhibit 779

23  is all of the property inventory documents you were

24  able to -- your office was able to locate regarding

25  inmate Lupe Urquizo, can you tell us, were any of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  those property inventory lists found at Southern New

2  Mexico Correctional Facility?

3      A.   I don't believe that any of these were

4  found at Southern New Mexico Correctional Facility.

5      Q.   And in response to the IPRA request made

6  on behalf of Mr. Sanchez back in April of 2017, did

7  your office produce any property inventory list

8  regarding inmate Lupe Urquizo from March 6 or 7,

9  2014, at Southern New Mexico Correctional Facility?

10     A.   I don't believe that we did.

11          MS. JACKS:  Your Honor, may I have a

12  minute?

13          THE COURT:  You may.

14          MS. JACKS:  I have a few more questions.

15  BY MS. JACKS:

16     Q.   Mr. Brewster, I want to talk to you about

17  these property inventory lists just for a second.

18  Is one of the reasons that a property inventory list

19  is required for -- before an inmate is transported,

20  is that -- is one of the reasons that's required is

21  to document the property that's sent with the inmate

22  down to a different penal facility?

23     A.   Yes.

24     Q.   And is a copy of that form supposed to be

25  provided to the inmate?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6778

 1       A.    I don't recall that right now.  I'm not

 2   sure if the policy requires that or not.

 3       Q.    When an inmate is transported, if you

 4   know, are they transported in physical possession of

 5   their property, or is their property transported

 6   separately?

 7       A.    I don't really know that.

 8       Q.    Is one reason that the form is completed

 9   is to provide an inventory of what property the

10   inmate should have at the receiving institution?

11       A.    Yes.

12       Q.    In other words, if the inmate gets down

13   there and says "Hey, wait a second, I had four bags

14   of Cheetos and they're not in here anymore," is that

15   property inventory list something that the inmate

16   would rely on to establish that he possessed four

17   bags of Cheetos?

18       A.    It could be, yes.

19            MS. JACKS:  So, Your Honor, I would offer

20   Defendants' Exhibit U2 under 803, subdivision 15, a

21   statement that affects an interest in property.

22            THE COURT:  803(17)?

23            MS. JACKS:  I think it's 15.

24            THE COURT:  Your thoughts on that, Mr.

25   Beck?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. BECK:  Well, Your Honor, I think again

2    we have the trustworthiness language built into

3    that, unless later dealings between the property are

4    inconsistent with the truth of the statement of the

5    purport of the documents.  And so I think Mr.

6    Brewster's testimony that he didn't find documents

7    that he was looking for either at the sending or

8    receiving institution, and that he didn't find any

9    documents from Southern New Mexico Correctional

10   Facility specifically for Lupe Urquizo show that --

11          THE COURT:  But that goes more to

12   documentary evidence rather than whether there was

13   dealings with the property that are inconsistent.

14          MR. BECK:  And it seems to me if this is

15   talking about -- I guess we can take a break and

16   look at it.  But I don't think this document

17   purports to affect an interest in property.  I think

18   that would be a legal document that affects, with an

19   A, interest in property.  So --

20          THE COURT:  Well, I think it might

21   establish an interest in property if it's indicating

22   what it is.  This seems to me to be enough that the

23   proponent has established, that it fits in 15.  So

24   I'll admit it under 803(15).

25          MR. BECK:  Your Honor, may I voir dire the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    witness on that?

2              THE COURT:  You may.

3                   VOIR DIRE EXAMINATION

4    BY MR. BECK:

5         Q.   Mr. Brewster, as part of your duties and

6    responsibilities as a general counsel of the New

7    Mexico Corrections Department, do you ever get

8    involved with disputes about confiscated or

9    destroyed or otherwise eradicated inmate property?

10        A.   Occasionally; rarely.

11        Q.   Okay.  And on those occasions when you

12   have, have you ever dealt with an inventory property

13   list in relation to that dispute about lost,

14   confiscated, or stolen property of an inmate?

