1              IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF NEW MEXICO

3    UNITED STATES OF AMERICA,

4                    Plaintiff,

5        vs.              NO:  CR-15-4268 JB

6    ANGEL DELEON, et al.,

7                    Defendants.

8                       VOLUME 24

9        Transcript of Jury Trial before The Honorable

10   James O. Browning, United States District Judge, Las

11   Cruces, Dona Ana County, New Mexico, commencing on

12   March 2, 2018.

13   For the Plaintiff:  Ms. Maria Armijo, Mr. Randy
     Castellano, Mr. Matthew Beck
14

15   For the Trial 1 Defendants:  Ms. Amy Jacks, Mr.
     Richard Jewkes, Ms. Theresa Duncan, Mr. Marc Lowry,
16   Ms. Carey Bhalla, Mr. Bill Maynard, Mr. Ryan Villa,
     Ms. Justine Fox-Young.

17

18

19          Jennifer Bean, FAPR, RDR, RMR, CCR
               United States Court Reporter
20            Certified Realtime Reporter
                333 Lomas, Northwest
21             Albuquerque, NM  87102
               Phone:   (505) 348-2283
22             Fax:   (505) 843-9492

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7885

```
 1                    I N D E X

 2   EXAMINATION OF BRYAN ACEE

 3   By Ms. Fox-Young                          7893

 4   By Ms. Bhalla                             7915

 5   By Ms. Jacks                              7919

 6   By Ms. Bhalla                             8036

 7   By Mr. Lowry                              8038

 8   By Ms. Fox-Young                          8096

 9   By Ms. Jacks                              8117

10   By Mr. Castellano                         8122

11   By Ms. Jacks                              8124

12   By Mr. Castellano                         8127

13   By Ms. Fox-Young                          8133

14   By Ms. Jacks                              8134

15   EXAMINATION OF JOSEPH SAINATO

16   By Ms. Jacks                              8136

17   By Ms. Armijo                             8153

18   By Ms. Jacks                              8166

19   REPORTER'S CERTIFICATE                    8236

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  All right.  Good morning,
 2   everyone.  I appreciate everyone being here and on
 3   time and ready to go.  I was greeted with a fairly
 4   large stack of reading this morning, so I am plowing
 5   through it, but I don't have anything really to
 6   comment.
 7          The jury instructions looked about like
 8   what I sent back to Albuquerque.  I haven't gotten
 9   them proofed all the way through, so at least what I
10   have is -- what you have and what I have is, I
11   think, where I am.  So I'll be looking at your
12   materials this morning.
13          Is there anything we need to take up
14   before we bring the jury in?
15          How about from the Government, first?  Mr.
16   Castellano?
17          MR. CASTELLANO:  No, sir.
18          THE COURT:  Okay.  How about from the
19   defendants?  Ms. Jacks?
20          MS. JACKS:  Well, Your Honor, I don't know
21   that the Government had finished with Agent Sainato.
22   I guess we're just going to not finish that hearing.
23          THE COURT:  Do you feel any need to finish
24   that, Mr. Castellano?
25          MS. ARMIJO:  Your Honor, I think I was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  questioning him at the end.
 2           THE COURT:  Ms. Armijo.
 3           MS. ARMIJO:  I think that we could go on
 4  with the testimony and have the Court look at it,
 5  our response yesterday, and we can just go forward
 6  with the --
 7           THE COURT:  And there may be a time we
 8  need to come back and have a hearing on that.  I may
 9  have some questions.  I'm still behind from the
10  reading yesterday, the materials that were given to
11  me.
12           Did you have something else, Ms. Jacks, or
13  did you just need to know that clarification?
14           MS. JACKS:  I just needed that
15  clarification.  Thank you.
16           THE COURT:  How about you, Ms. Fox-Young?
17           MS. FOX-YOUNG:  Your Honor, I'll leave any
18  argument for later.  But with respect to calling
19  Agent Acee, how would the Court like us to let the
20  jury know --
21           THE COURT:  I'm game.  Are y'all going to
22  call the other two FBI agents first, or are y'all
23  going to call them at all, or just go right to
24  Mr. Acee?
25           MS. FOX-YOUNG:  Your Honor, may we just
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    have a moment to confer?

 2              THE COURT:  Sure.  You bet.

 3              MS. FOX-YOUNG:  Your Honor, I think all

 4    the defendants would like to call Agent Acee first.

 5    Since he was on the stand and I was questioning him,

 6    I'd like to begin, but I just don't know how to let

 7    the jury know we're recalling him.

 8              THE COURT:  What about if we did this?

 9    I'll just throw this out.  I'm game for anything.

10    What if I just call on you to say, "Would you like

11    to complete your direct examination of Mr. Acee in

12    your case-in-chief?"  How about if I said that?

13    Would that work, or do you want something else?

14              MS. FOX-YOUNG:  That's fine with me,

15    Judge.

16              THE COURT:  Okay.  Let me see if I can do

17    that.

18              All right.  If everybody is ready, we'll

19    get the jury lined up.  Do we have anything else to

20    discuss?  We didn't line them up immediately because

21    we thought y'all might have a little bit more to

22    discuss.  So if anybody has got anything to say to

23    me or talk to me or want me to do --

24              MS. FOX-YOUNG:  Your Honor, just one more

25    point.  I think the Court ordered that the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7889

1  Government produce the additional agent notes

2  pertinent to the cooperating witnesses.  We have not

3  received any additional notes at this time.

4          THE COURT:  Well, during the discussion

5  yesterday it seemed to me that what Mr. Lowry did

6  was confirm with Mr. Beck that there is not any

7  more, that they've all been produced.  Now, we can

8  go back through that, but my impression was that Mr.

9  Lowry agreed with Mr. Beck that all the other

10 cooperating people had been produced.

11         MS. ARMIJO:  No, Your Honor, I think that

12 what we had said was that the ones that Mr. Lowry

13 had requested, we produced all of those.

14         THE COURT:  Well, we did that.  And I

15 think everybody is in agreement on that.  But then

16 after that was over, we went through the broader

17 request that Ms. Fox-Young had, and I think Mr.

18 Lowry confirmed with Mr. Beck through

19 representations that we have had produced by the

20 Government all the what I'll call testifying

21 witnesses, any statements that fall within my

22 definition of what a statement is.

23         MS. ARMIJO:  And Your Honor, that's what

24 we had said that we were going to request overnight.

25 And it should be here probably by -- when we left

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  our office before 8:00 a.m., our paralegal said that

2  she would have it on CDs and bring it within the

3  hour.  Because we had to get them from Albuquerque

4  even.  That was for the remaining cooperator

5  testifying that Mr. Lowry had not asked for.

6          MR. LOWRY:  And Your Honor, I agree with

7  that.  What I initially requested for were just for

8  the three witnesses:  Lupe Urquizo, Timothy

9  Martinez, and Mario Rodriguez.  And we confirmed

10 that.  Now, what the United States did represent was

11 they would make a good faith effort to reach out to

12 the task force officers Cupit and Mark Myers.

13          THE COURT:  Oh, yes.  That's right.  Task

14 force.

15          MR. LOWRY:  And the United States agreed

16 to provide the field notes for all of the testifying

17 witnesses, which we are anticipating.

18          MS. ARMIJO:  All testifying cooperators

19 for the United States.

20          MR. LOWRY:  Fair enough.

21          THE COURT:  Does that work, Ms. Fox-Young,

22 then?

23          MS. FOX-YOUNG:  Your Honor, I'd just like

24 to make a record that the defense doesn't have to

25 ask for those notes.  The Court has ordered them as

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  part of Jencks and under, I think, the Harry case

2  and the Fred case and -- I can give the Court other

3  citations to Tenth Circuit law.  The Government is

4  required to produce those notes.  We've completed

5  cross-examination of all these cooperators.  We are

6  now at the end of our case.  We have an agreement to

7  put Agent Acee back on the stand, and we still don't

8  have those notes, and the Court ordered them again

9  yesterday.  The defense is absolutely prejudiced.  I

10 don't know what's in them, but I don't know how we

11 can proceed without them, and I don't think there

12 has been adequate explanation as to why they haven't

13 been produced.

14         THE COURT:  Well, they're on their way,

15 and let's see where we get this morning.

16         MS. JACKS:  Sanchez joins.

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7892

```
 1              THE COURT:  All right.  All rise.
 2              (The jury entered the courtroom.)
 3              THE COURT:  All right.  Everyone be
 4    seated.
 5              Good Friday morning to everyone.  I
 6    appreciate everybody being back and ready to go.  I
 7    appreciate the parties and counsel getting here
 8    early so we can discuss a few things and be ready
 9    for y'all pretty much on time.  So I appreciate the
10    way you've worked for us the last five weeks.
11    You've been a remarkable group, and I appreciate
12    everything you've done for us.
13              All right.
14              Ms. Fox-Young, I think you had Mr. Acee on
15    the stand in your case-in-chief, you're going to
16    complete your direct examination.
17              So, Mr. Acee, if you'll return to the
18    witness stand, I'll remind you that you're still
19    under oath.  Ms. Fox-Young, if you wish to continue
20    your direct examination of Mr. Acee, you may do so
21    at this time.
22              MS. FOX-YOUNG:  Thank you, Your Honor.
23              THE COURT:  Ms. Fox-Young.
24
25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                     BRYAN ACEE,
 2        after having been previously duly sworn under
 3        oath, was questioned, and continued testifying
 4        as follows:
 5                 CONTINUED DIRECT EXAMINATION
 6   BY MS. FOX-YOUNG:
 7        Q.    Good morning, Agent Acee.
 8        A.    Good morning.
 9        Q.    Agent Acee, do you recall that when you
10   were last on the stand, you answered some questions
11   about Mario Rodriguez?
12        A.    Yes, ma'am.
13        Q.    Okay.  I'd like to ask you a couple more.
14   Do you remember whether or not you learned, in the
15   course of your investigation of this case, whether
16   Mario Rodriguez was in charge of blue pod?
17        A.    Yes.
18        Q.    You learned whether he was?
19        A.    I had heard things along those lines, yes.
20        Q.    In fact, you learned that he was in charge
21   of blue pod, didn't you?
22        A.    Not exclusively, but he and Mr. Sanchez
23   were.
24        Q.    You don't dispute that you learned that
25   Mario Rodriguez was in charge of blue pod?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    I don't dispute that.
 2        Q.    And you also learned, through the course
 3   of your investigation, that there were some specific
 4   reasons why Mario Rodriguez put in a lot of work for
 5   the gang, isn't that right?
 6        A.    Yes.
 7        Q.    And wasn't one of those specific reasons
 8   because of his history of sex offenses?
 9        A.    That may have played into it.
10        Q.    Well, in fact you know it played into it,
11   don't you?
12        A.    I think there were a few reasons, that
13   being one of them.
14        Q.    Well, are you aware, Agent Acee, that
15   yesterday some voluminous notes that you had
16   authored were produced to the defense?
17        A.    Yes, I produced them.
18        Q.    Okay.  You produced them to the defense
19   yesterday?
20        A.    For the Government, yes.
21        Q.    Okay.  Remind me how long this
22   investigation has been going on.
23        A.    About three years.
24        Q.    All right.  And you recall that you
25   authored notes with regard to debriefs of Timothy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Martinez, a/k/a Red?

 2        A.   Yes.

 3        Q.   And you recall, do you not, that you

 4   learned from Timothy Martinez that Blue, or Mario

 5   Rodriguez, was highly motivated to put in work

 6   because of the hot sauce incident and the sex

 7   offenses?

 8        A.   Yes.

 9        Q.   And the Javier Molina homicide could be

10   considered putting in work for Mario Rodriguez,

11   right?

12        A.   Absolutely.

13        Q.   Are you also aware, Agent Acee, that

14   nearly 1,000 pages of documents purported to have

15   been in the possession of Mario Rodriguez were

16   produced to the defense two days ago?

17        A.   Yes.

18        Q.   Have you had an opportunity -- well, have

19   you reviewed those documents?

20        A.   No.

21        Q.   Do you know how long the FBI has been in

22   possession of those documents?

23        A.   Yes.

24        Q.   And can you tell the jury how long the FBI

25   has had those documents?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    FBI Agent Joe Sainato took possession of
 2   those documents in approximately June of 2017.
 3        Q.    Okay.  So what is that?  Eight or nine
 4   months?
 5        A.    Yes.
 6        Q.    But in that eight- or nine-month period,
 7   you've never looked at those 1,000 pages of
 8   documents from Mario Rodriguez?
 9        A.    I didn't know they existed until Sunday,
10   this last Sunday.
11        Q.    Okay.  And you're the case agent in this
12   case, right?
13        A.    I am.
14        Q.    And I think you told me and told the jury
15   a few days ago that -- are there three or four other
16   agents working this case with you?
17        A.    There are three other FBI agents that were
18   assigned this case upon their graduation from the
19   Academy, so they've been helping me since then.
20        Q.    Okay.  One of those agents is Agent
21   Sainato, who you just testified personally retrieved
22   these documents last summer?
23        A.    Yes, ma'am.
24        Q.    And do you know if Agent Sainato ever
25   reviewed the documents?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1      A.   Yes, but not until very recently, as in
 2   Sunday.
 3      Q.   Okay.  And so --
 4      A.   Excuse me.  I think he represented that he
 5   had done a cursory search, but he hadn't done what I
 6   would call an in-depth review of those until Sunday.
 7      Q.   Well, isn't it true that Agent Sainato's
 8   purported reason for taking those documents in the
 9   first place from the Penitentiary of New Mexico is
10   so that he could search them?
11      A.   Yes.
12      Q.   Outside the Penitentiary of New Mexico?
13      A.   Yes.
14      Q.   And isn't it true that those documents in
15   fact remained, according to Agent Sainato,
16   underneath his desk for eight months?
17      A.   Yes.
18      Q.   After he did a search of them?
19      A.   They remained under his desk for at least
20   eight months.
21      Q.   And to this day, you have not looked at
22   these documents?
23      A.   No.
24      Q.   But Agent Sainato works for you on this
25   case, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        A.    Yes, ma'am.

2        Q.    And so these nearly 1,000 pages of

3  documents that were produced two days ago, after the

4  Government rested, you don't know what they contain?

5        A.    I think they were produced on Monday.  I

6  have --

7        Q.    Do you know when they were produced?

8        A.    I believe they were produced on Monday.

9        Q.    You don't know for certain because you

10  don't make the production, right?

11        A.    I'm just trying to remember what day I saw

12  them delivered to your desks.  I thought it was

13  Monday.  It may have been Tuesday.

14        Q.    You still haven't looked at them?

15        A.    Other than what was presented yesterday

16  afternoon, no, in court.  No.

17        Q.    Would you think it would be important for

18  the FBI to look at 1,000 pages of documents that

19  came from Mario Rodriguez, that were in his personal

20  possession?

21        A.    Yes.  It's important for us to look at

22  everything that comes across our desks.

23            MS. FOX-YOUNG:  Your Honor, I'd ask for a

24  stipulation from the Government that these documents

25  were produced to the defense on Wednesday.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Does the Government wish to
 2    respond?
 3              MS. JACKS:  I would ask that it be
 4    Wednesday at 2:00 p.m.
 5              THE COURT:  Well, let's let the Government
 6    respond first.
 7              MR. BECK:  I think it's inaccurate to say
 8    that the Government produced the documents Wednesday
 9    at 2:00.  I think that a document from that was
10    produced Sunday evening.  I think that the rest of
11    the documents, aside from the document produced
12    Sunday evening, were produced to the defense
13    Wednesday around 2:00 p.m.  So that would be an
14    accurate stipulation.
15              MS. FOX-YOUNG:  Let me propose a different
16    stipulation, Your Honor.  I'd ask for a stipulation
17    that pages 980 of documents, purportedly from Mario
18    Rodriguez, were produced Wednesday at 2:00 p.m. to
19    the defense.
20              THE COURT:  Do you want to accept that
21    stipulation, Mr. Beck?
22              MR. BECK:  I don't know that there were
23    980 pages produced.  And I know that 980 pages, if
24    they were produced, were not all from Mario
25    Rodriguez' property.  So no.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  All right.  So I don't believe
 2  you have a stipulation, Ms. Fox-Young.
 3            MS. FOX-YOUNG:  I'm sorry, Your Honor?
 4            THE COURT:  You don't have a stipulation.
 5            MS. FOX-YOUNG:  Okay.  Will the Government
 6  stipulate that the only document from this set of
 7  nearly 1,000 pages that was produced to the defense
 8  on Sunday is Defendants' Exhibit FV?
 9            MR. BECK:  Yes.
10            THE COURT:  All right.
11  BY MS. FOX-YOUNG:
12       Q.   All right.  In any event, Agent Acee, you
13  haven't looked at them?
14       A.   I have not looked at all of them, no.
15       Q.   Okay.  And so is it accurate to say that
16  you don't know whether these documents detail Mario
17  Rodriguez having thrived on being feared?
18       A.   I saw some writings about that yesterday.
19       Q.   I thought you hadn't looked at them?
20       A.   They were up there on the screen.
21       Q.   Okay.
22       A.   And the attorneys were -- the defense
23  attorneys were pointing those out.  They were up
24  there on the screen.
25       Q.   So you are aware of Mario Rodriguez'
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    musings that he thrived on being feared?

2        A.   I saw a writing that indicated that.

3        Q.   You don't know how many times in 980 pages

4    there is indication that Mario Rodriguez thrived on

5    being feared?

6        A.   No.

7        Q.   And are you aware that Mario Rodriguez

8    detailed his obsession with cutting ears off in

9    these documents?

10        A.   No.  I haven't seen anything like that.

11        Q.   Okay.  You don't know how many times Mario

12    Rodriguez talked about cutting ears off in these

13    documents?

14        A.   I've not seen anything like that.

15             MR. CASTELLANO:  Your Honor, we have no

16    objection to the admission of the 980 pages that

17    were in Mr. Rodriguez' property, and the jury can

18    look through those documents if they so choose.

19             So we have no objection to the admission

20    of all of those documents.

21             THE COURT:  Do you want to introduce those

22    or not?

23             MS. FOX-YOUNG:  I'm not moving their

24    admission at this time, Your Honor.

25             THE COURT:  Okay.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

BY MS. FOX-YOUNG:

    Q.   And are you aware whether these 980 pages

detail Mario Rodriguez' obsession with sex offenses?

    A.   No.

    Q.   You don't know about that?

    A.   I'm not aware of that.

    Q.   Do you know if they detail Mario

Rodriguez's desire to butcher and rape other

individuals?

         MR. CASTELLANO:  I'm going to object based

on foundation.  The agent says he hasn't reviewed

these, so he wouldn't know the contents of the

document.

         MS. FOX-YOUNG:  Your Honor, the agent says

he has reviewed some of the documents, apparently.

         THE COURT:  I think it's a mixed bag, so I

think I've got to let Ms. Fox-Young do this because

he has seen certain documents on the screen.

Overruled.

BY MS. FOX-YOUNG:

    A.   I haven't seen anything related to that.

    Q.   And so you don't know how many times

throughout these documents Mario Rodriguez talks

about butchering and raping people?

    A.   No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7903

```
 1        Q.   Do you know whether these documents
 2   include descriptions of threats that Mario Rodriguez
 3   has made against other people?
 4        A.   I think I saw one or two yesterday.
 5        Q.   Okay.  So you're aware of one or two times
 6   in the documents where Mario Rodriguez talks about
 7   threatening people?
 8        A.   Yes.
 9        Q.   But you don't know how many times in these
10   980 pages he talks about threatening people?
11        A.   No.
12        Q.   And how many times he was written up for
13   assaults and threats?
14        A.   He has a few write-ups for assaults.
15        Q.   And do you know whether Mario Rodriguez,
16   in these documents, associated threats with his
17   reputation for being feared?
18        A.   No.
19        Q.   You don't know that.  Are you aware, Agent
20   Acee, of whether or not Mario Rodriguez was jumping
21   out of his skin to kill Javier Molina, couldn't wait
22   to do it?
23        A.   I have not seen anything that represents
24   that.
25        Q.   You don't know anything about that?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    I know about the homicide, but
 2  specifically whether or not he was jumping out of
 3  his skin to participate, I've not seen anything like
 4  that.
 5        Q.    So it's your testimony that you have never
 6  been informed that Mario Rodriguez couldn't wait to
 7  kill Javier Molina?
 8        A.    You're saying it in different terms now.
 9  But not off the top of my head, no.
10        Q.    It's your testimony that you never learned
11  that?
12        A.    I don't dispute that he was motivated to,
13  but in the terms you're saying it, you'd have to
14  refresh my memory.
15        Q.    Do you remember debriefing Lupe Urquizo,
16  a/k/a Marijuano, on March 6, 2017?
17        A.    Yes.
18        Q.    And you took notes in that debrief, didn't
19  you?
20        A.    I did.
21        Q.    And those notes were produced to defense
22  two days ago, weren't they?  Or I'm sorry.  They
23  were produced yesterday at 9:18 in the morning,
24  weren't they?
25        A.    They were produced when I was asked to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  produce them.  I'm not sure what time you got them.

2       Q.   Yesterday at 9:18 in the morning, right?

3       A.   I don't know when you received them.

4       Q.   And some of those notes, in fact, detailed

5  that Blue -- this is from Lupe Urquizo -- Blue

6  couldn't wait to move on Javier Molina; isn't that

7  right?

8       A.   Yes.

9       Q.   Do you know who brought Mario Rodriguez

10 into the SNM?

11      A.   I don't remember all the members.  I

12 remember one right now.

13      Q.   Who do you remember?

14      A.   Arturo Garcia, Shotgun.

15      Q.   Do you remember that Billy Cordova brought

16 Mario Rodriguez into the SNM?

17      A.   No.  I just remember Arturo Garcia.

18      Q.   Would it refresh your memory if I showed

19 you your notes, also produced yesterday at 9:18

20 a.m., from a debrief of Timothy Martinez, a/k/a Red,

21 on December 29th of 2016?

22      A.   Yes.

23           MS. FOX-YOUNG:  Your Honor, may I approach

24 the witness?

25           THE COURT:  You may.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BY MS. FOX-YOUNG:

    Q.   Agent Acee, are these your notes from
December 29, 2016, on a debrief of Red?

    A.   Yes.

    Q.   All right.  Please take a look at this
page.  Did you write this page?

    A.   I did.

    Q.   And tell me whether this refreshes your
recollection as to that question.

    A.   Yes, ma'am.

    Q.   Agent Acee, do you remember now whether
Billy Cordova recruited Mario Rodriguez into the
SNM?

    A.   Yes, according to --

    Q.   He did, right?

    A.   Yes.

    Q.   Okay.  And you learned that December 29th
of 2016?

    A.   Yes.  That's according to Red, Timothy
Martinez.  That's who brought Rodriguez in.

    Q.   Who is Chuco?

    A.   Mandel Parker.

    Q.   Do you remember learning about Chuco's
presence at a shooting, a shooting that Billy
Cordova committed or engaged in?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    No.  You'd have to refresh my memory.
 2   Sorry.
 3        Q.    Do you know if notes from a debrief of Red
 4   on January 26, 2017, were also produced to the
 5   defense yesterday at 9:18 in the morning?
 6        A.    I imagine they were.  Are they my notes?
 7        Q.    Do you know?
 8        A.    I don't know if those were my notes.
 9        Q.    In any event, you don't know if Billy
10   Cordova shot somebody while Chuco was present?
11        A.    No.
12        Q.    And you don't know what shooting that was?
13        A.    No.
14        Q.    You're the agent who closed Billy Cordova
15   as a government witness, right?
16        A.    Yes.
17        Q.    Do you know when that happened?
18        A.    It happened immediately after my learning
19   that -- about the sex incidents up at PNM.
20        Q.    Do you know when he was actually closed?
21        A.    No.
22        Q.    Would it refresh your recollection if I
23   showed you a portion of his contract with that
24   indication?
25        A.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7908

```
 1          MS. FOX-YOUNG:  Your Honor, may I approach
 2   the witness?
 3          THE COURT:  You may.
 4          MS. FOX-YOUNG:  And for the record, this
 5   is Bates 41665.
 6   BY MS. FOX-YOUNG:
 7      Q.   Agent Acee, is this a document indicating
 8   closure of Billy Cordova?
 9      A.   May I look at the next page?
10      Q.   Yes, you may.
11      A.   The source numbers are blocked out, but I
12   think it is, because I sent this letter to the four
13   guys that were involved in sex acts up there.
14      Q.   And so does this refresh your recollection
15   on this question?
16      A.   Yes.
17      Q.   So do you know now when you closed Billy
18   Cordova?
19      A.   I closed him around January 13, 2017.  I
20   base that on the letter you just showed me.
21      Q.   Okay.  And it's your testimony that after
22   that time -- and you testified about this when I
23   asked you questions a few days ago.  Is it your
24   testimony that after that time, Billy Cordova did no
25   more work for the FBI?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    No.
 2        Q.    Okay.  So he did do more work for the FBI
 3   after you closed him?
 4        A.    He did work for the STIU, which we're
 5   partnered with, so I'm just hesitating to say -- I
 6   understand he made an additional recording, which at
 7   the time he made the recording I didn't know about.
 8   I subsequently learned about in court here.
 9        Q.    So it's your testimony that after he was
10   closed, he continued to do work for the team the FBI
11   works on?
12        A.    Yes, in a separate case.  But yes, to
13   answer your question.
14        Q.    So he wasn't really closed, right?
15        A.    No, he was closed.
16        Q.    How can a closed government witness
17   continue doing work for the FBI?
18        A.    Well, I can explain if you'd like me to.
19        Q.    Let me just ask you this:  For the work
20   that Billy Cordova did, were there FBI reports like
21   you've already described generated?
22        A.    For the work after he was closed?
23        Q.    Yes.
24        A.    Is that what you're asking?
25        Q.    Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   That's a better question for Agent Stemo,
2 but I believe she submitted a report.  Because he
3 obtained a recording up at the penitentiary.
4      Q.   So after Billy Cordova was closed in
5 January of 2017, it's your testimony that he did
6 continue working and that FBI reports for his work
7 were generated, right?
8      A.   At least one.  I think there is a
9 recording and a report.
10     Q.   And you think Agent Stemo -- she's part of
11 your team of agents, right, on this case?
12     A.   Yes, ma'am.
13     Q.   And you think she did a report documenting
14 that work for the FBI?
15     A.   Yes.  Not in this case file, though.  A
16 different prison gang.
17     Q.   And so you know, then -- you would agree
18 with me, then, that in April 2017, three months
19 after you say Billy Cordova was closed, he was
20 working for the FBI?
21     A.   No, I don't agree with that.  I agree that
22 there was a recording made.  I don't believe the FBI
23 tasked him with doing that.  I think the STIU did,
24 and then they delivered to us a recording, and she
25 needed to document the fact that that was done.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   You would agree with me that three months
 2   after Billy Cordova was closed, your agent, Agent
 3   Stemo, was writing -- wrote a report with regard to
 4   Billy Cordova's work for the FBI?
 5        A.   All of that except that it was for the
 6   FBI.  I think it was for the STIU.  We just received
 7   a copy of it because it's good evidence.
 8        Q.   Is it your practice to do FBI reports for
 9   agency's work unrelated to the FBI?
10        A.   No.  There's an open case on the prison
11   gang that he did a recording on.
12        Q.   Okay.  Thank you, Agent Acee.
13             Have you ever made a determination about
14   whether Billy Cordova continued to commit crimes
15   after going to work for the Government?
16        A.   As I sit here today, I have, yes.
17        Q.   What is that determination?
18        A.   He used drugs while he was an FBI
19   informant, and he brought a weapon to court.  Those
20   are, I believe, the two incidents I'm aware of.
21        Q.   Have you made a determination about
22   whether Billy Cordova will continue to commit crimes
23   today and going forward?
24             MR. CASTELLANO:  Objection, relevance.
25             THE COURT:  Well, it's a yes/no question
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  at this point, whether he's reached a conclusion.

2  BY MS. FOX-YOUNG:

3       A.   No.

4       Q.   You haven't made a determination?

5       A.   Well, I have an opinion, but I cannot tell

6  what he's going to do in the future.

7       Q.   And do you have information obtained

8  through the course of this investigation, with

9  regard to that question, as to whether or not Billy

10 Cordova will continue with his criminal conduct on

11 the streets?

12            MR. CASTELLANO:  Objection, calls for

13 speculation.

14            MS. FOX-YOUNG:  Your Honor, it's a yes/no

15 question.

16            THE COURT:  Well, I think these are if

17 he's reached some conclusion.

18            MS. FOX-YOUNG:  Your Honor, my question

19 is:  Does he have information, obtained through the

20 course of this investigation, about whether Billy

21 Cordova will continue to commit crimes on the

22 streets?

23            THE COURT:  I still think the way I worded

24 it is what you're asking.  So I was overruling the

25 objection.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7913

```
 1              MS. FOX-YOUNG:  Thank you, Your Honor.
 2              THE COURT:  Are you arguing with my
 3    ruling?
 4              MS. FOX-YOUNG:  I just want to make sure
 5    that the witness understood the question.  And no,
 6    Your Honor, I'm not arguing with your ruling.
 7    BY MS. FOX-YOUNG:
 8        A.    No.
 9        Q.    You haven't obtained that information?
10        A.    I don't believe so.
11        Q.    So you don't recall interviewing Red and
12    documenting in your notes on January 26, 2017, that
13    Billy Cordova still thinks he can go back to
14    Albuquerque and represent -- he still wants to be a
15    gangster, but that he's a federal rat?
16              MR. CASTELLANO:  Calls for hearsay.
17        Q.    You don't remember that?
18        A.    I do.
19              THE COURT:  Again, it's a yes/no question,
20    just whether you've done the interview?
21        A.    I did the interview, yes.
22        Q.    You don't remember that?
23              MR. CASTELLANO:  Objection, calls for
24    hearsay.
25              THE COURT:  Well, it's a different
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   question.  I'm confused.  Why don't you ask another
 2   question at this point.
 3   BY MS. FOX-YOUNG:
 4        Q.   Agent Acee, do you remember gathering that
 5   information as to Billy Cordova in your January 26,
 6   2017, interview?
 7        A.   Yes, but you're stating it out of context.
 8        Q.   Would it refresh your memory if you saw
 9   the detail?
10        A.   Please.
11             MS. FOX-YOUNG:  Your Honor, may I approach
12   the witness?
13             THE COURT:  You may.
14        Q.   Agent Acee, are these your notes produced
15   yesterday at 9:18 a.m. from a January 26, 2017,
16   interview of Red?
17        A.   These are my notes.
18        Q.   All right.  Take a look at this page and
19   tell me if that refreshes your memory?
20        A.   Yes.
21        Q.   So having looked at this document, do you
22   recall gaining the information about Billy Cordova
23   wanting to go back to the streets and wanting to be
24   a gangster and represent?
25        A.   Yes, but he's saying he wants to work for
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   us.  Like he wants to be a gangster on the street as

2   an informant.  That's what I believe that says.

3       Q.   You recall learning that Billy Cordova

4   wants to go back to Albuquerque and represent?  He

5   still wants to be gangster, but he's a federal rat?

6       A.   Yes, and I --

7           MS. FOX-YOUNG:  Thank you, Your Honor.  No

8   further questions.

9           THE COURT:  Thank you, Ms. Fox-Young.  All

10  right.  Do any other defendants have direct

11  examination of Mr. Acee?

12          MS. JACKS:  I do, Your Honor, but I think

13  I'm queued up last.

14          MS. BHALLA:  Yes, Your Honor, I have a few

15  questions.

16                  DIRECT EXAMINATION

17  BY MS. BHALLA:

18      Q.   Good morning, Agent.

19      A.   Good morning.

20      Q.   So I think what you testified to with Ms.

21  Fox-Young was that you were here yesterday for the

22  hearing where we discussed some of the property

23  belonging to Mario Rodriguez?

24      A.   I was here, yes.

25      Q.   And you saw some of the documents that
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7916

1    were put up on the screen?

2        A.   Yes.

3        Q.   Okay.  And would you agree with me that

4    some of the documents that we put up on the screen

5    yesterday clearly was property that belonged to

6    other individuals?

7        A.   I think at one time, yes.

8        Q.   Okay.  And, in fact, the other individuals

9    were other informants in this case; namely, Timothy

10   Martinez?

11       A.   I saw some property that was probably

12   Timothy's at one time.

13       Q.   Okay.  And one of the things that you saw

14   was a letter from Timothy Martinez's -- a woman

15   named Robin.  I presume that that's Timothy

16   Martinez's wife.

17       A.   It's not.  I think it's an ex.  Could be

18   an ex-wife.  I think it was a girlfriend.

19       Q.   Okay, so an ex-girlfriend.  Thank you for

20   clearing that up.  And Robin sent that letter to

21   Timothy Martinez, correct?

22       A.   Yes.

23       Q.   And in that letter -- that letter was

24   dated after the Javier Molina murder, was it not?

25       A.   No.  I'll have to take your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  representation.  I didn't catch the date.

2       Q.   Okay.

3            MS. BHALLA:  And, Your Honor, I apologize.

4  I moved those in yesterday.  Could I possibly get a

5  copy from Ms. Standridge?

6            THE COURT:  You need what, Ms. Bhalla?

7            MS. BHALLA:  I have it, Your Honor.  Thank

8  you.  I'm sorry, Agent Acee.  Give me a second.

9            Your Honor, may I approach the witness?

10           THE COURT:  You may.

11 BY MS. BHALLA:

12      Q.   Agent Acee, do you mind just flipping

13 through and confirming that there are three letters

14 from Robin to Timothy Martinez?

15      A.   There are.

16      Q.   Okay.  And can you confirm that all three

17 letters are dated after the Javier Molina murder,

18 please?

19      A.   All three are dated after the Javier

20 Molina homicide.

21      Q.   Would you agree with me that some of the

22 information that's contained in those letters is

23 information that the statements weren't matching up

24 with the discovery; that some of the statements that

25 were made weren't matching up with the discovery?

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                               Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 820-6349                                               FAX (505) 843-9492
                                                                    1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE                                    e-mail: info@litsupport.com

```
 1    Do you recall looking at statements like that in
 2    those letters yesterday?
 3              MR. CASTELLANO:  Objection, calls for
 4    speculation.
 5              MS. BHALLA:  He was here yesterday, Your
 6    Honor.
 7              THE COURT:  Well, if he can agree, I'll
 8    allow him to testify.  Overruled.
 9    BY MS. BHALLA:
10         A.   I recall at least one.
11         Q.   Okay.  And would you agree with me that
12    these documents were contained in the FBI office for
13    about the last eight months?
14         A.   Yes.
15              MS. BHALLA:  May I have a moment, Your
16    Honor?
17              THE COURT:  You may.
18         Q.   And when you were here yesterday at this
19    hearing and we were going through some of the
20    property that was contained in Mario Rodriguez'
21    possession, or his property, would you also agree
22    with me that there were letters sent to the county
23    clerk's office, requesting discovery in other cases?
24         A.   I saw a letter like that, yes.
25         Q.   And you don't know what the other cases
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7919

1   were about, do you?

2        A.   I have an idea, but I can't say for sure.

3        Q.   Right.   Isn't that something that you

4   would want to know, as part of your investigation?

5        A.   Yes, it is.

6             MS. BHALLA:   Thank you, Your Honor.   I

7   pass the witness.

8             THE COURT:   Thank you, Ms. Bhalla.

9             Ms. Jacks, do you have direct examination

10  of Mr. Acee?

11            MS. JACKS:   I do.

12            THE COURT:   Ms. Jacks.

13                    DIRECT EXAMINATION

14  BY MS. JACKS:

15       Q.   So, Agent Acee, I have a number of topics

16  I want to talk to you about.   I'm just going to try

17  to direct you so that you can follow.   I can't say

18  they're organized in any logical fashion.

19            So I want to start asking you just a

20  couple of questions about Ronald Sanchez.   You

21  actually sat down and spoke with Ronald Sanchez?

22       A.   I have on two occasions.

23       Q.   And what is his relation to Daniel

24  Sanchez?

25       A.   His brother.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.   Is he the older brother?

2     A.   I don't recall.

3     Q.   Is Ronald Sanchez a validated or suspected

4  member of SNM?

5     A.   He's not validated.

6     Q.   And was Ronald Sanchez living in blue pod

7  at the time of the Molina homicide?

8     A.   Yes.

9     Q.   You were asked some questions by the

10 Government in their case about the crime that Javier

11 Molina had committed, that this paperwork was

12 supposedly related to.  Do you recall those

13 questions?

14    A.   Yes.

15    Q.   And I think, if my notes are right, you

16 said that the crime was a strong-armed robbery?

17    A.   Yes.

18    Q.   Okay.  That's terms that Government

19 witnesses have used as well, right?  Strong-armed

20 robbery?

21    A.   I'm not sure.  I've heard them describe it

22 as a robbery or a purse-snatching.

23    Q.   Can you tell us, in your mind, anyway,

24 what is a strong-armed robbery?

25    A.   It's the taking of property from a person

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                            (505) 843-9494
FAX (505) 820-6349                                   FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1  by force or fear.  I use the term "strong-armed"

2  from my law enforcement understanding, that it was

3  without a weapon, so just through intimidation or

4  physical force.

5       Q.   Right.  So, like -- I think the key is no

6  weapon; just the force necessary to take the

7  property.

8       A.   Yes, ma'am.

9       Q.   And the typical or classic strong-armed

10 robbery is somebody pulls a woman's purse off of her

11 shoulder as she's walking down the street?

12      A.   Yes.

13      Q.   And is that the crime that Javier Molina

14 was -- is that the crime Javier Molina committed

15 that was the subject of the paperwork?

16      A.   No.

17      Q.   What was the crime?  Because I thought

18 that's what you testified to, that the paperwork was

19 regarding a strong-armed robbery that Mr. Molina had

20 participated in.

21      A.   Well, the first part of that is correct.

22 The crime being investigated by the Las Cruces

23 police department was a robbery, which I described

24 as a strong-armed robbery.  Molina, I don't believe,

25 is the one that took the purse.  I believe his



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7922

1   vehicle was used and he was at the scene.

2       Q.   So your recollection is that he aided and

3   abetted that crime?

4       A.   Yes, ma'am.

5       Q.   Now, that's based on a review of some

6   police reports or something?

7       A.   Yes.

8       Q.   Have you looked at any court documents

9   regarding Javier Molina?

10      A.   I don't believe I have.

11           MS. JACKS:  Your Honor, I have a Grand

12  Jury indictment for Javier Molina regarding a

13  robbery that took place on July 28, 2009.  May I

14  approach the witness?

15           THE COURT:  You may.

16           MS. JACKS:  Why don't we mark this defense

17  next in order, F as in Frank, Z as in zebra.

18           Your Honor, I just conferred with the

19  Government.  I don't believe there is an objection.

20  I move to admit this Exhibit FZ.

21           THE COURT:  Any objection, Mr. Castellano?

22           MR. CASTELLANO:  No objection.  I just ask

23  that the personal information be redacted.  I think

24  there's a date of birth and a Social Security

25  number.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          MS. JACKS:  Correct.  Page 2 has some
 2  personal information regarding Mr. Molina, and I'll
 3  redact that after my examination, and I won't be
 4  showing that to the jury.
 5          THE COURT:  All right.  Anybody else have
 6  any objection?  Not hearing or seeing anything,
 7  Defendants' Exhibit FZ will be admitted into
 8  evidence.
 9          (Defendants' Exhibit FZ admitted.)
10  BY MS. JACKS:
11      Q.   Agent Acee, this is a court document, an
12  indictment of Mr. Molina for robbery on July 28,
13  2009.  Do you see that?
14      A.   Yes, ma'am.
15      Q.   And this doesn't charge a strong-armed
16  robbery, does it?
17      A.   No.
18      Q.   What kind of robbery does it charge?
19      A.   Armed robbery with a firearm.
20      Q.   And I think you testified to the jury, or
21  told the jury when the Government asked you
22  questions, that in connection with the case that
23  this paperwork was supposedly on, that the object of
24  the theft was a purse; is that right?
25      A.   I said that I thought it was, yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Do you know?

 2        A.    I don't.

 3        Q.    And, in fact, the object of the armed

 4   robbery was a deposit bag, a business deposit bag

 5   that had the bank deposits for the day in it, wasn't

 6   it?

 7        A.    Wasn't that in the purse?  I thought

 8   that's how I remembered reading it.  But yes.

 9        Q.    A woman leaving World Finance with the

10   day's deposits was robbed of the bank bag?

11        A.    Of the bank bag which I think was in her

12   purse.

13        Q.    So when Government witnesses have used the

14   term "strong-armed robbery" and said that the

15   paperwork was regarding a strong-armed robbery,

16   that's not consistent with the robbery that Mr.

17   Molina was convicted of, is it?

18        A.    I'm the only one, I think, that I've heard

19   say "strong-armed robbery."  But a strong-armed

20   robbery is not the same as a robbery with a firearm.

21        Q.    And Mr. Molina was convicted of a robbery

22   with a firearm?

23        A.    That, I'm not sure of.

24        Q.    Well, as part of your investigation did

25   you examine any court documents to see?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   No.  I just read Javier Molina's
 2   statements and the reports, the police reports.  I
 3   didn't track his case through the court system.
 4        Q.   Well, you'll agree that the exhibit I just
 5   showed you shows that he was indicted by the Grand
 6   Jury for robbery with a firearm?
 7        A.   I agree with that.
 8        Q.   And he subsequently ended up in New Mexico
 9   State Prison?
10        A.   Yes.
11        Q.   Now, you were asked some questions, when
12   the Government was questioning you at the end of
13   their case, about the process of interviewing
14   Government witnesses?
15        A.   Yes.
16        Q.   And I think you talked about how you -- I
17   think the term you used was that you "laser focused"
18   on the events as the trial got closer?
19        A.   I think I said that the Assistant U.S.
20   Attorneys laser focused, yes.
21        Q.   But you would agree with me that, first of
22   all, when you interview somebody that's a potential
23   government witness, one of the things you want to do
24   is document what they knew and when they knew it?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7926

```
 1        Q.   And you want to get as much information as
 2   possible out of them before corrupting influences
 3   could affect their testimony?
 4        A.   I want to get as much information out of
 5   them.
 6        Q.   And when you sit down with these
 7   witnesses, you actually block out a large portion of
 8   the day so that you can go through, in an unhurried
 9   fashion, as many questions that you have about what
10   you think it is they know?
11        A.   That's ideal.  That's not always possible.
12        Q.   But you've done that in this case?
13        A.   In some cases we were able to do that,
14   yes.
15        Q.   And one of the things that you actually
16   used when you questioned potential Government
17   witnesses, you had a list of 213 questions, didn't
18   you?
19        A.   My questionnaire, yes.
20        Q.   And you used that questionnaire when you
21   talked to the witnesses, to try to cover every topic
22   that you thought was important when you debriefed a
23   witness?
24        A.   Yes.
25        Q.   And some of those questions include
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  question 107:  Did Daniel Sanchez ever talk to you

2  about the Molina homicide; and if so, what did he

3  say?

4       A.   That was one of the questions.

5       Q.   So that's one of the questions that you

6  regularly asked a potential government witness when

7  you sat down with them to debrief them?

8       A.   Yes.

9       Q.   And question 142:  Do you have any

10 knowledge of Daniel Sanchez committing or planning

11 any assaults or murders; and if so, provide details?

12      A.   Yes.

13      Q.   And question 146:  What role did Daniel

14 Sanchez play in the murder of Javier Molina?

15      A.   Yes.

16      Q.   And finally, question 213:  Do you have

17 any additional information that you think FBI case

18 agents should be aware of?

19      A.   Yes.

20      Q.   So the bottom line is, when you sit down

21 with a potential Government witness to try to find

22 out what they know, you approach those interviews in

23 a methodical and organized manner?

24      A.   Try to.

25      Q.   And you try to cover all the topics that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   might be relevant to the case, in particular this

 2   case that you were investigating?

 3        A.   Yes.

 4        Q.   After you speak to the witness, you

 5   prepare what's called an FBI-302, a report of the

 6   interview?

 7        A.   Yes.

 8        Q.   When you make those reports, do you try to

 9   include everything that's significant that the

10   witness says about the offense that you're

11   investigating?

12        A.   Yes.

13        Q.   And part of the reason -- part of the

14   reason for that is to document, officially document

15   everything of significance that a witness told you

16   at a particular point in time?

17        A.   Yes.

18        Q.   So that if later a defense lawyer says,

19   "Wait a second, he never said that," you can prove

20   that in fact he did?

21        A.   Yes.

22        Q.   All right.  I want to move to some topics

23   or some discussions that you had with some of the

24   Government witnesses and just ask you some

25   particular questions that focus on statements they
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   made at trial that were perhaps inconsistent with
2   what I'm asking you.  Okay?  And the first witness I
3   want to talk about is David Calbert.  Okay?
4        A.   Okay.
5        Q.   And Mr. Calbert is somebody that told --
6   that claimed that he received paperwork from Cheech
7   and ultimately passed that to Lupe Urquizo?
8        A.   Yes.
9        Q.   And this was the paperwork that he claimed
10  had something to do with Javier Molina being an
11  informant or providing information to law
12  enforcement?
13       A.   Correct.
14       Q.   Now, when you first interviewed Mr.
15  Calbert, was that on August 22nd of 2017?
16       A.   I don't remember.
17       Q.   All right.  You don't have the 302 up
18  there, do you?
19       A.   No, ma'am.
20       Q.   Let me get the document.
21            MS. JACKS:  Your Honor, I have a 302 dated
22  August 22, 2017, Bates stamped 41860, regarding an
23  interview with David Calbert.  May I approach the
24  witness?
25            THE COURT:  You may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  BY MS. JACKS:
 2       Q.   Agent Acee, is that the report of your
 3  August 22, 2017, interview with David Calbert?
 4       A.   Yes, it is.
 5       Q.   And do you think if you reviewed it, that
 6  might refresh your recollection as to whether that
 7  was your first interview with Mr. Calbert?
 8       A.   Yes, ma'am.
 9       Q.   Just let me know when you're done and
10  ignore my writing on there.
11       A.   Agent Neale wrote the report, but I think
12  this is -- I don't think this is the first
13  interview.
14       Q.   You don't?
15       A.   I think my 302 was the first one.
16       Q.   Let me ask you this:  Was the first time
17  that you spoke with Mr. Calbert the day that you
18  brought him down to the FBI office in Albuquerque
19  and allowed him to meet with Lupe Urquizo?
20       A.   Yes, I think that was the first time.
21       Q.   And if Lupe Urquizo and David Calbert were
22  both interviewed on August 22, 2017, would that have
23  been the first time that you met with David Calbert?
24       A.   Yes.
25       Q.   And when you talked to David Calbert after
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    that meeting with Lupe Urquizo, did you ask him some

 2    questions about this paperwork he claimed that he

 3    provided to Urquizo?  Do you need to refresh your

 4    memory with the report?

 5         A.    Yes, please.

 6         Q.    Go ahead.

 7         A.    Thank you.  Yes, we did ask him questions

 8    about that.

 9         Q.    And Mr. Calbert told you that this

10    paperwork he claimed to have gotten was one single

11    page, didn't he?

12         A.    Yes.

13         Q.    And you had a chance to talk with Mr.

14    Calbert again on September 28, 2017, when he came to

15    court to plead guilty, right?

16         A.    Yes.

17         Q.    And he didn't change his story about the

18    paperwork on that day, did he?

19         A.    No.

20         Q.    And you had another chance to talk to him

21    on January 12, 2018, in preparation for his

22    testimony here at trial, right?

23         A.    That occurred.  I just don't recall if I

24    was there.

25         Q.    Do you think if you saw the 302 that you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  prepared in connection with that interview that

2  might refresh your memory?

3       A.   Yes.

4       Q.   Actually, to be fair, there's two 302s

5  from that day, so I'll show you both.  One is

6  authored by you, and one appears to be authored by

7  Ms. Stemo.

8            MS. JACKS:  Your Honor, may I approach the

9  witness?  I have two 302s, Bates stamped 51471 and

10 51474.

11            THE COURT:  You may.

12            MR. CASTELLANO:  I have no objection to

13 her asking questions about his report, but Agent

14 Stemo's report would be hearsay.

15            MS. JACKS:  I don't intend to ask him

16 questions about Agent Stemo's report.

17 BY MS. JACKS:

18       A.   Thank you.

19       Q.   So does that refresh your memory, Agent

20 Acee?

21       A.   Yes.

22       Q.   And did you participate in a pretrial

23 interview with Mr. Calbert on January 12, 2018?

24       A.   Yes.

25       Q.   And Mr. Calbert didn't change his story

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7933

```
1   about the paperwork during the course of that
2   interview, did he?
3        A.   No.
4        Q.   Were you here at trial on February 5th of
5   2018, when Mr. Calbert testified?
6        A.   Yes.
7        Q.   And during his trial testimony, he
8   testified about this paperwork he claimed to have
9   seen, and he said for the first time it was two
10  pages, right?
11       A.   I believe so.
12       Q.   So that was inconsistent with all of his
13  prior statements to law enforcement?
14       A.   Yes.
15       Q.   Now, I want to ask you some questions on
16  the same topic, but about Lupe Urquizo.
17       A.   Okay.
18       Q.   And Lupe Urquizo -- you were here for his
19  trial testimony, right?
20       A.   Yes.
21       Q.   And Mr. Urquizo testified on February 6th
22  of 2018 that the paperwork that he claims to have
23  gotten from Mr. Calbert was one page?
24       A.   I'd have to take your representation.  I
25  don't recall.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   You don't recall what he said about that?

2    A.   No.

3    Q.   But previously Mr. Urquizo had told you

4 that the paperwork was in fact two pages, right?

5    A.   I do recall that, yes.

6    Q.   And that was what he told you during his

7 first interview on March 6, 2017?

8    A.   Yes.  That was not my first time talking

9 to him, but he did say that on that date.

10   Q.   On March 6, 2017, he told you the

11 paperwork that he claims to have gotten was two

12 sheets of paper?

13   A.   Yes.

14   Q.   And he very specifically said it was a

15 police report?

16   A.   I believe so.

17   Q.   And then after that, Mr. Urquizo was

18 interviewed on August 22, 2017?

19   A.   Yes.

20   Q.   January 3, 2018?

21   A.   Yes.

22   Q.   January 22, 2018?

23   A.   Yes.

24   Q.   He came to court and you had some sort of

25 contact with him when he pled guilty on January 26,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   2018?

2        A.   I don't know if I was at his plea, but he

3   did come to court, yes.

4        Q.   And then he had some sort of contact with

5   the STIU at the Penitentiary of New Mexico on

6   February 2nd of 2018 before he came down to testify;

7   is that right?

8        A.   Yes.

9        Q.   And during all those interviews, he never

10  changed his story that the paperwork was two pages,

11  did he?

12       A.   I don't believe so.

13       Q.   So the first time he said the paperwork

14  was one page was here in court on February 6th?

15       A.   If he said that on February 6th, then yes.

16       Q.   That's right.  You don't remember what he

17  testified to in court, right?

18       A.   Correct.

19       Q.   So if I'm understanding the situation

20  correctly, David Calbert initially said the

21  paperwork was one page, but then changed it to two

22  pages during his testimony?

23       A.   Yes.

24       Q.   And Lupe Urquizo originally said the

25  paperwork was two pages, but changed it to one page

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

 1   during his testimony?

 2        A.   If that's what he testified to, then yes.

 3        Q.   And what sort of contact did Mr. Calbert

 4   have with Mr. Urquizo just prior to their testimony

 5   in this trial?

 6        A.   I'm not sure.

 7        Q.   They were housed together, weren't they?

 8        A.   Yes.

 9        Q.   And have you asked either Mr. Calbert or

10   Mr. Urquizo how it was that they both changed their

11   testimony?

12        A.   I haven't talked to either man since they

13   testified.

14        Q.   Don't you think it's kind of odd that one

15   of them -- well, that Calbert changed his testimony

16   to match what Urquizo previously said, and that

17   Urquizo changed his testimony to match what Calbert

18   previously said?

19        A.   No.

20        Q.   With respect to Mr. Urquizo, he testified

21   here in court, I believe, and these are my notes,

22   that when you first met with him, that he felt that

23   he was facing the death penalty?

24        A.   I'm sorry?  Which man said that?

25        Q.   Lupe Urquizo.  So I guess that would have

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  been -- you met with him for the first time in

2  February of 2017?

3      A.   I believe so.

4      Q.   And during that first meeting, did you

5  threaten Mr. Urquizo with the death penalty?

6      A.   No.

7      Q.   Did you tell him that if he didn't become

8  a government witness, he was going to become a

9  defendant and face the federal death penalty?

10     A.   Part of that is true, but I didn't mention

11 the death penalty.

12     Q.   What part is true?

13     A.   I have made statements to these guys, and

14 I think Urquizo was one of them, that:  You're

15 either a cooperator or you face prosecution if you

16 stay with the S.

17     Q.   So essentially, either you become a

18 witness or you're going to become a defendant?

19     A.   Essentially.

20     Q.   But if Mr. Urquizo said to anybody or

21 testified that you threatened him with the death

22 penalty, that's a lie?

23     A.   Yes.  I didn't do that.

24     Q.   And Mr. Urquizo has also made statements

25 that in that first encounter with you, you

SANTA FE OFFICE                                      MAIN OFFICE
119 East Marcy, Suite 110                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                      (505) 843-9494
FAX (505) 820-6349                                  FAX (505) 843-9492
                                                    1-800-669-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
                                        e-mail: info@litsupport.com

```
1   threatened to prosecute his brother.
2        A.   No, I did not do that.
3        Q.   So if Mr. Urquizo said that, that's also a
4   lie?
5             THE COURT:  Well, that's for the jury to
6   determine.
7        Q.   Did you threaten Lupe Urquizo's brother
8   with prosecution?
9        A.   No.
10       Q.   Okay.  And Lupe Urquizo does have a
11  brother, right?
12       A.   Yes.  He has -- I think he has a couple
13  brothers.
14       Q.   Did you threaten any of them with
15  prosecution?
16       A.   No.
17       Q.   All right.  I want to move on to just a
18  few questions about Mario Rodriguez.  First of all,
19  did Mario Rodriguez get convicted of raping a young
20  man at the Grant County jail?
21       A.   I don't think he was convicted of rape.
22       Q.   Well, he was convicted of some sort of
23  criminal sexual penetration, wasn't he?
24       A.   Yes.
25       Q.   And that involved a young man at the Grant
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   County jail?
 2        A.   Yes.
 3        Q.   And the offense -- does the offense that
 4   Mr. Rodriguez -- was the offense that he was
 5   convicted of an offense that would require him to
 6   register as a sex offender if and when he's released
 7   from prison?
 8        A.   I'm not completely familiar with New
 9   Mexico State law, but I think it would.
10        Q.   Okay.  Did you talk to Mr. Rodriguez about
11   it?
12        A.   That incident?
13        Q.   Well, I'm more meaning about the
14   registration requirement.
15        A.   I think I brought it up before.
16        Q.   And Mr. Rodriguez, certainly in your
17   discussions, knew that he had to register as a sex
18   offender, right?
19        A.   I'm not sure.
20        Q.   Well, didn't he discuss it with you in the
21   sense that he was concerned and upset about that
22   registration requirement?
23        A.   Yes.
24        Q.   It was something he didn't want to have to
25   do, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    I agree with you.
 2        Q.    And Mr. Rodriguez has claimed at different
 3   points in time that the person that he assaulted in
 4   the Grant County jail was a child molester?
 5        A.    Yes.
 6        Q.    He has said that, right?
 7        A.    I have heard that repeatedly, but I don't
 8   recall if he specifically told me that.
 9        Q.    Okay.
10        A.    That's rumor.
11        Q.    But the fact is, that's not true?  The
12   person he assaulted wasn't accused of child
13   molestation, was he?
14        A.    Not based on that current incarceration,
15   no.
16        Q.    He was in there for driving while
17   intoxicated?
18        A.    Yes.
19              MS. JACKS:  Can we have F as in Frank, C
20   as in Charlie?  May I have the hard copy of the
21   exhibit, Ms. Standridge?
22        Q.    It's my mistake, Agent Acee.  Exhibit FC
23   was shown.  All right.  I have what's been marked as
24   Exhibit FC, and this is a letter that Mr. Rodriguez
25   wrote for somebody to give to Mr. Sanchez.  Do you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   recall that?

 2        A.   Yes.

 3        Q.   And this happened, and he brought this

 4   letter to the meeting that you had with Mr.

 5   Rodriguez and Ronald Sanchez in November of 2017,

 6   correct?

 7        A.   Yes.

 8        Q.   And I just want to show you -- I just want

 9   to direct you to the PS and ask you some questions.

10   Well, before I do that, let me just ask you a few

11   questions.  In dealing with Mr. Rodriguez as a

12   government witness, did you tell Mr. Rodriguez that

13   if he became a government witness, that the

14   Government would be able to give him a new identity?

15        A.   No, not in those terms.

16        Q.   Well, did you say -- in what terms did you

17   tell him something like that?

18        A.   When I initially met him, I discussed the

19   various options, one of which was, I talked about

20   wit sec before, or witness security, and that

21   there -- in my presentation of that, I talk about

22   relocation and a new identity.  I certainly don't

23   promise that, and I make it clear that the FBI

24   doesn't run that program.

25        Q.   But you did talk to Mr. Rodriguez about
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  the program and about the fact that if he got the

2  program, he could get a new identity?

3        A.    That it was a possibility, yes.

4        Q.    And did you also tell him that this new

5  identity would come with a clean criminal record?

6        A.    No, because that's not true.

7        Q.    So if he thought that, he didn't think it

8  because of something that you said?

9        A.    I certainly hope not, because I wouldn't

10 have represented things that aren't true.

11       Q.    Well, I want to just ask you a couple of

12 questions about Eric Duran.  We've heard a lot about

13 Mr. Duran.  And he's a government witness, right?

14       A.    Yes.

15       Q.    He is a government witness that actually

16 got out of jail early because of his cooperation

17 with the Government?

18       A.    He got out of prison early because

19 Corrections gave him a lump sum, yes.

20       Q.    And he got out of prison, and he got a job

21 working for the FBI up in Portland?

22       A.    Yes.

23       Q.    And he was doing that until, I guess, he

24 got arrested by Police Officer Snodgrass who

25 testified yesterday?

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                              Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 820-6349                                                 FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    A.   Correct.

2    Q.   Now, Mr. Duran, as part of his

3  participation in this case as a government witness,

4  did he get a new identity?

5    A.   No.

6    Q.   Did he get a clean criminal history?

7    A.   No.

8    Q.   Do you know whether he bragged about

9  getting a new identity or a clean criminal history

10  to Mr. Rodriguez?

11    A.   I don't know about that.

12    Q.   Okay.  I want to show you this letter, FC,

13  and I'm just going to direct your attention to the

14  last page, the PS.

15    A.   Okay.

16    Q.   Agent Acee, this is the letter that Mr.

17  Rodriguez wrote for you or for somebody to provide

18  to Mr. Sanchez, right?

19    A.   Yes.

20    Q.   And tell us what the PS on that letter

21  says.

22    A.   "PS.  A new identity record means you guys

23  can go hunting" -- I think there is a smiley face

24  there -- "again legally.  Think of a real life and

25  all its perks and pleasures.  Serio, happy birthday,

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 820-6349                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                          e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  Dan."

2      Q.   And when Mr. Rodriguez is referring to you

3  guys, he's talking about Daniel and Daniel's

4  brother, Ronald, right?

5      A.   I think so.

6      Q.   And he's telling them that if he became a

7  government witness, that both he and his brother

8  could get a new identity and a clean criminal

9  record?

10     A.   Well, he says, "A new identity record

11 means you guys can go hunting again."

12     Q.   Right.  Because if someone is a felon,

13 they're not supposed to possess a firearm, right?

14     A.   Right.

15     Q.   So if they get a clean criminal record,

16 then they could again legally possess a firearm?

17     A.   Correct.

18     Q.   And that's what Mr. Rodriguez is saying to

19 Mr. Sanchez in the PS of that letter?

20     A.   I think that's what he meant, yes.

21     Q.   That becoming a government witness comes

22 with a new identity and a clean record?

23     A.   Yes.

24     Q.   I have, I think, just one question

25 regarding your interactions with Jerry Armenta.  And

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.

PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  Mr. Armenta testified in this trial on February 12th
 2  of 2018?
 3       A.   Yes.
 4       Q.   Were you present during that testimony?
 5       A.   I was.
 6       Q.   And did you hear Mr. Armenta -- he was
 7  asked whether Timothy Martinez -- he told the story
 8  about the passing of the paperwork, right, between
 9  the pods, between yellow pod and blue pod?
10       A.   I believe so.
11       Q.   And in the trial, Mr. Armenta testified
12  that he never said Timothy Martinez was with Mario
13  Rodriguez when this paperwork was allegedly passed,
14  right?
15       A.   I'm sorry.  I just don't remember --
16       Q.   That's okay.
17       A.   -- all his testimony.
18       Q.   Well, in the past when you interviewed Mr.
19  Armenta about that story, he told you that it was
20  Timothy Martinez and Mario Rodriguez that received
21  this paperwork that was supposedly passed under the
22  door, right?
23       A.   I believe.
24       Q.   And he told you that on September 17th of
25  2015, right?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1        A.    Yes.  I was going to say, it's been a long
 2   time since I interviewed him.
 3        Q.    When you say you believe, do you want to
 4   look at your 302 just to make sure, so that you're
 5   accurate in this trial?
 6        A.    If you're going to ask me more questions
 7   about it, yes.
 8        Q.    I'm just going to ask you that one
 9   question, but I'm happy to show you the 302.
10        A.    I do believe that's what he told me.
11        Q.    Let's make sure.
12             MS. JACKS:  Your Honor, I have a 302 dated
13   September 17, 2015, for an interview with Jerry
14   Armenta.  It's Bates stamped 2249 and 2250.  May I
15   approach the witness?
16             THE COURT:  You may.
17   BY MS. JACKS:
18        Q.    Agent Acee, I'll just ask you to refresh
19   your memory with that report and see if you can't
20   answer the question with more certainty?
21        A.    Could you repeat the question?
22        Q.    Yes.  The question is whether he told you
23   during that interview that Timothy Martinez was with
24   Mario Rodriguez when this paperwork was supposedly
25   passed under the door between yellow pod and blue
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   pod?

 2        A.   Thank you.

 3        Q.   And can you answer the question?

 4        A.   Yes, he puts Timothy Martinez, Red, there

 5   with other people at that time.

 6        Q.   Okay.  So if he testified otherwise during

 7   the trial, that's inconsistent with his trial

 8   testimony, right?

 9        A.   It would be inconsistent, yes.

10        Q.   Sorry.  My files are a mess.  Sorry.  I

11   wanted to ask you some questions about Billy

12   Cordova.  I'm just trying to locate that file.  Let

13   me ask you the question and see if I actually have

14   to find the file.

15             Did you participate in an interview with

16   Billy Cordova on December 15, 2017?

17        A.   Yes.

18        Q.   And during that interview, did he tell you

19   for the first time that -- thank you, Richard --

20   that while living in yellow pod in March 2014, he

21   had a shank, and about a week before Urquizo and

22   Varela came to Southern New Mexico Correctional

23   Facility, that Daniel Sanchez asked Cordova for his

24   shank?

25        A.   Yes, I remember that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   So he told you in that interview that Mr.

2 Sanchez asked him for a shank?

3    A.   Yes.

4    Q.   But he said the timing of that was a week

5 before Urquizo got to Southern New Mexico

6 Correctional Facility?

7    A.   I assume you're reading from my 302.

8    Q.   Don't assume.  I have it.  I found it.

9 Mr. Jewkes found it.

10         MS. JACKS:  So, Your Honor, I have a 302

11 dated December 15, 2017, Bates stamped 41728.  It's

12 three pages.  May I approach?

13         THE COURT:  You may.

14 BY MS. JACKS:

15    Q.   Agent Acee, if you review the 302 from

16 that interview, do you think that would refresh your

17 memory as to what Mr. Cordova specifically told you

18 on that date?

19    A.   Yes.  Thank you.

20    Q.   So the question, I think, was about the

21 timing.  So on December 15th of 2017, what did Mr.

22 Cordova tell you about the timing of Mr. Sanchez

23 supposedly asking him for a shank?

24    A.   He said it was about a week before Urquizo

25 and Varela arrived.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   So if he testified in trial that that

2  happened on March 6th or 7th, 2014, that's

3  inconsistent with what he previously told you?

4    A.   It's a little bit off, yes.  He said about

5  a week.

6    Q.   And he also said -- if it was the week

7  prior, it's before any sort of paperwork supposedly

8  came down regarding Javier Molina, right?

9    A.   Yes.

10    Q.   Now, Agent Acee, when you're trained as an

11  FBI agent, are you trained at all about the

12  circumstances or how it is that you should interview

13  witnesses?

14    A.   Yes.

15    Q.   I mean, let me ask you, when you interview

16  a witness, do you interview that witness alone and

17  outside the presence of other witnesses?

18    A.   Generally not.  Excuse me.  You said with

19  other witnesses?

20    Q.   Yeah.  I mean, would you interview -- if

21  you're investigating a crime, and you have, say,

22  five or six witnesses, what's the preferred

23  procedure in interviewing those five or six

24  witnesses?

25    A.   Interviewing them one at a time.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And why is that?
 2        A.   So that we can get an independent
 3   assessment of their recollection of the event.
 4        Q.   And there is a danger, isn't there,
 5   when -- I mean, even if you interview honest
 6   credible people, if you interview them in a group,
 7   sometimes people adopt portions of other people's
 8   statements, right?
 9        A.   That's a possibility, yes.
10        Q.   Or later, think that they observed or
11   heard or saw something that another witness actually
12   said they heard or saw?
13        A.   That could happen, as well.
14        Q.   I mean, it's a natural occurrence even if
15   somebody is not actively trying to provide false
16   evidence?
17        A.   I agree with you.
18        Q.   Okay.  And then there is also the risk
19   that if somebody was affirmatively trying to
20   provide -- if somebody was affirmatively trying to
21   create a story or provide false evidence, that
22   interviewing them in a group would just give them
23   more ammunition, right?
24        A.   Yes.
25        Q.   So the preferred procedure of every law
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    enforcement officer is to separate witnesses and

2    interview them independently, isn't it?

3         A.    That's my preferred procedure, yes.

4         Q.    Right.  And in this case, where you're

5    investigating a homicide that occurred in a prison,

6    you have control over the conditions of when and how

7    you interview witnesses?

8         A.    I usually do.

9         Q.    I mean, it's not like you're responding to

10   an emergency where there might be 15 people that

11   need to be immediately interviewed or they might

12   disappear?

13        A.    Are we talking about the Molina homicide?

14        Q.    Correct.

15        A.    Well, we're going back to me responding to

16   that incident, which I didn't do.  I agree with you

17   that they're inmates and we could certainly control

18   how they were interviewed.

19        Q.    And you've done that in this case?

20        A.    I've interviewed inmates in this case,

21   yes.

22        Q.    Right.  And you control the circumstances

23   under which those interviews occur?

24        A.    As much as I can.

25        Q.    And on December 2nd of 2016, did you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   conduct a group interview of four witnesses?

 2        A.   I'm not sure.

 3        Q.   Let me see if I can refresh your memory.

 4   Do you recall interviewing Benjamin Clark, Jerry

 5   Armenta, Robert Martinez, and Roy Paul Martinez

 6   together in a group setting?

 7        A.   Vaguely.

 8        Q.   And the topic of that interview was the

 9   Molina homicide, right?

10        A.   I don't think so.

11        Q.   You don't think so?

12        A.   I'm not sure.

13        Q.   If you saw a 302 that you prepared

14   regarding that group interview, do you think that

15   might refresh your memory --

16        A.   Please.

17        Q.   -- about who was there and about the topic

18   of the conversation?

19        A.   It would.

20        MS. JACKS:  Your Honor, I have a 302 dated

21   December 2nd of 2016, Bates stamped 2163.  May I

22   approach the witness?

23        THE COURT:  You may.

24   BY MS. JACKS:

25        A.   Thank you.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Agent Acee, after reviewing the report,

2  does that refresh your memory about what happened on

3  December 2nd of 2016?

4      A.   Yes.

5      Q.   And can you tell us, who did you interview

6  on that day?

7      A.   Well, the numbers are blocked out.  I see

8  that you've written the names in, and I think that

9  could be accurate.

10     Q.   When the Government has produced discovery

11 to the defense in this matter, they block a lot of

12 stuff out, right?

13     A.   Yes.

14     Q.   That's called redactions?

15     A.   Yes.

16     Q.   And that document that I provided you,

17 that's a redacted document?

18     A.   It is.

19     Q.   So it shows that you interviewed people

20 together on December 2nd of 2016, right?

21     A.   No.

22     Q.   Oh, it doesn't show that?

23     A.   No.

24     Q.   Did you interview them separately?

25     A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1     Q.   And then you just prepared one 302 with
 2 all four people's names and statements in there?
 3     A.   Correct.
 4     Q.   And what was the topic of the interviews?
 5     A.   One question:  Who called the green light
 6 on Javier Molina?
 7          Excuse me.  Two questions:  Who called the
 8 green light on Javier Molina?  And when was it
 9 called?
10     Q.   All right.  So it was regarding the Molina
11 homicide?
12     A.   Yes.
13     Q.   Now, is there anything in that report that
14 indicates that the witnesses were interviewed
15 separately?
16     A.   No.
17     Q.   And where did that interview or those
18 interviews take place on December 2, 2016?
19     A.   L pod at PNM North facility.
20     Q.   So in a prison setting in the pod?
21     A.   Yes.
22     Q.   And did you actually enter the pod and
23 speak with the witnesses while they were in their
24 cells?
25     A.   I entered the pod, and then I ask which

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   ones I wanted to speak to, to come down, and I sat

2   at the table downstairs.

3        Q.   So you sat at the table, and then you had

4   the witnesses come out one by one?

5        A.   Yes.

6        Q.   And you spoke to the witnesses at the

7   table in the housing pod?

8        A.   Right.

9        Q.   And do you know -- so in terms of being

10  separate, everybody was in the same room, but you

11  interviewed them one at a time?

12       A.   Well, they're in the same pod.  It's a

13  large pod.  The other men were in their cells.

14       Q.   Well, it's a pod of what?  Twelve cells,

15  right?

16       A.   Yes, but this was the cooperator pod, L

17  pod, and they weren't full at that time.

18       Q.   I mean the pod, itself, was a total of 12

19  cells, the physical structure?

20       A.   Yes, somewhere between 12 and 16 cells.  I

21  can't remember what it is at the North.  It seems a

22  little different?

23       Q.   It's half on the top and half on the

24  bottom, right?

25       A.   Yes.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                            Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 820-6349                                              FAX (505) 843-9492
                                                                  1-800-669-9492
                                                           e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   And prior to conducting the interviews in
 2   the pod, did you do any sort of test to see whether
 3   the conversation that you had at the table in the
 4   pod could be heard by people in the cells?
 5        A.   I didn't do any testing, but I don't
 6   believe it is.  I certainly wasn't shouting.
 7        Q.   We heard some testimony regarding -- I
 8   want to go back to some questions about Eric Duran,
 9   because we heard some testimony about Mr. Duran's
10   employment with the FBI up in Portland.
11        A.   Okay.
12        Q.   Do you recall that?
13        A.   Yes.
14        Q.   And I think that we also heard a little
15   bit of testimony about the fact that he was engaged
16   in some sort of undercover operation?
17        A.   Yes.
18        Q.   And what he was doing was, he was being
19   asked to buy drugs, right?
20        A.   Among the things he was being asked to do,
21   yes.
22        Q.   Okay.  Now, there were some questions
23   asked of Mr. Duran by one of the prosecutors about
24   this undercover operation, and you know a little bit
25   about it?  I'm not going to go into the operation,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1   but you know a little bit about it, right?
 2        A.   Yes.
 3        Q.   And you saw the Facebook post that
 4   Mr. Duran had made, I think Ms. Duncan questioned
 5   him about?
 6        A.   Yes.
 7        Q.   Okay.  Those don't have anything to do
 8   with his undercover work as an FBI informant, do
 9   they?
10        A.   I disagree.
11        Q.   Oh, you do?
12        A.   Yes.
13        Q.   So it's your position that the FBI had
14   Mr. Duran make those Facebook posts?
15        A.   I spoke to the agents and supervisor after
16   that hearing to find out, because I wasn't part of
17   that investigation.
18        Q.   Let me stop you right there.  Mr. Acee,
19   have you provided any sort of discovery reports to
20   the defense about that part of your investigation?
21        A.   No.  That's not my investigation.  I
22   just --
23        Q.   I mean about those interviews that you
24   made with respect to Mr. Duran's Facebook posts?
25        A.   I asked.  I inquired.  I didn't interview
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7958

```
 1   any other agents.
 2        Q.   My question is this:  Have you provided --
 3   since Mr. Duran's testimony, have you provided any
 4   information to the defendants about that aspect of
 5   your investigation?
 6        A.   No.
 7        Q.   I want to ask you some questions about
 8   this holiday party that was requested by several of
 9   the government witnesses.
10        A.   Okay.
11        Q.   And you recall when you were first -- I
12   think you were first shown the letter.  You were the
13   Government's first witness, right?
14        A.   Yes.
15        Q.   And during that testimony, I think you
16   were shown the letter that the government witnesses
17   had prepared and sent to the warden of the
18   Penitentiary of New Mexico?
19        A.   I was.
20        Q.   Right.  And do you recall what your
21   response was about that when being shown that letter
22   about that party?
23        A.   It was the first time I'd seen it.
24        Q.   The first time you'd seen the letter?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Do you recall what your response was about

2   the party?

3      A.   I was asked a lot of questions.  No.

4      Q.   Well, you acted like it was something you

5   didn't really want to participate in, right?

6      A.   Oh, that's correct, yes.

7      Q.   Was that true?

8      A.   That I didn't want to participate in it?

9      Q.   Yes.

10      A.   Yes.

11      Q.   Do you know an individual named Bob

12   Robinson from the New Mexico Department of

13   Corrections?

14      A.   Yes.

15      Q.   And did you talk to him about the letter

16   requesting the holiday party that was written by the

17   government witnesses?

18      A.   I'm not sure.

19           MS. JACKS:  Your Honor, I have an email

20   that Mr. Robinson prepared on Friday August 26,

21   2016, addressed to Warden Franco, Bates stamped

22   51433.  May I approach the witness?

23           THE COURT:  You may.

24           MS. JACKS:  Yeah, I guess I'd better mark

25   it.  I'm going to mark it defense next in order, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  that's going to be G as in giant, A as in apple.

 2  BY MS. JACKS:

 3      Q.   And Agent Acee, I'm going to show you this

 4  document to see if it refreshes your memory about

 5  conversations you had with Mr. Robinson about that

 6  party?

 7      A.   Thank you.  Okay.

 8      Q.   Does that refresh your memory?

 9      A.   Not really.

10      Q.   So you don't remember telling Mr. Robinson

11  that you thought the party was a good idea?

12      A.   No.

13      Q.   So is it your testimony that he's making

14  that up?

15      A.   No.

16      Q.   You might have told him that?

17      A.   I think I might have agreed to go.  I

18  don't believe I commented on whether or not it was a

19  good idea or not.

20          MS. JACKS:  Your Honor, I'd move to admit

21  Exhibit GA.

22          THE COURT:  Any objection, Mr. Castellano?

23          MR. CASTELLANO:  Yes, Your Honor.  It's

24  hearsay.

25          THE COURT:  Well, I do think it probably

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    is being offered for the truth, so I will sustain

2    the objection.

3    BY MS. JACKS:

4         Q.   Now, Agent Acee, you were asked a bunch of

5    questions, I think by both sides, about these

6    computer tablets that various people were given.  I

7    just have a few sort of follow-up questions about

8    that.  Okay?  First of all, were some of the

9    computer tablets compromised?

10        A.   Yes.

11        Q.   And they were actually reset, right?

12        A.   Yes.

13        Q.   And once they were reset, the individuals

14   that possessed the tablets could access the internet

15   and do all sorts of things they weren't supposed to

16   be able to do with them?

17        A.   Correct.

18        Q.   And that was a violation of this Court's

19   order about possessing the tablets?

20        A.   I'm sure it was.

21        Q.   And that happened -- those tablets were

22   seized once those individuals violated the court

23   order, right?

24        A.   Yes.

25        Q.   And I think you said that that happened

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7962

```
 1   sometime in April 2017?
 2        A.   That sounds right.
 3        Q.   And they were held -- they were seized by
 4   the United States Marshal Service?
 5        A.   I think under their authority.  They were
 6   technically seized by whatever facilities the guys
 7   were at.
 8        Q.   And then the facilities provided them to
 9   the Marshal Service?
10        A.   I think.
11        Q.   All right.  Well, I think you knew -- you
12   knew when the tablets were seized, right?  Or
13   shortly thereafter?
14        A.   Shortly thereafter, yes.  We had some
15   hearings about it, and I was at those.
16        Q.   So if the tablets were seized sometime in
17   April of 2017, you became aware they were seized in
18   April of 2017, right?
19        A.   Yes.
20        Q.   And the FBI has a forensic computer unit,
21   right?
22        A.   Yes.
23        Q.   And the FBI is certainly capable of doing
24   an analysis of those tablets and figuring out what
25   sort of nefarious things, purposes they were used
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    for, right?

2         A.   Yes.

3              THE COURT:  Ms. Jacks, would this be a

4    good time for us to take our morning break?

5              MS. JACKS:  Sure, that's fine.

6              THE COURT:  Let me remind the jury of a

7    few things.  We're clicking along and making some

8    transitions here, so I want to remind you of a few

9    things that are especially important.

10             Until the trial is completed, you're not

11   to discuss this case with anyone, whether it's

12   members of your family or people involved in the

13   trial or anyone else, and that includes your fellow

14   jurors.  If anyone approaches you, let me know about

15   it immediately.  Also, you must not read or listen

16   to any news reports of the trial.  Again, don't get

17   on the internet and do any research for purposes of

18   this case.

19             And finally, remember that you must not

20   talk about anything with any person who is involved

21   in the trial.  If you need to speak with me, simply

22   give a note to one of the court security officers or

23   Ms. Standridge.

24             You may hear these a little bit more

25   frequently today than we have for a number of weeks,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   but if I don't repeat them, do keep them in mind

2   each time we take a break.

3           All right.  We'll be in recess for about

4   15 minutes.

5           All rise.

6           (The jury left the courtroom.)

7           THE COURT:  All right.  We'll be in recess

8   for about 15 minutes.

9           (The Court stood in recess.)

10          THE COURT:  All right.  Let's go on the

11  record.

12          Let me talk a little bit about some jury

13  instructions.  I've been focusing on the defendants'

14  since theirs was filed first, their objections.  Did

15  the Government get a chance to look at the

16  defendants' objections and have comments on those?

17  I guess one thing -- I have tried to be very

18  careful, and I'm going back through and I'm trying

19  to be doubly careful in making some changes so that

20  I don't treat the defendants as a unit.  I don't

21  want to do that.  But at the same time, sort of our

22  tradition in the Tenth Circuit is to use names when

23  we can so that it's not quite as impersonal as just

24  always referring to the gentleman as a "defendant."

25  So I've picked and choose, and I'm doing more and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   more, going toward "defendant" to make sure that I

2   don't treat anybody as a unit.

3          What's the Government's position?  If the

4   defendants want to be called "defendant" or

5   "defendants" throughout, do you want me to just

6   change it to do what they're wanting?  Or do you

7   want me to kind of pick and choose, and we'll see

8   where we are at the end, to make sure I don't treat

9   the defendants as a unit?

10          What's your thoughts on that?

11          MR. CASTELLANO:  Your Honor, I did look at

12   the instructions last night, and I filed our

13   response.  And a few times I did comment on their

14   request.  Other times, I didn't because, frankly, I

15   was just indifferent about whether they were there

16   or not.  But I do agree that sometimes adding all

17   four names just kind of makes it wordy.  So I think

18   it would actually streamline the instructions to use

19   the term "defendant" or "defendants" throughout.

20   I'm fine with that.

21          There are a couple of instructions

22   specifically where I asked that the word "or" be

23   inserted.  That was on the aiding and abetting, and

24   I think conspiracy.  Because that required either of

25   them -- any of them conspire with someone else, not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   all four of them.  So the way it read, it read all
2   four had to agree with someone else, or had to have
3   aided and abet someone else.
4           So under those circumstances, I asked for
5   an "or" so that any one of them could conspire with
6   another or aid and abet another.
7           THE COURT:  Well, I guess my question is,
8   and maybe you answered it.  I think they just want
9   to eliminate names and just go with "defendant" and
10  "defendants."  Do you have any objection to that?
11          MR. CASTELLANO:  I don't, Your Honor.
12          THE COURT:  All right.  So I'll just go
13  that way.  It seems to me it's a little different
14  than what we're used to in the Tenth Circuit, and it
15  makes them a little more impersonal.  But if that's
16  what everybody wants, I'll just go with it.
17          Did you have any other comments?  Would
18  you be able to do this at some point, just take
19  their instruction, just say -- if you'd just write
20  beside it "no objection" or something just real
21  cryptic, it might help me sort of eliminate some
22  stuff.  If y'all don't care about some of this
23  stuff, I don't care either.  I just haven't had,
24  sometimes, the feedback from that red line copy that
25  they gave me on Monday morning.  I believe it was
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Monday morning.
 2           MR. CASTELLANO:  Right.  What I would say
 3   is, when I cared, I commented.  And generally when I
 4   didn't care, I did not comment.
 5           THE COURT:  So I can make their change
 6   unless I see something very substantive about it?
 7           MR. CASTELLANO:  I think so.  I'll try to
 8   look it over, Your Honor.
 9           THE COURT:  All right.  So if I hear you
10   don't care, I'm going to assume -- if I don't see
11   something in yours, you don't care.  And unless I
12   see something substantive, I just may go along with
13   the defendant and try to get these things to a
14   conclusion.
15           MR. CASTELLANO:  I think for the most
16   part, that's correct.  I may catch something, but
17   generally I would say yes.
18           THE COURT:  Okay.
19           MR. VILLA:  Your Honor, there are a couple
20   of places where we specifically said we wanted to
21   use names, like number 43.  But it's outlined in the
22   document we filed last night.
23           THE COURT:  Okay.
24           All rise.
25           (The jury entered the courtroom.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Everyone be
 2    seated.
 3              All right, Mr. Acee, I'll remind you,
 4    you're still under oath.
 5              Ms. Jacks, if you wish to continue your
 6    direct examination of Mr. Acee, you may do so.
 7    BY MS. JACKS:
 8         Q.   I forgot to make a note of exactly where I
 9    was.  Were we talking about the tablets?
10         A.   Yes.
11         Q.   We were talking about the fact that the
12    FBI has the capability to look at that, to download
13    the tablets and determine what the various
14    government witnesses did with them?
15         A.   Yes.
16         Q.   But you never made a request for the
17    tablets to be submitted to the FBI; is that right?
18         A.   I discussed it with the U.S. Attorney's
19    Office.
20         Q.   And then it was decided that you would not
21    make a request for the Court to release the tablets
22    to you, to send to the FBI?
23         A.   Are you asking if I made that decision?
24         Q.   No.  I'm just asking:  The decision was
25    made, correct?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

**BEAN & ASSOCIATES, Inc.**
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      A.    The decision was made.

 2      Q.    And the decision was a conscious one?  It

 3  wasn't like you forgot about the fact that the

 4  marshals had the tablets?

 5      A.    No.

 6      Q.    You consciously decided:  Let's not get

 7  the tablets; we're not going to send them to the FBI

 8  forensic lab?

 9      A.    I mean, that's what I wanted to do.

10      Q.    But it was decided that you wouldn't do

11  it, right?

12      A.    It was decided that I wouldn't write a

13  search warrant.

14      Q.    The tablets remained in the marshals'

15  custody until the defendants were able to get a

16  court order to release them so that they could

17  provide them to Mr. Bryan, right?

18      A.    I don't know who requested the court

19  order, but they were provided to Mr. Bryan.

20      Q.    And at the time that they were released

21  and provided to Mr. Bryan, they had been seized for

22  at least nine months?

23      A.    I believe so.

24      Q.    And I just want to follow up on a few

25  questions that Ms. Bhalla asked you this morning

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                            201 Third NW, Suite 1630
Santa Fe, NM 87501                                    Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 820-6349                                        FAX (505) 843-9492



1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  regarding the property that was seized by the FBI,

2  the Mario Rodriguez property.

3       A.   Yes.

4       Q.   That was seized by the FBI and remained in

5  the possession of, I guess, FBI Agent Sainato from

6  June 2017 until last Sunday?

7       A.   Correct.

8       Q.   And one of the things that she asked about

9  were the letters that were in Mario Rodriguez --

10 some of the letters that were in Mario Rodriguez's

11 property?

12      A.   Yes.

13      Q.   And specifically, she asked you about a

14 letter or letters that were written to Timothy

15 Martinez, another government witness?

16      A.   Yes.

17      Q.   And I think she -- first of all, those

18 letters that were written to Timothy Martinez were

19 found in the property of Mario Rodriguez?

20      A.   Yes.

21      Q.   And there was more than one?

22      A.   I saw three this morning.

23      Q.   And the letters specifically referenced

24 the fact that certain individuals' statements that

25 people had made, government witnesses had made,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   didn't match up with the discovery in the case?

2       A.   I saw one letter like that yesterday.

3       Q.   And so do you have any understanding about

4   why Mario Rodriguez had letters that were written to

5   Timothy Martinez that contained information about

6   people matching statements to discovery in this

7   case?

8       A.   You're asking if I know why?

9       Q.   Yes.

10      A.   I have some ideas, but I definitively

11  don't.

12      Q.   And you didn't question Mr. Rodriguez

13  about it, right?

14      A.   Since the discovery, no, I have not.

15      Q.   Right.  Because, I mean, you just became

16  aware of this on Sunday or Monday of this week,

17  right.

18      A.   On Sunday evening.

19      Q.   And those letters -- well, the defense

20  attorneys weren't permitted to question Mr.

21  Rodriguez about those Timothy Martinez letters

22  because we didn't have them when Mr. Rodriguez was

23  on the stand?

24      A.   The second part of your answer is correct,

25  yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1      Q.   And she also asked you some questions
 2 about the letters that Mr. Rodriguez had in his
 3 possession that were sent to courthouses to try to
 4 get court documents or police reports on cases?
 5      A.   I saw a letter addressed to the clerk here
 6 in Las Cruces.
 7      Q.   And in those letters, Mario Rodriguez
 8 falsely represented that he was trying to get the
 9 court materials because it affected his case?  Like
10 his appeal, I think he said?
11      A.   I have an idea what he was asking for, but
12 I can't say if he -- he may have had an appeal.
13 He's certainly been arrested a lot of times.
14      Q.   But the documents he was requesting had
15 nothing do with any sort of legal proceeding against
16 him, did they?
17      A.   I'm not sure.  It listed a cause number.
18 I just don't remember if it said a person's name
19 related to that.
20      Q.   Well, did you investigate what he was
21 trying to get?
22      A.   No.
23           MS. JACKS:  If I can have a moment, Your
24 Honor, I think I'm done.
25           THE COURT:  You may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7973

 1           MS. JACKS:  I have nothing further, Your
 2   Honor.  Thank you.
 3           THE COURT:  Thank you, Ms. Jacks.
 4           Mr. Castellano, do you have
 5   cross-examination of Agent Acee?
 6           MR. CASTELLANO:  Yes, Your Honor.  Thank
 7   you.
 8           THE COURT:  Mr. Castellano.
 9   BY MR. CASTELLANO:
10      Q.   Agent Acee, let's start where counsel left
11   off here.  The paperwork that was found in
12   Mr. Rodriguez's personal effects, you became aware
13   of that this weekend?
14      A.   Yes, sir.
15      Q.   Were they basically discovered in a box
16   that had another agent's SWAT gear in it?
17      A.   Yes.
18      Q.   And were you made aware that once he
19   initially perused them, looking for evidence of
20   court documents, things of that nature, that he put
21   it under there, and then it was forgotten about?
22      A.   Yes.
23      Q.   And is it approximately 960 documents?  Is
24   that what you think?
25      A.   It's a large stack.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7974

```
 1          MR. CASTELLANO:  Your Honor, I move the
 2  admission of all those documents at this time.
 3          MS. FOX-YOUNG:  Your Honor, may we
 4  approach?
 5          THE COURT:  You may.
 6          (The following proceedings were held at
 7  the bench.)
 8          MS. FOX-YOUNG:  I'd like to voir dire the
 9  witness in the presence of the jury.  He doesn't
10  know what's in there or what the evidence is.  We
11  honestly want for the Government to be able to admit
12  this is documents that were just produced to us
13  after they've been in the possession of the FBI
14  since last summer, and held back, and therefore
15  prejudicing the defense.
16          And the Court shouldn't allow it on the
17  Government's motion.  And I don't think this is the
18  right witness to do it with.  We have not had an
19  opportunity to review all 1,000 pages.
20          THE COURT:  All right.  That was going to
21  be my question.  Have the defendants collectively
22  been able to divide it up and go through it and see
23  what's in there?
24          MS. BHALLA:  Your Honor, I did try to go
25  through and look through, and my paralegal and I
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1 split it up.  The reality is, you take a page like

2 this, it is tiny writing.  It's hard to read.  Some

3 of the copies aren't legible, due to poor photo

4 quality.

5         It has -- there is personal information

6 belonging to other people in the documents like we

7 talked about with the address book, and it's got

8 Social Security numbers in it.  We've got what we

9 believe to be family members' names, addresses, and

10 dates of birth.  That's one of the reasons we

11 haven't moved it in evidence, because we haven't

12 been able to continue the review to see what other

13 kind of information is in there.  It would take us a

14 week to go through all that stuff because it is

15 thousands and thousands of pages, handwritten notes

16 from Mr. Mario Rodriguez, that are tiny and long,

17 and it's a Herculean task, which is why the proposal

18 for us to re-call Mario and question him on this is

19 impossible for the defense to do.  It's just

20 impossible.

21         THE COURT:  All right.  Mr. Lowry.

22         MR. LOWRY:  Your Honor, you just sustained

23 the objection from the Government on the email

24 because it's hearsay.  And frankly, all this

25 material is hearsay.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          THE COURT:  Have you looked at it enough
 2  to see if there is hearsay in this material?
 3          MR. LOWRY:  Well, it's statements about
 4  him.  It's his diaries.  It's everything that's been
 5  described.  I haven't looked at it enough, Your
 6  Honor.  We divided it up, a certain portion that
 7  looked more applicable, a diary portion.  But there
 8  is pornography in there.  There is all kinds of
 9  stuff in there that has no business going to the
10  jury.
11          To put it in wholesale is just -- it's not
12  called for.
13          THE COURT:  Mr. Jewkes, do you have
14  thoughts on this?
15          MR. JEWKES:  After what everyone else has
16  said, I haven't looked at four or five documents.
17          THE COURT:  What did you see?
18          MR. JEWKES:  Hearsay.  And I have a
19  question about materiality, relevance as to some of
20  these documents.  But without going through them, we
21  would object.
22          MR. CASTELLANO:  The Court can offer a
23  limiting instruction, but the defense counsel made
24  it an issue, asked questions:  Do you know how many
25  times he's talked about violence?  Do you know how
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  many times?  Leaving the impression that they had
 2  gone through the documents and they knew how many
 3  times it was.
 4          So clearly, they wanted to use it to
 5  create an impression that Mr. Rodriguez had lots of
 6  things in there, and this is not for the jury to
 7  decide.  And these are regarding his statements
 8  according to what the defense represented to the
 9  witness on the stand, and so those documents are now
10  squarely at play here.
11          And, I mean, they use the line of
12  questioning prejudicial information against Mr.
13  Rodriguez in those documents, and I'm welcome to let
14  the jury have that information.
15          THE COURT:  Hold on.  Let me see if I can
16  say something here and see if everybody can -- it
17  seems to me that whatever prejudice the Government
18  has endured from that questioning was fairly
19  minimal.  It seems to me that doing a document dump
20  on the jury right here toward the end of the case
21  can be problems for everybody, the Court,
22  Government, all the defendants, and their lawyers.
23          I would suspect, without having seen much,
24  that there is going to be hearsay statements.  I do
25  think that it is very likely to be some 403
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   problems, and I think there may be some 401

2   problems.  So I think we're going to run into

3   problems if we just have a document dump.  So I

4   think we'd be better off denying it.

5           I think that without the Court having an

6   opportunity, and the defendants particularly

7   engaging in an adversarial process that helps the

8   Court make informed decisions about the documents, I

9   don't think that this is the way to proceed.

10          So I'm going to sustain the objections and

11  not allow the documents to come into evidence.

12          MR. BECK:  Your Honor, I'm just providing

13  a copy of the agent's notes, asked for this morning

14  to each defense counsel.

15          MS. FOX-YOUNG:  For the record, is the

16  Government representing that this constitutes the

17  remainder of the agent's notes that are relevant to

18  the cooperating witnesses that testified in this

19  case?

20          MR. BECK:  Yes.

21          THE COURT:  All right, everybody.  Live

22  with that.

23          MS. FOX-YOUNG:  Thank you, Your Honor.

24          (The following proceedings were held in

25  open court.)



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7979

```
 1              THE COURT:  All right.  Mr. Castellano.
 2              MR. CASTELLANO:  Your Honor, I understand
 3   the Court's ruling.  I'll just note my objection for
 4   the record.
 5              THE COURT:  I understand.
 6   BY MR. CASTELLANO:
 7       Q.   Okay.  Now, Agent Acee, you were asked
 8   whether or not the defense counsel was permitted to
 9   question Mr. Rodriguez about these documents.  Do
10   you remember that?
11       A.   Yes.
12       Q.   And isn't it true that the Government
13   agreed to make Mr. Rodriguez available as a witness
14   once again so that defense could question him about
15   those documents?
16       A.   Yes.
17       Q.   And the United States offered to bring
18   Mr. Rodriguez to court today so they could ask him
19   questions if they wanted to?
20       A.   Correct.
21       Q.   And did they refuse that offer?
22       A.   Yes.
23              MS. FOX-YOUNG:  Your Honor, may we
24   approach?
25              THE COURT:  You may.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7980

```
 1              (The following proceedings were held at the
 2    bench.)
 3              MS. FOX-YOUNG:  Your Honor, I have a
 4    couple of objections.  First of all, I think there
 5    is a foundational problem with Agent Acee is not the
 6    person to make any representations as to whether or
 7    not a witness could be provided.  But I think we're
 8    also getting into burden shifting here.
 9              THE COURT:  The Court knows, and the jury
10    needs to know and is about to be instructed that the
11    defense has no burden to put on any witness or any
12    evidence in this case in this line of questioning.
13    I'll remind them at this point of that.
14              Let's move along.  I think you made the
15    point.  I do think he was a witness, he saw it all
16    yesterday, so it's not like he didn't have personal
17    knowledge.  But I will remind the jury.  And I'll
18    tell them in our final instructions; I'll give a
19    fuller instruction about that.
20              (The following proceedings were held in
21    open court.)
22              THE COURT:  All right.  Let me remind the
23    jury, and I'll give you full instructions on this
24    when I give my final instructions, but I told you at
25    the beginning of the trial and I'm telling you now
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   and I'll tell you at the end of the trial, the

 2   defendants don't have any burden to put on any

 3   evidence at all.  So keep that in mind.  They have a

 4   presumption of innocence.  They don't have to

 5   testify, they don't have to put on any witnesses or

 6   anything like that.  So they don't have a burden

 7   here of producing any witnesses, and I'll talk to

 8   you more fully about that when we get to the final

 9   instructions.  All right.

10           Mr. Castellano.

11   BY MR. CASTELLANO:

12       Q.   Agent Acee, you were asked about a letter

13   in Blue's paperwork regarding Timothy Martinez.  Do

14   you remember that?

15       A.   Yes.

16       Q.   And do you recall that the letter was

17   dated October of 2015?

18       A.   Yes.

19       Q.   And that was the time when the state case

20   was still pending, correct?

21       A.   Correct.

22       Q.   And so to say government witnesses, those

23   would have actually been state witnesses and not

24   witnesses for this case?

25       A.   Correct.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7982

1    Q.    And you're aware of this scheme they tried

2  at the state level, correct?

3    A.    Yes.

4    Q.    About Mr. Armenta trying to take the rap

5  for everybody?

6    A.    Yes.

7    Q.    And it was at this timeframe that that

8  letter was written?

9    A.    Yes.

10   Q.    Now, turning to the tablets, were you able

11  to seize those tablets, or was there a court order

12  in place protecting those tablets?

13   A.    There was a court order in place that did

14  not allow me or other law enforcement to take the

15  tablets.

16   Q.    And is it your understanding that if there

17  was -- at the facility, if there is an issue of

18  tampering or suspected tampering, all that could be

19  done was the tablet would be seized and inspected

20  briefly to see if it had been tampered with?

21   A.    By corrections staff, yes.

22   Q.    And did that order allow you to seize the

23  tablets otherwise?

24   A.    It did not allow me or other law

25  enforcement to seize the tablets.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        Q.    And are you aware that Ms. Jacks was one
2   of the persons that helped put that protective order
3   together with the United States?
4        A.    Yes.
5        Q.    And when you talked about not being able
6   to obtain a search warrant even though the tablets
7   had been tampered with, were you aware if they were
8   used in any crime?
9        A.    They were not.  I couldn't find one.  I
10  researched it.  I talked with attorneys at your
11  office and we couldn't find a crime where I could
12  request it from a judge.
13       Q.    So you knew it was tampered with, but you
14  don't know if it was involved in any crime
15  whatsoever?
16       A.    Correct.
17       Q.    Without evidence of a crime, would you be
18  able to obtain a search warrant?
19       A.    No.
20       Q.    Now, you're aware that actually for months
21  there was discussion in court at hearings about the
22  best way to get these tablets to somebody for
23  inspection?
24       A.    Yes.
25       Q.    And those tablets, there is also concern
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   because there might be attorney-client information
 2   on those tablets for those --
 3            MS. JACKS:  Objection to the leading
 4   nature of this questioning.
 5            THE COURT:  Let's not lead.
 6            MS. JACKS:  And also, Your Honor, the
 7   tablets were a one-way street.  They only had
 8   discovery.
 9            THE COURT:  Well, I'll let you work with
10   that on redirect.  Let's not lead, Mr. Castellano.
11            MR. CASTELLANO:  Okay.  I would just ask
12   for a little leeway since this is cross-examination.
13            THE COURT:  I understand it's cross, but I
14   think Mr. Acee has pretty much identified with your
15   table.
16            MR. CASTELLANO:  Understood, Your Honor.
17   BY MR. CASTELLANO:
18       Q.   Agent Acee, do you remember there being
19   talk of people being able to put attorney-client
20   information on those tablets?
21       A.   Yes.
22       Q.   And so was that also a concern?
23       A.   Yes.
24       Q.   Are you able, without a court order, to
25   look at something that is privileged?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.   I'm not able to, and I should not.

2      Q.   So, for example, would you be able to,

3  without suspicion, be able to look at defendants'

4  tablets?  Because there might be protected material

5  on there?

6      A.   It's protected.  I don't want anything to

7  do with the tablets without a court order.

8      Q.   You were asked about Eric Duran and the

9  investigation he was involved in once he left New

10  Mexico.  Do you remember that?

11     A.   Yes.

12     Q.   Did that involve drugs and money

13  laundering?

14     A.   Yes.

15     Q.   Related to Mr. Duran's Facebook post, did

16  you learn that --

17          MS. JACKS:  Objection, hearsay.  This

18  information has also been withheld from the

19  defendants to this moment.

20          THE COURT:  Well, let's do this.  I didn't

21  quite get the question, so ask the question.  Try

22  not to put in the question any sort of out-of-court

23  statement.  And, Mr. Acee, if you'll give me a

24  second to hear the question before you answer it.

25          MS. JACKS:  Well, Your Honor, if the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   Government is going to elicit testimony about an
 2   investigation, the defense requests discovery of
 3   that investigation.
 4             MR. CASTELLANO:  I'm not seeking --
 5             MS. JACKS:  We're at a disadvantage
 6   because that hasn't been provided to us.
 7             MR. CASTELLANO:  I'm not seeking that
 8   information, Your Honor.  I'm talking about the
 9   Facebook post which she asked about.
10             THE COURT:  All right.
11             MS. JACKS:  Right.  But my understanding
12   was that Agent Acee conducted an investigation into
13   those Facebook posts, and that has not been provided
14   to the defendants.
15             THE COURT:  Let's hear the question, and
16   then we'll see if you still have an objection to
17   this one question.
18   BY MR. CASTELLANO:
19      Q.   I'll pose this as a yes or no, Agent Acee,
20   so we don't have to worry about that.  Were you made
21   aware of whether or not Eric Duran's Facebook post
22   was authorized by law enforcement?
23             MS. JACKS:  Objection, hearsay and lack of
24   discovery.
25             THE COURT:  Sustained.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   BY MR. CASTELLANO:
 2        Q.   And I don't need to know the answer, but
 3   did you do a follow-up -- well, don't tell me what
 4   anyone said.  Did you follow up on the issue with
 5   the people in that state?
 6        A.   Yes.
 7        Q.   Once again, without telling us what was
 8   said, did you get an answer responsive to your
 9   question about the Facebook page?
10        A.   Yes.
11        Q.   You were asked about a report which was
12   Bates stamped 20163.  Do you remember that?
13        A.   Which report is it?
14        Q.   I'll show it to you in a second, but
15   referring to these numbers, including another
16   report, March 6, 2017, regarding Lupe Urquizo, do
17   you remember being asked about that?
18        A.   Yes.
19        Q.   And do you recall the Bates stamp number
20   was 43,638?
21        A.   No, but I believe you.
22        Q.   Does that number indicate how many
23   documents have been disclosed in this case?
24        A.   Yes.
25        Q.   So at least as far as this is concerned,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1    over 40,000 documents?

 2         A.    Correct.

 3         Q.    Are you familiar with all those documents

 4    without reviewing them?

 5         A.    No.

 6         Q.    The document here with the number 20,163

 7    is the report you were asked about regarding a

 8    December 2, 2016, interview with four inmates.  Do

 9    you recall that?

10         A.    Yes.

11         Q.    And do you recall asking people who called

12    the green light on Javier Molina and when was it

13    called?

14         A.    I do.

15         Q.    And did those people each answer your

16    questions separately and alone with you?

17         A.    Yes.

18         Q.    And did those people each give you

19    information about who called that hit?

20         A.    Yes.

21         Q.    And approximately how long before Javier

22    Molina was hit?

23         A.    Yes.

24         Q.    And were those people, if you remember,

25    Benjamin Clark?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1       A.   Yes.

 2       Q.   Roy Martinez?

 3       A.   Yes.

 4       Q.   Robert Martinez?

 5       A.   Yes.

 6       Q.   And I'm forgetting the fourth one, but

 7  were they witnesses in this case?

 8       A.   They are.  And if you need me to recall

 9  the fourth one, I think I can.

10       Q.   And independently, did they each tell you

11  who called the hit on Javier Molina?

12       A.   Yes.

13       Q.   And who was that person?

14            MS. JACKS:  Objection, hearsay.

15            THE COURT:  Sounds like it's being offered

16  for the truth.  Sustained.

17       Q.   I don't need to know the name, but

18  independently did they provide a name of who called

19  the hit?

20            MS. JACKS:  Objection.  It also calls for

21  hearsay.

22            THE COURT:  Sustained.

23  BY MR. CASTELLANO:

24       Q.   I didn't ask for a name, Agent Acee, but

25  I'll move on.  Regardless, did you talk to these
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   four people independently?

 2        A.   Yes.

 3        Q.   Not as a group?

 4        A.   Not as a group.  Independently.

 5        Q.   I'm going to go back a little bit now.

 6   You first started your examination at the beginning

 7   of the week.  Do you remember that?

 8        A.   On Monday, yes.

 9        Q.   It seems like a long time ago now.  Okay.

10   You were cross-examined by Mr. Baca's attorney about

11   Mr. Baca being eager to kill Mr. Marcantel.  Do you

12   remember that?

13        A.   Yes.

14        Q.   And do you recall from the investigation

15   that initially Mr. Baca, on the recordings, wanted

16   to kill Mr. Santistevan and Adam Vigil?

17        A.   Yes.

18        Q.   And then over the course of the

19   investigation, do you recall that he also focused on

20   Mr. Marcantel?

21        A.   Yes.

22        Q.   And you were asked about what Christopher

23   Garcia knew at the time that he turned over the

24   firearm to Mario Montoya on November 29th of 2015?

25        A.   Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

7991

```
 1        Q.   So would that recording give us a pretty
 2   good idea of what that conversation was about?
 3        A.   Yes.
 4             MR. CASTELLANO:  Your Honor, at this time
 5   I'm going to play one or two clips from Government's
 6   Exhibit 396 related to that issue.
 7             THE COURT:  All right.
 8             (Tape played.)
 9        Q.   So this part of investigation, do you
10   recall that Mr. Garcia is discussing Mr. Marcantel?
11        A.   Yes.
12        Q.   And I think I have a second clip from that
13   exhibit, which is Exhibit 396.
14             (Tape played.)
15        Q.   Hearing that conversation, is it your
16   understanding that Christopher Garcia was providing
17   a suggestion or advice to Mario Montoya on how he
18   could plant evidence, making it look like someone
19   else was at the crime scene?
20        A.   Yes.
21             MS. JACKS:  Your Honor, can we request a
22   limiting instruction regarding this?
23             THE COURT:  Yes.  These are conversations;
24   again, you've heard them earlier with Mr. Baca.  So
25   you can only use these conversation and then this
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  testimony that Mr. Acee is giving about these

 2  recordings, in your deliberations against Mr. Baca.

 3  They can't be used by the jury in its deliberations

 4  as to any other defendant.

 5          MR. LOWRY:  Well, Your Honor, they're not

 6  conversations with Mr. Baca, either.  We'd ask a

 7  limiting instruction be applied here, as well.

 8          THE COURT:  Well, but it's evidence

 9  against Mr. Baca, unless I'm confused here.

10          MR. CASTELLANO:  It is, Your Honor.

11          THE COURT:  All right.  So overruled as to

12  that.

13  BY MR. CASTELLANO:

14      Q.  Now, you were also asked about your Grand

15  Jury testimony related to these conspiracies to

16  murder Mr. Marcantel and Mr. Santistevan.  Do you

17  remember that?

18      A.  Yes.

19      Q.  And during the Grand Jury, did you lay

20  this out for them?

21      A.  Yes.

22      Q.  And when Adam Vigil was mentioned, do you

23  recall why Adam Vigil was particularly important at

24  that time when the recordings were taken?

25      A.  Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.    Why was he important?
 2        A.    Mr. Vigil is an STIU administrator, and he
 3   had been identified as an expert witness in the
 4   state homicide case against Javier Molina.
 5        Q.    So at that point he was not only an STIU
 6   investigator, but he was a witness?
 7        A.    He was going to be a witness and a gang
 8   expert.
 9        Q.    And that's the Javier Molina murder at the
10   state level?
11        A.    Yes, sir.
12        Q.    Now, you were asked the question also, a
13   phrase you've used before, something you tell
14   cooperators:  If it's not recorded, it didn't
15   happen.
16              Do you remember that?
17        A.    Yes.
18        Q.    And remind us again why you tell
19   cooperators that.
20        A.    I'm emphasizing that I want recordings;
21   that I'm placing them with a recording device and
22   they're to use it.
23        Q.    Is it your position that if it was
24   recorded, it did happen?
25        A.    No.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7994

```
 1        Q.   So just because something is a recording,
 2   does it still need to have context and meaning in
 3   light of other evidence that you know?
 4        A.   Exactly.  Yes.
 5        Q.   And once again, is it actually a true
 6   statement to say if it wasn't recorded, it didn't
 7   happen?
 8        A.   No.
 9        Q.   Do you recall when Mr. Baca returned to
10   New Mexico?
11        A.   Yes.
12        Q.   Go ahead and give me a month and year, for
13   starters.
14        A.   October 2015.
15        Q.   And if you recall, is it your recollection
16   that within a week he was seeking the murder of Mr.
17   Santistevan and Mr. Vigil, for starters?
18        A.   Yes.
19             MR. CASTELLANO:  Your Honor, at this time
20   I'd like to move the admission -- or actually replay
21   portions of Government's Exhibit 356.
22             THE COURT:  All right.
23             MS. JACKS:  Again, we'd ask for a limiting
24   instruction, Your Honor.
25             THE COURT:  All right.  Remind me what 356
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    entails.
 2              MR. CASTELLANO:  356 is a recording.  I
 3    think it includes Mr. Duran and Mr. Baca and Mr.
 4    Montoya, if I'm not mistaken.
 5              THE COURT:  All right.  So, again, the
 6    limiting instruction is that you can only use this
 7    in your consideration of the charges against Mr.
 8    Baca.  You cannot use it in your consideration or
 9    deliberations as to the charges against any of the
10    other gentlemen.  All right.
11              Mr. Castellano.
12              MR. CASTELLANO:  Thank you, Your Honor.
13              MR. LOWRY:  Your Honor, can we lay a
14    little bit of foundation on this, when this
15    recording was made?
16              THE COURT:  Do you wish to do that, or do
17    you want to leave that for redirect?
18              MR. CASTELLANO:  Actually, Your Honor, the
19    recording itself will state when it was made, in the
20    second clip.
21              THE COURT:  All right.  I'll let you go
22    into further on it, Mr. Lowry, but let me let Mr.
23    Castellano put it on how he wishes.
24              (Tape played.)
25    BY MR. CASTELLANO:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      Q.   There are some unintelligibles here.  Did

 2   you hear him say that Santistevan and Adam Vigil are

 3   making desmadre?

 4      A.   Yes.

 5      Q.   Okay.  Thank you.  Let's continue, please.

 6           (Tape played.)

 7      Q.   Now that the recording has concluded, do

 8   you recall that this is a conversation including Mr.

 9   Baca, Mr. Duran, and Mario Montoya?

10      A.   Yes.

11      Q.   Let me play the next clip.

12           (Tape played.)

13      Q.   Okay.  For the record, the transcript is

14   also on the screen, and I'm circling -- actually,

15   I'm underlining the words, "But they just brought

16   Pup back last week"?

17      A.   Yes.

18      Q.   So does that give you an indication that

19   this happened within a week of Mr. Baca arriving

20   back in New Mexico?

21           MR. LOWRY:  Objection, Your Honor.  It

22   misstates the facts.  This witness has testified

23   that these telephone recordings didn't initiate

24   until November 4, 2015, and it's much longer than a

25   week after Mr. Baca returned.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Well, let Mr. Acee testify
 2   what his understanding is, and then you can go into
 3   it on redirect.  Overruled.
 4   BY MR. CASTELLANO:
 5       Q.   Is that what it says, at least?
 6       A.   Yes.
 7       Q.   You were asked whether Eric Duran was a
 8   skilled manipulator or has the gift of gab.  Do you
 9   remember that?
10       A.   Yes.
11       Q.   And how is he a skilled manipulator, if he
12   is?
13       A.   I observed him have several girlfriends,
14   get them to put money on his books.  Over time, I
15   believe he's convinced some of them to bring drugs
16   into the facility.  And he's able to -- over time,
17   I've observed through my investigation where he's
18   been able to get prison staff to do stuff for him,
19   too, that they shouldn't be doing.
20       Q.   When it came to Roy Martinez and Robert
21   Martinez, do you recall whether or not he was able
22   to ask them to put their ideas to paper in terms of
23   the murder conspiracy?
24       A.   Yes, he was.
25       Q.   And did they do that against their own
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  will, as far as you know from the evidence?

2        A.    No.

3            MR. LOWRY:  Objection, Your Honor.  It

4  calls for speculation and conclusion he's not in a

5  position to make.

6            THE COURT:  Sustained.

7  BY MR. CASTELLANO:

8        Q.    Were you here for Roy Martinez' and Robert

9  Martinez' testimony?

10       A.    I was here for Robert's.

11       Q.    And did he give any indication that he was

12 tricked into doing that?

13       A.    No.

14       Q.    Or that it was something he didn't want to

15 do?

16       A.    No.

17       Q.    And when it came to Jerry Armenta, what

18 was your understanding of what happened with Mr.

19 Armenta and Mr. Duran?

20       A.    Mr. Duran encouraged Armenta to cooperate,

21 initially with the state authorities, if I remember

22 correctly.

23       Q.    You were asked about a November 3, 2015,

24 text message between yourself and Eric Duran,

25 indicating -- the question to you was whether or not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

7999

1  you should let Pup know about the phone that

2  Mr. Duran had.  Do you remember that?

3       A.   Yes.

4       Q.   So under those circumstances, was

5  Mr. Duran seeking advice from you about the

6  investigation?

7       A.   Yes.

8       Q.   And consequently, then, was Mr. Baca let

9  known -- did he find out about the phone?

10      A.   Yes.

11      Q.   And is that how he got some of the

12  recordings?

13      A.   Yes.

14      Q.   You were asked about a report regarding

15 Roy Martinez and Mr. Duran approaching him about the

16 hit on -- I think on Mr. Marcantel and

17 Mr. Santistevan.  Do you remember that?

18      A.   Yes.  I think I was shown another agent's

19 notes.

20      Q.   And do you remember whether or not --

21 well, from your understanding of the notes, did

22 Mr. Duran make Mr. Martinez do that, or did he

23 approach him and remind him of the prior

24 conversations they had about those murder

25 conspiracies?



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          MR. LOWRY:  Objection, calls for
 2   speculation.  He doesn't know what was in that
 3   witness' mind.
 4          THE COURT:  Well, right at the moment,
 5   it's just a yes or no question.  Let me hear his
 6   answer to this, and then I'll take the next
 7   question.
 8      A.   Yes.
 9          THE COURT:  Why don't you ask your next
10   question and let me see if I'm going to allow it, if
11   you have a follow-up.
12   BY MR. CASTELLANO:
13      Q.   Was it your understanding that what
14   Mr. Duran did was remind Mr. Martinez, Roy Martinez,
15   about prior conversations they had about these
16   murder conspiracies?
17          THE COURT:  Do you have an objection?
18          MR. LOWRY:  Objection.  This is hearsay.
19   And, Your Honor, the evidence will show that the
20   prior conversations didn't -- may we approach?
21          THE COURT:  Well, I'm going to sustain the
22   objection.
23   BY MR. CASTELLANO:
24      Q.   Regarding those notes, you were asked
25   about your notes, correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8001

 1    A.   I was asked about my notes and other

 2 agents' notes.

 3    Q.   So notes including a discussion with Roy

 4 Paul Martinez on December 17th of 2015?

 5    A.   Yes.

 6    Q.   Was that just a couple of weeks after the

 7 roundup in this case?

 8    A.   Yes.

 9    Q.   And was Mr. Martinez cooperating already

10 at that point?

11    A.   Yes.

12    Q.   You were sitting down and taking notes

13 from him?

14    A.   Correct.

15    Q.   And in addition to what he told you about,

16 you were asked a question about your notes.  Oh, the

17 question, I think, was regarding the Marcantel hit,

18 whether Crazo, or Eric Duran, approached Shadow,

19 saying that Santistevan needed to be hit.  That was

20 the question?

21    A.   Yes.

22    Q.   And that's what my question referred to,

23 was when it says Crazo approached Shadow, was it

24 that he approached him with the idea or to remind

25 him of prior conversations?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


```
 1        A.    It was a reminder.

 2        Q.    In addition to that, did you learn from

 3   Shadow, or Roy Paul Martinez, that he had actually

 4   tasked somebody else with the murder of agent --

 5   Secretary Marcantel, that person being someone

 6   called Smurf?

 7             MR. LOWRY:  Objection, beyond the scope of

 8   direct.

 9             THE COURT:  Overruled.

10   BY MR. CASTELLANO:

11        A.    Yes.

12        Q.    So was that a further indication to you

13   that Roy Paul Martinez, by his own admission, had

14   tasked somebody else with killing Marcantel?

15        A.    Yes.

16             MR. LOWRY:  Your Honor, I think the

17   response called for hearsay.  We move to strike.

18             THE COURT:  Well, what do you want?  What

19   is it that you want?

20             MR. LOWRY:  I would actually like a chance

21   to object.  But he's soliciting out-of-court

22   statements by somebody who is not present and hasn't

23   testified to that effect.  And I'd like the answer

24   to be stricken.

25             THE COURT:  I think we are getting into
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   just him commenting on evidence that is being,

2   through the government's witnesses, offered for the

3   truth.  So I'll sustain and strike the answer.

4           MR. CASTELLANO:  Your Honor, as I move

5   through these, I'll let the Court know ahead of time

6   for questions like that.  He was asked about his

7   notes, so I am seeking to impeach his testimony on

8   cross-examination.

9   BY MR. CASTELLANO:

10      Q.   You were asked about your notes regarding

11  Lupe Urquizo and holding up something to the window.

12  Do you remember that?

13      A.   Yes.

14      Q.   And on direct examination, you said you

15  may have gotten that wrong?

16      A.   Yes.  I think I indicated where I saw the

17  point of contention.

18      Q.   What do you think that was, from

19  remembering, looking at your report and the

20  circumstances?

21      A.   It's the last sentence, I think page 2,

22  and it has to do with Urquizo's describing the

23  sequence of communications with Mario Rodriguez.

24  And in that 302, in that sentence it says -- I'd

25  have to look at it to know exactly what it said, but

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   it's a discussion about how the note or how the

 2   communication went between those two men.

 3        Q.   So the report didn't say which door

 4   Urquizo put the note -- held the note up to?

 5        A.   No.

 6        Q.   Regarding Mr. Urquizo, I'll see if we can

 7   pull up Defendants' V4.  It should be Mr. Baca's

 8   location history.  And do you recall from Mr.

 9   Urquizo's testimony about him having a discussion

10   with Mr. Baca in the summer of 2012?  If you don't

11   remember, I can also refresh your recollection.

12        A.   Yes, sir.

13             MR. CASTELLANO:  May I approach the

14   witness, Your Honor?

15             THE COURT:  You may.

16        Q.   Just to refresh your recollection --

17   before I show this to you, this has to do with Mr.

18   Baca's location history in the summer of 2012.

19        A.   Okay.  Do I need to read it all?

20        Q.   And you recall, as we pull up that exhibit

21   again, Mr. Urquizo's testimony about Mr. Baca being

22   housed in the Q pod in the summer of 2012?

23        A.   Yes.

24        Q.   I'll circle a portion here, make it

25   smaller.  Okay.  So do you see Mr. Baca's location

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   history as far as June 29, 2012, he was in Q pod?

 2        A.   I see that.

 3        Q.   And do you recall him being asked

 4   questions with a diagram of the facility and where

 5   the cages were?

 6        A.   The overview, yes.  Like an aerial view,

 7   yes.

 8        Q.   Do you recall him indicating where the

 9   cages were and where Mr. Baca's cell was?

10        A.   Yes.

11        Q.   When you initially asked him that

12   question, do you know if he'd seen his location

13   history?

14        A.   If Urquizo had seen it?

15        Q.   Yes.

16        A.   No.

17        Q.   And do you recall the testimony about --

18   you were asked about David Calbert's indication that

19   he'd received the paperwork through the cages?

20        A.   Yes.

21        Q.   And there was an indication that according

22   to him, he and a person known as Cheech, or Joe

23   Martinez, were at a place where they could cross

24   paths?

25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      Q.   If we can pull them up side by side, we'll

 2  display Government's Exhibits 788 and 789.  For the

 3  record, on the screen are two exhibits, 788 and 789.

 4  On the left is 788.  It's Joe Patrick Martinez'

 5  location history, and 789 is David Calbert's

 6  location history.  I've tried to block off a portion

 7  of Joe Patrick Martinez' location history, showing

 8  location at PNM North, showing dates 9/30 of '11 and

 9  ending 4/11 of 2013.  Do you see that?

10      A.   Yes, sir.

11      Q.   And for Mr. Calbert, I basically blocked

12  off the dates July 14, 2011, all the way up to March

13  7th of 2014.  Do you see that?

14      A.   Yes.

15      Q.   And in that time period, there is an

16  indication that both gentlemen were at the North

17  facility?

18      A.   Yes.

19      Q.   At one point, Mr. Calbert's -- touching

20  next to the date 5/2 of '13, do you see where he's

21  in Housing Unit 3-A?

22      A.   Yes, at the north, North 3-A.

23      Q.   And on the left with Mr. Martinez, do you

24  see he's at Housing Unit 3-B?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8007

1    Q.   Was it your understanding that among other

2  times where they overlapped, that when people were

3  in the same housing unit, sometimes they would be at

4  rec at the same time?

5    A.   Yes.

6    Q.   And then on David Calbert's, is there an

7  indication after this time where he moved from the

8  North to the South facility?

9    A.   Yes.

10   Q.   That is February 13th of 2014?

11   A.   Yes.

12   Q.   And is it your understanding that that's

13  where he passed the paperwork to Lupe Urquizo, at

14  the South facility?

15   A.   Yes.

16   Q.   Regarding the passing of the paperwork,

17  you testified on direct examination that you talked

18  to correction officers, and they said that was

19  possible?

20   A.   Correct.

21   Q.   You were also asked about Robert Martinez'

22  61-page statement that he wrote.  Do you remember

23  that?

24   A.   Yes, sir.

25   Q.   And there was a question about 167 people

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8008

```
1   named as SNM members by Robert Martinez?

2       A.   Yes.

3       Q.   Do you know if Robert Martinez knew who

4   all SNM members were?

5       A.   No, he didn't.

6       Q.   And as far as the investigation goes, how

7   many -- approximately how many SNM members have you

8   been aware of?

9       A.   Around 500.

10      Q.   So is it your testimony that Mr. Martinez

11  gave you a portion of those who he knew?

12      A.   He did.  And he put question marks and

13  blanks, too, like he was having trouble remembering

14  other members.

15      Q.   And you were asked by Mr. Perez' attorney

16  if Rudy Perez's name was on that list.  Do you

17  remember?

18      A.   I do.

19      Q.   Your response was that he was not on that

20  list.

21      A.   That's right.

22      Q.   So do you know if Robert Martinez knew

23  Rudy Perez?

24      A.   I don't.

25      Q.   Would that surprise you?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8009

```
 1        A.    Would that surprise me?

 2        Q.    Correct.

 3        A.    No.

 4        Q.    Do you recall if other people's names were

 5   on that list?

 6        A.    Yes.

 7        Q.    Including Daniel Sanchez?

 8        A.    His name is on the list.

 9        Q.    As well as Carlos Herrera?

10        A.    Yes.

11        Q.    And is Daniel Sanchez listed as a shot

12   caller on that list?

13        A.    Yes.

14        Q.    As well as -- well, to be fair to Mr.

15   Herrera, what do you recall about --

16             MR. MAYNARD:  Your Honor, objection.  This

17   is beyond the scope of any direct examination.  The

18   Government is just repeating its case.

19             MR. CASTELLANO:  Your Honor, this is in

20   response to --

21             THE COURT:  Yes, I see the connection.

22   Overruled.

23        Q.    Okay.  So to be fair to Mr. Herrera, what

24   was Mr. Martinez' indication about who Carlos

25   Herrera was?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8010

1          A.    Possible shot caller.

2          Q.    So as far as he knew, he could only say

3     possible shot caller?

4          A.    That's what he wrote.

5          Q.    And you were also asked about Blue or

6     Mario Rodriguez being on there.  And according to

7     Robert Martinez, he indicated that Mr. Rodriguez was

8     a shot caller?

9          A.    He did.

10         Q.    And when you asked this information of

11    Mr. Martinez, was this before or after the Molina

12    murder?

13         A.    After.  Well after.

14         Q.    Was there an occasion following the Molina

15    murder that Mr. Rodriguez had gained some additional

16    stature in the gang?

17         A.    Yeah.  Not only that, but the assault on

18    Sosoya, so both incidents.

19         Q.    You were also asked about Defendants' EV.

20    Can we have Defendants' EV, please?  And while

21    that's coming up, we'll ask you some questions about

22    that.  That involves the shanks that Mr. Rodriguez

23    turned over?

24         A.    I remember.

25         Q.    Was that following his debrief, basically,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  with us?

2       A.   Yes.

3       Q.   And do you remember him sitting in that

4  debrief with us, with shanks in his rectum?

5       A.   Yes.

6       Q.   Did we find out about that only through

7  him?

8       A.   Yes.

9       Q.   What significance did it have to you that

10  Mr. Rodriguez was basically laying down his arms and

11  turning over his weapons?

12       A.   It was done.  There was no turning back.

13       Q.   In fact, you said on direct examination

14  that when he came to court, he even brought those

15  with him?

16       A.   Several times, yes.

17       Q.   You also were asked -- actually, on direct

18  examination this morning you indicated that

19  Mr. Billy Cordova had used drugs, and he'd also

20  brought a shank to court.  Do you remember that?

21       A.   He sat right here in this very chair with

22  a shank.

23       Q.   On the witness stand?

24       A.   Yes.

25       Q.   Do you recall why he brought a shank to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8012

1    court?

2         A.   Yes.

3         Q.   Why?

4         A.   He thought he was in danger, was going to

5    be attacked by SNM members.

6         Q.   Was that for self-protection?

7         A.   Yes.

8         Q.   Okay.  Now up on the screen is Defendants'

9    EV.  So that was turned over to the Marshal Service

10   following Mr. Rodriguez' debrief?

11        A.   Yes.

12        Q.   And if you recall -- I don't want to go

13   through all the exhibits, but if you recall, what is

14   inside what's pictured in Defendants' EV?

15        A.   There's two shanks inside that photo, in

16   the wrapping.

17        Q.   Okay.  And the same question regarding

18   these letters by Mr. Rodriguez regarding the state

19   court proceedings and the letters by Jerry Armenta

20   to Jerry Montoya's attorney.  Do you remember those

21   things?

22        A.   Yes.

23        Q.   And did that happen during the state

24   proceedings?

25        A.   Yes, it did.

SANTA FE OFFICE                                          MAIN OFFICE
119 East Marcy, Suite 110                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                  Albuquerque, NM 87102
(505) 989-4949                                              (505) 843-9494
FAX (505) 820-6349                                     FAX (505) 843-9492



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Did you see those guys do that in the
2    federal case?
3    A.   No.  I want to back up on something.  I
4    haven't seen them write letters to attorneys.  I've
5    seen them write letters to non-cooperators that are
6    their friends.  So I just want to make that clear,
7    that some of the guys have written letters, but not
8    where they're swearing under penalty of perjury, you
9    know, trying to make a record of it in the case.
10   Q.   So that's fair.  So you can say that
11   people have communicated with each other?
12   A.   Yes.
13   Q.   Were they similar communications to them,
14   trying to basically put a fraud on the Court?
15   A.   No.  They're quite the opposite.  It's --
16   I'll just leave it at that.  It's the opposite.
17   Q.   Going back to the meeting with Mr.
18   Rodriguez and Ronald Sanchez, you were asked about
19   it a few times now?
20   A.   Yes.
21   Q.   Remind us who wanted that meeting.
22   A.   Who is -- I'm sorry.
23   Q.   Who wanted that meeting?
24   A.   Ronald Sanchez asked to meet with us.
25   Q.   What were the three questions he asked

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8014

 1  you?

 2      A.   That was a long meeting, but the three

 3  premises were what kind of plea deal could Daniel

 4  get; could Ronald and Daniel do their time together,

 5  either in the feds or in the state; and what could

 6  we do for Ronald Sanchez's sentence that he was

 7  currently in prison on.

 8      Q.   So was Mr. Sanchez' -- was Daniel

 9  Sanchez's brother trying to negotiate a deal for his

10  brother?

11      A.   Yes.

12      Q.   And they're brothers, right?  So you'd

13  think they would talk?

14      A.   I know that they talked.

15      Q.   And, in fact, when the Molina murder went

16  down, can we see Ronald Sanchez standing next to

17  Daniel Sanchez?

18      A.   Yes.  He's to the left of him in the

19  video, sometimes standing, sometimes seated.

20      Q.   Now, you don't know about the

21  conversations between the two of them, right?

22      A.   Only the ones that have been recorded.

23      Q.   But you do know that Ronald Sanchez was

24  trying to get a deal for his brother?

25      A.   Yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8015

```
 1        Q.    You've been asked about Billy Cordova and
 2   his murders or his bragging?  Do you remember that?
 3        A.    Yes.
 4        Q.    Now, what evidence did you have that Billy
 5   Cordova killed Sammy Chavez?  Well, let me ask you
 6   this:  Was Billy Cordova in jail at the time Sammy
 7   Chavez was murdered?
 8        A.    He was.
 9        Q.    Would you have threatened --
10        A.    He was actually in prison.  A small
11   distinction, but he was in prison.
12        Q.    Would you threaten Billy Cordova, over
13   something like that, with the death penalty?
14        A.    No.
15        Q.    What about this discussion about any
16   indication that he was involved with the Shane Dix
17   murder?
18        A.    Did I threaten him with that?
19        Q.    Correct.
20        A.    No.  I didn't believe he participated in
21   it.
22        Q.    Could you prove it if you tried today?
23        A.    No.
24        Q.    Now, you were asked about there's an
25   indication about Rudy Perez and his statements.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8016

```
 1   if you look at the evidence against someone like
 2   Billy Cordova --
 3           MS. FOX-YOUNG:  Your Honor, may we
 4   approach?
 5           THE COURT:  You may.
 6           (The following proceedings were held at
 7   the bench.)
 8           MS. FOX-YOUNG:  Your Honor, I'm not sure
 9   which statements.  The Government says:  You were
10   asked about statements by Rudy Perez.
11           I'm not sure what statements the
12   Government is referring to.
13           THE COURT:  Which statements are you
14   referring to?
15           MR. CASTELLANO:  This will be referring to
16   the recordings, Your Honor.
17           MS. FOX-YOUNG:  And, Your Honor, I have
18   not brought that up at all in my direct.  This is
19   not the Government's closing.  It's not an
20   opportunity to rehash their case-in-chief.  It's
21   beyond the scope.  And I've looked through the
22   transcript.  I can't find anywhere where anything on
23   the subject was elicited in direct of Agent Acee.
24   They did this ad nauseam in their case-in-chief.
25           THE COURT:  If you're referring to the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1  tape recordings what was asked about to start with,
2  Ms. Fox-Young what was asked about those recordings
3  of Mr. Acee --
4           MR. CASTELLANO:  It was well within the
5  scope.  They asked about Billy Cordova bragging
6  about things he didn't do.  And so they're trying to
7  imply that Rudy Perez, also Red, bragged about
8  things he didn't do, and he talked about his
9  involvement in the murder of Javier Molina.
10          MS. FOX-YOUNG:  But I never asked those
11  questions.
12          THE COURT:  Here's what I'd be inclined to
13  do.  If you want to ask questions about Billy
14  Cordova bragging, I think that would be fair game.
15  But why don't we not go back into the statements on
16  Mr. Perez, and leave that for closing arguments.
17          MR. CASTELLANO:  Sure.
18          THE COURT:  I think that's probably where
19  that should be.
20          MR. CASTELLANO:  Sure, Your Honor.
21          MS. FOX-YOUNG:  Thank you.
22          (The following proceedings were held in
23  open court.)
24          THE COURT:  All right.  Mr. Castellano.
25  BY MR. CASTELLANO:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1        Q.   When it comes to proof against Billy
 2   Cordova, did you have recordings of Billy Cordova?
 3        A.   In the homicide?
 4        Q.   Yes.  Because we've been talking about
 5   Sammy Chavez and Shane Dix.  Did you have any
 6   recordings of his involvement?  For example, did
 7   somebody record him talking about his involvement in
 8   those murders?
 9        A.   No.
10        Q.   To law enforcement?
11        A.   No.
12        Q.   Did you have any indication that he was in
13   the area of either of those murders?
14        A.   No.
15        Q.   So would information like that be
16   important to you in helping them make a charging
17   decision?
18        A.   Absolutely.
19        Q.   You were asked about phone calls.  You
20   heard some of the phone calls played in court, of
21   the cooperators.  Do you remember that?
22        A.   Yes.
23        Q.   Do you remember there being two basic
24   themes?  One is lying to family about how much time
25   they're going to get; and lying to family about why
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8019

```
 1   they're cooperating?

 2        A.   Yes.

 3        Q.   And how was that significant?

 4             MS. FOX-YOUNG:  Your Honor, I think in

 5   accordance with your previous rulings, it's up to

 6   the jury to determine when and if the government

 7   witnesses are lying.

 8             MR. CASTELLANO:  They admitted they lied

 9   on the stand, Your Honor, in the phone calls.

10             THE COURT:  Well, I think that this is a

11   lead-in question, or at least a lead-in comment.

12   Why don't ask you the question and let me hear what

13   your question is going to be, rather than trying to

14   characterize or remind the witness of the evidence.

15             MR. CASTELLANO:  Sure.

16             THE COURT:  Maybe that will avoid that

17   problem.

18   BY MR. CASTELLANO:

19        Q.   Do you remember hearing conversations

20   played in court for some of the cooperators?

21        A.   Yes.

22        Q.   And did some of those conversations, maybe

23   all of them, involve family members?

24        A.   Yes.

25        Q.   And what do you recall -- from your own
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8020

1   recollection, what do you recall them saying when it

2   comes to the topics of how much time they're going

3   to get or why they're cooperating?

4        A.   They minimized the time that they were

5   facing greatly, very significantly.  And then in

6   terms of why they were cooperating, they made it

7   sound as if they were doing it to protect their

8   families from prosecution, from us, the FBI.

9        Q.   And so for someone talking to a family

10  member, what's your impression of why they would

11  tell someone they would be home sooner rather than

12  later?

13            MS. BHALLA:  Objection, speculation.

14            THE COURT:  Well, I think at this point

15  you've laid out what he's seen, but do I think that

16  the jury can make its own conclusion about that, so

17  I'll sustain.

18  BY MR. CASTELLANO:

19       Q.   You were asked about trusting Billy

20  Cordova to a certain extent.  Can you elaborate on

21  that, please?

22       A.   Yes.

23       Q.   Go ahead.

24       A.   Would you like me to talk about the areas

25  where I wouldn't trust him, or don't?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Absolutely.  I want to talk about where
2  you trust him, and where you don't.
3    A.   Billy Cordova is alone in the room with
4  his wife.  I don't trust what he's going to do.  If
5  Billy Cordova is offered drugs, I'm not sure what
6  decision he's going to make, to use them or not use
7  them.  If I task Billy Cordova with doing a specific
8  task, I trust that he'll do it and he'll follow my
9  instructions.
10    Q.   Now, when it goes to the tablets, you
11  indicated that two people actually emailed you from
12  the facility?
13    A.   Yes.
14    Q.   Who were those people?
15    A.   The first one was Benjamin Clark, because
16  I asked him to.  I didn't believe he could access
17  the internet from the tablet, so I said, "Send me an
18  email.  Here's my address."  We had that
19  conversation at the jail.  He wasn't able to bring
20  his tablet in at that time, but his attorneys were
21  there.  So that's the only person I asked to email
22  me.  He did some hours later, though?  And when that
23  happened, I notified the prosecution.
24         And then when I woke up the next morning,
25  I had a second email of Jerry Armenta, and attached

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   to that was a photo where he somehow was able to
 2   take a selfie with his tablet, and he was just kind
 3   of standing there like that, and attached that to
 4   the email.
 5        Q.   Was each of those two people, I guess, in
 6   essence, indicating to you that they had tampered
 7   with their tablets?
 8        A.   Yes.
 9        Q.   And you learned that from them?
10        A.   Yes.  I had no idea until that happened.
11        Q.   You were also asked about cutting people
12   off as confidential human sources, right?
13        A.   Yes.
14        Q.   And as a result of this conduct and other
15   people's misconduct, you cut them off?
16        A.   Right away.  I'm looking for a reason most
17   of the time.
18        Q.   So what --
19             MS. FOX-YOUNG:  Your Honor, I think this
20   mischaracterizes his testimony.  They weren't cut
21   off after the tablets.
22             THE COURT:  I'll let you deal with that on
23   redirect.
24             MR. CASTELLANO:  I'll clarify
25   "misconduct," Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

BY MR. CASTELLANO:

 Q.   Following misconduct, Agent Acee, were
people cut off as confidential human sources?

 A.   They were closed as confidential human
sources.

 Q.   And did that relieve them of their
obligations to be witnesses at trial?

 A.   Those are two distinctly different
categories.

 Q.   Regarding Billy Cordova being cut off and
still recording somebody, at whose request was that?

 A.   The Department of Corrections.

 Q.   So even though the FBI provided the
equipment, was it the FBI's operation, or did you
aid them in recording someone else?

 A.   An FBI agent in this case, Agent Stemo,
aided them.  They don't have their own recording
devices; we provided that.  And it was on an active
open FBI investigation.  It's also not against
policy to do so.

 Q.   The question is:  Can somebody help the
FBI without being a confidential human source?

 A.   Yes.  Anyone can.

 Q.   Is that significant, whether he was a
source or not when he aided law enforcement?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8024

1    A.   No.

2    Q.   You were also asked about Billy Cordova's

3  statement in December of 2017, where he indicated

4  that Daniel Sanchez asked for a shank a week before

5  the Molina murder?

6    A.   Yes, it was about a week.

7    Q.   And do you remember him actually

8  correcting that statement in January of 2018,

9  indicating that it was on March 6th or 7th?

10    A.   Yes.

11    Q.   So did he actually correct his previous

12  statement?

13    A.   He did.

14    Q.   Now, I'd say virtually every cooperating

15  witness in this case at some point has admitted to

16  drug use, and a long history of drug use.  Are you

17  aware of that?

18    A.   Yes.

19    Q.   So for people like Billy Cordova, were you

20  surprised when each of them used drugs even while

21  they were cooperating witnesses?

22    A.   Not surprised, but disappointed.

23    Q.   Why were you not surprised?

24    A.   Substance abuse grips a lot of people, and

25  it affects our whole country.  It's difficult,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  particularly for these guys who have used drugs, in

2  some cases, since they were in middle school.

3      Q.   Okay.  And so can you just tell someone,

4  "Don't use drugs," and automatically they never use

5  drugs again?

6      A.   I wish I could, but no.

7      Q.   You were also asked about whether or not

8  certain cooperators were able to basically write

9  their own indictments.  Do you remember that?

10     A.   Yes.

11     Q.   Including people like Freddie Muñoz and

12 Lupe Urquizo?

13     A.   I recall that.

14     Q.   Did they get to write their own

15 indictments?

16     A.   No.

17     Q.   Did they actually participate in telling

18 you things they had done criminally so we could put

19 that into their charging documents?

20     A.   Yes, they did.

21     Q.   Did they volunteer that information?

22     A.   They volunteered it.

23     Q.   I think Lupe Urquizo was impeached with --

24 what did he say? -- maybe like 29 or maybe more?

25     A.   Yes, that sounds right.  I think it was 29

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8026

1  overt acts in his RICO conspiracy.

2       Q.   Is that how someone like Lupe Urquizo or

3  Freddie Nunez helped write their indictments, is by

4  telling you about their past misdeeds?

5       A.   Yes.

6       Q.   You've been asked about Billy Cordova and

7  at least one other cooperator not being charged in

8  this case.  Do you remember that?

9       A.   Yes.

10      Q.   Does the fact that someone else hasn't

11 been charged mean that other people aren't guilty of

12 offenses?

13      A.   No.

14      Q.   Including the men sitting in this court?

15      A.   Correct.

16      Q.   In a meeting with David Calbert and Lupe

17 Urquizo, you were asked about that, as well, and the

18 time they got to meet?

19      A.   Yes.

20      Q.   Were there attorneys in the room with

21 them?

22      A.   Yes.

23      Q.   And so if those two had basically agreed

24 to make up a story, would they have had to do so

25 with their lawyers in the room?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1       A.   Yes.

 2       Q.   And are those lawyers bound by ethical

 3  rules?

 4       A.   Yes, they are.

 5            MS. FOX-YOUNG:  Your Honor, foundation.

 6            THE COURT:  Overruled.

 7            MS. FOX-YOUNG:  And this also goes to

 8  attorney-client privilege.

 9            THE COURT:  Overruled.

10  BY MR. CASTELLANO:

11       Q.   And regarding those two gentlemen, you

12  were asked about their stories about whether there

13  was one paper or two pages, one or two pages.  Okay?

14  Would the difference of one page between them, off

15  and on, do you recall if they each told you it was

16  an LCPD report?

17       A.   Yes, they thought that it was.

18       Q.   Regarding some sort of robbery?

19       A.   Yes.

20       Q.   And do you know if people, just anyone on

21  the street, know the difference between a robbery

22  and a strong-armed robbery?

23       A.   No.  They often confuse burglary and

24  robbery, too.

25       Q.   So if someone tells you a strong-armed
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8028

 1  robbery, does that --

 2       MS. JACKS:  Your Honor, I object to this

 3  line of questioning.  It's irrelevant what someone

 4  on the street knows.  The witnesses have testified

 5  about their knowledge.

 6       THE COURT:  He can testify about what he

 7  thinks strong-armed robbery is since that term has

 8  been used and it has been used by him, but probably

 9  that's about it.

10  BY MR. CASTELLANO:

11       Q.   Go ahead, Agent Acee.

12       A.   I need you to repeat the question.

13       THE COURT:  Yeah, I don't think he needs

14  to answer that question.  If you want to talk about

15  his understanding of what a strong-armed robbery is

16  and what he meant by it and why he used that term, I

17  think that's fair game because that's what he

18  testified.  But as far as probably the public or

19  people in general, I don't think that has much

20  benefit.

21       A.   So I use that term because I focused on

22  Molina's statement to the police, which was

23  recorded.  There was a transcript.  Molina claims

24  there was no gun involved.

25       MS. JACKS:  Objection, hearsay.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8029

```
 1              THE COURT:  Well, I'm not remembering the
 2    statement, but if it's being offered for the truth,
 3    then I need to sustain.
 4              MS. JACKS:  Can we strike the answer,
 5    please?
 6              THE COURT:  Okay.  I'll strike the answer.
 7    BY MR. CASTELLANO:
 8         Q.   You don't have to tell us what you read in
 9    the reports, but are you generally aware of that
10    investigation?
11         A.   Yes.
12         Q.   Are you aware it's an LCPD investigation?
13         A.   It is.  Or it was.
14         Q.   And are you aware of whether or not
15    Mr. Calbert and Mr. Urquizo also indicated it was an
16    LCPD investigation?
17         A.   They did.
18              MR. CASTELLANO:  May I have a moment, Your
19    Honor?
20              THE COURT:  You may.
21              MR. CASTELLANO:  Thank you, Your Honor.  I
22    pass the witness.
23              THE COURT:  Thank you, Mr. Castellano.
24              Who would like to go first with redirect?
25    Mr. Lowry.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8030

1           MR. LOWRY:  Well --

2           MS. BHALLA:  Can we have just a moment,

3    Your Honor?

4           THE COURT:  You may.

5           MR. CASTELLANO:  Your Honor, I'm sorry.  I

6    did have one more question.  I apologize.  It's

7    here, waiting for me at the podium.

8    BY MR. CASTELLANO:

9       Q.   Agent Acee, you were asked about Mario

10   Rodriguez and his prior sex offenses.  Do you

11   remember that?

12      A.   Yes.

13      Q.   I'm going to show you on the visualizer,

14   if I can, paperwork related to that offense.  And

15   for the record, this is from Mario Rodriguez's,

16   what's called pen pack of his prior convictions.

17      A.   Yes, sir.

18      Q.   Beginning on Bates stamp 8778.

19           MS. JACKS:  Has this been admitted as an

20   exhibit?

21           MR. CASTELLANO:  I think it has.  I can

22   double-check.

23           THE COURT:  Why don't you give the exhibit

24   number.

25           MS. FOX-YOUNG:  Your Honor, I'd ask, if

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    we're not sure it's been admitted, that it be taken

2    down.

3            THE COURT:  It's already off.

4            MR. CASTELLANO:  Thank you, Your Honor.

5    It has been admitted as Government's Exhibit 238.

6    BY MR. CASTELLANO:

7        Q.   So once again, Agent Acee, I'm going to

8    show you beginning on page -- well, first of all, on

9    8781, can you see that this is a judgment and

10   commitment for Mario Rodriguez?

11       A.   Yes.

12       Q.   And then on the next page of his judgment,

13   8782, these are the charges we discussed already,

14   correct?

15       A.   Yes.

16       Q.   Including his criminal sexual penetration

17   convictions?

18       A.   Yes.

19       Q.   I'm going to have you look carefully at

20   this document, each page.  I'm going to ask you if

21   there is an indication in here that he must register

22   as a sex offender?  So that's what I'm asking you to

23   look for.

24       A.   Okay.

25       Q.   Turning to that page, do you see anything

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8032

1   on there?

2        A.   No.

3        Q.   Turning to page 8783, I'll make it larger

4   for you.  I apologize.

5        A.   No, I got through it.  In the language

6   here where it's indicating what must happen, it

7   doesn't indicate about registration.

8        Q.   So right now, this page indicates how much

9   time he's supposed to get for each of the charges?

10       A.   Correct, and how much time he'll serve on

11  post supervision.

12       Q.   Correct.  So, for example, you make a good

13  point here.  I'm going to circle just one portion

14  which says he gets a basic sentence of 18 months

15  followed by one year of parole?

16       A.   Correct.

17       Q.   So when he gets out of prison, he has an

18  idea of whether or not he's going to be supervised

19  or not?

20       A.   Yes, what his post-prison conditions are.

21       Q.   That's 8783.  I'm going to show you page

22  8784.

23       A.   This continues with what his sentencing

24  will be, but there's no indication of registering as

25  a sex offender.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1        Q.   Final page of that documents, 8785.

2        A.   This is on the top just in terms of appeal

3   and cost and then signatures, so no indications of

4   registering as a sex offender.

5        Q.   So if Mr. Rodriguez pled guilty and he

6   wasn't advised in his judgment of having to register

7   as a sex offender, do you understand why he would be

8   upset about that?

9             MS. JACKS:   Objection, Your Honor.  First

10   of all, it's irrelevant what this witness

11   understands.

12             THE COURT:   Sustained.

13        Q.   Are you aware that Mr. Rodriguez is upset

14   about that?

15        A.   Yes.

16        Q.   And do you recall defense counsel

17   impeaching him with things he's filed with the

18   Court, trying to get that overturned because he was

19   not aware of that?

20        A.   Yes.

21        Q.   Have you seen judgments before, where

22   people are notified of certain things that are

23   expected of them following their conviction?

24        A.   Yes.

25        Q.   I'm going to show you Government's Exhibit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   777 which has already been admitted.  Do you

2   recognize this document?

3        A.   Yes, sir.

4        Q.   After this document was admitted did you

5   notice one or two mistakes in your entries?

6        A.   Yes.

7        Q.   And have you prepared an updated,

8   corrected version so we have the accurate

9   information in the table?

10        A.   Yes, I did.

11             MR. CASTELLANO:  Your Honor, at this time

12   I move either to substitute the update of the

13   Exhibit 777, or I can label it 777-A so we can see

14   the differences between the two.

15             THE COURT:  Defendants' thought?  Mr.

16   Lowry?

17             MR. LOWRY:  Yes, Your Honor.  This exhibit

18   was not admitted.  There was conditional admittance.

19   I would ask that the Court refrain from ruling on

20   its admission until after we question the agent

21   about it.

22             THE COURT:  All right.  Let's wait until

23   they've had a chance to voir dire the witness on it.

24             MR. CASTELLANO:  Just for purposes of

25   identification, Your Honor, so there is no mistake

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  between the two documents, I'm going to label the

2  updated version Exhibit 777-A, and I'll move its

3  admission pursuant to the Court ruling on it.

4            THE COURT:  All right.

5            MR. CASTELLANO:  And I'll leave it here at

6  the podium for counsel.

7            THE COURT:  All right.

8  BY MR. CASTELLANO:

9       Q.   Agent Acee, how did the updated version of

10 the table come about?

11      A.   I created the first one here in court

12 while I was seated at the table, and I was only able

13 to use hard copies of reports that I had in one of

14 my boxes there.  I created the second one when I

15 went back to the actual FBI office.  I was able to

16 get on the computer and verify what we actually had,

17 where the official reports were stored.  I noticed a

18 couple dates were wrong, and I noticed some

19 additional reports that I didn't have here in the

20 courtroom.

21      Q.   So you updated the document now with

22 information from the computer?

23      A.   Yes, sir.

24            MR. CASTELLANO:  I pass the witness, Your

25 Honor.




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  Thank you, Mr.
 2   Castellano.
 3              Ms. Bhalla, did you want to go next?
 4              MS. BHALLA:  Thank you, Your Honor.
 5                   REDIRECT EXAMINATION
 6   BY MS. BHALLA:
 7      Q.   Agent Acee, are you aware that the defense
 8   requested field notes from you and other FBI agents
 9   on the case, in regards to the prosecution of this
10   case?
11      A.   Yes, ma'am.
12      Q.   And you are aware that those were ordered
13   to be produced in 2017?
14              MR. CASTELLANO:  Objection, Your Honor.
15   That misstates the facts.
16              THE COURT:  Well, I'll let him testify as
17   to his understanding.  Overruled.
18   BY MS. BHALLA:
19      Q.   Thank you.
20      A.   Do you want me to answer?  Or no?
21      Q.   Yes, please.  I think you already answered
22   it, didn't you?
23      A.   No.
24      Q.   Okay.  Then go ahead and answer it,
25   please.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


8037

1      A.   I recall some pretrial hearings on that.

2 But I was asked to review my notes, but not produce

3 them.

4      Q.   Okay.  So you were asked to review them,

5 but not produce them, and that's your understanding

6 of it?

7      A.   No, there's more to that.  I'm sorry.

8      Q.   Okay.

9      A.   We were asked to review them, and if

10 they contained material facts or exculpatory

11 information --

12      Q.   Okay.

13      A.   -- not in the 302, that we should bring

14 those over.

15      Q.   Okay.

16      A.   Then yesterday I was asked -- or I was in

17 the courtroom when the Court ordered that we turn

18 the rest of them over, so myself and four other

19 agents did that all night, last night.

20      Q.   Okay.  And you put them on a disc?

21      A.   I didn't.  I gave my original notes to a

22 paralegal at the U.S. Attorney's office, who still

23 has them.

24      Q.   Okay.  Would you agree with me that we got

25 a disc today?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1      A.   Yes.

 2      Q.   And would you agree with me that for the

 3 most part, you know what's on this disc?

 4      A.   For the most part, yes.

 5      Q.   And would you agree with me that this

 6 summarized the contents of what was on the disc that

 7 was produced to the defendants this morning in court

 8 after the Government rested their case-in-chief?  Do

 9 you want to look at them?

10      A.   Based on the size of the documents you're

11 holding, that looks about right.

12      Q.   Thank you.

13           MS. BHALLA:  Your Honor, I pass the

14 witness.

15           THE COURT:  Thank you, Ms. Bhalla.

16           Mr. Lowry, do you have redirect?

17           MR. LOWRY:  Yes, Your Honor.

18           THE COURT:  Mr. Lowry.

19                REDIRECT EXAMINATION

20 BY MR. LOWRY:

21      Q.   Good morning, Agent Acee.

22      A.   Good morning.

23      Q.   Agent, I want to start off with asking you

24 a few questions following up with Eric Duran.  I

25 think Mr. Montoya -- you understand what a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1  controlled buy is, correct?

 2      A.   Yes, sir.

 3      Q.   The protocol for a controlled buy is --

 4  well, it's a highly scripted event, is it not?

 5      A.   No, but we control it.

 6      Q.   Well, when I say "highly scripted," you

 7  just don't send somebody out and say, "Go buy some

 8  drugs and come back and talk to me," do you?

 9      A.   I don't, no.

10      Q.   And probably nobody that's working with

11  the FBI would do it that way?

12      A.   They shouldn't be.

13      Q.   Right.  And that's because there is a

14  series of steps you take to make sure about the

15  accuracy of the drugs that are obtained, and the

16  target and how they're obtained, correct?

17      A.   We do our best to control that environment

18  and that interaction, yes.

19      Q.   Right.  And you do that by meeting with

20  the individual you're working with, either the

21  undercover agent or a confidential human source?

22      A.   Yes, sir.

23      Q.   And you completely search them to make

24  sure they don't have any drugs or contraband on

25  them?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8040

```
1        A.    Correct.
2        Q.    Then you provide them with the controlled
3   buy funds to purchase the drugs?
4        A.    Yes.
5        Q.    And then you send them to the target who
6   has the drugs that they're going to buy, correct?
7        A.    Yes, all the while under surveillance.
8   Exactly.
9             THE COURT:  Mr. Lowry, let's talk to the
10  jury a little bit about what they'd like to do.  Our
11  break is kind of coming a little later this morning
12  because I met with the attorneys this morning.  Do
13  y'all want to take a 15-minute break and then come
14  back, and have a late lunch?  How many of you want
15  to do that, like we've been doing?  All right.  It
16  looks like most people.  Does that work for the
17  parties and for the lawyers?  All right.
18             So why don't we take about a 15-minute
19  break, and we'll come back in and we'll do a late
20  lunch.
21             All rise.
22             (The jury left the courtroom.)
23             THE COURT:  All right.  We'll be in recess
24  for about 15 minutes.
25             (The Court stood in recess.)
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN &ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  We'll go back on
 2   the record.  Is there anything we need to discuss
 3   before we bring the jury in?  Anything I can do for
 4   you?  From the Government, Mr. Castellano, Ms.
 5   Armijo?
 6              MS. ARMIJO:  No, Your Honor.  Thank you.
 7              THE COURT:  How about you, Ms. Fox-Young?
 8              MS. FOX-YOUNG:  Your Honor, just as part
 9   of the record of the hearing the Court conducted,
10   I'd like to move the admission of the agent notes
11   that we just received while Agent Acee has been on
12   the stand.  And I'm not sure what the next exhibit
13   number is.
14              THE COURT:  You want it to be --
15              MS. FOX-YOUNG:  For yesterday's hearing.
16              MR. VILLA:  That's what we want.
17              THE COURT:  All right.  I've got it as GA,
18   was the last one that was --
19              MS. JACKS:  Your Honor, I think that's a
20   trial exhibit.
21              MR. VILLA:  Yesterday.
22              MS. JACKS:  And I think what Ms. Fox-Young
23   is asking is to number, or to letter the exhibit
24   pursuant to the hearing yesterday.
25              THE COURT:  So I think that the last one
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    was Exhibit H.

2              MS. GILMAN:  I have T.

3              THE COURT:  Well, you're correct.  I mean,

4    they were out of order, so I guess if you're asking

5    for that, T would be the last one.

6              MS. GILMAN:  So this one would be U.

7              THE COURT:  All right.  Any objection from

8    the Government?

9              MS. ARMIJO:  No, Your Honor.

10             THE COURT:  All right.  Does any other

11   defendant have any objection?

12             All right.  Defendants' Exhibit U will be

13   admitted to the, I guess what we're calling the

14   Brady hearing.

15             (Defendants' Exhibit U admitted.)

16             MS. FOX-YOUNG:  Okay.  And, Your Honor,

17   I'd just like to note that it was received, I think

18   it was approximately 11:00 today, by the defense.  I

19   don't have the exact time, although I guess the

20   record will reflect that.  Thank you, Your Honor.

21             THE COURT:  Did you have some things,

22   Ms. Jacks?

23             MS. JACKS:  Your Honor, I just wanted to

24   add to that.  I used my computer to count the pages.

25   That's 482 pages of agent notes.  So that, by my

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   calculation, probably would require something along
 2   the lines of six to eight hours to actually review,
 3   and probably double that to compare that to the 302s
 4   that they correspond to.
 5             THE COURT:  All right.
 6             MS. JACKS:  And these notes are
 7   handwritten, so you can't use OCR or any sort of
 8   computer tricks to search them for important
 9   materials.  I mean, it's ridiculous to have this
10   amount of material dumped on us the last day of
11   evidence in this trial.
12             THE COURT:  All right.
13             All rise.
14             (The jury entered the courtroom.)
15             THE COURT:  All right.  Please be seated.
16             Mr. Acee, I'll remind you that you're
17   still under oath.
18             Mr. Lowry, if you wish to continue your
19   redirect of Mr. Acee, you may do so at this time.
20             MR. LOWRY:  Thank you, Your Honor.
21   BY MR. LOWRY:
22        Q.   So we were talking about the mechanics of
23   a controlled purchase, and I think we left off, you
24   send your undercover to the house or to the
25   location, correct?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


```
 1        A.   Yes, sir.

 2        Q.   And they would -- and they're under

 3   observation as best as you can perform it all the

 4   time?

 5        A.   Yes.

 6        Q.   And if they go inside the house or

 7   something like that, obviously you can't be inside

 8   the house?

 9        A.   No, but we could have a live -- a live

10   wire or something like that.

11        Q.   You have a button camera or something?

12        A.   A live wire or something like that.  But

13   yes, we don't go in with them.

14        Q.   And then the controlled buy takes place,

15   and they exchange money for drugs or contraband or

16   weapons or whatever?

17        A.   Sure.

18        Q.   And then hopefully, they exit the

19   structure or the location?

20        A.   Yes.

21        Q.   And return to a prearranged meeting place,

22   while you're observing them the whole time, like a

23   church, a parking lot, where you can rendezvous with

24   the undercover, correct?

25        A.   Yes.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.   And at that time you re-search the

2  undercover to see what they have on them, that

3  individual, correct?

4      A.   Yes, sir.  We should clarify we're talking

5  about an informant.  If it's an actual FBI agent,

6  we're not searching them.

7      Q.   Not going to do that?  Okay.  An

8  informant.  An informant would be someone like Mario

9  Montoya?

10     A.   Yes, sir.

11     Q.   Or Eric Duran?

12     A.   Correct.

13     Q.   And you would search them?

14     A.   Yes.

15     Q.   And recover the controlled substance or

16 whatever elicit contraband you're looking for?

17     A.   Yeah, in addition to making sure there is

18 no left-over money.

19     Q.   Correct.  You keep a strict accounting of

20 all the cash and everything?

21     A.   Yes, sir.

22     Q.   And all of that is a fairly meticulous

23 process that you supervised from beginning to end?

24     A.   Correct.

25     Q.   So it wouldn't be the case where you would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8046

```
 1   leave your informant passed out in a car?
 2       A.   No.  That doesn't help my investigation.
 3       Q.   And, in fact, when Mr. Duran was picked
 4   up, passed out in a car, he wasn't on an FBI
 5   investigation, was he?
 6            MR. CASTELLANO:  Objection, calls for
 7   hearsay.
 8            THE COURT:  It would.
 9            MR. LOWRY:  Okay.
10            THE COURT:  Sustained.
11   BY MR. LOWRY:
12       Q.   To your knowledge, was Mr. Duran -- in
13   your understanding was Mr. Duran ever authorized to
14   engage in controlled buys?
15            MR. CASTELLANO:  Objection, calls for
16   hearsay.
17            MR. LOWRY:  I'm asking for his
18   understanding.
19            THE COURT:  If he knows.  He's an FBI
20   agent, and he was supervising him.
21            MR. CASTELLANO:  I'd object to hearsay.
22   He's asking about the other state's investigation in
23   which he was not involved.
24            THE COURT:  Well, right now it's a yes or
25   no question.  Overruled.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

 1   BY MR. LOWRY:

 2        A.   Yes.

 3        Q.   Yes, you have an understanding?

 4        A.   Yes.

 5        Q.   And is it your understanding that

 6   Mr. Duran, in November of 2017, wasn't authorized to

 7   make controlled purchases?

 8             MR. CASTELLANO:  Objection, calls for

 9   hearsay.

10             THE COURT:  Overruled.

11        A.   I need to explain.

12        Q.   I'm just asking.  Mr. Castellano is

13   concerned about hearsay.  I just want a simple yes

14   or no.

15        A.   In early November he was still an FBI

16   informant and he could have been used to make buys.

17   I think he was.  I'm just not clear on the dates.

18             MR. LOWRY:  May I approach, Your Honor?

19             THE COURT:  You may.

20        A.   Yes, sir, I've read the first paragraph.

21        Q.   Did that refresh your recollection about

22   whether Mr. Duran was authorized to purchase drugs?

23        A.   That was helpful, yes.

24        Q.   And was he authorized to purchase drugs,

25   in your understanding, in November of 2017?

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 820-6349                                                  FAX (505) 843-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1-800-669-9492
e-mail: info@litsupport.com

8048

1      A.   The answer is yes.  But in that email you
2  showed me, that's related to his arrest.  He was
3  not.
4      Q.   He was not authorized in that situation?
5      A.   Correct.
6      Q.   Nor was he authorized to possess any kind
7  of firearm?
8      A.   Not unless it was part of an FBI
9  operation.  Outside of that, no.
10     Q.   Which is why you testified in this case
11  about getting DNA off the weapon, to analyze the
12  weapon for potential future prosecution?
13     A.   Correct, sir.
14     Q.   He's not being prosecuted today?
15     A.   We're pursuing it.
16     Q.   Now, Mr. Duran -- we've heard
17  conversations just today, the audio conversations
18  between Mr. Duran and others.  It's fair to say that
19  that clip, the audio clip we heard between Chris
20  Garcia and Mario Montoya was November 29, 2015,
21  correct?
22     A.   In one of the clips, it was during that
23  controlled meeting, yes.
24     Q.   And that controlled meeting is the one
25  where Mr. Montoya recovered a weapon, the Phoenix

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    pistol, the .22 caliber pistol, for the plot, if you
 2    will?
 3         A.   Yes.
 4         Q.   And that, again, was a very structured
 5    moment in the investigation in this case, wasn't it?
 6         A.   Yes.  It was a controlled FBI operation.
 7         Q.   Correct.  And so you're familiar with that
 8    date, November 29, 2015?
 9         A.   Yes, sir.
10         Q.   And that was the date that Mr. Montoya
11    picked up the weapon?
12         A.   Correct.
13         Q.   And that was the date we talked about on
14    your direct, where you instructed Mr. Montoya to
15    discuss with Mr. Garcia the purpose of the weapon?
16         A.   Yes.
17              MR. LOWRY:  Your Honor, could we play that
18    clip?  I believe it's Government's -- is it 238?
19              THE COURT:  Is this one of the ones that
20    Mr. Castellano --
21              MR. LOWRY:  Yes.
22              THE COURT:  -- played this morning?  So
23    it's in evidence.  You may play it.
24              (Tape played.)
25    BY MR. LOWRY:
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8050

1      Q.   There is no mention of Gregg Marcantel in

2   that clip, is there?

3      A.   No, sir.

4           MS. JACKS:   Your Honor, could we ask for a

5   limiting instruction regarding these clips?

6           THE COURT:   Yes.   This evidence can only

7   be used against Mr. Baca.   You can't consider it in

8   your deliberations as to the charges against the

9   other three gentlemen; just as to Mr. Baca, as well

10  as Mr. Acee's comments on the tape here.

11  BY MR. LOWRY:

12     Q.   So you testified on direct, and I just

13  want to make sure the jury understands.   This audio

14  that we heard is a conversation between Eric Duran,

15  who is Crazo, correct?

16     A.   Yes.

17     Q.   And Pup, who is Mr. Baca, correct?

18     A.   Yes.

19     Q.   And the CHS in this case would be Mario

20  Montoya, correct?

21     A.   Yes.

22     Q.   So it's fair to say, based upon the

23  testimony you gave on direct, that any telephone

24  conversation in this case that the jury is going to

25  hear took place after November 4, 2015?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8051

1      A.    My direct with you on Monday, I think

2  that's what we covered, yes.

3      Q.    And you agreed with me, based on your text

4  messages with Eric Duran, that's when the telephone

5  conversations started being recorded?

6      A.    Yes.

7      Q.    And so any time this jury is listening to

8  one of these recordings that involves anybody

9  outside of the facility, that's after November 4,

10  2015?

11      A.    If it's on Eric Duran's cellphone, yes.

12  There, of course, were like nine wiretaps, but --

13      Q.    Right.  Or even if it's on Mario Montoya's

14  phone, like this one?

15      A.    In this case, yes.

16      Q.    Right.  Because Mario Montoya would have

17  to call Eric Duran to get Mr. Baca on the telephone?

18      A.    That's true.

19      Q.    I mean, he didn't call the STIU Captain,

20  did he?

21      A.    No.

22      Q.    So I just want the jury to understand that

23  any of these calls, any of the telephone calls with

24  somebody outside of the facility, is after November

25  4th?

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                      201 Third NW, Suite 1630
Santa Fe, NM 87501                                             Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 820-6349                                                   FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8052

1      A.    If they're involving Mr. Baca, yes.

2      Q.    And I think you would agree with me, Agent

3   Acee, that at one point Mr. Duran actually asked Mr.

4   Baca point blank if he was interested in murdering

5   Mr. Marcantel?

6      A.    Early on.

7      Q.    And that conversation happened on October

8   24, 2015, didn't it?

9      A.    I believe so.

10      Q.    Do you need to refresh your recollection

11   with FBI reports?

12      A.    No, sir.

13      Q.    So you agree with me that that

14   conversation was on October 24, 2015?

15      A.    Yes.

16      Q.    And once Mr. Baca said he wasn't

17   interested in that, Mr. Duran stopped recording Mr.

18   Baca with the electronic recording device we've

19   referred to as the ELSUR device?

20      A.    No.

21      Q.    Well, I mean for a period of days?

22      A.    I need to look at the records.  I'm not

23   sure.

24      Q.    Absolutely.

25          MR. LOWRY:  May I approach, Your Honor?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8053

```
 1          THE COURT:  You may.

 2     Q.   And it's fair to say the FBI kept

 3 meticulous records on the times and dates of the

 4 electronic recordings?

 5     A.   Yes.

 6     Q.   And based on your review of the recording

 7 time signatures after October 24th, Mr. Duran didn't

 8 record Mr. Baca again for a period of days?

 9     A.   I don't think that's right, based on what

10 I saw in the records.

11     Q.   Okay.

12          MR. LOWRY:  May I approach again, Your

13 Honor?

14          THE COURT:  You may.

15     A.   It goes on again on the 26th and the 28th.

16     Q.   Now, the recording on the 26th was an

17 8-second recording?

18     A.   That's correct.

19     Q.   And do you remember what that recording

20 was?  The recording on the 26th was an 8-second

21 recording.

22     A.   Off the top of my head, I think it was

23 just the date; he's recording the date.

24     Q.   Right.  And that's Mr. Duran, himself,

25 speaking into the microphone, saying "Today's date"?
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8054

1      A.    Yes.

2      Q.    And Mr. Duran said, "Today's date is

3 10/26/2015"?

4      A.    Correct.

5      Q.    So that wasn't a recording with Mr. Baca,

6 was it?

7      A.    It was not.

8      Q.    So you would agree with me, then, after

9 Mr. Baca says, "I'm not interested in Mr. Marcantel

10 being murdered," on October 24th.  The next

11 recording involving Mr. Baca was October 28, 2015?

12     A.    I agree with the second part, just not the

13 first.

14     Q.    Would it refresh your recollection to

15 listen to the audio clip?

16     A.    No. I remember what Mr. Baca said.

17     Q.    Okay.  And, in fact, the FBI reports

18 memorializing that conversation indicated that Mr.

19 Baca was not interested in murdering Mr. Marcantel?

20     A.    Could you be more specific?  Which report?

21     Q.    Sure.  Do you recall the FBI report -- and

22 in fairness, this was one of your subordinates that

23 you directed to memorialize these conversations and

24 dictate the times, wrote a report that said for the

25 19th phone call, Pup tells CHS to have Mario, Poo

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8055

1  Poo, hit Santistevan and/or Adam Vigil, not

2  Marcantel?

3       A.   Yes.  Thank you.  I remember that.

4       Q.   And would you agree with me that that

5  phone conversation happened on October 24, 2015?

6       A.   Yes, sir.

7       Q.   And it happened late in the evening?

8       A.   Yes.

9       Q.   And after that recording, Mr. Duran didn't

10 record Mr. Baca for a period of almost four days?

11      A.   Correct.

12      Q.   You touched briefly upon about Mr. Duran

13 once he left New Mexico, and you said once you

14 learned about his legal troubles, you initiated an

15 investigation?

16      A.   Yes.  Limited, but yes.

17      Q.   And I believe you said last week that you

18 had issued search warrants for his Google account,

19 his Facebook account, his telephone accounts?

20      A.   When he had went off the rez, yeah.

21      Q.   Right.

22      A.   When we couldn't locate him, yes.

23      Q.   And he wasn't responding to your calls?

24      A.   No, for a couple weeks.

25      Q.   And he didn't respond to subpoenas to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  appear in this court, did he?

2       A.   Well, in fairness to him, I think the

3  Government accepted it on his behalf.

4       Q.   But when you called him to say, "Your

5  presence is requested, you have an RSVP for the New

6  Mexico Federal District Court" --

7       A.   Crickets.

8       Q.   And the work product of that

9  investigation, the fruits of your search warrant for

10 the Google, the Facebook pages, all of that, that

11 was never shared with defense counsel in this case?

12      A.   I don't think so, sir.  I think they're

13 sealed.  I did do a 302, just to be clear, that I

14 did turn over, describing that I did that.

15      Q.   You know, I want to move on from the

16 Marcantel and pick up with the concern with Mr.

17 Urquizo.  After looking at your field notes -- well,

18 I've looked at your field notes since the last time

19 you testified.  But the agents were confident after

20 his March 6, 2017, debrief that Mr. Baca didn't want

21 Mr. Romero to be killed?

22      A.   That's what I recall.

23      Q.   Okay.  And you drafted a report stating

24 just that?

25      A.   Yes.



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8057

1        Q.   That he wasn't to be killed?

2        A.   Or stabbed.

3        Q.   Or stabbed?

4        A.   Beat up.

5        Q.   Roughed up?

6        A.   Yes.

7        Q.   And so multiple agents that sat with him

8   during the March 6, 2017, debrief wrote the same

9   thing in their notes, didn't they?

10       A.   I don't know, sir.  I can tell you what --

11  I can represent what's in my notes and my 302.  I'd

12  want to look them over.  But I'm not sure what the

13  other agents wrote.

14       Q.   Sure.

15            MR. LOWRY:  May I approach, Your Honor?

16            THE COURT:  You may.

17            MR. CASTELLANO:  Your Honor, I have no

18  objection to questioning on his notes.  I do object

19  to the other notes as hearsay.

20            THE COURT:  All right.  Let's take them

21  one at a time.

22  BY MR. LOWRY:

23       A.   These are my notes, sir, and I think these

24  are Agent Stemo's.

25       Q.   And your notes are completely consistent

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    with the conversation you had with Julian Romero,

2    where you told Mr. Romero that Mr. Baca didn't want

3    him hurt too bad, that he didn't want him stabbed,

4    and didn't want him killed.

5         A.   Yes.

6         Q.   And, in fact, what Mr. Urquizo conveyed to

7    you on March 6, 2017, was that it was the younger

8    guys wanted to remove the older generation?

9         A.   That's what I recall, yes.

10        Q.   So they could create more room for them to

11   maneuver within the organization?

12        A.   Yeah, like a takeover, I guess.

13        Q.   And so that's completely inconsistent with

14   Mr. Urquizo's testimony here in court?

15        A.   I think he testified that Pup wanted him

16   killed.

17        Q.   But that's not what your notes say from

18   your --

19        A.   My notes from March 6th say differently,

20   correct.

21        Q.   So you would agree with me that based on

22   your initial debrief with him, his statements to you

23   are completely at odds with his testimony before

24   this jury?

25        A.   Just that statement regarding Mr. Baca's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8059

 1   intention, yes.

 2        Q.    Correct.

 3              MR. LOWRY:  May I approach, Your Honor?

 4              THE COURT:  You may.

 5        Q.    Now I want to move away from the Romero

 6   thing to Javier Molina.  And I'd asked you on direct

 7   at the beginning of the week if you'd ever attempted

 8   to verify any potential for these two gentlemen,

 9   being David Calbert and Joe Martinez, Cheech, to be

10   present in the rec yard at the same time?

11        A.    You asked me about that, yes.

12        Q.    And you indicated -- I asked you why

13   didn't you check the rec yard records, and you said

14   that they rarely, if ever, exist.  Or I don't want

15   to put words --

16        A.    I said it depends on the officers how well

17   the notes are taken.

18        Q.    Did you actually get the notes from the

19   time period in question?

20        A.    No.

21              MR. LOWRY:  May I approach, Your Honor?

22              THE COURT:  You may.

23        Q.    In the course of your investigation, did

24   anybody with the Department of Corrections ever

25   share with you rec yard records?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        A.    Yes.  I've seen them before, so my answer
 2   would be yes.
 3        Q.    Okay.  And do the rec yard records look
 4   like what I've handed you, which I can mark for
 5   identification purposes as Defendants' Exhibit next
 6   in order, GB?
 7        A.    Yes.
 8        Q.    And would documents like that fairly and
 9   accurately represent what the rec yard records would
10   look like?
11        A.    Yes.
12        Q.    And those are for PNM North, the housing
13   unit, the housing units there?
14        A.    All three of these are for the North.
15        MR. LOWRY:  Your Honor, at this time I'd
16   like to move for admission of Defendants' Exhibit
17   GB.
18        THE COURT:  Any objection, Mr. Castellano?
19        MR. CASTELLANO:  Was that GB?
20        THE COURT:  GB.
21        MR. LOWRY:  GB.
22        MR. CASTELLANO:  May I see the records
23   again, Your Honor?  I thought he was just going to
24   refresh him with them.
25        No objection, Your Honor.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8061

```
 1            THE COURT:  Anybody else have any
 2   objection?  Not seeing or hearing anything,
 3   Defendants' Exhibit GB will be admitted into
 4   evidence.
 5            (Defendants' Exhibit GB admitted.)
 6   BY MR. LOWRY:
 7       Q.   And just by way of an example, for the
 8   outdoor recreation unit at the PNM North, you would
 9   actually have listed the inmate's name over here?
10       A.   Yes, sir.
11       Q.   And then actually have the Department of
12   Corrections -- this is the inmate number, NMCD
13   number?
14       A.   Yes.  For that inmate, yes.
15       Q.   And that's the number that they carry with
16   them the day they step in the facility as a
17   convicted felon in New Mexico until -- for the rest
18   of their life?
19       A.   Yes.
20       Q.   And even if they return, they have that
21   same number?
22       A.   Yes.
23       Q.   And this would actually have the
24   recreational pen, the run that they would be placed
25   inside?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1       A.   Yes.

 2       Q.   And the time they entered it?

 3       A.   Yes.

 4       Q.   And the time that they left it?

 5       A.   Correct.

 6       Q.   And the officer who took them from their

 7  living quarters to the rec yard?

 8       A.   Yes, sir.

 9       Q.   And if things were done correctly, you'd

10  be able to document with specificity whether these

11  two individuals were in the rec cage at the same

12  time?

13       A.   Or about, yeah.  Maybe in passing.  But

14  yes.

15       Q.   But no such records exist for David

16  Calbert and Joe Martinez in this case?

17       A.    That's what Corrections represented to me.

18       Q.   Now, Ms. Jacks asked you a little bit on

19  her direct about this meeting that happened between

20  Lupe Urquizo and David Calbert.  And it happened

21  where?  Was it at the courthouse?  The FBI office?

22       A.    It was at the FBI office in Albuquerque,

23  in the inmate booking area in our office on the

24  first floor.

25       Q.   And that was August 22, 2017?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        A.   Yes.

2        Q.   Now, were you present when Mr. Urquizo

3   testified?

4        A.   Yes.

5        Q.   And you heard the phone conversations,

6   which you commented with Mr. Castellano about the

7   credit he thought he was going to get?

8        A.   I think so, yes.

9        Q.   And part of that, he was under the

10  impression he was going to get five years off his

11  sentence for lining up other cooperating people to

12  testify or to assist you in this case?

13       A.   I recall generally him saying those kinds

14  of things.

15       Q.   But was this a false impression on his

16  part?

17       A.   To an extent, yeah.

18       Q.   And what do you mean "to an extent"?

19  Would he get credit, like he told his family members

20  in the phone call, for signing up other people?

21       A.   No.  I mean to an extent, because I don't

22  make those decisions, but I certainly pay attention

23  to it.  If a cooperator brings in another

24  cooperator, I take note of that.

25       Q.   As does everybody involved in the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8064

1    prosecution?

2         A.   Yes, sir.

3         Q.   And that would be one of the factors both

4    law enforcement, the FBI, and the U.S. Attorney's

5    office would consider when they move for the 5K

6    reduction in the sentence at the end of that

7    particular person's case?

8         A.   Yes.  And I have represented to them and

9    their attorneys if they call me at a future

10   sentencing, the reason I make note of that kind of

11   stuff is that I'll be prepared to answer questions

12   about it.

13        Q.   And testify favorably, or at least

14   participate in their sentencing proceedings in a way

15   that would reflect more beneficially to their final

16   disposition?

17        A.   I'll testify honestly about whatever

18   questions I'm asked.

19        Q.   And if they were successful in recruiting

20   on behalf of your investigation, they would get

21   credit for that?

22        A.   Well, ultimately I guess that's up to the

23   judge, but I believe the United States -- and I

24   don't speak for the attorneys -- but I believe that

25   information could come out and would be favorable.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And so when Lupe Urquizo went into that

2   room with David Calbert, he was motivated to

3   convince David Calbert to cooperate?

4    A.   I witnessed the initial interaction, and I

5   think that that's fair.  He spoke favorably about

6   us, and me personally, and the process.  So I agree

7   with you.  I just don't know what his attorney told

8   him about the process.

9    Q.   And since then, as Ms. Jacks pointed out,

10  they've been housed together for extended durations

11  of time?

12   A.   No.  They were at different facilities up

13  until the trial started and then -- wait a minute.

14  I just know that Urquizo was held at a different

15  facility for quite some time.  He was out at Otero,

16  and I think he testified about that.  And as I sit

17  here today, I'm not sure he's -- I'm not sure he's

18  left there.  So I may have testified incorrectly to

19  Ms. Jacks.  I don't know if they're together right

20  now.

21   Q.   But they had ample opportunity, at least

22  on August 22nd, the 23rd, to compare notes?

23   A.   If you consider 10 minutes ample

24  opportunity, or their attorneys.

25   Q.   It depends on who's keeping the time,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8066

 1    according to the testimony?

 2         A.   I think our times were consistent.

 3         Q.   You've testified before in this case about

 4    this moment when Mr. Urquizo enters the Southern

 5    facility, correct?

 6         A.   I think so.

 7         Q.   At pretrial hearings?

 8         A.   I'm sure you'll remind me if I did.

 9         Q.   And I asked you about it on direct, and

10    you said that there seemed to be a little confusion

11    about that; that you thought maybe you misreported

12    that in your 302?

13         A.   Oh, I think I brought that up on Monday

14    and mentioned it again today.  Yeah, there's a

15    sentence in there that I was trying to point out on

16    Monday and wasn't able to.

17         Q.   And so you think that there was no

18    communication through a window?

19         A.   No, I think that there was initially.  I

20    think that we're talking about communication at two

21    different places in the facility, and that's where

22    it gets confusing.  Because I think there's

23    interaction at two different times and at two

24    different places.  And I'll admit, that was hard for

25    me to process when I was first hearing it.

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                   201 Third NW, Suite 1630
Santa Fe, NM 87501                                          Albuquerque, NM 87102
(505) 989-4949                                                      (505) 843-9494
FAX (505) 820-6349                                             FAX (505) 843-9492
                                                                    1-800-669-9492
                                                             e-mail: info@litsupport.com



BEAN
ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8067

```
 1        Q.   Can I pull up Defendants' Exhibit E-10.
 2   And do you recognize this at all?  This has been
 3   admitted into evidence.
 4        A.   Yes.  I've seen this photo a bunch of
 5   times.
 6        Q.   If I represented to you this is the
 7   interior of the blue pod, looking at the main door
 8   coming in and out of the blue pod?
 9        A.   That leads out to what we've been calling
10   the horseshoe area.
11        Q.   Exactly.  So if there is a communication
12   through the window of this, through the front door
13   of blue pod, it would have to be through that
14   window?
15        A.   If we're talking about a window, yes.
16        Q.   Correct.  And apparently in your 302, you
17   were talking about a window?
18        A.   At one point, I am.
19        Q.   Well, right.  You wrote in your 302 that
20   there was communication between Mario Rodriguez and
21   Lupe Urquizo as he entered the Southern facility
22   through a window?
23        A.   You'll have to show me the 302.
24        Q.   Sure.
25             MR. LOWRY:  May I approach, Your Honor?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8068

```
 1            THE COURT:  You may.
 2       Q.   And that's what you wrote in your reports,
 3  that they held a note up to the door?
 4       A.   Yes.
 5       Q.   But this would be as Mr. Urquizo is
 6  getting escorted into the facility from the North?
 7       A.   I believe so.
 8       Q.   Now, Mr. Urquizo testified that nobody --
 9  for this jury, he said there was no communication
10  through the window?
11       A.   You're right.  I think he said it went
12  under the door.
13       Q.   And could I pull up Defendants' Exhibit
14  E-17.  And do you recognize this as the top tier
15  door?
16       A.   Yes, sir.
17       Q.   And you would agree with me that this tier
18  door doesn't have a window?
19       A.   I agree.
20       Q.   And you would agree with me that this tier
21  door is virtually identical to the tier door on the
22  lower level?
23       A.   Yes.
24       Q.   Could we pull up Government's Exhibit 162.
25  And, again, the photo we just looked at would be the
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8069

```
1    tier door that separates the blue pod from the

2    yellow pod, correct?

3         A.   Yes, sir.

4         Q.   And that tier door is right there?

5         A.   It is on both levels.

6         Q.   Right.  So the 302 apparently -- well, Mr.

7    Urquizo thinks, as of today, that there was no

8    communication through the window?

9         A.   I think that's right.

10        Q.   And that would, again, be inconsistent

11   with what you believed after your interview with him

12   on March 6, 2017?

13        A.   It could be inconsistent with what I

14   understood him to be telling me.

15        Q.   And, in fact, in the pretrial hearings in

16   this case, when you testified on November 27, 2017,

17   you testified at length about this conversation that

18   Mr. Urquizo had, apparently had, through a window?

19        A.   I testified to what I wrote in my report,

20   yes.

21        Q.   Right.

22        A.   What I recalled.

23        Q.   And that's the testimony that today Mr.

24   Urquizo said never happened?

25        A.   No, just one area.  There is one point of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   contention there.  It's that sentence at the bottom
 2   of the paragraph.
 3        Q.   But --
 4        A.   I think I said held up to the door, and he
 5   said it went under the door.
 6        Q.   Right.  Well, in November 2017 you
 7   testified at length about -- and we went through
 8   this on your direct -- that you were under the
 9   belief that Mr. Martinez and Mario Rodriguez were
10   out here in the horseshoe, doing maintenance work.
11        A.   They were, and I think Mr. Urquizo agrees
12   with that in his testimony, when he was coming into
13   the facility.
14        Q.   That they were out here in the horseshoe,
15   doing maintenance work?
16        A.   I don't want to represent he said the
17   horseshoe specifically, but from my recollection --
18   and I defer to the Court's record -- but that he
19   testified, which was consistent with my memory and
20   my 302, that he did encounter them coming into the
21   facility.
22        Q.   In the horseshoe area?
23        A.   I think so.
24        Q.   And, in fact, you testified at a pretrial
25   hearing that Mr. Rodriguez and Mr. Martinez were out
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  in the horseshoe area, possibly painting?

2       A.    Painting or cleaning or something like

3  that.

4             MR. LOWRY:  May I have a brief moment,

5  Your Honor?

6             THE COURT:  You may.

7       Q.    Now, Mr. Acee, the United States had

8  offered Exhibit 777 in evidence.  And I believe

9  you've modified that initial summary, correct?

10      A.    Yes, sir, the chart.

11      Q.    The chart?

12      A.    Yes.

13      Q.    Now, in fairness, you've revised this

14 summary chart twice now, have you not?

15      A.    On the 27th, and again last night at about

16 10:30 or 11:00 p.m.

17      Q.    Now, would you explain to the jury the

18 revisions you did between the first and the second

19 revision?  Or do you recall?

20      A.    There were a couple of dates that I

21 changed, the date of the debrief.  Because I think I

22 found somewhere they were mislabeled, based on when

23 the report was approved, kind of what I would

24 classify as misreads; just that the approval date

25 and the date we write are sometimes different.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          And then I found a couple additional

2    debriefs that I wanted to include, that weren't on

3    the first one.

4          Q.   Okay.  And was this a similar revision

5    between the second and the one you produced

6    yesterday?

7          A.   Yes.  Because yesterday, following Court,

8    I'd been instructed to collect all agent notes

9    related to all those debriefs, so I spent about

10   eight hours at the Las Cruces office, pulling all

11   that up.  So then I had additional revisions on the

12   chart based on the time I spent in-depth studying

13   that stuff.

14         Q.   And if I understood your testimony last

15   week when this exhibit was conditionally introduced

16   into evidence, the purpose of this summary was sort

17   giving an overview of all of the FBI debriefs that

18   were done in this case?

19         A.   For Mr. Castellano.  I didn't know we'd be

20   talking about it in here.  I was trying provide Mr.

21   Castellano with a summary.

22         Q.   But that was the purpose of the summary?

23         A.   Yes.  It was a little hurried because I

24   thought it was just for him.

25         Q.   But your intention was to capture all of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8073

1   the debriefs with the individuals that testified in
2   this case?
3       A.   Yes, sir.
4       Q.   And while you might not have known that
5   Mr. Castellano was going to make it an exhibit last
6   week, by the time of yesterday you certainly
7   understood that?
8       A.   Yeah.  I should have written a draft on
9   it.
10      Q.   But your goal as of yesterday was to
11  capture everything?
12      A.   Yes, sir.
13      Q.   Okay.  And you obviously had the luxury of
14  having all of your field notes that were just
15  disclosed to the defense this morning?
16      A.   No.  Many of those were up in Albuquerque.
17      Q.   Well, there's no electronic database where
18  you could access those notes?
19      A.   No, not necessarily, unless you're saving
20  them electronically, which I don't.  I retain my
21  original notes.
22      Q.   Between last week and this week, you've
23  been in Albuquerque and have had access to those
24  notes?
25      A.   That's fair to say.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     Q.    I'm going to put on the Elmo what's been

2   conditionally entered.  This says right here, this

3   was your analysis as of yesterday, March 1, 2018,

4   correct?

5     A.    Last night.  Yes, sir.

6     Q.    And everybody had a long night last night.

7          Now, if I understand your chart correctly,

8   you had six debriefs from Manuel Jacob Armijo,

9   correct?

10    A.    Yes.

11    Q.    Now, you didn't include in your list the

12  debrief that took place with the arrest, when you

13  had to arrest Mr. Armijo for his drug violation?

14    A.    No, this is just debriefs.

15    Q.    Did you talk to Mr. Armijo on that day,

16  which was November 16, 2017?

17    A.    He's a big guy.  I try to keep him happy.

18  But he's got an attorney.  So, no, I didn't debrief

19  him.

20    Q.    Okay.

21    A.    We had some conversation, but not about

22  debriefing.

23    Q.    So the FBI 302 that you wrote, indicating

24  that you drove Mr. Armijo to the U.S. courthouse for

25  his initial appearance -- I mean, no actionable

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    information arose during that transport?

2         A.   No.  I respect the attorney-client

3    privilege.  I mean, I'm not going to tell you it was

4    a silent ride.  We talked.  I think I allowed him to

5    call his wife.  But I did not question him about the

6    case, no.

7         Q.   And some attorneys will give you authority

8    to do that in their absence, will they not?

9         A.   Yes, sir, and his attorney usually prefers

10   to be there.

11        Q.   Now, the next line down, for Javier Rubio,

12   you have three entries?

13        A.   I do.

14        Q.   Correct.  And you don't have the entry for

15   the debrief that took place on January 24th of this

16   year?

17        A.   Is that the one on the 23rd?  Because this

18   might be where I had to change some dates because

19   the reports, the way we interpret them, might be

20   different.

21        Q.   Okay.

22        A.   So I would want to look at them a little

23   closer.  I suspect it's the one on the 23rd.

24             MR. LOWRY:  May I approach, Your Honor?

25             THE COURT:  You may.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1      Q.    Does that refresh your recollection?

2      A.    Yes, sir.  You need to put the 24th up

3   there.

4      Q.    So your third revision let's just say

5   didn't quite capture the correct date, then?

6      A.    No.

7      Q.    Now, let's move down to Mr. Urquizo.

8      A.    I just wonder what the notes say on that

9   one.

10      Q.    Do you want to see them?

11      A.    No, I'll take your representation.  It

12   wouldn't be the first time an agent put the wrong

13   date on the 302, but the notes have the correct

14   date.  But I'll concede that I have an error there.

15      Q.    Now, Mr. Urquizo.  You have five.  But

16   your records seem to indicate that when Mr. Urquizo

17   came down to Las Cruces to the district courthouse

18   here, for I guess his initial appearance, that you

19   spent breakfast and maybe a lunch with him?

20      A.    Yes, when he was meeting with his

21   attorney.  If there's expenses there, that's what

22   they were for.  I didn't sit and eat with him, but

23   we bought him food.

24      Q.    Right.  And your expense report says that

25   there were CHS meal expenses during debrief sessions

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    in support of the captioned matter.

2         A.   Okay.

3         Q.   So would you consider your meetings with

4    him to be debrief sessions that could be included in

5    this witness summary?

6         A.   No.  The more accurate document is going

7    to be the 302.  This is done two months after the

8    fact, when I get a credit card bill on my undercover

9    credit card.

10        Q.   So you didn't debrief with him?

11        A.   No, sir.

12        Q.   So you just mistakenly wrote in your

13   expense report that these were debrief sessions?

14        A.   It's a play on words.  I mean, I should

15   have said during -- see, my finance office, it

16   limits what they want to see on our forms.

17        Q.   Right.

18        A.   So I'm pushing the form through.  I'm

19   accurate.  I'm being honest with you.  We didn't

20   debrief him.  I'm getting my credit card paid in the

21   language that my office wants to see on my

22   paperwork.

23        Q.   And this was for the breakfast that you

24   had at the Crane Cafe in Lemitar, New Mexico?

25        A.   That's a gas station.  It's off that exit.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  I think I got him a breakfast burrito and coffee.

2  We didn't stay and eat.  He's in shackles and in the

3  back of an STIU van.

4      Q.   And then Rasco's Barbecue on the way home?

5      A.   Across the street here.  Again, I went in

6  and I ordered, brought his food out to him.  He ate

7  it in the back of a Corrections van.

8      Q.   But despite the characterization of them

9  being debrief sessions, you didn't debrief him?

10      A.   I did not debrief him.

11      Q.   Mario Rodriguez.  You have on your report

12  four debriefs with Mario Rodriguez.  And my review

13  of your records indicates that there was another

14  meeting between you and Mr. Rodriguez on November

15  16, 2017.

16      A.   Is that the one at the pen, with Mr.

17  Sanchez, Ron Sanchez?

18      Q.   At the North facility in Santa Fe, yes.

19      A.   That's not a debrief.  That's the meeting

20  with Mr. Sanchez then, Ronald Sanchez.

21      Q.   Okay.  But Mario Rodriguez was present

22  during that debrief?

23      A.   Yes, sir.  I recorded it.

24      Q.   And that's the debrief when you said, "And

25  you've got to testify truthfully," and Mr. Rodriguez

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   laughed?

2        A.   No.  First of all, it's not a debrief.

3        Q.   Well, the interview, I guess, or the

4   meeting with Ronald Sanchez.

5        A.   And somebody said -- I said, "You've got

6   to testify truthfully," and he laughed at me?

7        Q.   He laughed at the notion.

8        A.   I don't remember that.  I don't think it's

9   funny, either.

10       Q.   No, it wouldn't be funny, would it?

11       A.   No.

12       Q.   Yeah.  I don't think he laughed.

13       A.   I wouldn't support that.  Or if I heard

14   that correctly, I wouldn't -- we'd have a

15   confrontation over it.

16       Q.   Now, your summary chart doesn't include

17   the December 12, 2017, meeting with Mario Rodriguez.

18   And this is, again, at the PNM North facility with

19   Captain Sergio Sapien and Chris Cupit.

20       A.   Yeah, that's not a debrief.  The FBI

21   didn't participate in that.  That's a meeting that

22   they have with him about institutional security.

23       Q.   And so even though there's a 302 written

24   on it with information that was obtained from Mario

25   Rodriguez, you don't consider that a debrief related

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8080

```
 1   to this case?
 2        A.   I don't believe that's true.  My
 3   understanding of that meeting, what was represented
 4   to me, is they were talking to him about lax
 5   security at the institution, which doesn't have to
 6   do with this case, in my opinion.
 7        Q.   So you don't think that all of the
 8   information we've heard about shanks and the
 9   creation of shanks and all the security issues
10   involved in this case was related to this
11   conversation?
12        A.   Well, in a roundabout way it is.  But they
13   were talking about right here, right now,
14   improvements that need to be made at the facility.
15   I think they even talked about putting a camera on
16   him and having him try escape from a cell or
17   something. but we weren't part of that.
18        Q.   Okay.  Let's drop down to the next line
19   with Mr. Armenta, Kreaper.  You have two debriefs
20   here, but you've testified extensively today about a
21   meeting you had with Mr. Armenta on December 2,
22   2016.
23        A.   Was that the one where I was asked if I
24   met with the group?
25        Q.   Correct.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8081

```
 1        A.    Yes.

 2        Q.    And that generated a 302 drafted by you?

 3        A.    It did.

 4        Q.    So that's not on your list?

 5        A.    I guess you and me are going to disagree

 6  on what a debrief is, then.  I asked one question.

 7        Q.    It was a question related to this case,

 8  was it not?

 9        A.    It was, yes, sir.

10        Q.    And it was a question you really wanted to

11  know the answer to, was it not?

12        A.    That's accurate.  I just don't consider it

13  a debrief.

14        Q.    Let explore this.  How do you define a

15  debrief?  If a debrief isn't obtaining information

16  from an individual, what is it?

17        A.    A debrief, we're going to sit down, and

18  their attorneys are going to be there, and we're

19  going to get into the weeds on stuff.  We're going

20  to -- they may last hours, where I ask a series of

21  questions and they have long extensive answers.  I

22  mean, we're debriefing something.  I'm not asking a

23  mere question.

24        Q.    Sometimes a single question could bear an

25  answer that you desperately want to know, does it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1  not?

2      A.   Sure.  But that doesn't make it a debrief.

3      Q.   Well, with Mr. Armenta, you also met with

4  Mr. Armenta on the -- let's see.  This would be his

5  plea hearing on the 13th of 2016.

6      A.   Okay.

7      Q.   Would you have debriefed him at the

8  courthouse after that?

9      A.   Not if I don't have a 302 saying I -- with

10  a bunch questions and answers, no.

11      Q.   Okay.

12      A.   Sometimes the attorneys don't have time

13  for us to do it.

14      Q.   And so in your mind's eye, a debrief isn't

15  a debrief unless it generates a 302?

16      A.   No, that's not true.  I think a debrief --

17  in my mind, a debrief is when I sit down with a

18  defendant, a cooperator, whatever, and I sit down

19  and we take out my notebook and we go through a

20  series of questions, debriefing them on what they

21  know.

22      Q.   Okay.  So if we skip down to Jerry

23  Montoya, you have five sessions here, but you don't

24  include May 16, 2017, when again you expensed

25  chimichangas for what you described in your expense

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8083

1    account as food expenses during a debrief session.

2        A.    I already explained that.  Yes.

3        Q.    So you think even though you called it a

4    debrief session, it's not a debrief session?

5        A.    On the expense report, yeah, I'm limited

6    in what I can call it to get the bill paid.

7    Otherwise, I'm paying out-of-pocket.

8        Q.    So you misrepresent what it is, to get

9    paid?

10       A.    No.  That's clever.  I do what the finance

11   office tells me to put on the form so it gets

12   approved.

13       Q.    I'm not trying to be clever.  I'm trying

14   to understand what a debrief is.

15       A.    I think I've explained it.

16       Q.    Well, I mean, it seems to have very

17   mercurial definitions, depending on the

18   circumstances.

19       A.    I'll introduce you to our finance people.

20       Q.    Let's talk about Julian Romero.  You would

21   agree with me that in your initial exhibit, you

22   didn't even include -- if I can find it here.

23   Julian Romero.  You didn't even include the trip

24   that you took to the Old Main with him when you

25   recorded him for hours?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8084

1      A.    Yes, sir.  As I sat here, I didn't have

2  that material in front of me.

3      Q.    And so I don't want to belabor this, but

4  the times that you purchased food for Mr. Romero,

5  and Mr. Romero wasn't in custody?

6      A.    No.

7      Q.    And he didn't have an attorney, did he?

8      A.    He did at one time.  Because I've arrested

9  him before.

10     Q.    Okay.  But when you met with him on July

11  16, 2016, to eat, that wasn't a debrief session?

12     A.    I'm not sure.  But to be clear, Mr. Romero

13  made controlled buys for us on other cases, so we'd

14  have to look at the case number.  I'm just not sure.

15     Q.    Okay.

16     A.    That could be Agent Neale who is using him

17  on another case.

18     Q.    And that leads into my next questions.

19  These situations where you're working with Mr.

20  Romero on other cases that generate 302 reports, you

21  don't consider that part of this case to include in

22  your witness summary?

23     A.    No.  If we're not talking about this case

24  and we're talking about an ongoing case, I certainly

25  don't want to provide that in this for everyone here

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8085

```
 1   to see.
 2        Q.   Well, I mean, you wrote this -- well, it's
 3   not a 302, and I think you made a distinction in
 4   your earlier testimony the difference between a 1023
 5   report and a 302?
 6        A.   Yes, sir.
 7        Q.   But many times they're almost identical,
 8   the substance of the report, correct?
 9        A.   Many times we cut and paste from the 302,
10   put it in the 1023, and take the informant's name
11   out of it.
12        Q.   Exactly.  So substantially, there is not a
13   real difference?
14        A.   No.  The 1023, you shouldn't see their
15   name.
16        Q.   It's a matter of how you file them in the
17   FBI records?
18        A.   Yes, sir.
19        Q.   But in this report, you indicated that on
20   9/30 of 2016, this was information pertaining to SNM
21   Gang threats?
22        A.   I need to look at it.
23        Q.   Sure.
24             MR. LOWRY:  May I approach, Your Honor?
25        A.   I've done a lot of Julian's 1023s.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   Sure.

2      A.   What was the question, sir?

3      Q.   This is related to the SNM?

4      A.   Yes.  I use this material to write search

5  warrants.

6      Q.   Right.  And so you didn't -- and it was an

7  opportunity for you to spend, or at least the case

8  agents working with you to spend time with

9  Mr. Romero?

10     A.   Yes.

11     Q.   But yet, you didn't want to include it in

12  your summary of significant exchanges with Mr.

13  Romero?

14     A.   Is this different than the May one?

15     Q.   Yes, it is.

16     A.   Okay.  I just noticed that.  Okay.

17     Q.   Likewise, you met with Mr. Romero on July

18  24, 2017, to discuss activity and that's not

19  included in your witness summary.

20     A.   Is that also prep for a search warrant?

21  I'd need to look at it.

22     Q.   Sure.

23          MR. LOWRY:  May I approach?

24          THE COURT:  You may.

25     A.   Okay.  Yes, this is where he helped me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    arrest a sex offender who was an SNM member.

2         Q.   Now, would you agree with me that it's

3    hard for me to discern or understand what the nature

4    of the reports are, without any field notes to give

5    me some kind of contemporaneous mental impressions

6    of the agents working the case?

7         A.   I don't think it's that difficult.

8         Q.   You don't?  I'm supposed to know that

9    that's to prepare a search warrant?

10        A.   That, you should, because it says it in

11   the first sentence.  And this one says that I used

12   his information, indicating this gang member was

13   wanted as failure to register as a sex offender, and

14   he told me where he was at, and I did surveillance,

15   and I arrested him.

16        Q.   And you did that based on information you

17   obtained from Julian Romero?

18        A.   Yes.

19        Q.   And Julian Romero assisted you with that?

20        A.   Not the arrest, but the information.  Mr.

21   Lowry, I don't think it's a debrief.

22        Q.   I understand that.  But I guess what I'm

23   trying to demonstrate is that in the course of your

24   investigation, there are numerous opportunities for

25   you to get information from the individuals that are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8088

1  cooperating, cooperating with you?

2       A.   It's easier if they don't have attorneys,

3  but yes.

4       Q.   Right.  Even in some instances when they

5  have the attorney, you can call the attorney and

6  say, "Hey, I'm going up to the North.  I want to sit

7  down and talk with your client.  Is that okay?"

8       A.   Yes, and I've done that.

9       Q.   And most attorneys, when their client is

10 cooperating with you and you've established a

11 rapport with the attorney and the client over the

12 course of years, correct -- like this case?

13      A.   Yes.

14      Q.   Many attorneys will just say, "That's

15 fine"?

16      A.   Some do.  They want to know what the

17 questions are ahead of time.

18      Q.   Some, but not all?

19      A.   Not all.

20      Q.   In fact, some attorneys will let their

21 clients be videotaped in extensive debriefs without

22 even being there?

23      A.   If they know about it, yes.  I think I

24 know which one you're talking about.  I don't know

25 if he knew about it.  But in any case, when I go, I

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   ask permission before.

2        Q.   Okay.  So all of these instances I'm

3   looking at, then, you're more than happy to say,

4   "Look, that's not a debrief," as you've defined it?

5        A.   I made the chart, yes.  I tried to do it

6   to be helpful.  But this isn't a debrief.

7        Q.   Okay.  But let's be plain about it.  You

8   had to revise this chart not once, but twice?

9        A.   Yes.  And it looks like I need to do it a

10  fourth time.

11       Q.   Okay.  No, you do need to do it a fourth

12  time.

13       A.   Well, you pointed out that I was a day off

14  on one of them.

15       Q.   Okay.  I guess we're going to agree to

16  disagree, then, on the meaning of a debrief because

17  I think if you're going to ask an individual

18  questions, even if it's a single question about the

19  case, and you're writing a 302 on it, how is that

20  not -- well, I know what you're going to say:  It

21  wasn't hours on end.

22       A.   No, that's not the only definition.  I

23  mean, what we have in front of us here in this

24  exhibit is my historical debriefs of the cooperators

25  pertaining to this case right here.  Me arresting a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1 sex offender on the streets is not the same thing.

2 But I also provided this to the defense, so it's not

3 like I just turned it over yesterday.

4     Q.   Right.

5     A.   I just don't consider it a debrief related

6 to this.

7     Q.   Well, let's take Gerald Archuleta, for

8 instance.  You don't have the March 18, 2016,

9 meeting with Mr. Archuleta.  And on this, you were

10 at the facility with Mark Myers, yourself, Special

11 Agent Thomas Neale, Special Agent Joseph Sainato,

12 and you interviewed Gerald Archuleta about this

13 case?

14     A.   May I see that, please?

15     Q.   Absolutely.  And that document says he was

16 asked about SNM activities.

17     A.   That's the first time I've seen that

18 document, but you're correct.

19     Q.   Well, you were there.

20     A.   It says I was there.  This is a Department

21 of Corrections memo.

22     Q.   Right.

23     A.   I don't believe we have a 302 on this.

24     Q.   I don't believe you do either, but it

25 sounds like a debrief.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        A.    I'd agree with you.
2        Q.    And on September 20, 2016, you wrote a 302
3  about meeting with Gerald Archuleta when you
4  recovered, I guess, or fetched -- I don't know how
5  you want to describe it -- but some writings he had
6  made about this case?
7        A.    Yes.
8        Q.    And when you went to engage Mr. Archuleta
9  to recover those writings, it's not on here, but was
10 that a debrief?
11       A.    No.
12       Q.    It was just a recovery?
13       A.    Yes.  Did I get it from him or his
14 attorney?
15       Q.    It says that Styx provided FBI Special
16 Agent Bryan Acee with a 24-page written statement
17 concerning Archuleta's history in the Syndicato
18 Nuevo Mexico gang.
19       A.    Yes.  His manifesto, yes.
20       Q.    That you encouraged him to write?
21       A.    I encouraged all the cooperators to write
22 them.
23       Q.    So at the time, did you get to talk to Mr.
24 Archuleta about what he had written?
25       A.    No.  And I think that staff actually gave
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8092

1  it to me.  I don't know that I got it from him

2  directly.

3          MR. LOWRY:  May I approach, Your Honor?

4          THE COURT:  You may.

5      A.   Thank you.

6      Q.   The 302 doesn't indicate there was anybody

7  but you on that endeavor, does it?

8      A.   It just says that he provided it to me at

9  my request.

10     Q.   Anybody reading that would have no

11  understanding that there was anybody other than you

12  meeting with Gerald Archuleta on that occasion,

13  would they?

14     A.   No, and I'm not representing that there

15  was.

16     Q.   So if we drop down on your list to Robert

17  Martinez, it doesn't appear that you have the July

18  1, 2015, debrief with Mr. Martinez on here either?

19     A.   What was the date?

20     Q.   July 1, 2015.

21     A.   I'd have to look at the document.  I

22  suspect this may be the June 30th one.

23     Q.   Is that just a typo in the report?

24     A.   I don't know.  I'd want to see the report,

25  because this is a 1023.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8093

```
 1        Q.   But that describes a debrief session here
 2   in Las Cruces, does it not?
 3        A.   Yes, sir.
 4        Q.   And with Eric Duran I noticed -- and we've
 5   talk about this repeatedly throughout this
 6   litigation -- you left off the August 5, 2015,
 7   meeting where you initially met Mr. Duran and took
 8   over his case from his former handler with the FBI,
 9   correct?
10        A.   August 5, 2015, is when I met Mr. Duran.
11        Q.   And that generated a series of reports
12   from you?
13        A.   On that date.
14        Q.   Correct.  I mean, there is at least a
15   1023, but that would have generated a 302, would it
16   not have?
17        A.   Perhaps.  But I believe I did do a 1023.
18        Q.   And that would have been a debrief?
19        A.   Yes, sir.
20        Q.   And that's not on your summary here,
21   correct?
22        A.   No, it is not.
23        Q.   And we were just handed your field notes.
24   There was a handwritten field note from you, from
25   August 14, 2015, concerning Eric Duran?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1       A.   I think there's two.

2       Q.   Okay.  And Mr. Duran never had an

3  attorney?

4       A.   Back then, no.

5       Q.   And he referred to you as his attorney?

6       A.   I don't know.

7       Q.   You don't know he called you his lawyer?

8       A.   I don't know what he called me.

9       Q.   But these telephone conversations you had

10  with Mr. Duran when you were obtaining information,

11  they weren't debriefs because you weren't

12  face-to-face, sitting down for hours, having lunch?

13      A.   No.

14      Q.   But you would agree that the August 5,

15  2015, debrief session you did have isn't on here?

16      A.   Mr. Lowry, I don't have any excuses.  You

17  got me on that one.

18      Q.   I'm not trying to get you.  I'm just

19  trying to explain to the jury that despite your best

20  efforts, this summary chart is not accurate?

21      A.   I'll say it.  I make mistakes and I

22  sometimes miss things, as hard as I try not to.

23      Q.   You would agree with me it's not accurate?

24      A.   I agree with you.  I'll make some

25  revisions, and I'm happy to do that as soon as I sit

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   back down, if you like.
2           MR. LOWRY:  Your Honor, at this time we'd
3   move to strike Government's Exhibits 777, 777-A, or
4   even 777-B if it's offered.
5           THE COURT:  What do you want to do with
6   these charts at this point, Mr. Castellano?
7           MR. CASTELLANO:  Make the corrections and
8   move their admission, Your Honor.  I think it would
9   be helpful to the jury.
10          MR. LOWRY:  Well, Your Honor, we'd ask for
11  time to go through the FBI -- through Mr. Acee's
12  notes, to see.  I mean, I think we might be on a
13  semantic disagreement about what a debrief is.  But
14  if any of his notes are extensive and indicate an
15  extended conversation that resulted in actionable
16  information in this case, I would characterize that
17  as a debrief.  But we might have an honest
18  disagreement about that.
19          THE COURT:  Well, I'm not going to admit
20  them at the present time.  If we come up with a
21  chart that there is more consensus on, I'll
22  reconsider it.  But right at the present time, I
23  won't admit either chart.
24          Mr. Lowry.
25          MR. LOWRY:  No further questions, Your
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Honor.
 2            THE COURT:  Thank you, Mr. Lowry.
 3            Ms. Fox-Young, do you have redirect of Mr.
 4   Acee?
 5            MS. FOX-YOUNG:  Your Honor, I just didn't
 6   catch it.  What time does the Court intend to take
 7   the lunch break?
 8            THE COURT:  Oh, in about six or seven
 9   minutes.
10            MS. FOX-YOUNG:  Okay.  Thank you, Your
11   Honor.
12            THE COURT:  Does that get you started?
13                 REDIRECT EXAMINATION
14   BY MS. FOX-YOUNG:
15       Q.   Agent Acee, you would agree with me that
16   the nearly 1,000 pages of documents produced on
17   Wednesday from Mario Rodriguez' belongings were
18   written before July of last year, right?
19       A.   Yes.
20       Q.   And so they were written before Mario
21   Rodriguez testified in this case.  You were asked
22   some questions about Mario Rodriguez' understanding
23   about whether he had to register as a sex offender.
24   Do you remember that?
25       A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8097

```
 1        Q.   And I think you said it was his
 2   understanding that he didn't need to, right?
 3        A.   At one point in time, yes.
 4             MS. FOX-YOUNG:  Your Honor, may I approach
 5   the witness?
 6             THE COURT:  You may.
 7             MS. FOX-YOUNG:  Thank you.
 8   BY MS. FOX-YOUNG:
 9        Q.   Agent Acee, do you see here in the
10   writings of Mario Rodriguez where he says, "When I
11   leave from talking to you, before I go see the rest
12   of my family, I'm going to the police station to
13   register as a sex offender"?
14             MR. CASTELLANO:  Objection, Your Honor.
15   Counsel is reading the document into the record.  It
16   hasn't been introduced.
17             MS. FOX-YOUNG:  It's impeachment, Your
18   Honor.
19             THE COURT:  Hold on.  What?
20             MS. FOX-YOUNG:  It's impeachment, Your
21   Honor.
22             THE COURT:  What is that document you're
23   having him look at?
24             MS. FOX-YOUNG:  This is from the 981
25   pages.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8098

```
 1              THE COURT:  What is it?

 2              MS. FOX-YOUNG:  It's a writing of Mario

 3    Rodriguez.

 4              THE COURT:  And how is that going to

 5    impeach Mr. Acee?

 6              MS. FOX-YOUNG:  Agent Acee said that he

 7    believed that Mario Rodriguez did not know that he

 8    had to register as a sex offender.

 9              THE COURT:  And what is this document,

10    though?  I'm still not certain I understand what

11    this is.

12              MS. FOX-YOUNG:  Well, Your Honor, not

13    having had a chance to authenticate everything that

14    was produced on Wednesday, I can't say who it was

15    written to, but it's a writing of Mario Rodriguez.

16              MR. CASTELLANO:  Your Honor, how does she

17    know that?  So first of all, foundation.  And second

18    of all, if we're going to trade documents, I again

19    move the admission of all documents.

20              THE COURT:  Well, let's just, first of

21    all, lay some foundation as to whether he knows this

22    document, has seen it, and what it is.  Because I

23    don't want you to get a situation where you're

24    testifying about what it is.

25              MS. FOX-YOUNG:  I can do that, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  No, you can't.  You're an
 2   attorney, not a witness.
 3              MS. FOX-YOUNG:  I'll lay some foundation.
 4              THE COURT:  So you can't testify about it.
 5              MS. FOX-YOUNG:  I'll lay some foundation.
 6              THE COURT:  So you're going to have to lay
 7   a foundation through Mr. Acee.
 8              MS. FOX-YOUNG:  Yes, Your Honor.
 9   BY MS. FOX-YOUNG:
10     Q.   Agent Acee, do you want to just take a
11   look at this document?  And you can take your time.
12   It's two pages.  If you want to take a look at it
13   before I ask you questions about it?
14              MR. CASTELLANO:  Your Honor, I'd also like
15   to see the document beforehand.  That wasn't shown
16   to me by counsel.
17              MS. FOX-YOUNG:  Yes, Your Honor.
18              MR. CASTELLANO:  Thank you, Your Honor.
19              THE COURT:  All right.  Ms. Fox-Young.
20   BY MS. FOX-YOUNG:
21     Q.   All right.  Agent Acee, you had a chance
22   to take a look at this document.  Do you recognize
23   the handwriting to be that of Mario Rodriguez?
24     A.   I think that it is.
25     Q.   Okay.  And you recall my question to you,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8100

```
 1   then, about whether or not it in fact says something
 2   about --
 3            MR. CASTELLANO:  Objection, Your Honor.
 4   Calls for hearsay, and he said he thinks it's his
 5   writing.  He's not laid the foundation.
 6            THE COURT:  Well, I think it's sufficient.
 7   So these are out-of-court statements being offered
 8   to help you determine the credibility of Mr.
 9   Rodriguez when he was in the courtroom.  So you
10   can't consider it for the truth of the matter; you
11   can only consider it in determining -- making a
12   credibility determination as to Mr. Rodriguez'
13   testimony.
14            Ms. Fox-Young.
15            MS. FOX-YOUNG:  Thank you, Your Honor.
16   BY MS. FOX-YOUNG:
17       Q.   Agent Acee, I showed you two pages, right?
18       A.   Yes.
19       Q.   And on both pages, you believe that's the
20   handwriting of Mario Rodriguez?
21       A.   I do.
22       Q.   And so then on the first page, you saw
23   where it says, "When I leave from talking to you,
24   before I go see the rest of my family, I'm going to
25   the police station to register as a sex offender"?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1     A.   I saw that.

2     Q.   And then on the next page it talks about

3  how, "I have to go register as a sex offender, and

4  my picture will be next to child molesters and

5  rapists, victimizers of women and children"?

6          You saw that?

7     A.   I did see that.

8     Q.   Thank you, Agent Acee.  And so do you know

9  if, when Mario Rodriguez gets out of the custody, if

10 he's going to have to go register as a sex offender?

11    A.   I'm not really familiar with the state

12 law, but it wouldn't surprise me.

13          THE COURT:  All right.  Ms. Fox-Young,

14 would this be a good time for us to take our lunch

15 break?

16          MS. FOX-YOUNG:  Yes, Your Honor.

17          THE COURT:  All right.  Let me instruct

18 the jury here, because I do want everybody to be

19 very careful here, of a few things that are

20 especially important.

21          Until the trial is completed, you're not

22 to discuss this case with anyone, whether it's

23 members your family, people involved in the trial,

24 or anyone else, and that includes your fellow

25 jurors.  If anyone approaches you and tries to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8102

1   discuss the trial with you, please let me know about

2   it immediately.

3           Also, you must not read or listen to any

4   news reports of the trial.  Again, don't get on the

5   internet and do any research for purposes of this

6   case.

7           And finally, remember that you must not

8   talk about anything with any person who's involved

9   in the trial, even if it doesn't have anything to do

10  with the trial.

11          If you need to speak with me, simply give

12  a note to one of the court security officers or Ms.

13  Standridge.  Again, I may be repeating these this

14  afternoon as we make transitions in this case; but

15  if I don't, do keep them in mind each time we take a

16  break.

17          All right.  We'll be in recess for about

18  an hour.

19          (The jury left the courtroom.)

20          THE COURT:  All right.  We will be in

21  recess for about an hour.

22          (Lunch recess.)

23          THE COURT:  All right.  Let's go on the

24  record.  I received a note right when we were coming

25  in before the last segment from one of the jurors.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8103

1  It's Juror Number 17, Anastasia Wolfe.

2          It says, "Judge Browning, lady in gallery

3  in orange sweater watching me.  Have I done

4  something wrong?  Anastasia Wolfe."

5          Now, the only person I can see in the back

6  that's had any sort of orange is, I think, the

7  paralegal that sits behind you, Ms. Bhalla.  But

8  every time I look at her, she's looking down.  So I

9  don't know if there's -- what?

10         MR. VILLA:  I'm sorry, Judge.  On the

11 bench, this side of the well?

12         THE COURT:  Yes.

13         MR. VILLA:  That's Ms. Anderson.  She's an

14 associate attorney that works with me.

15         THE COURT:  That's the only person I've

16 seen back there with any orange on.  Have y'all

17 noticed anybody in orange that's been back there?

18         MR. LOWRY:  Your Honor, there's a student

19 sitting back here that's doing some criminology

20 paper.

21         THE COURT REPORTER:  I can't hear what's

22 going on.

23         THE COURT:  Hey, hey.  We've got to be on

24 the record.  We're on the record, so everybody talk

25 one at a time, and loudly.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          MR. LOWRY:  I don't know her name.  I just

2     know she's an student at NMSU, but I don't know what

3     she's wearing.

4          THE COURT:  I'm going to ask the marshals

5     or if you want to assign one of the court security

6     officers.  If she comes back in, would you just tell

7     her to be a little careful.  I'm not trying to tell

8     her what to look at, but don't stare at Juror Number

9     17.

10         I'll tell one war story here.  My partner

11    had a case, and I worked on it, but he ended up

12    trying it in front of Judge Burciaga.  And K'Aun

13    Wild, as y'all know, I started working with her when

14    she was 18 years old, and she went with him to help

15    him on this case.  My partner said, "Keep an eye on

16    the judge.  See what he's doing."  And so she stared

17    at the judge.

18         Juan Burciaga motioned my partner, Chuck

19    Peifer, "Tell your paralegal to quit looking at me."

20         So fast-forward to -- y'all remember that

21    little Walgreen's?  It was downtown for a while.

22    Ms. Wild was walking into Walgreen's, Judge Burciaga

23    was walking out, and he looks at her and he goes,

24    "Those eyes."

25         So I'm going to have Ms. Standridge mark

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 820-6349                                                  FAX (505) 843-9492
                                                                          1-800-669-9492
                                                              e-mail: info@litsupport.com



1    that as exhibit whatever is next in her clerk's

2    minutes.  And unless y'all think of something to do,

3    I haven't had that experience before.

4              Let me ask y'all one question as I'm

5    putting these jury instructions together.  Since

6    y'all have sort of agreed on this note, instruction

7    number 3 that the defendants have put in, this is

8    the language that I'm a little bit concerned about

9    adding.  It says, "Proof beyond a reasonable doubt,

10   therefore, is proof of such a convincing character

11   that you would be willing to rely and act upon it

12   without hesitation in making the most important

13   decisions of your own affairs."

14             My pause about that, and I didn't pull

15   this off the internet; I'm just using my little book

16   here, but I think the comment note is the same.  It

17   says, "The Tenth Circuit has repeatedly criticized

18   instructions which define reasonable doubt in terms

19   of substantial doubt combined" -- and I'm quoting

20   here -- "an abiding conviction of the defendant's

21   guilt such as you would be willing to act upon it in

22   the more weighty and important matters relating to

23   your own affairs."

24             And then it gives a long list of Tenth

25   Circuit instructions, including Justice Ginsburg's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  concurring opinion in Victor versus Nebraska, where

2  she suggested a fundamental difference between

3  decisions people normally make and jury decisions.

4          So I guess I'm pausing a little bit.  I

5  know everybody is giving me a green light and are

6  requesting that, but do you really want it?  I guess

7  I'm a little surprised the defendants want it

8  because usually I get resistance from the defendants

9  on that type of language.

10         MS. JACKS:  It's interesting.  I think we

11  talked about that quite while on Saturday.  I think

12  we pulled it from the Fifth Circuit instruction.

13  And I don't feel strongly about it.  I was unaware

14  of the law in the Tenth Circuit about that.

15         THE COURT:  Can I leave that sentence out?

16  Everybody agree to leave it out, just so we don't

17  get into a situation?  I'll make all the other

18  changes on that instruction.  Everybody agree to

19  leave it out?

20         MS. JACKS:  Yes.

21         MR. CASTELLANO:  Can you tell us that

22  sentence one more time, please, Your Honor?

23         THE COURT:  Do you want the one that the

24  defendants had asked?  Or what do you want, Mr.

25  Castellano?  What do you want me to read?  Are you

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    asking the sentence the defendants want?

2            MR. CASTELLANO:  Yes, sir.

3            THE COURT:  Okay.  This is in their red

4    line version, 1827-1, page 5.

5            It says, "Proof beyond a reasonable doubt,

6    therefore, is proof of such a convincing character

7    that you would be willing to rely and act upon it

8    without hesitation in making the most important

9    decisions of your own affairs."

10            And the sentence that comes up, Tillman, I

11    think it is, Tillman versus Cook, says, "The Tenth

12    Circuit has repeatedly criticized instructions which

13    define reasonable doubt in terms of substantial

14    doubt."  We don't have that; you're not asking for

15    that.  Combined with, and here's the language that

16    gives me pause, "an abiding conviction of the

17    defendant's guilt such as you would be willing to

18    act upon it in the more weighty and important

19    matters relating to your own affairs."

20            MR.MAYNARD:  Your Honor, for Mr. Herrera,

21    I think we prefer -- maybe this is because I'm from

22    the Western District of Texas.  I prefer that

23    language from the Fifth Circuit because it

24    communicates more, not just the burden of proof and

25    the reasonable doubt notion, but the seriousness of

SANTA FE OFFICE                                           MAIN OFFICE
119 East Marcy, Suite 110                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                 Albuquerque, NM 87102
(505) 989-4949                                                  (505) 843-9494
FAX (505) 820-6349                                    FAX (505) 843-9492
                                                                 1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

8108

1    the decision the jury has to make.

2            THE COURT:  Well, what do you think about

3    Ginsburg's criticism of it?

4            MR. MAYNARD:  Well, I mean, I don't quite

5    agree with it, and maybe it's again because I'm used

6    to that in the Fifth Circuit.

7            THE COURT:  I mean, it always seemed to

8    me, the way the defense lawyers usually protested

9    is, they say:  No, this is a more important decision

10   than whether they buy their house or not.

11           And you're free to argue however you want

12   reasonable doubt in your closings, within reason.

13   But I just wonder if a Court ought to be saying,

14   "Think about the most important decision in your

15   life," and them pick one.  They might pick a house

16   or a car, maybe they'll pick marriage, or maybe

17   they'll pick a medical decision.

18           I don't know.  Let's see a show of hands

19   here.  How many people want the language that is in

20   the red line version added?  How many of you want to

21   keep it out?  All right.

22           Does the Government have a position?  Keep

23   it out?  You don't care.  Looks like it's three to

24   one on the defense side.  I'm going to keep it out

25   just because in the Tenth Circuit, I've read enough

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   of those cases, and my experience has been the

2   defense lawyers usually don't like that in there.

3          So I'm going to keep it out at the present

4   time.

5          MS. JACKS:  Since we're talking about that

6   instruction, which I guess it's number 3 --

7          THE COURT:  Yes.

8          MS. JACKS:  -- I think the language that

9   we were probably most concerned about was in the

10  last sentence where it says, "If, on the other hand,

11  you think there's a real possibility they are not

12  guilty."

13         THE COURT:  And I've taken that out.

14         MS. JACKS:  Okay.

15         THE COURT:  The Government seemed to agree

16  with you, so I've taken that out.  You'll get a

17  chance to look at it and see how I worded it, but I

18  took that out.

19         MS. FOX-YOUNG:  Your Honor?

20         THE COURT:  Yeah.

21         MS. FOX-YOUNG:  So that I don't do this in

22  front of jury, if the Court would like any argument

23  on it, we had talked about a stipulation on Mario

24  Rodriguez' plea addendum.  The Government couldn't

25  find a signed copy.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



```
 1              I have some proposed language, and I just
 2     would like to work it out if the Government is going
 3     to have some objection to it.
 4              THE COURT:  Okay.  Why don't you --
 5              MS. FOX-YOUNG:  I asked --
 6              THE COURT:  Why don't you give them a copy
 7     and let them look at it, and you can approach at the
 8     appropriate time.
 9              All rise.
10              (The jury entered the courtroom.)
11              THE COURT:  All right.  Everyone be
12     seated.
13              All right.  Mr. Acee, I'll remind you that
14     you're still under oath.
15              Ms. Fox-Young, if you wish to continue
16     your redirect of Mr. Acee, you may do so at this
17     time.
18              MS. FOX-YOUNG:  Thank you, Your Honor.
19              THE COURT:  Ms. Fox-Young.
20     BY MS. FOX-YOUNG:
21        Q.   Agent Acee, do you recall testifying with
22     the Government about Billy Cordova and the bragging
23     that he did about the Sammy Chavez murder?  Do you
24     recall that line of questioning from Mr. Castellano?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        Q.   And it's your testimony, isn't it, that
 2   Billy Cordova was in custody at the time that Sammy
 3   Chavez was killed?
 4        A.   Yes.
 5        Q.   And so you don't believe that he committed
 6   that murder?
 7        A.   Correct.
 8        Q.   And you recall discussing in front of the
 9   jury a couple days ago your testimony about the
10   statements of Freddie Quintana and Sammy Griego,
11   that Billy Cordova had in fact told them that he had
12   bragged to them about committing the murder, right?
13        A.   Yes.
14        Q.   And you also heard Benjamin Clark's
15   testimony this week along the same lines, right,
16   that Billy Cordova made him believe that he had
17   killed Sammy Chavez, right?
18        A.   Yes.
19        Q.   And given that you don't believe that
20   Billy Cordova actually did kill Sammy Chavez, those
21   three men all have presented -- or there has been
22   evidence from the statements to those three men that
23   Billy Cordova was in fact bragging about something
24   he didn't do; isn't that right?
25        A.   Yes.  Each of those men said that Billy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    told them that, yes.

2         Q.   Bragged about a murder he didn't commit?

3         A.   I don't think he bragged about a murder he

4    didn't commit.  To them, he made it sound like he

5    had committed it.  I just don't have enough to prove

6    that he did.

7         Q.   All right.  Well, let's talk about the

8    Shane Dix homicide.  You don't believe that Billy

9    Cordova killed Shane Dix, right?

10        A.   No, and I never have.

11        Q.   Okay.  And how do you know Billy Cordova

12   didn't kill Shane Dix?

13        A.   Through my debriefings of Mario Montoya,

14   as well as Christopher Garcia's plea in that and

15   other charges.

16        Q.   Okay.  So you know it to be true that

17   Billy Cordova did not kill Shane Dix?

18        A.   That is what I believe, yes.

19        Q.   And you heard the testimony of Benji

20   Montano that Billy Cordova bragged about killing

21   Shane Dix, right?

22        A.   Yes.

23        Q.   Given your knowledge and belief, that's

24   also an instance where Billy Cordova bragged about a

25   murder he didn't commit, right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8113

```
 1        A.   I guess so.  That guy's testimony was a
 2   little hard to follow.
 3        Q.   Agent Acee, since you've been on the stand
 4   today, you know that nearly 500 documents have been
 5   produced to the defense, and those documents are
 6   agent notes from this case?
 7        A.   I wasn't sure of the count, but we have
 8   turned over a lot of documents, yes.
 9        Q.   And that's the disc that was produced
10   while you were sitting up there?
11        A.   Yes.
12        Q.   And you looked at a stack?  I think Ms.
13   Bhalla showed you a stack of documents that were
14   printed from that disc, right?
15        A.   She did.
16        Q.   So are you aware whether those documents
17   contain any information that would tell you anything
18   else about Billy Cordova bragging about the murder
19   of Shane Dix?
20        A.   Gosh, there's a lot there, as you pointed
21   out, so it's possible.
22        Q.   If I showed you a page from those notes
23   with respect to an interview of Eric Duran on August
24   14, 2015, might that refresh your memory?
25        A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. FOX-YOUNG:  Your Honor, may I approach
 2   the witness?
 3            THE COURT:  You may.
 4            MR. CASTELLANO:  Could I see the document,
 5   please?
 6            MS. FOX-YOUNG:  This is Bates 54621.
 7   BY MS. FOX-YOUNG:
 8       Q.   All right.  Agent Acee, take a look at
 9   this document and see if this refreshes your
10   recollection?
11       A.   Yes.
12       Q.   Are these your notes, Agent Acee?
13       A.   I believe so.
14       Q.   And I think you testified, in response to
15   questions from Mr. Lowry, that you did actually -- I
16   think you said it was a telephone debrief, right, on
17   August 14, 2015, that you did with Eric Duran?
18       A.   I thought he asked me if there was some
19   notes that didn't have corresponding 302s regarding
20   Duran.  I don't know if it was telephonic.
21       Q.   I'm just asking, do you recall -- I think
22   this document refreshed your memory.  Do you have an
23   independent recollection of talking to Eric Duran on
24   August 14, 2015?
25       A.   Not really, but I think that those notes,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  when you show me those notes, I think that's a good

2  indication that I talked to him.

3       Q.   Okay.  Because these are your notes?

4       A.   Yes.

5       Q.   Which were just produced this morning to

6  the defense, right?

7       A.   If they're off the disc, yes.

8       Q.   And in the course of that conversation

9  with Eric Duran, did you learn something about the

10 Shane Dix murder?

11      A.   Yes.

12      Q.   Did you learn that Billy Cordova had

13 actually told Eric Duran that he murdered Shane Dix?

14      A.   That's what my notes indicate.

15      Q.   Any reason to dispute that that's what you

16 learned from Eric Duran?

17      A.   No.

18      Q.   So wouldn't you say this is another case

19 of another person telling the FBI that Billy Cordova

20 had bragged about a murder he didn't commit?

21      A.   I'm not sure how Duran learned it, though,

22 but it's Duran relating to me his take or his

23 opinion on that murder.

24      Q.   Eric Duran told you that Billy Cordova

25 bragged to him that he murdered Shane Dix, right?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   I think it says he admitted it, yes.

2    Q.   But you know he didn't kill Shane Dix,

3    right?

4    A.   Correct.

5    Q.   You testified about certain times when you

6    don't trust Billy Cordova.  Do you remember that?

7    A.   Yes, ma'am.

8    Q.   Do you trust Billy Cordova to testify

9    truthfully on the stand, given that he admitted that

10   he testified under oath to Judge Browning on

11   December 12, 2017, that he hadn't used drugs in two

12   years; when in reality, he had used drugs just two

13   weeks before that testimony?

14   A.   Yes, I remember that.

15   Q.   No, I'm asking if you trust him to testify

16   truthfully, given that he's told this jury that he

17   took the stand and didn't testify truthfully?

18   A.   I do.

19   Q.   You've never stopped trusting Billy

20   Cordova, have you?

21   A.   No, there are some circumstances I don't

22   trust him in, definitely.

23        MS. FOX-YOUNG:  Your Honor, no further

24   questions.

25        THE COURT:  All right.  Thank you, Ms.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Fox-Young.

 2           Ms. Jacks, do you have redirect?

 3           MS. JACKS:  Just in a very limited area.

 4           THE COURT:  All right.  Ms. Jacks.

 5                   REDIRECT EXAMINATION

 6   BY MS. JACKS:

 7       Q.   Agent Acee, I think I just have a few

 8   questions on sort of two topics.  The first is, Mr.

 9   Castellano asked you some questions about this

10   meeting that you had with Mario Rodriguez and Ronald

11   Sanchez.  Do you recall those questions?

12       A.   I do.

13       Q.   That meeting happened after Mario

14   Rodriguez agreed to become a witness for the

15   Government, right?

16       A.   Yes.

17       Q.   And like other witnesses, other government

18   witnesses in this case, you let Mario Rodriguez know

19   that he might get additional time off his sentence

20   if he was able to bring other people to the table?

21       A.   I think we generally talked about that

22   sort of thing, yes.

23       Q.   And what happened was, at the time he was

24   housed at the Penitentiary of New Mexico, right?

25       A.   Yes.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And another person that was in his pod

2  happened to be Ronald Sanchez?

3    A.   Correct.

4    Q.   And so after Mario Rodriguez signed up to

5  become a government witness, he began talking with

6  Ronald Sanchez, trying to get him to get his brother

7  to somehow strike a deal to become a government

8  witness?

9    A.   I know that they were talking.  I don't

10  know all the background of it.

11    Q.   Wasn't it Mario Rodriguez that contacted

12  you and let you know that Ronald Sanchez was willing

13  to meet with the FBI?

14    A.   That wanted to meet with the FBI.  Yes, he

15  called me.

16    Q.   Mr. Rodriguez called you?

17    A.   Yes.

18    Q.   So the meeting was really arranged through

19  Mr. Rodriguez?

20    A.   Yes.

21    Q.   And so that meeting -- well, the fact --

22  let me just go back.  There was something in it for

23  Mario Rodriguez to set up that meeting with you and

24  Ronald Sanchez, potentially?

25    A.   Potentially.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                                  201 Third NW, Suite 1630
Santa Fe, NM 87501                                         Albuquerque, NM 87102
(505) 989-4949                                                       (505) 843-9494
FAX (505) 820-6349                                          FAX (505) 843-9492
                                                                 1-800-669-9492
                                                        e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1        Q.   The other topic I wanted to talk to you
 2   about was the interviews of Billy Cordova.  And
 3   specifically, Mr. Castellano asked you about an
 4   interview with Billy Cordova on January 24, 2018.
 5   Do you recall those questions?
 6        A.   I think so.
 7        Q.   Well, he asked you about what Mr. Cordova
 8   said about Mr. Sanchez asking for a fierro or a
 9   knife?
10        A.   Oh, yes.
11        Q.   On that particular day, January 24, 2018?
12        A.   I do remember.
13        Q.   Did you interview Mr. Cordova on that day?
14        A.   I'd have to look at the 302.
15        Q.   Okay.  You don't have any personal or
16   independent recollection that you actually spoke
17   with him on that day, do you?
18        A.   We did a lot of interviews that day.  I'm
19   not sure, ma'am.
20        Q.   Do you think if you saw a 302, that would
21   refresh your memory as to whether you participated
22   in that interview?
23        A.   Yes.
24             MS. JACKS:  Your Honor, I'm holding a 302
25   regarding a January 24, 2018, interview with Billy
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8120

```
1   Cordova, Bates stamped 51473.  May I approach the
2   witness?
3            THE COURT:  You may.
4   BY MS. JACKS:
5        Q.   Just let me know when you're done.
6        A.   Thank you.
7        Q.   So the question, I think, that's pending
8   is:  Did you interview Billy Cordova on that day,
9   which is January 24, 2018?
10       A.   No.
11       Q.   You didn't?
12       A.   No.
13       Q.   So you don't know what he said on that
14  day?
15       A.   That's not true.
16       Q.   Let me go back.  You did not personally
17  hear what he had to say that day?
18       A.   I did at times, yes.
19       Q.   I'm sorry?
20       A.   I did at times, yes.  I spent quite a bit
21  of time in the room with him.
22       Q.   I thought the question was:  Were you
23  present during that interview?
24       A.   Did I say I wasn't?  I didn't think I said
25  I wasn't.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   Maybe I jumped ahead.  Did you write the

2  302?

3    A.   No.  Thomas Neale did.

4    Q.   Okay.  And according to the 302, who was

5  present during the interview of Mr. Cordova on

6  January 24, 2018?

7    A.   Mr. Cordova, his attorney, AUSA Randy

8  Castellano, and the FBI personnel.

9    Q.   Okay.  So were you -- so FBI personnel.

10  That could be you?

11    A.   Well, it was primarily Mr. Neale, but I

12  spent a lot of time in there with Cordova.  We were

13  at the office all day, and different cooperators

14  were coming in, and I met with each of them.

15    Q.   So the 302 that you just looked at, that's

16  less than a page long, right?

17    A.   Yes, ma'am, about a half a page.

18    Q.   It's about half a page?  And were you

19  present when Mr. Cordova was asked questions

20  specifically about what Daniel Sanchez said or asked

21  him about getting a fierro or a shank?

22    A.   I don't have independent recollection of

23  that, no.

24          MS. JACKS:  So, Your Honor, at this point

25  I would move to strike that testimony.  It appears

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to be hearsay.

2              THE COURT:  Well --

3              MS. JACKS:  The questions that Mr.

4    Castellano asked Agent Acee about that statement.

5              THE COURT:  Do you have any thoughts, Mr.

6    Castellano?  If it's all based on something else --

7              MR. CASTELLANO:  He said he was aware of

8    the correction to Billy Cordova's statement.  He

9    didn't say how.

10             MS. JACKS:  Well, counsel elicited that

11   with a leading question to this agent, and he did it

12   knowing full well this agent didn't write the

13   report.

14             THE COURT:  Let's do this.  Let me give

15   Mr. Castellano a chance to voir dire the witness on

16   this point, and if he doesn't establish that he has

17   any evidence for this other than hearsay, then I'll

18   strike the testimony.

19             Mr. Castellano.

20                  VOIR DIRE EXAMINATION

21   BY MR. CASTELLANO:

22       Q.   Agent Acee, were you present when people

23   were being interviewed in preparation for a trial in

24   this case?

25       A.   Yes, sir.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   And did that include January 24th of 2018?

2      A.   I was.

3      Q.   And were you present at a time or times

4  when Billy Cordova was giving statements about the

5  case?

6      A.   Yes.

7      Q.   And were those additional statements,

8  because it's only one page, statements that provided

9  new information?

10      A.   Yes.

11      Q.   And are you aware of whether or not he

12  corrected his prior statement from a month earlier,

13  indicating that the shanks were -- that Daniel

14  Sanchez asked for the shanks on or about March 6th

15  or 7th?

16          MS. JACKS:  Objection, Your Honor.  The

17  way Mr. Castellano is asking the question, it

18  permits an answer based on hearsay, and that's

19  exactly the objection that I'm making.  The issue is

20  whether Mr. Cordova told him and he has a

21  recollection of that.

22          THE COURT:  I think that's the question I

23  need to hear, so do formulate your question along

24  those lines.

25          MR. CASTELLANO:  I'll get right to it,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Your Honor.
 2   BY MR. CASTELLANO:
 3       Q.    Do you remember Billy Cordova making that
 4   statement on that day?
 5       A.    I talked to him about it, but I think it
 6   was after the fact.
 7       Q.    So when you say you talked to him about
 8   it, did he convey that information to you on that
 9   day or at some point close in time when he shared
10   that information with you?
11       A.    It was the same day.
12            MR. CASTELLANO:  I don't have any other
13   questions, Your Honor.
14            THE COURT:  All right.  Thank you, Mr.
15   Castellano.
16            MS. JACKS:  I have a few follow-ups.
17            THE COURT:  Ms. Jacks.
18              CONTINUED REDIRECT EXAMINATION
19   BY MS. JACKS:
20       Q.    So when I asked you a few minutes ago
21   about whether you had a recollection of Mr. Cordova
22   saying that, you said you didn't?
23       A.    I thought you said it in context to the
24   debrief with the attorneys.  I'm sorry if I
25   misunderstood you.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   So your testimony is that you talked to
2  Mr. Cordova about that statement?
3      A.   Yes.
4      Q.   And you would agree that the statement was
5  inconsistent with what he told you approximately a
6  month prior?
7      A.   He reduced the number of days.
8      Q.   Right.  He originally said that Mr.
9  Sanchez asked him for a fierro or shank about a week
10 prior to Mr. Urquizo arriving at Southern, right?
11     A.   Yes.
12     Q.   And then right before trial, he changed it
13 up and said it was either the day before or the day
14 of the Molina homicide?
15     A.   He remembered it being closer to the
16 homicide.
17     Q.   He remembered it when he was -- in January
18 of 2018, he made the date after Mr. Urquizo got to
19 Southern New Mexico Correctional Facility, right?
20     A.   Yes.  He provided a shorter timeline on
21 when that incident took place.
22     Q.   And do you know what other cooperators Mr.
23 Urquizo had access to in the time period prior to
24 trial?
25     A.   I think the only other cooperator at the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   facility he was at was Mario Montoya.  They were at

2   Otero.

3        Q.   At the time that this interview took place

4   in January of 2018?

5        A.   In January of 2018 I think he was still at

6   the North, at PNM.

7        Q.   So he was still housed in Santa Fe?

8        A.   You know, ma'am, I'd have to go back and

9   check some records.  He went from Santa Fe to Otero,

10  and then I think he went back to Santa Fe.

11       Q.   So I guess that --

12       A.   I'm trying to remember what color he was

13  wearing when he was here.

14       Q.   I guess the answer to my question, then,

15  is that you really don't know?

16       A.   I'm not positive, no.

17       Q.   All right.

18            MS. JACKS:  Thank you.  I have nothing

19  further.

20            THE COURT:  Thank you, Ms. Jacks.

21            All right.  Did you have something

22  further, Mr. Castellano?

23            MR. CASTELLANO:  Yes, Your Honor.

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN &ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                 FURTHER CROSS-EXAMINATION
 2   BY MR. CASTELLANO:
 3        Q.    Agent Acee, for starters, Exhibit 777.
 4   I'm sorry, but I also want to let you know that you
 5   misspelled Marijuano's name, so that would be
 6   another correction for you.  I just wanted to point
 7   that out to you, if that helps.
 8        A.    Thank you.
 9        Q.    You're welcome.  You were asked about this
10   document 54621, a telephone statement regarding Eric
11   Duran?
12        A.    Yes.
13        Q.    There's an arrow on here.  I want to make
14   sure I understand your notes.
15             MR. CASTELLANO:  May I approach the
16   witness, Your Honor?
17             THE COURT:  You may.
18   BY MR. CASTELLANO:
19        Q.    It's kind of cryptic.  It's one page.  I
20   just want to ask you, because there's an arrow on
21   there pointing to another person, what you recall
22   about those notes or that statement?
23             MS. FOX-YOUNG:  Your Honor, I think this
24   is beyond the scope.
25             THE COURT:  How do you tie it to the scope
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   of the redirect?

 2           MR. CASTELLANO:  This is the statement

 3   that was shown to Agent Acee just a moment ago, Your

 4   Honor.  It's the exact same document.

 5           MS. FOX-YOUNG:  Your Honor, may we

 6   approach?

 7           THE COURT:  By Ms. Fox-Young?

 8           MR. CASTELLANO:  I believe so.

 9           THE COURT:  All right.  You may.

10           (The following proceedings were held at

11   the bench.)

12           MS. FOX-YOUNG:  Your Honor, I'd just ask

13   that the Government not go beyond the questioning

14   about the Shane Dix homicide and Billy Cordova's

15   involvement in it.  I don't know what else they want

16   to ask about this document.  I don't think it's the

17   proper time to elicit hearsay.  The only questions I

18   asked were:  Did you learn from Eric Duran that

19   Billy Cordova admitted or bragged about the Shane

20   Dix homicide?

21           THE COURT:  What are you going to ask?

22           MR. CASTELLANO:  I'm trying to clarify.

23   It's not clear from the note.  I'm asking about what

24   the arrow means.

25           THE COURT:  I think that's fair game.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. FOX-YOUNG:  I do too, Judge.
 2              (The following proceedings were held in
 3   open court.)
 4              THE COURT:  All right.  Mr. Castellano.
 5              MR. CASTELLANO:  Thank you, Your Honor.
 6   BY MR. CASTELLANO:
 7        Q.   I just want to make sure we're
 8   understanding your note there, because there is an
 9   arrow pointing to something else, and I wasn't sure
10   if you recall what the source of the information was
11   or how that came about?
12        A.   I believe the source of that information
13   is Eric Duran, because I've labeled the top of the
14   paper with that, and then the date.  And then it
15   appears as though Mr. Duran is giving me information
16   about the Shane Dix murder, and he lists three
17   people in a street gang as being involved in it.
18        Q.   So --
19        A.   Excuse me.  Four people in a street gang.
20        Q.   So that was the information that he had or
21   believed, and he provided that to you?
22        A.   Yes.
23        Q.   So on that occasion, Eric Duran is
24   providing information which may be helpful to the
25   FBI?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8130

1       A.   Yes.

2       Q.   And did he know whether it's true or not,

3  or was he just conveying something to you that might

4  help you further any part of investigation?

5       A.   In my investigation, I was trying to find

6  out.  That was one of the homicides I was working

7  on, so just about everybody I talked to I asked

8  about that particular homicide because it was an

9  unsolved homicide.

10           MR. CASTELLANO:  May I retrieve the

11  exhibit, Your Honor, the document?

12           THE COURT:  You may.

13  BY MR. CASTELLANO:

14       Q.   I just want to clarify this with you.  On

15  the statement that Urquizo, Lupe Urquizo talked to

16  you about when it came to on the door or over the

17  door, was it your understanding from him that Mario

18  Rodriguez and Timothy Martinez were out doing

19  cleaning?

20       A.   Yes.

21       Q.   And at that point, whenever they're out,

22  are they outside of their pod?

23           MS. JACKS:  Objection, calls for

24  speculation.  I mean, Agent Acee wasn't there.

25           THE COURT:  Well --

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            MS. JACKS:  And there is no testimony from
 2  the witnesses that they were cleaning outside the
 3  pod.
 4            THE COURT:  Well, there was some
 5  testimony.
 6            MR. CASTELLANO:  Correct, Your Honor.
 7            THE COURT:  But the testimony was by whom?
 8            MR. CASTELLANO:  Well, I'm trying to
 9  clarify how Lupe Urquizo relayed this information
10  about how these people were able to communicate.
11            THE COURT:  So as long as he's just
12  limited to what Mr. Castellano is probing, what
13  exactly was told to Mr. Acee, then I'll allow that.
14            MS. JACKS:  Your Honor, I'd ask that the
15  questions be phrased in that manner, rather than,
16  "What was your understanding?"  Or "What actually
17  happened?"
18            MR. CASTELLANO:  I'm fine with that, Your
19  Honor.  That's fair.
20            THE COURT:  That's fair.
21  BY MR. CASTELLANO:
22      Q.   Okay.  So what did he tell you about Red
23  and Blue in terms of where they were?  Were they out
24  of the pod?  How is it they were able to
25  communicate?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    A.   They were out of the pod, cleaning or

2   painting.

3    Q.   And have you experienced that yourself

4   with inmates who are out of their pods, painting and

5   cleaning?

6    A.   Yes.

7    Q.   Who do you remember seeing out of the pod?

8         MS. JACKS:  Objection, vague as to time,

9   and irrelevant.

10        THE COURT:  Overruled.

11   A.    Yeah, it happens frequently when I'm up at

12  the North or South.  Sometimes some of the inmates

13  that I've gotten to know yell, and they're out

14  cleaning, and they want to talk to me from across

15  the prison grounds or something.  Sometimes they're

16  closer to me.

17  BY MR. CASTELLANO:

18   Q.    And do you know, when Red and Blue were

19  out of the pod, meaning Rodriguez and Martinez,

20  whether they were porters or not?

21        MS. JACKS:  Objection to the phrasing of

22  the question.  The issue is what Mr. Urquizo said,

23  not what Agent Acee knows about Red and Blue being

24  out of the pod.

25        THE COURT:  Are you willing to tie it

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

 

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   directly to what Mr. Urquizo said?
 2           MR. CASTELLANO:  Sure.  Yes, sir, that's
 3   fine.
 4   BY MR. CASTELLANO:
 5       Q.   From his statement, do you know whether he
 6   was communicating to you -- did he tell you whether
 7   they were out because they were porters or why they
 8   were out, doing cleaning or painting?
 9       A.   Because they were on a work detail, which
10   would mean they were porters.
11           MR. CASTELLANO:  May I have a moment?
12           THE COURT:  You may.
13           MR. CASTELLANO:  Thank you, Your Honor.  I
14   pass the witness.
15           THE COURT:  All right.  Thank you, Mr.
16   Castellano.
17           Ms. Fox-Young, do you have further
18   redirect?
19           MS. FOX-YOUNG:  Just very briefly, Your
20   Honor.
21               FURTHER REDIRECT EXAMINATION
22   BY MS. FOX-YOUNG:
23       Q.   Agent Acee, with respect to what you
24   learned from Eric Duran on August 14, 2015, I think
25   you just testified that you learned that three
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    people in a street gang were apparently involved in

2    the murder of Shane Dix, right?

3         A.   I think four people in a street gang.

4         Q.   Okay.  And that fourth person who Eric

5    Duran told you about was Billy Cordova, who admitted

6    to the murder to Eric Duran, correct?

7         A.   Yes.

8         Q.   And if in fact Billy Cordova did not

9    murder Shane Dix, that is bragging about something

10   that he didn't do, isn't it?

11        A.   He bragged about it, yes.

12             MS. FOX-YOUNG:  Thank you, Your Honor.

13             THE COURT:  Thank you, Ms. Fox-Young.

14             Ms. Jacks, do you have anything further?

15             MS. JACKS:  Just briefly, Your Honor.

16             THE COURT:  Ms. Jacks.

17                FURTHER REDIRECT EXAMINATION

18   BY MS. JACKS:

19        Q.   Agent Acee, is it your testimony that Lupe

20   Urquizo told you that Mario Rodriguez and Timothy

21   Martinez were porters in blue pod?

22        A.   No.

23        Q.   Do you have any independent verification

24   of the assertion that they were porters?

25        A.   No.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8135

1      Q.   And Timothy Martinez, he worked in the

2  wheelchair program, right, if you know?

3      A.   At some point in time he did.   Timothy

4  told me that.

5           MS. JACKS:  I have nothing further.

6           THE COURT:  Thank you, Ms. Jacks.

7           All right.  Mr. Acee, you may step down.

8  Thank you for your testimony.

9           Let me see counsel up here at the bench.

10          (The following proceedings were held at

11  the bench.)

12          THE COURT:  I know that for a long time

13  y'all have wanted Mr. Acee to be your last witness.

14  Looking at the defendants here, is that still where

15  you are?

16          MS. JACKS:  When we made that deal, that

17  was before the Government had provided these notes

18  from Agent Sainato that we were questioning him

19  about yesterday, and I would propose to call him now

20  to question him on those notes.

21          THE COURT:  Okay.  Any objection to that?

22          MR. BECK:  No.

23          THE COURT:  Okay.

24          (The following proceedings were held in

25  open court.)

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Is somebody telling the
 2  witness?
 3            MS. FOX-YOUNG:  Your Honor, we'll call FBI
 4  Agent Sainato.
 5            THE COURT:  Mr. Sainato, if you'll come up
 6  and stand next to the witness box on my right, your
 7  left, before you're seated, my courtroom deputy,
 8  Ms. Standridge, will swear you in.
 9                    JOSEPH SAINATO,
10      after having been first duly sworn under oath,
11      was questioned, and testified as follows:
12            THE CLERK:  Please be seated.  State and
13  spell your name for the record.
14            THE WITNESS:  My name is Joseph Sainato,
15  J-O-S-E-P-H, Sainato, S-A-I-N-A-T-O.
16                    REDIRECT EXAMINATION
17  BY MS. JACKS:
18      Q.   Good afternoon, Agent Sainato.
19      A.   Good afternoon, Ms. Jacks.
20      Q.   Can you tell the jury how you're employed?
21      A.   I'm a Special Agent for the FBI.
22      Q.   And how long have you been an FBI Special
23  Agent?
24      A.   I started the Academy in February of 2015,
25  so about three years.
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8137

```
1        Q.    And were you assigned to assist in the
2   FBI's investigation on this particular case?
3        A.    Yes, ma'am.
4        Q.    And as part of your job, in helping out
5   with this case, did you participate in an interview
6   with Lupe Urquizo?
7        A.    Yes, ma'am.
8        Q.    On -- and let me give you the date.  On
9   January 22, 2018?
10       A.    Yes, ma'am.
11             MS. JACKS:  Your Honor, I have --
12       Q.    And did you also take notes?
13       A.    I did.
14       Q.    And can you tell us how you took notes
15   during the interview?
16       A.    This was the pretrial interview for Mr.
17   Urquizo, so I had my laptop and I was taking notes
18   on my laptop.
19       Q.    And you were taking the notes
20   contemporaneously with the discussion with Mr.
21   Urquizo?
22       A.    Yes, ma'am.
23       Q.    And you were typing things out in your
24   notes as they were said?
25       A.    Correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.   And you've had a chance to -- let me do

2    this.  I'm going to mark the FBI 302 and your notes

3    just in case you need to refer to it during your

4    testimony.

5    A.   Thank you, ma'am.

6         MS. JACKS:  So can we have the defense

7    next in order?  Your Honor, I'm going to mark the

8    FBI 302 GC, G as in Good, C as in Charlie.  And I'll

9    mark -- that's a one-page document, and I'll mark

10   the four pages of Agent Sainato's notes GD, G as in

11   Good, D as in Dog.

12        And, Your Honor, may I approach and give

13   these to the witness?

14        THE COURT:  You may.

15   BY MS. JACKS:

16   Q.   Now, Agent Sainato, if you need to refresh

17   your memory, just let me know, and I'll give you the

18   time and try to direct you to the area of those

19   documents you might need.

20   A.   Thank you.

21   Q.   But first of all, did you prepare the

22   official 302, the FBI report of the interview?

23   A.   No, ma'am.

24   Q.   Who prepared that?

25   A.   Agent Stemo.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   And did Agent Stemo participate in the

2  interview with Lupe Urquizo on that day?

3      A.   She did not.

4      Q.   So can you just -- is that normal, or is

5  it unusual to have that happen?

6      A.   That's not our normal procedure.  It was

7  an extraneous circumstance.

8      Q.   So how did Agent Stemo prepare the 302, if

9  she didn't participate in the interview?

10     A.   I sent Ms. Stemo my notes.

11     Q.   So you emailed them to her?

12     A.   Yes, ma'am.

13     Q.   Now, I want to ask you some questions

14  about what Mr. Urquizo told you during the course of

15  that interview.

16     A.   Yes, ma'am.

17     Q.   And if you need to refer to your notes,

18  that's fine.

19     A.   Okay.

20     Q.   You'd agree with me that the 302 is

21  significantly shorter than your notes, right?

22     A.   That's correct.

23     Q.   There's a lot of information contained in

24  your notes that is not contained in the 302?

25     A.   Yes, ma'am.

SANTA FE OFFICE                                                          MAIN OFFICE
119 East Marcy, Suite 110                                          201 Third NW, Suite 1630
Santa Fe, NM 87501                                                  Albuquerque, NM 87102
(505) 989-4949                                                              (505) 843-9494
FAX (505) 820-6349                                                    FAX (505) 843-9492
1-800-669-9492



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

e-mail: info@litsupport.com

```
 1        Q.   And the notes that we're discussing, those
 2   were provided to me on Wednesday evening, February
 3   28th, at about 7:15 in the evening?
 4        A.   I have no idea when you got them, ma'am.
 5        Q.   Okay.
 6             MS. JACKS:  Your Honor, I'd offer a
 7   stipulation, then, with the Government that those
 8   notes were emailed to me Wednesday, February 28th,
 9   at approximately 1915 hours.
10             THE COURT:  Is that going to be you, Ms.
11   Armijo?
12             MS. ARMIJO:  Yes, Your Honor.  I would say
13   evening.  Without looking at the email, I don't want
14   to give an exact time, but I can certainly check my
15   emails to see, to verify.  But right now, I don't
16   have that in front of me.  But would I say evening.
17             THE COURT:  Is that all right?
18             MS. JACKS:  That's fine.
19             THE COURT:  All right.
20   BY MS. JACKS:
21        Q.   So, Agent Sainato, I want to ask you just
22   a few questions about what Mr. Urquizo said during
23   that pretrial meeting that you were essentially
24   transcribing.
25        A.   Okay.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1        Q.   So during that meeting, was it discussed
2   with Mr. -- was the Molina homicide discussed with
3   Mr. Urquizo?
4        A.   Yes, it was.
5        Q.   And did he tell you that just prior to the
6   Molina homicide, the day prior, he was transferred
7   to Southern New Mexico Correctional Facility?
8        A.   Yes.
9        Q.   I saw you sort of looking in the air.
10       A.   Can I check my notes real quick?
11       Q.   Yes, I want you to.  And I think it would
12  be at Bates page 54287, which is page 3 of your
13  notes, and it would be the --
14       A.   Third to last?
15       Q.   Yes, third to last paragraph.
16       A.   Yes, ma'am.
17       Q.   Okay.  And did he tell you -- did he tell
18  you when he got to Southern New Mexico Correctional
19  Facility there was no property officer on duty?
20       A.   That's correct.
21       Q.   And did he tell you that as he was being
22  escorted to his unit -- well, did he tell you he was
23  placed in yellow pod?
24       A.   Let me just double-check that real quick.
25  I'm sorry.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.   I think it's in the same paragraph you

2  were just looking at.

3      A.   Thank you.  Yes, ma'am.

4      Q.   So did he tell you that he was escorted to

5  yellow pod, where he was to be housed?

6      A.   He did.

7      Q.   And did he say anything happened on the

8  way to yellow pod?

9      A.   He said he passed the door to blue pod.

10     Q.   Okay.

11     A.   That's where he encountered three

12 individuals.

13     Q.   And who were the three individuals that he

14 encountered?

15     A.   I believe it was Mario Rodriguez, Timothy

16 Martinez, and I'm going to have to check on the

17 third.  I'm sorry.

18     Q.   Okay.

19     A.   Jerry Montoya.

20     Q.   And did he tell you that he spoke to them

21 at that time, as he passed blue pod?

22     A.   I believe so, yes.

23     Q.   And did he tell you anything about Mario

24 Rodriguez later passing him a note under the door

25 between blue pod and yellow pod?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      A.    I'd have to double-check on that, as well.
2  I'm sorry.
3      Q.    Okay.
4      A.    Thank you.  Yes, ma'am, he did.
5      Q.    And did he tell you that the note that
6  Rodriguez passed him was asking about paperwork on
7  Javier Molina?
8      A.    I'm sorry?  One more time.  Thank you.
9  Yes, ma'am, he did.
10      Q.    And in the note, did the note say anything
11  about Rodriguez's desire to have certain people move
12  on or hit Javier Molina?
13      A.    I believe it did.
14      Q.    Do you want to double-check?
15      A.    I'll do that for you.  Yes, ma'am.
16      Q.    What did it say?
17      A.    The note said that Mr. Rodriguez desired
18  to have Timothy Martinez, Jerry Montoya, and Jerry
19  Armenta do the hit.
20      Q.    So the note that Rodriguez wrote said that
21  Rodriguez wanted to have Timothy Martinez, Jerry
22  Montoya, and Jerry Armenta do the hit?
23      A.    Yes, ma'am.
24      Q.    On Javier Molina?
25      A.    Yes.

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                           201 Third NW, Suite 1630
Santa Fe, NM 87501                                                 Albuquerque, NM 87102
(505) 989-4949                                                               (505) 843-9494
FAX (505) 820-6349                                                   FAX (505) 843-9492
                                                                            1-800-669-9492
                                                                    e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8144

```
1        Q.   Sometime the next day -- so this would be
2   the day that Mr. Molina was killed -- did Mario
3   Rodriguez send Mr. Urquizo another note?
4        A.   Let me refer to my notes, please.
5        Q.   I think this is in the last paragraph on
6   that same page.
7        A.   Thank you.  Yes, ma'am.
8        Q.   And according to that note, did Mr.
9   Rodriguez communicate to Mr. Urquizo that Jerry
10  Montoya, Jerry Armenta, and Timothy Martinez were
11  going to be tasked with participating in the
12  homicide?
13       A.   Yes, ma'am.
14       Q.   And did the note also say that Daniel
15  Sanchez was assigned the task of covering the
16  camera?
17       A.   I believe so, but let me double-check real
18  quick.
19       Q.   Of course.
20       A.   Thank you.  Yes, ma'am, he did.
21       Q.   During that same interview, did Lupe
22  Urquizo discuss things that happened after Mr.
23  Molina was murdered?
24       A.   Yes.
25       Q.   And did he tell you specifically that he,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8145

```
 1  Lupe Urquizo, Mario Rodriguez, David Calbert, Robert

 2  Martinez, and Roy Martinez discussed hitting or

 3  killing Daniel Sanchez after the Molina murder?

 4            MS. ARMIJO:  Your Honor, at this time

 5  we're going to object.  This is not impeaching

 6  anybody.  This is just pure hearsay.

 7            THE COURT:  Who would it be impeaching,

 8  Ms. Jacks?

 9            MS. JACKS:  Well, Your Honor, this was

10  evidence that was withheld from us until Wednesday

11  night, so it was my understanding that this was at

12  least some bit of a remedy that the Court was

13  permitting because the Government withheld this

14  evidence.

15            THE COURT:  Well, I think we've still got

16  to conduct it pursuant to the Rules of Evidence, so

17  if it's not impeaching --

18            MS. JACKS:  Well, it does impeach Mr.

19  Urquizo because, if I may, this statement is that --

20  this statement involves wanting to kill Mr. Sanchez

21  for two reasons.

22            MS. ARMIJO:  Your Honor, may we approach

23  instead of just blurting out what she thought before

24  the jury?

25            THE COURT:  All right.  Why don't you
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  approach.

2          MS. JACKS:  Well, it should be brought

3  before the jury, and it should have been brought --

4          THE COURT:  Let's approach.

5          (The following proceedings were held at

6  the bench.)

7          THE COURT:  Is there any way, if it's only

8  going to impeach the witnesses, you can ask your

9  question limited to that one person, rather than

10  listing out all the other people where we don't have

11  statements that it would impeach?

12          MS. JACKS:  I can do that.

13          THE COURT:  Any issue with that, Ms.

14  Armijo?

15          MS. ARMIJO:  Well, it depends on who

16  they're going to impeach.

17          THE COURT:  Give the name again.

18          MS. JACKS:  Mr. Urquizo, because Mr.

19  Urquizo said that the reason they wanted to hit

20  Daniel Sanchez was because he didn't cover the

21  cameras.  And according to this statement, which we

22  didn't have at the time, Mr. Urquizo testified he

23  said it was for two reasons; one, because Sanchez

24  didn't participate in the homicide, and, two,

25  because he didn't cover the cameras.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8147

```
 1              MS. ARMIJO:  And that goes straight to --
 2    they had the opportunity to call Mr. Urquizo to do
 3    that, and they chose not to.
 4              THE COURT:  Well, I still think they can
 5    impeach Urquizo through this witness if that's a
 6    statement that was made to or in front of Mr.
 7    Sainato.  So I'll allow that impeachment.
 8              MS. BHALLA:  I don't have any problem with
 9    Ms. Jacks asking these questions, and I think it is
10    fair game.  But part of the problem with the late
11    discovery is that it is an issue where that 302 also
12    has some conversations about Carlos Herrera that we
13    haven't brought out, and I don't want them to be
14    brought out.
15              THE COURT:  Let's see what Ms. Jacks does.
16    You're not waiving any objection.
17              MS. JACKS:  I specifically did not ask
18    about those.
19              THE COURT:  You can object if she gets
20    there.
21              MS. BHALLA:  I'm not worried about Ms.
22    Jacks.  I'm worried about the Government's
23    cross-examination.
24              THE COURT:  Approach before you get into
25    that, because right at the moment I think it would
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8148

```
 1   be beyond the scope.
 2           MS. BHALLA:  Thank you, Your Honor.
 3           THE COURT:  All right.  Ms. Jacks.
 4           (The following proceedings were held in
 5   open court.)
 6   BY MS. JACKS:
 7       Q.   Thank you.  Excuse me, Agent Sainato.
 8   Before the break, I was asking you about the
 9   discussion that occurred involving Mr. Urquizo after
10   the Molina murder.  Do you remember where we were?
11       A.   Yes, ma'am.
12       Q.   What I want to ask you is:  Did Mr.
13   Urquizo tell you that there was a discussion that he
14   engaged in with some other inmates about hitting or
15   killing Daniel Sanchez?
16       A.   Yes, ma'am.
17       Q.   And did he tell you that there were two
18   reasons that people were discussing hitting or
19   killing Daniel Sanchez after the Molina murder?
20       A.   I remember one.
21       Q.   Well, I'll ask them to you separately.
22   Did he tell that one of the reasons that they wanted
23   to kill Daniel Sanchez was because he did not
24   participate in the Molina homicide?
25       A.   I'll check my notes on that one.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   That would be at Bates 54288, fourth

2   paragraph.

3        A.   Thank you.  Yes, ma'am.  That's accurate.

4        Q.   And did he also tell you that the other

5   reason they talked about killing Daniel Sanchez was

6   because he didn't cover the camera, that he didn't

7   do the job he'd been tasked with, covering the

8   camera?

9        A.   That's correct.

10       Q.   And did he say anything about discussions

11  regarding killing Daniel Sanchez's brother?

12       A.   Yes.

13       Q.   Because they couldn't get to Daniel

14  Sanchez, so they talked about killing his brother,

15  Ronald?

16       A.   Correct.

17       Q.   And that was because Daniel Sanchez didn't

18  participate in the homicide and didn't cover the

19  cameras?

20       A.   Correct.

21       Q.   Now, I have a few more questions about the

22  content of the FBI 302.

23       A.   Okay.

24       Q.   So if you need to look at that to refresh

25  your memory, just let me know.  Okay?  So first of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   all, in the FBI 302 is there any mention about the

2   fact that when Lupe Urquizo got to Southern, there

3   was no property officer on duty?

4        A.   No, ma'am.

5        Q.   Is there any mention in the 302 regarding

6   this interview that when Mr. Urquizo passed blue pod

7   on the way to yellow pod, he spoke to Mario

8   Rodriguez, Timothy Martinez, and Jerry Montoya?

9        A.   No, ma'am.

10       Q.   Is there anything in the FBI 302 that says

11  that -- that documents what Mr. Urquizo told you on

12  that day that he said Mario Rodriguez passed him a

13  note under the door which expressed Mr. Rodriguez'

14  desire to have Timothy Martinez, Jerry Montoya, and

15  Jerry Armenta kill Javier Molina?

16       A.   No, ma'am.

17       Q.   Is there anything in the FBI 302 regarding

18  that January 22, 2018, interview that reflects that

19  Mr. Urquizo told you that the next day Mario

20  Rodriguez sent him a note saying that Javier Molina

21  would be killed that afternoon?

22       A.   No, ma'am.

23       Q.   Is there anything in the FBI 302 that

24  reflects that Mr. Urquizo told you in that note Mr.

25  Rodriguez, Mario Rodriguez, said that Jerry Montoya,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Jerry Armenta, and Timothy Martinez were tasked with

2   the actual killing?

3       A.   Let me look real quick.  I don't think so.

4       Q.   At the FBI 302?

5       A.   Yes, ma'am.  No, ma'am.

6       Q.   I mean, according to Urquizo, Rodriguez

7   told him that he had assigned Montoya, Armenta, and

8   Timothy Martinez roles in the actual killing of

9   Javier Molina, right?

10      A.   Could you say that one more time?

11      Q.   I said according to that interview, Lupe

12  Urquizo told you that Mario Rodriguez said that --

13  let me go back.  Lupe Urquizo told you that Mario

14  Rodriguez had told him that Rodriguez had assigned

15  Montoya, Armenta, and Timothy Martinez to actually

16  perform the murder?

17      A.   Yes, ma'am.

18      Q.   And there is nothing about that in the

19  302?

20      A.   No, ma'am.

21      Q.   And is there anything in the 302 regarding

22  the fact that on that date, Lupe Urquizo told you

23  that Mario Rodriguez had told him the day of the

24  Molina murder that Mr. Sanchez, Daniel Sanchez, had

25  been tasked with covering the cameras?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.    In the 302 or in the --
 2        Q.    In the 302.  We know it's in your notes.
 3   You just testified to it.  Is there anything in the
 4   302 about that?
 5        A.    No, ma'am.
 6        Q.    And is there anything in the 302 regarding
 7   the discussion that Lupe Urquizo had with others
 8   after the Molina murder about hitting Daniel
 9   Sanchez?
10        A.    No, ma'am.
11        Q.    And is there anything in the 302 about the
12   discussion among those people being that Daniel
13   Sanchez -- they wanted to kill Daniel Sanchez
14   because he did not participate in the Molina
15   homicide or cover the camera like he was supposed
16   to?
17        A.    That is not in the 302.
18        Q.    Nothing in the 302?
19        A.    No, ma'am.
20              MS. JACKS:  If I could have a moment?
21              THE COURT:  You may.
22              MS. JACKS:  I have nothing further.  Thank
23   you.
24              THE COURT:  Thank you, Ms. Jacks.  Any
25   other defendants have direct examination of Agent
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   Sainato?

 2              MR. VILLA:  No, Your Honor.

 3              MS. DUNCAN:  No, Your Honor.

 4              THE COURT:  All right.  Ms. Armijo.

 5                    CROSS-EXAMINATION

 6   BY MS. ARMIJO:

 7       Q.   Agent Sainato, what was the purpose of

 8   writing -- and just to be clear, the 302 that

 9   Ms. Jacks was referring to was not written by you,

10   correct?

11       A.   Correct.

12       Q.   Who was it written by?

13       A.   Special Agent Stemo.

14       Q.   And at whose request was that 302 written?

15       A.   The U.S. Attorney's Office.

16       Q.   Okay.  So let's go back to that interview

17   that you sat in on.  What was the point of that

18   meeting?

19       A.   It was a pretrial interview.

20       Q.   Okay.  And so who was in charge of that

21   meeting, of asking questions?

22       A.   Mr. Beck.

23       Q.   Okay.  And were you there primarily to

24   take note if there was any new information?

25       A.   That's correct.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8154

1    Q.   And then that's the notes that you were

2  referring to, to refresh your recollection?

3    A.   Yes, ma'am.

4    Q.   And then did you subsequently go out of

5  town?

6    A.   I left the following week.  There was a

7  break between when -- I'd ask Mr. Beck if he wanted

8  a 302 written, because I'd never done a pretrial

9  interview before.  It took him a couple of days to

10  get back to me.  By that time, I was either out of

11  town or just about out of town.  I can't remember

12  the exact timeline.  But I wasn't able to write the

13  report, so I sent the notes to Agent Stemo to write

14  the 302.

15    Q.   Was the purpose of a 302 just to provide

16  new information?

17    A.   I believe that's what it was, yes, ma'am.

18    Q.   All right.  And I'm going to --

19         MS. JACKS:  Objection.  It doesn't sound

20  like this witness knows.

21    Q.   Is that your understanding?

22    A.   That is my understanding, yes, ma'am.

23    Q.   All right.  And I'm going to show you

24  Bates starting 43638.

25         MS. ARMIJO:  May I approach the witness,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  Your Honor?

 2          THE COURT:  You may.

 3      Q.   I want you to look at this document and

 4  see if it is a debrief report regarding Lupe Urquizo

 5  on March 6th of 2017?

 6      A.   Yes, ma'am.  This looks like a 302 written

 7  by Special Agent Acee on March 6, 2017, reference

 8  Lupe Urquizo.

 9      Q.   All right.  And in reference to that, are

10  you aware if some of the questions that Ms. Jacks

11  asked you about, that were not included in the 302

12  that Nancy Stemo wrote, if they are actually

13  included in here?

14      A.   I haven't read that report in its

15  entirety.

16      Q.   All right.  And I'm first going to ask you

17  about page 2 of this report.  You could read that

18  second to last paragraph to yourself.

19      A.   Yes, ma'am.

20      Q.   And it was information in that report that

21  was previously reported about Mr. Urquizo and what

22  pod he was placed in and who came up and spoke to

23  him?

24      A.   Yes, ma'am.

25      Q.   And then going to page 6 of that report.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1          MS. ARMIJO:  If I may approach, Your
 2   Honor?
 3          THE COURT:  You may.
 4      Q.   I'm sorry.  Go to page 4.
 5          MS. BHALLA:  May we get a page number, Ms.
 6   Armijo?
 7          MS. ARMIJO:  Yes.  I'm sorry.  43640.
 8   BY MS. ARMIJO:
 9      Q.   If you look at that last paragraph.  Was
10   there previous information in there already about
11   letters that Mario Rodriguez wrote to Mr. Urquizo
12   and sent him under the door?
13      A.   Yes, ma'am.
14      Q.   All right.  And specifically, does that
15   indicate that --
16          MS. JACKS:  Object to counsel reading from
17   the 302.  This witness didn't write it.  He wasn't
18   present at the interview.  It would be hearsay.
19          THE COURT:  Let's not read out of it.
20   Let's do our questions differently than that.
21   BY MS. ARMIJO:
22      Q.   All right.  You have that in front of you?
23      A.   Yes, ma'am.
24      Q.   Does Mr. Urquizo indicate anything in
25   there about the letter that Mr. Rodriguez sent to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8157

1   him underneath the door?

2        A.   Yes, ma'am.

3        Q.   And does that letter include information

4   as to who wrote the letter to him?

5        A.   If I may look at the report?

6        Q.   Yes, please do.

7        A.   Yes, ma'am.

8        Q.   And who wrote the letter?

9             MS. JACKS:   Object to this witness

10  reading.   This would be hearsay.   He did not

11  participate in the interview, and he did not write

12  the report.

13            THE COURT:   It does seem like it's

14  secondhand.   I mean, if he didn't write the 302, I

15  think his notes are something else, but the 302

16  would not be his, so I sustain the objection.

17            MS. ARMIJO:   Okay, Your Honor.   We're

18  offering it not for the truth of the matter

19  asserted, but for the reasoning that it's not

20  included in another report that he was just --

21            MS. JACKS:   The information that Ms. --

22            THE COURT:   Well, I sustained the

23  objection.

24  BY MS. ARMIJO:

25        Q.   All right.   Going to page 4 of the report,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  which is 43641.  And, again, just read that to

2  yourself.  Is there also information there regarding

3  Mr. Sanchez?  And I don't want to get into the

4  contents of it, but was there information in there

5  regarding Mr. Sanchez and his involvement in Molina?

6       A.   Yes, ma'am.

7       Q.   And lastly, on Bates 43643.  Is there also

8  information in that report in reference to Ronald

9  Sanchez getting hit?

10      A.   Yes, ma'am.

11      Q.   So going back to the report that was

12 generated specifically after Mr. Beck was meeting

13 with Mr. Urquizo, what was the purpose of just

14 limiting it to these things?

15           MS. JACKS:  Objection, Your Honor.  I

16 don't think this witness prepared the 302, so I'm

17 not sure what the basis of his knowledge would be.

18           THE COURT:  Well, I think you're going to

19 have to lay some foundation for the question.  I'm

20 not sure I see yet how he can answer that question.

21 BY MS. ARMIJO:

22      Q.   Did Mr. Beck ask you to write a 302?

23      A.   He did.

24      Q.   And were you unable to do that?

25      A.   I was.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        Q.   So did you task somebody else with doing

2    so?

3        A.   Yes.

4        Q.   And in doing so, did you convey what was

5    the purpose of it, since you had been tasked with

6    it? Let me ask it a different way.  Since you had

7    been tasked with it and you were unable to do so,

8    did Ms. Stemo then do that task for you?

9        A.   Yes.

10       Q.   So what was the point in making that 302?

11       A.   My understanding, what Mr. Beck wanted in

12   the 302 was just new information that was not

13   previously covered in other debriefs of Mr. Urquizo.

14       Q.   And I'm going to show you -- and these are

15   letters dated January 28th to the attorneys in this

16   case.

17            MS. ARMIJO:  May I approach the witness,

18   Your Honor?

19            THE COURT:  You may.

20   BY MS. ARMIJO:

21       Q.   And I'm first going to start with one

22   letter.  I'm not going to ask you to read anything

23   out loud, but does it appear to be dated January 28,

24   2018?

25       A.   Yes, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8160

1    Q.   Does it appear to be to the defense

2 attorneys in this case?

3    A.   Yes, ma'am.

4    Q.   And in there, again not reading it out

5 loud, does it appear to have information that Lupe

6 Urquizo provided?

7    A.   Yes, ma'am.

8    Q.   And I'm going to show you another letter

9 dated January 28th, as well.

10    A.   Yes, ma'am.

11    Q.   Does it appear to be addressed to the

12 defense attorneys in this case?

13    A.   Yes, ma'am.

14    Q.   Just to be clear, this is a letter from

15 the Government to -- I believe from the Government

16 to the defense attorneys.

17    A.   Okay.

18    Q.   Is that correct?

19    A.   Yes, ma'am.

20    Q.   And does this second letter also have

21 information about Lupe Urquizo's statement?

22    A.   Yes, ma'am.

23    Q.   Now, lastly, going specifically to your

24 notes, do you still have those in front of you?

25    A.   Yes, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Q.    Okay.  Now, Ms. Jacks was asking you

2  questions specifically about page 3 of that

3  document, and she's talking about Mr. Rodriguez'

4  note that Urquizo indicated that he received.  Do

5  you recall that?  I believe it's the third paragraph

6  from the bottom.

7    A.    Yes, ma'am.

8    Q.    Now, does the note actually say that

9  Rodriguez had the desire to have Timothy Martinez,

10  Jerry Montoya, and Armenta do the hit?  Or does it

11  just say that there was -- that the note stated the

12  desire to have Timothy Martinez, Jerry Montoya, and

13  Jerry Armenta do the hit?

14    A.    If I may refer?

15    Q.    Sure.  And, again the distinction being

16  Rodriguez's desire, his desire, or the desire?

17    A.    My notes say the desire.

18    Q.    All right.  And it doesn't indicate who

19  actually came up with the plan, does it?

20    A.    No.

21    Q.    And it doesn't indicate if there was

22  anybody -- who the desire referred to, does it?

23    A.    No, ma'am.

24    Q.    All right.  And then in reference to Ms.

25  Jacks' question about -- going now to the last page,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   I believe, of your notes, in talking about the

2   question that Ms. Jacks asked you about whether or

3   not there was a hit on Daniel Sanchez because he did

4   not participate in the Molina murder or even cover

5   the camera like he was supposed to.  Let me ask you

6   a couple of questions about that.

7           Are you aware that Mr. Sanchez had been

8   tasked with taking a shank from one of the persons

9   that had actually stabbed Mr. Molina?

10          MS. JACKS:  Objection, Your Honor.  That's

11  treating the testimony -- well, it's assuming facts

12  not in evidence and treating the testimony as if it

13  is a foregone conclusion.

14          THE COURT:  Well, let me ask him if -- why

15  don't you word it in terms of is he aware of any

16  evidence that does that.

17          MS. ARMIJO:  You know, Your Honor, I'll

18  ask it as a hypothetical, maybe.

19          THE COURT:  Well, I'm not sure we're

20  interested in hypotheticals with this witness.  If

21  you want to ask it my way, either ask it my way or

22  don't --

23          MS. ARMIJO:  Yes, I will, Your Honor.

24  BY MS. ARMIJO:

25      Q.  Are you aware of whether or not, as part

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8163

1   of the plan to kill Jerry Montoya -- I'm sorry -- to

2   kill Javier Molina, if the shanks -- if Daniel

3   Sanchez was supposed to take one of the shanks?

4        A.   I think there was some mention of it that

5   I just read in that report.  But prior to a couple

6   minutes ago, no, ma'am.

7        Q.   Okay.  You read it in the other report

8   that I gave you, the other debrief?

9        A.   Just now, yes, ma'am.

10       Q.   Okay.

11            MS. JACKS:  I would move to strike all of

12   that as hearsay.

13            THE COURT:  Well, yeah, that wasn't really

14   the question I was trying to -- I thought was

15   appropriate.  So I'll strike the question and the

16   answer.

17            MS. ARMIJO:  All right.

18   BY MS. ARMIJO:

19       Q.   Now, what your report indicates is that

20   Sanchez did not participate or even cover the camera

21   like he was supposed to, correct?

22            MS. JACKS:  Objection.  Counsel is not

23   reading -- she's omitting words.  The report reads

24   differently than what Ms. Armijo just read.

25            THE COURT:  Let me let you deal with that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   on redirect.  Overruled.
 2           MS. JACKS:  I don't think she should be
 3   allowed to misrepresent what's in the notes to this
 4   jury.
 5           THE COURT:  It's overruled.
 6           MS. ARMIJO:  Sorry, Your Honor.  There was
 7   an objection before for reading from it.
 8   BY MS. ARMIJO:
 9       Q.   Does the report, to be fair -- I'll read
10   right from it since there won't be an objection to
11   it -- indicate that there was a hit, about hitting
12   Daniel Sanchez because he did not participate in the
13   Molina homicide or even cover the camera like he was
14   supposed to do?
15       A.   Yes, ma'am.
16       Q.   Okay.  Now, that doesn't indicate whether
17   or not Mr. Sanchez had any involvement in calling
18   the hit, does it?
19           MS. JACKS:  Objection, calls for a
20   conclusion.
21           THE COURT:  Well, if he knows.
22       A.   Could you state it again?  I'm sorry.
23   BY MS. ARMIJO:
24       Q.   That does not necessarily -- that does not
25   reference anything about whether or not Mr. Sanchez
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  actually called the hit?

2      A.   That statement does not, no.

3      Q.   Okay.  Because would you agree that

4  someone can call a hit, and then there could also be

5  somebody that actually participates in actually

6  doing the murder?

7          MS. BHALLA:  Objection, speculation and

8  compound.

9          MS. JACKS:  And also, participation would

10 include calling.

11         THE COURT:  Let me rule on one objection

12 at a time.  I'm going to sustain.  It's really not

13 helping us to find out what he thinks about these

14 things, so it's sustained.

15 BY MS. ARMIJO:

16     Q.   Mr. Urquizo never said that Daniel Sanchez

17 was not involved, did he?

18         MS. JACKS:  Objection, misstates the

19 testimony.

20         THE COURT:  Overruled.

21     A.   I'm sorry?

22 BY MS. ARMIJO:

23     Q.   Mr. Urquizo never told you during that

24 pretrial -- or I should say told Mr. Beck during

25 that pretrial interview that Daniel Sanchez was not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   involved in the Molina murder?

 2          MS. JACKS:  Objection, misstates the

 3   testimony.

 4          THE COURT:  Overruled.

 5      A.   Could you do it one more time?  I'm sorry.

 6   BY MS. ARMIJO:

 7      Q.   Mr. Urquizo, during the interview that Mr.

 8   Beck had with him, he never told you that Daniel

 9   Sanchez was not involved in the Javier Molina

10   murder?

11      A.   Correct.

12          MS. ARMIJO:  If I may have a moment?

13          THE COURT:  You may.

14          MS. ARMIJO:  That's it.  I pass the

15   witness.

16          THE COURT:  All right.  Thank you, Ms.

17   Armijo.

18          Ms. Jacks, do you have redirect of Agent

19   Sainato?

20          MS. JACKS:  Just a few questions.

21          THE COURT:  Ms. Jacks.

22                    REDIRECT EXAMINATION

23   BY MS. JACKS:

24      Q.   Agent Sainato, while Ms. Armijo was asking

25   you questions, did she show you an FBI 302 from
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1   March 6, 2017?

2       A.   She showed me a 302.  I can't remember the

3   specific date on it, but that sounds right.

4       Q.   Okay.  But it was a report of a prior

5   interview with Mr. Urquizo?

6       A.   Yes, ma'am.

7       Q.   And were you present during that

8   interview?

9       A.   I was not.

10      Q.   Did you prepare that 302?

11      A.   No, ma'am.

12      Q.   And had you even seen it prior to today?

13      A.   No, ma'am.

14      Q.   Okay.  Now, Ms. Armijo asked you some

15  questions about what Mr. Beck asked you to do in

16  terms of preparing a 302 documenting the interview

17  that you participated in, in January of 2018.  Do

18  you recall those questions?

19      A.   Yes, ma'am.

20      Q.   And specifically, I think what she asked

21  you about was:  Did Mr. Beck tell you to just

22  include, quote, "new information"?

23      A.   That's what she asked me, yes, ma'am.

24      Q.   You didn't prepare the report, right?

25      A.   No, ma'am.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Q.    And in order to know what information

2   might be, quote, "new," you would have had to go

3   back and read all the previous FBI 302s regarding

4   interviews with Mr. Urquizo, right?

5      A.    If I was preparing the report, yes, ma'am.

6      Q.    Okay.   Because otherwise, you wouldn't

7   know what was new, right?

8      A.    Correct.

9      Q.    And while you were looking at that report

10  that Ms. Armijo showed you, did you notice whether

11  it said anything about Mr. Sanchez not participating

12  in the homicide of Javier Molina and not covering

13  the cameras?

14     A.    I looked at it quite briefly, ma'am.

15     Q.    Well --

16     A.    Could you restate?

17     Q.    Yeah.   I mean, the point is, there's

18  nothing in that 302 that says Mr. Urquizo said Mr.

19  Sanchez did not participate in the Molina homicide

20  and did not cover the cameras?

21     A.    I can't really say what's not in that 302.

22  I'm sorry.

23     Q.    It's lengthy?

24     A.    Correct.

25     Q.    And you didn't have a chance to read it up

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   there on the witness stand?

 2        A.   Correct.

 3        Q.   Okay.  I want to just try to make sure I

 4   understand what your role in the interview in

 5   January 2018 was with respect to Lupe Urquizo.

 6        A.   Okay.

 7        Q.   So during the interview, you were the

 8   person that was tasked with taking notes, right?

 9        A.   Correct.

10        Q.   And you took that job seriously?

11        A.   Yes, ma'am.

12        Q.   And you attempted to be as accurate as

13   possible?

14        A.   Yes, ma'am.

15        Q.   And it sounds like the way that you took

16   notes by just typing them into your computer was

17   almost like you were transcribing the interview?

18        A.   I wouldn't say transcribing.  That would

19   involve more like what these ladies are doing here.

20   I was summarizing as we went.

21        Q.   Okay.  And summarizing every topic that

22   was discussed during that interview?

23        A.   Yes, ma'am.

24        Q.   And did you make an attempt to do that as

25   accurately as possible?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1        A.   I did.

 2        Q.   And did you make an attempt not to leave

 3   anything out?

 4        A.   Yes, ma'am.

 5        Q.   And you've had a chance to review those

 6   notes both yesterday and today, right?

 7        A.   Yes, ma'am.

 8        Q.   And are they accurate notes of that

 9   interview with respect to Mr. Urquizo?

10        A.   Yes, ma'am.

11        Q.   And you would agree with me that they're

12   much more detailed than the FBI 302 that was

13   ultimately prepared?

14        A.   Yes, ma'am.

15        Q.   And the four pages are single-spaced,

16   right?

17        A.   Yes.

18        Q.   It's a lot of information?

19        A.   It is.

20        Q.   And do you recall -- and I'm just asking

21   from your recollection of that interview -- how long

22   you sat there and spoke with Mr. Urquizo back in

23   January of 2018?

24        A.   I don't recall.

25        Q.   Can you give us an estimate?  Like was it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    more than an hour?  Was it more than two hours?

2         A.    More than an hour.  I don't know if two.

3         Q.    So somewhere, probably, between an hour

4    and two hours?

5         A.    That's fair.

6         Q.    And I think you testified, when Ms. Armijo

7    asked you, that Lupe Urquizo never said Daniel

8    Sanchez was not involved?

9         A.    I said that.

10        Q.    Do you recall that testimony?

11        A.    Yes, ma'am.

12        Q.    So I have a few questions about that.

13   First of all, Mr. Urquizo told you that he discussed

14   with other people killing Daniel Sanchez after the

15   Molina murder, right?

16        A.    Yes, ma'am.

17        Q.    And he told you that they discussed that

18   because Daniel Sanchez did not participate in the

19   Molina homicide?

20        A.    That's correct.

21        Q.    Or even cover the camera like was supposed

22   to do?

23        A.    Yes, ma'am.

24        Q.    And Mr. Urquizo also told you that Mario

25   Rodriguez tasked Mr. Sanchez with covering the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1  camera?
 2       A.   If I may refer to my notes for that one?
 3       Q.   Of course.
 4            MS. ARMIJO:  Ms. Jacks, are you referring
 5  to a certain page?
 6            MS. JACKS:  54287.
 7  BY MS. JACKS:
 8       Q.   Last paragraph.  I think I asked you about
 9  this.  I did ask you.
10       A.   Yes, ma'am.  Thank you.
11       Q.   That was supposed to be his job?
12       A.   Correct.
13       Q.   And other --
14            MS. ARMIJO:  Your Honor, that incorrectly
15  reflects what he wrote.  I'd ask that Ms. Jacks --
16       Q.   I'll read what you wrote.  Did you write
17  in your 302 that Daniel Sanchez was supposed to
18  cover the camera?
19       A.   I did.
20       Q.   And did you write in your 302 that that
21  was information provided to Mr. Urquizo by way of a
22  note written by Mario Rodriguez?
23       A.   I didn't write the 302, ma'am.
24       Q.   I'm sorry.  The notes.  I'm sorry.  Let me
25  reask the question.  Did you write in your notes
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  that that information was contained in a note that

2  Mario Rodriguez passed to Lupe Urquizo?

3       A.   I believe so.

4       Q.   And did that note also assign roles to Mr.

5  Montoya, Mr. Armenta, and Mr. Martinez?

6       A.   Yes, ma'am.

7       Q.   In regards to the discussion that day

8  about the Molina homicide, other than saying that

9  Daniel Sanchez was supposed to cover the camera, did

10 Mr. Urquizo tell you anything else about Daniel

11 Sanchez playing a role or being assigned a role in

12 that crime?

13      A.   Not that I can recall.

14           MS. JACKS:  I have nothing further.

15           THE COURT:  Thank you, Ms. Jacks.

16           Does any other defendant have any redirect

17 of Mr. Sainato?  All right.  You may step down.

18 Thank you for your testimony.  Is there any reason

19 that the agent cannot be excused, Ms. Jacks?

20           MS. JACKS:  Yes, he may be.  Thank you.

21           THE COURT:  All right.  Can he be excused

22 from the Government's standpoint, Ms. Armijo?

23           MS. ARMIJO:  Yes, Your Honor.

24           THE COURT:  All right.  You are excused

25 from the proceeding, not hearing any other

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8174

1    objection.

2            Why don't I see counsel up here at the

3    bench.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8175

```
 1              (The following proceedings were held at
 2     the bench.)
 3              THE COURT:  I know the defendants wanted
 4     to close with Mr. Acee.  Now I know why y'all wanted
 5     to call that FBI agent.  Do you all have any further
 6     witnesses or evidence?  Do y'all want me to at this
 7     time ask you that and you rest on the record?
 8              MS. JACKS:  I think we should rest.  And
 9     there are some rulings that the Court needs to make,
10     and there may be some issues with exhibits, so
11     provisionally --
12              THE COURT:  What if I did this?  What if I
13     did like we did with the Government?  I'll give you
14     a chance to rest, and there will be the
15     understanding subject to the defendants getting
16     with -- and I need to show Ms. Standridge my
17     records, and we'll make sure that the defendants'
18     exhibits are straight.  Does that work for you?  And
19     then we can also take up any motion while -- after
20     we excuse the jury.
21              MS. JACKS:  Yes, Your Honor, that's fine.
22              MR. LOWRY:  I have one small evidentiary
23     matter.  When Mr. Montoya was on the stand, he
24     mentioned chemical analysis of the heroin, which is
25     the basis of his plea agreement.  I don't think it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   exists.  I've asked the attorneys to produce it.
 2   I'd rather go by a stipulation that it doesn't
 3   exist.
 4              THE COURT:  Does it exist?
 5              MS. ARMIJO:  The original file was not
 6   mine.  It was reassigned to me.  I know in my file I
 7   don't have it.  My last email yesterday afternoon, a
 8   task force officer has been tasked with submitting
 9   it, and I was waiting to hear back whether, in fact,
10   there was.  So we won't stipulate that there is not
11   one.  I don't know if we can work around something,
12   and I can check.  I haven't checked to see if that's
13   been updated.  He did make a request.  I did check
14   my file.  Based upon that file -- in the filing I
15   received, I should say -- I made additional
16   inquiries.
17              THE COURT:  At the present time you don't
18   have it?
19              MS. ARMIJO:  No.
20              THE COURT:  Could you live with the
21   stipulation to that effect, that you all explain to
22   the jury --
23              MR. LOWRY:  That he doesn't have one.
24              THE COURT:  -- and the evidence closes,
25   and that's where it stands?  Is everybody okay with
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8177

1  that stipulation?  Anything else we need to do while

2  we have the jury present?

3         All right.  I'll call on you, Mr. Lowry,

4  that you have a stipulation with the Government that

5  you need to make in front of the jury and say that

6  in front of the jury.

7         MS. ARMIJO:  I'm sorry, Your Honor?

8         THE COURT:  I'll just call on Mr. Lowry as

9  a stipulation.  Then I'll call on the defendants,

10  whether they have any further evidence.  Why don't I

11  just call on you, Ms. Armijo, and you can state what

12  you have done and --

13         MR. LOWRY:  We can make it more simple

14  than --

15         MR. CASTELLANO:  I think we can say that

16  the defense requested a laboratory report related to

17  Mario Montoya's sale of heroin, and there is no lab

18  report because it was --

19         MS. ARMIJO:  We don't know.

20         THE COURT:  To date -- how about to date,

21  the Government hasn't been able to find or

22  produce --

23         MR. LOWRY:  The Government has not

24  provided one.

25         MR. CASTELLANO:  He pled guilty to the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  charges, so we don't have a lab report.

2          MR. LOWRY:  I think that's exactly what

3  happened.

4          THE COURT:  Okay.  Can you live with that

5  then?

6          MR. LOWRY:  That's what I prefer, exactly

7  what Mr. Castellano just said.

8          MR. CASTELLANO:  We want to make sure it's

9  accurate.  We don't know if there is a lab report.

10         THE COURT:  I don't think Mr. Lowry is

11  requiring you to say it doesn't exist; simply say to

12  date you have not been able to find or produce that

13  report.

14         MR. LOWRY:  That's correct, Your Honor.

15         MS. ARMIJO:  The last email that I had was

16  Task Force Officer Kubler (phonetic) was going to be

17  checking on it.  Other than this document, I haven't

18  checked.

19         MR. BECK:  And then we're out of time.

20         THE COURT:  Why don't I get this

21  stipulation on the record, then I'll turn to the

22  defendants and y'all can say what you want.

23         MR. VILLA:  Your Honor, we just conferred.

24  Will you ask each defendant individually so we can

25  each rest?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


8179

```
1              THE COURT:  I will.
2              (The following proceedings were held in
3   open court.)
4              THE COURT:  All right.  Ms. Armijo, do you
5   and Mr. Lowry have a stipulation as to a report?
6              MS. ARMIJO:  We do.  But I believe that
7   Mr. Castellano is going to --
8              THE COURT:  Mr. Castellano, if you have
9   the stipulation on the report.
10             MR. CASTELLANO:  Yes, Your Honor.  I'm
11  going to try.  I think the stipulation will be that
12  Mario Montoya admitted and was convicted of selling
13  heroin, and that he pled guilty to that charge, he
14  testified that it was heroin, and at this point we
15  do not have a lab report reflecting the results of
16  any testing of that heroin.
17             THE COURT:  All right.  Is that
18  stipulation sufficient, Mr. Lowry?
19             MR. LOWRY:  Yes, it is, Your Honor.
20             THE COURT:  All right.  At this time
21  Ms. Jacks, Mr. Jewkes, does Mr. Sanchez have further
22  witnesses or evidence he wishes to present?
23             MS. JACKS:  Your Honor, we do not.  And on
24  behalf of Mr. Sanchez, the defense recess.
25             THE COURT:  All right.  Mr. Lowry, Ms.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Duncan, does Mr. Baca have further witnesses or

2  evidence he wishes to present?

3            MR. LOWRY:  No, we do not, Your Honor, and

4  Mr. Baca would rest.

5            THE COURT:  All right.  Mr. Maynard, Ms.

6  Bhalla, does Mr. Herrera have further witnesses or

7  evidence he wishes to present?

8            MS. BHALLA:  No, thank you, Your Honor.

9  Mr. Herrera and the defense team rests as well.

10            THE COURT:  Mr. Villa or Ms. Fox-Young,

11  does Mr. Perez have further witnesses he wishes to

12  present?

13            MR. VILLA:  No, Your Honor, we rest.

14            THE COURT:  All right, ladies and

15  gentlemen, I'm going to meet with the attorneys and

16  the parties for a few moments, so relax for a little

17  bit.  But it's about time for our afternoon break

18  anyway.

19            Let me remind you, because we are shifting

20  gears here, of a few things that are especially

21  important.  Until the trial is completed, you're not

22  to discuss this case with anyone, whether it's

23  members of your family, people involved in the

24  trial, or anyone else, and that includes your fellow

25  jurors.  If anyone approaches you and tries to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8181

1   discuss the case with you, please let me know about

2   it immediately.

3           Also, you must not read or listen to any

4   news reports of the trial.  Again, don't get on the

5   internet and do any research for purposes of this

6   case.

7           And finally, remember that you must not

8   talk about anything with any person who is involved

9   in the trial, even if it doesn't have anything to do

10  with the trial.

11          If you need to speak with me, simply give

12  a note to one of the court security officers or Ms.

13  Standridge.  Because we may be changing gears rather

14  rapidly in different stages of the case, bear with

15  me as I repeat these, because they're very

16  important.  Y'all have been very good about

17  following instructions during this trial.  Let's

18  keep it up till the end.

19          All right.  We'll be in recess for a few

20  minutes.  Just relax.  I can't promise you exactly

21  how long it will take, but we'll keep you posted and

22  try not to have you waiting too long.

23          All right.  We'll be in recess for a few

24  minutes.

25          (The jury left the courtroom.)



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1            THE COURT:  Let's be seated and talk about
 2   how we're going to proceed.  I've been working
 3   pretty hard on the jury instructions.  What I would
 4   propose to do is to print those out.  If I have
 5   overlooked anybody's objection and not made a
 6   change, it hasn't been purposeful; it's probably
 7   because I've been editing and proofing my own work.
 8   I probably need everybody's eyes to look at it.
 9            So what would you think about if -- I got
10   one more change here I'm making in the Fifth Circuit
11   RICO instruction.  But if I made that change,
12   printed it off, and you took a look at it and see if
13   I caught everything, and then there's a few places
14   where, you know, I made changes that the Government
15   may not want and, vice versa, the defendants may not
16   want that I made that the Government made.  So we
17   may need to have some discussion on it.
18            But does that make sense, to print it off,
19   let Ms. Bean take a break, and we'll make y'all a
20   copy and you can take a look at it?
21            MR. CASTELLANO:  Yes, Your Honor.
22            THE COURT:  Does that work for the
23   defendants?
24            MS. JACKS:  It makes sense.  I guess I
25   want to bring this up because it's 4:00 on Friday.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  I'm wondering if we're going to read the

2  instructions today.  And if we're not and we have

3  other work, too, I'm wondering if the jury can go

4  home early.

5           THE COURT:  Well, here's what I was

6  thinking.  If you take a look at them and if we get

7  quick agreement -- I'm not saying we will -- then it

8  would seem to make sense -- Ms. Wild thinks that I

9  can read these things in 45 minutes to an hour.

10 So -- and if we did that, I get out of your way and

11 y'all got a fighting chance of closing in a day,

12 which I know some of you had wanted that to occur.

13 And I was going to suggest -- and y'all just be

14 thinking about this while we take our break -- if

15 y'all wanted to do it in a day, you got me out of

16 the way, and you wanted to do it in a day maybe

17 y'all could put yourselves on a chess clock, and if

18 you wanted me to enforce the rules, I'll get you all

19 done on Monday.

20           If you leave me till Monday, then I think

21 probably realistically I'm going to take up part of

22 your morning and we won't get them all done on

23 Monday.  And that's fine with me, but I'm not going

24 to, like, read for 45 minutes, an hour, and send

25 them home and bring them back the next day, given

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    that I don't know if we can get it done in a day.

2    So is that kind of the ground rules there?

3                    MS. JACKS:  I'm glad you explained it, and

4    if you think it's an hour, that gives us until 4:30,

5    so we can give it our best shot.

6                    THE COURT:  Yeah, Ms. Wild estimated that

7    45 minutes to an hour, and she's listened to me a

8    lot over the years.  Now, I can't promise you that,

9    but they have gotten shorter.

10                    So why don't I go off the record and let

11   Ms. Bean take her break, and I'll try to get you a

12   copy as soon as possible.

13                    (The Court stood in recess.)

14                    THE COURT:  So why don't I start with you,

15   Ms. Jacks.  May I suggest you do it any way you want

16   to, but maybe just kind of go chronologically so the

17   Government has a chance to stay ahead of you?

18                    MS. JACKS:  That's how I was going to do

19   it.

20                    THE COURT:  All right.

21                    MS. JACKS:  So I think my first comment is

22   on instruction number 7.  I think that in the first

23   paragraph, last line, after "evidence," we had

24   previously suggested that "I have admitted as to any

25   one defendant" be inserted before "as true or

SANTA FE OFFICE                                                                    MAIN OFFICE
119 East Marcy, Suite 110                                                    201 Third NW, Suite 1630
Santa Fe, NM 87501                                                           Albuquerque, NM 87102
(505) 989-4949                                                               (505) 843-9494
FAX (505) 820-6349                                                           FAX (505) 843-9492
                                                                            1-800-669-9492
                                                                            e-mail: info@litsupport.com

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8185

```
 1  accurate."  So that last sentence I think in our
 2  redline version would have read, "This does not
 3  mean, however, that you must accept all of the
 4  evidence that I have admitted as to any one
 5  defendant as true or accurate."
 6              THE COURT:  Okay.  I think y'all agreed to
 7  that earlier, so I'm going to add that unless y'all
 8  think otherwise.
 9              MR. CASTELLANO:  Can we do that again?
10              THE COURT:  Yes.  Let me get it typed in.
11  "This does not mean, however, that you must accept
12  all of the evidence that I have admitted as to any
13  one defendant as true or accurate."  Correct,
14  Ms. Jacks?
15              MS. JACKS:  Yes.
16              THE COURT:  Can you live with that, Mr.
17  Castellano?
18              MR. CASTELLANO:  We're okay with that,
19  Your Honor.
20              MS. JACKS:  Then, Your Honor, we had
21  suggested in our redline version adding I think it
22  was five questions to this witness credibility.  The
23  instruction asks several questions, and I think we
24  suggested five questions.  They were questions like,
25  "Did the witnesses have an opportunity to" --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  I don't know why they're not
 2    in there.  I had written those out.
 3              MS. JACKS:  Somebody doesn't like me.
 4              (A discussion was held off the record.)
 5              MS. JACKS:  Judge, if you need the
 6    language, I can probably print out that paper.
 7              THE COURT:  I'm concerned the change you
 8    just gave me I had made, so now I'm wondering
 9    whether changes were made throughout the day, all
10    these changes that you're raising, I had either sent
11    to Albuquerque or given to Mr. Hammond, and they're
12    not in there, so I'm beginning to wonder if all the
13    changes I've made today have been made.  If they
14    haven't --
15              MR. VILLA:  Your Honor, many of the
16    changes proposed by defendants that were not in the
17    eighth are now in the ninth, so I think a lot of
18    them were made.
19              MS. JACKS:  I would agree with that.  We
20    just found very few that were not.  And we gave it a
21    pretty good once-over.
22              THE COURT:  Well, if you want to give us
23    those five questions, I know I wrote them out to be
24    typed in, but I don't have either your redline
25    copy -- I gave that to Mr. Hammond as well as --
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. JACKS:  Your Honor, I'm happy to do
 2   that.  Why don't we go through the rest of the
 3   changes, and somebody else can talk, and I'll print
 4   those five questions out.
 5              THE COURT:  Okay.  Why don't we do this.
 6   Mr. Mendenhall, find -- was it 1833-1, your redline
 7   version?
 8              MR. VILLA:  1827-1.
 9              THE COURT:  1827-1, the redline version,
10   and it's number --
11              MS. JACKS:  Jury instruction number --
12   well, the numbers change, but it's the witness
13   credibility instruction.  It's currently 7.  It
14   might have been 6 or 8.
15              MR. VILLA:  It was 6.  1827-1, instruction
16   number 6, which is now 7.
17              THE COURT:  Thank you.  What's your next
18   one, Ms. Jacks?
19              MS. JACKS:  After the five questions, then
20   on the next page, the last paragraph of the
21   instruction, the first sentence, "verdicts" should
22   be plural.  So the --
23              THE COURT:  All these changes, I'm
24   beginning to be afraid that we're going to have to
25   go through, because I made all these changes.  So
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the first three you've given me I marked up a set

2   and sent it either to Albuquerque or here.

3           MR. VILLA:  I think it's just this one,

4   Your Honor.

5           (A discussion was held off the record.)

6           MS. JACKS:  Your Honor.

7           THE COURT:  I'm not seeing in the next

8   instruction the word "verdict."  Where is it?

9           MS. JACKS:  It's the second page of

10  instruction number 7, the last paragraph.  "In

11  reaching a conclusion on a particular point or

12  ultimately in reaching a verdict in this case," and

13  I think what we proposed was "or ultimately in

14  reaching verdicts in this case."

15          THE COURT:  I assume there is no problem

16  with that, Mr. Castellano?

17          MR. CASTELLANO:  "In reaching verdicts in

18  this case"?

19          THE COURT:  Correct.

20          MR. CASTELLANO:  No objection.

21          THE COURT:  All right.

22          MR. CASTELLANO:  And Your Honor, I think

23  there may have been miscommunication this morning

24  when I said there are changes that I was indifferent

25  about.  There were changes from their final

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    comments, not from their redline version.  So we'll

2    have to double-check that.

3                THE COURT:  Yeah, I was asking

4    specifically about the redline, because I had not

5    received any comments from you on the redline.  So I

6    did make all those changes, because I took your

7    comments to be that you didn't care.

8                MR. CASTELLANO:  So I misunderstood the

9    Court's question.  It was whether I had any issue

10   with their comments about the instructions.  So I'll

11   have to go back and check those.

12               THE COURT:  All right.  What's your next

13   one, Ms. Jacks?

14               MS. JACKS:  It's the accomplice

15   instruction number 12.  This is a simple one.  Under

16   "Informant," the first paragraph, at the very last

17   line of the first paragraph under "Informant," "and"

18   should be "any."  It's just a typo.

19               THE COURT:  Instead of "the testimony of

20   an accomplice, it should be "any accomplice"?

21               MS. JACKS:  Oh, no, I'm sorry, Your Honor.

22   I'm in the "Informant" section.  At the end of that

23   first paragraph under the "Informant" section, it

24   says "or by prejudice against and defendant," and I

25   think it's meant to be "any defendant."

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Okay.  We got it.  Any
 2   objection to that, Mr. Castellano?
 3              MR. CASTELLANO:  No, Your Honor.
 4              MS. JACKS:  Number 13, this is really just
 5   a typo.  In the second sentence, "The Government has
 6   entered into plea agreements with these alleged
 7   accomplices."  I think there should be a colon
 8   rather than a comma before the list.
 9              THE COURT:  Is that all right with you,
10   Mr. Castellano?
11              MR. CASTELLANO:  I'm checking that one
12   right now, Your Honor.  Repeat that one more time.
13              THE COURT:  On the jury instruction what's
14   now 13, we're listing out accomplices.  Ms. Jacks is
15   suggesting instead of a comma, we just put a colon
16   there.
17              MR. CASTELLANO:  We agree.
18              THE COURT:  Ms. Jacks.
19              MS. JACKS:  Jury instruction number 16,
20   second paragraph, three lines up from the bottom,
21   where it's talking about Government officials agents
22   and informants.  We suggest "Government officials
23   comma agents comma or informants," so that
24   "Government" modifies officials, agents, and
25   informants.
```


SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1            THE COURT:  So you want a comma after

2    "officials"?

3            MS. JACKS:  And take out the "or."

4            THE COURT:  Okay.

5            MS. JACKS:  Then a comma after "agents."

6    And that's it on that instruction.

7            THE COURT:  Is that acceptable, Mr.

8    Castellano?

9            MR. CASTELLANO:  We're looking at that

10   right now, Your Honor.

11           THE COURT:  All right.

12           MR. CASTELLANO:  Yes, we're fine with that

13   change.

14           THE COURT:  All right, Ms. Jacks.

15           MS. JACKS:  Thank you.  There is an

16   instruction at page 31 that's not numbered.  It's

17   this instruction about summary charts.  We just

18   think that should come out.  There is no number on

19   it.

20           THE REPORTER:  It's what number?  I can't

21   hear you.

22           MS. JACKS:  It's number 18.  The title of

23   the instruction is on the previous page, page 30.

24           THE COURT:  So you want the instruction

25   out?

SANTA FE OFFICE                                                        MAIN OFFICE
119 East Marcy, Suite 110                                         201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                            (505) 843-9494
FAX (505) 820-6349                                               FAX (505) 843-9492
                                                                           1-800-669-9492
                                                                  e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8192

```
1           MS. JACKS:  Well, I think that that
2    summary -- there was only one summary chart, right,
3    and I think it wasn't admitted.
4           THE COURT:  Can you live with taking this
5    instruction out, Mr. Castellano?
6           MR. CASTELLANO:  Was Rudy Perez' -- were
7    those medical charts or calendars admitted?
8           MR. VILLA:  The calendar was admitted.  I
9    don't know if it's a chart or a summary, but I don't
10   necessarily have an objection to leaving it in for
11   that purpose.
12          MS. JACKS:  I don't either.
13          THE COURT:  Just leave it in, Mr.
14   Castellano?
15          MR. CASTELLANO:  Yes, sir.
16          THE COURT:  All right.  We'll just leave
17   it in, then.
18          MR. VILLA:  We just have to adjust the
19   number off the previous page.
20          THE COURT:  Yeah.  We've just done that.
21   I apologize.
22          Ms. Jacks.
23          MS. JACKS:  The next one is number 29.  Is
24   that right?  Yeah.  So I think the date in item
25   number 3, which I think is referencing the day of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the Molina homicide, should be March 7, 2014.  There

2   is no actual date in there.  It just reads "March,

3   2014."

4            MR. CASTELLANO:  I believe the conspiracy

5   was in March of 2014, and I think the murder itself

6   was March 7, 2014.  So I think there are two things

7   referenced in the indictment.

8            MS. JACKS:  What does the indictment say

9   about dates?  Does it say March 6th and 7th, or does

10  it say March 2014?

11           MR. CASTELLANO:  I think it's March 2014

12  for the conspiracy.  We're looking up the indictment

13  now.

14           MS. JACKS:  And I believe that Mr. Lowry

15  and Ms. Duncan had an issue with the March 9, 2017,

16  date.

17           MR. LOWRY:  Yes, Your Honor.

18           THE COURT:  Hold on a second.  Let me get

19  in the objection.  Which count are you on?  Number

20  7?

21           MS. JACKS:  I'm on jury instruction 29,

22  which is the conspiracy instruction.  And so under

23  number 3, it's the date of Count 6 and then the date

24  of Counts 9 and 10.

25           THE COURT:  Well, okay.  Which count,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   though, are you looking at?
 2            MS. JACKS:  Six.
 3            THE COURT:  All right.  Now, on the
 4   indictment I think what we have over on page -- I'm
 5   sorry, what we have on the indictment page is March
 6   7.
 7            MS. JACKS:  Right.  That was my
 8   recollection.  That was what I thought the change
 9   should be.
10            THE COURT:  Is that what you want it to
11   be?
12            MR. CASTELLANO:  Count 6 alleges March of
13   2014.  Count 7 alleges the specific date of March 7,
14   2014.
15            MS. JACKS:  In the indictment?
16            MR. CASTELLANO:  Yes.
17            MS. JACKS:  All right.  Then I guess it
18   should stay how it is, then, because this is the
19   conspiracy.  Fine.  And I think that Team Baca has
20   an issue with the March 9, 2017, date.
21            THE COURT:  All right.  Which instruction
22   are you looking at, Mr. Lowry?
23            MR. LOWRY:  The same one on page 52, jury
24   instruction 29 on numeral 3.  This happened in New
25   Mexico.  We suggest the March 9, 2017, be taken out
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  and replaced with the date of the filing of the

2  indictment, which would be December 1st, 2015.

3          THE COURT:  Well, the problem is that the

4  actual words in that -- this is my memory, the

5  actual words in the second amended indictment say,

6  "Up until the second amended indictment."  And that

7  date I think is the date of the second amended

8  indictment; right?

9          MS. ARMIJO:  Yes, Your Honor, it is.

10          THE COURT:  I think the April date is the

11  original indictment.  What would you like it to be?

12          MR. LOWRY:  Well, I don't think the

13  conspiracy existed past the first indictment.

14          THE COURT:  What's y'all's thoughts on

15  that?  Because it may have just been an oversight in

16  the draft of the indictment.  Do you want to put

17  something closer to the time that the takedown was?

18          MR. CASTELLANO:  Well, it wasn't an

19  oversight in the indictment.  I mean, that's

20  typically a conspiracy continuing through the date

21  of the indictment, and that was March 9 of 2017.  So

22  the question is just whether there's another date

23  that can be plugged in there.  But I wouldn't want

24  to limit ourselves.

25          MR. LOWRY:  Your Honor, I don't think

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8196

```
 1   that --
 2             THE COURT:  Hold on just a second.  The
 3   original indictment as to Count 6 does not have any
 4   continuing-to point.  I don't have -- that's the
 5   original indictment?  Oh, that's the second
 6   superseding.  So the second superseding doesn't have
 7   any continuing-to date.  If we just put that this
 8   happened on or about March 2014 -- well, I think the
 9   language you're looking at, Mr. Lowry, relates to
10   counts 9 and 10.
11             MR. LOWRY:  That's correct, Your Honor.
12   But there hasn't been any evidence at all presented
13   of a conspiracy past December 1st.
14             THE COURT:  Well, given that's what the
15   indictment charges --
16             MR. LOWRY:  I'm fine.
17             THE COURT:  All right.  So we'll just
18   leave the dates, then, on this instruction the way
19   it is unless somebody wants to come back to it.
20             Ms. Jacks?
21             MS. JACKS:  Well, we also suggested some
22   language for the very end of instruction number 29.
23   And the language that I recall -- it was from the
24   original or one of the first Aryan Brotherhood
25   racketeering prosecutions that was tried in
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1 California, but the suggestion was that the Court

2 include a paragraph saying, "Evidence of a

3 defendant's membership in a gang" --

4          THE COURT:  Why don't you say it real

5 slowly and we'll type in it.  I don't have any

6 problem with this if the Government doesn't.  Say it

7 slowly.

8          MS. JACKS:  "Evidence of a defendant's

9 membership in a gang, by itself, is insufficient to

10 establish that person's guilt of a crime as a

11 co-conspirator."

12          THE COURT:  Any problem with that, Mr.

13 Castellano?

14          MR. CASTELLANO:  May we have a moment,

15 Your Honor?

16          We agree to that change, Your Honor.

17          THE COURT:  All right, Ms. Jacks.

18          MS. JACKS:  Thank you.  So the next one we

19 have comments on was jury instruction number 32, and

20 this, again, is the on or about and the dates.  So I

21 mean, I don't think this is that critical.  So I

22 could live with it the way it is.

23          MS. DUNCAN:  Your Honor, we actually for

24 Mr. Baca have a substitute.  It includes between

25 2003 and July 13, 2005, for Count 8, and Count 8 is

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   instructing all the other instructions.
 2            THE COURT:  I don't see that info.  Is it
 3   down -- the first time, not the second time?
 4            MS. DUNCAN:  Yes.
 5            THE COURT:  I know your position, that you
 6   still want Count 8.  But given I've taken out Count
 7   8, can you live with that change, Mr. Castellano?
 8            MR. CASTELLANO:  Yes, Your Honor.  We will
 9   obviously object to the removal of Count 8 from the
10   indictment.  We actually have an additional call
11   that covers that conduct.
12            THE COURT:  All right.  So you preserve
13   your position on that, but I'll take that out, that
14   second one.  I'm sorry I missed it.
15            Ms. Jacks.
16            MS. JACKS:  Number 33, which is the aiding
17   and abetting instruction.  In our redline version
18   that we submitted on Sunday, we again suggested the
19   gang language.  So it would be that "Evidence of a
20   defendant's membership in a gang, by itself, is
21   insufficient to establish that person's guilt of a
22   crime as an aider and abettor."
23            THE COURT:  Just the same language?
24            MS. JACKS:  Right.
25            THE COURT:  Any objection to including
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8199

1    that?

2            MR. CASTELLANO:  No objection.

3            THE COURT:  I'm looking at the beginning

4    here.  I made changes to the beginning of this.  But

5    that's not the language that I had written out at

6    the beginning.  I think it was going to be limited

7    to Count 7?

8            MS. JACKS:  Right.  I think it should be.

9    That's only one where aiding and abetting is an

10   issue.

11           THE COURT:  I think y'all suggested that,

12   too.

13           MR. CASTELLANO:  We did, Your Honor.  It

14   only applies to Count 7.

15           THE COURT:  I'll just put Count 7 of the

16   indictment.  Okay.  And you're going to add that

17   there.  Okay.  I don't know where those changes

18   went.  How does your language -- read your language

19   again.

20           MS. JACKS:  The suggested addition to

21   aiding and abetting?  "Evidence of a defendant's

22   membership in a gang, by itself, is insufficient to

23   establish that person's guilt of a crime as an aider

24   and abettor."

25           THE COURT:  All right.  Ms. Jacks.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MS. JACKS:  I have instruction 35 turned
 2   sideways.  That's a duress -- right.  That's the
 3   duress instruction.  I think that was just for --
 4              MR. VILLA:  Yes, Your Honor, with respect
 5   to -- do you have something on 34?
 6              MS. DUNCAN:  We had a small correction on
 7   number 34.  In the very first sentence there is a
 8   comma after Mr. Baca's name and I think it should be
 9   removed.
10              THE COURT:  Any objection?
11              MR. CASTELLANO:  I didn't hear that, Your
12   Honor.
13              THE COURT:  There's just a comma after
14   "Mr. Baca" on 34, on the first line.  Just take it
15   out?
16              MR. CASTELLANO:  Yes, that's fine.
17              THE COURT:  All right.  Now, Mr. Villa.
18              MR. VILLA:  35, is the Court overruling
19   the United States' objection to this instruction?
20              THE COURT:  Yes.
21              MR. VILLA:  So Your Honor, based on that
22   ruling, Mr. Perez withdraws this instruction.
23              THE COURT:  Okay.  So 35 will come out?
24   All of 35 comes out?
25              MR. VILLA:  Yes, Your Honor.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. CASTELLANO:  I didn't understand that,
 2   Your Honor.
 3              THE COURT:  Well, I guess he first asked,
 4   was I overruling your objection to it.  And I said
 5   yes, I was overruling it.  Then he withdraw the
 6   instruction.  I assume there is no objection to
 7   that?
 8              MR. CASTELLANO:  He's withdrawing duress?
 9              THE COURT:  Yes.
10              MR. VILLA:  And withdrawing 36 too.  36
11   goes with 35, I think.
12              THE COURT:  Is that the --
13              MR. VILLA:  Preponderance of evidence.
14              THE COURT:  Well, I don't think the burden
15   shifts on yours.  It only shifts on -- I could be
16   wrong.  Did you have the burden on duress?
17              MR. VILLA:  Well, according to the pattern
18   instructions, there was a burden of establishing the
19   three elements by a preponderance of evidence, and
20   so I thought that's what -- why 36 was there.  I
21   don't know if it applies to inducement.
22              MS. DUNCAN:  It does not, Your Honor.
23              MR. VILLA:  So I think it can be
24   withdrawn, as well.
25              THE COURT:  Well, I think it may apply to
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

```
 1   the one that Mr. Baca is raising; right?
 2            MS. JACKS:  I think all he has to do is
 3   raise a reasonable doubt.
 4            MS. DUNCAN:  Yes, Your Honor.
 5            THE COURT:  Did the preponderance attach
 6   to duress?
 7            MS. JACKS:  Yes.
 8            THE COURT:  Okay.  All right.  So I'll
 9   take that one out and I'm also going to take out 36,
10   which is the preponderance.  Do you agree with that,
11   Mr. Castellano?
12            MR. CASTELLANO:  Yes, Your Honor.
13            THE COURT:  So that takes care of you on
14   that, Mr. Villa?
15            MR. VILLA:  Yes, Your Honor.
16            THE COURT:  Ms. Jacks?
17            MS. JACKS:  The next one is 39, last
18   paragraph.  We think "verdict" should be plural,
19   "verdicts," and "whether it is" should be changed to
20   "whether they are" in that same line.
21            THE COURT:  Any objection to those, Mr.
22   Castellano?
23            MR. CASTELLANO:  Can I get that change one
24   more time, please?
25            THE COURT:  You want to give it again,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8203

```
 1   Ms. Jacks?

 2           MS. JACKS:  Second paragraph of jury

 3   instruction number 39, "verdict" singular should be

 4   "verdicts" plural, and "it is" which is referencing

 5   the verdicts should be "they are."  So that sentence

 6   should read, "Your verdicts as to Mr. Sanchez, Mr.

 7   Baca, Mr. Herrera, and Mr. Perez, whether they are

 8   guilty or not guilty, should not affect your verdict

 9   as to any other defendant on any other charges."

10           THE COURT:  And this was one of the ones

11   that you wanted the names in there; correct?

12           MR. VILLA:  Yes, I believe that is

13   correct.  And I think everyone agrees with me.

14           THE COURT:  Are those okay with you, Mr.

15   Castellano?

16           MR. CASTELLANO:  Yes, Your Honor.

17           THE COURT:  Ms. Jacks.

18           MS. JACKS:  Instruction 40, third

19   paragraph, first line.  Therein "verdict," again, is

20   singular and we think it should be plural.  You know

21   what?  I think that's wrong, though, because it

22   says, "Your verdict must be unanimous on each count

23   of the indictment."  But because there's four

24   defendants, maybe it should be plural.  I think it

25   should be plural.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. MAYNARD:  Each verdict.

 2              MR. VILLA:  Each verdict must be unanimous

 3   on each count.

 4              MS. JACKS:  What I'm saying is:  There are

 5   counts that charge multiple defendants requiring

 6   multiple verdicts.

 7              MR. VILLA:  Okay.

 8              MS. JACKS:  So I think it should be "Your

 9   verdicts must be unanimous on each" --

10              MR. VILLA:  -- "count as to each

11   defendant."

12              MS. JACKS:  Maybe what we should do is

13   leave it singular and say, "Your verdict must be

14   unanimous on each count of the indictment as to each

15   defendant charged."  Does that make sense?

16              THE COURT:  Can you live with that, Mr.

17   Castellano?

18              MR. CASTELLANO:  Yes, Your Honor.

19              THE COURT:  Read me the first sentence

20   there, just so I make sure I got your changes on the

21   first sentence, because right now it says, "To reach

22   a verdict."

23              MS. JACKS:  Right.  It should say, "To

24   reach" -- well, I didn't make any changes to the

25   first sentence.  I think that is fine.  "To reach a
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8205

1    verdict, whether it's guilty or not guilty, you all

2    have to agree."

3              THE COURT:  Everybody agree on those two

4    sentences now?

5              MS. JACKS:  Did you get the changes?

6              MR. VILLA:  Read the second sentence.

7              THE COURT:  It says, "Your verdict must be

8    unanimous on each count of the indictment as to each

9    defendant charged."

10             MS. JACKS:  That's great.

11             THE COURT:  Do you want to say, "charged

12   in each count"?  I said, "Your verdict must be

13   unanimous on each count of the indictment as to each

14   defendant charged."

15             MR. VILLA:  Okay.  The last line of that

16   paragraph, should it be, "You will never have to

17   explain your verdicts to anyone"?

18             MS. JACKS:  That's right.

19             THE COURT:  Any objection, Mr. Castellano?

20             MR. CASTELLANO:  That's fine, Your Honor.

21   I just think "the verdict" refers to their decision,

22   but "verdicts" is fine.

23             THE COURT:  We'll make that change.

24   Ms. Jacks.

25             MS. JACKS:  I think that does it for me,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   other than the instructions that were offered by the

 2   defense.

 3              THE COURT:  Okay.  What do you think?

 4              MS. JACKS:  Well, I offered an

 5   instruction.

 6              THE COURT:  Oh, yeah.  Those two that you

 7   offered, and I think Ms. Bhalla offered, I carefully

 8   considered those, and I'm not going to include

 9   those.  Those get very close to being directed

10   verdicts, particularly Mr. Sanchez', and I don't

11   have enough information now to make a materiality.

12   I don't have enough information to make those.

13              MR. VILLA:  Your Honor, just for the

14   record, along the same lines, we had moved to strike

15   Billy Cordova at the beginning of the trial for the

16   late disclosure, and Ms. Fox-Young moved to strike

17   Mario Rodriguez' testimony based on late disclosure.

18   We just ask for a ruling from the Court.

19              THE COURT:  All right.  I will deny both

20   of those motions.  We need the materials that came

21   in.  I don't know if those were included in the

22   written materials, but I have considered those and

23   will deny it.

24              Mr. Lowry, Ms. Duncan, did you have any

25   additional?
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              MR. LOWRY:  Just one grammatical on page
 2    24 on jury instruction number 14, Your Honor.
 3              THE COURT:  The numbering may have
 4    changed, so tell me the topic.
 5              MR. LOWRY:  This is the testimony of a
 6    drug abuser.
 7              THE COURT:  Got it.
 8              MR. LOWRY:  And because it's in the
 9    conjunctive, "and," it should be "may be considered
10    as abusers of drugs," plural.
11              THE COURT:  So take out the "and" and put
12    "may be considered to be abusers of drugs"?
13              MR. LOWRY:  Where it says, "Julian Romero
14    may be considered abusers of drugs."
15              MS. JACKS:  I think he's talking about the
16    second paragraph, the very last line.
17              MR. LOWRY:  Right.
18              MS. JACKS:  Where it says, "An abuser of
19    drugs," and I think it should just be, "considered
20    to be abusers."
21              MR. LOWRY:  Correct.
22              THE COURT:  So "Romero may be considered
23    abusers of drugs."
24              Can you live with that, Mr. Castellano?
25              MR. CASTELLANO:  Yes, Your Honor.  We have
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  two other suggested changes to that instruction.

2  We'd like the addition of Bobby Delgado.  He was

3  Carlos Herrera's witness.  He said that he had been

4  a heroin user before.

5          THE COURT:  Any objection to that?

6          MS. BHALLA:  Yes, Your Honor.  He

7  testified he's been sober for six years and only

8  takes his medication as prescribed.  And there was

9  no cross-examination or impeachment of that

10 statement.

11         MR. CASTELLANO:  We've had the same as to

12 Lupe Urquizo and others.  He said he had a bad

13 experience with meth and hasn't used since then.  So

14 I think if we do that, we have to do it

15 even-handedly.

16         MS. BHALLA:  He was impeached about his

17 statements regarding drug use.  Mr. Delgado was not.

18         THE COURT:  Well, I guess the point is,

19 though, there was a lot of -- if we're going to go

20 back and clean this out, it will take a while for me

21 to review all the statements.  So I guess if you

22 insist on him not going in, then the Government is

23 going to insist that we go back in and look at each

24 one of these and see how they're impeached, and I'll

25 have to make rulings individually on those.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8209

```
 1              MR. CASTELLANO:  So we would recommend
 2   removing Frederico Muñoz and adding Bobby Delgado.
 3              THE COURT:  And why Frederico Muñoz coming
 4   out?
 5              MR. CASTELLANO:  I don't recall Frederico
 6   Muñoz ever talking about his drug use.  He talked
 7   about drug sales, but not drug use.
 8              THE COURT:  Any objection to taking
 9   Frederico Muñoz out?
10              MS. JACKS:  Your Honor, I thought his
11   testimony was that he did heroin in prison.  So I
12   would object to taking him out.
13              THE COURT:  Well --
14              MS. JACKS:  This is the first I've ever
15   heard that the Government is moving for that or
16   asking for that.
17              THE COURT:  Well, I'm not sure what to do
18   here on this.  We're going to have to -- let me ask
19   this, Mr. Castellano.  Is your memory different as
20   to the testimony on Mr. Muñoz?
21              MR. CASTELLANO:  It is.  I could be
22   refreshed, but I remember it differently.
23              THE COURT:  Okay.  Well, why don't we get
24   somebody start hitting some transcripts and see if
25   we can find that, see if there was testimony on
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8210

1  that.  I guess on Mr. Delgado, that's a very

2  structural problem because if we're going to go in

3  and say that people had testified that they weren't

4  using drugs anymore should come out, then I think

5  that may take some time and everybody will have to

6  present that evidence one at a time.

7         MS. BHALLA:  Your Honor, I think part of

8  the issue, as well, is that the Government witnesses

9  who testified in this case are in custody.  And

10  we've had evidence that while they were in custody

11  and while they were working for the Government, they

12  had access to drugs in the cooperator pod, they were

13  buying and selling drugs, and it's all self-admitted

14  testimony that this was going on while they were

15  Government informants.

16         The difference between that testimony and

17  Bobby Delgado's testimony is that Bobby Delgado has

18  been out of custody of his own free will, and there

19  were no --

20         THE COURT:  I guess as far as witnesses,

21  though, it just doesn't matter whether they're in

22  custody or not in custody.  I'm going to have to

23  make a call as to when they're a drug abuser or not.

24         MS. BHALLA:  I understand that, Your

25  Honor, and I understand the situation that the Court

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    is in.  But there was no testimony that he was

2    currently abusing drugs nor any questions regarding

3    impeachment of that.  I know that it's late in the

4    hour and that the Court has to make a decision on

5    it, but we would object to including him in that

6    instruction for the record, Your Honor.  Thank you.

7             THE COURT:  Well, it seems to me if you

8    were a drug abuser at one point, you're a drug

9    abuser; it could affect your memory, cognitive

10   skills, and those sort of things.  So I'm not going

11   to take it out because he's not an abuser now.  If

12   you want to explain that, that he's not an abuser

13   now, you can.  But otherwise, I'll leave in it.

14            MR. VILLA:  Your Honor, we have the

15   real-time I believe on Mr. Frederico Muñoz.  I'll

16   let Ms. Fox-Young...

17            MS. FOX-YOUNG:  Your Honor, I believe the

18   testimony was that while he was an active member, he

19   said he flirted with heroin and weed.  And this is

20   day 13 of the trial.

21            THE COURT:  So I'm inclined to put Bobby

22   Delgado in, and leave in Mr. Muñoz.  Anybody want to

23   make any further pitches on those?

24            MR. BECK:  I think that's right.  We

25   didn't recall that testimony.  And with that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   testimony, I think that's right; leave him in.
 2           THE COURT:  Okay.  So I'm going to put
 3   Bobby Delgado in and we'll put Muñoz -- does Muñoz
 4   have the tilde above the N?
 5           MS. ARMIJO:  I believe so.
 6           THE COURT:  I'll put that in.  I don't
 7   think it has it in right now.
 8           MR. VILLA:  But then you have to say
 9   "Muñoz."
10           THE COURT:  Anything further, Mr. Lowry,
11   Ms. Duncan?
12           MR. LOWRY:  No, Your Honor.
13           THE COURT:  How about you, Ms. Bhalla, Mr.
14   Maynard?
15           MS. BHALLA:  We understand the Court's
16   ruling.  We'd just like to preserve our objection
17   for the record.
18           THE COURT:  Objection preserved.
19           Mr. Villa or Ms. Fox-Young?
20           MR. VILLA:  No, Your Honor.  Given that
21   it's 5:06, I vote you read the instructions to the
22   jury.
23           THE COURT:  How about from the Government?
24   What's y'all's changes?  I'm going to need to put
25   those five questions in that I promised Ms. Jacks,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  so it will take a minute to type those in.

2          What do you have, Mr. Castellano?

3          MR. CASTELLANO:  Jury instruction number

4  3, Your Honor, the reasonable doubt.  We request

5  that the stock Tenth Circuit pattern instruction --

6  I think their changes had -- and this is probably my

7  fault for misunderstanding the Court's question this

8  morning.  But this has things such as "or a lack of

9  evidence," which is in the second paragraph, the

10 sixth line down.

11         THE COURT:  I know where they are, because

12 I took your comments to heart and made changes here

13 based upon my questions.  Tell me what you can't

14 live with, because I'm not inclined at this time to

15 go back to the Tenth.  I was hanging with you until

16 you gave it up this morning, and I guess then I

17 started making the changes.

18         MR. CASTELLANO:  That wasn't the knowing,

19 intelligent, and voluntary waiver by any means.

20         THE COURT:  Are you going to sign a

21 affidavit of incompetence?

22         MR. CASTELLANO:  I say that as a nondrug

23 user.

24         THE COURT:  Tell me what you're most

25 troubled by.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8214

```
 1          MR. CASTELLANO:  And then the biggest one
 2   is the second-to-last line of that paragraph.
 3   "There is a reasonable doubt about the truth of any
 4   charge."  There is no -- the jury is not going to
 5   find the truth or nontruth of any of the charges.
 6   They have to find them guilty or not guilty of the
 7   charge.  But the truth of the charges is not any
 8   legal term that we use or the jury decides.
 9          THE COURT:  Well, I think I'm just going
10   to leave it.  I made these changes consciously
11   earlier.  All right.  What else do you have?
12          MR. CASTELLANO:  On jury instruction
13   number 7, I believe on page 13, the first full
14   paragraph, last line says, "Or call any witnesses."
15   Each of the defendants called a witness.  So I just
16   recommended removing that language.
17          THE COURT:  Well, here's my problem.  This
18   is a stock Tenth Circuit jury instruction.  This is
19   the way it reads.  So even in cases where defendants
20   call witnesses, this is the way I read it and the
21   way the Tenth Circuit says to give it.  So this is
22   Tenth Circuit stock jury instructions.  Maybe the
23   defendants don't care.
24          MS. JACKS:  We care.  We want it in.
25          THE COURT:  Let's just leave it the way it
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8215

1   is.  It's the way the Tenth has it and that's the

2   way I usually give it.

3           MR. CASTELLANO:  Jury instruction number

4   9, I had recommended, "The defendants have been

5   convicted of a felony," but the jury didn't hear

6   evidence that they were convicted of a felony.  They

7   can obviously infer that from the fact they were in

8   prison, but there is no evidence that they were

9   convicted of a felony.  So I would just recommend

10  the statement, "The defendants have been convicted

11  of a felony," and go from there.

12          THE COURT:  I don't think they wanted

13  "defendants."  I think this is the way they want it.

14  They want "a defendant," and I think they're most

15  worried, Mr. Baca, about the murder conviction

16  coming in that was the reason for him to be in the

17  first time.  So I'd be inclined to leave it the way

18  it is rather than change it, because the defendants

19  have had some sensitivity to this instruction for

20  quite a while.  And we kind of hammered out this

21  language.  So overruled, unless the defendants want

22  to change it for some reason.

23          MS. JACKS:  We don't.

24          THE COURT:  Are you comfortable with it,

25  Mr. Lowry?

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8216

```
 1           MR. LOWRY:  Yes, Your Honor.
 2           MR. CASTELLANO:  Instruction number 17,
 3  we'd ask for the stock instruction.  That's one that
 4  includes that the recordings were legally recorded,
 5  which the Court actually gave to the jury already in
 6  trial at least twice.
 7           THE COURT:  I think the only thing I
 8  changed was added this language which I thought the
 9  Government was agreeing to on the bottom of it.  The
10  rest of it is the same with the exception of since
11  you did not actually hand them transcripts, it says
12  "shown" rather than "given."  So I changed "shown"
13  twice in the last paragraph.  But the rest of it is
14  stock.  What are you troubled by?
15           MR. CASTELLANO:  The instruction yesterday
16  started out, the first two sentences, reading,
17  "During this trial you have heard sound recordings
18  and certain conversations.  These conversations were
19  legally recorded."
20           THE COURT:  Oh, yeah.  I did take that
21  out.  Well, again, I thought y'all were agreeing to
22  that this morning.
23           MR. CASTELLANO:  We weren't, Your Honor.
24           THE COURT:  All right.  Well, let's just
25  leave it the way it is.  I've always felt
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    uncomfortable with that statement anyway.  I'm

2    telling them they can consider the recordings.  That

3    seems enough thumb on the scale.

4              MR. CASTELLANO:  That's as far as we got.

5    I can tell the Court -- let me go directly to

6    instruction number 34.  That's the duress

7    instruction.

8              THE COURT:  Yes.

9              MR. CASTELLANO:  There is no evidence.

10             THE COURT:  It's out now.  It's withdrawn.

11             MR. CASTELLANO:  34?

12             THE COURT:  Yes.

13             MR. CASTELLANO:  And 35?

14             THE COURT:  Well, 35 was preponderance.  I

15   think --

16             MR. VILLA:  35 is duress in the Ninth

17   edition, and 36 is preponderance.  And with Mr.

18   Perez' withdrawals, those are out.

19             MR. CASTELLANO:  So page 61 on the draft

20   is the unfair inducement instruction.

21             THE COURT:  Yeah.  That's still in.

22             MR. CASTELLANO:  So we object to that

23   instruction.  There is no indication of unfair

24   inducement.  And as a matter of fact, there was

25   evidence going back to at least, I think, 2013 of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  predisposition.  Roy Martinez and Robert Martinez

2  testified that they agreed with Mr. Baca back then,

3  and then eventually sent letters out.  So going back

4  a number of years, there was already predisposition

5  to commit the crime.  So that alone would mean that

6  this instruction is not supported by the evidence.

7          THE COURT:  Well, I considered your

8  request and of course, I had my antennas up on that

9  testimony.  I think there is evidence, so I'll leave

10 it in.  And by including it, I was overruling your

11 objection.  But so noted.

12         MR. CASTELLANO:  Your Honor, for the

13 record -- and I don't want to argue with the

14 Court -- but what was the evidence regarding

15 unfairly causing the commission of a crime?  I

16 didn't see any evidence of that.  The second

17 paragraph also requires Mr. Baca not to be ready and

18 willing to commit a crime, and that does deal with

19 predisposition.  So if he was predisposed to commit

20 the crime, we can't say he was not ready and willing

21 to commit the crime.

22         THE COURT:  Well, that's what I think the

23 evidence is -- there was evidence that he

24 continually was talking about in his discussions,

25 his early discussions, about Santistevan, not

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8219

 1   Marcantel.

 2            All right.  I'm going to overrule the

 3   objection and leave the instruction.  It does say --

 4   I am inclined to sustain it as to Santistevan and

 5   take it out of that second sentence, because it

 6   seems to me that I think your focus has always been

 7   on Marcantel.  So I would take it out of "to commit

 8   the murder of Mr. Santistevan," just leave it as to

 9   Marcantel.

10            MS. DUNCAN:  Your Honor, I think that's

11   fair.

12            THE COURT:  Okay.  So we'll take out --

13   okay.  So it will read, "To commit the crime of

14   conspiracy."  Let me get this and read it to you.

15            MR. CASTELLANO:  With that change, you

16   would have to remove "as charged in Count 9."  So it

17   would read "as charged in Count 10."

18            THE COURT:  Okay.  I think that was

19   suggested.  All right.  So we'll make that change.

20            All right.  Mr. Castellano.

21            MR. CASTELLANO:  There were just a few we

22   were unable to cover with the elements instructions.

23            THE COURT:  Would you look at those?  Let

24   me type up these five questions, then, and give you

25   a little more time to take a look at those.  Let me

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  get these five questions in.

2          MS. BHALLA:  Your Honor, while the

3  Government is reviewing that, may I ask for some

4  clarification on the record, if that's all right?

5          THE COURT:  Yeah.  Let me get organized

6  here to get these five questions in that Ms. Jacks

7  wants.

8          All right.  Go ahead, Ms. Bhalla.

9          MS. BHALLA:  Thank you, Your Honor.  In

10 regards to defendant Herrera's motion to dismiss or

11 motion for mistrial based on what we allege to be

12 Brady and Giglio violations, is it the Court's

13 ruling that the Court is not going to make a ruling

14 on that or --

15         THE COURT:  Let me put it this way.  I'm

16 going to deny the motion at this time.  The way I

17 would prefer to word it is, I'm not going to grant

18 the motion at this time.  If you need a ruling of

19 denial I'll give you the motion of denial.  If you

20 would prefer to leave it as is, I'm not going to

21 grant the motion at this time, then if you want to

22 pursue it after the trial when we have a little more

23 chance to scour the record -- and I have not been

24 able to plow through the Government's response.

25         MS. BHALLA:  That sounds fair, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  Would that work for you?
 2              MS. BHALLA:  Yes, Your Honor.
 3              THE COURT:  I'll just make an oral ruling
 4   that I'm not granting at this time.  And then if you
 5   want to renew it or want me to pick it up after
 6   trial -- put it that way -- contact me and we'll
 7   either set it for a hearing or I'll issue an opinion
 8   and order.
 9              MS. BHALLA:  Okay.  I appreciate that,
10   Your Honor.  Thank you.  I wanted clarification on
11   that issue.
12              And just following up with that, the Court
13   had requested us to provide a curative instruction
14   in lieu of a ruling on that motion, and we did so.
15   And I understand that the Court doesn't necessarily
16   approve our instruction as requested.  But I would
17   ask the Court, given the nature of the situation, to
18   consider an instruction the Court would find
19   fitting, and would request that, Your Honor.
20              THE COURT:  I'm not going to do that,
21   because I'm just not prepared to say on materiality
22   and other things of that nature at this point.  So
23   I'll just have to go to the jury without any sort of
24   instruction because I'm not convinced that it needs
25   a cure right now.  So that may be the subject of
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8222

```
 1  post trial issues and disputes, but at the present

 2  time I'm not inclined to -- and won't give anything

 3  curative, because I'm not convinced yet, without

 4  further study, whether there is something that needs

 5  be cured.

 6          MS. BHALLA:  I understand, Your Honor.

 7  Thank you.  We just would like to preserve that

 8  request and objection to its being excluded for the

 9  record.  Thank you.

10          THE COURT:  So preserved.

11          MR. VILLA:  Your Honor, I was very

12  optimistic, but given the hour, should we let the

13  jury go?

14          THE COURT:  It's up to y'all.  I don't

15  know how much more we have to go, but let me ask you

16  this.  Ms. Jacks, on your questions, you've got your

17  five questions?  It says, "Did the witness have any

18  relationship with the Government or a defendant?"

19  That's what you want?

20          MS. JACKS:  Yes.

21          THE COURT:  Do you have anything else, Mr.

22  Castellano?

23          MR. CASTELLANO:  I have two quick ones,

24  Your Honor.  On jury instruction 25 on page 44, we

25  need to remove Count 8 from that list.  It's in the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  second paragraph.

2          THE COURT:  All right.  I assume there's

3  no disagreement with that?

4          MS. JACKS:  No.

5          MR. CASTELLANO:  On jury instruction

6  number 28, page 51, we just need to substitute the

7  word "degree" for "decree" in the first line.

8          THE COURT:  Okay.  I assume no objection

9  to that.  Not hearing any, we'll make that change.

10          MR. CASTELLANO:  One issue to consider for

11  the difference between first and second degree

12  murder is either to let us argue if -- that it's

13  either one of them, and if they find them guilty,

14  either of the defendants guilty of that, they can

15  find them guilty of the count.  In state court there

16  is usually what they call a step-down instruction,

17  which says, "Consider first-degree murder.  If you

18  can't make a decision about first-degree murder, you

19  must consider second-degree murder."

20          I put that out there as a recommendation,

21  or we can just argue, "If you find the defendants,

22  any of them, guilty of either theory of murder, you

23  can find them guilty of the charge."

24          THE COURT:  What's the defendants -- just

25  let everybody argue, or you want to put it in the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   instruction?

2           MS. JACKS:  I think it's fine to deal with

3   it in argument.

4           THE COURT:  Does that work for you, Mr.

5   Castellano?

6           MR. CASTELLANO:  It's fine, Your Honor.

7           MR. VILLA:  Your Honor, I agree.  And I

8   think 28 ought to look like 27, so it says "for you

9   to find any defendant guilty," instead of "the

10  defendant."

11          THE COURT:  So that works for you?

12          MR. CASTELLANO:  I didn't hear that, Your

13  Honor.

14          THE COURT:  He's saying instead of saying

15  "for you to find the defendant," you can just put

16  "for you to find any defendant."

17          MR. CASTELLANO:  Yes, we agree, Your

18  Honor.

19          THE COURT:  There was a change at the

20  bottom of this jury instruction number 6, it's now

21  7, that didn't get made.  I thought I wrote it on

22  here, but it says, "You may not consider any

23  defendant's decision."  I thought -- I think the

24  defense wanted to change it to take out Mr. Sanchez

25  and Mr. Baca and put, "You may not," and then

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8225

1   just -- it would just say "consider any defendant's

2   decision not to testify as evidence of guilt."  So

3   can I make that change, Mr. Castellano?  That's just

4   taking those names out and sort of smoothing, then,

5   the language.

6              MR. CASTELLANO:  Yes, Your Honor, that's

7   fine.

8              THE COURT:  I assume you still want that,

9   Ms. Jacks?

10             MS. JACKS:  Yes, Your Honor.

11             THE COURT:  So it will say, "You may not

12  consider any defendant's decision not to testify as

13  evidence of guilt.  I want you to clearly

14  understand."  That's the way you wanted it.

15             MS. JACKS:  Yes.

16             THE COURT:  Anything else, Mr. Castellano?

17             MR. CASTELLANO:  Yes, Your Honor.  I'd ask

18  for -- I understand the commerce language is stock

19  instructions from the Fifth Circuit.

20             THE COURT:  Here's the thing we've got be

21  careful with, and we can do some research on this if

22  we want to.  There is some differences between RICO

23  interstate commerce and just the commerce that's

24  given in the statute.  Now, I don't know -- I

25  couldn't say off the top of my head between VICAR

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and other, but I think we're going to have to look

2    at it if we're going to go to the stock Tenth

3    Circuit.  The VICAR that you have is out of the

4    Fifth.  So I think they got it accurately.  So if

5    we're going to start going back to the instructions

6    we had days ago, in which we start pulling the stock

7    jury instructions, I think we're going to have to

8    sit down and look and see if those are consistent

9    with VICAR, because I know that in RICO -- and I'm

10   not sure about VICAR -- there are some differences

11   on interstate commerce.  I can't tell you off the

12   top of my head, but I've read about them.

13          But I feel pretty confident that the Fifth

14   Circuit's VICAR is probably accurate.  Now, you look

15   at their instruction, they start referring to other

16   interstate commerce instructions in theirs, but it

17   didn't seem to me that they added anything.

18          MR. CASTELLANO:  It just seems a confusing

19   instruction because it relates to production,

20   distribution, or acquisition of goods or services.

21   It reads, "If it directly engaged in the production,

22   distribution, or acquisition of goods or services in

23   such commerce."  So that seems to be fairly limited

24   and narrow as opposed to what commerce is.  So we'd

25   have to research that.

SANTA FE OFFICE                                                    MAIN OFFICE
119 East Marcy, Suite 110                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                      Albuquerque, NM 87102
(505) 989-4949                                                        (505) 843-9494
FAX (505) 820-6349                                           FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8227

```
 1            THE COURT:  Well, I don't know what to
 2   say.  If you want to now start objecting to the
 3   Fifth Circuit's pattern instruction, we can do that.
 4   But this is what it says:  "The enterprise is
 5   engaged in interstate" -- it's got "foreign," we
 6   took "foreign" out -- "commerce, directly engaged in
 7   the production, distribution, or acquisition of
 8   goods or services in such commerce.  The
 9   enterprise's conduct affects interstate and foreign
10   commerce and conduct had a demonstrative connection
11   or link with such commerce."
12            I always thought -- and I thought you
13   indicated to me that what you were going to talk
14   about is distribution of drugs, so the word
15   "distribution" is there.
16            MR. CASTELLANO:  I agree.  The question is
17   whether -- I guess we can just argue it to the jury;
18   it says goods or services.  So typically, if they
19   travel or use communication devices, such as the
20   phone or use the mail, in addition to distributing
21   drugs, those are all items that move in commerce or
22   items which affect commerce.  And I agree with the
23   Court that this is the stock Fifth Circuit
24   instruction including that language.  I just
25   disagree with that definition of "commerce."
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8228

```
 1              THE COURT:  What do you want to do?  Do
 2   you want to take production out?  Does that help
 3   you, and just have "engage in the distribution or
 4   acquisition" and just take out "for services" and
 5   just put "goods" and you argue it's drugs?  Or what
 6   would you prefer to do?
 7              MR. CASTELLANO:  Yes, I would recommend if
 8   we keep this, removing the word "production."
 9              THE COURT:  Any objection to that?  Not
10   hearing any.  I wouldn't --
11              MR. VILLA:  I'm sorry, what was --
12              THE COURT:  Well, I can't imagine y'all
13   would care.
14              MR. VILLA:  We don't.
15              THE COURT:  It's narrowing the definition.
16   Mr. Castellano just doesn't think there is any
17   evidence of production, so he's saying take out
18   "production" and just put "distribution or
19   acquisition of goods."  Are you going to take out
20   "or services" as well, or do you want that still in
21   there?
22              MR. CASTELLANO:  We'll leave it, Your
23   Honor, and then if we remove "production," then we
24   can remove the comma between "distribution or
25   acquisition."
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8229

```
 1            THE COURT:  Okay.  Can y'all live with
 2    that, defendants?
 3            MS. JACKS:  Yes.
 4            MR. VILLA:  Yes.
 5            MR. CASTELLANO:  I think that's it, Your
 6    Honor.  Thank you.
 7            THE COURT:  Well, we've got a couple of
 8    choices.  I don't mind pushing the jury one time in
 9    this case on Friday if that helps you with closings.
10    So I don't mind printing these out and giving them
11    to them.  We'll be here at least 45 minutes, I
12    think, but it's y'all's call.  If that helps you get
13    it all done on Monday, and that's what you prefer,
14    I'll push them.
15            MR. VILLA:  Can we confer?
16            THE COURT:  Sure.  I'm going to do this.
17    Put this into your calculation.  I'm going to print
18    out a set, two sets, one for Ms. Standridge to use
19    on the Elmo, and one for me.  And then if we decide
20    to do it tonight, we'll be handing you sets as you
21    go.  You've got your set, but we'll continue to
22    print them and bring them to your table.  But that
23    will get me started.
24            MR. VILLA:  Those will be clean ones that
25    we can use in closings?
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8230

```
1              THE COURT:  Yes, those will be.
2              (A discussion was held off the record.)
3              THE COURT:  By clean, you're still going
4  to get one with footnotes.  That's what you wanted?
5              MR. VILLA:  Something that you could show
6  to the jury on --
7              THE COURT:  Yes.  By clean, you mean
8  you'll get one that I'm reading.
9              MR. VILLA:  Yes.
10             THE COURT:  You don't need one cleaned out
11 of the footnotes.  You can copy that one; right?
12             MR. VILLA:  I can live with that.
13             MR. BECK:  Your Honor, the Government is
14 just a little concerned, since there are no jurors
15 here from Las Cruces, of sort of angering them here
16 at the last minute before closings.
17             THE COURT:  I can take it on my shoulders.
18 I can tell them that I made a decision to do this
19 because it will help the lawyers and the parties get
20 all theirs in.  So I can put it on my shoulders if
21 that helps any.  I'll take the blame or hit for it.
22             MR. VILLA:  The defendants' inclination
23 was to give the jurors the road map of the choice
24 and then let them choose.
25             THE COURT:  Okay.  Do you want me to have
```



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

8231

1   Ms. Standridge go back there and ask them, rather
2   than bringing them here and asking them?
3           MS. JACKS:  It's fine with me.  I think --
4   do you want to take bets on their decision?
5           THE COURT:  Here's the way I would put it
6   to them, and I think this would be true if y'all
7   agree, is have her go back and say, it would help us
8   and help the parties if we gave the instructions
9   tonight.  If you don't want to stay, we'll just let
10  you go and do it in the morning.  But it may speed
11  things up and smooth things out if we were to do it.
12  Something along those lines.
13          MR. VILLA:  And tell them how long
14  instructions are expected to take.
15          MR. BECK:  Your Honor, I think that's a
16  good idea.  And maybe if we bring them in and we're
17  ready to go, and so that they know, as soon as you
18  tell them that, we're going to start going and be
19  done, versus, you know, just telling them that now
20  and make them think they can wait a while.
21          THE COURT:  Is that all right with y'all,
22  to bring them in and I ask them?
23          MS. BHALLA:  I think we might get a more
24  honest answer if Ms. Standridge does it in the jury
25  room, Your Honor, just to be candid.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

1            THE COURT:  I'm not sure I heard -- oh,

2     that was Ms. Bhalla.  Okay.  Well, why don't you go

3     back there and tell them that we have jury

4     instructions to read to them.  And tell them that if

5     they don't want to hear them tonight, we'll let them

6     go.  I'll bring them back in and give them an

7     instruction and then let them go.

8            If they would like to stay, it would take

9     me about 45 minutes to an hour to read them, and it

10    might help us in getting things done on Monday and

11    getting the case to them.  It might get it to them

12    quicker if we did that tonight.  But if they want to

13    go, tell them I'll bring them back in and let them

14    go.  It's up to them if they want to stay about 45

15    minutes to an hour and let me give the instructions.

16    It might help us in getting the case to them a

17    little quicker on Monday, and see what they say.

18            THE CLERK:  Okay.

19            THE COURT:  Y'all give some thought if in

20    fact they want to do this -- you don't have to

21    decide this tonight -- but if they decide they want

22    to hear the instructions tonight, if y'all want to

23    agree on set times, you just flat lay out between

24    the Government and the defendants how long you want

25    and, I'll call it, I'll tell you your time is up,

SANTA FE OFFICE                                                              MAIN OFFICE
119 East Marcy, Suite 110                                                201 Third NW, Suite 1630
Santa Fe, NM 87501                                                       Albuquerque, NM 87102
(505) 989-4949                                                           (505) 843-9494
FAX (505) 820-6349                                                       FAX (505) 843-9492
                                                                         1-800-669-9492
                     BEAN & ASSOCIATES, Inc.                             e-mail: info@litsupport.com
                     PROFESSIONAL COURT
                     REPORTING SERVICE

1    and that might help you get it done in a day.  If

2    they come back and they don't want to do it tonight,

3    I don't think we need to consider that.

4          But y'all might give that some thought

5    over the weekend, and I can just enforce whatever

6    agreement y'all reach.  And then if y'all script it

7    out, we'll get it done in a day.

8          All right.  Let me get a copy for me, a

9    copy for Ms. Standridge.  If they don't want to do

10   it, then I'll -- Mr. Mendenhall, come get me if she

11   comes back in.

12          (The Court stood in recess.)

13          (The jury entered the courtroom.)

14          THE COURT:  All right.  So I understand

15   the jury is ready to go home for the weekend.  So

16   we'll let y'all go.

17          Because we are finished with the

18   evidentiary portion of the case and we're taking a

19   weekend break and we're going to be starting with my

20   instructions on Monday morning, I'm going to remind

21   you of a few things that are especially important.

22          Until the trial is completed, and there Is

23   still a couple of stages here, so we're not done

24   yet, you're not to discuss the case with anyone,

25   whether members of your family, people involved in

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

8234

1   the trial, or anyone else.  And that includes your

2   fellow jurors.  So y'all have gotten to be good

3   friends over the last five weeks.  Don't start

4   texting each other or emailing.  Just go home and

5   think about something else.

6          If anyone approaches and tries to discuss

7   the trial with you, please let me know about it

8   immediately.  Also, you must not read or listen to

9   any news reports of the trial.  Again, don't get on

10  the internet and do any research for purposes of

11  this case.

12         And finally, remember that you must not

13  talk about anything with any person who is involved

14  in the trial, even if it doesn't have anything to do

15  with the trial.  If you need to speak with me, give

16  a note to one of the court security officers or Ms.

17  Standridge.

18         Monday we're going to be probably going

19  through different phases, and so just bear with me.

20  I'm going to continue to give you these instructions

21  on Monday.  So Monday will be a day in which we'll

22  probably be going through a lot of phases.  So just

23  bear with me.  If I don't say anything, then do keep

24  these things in mind.  Y'all have been great.  Let's

25  keep up the good work and try to bring it into your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    hands next week as soon as we can.

2              Thank you for your hard work.  Be safe.

3    We'll see you at 8:30 on Monday morning.  All rise.

4              (The jury left the courtroom.)

5              THE COURT:  All right.  If you want to

6    hang around, I've got a paper jam back here, but

7    I'll get you a copy to take home with you.  If you

8    don't, tell Ms. Standridge how you want us to maybe

9    try to get you a clean copy so you can start looking

10   at it and get ready for closings.  Y'all have a good

11   weekend.  Appreciate your hard work and be safe in

12   your travels.

13             (The Court stood in recess.)

14

15

16

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   UNITED STATES OF AMERICA

2   STATE OF NEW MEXICO

3

4                    C-E-R-T-I-F-I-C-A-T-E

5       I, Jennifer Bean, FAPR, RDR, CRR, RMR, CCR,

6   Official Court Reporter for the State of New Mexico,

7   do hereby certify that the foregoing pages

8   constitute a true transcript of proceedings had

9   before the said Court, held in the District of New

10  Mexico, in the matter therein stated.

11      In testimony whereof, I have hereunto set my

12  hand on this 4th day of February, 2019.

13

14          _____

15          Jennifer Bean, FAPR, RMR-RDR-CCR
            Certified Realtime Reporter
16          United States Court Reporter
            NM Certified Court Reporter #94
17          333 Lomas, Northwest
            Albuquerque, New Mexico 87102
18          Phone:          (505) 348-2283
            Fax: (505) 843-9492
19          License expires:  12/31/19

20

21

22

23

24

25



SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com