# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | NO.  15-CR-4268-JB |
| | § | |
| ANGEL DELEON, ET AL., | § | |
| | § | |
| *Defendants*. | § | |

## DEFENDANT ANTHONY RAY BACA'S REPLY
## IN SUPPORT OF HIS ARGUMENT FOR NEW TRIAL

Defendant Anthony Ray Baca files this reply brief supporting his argument for a new

trial (Dkt. 2488) and to highlight the shortcomings of the United States' Response (Dkt. 2513).

As discussed below, the United States has not seriously challenged the issues raised in Defendant

Baca's arguments for a new trial other than to tacitly claim harmless error.  Since harmless error

should not apply when the prosecution's case rests on a *Napue* violation as it requires the

defendant to show materiality of the evidence at issue, the Court should grant Defendant Baca's

request for a new trial.

## I.   DEFENDANT BACA IS ENTITLED TO A NEW TRIAL

### A.   *Mario Rodriguez*

The United States attempts to downplay the import of the exculpatory call Mario

Rodriguez made to his mother, claiming that the call "could be interpreted different ways."  Dkt.

2513, p. 1.  The critical issue here is how *the jury* would have assessed the call, not how the

government wants to interpret the call now that the trial is over.   The jury could have easily

credited the Rodriguez call to mean what Rodriguez literally says concerning Defendant Baca:

"I don't have nothing on him."  That statement was made in the context of a conversation between Rodriguez and his mother about why the United States needed Rodriguez to testify, and who he was going to testify against.  Rodriguez, despite the government's claims, had no motive or incentive to lie to his mother about his utility as a government witness against Defendant Baca.  As pointed out ad nauseum during the trial, the rules of the SNM required any cooperating witness for the government or substantiated informant against the SNM to be neutralized.  It would be of no moment to Rodriguez (or the SNM for that matter) that Rodriguez was cooperating against a broad array of SNM members, but not Defendant Baca. The motivations of Rodriguez and the SNM would be the precisely the same irrespective of the scope of Rodriguez's cooperation.  Accordingly, the government's argument on this topic lacks merit.  Rodriguez meant exactly what he told his mother about Defendant Baca:  "I don't have nothing on him."  There really is no room to justify the government's misguided alternative interpretations.

More importantly, the government takes the view that the governing legal standard favors the quantity of impeachment evidence possessed by the defendant at trial rather than the quality of the evidence that he had.  *See* Dkt. 2513, p. 1 (stating "this impeachment material is minimal by comparison").  The Tenth Circuit takes the opposite view, however, noting that "evidence insignificantly impacting the degree of impeachment may not be sufficient to meet the *Kyles* materiality standard, while evidence significantly enhancing the quality of the impeachment evidence usually will."  *Douglas v. Workman*, 560 F.3d 1156, 1174 (10th Cir. 2009).  The *Douglas* case demonstrates that it is the quality, not the quantity, of the impeachment evidence that controls the legal analysis.  In this case, Defendant Baca was

deprived of the impeachment evidence in question until after the trial had ended.  There was no

other evidence of this character or quality where the jury could have heard Rodriguez in his own

voice state that he possessed no evidence implicating Defendant Baca in any crime.  As

Rodriguez was a critical fact witness for the prosecution, the jury should have heard this

evidence and made an independent decision about how to assess Rodriguez's credibility in light

of his admission that he had no incriminating evidence against Mr. Baca.  The government's

failure to disclose this unique impeachment evidence undermines the confidence in the jury

verdicts here (especially when Urquizo's lies are considered), and a new trial should be ordered.[1]

### B.    Lupe Urquizo

The prosecution claims that Lupe Urquizo's misrecollections were somehow innocent.

Dkt. 2513, p. 2.  That is absurd.  Defendant Baca has shown this Court that Urquizo intentionally

lied to the jury throughout his testimony on many material issues.  There is nothing "innocent"

or mistaken about it.  Urquizo testified that on the last day he was housed on Level VI in 2012

before being moved to Level V of the PNM North facility that he communicated to Defendant

Baca using sign language while standing in the recreation yard while Defendant Baca was

housed in cell Q106 of Unit 3A.  Defendant Baca has shown to the court that Urquizo's

testimony was perjured on two separate levels.  First, Defendant Baca was not housed in cell

Q106 at that time.  Second, it is not possible to peer into cell Q106 from the recreation yard as

Urquizo claimed.  The government does not even try to defend Urquizo's trial testimony on

---

[1]  It should be noted that the government does not argue that this evidence was not material evidence, nor could it.  As this evidence was not duplicative of any other evidence disclosed to the defense, it was and is material to the impeachment of Rodriguez.  *See Nuckols v. Gibson,* 233 F.3d 1261, 1266 (10th Cir.2000) (affirming "the materiality of nonduplicative impeachment evidence").

these points.  That failure amounts to a concession that Urquizo did in fact offer perjured testimony to the jury.

