1

```
1           IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW MEXICO
2

3    UNITED STATES,

4         Plaintiff,

5      vs.                        No. 15-cr-4268-021-JB

6    ANTHONY RAY BACA, et al.,

7         Defendants.

8

9

10

11

12

13           TRANSCRIPT OF PROCEEDINGS
             Sentencing - Anthony Ray Baca
14           June 12, 2019
             11:30 AM
15           United States Federal Courthouse
             100 N. Church
16           Las Cruces, New Mexico  88001

17

18

19

20   BEFORE:        HONORABLE JAMES O. BROWNING
                    UNITED STATES DISTRICT JUDGE
21

22

23   REPORTED BY:   Jenifer L. Russin, RDR, CRR
                    NM CCR #182
24                  RUSSIN REPORTING, LLC
                    340 N. Water Street
25                  Las Cruces, New Mexico  88001
```




SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1                    A P P E A R A N C E S

2    For the United States:

3         MARIA Y. ARMIJO
          RANDY M. CASTELLANO
4         Assistant United States Attorneys
          200 N. Church
5         Las Cruces, New Mexico  88001
          (575) 522-2304
6         maria.armijo@usdoj.com
          randy.m.castellano@usdoj.com
7

8    For the Defendant:

9
          THERESA M. DUNCAN
10

11        MARC M. LOWRY

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1   [IN OPEN COURT AT 11:30 AM.].

2              THE COURT:  All right.  Good morning,

3   everyone.  Appreciate everybody making themselves

4   available to me.

5        We're here in the matter of United States of

6   America vs. Anthony Ray Baca, Criminal

7   15-cr-4268-021-JB.

8              MS. ARMIJO:  Your Honor, Maria Armijo and

9   Randy Castellano on behalf of the United States.

10             THE COURT:  All right.  Ms. Armijo,

11  Mr. Castellano, good morning again to you.

12       And for the defendant.

13             MS. DUNCAN:  Your Honor, Theresa Duncan and

14  Marc Lowry appearing on behalf of Mr. Baca.

15             THE COURT:  All right.  Ms. Duncan,

16  Mr. Lowry, Mr. Baca, good morning to you.

17       Mr. Baca, have you reviewed the -- what

18  probation did was they did two PSRs in your matter.  On

19  the second one, the one that was disclosed on June 6th,

20  which I think was last week, they did a little cover

21  memo to show the changes on it, and then they,

22  yesterday, issued an addendum to reflect the objections

23  that were filed on Monday night.

24       Have you reviewed those three documents and then

25  the memo that covers the -- what I'll call the
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

4

```
1    operative PSR?

2              THE DEFENDANT:  Yes, Your Honor, I'm

3    reviewing them right now.

4              THE COURT:  All right.  Do you need more

5    time to review them?  We can take time to do them,

6    because they're important.

7              MS. DUNCAN:  Your Honor, if we could have a

8    little bit more time.

9              THE COURT:  Yes, just tell me when you're

10   ready.  And does he know what I'm talking about?

11   There's the PSR back in early May, and then the one on

12   the 6th has a little cover memo that shows the changes

13   to the one in May, so it kind of summarizes it, and

14   then the addendum that came out yesterday about the

15   objections that were filed.

16             THE DEFENDANT:  That's what I have here.

17             THE COURT:  All right.  Just tell me when

18   you're ready.

19             MS. DUNCAN:  Thank you, Your Honor.

20             [Discussion off the record.]

21             MS. DUNCAN:  Your Honor, we're ready to

22   proceed whenever.

23             THE COURT:  All right.  Going back to my

24   questions, Mr. Baca, have you now had a chance to

25   review the May presentence report, the June 6th
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   presentence report with the cover memo from Mr. Mills
 2   summarizing what had been changed, as well as the
 3   addendum that came out yesterday?
 4               THE DEFENDANT:  I have, Your Honor.
 5               THE COURT:  And Ms. Duncan and Mr. Lowry,
 6   have you had a chance to review the two presentence
 7   reports, Mr. Mills' memo and then the addendum that
 8   came out yesterday?
 9               MS. DUNCAN:  We have, Your Honor.
10               THE COURT:  All right.  And I understand
11   that you have two objections, but no others, to the
12   presentence report; is that correct?
13               MS. DUNCAN:  Yes, Your Honor.  We have like
14   sort of a general objection just to the extent that the
15   presentence report was relying on investigative reports
16   instead of trial testimony.  But other than that, we
17   have one objection that has a factual and legal basis;
18   and the second, it's not so much of an objection as it
19   is a request for a variance.
20               THE COURT:  You know, I've had this
21   objection about probation relying on the discovery
22   materials, and I thought I had made it clear that I
23   wanted them to go back and review the trial
24   transcripts, but -- and the other probation officers
25   did.  I guess in this case, it didn't get done.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1         But having reviewed the guts of this PSR now 10

2    or 12 times in the other cases, it did all match up

3    with the trial testimony.  In those cases where it

4    didn't, the probation officer would change it.

5         So my reading of the PSR, with the help of

6    probation, also my reviewing of the transcript itself,

7    I didn't see any particularly factual mistakes in the

8    PSR.  Is there some that you want to have particularly

9    changed?

10              MS. DUNCAN:  Your Honor, I think that the

11   one that matters the most for us is the one that -- the

12   summary of the statements of Jerry Armenta, which

13   probation is relying on to support its allegation that

14   the vulnerable victim enhancement applies.

15              THE COURT:  All right.  And which particular

16   paragraph is that, or paragraphs?

17              MS. DUNCAN:  That is paragraph 22, Your

18   Honor.

19              THE COURT:  Okay.  What do you want to do

20   with that?  Are you going to deal with these

21   objections, Ms. Armijo?

22              MS. ARMIJO:  Yes, Your Honor.  The only

23   thing I think that deals with Mr. Baca is the first

24   couple of paragraphs -- sentences.  We're referring to

25   paragraph 22, correct?
```



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1              THE COURT:  Correct.
2              MS. DUNCAN:  Yes.
3              MS. ARMIJO:  And the only thing that I would
4   suggest, Your Honor, is that we put -- I guess the ELMO
5   is not up.  That's okay.  I can just say it.
6              MS. BEVEL:  I can turn it on, if you want.
7              MS. ARMIJO:  It says, "Anthony Ray Baca,
8   'Pup,' the recognized leader of the SNM," and instead
9   of "somehow obtained a copy," I was going to suggest we
10  put "was aware of a police report prepared by the
11  police department which reflected JM had provided
12  information in aid to."
13        Because -- and the basis for that is not so much
14  Armenta, but in reviewing the transcripts of
15  Mr. Urquizo and Mr. Rodriguez -- I can get my notes.
16  There's several statements -- there was testimony, and
17  I looked at the record where there was testimony that
18  the defendant had indicated that he knew Spider had the
19  paperwork, "Cheech told me."
20        And then another time he says -- and this is the
21  Rodriguez transcript -- Cheech told him on the phone
22  that he gave it to Calbert, referring to the paperwork.
23        And Mr. Urquizo testified that Pup told him that
24  there was paperwork on Javier and that he needed to be
25  hit and to take care of it when he went down south.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          And so -- and in another conversation that

2     Mr. Urquizo had with Calbert, he told him, "Pup wants

3     this done."  And he said, "Yeah, I know that."

4          So I think there is indication that -- although

5     I don't know that we had any direct testimony that

6     Mr. Baca had paperwork, there was clearly testimony

7     that the defendant was aware of the paperwork and spoke

8     about the paperwork.

9          So by changing it to "somehow obtained a copy

10    of" to "was aware of," I think that would take care of

11    it.

12              THE COURT:  All right.  And the rest of that

13    paragraph of what Armenta testified to, is that

14    consistent with your memory and record of what he

15    testified to?

16              MS. ARMIJO:  It's my recollection that it

17    is.  And I did not have an opportunity to last night go

18    over Armenta's testimony, but it appears that probation

19    did review the testimony, because in the next

20    several -- in the next three paragraphs, they talk

21    about testimony.  And we did provide them with

22    transcripts so that they could review it.

23              THE COURT:  All right.  And, Mr. Mills, is

24    that what you're trying to say here, is that this was

25    your review of the transcript?