15        A.   I can't recall that I ever have, sitting

16   here today; it hasn't been a common issue.

17        Q.   Okay.  Well -- and I appreciate that, and

18   I wish there was some way I could help you out.  Try

19   to think back and recall affirmatively whether you

20   can ever remember, even once, dealing with a

21   property inventory form in relation to one of these

22   claims.

23        A.   I don't recall that, sitting here today.

24             MR. BECK:  Thank you.

25             THE COURT:  All right.  Well, Defendants'

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6781

1    Exhibit U2 will be admitted into evidence.

2              (Defendants' Exhibit U2 admitted.)

3              MS. JACKS:  Thank you, Your Honor.  May I

4    publish it to the jury?

5              THE COURT:  You may.

6              MR. BECK:  Your Honor, I'm going to object

7    to the entry of this document.  If we can take it

8    off real quickly there.

9              It looks to me like reading 15 is

10   statements in documents that affect the interest of

11   property, and not the document itself.  So 803(6)

12   may relate to the documents as business records.

13   803(15), which is the underlying level of hearsay

14   that may be admitted on a statement-by-statement

15   basis.

16             THE COURT:  Well, I don't know how you

17   admit the statements in a document without admitting

18   the document, so overruled.

19             MS. JACKS:  Thank you, Your Honor.  May I

20   publish the document?

21             THE COURT:  You may.

22                  FURTHER DIRECT EXAMINATION

23   BY MS. JACKS:

24        Q.   So Mr. Brewster, just briefly looking at

25   this, does this document appear to be a property




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1    inventory list completed on March 6, 2014, for

 2    inmate Lupe Urquizo?

 3         A.   It does appear that it is.

 4         Q.   And directing your attention to the bottom

 5    half of the page, under "Miscellaneous Items."  Do

 6    you see a section of the property inventory list

 7    that specifically references "Legal Letters"?

 8         A.   I do.

 9         Q.   And is there anything noted under that --

10    is there anything noted next to "Legal Letters"

11    under "Miscellaneous Items?"

12         A.   There is not.

13         Q.   And is there also a space for the person

14    filling it out to -- if the item isn't delineated,

15    are there spaces on the right-hand side of the form

16    for the officer to list items that are not otherwise

17    listed?

18         A.   Yes.

19         Q.   And, in fact, on this particular property

20    inventory form, under "Items Not Listed," it lists

21    two spoons, a radio -- I guess a Jensen radio, and a

22    Hiteker remote; is that correct?

23         A.   That's correct.

24         Q.   Do you see any listing for legal materials

25    in this property inventory form?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1      A.   No.
 2           MS. JACKS:  Thank you, Your Honor.  I have
 3   nothing further.
 4           THE COURT:  Thank you, Ms. Jacks.  Any
 5   other defendant have examination of Mr. Brewster?
 6           MS. DUNCAN:  No, Your Honor.
 7           THE COURT:  Mr. Beck, do you have
 8   cross-examination of Mr. Brewster?
 9           MR. BECK:  I do, Your Honor, thank you.
10           THE COURT:  Mr. Beck?
11                   CROSS-EXAMINATION
12   BY MR. BECK:
13      Q.   Mr. Brewster, I would like to talk to you
14   about your IPRA responses.  Along with Mr. Urquizo's
15   property file, did you also provide a property file
16   for Enriquez Reynaldo (sic)?
17      A.   I believe that I did, yes.
18           MR. BECK:  May I approach the witness,
19   Your Honor?
20           THE COURT:  You may.
21   BY MR. BECK:
22      Q.   I'm showing you what's been marked
23   Government's Exhibit 773 for identification
24   purposes.  Is that the property inventory for
25   Enrique Reynaldo -- sorry, Reynaldo Enriquez, that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6784

1  you provided in response to Ms. Jacks' IPRA request?

2      A.   Give me just a second to review it,

3  please.

4      Q.   Sure.

5      A.   Yes, it appears to be those documents.

6           MR. BECK:  Your Honor, the United States

7  moves to admit Government's Exhibit 773.