The government then attempts to distract the Court with a misleading argument that inmates from different pods could have been together in the recreation yard.  Defendant Baca agrees that inmates from different pods *on the same unit* recreated together.  But the factual issue that Defendant Baca has raised is that inmates on different *units* of the same housing structure do not recreate together.  For instance, Unit 3A of Level VI consists of pods Q, R, S, and T.  Unit 3B consists of pods U, V, W, and X.  The point Defendant Baca makes, which the government apparently fails to understand and definitively fails to rebut, is that pods Q, R, S, and T do not recreate at the same time as pods U, V, W and X.  Defendant Baca's Exhibit Y supports that argument.[2]  Therefore, when one compares Urquizo's physical location history records with Defendant Baca's physical location history records you can see that it was impossible not only for the last hand-signal conversation between the Urquizo and Defendant Baca to have taken place, but that no recreation yard conversations between the two men could have happened during the summer or fall of 2012 as Urquizo claimed at trial.  The only conclusion that can be fairly made is that Urquizo's trial testimony was indeed perjured.

Finally, the government claims that the prosecution could not have known that Urquizo's testimony was perjured.  Tellingly, the government does not confront the facts raised by Defendant Baca:  that the prosecution had to have known Urquizo was lying because the prosecution solicited evidence from Urquizo that the last conversation Urquizo had with

---

[2]  The government is correct that Defendant Baca mistakenly referred to Exhibit Y as Exhibit YY.

Defendant Baca transpired *before* Urquizo claimed he first spoke with Defendant Baca in the recreation yard in August of 2012.  This omission is particularly damning given that the government does not even try to explain why the prosecution intentionally concealed rough notes from the FBI agents who interviewed Urquizo initially, notes that stated that Uriquizo did not know anything about Defendant Baca other than what a friend of his from Clovis told him. The government's failure to produce *Brady* and *Kyles* evidence, especially in light of the government's representations to this Court that such a review of the FBI rough notes had been completed before the trial began, is evidence that the government was well aware of Urquizo's lies and attempted to cover them up.  Defendant Baca has demonstrated a *Napue* violation, the arguments of the government notwithstanding.

      **C.**    ***The Destruction of the Level VI Recreation Yard Records***

The government does not attempt to argue that James Brewster was not on inquiry notice to ascertain precisely when and how the Level VI recreation yards records were destroyed. Instead it simply asks the Court to accept Brewster's testimony that Brewster was blissfully (and willfully) ignorant of what had transpired with those records or when they were actually destroyed.  Under the unique facts presented here, the government's proposition is unwarranted. Brewster knew that the Department of Corrections had produced to Defendant Baca recreation yard records from 2012 a week before Defendant Baca made a second request for the newer 2013 and 2014 records.  Brewster admits that despite having notice of the earlier production, he did nothing to ascertain how the Department of Corrections could not have had in its possession the 2013 and 2014 records given that the 2012 records had just been produced to Defendant Baca.  And Brewster conceded that those records were indeed located on the ground of the

5

Department of Corrections when Defendant Baca requested the records to be produced, and also when Defendant Baca separately requested that they be preserved.

Given Brewster's role in this case as a witness at trial, and the close collaboration he had with the government throughout this case, he certainly understood that these records contained potentially useful evidence for the defense.  This is especially so given Joe Martinez's statement to the FBI after the trial that David Calbert had lied during his trial testimony when Calbert claimed that Martinez provided Calbert with the Molina paperwork while the two men were in the recreation yard together on Level VI.  At a minimum, under the collective knowledge doctrine, knowledge that evidence is potentially useful to the defense is attributed to Brewster. In situations where members of the prosecution team are working together on an investigation, a court should evaluate whether their collective knowledge satisfied the appropriate legal standard.  *E.g.*, *United States v. Chavez*, 534 F.3d 1338, 1345-48 (10th Cir. 2008) (citing *United States v. Zamudio-Carrillo*, 499 F.3d 1206 (10th Cir. 2007)); *see also United States v. Wilkinson*, 633 F.3d 938, 941-43 (10th Cir. 2011). Under the "collective knowledge" doctrine" an individual does not need to possess every fact so long as another person participating in the investigation has knowledge of the necessary facts.  *See Chavez*, 534 F.3d at 1345-48.  *See also Brady* and *Kyles*.

## II.  CONCLUSION

Defendant Anthony Ray Baca, based on all of the evidence and arguments presented to this Court, respectfully requests that the Court grant his motion for a new trial.

Respectfully submitted,

/s/ Theresa M. Duncan
Theresa M. Duncan
Duncan Earnest LLC
515 Granite NW
Albuquerque, NM 87102
505-842-5196
teri@duncanearnest.com

AND

ROTHSTEIN DONATELLI, LLP

/s/ Marc M. Lowry
MARC M. LOWRY
500 Fourth Street NW, Suite 400
Albuquerque, NM  87102
(505) 243-1443
mlowry@rothsteinlaw.com

*Attorneys for Anthony Ray Baca*

7

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2019 I caused the instant motion to be filed with the Clerk of the Court using the CM/ECF system that will serve all other parties entitled to service and notice in this case.

/s/  Marc M. Lowry
MARC M. LOWRY