SANTA FE OFFICE                                              MAIN OFFICE
119 East Marcy, Suite 110                                     201 Third NW, Suite 1630
Santa Fe, NM 87501                                           Albuquerque, NM 87102
(505) 989-4949                                               (505) 843-9494
FAX (505) 820-6349          BEAN                             FAX (505) 843-9492
                           &ASSOCIATES, Inc.                 1-800-669-9492
                           PROFESSIONAL COURT                e-mail: info@litsupport.com
                           REPORTING SERVICE

```
 1              MR. MILLS:  That's correct, Your Honor.

 2              THE COURT:  The trial transcript?

 3              MR. MILLS:  When it was brought up in a

 4    previous case, a coworker did go back, and we did amend

 5    reports.

 6         I didn't have an opportunity to go back

 7    specifically to those points that defense counsel just

 8    objected to.  So specifically to the points of those

 9    statements, I wasn't able to go back and look at those

10    specific statements.

11              THE COURT:  But when you wrote paragraph 22,

12    you were looking at the trial transcript?

13              MR. MILLS:  I believe it indicates in

14    paragraph 21 which ones we were referring to when we

15    started talking about relating to the trial testimony.

16    So beginning at paragraph 21 is when we started

17    beginning looking at the trial transcripts.

18              THE COURT:  Okay.  All right.  With that

19    change, Ms. Armijo, suggest -- would that be sufficient

20    for you, Ms. Duncan?

21              MS. DUNCAN:  Your Honor, it would.  We

22    obviously maintain Mr. Baca's innocence.

23              THE COURT:  Oh, yes.

24              MS. DUNCAN:  But I agree with Ms. Armijo,

25    that that testimony was elicited at trial, "was aware
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   of."

2               THE COURT:  So we will make the change.

3   We'll take out "somehow obtained" -- we'll take out the

4   words "somehow obtained" and just put "was aware of a

5   copy," and then the rest of the paragraph would remain

6   the same.

7               MS. DUNCAN:  There's actually another

8   objection that we have.  So it's the sentence -- five

9   lines down, it says, "After receiving this report,

10  Baca, who is housed at the Penitentiary of New Mexico

11  in Santa Fe, declared JM was to be murdered in his cell

12  at SNMCF."

13          And our objection was there was never any

14  testimony by any witness that Mr. Baca ordered that

15  Mr. Molina be killed in his cell.

16              THE COURT:  Do you have any record on that,

17  Ms. Armijo?

18              MS. ARMIJO:  Your Honor, I don't have any

19  recollection of the "in his cell part."  Certainly

20  there was a lot of testimony --

21              THE COURT:  That's what your objection is

22  specifically to "in his cell," right?

23              MS. DUNCAN:  That's right, Your Honor.  And

24  we acknowledge there are many witnesses who said that

25  Mr. Baca authorized the hit, and we dispute that, but

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
1    we acknowledge --
2              THE COURT:  So if we put a period after
3    "declared JM was to be murdered," that would be
4    sufficient for you?
5              MS. DUNCAN:  It would.
6              THE COURT:  And do you have any --
7              MS. ARMIJO:  I know there was testimony that
8    he was to be murdered at SNMCF, because he specifically
9    told Mr. Urquizo, "Take care of it when you go down."
10             THE COURT:  So can I just take out the three
11   words "in his cell"?  And is that sufficient,
12   Ms. Duncan?
13             MS. DUNCAN:  Yes, Your Honor, that is
14   sufficient.
15             THE COURT:  And you can live with that,
16   Ms. Armijo?
17             MS. ARMIJO:  Yes, Your Honor.
18             THE COURT:  All right.  So we'll take out
19   the words "in his cell," but leave in the words "in
20   SNMCF."
21        All right.  Any other factual objections before
22   we take up the legal objections, Ms. Duncan?
23             MS. DUNCAN:  I think the only other factual
24   objection that we had outstanding -- it doesn't really
25   go to any of the adjustments -- is in paragraph 26.  It
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1 says, "In summary, Herrera ordered the murder of JM

2 after receiving instructions from Baca, a high-ranking

3 member of the gang."

4   Our objection is simply that there was never any

5 evidence that Mr. Herrera communicated directly with

6 Mr. Baca.  We understand that there was evidence of

7 kind of a chain from Mr. Baca to one person to the next

8 person, but there was no testimony or evidence of a

9 direct conversation between those two.

10   MS. ARMIJO:  Can we change that to "after

11 receiving the paperwork," and if we need to put "the

12 paperwork," we can put it in parentheses.

13   So it would read, "In summary, Herrera ordered

14 the murder of JM after receiving the paperwork," in

15 lieu of "after receiving instructions from Baca."

16   THE COURT:  Would that be better?

17   MS. DUNCAN:  It would, Your Honor.

18   THE COURT:  All right.  So we'll make that

19 change.  And these are all all right with you,

20 Mr. Mills?

21   MR. MILLS:  Yes.

22   MS. DUNCAN:  Just to make that sentence make

23 sense, I think you'd also have to remove the next

24 clause, "a high-ranking member of the gang."

25   MS. ARMIJO:  Oh, yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1              THE COURT:  All right.  We'll make that
 2   change, as well.
 3              MS. DUNCAN:  Actually --
 4              MS. ARMIJO:  "Who was housed at PNM."
 5              MS. DUNCAN:  So it would just be, "In
 6   summary, Herrera ordered the murder of JM after
 7   receiving the paperwork," period.
 8              THE COURT:  That's agreeable with you,
 9   Ms. Armijo?
10              MS. ARMIJO:  Yes, Your Honor.
11              THE COURT:  And that's agreeable with you,
12   Mr. Mills?
13              MR. MILLS:  Yes, Your Honor.
14              THE COURT:  All right.  So before we take up
15   the legal objections, any other factual objections to
16   the PSR or to the addenda which addressed some of your
17   other objections?
18              MS. DUNCAN:  I'm sorry, if I could have just
19   one moment, because I think there was an additional --
20   I guess the only other objection we have is to the
21   addendum that was filed on the 6th.
22         Probation added additional information to
23   pages 11 and 25, paragraphs 26 and 119.  So we, as you
24   know, have objection to this characterization of
25   Mr. Molina as a vulnerable victim, which we're going to
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com


```
1    argue.  And so we'd object to this new language

2    characterizing him as such.

3              THE COURT:  Okay.  Why don't we come back.

4    I'll hold that, and then you can -- after we resolve

5    the legal issue, the guideline calculation, I'll try to

6    remember to give you an opportunity to clean up the

7    record, if I sustain your objection.  And then if I

8    overrule it, you can tell me if there's still some

9    objection to the factual portion.

10        All right.  Any other factual issues you see or

11   can think of?

12             MS. DUNCAN:  I think that's all of our

13   factual objections.

14             THE COURT:  All right.  I have given thought

15   to the factual -- to the legal objections to the

16   "vulnerable victim."  I can let you argue that, or you

17   can hear my thoughts and then have something to shoot

18   at.

19        Do you have a preference, Ms. Duncan.

20             MS. DUNCAN:  I'd love to hear your thoughts

21   first, Your Honor.

22             THE COURT:  All right.  So I looked at the

23   objections.  I didn't get them on Monday night, so I

24   started looking at these yesterday, but I do have some

25   thoughts on that.
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      So the primary issue as to the first objection

2  in the objection is whether the two-level adjustment

3  for a vulnerable victim under Section 3(a)1.1 of the

4  guidelines applies where Mr. Baca was not present at

5  Mr. Molina's murder.  And according to Mr. Baca, there

6  was no evidence that he was involved in ordering,

7  planning or directing the details of Mr. Molina's

8  murder.  And that's in objection paragraph 6 at page 3.

9      I'm inclined to think that a preponderance of

10 the evidence establishes that Mr. Baca knew or should

11 have known that Mr. Molina was particularly vulnerable

12 to being murdered because of Mr. Molina's cooperation

13 with law enforcement, Mr. Baca's order that Mr. Molina

14 be killed and Mr. Molina's incarceration with fellow

15 SNM members who knew of his cooperation and the order

16 for his death.

17      The PSR applies a two-level adjustment for a

18 vulnerable victim because Mr. Molina "became

19 susceptible to injury or death when other SNM members

20 became aware he cooperated with law enforcement and he

21 was subsequently placed in a correctional facility with

22 other SNM members after a green light was placed on

23 him, which meant he was to be killed."  That's

24 paragraph 26 that we've been discussing.

25      And what I understand Mr. Baca's objection to be

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1    is to the PSR's characterization of Mr. Molina as a
 2    vulnerable victim stating that -- and I'm quoting
 3    Mr. Baca here -- "There is zero evidence that
 4    Mr. Molina was" -- I believe that's supposed to be
 5    "unusually vulnerable due to age, physical or mental
 6    condition or was otherwise particularly susceptible to
 7    the criminal conduct."  And that's tracking the
 8    language -- quoting the language of application note to
 9    Section 3(a)1.1.
10          Mr. Baca contends that -- and I'm quoting
11    again -- "Mr. Molina's status as an inmate living in
12    prison is legally insufficient to justify application
13    of this enhancement, and that the attack's location,
14    standing alone, is also an improper basis to find a
15    victim vulnerable."  That's in paragraph 5 of his
16    objections.
17          And then Mr. Baca argues that he certainly did
18    not know nor should he have known where within the
19    prison Mr. Molina's murder would take place and asserts
20    that there is no evidence that he was involved in
21    ordering planning or directing the details of
22    Mr. Molina's murder.
23          I agree that the fact that Mr. Molina was an
24    inmate at the time of his murder and that he was killed
25    in his prison cell are not proper bases, without more,
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    to conclude that Mr. Molina was a vulnerable victim.

2    The two-level adjustment for a vulnerable victim

3    applies where the victim of the offense is "unusually

4    vulnerable due to age, physical or mental condition or

5    who is otherwise particularly susceptible to the

6    criminal conduct, and that the defendant knows or

7    should have known of the victim's unusual

8    vulnerability."  Again, that's application note 2.

9            And then application note 2 underscores that

10   Section 3(a)1.1(b) applies to offenses involving an

11   unusually vulnerable victim in which the defendant

12   knows or should have known of the victim's unusual

13   vulnerability.

14            For example, in United States vs. Tapia, the

15   United States Court of Appeals for the Eleventh Circuit

16   reviewed the District Court's decision that an

17   incarcerated government informant whom other prisoners

18   assaulted was a vulnerable victim for Section 3(a)1.1's

19   purposes.  The Eleventh Circuit found no error in the

20   application of the adjustment to the appellant's

21   convictions under 18 USC Section 1513, which were

22   retaliating against a witness, victim or informant

23   determining that the District Court "correctly

24   concluded that the victim, as an individual, was

25   particularly vulnerable by virtue of his incarceration

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    with appellants and his inability to escape and that

2    the victim was targeted because of this vulnerability."

3            In United States vs. Lambright, the United

4    States Court of Appeals for the Fifth Circuit upheld

5    USSG Section 3(a)1.1 application where a corrections

6    officer killed an inmate.  The District Court concluded

7    there that the inmate was a vulnerable victim because

8    "he was completely dependent upon the care of the

9    corrections officers, was locked in his cell prior to

10   the assault, and he could not protect himself from the

11   assault."