8           THE COURT:  Any objection?  Ms. Jacks?

9           MS. JACKS:  May I see it one more time?

10  I'm sorry, I haven't been provided a copy.  Your

11  Honor, may I have a moment, because I believe a page

12  might be missing.  May I confer with Mr. Beck?

13          THE COURT:  You may.

14          MS. JACKS:  Your Honor, we have an

15  objection.  I think we're going to have to argue it

16  outside the presence of the jury.

17          THE COURT:  All right.  Well, why don't we

18  go ahead and let the jury go for the evening.

19          Before they go, since I didn't give these

20  instructions before we broke last Friday night

21  because we were trying to get out of here, I'm going

22  to remind the jury of a few things that are

23  especially important.

24          Until the trial is completed, you're not

25  to discuss the case with anyone, whether it's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  members of your family, people involved in the

2  trial, or anyone else, and that includes your fellow

3  jurors.  If anyone approaches you and tries to

4  discuss the trial with you, please let me know about

5  it immediately.

6          Also, you must not read or listen to any

7  news reports of the trial or get on the internet or

8  do any research for the purposes of this case.  And

9  finally, remember that you must not talk about

10 anything with any person involved in the trial, even

11 if it doesn't have anything to do with the trial.

12         If you need to speak to me, simply give a

13 note to one of the Court Security Officers or Ms.

14 Standridge.  I'll try not to repeat these every time

15 we take a break tomorrow, but please keep them in

16 mind.  I may say them a little bit more often as we

17 transition in this case.  So bear with me and be

18 patient.  They are extremely important, and as we

19 sort of bring this case somewhat in for landing,

20 let's really work hard to keep them in mind.

21 Everybody has tried real hard to do that for four

22 weeks.  So let's try to keep after it.

23         All right.  Y'all have a good evening and

24 we'll see you at 8:30 in the morning.