12           The United States Court of Appeals for the Tenth

13   Circuit has explained that the vulnerable victim

14   enhancement "should apply when the victim is" -- and

15   I'm quoting because it's quoting another case -- "when

16   the victim is less able to resist than the typical

17   victim and requires greater societal protection."

18           That's from United States vs. Scott, which was

19   quoting United States vs. Castenada, a Ninth Circuit

20   case, and then also quoting United States vs. Profitt,

21   a Tenth Circuit case.

22           The Tenth Circuit underscores that the

23   adjustment is "reserved for exceptional cases in which

24   the victim is unusually vulnerable or particularly

25   susceptible to the crime committed where the victims

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    are 'unable to protect themselves.'"  That's from the

2    Proffit case in the Tenth Circuit.

3         "There's no requirement, however, for the

4    sentencing court to find that the defendant

5    intentionally targeted the victim because of the

6    victims's vulnerability to apply the adjustment."  And

7    that's from the Chicora case from the Tenth Circuit.

8         "Further, in assessing vulnerability, the

9    sentencing court must make an individualized

10    determination.  It's not enough that a victim belongs

11    to a class generally considered vulnerable."  And

12    that -- the Scott case, the Proffit case, and another

13    Tenth Circuit case, Hardesty, make that clear.

14         Now, here, there was testimony -- and I think

15    the government may -- is going to, with their remarks,

16    supplementing it with additional specific cites to the

17    record.  But here's what I have seen from our review of

18    the record.

19         There was testimony that there was paperwork

20    being passed around on Mr. Molina containing a

21    statement he had made to the Las Cruces Police

22    Department.  That was from the cross-examination of

23    Rubio that was taken on February 2nd, 2018.

24         And then the government elicited similar

25    testimony from Calbert.  David Calbert testified that

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  Joe Martinez told him that Mr. Baca wanted Calbert to

2  take the paperwork to the Southern New Mexico

3  Correctional Facility -- and I'll call it Southern from

4  now on -- and Mr. Beck got that from Calbert on

5  February 2nd.

6          And then Guadalupe Urquizo testified about a

7  discussion he had with Mr. Baca in which Mr. Baca told

8  him about the paperwork on Mr. Molina and stated that

9  Mr. Molina needed to be killed.

10          Mr. Urquizo said that Mr. Baca wanted him to

11  carry this information to Southern.  And Mr. Beck

12  elicited that testimony on direct on February 5th,

13  2018.

14          Mr. Urquizo also testified that when he was

15  moved to the Penitentiary of New Mexico, PNM South

16  facility, Mr. Calbert showed up, stated that he had

17  Mr. Molina's paperwork and said, "Pup wants this done."

18  That was Urquizo's testimony, and he pretty -- he said

19  that several times in different ways.

20          Mr. Urquizo stated that Mr. Calbert gave him

21  Mr. Molina's paperwork, that he took Mr. Molina's

22  paperwork to Southern, and that -- I don't have the

23  transcript in front of me, but was Urquizo saying that

24  Mr. Baca knew that the paperwork and the hit meant

25  Molina would be murdered.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          Okay.  I didn't have a person there.  But my

2     clerk is telling me that that transcript -- I don't

3     have it in front of me.  The transcript says that

4     Mr. Urquizo testified that Mr. Baca knew that the

5     paperwork and the hit meant Mr. Molina would be

6     murdered.  That was February 5th testimony.

7          So the Court is inclined to conclude that

8     Mr. Baca not only advocated for Mr. Molina's murder,

9     but he knew and wanted other SNM members to know that

10    Mr. Molina had cooperated with law enforcement.

11         Other testimony that I think is relevant to this

12    issue was Mr. Molina was an SNM member and was housed

13    in Southern in a pod full of other SNM members.

14         Let's see.  Mr. Blanco testified on February 6th

15    that he stated that Mr. Molina was an SNM member living

16    in an SNM pod.  We then had quite a bit of testimony

17    that the SNM prohibits its members from cooperating

18    with law enforcement and puts hits on those who do

19    cooperate to be murdered.

20         Likewise, those who do not act on hits as

21    ordered are also murdered.  We got that testimony from

22    Mr. Rubio several times.  Mr. Baca knew that his

23    spreading word that Mr. Molina had cooperated with law

24    enforcement and needed to be murdered, especially

25    considering Mr. Baca's high position in the SNM, would

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  increase Mr. Molina's particular susceptibility to

2  being murdered.  Mr. Molina's incarceration in a pod

3  with SNM members who knew of his cooperation and the

4  order that he be killed also increased this

5  vulnerability.

6       Mr. Urquizo stated that Mr. Baca is the SNM's

7  leader.  Mr. Blanco stated that Mr. Molina was housed

8  in an SNM pod.

9       On February 7th, Ms. Armijo got Mr. Rodriguez to

10  provide that some of Mr. Molina's murderers were housed

11  near him.  Mr. Rodriguez also stated that Mr. Molina

12  was a rat, which is not allowed in the gang.

13       In United States vs. Tapia, it found that the

14  victim was vulnerable, in part, because of his

15  incarceration with the defendants.

16       Then we had testimony that Mario Rodriguez,

17  Timothy Martinez, Jerry Armenta and Jerry Montoya

18  entered Mr. Molina's cell with shanks with the sole

19  purpose of carrying out the hit on Mr. Molina.

20       And in United States vs. Pierce, which is a

21  Tenth Circuit, it's stated that USSG Section 3 at

22  1.1(b)(1) is justified where "The defendant selected

23  and targeted this particular victim for the offense

24  because of unusual circumstances."

25       Then there was testimony that Mr. Armenta and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   Mr. Montoya stabbed Mr. Molina 43 times, ensuring that

2   Mr. Molina would not survive the assault and would die

3   pursuant to the hit on him.

4          So the Court is inclined to conclude that

5   Mr. Baca knew that Mr. Molina was a vulnerable victim

6   because of Mr. Molina -- and these are the key facts

7   that I think push this across the board, across the

8   line into "vulnerable victim," because of Mr. Molina's

9   cooperation with law enforcement -- this is what

10  Mr. Baca knew -- the order for his murder and his

11  incarceration with other SNM members who had to act on

12  the hit or be murdered themselves.

13         And so I'm inclined to overrule Mr. Baca's

14  objection and apply Section 3(a)1.1's two-level

15  adjustment for vulnerable victim.

16         I want to hear, of course, from Mr. Baca about

17  that.  But I know the government was scrambling to look

18  for testimony to support the "vulnerable victim."

19         I assume you're going to argue in support of

20  what probation did.  But anyway, why don't I hear from

21  the government.  What's your position?  And did you

22  find other testimony that you think I ought to consider

23  and Mr. Baca ought to consider in this "vulnerable

24  victim"?

25                 MS. ARMIJO:  Your Honor, we do agree with

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1   probation.  We agree you did find several of the places
 2   that I was looking at.
 3        I know that when you had asked your law clerk as
 4   to if there was -- I believe on page 37 of Urquizo,
 5   transcript, he said specifically that "Pup said there
 6   was paperwork and that Javier needed to be hit and to
 7   take care of it when he went down there."
 8             THE COURT:  And there was testimony that
 9   Mr. Baca knew that?
10             MS. ARMIJO:  Yes, that, "Pup said there was
11   paperwork and that he needed to be taken care of."  So
12   we did have that directly.  I know that you had
13   indicated -- but we do have that directly.
14        The other thing that I think we could add as to
15   Mr. Molina being vulnerable is, if you may recall,
16   there was testimony from Timothy Martinez that his
17   whole job was to subdue Mr. Molina in his cell, and he
18   went in and he gave him a shot to knock him out.  And
19   so before the stabbing began, the plan was to knock him
20   out in his cell and that they were also going to be
21   doing drugs.
22        I don't know that Mr. Molina actually -- and I
23   don't recall if he -- I don't think he actually ever
24   got to ingest the drugs, but that was the plan they
25   were going to do.  But we do know that he was knocked
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   down by Mr. Martinez as well.  So there was some sort

2   of incapacitating him as well.

3          THE COURT:  Was there evidence, though, by

4   Mr. Martinez linking Mr. Baca to knowing those details

5   of the murder?

6          MS. ARMIJO:  No, Your Honor.  There was not

7   specifically that Mr. Baca would know those specific

8   details.  I think, as to that, we would just say that

9   it was foreseeable that it would be in a cell, given

10  that they are in a prison setting, and every single SNM

11  murder that occurred up to that time had been done in a

12  cell.

13         If you think about the 2001 murders, the Freddy

14  Sanchez murders, all of those had been -- were

15  committed at Southern and in a cell.  I can't think of

16  an SNM murder since Mr. Baca was the leader that

17  occurred outside of a cell.  No, I know that Mr. Baca's

18  murder was not in a cell, that he committed.