25         All rise.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

6786

```
 1                (The jury left the courtroom.)

 2                THE COURT:  All right.  Everyone be

 3    seated.

 4                All right.  How do you want to proceed?

 5                MR. BECK:  We can just turn on the -- turn

 6    on the thing, and I can make my argument.

 7                THE COURT:  All right.  Maybe I ought to

 8    hear the objection.

 9                MS. JACKS:  Here's the issue:  With

10    respect to the response to my IPRA request, it came

11    in over the course of several dates.  But one of the

12    documents that was provided was a property inventory

13    list for inmate Reynaldo Enriquez from the Southern

14    New Mexico Correctional Facility dated March 7,

15    2014.  It was included with other documents

16    regarding Reynaldo Enriquez, and actually mixed in

17    with some documents that didn't pertain to Reynaldo

18    Enriquez, but a different person.

19                The exhibit that Mr. Beck has tendered is

20    not the complete record of what was provided to us

21    in response to the IPRA request we made in April of

22    2017.  What is specifically missing, at least the

23    thing I noticed right away that's missing, is that

24    particular property inventory form.

25                And so I object because the Government is
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  misrepresenting what was provided by the New Mexico

2  Department of Corrections in response to my IPRA

3  request.  And they also haven't provided me a copy

4  of their exhibit, so I can't go through page by page

5  to compare.  But at least one important page is

6  missing.

7            THE COURT:  Well, on Reynaldo Enriquez,

8  are you trying to introduce everything that was

9  given to you by Mr. Brewster?

10           MR. BECK:  I will.  Not at this moment,

11 but I will eventually.

12           THE COURT:  All right.  If they're going

13 to get everything for Reynaldo Enriquez, is there

14 any reason not to keep that out, as long as they

15 give everything as to Enriquez?

16           MS. JACKS:  Well, I think the problem is,

17 and what Mr. Beck is representing to me, is what he

18 has marked is everything.  And it's not.

19           I think there is an insinuation that

20 somehow I got a document regarding Reynaldo Enriquez

21 in some other way, which I'm not quite sure what

22 that would be.

23           THE COURT:  Is that your intent?

24           MR. BECK:  Yeah, I intend to show that.

25 So here's -- so this is the document I just provided

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   to him -- to Mr. Brewster, which was the document

 2   that was provided in response to the IPRA request.

 3            And I completely agree with Ms. Jacks, as

 4   I just told her, that that document that she has for

 5   Reynaldo Enriquez, is not in there.  This was the

 6   next exhibit I was intending to introduce, 778, for

 7   which the top document is the document that she's

 8   thinking of.  And this has other documents from

 9   Southern Correctional facility.  I don't know where

10   it came from.  It's not Bates numbered at the

11   bottom.  Our copies are Bates numbered at the

12   bottom.  But it was not provided to the Government

13   by Mr. Brewster in response to an IPRA request.

14            THE COURT:  Well, if both documents are

15   coming in, right --

16            MR. BECK:  Right.

17            THE COURT:  -- you're going to introduce

18   both of them.  Don't both of you have, then, the

19   tools that you need to cross-examine Mr. Brewster

20   and make your point?

21            MS. JACKS:  I'm just not sure.  I'd like

22   some time to confer with Mr. Beck, because it seems

23   like -- I mean, I'm not clear if I'm being accused

24   of something, or if -- I think if I show Mr. Beck

25   the emails that we received from Mr. Brewster and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   his office, he'll see that every document that he's

2   holding came through an IPRA request.

3           THE COURT:  Well, it sounds to me like --

4   I mean, he may not have a point, but it seems to me

5   the two documents ought to come in, and both of you

6   have the tools to ask the questions of Mr. Brewster.

7           So we can wait until in the morning before

8   I rule.  But I'm inclined to allow both 773 and --

9   what's the next one marked as, Mr. Beck?

10           MR. BECK:  I just put it away.  778.

11           THE COURT:  Okay.  So I'll be inclined to

12   admit them, because it sounds like there is really

13   no objection to these.  Both of you think that these

14   documents were -- relate to the complete file for

15   Mr. Reynaldo Enriquez.  Then you can make whatever

16   point you want to make with the witness.

17           MS. JACKS:  May I request electronic

18   copies of both of those this evening so I can

19   compare to my emails?

20           MS. BHALLA:  Your Honor, if I may,

21   Defendant Herrera has an objection to admission of

22   this particular document on relevance grounds.

23           THE COURT:  Okay.  Well, I'm inclined to

24   allow it, but we can take that up in the morning.

25           But unless I hear something else in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    morning, I'll probably admit these and then we'll go

2    ahead and continue the examination of the witness.

3           All right, y'all have a good evening.

4           MR. LOWRY:  Your Honor, before we go off

5    the record, the citations?

6           THE COURT:  What I'll do is I'll have --

7    I'll give them to Ms. Standridge and she'll send the

8    citations to all of you.  It will just be the

9    citations.  I want to make a few more comments

10   before I quit, and then let y'all respond.  But I'll

11   have her just email those to y'all.

12          MR. LOWRY:  Thank you, Your Honor.

13          (The Court stood in recess.)

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   UNITED STATES OF AMERICA

2   STATE OF NEW MEXICO

3

4               C-E-R-T-I-F-I-C-A-T-E

5       I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

6   Official Court Reporter for the State of New Mexico,

7   do hereby certify that the foregoing pages

8   constitute a true transcript of proceedings had

9   before the said Court, held in the District of New

10  Mexico, in the matter therein stated.

11      In testimony whereof, I have hereunto set my

12  hand on this 4th day of February, 2019.

13

14      _____

15      Jennifer Bean, FAPR, RMR-RDR-CCR
        Certified Realtime Reporter
16      United States Court Reporter
        NM Certified Court Reporter #94
17      333 Lomas, Northwest
        Albuquerque, New Mexico 87102
18      Phone:      (505) 348-2283
        Fax: (505) 843-9492
19      License expires:  12/31/19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com