19         But that's why I was very specific as to

20  anything since he was the leader afterward when these

21  people were committed, especially all the murders at

22  Southern.  They were killed in cells.

23         So I think it was certainly foreseeable.  He was

24  specific that he be killed -- he knew he was at

25  Southern, so it would be foreseeable to him, as well.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

```
 1                THE COURT:  All right.  Thank you,
 2    Ms. Armijo.
 3         Ms. Duncan, are you going to argue in support of
 4    this objection?
 5                MS. DUNCAN:  I am, Your Honor.
 6                THE COURT:  All right, Ms. Duncan.
 7                MS. DUNCAN:  Just to speak to Ms. Armijo's
 8    last point about Mr. Baca ordering the hit be done at
 9    Southern, you know, Mr. Baca had no control over where
10    Mr. -- and just for the purposes of this argument, Your
11    Honor, I'm going to assume the truth of everything that
12    you just summarized in terms of testimony.
13                THE COURT:  Right.  And I should say, in
14    making that, I'm crediting these portions of the men
15    that testified what they said.  I don't have to credit
16    everything they said.  But at least on these particular
17    points that I looked at, I was crediting that
18    testimony.
19                MS. DUNCAN:  I understand, Your Honor.
20                THE COURT:  And I understand that you're not
21    finding them credible even on these points.
22                MS. DUNCAN:  Right.  But I agree that the
23    Court accurately summarized their testimony.
24         So with respect to Southern New Mexico
25    Correctional Facility, Mr. Baca had no control over
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  where Javier Molina resided.  So, you know, accrediting

2  the testimony that he ordered him to be hit, if

3  Mr. Molina had been living on the streets and the order

4  would have been "kill him on the streets," or if he had

5  been at PNM, it would have been there.  It was really

6  just -- it was to hit Mr. Molina, location being just

7  irrelevant, ancillary to that order.

8       And I think that that's sort of what

9  distinguishes this case from some of the other cases

10 that the Court was talking about.  In Tapia, the

11 witness -- the person who was killed was actually

12 brought into that pod to testify at a particular trial.

13 So he was particularly vulnerable because he was

14 brought in solely for that purpose.

15      Here, we have Mr. Molina was living at Southern

16 New Mexico Correctional Facility.  He was placed there

17 by virtue of his own actions and his own incarceration.

18 So he wasn't there for a specific purpose that was

19 related to Mr. Baca.  He was there because he had been

20 convicted of a crime and sentenced to incarceration.

21      It's also different from the correctional

22 officer case because, in there, the vulnerability stems

23 from the officer's relationship to the inmate.  Right?

24 That the officers can put someone into a particularly

25 vulnerable location in a prison.  They have the power

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    and control to prevent someone from reporting violence.

2         So here, Mr. Baca did not have any of that

3    control.  He had no control over Mr. Molina whatsoever.

4    And there's a difference between having a motive to

5    kill someone or to have them be a victim of a crime and

6    being a vulnerable victim.

7         So, for example, the guideline is clear that

8    someone's status as a bank teller does not make them a

9    vulnerable victim for purposes of a bank robbery just

10   because there's a teller.  There has to be something

11   else.

12        So in this case, crediting all the government's

13   evidence, Mr. Molina was an informant.  He was a part

14   of a group, the rules of which were that informants get

15   hit.  That was the motive for the murder, but that

16   didn't make him particularly vulnerable.  Otherwise,

17   anytime someone has a motive to kill someone, to rob

18   them, to commit an offense, that person is vulnerable

19   because they're susceptible to the offense.  But

20   there's nothing about Mr. Molina that made him

21   particularly susceptible.  He wasn't physically infirm.

22   He wasn't placed by Mr. Baca or any other person, you

23   know, any other of the defendants into a vulnerable

24   position.

25        And with respect to this -- so his status just

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    as who he was is not enough for the vulnerable victim,

2    and the location of the hit is not enough for a

3    vulnerable victim because that's just where he lived.

4    It's -- we've heard that you -- that the way that the

5    SNM operated was you get a hit, you know, this person

6    needs to be taken care of, and they get taken care of

7    at your first opportunity.  Whether it's in a yard, a

8    cell, on the street, it doesn't really matter.  The

9    point is the hit.  The point is the murder.

10           So -- and in terms of -- so we have -- with what

11   happened in that cell, the first is that I think, as

12   the government has acknowledged, Mr. Baca -- there's no

13   evidence that Mr. Baca had specific directions on how

14   anything was going to happen.  And once you get into

15   the cell, I would note that there is an enhancement for

16   restraint, for physical restraint, and we haven't

17   objected to that because the evidence is that

18   Mr. Molina was restrained, and that enhancement does

19   not include a mens rea component.  It doesn't matter

20   whether Mr. Baca knew or should have known that he was

21   going to be restrained.  It's the simple fact of the

22   restraint.

23           But the vulnerable victim is different.  There

24   would have to be some knowledge that he knew Mr. Molina

25   was going to be hit in a place that he could not flee

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    from or that there was some other specific

2    circumstances.

3           So here, you know, Mr. Molina was not selected

4    or targeted because of unusual circumstances.  You

5    know, crediting the government's evidence, he was

6    selected or targeted exactly because that's the way

7    that the SNM operated and, you know, according to

8    rules, that he himself signed onto.

9           And, Your Honor, I think that is -- yeah, I

10   think that's my argument.

11              THE COURT:  All right.  Thank you,

12   Ms. Duncan.

13          Ms. Armijo, your arguments in response to the

14   objection?

15              MS. ARMIJO:  Your Honor, the only other

16   thing that we would add is it was very specific.

17   Although there was the hit that was outstanding, as to

18   Mr. Urquizo, it was very specific because he knew that

19   Mr. Urquizo was going down to Southern.

20          So it wasn't as if Mr. Baca knew that the

21   defendant had a hit and it was a hit on site -- because

22   we did have testimony about that.  If you see somebody

23   on the street, you know, like Julian Romero, that you

24   would hit them anywhere.

25          But this was very specific from Mr. Baca to

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Urquizo, who was taking down the paperwork.  He

2    said, "You're going down to Southern.  You need to take

3    the paperwork down with you and make sure this gets

4    done."

5         He knew that Javier Molina was in a prison

6    setting.  It wasn't a hit on site outside.  He knew and

7    he instructed him that he was going to be going down

8    there.

9         The other thing that I would add that -- when

10   you were comparing it to the people that you depend on,

11   as far as correctional officers, in this case, although

12   there wasn't a correctional officer, I think that

13   Mr. Molina had probably -- he knew -- I think there was

14   testimony he knew that there was a hit out on him, but

15   the people that he was around, he trusted.  He was

16   around his brother, his carnales, that he had trusted

17   and when they all set him up to go inside of his cell

18   to then start the stabbing, he went in there assuming

19   that they were going to be doing drugs, and he trusted

20   those people.

21        So although they weren't his caretakers, he went

22   into a small cell with at least three individuals that

23   he thought were his brothers, and he never saw this

24   coming.  So, to that extent, he did trust those people.

25        That's what I would have to add, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           THE COURT:  All right.  Thank you,

2   Ms. Armijo.

3       Ms. Duncan, I'll give you the last word on this

4   objection.

5           MS. DUNCAN:  Thank you, Your Honor.  I have

6   two points that I would like to make.

7       Yes, according to the government's evidence,

8   Mr. Baca knew that Mr. Urquizo -- I mean, Mr. Molina

9   was at Southern New Mexico Correctional Facility.  But

10  I would just point out that Mr. Baca was with

11  Mr. Molina at Southern New Mexico Correctional Facility

12  where nothing happened.  And the fact that it's a

13  prison setting is not enough for vulnerable victim.

14      And then with respect to Ms. Armijo's second

15  point, that he was around people he trusted who

16  betrayed him, that is undoubtedly true, but it's not

17  something that -- a circumstance -- the circumstances

18  of the killing itself is not something that Mr. Baca

19  knew or should have known.

20          THE COURT:  All right.  Thank you,

21  Ms. Duncan.

22      Well, certainly there could be more facts, but I

23  guess the facts that I think push this across the line

24  remain that -- I think the evidence supports that

25  Mr. Baca knew that Mr. Molina was a vulnerable victim

SANTA FE OFFICE                                                      MAIN OFFICE
119 East Marcy, Suite 110                                        201 Third NW, Suite 1630
Santa Fe, NM 87501                                                Albuquerque, NM 87102
(505) 989-4949                                                          (505) 843-9494
FAX (505) 820-6349                                                 FAX (505) 843-9492
                                                                          1-800-669-9492
                                                              e-mail: info@litsupport.com



```
 1   because of Mr. Molina's cooperation with law

 2   enforcement, the order for his murder, and his

 3   incarceration with other SNM members who had to act on

 4   the hit or be murdered because of the culture of the

 5   SNM.

 6        So I think it's enough that Mr. Baca knew that

 7   Mr. Molina would be killed because he's a rat and that

 8   Mr. Molina was housed at Southern.  And I do think

 9   there's evidence to support that.  And I think that's

10   enough to cross the line.

11        So I'm going to overrule the objection and apply

12   the two-level enhancement and concur with probation's

13   assessment on that.

14        Let me at this time confirm, then, the guideline

15   sentence, and we'll come back and talk about the

16   objection on the concurrent or consecutive.

17        So the offense level is 43, and the criminal

18   history category is 6.  Pursuant to 5(g)1.1, the

19   guideline imprisonment term is 120 months as to Counts

20   6, 9 and 10.

21        As to Count 7, the guideline imprisonment range

22   is life, which is consistent with the statutory

23   provision of mandatory life imprisonment.

24        And I know you have an objection, but given the

25   Court's ruling on the objection, have I now stated
```

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    correctly the guideline sentence as well as the

2    statutory sentence, Ms. Duncan?

3              MS. DUNCAN:  Yes, Your Honor, you have.

4              THE COURT:  All right.  Let me do this:  I

5    don't want to -- I can do two things, if you want.  I

6    can give you some very preliminary thoughts on the

7    consecutive/concurrent.  And all I have really done at

8    this point is not decided on that or have an

9    inclination on that, but I just want to state what the

10   law is.

11        If you want to argue it without me stating that,

12   I can.  Or if you'd like to see what my thoughts are on

13   the law and the guidelines, I can give those to you.

14   Which would you prefer?

15             MS. DUNCAN:  Your Honor, Mr. Lowry is going

16   to argue that portion.

17             THE COURT:  Do you want to hear my thoughts

18   on the law and the guidelines, or do you want to argue

19   them first?

20             MR. LOWRY:  Your Honor, I always benefit

21   from the Court's wisdom.  Thank you.

22             THE COURT:  All right.  Let me see if I can

23   help, and then we'll hear the substantive arguments.

24        What I understand is that Mr. Baca objects to

25   the application of USSG Section 5(g)1.3.  So Mr. Baca's

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   federal sentence will run consecutively with his state

2   sentence because Mr. Baca was incarcerated and serving

3   a sentence for murder when he committed the federal

4   offenses for which he's being sentenced today.

5         The PSR describes that Mr. Baca was convicted of

6   murder in 1990 and sentenced to life imprisonment.

7   That's paragraph 115 at page 24.

8         Because Mr. Baca was serving this sentence when

9   he committed the federal offenses for which he's being

10  sentenced today, the probation office recommended that,

11  "As none of these prior convictions were utilized to

12  enhance the defendant's offense level under Chapters 2

13  or 3 of the United States Sentencing Guidelines, the

14  defendant's sentence for the instant offense shall run

15  consecutively to his undischarged term of imprisonment

16  in the State of New Mexico Docket D-202-CR1989-00415."

17  And again, that's paragraph 115.

18        Mr. Baca requests that the Court vary from

19  Section 5(g)1.3's application, asserting that his

20  current sentence from his state court conviction in

21  1989 for murder was used to prove an element of the

22  crimes here, whether Mr. Baca was involved in a

23  criminal enterprise called the SNM.  That's paragraph 8

24  of his objections on page 4.

25        Mr. Baca underscores that the guidelines are

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  advisory and do not bind the Court.  That's paragraph 9

2  on page 4.  The probation office has -- Mr. Mills has

3  responded in the addendum, explaining that because the

4  State sentence "was not utilized to enhance the

5  defendant's offense level under Chapters 2 or 3 of

6  United States Sentencing Guidelines" or "used in

7  calculating the defendant's offense level, the

8  defendant's sentence for the instant offense shall run

9  consecutively to the aforementioned undischarged terms

10  of imprisonment."  And that's what the addendum on

11  page 2 says.

12         Section 5(g) 1.3 provides that if the instant

13  offense was committed while the defendant was serving a

14  term of imprisonment, including a work release, furlow

15  or escape status, or after sentencing for, but before

16  commencing service of, such term of imprisonment, the

17  sentence for the instant offense shall be imposed to

18  run consecutively to the undischarged term of

19  imprisonment."  That's Section 5(g) 1.3(a).

20         Mr. Baca does not dispute that he was

21  incarcerated when he committed the federal offenses for

22  which the Court is sentencing him today, and the record

23  supports that he was incarcerated when he committed the

24  federal offenses.  The Court agrees with Mr. Baca that

25  it is not required to order that the sentence in this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    case run consecutively to his State sentence, and the

2    Court notes that it may vary from Section 5(g) 1.3(a)

3    and impose this sentence concurrently rather than

4    consecutively.

5          So the guidelines -- I think Mr. Mills has

6    correctly stated the guidelines, but I think there's

7    also support for the fact I can vary from the

8    guidelines.  I think Tenth Circuit case in the United

9    States vs. Mahalli and Schumacher support that.

10         Then turning to the statute, 18 USC

11   Section 3584, it also provides the Court with authority

12   to sentence concurrently or consecutively.  18 USC

13   Section 3584(a) says, "If a term of imprisonment is

14   imposed on a defendant who is already subject to an

15   undischarged term of imprisonment, the terms may run

16   concurrently or consecutively."

17         The statute counsels that, "The Court, in

18   determining whether the terms imposed are to be

19   ordered" -- and I'm quoting here from 3584(b).  "The

20   Court, in determining whether the terms imposed are to

21   be ordered to run concurrently or consecutively, shall

22   consider as to each offense for which a term of

23   imprisonment is being imposed," the factors set forth

24   in Section 3553(a).

25         The Court retains the discretion to vary from

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  the guidelines where "the factors relevant" -- and I'm

2  quoting the Schumacher case -- "factors relevant to the

3  sentencing have not been addressed adequately by the

4  guidelines."

5       So there it sounds like they were talking about

6  departure rather than varying.  But I think what the

7  defendant is arguing is not that I depart from the

8  guidelines, but that I vary from the guidelines.

9       So the way I understand the situation -- and we

10  can just see if we have an agreement on this, and then

11  we can argue about what we should do -- is that the

12  statute gives me discretion, and the guidelines, the

13  proper guidelines, is that they run consecutively.  But

14  I can also vary under Booker or Kimbrough from those

15  guidelines and can also run them either consecutively

16  or concurrently.

17       Would you agree with my understanding of the

18  law, Mr. Lowry?

19            MR. LOWRY:  Absolutely, Your Honor.

20            THE COURT:  Do you agree with that, as well?

21            MS. ARMIJO:  Yes, Your Honor.

22            THE COURT:  All right.  So you can argue it

23  now, separately from your remarks on behalf of

24  Mr. Baca, or you can include them in your remarks of

25  Mr. Baca.  But it's up to you how you want to proceed,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349


BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    Mr. Lowry.

2               MR. LOWRY:  Well, Your Honor, if I may.

3               THE COURT:  Mr. Lowry.

4               MR. LOWRY:  Thank you, Your Honor.  And I

5    apologize, Mr. Baca was speaking with me.

6               THE COURT:  That's all right.

7               MR. LOWRY:  When you're saying my remarks

8    about Mr. Baca, you're talking about the first factor

9    under 3553, that nature and circumstances of the

10   offense and the characteristics of the defendant, or

11   would you clarify for me what you mean by my remarks

12   about Mr. Baca?

13              THE COURT:  Well, at some point I'm just

14   going to turn it over to you to make remarks on behalf

15   of Mr. Baca.  And you can either sweep all this about

16   whether it's concurrent or consecutive into those

17   remarks, or we can take it up separately.  However

18   you'd like to proceed.

19              MR. LOWRY:  I'd like to sweep it all

20   together, if you will, Your Honor.

21              THE COURT:  You're about to make

22   arguments -- well, on behalf of Mr. Baca, and I'll just

23   hear your "concurrent" or "consecutive" at that time.

24              MR. LOWRY:  Yes, Your Honor.

25              THE COURT:  Mr. Lowry.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1           MR. LOWRY:  Your Honor, as you pointed out,
2    the Court is vested with the discretion to impose a
3    sentence it sees fit under the nature and circumstances
4    of the current offenses.  And really, the gestalt of
5    our argument for concurrent sentences is frankly what's
6    the point of adding life sentences on top of life
7    sentences?  Because if you're serving a single life
8    sentence, short of imposing the sentence of death, that
9    life sentence essentially incorporates all of the
10   3553(a) factors that the Court needs, and a single life
11   sentence is sufficient to compensate for those factors.
12           What we've done in the brief is basically to
13   peel back and look at the nature and circumstances of
14   the offense.  And without belaboring it, we have
15   maintained Mr. Baca's innocence with regard to the
16   Molina murder and the Marcantel conspiracy.  And we all
17   sat through the trial; we understand that.
18           But I just think it bears noting, you know, to
19   look at -- we've been talking about it this morning,
20   even in the sense with the vulnerable victim, with this
21   idea that Mr. Baca ordered this hit to take place on
22   Mr. Molina.  And I think it's just worth emphasizing
23   that after Mr. Baca spoke with Mr. Urquizo in the year
24   of 2012, and Mr. Urquizo claims to have had this
25   conversation that frankly was impossible to have taken

SANTA FE OFFICE                                                           MAIN OFFICE
119 East Marcy, Suite 110                                              201 Third NW, Suite 1630
Santa Fe, NM 87501                                                     Albuquerque, NM 87102
(505) 989-4949                                                             (505) 843-9494
FAX (505) 820-6349                                                      FAX (505) 843-9492
                                                                          1-800-669-9492
BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE
e-mail: info@litsupport.com

1   place through the cell window, and Mr. Urquizo

2   disappears not to Southern but to the Southern facility

3   in Level 6 in Santa Fe.

4        Mr. Baca was transported by the Department of

5   Corrections in January of 2013 from PNM Level 6 North

6   facility directly to Southern and placed in the blue

7   pod where he lived with Mr. Molina on the same pod,

8   where they could shake hands, eat lunch together, with

9   all the same SNM cast of characters that, you know,

10  other ultimately came to mete out his death.

11       And so what we're saying it if this theory was

12  true or plausible, it seems to me there was no real

13  compelling reason for Mr. Molina not to be killed when

14  Mr. Baca was actually on the pod.

15       I mean, if we take the government's theory --

16  and I'm not trying to impeach the jury's verdict.  I

17  know and respect that verdict.  But it seems to me that

18  if that were to be the case, that Mr. Baca was there in

19  person and could have directed that himself.  He didn't

20  need to wait for Mr. Urquizo to show up, you know,

21  almost a year and a half later to do the dirty work.

22       And we know from the 1989 murder of Mr. Vasquez

23  at PNM, the old PNM main that, you know, if somebody

24  gave him the right circumstance, to kill him, he

25  wouldn't -- you know, he would do so.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          So I just have a pragmatic problem with the way

2     the whole chronology of events is structured, because

3     it sort of undermines the theory that Mr. Baca wanted

4     Molina murdered.

5          And so I just think the Court, sort of in

6     equitable principles, can take this into consideration

7     when we're deciding whether this was something that we

8     can attribute to him in some kind of -- and I'm not

9     trying to undermine the instance of murder, but there's

10    no apparent sense of malice on his part that he wanted

11    him dead and he wanted him dead immediately, like we've

12    heard the Court quote from the testimony of Lupe

13    Urquizo and others, who unfortunately were paid by the

14    government to testify favorably for the prosecution, as

15    we know.

16          So, I mean, I just have -- you know, despite the

17    jury's verdict, I guess I'm biased in favor of my

18    client.  I still have a little heartburn over the

19    chronology of events, and I don't think it speaks to

20    the level of maliciousness that we want to see to

21    impose multiple life sentences against an individual.

22          And the same thing sort of comports when we talk

23    about the Marcantel conspiracy.  We saw through the

24    audios that were played, and you heard Mr. Baca, in his

25    own voice, characterize him as the figurehead for the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  department.  He's just a puppet being fed information

2  by others.  And it wasn't in a period of days after

3  Eric Duran turns off this recorder and stops recording

4  Mr. Baca entirely, only after that period of days when

5  he starts resuming the conversations with Mr. Baca and

6  recording them do we hear a change of heart in

7  Mr. Baca.  And our theory has always been that it took

8  Eric Duran's consistent persuasion to entrap Mr. Baca

9  into accepting this theory as a good idea or a viable,

10  you know, scheme to pull off.

11         So obviously Mr. Baca has lived a life that's

12  very different from you or I or regular folks in this

13  courtroom, Your Honor, and it's been a hard-scrabble

14  life, to say the least.

15         But what I'm suggesting to the Court is it isn't

16  a kind of, you know, just stone-cold, "I want to kill

17  you for the sake of killing you," that the sentence of

18  multiple life sentences would necessitate to reflect

19  adequately, you know, societal -- society's -- I don't

20  know.  I don't know of another word, other than

21  vengeance, frankly.

22         Because if you look at all the sentencing

23  factors, a life sentence, one, standing on its own, is

24  enough to promote all the 3553(a) factors.  Because a

25  life sentence, you know, that shows the seriousness of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  the offense, in and of itself, and it's enough to

2  develop respect for the law and enough to provide

3  deterrence not only for the public but for Mr. Baca.

4         You know, there's no need, past a life sentence,

5  for any kind of vocational or medical or any kind of

6  corrective behavior to impose.  And it's -- of the kind

7  of sentences imposed, life under federal law, it's

8  mandatory.  I mean, there's really no other kind of

9  sentence we have at hand.  So that's kind of a moot

10 point if we look at 3553 -- I believe it's 4.

11        Now, where we really differ, and I think where

12 the Court is going to come down on this, is sort of

13 judging the policy considerations that we see in the

14 sentencing guidelines as opposed to what the Court has

15 the discretion to impose.  And frankly, in looking at

16 that, you know, my thoughts went back to a Law Day

17 luncheon we had in Albuquerque years ago where Justice

18 Henry spoke, and Justice Henry, during that talk, he

19 quoted Justice Benjamin Cardoza out of, "The Nature of

20 the Judicial Process," a book he wrote.  And Cardoza's

21 philosophy with regard to the courts -- and I'll quote

22 this.  It says, "Be it my will that my justice be ruled

23 by mercy."

24        And it really goes to sort of my thinking on

25 this, that the Court is in a position to bring some

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   enlightened view of what is pragmatically possible.  I
2   mean, I don't know that multiple life sentences really
3   serves any other real purpose, other than trying to
4   send a signal to somebody that they're -- you know,
5   you're going to -- you can't die multiple times.  And
6   the pragmatic reality of you running these sentences
7   concurrently means that Mr. Baca is going to die in
8   federal prison at some point.
9        I mean, it's my understanding that it's very
10  difficult, if not nearly impossible, for the State to
11  parole somebody off of a life sentence due to a murder
12  charge.  It happens, but it happens very rarely.  And I
13  doubt it would happen under the circumstances of
14  Mr. Baca's 1989 murder conviction.
15       And I can't -- I have no control over that, Your
16  Honor.  I'm not going to kid the Court or my colleagues
17  that I do.  But I think that what I've been made to
18  understand here today is that, you know, the United
19  States and the Department of Justice will try to have
20  the State cede primary jurisdiction over Mr. Baca in
21  order to get him to the Bureau of Prisons.
22       My understanding of the sentencing guidelines is
23  the imposition of a life sentence means roughly, at a
24  minimum, 470 months, which is just over 39 years.  And
25  even if you factor in, you know, time for good time,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  which I doubt you get under a life sentence, would mean

2  he'd serve over -- in excess of 33 years on top of his

3  current age.  He's not going to -- he's not going to

4  make it out of federal prison, Your Honor.  He's going

5  to unfortunately pass away living in the confines of a

6  federal penitentiary for the rest of his life.

7        And so I just see that the imposition of a

8  concurrent sentence is really -- I won't say much to do

9  about nothing, because I'm not naive about the

10 seriousness of a murder conviction.  But what I do

11 think it could speak to is the Court's capacity for

12 mercy for anybody, for anybody under the circumstances.

13       And it doesn't mean you're going off lenient or

14 light on Mr. Baca, because a concurrent sentence

15 results in his death in a federal penitentiary at best.

16 And at worse, it might result in his death in a State

17 facility, if the State doesn't waive primary

18 jurisdiction and maintains his life imprisonment there.

19       So it doesn't really change his fate to run them

20 consecutive or concurrent.  It's just a matter of --

21 from my perspective, a matter of judicial philosophy

22 and temperament of what the will of the Court is under

23 the nature and circumstances of this case.

24       And because I think that the case against

25 Mr. Baca with regard to the Molina murder was weak, and

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   the Court knows the sentiment of counsel from reading

2   all the briefs and the motions for new trial and

3   everything, but -- and because I think he was, as we

4   said in our sentencing objections, cajoled into the

5   Mercantel conspiracy, I just think the Court could

6   exercise its considerable discretion and impose these

7   sentences to run concurrently rather than

8   consecutively, Your Honor.

9            THE COURT:  All right.  Thank you,

10  Mr. Lowry.

11       Mr. Baca, you have an opportunity to speak on

12  your own behalf before sentence is imposed this

13  afternoon.  What would you like to say to the Court and

14  what would you like the Court to consider before it

15  imposes sentence this afternoon?

16            THE DEFENDANT:  I have nothing to say, Your

17  Honor.

18            THE COURT:  All right.  Thank you, Mr. Baca.

19       Ms. Armijo, remarks on behalf of the United

20  States and particularly what the United States'

21  position is on this consecutive and concurrent issue?

22            MS. ARMIJO:  Yes, Your Honor.  I believe

23  Ms. Molina wanted to make a statement, and she stepped

24  out, and I think they're going to check to see if she's

25  still there.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1        THE COURT:  Ms. Molina, do you want to come
2    to the podium at this time?  All right.  Ms. Molina.
3            MS. MOLINA:  Thank you, Your Honor.
4            THE COURT:  Ms. Molina.
5            MS. MOLINA:  First, I would like to
6    apologize to you.  The last time that I was here with
7    Dan Sanchez, the last thing I said was I feel sorry for
8    you.  I wouldn't want to be a judge.  And by that, I
9    just -- I want to explain.
10        I can't imagine how it is for you, how hard it
11   is for you to sit and listen to testimony over and over
12   again and have to decide somebody's -- so please accept
13   my apologies.
14           THE COURT:  No, no apologies necessary.
15           MS. MOLINA:  Afterwards, I was like, oh, no,
16   that didn't sound too good.  I was all in tears, and --
17           THE COURT:  That's fine.
18           MS. MOLINA:  I'll be brief.  I've waited a
19   long time for this.  And, you know, most people, they
20   write a statement, and, you know, I want to write a
21   book about how this affected my life and my children's,
22   my grandkids, my nieces, my -- my whole family.
23        I love my family more than anything, and I'm
24   sure everybody can identify with that.  I asked if it
25   was allowed to address Mr. Baca, and they said yes.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
&ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          So I don't have much to say, except that you

2     really, really affected my life and my family's life.

3     And we went through pain, and we suffered, and we still

4     are.

5          Today is my youngest daughter's birthday.  She's

6     34, and I'd like to be over there baking her cake.  But

7     I'm here, wasting more of my time, because I have a

8     life.  I mended; I came back.

9          My son and I had the same.  We went through a

10    lot together.  He was in prison for a long time, and

11    he'd say, "Mom, we'll come through this with our feet

12    flat on the ground and our head held high."

13         And to that, to this day, that's what I am now.

14    And I no longer -- no longer am going to shed any

15    tears.  I'm not going to feel any pain for your

16    actions.

17         My son would have had a birthday in August.

18    That's never going to happen.  He would have been 36.

19    This has been, what, five years.  So with that, all I

20    have to say is I'll never forgive you for what you did.

21         But I refuse, I refuse, from now on, to me -- I

22    asked if this was allowed, to say it in a nice way.

23    You're like a bowel movement to me, something to be

24    flushed and never to feel pain or hurt again.

25         And that's all I have to say, Your Honor.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349



BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE



MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          THE COURT:  All right.  Thank you,
2    Ms. Molina.
3          MS. MOLINA:  You're welcome.
4          THE COURT:  Ms. Armijo, further remarks by
5    the government?
6          MS. ARMIJO:  Yes, Your Honor.  Mr. Lowry put
7    the government's actions in terms of vengeance, and I
8    think that the more proper term is justice and
9    punishment, not vengeance.  It's justice for a life
10   that was taken way too short, and brutally taken, as
11   you may recall.
12        I was reading the autopsy again this morning.
13   Mr. Molina was stabbed 43 times as he fought for his
14   life, and he lost that battle.
15        And for a concurrent sentence, it's basically
16   sending a message of nondeterrence.  That's a message
17   that you can be serving a life sentence, you can put
18   hits out on people, as a leader of the gang, the person
19   that is in charge of this gang, you can have people
20   killed, and you're not going to get any additional time
21   for this.  You're not going to get any other
22   recognition.
23        I agree that he is going to die, absent winning
24   an appeal, in federal custody.  But there needs to be
25   some sort of message sent out to the streets, if the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   leader of the SNM gang gets a free ride on this murder

2   and on the conspiracies to murder two other

3   individuals.

4          As to Mr. Lowry's argument that Mr. Baca could

5   have taken care of the murder himself when he was

6   housed at Southern, you have to put it in -- and I'm

7   sure the Court will remember where the SNM was back at

8   that time.  As you may recall the testimony of Jerry

9   Rourke talking about the SNM was being held down at

10  Southern, and they were slowly trying to work with the

11  SNM, and Mr. Baca was removed and sent back up to PNM,

12  and Mr. Baca wrote a letter to Mr. Rourke trying to

13  negotiate things with Mr. Rourke, and Mr. Rourke

14  actually met with him in early 2014, but he didn't

15  believe that the defendant was sincere about calling a

16  truce and having peace.

17         He said that Mr. Baca would not totally commit

18  to some of his things, and so they did move him back to

19  Southern, and it was shortly after that that we have

20  Javier Molina killed.

21         Now, as Mr. Baca himself said to Eric Duran, and

22  as we played, "If they would have let me out, Javier

23  wouldn't be a dead man.  That man would still be alive.

24  But they didn't and that's -- what's done is done.

25  They called my bluff, and now they have a dead man on

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  their hands."

2      Those are the words of the defendant that we

3  heard during the trial.  And that just shows his power,

4  his lack of indifference for human life, how he really

5  was upset at that point in time with Corrections and

6  the power that he yielded.

7      And that goes on to continue for the murders --

8  to kill Marcantel and Sanistevan.  He may have not

9  known Greg Marcantel, because Greg Marcantel became the

10  head when he was out.  But you can't say that about

11  Dwayne Sanistevan.

12      Dwayne Sanistevan was a person that worked in

13  Corrections, that had been there for a very long time,

14  that knew the defendant very well, and he certainly

15  knew of who Dwayne Sanistevan was.

16      So that certainly cannot be, you know -- it's

17  not just a puppet.  That was something that was very

18  personal.  It was very personal that he killed Javier

19  Molina.  He knew Javier Molina.

20      The reason -- the reason that Mr. Baca also

21  didn't kill him is because, as the Court knows, there

22  are soldiers.  He is the head of the SNM.  He had other

23  leaders underneath him.  And then, of course, we know

24  that there are soldiers and people that have to earn

25  their bones, and that's exactly what happened in this

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    case.  We have -- the actual people that did the

2    stabbing, the shanking, were people that purposely were

3    put to that task because they had not earned their

4    bones, because they had to prove themselves to be a

5    member the SNM.

6          Mr. Baca had already proved himself when he

7    committed a brutal murder in Corrections back in the

8    late '90s.  So he was not one to get his own hands

9    dirty, but that's not to say that he is not responsible

10   for the murder any less than the people who actually

11   did it themselves.

12         In fact, I would say, much like Billy Garcia

13   said yesterday, it all starts at the top.  And in this

14   case, it starts at the top with Mr. Baca.

15         So we are asking the Court to recognize that

16   this was a separate life, a separate murder, that he

17   needs to -- if you look at the -- under 3553, the

18   nature and the circumstance of the offense and the

19   history and characteristics of the defendant.

20         I think the Court heard -- let's just stick with

21   nature and characteristics of the defendant.  You have

22   his criminal history.  You heard over and over, not

23   just in his own trial, I think there was testimony in

24   other trials, as well, about Anthony Baca, about what

25   Corrections did, about the murders that he committed,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  about the hits that he put out on people, not just the

2  ones that have charged.  There were other hits.  As I

3  was reading back through people's testimony, they

4  talked about hits he put on other people.

5       There certainly is nothing that justifies a

6  concurrent sentence based on his own characteristics

7  and certainly not on the nature and the circumstances

8  of the offense, the brutal murder of Javier Molina.

9       The need to reflect the seriousness of the

10  offense, to promote respect for the law, and to provide

11  just punishment for the offense and adequate

12  deterrence, that alone, again, Your Honor, the message

13  that needs to be sent is that this type of activity

14  should not be allowed anywhere.  And certainly as

15  leader of the gang, he needs to be the example set that

16  consecutive sentences, much like you did with Daniel

17  Sanchez and with other people before him who were under

18  him, he certainly deserves -- he, being Mr. Baca,

19  deserves a sentence that is consecutive to what he is

20  serving.

21       And so with that, Your Honor, we would certainly

22  argue that in this circumstance, much more than other

23  circumstances, that the sentence should be consecutive

24  to what he is serving.  And so with that, we ask that

25  you sentence him to life and, of course, to the maximum

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  term for the two conspiracies to commit murder, as

2  well.

3          THE COURT:  All right.  Thank you,

4  Ms. Armijo.

5          All right.  I will now state the sentence, but

6  the attorneys will have a final chance to make legal

7  objections before sentence is imposed.

8          The Court adopts the presentence report factual

9  findings.  We've made a handful of changes this

10  morning; and with those changes, the Court will adopt

11  those as its -- the ones in the PSR as its own.  Most

12  of them are undisputed, and I've dealt with the ones

13  where we've gone through and specifically made changes.

14          The court has also consider the sentencing

15  guideline applications in the PSR.  The Court, having

16  overruled the objection, the Court now adopts those as

17  its own, as well.  And I will issue a short opinion on

18  the vulnerable victim testimony or the evidence and why

19  I'm ruling the way I am.

20          The Court has also considered the factors set

21  forth in 18 USC Section 3553(a) 1 through 7.  There is

22  both a guideline sentence and a statutory sentence as

23  to some of the counts, and then there's a guideline

24  sentence for other of the counts.  So I have considered

25  those, including the finding that the defendant is a

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    career offender.

2          As I indicated earlier, after overruling the

3    objection on vulnerable victim, the offense level is

4    43, and the criminal history category is 6.  Pursuant

5    to 5(g)1.1, the guideline imprisonment term is 120

6    months as to Counts 6, 9 and 10.  As to Count 7, the

7    guideline imprisonment term is life, which is

8    consistent with the statutory provision of mandatory

9    life imprisonment.

10         The Court notes the defendant is a member of the

11   Syndicato de Nuevo Mexico (SNM) prison gang, many

12   members of which conspired to and/or did commit various

13   crimes that were indicted under the Racketeering

14   Influenced and Corrupt Organizations (RICO) Act.

15   Specifically, the defendant, a high-ranking leader in

16   the SNM gang, ordered the murder of SNM member JM,

17   which was ultimately carried out.

18         In addition, he ordered the murders of the DS

19   and GM, two high-ranking officials with the State of

20   New Mexico.  The defendant recruited other SNM members

21   to carry out his orders while he was in custody.

22         The Court has, as I think this record will

23   reflect, and also the opinion that I will be issuing

24   about the vulnerable victim enhancement, will reflect

25   that the Court has carefully considered the guidelines,

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    but in arriving at a sentence, the Court has taken into

2    account not only the guidelines but other sentencing

3    goals.  Specifically, the Court has considered the

4    guideline sentencing range established for the

5    applicable category of the offense committed by the

6    applicable category of defendant.

7            And the Court concludes that the punishment

8    that's set forth in the guidelines is appropriate for

9    this sort of offense.  I have considered the kinds of

10   sentence and range established by the guidelines, and

11   the Court agrees that the sentence of 120 months as to

12   Counts 6, 9 and 10, and life imprisonment as to Count 7

13   are adequate but also necessary to reflect the

14   seriousness of the offenses, to promote respect for the

15   law, provide just punishment, afford adequate

16   deterrence both at a specific and general level,

17   protect the public.  They are a guideline sentence, so

18   they avoid unwarranted sentencing disparity among

19   defendants with similar records who have been found

20   guilty of similar conduct.  And because I will be

21   imposing supervised release, the sentence will

22   effectively provide the defendant with some needed

23   education and training and care to assist him, if he is

24   released, reintegrating back into society.

25           The Court believes that the guideline sentence

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349




BEAN
& ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    fully and effectively reflects each of the factors

2    embodied in 18 USC Section 3553(a) and produces a

3    reasonable sentence; and by that, I mean one that is

4    sufficient without being greater than is necessary to

5    comply with the purposes of punishment set forth in the

6    Sentencing Reform Act.

7            Therefore, as to each of Counts 6, 9 and 10

8    of the second superseding indictment,

9    2:15-cr-04268-021-JB, the defendant, Anthony Ray Baca,

10   a/k/a "Pup," is committed to the custody of Bureau of

11   Prisons for a term of 120 months.

12           As to Count 7, the defendant is committed to the

13   custody of Bureau of Prisons for a term of life

14   imprisonment without release.  Said terms shall run

15   concurrently for a total term of life.

16           The defendant is placed on supervised release

17   for a term of three years as to each count.  Said terms

18   shall run concurrently.  The defendant must comply with

19   the mandatory and standard conditions of supervision.

20           And I do think that I will follow the guidelines

21   in this case.  I don't have a Kimbrough disagreement

22   with the guidelines.  And so these sentences will run

23   concurrently to his State sentence.

24           The following special conditions will also be

25   imposed.  I will -- let's see.  I'll state the first

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   one, then I'll give the reason for it.

2        First, you must submit to a search of your

3   person, property, residence, vehicle, papers,

4   computers, as defined in 18 USC Section 1030(e)(1),

5   other electronic communications or data storage devices

6   or media or office under your control.

7        The probation officer may conduct a search under

8   this condition, only when reasonable suspicion exists,

9   in a reasonable manner, at a reasonable time, for the

10  purpose of detecting drugs, firearms, ammunition, any

11  other dangerous weapons and any other contraband.

12       You must inform the residents or occupants that

13  the premises may be subject to a search.  This

14  condition is imposed based on the nature and

15  circumstances of these federal offenses for which

16  you're being sentenced today, which involved a RICO

17  conspiracy, in which the defendant ordered hits on

18  another SNM member and two high-ranking State of New

19  Mexico officials.

20       This condition is also imposed based on the

21  history and characteristics of the defendant, who has a

22  history of violent behavior, to include armed robbery,

23  manslaughter, battery on a police officer, and murder.

24       Moreover, as a convicted felon, the defendant is

25  barred from possessing firearms and ammunition.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1      Last, this condition is meant to deter the

2  defendant from reengaging in violent crimes and to

3  protect the public from such crimes that the defendant

4  if he is ever released from custody.

5      I will now state two conditions, and then I will

6  give the justification for those two conditions.

7      First, you must not communicate or otherwise

8  interact with codefendants, coconspirators.  And

9  second, you must not communicate or otherwise interact

10  with any known gang members.

11      These two conditions are imposed because of the

12  nature and circumstances of the federal offenses for

13  which you are being sentenced today, which involved a

14  RICO conspiracy among SNM members, including the

15  defendant, to commit murders and assaults.

16      These two conditions are also imposed based on

17  the history and characteristics of the defendant, who

18  had leadership status within the SNM, and he used that

19  leadership to order other SNM members to conduct hits

20  on three victims.

21      Additionally, these conditions are meant to

22  deter the defendant from entering into new

23  conspiracies, similar to the federal offenses for which

24  he's being sentenced today, with other gang members and

25  to protect the public from further criminal schemes of

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  the defendant covered by the RICO Act.

2       Next, you must reside in a residential reentry

3  center for a term of six months.  You must follow the

4  rules and regulations of this center.  This condition

5  is imposed based on the history and characteristics of

6  the defendant who has been in continuous custody since

7  1987.

8       If the defendant is ever released from custody,

9  this condition will provide him a stable environment

10 where he can successfully reintegrate into the

11 community while giving him time to find a suitable

12 residence.

13      Next, you must not communicate or otherwise

14 interact with the victim or victims either directly or

15 through someone else.  This condition is imposed in an

16 effort to protect the victims and the victim's

17 families.

18      I will now state five other special conditions

19 that are being imposed, and then I will give -- and

20 these are the five final ones.  And then I will give

21 the justification for these five final conditions after

22 I have stated them.

23      First, you must participate in an outpatient

24 substance abuse treatment program and follow the rules

25 and regulations of that program.  The probation officer

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    will supervise your participation in the program,

2    provider, location, modality, duration, intensity, etc.

3    You may be required to pay all or a portion of the cost

4    of the program.

5          Second, you shall waive your right of

6    confidentiality and allow the treatment provider to

7    release treatment records to the probation officer and

8    sign all necessary releases to enable the probation

9    officer to monitor your progress.  The probation

10   officer may disclose the presentence report any

11   previous substance abuse evaluations and/or other

12   pertinent treatment records to the treatment provider.

13         Third, you must submit to substance abuse

14   testing to determine if you have used a prohibited

15   substance.  Testing may include urine testing, the

16   wearing of a sweat patch, a remote alcohol testing

17   system, an alcohol monitoring technology program,

18   and/or any form of prohibited-substance screening or

19   testing.  You must not attempt to obstruct or tamper

20   with the testing methods.  You may be required to pay

21   all or a portion of the cost of the testing.

22         Fourth, you must not use or possess alcohol.

23         And fifth, you must not possess, sell, offer for

24   sale, transport, cause to be transported, cause to

25   affect interstate commerce import or export any drug

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   paraphernalia as defined in 21 USC Section 863(d).

2          These five conditions are imposed because of the

3   history and characteristics of the defendant who has a

4   prior arrest for possessing drug paraphernalia and

5   heroin.  If the defendant is ever released from

6   custody, these conditions are meant to ensure he

7   receives the necessary treatment for any substance

8   abuse issues he may have.

9          The Court finds the Mandatory Restitution Act of

10  1996 is applicable in this case.  However, no claim for

11  restitution has been made by the victim or victims in

12  this case.  Therefore, none will be ordered.

13         Based on the defendant's lack of financial

14  resources, the Court will not impose a fine or a

15  portion of a fine.  The Court carefully considered

16  other alternative sanctions in lieu of a fine, such as

17  residential reentry center, GPS or location monitoring

18  and community service.  In accordance with USSG

19  Section 5(e)1.2(E), the Court has imposed a special

20  condition that the defendant reside at a residential

21  reentry center.

22         The Court concludes the total combined sanctions

23  without a fine or alternative sanction, other than the

24  defendant reside at a residential reentry center, is

25  sufficiently punitive.

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1          The defendant shall pay a special assessment of

2     $100 as to each count of conviction for a total of

3     $400, which is due immediately.

4          And in addition to not having a Kimbrough

5     disagreement with the guidelines to run it consecutive

6     to the state sentence, the Court thinks the 3553(a)

7     factors support not varying in this case.  Several

8     factors, such as the seriousness of the offense,

9     promoting respect for the law, providing just

10    punishment, all three of those weigh in favor of not

11    varying in this case.

12         Let me ask both counsel if they know of any

13    reason why the sentence should not be imposed as the

14    Court has stated it, other than what may have been

15    argued to the Court.

16         Ms. Armijo?

17              MS. ARMIJO:  No, Your Honor, thank you.

18              THE COURT:  Mr. Lowry?

19              MR. LOWRY:  Not at this time, Your Honor.

20              THE COURT:  All right.  It is ordered that

21    the sentence is imposed at the Court has stated it.

22         Mr. Baca, you can appeal your conviction if

23    there was anything unlawful or involuntary or anything

24    that was -- there's some fundamental defect in the

25    proceedings that was not waived along the way, you can

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1   appeal all those things.

2         You also have a statutory right to appeal your

3   conviction under certain circumstances, particularly if

4   you think the sentence is contrary to law.

5         You have the right to appeal in forma pauperis,

6   and what that means is the Clerk of the Court will

7   prepare and file a notice of appeal upon your request

8   if you're unable to pay the cost of an appeal.  And the

9   Clerk of the Court will prepare that notice for you.

10        With very few exceptions, any notice of appeal

11  must be filed within 14 days of the entry of judgment.

12        Mr. Baca, do you understand your rights to

13  appeal?

14              THE DEFENDANT:  Yes, I do, Your Honor.

15              THE COURT:  All right.  Counsel, you have

16  copies of the presentence report.  There are two of

17  them in this case, as well as Mr. Mills' memo of

18  June 6th, and you have the addendum.

19        Anything further on this matter?  Ms. Armijo?

20              MS. ARMIJO:  No, Your Honor, thank you.

21              THE COURT:  Mr. Lowry?  Ms. Duncan?

22              MR. LOWRY:  No, Your Honor.

23        Your Honor, we do have one matter.  I spoke to

24  Ms. Armijo beforehand.  We'd like to make an oral

25  motion for Mr. Baca to continue possession of the

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1  tablet throughout the appellate process.  I see that

2  other teams are doing that.  If you'd prefer a formal

3  written motion, we can do that.

4          THE COURT:  It's up to you.  And,

5  Ms. Armijo, you haven't been opposing these, if I

6  understand it correctly.

7          MS. ARMIJO:  We have not be opposing them.

8  I think that the orders came down for them to make sure

9  that the facilities would allow them to have it in the

10  Bureau of Prisons.  That's the only reason that other

11  people entered an order.

12          THE COURT:  Yeah, I can help you out until

13  they're turned over to the BOP, and then I'm kind of

14  limited after that.  But if you want to submit an order

15  or if you want me to just make an oral order, I've been

16  talking to the Marshal's Service up in Albuquerque, and

17  they say there shouldn't be any problem, and they don't

18  have any problem complying with that order.

19          MR. LOWRY:  That's fine, Your Honor.  I'll

20  tender a stipulated order to counsel and get it to you.

21          THE COURT:  That's fine.

22      Anything else, Mr. Lowry?  Ms. Duncan?

23          MR. LOWRY:  No, Your Honor.

24          MS. DUNCAN:  No, Your Honor.

25          THE COURT:  Counsel, I appreciate your

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349

BEAN & ASSOCIATES, Inc.
PROFESSIONAL COURT
REPORTING SERVICE

MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1    assistance on this matter.

2           Mr. Baca, if you get me reversed, we may see

3    each other again.

4               THE DEFENDANT:  I hope so.

5               THE COURT:  You hope so.  You just have so

6    much fun with me, don't you?

7               THE DEFENDANT:  I kind of miss the pizza.

8               THE COURT:  Is Mr. Acey buying?

9               THE DEFENDANT:  Yeah.

10              MR. LOWRY:  They have a lunch date.

11              THE COURT:  All right.  Well, Mr. Baca, if I

12   don't see you again, good luck to you.

13              THE DEFENDANT:  Same to you, Your Honor.

14              THE COURT:  All right.  Thank you, Mr. Baca.

15   We'll been in recess.

16              [Court in recess at 1:05 PM.]

17

18

19

20

21

22

23

24

25

SANTA FE OFFICE
119 East Marcy, Suite 110
Santa Fe, NM 87501
(505) 989-4949
FAX (505) 820-6349





MAIN OFFICE
201 Third NW, Suite 1630
Albuquerque, NM 87102
(505) 843-9494
FAX (505) 843-9492
1-800-669-9492
e-mail: info@litsupport.com

1                          REPORTER'S CERTIFICATE

2              I, Jenifer L. Russin, CCR #182, a Certified

3      Court Reporter, do hereby certify that the

4      proceedings of the above-entitled cause were

5      reported by me stenographically and that the within

6      transcript is a true and accurate transcription of

7      my shorthand notes.

8              I FURTHER CERTIFY that I am neither an

9      attorney nor counsel for, nor related to or employed

10     by any of the parties to the action, and that I am

11     not a relative or employee of any attorney or

12     counsel employed by the parties hereto, or

13     financially interested in the action.

14

15

16

17     _____

18     Jenifer L. Russin, CSR RDR CRR
       Certified Court Reporter #182
19     License Expires:  12/31/2020

20

21

22

23

24

25